1

1          **UNITED STATES DISTRICT COURT**

2          **CENTRAL DISTRICT OF CALIFORNIA**

3       **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                   – – – – – – –

5
   MATTEL, INC., et al.,              )
6                                     )
              Plaintiffs,             )
7                                     )
        vs.                           ) No. CV 04-9049 DOC
8                                     )    Day 5
   MGA ENTERTAINMENT, INC., et al.,   )    Volume 1 of 2
9                                     )
                                      )
10            Defendants.             )
   _____)

11

12

13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                    Jury Trial

16              Santa Ana, California

17           Thursday, January 20, 2011

18

19

20

21   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
22   United States District Court
     411 West 4th Street, Room 1-053
23   Santa Ana, California 92701
     (714) 558-8141
24

25   04cv9049 Mattel 2011-01-20 D5V1

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 2 of 125   Page ID #:290284
CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

2

1    **APPEARANCES OF COUNSEL:**

2

     FOR PLAINTIFF MATTEL, INC., ET AL.:

3
               QUINN EMANUEL URQUHART OLIVER & HEDGES LLP
4              BY:  JOHN QUINN
                    WILLIAM PRICE
5                   MICHAEL T. ZELLER
                    Attorneys at Law
6              865 South Figueroa Street
               10th Floor
7              Los Angeles, California 90017
               (213) 443-3000

8

9

10

11   FOR DEFENDANT MGA ENTERTAINMENT, INC., ET AL:

12             ORRICK, HERRINGTON & SUTCLIFFE, LLP (Irvine)
               BY:  THOMAS S. McCONVILLE
13                  Attorney at Law
               4 Park Plaza
14             Suite 1600
               Irvine, California 92614
15             (949) 567-6700

16             - AND -

17             ORRICK, HERRINGTON & SUTCLIFFE, LLP (SF)
               BY:  ANNETTE L. HURST
18                  Attorney at Law
               405 Howard Street
19             San Francisco, California 94105
               (415)773-5700

20             - AND -

21
               KELLER RACKAUCKAS
22             BY:  JENNIFER KELLER
                    Attorney at Law
23             18500 Von Karman Avenue
               Suite 560
24             Irvine, California 92612
               (949) 476-8700

25

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 3 of 125   Page ID #:290285
CV 04-9049 DOC – 1/20/2011 – Day 5, Volume 1 of 2

3

1   **APPEARANCES OF COUNSEL (Continued):**

2

3   FOR CARLOS GUSTAVO MACHADO GOMEZ:

4

5           LAW OFFICES OF MARK E. OVERLAND
            By:  MARK E. OVERLAND
                 Attorney at Law
6           100 Wilshire Boulevard
            Suite 950
7           Santa Monica, California 90401
            (310) 459-2830

8           – AND –

9
            SCHEPER KIM & HARRIS LLP
10          BY:  ALEXANDER H. COTE
                 Attorney at Law
11          601 West 5th Street
            12th Floor
12          Los Angeles, California 90071
            (213) 613-4660

13

14

15
    ALSO PRESENT:
16
            MGA ENTERTAINMENT, INC.
17          BY:  JEANINE PISONI
                 Attorney at Law
18          16360 Roscoe Boulevard
            Suite 105
19          Van Nuys, California 91406

20
            ROBERT ECKERT, Mattel CEO
21
            ISAAC LARIAN, MGA CEO
22
            KEN KOTARSKI, Mattel Technical Operator
23
            MIKE STOVALL, MGA Technical Operator
24

25

CV 04-9049 DOC – 1/20/2011 – Day 5, Volume 1 of 2

4

1                          **I N D E X**

2

3   **WITNESSES**                    **DIRECT  CROSS  REDIRECT  RECROSS**

4   GARCIA, Paula

5   By Mr. Price                    8

6

7

8                          **EXHIBITS**

9   **EXHIBIT NO.**                  **IDENTIFICATION  IN EVIDENCE**

10     301     E-mail containing                      91
             meeting invitation for
11            9/1/00

12     302     Part of Carter Bryant                  69
             presentation to MGA
13
       305     E-mail dated 10/10/2000               109
14
       1112    10/2/2000 e-mail between               120
15            Ms. Garcia and
             Ms. Mullen
16
       1116    Employee confidential                  14
17            information document for
             Paula Garcia
18
       1117    MGA employee contract                  31
19            for Paula Garcia

20     10001   5/1/2001 e-mail from                   35
             Ms. Garcia to
21            Mr. Haynes-Peterson

22     11328   8/18/00 e-mail from                    89
             Ms. Brown to Ms. Garica
23            and Ms. O'Connor

24

25

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 5 of 125   Page ID #:290287
CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

5

1                    **EXHIBITS (Continued)**

2    **EXHIBIT NO.**                    **IDENTIFICATION   IN EVIDENCE**

3     11889-0003   MGA ledger page                         56

4     11889-0002   Invoice 8/31/2000 to                    57
                   9/30/2000 for Carter
5                  Bryant

6     11889-0014   MGA expense report                      60
                    for Carter Bryant
7
       13172    Photocopy of check for                     98
8                $8,000 dated 8/27/04

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 6 of 125   Page ID #:290288
CV 04-9049 DOC – 1/20/2011 – Day 5, Volume 1 of 2

6

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | **SANTA ANA, CALIFORNIA, THURSDAY, JANUARY 20, 2011**        |
|       | 2  | **Day 5, Volume 1 of 2**                                     |
|       | 3  | (8:36 a.m.)                                                  |
| 08:36 | 4  | *(In the presence of the jury.)*                            |
| 08:36 | 5  | THE COURT:  All right.  Counsel, we're in session.          |
| 08:36 | 6  | If you would be seated.  The jury is present, the            |
| 08:36 | 7  | alternates.  All counsel are present.                        |
| 08:36 | 8  | And, Counsel, your next witness.                             |
| 08:36 | 9  | MR. PRICE:  Your Honor, we call, under 611(C),               |
| 08:36 | 10 | Ms. Paula Garcia.                                            |
| 08:36 | 11 | THE COURT:  Ms. Garcia, would you be kind enough             |
| 08:37 | 12 | to stand with me, please, and raise your right hand.  The    |
| 08:37 | 13 | clerk's going to administer an oath to you.                  |
| 08:37 | 14 | **PAULA GARCIA, MATTEL'S WITNESS, SWORN**                   |
| 08:37 | 15 | THE WITNESS:  I do.                                          |
| 08:37 | 16 | THE COURT:  Okay.  If you would please be seated.            |
| 08:37 | 17 | Would you state your full name for the record and please     |
| 08:37 | 18 | spell your last name.                                        |
| 08:37 | 19 | THE WITNESS:  My name is Paula Dianthe Garcia.               |
| 08:37 | 20 | It's spelled G-A-R-C-I-A.  Dianthe is spelled D-I-A-N-T-H-E. |
| 08:37 | 21 | THE COURT:  And because you have a quiet voice, I            |
| 08:37 | 22 | want you to bring that microphone closer to you.             |
| 08:37 | 23 | THE WITNESS:  Okay.                                          |
| 08:37 | 24 | THE COURT:  Now, that chair doesn't move.  Let me            |
| 08:37 | 25 | explain to the jury why.                                     |

Case 2:04-cv-09049-DOC-RNB  Document 9709  Filed 01/27/11  Page 7 of 125  Page ID #:290289
CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

7

08:37  1            (To the jury:)  You'll see witnesses struggle with

08:37  2    them.  This is off the record.

08:37  3               *(Discussion off the record.)*

08:38  4            THE COURT:  All right.  Now we're back on record.

08:38  5            Let me explain what's occurring.

08:38  6            During different times of a trial, a witness may

08:38  7    be called that really doesn't, in a sense, align with a

08:38  8    particular party.  Another way of saying that is either

08:38  9    party can call an adverse witness.

08:38  10           So you'll find that the plaintiff who's -- strike

08:38  11   that -- that the claimant, because they're both claimants.

08:38  12   Remember, I said you can reverse the situation.  You can

08:38  13   have MGA sitting in what we sometimes will mistakenly say

08:38  14   the plaintiff's chair.

08:38  15           MGA can be sitting at that table.  Mattel is

08:38  16   sitting at that table as the claimant.  And the

08:39  17   counter-claimant is sitting over here in MGA and

08:39  18   Mr. Larian's position and Mr. Machado's position.

08:39  19           But the claimant, at this time Mattel, can call an

08:39  20   adverse party.  They can call a witness that may appear to

08:39  21   align more properly with MGA's position, even an officer.

08:39  22   You'll find they may call Mr. Larian, if they'd like to,

08:39  23   during their case, and when MGA presents their case, they

08:39  24   can call Mr. Eckert.

08:39  25           Just because one side is calling a witness, that

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

8

| 08:39 | 1 | witness may not be favorable to that side at all.  Their |
| 08:39 | 2 | interests may align completely on the other side.  Okay? |
| 08:39 | 3 | Now, Counsel, I hope that is a somewhat adequate |
| 08:39 | 4 | explanation. |
| 08:39 | 5 | This is Mr. Price? |
| 08:39 | 6 | MR. PRICE:  Yes, sir. |
| 08:39 | 7 | THE COURT:  And this is Mr. Price's direct |
| 08:39 | 8 | examination. |
| 08:39 | 9 | **DIRECT EXAMINATION** |
| 08:39 | 10 | BY MR. PRICE: |
| 08:39 | 11 | Q.   Could you tell the jury where you work. |
| 08:39 | 12 | A.   My name is Paula Garcia. |
| 08:40 | 13 | Q.   Could you tell them where you work. |
| 08:40 | 14 | A.   Sure.  I work at MGA. |
| 08:40 | 15 | Q.   What's your position there? |
| 08:40 | 16 | A.   I'm vice president of product design and development. |
| 08:40 | 17 | Q.   Now, when did you start working there? |
| 08:40 | 18 | A.   I worked -- I've been working at MGA for approximately |
| 08:40 | 19 | 10 years, 11 years. |
| 08:40 | 20 | Q.   And is it correct that you started there sometime |
| 08:40 | 21 | around April of 2000? |
| 08:40 | 22 | A.   That's correct. |
| 08:40 | 23 | Q.   Now, I want to ask you some questions.  We have -- I |
| 08:40 | 24 | have questioned you before under oath, correct? |
| 08:40 | 25 | A.   That's right. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

9

| | | |
|---|---|---|
| 08:40 | 1 | Q.   And other than that, we really haven't spoken to each, |
| 08:40 | 2 | other than a "Hi" in the hallway, right? |
| 08:40 | 3 | A.   Yes. |
| 08:40 | 4 | Q.   Now, you've testified several times under oath in |
| 08:40 | 5 | connection with this case, correct? |
| 08:40 | 6 | A.   Yes. |
| 08:40 | 7 | Q.   Let me ask you, in connection with -- with the |
| 08:40 | 8 | preparation for that testimony -- and I don't want you to |
| 08:40 | 9 | tell me any substance.  But in connection with that, did you |
| 08:40 | 10 | meet with lawyers for MGA? |
| 08:40 | 11 | A.   Yes. |
| 08:40 | 12 | Q.   And you did that to prepare for your testimony on |
| 08:41 | 13 | several occasions, correct? |
| 08:41 | 14 | A.   Um, yes. |
| 08:41 | 15 | Q.   Could you tell me about how many hours or days that |
| 08:41 | 16 | you've spent talking with MGA's lawyers to prepare for the |
| 08:41 | 17 | testimony that you've given? |
| 08:41 | 18 | A.   Um, maybe approximately two or three days, and then |
| 08:41 | 19 | those days, not complete days, maybe three or four hours. |
| 08:41 | 20 | Q.   So, for example, you recall you testified under oath |
| 08:41 | 21 | sometime around. |
| 08:41 | 22 | MR. McCONVILLE:  Objection.  Improper impeachment, |
| 08:41 | 23 | Your Honor. |
| 08:41 | 24 | THE COURT:  Overruled. |
| | 25 | |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

10

| | | |
|---|---|---|
| 08:41 | 1 | BY MR. PRICE: |
| 08:41 | 2 | Q.   Sometime around May 24, 2007, do you recall you |
| 08:41 | 3 | testified under oath? |
| 08:41 | 4 | A.   Um, yes. |
| 08:41 | 5 | Q.   Okay.  You may not remember the precise day.  And you |
| 08:41 | 6 | testified for a day? |
| 08:41 | 7 | A.   Um -- is -- I don't recall which -- whether that was -- |
| 08:42 | 8 | um, I don't recall. |
| 08:42 | 9 | Q.   It's okay.  I understand. |
| 08:42 | 10 | So for your testimony on around that date, how much |
| 08:42 | 11 | time did you spend with the attorneys, just preparing for |
| 08:42 | 12 | it? |
| 08:42 | 13 | A.   It's difficult for me to answer, because I don't |
| 08:42 | 14 | remember what -- |
| 08:42 | 15 | Q.   Oh, okay. |
| 08:42 | 16 | A.   -- testimony. |
| 08:42 | 17 | MR. PRICE:  Could you please just give her a copy |
| 08:42 | 18 | of that transcript.  Thank you, Ms. Juarez. |
| 08:42 | 19 | BY MR. PRICE: |
| 08:42 | 20 | Q.   Do you have that transcript in front of you? |
| 08:42 | 21 | A.   Yes. |
| 08:42 | 22 | Q.   And you remember that you did a deposition around that |
| 08:42 | 23 | time? |
| 08:42 | 24 | A.   Um, I don't recall the deposition, but it seems that -- |
| 08:43 | 25 | yes. |

| | | |
|---|---|---|
| 08:43 | 1 | Q.   Okay.  So the first time you did something like that, |
| 08:43 | 2 | do you recall how much time you spent preparing with MGA's |
| 08:43 | 3 | attorneys? |
| 08:43 | 4 | A.   Um, I can say just generally in preparation for |
| 08:43 | 5 | depositions -- I don't know about this particular one -- |
| 08:43 | 6 | generally, in preparation for depositions, I may meet just |
| 08:43 | 7 | for a couple of hours prior to my deposition. |
| 08:43 | 8 | Q.   So as an estimate, we can take the number of times you |
| 08:43 | 9 | did that and multiply it by a couple of hours? |
| 08:43 | 10 | A.   Um, sure.  You mean in terms of the number of |
| 08:43 | 11 | depositions prior to this trial? |
| 08:43 | 12 | Q.   Yes. |
| 08:43 | 13 | A.   Sure. |
| 08:43 | 14 | Q.   And then you testified in -- under oath when you |
| 08:43 | 15 | weren't in a deposition, correct? |
| 08:43 | 16 | A.   Yes. |
| 08:43 | 17 | Q.   And you did that for about how many days? |
| 08:43 | 18 | A.   I don't even recall. |
| 08:44 | 19 | Q.   Okay.  Do you remember it being two or three days? |
| 08:44 | 20 | A.   Yes. |
| 08:44 | 21 | Q.   Okay.  And in preparation for that testimony, you also |
| 08:44 | 22 | met with MGA's counsel, correct? |
| 08:44 | 23 | A.   Yes. |
| 08:44 | 24 | Q.   Okay.  And for that sort of testimony, how much time |
| 08:44 | 25 | did you spend with MGA's counsel per day before you |

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 12 of 125   Page ID #:290294
CV 04-9049 DOC – 1/20/2011 – Day 5, Volume 1 of 2

12

| | | |
|---|---|---|
| 08:44 | 1 | testified? |
| 08:44 | 2 | A.   Um, I don't recall exactly.  Probably –- um, I don't |
| 08:44 | 3 | know, maybe two or three days prior and only for, again, |
| 08:44 | 4 | three or four hours. |
| 08:44 | 5 | Q.   Per day? |
| 08:44 | 6 | A.   For each of those days, yes. |
| 08:44 | 7 | Q.   And then when you –- when you testify under oath one |
| 08:44 | 8 | day and you testify under oath the next, would you meet with |
| 08:44 | 9 | them in between to talk about things? |
| 08:44 | 10 | A.   No. |
| 08:44 | 11 | Q.   Now, in connection with this testimony, I take it, |
| 08:44 | 12 | you've reviewed a lot of documents? |
| 08:44 | 13 | A.   Um, I've reviewed some, sure. |
| 08:44 | 14 | Q.   Okay.  Can you give us an idea of how many? |
| 08:44 | 15 | A.   Um, I don't know.  Maybe 15, 20. |
| 08:45 | 16 | Q.   Well, as we go, I'll ask you per document.  But your |
| 08:45 | 17 | belief is that there's nothing wrong with doing that; that |
| 08:45 | 18 | is, meeting with your counsel ahead of time or reviewing |
| 08:45 | 19 | documents, right? |
| 08:45 | 20 | A.   Correct. |
| 08:45 | 21 | Q.   Now, I want to talk a little bit about the time that |
| 08:45 | 22 | you joined MGA, and I want to focus on –- |
| 08:45 | 23 | MR. PRICE:  If I can use –- Your Honor, it's a |
| 08:45 | 24 | timeline without anything written on it.  I've shown |
| 08:45 | 25 | Mr. McConville.  It's just instead of drawing my own |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 1/20/2011 – Day 5, Volume 1 of 2

13

| | | |
|---|---|---|
| 08:45 | 1 | drawing, just put it on the ELMO so we can get the time |
| 08:45 | 2 | frame. |
| 08:45 | 3 | BY MR. PRICE: |
| 08:45 | 4 | Q.   Ms. Garcia, I'm just gonna use this to kind of get a |
| 08:45 | 5 | time frame. |
| 08:45 | 6 |          *(Document displayed.)* |
| 08:46 | 7 | BY MR. PRICE: |
| 08:46 | 8 | Q.   In April 2007, at least for a few days in April, you |
| 08:46 | 9 | worked for Mattel, correct? |
| 08:46 | 10 | A.   Yes. |
| 08:46 | 11 | Q.   And then you left Mattel to start work with MGA, right? |
| 08:46 | 12 | A.   Correct. |
| 08:46 | 13 | Q.   So prior to leaving Mattel, let's -- how many months or |
| 08:46 | 14 | years had you worked in the toy business? |
| 08:46 | 15 | A.   Do you mean prior to MGA? |
| 08:46 | 16 | Q.   Yes.  Prior to April 2000. |
| 08:46 | 17 | A.   I worked with Mattel for three years. |
| 08:46 | 18 | Q.   And was that your only experience prior to MGA in the |
| 08:46 | 19 | toy business? |
| 08:46 | 20 | A.   Yes.  I worked as an intern when I was finishing school |
| 08:46 | 21 | at an advertising agency called -- well, an advertising |
| 08:46 | 22 | agency called ONM, and I spent a couple of months there as |
| 08:46 | 23 | well.  It was an internship.  And I worked on advertising |
| 08:46 | 24 | specifically for Mattel properties. |
| 08:46 | 25 | Q.   Okay.  So I think you said overall about three years? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

14

| | | |
|---|---|---|
| 08:46 | 1 | A.   Yeah.   Three. |
| 08:47 | 2 | Q.   Okay.   And how long -- I guess since Mattel you've |
| 08:47 | 3 | worked in the toy industry, right? |
| 08:47 | 4 | A.   Yes. |
| 08:47 | 5 | Q.   Okay.   So let's focus on -- on your experience in April |
| 08:47 | 6 | of 2000 when you left Mattel and joined MGA.   Okay? |
| 08:47 | 7 | A.   Okay. |
| 08:47 | 8 | Q.   Now, by that time you had signed a confidentiality |
| 08:47 | 9 | agreement with Mattel, right? |
| 08:47 | 10 | A.   Yes. |
| 08:47 | 11 | Q.   And if you could look in your -- you're gonna be handed |
| 08:47 | 12 | what's Exhibit 1116. |
| 08:47 | 13 | *(Document provided to the witness.)* |
| 08:47 | 14 | BY MR. PRICE: |
| 08:47 | 15 | Q.   Do you have 1116 in front of you? |
| 08:48 | 16 | A.   Yes. |
| 08:48 | 17 | Q.   Could you tell us, Ms. Garcia, what 1116 is? |
| 08:48 | 18 | A.   It appears to be my employee confidential information |
| 08:48 | 19 | document that I signed for Mattel. |
| 08:48 | 20 | MR. PRICE:  Your Honor, move 1116 into evidence. |
| 08:48 | 21 | THE COURT:  Received. |
| 08:48 | 22 | *(Exhibit No. 1116 received in evidence.)* |
| 08:48 | 23 | *(Document displayed.)* |
| 08:48 | 24 | BY MR. PRICE: |
| 08:48 | 25 | Q.   If we look at the first page, on bottom of the page, do |

CV 04-9049 DOC – 1/20/2011 – Day 5, Volume 1 of 2

15

| | | |
|---|---|---|
| 08:48 | 1 | you see your signature? |
| 08:48 | 2 | A.   Yes, I do. |
| 08:48 | 3 | Q.   I'm sorry.  Not the bottom of the page.  At the bottom |
| 08:48 | 4 | of the second page. |
| 08:48 | 5 | A.   Yes. |
| 08:48 | 6 | Q.   And you signed that when you first joined Mattel in |
| 08:48 | 7 | July of '97? |
| 08:48 | 8 | A.   Yes. |
| 08:48 | 9 | Q.   Now, if we could take a look at some of those |
| 08:49 | 10 | paragraphs, and if you look at the first paragraph and you |
| 08:49 | 11 | see it says, "I acknowledge that Mattel, Inc., the company, |
| 08:49 | 12 | operates in a competitive environment and that it enhances |
| 08:49 | 13 | its opportunities to succeed by establishing certain |
| 08:49 | 14 | policies including those included in this agreement." |
| 08:49 | 15 |     Do you see that? |
| 08:49 | 16 | A.   Yes. |
| 08:49 | 17 | Q.   And you understood that Mattel did work in a |
| 08:49 | 18 | competitive environment, right? |
| 08:49 | 19 | A.   Yes. |
| 08:49 | 20 | Q.   And at some point you realized that MGA was one of the |
| 08:49 | 21 | competitors? |
| 08:49 | 22 | A.   Yes. |
| 08:49 | 23 | Q.   Now, as of April 2000, around that date, or March or |
| 08:49 | 24 | April, you hadn't heard of MGA or didn't know anything about |
| 08:49 | 25 | them, right? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

16

| | | |
|---|---|---|
| 08:49 | 1 | A.   Um, I don't remember -- I don't recall the first time I |
| 08:49 | 2 | remembered or, you know, identified MGA. |
| 08:49 | 3 | Q.   Well, do you recall that when you were -- you're |
| 08:49 | 4 | looking to leave Mattel, you kind of looked for jobs and |
| 08:49 | 5 | were trying to see what's out there, right? |
| 08:50 | 6 | A.   Sure. |
| 08:50 | 7 | Q.   And you found some job posting in connection with MGA? |
| 08:50 | 8 | A.   Yes. |
| 08:50 | 9 | Q.   And that's about the first time you'd heard |
| 08:50 | 10 | specifically of MGA, right? |
| 08:50 | 11 | A.   Yes. |
| 08:50 | 12 | Q.   So -- but by April 2000, you certainly knew that Mattel |
| 08:50 | 13 | and MGA were competitors in the toy business? |
| 08:50 | 14 | A.   Sure. |
| 08:50 | 15 | Q.   And you understood that -- that you had signed an |
| 08:50 | 16 | agreement with Mattel that, at least on its face, |
| 08:50 | 17 | appeared -- said it was necessary to succeed in that |
| 08:50 | 18 | competition, right? |
| 08:50 | 19 | A.   Sure. |
| 08:50 | 20 | Q.   And if you go down to the -- or continue on that page, |
| 08:50 | 21 | it says, "This agreement is designed to make clear that, |
| 08:50 | 22 | one, I will maintain the confidentiality of the company's |
| 08:50 | 23 | trade secrets; and, two, I will use those trade secrets for |
| 08:50 | 24 | the exclusive benefit of the company; and, three, inventions |
| 08:50 | 25 | that I create will be owned by the company." |

| | | |
|---|---|---|
| 08:50 | 1 | You see that? |
| 08:51 | 2 | A.   Yes. |
| 08:51 | 3 | Q.   And it also mentioned that "My prior and continuing |
| 08:51 | 4 | activities separate from the company will not conflict with |
| 08:51 | 5 | the company's development of its proprietary rights," |
| 08:51 | 6 | correct? |
| 08:51 | 7 | A.   Yes. |
| 08:51 | 8 | Q.   So when you were working at Mattel, you knew that you |
| 08:51 | 9 | were operating under this confidentiality agreement so that |
| 08:51 | 10 | Mattel could compete effectively with its competitors, |
| 08:51 | 11 | right? |
| 08:51 | 12 | A.   Sure. |
| 08:51 | 13 | Q.   And if you go to Paragraph 2 on that first page, |
| 08:51 | 14 | No. 2 -- it's not the second one -- where it says, |
| 08:51 | 15 | "Ownership of Inventions."  Do you see that? |
| 08:51 | 16 | A.   Yes. |
| 08:51 | 17 | Q.   And if you look at (b) -- 2(b), it says, "As used in |
| 08:51 | 18 | this agreement the term "inventions" includes but is not |
| 08:51 | 19 | limited to all discoveries, improvements, processes, |
| 08:51 | 20 | developments, designs, know-how, data, computer programs and |
| 08:52 | 21 | formulae, whether patentable or unpatentable." |
| 08:52 | 22 | Do you see that? |
| 08:52 | 23 | A.   Yes. |
| 08:52 | 24 | Q.   And you knew that while you were at Mattel, that if you |
| 08:52 | 25 | came up with a design, a product, or something while you |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

18

| | | |
|---|---|---|
| 08:52 | 1 | were working at Mattel, that that would belong to Mattel, |
| 08:52 | 2 | correct? |
| 08:52 | 3 | MR. McCONVILLE:  Objection.  Vague. |
| 08:52 | 4 | THE COURT:  Overruled. |
| 08:52 | 5 | THE WITNESS:  Um, not necessarily. |
| 08:52 | 6 | BY MR. PRICE: |
| 08:52 | 7 | Q.  One of the things you understood while you were at |
| 08:52 | 8 | Mattel is that if you came up with any inventions or designs |
| 08:52 | 9 | while you were at Mattel, working for Mattel, that related |
| 08:52 | 10 | to Mattel's business while you were working there, those |
| 08:52 | 11 | designs and inventions were Mattel's, correct? |
| 08:53 | 12 | A.  No. |
| 08:53 | 13 | MR. PRICE:  Your Honor, if we could read the |
| 08:53 | 14 | transcript. |
| 08:53 | 15 | THE COURT:  You'll provide me a copy.  Just like |
| 08:53 | 16 | yesterday, I'll need the page. |
| 08:53 | 17 | MR. PRICE:  It's page -- |
| 08:53 | 18 | THE COURT:  No, I won't scramble for that.  You'll |
| 08:53 | 19 | present that -- |
| 08:53 | 20 | MR. PRICE:  We'll bring it up.  For the record and |
| 08:53 | 21 | so counsel knows the page, it's May 28, 2008, page 542, |
| 08:53 | 22 | lines 11 through 17. |
| 08:53 | 23 | THE COURT:  Thank you very much. |
| 08:53 | 24 | You may read. |
| 08:53 | 25 | MR. PRICE:  Your Honor, may we display the text |

| | | |
|---|---|---|
| 08:53 | 1 | while I read through it? |
| 08:53 | 2 | THE COURT:  If it's that exact text, those lines, |
| 08:53 | 3 | you may. |
| 08:53 | 4 | MR. PRICE:  Yes, just that. |
| 08:53 | 5 | *(Document displayed.)* |
| 08:54 | 6 | MR. PRICE:  (Reading:)  "And one of the things |
| 08:54 | 7 | that it said, going back to the first page, you understood |
| 08:54 | 8 | that if you came up with any inventions or designs while you |
| 08:54 | 9 | were at Mattel, working for Mattel, that related to Mattel's |
| 08:54 | 10 | business while you were working there, getting paid by them, |
| 08:54 | 11 | those designs and inventions were Mattel's. |
| 08:54 | 12 | "ANSWER:  Yes." |
| 08:54 | 13 | BY MR. PRICE: |
| 08:54 | 14 | Q.   You gave that testimony under oath, correct? |
| 08:54 | 15 | A.   Yes, I did.  However, I believe that I wasn't a hundred |
| 08:54 | 16 | percent clear. |
| 08:54 | 17 | Q.   Well, in that case -- |
| 08:54 | 18 | MR. PRICE:  Your Honor, we'll take up to you and |
| 08:54 | 19 | I'd like to read from August 13, 2008, page 7084. |
| 08:54 | 20 | THE COURT:  You may not do so until I have it. |
| 08:54 | 21 | MR. PRICE:  I'm -- |
| 08:55 | 22 | THE COURT:  Now, bear with us, because unless I've |
| 08:55 | 23 | read it -- all right. |
| 08:55 | 24 | Counsel, move on to your next question now. |
| | 25 | |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

20

| | | |
|---|---|---|
| 08:55 | 1 | BY MR. PRICE: |
| 08:55 | 2 | Q.   Ms. Garcia, if you'll go back to Exhibit 1116, and if |
| 08:55 | 3 | you'll look at the reading 2(b), if you'll look at |
| 08:55 | 4 | Paragraph 2(c) -- have you done that? |
| 08:55 | 5 | A.   Yes. |
| 08:55 | 6 | Q.   You see where it says, "Any provision in this agreement |
| 08:55 | 7 | requiring me to assign my rights in any invention does not |
| 08:55 | 8 | apply to an invention which qualifies under the provisions |
| 08:56 | 9 | of Section 2870 of the California Labor Code.  That section |
| 08:56 | 10 | provides that the" -- excuse me -- "that the requirement to |
| 08:56 | 11 | assign," quote, "shall not apply to an invention that the |
| 08:56 | 12 | employee developed entirely on his or her own time without |
| 08:56 | 13 | using the employees -- employer's equipment, supplies, |
| 08:56 | 14 | facilities, or trade secret information except for those |
| 08:56 | 15 | inventions that either, one, relate at the time of |
| 08:56 | 16 | conception or reduction to practice of the invention to the |
| 08:56 | 17 | employer's business, or actually" *(sic)* "or demonstratively |
| 08:56 | 18 | anticipated research or development of the employer or, two, |
| 08:56 | 19 | result from any work performed by the employee for the |
| 08:56 | 20 | employer." |
| 08:56 | 21 |      Do you see that? |
| 08:56 | 22 | A.   Yes. |
| 08:56 | 23 | Q.   And you would agree that Mattel is in the business of |
| 08:56 | 24 | developing toys? |
| 08:56 | 25 | A.   Yes. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 1/20/2011 – Day 5, Volume 1 of 2

21

| 08:57 | 1 | Q.   And so reading this, you understood that if you came up |
| 08:57 | 2 | with a concept, a design that related to Mattel's business |
| 08:57 | 3 | while you worked at Mattel, that that belonged to Mattel? |
| 08:57 | 4 | MR. McCONVILLE:  Objection.  Ambiguous. |
| 08:57 | 5 | THE COURT:  Overruled. |
| 08:57 | 6 | THE WITNESS:  As already answered:  It depends. |
| 08:57 | 7 | BY MR. PRICE: |
| 08:57 | 8 | Q.   Well, the first time you answered that question under |
| 08:57 | 9 | oath, you didn't say "that depends," you said "yes," right? |
| 08:57 | 10 | A.   That's right.  I misunderstood the question. |
| 08:57 | 11 | THE COURT:  Counsel, now I have that transcript. |
| 08:57 | 12 | You can go back at any time to the prior proceeding on |
| 08:57 | 13 | August 13, 2008. |
| 08:57 | 14 | MR. PRICE:  Thank you, Your Honor. |
| 08:58 | 15 | BY MR. PRICE: |
| 08:58 | 16 | Q.   Well, let me ask you about your experience.  At MGA you |
| 08:58 | 17 | worked in product development; is that right? |
| 08:58 | 18 | A.   That's right. |
| 08:58 | 19 | Q.   And, obviously, you come up with product ideas? |
| 08:58 | 20 | A.   Yes. |
| 08:58 | 21 | Q.   In fact, that's sort of what you're supposed to do? |
| 08:58 | 22 | A.   Yes. |
| 08:58 | 23 | Q.   And sometimes you come up with improvements and changes |
| 08:58 | 24 | that would be made to products, right? |
| 08:58 | 25 | A.   Yes. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

22

| | | |
|---|---|---|
| 08:58 | 1 | Q.   And sometimes you'd come up with those ideas while you |
| 08:58 | 2 | were at home? |
| 08:58 | 3 | A.   Yes. |
| 08:58 | 4 | Q.   And sometimes you'd come up with those ideas at night? |
| 08:58 | 5 | A.   Not so much. |
| 08:58 | 6 | Q.   But you have? |
| 08:58 | 7 | A.   Um, I don't recall any, but -- I don't recall any at |
| 08:58 | 8 | night.  I'm usually pretty tired. |
| 08:58 | 9 | Q.   Sometimes you come up with ideas during the weekend? |
| 08:58 | 10 | A.   Um, I don't recall any. |
| 08:58 | 11 | Q.   Okay. |
| 08:58 | 12 | MR. PRICE:  Your Honor, if we could put before her |
| 08:58 | 13 | and before you, this is Volume VII, 2196, line 23, to 2198, |
| 08:59 | 14 | line -- I think it's 22.  Let me hand you a... |
| 08:59 | 15 | THE COURT:  All right.  Counsel, I've approved the |
| 08:59 | 16 | prior request you had on cross-examination as well. |
| 08:59 | 17 | MR. PRICE:  Thank you. |
| 08:59 | 18 | THE COURT:  So while I read this... |
| 08:59 | 19 | MR. PRICE:  Thank you, Your Honor. |
| 09:00 | 20 | THE COURT:  I don't have 2196. |
| 09:00 | 21 | All right.  Thank you. |
| 09:00 | 22 | MR. PRICE:  Your Honor, I would ask to read 7084. |
| 09:00 | 23 | I think it includes lines 19 through 22. |
| 09:00 | 24 | THE COURT:  You may do so. |
| | 25 | |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 09:00 | 1 | BY MR. PRICE: |
| 09:00 | 2 | Q.    "QUESTION:  You knew that Mattel's agreements provided |
| 09:00 | 3 | that if he, referring to Carter Bryant, was a Mattel |
| 09:00 | 4 | employee and created drawings while he was a Mattel |
| 09:00 | 5 | employee, they belonged to Mattel, right? |
| 09:00 | 6 |      "ANSWER:  Yes." |
| 09:00 | 7 |      Ms. Garcia, was that the testimony you gave on |
| 09:00 | 8 | August 13, 2008? |
| 09:00 | 9 | A.    Yes.  If I might please explain? |
| 09:00 | 10 | Q.    So you want -- let me understand first, though.  On two |
| 09:00 | 11 | occasions under oath, you have said that if an employee |
| 09:01 | 12 | creates inventions relating to the company's business -- |
| 09:01 | 13 | A.    Yes. |
| 09:01 | 14 | Q.    -- whether -- |
| 09:01 | 15 |           THE COURT:  You answer the questions as asked of |
| 09:01 | 16 | you. |
| 09:01 | 17 |           THE WITNESS:  Okay. |
| 09:01 | 18 |           THE COURT:  There's another side, and they'll ask |
| 09:01 | 19 | those questions, if there's an explanation needed. |
| 09:01 | 20 |           THE WITNESS:  Okay. |
| 09:01 | 21 |           THE COURT:  They're good attorneys. |
| 09:01 | 22 |           THE WITNESS:  Okay. |
| 09:01 | 23 |           THE COURT:  All right. |
| 09:01 | 24 | BY MR. PRICE: |
| 09:01 | 25 | Q.    So just to review.  So on two occasions under oath, you |

| | | |
|---|---|---|
| 09:01 | 1 | said that if you're an employee of a company that makes toys |
| 09:01 | 2 | and you come up with a toy idea, it belongs to that company, |
| 09:01 | 3 | correct? |
| 09:01 | 4 | A.   As confirmed, my answer is it depends. |
| 09:01 | 5 | Q.   I'm asking you what you said under oath twice before. |
| 09:01 | 6 | Twice before you didn't say "it depends," did you? |
| 09:01 | 7 | A.   No. |
| 09:01 | 8 | Q.   Twice before when you were asked whether or not a |
| 09:01 | 9 | company -- as an employee of the company and they make |
| 09:01 | 10 | inventions relating to that company -- that it belongs to |
| 09:01 | 11 | the company, correct? |
| 09:02 | 12 | A.   As sitting here, my answer to that is it depends. |
| 09:02 | 13 | Q.   But I'm asking whether twice under oath before, you |
| 09:02 | 14 | said the answer was "yes"? |
| 09:02 | 15 | A.   That's correct. |
| 09:02 | 16 | Q.   And, in fact, the second question concerned whether or |
| 09:02 | 17 | not Mattel owned Carter Bryant's drawings if he worked at |
| 09:02 | 18 | Mattel when he drew them, right? |
| 09:02 | 19 | A.   Could you repeat the question?  I'm sorry. |
| 09:02 | 20 | Q.   Sure.  The second question I read to you was, "You knew |
| 09:02 | 21 | that Mattel's agreements provided that if he," Carter |
| 09:02 | 22 | Bryant, "was a Mattel employee and created drawings while he |
| 09:02 | 23 | was at Mattel -- while he was a Mattel employee, that they |
| 09:03 | 24 | belonged to Mattel?" |
| 09:03 | 25 | And your answer to that was "yes," correct? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

25

| | | |
|---|---|---|
| 09:03 | 1 | A.    Correct. |
| 09:03 | 2 | Q.    Now, I want to talk to you about what you've done at |
| 09:03 | 3 | MGA.  And you didn't recall whether you worked on product |
| 09:03 | 4 | ideas on weekends or at nights.  So I'd like you to look at |
| 09:03 | 5 | Volume VII. |
| 09:03 | 6 | THE COURT:  2196, Counsel, line 23, through 2198, |
| 09:03 | 7 | you may read that portion. |
| 09:03 | 8 | MR. PRICE:  Thank you. |
| 09:03 | 9 | "QUESTION:  And, by the way, have you yourself |
| 09:03 | 10 | ever come up with any product ideas? |
| 09:03 | 11 | "ANSWER:  Sure. |
| 09:03 | 12 | "QUESTION:  In fact, that's pretty commonplace, |
| 09:03 | 13 | isn't it?  It's part of your job? |
| 09:03 | 14 | "ANSWER:  Yes. |
| 09:03 | 15 | "And -- and sometimes you also come up with |
| 09:03 | 16 | improvements or changes that would be made to products that |
| 09:03 | 17 | are in development, right? |
| 09:03 | 18 | "ANSWER:  Sure. |
| 09:03 | 19 | "And -- and sometimes you come up with those -- |
| 09:03 | 20 | these ideas while you're at home, correct? |
| 09:03 | 21 | "ANSWER:  Yes. |
| 09:04 | 22 | "QUESTION:  Sometimes you come up with them at |
| 09:04 | 23 | night, correct? |
| 09:04 | 24 | "ANSWER:  Yes. |
| 09:04 | 25 | "QUESTION:  Sometimes you come up with them during |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

26

| | | |
|---|---|---|
| 09:04 | 1 | weekends, correct? |
| 09:04 | 2 | "ANSWER:  Yes." |
| 09:04 | 3 | BY MR. PRICE: |
| 09:04 | 4 | Q.   Now, Ms. Garcia, does that refresh your recollection |
| 09:04 | 5 | that as an employee of MGA, you -- you can't help but come |
| 09:04 | 6 | up with ideas on nights and weekends that relate to your |
| 09:04 | 7 | job? |
| 09:04 | 8 | A.   Yes. |
| 09:04 | 9 | Q.   And you've done that? |
| 09:04 | 10 | A.   It's possible, yes. |
| 09:04 | 11 | Q.   Now, I want to ask you, on any of these ideas that |
| 09:04 | 12 | relate to MGA's business that you've thought up on weekends |
| 09:04 | 13 | or -- or nights or at home, any of those ideas, have you |
| 09:04 | 14 | taken them to a competitor and tried to sell them? |
| 09:04 | 15 | A.   No. |
| 09:04 | 16 | Q.   And that's because you know that would be wrong? |
| 09:05 | 17 | MR. McCONVILLE:  Objection.  Lacks foundation. |
| 09:05 | 18 | THE COURT:  Overruled. |
| 09:05 | 19 | THE WITNESS:  No.  When I come up with |
| 09:05 | 20 | improvements or come up with some ideas that happen to take |
| 09:05 | 21 | place at night and weekends at home, if I were to come up |
| 09:05 | 22 | with those, in my experience, those that I've arrived at are |
| 09:05 | 23 | related to products that I'm currently working on at Mattel, |
| 09:05 | 24 | projects where I'm trying to resolve potentially an issue on |
| 09:05 | 25 | a design that is being concepted while at Mattel by -- while |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

27

| | | |
|---|---|---|
| 09:05 | 1 | at MGA. |
| 09:05 | 2 | BY MR. PRICE: |
| 09:05 | 3 | Q.   Okay.  Then why did you twice before under oath say |
| 09:05 | 4 | that if you are employed by a company and you come up with |
| 09:05 | 5 | an idea relating to their business, it belongs to the |
| 09:05 | 6 | company?  Let me rephrase that. |
| 09:05 | 7 | What was -- did you not understand about those |
| 09:05 | 8 | questions when you were asked before and said, "Yes, it |
| 09:05 | 9 | belongs to the company"? |
| 09:05 | 10 | A.   My understanding when asked those questions was that |
| 09:06 | 11 | you were -- you were asking whether or not Carter or an |
| 09:06 | 12 | employee was working, um, at the Mattel premises. |
| 09:06 | 13 | Q.   So when I read you from page 7084 and you were asked, |
| 09:06 | 14 | "You knew that Mattel's agreements provided that if he, |
| 09:06 | 15 | Carter Bryant, was a Mattel employee and created drawings |
| 09:06 | 16 | while he was a Mattel employee, they belonged to Mattel, |
| 09:06 | 17 | right? |
| 09:06 | 18 | "ANSWER:  Yes." |
| 09:06 | 19 | So what you're telling us now is you misunderstood that |
| 09:06 | 20 | question? |
| 09:06 | 21 | A.   That's right.  I presumed you were asking whether he |
| 09:06 | 22 | was creating or concepting while he is a Mattel employee, |
| 09:06 | 23 | while working at Mattel. |
| 09:06 | 24 | Q.   Okay.  If you could, ma'am, look at Exhibit 1116, which |
| 09:06 | 25 | was your agreement? |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

28

| | | |
|---|---|---|
| 09:06 | 1 | A.   Yes. |
| 09:06 | 2 | Q.   At Mattel? |
| 09:06 | 3 | A.   Yep. |
| 09:06 | 4 | Q.   And, by the way, your expectation was that other Mattel |
| 09:06 | 5 | employees had an agreement like this, right? |
| 09:07 | 6 | MR. McCONVILLE:  Objection.  Relevance. |
| 09:07 | 7 | THE COURT:  Overruled. |
| 09:07 | 8 | THE WITNESS:  I'm not sure what others signed as |
| 09:07 | 9 | employee contracts at Mattel. |
| 09:07 | 10 | BY MR. PRICE: |
| 09:07 | 11 | Q.   At the time, as of April 2000, when you became an MGA |
| 09:07 | 12 | employee, it was your expectation that other employees would |
| 09:07 | 13 | have these sorts of agreements, right? |
| 09:07 | 14 | A.   I presume that employees would have agreements.  I'm |
| 09:07 | 15 | not sure if they would differ one from the other as |
| 09:07 | 16 | function.  I have no idea. |
| 09:07 | 17 | Q.   Okay.  Let's look at yours. |
| 09:07 | 18 | A.   Okay. |
| 09:07 | 19 | Q.   If we could look again at that 2(c) where it says that |
| 09:07 | 20 | you're not required to assign inventions that you develop on |
| 09:07 | 21 | your own time unless those inventions relate at the time of |
| 09:07 | 22 | conception -- and let me stop there. |
| 09:07 | 23 | Do you understand what conception means? |
| 09:07 | 24 | A.   I know it in the capacity of design.  I'm not sure if |
| 09:07 | 25 | it has a separate meaning in the legal sense. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

29

| | | |
|---|---|---|
| 09:08 | 1 | Q.   Okay.  Well, let's say, normal language.  Conception |
| 09:08 | 2 | means you conceive of something, right?  You think of it? |
| 09:08 | 3 | A.   Yes. |
| 09:08 | 4 | Q.   If they "relate at the time of conception" or, as you |
| 09:08 | 5 | said, when you think of it, "or reduction to practice of the |
| 09:08 | 6 | invention to the employer's business" -- you saw that? |
| 09:08 | 7 | A.   May I have a chance to read it, please? |
| 09:08 | 8 | Q.   Sure. |
| 09:08 | 9 | A.   Is it the yellow highlight? |
| 09:08 | 10 | Q.   It's -- I think so.  I can't see that far. |
| 09:08 | 11 | (Document displayed.) |
| 09:08 | 12 | THE WITNESS:  Okay. |
| 09:08 | 13 | BY MR. PRICE: |
| 09:08 | 14 | Q.   So your agreement said that if you think of an idea, |
| 09:08 | 15 | even when you're not at work, that relates to the employer's |
| 09:08 | 16 | business, that belongs to Mattel.  That's what that says, |
| 09:08 | 17 | right? |
| 09:08 | 18 | A.   Yeah.  Mr. Price, I'm not really sure exactly what this |
| 09:09 | 19 | document really says.  It has a lot of language.  I can tell |
| 09:09 | 20 | you what I generally understood about this contract. |
| 09:09 | 21 | Q.   Well, when you answered those two questions previously |
| 09:09 | 22 | under oath, that if you're a Mattel employee and you come up |
| 09:09 | 23 | with ideas that relate to Mattel, they belong to Mattel, and |
| 09:09 | 24 | you said "yes," you were thinking of this provision, weren't |
| 09:09 | 25 | you?  You were thinking, yeah, if it relates to the |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

30

| | | |
|---|---|---|
| 09:09 | 1 | business -- I mean, my employer owns it? |
| 09:09 | 2 | A.    No. |
| 09:09 | 3 | Q.    So your testimony now is you just made a mistake those |
| 09:09 | 4 | last two times under oath? |
| 09:09 | 5 | MR. McCONVILLE:  Objection.  Mischaracterizes her |
| 09:09 | 6 | testimony. |
| 09:09 | 7 | THE COURT:  Overruled. |
| 09:09 | 8 | THE WITNESS:  No, I didn't make a mistake.  I just |
| 09:09 | 9 | think that it's important to clarify my understanding of |
| 09:09 | 10 | your question and my understanding generally of this |
| 09:09 | 11 | document. |
| 09:09 | 12 | BY MR. PRICE: |
| 09:09 | 13 | Q.    Well, let me ask you, the question I read you from |
| 09:09 | 14 | August 13, 2008, the one that you knew that Mattel's |
| 09:09 | 15 | agreements provided that if Carter Bryant was a Mattel |
| 09:10 | 16 | employee when he did -- created the drawings they belonged |
| 09:10 | 17 | to Mattel and you said "yes," did you ever correct that |
| 09:10 | 18 | testimony? |
| 09:10 | 19 | A.    No. |
| 09:10 | 20 | Q.    So the first time you've said under oath that your |
| 09:10 | 21 | prior two answers were incorrect was today? |
| 09:10 | 22 | A.    I'm -- I'm not even to suggest necessarily that -- |
| 09:10 | 23 | right.  That's correct. |
| 09:10 | 24 | Q.    Now, in addition -- now, in addition to the agreement |
| 09:10 | 25 | that you had with Mattel, around April 2000, you also signed |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

31

| | | |
|---|---|---|
| 09:10 | 1 | an agreement with MGA? |
| 09:10 | 2 | A.   Yes. |
| 09:10 | 3 | Q.   Right?  Okay.  And if you would look at that -- it's |
| 09:10 | 4 | Exhibit 1117. |
| 09:10 | 5 | MR. PRICE:  Ms. Juarez, if you can place that in |
| 09:11 | 6 | front of her. |
| 09:11 | 7 | MS. JUAREZ:  Of course. |
| 09:11 | 8 | *(Document provided to witness.)* |
| 09:11 | 9 | BY MR. PRICE: |
| 09:11 | 10 | Q.   Do you have that? |
| 09:11 | 11 | A.   Yes. |
| 09:11 | 12 | Q.   Could you tell us what it is. |
| 09:11 | 13 | A.   It's my MGA employment contract. |
| 09:11 | 14 | MR. PRICE:  Your Honor, move 1117 into evidence. |
| 09:11 | 15 | THE COURT:  Received. |
| 09:11 | 16 | *(Exhibit No. 1117 received in evidence.)* |
| 09:11 | 17 | BY MR. PRICE: |
| 09:11 | 18 | Q.   And the first page here is a letter from MGA offering |
| 09:11 | 19 | you a job, right? |
| 09:11 | 20 | *(Document displayed.)* |
| 09:11 | 21 | THE WITNESS:  Yes. |
| 09:11 | 22 | BY MR. PRICE: |
| 09:11 | 23 | Q.   And attached to this, starting at page 3, is MGA's |
| 09:11 | 24 | confidentiality and inventions agreement, correct? |
| 09:11 | 25 | A.   Correct. |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

32

| | | |
|---|---|---|
| 09:11 | 1 | Q.   And if we look, I guess, at page 5 there, you see |
| 09:11 | 2 | there's a -- looks like a signature.  Is that yours? |
| 09:11 | 3 | A.   Yes. |
| 09:11 | 4 | Q.   And if you look under the inventions agreement, under |
| 09:11 | 5 | Assignment of Interest, it says, "Employee agrees to assign |
| 09:11 | 6 | and does hereby assign to company all interest which |
| 09:12 | 7 | employee may have in all patentable and/or not patentable |
| 09:12 | 8 | idea and/or inventions made or conceived by employee, solely |
| 09:12 | 9 | or jointly with others, during employee's employment with |
| 09:12 | 10 | the company." |
| 09:12 | 11 | So that's what you're agreeing with MGA? |
| 09:12 | 12 | A.   Yes. |
| 09:12 | 13 | Q.   And it goes on to say, "This assignment shall not apply |
| 09:12 | 14 | to any idea or invention developed by employee entirely on |
| 09:12 | 15 | employee's own time without equipment, supplies, facilities, |
| 09:12 | 16 | or trade secret information of the company unless such |
| 09:12 | 17 | invention or idea, one, relates to the business of the |
| 09:12 | 18 | company or to the company's actual or anticipated research |
| 09:12 | 19 | or development." |
| 09:12 | 20 | Do you see that? |
| 09:12 | 21 | A.   Yes. |
| 09:12 | 22 | Q.   So your agreement with MGA had the same provision, |
| 09:12 | 23 | which is, if you come up with an idea or concept that |
| 09:12 | 24 | relates to the company's business, even if it's at home or |
| 09:13 | 25 | on weekends or whatever, it belongs to the company, right? |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

33

| | | |
|---|---|---|
| 09:13 | 1 | A.    I guess the answer again is it depends. |
| 09:13 | 2 | Q.    Now, I want you to look at this provision carefully now |
| 09:13 | 3 | and point out where it says "it depends." |
| 09:13 | 4 | A.    I don't believe it says "it depends" in the contract. |
| 09:13 | 5 | Q.    And what you've done throughout your business with |
| 09:13 | 6 | MGA -- |
| 09:13 | 7 | A.    Yes. |
| 09:13 | 8 | Q.    -- is if you've come up with a product idea, at nights |
| 09:13 | 9 | or on weekends or at home, you haven't gone to a competitor |
| 09:13 | 10 | and tried to sell it, right? |
| 09:13 | 11 | A.    Right. |
| 09:13 | 12 | Q.    And what this provision says in the MGA contract is |
| 09:13 | 13 | basically the same thing as what the Mattel contract says, |
| 09:13 | 14 | which is that if you come up with the idea while you're an |
| 09:14 | 15 | employee of a company that relates to that business, it |
| 09:14 | 16 | belongs to the company, right? |
| 09:14 | 17 | MR. McCONVILLE:  Objection.  Calls for a legal |
| 09:14 | 18 | conclusion. |
| 09:14 | 19 | THE COURT:  Overruled. |
| 09:14 | 20 | THE WITNESS:  No. |
| 09:14 | 21 | MR. PRICE:  Your Honor, if we can put in front of |
| 09:14 | 22 | you, I'd like to read from May 28, 2008. |
| 09:14 | 23 | THE COURT:  May 28, 2008. |
| 09:14 | 24 | MR. PRICE:  Page 546, lines 1 through 5. |
| 09:15 | 25 | THE COURT:  Thank you.  You may. |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

34

| | | |
|---|---|---|
| 09:15 | 1 | BY MR. PRICE: |
| 09:15 | 2 | Q.   "QUESTION:  And you understood that basically this was |
| 09:15 | 3 | saying the same thing that your Mattel agreement said, which |
| 09:15 | 4 | is that if you invent something while you're at MGA that |
| 09:15 | 5 | pertains to MGA's business, that would belong to MGA, |
| 09:15 | 6 | correct? |
| 09:15 | 7 |     "ANSWER:  Yes." |
| 09:15 | 8 |     By the way, Carter Bryant was, in your words, the |
| 09:15 | 9 | inventor of Bratz, right? |
| 09:15 | 10 | A.   Um, yeah.  He's the inventor of the concept Bratz, not |
| 09:15 | 11 | the inventor of the brand. |
| 09:15 | 12 | Q.   Okay.  You said in an interview, have you not, that |
| 09:15 | 13 | Carter Bryant is the inventor of Bratz, right? |
| 09:16 | 14 | A.   Yes. |
| 09:16 | 15 | Q.   In fact, if you look at -- it's Exhibit 10001. |
| 09:16 | 16 |         THE COURT:  This is the e-mail, the May 1st, 2001? |
| 09:16 | 17 |         MR. PRICE:  It is, Your Honor. |
| 09:16 | 18 |         THE COURT:  Thank you. |
| 09:16 | 19 | BY MR. PRICE: |
| 09:16 | 20 | Q.   And you recognize this, Ms. Garcia, as an e-mail that |
| 09:16 | 21 | you sent to a Robert Haynes-Peterson around May 1st, 2001? |
| 09:16 | 22 | A.   Yes. |
| 09:16 | 23 | Q.   And just so we're not confused, you were -- you had a |
| 09:16 | 24 | different last name then? |
| 09:16 | 25 | A.   Yes. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

35

| | | |
|---|---|---|
| 09:16 | 1 | Q.    And could you please pronounce it? |
| 09:16 | 2 | A.    Treantafelles. |
| 09:17 | 3 | Q.    Well, I wouldn't have said that. |
| 09:17 | 4 | MR. PRICE:  Your Honor, move Exhibit 10001 into |
| 09:17 | 5 | evidence. |
| 09:17 | 6 | THE COURT:  Received. |
| 09:17 | 7 | *(Exhibit No. 10001 received in evidence.)* |
| 09:17 | 8 | BY MR. PRICE: |
| 09:17 | 9 | Q.    If you can see the first part of this where it says |
| 09:17 | 10 | Paula Treantafelles -- may I refer to you as Ms. Garcia? |
| 09:17 | 11 | A.    Sure. |
| 09:17 | 12 | Q.    It's an e-mail you sent May 1, 2001, where it says, |
| 09:17 | 13 | "Robert, I apologize for taking so long to respond to the |
| 09:17 | 14 | below.  Please see my responses to your questions below." |
| 09:17 | 15 | Do you see that? |
| 09:17 | 16 | A.    Yes. |
| 09:17 | 17 | Q.    And Mr. Haynes-Peterson had sent you questions |
| 09:17 | 18 | concerning Bratz, and what you did was go through the |
| 09:17 | 19 | questions on his e-mail and type out answers? |
| 09:17 | 20 | A.    Yes. |
| 09:17 | 21 | Q.    And so if we go to the second page, you see there's a |
| 09:17 | 22 | question -- I think it's the seventh or sixth question down. |
| 09:17 | 23 | "How did MGA design the four different girls, both |
| 09:18 | 24 | inspiration for the overall design and the look of each |
| 09:18 | 25 | girl." |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 1/20/2011 – Day 5, Volume 1 of 2

36

09:18  1          Do you see that?

09:18  2   A.   Yes.

09:18  3   Q.   And when it referred to the four different girls, it

09:18  4   was referring to Bratz, right?

09:18  5   A.   Yes.

09:18  6   Q.   And your answer as to who designed them, who was the

09:18  7   inspiration for the overall design and look, you gave the

09:18  8   following answer:  "The four girls were already concepted

09:18  9   and presented by the inventor during our first meeting.  I

09:18  10  thought they were incredible, and I tried to stay true to

09:18  11  this inventor/creator's vision."

09:18  12          That was the answer you typed up on the e-mail,

09:18  13  correct?

09:18  14  A.   Yes.

09:18  15  Q.   And you didn't say in this e-mail, dated May 1, 2001,

09:18  16  who that was, right?  You didn't say Carter Bryant?

09:18  17  A.   No.

09:18  18  Q.   But that's who you were referring to when you said that

09:18  19  "the girls were already concepted when presented by the

09:19  20  inventor during our first meeting," correct?

09:19  21  A.   Yes.

09:19  22  Q.   And so you would agree, again, as someone who had

09:19  23  signed, you know, two confidentiality agreements which

09:19  24  talked about inventions and design -- you would agree that

09:19  25  by the time you first met Carter Bryant, you thought he fit

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

37

| | | |
|---|---|---|
| 09:19 | 1 | under this concept of being an inventor? |
| 09:19 | 2 | MR. McCONVILLE:  Objection.  Relevance. |
| 09:19 | 3 | Foundation. |
| 09:19 | 4 | THE COURT:  Overruled. |
| 09:19 | 5 | THE WITNESS:  Yes. |
| 09:19 | 6 | BY MR. PRICE: |
| 09:19 | 7 | Q.   Now, we talked inventions -- actually, let me ask you a |
| 09:19 | 8 | little bit about the scope of confidentiality. |
| 09:20 | 9 | It's your understanding and belief that a toy |
| 09:20 | 10 | manufacturer's unreleased toy concepts, those that haven't |
| 09:20 | 11 | been made public, are among its most highly valuable trade |
| 09:20 | 12 | secrets, right? |
| 09:20 | 13 | A.   Yes. |
| 09:20 | 14 | Q.   And so, for example, let's say that you come up with a |
| 09:20 | 15 | toy concept and -- well, let me ask you this:  Has MGA ever |
| 09:20 | 16 | come up with toy concepts that it hasn't used? |
| 09:20 | 17 | A.   I presume so, yes. |
| 09:20 | 18 | Q.   I mean, that's fairly typical for a company that's |
| 09:20 | 19 | trying to develop toys.  You come up with ideas you do use; |
| 09:20 | 20 | you come up with ideas that you don't, right? |
| 09:20 | 21 | A.   Sure. |
| 09:20 | 22 | Q.   So MGA has come up with toy concepts that it's decided |
| 09:20 | 23 | not to put into the marketplace, right? |
| 09:20 | 24 | A.   Yes. |
| 09:20 | 25 | Q.   And it's still MGA's concept, MGA's toy idea, right? |

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 38 of 125   Page ID #:290320
CV 04-9049 DOC – 1/20/2011 – Day 5, Volume 1 of 2

38

| | | |
|---|---|---|
| 09:20 | 1 | A.    Yes. |
| 09:20 | 2 | Q.    I mean, you wouldn't go and hand that idea to a |
| 09:20 | 3 | competitor and say, "You make it," right? |
| 09:21 | 4 | A.    No. |
| 09:21 | 5 | Q.    And that's because those ideas and concepts and |
| 09:21 | 6 | designs, even if you haven't gone to the market with them, |
| 09:21 | 7 | are among your most highly valuable trade secrets, right? |
| 09:21 | 8 | A.    Right. |
| 09:21 | 9 | Q.    I mean, you don't want your competitor competing |
| 09:21 | 10 | against you with a design and concept that you created, |
| 09:21 | 11 | right? |
| 09:21 | 12 | A.    Right. |
| 09:21 | 13 | Q.    And you believe that these kind of drawings and designs |
| 09:21 | 14 | for these concepts, they represent works in progress and |
| 09:21 | 15 | ideas for advancing and developing future product lines, |
| 09:21 | 16 | right? |
| 09:21 | 17 | A.    Yes. |
| 09:21 | 18 | Q.    And you believe that the value of those unreleased |
| 09:21 | 19 | designs and ideas is enormous? |
| 09:21 | 20 | A.    Yes. |
| 09:22 | 21 | Q.    Now, let's talk about how companies protect those -- |
| 09:22 | 22 | those enormously valuable ideas and designs, ones that |
| 09:22 | 23 | aren't even in the marketplace. |
| 09:22 | 24 | For one thing, it's now your understanding, and was |
| 09:22 | 25 | certainly as of September 2000, that companies -- toy |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 39 of 125   Page ID #:290321
CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

39

| | | |
|---|---|---|
| 09:22 | 1 | companies usually require their employees to sign |
| 09:22 | 2 | confidentiality agreements, right? |
| 09:22 | 3 | A.   I believe so, yes. |
| 09:22 | 4 | Q.   And your experience in toy companies was that computers |
| 09:22 | 5 | are password-protected, right? |
| 09:22 | 6 | A.   Yes. |
| 09:22 | 7 | Q.   And that the product-design buildings have security |
| 09:22 | 8 | guards in them? |
| 09:22 | 9 | A.   Yes. |
| 09:22 | 10 | Q.   And entry is prohibited except for authorized people, |
| 09:22 | 11 | correct? |
| 09:22 | 12 | A.   Yes. |
| 09:22 | 13 | Q.   And even vendors and third-parties and manufacturers |
| 09:22 | 14 | who may see a product design are required to sign strict |
| 09:22 | 15 | confidentiality agreements? |
| 09:22 | 16 | A.   Yes. |
| 09:23 | 17 | Q.   And that was true at Mattel, and that was true at MGA, |
| 09:23 | 18 | right? |
| 09:23 | 19 | A.   Um, I know that to be true of MGA.  I -- I'm not -- I |
| 09:23 | 20 | generally understand that to be the truth for Mattel as |
| 09:23 | 21 | well. |
| 09:23 | 22 | Q.   And I wanted to ask you, when you left Mattel, you gave |
| 09:23 | 23 | a two-week -- no, you informed Mattel that you were going to |
| 09:23 | 24 | work for a competitor, right? |
| 09:23 | 25 | A.   Yes. |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

40

| | | |
|---|---|---|
| 09:23 | 1 | Q.   And that was the honest and right thing to do, you |
| 09:23 | 2 | believe? |
| 09:23 | 3 | A.   Yes. |
| 09:23 | 4 | Q.   And you knew that Mattel had a policy that if you were |
| 09:23 | 5 | going to work for a competitor, you couldn't stay there an |
| 09:23 | 6 | extra two weeks, right? |
| 09:23 | 7 | A.   I didn't know if that was the policy.  I'm not sure |
| 09:23 | 8 | that they had a policy regarding that. |
| 09:23 | 9 | Q.   Well, when you told Mattel you were going to work for |
| 09:23 | 10 | MGA, you expected that you would be asked to leave the |
| 09:24 | 11 | building, right? |
| 09:24 | 12 | A.   Um, I believed it was possible, yes. |
| 09:24 | 13 | Q.   Why did you think it was possible? |
| 09:24 | 14 | A.   Um, there were generally -- I remember at Mattel that |
| 09:24 | 15 | when employees gave notice, on occasion they were asked to |
| 09:24 | 16 | leave within that day.  There were others that, um, in rough |
| 09:24 | 17 | memory, may have stayed, not exactly leave right away.  So I |
| 09:24 | 18 | expected that in that experience, that it would have been |
| 09:24 | 19 | possible that they would have asked me to leave that day. |
| 09:24 | 20 | Q.   And you understood the reason for it? |
| 09:24 | 21 | A.   I generally understood, yeah. |
| 09:24 | 22 | Q.   And what's the reason? |
| 09:24 | 23 | A.   Um, I presume that it was my understanding that if I |
| 09:25 | 24 | were to work for a competitor, it may have been that Mattel |
| 09:25 | 25 | didn't want me to be exposed to any of their content. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

41

| | | |
|---|---|---|
| 09:25 | 1 | Q.   And MGA has the same policy, doesn't it? |
| 09:25 | 2 | A.   I don't -- I -- honest to say I don't -- I'm not aware. |
| 09:25 | 3 | I'm not sure of any policies at MGA in the same way. |
| 09:25 | 4 | Q.   I take it you believe your memory was better a few |
| 09:25 | 5 | years ago than it is today about these sorts of things? |
| 09:25 | 6 | A.   Um, I don't know. |
| 09:25 | 7 | Q.   Over time we all forget things? |
| 09:25 | 8 | A.   Sure. |
| 09:25 | 9 | Q.   We'll come back to that.  I apologize. |
| 09:26 | 10 | So I want you -- we talked about the inventions and |
| 09:26 | 11 | whether they're assigned.  I'd like you to look at the |
| 09:26 | 12 | Mattel contract and at a different provision.  Again, this |
| 09:26 | 13 | is 1116.  And look at -- it's, I think, the second page |
| 09:26 | 14 | under 3, there's something called "Conflicts with other |
| 09:26 | 15 | Activities." |
| 09:26 | 16 | Do you see that? |
| 09:26 | 17 | A.   Yes. |
| 09:26 | 18 | Q.   And you see under (a) it says, "My employment with the |
| 09:26 | 19 | company requires my undivided attention and effort. |
| 09:27 | 20 | Therefore, during my employment with the company, I will |
| 09:27 | 21 | fully comply with the company's conflict of interest policy |
| 09:27 | 22 | as it may be amended from time to time.  I shall not, |
| 09:27 | 23 | without the company's express written consent, engage in any |
| 09:27 | 24 | employment or business other than for the company, invest in |
| 09:27 | 25 | or assist in any manner any business competitive with the |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

42

| | | |
|---|---|---|
| 09:27 | 1 | business or future business plans of the company." |
| 09:27 | 2 | Do you see that? |
| 09:27 | 3 | A. Yes. |
| 09:27 | 4 | Q. And your understanding was that what that meant was you |
| 09:27 | 5 | can't assist a competitor at the same time you're working |
| 09:27 | 6 | for Mattel? |
| 09:27 | 7 | A. I guess it depends. |
| 09:28 | 8 | Q. I'm not talking about inventions here. I'm talking |
| 09:28 | 9 | about assist. Didn't you understand that while you were |
| 09:28 | 10 | working with Mattel that unless you had written permission, |
| 09:28 | 11 | you could not assist a competitor in any manner? |
| 09:28 | 12 | A. Yes. |
| 09:28 | 13 | Q. And you didn't even need an agreement to tell you that, |
| 09:28 | 14 | right? I mean, that is, you knew before signing this |
| 09:28 | 15 | agreement that it would be wrong to work for a company and |
| 09:28 | 16 | assist its competitor? |
| 09:28 | 17 | A. Generally, yes. |
| 09:28 | 18 | Q. And you knew that if someone was doing that, that if |
| 09:29 | 19 | you knew someone who was assisting a competitor while |
| 09:29 | 20 | working for the company -- right? -- you knew that, in your |
| 09:29 | 21 | mind, that that would cast some doubt on that person's |
| 09:29 | 22 | honesty and credibility, right? |
| 09:29 | 23 | A. Yes. |
| 09:29 | 24 | Q. And to you what it would mean is maybe you shouldn't |
| 09:29 | 25 | trust that person, right? |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

43

| 09:29 | 1 | A.   Yes. |
|---|---|---|
| 09:29 | 2 | Q.   So let's see if we can look at this timeline for a |
| 09:29 | 3 | second. |
| 09:30 | 4 | (Document displayed.) |
| 09:30 | 5 | BY MR. PRICE: |
| 09:30 | 6 | Q.   So in April 2000, you leave Mattel and go to MGA, |
| 09:30 | 7 | right? |
| 09:30 | 8 | A.   Yes. |
| 09:30 | 9 | Q.   And your testimony is that you first met with Carter |
| 09:30 | 10 | Bryant in September of 2000, right? |
| 09:30 | 11 | A.   Yes. |
| 09:31 | 12 | Q.   Now, certainly today, as of today, you know that in |
| 09:31 | 13 | September of 2000, when you say you first met with Carter |
| 09:31 | 14 | Bryant, that he was at that time an employee at Mattel, |
| 09:31 | 15 | right? |
| 09:31 | 16 | A.   I'm sorry.  Could you please repeat the question? |
| 09:31 | 17 | Q.   Sure.  I'm talking about right now.  Okay?  We'll get |
| 09:31 | 18 | to later.  But right now you have come to learn that as of |
| 09:31 | 19 | September of 2000, when you say you first met with Carter |
| 09:31 | 20 | Bryant, that he was an employee at Mattel.  You know that |
| 09:31 | 21 | now, right? |
| 09:31 | 22 | A.   Yes. |
| 09:31 | 23 | Q.   And in September of 2000 -- your testimony is that he |
| 09:31 | 24 | came to MGA and showed this portfolio of drawings for the |
| 09:31 | 25 | Bratz characters, right? |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

44

| | | |
|---|---|---|
| 09:31 | 1 | A.    That's right. |
| 09:31 | 2 | Q.    And in the meeting there was Mr. Larian, correct? |
| 09:32 | 3 | A.    Yes. |
| 09:32 | 4 | Q.    And he was then the CEO of MGA, correct? |
| 09:32 | 5 | A.    Yes. |
| 09:32 | 6 | Q.    And there was -- his daughter was there? |
| 09:32 | 7 | A.    Yes. |
| 09:32 | 8 | Q.    And Victoria O'Connor? |
| 09:32 | 9 | A.    Yes. |
| 09:32 | 10 | Q.    And what was her job at the time with MGA? |
| 09:32 | 11 | A.    Victoria was generally responsible for, um -- I recall |
| 09:32 | 12 | her being very, very much involved in contracts.  She was |
| 09:32 | 13 | also responsible for licensing and licensees. |
| 09:32 | 14 | Q.    So in 2000, if a designer from a competitor came to you |
| 09:32 | 15 | with doll designs and you knew it was a designer from a |
| 09:32 | 16 | competitor, you know that you should have some sort of |
| 09:32 | 17 | inquiry, you know, when were these done?  Do they belong to |
| 09:32 | 18 | your employer?  You knew that you should have that sort of |
| 09:33 | 19 | inquiry if that were the case, right? |
| 09:33 | 20 | A.    Should have that sort of inquiry? |
| 09:33 | 21 | Q.    Yeah.  If a designer comes to you -- and I'm asking you |
| 09:33 | 22 | about your understanding in 2000. |
| 09:33 | 23 | A.    Okay. |
| 09:33 | 24 | Q.    If in 2000, a designer came to you from a competitor -- |
| 09:33 | 25 | A.    Uh-huh. |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

45

| 09:33 | 1 | Q.    -- with doll designs -- |
| 09:33 | 2 | A.    Uh-huh. |
| 09:33 | 3 | Q.    -- based upon what you knew in the industry and what |
| 09:33 | 4 | you knew about confidentiality agreements and assignments, |
| 09:33 | 5 | you knew that you should have some kind of inquiry to say, |
| 09:33 | 6 | "Are these your employer's?  When did you do them?"  Right? |
| 09:33 | 7 | A.    No, not necessarily.  It's not a requirement. |
| 09:33 | 8 | MR. PRICE:  Your Honor, now we'll place before |
| 09:33 | 9 | you -- this is from August 13, 2008, page 7157, lines 8 |
| 09:34 | 10 | through 12. |
| 09:34 | 11 | MR. McCONVILLE:  What was the page? |
| 09:34 | 12 | MR. PRICE:  Page 7157, lines 8 through 12. |
| 09:34 | 13 | THE COURT:  You may read. |
| 09:34 | 14 | *(Document displayed.)* |
| 09:34 | 15 | "QUESTION:  At the time in 2000, if a designer |
| 09:34 | 16 | from a competitor came to you with doll designs, you knew |
| 09:34 | 17 | that you should have had some kind of inquiry into, "Well, |
| 09:34 | 18 | are these your employers?  When did you do them?"  Right? |
| 09:34 | 19 | "ANSWER:  Yes." |
| 09:34 | 20 | That, Ms. Garcia, is the testimony you gave under |
| 09:34 | 21 | oath on August 13, 2008, correct? |
| 09:34 | 22 | THE WITNESS:  Yes. |
| 09:35 | 23 | BY MR. PRICE: |
| 09:35 | 24 | Q.   And as far as whether or not that employee could give |
| 09:35 | 25 | those designs to a competitor, it wouldn't matter if that |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 46 of 125   Page ID #:290328
CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

46

| | | |
|---|---|---|
| 09:35 | 1 | employee was unhappy with his employer, right? |
| 09:35 | 2 | A.   Right. |
| 09:35 | 3 | Q.   Wouldn't matter if he didn't like being in a gray |
| 09:35 | 4 | cubicle, right? |
| 09:35 | 5 | A.   Yes. |
| 09:35 | 6 | Q.   It doesn't -- wouldn't matter even if that competitor |
| 09:35 | 7 | hadn't brought out that doll, right? |
| 09:35 | 8 | A.   I didn't understand that last question. |
| 09:35 | 9 | Q.   I mean, when this doll designer from a competitor comes |
| 09:35 | 10 | to you with designs, it would be wrong to purchase those |
| 09:35 | 11 | designs, use those designs, without making an inquiry, even |
| 09:35 | 12 | if the competitor hadn't used those designs, even if the |
| 09:35 | 13 | employee was unhappy, even if, uh, he just wanted more |
| 09:35 | 14 | money -- it would still be wrong to use those designs |
| 09:36 | 15 | without making some sort of inquiry, right? |
| 09:36 | 16 | A.   No. |
| 09:36 | 17 | Q.   It would be okay to do that? |
| 09:36 | 18 | A.   Maybe you could either restate the question, please. |
| 09:36 | 19 | Q.   Sure. |
| 09:36 | 20 | A.   Maybe I'm -- |
| 09:36 | 21 | Q.   Yeah.  I apologize. |
| 09:36 | 22 |      So you testified under oath -- |
| 09:36 | 23 | A.   Yeah. |
| 09:36 | 24 | Q.   -- that in 2000, if a designer came from a competitor |
| 09:36 | 25 | to you with doll designs, you knew that you should have had |

| | | |
|---|---|---|
| 09:36 | 1 | some kind of inquiry into whether or not those designs |
| 09:36 | 2 | belonged to the competitor, right?  You said that under |
| 09:36 | 3 | oath? |
| 09:36 | 4 | A.   Yes, I did. |
| 09:36 | 5 | Q.   And you would be required to make that sort of inquiry |
| 09:36 | 6 | to make sure that what you're doing is right and not wrong, |
| 09:36 | 7 | regardless of whether the employee of the competitor is |
| 09:36 | 8 | happy or is sad or in a cubicle or asks for billions of |
| 09:37 | 9 | dollars -- it would still be wrong not to look into that |
| 09:37 | 10 | issue, right? |
| 09:37 | 11 | A.   No. |
| 09:37 | 12 | Q.   So to be clear, in August of 2008, you testified under |
| 09:37 | 13 | oath that if a designer from a competitor came to you with |
| 09:37 | 14 | doll designs, you should have made some kind of inquiry, you |
| 09:37 | 15 | said, "Yes."  And now you're saying, "No, you don't have |
| 09:37 | 16 | to"? |
| 09:37 | 17 | A.   That's right. |
| 09:37 | 18 | Q.   Okay.  Well, based on that answer, does your answer |
| 09:37 | 19 | change if the employee is unhappy? |
| 09:38 | 20 | A.   No. |
| 09:38 | 21 | Q.   Does it change if the employee is asking for a lot of |
| 09:38 | 22 | money? |
| 09:38 | 23 | A.   No. |
| 09:38 | 24 | Q.   So you've already told us that it would be wrong for an |
| 09:38 | 25 | employee to assist the competitor, right? -- while still |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 48 of 125   Page ID #:290330
CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

48

| | | |
|---|---|---|
| 09:38 | 1 | working for another company? |
| 09:38 | 2 | A.   Mr. Price, I think it -- if I might, just to answer on |
| 09:38 | 3 | that, I think -- |
| 09:38 | 4 | Q.   Well, I'm sorry. |
| 09:38 | 5 | Did you understand the question I asked? |
| 09:38 | 6 | A.   Generally. |
| 09:38 | 7 | Q.   Okay. |
| 09:38 | 8 | A.   I just need -- |
| 09:38 | 9 | Q.   Let me ask it again. |
| 09:38 | 10 | You knew in 2000, based upon your experience in the |
| 09:38 | 11 | business, based on signing two of these confidentiality |
| 09:38 | 12 | agreements, based upon your sense of ethics, that it would |
| 09:38 | 13 | be wrong for someone to work for Mattel, and while working |
| 09:38 | 14 | for Mattel, assist a competitor, right? |
| 09:39 | 15 | A.   Could you clarify what you mean by "assist." |
| 09:39 | 16 | Q.   I mean, what the contract said, which is assist in any |
| 09:39 | 17 | manner. |
| 09:39 | 18 | MR. McCONVILLE:  Objection.  Now asking for a |
| 09:39 | 19 | legal conclusion. |
| 09:39 | 20 | THE COURT:  Overruled. |
| 09:39 | 21 | BY MR. PRICE: |
| 09:39 | 22 | Q.   So you knew it would be wrong -- as of September 2000, |
| 09:39 | 23 | based upon your experience in the industry, you knew that it |
| 09:39 | 24 | would be wrong for an employee of -- at Mattel to assist in |
| 09:39 | 25 | any manner a competitor? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

49

| | | |
|---|---|---|
| 09:39 | 1 | A.   Um, I -- you know, I think that it's important to, um, |
| 09:39 | 2 | identify a context. |
| 09:40 | 3 | Q.   So what you're telling us is that my question cannot be |
| 09:40 | 4 | answered as posed? |
| 09:40 | 5 | A.   Correct. |
| 09:40 | 6 | Q.   Well, you know that it was wrong to work for Mattel and |
| 09:40 | 7 | at the same time, behind Mattel's back, work for one of the |
| 09:40 | 8 | competitors, right? |
| 09:40 | 9 | A.   As just answered, I think it depends and it requires |
| 09:40 | 10 | context. |
| 09:40 | 11 |         MR. PRICE:  Your Honor, I'd like to read -- we'll |
| 09:40 | 12 | provide to you -- this is May 28, 2008, page 543, lines 4 |
| 09:40 | 13 | through 16. |
| 09:41 | 14 |         MR. McCONVILLE:  What page? |
| 09:41 | 15 |         MR. PRICE:  It's 543, lines 4 through 16. |
| 09:41 | 16 |         THE COURT:  Just a moment. |
| 09:41 | 17 |         MR. McCONVILLE:  Improper impeachment, Your Honor. |
| 09:41 | 18 |         THE COURT:  Overruled. |
| 09:41 | 19 |         You may read. |
| 09:41 | 20 |         "QUESTION:  Let's say wrong.  You would know that |
| 09:41 | 21 | it was wrong to work for Mattel and at the same time, behind |
| 09:41 | 22 | their back, work for one of their competitors? |
| 09:41 | 23 |         "ANSWER:  Yes. |
| 09:41 | 24 |         "If you knew someone was doing that, that, in your |
| 09:42 | 25 | mind, casts some doubt on their honesty and their |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

50

| | | |
|---|---|---|
| 09:42 | 1 | credibility, right?  If they were working for one company, |
| 09:42 | 2 | but at the same time, behind that company's back, working |
| 09:42 | 3 | for one of their competitors? |
| 09:42 | 4 | "ANSWER:  Yes. |
| 09:42 | 5 | "QUESTION:  It would mean perhaps you should -- |
| 09:42 | 6 | THE COURT:  She's already answered that question |
| 09:42 | 7 | with a "yes," Counsel.  That's as far as you'll read. |
| 09:42 | 8 | BY MR. PRICE: |
| 09:42 | 9 | Q.   So getting back to your experience in the industry as |
| 09:42 | 10 | of September 2000, if you encountered an employee of a |
| 09:42 | 11 | competitor who was assisting you while still employed by |
| 09:42 | 12 | that competitor, then you'd want to look into that person's |
| 09:42 | 13 | credibility and honesty, right? |
| 09:42 | 14 | A.   Sure. |
| 09:42 | 15 | Q.   And if you knew that that employee of a competitor had |
| 09:43 | 16 | come to you and said, "Yeah, I work for the competitor, but |
| 09:43 | 17 | I didn't do these -- these designs while I was at your |
| 09:43 | 18 | competitor" -- Okay?  You knew, because you might have some |
| 09:43 | 19 | doubts about that person's credibility and honesty, that you |
| 09:43 | 20 | should look into that? |
| 09:43 | 21 | THE COURT:  Counsel, that's too complicated a |
| 09:43 | 22 | question.  Reask it.  It's too convoluted. |
| 09:43 | 23 | MR. PRICE:  Let me break it down. |
| 09:43 | 24 | BY MR. PRICE: |
| 09:43 | 25 | Q.   As for some background facts here, in September of |

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 51 of 125   Page ID #:290333
CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

51

| | | |
|---|---|---|
| 09:43 | 1 | 2000, while Mr. Bryant was still working for Mattel, you |
| 09:43 | 2 | know that he contacted hair vendors saying he worked with |
| 09:43 | 3 | MGA so that he could assist in pursuing this Bratz project, |
| 09:43 | 4 | right? |
| 09:43 | 5 | MR. McCONVILLE: Objection. Improper foundation |
| 09:44 | 6 | for that question. |
| 09:44 | 7 | THE COURT: Overruled. |
| 09:44 | 8 | You can answer the question, please. |
| 09:44 | 9 | THE WITNESS: Yes. |
| 09:44 | 10 | BY MR. PRICE: |
| 09:44 | 11 | Q.  And in September of 2000 you knew that Carter Bryant, |
| 09:44 | 12 | while working for Mattel, went and saw a sculptor? |
| 09:44 | 13 | MR. McCONVILLE: Objection. Vague as to time. |
| 09:44 | 14 | THE COURT: I assume that this is while he was |
| 09:44 | 15 | still working with Mattel. |
| 09:44 | 16 | MR. PRICE: Yes. |
| 09:44 | 17 | THE COURT: All right. I think the question is |
| 09:44 | 18 | clear. Answer the question. |
| 09:44 | 19 | MR. McCONVILLE: The question's vague. |
| 09:44 | 20 | THE COURT: Overruled. |
| 09:44 | 21 | Answer the question. |
| 09:44 | 22 | THE WITNESS: First to be clear, at the time, uh, |
| 09:44 | 23 | I -- I'm sorry, can you repeat the question, please. |
| 09:44 | 24 | BY MR. PRICE: |
| 09:44 | 25 | Q.  Sure.  In September of 2000 -- |

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 52 of 125   Page ID #:290334
CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

52

| | | |
|---|---|---|
| 09:44 | 1 | A.    Yes. |
| 09:44 | 2 | Q.    -- Carter Bryant met with a sculptor to try to create a |
| 09:44 | 3 | Bratz sculpt for the Bratz project, right? |
| 09:44 | 4 | A.    He -- yes, he did. |
| 09:44 | 5 | Q.    And that was Margaret Leahy? |
| 09:45 | 6 | A.    Yes. |
| 09:45 | 7 | Q.    In fact, Carter Bryant submitted to MGA expense |
| 09:45 | 8 | requests, expense reports for activity he undertook in |
| 09:45 | 9 | September of 2000 while he was a Mattel employee, correct? |
| 09:45 | 10 | MR. McCONVILLE:  Objection.  Improper foundation. |
| 09:45 | 11 | THE COURT:  Overruled. |
| 09:45 | 12 | You can answer the question. |
| 09:45 | 13 | THE WITNESS:  Yes.  I believe it was a receipt for |
| 09:45 | 14 | a toy product. |
| 09:45 | 15 | THE COURT:  Now, let me caution the jury, and I |
| 09:45 | 16 | know that that's just some way people speak, and I know that |
| 09:45 | 17 | that's probably unintentional. |
| 09:45 | 18 | Words like "I believe", "to the best of my |
| 09:45 | 19 | recollection", "I think so" are all qualifying words. |
| 09:45 | 20 | Police officers sometimes talk to me that way.  I'm just |
| 09:45 | 21 | joking with you.  Not acceptable.  They either know or they |
| 09:45 | 22 | don't know.  Okay?  And so that's not any fault of yours. |
| 09:46 | 23 | We'll have numerous witnesses, I think, in this |
| 09:46 | 24 | trial who will say "to the best of my recollection", "I |
| 09:46 | 25 | think."  Nonsense.  They can answer the question. |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

53

| 09:46 | 1 | Reask the question. |
| 09:46 | 2 | BY MR. PRICE: |
| 09:46 | 3 | Q.   Carter Bryant submitted expense reports for activity he |
| 09:46 | 4 | did in September of 2000 -- let me rephrase it. |
| 09:46 | 5 | Carter Bryant submitted to MGA expense reports for |
| 09:46 | 6 | expenses he incurred in September 2000 while he was a Mattel |
| 09:46 | 7 | employee? |
| 09:46 | 8 | A.   Yes.  It was for a toy that he purchased from a toy |
| 09:46 | 9 | store. |
| 09:46 | 10 | Q.   He did that so that he could assist in developing the |
| 09:46 | 11 | Bratz project, right? |
| 09:46 | 12 | A.   I would like to clarify what "assist" means in context |
| 09:47 | 13 | of this time.  Is that acceptable? |
| 09:47 | 14 | THE COURT:  You may. |
| 09:47 | 15 | THE WITNESS:  In the time that Carter Bryant was |
| 09:47 | 16 | assisting in September of 2000, he, um -- Carter did not |
| 09:47 | 17 | create anything in that time frame.  In the time that he was |
| 09:47 | 18 | assisting in the September time frame, he was present at, |
| 09:47 | 19 | um, for example, exploratory meetings that I was requesting. |
| 09:47 | 20 | THE COURT:  All right.  This goes beyond. |
| 09:47 | 21 | Thank you very much. |
| 09:47 | 22 | Counsel, your next question. |
| 09:47 | 23 | BY MR. PRICE: |
| 09:47 | 24 | Q.   MGA paid his expense reports for expenses incurred in |
| 09:47 | 25 | September of 2000, right? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

54

| | | |
|---|---|---|
| 09:47 | 1 | A.    Yes. |
| 09:48 | 2 | Q.    It's your practice that MGA pays for requested expenses |
| 09:48 | 3 | only if MGA thinks those expenses were incurred in |
| 09:48 | 4 | connection with the business of MGA, right? |
| 09:48 | 5 | MR. McCONVILLE:  Objection.  Vague. |
| 09:48 | 6 | THE COURT:  Do you understand the question? |
| 09:48 | 7 | THE WITNESS:  No, I don't. |
| 09:48 | 8 | THE COURT:  Reask the question. |
| 09:48 | 9 | BY MR. PRICE: |
| 09:48 | 10 | Q.    There's a process at MGA where expense requests can be |
| 09:48 | 11 | submitted to MGA, right? |
| 09:48 | 12 | A.    Yes. |
| 09:48 | 13 | Q.    And then MGA decides whether or not they should pay |
| 09:48 | 14 | those expenses, right? |
| 09:48 | 15 | A.    Yes. |
| 09:48 | 16 | Q.    And part of that process, MGA decides whether those |
| 09:48 | 17 | expenses were expended in connection with work for MGA? |
| 09:48 | 18 | A.    Yes. |
| 09:48 | 19 | Q.    And MGA paid expenses for Carter Bryant for activity he |
| 09:49 | 20 | did in September of 2000 while he was a Mattel employee, |
| 09:49 | 21 | right? |
| 09:49 | 22 | MR. McCONVILLE:  Objection.  Improper foundation |
| 09:49 | 23 | for the question. |
| 09:49 | 24 | THE COURT:  Overruled. |
| 09:49 | 25 | You can answer the question. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 1/20/2011 – Day 5, Volume 1 of 2

55

| | | |
|---|---|---|
| 09:49 | 1 | THE WITNESS:  MGA paid Carter Bryant for an |
| 09:49 | 2 | expense for a toy he purchased at a toy store. |
| 09:49 | 3 | BY MR. PRICE: |
| 09:49 | 4 | Q.   My question is different.  And we'll get to the |
| 09:49 | 5 | expenses.  My question is, isn't it true that MGA paid for |
| 09:49 | 6 | expenses Carter Bryant incurred in September of 2000 because |
| 09:49 | 7 | it was expenses incurred to assist MGA? |
| 09:49 | 8 | A.   Mr. Price, do you mean, again, expense reports?  Or -- |
| 09:49 | 9 | Q.   Yes.  Yeah.  Yes.  Let me break it up. |
| 09:50 | 10 | A.   I'm sorry. |
| 09:50 | 11 | Q.   I'm sorry.  You told us that Mr. Bryant submitted |
| 09:50 | 12 | expense reports for things he did in September? |
| 09:50 | 13 | A.   Yes. |
| 09:50 | 14 | Q.   You've told us that MGA paid those expenses for |
| 09:50 | 15 | activities that Carter Bryant undertook in September, right? |
| 09:50 | 16 | A.   If activity means to purchase a toy product at a toy |
| 09:50 | 17 | company, then, yes. |
| 09:50 | 18 | Q.   They paid him for whatever he asked for, right? |
| 09:50 | 19 | A.   Uh, no. |
| 09:50 | 20 | Q.   Well, they paid his expense -- some expenses in |
| 09:50 | 21 | September, right? |
| 09:50 | 22 | A.   Yes. |
| 09:50 | 23 | Q.   And MGA doesn't pay expenses unless they relate to the |
| 09:50 | 24 | company's activities, right? |
| 09:50 | 25 | A.   Yes. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

56

| | | |
|---|---|---|
| 09:50 | 1 | Q.   And if you'd look at Exhibit 11889. |
| 09:51 | 2 | A.   Okay. |
| 09:51 | 3 | Q.   And do you have that in front of you? |
| 09:51 | 4 | A.   Yes. |
| 09:51 | 5 | Q.   And is this a document that you recognize as being from |
| 09:51 | 6 | MGA and a list of expenses paid to Carter Bryant? |
| 09:51 | 7 | A.   I don't recognize this first page. |
| 09:51 | 8 | Q.   Okay.  Are there pages in here that you recognize? |
| 09:51 | 9 | A.   Um, yes. |
| 09:51 | 10 | Q.   Do you recognize the third page? |
| 09:51 | 11 | A.   Yeah. |
| 09:51 | 12 | Q.   And could you tell us what the third page is? |
| 09:52 | 13 | A.   I understand this to be a ledger of sorts that MGA |
| 09:52 | 14 | identifies, um, dates and payments. |
| 09:52 | 15 |       MR. PRICE:  Your Honor, move Exhibit 11889, |
| 09:52 | 16 | page 2, into evidence. |
| 09:52 | 17 |       THE COURT:  Received. |
| 09:52 | 18 |       MR. McCONVILLE:  Your Honor, the question was on |
| 09:52 | 19 | page 3, not page 2. |
| 09:52 | 20 |       THE COURT:  I'm going to receive the whole |
| 09:52 | 21 | document eventually, but we can go through it piecemeal. |
| 09:52 | 22 | We'll take page 3 at the present time.  That's received. |
| 09:52 | 23 |       *(Exhibit No. 11889-0003 received in* |
| 09:52 | 24 |       *evidence.)* |
| 09:52 | 25 |       THE COURT:  Is there a request for page 2? |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 09:52 | 1 | MR. PRICE: Yes. Mine were out of order. It's a |
| 09:52 | 2 | question about page 2. |
| 09:52 | 3 | THE COURT: Page 2 is received. |
| 09:52 | 4 | *(Exhibit No. 11889-0002 received in* |
| 09:52 | 5 | *evidence.)* |
| 09:52 | 6 | BY MR. PRICE: |
| 09:52 | 7 | Q.   11889-0002.  Do you see that? |
| 09:52 | 8 | A.   Yes. |
| 09:52 | 9 | Q.   If you look at the top there, do you see it says, |
| 09:52 | 10 | "Bryant"? |
| 09:52 | 11 | A.   Yes. |
| 09:52 | 12 | THE COURT:  Blow that up larger, Counsel, so |
| 09:52 | 13 | people can see it. |
| 09:53 | 14 | *(Document displayed.)* |
| 09:53 | 15 | THE COURT:  I don't know why we're using the ELMO |
| 09:53 | 16 | and the screens if the jury can't see these documents. |
| 09:53 | 17 | BY MR. PRICE: |
| 09:53 | 18 | Q.   Could you see that in front of you, ma'am? |
| 09:53 | 19 | A.   Yes, I can. |
| 09:53 | 20 | Q.   And you see it has -- |
| 09:53 | 21 | MR. PRICE:  Ken, can we get the date of the |
| 09:53 | 22 | invoice?  So go a little bit, half a fraction down.  Good |
| 09:53 | 23 | luck, but no cigar. |
| 09:53 | 24 | *(Document zoomed.)* |
| | 25 | |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

58

| | | |
|---|---|---|
| 09:53 | 1 | BY MR. PRICE: |
| 09:53 | 2 | Q.   Do you see that first entry "Carter Bryant" -- and you |
| 09:53 | 3 | can read it better now, 8/31/2000 to 9/30/2000.  Do you see |
| 09:54 | 4 | that? |
| 09:54 | 5 | A.   Yes, I do. |
| 09:54 | 6 | Q.   And that's an expense MGA reimbursed Mr. Bryant for, |
| 09:54 | 7 | correct? |
| 09:54 | 8 | A.   That's right. |
| 09:54 | 9 | Q.   For an expense incurred between August 31, 2000, and |
| 09:54 | 10 | September 30, 2000? |
| 09:54 | 11 | A.   Yes. |
| 09:54 | 12 | Q.   And during that time, Mr. Bryant was a Mattel employee? |
| 09:54 | 13 |           MR. McCONVILLE:  Objection.  Vague as to time. |
| 09:54 | 14 |           THE COURT:  Overruled. |
| 09:54 | 15 |           THE WITNESS:  Uh, yes. |
| 09:54 | 16 | BY MR. PRICE: |
| 09:54 | 17 | Q.   And MGA would not have reimbursed this expense unless |
| 09:54 | 18 | Mr. Bryant had been doing something to assist MGA? |
| 09:54 | 19 |           MR. McCONVILLE:  Objection.  Vague. |
| 09:54 | 20 |           THE COURT:  Overruled. |
| 09:54 | 21 |           THE WITNESS:  Can you repeat the question?  I'm |
| 09:54 | 22 | sorry. |
| 09:54 | 23 | BY MR. PRICE: |
| 09:54 | 24 | Q.   Yes. |
| 09:54 | 25 |           MGA wouldn't be reimbursing this expense unless |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 1/20/2011 – Day 5, Volume 1 of 2

59

| | | |
|---|---|---|
| 09:54 | 1 | Mr. Bryant made the expenditure to assist MGA's business? |
| 09:55 | 2 | MR. McCONVILLE:  Same objection. |
| 09:55 | 3 | THE COURT:  Overruled. |
| 09:55 | 4 | THE WITNESS:  Correct. |
| 09:55 | 5 | BY MR. PRICE: |
| 09:55 | 6 | Q.   And then there's -- |
| 09:55 | 7 | MR. PRICE:  The second one down there, Ken. |
| 09:55 | 8 | *(Document displayed.)* |
| 09:55 | 9 | BY MR. PRICE: |
| 09:55 | 10 | Q.   There's a -- it says "Payment, September" -- boy -- |
| 09:55 | 11 | "29, 2000"? |
| 09:55 | 12 | A.   Yes. |
| 09:55 | 13 | Q.   That's also a payment that was made to Mr. Carter -- |
| 09:55 | 14 | I'm sorry -- Mr. Bryant?  Apologize. |
| 09:55 | 15 | A.   Um, I'm not sure if -- |
| 09:55 | 16 | Q.   Actually, I overheard your counsel, and she's right. |
| 09:55 | 17 | That's the same one. |
| 09:55 | 18 | So let me ask you if you could turn, in this document, |
| 09:55 | 19 | to page -- at the bottom there are numbers.  It's |
| 09:56 | 20 | 11889-0014. |
| 09:56 | 21 | A.   Okay. |
| 09:56 | 22 | Q.   And you recognize this as an MGA expense report? |
| 09:56 | 23 | A.   Yes. |
| 09:56 | 24 | MR. PRICE:  Your Honor, move exhibit -- this page |
| 09:56 | 25 | of 11889-0014 into evidence. |

CV 04-9049 DOC – 1/20/2011 – Day 5, Volume 1 of 2

60

| 09:56 | 1 | THE COURT:  Received. |
| 09:56 | 2 | *(Exhibit No. 11889-0014 received in* |
| 09:56 | 3 | *evidence.)* |
| 09:56 | 4 | BY MR. PRICE: |
| 09:56 | 5 | Q.   So you see -- |
| 09:56 | 6 | MR. PRICE:  I'm sorry, Ken, you were ahead of me. |
| 09:56 | 7 | BY MR. PRICE: |
| 09:56 | 8 | Q.   At the top it says, "MGA expense report form." |
| 09:56 | 9 | A.   Yeah. |
| 09:56 | 10 | Q.   And at the side of it, on the left-hand side, there's |
| 09:57 | 11 | some handwriting with the signature "Carter Bryant."  Do you |
| 09:57 | 12 | recognize his handwriting there? |
| 09:57 | 13 | A.   Yes. |
| 09:57 | 14 | Q.   And it begins with, "Hi, Kerri."  Now, could you tell |
| 09:57 | 15 | us who is Kerri? |
| 09:57 | 16 | A.   I believe he was referring to Kerri Brode. |
| 09:57 | 17 | Q.   He misspelled it? |
| 09:57 | 18 | A.   Yeah. |
| 09:57 | 19 | Q.   Kerri Brode is with a K? |
| 09:57 | 20 | A.   Yes. |
| 09:57 | 21 | Q.   And could you tell us who Kerri Brode was in the |
| 09:57 | 22 | September/October, 2000 timeframe? |
| 09:57 | 23 | A.   She was responsible to receive vendor quotes, to |
| 09:57 | 24 | process those quotes, and to have them be approved, and then |
| 09:57 | 25 | if approved, paid. |

| 09:57 | 1 | Q.   You see it says, "Hi, Kerri, these charges are for |
| 09:57 | 2 | the," quote, "'Bratz' project on which I am the designer." |
| 09:57 | 3 | By the way, that statement was true, right? -- the |
| 09:57 | 4 | statement that Mr. Bryant was working on the Bratz project |
| 09:58 | 5 | and he was the designer? |
| 09:58 | 6 | A.   He was the designer of the portfolio drawings that he |
| 09:58 | 7 | represented as Bratz.  It wouldn't necessarily have |
| 09:58 | 8 | identified him as a designer, um, in the sense that he was |
| 09:58 | 9 | creating products from MGA -- an MGA designer.  If that -- |
| 09:58 | 10 | if that's clear. |
| 09:58 | 11 | Q.   Okay.  It says, "If this could be super expedited, as |
| 09:58 | 12 | per our discussion, it would be greatly appreciated.  Thank |
| 09:58 | 13 | you.  Carter Bryant". |
| 09:58 | 14 | Do you see that? |
| 09:58 | 15 | A.   Yes. |
| 09:58 | 16 | Q.   And at the bottom of the page in the middle, there |
| 09:58 | 17 | seems to be some handwriting and "okay."  Do you see that? |
| 09:58 | 18 | A.   Yes, yes. |
| 09:59 | 19 | Q.   And is that Kerri's -- Logg -- what's her last name? |
| 09:59 | 20 | A.   Legg was, I think, her original maiden name, yeah. |
| 09:59 | 21 | Q.   Is this Ms. Legg's approval to pay these expenses? |
| 09:59 | 22 | A.   Yes. |
| 09:59 | 23 | Q.   And if we look at the expenses themselves and if we |
| 09:59 | 24 | look at the left-hand side of that, where it has dates, you |
| 09:59 | 25 | see it as September 23, October 2006, maybe three on |

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 62 of 125   Page ID #:290344
CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

62

| | | |
|---|---|---|
| 09:59 | 1 | October 6, October 11.  You see those? |
| 09:59 | 2 | A.   Yes. |
| 09:59 | 3 | Q.   And those expenses are related to the Bratz project, |
| 09:59 | 4 | right? |
| 09:59 | 5 | A.   Yes. |
| 09:59 | 6 | Q.   And Mr. Bryant was a Mattel employee in every one of |
| 09:59 | 7 | those dates, wasn't he? |
| 10:00 | 8 | MR. McCONVILLE:  Objection.  Vague as to time. |
| 10:00 | 9 | THE COURT:  Well, the time is in question, |
| 10:00 | 10 | Counsel.  You need to reask that question. |
| 10:00 | 11 | BY MR. PRICE: |
| 10:00 | 12 | Q.   On September 23, Mr. Bryant was a Mattel employee, |
| 10:00 | 13 | right? |
| 10:00 | 14 | A.   Yes. |
| 10:00 | 15 | Q.   On October 6 -- there are three entries there -- he was |
| 10:00 | 16 | a Mattel employee, right? |
| 10:00 | 17 | A.   Yes. |
| 10:00 | 18 | Q.   On October 11, he was a Mattel employee, right? |
| 10:00 | 19 | A.   Yes. |
| 10:00 | 20 | Q.   So this is the type of activity that you testified |
| 10:00 | 21 | would lead you to suspect the credibility of Carter Bryant, |
| 10:00 | 22 | because he was doing things for MGA at the same time he |
| 10:00 | 23 | worked with Mattel. |
| 10:00 | 24 | MR. McCONVILLE:  Objection.  Improper foundation |
| 10:01 | 25 | for this question. |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 63 of 125   Page ID #:290345
CV 04-9049 DOC – 1/20/2011 – Day 5, Volume 1 of 2

63

| | | |
|---|---|---|
| 10:01 | 1 | THE COURT:  Also, it's an improper question. |
| 10:01 | 2 | We're leading over to credibility.  You can talk about |
| 10:01 | 3 | whether he's employed by Mattel, but there isn't going to be |
| 10:01 | 4 | a segue over whether he's credible or not.  That will be for |
| 10:01 | 5 | the jury to determine.  That's improper for this witness |
| 10:01 | 6 | now.  Let's move along now. |
| 10:01 | 7 | BY MR. PRICE: |
| 10:01 | 8 | Q.  Let me ask some background questions.  You were |
| 10:01 | 9 | involved -- |
| 10:01 | 10 | THE COURT:  Just a moment.  She's not going to |
| 10:01 | 11 | cast her opinion about the credibility of Carter Bryant. |
| 10:01 | 12 | You will decide that. |
| 10:01 | 13 | Move along now, Counsel. |
| 10:01 | 14 | BY MR. PRICE: |
| 10:01 | 15 | Q.  You were involved in connection with Mr. Bryant coming |
| 10:01 | 16 | to MGA, right? |
| 10:01 | 17 | A.  Um, yes.  Veronica Marlow recommended him, and I -- I |
| 10:01 | 18 | voiced interest that I'd love to meet him. |
| 10:01 | 19 | Q.  And Mr. Larian was in this meeting you've described, |
| 10:01 | 20 | this September 1st meeting? |
| 10:01 | 21 | A.  Yes. |
| 10:01 | 22 | Q.  And it's your understanding that at that meeting, |
| 10:02 | 23 | Mr. Bryant informed Mr. Larian and Ms. O'Connor that he was |
| 10:02 | 24 | an Mattel employee? |
| 10:02 | 25 | MR. McCONVILLE:  Objection.  Vague as to time. |

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 64 of 125   Page ID #:290346
CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

64

| | | |
|---|---|---|
| 10:02 | 1 | THE COURT: Overruled. He said September. That |
| 10:02 | 2 | is understood by everybody. |
| 10:02 | 3 | MR. McCONVILLE: Your Honor, could I have a |
| 10:02 | 4 | sidebar on this? |
| 10:02 | 5 | THE COURT: No. |
| 10:02 | 6 | Answer the question. |
| 10:02 | 7 | THE WITNESS: I'm embarrassed to say, could you |
| 10:02 | 8 | please repeat the question? I'm sorry. |
| 10:02 | 9 | BY MR. PRICE: |
| 10:02 | 10 | Q. Don't be embarrassed. |
| 10:02 | 11 | It's your understanding that at that meeting, |
| 10:02 | 12 | September 1st, Mr. Bryant said so that Larian could hear and |
| 10:02 | 13 | Ms. O'Connor could hear that at the time he was a Mattel |
| 10:02 | 14 | employee? |
| 10:02 | 15 | MR. McCONVILLE: Objection. Vague. |
| 10:02 | 16 | THE COURT: Overruled. |
| 10:02 | 17 | Answer the question. |
| 10:02 | 18 | THE WITNESS: I don't recall Carter Bryant making |
| 10:02 | 19 | reference to his employment at Mattel in that meeting. |
| 10:02 | 20 | BY MR. PRICE: |
| 10:02 | 21 | Q. Well, sitting here today, it's your understanding that |
| 10:03 | 22 | Mr. Bryant said in words loud enough for Mr. Larian and |
| 10:03 | 23 | Ms. O'Connor to hear that he was a Mattel employee? |
| 10:03 | 24 | MR. McCONVILLE: Objection. Foundation. |
| 10:03 | 25 | THE COURT: Overruled. |

| | | |
|---|---|---|
| 10:03 | 1 | THE WITNESS:  Yes. |
| 10:03 | 2 | BY MR. PRICE: |
| 10:03 | 3 | Q.   Now, were you involved in the decision to enter into |
| 10:03 | 4 | negotiations with Mr. Bryant so that he would work on a |
| 10:03 | 5 | Bratz project?  Were you involved in that activity after |
| 10:03 | 6 | September 1st, 2000? |
| 10:03 | 7 | A.   No. |
| 10:03 | 8 | Q.   So who was the one involved in that?  Or, I'm sorry, |
| 10:03 | 9 | the "ones."  Who would be involved in that? |
| 10:03 | 10 | A.   I generally understood that Isaac was involved. |
| 10:03 | 11 | THE COURT:  Isaac is Isaac Larian? |
| 10:03 | 12 | THE WITNESS:  Yes. |
| 10:03 | 13 | THE COURT:  Okay. |
| 10:03 | 14 | THE WITNESS:  Isaac Larian was involved and |
| 10:03 | 15 | Victoria O'Connor. |
| 10:04 | 16 | BY MR. PRICE: |
| 10:04 | 17 | Q.   Now, let me ask you a little bit about your reactions |
| 10:04 | 18 | in the September 2000 meeting. |
| 10:04 | 19 | I understand -- is it correct that you had said that |
| 10:04 | 20 | you were looking for a fashion doll for MGA prior to |
| 10:04 | 21 | September 1st? |
| 10:04 | 22 | A.   Yes. |
| 10:04 | 23 | Q.   And when Mr. Bryant came in with these drawings -- and, |
| 10:04 | 24 | actually, let me back up. |
| 10:04 | 25 | As of September 1st, you were aware of Betty Boop? |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 66 of 125   Page ID #:290348
CV 04-9049 DOC – 1/20/2011 – Day 5, Volume 1 of 2

66

| | | |
|---|---|---|
| 10:04 | 1 | A.   Yes. |
| 10:04 | 2 | THE COURT:  Betty Boop? |
| 10:04 | 3 | MR. PRICE:  Betty Boop. |
| 10:04 | 4 | THE WITNESS:  Yes. |
| 10:04 | 5 | BY MR. PRICE: |
| 10:04 | 6 | Q.   You were aware of the -- Power Puff?  Or Powder Puff? |
| 10:04 | 7 | A.   Power. |
| 10:04 | 8 | Q.   Power Puff Girls, right? |
| 10:05 | 9 | A.   Yes. |
| 10:05 | 10 | Q.   Were you aware of other cartoons or dolls that had big |
| 10:05 | 11 | eyes? |
| 10:05 | 12 | A.   Yes. |
| 10:05 | 13 | Q.   And yet prior to September 1st, you hadn't found |
| 10:05 | 14 | anything that you thought would be a good fashion doll for |
| 10:05 | 15 | MGA, right? |
| 10:05 | 16 | A.   Right. |
| 10:05 | 17 | Q.   Even though in the marketplace there were these other |
| 10:05 | 18 | cartoons and dolls that were out there which you knew about, |
| 10:05 | 19 | right? |
| 10:05 | 20 | A.   Yes. |
| 10:05 | 21 | Q.   And so when Mr. Bryant showed you his designs on |
| 10:05 | 22 | September 1st and you looked at those, you thought they were |
| 10:06 | 23 | amazing? |
| 10:06 | 24 | A.   Yes. |
| 10:06 | 25 | Q.   Another word you've used:  You thought they were |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:06 | 1 | incredible. |
| 10:06 | 2 | A.    Yes. |
| 10:06 | 3 | Q.    And you thought they were unique? |
| 10:06 | 4 | A.    Yes. |
| 10:06 | 5 | Q.    They were unique compared to anything that was out |
| 10:06 | 6 | there in the market? |
| 10:06 | 7 | A.    Yes. |
| 10:06 | 8 | Q.    And you had that opinion even though you knew about |
| 10:06 | 9 | Power Puff Girls and Betty Boop -- and I don't remember the |
| 10:06 | 10 | other names -- other things in the market that had big eyes |
| 10:06 | 11 | or big feet, right? |
| 10:06 | 12 | A.    Absolutely. |
| 10:06 | 13 | Q.    It was the -- oh, Sailor Moon, did you know about |
| 10:06 | 14 | Sailor Moon? |
| 10:06 | 15 | A.    Yes. |
| 10:06 | 16 | Q.    You thought that Carter Bryant's designs were unique |
| 10:07 | 17 | compared to Sailor Moon, right? |
| 10:07 | 18 | A.    Absolutely. |
| 10:07 | 19 | Q.    And if we can show you -- I think it's Exhibit 302. |
| 10:07 | 20 |         MR. PRICE:  Show her that. |
| 10:07 | 21 |      (Document provided to witness.) |
| 10:07 | 22 | BY MR. PRICE: |
| 10:07 | 23 | Q.    Do you have that in front of you? |
| 10:07 | 24 | A.    Yes. |
| 10:07 | 25 | Q.    Do you recognize 302 as part of a presentation that |

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 68 of 125   Page ID #:290350
CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

68

| 10:07 | 1 | Mr. Bryant made to MGA? |
| 10:07 | 2 | A.   Yes.  To be clear, I'm not sure if this was the exact |
| 10:07 | 3 | first page that I was shown, but most of the content is |
| 10:08 | 4 | exactly what I saw on September 1st. |
| 10:08 | 5 | Q.   Certainly sitting here today, you can't tell us that |
| 10:08 | 6 | this was not the first page that was shown? |
| 10:08 | 7 | THE COURT:  Well, that's a double negative, |
| 10:08 | 8 | Counsel.  The way she answers it, it's going to be unclear. |
| 10:08 | 9 | Reask the question. |
| 10:08 | 10 | BY MR. PRICE: |
| 10:08 | 11 | Q.   Can you tell us that this was not the first page that |
| 10:08 | 12 | was shown? |
| 10:08 | 13 | A.   In absolute, no.  I don't totally recall this logo in |
| 10:08 | 14 | the All Material Circle C, 2000, Carter Bryant. |
| 10:08 | 15 | Q.   So the part on the first page you don't recall is that |
| 10:08 | 16 | handwritten thing? |
| 10:08 | 17 | A.   And also I can't be a hundred percent sure that logo |
| 10:08 | 18 | was also present on the first page.  I can't be a hundred |
| 10:08 | 19 | percent certain. |
| 10:08 | 20 | Q.   But if you flip through the rest of it -- |
| 10:08 | 21 | A.   Yeah. |
| 10:08 | 22 | Q.   -- does it look like that's what you were shown? |
| 10:09 | 23 | A.   Well, the copy's really bad.  I believe this is what I |
| 10:09 | 24 | saw on September 1st with -- |
| 10:09 | 25 | THE COURT:  Excuse me.  Were you shown these or |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

69

| | | |
|---|---|---|
| 10:09 | 1 | not? |
| 10:09 | 2 | THE WITNESS:  I believe so. |
| 10:09 | 3 | THE COURT:  I believe so?  Were you shown these or |
| 10:09 | 4 | not? |
| 10:09 | 5 | THE WITNESS:  Yes. |
| 10:09 | 6 | THE COURT:  All right.  Next question. |
| 10:09 | 7 | MR. PRICE:  I'll move Exhibit 302 into evidence. |
| 10:09 | 8 | THE COURT:  It's received. |
| 10:09 | 9 | *(Exhibit No. 302 received in evidence.)* |
| 10:09 | 10 | THE COURT:  I know that's a mannerism of speaking. |
| 10:09 | 11 | THE WITNESS:  I apologize, Your Honor. |
| 10:09 | 12 | THE COURT:  But with this witness and all future |
| 10:09 | 13 | witnesses, we should be expecting answers.  They're very |
| 10:09 | 14 | well prepared on both sides.  They've had plenty of time to |
| 10:09 | 15 | talk about this, believe me.  You deserve answers. |
| 10:09 | 16 | Otherwise, we'll spend time examining what "I believe" is. |
| 10:09 | 17 | "To the best of my recollection."  That's wasted time. |
| 10:09 | 18 | Counsel, your next question. |
| 10:10 | 19 | BY MR. PRICE: |
| 10:10 | 20 | Q.   If you look at the first page there -- and we've got it |
| 10:10 | 21 | up behind you as well and on the screen. |
| 10:10 | 22 | *(Document displayed.)* |
| 10:10 | 23 | BY MR. PRICE: |
| 10:10 | 24 | Q.   Are those the four Bratz characters that Mr. Bryant |
| 10:10 | 25 | presented? |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

70

| | | |
|---|---|---|
| 10:10 | 1 | A.   Yes. |
| 10:10 | 2 | Q.   And if you will look at the second page where it says |
| 10:10 | 3 | "Bratz." |
| 10:10 | 4 | *(Document displayed.)* |
| 10:10 | 5 | BY MR. PRICE: |
| 10:10 | 6 | Q.   "Meet the Bratz.  The totally transformable teenage |
| 10:10 | 7 | dolls."  Do you see that? |
| 10:10 | 8 | A.   Yes. |
| 10:10 | 9 | Q.   Now, did you have an understanding as to what was meant |
| 10:10 | 10 | by transformable? |
| 10:10 | 11 | A.   Yes. |
| 10:10 | 12 | Q.   And is that -- that second paragraph there? |
| 10:10 | 13 | A.   Yes. |
| 10:10 | 14 | Q.   And it says, "By simply popping off the hairstyle and |
| 10:10 | 15 | shoes, and exchanging them for one of the other hairstyles |
| 10:10 | 16 | and pairs of shoes or a friend's hairstyle and shoes, you |
| 10:10 | 17 | can create a whole new look.  Complete the look by changing |
| 10:10 | 18 | their pants or skirts for one of their additional garments." |
| 10:11 | 19 | Do you see that? |
| 10:11 | 20 | A.   Yes. |
| 10:11 | 21 | Q.   Now, does that refer to something called a play |
| 10:11 | 22 | pattern? |
| 10:11 | 23 | A.   Yes. |
| 10:11 | 24 | Q.   And could you explain to us why that referred to a play |
| 10:11 | 25 | pattern? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

71

| | | |
|---|---|---|
| 10:11 | 1 | A.   A play pattern is a method by which a consumer will |
| 10:11 | 2 | engage with their toy product, how they play with it, the |
| 10:11 | 3 | pattern in which they play with it.  So this is a method of |
| 10:11 | 4 | which they would play, removing hair, removing shoes. |
| 10:11 | 5 | Q.   So if you look at page 4, 302-004, see, this is |
| 10:11 | 6 | referring to one of the characters that he gave the name |
| 10:11 | 7 | "Zoe"? |
| 10:11 | 8 | A.   Yes. |
| 10:11 | 9 | Q.   And it says, "To give Zoe a whole new look for night, |
| 10:11 | 10 | change her short dark brown hairstyle to her long blonde |
| 10:11 | 11 | hairdo," paren, "included, change her pants to a skirt, |
| 10:11 | 12 | paren, "also included, and change her sneakers to platform |
| 10:12 | 13 | sandals.  You get those too." |
| 10:12 | 14 | Do you see that? |
| 10:12 | 15 | A.   Yes. |
| 10:12 | 16 | Q.   And if you look at the drawing itself, that's |
| 10:12 | 17 | indicating how you can take the shoe and the foot off and |
| 10:12 | 18 | you can take the hairstyle off? |
| 10:12 | 19 | A.   That's right. |
| 10:12 | 20 | Q.   Have you ever seen Carter Bryant's contract with MGA? |
| 10:12 | 21 | A.   I don't recall. |
| 10:12 | 22 | Q.   Let's see if this may help.  It may not.  If you could |
| 10:12 | 23 | look at -- if you could look at Exhibit 15. |
| 10:13 | 24 | *(Document provided to witness.)* |
| | 25 | |

| | | |
|---|---|---|
| 10:13 | 1 | BY MR. PRICE: |
| 10:13 | 2 | Q.   Do you see it? |
| 10:13 | 3 | A.   Yes, I see it. |
| 10:13 | 4 | Q.   Have you ever seen all or any portion of this contract? |
| 10:13 | 5 | A.   Not that I can remember. |
| 10:13 | 6 | Q.   On page 6, 15-0006 -- |
| 10:13 | 7 | THE COURT:  Counsel, if she hasn't seen this, |
| 10:13 | 8 | what's the foundation? |
| 10:13 | 9 | MR. PRICE:  I'm going to ask if she recognizes the |
| 10:14 | 10 | signature on it. |
| 10:14 | 11 | THE COURT:  All right. |
| 10:14 | 12 | BY MR. PRICE: |
| 10:14 | 13 | Q.   Do you recognize that signature, ma'am? |
| 10:14 | 14 | A.   Which one? |
| 10:14 | 15 | Q.   The one to the left. |
| 10:14 | 16 | A.   Yes. |
| 10:14 | 17 | Q.   And there's a signature to the right.  Do you recognize |
| 10:14 | 18 | that signature? |
| 10:14 | 19 | A.   Yes. |
| 10:14 | 20 | Q.   Okay.  The signature on the left, whose is it? |
| 10:14 | 21 | A.   Carter Bryant. |
| 10:14 | 22 | Q.   And the signature on the right, whose is that? |
| 10:14 | 23 | A.   Isaac Larian. |
| 10:14 | 24 | Q.   Did you ever have any discussions with anybody at MGA |
| 10:14 | 25 | about Carter Bryant's contract? |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:14 | 1 | MR. McCONVILLE: Objection. Vague. Overbroad. |
| 10:14 | 2 | THE COURT: Overruled. |
| 10:14 | 3 | That doesn't include attorneys who may have talked |
| 10:14 | 4 | to you. That's work product. But "anyone" includes anyone |
| 10:14 | 5 | at MGA. |
| 10:14 | 6 | THE WITNESS: Only -- the answer to that is yes, |
| 10:14 | 7 | only to confirm whether the contract had been signed or not. |
| 10:14 | 8 | THE COURT: Okay. |
| 10:15 | 9 | BY MR. PRICE: |
| 10:15 | 10 | Q.  It's your understanding, is it not, that as of |
| 10:15 | 11 | September 18, 2000, that Carter Bryant was still working at |
| 10:15 | 12 | Mattel? |
| 10:15 | 13 | MR. McCONVILLE: Objection. Vague as to time. |
| 10:15 | 14 | THE COURT: Do you understand the question? |
| 10:15 | 15 | THE WITNESS: Yes, I do. |
| 10:15 | 16 | THE COURT: Okay. It's a rather specific time. |
| 10:15 | 17 | September 18, 2000. |
| 10:15 | 18 | I'll overrule that objection. |
| 10:15 | 19 | THE WITNESS: I am -- I am not sure when Carter |
| 10:15 | 20 | Bryant, um, continued to work at Mattel or when his last day |
| 10:15 | 21 | at Mattel was. |
| 10:15 | 22 | BY MR. PRICE: |
| 10:15 | 23 | Q.  Carter Bryant, to your knowledge, ever come to MGA |
| 10:15 | 24 | offices at lunchtime? |
| 10:16 | 25 | THE COURT: On what date? |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

74

| 10:16 | 1 | MR. PRICE:  While he was a Mattel employee. |
| 10:16 | 2 | MR. McCONVILLE:  Objection. |
| 10:16 | 3 | THE COURT:  Well, no, that's vague. |
| 10:16 | 4 | Sustained. |
| 10:16 | 5 | What period of time?  Because later on that's |
| 10:16 | 6 | going to be in contention.  When he wasn't or was a Mattel |
| 10:16 | 7 | employee.  She's not going to be able to specifically answer |
| 10:16 | 8 | that, Counsel. |
| 10:16 | 9 | MR. PRICE:  I'll give her a date. |
| 10:16 | 10 | BY MR. PRICE: |
| 10:16 | 11 | Q.   Prior to October 19, 2000, did Carter Bryant come to |
| 10:16 | 12 | MGA, to your knowledge, during his lunch hour at Mattel? |
| 10:16 | 13 | You need to know both it was his lunch hour at Mattel and |
| 10:16 | 14 | that he came to MGA.  Did you have any knowledge of that |
| 10:16 | 15 | happening? |
| 10:16 | 16 | MR. McCONVILLE:  Objection.  Vague as to time. |
| 10:16 | 17 | THE COURT:  Overruled. |
| 10:16 | 18 | THE WITNESS:  No. |
| 10:16 | 19 | BY MR. PRICE: |
| 10:16 | 20 | Q.   So did a woman work at MGA in that timeframe by the |
| 10:17 | 21 | name of Rachel Harris? |
| 10:17 | 22 | A.   Yes, I believe so.  Yes. |
| 10:17 | 23 | Q.   And what was Rachel Harris' job at MGA in the 2000 |
| 10:17 | 24 | timeframe? |
| 10:17 | 25 | A.   She was responsible for packaging design and, |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:17 | 1 | Mr. Price, I -- I can't -- just thinking -- I can't be -- |
| 10:17 | 2 | Your Honor -- |
| 10:17 | 3 | THE COURT:  No.  Wait for the next question. |
| 10:17 | 4 | THE WITNESS:  Okay. |
| 10:17 | 5 | THE COURT:  You have other attorneys who will |
| 10:17 | 6 | examine you about whatever you would like to say. |
| 10:17 | 7 | THE WITNESS:  Okay. |
| 10:17 | 8 | THE COURT:  Thank you. |
| 10:17 | 9 | BY MR. PRICE: |
| 10:17 | 10 | Q.   Did you ever tell Rachel Harris in September or October |
| 10:17 | 11 | of 2000 that Carter Bryant was at MGA during his lunch hour |
| 10:17 | 12 | from Mattel? |
| 10:17 | 13 | A.   No. |
| 10:18 | 14 | Q.   I want to go back to leaving Mattel, joining MGA, April |
| 10:18 | 15 | of 2000.  It's correct that your college specialty or focus |
| 10:18 | 16 | was on marketing, correct? |
| 10:18 | 17 | A.   Yes. |
| 10:18 | 18 | Q.   And at Mattel for about three years, you'd been |
| 10:18 | 19 | involved in product planning? |
| 10:18 | 20 | A.   Yes. |
| 10:18 | 21 | Q.   And you preferred to be in marketing? |
| 10:18 | 22 | A.   At the time, yes. |
| 10:18 | 23 | Q.   Now -- and so sometime around the beginning of 2000, |
| 10:18 | 24 | you tried to get jobs within Mattel for marketing instead of |
| 10:18 | 25 | product planning, right? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

76

| | | |
|---|---|---|
| 10:18 | 1 | A.    Yes. |
| 10:18 | 2 | Q.    And you interviewed with large and small doll -- not |
| 10:19 | 3 | the dolls themselves.  I'm talking about the division. |
| 10:19 | 4 | A.    Yes. |
| 10:19 | 5 | Q.    And there's a Disney team within Barbie at the time? |
| 10:19 | 6 | A.    It was not within Barbie. |
| 10:19 | 7 | Q.    Okay.  What was that? |
| 10:19 | 8 | A.    There was a separate group of design -- they were |
| 10:19 | 9 | called Disney Entertainment, and they worked on Disney toy |
| 10:19 | 10 | property. |
| 10:19 | 11 | Q.    I'm sorry.  But it was within Mattel? |
| 10:19 | 12 | A.    Yes. |
| 10:19 | 13 | Q.    And you interviewed for that? |
| 10:19 | 14 | A.    Yes. |
| 10:19 | 15 | Q.    And you interviewed for planning with Fisher-Price, |
| 10:19 | 16 | which was within Mattel? |
| 10:19 | 17 | A.    Yes. |
| 10:19 | 18 | Q.    And you interviewed for Nickelodeon, which was within |
| 10:19 | 19 | Mattel? |
| 10:19 | 20 | A.    Yes. |
| 10:19 | 21 | Q.    And unfortunately, you didn't -- you didn't get the |
| 10:20 | 22 | jobs that you were interviewing for, right?  Well, let me |
| 10:20 | 23 | rephrase that. |
| 10:20 | 24 | At the time you didn't get the jobs that you had |
| 10:20 | 25 | interviewed for? |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

77

| | | |
|---|---|---|
| 10:20 | 1 | A.    That's right. |
| 10:20 | 2 | Q.    So you noticed a posting somewhere of an opportunity |
| 10:20 | 3 | with this company, MGA, right? |
| 10:20 | 4 | A.    Yes. |
| 10:20 | 5 | Q.    Now, again, that time when you noticed this posting, |
| 10:20 | 6 | about what timeframe was that? |
| 10:20 | 7 | A.    Probably around the -- I don't recall exactly. |
| 10:20 | 8 | Q.    Was it close to April 2000? |
| 10:20 | 9 | A.    Yes. |
| 10:20 | 10 | Q.    So at the time that you saw this job posting -- well, |
| 10:20 | 11 | let me step back. |
| 10:20 | 12 | You know now that in '99 MGA got a doll of the year |
| 10:20 | 13 | award from some organization for a doll? |
| 10:21 | 14 | A.    Yes. |
| 10:21 | 15 | Q.    And what's the name of that doll? |
| 10:21 | 16 | A.    It's called "Bouncy Baby."  I'm not -- it's called |
| 10:21 | 17 | "Bouncy Baby." |
| 10:21 | 18 | Q.    But despite the fact that they had that award, when you |
| 10:21 | 19 | noticed this job posting, you had never heard of MGA, right? |
| 10:21 | 20 | A.    That's correct. |
| 10:21 | 21 | Q.    And at the time that you left Mattel for MGA, MGA |
| 10:21 | 22 | didn't have a fashion doll? |
| 10:21 | 23 | A.    No, they did not. |
| 10:21 | 24 | Q.    And they didn't have fashion designers for a fashion |
| 10:21 | 25 | doll? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

| | | |
|---|---|---|
| 10:21 | 1 | A.   No. |
| 10:21 | 2 | Q.   That's a double negative.  I apologize. |
| 10:21 | 3 | Did they have fashion designers for a fashion doll? |
| 10:21 | 4 | A.   No. |
| 10:22 | 5 | Q.   Did they have a sculptor for a fashion doll? |
| 10:22 | 6 | A.   No. |
| 10:22 | 7 | Q.   Did they have a design center that worked on fashion |
| 10:22 | 8 | dolls? |
| 10:22 | 9 | A.   Um, no. |
| 10:22 | 10 | Q.   Did they have a design center? |
| 10:22 | 11 | A.   Yes. |
| 10:22 | 12 | Q.   And what kind of things were the design center working |
| 10:22 | 13 | on when you joined MGA? |
| 10:22 | 14 | A.   The design center was working on dolls, large dolls. |
| 10:22 | 15 | They were working on licensed goods.  Power Rangers.  I |
| 10:22 | 16 | believe there was, um, Simpsons toys -- to name a few. |
| 10:22 | 17 | Q.   After joining MGA -- let me ask it again. |
| 10:22 | 18 | When you noticed MGA in this -- was it monster.com or |
| 10:22 | 19 | something like that? |
| 10:22 | 20 | A.   I don't even recall. |
| 10:23 | 21 | Q.   Okay.  When you noticed this posting by MGA, and before |
| 10:23 | 22 | you accepted, did you do research because you'd never heard |
| 10:23 | 23 | of this company?  So did you kind of look into them? |
| 10:23 | 24 | A.   Uh, yes. |
| 10:23 | 25 | Q.   At that time did you have an interest yourself of |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

79

| | | |
|---|---|---|
| 10:23 | 1 | developing a fashion doll of some sorts? |
| 10:23 | 2 | A.   At that time in my interviewing or pursuing MGA or my |
| 10:23 | 3 | research on MGA, I was -- yes. |
| 10:23 | 4 | Q.   So is it correct that it wasn't until the end of |
| 10:23 | 5 | August 2000 that you first mentioned to Mr. Larian that you |
| 10:23 | 6 | were interested in developing a fashion doll? |
| 10:24 | 7 | A.   I believe so, yes. |
| 10:24 | 8 | Q.   So let's talk about that period between April 20th and |
| 10:24 | 9 | the end of August 2000.  You're not aware of Mr. Larian at |
| 10:24 | 10 | that time conducting some sort of contest for a fashion doll |
| 10:24 | 11 | concept, right? |
| 10:24 | 12 | MR. McCONVILLE:  Objection.  Lacks foundation. |
| 10:24 | 13 | THE COURT:  Overruled. |
| 10:24 | 14 | THE WITNESS:  I don't recall a contest. |
| 10:24 | 15 | BY MR. PRICE: |
| 10:24 | 16 | Q.   Certainly, there was no -- no contest where Mr. Larian |
| 10:24 | 17 | came to you and said, "I want to look at fashion doll ideas, |
| 10:24 | 18 | and there's gonna be a contest, and the winner gets some |
| 10:24 | 19 | sort of benefit"? |
| 10:24 | 20 | A.   I don't recall -- I don't recall that. |
| 10:24 | 21 | Q.   And if there had been a fashion doll contest within |
| 10:25 | 22 | MGA, do you recall that, given your position, you would have |
| 10:25 | 23 | been aware of it? |
| 10:25 | 24 | MR. McCONVILLE:  Vague as to time. |
| 10:25 | 25 | THE COURT:  Overruled.  I believe it was between |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

80

| | | |
|---|---|---|
| 10:25 | 1 | April 20th and the end of August 2000. |
| 10:25 | 2 | MR. PRICE:  Yes. |
| 10:25 | 3 | THE WITNESS:  Um, possibly.  It -- it's possible |
| 10:25 | 4 | that I may have been made aware of that.  I was an associate |
| 10:25 | 5 | product manager at that time, not in design. |
| 10:25 | 6 | BY MR. PRICE: |
| 10:25 | 7 | Q.   So as an associate product manager, the first thing you |
| 10:25 | 8 | can tell us is you were not aware of any such contest, |
| 10:25 | 9 | right? |
| 10:25 | 10 | A.   I don't recall them. |
| 10:25 | 11 | Q.   But you can tell us you don't recall being aware of any |
| 10:26 | 12 | such contest, right? |
| 10:26 | 13 | A.   That's right. |
| 10:26 | 14 | Q.   And given your position, you said it's possible that if |
| 10:26 | 15 | there was one, you would have been aware of it, right? |
| 10:26 | 16 | A.   That's right. |
| 10:26 | 17 | Q.   And at the end of August 2000, when you first mentioned |
| 10:26 | 18 | being interested in a fashion doll to Mr. Larian, at that |
| 10:26 | 19 | time he didn't tell you, "I'm already having a contest about |
| 10:26 | 20 | this", "I'm already looking at this," or anything of that |
| 10:26 | 21 | nature, right? |
| 10:26 | 22 | A.   No, I don't -- no. |
| 10:26 | 23 | Q.   A double negative.  My fault. |
| 10:26 | 24 | When you talked to Mr. Larian the end of August 2000 |
| 10:26 | 25 | and you mentioned the possibility of doing a fashion doll, |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

81

| | | |
|---|---|---|
| 10:26 | 1 | did he say to you that he had already been looking into it |
| 10:26 | 2 | or that there had been a contest or anything like that? |
| 10:26 | 3 | A.   No. |
| 10:26 | 4 | Q.   Now, let's talk about what you believe that MGA needed |
| 10:27 | 5 | to produce a fashion doll. |
| 10:27 | 6 | A.   Okay. |
| 10:27 | 7 | Q.   Okay.  And you're fairly familiar now with what a |
| 10:27 | 8 | company like MGA would need to produce a fashion doll, |
| 10:27 | 9 | right? |
| 10:27 | 10 | A.   Yes. |
| 10:27 | 11 | Q.   Okay.  And one thing you would need is a designer, |
| 10:27 | 12 | right? |
| 10:27 | 13 | A.   Yes. |
| 10:27 | 14 | Q.   I mean, you'd need someone to come up with the concept, |
| 10:27 | 15 | the drawings, the theme for a fashion doll, right? |
| 10:27 | 16 | A.   No, not necessarily. |
| 10:27 | 17 | Q.   Well, in this case it was Mr. Bryant who was, in your |
| 10:27 | 18 | words, the inventor of these Bratz dolls, right? |
| 10:27 | 19 | A.   He was the inventor of his portfolio and the concept. |
| 10:28 | 20 | Q.   Is that what you meant when you responded to the |
| 10:28 | 21 | question? |
| 10:28 | 22 | A.   Yes. |
| 10:28 | 23 | Q.   Well, you needed someone to come up with the concept |
| 10:28 | 24 | for a fashion doll before you'd make one, right? |
| 10:28 | 25 | A.   Do you mean to say generally?  Generally? |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

82

| | | |
|---|---|---|
| 10:28 | 1 | Q.    Yeah.  Yes. |
| 10:28 | 2 | A.    No. |
| 10:28 | 3 | Q.    Okay.  In this case, my understanding is Ms. Leahy was |
| 10:28 | 4 | a sculptor who worked on the Bratz sculpt, right? |
| 10:28 | 5 | A.    Yes. |
| 10:28 | 6 | Q.    You have no reason to believe that MGA would ask her to |
| 10:28 | 7 | sculpt anything that looked like Bratz unless MGA had gotten |
| 10:28 | 8 | the designs and drawings from Mr. Bryant, right? |
| 10:28 | 9 | A.    I believe I would have had Margaret Leahy sculpt a |
| 10:29 | 10 | concept that would be similar. |
| 10:29 | 11 | Q.    Before you ever saw Carter Bryant's designs, you would |
| 10:29 | 12 | have done that? |
| 10:29 | 13 | A.    Yes. |
| 10:29 | 14 | Q.    Okay.  Then, why didn't you do that between April 2000 |
| 10:29 | 15 | and September of 2000 when Carter Bryant came in and pitched |
| 10:29 | 16 | the Bratz dolls? |
| 10:29 | 17 | A.    I was very involved in completing the development and |
| 10:29 | 18 | design of what I was hired to do in my first day at MGA. |
| 10:29 | 19 | That was to make sure that MGA's large dolls were developed, |
| 10:29 | 20 | and not only developed, but saw through design, develop, and |
| 10:29 | 21 | even saw through to manufacturing.  So I didn't have the |
| 10:29 | 22 | time prior to our meeting with Carter to have sculpted |
| 10:29 | 23 | something of that concept. |
| 10:29 | 24 | Q.    You told us that Mr. Bryant's designs and concepts were |
| 10:29 | 25 | unique.  Yes? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

83

| | | |
|---|---|---|
| 10:29 | 1 | A.   Yes. |
| 10:30 | 2 | Q.   That they were amazing, correct? |
| 10:30 | 3 | A.   Yes. |
| 10:30 | 4 | Q.   And your testimony is that if you had never seen them, |
| 10:30 | 5 | MGA somehow would have come up with a doll like the Bratz |
| 10:30 | 6 | dolls? |
| 10:30 | 7 | A.   Yes. |
| 10:30 | 8 | Q.   Did anyone at MGA, anyone in the history of MGA, prior |
| 10:30 | 9 | to September of 2000, come up with a fashion doll concept |
| 10:30 | 10 | like Bratz, which was unique and amazing? |
| 10:30 | 11 | A.   I was only there -- you know, I've only been there for |
| 10:30 | 12 | the 11 years.  In the time that -- I apologize.  Do you mean |
| 10:30 | 13 | prior to September of 2000? |
| 10:30 | 14 | Q.   Yes, ma'am. |
| 10:30 | 15 | A.   I'm not sure.  I'm not sure if someone concepted a |
| 10:30 | 16 | fashion doll at MGA prior to September of 2000. |
| 10:30 | 17 | Q.   When you say you're not sure.  Let me ask you this. |
| 10:30 | 18 | You're not aware of anyone concepting a fashion doll at MGA |
| 10:31 | 19 | prior to Mr. Bryant coming into MGA and presenting his |
| 10:31 | 20 | concept, right? |
| 10:31 | 21 | A.   That's right. |
| 10:31 | 22 | Q.   And if you look at Exhibit 302, which is in evidence. |
| 10:31 | 23 | *(Document provided to witness.)* |
| 10:31 | 24 | *(Document displayed.)* |
| | 25 | |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

84

| | | |
|---|---|---|
| 10:31 | 1 | BY MR. PRICE: |
| 10:31 | 2 | Q.   Flip through that, and let me show the third page, and |
| 10:31 | 3 | the fourth has all these characters in it and their moveable |
| 10:31 | 4 | head and their moveable feet, the proportions. |
| 10:31 | 5 | So you're saying if Mr. Bryant hadn't come forward with |
| 10:31 | 6 | this pitch and these amazing, unique designs in September of |
| 10:31 | 7 | 2000, you would have eventually gotten around to doing the |
| 10:31 | 8 | same thing? |
| 10:31 | 9 | A.   Yes, I would have developed a concept very similar to |
| 10:31 | 10 | Bratz. |
| 10:32 | 11 | Q.   So I guess what that means is there really was no |
| 10:32 | 12 | reason to enter into a contract with Mr. Bryant. |
| 10:32 | 13 | MR. McCONVILLE:  Objection.  Argumentative. |
| 10:32 | 14 | THE COURT:  That's a statement, Counsel. |
| 10:32 | 15 | Question. |
| 10:32 | 16 | Sustained. |
| 10:32 | 17 | BY MR. PRICE: |
| 10:32 | 18 | Q.   You're sitting there in this meeting, right?  And I |
| 10:32 | 19 | think you've testified you almost squeaked with delight, or |
| 10:32 | 20 | something of that nature? |
| 10:32 | 21 | A.   I was quite excited.  I don't know if I... |
| 10:32 | 22 | Q.   So at that time did you tell Mr. Larian, "We don't need |
| 10:32 | 23 | to pay for this sort of stuff.  I'm gonna come up with it"? |
| 10:32 | 24 | A.   No, I didn't. |
| 10:32 | 25 | Q.   You understood that after that, there were negotiations |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 85 of 125   Page ID #:290367
CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

85

| | | |
|---|---|---|
| 10:32 | 1 | between MGA and Mr. Bryant as to what he would be paid, |
| 10:32 | 2 | correct? |
| 10:32 | 3 | A.   I was not involved in any conversations about what |
| 10:33 | 4 | Carter would be paid. |
| 10:33 | 5 | Q.   You knew MGA at that point was pursuing Mr. Bryant in |
| 10:33 | 6 | trying to acquire his designs? |
| 10:33 | 7 | A.   Yes. |
| 10:33 | 8 | Q.   Okay.  At any time did you tell anyone at MGA, "Let's |
| 10:33 | 9 | not waste our money on this, because I will come up with |
| 10:33 | 10 | this unique, amazing concept"? |
| 10:33 | 11 | A.   No. |
| 10:33 | 12 | Q.   Did you say -- I assume -- in September 2000, did you |
| 10:33 | 13 | have a belief that if you used these designs and concepts |
| 10:33 | 14 | and went forward with them in whatever way, that they would |
| 10:33 | 15 | be successful? |
| 10:33 | 16 | A.   I believed that if I followed the concept of Bratz, I |
| 10:33 | 17 | would be successful, but not -- just to be clear, not the -- |
| 10:34 | 18 | the aesthetics represented in -- in the portfolio. |
| 10:34 | 19 | Q.   At some point it came to your attention that |
| 10:34 | 20 | Mr. Bryant, as a result of his deal with MGA, made a certain |
| 10:34 | 21 | amount of money, correct? |
| 10:34 | 22 | A.   Yes. |
| 10:34 | 23 | Q.   And you at some point became aware that that money is |
| 10:34 | 24 | in excess of $30 million? |
| 10:34 | 25 | A.   Um, I don't know if I know that.  I -- um, I'm not |

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 86 of 125   Page ID #:290368
CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

86

| | | |
|---|---|---|
| 10:34 | 1 | aware of how much Carter has made. |
| 10:34 | 2 | Q.   Do you have any -- can you estimate at all?  I mean, |
| 10:34 | 3 | have you heard anyone at MGA talk about it or heard |
| 10:34 | 4 | Mr. Bryant talk about it? |
| 10:34 | 5 | A.   No. |
| 10:34 | 6 | Q.   You would agree that it wouldn't make sense from a |
| 10:34 | 7 | business perspective for MGA to pay a significant amount of |
| 10:35 | 8 | money for designs and drawings that it did not need because |
| 10:35 | 9 | of your talents? |
| 10:35 | 10 | A.   Sorry.  Could you repeat the question, please? |
| 10:35 | 11 | Q.   You would agree that it wouldn't make business sense |
| 10:35 | 12 | for MGA to pay Mr. Bryant a significant amount of money when |
| 10:35 | 13 | it could instead use designs that you were going to come up |
| 10:35 | 14 | with? |
| 10:35 | 15 | A.   Um, I believe that MGA should have paid that money. |
| 10:35 | 16 | Q.   And you're saying that because MGA's made a lot of |
| 10:35 | 17 | money off of Bratz?  Been very successful? |
| 10:35 | 18 | A.   No.  Because while some things were not correct about |
| 10:35 | 19 | this portfolio, there were a lot of things right.  And I |
| 10:35 | 20 | believed it was worth it. |
| 10:36 | 21 | Q.   But even if there were things that were right with this |
| 10:36 | 22 | portfolio, would it make business sense, in your view, to |
| 10:36 | 23 | pay Carter Bryant a significant amount of money for them |
| 10:36 | 24 | when an MGA employee who's already there would do the same |
| 10:36 | 25 | thing? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

87

| 10:36 | 1 | MR. McCONVILLE:  Objection.  Asked and answered. |
| 10:36 | 2 | THE COURT:  Overruled. |
| 10:36 | 3 | THE WITNESS:  Yes. |
| 10:36 | 4 | BY MR. PRICE: |
| 10:36 | 5 | Q.   Now, have you ever made decisions based upon costs; |
| 10:36 | 6 | that is, this will cost this much and we'll have this |
| 10:36 | 7 | benefit, or we have this alternative and we should do this. |
| 10:36 | 8 | Have you ever done that as an executive? |
| 10:36 | 9 | A.   Yes. |
| 10:36 | 10 | Q.   And so would it be your understanding that MGA, in |
| 10:36 | 11 | determining whether or not to pay Mr. Bryant for these |
| 10:36 | 12 | designs, would be comparing what they'd have to pay him with |
| 10:36 | 13 | the product versus what they could do with other options? |
| 10:36 | 14 | A.   I don't understand the question.  I'm sorry. |
| 10:37 | 15 | MR. PRICE:  Your Honor, could I request a break at |
| 10:37 | 16 | this time. |
| 10:37 | 17 | THE COURT:  Okay. |
| 10:37 | 18 | All right.  We'll take a recess.  You're |
| 10:37 | 19 | admonished not to discuss this matter amongst yourselves, |
| 10:37 | 20 | nor form or express any opinion concerning the case. |
| 10:37 | 21 | Go have a nice recess.  We'll see you promptly at |
| 10:38 | 22 | 11:00 o'clock. |
| 10:38 | 23 | *(Recess held at 10:38 a.m.)* |
| 11:03 | 24 | *(Proceedings resumed at 11:03 a.m.)* |
| 11:03 | 25 | *(In the presence of the jury.)* |

CV 04-9049 DOC – 1/20/2011 – Day 5, Volume 1 of 2

88

| | | |
|---|---|---|
| 11:03 | 1 | THE COURT: The jury's present, alternates are |
| 11:03 | 2 | present, all counsel. The parties are present. |
| 11:03 | 3 | And if you would be seated. |
| 11:03 | 4 | I want to make sure -- Counsel, I want to make |
| 11:03 | 5 | sure that that was acceptable, with Rachel, to both parties. |
| 11:03 | 6 | I talked to you about it this morning. |
| 11:03 | 7 | Mr. McConville? |
| 11:03 | 8 | MR. McCONVILLE: Yes, Your Honor. |
| 11:03 | 9 | THE COURT: Mr. Quinn. |
| 11:03 | 10 | MR. QUINN: Yes. |
| 11:03 | 11 | THE COURT: Any concern? |
| 11:03 | 12 | MR. QUINN: No. |
| 11:03 | 13 | THE COURT: All right. Thank you. |
| 11:03 | 14 | Then if you would like to continue on with your |
| 11:03 | 15 | direct examination. |
| 11:03 | 16 | (To the jury:) Remember, once again, let me |
| 11:03 | 17 | remind you there are going to be many witnesses called who, |
| 11:03 | 18 | in a sense, are being called who really might work for the |
| 11:03 | 19 | other company. |
| 11:03 | 20 | *(Direct examination resumed.)* |
| | 21 | BY MR. PRICE: |
| 11:04 | 22 | Q. Ms. Garcia, good morning. I want to focus on this |
| 11:04 | 23 | timeline again. |
| 11:04 | 24 | A. Okay. |
| 11:04 | 25 | Q. September 2000, you say there was a meeting with |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

89

| | | |
|---|---|---|
| 11:04 | 1 | Mr. Bryant and others, right? |
| 11:04 | 2 | A.   Yes. |
| 11:04 | 3 | Q.   Isn't it true that you had a meeting with Mr. Bryant |
| 11:04 | 4 | prior to that? |
| 11:04 | 5 | A.   I don't recall a meeting prior to that meeting. |
| 11:04 | 6 | Q.   Okay.  Let me have placed before you Exhibit 11328. |
| 11:05 | 7 | (Document provided to witness.) |
| 11:05 | 8 | BY MR. PRICE: |
| 11:05 | 9 | Q.   And do you have that in front of you? |
| 11:05 | 10 | A.   Yes. |
| 11:05 | 11 | Q.   Do you know what that is? |
| 11:05 | 12 | A.   Looks like it's a meeting invite. |
| 11:05 | 13 | MR. PRICE:  Your Honor, I move Exhibit 11328 into |
| 11:05 | 14 | evidence. |
| 11:05 | 15 | THE COURT:  Received. |
| 11:05 | 16 | (Exhibit No. 11328 received in evidence.) |
| 11:05 | 17 | MR. PRICE:  If we could put that up on the screen. |
| 11:05 | 18 | THE COURT:  You may. |
| 11:05 | 19 | (Document displayed.) |
| 11:06 | 20 | BY MR. PRICE: |
| 11:06 | 21 | Q.   You see this is a document from Didi Brown.  Could you |
| 11:06 | 22 | tell us who Didi Brown was? |
| 11:06 | 23 | A.   Didi Brown was Isaac Larian's assistant at the time. |
| 11:06 | 24 | Q.   It looks like it's to you and Ms. O'Connor? |
| 11:06 | 25 | A.   Yes. |

| 11:06 | 1 | Q. And it says, The subject, "Carter Bryant, doll designer |
|---|---|---|
| 11:06 | 2 | with Victoria and Paula." Do you see that? |
| 11:06 | 3 | A. Yes. |
| 11:06 | 4 | Q. And there's a received date of August 18, 2000, a sent |
| 11:06 | 5 | date of August 18, 2000. Do you see that? |
| 11:06 | 6 | A. Yes. |
| 11:06 | 7 | Q. Can you tell us what this indicates to you? |
| 11:06 | 8 | A. It indicates that Didi Brown set up a meeting on |
| 11:06 | 9 | August 18th of 2000. |
| 11:06 | 10 | Q. And that's a meeting you just have no memory of at this |
| 11:06 | 11 | time? |
| 11:06 | 12 | A. That's right. |
| 11:07 | 13 | Q. But could you say that such a meeting did not take |
| 11:07 | 14 | place? |
| 11:07 | 15 | A. No. |
| 11:07 | 16 | Q. And did Didi Brown know Mr. Bryant? |
| 11:07 | 17 | A. No. |
| 11:07 | 18 | Q. Do you have any information as to how she would have |
| 11:07 | 19 | learned about him? |
| 11:07 | 20 | A. No. |
| 11:07 | 21 | Q. Would you have asked -- given what was going on in that |
| 11:07 | 22 | time frame, would it be you who would tell Ms. Brown, "We |
| 11:07 | 23 | need to set up a meeting"? |
| 11:07 | 24 | A. No, not necessarily. |
| 11:07 | 25 | Q. Well, you see it says, "Carter Bryant, doll designer." |

| | | |
|---|---|---|
| 11:07 | 1 | You see that? |
| 11:07 | 2 | A.   Yes. |
| 11:07 | 3 | Q.   Do you know who told Ms. Brown that Carter Bryant was a |
| 11:07 | 4 | doll designer? |
| 11:07 | 5 | A.   No, I don't. |
| 11:07 | 6 | Q.   After receiving this, did you ever talk to Ms. Brown or |
| 11:07 | 7 | Ms. O'Connor or anyone and say, "No, he's not a doll |
| 11:07 | 8 | designer"? |
| 11:07 | 9 | A.   No. |
| 11:08 | 10 | Q.   So if you could look now at Exhibit 301. |
| 11:08 | 11 | A.   Yes. |
| 11:08 | 12 | Q.   Could you tell us what that is. |
| 11:08 | 13 | A.   It's an invite again, a meeting request. |
| 11:08 | 14 | MR. PRICE:  Your Honor, move Exhibit 301 into |
| 11:08 | 15 | evidence. |
| 11:08 | 16 | THE COURT:  Just a moment.  I have this -- |
| 11:08 | 17 | Could I see 301 for just a moment? |
| 11:08 | 18 | THE WITNESS:  Sure. |
| 11:08 | 19 | THE COURT:  Thank you very much.  Appreciate it. |
| 11:08 | 20 | Thank you.  Received. |
| 11:08 | 21 | *(Exhibit No. 301 received in evidence.)* |
| 11:09 | 22 | MR. PRICE:  Can you display that? |
| 11:09 | 23 | *(Document displayed.)* |
| 11:09 | 24 | MR. PRICE:  Thank you. |
| | 25 | |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

92

| | | |
|---|---|---|
| 11:09 | 1 | BY MR. PRICE: |
| 11:09 | 2 | Q.   So this is another meeting request concerning a meeting |
| 11:09 | 3 | with Mr. Bryant, correct? |
| 11:09 | 4 | A.   That's right. |
| 11:09 | 5 | Q.   And what does this indicate to you as to the date of |
| 11:09 | 6 | the meeting and who would be present? |
| 11:09 | 7 | A.   It seems that the meeting was set for September 1st of |
| 11:09 | 8 | 2000, between 11:00 and 11:30.  And the required attendees |
| 11:09 | 9 | list Paula Treantafelles and Victoria O'Connor. |
| 11:09 | 10 | Q.   Now, this is a meeting that you do recall taking place? |
| 11:09 | 11 | A.   Yes. |
| 11:09 | 12 | Q.   And under "Subject," it says, "Carter Bryant, doll |
| 11:09 | 13 | designer."  Do you see that? |
| 11:09 | 14 | A.   Yes. |
| 11:09 | 15 | Q.   And do you know who attached that designation to |
| 11:10 | 16 | Mr. Bryant, that he was a doll designer? |
| 11:10 | 17 | A.   No. |
| 11:10 | 18 | Q.   Was it you? |
| 11:10 | 19 | A.   No. |
| 11:10 | 20 | Q.   Now, we saw the invitation for August 18th.  Can you |
| 11:10 | 21 | deny that Mr. Bryant presented his portfolio on August 18th? |
| 11:10 | 22 | THE COURT:  "Can you deny"?  No. |
| 11:10 | 23 | MR. PRICE:  Let me rephrase. |
| 11:10 | 24 | BY MR. PRICE: |
| 11:10 | 25 | Q.   Did Mr. Bryant present his portfolio on August 18th? |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:10 | 1 | A.   I don't recall Carter Bryant presenting his portfolio |
| 11:10 | 2 | on August 18th. |
| 11:10 | 3 | Q.   And by that, you mean you can't recall one way or |
| 11:10 | 4 | another? |
| 11:10 | 5 | A.   I just don't recall it. |
| 11:10 | 6 | Q.   I guess what I'm saying -- are you saying he didn't or |
| 11:10 | 7 | are you saying I just don't know one way or another? |
| 11:10 | 8 | MR. McCONVILLE:  Objection.  Asked and answered. |
| 11:11 | 9 | THE COURT:  Overruled. |
| 11:11 | 10 | First of all, I want to find out, she previously |
| 11:11 | 11 | testified that she's not aware of August 18th, other than |
| 11:11 | 12 | the e-mail.  I mean, does she have any recollection of |
| 11:11 | 13 | attending such a meeting?  Let's ask that again and find out |
| 11:11 | 14 | for certain so the jury's not confused, in case there's a |
| 11:11 | 15 | second meeting on September 1st and you're trying to segue |
| 11:11 | 16 | those out. |
| 11:11 | 17 | So let's start again and see if she's present on |
| 11:11 | 18 | August 18th and what her memory is, if any. |
| 11:11 | 19 | BY MR. PRICE: |
| 11:11 | 20 | Q.   Ms. Garcia, do you have any memory of a meeting on |
| 11:11 | 21 | August 18th? |
| 11:11 | 22 | A.   No. |
| 11:11 | 23 | THE COURT:  Well, ladies and gentlemen, that isn't |
| 11:11 | 24 | to assume that there is or isn't.  You'll have a lot of |
| 11:11 | 25 | testimony about that from both sides.  You'll form your own |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

94

| | | |
|---|---|---|
| 11:11 | 1 | conclusion whether there's one or two meetings on |
| 11:11 | 2 | August 18th and September 1st, or just one meeting. |
| | 3 | BY MR. PRICE: |
| 11:11 | 4 | Q.   Is -- the first time you met with Mr. Bryant, did he |
| 11:11 | 5 | present his portfolio about Bratz? |
| 11:11 | 6 | A.   Yes. |
| 11:12 | 7 | Q.   And isn't it true that at that time, this first |
| 11:12 | 8 | meeting, as you understood it, Carter Bryant was a designer |
| 11:12 | 9 | at Mattel? |
| 11:12 | 10 | A.   No. |
| 11:12 | 11 | MR. PRICE:  Your Honor, I'd like to play for the |
| 11:12 | 12 | jury -- this is May 24, 2007, page 268, line 21, to 272, |
| 11:13 | 13 | line 2.  I'm sorry.  That's Volume I, May 24, 2007. |
| 11:13 | 14 | MR. McCONVILLE:  Counsel, I'm sorry?  We didn't |
| 11:13 | 15 | quite understand the -- 268? |
| 11:13 | 16 | MR. PRICE:  268, line 21, through 272, line 2. |
| 11:13 | 17 | And we're providing that to Your Honor. |
| 11:13 | 18 | THE COURT:  Excuse me just for a moment.  I've got |
| 11:13 | 19 | three or four pages to read, so I'll be right with you. |
| 11:14 | 20 | MR. McCONVILLE:  Your Honor, we'd object as to |
| 11:14 | 21 | this line as improper. |
| 11:14 | 22 | THE COURT:  Counsel, that's simply answered on |
| 11:14 | 23 | page 68, lines 21 and 22 and line 25.  But you may read |
| 11:14 | 24 | those three lines. |
| | 25 | |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

95

| | | |
|---|---|---|
| 11:14 | 1 | BY MR. PRICE: |
| 11:14 | 2 | Q.   Let me ask you some further questions. |
| 11:14 | 3 | THE COURT:  No.  The question is very clear.  You |
| 11:14 | 4 | may read those three lines. |
| 11:14 | 5 | MR. PRICE:  I'm going to avoid playing that now, |
| 11:14 | 6 | Your Honor, and ask further questions, if I may. |
| 11:14 | 7 | THE COURT:  All right. |
| 08:29 | 8 | BY MR. PRICE: |
| 11:15 | 9 | Q.   When is it that you became first aware that Mr. Bryant |
| 11:15 | 10 | was working at Mattel? |
| 11:15 | 11 | A.   Oh, I'm sorry.  I thought -- |
| 11:15 | 12 | THE COURT:  Is this the matter we discussed this |
| 11:15 | 13 | morning -- |
| 11:15 | 14 | MR. PRICE:  Yes, Your Honor. |
| 11:15 | 15 | THE COURT:  -- at 7:30? |
| 11:15 | 16 | Move on to another subject, Counsel.  We'll make a |
| 11:15 | 17 | complete record of that before we get into that.  That's |
| 11:15 | 18 | what we do at nights. |
| 10:31 | 19 | BY MR. PRICE: |
| 11:15 | 20 | Q.   Without referring to a deposition, I'll just ask you, |
| 11:15 | 21 | when is the first time you became aware that Carter Bryant |
| 11:15 | 22 | was working for Mattel at the time of your first meeting |
| 11:15 | 23 | with him? |
| 11:15 | 24 | A.   My memory is around the 2004 time period. |
| 11:16 | 25 | Q.   So you first learned that Mr. Bryant was working for |

| 11:16 | 1 | Mattel as of September 1st, some two and a half -- some |
|---|---|---|
| 11:16 | 2 | three and a half to four years later? |
| 11:16 | 3 | A.   Yes. |
| 11:16 | 4 | Q.   In 2000 did you ever talk to Mr. Larian about Carter |
| 11:16 | 5 | Bryant's employment? |
| 11:16 | 6 | A.   No, not that I can recall. |
| 11:16 | 7 | Q.   Or Victoria O'Connor? |
| 11:16 | 8 | THE COURT:  Well, just a moment.  "Not that I can |
| 11:16 | 9 | recall." |
| 11:16 | 10 | Answer the question. |
| 11:16 | 11 | THE WITNESS:  No. |
| 08:59 | 12 | BY MR. PRICE: |
| 11:16 | 13 | Q.   Or Victoria O'Connor? |
| 11:16 | 14 | A.   No. |
| 11:16 | 15 | Q.   There's a woman who you claim introduced you to |
| 11:17 | 16 | Mr. Bryant, correct? |
| 11:17 | 17 | A.   Yes. |
| 11:17 | 18 | Q.   What's her name? |
| 11:17 | 19 | A.   Veronica Marlow. |
| 11:17 | 20 | Q.   When Ms. Marlow introduced you to Mr. Bryant, did she |
| 11:17 | 21 | tell you that Mr. Bryant was working at Mattel at the time? |
| 11:17 | 22 | A.   No. |
| 11:17 | 23 | Q.   Since -- up to till today, have you had any |
| 11:17 | 24 | conversations with Ms. Marlow where she's indicated one way |
| 11:17 | 25 | or another as to whether Mr. Bryant was with Mattel as of |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

97

| | | |
|---|---|---|
| 11:17 | 1 | September 1st? |
| 11:17 | 2 | A.    No. |
| 11:17 | 3 | MR. McCONVILLE:  Objection.  Relevance. |
| 11:17 | 4 | THE COURT:  Overruled. |
| 11:17 | 5 | THE WITNESS:  No. |
| 11:17 | 6 | BY MR. PRICE: |
| 11:17 | 7 | Q.    Now, you're very good friends with Ms. Marlow, correct? |
| 11:18 | 8 | A.    I was, yes. |
| 11:18 | 9 | Q.    Did there come a time, and I'm just asking for a date |
| 11:18 | 10 | here -- did there come a time where you weren't good friends |
| 11:18 | 11 | with Ms. Marlow? |
| 11:18 | 12 | A.    Ms. Marlow and I -- um, no. |
| 11:18 | 13 | Q.    Okay.  So you're still good friends with her? |
| 11:18 | 14 | A.    I haven't spoken with Veronica Marlow in a number of |
| 11:18 | 15 | years. |
| 11:18 | 16 | Q.    Would you -- I'm going to place before you now |
| 11:18 | 17 | Exhibit 13172. |
| 11:18 | 18 | *(Document provided to witness.)* |
| 11:19 | 19 | BY MR. PRICE: |
| 11:19 | 20 | Q.    Do you have that in front of you? |
| 11:19 | 21 | A.    Yes. |
| 11:19 | 22 | Q.    And could you tell us what that is? |
| 11:19 | 23 | A.    This is a check that the Marlows wrote to me. |
| 11:19 | 24 | MR. PRICE:  Your Honor, I move 13172 into |
| 11:19 | 25 | evidence. |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

98

| | | |
|---|---|---|
| 11:19 | 1 | THE COURT:  Received. |
| 11:19 | 2 | *(Exhibit No. 13172 received in evidence.)* |
| 11:19 | 3 | MR. PRICE:  Display it. |
| 11:19 | 4 | *(Document displayed.)* |
| 11:19 | 5 | BY MR. PRICE: |
| 11:19 | 6 | Q.   So this is the check as of August 27, 2004, correct? |
| 11:19 | 7 | A.   Yes. |
| 11:19 | 8 | Q.   And it's on the account of Peter Marlow and Maria |
| 11:19 | 9 | Veronica Marlow? |
| 11:19 | 10 | A.   Yes. |
| 11:19 | 11 | Q.   And this is the same Veronica Marlow who introduced |
| 11:20 | 12 | you -- I guess, who led to your first introduction to Carter |
| 11:20 | 13 | Bryant? |
| 11:20 | 14 | A.   That's right. |
| 11:20 | 15 | Q.   And when she first introduced him to you, she said, |
| 11:20 | 16 | "You should talk to him; he's got some good ideas"? |
| 11:20 | 17 | A.   Yes. |
| 11:20 | 18 | Q.   And did she tell you what those ideas concerned? |
| 11:20 | 19 | A.   I think, generally, she made reference to a doll |
| 11:20 | 20 | concept. |
| 11:20 | 21 | Q.   Now, here it's August 27, 2004, that's the date of the |
| 11:20 | 22 | check, right? |
| 11:20 | 23 | A.   Yes. |
| 11:20 | 24 | Q.   And she's written a check out to you for $8,000? |
| 11:20 | 25 | A.   Yes. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 1/20/2011 – Day 5, Volume 1 of 2

99

| 11:20 | 1 | Q.   Could you tell us what that check was for? |
| 11:20 | 2 | A.   Um, Ms.-- well, the Marlows wrote me this check as a |
| 11:20 | 3 | wedding gift. |
| 11:20 | 4 | Q.   Is it fair to say that, certainly as of that time, you |
| 11:21 | 5 | thought she was a pretty good friend? |
| 11:21 | 6 | A.   She was invited to my wedding.  Yes, she was a good |
| 11:21 | 7 | friend. |
| 11:21 | 8 | Q.   Is it your belief that Ms. Marlow hid from you |
| 11:21 | 9 | information -- |
| 11:21 | 10 | THE COURT:  Counsel, you dropped your voice.  We |
| 11:21 | 11 | couldn't hear you. |
| 11:21 | 12 | MR. PRICE:  I'm sorry. |
| 11:21 | 13 | BY MR. PRICE: |
| 11:21 | 14 | Q.   Is it your belief that Ms. Marlow hid from you |
| 11:21 | 15 | information as to where Mr. Bryant was employed as of |
| 11:21 | 16 | September 2000? |
| 11:21 | 17 | MR. McCONVILLE:  Objection.  Relevance. |
| 11:21 | 18 | THE COURT:  Overruled. |
| 11:21 | 19 | THE WITNESS:  No. |
| 03:59 | 20 | BY MR. PRICE: |
| 11:21 | 21 | Q.   Is it your belief that she knew that as of |
| 11:21 | 22 | September 2000 Mr. Bryant was working at Mattel? |
| 11:21 | 23 | MR. McCONVILLE:  Objection.  Foundation. |
| 11:21 | 24 | THE COURT:  (To the jury:)  Now that's |
| 11:21 | 25 | speculation.  There's no way -- but it goes to credibility. |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

100

| | | |
|---|---|---|
| 11:21 | 1 | It goes to what the witness is testifying to.  So take it |
| 11:21 | 2 | only for that limited purpose. |
| 11:22 | 3 | You can answer that question. |
| 11:22 | 4 | THE WITNESS:  Could you please repeat the |
| 11:22 | 5 | question? |
| 11:22 | 6 | MR. PRICE:  Yes. |
| 11:22 | 7 | BY MR. PRICE: |
| 11:22 | 8 | Q.   Is it your belief that Ms. Marlow, as of |
| 11:22 | 9 | September 2000, knew that Carter Bryant worked at Mattel? |
| 11:22 | 10 | A.   It's my understanding that Veronica knew that Carter |
| 11:22 | 11 | was working at Mattel. |
| 11:22 | 12 | Q.   As of September 1st, 2000? |
| 11:22 | 13 | A.   Yes. |
| 11:22 | 14 | Q.   And it's your belief that she hid that from you? |
| 11:22 | 15 | MR. McCONVILLE:  Objection.  Asked and answered. |
| 11:22 | 16 | THE COURT:  Overruled. |
| 11:22 | 17 | You can answer it one more time. |
| 11:22 | 18 | THE WITNESS:  No. |
| 11:22 | 19 | THE COURT:  Okay. |
| 12:59 | 20 | BY MR. PRICE: |
| 11:22 | 21 | Q.   When did Ms. Marlow first tell you that Carter Bryant |
| 11:22 | 22 | was a Mattel employee as of September 1st, 2000? |
| 11:22 | 23 | MR. McCONVILLE:  Asked and answered. |
| 11:22 | 24 | THE COURT:  Overruled. |
| 11:22 | 25 | THE WITNESS:  I don't recall a conversation with |

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 101 of 125   Page ID #:290383
CV 04-9049 DOC – 1/20/2011 – Day 5, Volume 1 of 2

101

| | | |
|---|---|---|
| 11:22 | 1 | Veronica Marlow regarding -- regarding that. |
| 11:23 | 2 | THE COURT:  Okay. |
| 11:23 | 3 | BY MR. PRICE: |
| 11:23 | 4 | Q.   Well, when you learned in 2004 that Mr. Bryant had -- |
| 11:23 | 5 | was a Mattel employee as of September 1st, 2000, then you |
| 11:23 | 6 | must have been shocked? |
| 11:23 | 7 | A.   Yes. |
| 11:23 | 8 | Q.   At that time did you go to Ms. Marlow and say, "You |
| 11:23 | 9 | introduced me to him.  Why didn't you tell me this?" |
| 11:23 | 10 | A.   No. |
| 11:23 | 11 | Q.   Was it about the time that you received the $8,000 |
| 11:23 | 12 | check from Ms. Marlow that you first learned that Carter |
| 11:23 | 13 | Bryant had been a Mattel employee as of September 1st, 2000? |
| 11:24 | 14 | A.   No. |
| 11:24 | 15 | MR. PRICE:  Your Honor, pursuant to your |
| 11:24 | 16 | direction, and just to put the context of the date, I would |
| 11:24 | 17 | at this time ask to play 263-8 to 11, and what you've told |
| 11:24 | 18 | me I could play, which is 268, line 21 to 25. |
| 11:24 | 19 | THE COURT:  No.  You can play the three lines I |
| 11:24 | 20 | indicated.  That's it, Counsel.  Your job is to prepare me |
| 11:24 | 21 | at night.  I'm here. |
| 11:24 | 22 | MR. PRICE:  Then let's play -- Chris -- |
| 11:24 | 23 | THE COURT:  The three lines you can play, until we |
| 11:25 | 24 | have a hearing outside of the presence of the jury.  We'll |
| 11:25 | 25 | do that tonight. |

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 102 of 125   Page ID #:290384
CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

102

| | | |
|---|---|---|
| 11:25 | 1 | MR. PRICE:  268, lines 21 through 25, skipping |
| 11:25 | 2 | the -- |
| 11:25 | 3 | THE COURT:  Skipping the objection. |
| 11:25 | 4 | MR. PRICE:  Yes. |
| 11:25 | 5 | *(Audio recording played as follows:)* |
| 11:25 | 6 | *"QUESTION:  Mr. Bryant, at that time, as you* |
| 11:25 | 7 | *understood it, was a designer at Mattel; isn't* |
| 11:25 | 8 | *that true?* |
| 11:25 | 9 | *"ANSWER:  Yes."* |
| 11:25 | 10 | BY MR. PRICE: |
| 11:25 | 11 | Q.   And, Ms. Garcia, when you were asked at the time -- "at |
| 11:25 | 12 | that time," the previous questions identified that time as |
| 11:25 | 13 | September 1st, 2000, correct? |
| 11:25 | 14 | A.   That is not what I understood -- the question. |
| 11:25 | 15 | MR. PRICE:  In that case, Your Honor, I would just |
| 11:25 | 16 | like to read, not play, 263, lines 8 through 11. |
| 11:26 | 17 | THE COURT:  263? |
| 11:26 | 18 | MR. PRICE:  Yes, Your Honor.  Lines 8 through 11. |
| 11:26 | 19 | THE COURT:  I don't have 263.  Or if I do, it's |
| 11:26 | 20 | starting to accumulate on the bench. |
| 11:26 | 21 | Thank you.  You may. |
| 11:26 | 22 | MR. McCONVILLE:  Your Honor, for rule of |
| 11:26 | 23 | completeness, can we suggest more testimony? |
| 11:26 | 24 | THE COURT:  No.  You can come back on your |
| 11:26 | 25 | examination, Counsel, under 106. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:26 | 1 | MR. PRICE:  "QUESTION:  And this September 1st, |
| 11:26 | 2 | 2000 meeting is the one we were discussing earlier that is |
| 11:26 | 3 | reflected in this meeting notice, Exhibit 301?" |
| 11:26 | 4 | *(No answer from transcript read by counsel.)* |
| | 5 | BY MR. PRICE: |
| 11:26 | 6 | Q.   That was your testimony, correct? |
| 11:26 | 7 | A.   Yes. |
| 11:26 | 8 | Q.   And if you look at the exchanges prior to the one we |
| 11:26 | 9 | just played, where you were asked. |
| 11:26 | 10 | "Mr. Bryant, at that time, as you understood it, was a |
| 11:27 | 11 | designer at Mattel; isn't that true?" |
| 11:27 | 12 | "ANSWER:  Yes." |
| 11:27 | 13 | Those questions before that are concerning the |
| 11:27 | 14 | September 1st, 2000 meeting, correct? |
| 11:27 | 15 | A.   Mr. Price, I'm totally lost.  Can you help me to find |
| 11:27 | 16 | my place again? |
| 11:27 | 17 | Q.   Sure.  If you look at page 263. |
| 11:27 | 18 | A.   Okay. |
| 11:27 | 19 | Q.   We just read lines 8 through 11. |
| 11:27 | 20 | A.   Yes. |
| 11:27 | 21 | Q.   And then a page later -- |
| 11:27 | 22 | THE COURT:  264? |
| 11:27 | 23 | MR. PRICE:  I'm sorry.  It's 268. |
| 11:27 | 24 | BY MR. PRICE: |
| 11:27 | 25 | Q.   -- you're asked, |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

104

| | | |
|---|---|---|
| 11:27 | 1 | "Mr. Bryant, at that time, as you understood it, was a |
| 11:27 | 2 | designer at Mattel; isn't that true? |
| 11:27 | 3 | "ANSWER:  Yes." |
| 11:27 | 4 | The questions between those questions are about that |
| 11:27 | 5 | September 1st, 2000 meeting, correct? |
| 11:27 | 6 | MR. McCONVILLE:  Your Honor, if the witness |
| 11:27 | 7 | doesn't have that testimony, I'd ask that it be placed in |
| 11:27 | 8 | front of her and give her an opportunity to read it. |
| 11:27 | 9 | THE COURT:  Certainly.  Place that in front of |
| 11:27 | 10 | her. |
| 11:27 | 11 | MR. PRICE:  It is, yes. |
| 11:27 | 12 | THE COURT:  And she has it in front of her, |
| 11:28 | 13 | Counsel. |
| 11:28 | 14 | BY MR. PRICE: |
| 11:28 | 15 | Q.  Have you had time to look at it, Ms. Garcia? |
| 11:28 | 16 | A.  May I have a minute more, please? |
| 11:28 | 17 | Q.  Yeah.  Please.  You smiled at me.  I thought you were |
| 11:28 | 18 | finished. |
| 11:28 | 19 | A.  Okay. |
| 11:28 | 20 | Q.  So I guess my question is, the questions prior to -- |
| 11:29 | 21 | MR. PRICE:  Find it -- well, let me find it, |
| 11:29 | 22 | Your Honor, to make sure I'm accurate. |
| 11:29 | 23 | BY MR. PRICE: |
| 11:29 | 24 | Q.  My question's, prior to that video clip we played, |
| 11:29 | 25 | which was -- you understood at that time -- the questions |

DEBBIE GALE, U.S. COURT REPORTER

105

| | | |
|---|---|---|
| 11:29 | 1 | prior to that are questions about the September 1st, 2000 |
| 11:29 | 2 | meeting, correct? |
| 11:29 | 3 | A.   Are you asking me if the page 263 is in reference to -- |
| 11:29 | 4 | THE COURT:  He's asking you to link 263 with 268, |
| 11:29 | 5 | if the questions in between all pertain to the |
| 11:29 | 6 | September 1st, 2000 meeting. |
| 11:29 | 7 | THE WITNESS:  Oh, I understand.  In that case, I |
| 11:29 | 8 | would like to please read all the pages in between, then. |
| 11:29 | 9 | MR. PRICE:  Please. |
| 11:29 | 10 | THE COURT:  Do that over the lunch hour, Counsel. |
| 11:29 | 11 | BY MR. PRICE: |
| 11:29 | 12 | Q.   You recall being asked what the portfolio was on |
| 11:29 | 13 | September 1st, 2000? |
| 11:29 | 14 | A.   Yes. |
| 11:29 | 15 | Q.   And you were asked, "What was the theme?"  Correct? |
| 11:30 | 16 | A.   Yes. |
| 11:30 | 17 | Q.   You were asked, "Were they large color drawings?" |
| 11:30 | 18 | Correct? |
| 11:30 | 19 | A.   I don't recall that. |
| 11:30 | 20 | MR. McCONVILLE:  Your Honor, this is improper |
| 11:30 | 21 | impeachment, as we discussed this morning. |
| 11:30 | 22 | THE COURT:  Yeah. |
| 11:30 | 23 | I think that we started into this at 7:30, and |
| 11:30 | 24 | neither party's had a chance to be heard on this.  I was |
| 11:30 | 25 | gracious.  I'll just tell the jury. |

| | | |
|---|---|---|
| 11:30 | 1 | (To the jury:)  I was gracious to excuse two of |
| 11:30 | 2 | the counsel last evening.  That was my mistake.  They only |
| 11:30 | 3 | went home at 8:00 o'clock instead of 10:00 o'clock, as |
| 11:30 | 4 | usual.  We started to discuss this at 7:30.  And I need time |
| 11:30 | 5 | outside your presence just to sort this out with counsel. |
| 11:30 | 6 | So they're going to move on. |
| 11:30 | 7 | Next time, I'll have all four counsel present. |
| 11:30 | 8 | I'll be a little bit wiser and not be as gracious. |
| 11:30 | 9 | Counsel. |
| 09:17 | 10 | BY MR. PRICE: |
| 11:30 | 11 | Q.  Ms. Garcia, would it have mattered to you at all if you |
| 11:30 | 12 | had known on September 1st, 2000, that Mr. Bryant was |
| 11:30 | 13 | working for a competitor of MGA? |
| 11:31 | 14 | A.  No. |
| 11:31 | 15 | Q.  Would it have mattered to you at all if you had known |
| 11:31 | 16 | that in September, when Mr. Bryant was buying things, |
| 11:31 | 17 | meeting with a sculptor, contacting hair vendors, that at |
| 11:31 | 18 | that time he was working for a competitor of MGA:  Mattel? |
| 11:31 | 19 | A.  No. |
| 11:31 | 20 | Q.  Is it accurate to say that, as far as you are |
| 11:31 | 21 | concerned, it doesn't matter whether Mr. Bryant was working |
| 11:31 | 22 | at Mattel from September of 2000 to October 19 of 2000? |
| 11:31 | 23 | Just wouldn't matter to you? |
| 11:31 | 24 | A.  That it wouldn't matter to me? |
| 11:31 | 25 | Q.  Yeah.  In terms of working with him, seeing his |

| | | |
|---|---|---|
| 11:32 | 1 | drawings, buying his drawings, having him meet with you and |
| 11:32 | 2 | sculptors, having contacted hair vendors, that, to you, it |
| 11:32 | 3 | wouldn't matter if he did all those things while he was |
| 11:32 | 4 | working at Mattel. |
| 11:32 | 5 | A.    In the context of -- of this particular situation and |
| 11:32 | 6 | knowing what he engaged with, no.  The answer to that is no. |
| 11:32 | 7 | Q.    Now, I mentioned a few things, and I'm gonna ask if |
| 11:32 | 8 | there's anything else you know of that he did while working |
| 11:32 | 9 | with Mattel in connection with the Bratz project.  And I'm |
| 11:32 | 10 | gonna ask you to think of the time period from September 1, |
| 11:32 | 11 | 2000 to October 19. |
| 11:33 | 12 | THE COURT:  October 19th, 2000? |
| 11:33 | 13 | MR. PRICE:  Yes. |
| 11:33 | 14 | THE WITNESS:  Okay. |
| 11:33 | 15 | BY MR. PRICE: |
| 11:33 | 16 | Q.    Do you have that time frame in mind?  So other than |
| 11:33 | 17 | what we've talked about, that he presented the designs and |
| 11:33 | 18 | contacted hair venders and spent some expenses and met with |
| 11:33 | 19 | sculptors -- sculptor -- other than that, can you tell us |
| 11:33 | 20 | what else he did in connection with the Bratz project |
| 11:33 | 21 | between September 1, 2000 and October 19, 2000? |
| 11:33 | 22 | A.    I can't recall any other activities.  Oh, I'm sorry. |
| 11:33 | 23 | Excuse me. |
| 11:33 | 24 | Q.    Sure. |
| 11:33 | 25 | A.    Between -- could I please have the dates again, please? |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

108

| | | |
|---|---|---|
| 11:33 | 1 | Q.   Oh, yes.  September 1, 2000 and October 19, 2000. |
| 11:33 | 2 | A.   Yes, I do recall. |
| 11:33 | 3 | Q.   What else did he did -- did he do -- sorry -- in |
| 11:34 | 4 | connection with the Bratz project during those times? |
| 11:34 | 5 | A.   I understand that -- I remember that Carter was |
| 11:34 | 6 | shopping, clothes shopping within that time period. |
| 11:34 | 7 | Q.   And who was he clothes shopping with? |
| 11:34 | 8 | A.   Veronica Marlow. |
| 11:34 | 9 | Q.   And when you say "clothes shopping," I take it you |
| 11:34 | 10 | don't mean for himself? |
| 11:34 | 11 | A.   Correct. |
| 11:34 | 12 | Q.   What was he clothes shopping for between September 1, |
| 11:34 | 13 | are 2000 and October 19, 2000? |
| 11:34 | 14 | A.   It was my understanding that they were shopping the |
| 11:34 | 15 | fashion malls, going to "tween" fashion stores, to study |
| 11:34 | 16 | fashion trends, see what was out there. |
| 11:34 | 17 | Q.   And that was specifically in connection with this Bratz |
| 11:34 | 18 | project? |
| 11:34 | 19 | A.   Yes. |
| 11:34 | 20 | Q.   I'd like you to look at what we've identified as |
| 11:34 | 21 | Exhibit 305.  And have that put in front of you. |
| 11:35 | 22 | *(Document provided to witness.)* |
| 11:35 | 23 | BY MR. PRICE: |
| 11:35 | 24 | Q.   Do you recognize Exhibit 305? |
| 11:35 | 25 | A.   Yes, I do. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 1/20/2011 – Day 5, Volume 1 of 2

109

| | | |
|---|---|---|
| 11:35 | 1 | MR. PRICE:  Move 305 into evidence, Your Honor. |
| 11:35 | 2 | THE COURT:  Received. |
| 11:35 | 3 | *(Exhibit No. 305 received in evidence.)* |
| 11:35 | 4 | THE COURT:  This is the e-mail of October 10th, |
| 11:35 | 5 | 2000? |
| 11:35 | 6 | MR. PRICE:  Yes. |
| 11:35 | 7 | THE COURT:  Thank you. |
| 11:35 | 8 | BY MR. PRICE: |
| 11:35 | 9 | Q.   And I'd like you to look, starting from the bottom up. |
| 11:35 | 10 | This is an e-mail chain that you were involved in, correct? |
| 11:35 | 11 | A.   Yes. |
| 11:35 | 12 | Q.   And you see, there's -- the first question in the |
| 11:35 | 13 | e-mail chain is from Dennis Medici to Victoria O'Connor |
| 11:35 | 14 | regarding Carter compensation.  Do you see that? |
| 11:36 | 15 | A.   Yes. |
| 11:36 | 16 | Q.   And the e-mail is, "Victoria, please reply what amount |
| 11:36 | 17 | we should pay Carter and have Isaac approve.  Thanks." |
| 11:36 | 18 | Do you see that? |
| 11:36 | 19 | A.   Yes. |
| 11:36 | 20 | Q.   And she then sends the e-mail to you on October 10th, |
| 11:36 | 21 | saying, "Please let me know how many hours Carter has worked |
| 11:36 | 22 | and the day he started meetings with you.  Thanks." |
| 11:36 | 23 | Do you see that? |
| 11:36 | 24 | A.   Yes. |
| 11:36 | 25 | Q.   And you responded to that from -- to Ms. O'Connor? |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 110 of 125   Page ID #:290392
CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

110

| | | |
|---|---|---|
| 11:36 | 1 | A.   Yes. |
| 11:36 | 2 | Q.   Now, did you understand why Ms. O'Connor was asking for |
| 11:36 | 3 | the information? |
| 11:36 | 4 | A.   Yes. |
| 11:36 | 5 | Q.   I mean, you knew it was important to give Ms. O'Connor |
| 11:36 | 6 | accurate information? |
| 11:36 | 7 | A.   Yes. |
| 11:36 | 8 | Q.   So your response is that next e-mail there -- right? -- |
| 11:36 | 9 | dated October 10, 2000.  Do you see that? |
| 11:37 | 10 | A.   Yes. |
| 11:37 | 11 | Q.   And in response to Ms. O'Connor's question, you said, |
| 11:37 | 12 | "I would say that Carter has worked an average -- on average |
| 11:37 | 13 | about four hours a day and we began working on this line the |
| 11:37 | 14 | first part of September." |
| 11:37 | 15 | Do you see that? |
| 11:37 | 16 | A.   Yeah. |
| 11:37 | 17 | Q.   Now, did you have a date in mind when you said, "the |
| 11:37 | 18 | first part of September"? |
| 11:37 | 19 | A.   No. |
| 11:37 | 20 | Q.   Well, I mean, do you have any range in mind when you |
| 11:37 | 21 | say, "the first part of September"? |
| 11:37 | 22 | A.   In my memory, first part of September -- my memory, in |
| 11:37 | 23 | terms of working with Carter, was, generally, around the |
| 11:38 | 24 | second week of September -- second or third week.  I can't |
| 11:38 | 25 | remember. |

CV 04-9049 DOC – 1/20/2011 – Day 5, Volume 1 of 2

111

| | | |
|---|---|---|
| 11:38 | 1 | Q.   Is it accurate to say that, when you said, "the first |
| 11:38 | 2 | part of September," you meant before the middle of the |
| 11:38 | 3 | month? |
| 11:38 | 4 | A.   I don't remember. |
| 11:38 | 5 | Q.   Is that how you would normally use that language?  When |
| 11:38 | 6 | you say, "the first part of September," you mean before the |
| 11:38 | 7 | middle of the month? |
| 11:38 | 8 | A.   I don't understand the question.  I'm sorry. |
| 11:38 | 9 | Q.   I'm asking you what that phrase means to you:  "the |
| 11:38 | 10 | first part of September." |
| 11:38 | 11 | A.   Uh-huh. |
| 11:38 | 12 | Q.   Would that phrase to you indicate that it was before |
| 11:38 | 13 | the middle of the month? |
| 11:38 | 14 | A.   I just recall that it was -- it was in the earlier part |
| 11:38 | 15 | of September.  Maybe it was the second week.  I just don't |
| 11:38 | 16 | recall. |
| 11:38 | 17 | Q.   So if it's the second week, first part of September, |
| 11:39 | 18 | four hours a day would be about 20 hours a week, correct? |
| 11:39 | 19 | A.   Yes. |
| 11:39 | 20 | Q.   And you're talking about maybe four weeks from the |
| 11:39 | 21 | first part of September to October 10th? |
| 11:39 | 22 | A.   Because I don't remember what specific date of "first |
| 11:39 | 23 | part of September," I can't answer that. |
| 11:39 | 24 | Q.   Well, it would be at least three weeks -- right? -- |
| 11:39 | 25 | between what you use as the first part of September and |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:39 | 1 | October 10th? |
| 11:39 | 2 | A.    Yes.  However, may I please -- |
| 11:39 | 3 | THE COURT:  October 10th or October 9th? |
| 11:39 | 4 | MR. PRICE:  Yes, October 10th, actually. |
| 11:39 | 5 | THE COURT:  I'm sorry. |
| 11:39 | 6 | BY MR. PRICE: |
| 11:39 | 7 | Q.    So three weeks at 20 hours a week would come to about |
| 11:39 | 8 | 60 hours, right? |
| 11:40 | 9 | A.    Mr. Price, I think it's important to confirm that this |
| 11:40 | 10 | e-mail and the word that I used, "day," is incorrect. |
| 11:40 | 11 | Q.    Did you ever send an e-mail to Ms. O'Connor saying that |
| 11:40 | 12 | you had given her incorrect information? |
| 11:40 | 13 | A.    No. |
| 11:40 | 14 | Q.    So if we take what you said on its face, "I would say |
| 11:40 | 15 | that Carter has worked on average about four hours a day and |
| 11:40 | 16 | we began working on this line the first part of |
| 11:40 | 17 | September" -- if you took it at its face, that would mean |
| 11:40 | 18 | somewhere between 60 and 80 hours, correct? |
| 11:40 | 19 | A.    Correct.  But it's incorrect. |
| 11:40 | 20 | Q.    I'm just asking you what this would say to Ms. O'Connor |
| 11:40 | 21 | when she read it.  Right? |
| 11:40 | 22 | A.    Correct. |
| 11:40 | 23 | Q.    And that would mean somewhere between 60 and 80 hours, |
| 11:41 | 24 | if you just read it? |
| 11:41 | 25 | A.    So what date in September are you starting from? |

| | | |
|---|---|---|
| 11:41 | 1 | Q.   I'm giving you the third week? |
| 11:41 | 2 | A.   So we should do the math, then.  Third week, how |
| 11:41 | 3 | many -- I mean, just to be -- I need a few minutes to figure |
| 11:41 | 4 | that out. |
| 11:41 | 5 | Q.   I don't want you to have to do math.  You certainly |
| 11:41 | 6 | would agree that it would be wrong for Mr. Carter to work 60 |
| 11:41 | 7 | to 80 hours assisting MGA while he was still working at |
| 11:41 | 8 | Mattel? |
| 11:41 | 9 | A.   He didn't work 60 to 80 hours. |
| 11:41 | 10 | Q.   I'm asking whether that would be wrong.  So let me ask |
| 11:42 | 11 | it, 'cause I want to make sure. |
| 11:42 | 12 | You would agree that it would be wrong for Mr. Bryant |
| 11:42 | 13 | to work 60 to 80 hours for, or on behalf of, MGA while he |
| 11:42 | 14 | works for Mattel? |
| 11:42 | 15 | A.   Mr. Bryant was not creating anything in the dates or -- |
| 11:42 | 16 | in the dates that are referenced here.  So it depends -- |
| 11:42 | 17 | that answer is -- difficult to answer. |
| 11:42 | 18 | Q.   Let me ask you to look at Exhibit 1116, which was your |
| 11:42 | 19 | invention agreement. |
| 11:42 | 20 | *(Document displayed.)* |
| 09:37 | 21 | BY MR. PRICE: |
| 11:43 | 22 | Q.   Do you have that in front of you? |
| 11:43 | 23 | A.   Yes, I do. |
| 11:43 | 24 | Q.   And you'll recall that this morning we were talking |
| 11:43 | 25 | about the second page, Paragraph 3(a), where it says, "I |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

114

| | | |
|---|---|---|
| 11:43 | 1 | shall not, without the company's express written consent, |
| 11:43 | 2 | engage in any employment or business other than for the |
| 11:43 | 3 | company, or invest in, or assist in any manner, any business |
| 11:43 | 4 | competitive with the business or future business plans of |
| 11:43 | 5 | the company". |
| 11:43 | 6 | You saw that? |
| 11:43 | 7 | A.   Yes. |
| 11:43 | 8 | Q.   I think -- 'cause you told us, without signing this |
| 11:43 | 9 | document, you would know that's true:  You shouldn't do |
| 11:43 | 10 | that? |
| 11:43 | 11 | A.   I believe that it depends, Mr. Price. |
| 11:43 | 12 | Q.   Okay.  Is it correct -- would you agree with me that, |
| 11:43 | 13 | if Mr. Bryant was working 60 to 80 hours while he was at |
| 11:44 | 14 | Mattel, but working those hours for MGA, that that would be |
| 11:44 | 15 | assisting in some manner a business competitive with Mattel, |
| 11:44 | 16 | that is, MGA? |
| 11:44 | 17 | A.   He was not working 60 to 80 hours during this time with |
| 11:44 | 18 | MGA. |
| 11:44 | 19 | Q.   I understand that.  I'm asking you whether, if he did, |
| 11:44 | 20 | if it would be -- your understanding -- wrong. |
| 11:44 | 21 | So let me ask you -- assume that he worked 60 to 80 |
| 11:44 | 22 | hours on the Bratz project between the first part of |
| 11:44 | 23 | September and October 10th.  Would that be in some manner |
| 11:44 | 24 | assisting a business competitive with Mattel, that is, MGA? |
| 11:45 | 25 | A.   It depends. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

115

| | | |
|---|---|---|
| 11:45 | 1 | Q.   Who was -- I think you said Ms. Leahy was the sculptor |
| 11:45 | 2 | that you met with Mr. Bryant in connection with the Bratz |
| 11:45 | 3 | project, correct? |
| 11:45 | 4 | A.   That's right. |
| 11:45 | 5 | Q.   Isn't it true it was Carter Bryant who introduced you |
| 11:45 | 6 | to her? |
| 11:45 | 7 | A.   It was -- |
| 11:45 | 8 | MR. McCONVILLE:  Objection.  Vague. |
| 11:45 | 9 | THE COURT:  Overruled. |
| 11:45 | 10 | THE WITNESS:  Carter Bryant -- let me -- to be |
| 11:45 | 11 | clear, I was aware of Margaret Leahy prior to September 1st |
| 11:45 | 12 | of 2000. |
| 11:00 | 13 | BY MR. PRICE: |
| 11:45 | 14 | Q.   But in connection with the Bratz project, he's the one |
| 11:45 | 15 | that introduced her to you? |
| 11:46 | 16 | A.   He recommended her to me. |
| 11:46 | 17 | Q.   And he recommended her to you in September? |
| 11:46 | 18 | THE COURT:  Of what year? |
| 11:46 | 19 | BY MR. PRICE: |
| 11:46 | 20 | Q.   He recommended her to you in September of 2000? |
| 11:46 | 21 | A.   Yes. |
| 11:46 | 22 | Q.   And the idea was you were going to meet with her and |
| 11:46 | 23 | talk to her about the Bratz project, correct? |
| 11:46 | 24 | A.   Yes. |
| 11:46 | 25 | Q.   And the purpose of that was to assist you in developing |

| | | |
|---|---|---|
| 11:46 | 1 | a sculpt for Bratz? |
| 11:46 | 2 | A.    It was to assist me in developing a sculpt against |
| 11:46 | 3 | Carter Bryant's portfolio drawings. |
| 11:46 | 4 | Q.    You said, "a sculpt"? -- to see whether or not you |
| 11:46 | 5 | could go forward with Bratz? |
| 11:47 | 6 | A.    Not necessarily, no. |
| 11:47 | 7 | Q.    You wanted to see what the sculpt would look like, |
| 11:47 | 8 | referencing Carter Bryant's drawings? |
| 11:47 | 9 | A.    Yes. |
| 11:47 | 10 | Q.    This was part of the Bratz project? |
| 11:47 | 11 | A.    May I -- yes.  I was -- I was concerned about what a |
| 11:47 | 12 | sculpt would look like if straight-translated from Carter |
| 11:47 | 13 | Bryant's portfolio drawings. |
| 11:47 | 14 | Q.    So Ms. Leahy was going to assist you in determining |
| 11:47 | 15 | whether or not to go forward with this project? |
| 11:47 | 16 | A.    No. |
| 11:47 | 17 | Q.    She was assisting you in some manner? |
| 11:47 | 18 | A.    Sure. |
| 11:47 | 19 | Q.    Okay.  And Mr. Bryant met with Ms. Leahy and you in |
| 11:47 | 20 | September of 2000? |
| 11:48 | 21 | A.    Yes, he did. |
| 11:48 | 22 | Q.    So Mr. Bryant -- and, by the way, when he met with you, |
| 11:48 | 23 | he was making recommendations to her about the sculpt? |
| 11:48 | 24 | A.    At the September 2000 time frame, when Carter was |
| 11:48 | 25 | present at those meetings, he was there because those, at |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 117 of 125   Page ID #:290399
CV 04-9049 DOC – 1/20/2011 – Day 5, Volume 1 of 2

117

| | | |
|---|---|---|
| 11:48 | 1 | the time, were his drawings.  And he was present to explain |
| 11:48 | 2 | his concept to Margaret who was going to translate his |
| 11:48 | 3 | drawings into 3D. |
| 11:48 | 4 | Q.   Was Ms. Leahy paid for her work? |
| 11:48 | 5 | A.   Yes, she was. |
| 11:48 | 6 | Q.   So you're meeting with Ms. Leahy in September 2000, |
| 11:48 | 7 | correct? |
| 11:48 | 8 | A.   Yes. |
| 11:48 | 9 | Q.   She is assisting MGA, and is paid for it? |
| 11:48 | 10 | A.   Yes, she was. |
| 11:48 | 11 | Q.   And he is assisting Ms. Leahy in assisting MGA, because |
| 11:48 | 12 | he introduced you to her in connection with this and was |
| 11:48 | 13 | standing there giving comments? |
| 11:49 | 14 | MR. McCONVILLE:  Objection.  Compound. |
| 11:49 | 15 | THE COURT:  Do you understand the question? |
| 11:49 | 16 | THE WITNESS:  No, I don't. |
| 11:49 | 17 | THE COURT:  Reask it. |
| 11:59 | 18 | BY MR. PRICE: |
| 11:49 | 19 | Q.   Mr. Bryant was assisting Ms. Leahy in assisting you? |
| 11:49 | 20 | A.   No, he wasn't. |
| 11:49 | 21 | Q.   Did he keep quiet during the entire meeting? |
| 11:49 | 22 | A.   No. |
| 11:49 | 23 | Q.   Did he make comments and suggestions? |
| 11:49 | 24 | A.   If we had questions, he would answer them. |
| 11:49 | 25 | Q.   Did you have questions? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

118

| 11:49 | 1 | A.    Yes. |
| 11:49 | 2 | Q.    In answering them, was he assisting you in developing |
| 11:49 | 3 | the Bratz project? |
| 11:49 | 4 | A.    No, not necessarily. |
| 11:50 | 5 | Q.    Was he assisting you in developing the Bratz project by |
| 11:50 | 6 | recommending Ms. Leahy? |
| 11:50 | 7 | A.    Because I was aware of Margaret Leahy, I think it would |
| 11:50 | 8 | have been quite possible that I would have used her in the |
| 11:50 | 9 | sculpting of Bratz. |
| 11:50 | 10 | Q.    Or in any designs you personally came up with that were |
| 11:50 | 11 | gonna look like Bratz? |
| 11:50 | 12 | A.    Potentially, yes. |
| 11:50 | 13 | Q.    As of September 2000, MGA was not employing a sculptor |
| 11:50 | 14 | either as an independent contractor or within MGA to sculpt |
| 11:50 | 15 | fashion dolls, right? |
| 11:50 | 16 | A.    We were employing sculptors to sculpt dolls.  At the |
| 11:50 | 17 | time, we weren't working on a fashion doll, but we certainly |
| 11:50 | 18 | developed dolls, large dolls, medium size dolls. |
| 11:51 | 19 | Q.    Fashion dolls are rather unique, aren't they? |
| 11:51 | 20 | A.    They're a doll. |
| 11:51 | 21 | Q.    You're not gonna agree with me they're unique? |
| 11:51 | 22 | A.    In what way, Mr. Price? |
| 11:51 | 23 | Q.    Well, they're a separate market.  I mean, they are a |
| 11:51 | 24 | unique market in the toy industry, right? |
| 11:51 | 25 | A.    They are a market.  They're a category in the toy |

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

119

| | | |
|---|---|---|
| 11:51 | 1 | market, for sure. |
| 11:51 | 2 | Q.   By "category," you mean different from other |
| 11:51 | 3 | categories? |
| 11:51 | 4 | A.   Yeah.  Large ones, fashion ones, small ones, sure. |
| 11:51 | 5 | Q.   Different from -- and I apologize -- the |
| 11:51 | 6 | Hippity-Hoppity? |
| 11:51 | 7 | A.   Hoppy Bounce -- uh, Hoppity Bouncy Baby was one of |
| 11:51 | 8 | those.  A large doll. |
| 11:51 | 9 | Q.   You hadn't employed or even talked to a sculptor to |
| 11:51 | 10 | sculpt a fashion doll prior to meeting Ms. Leahy, right? |
| 11:51 | 11 | A.   Right. |
| 11:51 | 12 | Q.   It was Mr. Bryant who connected you two together, |
| 11:52 | 13 | right? |
| 11:52 | 14 | A.   He had recommended her.  I was aware of her. |
| 11:52 | 15 | Q.   Being aware of her, had you previously ever talked to |
| 11:52 | 16 | her about sculpting a doll? |
| 11:52 | 17 | A.   No. |
| 11:52 | 18 | Q.   If you'd look at Exhibit 1112. |
| 11:52 | 19 | THE COURT:  E-mail of October 2nd, 2000? |
| 11:52 | 20 | MR. PRICE:  Yes, Your Honor. |
| 11:52 | 21 | BY MR. PRICE: |
| 11:52 | 22 | Q.   Could you tell us, Ms. Garcia, what this is? |
| 11:52 | 23 | A.   This is an e-mail between myself and Maureen Mullen. |
| 11:52 | 24 | Q.   Who is Maureen Mullen? |
| 11:52 | 25 | A.   Maureen Mullen was a freelance designer that I was |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 120 of 125   Page ID #:290402
CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

120

| | | |
|---|---|---|
| 11:52 | 1 | working with at the time. |
| 11:52 | 2 | Q.   What were you working with Ms. Mullen on? |
| 11:53 | 3 | A.   She was helping me with Hoppity Bouncy Baby.  I think |
| 11:53 | 4 | there may have been one other project.  I -- I don't |
| 11:53 | 5 | remember. |
| 11:53 | 6 |         MR. PRICE:  Your Honor, I move Exhibit 1112 into |
| 11:53 | 7 | evidence. |
| 11:53 | 8 |         THE COURT:  Received. |
| 11:53 | 9 |         (Exhibit No. 1112 received in evidence.) |
| 11:53 | 10 |         MR. PRICE:  If we can put up the e-mail and look |
| 11:53 | 11 | at the bottom part. |
| 11:53 | 12 |         (Document displayed.) |
| 11:53 | 13 | BY MR. PRICE: |
| 11:53 | 14 | Q.   From Maureen Mullen to you, dated October 2, 2000, |
| 11:53 | 15 | "Subject:  New sculptress." |
| 11:53 | 16 |     Do you see that? |
| 11:53 | 17 | A.   (No audible response.) |
| 11:53 | 18 | Q.   She says, "Paula, do you remember Margaret from Mattel? |
| 11:53 | 19 | She's a really good sculptress.  She lives right near your |
| 11:53 | 20 | office, too.  I think that you should contact her to come in |
| 11:53 | 21 | and show you her portfolio.  Sandy is good, but fas" -- I |
| 11:53 | 22 | don't know what that is, F-A-S -- "fas you add more to your |
| 11:53 | 23 | doll line, you might need another sculptor.  She does |
| 11:53 | 24 | licensed product as well as dolls.  She left Mattel after |
| 11:53 | 25 | adopting a baby.  She is now freelancing." |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 1/20/2011 – Day 5, Volume 1 of 2

121

| | | |
|---|---|---|
| 11:53 | 1 | Do you see that? |
| 11:53 | 2 | A.   Yes, I do. |
| 11:54 | 3 | Q.   And the part above that is your response to her, |
| 11:54 | 4 | correct? |
| 11:54 | 5 | A.   Yes. |
| 11:54 | 6 | Q.   And this response is dated October 2, 2000, correct? |
| 11:54 | 7 | A.   Yes. |
| 11:54 | 8 | Q.   "Maureen, Carter is using her for the small doll line I |
| 11:54 | 9 | spoke to you about.  She is fast and from what I can tell |
| 11:54 | 10 | she is also very, very good.  I want to bring her in here so |
| 11:54 | 11 | that I can see her portfolio.  I will let you know what I |
| 11:54 | 12 | think." |
| 11:54 | 13 | You see that? |
| 11:54 | 14 | A.   Yes. |
| 11:54 | 15 | Q.   And who were you referring to when you said, "Carter"? |
| 11:54 | 16 | A.   Carter Bryant. |
| 11:54 | 17 | Q.   And when you talk about "the small doll line I spoke to |
| 11:54 | 18 | you about," you're talking about the Bratz project, right? |
| 11:54 | 19 | A.   Yes. |
| 11:54 | 20 | Q.   And when you say Carter is using her for the Bratz |
| 11:54 | 21 | project, he was doing that prior to your sending this e-mail |
| 11:54 | 22 | October 2, 2000, correct? |
| 11:54 | 23 | A.   I'm sorry.  Can you please repeat the question? |
| 11:54 | 24 | Q.   Sure.  You see the e-mail is dated October 2, 2000. |
| 11:55 | 25 | A.   Yes. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:55 | 1 | Q.   When you say, "Carter is using her for the small doll |
| 11:55 | 2 | line I spoke to you about" -- |
| 11:55 | 3 | A.   Yes. |
| 11:55 | 4 | Q.   -- you were referring to meetings between Ms. Leahy |
| 11:55 | 5 | Mr. Bryant prior to October of 2000? |
| 11:55 | 6 | A.   No. |
| 11:55 | 7 | Q.   Okay.  With the e-mail dated October 2, 2000, what |
| 11:55 | 8 | dates were you referring to when you say that "Carter is |
| 11:55 | 9 | using her for the small doll line I spoke to you about"? |
| 11:55 | 10 | A.   I believe that this was in reference to our second |
| 11:55 | 11 | generation sculpt of what became the manufactured Bratz |
| 11:55 | 12 | dolls. |
| 11:55 | 13 | Q.   So, as of October 2, 2000, you were already on what |
| 11:55 | 14 | you've referred to as a second generation sculpt? |
| 11:56 | 15 | A.   I don't recall the exact date we started the second |
| 11:56 | 16 | generation sculpt. |
| 11:56 | 17 | Q.   Didn't you just testify that October 2, 2000, when you |
| 11:56 | 18 | said, "Carter is using her for the small doll line I spoke |
| 11:56 | 19 | to you about," that you were talking about a second |
| 11:56 | 20 | generation sculpt? |
| 11:56 | 21 | A.   I believe, when reading this e-mail, that -- I believe |
| 11:56 | 22 | I was referencing the beginnings or the start of a second |
| 11:56 | 23 | generation Bratz sculpt. |
| 11:56 | 24 | Q.   And by "second generation," you mean that you and |
| 11:56 | 25 | Mr. Bryant had met with Ms. Leahy, she had done a sculpt, |

Case 2:04-cv-09049-DOC-RNB   Document 9709   Filed 01/27/11   Page 123 of 125   Page ID #:290405
CV 04-9049 DOC – 1/20/2011 – Day 5, Volume 1 of 2

123

| | | |
|---|---|---|
| 11:56 | 1 | and you were doing another one? |
| 11:56 | 2 | A.   Yes. |
| 11:56 | 3 | Q.   And Carter either was using or planned to use her for, |
| 11:56 | 4 | also, the next sculpt, right? |
| 11:56 | 5 | A.   Correct. |
| 11:56 | 6 | Q.   And by October 2, 2000, he had already given her input |
| 11:56 | 7 | and suggestions for the next sculpt? |
| 11:57 | 8 | A.   I don't recall, actually, when the second sculpt began. |
| 11:57 | 9 | It's possible that it happened.  I just don't recall.  I |
| 11:57 | 10 | remember the first generation sculpt happening in September. |
| 11:57 | 11 | And I don't remember exactly when the second sculpt began. |
| 11:57 | 12 | Q.   As of October 2nd, 2000 -- |
| 11:57 | 13 | A.   Yes. |
| 11:57 | 14 | Q.   -- you will agree that Carter Bryant, in some way, was |
| 11:57 | 15 | assisting MGA while he was still working at a competitor of |
| 11:57 | 16 | MGA, Mattel? |
| 11:57 | 17 | A.   I'm not comfortable with the word "assist."  So, if I |
| 11:57 | 18 | can clarify? |
| 11:57 | 19 | Q.   Answer the word (sic) "yes" or "no," and then we'll go |
| 11:57 | 20 | into it at some point what you mean. |
| 11:58 | 21 | So using your definition of "assist," would you agree |
| 11:58 | 22 | that certainly as of October 2, 2000, Carter Bryant is |
| 11:58 | 23 | assisting MGA in some way while at the same time working for |
| 11:58 | 24 | MGA's competitor, Mattel? |
| 11:58 | 25 | A.   No. |

CV 04-9049 DOC – 1/20/2011 – Day 5, Volume 1 of 2

124

| 11:58 | 1 | MR. PRICE:  Would this be a good time? |
| 11:58 | 2 | THE COURT:  This would be a good time for lunch. |
| 11:58 | 3 | Ladies and gentlemen, you're admonished not to |
| 11:58 | 4 | discuss this matter amongst yourselves nor to form or |
| 11:58 | 5 | express any opinion.  Go have a nice lunch.  And we'll see |
| 11:58 | 6 | you at 1:00 o'clock. |
| 11:58 | 7 | All right.  Counsel, then, 1:00 o'clock.  Thank |
| 11:58 | 8 | you. |
| 11:58 | 9 | *(Lunch recess held at 1:58 a.m.)* |
| 12:01 | 10 | *(Further proceedings reported by Jane Sutton* |
| 12:01 | 11 | *Rule in Volume II.)* |
| 12:01 | 12 | –oOo– |
| 12:01 | 13 | |
| | 14 | |
| | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/20/2011 - Day 5, Volume 1 of 2

125

12:01  1                              -oOo-

12:01  2

12:01  3                          CERTIFICATE

12:01  4

12:01  5        I hereby certify that pursuant to Section 753,

12:01  6   Title 28, United States Code, the foregoing is a true and

12:01  7   correct transcript of the stenographically reported

12:01  8   proceedings held in the above-entitled matter and that the

12:01  9   transcript page format is in conformance with the

12:01  10  regulations of the Judicial Conference of the United States.

12:01  11

12:01  12  Date:  January 20, 2011

12:01  13

12:01
12:01
12:01  14
12:01
12:01  15        _____

12:01  16        DEBBIE GALE, U.S. COURT REPORTER
                  CSR NO. 9472, RPR

12:01  17

       18

       19

       20

       21

       22

       23

       24

       25