Case 2:04-cv-09049-DOC-RNB   Document 9722   Filed 01/28/11   Page 1 of 23   Page ID #:290825
CV 04-9049-DOC - 01/24/2011 - Volume 2

1

```
 1              UNITED STATES DISTRICT COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3          HONORABLE DAVID O. CARTER, JUDGE PRESIDING

 4                    - - - - - - -

 5

 6   MATTEL, INC., ET AL.,              )
                                        )
 7            Plaintiffs,               )
                                        )
 8        vs.                           ) No. CV 04-9049-DOC
                                        )
 9   MGA ENTERTAINMENT, INC., ET AL.,   )     Volume 2
                                        )
10            Defendants.               )
     _____)
11

12

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                  Status Conference

17                Santa Ana, California

18              Monday, January 24, 2011

19

20

21

22   Jane C.S. Rule, CSR 9316
     Federal Official Court Reporter
23   United States District Court
     411 West 4th Street, Room 1-053
24   Santa Ana, California 92701
     (714) 558-7755
25
     11-01-24 MattelSC
```

1    **APPEARANCES OF COUNSEL:**

2

3    FOR PLAINTIFFS MATTEL, INC., ET AL.:

4              QUINN, EMANUEL, URQUHART, OLIVER & HEDGES
               By:  JOHN B. QUINN
5                   MICHAEL T. ZELLER
                    Attorneys at Law
6              865 South Figueroa Street
               10th Floor
7              Los Angeles, California 90017-2543
               (213) 443-3000

8

9    FOR DEFENDANTS MGA ENTERTAINMENT, INC., ET AL.:

10             ORRICK, HERRINGTON & SUTCLIFFE, LLP
               BY:  THOMAS S. MC CONVILLE
11                  Attorney at Law
               4 Park Plaza
12             Suite 1600
               Irvine, California 92614
13             (949) 567-6700

14             - AND -

15             ORRICK, HERRINGTON & SUTCLIFFE, LLP
               BY:  ANNETTE L. HURST
16                  Attorney at Law
               405 Howard Street
17             San Francisco, California 94105
               (415) 773-5700

18

19

20

21

22

23

24

25

CV 04-9049-DOC - 01/24/2011 - Volume 2

3

1                              **I N D E X**

2

3

4                        **STATUS CONFERENCE**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          SANTA ANA, CALIFORNIA, MONDAY, JANUARY 24, 2011

2                   STATUS CONFERENCE - VOLUME 2

3                          (3:35 p.m.)

4          THE COURT:  Counsel, I'm going to resolve Rule

5     106, and there's already been a request by Mr. McConville

6     concerning the Rule of Completeness on one occasion thus far

7     that I recall.

8          MR. MC CONVILLE:  Sure.

9          THE COURT:  Okay.  Rule 106 of the Federal Rules

10    of Evidence and Rule 32(a)6 of the Federal Rules of Civil

11    Procedure codify the common law rule of Completeness.  Rule

12    32(a)6 is specific to depositional testimony and provides

13    that, quote, "If a party offers in evidence only part of a

14    deposition, an adverse party may require the offerer to

15    introduce other parts that, in fairness, should be

16    considered with the part introduced, and any party may,

17    itself, introduce any other parts."

18         Rule 106 vindicates an identical principle as to

19    all evidence admitted over the course of a trial; quote,

20    "When a writing or recorded statement, or part thereof, is

21    introduced by a party, an adverse party may require the

22    introduction at that time of any other part or any other

23    writing or recorded statement, which are, in fairness, to be

24    considered contemporaneously with it," end of quote.

25         It is immaterial that the party that demands the

1    introduction of other parts of a deposition can introduce

2    such material in its own case in chief or during

3    cross-examination.  See advisory committee note to Rule 106.

4    The rule does not, in any way, circumscribe the right of the

5    adversary to develop the matter on cross-examination or as

6    part of its own case.  The district court's decision as to

7    whether, quote, "other parts," end of quote, of a deposition

8    must be considered with the part introduced as review for

9    abuse of discretion, and Nanakuli Paving and Rock Company v.

10   Shell Oil Company, 664 F.2d 772, 783, Note 15, Ninth Circuit

11   1981.

12            "In exercising this discretion, the Court may

13   insure that the Rule of Completeness does not interfere with

14   the efficient administration of the trial.  For instance,

15   the district court is not obligated to go through the entire

16   deposition of a witness who had testified at the trial to

17   determine if there are conflicts in the deposition testimony

18   or if the deposition contradicts the courtroom testimony of

19   the witness," citing Paul Arpin Van Lines, Inc. v. Universal

20   Transportation Services, 988 F.2d 288, 294, First Circuit,

21   1983.  "That is the work of the lawyers," end of quote.

22   "However, it would almost certainly constitute an abuse of

23   discretion to restrict a litigant or all litigants from

24   availing itself of Rules 106 and 32(a)6."

25            So you may do so.  Now, here is the problem.  Here

1   is what you have to decide between the two of you.  In light

2   of the volume of the depositional testimony that each of you

3   have undertaken in this lawsuit, it's not likely that an

4   adverse party on either side can immediately identify every

5   other part of the deposition that, in fairness, should be

6   considered with the part introduced by a party at the trial,

7   and it would interfere with the administration of justice,

8   as far as this Court is concerned.  If I simply stopped the

9   proceedings, which is what happened in phase one, you know,

10  got off the bench, read the transcripts, because these

11  transcripts go on and on, and there is any answer almost to

12  any question asked of any of these witnesses because of the

13  volume, and many of them flip-flopped, quite frankly.

14          So a sensible approach might be that the party

15  seeking to avail itself of Rule 106 and 32(a)6 inform the

16  Court at the time the depositional testimony is first

17  introduced, and within a reasonable period of time

18  thereafter, identify the other parts of the deposition that,

19  in fairness, should be considered with the part introduced.

20          So I can keep the witnesses around.  I can keep

21  Paula Garcia for days, if you'd like to.  In other words,

22  she never ends.  None of them never end, and I'm just going

23  to stack them up in the hallway because I'll comply with

24  this rule.  So you are not limited to waiting until your

25  case in chief to rectify concerning the Rule of

1    Completeness, but you have to notify the Court.  But I'm

2    finding that it is an unfair administration of justice to go

3    through transcript after transcript, because right now,

4    neither you, when you have witnesses, or Mattel, when they

5    have witnesses, know with specificity what they are going to

6    answer; you can't assume an answer.

7            So I'm going to recess for a minute to five hours,

8    and that's the next issue you are going to tackle before I

9    go right back to the issue concerning video depositions and

10   whether they are going to be allowed.  That's the next thing

11   we are going to resolve tonight.

12           So I want you to have that conversation, and get

13   Jennifer Keller involved, who is not here.

14           I want you to have that conversation if Mr. Price

15   is available, to get him involved, but I'm not going to do

16   anything else until we resolve this.

17           And I want you to attempt to come up with

18   something that works for both of you, because what might be

19   an interruption right now to Mattel is going to be an

20   interruption to MGA on cross-examination.  It's -- this is

21   going to turn immediately within hours where what you think

22   is the lack of Rule of Completeness, Mattel is going to come

23   right back with your first question of Paula Garcia, as you

24   try to rehabilitate her and say, "Oh, Judge, go back to

25   volume 1 out of volume 32 volumes and look at page 518," you

CV 04-9049-DOC - 01/24/2011 - Volume 2

8

1    know that that's coming.  So somehow you've got to get a

2    workable accommodation.

3            Now, in all the past trials, counsel had literally

4    gone over all of the depositions beforehand, and we had --

5    under Rule 106, we were able to do those at one time.

6            So my past history is just what you suggest,

7    Mr. McConville.  It's always been done because the parties

8    have all gone over all of the depositions, and when the

9    first impeachment came out or the first rereading, we were

10   able to point to all of the prior occasions.  That's going

11   to require a lot of work by all of you, and I can just see

12   that with Mr. Larian, Mr. Eckert, Mr. Bryant, Carter Bryant,

13   et cetera.

14           So you have your own private discussion amongst

15   yourselves, and then tell me if you can reach an

16   accommodation.  If you can't, then I'm simply going to

17   follow the rule, okay?

18           What time do you want to meet me back here, 5:00,

19   6:00, 7:00, 10:00?  It doesn't matter.

20           MR. QUINN:  Your Honor, I think, frankly, a

21   15-minute conversation.

22           THE COURT:  See you in 15 minutes.

23           *(Recess.)*

24           THE COURT:  Okay.  We are on the record, and the

25   Court had left the bench about an hour ago, and it's resumed

CV 04-9049-DOC - 01/24/2011 - Volume 2

9

1    with all counsel present concerning Rule 106.

2               Any thoughts, counsel, or agreements?

3               MR. MC CONVILLE:  Yes, your Honor.  We discussed

4    with Mattel and have proposed the following:

5               In general, unless counsel is prepared with the

6    cite for the Rule of Completeness to hand up to the Court,

7    in essence, on the spot, then they can do that, but it would

8    be used in a sparing manner, that is only for points that

9    the party believes to be significant, an important point.

10   In the event that counsel's not prepared with the

11   transcripts that would implicate the Rule of Completeness,

12   then you haven't -- the party would not have waived raising

13   the issue of completeness by not raising it on the spot, and

14   in that circumstance, the parties will confer -- at the

15   conclusion of the day's -- you know, whenever there is a

16   break, whether it's during the day or at the end, they would

17   confer to see whether or not they agreed, and in the

18   absence of -- and then if there is agreement, whenever the

19   witness takes the stand next, the Rule of Completeness would

20   apply?

21              THE COURT:  But that doesn't preclude the other

22   party given time to go over all this material in the

23   presentation of their case.  For instance, MGA to come back,

24   you are not limited --

25              MR. MC CONVILLE:  Correct.

CV 04-9049-DOC - 01/24/2011 - Volume 2

10

1           THE COURT:  -- or in rebuttal, for Mattel to come
2     back, you are not limited.
3           MR. MC CONVILLE:  Correct.
4           THE COURT:  So in other words -- let me repeat
5     that back as best as I understand it.
6           "Judge, if both parties" -- strike that.
7           If the party who believes the Rule of Completeness
8     requires additional reading to what is potentially
9     impeaching testimony, they will be ready at that moment.
10    And if they are not, then the case simply continues, and the
11    party will consult at the end of the day.
12          If the witness hasn't been excused or is still on
13    the stand, and the parties can reach an agreement, then that
14    witness may be examined or the Rule of Completeness may be
15    completed during that witness' direct or cross-examination,
16    or redirect or recross.  But if, in fact, that witness has
17    left the stand but not been excused, because no witnesses
18    will be excused, the other party, MGA in this case, can
19    bring further testimony when you've got time to go back and
20    look at this menu of transcripts during MGA's case, and
21    Mattel can come back on rebuttal, if you do that, and bring
22    additional -- is that really what I'm hearing?
23          MR. QUINN:  Yes, I think so, your Honor.
24          THE COURT:  So let's give it a try.
25          MR. QUINN:  There is one possibility that we also

1   agreed on, your Honor.  If we confer and we don't agree that

2   this is really the same subject that really doesn't

3   implicate the Rule of Completeness, we will submit it to the

4   Court in writing --

5            THE COURT:  Okay.

6            MR. QUINN:  -- for the Court to look at but

7   outside -- you know, that evening, so we are not wasting

8   jury time with that.

9            THE COURT:  What will I do with the time?  Because

10  what I don't want are tactical objections that use up the

11  other person's time.  MGA has not been guilty of that.  I

12  don't expect Mattel to be, but remember, there are so many

13  volumes, that you can get to a 30(b)(6) witness with some of

14  these empty vessels, get an answer here, and go back in

15  three or five prior depositions.  You can do that with

16  Mr. Larian, Mr. Eckert, you can do that with Carter Bryant.

17  I mean, there are so many transcripts and so many occasions

18  some of these witnesses have testified to.  So instead of

19  raising the parade of horribles, let's try it.  Let's just

20  see how, in good faith, this works out, okay?

21           MR. MC CONVILLE:  Okay.

22           THE COURT:  Okay.

23           The second thing is -- or the third thing this

24  evening is the use of depositions at trial.

25           Rule 32(a) sets the limits on the use of

1    depositions at trial.  Depositional testimony may be used

2    for any purpose allowed by the Federal Rules of Evidence,

3    including to contradict or impeach the witness' testimony at

4    trial.  Due to the growing incidence of videotaped

5    depositions, it is increasingly commonplace that parties

6    seek, quote, "to use videotape instead of a cold transcript

7    for purposes of impeachment of critical witnesses," Fanelli

8    v. Centenary College, 211 F.R.D., 268, 271, District of New

9    Jersey, 2002.

10          "The district court may, nevertheless, restrict

11    the use of videotape depositional testimony in certain

12    circumstances.  For instance, the videotape of a deposition

13    may not be used if the deposition was not noticed as a

14    videotape deposition, or if a party or deponent objected to

15    the use of a video recording device," citing Compton v.

16    Torch, Inc., 2000 WL 622604, at footnote 3, Eastern District

17    of Louisiana, May 11, 2000.

18          A court also has the inherent authority to exclude

19    evidence, if, quote, "it's probative value is substantially

20    outweighed by the danger of unfair prejudice, confusion of

21    the issues or misleading the jury, or by considerations of

22    undue delay, waste of time or needless presentation of

23    cumulative evidence," Federal Rule of Evidence 403.

24          In the excerpt of Garcia's deposition that Mattel

25    seeks to introduce, Garcia provides arguably inconsistent

 1    responses to a number of questions about whether she

 2    understood Carter Bryant to be employed by Mattel at the

 3    time of a September 1, 2000, meeting between MGA and Bryant.

 4    Mattel believes and argues that Garcia altered her response

 5    after MGA's counsel interposed an objection, what I'm going

 6    to refer to as a signaling objection, and her demeanor shows

 7    a lack of credibility.  MGA responds that Garcia was

 8    confused by the questions, and her answer was not influenced

 9    by the objection.

10            The parties to the lawsuit have frequently

11    under-prepared deponents, and deponents have frequently

12    offered vague and evasive answers to basic questions, and

13    the jury can evaluate and weigh such conduct on the basis of

14    the deposition transcripts.  The video recordings of the

15    deposition add marginal value to the transcripts, and any

16    "demeanor" supposedly evidenced by the depositions may be

17    attributable to the length of depositions, the misbehavior

18    by counsel, the deponent's frustration --

19            And not present counsel in front of the Court, of

20    course.

21            -- the deponent's frustration with this litigation

22    or the animus that has developed between the parties over

23    the last seven years or the simple evasiveness of the

24    witness.

25            It's impractical, unduly prejudicial and contrary

Case 2:04-cv-09049-DOC-RNB  Document 9722  Filed 01/28/11  Page 14 of 23  Page ID #:290838
CV 04-9049-DOC - 01/24/2011 - Volume 2

14

1     to the Court's ruling on the motions in limine to explain to

2     the fact-finder that the chronology of this litigation and

3     the many reasons, other than credibility, that may have

4     influenced a particular deponent's demeanor.  The marginal

5     probative value added by video recording of Ms. Garcia's

6     deposition, and for that matter, any other witnesses'

7     deposition is substantially outweighed by its prejudicial

8     effect and it's potential to confuse.  The other court to

9     meaningfully address this issue has similarly acknowledged

10    that potential "for mischief" caused by the videotaping of

11    depositions and concluded, quote, "That's what judges are

12    for," citing Fanelli, 211 F.R.D. at 271.  In this case, the

13    court's discretion is properly exercised by disallowing the

14    use of videotape depositions in light of the potential

15    prejudice and confusion and the adequacy of depositional

16    transcripts.

17            There is a second reason that video recordings of

18    depositions should not be admitted at this trial.  Because

19    some of the issues in this lawsuit have been tried before,

20    both parties intend to use transcripts of the prior trial

21    for the purposes of impeachment or to contradict a witness'

22    testimony.  But unlike depositions, trials are not

23    videotaped; thus, allowing the use of videotape depositions

24    would not only create an inequity and undermine due process,

25    but it would illogically emphasize a witness' dispositional

1  -- or "depositional," I'm sorry, demeanor as opposed to his

2  demeanor during a prior trial where a judge and jury were

3  present.  Once again, the potential for undue prejudice and,

4  more importantly, confusion compelled the exclusion of video

5  recording of the deposition.

6          Video recordings of depositions can sometimes

7  supplement the fact-finder's impression of a particular

8  witness' demeanor.  In this case, however the length, tone,

9  nature of the litigation, and not just a particular

10  deponent's impulse to lie, may explain the demeanor observed

11  on a particular videotape.  Moreover, the parties will

12  frequently use testimony from the prior trial, and it would

13  be inequitable and illogical to draw undue emphasis to a

14  witness' demeanor during a deposition while restricting the

15  fact-finder from considering that same witness' demeanor

16  during an actual trial with a judge and jury present, often

17  with the same questions asked.  The admission of the video

18  recordings creates undue prejudice, confuses the jury and

19  undermines due process.  Mattel's request to introduce a

20  video recording of Garcia's deposition is accordingly

21  denied, and the parties are going to be restricted to the

22  use of deposition transcripts for the purposes allowed by

23  the Federal Rules of Evidence.

24          Now, I'm going to go back, though, to what I

25  previously limited Mattel on and let you reopen based upon

 1    this ruling.  Before, in the transcript, I had confined you

 2    to three lines.  I agree under Rule 32 that you can use this

 3    for a multitude of purposes.  So I want you to show me the

 4    lines, once again, you want to use, and if you want to

 5    extend beyond the three lines where we have an answer and

 6    objection, which you can now interpose, and a change of

 7    answer, you can do so.

 8              And if you want to go beyond that, simply show me

 9    tonight, Mr. Quinn, what you want to use, and in all

10    likelihood, I'll let you use that, as long as it's in

11    transcript form.

12              Now, the last thing is I want to talk to each of

13    you about counsel's conduct, which I find to be exemplary.

14              This is off the record.

15              *(Discussion held off the record.)*

16              THE COURT:  Now, we are back on the record.

17              Counsel have, in the past, running a major law

18    firm, been involved in twittering, and other counsel have,

19    of course, responded and, oftentimes, been equally involved

20    in twittering.

21              I'm going to ask Mr. Quinn, although you've been

22    exemplary since the trial started, to just desist from

23    twittering about the trial.  It's a request, to begin with.

24              MR. QUINN:  I agree to do that, your Honor, and I

25    haven't.

Case 2:04-cv-09049-DOC-RNB   Document 9722   Filed 01/28/11   Page 17 of 23   Page ID #:290841
CV 04-9049-DOC – 01/24/2011 – Volume 2

17

```
 1            THE COURT:  All right.  Thank you.

 2            And I'm going to ask Mr. Larian to be an equal

 3   gentleman in terms of his response and to try to shut down,

 4   if you will, some of notoriety about the case, because I

 5   think it's going heat up again just with Carter Bryant this

 6   week, and what I don't need is counsel feeding that because

 7   counsel have higher ethics than the parties do.  By the same

 8   token, I understand the need, on occasion, and let's just

 9   take Mattel, to sometimes fight fire with fire if Mr. Larian

10   is making comments, and maybe Mr. Eckert on behalf of Mattel

11   doesn't want to, but puts counsel in the position of

12   responding.  I'm just encouraging counsel not to because

13   your ethics are so high, and the conduct is one that relates

14   to the Court and counsel and not the parties, so thank you,

15   I'm publicly thanking you.

16            Number two, I'm publicly thanking Mr. Larian for

17   getting off the skyline, okay?

18            Now, if the L.A. Times want to respond to

19   Mr. Larian, and they are not talking points coming out from

20   this point forward, okay, let the L.A. Times come down here

21   or The Register come down here.  There's going to be plenty

22   to write about from court.  And I'm not causing Mr. Larian

23   to stop making comments, I'm just encouraging strongly that

24   we get this case off the skyline in terms of the press.  Let

25   the press write what they want to without the clients
```

CV 04-9049-DOC – 01/24/2011 – Volume 2

18

```
 1   feeding that, and that includes Mattel, so it's coequal, and
 2   Mr. Larian.
 3            So I just am not admonishing but requesting
 4   counsel to stop making comments.  I think this case is going
 5   to have a much more settled effect than it did at the first
 6   trial just because it's a retrial, and I think the press
 7   will have enough to write enough just with Mr. Carter Bryant
 8   coming on, et cetera, Mr. Larian and Mr. Eckert in the
 9   future that if they just drive down here, they don't need
10   your comments, okay?
11            So that's my first opportunity to say that, and on
12   the record, I'm absolutely complimentary towards the conduct
13   of counsel.
14            Now, next, I cause the filing of an in camera --
15   strike that -- a motion under seal.  I want to compliment
16   Mattel.  I will sign that document --
17                 (Interruption in the proceedings.)
18            THE COURT:  I think it's wise.  I think that
19   because of the overall perspective of some of the concerns
20   about Carter Bryant and just his personal life, but that's
21   better under seal, and it also doesn't dissuade Carter
22   Bryant from potentially reading that in the press before he
23   ever gets on the plane thinking he's really going to be put
24   over the coals.
25            So I think, as it turned out, that that was a
```

```
 1   document that should have been filed in camera, and I'm
 2   pleased that it was, and I'll sign that immediately,
 3   withdrawing the other document from the public record and
 4   encourage nobody to comment upon it.  I think it's going to
 5   pass without comment, quite frankly.
 6           Finally, and lastly, we -- we gave the exhibits on
 7   direct examination of the last witness just before lunch,
 8   Moran, Rachel Moran?  Just before lunch, we took another
 9   witness, we went over the direct exhibits --
10           MR. QUINN:  Was it Morris?
11           MR. ZELLER:  Oh, yeah, Jennifer Morris.
12           THE COURT:  Jennifer Moore (sic), I'm sorry.
13           And when can you respond to that?
14           MS. HURST:  We have him here, your Honor.  We are
15   ready to go whenever the Court is.
16           THE COURT:  Why don't we just finish that tonight,
17   get you on your way so you can get some sleep, so you are
18   fresh tomorrow, okay?  And we'll start with another witness
19   tomorrow on direct, and I'll -- we'll pick one, tell MGA
20   what they can be prepared for tomorrow night.  So if we do
21   one tomorrow night, Annette, one tomorrow, one Wednesday,
22   one Thursday, one Friday, you'll have five witnesses because
23   Carter Bryant probably won't finish on Friday, because we
24   only have two days for it.  Sunday or Saturday, whatever day
25   we pick, we'll give you six, okay?  That's a fair number.  I
```

 1  think that's a fair number out in advance, and I'll see if

 2  they are quick witnesses.  Maybe we'll need more.  If they

 3  are not, you know, you'll have adequate warning.

 4       MS. HURST:  We are ready to go with both Morris

 5  and Harris, which are both really quick.  If the Court wants

 6  to do them both tonight, then we move right on.  Then we

 7  will be completely caught up with Mattel, then, and they can

 8  start with somebody new tomorrow.

 9       THE COURT:  That's great.  So I'm going to let

10  Jane go.

11       Jane, thank you very much.

12       MR. MC CONVILLE:  Your Honor, can I just say one

13  thing about the Paula Garcia issue?

14       THE COURT:  Please.

15       MR. MC CONVILLE:  So -- I don't know, I -- I was

16  trying to read what the Court was saying about whether or

17  not they would permit Mattel to read the objections that led

18  to Paula Garcia's response.

19       THE COURT:  I'm going to let them read the one

20  objection.  I am not sure what else they are going to ask.

21       MR. MC CONVILLE:  Okay, because I wanted to

22  provide a proffer to the Court about what it is, because two

23  pages later, she provides the testimony that says, "I did

24  not know on September 1, 2000, that he was employed at

25  Mattel, and I learned that in 2004."

CV 04-9049-DOC - 01/24/2011 - Volume 2

21

```
 1              THE COURT:  I know that, and that could be the
 2    Rule of Completeness.  That's only one problem.  Look at
 3    the -- I'm sorry, look at the testimony that takes place
 4    between the initial reversal and all the way up to that
 5    page.  So I'm waiting for Mattel to make the initial choice
 6    about what they want to do.  If you come back with a Rule of
 7    Completeness, then I have another decision to make, and that
 8    may be allowing all that between the initial --
 9              MR. MC CONVILLE:  I understand.
10              MR. QUINN:  Three times.
11              THE COURT:  Yeah, three times.
12              So the Rule of Completeness might require that, so
13    tell me what you want to do and --
14              MR. MC CONVILLE:  So -- but I wanted to make a
15    proffer for you.  It's a confusing time line, okay?
16              Paula Garcia in September 2000 was aware that at
17    some point prior to that meeting, Carter Bryant was a former
18    Mattel employee, okay?  She did not -- she assumed and did
19    not hear at the September 2000 meeting that Carter Bryant
20    stated that he was employed at Mattel at that time.  There
21    will be multiple witnesses who will say, "Carter Bryant sat
22    at that meeting," so she's not evading a point that is not
23    otherwise there, okay?
24              So then she learned in 2004 that he was employed
25    at Mattel at the time of that meeting.  So when you read the
```

CV 04-9049-DOC – 01/24/2011 – Volume 2

22

```
 1    question in that context --
 2              THE COURT:  You'll be an excellent witness,
 3    Counsel.  We look forward to your testimony.
 4              I'm just joking with you.
 5              MR. MC CONVILLE:  "At the time, you understood he
 6    was a designer at Mattel; isn't that true?"  "Yes."
 7              She understood he was a designer at Mattel at some
 8    point prior to that.  I'm just --
 9              THE COURT:  You have the Rule of Completeness if
10    you request it, but I'm not accepting or rejecting that.
11    That's for the jury to decide.
12              MR. MC CONVILLE:  Okay.
13              THE COURT:  All right.
14              Now --
15              MR. MC CONVILLE:  Thank you for letting me make
16    that proffer.
17              THE COURT:  Oh, you can always make that.
18              Thank you, Jane.
19              (Recess.)
20                            -oOo-
21
22
23
24
25
```

1                                    –oOo–

2                             **CERTIFICATE**

3

4         I hereby certify that pursuant to Section 753,

5    Title 28, United States Code, the foregoing is a true and

6    correct transcript of the stenographically reported

7    proceedings held in the above-entitled matter and that the

8    transcript page format is in conformance with the

9    regulations of the Judicial Conference of the United States.

10

11   Date:  January 25, 2011

12

13

14                       _____

                         JANE C.S. RULE, U.S. COURT REPORTER
15                       CSR NO. 9316

16

17

18

19

20

21

22

23

24

25