QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  William C. Price (Bar No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc., and Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>                Plaintiff,<br><br>        vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation,<br><br>                Defendant. | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 and CV 05-02727<br><br>MATTEL, INC.'S BRIEF REGARDING EVIDENCE OF MGA'S CONTACT WITH REPRESENTED THIRD-PARTY ANNA RHEE<br><br>Date:   TBD<br>Time:   TBD<br>Place:  Courtroom 9D |
| AND CONSOLIDATED ACTIONS | **Phase 2**<br>Pre-trial Conference:  January 4, 2011<br>Trial Date:  January 11, 2011 |

00505.07975/3938941.2

**Preliminary Statement**

Outside the presence of the jury, third-party witness Anna Rhee testified that in December 2010, she received a phone call from an MGA employee, Pootipong Phoosopha.  Mr. Phoosopha told her that he was calling on behalf of Isaac Larian, that Mr. Larian had heard Mattel was going to sue her, that Larian "knows you lied last time," "knows you were just scared" and that MGA was prepared to "help" her. On the Court's Order, Mr. Phoosopha appeared and gave testimony which largely corroborated Ms. Rhee's testimony and disclosed that MGA executive Paula Garcia was also involved in the plan to contact Ms. Rhee about her testimony.  Although Mattel takes no position on the privilege issues as between Ms. Rhee and her counsel, Ms. Rhee's testimony concerning MGA's contact with her shortly before trial and the suggestion that she change her prior testimony should be admitted for at least three reasons.

First, after hearing Ms. Rhee's testimony on this issue outside the presence of the jury, MGA's counsel chose to exploit that testimony in front of the jury, asking Ms. Rhee if she was "scared," and if she was "afraid Mattel was going to sue you." Ms. Rhee's response, elicited by MGA: "No, not back then."  Thus, the jury has been left with the false impression—created by MGA's counsel—that Ms. Rhee's testimony was given under the belief that Mattel intends to sue her.  The jury should not be left with an incorrect impression left by MGA's misleading questioning.

Second, MGA's counsel questioned Ms. Rhee at length about *Mattel's* offer to provide counsel for Ms. Rhee.  MGA's questions suggested to the jury that Mattel sought to influence Ms. Rhee's testimony by paying for her lawyer.  Even if, as MGA claims, its contact with Ms. Rhee was merely an offer to provide counsel, MGA's questioning has opened the door to evidence of MGA's offers to do the same.  They are equally relevant to that bias and influence issue.

Third, even if MGA had not opened the door, MGA's attempts to influence Ms. Rhee's testimony are relevant to Ms. Rhee's state of mind and credibility as a

witness, and also to MGA's own consciousness of guilt.  Courts routinely admit evidence of attempts to influence testimony and allow the jury to give the evidence appropriate weight.

## Argument

## I.    MGA OPENED THE DOOR BY CREATING THE MISLEADING IMPRESSION THAT MS. RHEE FEARED MATTEL WAS GOING TO SUE HER

Although Ms. Rhee's testimony concerning MGA's contact with her shortly before trial came to light outside the presence of the jury, MGA's counsel elected to immediately exploit this testimony when the jury returned.   MGA's counsel suggested on cross examination that Ms. Rhee was "scared" and that Ms. Rhee was testifying under a fear that Mattel would sue her.

Q:  You were scared, initially, right?

A:  Right.

Q:  And you were scared that maybe you might be sued, right?

A:  Right.

Q:  And if you were sued, you didn't know whether you'd even have the resources to fight back, right?

A:  Right.

Q:  And the reason that you called MGA so many times trying to see if MGA would provide you a lawyer is *you were afraid Mattel was going to sue you?*

A:  *No, not back then.*  I just didn't know what to do.

Trial Tr., dated January 27, 2011, Vol. 3, at 30:6-17.

Thus, MGA has affirmatively created the impression that Ms. Rhee's testimony at trial was given under a fear that Mattel would sue her.  This was misleading and false.  There is no evidence that Mattel has ever made a threat to sue

Ms. Rhee, and Ms. Rhee confirmed this in her testimony to the Court outside the presence of the jury:

> THE COURT:  Has Mattel or – Mattel sits on this side, and whether you recognize the attorneys or not is not of great import to me, but has Mattel or anybody connected with Mattel or any employees or contractors that have an association with Mattel come to you and threatened a lawsuit?
>
> MS. RHEE:  No.  Never.

Trial Tr., dated January 27, 2011, Vol. 2, at 20:16-21.

Regardless of whether the evidence was relevant to begin with, Mattel is now entitled to correct MGA's misleading impression with the jury that Ms. Rhee later became concerned that Mattel would sue her and show the jury that in fact, it was MGA who (incorrectly) told Ms. Rhee that Mattel was going to sue her.  Compare United States v. Segall, 833 F.2d 144, 148 (9th Cir. 1987) ("Segall's attorney 'opened the door' to the testimony by introducing on cross-examination evidence which created [a] false impression" and therefore further testimony "on redirect was also admissible to remove any unfair prejudice which might have resulted from the evidence Segall introduced on cross-examination."); Watkins v. Noll, 2010 WL 668282, at *7 (C.D. Cal. Feb. 24, 2010) ("[A] prosecutor may 'introduce otherwise excludable testimony when the defendant 'opens the door' by introducing potentially misleading testimony.'") (quoting United States v. Beltran-Rios, 878 F.2d 1208, 1212 (9th Cir. 1989)); Beltran-Rios, 878 F.2d at 1212 (defense counsel's questions emphasizing defendants' poverty "opened the door" to otherwise inadmissible evidence)).

If MGA believed evidence of Ms. Rhee's state of mind concerning whether she thought Mattel would sue her was irrelevant, it should not have introduced such evidence on cross-examination.  Having done so deliberately, Mattel should be allowed to correct the erroneous impression left with the jury.

**II.**  **MGA INDEPENDENTLY OPENED THE DOOR BY QUESTIONING MS. RHEE ABOUT MATTEL'S OFFER OF A LAWYER**

Even if MGA's claimed interpretation is accepted (a question properly for the jury), MGA's message to Anna Rhee was an offer to provide and pay for an attorney for her. Again, MGA's counsel opened the door, questioning Ms. Rhee about Mattel's offers to provide and pay for Ms. Rhee's counsel. MGA further suggested that Ms. Rhee's counsel was improperly forced upon her by Mattel, and that she had no real choice in the matter:

> Q:   Now, at some point, the manager of the face department at Mattel told you that Michael Moore, Mattel's own in-house lawyer, wanted to talk to you right away. You remember that?
>
> A:   Yes.
>
> Q:   And you were really freaked out then, right?
>
> A:   Yes.
>
> Q:   You thought that you were in some kind of trouble with Mattel?
>
> A:   Yes.
>
> Q:   True?
>
> A:   True.
>
> * * *
>
> Q:   So you told Mattel you wanted a lawyer, right?
>
> A:   Right.
>
> Q:   And Mattel then provided one for you, right?
>
> A:   Right.
>
> Q:   So Mattel didn't say, "Well, go out, hire a lawyer, and we'll reimburse you." They just – they just assigned you a lawyer, right?
>
> A:   Right.

-4-

1      Q:    And that was Mr. Berman, who's sitting here?

2      A:    Right.

Trial Tr., dated January 27, 2011, Vol. 1, at 107:6-108:10.

MGA returned to the subject of Mattel's offer to provide counsel again on re-cross, essentially repeating the same examination.  See Trial Tr., dated January 27, 2011, Vol. 3, at 31:5-24.

Thus, MGA has sought to create the impression that Mattel attempted to influence or bias Ms. Rhee's testimony by contacting her and offering to provide a lawyer.  The jury must be permitted to hear evidence that MGA likewise contacted her and offered to pay for her counsel.  Moreover, MGA has questioned every trial witness about their contacts with counsel and their fee arrangements, and this Court has repeatedly ruled that fee arrangements are relevant to bias and control.  See, e.g., Dkt. No. 7434 at 3 ("[T]he Court considers such fee and indemnification agreements, including documents referring or relating to them, relevant to the issues of bias and control."); Dkt. No. 7643 (compelling production of fee agreements with numerous witnesses as "relevant to bias").  MGA should not be permitted to suggest that Mattel sought to influence Ms. Rhee's testimony by paying for her lawyer, without the jury hearing that MGA also offered counsel.

## III.    EVIDENCE OF MGA'S ATTEMPT TO INFLUENCE MS. RHEE'S TESTIMONY IS ADMISSIBLE

Independently, this evidence is admissible because the jury could conclude, upon review of the evidence, that this was an attempt to improperly influence Ms. Rhee's testimony.  Attempts to influence testimony are relevant to Ms. Rhee's state of mind and demeanor while testifying, as well as to MGA and Mr. Larian's own consciousness of guilt.  Even in criminal matters, where the risk of prejudice to a defendant is far greater, courts regularly admit evidence of attempts to influence witnesses.  See, e.g., Renteria v. Smalls, 2010 WL 1875642, at *7 (C.D. Cal. Feb. 24,

2010) ("First, evidence of threats or intimidation made by a defendant against a witness is admissible to show the defendant's consciousness of guilt. . . Second, evidence of threats against a witness is admissible to show the witness's state of mind and is relevant to the evaluation of the witness's credibility even if the threats were not made by the defendant.").

Even though it is disputed whether MGA's contact with Ms. Rhee constituted a threat, the evidence should nonetheless go the jury to make that determination. Where evidence of threats is ambiguous, the court should "simply allow[] the jury to choose from more than one reasonable interpretation." United States v. Johnson, 624 F.3d 815, 821 (7th Cir. 2010) ("We agree with the district court that while Johnson did not explicitly instruct his associate to threaten the informant in the recordings, the jury could reasonably interpret the phone conversations in that manner.").

Moreover, the facts that Ms. Rhee was, 1) told by MGA that Mattel was going to sue her, 2) subjected to accusations from MGA of lying, and 3) received an offer of "help" from MGA so she won't be "scared," are all highly relevant to her own state of mind, credibility, and demeanor while testifying. See JEFFERSON'S CALIFORNIA EVIDENCE BENCHBOOK § 21.92 (evidence that witnesses have been threatened "is relevant to their state of mind and demeanor while testifying" even where defendant "did not personally make the threats, or was not even personally linked to the threats."); Renteria, 2010 WL 1875642, at *7 ("Regardless of the nature and degree of Petitioner's involvement, evidence that A.'s neighbor and T. attempted to intimidate A. was relevant to the jury's evaluation of A.'s credibility.").

## **Conclusion**

For the foregoing reasons, Mattel respectfully requests that the Court admit the evidence of MGA's contact with Ms. Rhee regarding her trial testimony.

1

2   DATED:  January 28, 2011          QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP

3

4                                       B: /s/ John B. Quinn
                                           John B. Quinn
5                                          Attorneys for Mattel, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28