1          **UNITED STATES DISTRICT COURT**

2          **CENTRAL DISTRICT OF CALIFORNIA**

3        **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                    - - - - - - -

5
   MATTEL, INC., et al.,            )
6                                   )
              Plaintiffs,           )
7                                   )
         vs.                        ) No. CV 04-9049 DOC
8                                   )    Day 6
   MGA ENTERTAINMENT, INC., et al., )    Volume 1 of 3
9                                   )
                                    )
10            Defendants.           )
   _____)
11

12

13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                    Jury Trial

16               Santa Ana, California

17            Tuesday, January 25, 2011

18

19

20

21   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
22   United States District Court
     411 West 4th Street, Room 1-053
23   Santa Ana, California 92701
     (714) 558-8141
24

25   04cv9049 Mattel 2011-01-25 D6V1

Case 2:04-cv-09049-DOC-RNB   Document 9724   Filed 01/28/11   Page 2 of 136   Page ID #:290857
CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

2

1    **APPEARANCES OF COUNSEL:**

2

     FOR PLAINTIFF MATTEL, INC., ET AL.:

3
              QUINN EMANUEL URQUHART OLIVER & HEDGES LLP
4             BY:  JOHN QUINN
                   WILLIAM PRICE
5                  MICHAEL T. ZELLER
                   Attorneys at Law
6             865 South Figueroa Street
              10th Floor
7             Los Angeles, California 90017
              (213) 443-3000

8

9

10

11   FOR DEFENDANT MGA ENTERTAINMENT, INC., ET AL:

12            ORRICK, HERRINGTON & SUTCLIFFE, LLP (Irvine)
              BY:  THOMAS S. McCONVILLE
13                 Attorney at Law
              4 Park Plaza
14            Suite 1600
              Irvine, California 92614
15            (949) 567-6700

16            - AND -

17            ORRICK, HERRINGTON & SUTCLIFFE, LLP (SF)
              BY:  ANNETTE L. HURST
18                 Attorney at Law
              405 Howard Street
19            San Francisco, California 94105
              (415)773-5700

20            - AND -

21            KELLER RACKAUCKAS
22            BY:  JENNIFER KELLER
                   Attorney at Law
23            18500 Von Karman Avenue
              Suite 560
24            Irvine, California 92612
              (949) 476-8700

25

Case 2:04-cv-09049-DOC-RNB   Document 9724   Filed 01/28/11   Page 3 of 136   Page ID #:290858
CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

3

1     **APPEARANCES OF COUNSEL (Continued):**

2

3     FOR CARLOS GUSTAVO MACHADO GOMEZ:

4

5             LAW OFFICES OF MARK E. OVERLAND
              By:  MARK E. OVERLAND
                     Attorney at Law
6             100 Wilshire Boulevard
              Suite 950
7             Santa Monica, California 90401
              (310) 459-2830

8             - AND -

9

10            SCHEPER KIM & HARRIS LLP
              BY:  ALEXANDER H. COTE
                     Attorney at Law
11            601 West 5th Street
              12th Floor
12            Los Angeles, California 90071
              (213) 613-4660

13

14

15

16    ALSO PRESENT:

17            MGA ENTERTAINMENT, INC.
              BY:  JEANINE PISONI
                     Attorney at Law
18            16360 Roscoe Boulevard
              Suite 105
19            Van Nuys, California 91406

20

21            ROBERT ECKERT, Mattel CEO

22            ISAAC LARIAN, MGA CEO

23            KEN KOTARSKI, Mattel Technical Operator

24            MIKE STOVALL, MGA Technical Operator

25

Case 2:04-cv-09049-DOC-RNB   Document 9724   Filed 01/28/11   Page 4 of 136   Page ID #:290859
CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

4

1                          **I N D E X**

2    **WITNESSES**              **DIRECT   CROSS   REDIRECT   RECROSS**

3    GARCIA, Paula

4    By Price                        7
     (Continued)

5

6

7                          **EXHIBITS**

8    **EXHIBIT NO.**                  **IDENTIFICATION    IN EVIDENCE**

9      320      E-mail from Ms. Hogan to              19
                Ms. Garcia
10
       321      E-mail from Ms. Hogan to              26
11              Ms. Garcia with fax
                dated of 10/22/2005
12
       551      Memo from Ms. Ashong                  15
13              dated 9/6/2001

14     597      E-mail chain starting                 23
                10/12/2000
15
      1110      Carter Bryant final                  122
16              fashing drawing of
                Yasmin
17
      1113      E-mail from Ms. Bailey               129
18              to Ms. Garcia

19    4507      E-mail chain dated                    48
                March 9, 2002
20
      7052      E-mail dated 4/21/2004                55
21
      8627      E-mail from Mr. Larian                57
22              dated 9/23/2005

23    8930      Declaration of Paula                  39
                Garcia
24

25

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

5

```
 1              EXHIBITS (Continued)

 2    EXHIBIT NO.              IDENTIFICATION   IN EVIDENCE

 3

 4    8936    Document dated 2/2/2005                65

 5    11276   E-mail chain containing               29
              e-mail from Mr. Larian
 6            10/16/2000

 7    13520   Document with "ABC                     34
              International Traders,
 8            Inc." at top

 9    13859   E-mail string, including               44
              Mr. Larian, Mr. Bryant
10            and Ms. Garcia

11    13860   MGA 2003 report                        46

12    14655   E-mail dated July 30th                 64

13    17558   Bratz doll - Sasha                     98

14    17561   Bratz doll - Jasmin                   100

15

16

17

18

19

20

21

22

23

24

25
```

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

6

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | **SANTA ANA, CALIFORNIA, TUESDAY, JANUARY 25, 2011**         |
|       | 2  | **Day 6, Volume 1 of 3**                                     |
|       | 3  | (8:32 a.m.)                                                  |
| 08:32 | 4  | *(In presence of the jury.)*                                 |
| 08:32 | 5  | THE COURT:  All right.  We're back in session.               |
| 08:32 | 6  | The jury's present, the alternates.  The witness is present, |
| 08:32 | 7  | all counsel and the parties.  If you would be seated.  Thank |
| 08:32 | 8  | you for your courtesy, counsel.                              |
| 08:32 | 9  | Ladies and gentlemen, counsel have stipulated that           |
| 08:33 | 10 | we state the following to you:                               |
| 08:33 | 11 | There was a prior trial in this case.  That trial            |
| 08:33 | 12 | concerned a different set of claims and legal issues than    |
| 08:33 | 13 | you will hear in this trial.                                 |
| 08:33 | 14 | The results of that trial, if any, and the prior             |
| 08:33 | 15 | proceedings in this case are completely irrelevant to your   |
| 08:33 | 16 | consideration.                                               |
| 08:33 | 17 | You're starting on a clean slate.  You should not            |
| 08:33 | 18 | investigate or otherwise concern yourself with the prior     |
| 08:33 | 19 | proceedings in this matter.                                  |
| 08:33 | 20 | Prior trial or deposition testimony may be used at           |
| 08:33 | 21 | this trial for various purposes.                             |
| 08:33 | 22 | Each type of sworn testimony is accorded the same            |
| 08:33 | 23 | weight for evidentiary purposes.                             |
| 08:33 | 24 | Now, I'll read that to you one more time,                    |
| 08:33 | 25 | probably, at some point in the time.                         |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

7

| | | |
|---|---|---|
| 08:34 | 1 | The second thing I want to remind you is something |
| 08:34 | 2 | I say at the beginning of the case. |
| 08:34 | 3 | Sometimes you'll hear me incorrectly refer to |
| 08:34 | 4 | Mattel as the plaintiff and MGA as the defendant.  They're |
| 08:34 | 5 | really claimants and counter-claimants in this matter.  And |
| 08:34 | 6 | I remind you that either party could be seated at either |
| 08:34 | 7 | table.  MGA could be seated at the table that Mattel |
| 08:34 | 8 | presently operates from, and Mattel could be seated at MGA's |
| 08:34 | 9 | table.  But this is the order with, I've decided, Mattel |
| 08:34 | 10 | going first. |
| 08:34 | 11 | All right.  Counsel, if you would continue, |
| 08:34 | 12 | please, with your examination. |
| 10:21 | 13 | **PAULA GARCIA, MATTEL'S WITNESS, PREVIOUSLY SWORN** |
| 10:21 | 14 | **RESUMED THE STAND** |
| 08:34 | 15 | **DIRECT EXAMINATION (Continued)** |
| 08:34 | 16 | MR. PRICE:  Good morning, Ms. Garcia. |
| 08:34 | 17 | THE WITNESS:  Good morning. |
| 08:34 | 18 | BY MR. PRICE: |
| 08:34 | 19 | Q.   Since we last met, have you had an opportunity to talk |
| 08:34 | 20 | to MGA's counsel? |
| 08:34 | 21 | A.   Yes. |
| 08:34 | 22 | Q.   And for about how long did you have discussions with |
| 08:35 | 23 | them since we last met? |
| 08:35 | 24 | A.   Approximately four hours. |
| 08:35 | 25 | Q.   And who in particular did you speak with? |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

8

| | | |
|---|---|---|
| 08:35 | 1 | A.   There was Warrington Parker, Jeanine Pisoni, Tom |
| 08:35 | 2 | McConville.  I think there was a gentleman named Bob also. |
| 08:35 | 3 | Q.   Did you also have the opportunity to speak with people |
| 08:35 | 4 | at MGA about your testimony, that is, not with the |
| 08:35 | 5 | attorneys, but people who work or are associated with MGA? |
| 08:35 | 6 | A.   No. |
| 08:35 | 7 | Q.   Did you have the chance to look at documents which |
| 08:35 | 8 | might -- or that did refresh your recollection? |
| 08:35 | 9 | A.   No. |
| 08:35 | 10 | Q.   Let me -- I neglected, I think, to get into the |
| 08:35 | 11 | substance of your position at MGA.  Could you tell us what |
| 08:36 | 12 | you actually do at MGA right now? |
| 08:36 | 13 | A.   Sure.  My title is vice president of product design and |
| 08:36 | 14 | development. |
| 08:36 | 15 | I am responsible for a group of designers, development |
| 08:36 | 16 | designers.  Our responsibility is to come up with concepts, |
| 08:36 | 17 | design those concepts, develop them, meaning make sure that |
| 08:36 | 18 | they're within cost and are manufacturable. |
| 08:36 | 19 | Our job is to then transfer that on to our Hong Kong |
| 08:36 | 20 | offices and work with them to make sure that that product is |
| 08:36 | 21 | produced on time and within costs. |
| 08:36 | 22 | Q.   How many people report to you? |
| 08:36 | 23 | A.   At the current time, I have six people reporting to me. |
| 08:36 | 24 | Q.   Has that changed over the years; that is, gone higher |
| 08:36 | 25 | or lower? |

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

9

| | | |
|---|---|---|
| 08:36 | 1 | A.   It's gone lower. |
| 08:36 | 2 | Q.   And at the heighth, I guess, how many people reported |
| 08:36 | 3 | to you? |
| 08:36 | 4 | A.   I had probably around 20, 25 people. |
| 08:36 | 5 | Q.   Could you tell us what was, in any given year since |
| 08:37 | 6 | 2000, say, your highest salary or income? |
| 08:37 | 7 | MR. McCONVILLE:  Objection.  Vague as to time. |
| 08:37 | 8 | THE COURT:  Overruled. |
| 08:37 | 9 | Do you understand the question? |
| 08:37 | 10 | THE WITNESS:  Yes. |
| 08:37 | 11 | THE COURT:  All right.  Please answer it. |
| 08:37 | 12 | Thank you. |
| 08:37 | 13 | THE WITNESS:  My highest paid salary is the salary |
| 08:37 | 14 | I'm being paid at the moment, which is, I believe, $225,000. |
| 08:37 | 15 | BY MR. PRICE: |
| 08:37 | 16 | Q.   In addition to salary have you gotten bonuses or |
| 08:37 | 17 | percentages of sales or anything like that? |
| 08:37 | 18 | A.   I've received bonuses. |
| 08:37 | 19 | Q.   And that's in addition to $225,000? |
| 08:37 | 20 | A.   To be clear, when receiving bonuses, I'm not sure that |
| 08:37 | 21 | I was making the $225,000. |
| 08:37 | 22 | Q.   So what would have been the range of the bonuses you've |
| 08:37 | 23 | received since 2000?  I'm not asking you to add them up. |
| 08:38 | 24 | I'm just asking, you know, in any given year, is one year |
| 08:38 | 25 | 10,000, another year 20,000, and things like that? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

10

| | | |
|---|---|---|
| 08:38 | 1 | A.   It's been a great number of years since I've gotten a |
| 08:38 | 2 | bonus.  I can't remember the exact number.  I believe it was |
| 08:38 | 3 | probably about $15,000. |
| 08:38 | 4 | Q.   That was the highest that you got? |
| 08:38 | 5 | A.   From my memory, yes. |
| 08:38 | 6 | Q.   And you said that you had people reporting to you.  Was |
| 08:38 | 7 | that directly or indirectly; that is, were people reporting |
| 08:38 | 8 | to you, who then had people reporting to them? |
| 08:38 | 9 | A.   Yes. |
| 08:38 | 10 | Q.   Okay.  So how many people indirectly -- at the time you |
| 08:38 | 11 | had the most people reporting to you, how many people did |
| 08:38 | 12 | you have reporting to you indirectly? |
| 08:38 | 13 | A.   I'm sorry, Mr. Price, I want to make sure that I was |
| 08:38 | 14 | clear.  When I meant the 20 or 25 people, that was including |
| 08:38 | 15 | direct reports and indirect reports. |
| 08:38 | 16 | Q.   Okay.  Terrific. |
| 08:38 | 17 | Now I want to get back to talking to you about the |
| 08:39 | 18 | timeframe, you know, in 2000.  If we could focus on |
| 08:39 | 19 | August 2000 till the end of October 2000. |
| 08:39 | 20 | A.   Okay. |
| 08:39 | 21 | Q.   Hold on one second. |
| 08:39 | 22 | If I can figure out how to use it -- I don't need to |
| 08:39 | 23 | figure it out.  Someone's figuring it out for me. |
| 08:39 | 24 | *(Document displayed.)* |
| | 25 | |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9724   Filed 01/28/11   Page 11 of 136   Page ID #:290866
CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

11

| | | |
|---|---|---|
| 08:39 | 1 | BY MR. PRICE: |
| 08:39 | 2 | Q.   So in August of 2000 to September of 2000, I believe |
| 08:39 | 3 | you testified that Carter Bryant worked on those -- those |
| 08:40 | 4 | baby faces for Prayer Angels so you could get a concept of |
| 08:40 | 5 | the eyes, right? |
| 08:40 | 6 | A.   Correct. |
| 08:40 | 7 | Q.   Do you recall when in August of 2000 that occurred? |
| 08:40 | 8 | A.   It probably took place approximately two weeks prior to |
| 08:40 | 9 | the September 1st meeting, within that time period. |
| 08:40 | 10 | Q.   And on this timeline, let's talk up to October 19, |
| 08:40 | 11 | 2000.  Okay? |
| 08:40 | 12 | THE COURT:  What did you just write?  Bryant? |
| 08:40 | 13 | MR. PRICE:  "Bryant draws faces." |
| 08:40 | 14 | THE COURT:  Thank you. |
| 08:40 | 15 | MR. PRICE:  Thanks.  It's a good point. |
| 08:40 | 16 | BY MR. PRICE: |
| 08:40 | 17 | Q.   So September 2000 is when you remember the first |
| 08:40 | 18 | meeting with Mr. Bryant, correct? |
| 08:40 | 19 | A.   Correct. |
| 08:40 | 20 | Q.   That included Mr. Larian and Ms. O'Connor? |
| 08:41 | 21 | A.   That's right. |
| 08:41 | 22 | Q.   And then between September and October 2000, Mr. Bryant |
| 08:41 | 23 | met with Ms. Leahy, correct? |
| 08:41 | 24 | A.   Correct. |
| 08:41 | 25 | Q.   And that's the woman who did the sculpt, right? |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

12

| | | |
|---|---|---|
| 08:41 | 1 | A.   Correct. |
| 08:41 | 2 | Q.   And you understand he contacted a hair vendor on -- |
| 08:41 | 3 | saying he was with MGA, correct? |
| 08:41 | 4 | A.   Correct. |
| 08:41 | 5 | Q.   And your best recollection is that you also met with |
| 08:41 | 6 | Ms. Leahy with Mr. Bryant between September and October of |
| 08:41 | 7 | 2000, right? |
| 08:41 | 8 | A.   Correct. |
| 08:42 | 9 | Q.   And during that same timeframe, Ms. Marlow, toward the |
| 08:42 | 10 | end of that month, was working on fabric and fashions, |
| 08:42 | 11 | right? |
| 08:42 | 12 | A.   Correct.  I'm sorry, Mr. Price.  Could you repeat the |
| 08:42 | 13 | question again? |
| 08:42 | 14 | Q.   Sure. |
| 08:42 | 15 | A.   I'm not sure I understood. |
| 08:42 | 16 | Q.   In that month of September, Ms. Marlow was working on |
| 08:42 | 17 | fabric and fashions? |
| 08:42 | 18 | A.   No, that's not my memory.  No. |
| 08:42 | 19 | Q.   Okay.  You remember that bill that MGA paid for that |
| 08:42 | 20 | had Ms. Marlow from 9/29 to October? |
| 08:42 | 21 | A.   Yes, I do. |
| 08:42 | 22 | Q.   And that indicated she's working in the end of |
| 08:42 | 23 | September on the Bratz project, right? |
| 08:42 | 24 | A.   Yes.  Actually, in the line itemized on her P.O. |
| 08:43 | 25 | report, it itemized that she was present in some of the |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

13

| 08:43 | 1 | sculpting meeting in September.  I don't believe that that |
| 08:43 | 2 | time in September was attributed to designing fashions. |
| 08:43 | 3 | Q.   So sticking with your recollection, then, in September |
| 08:43 | 4 | Ms. Marlow was working with the sculpt, with you and |
| 08:43 | 5 | Mr. Bryant? |
| 08:43 | 6 | A.   Yes. |
| 08:43 | 7 | Q.   And your recollection is that the Bratz project -- that |
| 08:43 | 8 | development started in mid-September, correct? |
| 08:43 | 9 | A.   No. |
| 08:43 | 10 | Q.   I'd like you to look, if you could, at Exhibit 924. |
| 08:43 | 11 | This is one that we've looked at before, which is in |
| 08:43 | 12 | evidence. |
| 08:44 | 13 | (Document displayed.) |
| 08:44 | 14 | BY MR. PRICE: |
| 08:44 | 15 | Q.   If you look at the paragraph that begins with Mercedeh, |
| 08:44 | 16 | Judy, and Cecilia.  Do you see that? |
| 08:44 | 17 | A.   Yes, I do. |
| 08:44 | 18 | Q.   By the way, I just want to remind the jury, you see |
| 08:44 | 19 | that says from Paula Treantafelles, correct? |
| 08:44 | 20 | A.   Yes. |
| 08:44 | 21 | Q.   Just to remind the jurors, that was your name before |
| 08:44 | 22 | you got married. |
| 08:44 | 23 | A.   That's right. |
| 08:44 | 24 | Q.   So whenever we see that name, we can know that's you, |
| 08:44 | 25 | Paula Garcia? |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 08:44 | 1 | A.   Yes. |
| 08:44 | 2 | Q.   And this is one that you sent to, among others, the |
| 08:44 | 3 | Hong Kong folks, correct? |
| 08:44 | 4 | A.   Correct. |
| 08:44 | 5 | Q.   And this is the one where you sent PDFs for Bratz, |
| 08:44 | 6 | right? |
| 08:44 | 7 | A.   That's right. |
| 08:44 | 8 | Q.   And remind us what PDF is. |
| 08:44 | 9 | A.   Product development form. |
| 08:44 | 10 | Q.   And in the second paragraph, you see the last line, |
| 08:44 | 11 | "Please keep in mind that we only started developing this |
| 08:45 | 12 | line a month ago." |
| 08:45 | 13 | Do you see that? |
| 08:45 | 14 | A.   Yes, I do. |
| 08:45 | 15 | Q.   And this e-mail is dated October 16, 2000? |
| 08:45 | 16 | A.   Yes. |
| 08:45 | 17 | Q.   And so, about a month ago would be September 16th, |
| 08:45 | 18 | 2000, timeframe? |
| 08:45 | 19 | A.   Yes. |
| 08:45 | 20 | Q.   And Mr. Bryant's contract is dated as of |
| 08:45 | 21 | September 18th, correct? |
| 08:45 | 22 | A.   I don't know what Carter Bryant's contract notes. |
| 08:45 | 23 | Q.   Would you look, please, at Exhibit 551.  Do you have |
| 08:46 | 24 | it? |
| 08:46 | 25 | A.   Yes, I do. |

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

15

| | | |
|---|---|---|
| 08:46 | 1 | Q.   And do you recognize that as a memo from Nana Ashong |
| 08:46 | 2 | to, among others, you on September 6, 2001? |
| 08:46 | 3 | A.   Yes, I do. |
| 08:46 | 4 | MR. PRICE:  Your Honor, move Exhibit 551 into |
| 08:46 | 5 | evidence. |
| 08:46 | 6 | THE COURT:  Received. |
| 08:46 | 7 | *(Exhibit No. 551 received in evidence.)* |
| 08:46 | 8 | *(Document displayed.)* |
| 08:46 | 9 | BY MR. PRICE: |
| 08:46 | 10 | Q.   Now, this is sent a year later, in 2001, correct? |
| 08:46 | 11 | A.   Yes. |
| 08:46 | 12 | Q.   And you see there's a line says, "Here are key legally |
| 08:46 | 13 | relevant dates for Bratz." |
| 08:46 | 14 | Do you see that? |
| 08:46 | 15 | A.   Yes. |
| 08:46 | 16 | Q.   And it says, "This is how they appear on our copyright |
| 08:46 | 17 | application," correct? |
| 08:46 | 18 | A.   Right. |
| 08:46 | 19 | Q.   And under "date of creation," it says September 18, |
| 08:46 | 20 | 2000, correct? |
| 08:46 | 21 | A.   Yes. |
| 08:46 | 22 | Q.   By the way, when it says, "shown to the public |
| 08:46 | 23 | February 12, 2001," is that the Hong Kong toy fair? |
| 08:47 | 24 | A.   No. |
| 08:47 | 25 | Q.   What is that referring to? |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9724   Filed 01/28/11   Page 16 of 136   Page ID #:290871
CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

16

| | | |
|---|---|---|
| 08:47 | 1 | A.   I -- I can tell you -- first of all, I don't -- I |
| 08:47 | 2 | didn't create this document.  I'm not sure what Nana meant |
| 08:47 | 3 | in these dates.  I can tell you that there is a New York toy |
| 08:47 | 4 | fair show that generally takes place in the February |
| 08:47 | 5 | timeframe. |
| 08:47 | 6 | Q.   And then it says, "first in commerce."  Do you know |
| 08:47 | 7 | what that refers to? |
| 08:47 | 8 | A.   No. |
| 08:47 | 9 | Q.   When you received this document which said the date of |
| 08:47 | 10 | creation of Bratz was September 18, 2000, did you write an |
| 08:47 | 11 | e-mail or put in writing somewhere that you disagreed that |
| 08:47 | 12 | September 18, 2000, was the creation of Bratz? |
| 08:47 | 13 | A.   No. |
| 08:47 | 14 | Q.   If you would look at Exhibit 11897. |
| 08:49 | 15 |          THE COURT:  11897? |
| 08:49 | 16 |          MR. PRICE:  Yes, Your Honor. |
| 08:49 | 17 |          THE COURT:  Counsel. |
| 08:49 | 18 | BY MR. PRICE: |
| 08:49 | 19 | Q.   Is Exhibit 11897 a fax that you received around |
| 08:49 | 20 | December 7, 2000? |
| 08:49 | 21 | A.   I don't recall receiving this fax. |
| 08:49 | 22 | Q.   Have you received -- ever received any communications |
| 08:49 | 23 | from a law firm named Russ August Kabat & Kent? |
| 08:49 | 24 | A.   No, not -- I cannot recall. |
| 08:49 | 25 | Q.   Do you remember a Lucy Arant? |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

17

| | | |
|---|---|---|
| 08:50 | 1 | A.   No. |
| 08:50 | 2 | Q.   Do you recall there was a time when MGA did trademark |
| 08:50 | 3 | applications for Bratz? |
| 08:50 | 4 | A.   I wasn't involved in the trademarks.  I don't -- I |
| 08:50 | 5 | don't recall that. |
| 08:50 | 6 | Q.   Did you know that Russ August Kabat & Kent were |
| 08:50 | 7 | trademark counsel for MGA? |
| 08:50 | 8 | A.   No. |
| 08:50 | 9 | Q.   Did you ever tell Lucy Arant that the first use of the |
| 08:50 | 10 | Bratz trademark was around June 15, 2000? |
| 08:50 | 11 | A.   No. |
| 08:50 | 12 | Q.   Isn't it true that you, in fact, communicated with |
| 08:50 | 13 | Ms. Arant? |
| 08:50 | 14 | A.   I don't recall communicating with Ms. Arant. |
| 08:51 | 15 | *(Document displayed.)* |
| 08:51 | 16 | BY MR. PRICE: |
| 08:51 | 17 | Q.   I'd like to focus you now on October -- up to |
| 08:51 | 18 | October 19, 2000, okay? |
| 08:51 | 19 | A.   Okay. |
| 08:51 | 20 | Q.   In that timeframe you met with Mr. Bryant? |
| 08:51 | 21 | A.   Yes. |
| 08:51 | 22 | Q.   You met with Ms. Leahy? |
| 08:51 | 23 | A.   Yes. |
| 08:51 | 24 | Q.   And, in fact, during that time period, she worked on a |
| 08:52 | 25 | couple of sculpts? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

18

| | | |
|---|---|---|
| 08:52 | 1 | A.    She worked on one that I remember. |
| 08:52 | 2 | Q.    And you -- again, Ms. Marlow in this timeframe, between |
| 08:52 | 3 | October and -- October 19th, was working on fashions for the |
| 08:52 | 4 | dolls, right? |
| 08:52 | 5 | A.    Yes. |
| 08:52 | 6 | Q.    And there was also communication regarding the |
| 08:52 | 7 | packaging of the dolls between October 1st and October 19th, |
| 08:52 | 8 | right? |
| 08:52 | 9 | A.    It's possible -- uh, yes. |
| 08:52 | 10 | Q.    And do you recall who those discussions were with? |
| 08:52 | 11 | A.    No, I don't. |
| 08:52 | 12 | Q.    Let's see if you can look at Exhibit 320.  Do you have |
| 08:53 | 13 | that in front of you, ma'am? |
| 08:53 | 14 | A.    Yes, I do. |
| 08:53 | 15 | Q.    Do you recognize Exhibit 320 as an e-mail that was sent |
| 08:53 | 16 | from a Liz Hogan to you? |
| 08:53 | 17 | A.    Yes. |
| 08:53 | 18 | Q.    And could you tell us -- you see there's some drawings |
| 08:53 | 19 | on this -- I mean, the penciled drawings.  Can you tell us |
| 08:53 | 20 | who those are? |
| 08:53 | 21 | A.    No. |
| 08:53 | 22 |         MR. PRICE:  Your Honor, I'd move Exhibit 320 into |
| 08:53 | 23 | evidence. |
| 08:53 | 24 |         MR. McCONVILLE:  Objection.  Foundation, |
| 08:53 | 25 | Your Honor, as to the ancillary drawings on the document. |

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

19

| | | |
|---|---|---|
| 08:53 | 1 | THE COURT:  320 can come in, counsel, as the |
| 08:53 | 2 | e-mail.  I'm not sure yet about the drawings attached. |
| 08:53 | 3 | *(Exhibit No. 320 received in evidence.)* |
| 08:53 | 4 | BY MR. PRICE: |
| 08:53 | 5 | Q.   Let me ask this:  When you received the e-mail, were |
| 08:54 | 6 | their drawings on it? |
| 08:54 | 7 | A.   I apologize.  Was that a question? |
| 08:54 | 8 | Q.   Let me ask it again. |
| 08:54 | 9 | When you received the e-mail, were the drawings on it? |
| 08:54 | 10 | A.   I don't recall receiving this e-mail. |
| 08:54 | 11 | MR. PRICE:  Ken, can you white out the drawings? |
| 08:54 | 12 | Well, let's talk about the e-mail.  He's seeing if |
| 08:54 | 13 | he can white out the drawings. |
| 08:54 | 14 | THE WITNESS:  Okay. |
| 08:54 | 15 | BY MR. PRICE: |
| 08:54 | 16 | Q.   You see it begins with "Paula and Carter, paren, please |
| 08:54 | 17 | forward to Carter.  I don't have his e-mail." |
| 08:54 | 18 | Do you see that? |
| 08:54 | 19 | A.   Yes, I do. |
| 08:54 | 20 | Q.   And this e-mail is sent on October 12, 2000, right? |
| 08:54 | 21 | A.   Yes. |
| 08:54 | 22 | Q.   And it says, "Steve and I" -- do you know who Steve |
| 08:54 | 23 | refers to? |
| 08:54 | 24 | A.   I believe it's Steve Linker. |
| 08:54 | 25 | Q.   And could you tell the jury who Steve Linker is? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

20

| 08:55 | 1 | A.   Steve Linker is a -- was a freelance designer who |
|---|---|---|

08:55   1   A.   Steve Linker is a -- was a freelance designer who

08:55   2   worked in graphics.

08:55   3   Q.   And we've put the blowup up there without the drawings.

08:55   4   *(Document displayed.)*

08:55   5   BY MR. PRICE:

08:55   6   Q.   Let's concentrate on that second paragraph.

08:55   7   MR. McCONVILLE:  Your Honor, my objection is to

08:55   8   the writing that's on the document.  I mischaracterized it

08:55   9   as drawings, but there were drawings and writing.

08:55   10   THE COURT:  The question we're going to discuss,

08:55   11   apparently, during the recess is if MGA had these in their

08:55   12   possession and they were transferred in this form to Mattel,

08:55   13   then I don't know that the Court is necessarily going to

08:55   14   require a finite foundation as to the specific person who

08:55   15   made the marks.

08:55   16   So during the recess we'll find out if this was in

08:55   17   MGA's possession and it was transferred to Mattel in this

08:55   18   position or if Mattel wrote on them.  That's what I'm not

08:56   19   sure of, counsel.

08:56   20   MR. PRICE:  For now, we'll white out anything that

08:56   21   is in handwriting.

08:56   22   THE COURT:  Right now we're just going to look at

08:56   23   the e-mail.  It may come to you in a few moments in

08:56   24   drawings.

25

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

21

| 08:56 | 1 | BY MR. PRICE: |
|---|---|---|
| 08:56 | 2 | Q.   Ma'am, you see it says, "Steve and I would like to meet |
| 08:56 | 3 | with you and Carter on Monday to maybe get some of the art |
| 08:56 | 4 | so we can get going.  Let us know what time and where is |
| 08:56 | 5 | good for you." |
| 08:56 | 6 |      Do you see that? |
| 08:56 | 7 | A.   Yes, I do. |
| 08:56 | 8 | Q.   And then there's a question, "Here's some questions and |
| 08:56 | 9 | comments on the Bratz project.  One, we need some spec |
| 08:56 | 10 | sheets calling out sizes and dimensions on the dolls and |
| 08:56 | 11 | accessories." |
| 08:56 | 12 |      Do you recall that? |
| 08:56 | 13 | A.   Do you mean in terms of this e-mail in that question? |
| 08:56 | 14 | Q.   Do you recall they were asking about "we need spec |
| 08:56 | 15 | sheets" and things like that? |
| 08:56 | 16 | A.   No. |
| 08:56 | 17 | Q.   Your understanding is that to do the packaging, you'd |
| 08:56 | 18 | need that sort of information, right? |
| 08:56 | 19 | A.   Yes. |
| 08:56 | 20 | Q.   And then it says, "We need the existing art boards that |
| 08:57 | 21 | we saw in the meeting or good color copies." |
| 08:57 | 22 |      Do you see that? |
| 08:57 | 23 | A.   Yes. |
| 08:57 | 24 | Q.   So there was a meeting with Liz Hogan and Steve Linker |
| 08:57 | 25 | and someone prior to this e-mail being sent October 12, |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9724   Filed 01/28/11   Page 22 of 136   Page ID #:290877
CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

22

| 08:57 | 1 | 2000, right? |
| 08:57 | 2 | A.   Yes. |
| 08:57 | 3 | Q.   And do you recall a meeting at Starbucks around |
| 08:57 | 4 | October 10th or October 11th, where you were present and |
| 08:57 | 5 | gave Ms. Hogan and Ms. Linker existing art boards, drawings, |
| 08:57 | 6 | of the Bratz dolls? |
| 08:57 | 7 | A.   I do not recall the meeting at Starbucks. |
| 08:57 | 8 | Q.   Do you have any reason to think that that meeting did |
| 08:57 | 9 | not take place, having read this e-mail? |
| 08:57 | 10 | A.   No. |
| 08:57 | 11 | Q.   And then the number three there, it says, "Is the name |
| 08:57 | 12 | Bratz confirmed, or can we work on," slash, "change it?" |
| 08:57 | 13 | Do you see that? |
| 08:58 | 14 | A.   Yes. |
| 08:58 | 15 | Q.   It's true that Mr. Bryant, in the meeting you recall in |
| 08:58 | 16 | September, mentioned the Bratz name in connection with these |
| 08:58 | 17 | designs? |
| 08:58 | 18 | A.   Yes. |
| 08:58 | 19 | Q.   And look at No. 5.  "Are the renderings of the outfits |
| 08:58 | 20 | that we saw the confirmed outfits that you'll be |
| 08:58 | 21 | manufacturing?" |
| 08:58 | 22 | Do you see that? |
| 08:58 | 23 | A.   Yes. |
| 08:58 | 24 | Q.   So it's correct that prior to October 12 that |
| 08:58 | 25 | Mr. Linker, Ms. Hogan were given some renderings of outfits |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 08:58 | 1 | for the Bratz dolls, correct? |
| 08:58 | 2 | A.   I expect if they saw any renderings before |
| 08:58 | 3 | October 12th, they saw Carter Bryant's portfolio drawings. |
| 08:58 | 4 | Q.   If you look at -- |
| 08:58 | 5 | MR. PRICE:  Your Honor -- well -- |
| 08:58 | 6 | BY MR. PRICE: |
| 08:58 | 7 | Q.   If you would look at Exhibit 597. |
| 08:59 | 8 | *(Document provided to witness.)* |
| 08:59 | 9 | BY MR. PRICE: |
| 08:59 | 10 | Q.   Do you recognize this as an e-mail chain concerning |
| 08:59 | 11 | Mr. Linker and the packaging? |
| 08:59 | 12 | A.   Yes, I do. |
| 08:59 | 13 | MR. PRICE:  Your Honor, move Exhibit 597 in. |
| 08:59 | 14 | THE COURT:  Received. |
| 08:59 | 15 | *(Exhibit No. 597 received in evidence.)* |
| 08:59 | 16 | BY MR. PRICE: |
| 08:59 | 17 | Q.   If you look at the last part of that e-mail chain on |
| 08:59 | 18 | the second part -- I'm sorry, on the second page. |
| 08:59 | 19 | *(Document displayed.)* |
| 08:59 | 20 | BY MR. PRICE: |
| 08:59 | 21 | Q.   I should say the first part of the e-mail chain, what |
| 08:59 | 22 | got it started.  This is the e-mail that we just saw, the |
| 08:59 | 23 | one that was sent around October 12, 2000, correct? |
| 08:59 | 24 | A.   Correct. |
| 08:59 | 25 | Q.   And then if we look at the first page and the bottom |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

24

| | | |
|---|---|---|
| 08:59 | 1 | e-mail. |
| 09:00 | 2 | *(Document displayed.)* |
| 09:00 | 3 | BY MR. PRICE: |
| 09:00 | 4 | Q.   This is a responsive e-mail from you to Ms. Hogan and |
| 09:00 | 5 | Kerri Legg, Rachel Harris, and Carter Bryant.  Do you see |
| 09:00 | 6 | that? |
| 09:00 | 7 | A.   Yes, I do. |
| 09:00 | 8 | Q.   Could you tell us who Rachel is, why she's in this |
| 09:00 | 9 | e-mail? |
| 09:00 | 10 | A.   Rachel Harris was responsible for packaging and design |
| 09:00 | 11 | at MGA at the time. |
| 09:00 | 12 | Q.   And this e-mail, if we look at the second line, which |
| 09:00 | 13 | says, "I spoke with Carter, and he will only be able to come |
| 09:00 | 14 | in for a couple of hours on Monday morning." |
| 09:00 | 15 | Do you see that? |
| 09:00 | 16 | A.   Yes. |
| 09:00 | 17 | Q.   And then you say, "I want you to meet Rachel Harris, |
| 09:00 | 18 | who is our creative director."  Yes? |
| 09:00 | 19 | A.   Yes. |
| 09:00 | 20 | Q.   Now, is one of the reasons Mr. Bryant could only come |
| 09:00 | 21 | in to meet for a couple of hours on Monday morning is |
| 09:00 | 22 | because at this time he was still spending his days, most of |
| 09:01 | 23 | his days, at the Mattel design center? |
| 09:01 | 24 | A.   No.  To be clear, at this time I was not aware that |
| 09:01 | 25 | Carter was working at Mattel. |

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

25

| | | |
|---|---|---|
| 09:01 | 1 | Q.   And you never told Ms. Harris that he was coming in on |
| 09:01 | 2 | lunches and -- and when he could get away from the Mattel |
| 09:01 | 3 | design center to MGA? |
| 09:01 | 4 | A.   No. |
| 09:01 | 5 | Q.   You never told her he could get in trouble for that? |
| 09:01 | 6 | A.   No. |
| 09:01 | 7 | Q.   So was there a meeting after October 13, with you, |
| 09:01 | 8 | Carter Bryant, and Liz Hogan or Steve Linker concerning the |
| 09:01 | 9 | packaging for Bratz? |
| 09:01 | 10 | A.   I don't recall a meeting that happened after |
| 09:01 | 11 | October 13th. |
| 09:01 | 12 | Q.   You do remember at some point in October giving |
| 09:01 | 13 | Mr. Linker and Liz Hogan an envelope which contained the |
| 09:02 | 14 | same material that Mr. Bryant presented to you on |
| 09:02 | 15 | September 1st? |
| 09:02 | 16 | A.   I don't recall giving any material to Steve and to Liz. |
| 09:02 | 17 | I don't remember any of this taking place. |
| 09:02 | 18 | Q.   Let's see if Exhibit 321 helps out.  So is this an |
| 09:02 | 19 | e-mail from Liz Hogan to you, which appears to have a fax |
| 09:03 | 20 | date of October 22nd, 2005? |
| 09:03 | 21 | A.   I believe this is an e-mail that I -- |
| 09:03 | 22 | Q.   You correct me.  Go ahead. |
| 09:03 | 23 | A.   I recognize this to be an e-mail from Liz Hogan sent to |
| 09:03 | 24 | myself on Saturday, October 14th. |
| 09:03 | 25 | Q.   So the date on the e-mail is October 14th, correct? |

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

26

| | | |
|---|---|---|
| 09:03 | 1 | A.    Correct. |
| 09:03 | 2 | Q.    And there's some kind of fax header on October 22nd? |
| 09:03 | 3 | A.    Correct. |
| 09:03 | 4 | Q.    Do you know who is faxing this document to whom? |
| 09:03 | 5 | A.    No. |
| 09:03 | 6 | MR. PRICE:  Your Honor, move Exhibit 321 into |
| 09:03 | 7 | evidence. |
| 09:03 | 8 | THE COURT:  Received. |
| 09:03 | 9 | *(Exhibit No. 321 received in evidence.)* |
| 09:03 | 10 | BY MR. PRICE: |
| 09:03 | 11 | Q.    And so as of October 14, 2000 -- |
| 09:03 | 12 | MR. PRICE:  Just blow up the part.  Thank you, |
| 09:03 | 13 | Ken. |
| 09:03 | 14 | *(Document displayed.)* |
| 09:03 | 15 | BY MR. PRICE: |
| 09:03 | 16 | Q.    As of October 14, 2000, you're getting packaging |
| 09:03 | 17 | estimates for Bratz, right? |
| 09:03 | 18 | A.    From this e-mail, yes. |
| 09:03 | 19 | Q.    And if we look at the next paragraph, it says, "Paula, |
| 09:04 | 20 | the following is the estimate for the Bratz trade dress and |
| 09:04 | 21 | packaging design project." |
| 09:04 | 22 | Do you see that? |
| 09:04 | 23 | A.    Yes, I do. |
| 09:04 | 24 | Q.    So by mid-October 2000, you were getting estimates for |
| 09:04 | 25 | the trade dress and the packaging design of the project, |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

27

| | | |
|---|---|---|
| 09:04 | 1 | correct? |
| 09:04 | 2 | A.   Yes. |
| 09:04 | 3 | Q.   And then if you look at the next two pages, and |
| 09:04 | 4 | actually, starting with the bottom of the first page -- |
| 09:04 | 5 | MR. PRICE:  Sorry, Ken. |
| 09:04 | 6 | (Document displayed.) |
| 09:04 | 7 | BY MR. PRICE: |
| 09:04 | 8 | Q.   You see there are packaging estimates that are |
| 09:04 | 9 | included, including packaging small doll line.  Next page, |
| 09:04 | 10 | is that dieline? |
| 09:04 | 11 | A.   Yes. |
| 09:04 | 12 | Q.   Could you tell us what that is? |
| 09:04 | 13 | A.   A dieline is a -- it's a drawing, an engineering |
| 09:04 | 14 | drawing that identifies the overall size and shape of the |
| 09:05 | 15 | package. |
| 09:05 | 16 | Q.   And then it has Phase I and Phase II, Phase III, |
| 09:05 | 17 | correct? |
| 09:05 | 18 | A.   Yes. |
| 09:05 | 19 | Q.   And these were being discussed within MGA as of |
| 09:05 | 20 | October 14, 2000, right? |
| 09:05 | 21 | A.   I don't recall discussing them, but from the e-mail, it |
| 09:05 | 22 | seems that there was language about that on October 14th in |
| 09:05 | 23 | the context of this e-mail. |
| 09:05 | 24 | Q.   And isn't it true that on October 19th there was a |
| 09:05 | 25 | meeting at MGA concerning this proposal? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

28

| | | |
|---|---|---|
| 09:05 | 1 | A.    I don't recall that meeting. |
| 09:05 | 2 | Q.    Is it true that prior to October 19th, Carter Bryant |
| 09:05 | 3 | was meeting with Steve Linker and Liz Hogan and you to |
| 09:06 | 4 | discuss the packaging for Bratz? |
| 09:06 | 5 | A.    I don't recall meeting with Steve Linker or Liz Hogan |
| 09:06 | 6 | with Carter related to Bratz packaging. |
| 09:06 | 7 | Q.    And when you say that you don't recall, you're not |
| 09:06 | 8 | saying it didn't happen; you're just saying as a result of |
| 09:06 | 9 | time you can't say one way or the other? |
| 09:06 | 10 | A.    That's right. |
| 09:06 | 11 | Q.    Now, at this timeframe, the September/October |
| 09:06 | 12 | timeframe, isn't it correct that you were talking with |
| 09:06 | 13 | Mr. Larian and Mr. Bryant about this Bratz concept and |
| 09:06 | 14 | design becoming a brand around which MGA would create other |
| 09:06 | 15 | sorts of products, dresses and cars and things like that? |
| 09:06 | 16 | A.    Sorry.  Mr. Price, can you give me the date again or |
| 09:06 | 17 | the timeframe?  I apologize. |
| 09:06 | 18 | Q.    Sure.  In the September/October timeframe. |
| 09:06 | 19 | A.    Okay. |
| 09:06 | 20 | Q.    In fact, let's restrict it to September, just to |
| 09:07 | 21 | September. |
| 09:07 | 22 | A.    Okay. |
| 09:07 | 23 | Q.    In the September timeframe, isn't it correct that you |
| 09:07 | 24 | and Mr. Larian were talking with Mr. Bryant about this |
| 09:07 | 25 | becoming a brand, that is, something around which you could |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

29

| | | |
|---|---|---|
| 09:07 | 1 | make other things? |
| 09:07 | 2 | A.   I don't recall that.  It's -- I don't recall that. |
| 09:07 | 3 | Q.   Again, when you say you don't recall that, you mean it |
| 09:07 | 4 | could have happened, couldn't have happened; you just can't |
| 09:07 | 5 | say, correct? |
| 09:07 | 6 | A.   Correct. |
| 09:07 | 7 | Q.   And if you'd look at Exhibit 11276.  And do you |
| 09:08 | 8 | recognize the last part of that e-mail chain as an e-mail |
| 09:08 | 9 | from Mr. Larian to you, dated October 16, 2000? |
| 09:08 | 10 | A.   I recognize it to be -- oh, yes, excuse me.  Yes, I do. |
| 09:08 | 11 | MR. PRICE:  Your Honor, move Exhibit 11276 into |
| 09:08 | 12 | evidence. |
| 09:08 | 13 | THE COURT:  Received. |
| 09:08 | 14 | (Exhibit No. 11276 received in evidence.) |
| 09:08 | 15 | MR. PRICE:  Let's look at the e-mail at the |
| 09:08 | 16 | bottom, Ken. |
| 09:08 | 17 | (Document displayed.) |
| 09:08 | 18 | BY MR. PRICE: |
| 09:08 | 19 | Q.   And you say -- you see that's an e-mail from Mr. Larian |
| 09:08 | 20 | to you, dated October 15, 2000? |
| 09:08 | 21 | A.   Yes. |
| 09:08 | 22 | Q.   And it was sent to all in product development, both in |
| 09:09 | 23 | Los Angeles and in Hong Kong, correct? |
| 09:09 | 24 | A.   Yes. |
| 09:09 | 25 | Q.   With an importance of "high"? |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 09:09 | 1 | A.   Yes. |
| 09:09 | 2 | Q.   Was that something Mr. Larian would do, that he would |
| 09:09 | 3 | kind of say that it was very important or highly important |
| 09:09 | 4 | or rank the importance of e-mails? |
| 09:09 | 5 | A.   Sometimes. |
| 09:09 | 6 | Q.   And you see in the first sentence there, it says, "Yes, |
| 09:09 | 7 | it is time we brainstorm and start developing 2002 line.  We |
| 09:09 | 8 | need a very strong spring 2002 line first." |
| 09:09 | 9 | Do you see that? |
| 09:09 | 10 | A.   Yes. |
| 09:09 | 11 | Q.   And then he talks about the lines that are to be -- |
| 09:09 | 12 | that he wants to talk about, right? |
| 09:09 | 13 | A.   Yes. |
| 09:09 | 14 | Q.   And if we can look at your response, which is a little |
| 09:09 | 15 | bit higher there, the next one.  You send an e-mail to him, |
| 09:09 | 16 | dated October 16th, which is, "What about the line extension |
| 09:10 | 17 | to Bratz?" |
| 09:10 | 18 | Do you see that? |
| 09:10 | 19 | A.   Yes. |
| 09:10 | 20 | Q.   And his response is, "Yes, everything." |
| 09:10 | 21 | Do you see that? |
| 09:10 | 22 | A.   Yes. |
| 09:10 | 23 | Q.   Okay.  Now, the point of developing a brand, or one of |
| 09:10 | 24 | the points, is so that you can extend that brand to other |
| 09:10 | 25 | products, correct? |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

31

| | | |
|---|---|---|
| 09:10 | 1 | A.   Sure, yes. |
| 09:10 | 2 | Q.   And just going to a toy store -- I mean, not looking at |
| 09:10 | 3 | anything confidential or secret, by the September/October |
| 09:10 | 4 | timeframe, you had seen other toys develop brands, correct? |
| 09:10 | 5 | A.   Could you repeat the question?  I'm sorry.  I'm not |
| 09:10 | 6 | sure I understand. |
| 09:10 | 7 | Q.   Sure.  In the September/October 2000 timeframe -- |
| 09:10 | 8 | A.   Okay. |
| 09:10 | 9 | Q.   -- based just on going to stores -- |
| 09:10 | 10 | A.   Yes. |
| 09:10 | 11 | Q.   -- just public information about dolls -- |
| 09:10 | 12 | A.   Yes. |
| 09:11 | 13 | Q.   -- you had seen companies develop brands, right? |
| 09:11 | 14 | A.   Yes. |
| 09:11 | 15 | Q.   So you had seen companies develop brands where it's not |
| 09:11 | 16 | just the doll that they're -- they're selling, but they were |
| 09:11 | 17 | selling other things associated with that doll, correct? |
| 09:11 | 18 | A.   Yes. |
| 09:11 | 19 | Q.   And so, for example, as of September and October 2000, |
| 09:11 | 20 | based just on what you saw in the public with respect to |
| 09:11 | 21 | Barbie, you knew that Barbie was a brand? |
| 09:11 | 22 | A.   Yes. |
| 09:11 | 23 | Q.   And that there were, you know, Barbie cars? |
| 09:11 | 24 | A.   Yes. |
| 09:11 | 25 | Q.   And there was wardrobes for Barbie? |

| | | |
|---|---|---|
| 09:11 | 1 | A.   Yes. |
| 09:11 | 2 | Q.   And bedroom sets? |
| 09:11 | 3 | A.   Yes. |
| 09:11 | 4 | Q.   Uh, even dressing room sets? |
| 09:11 | 5 | A.   Uh, it's -- I don't recall the dressing room set, |
| 09:11 | 6 | but... |
| 09:11 | 7 | Q.   Backpacks?  You remember backpacks, Barbie backpacks? |
| 09:11 | 8 | A.   Like backpacks that girls took to school with them? |
| 09:12 | 9 | Yes. |
| 09:12 | 10 | Q.   Yeah.  Handbags? |
| 09:12 | 11 | A.   Yes. |
| 09:12 | 12 | Q.   Barbie jewelry? |
| 09:12 | 13 | A.   Yes. |
| 09:12 | 14 | Q.   And this is what you and MGA wanted to do with the |
| 09:12 | 15 | Bratz brand, correct? |
| 09:12 | 16 | A.   Yes. |
| 09:12 | 17 | Q.   And if you'd look at Exhibit 13520 -- |
| 09:12 | 18 | THE COURT:  Was that added to our list, Counsel? |
| 09:12 | 19 | MR. PRICE:  Pardon? |
| 09:12 | 20 | THE COURT:  Was that added to our list? |
| 09:12 | 21 | MR. PRICE:  No.  I believe -- I'm confirming with |
| 09:12 | 22 | Mr. McConville that that had been on the list. |
| 09:12 | 23 | THE COURT:  All right.  Thank you. |
| 09:12 | 24 | BY MR. PRICE: |
| 09:12 | 25 | Q.   And do you recognize this as a March 2001 business plan |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

33

| 09:13 | 1 | for MGA? |
| 09:13 | 2 | A.   In reading the face of the document, it appears so. |
| 09:13 | 3 | Q.   Is this -- by March -- this was dated March 2001, |
| 09:13 | 4 | correct? |
| 09:13 | 5 | A.   That's right. |
| 09:13 | 6 | THE COURT:  My apologies, Counsel, I have it. |
| 09:13 | 7 | March 2001. |
| 09:13 | 8 | BY MR. PRICE: |
| 09:13 | 9 | Q.   And as of March 2001, what was your position at MGA? |
| 09:13 | 10 | A.   I believe I was an associate product manager or a |
| 09:13 | 11 | product manager at that time. |
| 09:13 | 12 | Q.   As of this time, were you the person who was in charge |
| 09:13 | 13 | of developing the Bratz line? |
| 09:13 | 14 | A.   I was in charge of developing the product, the toy |
| 09:13 | 15 | product, for the Bratz brand. |
| 09:13 | 16 | Q.   Were you also responsible for brand management and |
| 09:13 | 17 | marketing of the Bratz line? |
| 09:13 | 18 | A.   Yes. |
| 09:13 | 19 | Q.   And so as being the person who was responsible for the |
| 09:13 | 20 | product development, the brand management, and the marketing |
| 09:14 | 21 | of the Bratz line, would this have been something that you |
| 09:14 | 22 | would have seen, which is the business plan for the brand |
| 09:14 | 23 | management and marketing of the Bratz line? |
| 09:14 | 24 | A.   Yes. |
| 09:14 | 25 | MR. PRICE:  Your Honor, move Exhibit 13520 into |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

34

| | | |
|---|---|---|
| 09:14 | 1 | evidence. |
| 09:14 | 2 | THE COURT:  Received. |
| 09:14 | 3 | *(Exhibit No. 13520 received in evidence.)* |
| 09:14 | 4 | *(Document displayed.)* |
| 09:14 | 5 | BY MR. PRICE: |
| 09:14 | 6 | Q.   And if we could look at exhibit -- or page 12, 13520, |
| 09:14 | 7 | page 12 -- |
| 09:14 | 8 | MR. PRICE:  Actually, before we do that, Ken.  I |
| 09:14 | 9 | want to clear up any confusion. |
| 09:14 | 10 | BY MR. PRICE: |
| 09:14 | 11 | Q.   It says, "ABC International Traders, Inc." |
| 09:14 | 12 | Do you see that? |
| 09:14 | 13 | A.   Yes. |
| 09:14 | 14 | Q.   Could you tell us what that name relates to? |
| 09:14 | 15 | A.   MGA. |
| 09:14 | 16 | Q.   This was a name they used before they changed their |
| 09:14 | 17 | name to MGA? |
| 09:14 | 18 | A.   Honestly, I really don't know what ABC International |
| 09:14 | 19 | Traders means in relation to MGA.  I just know that they |
| 09:14 | 20 | are -- it's connected to MGA somehow. |
| 09:15 | 21 | Q.   Okay.  And if you look at, again, page 12, you see |
| 09:15 | 22 | there's a description of you, Paula -- I'm gonna say |
| 09:15 | 23 | Garcia -- senior project manager. |
| 09:15 | 24 | If you look at the second sentence, "After graduation, |
| 09:15 | 25 | Paula worked in the sales, research, and design and |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

35

| | | |
|---|---|---|
| 09:15 | 1 | development teams for the large and small doll brand groups |
| 09:15 | 2 | at Mattel." |
| 09:15 | 3 | Do you see that? |
| 09:15 | 4 | A.   Yes. |
| 09:15 | 5 | Q.   And were you responsible for design of the large and |
| 09:15 | 6 | small doll brand groups at Mattel? |
| 09:15 | 7 | A.   No. |
| 09:15 | 8 | Q.   Or development? |
| 09:15 | 9 | A.   No.  I was responsible for the planning of the design |
| 09:15 | 10 | and development. |
| 09:15 | 11 | Q.   And could you tell us what you mean by planning? |
| 09:15 | 12 | A.   Sure.  My responsibility as a planner was to work to |
| 09:16 | 13 | create a schedule.  It was a collection of milestone dates |
| 09:16 | 14 | that each of the team members respectively would be required |
| 09:16 | 15 | to complete on time so that we could make sure that the |
| 09:16 | 16 | product gets to production on time.  And in production on |
| 09:16 | 17 | time, it means that it gets to the shelves for purchase on |
| 09:16 | 18 | time. |
| 09:16 | 19 | Q.   At the time you saw this, were you a little worried |
| 09:16 | 20 | that people might think that you designed and developed |
| 09:16 | 21 | dolls at Mattel? |
| 09:16 | 22 | A.   No.  I don't recall reading this document. |
| 09:16 | 23 | Q.   So as far as your position at MGA, you remember going |
| 09:16 | 24 | to be -- it's the last sentence there -- "responsible for |
| 09:16 | 25 | the product development, brand management, and marketing of |

| | | |
|---|---|---|
| 09:16 | 1 | Bratz," right? |
| 09:16 | 2 | A.    That's what it indicates, yes. |
| 09:16 | 3 | Q.    And that's, in fact, what you started doing, right? |
| 09:17 | 4 | A.    Yes.  And to clarify, in terms of marketing, I was a |
| 09:17 | 5 | component of marketing.  There were certainly marketeers |
| 09:17 | 6 | responsible for all marketing that happened at MGA, and I |
| 09:17 | 7 | would copartner with them as it related to my brand. |
| 09:17 | 8 | Q.    But the bottom line, you were the top person that was |
| 09:17 | 9 | going to try to create this brand, and then you would work |
| 09:17 | 10 | with other people to do that? |
| 09:17 | 11 | A.    I don't know if I was the top person.  I was certainly |
| 09:17 | 12 | the owner of the brand, absolutely, and I would work with |
| 09:17 | 13 | counterparts, who interacted with the brand to make sure |
| 09:17 | 14 | what they were doing was in line or on par with the ultimate |
| 09:17 | 15 | brand vision. |
| 09:17 | 16 | Q.    If you look at page 16, you see there's a paragraph |
| 09:17 | 17 | "unexploited opportunities." |
| 09:17 | 18 |     Do you see that? |
| 09:17 | 19 | A.    Yes. |
| 09:17 | 20 | Q.    And the second paragraph says "ABC", and that refers to |
| 09:18 | 21 | MGA, right? |
| 09:18 | 22 | A.    Yes. |
| 09:18 | 23 | Q.    "Can effectively leverage the Bratz brand by |
| 09:18 | 24 | introducing not only apparel, but accessories such as |
| 09:18 | 25 | handbags, bookbags, footwear, eyewear, headwear, jewelry, |

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

37

| | | |
|---|---|---|
| 09:18 | 1 | watches, and luggage, to name a few." |
| 09:18 | 2 | Do you see that? |
| 09:18 | 3 | A.   Yes. |
| 09:18 | 4 | Q.   And that's what you had seen in the marketplace, again, |
| 09:18 | 5 | public information that Mattel had done with Barbie, right? |
| 09:18 | 6 | A.   Sure.  As well as many other brands:  Powerpuff girls, |
| 09:18 | 7 | Hot Wheels, that kind of thing. |
| 09:18 | 8 | Q.   And if you look at the next paragraph and the second |
| 09:18 | 9 | sentence beginning there, "It is imperative that this |
| 09:18 | 10 | introduction is done simultaneously with the release of the |
| 09:18 | 11 | dolls on the shelf.  This will generate more interest in the |
| 09:18 | 12 | brand.  The only risk involved is that the Bratz dolls do |
| 09:18 | 13 | not sell-through at retail." |
| 09:19 | 14 | Do you see that? |
| 09:19 | 15 | A.   Yes. |
| 09:19 | 16 | Q.   So you understood that the ability to sell Bratz |
| 09:19 | 17 | apparel and handbags and bookbags and all of that would |
| 09:19 | 18 | depend on whether or not the dolls did well.  They were |
| 09:19 | 19 | linked, correct? |
| 09:19 | 20 | A.   The way that I read it, especially in this time period, |
| 09:19 | 21 | is that we had created Bratz themes.  And those themes would |
| 09:19 | 22 | be interchanging, coming in and out every six months.  So if |
| 09:19 | 23 | you were to license an item in relation to, not the brand, |
| 09:19 | 24 | but the theme, if the theme doesn't do well, then it might |
| 09:19 | 25 | be possible that the themed licensed goods may not sell. |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

38

| | | |
|---|---|---|
| 09:19 | 1 | Q.   Well, let me -- let's go back to the sentence.  "The |
| 09:19 | 2 | only risk involved is that the Bratz dolls do not |
| 09:19 | 3 | sell-through at retail." |
| 09:19 | 4 | Do you see that? |
| 09:19 | 5 | A.   Yes, I do. |
| 09:19 | 6 | Q.   And the Bratz dolls as of March 2001 had not been |
| 09:20 | 7 | released yet, correct? |
| 09:20 | 8 | A.   Correct. |
| 09:20 | 9 | Q.   There were prototypes that you showed at the Hong Kong |
| 09:20 | 10 | toy fair? |
| 09:20 | 11 | A.   Yes. |
| 09:20 | 12 | Q.   And it was your understanding that if the dolls don't |
| 09:20 | 13 | sell, if people aren't interested in them, then no one's |
| 09:20 | 14 | gonna care about Bratz handbags, bookbags, footwear, |
| 09:20 | 15 | eyewear, et cetera, right? |
| 09:20 | 16 | A.   Yes. |
| 09:20 | 17 | Q.   It was your view as an executive at MGA in this |
| 09:20 | 18 | timeframe that it would be inappropriate for MGA to try to |
| 09:20 | 19 | leverage a doll design idea that was the trade secret of |
| 09:21 | 20 | another company? |
| 09:21 | 21 | MR. McCONVILLE:  Objection.  Inappropriate |
| 09:21 | 22 | question as to the witness's status at the company. |
| 09:21 | 23 | THE COURT:  Overruled. |
| 09:21 | 24 | In or about 2001 with this ABC?  Or back in 2000? |
| 09:21 | 25 | Which date? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

39

| 09:21 | 1 | BY MR. PRICE: |
|-------|---|---------------|
| 09:21 | 2 | Q.   Let's start in 2000.  As of September of 2000, you knew |
| 09:21 | 3 | that it would be wrong for MGA to try to leverage something |
| 09:21 | 4 | which was a trade secret of another company, correct? |
| 09:21 | 5 | A.   Correct. |
| 09:21 | 6 | Q.   And if you'd look at Exhibit 8930. |
| 09:21 | 7 | THE COURT:  What was that number again? |
| 09:21 | 8 | MR. PRICE:  I'm asking her to look at now 8930, |
| 09:21 | 9 | Your Honor. |
| 09:22 | 10 | THE COURT:  8930? |
| 09:22 | 11 | MR. PRICE:  8930.  Yes. |
| 09:22 | 12 | THE COURT:  That should be a declaration. |
| 09:22 | 13 | MR. PRICE:  Yes, Your Honor. |
| 09:22 | 14 | THE COURT:  Thank you. |
| 09:22 | 15 | BY MR. PRICE: |
| 09:22 | 16 | Q.   Have you found that, ma'am? |
| 09:22 | 17 | A.   Yes, I have.  Thank you. |
| 09:22 | 18 | Q.   And you see 8930 is a declaration under penalty of |
| 09:22 | 19 | perjury that you signed, correct? |
| 09:22 | 20 | A.   Yes. |
| 09:22 | 21 | Q.   And -- |
| 09:22 | 22 | MR. PRICE:  Your Honor, I move 8930 into evidence. |
| 09:22 | 23 | THE COURT:  That portion's received, Counsel. |
| 09:22 | 24 | *(Exhibit No. 8930 received in evidence.)* |
|       | 25 | |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

40

| | | |
|---|---|---|
| 09:23 | 1 | BY MR. PRICE: |
| 09:23 | 2 | Q.   And so if you would look at page 3 of this, the last |
| 09:23 | 3 | page you see, is that your signature? |
| 09:23 | 4 | A.   Yes, it is. |
| 09:23 | 5 | *(Document displayed.)* |
| 09:23 | 6 | BY MR. PRICE: |
| 09:23 | 7 | Q.   Let's look at the second page.  And if you can look at |
| 09:23 | 8 | Paragraph 4, and you said, "Without question, a toy |
| 09:23 | 9 | manufacturer's unreleased concepts; i.e., those that have |
| 09:23 | 10 | not been made public, are among its most highly valuable |
| 09:23 | 11 | trade secrets.  The drawings and designs for those concepts |
| 09:23 | 12 | represent works in progress and ideas for advancing and |
| 09:23 | 13 | developing product lines.  Although such drawings and |
| 09:23 | 14 | designs are valuable even after the product's public |
| 09:23 | 15 | release, their value is enormous prior to their public |
| 09:24 | 16 | release, because it is the new ideas and designs that are |
| 09:24 | 17 | most likely to generate sales." |
| 09:24 | 18 | Do you see that? |
| 09:24 | 19 | A.   Yes. |
| 09:24 | 20 | Q.   That was your understanding in September 2000 as well, |
| 09:24 | 21 | correct? |
| 09:24 | 22 | A.   Correct. |
| 09:24 | 23 | Q.   That if a toy manufacturer had designs and concepts |
| 09:24 | 24 | that were not public and which belonged to them, that they |
| 09:24 | 25 | were trade secrets? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

41

| 09:24 | 1 | A.   Correct. |
|---|---|---|

09:24  1   A.   Correct.

09:24  2   Q.   Even if the company decided not to use those concepts

09:24  3   and designs and ideas, still trade secrets, right?

09:24  4   A.   Yes.

09:24  5   Q.   Because it wouldn't be appropriate for a competitor to

09:24  6   use the designs, the concepts, you know, that a company came

09:24  7   up with, another company came up with, right?

09:24  8   A.   Correct.

09:25  9   Q.   Now, one of the things which is a trade secret would be

09:25  10  the name for a product, a design, a new doll, correct?

09:25  11          MR. McCONVILLE:  Objection.  Calls for a legal

09:25  12  conclusion.

09:25  13          THE COURT:  Overruled.

09:25  14          You can answer the question.

09:25  15          THE WITNESS:  Yes.

09:25  16  BY MR. PRICE:

09:25  17  Q.   So, for example, prior to September 2000, you had heard

09:25  18  the name "brats," right?

09:25  19  A.   As it relates to a doll?

09:25  20  Q.   Let me rephrase.

09:25  21          Prior to September 2000, first of all, you generally

09:25  22  heard of what -- brats -- you've heard of brats, not as it

09:25  23  relates to a doll; you'd heard the name?

09:25  24  A.   Yes, I had heard the word "brats."

09:25  25  Q.   And had you heard the name "brats" related to a doll?

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB  Document 9724  Filed 01/28/11  Page 42 of 136  Page ID #:290897
CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

42

| 09:26 | 1 | A.   No. |
| 09:26 | 2 | Q.   And it would be your understanding, even in |
| 09:26 | 3 | September 2000, that if your company had come up with a doll |
| 09:26 | 4 | concept and attached the name "brats" to it, that the name |
| 09:26 | 5 | "brats" in connection with that concept would be a trade |
| 09:26 | 6 | secret? |
| 09:26 | 7 | A.   Yes. |
| 09:26 | 8 | Q.   And if you had a logo associated with a doll, then that |
| 09:26 | 9 | logo in connection with that design concept would be a trade |
| 09:26 | 10 | secret? |
| 09:26 | 11 | A.   Yes. |
| 09:26 | 12 | Q.   Even if that logo had been used by others in connection |
| 09:26 | 13 | with other things, right? |
| 09:26 | 14 | A.   I -- I don't understand. |
| 09:26 | 15 | Q.   It was a bad question. |
| 09:26 | 16 |      So even if the logo for, say, Bratz dolls had been used |
| 09:27 | 17 | in the public in connection with different dolls, or in |
| 09:27 | 18 | connection with something besides dolls, the association of |
| 09:27 | 19 | that logo with the Bratz design would be a trade secret? |
| 09:27 | 20 |           MR. McCONVILLE:  Objection.  Calls for a legal |
| 09:27 | 21 | conclusion. |
| 09:27 | 22 |           THE COURT:  Overruled. |
| 09:27 | 23 |           This is your understanding. |
| 09:27 | 24 |           THE WITNESS:  Okay.  If it's in relation to my |
| 09:27 | 25 | understanding, that's correct. |

| | | |
|---|---|---|
| 09:27 | 1 | BY MR. PRICE: |
| 09:27 | 2 | Q.   Now, let me ask you, prior to September of 2000, did |
| 09:27 | 3 | you have a lot of brand-related products associated with |
| 09:27 | 4 | Hoppity Bouncy Baby? |
| 09:27 | 5 | A.   Hoppity Bouncy Baby.  Bouncy baby was a baby.  Hoppity |
| 09:27 | 6 | Bouncy Baby was one of a number of Bouncy Babies that had |
| 09:27 | 7 | been released previously.  So Bouncy Baby was a brand. |
| 09:28 | 8 | Q.   So I think you've testified that there were, among the |
| 09:28 | 9 | products you had, was Hoppity Bouncy Baby, Singing Bouncy |
| 09:28 | 10 | Baby, My Dream Baby, right? |
| 09:28 | 11 | A.   Yes. |
| 09:28 | 12 | Q.   And do you know whether or not in connection with those |
| 09:28 | 13 | there was a 23-page business plan talking about how to |
| 09:28 | 14 | leverage those brands with handbags or bookbags or footwear |
| 09:28 | 15 | or eyewear or headwear or anything like that? |
| 09:28 | 16 | A.   I'm not aware of a document related to Bouncy Baby in |
| 09:28 | 17 | that way. |
| 09:28 | 18 | Q.   And with Bratz, though, you did all those things; that |
| 09:28 | 19 | is, you did brand extensions with cars, sleeping bags, |
| 09:28 | 20 | handbags, pets, things like that? |
| 09:28 | 21 | A.   Yes. |
| 09:28 | 22 | Q.   And if you would look at -- for example, Exhibit 13859. |
| 09:29 | 23 | Do you recognize that as an e-mail string which includes on |
| 09:29 | 24 | it you and Isaac Larian and Carter Bryant? |
| 09:29 | 25 | A.   Yes, I do. |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

44

| 09:29 | 1 | MR. PRICE:  Your Honor, I move 13859 into |
|---|---|---|
| 09:29 | 2 | evidence. |
| 09:29 | 3 | THE COURT:  Received. |
| 09:29 | 4 | *(Exhibit No. 13859 received in evidence.)* |
| 09:29 | 5 | BY MR. PRICE: |
| 09:29 | 6 | Q.   And if we look at the first part of that, meaning |
| 09:29 | 7 | actually the end part, I guess, of that e-mail string, the |
| 09:29 | 8 | one dated November 8, 2002, from Mr. Bryant, do you see that |
| 09:30 | 9 | in the second page it says, "Hi, Isaac."  And then the last |
| 09:30 | 10 | paragraph, "We're working on some ideas for pets.  Have you |
| 09:30 | 11 | see the FEPs for Slumber Party?  My only concern on pets is |
| 09:30 | 12 | that I feel unless they are an integral part of the concept, |
| 09:30 | 13 | they feel forced and seem too young." |
| 09:30 | 14 | Do you see that? |
| 09:30 | 15 | A.   Yes, I do. |
| 09:30 | 16 | Q.   So one of the ideas you had was for doing pets that was |
| 09:30 | 17 | integrated with the Bratz look, right? |
| 09:30 | 18 | A.   Pets was an extension of Bratz.  Pets were -- had -- |
| 09:30 | 19 | was created with its own look, but certainly an extension of |
| 09:30 | 20 | Bratz and Bratz's look. |
| 09:31 | 21 | Q.   And if you look at the next e-mail, and it's from |
| 09:31 | 22 | Dennis Soai? |
| 09:31 | 23 | A.   Soai. |
| 09:31 | 24 | Q.   And it's to Mr. Larian, Mr. Bryant, and you, correct? |
| 09:31 | 25 | A.   Yes. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

45

09:31   1   Q.   And, actually, I misspoke here.  Let's look at both of

09:31   2   them here.  You've got an October -- November 8th e-mail

09:31   3   from Mr. Larian to Mr. Soai and Carter Bryant and you,

09:31   4   correct?

09:31   5   A.   Yes.

09:31   6   Q.   And the last paragraph says, of that e-mail -- or

09:31   7   before "have a good weekend," says, "Pets, we must do them.

09:31   8   All the fans are asking for this as well as a talking

09:31   9   Bratz."

09:31   10      Do you see that?

09:31   11  A.   Yes.

09:31   12  Q.   And then the e-mail way, at the top, from Mr. Larian to

09:31   13  Mr. Soai and Carter Bryant and you, dated November 9, 2002,

09:31   14  you see it says, "Carter, we want the pets to look like

09:32   15  Bratz, big face, big eyes, fantasy, and not look like the

09:32   16  plush in Slumber Party.  Thanks."

09:32   17      Do you see that?

09:32   18  A.   Yes, I do.

09:32   19  Q.   If you look at 13860 --

09:32   20          THE COURT:  That's the MGA report 2003?

09:32   21          MR. PRICE:  Yes, Your Honor.

09:32   22  BY MR. PRICE:

09:32   23  Q.   Again, at this time you're in charge of Bratz, right?

09:32   24  A.   Yes.

09:32   25  Q.   And this is the type of report, a product qualitative

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9724   Filed 01/28/11   Page 46 of 136   Page ID #:290901
CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

46

| 09:32 | 1 | research, on Bratz Pets and Bratz sports that you would have |
|---|---|---|
| 09:32 | 2 | received? |
| 09:32 | 3 | A.   Yes.  Mr. Price, I wanted to be clear that I have |
| 09:33 | 4 | always been responsible for the Bratz dolls and all of the |
| 09:33 | 5 | extensions to dolls. |
| 09:33 | 6 | I was not responsible for designing and creating what |
| 09:33 | 7 | became the brand Bratz Pets.  Let's be clear. |
| 09:33 | 8 | Q.   Is this Exhibit 13860 a report you would have received? |
| 09:33 | 9 | A.   I believe I probably received this document. |
| 09:33 | 10 | I don't recall it, but I probably got it. |
| 09:33 | 11 | MR. PRICE:  Your Honor, move Exhibit 13860 into |
| 09:33 | 12 | evidence. |
| 09:33 | 13 | THE COURT:  Received. |
| 09:33 | 14 | (Exhibit No. 13860 received in evidence.) |
| 09:33 | 15 | BY MR. PRICE: |
| 09:33 | 16 | Q.   If you look at 13860, page 5, and the first section |
| 09:33 | 17 | there talks about, "There's strong indication to believe |
| 09:34 | 18 | that Bratz Pets will be another successful launch for MGA." |
| 09:34 | 19 | Do you see that? |
| 09:34 | 20 | A.   Yes. |
| 09:34 | 21 | Q.   If we look at page 9, the first bullet point says, |
| 09:34 | 22 | "reactions to the potential line of four Bratz Pets were |
| 09:34 | 23 | very favorable and generated a lot of excitement." |
| 09:34 | 24 | Do you see that? |
| 09:34 | 25 | A.   Yes. |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

47

| 09:34 | 1 | Q.   And then the first little slash there, it says, "It was |
|-------|---|---|
| 09:34 | 2 | considered to be a natural extension of Bratz dolls, similar |
| 09:34 | 3 | to what the Barbie franchise and others offer, only better." |
| 09:34 | 4 | Do you see that? |
| 09:34 | 5 | A.   Yes. |
| 09:34 | 6 | Q.   So, again, this is something that you had seen that |
| 09:34 | 7 | other brands had done; that is, one of the things they did |
| 09:34 | 8 | was pets that go with their doll, correct? |
| 09:34 | 9 | A.   Yes. |
| 09:35 | 10 | Q.   And, obviously, in doing these -- using the brand name |
| 09:35 | 11 | to do extensions of cars and pets and backpacks and jewelry, |
| 09:35 | 12 | I mean, some thought was given as to what to do and how they |
| 09:35 | 13 | should be designed, right? |
| 09:35 | 14 | A.   Yes. |
| 09:35 | 15 | Q.   But it's correct, isn't it, Ms. Garcia, that MGA would |
| 09:35 | 16 | not have had the opportunity to do these brand extensions, |
| 09:35 | 17 | these Bratz extensions without Bratz? |
| 09:35 | 18 | A.   Yes, we could not do Bratz extensions without Bratz. |
| 09:36 | 19 | Q.   If you would look at Exhibit 4507. |
| 09:36 | 20 | THE COURT:  E-mail of March 12th? |
| 09:36 | 21 | MR. PRICE:  Yes, Your Honor. |
| 09:36 | 22 | THE COURT:  Thank you. |
| 09:36 | 23 | BY MR. PRICE: |
| 09:36 | 24 | Q.   Have you seen 4507 before? |
| 09:36 | 25 | A.   Yes, I have. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

48

| | | |
|---|---|---|
| 09:36 | 1 | Q.   And that's an e-mail, it starts with "Paula" -- |
| 09:37 | 2 | rephrase that. |
| 09:37 | 3 | You're on the e-mail chain? |
| 09:37 | 4 | A.   Yes, I am. |
| 09:37 | 5 | MR. PRICE:  Your Honor, move Exhibit 4507 into |
| 09:37 | 6 | evidence. |
| 09:37 | 7 | THE COURT:  Received. |
| 09:37 | 8 | *(Exhibit No. 4507 received in evidence.)* |
| 09:37 | 9 | BY MR. PRICE: |
| 09:37 | 10 | Q.   And we look at the e-mail that starts the chain, which |
| 09:37 | 11 | is fairly long, and we can see on the first page who it's |
| 09:37 | 12 | to.  You see it's from David Dees to Carter Bryant, dated |
| 09:37 | 13 | March 9, 2002. |
| 09:37 | 14 | Do you see that? |
| 09:37 | 15 | A.   Yes, I do. |
| 09:37 | 16 | Q.   And it contains a letter that Dees wrote to Bratzworld |
| 09:37 | 17 | Club on Yahoo.  Do you see that? |
| 09:37 | 18 | A.   Yes. |
| 09:37 | 19 | Q.   And this e-mail was forwarded to you, correct? |
| 09:37 | 20 | A.   Yes, it was. |
| 09:38 | 21 | Q.   And part of the e-mail, if we go to the second page, |
| 09:38 | 22 | and the last paragraph, and this is Mr. Dees' response to a |
| 09:38 | 23 | fan writing a letter to Mr. Dees, correct? |
| 09:38 | 24 | A.   Can you repeat the question? |
| 09:38 | 25 | Q.   Sure.  What is written here is what was written by |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

49

| | | |
|---|---|---|
| 09:38 | 1 | Mr. Dees in response to a fan named Christian writing to |
| 09:38 | 2 | Mr. Dees? |
| 09:38 | 3 | A.   Yes. |
| 09:38 | 4 | Q.   And on the last paragraph there, starting with the |
| 09:38 | 5 | second sentence, it says, "However, I can't take credit for |
| 09:38 | 6 | creating the Bratz dolls, or even the first Bratz |
| 09:38 | 7 | illustrations, for that honor would go to a fellow named |
| 09:38 | 8 | Carter Bryant, who is truly a genius of fashion and the sole |
| 09:39 | 9 | and only person who first drew those great pouty lips and |
| 09:39 | 10 | that extreme look that only our heroes share." |
| 09:39 | 11 | Do you see that? |
| 09:39 | 12 | A.   Yes. |
| 09:39 | 13 | Q.   Now, when that was sent to you, you forwarded it to |
| 09:39 | 14 | Isaac Larian, correct? |
| 09:39 | 15 | A.   Yes. |
| 09:39 | 16 | Q.   And then at the top we see a March 12, 2002, e-mail |
| 09:39 | 17 | from Mr. Larian to Victoria O'Connor and you and others, |
| 09:39 | 18 | correct? |
| 09:39 | 19 | A.   Yes. |
| 09:39 | 20 | THE COURT:  Same e-mail string, Counsel? |
| 09:39 | 21 | MR. PRICE:  Yes. |
| 09:39 | 22 | THE COURT:  Still 4507? |
| 09:39 | 23 | MR. PRICE:  Yes, Your Honor. |
| 09:39 | 24 | THE COURT:  Thank you. |
| | 25 | |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

50

| | | |
|---|---|---|
| 09:39 | 1 | BY MR. PRICE: |
| 09:39 | 2 | Q.   And the first sentence says, "Victoria/Dave, who gave |
| 09:39 | 3 | David Dees info and what he does for us to this Yahoo lady |
| 09:40 | 4 | and why?" |
| 09:40 | 5 | Do you see this? |
| 09:40 | 6 | A.   Yes. |
| 09:40 | 7 | Q.   And then the last paragraph there, "Julie/Beth/Abe" -- |
| 09:40 | 8 | now, can you tell us who that's responding to? |
| 09:40 | 9 | A.   I believe that Julie was responsible to legal for MGA |
| 09:40 | 10 | at the time.  I don't recall who Beth is.  And Abe was -- if |
| 09:40 | 11 | I remember correctly, was responsible for the finance area. |
| 09:40 | 12 | It's -- I can't remember exactly.  I can only be sure of |
| 09:40 | 13 | Julie. |
| 09:40 | 14 | MR. PRICE:  Okay.  If I may have just a second. |
| 09:41 | 15 | Your Honor, Mr. McConville and I noticed that |
| 09:41 | 16 | there seems to be a redacted section on this, and there's no |
| 09:41 | 17 | objection to showing the entire thing, so I'm going to use |
| 09:41 | 18 | the entire thing on the ELMO. |
| 09:41 | 19 | THE COURT:  Thank you. |
| 09:42 | 20 | *(Document displayed.)* |
| 09:42 | 21 | MR. PRICE:  I'll put brackets around the part that |
| 09:42 | 22 | the digital copy showed as being redacted.  And after |
| 09:42 | 23 | "Julie/Beth/Abe," it says, "Please check her website ASAP. |
| 09:42 | 24 | There must be no mention about Mattel or any of their |
| 09:42 | 25 | properties, Carter, any MGA Bratz," et cetera. |

| | | |
|---|---|---|
| 09:42 | 1 | Do you see that? |
| 09:42 | 2 | A.    Yes. |
| 09:43 | 3 | Q.    Mr. Dees was an outside contractor to MGA? |
| 09:43 | 4 | A.    Yes, he was. |
| 09:43 | 5 | Q.    And after this, was he still an outside contractor to |
| 09:43 | 6 | MGA? |
| 09:43 | 7 | A.    I don't recall. |
| 09:43 | 8 | Q.    Do you recall what meta tags are? |
| 09:43 | 9 | A.    No. |
| 09:43 | 10 | Q.    Do you know there's a way that you can put information |
| 09:43 | 11 | on your website, say MGA, so that if someone searches Barbie |
| 09:43 | 12 | or Mattel or a Mattel product, say, Diva Starz, that the |
| 09:43 | 13 | search will show the MGA website? |
| 09:43 | 14 | A.    I'm -- I'm not aware that that's possible. |
| 09:44 | 15 | Q.    Do you know -- let me rephrase this. |
| 09:44 | 16 | Isn't it true that Mattel had asked MGA not to have |
| 09:44 | 17 | those sort of tags on MGA's website so that when you search |
| 09:44 | 18 | for Barbie or Mattel or Diva Starz that the search engine |
| 09:44 | 19 | would show MGA? |
| 09:44 | 20 | A.    I'm not aware of that request by Mattel. |
| 09:44 | 21 | Q.    Do you know whether or not there was -- Mr. Dees was |
| 09:44 | 22 | cut off? |
| 09:44 | 23 | A.    I don't -- I don't believe that David Dees was cut off. |
| 09:44 | 24 | I don't recall how we came to not work with him anymore. |
| 09:44 | 25 | Q.    There was a time when MGA no longer worked with Dees, |

Case 2:04-cv-09049-DOC-RNB   Document 9724   Filed 01/28/11   Page 52 of 136   Page ID #:290907
CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

52

| 09:44 | 1 | correct? |
| 09:44 | 2 | A.   Correct.  We worked with -- we started to work on |
| 09:45 | 3 | animation for our commercials, and what I remember is that |
| 09:45 | 4 | we ended up using efficiencies where the creators of the |
| 09:45 | 5 | animation for the commercials were also doing the character |
| 09:45 | 6 | art as well. |
| 09:45 | 7 | So I -- I can't remember why -- I believe in my memory |
| 09:45 | 8 | that that is why we ended up using a different group to |
| 09:45 | 9 | create our artwork. |
| 09:45 | 10 | Q.   Isn't it true that the reason Mr. Dees wasn't used was |
| 09:45 | 11 | because of this disclosure of Carter Bryant? |
| 09:45 | 12 | A.   I don't believe -- I don't remember that to be the |
| 09:45 | 13 | case. |
| 09:45 | 14 | Q.   Are you saying you can't say either way? |
| 09:45 | 15 | A.   I'm saying that I don't recall when -- when it was or |
| 09:45 | 16 | for what reasons we stopped using David Dees, but I |
| 09:45 | 17 | believe -- I -- it's my memory we stopped using David Dees |
| 09:46 | 18 | because we started working with an animation studio, who |
| 09:46 | 19 | worked on our commercials as well as the art for our |
| 09:46 | 20 | packaging. |
| 09:46 | 21 | Q.   Did MGA do collector dolls for Bratz? |
| 09:46 | 22 | A.   Yes. |
| 09:46 | 23 | Q.   And was there talk within MGA of doing a collector doll |
| 09:46 | 24 | that would have Mr. Carter Bryant's name on it? |
| 09:46 | 25 | A.   I don't recall that. |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

53

| | | |
|---|---|---|
| 09:46 | 1 | Q.   Would that be something that you would consider, |
| 09:46 | 2 | because Mr. Bryant was a good designer and he had at least |
| 09:46 | 3 | designed the artwork that we've seen -- that we saw on |
| 09:46 | 4 | Thursday? |
| 09:46 | 5 | A.   Would I consider that?  Yes. |
| 09:46 | 6 | Q.   And did you have discussions with Mr. Larian and others |
| 09:46 | 7 | about whether or not there'd be a collector doll that said |
| 09:47 | 8 | Carter Bryant was the inspiration for this, the inventor of |
| 09:47 | 9 | this, or anything like that? |
| 09:47 | 10 | A.   No. |
| 09:47 | 11 | Q.   Isn't it true, ma'am, that that was discussed within |
| 09:47 | 12 | MGA and the decision not to do it was because they wanted to |
| 09:47 | 13 | keep Carter Bryant under wraps? |
| 09:47 | 14 | A.   No. |
| 09:47 | 15 | Q.   Have you seen any communications between Mr. Larian and |
| 09:47 | 16 | others where that was said, where it was said that, you |
| 09:47 | 17 | know, we want to keep Carter Bryant under wraps, so let's |
| 09:47 | 18 | don't do a collector doll? |
| 09:47 | 19 | A.   I remember that Carter Bryant didn't want to be |
| 09:47 | 20 | disclosed or made public aware about him.  I don't know if |
| 09:47 | 21 | that was -- I don't remember it being a concern of MGA's, |
| 09:47 | 22 | and only to protect his wishes, but not for any other reason |
| 09:47 | 23 | than that. |
| 09:47 | 24 | Q.   Do you know of any communications with MGA where |
| 09:48 | 25 | someone at MGA said, "We shouldn't say that the Bratz dolls |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

54

| | | |
|---|---|---|
| 09:48 | 1 | were created in September of 2000 because someone was still |
| 09:48 | 2 | working for Mattel in September of 2000"? |
| 09:48 | 3 | A.   I don't recall that. |
| 09:48 | 4 | Q.   Let me ask you about competition between MGA and Mattel |
| 09:48 | 5 | in general. |
| 09:48 | 6 | A.   Okay. |
| 09:48 | 7 | Q.   Be fair to say it's a fairly competitive environment? |
| 09:48 | 8 | A.   Yes. |
| 09:48 | 9 | Q.   And in that competitive environment, you heard people |
| 09:48 | 10 | at MGA say things like, "We want to kill Mattel once and for |
| 09:48 | 11 | all," and "Let's kick Mattel's posterior" -- using a |
| 09:48 | 12 | different word -- and that "We're at war with Mattel"? |
| 09:48 | 13 | THE COURT:  Let's do this.  Let's agree not to |
| 09:49 | 14 | worry about the language for both sides. |
| 09:49 | 15 | MR. PRICE:  Okay. |
| 09:49 | 16 | THE COURT:  Whatever e-mails say, whatever, we'll |
| 09:49 | 17 | just give it to you as it's said. |
| 09:49 | 18 | Okay. |
| 09:49 | 19 | BY MR. PRICE: |
| 09:49 | 20 | Q.   I'll trade "posterior" for "ass." |
| 09:49 | 21 | A.   Okay. |
| 09:49 | 22 | Q.   So you're aware of that sort of language being used as |
| 09:49 | 23 | part of this competition between MGA and Mattel, correct? |
| 09:49 | 24 | A.   Yes. |
| 09:49 | 25 | Q.   And let me show you Exhibit 7052. |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

55

| | | |
|---|---|---|
| 09:49 | 1 | THE COURT:  And the number again, Counsel?  I'm |
| 09:49 | 2 | sorry. |
| 09:49 | 3 | MR. PRICE:  It's 7052, Your Honor. |
| 09:49 | 4 | THE COURT:  Okay.  That's the 4/21/2004 e-mail? |
| 09:49 | 5 | MR. PRICE:  Yes, Your Honor. |
| 09:49 | 6 | THE COURT:  Thank you. |
| 09:49 | 7 | BY MR. PRICE: |
| 09:50 | 8 | Q.   And you recognize 7052 as an e-mail string that you're |
| 09:50 | 9 | on? |
| 09:50 | 10 | A.   Yes. |
| 09:50 | 11 | MR. PRICE:  Your Honor, I move 7052 into evidence. |
| 09:50 | 12 | THE COURT:  Received. |
| 09:50 | 13 | *(Exhibit No. 7052 received in evidence.)* |
| 09:50 | 14 | *(Document displayed.)* |
| 09:50 | 15 | BY MR. PRICE: |
| 09:50 | 16 | Q.   And if you would look at the middle e-mail, it's from |
| 09:50 | 17 | Mr. Larian to you, dated April 21, 2004.  Do you see that? |
| 09:50 | 18 | A.   Yes. |
| 09:50 | 19 | Q.   And he starts with "Love ya"? |
| 09:50 | 20 | A.   Yes. |
| 09:50 | 21 | Q.   And then it says, "Position Babies against Shorties |
| 09:50 | 22 | line by line, item by item." |
| 09:50 | 23 | Do you see that? |
| 09:50 | 24 | A.   Yes. |
| 09:50 | 25 | Q.   Now, what was Shorties? |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

56

| | | |
|---|---|---|
| 09:50 | 1 | A.    Shorties was a small doll line that was -- was |
| 09:50 | 2 | manufactured by Mattel. |
| 09:51 | 3 | Q.    And then Babies was a doll line that would be |
| 09:51 | 4 | manufactured by MGA? |
| 09:51 | 5 | A.    Correct. |
| 09:51 | 6 | Q.    And then it goes on to say, "I want to kill Matt and |
| 09:51 | 7 | Bob."  Do you see that? |
| 09:51 | 8 | A.    Yes. |
| 09:51 | 9 | Q.    And do you know who "Matt" refers to? |
| 09:51 | 10 | A.    Matt Bousquette. |
| 09:51 | 11 | Q.    And could you tell us who Matt is? |
| 09:51 | 12 | A.    Matt is an employee at Mattel.  I'm not sure what his |
| 09:51 | 13 | title is.  He's a high-ranked Mattel employee. |
| 09:51 | 14 | Q.    And "Bob" refers to Bob Eckert? |
| 09:51 | 15 | A.    Yes. |
| 09:51 | 16 | Q.    Who was the head of Mattel? |
| 09:51 | 17 | A.    Yes. |
| 09:51 | 18 | Q.    And I believe your view is that there's nothing wrong |
| 09:51 | 19 | with this sort of language in the context that it's used? |
| 09:51 | 20 | A.    Correct. |
| 09:51 | 21 | Q.    And if you'd look at 8627. |
| 09:52 | 22 | THE COURT:  8627? |
| 09:52 | 23 | MR. PRICE:  Yes, Your Honor. |
| 09:52 | 24 | BY MR. PRICE: |
| 09:52 | 25 | Q.    Do you have that in front of you, ma'am? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

57

| | | |
|---|---|---|
| 09:52 | 1 | A.    Yes, I do. |
| 09:52 | 2 | Q.    And could you tell us what that is? |
| 09:52 | 3 | A.    This is an e-mail from Isaac Larian sent to myself, |
| 09:52 | 4 | Nick Contreras, and Ron Brawer. |
| 09:52 | 5 | Q.    And this is September 23, 2005? |
| 09:52 | 6 | A.    Yes. |
| 09:52 | 7 |         MR. PRICE:  Your Honor, move Exhibit 8627 into |
| 09:52 | 8 | evidence. |
| 09:52 | 9 |         THE COURT:  Received. |
| 09:52 | 10 |         *(Exhibit No. 8627 received in evidence.)* |
| 09:52 | 11 |          *(Document displayed.)* |
| 09:52 | 12 | BY MR. PRICE: |
| 09:52 | 13 | Q.    If we could see the first e-mail, the e-mail at the top |
| 09:52 | 14 | there.  You see this is sent by Mr. Larian to, among others, |
| 09:53 | 15 | you? |
| 09:53 | 16 | A.    Yes. |
| 09:53 | 17 | Q.    And the first paragraph, "Why do all the women I know |
| 09:53 | 18 | always argue with me?  My wife?  My mom?  My sisters?  My |
| 09:53 | 19 | daughter?  My girlfriends?  My secretary?"  You see that? |
| 09:53 | 20 | A.    Yes, I do. |
| 09:53 | 21 | Q.    Didn't mention you, though? |
| 09:53 | 22 | A.    No. |
| 09:53 | 23 | Q.    And then there's the paragraph, "because this is a fall |
| 09:53 | 24 | launch, and we want to kill Mattel once and for all. |
| 09:53 | 25 | Please." |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

58

| | | |
|---|---|---|
| 09:53 | 1 | Do you see that? |
| 09:53 | 2 | A.   Yes. |
| 09:53 | 3 | Q.   And, again, in the context that this -- the competitive |
| 09:53 | 4 | context in which this is said, you don't think there's |
| 09:53 | 5 | anything wrong with this type of language, correct? |
| 09:53 | 6 | A.   Correct. |
| 09:53 | 7 | Q.   And if you would look at 14655. |
| 09:53 | 8 | THE COURT:  4655? |
| 09:53 | 9 | MR. PRICE:  14655. |
| 09:54 | 10 | THE COURT:  14655? |
| 09:54 | 11 | MR. PRICE:  Yes. |
| 09:54 | 12 | THE COURT:  Thank you. |
| 09:54 | 13 | BY MR. PRICE: |
| 09:54 | 14 | Q.   Do you recognize this as an e-mail from Isaac Larian to |
| 09:54 | 15 | you, among others? |
| 09:54 | 16 | A.   Yes. |
| 09:54 | 17 | MR. PRICE:  Your Honor, move Exhibit 14655 into |
| 09:54 | 18 | evidence. |
| 09:54 | 19 | THE COURT:  What binder was that in, Counsel? |
| 09:54 | 20 | MR. PRICE:  That should be in Volume II, |
| 09:54 | 21 | Your Honor. |
| 09:54 | 22 | THE COURT:  Volume II. |
| 09:54 | 23 | MR. PRICE:  We'll bring you a -- Your Honor, if |
| 09:54 | 24 | you don't have a copy, we'll go on to the next and come back |
| 09:54 | 25 | to this. |

| | | |
|---|---|---|
| 09:54 | 1 | THE COURT: I don't see having gone over that in |
| 09:55 | 2 | Binder II with this witness. It's denied. Thank you, |
| 09:55 | 3 | Counsel. Move along now. I may be wrong. We'll go back |
| 09:55 | 4 | through my notes during the recess. If I don't have it in |
| 09:55 | 5 | my notes, it's not coming in. |
| 09:55 | 6 | BY MR. PRICE: |
| 09:55 | 7 | Q. Would you look at 8936. |
| 09:55 | 8 | THE COURT: 8936? |
| 09:55 | 9 | MR. PRICE: Yes, Your Honor. |
| 09:55 | 10 | THE COURT: Is it also in Binder II? |
| 09:55 | 11 | MR. PRICE: Yes, Your Honor. |
| 09:55 | 12 | THE COURT: Counsel, we'll move along to the next |
| 09:55 | 13 | exhibit. |
| 09:55 | 14 | MR. PRICE: Okay. |
| 09:55 | 15 | BY MR. PRICE: |
| 09:55 | 16 | Q. Ms. Garcia, you do recall communications within MGA |
| 09:55 | 17 | written by Mr. Larian that said, "We're at war with Mattel," |
| 09:55 | 18 | correct? |
| 09:55 | 19 | A. Yes. |
| 09:55 | 20 | Q. And you recall communications by Mr. Larian to you |
| 09:56 | 21 | where he said, "Let's kick Mattel's ass again, again," |
| 09:56 | 22 | correct? |
| 09:56 | 23 | A. Yes. |
| 09:56 | 24 | Q. And these are, again, the type of discussions which you |
| 09:56 | 25 | expect in a heated competitive environment? |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

60

| | | |
|---|---|---|
| 09:56 | 1 | A.   Yes. |
| 09:56 | 2 | Q.   Now, let me switch topics here and ask you about when |
| 09:56 | 3 | you were at Mattel.  Okay? |
| 09:56 | 4 | Oh, by the way.  You remember on Thursday we talked |
| 09:56 | 5 | about when you left Mattel you told them you were going to a |
| 09:56 | 6 | competitor and you had to leave that day? |
| 09:56 | 7 | A.   Yes. |
| 09:56 | 8 | Q.   And that that's a practice that MGA follows as well? |
| 09:56 | 9 | A.   Yes. |
| 09:56 | 10 | Q.   Now, even though you had to leave that day, it's |
| 09:56 | 11 | correct, is it not, that you were paid for two weeks after |
| 09:57 | 12 | that? |
| 09:57 | 13 | A.   I don't remember. |
| 09:57 | 14 | Q.   Could you look at Exhibit 20407, and this is just to |
| 09:57 | 15 | see if it refreshes your memory. |
| 09:57 | 16 | MR. QUINN:  Your Honor, this is one we discussed |
| 09:57 | 17 | later. |
| 09:57 | 18 | THE COURT:  One of the later ones that came in? |
| 09:57 | 19 | MR. QUINN:  Yes. |
| 09:57 | 20 | THE COURT:  Okay.  Thank you for refreshing my |
| 09:57 | 21 | recollection. |
| 09:57 | 22 | BY MR. PRICE: |
| 09:57 | 23 | Q.   Do you have that in front of you? |
| 09:57 | 24 | A.   Yes, I do. |
| 09:57 | 25 | Q.   I take it this isn't anything you've actually seen |

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

61

| 09:58 | 1 | before, right? |
|---|---|---|

09:58   1   before, right?

09:58   2   A.   No, I don't recall this document.

09:58   3   Q.   Sorry.   Double negative.

09:58   4        Looking at it, does this refresh your recollection as

09:58   5   to whether or not you were actually paid for two weeks after

09:58   6   you left Mattel?

09:58   7   A.   No.

09:58   8   Q.   So sitting here today, do you have a recollection one

09:58   9   way or another as to whether or not you were paid for those

09:58   10  two weeks, even though you had to leave Mattel on the day

09:58   11  that you told them that you were working for a competitor?

09:58   12  A.   No.

09:58   13       MR. PRICE:   Your Honor, would this be a convenient

09:58   14  time for a break?

09:58   15       THE COURT:   It's a convenient time.

09:58   16       Ladies and gentlemen, you're admonished not to

09:58   17  discuss this matter amongst yourselves or form or express

09:58   18  any opinion concerning the case.

09:58   19       Why don't you have about a 25-minute recess.

09:58   20  We'll come and get you probably at 25 after the hour.

09:58   21       Counsel, we'll remain in session.

09:58   22       *(Jury recesses at 9:58 a.m.)*

09:58   23       *(Outside the presence of the jury.)*

09:59   24       THE COURT:   Ms. Garcia, thank you.   You may step

09:59   25  down.

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

62

| | | |
|---|---|---|
| 09:59 | 1 | Counsel, first we're still on record.  The jury's |
| 09:59 | 2 | not present. |
| 09:59 | 3 | 8627, dated September 23rd, 2005.  I've received |
| 09:59 | 4 | it, but I don't have that in the second binder.  That wasn't |
| 09:59 | 5 | shown to the Court.  And for the record, what's occurring is |
| 09:59 | 6 | counsel's required to show the Court every exhibit.  State |
| 09:59 | 7 | every objection on Saturdays, Sundays, nights and weekends. |
| 09:59 | 8 | Now, giving it to me at this point, let's perfect |
| 09:59 | 9 | the record.  Was that shown to the Court previously?  Was it |
| 09:59 | 10 | received previously?  I could be wrong. |
| 10:00 | 11 | MR. PRICE:  It was not received previously with |
| 10:00 | 12 | another witness. |
| 10:00 | 13 | THE COURT:  Was it shown to the Court previously? |
| 10:00 | 14 | MR. PRICE:  I'm trying to find that out. |
| 10:00 | 15 | THE COURT:  Doesn't matter if it's shown at this |
| 10:00 | 16 | time, and the danger of it is this:  The first part of that |
| 10:00 | 17 | is potentially prejudicial, because that wasn't made known |
| 10:00 | 18 | to MGA, the following happens. |
| 10:00 | 19 | The last part is relevant.  The first part |
| 10:00 | 20 | about -- let me see the document. |
| 10:00 | 21 | I would want to see the document. |
| 10:00 | 22 | There's something about Mr. Larian's girlfriends. |
| 10:00 | 23 | Well, 8627, here's the danger of not showing it to the |
| 10:01 | 24 | Court.  Here's the danger of the surprise.  Here's the |
| 10:01 | 25 | danger of the opposition, whatever party it is, not knowing |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9724   Filed 01/28/11   Page 63 of 136   Page ID #:290918
CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

63

| | | |
|---|---|---|
| 10:01 | 1 | what's coming into evidence: |
| 10:01 | 2 | From Isaac Larian, "Subject:  Kids.  Why all the |
| 10:01 | 3 | women I know all argue with me?  My wife?"  That's fair |
| 10:01 | 4 | ground.  "My mom?"  Okay.  "My sisters?"  Okay.  "My |
| 10:01 | 5 | daughter?"  I'd probably allow it. |
| 10:01 | 6 | "My girlfriends?"  I would think that MGA, if they |
| 10:01 | 7 | would have known this document was coming in, would have |
| 10:01 | 8 | objected to that.  So I'm going to go over my record again. |
| 10:01 | 9 | I'm going to give you my notes.  My notes aren't |
| 10:01 | 10 | perfect.  We'll just use our recess without a bathroom |
| 10:01 | 11 | break. |
| 10:01 | 12 | I want to have head counsel, you, Ms. Keller, |
| 10:01 | 13 | stand up, please, and Mr. Price.  Whether you were present |
| 10:01 | 14 | or not, you're responsible. |
| 10:01 | 15 | Here's Volume II.  You go through my notes at the |
| 10:02 | 16 | lectern.  Volume II, now.  Go through my notes and show me |
| 10:02 | 17 | where 8627 was made known to the Court. |
| 10:02 | 18 | MR. PRICE:  Your Honor, we're talking 8627? |
| 10:02 | 19 | THE COURT:  That's the number you gave me.  The |
| 10:02 | 20 | document I have here, it says "8627." |
| 10:02 | 21 | MR. PRICE:  Your Honor, it's in your notes. |
| 10:02 | 22 | THE COURT:  It is?  Excellent.  Then I must have |
| 10:02 | 23 | missed it, and I apologize to both of you. |
| 10:02 | 24 | Thank you.  Show me where that is.  It should be |
| 10:02 | 25 | under Volume II. |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

64

| | | |
|---|---|---|
| 10:02 | 1 | MR. PRICE:  I may have called out the wrong |
| 10:02 | 2 | volume.  Let me check.  Should have been in Volume II. |
| 10:03 | 3 | MR. McCONVILLE:  It's in Volume I. |
| 10:03 | 4 | THE COURT:  It's in Volume I.  Okay.  All right. |
| 10:03 | 5 | The next one. |
| 10:03 | 6 | Thank you.  That's the Court's mistake.  It was in |
| 10:03 | 7 | the Court's notes. |
| 10:03 | 8 | The next one -- therefore, it's received.  It's |
| 10:03 | 9 | received in total. |
| 10:03 | 10 | *(Exhibit No. 8627 previously received in* |
| 10:03 | 11 | *evidence at page 57.)* |
| 10:03 | 12 | THE COURT:  The next one is 14655.  Since |
| 10:03 | 13 | counsel's doing such a good job with the thousands and |
| 10:03 | 14 | thousands of exhibits, here are my notes, find 14655 for me. |
| 10:03 | 15 | I've got it by volume as you stated.  That's why counsel |
| 10:03 | 16 | would be wise to be present on all occasions. |
| 10:04 | 17 | 14655 is in the Court's note.  It's an e-mail of |
| 10:05 | 18 | July 30th.  It's received into evidence. |
| 10:05 | 19 | *(Exhibit No. 14655 received in evidence.)* |
| 10:05 | 20 | THE COURT:  The next one is 8936; is that correct? |
| 10:05 | 21 | MR. PRICE:  Yes. |
| 10:05 | 22 | THE COURT:  Okay.  That should be February 2nd, |
| 10:05 | 23 | 2005? |
| 10:05 | 24 | MR. McCONVILLE:  Yes. |
| 10:05 | 25 | MR. PRICE:  Yes. |

| 10:05 | 1 | THE COURT:  All right.  That's received into |
| 10:05 | 2 | evidence. |
| 10:05 | 3 | (Exhibit No. 8936 received in evidence.) |
| 10:05 | 4 | THE COURT:  Now, there's an objection concerning |
| 10:05 | 5 | the drawing on the exhibit, which is marked –– you have an |
| 10:05 | 6 | e-mail that's got a drawing on it.  Nobody seems to know |
| 10:05 | 7 | where the drawing's coming from. |
| 10:06 | 8 | MR. PRICE:  That would be Exhibit 320. |
| 10:06 | 9 | THE COURT:  Okay. |
| 10:06 | 10 | Now, my simple question is this:  If it was |
| 10:06 | 11 | received by Mattel in that form, I'm going to let it into |
| 10:06 | 12 | evidence.  There's a sufficient foundation, and MGA can |
| 10:06 | 13 | explain where that drawing came from.  There's enough of a |
| 10:06 | 14 | foundation that it was received pursuant to discovery. |
| 10:06 | 15 | How did you receive it?  In other words, is Mattel |
| 10:06 | 16 | drawing on this, or is somebody at MGA, who is, |
| 10:06 | 17 | quote/unquote, unknown drawing on this? |
| 10:06 | 18 | MR. PRICE:  Your Honor, it was not received from |
| 10:06 | 19 | MGA.  It was received from Steve Linker. |
| 10:06 | 20 | THE COURT:  From Steve Linker.  Did you receive it |
| 10:06 | 21 | in that fashion? |
| 10:06 | 22 | MR. PRICE:  Yes. |
| 10:06 | 23 | THE COURT:  So we don't know if Mr. Linker's |
| 10:06 | 24 | drawing on that? |
| 10:06 | 25 | MR. PRICE:  It's my guess, because they're |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:06 | 1 | drawings of packages and he is the packaging guy. |
| 10:06 | 2 | THE COURT:  What's your question, then, concerning |
| 10:06 | 3 | this document?  In other words, you've got the e-mail in |
| 10:06 | 4 | evidence in a cleaned-up form.  Should I -- my inclination |
| 10:06 | 5 | is to take it subject to a motion to strike and let |
| 10:06 | 6 | Mr. Linker explain what the document is, and then if there's |
| 10:07 | 7 | insufficient foundation -- he has to be the drafter of this, |
| 10:07 | 8 | frankly. |
| 10:07 | 9 | MR. PRICE:  Yes. |
| 10:07 | 10 | THE COURT:  I'm going to take it subject to a |
| 10:07 | 11 | motion to strike, and you can display it. |
| 10:07 | 12 | *(Exhibit No. 320 previously received in* |
| 10:07 | 13 | *evidence at page 19.)* |
| 10:07 | 14 | THE COURT:  The next is Exhibit 20407. |
| 10:07 | 15 | Remember, for the record, counsel for both sides |
| 10:07 | 16 | have done a superb job.  Nothing comes in without me knowing |
| 10:07 | 17 | about the objections to the exhibits. |
| 10:07 | 18 | MR. PRICE:  Those were the ones that Mr. Quinn |
| 10:07 | 19 | said. |
| 10:07 | 20 | MR. QUINN:  Your Honor, you recall yesterday we |
| 10:07 | 21 | said we had a couple more we'd shown the other side, and you |
| 10:07 | 22 | said if there's no objection, I don't care about it. |
| 10:07 | 23 | THE COURT:  Have you seen those? |
| 10:07 | 24 | MR. McCONVILLE:  Right.  But she doesn't have a |
| 10:07 | 25 | foundation to get them in.  I think they're using them to |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

67

| | | |
|---|---|---|
| 10:07 | 1 | refresh her recollection. |
| 10:07 | 2 | THE COURT:  Okay.  Counsel, you have 15 minutes. |
| 10:07 | 3 | MR. QUINN:  There was an issue about the |
| 10:08 | 4 | transcript. |
| 10:08 | 5 | MR. PRICE:  The transcript. |
| 10:08 | 6 | THE COURT:  The transcript?  How much longer do |
| 10:08 | 7 | you have with this witness? |
| 10:08 | 8 | MR. PRICE:  I'm checking my outline. |
| 10:08 | 9 | THE COURT:  To the best of my recollection, I |
| 10:08 | 10 | think I have -- I'm just kidding you, Counsel. |
| 10:08 | 11 | MR. PRICE:  I actually think I only have a half an |
| 10:08 | 12 | hour.  I'm going to go through the demonstratives.  That |
| 10:08 | 13 | could take longer.  That's really -- |
| 10:08 | 14 | THE COURT:  So you need a ruling from the Court? |
| 10:08 | 15 | MR. PRICE:  If we could, Your Honor. |
| 10:08 | 16 | THE COURT:  I'll be back with you.  You now have |
| 10:08 | 17 | ten minutes. |
| 10:08 | 18 | I'll join you at ten after the hour. |
| 10:08 | 19 | *(Recess held at 10:08 a.m.)* |
| 10:12 | 20 | *(Outside the presence of the jury.)* |
| 10:19 | 21 | THE COURT:  All right.  We're back on record.  All |
| 10:19 | 22 | counsel and the parties are present. |
| 10:19 | 23 | The ruling of Court is that Mattel may use those |
| 10:19 | 24 | portions that you've designated.  And, in fact, you can go |
| 10:19 | 25 | back to, I think, it's what I call "63."  There's a section |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

68

| | | |
|---|---|---|
| 10:19 | 1 | in there to make that more complete.  And you can use, of |
| 10:19 | 2 | course, from 268, that you marked, I believe from memory, to |
| 10:19 | 3 | 272.  Now, I might be off on those changes, but each of |
| 10:19 | 4 | those seemed appropriate. |
| 10:19 | 5 | There's a stark change of answer, in what you |
| 10:19 | 6 | perceive to be signaling from counsel, and there's a variety |
| 10:19 | 7 | of explanations given throughout those three pages.  If you |
| 10:19 | 8 | chose to use them, they're appropriate under Rule 32. |
| 10:19 | 9 | MR. PRICE:  And, Your Honor, may we also read the |
| 10:19 | 10 | objections, then? |
| 10:19 | 11 | THE COURT:  You may read the objections. |
| 10:19 | 12 | MR. PRICE:  Thank you. |
| 10:19 | 13 | MR. McCONVILLE:  Your Honor, so it's the pages |
| 10:19 | 14 | that were handed up to the Court today? |
| 10:20 | 15 | THE COURT:  My ruling's clear. |
| 10:20 | 16 | Okay.  I want Ms. Garcia, please. |
| 10:24 | 17 | *(In the presence of the jury.)* |
| 10:24 | 18 | THE COURT:  All right.  We're back in session. |
| 10:24 | 19 | The jury and alternates are present. |
| 10:24 | 20 | Counsel, thank you for your courtesy.  If you |
| 10:24 | 21 | would be seated. |
| 10:24 | 22 | Outside your presence, ladies and gentlemen, 8936 |
| 10:24 | 23 | has been received by the Court.  14655.  And counsel were |
| 10:25 | 24 | absolutely right, we discussed those on the weekend. |
| 10:25 | 25 | Just so you know, once again, every single |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

69

| | | |
|---|---|---|
| 10:25 | 1 | objection, every single exhibit are being gone over by |
| 10:25 | 2 | counsel and the Court on weekends and nights, different |
| 10:25 | 3 | times when you're not in session. |
| 10:25 | 4 | Counsel, by the way, on both sides, have been |
| 10:25 | 5 | absolutely exemplary.  And they've driven the Court to new |
| 10:25 | 6 | heights 'cause of their enthusiasm on both sides for the |
| 10:25 | 7 | case. |
| 10:25 | 8 | Now, 8627 has been received.  7052.  4507 has been |
| 10:25 | 9 | received.  13860. |
| 10:25 | 10 | Now, out of your presence, there was a discussion |
| 10:25 | 11 | about 320, and I'm going to take that subject to a motion to |
| 10:25 | 12 | strike.  This apparently came from Mr. Linker to the |
| 10:25 | 13 | parties.  Mr. Linker has -- is a witness you'll see later |
| 10:25 | 14 | on.  There's a drawing on this particular e-mail.  None of |
| 10:25 | 15 | us quite know where that came from.  Neither party does. |
| 10:25 | 16 | So it's been decided outside your presence that |
| 10:26 | 17 | we're going to show that at this time with the drawing on |
| 10:26 | 18 | the e-mail.  Maybe Ms. Garcia knows. |
| 10:26 | 19 | (To the witness:)  Maybe you've never seen this |
| 10:26 | 20 | before.  I just don't know. |
| 10:26 | 21 | (To the jury:)  But that may save bringing this |
| 10:26 | 22 | witness back for what seems to be a *de minimis* amount of |
| 10:26 | 23 | testimony on one Exhibit.  If it doesn't seem to be |
| 10:26 | 24 | appropriate and we can't find out who drew -- whether it's |
| 10:26 | 25 | important or not.  We can always withdraw the exhibit later |

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

70

| | | |
|---|---|---|
| 10:26 | 1 | on. |
| 10:26 | 2 | Counsel, if you would like to proceed. |
| 10:26 | 3 | *(Direct examination continued.)* |
| 10:26 | 4 | BY MR. PRICE: |
| 10:26 | 5 | Q.   Ms. Garcia, just so we -- I want to show the exhibits |
| 10:26 | 6 | that have just been introduced into evidence so the jury |
| 10:26 | 7 | gets a chance to look at them and see if that's an e-mail |
| 10:26 | 8 | that you got. |
| 10:26 | 9 | MR. PRICE:  If we could show 8627. |
| 10:26 | 10 | *(Document displayed.)* |
| 10:27 | 11 | MR. PRICE:  Actually, I believe that one was |
| 10:27 | 12 | already in.  That's the "Kill Mattel once and for all." |
| 10:27 | 13 | So let's go to 14655. |
| 10:27 | 14 | *(Document displayed.)* |
| | 15 | BY MR. PRICE: |
| 10:27 | 16 | Q.   And this is a July 30, 2003 e-mail from Mr. Larian to, |
| 10:27 | 17 | among others, you, correct? |
| 10:27 | 18 | A.   Correct. |
| 10:27 | 19 | Q.   And he says, "Please read the attached.  Let's get |
| 10:27 | 20 | angry.  Let's show Mattel who we really are.  Let's take the |
| 10:27 | 21 | lead back.  We are not followers.  We got lazy and too |
| 10:27 | 22 | comfortable.  We need to turn the heat up again.  Let's kick |
| 10:27 | 23 | Mattel's ass again, again." |
| 10:27 | 24 | Do you see that? |
| 10:28 | 25 | A.   Yes. |

Case 2:04-cv-09049-DOC-RNB   Document 9724   Filed 01/28/11   Page 71 of 136   Page ID #:290926
CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

71

| | | |
|---|---|---|
| 10:28 | 1 | Q.   And this was said in the context of trying to be |
| 10:28 | 2 | motivating, is that your understanding? |
| 10:28 | 3 | A.   Yes. |
| 10:28 | 4 | MR. PRICE:  And then 8936. |
| 10:28 | 5 | *(Document displayed.)* |
| 08:34 | 6 | BY MR. PRICE: |
| 10:28 | 7 | Q.   And that's an e-mail from Mr. Larian to you, among |
| 10:28 | 8 | others, dated February 2nd, 2005, correct? |
| 10:28 | 9 | A.   Correct. |
| 10:28 | 10 | Q.   And it starts with, "We are at war with Mattel."  You |
| 10:29 | 11 | see that? |
| 10:29 | 12 | A.   Yes. |
| 10:29 | 13 | Q.   And again, this is something you thought was |
| 10:29 | 14 | motivating, something to rally the troops, so to speak? |
| 10:29 | 15 | A.   Yes. |
| 10:29 | 16 | MR. PRICE:  I'd like to place before Ms. Garcia |
| 10:29 | 17 | Volume I of her deposition transcript, dated May 24, 2007. |
| 10:29 | 18 | *(Document provided to the witness.)* |
| 10:29 | 19 | MR. PRICE:  If we can turn first to page 268 -- |
| 10:29 | 20 | actually, if you could turn to 263. |
| 10:30 | 21 | "QUESTION:  And this September 1st, 2000 meeting |
| 10:30 | 22 | the one we were discussing earlier, that is reflected in |
| 10:30 | 23 | this meeting notice Exhibit 301? |
| 10:30 | 24 | "ANSWER:  Correct." |
| | 25 | |

Case 2:04-cv-09049-DOC-RNB   Document 9724   Filed 01/28/11   Page 72 of 136   Page ID #:290927
CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

72

| | | |
|---|---|---|
| 10:30 | 1 | BY MR. PRICE: |
| 10:30 | 2 | Q.   Do you see that? |
| 10:30 | 3 | A.   Yes. |
| 10:30 | 4 | Q.   And if you would look at 263, 264, 265, 266 and 267. |
| 10:30 | 5 | You're being asked questions about the September 1, 2000 |
| 10:30 | 6 | meeting, correct? |
| 10:30 | 7 | A.   If I might have a minute to read it, please? |
| 10:30 | 8 | Q.   Certainly. |
| 10:31 | 9 | A.   To what page are you referring? |
| 10:31 | 10 | Q.   268, line 20.  And confirm that every question was |
| 10:31 | 11 | about the September 1, 2000 meeting. |
| 10:31 | 12 | THE COURT:  You mean page 263 and 268? |
| 10:31 | 13 | MR. PRICE:  Line 20. |
| 10:31 | 14 | BY MR. PRICE: |
| 10:31 | 15 | Q.   So every question between the portion I read, 263, line |
| 10:31 | 16 | 8, and 268, line 20, all those questions were about the |
| 10:31 | 17 | September 1, 2000 meeting, correct? |
| 10:31 | 18 | A.   Yes. |
| 10:31 | 19 | Q.   And then: |
| 10:31 | 20 | "QUESTION:  Mr. Bryant, at that time, as you understood |
| 10:32 | 21 | it, was a designer at Mattel; isn't that true?" |
| 10:32 | 22 | "MS. TORRES:  Objection.  Misstates the witness's |
| 10:32 | 23 | testimony. |
| 10:32 | 24 | "ANSWER:  "Yes." |
| | 25 | |

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

73

| | | |
|---|---|---|
| 10:32 | 1 | BY MR. PRICE: |
| 10:32 | 2 | Q.   Now let me ask you, ma'am, prior to that time in your |
| 10:32 | 3 | deposition, had you -- did you remember ever being asked |
| 10:32 | 4 | that question?  Let me rephrase it. |
| 10:32 | 5 | That was the first time in your deposition you were |
| 10:32 | 6 | asked whether, at that time, as you understood it, |
| 10:32 | 7 | Mr. Bryant was a designer at Mattel, right? |
| 10:32 | 8 | A.   Can you please repeat the question?  I'm sorry. |
| 10:32 | 9 | Q.   Sure. |
| 10:32 | 10 | That was the first time in your deposition you were |
| 10:32 | 11 | asked whether Mr. Bryant, at that time, as you understood |
| 10:32 | 12 | it, was a designer at Mattel? |
| 10:33 | 13 | A.   I don't recall if this was the first time I was asked. |
| 10:33 | 14 | Q.   That question did not misstate any testimony of yours, |
| 10:33 | 15 | did it? |
| 10:33 | 16 | A.   I believe that it's important to confirm my answer |
| 10:33 | 17 | within context.  My answer to -- |
| 10:33 | 18 | Q.   My question is, you don't recall ever being asked that |
| 10:33 | 19 | question before:  That Mr. Bryant, at the time, as you |
| 10:33 | 20 | understood it, was a designer at Mattel; isn't that true? |
| 10:33 | 21 | MR. McCONVILLE:  Objection.  Asked and answered. |
| 10:33 | 22 | THE COURT:  Overruled. |
| 10:33 | 23 | THE WITNESS:  I don't remember my deposition.  I |
| 10:33 | 24 | can't be sure if I was asked this question prior to page |
| 10:33 | 25 | 268, line 21.  But I can tell you what I meant by that |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

74

| | | |
|---|---|---|
| 10:33 | 1 | answer. |
| 10:33 | 2 | BY MR. PRICE: |
| 10:33 | 3 | Q.   Well, we have the objection "Misstates the witness's |
| 10:33 | 4 | testimony."  And you said "yes" over the objection, correct? |
| 10:33 | 5 | A.   Yes. |
| 10:33 | 6 | Q.   And you understood that your attorney, Ms. Torres, was |
| 10:34 | 7 | giving you a clue that that wasn't the answer that you were |
| 10:34 | 8 | supposed to give? |
| 10:34 | 9 | MR. McCONVILLE:  Objection.  Calls for |
| 10:34 | 10 | speculation. |
| 10:34 | 11 | THE COURT:  Overruled. |
| 10:34 | 12 | THE WITNESS:  No. |
| 10:34 | 13 | THE COURT:  Now, ladies and gentlemen, you're not |
| 10:34 | 14 | to assume that that's a fact. |
| 10:34 | 15 | In other words, we're dealing with the witness's |
| 10:34 | 16 | state of mind and what her testimony was.  That doesn't mean |
| 10:34 | 17 | that that was a signaling objection or not. |
| 11:59 | 18 | BY MR. PRICE: |
| 10:34 | 19 | Q.   So you were next asked, "When is it that you became |
| 10:34 | 20 | first aware that Mr. Bryant was working at Mattel?" |
| 10:34 | 21 | "Ms. Torres:  Objection.  Misstates the witness's |
| 10:34 | 22 | testimony and vague." |
| 10:34 | 23 | BY MR. PRICE: |
| 10:34 | 24 | Q.   Do you see that? |
| 10:34 | 25 | A.   Yes. |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

75

| | | |
|---|---|---|
| 10:34 | 1 | Q.   And then you say, "Can you please repeat the question?" |
| 10:34 | 2 | Do you see that? |
| 10:34 | 3 | A.   Yes. |
| 10:34 | 4 | Q.   The question, "When is it that you became first aware |
| 10:34 | 5 | that Mr. Bryant was working at Mattel?" |
| 10:34 | 6 | You don't find that question ambiguous, do you? |
| 10:35 | 7 | MR. McCONVILLE:  Objection.  Argumentative. |
| 10:35 | 8 | Misstates the testimony.  If this is -- I understood this |
| 10:35 | 9 | was being offered for the purpose of the prior inconsistent |
| 10:35 | 10 | statement. |
| 10:35 | 11 | THE COURT:  Yeah.  I think that -- Counsel, you |
| 10:35 | 12 | can certainly read through this and then ask questions. |
| 05:59 | 13 | BY MR. PRICE: |
| 10:35 | 14 | Q.   Let's read together, then.  "When is it that you became |
| 10:35 | 15 | first aware that Mr. Bryant was working at Mattel? |
| 10:35 | 16 | "Objection.  Misstates the witness's testimony and |
| 10:35 | 17 | vague. |
| 10:35 | 18 | "MS. GARCIA:  Can you please repeat the question? |
| 10:35 | 19 | "Sure.  Isn't it true that when you had this meeting |
| 10:35 | 20 | you've been discussing, which you reference as being the |
| 10:35 | 21 | September 1st meeting, that, by that time -- by the time |
| 10:35 | 22 | that meeting was over, you, yourself, was aware that |
| 10:35 | 23 | Mr. Bryant was employed as a designer at Mattel? |
| 10:35 | 24 | "MS. TORRES:  Same objections. |
| 10:35 | 25 | "ANSWER:  I don't mean to be difficult.  I would ask, |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

76

| | | |
|---|---|---|
| 10:35 | 1 | please, if you could rephrase your question. |
| 10:35 | 2 | "QUESTION:  What's unclear about my question? |
| 10:36 | 3 | "ANSWER:  I'm not sure how to answer the question |
| 10:36 | 4 | without being -- being rephrased. |
| 10:36 | 5 | "QUESTION:  You were at the meeting on September 19" -- |
| 10:36 | 6 | MR. PRICE:  And, Your Honor, the audio shows that |
| 10:36 | 7 | was "September 1st." |
| 10:36 | 8 | THE COURT:  I'll have to get a stipulation to |
| 10:36 | 9 | that.  That's just a speaking -- it may or may not. |
| 10:36 | 10 | MR. PRICE:  We'll talk about that. |
| 10:36 | 11 | (Continues reading:)  "-- 2000, right? |
| 10:36 | 12 | "ANSWER:  Yes. |
| 10:36 | 13 | "Mr. Bryant was present at this meeting, correct? |
| 10:36 | 14 | "ANSWER:  Yes. |
| 10:36 | 15 | "He showed you what you understood to be a |
| 10:36 | 16 | concept, at a minimum, for a doll, correct? |
| 10:36 | 17 | "ANSWER:  Yes. |
| 10:36 | 18 | "QUESTION:  In fact, it was your understanding |
| 10:36 | 19 | that the purpose of this meeting was for Mr. Bryant to |
| 10:36 | 20 | present to you a doll concept, correct? |
| 10:36 | 21 | "ANSWER:  Yes. |
| 10:36 | 22 | "QUESTION:  And in the course of that, he showed |
| 10:36 | 23 | you large color drawings of what you understood to be |
| 10:36 | 24 | representations of dolls; isn't that true? |
| 10:36 | 25 | "MS. TORRES:  Objection.  Vague.  Misstates the |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:37 | 1 | witness's testimony. |
| 10:37 | 2 | "ANSWER:  I remember them to be a -- 2D references |
| 10:37 | 3 | for a style or an attitude that could potentially be dolls. |
| 10:37 | 4 | "QUESTION:  Didn't Mr. Bryant and Veronica Marlow |
| 10:37 | 5 | express to you and the others in that meeting an interest |
| 10:37 | 6 | that these drawings be a reference for dolls? |
| 10:37 | 7 | "ANSWER:  Yes. |
| 10:37 | 8 | "QUESTION:  At some point during the meeting you |
| 10:37 | 9 | became aware that Mr. Bryant was at that time employed by |
| 10:37 | 10 | Mattel; isn't that correct? |
| 10:37 | 11 | "MS. TORRES:  Objection. |
| 10:37 | 12 | "ANSWER:  No, that's not correct. |
| 10:37 | 13 | "QUESTION:  You knew before the meeting that |
| 10:37 | 14 | Mr. Bryant was employed by Mattel; is that true? |
| 10:37 | 15 | "Objection.  Vague. |
| 10:37 | 16 | "At the time of the meeting? |
| 10:37 | 17 | "MR. ZELLER:  Yes, before the meeting. |
| 10:37 | 18 | "THE WITNESS:  Was currently at Mattel? |
| 10:37 | 19 | "QUESTION:  Was at the time that you learned about |
| 10:37 | 20 | it at Mattel? |
| 10:37 | 21 | "ANSWER:  I don't remember knowing that |
| 10:38 | 22 | information. |
| 10:38 | 23 | "Is it the case -- and let me try it this way.  At |
| 10:38 | 24 | some point, did you become aware that Carter Bryant was, as |
| 10:38 | 25 | of September 1, 2000, when you had this meeting, at that |

Case 2:04-cv-09049-DOC-RNB   Document 9724   Filed 01/28/11   Page 78 of 136   Page ID
#:290933
CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

78

| | | |
|---|---|---|
| 10:38 | 1 | point, employed by Mattel? |
| 10:38 | 2 | "ANSWER:  Yes. |
| 10:38 | 3 | "QUESTION:  When did you first become aware of that? |
| 10:38 | 4 | "ANSWER:  My memory is three years ago. |
| 10:38 | 5 | "QUESTION:  So sometime in 2004? |
| 10:38 | 6 | "ANSWER:  Approximately, yes." |
| 10:38 | 7 | BY MR. PRICE:  Now, Ms. Garcia, when you were asked, "Isn't |
| 10:38 | 8 | it true that when you had this meeting you've been |
| 10:38 | 9 | discussing, which you reference as being the September 1st, |
| 10:38 | 10 | 2000 meeting, that by that time, by the time that meeting |
| 10:38 | 11 | was over, you, yourself, was aware that Mr. Bryant was |
| 10:38 | 12 | employed as a designer at Mattel," was there something |
| 10:39 | 13 | vague -- was there something ambiguous about that question? |
| 10:39 | 14 | MR. McCONVILLE:  Objection.  Argumentative. |
| 10:39 | 15 | THE COURT:  Sustained. |
| 10:39 | 16 | BY MR. PRICE: |
| 10:39 | 17 | Q.  At the time you gave the testimony, on May 24, 2007, |
| 10:39 | 18 | isn't it true that you did not know what Mr. Larian or |
| 10:39 | 19 | Ms. O'Connor, who were at that meeting, had testified about |
| 10:39 | 20 | whether or not Mr. Bryant said at that meeting that he was a |
| 10:39 | 21 | Mattel employee? |
| 10:39 | 22 | MR. McCONVILLE:  Objection.  Compound.  It's |
| 10:39 | 23 | confusing. |
| 10:39 | 24 | THE COURT:  Overruled. |
| 10:39 | 25 | You can answer the question. |

| | | |
|---|---|---|
| 10:39 | 1 | THE WITNESS:  I'm not sure that I understand the |
| 10:39 | 2 | question. |
| 10:39 | 3 | THE COURT:  Okay.  We'll have him repeat it. |
| 10:39 | 4 | THE WITNESS:  Thank you. |
| 10:39 | 5 | THE COURT:  Counsel. |
| 10:39 | 6 | BY MR. PRICE: |
| 10:39 | 7 | Q.   At the time you testified, May 24, 2007 -- |
| 10:39 | 8 | A.   Yes. |
| 10:39 | 9 | Q.   -- isn't it true that you did not know what Mr. Larian |
| 10:39 | 10 | had testified to about whether or not Carter Bryant, at the |
| 10:40 | 11 | September 1 meeting, said he was from Mattel? |
| 10:40 | 12 | A.   I'm not aware of Isaac Larian's testimony. |
| 10:40 | 13 | Q.   And isn't it true that when you gave your testimony on |
| 10:40 | 14 | May 24, 2007, you weren't aware about what Ms. O'Connor had |
| 10:40 | 15 | testified to about whether Mr. Bryant said at that meeting |
| 10:40 | 16 | that he was an employee of Mattel? |
| 10:40 | 17 | A.   That's correct. |
| 10:40 | 18 | Q.   Now, at the September 1, 2000 meeting, the people |
| 10:40 | 19 | present were you, Mr. Bryant, Ms. O'Connor, Mr. Larian and |
| 10:40 | 20 | Jasmin, correct? |
| 10:40 | 21 | A.   Yes. |
| 10:41 | 22 | Q.   And it's your testimony that the first time you became |
| 10:41 | 23 | aware that Mr. Bryant had been a Mattel employee at the time |
| 10:41 | 24 | of the meeting was three years later, sometime in 2004? |
| 10:41 | 25 | A.   That's right. |

Case 2:04-cv-09049-DOC-RNB   Document 9724   Filed 01/28/11   Page 80 of 136   Page ID #:290935
CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

80

| | | |
|---|---|---|
| 10:41 | 1 | Q.   Now, you believed that, if you had known that |
| 10:41 | 2 | Mr. Bryant was a Mattel employee as of September 1, 2000, |
| 10:41 | 3 | and was bringing you drawings -- was bringing you these |
| 10:41 | 4 | designs, you knew that you should make some kind of inquiry |
| 10:42 | 5 | about whether -- "Are those your employer's?"  "When did you |
| 10:42 | 6 | do them?"  Right? |
| 10:42 | 7 | MR. McCONVILLE:  Asked and answered on Thursday. |
| 10:42 | 8 | THE COURT:  I'll let you reask the question.  You |
| 10:42 | 9 | may be absolutely right, Counsel.  I just don't recall, and |
| 10:42 | 10 | I apologize. |
| 10:42 | 11 | You can reask it. |
| 12:59 | 12 | BY MR. PRICE: |
| 10:42 | 13 | Q.   September 2000 -- |
| 10:42 | 14 | A.   Yes. |
| 10:42 | 15 | Q.   -- your belief was that -- if a designer from a |
| 10:42 | 16 | competitor came to you with designs, your belief was you |
| 10:42 | 17 | should have some kind of inquiry to that person: |
| 10:42 | 18 | "Are these your employer's?" |
| 10:42 | 19 | "When did you get 'em?" |
| 10:42 | 20 | "When did you do 'em?"  Correct? |
| 10:42 | 21 | A.   No, not necessarily.  In the context of that meeting, |
| 10:42 | 22 | it didn't come up.  It was not something I asked.  I was |
| 10:42 | 23 | more focused on the content of his portfolio. |
| 10:43 | 24 | Q.   My question was different. |
| 10:43 | 25 | You've told us you didn't know until 2004 that he was |

| | | |
|---|---|---|
| 10:43 | 1 | an employee at Mattel, as of the time of the meeting, |
| 10:43 | 2 | correct? |
| 10:43 | 3 | A.   Correct. |
| 10:43 | 4 | Q.   If you had known, at the September 1st, 2000 meeting, |
| 10:43 | 5 | that Carter Bryant worked for a competitor, Mattel, and came |
| 10:43 | 6 | to you with these designs, your belief was you should have |
| 10:43 | 7 | made some kind of inquiry, right? |
| 10:43 | 8 | A.   Had I known at that time that he was an employee at |
| 10:43 | 9 | that time of the September 1st meeting? |
| 10:43 | 10 | Q.   Yes, yes. |
| 10:43 | 11 | A.   Yes. |
| 10:43 | 12 | Q.   And you knew it wouldn't be enough just to ask him. |
| 10:43 | 13 | You had to do something else, right? |
| 10:43 | 14 | MR. McCONVILLE:  Objection.  Improper |
| 10:43 | 15 | hypothetical. |
| 10:43 | 16 | THE COURT:  Yeah.  It's -- Counsel, you can reask |
| 10:44 | 17 | the question.  It's a proper area. |
| 10:44 | 18 | Sustain the objection. |
| 10:44 | 19 | MR. PRICE:  Let me reask it. |
| | 20 | BY MR. PRICE: |
| 10:44 | 21 | Q.   If at any time you had known that he was an employee of |
| 10:44 | 22 | Mattel and was bringing you these designs and that you |
| 10:44 | 23 | should have made an inquiry, your belief is that you should |
| 10:44 | 24 | have done something more in that situation than just ask |
| 10:44 | 25 | him? |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

82

| | | |
|---|---|---|
| 10:44 | 1 | MR. McCONVILLE:  Same objection. |
| 10:44 | 2 | THE COURT:  Overruled. |
| 10:44 | 3 | You can answer it. |
| 10:44 | 4 | It was asked. |
| 10:44 | 5 | You can answer. |
| 10:44 | 6 | THE WITNESS:  If you're speaking for me or on |
| 10:44 | 7 | behalf of me, my answer, I mean, in terms of my |
| 10:44 | 8 | responsibility, um, no, I wouldn't even necessarily -- no. |
| 10:44 | 9 | BY MR. PRICE: |
| 10:44 | 10 | Q.   Let me talk about your understanding as to what MGA |
| 10:44 | 11 | should have done. |
| 10:44 | 12 | At that time you were an associate product planner? |
| 10:44 | 13 | A.   Product manager. |
| 10:45 | 14 | Q.   I'm sorry.  And you told us you believe there should |
| 10:45 | 15 | have been some sort of inquiry. |
| 10:45 | 16 | Are you telling us that that would not have been your |
| 10:45 | 17 | job to do that? |
| 10:45 | 18 | A.   It wouldn't have been my job to seek specific |
| 10:45 | 19 | information about the details of when he created those |
| 10:45 | 20 | drawings. |
| 10:45 | 21 | Q.   But, as you told us, someone should have done that if |
| 10:45 | 22 | they knew he was a Mattel employee at the time, correct? |
| 10:45 | 23 | A.   Do you mean specific to that particular meeting? |
| 10:45 | 24 | Q.   That they should have made an inquiry, if they knew he |
| 10:45 | 25 | was from Mattel, about where the drawings came from, whether |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

83

| | | |
|---|---|---|
| 10:45 | 1 | they belonged to Mattel, et cetera? |
| 10:45 | 2 | A.   I believe that, at some point, MGA should have done due |
| 10:45 | 3 | diligence to qualify Carter Bryant's confirmation to us on |
| 10:46 | 4 | where he created or when he created the drawings. |
| 10:46 | 5 | Q.   And your belief is that it wouldn't be enough just to |
| 10:46 | 6 | ask Carter Bryant, right? |
| 10:46 | 7 | MR. McCONVILLE:  Objection.  Asked and answered. |
| 10:46 | 8 | THE COURT:  Overruled. |
| 10:46 | 9 | You can answer that question. |
| 10:46 | 10 | THE WITNESS:  First, I believe that we should be |
| 10:46 | 11 | able to rely on whatever Carter Bryant tells MGA.  But it |
| 10:46 | 12 | may be -- it may be also appropriate to -- MGA to question |
| 10:46 | 13 | or challenge that information after the September 1st |
| 10:46 | 14 | meeting. |
| 10:46 | 15 | THE COURT:  Let me remind the jury.  This is |
| 10:46 | 16 | simply her subjective opinion. |
| 10:46 | 17 | Whether this applies to MGA or to Larian, this is |
| 10:46 | 18 | for you to decide later, amongst many issues. |
| 10:46 | 19 | Counsel. |
| 09:09 | 20 | BY MR. PRICE: |
| 10:46 | 21 | Q.   You began your answer by saying it would be enough for |
| 10:47 | 22 | MGA to relay on Carter Bryant. |
| 10:47 | 23 | So let me ask you, when you told us before that your |
| 10:47 | 24 | belief is that MGA should have made some sort of inquiry, if |
| 10:47 | 25 | it knew that Carter Bryant was from Mattel when he presented |

| | | |
|---|---|---|
| 10:47 | 1 | these designs, are you telling us it's your belief that the |
| 10:47 | 2 | only inquiry necessary would be to ask Mr. Bryant, "So, do |
| 10:47 | 3 | these belong to Mattel?"  "When did you do them?" |
| 10:47 | 4 | That's the only inquiry that MGA should have done? |
| 10:47 | 5 | MR. McCONVILLE:  Objection.  Compound, vague. |
| 10:47 | 6 | THE COURT:  Do you understand the question? |
| 10:47 | 7 | THE WITNESS:  Yes, I do. |
| 10:47 | 8 | THE COURT:  All right.  You may answer it. |
| 10:47 | 9 | THE WITNESS:  As just mentioned, I believe that, |
| 10:47 | 10 | in addition to hopefully relying on the truths or the |
| 10:47 | 11 | information that Carter Bryant provided MGA, it's also |
| 10:47 | 12 | appropriate to follow -- to confirm what we hope was his -- |
| 10:48 | 13 | or to confirm his information. |
| 10:48 | 14 | BY MR. PRICE: |
| 10:48 | 15 | Q.   So this next step, then, do you have an opinion on, at |
| 10:48 | 16 | that point, whether it's sufficient just to ask Carter |
| 10:48 | 17 | Bryant's attorney whether Carter Bryant told him the same |
| 10:48 | 18 | thing? |
| 10:48 | 19 | MR. McCONVILLE:  Objection.  Relevance. |
| 10:48 | 20 | THE COURT:  I'm going to sustain the objection, |
| 10:48 | 21 | Counsel.  You'll have other witnesses testifying to that. |
| 10:48 | 22 | This is beyond her -- the scope, I think. |
| 10:48 | 23 | MR. PRICE:  Okay. |
| 10:48 | 24 | BY MR. PRICE: |
| 10:48 | 25 | Q.   Ma'am, I'd like you to look at the pictures we showed |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

85

| | | |
|---|---|---|
| 10:48 | 1 | of the Hong Kong toy fair. |
| 10:48 | 2 | A.   Okay. |
| 10:48 | 3 | Q.   I think that's Exhibit 911, which is already in |
| 10:48 | 4 | evidence. |
| 10:49 | 5 | *(Document displayed.)* |
| 05:59 | 6 | BY MR. PRICE: |
| 10:49 | 7 | Q.   I think you've told us the purpose of this toy fair was |
| 10:49 | 8 | to get buyers interested, to kind of sell the -- these |
| 10:49 | 9 | dolls? |
| 10:49 | 10 | A.   Yes. |
| 10:49 | 11 | THE COURT:  And for the jury, both counsel agreed |
| 10:49 | 12 | over the weekend -- they brought in additional screens so |
| 10:49 | 13 | that you can better see the exhibits.  Both counsel have |
| 10:49 | 14 | agreed to put that up. |
| 10:49 | 15 | Thank you. |
| 10:49 | 16 | BY MR. PRICE: |
| 10:49 | 17 | Q.   It's fair to say that, in showing these, you weren't |
| 10:49 | 18 | trying to mislead the buyers in any way, correct? |
| 10:49 | 19 | A.   No. |
| 10:49 | 20 | Q.   I might have asked a double negative. |
| 10:49 | 21 | In selling these at the Hong Kong toy fair, was it your |
| 10:49 | 22 | intent to mislead the buyers in any way? |
| 10:49 | 23 | A.   No. |
| 10:49 | 24 | Q.   You were trying to show them the products as they would |
| 10:50 | 25 | eventually be sold to these buyers, correct? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

86

| | | |
|---|---|---|
| 10:50 | 1 | A.   It was our intent to show what we had most complete at |
| 10:50 | 2 | this point of this show. |
| 10:50 | 3 | Q.   And if you look at -- I think it's page 4 -- you see |
| 10:50 | 4 | there's a picture over the dolls which says "Bratz."  And |
| 10:50 | 5 | it's of the four Bratz characters. |
| 10:50 | 6 | Do you see that? |
| 10:50 | 7 | A.   Yes, I do. |
| 10:50 | 8 | MR. PRICE:  And, Ken, can we blow that up a bit. |
| 10:50 | 9 | (Technician complies.) |
| 10:50 | 10 | BY MR. PRICE: |
| 10:50 | 11 | Q.   And this picture was on all of the Bratz packages, |
| 10:50 | 12 | right? |
| 10:50 | 13 | A.   Yes. |
| 10:50 | 14 | Q.   Now, if we do look at -- |
| 10:51 | 15 | MR. PRICE:  And I don't know if it's possible to |
| 10:51 | 16 | put them side by side, Ken -- |
| 10:51 | 17 | BY MR. PRICE: |
| 10:51 | 18 | Q.   -- Exhibit 302, which is the packages -- the packet of |
| 10:51 | 19 | drawings, which Carter Bryant provided to you sometime |
| 10:51 | 20 | around September 1st of 2000? |
| 10:51 | 21 | A.   Yes. |
| 10:51 | 22 | (Document displayed.) |
| | 23 | BY MR. PRICE: |
| 10:51 | 24 | Q.   And you see the first page of that has four characters, |
| 10:51 | 25 | correct? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

87

| | | |
|---|---|---|
| 10:51 | 1 | A.   It has four characters. |
| 10:51 | 2 | Q.   And if we -- |
| 10:51 | 3 | MR. PRICE:  Can we put that side by side, Ken?  Is |
| 10:51 | 4 | it hard to blow up? |
| 10:51 | 5 | *(Technician complies.)* |
| 10:51 | 6 | BY MR. PRICE: |
| 10:52 | 7 | Q.   If you look at the poses -- look at the far left pose |
| 10:52 | 8 | on the Bratz. |
| 10:52 | 9 | Far left pose is about the same, correct? |
| 10:52 | 10 | A.   Yes. |
| 10:52 | 11 | Q.   And if you look at the middle pose -- so which |
| 10:52 | 12 | character was far left? |
| 10:52 | 13 | A.   Well, in the Hong Kong toy fair show graphic, that |
| 10:52 | 14 | character is Yasmin.  And in the bottom graphic that |
| 10:52 | 15 | character is Lupe. |
| 10:52 | 16 | Q.   And part of the idea was that you could change the hair |
| 10:52 | 17 | on these dolls, correct? |
| 10:52 | 18 | A.   Well, that was represented in the portfolio drawings. |
| 10:52 | 19 | Q.   And part of the idea was you could change the fashion, |
| 10:52 | 20 | right?  Different clothes? |
| 10:52 | 21 | A.   Yes. |
| 10:52 | 22 | Q.   And so to the far left character, on what you were |
| 10:52 | 23 | given by Carter Bryant in September of 2000, what was shown |
| 10:52 | 24 | to the buyers was about the same pose, right? |
| 10:53 | 25 | MR. McCONVILLE:  Objection.  Relevance. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:53 | 1 | THE COURT:  Overruled. |
| 10:53 | 2 | THE WITNESS:  Yes.  It was the same -- similar |
| 10:53 | 3 | pose. |
| | 4 | BY MR. PRICE: |
| 10:53 | 5 | Q.   And then if you take two in from the right -- from the |
| 10:53 | 6 | left -- I'm sorry.  The second one in from the left, the |
| 10:53 | 7 | hair is different, correct? |
| 10:53 | 8 | A.   Yes. |
| 10:53 | 9 | Q.   But the pose, how does that compare? |
| 10:53 | 10 | MR. McCONVILLE:  Same objection. |
| 10:53 | 11 | THE COURT:  Overruled. |
| 10:53 | 12 | THE WITNESS:  They are similar. |
| 10:53 | 13 | BY MR. PRICE: |
| 10:53 | 14 | Q.   And then, if we look at the third from the left, and if |
| 10:53 | 15 | we can -- |
| 10:53 | 16 | MR. PRICE:  Is there some way we can actually blow |
| 10:53 | 17 | up these -- the third from left, and third from left. |
| 10:53 | 18 | *(Technician complies.)* |
| 10:53 | 19 | BY MR. PRICE: |
| 10:53 | 20 | Q.   So those blowups are the ones we just talked about.  So |
| 10:54 | 21 | let's look at the third from left. |
| 10:54 | 22 | *(Document displayed.)* |
| 10:54 | 23 | MR. PRICE:  Thank you, Ken.  That's great. |
| | 24 | BY MR. PRICE: |
| 10:54 | 25 | Q.   And the third from the left is pretty much the same |

| | | |
|---|---|---|
| 10:54 | 1 | pose as well, correct? |
| 10:54 | 2 | MR. McCONVILLE:  Same objection. |
| 10:54 | 3 | THE COURT:  No.  Overruled. |
| 10:54 | 4 | But I'm gonna make certain that the jury sees, |
| 10:54 | 5 | eventually, the entire composite, once again.  This isn't |
| 10:54 | 6 | argument. |
| 10:54 | 7 | MR. PRICE:  Yes. |
| 10:54 | 8 | THE COURT:  So you'll display the entire |
| 10:54 | 9 | composite, including the fourth one, in just a moment. |
| 10:54 | 10 | So overruled. |
| 10:54 | 11 | You can continue, Counsel. |
| 10:54 | 12 | BY MR. PRICE: |
| 10:54 | 13 | Q.   Do you see that? |
| 10:54 | 14 | A.   Yes, I do.  But they are -- they are different, these |
| 10:54 | 15 | two. |
| 10:54 | 16 | Q.   Well, the one that's third from the right has like a |
| 10:54 | 17 | similar skirt, doesn't she? |
| 10:54 | 18 | A.   They are both blue dresses, but there are differences. |
| 10:54 | 19 | Q.   And similar shoes? |
| 10:54 | 20 | A.   No.  They are different shoes. |
| 10:54 | 21 | Q.   And the same kind of pose, right? |
| 10:54 | 22 | A.   No.  Different poses. |
| 10:55 | 23 | The image on the right, which was his portfolio |
| 10:55 | 24 | drawing, she has her hand in her pocket, I believe -- either |
| 10:55 | 25 | that or on her hip.  And the other hand is extended up.  And |

Case 2:04-cv-09049-DOC-RNB   Document 9724   Filed 01/28/11   Page 90 of 136   Page ID #:290945
CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

90

| 10:55 | 1 | in the version at the Hong Kong show graphic both hands were |
| 10:55 | 2 | up. |
| 10:55 | 3 | THE COURT:  Would you please stand for just a |
| 10:55 | 4 | moment.  When you say, "the image on the right," I want to |
| 10:55 | 5 | make certain that there's no misunderstanding.  Just point |
| 10:55 | 6 | to the screen so the jury sees. |
| 10:55 | 7 | THE WITNESS:  The image on the right is what I |
| 10:55 | 8 | referred to.  (Indicates.) |
| 10:55 | 9 | THE COURT:  So what you referred to as the |
| 10:55 | 10 | "portfolio poses"? |
| 10:55 | 11 | THE WITNESS:  Yes. |
| 10:55 | 12 | THE COURT:  Thank you very much. |
| 10:55 | 13 | Let's make sure that the jury's -- 'cause we're |
| 10:55 | 14 | looking at it reversed. |
| 10:55 | 15 | THE WITNESS:  Sure. |
| 10:55 | 16 | THE COURT:  Counsel. |
| 10:55 | 17 | BY MR. PRICE: |
| 10:55 | 18 | Q.   Then let's go out to the fourth, as well. |
| 10:55 | 19 | *(Document displayed.)* |
| 10:55 | 20 | BY MR. PRICE: |
| 10:55 | 21 | Q.   And the fourth from the right has similar facial |
| 10:55 | 22 | expressions and -- and pose, both, what you represented to |
| 10:55 | 23 | the public at Hong Kong and what Carter Bryant gave you on |
| 10:55 | 24 | September 1, 2000? |
| 10:56 | 25 | MR. McCONVILLE:  Objection.  Relevance. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

91

| | | |
|---|---|---|
| 10:56 | 1 | THE COURT:  Overruled. |
| 10:56 | 2 | THE WITNESS:  Yes. |
| 10:56 | 3 | MR. PRICE:  And so let's see if we can show all |
| 10:56 | 4 | four, then, in the same -- maybe one top, one bottom. |
| 10:56 | 5 | *(Technician complies.)* |
| 10:56 | 6 | *(Documents displayed.)* |
| | 7 | BY MR. PRICE: |
| 10:56 | 8 | Q.   So that's the four that were in Mr. Bryant's portfolio, |
| 10:56 | 9 | and the four as seen in Hong Kong on that big poster, and on |
| 10:56 | 10 | all the Bratz packaging at the time, correct? |
| 10:56 | 11 | A.   That's correct. |
| 10:56 | 12 | Q.   And Carter Bryant did the fashions that were on the |
| 10:56 | 13 | board; that is, that were in the Hong Kong toy fair, |
| 10:56 | 14 | correct? |
| 10:56 | 15 | MR. McCONVILLE:  Objection.  Vague. |
| 10:56 | 16 | THE COURT:  Overruled. |
| 10:56 | 17 | THE WITNESS:  Do you mean that he drew them? |
| 10:56 | 18 | BY MR. PRICE: |
| 10:56 | 19 | Q.   Yes. |
| 10:56 | 20 | A.   Correct. |
| 10:57 | 21 | Q.   And in the process of staying true to Carter Bryant's |
| 10:57 | 22 | vision that he presented to you, what you ended up with on |
| 10:57 | 23 | the packaging at the toy fair was the drawing on the top |
| 10:57 | 24 | there? |
| 10:57 | 25 | THE COURT:  Do you understand the question? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

92

| | | |
|---|---|---|
| 10:57 | 1 | THE WITNESS:  (No audible response.) |
| 10:57 | 2 | THE COURT:  Reask the question. |
| 10:57 | 3 | MR. PRICE:  Yes. |
| 10:57 | 4 | BY MR. PRICE: |
| 10:57 | 5 | Q.   If we look at the drawing on the top, which is |
| 10:57 | 6 | Exhibit 911 -- or a blowup of that -- that was presented at |
| 10:57 | 7 | the Hong Kong toy fair. |
| 10:57 | 8 | Are you with me so far? |
| 10:57 | 9 | A.   Yes. |
| 10:57 | 10 | Q.   Okay.  In trying to stay true to Carter Bryant's |
| 10:57 | 11 | vision, that is what you put on all the packages and what |
| 10:57 | 12 | you put in this poster at the Hong Kong toy fair, correct? |
| 10:57 | 13 | A.   It is the graphic we put on our packaging and in our |
| 10:58 | 14 | graphic in our toy fair showroom, though these drawings, |
| 10:58 | 15 | while some similarities, have big differences from his |
| 10:58 | 16 | portfolio that we -- so we tried to stay true to his |
| 10:58 | 17 | portfolio drawing, but there were some differences. |
| 10:58 | 18 | Q.   In doing the best you could, staying true to Carter |
| 10:58 | 19 | Bryant's vision, this -- what we see in Exhibit 911 -- is |
| 10:58 | 20 | what you came up with, right? |
| 10:58 | 21 | A.   Correct.  This is the result of correcting some of the |
| 10:58 | 22 | problems in Carter Bryant's portfolio. |
| 10:58 | 23 | Q.   If you had never seen Carter Bryant's portfolio and |
| 10:58 | 24 | learned of his vision, you never would have come up with the |
| 10:58 | 25 | drawing we see on 911 with the four Bratz characters, |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

93

| | | |
|---|---|---|
| 10:58 | 1 | correct? |
| 10:58 | 2 | A.   Correct. |
| 10:59 | 3 | Q.   Now I'm gonna put before you -- or I'm not, Ms. Juarez |
| 10:59 | 4 | is -- Drawing 302-B, as well as what's been marked as a |
| 10:59 | 5 | demonstrative as 23797-001. |
| 11:00 | 6 | MR. PRICE:  And, Ms. Juarez, this was discussed |
| 11:00 | 7 | yesterday.  It may not be in the binder. |
| 11:00 | 8 | MS. JUAREZ:  Yeah, I don't believe it is. |
| 11:00 | 9 | MR. PRICE:  Your Honor, may we approach with the |
| 11:00 | 10 | demonstrative? |
| 11:00 | 11 | THE COURT:  You may. |
| 11:00 | 12 | *(Document provided to the witness.)* |
| 11:00 | 13 | BY MR. PRICE: |
| 11:00 | 14 | Q.   So do you have 302 in front of you? |
| 11:00 | 15 | A.   Is there a particular page in 302? |
| 11:00 | 16 | Q.   Yes.  If you could look at 302-0005.  And do you see |
| 11:00 | 17 | that? |
| 11:00 | 18 | A.   Yes, I do. |
| 11:00 | 19 | Q.   And if you'd look at the demonstrative, 23797-001, do |
| 11:00 | 20 | you see at the far left a blowup of the face and the upper |
| 11:01 | 21 | torso of -- let's see the name -- of Cloe or Zoe.  Sorry. |
| 11:01 | 22 | Zoe? |
| 11:01 | 23 | A.   Yes. |
| 11:01 | 24 | THE COURT:  Does everybody want to stipulate that |
| 11:01 | 25 | this is Zoe? |

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

94

| | | |
|---|---|---|
| 11:01 | 1 | MR. McCONVILLE:  Yes. |
| 11:01 | 2 | THE COURT:  Okay.  This is Zoe. |
| | 3 | BY MR. PRICE: |
| 11:01 | 4 | Q.   And if you look at Drawing 1109, I'm gonna ask you to |
| 11:01 | 5 | compare that to the middle panel in the demonstrative. |
| 11:01 | 6 | Do you see 1109 as Mr. Bryant's drawing? |
| 11:01 | 7 | A.   Yes. |
| 11:01 | 8 | Q.   And if you'd look at Exhibit 12286, which is the doll. |
| 11:01 | 9 | *(Exhibit provided to the witness.)* |
| 11:01 | 10 | BY MR. PRICE: |
| 11:01 | 11 | Q.   And that's the Cloe doll? |
| 11:01 | 12 | A.   Yes, it is. |
| 11:02 | 13 | Q.   And do you recognize the panel on the right as being a |
| 11:02 | 14 | picture of the face of that doll? |
| 11:02 | 15 | A.   Yes, I do. |
| 11:02 | 16 | I apologize.  I misunderstood. |
| 11:02 | 17 | MR. PRICE:  In that case, Your Honor, if we could |
| 11:02 | 18 | display 23797-001? |
| 11:02 | 19 | THE COURT:  You may. |
| 11:02 | 20 | *(Document displayed.)* |
| 11:02 | 21 | BY MR. PRICE: |
| 11:02 | 22 | Q.   And so we're clear, then, the far left is the drawing |
| 11:02 | 23 | that was in Mr. Bryant's portfolio, correct? |
| 11:02 | 24 | A.   Yes, it was. |
| 11:02 | 25 | Q.   The drawing in the middle is a -- that's a final |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

95

| | | |
|---|---|---|
| 11:02 | 1 | fashion drawing that Mr. Bryant did, correct? |
| 11:02 | 2 | A.   It was a drawing that was created for the purposes of a |
| 11:02 | 3 | sales meeting.  There -- most of the fashion is represented |
| 11:02 | 4 | as final, correct. |
| 11:02 | 5 | Q.   And then the one on the far right is Exhibit 12286, |
| 11:02 | 6 | which is the doll as it was sold in 2001, correct? |
| 11:02 | 7 | A.   Correct. |
| 11:03 | 8 | MR. PRICE:  Your Honor, would this be a good time |
| 11:03 | 9 | for the break?  Lunch break? |
| 11:03 | 10 | THE COURT:  No, Counsel. |
| 11:03 | 11 | MR. McCONVILLE:  It's only 11:00. |
| 11:03 | 12 | MR. PRICE:  Oh.  What am I doing? |
| 11:03 | 13 | THE COURT:  (To the jury:) By the time they're |
| 11:03 | 14 | done, the nights will fade into day; the days will fade into |
| 11:03 | 15 | night.  Counsel, by the way, for both parties are working |
| 11:03 | 16 | extraordinarily hard. |
| 11:03 | 17 | MR. PRICE:  So let's go through the -- so going by |
| 11:03 | 18 | the Court's time and the real time, not what's on my watch. |
| 11:03 | 19 | THE COURT:  Okay. |
| 11:03 | 20 | BY MR. PRICE: |
| 11:03 | 21 | Q.   Let's look at the drawing in 302, at 302-011. |
| 11:03 | 22 | *(Cell phone rings.)* |
| 11:03 | 23 | THE COURT:  Was that my first cell phone going |
| 11:03 | 24 | off? |
| 11:04 | 25 | Good.  Give it to me. |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

96

| | | |
|---|---|---|
| 11:04 | 1 | Just pass it up -- Mr. McConville -- or whoever. |
| 11:04 | 2 | Thank you. |
| 11:04 | 3 | Counsel, please continue. |
| 11:04 | 4 | BY MR. PRICE: |
| 11:04 | 5 | Q.   If you look at the demonstrative, which is 23797, |
| 11:04 | 6 | page 2, is the left -- far left panel a blowup of one of the |
| 11:04 | 7 | drawings in Mr. Bryant's portfolio in 302? |
| 11:04 | 8 | A.   Yes, it was. |
| 11:04 | 9 | *(Document displayed.)* |
| 11:04 | 10 | BY MR. PRICE: |
| 11:04 | 11 | Q.   And if you'd look at drawing 1107, is that the drawing |
| 11:04 | 12 | of one of these final fashions? |
| 11:04 | 13 | A.   Yes. |
| 11:04 | 14 | THE COURT:  Counsel, do you want to stipulate who |
| 11:05 | 15 | that preliminary drawing is of, so there's no confusion for |
| 11:05 | 16 | the jury? |
| 11:05 | 17 | MR. McCONVILLE:  Sure. |
| 11:05 | 18 | MR. PRICE:  Jade. |
| 11:05 | 19 | MR. McCONVILLE:  Jade. |
| 11:05 | 20 | THE COURT:  Jade. |
| 11:05 | 21 | THE WITNESS:  Jade. |
| 11:59 | 22 | BY MR. PRICE: |
| 11:05 | 23 | Q.   And the middle panel, that's a blowup of that upper |
| 11:05 | 24 | part of her head? |
| 11:05 | 25 | A.   Yes. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

97

| | | |
|---|---|---|
| 11:05 | 1 | Q.   And if you look at Exhibit 504, that's the Jade doll, |
| 11:05 | 2 | correct? |
| 11:05 | 3 | A.   Yes, it is. |
| 11:05 | 4 | Q.   And the photo on the far right in the demonstrative |
| 11:05 | 5 | exhibit is a blowup of that, correct? |
| 11:05 | 6 | A.   Yes. |
| 11:05 | 7 | MR. PRICE:  And if we may display the |
| 11:05 | 8 | demonstrative to the jury. |
| 11:05 | 9 | *(Document displayed.)* |
| 11:05 | 10 | BY MR. PRICE: |
| 11:05 | 11 | Q.   So the far left is part of Mr. Bryant's portfolio, |
| 11:05 | 12 | correct? |
| 11:05 | 13 | A.   Yes. |
| 11:05 | 14 | Q.   The middle is the final fashion drawing he did, |
| 11:05 | 15 | correct? |
| 11:05 | 16 | A.   Yes. |
| 11:05 | 17 | Q.   And on the right you see the actual doll that was sold |
| 11:06 | 18 | in 2001, correct? |
| 11:06 | 19 | A.   Yes. |
| 11:06 | 20 | THE COURT:  That would be 504? |
| 11:06 | 21 | MR. PRICE:  Yes, Your Honor. |
| 11:06 | 22 | THE COURT:  Thank you. |
| 11:06 | 23 | BY MR. PRICE: |
| 11:06 | 24 | Q.   The next one I'd like to show you, it's not in evidence |
| 11:06 | 25 | yet, Exhibit 17558.  It's one of the dolls. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

98

| | | |
|---|---|---|
| 11:06 | 1 | Is that the Sasha doll? |
| 11:06 | 2 | A.   Yes, it is. |
| 11:06 | 3 | Q.   The one that was sold in 2001? |
| 11:06 | 4 | A.   Yes, it is. |
| 11:06 | 5 | MR. PRICE:  Your Honor, move 17558 into evidence. |
| 11:06 | 6 | THE COURT:  Any objection? |
| 11:06 | 7 | MR. McCONVILLE:  No objection. |
| 11:06 | 8 | THE COURT:  Received. |
| 11:06 | 9 | *(Exhibit No. 17558 received in evidence.)* |
| 11:06 | 10 | BY MR. PRICE: |
| 11:06 | 11 | Q.   And look at the demonstrative, if you could, ma'am. |
| 11:06 | 12 | It's page 3 of 23797. |
| 11:06 | 13 | And do you see that the picture on the far right is a |
| 11:07 | 14 | picture of the head of that doll, 17558? |
| 11:07 | 15 | A.   Yes. |
| 11:07 | 16 | Q.   And if you would look at the middle and compare that to |
| 11:07 | 17 | 1108, is that a picture of the head of Mr. Bryant's final |
| 11:07 | 18 | fashion drawings? |
| 11:07 | 19 | *(Document displayed.)* |
| 11:07 | 20 | THE WITNESS:  Yes. |
| 11:07 | 21 | Mr. Price, if you don't mind, the reference to |
| 11:07 | 22 | "final fashion drawings," the way that I remember this |
| 11:07 | 23 | middle image is actually a drawing for our -- for a sales |
| 11:07 | 24 | meeting.  If -- I don't -- there may be differences.  I |
| 11:07 | 25 | don't, in my mind, remember this to be the final fashion |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

99

| 11:07 | 1 | drawing, if you will. |
|---|---|---|
| | 2 | BY MR. PRICE: |
| 11:07 | 3 | Q.   How would you like me to refer to it for now? |
| 11:07 | 4 | A.   Like a sales drawing. |
| 11:07 | 5 | Q.   Okay.  And then on the far left, that's one of the |
| 11:07 | 6 | drawings that was in Carter Bryant's portfolio that you saw |
| 11:07 | 7 | on September 1, 2000, correct? |
| 11:07 | 8 | A.   Correct. |
| 11:08 | 9 | MR. PRICE:  You can put up 23797, page 3. |
| 11:08 | 10 | THE COURT:  23 -- |
| 11:08 | 11 | MR. PRICE:  It's the demonstrative, Your Honor, |
| 11:08 | 12 | that we've been using. |
| 11:08 | 13 | THE COURT:  And the number is 23797.  Thank you. |
| 11:08 | 14 | MR. PRICE:  Yes. |
| 11:08 | 15 | *(Document displayed.)* |
| 11:08 | 16 | BY MR. PRICE: |
| 11:08 | 17 | Q.   So the left is the portfolio drawing; the right is the |
| 11:08 | 18 | drawing for the trade -- for a pitch -- the middle.  I'm |
| 11:08 | 19 | sorry -- and the right is the actual doll itself, right? |
| 11:08 | 20 | A.   Correct. |
| 11:08 | 21 | Q.   Now, when we're talking about 1107, 1108, 1109, 1110 |
| 11:09 | 22 | it's correct, is it not, that the fashions in those drawings |
| 11:09 | 23 | are the fashions that were used on the actual dolls? |
| 11:09 | 24 | A.   Yes.  They were one -- one of the two outfits that were |
| 11:09 | 25 | sold with the doll. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

100

| 11:09 | 1 | Q.   So they were one of the two final fashion drawings? |
| 11:09 | 2 | A.   Correct. |
| 11:09 | 3 | Q.   If you'd look at 17561.  That's a doll. |
| 11:09 | 4 | *(Doll provided to witness.)* |
| 11:09 | 5 | BY MR. PRICE: |
| 11:09 | 6 | Q.   And tell us, is that the Yasmin doll? |
| 11:09 | 7 | A.   Yes, it is. |
| 11:09 | 8 | Q.   And now if you'd look at 23797, page 4. |
| 11:09 | 9 | *(Document provided to witness.)* |
| 11:10 | 10 | MR. PRICE:  Your Honor, I move Exhibit 17561, the |
| 11:10 | 11 | doll, into evidence. |
| 11:10 | 12 | THE COURT:  Received. |
| 11:10 | 13 | *(Exhibit No. 17561 received in evidence.)* |
|  | 14 | BY MR. PRICE: |
| 11:10 | 15 | Q.   So the far right, that's a picture of the actual doll |
| 11:10 | 16 | that was sold, correct? |
| 11:10 | 17 | A.   Yes. |
| 11:10 | 18 | Q.   And the middle, TX1110, is part of the –– one of two |
| 11:10 | 19 | final fashion drawings, correct? |
| 11:10 | 20 | A.   It is a drawing of one of two fashions sold on the |
| 11:10 | 21 | doll, yes. |
| 11:10 | 22 | Q.   And the far left is Carter Bryant's drawing in the |
| 11:10 | 23 | pitch book? |
| 11:10 | 24 | A.   Yes. |
| 11:10 | 25 | MR. PRICE:  So if we could put up the |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

101

| | | |
|---|---|---|
| 11:10 | 1 | demonstrative, 23797, page 4. |
| 11:10 | 2 | (Document displayed.) |
| 11:59 | 3 | BY MR. PRICE: |
| 11:10 | 4 | Q.   So, if you'd notice on these three, they all have that |
| 11:10 | 5 | little beauty mark under the left eye, correct? |
| 11:11 | 6 | A.   Yes, they do. |
| 11:11 | 7 | Q.   The hair is different, correct? |
| 11:11 | 8 | A.   Yes. |
| 11:11 | 9 | MR. PRICE:  And, Ken, can you blow up to show the |
| 11:11 | 10 | beauty mark on the doll. |
| 11:11 | 11 | THE COURT:  Counsel, we couldn't hear you. |
| 11:11 | 12 | MR. PRICE:  Sorry.  I was asking Mr. Kotarski if |
| 11:11 | 13 | he could blow up the three to show the beauty mark. |
| 11:11 | 14 | THE COURT:  Thank you. |
| 11:11 | 15 | (Technician complies.) |
| 11:11 | 16 | MR. PRICE:  Now it looks like a blemish. |
| 11:11 | 17 | If you could blow up the first one as well, the |
| 11:11 | 18 | one from 302. |
| 11:11 | 19 | (Technician complies.) |
| 11:59 | 20 | BY MR. PRICE: |
| 11:11 | 21 | Q.   Now, if you could look at 12286. |
| 11:12 | 22 | A.   Yes. |
| 11:12 | 23 | Q.   And that's the Cloe doll, right? |
| 11:12 | 24 | A.   Yes, it is. |
| 11:12 | 25 | Q.   And if you'd look at Exhibit 323 at page 32.  And is |

Case 2:04-cv-09049-DOC-RNB   Document 9724   Filed 01/28/11   Page 102 of 136   Page ID #:290957
CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

102

| | | |
|---|---|---|
| 11:13 | 1 | that one of Mr. Bryant's drawings? |
| 11:13 | 2 | A.   Yes, it is. |
| 11:13 | 3 | Q.   Now, if you'd look at page 6 of 23797.  And on the |
| 11:13 | 4 | right -- on the right, is that the Cloe doll -- taken out of |
| 11:13 | 5 | the box, obviously -- and the clothes off? |
| 11:13 | 6 | A.   Yes, it is. |
| 11:13 | 7 | Q.   And could these dolls be -- I don't know if the word's |
| 11:13 | 8 | "articulated."  Could they be moved into different poses? |
| 11:13 | 9 | A.   Yes. |
| 11:13 | 10 | MR. PRICE:  So let's put up the demonstrative |
| 11:13 | 11 | 23797, page 6. |
| 11:13 | 12 | (Document displayed.) |
| 11:13 | 13 | BY MR. PRICE: |
| 11:13 | 14 | Q.   And so, on the right, this is the Cloe doll that was |
| 11:14 | 15 | sold in 2001; and on the left is Mr. Bryant's drawing, |
| 11:14 | 16 | correct? |
| 11:14 | 17 | A.   Yes, it was. |
| 11:14 | 18 | I'd like to be clear, though, that these dolls, the |
| 11:14 | 19 | manufactured dolls, could not be posed in the drawing like |
| 11:14 | 20 | the drawing on the left. |
| 11:14 | 21 | Q.   You mechanically couldn't do the hands down? |
| 11:14 | 22 | A.   Not as produced, no. |
| 11:14 | 23 | Q.   So what you could do was the hands out, as in the |
| 11:14 | 24 | right -- picture on the right, which is Exhibit 12286? |
| 11:14 | 25 | A.   You could -- because of her joint here, you could |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

103

| | | |
|---|---|---|
| 11:14 | 1 | rotate her this way.  *(Indicating.)*  But you couldn't bend |
| 11:14 | 2 | here, or bend here at the wrist, as drawn in Exhibit 323. |
| 11:15 | 3 | Q.   If you look at 12286, could you put the hand in that |
| 11:15 | 4 | position? -- of the doll that was sold. |
| 11:15 | 5 | A.   Yes.  You could put the hand in the same position that |
| 11:15 | 6 | Exhibit 12286 represents. |
| 11:15 | 7 | Q.   Now, if you look at the doll again, 12286, and look at |
| 11:15 | 8 | the shoes? |
| 11:15 | 9 | A.   Yes. |
| 11:15 | 10 | Q.   Look at 23797-007, is that a picture of one of the |
| 11:15 | 11 | shoes on the doll? -- on the right-hand side. |
| 11:15 | 12 | A.   Yes, it is. |
| 11:15 | 13 | Q.   And if you look at Mr. Bryant's portfolio that he gave |
| 11:15 | 14 | to you on September 1st, which is Exhibit 302, do you |
| 11:15 | 15 | recognize that as one of the drawings of Cloe? -- as kind of |
| 11:16 | 16 | a close up of the boot, I guess. |
| 11:16 | 17 | A.   Sorry.  Are you referring to 302-B, Mr. Price? |
| 11:16 | 18 | Q.   Yes.  The one on the left. |
| 11:16 | 19 | A.   One on the left. |
| 11:16 | 20 | I can't remember where this drawing is and so, |
| 11:16 | 21 | therefore -- I can't remember this particular drawing and, |
| 11:16 | 22 | therefore, who -- who was wearing 'em. |
| 11:16 | 23 | *(Document provided to witness.)* |
| 11:16 | 24 | THE WITNESS:  Okay.  Got it.  Thank you. |
| 11:16 | 25 | Could you ask the question again? |

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

104

| | | |
|---|---|---|
| 11:16 | 1 | BY MR. PRICE: |
| 11:16 | 2 | Q.   Sure.  I believe it's 302-0011. |
| 11:16 | 3 | A.   Thank you. |
| 11:16 | 4 | *(Document displayed.)* |
| 11:16 | 5 | BY MR. PRICE: |
| 11:16 | 6 | Q.   You see that as -- the picture on the left of the |
| 11:16 | 7 | demonstrative, is -- |
| 11:16 | 8 | A.   Yes, thank you. |
| 11:16 | 9 | Q.   -- is those shoes kind of blown up? |
| 11:16 | 10 | A.   Yes. |
| 11:16 | 11 | MR. PRICE:  Let's do 23797-007. |
| 11:17 | 12 | (Document displayed.) |
| 11:17 | 13 | BY MR. PRICE: |
| 11:17 | 14 | Q.   And so that's a side-by-side comparison of the doll and |
| 11:17 | 15 | Mr. Bryant's drawing in his portfolio, correct? |
| 11:17 | 16 | A.   Yes. |
| 11:17 | 17 | Q.   Now, if you'd look at Exhibit 504, that's the Jade |
| 11:17 | 18 | doll?  Having you juggle dolls here. |
| 11:17 | 19 | *(Doll provided to witness.)* |
| 11:17 | 20 | THE WITNESS:  Okay. |
| 11:17 | 21 | BY MR. PRICE: |
| 11:17 | 22 | Q.   And if you'd look at 23797, number 8. |
| 11:17 | 23 | *(Document displayed.)* |
| 11:17 | 24 | BY MR. PRICE: |
| 11:17 | 25 | Q.   Is the picture on the right of that demonstrative one |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:17 | 1 | of the shoes that comes with the Jade doll? |
| 11:17 | 2 | A.   I believe that it is the same style, but wrong skin |
| 11:17 | 3 | tone and wrong shoe color. |
| 11:18 | 4 | Q.   And the doll itself? |
| 11:18 | 5 | A.   Yes.  It's silver here.  And the image -- I hope I'm |
| 11:18 | 6 | looking at the right exhibit.  504 is purple. |
| 11:18 | 7 | Q.   And underneath her -- what's she wearing? |
| 11:18 | 8 | A.   She's wearing tennis shoes. |
| 11:18 | 9 | Q.   All right.  We'll come back to that. |
| 11:18 | 10 | So the doll itself has silver? |
| 11:18 | 11 | A.   The doll itself is sold with a second pair of shoes |
| 11:18 | 12 | which are silver. |
| 11:18 | 13 | Q.   So if you looked at 23797, on the left-hand side, where |
| 11:18 | 14 | you see a drawing from Mr. Bryant's portfolio -- do you see |
| 11:18 | 15 | that? |
| 11:18 | 16 | A.   Yes. |
| 11:18 | 17 | Q.   And that -- the shoes on that are kind of white, right? |
| 11:18 | 18 | A.   Yes. |
| 11:18 | 19 | Q.   And you're saying that, in the demonstrative, if we |
| 11:18 | 20 | looked on the right, it should be silver rather than purple, |
| 11:19 | 21 | right? |
| 11:19 | 22 | A.   Well, in comparing the two, Exhibit 302-B and 504, |
| 11:19 | 23 | those shoes are not the same shoes. |
| 11:19 | 24 | Q.   Okay.  If you'd look at 17558. |
| 11:19 | 25 | *(Doll provided to the witness.)* |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

106

| | | |
|---|---|---|
| 11:19 | 1 | BY MR. PRICE: |
| 11:19 | 2 | Q.   Isn't that the Sasha doll? |
| 11:19 | 3 | A.   Yes, it is. |
| 11:19 | 4 | MR. PRICE:  Your Honor, move Exhibit 17558 into |
| 11:19 | 5 | evidence. |
| 11:19 | 6 | THE COURT:  Received. |
| 11:19 | 7 | *(Exhibit No. 17558 previously received in* |
| 11:19 | 8 | *evidence at page 98.)* |
| | 9 | BY MR. PRICE: |
| 11:19 | 10 | Q.   If you look at the demonstrative 23797-009.  Got it? |
| 11:19 | 11 | If you look at the photographs on the right-hand side, |
| 11:20 | 12 | in the middle, in the right, do those appear to be photos of |
| 11:20 | 13 | the doll, 17558? |
| 11:20 | 14 | A.   Yes, it does. |
| 11:20 | 15 | Q.   And if you look at the far left, does that appear to be |
| 11:20 | 16 | a photograph of one of -- actually, it's 302-0004 -- or does |
| 11:20 | 17 | it appear to be part of the portfolio of Mr. Bryant? |
| 11:20 | 18 | A.   You mentioned -- the far left appears to be an image |
| 11:20 | 19 | that was included in Carter Bryant's portfolio drawing. |
| 11:20 | 20 | MR. PRICE:  Show 23797-009. |
| 11:20 | 21 | *(Document displayed.)* |
| 11:20 | 22 | BY MR. PRICE: |
| 11:20 | 23 | Q.   Now, on the far right, it shows that you can remove the |
| 11:20 | 24 | shoe from the leg, correct? |
| 11:20 | 25 | A.   Yes. |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

107

| 11:20 | 1 | Q.   And if you look at Mr. Bryant's drawing in 302-004, it |
| 11:20 | 2 | shows how you can do that, right? -- how you can "move" the |
| 11:21 | 3 | shoes. |
| 11:21 | 4 | A.   Yes. |
| 11:21 | 5 | Q.   Now, in his drawing, the little nub is on the shoe |
| 11:21 | 6 | rather than on the leg, right? |
| 11:21 | 7 | A.   Yes. |
| 11:21 | 8 | Q.   And in what was sold in 2001, the nub that attaches to |
| 11:21 | 9 | the shoe is on the leg itself? |
| 11:21 | 10 | A.   Correct. |
| 11:21 | 11 | Q.   And the other thing that shows on 302-B, the far left |
| 11:21 | 12 | one, is at that time he had the concept of doing either dark |
| 11:21 | 13 | hair or light hair with Sasha, right? -- as -- you could |
| 11:21 | 14 | change them out? |
| 11:21 | 15 | A.   I don't -- it was always my understanding that |
| 11:21 | 16 | Exhibit 302 was not a drawing to represent Sasha or even an |
| 11:21 | 17 | African-American character. |
| 11:21 | 18 | Q.   My question was about the hair. |
| 11:21 | 19 |      You see on the far left? |
| 11:21 | 20 | A.   Yes, I do. |
| 11:21 | 21 | Q.   You could change the -- you could change the hair in |
| 11:21 | 22 | his drawings? |
| 11:21 | 23 | A.   His drawings represent a feature where you can exchange |
| 11:22 | 24 | or remove hair, yes. |
| 11:22 | 25 | Q.   For the -- you testified earlier about -- about the |

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

108

| 11:22 | 1 | sculpt that was used for Bratz? |
| 11:22 | 2 | A.   Yes. |
| 11:22 | 3 | Q.   And was there a face sculpt -- a sculpt of the face? |
| 11:22 | 4 | A.   Yes, there was. |
| 11:22 | 5 | Q.   And was the same face used in terms of -- in terms of |
| 11:22 | 6 | the shape and proportions on all of the first generation |
| 11:22 | 7 | Bratz dolls? |
| 11:22 | 8 | A.   Yes.  I believe there was only maybe one difference |
| 11:22 | 9 | that might have been a small change in the mouth area:  An |
| 11:22 | 10 | open mouth versus closed mouth among the four characters. |
| 11:22 | 11 | But without -- separate of that, everything was the same. |
| 11:22 | 12 | Q.   On the first dolls that were produced, that first |
| 11:22 | 13 | generation? |
| 11:22 | 14 | A.   Yes. |
| 11:22 | 15 | Q.   Did some have open mouths, some closed? |
| 11:23 | 16 | A.   It's -- it's my memory that maybe the open and closed |
| 11:23 | 17 | mouth may have been part of the first generation. |
| 11:23 | 18 | Q.   In the pictures that you've seen -- I'm sorry -- in the |
| 11:23 | 19 | dolls that you've seen in front of you as Jade, Cloe, Sasha, |
| 11:23 | 20 | and Yasmin, the lips are all closed, right? |
| 11:23 | 21 | A.   Jade and Cloe have closed mouths, and Sasha and Yasmin |
| 11:23 | 22 | have what we refer to as "open mouth." |
| 11:23 | 23 |      There's a -- |
| 11:23 | 24 | Q.   So just so we're on the same page -- |
| 11:23 | 25 | A.   Yes. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

109

| | | |
|---|---|---|
| 11:23 | 1 | Q.   So if we look at 23797, page 4, that's Yasmin? |
| 11:24 | 2 | A.   Two, three -- yes. |
| 11:24 | 3 | Exhibit 17561?  The one on the far right? |
| 11:24 | 4 | Q.   Yeah.  The one on the far right. |
| 11:24 | 5 | A.   Yes. |
| 11:24 | 6 | Q.   And just so we're on the same page here, that is what |
| 11:24 | 7 | you define as an "open mouth"? |
| 11:24 | 8 | A.   Yes.  If you look at the bottom lip, you'll notice |
| 11:24 | 9 | there's sort of a -- a removal of material, almost like it |
| 11:24 | 10 | dips down.  That is what we refer to as an open mouth, |
| 11:24 | 11 | meaning that her lips sort of -- there was a removal of |
| 11:24 | 12 | material between the top and bottom lips. |
| 11:24 | 13 | Q.   Okay.  If we can blow up that far right, just so we |
| 11:24 | 14 | know what you're talking about. |
| 11:24 | 15 | *(Display zoomed.)* |
| 11:24 | 16 | BY MR. PRICE: |
| 11:24 | 17 | Q.   So that's what you're talking about, that little -- |
| 11:25 | 18 | A.   Yeah. |
| 11:25 | 19 | Q.   -- it's hard -- yeah, that's not gonna look good for |
| 11:25 | 20 | the record. |
| 11:25 | 21 | But blowing up 17561, the picture, that's what you're |
| 11:25 | 22 | talking about when you say "open mouth"? |
| 11:25 | 23 | A.   Yes. |
| 11:25 | 24 | Q.   None were opened as they were on the group drawings? |
| 11:25 | 25 | A.   Um -- |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:25 | 1 | Q.   If you look at Exhibit 302, the first page, you know, |
| 11:25 | 2 | the group photo, some of those have more open mouths? |
| 11:25 | 3 | A.   They do, but in a very different way than the |
| 11:25 | 4 | manufactured Bratz. |
| 11:25 | 5 | Q.   And if we look at Exhibit 504, on the box, you see |
| 11:26 | 6 | there's a picture there of the four Bratz girls? |
| 11:26 | 7 | A.   Yes, I do. |
| 11:26 | 8 | Q.   And if you look at 23797, page 10, is the drawing on |
| 11:26 | 9 | the right the drawing that's on 504 of the four girls? |
| 11:26 | 10 | A.   Yes, it is. |
| 11:26 | 11 | Q.   So if you look at 23797, 10 -- so the one on the left |
| 11:26 | 12 | is the original artwork design that Mr. Bryant showed you in |
| 11:26 | 13 | his portfolio; and the one on the right is the picture |
| 11:26 | 14 | that's on these first generation dolls, their boxes, |
| 11:26 | 15 | correct? |
| 11:26 | 16 | A.   Correct. |
| 11:27 | 17 | Q.   So in fact, if you'd look at 23797-11, you can |
| 11:27 | 18 | recognize, on the left, Mr. Bryant's portfolio, and on the |
| 11:27 | 19 | right a blow-up of the four Bratz girls that's contained on |
| 11:27 | 20 | the actual boxes in the first generation, correct? |
| 11:27 | 21 | A.   Correct. |
| 11:27 | 22 | MR. PRICE:  We can put up 23797-11. |
| 11:27 | 23 | *(Document displayed.)* |
| 11:27 | 24 | BY MR. PRICE: |
| 11:27 | 25 | Q.   And this is the same -- the one that's on the box is |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:27 | 1 | the same that we saw at the Hong Kong toy fair? |
| 11:27 | 2 | A.   Yes, it is.  I'll just represent the background color |
| 11:27 | 3 | was different on -- but, yes, absolutely, the characters |
| 11:27 | 4 | were the same. |
| 11:28 | 5 | Q.   Now, these characters also had mascots or logos -- I'll |
| 11:28 | 6 | call them "logos" -- associated -- a different one |
| 11:28 | 7 | associated with each character, correct? |
| 11:28 | 8 | A.   In the manufactured Bratz? |
| 11:28 | 9 | Q.   On the boxes -- |
| 11:28 | 10 | A.   Yeah. |
| 11:28 | 11 | Q.   -- of the manufactured Bratz. |
| 11:28 | 12 | A.   Yes. |
| 11:28 | 13 | Q.   And so, for example, Yasmin, if you look at 17561 -- |
| 11:28 | 14 | actually, if you look at the box on that, there's kind of a |
| 11:28 | 15 | logo up on the top. |
| 11:28 | 16 |      Do you see it? |
| 11:28 | 17 | A.   Yes. |
| 11:28 | 18 | Q.   And that looks like a frog-type character with a crown |
| 11:28 | 19 | on it? |
| 11:28 | 20 | A.   Yes. |
| 11:29 | 21 | Q.   And if you look at their portfolio, which is 302-006, |
| 11:29 | 22 | you see on the handbag there's also that logo?  It looks |
| 11:29 | 23 | like a frog with a crown on it? |
| 11:29 | 24 | A.   Well, they are both frogs with crowns on them.  There |
| 11:29 | 25 | are some differences. |

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

112

| | | |
|---|---|---|
| 11:29 | 1 | Q.   Yes.  But the idea of the frog with a crown on its head |
| 11:29 | 2 | was part of Mr. Bryant's portfolio in September 1, 2001, |
| 11:29 | 3 | correct? |
| 11:29 | 4 | A.   Correct. |
| 11:29 | 5 | MR. PRICE:  If we can show 23797, page 12. |
| 11:29 | 6 | *(Document displayed.)* |
| 11:29 | 7 | BY MR. PRICE: |
| 11:30 | 8 | Q.   So if we look at the left, that's part of Mr. Bryant's |
| 11:30 | 9 | portfolio, correct? |
| 11:30 | 10 | A.   Yes. |
| 11:30 | 11 | Q.   And we look on the right, that's part of the doll that |
| 11:30 | 12 | was actually sold in 2001, correct? |
| 11:30 | 13 | A.   Correct. |
| 11:30 | 14 | Q.   Now, if you look at Sasha, 17558, the doll, that has |
| 11:30 | 15 | kind of a -- a bunny logo to it? |
| 11:30 | 16 | A.   Yes. |
| 11:30 | 17 | Q.   And if you look at Carter Bryant's portfolio, 302-0008, |
| 11:30 | 18 | that also has that little bunny logo on the pack -- the |
| 11:30 | 19 | backpack? |
| 11:30 | 20 | A.   Yes. |
| 11:30 | 21 | MR. PRICE:  Okay.  We'll, then, put on the |
| 11:30 | 22 | demonstrative at page 13 -- 23797 at 13. |
| 11:31 | 23 | *(Document displayed.)* |
| 11:31 | 24 | THE WITNESS:  Again, there are some differences |
| 11:31 | 25 | esthetically, but they're both bunnies. |

| | | |
|---|---|---|
| 11:31 | 1 | BY MR. PRICE: |
| 11:31 | 2 | Q.   So it's a drawing on the left, and then the doll itself |
| 11:31 | 3 | on the right, correct? |
| 11:31 | 4 | A.   Correct. |
| 11:31 | 5 | Q.   Now, if you'd look at 504, the Jade doll, you see |
| 11:31 | 6 | there's a logo or -- I say "logo," but what would you call |
| 11:31 | 7 | it? |
| 11:31 | 8 | A.   I prefer to refer to them as "icons." |
| 11:31 | 9 | Q.   Icons.  Okay.  I'll say "icons" from now on. |
| 11:31 | 10 | A.   Okay. |
| 11:31 | 11 | Q.   You see on the doll there's this icon which appears to |
| 11:31 | 12 | be a cat? |
| 11:31 | 13 | A.   Yes. |
| 11:31 | 14 | Q.   And if you look at Mr. Bryant's portfolio, 302, there |
| 11:31 | 15 | is also an icon -- |
| 11:31 | 16 | THE COURT:  Well, 302-what? |
| 11:31 | 17 | MR. PRICE:  Let me find that, Your Honor. |
| 11:32 | 18 | 302-0011. |
| 11:32 | 19 | THE COURT:  Thank you. |
| 11:32 | 20 | *(Document displayed.)* |
| 11:32 | 21 | BY MR. PRICE: |
| 11:32 | 22 | Q.   And you see there's a cat type of icon, what you call |
| 11:32 | 23 | an icon? |
| 11:32 | 24 | A.   Yes. |
| 11:32 | 25 | Q.   And if we can do 23797, page 14. |

Case 2:04-cv-09049-DOC-RNB   Document 9724   Filed 01/28/11   Page 114 of 136   Page ID #:290969
CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

114

| | | |
|---|---|---|
| 11:32 | 1 | *(Document displayed.)* |
| 11:59 | 2 | BY MR. PRICE: |
| 11:32 | 3 | Q.   And so the cats look different? |
| 11:32 | 4 | A.   Yes, they do. |
| 11:32 | 5 | Q.   But there's a cat icon on both the doll that was sold |
| 11:32 | 6 | and on Mr. Bryant's portfolio that he gave you in |
| 11:32 | 7 | September 2000? |
| 11:32 | 8 | A.   Yes. |
| 11:33 | 9 | Q.   Now, you wouldn't have come up with these characters or |
| 11:33 | 10 | icons if Mr. Bryant hadn't come to you and shown you his |
| 11:33 | 11 | designs, correct? |
| 11:33 | 12 | MR. McCONVILLE:  Objection.  Compound. |
| 11:33 | 13 | THE COURT:  Do you understand the question? |
| 11:33 | 14 | THE WITNESS:  Not -- |
| 11:33 | 15 | THE COURT:  Reask the question. |
| 11:33 | 16 | Sustained. |
| 11:33 | 17 | BY MR. PRICE: |
| 11:33 | 18 | Q.   We've gone through the dolls and compared 'em to the |
| 11:33 | 19 | portfolio. |
| 11:33 | 20 | You wouldn't have come up with these Bratz dolls if |
| 11:33 | 21 | Carter Bryant hadn't brought you his designs in September of |
| 11:33 | 22 | 2000, correct? |
| 11:33 | 23 | MR. McCONVILLE:  Asked and answered. |
| 11:33 | 24 | THE COURT:  Overruled. |
| 11:33 | 25 | THE WITNESS:  I just want to be clear that you're |

| | | |
|---|---|---|
| 11:33 | 1 | asking -- we wouldn't have arrived at these icons without |
| 11:34 | 2 | Carter Bryant's portfolio? |
| 11:34 | 3 | BY MR. PRICE: |
| 11:34 | 4 | Q.   I'm starting first with the dolls. |
| 11:34 | 5 | A.   Okay. |
| 11:34 | 6 | Q.   I'm gonna get to that question next. |
| 11:34 | 7 | A.   Okay. |
| 11:34 | 8 | Q.   You're right. |
| 11:34 | 9 | So you wouldn't have come up with these dolls, as |
| 11:34 | 10 | they're shown, without Carter Bryant bringing you his |
| 11:34 | 11 | portfolio in September of 2000, correct? |
| 11:34 | 12 | A.   Correct. |
| 11:34 | 13 | Q.   And you wouldn't have come up with the icons that are |
| 11:34 | 14 | related to the dolls if Carter Bryant hadn't come to you in |
| 11:34 | 15 | September 2000, say, with his portfolio showing icons |
| 11:34 | 16 | related to these dolls? |
| 11:34 | 17 | A.   Correct. |
| 11:34 | 18 | Q.   Now, if you'd look at the Sasha doll, 17558, and look |
| 11:35 | 19 | at the -- one of two final fashion drawings, 1108. |
| 11:35 | 20 | *(Document displayed.)* |
| 11:35 | 21 | MR. PRICE:  And then look at the portfolio |
| 11:35 | 22 | 302-0008. |
| 11:35 | 23 | BY MR. PRICE: |
| 11:35 | 24 | Q.   Do you see that. |
| 11:35 | 25 | A.   Should I reference what's on the screen? |

116

| | | |
|---|---|---|
| 11:35 | 1 | Q.    Whatever is easier for you. |
| 11:35 | 2 | A.    Okay. |
| 11:35 | 3 | Q.    So if you look at 23797-16, the far right is a picture |
| 11:35 | 4 | of the doll that was sold, correct? |
| 11:35 | 5 | A.    The far right image is what we sold, correct. |
| 11:36 | 6 | Q.    And the middle is the one of two final fashion drawings |
| 11:36 | 7 | that Mr. Bryant did, correct? |
| 11:36 | 8 | A.    Yes. |
| 11:36 | 9 | Q.    And the one on the far left is from Mr. Bryant's |
| 11:36 | 10 | portfolio drawings, correct? |
| 11:36 | 11 | A.    Correct. |
| 11:36 | 12 | Q.    So the doll on the far right would not have been made |
| 11:36 | 13 | if you hadn't first seen Carter Bryant's portfolio? |
| 11:36 | 14 | THE COURT:  That's 17558? |
| 11:36 | 15 | MR. PRICE:  That's right, Your Honor. |
| 11:36 | 16 | THE COURT:  The "far right" and "far left" are |
| 11:36 | 17 | reversed for the jurors. |
| 11:36 | 18 | MR. PRICE:  Yes. |
| 11:36 | 19 | BY MR. PRICE: |
| 11:36 | 20 | Q.    -- would not have been created if you had not seen the |
| 11:36 | 21 | drawing that's on the far left, 302-008? |
| 11:36 | 22 | MR. McCONVILLE:  Objection.  Overbroad question. |
| 11:36 | 23 | THE COURT:  Overruled. |
| 11:36 | 24 | THE WITNESS:  When we created the manufactured |
| 11:36 | 25 | Bratz doll, we made changes to the portfolio drawings.  So |

| | | |
|---|---|---|
| 11:37 | 1 | we could have created this drawing and this fashion without |
| 11:37 | 2 | Carter Bryant's portfolio. |
| 11:59 | 3 | BY MR. PRICE: |
| 11:37 | 4 | Q.   But you wouldn't have -- my question is, look at the |
| 11:37 | 5 | doll, far right, 17558; look at the original portfolio |
| 11:37 | 6 | drawing, which is far left, 302-0008. |
| 11:37 | 7 | If you hadn't seen that first portfolio drawing, you |
| 11:37 | 8 | never would have created the doll that's on the far right of |
| 11:37 | 9 | this demonstrative, which is 17558, correct? |
| 11:37 | 10 | MR. McCONVILLE:  Same objection. |
| 11:37 | 11 | THE COURT:  Overruled. |
| 11:37 | 12 | THE WITNESS:  That's correct. |
| 11:37 | 13 | BY MR. PRICE: |
| 11:38 | 14 | Q.   Now, if you'd look at the Cloe doll, 12286, and just |
| 11:38 | 15 | looking -- so you know where we're going -- at 23797-18, so |
| 11:38 | 16 | you can do the comparison, the picture in the far right is a |
| 11:38 | 17 | picture of that Cloe doll, correct? |
| 11:38 | 18 | A.   Correct. |
| 11:38 | 19 | Q.   And the picture in the middle of the demonstrative, |
| 11:38 | 20 | 23797-18, is one of the Carter Bryant's two final doll |
| 11:38 | 21 | designs for Cloe, correct? |
| 11:38 | 22 | A.   Yes. |
| 11:38 | 23 | Q.   And if you'd look at 302-0005, that drawing is for Zoe |
| 11:39 | 24 | from the pitch book that Mr. Bryant gave you, correct? |
| 11:39 | 25 | A.   Yes. |

Case 2:04-cv-09049-DOC-RNB   Document 9724   Filed 01/28/11   Page 118 of 136   Page ID #:290973
CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

118

| | | |
|---|---|---|
| 11:39 | 1 | Q.   Okay. |
| 11:39 | 2 | MR. PRICE:  If we can put up 23797-18. |
| 11:39 | 3 | *(Document displayed.)* |
| 11:39 | 4 | BY MR. PRICE: |
| 11:39 | 5 | Q.   So those are what we just talked about:  The doll, the |
| 11:39 | 6 | fashion drawing and the portfolio drawing, correct? |
| 11:39 | 7 | A.   Yes. |
| 11:39 | 8 | Q.   And it's true that you never would have produced the |
| 11:39 | 9 | Cloe doll if you hadn't first seen the Zoe drawing in the |
| 11:39 | 10 | pitch book? |
| 11:39 | 11 | A.   I don't believe that Cloe -- manufactured Cloe, the |
| 11:39 | 12 | character on the far right, has a relationship in fashion |
| 11:39 | 13 | especially to that of the image on the far left, his |
| 11:39 | 14 | portfolio drawings. |
| 11:39 | 15 | Q.   My question is, would you have produced the doll on the |
| 11:40 | 16 | far right, 12286 -- I'll make it broader. |
| 11:40 | 17 | Would you have produced a doll that looked like the |
| 11:40 | 18 | doll on the far right, 12286, if you hadn't seen |
| 11:40 | 19 | Mr. Bryant's portfolio drawings in September of 2000? |
| 11:40 | 20 | MR. McCONVILLE:  Objection.  Overbroad. |
| 11:40 | 21 | THE COURT:  Sustained. |
| 11:40 | 22 | BY MR. PRICE: |
| 11:40 | 23 | Q.   Would you have produced 12286 if you haven't seen the |
| 11:40 | 24 | drawing 302-0005 in the portfolio drawings? |
| 11:40 | 25 | A.   Yes, we would have. |

| | | |
|---|---|---|
| 11:40 | 1 | Q.   Had you produced such a doll prior to September 2000? |
| 11:40 | 2 | A.   No.  Do you -- no. |
| 11:40 | 3 | Q.   Was there some project going on where there were |
| 11:40 | 4 | designs and drawings for any doll like the one on the far, |
| 11:40 | 5 | right, 12286? |
| 11:40 | 6 | A.   Would you repeat the question, please? |
| 11:40 | 7 | Q.   Sure.  At MGA, in September of 2000, were there |
| 11:41 | 8 | drawings at MGA, designs of, first, any fashion doll? |
| 11:41 | 9 | A.   No.  There were fashion drawings for dolls, large |
| 11:41 | 10 | feature and medium, but not fashion. |
| 11:41 | 11 | Q.   And that's something which MGA was interested in |
| 11:41 | 12 | pursuing 'cause it's a big market? -- fashion dolls? |
| 11:41 | 13 | A.   Yes. |
| 11:41 | 14 | Q.   There's certainly a financial incentive for a company |
| 11:41 | 15 | to come up with a fashion doll, correct? |
| 11:41 | 16 | A.   Yes. |
| 11:41 | 17 | Q.   Because you could leverage that doll into all sorts of |
| 11:41 | 18 | things -- fashions and cars and handbags -- right? |
| 11:41 | 19 | A.   You certainly -- with a successful fashion doll, you |
| 11:42 | 20 | could have those extensions.  You could do that with a large |
| 11:42 | 21 | doll, too.  It's not exclusive to fashion dolls. |
| 11:42 | 22 | Q.   Prior to seeing Carter Bryant's portfolio, had any |
| 11:42 | 23 | fashion doll with any fashions been created at MGA? |
| 11:42 | 24 | A.   Any fashions for a fashion doll in particular? |
| 11:42 | 25 | Q.   Any fashion doll or any fashions at all? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

120

| | | |
|---|---|---|
| 11:42 | 1 | A.   Yes.  We had created fashions for the many dolls that |
| 11:42 | 2 | we had created, such as Hoppity Bouncy Baby.  Scooter |
| 11:42 | 3 | Samantha was a doll.  Angels.  We had created fashions |
| 11:42 | 4 | before. |
| 11:42 | 5 | Q.   But you don't define those as being fashion dolls, |
| 11:42 | 6 | correct? |
| 11:42 | 7 | A.   In our category, and in our industry, those particular |
| 11:42 | 8 | dolls are not categorized as fashion dolls. |
| 11:42 | 9 | Q.   And you'd certainly never come up with anything like |
| 11:43 | 10 | Cloe, which we see on 12286, prior to seeing Mr. Bryant's |
| 11:43 | 11 | portfolio, correct? |
| 11:43 | 12 | A.   We had created a -- I don't mean to be -- I want to |
| 11:43 | 13 | make sure that I'm clear.  We had made blonde-haired, |
| 11:43 | 14 | blue-eyed Caucasian characters that were articulated before. |
| 11:43 | 15 | Q.   "Articulated," you mean you could move their -- |
| 11:43 | 16 | A.   Yes. |
| 11:43 | 17 | Q.   Okay.  Now, the doll on the right -- |
| 11:43 | 18 | A.   Yes. |
| 11:43 | 19 | Q.   -- has blonde hair, blue eyes, big eyes, big lips, big |
| 11:43 | 20 | shoes, correct? |
| 11:43 | 21 | A.   Yes. |
| 11:43 | 22 | Q.   And you found Mr. Bryant's portfolio to be amazing, |
| 11:43 | 23 | unique, et cetera, correct? |
| 11:43 | 24 | A.   Yes. |
| 11:43 | 25 | Q.   Had you produced or even started producing a doll like |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

121

| | | |
|---|---|---|
| 11:43 | 1 | the one in the far right, 12286, prior to September 1, 2000? |
| 11:44 | 2 | A.   No, in that she's disproportioned -- in this particular |
| 11:44 | 3 | scale, no, we had not. |
| 11:44 | 4 | Q.   And you have no reason to believe you ever would have |
| 11:44 | 5 | produced such a doll without seeing Carter Bryant's |
| 11:44 | 6 | portfolio on September 1, 2000? |
| 11:44 | 7 | A.   Mr. Price, I believe that, while it wouldn't have been |
| 11:44 | 8 | Bratz -- exactly like Bratz, I believe that we would have |
| 11:44 | 9 | developed a disproportioned fashion doll, and it would have |
| 11:44 | 10 | been a multi-ethnic group of girls. |
| 11:44 | 11 | It wouldn't have been Bratz.  It wouldn't have been |
| 11:44 | 12 | exactly like produced Bratz. |
| 11:44 | 13 | Q.   Well, you only produced this doll, far right, 12286, |
| 11:44 | 14 | after getting the designs of Carter Bryant, right? |
| 11:44 | 15 | A.   Correct. |
| 11:44 | 16 | Q.   Now, let's look at Yasmin.  And I'll start by letting |
| 11:45 | 17 | you look at the demonstratives so it will give you some |
| 11:45 | 18 | context.  23797, page 19.  Do you have that? |
| 11:45 | 19 | A.   Yes, I do. |
| 11:45 | 20 | *(Document displayed.)* |
| 11:45 | 21 | BY MR. PRICE: |
| 11:45 | 22 | Q.   And the far right is a photograph of the doll, 17561, |
| 11:45 | 23 | correct? |
| 11:45 | 24 | A.   Yes, it is. |
| 11:45 | 25 | Q.   The middle is one of the two final fashion drawings |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9724   Filed 01/28/11   Page 122 of 136   Page ID #:290977
CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

122

| | | |
|---|---|---|
| 11:45 | 1 | that Mr. Bryant did, 1110? |
| 11:45 | 2 | A.   Yes. |
| 11:45 | 3 | MR. PRICE:  And, Your Honor, I believe I have not |
| 11:45 | 4 | yet moved in 1110, and I do now. |
| 11:45 | 5 | THE COURT:  Received. |
| 11:45 | 6 | *(Exhibit No. 1110 received in evidence.)* |
| 11:45 | 7 | *(Document displayed.)* |
| 11:45 | 8 | BY MR. PRICE: |
| 11:45 | 9 | Q.   And then on the far left, you recognize that as one of |
| 11:45 | 10 | the drawings that was in Mr. Bryant's portfolio in |
| 11:46 | 11 | September 1, 2000, correct? |
| 11:46 | 12 | A.   No, I do not. |
| 11:46 | 13 | Q.   I'm sorry.  The one on the left? |
| 11:46 | 14 | A.   Oh, I apologize.  In this document here? |
| 11:46 | 15 | Q.   Yes. |
| 11:46 | 16 | A.   I recognize the image on the far left to be a drawing |
| 11:46 | 17 | from Carter Bryant's portfolio. |
| 11:46 | 18 | Q.   And this is the one with -- the character with the |
| 11:46 | 19 | beauty mark under the left eye? |
| 11:46 | 20 | A.   Yes. |
| 11:46 | 21 | MR. PRICE:  If we can put up 23797, page 19. |
| 11:46 | 22 | *(Document displayed.)* |
| 11:59 | 23 | BY MR. PRICE: |
| 11:46 | 24 | Q.   And so, far left, portfolio drawing; middle, one of two |
| 11:46 | 25 | final fashion drawings; right is the actual doll that was |

| | | |
|---|---|---|
| 11:46 | 1 | sold, correct? |
| 11:46 | 2 | A.   Correct. |
| 11:46 | 3 | MR. PRICE:  And if we can blow up the middle and |
| 11:46 | 4 | the far right. |
| 11:46 | 5 | *(Technician complies.)* |
| 11:46 | 6 | BY MR. PRICE: |
| 11:46 | 7 | Q.   Now, in those, they both have purple shoes? |
| 11:46 | 8 | A.   Yes, they do. |
| 11:46 | 9 | Q.   And they have the white pants with the designs on the |
| 11:46 | 10 | bottom? |
| 11:46 | 11 | A.   Yes. |
| 11:47 | 12 | Q.   And you see on the one in the middle, there's something |
| 11:47 | 13 | wrapped around her waist?  Do you see that? |
| 11:47 | 14 | A.   Yes. |
| 11:47 | 15 | Q.   Was that something that was with the doll that you |
| 11:47 | 16 | could -- you could take it and wrap that around her waist? |
| 11:47 | 17 | A.   Yes. |
| 11:47 | 18 | Q.   And what was that? |
| 11:47 | 19 | A.   It was like a -- it was sort of like a wrap that could |
| 11:47 | 20 | be re-purposed.  If you chose to, you use it as a shawl, or |
| 11:47 | 21 | it could be a head kerchief. |
| 11:47 | 22 | Q.   So that kind of shawl was included with the doll which |
| 11:47 | 23 | we have on the far right, 17561? |
| 11:47 | 24 | A.   Yes, it is. |
| 11:47 | 25 | Q.   And then, are the tops similar, these tube tops? |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

124

| | | |
|---|---|---|
| 11:47 | 1 | A.   They are similar.  There's differences, but they're |
| 11:47 | 2 | similar. |
| 11:47 | 3 | Q.   And if you'd look at -- now we're -- 23797, do you see |
| 11:47 | 4 | on the right there is a picture of the Jade doll?  It's |
| 11:48 | 5 | 23797-20. |
| 11:48 | 6 | A.   Okay. |
| 11:48 | 7 | Q.   Do you have that? |
| 11:48 | 8 | A.   Yes, I do. |
| 11:48 | 9 | Q.   And on the right, you see a picture of the Jade doll, |
| 11:48 | 10 | Exhibit 504? |
| 11:48 | 11 | A.   Yes. |
| 11:48 | 12 | Q.   And on the left you see a drawing from one of Carter |
| 11:48 | 13 | Bryant's first -- his first portfolio that you saw in |
| 11:48 | 14 | September 2000? |
| 11:48 | 15 | A.   Yes. |
| 11:48 | 16 |           MR. PRICE:  If we can put that up. |
| 11:48 | 17 |             (Document displayed.) |
| 11:48 | 18 | BY MR. PRICE: |
| 11:48 | 19 | Q.   So the left here, then, is a portfolio drawing, and the |
| 11:48 | 20 | right is the actual doll, correct? |
| 11:48 | 21 | A.   Correct. |
| 11:48 | 22 | Q.   And if you could look at 23797, page 21.  And on the |
| 11:48 | 23 | right, is that a picture of the doll that was sold? |
| 11:48 | 24 | A.   Yes, it is. |
| 11:48 | 25 | Q.   And on the left, is that a drawing you recall seeing in |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9724   Filed 01/28/11   Page 125 of 136   Page ID #:290980
CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

125

| | | |
|---|---|---|
| 11:48 | 1 | Mr. Bryant's portfolio, Exhibit 302? |
| 11:48 | 2 | A.   Yes, it is. |
| 11:49 | 3 |         MR. PRICE:  If we can put that up. |
| 11:49 | 4 |           *(Document displayed.)* |
| 11:49 | 5 | BY MR. PRICE: |
| 11:49 | 6 | Q.   So the left is the drawing, and the right is the actual |
| 11:49 | 7 | doll, correct? |
| 11:49 | 8 | A.   Correct. |
| 11:49 | 9 | Q.   Now, I want to show you a seating chart.  While you |
| 11:49 | 10 | were -- well, a seating chart of Mattel. |
| 11:49 | 11 | A.   Okay. |
| 11:49 | 12 | Q.   And let me see if we can show you Exhibit 293-R. |
| 11:49 | 13 |           *(Document provided to the witness.)* |
| 11:50 | 14 | BY MR. PRICE: |
| 11:50 | 15 | Q.   It's a big document.  Do you see that? |
| 11:50 | 16 | A.   Yes, I do. |
| 11:50 | 17 | Q.   And can you make that out as, sort of, the Mattel |
| 11:50 | 18 | design center where cubicles were and things like that? |
| 11:50 | 19 | A.   Yes. |
| 11:50 | 20 | Q.   Now, there was a period of time when you certainly were |
| 11:50 | 21 | in this design center, correct? |
| 11:50 | 22 | A.   Yes. |
| 11:50 | 23 | Q.   And I want to focus you on the first 12 to 18 months |
| 11:51 | 24 | that you were there, okay? |
| 11:51 | 25 | A.   Okay. |

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

126

| 11:51 | 1 | Q.   And 18 months will take you up to December of '99; is |
| 11:51 | 2 | that right? |
| 11:51 | 3 | A.   Yes. |
| 11:51 | 4 | Q.   Okay.  And from this document –– nobody's name's on it, |
| 11:51 | 5 | I believe –– can you show us where you believe you sat |
| 11:51 | 6 | during that time period for the first 18 months? |
| 11:51 | 7 | THE COURT:  Do you want to point to the screen? |
| 11:51 | 8 | Would that be easier? |
| 11:51 | 9 | THE WITNESS:  Sure. |
| 11:51 | 10 | THE COURT:  Thank you. |
| 11:51 | 11 | Turn your back to me so the jury can see. |
| 11:51 | 12 | THE WITNESS:  Okay.  *(Indicates.)*  I believe that |
| 11:51 | 13 | I sat here. |
| 11:51 | 14 | THE COURT:  Let's go back to the original.  I |
| 11:51 | 15 | think it's hard for her to see when it's blown up. |
| 11:52 | 16 | *(Technician complies.)* |
| 11:52 | 17 | THE WITNESS:  I believe that I sat here. |
| 11:52 | 18 | *(Indicates.)* |
| 11:52 | 19 | And I'll also say that it's –– |
| 11:52 | 20 | THE COURT:  Well, we're moving that around. |
| 11:52 | 21 | (To the technician:)  I want the original to |
| 11:52 | 22 | remain up, and I don't want you to move it. |
| 11:52 | 23 | Okay.  Now, please show us once again without the |
| 11:52 | 24 | interruption. |
| 11:52 | 25 | THE WITNESS:  This one right here.  *(Indicates.)* |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB  Document 9724  Filed 01/28/11  Page 127 of 136  Page ID #:290982
CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

127

| 11:52 | 1 | MR. PRICE: Can we put -- |
| 11:52 | 2 | THE COURT: You can put a little mark on it. And |
| 11:52 | 3 | leave it right where it is. It's too confusing when you |
| 11:52 | 4 | focus in. The witness can't see the blow-up. |
| 11:52 | 5 | MATTEL TECHNICIAN: Is this correct, where I have |
| 11:52 | 6 | an "X"? |
| 11:52 | 7 | THE WITNESS: Right here. *(Indicating.)* |
| 11:52 | 8 | MR. PRICE: We're putting a red mark -- just tell |
| 11:52 | 9 | us if we're putting it in the right place. |
| 11:52 | 10 | THE COURT: This is unduly consumptive of time. |
| 11:52 | 11 | We'll do this over the lunch hour, ladies and gentlemen. |
| 11:52 | 12 | Thank you. You may have a seat, Ms. Garcia. |
| 11:52 | 13 | Counsel, move on. |
| 11:52 | 14 | BY MR. PRICE: |
| 11:53 | 15 | Q.   When Mr. Bryant made his pitch to you in September of |
| 11:53 | 16 | 2000, was one of the other names that -- alternative names |
| 11:53 | 17 | that he suggested to Bratz was Moxie? |
| 11:53 | 18 | A.   Yes, it was. |
| 11:53 | 19 | Q.   And -- |
| 11:53 | 20 | A.   I'm sorry. Excuse me. Not during the September 1st |
| 11:53 | 21 | pitch meeting. Is that right? I just wanted to clarify |
| 11:53 | 22 | that. |
| 11:53 | 23 | Q.   When was one of the alternative names he mentioned as |
| 11:53 | 24 | Moxie? What timeframe? |
| 11:53 | 25 | A.   It was after the contract was signed. I can't tell you |

| | | |
|---|---|---|
| 11:53 | 1 | the exact time, but it was not during the September time |
| 11:53 | 2 | period.  I don't even believe it was in the October -- but I |
| 11:54 | 3 | can't be sure. |
| 11:54 | 4 | Q.   Sometime in the fall of 2000? |
| 11:54 | 5 | A.   Correct. |
| 11:54 | 6 | Q.   When you worked at Mattel, did you work on something |
| 11:54 | 7 | that later came to be known as Diva Starz? |
| 11:54 | 8 | A.   Yes. |
| 11:54 | 9 | Q.   And there was a woman who was -- you were friends with |
| 11:54 | 10 | Maureen Mullen? |
| 11:54 | 11 | A.   Yes. |
| 11:54 | 12 | Q.   And she was actually hired as a freelancer for MGA |
| 11:54 | 13 | later? |
| 11:54 | 14 | A.   Yes. |
| 11:54 | 15 | Q.   You guys were friends? |
| 11:54 | 16 | A.   Yes. |
| 11:54 | 17 | Q.   If you'd look at 1113. |
| 11:55 | 18 | *(Document provided to the witness.)* |
| 11:55 | 19 | BY MR. PRICE: |
| 11:55 | 20 | Q.   And the bottom part of that, do you see that as an |
| 11:55 | 21 | e-mail to you from Cheryl Bailey? |
| 11:55 | 22 | A.   Yes, I do. |
| 11:55 | 23 | MR. PRICE:  Your Honor, move Exhibit 1113 into |
| 11:55 | 24 | evidence. |
| 11:55 | 25 | THE COURT:  Received. |

CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

129

| | | |
|---|---|---|
| 11:55 | 1 | *(Exhibit No. 1113 received in evidence.)* |
| 11:55 | 2 | MR. PRICE:  If we can blow up the one at the |
| 11:55 | 3 | bottom there. |
| 11:55 | 4 | *(Technician complies.)* |
| 11:55 | 5 | BY MR. PRICE: |
| 11:55 | 6 | Q.   And who was Cheryl Bailey? |
| 11:55 | 7 | A.   Cheryl Bailey was responsible for packaging at Mattel |
| 11:55 | 8 | at the time. |
| 11:55 | 9 | Q.   And if you look at the bottom, it says, "Please update |
| 11:55 | 10 | the following high-level milestones that are currently past |
| 11:55 | 11 | due."  And it talks about Chatt Girls Sassy Steph and Chatt |
| 11:56 | 12 | Girls Rockin' Rachel. |
| 11:56 | 13 | Do you see that? |
| 11:56 | 14 | A.   Yes, I do. |
| 11:56 | 15 | Q.   You said this was about packaging issues? |
| 11:56 | 16 | A.   Yes, it was. |
| 11:56 | 17 | Q.   And you were the person to whom the e-mail was sent |
| 11:56 | 18 | although there were others who were copied, correct? |
| 11:56 | 19 | A.   (No audible response.) |
| 11:56 | 20 | Q.   You can look at the top there. |
| 11:56 | 21 | A.   Yes. |
| 11:56 | 22 | Q.   And also a J. Tan? |
| 11:56 | 23 | A.   Yes. |
| 11:56 | 24 | Q.   So do you understand Chatt Girls became Diva Starz? |
| 11:56 | 25 | A.   Yes, I do. |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9724   Filed 01/28/11   Page 130 of 136   Page ID #:290985
CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

130

| | | |
|---|---|---|
| 11:56 | 1 | Q.   What were your duties in connection with the Diva |
| 11:56 | 2 | Starz/Chatt Girls project? |
| 11:56 | 3 | A.   I was a planner at the time.  So, as described earlier, |
| 11:56 | 4 | it was my job to develop all of the high- and low-level |
| 11:56 | 5 | milestones that needed to be complete in order to get the |
| 11:56 | 6 | respective projects to production on time. |
| 11:56 | 7 | Q.   And it's correct that you saw schedules of Diva Starz |
| 11:57 | 8 | while you were on this project? |
| 11:57 | 9 | A.   I don't -- I don't recall them right now, so it's hard |
| 11:57 | 10 | for me to answer that question. |
| 11:57 | 11 | Q.   Okay.  Let me see if this refreshes your memory.  If |
| 11:57 | 12 | you look at Volume IV, and it's page 1150, line 8, and it's |
| 11:57 | 13 | just the first question. |
| 11:57 | 14 | THE COURT:  Counsel, do I have a copy? |
| 11:57 | 15 | All right.  Let's move on to the next question. |
| 11:57 | 16 | Thank you.  Next question, Counsel. |
| 11:57 | 17 | MR. PRICE:  Your Honor, the next question, we'd |
| 11:58 | 18 | need to talk about, so if we could... |
| 11:58 | 19 | THE COURT:  This would be a good time for lunch? |
| 11:58 | 20 | MR. PRICE:  It would be, yes. |
| 11:58 | 21 | THE COURT:  You're admonished not to discuss this |
| 11:58 | 22 | matter amongst yourselves nor form or express any opinion. |
| 11:58 | 23 | You have a nice lunch.  Okay. |
| 11:58 | 24 | *(Jury recesses for lunch.)* |
| 11:58 | 25 | *(Outside the presence of the jury.)* |

| | | |
|---|---|---|
| 11:58 | 1 | THE COURT:  Thank you.  Ms. Garcia, you may step |
| 11:58 | 2 | down. |
| 11:58 | 3 | Counsel, your next question was? |
| 11:58 | 4 | MR. PRICE:  Next question, Your Honor, would |
| 11:58 | 5 | relate -- |
| 11:58 | 6 | THE COURT:  First of all, let's have her draw, so |
| 11:58 | 7 | we're not blowing up -- the problem, for the record, so the |
| 11:58 | 8 | Circuit understands what's happening, is she starts to |
| 11:58 | 9 | identify where she's seated, and then the blow-up takes |
| 11:59 | 10 | place without direction from counsel, and then she can't |
| 11:59 | 11 | find it.  That was the third time. |
| 11:59 | 12 | Just draw it during the recess with Ms. Garcia, if |
| 11:59 | 13 | you would have her remain.  And show it when the jury comes |
| 11:59 | 14 | back. |
| 11:59 | 15 | Now, next question.  The next problem was? |
| 11:59 | 16 | MR. PRICE:  It relates to Exhibit Number -- |
| 11:59 | 17 | THE COURT:  And I'll need a transcript, also. |
| 11:59 | 18 | You were about to show her something.  And I know |
| 11:59 | 19 | you didn't have enough time, but to watch that is a waste of |
| 11:59 | 20 | time.  So why don't you give me that transcript in just a |
| 11:59 | 21 | moment. |
| 11:59 | 22 | MR. PRICE:  And, Your Honor, what we'd like to |
| 11:59 | 23 | show her on the -- where she sat, is we had the blank chart, |
| 11:59 | 24 | which you requested that we use initially.  We have the |
| 11:59 | 25 | chart that was used in her deposition, which has names on |

Case 2:04-cv-09049-DOC-RNB  Document 9724  Filed 01/28/11  Page 132 of 136  Page ID #:290987
CV 04-9049 DOC - 1/25/2011 - Day 6, Volume 1 of 3

132

| | | |
|---|---|---|
| 11:59 | 1 | it, where she identified where she was. |
| 11:59 | 2 | What I'm wondering if we can show her, over the |
| 11:59 | 3 | lunch break, both to see if it refreshes her recollection. |
| 11:59 | 4 | THE COURT: Certainly. But do it over the lunch |
| 11:59 | 5 | hour. And I'd ask MGA to have her remain. That can be done |
| 12:00 | 6 | in your presence also. |
| 12:00 | 7 | So I'll designate Ms. Keller. 'Cause you're doing |
| 12:00 | 8 | the cross-examination? |
| 12:00 | 9 | MS. KELLER: I'm not. |
| 12:00 | 10 | THE COURT: Mr. McConville? |
| 12:00 | 11 | MS. KELLER: Mr. McConville. |
| 12:00 | 12 | THE COURT: Mr. McConville will remain along with |
| 12:00 | 13 | Mr. Price. |
| 12:00 | 14 | MR. PRICE: And then, we wanted to show her -- to |
| 12:00 | 15 | refresh her recollection that she saw sketches of Diva |
| 12:00 | 16 | Starz -- her deposition, Volume IV at 1150, 8. And I |
| 12:00 | 17 | believe it's just the first question and answer. |
| 12:00 | 18 | THE COURT: I have 1150. |
| 12:00 | 19 | MR. PRICE: Line 8. |
| 12:00 | 20 | THE COURT: Line 8? |
| 12:00 | 21 | MR. PRICE: Yes. |
| 12:00 | 22 | THE COURT: "BY MR. ZELLER"? |
| 12:00 | 23 | MR. PRICE: Yes. It's, "Did you ever see any |
| 12:00 | 24 | two-dimensional artwork related to Diva Starz?" |
| 12:00 | 25 | And she says, "Yes, I believe I did." |

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

133

| | | |
|---|---|---|
| 12:00 | 1 | It's to refresh her recollection.  And if it |
| 12:00 | 2 | doesn't, then I'd just ask to read that. |
| 12:00 | 3 | THE COURT:  Oh, it's line 9.  I'm sorry. |
| 12:00 | 4 | "QUESTION:  When you were there at Mattel, did you |
| 12:00 | 5 | ever see any two-dimensional artwork that was related to the |
| 12:01 | 6 | Diva Starz project, again setting aside what the name of it |
| 12:01 | 7 | was at the time?" |
| 12:01 | 8 | So are we referring to the approximate time of |
| 12:01 | 9 | 1999? |
| 12:01 | 10 | MR. PRICE:  While she was at Mattel, yes. |
| 12:01 | 11 | THE COURT:  While she was at Mattel in 1999? |
| 12:01 | 12 | MR. PRICE:  She was at Mattel up until April of |
| 12:01 | 13 | 2000. |
| 12:01 | 14 | THE COURT:  And her answer is, "Yes, I believe I |
| 12:01 | 15 | did." |
| 12:01 | 16 | MR. PRICE:  Yes. |
| 12:01 | 17 | MR. McCONVILLE:  Well, it goes a little bit |
| 12:01 | 18 | further, Your Honor.  It talks about character art.  I don't |
| 12:01 | 19 | know what it means -- I don't know if its talking about -- |
| 12:01 | 20 | MR. PRICE:  I'll be glad to ask her that, |
| 12:01 | 21 | Your Honor. |
| 12:01 | 22 | THE COURT:  Okay. |
| 12:01 | 23 | "What kind of artwork was it?" |
| 12:01 | 24 | "I vaguely remember some character art." |
| 12:01 | 25 | I think Counsel will ask about that. |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9724   Filed 01/28/11   Page 134 of 136   Page ID #:290989
CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

134

| | | |
|---|---|---|
| 12:01 | 1 | MR. McCONVILLE:  Okay. |
| 12:01 | 2 | MR. PRICE:  And, finally, Your Honor, I was going |
| 12:01 | 3 | to ask her about Exhibit 9335. |
| 12:01 | 4 | THE COURT:  Just a moment. |
| 12:02 | 5 | So an e-mail of June 10, 2003, from Larian to |
| 12:02 | 6 | Caspi.  The question is, is she on that e-mail string? |
| 12:02 | 7 | MR. PRICE:  She is. |
| 12:02 | 8 | THE COURT:  Well, this is an objection.  You don't |
| 12:02 | 9 | have to preview this for me.  I just care that I have the |
| 12:02 | 10 | depositional transcript, which I have now.  I don't think |
| 12:02 | 11 | there's an objection to this e-mail, is there? |
| 12:02 | 12 | MR. PRICE:  Yes, Your Honor.  This was previewed |
| 12:02 | 13 | with the Court.  In fact, I tried this on Thursday.  And |
| 12:02 | 14 | Mr. McConville objected on relevance grounds. |
| 12:02 | 15 | THE COURT:  I thought the agreement between |
| 12:02 | 16 | counsel was MGA was going to decide and shape the back and |
| 12:02 | 17 | forth between the sneaking into the different showrooms. |
| 12:02 | 18 | And this is one of those areas I thought that Mr. Zeller had |
| 12:03 | 19 | agreed to -- to desist from. |
| 12:03 | 20 | But you weren't present, of course. |
| 12:03 | 21 | MR. PRICE:  I was.  Actually, I was present on |
| 12:03 | 22 | that.  We put the -- |
| 12:03 | 23 | THE COURT:  I'm done with this discussion.  Now |
| 12:03 | 24 | I'll come back in about ten minutes or so.  And why don't |
| 12:03 | 25 | you discuss it with the opposite side. |

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

135

| | | |
|---|---|---|
| 12:03 | 1 | And you're going to take a break. |
| 12:03 | 2 | *(Lunch held at 12:03 p.m.)* |
| 12:03 | 3 | *(Further proceedings reported by Jane Sutton* |
| 12:03 | 4 | *Rule in Volume II.)* |
| 12:03 | 5 | -oOo- |
| 12:03 | 6 | |
| | 7 | |
| | 8 | |
| | 9 | |
| | 10 | |
| | 11 | |
| | 12 | |
| | 13 | |
| | 14 | |
| | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

CV 04-9049 DOC – 1/25/2011 – Day 6, Volume 1 of 3

136

| 12:03 | 1 | –oOo– |

| 12:03 | 2 |

| 12:03 | 3 | CERTIFICATE |

| 12:03 | 4 |

12:03  5        I hereby certify that pursuant to Section 753,

12:03  6    Title 28, United States Code, the foregoing is a true and

12:03  7    correct transcript of the stenographically reported

12:03  8    proceedings held in the above-entitled matter and that the

12:03  9    transcript page format is in conformance with the

12:03  10   regulations of the Judicial Conference of the United States.

12:03  11

12:03  12   Date:  January 25, 2011

12:03  13

12:03  14
12:03
12:03  15   _____
12:03
12:03  16        DEBBIE GALE, U.S. COURT REPORTER
                 CSR NO. 9472, RPR

12:03  17

       18

       19

       20

       21

       22

       23

       24

       25