ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
Telephone:   415-773-5700
Facsimile:   415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone:   213-629-2020
Facsimile:   213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710
Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendants.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**AMENDED AND CONSOLIDATED OBJECTIONS OF MGA PARTIES AND GUSTAVO MACHADO TO MATTEL, INC.'S FOURTH AMENDED PROPOSED JURY INSTRUCTIONS** |

# GENERAL OBJECTION

MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE de Mexico, S.R.L. de C.V., and Isaac Larian ("MGA Parties") and Gustavo Machado respectfully submit their objections to Mattel's Fourth Amended Proposed Jury Instructions as set forth below.

The MGA Parties and Mr. Machado object to Mattel's Proposed Jury Instructions in general for omitting any of the jury instructions proposed by the MGA Parties and Mr. Machado.  In addition, the MGA Parties and Mr. Machado object to any of the instructions below that fail to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant, or are drafted in a manner that does not identify the parties by name, since the use of party names will avoid the "plaintiff" and "defendant" labels that do not fully capture the postures of the parties in this trial.  The MGA Parties and Mr. Machado also object to the instructions below to the extent that they fail to include language necessary to assist the jury's understanding of this case and submit that their Proposed Instructions on the matters covered below are the appropriate instructions to provide the jury.

The MGA Parties and Mr. Machado further generally object to Mattel's proposed instructions that could apply to claims made or defenses asserted by both parties, but which Mattel has aimed only at its claims and defenses.  For example, Mattel has separated the instructions on its trade secret and unfair competition claims from the instructions on MGA's trade secret and unfair competition claims. Where possible, instructions that are relevant to claims asserted by multiple parties should be given in a party-neutral way that will make them applicable to both parties.  To do otherwise could unfairly leave the jury with the impression that one party's burden of proof is somehow different from the others, or even that one party's claim is somehow more meritorious than the same claim brought by the other party.

The MGA Parties and Mr. Machado generally object to Mattel's proposed copyright instructions on the grounds that Mattel has deleted portions of the Ninth Circuit Model Jury Instructions, omitted entirely certain other, basic model instructions (*e.g.*, Ninth Circuit Model Jury Instructions 17.2 ("Copyright – Subject Matter – Generally"); 17.6 ("Copyright Interests – Authorship"), 17.7 ("Copyright Interests – Joint Authors"), and added certain improper "special" instructions. Mattel's deletions, omissions, and "special instructions" are improper because, among other things, they will mislead and confuse the jury in connection with its determination of the protectability of the various elements in the sixteen Carter Bryant drawings registered by Mattel and at issue in this phase of the trial. Mattel's deletions, omissions and "special instructions" are also likely to confuse and mislead the jury into believing that Mattel's burden of proof in connection with its copyright infringement claims is less than it actually is.

Finally, the MGA Parties and Mr. Machado generally object to Mattel's proposed instructions to the extent they set forth multiple theories of ownership and recovery for Mattel. The Ninth Circuit has explicitly stated that, in order to recover on its claims, "Mattel will have to convince a jury that the agreement assigned Bryant's preliminary sketches and sculpt, either because the agreement assigns works made outside the scope of employment or because these works weren't made outside of Bryant's employment. And, in order to justify a copyright injunction, Mattel will have to show that the Bratz sculpts are virtually identical to Bryant's preliminary sculpt, or that the Bratz dolls are substantially similar to Bryant's sketches disregarding similarities in unprotectable ideas." *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 917 (9th Cir. 2010). Thus, the Ninth Circuit has limited Mattel to a single theory of recovery regarding ownership of Mr. Bryant's work – whether his employment agreement assigned that work to Mattel. To the extent that Mattel has proposed instructions that set forth different theories of recovery, those instructions should not be given to the jury.

1    The MGA Parties' and Mr. Machado's specific objections are set forth

2  below.  Mr. Machado joins the objections made by the MGA Parties and makes the

3  separate objections noted below.

4  Dated: January 28, 2011          Respectfully submitted,

5                                   ANNETTE L. HURST
                                    ORRICK, HERRINGTON & SUTCLIFFE LLP
6

7

8                                   By: _____/s/ Annette L. Hurst_____
                                            ANNETTE L. HURST
9                                           Attorneys for MGA Parties

10  Dated: January 28, 2011         Respectfully submitted,

11                                  SCHEPER KIM & HARRIS LLP
                                    ALEXANDER H. COTE
12
                                    LAW OFFICES OF MARK E. OVERLAND
13                                  MARK E. OVERLAND
                                    By:   /s/ Alexander H. Cote
14                                        ALEXANDER H. COTE

15
                                        /s/ Mark E. Overland
16                                      MARK E. OVERLAND

17                                  Attorneys for Carlos Gustavo Machado
                                    Gomez
18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

## 1.19

## OUTLINE OF TRIAL

Trials proceed in the following way:  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine.  Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

**Authority:**  9th Cir. Civ. Jury Instr. 1.19 (2007) (modified); Joint Proposed Jury Instructions, May 5, 2008 (Dkt. No. 3463).

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**OBJECTION:**

The MGA Parties object to this instruction on the grounds that, while Mattel and MGA agree on the use of this instruction, MGA believes that identifying the parties by name, as MGA does on page 40 of its Amended Proposed Jury Instructions, will make the instruction clearer and more useful to the jury.  The use of party names will also avoid the "plaintiff" and "defendant" labels that do not fully capture the postures of the parties in this trial.

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 1
# USE OF ADMISSIONS OF A PARTY

Evidence was presented to you in the form of admissions of one of the parties to written requests submitted by the other side.  These answers have been given in writing and under oath, before the actual trial, in response to requests that were submitted in writing under established court procedures.  The matters admitted are deemed conclusively established as to the party that made the admission.

**Authority:**  Fed. R. Civ. P. 36(b); Joint Proposed Jury Instructions, May 5, 2008 (Dkt. No. 3463).

1    **OBJECTION:**

2         The MGA Parties suggest the following modification of Mattel's proposed

3    instruction to more accurately and helpfully address requests for admissions:

4              Evidence was presented to you in the form of a response
               to a request for admission submitted by one of the parties
5              to another.  The response was given in writing and under
               oath, before the trial, in response to a request that was
6              submitted in writing under established court procedures.
               The matters admitted in the response are deemed
7              conclusively established as to the party that made the
               response.  I will determine the scope of the matters
8              admitted and instruct you as necessary.

9

10        **Authority:**  Fed. R. Civ. P. 36; *Johnson v. DeSoto County Bd. Of Comm'rs*,

11   204 F.3d 1335, 1339-40 (11th Cir. 2000); *In re Corland Corp.*, 967 F.2d 1069,

12   1074 (5th Cir. 1992) (citation omitted) ("[O]nly 'deliberate, clear and unequivocal'

13   statements can constitute conclusive judicial admissions."); *Villager Franchise*

14   *Systems, Inc. v. Dhami, Dhami & Virk*, 2006 WL 224425, *3 (E.D. Cal. January 26,

15   2006); *Monroy v. City of Los Angeles*, 164 Cal. App. 4th 248, 259-60 (2008).

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

## 1.9

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

**Authority:**  9th Cir. Civ. Jury Instr. 1.9 (2007); Joint Proposed Jury Instructions, May 5, 2008 (Dkt. No. 3463).

1   **OBJECTION:**

2       The MGA Parties object to this instruction on the grounds that, while Mattel

3   and MGA agree on the use of this instruction, Mattel omitted "an illustrative

4   example" of circumstantial evidence, which the Ninth Circuit Model Civil Jury

5   Instructions state "may be helpful to include."  9th Cir. Civ. Jury Inst. 1.9 (2007).

6   The MGA Parties believe that the illustrative example, as included in the

7   instruction on page 21 of their Amended Proposed Jury Instructions, will be useful

8   to the jury.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 2.8

## IMPEACHMENT EVIDENCE—WITNESS

The evidence that a witness has made a prior statement inconsistent with his testimony generally may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give the testimony of the witness and for no other purpose.  However, if the prior inconsistent statement was made under oath, you may consider that evidence for any purpose.  Also, evidence that a party's agent or servant made a statement concerning a matter within the scope of the agency or employment during the existence of the relationship may be considered for any purpose.

**Authority:**  9th Cir. Civ. Jury Instr. 2.8 (2007) (modified); Fed. R. Evid. 801(d)(1) & 801(d)(2); *Harris v. Victor Marketing Corp.*, 656 F. Supp. 2d 1128, 1133 (N.D. Cal. 2009); *Palmer v. Pioneer Inn Assocs., Ltd.*, 338 F.3d 981, 990 (9th Cir. 2003); *Pope v. Savings Bank of Puget Sound*, 850 F.2d 1345, 1356 (9th Cir. 1998); *General Commc'ns Eng'g, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 421 F. Supp. 274, 281 (N.D. Cal. 1976).

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**OBJECTION:**

Mattel has modified Ninth Circuit Instruction 2.8 by adding references to prior inconsistent statements under oath and "authorized" admissions.  The MGA Parties suggest that it would be helpful to add context on this issue by adding the following language excerpted from CACI 5003 at the end of Instruction 2.8:

> Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

The MGA Parties also suggest that Mattel's proposed instruction be modified, with the following language replacing everything that appears after "purpose" on the fourth line of the instruction:

> Some statements may be used for any purpose.  A prior statement that is inconsistent with a statement made by a witness while testifying in the trial may be considered for any purpose if the prior statement was made under oath.

The MGA Parties object to the last sentence of Mattel's proposed instruction because it does not address prior inconsistent statements, and therefore does not fit with the rest of the instruction.  The MGA Parties also object to the last sentence of the instruction because there is no need for an instruction addressing statements made by a party's agent.  Ninth Circuit Instruction 2.8 addresses limits on the use of prior inconsistent statements, and it makes sense to provide balance by explaining that some prior inconsistent statements may be considered for all purposes.  There is no similar issue with respect to statements made by an agent within the scope of his or her agency.

If the jury hears evidence of a statement made by an agent within the scope of his or her agency, the statement will either (a) have been admitted without objection, or (b) have been admitted following the overruling of an objection.  In

- 11 -

1   either case, the statement will be in evidence for all purposes, unless it is explicitly

2   admitted for a limited purpose.  A general statement that statements by agents

3   within the scope of their agency are admissible for all purposes is not necessary,

4   and Mattel offers no reason for its proposed conflation of prior inconsistent

5   statements and statements by agents.

**Instructions on the Law**

**Instructions for Mattel's Claims for Ownership of Bratz Rights**


**MATTEL SPECIAL JURY INSTRUCTION NO. 2**

**OWNERSHIP OF INVENTIONS—INVENTIONS AGREEMENT**


Mattel claims that it owns the rights to Carter Bryant's doll-related works created while he was employed by Mattel pursuant to a written contract and pursuant to other legal principles and theories.  If you find that Mattel is correct as to any of the claimed bases or theories for owning a particular work created by Mr. Bryant, then you should find that Mattel owns that work; Mattel needs to prevail on only one theory of ownership, not all of them, to obtain ownership of the works at issue.

Mattel's first claim is that it owns the rights to all doll-related drawings, designs, sculpts, characters, ideas, concepts, names, and any other works that were created by Carter Bryant, in whole or in part, while he was employed by Mattel, including Bratz-related drawings, designs, sculpts, characters, ideas, concepts, names, and works.

Defendants deny Mattel's contention.

Mattel's claim to ownership of Bryant's doll-related works is based, in part, on a contract between Carter Bryant and Mattel called the "Employee Confidential Information and Inventions Agreement" or simply the "Inventions Agreement."

Specifically, Section 2(a) of the Inventions Agreement provides:

"I agree to communicate to the Company as promptly and fully as practicable all inventions conceived or reduced to practice by me (alone or jointly [with] others) at any time during my employment by the Company.  I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or

- 13 -

1   copyright applications based thereon.  I will assist the Company and/or its
2   nominees (without charge but at no expense to me) at any time in every proper way
3   to obtain for its and/or their benefit, patents and copyrights for all such inventions
4   anywhere in the world and to enforce its and/or their rights in legal proceedings."

5          In order for Mattel to prevail on its claim of ownership, Mattel must show
6   that any doll-related or toy-related idea, concept, drawing, design, sculpt or work it
7   claims to own was an "invention," as the term is used in the Inventions Agreement,
8   and that it was conceived, created, made or reduced to practice by Carter Bryant "at
9   any time during [his] employment by [Mattel]."

10         If you find that any particular doll-related or toy-related idea, concept,
11  drawing, design and/or work was an "invention" and was conceived, created, made
12  or reduced to practice by Carter Bryant, in whole or in part, at any time during his
13  employment by Mattel, then you should find that Mattel owns all right, title and
14  interest in it.  If you find that any particular doll-related or toy-related idea, concept,
15  drawing, design and/or work was not an "invention" that was conceived, created,
16  made or reduced to practice by Carter Bryant, in whole or in part, at any time
17  during his employment by Mattel, then you should consider whether Mattel owns
18  the concept, drawing, design and/or work pursuant to the other instructions I will
19  give you later.

20

21         **Authority:**  MSJ Order (Dkt. No. 9538 at 4-12); Inventions Agreement;
22  *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904 (9th Cir. 2010)

23

24

25

26

27

28

**OBJECTION:**

The MGA Parties object to this instruction because it, like many of Mattel's instructions, tells the jury what it "should" do if certain facts are found.  Some of the "if/should" instructions, including this one, are inaccurate because they do not account for other issues  or defenses they do not address.  For example, Mattel's Special Instruction No. 2 states "[i]f you find that Mattel is correct as to any of the claimed bases or theories for owning a particular work created by Mr. Bryant, then you should find that Mattel owns that work," but that is not necessarily true.  Mattel might be "correct as to" a "theory" of ownership, but own nothing because the work is not protectable.  Special Instruction No. 2 also states "[i]f you find that any particular doll-related or toy-related idea, concept, drawing, design and/or work was an 'invention' and was conceived, created, made or reduced to practice by Carter Bryant, in whole or in part, at any time during his employment by Mattel, then you should find that Mattel owns all right, title and interest in it."  Again, the conclusion advocated by Mattel does not necessarily follow.  If a "drawing" was "made . . . in part" by Mr. Bryant while he worked at Mattel, it might not be "owned" by anyone because it might not be protectable, and the drawing might include matter owned by a third party, so that Mattel could not own "all right, title and interest in it." (Indeed, it is doubtful that even Mattel claims that the contract term "inventions" covers matters that have no inventive or other original content.)

Special Instruction No. 2 also actively misstates the terms of the agreement between Mattel and Carter Bryant.  Special Instruction No. 2 contains the following statement:

> If you find that any particular doll-related or toy-related idea, concept, drawing, design and/or work was an "invention" and was conceived, created, made or reduced to practice by Carter Bryant, ***in whole or in part***, at any time during his employment by Mattel, then you should find that Mattel owns ***all right, title and interest in it***.

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1   The phrase "in whole or in part" does not appear in the Mattel/Bryant agreement,

2   and it is not reasonable to conclude that Mattel owns "all" of every "invention" that

3   is conceived or reduced to practice "in part."  If that is what Mattel contends, there

4   is a dispute about the meaning of the agreement that must be resolved by the jury.

5          The quoted language also contradicts the agreement in another way.  Mattel

6   claims in Special Instruction No. 2 that it owns "all right, title and interest" in any

7   invention covered by the contract, but that is not what section 2(a) says.  Section

8   2(a) contains an assignment of all of "*my* right, title and interest" in a covered

9   invention, not "all" right, title and interest.  If Mattel wishes to advocate the plainly

10  incorrect interpretation of section 2(a) that appears in Special Instruction No. 2, the

11  jury should be asked to decide whether Mattel is correct, not told by the Court that

12  it is.

13         Putting aside the various inaccuracies in Special Instruction No. 2, there is no

14  reason for the "if/should" phrasing it contains.  Some model instructions contain a

15  direction of this type, but it is not appropriate in Special Instruction No. 2 or in

16  various other places in which a finding on an issue addressed in an instruction will

17  not completely resolve the dispute between the parties.  The various relationships

18  between or among the findings the jury will be asked to make requires great caution

19  in employing the "if/should" formulation.  It should not be used in connection with

20  the issues surrounding the Mattel/Bryant agreement.

21         The "if/should" approach in this instruction is particularly objectionable, as

22  there is a series of assertions that the jury "should" rule in Mattel's favor "if"

23  various findings are made.  This one-sided, potentially suggestive approach cannot

24  be justified, and there is no reason to repeatedly state "if you find x, your verdict

25  should be for Mattel, if you do not find x, your verdict should be for MGA."  As

26  explained below, the Court should instruct the jury on the law, and leave the

27  "roadmaps" to counsel in closing argument.

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1      Special Instruction No. 2 is also unnecessarily vague and completely

2  unsupported by the sources Mattel cites.  It refers to "doll-related" and "toy-related"

3  items, terms that do not appear in the Mattel/Bryant agreement.  These undefined

4  terms are inappropriate and indeed, internally inconsistent – as written, the

5  instruction essentially suggests the jury may categorize as "Bratz-related" drawings

6  that have nothing to do with the actual Bratz dolls.  This sort of inconsistency will

7  only serve to create confusion among the jurors as to what issues they should be

8  considering.  Mattel claims ownership of specific items.  They should be identified

9  (a) specifically or (b) only as "certain" items.  The use of vague and undefined

10  terms will not help and will likely confuse the jury.

11      Further, this proposed instruction implies that Mattel will be able to prove

12  multiple bases for its ownership claim.  This is incorrect.  The Ninth Circuit has

13  explicitly limited Mattel to a single theory of recovery regarding ownership of Mr.

14  Bryant's work – whether his employment agreement assigned that work to Mattel.

15  *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 917 (9th Cir. 2010).

16  Reference to any other theories of recovery is inconsistent with the Court's

17  mandate.

18      There is also no reason to quote the Mattel/Bryant agreement in a jury

19  instruction.  Rather, a proper jury instruction should merely instruct the jury "as to

20  the relevant law and as to its function in the fact-finding process."  *McDowell v.*

21  *Calderon*, 130 F.3d 833, 836 (9th Cir. 1997).  The Court should leave detailed

22  explanation of the agreement, and argument about its meaning and effect, to

23  counsel.  Repeated comments by the Court about Mattel's theories of ownership are

24  not necessary.

25      Mattel's Special Instruction No. 2 should not be given.  The proper

26  instruction is that set forth on page 88 of MGA's Amended Proposed Jury

27  Instructions.

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

# CACI 314

## INTERPRETATION—DISPUTED TERM—"INVENTIONS"

The parties dispute the meaning of the term "inventions" in the Inventions Agreement.  The Inventions Agreement defines the term "inventions" as follows:

"[T]he term 'inventions' includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable."

In deciding what the terms of a contract mean, you must decide what the parties intended at the time the contract was created.  You may consider the usual and ordinary meaning of the language used in the contract as well as the circumstances surrounding the making of the contract.

The Court has already found that the term "inventions," as used in the contract, covers doll-related drawings, designs, and sculpts.  Therefore, Mattel owns all right, title and interest to any doll-related drawings, designs and sculpts that you find Carter Bryant made at any time during his employment by Mattel.  It is for you to determine which such works, if any, Carter Bryant made during that time.

It is also for you to decide whether the term "inventions" covers other "inventions" claimed by Mattel.  If you find that it does, then you should find that Mattel owns all right, title and interest to such inventions that you find Carter Bryant made at any time during his employment by Mattel.

**Authority:**  CACI 314 (modified).

- 18 -

1 **OBJECTION:**

2      The MGA Parties object to this instruction on several grounds.

3      First, the instruction states that "the Court has already found that the term

4 'inventions,' as used in the contract, covers doll-related drawings, designs, and

5 sculpts."  This Court has made no finding referring to "doll-related" anything.  If

6 this comment is intended as a reference to the Ninth Circuit opinion, that Court also

7 did not use the term "doll-related."  The court made reference to drawings and a

8 sculpt, but it did not offer any categorization of them, or provide any analysis of

9 why or how the drawings and sculpt fall within any of the contract terms.  The jury

10 is not going to decide whether the drawings or sculpt fall within the definition of

11 "inventions," and there is no reason to make reference, in an instruction addressing

12 contract interpretation, to matters as to which the jury has no role. This will only

13 serve to create confusion among the jurors as to what issues they should be

14 considering.

15      The instruction would also take a matter from the jury with the statement that

16 "Mattel owns all right, title and interest to any doll-related drawings, designs and

17 sculpts that you find Carter Bryant made at any time ***during his employment by***

18 ***Mattel***."  The meaning of the italicized term is disputed.  An instruction that does

19 not acknowledge the dispute and carries with it a suggestion that unresolved issues

20 have been resolved in Mattel's favor is inappropriate.

21      Even worse is the statement "It is also for you to decide whether the term

22 'inventions' covers other 'inventions' claimed by Mattel."  With this, Mattel would

23 have the Court advise the jury that Mattel indeed claims ownership of additional

24 "inventions," despite the dispute over whether some of the matters claimed by

25 Mattel are "inventions."  The assumption that Mattel is correct is followed by an

26 equally unjustifiable "if/should" that contains an incorrect categorical statement

27 that Mattel owns "all right, title and interest" in inventions "made" by Carter Bryant

28

- 19 -

1  "during his employment," again using a disputed term in a manner suggestive that
2  Mattel's position is correct.

3  Second, while the instruction purports to be based on CACI 314, it is not
4  faithful to CACI 314.  For starters, Mattel's instruction omits the burden of proof
5  placed on Mattel as claimant.  *See* CACI 314 ("[*Name of plaintiff*] must prove that
6  [his/her/its] interpretation of the term is correct.").  Mattel's instruction also clutters
7  the explanation of the law with unnecessary detail about matters the jury will
8  neither address nor use in carrying out its tasks.  All in all, Mattel attempts to turn
9  an instruction explaining how the jury should go about interpreting the contract into
10 a directive on how the ultimate ownership issues should be decided.

11 Third, the instruction fails to identify the primary issues to be decided
12 through the use of this instruction, whether "ideas" are covered by the term
13 "inventions" and what "during my employment" means, although "during my
14 employment" is unnecessarily addressed in a later instruction.  Mattel's instruction
15 states that the parties dispute the meaning of "inventions," but it does not explain
16 how they disagree.

17 The MGA Parties direct the court to the instruction found on page 89 of
18 MGA's Amended Proposed Jury Instructions for an appropriate statement of the
19 law, tailored to the specific issues the jury will address.

20
21
22
23
24
25
26
27
28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**CACI 314**

**INTERPRETATION—DISPUTED TERM—"AT ANY TIME DURING MY EMPLOYMENT BY THE COMPANY"**

In the Inventions Agreement, Carter Bryant agreed to assign to Mattel all inventions "conceived or reduced to practice by me (alone or jointly [with] others) at any time during my employment by the Company."

The parties dispute the meaning of the phrase, "at any time during my employment by the Company," as it is used in the Inventions Agreement. Mattel claims that the phrase "at any time during my employment by the Company" means at any time between January 4, 1999 and October 20, 2000, Mr. Bryant's start and end dates at Mattel. The defendants claim that the phrase "at any time during my employment by the Company" refers only to when Carter Bryant was specifically working at Mattel, that is, during working hours on weekdays.

As I already instructed you, when deciding what the terms of a contract mean, you must decide what the parties intended at the time the contract was created. You may consider the usual and ordinary meaning of the language used in the contract as well as the circumstances surrounding the making of the contract.

You must find that Mattel owns all right, title and interest to all inventions, if any, that you find were conceived or reduced to practice by Carter Bryant "at any time during [his] employment by [Mattel]," as that phrase is used in the Inventions Agreement.

**Authority:** CACI 314 ( modified).

Amended & Consolidated Objs of MGA Parties & Gustavo Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1  **OBJECTION:**

2      The MGA Parties object to this instruction on the grounds that, while the

3  parties agree to the use of this instruction with respect to the disputed term "at any

4  time during my employment by the company," MGA's proposed instruction, set

5  forth on page 89 of its Amended Proposed Jury Instructions, is clearer, more

6  concise because it addresses both of the key issues, and will be more helpful to the

7  jury.

8      Mattel's proposed instruction is also improper because it misstates MGA's

9  interpretation of "during my employment."  MGA's actual contention is set forth in

10  the instruction that appears on page 89 of its Amended Proposed Jury Instructions.

11      In addition, the instruction improperly repeats, in the third paragraph,

12  instructions that appear in the other CACI contract instructions.  *See* L.R. 51-2(c).

13      The final paragraph of Mattel's proposed instruction is improper legal

14  argument that misstates the contract language and is unrelated to how the jury

15  should interpret a disputed term.  At most, Mattel owns Carter Bryant's interest in

16  an "invention," not "all right, title and interest" in the invention.

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**CACI 317**</u>

<u>**INTERPRETATION—CONSTRUCTION OF CONTRACT AS A WHOLE**</u>

In deciding what the words of a contract meant to the parties, you should consider the whole contract, not just isolated parts.  You should use each part to help you interpret the others, so that all the parts make sense when taken together.

**Authority:**  CACI 317.

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**CACI 318**</u>

<u>**INTERPRETATION—CONSTRUCTION BY CONDUCT**</u>

  In deciding what the words in a contract meant to the parties, you may consider how the parties acted after the contract was created but before any disagreement between the parties arose.

  **Authority:**  CACI 318.

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1    **OBJECTION:**

2        The MGA Parties object to this instruction without the addition of the

3    following concluding sentence:

4        You may not, however, consider how parties to other
         contracts acted, or how the parties acted in connection
5        with their contracts with others.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**MATTEL'S SPECIAL JURY INSTRUCTION NO. 3**</u>

<u>**INTERPRETATION—MUTUAL INTENT**</u>

The mutual intention of the parties at the time the contract is formed governs interpretation.  Such mutual intent is to be inferred solely from the written provisions of the contract as to most of the contract's terms.  However, as to the meaning of the terms "inventions" and "at any time during my employment by the Company," you should consider all the evidence that has been admitted in considering their meaning.

**Authority:**  Cal. Civ. Code § 1636; *Santisas v. Goodin*, 17 Cal. 4th 599, 608 (1998).

1 | **OBJECTION:**

2 |     The MGA Parties object to this instruction on the grounds that it is an

3 | incorrect and unnecessary statement of the law.

4 |     The Judicial Council of California has very recently updated its exhaustive

5 | set of Civil Jury Instructions.  *See* Judicial Council of California Civil Jury

6 | Instructions (CACI) 2011 Edition.  That set includes seven full jury instructions on

7 | the interpretation of contracts, which completely cover the legal issues in this case.

8 | There is no need for Mattel to create additional instructions on the topic, as it

9 | attempts to do here.

10 |     Moreover, Mattel's statement of the law in this instruction is incorrect.  To

11 | the extent the jury is to consider evidence beyond the contract itself, it must

12 | consider only the outward manifestation of the intent of the parties – not "all the

13 | evidence" that has been admitted.  The subjective, undisclosed intent of a party "is

14 | not competent intrinsic evidence, because evidence of the undisclosed subjective

15 | intent of the parties is irrelevant to determining the meaning of the contractual

16 | language."  *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 n.3 (1992).  By the same

17 | token, evidence of the subjective intent of non-parties to the agreement is not

18 | admissible.

19 |     The dichotomy between "inventions" and "during my employment" and

20 | "most of the contract's terms" is also improper.  The jury will not be interpreting

21 | any terms that are not specifically required by the Court's instructions, and, under

22 | the California Supreme Court's *City of Hope* decision, interpretation of a contract is

23 | a matter of law for the Court in the absence of disputed extrinsic evidence.  *City of*

24 | *Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 398 (2008).

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1

## 17.9

## OWNERSHIP OF INVENTIONS—WORK MADE FOR HIRE

As a second basis for ownership, Mattel also claims that, independent of the Inventions Agreement, it owns Mr. Bryant's drawings, designs, sculpts and characters as works made for hire.

A work made for hire is one that is prepared by an employee in carrying out the employer's business.

The employer is considered to be the author of the work and owns the copyright to such work.

If you find that any particular doll-related work created by Mr. Bryant was a Mattel work for hire, you should find that Mattel owns that work.  If you find that any particular doll-related work created by Mr. Bryant was not a Mattel work for hire, you should consider whether Mattel owns the work pursuant to the other instructions I have given and will give you.

**Authority:**  9th Cir. Civ. Jury Instr. 17.9 (2007); 17 U.S.C. § 201(b); Cal. Civ. Code § 980; *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1329 (9th Cir. 2000).

1 **OBJECTION:**

2       The MGA Parties object to this instruction on the grounds that it is not

3 appropriate where Mattel proposes to include it, and it is incorrect.

4       First, as a copyright instruction, this proposed instruction is out of context at

5 this place in the jury instructions.  If used, it should be placed with the other

6 instructions related to copyright.

7       Second, the Ninth Circuit has explicitly limited Mattel to a single theory of

8 recovery regarding ownership of Mr. Bryant's work – whether his employment

9 agreement assigned the work to Mattel.  *Mattel, Inc. v. MGA Entertainment, Inc*.,

10 616 F.3d 904, 917 (9th Cir. 2010).  Reference to any other theories of recovery is in

11 violation of that Court's mandate.

12       Third, to the extent that Mattel is seeking to have a "work made for hire"

13 instruction given related to its copyright claims, it is improper because there is no

14 factual foundation for such an instruction.  There is no evidence supporting a

15 finding that Mr. Bryant's assignments in the Barbie Collectibles Group at Mattel

16 between January 1999 and October 2000 included his Bratz work, and the Bratz

17 work therefore cannot be a work for hire.  Instead, Mattel is improperly trying to

18 conflate the concept of line of business with work made for hire.  A work made for

19 hire occurs only where the tasks are actually performed within the scope of

20 employment.  *See Martha Graham Sch. and Dance Found. v. Martha Graham Ctr.*

21 *of Contemporary Dance, Inc.*, 380 F.3d 624, 637-38 (2d Cir. 2004) (although

22 employee at time, works not created in scope of employment were not works for

23 hire).  Accordingly, any instruction regarding "work made for hire" is unnecessary

24 and improper.

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

## MATTEL SPECIAL JURY INSTRUCTION NO. 4

## OWNERSHIP OF INVENTIONS—IMPLIED-IN-FACT CONTRACT

As another basis for ownership, Mattel claims that, independent of the terms of the Inventions Agreement, Mattel and Mr. Bryant entered into an implied-in-fact contract for the assignment of rights to doll-related drawings, designs, sculpts, characters, ideas, concepts, names, and works.  An implied-in-fact contract is an agreement founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.

Mattel has proved its claim of ownership if it shows that it specifically hired or directed Mr. Bryant to invent, create and/or conceive of products, characters, designs, sculpts, themes, names, logos, fashions, hairstyles, and/or accessories within Mattel's lines of business or potential business, including without limitation dolls, toys and other playthings.  If you find that the purpose of his employment focused on invention and that Mr. Bryant received full compensation from Mattel for his inventive work based on his salary and employment benefits, you must examine the employment relationship at the time Mr. Bryant created the works at issue to determine if Mr. Bryant and Mattel entered an implied-in-fact contract to assign his ownership interest in such works to Mattel.

If you find that there was an implied-in-fact contract to assign any particular doll-related work created by Mr. Bryant to Mattel, you should find that Mattel owns that work.  If you find that there was not an implied-in-fact contract to assign any particular doll-related work created by Mr. Bryant to Mattel, you should consider whether Mattel owns the work pursuant to the other instructions I have given and will give you.

Amended & Consolidated Objs of MGA Parties & Gustavo Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1    **Authority:**  *Silica Tech, L.L.C. v. J-Fiber, GmbH*, 2009 WL 2579432, at *13
2    (D. Mass. May 19, 2009); *Banks v. Unisys Corp.*, 228 F.3d 1357, 1359 (Fed. Cir.
3    2000); *Teets v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403, 407 (Fed. Cir. 1996);
4    *Ultimax Cement Mfg. v. CTS Cement Mfg. Corp.*, 2004 WL 3770498, at *16 (C.D.
5    Cal. Dec. 6, 2004), *rev'd on other grounds by*, 587 F.3d 1339, 1343 (Fed. Cir.
6    2009).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1   **OBJECTION:**

2         The MGA Parties object to this instruction on the grounds that it is an

3   incorrect statement of the law for three reasons.

4         First, as the creator of the works at issues, Mr. Bryant can only transfer his

5   rights in those works by written agreement.  *See* Section 204 of the Copyright Act,

6   17 U.S.C. § 204(a); *Effects Associates, Inc. v. Cohen,* 908 F.2d 505 (9th Cir. 1990).

7         Second, Mattel's proposed instruction violates California law to the extent it

8   is seeking to create an implied contract where an express contract already exists on

9   the same subject matter.  *Shapiro v. Wells Fargo Realty Advisors*, 152 Cal. App. 3d

10  467, 482 (1984), criticized on other grounds in *Foley v. Interactive Data Corp*., 47

11  Cal. 3d 654, 680 (1988); *Camp v. Jeffer, Mangels, Butler & Marmaro*, 35 Cal. App.

12  4th 620, 630 (1995).  Because Mr. Bryant and Mattel signed an "Inventions

13  Agreement" governing "all inventions (as defined below) conceived or reduced to

14  practice by me (alone or jointly by others) at any time during my employment by

15  the Company.  I hereby assign to the Company and/or its nominees all my right,

16  title and interest in such inventions, and all my right, title and interest in any

17  patents, copyrights, patent applications or copyright applications based thereon"

18  (Inventions Agreement ¶ 2(a)) about precisely the same subject matter as that of the

19  asserted implied contract, there can be no implied contract as a matter of law.

20        Third, the idea for a product name such as BRATZ or JADE is not property

21  and cannot be assigned under California law.  *Desny v. Wilder*, 299 P.2d 257, 265

22  (Cal. 1956); *Weitzenkorn v. Lesseri¸* 40 Cal. 2d 778, 788-89 (1953); Cal. Civ. Code

23  § 980; *see Rokos v. Peck*, 227 Cal. Rptr. 480, 486 (Cal. App. 1986).

24        Fourth, the Ninth Circuit has explicitly limited Mattel to a single theory of

25  recovery regarding ownership of Mr. Bryant's work – whether his employment

26  agreement assigned that work to Mattel.  *Mattel, Inc. v. MGA Entertainment, Inc*.,

27  616 F.3d 904, 917 (9th Cir. 2010).  Reference to any other theories of recovery is in

28  violation of that Court's mandate.

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1    The format of this instruction is also argumentative.  In addition to an

2    "if/should" formulation, the instruction states that "Mattel has proved its claim of

3    ownership if . . . ."  There is no reason for a "play by play" approach of this nature.

4    On any issues that will be addressed in the Court's instructions, the Court should

5    simply advise the jury of the requirements of the law and the allocation of the

6    burden of proof.  The rest should be left to argument by counsel.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL SPECIAL JURY INSTRUCTION NO. 5
## OWNERSHIP OF INVENTIONS—AGENCY

As another independent basis for ownership, Mattel claims that, independent of the terms of the Inventions Agreement, Mattel owns Mr. Bryant's doll-related drawings, designs, sculpts, characters, ideas, concepts, names, and works by virtue of the agency relationship between Mr. Bryant and Mattel.  If Mr. Bryant was an agent of Mattel, then all benefits and advantages acquired by Mr. Bryant as an outgrowth of his employment relationship with Mattel, exclusive of Bryant's salary and employment benefits, are deemed to have been acquired for the benefit of Mattel, and Mattel is entitled to recover such benefits.  Mattel's claim to ownership of Bratz through agency does not depend upon any deceit by Bryant, but is instead based upon the duties incident to the agency relationship between Bryant and Mattel and upon the fact that all profits resulting from that relationship belong to Mattel.

Mattel has proved its claim of ownership if it shows that while employed by Mattel, Bryant made a secret profit at the expense of Mattel out of the subject of his agency.

If you find that Mattel has proved its claim of ownership through agency as to any particular doll-related work created by Mr. Bryant, you should find that Mattel owns that work.  If you find that Mattel has not proved its claim of ownership through agency as to any particular doll-related work created by Mr. Bryant, you should consider whether Mattel owns the work pursuant to the other instructions I have given and will give you.

**Authority:**  Cal. Civ. Code § 2330; *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 416-17 (2007); *Bate v. Marsteller*, 232 Cal. App. 2d 605, 616-17 (1965);

1  *Van de Kamp v. Bank of America*, 204 Cal. App. 3d 819, 835 (1988); *Savage v.*

2  *Mayer*, 33 Cal. 2d 548, 551 (1949).

**OBJECTION:**

The MGA Parties object to this instruction on the grounds that it is an incorrect statement of the law.  California Civil Code section 2330 provides as follows:

> An agent represents his principal for all purposes within the scope of his actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, accrue to the principal.

Mattel's Special Instruction No. 5 bears little resemblance to the law as it is set forth in section 2330.  The phrase "as an outgrowth of his employment relationship with Mattel" is a poor substitute for "within the scope of his actual or ostensible authority."  Mattel chose the former in recognition of the fact that there is no basis for a claim that Mr. Bryant was acting "within the scope of his actual or ostensible authority" when he performed any Bratz work he performed while employed by Mattel.  Mattel's Special Instruction No. 5 cannot be given because there is no evidence supporting a finding that Mr. Bryant's work at Mattel included anything involving Bratz.

It is also not true under section 2330, when speaking of the employment relationship between Mattel and Mr. Bryant, that "all profits *resulting from* that relationship belong to Mattel."  Nothing "resulting from that relationship" that does not accrue to Mr. Bryant "within the scope of his actual or ostensible authority" can belong to Mattel under the law of agency.

Moreover, as with Special Instruction No. 4, Mattel is improperly attempting to create an implied agreement between Mr. Bryant and Mattel beyond the agreement set forth in the Inventions Agreement.  *See Shapiro v. Wells Fargo Realty Advisors*, 152 Cal. App. 3d 467, 482 (1984), criticized on other grounds in *Foley v. Interactive Data Corp*, 47 Cal. 3d 654, 680 (1988); *Camp v. Jeffer, Mangels, Butler & Marmaro*, 35 Cal. App. 4th 620, 630 (1995).

1    Special Instruction No. 5 is also inconsistent with copyright law.  As the

2    author of the works at issues, Mr. Bryant can only transfer his rights in those works

3    by written agreement.  *See* Section 204 of the Copyright Act, 17 U.S.C. § 204(a);

4    *Effects Associates, Inc. v. Cohen,* 908 F.2d 505 (9th Cir. 1990).  Absent a writing

5    sufficient to comply with section 204(a), there can be no transfer of copyrights

6    owned by Mr. Bryant as author.

7    Finally, the Ninth Circuit has explicitly limited Mattel to a single theory of

8    recovery regarding ownership of Mr. Bryant's work – whether his employment

9    agreement assigned that work to Mattel.  *Mattel, Inc. v. MGA Entertainment, Inc*.,

10   616 F.3d 904, 917 (9th Cir. 2010).  Reference to any other theories of recovery is in

11   violation of the Ninth Circuit's mandate.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

## MATTEL SPECIAL JURY INSTRUCTION NO. 6
## OWNERSHIP OF INVENTIONS—CORPORATE OPPORTUNITY

As another basis for ownership, Mattel claims that, independent of the terms of the Inventions Agreement, Mattel owns Mr. Bryant's doll-related drawings, designs, sculpts, characters, ideas, concepts, names, and works by virtue of Mr. Bryant's breaches of duties he owed to Mattel.  Pursuant to the Inventions Agreement, Mr. Bryant had a duty to maintain the confidentiality of Mattel's trade secrets and surrender any trade secret materials in his possession before leaving Mattel.  This included an obligation to not misappropriate Mattel's trade secrets, not use Mattel's trade secrets for his own benefit, and not disclose Mattel's trade secrets to competitors in the toy industry.  Mr. Bryant had an obligation not to use Mattel's trade secrets to enter into a competing enterprise which might injure Mattel.  Mr. Bryant also owed a duty of undivided loyalty to Mattel while he was employed by Mattel.

As part of those duties, Mr. Bryant had an obligation to deliver to Mattel, and not to seize for himself or others, any corporate opportunity reasonably incident to Mattel's present or prospective business.  In order for Mattel to prevail on its claim of ownership, Mattel must show that Bryant violated his duty by seizing a corporate opportunity reasonably incident to Mattel's present or prospective business.  If Mattel establishes that he did so, then Mattel owns the rights to such corporate opportunities.

If you find that Mattel has proved its claim of ownership as to any particular doll-related work created by Mr. Bryant as a corporate opportunity, you should find that Mattel owns that work.  If you find that Mattel has not proved its claim of ownership as to any particular doll-related work created by Mr. Bryant as a corporate opportunity, you should consider whether Mattel owns the work pursuant to the other instructions I have given you.

Amended & Consolidated Objs of MGA Parties & Gustavo Machado to Mattel's 4th Amended Prop Jury Instructions Case No. CV 04-9049 DOC (RNBx)

1    **Authority:**  *Daniel Orifice Fitting Co. v. Whalen*, 198 Cal. App. 2d 791,

2    796-799 (1962); *Sequoia Vacuum Sys. v. Stransky*, 229 Cal. App. 2d 281, 286

3    (1964); *Components for Research, Inc. v. Isolation Prods., Inc.*, 241 Cal. App. 2d

4    726, 729 (1966); *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 982 (N.D. Cal. 2006);

5    *C.H. Reynolds Elec., Inc. v. Spears*, 2004 WL 296994, at *7 (Feb. 17, 2004).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OBJECTION:**

The first paragraph of Mattel's Special Instruction No. 6 contains a series of arguments and overbroad statements about Mattel's rights under its agreement with Mr. Bryant. No purpose is served by any of this, and the first paragraph should not be included in any instruction. The MGA Parties also object to this instruction on the following additional grounds.

Mattel improperly invokes the corporate opportunity doctrine to attempt to create an ownership right. In California, the corporate opportunity doctrine applies to fiduciaries such as officers or directors, not rank and file employees such as Mr. Bryant. *See Robinson, Leatham, Nelson, Inc. v. Nelson,* 109 F.3d 1398 (9th Cir. 1997). There is no basis for the injection of a corporate opportunity theory into the case because it is now established that Mr. Bryant was not a Mattel fiduciary.

Mattel also misstates the role of the corporate opportunity doctrine. The corporate opportunity doctrine does not provide an independent basis for ownership by Mattel of any of Mr. Bryant's Bratz work. If it is assumed that Mattel does not own a given work (because it was not assigned by contract and is not owned by Mattel under the law of agency or otherwise) nothing Mr. Bryant subsequently did could result in a forfeiture of his ownership of the work. Assuming, for sake of argument that a corporate opportunity could exist in connection with a work owned by Mr. Bryant, it does not follow that by usurping the corporate opportunity, Mr. Bryant would lose his ownership of the work. At most, usurpation of a corporate opportunity would only create a claim of breach of fiduciary duty against Mr. Bryant, not eliminate his ownership of his work. Thus, the corporate opportunity doctrine does not provide an "independent" basis for a claim of ownership by Mattel and the corporate opportunity doctrine cannot affect MGA's ownership of the Bratz rights it acquired from Mr. Bryant as a matter of law.

Mattel's Special Instruction No. 6 is also objectionable for the reasons Mattel's other instructions are objectionable. As with Special Instructions Nos. 4

1   and 5, Mattel is improperly attempting to create an implied agreement between Mr.

2   Bryant and Mattel beyond the agreement set forth in his invention assignment

3   agreement.  Mattel and Mr. Bryant agreed what Mattel would own and the

4   circumstances under which its rights would be triggered.  To the extent Mattel

5   suggests that the corporate opportunity doctrine implicitly creates additional

6   circumstances in which ownership could be acquired by Mattel, it runs afoul of the

7   rule forbidding an implied contract covering the subject matter of an express

8   contract.  *See Shapiro v. Wells Fargo Realty Advisors*, 152 Cal. App. 3d 467, 482

9   (1984), criticized on other grounds in *Foley v. Interactive Data Corp.*, 47 Cal. 3d

10  654, 680 (1988); *Camp v. Jeffer, Mangels, Butler & Marmaro*, 35 Cal. App. 4th

11  620, 630 (1995).

12      Copyright law also forbids the state law corporate opportunity doctrine from

13  providing an "independent" basis for ownership of Mr. Bryant's work.  Under

14  section 204(a), Mr. Bryant's copyrights can be transferred only by a written

15  agreement.  *See* Section 204 of the Copyright Act, 17 U.S.C. § 204(a); *Effects*

16  *Associates, Inc. v. Cohen,* 908 F.2d 505 (9th Cir. 1990).

17      Third, Mattel is improperly seeking to create an ownership interest by

18  claiming that Mr. Bryant was prohibited from misappropriating trade secrets before

19  establishing that it had an ownership interest in any trade secrets.  This Court has

20  made clear that Mattel cannot proceed on a trade secret theory without first

21  establishing – as a matter of contract – that it had an ownership interest in any

22  works prepared by Mr. Bryant.

23      Fourth, Mattel's Bratz-related trade secret claim is preempted by the

24  Copyright Act.

25      Finally, the Ninth Circuit has explicitly limited Mattel to a single theory of

26  recovery regarding ownership of Mr. Bryant's work – whether his employment

27  agreement assigned that work to Mattel.  *Mattel, Inc. v. MGA Entertainment, Inc*.,

28

- 41 -

1    616 F.3d 904, 917 (9th Cir. 2010).  Reference to any other theories of recovery is in

2    violation of that Court's mandate.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1

**Instructions for Mattel's Tort Claims**

2

**CACI 2201**

3

4

**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

5

6      Mattel claims that MGA and MGA's CEO, Isaac Larian, intentionally

7  interfered with the contracts between Mattel and a number of its former employees,

8  including Carter Bryant, Ronald Brawer, Ana Isabel Cabrera, Beatriz Morales,

9  Maria Elena Salazar, Veronica Marlow and Ryan Tumaliuan.  To establish this

10  claim as to any particular former Mattel employee, Mattel must prove all of the

11  following as to that particular employee:

12      1.      That there was a contract or contracts between Mattel and that

13  employee;

14      2.      That MGA and/or Mr. Larian knew of the contract or contracts;

15      3.      That MGA and/or Mr. Larian intended to disrupt the performance of

16  this contract or contracts;

17      4.      That the conduct of MGA and/or Mr. Larian prevented performance or

18  made performance more difficult, or disrupted the contractual relationship;

19      5.      That Mattel was harmed; and

20      6.      That the conduct of MGA and/or Isaac Larian was a substantial factor

21  in causing Mattel's harm.

22

23      **Authority:**  CACI 2201 (modified); *Pacific Gas & Elec. Co. v. Bear Stearns*

24  *& Co.*, 50 Cal. 3d 1118, 1126 (1990); *PMC, Inc. v. Saban Entm't, Inc.*, 45 Cal.

25  App. 4th 579, 601 (1996); *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal.

26  4th 26, 55 (1998); *Kasparian v. County of Los Angeles*. 38 Cal. App. 4th 242, 261

27  (1995).

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**OBJECTION:**

Both parties submit a version of CACI 2201 to identify the elements of Mattel's claim for intentional interference with contractual relations.  The MGA Parties object to Mattel's version for the following reasons:

First, Veronica Marlow and Ronald Brawer are not the proper subjects of this claim.

Second, the use of the term "substantial factor" in paragraph 6 does not adequately express the causation requirement Mattel must satisfy to prevail on its interference claim, and the problem with the term "substantial factor" is exacerbated by Mattel's failure to propose CACI 430, the instruction drafted by the CACI Committee to explain the meaning of "substantial factor."  Under Mattel's proposed instructions, the jury would be told that the defendant's conduct must be a "substantial factor" in causing the claimant's harm, but given no information about the meaning of the term "substantial factor."

The ordinary meaning of "substantial factor," as it is likely to be understood by the jury, does not necessarily include a "but for" element.  It is settled, however, that the "substantial factor" test adopted by the California courts "subsumes" a "but for" causation test.  *See* CACI 430, Directions for Use ("As phrased, this definition of 'substantial factor' subsumes the 'but for' test of causation, that is, 'but for' the defendant's conduct, the plaintiff's harm would not have occurred.") (quoting *Mitchell v. Gonzales*, 54 Cal. 3d 1041, 1052 (1991).  Thus, to communicate the legal standard effectively, the "but for" idea must be included in the jury instructions on causation.

Recognizing this problem, the CACI Committee prepared an "optional" sentence for CACI 430 incorporating an explicit "but for" requirement: "Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct." *Id*.  While the Committee made the sentence "optional," the Directions for Use acknowledge that it makes "explicit" the "but for" requirement

- 44 -

1  intended to be "subsumed" in the basic language.  The Committee also recognized

2  that "in some cases it may be error not to give this sentence." *Id*.

3          There being no doubt in the law that "but for" causation is required, no

4  purpose is served by withholding the explicit treatment produced by the "optional"

5  sentence in CACI 430.  Better still is the explicit "but for" causation test stated

6  clearly in the MGA Parties' proposed instruction on this topic.

7          In a discussion of the relationship between "but for" causation and the

8  "substantial factor" test, California courts have explained that the "but for" concept

9  governs except in those few situations in which "two causes concur to bring about

10 an event and either one of them operating alone could have been sufficient to cause

11 the result." *Mitchell v. Gonzales*, 54 Cal. 3d 1041, 1049 (1991) (citations omitted).[1]

12 On those rare occasions, "where there are concurrent independent causes, our law

13 provides one cannot escape responsibility . . . on the ground that identical harm

14 would have occurred without it." *Id*.  Otherwise, a "but for" causation standard is

15 appropriate.  *See id*. at 1054 and n.10 (disapproving a specific "but for" jury

16 instruction as "grammatically confusing and conceptually misleading," but stating

17 that "nothing in this opinion should be read to discourage the Committee on

18 Standard Jury Instructions from drafting a new and proper 'but for' instruction.").

19         In their proposed jury instructions, the MGA Parties have set forth a "but for"

20 instruction that will be clear to the jury and easy to apply.  Inclusion of a clear "but

21 for" standard is necessary to comply with the law and because the "substantial

22 factor" language "create[s] risk of confusion and misunderstanding." *Id*. at 1061

23 (Kennard, J., dissenting).  That is especially so when a "substantial factor"

24

25    [1] The CACI Committee noted that the "but for" language is not appropriate in a
   case involving "concurrent independent causes, which are multiple forces operating
26 at the same time and independently, each of which would have been sufficient by
   itself to bring about the same harm." *Id*.; *see Viner v. Sweet*, 30 Cal. 4th 1232,
27 1240 (2003).

28

1  reference is not accompanied by an explanation that "substantial factor" subsumes

2  "but for."

3       Third, the MGA Parties object to this instruction because it does not properly

4  explain to the jury the limitations that have been placed on Mattel's claims.

5  Specifically, it ignores the fact that the Court granted summary judgment for the

6  MGA Parties on this claim in part because "UTSA supersedes Mattel's counter-

7  claim to the extent" that claim is "based upon MGAE and Larian's alleged

8  inducement of Mattel employees' theft of 'Mattel trade secrets and other

9  proprietary information[.]" (Amended Order on MGA's Motion for Summary

10 Judgment; Mattel's Motion for Partial Summary Judgment; Machado's Motion for

11 Summary Judgment; Mattel's Motion for Partial Summary Judgment on MGA's

12 Counterclaims-in-Reply, dated January 5, 2011 (Dkt 9600) ("Amended MSJ

13 Order") at 82-83.)  This circumscription is completely ignored in Mattel's

14 instruction, and would leave jurors to believe that the issue of MGA's  alleged

15 inducement of employee theft of trade secrets was relevant to this claim.

16      Fourth, the preceding instruction is also objectionable to the extent that it

17 omits a required element of a claim for intentional interference with an <u>at-will</u>

18 contract, such as the contract at issue here. That element requires Mattel to prove

19 that Larian and MGA engaged in wrongful conduct <u>independent</u> of "interfering"

20 with Bryant's contracts with <u>Mattel. *See  Reeves v. Hanlon*</u>, 33 Cal. 4th 1140, 1152-

21 53 (2004) ("[T]o recover for a defendant's interference with an at-will employment

22 relation, a plaintiff must plead and prove that the defendant engaged in an

23 independently wrongful act – *i.e.*, an act 'proscribed by some constitutional,

24 statutory, regulatory, common law, or other determinable legal standard' -- that

25 induced an at-will employee to leave the plaintiff."); *see also American Mortg.*

26 *Network v. LoanCity.com*,  2006 WL 3199291, at *15 (Cal. Ct. App. Nov. 7, 2006)

27 (holding that jury instruction that "[a]n employee is subject to liability for the tort

28 of inducing breach of contract/unfair competition if, before or after leaving the

- 46 -

1  employment, the employee uses unlawful or <u>unfair</u> means to cause fellow

2  employees to break their contracts with the employer" was incorrect because

3  "liability for unfair competition/ inducing breach of contract can be based only on

4  <u>unlawful</u> conduct") (emphasis in original) (citations omitted).

5      Fifth, the preceding instruction is objectionable to the extent it does not (1)

6  require Mattel to prove that the underlying contract was a valid and enforceable

7  one, *see PMC, Inc. v. Saban Entm't, Inc.*, 45 Cal. App. 4th 579, 601 (1996); (2)

8  advise the jury that there is no "inducement" and thus no liability where the

9  breaching party initiates contact with the defendant, *see, e.g., Bauer v. Interpublic*

10  *Group of Cos. Inc.*,  255 F. Supp. 2d 1086, 1093, 1095 (N.D. Cal. 2003); (3) advise the jury

11  that a third party must have sufficient knowledge of the details of the contract to

12  form the intent to harm the contractual relationship, *Davis v. Nadrich*,  174

13  Cal.App.4th 1, 10-11  (2009); (4) advise the jury that a third party discharges any

14  duty to investigate the details of a contract by speaking to a person with knowledge

15  of the terms of that contract*, id.*  at 11; and (5) advise the jury that solicitation and

16  contracting with an at-will employee of a competitor such as Bryant are not

17  wrongful, *see, e.g., Troystar Invs., Inc. v. Sabat*, 2008 WL 316218, at *4  (Cal. Ct.

18  App. Feb. 6, 2008).

19      Finally, the preceding instruction is objectionable to the extent it suggests

20  that proving all the elements as against <u>either</u> MGA <u>or</u> Larian establishes the

21  liability of both.

22      The MGA Parties refer the Court to the proposed instruction at page 102 of

23  their Amended Proposed Jury Instructions.

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CACI 2203

## INTENT OR KNOWLEDGE

In deciding whether MGA or Isaac Larian acted knowingly or intentionally, you may consider whether they knew that a disruption in the performance of a contract or contracts was substantially certain to result from their conduct. Knowledge of a third party's contractual obligations can be inferred from circumstantial evidence.

**Authority:** CACI 2203; *Silicon Image, Inc. v. Analogix Semiconductor Inc.*, 2007 WL 1455903, at *4 (N.D. Cal. May 16, 2007) (holding that use of licensing agreements which are "common in the industry" created a reasonable inference that defendant, a competitor to plaintiff, "knew that sale of its product to Silicon Image customers violated the Software License Agreement"); *Borges v. Home Ins. Co.*, 239 Cal. App. 2d 275, 282-83 (1966) (reversing grant of summary judgment on interference claim on the ground that circumstantial evidence supported an inference of knowledge of a contractual relationship).

Amended & Consolidated Objs of MGA Parties & Gustavo Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**OBJECTION:**

Both parties submitted a modified version of CACI 2203.  The MGA Parties object to Mattel's version in that Mattel has added a final sentence that (a) goes beyond the scope of the CACI instruction and (b) threatens to confuse the jury in a manner that would, in effect, improperly modify the requirement of CACI 2201 that Mattel prove knowledge of the contract obligations at issue.

Mattel proposes to add a sentence stating: "Knowledge of a third party's contractual obligations can be inferred from circumstantial evidence."  There is no justification for a special reference to circumstantial evidence on this element of this claim.  Essentially any fact can be inferred from circumstantial evidence, but jury instructions do not repetitively or randomly restate the explanation of the role of circumstantial evidence that is a general part of every jury charge.  If the knowledge element of the interference claim is singled out for special mention, there is an obvious risk of prejudice to MGA.  The jury will inevitably wonder why it is being told that circumstantial evidence is sufficient on this element, and the most likely conclusion that will be drawn is that a different and lower standard applies to the evaluation of evidence relevant to the knowledge element.

The preceding instruction is also objectionable to the extent it does not advise the jury that there is no intent to interfere where the defendant knows or believes its agreement with a third party will not infringe the rights of the plaintiff. *See 1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568, 586 (2003).

The MGA Parties refer the Court to the proposed instruction at page 102 of their Amended Proposed Jury Instructions.

## CACI 3610

## AIDING AND ABETTING TORT—ESSENTIAL FACTUAL ELEMENTS

Mattel claims that it was harmed by the breaches of the duty of undivided loyalty owed by several former Mattel employees, including Carter Bryant, Isabel Cabrera, Beatriz Morales, Maria Elena Salazar, and Ryan Tumaliuan, and that MGA and/or Mr. Larian are responsible for the harm because they aided and abetted those former employees in committing their breaches of the duty of loyalty.

If you find that any of the former employees breached either his or her duty of loyalty to Mattel, then you must determine whether MGA and/or Mr. Larian are also responsible for the harm.  MGA and/or Mr. Larian are responsible as aiders and abetters if Mattel proves all of the following by a preponderance of the evidence:

1.      That MGA and/or Mr. Larian knew that the former employee's conduct constituted a breach of duty or duties;

2.      That MGA and/or Mr. Larian gave substantial assistance or encouragement to the former employee to breach his or her duty or duties; and

3.      That MGA and/or Mr. Larian's conduct was a substantial factor in causing harm to Mattel.

**Authority:**  CACI 3610 (modified).

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1   **OBJECTION:**

2       Both parties have submitted instructions on aiding and abetting a breach of

3   duty of loyalty.  The MGA Parties object to Mattel's instruction on the following

4   grounds:

5       First, the order of the instruction is improper – the jury must determine if any

6   of the relevant individuals breached a duty of loyalty to Mattel *before* determining

7   whether MGA or Mr. Larian aided or abetted that breach.  If there is no breach,

8   there is nothing to aid and abet.

9       Second, the opening line of the instruction misstates the law, and is

10  inappropriately argumentative in its description of the duty of non-fiduciary

11  employees as "undivided" loyalty.  Non-fiduciary employees, such as the

12  employees in issue, do not owe their employers a duty of "undivided" loyalty.

13  Moreover, as the MGA Parties' Amended Proposed Jury Instructions explain, one

14  of the elements of Mattel's claim is proof of the scope of the duty owed by the

15  employees.  With the assertion that the employees owe a duty of "undivided"

16  loyalty, Mattel's proposed instruction therefore resolves a disputed issue in its

17  favor.  In addition, the overall tone of the opening paragraph, with its multiple

18  references to "harm," is inappropriately argumentative.

19      Third, for the reasons explained above, the use of the term "substantial

20  factor" in paragraph 3 does not properly state the causation requirement that Mattel

21  must satisfy to prevail on this claim.  Explicit mention of a "but for" causation test

22  is necessary effectively to communicate the requirements of the law to the jury.

23      The instruction is also inadequate because it does not contain a complete

24  statement of the elements of aiding and abetting.  The requirement of a "conscious

25  decision" to assist a known breach is omitted.  Moreover, the instruction fails to

26  specify that <u>actual</u> knowledge on behalf of MGA and Larian of the specific wrong

27  they substantially assisted is required to find them liable for aiding and abetting;

28  moreover, it omits the definition of actual knowledge.  To prevail on an aiding and

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

abetting claim under California law,  the plaintiff must show "***actual knowledge*** of
the primary violation." _Neilson v. Union Bank of California, N.A._,  290 F. Supp. 2d
1101, 1119-20 (C.D. Cal. 2003) (citing, _inter alia, Cope v. Price Waterhouse_, 990
F.2d 1256, 1993 WL 102598, at \*6 (9th Cir. Apr. 7, 1993) (Unpub. Disp.) ("The
Second Restatement of Torts also supports a finding that actual knowledge is the
proper standard for a claim of aiding and abetting fraud. … the term 'knows' does
not include both actual knowledge and recklessness. When the drafters of the
Restatement meant to include recklessness as an element of liability, they did so
explicitly"), and _Gerard v. Ross_, 204 Cal. App. 3d 968, 983 (1988) ("A defendant
can be held liable as a cotortfeasor on the basis of acting in concert only if he or she
_knew_ that a tort had been, or was to be, committed, and acted with the intent of
facilitating the commission of that tort")).  _See also Resolution Trust Corp. v. Rowe_,
1993 WL 183512, at \*5 (N.D. Cal. Feb. 8, 1993) ("Under California law, actual
knowledge and intent are required to impose aiding and abetting liability."),citing
_Hashimoto v. Clark_, 264 B.R. 585, 598 (D. Ariz. 2001) (under California law,
"[t]he requisite degree of knowledge for an aiding and abetting claim is actual
knowledge. This means Trustee must come forward with evidence to show that
Safrabank knew Clark was breaching a duty owed Sheffield."), and _Gerard_, 204
Cal. App. 3d at 983.

The preceding instruction is also objectionable to the extent it suggests that
proving all the elements as against either MGA or Larian establishes the liability of
both.

The instruction also fails to specify that a substantial causal connection
between MGA and Larian's conduct and the harm to Mattel is required and that the
"substantial assistance" requirement is inversely related to the knowledge factor.
_See Resolution Trust Corp. v. Rowe_,  1993 WL 183512, at \*6 (N.D. Cal. Feb. 8,
1993) (inverse relationship between demonstration of knowledge and substantial

1    assistance); *Mendelsohn v. Capital Underwriters, Inc.*,  490 F. Supp. 1069, 1084

2    (N.D. Cal. 1979) (substantial causal connection).

3          The MGA Parties also object to this instruction because it does not properly

4    explain to the jury the limitations that have been placed on Mattel's claims as

5    regards to Bryant.  Specifically, it ignores the fact that the Court granted summary

6    judgment for the MGA Parties on this claim in part, finding that  "MGA's motion is

7    granted as to Mattel's counter-claim for aiding and abetting breach of duty of

8    loyalty to the extent that the counter-claim concerns the conduct of Machado,

9    Vargas, Trueba, Brawer, Castilla, Contreras and Cooney, ***as well as Bryant's***

10   ***alleged misappropriation of Mattel's information***" (Amended MSJ Order at 90

11   (emphasis added).) This circumscription is completely ignored in Mattel's

12   instruction, and would leave jurors to believe that the issue of Bryant's alleged

13   misappropriation of Mattel's information was relevant to this claim.

14         The MGA Parties refer the Court to the proposed instructions at pages 165-

15   174 of their Amended Proposed Jury Instructions for an accurate statement of the

16   law.

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 7
## BREACH OF THE DUTY OF LOYALTY

One of the elements of Mattel's claim for aiding and abetting breach of the duty of loyalty is that one or more former Mattel employee breached his or her duty of loyalty to Mattel.  To establish that one or more of the former employees breached his or her duty of loyalty, Mattel must prove the following by a preponderance of the evidence:

1.    That the former employee was previously employed by Mattel;

2.    That the former employee knowingly acted against Mattel's interests;

3.    That Mattel did not give informed consent to the former employee's conduct;

4.    That Mattel was harmed; and

5.    That the former employee's conduct was a substantial factor in causing Mattel's harm.


**Authority:**  CACI 4102 (modified); *Cal. Labor Code* § 2863; *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 414 (2007); *Fowler v. Varian Assocs.*, Inc., 196 Cal. App. 3d 34, 41-42 (1987); *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 296 (1995); *Cal. Labor Code* §§ 2856, 2860, 2863; *cf. Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1161 (9th Cir. 1987)

1 **OBJECTION:**

2      Mattel's Special Instruction No. 7 is based on CACI 4102, an instruction

3 addressing a claim that a fiduciary has breached his or her duty of undivided

4 loyalty.  CACI 4102 is not suited to Mattel's claim for aiding and abetting a breach

5 of a non-fiduciary employee's duty of loyalty.  The employees in question are not

6 fiduciaries, and they did not owe fiduciary duties to Mattel, as the Court has

7 determined.  As already noted, the employees specifically did not owe a duty of

8 "undivided loyalty" to Mattel.  The MGA Parties object to the use of CACI 4102 or

9 a variant of CACI 4102 because it addresses a claim that is no longer a part of the

10 case.

11      Because Mattel used an instruction for the wrong tort, its instruction both

12 misstates and omits elements.  For example, Mattel's instruction does not specify

13 that the breach and harm resulting from a breach of the duty of loyalty must have

14 occurred during the time the employee worked for Mattel.

15      The MGA Parties object to Mattel's Special Instruction No. 7 on the

16 additional grounds that (a) it does not sufficiently identify the employees subject to

17 the instruction; and (b) the use of the term "substantial factor" in paragraph 5 does

18 not properly state the causation requirement that Mattel must establish to prevail on

19 this claim.

20      Identification of the employees alleged to have breached a duty of loyalty is

21 necessary to define and place limits on the damage case Mattel may pursue.  A "but

22 for" causation standard is required for the reasons set forth above.

23

24

25

26

27

28

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 8
## SCOPE OF THE DUTY OF LOYALTY

An employer has a right of expect the undivided loyalty of its employees. An employee breaches his duty of loyalty of his employer when he takes actions which are inimical to the best interests of his employer.  Such actions would include personally competing with his employer or taking action on behalf of or otherwise assisting a competitor while working for his employer.  An employer's right to undivided loyalty is also compromised when an employee's outside activities give rise to a possibility of undue influences.  An employee breaches his duty of loyalty of his employer when he acquires a material benefit from a third party in connection with actions taken through his use of his position with his employer.

**Authority:**  *In re Brocade Commc'ns Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1037-38 (N.D. Cal. 2009); *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 295 (1995); *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 416-417 (2007).

1  **OBJECTION:**

2        The MGA Parties object to Mattel's jargon-filled Special Instruction No. 8

3  on the grounds that it is an incorrect and overreaching statement of the law.  First,

4  none of the cases cited by Mattel supports its argument for the scope of an

5  employee's duty of loyalty.  *In re Brocade*, 615 F. Supp. 2d 1018 (N.D. Cal. 2009),

6  merely discusses the statute of limitations applicable to a claim for breach of an

7  employee's duty of loyalty.  *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285 (1995),

8  discusses an employee's duty of loyalty in the context of whether an employer had

9  sufficient cause to terminate an employee.  And *Huong Que, Inc. v. Luu,* 150 Cal.

10 App. 4th 400 (2007), discusses a duty of loyalty owed to an employer by managing

11 agents, not by non-managerial employees.

12 Mattel's authorities instead make clear that an employee's duty of loyalty to his or

13 her employer is not all-encompassing.  For example, an employee may seek other

14 employment without breaching the duty of loyalty, and may also make preparations

15 to compete with the employer in the future.  *Stokes v. Dole Nut Co.*, 41 Cal. App.

16 4th at 295. *See also Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 346-47 (1966);

17 *Fowler v. Varian Assocs., Inc.*, 196 Cal. App. 3d 34, 41 (1987) (holding that duty of

18 loyalty exists "[d]uring the term of employment"); *Maximus, Inc. v. Thompson*, 78

19 F. Supp. 2d 1182, 1191 (D. Kan. 1999)  (defendants did not breach duty of loyalty

20 by their "discussing the prospects of competing, their gathering and estimating of

21 expenses, their submission of a bank plan and securing a promise of financing from

22 a bank, and the compilation of the information necessary to make a bid"); *Mercer*

23 *Mgmt. Consulting, Inc. v. Wilde*, 920 F. Supp. 219, 234 (D.D.C. 1996) (employees

24 did not breach duty of loyalty when they "incorporate[d] [competing business], . . .

25 made arrangements for office space, inquired about benefit packages, investigated

26 computer systems, and met with an accountant," because these were just

27 preparations to compete); *Dwyer, Costello & Knox v. Diak*, 846 S.W.2d 742, 747

28 (Mo. 1993) (accountant-employee did not breach duty of loyalty by deciding to

- 57 -

1  form competing accounting firm while still employed, signing partnership

2  agreement, and locating and renting office space for competing business); 19

3  Williston on Contracts (4th ed. 2008) § 54.27, p. 467, fn. omitted ["Employees

4  whose contracts are terminable at will have a right to terminate their employment

5  for the purpose of competing with their employer, and may plan and prepare to

6  create a competitive enterprise prior to their termination, without revealing their

7  plans to their employer, so long as they do so on their own time and with their own

8  resources."]].

9       The MGA Parties also object to this instruction because it does not properly

10 explain to the jury the limitations that have been placed on Mattel's claims as

11 regards to Bryant.  Specifically, it ignores the fact that the Court granted summary

12 judgment for the MGA Parties on this claim in part, finding that  "MGA's motion is

13 granted as to Mattel's counter-claim for aiding and abetting breach of duty of

14 loyalty to the extent that the counter-claim concerns the conduct of Machado,

15 Vargas, Trueba, Brawer, Castilla, Contreras and Cooney, *as well as Bryant's*

16 *alleged misappropriation of Mattel's information*" (Amended MSJ Order at 90

17 (emphasis added).) This circumscription is completely ignored in Mattel's

18 instruction, and would leave jurors to believe that the issue of Bryant's alleged

19 misappropriation of Mattel's information was relevant to this claim.

20      The MGA Parties direct the Court to their Proposed Jury Instructions on the

21 duty of loyalty, located on pages 165-168 of the MGA Parties' Amended Proposed

22 Jury Instructions, which are clearer and more accurate instructions, and which

23 would be far more useful to the jury than the instruction proposed by Mattel.

24

25

26

27

28

# CACI 2100

## CONVERSION—ESSENTIAL FACTUAL ELEMENTS

Mattel claims that defendants MGA, MGA Hong Kong, and Mr. Larian wrongfully exercised control over Mattel's property, including tangible Bratz-related works such as Carter Bryant's drawings.  To establish this claim, Mattel must prove all of the following by a preponderance of the evidence:

      1.     That Mattel was the rightful owner of the property at issue;

      2.     That any of the defendants intentionally took possession of such property for a significant period of time;

      3.     That Mattel did not consent;

      4.     That Mattel was harmed; and

      5.     That any one of the defendants' conduct was a substantial factor in causing harm to Mattel.

**Authority:**  CACI 2100 (modified).

1  **OBJECTION:**

2      Both parties have submitted a version of CACI 2100 regarding the elements

3  of the tort of conversion.  Mattel's instruction is objectionable for a number of

4  reasons.  First**, if** the conversion instruction is to refer to the property allegedly

5  converted, it should do so specifically to avoid jury confusion.  The reference in

6  Mattel's proposed instruction to items "such as" Mr. Bryant's drawings, without

7  specifying the drawings or other items in issue renders the proposed instruction

8  vague and misleading to the jury.

9      Second, the use of the term "substantial factor" in paragraph 5 does not

10 properly state the applicable causation standard for the reasons previously stated.

11     Third, the instruction is further objectionable to the extent it does not advise

12 the jury that a conversion claim cannot be based upon discarded property. *See*

13 *Ananda Church of Self-Realization v. Mass. Bay Ins. Co.*, 95 Cal. App. 4th 1273,

14 1282 (2002).

15  Fourth, the MGA Parties also object to this instruction because it does not properly

16     explain to the jury the limitations that have been placed on Mattel's claims.

17     Specifically, it ignores the fact that the Court granted summary judgment for the

18     MGA Parties on this claim in part, finding that  "UTSA supersedes [Mattel's]

19     counter-claim to the extent it is based upon the misappropriation of Mattel's

20 confidential information, whether or not that information rises to the level of a trade

21     secret" and that Mattel's "counter-claim does not, however, survive to the extent

22     predicated upon the physical documents allegedly misappropriated by Mattel's

23     former employees because Mattel cannot show that the documents had any value

24 'apart from the information contained therein.'" (Amended MSJ Order at 86-87.)

25 This circumscription is completely ignored in Mattel's instruction, and would leave

26     jurors to believe that the issue of alleged misappropriation of Mattel information

27 other than the "physical Bratz-related works" was relevant to this claim.  (*Id.* at 87.)

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**Instructions for Mattel's Trade Secret Claims**

**<ins>CACI 4401</ins>**

**<ins>MISAPPROPRIATION OF TRADE SECRETS—ESSENTIAL FACTUAL
ELEMENTS</ins>**

Mattel claims that MGA and Mr. Larian have misappropriated Mattel trade secrets, including Bratz-related trade secrets, the trade secret doll name "Moxie," and Mattel trade secrets allegedly provided to MGA and Mr. Larian by Mattel's former employees, Mr. Brawer, Mr. Castilla, Mr. Cooney, and Ms. Brisbois.  In addition, Mattel and Mattel Mexico also claim that MGA and Mr. Larian, as well as MGA Mexico and Mr. Machado, have misappropriated trade secrets allegedly provided to the defendants by Mr. Machado, Mr. Vargas, and Ms. Trueba.  The defendants deny these claims.

To succeed on this claim, Mattel must prove, as to any particular claimed trade secret, all of the following:

1.     That Mattel owned or had proper or lawful possession of the information;

2.     That the information was a trade secret at the time of the misappropriation;

3.     That MGA, MGA Mexico, Mr. Larian and/or Mr. Machado improperly acquired, used or disclosed the trade secret;

4.     That Mattel was harmed or MGA, MGA Mexico, Isaac Larian and/or Machado was unjustly enriched; and

5.     That MGA's, MGA Mexico's, Mr. Larian's and/or Machado's acquisition, use or disclosure of the trade secret was a substantial factor in causing the harm or the unjust enrichment.

1    If you find that these factors are satisfied as to any particular defendant and

2 any particular claimed trade secret, you should find for Mattel on its claim of

3 misappropriation as to such trade secret.  If you find these factors are not satisfied

4 as to any particular defendant and any particular claimed trade secret, you should

5 consider whether that defendant is liable for the misappropriation of his or its

6 agents or ratified their misappropriation pursuant to instructions that I will give you

7 later.

8

9    **Authority:**  CACI 4401 (modified); *Silvaco Data Sys. v. Intel Corp.*, 184

10 Cal. App. 4th 210, 220-21 (2010); *Metso Minerals Indus. v. FLSMIDTH-Excel*

11 *LLC*, --- F. Supp. 2d ----, 2010 WL 1850139, at *8 (E.D. Wis. May 7, 2010);

12 *Durney v. Wavecrest Labs.*, LLC, 441 F. Supp. 2d 1055, 1062 (N.D. Cal. 2005).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **OBJECTION:**

2      The MGA Parties object generally to Mattel's trade secret instructions to the

3  extent Mattel separates out instructions for its claims and MGA's claims.  The

4  MGA Parties believe there should be one set of trade secret instructions, as

5  reflected in their proposed jury instructions.  The use of a single set of trade secret

6  instructions will be more efficient, and, because the parties will be in simultaneous

7  claimant and counter-claimant postures, the use of a single set will discourage

8  argument over slanted instructions.

9      The MGA Parties object to Mattel's version of CACI 4401 as follows:

10      First, "Moxie" has not been determined to be a trade secret, and the jury

11  instructions should not suggest that it has.

12      Second, with the exception of "Moxie," Mattel omits both a requirement of

13  particularized identification of the trade secrets and identification in the instructions

14  of the trade secrets that are alleged to have been misappropriated.  The Directions

15  for Use for CACI 4401 call for identification of the alleged trade secrets in Element

16  1.  As an alternative to an exhaustive listing in the instruction, the MGA Parties

17  suggested an element requiring proof of the identity of the alleged trade secrets

18  with reasonable particularity, a necessity if the alleged trade secrets are to be listed

19  in the jury instructions or verdict form or made the subject of intelligent discussion

20  at trial.  Mattel's instruction eliminates all mention of the specifics of the alleged

21  trade secrets and does not include a requirement that they be identified by the

22  claimant.  In place of these requirements, Mattel makes reference to "Bratz-related

23  trade secrets" and "Mattel trade secrets allegedly provided" to MGA, again

24  improperly assuming that "Mattel trade secrets" are in issue.

25      Third, the final paragraph is an improper addition/modification to the CACI

26  instruction.  There is no reason for the "if/should" language that appears in this

27  paragraph.  The Court should instruct the jury on the relevant law, and leave further

28  argument or explanation to counsel.  In this instance, the added sentence is also an

1   incorrect guide to the jury's duties.  Mattel's proposed additional sentence states

2   that, if the jury finds the defendants did not misappropriate trade secrets, it should

3   consider whether the defendants are liable for the misappropriation of trade secrets

4   by their agents.  There are two problems with this statement.

5          The individual defendants, Mr. Larian and Mr. Machado have no agents.

6   MGA, not Mr. Larian, is the principal of any agents of MGA, and there will be no

7   evidence that any agents of Mr. Machado engaged in misappropriation.  There is no

8   justification for consideration of whether "agents" of the individuals

9   misappropriated trade secrets.

10         No second inquiry is necessary for MGA, as MGA could only misappropriate

11  through its agents.  If the jury decides that MGA did not misappropriate trade

12  secrets, it will have considered whether MGA's agents misappropriated trade

13  secrets.  There will be no need for further analysis or inquiry regarding the acts of

14  its agents.  Additionally, the concept of ratification is inconsistent with UTSA as

15  explained elsewhere in these objections.

16         Finally, the use of the term "substantial factor" in paragraph 6 does not

17  properly state the causation requirement Mattel must satisfy.

18         The MGA Parties refer the Court to the proposed instructions at pages 122-

19  124 of the MGA Parties' Amended Proposed Jury Instructions.

20         Mr. Machado joins in the objections of the MGA Parties, and separately

21  objects to this instruction on the following grounds:

22         1.     References to "Mattel" are compound and confusing. Both Mattel, Inc.

23                (the U.S. company) and Mattel de Mexico (the Mexican subsidiary)

24                have asserted a misappropriation of trade secrets claim against Mr.

25                Machado. The jury must "decide the case of each company separately

26                as if it were a separate lawsuit…each company must carry its own

27                burden of proof." (*See* Machado's Proposed Jury Instruction

28

No. 5005.) Hereinafter this objection will be referred to as the "Multiple Claimant Objection."

2.    References to "lawful possession" are improper, because mere possession is insufficient under CUTSA.  For example, the Directions for Use of this instruction require the claimant to "select the appropriate term, 'owned' or 'was a licensee of,' to indicate the plaintiff's interest in the alleged trade secrets." (CACI 4401 Directions for Use.) Hereinafter, this objection will be referred to as the "Non-owner Objection."

3.    References to "acquisition" are improper. The Directions for Use state:

> [i]n some cases, the mere acquisition of a trade secret, as distinguished from a related disclosure or use, will not result in damages and will only be relevant to injunctive relief. Because generally the jury should be instructed only on matters relevant to damage claims, do not select 'acquired' in element 3 or 'acquisition' in element 5 unless there is evidence that the acquisition resulted in damages, other than damages from related disclosure or use."

(CACI 4401 Directions of Use.)

The same principle applies to Mattel, Inc. and Mattel de Mexico's claim here, even though they seek unjust enrichment and not damages from Mr. Machado. Hereinafter, this objection will be referred to as the "Mere Acquisition Objection."

4.    References to "harm" to Mattel are improper insofar as the claim against Mr. Machado is concerned. Mattel has abandoned any claim of actual loss against Mr. Machado and seeks only unjust enrichment. Hereinafter, this objection will be referred to as the "No Loss Objection."

5.    References to substantial factor are improper because the only relief Mattel seeks against Mr. Machado is unjust enrichment.

6.    Line 4 of the second page of this instruction should read:

Amended & Consolidated Objs of MGA Parties & Gustavo Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1  "as to any particular defendant **or** any particular claimed trade secret,

2  you should"

3  7.   Mr. Machado objects generally to these instructions insofar as they fail

4  to explain that "[t]he only possible trade secrets Mr. Machado is

5  accused of misappropriating are the documents Mattel, Inc. and Mattel

6  de Mexico claim he took when he resigned from Mattel Servicios."

7  (*See* Machado's Proposed Special Jury Instruction No. 1.) The

8  instructions also fail to clarify that "[n]No one is asserting any claim

9  against Mr. Machado as to Carter Bryant's drawings, the disputed

10  ownership of Bratz or any copyrights or trade secrets in Bratz." (*Id.*)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **CACI 4402**

## **"TRADE SECRET" DEFINED**

To prove that the information was a trade secret, Mattel must prove all of the following:

    1.     That the information was secret at the time of the misappropriation;

    2.     That the information had actual or potential independent economic value because it was secret; and

    3.     That at least as of the time of the misappropriation, Mattel took reasonable efforts to keep the information secret.

**Authority:** CACI 4402 (modified).

1    **OBJECTION:**

2          The MGA Parties object generally to Mattel's trade secret instructions to the

3    extent Mattel separates out instructions for its claims and MGA's claims.  The

4    MGA Parties believe there should be one set of trade secret instructions, as

5    reflected in their proposed jury instructions.  The use of a single set of trade secret

6    instructions will be more efficient, and, because the parties will be in simultaneous

7    claimant and defendant postures, the use of a single set will discourage argument

8    over slanted instructions.

9          Mattel's version of CACI 4402 misstates the law as a result of the

10   modifications made by Mattel, and the MGA Parties further object as follows:

11         First, as with CACI 4401, Mattel has failed both to identify the alleged trade

12   secrets and to include a requirement that the secrets be identified with reasonable

13   particularity.

14         Second, Mattel's modification of Element 1 of CACI 4402 by adding the

15   language "at the time of the misappropriation" results in a misstatement of the legal

16   requirement or a pointless comment.  Element 2 of CACI 4401 specifies that the

17   claimant must prove that the information in question was a trade secret "at the time

18   of the misappropriation."  It is therefore clear that all questions addressing trade

19   secret status apply to the information "at the time of misappropriation."

20         The CACI Committee found repetition of "the time of misappropriation"

21   concept in CACI 4402 unnecessary, and repetition with respect to individual

22   elements of trade secret status is potentially confusing as well.  To have trade secret

23   status, information must be "secret," a condition requiring that it not have been

24   previously disclosed.  Mattel's modification of the first element of CACI 4402  so

25   that it states that the information must be secret "at the time of the

26   misappropriation" could suggest that it is sufficient if information that had once

27   been disclosed again became "secret" before "the time of the misappropriation."

28   To avoid this, and because repetition of a reference to "the time of

- 68 -

1  misappropriation" is unnecessary, Mattel's modification of Element 2 should be

2  rejected.

3      Mattel's modification of Element 3 of CACI 4402 results in an awkward

4  construction that is not consistent with the law.  Element 3 requires the claimant to

5  prove that it "made reasonable efforts to keep the [information] secret."  Mattel has

6  changed this requirement so that the claimant need only prove that "at least as of

7  the time of the misappropriation, Mattel took reasonable efforts to keep the

8  information secret."  Here, the focus on "the time of the misappropriation" is both

9  wrong and difficult to understand.  If the claimant "took" reasonable efforts "as of

10  the time of the misappropriation," but did not do so for the preceding six years, the

11  information would not be a trade secret "as of the time of the misappropriation."

12  The legal requirement is that the claimant made reasonable efforts to keep the

13  information secret, not that it did so "as of the time of the misappropriation."  There

14  is no "at least" construction that complies with the law.

15      Mattel also changed the CACI instruction so that instead of stating that the

16  claimant "made" reasonable efforts, Mattel's version states that the claimant "took"

17  reasonable efforts.  It is not clear why Mattel made this change, but the MGA

18  Parties suggest sticking with the language of the form instruction.

19      It is possible that Mattel was attempting to specify that the jury should focus

20  on "the time of misappropriation," rather than a later point in time.  If that is

21  Mattel's objective, the extra language was deemed unnecessary by the CACI

22  Committee in light of Element 2 of CACI 4401, and the MGA Parties submit that

23  repetition of a reference to "the time of misappropriation" is unnecessary and

24  potentially confusing.

25      The MGA Parties refer the Court to their version of CACI 4402 at page 126

26  of the MGA Parties' Amended Proposed Jury Instructions.

27      Mr. Machado joins in the objections of the MGA Parties, and separately

28  objects to this instruction on the following grounds:

1.   Multiple Claimant Objection.

2.   The instruction should clarify that the claimant must prove each of these elements for *each* alleged trade secret. (*See* Machado's Proposed Jury Instruction 4402.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **CACI 4403**

# **SECRECY REQUIREMENT**

The secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information. It may be disclosed to employees involved in MGA's use of the trade secret as long as they are instructed to keep the information secret.  It may also be disclosed to nonemployees if they are obligated and expected to keep the information secret. However, it must not have been generally known to the public or to people who could obtain value from knowing it.

**Authority:**  CACI 4403 (modified).

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**OBJECTION:**

1    The MGA Parties object generally to Mattel's trade secret instructions to the
extent Mattel separates out instructions for its claims and MGA's claims.  The
MGA Parties believe there should be one set of trade secret instructions, as
reflected in their proposed jury instructions, for the reasons stated above.

The MGA Parties object to this instruction on the ground that it modifies
CACI 4403 improperly and without citation to case law.  The CACI instruction
provides that a trade secret may be "disclosed to nonemployees if they are obligated
to keep the information secret," but Mattel's proposed instruction provides that a
trade secret has been kept secret if it is "disclosed to nonemployees if they are
obligated *and expected* to keep the information secret."  Mattel did not explain the
reason for its change to the CACI language, so the point and justification are
unclear, but the MGA Parties do not agree that there is a need for this substantive
change to CACI 4403.

The MGA Parties refer the Court to their version of CACI 4403 at page 128
of the MGA Parties' Amended Proposed Jury Instructions.

Mr. Machado joins in the objections of the MGA Parties, and separately
objects to this instruction on the following grounds:

1.    Multiple Claimant Objection.

2.    This instruction is unduly prejudicial, confusing and contrary to the
Court's summary judgment order. Mr. Machado, Ms. Trueba and Mr.
Vargas had no obligation to the claimants *in this action* "to keep the
information secret." The Court ruled that Mr. Machado, Ms. Trueba
and Mr. Vargas were not employees of "Mattel" but instead employees
of Mattel Servicios, a separate entity that is not a party to this action.
The instruction should clarify its inapplicability to Mr. Machado,
Mr. Vargas and Ms. Trueba.

- 72 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 9
## ACTUAL USE BY TRADE SECRET HOLDER NOT REQUIRED

Whether the owner or holder of a trade secret intends to use, or actually does use, the trade secret is not an element of an action for theft of trade secrets. Trade secret law protects the right of a trade secret owner or holder to control the dissemination of its trade secrets. Its protections apply whether or not the trade secret owner or holder intends to use or disclose, or actually does use or disclose, the trade secret.

**Authority**: Cal. Civ. Code § 3426.1; *Leatt Corp. v. Innovative Safety Tech.*, LLC, 2010 WL 1526382, at *5 (S.D. Cal. Apr. 15, 2010) ("To have independent economic value, the information must be 'sufficiently valuable and secret to afford an actual or potential economic advantage over others.'") (quoting *Yield Dynamics, Inc. v. TEA Systems Corp.*, 154 Cal. App. 4th 547, 564 (2007)); *Contour Design, Inc. v. Chance Mold Steel Co*., Ltd., 2010 WL 174315, at *5 (D.N.H. Jan. 14, 2010) (UTSA "encompasses confidential information that has 'potential' economic value, not just 'actual' economic value, and therefore 'extends protection to a plaintiff who has not yet had an opportunity or acquired the means to put a trade secret to use'") (citing UTSA § 1 cmt.); *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 726 (7th Cir. 2003) (finding it irrelevant for purposes of trade secret protection that the plaintiff "did not actually use the concept in its business"); *Courtesy Temporary Service, Inc. v. Camacho*, 222 Cal. App. 3d 1278, 1287 (1990) (noting that the definition of a trade secret "'includes information that has commercial value from a negative viewpoint,'" such as "'the results of lengthy and expensive research which proves that a certain process will not work'") (citation omitted); *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 220-21 (2010); *Metso Minerals Indus. v. FLSMIDTH-Excel LLC*, --- F. Supp. 2d ----, 2010 WL

1  1850139, at *8 (E.D. Wis. May 7, 2010); *Durney v. Wavecrest Labs.*, LLC, 441 F.

2  Supp. 2d 1055, 1062 (N.D. Cal. 2005).

**OBJECTION:**

Mattel has submitted several special instructions regarding its trade secret claims.  The MGA Parties object to each of the special instructions.  The CACI Committee recently revised the CACI trade secret instructions, and did not see fit to add the concepts addressed in Mattel's special instructions.  *See* Judicial Council of California Civil Jury Instructions (CACI) 2011 Edition.  The main purpose that would be served by Mattel's special instructions would be to highlight aspects of Mattel's case it wants to emphasize.  There is no need for the Court to supplement the CACI instructions.

Mattel's Special Instruction No. 9 follows a group of instructions that explain the elements of a trade secret claim and define the important concepts relevant to the elements.  Special Instruction No. 9 begins with a statement that something that was not mentioned as an element of the claim is not an element of the claim.  (To make matters worse, the same idea is repeated in the third sentence.)  This is not necessary, and Mattel cannot fairly expect the Court to highlight all of the points it considers worth highlighting.  This unnecessary sentence is not helped by its use of the argumentative and inflammatory term "theft," rather than the statutory term "misappropriation."

There is also no need for the comment in the second sentence about a right to "control dissemination" of trade secrets.  Trade secret law protects the owner of a trade secret against misappropriation, as defined in the statute.  Mattel attempts to insert an argument that it does something else.  Trade secret law does not "protect" a right to control dissemination, it "protects" the right to be free from misappropriation.  That right may have various aspects in a given case or for a given trade secret owner, but there is no reason why the Court should promote Mattel's case by inserting non-statutory concepts of this nature.

Mattel cites *Silvaco*, but even *Silvaco* does not support the "control dissemination" language in its proposed instruction.  While the Court in *Silvaco*

1   stated that "[t]rade secret law, in short, protects only *the right to control the*

2   *dissemination of information*," this was in the context of defining a trade secret, not

3   defining misappropriation.  *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210,

4   221 (2010) (emphasis in original).  The paragraph begins "CUTSA defines '[t]rade

5   secret' to mean 'information…'" and continues to state that a "trade secret is not

6   the idea or fact itself, but *information* tending to communicate (disclose) the idea or

7   fact to another."  *Id*.  The language "*the right to control the dissemination of*

8   *information*" is intended, at most, to be in the context of what can constitute a trade

9   secret itself, *not* what constitutes an actionable misappropriation.  Indeed, in the

10  next section, the court in *Silvaco* goes on to define misappropriation.  *Id*. at 222-

11  223.  The pertinent section of *Silvaco* defining a trade secret makes one thing clear:

12  pure ideas are not trade secrets.

13      The MGA Parties also object to Special Instruction No. 9 as follows:

14      First, CACI 4412 defines "Independent Economic Value."  To the extent the

15  Special Instruction seeks to modify, supplement or contradict CACI 4412, it is

16  improper.

17      Second, based on the citations contained in the Special Instruction, Mattel is

18  seeking to insert this instruction for purposes that are not relevant to this case (e.g.,

19  Mattel is not arguing for a "negative trade secret" or "negative know-how"

20  resulting from expending resources proving that an idea would not work).

21      Mr. Machado joins in the objections of the MGA parties, and separately

22  objects to this instruction on the following ground(s):

23      1.      This instruction is improper. Actual or potential use is already included

24              in subpart (a) to the instruction defining "independent economic

25              value." (CACI 4412.) Repeating it here is confusing to the jury and

26              unduly emphasizes one element of CACI 4412 over the others.

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 10

## CONCEPTS MAY BE TRADE SECRETS

Concepts and ideas, including concepts for new products, can have value independent from the product they eventually inspire.  Concepts and ideas for new products or products under development, such as product designs and product names, may be trade secrets if the information meets the other requirements for trade secret protection.  In addition, doll names may be trade secrets that derived independent economic value from not being generally known as the name for a doll or line of dolls in the toy industry, even if they are generally known as a name for other products or used in other industries or in common parlance.

**Authority:**  *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 726 (7th Cir. 2003) (finding issue of fact as to whether "concept for noise-producing toy railroad track" was trade secret); *see also* 2 Roger M. Milgrim, Milgrim on Trade Secrets § 9.05[4], at 9-487-9-488.2 & n. 36 (Eric E. Benson, ed., 2003 rev. ed. & 2009 supp.) (explaining that trade secrets may reside in "confidential disclosures of concepts, or as yet-untested, ideas for a new product or new process"); *see also Friedman v. Quest Int'l Fragrances*, 58 Fed. Appx. 359, 360 (9th Cir. 2003) (remanding case to district court to address whether plaintiff's ideas for marketing fragrances qualified for trade secret protection – again, concern was about secrecy, and not whether "ideas" could be trade secrets); *Russo v. Ballard Medical Prods.*, 550 F.3d 1004, 1011-12 (10th Cir. 2008) ("Trade secret laws operate only to protect those ideas held in secret, while patent law affords the exclusive means of protecting the right to an invention only after it is disclosed to the public.  [citation]  Similarly, trade secret law applies to innovations that may not ever be amenable to patent, given patent law's strict requirements of novelty,

1  utility, and non-obviousness."); *Contour Design, Inc. v. Chance Mold Steel Co.*

2  *Ltd.*, 2010 WL 174315, at *8 (D.N.H., Jan. 14, 2010) (holding that plaintiff's "idea

3  to incorporate a removable roller into its ergonomic mouse series possesses" the

4  characteristics of a trade secret as defined in the UTSA); *O2 Micro Int'l Ltd. v.*

5  *Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1089-90 (N.D .Cal. 2006) ("It

6  does not matter if a portion of the trade secret is generally known, or even that

7  every individual portion of the trade secret is generally known, so long as the

8  combination of all such information is not generally known."); *Mattel, Inc. v. MGA*

9  *Entertainment, Inc.*, 2010 WL 5422504, at *23 (C.D. Cal. Dec. 27, 2010) ("fact-

10  finder [will be] tasked with determining whether the doll names Bratz and Jade

11  qualify as trade secrets; in particular, whether the names derive independent value

12  from not being generally known.")

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**OBJECTION:**

Special Instruction No. 10 is another in which Mattel seeks to have the Court argue its case.  The instruction begins with a statement about a matter of proof, that "concepts and ideas" can have "value independent from the product they eventually inspire."  This is a question of adjudicative fact that must be proved, not a point of law on which the Court should instruct the jury.  The explanation of the elements of the claim and the definition of the important terms that appear in the elements are adequate to provide a roadmap for Mattel's trial presentation and for eventual argument by counsel.

The instruction proceeds with a variety of other statements on matters that do not involve points of law.  To the extent the balance of the instruction addresses genuine points of law, it does so in a manner that is incomplete and therefore argumentative and suggestive of the result desired by Mattel.  For example, Mattel asks that the Court state that "doll names may be trade secrets that derived independent economic value from not being generally known as the name for a doll or line of dolls in the toy industry, even if they are generally known as a name for other products or used in other industries or in common parlance," which is at best a gross overgeneralization, and plainly a matter requiring proof.  Here also Mattel has no right to a "head start" from the Court, even in an instruction that is more tempered than the aggressive instruction proposed by Mattel.

A "trade secret" is defined in CACI 4401.  There is no need for a further supplement to the definition, and no need to start the cycle of point/counterpoint that would be needed to provide balance to any instruction addressing the specific claims of the parties.

1

**MATTEL'S SPECIAL JURY INSTRUCTION NO. 11**

2

**TRADE SECRETS MAY EXIST IN COMBINATION OF ELEMENTS**

3

4       Even if a portion or aspect of a claimed trade secret is generally known or not

5   secret, or even if all individual aspects of a claimed trade secret are generally

6   known as individual elements, the claimed trade secret in its entirety may still be a

7   trade secret if the combination of elements that comprise it are not generally known

8   and meet the other requirements for trade secret protection.

9

10       **Authority:**  *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp.

11   2d 1070, 1089-90 (N.D. Cal. 2006) ("It does not matter if a portion of the trade

12   secret is generally known, or even that every individual portion of the trade secret is

13   generally known, so long as the combination of all such information is not

14   generally known.")

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**OBJECTION:**

As the MGA Parties understand it, Mattel has not disclosed any "combination" trade secrets.  Mattel's Special Instruction No. 11 should therefore not be given because it is not relevant, and might be misinterpreted.  The instruction is also unnecessary because a "trade secret" is adequately defined in CACI 4401, and there is no need for refinements addressing the various specific arguments the parties might like to make about classes of trade secrets.

If a "combination" instruction is to be given, it should be accurate and balanced, unlike Mattel's proposed instruction.  Mattel claims, for example, that "if a portion or aspect of a claimed trade secret is generally known or not secret . . . the claimed trade secret in its entirety may still be a trade secret."  This is not a proposition of universal accuracy, even if it is assumed that terms like "portion" and "aspect" are sufficient to explain the important legal points.  "If a portion . . . of a trade secret is generally known or not secret," the "secret in its entirety" will not be secret in many cases.  It is doubtful that the circumstances in which general knowledge of a "portion" or "aspect" will not be inconsistent with trade secret status can be stated succinctly, but Mattel's effort has resulted in a misstatement of the law.

It may not be significant, for example, that "the combination of elements that comprise" the alleged trade secret are not generally known, depending on the nature of the "portion" or "aspect."  There is no simple equation to the effect that knowledge of a "portion" or "aspect" does not defeat trade secret status if "the combination of elements that comprise" the alleged trade secret are not generally known.  A statement to the effect that trade secret status may exist in those circumstances is suggestive of the idea that trade secret status is common or to be expected, but that is not necessarily the case.

The proposed instruction is also misleading as a result of its use of the concept of a "combination of elements."  "Combination of elements" is not a

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1   technical legal term in the law of trade secrets.  A "combination of elements"

2   including a generally known "portion" or "aspect" will not automatically be a

3   credible candidate for trade secret status, even when the "combination" is not

4   generally known.

5          In the context of this case and the claims made by Mattel, this instruction is

6   also misleading as a result of the law of copyright preemption.  A reference to

7   "elements" may lead the jury to consider various "elements" in the Carter Bryant

8   drawings, but a trade secret claim focused on those "elements" should be

9   preempted by copyright law.

1

**MATTEL'S SPECIAL JURY INSTRUCTION NO. 12**

2

**INFORMATION OBTAINED THROUGH REVERSE ENGINEERING MAY**

3

**BE TRADE SECRETS**

4

5      Information that Mattel obtained by investing significant resources to reverse

6   engineer may be a trade secret if the information meets the other requirements for

7   trade secret protection.

8

9      **Authority:**  MSJ Order (Dkt. No. 9538 at 49) (quoting Legis. Com. com. to

10   Civ. Code § 3426.1; citing *Hoffman-LaRouche Inc. v. Yoder*, 950 F. Supp. 1348,

11   1358 (S.D. Ohio 1997)); Leg. Com. com. to Cal. Civ. Code § 3426.1.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **OBJECTION:**

2        The MGA Parties object to Special Instruction No. 12 as follows:

3        First, a "trade secret" is defined in CACI 4401.  There is no need for a further

4   supplement to that definition.

5        Second, the proposed instruction is overbroad and potentially misleading.

6   The concept of "reverse engineering" may only be relevant to one alleged trade

7   secret, the merchant modeling optimization tool allegedly brought to MGA by Dan

8   Cooney.  If the Court is inclined to give this instruction, it should be tailored to the

9   specific alleged trade secret at issue.

10        The use of the phrase "reverse engineering" is also inappropriate because it

11   may serve to exaggerate the nature or significance of the work Mattel did in

12   connection with the merchant modeling optimization tool.  MGA submits that the

13   evidence will show that Mattel carried out ordinary mathematical calculations that

14   do not merit the label "engineering."  An instruction using the term "reverse

15   engineering" will place the Court in the position of endorsing the idea that the work

16   Mattel performed is of greater significance than it was.  Mattel can attempt to prove

17   that it engaged in "reverse engineering," but it would not be appropriate for the

18   Court to lend support to Mattel's characterization by using the term "reverse

19   engineering" in this instruction.

20        A further danger in an instruction asserting that information developed as a

21   result of "reverse engineering" is a trade secret is that the use of "reverse

22   engineering" is not an "improper means" of acquiring information alleged to be a

23   trade secret.  If Mattel created information as a result of "reverse engineering," it

24   stands to reason that the information could be derived by others in the same way.

25   Moreover, information that is discernible by reverse engineering will often not be

26   "secret" such that it has trade secret status.  An instruction stating that Mattel can

27   create trade secrets through "reverse engineering" that does not include a more

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1    complete statement of the relevant principles would be potentially misleading and

2    likely to confuse the jury.

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

# CACI 4412

## "INDEPENDENT ECONOMIC VALUE" EXPLAINED

Information has independent economic value if it gives the owner or holder an actual or potential business advantage over others who do not know the information and who could obtain economic value from its disclosure or use.

In determining whether information had actual or potential independent economic value because it was secret, you may consider the following:

(a)     The extent to which the information's owner or holder obtained or could obtain economic value from the information in keeping it secret;

(b)     The extent to which others could obtain economic value from the information if it were not secret;

(c)     The amount of time, money, or labor the information's owner or holder expended in developing the information;

(d)     The amount of time, money, or labor that was saved by a competitor who used the information.

The presence or absence of any one or more of these factors is not necessarily determinative.

**Authority:**  CACI 4412 (modified); *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 220-21 (2010); *Metso Minerals Indus. v. FLSMIDTH-Excel LLC*, --- F. Supp. 2d ----, 2010 WL 1850139, at *8 (E.D. Wis. May 7, 2010); *Durney v. Wavecrest Labs., LLC*, 441 F. Supp. 2d 1055, 1062 (N.D. Cal. 2005).

**OBJECTION:**

The MGA Parties object to Mattel's modification of CACI 4412.

Mattel has added the phrase "or holder" following "owner" in the first sentence of CACI 4412.  There is no issue as to a "holder" in this case, and no reason to depart from the CACI instruction.

Mattel has also changed the substance of the factors listed in CACI 4412. Subpart (a) refers to "[t]he extent to which [*name of plaintiff*] obtained or could obtain economic value from the information in keeping it secret."  Mattel's proposed instruction refers generically to "the information's owner or holder," rather than Mattel.  The reason for this modification is not clear.  Subpart (a) calls for a context-specific assessment of the extent to which the claimant derived or could derive value, and if CACI 4412 is given, it should be given in the terms in which it was written, with a reference to the claimant.  The change might not be meaningful, and if it isn't, there is no reason to make a change.  If Mattel believes there is a reason for the change, it has not been explained. Mattel has offered no explanation for the change.

Mr. Machado joins in the objections of the MGA parties, and separately objects to this instruction on the following ground(s):

      1.      Non-owner Objection.

# CACI 4404

## REASONABLE EFFORTS TO PROTECT SECRECY

To establish that the information Mattel is claiming to be trade secret was in fact trade secret, Mattel must prove that it made reasonable efforts under the circumstances and at least as of the time of the misappropriation to keep that information secret.  "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as Mattel, exercising due care to protect important information of the same kind.

In determining whether or not Mattel made reasonable efforts to keep the information secret, you should consider all of the facts and circumstances.  Among the factors you may consider are the following:

(a)     Whether documents or files containing the information were marked with confidentiality warnings;

(b)     Whether Mattel instructed its employees to treat the information as confidential;

(c)     Whether Mattel restricted access to the information to the persons who had a business reason to know the information;

(d)     Whether Mattel kept the information in a restricted or secured area;

(e)     Whether Mattel required employees or others with access to the information to sign confidentiality or nondisclosure agreements;

(f)     Whether Mattel took any action to protect the specific information, or whether it relied on general measures taken to protect its business information or assets;

(g)     The extent to which any general measures taken by Mattel would prevent the unauthorized disclosure of the information; and

1          (h)      Whether there were other reasonable measures available to Mattel that

2    it did not take.

3          The presence or absence of any one or more of these factors is not

4    necessarily determinative.

5

6          **Authority:**  CACI 4404.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1  **OBJECTION:**

2      The MGA Parties objects to Mattel's modification of CACI 4404.

3      Mattel added "and at least as of the time of the misappropriation" following

4  "reasonable efforts under the circumstances."  This is an incorrect statement of the

5  law.  "At least as of the time of the misappropriation" is not good enough if that

6  means that reasonable efforts were not previously made.  The addition of this

7  concept is also inappropriate because a failure to make reasonable efforts after the

8  misappropriation may limit the remedies that are available.  If misappropriation by

9  acquisition occurs, but does not cause immediate harm, a subsequent failure to

10  make reasonable efforts would most likely preclude the recovery of damages for

11  later use of the information.  All in all, Mattel's proposed modification is

12  unnecessary and inappropriate.

13      The MGA parties also object to the absence from Mattel's proposed

14  instruction of the bracketed final sentence of the first paragraph of CACI 4404.

15  "This requirement applies separately to each item that [*name of plaintiff*] claims to

16  be a trade secret."  The requirement of reasonable efforts applies to each alleged

17  secret, and the bracketed language from CACI 4404 is essential in any multiple

18  trade secret case.  There is no reason not to use it in this case.

19      Mattel changed the meaning of subpart (a) of CACI 4404 by deleting the

20  word "computer" before "files" in the phrase "[w]hether documents or ~~computer~~

21  files containing the information were marked with confidentiality warnings."

22  CACI 4404 and the law require consideration of the claimant's treatment of

23  computer files, not just hard copy files, when the reasonableness of the claimant's

24  efforts is assessed.  Subpart (a) of CACI 4404 should be given as written to ensure

25  that the jury understands the breadth of the factors it is to consider.

26      The MGA Parties refer the Court to their version of CACI 4404 at pages 132-

27  133 of their Amended Proposed Jury Instructions.

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1         Mr. Machado joins in the objections of the MGA parties, and separately

2    objects to this instruction on the following ground(s):

3         Multiple Claimant Objection.

4         Subparts (b) and (e) of this instruction is misleading, confusing and contrary

5    to the Court's summary judgment order. The Court ruled that Mr. Machado, Ms.

6    Trueba and Mr. Vargas were not employees of "Mattel" but instead employees of

7    Mattel Servicios, a separate entity that is not a party to this action.  The instruction

8    should clarify its inapplicability to Mr. Machado, Mr. Vargas and Ms. Trueba.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 13
## NOT MARKING AS CONFIDENTIAL IS NOT DETERMINATIVE

3

4        Even if Mattel did not mark a document as "confidential," you can find that

5   Mattel took reasonable efforts to protect its secrecy.

6

7        **Authority:**  MSJ Order (Dkt. No. 9538 at 30) ("[I]t makes no sense to hold,

8   as a matter of law, that the failure to mark documents as confidential precludes a

9   finding of reasonable efforts, since the very employee that creates the trade secret at

10  the employer's direction may be the individual who misappropriates it.")

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**OBJECTION:**

CACI 4404 provides a definition of "reasonable efforts" to maintain secrecy. Mattel proposes in its Special Instruction No. 13 to highlight an aspect of one of the matters addressed in CACI 4404. There is no need to supplement the CACI definition, and no reason to single out the issue of confidentiality markings.

Subpart (a) of CACI 4404 identifies whether "documents or computer files containing the information were marked with confidentiality warnings" as one of the factors that may be considered in the assessment of whether reasonable efforts have been made. The concluding sentence of CACI 4404 explicitly states that "[t]he presence or absence of any one or more of these factors is not necessarily determinative." There is no need for an instruction stating that a failure to mark a given document is not determinative.

In addition, this instruction could be written the other way (*i.e.*, you may find that Mattel failed to use reasonable efforts if it did not mark documents as confidential). Either party can argue the significance of the marking point in closing argument. There is no need for the Court to emphasize one party's argument in an instruction.

Mr. Machado joins in the objections of the MGA parties, and separately objects to this instruction on the following ground(s):

1.  Multiple Claimant Objection.

2.  This instruction is unduly repetitive and confusing. Confidential markings are already discussed as a relevant but not determinative factor in subpart (a) of CACI 4404.

Amended & Consolidated Objs of MGA Parties & Gustavo Machado to Mattel's 4th Amended Prop Jury Instructions Case No. CV 04-9049 DOC (RNBx)

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 14

## CONFIDENTIALITY AGREEMENTS AS REASONABLE EFFORTS TO PROTECT SECRECY

If you find that Mattel required its employees to sign confidentiality agreements, that should be considered in deciding whether Mattel took reasonable efforts to keep information secret, and you may find that such agreements alone are sufficient if the information was not disclosed by Mattel outside of Mattel.

**Authority:** *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) ("MAI took reasonable steps to insure the secrecy to this information as required by the UTSA.  MAI required its employees to sign confidentiality agreements respecting its trade secrets, including the Customer Database.")

**OBJECTION:**

Mattel's Special Instruction No. 14 misstates the law and is, in any event, unnecessary.  There is no need to supplement the CACI 4404 instruction on reasonable efforts.

Mattel's instruction posits that a requirement that employees sign confidentiality agreements is sufficient to establish that reasonable efforts were made if the alleged trade secrets were "not disclosed by Mattel outside of Mattel." That thought contradicts CACI 4404, which explicitly states that "the presence or absence of any one or more of these factors is not necessarily determinative," and requires the consideration of "all of the facts and circumstances."  There is no justification for the suggestion that this single factor can be controlling in all circumstances in which information is "not disclosed by Mattel outside of Mattel."

The brief comment on the use of confidentiality agreements in *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993), does not establish as a matter of law that the use of confidentiality agreements is controlling.  It is not clear from the Ninth Circuit's opinion that the reasonable efforts issue was even in dispute.  The court noted that the defendant argued that the database in question was not a trade secret, but it did not explain the basis for the defendant's position. At most, the court was summarizing the reasons for its conclusion based on the record presented.

There is no need for the Court to highlight specific efforts – or lack or efforts – in the jury instructions on reasonable efforts.

Mr. Machado joins in the objections of the MGA parties, and separately objects to this instruction on the following ground(s):

1.    Multiple Claimant Objection.

2.    This instruction is unduly repetitive and confusing. Confidentiality agreements are already discussed as a relevant but not determinative factor in subpart (b) of CACI 4404.

- 96 -

3.    This instruction is unduly prejudicial, confusing and contrary to the
Court's summary judgment order. Mr. Machado, Ms. Trueba and Mr.
Vargas did not "sign confidentiality agreements" with the claimants *in
this action*. The Court ruled that Mr. Machado, Ms. Trueba and Mr.
Vargas were not employees of "Mattel or Mattel Mexico" but instead
employees of Mattel Servicios, a separate entity that is not a party to
this action.  The instruction should clarify its inapplicability to Mr.
Machado, Mr. Vargas and Ms. Trueba.

# CACI 4405

## MISAPPROPRIATION BY ACQUISITION

MGA, MGA Mexico, Mr. Larian and/or Mr. Machado can be liable for misappropriation if they improperly acquired, used or disclosed Mattel's trade secrets.  MGA, MGA Mexico, Mr. Larian and/or Mr. Machado misappropriated Mattel's trade secrets by acquisition if MGA, MGA Mexico, Isaac Larian and/or Machado acquired the trade secrets and knew or had reason to know that they used improper means to acquire them, or that third parties used improper means to acquire them.

**Authority:**  CACI 4405 (modified).

**OBJECTION:**

The MGA Parties object to the use of CACI 4405 as irrelevant.  Mattel is not making a damage claim based on an allegation of misappropriation by acquisition.  *See* CACI 4405, Directions for Use ("Because generally the jury should only be instructed on matters relevant to damage claims, this instruction should not be given unless there is evidence that the acquisition resulted in damages, other than damages from related disclosure or use.").

Mattel's proposed instruction is also objectionable because it includes an unnecessary preamble.  There is no reason for a statement to the effect that the defendants sued by Mattel "can be liable," and it is not proper to paraphrase the elements of misappropriation.  If an acquisition instruction is given, it should begin as CACI 4405 begins.

Mattel has also improperly modified the final clause of CACI 4405.  CACI 4405 states that a party misappropriated trade secrets by acquisition if he, she, or it acquired trade secrets "and knew or had reason to know that [he/she/it[*name of third* party]] used improper means to acquire [it/them]."  The instruction make the defendants liable for misappropriation by acquisition if they personally used improper means to acquire trade secrets or acquired trade secrets knowing or having reason to know that the trade secrets were acquired by improper mean by an identified third party.  Rather than identify a specific third party or parties, as CACI 4405 directs, Mattel uses a generic reference to "third parties."

If an acquisition instruction is given, it should follow the form of CACI 4405 to provide clear and specific guidance to the jury and to avoid confusion.  If Mattel presents an acquisition case against the former employees of Mattel or Mattel Mexico, it will presumably allege that they personally used improper means to acquire trade secrets, an unlikely proposition given that the employees acquired whatever they acquired in the course of their work.  If Mattel presents an acquisition case against MGA or MGA Mexico, it will have to prove both that

- 99 -

1   specific individuals used improper means to acquire trade secrets and that MGA or

2   MGA Mexico not only acquired the trade secrets, but knew or had reason to know

3   that they used improper means to acquire the trade secrets or that the specific

4   individuals used improper means to acquire the trade secrets.  To avoid confusion

5   about the various facts that must be proved, an instruction that is clear as to the

6   potential liability of all parties is essential.

7        It is worth noting that "acquisition" requires more than simple physical

8   receipt of trade secret information.  "The choice of [acquire] over 'receive' suggests

9   that inadvertently coming into possession of a trade secret will not constitute

10  acquisition." *Silvaco Data Sys. V. Intel Corp.*, 184 Cal. App. 4th 210, 223 (2010).

11  To avoid a watering down of the required proof, a complete and precise instruction

12  on acquisition should be given if the MGA Parties' objection to an acquisition

13  instruction is overruled.

14        Mr. Machado joins in the objections of the MGA parties, and separately

15  objects to this instruction on the following ground(s):

16       1.      Mere Acquisition Objection. This entire instruction should be stricken

17               as to all parties.

18       2.      Multiple Claimant Objection

19       3.      This instruction is unduly prejudicial, confusing and contrary to the

20               Court's summary judgment order. Mr. Machado, Ms. Trueba and

21               Mr. Vargas were not employees of "Mattel" and did not owe the

22               claimants *in this case* any duties as employees. The Court ruled that

23               Mr. Machado, Ms. Trueba and Mr. Vargas were not employees of

24               "Mattel" but instead employees of Mattel Servicios, a separate entity

25               that is not a party to this action.  The instruction should clarify its

26               inapplicability to Mr. Machado, Mr. Vargas and Ms. Trueba.

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

## CACI 4408

## IMPROPER MEANS OF ACQUIRING TRADE SECRET

Improper means of acquiring a trade secret or knowledge of a trade secret include, but are not limited to, theft, bribery, misrepresentation, breach or inducing a breach of a duty to maintain secrecy.

However, it is not improper to acquire a trade secret or knowledge of the trade secret by:

1.     Independent efforts to invent or discover the information;

2.     Obtaining the information as a result of a license agreement with the owner of the information;

3.     Observing the information in public use or on public display; or

4.     Obtaining the information from published literature, such as trade journals, reference books, the Internet, or other publicly available sources.

**Authority:**  CACI 4408.

Amended & Consolidated Objs of MGA Parties & Gustavo Machado to Mattel's 4th Amended Prop Jury Instructions Case No. CV 04-9049 DOC (RNBx)

1   **OBJECTION:**

2          The MGA Parties object to this instruction on the ground that it omits one of

3   the acceptable means of acquiring a trade secret from CACI 4408, "Reverse

4   engineering; that is, examining or testing a product to determine how it works, by a

5   person who has a right to possess the product."

6          The MGA Parties refer the Court to their version of CACI 4408 at page 139

7   of their Amended Proposed Jury Instructions.

8          Mr. Machado joins in the objections of the MGA parties, and separately

9   objects to this instruction on the following ground(s):

10         1.     Multiple Claimant Objection

11         2.     This instruction is unduly prejudicial, confusing and contrary to the

12                Court's summary judgment order. Mr. Machado committed no

13                "bribery, misrepresentation, breach or inducing a breach of duty to

14                maintain secrecy" as to the claimants *in this action*. The instruction

15                should clarify its inapplicability to Mr. Machado, Mr. Vargas and

16                Ms. Trueba.

17         3.     Subpart (4) should include references to information purchased from

18                third parties. (*See* Machado's Proposed Jury Instruction CACI 4408.)

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

# CACI 4406

## MISAPPROPRIATION BY DISCLOSURE

MGA, MGA Mexico, Mr. Larian and/or Mr. Machado misappropriated Mattel's trade secrets by disclosure if MGA, MGA Mexico, Mr. Larian and/or Machado:

1.     Disclosed Mattel's trade secrets without its consent; and

2.     Did any of the following:

acquired knowledge of the trade secrets by improper means; or

at the time of disclosure, knew or had reason to know that their knowledge of the trade secrets came from or through a third party, such as a former Mattel employee, and that the third party had previously acquired the trade secrets by improper means; or

at the time of disclosure, knew or had reason to know that their knowledge of the trade secrets was acquired in violation of their duty to Mattel or Mattel Mexico to keep the information secret; or

at the time of disclosure, knew or had reason to know that their knowledge of the trade secrets came from or through a third party, such as a former Mattel employee, and that the third party had a duty to Mattel or Mattel Mexico to keep the information secret.

**Authority:**  CACI 4406 (modified).

**OBJECTION:**

The MGA Parties object to this instruction on the following grounds:

First, the introductory language in the instruction uses "and/or." There is no "and/or" proposition addressed by this instruction. Each defendant is entitled to separate consideration, and "or" is the correct way to present the issues.

Second, the next to last paragraph of CACI 4406, the basis for Mattel's instruction, calls for identification of the specific individual from or through whom knowledge of the trade secrets was obtained: "knew or had reason to know that [his/her/its] knowledge of [*name of plaintiff*]'s trade secret[s] came from or through [**name of third party**], and that [**name of third party**] had a duty to [*name of plaintiff*] to keep the [*e.g., information*] secret." If the Court gives separate instructions for the trade secret claims made by Mattel and MGA, the CACI 4406 form should be retained. Requiring the identification of the alleged source of the trade secrets will, as the CACI Committee obviously intended, provide a focus for the jury's consideration of the issues.

Rather than identify the specific individuals alleged to be the source of the trade secrets, Mattel refers generically to "a third party" and adds, "such as a Mattel employee." There is no need for this suggestion if there is to be only a generic reference to "a third party."

The MGA Parties also object to the use of "their," rather than "its or his" on the third line of numbered paragraph 2 in Mattel's instruction. As noted above, the disclosure issues addressed by this instruction must be answered separately for each defendant. Either Mattel is ungrammatically using "their" for the singular or wrongly grouping the defendants. The use of "their" results in a failure to distinguish among the defendants and advise the jury that it must make separate findings with respect to each defendant.

The MGA Parties also object to Mattel's instruction because the clause that appears at lines 14-16 on page 70 of Mattel's Fourth Amended Proposed Jury

Instructions improperly revises CACI 4406.  The third paragraph of numbered paragraph 2 of CACI 4406 refers to a situation in which the defendant's knowledge of trade secrets

> was acquired [*insert circumstances giving rise to a duty to maintain secrecy*], which created a duty to keep the [*select short term to describe, e.g., information*] secret

Mattel modified this paragraph to read as follows:

> was acquired in violation of their duty to Mattel or Mattel Mexico to keep the information secret

Mattel's modification is improper because it contains an affirmative statement by the Court that the employees had a duty to keep all of the information in question secret.  The CACI form presents a similar potential danger, but that danger can be addressed in one of two ways.  One is to use the following language from California Civil Code section 3426.1(b)(2)(B)(ii):

> was acquired under circumstances giving rise to a duty to maintain its secrecy

Mattel takes a similar approach in its proposed modification of CACI 4407 on lines 13-15 of page 72 of Mattel's Fourth Amended Proposed Jury Instructions.  An alternative would be to use the language in the MGA Parties' proposed CACI 4406 instruction:

> was acquired in circumstances giving rise to a duty to maintain secrecy, which created a duty to keep the information secret

The statutory language (or the MGA Parties' modification of CACI 4406) will leave the parties to their proof while explaining the law to the jury.

Mr. Machado joins in the objections of the MGA parties, and separately objects to this instruction on the following ground(s):

    1.    Multiple Claimant Objection.

    2.    This instruction is unduly prejudicial, confusing and contrary to the Court's summary judgment order. Mr. Machado, Ms. Trueba and Mr. Vargas had no "duty to Mattel to keep the information secret." The

1   Court ruled that Mr. Machado, Ms. Trueba and Mr. Vargas were not

2   employees of "Mattel" but instead employees of Mattel Servicios, a

3   separate entity that is not a party to this action.  The instruction should

4   clarify its inapplicability to Mr. Machado, Mr. Vargas and Ms. Trueba.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CACI 4407

## MISAPPROPRIATION BY USE

MGA, MGA Mexico, Mr. Larian and/or Mr. Machado misappropriated Mattel's trade secrets by use if MGA, MGA Mexico, Mr. Larian and/or Mr. Machado:

      1.     Used Mattel's trade secrets without its consent; and

      2.     Did any of the following:

      Acquired knowledge of the trade secrets by improper means; or

      at the time of use, knew or had reason to know that their knowledge of the trade secrets came from or through a third party, such as a former Mattel employee, and that the third party had previously acquired the trade secrets by improper means; or

      at the time of use, knew or had reason to know that their knowledge of the trade secrets was acquired under circumstances creating a legal obligation to limit use of the trade secrets; or

      at the time of use, knew or had reason to know that their knowledge of the trade secrets came from or through a third party, such as a former Mattel employee, and that the third party had a duty to Mattel or Mattel Mexico to limit use of the trade secrets.

**Authority:**  CACI 4407 (modified).

**OBJECTION:**

The MGA Parties also object to the use of "and/or" in Mattel's version of CACI 4407.  Any "use" issues are individual issues that must be considered separately.

Numbered paragraph 2 in Mattel's version of CACI 4407 is similar to paragraph 2 in Mattel's version of CACI 4406, and is objectionable for similar reasons.  For example, "their" is used instead of appropriate words that do not improperly group the defendants or mistake the plural for the singular.  Mattel again departs from the CACI form by referring generically to "a third party" and includes an improper suggestion with the phrase "such as a Mattel employee."

The MGA Parties object to two additional modifications of CACI 4407 by Mattel.  In the final two clauses of Mattel's version of CACI 4407, on lines 15 and 19 on page 72 of Mattel's Fourth Amended Proposed Jury Instructions, Mattel substitutes "the trade secrets" for "the information," as indicated in CACI 4407. The language of the form instruction should be used.

Mr. Machado joins in the objections of the MGA parties, and separately objects to this instruction on the following ground(s):

1.  Multiple Claimant Objection.

2.  This instruction is unduly prejudicial, confusing and contrary to the Court's summary judgment order. Mr. Machado, Ms. Trueba and Mr. Vargas had no "duty to Mattel to keep the information secret." The Court ruled that Mr. Machado, Ms. Trueba and Mr. Vargas were not employees of "Mattel" but instead employees of Mattel Servicios, a separate entity that is not a party to this action.  The instruction should clarify its inapplicability to Mr. Machado, Mr. Vargas and Ms. Trueba.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CACI 3701

## LIABILITY FOR AGENTS' MISAPPROPRIATION

As explained earlier, MGA, MGA Mexico, Mr. Larian and Mr. Machado may be liable for misappropriation if they improperly acquired, used or disclosed a trade secret.  In addition, and independently, MGA, MGA Mexico, Mr. Larian may be liable for the improper acquisition, use or disclosure of a trade secret by one or more of their agents.  Now I will instruct you on whether the defendants are liable for their agents' misappropriations, even if you find they did not themselves improperly acquire, use or disclose a particular trade secret.

Mattel and Mattel Mexico claim they were harmed by the acts of misappropriation by former Mattel employees Mr. Bryant, Ms. Brisbois, Mr. Brawer, Mr. Castilla, Mr. Cooney, Mr. Machado, Ms. Trueba, and Mr. Vargas. If you find that Mr. Bryant, Ms. Brisbois, Mr. Brawer, Mr. Castilla, Mr. Cooney, Mr. Machado, Ms. Trueba, or Mr. Vargas misappropriated Mattel's trade secrets, then you must decide whether MGA, MGA Mexico, or Larian are responsible for the harm.

A person or a corporation is responsible for harm caused by the wrongful conduct of their employees or agents while acting within the scope of their employment or authority.

MGA, MGA Mexico, and Larian are responsible for a misappropriation of a trade secret by a particular former Mattel employee if Mattel and Mattel Mexico prove both of the following:

    1.    That the former Mattel employee was MGA's, MGA Mexico's or Mr. Larian's agent; and

    2.    That the former Mattel employee was acting within the scope of his or her agency when he or she harmed Mattel and Mattel Mexico.

Amended & Consolidated Objs of MGA Parties & Gustavo Machado to Mattel's 4th Amended Prop Jury Instructions Case No. CV 04-9049 DOC (RNBx)

1          **Authority:**  CACI 3700, 3701 (modified).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OBJECTION:**

MGA has submitted Ninth Circuit Civil Jury Instructions to address principles of agency at pages 75-82 of its submission.  The general CACI instructions, CACI 3700 and CACI 3701 are also acceptable, with some clarifying modifications.  The approach taken by Mattel in its combined version of CACI 3700 and CACI 3701 is not acceptable.  Mattel has unnecessarily created a trade-secret specific agency instruction that is inaccurate or inappropriate in various ways.

The MGA Parties suggest that the proper way to address agency in this trial is the way it is addressed in the Ninth Circuit instructions and the CACI instructions.  The jury should be instructed generally on principles of agency, and counsel can argue the applicability of those principles to the various claims and defenses to which they may apply.  There is no reason or justification for trade-secret specific instructions on agency.

The MGA Parties further object to Mattel's proposed modified use of CACI 3701 as follows:

The introductory paragraph is argumentative and unnecessary.  If CACI 3701 is to be used, a simple introductory statement such as that contemplated by CACI 3701 is all that is required.  It is not proper to suggest that anyone "may be liable." "Mattel claims" would be the terminology consistent with CACI 3701.  It is not appropriate to refer to "their agents' misappropriations" when both agency and misappropriation are in dispute.

The second paragraph of Mattel's instruction omits the key language "when the incident occurred."  This concept is important in general, and it has specific relevance to Mattel's trade secret claims.  The evidence presented by MGA at trial will show that the former Mattel employees were not acting for MGA "when the incidents" involving acquisition of Mattel information occurred.

1    Mattel's proposed instruction is also improper to the extent it refers to a

2    possibility that Mr. Larian might have liability as a principal.  There will be no

3    evidence that an agent of Mr. Larian engaged in trade secret misappropriation.

4    Employees of MGA and MGA Mexico are not the agents of Mr. Larian.

5    The third paragraph of Mattel's proposed instruction is taken from CACI

6    3700, but it ungrammatically uses "their" instead of "its" on the second line.

7    If there is to be a trade-secret specific agency instruction, it must include

8    information that is not present in Mattel's proposed instruction.  For example,

9    Mattel's instruction lumps all types of misappropriation together.  The evidence

10   that will be presented at trial will require the jury to evaluate any claim of

11   "acquisition" differently from the allegations of "disclosure" and "use," assuming

12   Mattel pursues "disclosure" and "use" claims.  With only a general reference to

13   "misappropriation" and Mattel's omission of the reference to "when the incident

14   occurred," Mattel's proposed instruction does not adequately inform the jury of the

15   requirements of the law.

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

# CACI 3705

## EXISTENCE OF "AGENCY" RELATIONSHIP DISPUTED

Mattel and Mattel Mexico claim that Mr. Bryant, Ms. Brisbois, Mr. Brawer, Mr. Castilla, Mr. Cooney, Mr. Machado, Ms. Trueba, and Mr. Vargas were MGA's, MGA Mexico's and Mr. Larian's agents and that MGA, MGA Mexico and Mr. Larian are therefore responsible for their conduct.

If Mattel and Mattel Mexico prove that MGA, MGA Mexico or Larian gave Mr. Bryant, Ms. Brisbois, Mr. Brawer, Mr. Castilla, Mr. Cooney, Mr. Machado, Ms. Trueba, and/or Mr. Vargas authority to act on their behalf, then such individuals were MGA's, MGA Mexico's or Mr. Larian's agents.   This authority may be shown by words or may be implied by the parties' conduct.  This authority cannot be shown by the words of Mr. Bryant, Ms. Brisbois, Mr. Brawer, Mr. Castilla, Mr. Cooney, Mr. Machado, Ms. Trueba, and Mr. Vargas alone.

**Authority:**  CACI 3705.

**OBJECTION:**

MGA has submitted Ninth Circuit Civil Jury Instructions to address principles of agency at pages 75-82 of its submission.  MGA believes these instructions are adequate to address any agency issues that must be resolved by the jury or agency rules that must be applied by the jury, with a possible need for (a) refinement to address the contentions of the parties in detail, (b) reference to the burden of proof, and (c) supplementation, if necessary, to connect the general instructions on the law to the various claims and defenses.

Mattel's proposed modified version of CACI 3705 is not adequate for various reasons.

The first paragraph of the proposed instruction attempts to address all of Mattel's agency allegations as a group, but the result is not entirely accurate. Mattel and Mattel Mexico do not claim Ms. Brisbois, who worked in Canada, was MGA Mexico's agent.  While it is possible Mattel alleges the individuals to be agents of Mr. Larian,  there will not be any evidence to support such a claim. Employees of MGA and MGA Mexico are not the agents of Mr. Larian.

It is also not proper to link the agency concepts solely to Mattel's trade secret claims.  The jury should be instructed generally on principles of agency, with any claim or defense-specific supplementation limited to what is needed to help the jury understand that the general instructions apply to a given claim or defense.

1
2
3

# **CACI 3710**

# **RATIFICATION**

4       In addition, and independently, Mattel and Mattel Mexico claim that MGA,

5  MGA Mexico, and Mr. Larian also are responsible for the misappropriations by

6  former Mattel employees because Mr. Larian, MGA, and/or MGA Mexico

7  approved that conduct after it occurred.  If you find that former Mattel employees

8  Mr. Bryant, Ms. Brisbois, Mr. Brawer, Mr. Castilla, Mr. Cooney, Mr. Machado,

9  Ms. Trueba, and/or Mr. Vargas improperly acquired, used or disclosed Mattel or

10  Mattel Mexico trade secrets, you must decide whether Mr. Larian, MGA, or MGA

11  Mexico approved of such conduct.

12       To establish their claim, Mattel and Mattel Mexico must prove all of the

13  following as to any particular act of misappropriation by any particular former

14  Mattel employee:

15       1.     That the former Mattel employee intended to act on behalf of Mr. Larian,

16               MGA, or MGA Mexico;

17       2.     That Mr. Larian, MGA, or MGA Mexico learned or should have learned

18               of the conduct of the former Mattel employee; and

19       3.     That Mr. Larian, MGA, or MGA Mexico approved that conduct.

20       Approval can be shown through words, or it can be inferred from a person's

21  conduct.  Approval can be inferred if a person or company accepts or retains the

22  benefit of an act with actual notice of the unauthorized conduct.  It can also can be

23  inferred from the defendant having an opportunity to learn of the misconduct and

24  failing to investigate or turning a blind eye.   Approval can be inferred from a

25  failure to correct the harm or to reprimand, punish or discharge the employee.

26

27     **Authority:**  CACI 3710; *Ajaxo v. E\*Trade Group, Inc.*, 135 Cal. App. 4th

28  21, 67-68 (2005) ("they failed to investigate why it had happened. In short, at best,

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1    they 'turned a blind eye' to what was happening … top management had the
2    opportunity to know of and either ignore or actually approve of [the former
3    employee's] theft of [Plaintiff's] trade secret"); *Roberts v. Ford Aerospace and*
4    *Commc'ns Corp.*, 224 Cal. App. 3d 793, 802 (1990) ("ratification may be inferred
5    from the fact that the employer, after being informed of the employee's actions,
6    does not fully investigate and fails to repudiate the employee's conduct by
7    redressing the harm done and punishing or discharging the employee"); *In re Estate*
8    *of Stephens*, 28 Cal. 4th 665, 673 (2002); *Hanger Prosthetics & Orthotics, Inc. v.*
9    *Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1136-37 (E.D. Cal. 2008); *PMC,*
10   *Inc. v. Kadisha*, 78 Cal. App. 4th 1368 (2000) (corporate officer may be vicariously
11   liable for corporation's UTSA violations).

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**OBJECTION:**

MGA has submitted Ninth Circuit Civil Jury Instructions to address principles of agency at pages 76-83 of its submission.  The MGA Parties object to Mattel's proposed use of a modified version of CACI 3710 addressing the subject of ratification.

First, there is no need for a ratification instruction addressing Mattel's trade secret claims. CACI 3710 should not be given with respect to Mattel's trade secret claim because the concept of ratification is not available as a theory of vicarious liability for a trade secret claim under California law, and, in any event, there is no reason for a special instruction on this claim.  Liability for misappropriation under the UTSA is based on improper acquisition, disclosure or use.  There is no provision in the UTSA that permits liability for ratification, and the use of a ratification theory is not compatible with the statutory framework.

To the extent Mattel's trade secret claims involve disclosure or use of trade secrets, the evidence will not support a conclusion that (a) use or disclosure occurred, and (b) MGA is not vicariously liable on the basis of respondent superior, but (c) MGA is liable by virtue of ratification.  CUTSA does not authorize a theory of misappropriation by ratification.  The instructions on agency will adequately address MGA's potential liability for trade secret misappropriation. A claim of misappropriation by acquisition does not necessitate a ratification instruction with respect to a claim of misappropriation by acquisition.  The evidence at trial will not support a finding of harm resulting from the acquisition of any alleged trade secrets, and Mattel has not disclosed expert testimony that would support an award of damages.  Misappropriation by acquisition does not present any issue for the jury.

CACI 3710 should also not be given with respect to Mattel's trade secret claim because the concept of ratification is not available as a theory of vicarious liability for a trade secret claim under California law, and, in any event, there is no reason for a special instruction on this claim.  Liability for misappropriation under

1  the UTSA is based on improper acquisition, disclosure or use.  There is no

2  provision in the UTSA that permits liability for ratification, and the use of a

3  ratification theory is not compatible with the statutory framework.

4  Second, the proposed instruction improperly applies to Mr. Larian.  The

5  ratification theory set forth in CACI 3710 applies, by its terms, to agents.

6  Mr. Larian is not a principal of any of the individuals mentioned in the instruction.

7  The cases cited by Mattel do not establish a basis for an instruction addressing the

8  possible liability of Mr. Larian on any non-agency ratification theory, and the

9  evidence will not support a finding under any theory on the ratification elements set

10  forth in Mattel's proposed instruction.[2]

11  Ratification as potentially relevant to the liability issues presented in this case

12  is indisputably covered by the law of agency.  There is also a ratification concept

13  that is applied to the law of punitive damages, but it is a different idea.  Under

14  California Civil Code section 3294(b), one basis for corporate employer liability for

15  punitive damages "based upon acts of an employee of the employer" is the

16  ratification of "the wrongful conduct for which damages are awarded" by "an

17  officer, director, or managing agent of the corporation."  As relevant to basic

18  liability, however, ratification is governed by specific principles of agency law.

19

20  [2] The casual mention of "ratification" in *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th

21  1368 (2000), does not support the application of the theory of ratification to non-principals such as Mr. Larian, as it is mixed with discussion of "participation" and

22  "direction," independent, non-vicarious bases for the imposition of liability.  *See*

23  *PMC*, 78 Cal. App. 4th at 1379 (quoting *Frances T. v. Village Green Owners Ass'n*, 42 Cal. 3d 490, 503-04  (1986) ("it is well settled that corporate directors cannot be

24  held vicariously liable for the corporation's torts in which they do not participate.

25  Their liability, if any, stems from their own tortious conduct, not from their status as directors or officers of the enterprise."); *see id*. at 1389 ("Liability imposed on a

26  corporate shareholder, officer, or director who knows or has reason to know about

27  tortious misappropriation under these circumstances and allows it to occur is not vicarious.").

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1    Under California Civil code section 2307, "[a]n agency may be created, and

2    an authority may be conferred, by a precedent authorization or a subsequent

3    ratification."  Ratification may occur only in the manner specified in California

4    Civil Code section 2310.

5           A ratification can be made only in the manner that would
            have been necessary to confer an original authority for the
6           act ratified, or where an oral authorization would suffice,
            by accepting or retaining the benefit of the act, with
7           notice thereof.

8

9    Thus, while oral authorization will generally suffice, ratification by oral

10   authorization cannot occur if the putative principal does not "accept[] or retain[] the

11   benefit of the act, with notice thereof."  CACI 3710 is itself inadequate to present

12   the law of ratification, and Mattel's markup of CACI 3710 takes it far beyond the

     requirements of the law.

13          The first paragraph of Mattel's instruction contains an inaccurate and

14   misleading statement of the law.  The concept set forth in the first paragraph –

15   "approval" – is taken from the CACI instruction, but it is an inaccurate paraphrase

16   of the section 2310 elements that must be proved to establish ratification.  The use

17   of a shorthand description of the elements in the form of the concept of "approval"

18   is improper.  "Approval" unaccompanied by the other elements of ratification is not

19   sufficient.

20          Mattel has also improperly added to the second element of CACI 3710 the

21   idea that liability on a ratification theory can be based on a conclusion that the

22   defendant "should have learned of" the allegedly ratified conduct.  One cannot

23   "ratify" conduct of which one does not have knowledge.  The cases cited by the

24   CACI Committee do not support an expansion of ratification liability in this

25   manner, and Mattel also does not cite any supporting authority.

26          The problem with the "should have learned of" idea is exacerbated by the

27   absence of a "knowledge of wrongdoing" requirement in the instruction.  That a

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1  principal could be liable because it "should have learned of," but did not learn of,

2  an agent's conduct would dramatically expand liability.  In many cases, it would be

3  unfair to impose "should have learned of" liability on a principal that did not know

4  of, and had no reason to know of, *wrongful* conduct, simply because it "should have

5  learned of" conduct that is not wrongful on its face.

6      The absence of any attention to the knowledge requirement applicable to a

7  claim of ratification is a further problem with the use of CACI 3710.  According to

8  the language of CACI 3710, a defendant is liable on a ratification theory if it

9  "approved" the underlying wrongful conduct.  Liability does not exist, however,

10  unless the defendant approves the underlying conduct with knowledge that it is

11  wrongful.  *See Rakestraw v. Rodrigues*, 8 Cal. 67, 74 (1972) (citing the

12  "requirement of knowledge of the material facts essential to voluntary

13  ratification."); *Chastain v. Belmont*, 43 Cal. 2d 45, 58 (1954) ("A principal must

14  have knowledge of material facts at the time of the alleged ratification in order to

15  be held liable for the unauthorized act of another."); *Solomon v. U.S. Trust Co.*,

16  2004 WL 882066, *10 (Cal. App. 2004) ("Ratification arises when one party,

17  claiming that the other had no authority to act on his behalf, is found to have known

18  of and assented to the allegedly unauthorized actions of the other."); *Montgomery v.

19  Bank of America Nat'l Trust & Savings Ass'n*, 85 Cal. App. 2d 559, 561 (1948) ("A

20  principal is not bound by the unauthorized act of his agent unless he had knowledge

21  of the agent's violation of his authority.").  The legal background must be made

22  clear by appropriate modification of the CACI instruction.

23      If a knowledge element is not added, Mattel will be allowed to end run the

24  requirements for trade secret liability.  Misappropriation cannot occur unless the

25  defendant knows or has reason to know that wrongful conduct is occurring.  Under

26  a version of CACI 3710 that does not include a knowledge element, ratification

27  liability could be imposed on an innocent principal that "approved" conduct it did

28  not know or suspect to be wrongful.  This makes no sense.

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1    Mattel proposes an improper addition to the final paragraph of CACI 3710

2    with vague language suggesting that ratification can be inferred if the defendant had

3    "an opportunity to learn of the misconduct and fail[ed] to investigate or turn[ed] a

4    blind eye."  These concepts are mentioned in passing in a few cases in the course of

5    discussions of corporate liability for punitive damages, but they are not relevant to

6    the liability questions on which they are offered here.  Liability cannot be imposed

7    whenever an alleged principal has "an opportunity to learn of" misconduct.  That is

8    true in many situations in which the imposition of liability is not justified.  Without

9    knowledge pointing to wrongdoing, liability cannot result.  Nor is "turning a blind

10   eye" a legal concept that belongs in jury instructions.

11   CACI 3710 is also inadequate because it does not include mention of the

12   legal requirement of "accepting or retaining the benefit of the act."  *See* Cal. Civil

13   Code § 2310.  Mere "approval" without acceptance or retention of a benefit does

14   not fall within the statutory framework.  Indeed, rather than including the concept

15   of "benefit" in the elements, CACI 3710 includes a bracketed sentence, included by

16   Mattel, suggesting that approval can be inferred from receipt of a benefit.  Thus,

17   rather than a requirement of the law, receipt of a benefit becomes something that

18   may be sufficient to support a finding on another element.  Mattel's proposed us of

19   the language is a distortion of the law.

20   CACI 3710 as presented by Mattel is also unfair because it inappropriately

21   includes several comments about facts that would support an inference of liability,

22   but no mention of factors that would defeat a finding of liability.

23   CACI 3710 is also unclear in the context of a multi-defendant claim because

24   it does not make clear that the requirements of the instruction must be separately

25   satisfied as to each defendant.

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1

<u>**Instructions for Mattel's Copyright Claims**</u>

2

3

<u>**17.1**</u>

4

<u>**COPYRIGHT—DEFINED**</u>

5

<u>**(17 U.S.C. § 106)**</u>

6

7       Mattel claims that the defendants MGA, MGA Hong Kong, and Mr. Larian

8   engaged in copyright infringement.  Specifically, Mattel claims that it owns

9   copyrights in the doll-related characters, drawings, designs and sculpts created by

10   or under the direction of Carter Bryant while he was a Mattel employee.  Mattel

11   claims that the final production sculpt for the Bratz dolls sold by MGA, as well as

12   the Bratz characters, the finished dolls sold by MGA in 2001, and the "Ooh La La

13   Cloe" and "Formal Funk Dana" Bratz dolls sold by MGA later, infringe Mattel's

14   copyrights.

15       The defendants deny that claim.

16       Copyright is the exclusive right to copy.  This right to copy includes the

17   exclusive rights to:

18       (1)    Authorize, or make additional copies, or otherwise reproduce the

19   copyrighted work;

20       (2)    Recast, transform, or adapt the work, that is, prepare derivative works

21   based upon the copyrighted work;

22       (3)    Distribute copies of the copyrighted work to the public by sale or other

23   transfer of ownership; and

24       (4)    Display publicly a copyrighted work.

25       It is the owner of a copyright who may exercise these exclusive rights to

26   copy.  The term "owner" includes one who has been assigned ownership through a

27   written transfer document or is deemed the owner because the work was created by

28   an employee of the owner as a "work-made-for-hire," as that term is defined by the

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

copyright law.  In general, copyright law protects against production, adaptation and distribution of substantially similar copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.

**Authority:**  9th Cir. Civ. Jury Instr. 17.1 (2007) (as modified).

**OBJECTION:**

MGA has submitted an unmodified version of Ninth Circuit Instruction 17.1, as well as the introductory instruction, 17.0, at pages 187-92 of MGA's Amended Proposed Jury Instructions.

MGA objects to Mattel's modified version on the following grounds:  First, it improperly seeks to make a copyright claim for "characters", modifying the Model Instruction to reference characters twice, where the court has already disposed of that issue adverse to Mattel (*see Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 915-916 (9th Cir. 2010); Dkt. # 9538 at fn 12 (Order on Motions for Summary Judgment)).

Second, the instruction is overbroad and confusing in its definition of what Mattel seeks to own under the Copyright Act.  Mattel must spell out specifically in the instruction, with reference to the pertinent trial exhibits, the nature of its claim.

Third., it improperly inserts the concept of a "work for hire", where no such issue exists on the facts of this case and Mattel should be precluded from pursuing that method of ownership.

Fourth, Mattel fails to acknowledge that two different standards for copyright infringement are applicable to this case – substantially similar and virtual identity. Mattel's instruction fails to note the virtual identity standard but mentions substantial similarity, thus confusing to the jury.

**17.4**

**COPYRIGHT INFRINGEMENT—OWNERSHIP AND COPYING**

**(17 U.S.C. § 501A–(b))**

Anyone who copies original elements of a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

On Mattel's copyright infringement claim, Mattel has the burden of proving both of the following by a preponderance of the evidence:

1.     Mattel is the owner of a valid copyright (the Court has instructed you previously on how to determine whether Mattel owns its claimed copyrights in Mr. Bryant's doll-related works); and

2.     The defendants copied original elements from the copyrighted work.

If you find that Mattel has proved both of these elements, your verdict should be for Mattel.

If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for the defendants.

**Authority:**  9th Cir. Civ. Jury Instr. 17.4 (2007) (modified).

**OBJECTION:**

The MGA Parties object to this instruction on the grounds that it fails to distinguish among the defendants and advise the jury that it must make separate findings with respect to each defendant.  The MGA Parties further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**17.13**

**COPYRIGHT INTERESTS—DERIVATIVE WORKS**

**(17 U.S.C. §§ 101, 106(2))**

A copyright owner is entitled to exclude others from creating derivative works based upon the owner's copyrighted work.  Accordingly, the owner of a copyrighted work is entitled to exclude others from recasting, transforming, or adapting the copyrighted work without the owner's permission.  An unauthorized derivative work is considered copyright infringement.

**Authority:**  9th Cir. Civ. Jury Instr. 17.13 (2007) (modified).

**OBJECTION:**

MGA objects to the use of a derivative works instruction in this case.  Mattel has failed to clearly articulate any theory under which it claims infringement by a derivative work.  Moreover, providing such an instruction to the jury in this case (where two standards for copyright infringement already apply) is confusing, as it obfuscates what standard for copyright infringement should apply and indeed suggests that perhaps some other standard is applicable when derivative works are at issue.  Mattel must satisfy the virtual identity and substantial similarity tests even with respect to a claim of derivative work infringement.  For this reason, MGA objects to Mattel's proposed instruction, as it does not make clear that the same standard for copyright infringement applies to derivative works– here substantial similarity for the drawings and virtual identity for the sculpts.  *See Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 915-916 (9th Cir. 2010); Dkt. # 9600 at fn 9 (Amended Order on Motions for Summary Judgment).

In addition, if Mattel is claiming infringement by a derivative work based on a theory of combination or compilation of otherwise unprotectable elements, it must be made clear that any such claim is subject to a virtual identity test, regardless of whether a sculpt or drawing is at issue.  *See* MGA's Objection to Mattel's Proposed Jury Instruction 17.14, Compilations.

MGA also objects to this instruction to the extent that it is inconsistent with Footnote 9 of the Court's opinion on Summary Judgment, which granted summary judgment as to all subsequent generation products.

In the event the court believes a derivative works instruction is appropriate, MGA objects to Mattel's modification of the Ninth Circuit instruction – the full instruction should be given.  Specifically, MGA objects to the exclusion of the following language, which is necessary for the jury's understanding of the copyright protection that exists in a derivative work:  "only what was newly created, such as the editorial revisions, annotations, elaborations, or other

Amended & Consolidated Objs of MGA Parties & Gustavo Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1   modifications to the pre-existing work, is considered to be the derivative work.

2   Copyright protection of a derivative work covers only the contribution made by the

3   author of the derivative work.  If the derivative work incorporates pre-existing work

4   by others or work in the public domain, the derivative author's protection is limited

5   to elements added by the derivative author to the pre-existing or public domain

6   work or limited to the manner in which the derivative author combined the pre-

7   existing elements into the derivative work."

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 17.12

## COPYRIGHT INFRINGEMENT—ORIGINALITY

An original work may include or incorporate elements taken from or inspired by prior works, works from the public domain, or works owned by others, with the owner's permission.  The original parts of the plaintiff's work are the parts created:

1.      independently by the work's author, that is, the author did not copy it from another work; and

2.      by use of at least some minimal creativity.

**Authority:**  9th Cir. Civ. Jury Instr. 17.12 (2007).

1   **<u>OBJECTION:</u>**

2        This instruction is unnecessary and will only serve to confuse the jury since

3   the MGA Parties do not dispute that Bryant's sketches satisfy the low "originality"

4   threshold necessary to copyrightability. In addition, the MGA Parties further object

5   to this instruction (and Mattel's other copyright instructions) because it does not

6   properly explain that the jury must consider separately each alleged infringing act

7   and/or product.  Thus, the instruction would mislead the jury by suggesting that if

8   any infringement at all is found, of any of the copyrights at issue, Mattel should

9   prevail as to the full scope of all alleged infringement.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1

**17.3**

**COPYRIGHT—SUBJECT MATTER—IDEAS AND EXPRESSION**

**(17 U.S.C. § 102(b))**

Copyright allows the author of an original work to prevent others from copying the way or form the author used to express the ideas in the author's work. Only the particular expression of an idea can be copyrighted. Copyright law does not give the author the right to prevent others from copying or using the underlying ideas contained in the work.

The right to exclude others from copying extends only to how the author expressed the idea in the copyrighted work. Although other laws may be violated when someone uses an idea from a copyrighted work, including trade secret law, the copyright law is not violated unless the particular expression of that idea in the work is copied.

**Authority:** 9th Cir. Civ. Jury Instr. 17.3 (2007) (modified).

1   **OBJECTION:**

2       The MGA Parties object to this instruction on the grounds that it

3   unnecessarily modifies the Model Ninth Circuit Civil Jury Instruction, and injects

4   the concept of trade secret into an instruction on copyright law, which is likely to

5   confuse the jury and conflate the applicable legal standards in a manner that is

6   prejudicial to MGA.  The Model Ninth Circuit Civil Jury Instruction is  a full and

7   correct statement of the applicable law which should not be modified as requested

8   by Mattel.

9       The MGA Parties refer the Court to their version of Ninth Circuit Instruction

10   17.3 at page 196 of their Amended Proposed Jury Instructions.

1

**17.14**

2

**COMPILATION**

3

**(17 U.S.C. § 101)**

4

5        An owner is entitled to copyright protection of a compilation.  A compilation

6   is a work formed by the collection and assembling of preexisting materials,

7   elements, or data that are selected, coordinated, or arranged in such a way that the

8   resulting work as a whole constitutes an original work of authorship.  In addition to

9   receiving copyright protection as visual works, the drawings and sculpts over which

10  Mattel claims ownership may be protected as compilations of elements.  Elements

11  of a work that would not be eligible for copyright protection by themselves may

12  still contribute to a compilation of elements that is protectable by copyright if the

13  selection and arrangement of elements constitute an original work of authorship.

14        The owner of a compilation of elements may enforce the right to exclude

15  others from copying that compilation of elements in an action for copyright

16  infringement.

17

18        **Authority:**  9th Cir. Civ. Jury Instr. 17.14 (2007) (as modified);

19  *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135 (2d Cir. 2004) ("Even

20  if the record had shown that many dolls possess upturned noses, bow lips, and

21  wide-spread eyes, it would not follow that each such doll – assuming it was

22  independently created and not copied from others – would not enjoy protection

23  from copying."); *Dollcraft Indus., Ltd. v. Well-Made Toy Mfg. Co.*, 479 F. Supp.

24  1105, 1114-15 (E.D.N.Y. 1978) ("[T]hat plaintiff's toys contained features

25  separately found on other dolls does not render their copyrights invalid.  Rather, the

26  original combination of these features into new dolls makes the dolls

27  copyrightable."); *Fisher-Price Toys v. My-Toy Co.*, 385 F. Supp. 218, 219-20

28  (S.D.N.Y. 1974) (same); *cf. Swirsky v. Carey*, 376 F.3d 841, 848 (9th Cir. 2004).

1  **OBJECTION:**

2       The MGA Parties object to this instruction on the grounds that it is not

3  relevant to this action.  Mattel has not identified any work that it purports to own

4  that would qualify as a compilation under the Copyright Act.  To the extent that

5  Mattel is contending that the Bryant sculpt is a compilation, the Ninth Circuit and

6  this Court have already determined that it will be evaluated under the "virtual

7  identity" test embodied in other instructions, so this instruction is unnecessary.

8       If the Court is inclined to submit an instruction on compilations to the jury,

9  MGA submits that the Model Instruction should be given rather than the modified

10 version submitted by Mattel.  The additions to the Model Instruction proposed by

11 Mattel (lines 8-14) are unnecessary.  Moreover, if an instruction on compilations is

12 given, the test for copyright infringement (either here or in later instructions) must

13 include a specific reference to the fact that compilations of unprotected elements

14 are entitled to only "thin" copyright protection and thus the test for infringement of

15 any such compilation is "virtual identity."   This is so regardless of whether the

16 compilation claimed concerns the sculpt or a drawing – compilations are always

17 judged by a "virtual identity" test; they only receive "thin" copyright protection.

18 *See Feist Publications, Inc. v. Rural Telephone Co.*, 499 U.S. 340, 349-50 (1991)

19 ("copyright in a factual compilation is thin"); *Harper House, Inc. v. Thomas*

20 *Nelson, Inc.*, 889 F.2d 197 (9th Cir. 1989) ("As compilations consisting largely of

21 uncopyrightable elements, the organizers should be afforded only limited

22 protection."); *see also Satava v. Lowry*, 323 F.3d 805, 807 (9th Cir. 2003); *Aliotti v.*

23 *R. Dakin & Co.*, 831 F.2d 898, 900-901 (9th Cir. 1987).

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1   **MATTEL'S SPECIAL JURY INSTRUCTION NO. 15**

2   **COPYRIGHTABILITY OF CHARACTERS**

3

4   Copyright law protects distinctive characters.  In determining whether a

5   character deserves copyright protection, you should look at the unique combination

6   of elements of the character, including, but not limited to, its visual depictions,

7   names, relationships with other characters, personality traits, and written

8   descriptions, to determine whether it is sufficiently delineated such that it is a

9   unique expression.

10   You may find that the defendants' works infringe Mattel's claimed

11   copyrights in the Bratz characters if you conclude that they copy recognizable and

12   distinctive traits, attributes, and elements of personalities of the characters

13   portrayed in Mattel's copyrighted works.  In making that determination, you need

14   not apply the "extrinsic" test for copyright infringement (discussed below), which

15   requires a dissection of the elements of the works, but rather you may compare the

16   entire combination of elements of the copyrighted and infringing works.

17   If you find that MGA's allegedly infringing works copy recognizable and

18   distinctive traits, attributes, and elements of personalities of the characters

19   portrayed in Mattel's copyrighted works, you should find for Mattel on its claim of

20   infringement.  If you find that MGA's allegedly infringing works do not copy

21   recognizable and distinctive traits, attributes, and elements of personalities of the

22   characters portrayed in Mattel's copyrighted works, you should consider whether

23   those works are infringing pursuant to the other instructions I have given and will

24   give you.

25

26   **Authority:**  *Bach v. Forever Living Products U.S., Inc.*, 473 F. Supp. 2d

27   1127, 1134-35 (W.D. Wash. 2007) *Olson v. National Broadcasting Co., Inc.*, 855

28   F.2d 1446, 1452 (9th Cir. 1988) (distinctive characters can be protected by

1  copyright); *Warner Bros. Inc. v. American Broadcasting Companies, Inc.*, 720 F.2d

2  231, 235 (2d Cir. 1983) ("Plaintiffs own the copyright in various works embodying

3  the character of Superman and have thereby acquired copyright protection for the

4  character itself."); *Walt Disney Productions v. Air Pirate*s, 581 F.2d 751, 755 (9th

5  Cir. 1978), cert. denied, 439 U.S. 1132 (1979) (distinctive characters, especially if

6  they are expressed in visual form, are protectable by copyright); *Anderson v.*

7  *Stallone*, 1989 WL 206431, at *7-8 (C.D. Cal. 1989) (copyright protection extended

8  to the Rocky character); *Toho Co., Ltd. v. William Morrow and Co., Inc.*, 33 F.

9  Supp. 2d 1206, 1215 (C.D. Cal. 1998) (Godzilla); *Metro-Goldwyn-Mayer, Inc. v.*

10  *American Honda Motor Co., Inc.*, 900 F. Supp. 1287, 1296 (C.D. Cal. 1995) (James

11  Bond); *Funky Films*, 462 F.3d at 1078-79 (looking at characters' actions, dialogue,

12  and interactions with other characters); *Olson*, 855 F.2d at 1452 (looking at

13  character summaries in series treatment, dialogue, and action when determining

14  whether character deserved protection); *Anderson v. Stallone*, 11 U.S.P.Q.2d 1161,

15  1166-67 (C.D. Cal. 1989) (considering Rocky's physical attributes, speaking

16  mannerisms, and the fact that his name was also the title of the movies about him);

17  *see also Shaw*, 919 F.2d at 1363 (noting lead character's main personality trait-self-

18  assuredness-and the fact that he was well dressed, wealthy, and had expensive

19  taste).

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1

**OBJECTION:**

2

3  The MGA Parties object to this instruction on the ground that the Court has

4  already ruled on the parties motion for summary judgment that there is no character

5  protection with regard to the Bratz dolls as a matter of law.  *See Mattel, Inc. v.*

6  *MGA Entertainment, Inc.*, 616 F.3d 904, 915-916 (9th Cir. 2010); Dkt. # 9600 at fn

7  12 (Amended Order on Motions for Summary Judgment).  MGA hereby

8  incorporates the arguments set forth in its Summary Judgment briefing in

9  opposition to this proposed Instruction.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

## 17.15

## COPYING—ACCESS AND SUBSTANTIAL SIMILARITY

Mattel has the burden of proving that the defendants copied original elements from Mattel's copyrighted works.  There are two ways in which Mattel may meet that burden.

First, Mattel may show the defendants copied from the works by showing by a preponderance of the evidence that the defendants actually copied a significant amount of protectable expression from the work.

Second, in the alternative, Mattel may show circumstantially that the defendants copied from the works, by showing by a preponderance of the evidence that the defendants had access to Mattel's copyrighted works and that there are sufficient similarities between Mattel's copyrighted works and the defendants' works.

**Authority:**  9th Cir. Civ. Jury Instr. 17.15 (2007) (modified); *Norse v. Henry Holt and Co.*, 991 F.2d 563, 566 (9th Cir. 1993) (finding that substantial similarity analysis is inapposite where there is proof of copying); *Twentieth Century Fox Film Corp. v. Dastar Corp.*, 2000 WL 35503105, at *10 (C.D. Cal. 2000) ("[W]here there is admission of copying, the court need not employ the two part [access and substantial similarity] analysis."); *Funky Films, Inc., Inc. v. Time Warner Entertainment Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (noting that proof of copying involves demonstration of access and substantial similarity "absent evidence of direct copying"), *Three Boys v. Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000) (same); *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (same).

1    **OBJECTION:**

2    The MGA Parties object to this instruction as the modifications to the Model

3    Jury Instruction inserted by Mattel result in an incorrect statement of the law which

4    is also irrelevant to the facts at issue in this case.  Model Jury Instructions 17.15 and

5    17.16 address the issue of factual copying – the first inquiry in a copyright

6    infringement analysis (the second being the test of whether any such copying is

7    actionable).  The Model Instructions are intended to show that a party may establish

8    the first inquiry of that test indirectly (rather than by evidence of direct copying) by

9    showing access to the work at issue and substantially similarity.  This alternative

10   means of proof on the issue of factual copying has no effect whatsoever on a party's

11   burden of proof on whether that copying is actionable.  That test is governed here

12   by the virtual identity test (for the sculpts) and substantially similarity (for the

13   drawings) as applied to the protected elements of the works.  Since MGA concedes

14   access to the works at issue and disputes instead whether any alleged copying is

15   actionable, there is no reason to instruct the jury on access or factual copying.

16   MGA submits that doing so here is unnecessary, confusing and potentially

17   prejudicial.  *See* PATRY ON COPYRIGHT *§9:91*("Once copying is established, access

18   is irrelevant and the inquiry shifts to the final stage of the infringement analysis,

19   material appropriation.  At that stage, substantial similarity is the sole issue"); *Zella*

20   *v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124 (C.D. Cal. 2007) ("Even if a defendant

21   concedes use of a plaintiff's work, the copyright claim still fails absent substantial

22   similarity."); *Identity Arts v. Best Buy Enter. Serv. Inc.*, No. C 05-4656PJH, No. C

23   06-1631 PJH, 2007 U.S. Dist. LEXIS 32060 (N.D. Cal. April 18, 2007) ("no

24   amount of proof of access will suffice to show copying if there are no similarities").

25   The MGA Parties also object to this instruction because it fails to ensure that

26   the jury distinguishes among the defendants and makes appropriate findings with

27   respect to each defendant.  The MGA Parties further object to this instruction (and

28   Mattel's other copyright instructions) because it does not properly explain that the

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1    jury must consider separately each alleged infringing act and/or product.  Thus, the

2    instruction would mislead the jury by suggesting that if any infringement at all is

3    found, of any of the copyrights at issue, Mattel should prevail as to the full scope of

4    all alleged infringement.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **17.16**

2

## **COPYRIGHT INFRINGEMENT—COPYING—ACCESS DEFINED**

3

4      As part of its burden in Instruction No. 17.15, Mattel must show by a

5  preponderance of the evidence that defendants had access to Mattel's works.  You

6  may find that the defendants had access to Mattel's works if the defendants had a

7  reasonable opportunity to view or copy the works owned by Mattel before MGA's

8  works were created.

9      **Authority:**  9th Cir. Civ. Jury Instr. 17.16 (2007)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1    **OBJECTION:**

2        The MGA Parties object to this instruction as unnecessary, confusing and

3    potentially prejudicial.  MGA does not dispute the issue of access.  *See* Objection to

4    Mattel's Proposed Instruction 17.15.

5        The MGA Parties further object to the most recent modification of Mattel's

6    version of Instruction 17.15 in which "drawings and sculpts created by Carter

7    Bryant and owned by Mattel" became "Mattel's works" and "the works created by

8    Bryant" became "the works owned by Mattel."  If there was a need for a version of

9    Instruction 17.15, it would not be appropriate to include argumentative references

10   supporting Mattel's position on disputed issues.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 16
# COPYRIGHT INFRINGEMENT—SUFFICIENT SIMILARITY

You are to determine whether MGA's Bratz works are sufficiently similar to Mattel's copyrighted works by using a two-step process, which requires application of the "extrinsic test" and the "intrinsic test."  To prevail on its claims that defendants infringed the copyrights in Mattel's copyrighted works, Mattel must satisfy both of these tests.

*First*, you must apply the extrinsic test, which is an objective test of similarity that evaluates whether both the ideas and the specific expressions of the elements depicted in a copyrighted work are substantially similar to the ideas and the expressions of the corresponding elements in a challenged work.  If you find any such similarities between corresponding elements of the works, then you must determine whether any such elements are protectable by copyright law.   Elements of the works are not "protectable" by copyright law if they (i) are required by or necessarily result from the idea of the work; (ii) are purely utilitarian, as opposed to creative; or (iii) are unoriginal.

If you determine that Mattel has proven by a preponderance of the evidence that Mattel's copyrighted works and the defendants' Bratz works share substantial similarities among protectable elements, then you must next consider the intrinsic test.

*Second*, the intrinsic test considers whether the total concept and feel of the works are similar from the perspective of a reasonable ordinary observer.  In this case, the reasonable ordinary observer is a girl between the ages of 6 and 12, and it is from that perspective that you must apply the intrinsic test.

The standard of similarity that you must apply to evaluate whether the total concept and feel of the works are similar varies depending on the type of work. When considering whether Mattel has proven infringement of the sculpts and sculpt

Amended & Consolidated Objs of MGA Parties & Gustavo Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1   drawings it claims are infringed, you should decide whether MGA's works are

2   virtually identical overall to Mattel's works, or whether they are substantially

3   similar in their protected elements.  When considering whether Mattel has proven

4   infringement of the doll drawings and other works it claims are infringed, you

5   should decide whether MGA's works are substantially similar overall to Mattel's

6   works.

7

8   **Authority:**  *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 913-16

9   (9th Cir. 2010); *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 916 (7th Cir. 2007)

10  ("The problem is not that both Fred and Fartman have black hair or white tank tops

11  or any other single detail; the problem is that the execution and combination of

12  features on both dolls would lead an objective observer to think they were the

13  same."); *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 1993 WL 156199

14  (W.D.N.Y. March 19, 1993) ("While Well-Made tries to argue that Fisher-Price

15  copied the various characteristics of its Puffalump Kids from the standard features

16  that exist on dolls that have appeared in the market, it is the original combination of

17  these features into new dolls that makes the dolls copyrightable.") (citation

18  omitted); *Fisher-Price Toys v. My Toy Co.*, 385 F. Supp. 218, 220 (S.D.N.Y.

19  1974) ("That [plaintiff's dolls] contained features separately found on other dolls

20  does not render their copyrights invalid. Rather, the original combination of these

21  features into new dolls makes the dolls copyrightable."); *Mattel v. Goldberger Doll*

22  *Mfg. Co.*, 365 F.3d 133, 135 (2d Cir. 2004) (Barbie doll face's particularized

23  combination of an upturned nose, bow lips, and widely spaced eyes was protected

24  by copyright, even though such elements "are the 'idea' of a certain type of doll

25  face" that is in the "public domain.");  *Apple Computer, Inc. v. Microsoft Corp.*, 35

26  F.3d 1435, 1442 (9th Cir. 1994) (the "extrinsic" test "objectively considers whether

27  there are substantial similarities in both ideas and expression") (emphasis in

28  original); *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987) ("even

- 145 -

1   unprotectable material should be considered when determining if there is

2   substantial similarity of expression"); *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th

3   Cir. 2002) ("the presence of so many generic similarities and the common patterns

4   in which they arise [can help to] satisfy the extrinsic test"); *Jada Toys, Inc. v.*

5   *Mattel, Inc.*, 518 F.3d 628, 637 (9th Cir. 2008) (reversing district court's grant of

6   summary judgment because it "did not conduct an objective test as to both ideas

7   and expression as required under the extrinsic test"); *Cavalier v. Random House,*

8   *Inc.*, 297 F.3d 815, 824 (2002) (jury must consider "evidence under both the

9   extrinsic and intrinsic tests"); *Express, LLC v. Fetish Group, Inc.*, 424 F. Supp. 2d

10  1211, 1228 (C.D. Cal. 2006) ("[T]he intrinsic test requires that the work's elements

11  be viewed as a whole.") (citations omitted).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OBJECTION:**

The MGA Parties object to this instruction on the grounds that it is confusing, a misstatement of the applicable law and not sufficiently tailored to the facts of this case.  As the Ninth Circuit recognized in deleting its copyright infringement instruction, the test for infringement can be confusing and it can vary considerably depending on the works at issue and the facts of the case.  Here, there are several important undisputed principles of law that must be conveyed to the jury.  Mattel's instruction, however, ignores or confuses most of them.  The MGA Parties submit that their Proposed Instruction on the Test for Copyright Infringement, at page 213 of MGA's Amended Proposed Instructions, is a clear and accurate statement of the law and should be used to instruct the jury.

First, Mattel's instruction fails to account or note the fact that it is Mattel that bears the burden of identifying for the Court and the jury the specific elements of the works at issue that it believes have been infringed.  *See Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443   (9th Cir. 1994)("[t]he plaintiff must identify the source(s) of the alleged similarity between his work and the defendant's work"—i.e., what specific elements are claimed to be similar).

Second, Mattel's instruction ignores the clearest mandate of Ninth Circuit law:  It is undisputed that it is next for the Court, and not the jury, to perform the analysis of filtering unprotectable elements from the protectable.  *See Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) ("A court must take care to inquire only whether the protectible elements, standing alone are substantially similar. . . . [Therefore,] a court must filter out and disregard the non-protectible elements in making its substantial similarity determination.") (citations omitted); *see also Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006) (citing *Cavalier*).

Mattel's instruction makes no mention of this mandated analytical dissection which the Court must perform.  Rather, it suggests that the jury may be performing

1   this task.  This is not a task for the jury and MGA objects to Mattel's instruction on

2   this ground,  Indeed, it has been held that it is error for the Court not to instruct the

3   jury as to what the nonprotectable elements are that may not be considered in an

4   infringement analysis.  *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d

5   197, 207-08 (9th Cir. 1989) (noting that it was an error for "the jury instructions . . .

6   [to fail to] adequately distinguish between protectable and unprotectable

7   material."); *see also Dream Games of Az., Inc. v. PC Onsite*, 561 F.3d 983, 989 (9th

8   Cir. 2009) (noting requirement that unprotectable elements of work be identified to

9   the jury).    In contrast to Mattel's misleading instruction, MGA's proposed

10  instruction has a placeholder for the Court to advise the jury of its findings

11  following its performance of the filtering process.

12       Mattel's instruction goes on to ignore the standards for infringement that

13  have been established in this case.  This Court and the Ninth Circuit have held that

14  two different standards must be applied – virtual identity for the sculpt and

15  substantial similarity for the drawings.  *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d

16  904, 917 (9th Cir. 2010) ("Mattel will have to show that the Bratz sculpts are

17  virtually identical to Bryant's preliminary sculpt, or that the Bratz dolls are

18  substantially similar to Bryant's sketches . . . .").  Mattel's instruction, in

19  contravention of this law of the case, seeks to apply substantial similarity to the

20  sculpt.  MGA objects.  Similarly, for this reason, MGA objects to the title of

21  Mattel's instruction, which incorporates the substantial similarity test at the expense

22  of the virtual identity test.

23       Furthermore, MGA objects to Mattel's instruction because it does not make

24  clear to the jury that they are only permitted to compare the protectable elements –

25  not anything found unprotectable – in its analysis of infringement.  This is true

26  regardless of what stage you are at or how you label the tests – intrinsic or extrinsic

27  – only protectable elements can be compared.  *See Apple Computer, Inc. v.

28  Microsoft Corp.*, 35 F.3d 1435, 1446  (9th Cir. 1994) ("The party claiming

- 148 -

1   infringement may place no reliance upon any similarity in expression resulting
2   from unprotectable elements. .. . the unprotectable elements have to be identified,
3   or filtered, before the works can be considered as a whole") (quotation omitted).

4        MGA further objects to Mattel's instruction to the extent it purports to define
5   a specialized audience of girls age 6-12.  MGA submits that this is not a proper
6   specialized audience as contemplated by the copyright law.   Rather, "departure
7   from the lay characterization is warranted only where the intended audience
8   possesses specialized expertise. To warrant departure from the lay characterization
9   of the ordinary observer test, specialized expertise must go beyond mere differences
10  in taste and instead must rise to the level of the possession of knowledge that the
11  lay public lacks." *Dawson v. Hinshaw Music, Inc.*, 905 F.2d 731, 737 (4th Cir.
12  1990). Even if it were, the target audience for Bratz dolls is girls between the ages
13  of 8 and 12.

14       MGA also objects to the use of the "total concept and feel" language in
15  Mattel's proposed instruction.  This language has been criticized by courts and
16  scholars alike.  *See Apple Computer, Inc. v. Microsoft Corp.*, 799 F. Supp. 1006,
17  1020 n.11 (N.D. Cal. 1992) (noting that "both 'look and feel' and 'total concept and
18  feel' have been soundly criticized"); *see also* 4-13 Nimmer on Copyright §
19  13.03(A)(1)(c) (2010) ("the touchstone of 'total concept and feel' threatens to
20  subvert the very essence of copyright, namely the protection of original expression.
21  'Concepts' are statutorily ineligible for copyright protection; for courts to advert to
22  a work's 'total concept' as the essence of its protectible character seems ill-advised
23  in the extreme.  Further, the addition of 'feel' to the judicial inquiry, being a wholly
24  amorphous referent, merely invites an abdication of analysis.  In addition, 'total
25  concept and feel' should not be viewed as a sine qua non for infringement—
26  similarity that is otherwise actionable cannot be rendered defensible simply because
27  of a different 'concept and feel.'  In sum, therefore, the frequent invocations of this
28  standard do little to bring order to the inquiry into what constitutes substantial

1   similarity, and would be better abandoned.").   The difficulty of filtering out

2   unprotectable elements, as required by the law, and then asking for an assessment

3   of total look and feel is obvious.  The application of the principles laid out in the

4   Copyright Act are best applied without reference to that phrase.  MGA submits that

5   the jury should be instructed, in accordance with the Copyright Law, to simply

6   consider the protectable elements of two works at issue and apply the correct

7   standard of substantial similarity (or virtual identity), as proposed in MGA's

8   instruction on this issue.  MGA's instruction, unlike Mattel's, avoids confusing

9   labels and terms of art and allows the jury to focus on the correct application of the

10   law.

11        Finally, the MGA Parties object to this instruction (and Mattel's other

12   copyright instructions) because it does not properly explain that the jury must

13   consider separately each alleged infringing act and/or product.  Thus, the

14   instruction would mislead the jury by improperly suggesting that if any

15   infringement at all is found, of any of the copyrights at issue, Mattel should prevail

16   as to the full scope of all alleged infringements.

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

**MATTEL'S SPECIAL JURY INSTRUCTION NO. 17**

**SUBSTANTIALLY SIMILAR—THE "INVERSE RATIO RULE"**

4      If you conclude that defendants had a high degree of access to Mattel's

5  copyrighted works, Mattel's burden of proving that the defendants' Bratz works are

6  sufficiently similar to Mattel's copyrighted works is lower than it would be if

7  Mattel had not proven that the defendants had a high degree of access to Mattel's

8  copyrighted works, such that it would have been more likely that similarities

9  between the works were the result of independent creation and not copying.

10

11     **Authority:** *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir.

12  2000) ("Under our case law, substantial similarity is inextricably linked to the issue

13  of access.  In what is known as the 'inverse ratio rule,' we 'require a lower standard

14  of proof of substantial similarity when a high degree of access is shown.'"); *Shaw v.*

15  *Lindheim*, 919 F.2d 1353, 1361-62 (9th Cir. 1990); *Sid & Marty Krofft Television*

16  *Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977) (high

17  "degree of access justifies a lower standard of proof to show substantial

18  similarity"); *Smith v. Jackson*, 84 F.3d 1213, 1220-21 (9th Cir. 1996); *Swirsky v.*

19  *Carey*, 376 F.3d 841 (9th Cir. 2004); *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170

20  (9th Cir. 2003) ("Under the 'inverse ratio rule,' we 'require a lower standard of

21  proof of substantial similarity when a high degree of access is shown"); *3D, Ltd. v.*

22  *Spectratek Technologies, Inc.*, 41 Fed. Appx. 931 (9th Cir. 2002) ("Because 3D has

23  presented evidence of Spectratek's access to its pattern, we require less proof of

24  substantial similarity.").

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1 **OBJECTION:**

2      The MGA Parties object to this instruction on the grounds that it is an

3 incorrect statement of the law that has been universally criticized.  Mattel and this

4 instruction incorrectly suggests that the "inverse ratio" rule lowers Mattel's burden

5 in connection with the jury's determination of "legal" or "actionable" copying.  The

6 "inverse ratio" rule, however, has no relevance whatsoever to the conclusion of

7 whether a work is infringing.  Rather, it only relates to the issue of "factual"

8 copying . *See, e.g., BensBargains.Net v. XPBargains.Com*, 2007 U.S. Dist. LEXIS

9 60544, at **8–10 (S.D. Cal. Aug. 16, 2007) ("Plaintiff confuses the issues of

10 copying as a factual matter and actionable copying. The inverse ratio rule applies to

11 the issue of copying as a factual matter only"; "Thus, Plaintiff must prove the

12 existence of a triable issue of material fact with respect to substantial similarity,

13 regardless of how strong its evidence is that Defendants in fact copied from Chui's

14 compilations."); *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124 (C.D. Cal. 2007)

15 ("Even if a defendant concedes use of a plaintiff's work, the copyright claim still

16 fails absent substantial similarity."); *Identity Arts v.Best Buy Enter. Serv. Inc.*, No.

17 C 05-4656 PJH, No. C 06-1631 PJH, 2007 U.S. Dist. LEXIS 32060 (N.D. Cal.

18 April 18, 2007) ("no amount of proof of access will suffice to show copying if there

19 are no similarities") (citing Funky *Films, Inc. v. Time Warner Entm't., Co., L.P.*,

20 462 F.3d 1072, 1081 (9th Cir. 2006)).

21      Since MGA concedes access, there is absolutely no reason to give this highly

22 confusing instruction to the jury.

23      Indeed, this instruction has confused courts, scholars and the like and is not

24 appropriate for any reason here.  As explained by Professor Nimmer:

25      The flawed proposition that powerful proof of access can
substitute for demonstration of the requisite degree of

26      substantial similarity is sometimes labeled the "'Inverse
Ratio Rule." . . .

27

28      One must hasten to add that there is nothing wrong in
having access to one's competitor's products. Neither

1   may a showing of substantial similarity ever be avoided. .
2   . . Proof of access can logically aid in showing copying as
    a factual matter--added to the probative similarity that
3   exists between two works, it can bolster the proof that one
    was in fact derived from the other. But access logically
4   exerts no impact on copying as a legal matter; no matter
    how steeped in plaintiff's work defendant may have been,
5   if the resulting product is non-actionable as a matter of
    law, then the absence of substantial similarity that must
6   underlie every successful claim still dooms the
    infringement suit.

7   4-13 Nimmer on Copyright §§ 13.03 [D] (2008). *See also id.* 13-9, 13-10 & 13-13

8   ("'Not all copying, however is copyright infringement'. . . . As *Feist* illustrates,

9   copying as a factual matter is insufficient, if improper appropriation is lacking."

10  "Copying as a legal proposition must still be established; hence, substantial

11  similarity remains an indispensable element of plaintiff's proof, even in cases (such

12  as *Feist*) in which defendant does not contest factual copying.").  As similarly

13  stated by Professor Patry:

14      The inverse ratio theory confuses fundamental principles
        of infringement analysis: access is relevant only in
15      establishing the act of copying, not in establishing the
        degree thereof.  Once copying is established, access is
16      irrelevant and the inquiry shifts to the final stage of the
        infringement analysis, material appropriation.  At that
17      stage, substantial similarity is the sole issue.  Substantial
        similarity is an objective determination, made by
18      comparing the two works from the perspective of the
        ordinary observer. This comparison is completely
19      unaffected by the defendant's degree of access.

20  Patry on Copyright §9:91. *See also Feist*, 499 U.S. at 361 ("Not all copying . . . is

21  copyright infringement.").

22      Mattel's suggestion that the "inverse ratio rule" lowers the burden of

23  "substantial similarity" or "virtual identity" and/or limits the analytic dissection

24  required under the test for copyright infringement, would over-extend an individual

25  artist's monopoly at the expense of the copyright law's constitutional goals. As

26  stated in *Love v. The Mail On Sunday*, 2007 U.S. Dist. LEXIS 97061 (C.D. Cal.

27  Sept. 7, 2007):

28

- 153 -

1
2
3

'The primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.' To this end, copyright assures authors the right to their original expression, but encourages others to

4
5
6

build freely upon the ideas and information conveyed by a work.'(citations omitted). Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important

7
8

that the boundaries of copyright law be demarcated as clearly as possible.

9
10
11
12

*Id.* at *17 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994)). *See also Feist*, 499 U.S. at 349-50.  Artists are thus encouraged to build on prior works and reducing the standard for infringement based merely on access would clearly undermine this paramount purpose of the Copyright Act.

13
14
15
16
17

Since access is conceded, substantial similarity and virtual identity are the relevant tests in this case –they are not affected in any way by the inverse ratio rule. This rule, therefore, which throughout its history has proven to be a source of utter confusion, has no place here.  Offering it to the jury here is not only unnecessary but would be highly confusing and prejudicial.

18
19
20
21
22
23
24
25

The MGA Parties also object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant. The MGA Parties further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

26
27
28

1

2

3

4    **MATTEL'S SPECIAL JURY INSTRUCTION NO. 18**

**COPYRIGHT INFRINGEMENT—EVIDENCE OF COPYING NAMES OR**

**TITLES**

5        Although names or titles are not copyrightable by themselves, in considering

6    whether defendants copied protected expression from the works that Mattel owns,

7    you may consider whether the defendants copied the titles or names of those works.

8

9        **Authority:**  *Shaw v. Lindheim*, 919 F.2d 1353, 1362 (9th Cir. 1994); *Wihtol*

10   *v. Wells*, 231 F.2d 550, 553 (7th Cir. 1956).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**OBJECTION:**

The MGA Parties object to this instruction on the grounds that it is legally unsupported , vague and ambiguous, and likely to confuse the jury.  This instruction is nothing but an attempt by Mattel to improperly bolster its copyright claim. Mattel acknowledges that there is no copyright protection in names or titles, yet it seeks to allow the jury to consider them as protectable nonetheless.  This instruction also conflates "actual copying" and the test for actionable copying (ie, whether protectable elements are substantial similar" or "virtually identical" in the hopes that the jury will disregard their obligation to undertake the rigorous requirements of the extrinsic and intrinsic tests of copyright infringement.  Access is undisputed in this case.  MGA has acknowledged that it believed that it owned the Bryant drawings, and that it used such drawings as inspiration for the first generation of Bratz dolls.  Whether or not certain "titles" or "names" were carried over from Bryant's drawings is irrelevant to substantial similarity or virtual identity, because, as Mattel freely admits, "names or titles are not copyrightable by themselves." Names and titles should therefore be filtered out of any comparisons made between the drawings and dolls under the extrinsic and intrinsic test of copyright infringement and thus this proposed instruction should be rejected.  *See* 37 C.F.R. § 202.1(a) (2011) ("Words and short phrases such as names, titles, and slogans . . . mere variations of typographic ornamentation, lettering or coloring" are not subject to copyright); *Apple Computer, Inc. v. Microsoft Corp.*, 799 F. Supp. 1006, 1036 (N.D. Cal. 1992) (finding name "Waste Basket" for computer icon was an unprotectible short phrase under 37 C.F.R. § 202.1(a), and noting that "[a] short phrase or name . . . is merely an unprotectible aspect of a visual work.").

The MGA Parties also object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant. The MGA Parties further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the

- 156 -

jury must consider separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 19

# COPYRIGHT INFRINGEMENT—THREE-DIMENSIONAL WORKS

# CAN INFRINGE TWO-DIMENSIONAL WORKS

A two-dimensional work, such as a drawing, can be infringed by a three-dimensional work, such as a doll.  A doll, which consists of different materials or includes aspects that are not visible in a copyrighted drawing, nevertheless will infringe the drawing when the works are sufficiently similar in their appearance.  A three-dimensional work is not an independent creation, or non-infringing, merely because it includes or is a result of artistic or non-artistic work not included in the copyrighted work.  Rather, the question is whether the three-dimensional work is sufficiently similar to the two-dimensional drawings as a whole using the extrinsic/intrinsic test described in earlier instructions.

**Authority:**  *King Features Syndicate v. Fleischer*, 299 F. 533, 534, 538 (2d Cir. 1924) (copyright of a comic book infringed by three-dimensional dolls of a character); *Fleischer Studios v. Ralph A. Freundlich, Inc.*, 73 F.2d 276, 278 (2d Cir. 1934) (drawing of Betty Boop character infringed by substantially similar doll:  "a three-dimensional form of doll, is an infringement of the two-dimensional picture or drawing"); *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1222-23 (9th Cir. 1997) ("making decisions that enable one to reproduce or transform an already existing work into another medium or dimension – though perhaps quite difficult and intricate decisions – is not enough to constitute the contribution of something 'recognizably his own,'" even where those decisions are "artistic").

1  **OBJECTION:**

2     The MGA Parties object to this instruction on the ground that it is

3  unnecessary under the facts of this case.  There is no dispute that a 3D work is

4  capable of infringing a 2D work.  As result, adding this instruction is duplicative

5  and can only serve to confuse the jury into thinking that the test for infringement

6  somehow varies when applied to 3D objects.  Moreover, this instruction ignores the

7  filtering process that is required by the Ninth Circuit's test for infringement and is

8  unclear on the application of the two tests that the Court has found applicable here:

9  substantial similarity and virtual identity.  This instruction also conflates the

10  analysis, failing to make clear that the test for infringement must be applied

11  separately to each work deemed to be at issue.

12     If the Court wishes to instruct on scope of exclusive rights in a sculptural

13  work, MGA submits that the appropriate instruction is rather that dictated by

14  Section 113 of the Copyright Law which states that the Copyright Law does not

15  afford to the owner of the copyright in a work that portrays a useful articles any

16  greater or lesser rights to make, distribute or display the useful article so portrayed.

17     The MGA Parties further object to this instruction (and Mattel's other

18  copyright instructions) because it does not properly explain that the jury must

19  consider separately each alleged infringing act and/or product.  Thus, the

20  instruction would mislead the jury by suggesting that if any infringement at all is

21  found, of any of the copyrights at issue, Mattel should prevail as to the full scope of

22  all alleged infringement.

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1

2

3

4

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 20
## DIFFERENCES ARE NOT A DEFENSE TO COPYRIGHT
## INFRINGEMENT

5      The existence of differences between works is, in itself, insufficient to defeat

6   a claim of copyright infringement where there also are sufficient similarities

7   between the works.  Works may be infringing even when they have differences, or

8   when the amount of similar material is relatively small in consideration of the entire

9   works.

10      **Authority**:  *See, e.g.*, *Shaw v. Lindheim*, 919 F.2d 1353, 1362 (9th Cir. 1990)

11   ("No plagiarist can excuse the wrong by showing how much of his work he did not

12   pirate.") (citation omitted); *Atari Games Corp. v. Nintendo of Am., Inc.*, 1993 WL

13   207548, at *4 (N.D. Cal. May 18, 1993) ("Atari argues that there are many lock-

14   specific features which it did not include in the Rabbit program.  Atari may not

15   avoid summary judgment by pointing to what it did not copy."); *JCW Invs., Inc. v.*

16   *Novelty, Inc.*, 482 F.3d 910, 916 (7th Cir. 2007) (dolls were substantially similar as

17   a matter of law notwithstanding "small cosmetic differences" including that

18   "Fartman has his name emblazoned in red across his chest, his shoes are a different

19   color from Fred's, as is his chair, and Fartman wears a hat"); *Nicholls v. Tufenkian*

20   *Imp./Exp. Ventures, Inc.*, 367 F. Supp. 2d 514, 522 (S.D.N.Y. 2005) ("In

21   determining substantial similarity, 'the key . . . is . . . the similarities rather than the

22   differences.') (internal citation omitted); *Concord Fabrics, Inc. v. Marcus Bros.*

23   *Textile Corp.*, 409 F.2d 1315, 1316 (2d Cir. 1969) ("While the trial court placed

24   great emphasis on the minor differences between the two patterns, we feel that the

25   very nature of these differences only tends to emphasize the extent to which the

26   defendant has deliberately copied from the plaintiff."); *Harper & Row Publishers,*

27   *Inc. v. Nation Enters.*, 471 U.S. 539, 565 (1985) (citation omitted) (finding that the

28   unauthorized reproduction of 300-400 words from a 500-plus page book was

1    actionable because the taking was qualitatively substantial, and stating that "a

2    taking may not be excused merely because it is insubstantial with respect to the

3    infringing work"); *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*,

4    562 F.2d 1157, 1167 (9th Cir. 1977) (explaining that "an infringement is not

5    confined to literal and exact repetition or reproduction; it includes also the various

6    modes in which the matter of any work may be adopted, imitated, transferred, or

7    reproduced, with more or less colorable alterations to disguise the piracy")

8    (quotation and citation omitted); *Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th Cir.

9    1987) ("Even if a copied portion be relatively small in proportion to the entire

10   work, if qualitatively important, the finder of fact may properly find substantial

11   similarity."); *Loew's Inc. v. Columbia Broad. Sys.*, 131 F. Supp. 165, 172 (C.D.

12   Cal. 1955) ("The infringement of a copyright does not depend so much upon the

13   length of the extracts as upon their value.  If they embody the spirit and the force of

14   the work in a few pages, they take from it that in which its chief value consists.")

15   (internal quotation and citation omitted); *Murray Hill Pubs. v. ABC Commn's, Inc.*,

16   264 F.3d 622, 633 (6th Cir. 2001) ("The misappropriation of even a small portion

17   of a copyrighted work . . . may constitute an infringement under certain

18   circumstances.") (citation omitted); *Fred Fisher, Inc. v. Dillingham*, 298 F. 145,

19   148 (S.D.N.Y. 1924) (L. Hand, J.) (eight note "ostinato" held to infringe copyright

20   in song); *Curtis v. General Dynamics Corp.*, 1990 WL 302725, at *9 (W.D. Wash.

21   Sep. 26, 1990) ("Defendants argue that their poster could not infringe plaintiff's

22   copyright because only a small proportion of its design could possibly be

23   considered similar.  This argument is both factually and legally without merit.").

24

25

26

27

28

**OBJECTION:**

The MGA Parties object to this instruction on the grounds that it is unnecessary and improper legal argument. A proper instruction on the test for copyright infringement fully addresses this issue and makes clear what the jury is required to compare in making its determination on the issue of copyright infringement. As a result, this proposed instruction is not only unnecessary but also confusing and prejudicial.

The MGA Parties further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product. Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

<u>**MATTEL'S SPECIAL JURY INSTRUCTION NO. 21**</u>

<u>**ALTERATION OF COLOR NOT A DEFENSE TO COPYRIGHT**</u>

<u>**INFRINGEMENT**</u>

The unauthorized reproduction of a copyrighted work that changes the colors or color scheme of the copyrighted work is nevertheless an act of copyright infringement.  In other words, changing the color scheme of a copyrighted work is not a defense to copyright infringement.

**Authority**: *Novelty Textile Mills, Inc. v. Joan Fabrics, Corp.*, 558 F.2d 1090, 1094 n.6 (2d Cir. 1977) ("[O]nce a copyrighted design is found to have been copied, mere changes in the color scheme of the copied design would ordinarily not protect the defendant from a claim of infringement."); *McCaskill v. Ray*, 2008 WL 2222056, at *3 (11th Cir. May 30, 2008) (holding that district court erred in granting summary judgment in favor of plaintiff for copyright infringement when portions of the accused work were "identical" to or "essentially the same except for minor changes in wording or color coding" as plaintiff's work); *Tennessee Fabricating Co. v. Moutlrie Mfg. Co.*, 421 F.2d 279, 284 (5th Cir. 1970) ("no doubt" that defendant does not avoid infringement by adding additional straight lines to plaintiff's filigree pattern for metal casting); *Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354, 360 (9th Cir. 1947) ("[I]nfringement is not confined to literal and exact repetition or reproduction; it includes also the various modes in which the matter of any work may be adopted, imitated, transferred, or reproduced, with more or less colorable alterations to disguise the piracy."); *Mendler v. Winterland Production, Ltd.*, 207 F.3d 1119, 1124 (9th Cir. 2000) (Apparel manufacturer's modifications to photograph that was licensed by photographer for use as "guide, model, and example for illustrations on screen-printed" apparel, which included digital reproduction, horizontal flip of image,

extension of subject sailing vessel, and changes in color and tonal range, did not destroy photographic quality of photograph, and manufacturer's use of photograph was thus unauthorized by license, which prohibited photographic reproductions, and infringed photographer's copyright).

1    **OBJECTION:**

2         The MGA Parties object to this instruction on the grounds that it is an

3    inaccurate statement of the law.  Whether color changes or additions can

4    substantially change the nature of a work such that it is no longer substantially

5    similar is going to be subject to a case by case determination and is not susceptible

6    to or the proper subject of a jury instruction.  For example,  if changing or adding

7    color to a work substantially changes the nature of the work, than the work may be

8    non-infringing.  Or more specifically, in this case, the Court has found that face

9    paint can be protectable – indeed, here the jury could well find that changing the

10   color of that paint is sufficient to avoid a finding of substantial similarity.

11        This instruction is also unnecessary. As with many of Mattel's other special

12   instructions, a proper instruction to the jury on the test for copyright infringement

13   renders this instruction superfluous, misleading and prejudicial.

14        The MGA Parties further object to this instruction (and Mattel's other

15   copyright instructions) because it does not properly explain that the jury must

16   consider separately each alleged infringing act and/or product.  Thus, the

17   instruction would mislead the jury by suggesting that if any infringement at all is

18   found, of any of the copyrights at issue, Mattel should prevail as to the full scope of

19   all alleged infringement.

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 22

## COPYRIGHT INFRINGEMENT—INTENT TO INFRINGE NOT

## NECESSARY FOR  LIABILITY

Copyright infringement does not require intent to infringe or any particular state of mind by the infringer.  A defendant may be held liable for copyright infringement even if he believes in good faith that he is not infringing a copyright.

**Authority:**  *Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978) ("[E]ven when the defendant believes in good faith that he is not infringing a copyright, he may be found liable."); *L.A. News Serv. v. Conus Communications Co.*, 969 F. Supp. 579, 584 (C.D. Cal. 1997) ("Direct infringement does not require intent or any particular state of mind.").

**OBJECTION:**

The MGA Parties object to this instruction on the grounds that it is unnecessary and unduly prejudicial. The Ninth Circuit model instruction on infringement, No. 17.4, sets forth the elements Mattel is required to prove and does not include an "intent" element. It is inappropriate and unduly prejudicial to include a separate instruction on this issue as Mattel suggests. The MGA Parties also object to this instruction on the grounds that it fails to advise the jury that the lack of an "intent" requirement does not in any way undercut the defendants' position that the Bratz dolls were a product of independent creation or the Constitutional underpinnings of copyright law, which encourage third parties to build upon the works of others.

The MGA Parties further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**17.20**

## DERIVATIVE LIABILITY—VICARIOUS INFRINGEMENT ELEMENTS AND BURDEN OF PROOF

If you find that MGA or MGA Hong Kong infringed a Mattel copyrighted work, you may consider Mattel's claim that MGA's CEO Isaac Larian vicariously infringed that copyright. Mattel has the burden of proving each of the following by a preponderance of the evidence:

1.    Isaac Larian profited directly from the infringing activity of MGA; and

2.    Isaac Larian had the right and ability to supervise or control the infringing activity of MGA.

If you find that Mattel proved each of these elements, your verdict should be for Mattel if you also find that MGA infringed Mattel's copyright. If, on the other hand, Mattel has failed to prove any of these elements, your verdict should be for Isaac Larian on Mattel's claim for copyright infringement, unless you find that Mr. Larian is liable for contributory infringement under the instruction that follows.

**Authority:** 9th Cir. Civ. Jury Instr. 17.20 (2007) (modified).

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**OBJECTION:**

The MGA Parties object to this instruction on the grounds that it is not expressly limited to only sketches or sculpts that are deemed by the jury to be owned by Mattel, as it is only those works that are subject to an infringement analysis.

The MGA Parties object to this instruction on the grounds that it deviates from the Ninth Circuit model instruction, which accurately sets forth the applicable law. Specifically, the MGA Parties object to this instruction's omission of third element of vicarious liability as set forth in the Ninth Circuit's model rule, and to the inclusion of the contributory infringement reference contrary to the Model Rule.

The MGA Parties direct the Court to its Vicarious Liability Instruction, 17.20, on page 217 of their Amended Proposed Jury Instructions for a clear and full statement of the law.

Finally, the MGA Parties generally object to Mattel's characterization of Isaac Larian as MGA's CEO. The jury is aware of the relationship between the parties and Mattel's frequent reminders of that relationship is argument, not instruction.

The MGA Parties further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product. Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

**17.21**

**DERIVATIVE LIABILITY—CONTRIBUTORY INFRINGEMENT**

A defendant may be liable for copyright infringement engaged in by another if he/it knew or had reason to know of the infringing activity and intentionally induced or materially contributed to that infringing activity.

If you find that MGA infringed a Mattel copyrighted work, but that MGA Hong Kong and/or Isaac Larian did not directly or vicariously engage in acts of infringement, you should proceed to consider Mattel's claim that MGA Hong Kong and Isaac Larian contributorily infringed that copyright.  To prove contributory copyright infringement, Mattel must prove both of the following elements by a preponderance of the evidence:

1.      Isaac Larian and/or MGA Hong Kong knew or had reason to know of the infringing activity of MGA; and

2.      Isaac Larian and/or MGA Hong Kong intentionally induced or materially contributed to MGA's infringing activity.

If you find that MGA infringed a Mattel copyright and you also find that Mattel has proven both of these elements, your verdict should be for Mattel.  If, on the other hand, Mattel has failed to prove either or both of these elements as against MGA Hong Kong and/or Isaac Larian, and, as to Isaac Larian, also failed to prove direct or vicarious infringement, your verdict should be for those defendants.

**Authority:**  9th Cir. Civ. Jury Instr. 17.21 (2007) (modified).

**OBJECTION:**

The MGA Parties object to this instruction on the grounds that it is not expressly limited to only sketches or sculpts that are deemed by the jury to be owned by Mattel, as it is only those works that are subject to an infringement analysis.

The MGA Parties also object on the grounds that this instruction improperly clusters all defendants together in such a way that it suggests to the jury that a finding of contributory liability against one defendant would be sufficient to enter a finding against all defendants.

The MGA Parties further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

The MGA Parties direct the court to its Contributory Infringement instruction 17.21,  on page 219 of their Amended Proposed Jury Instructions, which is a full and clear statement of the applicable law.

**Instructions for Mattel's Unfair Competition Claims**

**MATTEL'S SPECIAL JURY INSTRUCTION NO. 23**
**UNFAIR COMPETITION—ESSENTIAL ELEMENTS**

Mattel claims that defendants have engaged in unfair competition by inducing, encouraging or assisting Mattel employees to work against Mattel's interests for MGA's benefit while those employees were still employed by Mattel, including by using Mattel resources for MGA's benefit, and by engaging in other wrongful conduct.  To prevail on this claim, Mattel must prove by a preponderance of the evidence that:

(1)     defendants engaged in an unlawful, unfair or fraudulent business practice; and

(2)     Mattel suffered actual injury and lost money or property as a result of defendant's actions.

An "unfair" business practice is one that either offends an established public policy or is immoral, unethical, oppressive or unscrupulous conduct that threatens or harms competition in an industry.  A practice may be "unfair" even if it is not specifically prohibited by some other law.  The violation of any statutory or common law can serve as a basis for a finding that defendants' conduct was "unlawful."   A "fraudulent" business practice is one that is likely to deceive members of the public.  A practice may be prohibited as "unfair" or "fraudulent" even if it is not "unlawful," and vice versa.

**Authority:**  Cal. Bus. & Prof. Code § 17200 ; *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1003 (N.D. Cal. 2009); *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1098 (C.D. Cal. 2009); *Puentes v. Wells Fargo Home Mortg.*, Inc., 160 Cal. App. 4th 638, 645 (2008); *Buckland v. Threshold Enter., Ltd.*, 155 Cal. App. 4th

1    798, 812 (2007); *Buena Vista, LLC v. New Res. Bank*, 2010 WL 3448561, at *6

2    (N.D. Cal. Aug. 31, 2010); *Cel-Tech Commc'ns Inc. v. Los Angeles Cellular Tel.*

3    *Co.*, 20 Cal. 4th 163, 187 (1999).

**OBJECTION:**

The MGA Parties object to this instruction on the grounds that it is not party neutral.  As both Mattel and MGA claim that the other violated California's Unfair Competition law, this instruction should be written so as to apply to either Mattel or MGA.

The MGA Parties further object to this instruction on the grounds that it is vague as to what forms the basis for Mattel's claim.  The vagueness may encourage jury members to consider matters foreclosed by the Ninth Circuit's opinion or otherwise unavailable under the law.

Moreover, the MGA Parties also object to this instruction because it does not properly explain to the jury the limitations that have been placed on Mattel's claims.  Specifically, it ignores the fact that the Court granted summary judgment for the MGA Parties on this claim in part, finding that "[t]he counter-claim is superseded to the extent it is based upon the misappropriation of Mattel's information" and that "[t]he Copyright Act preempts this counter-claim to the extent predicated upon the infringement of Bryant's works" (Amended MSJ Order at 91.) This circumscription is completely ignored in Mattel's instruction, and would leave jurors to believe that the issues of misappropriation of Mattel's information or the infringement of Bryant's works were relevant to this claim.

The MGA Parties direct the Court to pages 229 to 238 of their Amended Proposed Jury Instructions for a clear and party-neutral statement of the law of unfair competition.

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 24
## ADVERSE INFERENCE FROM SPOLIATION

The plaintiff, Mattel, contends that defendants did not take appropriate steps to preserve relevant evidence and destroyed such evidence. Defendants deny that contention.

If you find that relevant evidence that was within defendants' control is missing or has been destroyed and that the evidence is missing because of their bad faith or negligent, unjustified or careless actions or inaction, you may infer that such evidence, if available now, would have been favorable to Mattel and adverse to defendants.

The defendants' destruction of evidence was negligent, unjustified or careless if they had notice that the evidence might be relevant to litigation when they destroyed the evidence or made the evidence unavailable. A person is under a duty to preserve evidence that he or she knows, or reasonably should know, could be relevant to a case.

**Authority:** *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *Akonia v. United States*, 938 F.2d 158, 161 (9th Cir. 1991); *Housing Rights Center v. Sterling*, 2005 WL 3320739, at *8 (C.D. Cal. March 2, 2005); *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 110 (2d Cir. 2002); *Rogers v. T.J. Samson Community Hosp.*, 276 F.3d 228, 232-33 (6th Cir. 2002); *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557 (N.D. Cal. 1987) ("Where one party wrongfully denies another the evidence necessary to establish a fact in dispute, the court must draw the strongest allowable inferences in favor of the aggrieved party."); *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 554-55 (6th Cir. 2010) ("The district court did not abuse its discretion in imposing a non-rebuttable adverse inference after finding that the Defendants' destruction of the folder

1  "severely compromised" the Plaintiffs' case by depriving the Plaintiffs of the most

2  relevant piece of evidence to prove their claims."); *Dong Ah Tire & Rubber Co.,*

3  *Ltd. v. Glasforms, Inc.*, 2009 WL 1949124, at *10 (N.D. Cal. July 2, 2009) ("In the

4  Ninth Circuit, spoliation of evidence raises a presumption that the destroyed

5  evidence goes to the merits of the case, and further, that such evidence was adverse

6  to the party that destroyed it.").

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OBJECTION:**

The MGA Parties object to this instruction on the grounds that it is not party neutral.  As each Mattel and MGA claim that the other has failed to preserve evidence, this instruction should be written so as to apply to either Mattel or MGA.

The instruction also does not make clear that an adverse inference is not required.  If there is to be mention of the possibility of an adverse inference, the jury should be told that it may, but need not, draw an inference that the evidence would have been adverse if that inference seems reasonable under all of the evidence.  The jury should be told that there may be various explanations for the loss or destruction of evidence, and that all of the evidence that might be relevant to a determination of the nature of the evidence and the circumstances of its loss or destruction should be considered.

This instruction is also hopelessly ambiguous.  The notion that evidence might have been "favorable to Mattel" or "adverse" to someone else is not useful without some indication of the subject matter of the evidence.  How can one draw an "adverse inference" without knowing something about the evidence.  "Adverse" in what way?  Addressing what subject matter?  The jury should not randomly decide that "something bad" was lost or destroyed.  A burden should be placed on the proponent of the evidence to provide a basis for a rational inference process.

1

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 25

2

## ADVERSE INFERENCE BASED ON ASSERTION OF PRIVILEGE

3

## AGAINST SELF-INCRIMINATION

4

5   You have heard certain witnesses decline to answer questions on the grounds

6   of their Fifth Amendment privilege against self-incrimination.

7   The Fifth Amendment of the United States Constitution affords every person

8   the right to decline to answer any questions if he or she believes that the answers

9   may tend to incriminate them.  However, in civil cases like this one, you are

10  permitted, but not required, to draw the inference that the information withheld by

11  these witnesses would have been unfavorable to them and/or favorable to another

12  party.

13  Any inference you may draw should be based upon all the facts and

14  circumstances in this case as you may find them.

15

16  **Authority:**  *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998) ("Parties are

17  free to invoke the Fifth Amendment in civil cases, but the court is equally free to

18  draw adverse inferences from their failure of proof.") (citing *Baxter v. Palmigiano*,

19  425 U.S. 308, 318 (1976));  *U.S. v. Solano-Godines*, 120 F.3d 957, 962 (9th Cir.

20  1997) ("In civil proceedings, however, the Fifth Amendment does not forbid fact

21  finders from drawing adverse inferences against a party who refuses to testify.").

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1  **OBJECTION:**

2      The MGA Parties object to this instruction on the grounds that the Court has

3  already held that no adverse inference will be drawn from Castilla's invocation of

4  his Fifth Amendment right against self-incrimination during his deposition.  In the

5  words of the Court, "Castilla is not a party to Mattel's third counter-claim and

6  Mattel suffered no prejudice as a result of Castilla's failure to substantively respond

7  to questions . . . ."  (Amended Order on MGA's Motion for Summary Judgment;

8  Mattel's Motion for Partial Summary Judgment; Machado's Motion for Summary

9  Judgment; Mattel's Motion for Partial Summary Judgment on MGA's

10  Counterclaims-in-Reply at 47 n.19.)

11      Mattel's instruction should also be rejected because it is inconsistent in

12  various important ways with the controlling Ninth Circuit case on the issue.  *See*

13  *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.2d 1258 (9th Cir. 2000).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**<u>Instructions for Personal Jurisdiction</u>**


**<u>MATTEL'S SPECIAL JURY INSTRUCTION NO. 26</u>**
**<u>SPECIFIC PERSONAL JURISDICTION</u>**


MGA Mexico contends that the Court lacks jurisdiction over it, such that the Court and jury do not have any power to issue orders or verdicts against it.  The court may exercise jurisdiction over MGA Mexico if:

1.   MGA Mexico purposefully directed its activities at California or purposefully availed itself of the privilege of conducting activities in California, and thereby invoking the benefits and protections of California's laws;

2.    Mattel's claims relate to MGA Mexico's California-related activities; and

3.   The Court's exercise of jurisdiction is not unreasonable.

If Mattel proves elements 1 and 2 by a preponderance of the evidence, then the Court may properly exercise jurisdiction over MGA Mexico unless MGA Mexico meets its burden of presenting compelling evidence that the Court's exercise of personal jurisdiction over it would be unreasonable.


**Authority:** *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).

Amended & Consolidated Objs of MGA Parties & Gustavo Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1  **OBJECTION:**

2      The MGA Parties object generally to the personal jurisdiction instructions

3  because the question of whether the Court has personal jurisdiction over MGA

4  Mexico is a question for the Court, not the jury, even if factual findings by the

5  Court are necessary.  *See Pavey v. Conley,* 528 F.3d 494, 497 (7th Cir. 2008);

6  Moore's Federal Practice § 38.34[1][e].

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1             **MATTEL'S SPECIAL JURY INSTRUCTION NO. 27**

2  **SPECIFIC PERSONAL JURISDICTION—PURPOSEFUL DIRECTION**

3

4        MGA Mexico purposefully directed its activities at California if:

5        1.     MGA Mexico committed an intentional act;

6        2.     expressly aimed at California; and

7        3.     caused harm that MGA Mexico knew was likely to be suffered in

8              California.

9        The requirement that MGA Mexico's act be expressly aimed at California is

10  satisfied if MGA Mexico engaged in wrongful conduct targeted at Mattel, whom

11  MGA Mexico knows to be California resident.  The brunt of the harm caused by

12  MGA Mexico does not need to be suffered in California.  Instead, only a

13  jurisdictionally sufficient amount of harm needs to be suffered in California.  It

14  does not matter that even more harm might have been suffered outside of

15  California.

16

17        **Authority:** *Calder v. Jones*, 465 U.S. 783, 789 (1984); *Yahoo! Inc. v. La*

18  *Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206-07 (9th Cir.

19  2006) (en banc) (holding that as long as a jurisdictionally sufficient amount of harm

20  is suffered in the forum state, it does not matter that even more harm might have

21  been suffered in another state."); *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104,

22  1111-14 (9th Cir. 2002).

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1    **OBJECTION:**

2          The MGA Parties object generally to the personal jurisdiction instructions

3    because the question of whether the Court has personal jurisdiction over MGA

4    Mexico is a question for the Court, not the jury, even if factual findings by the

5    Court are necessary.  *See Pavey v. Conley,* 528 F.3d 494, 497 (7th Cir. 2008);

6    Moore's Federal Practice § 38.34[1][e].

1    <u>**MATTEL'S SPECIAL JURY INSTRUCTION NO. 28**</u>

2    <u>**SPECIFIC PERSONAL JURISDICTION—PURPOSEFUL AVAILMENT**</u>

3

4         MGA Mexico purposefully availed itself of the privilege of conducting

5    activities in California, thereby invoking the benefits and protections of its laws, if

6    MGA Mexico has done business in California, such as executing or performing a

7    contract there.

8

9         **Authority:** *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475-76 (1985).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **OBJECTION:**

2         The MGA Parties object generally to the personal jurisdiction instructions

3    because the question of whether the Court has personal jurisdiction over MGA

4    Mexico is a question for the Court, not the jury, even if factual findings by the

5    Court are necessary.  *See Pavey v. Conley,* 528 F.3d 494, 497 (7th Cir. 2008);

6    Moore's Federal Practice § 38.34[1][e].

1

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 29

2

## SPECIFIC PERSONAL JURISDICTION—CLAIM ARISES OUT OF OR

3

## RELATES TO DEFENDANT'S FORUM-RELATED ACTIVITIES

4

5     If Mattel would not have been injured but for MGA Mexico's acts directed

6 toward Mattel in California, Mattel's claims arise out of or are related to MGA

7 Mexico's forum-related activity.

8

9     **Authority:**  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir.

10 1998).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**OBJECTION:**

The MGA Parties object generally to the personal jurisdiction instructions because the question of whether the Court has personal jurisdiction over MGA Mexico is a question for the Court, not the jury, even if factual findings by the Court are necessary. *See Pavey v. Conley,* 528 F.3d 494, 497 (7th Cir. 2008); Moore's Federal Practice § 38.34[1][e].

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 30

## SPECIFIC PERSONAL JURISDICTION—THE COURT'S EXERCISE OF

## PERSONAL JURISDICTION IS REASONABLE

To determine whether the Court's exercise of personal jurisdiction over MGA Mexico is reasonable, the following factors should be balanced:

1.      the extent of MGA Mexico's purposeful interjection into the forum state;

2.      the burden on MGA Mexico in defending in the forum;

3.      the extent of the conflict with the sovereignty of the defendant's state;

4.      the forum state's interest in adjudicating the dispute;

5.      the most efficient judicial resolution of the controversy;

6.      the importance of the forum to the plaintiff's interest in convenient and effective relief; and

7.      the existence of an alternative forum.

All of these factors must be balanced, and whether a single factor is met is not dispositive.  MGA Mexico must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.  Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional.  For example, a potential clash of the forum's law with the "fundamental substantive social policies" of another State may be accommodated through application of the forum's choice-of-law rules. Additionally, California maintains a strong interest in providing an effective means of redress for its residents tortiously injured.

**Authority:**  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).

Amended & Consolidated Objs of MGA Parties & Gustavo Machado to Mattel's 4th Amended Prop Jury Instructions Case No. CV 04-9049 DOC (RNBx)

**OBJECTION:**

The MGA Parties object generally to the personal jurisdiction instructions because the question of whether the Court has personal jurisdiction over MGA Mexico is a question for the Court, not the jury, even if factual findings by the Court are necessary.  *See Pavey v. Conley,* 528 F.3d 494, 497 (7th Cir. 2008); Moore's Federal Practice § 38.34[1][e].

Mattel's instruction underscores the fact that the issues it addresses are questions for the Court through language such as: "may be accommodated through means short of finding jurisdiction unconstitutional," "a potential clash of the forum's law with the 'fundamental substantive social policies' of another State," "California maintains a strong interest in providing an effective means of redress for its residents tortiously injured."  Mattel's own instruction demonstrates that these considerations are not matters for evaluation by the jury.

# Instructions for Choice of Law

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 31
## CHOICE OF LAW FOR MACHADO AND MGA MEXICO

The law on which I have instructed you, which is based on California law, applies to Mattel's misappropriation of trade secret claims against MGA Entertainment, Inc. and Isaac Larian.  However, Mr. Machado and MGA Mexico claim that Mexico law, not California law, should apply to Mattel's claim for misappropriation of trade secrets against them.

Mr. Machado and MGA Mexico bear the burden of proving that Mexico law, not California law, apply to Mattel's trade secret misappropriation claims against them.

First, Machado and MGA Mexico must prove that there is a substantive conflict between the law of Mexico and the law of California.

Second, if such a conflict exists, Machado and MGA Mexico must prove that both California and Mexico have a legitimate interest in having their own law applied to Mattel's trade secret misappropriation claims against Machado and MGA Mexico.

If you find that only California has a legitimate interest, that law will apply. On the other hand, if Machado and MGA Mexico have demonstrated that only Mexico has a legitimate interest, that law will apply.

Third, if you find that both California and Mexico have a legitimate interest in having their law applied, then Machado and MGA Mexico must prove that Mexico's state interest will be more impaired if the law of Mexico is not applied.  If you find that California's interest would be more impaired, then California law will apply.  If you find that Machado and MGA Mexico have demonstrated Mexico's

Amended & Consolidated Objs of MGA Parties & Gustavo Machado to Mattel's 4th Amended Prop Jury Instructions Case No. CV 04-9049 DOC (RNBx)

1   interest would be more impaired than California's interest, only then will Mexico

2   law.

3

4           **Authority:**  *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1142 (9th Cir.

5   2010); *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir.

6   1996); *Hurtado v. Superior Court*, 11 Cal. 3d 574, 580 n.2 (1974).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**OBJECTION:**

The MGA Parties object to this instruction in that is purports to create jury issues relating to matters to be decided by the Court.  More specifically, in its ruling on the parties' motions for summary judgment, the Court stated:

> There is a genuine issue of material fact as to whether a "true conflict" exists between California and Mexico…Mattel also alleges that some of the documents misappropriated by the three employees *resided on Mattel's California servers and concerned the U.S. market*. See 4AAC ¶¶ 48-50. California may have some interest in the application of its laws to this dispute if that were the case. *Given the foundational dispute* about the scope of Mattel's allegations, *this is an issue the parties can take up with the fact-finder*.

(Amended Order on Summary Judgment at 56:25-57:15 (emphasis added).).  Thus, the Court intended to refer to the jury only the "foundational dispute" of whether the documents "resided on Mattel's California servers and concerned the U.S. market."  This is the only question related to choice of law that could be answered by the jury. Once that question is answered, the Court, not the jury, will determine which jurisdiction's law should apply. (*Id.* at 57:16-18 ("*the Court* would proceed to determine which forum would be more impaired if its laws were not applied" (emphasis added).)

Accordingly, the MGA Parties believe that no instruction is required on choice of law, and there is no reason for the jury to be asked to make the legal evaluation called for by the concepts addressed in this instruction.

Mr. Machado joins in the objections of the MGA parties, and separately objects to this instruction on the following ground(s):

1.    Multiple Claimant Objection.

2.    By this instruction, Mattel attempts to refer the entire choice of law analysis to the jury. This is improper and contrary to the Court's summary judgment order, which held:

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1
2
3
4
5
6

> There is a genuine issue of material fact as to whether a "true conflict" exists between California and Mexico…Mattel also alleges that some of the documents misappropriated by the three employees *resided on Mattel's California servers and concerned the U.S. market*. See 4AAC ¶¶ 48-50. California may have some interest in the application of its laws to this dispute if that were the case. *Given the foundational dispute* about the scope of Mattel's allegations, *this is an issue the parties can take up with the fact-finder*.

7   (Amended Order on Summary Judgment at 56:25-57:15 (emphasis

8   added).) Thus, the Court intended to refer to the jury only the

9   "foundational dispute" of whether the documents "resided on Mattel's

10   California servers and concerned the U.S. market." (*See e.g.* Machdo's

11   Proposed Special Verdict Form.) These are the only factual questions

12   related to choice of law that are to be answered by the jury. Once those

13   factual questions are answered, the Court, not the jury, will determine

14   which jurisdiction's law should apply. (*Id.* at 57:16-18 ("*the Court*

15   would proceed to determine which forum would be more impaired if

16   its laws were not applied" (emphasis added).)

17   This entire instruction should be refused as to all parties.

18
19
20
21
22
23
24
25
26
27
28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**Instructions for MGA's Affirmative Defense of Statute of Limitations**

**MATTEL'S SPECIAL JURY INSTRUCTION NO. 32**
**AFFIRMATIVE DEFENSE—INTRODUCTION**

I will now instruct you on MGA's, MGA Mexico's, MGA Hong Kong's, Mr. Larian's, and Mr. Machado's affirmative defenses. The defendants bear the burden of proving their affirmative defenses. You should consider each affirmative defense as to each claim brought by Mattel separately. If you find that a particular defendant has proved an affirmative defense that provides a complete defense to any particular claim, then you should find for that defendant on that claim. If, however, you find that a defendant has not proved that an alleged affirmative defense completely bars a claim, and Mattel has proved that claim, then you should find for Mattel on that claim.

**Authority:** *Seltzer v. Barnes*, 182 Cal. App. 4th 953, 969 (2010) ("A defendant that advances an affirmative defense to the plaintiff's claims bears the burden of proof on that defense."); *Henley v. DeVore,* -- F. Supp. 2d --, 2010 WL 3304211, *4 (C.D. Cal. 2010) ("Because fair use is an affirmative defense to copyright infringement, the defendant bears the burden of proving fair use."); *Quintana v. Baca*, 233 F.R.D. 562, 564 (C.D. Cal. 2005) ("A defense is an affirmative defense if it will defeat a plaintiff's claim even when the plaintiff has stated a prima facie case for recovery under the applicable law.").

1    **OBJECTION:**

2         The MGA Parties object to this instruction and to an instruction format by

3    which all affirmative defenses are grouped together.  The better format is to instruct

4    on the defenses to a given claim when the instructions on the elements of the claim

5    are provided.

6         In addition, the MGA Parties object to the "if/should" format used in this

7    instruction.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 33

## AFFIRMATIVE DEFENSE—STATUTE OF LIMITATIONS

The defendants contend that Mattel's claims relating to Bratz and Carter Bryant were not filed within the time set of law.  This time is called the "statute of limitations."

Mattel's claims were filed on April 27, 2004.  To decide whether that filing was timely, you should examine when Mattel's claims "accrued," which is the date on which Mattel discovered the claims it has brought in this case or knew of facts which should have led it to discover those claims.

Each respective statute of limitations began to run only when Mattel had an awareness of facts sufficient to identify a particular claim it has brought.  It does not matter whether or when Mattel possessed facts which would have permitted it to bring claims different from the claims it has brought.  Rather, your inquiry must be into when Mattel first discovered the claims it actually brought in this case or knew of facts which should have led it to discover those claims.

Mattel was not required to bring a lawsuit based on suspicions alone.  The period of time when Mattel only suspected, but had no evidence of, the wrongdoing alleged by Mattel does not count in considering whether Mattel's claims are timely.  Nor did Mattel have an obligation to sue based on rumor or innuendo.

The statute of limitations for Mattel's claims are different.  For Mattel's claims of interference with contract and aiding and abetting breach of the duty of loyalty, the statutes of limitations are two years.  For Mattel's claims of trade secret misappropriation and conversion, the statutes of limitations are three years.

To succeed on their statute of limitations defense as to these claims, the defendants must prove that Mattel's claimed harm occurred more than two or three years, dependent on the claim at issue, prior to April 27, 2004, when Mattel filed this action.  However, regardless of when the claimed harm occurred, Mattel's

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1  claims were timely filed if it did not discover, and did not know of facts that should

2  have caused it to discover, that Carter Bryant created Bratz while employed by

3  Mattel; that Mr. Bryant entered into a contract with and worked with MGA while

4  he was still employed by Mattel; that the defendants knew that Mr. Bryant was a

5  Mattel employee when they purported to acquire Bratz from Mr. Bryant; and that

6  the defendants engaged in illegal conduct in connection with Mr. Bryant.

7          <u>Copyright infringement claim.</u>

8          The statute of limitations for copyright infringement is three years.  The

9  statute of limitations for that claim began to run only when Mattel had an awareness

10  of facts sufficient to identify the particular claim.  Even if Mattel discovered or

11  knew of facts which would have led it to discover that the defendants were

12  allegedly infringing Mattel's copyrights in works other than claimed copyrighted

13  works created by Mr. Bryant at issue here, that would not trigger accrual of

14  Mattel's claim of copyright infringement in the copyrighted works at issue here.

15          To succeed on their statute of limitations defense, the defendants must prove

16  that Mattel's claimed harm occurred more than three years prior to April 27, 2004,

17  when Mattel filed this action.  However, regardless of when the claimed harm

18  occurred, Mattel's claims were timely filed if it did not discover, and did not know

19  of facts that should have caused it to discover, that Carter Bryant created Bratz-

20  related copyrighted works while employed by Mattel, that Mattel is the rightful

21  owner of a valid copyright in those copyrighted works, that the defendants copied

22  original elements from the copyrighted works, and that there are sufficient

23  similarities between the copyrighted works and defendants' works.

24          If you find that Mattel filed its copyright infringement claim more than three

25  years after it discovered infringement of its copyrights in Mr. Bryant's designs,

26  Mattel can still recover for all infringing acts that took place within three years

27  before Mattel filed its complaint on April 27, 2004, i.e., for all acts occurring after

28  April 27, 2001.

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1   **Authority:**  CACI 4421 (modified); CACI 455 (modifie); Cal. Civ. Code §

2   3426.6 (claim "must be brought within three years after the misappropriation is

3   discovered or by the exercise of reasonable diligence should have been

4   discovered"); *Cypress Semiconductor Corp. v. Superior Court*, 163 Cal. App. 4th

5   575, 585 (2008); *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005);

6   *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1266 (N.D. Cal. 1991) ("We

7   cannot apply statute of limitations in a way that pressures litigants to file suits based

8   merely on suspicions and fears. …[S]uspicion and fear are not sufficient predicates

9   for launching a lawsuit, and to file an action with no other basis would offend

10  norms articulated in rules like Federal Rule of Civil Procedure 11."); *Garamendi v.*

11  *SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003) (plaintiff is "on

12  notice" only when he has "'an awareness of sufficient facts to identify a particular

13  cause of action . . . [It does] not mean the kind of notice—based on hints,

14  suspicions, hunches or rumors—that requires a plaintiff to make inquiries in the

15  exercise of due diligence, but not to file suit.'") (citation omitted); 17 U.S.C.

16  § 507(b); *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994);

17  *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004);

18  *Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1147 (N.D. Cal. 2007).

19

20

21

22

23

24

25

26

27

28

1    **OBJECTION:**

2          The MGA Parties object to this instruction on the ground that the instruction

3    is unnecessarily confusing for the jury.  MGA has submitted separate instructions

4    for each statute of limitations defense, which is appropriate given that the jury will

5    be required to answer special verdict forms as to each defense.

6          The MGA parties further object to this instruction on the ground that it uses

7    the incorrect date to determine the running of the limitations period.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 34

## AFFIRMATIVE DEFENSE—STATUTE OF LIMITATIONS—

## FRAUDULENT CONCEALMENT

Mattel claims that the defendants fraudulently concealed the facts underlying Mattel's claims related to Mr. Bryant and Bratz.  The defendants deny these allegations.

To prove fraudulent concealment, Mattel must show the following by a preponderance of the evidence:

(1)   the defendants took affirmative steps to conceal the facts that could have led to Mattel to discover that Carter Bryant created Bratz while employed by Mattel, that Mr. Bryant entered into a contract with and worked with MGA while he was still employed by Mattel, and/or that the defendants knew that Mr. Bryant was a Mattel employee when they purported to acquire Bratz from him and engaged in illegal conduct in doing so; and

(2)   Mattel was not aware of such facts that either did or would have, with diligence, led Mattel to discover that Carter Bryant created Bratz while employed by Mattel, that Mr. Bryant entered into a contract with and worked with MGA while he was still employed by Mattel, and/or that the defendants knew that Mr. Bryant was a Mattel employee when they purported to acquire Bratz from him and engaged in illegal conduct in doing so.

If you so find by the preponderance of the evidence, you should find for Mattel on its allegations of fraudulent concealment.  If not, you should find for defendants on the allegations of fraudulent concealment.

**Authority:**  Jury Instruction No. 35, as given (Phase 1B); *Snapp & Associates Ins. Services, Inc. v. Malcolm Bruce Burlingame Robertson*, 96 Cal. App. 4th 884, 890 (2002); *Regents of University of California v. Superior Court*, 20

1   Cal. 4th 509, 533 (1999); *Sanchez v. South Hoover Hospital*, 18 Cal. 3d 93, 99

2   (1976).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1 **OBJECTION:**

2     The MGA Parties object to this instruction on the grounds that it suggests

3 that fraudulent concealment by one defendant would necessarily toll the statute of

4 limitations as to another defendant not found culpable in the alleged concealment.

5 *See Sanchez v. South Hoover Hospital*, 18 Cal. 3d 93, 100 (1976) ("The rationale

6 for the foregoing rule [of fraudulent concealment] is that the culpable defendant

7 should be estopped from profiting by his own wrong [t]o the extent that it hindered

8 an 'otherwise diligent' plaintiff in discovering his cause of action.") (emphasis

9 added).

10     The MGA Parties further object to this instruction on the grounds that tolling

11 the statute of limitations on a fraudulent concealment theory would be inappropriate

12 in this case.   Because Mattel has refused to provide certain information about what

13 it knew about Carter Bryant and MGA, and when, it cannot now seek to toll the

14 statute of limitations based on fraudulent concealment.  Specifically, Mattel has

15 withheld, under an assertion of attorney-client privilege, documents reflecting that

16 Mattel undertook an investigation of Bryant, Bratz, MGA, and Isaac Larian in

17 March 2002, long before the statue of limitations period began.  Mattel contends

18 that the investigation did not relate to the claims at issue in this case.  Still, Mattel

19 refuses to produce documentation of the investigation.  Allowing Mattel to refuse to

20 produce this documentation and at the same time assert arguments to avoid a statute

21 of limitations defense would be "manifestly unfair."  *Hearn v. Rhay*, 68 F.R.D. 574

22 (E.D. Wash 1975) (adopted by *Home Indem. Co. v. Lane Powell Moss and Miller*,

23 43 F.3d 1322, 1326 (9th Cir. 1995)).

24     Courts are clear that a party cannot seek to avoid the statute of limitations

25 defense by evading discovery through assertion of privilege.  *See Rambus Inc. v.

26 Samsung Electronics Co., Ltd.*, 2007 WL 3444376 at *3-5 (N.D. Cal. Nov. 13,

27 2007) (finding a waiver of attorney-client privilege where plaintiff was "alleging a

28 basis for avoiding a statute of limitation"); *Aloe Vera of America, Inc. v. United*

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

*States*, 2003 WL 22429082, *3 (D. Ariz. Sept 23, 2003) (finding a waiver of attorney-client privilege where "[p]laintiffs have asserted privilege as the result of an affirmative act – by filing a suit in which a statute of limitations defense is available"); *In re Imperial Corp. of Am.*, 179 F.R.D. 286, 289-90 (S.D. Cal. 1998) (finding a waiver with respect to documents that were "essential to [defendant's] examination ... regarding plaintiffs allegations of avoidance of the statute of limitations"); *Bohack Corp. v. Iowa Beef Processors, Inc.*, No. 1981 WL 2018 at *1-2 (E.D.N.Y. Jan. 13, 1981) ("Because [plaintiff] has created an issue of its knowledge with respect to defendant's activities in order to avoid the statutory protection which would otherwise be afforded its adversary, it has thereby waived its attorney-client privilege as to communications pertinent to that issue"); *Russell v. Curtin Matheson Scientific, Inc.*, 493 F. Supp. 456, 458 (D. Tex. 1980) (finding waiver where plaintiffs "assert the attorney-client privilege" and yet have "by an 'affirmative act for (their) own benefit,' the raising of the equitable tolling issue, 'placed information protected by (the privilege) in issue'") (citations omitted). Accordingly, if the Court determines that the attorney-client privilege has not been waived, Mattel may not advance a fraudulent concealment theory and may not give this instruction to the jury, because Mattel has refused to allow the MGA Parties access to the facts that would allow them to dispute the fraudulent concealment theory.

If the Court determines that the attorney-client privilege has not been waived and that Mattel may advance a fraudulent concealment theory, the Court should include the following statement with this instruction:

"Mattel claims that it was unable to discover its claims against the MGA Parties until November 2003.  If you find that Mattel is in possession of, and has not disclosed, documents relevant to the truth of that claim, you may infer that such evidence, if it had been made available, would have been favorable to Mattel and adverse to defendants."

- 203 -

1   The instruction also grossly misstates the relevant law.

2

3   **Authority:**  *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th

4 Cir. 2000) (recognizing cases in which a negative inference was allowed against a

5 person asserting attorney-client privilege); *SEC v. Graystone Nash, Inc.*, 25 F.3d

6 187, 190 (3rd Cir. 1994) (stating that not allowing a negative inference to be drawn

7 "poses substantial problems for an adverse party who is deprived of a source of

8 information that might conceivably be determinative in a search for the truth.")

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Remedies Instructions for Mattel's Claims

### MATTEL'S SPECIAL JURY INSTRUCTION NO. 35
### INTRODUCTION TO DAMAGES

I will now instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

**Authority:**  Phase 1B Jury Instructions, Instruction No. 36 (modified).

1  **OBJECTION:**

2          The MGA Parties do not object to the substance of this instruction, but they

3  object to lumping all damages instructions together.  The jury should be instructed

4  on damages issues (and affirmative defenses) on a claim by claim basis.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**Instructions for Compensatory Damages**

**CACI 3901**

**DAMAGES FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

If you decide that Mattel has proved its claim against MGA and Mr. Larian for intentional interference with contractual relations, you also must decide how much money will reasonably compensate Mattel for the harm.  This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by MGA's and Mr. Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm.  However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)    Compensatory and general damages, including Mattel's lost profits and disgorgement of profits or advantages obtained by MGA and Mr. Larian as a result of their wrongful conduct;

(2)    Prejudgment interest at the maximum rate, calculated from the date Mattel's claim arose;

(3)    Punitive damages.

**Authority:**  CACI 3901 (modified); *GHK Assocs. v. Mayer Group*, 224 Cal. App. 3d 856, 874-76 (1990); *Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1140 (1986).

1  **OBJECTION:**

2       The MGA Parties object to this instruction because it does not explain that

3  Mattel's damages cannot be based on the MGA Parties' purported interference with

4  Mattel's rights to Bratz, or the MGA Parties' profits derived therefrom, or upon

5  MGAE and Larian's alleged inducement of Mattel employees' theft of 'Mattel

6  trade secrets and other proprietary information.  *See* 4/25/2008 Order Granting in

7  Part, Denying in Part, and Deferring in Part the Parties' Motions for Partial

8  Summary Judgment, at 2.  ("[T]he tortious interference with contract claim is

9  preempted to the extent that it is based on Mattel's rights to Bratz.").

10       The instruction is further objectionable to the extent that it does not require

11  Mattel to prove that it suffered any financial loss resulting from the loss of the

12  benefits of the contractual relationship in question and consequential losses, if any,

13  caused by the alleged interference.  *See* BAJI § 7.89.  The instruction is further

14  objectionable because it eliminates the legal requirement that the jury find a causal

15  connection between specific acts of wrongdoing and the purported harms to Mattel.

16  *See* CACI 3901 (2008).  The instruction is also objectionable because Mattel lacks

17  any evidentiary basis to seek punitive damages.  *See Barry v. Raskov*, 232 Cal.

18  App. 3d 447, 457 (1991) (trial court properly refused to instruct jury on punitive

19  damages, as there was not clear and convincing evidence of fraud); *see also Jones*

20  *v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an

21  instruction about his or her theory of the case if it is supported by law and has

22  foundation in the evidence").

23       The MGA Parties further object to the portion of the instruction related to

24  prejudgment interest as misleading.  Prejudgment interest is only appropriate where

25  the plaintiff is seeking compensation for loss of use of money or property.  *See* Cal.

26  Civ. Code § 3288; *Greater Westchester Homeowners Ass'n v. City of Los Angeles*,

27  26 Cal. 3d 86, 102-03 (1979) ("[S]uch interest represents the accretion of wealth

28  which money or particular property could have produced during a period of loss."

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

To the extent Mattel seeks "disgorgement of profits or advantages obtained by MGA and Mr. Larian," Mattel does not seek "compensation" of any kind, including for the "loss of use" of any funds to which it was entitled at the time its claim arose. Prejudgment interest is therefore unavailable on Mattel's disgorgement claims. Likewise, the instruction is misleading because it does not explain that prejudgment interest cannot be calculated on a judgment for punitive damages. *Lakin v. Watkin Associated Industries*, 6 Cal. 4th 644, 664 (1993) ("We therefore conclude that section 3291 does not authorize the aware of prejudgement interest on punitive damages.").

Finally, the MGA Parties object to this instruction on the grounds that it improperly includes punitive damages and prejudgment interest in the "specific items of damages" claimed by Mattel.  As shown by the discussion in CACI 3901 and 3902, the "specific items of damages" to be listed in this instruction are limited to economic damages, meaning objectively verifiable monetary losses, and non-economic damages, including pain, suffering, inconvenience, etc.  Punitive damages and prejudgment interest do not fit into these categories, and so should not be included in this instruction.  This is especially so because the calculation of those damages is not explained.

Further, the MGA Parties object to this instruction because it does not make clear that the damages that may be awarded under this instruction must descend from the intentional interference with contractual relations, if any, and not from any other damages potentially suffered in the case.

The MGA Parties direct the Court to page 114 of their Amended Proposed Jury Instructions for an instruction on this topic that will be more helpful to the jury.

# CACI 3901

# DAMAGES FOR AIDING AND ABETTING BREACH OF THE DUTY OF LOYALTY

If you decide that Mattel has proved its claim against MGA and Mr. Larian for aiding and abetting breaches of the duty of loyalty by former Mattel employees, including Carter Bryant, Ronald Brawer, Jorge Castilla, Daniel Cooney, Isabel Cabrera, Beatriz Morales, Maria Elena Salazar, and Ryan Tumaliuan, you must decide how much money, if any, should be awarded as damages.

The amount of damages must include an award for each item of harm that was caused by MGA's and Mr. Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)   Compensatory and general damages, including Mattel's lost profits and disgorgement of profits or advantages obtained  by MGA and Isaac Larian as a result of their wrongful conduct;

(2)   Prejudgment interest at the maximum rate;

(3)   Punitive damages.


**Authority:**  CACI 3901 (modified).

**OBJECTION:**

The MGA Parties object to this instruction on the grounds that it improperly and unnecessarily modifies CACI 3901, which is an accurate statement of the applicable law.

First, the proposed instruction includes categories of damages that are not included in the CACI instruction, and that are improper to include here. To the extent punitive damages are available, they should be explained separately in a separate instruction. Additionally, it is improper for prejudgment interest to be included as a category of damages in this instruction.

The MGA Parties object to this instruction because it does not explain that Mattel's damages cannot be based on Bryant's alleged misappropriation of Mattel's information. (Amended MSJ Order at 90.)

Additionally, the MGA Parties object on the grounds that Mattel's aiding and abetting claims, predicated on Carter Bryant's breach of his duty of loyalty, do not implicate profits generated by the sale of Bratz fashion dolls and Bratz-related products. Conversely, Mattel's lost profits theory is limited to a demand for profits from the allegedly infringing sale of Bratz fashion dolls and related products. Accordingly, lost profits are not available as a damages theory for Mattel's claim for aiding and abetting a breach of a duty of loyalty.

The correct remedy arising from aiding and abetting of a breach of the duty of loyalty is a damages award sufficient to place Mattel in the same economic position it would have been in without the breach. *Bancroft Whitney Co. v. Glen*, 64 Cal. 2d 327, 355-56 (1966). Mattel ignores the fact that the "disgorgement" available for a breach of a duty of loyalty is restitutionary disgorgement, not nonrestitutionary disgorgement. *See Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1086-87 (9th Cir. 2003); Restatement (Second) of Agency § 403 cmt. a; *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148-49 (distinguishing restitutionary disgorgement from nonrestitutionary disgorgement).

1      The proposed instruction ignores the legal principal that disgorgement of

2  profits "has the greatest force where the appreciation of the property is due to

3  external factors rather than the efforts of the wrongful acquisitor."  *Mattel, Inc. v.*

4  *MGA Entertainment, Inc.*, 61 F.3d 904, 910 (9th Cir. 2010).  On the other hand,

5  where the appreciation of the property is due in large part to the defendant's efforts,

6  "it is necessary to identify the profits and to recapture them without capturing the

7  fruits of the defendant's own labors or legitimate efforts."  *Id.*  Here, MGA is

8  responsible for the bulk of the value of the Bratz brand.  Nonrestutionary

9  disgorgement is inappropriate.

10      Further, Mattel's proposed instruction ignores the principle that a third

11  party's liability for a breach of a fiduciary duty or a duty of loyalty is more

12  constrained than the liability of the breacher.  "Although a fiduciary may have to

13  disgorge profits earned through the breach, and the beneficiary need not prove

14  actual harm before recovering from the fiduciary, a third-party participant is liable

15  only for actual harm caused to the beneficiary."  Tuttle, "The Fiduciary's Fiduciary:

16  Legal Ethics in Fiduciary Representation," 1994 U. Ill. L. Rev. 889, 901-902 (1994)

17  (citing Patricia L. Loughlan, "Liability for Assistance in a Breach of Fiduciary

18  Duty," 9 Oxford J. Legal Stud. 260, 264-65 (1989)).  At a maximum, the

19  aider/abettor's liability is joint with the fiduciary for the principal's losses and the

20  fiduciary's, not the principal's, losses.  *Rosenthal v. Gould*, 273 Cal. App. 2d 239,

21  243 (1969); *Anderson v. Thacher*, 76 Cal. App. 2d 50, 72 (1946).The preceding

22  instruction is further objectionable to the extent it seeks disgorgement of profits

23  regardless of when such profits were earned.  Profits for breach of the duty of

24  loyalty are limited to those profits earned by the defendant while defendant owed

25  such a duty. Further, the preceding instruction is objectionable to the extent that it

26  fails to caution the jury that it should award damages only for the conduct found to

27  constitute aiding and abetting the breaches at issue. Thus, for example, if the jury

28  finds that MGA and Larian aided and abetted Bryant's or the other employees' use

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

of Mattel resources in breach of their duties, the jury should be told that it must award damages only for the harm caused by the loss of those resources, that is the value of those lost resources at the time they were used.  Similarly, if the jury found that MGA and Larian aided and abetted Bryant's or the other employees' breach of their duties by accepting additional work from MGA, the jury should be told that it must award damages only sufficient to compensate Mattel in an amount equal to the harm caused by Bryant or the other employees accepting such additional work from MGA.  In the same vein, if the jury finds that Bryant or the other employees breached their duties by directly competing with Mattel while still employed at Mattel, it must award damages only to compensate Mattel for the harm caused by that competition during the term of their employment.  In addition, if the jury finds Bryant breached his duties by presenting the BRATZ sketches owned by Mattel to MGA, it must compensate Mattel only for the harm proximately caused by that breach, that is the value of the sketches at the time of the breach.  *See* Restatement (Second) of Torts § 876 (1979); BAJI § 12.57 (2008) (as modified); *Charles T. Powner, Co. v. Smith*, 91 Cal. App. 101 (1928) (damages were profits on directly competitive sales resulting from use of employer's time and facilities); *Sumner v. Nevin*, 4 Cal. App. 347, 350 (1906) (damages were commissions received while still employed); *see also Design Strategies Inc. v. Davis*, 384 F. Supp. 2d 649 (S.D.N.Y. 2005) (damages were amount of salary earned during time employee was disloyal, and not the profits from a contract that evidence showed employer would not have been awarded); *Frye-Tech, Inc. v. Harris*, 46 F. Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources including employee time used to develop competing products); *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 410 (2007) (a claim for breach of duty of loyalty requires a showing that the employee's breach was the proximate cause of harm to the employer); *Clinimetrics Research Assocs., Inc. v. Booker*, 2004 Cal. App. Unpub. LEXIS 11605, at *28 (Dec. 2,

1   2004) (explaining plaintiff must show the employee's "breach of her duty of loyalty

2   *caused the damages that [the plaintiff] claimed.*").

3          The MGA Parties also object because this instruction fails to distinguish

4   among the defendants and advise the jury that it must make separate findings with

5   respect to each defendant.

6          The instruction is also objectionable because Mattel lacks any evidentiary

7   basis to seek punitive damages.  *See Barry v. Raskov*, 232 Cal. App. 3d 447, 457

8   (1991) (trial court properly refused to instruct jury on punitive damages, as there

9   was not clear and convincing evidence of fraud); *see also Jones v. Williams*, 297

10  F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her

11  theory of the case if it is supported by law and has foundation in the evidence").

12         The MGA Parties object to the portion of the instruction related to

13  prejudgment interest as misleading because it does not explain that prejudgment

14  interest cannot be calculated on a judgment for punitive damages.  *Lakin v. Watkin*

15  *Associated Industries*, 6 Cal. 4th 644, 664 (1993).

16         The MGA Parties refer the Court to their proposed instruction on damages

17  for aiding and abetting a breach of the duty of loyalty at page 175 of their Amended

18  Proposed Jury Instructions.

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CACI 3903N</u>

## <u>LOST PROFITS</u>

     To recover damages for lost profits, Mattel must prove it is reasonably certain it would have earned profits but for defendants' conduct.

     To decide the amount of damages for lost profits, you must determine the gross amount Mattel would have received but for defendants' conduct and then subtract from that amount the expenses Mattel would have had if defendants' conduct had not occurred.

     The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.

     **Authority:**  CACI 3903N.

**OBJECTION:**

The MGA Parties object to the use of this instruction in connection with the claims for interference with contractual relations and aiding and abetting breach of the duty of loyalty.  The evidence that will be presented on these claims will not support an award of lost profits damages.

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 36
## DISGORGEMENT OF PROFITS

Under the law, a person is not permitted to retain profits or advantages he obtained by engaging in tortuous, wrongful acts. Accordingly, if you decide that Mattel has proved its claim against MGA and Isaac Larian for aiding and abetting breach of the duty of loyalty or intentional interference with contract and that MGA and/or Isaac Larian obtained profits or advantages because of these wrongful acts, those profits and advantages should be awarded to Mattel.

**Authority:** *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1086 (9th Cir. 2003) ("Although there are few reported cases addressing the appropriate remedy, those we have found have also required employees to turn over profits received as a result of breaching their duty of loyalty."); Restatement (Second) of Agency § 403 ("If an agent receives anything as a result of his violation of a duty of loyalty to the principal, he is subject to a liability to deliver it, its value, or its proceeds, to the principal."); Restatement of Restitution § 201 (2008) ("Where a fiduciary in violation of his duty to the beneficiary communicates confidential information to a third person, the third person, if he had notice of the violation of duty, holds upon a constructive trust for the beneficiary any profit which he makes through the use of such information."); *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 543 (2007) ("Disgorgement of profits is particularly applicable in cases dealing with breach of a fiduciary duty"; "Active participants in the breach of fiduciary duty by another are accountable for all advantages they gained thereby and are liable to the beneficiary of the duty"); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1127 (C.D. Cal. 2003) (a party who aids and abets a breach of fiduciary duty will be jointly liable) (citing *Heckmann v. Ahmanson*, 168 Cal. App. 3d 119 (1985)); *Xum Speegle, Inc. v. Fields*, 216 Cal. App. 2d 546 (1963) (upholding accounting of all insurance commissions wrongfully diverted to

1  defendant in action for breach of fiduciary duty); *Adams v. Herman*, 106 Cal. App.

2  2d 92, 99 (1951) ("It is an integral part of that rule that, if the agent makes a secret

3  profit from the agency, the principal may recover such profit.")

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**OBJECTION:**

The MGA Parties object to this instruction on the grounds that it conflates the remedies for aiding and abetting a breach of a duty of loyalty and for intentionally interfering with a contract.  To the extent the cases cited by Mattel are applicable, they refer only to a breach of a duty of loyalty, not to intentional interference with contractual relations.  Accordingly, this instruction is objectionable for confusing two differing areas of the law.

Additionally, the MGA Parties object to this objection on the grounds that it misstates the remedy available for aiding and abetting a breach of a duty of loyalty. As a threshold matter, Mattel's aiding and abetting claims, predicated on Carter Bryant's breach of his duty of loyalty, do not implicate profits generated by the sale of Bratz fashion dolls and Bratz-related products.  Conversely, Mattel's disgorgement theory is limited to a demand for profits from the allegedly infringing sale of Bratz fashion dolls and related products.  Accordingly, disgorgement is not available as a damages theory for Mattel's claim for aiding and abetting a breach of Bryant's duty of loyalty.

The correct remedy arising from the aiding and abetting of a breach of the duty of loyalty is a damages award sufficient to place Mattel in the same economic position it would have been in without the breach.  *Bancroft Whitney Co. v. Glen*, 64 Cal. 2d 327, 355-56 (1966).  Through its proposed instruction, Mattel improperly seeks to recover all of the value of the Bratz brand through a breach of loyalty disgorgement theory.  In support of this extreme position, Mattel cites cases discussing breaches of fiduciary duty, which are not applicable here.  Additionally, Mattel ignores the fact that the "disgorgement" available for a breach of a duty of loyalty is restitutionary disgorgement, not nonrestitutionary disgorgement. *See Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1086-87 (9th Cir. 2003); Restatement (Second) of Agency § 403 cmt. a; *Korea Supply Co. v. Lockheed Martin Corp.*, 29

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1   Cal. 4th 1134, 1148-49 (distinguishing restitutionary disgorgement from

2   nonrestitutionary disgorgement).

3       The proposed instruction ignores the legal principal that disgorgement of

4   profits "has the greatest force where the appreciation of the property is due to

5   external factors rather than the efforts of the wrongful acquisitor." *Mattel, Inc. v.*

6   *MGA Entertainment, Inc.*, 61 F.3d 904, 910 (9th Cir. 2010).  On the other hand,

7   where the appreciation of the property is due in large part to the defendant's efforts,

8   "it is necessary to identify the profits and to recapture them without capturing the

9   fruits of the defendant's own labors or legitimate efforts." *Id.*  Here, MGA is

10  responsible for the bulk of the value of the Bratz brand.  Nonrestitutionary

11  disgorgement is inappropriate.

12      Further, Mattel's proposed instruction ignores the principle that a third

13  party's liability for a breach of a fiduciary duty or a duty of loyalty is more

14  constrained than the liability of the breacher.  "Although a fiduciary may have to

15  disgorge profits earned through the breach, and the beneficiary need not prove

16  actual harm before recovering from the fiduciary, a third-party participant is liable

17  only for actual harm caused to the beneficiary."  Robert W. Tuttle, "The Fiduciary's

18  Fiduciary: Legal Ethics in Fiduciary Representation," 1994 U. Ill. L. Rev. 889, 901-

19  902 (1994) (citing Patricia L. Loughlan, "Liability for Assistance in a Breach of

20  Fiduciary Duty," 9 Oxford J. Legal Stud. 260, 264-65 (1989)).  At a maximum, the

21  aider/abettor's liability is joint with the fiduciary for the principal's losses and the

22  fiduciary's, not the principal's, losses.  *Rosenthal v. Gould*, 273 Cal. App. 2d 239,

23  243 (1969); *Anderson v. Thacher*, 76 Cal. App. 2d 50, 72 (1946).

24      The MGA Parties direct the Court to page 175 of its Amended Proposed Jury

25  Instructions for a proper instruction on this point of law.

26      Mr. Machado joins in the objections of the MGA parties, and separately

27  objects to this instruction on the following ground(s):

28          1.    Multiple Claimant Objection.

- 220 -

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

2.    This is strictly a question for the Court, not the jury. *See, e.g.,* CACI
      4409 ("However, [the Court] will calculate the amount of any
      royalty").

# **CACI 4409**

## **REMEDIES FOR MISAPPROPRIATION OF TRADE SECRET**

If Mattel proves that MGA, MGA Mexico, Mr. Larian and/or Mr. Machado misappropriated its trade secrets, then Mattel is entitled to recover damages if the misappropriation caused Mattel to suffer an actual loss or MGA, MGA Mexico, Isaac Larian and/or Machado to be unjustly enriched.

If MGA, MGA Mexico, Mr. Larian and/or Mr. Machado's misappropriation did not cause Mattel to suffer an actual loss and did not cause the defendants to be unjustly enriched, Mattel may still be entitled to a reasonable royalty for no longer than the period of time the use could have been prohibited.

**Authority:**  CACI 4409.

**OBJECTION:**

The MGA Parties object to this instruction on the grounds that it has omitted an important sentence from CACI 4409. The last sentence of CACI 4409 states: "However, I will calculate the amount of any royalty." The omission of this sentence may give the jury the impression that it is their responsibility to calculate the reasonable royalty, when it is not. The sentence should be included in the instruction.

Mr. Machado joins in the objections of the MGA Parties, and separately objects to this instruction on the following ground(s):

1. Multiple Claimant Objection

2. No Loss Objection

3. The instruction is incomplete because it omits the following language regarding reasonable royalty: "However, I will calculate the amount of any royalty."

# CACI 4409

## TRADE SECRET DAMAGES—ACTUAL LOSS

Mattel is entitled to recover damages for misappropriation if the misappropriation caused Mattel to suffer an actual loss.

One measure of actual loss is lost profits.  To recover damages for lost profits, Mattel must prove it is reasonably certain it would have earned profits but for the misappropriation by MGA, MGA Mexico, Mr. Larian and/or Mr. Machado. To decide the amount of damages for lost profits, you must determine the gross amount Mattel would have received but for the misappropriation and then subtract from that amount the expenses Mattel would have had if the misappropriation had not occurred.

The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.

**Authority:**  CACI 4409 (modified); CACI 3903N (modified).

1  **OBJECTION:**

2      The MGA Parties object to this instruction on the grounds that it needlessly

3  modifies CACI 3903N.  First, it adds sentences to the beginning of the CACI

4  instruction that are unnecessary, because they merely repeat statements in the

5  previous instruction, in violation of the local rules.  *See* L.R. 51-2(c).  Second,

6  where CACI 3903N specifically states that categories of expenses should be

7  described for the jury, this proposed instruction does not set forth the categories of

8  expenses that Mattel may have incurred had the misappropriation not occurred.

9      Third, to the extent that Mattel's trade secret damages are based upon lost

10  profits claims dependent upon Wagner's regression analysis, that claim is defective

11  for all of the reasons set forth in connection with MGA Parties' responses to the

12  copyright damages instructions set forth below.

13      Specifically, Wagner's regression analysis is based on faulty data and fails to

14  take into account numerous factors admitted by Mattel's business records to have

15  affected its performance during the time periods at issue.  In constructing his but-

16  for hypothetical lost profits world, Wagner also ignored key contemporaneous

17  evidence generated by Mattel such as the New Brand Cannibalization Study, TX

18  26552, TX 26554.  The regression analysis plainly violates Rule 702 and cannot be

19  the basis for a lost profits claim by Mattel.  *See Group Health Plan, Inc. v. Philip*

20  *Morris USA, Inc.*, 344 F.3d 735, 760-61 (8th Cir. 2003)(finding that the district

21  court did not abuse its discretion by rejecting the counterfactual economic model

22  and noting that, while "[a] certain amount of speculation is necessary, … too much

23  is fatal to admission").

24      The MGA Parties further object to this instruction on the ground that

25  Mattel's attempt through Wagner to evade the Court's summary judgment order

26  regarding subsequent generation dolls.  Mattel cannot establish the causal link

27  required to prove indirect profits on the entire Bratz revenue base because there is

28  misappropriation with respect to the vast majority of the products.  Mattel does not

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1   even try to demonstrate that the sales of subsequent generation female dolls, other

2   Bratz branded products, or license revenue are attributable to any misappropriation.

3   Mattel instead improperly is trying to use a concept akin to the entire market value

4   rule in patent law to recover a royalty on all Bratz revenues—but even the Federal

5   Circuit would not permit Mattel to get away with including the entire revenue base

6   under these circumstances.  *See Uniloc*, 2011 WL 9738 at *22-24 (rejecting

7   application of the entire market value rule to entire Windows revenue base because

8   of infringing product ID key).  Mattel has no proof of convoying in the form of

9   bundling, temporal proximity of sales, or any other factor that would tend to

10  demonstrate that the other revenues are attributable to the alleged *infringement* by

11  the six remaining dolls in the case.  *See Mackie v. Rieser*, 296 F. 3d 909 (2002).

12       The MGA Parties further object to this instruction because it fails to ensure

13  that the jury distinguishes among the defendants and makes appropriate findings

14  with respect to each defendant.  The MGA Parties further object to this instruction

15  (and Mattel's other trade secret damages instructions) because it does not properly

16  distinguish between each alleged misappropriation.  Finally, the MGA Parties

17  object to this instruction because it fails to advise the jurors that they may not

18  include in an award of profits any amount that they took into account in

19  determining actual damages.

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

# CACI 4410

## TRADE SECRET DAMAGES—UNJUST ENRICHMENT

MGA, MGA Mexico, Mr. Larian and/or Mr. Machado were unjustly enriched if their misappropriation of Mattel's trade secrets caused them to receive a benefit that they otherwise would not have achieved.

To decide the amount of any unjust enrichment, first determine the value of the benefit obtained by MGA, MGA Mexico, Mr. Larian and/or Mr. Machado which would not have been except for their misappropriation.  Then subtract from that amount their reasonable expenses, if any.  In calculating the amount of any unjust enrichment, do not take into account any amount that you included in determining any amount of damages for Mattel's actual loss.

**Authority:**  CACI 4410 (modified).

**OBJECTION:**

This instruction violates the mandate and the law of the case because it fails to distinguish between the value attributable to the purported trade secret and the value attributable to the hard work, skill and ingenuity of MGA. *See Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 917 (9th Cir. 2010).

The MGA Parties further object to this instruction on the ground that it attempts to evade the Court's summary judgment order regarding subsequent generation dolls. Mattel does not even try to demonstrate that the sales of subsequent generation female dolls, other Bratz branded products, or license revenue are attributable to any misappropriation.

The MGA Parties object to this instruction on the grounds that if fails to set forth all of the relevant categories of expenses that may have been incurred. CACI 4410 states that this instruction should set forth the categories of expenses to be deducted, including labor, materials, rent, etc.

The MGA Parties further object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant. The MGA Parties further object to this instruction because it does not properly distinguish between each alleged misappropriation.

The MGA Parties refer the Court to their instruction on unjust enrichment on page 153 of the MGA Parties' Amended Proposed Jury Instructions.

Mr. Machado joins in the objections of the MGA Parties, and separately objects to this instruction on the following ground(s):

1.    Multiple Claimant Objection.

2.    The jury should be reminded that this is the only remedy Mattel is pursuing against Mr. Machado.

3.    The instruction fails to advise the jury that they "must not include in any award of damages any benefit to Mr. Machado that is attributable to factors other than his alleged misappropriation of trade secrets,

including specifically any benefit achieved by Mr. Machado as a result
of his lawful conduct, hard work, skill, knowledge, investment or
ingenuity." (Machado's Proposed Jury Instruction 4410.)

1

## CACI 4411

2

## TRADE SECRET DAMAGES—WILLFUL AND MALICIOUS

3

## MISAPPROPRIATION

4

5      If you decide that the defendants' misappropriation caused Mattel harm, you

6  must decide whether the defendants acted willfully and maliciously.

7      "Willfully" means that the defendants acted with a purpose or willingness to

8  commit the act or engage in the conduct in question, and the conduct was not

9  reasonable under the circumstances at the time and was not undertaken in good

10  faith.

11      "Maliciously" means that the defendants acted with an intent to cause injury,

12  or that the defendants' conduct was despicable and was done with a knowing and

13  willful disregard for the rights of others.  "Despicable conduct" is conduct so vile,

14  base, or wretched that it would be looked down on and despised by ordinary decent

15  people.  The defendants acted with knowing disregard if they were aware of the

16  probable consequences of their conduct and deliberately failed to avoid those

17  consequences.

18      **Authority:**  CACI 4411 (modified).

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1  **OBJECTION:**

2       The MGA Parties object to this instruction on the following grounds.

3       First, the first line of the instruction assumes that misappropriation occurred.

4  The instruction should be modified to state "if you find that any defendant

5  misappropriated trade secrets owned by a claimant, and that the misappropriation

6  caused harm to the claimant, you must decide whether the defendant's conduct

7  justifies an award . . . ."  Mattel's substitution of "willfully and maliciously" for the

8  CACI 4411 language should be rejected.

9       Mattel's deletion of the second paragraph of CACI 4411, which includes the

10  burden of proof, among other things, should also be rejected.

11       The MGA Parties further object to this instruction because it fails to ensure

12  that the jury distinguishes among the defendants and makes appropriate findings

13  with respect to each defendant.  The MGA Parties further object to this instruction

14  because it does not properly distinguish between each alleged misappropriation.

15       If a form of CACI 4411 is to be used, it should be faithful to CACI 4411 as

16  written.

17

18

19

20

21

22

23

24

25

26

27

28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 37
## TRADE SECRET REASONABLE ROYALTY CALCULATION

If you decide that neither actual damages nor unjust enrichment have been proved by Mattel, you may determined a reasonable royalty for the misappropriated trade secrets.  A reasonable royalty is the amount a willing buyer would have been reasonably required to pay a willing seller for the right to use Mattel's trade secrets in a hypothetical negotiation taking place at the time of the misappropriation.  In considering this hypothetical negotiation, you should focus on what the expectations of the parties would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  You must assume that the parties were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, not simply a royalty either party would have preferred.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time of the misappropriation.  Some of the kinds of factors that you may consider in making your determination are:

(1)     The royalties received by Mattel for licensing the Mattel trade secrets, proving or tending to prove an established royalty.

(2)     The rates paid by the licensee for the use of other intellectual property comparable to the Mattel trade secrets.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The licensor's established policy and marketing program to maintain his or her trade secrets by not licensing others to use the  trade secrets or by granting licenses under special conditions designed to preserve the trade secrets.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the Mattel trade secrets in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of products not embodying the Mattel trade secrets, and the extent of such derivative or convoyed sales.

(7)     The duration of the Mattel trade secrets and the term of the license.

(8)     The established profitability of the product made under the Mattel trade secrets, its commercial success, and its current popularity.

(9)     The utility and advantages of the Mattel trade secrets over the old modes or devices, if any, that had been used for working out similar results.

(10)     The nature of the Mattel trade secrets, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the Mattel trade secrets.

(11)     The extent to which the defendant has made use of the Mattel trade secrets and any evidence probative of the value of that use.

(12)     The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the Mattel trade secrets or analogous trade secrets.

(13)     The portion of the realizable profits that should be credited to the Mattel trade secrets as distinguished from other elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)     The opinion and testimony of qualified experts.

(15)     The amount that a licensor (such as Mattel) and a licensee (such as MGA) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement, that is, the amount

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1  which a prudent licensee—who desires, as a business proposition, to obtain a

2  license to manufacture and sell a particular article embodying the Mattel trade

3  secrets—would have been willing to pay as a royalty and yet be able to make a

4  reasonable profit and which amount would have been acceptable by a prudent trade

5  secrets owner who was willing to grant a license.

6       No one factor is dispositive and you can and should consider the evidence

7  that has been presented to you in this case on each of these factors.  You may also

8  consider any other factors which in your mind would have increased or decreased

9  the royalty the infringer would have been willing to pay and the trade secret owner

10  would have been willing to accept, acting as normally prudent business people.

11  The final factor establishes the framework which you should use in determining a

12  reasonable royalty, that is, the payment that would have resulted from a negotiation

13  between the trade secret owner and the defendant taking place at the time of the

14  infringement.

15       Evidence of things that happened after the misappropriation took place can

16  be considered in evaluating the reasonable royalty to the extent that the evidence

17  aids in assessing what royalty would have resulted from a hypothetical negotiation.

18

19       **Authority:**  Federal Circuit Model Patent Jury Instructions, Instruction No.

20  6.7; *LinkCo, Inc. v. Fujitsu Ltd*.  232 F. Supp. 2d 182, 190 (S.D.N.Y.

21  2002)(discussing application of *Georgia-Pacific* factors in trade secret case); *O2*

22  *Micro Intern. Ltd. v. Monolithic Power Systems, Inc.*,  399 F. Supp. 2d 1064, 1077

23  (N.D. Cal. 2005) (same); *Veritas Operating Corp. v. Microsoft Corp.,*  2008 WL

24  7404617 (W.D. Feb. 26, Wash. 2008) (same).

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1   **OBJECTION:**

2        The MGA Parties object to this instruction on the grounds that it improperly

3   places the calculation of a reasonable royalty with the jury.  The calculation of the

4   reasonable royalty is for the Court, not the jury.  CACI 4409 ("Both the statute and

5   case law indicate that the question of a reasonable royalty should not be presented

6   to the jury."); *see also* Cal. Civ. Code § 3426.3(b), *Unilogic, Inc. v. Burroughs*

7   *Corp.*, 10 Cal. App. 4th 612, 628 (1992).  This instruction is an incorrect statement

8   of the law, and should not be given.

9        Mattel's proposed instruction contains a revision of the so-called *Georgia-*

10  *Pacific* factors frequently used in patent cases.  While the so-called *Georgia-Pacific*

11  factors have taken on a life of their own in patent law, there is no justification for

12  their use on a trade secret claim governed by California law.  MGA Parties

13  independently object to the use of *Georgia-Pacific* factors at all on the ground that

14  they are inherently subjective and unreliable and violate Federal Rule of Evidence

15  702.The *Georgia-Pacific* factors as originally stated were merely a list of factors by

16  a district court that had been considered in prior patent cases.  As a group, they

17  have no specific standing under trade secret law.  There will be no evidence

18  addressing many of the factors.  A number of the factors are specific to patent law

19  or patent licensing and cannot be translated to a trade secret case.  For example,

20  factor 7 refers to the "duration" of "the Mattel trade secrets," a concept that makes

21  little sense in trade secret law, and no sense in this case.  (In a patent case, the

22  duration of the patent in suit plays a role that is not comparable to anything

23  involved in this case.).  Factor 14 is not comparable to the other items in the list,

24  and it could suggest that expert testimony on the nature or amount of a royalty has a

25  role that is different from the general role of expert testimony.  Factor 15 is also

26  different in kind from the other factors because it is a summary of what the other

27  factors are supposed to measure in a patent case.

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1    The MGA Parties further object to this instruction on the ground that

2 Mattel's attempt through Wagner to use a hypothetical negotiation applicable to the

3 entire Bratz revenue base is an improper attempt to evade the Court's summary

4 judgment order regarding subsequent generation dolls.  Mattel cannot establish the

5 causal link required to prove indirect profits on the entire Bratz revenue base

6 because there is misappropriation with respect to the vast majority of the products.

7 Mattel does not even try to demonstrate that the sales of subsequent generation

8 female dolls, other Bratz branded products, or license revenue are attributable to

9 any misappropriation.  Mattel instead improperly is trying to use a concept akin to

10 the entire market value rule in patent law to recover a royalty on all Bratz

11 revenues—but even the Federal Circuit would not permit Mattel to get away with

12 including the entire revenue base under these circumstances.  *See Uniloc*, 2011 WL

13 9738 at *22-24 (rejecting application of the entire market value rule to entire

14 Windows revenue base because of infringing product ID key).  Mattel has no proof

15 of convoying in the form of bundling, temporal proximity of sales, or any other

16 factor that would tend to demonstrate that the other revenues are attributable to the

17 alleged *infringement* by the six remaining dolls in the case.  *See Mackie v. Rieser*,

18 296 F. 3d 909 (2002).

19    MGA Parties further object to use of Wagner's *Georgia-Pacific* methodology

20 for a license fee calculation because Wagner disregarded license agreements that

21 were similar to the hypothetical agreement under consideration (namely, the

22 Bryant-MGA agreement) and instead relied upon license agreements that were

23 "radically different from the hypothetical agreement under consideration." *Lucent*

24 *Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009);

25 *ResQnet.com, Inc. v. Lansa, Inc.*, 594 F. 3d 860, 870-72 (Fed. Cir. 2010); *see*

26 *Uniloc USA, Inc. v. Microsoft Corp.*, --- F.3d ---, 2011 WL 9738 (Fed. Cir. Jan. 4,

27 2011).  Wagner's application of the methodology was therefore inherently

28 unreliable and violates Rule 702.

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1    The MGA Parties further object to this instruction because it fails to ensure

2  that the jury distinguishes among the defendants and makes appropriate findings

3  with respect to each defendant.  The MGA Parties further object to this instruction

4  because it does not properly distinguish between each alleged misappropriation.

5    Mattel's instruction is also improper because of its repeated reference to

6  "Mattel trade secrets."  A royalty instruction is not an occasion for a statement by

7  the Court that trade secrets are in issue.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CACI 2102

## PRESUMED MEASURE OF DAMAGES FOR CONVERSION

If you decide that Mattel has proved its claim against the defendants MGA, Isaac Larian, and MGA Hong Kong for conversion, you also must decide how much money will reasonably compensate Mattel for the harm.  This compensation is called "damages."

Mattel must prove the amount of its damages.  However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm.  You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)    The fair market value of the tangible Bratz works created by Carter Bryant while he was employed by Mattel; and

(2)    Prejudgment interest at the maximum rate, calculated from the date Mattel's property was converted;

(3)    Reasonable compensation for the time and money spent by Mattel in attempting to recover this property;

(4)    Punitive damages.

Fair market value is measured as of the time the tangible item was converted. Fair market value is the highest price that a willing buyer would have paid to a willing seller assuming that there is no pressure on either one to buy or sell, and that the buyer and seller know all the uses and purposes for which the tangible items are reasonably capable of being used.

**Authority:**  CACI 2102 (modified); *Betzer v. Olney*, 14 Cal. App. 2d 53, 61 (1937).

**OBJECTION:**

The MGA Parties object to this instruction on the grounds that it improperly and unnecessarily modifies CACI 2102, which is an accurate statement of the applicable law.

First, the proposed instruction includes categories of damages that are not included in the CACI instruction, and which are improper to include here. To the extent punitive damages are available, they should be explained separately in a separate instruction. Additionally, it is improper for prejudgment interest to be included as a category of damages in this instruction.

Second, the language of the "reasonable compensation" clause might suggest to the jury that it may be proper to include legal fees in the calculation of damages for conversion. This clause should either be eliminate entirely or modified to make clear that Mattel is not seeking legal fees in this action.

Third, the MGA Parties object to this instruction because it does not explain that Mattel's damages cannot be based on misappropriation of Mattel information other than the "physical Bratz-related works." (Amended MSJ Order at 87.)

The MGA Parties also object because this instruction fails to distinguish among the defendants and advise the jury that it must make separate findings with respect to each defendant.

The instruction is also objectionable because Mattel lacks any evidentiary basis to seek punitive damages. *See Barry v. Raskov*, 232 Cal. App. 3d 447, 457 (1991) (trial court properly refused to instruct jury on punitive damages, as there was not clear and convincing evidence of fraud); *see also Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence").

The MGA Parties object to the portion of the instruction related to prejudgment interest as misleading because it does not explain that prejudgment

1    interest cannot be calculated on a judgment for punitive damages.  *Lakin v. Watkin*

2    *Associated Industries*, 6 Cal. 4th 644, 664 (1993).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**17.22**

**COPYRIGHT—DAMAGES**

**(17 U.S.C. § 504)**

If you find for the plaintiff, Mattel, on its copyright infringement claim against the defendants, you must determine Mattel's damages.  Mattel is entitled to recover the actual damages suffered as a result of the infringement.  As the measure of its actual damages, Mattel, as the plaintiff, has the right to seek to recover either the fair market value of a license for the rights infringed or its lost profits.  In addition to actual damages,  Mattel is also entitled to recover any profits that each defendant made that are attributable to their infringement.  Mattel must prove damages by a preponderance of the evidence.

**Authority:**  9th Cir. Civ. Jury Instr. 17.22 (2007); *Lucky Break Wishbone Corp. v. Sears Roebuck and Co.*, 373 Fed. Appx. 752, 757 (9th Cir. 2010) (finding that "[t]he jury is not restricted . . . to awarding lost profits" where evidence of lost profits and a fair market value of a lost license fee were presented to the jury, defendant claimed that lost profits were appropriate actual damage measurement, and defendant claimed jury award was too high to account for appropriate deduction of costs to arrive at lost profits); *Polar Bear Prods. Inc. v. Timex Corp.*, 384 F.3d 700, 708-10 (9th Cir. 2004) (evaluating a claim for both a fair market value lost license fee and lost profits as additive actual damages); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159 (2001) ("[T]he statute [17 U.S.C. § 504(b) provides for the recovery of both the infringer's profits and the copyright owner's 'actual damages.'"); *Oracle Corp. v. SAP AG*, Case No. 07-cv-01658-PJH  (N.D. Cal. 2008), Dkt. No. 1005 (final jury instructions).

1    **OBJECTION:**

2    The MGA Parties object to the language "either the fair market value of a

3    license for the rights infringed or," on the ground that such language in an

4    instruction would be inconsistent with Section 504 of the Copyright Act on the

5    facts in this case.  Section 504 of the Act authorizes only an award of "actual

6    damages suffered by [the copyright owner] as a result of the infringement, . . . ."

7    Congress has expressly required that the harm be "actual" and that it be the "result"

8    of the infringement.  Lost license value can only meet these requirements where

9    there is evidence of an established license royalty.  Otherwise there is no evidence

10   that an actual loss of any kind has occurred.

11   Section 504 of the Copyright Act differs markedly from the Patent Act and

12   Uniform Trade Secrets Act in regards to the royalty theory of damages.  The Patent

13   Act expressly provides a statutory minimum "reasonable royalty for the use made

14   of the invention by the infringer." 35 U.S.C. §284.  UTSA also provides a

15   "reasonable royalty" as an alternative remedy when the plaintiff fails in its proof of

16   either actual damages or unjust enrichment.  The *Georgia-Pacific* factors are used

17   under both the Patent Act and UTSA to conduct a "hypothetical negotiation" to

18   arrive at the reasonably royalty.  *See Ajaxo, Inc. v. E\*Trade Financial Corp.*, 187

19   Cal. App. 4th 1295 (2010) (using "suppositious meeting" rubric and citing to other

20   cases applying some set of *Georgia-Pacific* factors).

21   No decision we can find has approved the use of a "hypothetical negotiation"

22   utilizing *Georgia-Pacific* factors under the Copyright Act.  *C.f. In re MobiTV*, 712

23   F.Supp.2d 206, 243 (S.D.N.Y. 2010) ("ASCAP has been unable to identify any

24   copyright case that has applied the *Georgia-Pacific* factors . . . ").  In fact, the

25   *hypothetical* royalty negotiation is a rubric by definition inconsistent with the

26   express dual statutory requirements of *actual* harm and causation.

27   Rather, in all of the cases where a royalty was approved as a measure of

28   copyright actual damages there was some evidence of an established royalty (or at

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1    least a royalty negotiation between the parties before the dispute arose).  In *Wall*

2    *Data, Inc.  v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769 (9th Cir. 2006),

3    there was an established license schedule for Wall Data's computer software.  In

4    *Polar Bear Prods, Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004), a lost

5    license fee was permitted based on a rate quoted from the copyright owner to

6    infringer before the dispute arose.  In *On Davis v. The Gap, Inc.*, 246 F.3d 152,

7    161-162 (2nd Cir. 2001), there was evidence of an established royalty because the

8    copyright owner had received royalties for the infringed work in the past.

9         No such evidence exists here.  Any license would be based on purely

10   hypothetical facts.  In fact, Mattel's expert Mr. Wagner admitted that he could not

11   relate his copyright hypothetical royalty to any actual harm, demurring that it was a

12   "legal determination" and not a question of economics whether the proffered

13   remedy was available in the absence of any evidence at all that Mattel would have

14   licensed Bratz.  Wagner Depo. at 601:9-21.  Wagner admitted that there was no

15   evidence that Mattel would have used or licensed the product and that if such

16   evidence were required to show actual harm, he could not do so in this case.  *Id.* at

17   602:16-25.  Even worse, despite this gross absence of evidence of actual harm,

18   Wagner's hypothetical negotiation used the highly suspect "book of wisdom"

19   methodology taking into account events that occurred long after any willing buyer-

20   willing seller negotiation would have occurred and could not possibly have been

21   known to the parties.  *Id.* at 612:3-24.  Wagner applied the most extreme form of

22   hypothetical negotiation methodology without any evidence of causation of harm at

23   all, plainly violating the express statutory requirements of the Copyright Act.

24        A reasonable royalty based purely on "hypothetical negotiation" does not,

25   without more, demonstrate the causation of actual economic harm or actual profits

26   attributable to the infringement that the Copyright Act demands.  There is no

27   evidence of an established royalty schedule for the copyrighted material at issue.

28   Mattel lost no opportunity to earn a royalty either from MGA or anyone else.  In

1  fact, the evidence is clear that Mattel would neither have exploited nor licensed

2  Bratz.  Accordingly, the stricken language is inappropriately charged in this case.

3          Second, MGA Parties independently object to the use of *Georgia-Pacific*

4  factors at all on the ground that they are inherently subjective and unreliable and

5  violate rule 702.

6          Third, MGA Parties object to use of Wagner's *Georgia-Pacific* methodology

7  for a license fee calculation because Wagner disregarded license agreements that

8  were similar to the hypothetical agreement under consideration (namely, the

9  Bryant-MGA agreement) and instead relied upon license agreements that were

10  "radically different from the hypothetical agreement under consideration." *Lucent*

11  *Technologies, Inc. v. Gateway, Inc.*., 580 F.3d 1301, 1327 (Fed. Cir. 2009);

12  *ResQnet.com, Inc. v. Lansa, Inc.*, 594 F. 3d 860, 870-72 (Fed. Cir. 2010); *see*

13  *Uniloc USA, Inc. v. Microsoft Corp.*, --- F.3d ---, 2011 WL 9738 (Fed. Cir. Jan. 4,

14  2011).  Wagner's application of the methodology was therefore inherently

15  unreliable and violates Rule 702.

16          Finally, the MGA Parties further object to this instruction because it fails to

17  ensure that the jury distinguishes among the defendants and makes appropriate

18  findings with respect to each defendant.  Further, the MGA Parties object to this

19  instruction (and Mattel's other copyright damages instructions) because it does not

20  properly explain that the jury must base any damages award on its specific findings

21  of infringement, by considering separately each alleged infringing act and/or

22  product.  Thus, the instruction would mislead the jury by suggesting that if any

23  infringement at all is found, of any of the copyrights at issue, Mattel should recover

24  damages based on all of the alleged infringement.

25          The MGA Parties refer the Court to their proposed instruction on page 226 of

26  their Amended Proposed Jury Instructions.

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1

**17.23**

2

**COPYRIGHT—DAMAGES—LOST LICENSE FEE**

3

**(17 U.S.C. § 504(b))**

4

5          Mattel is entitled to recover the actual damages suffered as a result of the

6    infringement.  One measure of actual damages is the amount of money adequate to

7    compensate Mattel for the reduction of the fair market value of the copyrighted

8    works caused by the infringement.  The reduction of the fair market value of the

9    copyrighted works is the amount a willing buyer would have been reasonably

10   required to pay a willing seller at the time of the infringement for the actual use

11   made by the defendants of  Mattel's works.  That amount also could be represented

12   by the lost license fees Mattel would have received for the defendants'

13   unauthorized use of Mattel's works.

14

15         **Authority:**  9th Cir. Civ. Jury Instr. 17.23, comments (2007) (modified)

16   ("This instruction is based upon a jury instruction approved by the Ninth Circuit as

17   'properly stat[ing] the law of damages in a copyright infringement suit' and 'in line

18   with our circuit's caselaw.' *Wall Data v. Los Angeles County Sheriff's Dept.*, 447

19   F.3d 769, 787 (9th Cir. 2006). The circuit has noted that '[a]ctual damages are

20   usually determined by the loss in the fair market value of the copyright, measured

21   by the profits lost due to the infringement or by the value of the use of the

22   copyrighted work to the infringer.' *Polar Bear Prods., Inc. v. Timex Corp.,* 384

23   F.3d 700, 708-09 (9th Cir. 2004) ('[I]t is not improper for a jury to consider either a

24   hypothetical lost license fee or the value of the infringing use to the infringer to

25   determine actual damages, provided the amount is not based on 'undue

26   speculation.'') (emphasis added) (quoting *McRoberts Software, Inc. v. Media 100,*

27   *Inc.,* 329 F.3d 557, 566 (7th Cir. 2003)).

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**OBJECTION:**

The MGA Parties object to this instruction on the grounds there is no basis for the calculation of a fair market value for a license for all the reasons stated above in its Objections to Proposed Instruction 17.22.  All such objections are expressly incorporated herein.  In addition, the MGA Parties object to the revision of the title of this Instruction away from the title used in the Model Instructions for the same reasons set forth above – there is no basis for a fair market value license in this case.

The MGA Parties further object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant. The MGA Parties further object to this instruction (and Mattel's other copyright damages instructions) because it does not properly explain that the jury must base any damages award on its specific findings of infringement, by considering separately each alleged infringing act and/or product. Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should recover damages based on all of the alleged infringement. Finally, the MGA Parties object to this instruction because it fails to advise the jurors that they may not include in an award of profits any amount that they took into account in determining actual damages.

The MGA Parties refer the Court to their proposed instructions on pages 225-226 of their Amended Proposed Jury Instructions.

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 38
# FAIR MARKET VALUE LICENSE CALCULATION

To calculate the fair market value of a license for the copyrighted works that were infringed as a measure of Mattel's actual damages, you should determine a "reasonable royalty" for those copyrighted works.  A reasonable royalty is the amount a willing buyer would have reasonably been required to pay a willing seller for the right to use the copyrighted works in a hypothetical negotiation taking place at a time when the infringement began.  In considering this hypothetical negotiation, you should focus on what the expectations of the parties would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  You must assume that the parties were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, not simply a royalty either party would have preferred.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1)    The royalties received by Mattel for the licensing of the Mattel copyrights proving or tending to prove an established royalty.

(2)    The rates paid by the licensee for the use of other intellectual property comparable to the Mattel copyrights.

(3)    The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)    The licensor's established policy and marketing program to maintain his or her exclusive use of the copyrights by not licensing others to use the

copyrights or by granting licenses under special conditions designed to preserve that exclusive use.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the Mattel copyrights in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of products not embodying the Mattel copyrights, and the extent of such derivative or convoyed sales.

(7)     The duration of the Mattel copyrights and the term of the license.

(8)     The established profitability of the product made under the Mattel copyrights, its commercial success, and its current popularity.

(9)     The utility and advantages of the Mattel copyrights over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the Mattel copyrights, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the Mattel copyrights.

(11)    The extent to which the infringer has made use of the Mattel copyrights and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the Mattel copyrights or analogous copyrights.

(13)    The portion of the realizable profits that should be credited to the Mattel copyrights as distinguished from other elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as Mattel) and a licensee (such as MGA) would have agreed upon (at the time the infringement began) if both had

Amended & Consolidated Objs of MGA Parties & Gustavo Machado to Mattel's 4th Amended Prop Jury Instructions Case No. CV 04-9049 DOC (RNBx)

1  been reasonably and voluntarily trying to reach an agreement, that is, the amount
2  which a prudent licensee—who desires, as a business proposition, to obtain a
3  license to manufacture and sell a particular article embodying the Mattel
4  copyrights—would have been willing to pay as a royalty and yet be able to make a
5  reasonable profit and which amount would have been acceptable by a prudent
6  copyright owner who was willing to grant a license.

7        No one factor is dispositive and you can and should consider the evidence
8  that has been presented to you in this case on each of these factors. You may also
9  consider any other factors which in your mind would have increased or decreased
10  the royalty the infringer would have been willing to pay and the copyright owner
11  would have been willing to accept, acting as normally prudent business people.
12  The final factor establishes the framework which you should use in determining a
13  reasonable royalty, that is, the payment that would have resulted from a negotiation
14  between the copyright holder and the infringer taking place at the time of the
15  infringement.

16        Evidence of things that happened after the infringement first began can be
17  considered in evaluating the reasonable royalty to the extent that the evidence aids
18  in assessing what royalty would have resulted from a hypothetical negotiation.

19

20        **Authority:**  Federal Circuit Model Patent Jury Instructions, Instruction Nos.
21  6.6 and 6.7 (citing *Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1340 (Fed.
22  Cir. 2009) (vacating and rewarding jury award as excessive); *Golight, Inc. v. Wal-*
23  *Mart Stores, Inc*., 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.,*
24  86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.,* 79 F.3d
25  1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1554
26  (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. U.S. Plywood Corp.,* 318 F.
27  Supp. 1116, 1120 (S.D.N.Y. 1970); Fifth Circuit Pattern Jury Instructions,
28  Instructions 9.8 (2006)); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700,

1  710-11, 714 n. 10 (9th Cir. 2004); *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir.

2  2002) ("to determine the work's 'market value' at the time of the infringement, we

3  have endorsed a hypothetical approach: what a willing buyer would have been

4  reasonably required to pay to a willing seller for [the owner's] work." ) (internal

5  quotations omitted); *see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,

6  772 F.2d 505, 512 (9th Cir. 1985) ("In this circuit, we have stated the test of market

7  value as 'what a willing buyer would have been reasonably required to pay to a

8  willing seller for plaintiffs' work.' "(quoting *Sid & Marty Krofft Television*

9  *Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1174 (9th Cir. 1977)).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**OBJECTION:**

The MGA Parties object to this instruction on fair market value license and its open reliance on the law of patents for all the reasons stated above in its Objections to Proposed Instruction 17.22.  All such objections are expressly incorporated herein.  MGA notes that the sources relied on for this instruction make clear the error of this instruction.  This is not a patent case and the Copyright Act does not permit the hypothetical license that Mattel seeks to impose.

The additional copyright cases cited by Mattel in support of this instruction do not add anything to its analysis.  Both *Mackie v. Rieser*, 296 F. 3d 909 (9th Cir. 2002) and *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc*., 772 F.2d 505, 512 (9th Cir. 1985) principally concerned the calculation of indirect profits, not a hypothetical royalty negotiation.  The Ninth Circuit in *Mackie* rejected any award of a royalty, so it does not support Mattel here.  In *Frank*, the court was principally concerned with application of a proper percentage against a revenue base for purposes of calculating indirect profits—not a hypothetical royalty for actual damages.  *Frank* quoted *Sid & Marty Krofft* for a willing buyer-willing seller rubric, but *Krofft* was decided under the 1909 Act.  The 1909 Act had a provision expressly permitting courts to award a "just" remedy as an "in lieu" remedy in cases where damages and profits failed.  *See F.W. Woolworth co. v. Contemporary Arts, Inc.*, 344 U.s. 228 (1952).  The 1976 Act replaced that provision with the statutory damages scheme of 17 U.S.C. §504(c).  This change in the legislation makes *Krofft* inapposite for this proposition, and any cases that have subsequently relied upon it without taking note of this express change by Congress in the statutory scheme cannot apply.  Neither *Krofft* nor any of the cases cited by Mattel ever held that a hypothetical negotiation under the *Georgia-Pacific* factors could meet the actual harm requirement of Section 504 of the 1976 Copyright Act.

The MGA Parties further object to this instruction on the ground that most, if not all, of the fifteen factors cited have no application to the facts of this case.

1    The MGA Parties further object to this instruction on the ground that

2  Mattel's attempt through Wagner to use a hypothetical negotiation applicable to the

3  entire Bratz revenue base is an improper attempt to evade the Court's summary

4  judgment order regarding subsequent generation dolls, and an improper attempt to

5  evade the causation requirement for a profits award under the Act.  Mattel cannot

6  establish the causal link required to prove indirect profits on the entire Bratz

7  revenue base because there is no infringement in the vast majority of the products

8  and revenues.  Mattel does not even try to demonstrate that the sales of subsequent

9  generation female dolls, other Bratz branded products, or license revenue are

10 attributable to any infringement by those products.  Mattel instead improperly is

11 trying to use a concept akin to the patent entire market value rule to recover a

12 royalty on all Bratz revenues—but even the Federal Circuit would not permit

13 Mattel to get away with including the entire revenue base under these

14 circumstances.  *See Uniloc*, 2011 WL 9738 at *22-24 (rejecting application of the

15 entire market value rule to entire Windows revenue base because of infringing

16 product ID key).  Mattel has no proof of convoying in the form of bundling,

17 temporal proximity of sales, or any other factor that would tend to demonstrate that

18 the other revenues are attributable to the alleged *infringement* by the six remaining

19 dolls in the case.  *See Mackie v. Rieser*, 296 F. 3d 909 (2002).

20    The MGA Parties further object to this instruction because it fails to ensure

21 that the jury distinguishes among the defendants and makes appropriate findings

22 with respect to each defendant. The MGA Parties further object to this instruction

23 (and Mattel's other copyright damages instructions) because it does not properly

24 explain that the jury must base any damages award on its specific findings of

25 infringement, by considering separately each alleged infringing act and/or product.

26 Thus, the instruction would mislead the jury by suggesting that if any infringement

27 at all is found, of any of the copyrights at issue, Mattel should recover damages

28 based on all of the alleged infringement. Finally, the MGA Parties object to this

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1  instruction because it fails to advise the jurors that they may not include in an

2  award of profits any amount that they took into account in determining actual

3  damages.

4      The MGA Parties refer the Court to their proposed instructions on pages 225-

5  226 of their Amended Proposed Jury Instructions.

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 39

## COPYRIGHT—DAMAGES—LOST PROFITS

## (17 U.S.C. § 504(b))

To calculate lost profits as a measure of Mattel's actual damages, you must determine what profits Mattel proves it would have made without the infringement. Lost profits are the revenue Mattel would have made without the infringement, less any additional expenses it would have incurred in making the sales.

Mattel's lost profits do not serve to limit the amount of Mattel's actual damages, as measured by the fair market value of a license for the copyrighted works that were infringed.

**Authority:** Model Instruction 12.8.2 Damages — Actual Damages, Federal Civil Jury Instructions of the Seventh Circuit (citing *Taylor v. Meirick*, 712 F.2d 1112, 1120-1121 (7th Cir. 1983)); *Lucky Break Wishbone Corp. v. Sears Roebuck and Co.*, 373 Fed. Appx. 752, 757 (9th Cir. 2010) (finding that "[t]he jury is not restricted . . . to awarding lost profits" where evidence of lost profits and a fair market value of a lost license fee were presented to the jury, defendant claimed that lost profits were appropriate actual damage measurement, and defendant claimed jury award was too high to account for appropriate deduction of costs to arrive at lost profits); *Polar Bear Prods. Inc. v. Timex Corp.,* 384 F.3d 700, 708-710 (9th Cir. 2004) (evaluating a claim for both a fair market value lost license fee and lost profits as additive actual damages); *Oracle Corp. v. SAP AG*, Case No.07-cv-01658-PJH  (N.D. Cal. 2008), Dkt.  No. 1005 (final jury instructions).

**OBJECTION:**

The MGA Parties object to this instruction to the extent it suggests that there is a basis for the calculation of a fair market value for a license for all the reasons stated above in its Objections to Proposed Instruction 17.22.  All such objections are expressly incorporated herein.

MGA Parties object that this instruction cannot be given in this case on the basis of Wagner's regression analysis.  Wagner's regression analysis is based on faulty data and fails to take into account numerous factors admitted by Mattel's business records to have affected its performance during the time periods at issue. In constructing his but-for hypothetical lost profits world, Wagner also ignored key contemporaneous evidence generated by Mattel such as the New Brand Cannibalization Study, TX 26552, TX 26554.  The regression analysis plainly violates Rule 702 and cannot be the basis for a lost profits claim by Mattel.  *See Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 735, 760-61 (8th Cir. 2003)(finding that the district court did not abuse its discretion by rejecting the counterfactual economic model and noting that, while "[a] certain amount of speculation is necessary, … too much is fatal to admission").The MGA Parties further object to this instruction on the ground that Mattel's attempt through Wagner to use a hypothetical negotiation applicable to the entire Bratz revenue base is an improper attempt to evade the Court's summary judgment order regarding subsequent generation dolls, and an improper attempt to evade the causation requirement for a profits award under the Act.  Mattel cannot establish the causal link required to prove indirect profits on the entire Bratz revenue base because there is no infringement in the vast majority of the products and revenues.  Mattel does not even try to demonstrate that the sales of subsequent generation female dolls, other Bratz branded products, or license revenue are attributable to any infringement by those products.  Mattel instead improperly is trying to use a concept akin to the patent entire market value rule to recover a royalty on all Bratz

revenues—but even the Federal Circuit would not permit Mattel to get away with including the entire revenue base under these circumstances.  *See Uniloc*, 2011 WL 9738 at *22-24 (rejecting application of the entire market value rule to entire Windows revenue base because of infringing product ID key).  Mattel has no proof of convoying in the form of bundling, temporal proximity of sales, or any other factor that would tend to demonstrate that the other revenues are attributable to the alleged *infringement* by the six remaining dolls in the case.  *See Mackie v. Rieser*, 296 F. 3d 909 (2002).

The MGA Parties further object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant.  The MGA Parties further object to this instruction (and Mattel's other copyright damages instructions) because it does not properly explain that the jury must base any damages award on its specific findings of infringement, by considering separately each alleged infringing act and/or product. Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should recover damages based on all of the alleged infringement.  Finally, the MGA Parties object to this instruction because it fails to advise the jurors that they may not include in an award of profits any amount that they took into account in determining actual damages.

1
2
3

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 40
## DETERMINING ACTUAL DAMAGES

4   There is no precise formula for determining actual damages.  Determining

5   the fair market value of the rights infringed or lost profits may involve some

6   uncertainty, and Mattel is not required to establish its actual damages with

7   precision.

8   In general, you should construe actual damages to favor the copyright owner,

9   keeping in mind the objective of copyright law is to enable copyright owners to

10  capture the full value of their rights.  Within reason, any ambiguities should be

11  resolved in favor of the copyright owner.

12

13  **Authority:**  ABA Model Jury Instruction 1.7.2 (Copyright); *On Davis v. The*

14  *Gap*, 246 F.3d 152, 166-67 (2d Cir. 2001) ("Within reason, any ambiguities should

15  be resolved in favor of the copyright owner.")(quoting  William F. Patry, Copyright

16  Law and Practice 1167 (1994) ); *Polar Bear Prods., Inc. v. Timex Corp.,* 384 F.3d

17  700, 709 (9th Cir. 2004); 4 Nimmer § 14.02[A], at 14-12 ("[U]ncertainty will not

18  preclude a recovery of actual damages if the uncertainty is as to amount, but not as

19  to the fact that actual damages are attributable to the infringement.")

20
21
22
23
24
25
26
27
28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**OBJECTION:**

The MGA Parties object to this instruction to the extent it suggests that there is a basis for the calculation of a fair market value for a license for all the reasons stated above in its Objections to Proposed Instruction 17.22.  All such objections are expressly incorporated herein.  The MGA Parties further object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant. The MGA Parties further object to this instruction (and Mattel's other copyright damages instructions) because it does not properly explain that the jury must base any damages award on its specific findings of infringement, by considering separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should recover damages based on all of the alleged infringement.  Finally, the MGA Parties object to this instruction because it fails to advise the jurors that they may not include in an award of profits any amount that they took into account in determining actual damages.

The MGA Parties also object to this instruction on the grounds that it is an unnecessary extra instruction that is not included in the Ninth Circuit Model instructions that Mattel appears to be adding simply in an effort to improperly shift the burden away from Mattel to prove its damages.

The MGA Parties refer the Court to their proposed instructions on pages 225-226 of their Amended Proposed Jury Instructions.

1

**17.24**

2

**COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS**

3

**(17 U.S.C. § 504(b))**

4

5      In addition to actual damages, Mattel is entitled to any profits of the

6  defendants attributable to the infringement.  You may not include in an award of

7  profits any amount that you took into account in determining actual damages.

8      You may make an award of the defendants' profits only if you find that the

9  plaintiff showed a causal relationship between the infringement and the defendants'

10  gross revenue.

11      The defendants' profit is determined by deducting expenses from the

12  defendants' gross revenue.

13      The defendants' gross revenue is all of the defendants' receipts from sale of a

14  product containing or using the copyrighted works or associated with the

15  infringement.  Mattel has the burden of proving the defendants' gross revenue by a

16  preponderance of the evidence.

17      Expenses are all operating costs and production costs incurred in producing

18  the defendants' gross revenue.  The defendants have the burden of proving the

19  defendants' expenses by a preponderance of the evidence.

20      Unless you find that a portion of the profit from the sale of a product

21  containing or using the copyrighted works is attributable to factors other than use of

22  the copyrighted works, all of the profit is to be attributed to the infringement.  The

23  defendants have the burden of proving the portion of the profit, if any, attributable

24  to factors other than infringing the copyrighted works.

25

26      **Authority:**  9th Cir. Civ. Jury Instr. 17.24 (2007) (modified).

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1  **OBJECTION**:

2      The MGA Parties object to this instruction because it fails to ensure that the

3  jury distinguishes among the defendants and makes appropriate findings with

4  respect to each defendant. The MGA Parties further object to this instruction (and

5  Mattel's other copyright damages instructions) because it does not properly explain

6  that the jury must base any damages award on its specific findings of infringement,

7  by considering separately each alleged infringing act and/or product. Thus, the

8  instruction would mislead the jury by suggesting that if any infringement at all is

9  found, of any of the copyrights at issue, Mattel should recover damages based on all

10  of the alleged infringement.  Finally, the MGA Parties object to this instruction

11  because it fails to advise the jurors that they may not include in an award of profits

12  any amount that they took into account in determining actual damages.

13      The MGA Parties further object to this instruction on the ground that

14  Mattel's attempt through Wagner to use a hypothetical negotiation applicable to the

15  entire Bratz revenue base is an improper attempt to evade the Court's summary

16  judgment order regarding subsequent generation dolls, and an improper attempt to

17  evade the causation requirement for a profits award under the Act.  Mattel cannot

18  establish the causal link required to prove indirect profits on the entire Bratz

19  revenue base because there is no infringement in the vast majority of the products

20  and revenues.  Mattel does not even try to demonstrate that the sales of subsequent

21  generation female dolls, other Bratz branded products, or license revenue are

22  attributable to any infringement by those products.  Mattel instead improperly is

23  trying to use a concept akin to the patent entire market value rule to recover a

24  royalty on all Bratz revenues—but even the Federal Circuit would not permit

25  Mattel to get away with including the entire revenue base under these

26  circumstances.  *See Uniloc*, 2011 WL 9738 at *22-24 (rejecting application of the

27  entire market value rule to entire Windows revenue base because of infringing

28  product ID key).  Mattel has no proof of convoying in the form of bundling,

1   temporal proximity of sales, or any other factor that would tend to demonstrate that

2   the other revenues are attributable to the alleged *infringement* by the six remaining

3   dolls in the case. *See Mackie v. Rieser*, 296 F. 3d 909 (2002).

4       The MGA Parties object to the modification of the Ninth Circuit's Model

5   Instruction as Mattel's modification fails to adequately explain that a portion of

6   Defendants' profits may be attributable to "factors other than the use of the

7   copyrighted works" and that that portion, if any, should not be awarded to Mattel.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 41
# COPYRIGHT—DAMAGES—INDIRECT PROFITS

In addition to the defendants' profits from the sale of infringing goods, which are called direct profits, Mattel may also be entitled to recover defendants' indirect profits. Indirect profits are the defendant's profits with a less direct connection or link to the infringement. To recover indirect profits, Mattel must establish a causal relationship between the infringement and the profits generated indirectly from such infringement. However, Mattel need not prove this causal relationship with certainty. Instead, Mattel's burden is only to offer some evidence that the infringement at least partially caused the infringer to generate profits indirectly. Mattel may be entitled to recover defendants' profits from sales of non-infringing goods pursuant to this instruction.

**Authority:** 9th Cir. Civ. Jury Instr. 17.24, comments (2007); *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 711, 714 n.10 (9th Cir. 2004) (approving a jury instruction stating: "Indirect profits have a less direct connection or link to the infringement. Plaintiff seeks indirect profits in this case. To recover indirect profits, Plaintiff must establish a causal relationship between the infringement and the profits generated indirectly from such infringement.")

1 **OBJECTION:**

2     The MGA Parties object to this instruction because it fails to ensure that the

3 jury distinguishes among the defendants and makes appropriate findings with

4 respect to each defendant.  The MGA Parties further object to this instruction (and

5 Mattel's other copyright damages instructions) because it does not properly explain

6 that the jury must base any damages award on its specific findings of infringement,

7 by considering separately each alleged infringing act and/or product.  Thus, the

8 instruction would mislead the jury by suggesting that if any infringement at all is

9 found, of any of the copyrights at issue, Mattel should recover damages based on all

10 of the alleged infringement.  MGA further objects to this instruction on the ground

11 that it conflicts with the causation requirement of Section 504 and understates

12 Mattel's burden pursuant thereto.

13     The MGA Parties further object to this instruction on the ground that

14 Mattel's attempt through Wagner to use a hypothetical negotiation applicable to the

15 entire Bratz revenue base is an improper attempt to evade the Court's summary

16 judgment order regarding subsequent generation dolls, and an improper attempt to

17 evade the causation requirement for a profits award under the Act.  Mattel cannot

18 establish the causal link required to prove indirect profits on the entire Bratz

19 revenue base because there is no infringement in the vast majority of the products

20 and revenues.  Mattel does not even try to demonstrate that the sales of subsequent

21 generation female dolls, other Bratz branded products, or license revenue are

22 attributable to any infringement by those products.  Mattel instead improperly is

23 trying to use a concept akin to the patent entire market value rule to recover a

24 royalty on all Bratz revenues—but even the Federal Circuit would not permit

25 Mattel to get away with including the entire revenue base under these

26 circumstances.  *See Uniloc*, 2011 WL 9738 at *22-24 (rejecting application of the

27 entire market value rule to entire Windows revenue base because of infringing

28 product ID key).  Mattel has no proof of convoying in the form of bundling,

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1  temporal proximity of sales, or any other factor that would tend to demonstrate that

2  the other revenues are attributable to the alleged *infringement* by the six remaining

3  dolls in the case.  *See Mackie v. Rieser*, 296 F. 3d 909 (2002).

4          Finally, the MGA Parties object to this instruction because it fails to advise

5  the jurors that they may not include in an award of profits any amount that they

6  took into account in determining actual damages.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 42
# COPYRIGHT—DAMAGES—APPORTIONMENT

3

4          In determining what portion of the defendants' profits are attributable to
5   copyright infringement, the benefit of the doubt should be given to Mattel, and not
6   defendants.   If you cannot readily separate the infringing and non-infringing
7   elements of a work that you find infringes Mattel's copyrights, then you should not
8   apportion defendants' profits.  Instead, in such a circumstance, all profits
9   defendants' obtained from the infringing works should be awarded to Mattel.

10

11          **Authority:**  9th Cir. Civ. Jury Instr. 17.24, comments (2007); *Frank Music*
12   *Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1549 (9th Cir. 1989) ("In
13   performing the apportionment, the benefit of the doubt must always be given to the
14   plaintiff, not the defendant . . . ."); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309
15   U.S. 390, 401-02 (1940) ("when the copyrighted portions are so intermingled with
16   the rest of the piratical work 'that they cannot well be distinguished from it,' the
17   entire profits realized by the defendants will be given to the plaintiff.") (citation
18   omitted); William F. Patry, PATRY ON COPYRIGHT, § 22:147 (2008) ("where the
19   infringing work consists mostly of infringed material that gives the work its value
20   and is inextricably intertwined with the original, courts have refused to
21   apportion.").

22
23
24
25
26
27
28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**OBJECTION**:

The MGA Parties object that this instruction plainly violates the Ninth Circuit's opinion and the mandate already issued and the law of this case requiring that the value created by MGA in Bratz be taken into consideration.

The MGA Parties further object to the instruction insofar as it suggests that MGA must prove the apportionment of its profits with precision.  All that the law requires is a reasonable and just apportionment." *Abend v. MCA, Inc.,* 863 F.2d 1465, 1480 (9th Cir. 1988) ("[C]ourts cannot be expected to determine with 'mathematical exactness' an apportionment of profits."); *see also Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 51 (2d Cir. 1939) (explaining that courts will make "the best estimate [they] can, even though it is really no more than a guess."); *Caffey v. Cook*, 409 F. Supp. 2d 484, 506 (S.D.N.Y. 2006) ("Apportionment is 'not an area susceptible to precise measurement' … particularly where the analysis does not rest on quantifiable factors such as minutes, pages or lines incorporating the infringed work, but rather on the incorporation of the infringed work into a new presentation."); *accord Sygma Photo News, Inc. v. High Soc'Ym agazine, Inc.*, 778 F.2d 89, 95 (2d Cir. 1985) (finding that the trial court "correctly held that want of precision is not a ground for denying apportionment altogether."); *Multitherm Corp. v. Fuhr*, 1991 U.S. Dist. LEXIS 10475, at *47 (D. Pa. July 24, 1991) (recognizing "that this measure of damages is imprecise" but that all that was required was a "reasonable and just apportionment."); *cf. Walker v. Forbes, Inc.,* 28 F.3d 409, 414 (4th Cir. 1994) (upholding trial court's jury instruction stating that "[i]t is not required that [the defendant] prove these elements to a mathematical exactness. They must only prove them to a reasonable approximation…."). For this reason, the Fourth Circuit in Walker upheld the trial court's rejection of the very instruction Mattel proposes here.  *Id.* (upholding rejection of plaintiff's proposed instruction that "Any error or doubt in your mind about the apportionment must be resolved in favor of the Plaintiff").

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1    The MGA Parties further object to the proposed jury instruction insofar as it

2    suggests that when infringing and non-infringing elements "cannot readily be

3    separated," all of the infringer's indirect profits should be awarded to the copyright

4    owner.  That is not the law.  *See Cream Records, Inc., v. Jos. Schlitz Brewing Co.*,

5    754 F.2d 826, 828 (9th Cir. 1985) ("Although the statute imposes upon the infringer

6    the burden of showing "the elements of profit attributable to factors other than the

7    copyrighted work," 17 U.S.C. § 504(b), nonetheless where it is clear ... that not all

8    of the profits are attributable to the infringing material, the copyright owner is not

9    entitled to recover all of those profits merely because he infringer fails to establish

10   with certainty the portion attributable to the non-infringing elements.").

11   Moreover, the MGA Parties object to this instruction because it fails to

12   ensure that the jury distinguishes among the defendants and makes appropriate

13   findings with respect to each defendant.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1

**17.27**

2

**COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT**

3

4      Mattel also claims that the defendants engaged in willful infringement of

5  Mattel's copyrights.  An infringement is considered willful when the plaintiff has

6  proved both of the following elements by a preponderance of the evidence:

7      1.      The defendant engaged in acts that infringed the copyright; and

8      2.      The defendant knew that those acts infringed the copyright.

9      A defendant cannot deduct overhead expenses, operating expenses or taxes

10  from his/its gross revenue when the copyright infringement is willful.

11

12      **Authority:**  9th Cir. Civ. Jury Instr. 17.27 (2007); *Three Boys Music Corp. v.*

13  *Bolton*, 212 F.3d 477, 487 (9th Cir. 2000) (noting that willful infringers are not

14  permitted to deduct income taxes); *Kamar Int'l, Inc. v. Russ Berrie and Co., Inc*.,

15  752 F.2d 1326, 1331-32 (9th Cir. 1982) ("[a] portion of an infringer's overhead

16  properly may be deducted from gross revenues to arrive at profits, at least where the

17  infringement was not willful, conscious, or deliberate.") (emphasis added); *Sheldon*

18  *v. Metro-Goldwyn Pictures Corp*., 106 F.2d 45, 53 (2d Cir. 1939) (a willful

19  infringer may not deduct its income taxes); *Saxon v. Blann*, 968 F.2d 676, 681 (8th

20  Cir. 1992) (a willful infringer may not deduct overhead expenses); *Jarvis v. A & M*

21  *Records*, 827 F. Supp. 282, 294 (1993) ("[I]f defendant's conduct is willful,

22  overhead may not be deducted"); *Liu v. Price Waterhouse LLP*, 2000 WL 1644585,

23  at *6  (N.D. Ill. 2000) (approving jury instruction barring deduction of overhead if

24  the jury were to find willful infringement); 5 Melville B. Nimmer & David

25  Nimmer, *Nimmer on Copyright*, § 14.03[C][2] (2006) (it is "settled law" that

26  infringers are not entitled to income tax deductions).

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1 **OBJECTION**:

2      The MGA Parties object to this instruction on the ground that it misleadingly

3 fails to indicate the modification to the form instruction 17.27, which is simply a

4 definition of willful infringement.  The form instruction does not address the

5 deductibility of expenses at all.

6      The MGA Parties object to this instruction on the ground that willful

7 infringement must be proven by clear and convincing rather than preponderance of

8 evidence.

9      The MGA Parties further object that there is insufficient evidence in this case

10 to charge the jury with willful infringement and no proper basis upon which to

11 charge this instruction.

12      The MGA Parties object to this instruction on the ground that the Ninth

13 Circuit has not adopted the principle described that willful infringers may not

14 deduct overhead expenses, operating expenses or taxes.  The various circuits are all

15 over the map on this issue.  *See* W. Patry, 6 PATRY ON COPYRIGHT 22:143 (Westlaw

16 ed. Sep. 2010).  Section 504 does not authorize an award of punitive damages, and

17 the disallowance of all expenses would be tantamount to an exemplary damages

18 award.  *On Davis v. The Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001); PATRY 22:151.

19      MGA objects that operating expenses are variable expenses associated with

20 the alleged infringement and are always permitted to be deducted.  MGA objects

21 that Mattel offers no reasonable definition of overhead expenses.  MGA objects

22 because Mattel's proposed instruction could well result in MGA paying more than

23 it ever earned.

24      The MGA Parties object on the ground that even assuming deduction of

25 certain fixed expenses might be disallowed in cases of willful infringement, the

26 determination whether to disallow these expenses is discretionary with the jury and

27 that the words "cannot deduct" misstates the law.

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1    The MGA Parties also object to this instruction because it fails to ensure that

2 the jury distinguishes among the defendants and makes appropriate findings with

3 respect to each defendant.  The MGA Parties further object to this instruction (and

4 Mattel's other copyright damages instructions) because it does not properly explain

5 that the jury must base any damages award on its specific findings of infringement,

6 by considering separately each alleged infringing act and/or product.  Thus, the

7 instruction would mislead the jury by suggesting that if any infringement at all is

8 found, of any of the copyrights at issue, Mattel should recover damages based on all

9 of the alleged infringement.

1

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 43

2

## UNFAIR COMPETITION—RESTITUTION

3

4     Mattel seeks restitution from MGA as a remedy for MGA's unfair

5 competition.  Restitution, as a remedy, is measured by the value of the money or

6 property that the defendants took from Mattel or in which Mattel has a vested

7 interest.

8

9     **Authority:**  *Korea Supply Co. v Lockheed Martin Corp.*, 29 Cal. 4th 1134,

10 1149 (2003); *Nat. Rural Telecm'ns Co-op v. DirecTV*, 319 F. Supp. 2d 1059, 1080

11 (C.D. Cal. 2003)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **OBJECTION:**

2      The MGA Parties object to this instruction because, although it is a

3  technically correct statement of the law, it is not a statement that will be easily

4  understandable by the jury.  The phrase "vested interest" is not explained anywhere,

5  and it is not one the jury will necessarily understand.

6      Accordingly, the MGA Parties propose the following instruction:

7          "Mattel seeks restitution from MGA as a remedy for
   MGA's unfair competition.  Restitution, as a remedy, is
8          measured by the value of the money or property that the
   defendants took from Mattel."

9

10      **Authority:**  *Korea Supply Co. v Lockheed Martin Corp.*, 29 Cal. 4th 1134,

11  1149 (2003); *Nat. Rural Telecm'ns Co-op v. DirecTV*, 319 F. Supp. 2d 1059, 1080

12  (C.D. Cal. 2003)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3

# CACI 3926

# SETTLEMENT DEDUCTION

4      You may have heard evidence that Mattel has settled its claims against Carter

5 Bryant.  Your award of damages to Mattel should be made without considering any

6 amount it may have received under this settlement.  After you have returned your

7 verdict, I will make the proper deduction from your award of damages.  You also

8 must not consider this settlement to determine responsibility for any harm.

9

10      **Authority:**  CACI 3926 (modified); CACI 217 (modified).

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**OBJECTION:**

The MGA Parties also object to the changes made by Mattel to both of the cited CACI instructions.  Rather than referencing "any damages," as in CACI 3926, Mattel's instruction refers to "your award of damages to Mattel" and states how it "should" be made.  The argument in favor of Mattel is continued with a statement about what will happen "after you return your verdict," in place of the reference in CACI 3926 to "any award of damages."

Mattel also improperly deleted the final sentence of CACI 217, which explains how evidence of a settlement can be used.  If CACI 217 is to be used, it should be used as it was written by the CACI Committee.

**Instructions for Other Remedies**

**CACI 3941 & 3946**

**PUNITIVE DAMAGES—INDIVIDUAL AND ENTITY DEFENDANTS—**

**BIFURCATED TRIAL (FIRST PHASE)**

If you decide that Mr. Larian's, MGA's or MGA Hong Kong's conduct caused Mattel's harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You must decide whether Mattel has proved by clear and convincing evidence that Mr. Larian, MGA, or MGA Hong Kong engaged in conduct with malice, oppression, or fraud.

"Malice" means that a defendant acted with intent to cause injury or that a defendants' conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A defendant acts with knowing disregard when the defendant is aware of the probable dangerous consequences or his or its conduct and deliberately fails to avoid these consequences.

"Oppression" means that a defendant's conduct was despicable and subjected Mattel to cruel and unjust hardship in knowing disregard of its rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down and despised by reasonable people.

"Fraud" means that a defendant intentionally misrepresented or concealed a material fact and did so intending to harm Mattel.

In order to prove that MGA or MGA Hong Kong engaged in conduct with malice, oppression, or fraud. *[sic]* Mattel must prove one of the following:

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1      1.      That the malice, oppression, or fraud was conduct of one or more

2 officers, directors, or managing agents of MGA or MGA Hong Kong, who acted on

3 behalf of MGA or MGA Hong Kong; or

4      2.      That an officer, a director, or a managing agent of MGA or MGA

5 Hong Kong had advance knowledge of the unfitness of another officer, director, or

6 managing agent of MGA or MGA Hong Kong and employed that person with a

7 knowing disregard of the rights or safety of others; or

8      3.      That the conduct constituting malice, oppression, or fraud was

9 authorized by one or more officers, directors, or managing agents of MGA or MGA

10 Hong Kong; or

11      4.      That one or more officers, directors, or managing agents of MGA or

12 MGA Hong Kong knew of the conduct constituting malice, oppression, or fraud

13 and adopted or approved that conduct after it had occurred.

14      An employee is a "managing agent" if he or she exercises substantial

15 independent authority and judgment in his or her corporate decision making such

16 that his or her decisions ultimately determine corporate policy.

17

18      **Authority:**  CACI 3941 & 3946 (modified).

**OBJECTION:**

The MGA Parties object to this instruction on the following grounds.

First, the instruction assumes that "Mattel's harm" has been proved, contrary to CACI 3941. that it instructs the jury about determining the amount of punitive damages, when the amount will not be determined at this stage.

Second, there will be no basis in the evidence for a reference to "fraud" as a species of conduct justifying punitive damages.

Third, the MGA Parties object to Mattel's deletion of references to the burden of proof and to the other changes to the language of the CACI instructions.

The MGA Parties further object to this instruction because Mattel lacks any evidentiary basis to request an instruction concerning punitive damages. *See Barry v. Raskov*, 232 Cal. App. 3d 447, 457 (1991) (trial court properly refused to instruct jury on punitive damages, as there was not clear and convincing evidence of fraud); *see also Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence"). Moreover, this instruction is improper because it does not distinguish among the defendants and advise the jury that it must make separate findings with respect to each defendant.

Finally, the MGA Parties object to the proposed instruction because it does not identify which alleged harm it relates to. Punitive damages are not available for all of Mattel's claims against Mr. Larian, MGA, and MGA Hong Kong. If a punitive damages instruction is given, it should specify the claims and conduct that may be considered as a basis for an award of punitive damages.

# MATTEL SPECIAL JURY INSTRUCTION NO. 44
## REMEDIES—CONSTRUCTIVE TRUST

Mattel claims that it is entitled to have Bratz-related trademarks, copyrights, and other intangible property transferred to it as a remedy for defendants' wrongdoing pursuant to a constructive trust. A constructive trust awards ownership of property to prevent unjust enrichment and to prevent a person or entity from taking advantage of and benefiting from their wrongdoing. Mattel seeks a constructive trust over property held by defendants based on its claim that those properties are a benefit defendants have obtained from their misappropriation of works and rights owned by Mattel.

A constructive trust may be imposed in any case where there is a wrongful acquisition or detention of property to which another is entitled. Rights in trademarks, copyrights, and other intangible property related to Bratz may be the subject of a constructive trust, if you find that an award of such rights is warranted.

In order for Mattel to obtain a constructive trust over Bratz property held by MGA and Mr. Larian, Mattel must show (1) the existence of property or some interest in that property; (2) its right to property or some interest in that property; and (3) some wrongful acquisition or detention of its property or some interest in that property by MGA who is not entitled to it. A constructive trust should only be awarded if it is just an equitable to do so. It is for you to decide whether it is just and equitable that defendants' claimed rights in Bratz-related trademarks, copyrights, and other intangible property be transferred to Mattel to prevent defendants from benefiting from wrongdoing.

**Authority:** Cal. Civ. Code §§ 2223, 2224; *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1069 (1998); *Weiss v. Marcus*, 51 Cal. App. 3d 590, 600 (1975); *Heckmann v. Ahmanson*, 168 Cal. App. 3d 119, 135 (1985); *Warren v. Merrill*, 143

1  Cal. App. 4th 96, 113 (2006); *Martin v. Kehl*, 145 Cal. App. 3d 228, 237-38 (1983);

2  *Columbia Nastri & Carta Carbone S/p/A v. Columbia Ribbon & Carbon Mfg. Co.*,

3  367 F.2d 308, 311 (2d Cir. 1966); *Online Partners.com, Inc. v. Altanticnet Media*

4  *Corp.*, 2000 WL 101242, at *10 (N.D. Cal. Jan. 20, 2000); *Calistoga Civic Club v.*

5  *City of Calistoga*, 143 Cal. App. 3d 111, 116 (1983); *GHK Assocs. v. Mayer Group,*

6  *Inc.*, 224 Cal. App. 3d 856, 878 (1990).

**OBJECTION:**

The MGA Parties object to this instruction because the Ninth Circuit has already determined as a matter of law that imposition of a constructive trust would not be appropriate in this case.  Giving this instruction would therefore violate the mandate and the law of the case.  *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 911 (9th Cir. 2010).

The MGA Parties object to this instruction on the ground that an idea cannot be a *res* under California law and therefore cannot be transferred as property pursuant to a constructive trust.  In particular, the idea for a product name such as BRATZ or JADE is not property and cannot be conveyed, or reconveyed, pursuant to a constructive trust.  *Desny v. Wilder*, 299 P.2d 257, 265 (Cal. 1956); *Weitzenkorn v. Lesseri¸* 40 Cal. 2d 778, 788-89 (1953); Cal. Civ. Code § 980; *see Rokos v. Peck*, 227 Cal. Rptr. 480, 486 (Cal. App. 1986).

The MGA Parties object to the extent that Mattel seeks MGA's trademark portfolio through a constructive trust theory because Bryant never conveyed a trademark in the first place, but rather conveyed at most only an idea for a product name.  In fact, Mattel did not own the trademark and can lay no claim to it because it never used the name in commerce.  *See Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996); *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).

The MGA Parties further object to this instruction on the grounds that the question of whether to impose a constructive trust is a question for the Court, not for the jury.  *See GHK Associates v. Mayer Group, Inc.*, 224 Cal. App. 3d 856, 877-78 (Cal. App. 2d 1990) ("The propriety of granting equitable relief of imposition of a constructive trust rests within the sound discretion of the trial court."); *Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 990-91 (Cal. App. 1st 1995) ("A constructive trust is an involuntary equitable trust **created by operation of law** as a remedy to compel the transfer of property from the person wrongfully holding it to

1   the rightful owner.") (emphasis added); *Mattel, Inc. v. MGA Entertainment, Inc.*,

2   616 F.3d 904, 910, 917 (9th Cir. 2010) ("The **district court** may impose a narrower

3   constructive trust on remand only if there's a proper determination that Mattel owns

4   Bryant's ideas") (emphasis added).  Because constructive trusts are not a question

5   for the jury to consider, this instruction should not be given.

6        Finally, the MGA Parties object to this instruction on the grounds that it does

7   not provide for the proper calculation of a constructive trust.  The instruction fails

8   to provide for a deduction for the value of property enhancements contributed by

9   MGA as a result of its own skill, ingenuity and hard work.  *See Mattel, Inc. v. MGA*

10  *Entertainment, Inc.*, 616 F.3d 904, 911 (9th Cir. 2010).  A constructive trust cannot

11  be imposed to capture "the fruits of the defendant's own labors or legitimate

12  efforts."  DAN B. DOBBS, DOBBS LAW OF REMEDIES § 6.6(3) (2d ed. 1993); *see*

13  RESTATEMENT (FIRST) OF RESTITUTION §§ 206, 210 (equity does not allow a

14  plaintiff to capture "the fruits of the defendant's own labors or legitimate efforts");

15  *Janigan v. Taylor*, 344 F.2d 781, 787 (1st Cir. 1965)("If an artist acquired paints by

16  fraud and used them in producing a valuable portrait we would not suggest that the

17  defrauded party would be entitled to the portrait, or to the proceeds of its sale.").

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**<u>Instructions for MGA's Trade Secret Claims</u>**

**<u>CACI 4401</u>**

**<u>MISAPPROPRIATION OF TRADE SECRETS—ESSENTIAL FACTUAL ELEMENTS</u>**

MGA claims that Mattel misappropriated MGA trade secrets.  To succeed on this claim, MGA must prove all of the following:

1. That MGA owned or rightfully possessed the information;

2. That the information was a trade secret at the time of the misappropriation;

3. That Mattel improperly acquired, used or disclosed the trade secret;

4. That MGA was harmed or Mattel was unjustly enriched; and

5. That Mattel's acquisition, use or disclosure of the trade secret was a substantial factor in causing the harm or unjust enrichment.

**Authority:**  CACI 4401 (modified); *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 220-21 (2010); *Metso Minerals Indus. v. FLSMIDTH-Excel LLC*, --- F. Supp. 2d ----, 2010 WL 1850139, at *8 (E.D. Wis. May 7, 2010); *Durney v. Wavecrest Labs., LLC*, 441 F. Supp. 2d 1055, 1062 (N.D. Cal. 2005).

1    **OBJECTION:**

2        The MGA Parties object generally to Mattel's trade secret instructions to the

3    extent Mattel separates out instructions for its claims and MGA's claims.  MGA

4    believes there should be one set of trade secret instructions, as reflected in its

5    proposed jury instructions.

6        MGA Parties object to Mattel's version of CACI 4401 as follows:

7        The use of the term "substantial factor" in paragraph 5 does not properly

8    state the causation requirement that Mattel must establish to prevail on this claim.

9    A "but for" causation test, as stated clearly in MGA Parties' proposed instruction

10   on this topic, is more appropriate to the current situation.  In a discussion of "but

11   for" causation versus the "substantial factor" test, California courts have explained

12   that the "substantial factor" test should be used in those few situations" where "two

13   causes concur to bring about an event and either one of them operating alone could

14   have been sufficient to cause the result."  *Mitchel v. Gonzales*, 54 Cal. 3d 1041,

15   1049 (1991) (citations omitted).  On those rare occasions, "where there are

16   concurrent independent causes, our law provides one cannot escape responsibility .

17   . . on the ground that identical harm would have occurred without it."  Id.

18   Otherwise, a "but for" causation standard is appropriate.  See id. at 1054 & n.10

19   (disapproving a specific "but for" jury instruction as "grammatically confusing and

20   conceptually misleading," but stating that "nothing in this opinion should be read to

21   discourage the Committee on Standard Jury Instructions from drafting a new and

22   proper 'but for' instruction.").  In MGA Parties' proposed jury instructions, MGA

23   Parties have set forth a "but for" instruction that will be clear to the jury and easy to

24   apply.  This is much better for this case than the "substantial factor" language

25   included in Mattel's proposed instruction, because the "substantial factor" language

26   "create[s] risk of confusion and misunderstanding."  *Id*. at 1061 (Kennard, A.J.,

27   dissenting).

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1         The MGA Parties refer the Court to their proposed instruction at page 123 of
2    their Amended Proposed Jury Instructions.

1

## CACI 4402

2

## "TRADE SECRET" DEFINED

3

4        To prove that the information was a trade secret, MGA must prove all of the

5   following:

6        1.      That the information was secret;

7        2.      That the information had actual or potential independent economic

8   value because it was secret; and

9        3.      That MGA made reasonable efforts to keep the information secret.

10

11        **Authority:**  CACI 4402 (modified).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **<u>OBJECTION:</u>**

2       The MGA Parties object generally to Mattel's trade secret instructions to the

3   extent Mattel separates out instructions for its claims and MGA's claims.  The

4   MGA Parties also object to the use by Mattel of different definitions of "trade

5   secret" in the instructions on Mattel's and MGA's claims.  The law does not change

6   depending on the identity of the claimant.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CACI 4403

2

## SECRECY REQUIREMENT

3

4        The secrecy required to prove that something is a trade secret does not have

5   to be absolute in the sense that no one else in the world possesses the information.

6   It may be disclosed to employees involved in MGA's use of the trade secret as long

7   as they are instructed to keep the information secret.  It may also be disclosed to

8   nonemployees if they are obligated and expected to keep the information secret.

9   However, it must not have been generally known to the public or to people who

10  could obtain value from knowing it.

11

12        **Authority:**  CACI 4403 (modified).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**OBJECTION:**

The MGA Parties object generally to Mattel's trade secret instructions to the extent Mattel separates out instructions for its claims and MGA's claims.  MGA believes there should be one set of trade secret instructions, as reflected in its proposed jury instructions.

The MGA Parties object to this instruction on the ground that it modifies CACI 4403 improperly, misleadingly, and without citation to case law. Remarkably, the proposed instruction adds language to the CACI form instruction without notifying the Court or the MGA Parties of the modification.  While the CACI instruction provides that a trade secret has been kept secret if it is "disclosed to nonemployees if they are obligated to keep the information secret," the proposed instruction provides that a trade secret has been kept secret only if it is "disclosed to nonemployees if they are obligated and expected to keep the information secret." This unjustified and unsupported modification to the CACI form instruction should not be allowed.

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 45
## INFORMATION NOT SECRET WHEN DISCLOSED NON-CONFIDENTIALLY

Information is not secret for purposes of trade secret protection if it is disclosed, with the trade secret holder's authorization, to others who are under no obligation to protect the confidentiality of the information. Information also is not secret for purposes of trade secret protection if it is disclosed with the trade secret holder's authorization to others who, while under an obligation to protect the confidentiality of the information, are not expected by the trade secret holder to actually protect the information's secrecy. If a trade secret holder conveys information to a third party who the holder expects will not maintain the secrecy of the information, such conduct shows that the information was not kept secret.

**Authority**: *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984); *VSL Corp. v. Gen. Techs. Inc.*, 1997 WL 654103, at *3 (N.D. Cal. Jul. 21, 1997) (granting summary judgment on plaintiff's trade secret claims because "[plaintiff] displayed the duct at trade shows and distributed marketing information about the duct which provided drawings and measurements. [Plaintiff] never required that anyone sign a confidentiality agreement before being given samples and other data.") (citations omitted)); *Tax Track Sys. Corp. v. New Investor World, Inc.*, 478 F.3d 783, 788 (7th Cir. 2007) (no reasonable jury could find that plaintiff took reasonable efforts to keep a memo confidential where, inter alia, it distributed the memo to 600-700 people and only sought confidentiality agreements from 190 of them, and the effort of storing the memo exclusively on a password-protected computer was "entirely undermined" by the "widespread nonconfidential disclosure of the memo to hundreds of outsiders."); *Marine Pile Drivers, LLC v. Welco, Inc.*, 988 So.2d 878, 881-82 (La. Ct. App. 2008) upholding finding that plaintiff failed to

1  take reasonable efforts to maintain the secrecy of its barge design because "[t]he

2  barge was marketed at trade shows and pictured on websites and in pamphlets");

3  *De Lage Landen Operational Servs, LLC v. Third Pillar Sys., Inc*., 693 F. Supp. 2d

4  423, 440 (E.D. Pa. 2010) ("Where a plaintiff has freely disclosed the information

5  without the protection of a confidentiality agreement, it cannot claim a trade

6  secret.") (citing *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs.*, 923 F.

7  Supp. 1231, 1254 (N.D. Cal. 1995)).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OBJECTION:**

The MGA Parties object generally to Mattel's trade secret instructions to the extent Mattel separates out instructions for its claims and MGA's claims. MGA believes there should be one set of trade secret instructions, as reflected in its proposed jury instructions.

The MGA Parties object to this instruction on the grounds that it is unnecessary and incorrect addition to the law stated in CACI 4403. Apparently, Mattel seeks to expand the language of CACI 4403 to support a finding that information is not secret for the purposes of trade secret protection if the trade secret holder required third parties to sign a confidentiality agreement about the information, but did not actually expect the third parties to honor that agreement. But this idea is not supported by any of the cases cited by Mattel. Instead, the parties cited by Mattel turn solely on whether confidentiality agreements were signed.

Because CACI 4403 is a full and clear statement of the law in this area, it should be given alone (and unmodified). This proposed instruction should not be given.

# CACI 4404

## REASONABLE EFFORTS TO PROTECT SECRECY

To establish that the information MGA is claiming to be trade secret was in fact trade secret, MGA must prove that it made reasonable efforts under the circumstances and at least as of the time of the misappropriation to keep that information secret.  "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as MGA, exercising due care to protect important information of the same kind.

In determining whether or not MGA made reasonable efforts to keep the information secret, you should consider all of the facts and circumstances.  Among the factors you may consider are the following:

(a)    Whether documents or files containing the information were marked with confidentiality warnings;

(b)    Whether MGA instructed its employees to treat the information as confidential;

(c)    Whether MGA restricted access to the information to the persons who had a business reason to know the information;

(d)    Whether MGA kept the information in a restricted or secured area;

(e)    Whether MGA required employees or others with access to the information to sign confidentiality or nondisclosure agreements;

(f)    Whether MGA took any action to protect the specific information, or whether it relied on general measures taken to protect its business information or assets;

(g)    The extent to which any general measures taken by MGA would prevent the unauthorized disclosure of the information; and

Amended & Consolidated Objs of MGA Parties & Gustavo Machado to Mattel's 4th Amended Prop Jury Instructions Case No. CV 04-9049 DOC (RNBx)

1          (h)      Whether there were other reasonable measures available to MGA that

2   it did not take.

3          The presence or absence of any one or more of these factors is not

4   necessarily determinative.

5

6          **Authority:**  CACI 4404.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1    **OBJECTION:**

2         The MGA Parties object generally to Mattel's trade secret instructions to the

3    extent Mattel separates out instructions for its claims and MGA's claims.  MGA

4    Parties believe there should be one set of trade secret instructions, as reflected in

5    their proposed jury instructions.

6         MGA Parties further object to Mattel's version of CACI 4404 to the extent

7    Mattel improperly modifies the CACI by inserting the term "at least as of the time

8    of the misappropriation."

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**CACI 4405**</u>

<u>**MISAPPROPRIATION BY ACQUISITION**</u>


     Mattel misappropriated MGA's trade secrets by acquisition if Mattel acquired the trade secrets and knew or had reason to know that it used improper means to acquire them.


     **Authority:**  CACI 4405.

- 295 -

1   **OBJECTION:**

2      The MGA Parties object generally to Mattel's trade secret instructions to the

3   extent Mattel separates out instructions for its claims and MGA's claims.  MGA

4   Parties believe there should be one set of trade secret instructions, as reflected in

5   their proposed jury instructions.

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1

2

3

# <u>CACI 4406</u>

## <u>MISAPPROPRIATION BY DISCLOSURE</u>

4    Mattel misappropriated MGA's trade secrets by disclosure if Mattel:

5    1.    Disclosed MGA's trade secrets without MGA's consent; and

6    2.    Did any of the following:

7    Acquired knowledge of the trade secrets by improper means; or

8    At the time of disclosure, knew or had reason to know that its knowledge of

9  the trade secrets came from or through a third party, and that the third party had a

10 duty to MGA to keep the information secret.

11

12    **Authority:**  CACI 4406

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**OBJECTION:**

The MGA Parties object generally to Mattel's trade secret instructions to the extent Mattel separates out instructions for its claims and MGA's claims.  MGA Parties believe there should be one set of trade secret instructions, as reflected in their proposed jury instructions.

1

## CACI 4407

2

## MISAPPROPRIATION BY USE

3

4    Mattel misappropriated MGA's trade secrets by use if Mattel:

5    1.    Used MGA's trade secrets without MGA's consent; and

6    2.    Did any of the following:

7    Acquired knowledge of the trade secrets by improper means; or

8    At the time of disclosure, knew or had reason to know that its knowledge of

9  MGA's trade secrets came from or through a third party and that the third party had

10  a duty to MGA to keep the information secret.

11

12    **Authority:**  CACI 4407 (modified).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **OBJECTION:**

2      The MGA Parties object generally to Mattel's trade secret instructions to the

3  extent Mattel separates out instructions for its claims and MGA's claims.  MGA

4  Parties believe there should be one set of trade secret instructions, as reflected in

5  their proposed jury instructions.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

# CACI 4408

## IMPROPER MEANS OF ACQUIRING TRADE SECRET

Improper means of acquiring a trade secret or knowledge of a trade secret include, but are not limited to, theft, bribery, misrepresentation, breach or inducing a breach of a duty to maintain secrecy.

However, it is not improper to acquire a trade secret or knowledge of the trade secret by:

1.      Independent efforts to invent or discover the information;

2.      Obtaining the information as a result of a license agreement with the owner of the information;

3.      Observing the information in public use or on public display; or

4.      Obtaining the information from published literature, such as trade journals, reference books, the Internet, or other publicly available sources.


**Authority:**  CACI 4408.

**OBJECTION:**

The MGA Parties object generally to Mattel's trade secret instructions to the extent Mattel separates out instructions for its claims and MGA's claims.  MGA Parties believe there should be one set of trade secret instructions, as reflected in their proposed jury instructions.

**CACI 4412**

**"INDEPENDENT ECONOMIC VALUE" EXPLAINED**

Information has independent economic value if it gives the owner or holder an actual or potential business advantage over others who do not know the information and who could obtain economic value from its disclosure or use.

In determining whether information had actual or potential independent economic value because it was secret, you may consider the following:

(a)     The extent to which the information's owner or holder obtained or could obtain economic value from the information in keeping it secret;

(b)     The extent to which others could obtain economic value from the information if it were not secret;

(c)     The amount of time, money, or labor the information's owner or holder expended in developing the information;

(d)     The amount of time, money, or labor that was saved by a competitor who used the information.

The presence or absence of any one or more of these factors is not necessarily determinative.

**Authority:**  CACI 4412 (modified); *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 220-21 (2010); *Metso Minerals Indus. v. FLSMIDTH-Excel LLC*, --- F. Supp. 2d ----, 2010 WL 1850139, at *8 (E.D. Wis. May 7, 2010); *Durney v. Wavecrest Labs., LLC*, 441 F. Supp. 2d 1055, 1062 (N.D. Cal. 2005).

**OBJECTION:**

The MGA Parties object generally to Mattel's trade secret instructions to the extent Mattel separates out instructions for its claims and MGA's claims.  MGA Parties believe there should be one set of trade secret instructions, as reflected in their proposed jury instructions.

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 46
## UNFAIR COMPETITION—ESSENTIAL ELEMENTS

MGA claims that Mattel has engaged in unfair competition by unlawfully interfering with MGA's relationships with its licensees, distributors, and retailers. Mattel disputes that claim.

To prevail on this claim, MGA must prove by a preponderance of the evidence that:

(1)     Mattel engaged in an unfair business practice; and

(2)     MGA suffered actual injury as a result of Mattel's actions; and

(3)     MGA lost money or property as a result of Mattel's actions.

An "unfair" business practice is conduct that threatens an incipient violation of an antitrust law, or violates the policies or spirit of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.  Merely refusing to enter into business relationships with MGA's licensees, distributors, and retailers does not constitute unfair competition.

An "actual injury" is a distinct and palpable injury suffered as a result of Mattel's actions.  It must be concrete and not conjectural.

"Lost money or property" requires a showing that Mattel directly gained money or property that MGA lost and in which MGA had a vested interest.  MGA lost money gained by Mattel only if MGA parted, deliberately or otherwise, with some identifiable sum formerly belonging to it or subject to its control.  MGA lost property gained by Mattel only if MGA parted with some particular item of property it formerly owned or possessed.  In order to prove its claim, MGA must have suffered a loss of money or property directly to Mattel that could be restored to MGA.

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

In deciding whether MGA has proved this claim, you may not find that Mattel engaged in unfair competition based on acts other than, or different from, Mattel's alleged interference with MGA's relationship with its licensees, distributors, and retailers.  In particular, you may not consider facts related to MGA's trade secret claims, including allegations that Mattel gained access to MGA's toy fair showrooms on false pretenses or without authorization, in deciding whether Mattel engaged in an unfair business practice.

**Authority:**  Cal. Bus. & Prof. Code § 17200; *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1003 (N.D. Cal. 2009); *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1098 (C.D. Cal. 2009); *Puentes v. Wells Fargo Home Mortg.*, Inc., 160 Cal. App. 4th 638, 645 (2008); *Buckland v. Threshold Enter., Ltd.*, 155 Cal. App. 4th 798, 812 (2007); *Buena Vista, LLC v. New Res. Bank*, 2010 WL 3448561, at *6 (N.D. Cal. Aug. 31, 2010); *Cel-Tech Commc'ns Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999); *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 254 (2010); *Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210, 243, 109 (2010); *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1590 (2008).

**OBJECTION:**

The MGA Parties object to this instruction on the grounds that it is not party neutral.  As both Mattel and MGA claim that the other violated California's Unfair Competition law, this instruction should be written so as to apply to either Mattel or MGA, and in a manner that is consistent with the law.

The MGA Parties direct the Court to pages 229 to 238 of their Amended Proposed Jury Instructions for a clear and party-neutral statement of the law of unfair competition.

1

**Instructions for Mattel's Affirmative Defenses**

2

3

**MATTEL'S SPECIAL JURY INSTRUCTION NO. 47**

4

**AFFIRMATIVE DEFENSE—INTRODUCTION**

5

6        I will now instruct you on Mattel's affirmative defenses.  Mattel bears the

7    burden of proving its affirmative defenses.  You should consider each affirmative

8    defense as to each claim separately.  If you find that Mattel has proved an

9    affirmative defense that provides a complete defense to any particular claim, then

10   you should find for Mattel on that claim.  If, however, you find that Mattel has not

11   proved that an alleged affirmative defense completely bars a claim and MGA has

12   proved that claim, then you should find for MGA on that claim.

13

14        **Authority:**  *Seltzer v. Barnes*, 182 Cal. App. 4th 953, 969 (2010) ("A

15   defendant that advances an affirmative defense to the plaintiff's claims bears the

16   burden of proof on that defense."); *Henley v. DeVore,* -- F. Supp. 2d --, 2010 WL

17   3304211, *4 (C.D. Cal. 2010) ("Because fair use is an affirmative defense to

18   copyright infringement, the defendant bears the burden of proving fair use.");

19   *Quintana v. Baca*, 233 F.R.D. 562, 564 (C.D. Cal. 2005) ("A defense is an

20   affirmative defense if it will defeat a plaintiff's claim even when the plaintiff has

21   stated a prima facie case for recovery under the applicable law.").

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1   **OBJECTION:**

2        The MGA Parties object to this instruction and to an instruction format by

3   which all affirmative defenses are grouped together.  The better format is to instruct

4   on the defenses to a given claim when the instructions on the elements of the claim

5   are provided.

6        In addition, the MGA Parties object to the "if/should" format used in this

7   instruction.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 48

## AFFIRMATIVE DEFENSE—UNCLEAN HANDS

Mattel claims that MGA should not be able to recover damages against Mattel in this case because MGA has "unclean hands" and is undeserving of relief. The doctrine of unclean hands requires that a plaintiff act fairly in the matter for which he seeks a remedy.  If MGA has engaged in misconduct that relates directly to the transactions at issue in its claims, then its claims may be barred by its "unclean hands."

To prevail on the affirmative defense of unclean hands, Mattel must prove by a preponderance of the evidence that MGA acted unfairly in connection with the events at issue in this case.

**Authority:**  *Kendall-Jackson Winery Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 978 (1999); *Dollar Systems, Inv. v. Avcar Leasing Systems, Inc.*, 890 F.2d 165, 173 (9th Cir. 1989); *Magnesystems, Inc. v. Nikken, Inc.*, 933 F. Supp. 944, 953 (C.D. Cal. 1996).

**OBJECTION:**

The MGA Parties object to this instruction on the grounds that it is not party neutral.  This instruction should be written so as to apply to either Mattel's or MGA's allegedly unfair acts.

1

## CACI 4420

2

## AFFIRMATIVE DEFENSE—INFORMATION WAS READILY

3

## ASCERTAINABLE BY PROPER MEANS

4

5         Mattel did not misappropriate MGA's trade secrets if Mattel proves that the

6    information was readily ascertainable by proper means at the time of the alleged

7    acquisition, use, or disclosure.

8         There is no fixed standard for determining what is "readily ascertainable by

9    proper means."  In general, information is readily ascertainable if it can be

10   obtained, discovered, developed, or compiled without significant difficulty, effort,

11   or expense.  For example, information is readily ascertainable if it is available in

12   trade journals, reference books, or published materials.  On the other hand, the

13   more difficult information is to obtain, and the more time and resources that must

14   be expended in gathering it, the less likely it is that the information is readily

15   ascertainable by proper means.

16

17         **Authority:**  CACI 4420.

18

19

20

21

22

23

24

25

26

27

28

1  **OBJECTION:**

2          The MGA Parties object to this instruction on the grounds that it is not party

3  neutral.  This instruction should be written so as to apply to either Mattel or MGA.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 49
## AFFIRMATIVE DEFENSE—STATUTE OF LIMITATIONS

Mattel contends that MGA's claims were not filed within the statute of limitations.  The statute of limitations for MGA's claim for misappropriation of trade secrets is three years, and the statute of limitations for MGA's claim of unfair competition is four years.

Trade Secret Misappropriation.

In order to decide whether MGA's trade secret claim was filed within the statute of limitations, you must decide whether the facts supporting MGA's trade secret claim arise from the same transaction or occurrence as the facts supporting Mattel's trade secret claim.  If you find that they do not arise from the same transaction or occurrence, then Mattel must prove that MGA's claimed harm occurred more than three years prior to August 16, 2010, the date on which MGA filed its trade secret misappropriation claim, in order to succeed on its statute of limitations defense.  If Mattel proves that MGA's claimed harm occurred prior to August 16, 2007, MGA's claim was not timely filed, unless you find that MGA did not discover, and did not know of facts that should have caused it to discover, that Salvador Villasenor or other Mattel employees gained access to MGA's toy fair show rooms on false pretenses or without authorization from MGA before August 16, 2007.

On the other hand, if you find that MGA's trade secret claim does arise from the same transaction or occurrence as the facts supporting Mattel's trade secret claim, then Mattel must prove that MGA's claimed harm occurred more than three years prior to November 20, 2006 in order to succeed on its statute of limitations defense.  If Mattel proves that MGA's claimed harm occurred prior to November 20, 2003, MGA's claim was not timely filed, unless you find that MGA did not discover, and did not know of facts that should have caused it to discover, that

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

Salvador Villasenor or other Mattel employees gained access to MGA's toy fair show rooms on false pretenses or without authorization from MGA before November 20, 2003.

The period of time when MGA only suspected, but had no evidence of, wrongdoing by Mattel does not count in considering whether MGA's claims are timely.

Unfair Competition.

The statute of limitations for MGA's unfair competition claim is four years. To succeed on its statute of limitations defense, Mattel must prove that that some of the claimed harm from unfair competition occurred on or before April 13, 2001.  So long as Mattel proves that the claimed unfair competition occurred before April 13, 2001, MGA's claim of unfair competition is barred by the statute of limitations even if MGA did not discover the claim or did not know of facts which should have led it to discover that claim.

**Authority:** CACI 4421 (modified); CACI 455 (modified); Cal. Civ. Code § 3426.6 (claim "must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered"); *Cypress Semiconductor Corp. v. Superior Court*, 163 Cal. App. 4th 575, 585 (2008); *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005); *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1266 (N.D. Cal. 1991) ("We cannot apply statute of limitations in a way that pressures litigants to file suits based merely on suspicions and fears. …[S]uspicion and fear are not sufficient predicates for launching a lawsuit, and to file an action with no other basis would offend norms articulated in rules like Federal Rule of Civil Procedure 11."); *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003) (plaintiff is "on notice" only when he has "'an awareness of sufficient facts to identify a particular cause of action . . . [It does] not mean the kind of notice—based on hints,

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

suspicions, hunches or rumors—that requires a plaintiff to make inquiries in the exercise of due diligence, but not to file suit.'") (citation omitted); *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987); *In re Lazar*, 237 F.3d 967, 979 (9th Cir. 2001); *In re R & C Petroleum, Inc.*, 236 B.R. 355, 361 (Bankr. E.D. Tex. 1999); Cal. Bus. & Prof. Code § 17208; *Snapp & Associates Ins. Services, Inc. v. Malcolm Bruce Burlingame Robertson*, 96 Cal. App. 4th 884, 891 (2002); *Stuz Motor Car Care of Am., Inc. v. Reebok Int'l, Ltd.*, 909 F. Supp. 1353, 1363 (C.D. Cal. 1995).

Amended & Consolidated Objs of MGA Parties & Gustavo Machado to Mattel's 4th Amended Prop Jury Instructions Case No. CV 04-9049 DOC (RNBx)

1   **OBJECTION:**

2       The MGA Parties object to this proposed instruction with regard to

3   misappropriation of trade secrets because it is in direct conflict with the Court's

4   order on this subject.  The Court has ordered that MGA's claim for

5   misappropriation of trade secrets relates back to the date of Mattel's Fourth

6   Amended Complaint, which in turn relates back to Mattel's November 20, 2006

7   pleading.  Accordingly, the Court has already determined that the effective date for

8   calculation of the statute of limitations for MGA's claim for misappropriation of

9   trade secrets is November 20, 2006.  Thus, the first paragraph in this instruction

10  under "Trade Secret Misappropriation" should be removed.

11      Further, the MGA Parties object to this instruction to the extent that it

12  unnecessarily re-writes CACI 4421, as well as including legal argument and

13  identifiers where they are unnecessary and would be un-helpful to the jury.

14      Additionally, MGA Parties object to this proposed instruction with regard to

15  unfair competition because it is an incorrect statement of the law.  MGA Parties'

16  proposed instruction does not include the idea that the statute of limitations for

17  unfair competition claims may be tolled by the equitable tolling doctrine.  *See*

18  *Snapp & Associates Ins. Services, Inc. v. Malcolm Bruce Burlingame Robertson*, 96

19  Cal. App. 4th 884, 891 (2002).

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 50
## AFFIRMATIVE DEFENSE—LACHES

Mattel claims that MGA is barred from asserting any right to relief against Mattel based on the doctrine of laches.  To establish laches, Mattel must establish (1) lack of diligence by the plaintiff, and (2) prejudice to the defendant.  Courts have recognized two chief forms of prejudice: evidentiary and expectations-based.  Evidentiary prejudice includes things such as loss of evidence or faded memories.  Expectations-based prejudice arises where a defendant took actions or suffered consequences it would not have if the plaintiff brought suit promptly.

To prevail on the affirmative defense of laches, Mattel must prove by a preponderance of the evidence that MGA unreasonably delayed in bringing its claims against Mattel and that Mattel has suffered prejudice as a result.

**Authority:**  *Grand Canyon Trust v. Tucson Elec. Power Co.*, 391 F.3d 979, 987 (9th Cir. 2004); *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001).

1  **OBJECTION:**

2      MGA objects to this proposed instruction because it departs from a simple

3  statement of the law, contains multiple descriptions of the same elements in

4  different language, and is written in part like a judicial opinion or law review

5  article, rather than a jury instruction.  The elements of the defense of laches are set

6  forth in the MGA Parties' laches instruction set forth on page 144 of MGA Parties'

7  Amended Proposed Jury Instructions.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 51

## AFFIRMATIVE DEFENSE—FAILURE TO MITIGATE DAMAGES

Mattel claims that MGA failed to mitigate damages allegedly caused by Mattel's wrongful conduct.  The doctrine of mitigation of damages holds that a plaintiff who suffers damages as a result of a tort has a duty to take reasonable steps to mitigate those damages and may not recover for damages avoidable through ordinary care and reasonable exertion.  The duty to mitigate damages does not require an injured party to do what is unreasonable or impracticable.

The burden of proving that losses could have been avoided by plaintiff by reasonable effort and expense is always on the party who harmed the plaintiff.

**Authority:**  CACI 358, comments; *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994); Amended Order on MGA's Motion for Summary Judgment; Mattel's Motion for Partial Summary Judgment; Machado's Motion for Summary Judgment; Mattel's Motion for Partial Summary Judgment on MGA's Counterclaims-in-Reply, dated January 5, 2011, at 119 (Dkt. No. 9600) (allowing failure to mitigate affirmative defense).

1  **OBJECTION:**

2       MGA Parties object to this proposed instruction because it unnecessarily

3  deviates from CACI 358.  Further, the proposed instruction is misleading because it

4  begins by identifying the parties by name, and then closes by identifying the

5  "plaintiff."  This instruction would be more helpful to the jury if it followed the

6  CACI instruction and consistently identified the parties by name.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 52
## AFFIRMATIVE DEFENSE—COMPETITION PRIVILEGE

Mattel claims that MGA's claims are barred in whole or in part by the competition privilege.  The competition privilege protects one from liability for inducing a third person not to enter into a prospective contractual relation with a business competitor.  One may compete for an advantageous economic relationship with a third party as long as one does not act improperly or illegally.

To prevail on the affirmative defense of competition privilege, Mattel must prove by a preponderance of the evidence that (a) the relation between MGA and third parties, including retailers and distributors, concerns a matter involved in the competition between Mattel and MGA, (b) Mattel did not employ improper means, and (c) Mattel's purpose was at least in part to advance its interest in competition with MGA.

Mattel does not act improperly or illegally by inducing a third person not to enter into a prospective contractual relation with a business competitor if it is for a legitimate business purpose such as protecting Mattel's confidential information or avoiding conflicts of interest, rather than for the sole purpose of harming the competitor.

**Authority:**  *Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners*, 52 Cal. App. 4th 867, 880-81 (1997); *San Francisco Design Center Associates v. Portman Companies*, 41 Cal. App. 4th 29, 42 (1995); Restatement (Second) of Torts § 768.

1    **OBJECTION:**

2          The MGA Parties object to this instruction as argumentative and inconsistent

3    with the law.  The general comments about the privilege of competition are

4    unnecessary and overstated, and moreover, confusing in its syntax (i.e., "Mattel

5    claims that MGA's claims…").  The reference to protecting trade secretes or

6    avoiding conflicts of interest will not be supported by the evidence.  The MGA

7    Parties direct the Court to their instruction on the privilege of competition that

8    appears on page 113 of the MGA Parties' Amended Proposed Jury instructions.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1     **MATTEL'S SPECIAL JURY INSTRUCTION NO. 53**
2     **AFFIRMATIVE DEFENSE—WAIVER**
3
4          Mattel claims that MGA has waived any right to relief against Mattel.
5     Waiver is the intentional relinquishment of a known right with knowledge of its
6     existence and the intent to relinquish it.  Waiver may be either express, based on the
7     words of the waiving party, or implied, based on conduct indicating an intent to
8     relinquish the right.
9          To prevail on the affirmative defense of waiver, Mattel must prove by clear
10    and convincing evidence that MGA knew of Mattel's alleged misconduct and either
11    expressly or impliedly waived any right to relief  against Mattel.
12
13         **Authority:**  *United States v. King Features Entm't, Inc.*, 843 F.2d 394, 399
14    (1988); *Medico-Dental etc. Co. v. Horton & Converse*, 21 Cal. 2d 411, 432 (1942);
15    *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 31 (1995).
16
17
18
19
20
21
22
23
24
25
26
27
28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1  **OBJECTION:**

2      MGA Parties object to this proposed instruction because it is not a full

3  statement of the law.  This instruction, if given, should include the sentences: "The

4  burden is on Mattel to prove waiver by clear and convincing evidence that does not

5  leave the matter to speculation.  When in doubt, the jury should decide against the

6  existence of a waiver."  *Medico-Dental etc. Co. v. Horton & Converse*, 21 Cal. 2d

7  411, 432 (1942).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 54

## AFFIRMATIVE DEFENSE—ESTOPPEL

Mattel claims that MGA is estopped from asserting any right to relief against Mattel. Estoppel arises when a party's conduct misleads another to believe that a right will not be enforced and causes that party to act to its detriment in reliance upon this belief. Estoppel requires that the party to be estopped (1) must know the facts, (2) intend that its conduct shall be acted upon or so act that the party asserting the estoppel has a right to believe it is so intended, (3) the party asserting estoppel must be ignorant of the true facts, and (4) that party must rely upon the former's conduct to his injury.

To prevail on the affirmative defense of estoppel, Mattel must prove by a preponderance of the evidence that (1) MGA was apprised of the facts of Mattel's alleged misconduct; (2) MGA intended that its conduct would be acted upon, or acted in such a manner that Mattel had a right to believe it was so intended; (3) Mattel was ignorant as to the true state of facts; and (4) Mattel relied upon MGA's conduct and has been harmed as a result.

**Authority:** *Strong v. County of Santa Cruz*, 15 Cal. 3d 720, 725 (1975); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1225 (C.D. Cal. 2007); *Novell, Inc. v. Weird Stuff, Inc*, 1994 WL 16458729, at *13 (N.D. Cal. Aug. 2, 1993).

**OBJECTION:**

The MGA Parties object to this instruction on the grounds that it is not party neutral.  This instruction should be written so as to apply to estoppel against either Mattel or MGA.

# MATTEL'S SPECIAL JURY INSTRUCTION NO. 55
## AFFIRMATIVE DEFENSE—ACQUIESCENCE

Mattel claims that MGA is barred from asserting any right to relief against Mattel based upon the doctrine of acquiescence.  Acquiescence limits a party's right to bring suit following an affirmative act by the party that conveys implied consent to another.

To prevail on the affirmative defense of acquiescence, Mattel must prove by a preponderance of the evidence that (1) MGA actively represented that it would not assert a right or a claim against Mattel; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused Mattel undue prejudice.

**Authority:**  Novell Inv. v. Weird Stuff, Inc., 1994 WL 16458729, at *13 (N.D. Cal. 1993); Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc., 621 F.3d 981, 988-89 (9th Cir. 2010).

**OBJECTION:**

MGA Parties object to this proposed jury instruction because it is not applicable to the claims at issue in this case.  The cases relied upon by Mattel make clear that acquiescence is a common law defense applicable only to copyright infringement claims.  As MGA has asserted no such claims, this proposed instruction is inappropriate.

1   **MATTEL'S SPECIAL JURY INSTRUCTION NO. 56**

2   **AFFIRMATIVE DEFENSE—ABANDONMENT**

3

4       Mattel claims that MGA has abandoned any right to relief against Mattel.

5   Abandonment requires a defendant to show a clear, unequivocal and decisive act

6   demonstrating a waiver of the plaintiff's property rights.

7       To prevail on the affirmative defense of abandonment, Mattel must prove by

8   a preponderance of the evidence that MGA engaged in a conduct demonstrating a

9   waiver of its rights with respect to MGA's allegations against Mattel.

10

11      **Authority:**   *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1146 (9th Cir.

12  2010).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1    **<u>OBJECTION:</u>**

2        The MGA Parties object to this instruction on the grounds that it does not

3    explain what Mattel contends that MGA abandoned, or what sort of conduct is

4    consistent with an intent to abandon.  The MGA Parties point the Court to 9th Cir.

5    Civ. Jury Instr. 17.19 (2007) for a more full and clear description of abandonment.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

**Remedies Instructions for MGA's Claims**

**MATTEL'S SPECIAL JURY INSTRUCTION NO. 57**
**LIMITATION ON DAMAGES—LOSS CAUSED BY TRADE SECRET**
**MISAPPROPRIATION**

MGA's claim against Mattel for alleged misappropriation of trade secrets is the only claim MGA has against Mattel that may, if MGA is able to prove all the elements of that claim, entitle MGA to recover damages from Mattel.  Accordingly, MGA is entitled to recover damages only if it proves that Mattel is liable for trade secret misappropriation.

If you find that Mattel is liable for trade secret misappropriation, you must decide what damages to award MGA.  You may not, in awarding MGA damages for trade secret misappropriation, award damages for alleged acts of wrongdoing other than, or different from, trade secret misappropriation.  Instead, your award must be limited to the damages to which MGA is entitled, if any, for the alleged trade secret misappropriation.  If you find that MGA suffered harm caused by acts or conduct of Mattel other than misappropriation of trade secrets, then you may not award MGA damages based on such conduct.

**Authority:**  Cal. Civ. Code § 3426.3  ("A complainant may recover damages for the actual loss caused by misappropriation.  A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.")

**OBJECTION:**

MGA Parties object to this jury instruction because it is not an accurate reflection of the law.  For example, it does not explain, as set forth in Cal. Civ. Code § 3426.3, that a complainant alleging misappropriation of trade secrets may recover both for actual damages and for the unjust enrichment caused by misappropriation.

This instruction also is objectionable because it is likely to confuse the jury about the available of economic relief on the unfair competition claim.  MGA is entitled to restitutionary relief.  The jury is unlikely to perceive the final legal distinction Mattel seeks to make with this instruction.

Further, this jury instruction is improper because it is not party-neutral. While both parties have made claims for trade secret misappropriation, Mattel seeks, with this instruction, to limit only MGA's ability to recover on its trade secret misappropriation claim.  MGA Parties directs the Court to page 148 of their Amended Proposed Jury Instructions, at which MGA Parties set forth a proposed instruction that is both party-neutral and a full and correct statement of the applicable law.

1
2
3

## MATTEL'S SPECIAL JURY INSTRUCTION NO. 58
## LIMITATION ON DAMAGES—NO DAMAGES BASED ON UNFAIR COMPETITION

4

5      Even if MGA proves that Mattel is liable for unfair competition, MGA is not

6  entitled to recover damages as a form of relief.  The only monetary recovery to

7  which MGA may be entitled as a remedy for its unfair competition claim is

8  "restitution."  "Restitution" is the return of any money or property in which MGA

9  has a vested interest and that MGA lost, and Mattel directly gained, as a result of

10 Mattel's alleged unfair competition.  Such restitution may not include any profits

11 earned by Mattel that MGA may claim were earned as a result of Mattel's unfair

12 competition.  Nor may restitution include any profits MGA claims it lost.

13 Restitution only includes the value of any money or property, if any, that MGA

14 provided to Mattel as a consequence of the alleged unfair competition.

15

16      **Authority:**  Cal. Bus. & Prof. Code § 17203; *Korea Supply Co. v Lockheed*

17 *Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003) (restitution under the UCL is limited

18 to "classic restitution"; that is, "money or property that defendants took directly

19 from plaintiff" or money or property in which [plaintiff] has a vested interest.");

20 *Citizens of Humanity, LLC v. Costco Wholesale Corp.*, 171 Cal. App. 4th 1, 22

21 (2009) (harm to goodwill not capable of restitution); *Inline, Inc. v. A.V.L. Holding*

22 *Co.*, 125 Cal. App. 4th 895, 904-905 (2005) (rejecting various forms of requested

23 recovery because not restitutionary, including consequential losses and fair market

24 value of property sold); *Pegasus Satellite Television, Inc. v. DirecTV, Inc.*, 318 F.

25 Supp. 2d 968, 979 (C.D. Cal. 2004) (one competitor does not have a vested interest

26 in the profits of another)

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)

1  **OBJECTION:**

2       This jury instruction is improper because it is not party-neutral.  While both

3  parties have made claims for unfair competition, Mattel seeks, with this instruction,

4  to limit only MGA's ability to recover on its unfair competition claim.  Mattel also

5  fails adequately to set forth the proper standard for restitutionary relief in this

6  instruction.  MGA Parties direct the Court to page 237 of their Amended Proposed

7  Jury Instructions, at which MGA Parties set forth a proposed instruction that is both

8  party-neutral and a clearer statement of the applicable law.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended & Consolidated Objs of MGA Parties & Gustavo
Machado to Mattel's 4th Amended Prop Jury Instructions
Case No. CV 04-9049 DOC (RNBx)