1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
2    John B. Quinn (Bar No. 090378)
     (johnquinn@quinnemanuel.com)
3    William C. Price (Bar No. 108542)
     (williamprice@quinnemanuel.com)
4    Michael T. Zeller (Bar No. 196417)
     (michaelzeller@quinnemanuel.com)
5  865 South Figueroa Street, 10th Floor
   Los Angeles, California  90017-2543
6  Telephone:   (213) 443-3000
   Facsimile:    (213) 443-3100
7
8  Attorneys for Mattel, Inc., and Mattel de
   Mexico, S.A. de C.V.
9
               UNITED STATES DISTRICT COURT
10
              CENTRAL DISTRICT OF CALIFORNIA
11
                    SOUTHERN DIVISION
12

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 DOC (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | Hon. David O. Carter |
| MGA ENTERTAINMENT, INC., a California corporation, et al., | **MATTEL'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS** |
| Defendants. | |
| AND CONSOLIDATED ACTIONS | Pre-trial Conference:   January 4, 2011<br>Trial Date:              January 18, 2011 |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

505.07975/3941364.1

1         Plaintiffs Mattel, Inc. and Mattel de Mexico, S.A. de C.V. (collectively,

2   "Mattel"), hereby object to the disputed proposed jury instructions submitted by

3   defendants MGA Entertainment, Inc., MGAE de Mexico S.R.L. de C.V., MGA

4   Entertainment (HK) Limited, and Isaac Larian (collectively, the "MGA Parties").

5   Dkt. No. 9620.  Mattel objects to the MGA Parties' tardy submission of additional

6   and modified proposed instructions today, the due date for objections, and reserves

7   the right to submit modified and additional objections in response to the same.

8   Dkt. No. 9720.  Mattel will separately object to the disputed proposed injury

9   instructions submitted by defendant Carlos Gustavo Machado Gomez

10  ("Machado").  Dkt. No. 9621.  Mattel requests and reserves the right to amend,

11  modify, withdraw and/or supplement the following objections during the trial,

12  including based upon subsequent rulings and the evidence and theories proffered

13  by the parties during the course of the trial.

14

15  DATED:  January 28, 2011        QUINN EMANUEL URQUHART &
                                      SULLIVAN. LLP

16

17                          By  */s/ Michael T. Zeller*

18                             Michael T. Zeller
                           Attorneys for Mattel, Inc. and Mattel de

19                             Mexico. S.A. de C.V.

20

21

22

23

24

25

26

27

28

1
2
3

## MATTEL'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

## GENERAL OBJECTIONS

4

5
6

Each of the following General Objections is hereby incorporated in full into the objections to specific jury instructions set forth below.

7
8
9

1.      Mattel objects generally to defendants' proposed instructions to the extent they materially deviate, with no good cause, from applicable model instructions and are argumentative or biased.

10
11
12
13
14

2.      Mattel objects to defendants' proposed jury instructions on the ground that they incorporate erroneous statements of law and are inconsistent with applicable legal standards as set forth in the briefing on Mattel's motions for summary judgment, motions *in limine* and proposed jury instructions, which are all hereby incorporated herein by reference.

15
16

3.      Mattel reserves the right to assert additional General and Specific Objections to defendants' proposed jury instructions.

17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANTS' PROPOSED INSTRUCTION RE CLAIMS AND DEFENSES**

### 1.2

### CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

[Insert to come following meet and confer]

**Authority:**  9th Cir. Civ. Jury Instr. 1.2 (2007)

**MATTEL'S OBJECTIONS:**

1.      Defendants' proposed instruction is incomplete and unnecessary. Despite Mattel's efforts to meet and confer, MGA has never indicated what language it seeks in this instruction.  Further, the Court has already summarized the parties' claims by reading a statement of the case to the jury, and no further introductory statement is necessary.

**DEFENDANTS' PROPOSED INSTRUCTION RE TWO OR MORE PARTIES**

**1.5**

**TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS**

You should decide the case as to each party separately.  When there are multiple claimants or multiple defendants, you must consider the elements of the claims and defenses separately for each claimant and each defendant.  Unless otherwise stated, the instructions apply to all parties.

**Authority:**  9th Cir. Civ. Jury Instr. 1.5 (2007)

**MATTEL'S OBJECTIONS:**

1.      Defendants' proposed instruction is unnecessary and potentially confusing.  This instruction is unnecessary because (i) the claim-specific instructions make clear how and to which parties the jury must apply the elements of the claims; (ii) Mattel's proposed verdict form also makes clear which claims apply to which parties.

2.      The defendants' proposed instruction departs from the Ninth Circuit Model Instruction.  The sentence—"When there are multiple claimants or multiple defendants, you must consider the elements of the claims and defenses separately for each claimant and each defendant"—does not appear in Ninth Circuit Model Instruction 1.5, is unnecessary and potentially confusing.

3.      To the extent the Court decides, over Mattel's objections, to give any "Two or More Parties" instruction, Mattel requests that the Court give Ninth Circuit Model Instruction 1.5 without modification, as follows:

1

*1.5*

2

*TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS*

3

    *You should decide the case as to each party separately.  Unless otherwise*

4

*stated, the instructions apply to all parties.*

5

    *Authority:  9th Cir. Civ. Jury Instr. 1.5 (2007)*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' PROPOSED INSTRUCTION RE DIRECT AND CIRCUMSTANTIAL EVIDENCE**

**1.9**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.

Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.

Circumstantial evidence is proof of one or more facts from which you could find another fact. By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**Authority:** 9th Cir. Civ. Jury Instr. 1.9 (2007)

**MATTEL'S OBJECTIONS:**

1. Defendants' proposed instruction improperly seeks to modify the Ninth Circuit Model Instruction by including an "illustrative example" drawn from the commentary of Ninth Circuit Model Instruction 1.5. Unlike alternative language found in some model instructions that is contained in the text of the instruction and identified as optional with brackets, the example proposed by Defendants appears solely in the commentary. Defendants' proposed "garden hose" instruction is not grounded in the facts or issues of this case, and is likely to confuse the jury rather than assist it. As between the parties' similar versions of

1  this instruction, Mattel's version is preferable because it is more concise and omits

2  the unnecessary and inapplicable example.

3         2.     Defendants' proposed instruction is biased against circumstantial

4  evidence.  In Defendants' example, the direct evidence (a turned on garden hose) is

5  stronger evidence for why the sidewalk is wet than the circumstantial evidence (the

6  wet sidewalk suggesting that it may have rained); this improperly implies that

7  circumstantial evidence is more likely to be misleading and should be given less

8  weight.  *See* 9th Cir. Civ. Jury Instr. 1.9 ("The law makes no distinction between

9  the weight to be given to either direct or circumstantial evidence.").  Defendants'

10 instruction states that "before you decide that a fact has been proved by

11 circumstantial evidence, you must consider all the evidence in the light of reason,

12 experience, and common sense," but does not contain a reciprocal instruction

13 regarding direct evidence.   This too is likely to bias the jury against circumstantial

14 proof.

15        3.     Mattel requests that the Court adopt Mattel's proposed instruction:

16 Ninth Circuit Model Instruction 1.9 (Direct and Circumstantial Evidence), without

17 modification.  *See* Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No.

18 9683) at 5.

19

20

21

22

23

24

25

26

27

28

1  **DEFENDANTS' PROPOSED INSTRUCTION RE OUTLINE OF TRIAL**

2  **1.19**

3  **OUTLINE OF TRIAL**

4  The trial will proceed in the following way:

5  First, each party may make an opening statement.  An opening statement is

6  not evidence.  It is simply an outline to help you understand what that party

7  expects the evidence will show.  A party is not required to make an opening

8  statement.

9  Mattel and Mattel Mexico will then present evidence, and counsel for the

10  other parties will have the opportunity to cross-examine.  Then MGA

11  Entertainment, Inc., MGAE de Mexico, MGA Entertainment (HK) Ltd., Mr.

12  Larian, and Mr. Machado will present evidence, and counsel for Mattel and Mattel

13  Mexico will have the opportunity to cross-examine.

14  After the evidence has been presented, I will instruct you on the law that

15  applies to the case and the attorneys will make closing arguments.

16  After that, you will go to the jury room to deliberate on your verdict.

17  **Authority:**  9th Cir. Civ. Jury Instr. 1.19 (2007) (modified)

18

19  **MATTEL'S OBJECTIONS:**

20  1.  Ninth Circuit Model Instruction 1.19 is designed to be a pre-trial

21  instruction.  If the Court is inclined to give any instruction on this issue at this

22  stage, Mattel requests that the Court adopt Mattel's proposed version of this

23  instruction: Ninth Circuit Model Instruction 1.19 (Outline of Trial).  *See* Mattel's

24  Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 1.  Defendants'

25  proposed instruction unnecessarily deviates from Ninth Circuit Model Instruction

26  1.19, including in that defendants needlessly change the phrase "may cross-

27  examine" to "will have the opportunity to cross-examine" and the phrase "may

28  present evidence" to "will present evidence."

1 | **DEFENDANTS' PROPOSED INSTRUCTION RE IMPEACHMENT**
2 | **EVIDENCE—WITNESS**

3 | **2.8**

4 | **IMPEACHMENT EVIDENCE—WITNESS**

5 | The evidence that a witness has lied under oath on a prior occasion or given
6 | inconsistent testimony under oath may be considered, along with all other
7 | evidence, in deciding whether or not to believe the witness and how much weight
8 | to give to the testimony of the witness and for no other purpose.

9 | **Authority:** 9th Cir. Civ. Jury Instr. 2.8 (2007)

10 |

11 | **MATTEL'S OBJECTIONS:**

12 | 1. Defendants' proposed instruction is contrary to law because it
13 | suggests that a prior inconsistent statement given under oath in a prior proceeding
14 | may be used only for impeachment "and for no other purpose." *See* Fed. R. Evid.
15 | 801(d)(1). Although prior *unsworn* inconsistent statements by a *non-party witness*
16 | may be used only for impeachment, prior inconsistent statements made under oath
17 | during a deposition or previous trial are admissible for all purposes. *See Pope v.*
18 | *Savings Bank of Puget Sound*, 850 F.2d 1345, 1356 (9th Cir. 1988) ("Under Fed.
19 | R. Civ. P. 32(a)(2) and Fed. R. Evid. 801(d)(1), prior inconsistent statements given
20 | in a prior proceeding under oath may come in as substantive evidence."); *Palmer v.*
21 | *Pioneer Inn Assocs., Ltd.*, 338 F.3d 981, 990 (9th Cir. 2003) (citing Fed. R. Evid.
22 | 801(d)(1)(A) and holding that "a statement made in a deposition is not hearsay if
23 | the declarant's trial testimony is inconsistent with the statement and the declarant
24 | is subject to cross-examination").

25 | 2. Defendants' proposed instruction is incomplete because it fails to
26 | recognize that an admission by a party opponent under Rule 801(d)(2), including a
27 | prior sworn or unsworn statement by that party, is admissible as substantive
28 | evidence. *See United States v. DiSantis*, 565 F.3d 354, 360 (7th Cir. 2009) ("The

1   Rules of Evidence plainly distinguish between the prior inconsistent statements of

2   non-party witnesses and of party-opponents like DiSantis.  The former are

3   admissible as non-hearsay, substantive evidence only if 'subject to cross-

4   examination' and 'given under oath.'  The latter are admissible as substantive

5   evidence even if not given under oath.") (internal citation omitted).  Even a non-

6   employee can make admissions that are non-hearsay and admissible against a

7   party.  *See Harris v. Vector Marketing Corp.*, 656 F. Supp. 2d 1128, 1133 (N.D.

8   Cal. 2009) (recognizing that "[a]gent and independent contractor are not mutually

9   exclusive categories" and holding that "there is sufficient evidence of agency to

10  invoke the party-opponent rule.").

11          3.     Mattel requests that the Court adopt Mattel's proposed instruction:

12  Ninth Circuit Model Instruction 2.8 (Impeachment Evidence—Witness).  *See*

13  Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 7.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **DEFENDANTS' PROPOSED INSTRUCTION RE AGENT AND**
2  **PRINCIPAL—DEFINITION**
3                                 **4.4**
4                **AGENT AND PRINCIPAL—DEFINITION**
5          An agent is a person who performs services for another person under an
6  express or implied agreement and who is subject to the other's control or right to
7  control the manner and means of performing the services.  The other person is
8  called a principal.
9          **Authority:**  9th Cir. Civ. Jury Instr. 4.4 (2007)
10
11  **MATTEL'S OBJECTIONS:**
12          1.     Although federal agency law applies to federal claims, *see Harris v.*
13  *Itzhaki*, 183 F.3d 1043, 1054 (9th Cir. 1999) (federal agency law applies to federal
14  FHA claim), state agency law applies to Mattel's state law claims.  *See Hingson v.*
15  *Pacific Southwest Airlines*, 743 F.2d 1408, 1416 (9th Cir. 1984) (applying
16  California agency law in resolving state law claims for assault and battery, false
17  imprisonment, and the use of unnecessary force and violence); *see also Diaz v.*
18  *Allstate Ins. Group*, 185 F.R.D. 581, 592 (C.D. Cal. 1998) (applying state agency
19  law in diversity action); *Castagnola Fleet Mgm't v. Sea-Pac Ins. Managers, Inc.*,
20  2010 WL 883842, at *3 (S.D. Cal. March 8, 2010) (same).  Mattel's theories of
21  ownership and liability premised on agency are based on state law principles, so
22  use of the CACI model instructions is appropriate.  Mattel has offered an
23  instruction regarding the existence of agency relationships which is based on CACI
24  3705 without modification, and should be used in lieu of this instruction.  *See*
25  Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 76.
26          2.     Moreover, Mattel's proposed instructions address relevant principles
27  of agency in the specific contexts of (i) Mattel's claim to ownership of Bryant's
28  works by virtue of the agency relationship between Mattel and Bryant and (ii)

1  defendants' liability for their agents' misappropriation.  *See* Mattel's Fourth

2  Amended Proposed Jury Instructions (Dkt. No. 9683) at 26, 74, 76.  Including this

3  proposed stand-alone, background instruction, without connection to specific

4  claims or issues, may be confusing to the jury.

1  **DEFENDANTS' PROPOSED INSTRUCTION RE AGENT—SCOPE OF**

2  **AUTHORITY DEFINED**

3  **4.5**

4  **AGENT—SCOPE OF AUTHORITY DEFINED**

5       An agent is acting within the scope of authority if the agent is engaged in the

6  performance of duties which were expressly or impliedly assigned to the agent by

7  the principal.

8       **Authority:**  9th Cir. Civ. Jury Instr. 4.5 (2007)

9

10  **MATTEL'S OBJECTIONS:**

11       1.      Defendants' proposed instruction is not applicable because it relies on

12  Ninth Circuit Model Instruction 4.5 rather than CACI 3720, which correctly

13  reflects California law regarding  the scope of an agent's authority.  *Bailey v. Filco,*

14  *Inc.*, 48 Cal. App. 4th 1552, 1559 (1996).  In contrast to Ninth Circuit Model

15  Instruction 4.5, which only refers to assigned duties, CACI 3720 correctly

16  recognizes that the scope of authority extends to reasonably related and/or

17  reasonably foreseeable conduct under California law.  *See Debbie Reynolds Prof.*

18  *Rehearsal Studios v. Sup. Ct.*, 25 Cal. App. 4th 222, 227 (1994) ("The question

19  turns on whether or not the act performed was either required by or incident to an

20  employee's duties, or the employee's misconduct could be reasonably foreseen by

21  the employer in any event.")  Mattel's theories of ownership and liability premised

22  on agency are based on state law principles, so if a stand-alone instruction on scope

23  of authorization is given, it should be based on CACI 3720.  However, a stand-

24  alone instruction is unnecessary, Mattel submits, because these issues are

25  addressed in context in Mattel's proposed "Ownership of Inventions—Agency"

26  instruction.  *See* Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No.

27  9683) at 26.

28

2.      Should the Court wish to give a stand-alone instruction on this issue, the introductory sentence in CACI 3720 should be modified to delete reference to "harm" because it is vague and confusing—Mattel is relying on agency principles to establish both ownership and liability in this case.  While harm may be relevant to liability issues, Mattel does not need to prove that it was harmed when Bryant acted within the scope of authorization and created Bratz in order to establish ownership of Bratz works under an agency theory.

3.      To the extent the Court determines, over Mattel's objections, to give an instruction on the issue of Agent—Scope of Authority, Mattel requests that the Court give the instruction below, which is based on CACI 3720 as modified.

*CACI 3720*

*Scope of Authorization*

*The party asserting the existence of a principal-agent relationship has the burden of proving it existed.*

*Conduct is within the scope of authorization if:*

*(a) It is reasonably related to the kinds of tasks that the agent was employed to perform; or*

*(b) It is reasonably foreseeable in light of the employer's business or the agent's job responsibilities.*

***Authority:*  *CACI 3720 (modified); California Viking Sprinkler Co. v. Pacific Indemnity Co., 213 Cal. App. 2d 844, 850 (1963)*

1  **DEFENDANTS' PROPOSED INSTRUCTION RE KNOWLEDGE OF**
2  **AGENT IS IMPUTED TO PRINCIPAL**

3

4  **KNOWLEDGE OF AGENT IS IMPUTED TO PRINCIPAL**

5  In general, knowledge acquired by an agent within the course and scope of
6  his or her duties is imputed to the principal, that is, the principal is assumed to
7  know what the agent knows.

8  **Authority:**  Cal. Civ. Code § 2332; *Santillan v. Roman Catholic Bishop of*
9  *Fresno*, 163 Cal. App. 4th 4, 10-11 (2008).

10

11 **MATTEL'S OBJECTIONS:**

12  1.  This instruction is not based on a model instruction and is misleading
13 because it implies that the only knowledge of an agent that is imputed to the
14 principal is knowledge acquired by the agent in the course and scope of his duties.
15 In fact, both principal and agent are generally deemed to have notice of whatever
16 either (i) has notice of and (ii) ought in good faith and in the exercise of ordinary
17 care to communicate to the other.  *See Clarendon Nat. Ins. Co. v. Insurance Co. of*
18 *the West*, 442 F. Supp. 2d 914, 936 (E.D. Cal. 2006) ("As against a principal, both
19 principal and agent are deemed to have notice of whatever either has notice of, and
20 ought, in good faith and the exercise of ordinary care and diligence, to
21 communicate to the other."); *Maron v. Swig*, 115 Cal. App. 2d 87, 90 (1952) ("The
22 fact that the knowledge acquired by the agent was not actually conveyed to the
23 principal does not prevent the operation of the rule."); *Floorman v. Myers*, 1 Cal.
24 App. 2d 719, 722 (1934) ("[T]he principal is affected by the knowledge which an
25 agent has a duty to disclose."); *McKenney v. Ellsworth*, 165 Cal. 326, 329 (1913)
26 ("A principal is bound by the knowledge of his agent, acquired in the course of the
27 agency; the rule resting upon the presumption that the agent, as [is] duty bound,
28 communicated to the principal the facts learned by him."); *San Diego Hospice v.*

*County of San Diego*, 31 Cal. App. 4th 1048, 1056 (1995) (California courts "impute[] knowledge to the defendant based on information actually known to existing agents or employees"). Defendants' instruction misstates Cal. Civ. Code § 2332, which provides: "Notice to agent, when notice to principal. As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other." Defendants' modification of the statutory language renders this instruction erroneous.

2.     Defendants' instruction is incomplete because it does not address imputation of knowledge acquired before the agency relationship is established. Generally, knowledge obtained before commencement of the employment relationship is imputed to the employer "when that knowledge can reasonably be said to be present in the mind of the agent while acting for the principal." *O'Riordan v. Federal Kemper Life Assurance*, 36 Cal. 4th 281, 288 (2005) ("The principal is charged with knowledge which his agent acquires before the commencement of the relationship" when that test is satisfied); *see also Columbia Pictures Corp. v. DeToth*, 87 Cal. App. 2d 620, 630 (1948) (same). In *Santillan v. Roman Catholic Bishop of Fresno*, 163 Cal. App. 4th 4 (2008), which defendants cite as support, the issue was whether the knowledge of a "low-level employee" could be imputed to his employer. 163 Cal. App. 4th at 11 n.8.

3.     For reasons previously explained in Mattel's objection to MGA's proposed instruction concerning "Agent and Principal—Definition," Defendants' proposed instruction is confusing because it provides a generic legal standard that is not tailored to the specific issues before the jury.

4.     To the extent the Court decides, over Mattel's objections, to give any instruction, Mattel requests that the Court give the following instruction:

*KNOWLEDGE OF AGENT IMPUTED TO PRINCIPAL*

*As against a principal, such as a company, both the principal (the company) and its agent (its employee) are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other.  So long as the agent or employee was under a duty to disclose certain information, the principal is bound by the agent's knowledge of that information whether or not the agent communicated it to the principal.  The principal is also charged with knowledge which his agent acquires before the commencement of the relationship when that knowledge can reasonably be said to be present in the mind of the agent while acting for the principal.*

**Authority:**  *Clarendon Nat. Ins. Co. v. Insurance Co. of the West, 442 F. Supp. 2d 914, 936 (E.D. Cal. 2006); O'Riordan v. Federal Kemper Life Assurance, 36 Cal. 4th 281, 288 (2005); McKenney v. Ellsworth, 165 Cal. 326, 329 (1913).*

MATTEL'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1   **DEFENDANTS' PROPOSED INSTRUCTION RE INDEPENDENT**
2   **CONTRACTOR—DEFINITION**
3                           **4.11**
4               **INDEPENDENT CONTRACTOR—DEFINITION**
5           An independent contractor is a person who performs services for another
6   person under an express or implied agreement and who is not subject to the other's
7   control, or right to control, the manner and means of performing the services.
8           One who engages an independent contractor is not liable to others for the
9   acts or omissions of the independent contractor.
10          **Authority:**  9th Cir. Civ. Jury Instr. 4.11 (2007)
11
12  **MATTEL'S OBJECTIONS:**
13          1.      Defendants' proposed instruction is inapplicable because it is based
14  on Ninth Circuit Model Instruction 4.11, which is inconsistent with CACI 3705
15  and California law.  "One who contracts to act on behalf of another and subject to
16  the other's control, except with respect to his physical conduct, is both an agent
17  and an independent contractor."  *Meyers Bros. Parking Sys.*, 54 Cal. App. 3d at
18  138.  Defendants' instruction that "[o]ne who engages an independent contractor is
19  not liable to others for the acts or omissions of the independent contractor" is not
20  an accurate reflection of California agency law.  *See Diaz v. Allstate Ins. Group*,
21  185 F.R.D. 581, 592 (C.D. Cal. 1998) ("Even still, Allstate may be liable for the
22  acts of its independent contractors when an agency relationship is demonstrated.");
23  *see also City of Los Angeles v. Meyers Bros. Parking Sys., Inc.*, 54 Cal. App. 3d
24  135, 138 (1975).  Simply characterizing someone as an independent contractor
25  does not negate his status as an agent.  *Television Events & Marketing, Inc. v.*
26  *Amcon Distributing Co.*, 526 F. Supp. 2d 1118, 1128 (D. Hawai'i 2007).
27          2.      Defendants' proposed instruction is misleading in its implication that
28  MGA or Larian may not be directly liable for aiding and abetting breaches of duty

1   of loyalty, or under theories of vicarious or contributory liability, merely because

2   the individuals they aided and abetted were not MGA employees at the time.

3   MGA's liability for such wrongs can be based on the wrongdoing of the former

4   Mattel employees as agents, as discussed above, and also based on derivative

5   theories such as aiding and abetting even if they were not agents.  *See Richard B.*

6   *LeVine, Inc. v. Higashi*, 131 Cal. App. 4th 566, 579 (2005) ("Liability based on an

7   aiding and abetting or conspiracy theory is also 'derivative,' i.e., liability is

8   imposed on one person for the direct acts of another.").  The instruction that "[o]ne

9   who engages an independent contractor is not liable to others for the acts or

10   omissions of the independent contractor" could confuse the jury as to the validity

11   of such derivative theories of liability.

12        3.     For reasons previously explained in Mattel's objection to MGA's

13   proposed instruction concerning "Agent and Principal—Definition," Defendants'

14   proposed instruction is confusing because it provides a generic legal standard that

15   is not tailored to the specific issues before the jury.

16        4.     To the extent the Court decides, over Mattel's objections, to give any

17   instruction, Mattel requests that the Court give the following instruction:

18

19                   *4.11*

20        *INDEPENDENT CONTRACTOR—DEFINITION*

21       *An independent contractor is a person who performs services for another*

22   *person under an express or implied agreement and who is not subject to the*

23   *other's control, or right to control, the manner and means of performing the*

24   *services.*

25       *One who engages an independent contractor is generally not liable to others*

26   *for the acts or omissions of the independent contractor.  However, one who*

27   *engages an independent contractor is liable for the acts or omissions of the*

28   *independent contractor if an agency relationship existed.  Furthermore, a party*

1  *can be directly liable for claims such as aiding and abetting breach of the duty of*

2  *loyalty or intentional interference with contract even if the individual who*

3  *breached the duty of loyalty or breached the contract became an independent*

4  *contractor of the party.*

5      ***Authority:***  *9th Cir. Civ. Jury Instr. 4.11 (2007) (modified); See Richard B.*

6  *LeVine, Inc. v. Higashi, 131 Cal. App. 4th 566, 579 (2005); Diaz v. Allstate Ins.*

7  *Group, 185 F.R.D. 581, 592 (C.D. Cal. 1998);* City of Los Angeles v. Meyers Bros.

8  Parking Sys., Inc., 54 Cal. App. 3d 135, 138 (1975); *Television Events &*

9  *Marketing, Inc. v. Amcon Distributing Co., 526 F. Supp. 2d 1118, 1128 (D.*

10  *Hawaiʻi 2007)*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 **DEFENDANTS' PROPOSED INSTRUCTION RE CONTRACT**
2 **INTERPRETATION—INTRODUCTION**

3                                      **300**

4                **CONTRACT INTERPRETATION—INTRODUCTION**

5       "When Carter Bryant went to work at Mattel in 1999, he signed an employee
6 invention assignment agreement.  This agreement is a contract between Mattel and
7 Mr. Bryant, and it defines the rights and obligations of Mattel and Mr. Bryant on
8 the subjects it covers.

9       Mr. Bryant is not a party to this case.  You will not be considering any
10 disputes between Mattel and Mr. Bryant, but you will be required to decide certain
11 issues about the contract between Mattel and Mr. Bryant in order to resolve some
12 of the issues in dispute between Mattel and MGA.

13      Mattel claims that it is the legal owner of the "dummy doll," a preliminary
14 sculpt, the name "Bratz," the name "Jade," the name "Moxie," and Mr. Bryant's
15 sketches under the contract between Mattel and Mr. Bryant.  MGA Entertainment,
16 Inc. contends that Mr. Bryant is the owner of these items, and that he had the right
17 to sell them to MGA Entertainment, Inc.

18      You will be asked to decide whether Mr. Bryant was the owner of the
19 "dummy doll," a preliminary sculpt, the name "Bratz," the name "Jade," the name
20 "Moxie," and Carter Bryant's sketches.  To do this, you will be required to decide
21 the meaning of certain contract language.  The instructions I give you will include
22 instructions on the law you must follow when you decide the meaning of the
23 disputed contract language."

24      **Authority:**  CACI No. 2200 (2009) (modified)

25

26 **MATTEL'S OBJECTIONS:**

27      1.      Defendants' citation to CACI 2200 (Inducing Breach of Contract) as
28 authority for this proposed instruction is misleading.  This proposed instruction

1   bears no resemblance to, and appears to contain no language or provisions

2   contained in, CACI 2200.  Instead, this is a special instruction that misleadingly

3   describes Mattel's contract-based claims.  This instruction is unnecessary because

4   it does not provide the elements or standards that apply to any of Mattel's claims,

5   but rather contains argument and factual information that is improper for a jury

6   instruction, including information about Carter Bryant's role in the trial.  Given the

7   number of jury instructions that are necessarily required by the parties' claims and

8   defenses, this unnecessary and unhelpful instruction should not be given.

9           2.     Defendants' proposed instruction mischaracterizes, and understates,

10  Mattel's claims based on Bryant's Bratz-related works by limiting those works to a

11  "'dummy doll,' a preliminary sculpt, the name 'Bratz,' the name 'Jade,' the name

12  'Moxie,' and Carter Bryant's sketches."  Mattel claims ownership of all Bratz-

13  related drawings, designs, sculpts, characters, ideas, concepts, names, and any

14  other works that were created by Carter Bryant, in whole or in part, while he was

15  employed by Mattel.  Defendants' attempt to limit Mattel's claims to a few

16  specified works, including by characterizing those works with derogatory terms

17  such as "dummy doll," "sketches," and "preliminary," is misleading and would be

18  prejudicial to Mattel.

19          3.     Defendants' proposed instruction is misleading to the extent it

20  suggests that Mattel's sole claim to ownership of Bryant's Bratz-related works is

21  based on the Inventions Agreement.  To the contrary, as Mattel explains in its

22  proposed instructions regarding its claim to ownership of those works, Mattel

23  claims ownership based on the Inventions Agreement, the work-for-hire doctrine,

24  Bryant's agency relationship with Mattel, and other of Bryant's statutory,

25  contractual and common law duties to Mattel.  See Mattel's Fourth Amended

26  Proposed Jury Instructions (Dkt. No. 9683) at 9-29.  Defendants' instruction

27  ignores those other bases of claimed ownership and could therefore be confusing

28  and misleading to the jury and prejudicial to Mattel.  Indeed, the Court has rejected

1   MGA's arguments that Mattel's work for hire theory is not viable, yet MGA

2   continues to simply ignore this theory of ownership in its instructions.  *See* Order

3   on Motions *in Limine*, January 17, 2011 (Dkt. No. 9669) at 15.

4          4.     Defendants' proposed instruction is misleading and biased in favor of

5   defendants in that it informs the jury that it will be required to determine whether

6   Carter Bryant was the "owner" of the Bratz-related works identified in this

7   instruction.  That is not the question.  The relevant question is whether *Mattel*

8   "owns" the works.  To the extent Bryant's relationship to the works he created is

9   relevant, the pertinent question is whether Bryant conceived, created, made or

10  reduced to practice, in whole or in part, at any time during his employment by

11  Mattel, any of the inventions Mattel claims to own—that, unlike the language of

12  the instruction proposed by MGA, is what the Inventions Agreement expressly

13  covers.  Defendants' instruction says nothing about that and therefore would be

14  unhelpful in informing the jury of the issues it actually needs to decide.  It also is

15  confusing for defendants to assert that they contend Bryant "is the owner" of these

16  works, when defendants' position is actually that they own the works.

17         5.     Defendants' proposed instruction wrongly suggests it is for the jury to

18  decide whether the Inventions Agreement covers the sculpts and sketches that were

19  prepared by Bryant, in whole or in part, while he was a Mattel employee, even

20  though the Ninth Circuit has already held that the Inventions Agreement covers

21  such works.  *See Mattel, Inc. v. MGA Entm't, Inc*., 616 F.3d 904, 911 (9th Cir.

22  2010) ("The drawings and sculpt clearly were 'inventions' as that term is defined

23  in Bryant's employment agreement with Mattel.").

24         6.     Mattel respectfully requests that the Court give Mattel's proposed

25  instruction regarding "Ownership of Inventions—Inventions Agreement." S*ee*

26  Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 9.

27

28

**DEFENDANTS' PROPOSED INSTRUCTION RE ORAL OR WRITTEN CONTRACT TERMS**

**304**

**ORAL OR WRITTEN CONTRACT TERMS**

"Contracts may be written or oral.

The contract between Mattel and Mr. Bryant was in writing, and all of the terms of the contract are set forth in Exhibit 25.  There were no oral discussions between Mattel and Mr. Bryant about the meaning of any of the terms of the contract, no drafts of the contract were exchanged between the parties, and there are no other writings changing the terms of the contract.

The parties may present additional evidence that they believe will help you decide the meaning of the disputed contract language.  While this evidence does not reflect any changes to the terms of the contract, it may help you decide the meaning of the contract.  You may consider the evidence under the instructions I will give you and give it as much weight as you think it deserves. "

**Authority:**  CACI No. 304 (2009) (modified)


**MATTEL'S OBJECTIONS:**

1.      CACI 304 says simply that contracts may be oral or written.  It is misleading for defendants to describe this instruction as a mere "modified" version of CACI 304.  This actually is a special instruction that has no support.

2.      It is not helpful to include an instruction explaining that the Inventions Agreement was written.  This issue is not in dispute.

3.      It is misleading and biased for defendants to refer specifically to Exhibit 25, which is just one version of the Inventions Agreement in the record, and not the original version.  The text of the Inventions  Agreement as it appears on Exhibit 25 is less clear than in other versions, and the jury should not be biased or encouraged to rely on that version when the original exists—Exhibit 9924.

1    4.    The statements in this proposed instruction concerning discussions

2  about and drafts of the Inventions Agreement are statements of purported fact, not

3  of law, and they have no place in a jury instruction.  The evidence the jury hears

4  and receives will establish whether there were any relevant discussions or drafts

5  that the jury should consider in evaluating the meaning of the Inventions

6  Agreement.

7    5.    The final paragraph of this instruction is unnecessary, as it merely

8  refers generally to the fact that the parties will present evidence concerning the

9  meaning of the contract.  The statements in this paragraph will not assist the jury in

10  applying the evidence to the law nor understanding the role of extrinsic evidence.

11  To the extent instructions about how to construe the contract are helpful, Mattel

12  has offered proposed instructions based on CACI 317 (Construction of Contract as

13  a Whole); CACI 318 (Construction by Conduct); and Mattel Special Jury

14  Instruction No. 3 (Mutual Intent).  S*ee* Mattel's Fourth Amended Proposed Jury

15  Instructions (Dkt. No. 9683) at 16-21.  Those instructions should be given in place

16  of this misleading and unhelpful instruction.

17    6.    To the extent the Court decides, over Mattel's objections, to give any

18  instruction on "Oral or Written Contract Terms," Mattel requests that the Court

19  adopt the following instruction, based on CACI 304 without modification:

20

21    *CACI 304*

22    *ORAL OR WRITTEN CONTRACTS*

23    *Contracts may be written or oral.  Oral contracts are just as valid as written*

24  *contracts.*

25    ***Authority****:  CACI 304*

26

27

28

**DEFENDANTS' PROPOSED INSTRUCTION RE INTERPRETATION—DISPUTED TERM**

**314**

**INTERPRETATION—DISPUTED TERM**

Mattel and MGA dispute the meaning of the following terms in the contract between Mattel and Mr. Bryant: "inventions" and "during my employment."

Each of these contract terms is ambiguous.  The proposed interpretation by each side of each of these terms is reasonable and could be correct.  It is your responsibility to determine which meaning to give the disputed terms in accordance with the instructions I will give you.

Mattel claims that the term "inventions" includes "ideas."  MGA claims that the term "inventions" does not include "ideas." Mattel must prove that its interpretation of the term "inventions" is correct.

Mattel claims that the term "during my employment" means "at any time of day or night within the period of time I am employed at Mattel, including nights and weekends and when I am not working on a Mattel project."  MGA claims that the term "during my employment" means "while actively working on the job tasks assigned to me and for which I am paid."  Mattel must prove that its interpretation of the term is correct.

In deciding what the terms of the contract mean, you must decide what Mattel and Mr. Bryant mutually intended at the time the contract was created.  In doing so, you must not consider the undisclosed intention of either party. Only the outward manifestation of the intent of the parties may be considered.  For example, if one party understood the disputed language in a certain way, or intended that the disputed language be given a certain meaning, but did not disclose that understanding or intent to the other party before the contract was signed, you may not consider the undisclosed meaning.

1    You may consider the usual and ordinary meaning of the language used in

2  the contract.  You may also consider the circumstances surrounding the making of

3  the contract.

4    The following instructions may also help you interpret the disputed terms of

5  the contract.

6    **Authority:**  CACI No. 314 (2009) (modified)

7

8  **MATTEL'S OBJECTIONS:**

9    1.    Defendants' proposed instruction does not even quote the contract

10 language accurately and is misleading and biased.  The instruction is misleading in

11 that it suggests that Mattel claims the term "inventions" covers only "ideas."  To

12 the contrary, Mattel claims, as it explains in its proposed instruction on "Disputed

13 Terms—"Inventions," that the "term 'inventions' includes, but is not limited to, all

14 discoveries, improvements, processes, developments, designs, know-how, data

15 computer programs and formulae, whether patentable or unpatentable," and that

16 the question for the jury to decide is whether "inventions" includes Bryant's Bratz-

17 related works that Mattel claims to own.  *See* Mattel's Fourth Amended Proposed

18 Jury Instructions (Dkt. No. 9683) at 12.  Defendants' attempt to narrow the

19 question to whether "inventions" includes "ideas" is misleading and

20 mischaracterizes Mattel's claim.

21   2.    Defendants' statement that "Mattel must prove that its interpretation

22 of the term 'inventions' is correct" incorrectly suggests that the jury must find

23 against Mattel if the term "ideas" is not covered.  That is inaccurate—indeed, it

24 suggests that Mattel's claims fail in their entirety if "ideas" is not covered, which is

25 plainly wrong.

26   3.    Defendants' proposed instruction ignores that the Ninth Circuit has

27 already found that "inventions" covers doll-related drawings, designs and sculpts.

28

05.07975/3941364.1

1   *See Mattel*, 616 F.3d at 911 ("The drawings and sculpt clearly were 'inventions' as

2   that term is defined in Bryant's employment agreement with Mattel.").

3           4.    Defendants' proposed instruction mischaracterizes Mattel's claim

4   concerning the meaning of the term "at any time during my employment by the

5   Company." As Mattel explains in its proposed instruction on this issue, Mattel

6   claims that phrase means at any time between January 4, 1999 and October 20,

7   2000, Mr. Bryant's start and end dates at Mattel. S*ee* Mattel's Fourth Amended

8   Proposed Jury Instructions (Dkt. No. 9683) at 14. Defendants' attempt to narrow

9   and mischaracterize Mattel's own contentions should be rejected. Indeed, MGA

10   has not even properly quoted the text of the Inventions Agreement, choosing

11   instead to elide the words "at any time" which are used in the agreement to attempt

12   to have the Court, through its instructions, mislead the jury. In particular, MGA's

13   recitation of Mattel's purported position that "at any time during my employment

14   by the Company" means "when I am not working on a Mattel project" is biased

15   and misleading on its face.

16           5.    Defendants' recitation of their own purported position on this

17   meaning issue is also unfair and wrong. Neither the Ninth Circuit nor this Court

18   has held that the phrase "at an time during my employment" may mean "while

19   actively working on the job tasks assigned to me and for which I am paid," as

20   MGA wants the jury to believe. In fact, this instruction would encourage the jury

21   to adopt a meaning of the contract to which it is no susceptible at all—there is no

22   basis whatsoever for the claim that "at any time during my employment" actually

23   means while working on "job tasks assigned to me and for which I am paid."

24           6.    MGA's unwarranted limitation that "[o]nly the outward manifestation

25   of the intent of the parties may be considered" is confusing because it implies the

26   only "outward manifestations" the jury may consider are the parties' statements

27   rather than the parties' conduct, and it fails to explain that the relevant evidence

28   can post-date the execution of the contract. MGA's instruction is thus inconsistent

1   with established law as reflected in CACI 318 that the jury may consider the

2   conduct of the contracting parties in deciding what the contract means.  *See*

3   Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 18; *see*

4   *also Kennecott Corp. v. Union Oil Co. of Cal.*, 196 Cal. App. 3d 1179, 1189 (1987)

5   ("The conduct of the parties after execution of the contract and before any

6   controversy has arisen as to its effect affords the most reliable evidence of the

7   parties' intentions.").

8       7.   Defendants' proposed instruction that the jury cannot consider the

9   "undisclosed intent" of the parties under any circumstances is inconsistent with

10  California law holding that evidence of one party's subjective intent is admissible

11  to prove that both parties shared the same understanding regarding the meaning of

12  the contract.  *See Heston v. Farmers Ins. Group*, 160 Cal. App. 3d 402, 414-415

13  (1984) ("This general rule arose out of the objective theory of contract which

14  declared the subjective intentions of the parties immaterial because the

15  manifestation of intention was what controlled . . . . The exception to the rule

16  permits evidence of intent to assist in interpreting an ambiguity, although in the

17  case of contracts, it is a *mutual declaration of intention* which is sought to be

18  found.  Here, Heston offered the brief to show that both he and Farmers intended

19  the Agreement to mean the same thing.") (emphasis added); *see also City of*

20  *Anaheim v. Angels Baseball, L.P.*, 2008 WL 5274631, at *7 (Cal. Ct. App. Dec. 19,

21  2008) ("One party may introduce evidence of an opponent's unexpressed intent if

22  it is consistent with the first party's intent.")

23      8.   Mattel requests that the Court adopt Mattel's proposed instructions

24  regarding contract interpretation issues: CACI 317 (Interpretation—Construction

25  Of Contract As A Whole), CACI 318 (Interpretation—Construction By Conduct),

26  and Mattel Special Jury Instruction No. 3 (Interpretation—Mutual Intent).  *See*

27  Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 16-21.

28

**DEFENDANTS' PROPOSED INSTRUCTION RE "CONCEPTION" AND "REDUCTION TO PRACTICE"**

**"CONCEPTION" AND "REDUCTION TO PRACTICE"**

The terms "conception" and "reduction to practice" are technical terms in the law of inventions.  Conception is the mental part of an inventive act.  It is proved when an invention is shown in its complete form, for instance by drawings or by disclosure to another.  An invention is "reduced to practice" when the invention is actually made and is proved to work for its intended purpose.

You should use these technical definitions as the meaning of the terms "conception" and "reduction to practice" in the contract between Mattel and Mr. Bryant unless Mattel proves by a preponderance of the evidence that the parties clearly used the terms "conception" and "reduction to practice" in a different sense.

**Authority:**  CACI No. 315 (2009); Kenneth C. Bass, et. al., Model Patent Jury Instructions, (The National Jury Instruction Project, 2008)  No. 5.6; *Apotex U.S.A., Inc. v. Merck & Co.*, 254 F.3d 1031, 1035 (Fed. Cir. 2001); *Mycogen Plant Science, Inc. v. Monsanto Co.*, 243 F.3d 1316, 1330 (Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake*, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450 (Fed. Cir. 1985); *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1574 (Fed. Cir. 1985); *American Stock Exch., LLC v. Mopies*, 250 F. Supp. 2d 323 (S.D.N.Y. 2003); *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981)

**MATTEL'S OBJECTIONS:**

1.     Defendants' reliance on CACI 315 (Meaning of Ordinary Words) is misleading as this proposed instruction bears no resemblance to, and is not at all

1   supported by, CACI 315.  *See* CACI 315 ("You should assume that the parties

2   intended the words in their contract to have their usual and ordinary meaning

3   unless you decide that the parties intended the words to have a special meaning.")

4   No evidence indicates that the parties intended the terms "conceived" and "reduced

5   to practice" to have the special meanings proposed by Defendants.  On the

6   contrary, the surrounding language in the contract indicates that the parties

7   intended these common words to have their ordinary meanings.  *See King v.*

8   *Kugler*, 197 Cal. App. 2d 651, 655 (1961) ("This ordinary and popular sense is to

9   be related to the circumstances under which the words are used, having in mind the

10  purpose of the contract and the general situation which brought it into existence.")

11          2.      The plain language of the Inventions Agreement indicates that the

12  terms "conceived" and "reduced to practice" applies to all inventions that are

13  created, made, conceived or reduced to practice, not just the latter two terms as

14  MGA's instruction erroneously suggests.  *See State Farm Fire & Casualty Co. v.*

15  *Elizabeth N.*, 9 Cal. App. 4th 1232, 1236 (1992) ("We apply the clear and explicit

16  meaning of the written provisions, interpreted in their ordinary and popular sense

17  unless the parties intended a special or technical meaning by using specially

18  crafted language.").  Consistent with the ordinary and popular meaning of

19  "conceived" and "reduced to practice," the first paragraph of the Inventions

20  Agreement unambiguously states that "inventions that I ***create*** will be owned by

21  the Company."  (emphasis added).  Likewise, immediately above the signature

22  block Bryant agreed that inventions that "THE EMPLOYEE MAY ***MAKE***

23  DURING HIS OR HER EMPLOYMENT" are owned by Mattel.  (emphasis

24  added).  MGA cites no authority for the proposition that these terms used in the

25  agreement should not be considered, and no authority that the ordinary meanings

26  of the terms "conceived" and "reduced to practice" are ambiguous, or that as a

27  matter of law the parties mutually intended the terms to have technical meanings

28  associated with patent law.  The parties' joint instructions and Mattel's proposed

1  instructions already provide model instructions for the interpretation of ordinary

2  and technical words, and this is all that is necessary.  *See Reliance Life Ins. Co. v.*

3  *Jaffe*, 121 Cal. App. 2d 241, 245 (1953) ("[t]he common or usual meaning will be

4  ascribed to words used in a contract unless the context or the circumstances

5  indicate that in a particular case a special meaning should be attached to them.").

6       3.    Defendants' statement that the jury must apply the definitions of the

7  terms "conception" and "reduction to practice" as given by defendants in this

8  proposed instruction unless Mattel "proves by a preponderance of the evidence"

9  that the parties "clearly used" some other meaning misstates the applicable burden

10  of proof and is biased in favor of defendants' proposed, and misleading,

11  definitions.  In the absence of evidence to the contrary, the ordinary meaning

12  applies even if the terms might have a legal meaning.  *See Marder v. Lopez*, 450

13  F.3d 445, 451 (9th Cir. 2006) ("Admittedly, the word 'matter' has a specialized

14  legal definition . . . . But courts should interpret the words of a contract in their

15  'ordinary and popular sense, rather than according to their strict legal meaning,'

16  unless the parties attach a special or technical meaning.")  Mattel's burden is to

17  establish that the Inventions Agreement covers Bryant's Bratz-related works that

18  Mattel claims to own—not that Mattel's definition of certain terms was "clearly

19  used" and defendants' proposed definitions were not.  Defendants' proposed

20  instruction would confuse and mislead the jury concerning Mattel's burden of

21  proof.

22       4.    Defendants have not cited any evidence that the terms "conceived" or

23  "reduced to practice" were used here in the sense they may be used in some patent

24  cases—let alone a basis for so instructing the jury as a matter of law.  There is no

25  evidentiary basis for MGA's claim that "conceived" and "reduced to practice," as

26  used in the Inventions Agreement, have technical meanings purportedly ascribed to

27  such terms under patent law.  Defendants' authorities are inapposite patent cases

28  that discuss the meaning of the terms "conception" and "reduction to practice" in

1   contexts not relevant here.  *See, e.g., Gambro Lundia AB v. Baxter Healthcare*

2   *Corp.*, 110 F.3d 1573, 1577 (Fed. Cir. 1997) (language of proposal did not

3   anticipate disputed patent in part because the reference was so unclear that

4   someone of ordinary skill couldn't have "understood this obscure passage to

5   disclose [the invention]").  Defendants also cite authorities that have no bearing on

6   the formulation of conception and reduction to practice.  *See, e.g.*, *Apotex U.S.A.,*

7   *Inc. v. Merck & Co*., 254 F.3d 1031, 1035 (Fed. Cir. 2001) (whether a defendant

8   had concealed or suppressed its prior invention such that the plaintiff's patent

9   wasn't anticipated; the plaintiff conceded the defendant had invented the process

10  first); *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981) (whether an application for

11  an Australian patent, despite no actual viewing or dissemination of a copy of the

12  application, counted as a "printed publication" for patentability purposes because

13  the "contents of the application were sufficiently accessible to the public and to

14  persons skilled in the pertinent art"); *Lamb-Weston, Inc. v. McCain Foods, Ltd*., 78

15  F.3d 540, 543 (Fed. Cir. 1996) (addressing whether it was obvious for someone of

16  ordinary skill in the art to have combined certain potato-slicing devices to create

17  parfryed potato products).  None of this has any bearing on this case.

18        5.     Mattel respectfully requests that instead of instructing the jury

19  concerning the specific meaning of the terms "conception" and "reduction to

20  practice," the Court give the instructions both parties proposed concerning the

21  proper ways for the jury to interpret contractual terms: CACI 315 (Interpretation—

22  Meaning of Ordinary Words) and CACI 316 (Interpretation—Meaning of

23  Technical Words.  *See* Parties' Joint Proposed Jury Instructions (Dkt. No. 9633) at

24  67-69.

25

26

27

28

**DEFENDANTS' PROPOSED INSTRUCTION RE INTERPRETATION—CONSTRUCTION AGAINST DRAFTER**

### 320

### INTERPRETATION—CONSTRUCTION AGAINST DRAFTER

In determining the meaning of the disputed terms of the contracts, you must first consider the prior instructions I have given you regarding the interpretation of a contract. If, after you have considered the instructions, you believe Mattel has not proved that its meaning is the correct meaning through evidence other than the contract, you must interpret the disputed language against Mattel, as the party who drafted the contract and is considered to be responsible for the uncertainty in the contract language.

You may not adopt Mattel's interpretation of the disputed terms solely on the basis of the contract language.

**Authority:** CACI No. 320 (2009) (modified)

**MATTEL'S OBJECTIONS:**

1.      Defendants' proposed instruction is biased and improper because the CACI instruction on which defendants purport to rely "directs" that this "instruction should be given only to a deadlocked jury, so as to avoid giving them this tool to resolve the case before they have truly exhausted the other avenues of approach." This instruction should not be given in any form until and unless the jury has applied all other canons of instruction yet remains deadlocked concerning the meaning of the Inventions Agreement. *See, e.g., Badie v. Bank of America*, 67 Cal. App. 4th 779, 801 (1998) (the rule of construction against the drafter applies only when all other canons of construction have been applied and failed to clarify the ambiguity).

2.      Defendants' modifications of this proposed instruction render it biased against Mattel. Without explanation or support, defendants modified this

1   instruction to (i) qualify the term "prior instructions I have given you" with the

2   language "regarding the interpretation of a contract"; (ii) change the model

3   language from "you still cannot agree on the meaning of the term" to "you believe

4   Mattel has not proved that its meaning is the correct meaning"; and (iii) changed

5   the model language from "you should interpret the contract term against" the

6   drafter to "you *must* interpret the disputed language against Mattel." (emphasis

7   added).

8           3.     Defendants' unwarranted limitation that "[y]ou may not adopt

9   Mattel's interpretation of the disputed terms solely on the basis of the contract

10  language" is not found in CACI 320 and is not proper. The jury properly will be

11  instructed to consider all the evidence in reaching its decisions, and the jury will be

12  presented with and will be free to consider whatever extrinsic evidence the parties

13  seek to present and the Court admits. The jury's task is to consider all the

14  evidence, both within the four corners of the contract and outside them, when

15  reaching its decisions. As MGA's own proposed instruction based on CACI 314

16  states, the jury "may consider the usual and ordinary meaning of the language used

17  in the contract. You may also consider the circumstances surrounding the making

18  of the contract." Dkt. No. 9620 at 90. The special instruction that MGA seeks

19  here is designed to minimize the importance of the contract itself, which is

20  erroneous and prejudicial.

21          4.     To the extent the Court decides, over Mattel's objections and despite

22  the rule that this instruction is not to be given in the ordinary course, to give any

23  instruction, Mattel requests that the Court give the following instruction:

24

25                              *CACI 320*
                *INTERPRETATION—CONSTRUCTION AGAINST DRAFTER*

26

27          *In determining the meaning of a term of the contract, you must first consider*

28  *all of the other instructions that I have given you, including by applying all the*

1  *methods of contract interpretation discussed in those instructions. You should*

2  *make every effort to decide what each relevant term means without considering*

3  *who drafted the contract. However, if, after considering these instructions and*

4  *weighing all the evidence, you still cannot agree on the meaning of a term, then*

5  *you may interpret an ambiguity in a contract term against the party that drafted*

6  *the term.*

7      ***Authority****: CACI 320 (modified).*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' PROPOSED INSTRUCTION RE INTERPRETATION—ADHESION CONTRACTS**

**320**

**INTERPRETATION—ADHESION CONTRACTS**

MGA Entertainment, Inc., MGA Entertainment (HK) Ltd., MGAE de Mexico, and Isaac Larian contend that the contract between Mattel and Carter Bryant was a contract of adhesion.  Thus, you must also consider whether the contract is a contract of adhesion.  A contract of adhesion is a contract which:

1.  is drafted by the party of superior bargaining power,

2.  is a standardized contract; and

3.  is presented on a take it or leave it basis.

In the case of adhesion contracts, the rule of construction against the drafter applies more strongly.

**Authority:** Directions for Use, CACI No. 320 (2008); *Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal. 4th 83 (2000); *Badie v. Bank of America,* 67 Cal. App. 4th 779 (1998) (adhesion); *Mayhew v. Benninghoff,* 53 Cal. App. 4th 1365 (1997) (one party's attorney); *Neal v. State Farm Ins. Co.,* 188 Cal. App. 2d 690, 694 (1961) (adhesion); *see also Geoffroy v. Washington Mut. Bank,* 484 F. Supp. 2d 1115, 1122 (S.D. Cal. 2007); *Discover Bank v. Sup. Ct.,* 36 Cal. 4th 148, 160 (2005); *Graham v.  Scissor-Tail, Inc.;* 28 Cal. 3d 807, 820 n.18 (1981); *Gray v. Zurich Ins. Co.,* 65 Cal. 2d 263, 271 (1966); *Steven v. Fid. & Cas. Co*., 58 Cal. 2d 862, 878 (1962); *Cubic Corp. v. Marty*, 185 Cal. App. 3d 438, 450 (1986).

**MATTEL'S OBJECTIONS:**

1.     The Court has already held in its Order on Motions *in Limine* that evidence of adhesion is not admissible because "MGA has disclaimed a contract unconscionability defense."  Dkt. No. 9669 at 9.  Adhesiveness is, therefore, not relevant because it relates to the enforceability of a contract, and it is undisputed

1   that the Inventions Agreement is enforceable.  *See Intershop Communications v.*

2   *Sup. Ct.*, 104 Cal. App. 4th 191, 201 (2002) ("A finding of adhesion merely begins

3   another inquiry—whether a particular provision within the contract should be

4   denied enforcement on grounds that it defeats the expectations of the weaker party

5   or it is unduly oppressive or unconscionable.").  MGA's authorities make clear that

6   a contract of adhesion "can be fully enforced according to its terms unless some

7   other factors exist, such as the oppressive or 'unconscionable' provision."  *Cubic*

8   *Corp. v. Marty*, 185 Cal. App. 3d 438, 449 (1986) ("A contract of adhesion can be

9   fully enforced according to its terms unless some other factors exist, such as the

10  oppressive or "unconscionable" provision."); *see also Armendariz v. Found.*

11  *Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 113 (2000) (the two limitations on

12  enforcement of adhesion contracts are provisions that defeat reasonable

13  expectations and provisions that are unconscionable).

14      2.      Defendants' proposed instruction is improper because issues of

15  contract unconscionability and adhesion are decided by the Court, not the jury.  *See*

16  *American Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, 1391 (1996)

17  ("Unconscionability is ultimately a question of law for the court."); *Erickson v.*

18  *Aetna Health Plans of Cal., Inc.*, 71 Cal. App. 4th 646, 653 (1999) ("Whether a

19  contract is one of adhesion generally would present a mixed question of law and

20  fact.  To make that determination, *a court would have to consider* the conditions

21  under which the contract was negotiated and executed, including an assessment of

22  the parties' relative bargaining power.") (internal citations omitted) (emphasis

23  added).

24      3.      Defendants' reliance on CACI 320 (Construction against Drafter) is

25  misleading as this proposed instruction bears no resemblance to, and is not at all

26  supported by, CACI 320.  To the extent CACI 320 is relevant at all to this

27  instruction, it is with respect to its statement (in a comment) that this instruction

28  should more likely be given in the context of adhesion contracts, and even then

1  only if the jury is deadlocked concerning the meaning of a contract term.

2  Accordingly, this instruction should not be given unless the jury informs the Court

3  that it is deadlocked concerning the meaning of a relevant contract term.  *See, e.g.,*

4  *Badie v. Bank of America*, 67 Cal. App. 4th 779, 801 (1998) ("Finally, if the

5  uncertainty is not removed by application of the other rules of interpretation, a

6  contract must be interpreted most strongly against the party who prepared it.").

7      4.   Even assuming adhesiveness were somehow relevant to contract

8  interpretation, a special adhesion instruction is unnecessary because the same rule

9  of construction against the drafter applies in the adhesion context.  California law

10  simply holds that the doctrine of construction against the drafter applies, not that it

11  applies "more strongly" as MGA's interpretation provides, whatever that means.

12  *24 Hour Fitness, Inc. v. Sup. Ct.*, 66 Cal. App. 4th 1199, 1214-15 (1998)

13  ("Particularly where the contract is one of adhesion, ambiguity in the contract

14  language not dispelled by application of other canons of construction is interpreted

15  against the drafter.").

16      5.   To the extent the Court decides, over Mattel's objections, to give any

17  instruction on the issue of adhesion contracts, Mattel requests that the Court give

18  the following instruction:

19

20                    *CACI 320*
        *INTERPRETATION—CONSTRUCTION AGAINST DRAFTER*

21

22      *In determining the meaning of a term of the contract, you must first consider*

23  *all of the other instructions that I have given you, including by applying all the*

24  *methods of contract interpretation discussed in those instructions.  You should*

25  *make every effort to decide what each relevant term means without considering*

26  *who drafted the contract.  However, if, after considering these instructions and*

27  *weighing all the evidence, you still cannot agree on the meaning of a term, then*

28

-38-

05.07975/3941364.1

1  *you may interpret an ambiguity in a contract term against the party that drafted*
2  *the term.*
3          ***Authority**:  CACI 320 (modified).*

605.07975/3941364.1

**DEFENDANTS' PROPOSED INSTRUCTION RE INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

**2201**

**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

Mattel claims that MGA Entertainment, Inc. and Isaac Larian intentionally interfered with contracts between Mattel and Carter Bryant, Ana Cabrera, Beatriz Morales, Maria Salazar, and Ryan Tumaliuan.  To establish this claim, Mattel must prove all of the following:

1. That there was a contract between Mattel and Mr. Bryant, Ms. Cabrera, Ms. Morales, Ms. Salazar, or Mr. Tumaliuan;

2. That MGA Entertainment, Inc. or Mr. Larian knew of the contract obligations at issue;

3. That MGA Entertainment, Inc. or Mr. Larian intended to disrupt the performance of these contract obligations;

4. That MGA Entertainment, Inc. or Mr. Larian prevented performance or made performance materially more expensive or difficult;

5. That Mattel was harmed; and

6. That the harm to Mattel would not have occurred in the absence of the actions of MGA Entertainment, Inc. or Mr. Larian.

You must consider each of these elements separately with respect to Mr. Bryant, Ms. Cabrera, Ms. Morales, Ms. Salazar, and Mr. Tumaliuan for (a) MGA Entertainment, Inc. and (b) Isaac Larian.

**Authority:** CACI No. 2201 (2009) (modified)

**MATTEL'S OBJECTIONS:**

1.     Defendants' proposed instruction omits Mattel's claim that MGA and Larian intentionally interfered with the contracts between Mattel and Ronald Brawer.  Mattel's proposed instruction correctly identifies the relevant individuals.  *See* Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 30.

2.     Defendants' proposed instruction deviates from the model instruction and misstates the law by replacing the word "contract" with "contract obligations."  *See* CACI 2201 ("To establish this claim, [name of plaintiff] must prove all of the following:  1. That there was *a contract* between [name of plaintiff] and [name of third party]; 2. That [name of defendant] knew of *the contract*; 3. That [name of defendant] intended to disrupt the performance of *this contract*; . . . .") (emphasis added).  Mattel does not need to prove that MGA or Larian knew of specific contractual "obligations," but only that they "knew of the contract."  *See Sebastian Int'l Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1203-04 (C.D. Cal. 2001) ("Plaintiff does not have to identify the specific contractual relations which have allegedly been disrupted" to prove that defendants had knowledge of the contract); *see also Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1092 (9th Cir. 2005) ("When the defendant performs the act that causes the interference, the defendant need not know exactly who is a party to the contract, so long as he knows he is interfering with a contractual relationship."); *Don King Prods., Inc. v. Douglas*, 742 F. Supp. 741, 775 (S.D.N.Y. 1990) ("In a tortious interference action, a plaintiff is not required to prove that the defendant had perfect or precise knowledge of the terms and conditions of the contracts in issue."); *Cohen v. Battaglia*, 202 P.3d 87 (Kan. App. 2009) ("[Plaintiffs] were not required to allege that [defendant] had knowledge of the specific terms of the contract or the business relationship in order to adequately state a claim upon which relief could be granted."); *Morrow v. Putnal*, 2007 WL 1875879, at *3 (M.D. Fla. June 27, 2007) (defendant does not need to have "specific knowledge of the essential terms of the contract" in order to

05.07975/3941364.1

1   be liable to intentionally interfering with the contract) (internal quotations

2   omitted); *Kelly v. Galveston County*, 520 S.W.2d 507, 513 (Tex. Ct. App. 1975)

3   ("It is not necessary that a defendant in a case of interference with contract rights

4   have actual knowledge of the contract and its terms.  It is enough that the

5   defendant had facts from which a reasonable person would conclude the existence

6   of a contract.").  Defendants' use of the modified term "contractual obligations"

7   should be rejected.

8         3.    Defendants' proposed instruction is misleading and confusing because

9   it implies that, to prevail on its claim, Mattel must prove that MGA or Larian

10  intentionally interfered with *all* the contracts at issue, as opposed to *any* of the

11  contracts at issue.  Mattel's proposed instruction remedies this ambiguity by

12  explaining that "[t]o establish this claim as to any particular former Mattel

13  employee, Mattel must prove all of the following as to that particular employee."

14  *See* Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 30.  It

15  further explains that there could be a "contract or contracts" between Mattel and

16  each employee, and MGA or Larian must have known of and intended to disrupt

17  the performance of those discrete contracts.  *See* CACI 2201.

18        4.    Defendants' proposed instruction deviates from the model instruction

19  and misstates the law by improperly requiring Mattel to prove that MGA or Larian

20  prevented performance or made performance "*materially*" more expensive or

21  difficult.  The model instruction does not require that performance be "materially"

22  more expensive or difficult; it is sufficient for performance to be more expensive

23  or difficult.  *See* CACI 2201 ("To establish this claim, [name of plaintiff] must

24  prove all of the following: . . . . That [name of defendant]'s conduct prevented

25  performance or made performance *more expensive or difficult*; . . . .") (emphasis

26  added); *see also* Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No.

27  9683) at 30.

28

5.      Defendants' proposed instruction misstates the causation standard that applies to this claim by requiring the jury to find that "the harm to Mattel would not have occurred in the absence of" Defendants' actions.  Under California law, and as set forth in the model instruction, Mattel must prove that Defendants' conduct was "a substantial factor" in causing Mattel's harm.  *See* CACI 2201 ("To establish this claim, [name of plaintiff] must prove all of the following: . . . . 6. That [name of defendant]'s conduct was a *substantial factor* in causing [name of plaintiff]'s harm.") (emphasis added); *see also* Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 30; *Bank of New York v. Fremont General Corp.*, 523 F.3d 902, 909 (9th Cir. 2008) (district court applied "the wrong legal standard" in intentional interference with contractual relations claim by focusing on whether defendant's actions "actually cause[d]" the transfers at issue; rather, "California employs the 'substantial factor' test for determining causation in intentional torts cases."); *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 391-93 (2004) (applying the substantial factor test in intentional interference with contractual relations claim and noting that "a cause of . . . damage . . . is something that is a substantial factor in bringing about . . . damage") (internal quotations omitted).  California courts apply a different causation standard in intentional tort cases than the one advocated by Defendants.  *See Bank of New York*, 523 F.3d at 909 ("California law defines 'substantial' expansively, and at least one court has cautioned against placing 'undue emphasis' on the ordinary meaning of that word. Although 'a force which plays only an 'infinitesimal' or 'theoretical' part in bringing about injury, damage, or loss is not a substantial factor,' the substantial factor test is a 'broader rule of causality than the 'but for' test.'").

6.      Mattel respectfully requests that the Court adopt Mattel's proposed jury instruction: CACI 2210 (Intentional Interference with Contractual Relations). *See* Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 30.

**DEFENDANTS' PROPOSED INSTRUCTION RE INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS – CONTRACT OBLIGATIONS AT ISSUE**

### 2201
### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—CONTRACT OBLIGATIONS AT ISSUE

Mattel claims that MGA Entertainment, Inc. and Isaac Larian interfered with the performance of contract obligations requiring Carter Bryant, Ana Cabrera, Beatriz Morales, Maria Salazar, and Ryan Tumaliuan to [insert to come following meet and confer].

**Authority:**

1   **MATTEL'S OBJECTIONS:**

2       1.    Defendants have not completed their proposed instruction or

3   discussed it with Mattel, despite Mattel's efforts to meet and confer with them.

4   Defendants' proposed instruction also is confusing and compound because

5   Defendants apparently seek to provide a single summary of the contract obligations

6   for all of the identified employees.

7       2.    Defendants' proposed instruction improperly modifies CACI 2201.

8   Mattel need only prove that Defendants "knew of contract[s]" and intended to

9   disrupt the performance of "the contract[s]."  Mattel does not need to prove that

10   Defendants knew of the "contract obligations" at issue, as this proposed instruction

11   implies.

12       3.    Defendants' proposed instruction is unnecessary and redundant of the

13   parties' proposed instructions based on CACI 2201, which begin by describing

14   Mattel's allegations of intentional interference.  Mattel respectfully requests that

15   the Court adopt Mattel's proposed jury instruction: CACI 2201 (Intentional

16   Interference with Contractual Relations).  *See* Mattel's Fourth Amended Proposed

17   Jury Instructions (Dkt. No. 9683) at 30.

18

19

20

21

22

23

24

25

26

27

28

1  **DEFENDANTS' PROPOSED INSTRUCTION RE INTENT**

2  **2203**

3  **INTENT**

4  As I have explained, you cannot find MGA Entertainment, Inc. or Isaac

5  Larian liable for intentional interference with contractual relations unless you find

6  that it or he intended to disrupt the performance of the contract obligations at issue.

7  In deciding whether MGA Entertainment, Inc. or Mr. Larian acted intentionally,

8  you may consider whether it or he knew that disruption of performance was

9  substantially certain to result from its or his conduct.  If you find that MGA

10  Entertainment, Inc. or Mr. Larian knew that disruption of performance was

11  substantially certain to result from its or his conduct, you may infer that it or he

12  intended to disrupt the performance of the contract, if you find that to be the proper

13  conclusion based on all of the evidence, but you are not required to do so.

14  **Authority:** CACI No. 2203 (2009) (modified)

15

16  **MATTEL'S OBJECTIONS:**

17  1.  This proposed instruction deviates unnecessarily and misleadingly

18  from the model instruction in CACI 2203.  The first sentence and the last sentence

19  of the proposed instruction are not found in CACI.  Beginning the instruction with

20  an admonition that the jury "cannot find" liability unless it makes certain findings

21  is biased against Mattel.  By prefacing the first sentence with the clause "[a]s I

22  have explained," MGA concedes it is redundant and unnecessary.

23  2.  The last sentence of the proposed instruction is not found in CACI

24  2203 and is redundant of the second sentence.  The model instruction already states

25  that the jury "may consider" whether MGA or Larian knew that a disruption was

26  substantially certain to result in deciding whether Defendants acted intentionally.

27  Defendants' further instruction in the third sentence that the jury is "not required to

28  do so" is biased against Mattel, unhelpful to the jury, and is contrary to the

1  established rule that intent can be established by inference as well as by direct

2  proof.  *See Bank of New York v. Fremont General Corp.*, 523 F.3d 902, 911 (9th

3  Cir. 2008) ("'Intent, of course, may be established by inference as well as by direct

4  proof.' Thus, the jury may infer culpable intent from conduct 'substantially certain'

5  to interfere with the contract.") (quoting *Savage v. Pac. Gas & Elec. Co.*, 21 Cal.

6  App. 4th 434 (1993)).

7       3.     Mattel requests that the Court adopt Mattel's proposed jury

8  instruction: CACI 2203 (Intent or Knowledge).  *See* Mattel's Fourth Amended

9  Proposed Jury Instructions (Dkt. No. 9683) at 32.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' PROPOSED INSTRUCTION RE DUTY OF LOYALTY DEFINED**

### DUTY OF LOYALTY DEFINED

An employee owes his or her employer a duty of loyalty.  The scope of the employee's duty varies with the nature of the employee's relationship with his or her employer.  Thus, an employee who occupies an executive position with a high level of trust and confidence owes a higher duty of loyalty to his or her employer than an employee who occupies a position of lower trust and confidence.

The duty of loyalty does not require that an employee work solely for his or her employer's interest.  An employee may transact business similar to that entrusted to him or her by the employer on his or her own account, so long as the employee gives the preference to the business of the employer.  The employee can be compensated by another company for performing outside work without breaching his or her duty of loyalty to his or her current employer.

An employee is under no duty to disclose to his or her current employer preparations or negotiations for future employment by or work with a competitor of the employer.  An employee owes his or her employer a duty of loyalty only during the period of time that the employee is employed by the employer.  An employee's duty of loyalty to his or her employer ceases on the date of the employee's resignation. Mattel is not entitled to recover for actions taken or harm occurring after an employee has resigned from Mattel.  Mattel has the burden of proving by a preponderance of the evidence all facts necessary to show the existence and scope of an employee's duty of loyalty to Mattel.

**Authority:** Cal. Labor Code  § 2863; 19 Williston on Contracts § 54:26 (4th ed.); *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 411 (2007); *Stokes v. Dole Nut Co.*, 41 Cal App. 4th 285 (1995).

**MATTEL'S OBJECTIONS:**

1.      This proposed instruction is erroneous and confusing.  While purporting to "define" the duty of loyalty, it focuses instead on purported exceptions and limitations on that duty and on defendants' purported defenses to this claim.

2.      Defendants' proposed instruction is erroneous in its assertion that, depending on an employee's level within the company, the employee may owe less than the "undivided loyalty" that California law imposes.  To the contrary, California law requires "undivided loyalty" from all employees, independent of the additional responsibilities imposed on fiduciaries.  *See Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1142 (E.D. Cal. 2008) ("All employees owe a duty of loyalty to their employers."); *Otsuka v. Polo Ralph Lauren Corp.*, 2007 WL 3342721, at *3 (N.D. Cal. Nov. 9, 2007) ("Under the Ninth Circuit's analysis, then, the Court holds that the California Supreme Court would likely follow the Restatement to recognize that a lower-level employee, such as a sales clerk or a laborer, owes a duty of loyalty to his employer."); *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1086 (9th Cir. 2003) ("It is therefore clear from the record that Riley and Kunimitsu breached their duty of loyalty by directly competing with EBI.  Riley and Kunimitsu argue that EBI nevertheless has no claim against them because they were only low-level employees.  Nothing in the Restatement indicates, however, that ordinary employees have no duty of loyalty.  Further, other courts have recognized the liability of employees who are not officers or directors. . . . Thus, Riley and Kunimitsu are liable.").

3.      Defendants' instruction is erroneous in its assertion that the "duty of loyalty does not require that an employee work solely for his or her employer's interest.  An employee may transact business similar to that entrusted to him or her by the employer on his or her own account, so long as the employee gives the

preference to the business of the employer."  On the contrary, an employee owes a

duty of undivided loyalty to his or her employer.  *See Huong Que, Inc. v. Luu*, 150

Cal. App. 4th 400, 413 (2007) ("In the absence of an agreement to the contrary,

appellants, as agents, owed a *duty of undivided loyalty*, including a duty not to

compete, to plaintiffs, their principals.") (emphasis added).  Thus, an employee

may not compete with his employer.  *See Charles T. Powner Co. v. Smith*, 91 Cal.

App. 101, 102 (1928) (employee cannot "engage in a competing business even

outside of his working hours."); *see also Puritas Laundry Co. v. Green*, 15 Cal.

App. 654, 660 (1911) ("[W]hen a servant becomes engaged in a business which

necessarily renders him a competitor, a rival of his master, no matter how much or

how little time he devotes to it, he has an interest against his duty.").  Nor is it

always correct, as MGA claims in its instruction, that "[t]he employee can be

compensated by another company for performing outside work without breaching

his or her duty of loyalty to his or her current employer."  *See Eckard Brandes,

Inc.*, 338 F.3d at 1086 ("It is therefore clear from the record that Riley and

Kunimitsu breached their duty of loyalty by directly competing with EBI.").  By

definition, performing outside work for a direct competitor of one's employer is

"inimical to the best interests of the [current] employer" and a violation of the duty

of loyalty.  *See Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 295 (1995)

("[D]uring the term of employment, an employer is entitled to its employees'

undivided loyalty . . . . The duty of loyalty is breached . . . when the employee

takes action which is inimical to the best interests of the employer."); *Huong Que,

Inc.,* 150 Cal. App. 4th at 416 ("The duty of loyalty embraces several subsidiary

obligations, including the duty 'to refrain from competing with the principal and

from taking action on behalf of or otherwise assisting the principal's

competitors'").

    4.    Defendants' proposed instruction is also inaccurate in its statement

that an employee is under no obligation to disclose its preparations for work with a

competitor.  *See Fowler v. Varian Assocs.*, 196 Cal. App. 3d 34, 41 (1987) ("While California law does permit an employee to seek other employment and even to make some 'preparations to compete' before resigning, California law does not authorize an employee to transfer his loyalty to a competitor.") (internal citation omitted).  Defendants' proposed instruction improperly suggests that legitimate preparations to compete could include activities described in the preceding paragraph such as "performing outside work" for a competitor.  *Huong Que, Inc.*, 150 Cal. App. 4th at 416.

5.     MGA's assertion that "Mattel is not entitled to recover for actions taken or harm occurring after an employee has resigned from Mattel" is vague and misleading.  Even if the duty of loyalty extends only to the duration of employment, it is not correct that later-occurring harms and conduct are irrelevant or should be disregarded, as MGA's instruction suggests.  All harm flowing from the employee's breach of duty, regardless of when that harm occurred is recoverable.  *See* CACI 4102 (elements include, among others, "[t]hat [plaintiff] was harmed" and "[t]hat [defendant's] conduct was a substantial factor in causing [plaintiff's] harm").  This vague instruction would also suggest that later occurring conduct is irrelevant to all of Mattel's claims, which is mistaken and prejudicial.

6.     Mattel requests that the Court adopt Mattel's proposed instruction: Mattel's Special Jury Instruction No. 8 (Scope of the Duty of Loyalty).  *See* Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 38.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANTS' PROPOSED INSTRUCTION RE AIDING AND ABETTING THE BREACH OF THE DUTY OF LOYALTY**

**AIDING AND ABETTING THE BREACH OF THE DUTY OF LOYALTY**

Mattel alleges that MGA and Isaac Larian aided and abetted breaches of a duty of loyalty to Mattel by Carter Bryant, Ryan Tumaliuan, Ana Cabrera, Beatriz Morales, and Maria Elena Salazar.  To prove that MGA or Mr. Larian aided and abetted a breach of a duty of loyalty, Mattel must first prove that Mr. Bryant, Mr. Tumaliuan, Ms. Cabrera, Ms. Morales, or Ms. Salazar had a duty of loyalty to Mattel and that he or she breached his or her duty of loyalty.

To prove this first part of the claim, Mattel must prove by a preponderance of the evidence all of the facts necessary to establish each of the following elements:

1.      That Mr. Bryant, Mr. Tumaliuan, Ms. Cabrera, Ms. Morales, or Ms. Salazar was a Mattel employee and thus owed Mattel a duty of loyalty;

2.      The scope of Mr. Bryant's, Mr. Tumaliuan's, Ms. Cabrera's, Ms. Morales's, or Ms. Salazar's duty of loyalty;

3.      That Mr. Bryant, Mr. Tumaliuan, Ms. Cabrera, Ms. Morales, or Ms. Salazar engaged in conduct that breached his or her duty of loyalty while employed by Mattel;

4.      That Mattel did not consent to the conduct alleged to be a breach of a duty of loyalty or otherwise ratify such conduct;

5.      That Mattel was harmed during the period of Mr. Bryant's, Mr. Tumaliuan's, Ms. Cabrera's, Ms. Morales's, or Ms. Salazar's employment as a consequence of the conduct; and

6.      That Mattel's harm would not have occurred in the absence of the conduct alleged to be a breach of the duty of loyalty.

05.07975/3941364.1

1   If Mattel does prove that an employee breached a duty of loyalty to Mattel,
2   MGA and Mr. Larian cannot be held liable for aiding and abetting a breach of a
3   duty of loyalty by that employee.

4   **Authority:** *MJT Securities, LLC v. Toronto-Dominion Bank, 2007 WL*
5   *1725421, at \*7-8 (N.D. Cal. June 14, 2007) (elements); Neilson v. Union Bank of*
6   *California, N.A., 290 F. Supp. 2d 1101, 1119-20 (C.D. Cal. 2003) (intent);*
7   *Resolution Trust Corp. v. Rowe, 1993 WL 183512, at \*6 (N.D. Cal. Feb. 8, 1993)*
8   *(inverse relationship between demonstration of knowledge and substantial*
9   *assistance); Mendelsohn v. Capital Underwriters, Inc., 490 F. Supp. 1069, 1084*
10  *(N.D. Cal. 1979) (causation); Gerard v. Ross, 204 Cal. App. 3d 968, 983 (1988)*
11  *(intent); see also Richard B. LeVine, Inc. v. Higashi, 131 Cal. App. 4th 566, 574*
12  *(2005); Casey v. U.S. Bank Nat'l Ass'n, 127 Cal. App. 4th 1138, 1144 (2005); Fiol*
13  *v. Doellstedt, 50 Cal. App. 4th 1318, 1325-26 (1996); Saunders v. Sup. Ct., 27 Cal.*
14  *App. 4th 832, 846 (1994); Restatement (Second) of Torts § 876.*

15

16  ## MATTEL'S OBJECTIONS:

17  1.      The last sentence of Defendants' proposed instruction is clearly
18  wrong and appears to be a typographical error.  The correct statement of law is the
19  opposite of what Defendants say: If Mattel does **not** prove than an employee
20  breached a duty of loyalty to Mattel, MGA and Mr. Larian cannot be held liable for
21  aiding and abetting a breach of a duty of loyalty by that employee.

22  2.      Defendants' proposed instruction is improper because it asks the jury
23  to determine the "scope" of the duty of loyalty.  The scope of this duty is well
24  established under California law.  An employee owes a duty of undivided loyalty
25  and cannot take actions inimical to the best interests of his or her employer.
26  *Stokes*, 41 Cal. App. 4th at 295; *Huong Que, Inc.*, 150 Cal. App. 4th at 413.  "The
27  duty of loyalty embraces several subsidiary obligations, including the duty 'to
28  refrain from competing with the principal and from taking action on behalf of or

1   otherwise assisting the principal's competitors,' (Rest. 3d, Agency, § 8.04), the

2   duty 'not to acquire a material benefit from a third party in connection with . . .

3   actions taken . . . through the agent's use of the agent's position' (*id*., § 8.02), and

4   the duty 'not to use or communicate confidential information of the principal for

5   the agent's own purposes or those of a third party' (*id*., § 8.05(2))." *Huong Que,*

6   *Inc.*, 150 Cal. App. 4th at 416.  Examples of breach would include "engag[ing] in a

7   competing business even outside of his working hours." *Charles T. Powner Co.*,

8   91 Cal. App. at 102; *see also Puritas Laundry Co.*, 15 Cal. App. at 660 ("[W]hen a

9   servant becomes engaged in a business which necessarily renders him a

10  competitor, a rival of his master, no matter how much or how little time he devotes

11  to it, he has an interest against his duty.").

12      3.    Defendants' proposed instruction  omits that any "consent" by Mattel

13  to the challenged conduct must have been "informed consent."  *See* CACI 4102

14  ("[t]hat [plaintiff] did not give informed consent to [defendant]'s conduct").

15      4.    For the reasons previously explained, there is no basis to limit

16  Mattel's harm to the actual period during which the employees were employed by

17  Mattel rather than to all harm flowing from the breach of duty, regardless of when

18  that harm occurred.

19      5.    For the reasons previously explained, Defendants' statement that the

20  "harm would not have occurred in the absence of the conduct alleged to be a

21  breach of the duty of loyalty" misstates the applicable causation standard.  The

22  correct standard, as reflected in Mattel's version of this proposed instruction, is

23  that the former employee's conduct was a "substantial factor" in causing harm to

24  Mattel.  *See* CACI 4102.  MGA's own authorities acknowledge this.  *See Neilson*

25  *v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1135 (C.D. Cal. 2003) (to establish

26  "causation [in] an . . . aiding and abetting claim, [a] plaintiff must show that the

27  aider and abettor provided assistance that was a substantial factor in causing the

28  harm suffered"); *Mendelsohn v. Capital Underwriters, Inc.*, 490 F. Supp. 1069,

1   1084 (N.D. Cal. 1979) (a plaintiff must show that "the assistance provided by the

2   alleged aider and abettor was a substantial factor in bringing about the violation");

3   Restatement (Second) of Torts § 876, comment c ("If the encouragement or

4   assistance is a substantial factor in causing the resulting tort, the one giving it is

5   himself a tortfeasor and is responsible for the consequences of the other's act").

6        6.      Mattel requests that the Court adopt Mattel's proposed instruction,

7   which tracks the language and structure of CACI 4102: Mattel's Special Jury

8   Instruction No. 7 (Breach of the Duty of Loyalty).  *See* Mattel's Fourth Amended

9   Proposed Jury Instructions (Dkt. No. 9683) at 36.

**DEFENDANTS' PROPOSED INSTRUCTION RE AIDING AND ABETTING THE BREACH OF THE DUTY OF LOYALTY**

**AIDING AND ABETTING THE BREACH OF THE DUTY OF LOYALTY**

If you find that Mr. Bryant, Mr. Tumaliuan, Ms. Cabrera, Ms. Morales, or Ms. Salazar breached a duty of loyalty to Mattel, you must next determine whether MGA Entertainment, Inc. or Isaac Larian aided and abetted the breach of a duty of loyalty to Mattel.

To prove that MGA Entertainment, Inc. aided and abetted a breach of the duty of loyalty, Mattel must prove by a preponderance of the evidence all of the facts necessary to establish each of the following elements.  You must determine each of these elements separately as to MGA Entertainment, Inc. and Mr. Larian.

1. MGA Entertainment, Inc. or Mr. Larian had actual knowledge that a breach of the duty of loyalty had been, or was to be, committed;

2. MGA Entertainment, Inc. or Mr. Larian made a conscious decision to participate in activity designed to assist the breach;

3. With knowledge that a breach had occurred or would occur, MGA Entertainment, Inc. or Mr. Larian substantially assisted the commission of the breach;

4. Mr. Bryant, Mr. Tumaliuan, Ms. Cabrera, Ms. Morales, or Ms. Salazar breached a duty of loyalty to Mattel during the period of his or her employment by Mattel;

5. Mattel was harmed during the period of Mr. Bryant's, Mr. Tumaliuan's, Ms. Cabrera's, Ms. Morales's, or Ms. Salazar's employment by Mattel as a result of a breach of a duty of loyalty; and

6. Mattel's harm would not have occurred in the absence of the breach of a duty of loyalty and MGA Entertainment, Inc.'s or Isaac Larian's actions.

1    **Authority:** *MJT Securities, LLC v. Toronto-Dominion Bank*, 2007 WL

2    1725421, at **7-8 (N.D. Cal. June 14, 2007) (elements); *Neilson v. Union Bank of*

3    *California, N.A.*, 290 F. Supp. 2d 1101, 1119-20 (C.D. Cal. 2003) (intent);

4    *Resolution Trust Corp. v. Rowe*, 1993 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993)

5    (inverse relationship between demonstration of knowledge and substantial

6    assistance); *Mendelsohn v. Capital Underwriters, Inc.*, 490 F. Supp. 1069, 1084

7    (N.D. Cal. 1979) (causation); *Sarkes Tarzian, Inc. v. Audio Devices, Inc.*, 166 F.

8    Supp. 250 (S.D. Cal. 1958) (competitor employer did not conspire to breach duty

9    to former employer where competitor paid at-will employee an advance and

10   employee did not disclose intention to work for competitor), *aff'd*, 283 F.2d 695

11   (9th Cir. 1960); *see also Richard B. LeVine, Inc. v. Higashi*, 131 Cal. App. 4th 566,

12   574 (2005); *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325-26 (1996); *Saunders v.*

13   *Sup. Ct.*, 27 Cal. App. 4th 832, 846 (1994); Restatement (Second) of Torts § 876;

14   *Sarkes Tarzian, Inc. v. Audio Devices, Inc.*, 166 F. Supp. 250 (S.D. Cal. 1958)

15   (competitor employer did not conspire to breach duty to former employer where

16   competitor paid at-will employee an advance and employee did not disclose

17   intention to work for competitor), *aff'd* 283 F.2d 695 (9th Cir. 1960); *Lomita Land*

18   *& Water Co. v. Robinson*, 54 Cal. 36, 47 (1908) ("The words 'aid and abet' . . .

19   have a well understood meaning and may fairly be construed to imply an

20   intentional participation with knowledge of the object to be attained.") (emphasis

21   added), *Casey v. U.S. National Bank Ass'n*, 127 Cal. App. 4th 1138, 1148 (2008)

22   (holding that to satisfy the knowledge prong, the defendants must have "actual

23   knowledge of the primary violation in which they purportedly participated."),

24   *Howard v. Sup. Ct.*, 2 Cal. App. 4th 745, 748-49 (1992) ("[A]iding and abetting . .

25   . necessarily request a defendant to reach a conscious decision to participate in the

26   tortious activity for the purpose of assisting another in performing a wrongful

27   act.") (emphasis added), *Gerard v. Roos*, 204 Cal. App. 3d 968, 983 (1988) ("A

28   defendant can be held liable as a cotortfeasor on the basis of acting in concert only

1   if he knew . . . that a tort had been, or was to be, committed, and acted with the

2   intent of facilitating the commission of that tort.")

3

4   **MATTEL'S OBJECTIONS:**

5          1.      Defendants' proposed instruction deviates unnecessarily from the

6   model rule concerning aiding and abetting liability.  As CACI 3610 and Mattel's

7   proposed instruction properly state, there are three elements to such a claim: (i)

8   that defendants knew that a former employee's conduct constituted a breach of

9   duty or duties; (ii) that defendants gave substantial assistance or encouragement to

10  the former employee to breach that duty; and (iii) that defendants' conduct was a

11  substantial factor in causing Mattel harm.  Defendants' proposed instruction

12  wrongly requires six elements, none of which tracks the language in CACI 3610.

13         2.      Defendants' instruction is misleading in its suggestion that, to find for

14  Mattel on its claim for aiding and abetting breach of the duty of loyalty, the jury

15  must determine each of the elements of the claim separately as to MGA

16  Entertainment, Inc. *and* Mr. Larian, rather than MGA *or* Mr. Larian.

17         3.      As set forth in CACI 3610 and Mattel's proposed instruction, Mattel

18  must establish that defendants "knew" that a former employee's conduct

19  constituted a breach.  Defendants' proposed instruction sets forth that defendants

20  had "actual knowledge" (Element 1), which misleadingly suggests that Mattel must

21  establish something more than that defendants knew that the former employee's

22  conduct constituted a breach of duty or duties.

23         4.      Defendants' proposed instruction improperly requires that Defendants

24  make "a conscious decision to participate in activity designed to assist the breach."

25  (Element 2).  To the contrary, the standards for knowledge are the same for aiding

26  and abetting a breach of duty of loyalty as for aiding and abetting a breach of any

27  other intentional tort.  *See Austin B. v. Escondido Union School Dist.*, 149 Cal.

28  App. 4th 860, 879 (2007) (noting that a person can be liable for aiding and abetting

1   an intentional tort if he or she is aware that the other person's conduct constitutes a

2   breach of duty and provides substantial assistance or encouragement to the other to

3   commit the act); *see also River Colony Estates Gen. P'ship v. Bayview Fin.*

4   *Trading*, 287 F. Supp. 2d 1213, 1225 (S.D. Cal. 2003) (same).

5        5.    As set forth in CACI 3610 and Mattel's proposed instruction, Mattel

6   must establish that defendants "gave substantial assistance or encouragement" to a

7   former employee to breach his duty or duties.  MGA's proposed instruction

8   requires Mattel to prove that defendants "substantially assisted" the commission of

9   the breach, but removes any reference to "encouragement."  (Element 3).  Without

10   this term, MGA's statement of the law is incomplete.  *See* CACI 3610; *see also*

11   *Casey v. U.S. Bank Nat'l Assn.*, 127 Cal. App. 4th 1138, 1144 (2005) (aiding and

12   abetting liability requires that the defendant "knows the other's conduct constitutes

13   a breach of duty and gives substantial assistance or encouragement to the other to

14   so act or (b) gives substantial assistance to the other in accomplishing a tortious

15   result and the person's own conduct, separately considered, constitutes a breach of

16   duty to the third person.").

17        6.    For the reasons previously explained, there is no basis to limit

18   Mattel's harm to the actual period during which the employees were employed by

19   Mattel rather than to all harm flowing from the employee's breach of duty.

20   (Element 5).

21        7.    As set forth in CACI 4102 and Mattel's proposed instruction, Mattel

22   must establish that defendants' conduct "was a substantial factor" in Mattel's

23   harm, not that "Mattel's harm would not have occurred in the absence of the

24   conduct" (Element 6), which is a misstatement of the law.  *See* CACI 3610.

25        8.    These additional elements are confusing, unnecessary, and redundant.

26   For example, as defendants' proposed instruction makes clear in the first sentence,

27   the jury determines Mattel's aiding and abetting claim only if there is underlying

28

1  breach of a duty.  A stand-alone element requiring the same showing is redundant

2  and unnecessarily confusing, and biased against the claim.

3          9.      Mattel requests that the Court adopt Mattel's proposed jury

4  instruction: CACI 3610 (Aiding and Abetting Tort—Essential Factual Elements).

5  *See* Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 34.

**DEFENDANTS' PROPOSED INSTRUCTION RE MISAPPROPRIATION OF TRADE SECRETS—INTRODUCTION**

**4400**
**MISAPPROPRIATION OF TRADE SECRETS—INTRODUCTION**

MGA Entertainment, Inc. ("MGA"), Mattel, Inc. ("Mattel"), and Mattel de Mexico S.A. de C.V. ("Mattel de Mexico") claim that they are the respective owners of certain trade secrets.

MGA, Mattel, and Mattel de Mexico claim that their trade secrets were misappropriated by others.  "Misappropriation" means the improper acquisition, use, or disclosure of a trade secret.

MGA, Mattel, Mattel de Mexico also claim that the misappropriation of their trade secrets caused them damage or resulted in the unjust enrichment of the misappropriating party.

Mattel, MGA, MGA de Mexico, and Isaac Larian deny the allegations of trade secret misappropriation made against them.


**Authority:** CACI No. 4400 (2009) (modified).


**MATTEL'S OBJECTIONS:**

1.      Defendants' proposed instruction is confusing in that it purports to address both parties' trade secret misappropriation claims in a single instruction. Doing so risks confusing the jury by suggesting that the parties' respective claims are identical, or substantially similar, when in fact they concern entirely different sets of evidence and circumstances.  Combining the claims in a single instruction may also prejudice Mattel by causing the jury to conclude that it must decide the same way on both party's claims because it has been presented with a single set of instructions.  Providing the jury with separate instructions for each party's claim, as Mattel has proposed to do, will prevent any undue confusion or prejudice and

1   further allow for appropriate tailoring of the respective sets of instructions to the

2   specific aspects of the parties' respective claims and defenses.  Joint instructions

3   on both parties' claims, and in particular the joint instructions proposed by MGA,

4   are confusing and prejudicial.

5       2.      This proposed instruction is misleading in its statement that the parties

6   "claim that they are the respective owners of certain trade secrets," which implies

7   that "ownership" of a trade secret is a necessary element of a trade secret

8   misappropriation claim.  To the contrary, mere lawful possession of a trade secret

9   is sufficient to allow a party to assert a trade secret misappropriation claim.  *See*

10  *Silvaco Data Sys. v. Intel Corp.,* 184 Cal. App. 4th 210, 220-21 (2010) ("The *sine*

11  *qua non* of a trade secret, then, is the plaintiff's possession of information of a type

12  that can, at the possessor's option, be made known to others, or withheld from

13  them, i.e., kept secret."); *Metso Minerals Indus. v. FLSMIDTH-Excel LLC*, --- F.

14  Supp. 2d ----, 2010 WL 1850139, at *8 (E.D. Wis. May 7, 2010) (possession of a

15  trade secret is all that is required to assert trade secret misappropriation); *Durney v.*

16  *Wavecrest Labs., LLC,* 441 F. Supp. 2d 1055, 1062 (N.D. Cal. 2005) (to prove

17  trade secret misappropriation, a trade secret plaintiff must prove "he possessed a

18  trade secret"); Dkt. No. 9600 at 32 n.13 (noting that "[o]ther jurisdictions have

19  concluded that possession of a trade secret is all that is required") (citation

20  omitted).

21      3.      Defendants' proposed instruction that "MGA, Mattel, and Mattel de

22  Mexico claim that their trade secrets were misappropriated by others" is

23  ambiguous and confusing in its reference to "others."

24      4.      Defendants' proposed instruction is incomplete to the extent it omits

25  reference to Mattel's trade secret misappropriation claim against Machado.

26      5.      No introductory instruction regarding the parties' trade secret

27  misappropriation claims is necessary or helpful given the detailed instructions that

28  will follow; providing information in a summary fashion may confuse the jury,

1  particularly to the extent such information is inaccurate, as noted in the paragraphs

2  above.

3  6.  To the extent the Court is inclined, over Mattel's objections, to give

4  any introductory instruction on trade secret misappropriation, then Mattel

5  respectfully requests that the Court give the following instructions based on CACI

6  4400:

7  *CACI 4400*

8  *MATTEL'S CLAIM FOR MISAPPROPRIATION OF TRADE SECRETS—*

9  *INTRODUCTION*

10

11  *Mattel and Mattel Mexico claim that MGA, Mr. Larian, MGA Mexico and*

12  *Mr. Machado have misappropriated Mattel trade secrets, as discussed in more*

13  *detail in instructions that will follow.  "Misappropriation" means the improper*

14  *acquisition, use, or disclosure of a trade secret.  MGA , Mr. Larian, MGA Mexico*

15  *and Mr. Machado deny that they have misappropriated Mattel's trade secrets.*

16  **Authority**:  *CACI 4400 (modified).*

17

18  *CACI 4400*

19  *MGA'S CLAIM FOR MISAPPROPRIATION OF TRADE SECRETS—*

20  *INTRODUCTION*

21

22  *MGA claims that Mattel has misappropriated Mattel trade secrets, as*

23  *discussed in more detail in instructions that will follow.  "Misappropriation"*

24  *means the improper acquisition, use, or disclosure of a trade secret.  Mattel denies*

25  *that it has misappropriated MGA's trade secrets.*

26  **Authority**:  *CACI 4400 (modified).*

27

28

# DEFENDANTS' PROPOSED INSTRUCTION RE MISAPPROPRIATION OF TRADE SECRETS—ESSENTIAL FACTUAL ELEMENTS

**4401**

## MISAPPROPRIATION OF TRADE SECRETS—ESSENTIAL FACTUAL ELEMENTS

MGA asserts a claim for trade secret misappropriation against Mattel as defendant.  Mattel asserts a claim for trade secret misappropriation against MGA, MGA de Mexico, and Isaac Larian as defendants.  Mattel de Mexico asserts a claim for trade secret misappropriation against MGA, MGA de Mexico, and Isaac Larian as defendants.

To succeed on a claim of trade secret misappropriation, the claimant must prove all of the following:

1. That the claimant owned trade secrets;

2. That the claimant identified the alleged trade secrets with reasonable particularity;

3. That the information alleged to be a trade secret was a trade secret at the time of the misappropriation;

4. That the defendant misappropriated, that is, improperly used or disclosed, the claimant's trade secrets;

5. That the defendant was unjustly enriched as a result his or her use or disclosure of the claimant's trade secrets; and

6. That the claimant's harm or the unjust enrichment of the defendant would not have occurred in the absence of the defendant's misappropriation of trade secrets.

**Authority:** CACI No. 4401

05.07975/3941364.1

**MATTEL'S OBJECTIONS:**

1.     Defendants' proposed instruction does not conform to the model instruction and is contrary to law because it omits that liability may be premised on the improper "acquisition" of a trade secret, in addition to improper use or disclosure.  *See* Cal. Civ. Code § 3426.1 ("'Misappropriation' means:  Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or Disclosure or use of a trade secret of another. . . ."); *see also* CACI 4401 ("To succeed on this claim, [name of plaintiff] must prove all of the following: . . . 3. That [name of defendant] improperly [acquired/used/ [or] disclosed] the trade secret[s] . . . .").

2.     Defendants' proposed instruction does not conform to the model instruction and is contrary to law because it requires the "claimant" to prove that the defendant was unjustly enriched, rather than also allowing for liability based on harm to the plaintiff.  *See* Cal. Civ. Code § 3426.3 ("A complainant may recover damages for the actual loss caused by misappropriation.  A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss."); *see also* CACI 4401 ("To succeed on this claim, [name of plaintiff] must prove all of the following: . . . 5. That [name of defendant]'s [acquisition/use/ [or] disclosure] was a substantial factor in causing [[name of plaintiff]'s harm/ [or] [name of defendant] to be unjustly enriched].").

3.     Defendants' proposed instruction is incomplete to the extent it omits reference to Mattel's trade secret misappropriation claim against defendant Machado.

4.     Mattel objects to the inclusion of the element that "the claimant has identified the alleged trade secrets with reasonable particularity."   CACI 4402— the only authority cited by MGA—does not contain this "reasonable particularity" element.  Nor is the requirement that a trade secret be defined "with reasonable

1    particularity" an element of a trade secret claim.  *See* Cal. Civ. Code § 3426.1.

2    While trade secrets must be disclosed "with particularity" for purposes of pretrial

3    discovery—indeed, before discovery can even commence—that requirement is

4    neither an element of the claim nor a part of the definition of a "trade secret."  *See*

5    Cal. Code Civ. Proc. § 2019.210 ( a plaintiff must "identify the trade secret with

6    reasonable particularity" before commencing discovery related to it); *Brescia v.*

7    *Angelin*, 172 Cal. App. 4th 133, 144 (2009).  Including this procedural requirement

8    under the California Code of Civil Procedure in an instruction that purports

9    identify the elements of a claim for trade secret misappropriation is improper.

10        5.    Defendants' proposed instruction misstates the applicable causation

11   standard, as stated in the model instruction, by improperly requiring the jury to find

12   that the harm or unjust enrichment "would not have occurred in the absence of the

13   defendant's misappropriation of trade secrets," rather than find that the

14   misappropriation was a "substantial factor" in causing the harm or unjust

15   enrichment.   *See* CACI 4401; *Farhang v. Indian Inst. of Tech., Kharagpur*, 2010

16   WL 3504897, at *6 (N.D. Cal. Sep. 07, 2010) (applying "substantial factor"

17   causation test to trade secret misappropriation claim).

18        6.    For the reasons discussed above, defendants' proposed instruction is

19   confusing in that it purports to address both parties' trade secret misappropriation

20   claims in a single instruction.

21        7.    For the reasons discussed above, "ownership" of a trade secret is not

22   an element of a trade secret misappropriation claim; lawful possession is sufficient.

23        8.    Mattel respectfully requests that the Court adopt Mattel's proposed

24   versions of this instruction, which are properly tailored to each party's claim:

25   CACI 4401 (Misappropriation of Trade Secrets—Essential Factual Elements).  *See*

26   Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 42, 200.

27

28

1 **DEFENDANTS' PROPOSED INSTRUCTION RE "TRADE SECRET"**
2 **DEFINED**

3                                      **4402**
                            **"TRADE SECRET" DEFINED**
4

5          To prove that information is a trade secret, the claimant must prove all of the
6 following:

7          1.    That the information was secret;

8          2.    That the claimant has identified its alleged trade secrets with reasonable
9                particularity;

10         3.    That the information had actual or potential independent economic
11               value because it was secret; and

12         4.    That the claimant made reasonable efforts to keep the information
13               secret.

14         **Authority:** CACI No. 4402 (2009)

15

16 **MATTEL'S OBJECTIONS:**

17         1.    This instruction is incomplete in that it states that the plaintiff must
18 prove the information was secret.  In fact, as Mattel's instruction properly makes
19 clear, the test is whether the information was secret "as of the time of the
20 misappropriation."  The addition of that clause is supported by law and is needed
21 to ensure that the jury does not misapply trade secret law by concluding,
22 erroneously, that if information that was kept secret at the time of the
23 misappropriation is later disclosed or made public, a party may not pursue a trade
24 secret misappropriation claim as to such information.  *See CardioVention, Inc. v.*
25 *Medtronic, Inc.*, 483 F.Supp.2d 830, 835 (D.Minn. 2007) (applying California law,
26 found that "CardioVention is correct that information that become publicly
27 available after the time of the misappropriation is irrelevant to the existence of a

28

1  trade secret at the time of the misappropriation.") (citing *B. Braun Med., Inc. v.*

2  *Rogers,* 163 Fed.Appx. 500, 505-06 (9th Cir. 2006).

3      2.     For the reasons stated previously, Mattel objects to the inclusion of

4  the element that "the claimant has identified its alleged trade secrets with

5  reasonable particularity."

6      3.     For the reasons stated previously, defendants' proposed instruction is

7  confusing in that it purports to address both parties' trade secret misappropriation

8  claims in a single instruction.

9      4.     Mattel respectfully requests that the Court adopt Mattel's proposed

10  versions of this instruction, which are properly tailored to each party's claim:

11  CACI 4402 ("Trade Secret" Defined).  *See* Mattel's Fourth Amended Proposed

12  Jury Instructions (Dkt. No. 9683) at 45, 202.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **DEFENDANTS' PROPOSED INSTRUCTION RE SECRECY**
2  **REQUIREMENT**

3                                    **4403**
                        **SECRECY REQUIREMENT**
4

5           The secrecy required to prove that something is a trade secret does not have
6  to be absolute in the sense that no one else in the world possesses the information.
7  The information may be disclosed to employees involved in the claimant's use of
8  the trade secret as long as they are instructed to keep the information secret.  It may
9  also be disclosed to nonemployees if they are obligated to keep the information
10  secret.  However, the information must not have been generally known to the
11  public or to people who could obtain value from knowing it.
12          **Authority:** CACI No. 4403 (2009) (modified)

13

14  **MATTEL'S OBJECTIONS:**

15          1.      MGA omits that information does not lose its "secret" status for
16  purposes of trade secret protection if it is disclosed to nonemployees who are both
17  obligated "and expected" to keep the information secret.  See Mattel's Fourth
18  Amended Proposed Jury Instructions (Dkt. No. 9683) at 204.  If a trade secret
19  holder discloses a trade secret without an actual expectation of secrecy, regardless
20  of whether there also is a formal obligation to maintain secrecy, the information
21  loses its trade secret status because there is no reasonable efforts, in such
22  circumstances, to keep information secret.  *See Ruckelshaus v. Monsanto Co*., 467
23  U.S. 986, 1002 (1984) ("If an individual discloses his trade secret to others who are
24  under no obligation to protect the confidentiality of the information . . . his
25  property right is extinguished.").  Defendants' instruction is incomplete and
26  inaccurate.

27
28

05.07975/3941364.1

2.      For the reasons previously explained, defendants' proposed instruction is confusing in that it purports to address both parties' trade secret misappropriation claims in a single instruction.

3.      Mattel respectfully requests that the Court adopt Mattel's proposed versions of this instruction, which are properly tailored to each party's claim: CACI 4403 (Secrecy Requirement).  *See* Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 47, 204.

**DEFENDANTS' PROPOSED INSTRUCTION RE INFORMATION WAS READILY ASCERTAINABLE BY PROPER MEANS**

**4420**
**INFORMATION WAS READILY ASCERTAINABLE BY PROPER MEANS**

A defendant did not misappropriate any trade secrets if the defendant proves that the information alleged to be a trade secret was readily ascertainable by proper means at the time of the alleged misappropriation.

There is no fixed standard for determining what is "readily ascertainable by proper means."

In general, information is readily ascertainable if it can be obtained, discovered, developed, or compiled without significant difficulty, effort, or expense.  For example, information is readily ascertainable if it is available in trade journals, reference books, or published materials.

On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it is that the information is readily ascertainable by proper means.

**Authority:** CACI No. 4420 (2009); *Syngenta Crop Protection, Inc. v. Helliker*, 138 Cal. App. 4th 1135, 1172 (2006) ("Information that is readily ascertainable by a business competitor derives no independent value from not being generally known").

**MATTEL'S OBJECTIONS:**

1.      This proposed instruction is incomplete and, given defendants' arguments, could be misinterpreted.  The information readily ascertainable affirmative defense asks whether trade secret information was readily available from public sources at the time of the misappropriation.  *A 1 Electronics, Inc. v. Chang*, 342 F. App'x. 293, 295 (9th Cir. 2009) (holding purported trade secret not entitled to legal protection if information was "readily ascertainable through public

-71-

05.07975/3941364.1

1   sources"). It does not ask whether the information theoretically could have been

2   independently conceived, created or developed by the defendant had there been no

3   misappropriation, which MGA nevertheless has argued to the jury. MGA's

4   instruction as drafted could confuse the jury in light of MGA's arguments, and is

5   incomplete.

6         2.     Defendants' modification of CACI 4420 to use the term "any trade

7   secrets" likely will mislead the jury into believing that if a single trade secret

8   asserted by Mattel was readily ascertainable by proper means Defendants did not

9   misappropriate "any" trade secrets. This is erroneous.

10         3.     For the reasons previously discussed, defendants' proposed

11   instruction is confusing because it addresses both parties' trade secret claims in a

12   single instruction.

13         4.     To the extent the Court decides, over Mattel's objections, to give any

14   "Information Was Readily Ascertainable By Proper Means" instruction, Mattel

15   requests that the Court give the instruction below:

16

17   *CACI 4420*

18   *AFFIRMATIVE DEFENSE—INFORMATION WAS READILY*

19   *ASCERTAINABLE BY PROPER MEANS*

20        *MGA did not misappropriate Mattel's trade secrets if MGA proves that the*

21   *information was readily ascertainable by proper means at the time of the alleged*

22   *acquisition, use, or disclosure.*

23        *There is no fixed standard for determining what is "readily ascertainable by*

24   *proper means." In general, information is readily ascertainable if it can be*

25   *obtained, discovered, developed, or compiled without significant difficulty, effort,*

26   *or expense. For example, information is readily ascertainable if it is available in*

27   *trade journals, reference books, or published materials. On the other hand, the*

28   *more difficult information is to obtain, and the more time and resources that must*

1  *be expended in gathering it, the less likely it is that the information is readily*

2  *ascertainable by proper means.*

3        *When determining whether information was readily ascertainable, you*

4  *should not consider whether the defendant likely would have independently*

5  *conceived, created or developed the information had it not misappropriated it.*

6  *Instead, your inquiry is limited to whether the information was readily*

7  *ascertainable at the time of the misappropriation.*

8        ***Authority:** CACI 4420 (modified)*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 **DEFENDANTS' PROPOSED INSTRUCTION RE REASONABLE**
2 **EFFORTS TO PROTECT SECRECY**

3                                **4404**
                **REASONABLE EFFORTS TO PROTECT SECRECY**
4

5          To establish that information is a trade secret, the claimant must prove that it
6 made reasonable efforts under the circumstances to keep the information secret.
7 "Reasonable efforts" are the efforts that would be made by a reasonable business in
8 the same situation and having the same knowledge and resources as the claimant,
9 exercising due care to protect important information of the same kind.  This
10 requirement applies separately to each item that the claimant alleges to be a trade
11 secret.

12          In determining whether or not the claimant made reasonable efforts to keep
13 the information secret, you should consider all of the facts and circumstances.
14 Among the factors you may consider are the following:

15          a.     Whether documents or computer files containing the information were
16 marked with confidentiality warnings;

17          b.     Whether the claimant instructed its employees to treat the information
18 as confidential;

19          c.     Whether the claimant restricted access to the information to persons
20 who had a business reason to know the information;

21          d.     Whether the claimant kept the information in a restricted or secured
22 area;

23          e.     Whether the claimant required employees or others with access to the
24 information to sign confidentiality or nondisclosure agreements;

25          f.     Whether the claimant took any action to protect the specific
26 information, or whether it relied on general measures taken to protect its business
27 information or assets;

28

g.     The extent to which any general measures taken by the claimant would prevent the unauthorized disclosure of the information;

h.     Whether there were other reasonable measures available to the claimant that it did not take.

The presence or absence of any one or more of these factors is not necessarily determinative.


**Authority:** CACI No. 4404 (2009) (modified)


## MATTEL'S OBJECTIONS:

1.     MGA's instruction omits that that the relevant time period for evaluating whether the plaintiff made "reasonable efforts" to protect the secrecy of the information is "as of the time of the misappropriation."  *See CardioVention, Inc. v. Medtronic, Inc*., 483 F.Supp.2d 830, 835 (D. Minn. 2007) (applying California law, found that "CardioVention is correct that information that become publicly available after the time of the misappropriation is irrelevant to the existence of a trade secret at the time of the misappropriation.") (citing *B. Braun Med., Inc. v. Rogers,* 163 F. App'x 500, 505-06 (9th Cir. 2006).

2.     For the reasons previously discussed, defendants' proposed instruction is confusing because it addresses both parties' trade secret claims in a single instruction.

3.     Mattel respectfully requests that the Court adopt Mattel's proposed versions of this instruction, which are tailored to each party's claim: CACI 4404 (Reasonable Efforts to Protect Secrecy).  *See* Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 59, 208.

**DEFENDANTS' PROPOSED INSTRUCTION RE MISAPPROPRIATION BY DISCLOSURE**

**4406**
**MISAPPROPRIATION BY DISCLOSURE**

The defendant misappropriated the claimant's trade secret by disclosure if the defendant:

1.    Disclosed the trade secret without the claimant's consent; and

2.    Did any of the following:

Acquired knowledge of the trade secret by improper means; or

At the time of disclosure, knew or had reason to know that its knowledge of the claimant's trade secret came from or through a third party, and knew or had reason to know that the third party had previously acquired the trade secret by improper means; or

At the time of disclosure, knew or had reason to know that its knowledge of the claimant's trade secret was acquired in circumstances giving rise to a duty to maintain secrecy, which created a duty to keep the information secret; or

At the time of disclosure, knew or had reason to know that its knowledge of the claimant's trade secret came from or through a third party, and that the third party had a duty to the claimant to keep the information secret.

**Authority:** CACI No. 4406 (2009) (modified)

**MATTEL'S OBJECTIONS:**

1.    Both parties rely on the CACI 4406 instruction.  The dispute is whether each party should have its own instruction, and whether the facts underlying the parties' respective trade secret claims justify inclusion of optional language from the model instruction.  Since the facts underlying the parties' trade secret claims require inclusion of different optional language, relying on the same CACI 4406 instruction for both parties is confusing.

1    2.    Defendants' instruction is improper because it includes an optional

2    language from CACI 4406 that is not supported by the facts of MGA's trade secret

3    claim.  Defendants' instruction inquires whether Mattel "knew or had reason to

4    know that its knowledge of  the claimant's trade secret came from or through a

5    third party, and knew or had reason to know that the third party *had previously*

6    *acquired the trade secret by improper means*."  (emphasis added).  This "previous

7    acquisition" instruction is not relevant to MGA's trade secret claim because MGA,

8    unlike Mattel, does not allege that Mattel acquired MGA's trade secrets from

9    former MGA employees.  Instead, MGA alleges that Mattel directly acquired

10   MGA's trade secrets from toy fair show rooms; there was no previous acquisition.

11   Consequently, this optional language will confuse the jury as it relates to MGA's

12   trade secret claim.  In contrast, Mattel's trade secret instruction based on CACI

13   4406 should include this optional language because the facts alleged by Mattel

14   support it.

15   3.    Defendants' instruction is improper because it includes other optional

16   language from CACI 4406 that is not supported by the facts.  Defendants'

17   instruction inquires whether Mattel "knew or have reason to know that its

18   knowledge of the claimant's trade secret was acquired in circumstances giving rise

19   to a duty to maintain secrecy, which created a duty to keep the information secret."

20   In addition to being an incorrect transcription of the model instruction (for the

21   reasons explained below), it is not relevant to MGA's trade secret claim because

22   MGA, unlike Mattel, does not allege that Mattel itself breached a duty to MGA to

23   keep MGA's toy fair show room information secret.  In contrast, Mattel alleges

24   that Machado—a trade secret defendant—acquired Mattel's trade secrets in breach

25   of duties he directly owed to Mattel as an employee.

26   4.    Once these two factually unsupported options are removed, the

27   remaining two options are contained in the CACI 4406 instruction proposed by

28   Mattel for MGA's trade secret claim: (i) acquired knowledge of the trade secrets

1   by improper means; and (ii) at the time of disclosure, knew or had reason to know

2   that its knowledge of the trade secrets came from or through a third party, and that

3   the third party had a duty to MGA to keep the information secret.  *See* Mattel's

4   Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 213.

5        5.      In addition to being factually unsupported, optional language in

6   Defendants' proposed instruction is improperly transcribed from the model

7   instruction.  Defendants' proposed instruction states that "knowledge of the

8   claimant's trade secret *was acquired in circumstances giving rise to a duty to*

9   *maintain secrecy*, which created a duty to keep the information secret."  (emphasis

10  added).  However, the duty to maintain secrecy can exist before wrongful

11  acquisition of the trade secret; Defendants' proposed instruction suggests that the

12  wrongful acquisition itself somehow gives rise to the duty to maintain secrecy.

13  MGA improperly transcribes bracketed language from the model instruction that

14  directs the parties to draft a tailored description of the "circumstances giving rise to

15  duty to maintain secrecy," which in this case arises from the pre-existing

16  contractual and legal duties of Mattel's employees to maintain the secrecy of

17  Mattel's trade secrets.  *See* CACI 4406 ("[at the time of disclosure, knew or had

18  reason to know that [his/her/its] knowledge of [name of plaintiff]'s trade secret[s]

19  was acquired [*insert circumstances giving rise to duty to maintain secrecy*], which

20  created a duty to keep the [select short term to describe, e.g., information]

21  secret][./; or].")  (emphasis added).  Rather than preparing a description, MGA

22  copies the directions.  Mattel's proposed instruction for its own trade secret claim

23  correctly describes the circumstances giving rise to Machado's legal and

24  contractual duty to maintain  secrecy, i.e. whether he "knew or had reason to know

25  that [his] knowledge of the trade secrets was acquired in violation of [his] duty to

26  Mattel or Mattel Mexico to keep the information secret."  *See* Mattel's Fourth

27  Amended Proposed Jury Instructions (Dkt. No. 9683) at 70.

28

1    6.    For the reasons previously discussed, defendants' proposed instruction
2    is confusing because it addresses both parties' trade secret claims in a single
3    instruction.

4    7.    Mattel respectfully requests that the Court adopt Mattel's proposed
5    versions of this instruction, which are properly tailored to each party's claim  *See*
6    Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 70, 213.

**DEFENDANTS' PROPOSED INSTRUCTION RE MISAPPROPRIATION BY USE**

**4407**
**MISAPPROPRIATION BY USE**

The defendant misappropriated the claimant's trade secret by use if the defendant

1.   Used the trade secret without the claimant's consent; and

2.   Did any of the following:

Acquired knowledge of the trade secret by improper means; or

At the time of use, knew or had reason to know that its knowledge of the claimant's trade secret came from or through a third party, and knew or should have known that the third party had previously acquired the trade secret by improper means; or

At the time of use, knew or had reason to know that its knowledge of the claimant's trade secret was acquired under circumstances creating a legal obligation to limit use of the information; or

At the time of use, knew or had reason to know that its knowledge of the claimant's trade secret came from or through a third party, and that the third party had a duty to the claimant to limit use of the information.

**Authority:** CACI No. 4407 (2009) (modified)

1    **MATTEL'S OBJECTIONS:**

2        Mattel objects to Defendants' instruction regarding Misappropriation By

3    Use on the following grounds:

4        1.    Both parties rely on the CACI 4476 instruction.  As above, since the

5    facts underlying the parties' trade secret claims require inclusion of different

6    optional language, relying on the same CACI 4407 instruction for both parties is

7    confusing.

8        2.    MGA's CACI 4407 instruction is flawed for the same reasons its

9    CACI 4406 instruction is flawed.  The facts do not support the optional language

10   from the model instruction used by MGA.

11       3.    Mattel respectfully requests that the Court adopt Mattel's proposed

12   versions of this instruction, which are properly tailored to each party's claim:

13   CACI 4407 (Misappropriation by Use).  *See* Mattel's Fourth Amended Proposed

14   Jury Instructions (Dkt. No. 9683) at 72, 215.[1]

15

16

17

18

19

20

21

22

23

24

25

26       [1]  Mattel's Fourth Amended Proposed Jury Instructions erroneously uses the
27   term "disclosure" rather than "use" for MGA's instruction.  Dkt. No. 9683 at 215.
     Consistent with CACI 4407, the term "use" should be used.
28

505.07975/3941364.1

1  **DEFENDANTS' PROPOSED INSTRUCTION RE IMPROPER MEANS OF**
2  **ACQUIRING TRADE SECRET**

3  **4408**

4  **IMPROPER MEANS OF ACQUIRING TRADE SECRET**

5  Improper means of acquiring a trade secret or knowledge of a trade secret
6  include, but are not limited to theft, bribery, misrepresentation, breach or inducing
7  a breach of a duty to maintain secrecy.

8  However, it is not improper to acquire a trade secret or knowledge of the
9  trade secret by:

10  1. Independent efforts to invent or discover the information;

11  2. Reverse engineering; that is, examining or testing a product to determine
12  how it works, by a person who has a right to possess the product;

13  3. Obtaining the information as a result of a license agreement with the
14  owner of the information;

15  4. Observing the information in public use or on public display; or

16  5. Obtaining the information from published literature, such as trade
17  journals, reference books, the Internet, or other publicly available sources.

18

19  **Authority:** CACI No. 4408 (2009) (modified)

20

21  **MATTEL'S OBJECTIONS:**

22  1.      Defendants' proposed instruction refers to "reverse engineering," but
23  there is no claim that any parties properly acquired another party's trade secrets
24  through reverse engineering.  Accordingly, including a reference to reverse
25  engineering in this particular instruction will unduly confuse the jury and
26  unnecessarily complicate the issues.  *See Wall Data Inc. v. Los Angeles County*
27  *Sheriff's Dep't*, 447 F.3d 769, 784 (9th Cir. 2006) (upholding district court's
28  rejection of a party's proposed jury instructions that were unnecessary to resolution

of claims and issues in dispute).  Likewise, several other subparts to this instruction are inapplicable to Mattel's claims against MGA.  Mattel has proposed an instruction stating that its own trade secrets could have been developed through reverse engineering because the facts support such an instruction.  *See* Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 55.

2.     For the reasons previously discussed, defendants' proposed instruction is confusing because it addresses both parties' trade secret claims in a single instruction.

3.     Mattel respectfully requests that the Court adopt Mattel's proposed versions of this instruction, which are properly tailored to each party's claim: CACI 4408 (Improper Means of Acquiring Trade Secret).  *See* Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 68, 217.

1  **DEFENDANTS' PROPOSED INSTRUCTION RE UNFAIR**

2  **COMPETITION**

3

4  **UNFAIR COMPETITION**

5       MGA Entertainment, Inc. and Mattel claim that the other violated

6  California's Unfair Competition Law, which prohibits business acts or practices

7  that are unlawful, unfair, or fraudulent.  A practice may be considered "unfair"

8  even if it is not "unlawful" or "fraudulent" and vice versa.

9

10       **Authority:** Cal. Bus. & Prof. Code § 17200; *Cel-Tech Commc'ns, Inc. v.*

11  *L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 180 (Cal. 1992); William L. Stern, *Bus. &*

12  *Prof. C . § 17200 Practice,* §§ 3:12-3:13 (2010).

13

14  **MATTEL'S OBJECTIONS:**

15       1.    Defendants' proposed instruction is unnecessary and inapplicable

16  because the unfair competition claim should be decided by the Court, not the jury.

17  *See Cargill  v. Progressive Dairy Solutions*, 362 F. App'x 731, 733-34, 2010 WL

18  178714, at *2 (9th Cir. Jan. 19, 2010) (unpublished) ("[D]efendants' § 17200

19  counterclaim was not subject to a jury trial and would therefore not be a proper

20  basis for allowing the jury to hear motive and cause evidence.") (citation omitted);

21  *Hodge v. Sup. Ct.*, 145 Cal. App. 4th 278, 281 (2006) ("no jury trial is warranted"

22  because "the section 17200 cause of action is equitable and the relief sought is

23  equitable"); *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (a claim under

24  §17200 is "equitable in nature"); *Okura & Co. (America) v. Careau Group*, 783 F.

25  Supp. 482, 490 (C.D. Cal. 1991) (no jury trial for §17200 claim); *see also Granite*

26  *State Ins. Co. v. Smart Modular Techs.*, 76 F.3d 1023, 1027 (9th Cir. 1996) (where

27  legal claims were separate from equitable claims, "the equitable estoppel issues

28  were for the court to decide").

1    2.    Defendants' proposed instruction is confusing in that it purports to

2  address both parties' unfair competition claims in a single, generic instruction that

3  is not tailored to either party's claim.  Doing so risks confusing the jury by

4  suggesting that the parties' respective claims are identical, or substantially similar,

5  when in fact they concern different sets of evidence and circumstances.

6    3.    Defendants' instruction is misleading and erroneous because it

7  suggests that any conduct may support the parties' unfair competition claims even

8  though the Court has limited the conduct giving rise to defendants' unfair

9  competition claim against Mattel to Mattel's alleged interference with MGA's

10  relationship with licensees and distributors.  Dkt. No. 9600 at 91, 111.

11    4.    Defendants' proposed instruction is misleading and incomplete in that

12  it suggests that Mattel's unfair competition claim is raised against MGA alone,

13  even though Mattel raises that claim against other defendants.

14    5.    Should the Court give instructions on unfair competition over Mattel's

15  objections, Mattel requests that the Court adopt Mattel's unfair competition

16  instructions, which distinguish the parties' claims, correctly identify the elements

17  of the claim, and explain available remedies.  See Mattel's Fourth Amended

18  Proposed Jury Instructions (Dkt. No. 9683) at 120, 191, 221, 249.

19

20

21

22

23

24

25

26

27

28

1   **DEFENDANTS' PROPOSED INSTRUCTION RE UNFAIR**
2   **COMPETITION—UNLAWFUL PRACTICES**

3           **UNFAIR COMPETITION—UNLAWFUL PRACTICES**
4
5           For the purposes of the Unfair Competition Law, an "unlawful business act
6   or practice" includes any business act or practice that violates state or federal law.
7
8
9           **Authority**: Cal. Bus. & Prof. Code § 17200; *Cel-Tech Commc'ns, Inc. v.*
10  *L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 180 (Cal. 1992); *Saunders v. Super. Ct.,* 27
11  Cal. App. 4th 832, 838-39 (Cal. Ct. App. 1994) ("The 'unlawful' practices
12  prohibited by section 17200 are any practices forbidden by law, be it civil or
13  criminal, federal, state, or municipal, statutory, regulatory, or court-made.");
14  William L. Stern, *Bus. & Prof. C. §17200 Practice,* § 3:56 (2010).

15  **MATTEL'S OBJECTIONS:**
16          1.      Defendants' proposed instruction is unnecessary and inapplicable
17  because the unfair competition claim should be decided by this Court, not the jury.
18          2.      Defendants' instruction is erroneous because it suggests that an
19  "unlawful business act or practice" may support the parties' unfair competition
20  claims even though MGA has not identified any predicate state or federal law.
21  Dkt. No. 9600 at 91, 111.  An unlawful business practice under the UCL is one that
22  is "forbidden by law."  Klein v. Earth Elements, Inc., 59 Cal. App. 4th 965, 969
23  (1997).  To prove this aspect of a UCL claim, MGA must borrow a statutory or
24  common law violation as a predicate.  Bernardo v. Planned Parenthood Fed'n, 115
25  Cal. App. 4th 322, 352 (2004).  The only such predicate that MGA has pleaded is
26  its Lanham Act claims.  Because the Court has granted summary judgment on
27  those claims, Dkt. No. 9600 at 108 and 110, they cannot support a UCL violation.
28

05.07975/3941364.1

3.    Defendants' proposed instruction is erroneous because it suggests that an "unlawful business act or practice" may support the parties' unfair competition claims even though the Court has limited the conduct giving rise to defendants' unfair competition claim against Mattel to "unfair" conduct related to Mattel's alleged interference with MGA's relationship with licensees and distributors.  Dkt. No. 9600 at 91, 111.

4.    Defendants' proposal to address both parties' unfair competition claims in a single, non-tailored, and generic instruction is confusing and prejudicial for the reasons previously explained.

5.    Should the Court give instructions on unfair competition claims over Mattel's objections, Mattel requests that the Court adopt Mattel's unfair competition instructions, which correctly identify the elements of the claim and available remedies.  See Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 120, 191, 221, 249.

605.07975/3941364.1

**DEFENDANTS' PROPOSED INSTRUCTION RE UNFAIR COMPETITION—FRAUDULENT PRACTICES**

### UNFAIR COMPETITION—FRAUDULENT PRACTICES

For purposes of the Unfair Competition Law, a "fraudulent business act or practice" means any business act or practice that is likely to confuse or deceive members of the public.  To prove that a business act or practice was fraudulent, the claimant need not prove that any members of the public were actually confused or deceived, that any member of the public actually relied upon the fraudulent practice, or that any member of the public sustained damages as a result of the practice.

**Authority:** Cal. Bus. & Prof. Code § 17204; *Comm. on Children's Television v. Gen. Foods Corp.,* 35 Cal. 3d 197, 211 (Cal. 1983); William L. Stern, *Bus. & Prof. C. § 17200 Practice,* §§ 3:154-3:167 (2010).

**MATTEL'S OBJECTIONS:**

1.      Defendants' proposed instruction is unnecessary and inapplicable because the unfair competition claim should be decided by this Court, not the jury.

2.      The instruction erroneously states that "[t]o prove that a business act or practice was fraudulent, the claimant need not prove that any members of the public were actually confused or deceived, that any member of the public actually relied upon the fraudulent practice . . . ."  Actual reliance is required to prove standing under § 17200.  See Hofstetter v. Chase Home Finance, LLC, 2010 WL 3259773, at *15 (N.D. Cal. Aug. 16, 2010) ("Where a plaintiff asserts that conduct is 'fraudulent' under Section 17200, the plaintiff must also plead actual reliance to meet the standing requirements of the statute.") (citing Morgan v. AT & T Wireless Servs., Inc., 177 Cal. App. 4th 1235, 1257 (2009)).

3.     The instruction erroneously states that "the claimant need not prove . . . that any member of the public sustained damages as a result of the practice."  If the party bringing an unfair competition claim has not suffered lost money or property, it does not have standing to bring the claim.  The only case cited by MGA has been overruled.  See Comm. on Children's Television v. Gen. Foods Corp., 35 Cal. 3d 197, 211 (1983), abrogated by statute as stated in Californians For Disability Rights v. Mervyn's, LLC, 39 Cal. 4th 223, 227 (2006) ("After Proposition 64, which the voters approved at the November 2, 2004, General Election, a private person has standing to sue only if he or she 'has suffered injury in fact and has lost money or property as a result of such unfair competition.'").  An "actual injury" is a distinct and palpable injury suffered as a result of Mattel's actions.  Buckland v. Threshold Enter., Ltd., 155 Cal. App. 4th 798, 814 (2007)  "Lost money or property" requires a showing that Mattel directly gained money or property that MGA lost and in which MGA had a vested interest.  Silvaco Data Sys. v. Intel Corp., 184 Cal. App. 4th 210, 244-45 (2010).  In order to prove its claim, MGA must have suffered a loss of money or property directly to Mattel that can be restored to MGA.  Id.  Mattel's proposed unfair competition instructions correctly identify these standing requirements and explain the limitations on remedies.

4.     Defendants' proposed instruction is erroneous because it suggests that a fraudulent business act or practice may support the parties' unfair competition claims even though the Court has limited the conduct giving rise to defendants' unfair competition claim against Mattel to "unfair" conduct related to Mattel's alleged interference with MGA's relationship with licensees and distributors.  Dkt. No. 9600 at 91, 111.

5.     Defendants' proposal to address both parties' unfair competition claims in a single, non-tailored, and generic instruction is confusing and prejudicial for the reasons previously explained.

1      6.      Should the Court give instructions on unfair competition claims over

2   Mattel's objections, Mattel requests that the Court adopt Mattel's unfair

3   competition instructions, which correctly identify the elements of the claim and

4   available remedies.  See Mattel's Fourth Amended Proposed Jury Instructions

5   (Dkt. No. 9683) at 120, 191, 221, 249.

**DEFENDANTS' PROPOSED INSTRUCTION RE UNFAIR COMPETITION—UNFAIR PRACTICES**

### UNFAIR COMPETITION—UNFAIR PRACTICES

For the purposes of the Unfair Competition Law, an "unfair business act or practice" means a business act or practice that threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.

**Authority:** *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 187 (Cal. 1992); William L. Stern, Bus. & Prof. C. § 17200 Practice, §§ 3:113-3:117 (2010)

**MATTEL'S OBJECTIONS:**

Mattel objects to Defendants' instruction regarding Unfair Competition – Unfair Practices on the following grounds:

1.    Defendants' proposed instruction is unnecessary and inapplicable because the unfair competition claim should be decided by this Court, not the jury.

2.    Defendants' proposal to address both parties' unfair competition claims in a single, non-tailored, and generic instruction is confusing and prejudicial for the reasons previously explained.

3.    Should the Court give instructions on unfair competition claims over Mattel's objections, Mattel requests that the Court adopt Mattel's unfair competition instructions, which correctly identify the elements of the claim and available remedies.  See Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 120, 191, 221, 249.

**DEFENDANTS' PROPOSED INSTRUCTION RE PRELIMINARY INSTRUCTION—COPYRIGHT**

### 17.0

### PRELIMINARY INSTRUCTION—COPYRIGHT

Mattel claims ownership of the copyright in certain works and seeks damages against MGA Entertainment, Inc. ("MGA"), MGA Entertainment (HK) Limited ("MGA HK"), and Isaac Larian, for copyright infringement.  MGA, MGA HK, and Mr. Larian deny that Mattel owns the copyrighted works at issue and also deny that they infringed the copyright in any such works.  If you determine that Mattel owns one or more of the copyrighted works at issue, you will be asked to determine whether certain Bratz dolls, specifically the first generation dolls (Cloe, Yasmin, Sasha, and Jade) and/or either of two later generation dolls, Ooh La La Cloe or Formal Funk Dana, infringe those works.

### DEFINITION OF COPYRIGHT

The owner of a copyright has the right to exclude any other person from reproducing, preparing derivative works from, distributing, performing, displaying, or using the work covered by copyright for a specific period of time.

A copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, mask works fixed in semiconductor chip products, or a computer program.

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles or discoveries cannot themselves be copyrighted.

The copyrighted work must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

MATTEL'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1    I have determined that certain elements of the Carter Bryant drawings and

2  preliminary Bratz doll sculpt are not original or subject to copyright protection.  I

3  will identify those elements for you in later instructions.

4                              COPYRIGHT INTERESTS

5    The copyright owner may transfer to another person all or part of the

6  owner's property interest in the copyright, that is, the right to exclude others from

7  reproducing, preparing a derivative work from, distributing, performing, or

8  displaying, the copyrighted work.  To be valid, the transfer must be in writing.  The

9  person to whom a right is transferred is called an assignee.

10    Mattel claims that Carter Bryant assigned the copyrighted works to Mattel.

11  MGA, MGA HK, and Mr. Larian claim that Carter Bryant assigned the

12  copyrighted works to MGA.

13                           COPYRIGHT REGISTRATION

14    MGA has registered certain of the works at issue with the U.S. Register of

15  Copyrights and obtained certificates of copyright for those works.  The works

16  registered by MGA are:

17    [Insert to come following meet and confer]

18    Mattel has also sought and obtained copyright registrations for various of the

19  works at issue in this case.

20    [Insert to come following meet and confer]

21    A copyright registration does not determine the degree, scope, or amount of

22  original protected expression in the works.

23                           MATTEL'S BURDEN OF PROOF

24    Mattel contends that the defendants have infringed its copyrights.  Mattel

25  has the burden of proving by a preponderance of the evidence that Mattel is the

26  owner of the copyrights and that MGA, MGA HK, or Mr. Larian copied original

27  elements of the copyrighted works.  Preponderance of the evidence means that you

28

1   must be persuaded by the evidence that it is more probably true than not true that
2   the copyrighted work(s) were infringed.

### PROOF OF COPYING: SCULPTS

3
4       To prove that MGA or Mr. Larian infringed any copyrighted sculpt(s) or
5   drawing(s) of a sculpt that you find is owned by Mattel, Mattel must prove that
6   MGA, MGA HK, or Mr. Larian had access to such work(s) and that the Bratz doll
7   sculpts are virtually identical to such work(s).

### PROOF OF COPYING: SKETCHES

8
9       To prove that MGA infringed any copyrighted sketch(es) that you find is
10  owned by Mattel, Mattel must prove that MGA, MGA HK, or Mr. Larian had
11  access to such work(s) and that there are substantial similarities between the Bratz
12  dolls and any such work(s).  In making this determination, you must disregard
13  similarities in unprotectable ideas and unprotectable elements of the works at issue.

### LIABILITY FOR INFRINGEMENT

14
15      One who reproduces, prepares derivative works from, or distributes a
16  copyrighted work without authority from the copyright owner during the term of
17  the copyright, infringes the copyright.

### VICARIOUS INFRINGEMENT

18
19      MGA HK or Mr. Larian is liable for copyright infringement by another if
20  MGA HK or Mr. Larian has profited directly from the infringing activity and the
21  right and ability to supervise the infringing activity, whether or not MGA HK or
22  Mr. Larian knew of the infringement.

### CONTRIBUTORY INFRINGEMENT

23
24      MGA HK or Mr. Larian is liable for copyright infringement by another if
25  MGA HK or Mr. Larian knew or should have known of the infringing activity and
26  induced or materially contributed to the activity.

27
28

1

<u>DEFENSES TO INFRINGEMENT</u>

2   MGA, MGA HK, and Mr. Larian contend that there is no copyright

3  infringement.  There is no copyright infringement if you find that Mattel does not

4  own any of the copyrighted works at issue, that the defendants independently

5  created the challenged works, or that the only items you find have been copied are

6  unprotectable elements, as explained more fully below.

7   **Authority:** 9th Cir. Civ. Jury Instr. 17.0 (2007); *Mattel, Inc. v. MGA*

8  *Entertainment, Inc.,* 616 F.3d 904, 917(9th Cir. 2010); Dkt. # 9538 at 12-29 (Order

9  on Motions for Summary Judgment); 37 CFR § 202.20(b)(2)(i-ii); 17 U.S.C. §

10  410(c)

11

12  **MATTEL'S OBJECTIONS:**

13   1.    This proposed instruction, which is more than three pages in length, is

14  too long and confusing to be useful to the jury.

15   2.    It is both incomplete and overbroad.  To the extent this proposed

16  introductory instruction addresses relevant issues, these are, or should be,

17  addressed in more detailed and specified instructions.  Addressing them in an

18  "overview" or "introductory" format omits critical elements and information, as

19  evidenced by the more detailed instructions that follow.  This instruction also is

20  overbroad as it references irrelevant issues, including its identification of types of

21  works that may be subject to copyright protection but are not at issue in this case

22  (such as musical and dramatic works), and defenses that defendants have not

23  properly asserted (such as independent creation).

24   3.    Defendants describe Mattel's copyright infringement claim as

25  including only "the first generation dolls . . . and/or either of two later generation

26  dolls," while failing to indicate that Mattel's claim also includes infringement by

27  the final Bratz production sculpt that was incorporated into all or almost all MGA's

28  Bratz dolls.  The Court has already found disputed questions of fact concerning

1    whether the final Bratz production sculpt is infringing.  *See* MSJ Order at 15-16.

2    Defendants also fail to identify Mattel's claims based on defendants' infringement

3    of Mattel's rights in the Bratz characters or infringement of the specific

4    compilation or arrangement of elements in Mattel's copyrighted Bratz works.

5           4.     This instruction misleadingly presents the elements MGA claims the

6    Court has found are "not original or subject to copyright protection."  It is

7    confusing to state that certain "elements" are not "protectable" without providing

8    any context concerning the relevance of protectable or unprotectable elements, and

9    without explaining the relevance of even unprotected elements, including to a

10   claim of infringement of the compilation of elements.

11          5.     Similarly, it is biased for defendants to purport to identify what a

12   copyright registration "does not determine" without also stating that a certification

13   of registration carries a presumption of validity, including originality.

14          6.     Defendants' references to their purported receipt of an assignment of

15   the copyrights in Bryant's Bratz works and to their own registrations of the

16   copyrights in those works are misleading and irrelevant.  Whether MGA claims to

17   own or has registered copyrights in works that Mattel claims to own has no bearing

18   on whether Mattel will be able to establish its ownership of those works or whether

19   defendants infringed Mattel's copyrights in them.  That is particularly so in light of

20   the Court's dismissal of MGA's bona fide purchaser / 17 U.S.C. § 205 defense,

21   which asserted (wrongly, as the Court held) that MGA had priority over Mattel

22   based on Bryant's purported assignment of rights to MGA.  *See* MSJ Order at 118.

23   This part of defendants' instruction also is incomplete in that MGA has not

24   proposed "inserts" for which it has left blanks.

25          7.     Defendants' statement that Mattel "claims that Carter Bryant assigned

26   the copyrighted works to Mattel" is incomplete in that it ignores other bases

27   through which Mattel claims ownership of Bryant's works, including through the

28   work-for-hire doctrine.

8.    Defendants' statement that the jury "must disregard similarities in unprotectable ideas and unprotectable elements of the works at issue" is erroneous. Even "unprotectable" elements are relevant to the copyright infringement test, including to the initial stage of the extrinsic test and the entirety of the intrinsic test, as discussed further below.   *See* Mattel's Objection to Defendants' Proposed Jury Instruction re Test for Copyright Infringement, *infra*.

9.    Defendants' statement that Mattel must prove "that the Bratz doll sculpts are virtually identical to such work(s)" misstates the applicable test for copyright infringement.  As discussed below, Mattel is required to prove the sculpts are "virtually identical overall" to Mattel's copyrighted works or that there are "substantial similarities" between the protected elements of such works.  *See Mattel, Inc. v. MGA Entertainment, Inc*., 616 F.3d 904, 914-16 (9th Cir. 2010).

10.    It is incorrect for defendants to state that "there is no copyright infringement [if] the only items you find have been copied are unprotectable elements," because such a statement overlooks Mattel's claim to infringement of the specific compilation or arrangement of elements in Bryant's works – a compilation of even unprotectable elements is itself protectable.  *See, e.g.*, *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 348 (1991) ("[E]ven a directory that contains absolutely no protectible written expression, only facts, meets the constitutional minimum for copyright protection if it features an original selection or arrangement."); *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009) ("Because it is appropriate for the jury to see unprotected elements of a copyrighted work so that it may assess whether the combination of such elements warrants protection, the district court did not abuse its discretion in allowing into evidence complete Fast Action Bingo screen displays that include unprotectable elements.").

11.    MGA's instruction also erroneously ignores Mattel's claim to infringement of its rights in Bratz characters.  *See Walt Disney Prods. v. Air*

MATTEL'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

05.07975/3941364.1

1  *Pirates*, 581 F.2d 751, 754 (9th Cir. 1978) (copyright protection extends to

2  characters); *Warner Bros. Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 235 (2d Cir.

3  1983) ("Plaintiffs own the copyright in various works embodying the character of

4  Superman and have thereby acquired copyright protection for the character

5  itself.").  As with Mattel's claim for infringement of the compilation of elements in

6  the Bratz works, the jury may, contrary to defendants' instruction, consider

7  "unprotectable" elements in deciding whether MGA infringed Mattel's rights in

8  the Bratz characters, and in particular may decide whether the compilation of such

9  unprotectable elements created protected character rights.  *See, e.g., Bach v.*

10 *Forever Living Products U.S., Inc.*, 473 F. Supp. 2d 1127, 1134-1135 (W.D. Wash.

11 2007) ("[C]ases . . . that have focused substantially on character infringement,

12 rather than considering the character as one element of an entire story, . . . have not

13 done a . . . dissection" of protectable and unprotectable elements, but instead have

14 focused on "the unique combination of elements that makes up a protected

15 character."); *Anderson v. Stallone*, 1989 WL 206431, at *7-8 (C.D. Cal. Apr. 25,

16 1989) (considering combination of elements of character, including physical and

17 emotional characteristics, speaking mannerisms, interrelationships, and name of

18 the character); *Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Co., Inc.*,

19 900 F. Supp. 1287, 1296 (C.D. Cal. 1995) (James Bond character subject to

20 protection based on combination of characteristics); *see also Hogan v. DC Comics*,

21 48 F. Supp. 2d 298, 311 (S.D.N.Y. 1999) (concluding that although certain

22 identified similarities between characters "are unoriginal, and therefore,

23 unprotectable elements, plaintiffs could still prevail on a claim for copyright

24 infringement if the way in which the two works express these ideas is substantially

25 similar or these elements have been combined in an original way").

26     12.    Defendants' reference to a defense of "independent creation" is off

27 point.  Defendants raised no such defense in their Answer to Mattel's Fourth

28 Amended Counterclaims (Dkt. No. 8578) or in the parties' proposed Final Pretrial

Conference Order (*see* Amended Final Pretrial Conference Order at 19-20), and they do not propose a jury instruction for it.  Any such defense is waived.  *S. Cal. Retail Clerks Union and Food Emp'rs Joint Pension Trust Fund v. Bjorklund*, 728 F.2d 1262, 1264 (9th Cir. 1984) ("issues not preserved in the pretrial order have been eliminated from the action").  Accordingly, the defense should not be referenced in jury instructions.

13.  Mattel objects to the terms "sketches" and "preliminary sculpt" as applied to Bryant's designs as derogatory and biased.

14.  To the extent the Court decides, over Mattel's objections, to give any "preliminary" instruction on Mattel's copyright infringement claim, Mattel requests that the Court adopt the following instruction:


*17.0*

*PRELIMINARY INSTRUCTION—COPYRIGHT*

*As explained in earlier instructions, Mattel claims ownership of copyrights in Carter Bryant's Bratz-related drawings, designs, sculpts and characters prepared or created while Mr. Bryant was a Mattel employee, and Mattel seeks damages against defendants for copyright infringement.  Defendants deny that Mattel owns the copyrights in Mr. Bryant's Bratz-related works and further deny that they infringed those copyrights.  To help you understand the evidence in this case, I will explain some of the legal terms that may be relevant to Mattel's copyright infringement claim.  These terms are provided in this instruction by way of background and introduction, and they will be used and discussed further in other instructions that will follow.*

*DEFINITION OF COPYRIGHT*

*The owner of a copyright has the right to exclude any other person from reproducing, distributing, performing, displaying, or preparing derivative works based on the work covered by copyright for a specific period of time.*

*Copyright law protects literary works, characters, pictorial works, graphic works, and sculptural works, among other types of works.  Ideas and concepts cannot themselves be copyrighted, but the works that embody those ideas and concepts may be.  The copyrighted work must be original.  An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.*

*COPYRIGHT INTERESTS*

*The copyright owner may transfer to another person all or part of the owner's property interest in the copyright; that is, the right to exclude others from reproducing, preparing a derivative work from, distributing, performing, or displaying, the copyrighted  work.  The person to whom a right is transferred is called an assignee.*

*You have previously been instructed on the grounds and bases on which Mattel claims ownership of the copyrights in Mr. Bryant's Bratz-related works.*

*PROOF OF COPYING*

*To prove that the defendants copied Mattel's works, Mattel may show that the defendants had access to Mattel's copyrighted works and that there are substantial similarities between the defendants' Bratz products and Mattel's copyrighted works.*

MATTEL'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

605.07975/3941364.1

1    *LIABILITY FOR INFRINGEMENT*

2        *One who reproduces, prepares derivative works from, distributes or displays*

3    *a copyrighted work without authority from the copyright owner during the term of*

4    *the copyright, infringes the copyright.  Copyright may also be infringed by*

5    *vicariously infringing and contributorily infringing Mattel's works.*

6        ***Authority****:  9th Cir. Civ. Jury Instr. 17.0 (2007) (modified).*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **DEFENDANTS' PROPOSED INSTRUCTION RE COPYRIGHT—**
2  **DEFINED**

3                              **17.1**

4                    **COPYRIGHT—DEFINED**

5       Copyright is the exclusive right to copy.  This right to copy includes the
6  exclusive rights to:

7       1.      authorize, or make additional copies or otherwise reproduce the
8  copyrighted work;

9       2.      recast, transform, adapt the work, that is prepare derivative works
10  based upon the copyrighted work;

11       3.      distribute copies of the copyrighted work to the public by sale or other
12  transfer of ownership; and

13       4.      display publicly a copyrighted pictorial or graphic work.

14       It is the owner of a copyright who may exercise these exclusive rights to
15  copy.  The term "owner" includes the author of the work and an assignee.  In
16  general, copyright law protects against production, adaptation, and distribution and
17  display of virtually identical or substantially similar copies of the owner's
18  copyrighted work without the owner's permission.  An owner may enforce these
19  rights to exclude others in an action for copyright infringement.

20       **Authority:** 9th Cir. Civ. Jury Instr. 17.1 (2007).

21

22  **MATTEL'S OBJECTIONS:**

23       1.      Mattel's corresponding proposed instruction is preferable because it
24  frames the definition of "copyright" in the context of Mattel's claim in this case,
25  including by noting the specific works Mattel claims are infringing.

26       2.      Defendants' instruction is incomplete in that it suggests that Mattel's
27  only claim to ownership of Bryant's Bratz-related works is through a written
28  assignment, while Mattel actually claims ownership through other means,

1  including through the work-for-hire doctrine.  Mattel's corresponding instruction

2  properly references Mattel's claim to ownership of Bratz-related works as works-

3  for-hire: 17.1 (Copyright—Defined).  *See* Mattel's Fourth Amended Proposed Jury

4  Instructions (Dkt. No. 9683) at 80.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' PROPOSED INSTRUCTION RE COPYRIGHT—SUBJECT MATTER—GENERALLY**

**17.2**

**COPYRIGHT—SUBJECT MATTER—GENERALLY**

The works in issue in this trial, the preliminary Bratz doll sculpt and Carter Bryant's sketches, are known as: pictorial works, graphic works, and sculptural works, which include, such as two-dimensional and three-dimensional works of fine, graphic and applied art, photographs, prints and art reproductions.

You are instructed that a copyright may be obtained in sculpts and sketches and that these works can be protected by the copyright law.  Only that part of the works comprised of original works of authorship fixed in any tangible medium of expression from which it can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device is protected by the Copyright Act.

Copyright protection for an original work of authorship does not extend to any ideas or concepts, regardless of the form in which they are described, explained, illustrated, or embodied.

**Authority:** 9th Cir. Civ. Jury Instr. 17.2 (2007).

**MATTEL'S OBJECTIONS:**

1.      Defendants' description of Mattel's copyright infringement claim is incomplete and misleading because it suggests that only a single sculpt is "at issue," while in fact many sculpts, both infringing and infringed, are at issue.  The instruction also is biased in its characterization of the one sculpt referenced as "preliminary."  Mattel objects to the term "sketches" to describe Bryant's drawings and designs as derogatory.

2.     The instruction is unnecessary and unhelpful.  It contains general information concerning copyright law, including technical terms used to describe the types of works at issue, that the jury need not understand, and is duplicative of other instructions concerning the scope of copyright protection and the application of copyright law to "ideas and concepts."

3.     Mattel objects to the sentence, "Only that part of the works comprised of original works of authorship fixed in any tangible medium of expression from which it can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device is protected by the Copyright Act," as irrelevant, confusing, and unhelpful.

4.     This instruction contains typographical errors in the first paragraph.

5.     To the extent the Court decides to give any instruction on the subject matter of copyright, Mattel requests that the Court adopt the following instruction:

*17.2*

*COPYRIGHT—SUBJECT MATTER—GENERALLY*

*Carter Bryant's Bratz-related drawings, designs, sculpts and characters involved in this trial are referred to under the copyright law as pictorial works, graphic works or sculptural works.  You are instructed that a copyright may be obtained in such types of works.*

**Authority**:  *9th Cir. Civ. Jury Instr. 17.2 (2007) (modified).*

05.07975/3941364.1

**DEFENDANTS' PROPOSED INSTRUCTION RE COPYRIGHT—SUBJECT MATTER—IDEAS AND EXPRESSION**

**17.3**

**COPYRIGHT—SUBJECT MATTER—IDEAS AND EXPRESSION**

Copyright law allows the author of an original work to prevent others from copying the way or form the author used to express the ideas in the author's work. Only the particular expression of an idea can be copyrighted. Copyright law does not give the author the right to prevent others from copying or using the underlying ideas contained in the work, such as concepts, or discoveries.

The right to exclude others from copying extends only to how the author expressed the ideas in the copyrighted work. The copyright is not violated when someone uses an idea from a copyrighted work, as long as the particular expression of that idea in the work is not copied.

Copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by others' work.

**Authority:** 9th Cir. Civ. Jury Instr. 17.3 (2007); *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 917 (9th Cir. 2010); Dkt. # 9538 at 15, 17, 27 (Order on Motions for Summary Judgment); *Feist Publications, Inc. v. Rural Telephone Co.*, 499 U.S. 340, 349-50 (1991); *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 136 (2d Cir. 2004); *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 900-901 (9th Cir. 1987).


**MATTEL'S OBJECTIONS:**

1.      Mattel's version of this proposed instruction is preferable in that it clarifies that even though copyright law is not violated when only an "idea" is misappropriated, other laws, including trade secret law, may be. *See* Mattel's Fourth Amended Proposed Jury Instructions, at 89. Mattel's version of this

505.07975/3941364.1

proposed instruction would therefore help the jury understand the distinctions among the different intellectual property claims at issue, and would ensure that the jury is not confused by a suggestion that a finding of non-infringement also requires or suggests a finding of no trade secret misappropriation.

2.      Mattel objects to the final paragraph of defendants' proposed instruction, which is not included in the model version of this instruction, because it is biased and erroneous.  Defendants' addition is argumentative to the extent it suggests defendants merely "built freely upon" Mattel's copyrighted works, and erroneous in the suggestion that such conduct, which could easily describe both infringing and non-infringing conduct, is somehow always "encouraged" by copyright law.

3.      Mattel respectfully requests that the Court give Mattel's proposed instruction on this issue: 17.3 (Copyright—Subject Matter—Ideas and Expression). *See* Mattel's Fourth Amended Proposed Jury Instructions at 89.

1  **DEFENDANTS' PROPOSED INSTRUCTION RE COPYRIGHT**

2  **INFRINGEMENT—ELEMENTS—OWNERSHIP AND COPYING**

3  **17.4**

4  **COPYRIGHT INFRINGEMENT—ELEMENTS—OWNERSHIP AND**

5  **COPYING**

6       Anyone who copies original elements of a copyrighted work during the term

7  of the copyright without the owner's permission infringes the copyright.

8       On Mattel's copyright infringement claim, Mattel has the burden of proving

9  both of the following by a preponderance of the evidence:

10       1.    Mattel is the owner of a valid copyright(s); and

11       2.    MGA copied original elements from any copyrighted work found to

12  be owned by Mattel.

13       If you find that Mattel has proved both of these elements, your verdict

14  should be for Mattel.  If, on the other hand, Mattel has failed to prove either of

15  these elements, your verdict should be for MGA, MGA HK and Mr. Larian.

16       **Authority:** 9th Cir. Civ. Jury Instr. 17.4 (2007)

17

18  **MATTEL'S OBJECTIONS:**

19       1.    The parties submitted similar versions of this proposed instruction.

20  *See* Mattel's Fourth Amended Proposed Jury Instructions, at 83.  Mattel's version

21  is preferable because it explains, concerning the requirement that Mattel prove that

22  it owns a valid copyright, that the Court has previously instructed the jury on how

23  to make that determination.

24       2.    Defendants' proposed instruction is inaccurate in that it characterizes

25  Mattel's claim as being against MGA alone; Mattel's claim is against MGA, MGA

26  HK and Larian.

27

28

1        3.       Mattel respectfully requests that the Court give Mattel's proposed

2   instruction on this issue: 17.4 (Copyright Infringement—Ownership and Copying).

3   *See* Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 83.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' PROPOSED INSTRUCTION RE COPYRIGHT INFRINGEMENT—OWNERSHIP OF VALID COPYRIGHT—DEFINITION**

**17.5**

**COPYRIGHT INFRINGEMENT—OWNERSHIP OF VALID COPYRIGHT—DEFINITION**

Mattel is the owner of a valid copyright if Mattel proves by a preponderance of the evidence that:

1.      Mattel's work is original; and

2      Mattel is the author or creator of the work or received a transfer of the copyright.

If you determine that Mattel is the owner of any Bryant sketch or preliminary Bratz doll sculpt, it is that sketch and/or sculpt that you are to use to compare to the Bratz first generation dolls and two later generation dolls (Ooh La La Cloe and Formal Funk Dana) for purposes of your verdict on Mattel's copyright claim.

If you find that Mattel does not own any of the Bryant sketches or the preliminary Bratz doll sculpt, you must find for MGA, MGA HK and Mr. Larian on the issue of copyright infringement.

**Authority:** 9th Cir. Civ. Jury Instr. 17.5 (2007); Dkt. # 9538 at 16, 17-24, 28-29 (Order on Motions for Summary Judgment)

**MATTEL'S OBJECTIONS:**

1.      This instruction is unnecessary and would create confusion. First, the concept of "originality" is addressed in other instructions proposed by both parties that are more focused and more on point. *See* Mattel's Fourth Amended Proposed Jury Instructions, at 87. Second, stating that Mattel must be the "author or creator" of the works is confusing because the jury will not likely understand that Mattel is

1   the legal "author" of the works if they are works-for-hire.  Third, this instruction is

2   unnecessary because other instructions explain that Mattel may "own" the

3   copyrights in the Bratz-related works through an assignment or because they are

4   works-for-hire.

5          2.     Mattel objects to the final two paragraphs in this proposed instruction,

6   neither of which is included in the model instruction, as misleading, biased and

7   incorrect.  The proposed instruction ignores that Mattel's claim to infringement

8   extends not only to first generation and two specified later generation dolls, but

9   also to the final Bratz production sculpt – a sculpt that was incorporated by MGA

10  into substantially all Bratz dolls it produced.

11         3.     The instruction is biased in its characterization of the one sculpt

12  defendants reference as "preliminary" and of Bryant's designs as "sketches."

13         4.     The instruction is inaccurate in that it suggests that the jury must

14  evaluate Mattel's infringement claim based only on whether any individual

15  copyrighted work is infringed, rather than whether Mattel's copyrighted works, in

16  isolation or in combination, were infringed.  *See Castle Rock Entertainment, Inc. v.*

17  *Carol Pub. Group, Inc.*, 150 F.3d 132, 138 (2d Cir. 1998) (single book infringed

18  plaintiff's copyrights in numerous episodes of "Seinfeld," even though the amount

19  of expression copied from each individual episode was relatively small).

20         5.     To the extent the Court decides, over Mattel's objections, to give any

21  instruction on this issue, Mattel requests that the Court adopt the following

22  instruction:

23

24                                          *17.5*

25        *COPYRIGHT INFRINGEMENT—OWNERSHIP OF VALID*

26                          *COPYRIGHT—DEFINITION*

27         *Mattel is the owner of a valid copyright in Carter Bryant's Bratz-related*

28  *works if it proves by a preponderance of the evidence that:*

1          *1. Carter Bryant's Bratz-related works are original; and*

2          *2. Mattel received a transfer of the copyright in such works in writing or*

3    *owns those works as works-for-hire.  The questions whether Mattel received a*

4    *valid transfer of the copyrights in Carter Bryant's Bratz-related works or owns*

5    *them as works-for-hire are the subject of other instructions.*

6          ***Authority****:  9th Cir. Civ. Jury Instr. 17.5 (2007) (modified).*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

05.07975/3941364.1

MATTEL'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1  **DEFENDANTS' PROPOSED INSTRUCTION RE COPYRIGHT**
2  **INTERESTS—AUTHORSHIP**

3  **17.6**

4  **COPYRIGHT INTERESTS—AUTHORSHIP**

5   The creator of an original work is called the author of that work.  An author
6  originates or "masterminds" the original work, controlling the whole work's
7  creation and causing it to come into being.

8   Others may help or may make valuable or creative contributions to a work.
9  However, such contributors cannot be the authors of the work unless they caused
10  the work to come into being.  One must translate an idea into a fixed, tangible
11  expression in order to be the author of the work.  Merely giving an idea to another
12  does not make the giver an author of a work embodying that idea.

13   **Authority:** 9th Cir. Civ. Jury Instr. 17.6 (2007)

14

15  **MATTEL'S OBJECTIONS:**

16   1. This proposed instruction is irrelevant to any issue in dispute.
17  Mattel's claim does not turn on whether it "authored" Bryant's works, but rather
18  whether it "owns" them.  Mattel's proposed instructions amply explain the bases
19  through which Mattel claims ownership of the copyrights in Bryant's works
20  without including unnecessary complications concerning the rights and status of
21  "authors" versus assignees under the copyright law, which have no bearing on the
22  issues to be tried.  Defendants' proposed instruction focusing on "authorship" is
23  likely to confuse and mislead the jury concerning whether Mattel can prevail on its
24  claim even if it does not establish that it is the "creator" or "author" of the works.

25   2. To the extent the Court decides, over Mattel's objections, to give any
26  instruction on authorship, Mattel requests that the Court adopt the following
27  instruction:

28

05.07975/3941364.1

*17.6*

*COPYRIGHT INTERESTS—AUTHORSHIP*

*(17 U.S.C. § 201(a))*

*The creator of an original work is called the author of that work.  An author originates or "masterminds" the original work, controlling the whole work's creation and causing it to come into being.  Others may help or may make valuable or creative contributions to a work.  However, such contributors cannot be the authors of the work unless they caused the work to come into being.*

*Mattel may pursue a claim for copyright infringement of Bryant's Bratz-related works provided that it is the owner of the copyrights in the works,  whether or not it is also the "author" of those works.  Other instructions address how you should determine if Mattel owns the copyrights in the works it claims were infringed.*

*Authority:  9th Cir. Civ. Jury Instr. 17.6 (2007) (modified).*

**DEFENDANTS' PROPOSED INSTRUCTION RE COPYRIGHT INTERESTS—JOINT AUTHORS**

### 17.7

### COPYRIGHT INTERESTS—JOINT AUTHORS

If you determine that Mattel is the owner of any Bryant sketch or preliminary Bratz doll sculpt, then you must determine whether or not MGA, MGA HK and/or Isaac Larian is a joint author of any such work.

A joint work is a work prepared by two or more authors. At the time of the joint work's creation, a joint work must have two or more authors, and

1.      each author must have made a substantial and valuable contribution to the work;

2.      each author must have intended that their contributions be merged into inseparable or interdependent parts of a unitary whole; and

3.      each author must have contributed material to the joint work which could have been independently copyrighted.

Each author of a joint work shares an undivided interest in the entire joint work.

In deciding whether parties intended their contributions to be merged in element 2, above, you may consider whether they signed a written agreement stating that the copyright in the work is to be jointly owned.  If there is no such agreement, you may consider whether:

a.      both parties exercised control over the work. This is the most important factor;

b.      both parties' actions showed they shared the intent to be co-authors when they were creating the work, for instance by publicly stating that the work was their shared project; and

505.07975/3941364.1

c.      the audience-appeal of the work depends on the contribution of each party so that the share of each party's contribution in the work's success cannot be appraised.

In making a substantial and valuable contribution to a work, each author's contribution to the joint work need not be equal.

The authors of a joint work are co-owners of copyright in the work.  A co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright.

**Authority:** 9th Cir. Civ. Jury Instr. 17.7 (2007); 17 U.S.C. § 201(a); 17 U.S.C. §§ 101, 201(a); *Oddo v. Ries*, 743 F.2d 630, 632-33 (9th Cir. 1984)

## MATTEL'S OBJECTIONS:

1.      This proposed instruction should not be given, and at a minimum should be placed in context to avoid confusion and prejudice.  Defendants' joint authorship defense is limited to, at most, a sculpt that defendants claim was prepared jointly by Bryant and Margaret Leahy.  *See* MGA Parties' Statement of Genuine Issues In Support of Opposition To Mattel's Motion for Partial Summary Judgment, Oct. 29, 2010, at Fact No. F 50 ("MGA, and specifically Leahy the sculptor who was specially commissioned by MGA to create the Bratz preliminary sculpts as works-made-for-hire, was an author of works created during the period after Bryant's resignation but before he actually departed Mattel").  Apart from that sculpt, defendants have no claim that any other of Bryant's works that Mattel claims to own is subject to a joint authorship defense.  This instruction is therefore overly broad and misleading to the extent it allows the jury to infer that more than just the single sculpt is possibly subject to this defense.

2.      This instruction should not be given at all because it does not apply even to that sculpt.  As defendants acknowledge in their instruction, this doctrine has relevance only if Mattel "is the owner" of the copyright in the sculpt:  "If you

1    determine that Mattel is the owner of any Bryant sketch or preliminary Bratz doll

2    sculpt, then you must determine whether or not MGA, MGA HK and/or Isaac

3    Larian is a joint author of any such work." But if Mattel is the owner, as the

4    instruction assumes, the relevant question, for joint authorship purposes, is whether

5    *Mattel* and MGA, not *Bryant* and MGA, shared the intent to create a joint work.

6    There is no evidence of such intent. Indeed, if Mattel owns the sculpt as a work-

7    for-hire, Bryant is not even the author of the work; Mattel is. *See* 17 U.S.C.A. §

8    201(b) ("In the case of a work made for hire, the employer or other person for

9    whom the work was prepared is considered the author"). There is no evidence

10   Mattel and MGA intended to jointly own the work, and no basis for this

11   instruction.

12         3.    Because it lacks context, this instruction could permit the jury to infer

13   incorrectly that if MGA proves it is a "joint author" of the sculpt, then it also

14   obtains ownership rights in any works on which the sculpt is based, such as

15   Bryant's drawings that are owned by Mattel. To the contrary, even if MGA

16   "jointly authors" the sculpt, the only ownership rights MGA would obtain would

17   be limited to the original expression added to the drawings of which the sculpt is

18   derivative. *See* 17 U.S.C. § 103(b) ("The copyright in a compilation or derivative

19   work extends only to the material contributed by the author of such work, as

20   distinguished from the preexisting material employed in the work, and does not

21   imply any exclusive right in the preexisting material. The copyright in such work

22   is independent of, and does not affect or enlarge the scope, duration, ownership, or

23   subsistence of, any copyright protection in the preexisting material."). Any

24   instruction on this issue should make that clear.

25         4.    The instruction improperly provides no basis for the jury to determine

26   whether any authorship purportedly contributed by Margaret Leahy belongs to

27   MGA, either because Leahy was an employee at the time she contributed to the

28   work or she was an independent contractor who had assigned her ownership rights

1   in her authorship to MGA.  *See* 17 U.S.C. §§ 101, 201(b).  Any instruction on joint

2   authorship should reference the standard for determining whether MGA owns the

3   authorship purportedly contributed by Leahy.

4        5.     Mattel objects to the term "sketch" to describe Bryant's drawings and

5   designs as derogatory and biased.

6        6.     Mattel objects to the inclusion of the first paragraph, which is not

7   included in the model instruction, as misleading and overly broad to the extent it

8   instructs the jury that it "must" consider this defense as to "any" work Mattel

9   owns, even though this defense applies, at most, to a single sculpt.

10       7.     Mattel objects to defendants' inclusion of the last paragraph in this

11  instruction, which is not included in the model instruction.  That language is

12  incomplete because it omits that a co-owner of a copyright "must account to other

13  co-owners for any profits he earns from licensing or use of the copyright."  *Oddo v.*

14  *Ries*, 743 F.2d 630, 633 (9th Cir. 1984).

15       8.     This instruction fails to inform the jury that merely transforming a

16  two-dimensional drawing into a three-dimensional depiction of the drawing does

17  not amount to creative "authorship" sufficient for copyright protection or joint

18  authorship.  *See Entm't Research Group, Inc. v. Genesis, Creative Group, Inc*., 122

19  F.3d 1211, 1222-23 (9th Cir. 1997) (rejecting claim that 3D inflatable costumes

20  derived from 2D cartoon possessed sufficient originality to be copyrightable

21  derivative works); *Durham Industries, Inc. v. Tomy Corp*., 630 F.2d 905, 910 (2d

22  Cir. 1980) (the "mere reproduction of the Disney characters in plastic, even though

23  the adaptation of the preexisting works to this medium undoubtedly involved some

24  degree of manufacturing skill, does not constitute originality as this Court has

25  defined the term"); *JCW Investments, Inc. v. Novelty, Inc*., 289 F. Supp. 2d 1023,

26  1033 (N.D. Ill. 2003) (sculptor was not the author of the sculpture as a 'derivative

27  work' because the sculptor simply converted a two-dimensional design into a

28  three-dimensional object, without sufficient original artistic contribution).

9.       MGA's proposed instruction improperly fails to state that MGA bears the burden of proof on its joint authorship defense.  *See Thomson v. Larson*, 147 F.3d 195, 200 (2d Cir. 1998) ("A co-authorship claimant bears the burden of establishing that each of the putative co-authors (1) made independently copyrightable contributions to the work; and (2) fully intended to be co-authors."); *Hi-Tech Video Productions, Inc. v. Capital Cities/ABC, Inc*., 58 F.3d 1093, 1095 (6th Cir. 1995) ("Defendants bear the burden of establishing joint authorship because Plaintiff's certificate of copyright registration indicates that Plaintiff is the sole author of the catalog.").

10.      To the extent the Court decides to give any instruction on joint authorship, Mattel requests that the Court adopt the following instruction:

## *17.7*

### *COPYRIGHT INTERESTS—JOINT AUTHORS*

*MGA claims that, by virtue of work performed by Margaret Leahy, it is the joint author of a Bratz doll sculpt that Mattel alleges was prepared while Carter Bryant was a Mattel employee.  Mattel denies that MGA is a joint author of any Bratz work prepared while Carter Bryant was a Mattel employee.  MGA bears the burden of proving it is a joint author of the sculpt at issue.*

*For MGA to prove it is a joint author of the sculpt, it must first establish that any contribution made to the sculpt by Margaret Leahy was made at a time when Ms. Leahy was either an MGA employee performing work for MGA within the scope of her employment duties or was an MGA independent contractor who had agreed in writing to assign her interest in the sculpt to MGA.  If MGA fails to make either of those showings, then it cannot prevail on its joint authorship claim as to the sculpt.*

1    *If MGA makes either showing, then you should consider whether Ms.*
2    *Leahy's contribution is sufficient to create joint authorship and if Mattel and MGA*
3    *intended for the work to be a joint work, as explained more fully below.*

4    *To prove that MGA jointly authored the sculpt with Mattel, MGA must prove*
5    *that it was prepared by MGA and Mattel, or individuals on their behalf, and that at*
6    *the time of the joint work's creation,*

7    *1. MGA and Mattel both made a substantial and valuable contribution to the*
8    *work;*

9    *2. MGA and Mattel both intended that their contributions would be merged*
10   *into inseparable or interdependent parts of a unitary whole; and*

11   *3. MGA and Mattel contributed material to the joint work which could have*
12   *been independently copyrighted.*

13   *In deciding whether parties intended their contributions to be merged (in*
14   *element 2, above), you may consider whether they signed a written agreement*
15   *stating that the copyright in the work would be jointly owned.  A written agreement*
16   *stating the copyright in the work would be jointly owned may show that each*
17   *author of a joint work intended that their contribution be merged into inseparable*
18   *or interdependent parts of a unitary whole.  If there is no such agreement, you may*
19   *consider whether:*

20   *a. both parties exercised control over the work. This is the most important*
21   *factor;*

22   *b. both parties' actions showed they shared the intent to be co-authors when*
23   *they were creating the work, for instance by publicly stating that the work was*
24   *their shared project; and*

25   *c. the audience-appeal of the work depended on the contribution of each*
26   *party so that the share of each party's contribution in the work's success could not*
27   *be appraised.*

28

MATTEL'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

*A contributor's contribution will not produce a joint work, and a contributor will not obtain a co-ownership interest, unless the contribution represents original expression that could stand on its own as the subject matter of copyright.  The transformation of a two-dimensional work into a three-dimensional work is, by itself, not original expression that could stand on its own as the subject matter of copyright.*

*If you conclude that the sculpt MGA claims was jointly authored is based on a work Mattel owns, such as a drawing, MGA's claim to co-ownership of the sculpt, if you accept that claim, extends only to the original expression added to the work on which the sculpt is based.  MGA's joint authorship of the sculpt does not render MGA a joint author of the underlying drawing as well, or of any other copyrighted work it did not jointly author.*

*If MGA proves it is a joint author of the early sculpt, MGA, as a joint author, is still required to account to Mattel for any profits that MGA earned from its use of the joint work, and you may award Mattel damages, if you decide that is appropriate, based on such profits.*

***Authority:***  *9th Cir. Civ. Jury Instr. 17.7 (2007) (modified); 17 U.S.C. §§ 101, 103(b), 201(b).  Oddo v. Ries, 743 F.2d 630, 633 (9th Cir. 1984); JCW Investments, Inc. v. Novelty, Inc., 289 F. Supp. 2d 1023, 1033 (N.D. Ill. 2003); Entm't Research Group, Inc. v. Genesis, Creative Group, Inc., 122 F.3d 1211, 1222-23 (9th Cir. 1997); L. Batlin & Son, Inc. v. Snyder, 536 F.2d 486, 490-92 (2d Cir. 1976) (en banc).*

1 **DEFENDANTS' PROPOSED INSTRUCTION RE COPYRIGHT**
2 **INTERESTS—ASSIGNEE**

3 **17.10**

4 **COPYRIGHT INTERESTS—ASSIGNEE**

5 Mattel does not claim to be the author or initial owner of any of the works at
6 issue.  Instead, Mattel claims that it received ownership of the copyrights by virtue
7 of assignment from Carter Bryant so that it is now the assignee of the copyright.
8 MGA also claims that it received ownership of some of the copyrights by virtue of
9 assignment from Carter Bryant.

10 A copyright owner may convey to another person all or part of the owner's
11 property interest in the copyright; that is, the right to exclude others from copying
12 the work.  The person to whom the copyright is conveyed becomes the owner of
13 the copyright in the work.

14 To be valid, the conveyance must be in writing.  The person to whom this
15 right is transferred is called an assignee.

16 **Authority:** 9th Cir. Civ. Jury Instr. 17.10 (2007); 17 U.S.C. § 201(d)(1)

17

18 **MATTEL'S OBJECTIONS:**

19 1.    This proposed instruction is inaccurate in stating that Mattel "does not
20 claim to be the author or initial owner of any of the works at issue."  To the
21 contrary, Mattel does claim it is the initial owner and author of Bryant's Bratz-
22 related works because those works were works-for-hire under 17 U.S.C. § 201(b).

23 2.    Defendants' statement that "MGA also claims that it received
24 ownership of some of the copyrights by virtue of assignment from Carter Bryant,"
25 which is not included in the model rule, is irrelevant and misleading.  To the extent
26 this is a reference to MGA's purported defense based on "good faith transferee"
27 under 17 U.S.C. § 205(d), that defense was summarily adjudicated.  *See* MSJ
28 Order at 118.

505.07975/3941364.1

3.     To the extent the Court is inclined, over Mattel's objections, to give any instruction on this issue, then Mattel respectfully requests that the Court give the following instruction:

## 17.10 COPYRIGHT INTERESTS—ASSIGNEE

### (17 U.S.C. § 201(d)(1))

*In this case, Mattel claims both to be the original author of the works created by Carter Bryant while he was employed by Mattel, as works made for hire, and that it received ownership of the copyrights in those works by virtue of an assignment from Carter Bryant.*

*A copyright owner may transfer to another person all or part of the owner's property interest in the copyright; that is, the right to exclude others from copying the work. The person to whom the copyright is transferred becomes the owner of the copyright in the work.*

*To be valid, the transfer must be in writing.  The person to whom this right is transferred is called an assignee.  The assignee may enforce this right to exclude others in an action for copyright infringement.*

***Authority***:  *9th Cir. Civ. Jury Instr. 17.10 (2007).*

1  **DEFENDANTS' PROPOSED INSTRUCTION RE COPYRIGHT**

2  **INFRINGEMENT—ORIGINALITY**

3  **17.12**

4  **COPYRIGHT INFRINGEMENT—ORIGINALITY**

5  An original work may include or incorporate elements taken from prior

6  works or works from the public domain.  The original part of any work found by

7  you to be owned by Mattel is the part created:

8  1.    independently by the author, that is, the author did not copy it from

9  another work; and

10  2.    by use of at least some minimal creativity.

11  **Authority:** 9th Cir. Civ. Jury Instr. 17.12 (2007); *Feist Publications, Inc. v.*

12  *Rural Telephone Service Co., Inc.*, 499 U.S. 340, 345 (1991)

13

14  **MATTEL'S OBJECTIONS:**

15  1.    This instruction omits the statement included in the model instruction

16  that "original" works may include or incorporate elements not only from prior

17  works or works in the public domain, but also from "works owned by others."

18  2.    Mattel's proposed instruction is preferable because it also clarifies

19  that a work may be "original" not only if it includes or incorporates elements

20  "taken from" prior works, but also if it includes elements "inspired by" prior works

21  or works in the public domain.  *See* Mattel's Fourth Amended Proposed Jury

22  Instructions, at 87; *see also, e.g., Tufenkian Import/Export Ventures, Inc. v.*

23  *Einstein Moomjy, Inc.*, 338 F.3d 127, 132 (2d Cir. 2003) ("[A]ll creative works

24  draw on the common wellspring that is the public domain."); *L.Batlin & Son, Inc.*

25  *v. Snyder*, 536 F.2d 486 (2d Cir. 1976) (use of matters in the public domain does

26  not preclude a finding of originality); *Stoneworks Inc. v. Empire Marble & Granite*

27  *Co.*, 1998 WL 998962, *3-4 (S.D. Fla. Nov. 20, 1998) (because the "essence of

28  copyright protection is originality rather than novelty or invention," works need

1   only a "small spark of distinctiveness" to be original; plaintiff's work was

2   protectable because plaintiff made "substantial modifications to historic designs").

3   The inclusion of Mattel's language is appropriate given defendants' misleading

4   arguments that Bryant's Bratz-related works are not original because they were

5   inspired by prior works in the public domain.  *See* MGA MSJ at 35-36.

6          3.      Mattel respectfully requests that the Court give Mattel's version of

7   this proposed instruction: 17.12 (Copyright Infringement—Originality).  *See*

8   Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 87.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

05.07975/3941364.1

**DEFENDANTS' PROPOSED INSTRUCTION RE TEST FOR COPYRIGHT INFRINGEMENT**

**TEST FOR COPYRIGHT INFRINGEMENT**

To determine whether the Bratz dolls infringe any sculpts or sketches that you determine Mattel to own, you must engage in a comparison of the protectable elements of any such sculpts and sketches and the first generation Bratz dolls (Cloe, Yasmin, Sasha and Jade) and two later generation dolls, Ooh La La Cloe and Formal Funk Dana.

To prove copyright infringement, there are two different standards that Mattel must satisfy. With respect to any sculpts or sketches of sculpts you find Mattel to own, Mattel must prove by a preponderance of the evidence that an ordinary reasonable observer would consider the Bratz dolls virtually identical to the protectable elements of those sculpts.

With respect to any doll sketches that you find Mattel to own, Mattel must prove by a preponderance of the evidence that an ordinary reasonable observer would consider the Bratz dolls substantially similar to the protectable elements of those sketches.

You may not consider unprotectable elements when you compare the sculpts or the sketches and the Bratz dolls. I have determined that at least the following elements are unprotectable ideas and must be disregarded when you consider whether the works and the Bratz dolls are virtually identical or substantially similar:

fashion dolls with a bratty look or attitude;

a young female fashion doll with exaggerated proportions;

dolls sporting trendy clothing;

exaggerated features, including an oversized or larger head and feet;

larger eyes, thick lips, high cheekbones, slim arms, long legs, and slim torsos;

605.07975/3941364.1
MATTEL'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1    lips that curve;

2    the look of a girl who has too much eye makeup on;

3    oversized almond-shaped eyes;

4    angular eyebrows;

5    the dolls' resemblance to humans;

6    the presence of hair, head, two eyes and other human features;

7    human clothes, shoes and accessories;

8    age, race, ethnicity and "urban" or "rural" appearances;

9    standard features relative to others (like a thin body or small waist).

10   Based on the evidence presented, you may determine that other elements of

11   the works are similarly unprotectable due to the fact that the elements are found in

12   the public domain, are standard features, are utilitarian in purpose or merge into the

13   expression of the idea.

14   I have determined that the following are protectable elements that can be

15   considered in your infringement analysis:  the particular expression of face paint,

16   hair color and style, clothing and accessories, and minute sculptural variations.

17   **Authority:** *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 915-916

18   (9th Cir. 2010); Dkt. # 9538 at 14-15, 17, 27 (Order on Motions for Summary

19   Judgment); *Feist Publications, Inc. v. Rural Telephone Co.*, 499 U.S. 340, 349-50

20   (1991); *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 136 (2d Cir.

21   2004); *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 900-01 (9th Cir. 1987); *Apple

22   Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442-43 (9th Cir. 1994); *Data

23   East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 209 (9th Cir. 1988); *Satava v. Lowry*,

24   323 F.3d 805, 807 (9th Cir. 2003); *Cavalier v. Random House*, 297 F.3d 815, 824

25   (9th Cir. 2002).

26

27

28

1  **MATTEL'S OBJECTIONS:**

2          1.      Defendants' proposed instruction regarding the "test for copyright

3  infringement" misstates the copyright infringement test applied in the Ninth Circuit

4  in several respects.  It also misstates the facts and the Court's prior rulings.  It

5  should be rejected in its entirety in favor of Mattel's corresponding proposed

6  instruction.  *See* Mattel's Fourth Amended Proposed Jury Instructions, at 99.

7          2.      Defendants' proposed instruction ignores entirely the initial

8  "extrinsic" test for infringement, which is an objective test that examines "the

9  similarities between the copyrighted and challenged works and then determine[s]

10  whether the similar elements are protectable or unprotectable."  *Mattel, Inc. v.*

11  *MGA Entertainment, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010); *see also Cavalier v.*

12  *Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) ("The 'extrinsic test' is an

13  objective comparison of specific expressive elements.").  A jury must consider

14  "evidence under both the extrinsic and intrinsic tests."  *See, e.g., Cavalier*, 297

15  F.3d at 824.

16          3.      Defendants' proposed instruction misapplies the "intrinsic" test for

17  copyright infringement.  "The 'intrinsic test' is a subjective comparison that

18  focuses on 'whether the ordinary, reasonable audience' would find the works

19  substantially similar in the 'total concept and feel of the works.'"  *Id.* (quoting

20  *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994).  At

21  the intrinsic stage, the jury applies the standard for infringement (*i.e.*, substantially

22  similar or virtually identical) that was "determined at the 'extrinsic' stage" to

23  decide "whether an ordinary reasonable observer would consider the copyrighted

24  and challenged works substantially similar (or virtually identical)."  *Mattel*, 616

25  F.3d at 914.  Contrary to defendants' instruction that the jury "may not consider

26  unprotectable elements" when it considers "whether the works and the Bratz dolls

27  are virtually identical or substantially similar," no "filtering" of "unprotectable"

28  elements takes place at the intrinsic stage.  *See, e.g., Three Boys Music Corp. v.*

05.07975/3941364.1

1  *Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (even unprotectable elements are

2  considered in evaluating whether "the total concept and feel of the works [are]

3  substantially similar" under the intrinsic test); *Data East USA, Inc. v. Epyx, Inc*.,

4  862 F.2d 204, 208 (9th Cir. 1988) ("Analytic dissection of the dissimilarities as

5  opposed to the similarities is not appropriate under [the intrinsic] test because it

6  distracts a reasonable observer from a comparison of the total concept and feel of

7  the works."); *Express, LLC v. Fetish Group, Inc*., 424 F. Supp. 2d 1211, 1228

8  (C.D. Cal. 2006) ("[T]he intrinsic test requires that the work's elements be viewed

9  as a whole.") (citations omitted).

10      4.      Defendants' instruction is incomplete in that it fails to explain that the

11  "ordinary reasonable observer" for purposes of applying the intrinsic test is a

12  young girl.  *See*, *e.g*., *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 902 (9th Cir. 1987)

13  ("Because children are the intended market for the dolls, [the jury] must filter the

14  intrinsic inquiry through the perception of children."); *Sid & Marty Krofft*

15  *Television Prods. v. McDonald's Corp.*, 562 F.2d at 1166 (resolving copyright

16  cases involving works directed at children "demands an even more intrinsic

17  determination" because the analysis raises "*the particular factual issue of the*

18  *impact of the respective works upon the minds and imaginations of young people*")

19  (emphasis added).  Mattel's corresponding proposed instruction properly identifies

20  the "reasonable ordinary observer" as a "girl between the ages of 6 and 12."  *See*

21  Mattel's Fourth Amended Proposed Jury Instructions, at 99.

22      5.      Defendants' instruction misinforms the jury concerning how to apply

23  the "virtual identity" standard of similarity.  Defendants claim it is Mattel's burden

24  to establish that "an ordinary reasonable observer would consider the Bratz dolls

25  virtually identical to the protectable elements of" Mattel's copyrighted sculpts and

26  sculpt drawings.  As the Ninth Circuit made clear, however, the question is

27  whether there is virtual identity of the works when viewed "*overall*," including any

28  unprotected elements, or substantial similarity of the protected elements.  *See*

1 *Mattel*, 616 F.3d at 915 n.9, 917; *see also* MSJ Order at 16, n. 9 (concluding that a

2 "reasonable jury could find that the sculpts are *virtually identical overall*")

3 (emphasis added).  Mattel's proposed jury instruction applies the applicable test,

4 informing the jury that "[w]hen considering whether Mattel has proven

5 infringement of the sculpts and sculpt drawings it claims are infringed, you should

6 decide whether MGA's works are virtually identical overall to Mattel's works, or

7 whether they are substantially similar in their protected elements."  *See* Mattel's

8 Fourth Amended Proposed Jury Instruction, at 99; *see also* MGA's Reply In

9 Support of Summary Judgment, Nov. 8, 2010 ("Under the law of this case, only

10 two comparisons matter with respect the sculpts: overall virtual identity, and

11 substantial similarity of only the protected elements.").

12      6.     Defendants' attempt to limit Mattel's copyright infringement claim to

13 "the first generation dolls . . . and two later generation dolls" fails to indicate that

14 Mattel's claim also includes infringement by the final Bratz production sculpt that

15 was incorporated into all or almost all its Bratz dolls.  *See* MSJ Order at 15-16.

16      7.     Defendants' listing of the "unprotectable" and "protectable" elements

17 of the works is inaccurate.  Defendants' list of "elements" that "must be

18 disregarded" includes the dolls themselves, in addition to virtually every attribute

19 about them.  According to the instruction, the *only* elements of the works the jury

20 may even consider in deciding whether the Bratz dolls infringe Mattel's copyrights

21 are "the particular expression of face paint, hair color and style, clothing and

22 accessories, and minute sculptural variations."   This is not correct.  The Ninth

23 Circuit recognized "there's a wide range of expression for complete young, hip

24 female fashion dolls with exaggerated features," and the doll drawings are entitled

25 to "broad copyright protection against substantially similar works."  *Mattel*, 616

26 F.3d at 916.  Although the Ninth Circuit noted that among the features that may be

27 varied are the "face paint, hair color and style, and the clothing and accessories, on

28 top of making minor variations to the sculpt" (*id.*), nothing in its opinion limits the

1   "elements" of the works that may be "protectable" to those it specifically

2   enumerated.

3        Indeed, even if the "idea" or "concept" of "depicting a young, fashion-

4   forward female with exaggerated features, including an oversized head and feet, is

5   . . . unoriginal as well as an unprotectable *idea*" (*Mattel*, 616 F.3d at 915 (emphasis

6   added)), the particularized expression of such an idea is fully protectable.  *See, e.g.,*

7   *Satava v. Lowry*, 323 F.3d 805, 812-13 (9th Cir. 2003) ("An artist may . . . protect

8   the original expression he or she contributes to these ideas.  An artist may vary the

9   pose, attitude, gesture, muscle structure, facial expression, coat, or texture of

10  animal. An artist may vary the background, lighting, or perspective.   Such

11  variations, if original, may earn copyright protection."); *Aliotti v. R. Dakin & Co.*,

12  831 F.2d 898, 900-901 (9th Cir. 1987) ("[T]he eye style and stitching of the Ding-

13  A-Saurs are not dictated by the idea of stuffed dinosaur dolls and thus constitute

14  protectable expression"); *Mattel v. Goldberger Doll Mfg. Co*., 365 F.3d 133, 135-

15  36 (2d Cir. 2004) (Barbie's face protected by copyright, including particularized

16  expression of an upturned nose, bow lips, and widely spaced eyes); *Fisher-Price,*

17  *Inc. v. Well- Made Toy Mfg. Corp*., 25 F.3d 119, 124 (2d Cir. 1994) (abrogated on

18  other grounds) ("Our de novo comparison of the dolls' protectible features

19  convinces us that an ordinary observer would consider them substantially similar.

20  Both sport the same bright, painted eyes, the same skyward gaze, the same knobby

21  nose, and the same cherubic smile. Both have oversized heads that feature soft

22  vinyl faces and curly tufts of hair peeking out beneath lace-frilled hoods. These

23  dolls do not merely share features that are common to all dolls; they contain

24  virtually identical expressions of those features."); *Durham Indus., Inc. v. Tomy*

25  *Corp.*, 630 F.2d 905, 915-17 (2d Cir. 1980) (among other features, court compared

26  similarity of proportion of head to body, shape of face, separation of eyes, skin

27  tone, eye color, eye lashes, shape of nose, size of mouth, length of body, tilt of

28  head); *Austin Prods., Inc. v. F.D.F. Design Studio, Inc*., 1990 WL 198741, at *4-5

1   (E.D.N.Y. Nov. 2, 1990) (considering stance, body shape, pose, and facial

2   expression three dimensional figures); *Original Appalachian Artworks, Inc. v*

3   *McCall Pattern Co*., 649 F. Supp. 832, 835 (N.D. Ga. 1986) (considering head

4   proportion, flatness of face, shape of eyes, separation of eyes, shape of nose, body

5   shape, torso, shoulders, belly button, elbows, knees, and ankles of Cabbage Patch

6   Kids); *Fisher-Price Toys v. My Toy Co*., 385 F. Supp. 218, 220-22 (S.D.N.Y.

7   1974) (considering body size, body shape, arms, legs, hands, feet, spacing of eyes,

8   nose, smile, cheeks, and size/shape of head dolls).

9         This Court recognized in ruling on defendants' motion for summary

10  judgment that a number of features of the copyrighted works that defendants fail to

11  include in their "list" of protectable features are, in fact, "protectable."  With

12  respect to the doll bodies alone, the Court provided an "illustrative" list of

13  protectable elements, and found similarities among them, including with respect to

14  "the precise shape, size, and placement" of the facial elements (specifically

15  referencing ears and noses); the "overall face shape"; the "precise angles,

16  measurements, and shapes of the sculpts' midsections," including with respect to

17  the shape and proportions of the waists and stomachs; the shapes of the shoulders;

18  the posing (or "flare") of the arms; and the features and shape of the shoulder

19  blades and spines.  MSJ Order at 16.  With respect to the adorned dolls, the Court

20  found similarities based on protectable elements including the dolls' fashions and

21  hairstyles, accessories, make-up style and color, "anatomical similarities"

22  including eyelash shape and angle, eye shape, the particular expression of the eyes

23  and moles.  MSJ Order at 16-24.

24        Thus, contrary to defendants' instruction, neither this Court nor the Ninth

25  Circuit has held that the particularized expressions of the elements that defendants

26  purport to exclude entirely from the jury's consideration – including expressions of

27  the eyes, heads, lips and feet – are unprotectable.  Any such ruling would be

28  erroneous.  Likewise, an instruction that purports to identify the specific elements

that the jury may or may not consider in applying the copyright infringement test would lead to confusion and constitute error.  The better approach is to properly instruct the jury concerning the types of features and elements that are "unprotectable," including ideas or concepts themselves and elements that (i) are required by or necessarily result from the idea of the work; (ii) are purely utilitarian, as opposed to creative; or (iii) are unoriginal.  *See* Mattel's Fourth Amended Proposed Jury Instructions, at 99.

8.      Mattel objects to the term "sketch" used to describe Bryant's drawings and designs as derogatory and biased.

9.      For the reasons set forth above, defendants' proposed instruction regarding the "test for copyright infringement" should be rejected in its entirety, and Mattel's corresponding instruction should be given:  Mattel's Special Jury Instruction No. 16 (Copyright Infringement—Sufficient Similarity).  *See* Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 99.

**DEFENDANTS' PROPOSED INSTRUCTION RE DERIVATIVE LIABILITY—VICARIOUS INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF**

**17.20**

**DERIVATIVE LIABILITY—VICARIOUS INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF**

If you find that MGA infringed Mattel's copyright in any sketch or sculpt that you determine belongs to Mattel, you may consider Mattel's claim that MGA HK and Isaac Larian vicariously infringed that copyright.  Mattel has the burden of proving each of the following by a preponderance of the evidence:

1.      MGA HK and/or Mr. Larian profited directly from the infringing activity of MGA;

2.      MGA HK and/or Mr. Larian had the right and ability to control the infringing activity of MGA; and

3.      MGA HK and/or Mr. Larian failed to exercise that right and ability.

If you find that Mattel proved each of these elements, your verdict should be for Mattel if you also find that MGA infringed Mattel's copyright.  If, on the other hand, Mattel has failed to prove any of these elements, your verdict should be for MGA HK and Mr. Larian.

**Authority:** 9th Cir. Civ. Jury Instr. 17.20 (2007)


**MATTEL'S OBJECTIONS:**

1.      Defendants' instruction is misleading because it suggests the jury can find Larian vicariously liable only if the jury finds MGA liable for infringement. Mattel's proposed version of this instruction clarifies that Larian may be vicariously liable based on an underlying finding of infringement by either MGA or MGA HK.   *See* Mattel's Fourth Amended Proposed Jury Instructions, at 116.

1          2.       Defendants' instruction is misleading because it suggests that if the

2   jury does not find Larian vicariously liable, then the jury must find in favor of

3   Larian on Mattel's copyright infringement claim.  As explained in Mattel's

4   corresponding instruction, even if the jury does not find Larian vicariously liable, it

5   may still find him liable for contributory infringement.  *Id.*

**DEFENDANTS' PROPOSED INSTRUCTION RE DERIVATIVE LIABILITY—CONTRIBUTORY INFRINGEMENT**

### 17.21

### DERIVATIVE LIABILITY—CONTRIBUTORY INFRINGEMENT

A defendant may be liable for copyright infringement engaged in by another if he, she, or it knew or had reason to know of the infringing activity and intentionally induced the infringing activity.

If you find that MGA infringed Mattel's copyright in any sketch or sculpt that you determine belongs to Mattel, you may proceed to consider Mattel's claim that MGA HK and Isaac Larian contributorily infringed that copyright.  To prove contributory copyright infringement, Mattel must prove both of the following elements by a preponderance of the evidence:

1.      MGA HK and/or Mr. Larian knew or had reason to known of the infringing activity of MGA; and

2.       MGA HK and/or Mr. Larian intentionally induced MGA's infringing activity.

If you find that MGA infringed Mattel's copyright and you also find that Mattel has proved both of these elements, your verdict should be for Mattel.  If, on the other hand, Mattel has failed to prove either or both of these elements, your verdict should be for MGA HK and Mr. Larian.

**Authority:** 9th Cir. Civ. Jury Instr. 17.21 (2007)


**MATTEL'S OBJECTIONS:**

1.      Defendants' instruction is misleading because it suggests the jury can find Larian contributorily liable only if the jury finds MGA liable for infringement.  Mattel's version of this instruction clarifies that Larian may be contributorily liable based on an underlying finding of infringement by either MGA or MGA HK.  *See* Mattel's Fourth Amended Proposed Jury Instructions, at 118.

2.      Defendants' instruction improperly deletes language in the model instruction that makes clear that if a defendant "materially contributed to" the infringing activity, that is a basis for contributory liability.  *See* 9th Cir. Civ. Jury Instr. 17.21 (2007); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) ("One who, with knowledge of the infringing activity, induces, causes *or materially contributes to* the infringing conduct of another, may be held liable as a 'contributory' infringer.") (citation omitted) (emphasis added).

3.      Defendants' instruction is misleading because it suggests that if the jury does not find Larian contributorily liable, then the jury must find in favor of Larian on Mattel's copyright infringement claim.  As explained in Mattel's version of this proposed instruction, even if the jury does not find Larian contributorily liable, it may still find him liable for vicarious infringement.  *See* Mattel's Fourth Amended Proposed Jury Instructions, at 118.

**DEFENDANTS' PROPOSED INSTRUCTION RE EMPLOYEE'S RIGHT OF MOBILITY**

### EMPLOYEE'S RIGHT OF MOBILITY

Carter Bryant, Ana Cabrera, Beatriz Morales, Maria Salazar, and Ryan Tumaliuan were "at will" employees of Mattel. That means that each of them had the right to leave Mattel at any time, and each could be terminated by Mattel at any time, for any reason or no reason. Mr. Bryant, Ms. Cabrera, Ms. Morales, Ms. Salazar, and Mr. Tumaliuan had the right to look for another job while still employed at Mattel, to prepare to compete with Mattel, and to leave his or her employment with Mattel to work with a competitor or to compete himself or herself against Mattel. Mattel did not have a right to continued performance by Mr. Bryant, Ms. Cabrera, Ms. Morales, Ms. Salazar, or Mr. Tumaliuan, or to performance by these employees for any specific period of time.

A company has the right to solicit or hire the at-will employee of another company, including its competitor.

**Authority:** *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1151 (2004) (California "public policy generally supports a competitor's right to offer more pay or better terms to another's employee, so long as the employee is free to leave. ... [I]f the law were to the contrary, the result 'would be intolerable, both to such employers as could use the employe[e] more effectively and to such employe[e]s as might receive added pay. It would put an end to any kind of competition.'") (citation omitted); *Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 853, 859 (1994) ("California courts have consistently declared ... an expression of public policy to ensure that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice"); *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 255 (1968) (California public policy recognizes "[t]he interests of the employee in his own mobility and betterment are deemed paramount to the competitive business

interests of the employers"); *see also Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1337 (9th Cir. 1980) ("[m]ere solicitation of an employee, under no contract of employment, to leave and associate with a competing firm is not illegal"); *Interloc Solutions, Inc. v. Tech. Assoc. Int'l. Corp.*, 2007 WL 2429715, at *2 (E.D. Cal. Aug. 24, 2007) (citing *Reeves* for the proposition that "employees are not precluded from seeking new employment on their own initiative"); *Posdata Co. Ltd. v. Kim*, No. C-07-02054 RMW, 2007 WL 1848661, *7 (N.D. Cal. June 27, 2007); *Cont'l Car-Na-Var Corp. v. Moseley*, 24 Cal. 2d 104, 110 (1944) ("[a] former employee has the right to engage in a competitive business for himself and to enter into competition with his former employer, even for the business of ... his former employer, provided such competition is fairly and legally conducted."); *VL Sys. Inc. v. Unisen, Inc.*, 152 Cal. App. 4th 708, 713, 715 (2007) (quoting *Diodes* and finding no unlawful solicitation of employee where the employee initiated the new agreement with the defendant and "chose to seek the job with" the defendant).

## MATTEL'S OBJECTIONS:

1.      Defendants fail to identify any applicable model instruction, and the authority they cite does not recognize Employee Right of Mobility as an affirmative defense to claims of intentional interference with contract, aiding and abetting breach of the duty of loyalty, or misappropriation of trade secrets.

2.      Defendants' instruction does not apply to the intentional interference and aiding and abetting claims that remain in this case.  Those claims do not allege that MGA acted improperly merely by hiring Mattel employees.  Rather, they assert that MGA acted unlawfully by inducing the Mattel employees (i) to breach a common provision in their Inventions Agreements requiring them to deliver to the Company all tangible, written, graphical, machine readable, and other materials (including all copies) in their possession or control containing or disclosing

1    Proprietary Information; and (ii) to work for MGA's benefit while employed at

2    Mattel and in breach of their contractual duty to not, "without the Company's

3    express written consent, engage in any employment or business other than for the

4    Company, or invest in or assist (in any manner) any business competitive with the

5    business or the future business of the Company."  *See* Amended Order on

6    Summary Judgment Motions (Dkt. No. 9600) at 82-86.  The act of inducing such

7    wrongful conduct was separate and apart from the act of soliciting the employees

8    to leave Mattel and join MGA.  Suggesting to the jury that, even if Mattel proves

9    all the elements of intentional interference or aiding and abetting, MGA can escape

10   liability because California recognizes a Right of Mobility would misstate the law

11   and mislead and confuse the jury.

12          3.    Defendants' instruction fails to specify that Defendants bear the

13   burden of proving the defense (if it is one) by a preponderance of the evidence.

14          4.    To the extent the Court decides, over Mattel's objections, to give any

15   "Employee's Right of Mobility" instruction, Mattel requests that the Court give the

16   following instruction:

17                        **EMPLOYEE'S RIGHT OF MOBILITY**

18          *Carter Bryant, Ana Cabrera, Beatriz Morales, Maria Salazar, Ronald*

19   *Brawer, and Ryan Tumaliuan were "at-will" employees of Mattel.  At-will*

20   *employment may be ended by either party at any time without cause, for any or no*

21   *reason.  The fact that an at-will employee makes some preparations to compete*

22   *before resigning is not necessarily unlawful.  Nor is a defendant subject to liability*

23   *for intentional interference if the interference consists merely of extending a job*

24   *offer that induces an employee to terminate his or her at-will employment.*

25   *However, if the departing at-will employee or the competitor use unlawful means*

26   *to effectuate new employment, or either of them is guilty of some unlawful*

27   *conduct related to the former employer, the injured former employer may recover*

28   *for the detriment it has suffered.*

1    ***Authority:*** *Diodes, Inc. v. Franzen, 260 Cal. App. 2d 244, 255 (1968)*

2    *("[I]f either the defecting employee or the competitor uses unfair or deceptive*

3    *means to effectuate new employment, or either of them is guilty of some*

4    *concomitant, unconscionable conduct, the injured former employer has a cause*

5    *of action to recover for the detriment he has thereby suffered. Neither the*

6    *wrongdoing employee nor his new employer will be heard to say that his*

7    *conduct was justifiable as a part of competitive strife. Their interests under the*

8    *circumstances are neither equal nor superior to those of the former*

9    *employer.");Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324,*

10   *1337-38 (9th Cir. 1980) (quoting Diodes, 260 Cal. App. 2d at 255); Guz v.*

11   *Bechtel Nat. Inc., 24 Cal. 4th 317, 335 (2000) ("An at-will employment may be*

12   *ended by either party 'at any time without cause,' for any or no reason, and*

13   *subject to no procedure except the statutory requirement of notice."); Mamou v.*

14   *Trendw. Resorts, Inc., 165 Cal. App. 4th 686, 719 (2008) ("Employees whose*

15   *contracts are terminable at will have a right to terminate their employment for the*

16   *purpose of competing with their employer, and may plan and prepare to create a*

17   *competitive enterprise prior to their termination, without revealing their plans to*

18   *their employer, so long as they do so on their own time and with their own*

19   *resources.") (internal quotations and citations omitted); Reeves v. Hanlon, 33 Cal.*

20   *4th 1140, 1153 (2004) ("Under this standard, a defendant is not subject to liability*

21   *for intentional interference if the interference consists merely of extending a job*

22   *offer that induces an employee to terminate his or her at-will employment.").*

23

24

25

26

27

28

**DEFENDANTS' PROPOSED INSTRUCTION RE RIGHT TO OBTAIN NEW EMPLOYMENT**

### RIGHT TO OBTAIN NEW EMPLOYMENT

An at-will employee such as Carter Bryant, Ana Cabrera, Beatriz Morales, Maria Salazar, and Ryan Tumaliuan has the right to seek new employment and the right to choose not to disclose to his or her employer that he or she has decided to pursue new employment, or that he or she is attempting to obtain new employment. An employee has the right to wait to inform his or her employer until he or she has made a final decision to resign. An employee does not have an obligation to disclose to his or her employer anything about his or her new employment, before or after a final decision to resign is made.

**Authority:** *Bancroft Whitney Co. v. Glen*, 64 Cal. 2d 327, 345-46 & n.10 (1966); *accord Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1086 (9th Cir. 2003); *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 424-25 (2000), *overruled on other grounds by Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004); *Computer Scis. Corp. v. Ferguson*, 74 Cal. Rptr. 86, 92-93 (1968); *see also Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 146 F.3d 983, 993 (D.C. Cir. 1998); *Franklin Music Co. v. Am. Broad. Cos.*, 616 F.2d 528, 532-33, 537 (3d Cir. 1979); *Mercer Mgmt. Consulting, Inc. v. Wilde*, *aff'd*, 920 F. Supp. 219 (D.D.C. 1996); *T.A. Pelsue Co. v. Grand Enters., Inc.*, 782 F. Supp. 1476, 1486 (D. Colo. 1991); *Abraham Zion Corp. v. Lebow*, 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), 761 F.2d 93 (2d Cir. 1985); *Seward v. Union Pump Co.*, 428 F. Supp. 161 (S.D. Tex. 1977); Restatement (Third) of Agency § 8.04 cmt. c (2006).

**MATTEL'S OBJECTIONS:**

1.      Defendants have waived any affirmative defense of Right To Obtain New Employment.  They did not plead the defense in their Answer to Mattel's Fourth Amended Answer and Counterclaims or in the Amended Final Pre-Trial Conference Order, lodged with the Court on January 16, 2011 (Dkt. No. 9640). They are therefore precluded from asserting this purported defense.  *See Northw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 924 (9th Cir. 1988) (affirmative defense of novation not raised in pretrial order or prior to trial was waived); *S. Cal. Retail Clerks Union and Food Emp'rs Joint Pension Trust Fund v. Bjorklund*, 728 F.2d 1262, 1264 (9th Cir. 1984) ("[I]ssues not preserved in the pretrial order have been eliminated from the action.").

2.      Defendants fail to identify any applicable model instruction, and the authority they cite does not recognize Right to Obtain New Employment as an affirmative defense to claims of intentional interference with contract, aiding and abetting breach of the duty of loyalty, or misappropriation of trade secret.

3.      Defendants' instruction does not apply to the intentional interference and aiding and abetting claims that remain in this case because, as stated above, Mattel's claims  do not allege that MGA acted improperly merely by hiring Mattel employees but rather by inducing them to commit wrongful and unlawful acts as part of their job change.  Suggesting to the jury that even if Mattel proves all the elements of intentional interference or aiding and abetting, MGA can escape liability because California recognizes a Right of Mobility would misstate the law and mislead and confuse the jury.

4.      Defendants' instruction fails to specify that Defendants bear the burden of proving the defense (if it is one) by a preponderance of the evidence.

5.      To the extent the Court decides, over Mattel's objections, to give any "Right to Obtain New Employment" instruction, Mattel requests that the Court give the following instruction:

## RIGHT TO OBTAIN NEW EMPLOYMENT

*Carter Bryant, Ana Cabrera, Beatriz Morales, Maria Salazar, Ronald Brawer, and Ryan Tumaliuan were "at-will" employees of Mattel. At-will employment may be ended by either party at any time without cause, for any or no reason. The fact that an at-will employee makes some preparations to compete before resigning is not necessarily unlawful. However, an at-will employee who makes arrangements to go into competition with his or her employer before terminating the employment relationship may not engage in unfair acts or harm the employer. The at-will employee has a duty not to mislead the employer about his or her intentions.*

*Authority: Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 335 (2000) ("An at-will employment may be ended by either party 'at any time without cause,' for any or no reason, and subject to no procedure except the statutory requirement of notice.") (internal citation and quotation omitted); Mercer Mgmt. Consulting, Inc. v. Wilde, 920 F.Supp. 219, 233 (D.D.C. 1996) ("the law is clear that "an agent can make arrangements or plans to go into competition with his principal before terminating his agency, provided no unfair acts are committed or injury done his principal.") (internal citations and quotations omitted); Restatement (Third) of Agency § 8.04 cmt. c (2006) ("[A]n agent has a duty not to mislead the principal about the agent's intentions. An agent's silence may mislead the principal when, for example, the agent knows that the principal is about to embark on an expansion in the principal's business in which the agent will play a crucial role that will not easily be replicated once the agent departs. More generally, conduct that would constitute a tort if committed by a third party against the principal also is tortious if committed by an agent. Thus, neither a third party nor an agent may use a principal's property to compete with the principal without the principal's consent.").*

1  **DEFENDANTS' PROPOSED INSTRUCTION RE PRIVILEGE OF**
2  **COMPETITION**

3  **PRIVILEGE OF COMPETITION**

4      Ordinarily, a company that engages in business with the primary aim of
5  making profits for itself is not liable for business losses suffered by a competitor.
6  A company has a legal privilege, known as the privilege of competition, that gives
7  it the right to seek profits for itself, at the expense of its competitors and potential
8  competitors.  The privilege of competition is an affirmative defense to a claim of
9  intentional interference with contractual relations.

10      The elements of the privilege of competition are:

11      1.    Mattel and MGA Entertainment, Inc. were engaged in economic
12  competition;

13      2.    The economic relationships between Mattel and Carter Bryant, Ana
14  Cabrera, Beatriz Morales, Maria Salazar, and Ryan Tumaliuan concern matters
15  involved in the competition between Mattel and MGA Entertainment;

16      3.    MGA Entertainment, Inc. or Isaac Larian did not use wrongful means;

17      4.    The purpose of MGA Entertainment, Inc. or Mr. Larian was at least in
18  part to advance MGA Entertainment Inc.'s interest in competing with Mattel.

19      **Authority:**  BAJI 7.86 (modified)

20

21  **MATTEL'S OBJECTIONS:**

22      1.    Defendants' instruction improperly modifies the model instruction,
23  BAJI 7.86, by inserting the following language:  "A company has a legal privilege,
24  known as the privilege of competition, that gives it the right to seek profits for
25  itself, at the expense of its competitors and potential competitors."

26      2.    Defendants' instruction should make clear that the stated defense does
27  not apply to Mattel's trade secret misappropriation claims.  The right to compete
28  does not provide a legal excuse for misappropriating another's trade secrets.

1    3.    Defendants' instruction fails to specify that Defendants bear the

2    burden of proving the defense by a preponderance of the evidence.

3    4.    To the extent the Court decides, over Mattel's objections, to give any

4    "Privilege of Competition" instruction, Mattel respectfully requests that the Court

5    give the following instruction:

### PRIVILEGE OF COMPETITION

6
7    *Ordinarily, a person who engages in business with the primary aim of*

8    *making profits for himself or herself is not liable for business losses suffered by a*

9    *competitor. The privilege of competition is an affirmative defense to a claim of*

10   *interference with contractual relations where the contract was terminable at will.*

11   *The essential elements of the privilege of competition are:*

12   1.    *Mattel and* MGA *were engaged in economic competition;*

13   2.    *The economic relationship between Mattel and Carter Bryant, Ana*

14   *Cabrera, Beatriz Morales, Maria Salazar, Ronald Brawer, and Ryan Tumaliuan*

15   *concerns a matter involved in the competition between Mattel and MGA;*

16   3.    *MGA did not use wrongful means; and*

17   4.    *MGA's purpose was at least in part to advance its interest in*

18   *competing with Mattel.*

19   **Authority:** *CA BAJI 7.86 (modified); Bed, Bath & Beyond of La Jolla, Inc.*

20   *v. La Jolla Village Square Venture Partners, 52 Cal. App. 4th 867, 880-881 (1997)*

21   *("California law has long recognized a 'competition privilege' which protects one*

22   *from liability for inducing a third person not to enter into a prospective*

23   *contractual relation with a business competitor. The privilege applies where (a)*

24   *the relation [between the competitor and third person] concerns a matter involved*

25   *in the competition between the actor and the competitor, and (b) the actor does not*

26   *employ improper means, and (c) the actor does not intend thereby to create or*

27   *continue an illegal restraint of competition, and (d) the actor's purpose is at least*

28   *in part to advance his interest in his competition with the other.") (internal*

*citations and quotations omitted); San Francisco Design Ctr. Assocs. v. Portman Cos., 41 Cal. App. 4th 29, 42-43 (1995) ("[W]hen a claimant charges its competitor with interference with prospective economic advantage and the competitor raises the competition privilege as a defense, the claimant must show the competitor's conduct violated a statute or constituted a tort such as fraud or unfair competition.").*

605.07975/3941364.1

1  **DEFENDANTS' PROPOSED INSTRUCTION RE STATUTE OF**

2  **LIMITATIONS—INTENTIONAL INTERFERENCE WITH**

3  **CONTRACTUAL RELATIONS**

4  **STATUTE OF LIMITATIONS—INTENTIONAL INTERFERENCE WITH**

5  **CONTRACTUAL RELATIONS**

6

7  MGA Entertainment, Inc. and Isaac Larian contend that Mattel's intentional

8  interference with contractual relations claim was not filed within the time set by

9  law.

10  To succeed on this defense, MGA Entertainment, Inc. and Mr. Larian must

11  prove that Mattel did not file its claim against them within two years of the

12  occurrence of the acts that Mattel contends were wrongful, regardless of whether

13  or not Mattel actually knew of the acts at the time.

14  **Authority:**  *See* Cal. Civ. Proc. Code § 339(1); *Forcier v. Microsoft Corp.*,

15  123 F. Supp. 2d 520, 530 (N.D. Cal. 2000); *Charles Lowe Co. v. Xomox Corp.*, No.

16  C95-0498 SI, 1999 WL 1293362, at *9 (N.D. Cal. Dec. 27, 1999); *Menefee v.*

17  *Ostawari*, 228 Cal. App. 3d 239, 245 (1991); 3 B.E. Witkin, *Cal. Procedure:*

18  *Actions*, § 575, at 728 (4th ed. 1996).

19

20  **MATTEL'S OBJECTIONS:**

21  1.  Defendants' instruction is legally erroneous.  It states that the

22  discovery rule does not apply to a claim for intentional interference with

23  contractual relations.  However, the Court has already held the opposite.  (*See*

24  Court's Order on MGA's Motion for Remittitur (Dkt. No. 5273) at 10-11) ("The

25  Court has previously discussed at length why the discovery rule delayed the

26  accrual of Mattel's claims in this case.  That rationale applies with equal force to

27  the intentional interference with contractual relations claim, which was timely

28  asserted against Mr. Larian."); *see also Streamcast Networks, Inc. v. Skype Techs.*,

MATTEL'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

505.07975/3941364.1

1   *S.A.*, 2006 WL 5437322, at *7 (C.D. Cal. Sept. 14, 2006) (applying discovery rule

2   to intentional interference claim). The Court's April 27, 2009 Order cited and

3   distinguished each of the cases Defendants cite in support of this instruction. *See*

4   Dkt. No. 5273 at 10-11.

5         2.    Defendants' instruction is confusing and misleading because MGA's

6   statute of limitations defense has already been summarily adjudicated in Mattel's

7   favor as to many claims. Mattel's intentional interference claim relates to

8   interference not only with Carter Bryant's contracts with Mattel, but also with

9   those of Brawer, Machado, Trueba, Vargas, Castilla, Contreras, Cooney, Cabrera,

10  Morales, Salazar, and Tumaliuan. Amended Order on Summary Judgment

11  Motions (Dkt. No. 9600) at 84. With the exception of Bryant, Defendants have

12  raised no pending statute of limitations defense to Mattel's intentional interference

13  claims. *Id.* at 96 ("To the extent that California law applies to its counter-claims,

14  Mattel's motion for summary judgment as to the timeliness of its non-Bratz

15  allegations is granted.").

16        3.    Defendants' instruction fails to identify the relevant facts triggering

17  accrual. Because of the discovery rule, Mattel's intentional interference claim as

18  to Bryant accrued when Mattel discovered or knew of facts that should have

19  caused it to discover the generic elements of the cause of action. *Fox v. Ethicon*

20  *Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) ("An important exception to the

21  general rule of accrual is the 'discovery rule,' which postpones accrual of a cause

22  of action until the plaintiff discovers, or has reason to discover, the cause of

23  action."). These facts include that Carter Bryant created Bratz while employed by

24  Mattel; that Mr. Bryant entered into a contract with and worked with MGA while

25  he was still employed by Mattel; that the Defendants knew that Mr. Bryant was a

26  Mattel employee when they purported to acquire Bratz from Mr. Bryant; and that

27  the Defendants engaged in illegal conduct in connection with Mr. Bryant. The

28  instruction fails to acknowledge any of this. In addition, the instruction fails to

05.07975/3941364.1

-149-

1 explain that the claim is not time-barred under the discovery rule unless it accrued

2 prior to April 27, 2002.  Cal. Civ. Proc. Code § 339(1).

3      4.      Defendants' instruction fails to specify that Defendants bear the

4 burden of proving the defense by a preponderance of the evidence.

5      5.      Mattel proposes that the Court give the following alternative

6 instruction, proposed by Mattel:  *See* Mattel's Fourth Amended Proposed Jury

7 Instructions (Dkt. No. 9683) at 141.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' PROPOSED INSTRUCTION RE REASONABLE EFFORTS TO PROTECT SECRECY**

**4404**

**REASONABLE EFFORTS TO PROTECT SECRECY**

To establish that information is a trade secret, the claimant must prove that it made reasonable efforts under the circumstances to keep the information secret. "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as the claimant, exercising due care to protect important information of the same kind. This requirement applies separately to each item that the claimant alleges to be a trade secret.

In determining whether or not the claimant made reasonable efforts to keep the information secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:

a. Whether documents or computer files containing the information were marked with confidentiality warnings;

b. Whether the claimant instructed its employees to treat the information as confidential;

c. Whether the claimant restricted access to the information to persons who had a business reason to know the information;

d. Whether the claimant kept the information in a restricted or secured area;

e. Whether the claimant required employees or others with access to the information to sign confidentiality or nondisclosure agreements;

f. Whether the claimant took any action to protect the specific information, or whether it relied on general measures taken to protect its business information or assets;

g.     The extent to which any general measures taken by the claimant would prevent the unauthorized disclosure of the information;

h.     Whether there were other reasonable measures available to the claimant that it did not take.

The presence or absence of any one or more of these factors is not necessarily determinative.

**Authority:**  CACI No. 4404 (2009) (modified)


**MATTEL'S OBJECTIONS:**

1.     Defendants' instruction is less clear than Mattel's proposed instruction in explaining that the relevant time period for evaluating plaintiff's efforts to protect the secrecy of the information is "as of the time of the misappropriation." *See DVD Copy Control Ass'n Inc. v. Bunner*, 116 Cal. App. 4th 241, 251-52 (2004) (trade secret status is determined as of the time of the alleged misappropriation).  This point is important to ensure that the jury does not erroneously conclude that if a party failed to take reasonable steps to maintain secrecy after the information was disclosed, then the party may not recover.

2.     For the reasons discussed above at page __, Defendants' proposed instruction is confusing because it purports to address both Mattel's and MGA's trade secret misappropriation claims in a single instruction.

3.     Mattel respectfully requests that the Court adopt Mattel's proposed alternative versions of this instruction, which are tailored to apply to each party's respective trade secret claim:  CACI 4404 (Reasonable Efforts to Protect Secrecy). *See* Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 59, 208.

1  **DEFENDANTS' PROPOSED INSTRUCTION RE UNCLEAN HANDS**

2  **UNCLEAN HANDS**

3      MGA, MGA de Mexico, and Isaac Larian contend that Mattel's unfair

4  conduct bars Mattel from receiving any relief in this case, under the doctrine of

5  "unclean hands."  This doctrine prevents parties who have acted unfairly or in bad

6  faith in matters related to their claims—parties who have "unclean hands"—from

7  using the courts to benefit from their unfair actions, even if other parties have also

8  acted improperly.

9      Under the rule of "unclean hands," you should deny Mattel relief on its

10 claims if you find that Mattel has acted unfairly or in bad faith in matters related to

11 those claims, so that it would be unfair for Mattel to prevail.

12     In making this decision, you may consider any type of unfair or bad faith

13 conduct by Mattel related to its claims, including Mattel's conduct both before and

14 during this litigation, and its conduct toward other parties and witnesses related to

15 its claims.  Conduct does not have to be criminal or illegal for you to consider it.

16 You may consider any type of unfair or bad faith conduct that violates conscience,

17 good faith, or other equitable standards of conduct.

18     This instruction applies to all of the claims asserted by Mattel.

19     **Authority:**  *Kendall-Jackson Winery, Ltd. v. Sup. Ct.*, 76 Cal. App. 4th 970,

20 979 (1999) ("[T]he misconduct need not be a crime or an actionable tort.  Any

21 conduct that violates conscience, good faith, or other equitable standards of

22 conduct, is sufficient cause to invoke the doctrine."); *Fibreboard Paper Prods.*

23 *Corp. v. East Bay Union of Machinists*, 227 Cal. App. 2d 675, 728-729 (1964).

24

25

26

27

28

05.07975/3941364.1

## MATTEL'S OBJECTIONS:

1.    Unclean hands is an equitable defense that the Court should decide rather than send it to the jury. *See Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature."); *see also Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170 (9th Cir. 1989) (equitable issues may be tried to the court separately from legal issues without infringing the right to jury trial under the Seventh Amendment); *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 986 (9th Cir. 2010) (unclean hands is an equitable doctrine that the court has discretion to apply in appropriate cases; it "bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted.") (quoting *Dollar Sys., Inc.*, 890 F.2d at 173).

2.    Defendants' instruction improperly omits the key requirement that "the alleged misconduct by the plaintiff relate[s] directly to the transaction concerning which the complaint is made." *Dollar Sys., Inc.*, 890 F.2d at 173 (quotation omitted) (emphasis added), *quoted with approval in Seller Agency Council, Inc.*, 621 F.3d at 986.

3.    Defendants' instruction ignores the Court's partial summary adjudication of Defendants' unclean hands defense in Mattel's favor. *See* Amended Order on Motions for Summary Judgment (Dkt. No. 9600) at 119:

> Mattel's motion is granted as to MGA's unclean hands affirmative defense, but only as it relates to Mattel's counter-claims arising out of Bryant's conduct. Contrary to MGA's argument, Mattel's alleged theft of post-production Bratz advertising materials from MGA's showrooms has nothing to do with the "matter for which [Mattel] seeks a remedy," which in this case is the Bryant's alleged non-disclosure of the Bratz concept, Bryant's work for MGA while employed by Mattel, and Bryant's disclosure of the Bratz concept to MGA. See Kendall-Jackson Winery, Ltd. v. Superior Court, 76 Cal. App. 4th 970, 978 (1999). Mattel's motion is otherwise denied as to this affirmative defense.

1    4.    Defendants' proposed instruction fails to specify that Defendants bear

2    the burden of proving the defense by a preponderance of the evidence.

3    5.    To the extent the Court decides, over Mattel's objections, to give any

4    "Unclean Hands" instruction, Mattel respectfully requests that the Court give the

5    following instruction:

6    **UNCLEAN HANDS**

7    *MGA claims that Mattel should not be able to recover damages against*

8    *MGA in this case because Mattel has "unclean hands" and is undeserving of*

9    *relief.  To prevail on the affirmative defense of unclean hands, MGA must prove by*

10    *a preponderance of the evidence that Mattel acted unfairly in connection with the*

11    *events at issue in this case and that Mattel's conduct relates directly to the*

12    *transaction or transactions upon which Mattel's claims against MGA are based.  It*

13    *is up to the Court, not the jury, to determine whether the unclean hands defense*

14    *prevents Mattel from recovering on its counterclaims based on or arising out of*

15    *Bryant's conduct.  You should decide only whether the unclean hands defense*

16    *prevents Mattel from recovering on its other claims that are not based on or do not*

17    *arise out of Bryant's conduct.*

18    ***Authority:***  *Kendall-Jackson Winery Ltd. v. Sup. Ct., 76 Cal. App. 4th 970,*

19    *978 (1999) ("The defense of unclean hands arises from the maxim, 'He who comes*

20    *into Equity must come with clean hands.'  The doctrine demands that a plaintiff act*

21    *fairly in the matter for which he seeks a remedy.  He must come into court with*

22    *clean hands, and keep them clean, or he will be denied relief, regardless of the*

23    *merits of his claim.") (internal citations and quotations omitted); Dollar Sys., Inc.,*

24    *890 F.2d at 173 ("It is fundamental to [the] operation of the doctrine that the*

25    *alleged misconduct by the plaintiff relate directly to the transaction concerning*

26    *which the complaint is made") (internal quotation omitted), quoted with approval*

27    *in Seller Agency Council, Inc., 621 F.3d at 986; Jarrow Formulas, Inc. v. Nutrition*

28    *Now, Inc., 304 F.3d 829, 841 (9th Cir. 2002)("[U]nclean hands does not*

1 *constitute misconduct in the abstract, unrelated to the claim to which it is asserted*
2 *as a defense.") (internal quotation omitted).*
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANTS' PROPOSED INSTRUCTION RE LACHES**

**LACHES**

MGA, MGA de Mexico, and Isaac Larian contend that Mattel is not entitled to any relief in this case under the doctrine of laches.  Mattel's claims against MGA, MGA de Mexico, and Isaac Larian are barred by the doctrine of laches if you find that:

1.    Mattel's delay in filing suit was unreasonable in light of Mattel's knowledge of its claims against MGA, MGA de Mexico, or Mr. Larian; and

2.    Mattel's delay was prejudicial to MGA, MGA de Mexico, or Mr. Larian in light of investments of time and money that MGA, MGA de Mexico, or Mr. Larian made or expended to build MGA's brands or the business of MGA or MGA de Mexico during the period of delay; or

3.    Mattel's delay was prejudicial to MGA, MGA de Mexico, or Mr. Larian in that substantial evidence has been lost and memories faded in the years since Mattel was first on notice of its claims.

This instruction applies to all of the claims asserted by Mattel.

**Authority:**  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 954 (9th Cir. 2001) ("delay is impermissible when its purpose is to capitalize on the value of the alleged infringer's labor, by determining whether the infringing conduct will be profitable"); *see also Watermark Publrs. v. High Tech. Sys., Inc.*, No. 95-3839-1EG (CGA), 1997 WL 717677, 44 U.S.P.Q.2d 1578, 1583-84 (S.D. Cal. 1997) (barring plaintiff's claims on laches grounds after 4 year delay in suing).

**MATTEL'S OBJECTIONS:**

1.      Laches is an equitable defense that is for the Court to decide, not the jury. *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950-51 (9th Cir. 2001) ("Laches is an equitable defense that prevents a plaintiff, who with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights.") (internal quotation omitted); *Unilogic. Inc. v. Burroughs Corp.*, 10 Cal. App. 4th 612, 619 (1992) ("The equitable doctrine of laches has a legal equivalent in the statutes of limitations.  To allow a laches defense in a legal action would be to override a time limit mandated by the Legislature.").

2.      Defendants' instruction fails to recognize that "the strong presumption is that laches is inapplicable" where, as here, Mattel filed suit within the limitations period. *Jarrow Formulas, Inc. v. Nutrition Now, Inc*., 304 F.3d 829, 835 (9th Cir. 2002) ("If the plaintiff filed suit within the analogous limitations period, the strong presumption is that laches is inapplicable."); s*ee also Kling v. Hallmark Cards Inc*., 225 F.3d 1030, 1041, n.8 (9th Cir. 2000) ("When a limitation on the period for bringing suit has been set by statute, laches will generally not be invoked to shorten the statutory period.") (internal quotation and citation omitted).

3.      Defendants' instruction misstates the test for determining whether any undue delay by Mattel prejudiced Defendants by causing them to invest time and money in building their business.  The relevant inquiry is whether Defendants suffered prejudice by taking actions they would not have taken if Mattel had brought suit earlier.  The question is not, as Defendants put it, merely whether MGA made "investments of time and money . . . to build MGA's brands or the business of MGA or MGA de Mexico."  *See Grand Canyon Trust v. Tucson Elec. Power Co.*, 391 F.3d 979, 988 (9th Cir. 2004) (a defendant who seeks to establish prejudice based on unmet expectations must prove it "took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly").

1    4.    Defendants' instruction is erroneous because it omits from the first

2  prejudice prong the requirement that the jury find Mattel's purpose in delaying was

3  to wait to see if Bratz would be a success, as required by Defendants' own

4  authorities.  *See Danjaq LLC.*, 263 F.3d at 954 ("[D]elay is impermissible when

5  *its purpose* is to capitalize on the value of the alleged infringer's labor, by

6  determining whether the infringing conduct will be profitable.") (emphasis

7  added).

8    5.    Defendants' instruction fails to specify that Defendants bear the

9  burden of proving the defense by a preponderance of the evidence.

10    6.    To the extent the Court decides, over Mattel's objections, to give any

11  "Laches" instruction, Mattel respectfully requests that the Court give the following

12  instruction:

13                                **LACHES**

14    *MGA claims that Mattel is barred from asserting any right to relief against*

15  *MGA based upon the doctrine of laches.  To prevail on the affirmative defense of*

16  *laches, MGA must prove by a preponderance of the evidence that Mattel*

17  *unreasonably delayed in bringing its claims against MGA and that MGA has*

18  *suffered prejudice as a result.  In addition, if you find that Mattel timely filed its*

19  *lawsuit against MGA within the applicable limitations period, MGA must also*

20  *overcome the strong presumption that laches does not apply.*

21    *The first element of diligence consists of two steps.  First, you must assess*

22  *the length of delay, which is measured from the time the Mattel knew or should*

23  *have known about its potential cause of action.  Second, you must decide whether*

24  *Mattel's delay, if any, was reasonable.  The reasonableness of the plaintiff's delay*

25  *is considered in light of the amount of time allowed under by the applicable statute*

26  *of limitations to bring the particular claim at issue.  You should also consider*

27  *whether Mattel has offered a legitimate excuse for any delay.*

28

1    *There are two types of prejudice that can result from undue delay in*

2    *bringing a lawsuit:  loss of evidence and detrimental reliance on delay.  To*

3    *establish prejudice from loss of evidence, MGA must prove it has been harmed in*

4    *its ability to prove or disprove important facts because witness testimony or*

5    *physical or documentary evidence is no longer available.  To establish prejudice*

6    *from detrimental reliance on delay, MGA must prove it took actions or suffered*

7    *consequences that would not have happened if Mattel had brought suit promptly.*

8    *In the case of laches, undue prejudice requires at least some reliance on the*

9    *absence of the filing of a lawsuit.*

10    **Authority:**  *Grand Canyon Trust, 391 F.3d at 987 ("Laches is an equitable*

11    *defense to a civil action.  To establish laches, a defendant must establish (1) lack of*

12    *diligence by the plaintiff, and (2) prejudice to the defendant."); Danjaq LLC, 263*

13    *F.3d at 955 ("Courts have recognized two chief forms of prejudice in the laches*

14    *context-evidentiary and expectations-based.  Evidentiary prejudice includes such*

15    *things as lost, stale, or degraded evidence, or witnesses whose memories have*

16    *faded or who have died.  A defendant may also demonstrate prejudice by showing*

17    *that it took actions or suffered consequences that it would not have, had the*

18    *plaintiff brought suit promptly.") (internal citations omitted); Jarrow Formulas,*

19    *Inc., 304 F.3d at 835, 838 ("If the plaintiff filed suit within the analogous*

20    *limitations period, the strong presumption is that laches is inapplicable.";  "A*

21    *determination of whether a party exercised unreasonable delay in filing suit*

22    *consists of two steps.  First, we assess the length of delay, which is measured from*

23    *the time the plaintiff knew or should have known about its potential cause of*

24    *action.  Second, we decide whether the plaintiff's delay was reasonable.  The*

25    *reasonableness of the plaintiff's delay is considered in light of the time allotted by*

26    *the analogous limitations period. We also consider whether the plaintiff has*

27    *proffered a legitimate excuse for its delay.") (internal citations omitted); Seller*

28    *Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc., 621 F.3d 981,*

1  *989 (9th Cir. 2010) ("[I]n the case of laches, undue prejudice requires at least*
2  *some reliance on the absence of a lawsuit.").*
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANTS' PROPOSED INSTRUCTION RE STATUTE OF LIMITATIONS—MISAPPROPRIATION OF TRADE SECRETS**

**4421**

**STATUTE OF LIMITATIONS—MISAPPROPRIATION OF TRADE SECRETS**

MGA, MGA de Mexico, and Isaac Larian contend that Mattel's trade secret misappropriation claim was not filed within the time set by law.  To succeed on this defense, MGA, MGA de Mexico, and Isaac Larian must prove that the claimed misappropriation of the Bratz fashion doll concept and the "Bratz" name occurred before April 27, 2001.

If they do, Mattel cannot recover on its trade secret claim unless Mattel proves that before April 28, 2001, it did not discover, and with reasonable diligence should not have discovered, facts that would have caused a reasonable person to suspect that MGA had misappropriated the Bratz fashion doll concept or the "Bratz" name.

**Authority:**  CACI No. 4421 (2009) (modified)


**MATTEL'S OBJECTIONS:**

1.      Defendants' instruction modifies the model instruction in a manner that is biased in Defendants' favor, replacing the phrase "the lawsuit was still filed on time if . . ." with "Mattel cannot recover on its trade secret claim unless . . ." *See* CACI 4421.  Mattel's proposed instruction modifies the model instruction in a manner that makes it more clear, direct, and helpful to the jury.  It explains the relevant inquiry -- when Mattel first discovered the claims in this case or knew of facts that should have led it to discover those claims -- and clarifies that Mattel was not required to bring a lawsuit based on suspicion alone.  Mattel did not have a misappropriation claim until it knew or had reason to know that it owned the Bratz trade secrets because Bryant created them while employed by Mattel.  *See Fox v.*

*Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) ("An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action.").

2.     Mattel's proposed instruction is more comprehensive than Defendants' because it addresses both Mattel's state and federal claims, and specifically cites to and is based upon CACI 4421 (Affirmative Defense—Statute of Limitations—Three-Year Limit (Civ. Code, § 3426.6)) among other authorities. Further, consistent with this Court's Summary Judgment order, Mattel's proposed instruction makes clear that the statute of limitations defense may properly be applied only to Mattel's Bratz-related claims against Bryant. *See* Amended Order on Summary Judgment Motions (Dkt. No. 9600) at 96 ("To the extent that California law applies to its counter-claims, Mattel's motion for summary judgment as to the timeliness of its non-Bratz allegations is granted.").

3.     Mattel proposes that the Court adopt the its proposed instruction, which remedies the deficiencies described above:  *See* Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 141. Makes it sound like we're about to quote it.

1  **DEFENDANTS' PROPOSED INSTRUCTION RE COPYRIGHT**

2  **PREEMPTION**

3                      **COPYRIGHT PREEMPTION**

4          You may not award damages for trade secret misappropriation based on the

5  alleged misappropriation of Carter Bryant's particularized expression as set forth

6  in the sketches of his pitch book, Exhibit 302.

7          If you find that any misappropriation of Mattel trade secrets is limited to the

8  particularized expression as set forth in the sketches of Carter Bryant's pitch book,

9  Exhibit 302, you may not award any damages to Mattel for trade secret

10  misappropiation.

11         **Authority:**  17 U.S.C. 301; *Sears Roebuck & Co. v. Stiffel Co.*, 376 U.S.

12  234 (1964); *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 225, 237 (1964);

13  *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124-25 (9th Cir. 2010); *Laws v. Sony Music*

14  *Entm't, Inc.*, 448 F.3d 1134 (9th Cir. 2006); *Freightliner Corp. v. Myrick*, 514 U.S.

15  280, 287 (1995); *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 885 (2000); *Dastar*

16  *Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003); *Harper & Row*

17  *Publishers v. Nation Enters.*, 723 F.2d 195, 201 (2d Cir. 1983), *rev'd on other*

18  *grounds*, 471 U.S. 539 (1985); *Del Madera Props. v. Rhodes and Gardner, Inc.*,

19  820 F. 2d 973, 977 (9th Cir. 1987).

20

21  **MATTEL'S OBJECTIONS:**

22         1.    This instruction conflicts with the Court's prior ruling that the

23  Copyright Act does not preempt Mattel's claim for missappropriation of the Bratz

24  concept, and it is incorrect as a matter of law.  *See* Amended Order on Motions for

25  Summary Judgment (Dkt. No. 9600) at 72:

26        [T]he Copyright Act doesn't preempt Mattel's claim for
      misappropriation of the Bratz concept because trade secret law

27        protects the secrecy of valuable confidential information "whether or
      not the material subject to the trade secret is itself copyrightable."

28        Nimmer on Copyright § 1.01[B][1][h] 1-53; *see also S.O.S., Inc. v.*

1    *Payday, Inc.*, 886 F.2d 1081, 1090 n.13 (9th Cir. 1989); *see also*
     *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1130 (N.D. Cal.
2    2001) (Copyright Act does not preempt UTSA claim for disclosure
     and exploitation of trade secrets because that claim "require[s] a status
3    of secrecy, not required for copyright").

4    *See also Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005) ("If

5    a state law claim includes an 'extra element' that makes the right asserted

6    qualitatively different from those protected under the Copyright Act, the state law

7    claim is not preempted by the Copyright Act."); *X17, Inc. v. Lavandeira*, 563 F.

8    Supp. 2d 1102, 1105 (C.D. Cal. 2007) ("[I]f other elements are required . . . to

9    constitute a state created cause of action, then the right does not lie 'within the

10   general scope of copyright,' and there is no preemption.") (internal citation and

11   emphasis omitted); *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1130

12   (N.D. Cal. 2001) (Copyright Act does not preempt UTSA claim for disclosure and

13   exploitation of trade secrets because trade secret claim "require[s] a status of

14   secrecy, not required for copyright") (internal citation omitted); *Gates Rubber Co.*

15   *v. Bando Chem. Indus.*, 9 F.3d 823, 847-48 (10th Cir. 1993) ("The breach of a duty

16   of trust or confidence 'is the gravamen of such trade secret claims and supplies the

17   'extra element' that qualitatively distinguishes such trade secret causes of action

18   from claims for copyright infringement that are based solely on copying.'")

19   (*quoting Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir.

20   1992)) (collecting cases).

21        2.    Defendants' instruction fails to specify that Defendants bear the

22   burden of proving the defense by a preponderance of the evidence.

23        3.    If the Court is inclined to reconsider any of its prior rulings on this

24   issue, Mattel respectfully requests an opportunity to submit full briefing.  Mattel

25   also incorporates by reference its prior briefing on this issue.  *See* Mattel's

26   Corrected Opposition to the MGA Parties' Motion for Summary Judgment (Dkt.

27   No. 9231) at 19; Amended Order on Summary Judgment Motions (Dkt. No. 9600)

28   at 72-73.

1  **DEFENDANTS' PROPOSED INSTRUCTION RE PREPARATIONS TO**

2  **COMPETE**

**PREPARATIONS TO COMPETE**

4      It is not a breach of the duty of loyalty for an employee to make preparations

5  to compete with his or her employer, or to seek or negotiate new employment or

6  work, before he or she resigns.  Lawful preparations to compete may include

7  activities such as:  (1) interviewing with a potential new employer; (2) engaging in

8  meetings and discussing the terms and conditions of employment or work with a

9  competing business; (3) entering into a partnership or an employment agreement or

10  independent contractor agreement with a competing business or new employer; (4)

11  writing or participating in the preparation of a business plan for a competing

12  business or new employer; and (5) organizing a corporation to carry on a rival

13  business.

14      An employee is not obligated to disclose such preparations to compete to his

15  or her employer.

16      **Authority:**  *Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 346-47 (1966);

17  *Fowler v. Varian Assocs., Inc.*, 196 Cal. App. 3d 34, 41 (1987) (holding that duty

18  of loyalty exists "[d]uring the term of employment"); *Maximus, Inc. v. Thompson*,

19  78 F. Supp. 2d 1182, 1191 (D. Kan. 1999) (defendants did not breach duty of

20  loyalty by their "discussing the prospects of competing, their gathering and

21  estimating of expenses, their submission of a bank plan and securing a promise of

22  financing from a bank, and the compilation of the information necessary to make a

23  bid"); *Mercer Mgmt. Consulting, Inc. v. Wilde*, 920 F. Supp. 219, 234 (D.D.C.

24  1996) (employees did not breach duty of loyalty when they "incorporate[d]

25  [competing business], . . . made arrangements for office space, inquired about

26  benefit packages, investigated computer systems, and met with an accountant,"

27  because these were just preparations to compete); *Dwyer, Costello & Knox v. Diak*,

28  846 S.W.2d 742, 747 (Mo. 1993) (accountant-employee did not breach duty of

loyalty by deciding to form competing accounting firm while still employed, signing partnership agreement, and locating and renting office space for competing business); 19 Williston on Contracts (4th ed. 2008) § 54.27, p. 467, fn. omitted ["Employees whose contracts are terminable at will have a right to terminate their employment for the purpose of competing with their employer, and may plan and prepare to create a competitive enterprise prior to their termination, without revealing their plans to their employer, so long as they do so on their own time and with their own resources."]].

## MATTEL'S OBJECTIONS:

1.      Defendants' instruction fails to inform the jury that lawful "preparations to compete" does not apply when an employee has concealed those preparations or transferred his or her loyalty to a competitor while still employed by the prior employer, to the detriment of the prior employer.  *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 295 (1995) ("[A]n employer has the right to expect the undivided loyalty of its employees.  The duty of loyalty is breached, and may give rise to a cause of action in the employer, when the employee takes action which is inimical to the best interests of the employer."); *Huong Que Inc.*, 150 Cal. App. 4th at 414 ("An employee, while employed, owes undivided loyalty to his employer.  While California law does permit an employee to seek other employment and even to make some 'preparations to compete' before resigning, California law does not authorize an employee to transfer his loyalty to a competitor.") (internal citation and quotation omitted).

2.      Defendants' instruction is misleading and biased in that it provides a list of defense-slanted examples of conduct that purportedly does *not* breach the duty of loyalty, but provides no test or elements for the jury to apply to determine whether Defendants prepared to compete in a lawful manner.  In addition, Mattel does not expect that the merely preparatory and non-detrimental conduct

1  referenced in the instruction will be supported by the evidence.  This instruction is

2  therefore irrelevant and would be misleading to the jury, which may conclude that

3  because this instruction was given, the evidence should be viewed as establishing

4  mere "preparations to compete."  Presenting this instruction in this format may

5  lead the jury wrongfully to conclude that the Court has already sanctioned

6  Defendants' characterizations of the evidence.

7        3.      Defendants' instruction fails to specify that Defendants bear the

8  burden of proving the defense by a preponderance of the evidence.

9        4.      To the extent the Court decides, over Mattel's objections, to give any

10  "Preparations to Compete" instruction, Mattel requests that the Court give the

11  following instruction:

12

13  **PREPARATIONS TO COMPETE**

14  *An employee owes a duty of loyalty to his or her employer under California*

15  *law.  The duty of loyalty requires the employee not to take action against the best*

16  *interests of the employer.  Merely preparing to compete in the future with one's*

17  *employer does not constitute a breach of the duty of loyalty.  However, an*

18  *employee may not engage in direct competition with the employer, transfer his or*

19  *her loyalty to a competitor while working for the employer, or otherwise engage in*

20  *wrongful conduct to the detriment of the employer while preparing to compete in*

21  *the future against the employer.*

22  ***Authority:*** *Stokes v. Dole Nut Co., 41 Cal. App. 4th 285, 295 (1995) ("[A]n*

23  *employer has the right to expect the undivided loyalty of its employees.  The duty of*

24  *loyalty is breached, and may give rise to a cause of action in the employer, when*

25  *the employee takes action which is inimical to the best interests of the employer.");*

26  *Huong Que Inc., 150 Cal. App. 4th at 414 ("An employee, while employed, owes*

27  *undivided loyalty to his employer.  While California law does permit an employee*

28  *to seek other employment and even to make some 'preparations to compete' before*

1   *resigning, California law does not authorize an employee to transfer his loyalty to*

2   *a competitor.") (internal citation and quotation omitted); Restatement (Third)*

3   *Agency § 8.04 (2006) ("Throughout the duration of an agency relationship, an*

4   *agent has a duty to refrain from competing with the principal and from taking*

5   *action on behalf of or otherwise assisting the principal's competitors.  During that*

6   *time, an agent may take action, not otherwise wrongful, to prepare for competition*

7   *following termination of the agency relationship.").*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-169-

**DEFENDANTS' PROPOSED INSTRUCTION RE CONSENT TO EMPLOYEES' ACTIONS**

**CONSENT TO EMPLOYEES' ACTIONS**

Consent by Mattel to the conduct of its employees need not be explicit, but can be shown by implied understandings or known customs.

**Authority:** CACI No. 4102 (2009); Restatement (Third) of Agency § 8.04 cmt. b

**MATTEL'S OBJECTIONS:**

1.     Defendants' proposed instruction does not adequately inform the jury as to which claims the issue of consent could even conceivably relate.  Consent is relevant, at most, to Mattel's claims for trade secret misappropriation and aiding and abetting breach of the duty of loyalty.  For the trade secret claims, lack of consent is an element of misappropriation by disclosure or use.  *See* CACI 4406 (Misappropriation by Disclosure), CACI 4407 (Misappropriation by Use).  For the aiding and abetting claims, lack of informed consent is an element of breach of the duty of loyalty.  *See* CACI 4102 (Duty of Undivided Loyalty—Essential Factual Elements).

2.     Defendants' consent instruction is incomplete, misstates the law, and is shaded to focus the jury's attention on only one type of consent.  Their proposed instruction states that "[c]onsent by Mattel to the conduct of its employees need not be explicit, but can be shown by implied understandings or known customs."  CACI 4102 simply states that one of the elements of the duty of loyalty is that the plaintiff "did not give informed consent to [defendant's] conduct."  *See* CACI 4102 (Duty of Undivided Loyalty—Essential Factual Elements).  The other authority Defendants rely on, Restatement (Third) of Agency § 8.04 (Competition) cmt. b, states:

MATTEL'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

05.07975/3941364.1

> A principal's consent to action by an agent that would otherwise breach the duty stated in this section may be explicit. A principal may also consent through implied understandings and known customs, including those normally associated with a type of agency relationship in which an agent may act on behalf of multiple customers or clients. For further discussion, see § 8.06, Comment e.

Although the comment states that a principal may consent through implied understanding and known customs, this section cites to § 8.06 (Principal's Consent), cmt. e, which makes clear that implied consent concerns specific factual circumstances not at issue here—such as customs known to both the principal and agent in which the principal consents to receipt of a benefit or gratuity from a third party. *See* Restatement (Third) of Agency § 8.06 (Principal's Consent) cmt. e ("The terms of an agreement between a principal and an agent may implicitly include customs known to both through which agents customarily receive gratuities from third parties . . .").

3.     To the extent the Court decides, over Mattel's objections, to give any "Consent to Employees' Actions" instruction, Mattel requests that the Court give the following instruction:

## CONSENT TO EMPLOYEES' ACTIONS

*One of the essential elements of the duty of loyalty is that Mattel did not give informed consent to the former employees' conduct. In order to find that Mattel provided informed consent, MGA must prove that in obtaining Mattel's consent, each employee (i) acted in good faith; (ii) disclosed all material facts that the employee knew, had reason to know, or should know would reasonably affect Mattel's judgment unless Mattel has manifested that such facts are already known by Mattel or that Mattel does not wish to know them; (iii) otherwise dealt fairly with Mattel; and (iv) Mattel's consent concerns either a specific act or transaction, or acts or transactions of a specified type that could reasonably be expected to occur in the ordinary course of the agency relationship.*

1     ***Authority:*** *CACI No. 4102 (2009); Restatement (Third) of Agency § 8.06*

2 *(2006) ("(1) Conduct by an agent that would otherwise constitute a breach of duty*

3 *as stated in §§ 8.01, 8.02, 8.03, 8.04, and 8.05 does not constitute a breach of duty*

4 *if the principal consents to the conduct, provided that (a) in obtaining the*

5 *principal's consent, the agent (i) acts in good faith, (ii) discloses all material facts*

6 *that the agent knows, has reason to know, or should know would reasonably affect*

7 *the principal's judgment unless the principal has manifested that such facts are*

8 *already known by the principal or that the principal does not wish to know them,*

9 *and (iii) otherwise deals fairly with the principal; and (b) the principal's consent*

10 *concerns either a specific act or transaction, or acts or transactions of a specified*

11 *type that could reasonably be expected to occur in the ordinary course of the*

12 *agency relationship.").*

MATTEL'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**DEFENDANTS' PROPOSED INSTRUCTION RE STATUTE OF LIMITATIONS—BREACH OF DUTY OF LOYALTY**

**STATUTE OF LIMITATIONS—BREACH OF DUTY OF LOYALTY**

MGA and Isaac Larian contend that Mattel's breach of duty of loyalty claims were not filed within the time set by law.  To succeed on this defense, MGA and Mr. Larian must prove that Mattel did not file its claims against them within two years of the date when Mattel knew, or when a reasonable person would have had any reason to suspect, that a breach of the duty first occurred.

**Authority:**  Cal. Civ. Proc. Code § 339

**MATTEL'S OBJECTIONS:**

1.      Defendants' instruction does not define the scope of the duty of loyalty and does not provide a basis for the jury to determine what would trigger accrual.

2.      Defendants' instruction does not explain that accrual requires knowledge of facts that would have caused a reasonable person to suspect the generic elements of a cause of action.  The statement that accrual occurred if Mattel "had any reason to suspect" indicates that accrual can be triggered by rumor and innuendo, which is incorrect.  *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1266 (N.D. Cal. 1991) ("We cannot apply statute of limitations law in a way that pressures litigants to file suits based merely on suspicions and fears.  At least in the commercial setting at issue here, suspicion and fear are not sufficient predicates for launching a lawsuit, and to file an action with no other basis would offend norms articulated in rules like Federal Rule of Civil Procedure 11."); *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1043 (C.D. Cal. 2003) (plaintiff is "on notice" sufficient to end a period of equitable tolling only when he has "'an awareness of sufficient facts to identify a particular cause of action . . .

605.07975/3941364.1

1  We do not mean the kind of notice—based on hints, suspicions, hunches or

2  rumors—that requires a plaintiff to make inquiries in the exercise of due diligence,

3  but not to file suit.'").  Moreover, Code of Civil Procedure § 339 does not include

4  the "any reason to suspect" language proposed by Defendants.  Section 339 provides

5  in pertinent part:

> Within two years:  1. An action upon a contract, obligation or liability
6  not founded upon an instrument of writing . . . shall not be deemed to
7  have accrued until the discovery of the loss or damage suffered by the
   aggrieved party thereunder.

8

9      3.    Defendants' instruction would permit a finding of accrual of the

10  aiding and abetting claim without knowledge of at least one of the generic

11  elements of the cause of action and suspicion of the others—i.e., that Mattel was

12  aware of facts showing both that Bryant breached his duty of loyalty and that

13  MGA and Larian aided and abetted that breach.  *See Fox v. Ethicon Endo-Surgery,*

14  *Inc.*, 35 Cal. 4th 797, 807 (2005) ("An important exception to the general rule of

15  accrual is the 'discovery rule,' which postpones accrual of a cause of action until

16  the plaintiff discovers, or has reason to discover, the cause of action."); *see also*

17  *Casey v. U.S. Bank Nat'l Ass'n.*, 127 Cal. App. 4th 1138, 1144 (2005) (aiding and

18  abetting liability requires that the defendant "(a) knows the other's conduct

19  constitutes a breach of duty and gives substantial assistance or encouragement to

20  the other to so act or (b) gives substantial assistance to the other in accomplishing a

21  tortious result and the person's own conduct, separately considered, constitutes a

22  breach of duty to the third person") (internal quotation omitted).

23      4.    Mattel proposes that the Court adopt Mattel's Special Jury Instruction

24  No. 33 (Affirmative Defense—Statute of Limitations).  That instruction identifies

25  the relevant facts triggering accrual and corrects the deficiencies identified above.

26  S*ee* Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 141.

27  As explained in connection with Mattel's Objections to Defendants' Proposed

28  Instruction CACI 4421, Mattel's proposed instruction is more clear, direct, and

helpful to the jury.  It explains the relevant inquiry -- when Mattel first discovered the claims in this case or knew of facts which should have led it to discover those claims -- and clarifies that Mattel was not required to bring a lawsuit based on suspicion alone.  Moreover, Mattel's proposed instruction makes clear that the statute of limitations defense may apply only to Mattel's Bratz-related claims against Bryant.  *See* Amended Order on Summary Judgment Motions (Dkt. No. 9600) at 96 ("To the extent that California law applies to its counter-claims, Mattel's motion for summary judgment as to the timeliness of its non-Bratz allegations is granted.").

**DEFENDANTS' PROPOSED INSTRUCTION RE STATUTE OF LIMITATIONS—CONVERSION**

### STATUTE OF LIMITATIONS—CONVERSION

MGA and Isaac Larian contend that Mattel's conversion claim was not filed within the time set by law.

To succeed on this defense, MGA and Mr. Larian must prove that Mattel did not file its claims against them within three years of the act of wrongfully taking the property that Mattel contends was converted, regardless of whether or not Mattel actually knew of the taking at the time.

**Authority:** Cal. Civ. Proc. Code §338(c); *AmerUS Life Ins. Co. v. Bank of Am., N.A.*, 143 Cal. App. 4th 631, 639 (2006); *Strasberg v. Odyssey Group, Inc.*, 51 Cal. App. 4th 906, 916 (1996).

**MATTEL'S OBJECTIONS:**

1.      Defendants' objection incorrectly states that conversion is not subject to the discovery rule.  The discovery rule applies because the Inventions Agreement imposed a duty on Bryant to disclose inventions such as Bratz promptly and not to misappropriate Mattel's trade secrets.  Amended Order on Summary Judgment Motions (Dkt. No. 9600) at 75; *see AmerUS Life Ins. Co. v. Bank of Am., N.A.*, 143 Cal. App. 4th 631, 639 (2006) ("To the extent our courts have recognized a 'discovery rule' exception to toll the statute, it has only been when the defendant in a conversion action fraudulently conceals the relevant facts *or where the defendant fails to disclose such facts in violation of his or her fiduciary duty to the plaintiff*.") (emphasis added) (internal citation and quotation omitted).  This discovery rule applies even if MGA and MGA Hong Kong—which received the converted items—did not owe a duty to Mattel.  *See Bennett v. Hibernia Bank*, 47 Cal. 2d 540, 562-63 (1956) (statute of limitations on conversion

05.07975/3941364.1

1  claim against third parties was subject to discovery rule because third parties took

2  the property with knowledge the property was initially acquired in breach of duty

3  owed to plaintiff); *see also In re Brocade Commc'ns Sys., Inc. Derivative Litig.*,

4  615 F. Supp. 2d 1018, 1037-38 (N.D. Cal. 2009) (claim for breach of the duty of

5  loyalty is "most akin to a breach of fiduciary duty claim").  Mattel alleges that

6  MGA and MGA Hong Kong received the Bratz tangible items with full knowledge

7  of Bryant's duties to Mattel, so the conversion claim against them is subject to the

8  discovery rule.

9          2.      Defendants' instruction lacks a provision setting forth the fraudulent

10  concealment exception that would establish the timeliness of the conversion claim

11  even assuming it is not subject to the discovery rule.  *AmerUS Life Ins. Co.*, 143

12  Cal. App. 4th at 639 ("To the extent our courts have recognized a 'discovery rule'

13  exception to toll the statute, it has only been when the defendant in a conversion

14  action fraudulently conceals the relevant facts or where the defendant fails to

15  disclose such facts in violation of his or her fiduciary duty to the plaintiff.  In those

16  instances, the statute of limitations does not commence to run until the aggrieved

17  party discovers or ought to have discovered the existence of the cause of action for

18  conversion.") (internal quotation omitted).  Mattel's proposed instructions

19  regarding conversion statute of limitations and fraudulent concealment correct

20  these deficiencies:  *See* Mattel's Fourth Amended Proposed Jury Instructions (Dkt.

21  No. 9683) at 141, 145.

22

23

24

25

26

27

28

**DEFENDANTS' PROPOSED INSTRUCTION RE STATUTE OF LIMITATIONS—COPYRIGHT INFRINGEMENT**

**STATUTE OF LIMITATIONS—COPYRIGHT INFRINGEMENT**

MGA and Isaac Larian contend that Mattel's copyright claim was not filed within the time permitted by law.  To succeed on this defense, MGA and Isaac Larian must prove that Mattel discovered, or with reasonable diligence should have discovered, that MGA was asserting ownership over a property to which Mattel had a copyright interest before April 27, 2001.

**Authority:**  17 U.S.C. § 507(b); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004) (the statute of limitations is triggered when a "[plaintiff] [] discover[s], [or] reasonably could ... have discovered, the infringement"); *Rolev v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994) (copyright infringement claims accrue "when one has knowledge of a violation or is chargeable with such knowledge").

**MATTEL'S OBJECTIONS:**

1.      Defendants' instruction erroneously states that accrual is triggered by Mattel's knowledge of MGA's "ownership" claim rather than Mattel's knowledge of MGA's infringement of Bratz works created by Bryant while he was employed by Mattel.  Mattel has asserted a copyright infringement claim, and the Court already held in 2008 that accrual could not occur until Mattel had access to the Bratz works it claims to own so that a substantial similarity analysis could be performed.  Dkt. No. 3902 at 4 (citing *Lamps Plus. Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003)).  As the Court stated, "it is uncontroverted that Mattel did not receive copies of the Bratz drawings prior to November 23, 2003.  Without the drawings, Mattel could not assess the substantial similarity factor to determine whether it could assert a claim that the Bratz dolls infringed Mattel's rights to them." *Id.*

1    2.    Defendants' instruction focuses solely on ownership rather than

2   infringement, and therefore sets forth an erroneous accrual standard.  Although

3   Defendants attempt to frame the accrual issue solely in terms of ownership, the

4   Ninth Circuit applies this standard only in joint authorship cases where "creation

5   rather than infringement is the gravamen of an authorship claim" and there was an

6   "express repudiation" of ownership by one of the joint authors.  *See Aalmuhammed*

7   *v. Lee*, 202 F.3d 1227, 1230-31 (9th Cir. 2000) (internal citation and quotation

8   omitted).  Where, as here, Mattel has alleged infringement against a competitor,

9   the three-year limitations period and the discovery rule apply.  *Polar Bear Prods.,*

10  *Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004) (concluding that § 507(b) of

11  the Copyright Act "permits damages occurring outside of the three-year window,

12  so long as the copyright owner did not discover-and reasonably could not have

13  discovered-the infringement before the commencement of the three-year limitation

14  period").  And even if the "ownership" test were to apply, Mattel was not aware of

15  a "'plain and express repudiation' of authorship" until November 23, 2003—the

16  date Mattel first obtained the designs that form the basis of its infringement claim.

17  Mattel could not have become aware of MGA's "repudiation" of Mattel's

18  ownership in those works until Mattel at least saw them for the first time, which is

19  also the first time that Mattel could have performed an infringement analysis.  *See*

20  *Aalmuhammed*, 202 F.3d at 1231 ("Because creation rather than infringement is

21  the gravamen of an authorship claim, the claim accrues on account of creation, not

22  subsequent infringement, and is barred three years from 'plain and express'

23  repudiation of authorship.") (quoting *Zuill v. Shanahan*, 80 F.3d 1366, 1371 (9th

24  Cir. 1996)).  Accrual did not occur until Mattel knew it had a claim to ownership

25  of the Bratz sketches and sculpt and knew that the Bratz dolls infringed the

26  copyrighted works that Mattel owned.

27    3.    Defendants' instruction erroneously states that accrual is triggered by

28  Mattel's knowledge that "MGA was asserting ownership over *a property* to which

605.07975/3941364.1

-179-

1    Mattel had a copyright interest before April 27, 2001," which would presumably

2    include the Diva Starz and/or Toon Teens projects.  Mattel is suing MGA for

3    infringement of its copyrights in the Bratz-related sketches and sculpt created by

4    Bryant while he was employed by Mattel, not for infringement of other projects.

5    Defendants' assertion is inconsistent with the Ninth Circuit's opinion, which

6    expressly focused on the "sketches and sculpt" as the relevant copyrighted work:

> Mattel argued that MGA's Bratz dolls infringed its copyrights in the *sketches and sculpt*.  To win its copyright claim, Mattel had to establish three things.  First, Mattel had to prove that it owned copyrights in the *sketches and sculpt* (it did).  Second, it had to show that MGA had access to the *sketches and sculpt* (obviously).  Third, it had to establish that MGA's dolls infringe the *sketches and sculpt* (the kicker).

11   *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (2010) (emphasis added).

12   Diva Starz and Toon Teens are not mentioned in the Ninth Circuit's opinion

13   because they have nothing to do with the copyright claims, whether for ownership

14   or infringement, that Mattel is asserting.  Contrary to Defendants' instruction, these

15   claims did not accrue when Mattel suspected that Bratz infringed "a property to

16   which Mattel had a copyright interest"; they accrued when Mattel suspected that

17   MGA's Bratz dolls infringed the Bratz sketches and sculpt that Mattel owned.  *See*

18   *Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1147 (N.D. Cal. 2007).

19        4.    Defendants' instruction fails to explain that the rolling statute of

20   limitations allows recovery for all infringing acts that took place within three years

21   before Mattel filed its complaint on April 27, 2004, i.e., for all acts occurring after

22   April 27, 2001, even assuming the claim initially accrued before that.  17 U.S.C.

23   § 507(b) ("No civil action shall be maintained under the provisions of this title

24   unless it is commenced within three years after the claim accrued.");  *Roley v. New*

25   *World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994) ("In a case of continuing

26   copyright infringements, an action may be brought for all acts that accrued within

27   the three years preceding the filing of the suit.");  *Polar Bear Prods., Inc.*, 384 F.3d

28   at 706 (concluding that § 507(b) of the Copyright Act "permits damages occurring

MATTEL'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

1    outside of the three-year window, so long as the copyright owner did not discover-

2    and reasonably could not have discovered-the infringement before the

3    commencement of the three-year limitation period"); *Goldberg*, 482 F. Supp. 2d at

4    1147 ("Because each act of infringement is a distinct harm, the statute of

5    limitations bars infringement claims that accrued more than three years before suit

6    was filed, but does not preclude infringement claims that accrued within the

7    statutory period.").

8         5.    Mattel proposes that the Court adopt its proposed statute of limitations

9    instruction:  *See* Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No.

10   9683) at 141.  Mattel's instruction properly explains that the claim accrued if (1)

11   Mattel discovered or had reason to discover that MGA was infringing Bryant's

12   Bratz sketches and sculpt (rather than some other Mattel product or property), (2)

13   Mattel discovered or had reason to discover its claim to ownership through

14   Bryant's creation of the Bratz sketches and sculpt while employed by Mattel, and

15   (3) Mattel had access to the Bratz sketches and sculpt so that it could evaluate

16   infringement by performing a substantial similarity analysis.

17

18

19

20

21

22

23

24

25

26

27

28

1  **DEFENDANTS' PROPOSED INSTRUCTION RE ESTOPPEL**

2

3  **ESTOPPEL**

4      MGA and Isaac Larian claim as a defense that Mattel is barred from

5  asserting copyright claims because of its prolonged silence regarding alleged

6  infringement and its prior conclusion that the Bratz dolls do not infringe its

7  intellectual property rights.

8      To establish this defense, MGA, MGA HK, or Mr. Larian must prove all of the

9  following:

10      1.    That Mattel made a representation of fact by conduct intending

11  that MGA, MGA HK, or Mr. Larian should rely on it.  Conduct is used "in its

12  broadest meaning as including ... silence or negative omission to do anything";

13      2.    That Mattel had knowledge that the Bratz dolls potentially

14  infringed its intellectual property rights and that Carter Bryant worked for MGA;

15      3.    Ownership of Bryant's Bratz sketches; and

16      4.    That MGA, MGA (HK), or Mr. Larian reasonably relied on Mattel's

17  silence to its or his detriment.  Reliance must be reasonable in the sense that under the

18  circumstances, a reasonable person would have acted as the relying party.

19      **Authority:**  *HGI Assocs., Inc. v. Wetmore Printing Co.*, 427 F.3d 867, 875

20  (11th Cir. 2005); *Stambler v. Diebold, Inc.*, 1988 WL 95479, at \*\*6, 11

21  U.S.P.Q. 2d 1709, 1715 (E.D.N.Y. 1988), *aff'd*, 878 F.2d 1445 (Fed. Cir. 1989);

22  *City of Long Beach v. Mansell*, 3 Cal. 3d 462, 488 n.22 (1970).

23

24  **MATTEL'S OBJECTIONS:**

25      1.    The instruction is unnecessary because estoppel is an equitable

26  defense to be tried to the Court, not the jury.  *Granite State Ins. Co. v. Smart*

27  *Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("We conclude that

28  because the defense of equitable estoppel was originally available only in courts of

1    equity, it is equitable in nature and, therefore, except for any issues which may be

2    common to Granite's legal claims, SMT's equitable estoppel defense presents

3    issues to be resolved by the court.").

4         2.    Defendants' instruction misstates the elements of estoppel, which are:

5    "(1) the party to be estopped must be apprised of the facts; (2) he must intend that

6    his conduct shall be acted upon, or must so act that the party asserting the estoppel

7    has a right to believe it was so intended; (3) the other party must be ignorant of the

8    true state of facts; and (4) he must rely upon the conduct to his injury." *Strong v.*

9    *County of Santa Cruz*, 15 Cal. 3d 720, 725 (1975); *see also Metro-Goldwyn-Mayer*

10   *Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1225 (C.D. Cal. 2007) (for

11   estoppel to apply, "(1) [t]he party sought to be estopped must know the facts; (2)

12   he must intend that his conduct shall be acted on or must so act that the party

13   asserting the estoppel has a right to believe it is so intended; (3) the latter must be

14   ignorant of the true facts; and (4) he must rely on the former's conduct to his

15   injury").

16        3.    Defendants' instruction improperly asserts that knowledge of

17   "potential" infringement of Mattel's rights is sufficient to establish an estoppel

18   defense.

19        4.    To the extent the Court decides, over Mattel's objections, to give any

20   "Estoppel" instruction, Mattel respectfully requests that the Court give the

21   following instruction:

**ESTOPPEL**

23        *MGA claims that Mattel is estoped from asserting any copyright claim*

24   *against MGA.  Estoppel arises when a party's conduct misleads another to believe*

25   *that a right will not be enforced and causes that party to act to its detriment in*

26   *reliance upon this belief.  Estoppel requires that the party to be estopped (1) must*

27   *know the facts, (2) intend that its conduct shall be acted upon or so act that the*

28   *party asserting the estoppel has a right to believe it is so intended, (3) the party*

1   *asserting estoppel must be ignorant of the true facts, and (4) that party must rely*

2   *upon the former's conduct to his injury.*

3         *To prevail on the affirmative defense of estoppel, MGA must prove by a*

4   *preponderance of the evidence that (1) Mattel was apprised of the facts of MGA's*

5   *alleged misconduct; (2) Mattel intended that its conduct in not filing suit would be*

6   *acted upon, or acted in such a manner that MGA had a right to believe it was so*

7   *intended; (3) MGA was ignorant as to the true state of facts; and (4) MGA relied*

8   *upon Mattel's conduct and has been harmed as a result.  The doctrine of equitable*

9   *estoppel does not eliminate the duty of due care and is not available to MGA if it*

10  *suffered loss solely by reason of its own failure to act or inquire.*

11        *Authority: Strong, 15 Cal. 3d at 725 ("The doctrine of equitable estoppel is*

12  *founded on concepts of equity and fair dealing.  It provides that a person may not*

13  *deny the existence of a state of facts if he intentionally led another to believe a*

14  *particular circumstance to be true and to rely upon such belief to his detriment.*

15  *The elements of the doctrine are that (1) the party to be estoped must be apprised*

16  *of the facts; (2) he must intend that his conduct shall be acted upon, or must so act*

17  *that the party asserting the estoppel has a right to believe it was so intended; (3)*

18  *the other party must be ignorant of the true state of facts; and (4) he must rely*

19  *upon the conduct to his injury."); Metro-Goldwyn-Mayer Studios, Inc., 518 F.*

20  *Supp. 2d at 1225 ("Four elements must be present to establish the defense of*

21  *estoppel:  (1) The party to be estopped must know the facts; (2) he must intend that*

22  *his conduct shall be acted on or must so act that the party asserting the estoppel*

23  *has a right to believe it is so intended; (3) the latter must be ignorant of the true*

24  *facts; and (4) he must rely on the former's conduct to his injury.") (quoting*

25  *Hampton v. Paramount Pictures Corp., 279 F.2d 100, 105 (9th Cir. 1960);*

26  *Hampton, 279 F.2d at 104 ("The doctrine of equitable estoppel does not erase the*

27  *duty of due care and is not available for the protection of one who has suffered*

28  *loss solely by reason of his own failure to act or inquire.").*

-184-

MATTEL'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**DEFENDANTS' PROPOSED INSTRUCTION RE DAMAGES— INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS DAMAGES—INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

If you have concluded that MGA Entertainment, Inc. or Isaac Larian intentionally interfered with a contract between Mattel and Carter Bryant, Ana Cabrera, Beatriz Morales, Maria Salazar, and Ryan Tumaliuan, you must decide how much money will reasonably compensate Mattel for the harm, if any, caused by that interference.

Mattel is not entitle to compensation to any harm other than harm resulting from the loss of the services of Mr. Bryant, Ms. Cabrera, Ms. Morales, Ms. Salazar, or Mr. Tumaliuan caused by interference by MGA Entertainment, Inc. or Mr. Larian with a contract between Mattel and Mr. Bryant, Ms. Cabrera, Ms. Morales, Ms. Salazar, or Mr. Tumaliuan.

To recover damages for intentional interference with contractual relations, Mattel must prove that Mattel suffered a financial loss resulting from the loss of the services of Mr. Bryant, Ms. Cabrera, Ms. Morales, Ms. Salazar, or Mr. Tumaliuan and prove the amount of the loss.

**Authority:** CACI 2201 (modified); December 27, 2010 Order on MGA's Motion for Summary Judgment; Mattel's Motion for Partial Summary Judgment; Machado's Motion for Summary Judgment (Dkt. No. 9538); Restatement (Second) of Torts § 774A (1979); *Di Loreto v. Shumake,* 38 Cal. App. 4th 35, 38 (1995); BAJI No. 7.89 (2008) (as modified)

**MATTEL'S OBJECTIONS:**

1. Defendants' proposed instruction is not based on any model instruction and misstates the law of tort damages. Specifically, Defendants' proposed instruction includes two significant limitations not supported by the law:

1   (1) Mattel is only entitled to compensation for harm resulting from "the loss of

2   services" of the named former employees and (2) Mattel must prove that it suffered

3   a financial loss resulting from the loss of services.  Neither of these limitations is

4   found in the model instruction for tort damages, CACI 3900, and the single case

5   Defendants cite for these limitations does not support them:  *Di Loreto v. Shumake*,

6   38 Cal.App.4th 35, 38 (1995), discusses the fact that recovery of damages for

7   emotional distress is available as part of damages for interference with prospective

8   economic advantage.

9          2.      Defendants' proposed instruction does not conform to the model

10  instructions it cites.  CACI 2201 addresses liability for a claim for intentional

11  interference with contractual relations, not damages, and in any event provides no

12  support for the limitations Defendants seek to impose.  Nor does this proposed

13  instruction conform with BAJI No. 7.89 which addresses the tort of interference

14  with prospective economic advantage and provides: "If you find that plaintiff is

15  entitled to a verdict against defendant based upon the claim of ... [interference with

16  prospective economic advantage] ... you must then award plaintiff damages in an

17  amount that will reasonably compensate plaintiff for all loss or harm, providing

18  that you find it was [or will be] suffered by plaintiff and caused by the defendant's

19  conduct."  It is misleading to suggest this instruction is a modified version of either

20  CACI 2201 or BAJI No. 7.89.

21         3.      Nor does the Court's Summary Judgment Order support this

22  instruction.  The Court  did not limit Mattel's damages for its claim for intentional

23  interference with contractual relations to "loss of services."  As the Court noted,

24  Mattel has alleged harm flowing from Defendant's interference with Mattel's

25  contractual relations beyond the mere "loss of services," including harm resulting

26  from the employee's breach of their contracts.  *See* Dkt. No.  9600 at 82-85.

27         4.      Defendants' proposed instruction also misstates and unduly limits

28  Mattel's claim.  Defendants' proposed instruction asks the jury to find whether

-186-

MGA and Larian intentionally interfered with contracts between Mattel and each of the following:  Carter Bryant, Ana Isabel Cabrera, Beatriz Morales, Maria Salazar, and Ryan Tumaliuan.  However, Mattel also asserts that MGA and Larian intentionally interfered with contracts between Mattel, on the one hand, and Ronald Brawer on the other hand.

5.     The first paragraph of Defendants' proposed instruction is misleading and confusing because it wrongly implies that, to prevail on its claim, Mattel must prove that MGA or Larian intentionally interfered with *all* the contracts at issue, as opposed to *any* of the contracts at issue.

6.     Mattel requests that the Court adopt Mattel's proposed jury instruction, which conforms nearly verbatim to CACI 3900 regarding tort damages.  *See* Mattel's Fourth Amended Proposed Jury Instructions at 149.

1  **DEFENDANTS' PROPOSED INSTRUCTION RE MITIGATION OF**
2  **DAMAGES**

3  ### MITIGATION OF DAMAGES

4       A claimant has a duty to make reasonable efforts and expenditures to avoid
5  or limit the harm caused by the wrongful act of another.  Mattel is not entitled to
6  recover damages for harm that MGA Entertainment, Inc. or Isaac Larian proves
7  Mattel could have avoided with reasonable efforts or expenditures.

8       You should consider the reasonableness of efforts Mattel could have taken in
9  light of the circumstances facing it at the time, including its ability to make the
10  efforts or expenditures without undue risk or hardship.

11       This instruction applies to all of the claims asserted by Mattel.

12       **Authority:** CACI 3931(modified)

13

14  **MATTEL'S OBJECTIONS:**

15       1.    Defendants' proposed instruction is based on CACI 3931 which
16  applies to claims for property damage.  Defendants cite to no authority to support
17  its assertion that "[t]his instruction applies to all claims asserted by Mattel."
18  Indeed, mitigation of damages should not apply to Mattel's copyright infringement
19  and trade secret misappropriation claims with respect to Bratz where, as here,
20  MGA retained sole possession of the Bratz line.  *See Janes v. Watson*,  2006 WL
21  2322820, *17 (W.D. Tex. 2006) (plaintiffs could not mitigate damages caused by
22  copyright infringement or trade secret misappropriation where defendants
23  continued to have exclusive use of infringing and misappropriated property).

24       2.    Defendants' instruction is improper and misleading in that it suggests
25  that mitigation of damages may reduce Mattel's claim for unjust enrichment.
26  Mitigation of damages does not apply to the remedy of unjust enrichment.  *See*
27  *Federal Trade Commission v. Medicor LLC*, 2001 WL 765628, at *2 (C.D. Cal.
28  June 26, 2001) ("All relief sought by Plaintiff is equitable and dependent upon the

05.07975/3941364.1

1  amount of gain received by the Defendants, not the amount of loss suffered by the

2  Plaintiff. Thus, mitigation of damages is not relevant"); *Cal. Microsoft Corp. v. U-*

3  *Top Printing Corp.*, 1996 WL 479066, at *1 (N.D. Cal. Aug. 13, 1996) (court

4  previously found that defendants' affirmative defense of failure to mitigate did not

5  apply to award of disgorgement of profits).

6         3.      Defendants' proposed instruction improperly alters that language of

7  CACI 3931, which provides "You should consider the reasonableness of [name of

8  plaintiff]'s efforts in light of the circumstances facing [him/her] at the time,

9  including [his/her] ability to make the efforts or expenditures without undue risk or

10 hardship" to refer to the reasonableness of efforts Mattel "could have taken" in

11 light of the circumstances facing it at the time.

12        4.      Defendants' proposed instruction also omits the following language

13 found in CACI 3931: "If [name of plaintiff] made reasonable efforts to avoid harm,

14 then your award should include reasonable amounts that [he/she] spent for this

15 purpose."

16        5.      In the event the Court is inclined to offer an instruction on mitigation

17 of damages, Mattel proposes that the Court adopt the following instruction, which

18 remedies the deficiencies described above:

19

20                          *MITIGATION OF DAMAGES*

21        *MGA claims that Mattel failed to mitigate damages allegedly caused by*

22 *MGA's wrongful conduct.  The doctrine of mitigation of damages holds that a*

23 *plaintiff who suffers damages as a result of a tort has a duty to take reasonable*

24 *steps to mitigate those damages and may not recover for damages avoidable*

25 *through ordinary care and reasonable exertion.  The duty to mitigate damages*

26 *does not require an injured party to do what is unreasonable or impracticable.*

27 *The reasonableness of Mattel's efforts must be judged in the light of the situation*

28 *confronting Mattel at the time the loss was threatened and not by the judgment of*

1  *hindsight. The fact that reasonable measures other than the one taken would have*
2  *avoided damage is not, in and of itself, proof of the fact that the one taken, though*
3  *unsuccessful, was unreasonable. The standard by which the reasonableness of*
4  *Mattel's efforts is to be measured is not as high as the standard required in other*
5  *areas of law. It is sufficient if Mattel acts reasonably and with due diligence, in*
6  *good faith. The burden of proving that losses could have been avoided by plaintiff*
7  *by reasonable effort and expense is always on the party who harmed the plaintiff.*
8  *Authority: CACI 358, comments; Valle de Oro Bank v. Gamboa, 26 Cal.*
9  *App. 4th 1686, 1691 (1994); Green v. Smith, 261 Cal. App. 2d 392, 396-97 (1968);*
10  *Amended Order on MGA's Motion for Summary Judgment; Mattel's Motion for*
11  *Partial Summary Judgment; Machado's Motion for Summary Judgment; Mattel's*
12  *Motion for Partial Summary Judgment on MGA's Counterclaims-in-Reply, dated*
13  *January 5, 2011, at 119 (Dkt. No. 9600) (allowing failure to mitigate affirmative*
14  *defense).*

1  **DEFENDANTS' PROPOSED INSTRUCTION RE TRADE SECRET**
2  **MISAPPROPRIATION—DAMAGES**

3  **TRADE SECRET MISAPPROPRIATION—DAMAGES**

4       If you find by a preponderance of the evidence that a defendant
5  misappropriated a claimant's trade secrets, you must then determine the amount of
6  damages that the claimant is entitled to receive.  You may consider two types of
7  damages:

8       **Actual Loss.**  If you find that the claimant would have realized profits from
9  employing the trade secrets that it lost due to the wrongful conduct of the
10  defendant, you may measure damages by the amount of such lost profits.

11       **Unjust Enrichment.**  Regardless of whether you find that the claimant itself
12  suffered losses, you may find the defendant benefited from using a trade secret
13  belonging to the claimant, and award the monetary value you attribute to the
14  benefit that would be unjust for the defendant to retain.  Unjust enrichment is
15  measured by the degree to which the defendant was unjustly enriched, not by loss
16  to the claimant.

17       In deciding which of these approaches, if any, to use, you must avoid
18  overlapping damages.  The law does not permit a party to recover twice for the
19  same damages.  For example, if you were to consider alleged lost sales of Barbie
20  dolls in calculating Mattel's lost profits, sales by MGA resulting in lost sales of
21  Barbie dolls must be excluded from any calculation of MGA's alleged unjust
22  enrichment.

23       Mattel is not entitled to recover on its claim for trade secret misappropriation
24  if that claim is based on the same conduct, or arises out of the same facts, as
25  Mattel's claim for copyright infringement.

26       **Authority:** Restatement of Restitution ; California Civil Code §3436.3 (a)
27  ("A complainant may recover damages for the actual loss caused by
28  misappropriation.  A complainant may also recover for the unjust enrichment

1  caused by misappropriation that is not taken into account in computing damages

2  for actual loss"); *Unilogic Inc. v. Burroughs Corp.,* 10 Cal. App. 4th 612, 628

3  (1992) (unjust enrichment measured as "the degree to which [defendant] was

4  enriched", not loss to plaintiff); *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134

5  (9th Cir. 2006) (using "as applied" analysis to find that right of publicity claim was

6  preempted by the Act in that case)

7

8  **MATTEL'S OBJECTIONS:**

9      1.   Defendants' proposed instruction regarding actual loss is misleading

10  and contrary to law in that it wrongfully limits recovery to profits the plaintiff

11  would have realized "from employing the trade secrets."  Mattel's recovery is not

12  limited to profits it would have realized from its own use of the its misappropriated

13  trade secrets.  Mattel is entitled to recover profits it is able to prove with reasonable

14  certainty it would have earned but for the misappropriation.  *See*  CACI 3903N

15  regarding lost profits; Cal. Civ Code. 3426.3 ("A complainant may recover

16  damages for the actual loss caused by misappropriation."); *EFCO Corp. v. Symons*

17  *Corp.*, 219 F.3d 734, 741- 742 (8th Cir. 2000) (revenue erosion coinciding with

18  defendant's introduction of product made with misappropriated information is

19  evidence of compensable damages);  *Dunsmore & Associates, Ltd. v. D'Alessio*,

20  No. 409906, 26 Conn. L. Rptr. 228, 2000 WL 124995, *10 (Conn.Super. Jan 6,

21  2000)*;  ("Actual loss in this context [a misappropriation claim] means the amount

22  of money that the plaintiff lost from the defendant's misappropriation; it is

23  measured by how much better off the plaintiff would have been but for the

24  defendant's misappropriation.").

25      2.   Defendants' proposed  instruction regarding unjust enrichment fails to

26  conform with CACI 4410, the model instruction regarding unjust enrichment for

27  trade secret misappropriation, and is contrary to law in that it requires the

28  defendant to have benefitted from "using a trade secret belonging to the claimant."

1  Use is not required to establish liability for trade secret misappropriation or to seek

2  an award of unjust enrichment.  A claim for unjust enrichment may be based on

3  wrongful acquisition of the trade secrets at issue.  *See Sonoco Products Co. v.*

4  *Johnson*, 23 P.3d 1287, 1288 (Colo. Ct. App. 2001) (approving of "cost of capital"

5  measure of damages, i.e., what it would have cost the defendant to finance the

6  development of the misappropriated information itself, and finding evidence of

7  actual use irrelevant); *Hilderman v. Enea Teksci, Inc.*,  2010 WL 546140, *3 (S.D.

8  Cal. 2010) ("One method of measuring the benefit to Counter-Defendants of the

9  allegedly misappropriated [trade secrets] would be the amount it would have cost

10  Counter-Defendants to gather this information itself.").

11      3.     Defendants' proposed  preemption language in the last sentence is

12  improper; this is a legal issue that the Court has already ruled on in Mattel's favor.

13  *See* Docket No. 9600 at 72-73.  Mattel hereby incorporates by reference its

14  arguments regarding preemption in Mattel's Opposition to MGA Parties' Motion

15  for Summary Judgment, Docket No. 9182, at 18-30; *see also Firoozye v. Earthlink*

16  *Network*, 153 F. Supp. 2d 1115, 1130 (N.D. Cal. 2001) (Copyright Act does not

17  preempt UTSA claim for disclosure and exploitation of trade secrets because that

18  claim "require[s] a status of secrecy, not required for copyright").  If the Court is

19  inclined to reconsider its prior rulings on this issue, Mattel respectfully requests an

20  opportunity to submit full briefing on the issue.

21      4.     Defendants' proposed language that  "you must avoid overlapping

22  damages" and the "law does not permit a party to recover twice for the same

23  damages" does not appear in the model instruction and is confusing..  The model

24  instruction regarding unjust enrichment, CACI 4410, states that "[i]n calculating

25  the amount of any unjust enrichment, do not take into account any amount that you

26  included in determining any amount of damages for [name of plaintiff]'s actual

27  loss."  Mattel has included this language in its proposed instructions.  Further,

28  defendants' example regarding lost sales of Barbie dolls improperly emphasizes

1  defendants' contentions and theories rather than instructing the jury on the law and

2  is unnecessary, argumentative and prejudicial.

3          5.      Mattel requests that the Court adopt Mattel's proposed jury

4  instruction, which conforms nearly verbatim to CACI 4409 regarding Remedies for

5  Misappropriation of Trade Secrets.  *See* Mattel's Fourth Amended Proposed Jury

6  Instructions, at 157

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DEFENDANTS' PROPOSED INSTRUCTION RE TRADE SECRET MISAPPROPRIATION—LOST PROFITS**

### **TRADE SECRET MISAPPROPRIATION—LOST PROFITS**

To recover damages for lost profits, the claimant must prove it is reasonably certain it would have earned profits but for the defendant's conduct.

To decide the amount of damages for lost profits, you must determine the gross amount the claimant would have received but for the defendant's conduct and then subtract from that amount the expenses the claimant would have had if the defendant's conduct had not occurred.

The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.

**Authority:** CACI  3903N (2009); *see also* CACI 4409

## **MATTEL'S OBJECTIONS:**

1.      Defendants' proposed instruction is confusing in that it purports to address both parties' trade secret misappropriation claims in a single instruction.

2.      Mattel requests that the Court adopt Mattel's proposed jury instruction based on CACI 3903N and CACI 4409 .  *See* Mattel's Fourth Amended Proposed Jury Instructions, at 159.

1   **DEFENDANTS' PROPOSED INSTRUCTION RE TRADE SECRET**

2   **MISAPPROPRIATION—UNJUST ENRICHMENT**

3       **TRADE SECRET MISAPPROPRIATION—UNJUST ENRICHMENT**

4         An award of damages for unjust enrichment based upon the defendant's

5   profits is limited to the profits proved by the claimant to be attributable to the

6   misappropriation of trade secrets.  You must take into consideration the extent to

7   which the defendant's profits are the result of factors other than the alleged

8   misappropriation of trade secrets.  Amounts attributable to the contributions by the

9   defendant to the accused products, or attributable to the defendant's efforts to

10  market or sell the accused products, are not unjust enrichment.

11        The claimant must prove with reasonable certainty what portion, if any, of

12  the commercial success of the defendant's products is attributable to the alleged

13  trade secrets and not the result of the defendant's efforts.  You must not include in

14  an award for unjust enrichment any profits attributable to factors other than the

15  alleged trade secrets, including any profits attributable to the defendant's hard

16  work, skill, investment, or ingenuity.

17      **Authority:** Restatement of Restitution; Restatement (Third) of Unfair

18  Competition § 45, comment f; *Unilogic Inc. v. Burroughs Corp.,* 10 Cal. App. 4th

19  612, 628 (1992); *Vermont MicrosySterns v. Autodesk, Inc.,* 138 F.3d 449, 450 (2d

20  Cir. Vt. 1998) (applying California law) (acknowledging that when the trade secret

21  accounts for only a portion of the profits earned on the defendant's sales, such as

22  when the trade secret relates to a single component of a product marketable

23  without the secret, " an award to the plaintiff of defendant's entire profit may be

24  unjust"); *Shum v. Intel Corp.,* 630 F. Supp. 2d 1063, 1081 (N.D. Cal. 2009)

25  (striking damages award due to failure to produce evidence in support of

26  appropriate apportionment); *Cal. Med. Ass'n v. Aetna U.S. Healthcare of Cal,* 94

27  Cal. App. 4th 151, 171 n.23 (2001)) (holding [o]nly the portion of the benefit

28  attributable to the wrong is allowed as restitution, in line with the underlying

1   equitable principle that a defendant "is required to make restitution only if the
2   circumstances of its receipt or retention are such that, as between the two persons,
3   it is unjust"); *Sofitel, Inc. v. Dragon Med and Scientific Comms., Inc.,* 891 F. Supp.
4   935, 942-43 (S.D.N.Y. 1985); *KW Plastics v. U.S. Can Co.,* 131 F. Supp. 2d 1289,
5   1295 (M.D. Ala. 2001); *Schiller & Schmidt, Inc. v. Nordisco Corp.,* 969 F. 2d 410,
6   415-16 (7th Cir. 1992) (allowing unjust enrichment only to the extent it is "caused
7   by the misappropriation of a trade secret"); *Electro-Miniatures Corp. v. Wendon*
8   *Co., Inc.*, 771 F.2d 23, 27 (2nd Cir. 1985); *HealthCare Advocates v. Affordable*
9   *Healthcare Options*, 2010 WL 4665956, *2 (E.D. Pa. Nov. 18, 2010);
10  *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1358-62 (Fed. Cir.
11  2005)

12

13  **MATTEL'S OBJECTIONS:**

14          1.      Defendants' proposed instruction does not conform to CACI 4410, the
15  model instruction regarding  unjust enrichment as a remedy for trade secret
16  misappropriation, and misstates the law.  Specifically, defendants' proposed
17  instruction includes extraneous language regarding apportionment of defendants'
18  profits that is not found in the model instruction, and incorrectly states that plaintiff
19  bears the burden to apportion profits.  As MGA itself has argued, the burden is on
20  the *defendant* to apportion profits.  *See* MGA's Opposition to Mattel's *Daubert*
21  Motion No. 2 at 11-12 ("the burden of  apportioning profits falls upon the party
22  accused of trade secret misappropriation."); *see also Cartel Asset Mgmt. v. Ocwen*
23  *Fin. Corp.*, 249 F. App'x 63, 73, 76-79, 87 (10th Cir. 2007) (holding that in trade
24  secret misappropriation actions, the "plaintiff has the burden of establishing the
25  defendant's sales; the defendant has the burden of establishing any portion of the
26  sales not attributable to the trade secret and any expenses to be deducted in
27  determining net profits.") (quoting Comment (f) to the Restatement (Third) of
28  Unfair Competition § 45 (1995)); *Petters v. Williamson & Associates, Inc.*,  151

1    Wash. App. 154, 164-165 (2009) (noting that the Restatement approach "places on

2    the party in possession of the relevant information-the defendant-the burden of

3    demonstrating which portion, if any, of the revenue obtained through the transfer

4    of a trade secret was not, in fact, attributable to the transfer," and has been "widely

5    adopted in jurisdictions applying the model act.").

6            2.       The authority Defendants cite does not support Defendants'

7    contention that plaintiff bears the burden to apportion defendants' profits.  *Shum v.*

8    *Intel Corp.,* 630 F. Supp. 2d 1063(N.D. Cal. 2009) and *Cal. Med. Ass'n v. Aetna*

9    *U.S. Healthcare of Cal,* 94 Cal. App. 4th 151 (2001) are not trade secret cases and

10   therefore irrelevant to the apportionment of a defendant's profits under CUTSA.

11   *Sofitel, Inc. v. Dragon Med and Scientific Comms., Inc.,* 891 F. Supp. 935, 942-43

12   (S.D.N.Y. 1985) does not stand for the proposition that the burden is on a plaintiff

13   to apportion unjust enrichment, but rather only that "defendants are entitled to set

14   off the costs associated with the production of the product that incorporates the

15   misappropriated trade secret." *KW Plastics v. U.S. Can Co*., 131 F. Supp. 2d 1289,

16   1295 (M.D. Ala. 2001) likewise does not stand for the proposition that the burden

17   is on a plaintiff to apportion unjust enrichment,  but rather the court excluded an

18   expert's opinion where it "assume[d] that each and every penny that KW gained

19   constitutes unjust enrichment" without any connection to the alleged trade secret.

20   *Schiller & Schmidt, Inc. v. Nordisco Corp.,* 969 F. 2d 410, 415-16 (7th Cir. 1992)

21   stands for the proposition that a plaintiff must take into account non-actionable

22   conduct that may have contributed to its *losses*, not that the burden is on the

23   plaintiff to apportion the defendant's profits; the plaintiff there did not seek the

24   defendant's profits ("the expert should have tried to separate the *damages* that

25   resulted from the lawful entry of a powerful competitor-Nordisco-from the

26   damages that resulted from particular forms of misconduct allegedly committed by

27   that competitor, of which the theft of the mailing list, however morally

28   reprehensible, was the slightest.") (emphasis added).  *Electro-Miniatures Corp. v.*

1  *Wendon Co., Inc.*,  771 F.2d 23, 27 (2nd Cir. 1985) does not suggest that the burden

2  is on the plaintiff to apportion defendant's profits, but only that while the plaintiff

3  had "the burden of proving its damages with reasonable certainty," "it was not

4  obligated to offer a mathematically precise measurement of those damages."

5  *HealthCare Advocates v. Affordable Healthcare Options*, 2010 WL 4665956, *2

6  (E.D. Pa. Nov. 18, 2010) does not suggest that the burden is on the plaintiff to

7  apportion unjust enrichment but only that damages should not be merely

8  speculative. *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1358-62

9  (Fed. Cir. 2005) stands for the proposition that a plaintiff must take into account

10  non-actionable conduct that may have contributed to its *losses*, not that the burden

11  is on the plaintiff to apportion the defendant's profits; *MicroStrategy* did not

12  discuss claims for unjust enrichment.

13        3.       Unlike the model instruction and Mattel's proposed instruction,

14  defendants' proposed instruction fails to provide any guidance to the jury regarding

15  how to calculate defendants' profits.  In addition, defendants' reference to "profits

16  attributable to the defendant's hard work, skill, investment, or ingenuity" is

17  argumentative and prejudicial.

18        4.       Mattel requests that the Court adopt Mattel's proposed jury

19  instruction, which conforms to CACI 4410 regarding unjust enrichment for trade

20  secret misappropriation.  *See* Mattel's Fourth Amended Proposed Jury Instructions,

21  at 161.

05.07975/3941364.1

**DEFENDANTS' PROPOSED INSTRUCTION RE TRADE SECRET MISAPPROPRIATION—NO DAMAGES AFTER PUBLIC DISCLOSURE OF TRADE SECRET**

**TRADE SECRET MISAPPROPRIATION—NO DAMAGES AFTER PUBLIC DISCLOSURE OF TRADE SECRET**

If you find that the defendant misappropriated a trade secret of the claimant that was publicly disclosed by someone other than the defendant, the claimant may recover damages for misappropriation only during the period in which the trade secret was still secret. This is a limitation on the amount of damages that the claimant can be awarded under any theory of damages. After a public disclosure of the claimant's trade secret, the defendant would not have enjoyed any commercial advantage it gained by misappropriation prior to public disclosure.

In addition, if you find that the defendant misappropriated the claimant's trade secret, you must limit any damages to the amount of time it would have taken the defendant to independently develop its products without the use of the claimant's trade secret. For example, if it would have taken the defendant an additional three months to develop a product without the use of the alleged trade secrets, the claimant's damages must be limited to that three month period.

**Authority:** *Group One, Ltd v. Hallmark Cards, Inc.,* 254 F.3d 10411051 (Fed. Cir. 2001); *Life Point Sys., Inc. v. Cargill, Inc.,* 1997 U.S. Dist. LEXIS 22845, at *48 (N.D. Cal. 1997)


**MATTEL'S OBJECTIONS:**

1.    Defendants' proposed instruction is misleading, prejudicial and contrary to the law in that it incorrectly suggests that wrongful disclosure by any party that is not a defendant to the lawsuit relieves defendants of liability or damages for trade secret misappropriation. Far from cutting off liability for trade secret misappropriation, wrongful disclosure by a third party is a recognized basis

1   for establishing a defendant's liability of misappropriation.  Thus, for example,

2   Civil Code Section 3426.1(b)(2) specifically defines "misappropriation" to include

3   "[d]isclosure or use of a trade secret of another without express or implied consent

4   by a person who . . . (B) At the time of disclosure or use, knew or had reason to

5   know that his or her knowledge of the trade secret was  . . . (i) Derived from or

6   through a person who had utilized improper means to acquire it . . . or (iii) Derived

7   from or through a person who owed a duty to maintain its secrecy or limit its use."

8   Defendants' own proposed instructions for Misappropriation by Disclosure (CACI

9   4406) and Misappropriation by Use (CACI 4407) recognize as much.  Here, Mattel

10  alleges that MGA derived knowledge of the trade secrets at issue through the

11  wrongful disclosure of third party, former Mattel employees including Carter

12  Bryant, Ron Brawer, Janine Brisbois, Daniel Cooney, Gustavo Machado, Pablo

13  Vargas and Mariana Trueba.  MGA's proposed instruction improperly implies to

14  the jury that wrongful disclosures by these former employees, which provides  a

15  basis for the misappropriation claim against MGA, in fact defeats Mattel's

16  misappropriation claim against MGA.

17          2.      Moreover, this instruction is confusing in that it may lead the jury to

18  erroneously believe that MGA's or Bryant's own wrongful disclosure of Bratz is a

19  limitation on damages.  It is not.  *See Synext Ophthalmics, v. Tsuetaki*, 701 F.2d

20  677, 683 (7th Cir. 1983) ("[A] wrongdoer who has made an unlawful disclosure of

21  another's trade secrets cannot assert that publication to escape the protection of

22  trade secret law... To hold otherwise in the instant case would be to permit

23  appellants to profit from their own wrong."); *Underwater Storage, Inc. v. U.S.*

24  *Rubber Co.*, 371 F.2d 950, 955 (C.A.D.C. 1966) ("We do not believe that a

25  misappropriator or his privies can 'baptize' their wrongful actions by general

26  publication of the secret… Once the secret is out, the rest of the world may well

27  have a right to copy it at will; but this should not protect the misappropriator or his

28  privies").

3.     Defendants' proposed instruction also erroneously suggests and may lead the jury to believe that any disclosure by anyone who is not a defendant to the lawsuit destroys trade secret status.  *See DVD Copy Control Ass'n, Inc. v. Bunne*r, 116 Cal.App.4th 241, 251, (2004) (even public disclosure through the Internet "does not necessarily destroy the secret if the publication is sufficiently obscure or transient or otherwise limited so that it does not become generally known to the relevant people, i.e., potential competitors or other persons to whom the information would have some economic value").  *See also* Mattel's proposed instruction Secrecy Requirement CACI 4403 as modified and supporting authorities (trade secret "may be disclosed to non-employees if they are obligated and expected to keep the information secret.  However, it must not have been generally known to the public or to people who could obtain value from knowing it.").

4.     The cases Defendants cite do not support Defendants' proposed instruction.  In both cases the alleged trade secret was disclosed by the plaintiff in a patent application.

5.     Additionally, Defendants have provided no authority for their instruction that no matter how long a defendant has exploited the misappropriated trade secret, the defendant can limit the period of damages to the time it purportedly "would have taken the defendant to independently develop its products."  Cal. Civ. Code §3246.3 provides for damages "caused by misappropriation."  *See also Molinaro v. Burnbaum*, 201 U.S.P.Q. 150, 163 (D. Mass. 1978) (awarding damages until defendant discontinued manufacture of products using trade secrets where defendant's misappropriation had preempted entire market and prevented plaintiff from licensing others as well as entering market itself); *Kilbarr Corp. v. Business Systems, Inc.*, 679 F. Supp. 422, 427, 428 (D.N.J. 1988), aff'd 869 F.2d 589 (3d Cir. 1989) (damages not limited to head start period where defendant failure to return technical documents had prevented

05.07975/3941364.1

1   plaintiff from re-entering market, holding that "Regardless of when defendants

2   might have been able to develop the secret process for manufacturing an

3   electromechanical typewriter by legitimate business means, defendants did not

4   learn the proprietary information from legitimate business means such as reverse

5   engineering or independent research, but learned them from its knowing

6   misappropriation of plaintiff's trade secrets. Accordingly, the Court determines as a

7   matter of law that head start is not available to these defendants on the facts in this

8   case.").

9        6.      Defendants' proposed language is also misleading and prejudicial in

10  that it implies that it is inevitable that defendants' would have independently

11  developed the trade secrets at issue when in fact there is no factual basis for a

12  claim that, but for the misappropriation, Defendants would have independently

13  created the specific trade secrets at issue including, for example, Bratz.  Further,

14  Defendants' proposed language is overbroad, vague and confusing in that it

15  suggests the period of damages is limited to the time it takes MGA to develop "its

16  products" in general rather than the specific trade secrets at issue.  Defendants'

17  proposed language is further prejudicial in that it suggests that "an additional three

18  months" is a reasonable estimate of the amount of time it would taken MGA to

19  independently develop any of the trade secrets at issue.

20

21

22

23

24

25

26

27

28

**DEFENDANTS' PROPOSED INSTRUCTION RE COMPARATIVE FAULT OF MATTEL**

**405**

**COMPARATIVE FAULT OF MATTEL**

MGA claims that Mattel's own negligence in failing to confront departing employees it alleges misappropriated trade secrets and in failing to inform MGA of their purported misappropriation contributed to Mattel's harm.  To succeed on this claim, MGA must prove both of the following:

       1.     That Mattel was negligent; and

       2.     That Mattel's negligence was a substantial factor in causing any harm it suffered.

If MGA proves the above, any recovery by Mattel will be reduced by your determination of the percentage of Mattel's responsibility.  I will calculate the actual reduction.

**Authority:** CACI No. 405 (modified); 6 B. WITKIN, *Summary of California Law*, Torts §1624 (10th ed. 2005)

**MATTEL'S OBJECTIONS:**

       1.     Defendants' comparative fault instruction is based on CACI instructions for negligence (CACI 400 et seq. (Negligence) (2010)).  Comparative fault is not a defense to Mattel's claim for trade secret misappropriation.  Trade secret misappropriation is an intentional tort.  *Cypress Semiconductor Corp. v. Sup. Ct.*, 163 Cal.App.4th 575, 585 (2008) ("Misappropriation of trade secrets is an intentional tort.  A person is liable for misappropriation of trade secret information only if the person knows or has reason to know that he or she is not in rightful possession of the information.") (citations omitted).  Comparative fault is not a defense to an intentional tort. *See Heiner v. Kmart Corp.*, 84 Cal.App.4th 335, 250 (2000) (noting the "unbroken line of authority barring apportionment [based on

-204-

MATTEL'S OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

comparative fault] where ... the defendant has committed an intentional tort and the injured plaintiff was merely negligent . . . Contributory negligence never has been considered a good defense to an intentional tort  . . . and it would likewise appear contrary to sound policy to reduce a plaintiff's damages under comparative fault for his 'negligence' in encountering the defendant's deliberately inflicted harm" ) (quoting Prosser & Keaton on Torts (5th ed.1984) § 67, pp. 477-478 ); *People v. Millard*,  175 Cal.App.4th 7, 38 (2009) (same); *Weidenfeller v. Star & Garter*, 1 Cal.App.4th 1, 6-7 (1991) ("an intentional actor cannot rely on someone else's negligence to shift responsibility for his or her own conduct.") (citing *Allen v. Sundean*, 137 Cal. App. 3d 216 (1982) and *Godfrey v. Steinpre,s* 128 Cal. App. 3d (1982) );  *J & J Sports Productions, Inc. v. Enedina Soto*,  2010 WL 3911467, *2 (S.D. Cal. 2010) ("[plaintiff] has not alleged a negligence violation, thus the comparative fault affirmative defense is inapplicable.").

       2.      Defendants instruction is argumentative and prejudicial in that assumes or implies the existence of facts that are, at a minimum, matters of dispute.  For example, MGA's reference to Mattel's failure to inform MGA of the departing employees' "purported misappropriation" improperly suggests to the jury that MGA otherwise had no knowledge of the alleged misappropriation when this is an issue to be decide by the trier of fact.

       3.      Defendants' proposed instruction is erroneous because even if it were applicable to reduce Mattel's damages, which it is not, it would not be applicable to reduce Mattel's recovery of MGA's unjust enrichment.  *U.S. v. Cushman & Wakefield, Inc.*,  275 F. Supp. 2d 763, 773 (N.D. Tex. 2002) ("negligence and comparative fault are defenses only to actions grounded in negligence and are inapplicable as defenses to intentional torts such as fraud or unjust enrichment").

## DEFENDANTS' PROPOSED INSTRUCTION RE BASIC STANDARD OF CARE

### 401

### BASIC STANDARD OF CARE

Negligence is the failure to use reasonable care to prevent harm to oneself or to others.

A person or company can be negligent by acting or by failing to act.  A person or company is negligent if he, she, or it does something that a reasonably careful person or company would not do in the same situation or fails to do something that a reasonably careful person or company would do in the same situation.

You must decide how a reasonably careful person or company would have acted in Mattel's situation if he, she, or it knew or suspected that departing employees were taking trade secret information.

**Authority:** CACI No. 401 (modified)

## MATTEL'S OBJECTIONS:

1.     Defendants' instruction regarding what constitutes negligence is improper for the same reasons that defendants' comparative fault instruction is improper—comparative fault is not a defense to a claim for trade secret misappropriation (*see* objections to Defendants' comparative fault instruction, *supra*).

1  **DEFENDANTS' PROPOSED INSTRUCTION RE APPORTIONMENT OF**
2  **RESPONSIBILITY**

3  **406**

4  **APPORTIONMENT OF RESPONSIBILITY**

5  MGA and Mr. Larian claim that if Mattel was harmed by the

6  misappropriation of trade secrets, Carter Bryant also contributed the harm.  To

7  succeed on this claim, MGA or Larian must prove both of the following:

8  1.      That Carter Bryant was at fault; and

9  2.      That the fault of Carter Bryant was a substantial factor in causing

10  Mattel's harm.

11  If you find that the fault of Carter Bryant was a substantial factor in causing

12  harm to Mattel resulting from the misappropriation of trade secrets, you must

13  decide how much responsibility (a) Mr. Bryant and (b) any defendant found to be

14  liable to Mattel for the misappropriation of trade secrets has by assigning

15  percentages of responsibility to each person or company listed on the verdict form.

16  The percentages must total 100 percent.  You will make a separate finding of

17  Mattel's total damages, if any.  In determining an amount of damages, you should

18  not consider any person's or company's assigned percentage of responsibility.

19  **Authority:** CACI No. 406 (modified)

20

21  **MATTEL'S OBJECTIONS:**

22  1.      Defendants' instruction on apportionment of responsibility is based on

23  CACI instructions for negligence  (CACI 400 et seq. (Negligence) (2010)).

24  Apportionment of responsibility is a form of comparative fault.  CACI 406, on

25  which this instruction is based,  "is designed to assist the jury in completing CACI

26  No. VF-402, Negligence—Fault of Plaintiff and Others at Issue, which must be

27  given in a multiple-tortfeasor case to determine comparative fault."  *See* CACI

28  406, Directions for Use.  Comparative fault has no application to intentional torts

such as claims for trade secret misappropriation..  Cal. Civ. Code § 875(d) ("There shall be no right of contribution in favor of any tortfeasor who has intentionally injured the injured person.")*; Heiner v. Kmart Corp*., 84 Cal.App.4th 335, 250 (2000)  (noting that there is "an unbroken line of authority barring apportionment [based on comparative fault] where ... the defendant has committed an intentional tort " ) (quoting Prosser & Keaton on Torts (5th ed.1984) § 67, pp. 477-478 ); *People v. Millard*,  175 Cal.App.4th 7, 38 (2009) (same).

2. Application of this instruction is fundamentally inconsistent with principles of joint and several liability, which  apply to claims for trade secret misappropriation.  *See Mintel Learning Technology, Inc. v. Beijing Kaidi Educ.*, 2007 WL 2288329, 13 (N.D. Cal. 2007) (liability of tortfeasors in trade secrets case is both joint and several*); Salton, Inc. v. Phillips Domestic Applicanes and Personal Care B.V*., 391 F.3d 871, 877 (7th Cir. 2004)("[T]he principle of joint and several liability . . . governs . . . the common law tort of misappropriation of trade secrets."); *Oculus Innovative Sciences, Inc. v. Nofil Corp.*,  2007 WL 205068, *2 (N.D. Cal. 2007).

1  **DEFENDANTS' PROPOSED INSTRUCTION RE TRADE SECRET**
2  **MISAPPROPRIATION—PUNITIVE DAMAGES**
3  **TRADE SECRET MISAPPROPRIATION—PUNITIVE DAMAGES**
4   If you decide that a defendant's misappropriation of trade secrets caused the
5  claimant harm, you must decide whether the defendant's conduct justifies an award
6  of punitive damages.  The purposes of punitive damages are to punish a wrongdoer
7  for the conduct that harmed the claimant and to discourage similar conduct in the
8  future.
9   In order to recover punitive damages, the claimant must prove by clear and
10 convincing evidence that the defendant acted willfully and maliciously. You must
11 determine whether the defendant acted willfully and maliciously, but you will not
12 be asked to determine the amount of any punitive damages. I will calculate the
13 amount later.
14  "Willfully" means that the defendant acted with a purpose or willingness to
15 commit the act or engage in the conduct in question, and the conduct was not
16 reasonable under the circumstances at the time and was not undertaken in good
17 faith.
18  "Maliciously" means that the defendant acted with an intent to cause injury,
19 or that the defendant's conduct was despicable and was done with a willful and
20 knowing disregard for the rights of others. "Despicable conduct" is conduct so vile,
21 base, or wretched that it would be looked down on and despised by ordinary decent
22 people.  The defendant acted with knowing disregard if it was aware of the
23 probable consequences of its conduct and deliberately failed to avoid those
24 consequences.
25  **Authority:** CACI 4411; Cal. Civ. Code §3426.3(c)
26
27
28

605.07975/3941364.1

1  **MATTEL'S OBJECTIONS:**

2       1.     Defendants' proposed instruction is improper because the parties have

3  stipulated to not discuss the prospect of double damages under CUTSA before the

4  jury.  *See* January 17, 2011 Order on Motions in Limine (Dkt. No. 9669) at 16

5  (granting as unopposed Mattel's Motion *in Limine* Number 6 to Bifurcate the

6  Punitive Phase of Trial); MGA's Statement of Non –Opposition to Mattel's Motion

7  *in Limine* No. 6 (Dkt. No. 9433)  (stating  non-opposition to Mattel's motion  to

8  bifurcate any calculation of the amount of punitive damages from the liability and

9  compensatory damages phase of this trial).

10       2.     Mattel requests that the Court adopt Mattel's proposed jury

11  instruction, which properly instructs the jury on the issue of willful and malicious

12  while complying with the stipulation and Order.  *See* Mattel's Fourth Amended

13  Proposed Jury Instructions, at 163.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' PROPOSED INSTRUCTION RE DAMAGES—AIDING AND ABETTING BREACH OF DUTY OF LOYALTY**

### DAMAGES—AIDING AND ABETTING BREACH OF DUTY OF LOYALTY

The measure of damages for breach of the duty of loyalty is the amount of money necessary to place Mattel in the same economic position it would have been in if the duty had not been breached. In other words, the purpose of awarding damages to Mattel for breach of the duty of loyalty is to make it whole for any injuries it suffered.

In assessing damages for the breach of the duty of loyalty, you may not consider or award damages for the value of the rights to the Bratz doll or any Bratz trade secret, you may only award damages for the loss in value of the services of the employee for which Mattel paid that it did not receive as a result of any breach of the duty of loyalty.

Mattel must prove that it suffered economic injury as a result of aiding and abetting a breach of the duty of loyalty.  If Mattel fails to meet its burden of proving that it suffered economic injury, you may not award any damages to Mattel.  If, however, you find that Mattel suffered economic injury as a result of aiding and abetting a breach of the duty of loyalty by MGA Entertainment, Inc. or Mr. Larian, you may consider whether Mattel has proven the amount of such damages.

**Authority:** CACI No. 4102 (2008) (as modified); *Bancroft Whitney Co. v. Glen*, 64 Cal. 2d 327, 345-346 & n.10 (1966); accord *Eckard Brandes, Inc. v. Riley*, 338 F. 3d 1082, 1086 (9th Cir. 2002); *Western Med. Consultants, Inc. v. Johnson,* 80 F.3d 1331, 1336-38 (9th Cir. 1996); *Franklin Music Co. v. Am. Broad. Cos.,* 616 F. 2d 528, 532-33, 537 (3d Cir. 1979); *Merger Mgmt. Consulting, Inc. v. Wilde,* 920 F. Supp. 219 (D. D.C. 1996); *Abraham Zion Corp. v. Lebow,* 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), aff'd, 761 F. 2d 93 (2d Cir. 1985); *Seward v.*

1  *Union Pump Co.*, 428 F. Supp. 161 (S.D. Texas 1977); GAB Bus. Servs., Inc. v.

2  *Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 424-25 (2000),

3  overruled on other grounds by, *Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004);

4  *Computer Sciences Corp. v. Ferguson*, 74 Cal. Rptr. 86, 92-93 (1968); Restatement

5  (Third) of Agency Sect. 8.04 cmt. c; *MJT Securities, LLC v. Toronto-Dominion*

6  *Bank*, 2007 WL 1725421, at **7-8 (N.D. Cal. June 14, 2007) (elements); *Neilson*

7  *v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1119-20 (C.D. Cal. 2003)

8  (intent); *Resolution Trust Corp. v. Rowe*, 1993 WL 183512, at *6 (N.D. Cal. Feb.

9  8, 1993) (inverse relationship between demonstration of knowledge and substantial

10 assistance); *Mendelsohn v. Capital Underwriters, Inc.*, 490 F. Supp. 1069, 1084

11 (N.D. Cal. 1979) (causation); *Sarkes Tarzian, Inc. v. Audio Devices, Inc.*, 166 F.

12 Supp. 250 (S.D. Cal. 1958) (competitor employer did not conspire to breach duty

13 to former employer where competitor paid at will employee an advance and

14 employee did not disclose intention to work for competitor), aff'd, 283 F.2d 695

15 (9th Cir. 1960); *Gerard v. Ross*, 204 Cal. App. 3d 968, 983 (1988) (intent); see also

16 *Richard B. LeVine, Inc. v. Higashi*, 131 Cal. App. 4th 566, 574 (2005); *Casey v.*

17 *U.S. Bank Nt'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005); *Fiol v. Doellstedt*, 50

18 Cal. App. 4th 1318, 1325-26 (1996); *Saunders v. Sup. Ct.* 27 Cal. App. 4th 832,

19 846 (1994); Restatement (Second) of Torts § 876; Cal. Civ. Code §§1709; 3333; 6

20 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, §1717; BAJI 12.57 (as

21 modified)

22

23 **MATTEL'S OBJECTIONS:**

24      1.     Defendants' proposed instruction is contrary to law in that it

25 improperly limits damages for aiding and abetting breach of duty of loyalty to the

26 "value of the services of the employee for which Mattel paid that it did not receive

27 as a result of any breach of the duty of loyalty."  Mattel's instruction is properly

28

1   modeled on the standard  instruction for tort damages, CACI 3901, which does not

2   include any such limitation on the type of harm Mattel can be compensated for.

3          2.      The authority Defendants cite does not support the limitations in

4   Defendants' proposed instruction.  CACI 4102 sets forth the elements of a claim

5   for Breach of Duty of Undivided Loyalty, not the tort claim for aiding and abetting

6   breach of duty of loyalty, and in any event does not contain any limitation on

7   damages to the "value of the services of the employee for which Mattel paid that it

8   did not receive as a result of any breach of the duty of loyalty."  Likewise, none of

9   the cases defendants cite limits damages for aiding and abetting breach of the duty

10  of loyalty to "the loss in value of the services of the employee."  *See Eckard*

11  *Brandes, Inc. v. Riley*, 338 F.3d 1082 (9th Cir. 2003) ("The Restatement supports

12  the district court's award of disgorgement as a remedy for breach of the duty of

13  loyalty.").

14         3.      Defendants' proposed instruction is erroneous and confusing in that,

15  in several places, it refers to damages for breach of duty of loyalty (a contract

16  claim) and not damages for aiding and abetting breach of duty of loyalty, the tort

17  claim that is actually at issue here.  Further, defendants' instruction in the first

18  paragraph that the "measure of damages for breach of duty of loyalty is the amount

19  of money necessary to place Mattel in the same economic position it would have

20  been in if the duty had not been breached" is contrary to law, which recognizes

21  unjust enrichment as a remedy for breach of duty of loyalty and aiding and abetting

22  breach of duty of loyalty. *See Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1086

23  (9th Cir. 2003) ("Although there are few reported cases addressing the appropriate

24  remedy, those we have found have also required employees to turn over profits

25  received as a result of breaching their duty of loyalty."); Restatement (2d) of

26  Agency, § 403 ("If an agent receives anything as a result of his violation of a duty

27  of loyalty to the principal, he is subject to a liability to deliver it, its value, or its

28  proceeds, to the principal."); Restatement of Restitution, § 201 (2008) ("Where a

fiduciary in violation of his duty to the beneficiary communicates confidential information to a third person, the third person, if he had notice of the violation of duty, holds upon a constructive trust for the beneficiary any profit which he makes through the use of such information."); *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 543 (2007) ("Disgorgement of profits is particularly applicable in cases dealing with breach of a fiduciary duty"; "Active participants in the breach of fiduciary duty by another are accountable for all advantages they gained thereby and are liable to the beneficiary of the duty"); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1127 (C.D. Cal. 2003) (a party who aids and abets a breach of fiduciary duty will be jointly liable) (citing *Heckmann v. Ahmanson*, 168 Cal. App. 3d 119 (1985)); *Xum Speegle, Inc. v. Fields*, 216 Cal. App. 2d 546 (1963) (upholding accounting of all insurance commissions wrongfully diverted to defendant in action for breach of fiduciary duty); *Adams v. Herman*, 106 Cal. App. 2d 92, 99 (1951) ("It is an integral part of that rule that, if the agent makes a secret profit from the agency, the principal may recover such profit.").

4.     Defendants' proposed language that the jury cannot award damages for aiding and abetting breach of the duty of loyalty based on "the value of the rights to the Bratz doll or any Bratz trade secret" is erroneous because Bryant's work in developing Bratz while employed by Mattel—aided and abetted by MGA—constitutes wrongful competition in violation of an employee's duty of undivided loyalty.  An employee cannot take actions inimical to the best interests of his or her employer.  *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 295 (1995); *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 413 (2007).  "The duty of loyalty embraces several subsidiary obligations, including the duty 'to refrain from competing with the principal and from taking action on behalf of or otherwise assisting the principal's competitors,' (Rest. 3d, Agency, § 8.04), the duty 'not to acquire a material benefit from a third party in connection with . . . actions taken . . . through the agent's use of the agent's position' (id., § 8.02)."  *Huong Que, Inc.*,

150 Cal. App. 4th at 416.  Examples of breach would include "engag[ing] in a competing business even outside of his working hours."  *Charles T. Powner Co.*, 91 Cal. App. at 102; see also Puritas Laundry Co., 15 Cal. App. at 660 ("[W]hen a servant becomes engaged in a business which necessarily renders him a competitor, a rival of his master, no matter how much or how little time he devotes to it, he has an interest against his duty.").  Mattel is entitled recover for all injuries, as well as disgorgement of any profits , attributable to MGA's aiding and abetting of Bryant's development of Bratz as a competing product in breach of his duty of loyalty.

5.     Mattel requests that the Court adopt Mattel's proposed jury instruction, which conforms to CACI 3901 regarding damages for tort claims.  *See* Mattel's Fourth Amended Proposed Jury Instructions, at 151.

1 **DEFENDANTS' PROPOSED INSTRUCTION RE PUNITIVE DAMAGES—**
2 **INDIVIDUAL AND CORPORATE DEFENDANTS**

3 **PUNITIVE DAMAGES—INDIVIDUAL AND CORPORATE**
4 **DEFENDANTS**

5      If you decide that Isaac Larian's conduct caused Mattel harm, you must
6 decide whether that conduct justifies an award of punitive damages against Mr.
7 Larian and, if so, against MGA. The amount, if any, of punitive damages will be an
8 issue decided later.

9      You may award punitive damages against Mr. Larian only if Mattel proves
10 by clear and convincing evidence that Mr. Larian engaged in that conduct with
11 malice, oppression, or fraud.

12      "Malice" means that a defendant acted with intent to cause injury or that a
13 defendant's conduct was despicable and was done with a willful and knowing
14 disregard of the rights or safety of another.  A defendant acts with knowing
15 disregard when the defendant is aware of the probable dangerous consequences of
16 his, her, or its conduct and deliberately fails to avoid those consequences.

17      "Oppression" means that a defendant's conduct was despicable and
18 subjected Mattel to cruel and unjust hardship in knowing disregard of its rights.

19      "Despicable conduct" is conduct that is so vile, base, or contemptible that it
20 would be looked down on and despised by reasonable people.

21      "Fraud" means that a defendant intentionally misrepresented or concealed a
22 material fact and did so intending to harm Mattel.

23      You may also award punitive damages against MGA based on Mr. Larian's
24 conduct if Mattel proves the following by clear and convincing evidence:

25      1.     That Mr. Larian was an officer, a director, or a managing agent of
26 MGA who was acting on behalf of MGA at the time of the conduct constituting
27 malice oppression or fraud.

28

1    An employee is a "managing agent" if he or she exercises substantial

2    independent authority and judgment in his or her corporate decision making such

3    that his or her decisions ultimately determine corporate policy.

4    **Authorities:**  CACI 3949

5

6    **MATTEL'S OBJECTIONS:**

7    1.    Defendants proposed instruction is also erroneous because it (1)

8    excludes any reference to MGA Hong Kong, and entity that is also subject to

9    Mattel's claims for punitive damages, and (2) provides that only the conduct of

10   Isaac Larian may support a finding of malice, oppression or fraud against MGA.

11   Both the model instruction and Mattel's proposed instruction correctly provide that

12   malice, oppression or fraud may be established through the conduct of "one or

13   more officers, directors, or managing agents" of MGA or MGA Hong Kong.

14   2.    Defendants' proposed instruction does not conform with the model

15   instruction in that it omits the following categories of conduct that may establish

16   malice oppression or fraud by MGA or MGA Hong Kong: "2. [That an officer, a

17   director, or a managing agent of [name of corporate defendant] had advance

18   knowledge of the unfitness of [name of individual defendant] and employed

19   [him/her] with a knowing disregard of the rights or safety of others; [or]] 3. [That

20   [name of individual defendant]'s conduct constituting malice, oppression, or fraud

21   was authorized by an officer, a director, or a managing agent of [name of corporate

22   defendant]; [or]] 4. [That an officer, a director, or a managing agent of [name of

23   corporate defendant] knew of [name of individual defendant]'s conduct

24   constituting malice, oppression, or fraud and adopted or approved that conduct

25   after it occurred.]"  See CACI 3949.  These bases for liability should all be

26   included in the instructions, as they are in Mattel's proposed instruction.

27

28

1    3.    Mattel requests that the Court adopt Mattel's proposed jury

2 instruction, which conforms to CACI 3941 & 3946.  *See* Mattel's Fourth Amended

3 Proposed Jury Instructions, at 195.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **DEFENDANTS' PROPOSED INSTRUCTION RE DAMAGES—**
2  **CONVERSION**

3                       **DAMAGES—CONVERSION**

4       If you decide that Mattel has proved its claim for conversion against MGA,
5  you must decide how much money will reasonably compensate Mattel for that
6  harm.  Mattel must prove the amount of its damages.  Mattel does not have to
7  prove the exact amount of damages that will provide reasonable compensation for
8  the harm. You must not speculate or guess in awarding damages.

9       The following are the specific items of damages claimed by Mattel:

10      1.      The fair market value of Mattel's tangible property at the time MGA
11  allegedly exercised control over it;

12      2.      Reasonable compensation for the time and money spent by Mattel in
13  attempting to recover its tangible property (although this does not include expenses
14  incurred in preparation for litigation or in litigation and not in pursuit of tangible
15  property);

16      "Fair market value" is the highest price that a willing buyer would have paid
17  to a willing seller, assuming:

18      1.      That there is no pressure on either one to buy or sell; and

19      2.      That the buyer and seller know all the uses and purposes for which
20  Mattel's tangible property is reasonably capable of being used.

21      **Authority:** CACI 2100, 2102; Cal. Civ. Code §3336; *Haines v. Parra*
22  (1987), 193 Cal. App. 3d 1553, 1559

23

24  **MATTEL'S OBJECTIONS:**

25      1.      Defendants' proposed instruction does not conform with the model
26  instruction in that it replaces  "wrongfully exercised" with "allegedly exercised" in
27  numbered paragraph 1 and in numbered paragraph 2 adds the phrase "although this
28  does not include expenses incurred in preparation for litigation or in litigation and

1  not in pursuit of tangible property," which is not contained in the model

2  instruction.   These alterations to the model instruction are unnecessary, biased and

3  confusing.

4        2.      Defendants' proposed instruction is vague in that it fails to properly

5  describe the property at issue, namely, the tangible Bratz works created by Carter

6  Bryant while he was employed by Mattel.

7        3.      Mattel requests that the Court adopt Mattel's proposed jury

8  instruction, which conforms to CACI 2102 and is properly tailored  to Mattel's

9  claim for conversion.  *See* Mattel's Fourth Amended Proposed Jury Instructions, at

10  169.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **DEFENDANTS' PROPOSED INSTRUCTION RE COPYRIGHT—**

2  **DAMAGES (17 U.S.C. § 504)**

3  **17.22**

4  **COPYRIGHT—DAMAGES (17 U.S.C. § 504)**

5  If you find for Mattel on Mattel's copyright infringement claim, you must

6  determine Mattel's damages.  Mattel is entitled to recover the actual damages

7  suffered as a result of the infringement.  In addition, Mattel is also entitled to

8  recover any profits of MGA, MGA HK and/or Mr. Larian attributable to the

9  infringement.  Mattel must prove damages by a preponderance of the evidence.

10  **Authority:** 9th Cir. Civ. Jury Instr. 17.22 (2007)

11

12  **MATTEL'S OBJECTIONS:**

13  1.      Defendants' proposed instruction is incomplete in the context of

14  Mattel's claims in this case, as actual damages can take the form of lost profits or a

15  lost license fee.  *See Lucky Break Wishbone Corp. v. Sears Roebuck and Co*., 373

16  F. App'x 752, 757 (9th Cir. 2010) (finding that "[t]he jury is not restricted . . . to

17  awarding lost profits" where evidence of lost profits and a fair market value of a

18  lost license fee were presented to the jury, defendant claimed that lost profits were

19  appropriate actual damage measurement, and defendant claimed jury award was

20  too high to account for appropriate deduction of costs to arrive at lost profits);

21  *Polar Bear Prods. Inc. v. Timex Corp.*, 384 F.3d 700, 708-710 (9th Cir. 2004)

22  (evaluating a claim for both a fair market value lost license fee and lost profits as

23  additive actual damages); *On Davis v. The Gap, Inc.,* 246 F.3d 152, 159 (2001)

24  ("[T]he statute [17 U.S.C. § 504(b) provides for the recovery of both the infringer's

25  profits and the copyright owner's 'actual damages.'"); *Oracle Corp. v. SAP AG*,

26  Case No.07-cv-01658-PJH (N.D. Cal. 2008), Dkt. No. 1005 (final jury

27  instructions).

28

2.      Additionally, Defendants fail to include any instruction regarding the calculation of  actual damages as embodied by 9th Cir. Civ. Jury Instr. 17.23 (2007).

3.      Mattel requests that the Court adopt Mattel's proposed jury instructions based on 9th Cir. Civ. Jury Instr. Nos.17.22 and 17.23 (2007) and associated Special Instructions, which specify that actual damages can take the form of loss profits or a lost license fee and properly explain the calculation of a lost license fee.  *See* Mattel's Fourth Amended Proposed Jury Instructions, at 171-182.

**DEFENDANTS' PROPOSED INSTRUCTION RE COPYRIGHT—DAMAGES—DEFENDANT'S PROFITS (17 U.S.C. § 504(b))**

**17.24**

**COPYRIGHT—DAMAGES—DEFENDANT'S PROFITS (17 U.S.C. § 504(b))**

In addition to actual damages, the copyright owner is entitled to any profits of the defendant attributable to the infringement. You may not include in an award of profits any amount that you took into account in determining actual damages.

You may make an award of MGA, MGA HK and/or Mr. Larian's profits only if you find that Mattel showed a causal relationship between the infringement and the profits generated indirectly from the infringement.

MGA's profit is determined by subtracting all expenses from MGA, MGA HK and/or Mr. Larian's gross revenue.

MGA, MGA HK and/or Mr. Larian's gross revenue is all of MGA, MGA HK and/or Mr. Larian's receipts from the sale of a products associated with the infringement.  Mattel has the burden of proving MGA, MGA HK and/or Mr. Larian's gross revenue by a preponderance of the evidence.

Expenses are all operating costs and production costs incurred in producing MGA, MGA HK and/or Mr. Larian's gross revenue.  MGA, MGA HK and/or Mr. Larian have the burden of proving expenses by a preponderance of the evidence.

If you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit cannot be attributed to the infringement and should not be awarded to Mattel.  MGA has the burden of proving the portion of the profit, if any, attributable to factors other than infringing the copyrighted work.

You are instructed that Mr. Larian did not receive any profits as a result of the alleged copyright infringement.

**Authority:** 9th Cir. Civ. Jury Instr. 17.24 (2010); 17 U.S.C. § 504(b)

**MATTEL'S OBJECTIONS:**

1.      Defendants' proposed instruction in paragraph 6 does not accurately follow the model instruction, which reads: "Unless you find that a portion of the profit from the [use] [sale] of a [product] [work] containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement. The defendant has the burden of proving the [portion] [percentage] of the profit, if any, attributable to factors other than [copying] [infringing] the copyrighted work."  Defendants' modification is biased in defendants' favor and is also confusing in that it suggests that if any part of the profit is attributable to factors other than the copyrighted work, none of the profit should be awarded to Mattel.

2.      Additionally, Defendants' proposed instruction erroneously and confusingly states only that "MGA's profit is determined by subtracting all expenses from MGA, MGA HK and/or Mr. Larian's gross revenue."  The instruction should properly read that "MGA's, MGA HK's and/or Larian's profit is determined . . . ."

3.      The final sentence of Defendants' proposed instruction, "You are instructed that Mr. Larian did not receive any profits as a result of the alleged copyright infringement," is baseless and improper.  The question of whether Mr. Larian profited from the copyright infringement is a fundamental factual matter to be determined by the jury.  Defendants provide no legal or factual authority for this instruction.

4.      Mattel requests that the Court adopt Mattel's proposed jury instruction which conforms to  9th Cir. Civ. Jury Instr. 17.24 (2007) and associated Special Instructions which explain indirect profits and apportionment in more detail.  *See* Mattel's Fourth Amended Proposed Jury Instructions, at 183-189.

**DEFENDANTS' PROPOSED INSTRUCTION RE AFFIRMATIVE DEFENSE—SETOFF AND RECOUPMENT**

### AFFIRMATIVE DEFENSE—SETOFF AND RECOUPMENT

MGA claims that Mattel's claims are barred, in whole or in part, because MGA's damages, if any, must be setoff against damages Mattel owes to MGA. Setoff provides a legal ground upon which a party can postpone paying a sum, or determine whether payment is due, to another party until net liabilities between the parties are finally determined.  The right of setoff allows parties that owe each other money to apply their mutual debts against each other, thereby avoiding, for example, making MGA pay Mattel when Mattel owes MGA.  In setoff, the debts may arise out of different transactions.

If MGA proves Mattel owes damages to MGA and that those damages may be deducted from any award to Mattel, any damages due Mattel must be setoff against damages Mattel owes to MGA.

In considering the setoff defense, you may also consider the extent to which Mattel's actions caused a significant part of the harm it claims to have suffered. You may consider whether Mattel allowed damages to accrue or the situation to worsen by failing to exercise reasonable efforts or making reasonable expenditures to minimize harm.

**Authority:** Cal. Civ. Code § 1431.2; Witkin, Summary of California Law, Torts §1629 (10th ed 2005); Witkin, 1 Summary of California Law, Contract §§920-22 (10th ed 2005); Rest.2d Torts §920; Maben v. Rankin, 55 Cal. 2d 139, 144 (1961); Corbin, Contracts §1038; Pfaff v. Fair-Hipsley, 232 Cal. App. 3d 274, 281 (1965); Plut v. Fireman's Fund Ins. Co., Cal. App. 4th 98, 107 (2000); Bramalea Calif. v. Reliable Interiors, 119 Cal. App. 4th 468, 472 (2004).

**MATTEL'S OBJECTIONS:**

1.      The Court's Order on Mattel's Motion *in Limine* No. 5 ruled that MGA's set-off defense seeking wrongful injunction damages is a blatant end run around the Court's Order dismissing MGA's wrongful injunction claim and is unavailable as a matter of law.  MIL Order at 18 ("Summary judgment has been entered on MGA's counterclaim in reply for violations of the Racketeer Influenced and Corrupt Organizations Act.  The post phase 1 injunctive relief is no longer relevant to any of the pending claims or defenses in this lawsuit.  MGA's argument that the costs imposed by the injunction are relevant to a set-off defense is a new and unconvincing attempt to circumvent the logic in the Court's order dismissing MGA's counterclaim in reply for wrongful injunction.  Mattel's motion is granted.")  Since MGA's set-off defense is premised entirely on damages sustained as a result of the injunction, a set-off instruction is unnecessary and likely to confuse the jury.  To the extent MGA seeks to set off damages awarded on its affirmative claims, if any, against damages awarded on Mattel's affirmative claims, the Court can perform that arithmetic based on the damages found by the jury.  A set-off instruction is unnecessary in this case because MGA does not have a theory of set-off liability that is legally viable and distinct from its affirmative claims.

2.      Mattel objects to this instruction because MGA is barred as a matter of law from asserting a wrongful injunction set-off defense seeking to set off *damages* it sustained as a result of the injunction.  MGA is only entitled to "restitutionary set-off" under *Dornan v. Sheet Metal Works' Int'l*, 810 F. Supp. 856, 857 (E.D. Mich. 1992).  The Court already determined that MGA seeks damages resulting from the injunction rather than restitution.  Dkt. No. 8892 at 13.

3.      Mattel objects to this instruction because set-off is equitable relief that is decided by the Court.  *Wm. R. Clarke Corp. v. Safeco Ins. Co. of Am.*, 78 Cal. App. 4th 355, 358-359 (2000) ("The right to a setoff is not absolute and may be

1    restricted when the failure to do so would be inequitable."); *see also Granberry v.*

2    *Islay Investments*, 9 Cal. 4th 738, 743 (1995) ("The English chancery courts

3    allowed setoff to be raised as a defense as early as the 17th century. ")  "A litigant

4    is not entitled to have a jury resolve a disputed affirmative defense if the defense is

5    equitable in nature." *Granite State Ins. Co. v. Smart Modular Technologies, Inc.*,

6    76 F.3d 1023, 1027 (9th Cir. 1996).  "The equitable right of setoff requires some

7    peculiar circumstances based upon equitable grounds, such as fraud, insolvency, or

8    the like, to warrant the interference of the court." *Advance Indus. Finance Co. v.*

9    *Western Equities, Inc.*, 173 Cal. App. 2d 420, 427 (1959).  As explained below,

10   restitutionary set-off for wrongful injunction is decided on motion by the Court in

11   the exercise of its equitable discretion.

12          4.      Mattel objects to this instruction because MGA cites no authority for

13   the proposition that it is entitled to set-off to the extent "Mattel's actions caused a

14   significant part of the harm it claims to have suffered" or whether "Mattel allowed

15   damages to accrue or the situation to worsen by failing to exercise reasonable

16   efforts or making reasonable expenditures to minimize harm."  Two of the cases

17   cited by MGA do not even discuss the set-off defense.  *Bramalea Cal., Inc. v.*

18   *Reliable Interiors, Inc.*, 119 Cal. App. 4th 468, 472 (2004); *Maben v. Rankin*, 55

19   Cal. 2d 139, 144 (1961).  Nor did the court address a set-off defense in the *Pfaff v.*

20   *Fair-Hipsley, Inc.*, 232 Cal. App. 2d 274, 282 (1965).  The court in *Pfaff* simply

21   held that the court did not correctly calculate the plaintiff's damages.  *Plut v.*

22   *Fireman's Fund Ins. Co.*, 85 Cal. App. 4th 98, 106-07 (2000) held that "*a court of*

23   *equity* will compel a set-off when mutual demands are held under such

24   circumstances that one of them should be applied against the other and only the

25   balance recovered," confirming that set-off is not a jury issue.  MGA's instruction

26   is unnecessary and confusing because it confuses failure to mitigate with set-off.

27

28

**DEFENDANTS' PROPOSED INSTRUCTION RE SETOFF AND RECOUPMENT—WRONGFUL INJUNCTION**

### SETOFF AND RECOUPMENT—WRONGFUL INJUNCTION

In an earlier phase of this litigation, on December 3, 2008, a different judge entered an injunction at Mattel's request prohibiting MGA from selling Bratz dolls after 2009, from developing any new Bratz dolls during 2009, and requiring MGA to recall all Bratz products still on store shelves in January 2010. That injunction order was stayed by the court of appeals on December 9, 2009 and was later reversed and vacated. MGA asserts that the later-reversed injunction caused MGA damages while it was still in effect.

If MGA proves that it was damaged by the injunction while it was still in effect and has made a reasonable calculation of the amount of such damages, you may consider the damages caused by the reversed injunction as part of MGA's setoff defense.

**Authority:** Cal. Civ. Code § 1431.2

**MATTEL'S OBJECTIONS:**

1.      The Court's Order on Mattel's Motion *in Limine* No. 5 ruled that MGA's set-off defense seeking wrongful injunction damages is a blatant end run around the Court's Order dismissing MGA's wrongful injunction claim and is unavailable as a matter of law. *See* objection to set-off instruction, above.

2.      Mattel objects to this instruction because MGA is barred as a matter of law from asserting a wrongful injunction set-off defense that seeks to set off *damages* it sustained as a result of the injunction. *See* objection to Set-Off instruction, above.

3.      Mattel objects to this instruction because wrongful injunction set-off is equitable relief that is decided by the Court after the jury reaches a verdict. In *Dornan*, the court decided whether the union was entitled "restitutionary set-off"

1   by motion submitted *after* the union obtained a $194,978 damages award, 810 F.

2   Supp. at 857, and the Court "schedule[d] an evidentiary hearing . . . to determine

3   the exact amount of the set-off in accordance with this opinion."  Id. at 861.

4   Recognizing that "set-off is an equitable act and that "laches remains a valid

5   defense," the court exercised its discretion and held that "to the extent that the

6   delay exceeded one month, the Union is subject to laches, and is unable to obtain

7   set-off."  Id.  Cases addressing claims for wrongful injunction are decided by the

8   court on motion, not by the jury.  *See, e.g., Atlanta Journal and Constitution v.*

9   *City of Atlanta Dept. of Aviation*, 442 F.3d 1283, 1285 (11th Cir. 2006) ("We

10  conclude that the *district court* did not abuse its discretion in computing the

11  *restitutionary award* or in awarding attorneys' fees and costs.") (emphasis added).

12  MGA cites no authority supporting its contention that wrongful injunction set-off

13  is a jury issue.

14        4.     Mattel objects to this instruction because MGA is barred by the

15  *Noerr-Pennington* doctrine and California's litigation privilege from asserting a

16  wrongful injunction set-off defense seeking damages.  The Supreme Court's

17  limitation of wrongful injunction recovery to restitution, like *Noerr-Pennington*

18  and the litigation privilege, protects Mattel's First Amendment right to petition the

19  Court for equitable relief related to its ownership of Bratz.  The Supreme Court has

20  unequivocally held that MGA "has *no action for damages* in the absence of a

21  bond."  *W.R. Grace and Co. v. Local Union 759*, 461 U.S. 757, 770 n.14 (1983)

22  (emphasis added).  As this Court ruled, "[t]he prior presiding judge neither

23  required Mattel to post a bond nor otherwise put Mattel on notice of its potential

24  liability for MGA's damages suffered as a result of the permanent injunction."

25  Dkt. No. 8892 at 12 n.6.  That MGA now seeks to recover damages as a set-off to

26  damages it owes Mattel rather than affirmatively makes no difference at all, and

27  MGA cites no authority that *Noerr-Pennington* would allow recovery of non-

28  restitutionary damages stemming from the exercise of Mattel's protected First

05.07975/3941364.1

1   Amendment rights.  *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1183 (9th

2   Cir. 2005) (*Noerr-Pennington*); *Edwards v. Centex Real Estate Corp.*, 53 Cal. App.

3   4th 15, 29 (1997) (litigation privilege).

4           5.      Mattel objects to this instruction because the injunction never went

5   into effect, so MGA incurred no damages as a result of the injunction that it could

6   theoretically set off.  *Dornan*, 810 F. Supp. at 860 ("[O]nly those losses in dues

7   resulting from the injunction can be considered for set-off.").  The Court

8   recognized this in its October 5, 2010 Order.  Dkt. No. 8892 at 12.  Damages

9   sustained by MGA, if any, were based on the specter of the injunction, not its

10  actual operation.  *See Lever Bros. Co. v. Int'l Chemical Workers Union, Local 217*,

11  554 F.2d 115, 120 (4th Cir. 1976) ("recoverable damages under such a bond are

12  those that arise from the operation of the injunction itself and not from damages

13  occasioned by the suit independently of the injunction"); *Monolith Portland*

14  *Midwest Co. v. RFC*, 128 F. Supp. 824 (S.D. Cal. 1955) (recoverable damages are

15  only those "actually sustained by reason of the injunction, that is, such damages as

16  are the actual, necessary, and proximate result of the injunction during the time it

17  was operative.").

18

19

20

21

22

23

24

25

26

27

28

1  **DEFENDANTS' PROPOSED INSTRUCTION RE UNFAIR**

2  **COMPETITION—RESTITUTION**

3  **UNFAIR COMPETITION—RESTITUTION**

4  If you find that Mattel or MGA Entertainment, Inc. committed an act of

5  unfair competition in violation of the Unfair Competition Law, you must decide

6  whether to award monetary restitution to the claimant and the amount of the

7  restitution, if any.  Restitution is limited to money or property the defendant took

8  from the claimant, or money or property in which the claimant had a vested

9  interest.  Property in which the claimant had a vested interest includes pre-existing

10 business relationships with licensees, distributors, and retailers.

11 **Authority:** Cal. Bus. & Prof. Code § 17203; *Korea Supply Co. v. Lockheed*

12 *Martin Corp.,* 29 Cal. 4th 1134, 1136-37, 1149 (Cal. 2003); Dkt. #9600 (Amended

13 SJ Order) at 111 ("There is a genuine issue of material fact as to whether MGA

14 lost money as a result of Mattel's obstruction of its relationships with licensees and

15 distributors.  MGA's licenses with its retailers were themselves "property" of

16 which Mattel's alleged conduct deprived MGA.  MGA also expended tremendous

17 sums to generate new licenses, or paid premiums to other licensees, because of

18 Mattel's conduct and specifically, the conduct of Mattel's Chief Executive Officer

19 Robert Eckert.  These are not simply harm to goodwill, but actual monetary losses

20 suffered as a result of Mattel's alleged interference with MGA's contractual

21 relationships with its licensees and retailers, whose business is the backbone of a

22 toy manufacturer's success.") (citation omitted).

23

24 **MATTEL'S OBJECTIONS:**

25 1.      Defendants' proposed instruction is misleading and confusing in that

26 it fails to properly clarify that MGA is not entitled to recover damages as a form of

27 relief.  Restitution may not include any profits earned by Mattel that MGA may

28 claim were earned as a result of Mattel's unfair competition. Nor may restitution

1   include any profits MGA claims it lost.  *See* Cal. Bus. & Prof. Code § 17203;

2   *Korea Supply Co. v Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003)

3   (restitution under the UCL is limited to "classic restitution"; that is, "money or

4   property that defendants took directly from plaintiff" or money or property in

5   which [plaintiff] has a vested interest."); *Citizens of Humanity, LLC v. Costco*

6   *Wholesale Corp.*, 171 Cal. App. 4th 1, 22 (2009) (harm to goodwill not capable of

7   restitution); *Inline, Inc. v. A.V.L. Holding Co.*, 125 Cal. App. 4th 895, 904-905

8   (2005) (rejecting various forms of requested recovery because not restitutionary,

9   including consequential losses and fair market value of property sold); *Pegasus*

10  *Satellite Television, Inc. v. DirecTV, Inc.*, 318 F. Supp. 2d 968, 979 (C.D. Cal.

11  2004) (one competitor does not have a vested interest in the profits of another)

12          2.      Mattel requests that the Court adopt Mattel's proposed Special

13  Instruction No. 58, which clarifies these limitations on restitution.  *See* Mattel's

14  Proposed Jury Instructions, at 249.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' PROPOSED INSTRUCTION RE STATUTE OF LIMITATIONS—EXPLANATION**

**4120**

**STATUTE OF LIMITATIONS—EXPLANATION**

The law requires that a claimant file its claims within a defined period of time.  MGA Entertainment, Inc. and Isaac Larian contend that certain of Mattel's claims were not filed within the time set by law.  To succeed on this defense, they must prove that Mattel did not file its claims in court within the time set by law.

You are instructed that Mattel filed its claims against MGA Entertainment, Inc. and Mr. Larian on April 27, 2004.

**Authority:** CACI No. 4120 (2009); *Fox v. Ethicon Endo-Surgery, Inc.,* 35 Cal. 4th 797, 807 (2005); *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988)

**MATTEL'S OBJECTIONS:**

1.      Mattel objects to this instruction because it is redundant and unnecessary to explain the meaning of statute of limitations when this introduction can be incorporated into the substantive statute of limitations instruction.  This needlessly increases the number of instructions that the jury must review, and it requires the jury to read two or more instructions to resolve one affirmative defense.  The purpose of this is to seek to highlight this MGA defense and elevate its importance over other instructions, which is improper.

2.      To the extent the Court is inclined, over Mattel's objections, to give any introductory instruction on the statute of limitations and/or other affirmative defenses, Mattel suggests the Court give the following instructions proposed by Mattel: Mattel Special Jury Instruction No. 32 (Affirmative Defense—Introduction) and Mattel Special Jury Instruction No. 47 (Affirmative Defense—

1   Introduction.  *See* Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No.

2   9683) at 139, 224.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28