QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de C.V., a Mexico entity,<br><br>Plaintiffs,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendants.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL'S BRIEF REGARDING THE ADMISSIBILITY OF TRIAL EXHIBIT 13380**<br><br>Hearing Date:   TBD<br>Time:           TBD<br>Place:          Courtroom 9D<br><br>Pre-trial Conference: January 4, 2011<br>Trial:                January 18, 2011 |

MATTEL'S BRIEF REGARDING THE ADMISSIBILITY OF TRIAL EXHIBIT 13380

## MEMORANDUM OF POINTS AND AUTHORITIES

Trial Exhibit 13380 is an email chain between Isaac Larian and his brother, Fred Larian, who was then a co-owner and senior executive of MGA. In 2000, MGA was involved in a dispute with Fireman's Fund Insurance Company. TX 13380 reflects a directive by Isaac Larian to Fred Larian to conceal evidence in that litigation. In an email dated May 24, 2000, Fred Larian described how counsel for Fireman's Fund had requested legible copies of insurance forms that had been produced in illegible form by MGA. In response to this request, MGA located the originals and made legible copies. But, as revealed in the email, "You [Isaac] instructed me [Fred] to not provide those to Marty and to tell him we could not find the originals."

Fred Larian destroyed evidence relating to Bratz after asking his brother if there was anything he could do to help in this case. The exhibit shows that on one prior occasion Isaac Larian has asked Fred to suppress evidence relevant to pending litigation—and that both men recognized the impropriety of this conduct. This is not inadmissible character evidence. To the contrary, under Rule 404(b) it is admissible to show Isaac and Fred's intent, plan, knowledge and lack of mistake with respect to the destruction of the Bratz evidence. It is also relevant to Fred Larian's bias. Mattel does not offer the exhibit to reflect upon the character of Fred Larian, it offers it to show that Isaac Larian and MGA intended the destruction of evidence Fred Larian possessed, had knowledge of the spoliation, that it was part of a plan to conceal harmful evidence in this litigation, and that it was not a mistake.

**I.     THE EXHIBIT IS ADMISSIBLE UNDER FED. R. EVID. 404(B)**

Fred Larian has admitted that he intentionally spoliated 10-12 boxes of documents and electronic evidence relevant to this case so that Mattel would not

obtain them.[1]  Mattel expects that Fred Larian will deny that his brother had any involvement in this undisputed spoliation and the jury will have to make a determination as to the credibility of that denial.  The jury should be permitted to consider Exhibit 13380 in considering Isaac Larian's and MGA's intent, plan, knowledge and lack of mistake in connection with the destruction of these documents.

In 2004, in the middle of a lawsuit against his brother Isaac, Fred Larian sent Isaac an email saying "I saw the Mattel suit against Carter Bryant.  Please let me know if there is anything I can do to help."  Trial Ex. 4234.  Subsequently, in an admitted effort to keep evidence from Mattel, Fred Larian – while on MGA's payroll – intentionally destroyed 10-12 boxes of documents and a USB drive of electronic documents relevant to Mattel's claims.[2]

These destroyed documents were collected by Fred Larian in connection with his claim that Isaac Larian fraudulently bought him out of MGA in 2000 in part by concealing Bratz.  They included MGA Bratz-related emails from the 2000 and 2001 time period, financial forecasts and shipping spreadsheets that included Bratz, and signed and draft declarations related to Bratz.[3]  Mattel anticipates that Fred Larian will testify that Isaac Larian did not direct his admitted spoliation and was unaware of it.

MGA will argue that the exhibit is inadmissible character evidence under Rule 404(a). It is not.  It is undisputed that Fred Larian destroyed evidence and the jury will consider the extent to which Isaac Larian knew, intended its destruction and whether it was part of MGA's plan of concealment in this case.  Under Rule

---

[1] See Farhad Larian Depo., dated, February 4, 2008, at 53:10-16, 56:9-57:5, 56:12-57:2, 65:25-67:2.
[2] Farhad Larian Depo, Vol. 1 at 53:10-16, 56:9-57:5, 56:12-57:2, 65:25-67; Phase I Trial Tr., dated July 1, 2008, at 3782:21-3783:3.
[3] Farhad Larian Depo., Vol. 1, at 53:17-54:17; 70:5-71:18; 170:10-174:5.

404(b), Exhibit 13380 is admissible to demonstrate each of these.  C.f. United States v. Frankhauser, 80 F.3d 641, 649-50 (1st Cir. 1996) (finding evidence of prior acts of "destruction of documents" to show a defendant's intent and motive "would not include [defendant's] character as a necessary link" and therefore "did not run afoul of Fed. R. Evid. 404(b)"); United States v. McKoy, 771 F.2d 1207, 1214 (9th Cir. 1985) (holding that under 404(b) evidence of prior transactions involving stolen property between defendant and co-defendant before the transaction that resulted in their arrest "was admissible to explain the nature of the relationship between Greenamyer and McKoy and to put their transaction in context for the jury.").

Moreover, the email goes directly to Fred Larian's bias.  It is evidence of prior requests by Isaac Larian to his brother to conceal evidence and make false statements in connection with litigation.  The jury should be permitted to consider this in considering Fred Larian's bias, especially in light of evidence Isaac Larian has a $1 million judgment against his brother that he has not enforced.

To the extent that the Court has concerns about the prejudicial effects of the exhibit, any such concerns can be addressed by a limiting instruction to the jury that the exhibit should not be considered except as to intent, plan, knowledge or lack of mistake by Larian and MGA.

## II. THE EMAIL EXCHANGE IS NOT HEARSAY

The email exchange between Fred and Isaac Larian is not hearsay because it is an admission by a party opponent.  It is a series of communications between MGA's President and CEO and another MGA executive and 40% owner about directions given in connection with Fred Larian's supervision of MGA's litigation.[4]  Under Rule 801, "a statement made by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of

---

[4] Farhad Larian Depo. Tr., dated February 4, 2008, at 274:24-275:8.

the relationship," is non-hearsay. <u>Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.</u>, 454 F. Supp. 2d 966, 973 (C.D. Cal. 2006) (holding that a company's CEO, CTO, chairman, director, and/or vice president were agents of the corporation). Because MGA and Isaac Larian are parties, and Fred Larian was an officer and owner of MGA at the time of the communication, and the statement relates to a matter within the scope of both mens' employment, the statements in the email chain are not hearsay and are admissible against MGA and Isaac Larian.

DATED: January 31, 2011            QUINN EMANUEL URQUHART &
                                   SULLIVAN, LLP


                                   By /s/ Michael T. Zeller
                                       Michael T. Zeller
                                       Attorneys for Mattel, Inc. and
                                       Mattel de Mexico, S.A. de C.V.