ANNETTE L. HURST (State Bar #148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar #148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel: (415) 773-5700/Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar #145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. MCCONVILLE (State Bar #155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case #CV 04-9049 DOC (RNBx)<br><br>Consolidated with:<br>Case #CV 04-09059<br>CASE #CV 05-02727<br><br>**MGA PARTIES' OPPOSITION TO MATTEL'S OFFER OF PROOF RE: TESTIMONY AND EVIDENCE OF FRANK KEISER**<br><br>Date:        TBD<br>Time:        TBD<br>Courtroom:  9D<br><br>Trial Date: January 18, 2011 |

1    The MGA Parties hereby respectfully submit this opposition to the Order of

2    Proof submitted by Mattel relating to the proffered testimony and scan comparisons

3    of Frank Keiser.  The MGA Parties submit that at the hearing held before the Court

4    on January 27, 2011 it was readily apparent that the testimony and scan

5    comparisons that Frank Keiser purports to offer the jury are unreliable, inaccurate

6    and unsupported by any explanation of the method by which they were created.

7    Moreover, as they mask important differences pertaining to the size and texture of

8    the actual real-life sculpts at issue, Mr. Keiser's scans provide no assistance

9    whatsoever to the jury.  Instead, they distort the copyright test by taking the

10   ultimate question of whether a reasonable observer would consider these items

11   virtual identical and replacing that test with a computerized digital modeling

12   exercise – and one that is unreliable at best.  The law of copyright supports no such

13   substitution of the jury's task.  To allow Mr. Keiser to testify would invade the

14   province of the jury and prejudice the MGA Parties.

15              **Mr. Keiser's Scan Comparisons are Unreliable and Inconsistent**

16   At hearing on January 27, 2011, Mr. Keiser purported to show the Court an

17   example of a scan comparison that he would like to present to the jury.

18   Importantly, Mr. Keiser had never indicated that he intended to offer such a

19   comparison.  Indeed, no such comparison was disclosed in his expert report.  Nor

20   does his report in any way explain the process by which he made the comparisons

21   that he now wishes to show the jury.  Despite that failure, Mattel has now filed an

22   Offer of Proof whereby it explains that Mr. Keiser is now prepared to offer

23   numerous comparisons of sculpts, none of which had been identified or disclosed

24   before.  Moreover, in his Declaration supporting Mattel's Offer of Proof of these

25   comparisons, Mr. Keiser neither describes the process by which he created these

26   comparisons nor provides any explanation or assurance of accuracy.

27   In fact, his scan comparisons are unreliable and inaccurate.  On page 50 of

28   the January 27 Trial Transcript Mr. Keiser is showing the Court a comparison that

- 1 -

1    he created by overlaying a Cloe doll head (TX 17733) with the initial grey sculpt

2    (TX 1136A).  He explains (for the first time) that the color codes on the screen

3    indicate how close the match is between the two items.  This first comparison is

4    theoretically the comparison that he wishes to show the jury.  When asked by the

5    Court to show the method by which he created the overlay, he is unable to explain

6    how it is accurate in any way that is understandable to the jury:  "the algorithm

7    overlays it and brings it in," (to which the Court replies, "my jury doesn't

8    understand that yet") and then he offers "These are tied to NITS standards for

9    accuracy" (to which the Court replies "That means nothing to me").  Trial Tr. Jan.

10   27 (56:24-57:3).  The Court then asks Mr. Keiser to recreate the overlay.  He

11   proceeds to do so, once again comparing the Cloe head and the gray sculpt – and

12   the results are <u>entirely different</u> than what he was originally showing the Court.

13   Specifically, while the scan that Mr. Keiser created in Court showed a difference

14   between the sculpts in the area of the eyelids, the sculpt that Mr. Keiser first

15   showed the Court (i.e., the one he created outside of Court that he now wishes to

16   show the jury) shows no such difference in the area of the eyelids.  *Cf.* Trial Tr. Jan

17   27 (62:22-24) (pointing out that the eyelids on the two sculpts are showing up as

18   different on the scan created in Court) *with* Trial Tr. Jan. 27 (63:4-14) (Q: "Your

19   first comparison that you showed us did not have red over the eyelids [meaning the

20   two were different], did it?  . . . A:  Correct.").

21        Given the varying results of the two scans it is clear that Mr. Keiser can

22   manipulate these scans to obtain whatever results suit him.  The scan done in Court

23   clearly had not had the benefit of that manipulation and as a result showed more

24   differences in the two sculpts than the one that Mr. Keiser purports to offer to the

25   jury.  Given the unreliability and inability to replicate these results on testing Mr.

26   Keiser's method, Mr. Keiser's scans should be excluded.

27

28

- 2 -

MGA'S OPP. TO MATTEL'S OFFER OF PROOF RE;
TESTIMONY AND EVIDENCE OF FRANK KEISER
CASE NO. CV 04 9049-DOC (RNBx)

**The Keiser Scans Mask Important Differences in Size and Texture**

As also was made clear in Court at the Keiser hearing, there are significant size differences between the final production sculpt and the first grey exploratory sculpt.  Those size differences are important to the jury's copyright analysis as to whether these sculpts are virtually identical.  Mr. Keiser readily admits that he altered the scan results to take away any differences in size so that he could perform his comparison overlay:

Q:  Mr. Keiser, let me just ask you first, can you answer my question?
Looking at the two objects, do you see a difference in size between those two heads?

A:  Yes.

Q:  All right.  And you altered the size of one or both of these in the process in your computer; isn't that right?

A:  We altered the Cloe doll.

Q:  How did you alter it?

A:  The software can scale without changing features.

Q:  So you manipulated the size of the Cloe doll in order to perform your comparison?

A:  Yes.

Trial Tr. Jan. 27 (61: 9-20).

With this methodology of distorting the actual sculpts before comparing them, Mr. Keiser has removed each and every difference between these sculpts that relates to size.  A comparison born of that distortion cannot assist the jury.

In addition, Mr. Keiser admits that he failed to use the highest resolution available to him for the scans.  As a result, his scans have lost all texture:  another point of comparison that the jury is entitled to consider and should not be encouraged to ignore.  Trial Tr. Jan 27 (68:5-6) (Q:  Is that the best possible resolution? A:  No?") and (68:9-14) (Q:  You noticed the tool marks on the head?

- 3 -

1    A:  Yes.  Q:  Were the tool marks in your scan?  A:  No").

2    **Mr. Keiser's Scan Comparisons Are Unreliable and Fail to Account for
3    Noticeable Differences in the Sculpts**

4    While on cross examination at the January 27 hearing, Mr. Keiser readily

5    admitted that numerous differences observable between the two real-life sculpt

6    heads were not picked up, or were picked up inconsistently, in Mr. Keiser's scan

7    comparisons.

8    For example, while the scan comparison that Mr. Keiser created in Court

9    accounted for a difference between the two sculpts in the area of the eyelids, a

10   difference that Mr. Keiser admitted is noticeable when you compare the two real-

11   life heads, the scan comparison that he wishes to present to the jury fails to account

12   for that difference and instead suggests that there is no appreciable difference in the

13   eye lids.  Trial Tr. Jan 27 (62:16-63:14).

14   Similarly, Mr. Keiser admits that the irises on the two real-life sculpts are

15   different, but that with respect to his comparison, "you cannot see it in this

16   rendition."  Trial Tr. Jan. 27 (63:18-64:2).  And again, Mr. Keiser admits that one

17   sculpt has eyebrows while the other does not – but that his scan comparison fails to

18   account for that difference as well.  Trial Tr. Jan 27 (64:3-10).  And it is the same

19   story with the lips:  Mr. Keiser, looking at the real-life sculpts notes that there is a

20   difference in the shape of the lip, and explains that this time, his scan does note a

21   difference.  Trial Tr. Jan, 27 (64:13-23) ("Q:  So sometimes your overly picks up

22   the changes and sometimes it doesn't, correct" A:  Correct . . .").

23   Mr. Keiser's scan comparisons are unreliable and, it seems, easily

24   manipulated – not the sort of expert evidence that should reach a jury.

25   **Mr. Keiser's Scan Comparison Will Not Assist the Jury**

26   The digital computer-generated scans created by Mr. Keiser will not assist

27   the jury in their task of determining the similarity of the sculpts for Mattel's

28

MGA's Opp. To Mattel's Offer of Proof Re;
Testimony and Evidence of Frank Keiser
Case No. CV 04 9049-DOC (RNBx)

1   copyright infringement and trade secret claims.  The copyright test in fact expressly

2   excludes any such enhanced comparison; it asks the jury whether an ordinary

3   observer would find the sculpts to be virtually identical.  That test asks what the

4   ordinary person perceives – without help from a unreliable digital modeling scan.

5   Mr. Keiser readily admits that his scans do not account for the psychology of

6   human perception.  Trial Tr. Jan 27 (67:6-11).

7                                   **CONCLUSION**

8       For the foregoing reasons, the Court should grant MGA's Motion in Limine

9   No. 36 and exclude Mr. Keiser from testifying at trial.

10

11                                   Respectfully submitted,

12   Dated:  February 1, 2011        ORRICK, HERRINGTON & SUTCLIFFE LLP

13

14                            By:    _____*/s/ Annette L. Hurst*_____

                                     Annette L. Hurst
15                                   Attorneys for MGA Parties

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA'S OPP. TO MATTEL'S OFFER OF PROOF RE;
TESTIMONY AND EVIDENCE OF FRANK KEISER
CASE NO. CV 04 9049-DOC (RNBX)