ANNETTE L. HURST (State Bar #148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar #148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel: (415) 773-5700/Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar #145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. MCCONVILLE (State Bar #155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>            Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>            Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case #CV 04-9049 DOC (RNBx)<br><br>Consolidated with:<br>Case #CV 04-09059<br>CASE #CV 05-02727<br><br>**MGA PARTIES' TRIAL BRIEF ON COPYRIGHT DAMAGES AND THE UNAVAILABILITY OF A GEORGIA-PACIFIC HYPOTHETICAL NEGOTIATION ROYALTY UNDER 17 U.S.C. § 504**<br><br>Date:        TBD<br>Time:        TBD<br>Courtroom:  9D<br><br>Trial Date: January 18, 2011 |

1  The MGA Parties hereby respectfully submit this trial brief on damages provided for by Section 504 of the Copyright Act. Importantly, Section 504 does not permit the award of a hypothetical negotiation royalty under *Georgia-Pacific* as a measure of actual damages in this case.

Section 504 of the Copyright Act provides that an "infringer of a copyright is liable for … the copyright owner's actual damages and any additional profits of the infringer." 17 U.S.C. §504(a). As part of "actual damages," Mattel argues that it is entitled to a reasonable royalty or a fair market value license. It advocates borrowing from patent law the *Georgia-Pacific* factors for determining an appropriate royalty rate. Section 504 of the Copyright Act does not authorize such an award on the facts of this case.

Section 504 of the Copyright Act authorizes an award of "actual damages suffered by [the copyright owner] as a result of the infringement, . . . ." Congress thus has expressly required that the harm be "actual" and that it be the "result" of the infringement. Lost license value can only meet these requirements where there is evidence of the loss of an established license royalty. Otherwise there is no evidence that an actual loss of any kind has occurred.

In this regard, Section 504 of the Copyright Act differs markedly from the Patent Act and Uniform Trade Secrets Act in regards to the royalty theory of damages. The Patent Act expressly provides a statutory minimum "reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. §284. UTSA also provides a "reasonable royalty" as an alternative remedy when the plaintiff fails in its proof of either actual damages or unjust enrichment. The *Georgia-Pacific* factors are used under both the Patent Act and UTSA to conduct a "hypothetical negotiation" to arrive at the reasonably royalty. *See Ajaxo, Inc. v. E*Trade Financial Corp.*, 187 Cal. App. 4th 1295 (2010) (using "suppositious meeting" rubric and citing to other cases applying some set of *Georgia-Pacific* factors).

- 1 -

1    No decision we can find has approved the use of a "hypothetical negotiation"
2 utilizing *Georgia-Pacific* factors under the Copyright Act.  *Cf. In re MobiTV*, 712 F
3 .Supp. 2d 206, 243 (S.D.N.Y. 2010) ("ASCAP has been unable to identify any
4 copyright case that has applied the *Georgia-Pacific* factors . . . ").  In fact, the
5 *hypothetical* royalty negotiation is a rubric by definition inconsistent with the
6 express dual statutory requirements of *actual* harm and causation.
7    Rather, in all of the cases where a royalty was approved as a measure of
8 copyright actual damages there was some evidence of an established royalty (or at
9 least a royalty negotiation between the parties before the dispute arose).  In *Wall*
10 *Data, Inc.  v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769 (9th Cir. 2006),
11 there was an established license schedule for Wall Data's computer software.  In
12 *Polar Bear Prods, Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004), a lost
13 license fee was permitted based on a rate quoted from the copyright owner to
14 infringer before the dispute arose.  In *On Davis v. The Gap, Inc.*, 246 F.3d 152,
15 161-162 (2nd Cir. 2001), there was evidence of an established royalty because the
16 copyright owner had received royalties for the infringed work in the past.
17    No such evidence exists here.  Any license would be based on purely
18 hypothetical facts.  In fact, Mattel's expert Mr. Michael Wagner admitted that he
19 could not relate his copyright hypothetical royalty to any actual harm, demurring
20 that it was a "legal determination" and not a question of economics whether the
21 proffered remedy was available in the absence of any evidence at all that Mattel
22 would have licensed Bratz.  Wagner Depo. at 601:9-21.  Wagner admitted that there
23 was no evidence that Mattel would have used or licensed the product and that if
24 such evidence were required to show actual harm, he could not do so in this case.
25 *Id.* at 602:16-25.  Even worse, despite this gross absence of evidence of actual
26 harm, Wagner's hypothetical negotiation used the highly suspect "book of wisdom"
27 methodology taking into account events that occurred long after any willing buyer-
28 willing seller negotiation would have occurred and could not possibly have been

known to the parties. *Id.* at 612:3-24. Wagner applied the most extreme form of hypothetical negotiation methodology without any evidence of causation of harm at all, plainly violating the express statutory requirements of the Copyright Act.

A reasonable royalty based purely on "hypothetical negotiation" does not, without more, demonstrate the actual loss of a license fee. There is no evidence of an established royalty schedule for the copyrighted material at issue. Mattel lost no opportunity to earn a royalty either from MGA or anyone else. In fact, the evidence is clear that Mattel would neither have exploited nor licensed Bratz. *See* Fontanella Depo. at 67:3-68:6 and 150:2-12; Ross Depo. at 108:22-109:19; Eckert Depo. 1147:14-19 and 1148:8-24; Kilpin Depo. 698:21-25 and 699:2-8; *see also* Trial Tr. at 4869:18-20; Park Depo. at 173:20-175:14; Fontanella Depo. at 98:22-100:8; TX 286.

Mattel cites *Mackie v. Rieser*, 296 F. 3d 909 (9th Cir. 2002), and *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 512 (9th Cir. 1985), as further support for its argument that a royalty should apply, but neither case supports that conclusion. Both *Mackie* and *Frank* principally concerned the calculation of indirect profits, not a hypothetical royalty negotiation. The Ninth Circuit in *Mackie* rejected any award of a royalty, so it does not support Mattel here.

In *Frank*, the court was principally concerned with application of a proper percentage against a revenue base for purposes of calculating indirect profits—not a hypothetical royalty for actual damages. *Frank* quoted *Sid & Marty Krofft* for a willing buyer-willing seller rubric, but *Krofft* was decided under the 1909 Act. *Sid & Marty Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977). The 1909 Act had a provision expressly permitting courts to award a "just" remedy as an "in lieu" remedy in cases where damages and profits failed. *See F.W. Woolworth co. v. Contemporary Arts, Inc.*, 344 U.S. 228 (1952); *see also* 17 U.S.C. § 101(b) (superceded). The 1976 Act replaced that provision with the

statutory damages scheme of 17 U.S.C. §504(c). This change in the statute makes *Krofft* inapposite for this proposition of a hypothetical royalty, and any cases that have subsequently relied upon it without taking note of this express change by Congress in the statutory scheme cannot apply. Neither *Krofft* nor any of the cases cited by Mattel ever held that a hypothetical negotiation under the *Georgia-Pacific* factors could meet the actual harm attributable to infringement requirements of Section 504 of the 1976 Copyright Act.

Moreover, Mattel's attempt through Wagner to use a hypothetical negotiation applicable to the entire Bratz revenue base is an improper attempt to evade the Court's summary judgment order regarding subsequent generation dolls, and an improper attempt to evade the causation requirement for a profits award under the Copyright Act. Mattel cannot establish the causal link required to prove indirect profits on the entire Bratz revenue base because there is no infringement in the vast majority of the products and revenues. Mattel does not even try to demonstrate that the sales of subsequent generation female dolls, other Bratz branded products, or license revenue are attributable to any <u>infringement</u> by those products. Mattel instead improperly is trying to use a concept akin to the patent entire market value rule to recover a royalty on all Bratz revenues—but even the Federal Circuit would not permit Mattel to get away with including the entire revenue base under these circumstances. *See Uniloc*, 2011 WL 9738 at *22-24 (rejecting application of the entire market value rule to entire Windows revenue base because of infringing product ID key). Mattel has no proof of convoying in the form of bundling, temporal proximity of sales, or any other factor that would tend to demonstrate that the other revenues are attributable to the alleged <u>infringement</u> by the six remaining dolls in the case. *See Mackie v. Rieser*, 296 F. 3d 909 (2002).

The topic of a royalty was raised at the Ninth Circuit argument in this case, but that discussion was in the context of the *eBay* analysis for equitable relief. In fact, the question asked by Judge Kozinski was "[w]hy wasn't the royalty enough,

- 4 -

MGA'S OPP. TO MATTEL'S OFFER OF PROOF RE;
TESTIMONY AND EVIDENCE OF FRANK KEISER
CASE NO. CV 04 9049-DOC (RNBx)

or a piece of the business or a payment of additional damages?" Transcript of December 9, 2009 Ninth Circuit Argument at 36, attached to the Declaration of Warrington S. Parker III as Exhibit A. Judge Trott agreed, asking, "[w]hy is it unworkable to order a royalty?" *Id.* at 37. Judge Wardlaw suggested an apportionment of the first generation dolls from the others. *Id*. All of these suggestions were made in the context of avoiding the "draconian remedy" of sweeping injunctive relief which was built on Mattel's state law claims and the transfer of the Bratz name, in addition to copyright. *Id.* at 41. Later in the discussion, when copyright came up specifically, Judge Wardlaw asked why the copyright damages, which amounted to $10 million, or 1% of what Mattel had requested, were not sufficient. *Id.* at 40. There was no discussion at the Ninth Circuit as to whether a royalty would be an appropriate damages remedy under Section 504 of the Copyright Act in this case; indeed, that question and the related authorities were not before the Court. The law itself, as set forth above, is clear – a hypothetical royalty is not appropriate under Section 504 of the Copyright Act and certainly not appropriate here where there is no causal connection or support for a claim of an actual loss of license revenue.

## CONCLUSION

For the foregoing reasons, the Court should conclude that a hypothetical negotiation royalty is not available as a measure of actual damages on Mattel's copyright infringement claim.

Respectfully submitted,

Dated: February 1, 2011     ORRICK, HERRINGTON & SUTCLIFFE LLP

By:    */s/ Warrington S. Parker*
       Warrington S. Parker III
       Attorneys for MGA Parties