Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 1 of 113   Page ID #:293190
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

1

1                    **UNITED STATES DISTRICT COURT**

2                    **CENTRAL DISTRICT OF CALIFORNIA**

3              **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                         - - - - - - -

5
    MATTEL, INC., et al.,              )
6                                      )
                  Plaintiffs,          )
7                                      )
           vs.                         ) No. CV 04-9049 DOC
8                                      )    Day 10
    MGA ENTERTAINMENT, INC., et al.,   )    Volume 1 of 4
9                                      )
                                       )
10                Defendants.          )
   _____)
11

12

13

14             REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                         Jury Trial

16                    Santa Ana, California

17                 Tuesday, February 1, 2011

18

19

20

21   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
22   United States District Court
     411 West 4th Street, Room 1-053
23   Santa Ana, California 92701
     (714) 558-8141
24

25   04cv9049 Mattel 2011-02-01 D10V1

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 2 of 113   Page ID #:293191
CV 04-9049 DOC - 2/17/2011 - Day 10, Volume 1 of 4

2

```
 1    APPEARANCES OF COUNSEL:

 2
      FOR PLAINTIFF MATTEL, INC., ET AL.:
 3
                 QUINN EMANUEL URQUHART & SULLIVAN
 4               BY:  JOHN QUINN
                      WILLIAM PRICE
 5                    MICHAEL T. ZELLER
                      Attorneys at Law
 6               865 South Figueroa Street
                 10th Floor
 7               Los Angeles, California 90017
                 (213) 443-3000
 8

 9

10

11    FOR DEFENDANT MGA ENTERTAINMENT, INC., ET AL:

12               ORRICK, HERRINGTON & SUTCLIFFE, LLP (Irvine)
                 BY:  THOMAS S. McCONVILLE
13                    Attorney at Law
                 4 Park Plaza
14               Suite 1600
                 Irvine, California 92614
15               (949) 567-6700

16               - AND -

17               ORRICK, HERRINGTON & SUTCLIFFE, LLP (SF)
                 BY:  ANNETTE L. HURST
18                    Attorney at Law
                 405 Howard Street
19               San Francisco, California 94105
                 (415)773-5700
20
                 - AND -
21
                 KELLER RACKAUCKAS
22               BY:  JENNIFER KELLER
                      Attorney at Law
23               18500 Von Karman Avenue
                 Suite 560
24               Irvine, California 92612
                 (949) 476-8700
25
```

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 3 of 113   Page ID #:293192
CV 04-9049 DOC – 2/1/2011 – Day 10, Volume 1 of 4

3

1    **APPEARANCES OF COUNSEL (Continued):**

2

3    FOR CARLOS GUSTAVO MACHADO GOMEZ:

4
            LAW OFFICES OF MARK E. OVERLAND
5           By:  MARK E. OVERLAND
                 Attorney at Law
6           100 Wilshire Boulevard
            Suite 950
7           Santa Monica, California 90401
            (310) 459-2830
8
            – AND –
9
            SCHEPER KIM & HARRIS LLP
10          BY:  ALEXANDER H. COTE
                 Attorney at Law
11          601 West 5th Street
            12th Floor
12          Los Angeles, California 90071
            (213) 613-4660
13

14

15
     ALSO PRESENT:
16
            MGA ENTERTAINMENT, INC.
17          BY:  JEANINE PISONI
                 Attorney at Law
18          16360 Roscoe Boulevard
            Suite 105
19          Van Nuys, California 91406

20
            ROBERT ECKERT, Mattel CEO
21
            ISAAC LARIAN, MGA CEO
22
            KEN KOTARSKI, Mattel Technical Operator
23
            MIKE STOVALL, MGA Technical Operator
24
            RACHEL JUAREZ, Quinn Emanuel Urquhart & Sullivan
25

CV 04-9049 DOC – 2/1/2011 – Day 10, Volume 1 of 4

4

# I N D E X

| WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
|-----------|--------|-------|----------|---------|
| BRYANT, Carter | | | | |
| By Mr. Price | 8 | | | |

### EXHIBITS

| EXHIBIT NO. | IDENTIFICATION | IN EVIDENCE |
|-------------|----------------|-------------|
| 1-2     Typed description of Bratz | | 100 |
| 5-00089 Carter Bryant drawing | | 11 |
| 5-43    Carter Bryant handwritten notes | | 19 |
| 5-00027 Carter Bryant drawing | | 80 |
| 5-00026 Carter Bryant drawing | | 80 |
| 5-89    Carter Bryant sculpt drawing | | 81 |
| 5-00080 Carter Bryant drawing | | 81 |
| 5-00081 Carter Bryant drawing | | 82 |
| 5-00082 Carter Bryant drawing | | 82 |
| 5-00083 Carter Bryant drawing | | 83 |
| 5-00108 Carter Bryan drawing of Jade (evening wear) | | 85 |
| 5-79    Drawing of Bratz – Hallidae | | 98 |
| 10-00002 Carter Bryant drawing | | 86 |
| 779-00001 Drawing of four Bratz characters | | 94 |

1                    **EXHIBITS (Continued)**

2    **EXHIBIT NO.**                **IDENTIFICATION**      **IN EVIDENCE**

3      8738      Summary of royalty                        59
                 payments to Mr. Carter
4                for Bratz

5     10200      Royalty statement for                     39
                 quarter ending 6/30/2010
6

      10201      Royalty statement for                     40
7                quarted ending 6/30/2002

8     10202      Royalty statement for                     41
                 quarter ending 6/30/2003
9

      11225      Royalty statement for                     42
10               quarter ending
                 12/31/2001
11

      11226      Royalty statement dated                   43
12               12/31/2003

13    11228      Royalty statement for                     42
                 quarter ending
14               12/31/2002

15    11229      Royalty statement for                     45
                 quarter ending 3/31/2002
16

      11230      Royalty statement                         61
17               quarter ending
                 12/31/2005
18

      11239      Royalty statement for                     62
19               quarter ending
                 12/31/2004
20

      11240      Royalty statement for                     62
21               quarter ending 9/30/2005

22    11359      Royalty statement for                     63
                 quarter ending 6/30/2004
23

      11559      Royalty statement for                     63
24               quarter ending 9/30/2004

25    13622      Statements of royalties                   37

CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

6

|  | **EXHIBITS** (Continued) |  |
|---|---|---|
| **EXHIBIT NO.** | **IDENTIFICATION** | **IN EVIDENCE** |
| 16789 | E-mail from Mr. Larian to Mr. Carter dated 10/5/2000 | 24 |
| 21927-00001 | Royalty statement for quarter ending 9/30/2006 | 29 |
| 21931-00001 | Royalty statement for quarter ending 6/30/2006 | 30 |
| 27047 | Royalty statements | 31 |
| 27127 | Royalty statement for the quarter ending 3/31/2002 | 34 |
| 27189 | Royalty statement for quarter ending 6/30/2008 | 34 |
| 27301 | Royalty statement for quarter ending 9/30/2002 | 36 |

Case 2:04-cv-09049-DOC-RNB  Document 9771  Filed 02/03/11  Page 7 of 113  Page ID #:293196
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

7

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | **SANTA ANA, CALIFORNIA, TUESDAY, FEBRUARY 1, 2011**         |
|       | 2  | **Day 10, Volume 1 of 4**                                    |
|       | 3  | (8:31 a.m.)                                                  |
| 08:31 | 4  | *(In the presence of the jury.)*                             |
| 08:31 | 5  | THE COURT:  All right.  Counsel, thank you for               |
| 08:31 | 6  | your courtesy.  If you would be seated, please.              |
| 08:31 | 7  | The jury is present.  The alternates are present,            |
| 08:31 | 8  | and counsel for both MGA, Mattel and Bryant.                 |
| 08:31 | 9  | Now, let me chose one counsel for each side.                 |
| 08:31 | 10 | Mr. McConville, I think, is in the hallway.                  |
| 08:32 | 11 | Mr. Price, if you would go out in the hallway.  It           |
| 08:32 | 12 | appears to be 8:30.                                          |
| 08:33 | 13 | MR. PRICE:  Your Honor, I've been told by                    |
| 08:33 | 14 | Mr. McConville that he's a few minutes away.                 |
| 08:33 | 15 | THE COURT:  Both parties are going to be able to             |
| 08:33 | 16 | have Mr. Bryant come into court in just a moment.  And so    |
| 08:33 | 17 | the time clock is not running for either party at the        |
| 08:33 | 18 | present time.  And this does not reflect on either party.    |
| 08:33 | 19 | *(Mr. McConville enters the courtroom.)*                     |
| 08:35 | 20 | MR. McCONVILLE:  He's on his way, Your Honor.                |
| 08:35 | 21 | THE COURT:  Mr. Price and Mr. McConville, thank              |
| 08:35 | 22 | you.                                                         |
| 08:36 | 23 | This the off the record.                                     |
| 08:36 | 24 | *(Pause in the proceedings at 8:36 a.m.)*                    |
| 08:39 | 25 | *(Proceedings resumed at 8:41 a.m.)*                         |

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 8 of 113   Page ID #:293197
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

8

| | | |
|---|---|---|
| 08:41 | 1 | THE COURT:  All right.  Mr. Bryant is on the |
| 08:41 | 2 | witness stand.  The jury and alternates are present.  All |
| 08:41 | 3 | counsel, the parties are present. |
| 08:41 | 4 | And this is Mr. Price's continuing examination. |
| 08:41 | 5 | MR. PRICE:  Thank you. |
| 08:41 | 6 | **CARTER BRYANT, MATTEL'S WITNESS, PREVIOUSLY SWORN,** |
| 08:41 | 7 | **RESUMED THE STAND** |
| 08:41 | 8 | **DIRECT EXAMINATION (Resumed)** |
| 08:41 | 9 | BY MR. PRICE: |
| 08:41 | 10 | Q.   Good morning, Mr. Bryant. |
| 08:41 | 11 | A.   Good morning. |
| 08:41 | 12 | Q.   I wanted to ask you about the sculpt for the Bratz. |
| 08:41 | 13 | And if we could put before you Exhibit 11386 -- I'm sorry. |
| 08:41 | 14 | It's 1136. |
| 08:41 | 15 | Do you have that in front of you? |
| 08:41 | 16 | A.   Yes. |
| 08:41 | 17 | Q.   And could you take that out of the bag there and kind |
| 08:42 | 18 | of look at it. |
| 08:42 | 19 | Is that one of the first sculpts that Ms. Leahy did for |
| 08:42 | 20 | you? |
| 08:42 | 21 | A.   I believe it's a casting of one of the first sculpts. |
| 08:42 | 22 | Q.   If you could kind of hold it up and show it to the |
| 08:42 | 23 | jury. |
| 08:42 | 24 | A.   (Witness complies.) |
| 08:42 | 25 | Q.   When you say "casting," what do you mean? |

| | | |
|---|---|---|
| 08:42 | 1 | A.   I mean, it's not an actual clay sculpt. |
| 08:42 | 2 | Q.   Uh-huh.  Explain to us what a casting is. |
| 08:42 | 3 | A.   A casting is basically where a mold is made and -- so |
| 08:42 | 4 | kind of a material is poured into it to create something |
| 08:42 | 5 | like this. |
| 08:42 | 6 | Q.   Now, if you look at what you've called the casting |
| 08:42 | 7 | there, did you have any issues with that? |
| 08:43 | 8 | A.   Are you talking about the casting itself or the sculpt? |
| 08:43 | 9 | Q.   The sculpt. |
| 08:43 | 10 | A.   Um, I think so.  I don't remember exactly what they |
| 08:43 | 11 | were.  But I -- I think so. |
| 08:43 | 12 | Q.   I mean, after you received the sculpt that was -- that |
| 08:43 | 13 | that casting was based on, you gave Ms. Leahy comments, |
| 08:43 | 14 | correct? |
| 08:43 | 15 | A.   Yes. |
| 08:43 | 16 | Q.   And you wanted the eventual sculpt to look as close as |
| 08:43 | 17 | possible to how you envisioned the Bratz, correct? |
| 08:43 | 18 | A.   Yes. |
| 08:43 | 19 | Q.   And if you look at that casting of the sculpt -- I |
| 08:43 | 20 | mean, the thighs on that are a little bigger than you would |
| 08:43 | 21 | envision; is that right? |
| 08:43 | 22 | A.   Um, I think so, yes. |
| 08:43 | 23 | Q.   Are there other things on that which are different than |
| 08:43 | 24 | how you envisioned the Bratz to look like? |
| 08:43 | 25 | A.   Um, looking at it now, I don't remember exactly. |

| | | |
|---|---|---|
| 08:44 | 1 | Q.    Okay.  If we look at 302, which is part of the |
| 08:44 | 2 | presentation, I believe, on September 1st. |
| 08:44 | 3 | (Document displayed.) |
| 08:44 | 4 | BY MR. PRICE: |
| 08:44 | 5 | Q.   And if you look, say, at 302-0005. |
| 08:44 | 6 | (Document displayed.) |
| 08:44 | 7 | THE WITNESS:  Okay. |
| 08:44 | 8 | BY MR. PRICE: |
| 08:44 | 9 | Q.    If you compare that to that first sculpt, you notice |
| 08:44 | 10 | that the sculpt has somewhat thicker calves, looks like |
| 08:45 | 11 | thicker thighs.  Do you see that? |
| 08:45 | 12 | A.    I'm sorry.  Are you talking about the sculpt? |
| 08:45 | 13 | Q.    Yeah.  If you compare that to what you have in front of |
| 08:45 | 14 | you, the sculpt. |
| 08:45 | 15 | A.    Yes. |
| 08:45 | 16 | Q.    So when you saw that, you didn't say -- by "that" I'm |
| 08:45 | 17 | talking about the cast of the sculpt -- you didn't say, |
| 08:45 | 18 | "That's great.  Let's go with it," correct? |
| 08:45 | 19 | A.    Right. |
| 08:45 | 20 | Q.    Instead, you gave Ms. Leahy comments to try to get her |
| 08:45 | 21 | closer to what you envisioned the Bratz to be, correct? |
| 08:45 | 22 | A.    Yes. |
| 08:45 | 23 | Q.    And if we look at Exhibit 5-89, can you tell us what |
| 08:46 | 24 | that is? |
| 08:46 | 25 | A.    I think that is the drawing that I gave to Mr. Leahy. |

CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

11

| 08:46 | 1 | MR. PRICE: Your Honor, I move Exhibit 5-00089 |
| 08:46 | 2 | into evidence. |
| 08:46 | 3 | THE COURT: Received. |
| 08:46 | 4 | *(Exhibit No. 5-00089 received in evidence.)* |
| 08:46 | 5 | *(Document displayed.)* |
| 08:46 | 6 | BY MR. PRICE: |
| 08:46 | 7 | Q.   So this is a drawing that you did, correct? |
| 08:46 | 8 | A.   Yes. |
| 08:46 | 9 | Q.   And it's a drawing that you gave to Steve Linker around |
| 08:46 | 10 | October 19th, correct? |
| 08:46 | 11 | A.   I don't remember if I gave that drawing to him or not. |
| 08:46 | 12 | MR. PRICE: So let's blow that up a little bit, |
| 08:46 | 13 | Ken. |
| 08:46 | 14 | *(Technician complies.)* |
| 08:46 | 15 | BY MR. PRICE: |
| 08:46 | 16 | Q.   Now, as a designer, the best way, you thought, for you |
| 08:46 | 17 | to communicate how you wanted the sculpt to change was to |
| 08:46 | 18 | give Ms. Leahy a drawing, right? |
| 08:46 | 19 | A.   Yes. |
| 08:46 | 20 | Q.   And you gave her this drawing so that she could restart |
| 08:47 | 21 | the sculpt, get it closer to what you had envisioned, |
| 08:47 | 22 | correct? |
| 08:47 | 23 | A.   I believe so, yes. |
| 08:47 | 24 | Q.   And the sculpt that was made from this drawing that you |
| 08:47 | 25 | gave Ms. Leahy became what you believe is the final sculpt, |

| | | |
|---|---|---|
| 08:47 | 1 | correct? |
| 08:47 | 2 | A.    I -- I think so. |
| 08:47 | 3 | Q.    Let's see if this refreshes your recollection.  If you |
| 08:47 | 4 | would look at -- we're talking about Volume III, November 8, |
| 08:47 | 5 | 2004, page 528, lines 3 through 20. |
| 08:48 | 6 | A.    Okay. |
| 08:48 | 7 | Q.    Does that refresh your recollection? |
| 08:48 | 8 | A.    Uh, yes. |
| 08:48 | 9 | Q.    All right.  So to the best of your knowledge, |
| 08:48 | 10 | Exhibit 5-89, became the final sculpt, correct? |
| 08:48 | 11 | A.    I'm sorry.  What was your question? |
| 08:48 | 12 | Q.    To the best of your knowledge, the sculpt that was |
| 08:48 | 13 | created from this drawing became the final sculpt, correct? |
| 08:48 | 14 | A.    I believe so, yes. |
| 08:48 | 15 | Q.    And, obviously, if you gave this to Mr. Linker on |
| 08:49 | 16 | October 19, then this drawing was done sometime before you |
| 08:49 | 17 | left Mattel, right? |
| 08:49 | 18 | A.    Um, well, I don't remember giving that drawing to |
| 08:49 | 19 | Mr. Linker.  I don't remember whether I did or not. |
| 08:49 | 20 | Q.    Is the handwriting on this drawing yours? |
| 08:49 | 21 | A.    Um, I believe some of it is, yes. |
| 08:49 | 22 | Q.    And could you show the jury which part is yours? |
| 08:49 | 23 | A.    Um, I believe the part that says, "top of head, rooting |
| 08:49 | 24 | line, separation line, actual proportion, actual size." |
| 08:49 | 25 | Q.    And do you know whose handwriting is the rest -- the |

| | | |
|---|---|---|
| 08:49 | 1 | other handwriting, do you know whose that is on the exhibit? |
| 08:49 | 2 | A.   I -- no, I don't. |
| 08:49 | 3 | Q.   Now, let me ask you a little bit about what you knew |
| 08:50 | 4 | from your experience at Mattel with respect to dolls.  And |
| 08:50 | 5 | I'm correct that prior to working with MGA, your training |
| 08:50 | 6 | for dolls and the toy industry came from Mattel, correct? |
| 08:50 | 7 | A.   Uh, yes. |
| 08:50 | 8 | Q.   So at the time that you -- say, the September/October |
| 08:50 | 9 | timeframe in 2000, you knew that doll concepts were valuable |
| 08:50 | 10 | to a company? |
| 08:50 | 11 | A.   Yes. |
| 08:50 | 12 | Q.   And that things like drawings and designs for |
| 08:50 | 13 | unreleased dolls, dolls that weren't on the market, were |
| 08:50 | 14 | valuable to a company? |
| 08:50 | 15 | A.   Uh, yes. |
| 08:50 | 16 | Q.   You knew that names associated with certain dolls were |
| 08:50 | 17 | valuable to a company? |
| 08:50 | 18 | A.   I didn't know a whole lot about names. |
| 08:51 | 19 | Q.   Well, these designs that you had created, you had |
| 08:51 | 20 | attached the name "Bratz" to them, correct? |
| 08:51 | 21 | A.   Yes. |
| 08:51 | 22 | Q.   To this collection of four personalities? |
| 08:51 | 23 | A.   Yes. |
| 08:51 | 24 | Q.   And you thought that that concept of attaching the name |
| 08:51 | 25 | "Bratz" to these particular four personalities, that that |

| | | |
|---|---|---|
| 08:51 | 1 | was something that was valuable? |
| 08:51 | 2 | A.   Uh, yes. |
| 08:51 | 3 | Q.   And if that were something that -- well, let me strike |
| 08:51 | 4 | that. |
| 08:51 | 5 | You would not have wanted someone to take that design |
| 08:51 | 6 | and that name attached to those personalities from you, |
| 08:51 | 7 | correct? |
| 08:51 | 8 | A.   Well, um, no. |
| 08:51 | 9 | Q.   You mean what I said was correct? |
| 08:51 | 10 | A.   Yes. |
| 08:52 | 11 | Q.   And when you talked to MGA in 2000, you had some idea |
| 08:52 | 12 | of the steps that would have to be taken to actually |
| 08:52 | 13 | manufacture a doll, right? |
| 08:52 | 14 | A.   Um, some yes. |
| 08:52 | 15 | MS. KELLER:  Objection.  Vague as to what "some |
| 08:52 | 16 | idea" is. |
| 08:52 | 17 | THE COURT:  Just restate the question, Counsel. |
| 08:52 | 18 | Sustained. |
| 08:52 | 19 | BY MR. PRICE: |
| 08:52 | 20 | Q.   You had some idea in the summer of 2000? |
| 08:52 | 21 | THE COURT:  Counsel, that was just the objection, |
| 08:52 | 22 | wasn't it? |
| 08:52 | 23 | MR. PRICE:  Okay. |
| 08:52 | 24 | BY MR. PRICE: |
| 08:52 | 25 | Q.   Okay.  You had some idea by September 2000 of what |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 08:52 | 1 | steps would have to be taken in order for the designs that |
| 08:52 | 2 | you brought to MGA to become a doll line? |
| 08:52 | 3 | MS. KELLER:  Objection.  Vague. |
| 08:52 | 4 | THE COURT:  Overruled. |
| 08:52 | 5 | You can answer that question. |
| 08:52 | 6 | THE WITNESS:  Yes. |
| 08:53 | 7 | THE COURT:  Counsel, what you're talking about are |
| 08:53 | 8 | designs, draftings, drawings; is that correct? |
| 08:53 | 9 | MR. PRICE:  Yes. |
| 08:53 | 10 | THE COURT:  Thank you.  The objection's overruled. |
| 08:53 | 11 | BY MR. PRICE: |
| 08:53 | 12 | Q.   So, for example, you would need a design, right? |
| 08:53 | 13 | A.   Yes. |
| 08:53 | 14 | Q.   You would need to find vendors; that is, people from |
| 08:53 | 15 | whom you could get parts for the doll, right? |
| 08:53 | 16 | A.   Sometimes, yes. |
| 08:53 | 17 | Q.   And you had to do that for the Bratz doll line? |
| 08:53 | 18 | A.   Yes. |
| 08:53 | 19 | Q.   And you would need a sculptor? |
| 08:53 | 20 | A.   Yes. |
| 08:53 | 21 | Q.   If it's a fashion doll, you would need samplemakers? |
| 08:54 | 22 | A.   Yes. |
| 08:54 | 23 | Q.   And in the September/October 2000 timeframe, before you |
| 08:54 | 24 | left Mattel -- I mean, Bratz had a designer:  You? |
| 08:54 | 25 | A.   Yes. |

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 16 of 113   Page ID
#:293205
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

16

| | | |
|---|---|---|
| 08:54 | 1 | Q.   And in September of 2000, again, before you left |
| 08:54 | 2 | Mattel, you had contacted Universal for the hair, correct? |
| 08:54 | 3 | A.   Yes. |
| 08:54 | 4 | Q.   And this was hair, serapin *(sic)* hollow hair, which had |
| 08:54 | 5 | not been used by MGA before, correct? |
| 08:54 | 6 | MS. KELLER:  Objection.  No foundation. |
| 08:54 | 7 | THE COURT:  Well, if you know, you can answer that |
| 08:54 | 8 | question. |
| 08:54 | 9 | THE WITNESS:  I don't know if they had used it |
| 08:54 | 10 | before. |
| 08:54 | 11 | BY MR. PRICE: |
| 08:54 | 12 | Q.   Why did you think that particular type of hair would be |
| 08:55 | 13 | good for the Bratz doll line? |
| 08:55 | 14 | A.   I just -- I just thought it was nice hair. |
| 08:55 | 15 | Q.   For a fashion doll, one of the things that the |
| 08:55 | 16 | customer's going to do is play with the hair, comb the hair, |
| 08:55 | 17 | things like that, right? |
| 08:55 | 18 | A.   Yes. |
| 08:55 | 19 | Q.   So hair is a fairly important ingredient for a fashion |
| 08:55 | 20 | doll line, right? |
| 08:55 | 21 | A.   Yes. |
| 08:55 | 22 | Q.   So in that context, then, can you tell us why you |
| 08:55 | 23 | picked or wanted this saran hollow hair?  What's its |
| 08:55 | 24 | advantage? |
| 08:55 | 25 | A.   I just remember thinking that it was, like I said, nice |

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 17 of 113   Page ID #:293206
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

17

| | | |
|---|---|---|
| 08:55 | 1 | hair, had a nice shine to it. |
| 08:55 | 2 | Q.   And for the sculptor, you met with Ms. Leahy in |
| 08:55 | 3 | September of 2000, correct? |
| 08:55 | 4 | A.   Uh, yes. |
| 08:55 | 5 | Q.   And worked with her on the Bratz sculpt at least up |
| 08:56 | 6 | through the time that you left Mattel, correct? |
| 08:56 | 7 | A.   Yes. |
| 08:56 | 8 | Q.   Had several meetings with her before you left Mattel, |
| 08:56 | 9 | correct? |
| 08:56 | 10 | A.   Uh, I only remember a couple of meetings. |
| 08:56 | 11 | Q.   And in those couple of meetings before you left Mattel, |
| 08:56 | 12 | you provided input to her so that the final sculpt would get |
| 08:56 | 13 | as close as possible to your vision for the Bratz doll line? |
| 08:56 | 14 | A.   Uh, yes. |
| 08:56 | 15 | Q.   Now, for the samplemakers, for the Bratz doll line, |
| 08:56 | 16 | that was initially done by Ms. Marlow, correct? |
| 08:56 | 17 | A.   I'm sorry.  What now? |
| 08:56 | 18 | Q.   For the samplemakers, that work was done, at least for |
| 08:56 | 19 | a while, by Veronica Marlow, correct? |
| 08:56 | 20 | A.   Yes. |
| 08:56 | 21 | Q.   And you met with her in the September/October timeframe |
| 08:56 | 22 | before you left Mattel, correct? |
| 08:56 | 23 | A.   Yes. |
| 08:57 | 24 | Q.   I'm supposed to say face painter.  You're going to need |
| 08:57 | 25 | someone to paint the faces, correct? |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 18 of 113   Page ID #:293207
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

18

| | | |
|---|---|---|
| 08:57 | 1 | A.   Yes. |
| 08:57 | 2 | Q.   And you knew Anna Rhee? |
| 08:57 | 3 | A.   Yes. |
| 08:57 | 4 | Q.   And you met with her in the June/July timeframe in |
| 08:57 | 5 | 2000, correct? |
| 08:57 | 6 | MS. KELLER:  Objection.  No foundation. |
| 08:57 | 7 | THE COURT:  Just restate the question, Counsel. |
| 08:57 | 8 | BY MR. PRICE: |
| 08:57 | 9 | Q.   You met with her in the June or July 2000 timeframe, |
| 08:57 | 10 | correct? |
| 08:57 | 11 | MS. KELLER:  Objection.  No foundation. |
| 08:57 | 12 | THE COURT:  Well, I'm not sure. |
| 08:57 | 13 | You can answer the question. |
| 08:57 | 14 | THE WITNESS:  Um, I don't recall meeting with her |
| 08:57 | 15 | during that timeframe. |
| 08:57 | 16 | BY MR. PRICE: |
| 08:57 | 17 | Q.   Now, are you saying that it didn't happen or it did |
| 08:57 | 18 | happen or you just can't say one way or the other? |
| 08:57 | 19 | A.   No.  I met with her.  I just -- I don't remember |
| 08:57 | 20 | exactly when. |
| 08:57 | 21 | Q.   You had someone at Mattel do some face painting for |
| 08:57 | 22 | you, correct? |
| 08:57 | 23 | A.   Yes. |
| 08:58 | 24 | Q.   And that was what? -- in the July/August 2000 |
| 08:58 | 25 | timeframe? |

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 19 of 113   Page ID #:293208
CV 04-9049 DOC - 2/17/2011 - Day 10, Volume 1 of 4

19

| | | |
|---|---|---|
| 08:58 | 1 | MS. KELLER:  Objection.  No foundation. |
| 08:58 | 2 | THE COURT:  Well, I think he's already answered |
| 08:58 | 3 | that question.  He doesn't recall. |
| 08:58 | 4 | MR. PRICE:  No.  I'm talking about the one at |
| 08:58 | 5 | Mattel. |
| 08:58 | 6 | THE COURT:  Oh, my apologies. |
| 08:58 | 7 | You can answer that question. |
| 08:58 | 8 | THE WITNESS:  I, actually -- I don't remember |
| 08:58 | 9 | exactly when that happened. |
| 08:58 | 10 | BY MR. PRICE: |
| 08:58 | 11 | Q.   Let me show you Exhibit 5-43. |
| 08:58 | 12 | (Document provided to witness.) |
| 08:58 | 13 | BY MR. PRICE: |
| 08:59 | 14 | Q.   And do you recognize 5-43? |
| 08:59 | 15 | A.   Yes. |
| 08:59 | 16 | Q.   And these are your handwritten notes about the |
| 08:59 | 17 | personalities of the Bratz, correct? |
| 08:59 | 18 | A.   Yes. |
| 08:59 | 19 | MR. PRICE:  Move Exhibit five forty-three into |
| 08:59 | 20 | evidence. |
| 08:59 | 21 | THE COURT:  Received. |
| 08:59 | 22 | (Exhibit No. 5-43 received in evidence.) |
| 08:59 | 23 | (Document displayed.) |
| 08:59 | 24 | MR. PRICE:  If we can blow that up a bit. |
| 08:59 | 25 | (Technician complies.) |

| | | |
|---|---|---|
| 08:59 | 1 | BY MR. PRICE: |
| 08:59 | 2 | Q.   Mr. Bryant, why did you think it was important to have |
| 08:59 | 3 | these personalities associated with four different dolls? |
| 08:59 | 4 | A.   Um, I just remembered that that was just kind of the |
| 09:00 | 5 | original concept. |
| 09:00 | 6 | Q.   And one of the things you wanted to do was to have |
| 09:00 | 7 | these back stories for these persons -- for these dolls, |
| 09:00 | 8 | correct? |
| 09:00 | 9 | A.   Uh, yes. |
| 09:00 | 10 | Q.   And you wanted them to have different personalities |
| 09:00 | 11 | because if you buy one, then you might want to buy the |
| 09:00 | 12 | other? |
| 09:00 | 13 | A.   Yes. |
| 09:00 | 14 | Q.   And the idea here was -- was to have a doll line called |
| 09:00 | 15 | "the Bratz," right? |
| 09:00 | 16 | A.   Yes. |
| 09:00 | 17 | Q.   And if you look at your handwritten notes, where it |
| 09:00 | 18 | says "Meet Zoe."  Do you see that? |
| 09:00 | 19 | A.   Yes. |
| 09:00 | 20 | Q.   And then it says "AKA Angel."  Do you see that? |
| 09:00 | 21 | A.   Excuse me.  Yes. |
| 09:00 | 22 | Q.   So it would have been -- you would have wanted it to be |
| 09:01 | 23 | confidential:  The personalities of the dolls, the names of |
| 09:01 | 24 | the dolls, the design of the dolls, and the name of the doll |
| 09:01 | 25 | line, Bratz, correct? |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 21 of 113   Page ID #:293210
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

21

| | | |
|---|---|---|
| 09:01 | 1 | A.   I think the -- the design.  I don't really remember the |
| 09:01 | 2 | names being such a big deal to me at the time. |
| 09:01 | 3 | Q.   You mean, the names of the individual dolls? |
| 09:01 | 4 | A.   Right.  Just the names in general. |
| 09:01 | 5 | Q.   How about the name of the line itself:  Bratz? |
| 09:01 | 6 | A.   Even that, I don't remember feeling particularly |
| 09:01 | 7 | attached to. |
| 09:01 | 8 | Q.   Well, prior to August or September 2000, the only other |
| 09:01 | 9 | entity you had submitted that name to, and those names, was |
| 09:01 | 10 | Alaska Momma? |
| 09:01 | 11 | A.   Yes. |
| 09:01 | 12 | Q.   And you didn't let those names or that name be known |
| 09:02 | 13 | within Mattel; is that right? |
| 09:02 | 14 | A.   Uh, I don't remember.  I don't think so. |
| 09:02 | 15 | Q.   And you considered that these personalities of the |
| 09:02 | 16 | dolls, associated with the dolls, you wanted that to remain |
| 09:02 | 17 | secret until you attempted to sell this, right? |
| 09:02 | 18 | A.   Again, I don't really recall the personality |
| 09:02 | 19 | descriptions being all that important to me. |
| 09:02 | 20 | Q.   Were they the same personality descriptions that you |
| 09:02 | 21 | presented to MGA in August/September 2000? |
| 09:02 | 22 | A.   I think they were close, yes. |
| 09:02 | 23 | Q.   And if we look at 302. |
| 09:02 | 24 | *(Document displayed.)* |
| | 25 | |

22

| | | |
|---|---|---|
| 09:02 | 1 | BY MR. PRICE: |
| 09:02 | 2 | Q.   Let's look at, for example, 302-0003.  You see the |
| 09:03 | 3 | description:  "She's the queen of cool at school with her |
| 09:03 | 4 | short, dark brown hair and funky stomping jeans (sic)," |
| 09:03 | 5 | right? |
| 09:03 | 6 | A.   Yes. |
| 09:03 | 7 | Q.   And look at your handwritten notes:  "Zoe, she's the |
| 09:03 | 8 | queen of cool in class in her short, dark brown hair and |
| 09:03 | 9 | funky stompin' sneaks."  Do you see that? |
| 09:03 | 10 | A.   Yes. |
| 09:03 | 11 | Q.   So you would agree that the personalities you |
| 09:03 | 12 | attributed to these dolls were the personalities that you |
| 09:03 | 13 | presented to MGA? |
| 09:03 | 14 | A.   Yes. |
| 09:03 | 15 | Q.   And you wanted this package; that is, the four dolls, |
| 09:04 | 16 | the four personalities, the names you suggested, the Bratz |
| 09:04 | 17 | name -- together as a package, you wanted that to remain |
| 09:04 | 18 | secret unless you presented it to someone, right? |
| 09:04 | 19 | A.   Um, I don't remember exactly how I felt about that. |
| 09:04 | 20 | Q.   Certainly, you wanted the designs to be secret? |
| 09:04 | 21 | A.   Yes. |
| 09:04 | 22 | Q.   And then with respect to the steps that we talked |
| 09:04 | 23 | about, the steps to move forward to manufacture the Bratz, |
| 09:04 | 24 | you had made efforts to move that forward -- do the design, |
| 09:04 | 25 | find a vendor, find a sculptor, deal with samplemakers, even |

| 09:05 | 1 | find a face painter -- you did all that before you left |
| 09:05 | 2 | Mattel? |
| 09:05 | 3 | A.   Yes. |
| 09:05 | 4 | Q.   So by the time you had joined MGA, you were able to |
| 09:05 | 5 | present to them a plan with names attached, vendors, |
| 09:05 | 6 | sculptors, samplemakers, to create a brand of dolls? |
| 09:05 | 7 | A.   Uh, yes. |
| 09:05 | 8 | Q.   And in your early discussions with Mr. Larian, he told |
| 09:05 | 9 | you he wanted to build a brand around these dolls, right? |
| 09:05 | 10 | A.   I don't remember exactly what he said. |
| 09:05 | 11 | Q.   Well, did he say that based on what you had done while |
| 09:06 | 12 | you were at Mattel, that he was willing to spend millions of |
| 09:06 | 13 | dollars to create a Bratz brand? |
| 09:06 | 14 | A.   Again, I don't remember exactly what he said about |
| 09:06 | 15 | that. |
| 09:06 | 16 | Q.   Well, did he say that he was willing to commit the |
| 09:06 | 17 | resources of his company and millions of dollars to follow |
| 09:06 | 18 | your dream of creating the Bratz doll line? |
| 09:06 | 19 | A.   Again, I don't really remember exactly what he said. |
| 09:06 | 20 | Q.   What was his reaction to what you had done to get this |
| 09:06 | 21 | Bratz doll line moving? |
| 09:06 | 22 | A.   Um, I don't recall one way or the other. |
| 09:06 | 23 | Q.   As of October 5th, did Mr. Larian say something to you |
| 09:07 | 24 | that he wanted you to start moving forward and focusing all |
| 09:07 | 25 | your time on developing this? |

| | | |
|---|---|---|
| 09:07 | 1 | A.    Um, something to that effect, I believe. |
| 09:07 | 2 | Q.    If we could look at Exhibit 16789. |
| 09:07 | 3 | (Document provided to the witness.) |
| 09:07 | 4 | BY MR. PRICE: |
| 09:07 | 5 | Q.    Is Exhibit 16789, at least the first e-mail there, an |
| 09:07 | 6 | e-mail from Mr. Larian to you, dated October 5, 2000? |
| 09:07 | 7 | A.    Yes. |
| 09:07 | 8 | MR. PRICE:  Your Honor, move Exhibit 16789 into |
| 09:08 | 9 | evidence. |
| 09:08 | 10 | THE COURT:  Received. |
| 09:08 | 11 | (Exhibit No. 16789 received in evidence.) |
| 09:08 | 12 | (Document displayed.) |
| 09:08 | 13 | MR. PRICE:  If we can focus on the lower -- thank |
| 09:08 | 14 | you. |
| 09:08 | 15 | BY MR. PRICE: |
| 09:08 | 16 | Q.    So this is the e-mail that was sent to you, again, |
| 09:08 | 17 | while you were still working at Mattel, right? |
| 09:08 | 18 | A.    Yes. |
| 09:08 | 19 | Q.    And at the bottom it says, "Isaac" -- "from Isaac |
| 09:08 | 20 | Larian"? |
| 09:08 | 21 | A.    Yes. |
| 09:08 | 22 | Q.    And the first sentence, "Now, that we have the |
| 09:08 | 23 | agreement in place, we need you and Paula to focus |
| 09:08 | 24 | 200 percent on getting this done."  Do you recall that? |
| 09:08 | 25 | A.    Yes. |

CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

25

| | | |
|---|---|---|
| 09:08 | 1 | Q.   It says, "Think different.  Think the fashion.  Think |
| 09:08 | 2 | and design the accessories."  So he was looking to you to |
| 09:08 | 3 | design the accessories for Bratz, right? |
| 09:08 | 4 | A.   Um, I -- I don't know exactly what his thoughts were on |
| 09:08 | 5 | that, about the accessories.  I -- I designed some of them, |
| 09:08 | 6 | yes. |
| 09:08 | 7 | Q.   Well, you received this e-mail in early October, asking |
| 09:08 | 8 | you to think and design the accessories, right? |
| 09:09 | 9 | A.   Yes. |
| 09:09 | 10 | Q.   It says, "Think about the commercial."  Do you see |
| 09:09 | 11 | that? |
| 09:09 | 12 | A.   Yes. |
| 09:09 | 13 | Q.   So as of October 5, Mr. Larian was -- wanted you to |
| 09:09 | 14 | start thinking up ideas -- coming up with ideas for a |
| 09:09 | 15 | commercial, right? |
| 09:09 | 16 | A.   Yes, I believe so. |
| 09:09 | 17 | Q.   "Think about the New York showroom presentation.  We |
| 09:09 | 18 | are thinking a cat walk."  Do you see that? |
| 09:09 | 19 | A.   Yes. |
| 09:09 | 20 | Q.   Do you know what's referred to as the "New York |
| 09:09 | 21 | showroom presentation"? |
| 09:09 | 22 | A.   Um, generally, yes. |
| 09:09 | 23 | Q.   What's that? |
| 09:09 | 24 | A.   Uh, that just would have been the showroom where they |
| 09:09 | 25 | were going to present. |

| | | |
|---|---|---|
| 09:09 | 1 | Q.   And do you have a recollection of about what time of |
| 09:09 | 2 | year that would be? |
| 09:09 | 3 | A.   Uh, I don't -- I think it -- later in the year. |
| 09:09 | 4 | Q.   Later in 2000? |
| 09:09 | 5 | A.   Uh, I'm not sure if it was 2000 or the following year. |
| 09:09 | 6 | Q.   And then in all caps it says, "Think about all the |
| 09:09 | 7 | royalty you are going to make."  Do you see that? |
| 09:10 | 8 | A.   Yes. |
| 09:10 | 9 | Q.   And you were to make a royalty on the sales of Bratz |
| 09:10 | 10 | dolls, right? |
| 09:10 | 11 | A.   Uh, yes, on the ones that I worked on. |
| 09:10 | 12 | Q.   Were you to get a royalty on the sales of your designs? |
| 09:10 | 13 | A.   I'm sorry.  What now? |
| 09:10 | 14 | Q.   Were you to get a royalty -- was it your thought |
| 09:10 | 15 | that -- that your drawings were going to be sold? |
| 09:10 | 16 | A.   Uh, no. |
| 09:10 | 17 | Q.   What you knew that was being referred to here is that |
| 09:10 | 18 | Bratz dolls were going to be sold? |
| 09:10 | 19 | A.   Yes. |
| 09:10 | 20 | Q.   And then you see there's a paragraph talking about, |
| 09:10 | 21 | "This is your big break in business life"? |
| 09:10 | 22 | A.   Yes. |
| 09:10 | 23 | Q.   And the last paragraph, "Now it is up to you.  You need |
| 09:10 | 24 | to put 16 hours a day, starting now, on this and nothing |
| 09:10 | 25 | else.  That is the only way it will happen."  Correct? |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 27 of 113   Page ID #:293216
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

27

09:11   1    A.   Yes.

09:11   2    Q.   And then looking at that paragraph which starts, "This

09:11   3    is your big break," Mr. Larian says, "I have put my whole

09:11   4    resources, money, people, development, et cetera, on this to

09:11   5    make your dream happen, because I believe in young people's

09:11   6    dreams."  Do you see that?

09:11   7    A.   Yes.

09:11   8    Q.   So you understood that as of October 5th, Mr. Larian

09:11   9    was putting his entire resources on building this Bratz

09:11   10   line, correct?

09:11   11   A.   Um, I -- I suppose so, yes.

09:11   12   Q.   As of October 5th, what had you presented to Mr. Larian

09:11   13   to convince him that he should put all of his resources into

09:11   14   creating Bratz?

09:12   15   A.   I -- I don't recall specifically.

09:12   16   Q.   Well, you showed him the designs?

09:12   17   A.   Yes.

09:12   18   Q.   Uh, you discussed the personalities to be associated

09:12   19   with the dolls, right?

09:12   20   A.   Yes.

09:12   21   Q.   You discussed the changeable footwear, right?

09:12   22   A.   Yes.

09:12   23   Q.   And based just on those, he told you he was willing to

09:12   24   put his entire resources on creating the Bratz doll line,

09:12   25   correct?

CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

28

| | | |
|---|---|---|
| 09:12 | 1 | A.   I can't remember if I had presented him anything else |
| 09:12 | 2 | besides those things. |
| 09:12 | 3 | Q.   So it's those things that would be what the decision to |
| 09:13 | 4 | put his entire resources in this would be based on? |
| 09:13 | 5 | MS. KELLER:  Objection.  That calls for |
| 09:13 | 6 | speculation in Mr. Larian's thinking process. |
| 09:13 | 7 | THE COURT:  Sustained. |
| 09:13 | 8 | BY MR. PRICE: |
| 09:13 | 9 | Q.   Prior to October 5th, you had had discussions with |
| 09:13 | 10 | Mr. Larian about -- about a licensing royalty as well, |
| 09:13 | 11 | correct? |
| 09:13 | 12 | A.   Yes. |
| 09:13 | 13 | Q.   Because it was your understanding that -- that MGA |
| 09:13 | 14 | anticipated making, not just the doll line and the |
| 09:13 | 15 | accessories, but also licensing the Bratz name to other |
| 09:13 | 16 | sorts of products, right? |
| 09:13 | 17 | A.   Yes. |
| 09:13 | 18 | Q.   Let me show you a series of exhibits, which I think you |
| 09:13 | 19 | reviewed earlier.  And there's a set of documents here which |
| 09:14 | 20 | appear to be royalty statements, and I want to ask you if |
| 09:14 | 21 | you recognize those as royalty statements that you received |
| 09:14 | 22 | from MGA. |
| 09:14 | 23 | *(Documents provided to the witness.)* |
| 09:14 | 24 | MR. PRICE:  And let's start with 21927. |
| 09:14 | 25 | *(Document displayed.)* |

| | | |
|---|---|---|
| 09:14 | 1 | BY MR. PRICE: |
| 09:15 | 2 | Q.   Mr. Bryant, do you recognize that as a royalty |
| 09:15 | 3 | statement for the quarter ended September 30, 2006? |
| 09:15 | 4 | A.   Yes. |
| 09:15 | 5 |           MR. PRICE:  Your Honor, move Exhibit 21927-00001 |
| 09:15 | 6 | into evidence. |
| 09:15 | 7 |           THE COURT:  Received. |
| 09:15 | 8 |           (Exhibit No. 21927-00001 received in |
| 09:15 | 9 |       evidence.) |
| 09:15 | 10 | BY MR. PRICE: |
| 09:15 | 11 | Q.   And for that quarter, the grand total of your royalty |
| 09:15 | 12 | was about 2.8 million? |
| 09:15 | 13 |           MR. PRICE:  Ken, if we can go to the bottom. |
| 09:15 | 14 |         (Technician complies.) |
| 09:15 | 15 |           THE WITNESS:  It appears to be.  I don't remember |
| 09:15 | 16 | exactly.  But it appears to be. |
| 09:15 | 17 | BY MR. PRICE: |
| 09:15 | 18 | Q.   If we can look at Exhibit 21931. |
| 09:15 | 19 |           (Document provided to the witness.) |
| 09:15 | 20 | BY MR. PRICE: |
| 09:16 | 21 | Q.   Do you recognize that as a royalty statement for the |
| 09:16 | 22 | period ended -- quarter ending June 30, 2006? |
| 09:16 | 23 | A.   Yes. |
| 09:16 | 24 | Q.   And these are royalties for Bratz products that you |
| 09:16 | 25 | were involved with, right? |

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 30 of 113   Page ID #:293219
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

30

| | | |
|---|---|---|
| 09:16 | 1 | THE COURT:  I'm sorry.  Would you take that down. |
| 09:16 | 2 | That's the wrong royalty statement. |
| 09:16 | 3 | MR. PRICE:  It is. |
| 09:16 | 4 | *(Technician complies.)* |
| 09:16 | 5 | MR. PRICE:  So the 21931-0001, Your Honor, I move |
| 09:16 | 6 | that into evidence. |
| 09:16 | 7 | THE COURT:  Received. |
| 09:16 | 8 | *(Exhibit No. 21931-00001 received in* |
| 09:16 | 9 | *evidence.)* |
| 09:16 | 10 | *(Document displayed.)* |
| 09:16 | 11 | BY MR. PRICE: |
| 09:16 | 12 | Q.   You see, with the royalty statements, it describes the |
| 09:16 | 13 | products that you're getting a royalty on, correct? |
| 09:16 | 14 | A.   Yes. |
| 09:16 | 15 | Q.   So, for example, Bratz Back to School Cloe, Bratz Back |
| 09:17 | 16 | to School Phoebe, et cetera, correct? |
| 09:17 | 17 | A.   Yes. |
| 09:17 | 18 | Q.   And each of these royalty statements gives a list of |
| 09:17 | 19 | the particular project that it is that you're getting a |
| 09:17 | 20 | royalty on, correct? |
| 09:17 | 21 | A.   Yes. |
| 09:17 | 22 | MR. PRICE:  Your Honor, move -- I'm sorry. |
| 09:17 | 23 | BY MR. PRICE: |
| 09:17 | 24 | Q.   If you would look at Exhibit 27047. |
| 09:17 | 25 | *(Document provided to the witness.)* |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 31 of 113   Page ID #:293220
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

31

| | | |
|---|---|---|
| 09:17 | 1 | BY MR. PRICE: |
| 09:17 | 2 | Q.   If you can flip through those, Mr. Bryant.  Do you |
| 09:17 | 3 | recognize those as royalty statements for royalties paid to |
| 09:18 | 4 | you? |
| 09:18 | 5 | A.   I believe so, yes. |
| 09:18 | 6 | MR. PRICE:  Your Honor, move Exhibit 27047 into |
| 09:18 | 7 | evidence. |
| 09:18 | 8 | THE COURT:  Received. |
| 09:18 | 9 | *(Exhibit No. 27047 received in evidence.)* |
| 09:18 | 10 | *(Document displayed.)* |
| 09:18 | 11 | BY MR. PRICE: |
| 09:18 | 12 | Q.   So MGA continued to use, with some variations, what you |
| 09:18 | 13 | gave them in the Bratz doll line for years? |
| 09:18 | 14 | A.   Uh, yes. |
| 09:18 | 15 | Q.   Do you have any information that prior to talking to |
| 09:18 | 16 | you, that MGA had plans or the ability to make a fashion |
| 09:19 | 17 | doll? |
| 09:19 | 18 | A.   I think I had heard that they were thinking about doing |
| 09:19 | 19 | one, yes. |
| 09:19 | 20 | Q.   And who had you heard that from? |
| 09:19 | 21 | A.   I think I had heard that from Veronica Marlow. |
| 09:19 | 22 | Q.   She's the one who introduced you -- or before the |
| 09:19 | 23 | August meeting, she introduced you to Ms. Garcia? |
| 09:19 | 24 | A.   Um, yes. |
| 09:19 | 25 | Q.   Did Ms. Garcia or Mr. Larian, when you met with them, |

| | | |
|---|---|---|
| 09:19 | 1 | say that they had plans to do a fashion doll? |
| 09:19 | 2 | A.   I don't remember. |
| 09:19 | 3 | Q.   Did they ever show you any plans to make another |
| 09:19 | 4 | fashion doll before you brought them Bratz? |
| 09:19 | 5 | A.   Not that I remember. |
| 09:19 | 6 | Q.   At the time that you met with MGA, to your knowledge, |
| 09:19 | 7 | did they have a sculptor doing fashion dolls? |
| 09:19 | 8 | A.   I don't know. |
| 09:19 | 9 | Q.   Or a designer doing fashion dolls? |
| 09:19 | 10 | MS. KELLER:  Objection.  Calls for speculation. |
| 09:19 | 11 | No foundation. |
| 09:19 | 12 | THE COURT:  This is as to his knowledge. |
| 09:20 | 13 | He can answer that if he has knowledge about it. |
| 09:20 | 14 | You can answer that, sir. |
| 09:20 | 15 | Overruled. |
| 09:20 | 16 | THE WITNESS:  I -- I don't know. |
| 09:20 | 17 | BY MR. PRICE: |
| 09:20 | 18 | Q.   By the way, these -- the Bratz dolls that were being |
| 09:20 | 19 | sold over the years, did they have the same sculpt? |
| 09:20 | 20 | A.   Um -- |
| 09:20 | 21 | MS. KELLER:  Objection.  No foundation for that. |
| 09:20 | 22 | THE COURT:  Overruled. |
| 09:20 | 23 | THE WITNESS:  I believe there were a couple of |
| 09:20 | 24 | different sculpts used occasionally. |
| | 25 | |

CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

33

| | | |
|---|---|---|
| 09:20 | 1 | BY MR. PRICE: |
| 09:20 | 2 | Q.   And do you know on what doll -- specific doll lines a |
| 09:20 | 3 | different sculpt was used, different from the one that was |
| 09:20 | 4 | made from -- based upon your drawing? |
| 09:20 | 5 | A.   I think it was the Bratz Pixiez. |
| 09:20 | 6 | Q.   Anything else besides the Bratz Pixiez? |
| 09:20 | 7 | A.   I don't know. |
| 09:20 | 8 | Q.   So almost all the Bratz dolls that were sold were based |
| 09:21 | 9 | on the same sculpt, right? |
| 09:21 | 10 | A.   Well, there were other -- other Bratz characters.  The |
| 09:21 | 11 | Kidz, Babyz. |
| 09:21 | 12 | Q.   So other than Pixiez, Kidz, Babyz -- we're talking |
| 09:21 | 13 | about the teenagers, the teenage Bratz dolls.  Almost all of |
| 09:21 | 14 | those were based on the sculpt that you believe was created |
| 09:21 | 15 | based upon your drawing, 5-89? |
| 09:21 | 16 | A.   Yes. |
| 09:21 | 17 | Q.   And certainly the four original dolls all had the same |
| 09:21 | 18 | sculpt, right? |
| 09:21 | 19 | A.   Yes. |
| 09:21 | 20 | Q.   If you'd look at Exhibit 2127 -- 27127. |
| 09:22 | 21 | *(Document provided to the witness.)* |
| 09:22 | 22 | BY MR. PRICE: |
| 09:22 | 23 | Q.   Do you recognize this as a royalty statement that was |
| 09:22 | 24 | sent to you? |
| 09:22 | 25 | A.   Yes. |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 34 of 113   Page ID #:293223
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

34

| | | |
|---|---|---|
| 09:22 | 1 | Q.   And this is for the quarter ended March 31, 2002, |
| 09:22 | 2 | correct? |
| 09:22 | 3 | A.   Yes. |
| 09:22 | 4 | MR. PRICE:  Your Honor, move Exhibit 27127 into |
| 09:22 | 5 | evidence. |
| 09:22 | 6 | THE COURT:  Received. |
| 09:22 | 7 | *(Exhibit No. 27127 received in evidence.)* |
| 09:22 | 8 | *(Document displayed.)* |
| 09:22 | 9 | BY MR. PRICE: |
| 09:22 | 10 | Q.   If you'd look at Exhibit 27189, do you recognize this |
| 09:22 | 11 | as a royalty statement for the quarter ended June 30, 2008? |
| 09:22 | 12 | A.   Yes. |
| 09:23 | 13 | MR. PRICE:  Your Honor, move Exhibit 27189 into |
| 09:23 | 14 | evidence. |
| 09:23 | 15 | THE COURT:  Received. |
| 09:23 | 16 | *(Exhibit No. 27189 received in evidence.)* |
| 09:23 | 17 | *(Document displayed.)* |
| 09:23 | 18 | THE COURT:  Counsel, these are simply being put up |
| 09:23 | 19 | on the board, but they have no meaning. |
| 09:23 | 20 | Aren't you indicating and trying to indicate the |
| 09:23 | 21 | bottom line of what the royalties are for that period?  In |
| 09:23 | 22 | other words, put it back up for a moment. |
| 09:23 | 23 | MR. PRICE:  Sure.  Put that back up. |
| 09:23 | 24 | THE COURT:  Now, watch what's being put up on the |
| 09:23 | 25 | board for a moment.  What's the cumulative total received |

CV 04-9049 DOC - 2/17/2011 - Day 10, Volume 1 of 4

35

| | | |
|---|---|---|
| 09:23 | 1 | for that period? |
| 09:23 | 2 | MR. PRICE:  The cumulative total for that quarter |
| 09:23 | 3 | is -- it's the last page. |
| 09:23 | 4 | *(Document displayed.)* |
| 09:23 | 5 | THE COURT:  All right.  Now, what is the |
| 09:23 | 6 | cumulative royalty for that period? |
| 09:23 | 7 | MR. PRICE:  $137,541.65. |
| 09:23 | 8 | THE COURT:  Now, go back to 27127. |
| 09:23 | 9 | MR. PRICE:  27127, the cumulative total is |
| 09:24 | 10 | $442,074.89. |
| 09:24 | 11 | *(Document displayed.)* |
| 09:24 | 12 | THE COURT:  Counsel, please proceed. |
| 09:24 | 13 | And also, when you put up the last -- put up 27047 |
| 09:24 | 14 | again, the March 31st, 2006. |
| 09:24 | 15 | MR. PRICE:  Certainly. |
| 09:24 | 16 | *(Document displayed.)* |
| 09:24 | 17 | THE COURT:  I don't think the jury has any idea |
| 09:24 | 18 | with just a royalty statement at the top.  That means you've |
| 09:24 | 19 | said it.  Now go down to the bottom. |
| 09:24 | 20 | MR. PRICE:  The bottom of 27047-00072.  Total |
| 09:24 | 21 | royalty is $1,960,562. |
| 09:24 | 22 | THE COURT:  All right.  Thank you.  Now proceed. |
| 09:24 | 23 | (To the Jury:)  In other words, you can see |
| 09:24 | 24 | whether the royalties are increasing, decreasing, the time |
| 09:24 | 25 | periods here, and obviously, you can see from 21927, 21931, |

| 09:25 | 1 | 27047, which is this 2006 time period, what those royalties |
| 09:25 | 2 | look like compared to 2000 and 2002. |
| 09:25 | 3 | Counsel. |
| 09:25 | 4 | BY MR. PRICE: |
| 09:25 | 5 | Q.   And if you'd look at 27301. |
| 09:25 | 6 | (Document provided to the witness.) |
| 09:25 | 7 | BY MR. PRICE: |
| 09:25 | 8 | Q.   Do you recognize this as a royalty statement for the |
| 09:25 | 9 | quarter ended September 30, 2002? |
| 09:26 | 10 | A.   Yes. |
| 09:26 | 11 | MR. PRICE:  Your Honor, move Exhibit 27301 into |
| 09:26 | 12 | evidence. |
| 09:26 | 13 | THE COURT:  Received. |
| 09:26 | 14 | (Exhibit No. 27301 received in evidence.) |
| 09:26 | 15 | (Document displayed.) |
| 09:26 | 16 | BY MR. PRICE: |
| 09:26 | 17 | Q.   Look at the second page.  Total royalty, $1,461,881.19. |
| 09:26 | 18 | A.   Yes. |
| 09:26 | 19 | Q.   Look at Exhibit 13622. |
| 09:27 | 20 | THE COURT:  That would be March 31st, 2007? |
| 09:27 | 21 | MR. PRICE:  Yes.  Quarter ended March 31, 2007. |
| 09:27 | 22 | (Document provided to the witness.) |
| 09:27 | 23 | BY MR. PRICE: |
| 09:27 | 24 | Q.   Do you recognize that, Mr. Bryant? |
| 09:27 | 25 | A.   Yes. |

CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

37

| | | |
|---|---|---|
| 09:27 | 1 | Q.   And do you recognize the format of this particular |
| 09:27 | 2 | statement? |
| 09:27 | 3 | A.   Uh, not particularly.  It looks a little different. |
| 09:27 | 4 | Q.   If you'd look at page 13622-00012 -- |
| 09:28 | 5 | A.   Okay. |
| 09:28 | 6 | Q.   -- you see that has a cumulative total of -- |
| 09:28 | 7 | MR. PRICE:  Oh, wait.  Your Honor, move |
| 09:28 | 8 | Exhibit 13622 into evidence. |
| 09:28 | 9 | THE COURT:  Received. |
| 09:28 | 10 | (Exhibit No. 13622 received in evidence.) |
| 09:28 | 11 | BY MR. PRICE: |
| 09:28 | 12 | Q.   And that has a cumulative total of 1,206,184.  Do you |
| 09:28 | 13 | see that? |
| 09:28 | 14 | A.   Yes. |
| 09:28 | 15 | Q.   Can you tell from the statement itself what that |
| 09:28 | 16 | timeframe is? |
| 09:28 | 17 | A.   Um, not sure exactly what you're asking me. |
| 09:28 | 18 | Q.   Sure.  Let me help.  Look at 13622-0002.  It has |
| 09:28 | 19 | quarter ended March 31, 2007? |
| 09:29 | 20 | A.   Yes. |
| 09:29 | 21 | Q.   And then, if you look at 13622-00013 and -00014, do you |
| 09:29 | 22 | see that those are royalty statements for the quarter ended |
| 09:29 | 23 | June 30, 2007. |
| 09:29 | 24 | A.   I'm sorry.  Which exhibit are we looking at? |
| 09:29 | 25 | Q.   Sure.  Look at 13622-00014. |

| | | |
|---|---|---|
| 09:29 | 1 | *(Document provided to the witness.)* |
| 09:29 | 2 | THE WITNESS:  Yes. |
| 09:29 | 3 | BY MR. PRICE: |
| 09:29 | 4 | Q.   And you see you have royalty payments for the quarter |
| 09:29 | 5 | ended June 30, 2007? |
| 09:29 | 6 | A.   Yes. |
| 09:29 | 7 | Q.   And on page 32, royalties for that quarter are |
| 09:29 | 8 | $1,316,281.57, correct? |
| 09:30 | 9 | A.   I'm sorry.  Which page are you looking at? |
| 09:30 | 10 | Q.   It's TX13622-00044. |
| 09:30 | 11 | A.   Okay. |
| 09:30 | 12 | Q.   And that's 1,316,281, correct? |
| 09:30 | 13 | A.   Yes. |
| 09:30 | 14 | Q.   Now, if you'd look at page 13622-00115 -- have you |
| 09:31 | 15 | found that? |
| 09:31 | 16 | A.   Not yet. |
| 09:31 | 17 | Q.   You see there's a number on the right-hand side, |
| 09:31 | 18 | 33,244,491? |
| 09:31 | 19 | A.   Yes. |
| 09:31 | 20 | Q.   And could you tell us what that is? |
| 09:31 | 21 | A.   I don't know. |
| 09:31 | 22 | Q.   Do you know if that's a cumulative total? |
| 09:31 | 23 | A.   I don't know. |
| 09:32 | 24 | Q.   If you'd look at Exhibit 10200. |
| 09:32 | 25 | *(Document provided to the witness.)* |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

39

| | | |
|---|---|---|
| 09:32 | 1 | BY MR. PRICE: |
| 09:32 | 2 | Q.   Do you recognize that as a royalty statement sent to |
| 09:32 | 3 | you for the quarter ended June 30, 2010? |
| 09:32 | 4 | A.   Yes. |
| 09:32 | 5 | MR. PRICE:  Move Exhibit 10200 into evidence. |
| 09:32 | 6 | THE COURT:  Received. |
| 09:32 | 7 | *(Exhibit No. 10200 received in evidence.)* |
| 09:32 | 8 | *(Document displayed.)* |
| 09:32 | 9 | BY MR. PRICE: |
| 09:32 | 10 | Q.   Now, as of June 30, 2001, at that point Bratz had first |
| 09:33 | 11 | come into the market? |
| 09:33 | 12 | A.   I -- I don't remember exactly when they first came out. |
| 09:33 | 13 | Q.   Well, the royalty statement indicates that by June 30, |
| 09:33 | 14 | 2001, there had been sales of about 1.3 million? |
| 09:33 | 15 | A.   Yes. |
| 09:33 | 16 | Q.   So, obviously, by that time they were on the market? |
| 09:33 | 17 | A.   Yes. |
| 09:33 | 18 | Q.   And you see your royalty there is 39,000.  Do you see |
| 09:33 | 19 | that? |
| 09:33 | 20 | A.   Yes. |
| 09:33 | 21 | Q.   But there's advance royalty of 48,000? |
| 09:33 | 22 | A.   Yes. |
| 09:33 | 23 | Q.   And does that reflect the advances you were getting on |
| 09:33 | 24 | a monthly basis? |
| 09:33 | 25 | A.   Yes. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

40

| 09:33 | 1 | Q.   So the idea was you would get advances on royalty on a |
| 09:33 | 2 | monthly basis, and then that would be -- at least a part of |
| 09:33 | 3 | that would be subtracted from the royalties you were to |
| 09:33 | 4 | receive? |
| 09:33 | 5 | A.   That only happened in the very beginning.  I was |
| 09:33 | 6 | getting the advance before the dolls came out. |
| 09:34 | 7 | Q.   And then once the dolls came out, you didn't need an |
| 09:34 | 8 | advance? |
| 09:34 | 9 | A.   No. |
| 09:34 | 10 | Q.   Is that correct? |
| 09:34 | 11 | A.   Yes. |
| 09:34 | 12 | Q.   If you'd look at 10201. |
| 09:34 | 13 | *(Document provided to the witness.)* |
| 09:34 | 14 | BY MR. PRICE: |
| 09:34 | 15 | Q.   Do you recognize this as royalty statement for the |
| 09:34 | 16 | quarter ended June 30, 2002? |
| 09:34 | 17 | A.   Yes. |
| 09:34 | 18 | Q.   And the balance as of the quarter ended June 30, 2002, |
| 09:34 | 19 | was $398,136.19? |
| 09:34 | 20 | A.   Uh, that's not ringing a bell. |
| 09:34 | 21 | MR. PRICE:  Okay.  Your Honor, move Exhibit 10201 |
| 09:35 | 22 | into evidence. |
| 09:35 | 23 | THE COURT:  Received. |
| 09:35 | 24 | *(Exhibit No. 10201 received in evidence.)* |
| 09:35 | 25 | *(Document displayed.)* |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 09:35 | 1 | BY MR. PRICE: |
| 09:35 | 2 | Q.   If you look at the second page, Mr. Bryant, where it |
| 09:35 | 3 | has the total royalty. |
| 09:35 | 4 | A.   Yes. |
| 09:35 | 5 | Q.   Maybe I misread that.  Could you tell us what that |
| 09:35 | 6 | amount is? |
| 09:35 | 7 | A.   The total royalty? |
| 09:35 | 8 | Q.   Yes. |
| 09:35 | 9 | A.   Looks like 398 -- $398,136.19. |
| 09:35 | 10 | Q.   If you could look now at 10202. |
| 09:35 | 11 | *(Document provided to the witness.)* |
| 09:35 | 12 | BY MR. PRICE: |
| 09:35 | 13 | Q.   This is a royalty statement you got for the quarter |
| 09:35 | 14 | ended June 30, 2003? |
| 09:35 | 15 | A.   Yes. |
| 09:35 | 16 | MR. PRICE:  Move Exhibit 10202 into evidence. |
| 09:35 | 17 | THE COURT:  Received. |
| 09:35 | 18 | *(Exhibit No. 10202 received in evidence.)* |
| 09:35 | 19 | *(Document displayed.)* |
| 09:35 | 20 | BY MR. PRICE: |
| 09:35 | 21 | Q.   If you go to page 4 -- dash, 0004, you see earned |
| 09:36 | 22 | royalty in this quarter was $712,503.22? |
| 09:36 | 23 | A.   Yes. |
| 09:36 | 24 | Q.   Look at Exhibit 11225. |
| 09:36 | 25 | *(Document provided to the witness.)* |

CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

42

| | | |
|---|---|---|
| 09:36 | 1 | BY MR. PRICE: |
| 09:36 | 2 | Q.   Do you recognize this as a royalty statement you |
| 09:36 | 3 | received for the quarter ended December 31, 2001? |
| 09:36 | 4 | A.   Yes. |
| 09:36 | 5 | MR. PRICE:  Move Exhibit 11225 into evidence. |
| 09:36 | 6 | THE COURT:  Received. |
| 09:36 | 7 | *(Exhibit No. 11225 received in evidence.)* |
| 09:36 | 8 | *(Document displayed.)* |
| 09:36 | 9 | BY MR. PRICE: |
| 09:36 | 10 | Q.   And for the quarter ended December 30, 2001, the |
| 09:36 | 11 | royalty was $411,401.74? |
| 09:37 | 12 | A.   Yes. |
| 09:37 | 13 | Q.   If you'd look at Exhibit 11228. |
| 09:37 | 14 | *(Document provided to the witness.)* |
| 09:37 | 15 | BY MR. PRICE: |
| 09:37 | 16 | Q.   Is that a royalty statement you got for the quarter |
| 09:37 | 17 | ended December 31, 2002? |
| 09:37 | 18 | A.   Yes. |
| 09:37 | 19 | Q.   If you could turn to the third page -- |
| 09:37 | 20 | MR. PRICE:  Oh, Your Honor, move Exhibit 11228 |
| 09:37 | 21 | into evidence. |
| 09:37 | 22 | THE COURT:  Received. |
| 09:37 | 23 | *(Exhibit No. 11228 received in evidence.)* |
| 09:37 | 24 | *(Document displayed.)* |
| | 25 | |

CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

43

| | | |
|---|---|---|
| 09:37 | 1 | BY MR. PRICE: |
| 09:37 | 2 | Q.   If you would go to the third page, 11228-0003, you see |
| 09:37 | 3 | a royalty statement there for $1,619,612.56? |
| 09:37 | 4 | A.   Yes. |
| 09:37 | 5 | Q.   If you would look at 11226. |
| 09:38 | 6 | (Document provided to the witness.) |
| 09:38 | 7 | BY MR. PRICE: |
| 09:38 | 8 | Q.   And do you recognize that as a royalty statement on |
| 09:38 | 9 | December 31, 2003? |
| 09:38 | 10 | A.   Yes. |
| 09:38 | 11 | MR. PRICE:  Move Exhibit 11226 into evidence. |
| 09:38 | 12 | THE COURT:  Received. |
| 09:38 | 13 | (Exhibit No. 11226 received in evidence.) |
| 09:38 | 14 | (Document displayed.) |
| 09:38 | 15 | BY MR. PRICE: |
| 09:38 | 16 | Q.   If you'd look at page, dash, 0004, you see that you |
| 09:38 | 17 | received $1,745,188.56? |
| 09:38 | 18 | A.   Yes. |
| 09:38 | 19 | Q.   Now, there's another page here that's 00055 (sic), for |
| 09:38 | 20 | the quarter ended December 31, 2003, and that's a royalty |
| 09:38 | 21 | for a completely different product? |
| 09:39 | 22 | A.   Uh, which page are we looking at? |
| 09:39 | 23 | Q.   0005.  It's the last page. |
| 09:39 | 24 | A.   Oh, yes.  That's a different product. |
| 09:39 | 25 | Q.   So everything before that is for a Bratz product, |

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 44 of 113   Page ID #:293233
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

44

| 09:39 | 1 | right? |
| 09:39 | 2 | A.   Yes. |
| 09:39 | 3 | Q.   And you would receive royalty statements sometimes for |
| 09:39 | 4 | products other than Bratz? |
| 09:39 | 5 | A.   Yes. |
| 09:39 | 6 | Q.   And here, like at December 31, 2003, if you look at, |
| 09:40 | 7 | for example -- go one, two, three, four, five, six -- I |
| 09:40 | 8 | think seven or eight up from the bottom it's got "Bratz |
| 09:40 | 9 | Meygan." |
| 09:40 | 10 | *(Document displayed.)* |
| 09:40 | 11 | BY MR. PRICE: |
| 09:40 | 12 | Q.   This is on page 11226-0001.  I think it's nine up from |
| 09:40 | 13 | the bottom.  You see it says "Bratz," something, "Meygan." |
| 09:40 | 14 | Do you see that? |
| 09:40 | 15 | A.   Yes. |
| 09:40 | 16 | Q.   And Meygan was built on the same sculpt as the original |
| 09:40 | 17 | Bratz characters, correct? |
| 09:40 | 18 | A.   I believe so, yes. |
| 09:41 | 19 | Q.   If you'd look at Exhibit 11229. |
| 09:41 | 20 | *(Document provided to the witness.)* |
| 09:41 | 21 | BY MR. PRICE: |
| 09:41 | 22 | Q.   Do you recognize that as a royalty statement for the |
| 09:41 | 23 | quarter ended March 31, 2002? |
| 09:41 | 24 | A.   Yes. |
| 09:41 | 25 | MR. PRICE:  And I move Exhibit 11229 into |

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 45 of 113   Page ID #:293234
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

45

| | | |
|---|---|---|
| 09:41 | 1 | evidence. |
| 09:41 | 2 | THE COURT: Received. |
| 09:41 | 3 | *(Exhibit No. 11229 received in evidence.)* |
| 09:41 | 4 | *(Document displayed.)* |
| 09:41 | 5 | BY MR. PRICE: |
| 09:41 | 6 | Q.   And you received four hundred forty-two thousand, |
| 09:41 | 7 | seventy -- either four -- or six dollars and 89 cents; is |
| 09:42 | 8 | that right? |
| 09:42 | 9 | A.   Yeah.  I can't tell either. |
| 09:42 | 10 | Q.   So on this list of descriptions they have here of the |
| 09:42 | 11 | Bratz dolls, I think you said there was a category of |
| 09:42 | 12 | teenage Bratz dolls that were not based on the same sculpt. |
| 09:42 | 13 | Do you recall that? |
| 09:42 | 14 | A.   Uh, yes. |
| 09:42 | 15 | Q.   And that was -- what was the name of that? |
| 09:42 | 16 | A.   Um, I think I said the Pixiez. |
| 09:42 | 17 | Q.   The Pixiez.  And you could see in the royalty |
| 09:42 | 18 | statements whether or not the dolls sold were Pixiez, right? |
| 09:42 | 19 | A.   Yes. |
| 09:42 | 20 | THE COURT:  Counsel, I just received a note from |
| 09:42 | 21 | the jury. |
| 09:42 | 22 | They need a restroom break. |
| 09:42 | 23 | MR. PRICE:  That's fine. |
| 09:42 | 24 | THE COURT:  Ladies and gentlemen, you're |
| 09:42 | 25 | admonished not to discuss this matter amongst yourselves. |

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 46 of 113   Page ID #:293235
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

46

| | | |
|---|---|---|
| 09:42 | 1 | We'll come and get you about ten minutes after the |
| 09:42 | 2 | hour. |
| 09:43 | 3 | You can go back. |
| 09:43 | 4 | *(Jury recesses at 9:43 a.m.)* |
| 09:43 | 5 | *(Outside the presence of the jury.)* |
| 09:43 | 6 | THE COURT:  All right.  Mr. Bryant, if you would |
| 09:43 | 7 | have a seat for a moment.  I didn't want to make a comment |
| 09:43 | 8 | in front of the jury -- counsel, have a seat.  We're in |
| 09:43 | 9 | session.  I thought that I had ordered counsel to take the |
| 09:43 | 10 | royalty summaries to Mr. Bryant on Sunday afternoon. |
| 09:43 | 11 | And, Mr. Price, you weren't here.  Mr. McConville |
| 09:43 | 12 | and Ms. Keller, you weren't here, but, in fact, the Court |
| 09:43 | 13 | issued an order on Sunday so that you could accomplish that. |
| 09:43 | 14 | So I'll speak to Mr. Quinn, who was here, and |
| 09:44 | 15 | Mr. McConville.  Was that completed? |
| 09:44 | 16 | MR. McCONVILLE:  Yes, sir.  Yes. |
| 09:44 | 17 | THE COURT:  Mr. Bryant, did you have a chance -- |
| 09:44 | 18 | did you receive these royalty statements? |
| 09:44 | 19 | THE WITNESS:  Yes. |
| 09:44 | 20 | THE COURT:  I know that we're trying not to have |
| 09:44 | 21 | as long a session as you did during the first trial, as a |
| 09:44 | 22 | courtesy.  I represented that to your counsel that I didn't |
| 09:44 | 23 | know how long it would take. |
| 09:44 | 24 | But I want to go back to a general question that |
| 09:44 | 25 | was asked.  If you would turn to 13622 -- I believe it's |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 09:44 | 1 | -0115, according to my notes.  I may have the wrong page, |
| 09:44 | 2 | but what it should show is a cumulative summary, or total, |
| 09:44 | 3 | of what may be royalties of $33,244,491. |
| 09:44 | 4 | And I'm not certain of the page, Counsel. |
| 09:44 | 5 | MR. PRICE:  It's page 00115. |
| 09:44 | 6 | THE COURT:  So it's 00115.  I left out one zero. |
| 09:44 | 7 | And it should be 13622? |
| 09:44 | 8 | MR. PRICE:  Yes. |
| 09:44 | 9 | THE COURT:  Okay.  Could you turn to that for just |
| 09:45 | 10 | a moment. |
| 09:45 | 11 | Many of these questions are predicated laboriously |
| 09:45 | 12 | upon going through the royalties year by year.  I think what |
| 09:45 | 13 | counsel are after is some type of cumulative royalty total. |
| 09:45 | 14 | (To the witness:)  Have you had a chance to look |
| 09:45 | 15 | at these and add them up? |
| 09:45 | 16 | THE WITNESS:  I didn't add them up myself. |
| 09:45 | 17 | THE COURT:  Okay.  Why don't you take some time. |
| 09:45 | 18 | Because I think that it will probably shorten your |
| 09:45 | 19 | testimony. |
| 09:45 | 20 | THE WITNESS:  Okay. |
| 09:45 | 21 | THE COURT:  We're just going through these one by |
| 09:45 | 22 | one at the present time. |
| 09:45 | 23 | THE WITNESS:  Okay. |
| 09:45 | 24 | THE COURT:  And I think the general question's |
| 09:45 | 25 | eventually going to be if this cumulative total, at least as |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

48

09:45  1   of June 30, 2007 -- Counsel, would you flip to the top of

09:45  2   that particular page so I can verify the date.

09:45  3          All right.  Now, would you go to the preceding

09:45  4   page.

09:45  5            (Document displayed.)

09:45  6          MR. PRICE:  Your Honor, this is actually page 71

09:45  7   of 72.

09:46  8          THE COURT:  So the end result, how would

09:46  9   Mr. Bryant be able to verify that this is at least an

09:46  10  approximate total of the summaries he's received by 2007?

09:46  11         MR. McCONVILLE:  Judge, I think the difficulty is

09:46  12  the way the spreadsheet is printed out.  I think if he looks

09:46  13  at the next page, this will look like every other document.

09:46  14  So the total -- that is, 33 million is the total, and then

09:46  15  he gets 3 percent of that, which is on page 13622-116.  This

09:46  16  is not the total.

09:46  17         THE COURT:  What is misleading is, potentially,

09:46  18  that the total is not 33 million.

09:46  19         MR. McCONVILLE:  Correct.

09:46  20         THE COURT:  But there's always been the intimation

09:46  21  and argument that you received between 30 and 35 million.

09:46  22  I've heard that from either one or both counsel in terms of

09:46  23  royalties.  I'm just wondering how we quickly verify that.

09:46  24         MR. McCONVILLE:  So, Your Honor, I believe there's

09:46  25  a summary document that may have already -- I know I've seen

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 49 of 113   Page ID #:293238
CV 04-9049 DOC - 2/17/2011 - Day 10, Volume 1 of 4

49

| | | |
|---|---|---|
| 09:46 | 1 | it when we've gone through our review -- that totals up the |
| 09:47 | 2 | royalties. |
| 09:47 | 3 | THE COURT:  Now, the second thing is -- and I'm |
| 09:47 | 4 | not suggesting how you conduct yourselves.  That's up to |
| 09:47 | 5 | you.  If you want to laboriously go through each royalty |
| 09:47 | 6 | period, that's fine. |
| 09:47 | 7 | The second thing, though, is, if the Court |
| 09:47 | 8 | instructs on -- the jury on damages in terms of determining |
| 09:47 | 9 | a running royalty under the *Georgia-Pacific* factors, then it |
| 09:47 | 10 | may be important to the jury knowing time frames. |
| 09:47 | 11 | For instance, obviously, Mr. Bryant received the |
| 09:47 | 12 | most royalties, let's say, in 2006, or 2005.  And so, |
| 09:47 | 13 | therefore, what we may have is what I call a "dead doll." |
| 09:47 | 14 | It's a doll that's not bringing in -- I don't mean that |
| 09:47 | 15 | facetiously, but it's a doll that's not bringing in the same |
| 09:47 | 16 | amount of royalties in this period of time. |
| 09:47 | 17 | So the jury eventually needs to understand time |
| 09:47 | 18 | periods as well as royalties, because the jury may look at |
| 09:47 | 19 | this on the copyright issue, if running royalty goes to the |
| 09:48 | 20 | jury, and say, well, we've got a running royalty for X |
| 09:48 | 21 | period of time, but the timeframe makes a difference.  There |
| 09:48 | 22 | were a lot of moneys coming in, but going forward on this |
| 09:48 | 23 | particular doll, you know, these royalties had decreased. |
| 09:48 | 24 | And I don't know if that's going to have an effect on them |
| 09:48 | 25 | or not.  So I leave that to both parties to ferret out. |

CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

50

09:48    1              Finally, each party has wanted to go on the record

09:48    2    numerous times.

09:48    3              Thank you, Mr. Bryant.  Step down.

09:48    4              We've had a number of informal discussions that

09:48    5    have caused a strong reaction by different parties.  One of

09:48    6    those concerned Paula Garcia.  Another one was as early as

09:48    7    this morning, concerning the scope of Mattel's ability to

09:48    8    present evidence concerning, let's say, a variety of

09:48    9    accessories, others dolls, that Mattel feels were not

09:48   10    excluded concerning their trademark claim and their

09:48   11    misappropriation of trade secrets claim, feeling that the

09:49   12    Ninth Circuit had not considered that, that only copyright

09:49   13    was in front of them.

09:49   14              I don't want to have a chilling effect of going on

09:49   15    the record.  And what I'm afraid of is that I think I paid

09:49   16    counsel the courtesy of giving you initial thoughts, getting

09:49   17    ideas back from you on Saturdays and Sundays.  I think, so

09:49   18    the record's complete, Ms. Hurst wanted to go on the record.

09:49   19              I'm quite prepared, Ms. Hurst, without any

09:49   20    chilling effect, to make specific findings concerning Paula

09:49   21    Garcia.  I've decided not to make a comment in front of the

09:49   22    jury, but if you would like anything on the record, the

09:49   23    Court's ready to respond.

09:49   24              I'm ready to hand down a written opinion

09:49   25    concerning your desire to go on the record this morning

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 2/17/2011 - Day 10, Volume 1 of 4

51

| | | |
|---|---|---|
| 09:49 | 1 | concerning the scope of your request concerning the claim |
| 09:49 | 2 | involving trademark -- or misappropriation of trade secrets. |
| 09:49 | 3 | I've only afforded you that courtesy to keep giving each |
| 09:49 | 4 | party the opportunity to keep coming back to the Court.  But |
| 09:49 | 5 | I don't want the record to ever reflect that this has had a |
| 09:49 | 6 | chilling effect.  In fact, I think it's been extraordinary |
| 09:50 | 7 | courtesy to each party not to hand down some written |
| 09:50 | 8 | opinions or give you my explicit thoughts concerning some of |
| 09:50 | 9 | these witnesses, because the press is covering this.  And |
| 09:50 | 10 | the damage is, if I act in a way that gives the Court a |
| 09:50 | 11 | response to some of the requests being made, I think that |
| 09:50 | 12 | you're gonna read that in the press.  I'd rather keep those |
| 09:50 | 13 | thoughts informal, but I'm prepared to do so. |
| 09:50 | 14 | So I'm going to turn, so that there's no complaint |
| 09:50 | 15 | on the circuit -- and first of all, I'm going to turn to |
| 09:50 | 16 | Ms. Hurst, Ms. Keller, Mr. McConville.  I'm happy to respond |
| 09:50 | 17 | to any questions, any concerns you have concerning Paula |
| 09:50 | 18 | Garcia. |
| 09:50 | 19 | MR. McCONVILLE:  No.  Thank you, Your Honor. |
| 09:50 | 20 | THE COURT:  Okay.  I'm going to turn to Mattel so |
| 09:50 | 21 | you feel that everything's on the record. |
| 09:50 | 22 | And, by the way, from now on, I think we're all |
| 09:50 | 23 | going to be here at 7:30.  There's no more pop-ups.  And |
| 09:50 | 24 | something occurred this morning that doesn't cause |
| 09:51 | 25 | displeasure.  I needed more time to sort some very |

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 52 of 113   Page ID
#:293241
CV 04-9049 DOC - 2/17/2011 - Day 10, Volume 1 of 4

52

09:51   1   far-reaching decisions out in fairness to both parties.  And

09:51   2   that, of course, concerns the misappropriation of trade

09:51   3   secrets and whether this is a lost profits analysis or

09:51   4   combination of lost profits and royalty, whether I restrict

09:51   5   the lost profits, if I give that lost profits analysis to

09:51   6   the first four dolls and the two subsequent dolls and allow

09:51   7   the jury to consider running royalties as to the rest of

09:51   8   your trade secret misappropriation claim.  How I deal with

09:51   9   the copyright issue in terms of running royalties or lost

09:51   10  profits, my inclination is running royalty.  What do I do in

09:51   11  terms of allowing both damages' theories to go to the jury,

09:51   12  finding that there might be duplication.  Do I then give

09:51   13  that to the jury, saying you can only chose one of the two?

09:51   14  Or does the Court sort that out?  How do we write the

09:51   15  instructions, literally making it easy, I hope, for the

09:51   16  circuit to reverse this Court if I've made a mistake

09:52   17  without, you know, retrying the whole case again?

09:52   18          But I don't want either one of you to feel you're

09:52   19  being precluded.  Frankly, we could have done this yesterday

09:52   20  if I would have been aware of it.  It first came to my

09:52   21  attention I think last night at 8:00 o'clock when I had

09:52   22  excused my staff.

09:52   23          But what I don't want is, one, either a chilling

09:52   24  effect, or the feeling that we can't be on the record at any

09:52   25  time.  But once I hand down a decision in written form, your

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 53 of 113   Page ID #:293242
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

53

| | | |
|---|---|---|
| 09:52 | 1 | chances of having me back away from that, of course, |
| 09:52 | 2 | diminish substantially. |
| 09:52 | 3 | So I'm going to turn to Mattel now. Would you |
| 09:52 | 4 | like our discussion this morning on the record and our |
| 09:52 | 5 | discussion as of 8:00 o'clock? I would be pleased to do |
| 09:52 | 6 | that. Mr. Zeller, Mr. Price, who was not here, and |
| 09:52 | 7 | Mr. Quinn. |
| 09:52 | 8 | MR. QUINN: Yeah. Your Honor, I understood that |
| 09:52 | 9 | we're gonna take this up at some point, and we're |
| 09:52 | 10 | comfortable with that. |
| 09:52 | 11 | THE COURT: Absolutely. |
| 09:52 | 12 | MR. QUINN: And at some point it's the Court's |
| 09:52 | 13 | intention to address this on the record. |
| 09:52 | 14 | THE COURT: Absolutely. In fact, I want to hear |
| 09:52 | 15 | oral argument again. I want the courtesy of all of this |
| 09:52 | 16 | being on the record. |
| 09:53 | 17 | And, frankly, even if I had ruled in your favor on |
| 09:53 | 18 | this issue, I'm not certain that Carter Bryant is the |
| 09:53 | 19 | appropriate person, but you informed me of something this |
| 09:53 | 20 | morning informally that I wasn't aware of. It caught me a |
| 09:53 | 21 | little bit by surprise that there was a whole history. And |
| 09:53 | 22 | I didn't know if that covered the panoply of what you |
| 09:53 | 23 | expected your lost profits to be on your trade secret |
| 09:53 | 24 | misappropriation claim. |
| 09:53 | 25 | Now, I not only am prepared, I've also handed |

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 54 of 113   Page ID #:293243
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

54

| | | |
|---|---|---|
| 09:53 | 1 | down, and was prepared to hand down, a number of decisions. |
| 09:53 | 2 | I'm going to take the most troublesome issue to |
| 09:54 | 3 | begin with, and that is, where does the Court cut, |
| 09:54 | 4 | regardless of the trademark claim by Mattel, a mini trial |
| 09:54 | 5 | that's unduly consumptive of time. |
| 09:54 | 6 | Let me give the circuit and any reviewing court |
| 09:54 | 7 | some background.  In a sense, in the vigor of opening |
| 09:54 | 8 | statement, Mr. Quinn, basically, summarized MGA's creative |
| 09:54 | 9 | ability as being nil.  And that, then, caused a response, |
| 09:54 | 10 | even though that's not evidence, and a request by MGA to |
| 09:54 | 11 | bring in the fact that they were a creative company and were |
| 09:54 | 12 | creative not only in the time period in question, which is |
| 09:54 | 13 | the 2000/2001 time period, but all the way up to 2009/2010, |
| 09:54 | 14 | which, of course, that causes a reaction from Mattel, |
| 09:54 | 15 | wanting to expand, in response to MGA's showing that they're |
| 09:55 | 16 | a creative company, further evidence that MGA is not a |
| 09:55 | 17 | creative company and is repeatedly stealing employees, from |
| 09:55 | 18 | their perspective, from Mattel. |
| 09:55 | 19 | The difficulty is that it's a trial within a trial |
| 09:55 | 20 | and potentially unduly consumptive of time.  But we've |
| 09:55 | 21 | started down the road, and I really believe that the real |
| 09:55 | 22 | issue here is this time period of 2000/2001, when Mattel is |
| 09:55 | 23 | rightly pursuing a belief that there was no sculptress, no |
| 09:55 | 24 | design center, no capability -- and whether you believe |
| 09:55 | 25 | Paula Garcia or not is for the jury to determine whether |

CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

55

09:56  1   there was ever going to be the creation of a multi-ethnic

09:56  2   doll, let alone getting into what I call the fashion doll

09:56  3   industry.  That's an appropriate time period.  Maybe as far

09:56  4   as 2002, 2003.

09:56  5        When we start getting into 2007 and 2008 and 2009

09:56  6   and 2010, MGA's come back and tried to show at a later time

09:56  7   period, including the latest doll, that they were creative,

09:56  8   which now opens the door back up for Mattel.  In other

09:56  9   words, it's been a completely slippery slope in an area that

09:56  10  I don't think is relevant to these proceedings, frankly.

09:56  11       So I'm not sure how to cut that in fairness, but

09:56  12  Mattel opened that door in opening statement, which is not

09:56  13  evidence, and MGA has responded appropriately.

09:56  14       Concerning Mattel's offer of proof, Document

09:56  15  No. 9741, it seeks reconsideration of the Court's orders

09:56  16  sustaining MGA's objection to the introduction of two

09:56  17  categories of evidence at trial.  Mattel's request for

09:56  18  reconsideration is denied.

09:57  19       First, Mattel argues that exhibits and testimony

09:57  20  about the genesis for many of the Bratz doll themes is

09:57  21  relevant to rebut MGA's claim that its creative efforts were

09:57  22  responsible for the success of Bratz.  However, MGA's

09:57  23  creativity or lack thereof is not an element of any of the

09:57  24  pending claims.  I think Mattel's counsel briefly discussed

09:57  25  this topic during opening statement, and the Court allowed

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB  Document 9771  Filed 02/03/11  Page 56 of 113  Page ID #:293245
CV 04-9049 DOC – 2/1/2011 – Day 10, Volume 1 of 4

56

| | | |
|---|---|---|
| 09:57 | 1 | MGA a limited opportunity to offer evidence in rebuttal. |
| 09:57 | 2 | But counsel's remarks did not open the door to let –- or let |
| 09:57 | 3 | alone justify a mini trial on this issue. |
| 09:57 | 4 | I don't think Mattel can establish that any of the |
| 09:57 | 5 | trade secret information allegedly misappropriated by Bryant |
| 09:57 | 6 | included themes used in later generations of Bratz dolls, |
| 09:57 | 7 | with the exception of Formal Funk Dana and Ooh-La-La Cloe. |
| 09:57 | 8 | To the extent MGA referred to Mattel products that were |
| 09:57 | 9 | already out in the market for inspiration, this conduct does |
| 09:57 | 10 | not give rise to a claim for trade secret misappropriation, |
| 09:57 | 11 | because product information in the public domain is not |
| 09:58 | 12 | trade secret.  And I cite *Richter v. Westab., Inc.* at |
| 09:58 | 13 | 529 F.2d 896, 900, Sixth Circuit, (1976), which states that |
| 09:58 | 14 | even if Westab had been paying Richter and Mracky, |
| 09:58 | 15 | M-R-A-C-K-Y, to use the concept, it would have ceased being |
| 09:58 | 16 | a trade secret upon introduction of the products, and |
| 09:58 | 17 | Richter and Mracky thereafter would have no legal right to |
| 09:58 | 18 | the concept.  Such evidence will result in undue confusion |
| 09:58 | 19 | to the fact finder and substantial prejudice to MGA since |
| 09:58 | 20 | this was never an issue explored during discovery. |
| 09:58 | 21 | Also, I'm a little concerned about the prejudicial |
| 09:58 | 22 | effect concerning both companies. |
| 09:58 | 23 | Whatever occurred, the genesis of this seems to be |
| 09:58 | 24 | in a limited timeframe, from my perspective, and for the |
| 09:58 | 25 | companies to engage in war about who the best company is or |

| | | |
|---|---|---|
| 09:58 | 1 | whether they're creative in this period of time, in 2008, |
| 09:58 | 2 | let's say, through 2010, I think really is abusive in the |
| 09:59 | 3 | sense of both prejudice to Mattel and MGA in the long run. |
| 09:59 | 4 | It really places both of your companies in a very, very bad |
| 09:59 | 5 | picture, going back and forth. |
| 09:59 | 6 | But that is a final ruling. |
| 09:59 | 7 | Mr. Price, is there any question you have about my |
| 09:59 | 8 | ruling? |
| 09:59 | 9 | MR. PRICE:  None, Your Honor. |
| 09:59 | 10 | THE COURT:  Mr. Quinn? |
| 09:59 | 11 | MR. QUINN:  No, Your Honor. |
| 09:59 | 12 | THE COURT:  I'm happy to have you perfect the |
| 09:59 | 13 | record. |
| 09:59 | 14 | Mr. Zeller?  I want to pay you the courtesy. |
| 09:59 | 15 | MR. ZELLER:  No, sir. |
| 09:59 | 16 | THE COURT:  All right.  Ms. Keller? |
| 09:59 | 17 | MS. KELLER:  No, Your Honor. |
| 09:59 | 18 | THE COURT:  Mr. McConville? |
| 09:59 | 19 | MR. McCONVILLE:  No, Your Honor. |
| 09:59 | 20 | THE COURT:  Ms. Hurst? |
| 09:59 | 21 | MS. HURST:  No, Your Honor. |
| 09:59 | 22 | THE COURT:  All right.  Now, the second ruling, I |
| 09:59 | 23 | was prepared to hand down.  I want to wait.  That is our |
| 09:59 | 24 | discussion this morning.  And out of courtesy -- it's |
| 09:59 | 25 | already written.  We want to put this on the record.  And I |

CV 04-9049 DOC - 2/17/2011 - Day 10, Volume 1 of 4

58

| | | |
|---|---|---|
| 09:59 | 1 | may change some of my initial thoughts after listening to |
| 09:59 | 2 | you.  I want to have that open door.  If we need to bring |
| 09:59 | 3 | Carter Bryant back, if you really believe he's the |
| 09:59 | 4 | appropriate witness, we'll discuss that.  He'll be on-call. |
| 09:59 | 5 | Now, finally, there's a lot of discussion about |
| 09:59 | 6 | whether the Ninth Circuit considered trade secret |
| 10:00 | 7 | misappropriation.  And there are some comments made by one |
| 10:00 | 8 | of the justices in the circuit, and I need to listen to that |
| 10:00 | 9 | oral argument again.  That's certainly not law.  It's, in a |
| 10:00 | 10 | sense, perhaps dicta, but it's an incisive question that's |
| 10:00 | 11 | been asked by that justice. |
| 10:00 | 12 | So I think this evening I'm going to require all |
| 10:00 | 13 | four counsel to remain.  My apologies, Mr. Price, to you, |
| 10:00 | 14 | Ms. Keller, but you will be here tonight. |
| 10:00 | 15 | Now, you have nine minutes. |
| 10:00 | 16 | *(Recess held at 10:00 o'clock a.m.)* |
| 10:12 | 17 | *(Proceedings resumed at 10:12 a.m.)* |
| 10:12 | 18 | *(In the presence of the jury.)* |
| 10:13 | 19 | THE COURT:  All right.  The jury is present, the |
| 10:13 | 20 | alternates.  All counsel are still present. |
| 10:13 | 21 | Mr. Bryant? |
| 10:13 | 22 | Okay.  He'll be right back. |
| 10:14 | 23 | Counsel, have a seat. |
| 10:14 | 24 | *(Witness resumes the stand.)* |
| 10:15 | 25 | THE COURT:  Counsel, if you would like to continue |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 59 of 113   Page ID #:293248
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

59

| | | |
|---|---|---|
| 10:15 | 1 | with your direct examination. |
| 10:15 | 2 | MR. PRICE:  Thank you. |
| 10:15 | 3 | THE COURT:  This is Mr. Price, for the record. |
| 10:15 | 4 | *(Direct examination of Carter Bryant resumed.)* |
| | 5 | BY MR. PRICE: |
| 10:15 | 6 | Q.   Mr. Bryant, if you could look at Exhibit 8738. |
| 10:15 | 7 | *(Document provided to the witness.)* |
| 08:59 | 8 | BY MR. PRICE: |
| 10:15 | 9 | Q.   And do you see this as a summary of payments made to |
| 10:15 | 10 | you for Bratz royalties over the years? |
| 10:15 | 11 | A.   Uh, yes. |
| 10:15 | 12 | MR. PRICE:  Your Honor, move Exhibit 8738 into |
| 10:15 | 13 | evidence. |
| 10:15 | 14 | THE COURT:  Received. |
| 10:16 | 15 | *(Exhibit No. 8738 received in evidence.)* |
| 10:16 | 16 | *(Document displayed.)* |
| | 17 | BY MR. PRICE: |
| 10:16 | 18 | Q.   So unlike the detailed royalty payments, this doesn't |
| 10:16 | 19 | show exactly what you were receiving royalties on; that is, |
| 10:16 | 20 | whether it was Jade or Cloe or Bratz Petz, right? |
| 10:16 | 21 | A.   No. |
| 10:16 | 22 | Q.   But it does reflect the total royalties that you |
| 10:16 | 23 | received from, I think, it's October 2000 to December 31, |
| 10:16 | 24 | 2007, correct? |
| 10:16 | 25 | A.   Yes. |

DEBBIE GALE, U.S. COURT REPORTER

60

| 10:16 | 1 | Q.   And you see there's -- in the left-hand side, there's |
| 10:16 | 2 | advances that you received:  48,000? |
| 10:16 | 3 | A.   Yes. |
| 10:16 | 4 | Q.   And then on the right-hand side there are the royalties |
| 10:16 | 5 | you received -- |
| 10:16 | 6 | A.   Yes. |
| 10:16 | 7 | Q.   -- correct? |
| 10:16 | 8 | A.   Yes. |
| 10:16 | 9 | Q.   And those royalties would be less some of the |
| 10:16 | 10 | advancements? |
| 10:16 | 11 | A.   I don't know. |
| 10:16 | 12 | Q.   So it's your understanding that the total Bratz |
| 10:17 | 13 | royalties you received were about $35,039,068.33? |
| 10:17 | 14 | A.   Um, from this sheet, yes. |
| 10:17 | 15 | THE COURT:  Well, first of all.  Happy to give you |
| 10:17 | 16 | the time to add that up.  Okay? |
| 10:17 | 17 | THE WITNESS:  Okay. |
| 10:17 | 18 | THE COURT:  If you need that time, take that time |
| 10:17 | 19 | so the jury has an answer. |
| 10:17 | 20 | I know you're looking at these documents, hard to |
| 10:17 | 21 | follow the numbers, but if you need the time, I think the |
| 10:17 | 22 | jury needs a range, and counsel for both parties do.  Okay? |
| 10:17 | 23 | THE WITNESS:  Okay. |
| 10:17 | 24 | THE COURT:  All right.  Thank you, sir. |
|  | 25 |  |

DEBBIE GALE, U.S. COURT REPORTER

|       |    |                                                                  |
|-------|----|------------------------------------------------------------------|
|       | 1  | BY MR. PRICE:                                                     |
| 10:17 | 2  | Q.   So let me go through the royalty payments that show the     |
| 10:17 | 3  | stuff you were working on.  And you could go to 11230.            |
| 10:17 | 4  |            *(Document provided to the witness.)*                  |
| 11:59 | 5  | BY MR. PRICE:                                                     |
| 10:18 | 6  | Q.   Do you recognize that as a royalty statement for the        |
| 10:18 | 7  | quarter ending December 31, 2005?                                |
| 10:18 | 8  | A.   Which page are we looking at?                               |
| 10:18 | 9  | Q.   I was looking at the first page, Exhibit 11230.            |
| 10:18 | 10 | A.   Okay.                                                       |
| 10:18 | 11 | Q.   Does that appear to be the royalty statement for the       |
| 10:18 | 12 | quarter ended December 31, 2005?                                |
| 10:18 | 13 | A.   Yes.                                                        |
| 10:18 | 14 | Q.   And if you look at the last page, 0009 -- it's            |
| 10:18 | 15 | 11230-0009.                                                      |
| 10:18 | 16 | A.   Yes.                                                        |
| 10:18 | 17 | Q.   It shows royalties of 2.236 million?                       |
| 10:18 | 18 | A.   Yes.                                                        |
| 10:18 | 19 |         MR. PRICE:  Your Honor, move Exhibit 11230 into         |
| 10:18 | 20 | evidence.                                                        |
| 10:18 | 21 |         THE COURT:  Received.                                   |
| 10:18 | 22 |         *(Exhibit No. 11230 received in evidence.)*            |
| 10:18 | 23 |         *(Document displayed.)*                                |
| 10:18 | 24 |         MR. PRICE:  If we can just show 11230-0009.           |
| 10:19 | 25 |         *(Document displayed.)*                                |

CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

62

| | | |
|---|---|---|
| 10:19 | 1 | BY MR. PRICE: |
| 10:19 | 2 | Q.   Now, if you'd look at Exhibit 11239. |
| 10:19 | 3 | *(Document provided to the witness.)* |
| 10:19 | 4 | BY MR. PRICE: |
| 10:19 | 5 | Q.   Do you recognize that as a royalty statement for the |
| 10:19 | 6 | quarter ended December 31, 2004? |
| 10:19 | 7 | A.   Yes. |
| 10:19 | 8 | MR. PRICE:  Move 11239 into evidence. |
| 10:19 | 9 | THE COURT:  Received. |
| 10:19 | 10 | *(Exhibit No. 11239 received in evidence.)* |
| 10:19 | 11 | *(Document displayed.)* |
| 09:03 | 12 | BY MR. PRICE: |
| 10:19 | 13 | Q.   And if you look at the next to last page on this, |
| 10:19 | 14 | 11239-0024, you see a total of about $1,725,737? |
| 10:19 | 15 | A.   Yes. |
| 10:20 | 16 | Q.   If you'd look at 11240. |
| 10:20 | 17 | *(Document provided to the witness.)* |
| 10:20 | 18 | BY MR. PRICE: |
| 10:20 | 19 | Q.   Do you recognize that as a royalty statement for the |
| 10:20 | 20 | quarter ended September 30, 2005? |
| 10:20 | 21 | A.   Yes. |
| 10:20 | 22 | MR. PRICE:  Move Exhibit 11240 into evidence. |
| 10:20 | 23 | THE COURT:  Received. |
| 10:20 | 24 | *(Exhibit No. 11240 received in evidence.)* |
| 10:20 | 25 | *(Document displayed.)* |

CV 04-9049 DOC – 2/1/2011 – Day 10, Volume 1 of 4

| 10:20 | 1 | BY MR. PRICE: |
| 10:20 | 2 | Q.   If you look at 11240-0012, you see that's a royalty |
| 10:20 | 3 | payment of $1,976,450.64, correct? |
| 10:20 | 4 | A.   Yes. |
| 10:20 | 5 | Q.   If you'd look at 11359, do you recognize that as a |
| 10:21 | 6 | royalty statement for the quarter ended June 30, 2004? |
| 10:21 | 7 | A.   Yes. |
| 10:21 | 8 |         MR. PRICE:  Move 11359 into evidence. |
| 10:21 | 9 |         THE COURT:  Received. |
| 10:21 | 10 |         *(Exhibit No. 11359 received in evidence.)* |
| 10:21 | 11 |          *(Document displayed.)* |
| 10:21 | 12 | BY MR. PRICE: |
| 10:21 | 13 | Q.   And if you would look at 11359-0013, and do you see a |
| 10:21 | 14 | total royalty payment of $1,965,920.10? |
| 10:21 | 15 |         THE COURT:  You said "965."  It's "967." |
| 10:22 | 16 |         MR. PRICE:  I'm sorry.  $1,967,920.10. |
| 10:22 | 17 |         THE WITNESS:  Yes. |
| 10:22 | 18 | BY MR. PRICE: |
| 10:22 | 19 | Q.   If you look at 11559, do you recognize this as a |
| 10:22 | 20 | royalty statement for the quarter ending September 30, 2004? |
| 10:22 | 21 | A.   Yes. |
| 10:22 | 22 | Q.   And if you look at 11559-0006 -- |
| 10:22 | 23 |         MR. PRICE:  Move Exhibit 11559 into evidence, |
| 10:22 | 24 | Your Honor. |
| 10:22 | 25 |         *(Exhibit No. 11559 received in evidence.)* |

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 64 of 113   Page ID #:293253
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

64

| | | |
|---|---|---|
| 10:22 | 1 | (Document displayed.) |
| 09:18 | 2 | BY MR. PRICE: |
| 10:22 | 3 | Q.   Do you see the royalties for that quarter for |
| 10:22 | 4 | $1,015,458.43? |
| 10:22 | 5 | A.   Yes. |
| 10:23 | 6 | Q.   Mr. Bryant, if you'd look at Exhibit 18307. |
| 10:23 | 7 | (Document provided to the witness.) |
| 10:23 | 8 | BY MR. PRICE: |
| 10:23 | 9 | Q.   And this is a -- you've had the opportunity to look at |
| 10:23 | 10 | this over the weekend? |
| 10:23 | 11 | A.   Yes. |
| 10:23 | 12 | Q.   And do you recognize 18307 as being a compilation of |
| 10:23 | 13 | royalty statements between 2003 and the third quarter of |
| 10:23 | 14 | 2007? |
| 10:23 | 15 | A.   I'm not exactly sure what these are. |
| 10:24 | 16 | Q.   Mr. Bryant, I'd like to talk to you now about your |
| 10:24 | 17 | contract with MGA, Exhibit 15. |
| 10:24 | 18 | (Document provided to the witness.) |
| 10:24 | 19 | (Document displayed.) |
| 10:24 | 20 | BY MR. PRICE: |
| 10:25 | 21 | Q.   Exhibit -- I mean, Paragraph 3(a) on the first page of |
| 10:25 | 22 | this, you granted MGA the rights to the Bratz material, |
| 10:25 | 23 | which would be owned exclusively by MGA in perpetuity, |
| 10:25 | 24 | right? |
| 10:25 | 25 | A.   Yes. |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 65 of 113   Page ID #:293254
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

65

| 10:25 | 1 | Q.   And if you'd look at page 3, 00015-0003, under the |
|---|---|---|
| 10:25 | 2 | warranty section, see, first you say you have the right to |
| 10:25 | 3 | execute the agreement and to grant rights granted by him to |
| 10:26 | 4 | MGA. |
| 10:26 | 5 | Do you see that? |
| 10:26 | 6 | A.   Yes. |
| 10:26 | 7 | Q.   And under (b), it says, "Neither the execution and |
| 10:26 | 8 | delivery of this agreement nor the performance by Bryant of |
| 10:26 | 9 | any of his obligations hereunder will constitute a |
| 10:26 | 10 | violation, breach or default under any agreement, |
| 10:26 | 11 | arrangement or understanding or any other restriction of any |
| 10:26 | 12 | kind to which Bryant is a party or by which Bryant is |
| 10:26 | 13 | bound." |
| 10:26 | 14 | Do you see that? |
| 10:26 | 15 | A.   Yes. |
| 10:26 | 16 | Q.   And then under Paragraph (e), on page 0004, it says, |
| 10:26 | 17 | "He shall indemnify and hold MGA harmless from any -- and |
| 10:26 | 18 | against any and all claims, losses, costs, judgments, |
| 10:26 | 19 | settlements, damages, and expenses arising from any |
| 10:26 | 20 | breach" -- by you -- "of the warranties." |
| 10:27 | 21 | Do you see that? |
| 10:27 | 22 | A.   Yes. |
| 10:27 | 23 | Q.   At the time that you signed this, in October 2000, were |
| 10:27 | 24 | you well-off?  Wealthy? |
| 10:27 | 25 | A.   Uh, no. |

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 66 of 113   Page ID #:293255
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

66

| | | |
|---|---|---|
| 10:27 | 1 | THE COURT: Counsel, would you remind the jury of |
| 10:27 | 2 | the date. |
| 10:27 | 3 | MR. PRICE: It's signed October 4, 2000, dated as |
| 10:27 | 4 | of September 18, 2000. |
| 10:27 | 5 | THE COURT: Thank you. |
| 10:27 | 6 | BY MR. PRICE: |
| 10:27 | 7 | Q.  And the agreement itself gave you a royalty of |
| 10:27 | 8 | 3 percent, correct? |
| 10:27 | 9 | A.  Yes. |
| 10:27 | 10 | Q.  The other 97 percent going to MGA, right? |
| 10:27 | 11 | A.  Yes. |
| 10:27 | 12 | Q.  So you would agree that your agreement to indemnify and |
| 10:27 | 13 | home MGA harmless wasn't a lot of financial protection for |
| 10:28 | 14 | MGA? |
| 10:28 | 15 | MS. KELLER: Objection. Calls for a legal |
| 10:28 | 16 | conclusion. |
| 10:28 | 17 | THE COURT: Overruled. |
| 10:28 | 18 | MS. KELLER: Speculation. |
| 10:28 | 19 | THE WITNESS: I don't really know what you mean. |
| 10:28 | 20 | BY MR. PRICE: |
| 10:28 | 21 | Q.  Well, if MGA had sales of a hundred million, and you |
| 10:28 | 22 | got 3 percent of that, it would be hard for you to pay a |
| 10:28 | 23 | hundred million to them for indemnification, right? |
| 10:28 | 24 | MS. KELLER: Objection. Assumes facts not in |
| 10:28 | 25 | evidence. |

DEBBIE GALE, U.S. COURT REPORTER

| 10:28 | 1 | THE COURT:  Overruled. |
|---|---|---|

10:28   1          THE COURT:  Overruled.

10:28   2          THE WITNESS:  Yes.

10:28   3   BY MR. PRICE:

10:28   4   Q.   So this contract -- your understanding -- gave you a

10:28   5   unity of interest with MGA; that is, if there's a judgment

10:28   6   against them, they can come to you and ask for money, right?

10:28   7   A.   Um, I suppose so.

10:28   8   Q.   But there's no way that this agreement -- under this

10:29   9   agreement, MGA could be completely indemnified from you

10:29  10   because you wouldn't have the money, right?

10:29  11   A.   Um --

10:29  12          MS. KELLER:  Objection.  Assumes facts not in

10:29  13   evidence.

10:29  14          THE COURT:  Overruled.

10:29  15          THE WITNESS:  I suppose that's true.

10:29  16   BY MR. PRICE:

10:29  17   Q.   I mean, you don't have a hundred million or 200 million

10:29  18   or 300 million or 500 million lying around --

10:29  19   A.   No.

10:29  20   Q.   -- right?

10:29  21          And at the time you signed this, you had told

10:29  22   Mr. Larian that you -- when you walked into his office, that

10:29  23   you were a Mattel designer, right?

10:29  24   A.   I believe I did, yes.

10:29  25   Q.   And you told him -- he asked you how long you'd worked

| | | |
|---|---|---|
| 10:30 | 1 | at Mattel, and you told him, right? |
| 10:30 | 2 | A.   That I don't remember. |
| 10:30 | 3 | Q.   Did you tell him you had been working at Mattel as a |
| 10:30 | 4 | designer for a number of years? |
| 10:30 | 5 | MS. KELLER:  Objection.  Asked and answered. |
| 10:30 | 6 | THE COURT:  Overruled. |
| 10:30 | 7 | THE WITNESS:  I don't remember. |
| 08:39 | 8 | BY MR. PRICE: |
| 10:30 | 9 | Q.   Some point he told you he was going to invest -- use |
| 10:30 | 10 | all of his resources to make Bratz happen, right? |
| 10:30 | 11 | A.   Yes. |
| 10:30 | 12 | Q.   Even though he knew at the time you came in with the |
| 10:30 | 13 | designs that you were, at that point, then, a Mattel |
| 10:30 | 14 | employee, right? |
| 10:30 | 15 | A.   Uh, I don't know. |
| 10:30 | 16 | Q.   Well, we showed you Exhibit 16789. |
| 10:30 | 17 | Do you recall that? |
| 10:30 | 18 | *(Document provided to the witness.)* |
| 10:30 | 19 | *(Document displayed.)* |
| 10:31 | 20 | THE WITNESS:  Yes. |
| 08:41 | 21 | BY MR. PRICE: |
| 10:31 | 22 | Q.   Next to last paragraph, "I have put my whole resources, |
| 10:31 | 23 | money, people, development, et cetera, on this to make your |
| 10:31 | 24 | dream happen." |
| 10:31 | 25 | You see that? |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 69 of 113   Page ID #:293258
CV 04-9049 DOC - 2/17/2011 - Day 10, Volume 1 of 4

69

| | | |
|---|---|---|
| 10:31 | 1 | A.   Yes. |
| 10:31 | 2 | Q.   So your understanding was that, knowing that you were a |
| 10:31 | 3 | Mattel employee bringing designs to Mr. Larian, that he was, |
| 10:31 | 4 | as of October 5th, going to put his whole resources behind |
| 10:31 | 5 | you, right? |
| 10:31 | 6 | A.   Uh, yes. |
| 10:31 | 7 | Q.   And do you believe he was going to do that because he |
| 10:31 | 8 | just took your word that you had created these designs |
| 10:32 | 9 | and -- while you were working for Mattel? |
| 10:32 | 10 |        MS. KELLER:  Objection.  Calls for speculation of |
| 10:32 | 11 | Mr. Larian's state of mind. |
| 10:32 | 12 |        THE COURT:  Well, in its present form, Counsel, I |
| 10:32 | 13 | agree.  It's sustained. |
| 11:59 | 14 | BY MR. PRICE: |
| 10:32 | 15 | Q.   Did Mr. Larian tell you that he was going to put his |
| 10:32 | 16 | whole resources -- money, people, development -- behind you |
| 10:32 | 17 | to make these dolls happen even though, at the time you |
| 10:32 | 18 | brought them to him, he was a Mattel employee -- you -- |
| 10:32 | 19 | he -- you told him he was a Mattel employee -- let me |
| 10:32 | 20 | rephrase that. |
| 10:32 | 21 |     Did Mr. Larian tell you that he was going to put his |
| 10:32 | 22 | resources -- money, people, development -- behind you, even |
| 10:32 | 23 | though, at the time you showed him these designs, you told |
| 10:32 | 24 | him you were a Mattel employee -- did he say he was going to |
| 10:32 | 25 | do that simply because he was taking your word about when |

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 70 of 113   Page ID #:293259
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

70

| | | |
|---|---|---|
| 10:32 | 1 | you did the drawings? |
| 10:32 | 2 | THE COURT:  Well, that's compound, Counsel.  It's |
| 10:32 | 3 | not understandable. |
| 10:32 | 4 | I want to make certain:  Are you referring to the |
| 10:32 | 5 | September 1st meeting? |
| 10:33 | 6 | MR. PRICE:  Let's do that. |
| 10:33 | 7 | BY MR. PRICE: |
| 10:33 | 8 | Q.   On September 1st, 2000 -- |
| 10:33 | 9 | THE COURT:  In other words, I don't want him |
| 10:33 | 10 | influenced by this e-mail that's later sent.  I want it |
| 10:33 | 11 | clear for the jury what time period you're talking about. |
| 10:33 | 12 | BY MR. PRICE: |
| 10:33 | 13 | Q.   At any time in September or October 2000, did |
| 10:33 | 14 | Mr. Larian say he was putting his resources behind you |
| 10:33 | 15 | because he was taking your word for when you created the |
| 10:33 | 16 | Bratz designs? |
| 10:33 | 17 | MS. KELLER:  Objection.  Vague as to time. |
| 10:33 | 18 | THE COURT:  Sustained. |
| 10:33 | 19 | BY MR. PRICE: |
| 10:33 | 20 | Q.   As of October 5th, 2000, had Mr. Larian told you that |
| 10:33 | 21 | he was going to put his resources behind you for the Bratz |
| 10:33 | 22 | doll line based upon just taking your word about when the |
| 10:33 | 23 | Bratz designs were made? |
| 10:34 | 24 | MS. KELLER:  Again, Your Honor, objection. |
| 10:34 | 25 | Compound. |

| | | |
|---|---|---|
| 10:34 | 1 | THE COURT:  Overruled. |
| 10:34 | 2 | This is October 5th or earlier? |
| 10:34 | 3 | MR. PRICE:  October 5th or earlier. |
| 10:34 | 4 | THE COURT:  Overruled. |
| 10:34 | 5 | THE WITNESS:  I don't remember. |
| 10:34 | 6 | BY MR. PRICE: |
| 10:34 | 7 | Q.   This agreement, Exhibit 15, where you make warranties, |
| 10:34 | 8 | and there's an agreement you'll indemnify, hold MGA |
| 10:34 | 9 | harmless -- this agreement kind of makes you the fallguy, |
| 10:34 | 10 | doesn't it? |
| 10:34 | 11 | MS. KELLER:  Objection.  Argumentative. |
| 10:34 | 12 | THE COURT:  Sustained. |
| 10:34 | 13 | BY MR. PRICE: |
| 10:34 | 14 | Q.   Let me ask you about -- you remember the declaration |
| 10:34 | 15 | you made to the Patent Office, Exhibit 502? |
| 10:35 | 16 | *(Document displayed.)* |
| 10:35 | 17 | THE WITNESS:  Yes. |
| 10:35 | 18 | BY MR. PRICE: |
| 10:35 | 19 | Q.   The one where you said the dolls came out in 2002 and |
| 10:35 | 20 | not 2001? |
| 10:35 | 21 | A.   Yes. |
| 10:35 | 22 | Q.   Even though the dolls with those features came out in |
| 10:35 | 23 | 2001? |
| 10:35 | 24 | A.   Yes. |
| 10:35 | 25 | Q.   That application -- that was an application for |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 72 of 113   Page ID #:293261
CV 04-9049 DOC - 2/17/2011 - Day 10, Volume 1 of 4

72

| | | |
|---|---|---|
| 10:35 | 1 | Mr. Larian as the inventor, right? |
| 10:35 | 2 | A.   I don't know.  I don't remember. |
| 10:35 | 3 | Q.   Well, it wasn't an application where you were named as |
| 10:35 | 4 | the inventor, was it? |
| 10:35 | 5 | A.   I don't know if it was or not. |
| 10:35 | 6 | Q.   At the time you signed this declaration, you weren't in |
| 10:36 | 7 | a position to say anything about the technical |
| 10:36 | 8 | specifications of the dolls, right? |
| 10:36 | 9 | MS. KELLER:  Objection.  Asked and answered, |
| 10:36 | 10 | Your Honor, repeatedly. |
| 10:36 | 11 | THE COURT:  Overruled. |
| 10:36 | 12 | THE WITNESS:  I don't know. |
| 10:36 | 13 | BY MR. PRICE: |
| 10:36 | 14 | Q.   Well, if you look at the top of the declaration, 502, |
| 10:36 | 15 | the very top. |
| 10:36 | 16 | *(Document displayed.)* |
| 10:36 | 17 | MR. PRICE:  See, it says, "Applicant:  Isaac |
| 10:36 | 18 | Larian." |
| 10:36 | 19 | THE WITNESS:  Yes. |
| 10:36 | 20 | BY MR. PRICE: |
| 10:36 | 21 | Q.   Now, was it your understanding that at the time you |
| 10:36 | 22 | signed this declaration, that Mr. Larian had seen the dolls |
| 10:37 | 23 | in 2001? |
| 10:37 | 24 | MS. KELLER:  Objection.  Asked and answered last |
| 10:37 | 25 | week, Your Honor. |

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 73 of 113   Page ID #:293262
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

73

| | | |
|---|---|---|
| 10:37 | 1 | THE COURT:  Overruled. |
| 10:37 | 2 | There have been a number -- so we clarify this |
| 10:37 | 3 | record.  There have been a number of "I don't know" answers. |
| 10:37 | 4 | Perhaps, over the weekend, those answers were forthcoming or |
| 10:37 | 5 | you recall; perhaps you don't; perhaps they're the same. |
| 10:37 | 6 | So I'm going to give counsel some latitude to see |
| 10:37 | 7 | if there's any refreshing of recollection or if you recall |
| 10:37 | 8 | some of these questions that were previously asked with an |
| 10:37 | 9 | "I don't know" response. |
| 10:37 | 10 | Counsel. |
| 10:37 | 11 | BY MR. PRICE: |
| 10:37 | 12 | Q.   Do you recall my question? |
| 10:37 | 13 | A.   No. |
| 10:37 | 14 | Q.   Let me ask it again. |
| 10:37 | 15 | As of the time that you signed this declaration, was it |
| 10:37 | 16 | your understanding that Mr. Larian knew what the 2001 dolls |
| 10:37 | 17 | looked like? |
| 10:37 | 18 | A.   I don't remember.  I don't remember a lot about this -- |
| 10:37 | 19 | this agreement, in general, or this application. |
| 10:37 | 20 | Q.   Well, I'm talking about -- not the application, but |
| 10:38 | 21 | just focus on the year 2001.  There was some Bratz dolls |
| 10:38 | 22 | sold in 2001, right? |
| 10:38 | 23 | A.   Yes. |
| 10:38 | 24 | Q.   In fact, you showed the jury one of those -- those |
| 10:38 | 25 | dolls? |

| | | |
|---|---|---|
| 10:38 | 1 | A.   Yes. |
| 10:38 | 2 | Q.   And you went through the dolls, the fact that they had |
| 10:38 | 3 | strap-type shoes and have a snap-on feature at the ankle and |
| 10:38 | 4 | that the coloring of the skin tone on the feet matches the |
| 10:38 | 5 | lower leg of the doll, right? |
| 10:38 | 6 | A.   Yes. |
| 10:38 | 7 | Q.   And that's what the dolls looked like in 2001, right? |
| 10:38 | 8 | A.   Yes. |
| 10:38 | 9 | Q.   And you had dealings with Mr. Larian in 2001, correct? |
| 10:38 | 10 | A.   Yes. |
| 10:38 | 11 | Q.   You found him to be a pretty hands-on chief executive, |
| 10:38 | 12 | right? |
| 10:38 | 13 | MS. KELLER:  Objection, Your Honor. |
| 10:38 | 14 | THE COURT:  Sustained as to "hands-on." |
| 10:38 | 15 | Counsel, you can substitute the word "involved." |
| 10:38 | 16 | BY MR. PRICE: |
| 10:38 | 17 | Q.   You found Mr. Larian to be a very involved chief |
| 10:38 | 18 | executive? |
| 10:38 | 19 | A.   Yes. |
| 10:39 | 20 | Q.   Is it your understanding that in 2001 Mr. Larian had |
| 10:39 | 21 | seen these dolls? |
| 10:39 | 22 | A.   Yes. |
| 10:39 | 23 | Q.   And what's the basis of your understanding that in 2001 |
| 10:39 | 24 | Mr. Larian had seen these dolls? |
| 10:39 | 25 | A.   Because we had worked together on them. |

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 75 of 113   Page ID
#:293264
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

75

| | | |
|---|---|---|
| 10:39 | 1 | Q.   Do you know of any reason why Mr. Larian didn't sign a |
| 10:39 | 2 | declaration under penalty of perjury saying that the dolls, |
| 10:39 | 3 | with the features in your declaration, had come out -- had |
| 10:39 | 4 | not come out until 2002? |
| 10:39 | 5 | MS. KELLER:  Objection.  Speculation and |
| 10:39 | 6 | argumentative. |
| 10:39 | 7 | THE COURT:  Overruled. |
| 10:39 | 8 | THE WITNESS:  No.  I have no idea. |
| 10:39 | 9 | THE COURT:  (To the jury:)  And this is based upon |
| 10:39 | 10 | his knowledge, again.  It's not speculating upon Mr. Larian. |
| 10:40 | 11 | This is his knowledge if there was a conversation or if he |
| 10:40 | 12 | had any conversation concerning that.  It's limited to that |
| 10:40 | 13 | purpose. |
| 10:40 | 14 | BY MR. PRICE: |
| 10:40 | 15 | Q.   Your understanding was that Mr. Larian was as |
| 10:40 | 16 | well-qualified as you to make a statement that the dolls |
| 10:40 | 17 | with the features in Exhibit 3 of your declaration did not |
| 10:40 | 18 | occur until the fall of the year 2002? |
| 10:40 | 19 | A.   I'm sorry.  What now? |
| 10:40 | 20 | Q.   Let me rephrase it. |
| 10:40 | 21 | Your understanding is that Mr. Larian was as qualified |
| 10:40 | 22 | as you to say when dolls with the features in Exhibit -- in |
| 10:40 | 23 | Paragraph 3 of your declaration, when those first came into |
| 10:40 | 24 | the market, right? |
| 10:40 | 25 | A.   Um, I don't know. |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 76 of 113   Page ID #:293265
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

76

| | | |
|---|---|---|
| 10:40 | 1 | Q.    Well, look at Paragraph 4, which says, "I was actively |
| 10:41 | 2 | involved with the release of the Bratz dolls." |
| 10:41 | 3 | You see that? |
| 10:41 | 4 | A.    Yes. |
| 10:41 | 5 | Q.    Okay.  You saw Mr. Larian in 2001 being actively |
| 10:41 | 6 | involved with the release of the Bratz dolls, right? |
| 10:41 | 7 | A.    Yes. |
| 10:41 | 8 | Q.    Your understanding is Mr. Larian knew when dolls were |
| 10:41 | 9 | released that had the features that are described in |
| 10:41 | 10 | Paragraph 3 of your declaration, right? |
| 10:41 | 11 | A.    Yes. |
| 10:41 | 12 | Q.    So you certainly don't have the belief that Mr. Larian |
| 10:41 | 13 | was relying on you to tell him whether the Bratz dolls with |
| 10:41 | 14 | these features were released in 2001 and 2002, right? |
| 10:41 | 15 | A.    I'm sorry.  I don't understand what you're asking me. |
| 10:41 | 16 | Q.    Sure.  In Paragraph 4, where you say, "The release of |
| 10:41 | 17 | those dolls did not occur until the Fall of the year |
| 10:42 | 18 | 2002" -- see where you say that? |
| 10:42 | 19 | A.    Yes. |
| 10:42 | 20 | Q.    It's your understanding that Mr. Larian wasn't relying |
| 10:42 | 21 | on you to actually provide him information as to when Bratz |
| 10:42 | 22 | dolls were released that had those elements in them, in |
| 10:42 | 23 | Paragraph 3? |
| 10:42 | 24 | A.    Yes. |
| 10:42 | 25 | Q.    Because he already knew -- your understanding -- |

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 77 of 113   Page ID #:293266
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

77

| | | |
|---|---|---|
| 10:42 | 1 | correct? |
| 10:42 | 2 | A.   Yes. |
| 10:42 | 3 | Q.   But you were the one that was asked to make the |
| 10:42 | 4 | statement under penalty of perjury, right? |
| 10:42 | 5 | A.   Yes. |
| 10:42 | 6 | Q.   You were the one that was asked to make this false |
| 10:42 | 7 | statement under penalty of perjury, right? |
| 10:42 | 8 |         MS. KELLER:  Objection.  Argumentative. |
| 10:42 | 9 |         THE COURT:  Overruled. |
| 10:42 | 10 |         (To the jury:)  Now, you'll determine whether this |
| 10:42 | 11 | is a false statement or not, as the jury. |
| 10:42 | 12 |         THE WITNESS:  I was the one who was asked to sign |
| 10:42 | 13 | the document, yes. |
| 10:42 | 14 | BY MR. PRICE: |
| 10:42 | 15 | Q.   Making a false statement under penalty of perjury, |
| 10:42 | 16 | right? |
| 10:42 | 17 |         MS. KELLER:  Objection.  Argumentative. |
| 10:42 | 18 |         THE COURT:  Overruled. |
| 10:42 | 19 |         THE WITNESS:  Uh, yes. |
| 10:42 | 20 | BY MR. PRICE: |
| 10:43 | 21 | Q.   Did you ever ask Mr. Larian why you were the one asked |
| 10:43 | 22 | to make this false statement under penalty of perjury when |
| 10:43 | 23 | he was as qualified as you were to make a statement? |
| 10:43 | 24 | A.   Uh, no. |
| 10:43 | 25 | Q.   Just did what you were told? |

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 78 of 113   Page ID #:293267
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

78

| | | |
|---|---|---|
| 10:43 | 1 | A.   Um, in this -- in this instance, yes. |
| 10:43 | 2 | Q.   And isn't the reason for that, then, the blame could be |
| 10:43 | 3 | put on you? |
| 10:43 | 4 | MS. KELLER:  Objection.  Argumentative. |
| 10:43 | 5 | THE COURT:  Counsel, sustained. |
| 10:43 | 6 | You can argue that to the jury.  It's outside the |
| 10:43 | 7 | scope of this witness's opinion. |
| 10:43 | 8 | BY MR. PRICE: |
| 10:43 | 9 | Q.   Now, at this point I have to go over some drawings with |
| 10:43 | 10 | you. |
| 10:43 | 11 | A.   Okay. |
| 10:43 | 12 | Q.   And if you could look at Exhibit 5. |
| 10:44 | 13 | (Documents provided to the witness.) |
| 10:44 | 14 | BY MR. PRICE: |
| 10:44 | 15 | Q.   And I'm going to ask you to look at this time at |
| 10:44 | 16 | Exhibit 5-27. |
| 10:44 | 17 | MS. KELLER:  Your Honor, may we have originals |
| 10:44 | 18 | used for this? |
| 10:44 | 19 | (Original drawings provided to the witness.) |
| 10:44 | 20 | MS. KELLER:  Okay.  Thank you. |
| 10:44 | 21 | BY MR. PRICE: |
| 10:44 | 22 | Q.   Do you see Exhibit 5-00027? |
| 10:44 | 23 | A.   Yes. |
| 10:44 | 24 | Q.   And are these rough sketches for evening outfits that |
| 10:44 | 25 | you created for the Bratz dolls? |

CV 04-9049 DOC - 2/17/2011 - Day 10, Volume 1 of 4

79

| | | |
|---|---|---|
| 10:45 | 1 | A.   They appear to be. |
| 10:45 | 2 | Q.   And these sketches weren't created until about |
| 10:45 | 3 | July 2000, correct? |
| 10:45 | 4 | A.   I don't remember when they were created. |
| 10:45 | 5 | Q.   If you'd look at Volume II, testimony taken on |
| 10:45 | 6 | November 5, 2004.  And if you could look at lines 19. |
| 10:46 | 7 | MS. KELLER:  Can we have the page number, Counsel? |
| 10:46 | 8 | MR. PRICE:  Yeah.  This is a deposition on |
| 10:46 | 9 | November 5, 2004, and line 19, to 317, line 2. |
| 10:46 | 10 | MR. McCONVILLE:  There's a page missing. |
| 10:46 | 11 | MR. PRICE:  I'm sorry.  315, line 19, to 317, |
| 10:46 | 12 | line 2. |
| 10:46 | 13 | THE WITNESS:  Which page?  Which line? |
| 10:46 | 14 | MR. PRICE:  315, line 19, to 317, line 2. |
| 10:47 | 15 | THE WITNESS:  Okay. |
| 10:47 | 16 | BY MR. PRICE: |
| 10:47 | 17 | Q.   Does that refresh your recollection? |
| 10:47 | 18 | A.   Um, no, it really doesn't.  But I don't disagree with |
| 10:47 | 19 | my prior testimony. |
| 10:47 | 20 | Q.   Let's narrow it down. |
| 10:48 | 21 | If you look at June 17, 2008, page 2736, beginning at |
| 10:48 | 22 | line 14, ending at 2737, line 4. |
| 10:48 | 23 | A.   To page what now? |
| 10:48 | 24 | Q.   To 237 (sic), line 4. |
| 10:49 | 25 | A.   Okay. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

80

| | | |
|---|---|---|
| 10:49 | 1 | Q.   And does that refresh your recollection that these |
| 10:49 | 2 | sketches were made sometime in 2000? |
| 10:49 | 3 | A.   Um, yes. |
| 10:49 | 4 | MR. PRICE:  Move Exhibit 5-00027 into evidence. |
| 10:49 | 5 | THE COURT:  Received. |
| 10:49 | 6 | *(Exhibit No. 5-00027 received in evidence.)* |
| 10:49 | 7 | *(Document displayed.)* |
| 10:49 | 8 | BY MR. PRICE: |
| 10:49 | 9 | Q.   And if you'd look at the drawing before that, |
| 10:49 | 10 | 00005-00026, that's also one of these drawings you did in |
| 10:50 | 11 | 2000? -- a fashion drawing. |
| 10:50 | 12 | A.   I believe so, yes. |
| 10:50 | 13 | MR. PRICE:  Move Exhibit 5-00026 into evidence. |
| 10:50 | 14 | THE COURT:  Received. |
| 10:50 | 15 | *(Exhibit No. 5-00026 received in evidence.)* |
| 10:50 | 16 | *(Document displayed.)* |
| 11:59 | 17 | BY MR. PRICE: |
| 10:50 | 18 | Q.   Look at 5-89. |
| 10:50 | 19 | A.   Okay. |
| 10:50 | 20 | Q.   And do you recognize that? |
| 10:50 | 21 | A.   Uh, yes. |
| 10:50 | 22 | Q.   And that's the sculpt drawing? |
| 10:50 | 23 | A.   Yes. |
| 10:50 | 24 | MR. PRICE:  Move that into evidence, Your Honor. |
| 10:50 | 25 | THE COURT:  Received. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:50 | 1 | *(Exhibit No. 5-89 received in evidence.)* |
| 10:50 | 2 | *(Document displayed.)* |
| 10:50 | 3 | BY MR. PRICE: |
| 10:50 | 4 | Q.   And this was done sometime in 2000, as well? |
| 10:50 | 5 | A.   Yes. |
| 10:50 | 6 | Q.   So Exhibits 5-00027, 5-00026 and 5-00089, no one could |
| 10:51 | 7 | have seen these drawings in 1998, correct? |
| 10:51 | 8 | A.   Uh, no. |
| 10:51 | 9 | Q.   Is that correct? |
| 10:51 | 10 | A.   Yes. |
| 10:51 | 11 | Q.   And that's 'cause they didn't exist then? |
| 10:51 | 12 | A.   Right. |
| 10:51 | 13 | Q.   If you'd look at Exhibit 5-00080, do you recognize that |
| 10:51 | 14 | as a drawing you did in 2000? |
| 10:51 | 15 | A.   Yes. |
| 10:51 | 16 | MR. PRICE:  I move Exhibit 5-00080 into evidence. |
| 10:51 | 17 | THE COURT:  Received. |
| 10:51 | 18 | *(Exhibit No. 5-00080 received in evidence.)* |
| 10:51 | 19 | *(Document displayed.)* |
| 10:51 | 20 | BY MR. PRICE: |
| 10:52 | 21 | Q.   If you'd look at 5-00081.  Do you recognize that as a |
| 10:52 | 22 | drawing you did in 2000? |
| 10:52 | 23 | A.   I believe so, yes. |
| 10:52 | 24 | MR. PRICE:  Move 500081 (sic) into evidence. |
| 10:52 | 25 | THE COURT:  Received. |

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 82 of 113   Page ID #:293271
CV 04-9049 DOC – 2/1/2011 – Day 10, Volume 1 of 4

82

| | | |
|---|---|---|
| 10:52 | 1 | *(Exhibit No. 5-00081 received in evidence.)* |
| 10:52 | 2 | *(Document displayed.)* |
| 10:52 | 3 | BY MR. PRICE: |
| 10:52 | 4 | Q.   And this is a rough sketch of the doll you were calling |
| 10:52 | 5 | "Hallidae"? |
| 10:52 | 6 | A.   Yes. |
| 10:52 | 7 | Q.   That's evening-wear? |
| 10:52 | 8 | A.   Yes. |
| 10:52 | 9 | Q.   If you look at 500082 *(sic)*, is that a drawing, a |
| 10:53 | 10 | sketch you did sometime in 2000? |
| 10:53 | 11 | A.   Yes. |
| 10:53 | 12 | MR. PRICE:  Move 500082 into evidence. |
| 10:53 | 13 | THE COURT:  Received. |
| 10:53 | 14 | *(Exhibit No. 5-00082 received in evidence.)* |
| 10:53 | 15 | *(Document displayed.)* |
| 10:53 | 16 | BY MR. PRICE: |
| 10:53 | 17 | Q.   Look at 500083 (sic) -- |
| 10:53 | 18 | THE REPORTER:  Counsel, can you say "dash" so I |
| 10:53 | 19 | can make an accurate transcript. |
| 10:53 | 20 | MR. PRICE:  Okay.  All right. |
| 10:53 | 21 | BY MR. PRICE: |
| 10:53 | 22 | Q.   Look at 5-00083.  And do you recognize that as a |
| 10:53 | 23 | drawing you did in 2000? |
| 10:53 | 24 | A.   Yes. |
| 10:53 | 25 | MR. PRICE:  Move 5-00083 into evidence. |

CV 04-9049 DOC – 2/1/2011 – Day 10, Volume 1 of 4

83

| | | |
|---|---|---|
| 10:53 | 1 | THE COURT:  Received. |
| 10:53 | 2 | *(Exhibit No. 5-00083 received in evidence.)* |
| 10:53 | 3 | *(Document displayed.)* |
| 10:53 | 4 | BY MR. PRICE: |
| 10:53 | 5 | Q.   And, by the way, I've asked you whether or not these |
| 10:53 | 6 | drawings were done in 2000. |
| 10:53 | 7 | They were all done before you left Mattel, correct? |
| 10:53 | 8 | MS. KELLER:  Objection.  Assumes facts not in |
| 10:53 | 9 | evidence. |
| 10:53 | 10 | THE COURT:  Overruled. |
| 10:53 | 11 | THE WITNESS:  Uh, I believe so, yes. |
| 10:53 | 12 | BY MR. PRICE: |
| 10:54 | 13 | Q.   In fact, they were done prior to your meeting you had |
| 10:54 | 14 | in September of 2000 with MGA, correct? |
| 10:54 | 15 | A.   Yes. |
| 10:54 | 16 | Q.   If you'd look at 5-00084. |
| 10:54 | 17 | *(Document displayed.)* |
| 11:59 | 18 | BY MR. PRICE: |
| 10:54 | 19 | Q.   And that's a drawing you did before September of 2000, |
| 10:54 | 20 | correct? |
| 10:54 | 21 | A.   I don't have it in front of me. |
| 10:54 | 22 | MS. JUAREZ:  I don't believe I have the original |
| 10:54 | 23 | on my list. |
| 10:54 | 24 | BY MR. PRICE: |
| 10:54 | 25 | Q.   If you could look on the screen for -- well, you see on |

CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

84

| | | |
|---|---|---|
| 10:54 | 1 | 500084 *(sic)*, it has "Bryant 20073" at the bottom right? |
| 10:55 | 2 | A.   Yes. |
| 10:55 | 3 | Q.   And this is what you produced to us, correct? |
| 10:55 | 4 | A.   Uh, yes. |
| 10:55 | 5 | Q.   These black-and-white photocopies of drawings? |
| 10:55 | 6 | A.   I don't know who produced the photocopies.  I know that |
| 10:55 | 7 | I handed over the originals. |
| 10:55 | 8 | Q.   To whom? |
| 10:55 | 9 | A.   To whoever asked for them.  I don't remember who asked |
| 10:55 | 10 | for them. |
| 10:55 | 11 | Q.   Did you hand them to MGA? |
| 10:55 | 12 | A.   I don't remember. |
| 10:55 | 13 |         MS. JUAREZ:  I apologize, Mr. Price.  I do have |
| 10:55 | 14 | the original. |
| 10:55 | 15 |         MR. PRICE:  Oh.  No apology necessary. |
| 10:55 | 16 |          *(Document provided to the witness.)* |
| 10:55 | 17 | BY MR. PRICE: |
| 10:55 | 18 | Q.   So that's a drawing you did before the meeting with |
| 10:55 | 19 | MGA, right? |
| 10:55 | 20 | A.   Yes. |
| 10:56 | 21 |         MR. PRICE:  If you look at 5000 -- I'm sorry -- |
| 10:56 | 22 | 500108 *(sic)*.  Would you tell us what that is. |
| 10:56 | 23 |          *(Document provided to the witness.)* |
| 10:56 | 24 |         THE WITNESS:  Okay. |
| | 25 | |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:56 | 1 | BY MR. PRICE: |
| 10:56 | 2 | Q.   Could you tell us what that is? |
| 10:56 | 3 | A.   That is a drawing of Jade in a glamorous look. |
| 10:56 | 4 | MR. PRICE:  Your Honor, move Exhibit 5-00108 into |
| 10:57 | 5 | evidence. |
| 10:57 | 6 | THE COURT:  Received. |
| 10:57 | 7 | *(Exhibit No. 5-00108 received in evidence.)* |
| 10:57 | 8 | *(Document displayed.)* |
| 10:57 | 9 | BY MR. PRICE: |
| 10:57 | 10 | Q.   And this was a drawing that you did while you were at |
| 10:57 | 11 | Mattel, correct? |
| 10:57 | 12 | A.   I don't remember exactly. |
| 10:57 | 13 | Q.   Is this one of the evening-dress looks that you did for |
| 10:57 | 14 | Jade? |
| 10:57 | 15 | A.   Yes. |
| 10:57 | 16 | Q.   If you would look at June 17, 2008, A.M., at 2742, |
| 10:57 | 17 | lines 5 through 9. |
| 10:57 | 18 | *(Document provided to the witness.)* |
| 10:58 | 19 | THE WITNESS:  Which page?  Which line? |
| | 20 | BY MR. PRICE: |
| 10:58 | 21 | Q.   It's 2742, lines 5 through 9. |
| 10:58 | 22 | A.   Okay. |
| 10:58 | 23 | Q.   And does that refresh your recollection that 5-00108 |
| 10:58 | 24 | was done while you were at Mattel? |
| 10:58 | 25 | A.   Yes. |

CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

86

| | | |
|---|---|---|
| 10:58 | 1 | Q.   And if you'd look at Exhibit 10-0002 -- or 00002. |
| 10:59 | 2 | *(Document provided to the witness.)* |
| 10:59 | 3 | BY MR. PRICE: |
| 10:59 | 4 | Q.   Isn't that a drawing you did while you were at Mattel? |
| 10:59 | 5 | A.   I believe so, yes. |
| 10:59 | 6 | MR. PRICE:  Your Honor, move Exhibit 10-00002 into |
| 10:59 | 7 | evidence. |
| 10:59 | 8 | THE COURT:  Received. |
| 10:59 | 9 | *(Exhibit No. 10-00002 received in evidence.)* |
| 10:59 | 10 | *(Document displayed.)* |
| 10:59 | 11 | BY MR. PRICE: |
| 11:00 | 12 | Q.   If you look at the bottom of that, there's a -- it's |
| 11:00 | 13 | signed -- do you know Mr. Larian's signature?  Are you |
| 11:00 | 14 | familiar with it? |
| 11:00 | 15 | A.   Uh, no. |
| 11:00 | 16 | Q.   So you can't tell us whether that's Mr. Larian's |
| 11:00 | 17 | signature or not? |
| 11:00 | 18 | A.   No, I can't. |
| 11:00 | 19 | Q.   It appears to have the date "June 2000"? |
| 11:00 | 20 | A.   Yes. |
| 11:00 | 21 | Q.   And then it says -- |
| 11:00 | 22 | MS. KELLER:  Counsel, I think it says "2002." |
| 11:00 | 23 | MR. PRICE:  Okay. |
| 11:00 | 24 | BY MR. PRICE: |
| 11:00 | 25 | Q.   Can you tell us whether it's 2000 or 2002? |

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 87 of 113   Page ID #:293276
CV 04-9049 DOC - 2/17/2011 - Day 10, Volume 1 of 4

87

| | | |
|---|---|---|
| 11:00 | 1 | A.   Can I tell you? |
| 11:00 | 2 | Q.   Yeah. |
| 11:00 | 3 | MS. KELLER:  I'm referring to the handwritten |
| 11:00 | 4 | portion. |
| 11:00 | 5 | MR. PRICE:  Yeah. |
| 11:00 | 6 | THE WITNESS:  I can't tell. |
| 11:00 | 7 | BY MR. PRICE: |
| 11:00 | 8 | Q.   You can tell the date below that, though, which says, |
| 11:00 | 9 | "Contract date:  September 18, 2000," correct? |
| 11:01 | 10 | A.   Yes. |
| 11:01 | 11 | Q.   And do you know who wrote that on the document? |
| 11:01 | 12 | A.   No. |
| 11:01 | 13 | Q.   As of 1999, it's correct that you didn't have a Bratz |
| 11:01 | 14 | drawing that had a face and a body together? |
| 11:01 | 15 | A.   Uh, I don't know.  I don't remember. |
| 11:01 | 16 | Q.   If you'd look at June 20, 2008, at 3245, 18, to 3246, |
| 11:02 | 17 | 33 (sic). |
| 11:02 | 18 | *(Document provided to the witness.)* |
| 11:02 | 19 | THE WITNESS:  Which lines? |
| 11:02 | 20 | BY MR. PRICE: |
| 11:02 | 21 | Q.   It's 3245, line 18, to 3246, line 23. |
| 11:02 | 22 | MS. KELLER:  Objection.  Your Honor, this does not |
| 11:02 | 23 | refer to the same documents. |
| 11:02 | 24 | THE COURT:  Well, the answer on line 18 to 23 on |
| 11:02 | 25 | 3246 -- |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:02 | 1 | MS. KELLER:  Refers to the master drawing versus |
| 11:03 | 2 | any drawing. |
| 11:03 | 3 | THE COURT:  Counsel? |
| 11:03 | 4 | MR. PRICE:  That's referring to all he had in |
| 11:03 | 5 | 1998. |
| 11:03 | 6 | THE COURT:  Yeah.  Overruled. |
| 11:03 | 7 | THE WITNESS:  Okay. |
| 11:03 | 8 | BY MR. PRICE: |
| 11:03 | 9 | Q.   You've referred -- or you testified there were, quote, |
| 11:03 | 10 | "master drawings," correct? |
| 11:03 | 11 | A.   Yes. |
| 11:03 | 12 | Q.   Okay.  And what do you mean by "master drawings"? |
| 11:03 | 13 | A.   Uh, I think they were just the line drawings. |
| 11:04 | 14 | Q.   And your testimony is those were in 1998? |
| 11:04 | 15 | A.   Yes. |
| 11:04 | 16 | Q.   And is it correct that if we see an exhibit which has a |
| 11:04 | 17 | Bratz drawing with a face and a body together, that that |
| 11:04 | 18 | didn't occur until 1999? |
| 11:04 | 19 | A.   I don't know.  I don't remember. |
| 11:04 | 20 | Q.   If you'd look at specifically at 3246, lines 5 through |
| 11:04 | 21 | 23. |
| 11:04 | 22 | A.   Okay. |
| 11:04 | 23 | Q.   It's true, is it not, that, if someone said that in |
| 11:05 | 24 | 2008 *(sic)* they saw a drawing -- a Bratz drawing with a body |
| 11:05 | 25 | and a face together, that they would be mistaken? |

CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

89

| | | |
|---|---|---|
| 11:05 | 1 | A.   Uh, I don't remember, but I don't disagree with the |
| 11:05 | 2 | prior testimony. |
| 11:05 | 3 | Q.   And your prior testimony was that if someone said that |
| 11:05 | 4 | in August of '98 they saw a drawing with a body and a face |
| 11:05 | 5 | together, they would be mistaken, right? |
| 11:05 | 6 | A.   Yes. |
| 11:05 | 7 | Q.   And that's because a drawing with a body and a face |
| 11:05 | 8 | together didn't exist in 1998, right? |
| 11:05 | 9 | A.   Uh, I don't remember. |
| 11:05 | 10 | Q.   Okay.  If you'd look at 3246, lines 15 through 23. |
| 11:05 | 11 | A.   Okay. |
| 11:05 | 12 | Q.   Does that refresh your recollection that drawings |
| 11:06 | 13 | didn't exist which had face and body together in 1998? |
| 11:06 | 14 | A.   No, not really. |
| 11:06 | 15 | Q.   Do you believe the testimony that you just read is |
| 11:06 | 16 | correct? |
| 11:06 | 17 | A.   Yes. |
| 11:06 | 18 | Q.   And the testimony that you read was that the drawings |
| 11:06 | 19 | in 1998 didn't have fashions and face together, correct? |
| 11:06 | 20 | MS. KELLER:  Objection.  Vague as to which |
| 11:06 | 21 | drawings. |
| 11:06 | 22 | THE COURT:  Well, counsel is referring to the |
| 11:06 | 23 | master drawings. |
| 11:06 | 24 | MR. PRICE:  Yes. |
| 11:06 | 25 | THE WITNESS:  I'm sorry.  What now? |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 90 of 113   Page ID #:293279
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

90

| 11:06 | 1 | BY MR. PRICE: |
| 11:06 | 2 | Q.   Your testimony on June 20, 2008, was that master |
| 11:06 | 3 | drawings didn't exist in 1998, which had the fashions and |
| 11:06 | 4 | the face and the body all together, correct? |
| 11:06 | 5 | A.   Yes. |
| 11:06 | 6 | Q.   And if someone said that they saw such a drawing in |
| 11:06 | 7 | 1998 -- that is, something which had, you know, the fashions |
| 11:07 | 8 | and the face and the body in a picture -- then they would be |
| 11:07 | 9 | mistaken, correct? |
| 11:07 | 10 | A.   I just don't remember right now.  But again, I don't |
| 11:07 | 11 | disagree with the prior testimony. |
| 11:07 | 12 | Q.   Which is that, if someone said they saw a drawing with |
| 11:07 | 13 | the fashions and the face and the body all together in 1998, |
| 11:07 | 14 | they would be mistaken? |
| 11:07 | 15 |         MS. KELLER:  Objection as to which drawings. |
| 11:07 | 16 |         THE COURT:  Counsel, this question referred to |
| 11:07 | 17 | master drawings? |
| 11:07 | 18 |         MR. PRICE:  Yes. |
| 11:07 | 19 |         THE COURT:  So I'm going to sustain the objection |
| 11:07 | 20 | until that's clear. |
| 11:07 | 21 | BY MR. PRICE: |
| 11:07 | 22 | Q.   Could you tell us what -- again, we defined this.  What |
| 11:07 | 23 | are master drawings? |
| 11:07 | 24 | A.   I believe they were just line drawings. |
| 11:07 | 25 | Q.   And can you -- so what do you mean by "line drawings"? |

CV 04-9049 DOC - 2/17/2011 - Day 10, Volume 1 of 4

91

| 11:07 | 1 | A.    Um, drawings that were inked in. |
| 11:07 | 2 | Q.    And why were they inked in? |
| 11:07 | 3 | A.    I don't remember. |
| 11:08 | 4 | Q.    Why did you draw a master drawing? |
| 11:08 | 5 | A.    I don't remember.  I don't remember. |
| 11:08 | 6 | Q.    If you'd look at Exhibit 62. |
| 11:08 | 7 | *(Document provided to the witness.)* |
| 11:08 | 8 | BY MR. PRICE: |
| 11:08 | 9 | Q.    Do you recognize this as one of the drawings that you |
| 11:08 | 10 | had notarized August 26, 1999?  Correct? |
| 11:09 | 11 | A.    Yes. |
| 11:09 | 12 | Q.    And is that something you considered to be a master |
| 11:09 | 13 | drawing? |
| 11:09 | 14 | A.    I believe so, yes. |
| 11:09 | 15 | Q.    So do you recall why you -- why you drew master |
| 11:09 | 16 | drawings like this in 1999 or 2000? |
| 11:09 | 17 | A.    I'm sorry.  What now? |
| 11:09 | 18 | Q.    Do you know why you did master drawings like this in |
| 11:09 | 19 | 1999 or 2000, after 1998? |
| 11:09 | 20 | A.    I would probably just do that to make a finished |
| 11:09 | 21 | illustration. |
| 11:09 | 22 | MS. KELLER:  And, Your Honor, I'm going to object |
| 11:09 | 23 | and move to strike as vague as to time. |
| 11:09 | 24 | THE COURT:  Overruled. |
| | 25 | |

| 11:09 | 1 | BY MR. PRICE: |
|---|---|---|
| 11:09 | 2 | Q.   So when you say "a finished illustration" -- is that |
| 11:09 | 3 | what you said? |
| 11:09 | 4 | A.   Yes. |
| 11:09 | 5 | Q.   So what do you mean by "finished illustration"? |
| 11:10 | 6 | A.   Uh, something that would later be just finished, either |
| 11:10 | 7 | with color or whatever. |
| 11:10 | 8 | Q.   And would you use these drawings to create other |
| 11:10 | 9 | drawings? |
| 11:10 | 10 | A.   Sometimes, yes. |
| 11:10 | 11 | Q.   Could you explain to the jury how you did that. |
| 11:10 | 12 | A.   Um, did -- did what now? |
| 11:10 | 13 | Q.   How you would use these drawings, these master |
| 11:10 | 14 | drawings, to create other drawings. |
| 11:10 | 15 | A.   Uh, generally, with a light box and, um, illustration |
| 11:10 | 16 | board. |
| 11:10 | 17 | Q.   So, for example, let's look at Exhibit 62-00004. |
| 11:10 | 18 | (Document displayed.) |
| 11:10 | 19 | BY MR. PRICE: |
| 11:11 | 20 | Q.   This is another one of the drawings that you had |
| 11:11 | 21 | notarized on August 26, 1999, correct? |
| 11:11 | 22 | A.   Yes. |
| 11:11 | 23 | Q.   While you were a Mattel employee, correct? |
| 11:11 | 24 | MS. KELLER:  Objection.  Objection to "while you |
| 11:11 | 25 | were a Mattel employee," Your Honor.  It's vague. |

CV 04-9049 DOC – 2/1/2011 – Day 10, Volume 1 of 4

93

| | | |
|---|---|---|
| 11:11 | 1 | MR. PRICE:  Let me rephrase. |
| 11:11 | 2 | BY MR. PRICE: |
| 11:11 | 3 | Q.   This is a drawing you had notarized on August 26, 1999, |
| 11:11 | 4 | correct? |
| 11:11 | 5 | A.   Yes. |
| 11:11 | 6 | Q.   While you were a Mattel employee? |
| 11:11 | 7 | MS. KELLER:  Same objection, Your Honor.  It's |
| 11:11 | 8 | vague as to whether he was at Mattel. |
| 11:11 | 9 | THE COURT:  Yeah. |
| 11:11 | 10 | Just the date, Counsel. |
| 11:11 | 11 | BY MR. PRICE: |
| 11:11 | 12 | Q.   As of August 26, 1999, as of that date, you were a |
| 11:11 | 13 | Mattel employee, correct? |
| 11:11 | 14 | A.   Yes. |
| 11:11 | 15 | Q.   And you had these notarized at the notary's home, |
| 11:11 | 16 | right? |
| 11:11 | 17 | A.   Yes. |
| 11:11 | 18 | Q.   So is this what you considered to be a master drawing? |
| 11:11 | 19 | A.   I believe so, yes. |
| 11:11 | 20 | Q.   And you would use your light box to sort of put what |
| 11:12 | 21 | we've seen as the faces, 62-0001, and then put those over |
| 11:12 | 22 | this body, 62-0004, right? |
| 11:12 | 23 | A.   Yes. |
| 11:12 | 24 | Q.   If you would go to Exhibit 779. |
| 11:13 | 25 | *(Document provided to the witness.)* |

DEBBIE GALE, U.S. COURT REPORTER

94

| 11:59 | 1 | BY MR. PRICE: |
| 11:13 | 2 | Q.   And do you recognize 779? |
| 11:13 | 3 | A.   Yes. |
| 11:13 | 4 | Q.   Could you tell us what it is? |
| 11:13 | 5 | A.   This is a drawing of the four characters. |
| 11:13 | 6 | MR. PRICE:  Move Exhibit 779-00001 into evidence. |
| 11:13 | 7 | THE COURT:  Received. |
| 11:13 | 8 | *(Exhibit No. 779-00001 received in evidence.)* |
| 11:13 | 9 | *(Document displayed.)* |
| 11:59 | 10 | BY MR. PRICE: |
| 11:13 | 11 | Q.   Now, is this a copy of a colored drawing? |
| 11:13 | 12 | A.   It appears to be, yes. |
| 11:13 | 13 | Q.   And you can tell that because of the shading? |
| 11:13 | 14 | A.   Yes. |
| 11:13 | 15 | Q.   This is what has come to be known as the "Hero" pose? |
| 11:13 | 16 | A.   I don't know anything about that. |
| 11:13 | 17 | Q.   Okay.  So this drawing has heads and bodies and |
| 11:14 | 18 | fashions combined, correct? |
| 11:14 | 19 | A.   Yes. |
| 11:14 | 20 | Q.   So this drawing wasn't created until after 1999, right? |
| 11:14 | 21 | A.   I'm sorry.  What now? |
| 11:14 | 22 | Q.   So this drawing wasn't created until after you started |
| 11:14 | 23 | working for Mattel in 1999? |
| 11:14 | 24 | A.   Um, the color version or just the line drawing? |
| 11:14 | 25 | Q.   The line drawing with the body and the faces and the |

CV 04-9049 DOC - 2/17/2011 - Day 10, Volume 1 of 4

95

| | | |
|---|---|---|
| 11:14 | 1 | fashions combined. |
| 11:14 | 2 | A.   Um, I believe that the line drawing was created in |
| 11:14 | 3 | 1998. |
| 11:14 | 4 | Q.   The date we have on here "August 1998" -- |
| 11:14 | 5 | A.   Yes. |
| 11:14 | 6 | Q.   -- that was put on there sometime after September of |
| 11:14 | 7 | 2000, correct? |
| 11:14 | 8 | A.   I don't -- I don't recall. |
| 11:14 | 9 | Q.   Do you recall earlier saying that, if there's any |
| 11:14 | 10 | drawing dated "1998," the date was put on there sometime |
| 11:15 | 11 | after 2000? |
| 11:15 | 12 | A.   Uh, yes. |
| 11:15 | 13 | Q.   Wouldn't this be created from master -- a master |
| 11:15 | 14 | drawing? |
| 11:15 | 15 | A.   You mean from a master drawing? |
| 11:15 | 16 | Q.   Yes.  Wouldn't Exhibit 779-00001 be created from a |
| 11:15 | 17 | master drawing? |
| 11:15 | 18 | A.   Yes. |
| 11:15 | 19 | Q.   Where you put the body with the head, correct? |
| 11:15 | 20 | A.   Yes. |
| 11:15 | 21 | Q.   And there were no master drawings to do that with until |
| 11:15 | 22 | 1999? |
| 11:15 | 23 |        MS. KELLER:   Objection.  Assumes facts not in |
| 11:15 | 24 | evidence. |
| | 25 | |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 2/17/2011 - Day 10, Volume 1 of 4

96

| | | |
|---|---|---|
| 11:59 | 1 | BY MR. PRICE: |
| 11:15 | 2 | Q.   Correct? |
| 11:15 | 3 | THE COURT:  Overruled. |
| 11:15 | 4 | THE WITNESS:  I remember this -- I remember this |
| 11:15 | 5 | image being created in 1998. |
| 11:15 | 6 | BY MR. PRICE: |
| 11:15 | 7 | Q.   The version with color -- of this? |
| 11:15 | 8 | A.   Uh-huh. |
| 11:15 | 9 | Q.   That version wasn't created until after you were at |
| 11:16 | 10 | Mattel, correct? |
| 11:16 | 11 | A.   Yes. |
| 11:16 | 12 | MS. KELLER:  Objection as to what "after Mattel" |
| 11:16 | 13 | means, Your Honor. |
| 11:16 | 14 | THE COURT:  Sustained. |
| 11:16 | 15 | Just restate the question. |
| | 16 | BY MR. PRICE: |
| 11:16 | 17 | Q.   After January 1999 -- that is, Exhibit 779-00001, with |
| 11:16 | 18 | color, was not created until after January of 1999, correct? |
| 11:16 | 19 | A.   Yes. |
| 11:16 | 20 | Q.   And if you look at Exhibit 3-1. |
| 11:16 | 21 | *(Document provided to the witness.)* |
| 11:17 | 22 | MR. PRICE:  Ms. Juarez, I think you have the |
| 11:17 | 23 | original up there. |
| 11:17 | 24 | *(Original document provided to the witness.)* |
| 11:17 | 25 | THE COURT:  So the record's clear, this is the |

CV 04-9049 DOC - 2/17/2011 - Day 10, Volume 1 of 4

97

| | | |
|---|---|---|
| 11:17 | 1 | original of the color -- |
| 11:17 | 2 | MR. PRICE: Yes. |
| 11:17 | 3 | THE COURT: -- drawing? |
| | 4 | BY MR. PRICE: |
| 11:17 | 5 | Q.   And do you have the original in front of you? |
| 11:17 | 6 | A.   Yes. |
| 11:17 | 7 | Q.   And that's the original of 3-1 and 779? |
| 11:18 | 8 | A.   Yes. |
| 11:18 | 9 | Q.   And you mentioned they were color -- they were colored. |
| 11:18 | 10 | Can you just kind of show that -- hold that up for the |
| 11:18 | 11 | jury? |
| 11:18 | 12 | A.   (Witness complies.) |
| 11:18 | 13 | Q.   Thank you. |
| 11:18 | 14 | MS. KELLER: Counsel, for the record, is this the |
| 11:18 | 15 | same as the one we just looked at as, um, 779-01? |
| 11:18 | 16 | MR. PRICE: 779 and 3-1 and that original, I |
| 11:18 | 17 | believe, are all the same. |
| 11:59 | 18 | BY MR. PRICE: |
| 11:18 | 19 | Q.   Mr. Bryant, if you would look at 5-79. |
| 11:19 | 20 | *(Document provided to the witness.)* |
| 11:19 | 21 | BY MR. PRICE: |
| 11:19 | 22 | Q.   And could you tell us what 5-79 is? |
| 11:19 | 23 | A.   It appears to be a drawing of one of the Bratz |
| 11:19 | 24 | characters. |
| 11:19 | 25 | Q.   Is this Hallidae? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

98

| | | |
|---|---|---|
| 11:19 | 1 | A.   Yes. |
| 11:19 | 2 | MR. PRICE:  Move Exhibit 5-79 into evidence. |
| 11:19 | 3 | THE COURT:  Received. |
| 11:19 | 4 | *(Exhibit No. 5-79 received in evidence.)* |
| 11:19 | 5 | *(Document displayed.)* |
| 11:59 | 6 | BY MR. PRICE: |
| 11:19 | 7 | Q.   And if you could show the color drawing to the jury. |
| 11:19 | 8 | A.   (Witness complies.) |
| 11:19 | 9 | THE COURT:  Now, let's be clear.  When you're |
| 11:19 | 10 | showing the color drawing to the jury, this is coming up as |
| 11:19 | 11 | black and white on the screen. |
| 11:19 | 12 | MR. PRICE:  Yes. |
| 11:19 | 13 | THE COURT:  So the difficulty for the jurors are |
| 11:19 | 14 | that they may be associating this noncolored projection with |
| 11:20 | 15 | the colored projection you're referring to. |
| 11:20 | 16 | MR. PRICE:  That's why we're identifying the |
| 11:20 | 17 | original at the same time.  This is what we got. |
| 11:20 | 18 | THE COURT:  But their visual image -- I'm just |
| 11:20 | 19 | warning both parties about the confusion.  The visual image |
| 11:20 | 20 | is the jury's looking at a black and white, when, in fact, |
| 11:20 | 21 | you're really referring to a colored drawing. |
| 11:20 | 22 | Correct? |
| 11:20 | 23 | MR. PRICE:  Yes. |
| 11:20 | 24 | THE COURT:  All right.  Then, why don't you take |
| 11:20 | 25 | this drawing down so they're not confused that's being |

CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

99

| | | |
|---|---|---|
| 11:20 | 1 | projected so that they can see the colored drawing. |
| 11:20 | 2 | MR. PRICE: Okay. |
| 11:20 | 3 | *(Displayed document removed.)* |
| 11:20 | 4 | BY MR. PRICE: |
| 11:20 | 5 | Q. So now, could you show the colored drawing to the jury. |
| 11:20 | 6 | THE WITNESS: (Witness complies.) |
| 11:20 | 7 | THE COURT: That should be 5-79. |
| 11:20 | 8 | MR. PRICE: Yes. |
| 11:20 | 9 | THE COURT: I think it would be helpful, when |
| 11:20 | 10 | you're showing color, that you just display the color and |
| 11:20 | 11 | you don't project up a black-and-white image. I think |
| 11:21 | 12 | that's going to cause confusion for both parties. |
| 11:21 | 13 | BY MR. PRICE: |
| 11:21 | 14 | Q. So Mr. Bryant, 5-79. |
| 11:21 | 15 | A. Yes. |
| 11:21 | 16 | Q. To create that, you started with a blank piece of |
| 11:21 | 17 | poster paper, right? |
| 11:21 | 18 | A. Yes. |
| 11:21 | 19 | Q. And then you had to trace the outline? |
| 11:21 | 20 | A. Yes. |
| 11:21 | 21 | Q. And then you had to add color? |
| 11:21 | 22 | A. Yes. |
| 11:21 | 23 | Q. And that process was done sometime in 1999/2000? |
| 11:21 | 24 | A. Uh, yes. |
| 11:21 | 25 | Q. And that process is true with respect to all of the |

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 100 of 113   Page ID #:293289
CV 04-9049 DOC - 2/17/2011 - Day 10, Volume 1 of 4

100

| 11:21 | 1 | color drawings that we see of the Bratz? |
| 11:21 | 2 | A.   I believe so, yes. |
| 11:21 | 3 | Q.   If you could look at Exhibit 1-2. |
| 11:21 | 4 | *(Document provided to the witness.)* |
| 11:21 | 5 | *(Document displayed.)* |
| 11:21 | 6 | BY MR. PRICE: |
| 11:22 | 7 | Q.   And do you recognize Exhibit 1-2? |
| 11:22 | 8 | A.   Yes. |
| 11:22 | 9 | MR. PRICE:  Your Honor, my notes have that as not |
| 11:22 | 10 | being in evidence, so just in case I'll move it in. |
| 11:22 | 11 | THE COURT:  Received. |
| 11:22 | 12 | *(Exhibit No. 1-2 received in evidence.)* |
| 11:22 | 13 | BY MR. PRICE: |
| 11:22 | 14 | Q.   And this is the typed description of the Bratz, |
| 11:22 | 15 | correct? |
| 11:22 | 16 | A.   Yes. |
| 11:22 | 17 | Q.   And you typed this sometime in 1999, correct? |
| 11:22 | 18 | A.   I don't remember exactly. |
| 11:23 | 19 | Q.   Was this typed up in Elise Cloonan's computer -- on her |
| 11:23 | 20 | computer? |
| 11:23 | 21 | A.   I -- I don't remember. |
| 11:23 | 22 | Q.   If you look at page 292, line 18, to 294, line 18. |
| 11:23 | 23 | MR. McCONVILLE:  What's the date? |
| 11:24 | 24 | MR. PRICE:  This is November 5, 2004. |
| 11:24 | 25 | *(Document provided to the witness.)* |

| | | |
|---|---|---|
| 11:24 | 1 | THE WITNESS:  Sorry.  Which page?  Which line? |
| 11:24 | 2 | MR. PRICE:  It's 292, start at line 14, to 294 |
| 11:24 | 3 | line 18. |
| 11:24 | 4 | MS. KELLER:  Objection.  Misstates the testimony. |
| 11:24 | 5 | THE COURT:  Counsel, I'm -- just a moment.  I'm |
| 11:24 | 6 | not sure.  I thought the answer was it was in color, |
| 11:24 | 7 | Counsel. |
| 11:24 | 8 | MR. PRICE:  The question -- |
| 11:24 | 9 | THE COURT:  I couldn't hear. |
| 11:24 | 10 | MR. PRICE:  The question is the date this was |
| 11:24 | 11 | typed, Your Honor.  And specifically, without the |
| 11:24 | 12 | background, it's 293, line 24. |
| 11:24 | 13 | THE COURT:  Just a moment.  293, line 24. |
| 11:24 | 14 | MR. PRICE:  Yes.  To 294, line 7. |
| 11:25 | 15 | THE COURT:  Well, if it refers to the computer, |
| 11:25 | 16 | you can ask that, Counsel. |
| 11:25 | 17 | I'm a little confused about the actual exhibit and |
| 11:25 | 18 | whether this is a color exhibit he's referring to or a |
| 11:25 | 19 | black-and-white. |
| 11:25 | 20 | MR. PRICE:  This is text, Your Honor. |
| 11:25 | 21 | THE COURT:  All right. |
| 11:25 | 22 | MR. PRICE:  That's why 293, line 24, refers to the |
| 11:25 | 23 | text. |
| 11:25 | 24 | THE COURT:  Text?  My apologies. |
| 11:25 | 25 | You can ask. |

| | | |
|---|---|---|
| 11:25 | 1 | BY MR. PRICE: |
| 11:25 | 2 | Q.   Have you had a chance to look over that? |
| 11:25 | 3 | A.   Yes. |
| 11:25 | 4 | Q.   And does that refresh your recollection that this text |
| 11:25 | 5 | was typed on Elise Cloonan's computer? |
| 11:25 | 6 | A.   I don't remember it right now, but I don't disagree |
| 11:25 | 7 | with the prior testimony. |
| 11:25 | 8 | Q.   And your prior testimony was this was typed on Elise |
| 11:25 | 9 | Cloonan's computer? |
| 11:25 | 10 | A.   Yes. |
| 11:25 | 11 | Q.   And that was typed up in 1999? |
| 11:26 | 12 | A.   Yes. |
| 11:26 | 13 |       MR. PRICE:  Ms. Juarez, do we have Exhibit 1, the |
| 11:26 | 14 | original? |
| 11:26 | 15 |       MS. JUAREZ:  We do. |
| 11:26 | 16 |        *(Document provided to the witness.)* |
| 11:26 | 17 | BY MR. PRICE: |
| 11:26 | 18 | Q.   Do you have Exhibit 1 in front of you? |
| 11:26 | 19 | A.   Yes. |
| 11:26 | 20 | Q.   And if you could just show some of the pages to the |
| 11:26 | 21 | jury so they get an idea -- well, actually, tell us what |
| 11:26 | 22 | Exhibit 1 is. |
| 11:26 | 23 |       THE COURT:  Are you capable of projecting these in |
| 11:27 | 24 | color? |
| 11:27 | 25 |       MR. PRICE:  No, Your Honor. |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 103 of 113   Page ID #:293292
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

103

| | | |
|---|---|---|
| 11:27 | 1 | We could on the ELMO. |
| 11:27 | 2 | THE COURT:  Okay.  Why don't you put it on the |
| 11:27 | 3 | ELMO. |
| 11:27 | 4 | MR. PRICE:  I'd have to grab them. |
| 11:27 | 5 | THE COURT:  If we're referring to color, I'd like |
| 11:27 | 6 | that to go on the ELMO.  If it's a black-and-white sketch or |
| 11:27 | 7 | a pencil sketch -- that way it'll dissipate confusion for |
| 11:27 | 8 | the jury. |
| 11:27 | 9 | THE WITNESS:  Your Honor?  Your Honor, is there |
| 11:27 | 10 | any way that I can take a restroom break? |
| 11:27 | 11 | THE COURT:  Sure. |
| 11:27 | 12 | Ladies and gentlemen, we're going to need to take |
| 11:27 | 13 | a recess.  Why don't we just take a recess until 12:30, give |
| 11:27 | 14 | you an easy - not "easy" - an early lunch. |
| 11:27 | 15 | You're admonished not to discuss this matter |
| 11:27 | 16 | amongst yourselves nor form or express any opinion |
| 11:27 | 17 | concerning the case. |
| 11:27 | 18 | We'll see you at 12:30. |
| 11:27 | 19 | (Jury recesses for lunch at 11:27 a.m.) |
| 11:28 | 20 | *(Outside the presence of the jury.)* |
| 11:28 | 21 | THE COURT:  All right.  Mr. Bryant, why don't you |
| 11:28 | 22 | go use the restroom. |
| 11:28 | 23 | THE WITNESS:  Okay. |
| 11:28 | 24 | THE COURT:  Thank you, sir. |
| 11:28 | 25 | All right.  Counsel, I would like to see you back |

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 104 of 113   Page ID #:293293
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

104

| | | |
|---|---|---|
| 11:28 | 1 | at 12:00 noon. |
| 11:28 | 2 | See you in 30 minutes. |
| 11:28 | 3 | *(Pause in the proceedings at 11:28 a.m.)* |
| 12:09 | 4 | *(Proceedings resumed at 12:10 p.m.)* |
| 12:10 | 5 | *(Outside the presence of the jury.)* |
| 12:10 | 6 | THE COURT: All right. All counsel are present. |
| 12:10 | 7 | The jury is not. |
| 12:10 | 8 | All right. During the oral argument before the |
| 12:10 | 9 | Ninth Circuit, Mattel's counsel implied that Mattel did not |
| 12:10 | 10 | intend to pursue a trade secret misappropriation claim based |
| 12:10 | 11 | on MGA's use of the product names "Bratz" and "Jade." |
| 12:10 | 12 | The District Court had reserved a trade secret |
| 12:10 | 13 | misappropriation claim for Phase II that was predicated upon |
| 12:10 | 14 | MGA's use of Bryant's drawings. The wrongful acquisition of |
| 12:10 | 15 | these product names, appellate counsel argued, was supported |
| 12:11 | 16 | by the Phase I jury finding that MGA aided and abetted |
| 12:11 | 17 | Bryant's breaches of his fiduciary duty and duty of loyalty |
| 12:11 | 18 | to Mattel, as well as MGA's intentional interference with |
| 12:11 | 19 | Bryant's contractual relations with Mattel. |
| 12:11 | 20 | In essence, Mattel used these claims as proxies |
| 12:11 | 21 | for a trade secret misappropriation claim predicated upon |
| 12:11 | 22 | the wrongful disclosure and acquisition of the "Bratz" and |
| 12:11 | 23 | "Jade" product names to which Mattel claimed ownership. |
| 12:11 | 24 | Mattel, thereafter, obtained a constructive trust |
| 12:11 | 25 | over the Bratz trademark portfolio on the grounds that, |

| | | |
|---|---|---|
| 12:11 | 1 | first, it had the rights to the ideas for the name "Bratz;" |
| 12:11 | 2 | and, second, MGA wrongfully acquired that idea. |
| 12:11 | 3 | While the appeal was pending, and for the first |
| 12:11 | 4 | time, Mattel expressly pled a trade secret claim based on |
| 12:11 | 5 | the misappropriation of the product names "Bratz" and |
| 12:11 | 6 | "Jade."  MGA objected, and Mattel eventually prevailed when |
| 12:12 | 7 | this Court allowed the claim to proceed. |
| 12:12 | 8 | Now, we've had quite a few discussions off and on |
| 12:12 | 9 | the record about that. |
| 12:12 | 10 | Mattel's trade secret misappropriation claim based |
| 12:12 | 11 | on the Bratz name supersedes, in large part, Mattel's other |
| 12:12 | 12 | state law claims, which previously served as vehicles |
| 12:12 | 13 | through which Mattel could seek damages for MGA's |
| 12:12 | 14 | acquisition of the "Bratz" name. |
| 12:12 | 15 | But while those claims, as presented to the |
| 12:12 | 16 | Phase I jury, required Mattel to show disclosure, |
| 12:12 | 17 | acquisition, and/or use, I think Mattel must now clear the |
| 12:12 | 18 | additional hurdle of proving that Bratz ideas derived |
| 12:12 | 19 | independent economic value from not being generally known |
| 12:12 | 20 | and were the subject of reasonable efforts to maintain |
| 12:12 | 21 | secrecy, pursuant to California Civil Code Section 3426.1. |
| 12:12 | 22 | Moreover, while Mattel could seek double or triple |
| 12:12 | 23 | recovery for the same conduct through three state law |
| 12:13 | 24 | claims, it is now limited to seeking relief through its |
| 12:13 | 25 | trade secret misappropriate claim. |

| | |
|---|---|
| 12:13 | 1 |
| 12:13 | 2 |
| 12:13 | 3 |
| 12:13 | 4 |
| 12:13 | 5 |
| 12:13 | 6 |
| 12:13 | 7 |
| 12:13 | 8 |
| 12:13 | 9 |
| 12:13 | 10 |
| 12:13 | 11 |
| 12:13 | 12 |
| 12:13 | 13 |
| 12:13 | 14 |
| 12:13 | 15 |
| 12:14 | 16 |
| 12:14 | 17 |
| 12:14 | 18 |
| 12:14 | 19 |
| 12:14 | 20 |
| 12:14 | 21 |
| 12:14 | 22 |
| 12:14 | 23 |
| 12:14 | 24 |
| 12:14 | 25 |

And, by the way, I've said a number of times on the record "trademark." Anytime I've said that, it's a trade secret claim that I'm obviously referring to. So my apologies to the record.

Most importantly, trade secret law supersedes Mattel's request for a constructive trust and the equitable transfer of the "Bratz" and "Jade" trademarks, because Section 3426.2 only allows injunctive relief to the extent necessary to protect the secrecy of the misappropriated material. And I'm going to cite *American Package* -- or -- *& Packaging Products v. Kirgan*, K-I-R-G-A-N, 183 Cal.App. 3d, 1318, 1326, (1986), holding that injunction should not issue when information is generally known in the trade, and already used by good-faith competitors. Also citing Cadence *Design Systems v. Avanti Corporation*, 29 Cal.4th 215, and also *Richardson v. Suzuki Motor Corporation*, 868 F.2d 1226, Federal Circuit, (1998), applying pre-UTSA, U-T-S-A, California Trade Secret Law and affirming assignment of patents obtained as a result of misappropriated trade secrets, which also cites *De Long Corporation v. Lucas*, 176 F.Supp. 104, Southern District of New York (1959), affirmed by the Second Circuit at 278 F.2d 804, service denied by the U.S. Supreme Court, 364 U.S. 833.

Mattel will now never acquire MGA's intellectual property in the Bratz trademark portfolio because it's trade

| | | |
|--|--|--|
| 12:14 | 1 | secret claim supersedes that relief. |
| 12:15 | 2 | Now, I've been asking myself to what relief is |
| 12:15 | 3 | Mattel entitled.  And many of the requests coming before the |
| 12:15 | 4 | Court have to do with the ultimate determination of what the |
| 12:15 | 5 | appropriate damages mechanism is if liability is found.  And |
| 12:15 | 6 | the answer depends upon the specific trade secrets at issue, |
| 12:15 | 7 | as well as the products that allegedly incorporate those |
| 12:15 | 8 | trade secrets. |
| 12:15 | 9 | For instance, the doll names "Bratz" and "Jade" -- |
| 12:15 | 10 | some of Bryant's sketches and the sculpt, together |
| 12:15 | 11 | constituted the blueprint for the first generation Bratz |
| 12:15 | 12 | dolls, as well as Formal Funk Dana and the Ooh-La-La Cloe. |
| 12:15 | 13 | However, those products are at issue in Mattel's claim for |
| 12:15 | 14 | copyright infringement.  And Mattel may not obtain a double |
| 12:15 | 15 | recovery where the damages for copyright infringement and |
| 12:15 | 16 | trade secret misappropriation are co-extensive, citing |
| 12:15 | 17 | *Computer Association Internal National, Inc. v. Altai, Inc.*, |
| 12:15 | 18 | 982 F.2d 693, 720, Second Circuit, (1992). |
| 12:16 | 19 | Mattel also claims that the product concept |
| 12:16 | 20 | developed by Bryant was a trade secret, which would be |
| 12:16 | 21 | cognizable if the product were specifically identified, like |
| 12:16 | 22 | the concept for noise producing toy railroad tracks, citing |
| 12:16 | 23 | *Learning Curve Toys v. Playwood Toys* at 342 F.3d, 714, at |
| 12:16 | 24 | 726, Seventh Circuit, (2003).  But Mattel does not describe |
| 12:16 | 25 | the allegedly misappropriated product concept with the |

| | | |
|---|---|---|
| 12:16 | 1 | particularity the Court or fact-finder needs in order to |
| 12:16 | 2 | determine its independent economic value, citing *Whyte v.* |
| 12:16 | 3 | *Schlage*, S-C-H-L-A-G-E, *Lock Company*, 101 Cal.App. 4th, 1443 |
| 12:16 | 4 | at 1453, (2002). |
| 12:16 | 5 | The general ideas that Bryant brought to MGA are |
| 12:16 | 6 | not trade secrets, citing *Cybertek Computer Products, Inc.* |
| 12:16 | 7 | *v. Whitfield*, 203 U.S.P.Q. 1020, (1977), which states, while |
| 12:17 | 8 | general concepts are not protectable, the specific |
| 12:17 | 9 | implementation involving a particular combination of general |
| 12:17 | 10 | concepts may well amount to a trade secret. |
| 12:17 | 11 | Indeed, Bryant did not bring to MGA the concepts |
| 12:17 | 12 | for the vast majority of the Bratz branded products, |
| 12:17 | 13 | including many other Bratz characters, subsequent |
| 12:17 | 14 | generations of the original four dolls, and other doll lines |
| 12:17 | 15 | and a variety of Bratz doll accessories, along with several |
| 12:17 | 16 | Bratz video games and movie. And that's cited by this court |
| 12:17 | 17 | at *Mattel, Inc.*, 616 F.3d 904 at 911. |
| 12:17 | 18 | The idea to use the name "Bratz" in connection |
| 12:17 | 19 | with non-doll products and multimedia probably wasn't |
| 12:17 | 20 | Bryant's idea; and even if it was, probably, it wasn't a |
| 12:17 | 21 | trade secret. In fact, I think the representation is, |
| 12:17 | 22 | although the Court hasn't heard the specific evidence, that |
| 12:18 | 23 | the name "Bratz" was, in fact, owned by another party or |
| 12:18 | 24 | concern. |
| 12:18 | 25 | At most, the misappropriated information was only |

12:18    1    a tiny part of the value of these products, whose success

12:18    2    was overwhelmingly the result of MGA's legitimate efforts.

12:18    3    And this was of great, great concern to the Ninth Circuit.

12:18    4    And I sometimes refer to this as the "sweat-equity concept"

12:18    5    that Judge Kozinski referred to.

12:18    6         If the trade secret accounts for only a portion of

12:18    7    the profits earned on the defendant's sales, such as when

12:18    8    the trade secret relates to a single component of a product

12:18    9    marketable without a secret, an award to the plaintiff of

12:18   10    the defendant's entire profit may be unjust, *Vermont*

12:18   11    *Microsystems v. Autodesk,* 138 F.3d, 449, at 450

12:18   12    Second Circuit, citing the Restatement of the Law of Unfair

12:18   13    Competition.

12:18   14         It is also inherently speculative in such a

12:18   15    circumstance to prove plaintiff's lost profits attributed to

12:18   16    the sale of products whose value's derived, in minimal part,

12:19   17    for the misappropriated trade secret information.  And I'm

12:19   18    citing Trade Secret's Practice in California, Continuing

12:19   19    Education Bar, Second Edition, 2001, at Section 12.20, which

12:19   20    are at pages 438 through 439.  Indeed, it could be argued

12:19   21    the speculative nature of Mattel's injury was a primary

12:19   22    reason why the Court entered summary judgment against Mattel

12:19   23    on its claims arising under the Racketeering and Influencing

12:19   24    Corrupt Acts (sic).  In fact, it's not argued.  It's one of

12:19   25    the reasons I did enter into it.

| | | |
|---|---|---|
| 12:19 | 1 | Now, I want to stop for just a moment. |
| 12:19 | 2 | Those are some initial thoughts I'd had.  And the |
| 12:19 | 3 | difficulty we're running into is conceptualizing.  If this |
| 12:19 | 4 | was just a trade secret misappropriation claim, I'm not too |
| 12:19 | 5 | certain that the word "similar" wouldn't be appropriate and |
| 12:19 | 6 | used. |
| 12:19 | 7 | But here, I'm running into if, whether the Ninth |
| 12:20 | 8 | Circuit is signaling this Court.  And your belief is, from |
| 12:20 | 9 | Mattel, that they have not; that there was just a copyright |
| 12:20 | 10 | infringement claim; that they never spoke to trade secret |
| 12:20 | 11 | misappropriation.  I think MGA would argue differently; and |
| 12:20 | 12 | that is, there was a signaling to this Court, and a strong |
| 12:20 | 13 | signal from Judge Wardlaw, for instance, and that is that |
| 12:20 | 14 | this may, in fact, be a consideration for this Court. |
| 12:20 | 15 | I need time to listen, once again, to the oral |
| 12:20 | 16 | arguments of the Circuit.  I've told you that informally, |
| 12:20 | 17 | and now I'm going to set a record.  And this was given to me |
| 12:20 | 18 | in appropriate manner at 8:00 o'clock last evening, and told |
| 12:20 | 19 | that Carter Bryant was the appropriate vehicle. |
| 12:20 | 20 | He is not.  He is not. |
| 12:20 | 21 | You have an expert who can testify about this, if |
| 12:20 | 22 | I make a final determination.  And I think his name is |
| 12:20 | 23 | Leonard -- I'm sorry -- Lee Loetz.  And, therefore, this |
| 12:21 | 24 | off-the-record discussion by Mr. Zeller this morning |
| 12:21 | 25 | concerning this panic to have Mr. Bryant testify is not |

12:21    1    something that the Court's accepting.

12:21    2              Now, second, this is -- it may be that I allow the

12:21    3    word or a comparison involving "similarity," or I may

12:21    4    restrict you to the word "use."  Because if you look at the

12:21    5    statute, the word "use" is used, not "similar."  So please

12:21    6    help me.  Where are you coming up with the word "similar"?

12:21    7              And now, Mr. Price, you're responsible.  Where

12:21    8    does that come from?

12:21    9              MR. PRICE:  That comes from Mr. Bryant's prior

12:21    10   testimony.

12:21    11             THE COURT:  It's irrelevant.

12:21    12             The standard that I'm going to instruct on is

12:21    13   "use."  And I think we could have avoided this entire

12:21    14   discussion and hashed this out on Monday, if you were

12:21    15   present.  Because I think I would have indicated to you at

12:21    16   that time that you could go forward using the word "use,"

12:22    17   but not using the word "similar."

12:22    18             Now you're precluded.  Is that understood,

12:22    19   Mr. Price?

12:22    20             MR. PRICE:  Yes.

12:22    21             THE COURT:  Until I have time to make a thoughtful

12:22    22   decision and put this in writing, we're not going there.

12:22    23             And I would suggest, unfortunately, regardless,

12:22    24   that if you're going to take this on, I want you here.

12:22    25   Because I think this would have been raised yesterday, if I

| | | |
|---|---|---|
| 12:22 | 1 | would have had lead trial counsel here, or on Sunday -- or |
| 12:22 | 2 | give it to Mr. Quinn. |
| 12:22 | 3 | Understood? |
| 12:22 | 4 | MR. PRICE:  Yes. |
| 12:22 | 5 | THE COURT:  Okay. |
| 12:22 | 6 | All right.  Now I'm going to take a five-minute |
| 12:22 | 7 | recess. |
| 12:22 | 8 | You have five minutes, Counsel.  Then we'll be |
| 12:22 | 9 | calling the jury in. |
| 12:22 | 10 | MR. QUINN:  Your Honor? |
| 12:22 | 11 | THE COURT:  Thank you.  I'm done. |
| 12:22 | 12 | *(Recess held at 12:22 p.m.)* |
| 12:22 | 13 | *Further proceedings reported by Jane Sutton* |
| 12:23 | 14 | *Rule in Volume II.)* |
| 12:23 | 15 | -oOo- |
| 12:23 | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

Case 2:04-cv-09049-DOC-RNB   Document 9771   Filed 02/03/11   Page 113 of 113   Page ID #:293302
CV 04-9049 DOC - 2/1/2011 - Day 10, Volume 1 of 4

113

-oOo-


CERTIFICATE


        I hereby certify that pursuant to Section 753,

Title 28, United States Code, the foregoing is a true and

correct transcript of the stenographically reported

proceedings held in the above-entitled matter and that the

transcript page format is in conformance with the

regulations of the Judicial Conference of the United States.


Date:  February 1, 2011



                    _____
                    DEBBIE GALE, U.S. COURT REPORTER
                    CSR NO. 9472, RPR