1    **UNITED STATES DISTRICT COURT**

2    **CENTRAL DISTRICT OF CALIFORNIA**

3    **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4    – – – – – – –

5

6    MATTEL, INC., et al.,            )
                                       )
7            Plaintiffs,              )
                                       )
8        vs.                          ) No. CV 04-9049 DOC
                                       )    Day 12
9    MGA ENTERTAINMENT, INC., et al., )    Volume 1 of 3
                                       )
10                                     )
            Defendants.                )
11   _____)

12

13

14              REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                       Jury Trial

16                   Santa Ana, California

17                Thursday, February 3, 2011

18

19

20

21   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
22   United States District Court
     411 West 4th Street, Room 1-053
23   Santa Ana, California 92701
     (714) 558-8141
24

25   04cv9049 Mattel 2011-02-03 D12V1

**APPEARANCES OF COUNSEL:**

FOR PLAINTIFF MATTEL, INC., ET AL.:

        QUINN EMANUEL URQUHART & SULLIVAN
        BY:  JOHN QUINN
            WILLIAM PRICE
            MICHAEL T. ZELLER
            Attorneys at Law
        865 South Figueroa Street
        10th Floor
        Los Angeles, California 90017
        (213) 443-3000

FOR DEFENDANT MGA ENTERTAINMENT, INC., ET AL:

        ORRICK, HERRINGTON & SUTCLIFFE, LLP (Irvine)
        BY:  THOMAS S. McCONVILLE
            Attorney at Law
        4 Park Plaza
        Suite 1600
        Irvine, California 92614
        (949) 567-6700

        – AND –

        ORRICK, HERRINGTON & SUTCLIFFE, LLP (SF)
        BY:  ANNETTE L. HURST
            Attorney at Law
        405 Howard Street
        San Francisco, California 94105
        (415)773-5700

        – AND –

        KELLER RACKAUCKAS
        BY:  JENNIFER KELLER
            Attorney at Law
        18500 Von Karman Avenue
        Suite 560
        Irvine, California 92612
        (949) 476-8700

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 3 of 154   Page ID #:294114
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

3

1    **APPEARANCES OF COUNSEL (Continued):**

2

3    FOR CARLOS GUSTAVO MACHADO GOMEZ:

4
              LAW OFFICES OF MARK E. OVERLAND
5             By:  MARK E. OVERLAND
                    Attorney at Law
6             100 Wilshire Boulevard
              Suite 950
7             Santa Monica, California 90401
              (310) 459-2830
8
              - AND -
9
              SCHEPER KIM & HARRIS LLP
10            BY:  ALEXANDER H. COTE
                    Attorney at Law
11            601 West 5th Street
              12th Floor
12            Los Angeles, California 90071
              (213) 613-4660
13

14   ALSO PRESENT:

15            MGA ENTERTAINMENT, INC.
              BY:  JEANINE PISONI
16                  Attorney at Law
              16360 Roscoe Boulevard
17            Suite 105
              Van Nuys, California 91406
18

19            ROBERT ECKERT, Mattel CEO

20            ISAAC LARIAN, MGA CEO

21            KEN KOTARSKI, Mattel Technical Operator

22            MIKE STOVALL, MGA Technical Operator

23            RACHEL JUAREZ, Quinn Emanuel Urquart & Sullivan

24

25

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 4 of 154   Page ID #:294115
CV 04-9049 DOC – 2/3/2011 – Day 12, Volume 1 of 3

4

1                              I N D E X

2       PROCEEDINGS                                          PAGE

3       Ruling on motions                                    6

4

5       WITNESSES                 DIRECT   CROSS   REDIRECT   RECROSS

6       BRYANT, Carter

7       By Ms. Keller                      20
        (Continued)

8       By Mr. Price                                36

9

10

11                              EXHIBITS

12      EXHIBIT NO.                    IDENTIFICATION    IN EVIDENCE

13        5-30     Carter Bryant final                      24
                   designs for backpacks
14                 for dolls

15        13-00001 Letter from Mattel to                   127
                   Mr. Carter dated
16                 12/11/1998

17        791      Drawing of Bratz –                       56
                   Hallidae
18

          1154     Red notebook                             80
19
          1309     Document                                126
20
          10056-1 Fax from C. Bryant to                     27
21                 V. Marlow

22        15333    Rainy Day Rascals sketch                 83
                   by C. Bryant
23
          17483    Itsy Bitsy Bratz in                      33
24                 packaging

25

| | | | |
|---|---|---|---|
| 1 | **EXHIBITS (Continued)** | | |
| 2 | **EXHIBIT NO.** | **IDENTIFICATION** | **IN EVIDENCE** |
| 3 | 23766   Carter Bryant account | | 87 |
|   |          statements | | |
| 4 | | | |
|   | 23852   Clueless doll | | 106 |
| 5 | | | |
|   | 28757   Bratz World Familiez in | | 33 |
| 6 |          packaging | | |
| 7 | 29020   Bratz Fashon Pixiez in | | 33 |
|   |          packaging | | |
| 8 | | | |
|   | 29077   Bratz Baybz in packaging | | 32 |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |

|     |    |                                                                          |
|-----|----|--------------------------------------------------------------------------|
|     | 1  | **SANTA ANA, CALIFORNIA, THURSDAY, FEBRUARY 3, 2011**                     |
|     | 2  | **Day 12, Volume 1 of 3**                                                |
|     | 3  | (7:47 a.m.)                                                              |
| 07:26 | 4  | *(Outside the presence of the jury.)*                                 |
| 07:47 | 5  | THE COURT:  All right.  Now, we're on the record.                     |
| 07:47 | 6  | Mr. Quinn is present.  Mr. McConville is present.  They've            |
| 07:47 | 7  | agreed to proceed with a number of the Court's rulings.              |
| 07:47 | 8  | I want to start with -- the Court has had the                        |
| 07:49 | 9  | evening to consider the issue concerning the letter dated           |
| 07:49 | 10 | September 16, 2008.  And while the Court agrees that it              |
| 07:49 | 11 | appears from Ms. Keller's examination that Mattel was the           |
| 07:49 | 12 | only one applying pressure on Carter Bryant, which goes to          |
| 07:49 | 13 | his bias and credibility, that Mattel should be allowed to          |
| 07:49 | 14 | counter that series of questions so that the jury knows that        |
| 07:49 | 15 | there has been pressure put on Carter Bryant by MGA.                |
| 07:50 | 16 | The Court recognizes, though, that if there is an                    |
| 07:50 | 17 | argument of prejudice or bias, that, in actuality, it could         |
| 07:50 | 18 | be construed that it reflects against MGA and not Mattel            |
| 07:50 | 19 | from that series of questions.                                      |
| 07:50 | 20 | I've counterbalanced that and thought about this                    |
| 07:50 | 21 | letter of September 16, 2008.  And under no circumstances is        |
| 07:50 | 22 | the Court comfortable with the jury being able to determine         |
| 07:50 | 23 | who prevailed in the last lawsuit.  Counsel have stipulated         |
| 07:50 | 24 | that the jury may know that there was, in fact, a prior             |
| 07:50 | 25 | trial; but they've been told to disregard that prior trial,         |

| 07:50 | 1 | and they've never been made aware that there was even a |
|---|---|---|
| 07:51 | 2 | verdict in that prior trial. |
| 07:51 | 3 | And a letter dated September 16, 2008, would lead |
| 07:51 | 4 | a juror to -- a wise juror to believe that this could be an |
| 07:51 | 5 | assertion of a verdict. |
| 07:51 | 6 | Now, I want to make certain:  Had the verdict in |
| 07:51 | 7 | fact occurred by September 16, 2008? |
| 07:51 | 8 | MR. QUINN:  Yes. |
| 07:51 | 9 | THE COURT:  Because I see May -- well, I see |
| 07:51 | 10 | August testimony. |
| 07:51 | 11 | But apparently this was written in close time. |
| 07:51 | 12 | Now, it would take a super juror, a sleuth, to figure that |
| 07:51 | 13 | out; but regardless, it's not worth the chance of prejudice. |
| 07:51 | 14 | Because that would be so prejudicial that this *de minimis* |
| 07:51 | 15 | piece of evidence in this *de minimis* line of questioning |
| 07:52 | 16 | would not be of great weight, if the Court -- once again, |
| 07:52 | 17 | under the balancing test -- so, yesterday, Mattel was kind |
| 07:52 | 18 | enough to supply three questions. |
| 07:52 | 19 | The first question is, "Your contract with MGA |
| 07:52 | 20 | says, in effect, that you are required to reimburse MGA for |
| 07:52 | 21 | all damages they must pay if it is determined that you |
| 07:52 | 22 | didn't own the rights to Bratz, correct?" |
| 07:52 | 23 | That's certainly going to be allowed to be asked. |
| 07:52 | 24 | And, in fact, you can go back into the indemnification.  You |
| 07:52 | 25 | can go back into Paragraph 5.  You can go through some of |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 8 of 154   Page ID #:294119
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

8

| | | |
|---|---|---|
| 07:52 | 1 | the same series of questions that you asked on direct |
| 07:52 | 2 | examination after the cross-examination by Ms. Keller. |
| 07:52 | 3 | Concerning the second question, 2(a) and 2(b), |
| 07:52 | 4 | which were submitted, that "you have seen a communication |
| 07:52 | 5 | from MGA in which they have asserted that you have the |
| 07:52 | 6 | obligation to pay them if it is determined that Mattel owns |
| 07:52 | 7 | the rights to Bratz." |
| 07:52 | 8 | That's a little bit more dangerous in terms of the |
| 07:52 | 9 | communication. It's worded, though, in a neutral way. |
| 07:53 | 10 | While the Court could allow it, I think the better option is |
| 07:53 | 11 | 2(b); and that is, that "MGA has continued to assert that it |
| 07:53 | 12 | has the right to reimbursement, correct?" I'm going to |
| 07:53 | 13 | allow you to ask that question. |
| 07:53 | 14 | I'm going to allow you to refresh his recollection |
| 07:53 | 15 | if needed by showing him the first page of the letter, which |
| 07:53 | 16 | is Exhibit -- well, it's TX21776-00001. |
| 07:53 | 17 | And the reason I'd like to avoid the second page |
| 07:53 | 18 | is, the second page then talks about liability. I think |
| 07:53 | 19 | Mr. Bryant is going to answer that question, if he's simply |
| 07:53 | 20 | shown the first page, which is the letter from Ms. Pisoni. |
| 07:53 | 21 | Now, if, in fact, we need to take a recess at that |
| 07:53 | 22 | point, we'll do so. But I think I'd like to wait until the |
| 07:53 | 23 | recess. Because if we take a recess at that point, and you |
| 07:54 | 24 | ask for a sidebar, the impression is that there's some kind |
| 07:54 | 25 | of drama occurring behind the scenes. So I would just |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 9 of 154   Page ID #:294120
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

9

| | | |
|---|---|---|
| 07:54 | 1 | suggest you don't ask for that.  And we'll discuss it at the |
| 07:54 | 2 | recess, and let you set a better record if you think the |
| 07:54 | 3 | door's been further opened. |
| 07:54 | 4 | Under no circumstances, though, is this jury to |
| 07:54 | 5 | know that there was a prior verdict.  And under no |
| 07:54 | 6 | circumstances is this jury to know who prevailed in that |
| 07:54 | 7 | prior verdict. |
| 07:54 | 8 | And finally, I don't think the letter has import |
| 07:54 | 9 | in terms of a piece of evidence.  He can be asked about it. |
| 07:54 | 10 | You have the indemnification agreement, which is quite |
| 07:54 | 11 | clear.  So I see no prejudice to Mattel, but I see potential |
| 07:54 | 12 | prejudice to MGA if this goes any further. |
| 07:54 | 13 | Concerning the matter of -- |
| 07:54 | 14 | MR. QUINN:  Your Honor, before we move on, can I |
| 07:54 | 15 | ask -- |
| 07:54 | 16 | THE COURT:  Sure. |
| 07:54 | 17 | MR. QUINN:  If he's asked 2(b), that MGA has |
| 07:54 | 18 | continued to assert that it has the right to reimbursement, |
| 07:54 | 19 | and his answer is, "I don't remember.  I don't know" -- |
| 07:55 | 20 | THE COURT:  I want you to approach him with the |
| 07:55 | 21 | document.  Show him the document. |
| 07:55 | 22 | MR. QUINN:  Could we then ask 2(a):  "Well, have |
| 07:55 | 23 | you seen a communication from MGA?" -- ask that question if |
| 07:55 | 24 | he demurs to the first question? |
| 07:55 | 25 | THE COURT:  Yes, as long as it doesn't have a |

| 07:55 | 1 | date. |
| 07:55 | 2 | MR. QUINN:  Right. |
| 07:55 | 3 | THE COURT:  So it's neutral, as long as it doesn't |
| 07:55 | 4 | have a date.  It's the date that might allow a juror to |
| 07:55 | 5 | later tie in that there was an actual verdict, and then jump |
| 07:55 | 6 | to the correct conclusion that Mattel had prevailed and that |
| 07:55 | 7 | MGA was now seeking indemnification. |
| 07:55 | 8 | Now, the second issue is Farhad Larian.  And the |
| 07:56 | 9 | third issue you wanted to raise concerned Isaac Larian and |
| 07:56 | 10 | the e-mail that, quote, states, "Make sure Paula's prepped |
| 07:56 | 11 | and doesn't know that Veronica was using Mattel |
| 07:56 | 12 | seamstresses." |
| 07:56 | 13 | I want to go to this third area that Mattel has |
| 07:56 | 14 | raised. |
| 07:56 | 15 | When did you propose to ask that question, and of |
| 07:56 | 16 | which witness? |
| 07:56 | 17 | MR. QUINN:  That would be Isaac Larian.  So it |
| 07:56 | 18 | would be in his cross -- or we will call him as an adverse |
| 07:56 | 19 | witness; obviously, it would be in his cross. |
| 07:56 | 20 | THE COURT:  All right.  I was under the impression |
| 07:56 | 21 | you wanted to ask that earlier.  That clarifies something. |
| 07:56 | 22 | I'll come back to that, then.  We'll have time this |
| 07:56 | 23 | afternoon or tonight.  Larian won't be on the stand today, |
| 07:56 | 24 | so I can delay that ruling. |
| 07:57 | 25 | I was under the impression that somehow, with one |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 11 of 154   Page ID #:294122
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

11

07:57  1    of these witnesses, you wanted that e-mail brought in

07:57  2    earlier.  That's my mistake and I'll reconsider, then.

07:57  3            Second, with -- the second issue you brought was

07:57  4    the motion for reconsideration of the order granting MGA's

07:57  5    seventh motion in limine.  And that concerned evidence about

07:57  6    Farhad Larian's alleged destruction of the documents.  In

07:57  7    its motion for reconsideration, as well as the separately

07:57  8    filed brief regarding the admissibility of trial

07:57  9    Exhibit 13880 -- and I think it was also 13309?  And 21714?

07:57  10           MR. QUINN:  I'm not sure what the Court is

07:57  11   referring to.

07:57  12           THE COURT:  Well, it's a series of exhibits.  But

07:57  13   let me just take 13880.  That's the e-mail that we're

07:58  14   familiar with.  That's the exchange between Larian and

07:58  15   Farhad Larian, the two brothers.

07:58  16           And in this first e-mail, which is dated May 24th,

07:58  17   Farhad remarks, quote, "You have accused me of falsifying

07:58  18   documents.  You instructed me not to provide certain health

07:58  19   information termination forms to Marty, and to tell him we

07:58  20   could not find the originals."  And Isaac Larian responds,

07:58  21   Your allegation stated below is false and self-serving, as

07:58  22   usual."

07:58  23           You've argued that evidence of Farhad's

07:58  24   destruction of documents, at his brother Isaac's direction,

07:58  25   is relevant to Isaac's intent, plan, knowledge, and lack of

DEBBIE GALE, U.S. COURT REPORTER

| 07:58 | 1 | mistake with respect to the destruction of the Bratz |
| 07:58 | 2 | evidence.  But the destruction of documents is not an |
| 07:58 | 3 | element of any of Mattel's pending claims.  And even if it |
| 07:59 | 4 | were, the e-mail exchange reflected in 13380 occurred well |
| 07:59 | 5 | before any of the relevant events in this lawsuit.  And the |
| 07:59 | 6 | exchange has nothing to do with Carter Bryant or the Bratz |
| 07:59 | 7 | doll line.  I firmly believe, and have thus far held, rather |
| 07:59 | 8 | consistently, that it concerns unrelated litigation. |
| 07:59 | 9 | Farhad's disposal of Mattel is -- well, Farhad's |
| 07:59 | 10 | disposal of what you claim are 10 to 20 boxes of documents, |
| 07:59 | 11 | subsequent to an arbitration proceeding in which Farhad |
| 07:59 | 12 | claimed that Isaac misled him about the progress of the |
| 08:00 | 13 | Bratz brand is, I think, irrelevant also.  There's nothing |
| 08:00 | 14 | in the record to suggest that the boxes of documents that |
| 08:00 | 15 | Farhad trashed contained evidence relevant to this |
| 08:00 | 16 | litigation. |
| 08:00 | 17 | I am very concerned, and have expressed this to |
| 08:00 | 18 | both counsel informally and, I hope, on the record, but I'll |
| 08:00 | 19 | restate it.  I don't want these proceedings to turn into |
| 08:00 | 20 | mini trials about discovery or the misconduct by one party |
| 08:00 | 21 | or the other.  This Court firmly believes that terminal |
| 08:00 | 22 | sanctions could have been handed down by this Court, if it |
| 08:00 | 23 | would have had this case from the genesis, against either |
| 08:00 | 24 | one or both parties.  Therefore, I think evidence of |
| 08:00 | 25 | Farhad's conduct is irrelevant.  Even if it were relevant, I |

| 08:00 | 1 | will rule that the prejudicial effect would substantially |
| 08:00 | 2 | outweigh its probative value. |
| 08:01 | 3 | Now, we're going to revisit this same issue, |
| 08:01 | 4 | though, later on with Isaac Larian. So while you're |
| 08:01 | 5 | concerned the door is being closed, Farhad will be placed on |
| 08:01 | 6 | call. But some of Mr. Larian's alleged conduct is subject |
| 08:01 | 7 | to a healthy discussion this weekend between all of us. |
| 08:01 | 8 | You've also argued that Farhad's conduct is |
| 08:01 | 9 | relevant to his bias. For goodness sakes, Farhad is Isaac's |
| 08:01 | 10 | brother. He's associated with MGA. His bias is going to be |
| 08:01 | 11 | obvious. Moreover, the communications reflected in 13380 do |
| 08:01 | 12 | not establish a fondness between the brothers that shows a |
| 08:01 | 13 | bias. To the contrary, I think his opening e-mail claims he |
| 08:01 | 14 | ignored Isaac's instruction. |
| 08:01 | 15 | I'm concerned that -- whether intentional or |
| 08:01 | 16 | not -- Mattel is in the position of seeking this evidence |
| 08:01 | 17 | for the purpose that's not mentioned in this brief, and |
| 08:01 | 18 | that's reestablishing Farhad's bias, after admitting |
| 08:02 | 19 | prejudicial evidence about the fact that Farhad sued Isaac. |
| 08:02 | 20 | However, in the order denying without prejudice |
| 08:02 | 21 | MGA's motion in limine, I had previously held that testimony |
| 08:02 | 22 | from the proceeding between the brothers could be used for |
| 08:02 | 23 | the purposes of impeachment. And I had held that, under |
| 08:02 | 24 | 801(d), it would be unnecessary and unduly prejudicial to |
| 08:02 | 25 | elicit testimony about the fact that there was a proceeding |

08:02  1    between Farhad and Isaac.  I think indeed Mattel conceded in
08:02  2    its brief that inconsistent testimony and other statements
08:02  3    made during that proceeding can be referenced, quote,
08:02  4    "without getting sidetracked with the blow-by-blow of the
08:02  5    sibling dispute."
08:02  6         Now, Mattel's motion for reconsideration is
08:02  7    denied, at least to the extent that it concerns Farhad's
08:02  8    conduct.  And the Court's ruling on the motion in limine is
08:03  9    otherwise unaffected by subsequent requests by Mattel.
08:03  10        MGA's motion to the admission of 13380 is going to
08:03  11   be sustained at this time.  And to be perfectly clear, to
08:03  12   perfect this record concerning the Court's rulings on MGA's
08:03  13   motion in limine, Mattel may only admit evidence, testimony
08:03  14   and statements made during the Larian v. Larian proceeding
08:03  15   pursuant to 801(d).
08:03  16        Now, we had an informal discussion just a moment
08:03  17   ago.  And I want to reopen that door, and let you perfect
08:03  18   your record.
08:03  19        And, once again, make those statements that you
08:03  20   made informally this morning, Mr. Quinn.
08:03  21        MR. QUINN:  Your Honor, I'm satisfied that we have
08:03  22   the record; that the Court has given us an opportunity
08:03  23   already to place our views on the record.
08:03  24        I don't have anything that --
08:03  25        THE COURT:  But, once again --

| | | |
|---|---|---|
| 08:03 | 1 | MR. QUINN:  Well, I mean, in a nutshell -- |
| 08:03 | 2 | THE COURT:  In other words, I'm inviting it. |
| 08:04 | 3 | Let me say this again for the record:  Trial is a |
| 08:04 | 4 | fluid process.  What seems to be a good ruling on one day, |
| 08:04 | 5 | can dramatically change based on the direct examination of a |
| 08:04 | 6 | witness.  And therefore, if the Court starts taking |
| 08:04 | 7 | absolutes on all occasions, without the courtesy of, you |
| 08:04 | 8 | know, letting counsel's position be known -- first of all, I |
| 08:04 | 9 | have a chilling effect on counsel; and second, it just may |
| 08:04 | 10 | not be fair.  So, please.  That's why we were here at 7:30 |
| 08:04 | 11 | this morning. |
| 08:04 | 12 | MR. QUINN:  All right.  Thank you, Your Honor. |
| 08:04 | 13 | I guess, in a nutshell, what we would say is that |
| 08:04 | 14 | the claims in the Larian v. Larian arbitration go to the |
| 08:04 | 15 | heart of this case, that is to say, the timing of the |
| 08:04 | 16 | creation of Bratz. |
| 08:04 | 17 | Mr. Farhad Larian believed that his brother had |
| 08:04 | 18 | defrauded him by -- at a time when he was negotiating and |
| 08:04 | 19 | sold his stock -- his 45 percent ownership interest in |
| 08:04 | 20 | MGA -- to Isaac Larian, by suppressing the fact that he had |
| 08:05 | 21 | this Bratz doll in development. |
| 08:05 | 22 | And Mr. Larian -- Mr. Farhad Larian, who was an |
| 08:05 | 23 | officer, director and employee of the company, when he |
| 08:05 | 24 | realized that he had this claim, proceeded to collect |
| 08:05 | 25 | information, e-mails, declarations to support his claim that |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 16 of 154   Page ID #:294127
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

16

| | | |
|---|---|---|
| 08:05 | 1 | the development of Bratz -- the secret development of Bratz |
| 08:05 | 2 | had been suppressed, and that it had been developed much |
| 08:05 | 3 | earlier than Isaac Larian maintained.  He testified that he |
| 08:05 | 4 | collected some ten boxes of materials relating to this |
| 08:05 | 5 | claim. |
| 08:05 | 6 | The arbitration was ultimately dismissed for |
| 08:05 | 7 | reasons both sides have accounts of.  Then this case was |
| 08:05 | 8 | brought.  Farhad Larian wrote an e-mail to his brother |
| 08:05 | 9 | saying, "Is there anything that I can do to help?"  Farhad |
| 08:06 | 10 | Larian received -- then still had these materials in |
| 08:06 | 11 | existence.  He received a document, Preservation Notice, |
| 08:06 | 12 | from our firm, and after that, destroyed all these |
| 08:06 | 13 | materials. |
| 08:06 | 14 | So I think we -- that has been our offer of proof. |
| 08:06 | 15 | And our theory of relevance is -- Your Honor, is that we |
| 08:06 | 16 | think it shows consciousness of guilt.  At the time he |
| 08:06 | 17 | destroyed these materials, he was still affiliated with MGA. |
| 08:06 | 18 | He was a consultant to MGA.  And, you know, MGA would be |
| 08:06 | 19 | free to say, uh, that, uh, there's nothing material that was |
| 08:06 | 20 | destroyed.  There were copies of everything. |
| 08:06 | 21 | But the fact that he destroyed these things in |
| 08:06 | 22 | that -- after that sequence of events, we think is relevant. |
| 08:06 | 23 | THE COURT:  Okay. |
| 08:06 | 24 | Counsel. |
| 08:06 | 25 | MR. McCONVILLE:  So, from our view, you know, we |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 17 of 154   Page ID #:294128
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

17

08:06    1    agree with the Court's ruling, because then we're down the

08:06    2    path of figuring out what happened in that arbitration

08:06    3    which -- and all the sequence of events that led to how --

08:07    4    the breakdown of the brother's relationship.

08:07    5         But the facts are, from MGA's perspective, Farhad

08:07    6    Larian filed his claim to -- about concealment based on a

08:07    7    hearsay *Wall Street Journal* article.  He made his

08:07    8    allegation.  He then got discovery during the course of the

08:07    9    arbitration.  And at the conclusion of receiving that

08:07    10   discovery, voluntarily dismissed his case and stated during

08:07    11   the arbitration that, "I was wrong when I said my brother

08:07    12   concealed it, because I've now seen the evidence that it was

08:07    13   not there."  So that's issue one.

08:07    14        The issue of whether or not he destroyed any

08:07    15   information, the evidence would be -- if we gotta go down

08:07    16   that path -- that we'd show exchanges of correspondence

08:07    17   between the Quinn firm and Mr. Farhad Larian that showed

08:07    18   that they had access to all of the information before it was

08:07    19   ever destroyed.  We'd have evidence that all of the

08:07    20   information that Farhad Larian had were copies of

08:08    21   information which has already been produced, except for a

08:08    22   minor -- you know, what Mr. Larian has described, original

08:08    23   declarations he was attempting to put together in support of

08:08    24   his arbitration claim.

08:08    25        All of those witnesses have been deposed.  They

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 18 of 154   Page ID #:294129
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

18

| 08:08 | 1 | know whatever they're gonna say.  So, um, they have copies |
| 08:08 | 2 | of virtually all the information.  They know what all the |
| 08:08 | 3 | witnesses are gonna say.  And to go down the path of why the |
| 08:08 | 4 | brothers were reconciling and why there was the litigation |
| 08:08 | 5 | brought in the first place based on a hearsay article, |
| 08:08 | 6 | without the absence of proper evidence -- you know, we just |
| 08:08 | 7 | get down a path that has nothing to do with this case. |
| 08:08 | 8 | THE COURT:  All right. |
| 08:08 | 9 | All right.  Well, you have the Court's ruling once |
| 08:08 | 10 | again. |
| 08:08 | 11 | MR. McCONVILLE:  Your Honor, there were -- I'm |
| 08:08 | 12 | sorry.  The Court talked about two other exhibits, which |
| 08:08 | 13 | were 13381 and 21714. |
| 08:08 | 14 | THE COURT:  Yes. |
| 08:08 | 15 | MR. McCONVILLE:  And would the ruling extend to |
| 08:08 | 16 | those exhibits, as well? |
| 08:09 | 17 | THE COURT:  Let me go back and look at those |
| 08:09 | 18 | exhibits once again. |
| 08:09 | 19 | MR. McCONVILLE:  Okay. |
| 08:09 | 20 | THE COURT:  Now, the third issue I think we can |
| 08:09 | 21 | delay for just a moment; and that is, I don't know if I'm |
| 08:09 | 22 | inclined to go into the metadata associated with the draft |
| 08:09 | 23 | e-mail prepared by Larian that states, "Make sure Paula's |
| 08:09 | 24 | prepped and doesn't know that Veronica is using Mattel |
| 08:09 | 25 | seamstresses." |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 19 of 154   Page ID #:294130
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

19

| | | |
|---|---|---|
| 08:09 | 1 | This was MGA's motion in limine.  I think, just |
| 08:09 | 2 | because it's about 15 minutes before the jury is brought in, |
| 08:09 | 3 | that we've got plenty of time to resolve that this evening. |
| 08:10 | 4 | So you can go use the restroom.  And I've got another matter |
| 08:10 | 5 | I need to take for just a moment -- a criminal matter. |
| 08:10 | 6 | Okay.  Thank you. |
| 08:10 | 7 | MR. McCONVILLE:  So, Judge, the only issue is that |
| 08:10 | 8 | O'Connor e-mail, which we e-mailed to Kathy, which may come |
| 08:10 | 9 | up today. |
| 08:10 | 10 | THE COURT:  We've got lunchtime. |
| 08:10 | 11 | MR. McCONVILLE:  Okay. |
| 08:10 | 12 | THE COURT:  I just haven't seen it.  So we'll drag |
| 08:10 | 13 | it out. |
| 08:10 | 14 | MR. McCONVILLE:  Okay. |
| 08:10 | 15 | *(Proceedings recessed at 8:10 a.m.)* |
| | 16 | *(Proceedings resumed at 8:34 a.m.)* |
| 08:33 | 17 | *(In the presence of the jury.)* |
| 08:34 | 18 | THE COURT:  All right.  We're back on the record. |
| 08:34 | 19 | The jury and alternates are present.  All counsel, thank you |
| 08:34 | 20 | for your courtesy, the parties.  Mr. Bryant has returned to |
| 08:34 | 21 | the witness stand, and this is the continued examination by |
| 08:34 | 22 | Ms. Keller on behalf of MGA and on behalf of Mr. Larian. |
| 08:34 | 23 | MS. KELLER:  Thank you, Your Honor. |
| 08:34 | 24 | **CARTER BRYANT, MATTEL'S WITNESS, PREVIOUSLY SWORN** |
| 08:34 | 25 | **RESUMED THE STAND** |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 20 of 154   Page ID #:294131
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

20

| 08:34 | 1 | **CROSS-EXAMINATION (Resumed)** |
|---|---|---|
| 08:34 | 2 | BY MS. KELLER: |
| 08:34 | 3 | Q.   Good morning, Mr. Bryant. |
| 08:34 | 4 | A.   Good morning. |
| 08:34 | 5 | Q.   Now, Mr. Bryant, you were given some documents to |
| 08:34 | 6 | review over the weekend; is that right? |
| 08:34 | 7 | A.   Yes. |
| 08:34 | 8 | Q.   And those included your drawings? |
| 08:34 | 9 | A.   Yes. |
| 08:34 | 10 | Q.   And prior testimony? |
| 08:34 | 11 | A.   Yes. |
| 08:34 | 12 | Q.   And some exhibits, some documents? |
| 08:34 | 13 | A.   Yes. |
| 08:34 | 14 | Q.   Now, up until then, you hadn't, actually, reviewed any |
| 08:35 | 15 | materials to prepare for your testimony; is that true? |
| 08:35 | 16 | A.   Uh, that -- that's true. |
| 08:35 | 17 | Q.   Do you find it helped you remember some things better |
| 08:35 | 18 | this weekend, say, than last week, because you'd had a |
| 08:35 | 19 | chance to look at those things? |
| 08:35 | 20 | A.   A little bit, yes. |
| 08:35 | 21 | Q.   Not a whole lot? |
| 08:35 | 22 | A.   No. |
| 08:35 | 23 | Q.   Now, I want to turn back just to the issue of the hair |
| 08:35 | 24 | that was used on the Bratz dolls.  We talked about the fact |
| 08:35 | 25 | that you had initially suggested this.  Is it call "saran" |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 21 of 154   Page ID #:294132
CV 04-9049 DOC – 2/3/2011 – Day 12, Volume 1 of 3

21

| | | |
|---|---|---|
| 08:35 | 1 | or "saran"? |
| 08:35 | 2 | A.   I think it's called "saran." |
| 08:35 | 3 | Q.   Saran hair.  Okay.  Now, was there some saran hair used |
| 08:35 | 4 | for the first generation dolls, as well as hair called |
| 08:35 | 5 | "Filo" and "PP"? |
| 08:35 | 6 | A.   Uh, I don't remember. |
| 08:35 | 7 | Q.   Do you remember in later years a hair called "Kaneki" |
| 08:36 | 8 | being used? |
| 08:36 | 9 | A.   I don't remember that either. |
| 08:36 | 10 | Q.   And so the bottom line is you really don't know what |
| 08:36 | 11 | hair MGA used -- ended up using in making its dolls; is that |
| 08:36 | 12 | true? |
| 08:36 | 13 | A.   I'm not sure of the brand, no. |
| 08:36 | 14 | Q.   Now, I want to turn to another area that involves your |
| 08:36 | 15 | fax machine, your brand new fax machine, that you got at |
| 08:36 | 16 | some point.  Okay? |
| 08:36 | 17 |      The final designs for the backpacks of the doll were |
| 08:36 | 18 | done in December 2000, right? |
| 08:36 | 19 | A.   I believe so, yes. |
| 08:36 | 20 | Q.   And one of the original characters, when you made your |
| 08:36 | 21 | pitch to MGA, was named Lupe, we know, right? |
| 08:36 | 22 | A.   Yes. |
| 08:36 | 23 |           MS. KELLER:  And if we could see Exhibit 302-6. |
| 08:37 | 24 |              *(Document provided to the witness.)* |
| 08:37 | 25 |              *(Document displayed.)* |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 08:37 | 1 | BY MS. KELLER: |
| 08:37 | 2 | Q.   You can see it on your screen also.  Is that Lupe? |
| 08:37 | 3 | A.   Yes. |
| 08:37 | 4 | Q.   And let's look at Exhibit 5, page 67.  So it would be |
| 08:37 | 5 | 5-67. |
| 08:37 | 6 | (Document displayed.) |
| 08:37 | 7 | MS. KELLER:  Well, that's not what we're looking |
| 08:37 | 8 | for. |
| 08:37 | 9 | (Document removed.) |
| 08:37 | 10 | BY MS. KELLER: |
| 08:37 | 11 | Q.   Okay.  What have you got in front of you? |
| 08:37 | 12 | A.   I've got a picture of Lupe, line drawing. |
| 08:38 | 13 | Q.   Okay.  Does she have a backpack? |
| 08:38 | 14 | A.   Uh, no. |
| 08:38 | 15 | Q.   Okay.  Well, we're gonna -- we're gonna go on. |
| 08:38 | 16 | A.   Okay. |
| 08:38 | 17 | Q.   The final designs of the backpacks for the dolls, |
| 08:38 | 18 | though, you said were not finished until December 2000? |
| 08:38 | 19 | A.   I believe so, yes. |
| 08:38 | 20 | Q.   And let's see if we can find the exhibit we're looking |
| 08:38 | 21 | for. |
| 08:38 | 22 | The document that contained the final designs of the |
| 08:38 | 23 | backpacks says on it "final designs."  Do you remember |
| 08:38 | 24 | seeing that when you reviewed this weekend? |
| 08:38 | 25 | A.   Um, I don't know if I saw that or not. |

CV 04-9049 DOC – 2/3/2011 – Day 12, Volume 1 of 3

23

| 08:38 | 1 | Q.   What -- why were the backpacks an important design |
| 08:38 | 2 | element to you? |
| 08:38 | 3 | A.   Um, I think maybe just because it added a little bit |
| 08:38 | 4 | of, um, value and style to the, um -- to the product. |
| 08:39 | 5 | Q.   Had you seen a lot of teenage kids going around wearing |
| 08:39 | 6 | backpacks? |
| 08:39 | 7 | A.   Yes. |
| 08:39 | 8 | Q.   And had you seen backpacks becoming more stylish over |
| 08:39 | 9 | the years instead of just plain black? |
| 08:39 | 10 | A.   Yes. |
| 08:39 | 11 | MS. KELLER:  Your Honor, if I could just have a |
| 08:39 | 12 | moment? |
| 08:39 | 13 | THE COURT:  Certainly. |
| 08:39 | 14 | MS. KELLER:  Okay. |
| 08:39 | 15 | BY MS. KELLER: |
| 08:39 | 16 | Q.   What we're looking for is Exhibit 5-30, and if you'd |
| 08:39 | 17 | take a look at 5-30. |
| 08:39 | 18 | *(Document provided to the witness.)* |
| 08:40 | 19 | THE WITNESS:  Okay. |
| 08:40 | 20 | BY MS. KELLER: |
| 08:40 | 21 | Q.   Do you recognize that as some of your backpack designs? |
| 08:40 | 22 | A.   Yes. |
| 08:40 | 23 | MS. KELLER:  Your Honor, we would move 5-30 into |
| 08:40 | 24 | evidence. |
| 08:40 | 25 | THE COURT:  Received. |

CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

24

| | | |
|---|---|---|
| 08:40 | 1 | (Exhibit No. 5-30 received in evidence.) |
| 08:40 | 2 | (Document displayed.) |
| 08:40 | 3 | BY MS. KELLER: |
| 08:40 | 4 | Q.   So these are the final designs that you drew for the |
| 08:40 | 5 | backpacks for the dolls? |
| 08:40 | 6 | A.   Yes. |
| 08:40 | 7 | Q.   And then finished in December of 2000, right? |
| 08:40 | 8 | A.   Yes. |
| 08:40 | 9 | Q.   And we see down there that it says on it "final |
| 08:40 | 10 | designs" in your handwriting, true? |
| 08:40 | 11 | A.   Yes. |
| 08:40 | 12 | Q.   And beside the final designs, there's a backpack, and |
| 08:40 | 13 | to the right of it, it says "Yasmin," right? |
| 08:40 | 14 | A.   Uh, yes. |
| 08:40 | 15 | Q.   And we also see the names Fianna and Kadesha? |
| 08:40 | 16 | A.   Yes. |
| 08:40 | 17 | Q.   You see those? |
| 08:40 | 18 | A.   Yes. |
| 08:40 | 19 | Q.   Were those names that you were still considering? |
| 08:41 | 20 | A.   I think so. |
| 08:41 | 21 | Q.   And you don't have any doubt that this drawing was done |
| 08:41 | 22 | in December of 2000, correct? |
| 08:41 | 23 | A.   Uh, no. |
| 08:41 | 24 | Q.   Now, at the top we see a fax header, and to the right |
| 08:41 | 25 | it says, April 10, 2000, 7:57 a.m."? |

CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

25

| | | |
|---|---|---|
| 08:41 | 1 | A.   Yes. |
| 08:41 | 2 | Q.   Now, your fax machine wasn't set correctly for the |
| 08:41 | 3 | date, was it? |
| 08:41 | 4 | A.   I don't believe so, no. |
| 08:41 | 5 | Q.   And it was off by some months? |
| 08:41 | 6 | A.   Yes. |
| 08:41 | 7 | Q.   And when you bought the fax machine, did you know how |
| 08:41 | 8 | to set it up? |
| 08:41 | 9 | A.   Uh, I don't remember if I did or not. |
| 08:41 | 10 | Q.   When you received things on your fax, because it wasn't |
| 08:41 | 11 | set right, you wouldn't get the right date on here; is that |
| 08:41 | 12 | true? |
| 08:41 | 13 | A.   Yes. |
| 08:41 | 14 | Q.   And it also -- when you received things on your fax, it |
| 08:41 | 15 | didn't even indicate the number and the identity of the |
| 08:41 | 16 | sender, right? |
| 08:41 | 17 | A.   That's true. |
| 08:41 | 18 | Q.   And so, again, you're absolutely sure this was not |
| 08:42 | 19 | something you either faxed or received in April of 2000, |
| 08:42 | 20 | because the drawing wasn't done until December of 2000, |
| 08:42 | 21 | right? |
| 08:42 | 22 | A.   Yes. |
| 08:42 | 23 | Q.   Now, just as an example, if we could have |
| 08:42 | 24 | Exhibit 10056-01.  And is that on your screen? |
| 08:42 | 25 | A.   No, not yet. |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 26 of 154   Page ID #:294137
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

26

| | | |
|---|---|---|
| 08:42 | 1 | *(Document provided to the witness.)* |
| 08:42 | 2 | THE WITNESS:  Thank you. |
| 08:42 | 3 | BY MS. KELLER: |
| 08:42 | 4 | Q.   Oh, okay.  So you have the actual fax copy of it, |
| 08:42 | 5 | anyway, in front of you? |
| 08:42 | 6 | A.   Yes. |
| 08:42 | 7 | Q.   And is this an e-mail -- or I'm sorry -- a fax from you |
| 08:43 | 8 | to Veronica? |
| 08:43 | 9 | A.   Yes. |
| 08:43 | 10 | Q.   And it says, "Hi, Veronica.  I tried to get together a |
| 08:43 | 11 | list of everything that needs to be done while I'm away to |
| 08:43 | 12 | get ready for the Hong Kong toy fair." |
| 08:43 | 13 | Now, the Hong Kong toy fair was January 2001, right? |
| 08:43 | 14 | A.   I think so, yes. |
| 08:43 | 15 | Q.   "But I know you may need to get ahold of me while I'm |
| 08:43 | 16 | gone.  Please don't hesitate to call me if you need me. |
| 08:43 | 17 | Here's my info while I'm there.  (417) 724-1394.  Central |
| 08:43 | 18 | Standard Time, two hours later than California time." |
| 08:43 | 19 | Now, the fax header on this from you says, "May 21, |
| 08:43 | 20 | 2000," right? |
| 08:43 | 21 | A.   Yes. |
| 08:43 | 22 | Q.   And the phrase, "while I'm away to get ready for |
| 08:43 | 23 | Hong Kong toy fair," was that home in Missouri for |
| 08:43 | 24 | Christmas? |
| 08:43 | 25 | A.   I think it might have been, yes. |

| | | |
|---|---|---|
| 08:44 | 1 | Q.   And then it says, "From Mercedeh, you will need to get |
| 08:44 | 2 | seven cast bodies, three pale color rotocast heads," and it |
| 08:44 | 3 | lists a bunch of things.  Oh, I'm sorry. |
| 08:44 | 4 | MS. KELLER:  Your Honor, we'd ask that this be |
| 08:44 | 5 | admitted. |
| 08:44 | 6 | THE COURT:  And the number, again, is 5-? |
| 08:44 | 7 | MS. KELLER:  10056-1, that we're looking at right |
| 08:44 | 8 | now. |
| 08:44 | 9 | THE COURT:  Received. |
| 08:44 | 10 | *(Exhibit No. 10056-1 received in evidence.)* |
| 08:44 | 11 | *(Document displayed.)* |
| 08:44 | 12 | BY MS. KELLER: |
| 08:44 | 13 | Q.   Okay.  Let's look at the fax header at the top, where |
| 08:44 | 14 | it says, "May 21, 2000."  You see that? |
| 08:44 | 15 | A.   Yes. |
| 08:44 | 16 | Q.   And now let's go down to that first body, first |
| 08:44 | 17 | paragraph, where you're talking about your being away to get |
| 08:44 | 18 | ready for the Hong Kong toy fair -- and that doesn't happen |
| 08:45 | 19 | until January 2001, right? |
| 08:45 | 20 | A.   I believe so, yes. |
| 08:45 | 21 | Q.   And then it says in the next paragraph -- it starts, |
| 08:45 | 22 | "From Mercedeh, you need to get" -- and it lists a bunch of |
| 08:45 | 23 | things that Veronica will need to get from Mercedeh, right? |
| 08:45 | 24 | A.   Yes. |
| 08:45 | 25 | Q.   And Mercedeh Ward didn't come on board until |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 28 of 154   Page ID #:294139
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

28

| | | |
|---|---|---|
| 08:45 | 1 | October 2000, right? |
| 08:45 | 2 | A.   I'm not exactly sure what month she came on, but I |
| 08:45 | 3 | think it was sometime around then. |
| 08:45 | 4 | Q.   It sure wasn't May, was it? |
| 08:45 | 5 | A.   No. |
| 08:45 | 6 | Q.   And you think it was actually -- most probably around |
| 08:45 | 7 | December 21st or so when you sent this fax? |
| 08:46 | 8 | A.   I don't remember exactly, but that's possible, yes. |
| 08:46 | 9 | Q.   Because you haven't left yet. |
| 08:46 | 10 | "I've tried to get together a list of everything that |
| 08:46 | 11 | needs to be done while I'm away, to get ready for HK toy |
| 08:46 | 12 | fair."  And then you say, "I know you may need to get ahold |
| 08:46 | 13 | of me while I'm gone."  And that phone number you give is |
| 08:46 | 14 | what? -- a Missouri number? |
| 08:46 | 15 | A.   Uh, yes. |
| 08:46 | 16 | Q.   And you know you went home for the holidays, right? |
| 08:46 | 17 | A.   I believe so, yes. |
| 08:46 | 18 | Q.   And the drawing that we just looked at, the drawing |
| 08:46 | 19 | with the backpacks, Exhibit 5-30, where we see the fax |
| 08:46 | 20 | header at the top that says "April 10, 2000" -- |
| 08:46 | 21 | A.   Yes. |
| 08:46 | 22 | Q.   -- that drawing wasn't even produced until December, |
| 08:47 | 23 | right? |
| 08:47 | 24 | A.   I believe so, yes. |
| 08:47 | 25 | Q.   So that -- that fax date that you didn't set, you |

| | | |
|---|---|---|
| 08:47 | 1 | didn't set it at least for those two months, right? |
| 08:47 | 2 | A.   That's right. |
| 08:47 | 3 | Q.   And also, if we look up there where it says "from" and |
| 08:47 | 4 | "fax number," that isn't filled in, right? |
| 08:47 | 5 | A.   No, it's not. |
| 08:47 | 6 | Q.   So it doesn't say "from Carter Bryant," with your fax |
| 08:47 | 7 | number.  And is that because you didn't know how to set that |
| 08:47 | 8 | up either? |
| 08:47 | 9 | A.   I don't think I did.  I'm not real technical. |
| 08:47 | 10 | Q.   Whether you knew how to set it up or whether you just |
| 08:47 | 11 | neglected to, you didn't do it, right? |
| 08:47 | 12 | A.   Right. |
| 08:47 | 13 | Q.   Now, I want to turn to a different topic.  You gave |
| 08:47 | 14 | Veronica Marlow, who is the person who introduced you to |
| 08:47 | 15 | MGA, a percentage of your Bratz royalties, right? |
| 08:48 | 16 | A.   Yes. |
| 08:48 | 17 | Q.   And why did you do that? |
| 08:48 | 18 | A.   Um, I was just grateful to her for introducing me to |
| 08:48 | 19 | MGA. |
| 08:48 | 20 | Q.   And did she and her husband, Peter, also ask for |
| 08:48 | 21 | 10 percent from you as kind of the commission or finder's |
| 08:48 | 22 | fee? |
| 08:48 | 23 | A.   Um, I don't think so. |
| 08:48 | 24 | Q.   Now, you promised her you'd pay her a percentage soon |
| 08:48 | 25 | after you signed your contract with MGA? |

CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

30

| | | |
|---|---|---|
| 08:48 | 1 | A.   Uh, yes. |
| 08:48 | 2 | Q.   And you ultimately did pay her something close to |
| 08:48 | 3 | 10 percent of the royalties you got, right? |
| 08:48 | 4 | A.   Yes. |
| 08:48 | 5 | Q.   Now, speaking of royalties, you were shown earlier by |
| 08:48 | 6 | Mr. Price several lists of royalties, and it listed doll |
| 08:48 | 7 | after doll after doll after doll.  Did you see that? |
| 08:49 | 8 | A.   Yes. |
| 08:49 | 9 | Q.   Now, not all those royalties that were on those charts |
| 08:49 | 10 | pertained to these first four characters that you had the |
| 08:49 | 11 | concept for, right? |
| 08:49 | 12 | A.   Uh, that's true. |
| 08:49 | 13 | Q.   And, in fact, much later, in 2000, maybe 2001, 2002, |
| 08:49 | 14 | later, you came up with many, many other concepts for dolls, |
| 08:49 | 15 | right? |
| 08:49 | 16 | A.   Yes. |
| 08:49 | 17 | Q.   All kinds of Bratz Kidz, talking Bratz, Big Babyz -- |
| 08:49 | 18 | um, and these were not things that had anything to do with |
| 08:49 | 19 | the pitch book you showed Mr. Larian, right? |
| 08:49 | 20 | A.   That's right. |
| 08:49 | 21 | Q.   And, for example, the Babyz doll, the sculpt for that |
| 08:49 | 22 | was not the one Margaret Leahy did for the original four |
| 08:49 | 23 | dolls, true? |
| 08:49 | 24 | A.   That's true. |
| 08:49 | 25 | Q.   Same with Bratz Kidz? |

| | | |
|---|---|---|
| 08:49 | 1 | A.   Yes. |
| 08:49 | 2 | Q.   Same with Talking Bratz? |
| 08:49 | 3 | A.   Yes. |
| 08:49 | 4 | Q.   Same with Big Babyz? |
| 08:50 | 5 | A.   Yes. |
| 08:50 | 6 | Q.   So all those dolls needed new sculpts, right? |
| 08:50 | 7 | A.   Yes. |
| 08:50 | 8 | Q.   And you also got royalties on Bratz movie dolls? |
| 08:50 | 9 | A.   Yes. |
| 08:50 | 10 | Q.   And the sculpt for that wasn't the same as the original |
| 08:50 | 11 | four dolls, right? |
| 08:50 | 12 | A.   Uh, no. |
| 08:50 | 13 | Q.   And -- okay.  Let's take a look at just a couple -- |
| 08:50 | 14 | MS. KELLER:  Do we have the actual doll for the |
| 08:50 | 15 | Babyz Bratz? |
| 08:50 | 16 | MS. KIECKHEFER:  It's coming in, right behind you. |
| 08:51 | 17 | BY MS. KELLER: |
| 08:51 | 18 | Q.   Would it be fair to say, Mr. Carter, that there were |
| 08:51 | 19 | possibly hundreds of products that -- in fact, there were |
| 08:51 | 20 | hundreds of products that ended up with the Bratz name or |
| 08:51 | 21 | Bratz logo that were not part of those four originals that |
| 08:51 | 22 | you designed? |
| 08:51 | 23 | A.   Yes. |
| 08:51 | 24 | Q.   Okay.  Here is the Bratz Babyz. |
| 08:51 | 25 | *(Exhibit handed to the witness.)* |

CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

32

| | | |
|---|---|---|
| 08:51 | 1 | MS. KELLER:  And what exhibit number do we have |
| 08:51 | 2 | for that? |
| 08:51 | 3 | THE WITNESS:  29077. |
| 08:51 | 4 | MS. KELLER:  I'd ask that that be admitted, |
| 08:51 | 5 | Your Honor. |
| 08:51 | 6 | THE COURT:  Received. |
| 08:51 | 7 | *(Exhibit No. 29077 received in evidence.)* |
| 08:51 | 8 | MS. KELLER:  And let's look at Bratz Kidz. |
| 08:51 | 9 | THE COURT:  Number?  Bratz Kidz, is that 29? |
| 08:51 | 10 | MS. KELLER:  That was Babyz. |
| 08:51 | 11 | THE COURT:  That was Babyz.  What are Bratz Kidz' |
| 08:51 | 12 | number? |
| 08:51 | 13 | MS. KELLER:  I'm going to have to find out what |
| 08:52 | 14 | the number on the tangible is. |
| 08:52 | 15 | Well, let's pick another one.  Just pick any out |
| 08:52 | 16 | of there. |
| 08:52 | 17 | *(Item handed to the witness.)* |
| 08:52 | 18 | BY MS. KELLER: |
| 08:52 | 19 | Q.   And what's that doll that you're holding? |
| 08:52 | 20 | A.   This is the Bratz Fashion Pixiez. |
| 08:52 | 21 | Q.   And what is the Fashion Pixiez' number? |
| 08:52 | 22 | A.   29020. |
| 08:52 | 23 | MS. KELLER:  And I'd ask that be admitted, |
| 08:52 | 24 | Your Honor. |
| 08:52 | 25 | THE COURT:  Received. |

CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

33

| | | |
|---|---|---|
| 08:52 | 1 | *(Exhibit No. 29020 received in evidence.)* |
| 08:52 | 2 | BY MS. KELLER: |
| 08:52 | 3 | Q.   Would you show that to the jurors. |
| 08:52 | 4 | A.   (Witness complies.) |
| 08:52 | 5 | Q.   That needed a different sculpt than the first dolls? |
| 08:52 | 6 | A.   Yes, we did a different sculpt for that doll. |
| 08:52 | 7 | Q.   And what else have we got here? |
| 08:52 | 8 | A.   I have Itsy Bitsy Bratz. |
| 08:52 | 9 | Q.   And what is the exhibit number on Itsy Bitsy Bratz? |
| 08:52 | 10 | A.   17483. |
| 08:52 | 11 | MS. KELLER:  Ask that that be admitted, |
| 08:52 | 12 | Your Honor. |
| 08:52 | 13 | THE COURT:  17483 received. |
| 08:52 | 14 | *(Exhibit No. 17483 received in evidence.)* |
| 08:52 | 15 | BY MS. KELLER: |
| 08:52 | 16 | Q.   And those are much, much smaller, thus the name, Itsy |
| 08:52 | 17 | Bitsy.  So those needed different sculpts, right? |
| 08:53 | 18 | A.   Yes. |
| 08:53 | 19 | Q.   And what's the next one that we've got? |
| 08:53 | 20 | A.   Bratz World Familiez. |
| 08:53 | 21 | Q.   And what's the exhibit number on that? |
| 08:53 | 22 | A.   It's 28757. |
| 08:53 | 23 | THE COURT:  Received. |
| 08:53 | 24 | *(Exhibit No. 28757 received in evidence.)* |
| | 25 | |

CV 04-9049 DOC – 2/3/2011 – Day 12, Volume 1 of 3

34

| | | |
|---|---|---|
| 08:53 | 1 | BY MS. KELLER: |
| 08:53 | 2 | Q.   And again, different sculpts on that. |
| 08:53 | 3 | So that's just -- I don't think we need to show too |
| 08:53 | 4 | many more, and I'm not gonna go through the whole list, |
| 08:53 | 5 | because it would take too long.  But the bottom line is that |
| 08:53 | 6 | there -- I'm just gonna give you a sampling -- that there |
| 08:53 | 7 | were a large number of these that required a whole new |
| 08:53 | 8 | sculpt, right? |
| 08:53 | 9 | A.   Yes. |
| 08:53 | 10 | Q.   So Little Bratz, Bratz Boyz, Walking Bratz, Pixiez, |
| 08:53 | 11 | Bratz Mom, Bratz Movie Stars, Bratz Big Sister, Bratz -- |
| 08:53 | 12 | Bratz Fashion Show, Bratz Boyz, Bratz Star Singers, Bratz |
| 08:54 | 13 | Ice Champions -- all of those were things that had nothing |
| 08:54 | 14 | to do with the original pitch book you showed to Mr. Larian, |
| 08:54 | 15 | right? |
| 08:54 | 16 | A.   Well, some of the things that you listed I'm not |
| 08:54 | 17 | familiar with, but we did do a lot of other sculpts, yes. |
| 08:54 | 18 | Q.   Okay.  So some of those products you really don't know |
| 08:54 | 19 | anything about, but they have the Bratz name on them, right? |
| 08:54 | 20 | A.   Yes. |
| 08:54 | 21 | Q.   But you were given royalties later on, on anything you |
| 08:54 | 22 | contributed to, even if it was much later and completely |
| 08:54 | 23 | separate from the original four dolls, right? |
| 08:54 | 24 | A.   Yes. |
| 08:54 | 25 | Q.   So that 35 million in royalties that you got, that was |

| | | |
|---|---|---|
| 08:54 | 1 | not tied to just those first four dolls, right? |
| 08:54 | 2 | A.   That's right. |
| 08:54 | 3 | Q.   It was tied to any product that you worked on later on, |
| 08:54 | 4 | as well, true? |
| 08:54 | 5 | A.   Uh, yes. |
| 08:55 | 6 | Q.   And just to wrap up, you told everybody at your first |
| 08:55 | 7 | meeting in August that you created your drawings in 1998, |
| 08:55 | 8 | right? |
| 08:55 | 9 | A.   Yes. |
| 08:55 | 10 | Q.   You told Mr. Larian and everybody else at the pitch |
| 08:55 | 11 | meeting on September 1st, 2000, that you created the |
| 08:55 | 12 | drawings in '98, true? |
| 08:55 | 13 | A.   Yes. |
| 08:55 | 14 | Q.   You had your attorney tell MGA's attorney that you |
| 08:55 | 15 | created the drawings in 1998, right? |
| 08:55 | 16 | A.   Yes. |
| 08:55 | 17 | Q.   And earlier in 1999, you had gone to a fellow Mattel |
| 08:55 | 18 | employee, a notary, and told her that you had created the |
| 08:55 | 19 | drawings in Missouri in 1998, right? |
| 08:55 | 20 | A.   Yes. |
| 08:55 | 21 | Q.   And that was before you had ever heard of MGA, true? |
| 08:55 | 22 | A.   Yes. |
| 08:55 | 23 | Q.   And your agreement with MGA contained what's called a |
| 08:55 | 24 | "warranty and representations clause," in which assured MGA |
| 08:56 | 25 | you owned the Bratz drawings, true? |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 36 of 154   Page ID #:294147
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

36

| | | |
|---|---|---|
| 08:56 | 1 | A.    Yes. |
| 08:56 | 2 | Q.    And you were living in Kimberline City, Missouri, when |
| 08:56 | 3 | you first conceived your idea for Bratz and drew the master |
| 08:56 | 4 | drawings, right? |
| 08:56 | 5 | A.    Yes. |
| 08:56 | 6 | Q.    And even though you had a job at Old Navy, you drew |
| 08:56 | 7 | those master drawings after hours, while living in your |
| 08:56 | 8 | parents' home in Missouri in 1998, true? |
| 08:56 | 9 | A.    Yes. |
| 08:56 | 10 | Q.    And have you ever wavered from that? |
| 08:56 | 11 | A.    No. |
| 08:56 | 12 | Q.    Ever? |
| 08:56 | 13 | A.    No. |
| 08:56 | 14 | Q.    No matter how many questions you've been asked and by |
| 08:56 | 15 | how many lawyers? |
| 08:56 | 16 | A.    No. |
| 08:56 | 17 | MS. KELLER:  Thank you.  I have nothing further. |
| 08:56 | 18 | THE COURT:  Thank you.  Redirect. |
| 08:56 | 19 | And this is Mr. Price on behalf of Mattel. |
| 08:56 | 20 | **REDIRECT EXAMINATION** |
| 08:57 | 21 | BY MR. PRICE: |
| 08:57 | 22 | Q.    Good morning, Mr. Bryant. |
| 08:57 | 23 | A.    Good morning. |
| 08:57 | 24 | Q.    Now, when Ms. Keller was asking you questions, she kind |
| 08:57 | 25 | of guided you through your testimony about when Bratz was |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 08:57 | 1 | created, right? |
| 08:57 | 2 | MS. KELLER: Objection. Argumentative. |
| 08:57 | 3 | THE COURT: Well, "guided," "took" -- overruled. |
| 08:57 | 4 | You can answer the question. |
| 08:57 | 5 | THE WITNESS: Um, somewhat, yes. |
| 08:57 | 6 | BY MR. PRICE: |
| 08:57 | 7 | Q.   And what I mean -- "guided," I mean, she would ask you |
| 08:57 | 8 | lots of questions and ask whether it was true or not, right? |
| 08:57 | 9 | A.   Yes. |
| 08:57 | 10 | Q.   Sort of at the end where she said, you know, the dolls |
| 08:57 | 11 | were created in 1998, she would ask that sort of question |
| 08:57 | 12 | and say, "correct," right? |
| 08:57 | 13 | A.   Yes. |
| 08:57 | 14 | Q.   And do you have an idea of how many times during the |
| 08:58 | 15 | examination Ms. Keller used the year "1998"? |
| 08:58 | 16 | MS. KELLER: Objection. Argumentative. |
| 08:58 | 17 | THE COURT: Overruled. |
| 08:58 | 18 | You can answer the question. |
| 08:58 | 19 | THE WITNESS: I don't. |
| 08:58 | 20 | BY MR. PRICE: |
| 08:58 | 21 | Q.   It was a lot, wasn't it? |
| 08:58 | 22 | A.   Several times, yes. |
| 08:58 | 23 | Q.   And she would sometimes show you your deposition or |
| 08:58 | 24 | your trial transcripts.  Do you recall that? |
| 08:58 | 25 | A.   Yes. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

38

| 08:58 | 1 | Q.   And those deposition transcripts -- your testimony was |
| 08:58 | 2 | taken at a time in the depositions when you were, in fact, a |
| 08:58 | 3 | party, right? |
| 08:58 | 4 | A.   Yes. |
| 08:58 | 5 | Q.   And you had counsel that was being paid by MGA, right? |
| 08:58 | 6 | A.   Yes. |
| 08:58 | 7 | Q.   And your counsel and MGA's counsel were cooperating, |
| 08:58 | 8 | right? |
| 08:58 | 9 | A.   Yes. |
| 08:58 | 10 | Q.   And at the trial, again, your counsel and MGA's counsel |
| 08:58 | 11 | was cooperating, right? |
| 08:58 | 12 | A.   Yes. |
| 08:58 | 13 | MS. KELLER:  Objection.  Assumes facts not in |
| 08:58 | 14 | evidence. |
| 08:58 | 15 | THE COURT:  Overruled. |
| 08:58 | 16 | BY MR. PRICE: |
| 08:58 | 17 | Q.   And you again met with MGA's counsel for a couple of |
| 08:59 | 18 | days before the trial, right? |
| 08:59 | 19 | A.   Yes. |
| 08:59 | 20 | Q.   And in the examination that Ms. Keller did of you, |
| 08:59 | 21 | sometimes you would say, "Yes," even though you didn't know |
| 08:59 | 22 | the answer, right? |
| 08:59 | 23 | MS. KELLER:  Objection.  Vague. |
| 08:59 | 24 | THE COURT:  Overruled. |
| 08:59 | 25 | You can answer the question. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

39

| 08:59 | 1 | THE WITNESS:  I don't think so, no. |
| 08:59 | 2 | BY MR. PRICE: |
| 08:59 | 3 | Q.   Well, you remember you were asked a question yesterday, |
| 08:59 | 4 | but before the end of the day, whether you were |
| 08:59 | 5 | disappointed, whether -- that saran hair that you wanted was |
| 08:59 | 6 | never used on the dolls.  Do you remember that? |
| 08:59 | 7 | A.   Um, no. |
| 08:59 | 8 | Q.   You said, "Yeah, I was kind of disappointed." |
| 08:59 | 9 | A.   Oh, yes, I do now.  I'm sorry. |
| 08:59 | 10 | Q.   And then later, Ms. Keller corrected herself and said, |
| 08:59 | 11 | "Oh, it turns out saran hair was used on the dolls."  Do you |
| 08:59 | 12 | recall that? |
| 08:59 | 13 | MS. KELLER:  Objection.  Misstates the testimony. |
| 08:59 | 14 | THE COURT:  Yeah, I don't think Ms. Keller's |
| 08:59 | 15 | questions are -- well, they're relevant, but I don't want |
| 09:00 | 16 | the focus on the attorneys. |
| 09:00 | 17 | MR. PRICE:  I'm focusing on his answers, actually. |
| 09:00 | 18 | THE COURT:  Ask another question. |
| 09:00 | 19 | BY MR. PRICE: |
| 09:00 | 20 | Q.   So later in the examination, you learned that, in fact, |
| 09:00 | 21 | saran hair was used on the dolls? |
| 09:00 | 22 | MS. KELLER:  Objection.  Misstates the testimony. |
| 09:00 | 23 | THE COURT:  That's a question.  Is that a |
| 09:00 | 24 | question? |
| 09:00 | 25 | MR. PRICE:  Yes. |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 40 of 154   Page ID #:294151
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

40

| | | |
|---|---|---|
| 09:00 | 1 | THE WITNESS:  I don't remember what I said |
| 09:00 | 2 | yesterday. |
| 09:00 | 3 | BY MR. PRICE: |
| 09:00 | 4 | Q.   Well, do you remember, as an example of that, she asked |
| 09:00 | 5 | you about whether ideas and designs were the same thing? |
| 09:00 | 6 | THE COURT:  Counsel, we're going to stop the focus |
| 09:00 | 7 | on each counsel and how counsel asked the question. |
| 09:00 | 8 | The questions are to the witness, and he can |
| 09:00 | 9 | respond if he answered a certain question that way, but I'm |
| 09:00 | 10 | going to stop the prefacing about what you asked, what she |
| 09:00 | 11 | asked.  You two aren't part of the lawsuit. |
| 09:00 | 12 | BY MR. PRICE: |
| 09:00 | 13 | Q.   Yesterday, you were asked whether or not ideas and |
| 09:00 | 14 | designs were the same thing.  Do you recall that? |
| 09:01 | 15 | A.   I think so, yes. |
| 09:01 | 16 | Q.   And yesterday you said that they weren't the same |
| 09:01 | 17 | thing.  Do you recall that? |
| 09:01 | 18 | A.   I don't recall exactly what I said. |
| 09:01 | 19 | Q.   And do you recall that when I asked you the question on |
| 09:01 | 20 | January 28th, you said that in your mind ideas and |
| 09:01 | 21 | designs -- you didn't see any distinction between ideas and |
| 09:01 | 22 | designs.  Do you recall that? |
| 09:01 | 23 | A.   Um, no. |
| 09:01 | 24 | MR. PRICE:  If we could have placed before the |
| 09:01 | 25 | witness -- this is 1/28/2011, Day 9, Volume 1 of 3, page 71. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

41

| | | |
|---|---|---|
| 09:01 | 1 | *(Document handed to the witness.)* |
| 09:02 | 2 | MR. PRICE:  And, Your Honor, at this point, could |
| 09:02 | 3 | I just read the transcript? |
| 09:02 | 4 | THE COURT:  Now, what lines again, Counsel? |
| 09:02 | 5 | MR. PRICE:  It's 71, lines 12 to 20. |
| 09:02 | 6 | THE COURT:  You may. |
| 09:02 | 7 | MR. PRICE:  (Reading:) |
| 09:02 | 8 | "QUESTION:  And your job, by the way, at Mattel |
| 09:02 | 9 | was to come up with ideas and then designs related to those |
| 09:02 | 10 | ideas, correct? |
| 09:02 | 11 | "ANSWER:  Uh, yes. |
| 09:02 | 12 | "I mean, do you see a distinction between designs |
| 09:02 | 13 | and ideas? |
| 09:02 | 14 | "Um, no, not necessarily. |
| 09:02 | 15 | "Because one of your jobs is to put your ideas |
| 09:02 | 16 | into some sort of design, correct? |
| 09:02 | 17 | "ANSWER:  Yes." |
| 09:02 | 18 | BY MR. PRICE: |
| 09:02 | 19 | Q.  So given the job you had at Mattel, there's not really |
| 09:02 | 20 | a distinction between ideas and designs, because you |
| 09:02 | 21 | transferred the ideas into designs, right? |
| 09:02 | 22 | A.  That's all part of the process. |
| 09:03 | 23 | Q.  Now, yesterday I think you said that PP was a vendor of |
| 09:03 | 24 | Mattel for hair -- I'm sorry -- of MGA for hair, right? |
| 09:03 | 25 | A.  I don't remember if I did or not. |

| | | |
|---|---|---|
| 09:03 | 1 | Q.   I mean, PP is actually a type of hair, isn't it? |
| 09:03 | 2 | A.   I believe so, yes. |
| 09:03 | 3 | Q.   It's just a fairly cheap type of hair? |
| 09:03 | 4 | A.   I have no idea. |
| 09:03 | 5 | Q.   And as -- regarding the saran hair, isn't it true that |
| 09:03 | 6 | MGA wanted so much that they had to switch to another type |
| 09:03 | 7 | of hair because it just wasn't available? |
| 09:03 | 8 | A.   I have no idea. |
| 09:03 | 9 | Q.   You were asked questions, by the way, about the |
| 09:03 | 10 | settlement.  And if you could look at 7520. |
| 09:03 | 11 | *(Document provided to the witness.)* |
| 09:04 | 12 | BY MR. PRICE: |
| 09:04 | 13 | Q.   If I could call your attention to the second page, |
| 09:04 | 14 | 7520-0002.  And if you look at paragraph 3, "Bryant's |
| 09:04 | 15 | agreement to appear at trial in Mattel's case-in-chief." |
| 09:04 | 16 | Do you see that? |
| 09:04 | 17 | A.   Yes. |
| 09:04 | 18 | Q.   And it's true that under that section you agreed to |
| 09:04 | 19 | appear as a witness during Mattel's case-in-chief upon 48 |
| 09:04 | 20 | hours' written notice, right? |
| 09:04 | 21 | A.   Yes. |
| 09:04 | 22 | Q.   "And that the effectiveness of this agreement was in no |
| 09:04 | 23 | manner conditioned upon the substance of any testimony to be |
| 09:04 | 24 | given by Bryant at trial or otherwise, and there is no |
| 09:04 | 25 | agreement between Mattel and Bryant regarding how Bryant |

| | | |
|---|---|---|
| 09:04 | 1 | will testify or what he will say during the trial." |
| 09:05 | 2 | Do you see that? |
| 09:05 | 3 | A.   Yes. |
| 09:05 | 4 | Q.   So it was your understanding that when you testified at |
| 09:05 | 5 | the trial, uh, Mattel wasn't requiring you to testify one |
| 09:05 | 6 | way or another, right? |
| 09:05 | 7 | A.   That's right. |
| 09:05 | 8 | Q.   In fact, Mattel just wanted you to appear at the trial |
| 09:05 | 9 | so you could, in fact, be questioned, right? |
| 09:05 | 10 | A.   Yes. |
| 09:05 | 11 | Q.   So let me focus, then, on some of the key testimony. |
| 09:05 | 12 | And you said that you created -- you created the Bratz in |
| 09:06 | 13 | this time period, April 1998 and January '99, right? |
| 09:06 | 14 | A.   Yes. |
| 09:06 | 15 | Q.   And your understanding is that's important testimony in |
| 09:06 | 16 | this trial, because if you created in that time period, then |
| 09:06 | 17 | Mattel wasn't assigned the rights, correct? |
| 09:06 | 18 | A.   Yes. |
| 09:06 | 19 | Q.   Now, you gave a lot of testimony in the examination |
| 09:07 | 20 | that the events took place in 1998, right?  A lot of oral |
| 09:07 | 21 | testimony, right? |
| 09:07 | 22 | A.   Yes. |
| 09:07 | 23 | Q.   But you admitted during my examination of you that |
| 09:07 | 24 | you've committed perjury, made false statements under oath |
| 09:07 | 25 | twice, right? |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 09:07 | 1 | A.   I -- I'm not sure what you're talking about.  And I'm |
| 09:07 | 2 | not sure I admitted that. |
| 09:07 | 3 | MS. KELLER:  And, Your Honor, I would object and |
| 09:07 | 4 | move to strike the characterization of perjury. |
| 09:07 | 5 | THE COURT:  Overruled. |
| 09:07 | 6 | BY MR. PRICE: |
| 09:07 | 7 | Q.   If you'd look at Day 9, Volume I, this is January 28, |
| 09:07 | 8 | 2011, page 105. |
| 09:07 | 9 | *(Document provided to the witness.)* |
| 09:08 | 10 | MR. PRICE:  And if I could read the answer, |
| 09:08 | 11 | Your Honor? |
| 09:08 | 12 | THE COURT:  You may. |
| 09:08 | 13 | MR. PRICE:  (Reading:) |
| 09:08 | 14 | "QUESTION:  And any answer that you gave where you |
| 09:08 | 15 | said that you weren't necessarily trying to imply you were |
| 09:08 | 16 | working with MGA by sending this letter, any such answer |
| 09:08 | 17 | would be false? |
| 09:08 | 18 | "ANSWER:  Yes. |
| 09:08 | 19 | "QUESTION:  And any that you gave where you said |
| 09:08 | 20 | that you weren't necessarily trying to imply you were |
| 09:08 | 21 | working with MGA by sending this letter, any such answer |
| 09:08 | 22 | would be false? |
| 09:08 | 23 | "ANSWER:  Yes. |
| 09:08 | 24 | "And you gave that very answer under oath, under |
| 09:08 | 25 | penalty of perjury at a trial, correct? |

| | | |
|---|---|---|
| 09:09 | 1 | "ANSWER:  Yes." |
| 09:09 | 2 | BY MR. PRICE: |
| 09:09 | 3 | Q.   That was your testimony from just a few days ago |
| 09:09 | 4 | correct? |
| 09:09 | 5 | A.   Yes. |
| 09:09 | 6 | MR. PRICE:  And that regarded Exhibit 30.  If we |
| 09:09 | 7 | could put that up. |
| 09:09 | 8 | *(Document displayed.)* |
| 09:09 | 9 | BY MR. PRICE: |
| 09:09 | 10 | Q.   And that was regarding Exhibit 30, where you requested |
| 09:09 | 11 | a sample card, said the company you were working with is |
| 09:09 | 12 | called MGA Entertainment, and then gave the address for MGA |
| 09:09 | 13 | Entertainment.  That was what that testimony was regarding; |
| 09:09 | 14 | do you recall? |
| 09:09 | 15 | A.   Yes. |
| 09:09 | 16 | Q.   And the oath you took in giving the testimony that you |
| 09:09 | 17 | weren't necessarily trying to imply you were working with |
| 09:09 | 18 | MGA when you sent this letter, that is the same oath you |
| 09:09 | 19 | took when you took the stand in this trial, correct? |
| 09:09 | 20 | A.   Yes. |
| 09:10 | 21 | Q.   And the second time that you said that you had |
| 09:10 | 22 | committed perjury -- or agreed you had committed perjury was |
| 09:10 | 23 | in connection with MGA's attempt to get a patent based upon |
| 09:10 | 24 | the interchangeable feet.  Do you recall that? |
| 09:10 | 25 | A.   Yes. |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 46 of 154   Page ID #:294157
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

46

| | | |
|---|---|---|
| 09:10 | 1 | MR. PRICE:  And that declaration was Exhibit 302, |
| 09:10 | 2 | I believe.  502? |
| 09:10 | 3 | 502. |
| 09:10 | 4 | (Document displayed.) |
| 09:10 | 5 | BY MR. PRICE: |
| 09:10 | 6 | Q.   And in that connection a few days ago, you admitted the |
| 09:10 | 7 | statement in Paragraph 3 and then Paragraph 4, where you |
| 09:11 | 8 | said, "I was actively involved with the release of the Bratz |
| 09:11 | 9 | dolls, of the configuration as set forth in Paragraph 3 |
| 09:11 | 10 | above, and the release did not occur until the Fall of the |
| 09:11 | 11 | year 2002" -- you admitted that that statement was false, |
| 09:11 | 12 | correct? |
| 09:11 | 13 | A.   Yes. |
| 09:11 | 14 | Q.   And that you made that statement under penalty of |
| 09:11 | 15 | perjury, correct? |
| 09:11 | 16 | A.   Yes. |
| 09:11 | 17 | Q.   And that you realized at the time that MGA had |
| 09:11 | 18 | suggested that it was necessary for you to make that |
| 09:11 | 19 | statement for them to get patents on the interchangeable |
| 09:11 | 20 | footwear for the Bratz dolls, correct? |
| 09:11 | 21 | MS. KELLER:  Objection.  Misstates the testimony. |
| 09:11 | 22 | THE COURT:  I'm sorry? |
| 09:11 | 23 | Overruled. |
| 09:11 | 24 | THE WITNESS:  I'm sorry.  What now? |
| | 25 | |

| 09:12 | 1 | BY MR. PRICE: |
| 09:12 | 2 | Q.   And you made that false statement under penalty of |
| 09:12 | 3 | perjury because MGA suggested that it was necessary for you |
| 09:12 | 4 | to make that statement for them to get patents on the |
| 09:12 | 5 | interchangeable footwear for the Bratz dolls, correct? |
| 09:12 | 6 | A.   Yes. |
| 09:12 | 7 | Q.   And in that situation, what you were making false |
| 09:12 | 8 | testimony about was a date, right? |
| 09:12 | 9 | A.   Uh, yes. |
| 09:12 | 10 | Q.   And it was suggested that you testify falsely about a |
| 09:12 | 11 | date so that MGA could get patent rights, correct? |
| 09:12 | 12 | MS. KELLER:  Objection.  Misstates the testimony. |
| 09:12 | 13 | Calls for speculation. |
| 09:12 | 14 | THE COURT:  Overruled. |
| 09:12 | 15 | THE WITNESS:  Um, yes. |
| 09:12 | 16 | BY MR. PRICE: |
| 09:12 | 17 | Q.   So let's talk about your oral testimony that you |
| 09:13 | 18 | created Bratz in the 1998 timeframe.  Your understanding is |
| 09:13 | 19 | that that testimony would be necessary to show that Mattel |
| 09:13 | 20 | doesn't own the rights to Bratz, correct? |
| 09:13 | 21 | A.   Yes. |
| 09:13 | 22 | Q.   So let's look at whether there's documentation to |
| 09:13 | 23 | support that.  Okay? |
| 09:13 | 24 | Now, the drawings that we've seen -- would you agree |
| 09:13 | 25 | that there is no drawing that we have seen where the date of |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 48 of 154   Page ID #:294159
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

48

| | | |
|---|---|---|
| 09:13 | 1 | 1998 was put on that drawing in 1998, right? |
| 09:13 | 2 | A.   I don't know if there is or not. |
| 09:13 | 3 | *(Document displayed.)* |
| 09:14 | 4 | BY MR. PRICE: |
| 09:14 | 5 | Q.   You can't think of a single drawing that has a 1998 |
| 09:14 | 6 | date on it that was put there by you in 1998, correct? |
| 09:14 | 7 | A.   I don't know. |
| 09:14 | 8 | Q.   Look at page 2485, June 12, 2008.  2485, lines 10 |
| 09:14 | 9 | through 15.  If you could review that and see if it |
| 09:14 | 10 | refreshes your recollection. |
| 09:15 | 11 | *(Document provided to the witness.)* |
| 09:15 | 12 | THE WITNESS:  Okay. |
| 09:15 | 13 | BY MR. PRICE: |
| 09:15 | 14 | Q.   Does that refresh your recollection that you cannot |
| 09:16 | 15 | identify a single drawing that has a 1998 date on it that |
| 09:16 | 16 | was actually put there by you in 1998? |
| 09:16 | 17 | A.   Uh, yes. |
| 09:16 | 18 | Q.   On the other hand, you can identify at least three |
| 09:16 | 19 | drawings where you put a 1999 date on them in 1999, correct? |
| 09:16 | 20 | A.   Uh, yes. |
| 09:16 | 21 | Q.   And there's a number of documents that are notarized on |
| 09:16 | 22 | August 26, 1999, correct? |
| 09:16 | 23 | A.   Yes. |
| 09:16 | 24 | Q.   And that puts you in the timeframe where you worked for |
| 09:16 | 25 | Mattel, correct? |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 49 of 154   Page ID #:294160
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

49

| | | |
|---|---|---|
| 09:16 | 1 | A.   Yes. |
| 09:16 | 2 | Q.   And your understanding that the only effect of having a |
| 09:16 | 3 | notary notarize a document was to prove that it existed on |
| 09:16 | 4 | that day, correct? |
| 09:16 | 5 | A.   Yes. |
| 09:16 | 6 | Q.   And if you'd look at -- I think it's Exhibit 1-1. |
| 09:17 | 7 | (Document provided to the witness.) |
| 09:17 | 8 | (Document displayed.) |
| 09:17 | 9 | BY MR. PRICE: |
| 09:17 | 10 | Q.   That is a drawing that you presented either in |
| 09:17 | 11 | mid-August or September 2000, according to you, to MGA, |
| 09:17 | 12 | right? |
| 09:17 | 13 | A.   Yes. |
| 09:17 | 14 | Q.   If we look down here, it says, "All materials, |
| 09:17 | 15 | copyright 2000, Carter Bryant."  Do you see that? |
| 09:17 | 16 | A.   Yes. |
| 09:17 | 17 | Q.   And you wrote that in 2000, right? |
| 09:17 | 18 | A.   Yes. |
| 09:17 | 19 | Q.   By the way, in 1998, by that time, you knew how to |
| 09:17 | 20 | copyright a document, correct? |
| 09:17 | 21 | A.   Yes. |
| 09:18 | 22 | Q.   You had copyrighted several songs that you had written, |
| 09:18 | 23 | right? |
| 09:18 | 24 | A.   Yes. |
| 09:18 | 25 | Q.   There is no -- what's the point of copyrighting |

CV 04-9049 DOC – 2/3/2011 – Day 12, Volume 1 of 3

50

| | | |
|---|---|---|
| 09:18 | 1 | something? |
| 09:18 | 2 | A.   Just to establish a date that it was created. |
| 09:18 | 3 | Q.   And you didn't copyright any Bratz drawings in 1998, |
| 09:18 | 4 | right? |
| 09:18 | 5 | A.   No. |
| 09:18 | 6 | Q.   Double negative. |
| 09:18 | 7 | Did you copyright any Bratz drawings in 1998? |
| 09:18 | 8 | A.   No. |
| 09:18 | 9 | Q.   And you said that you copyrighted this in 2000 -- let |
| 09:18 | 10 | me rephrase that. |
| 09:18 | 11 | You said you put the copyright 2000 on this drawing |
| 09:18 | 12 | even though, in fact, you didn't actually copyright it, |
| 09:18 | 13 | right? |
| 09:18 | 14 | A.   That's right. |
| 09:18 | 15 | Q.   So putting copyright 2000 on this, the date didn't |
| 09:18 | 16 | really matter; that is, all you had to do was, say, |
| 09:18 | 17 | copyright sometime before you gave it to MGA, right? |
| 09:18 | 18 | A.   Um, I don't know.  I don't know the answer to that. |
| 09:18 | 19 | Q.   Well, your purpose in putting this on here, even though |
| 09:18 | 20 | you didn't actually copyright it, was to have some evidence |
| 09:19 | 21 | that it existed before you gave it to MGA, right? |
| 09:19 | 22 | A.   I suppose so, yes. |
| 09:19 | 23 | Q.   In fact, you remember you testified that the reason you |
| 09:19 | 24 | copyrighted it was there was always the possibility that MGA |
| 09:19 | 25 | would receive this and then use it without your permission, |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 51 of 154   Page ID #:294162
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

51

| | | |
|---|---|---|
| 09:19 | 1 | so you wanted to be safe, right? |
| 09:19 | 2 | A.   Yes. |
| 09:19 | 3 | Q.   And, by the way, what that means is, these boards that |
| 09:19 | 4 | you presented, you thought they had some economic value, |
| 09:19 | 5 | right? |
| 09:19 | 6 | A.   Yes. |
| 09:19 | 7 | Q.   And that's because they were your secret; that they |
| 09:19 | 8 | weren't known to the entire world, right? |
| 09:19 | 9 | A.   Yes. |
| 09:19 | 10 | Q.   And if you -- if you gave that to someone else without |
| 09:19 | 11 | some proof that you had already done this, your fear was |
| 09:20 | 12 | that the value of that concept of the Bratz would be |
| 09:20 | 13 | diminished? |
| 09:20 | 14 | A.   Um, yes. |
| 09:20 | 15 | Q.   And so you considered the Bratz dolls, the Bratz |
| 09:20 | 16 | concept, what you were showing to MGA to be a trade secret; |
| 09:20 | 17 | that is, something that's valuable as long as no one else |
| 09:20 | 18 | can use it, right? |
| 09:20 | 19 |         MS. KELLER:  Objection.  Calls for a legal |
| 09:20 | 20 | definition, Your Honor. |
| 09:20 | 21 |         THE COURT:  Overruled. |
| 09:20 | 22 |         This is his state of mind. |
| 09:20 | 23 |         You can answer that. |
| 09:20 | 24 |         THE WITNESS:  I don't think that I thought of it |
| 09:20 | 25 | as a trade secret, no. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 09:20 | 1 | BY MR. PRICE: |
| 09:20 | 2 | Q.   Well, you thought of it as something that was created |
| 09:20 | 3 | by you, correct? |
| 09:20 | 4 | A.   Yes. |
| 09:20 | 5 | Q.   That -- whose value would be diminished if it was known |
| 09:20 | 6 | to someone else and they could use it? |
| 09:20 | 7 | A.   Yes. |
| 09:20 | 8 | Q.   So getting back to the copyright date on this, since |
| 09:20 | 9 | you didn't actually copyright it, you could have put |
| 09:20 | 10 | copyright 1998, right? |
| 09:20 | 11 | A.   Um, yes. |
| 09:21 | 12 | Q.   And, in fact, that would have given you more protection |
| 09:21 | 13 | than saying "copyright 2000"? |
| 09:21 | 14 | A.   I don't know that it would have given me more |
| 09:21 | 15 | protection. |
| 09:21 | 16 | Q.   Well, 2000 could be in October, November, or December |
| 09:21 | 17 | of 2000, right? |
| 09:21 | 18 | A.   Yes. |
| 09:21 | 19 | Q.   It could be after the day that you showed these to MGA, |
| 09:21 | 20 | right? |
| 09:21 | 21 | A.   Yes. |
| 09:21 | 22 | Q.   So you could have put "copyright 1998" on it, right? |
| 09:21 | 23 | A.   Yes. |
| 09:21 | 24 | Q.   That is, if you wanted to protect yourself? |
| 09:21 | 25 | A.   Yes. |

CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

53

| | | |
|---|---|---|
| 09:21 | 1 | Q.   Or "copyright 1999"? |
| 09:21 | 2 | A.   Yes. |
| 09:21 | 3 | Q.   But you put "copyright 2000," right? |
| 09:21 | 4 | A.   Yes. |
| 09:21 | 5 | Q.   You mentioned that you said that you showed your mom |
| 09:21 | 6 | some drawings when you were at home in 1998, correct? |
| 09:22 | 7 | A.   Yes. |
| 09:22 | 8 | Q.   And, obviously, you're very close to your mom? |
| 09:22 | 9 | A.   Yes. |
| 09:22 | 10 | Q.   And there are some drawings that under your testimony, |
| 09:22 | 11 | she could not have possibly seen in 1998, correct? |
| 09:22 | 12 | MS. KELLER:  Objection. |
| 09:22 | 13 | THE WITNESS:  I don't remember. |
| 09:22 | 14 | MS. KELLER:  Vague. |
| 09:22 | 15 | THE COURT:  Overruled. |
| 09:22 | 16 | BY MR. PRICE: |
| 09:22 | 17 | Q.   Well, you remember you said that you didn't have a head |
| 09:22 | 18 | and a body together with fashions in 1998? |
| 09:22 | 19 | A.   Um, I'm not sure if I said that or not. |
| 09:22 | 20 | Q.   Well, it's true, isn't it? |
| 09:22 | 21 | A.   Um. |
| 09:22 | 22 | THE COURT:  The head and the body were not |
| 09:22 | 23 | together in 1998? |
| 09:22 | 24 | MR. PRICE:  Yes. |
| 09:22 | 25 | THE COURT:  That's your question? |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 54 of 154   Page ID #:294165
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

54

| | | |
|---|---|---|
| 09:22 | 1 | MR. PRICE:  Yes. |
| 09:22 | 2 | MS. KELLER:  I'm going to object to it as vague |
| 09:22 | 3 | whether we're talking about the drawing -- |
| 09:22 | 4 | THE COURT:  I probably asked a vague question, so |
| 09:22 | 5 | I'll let Counsel -- it was just unclear what he was asking. |
| 09:22 | 6 | So, Counsel, reask the question. |
| 09:23 | 7 | BY MR. PRICE: |
| 09:23 | 8 | Q.   So you didn't have a head and a body together in 1998? |
| 09:23 | 9 | THE COURT:  Does that mean on a sculpt or -- |
| 09:23 | 10 | MR. PRICE:  No, a drawing. |
| 09:23 | 11 | THE COURT:  Drawing.  Thank you. |
| 09:23 | 12 | BY MR. PRICE: |
| 09:23 | 13 | Q.   Other than the first four you testified about -- you |
| 09:23 | 14 | know, that very initial drawing?  Do you remember those? |
| 09:23 | 15 | A.   Yes. |
| 09:23 | 16 | Q.   And you said you did that in 1998, correct? |
| 09:23 | 17 | A.   Yes. |
| 09:23 | 18 | Q.   But if -- otherwise, if it has a head and a body |
| 09:23 | 19 | together, then it couldn't have been done in 1998, correct? |
| 09:23 | 20 | A.   I don't know. |
| 09:23 | 21 | MR. PRICE:  If I could read from page 3246, |
| 09:23 | 22 | June 28, 2008 -- I'm sorry -- June 20, 2008, lines 15 |
| 09:24 | 23 | through 17. |
| 09:24 | 24 | THE COURT:  First of all, do you want to refresh |
| 09:24 | 25 | his recollection? |

| | | |
|---|---|---|
| 09:24 | 1 | MR. PRICE:  We'll try that.  3246. |
| 09:24 | 2 | THE COURT:  Here, I might allow that, Counsel, |
| 09:24 | 3 | because it's close in time during this proceeding and in |
| 09:24 | 4 | this testimony, but when we go back to the prior trial or |
| 09:24 | 5 | the deposition, then I think there should be some |
| 09:24 | 6 | refreshment of recollection. |
| 09:24 | 7 | MR. PRICE:  Okay. |
| 09:24 | 8 | *(Document provided to the witness.)* |
| 09:24 | 9 | BY MR. PRICE: |
| 09:24 | 10 | Q.   Are you at page 3246? |
| 09:24 | 11 | A.   Yes. |
| 09:24 | 12 | Q.   And if you could read lines 15 through 17. |
| 09:24 | 13 | A.   Okay. |
| 09:24 | 14 | Q.   Does that refresh your memory that a drawing with a |
| 09:24 | 15 | body and a face together, for you, didn't exist in 1998? |
| 09:24 | 16 | A.   Um, well, I don't remember saying that back then, |
| 09:24 | 17 | but -- or I don't remember right now saying it, but I don't |
| 09:24 | 18 | disagree with this. |
| 09:24 | 19 | Q.   And if we could look at Exhibit 62-6 -- I'm sorry. |
| 09:25 | 20 | Look at 791. |
| 09:25 | 21 | *(Document provided to the witness.)* |
| 09:25 | 22 | BY MR. PRICE: |
| 09:25 | 23 | Q.   And could you tell us what 791 is? |
| 09:25 | 24 | A.   That is a drawing of the Hallidae character. |
| 09:25 | 25 | MR. PRICE:  Move 791 into evidence. |

Case 2:04-cv-09049-DOC-RNB Document 9797 Filed 02/04/11 Page 56 of 154 Page ID #:294167
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

56

| | | |
|---|---|---|
| 09:25 | 1 | THE COURT:  Received. |
| 09:25 | 2 | *(Exhibit No. 791 received in evidence.)* |
| 09:25 | 3 | *(Document displayed.)* |
| 09:25 | 4 | BY MR. PRICE: |
| 09:25 | 5 | Q.   And if you look -- at the time you were asked |
| 09:26 | 6 | previously about whether you had a drawing and a face |
| 09:26 | 7 | together -- |
| 09:26 | 8 | A.   Uh-huh. |
| 09:26 | 9 | Q.   -- in 1998, you had in front of you this exhibit, |
| 09:26 | 10 | Exhibit 791, correct? |
| 09:26 | 11 | And if you will look at 3245, lines 18 through 14 |
| 09:26 | 12 | *(sic).* |
| 09:26 | 13 | *(Document provided to the witness.)* |
| 09:26 | 14 | THE WITNESS:  Which lines? |
| 09:26 | 15 | BY MR. PRICE: |
| 09:26 | 16 | Q.   It starts at 3245, line 18, and go down to 3246, line |
| 09:27 | 17 | 17.  And I'm just trying to establish that at the time of |
| 09:27 | 18 | the questioning, I was asking you about 791. |
| 09:27 | 19 | A.   Yes. |
| 09:27 | 20 | Q.   Okay.  And so if someone said that as of August '98, |
| 09:27 | 21 | they saw a drawing like 791, with this body and this face, |
| 09:27 | 22 | they would be -- |
| 09:27 | 23 | MS. KELLER:  Objection.  Improper question. |
| 09:27 | 24 | THE COURT:  Sustained. |
| 09:27 | 25 | MS. KELLER:  As to what someone else said. |

| 09:27 | 1  | THE COURT:  Sustained. |
| 09:27 | 2  | BY MR. PRICE: |
| 09:27 | 3  | Q.   It would be impossible for someone in 1998 to see this |
| 09:27 | 4  | drawing, Exhibit 791, correct? |
| 09:27 | 5  | A.   Um, I don't know. |
| 09:27 | 6  | Q.   If you'd look at 3246, lines 11 through 14. |
| 09:28 | 7  | MS. KELLER:  Your Honor, it's the same objection. |
| 09:28 | 8  | Same improper question in 11 through 14. |
| 09:28 | 9  | THE COURT:  What I'm not going to allow for either |
| 09:28 | 10 | party is the comparison of one witness to another.  I think |
| 09:28 | 11 | I've been clear about that.  You can ask him about his |
| 09:28 | 12 | opinion. |
| 09:28 | 13 | BY MR. PRICE: |
| 09:28 | 14 | Q.   Have you read those lines? |
| 09:28 | 15 | A.   Which lines? |
| 09:28 | 16 | Q.   Lines 11 through 17. |
| 09:28 | 17 | MS. KELLER:  Same objection, Your Honor. |
| 09:28 | 18 | THE COURT:  Just one moment. |
| 09:28 | 19 | Sustained. |
| 09:28 | 20 | MR. PRICE:  It's just to refresh. |
| 09:28 | 21 | THE COURT:  Well, you can show him that, but |
| 09:28 | 22 | you're not going to read it. |
| 09:28 | 23 | MR. PRICE:  I don't plan to. |
| 09:28 | 24 | BY MR. PRICE: |
| 09:28 | 25 | Q.   Does this refresh your recollection that it would be |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 58 of 154   Page ID #:294169
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

58

| 09:28 | 1 | impossible -- this drawing did not exist in 1998, correct? |
| 09:29 | 2 | A.   No, I remember that it did. |
| 09:29 | 3 | MR. PRICE:  Your Honor, given that, I would like |
| 09:29 | 4 | to read 11 through 17. |
| 09:29 | 5 | THE COURT:  Yeah, you may. |
| 09:29 | 6 | MR. PRICE:  (Reading:) |
| 09:29 | 7 | "QUESTION:" -- |
| 09:29 | 8 | BY MR. PRICE: |
| 09:29 | 9 | Q.   And you agree this is regarding this document, 791, |
| 09:29 | 10 | looking at your testimony? |
| 09:29 | 11 | A.   Yes. |
| 09:29 | 12 | MR. PRICE:  (Reading:) |
| 09:29 | 13 | "QUESTION:  Okay.  So if someone said that August |
| 09:29 | 14 | of '98 they saw a drawing like this with this body and this |
| 09:29 | 15 | face, they would be mistaken? |
| 09:29 | 16 | "ANSWER:  I suppose so, yes. |
| 09:29 | 17 | "QUESTION:  Because a drawing with a body and a |
| 09:29 | 18 | face together for you didn't exist in 1998, correct? |
| 09:29 | 19 | "ANSWER:  I don't remember that it did." |
| 09:29 | 20 | MS. KELLER:  Your Honor, may we have the date of |
| 09:29 | 21 | that testimony, please? |
| 09:29 | 22 | THE COURT:  Yeah.  The date of that testimony, |
| 09:29 | 23 | Counsel, would be... |
| 09:29 | 24 | MR. PRICE:  June 20, 2008. |
| 09:30 | 25 | THE COURT:  Thank you. |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 59 of 154   Page ID #:294170
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

59

09:30    1              THE WITNESS:  I think I was mistaken about that

09:30    2    testimony.

09:30    3    BY MR. PRICE:

09:30    4    Q.   Would you agree that your memory was better in 2008

09:30    5    than it is today?

09:30    6    A.   Uh, probably.

09:30    7    Q.   And prior to taking the witness stand in 2008, you had

09:30    8    been prepared over a number of days by your counsel and

09:30    9    counsel for MGA, correct?

09:30   10    A.   Yes.

09:30   11    Q.   And they showed you numerous drawings, correct?

09:30   12    A.   Yes.

09:30   13    Q.   So we talked about the documents themselves and the

09:30   14    dates on them.  Now I want to talk to you about the

09:30   15    notebook, 1155.

09:30   16         By the time of the trial in 2008, you understood -- it

09:31   17    was your understanding that what you've called the four

09:31   18    original Bratz drawings could be traced to that notebook,

09:31   19    right?

09:31   20              MS. KELLER:  Objection.  Calls for a conclusion.

09:31   21              THE WITNESS:  I don't remember.

09:31   22              MR. PRICE:  It's his belief.

09:31   23              THE COURT:  Overruled.

09:31   24    BY MR. PRICE:

09:31   25    Q.   If you could look at trial testimony -- it's June 17,

| 09:31 | 1 | 2008, 2733, I believe lines 9 through 13. |
| 09:32 | 2 | A.   Which lines? |
| 09:32 | 3 | Q.   It's 2733, lines 9 through 13. |
| 09:32 | 4 | A.   Okay. |
| 09:32 | 5 | Q.   And does that refresh your recollection that as of |
| 09:32 | 6 | June 18 -- June 17th -- it was your understanding by that |
| 09:32 | 7 | time that the -- what you say are the original Bratz |
| 09:32 | 8 | drawings came out of the Notebook, 1155-C? |
| 09:32 | 9 | A.   Yes. |
| 09:32 | 10 | Q.   And you didn't have an understanding of that prior to |
| 09:32 | 11 | trial, correct? |
| 09:32 | 12 | A.   No. |
| 09:32 | 13 | Q.   I'm sorry.  Is that correct? |
| 09:32 | 14 | A.   Yes. |
| 09:32 | 15 | Q.   You didn't have an understanding of that when you |
| 09:33 | 16 | testified in 2004, correct? |
| 09:33 | 17 | A.   That's correct. |
| 09:33 | 18 | Q.   In fact, in 2004 you testified that the notebook from |
| 09:33 | 19 | which the original Bratz drawings came had been thrown away? |
| 09:33 | 20 | A.   Um, I think I did, yes. |
| 09:33 | 21 | Q.   So if we could look at drawings that you dated |
| 09:33 | 22 | January '98. |
| 09:33 | 23 |         MR. PRICE:  If we could look at 10737. |
| 09:33 | 24 |           *(Document provided to the witness.)* |
| 09:33 | 25 |           *(Document displayed.)* |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 61 of 154   Page ID #:294172
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

61

| 09:33 | 1 | MR. PRICE:  And 10738. |
| 09:33 | 2 | *(Document displayed.)* |
| 09:33 | 3 | MR. PRICE:  And 10739. |
| 09:33 | 4 | *(Document displayed.)* |
| 09:33 | 5 | BY MR. PRICE: |
| 09:33 | 6 | Q.   These are drawings with -- seems like they have lots of |
| 09:33 | 7 | ruffles, and it goes from three to two to one? |
| 09:34 | 8 | A.   Somewhat, yes. |
| 09:34 | 9 | MR. PRICE:  10740. |
| 09:34 | 10 | *(Document displayed.)* |
| 09:34 | 11 | MR. PRICE:  10741. |
| 09:34 | 12 | *(Document displayed.)* |
| 09:34 | 13 | MR. PRICE:  10742. |
| 09:34 | 14 | *(Document displayed.)* |
| 09:34 | 15 | BY MR. PRICE: |
| 09:34 | 16 | Q.   Your testimony is that -- your testimony today -- |
| 09:34 | 17 | yesterday was that these were Jewel dolls, right? |
| 09:34 | 18 | A.   Yes. |
| 09:34 | 19 | Q.   You were asked in 2004, before you understood that your |
| 09:34 | 20 | original Bratz drawings were in that Notebook, 1155, or had |
| 09:34 | 21 | been -- you testified in 2004, and you were asked what work |
| 09:34 | 22 | you did in your first stint at Mattel.  Do you recall that? |
| 09:35 | 23 | A.   Yes. |
| 09:35 | 24 | Q.   And you listed the type of dolls that you worked on, |
| 09:35 | 25 | correct? |

| | | |
|---|---|---|
| 09:35 | 1 | A.   Uh, yes. |
| 09:35 | 2 | Q.   And you didn't mention Jewel, did you? |
| 09:35 | 3 | A.   I don't remember if I did or not. |
| 09:35 | 4 | Q.   If you'd look at Volume III, this is November 8, 2004, |
| 09:35 | 5 | page 544, lines 2 to 13. |
| 09:35 | 6 | *(Document provided to the witness.)* |
| 09:35 | 7 | THE WITNESS:  What page?  I'm sorry. |
| 09:35 | 8 | BY MR. PRICE: |
| 09:35 | 9 | Q.   It's 544, lines 2 through 13. |
| 09:36 | 10 | A.   Okay. |
| 09:36 | 11 | Q.   So does that refresh your recollection that in 2004, |
| 09:36 | 12 | when you were asked to list the projects that you did in |
| 09:36 | 13 | that first stint, that you didn't mention Jewel, correct? |
| 09:36 | 14 | A.   I didn't. |
| 09:36 | 15 | Q.   However, back in 2004, you did mention that in your |
| 09:36 | 16 | second stint, starting January 4, 1999, that you did work on |
| 09:36 | 17 | Jewel.  Do you recall that? |
| 09:36 | 18 | A.   Yes. |
| 09:36 | 19 | Q.   And this is testimony that you gave before you had any |
| 09:36 | 20 | understanding that those four original Bratz drawings could |
| 09:36 | 21 | be traced to that black notebook, Exhibit 1155? |
| 09:36 | 22 | MS. KELLER:  Objection.  Argumentative. |
| 09:36 | 23 | THE COURT:  Overruled. |
| 09:36 | 24 | THE WITNESS:  Yes. |
| | 25 | |

| 09:37 | 1 | BY MR. PRICE: |
|---|---|---|
| 09:37 | 2 | Q.   Now, you recall that when I examined you a few days |
| 09:37 | 3 | ago, you had the black notebook in front of you. |
| 09:37 | 4 | MR. PRICE:  If we can put 1155 in front of |
| 09:37 | 5 | Mr. Bryant. |
| 09:37 | 6 | *(Document provided to the witness.)* |
| 09:37 | 7 | BY MR. PRICE: |
| 09:37 | 8 | Q.   And I was showing you pages 5 and 7 -- |
| 09:37 | 9 | MR. PRICE:  If we can show those. |
| 09:37 | 10 | *(Document displayed.)* |
| 09:37 | 11 | MR. PRICE:  7. |
| 09:37 | 12 | *(Document displayed.)* |
| 09:37 | 13 | MR. PRICE:  And I think 17. |
| 09:37 | 14 | *(Document displayed.)* |
| 09:37 | 15 | BY MR. PRICE: |
| 09:37 | 16 | Q.   Now, at the time, when I asked you those questions, you |
| 09:37 | 17 | had already met and gone over some drawings for about two |
| 09:37 | 18 | hours, right? |
| 09:37 | 19 | A.   Yes. |
| 09:37 | 20 | Q.   And when I asked you about these drawings -- |
| 09:37 | 21 | MR. PRICE:  Go to 23, for example. |
| 09:37 | 22 | *(Document displayed.)* |
| 09:37 | 23 | BY MR. PRICE: |
| 09:37 | 24 | Q.   When I asked you about these drawings, you couldn't |
| 09:37 | 25 | even tell me that they had anything to do with Mattel. |

| | | |
|---|---|---|
| 09:38 | 1 | THE COURT:  And the question is? |
| 09:38 | 2 | BY MR. PRICE: |
| 09:38 | 3 | Q.   Is that correct? |
| 09:38 | 4 | THE COURT:  That was a statement, Counsel. |
| 09:38 | 5 | Sustained. |
| 09:38 | 6 | BY MR. PRICE: |
| 09:38 | 7 | Q.   Is it correct that when I went through these with you, |
| 09:38 | 8 | you told me that you couldn't even say these were done at |
| 09:38 | 9 | Mattel? |
| 09:38 | 10 | MS. KELLER:  Objection.  That's not inconsistent, |
| 09:38 | 11 | Your Honor. |
| 09:38 | 12 | THE COURT:  Well, I'm not worried about that. |
| 09:38 | 13 | I'd like that as a question. |
| 09:38 | 14 | MR. PRICE:  Yes. |
| 09:38 | 15 | THE COURT:  You're making statements. |
| 09:38 | 16 | BY MR. PRICE: |
| 09:38 | 17 | Q.   Is it true that when I examined you a few days ago, you |
| 09:38 | 18 | told us that you couldn't even say that these drawings were |
| 09:38 | 19 | done for Mattel? |
| 09:38 | 20 | MS. KELLER:  Objection.  Misstates the testimony. |
| 09:38 | 21 | THE WITNESS:  I -- |
| 09:38 | 22 | THE COURT:  Overruled. |
| 09:38 | 23 | THE WITNESS:  I don't remember what I said. |
| 09:38 | 24 | BY MR. PRICE: |
| 09:38 | 25 | Q.   Well, let's look at January 28, 2011.  It's Volume I, |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 09:38 | 1 | 27, 9 -- 27, line 9, to 28, line 7. |
| 09:39 | 2 | THE WITNESS:  Which page?  Which line? |
| 09:39 | 3 | BY MR. PRICE: |
| 09:39 | 4 | Q.   Look at 27, line 9, to 28, line 7. |
| 09:39 | 5 | THE COURT:  Just a moment now, Counsel. |
| 09:39 | 6 | THE WITNESS:  Okay. |
| 09:39 | 7 | BY MR. PRICE: |
| 09:39 | 8 | Q.   And does it refresh your recollection that when I asked |
| 09:39 | 9 | you, you didn't know whether these were for Mattel or not? |
| 09:39 | 10 | A.   Uh, yes. |
| 09:40 | 11 | Q.   Now I'd like to you compare 1155, line -- page 27. |
| 09:40 | 12 | (Document displayed.) |
| 09:40 | 13 | BY MR. PRICE: |
| 09:40 | 14 | Q.   That's the one with the necklace and the sash.  Do you |
| 09:40 | 15 | see that? |
| 09:40 | 16 | A.   Yes. |
| 09:40 | 17 | Q.   And it's kind of a flowing gown, not -- not like a |
| 09:40 | 18 | Southern bell type of gown, right? |
| 09:40 | 19 | A.   Yes. |
| 09:40 | 20 | Q.   And I think it's 10756. |
| 09:41 | 21 | (Document provided to the witness.) |
| 09:41 | 22 | (Document displayed.) |
| 09:41 | 23 | THE WITNESS:  Okay. |
| 09:41 | 24 | BY MR. PRICE: |
| 09:41 | 25 | Q.   And you remember we talked about these before? |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 66 of 154   Page ID #:294177
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

66

| | | |
|---|---|---|
| 09:41 | 1 | A.   Yes. |
| 09:41 | 2 | Q.   And it looks like some kind of progression, right? |
| 09:41 | 3 | A.   Possibly, yes. |
| 09:41 | 4 | Q.   And then at 13657. |
| 09:41 | 5 | *(Document displayed.)* |
| 09:41 | 6 | BY MR. PRICE: |
| 09:41 | 7 | Q.   And you testified this appears to be part of that |
| 09:41 | 8 | progression, right? |
| 09:41 | 9 | A.   Yes. |
| 09:41 | 10 | Q.   And this is a drawing that you did sometime in February |
| 09:41 | 11 | of 1999, right? |
| 09:41 | 12 | A.   Yes. |
| 09:41 | 13 | Q.   And that's while you were at Mattel, correct? |
| 09:41 | 14 | A.   Yes. |
| 09:41 | 15 | Q.   And the first project that you were asked to do when |
| 09:41 | 16 | you returned to Mattel in January of '99 was the Jewel |
| 09:42 | 17 | project? |
| 09:42 | 18 | A.   I don't remember about that. |
| 09:42 | 19 | Q.   Was it one of the first ones? |
| 09:42 | 20 | A.   Yes. |
| 09:42 | 21 | Q.   So getting back to the notebook -- oh, by the way, |
| 09:42 | 22 | these type of drawings that I just showed you of -- page 27 |
| 09:42 | 23 | in 1155-C, and 10756, and now 13657, they don't look like a |
| 09:42 | 24 | wedding cake?  I mean, they're not these big kind of |
| 09:42 | 25 | structured type of -- of gowns, right? |

CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

67

| 09:42 | 1 | A.   Right. |
| 09:42 | 2 | Q.   I mean, you can see the difference between this type of |
| 09:42 | 3 | gown and the ones that you had in your 1998 drawings, |
| 09:42 | 4 | correct? |
| 09:42 | 5 | A.   Yes. |
| 09:42 | 6 | Q.   And they're quite different, right? |
| 09:42 | 7 | A.   Um, yes. |
| 09:42 | 8 | Q.   And different than the sketches you have in this black |
| 09:42 | 9 | notebook? |
| 09:43 | 10 | A.   Yes. |
| 09:43 | 11 | Q.   So we talked about some pages in that black notebook? |
| 09:43 | 12 | A.   Yes. |
| 09:43 | 13 | Q.   But let's look at something else. |
| 09:43 | 14 | In your examination by MGA, you were shown some angel |
| 09:43 | 15 | drawings that you did for Ashton Drake.  Do you recall that? |
| 09:43 | 16 | A.   Yes. |
| 09:43 | 17 | MR. PRICE:  Let's look at 15059. |
| 09:43 | 18 | (Document displayed.) |
| 09:43 | 19 | (Document provided to the witness.) |
| 09:43 | 20 | BY MR. PRICE: |
| 09:43 | 21 | Q.   And that's one of the angel drawings that you said you |
| 09:43 | 22 | did for Ashton Drake, correct? |
| 09:43 | 23 | A.   Yes. |
| 09:43 | 24 | Q.   And I think she showed you a couple of more documents |
| 09:43 | 25 | relating to angel drawings or -- by you or others in |

DEBBIE GALE, U.S. COURT REPORTER

| 09:43 | 1 | connection with Ashton Drake.  Do you recall that? |
| 09:43 | 2 | A.   Yes. |
| 09:44 | 3 | Q.   Now, let me show you -- then go back to that black |
| 09:44 | 4 | notebook, and I want to turn your attention to 1155-C-13. |
| 09:44 | 5 | *(Document displayed.)* |
| 09:44 | 6 | BY MR. PRICE: |
| 09:44 | 7 | Q.   And so, in this black notebook, where your |
| 09:44 | 8 | understanding is the original Bratz drawings were done, it |
| 09:44 | 9 | has this "notes/ideas on large angel," correct? |
| 09:44 | 10 | A.   Yes. |
| 09:44 | 11 | Q.   Are you suggesting that that refers to something you |
| 09:44 | 12 | did for Ashton Drake? |
| 09:44 | 13 | A.   I don't know. |
| 09:44 | 14 | Q.   Well, you looked at all these angel sketches for Ashton |
| 09:44 | 15 | Drake.  Do you have any understanding why you went through |
| 09:44 | 16 | that? |
| 09:44 | 17 | A.   I am not sure. |
| 09:44 | 18 | Q.   Well, in 2004, when you were first shown this page, you |
| 09:45 | 19 | didn't know at that time that we could trace the four Bratz |
| 09:45 | 20 | drawings to this notebook, right? |
| 09:45 | 21 | MS. KELLER:  Objection.  Your Honor, misstates |
| 09:45 | 22 | testimony.  It's a legal conclusion.  It's argumentative. |
| 09:45 | 23 | It's not -- it assumes facts not in evidence. |
| 09:45 | 24 | THE COURT:  Overruled. |
| 09:45 | 25 | THE WITNESS:  Uh, no. |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 69 of 154   Page ID #:294180
CV 04-9049 DOC — 2/3/2011 — Day 12, Volume 1 of 3

69

| | | |
|---|---|---|
| 09:45 | 1 | BY MR. PRICE: |
| 09:45 | 2 | Q.   Well, I think I did a double negative. |
| 09:45 | 3 |      In 1994 did you know that your four -- I'm sorry -- in |
| 09:45 | 4 | 2004 did you know what you called your original Bratz |
| 09:45 | 5 | drawings could be traced to 1155, the black notebook? |
| 09:45 | 6 | A.   No. |
| 09:45 | 7 |           THE COURT:  Now, this goes to state of mind.  We |
| 09:45 | 8 | don't know that this could be traced to a black notebook. |
| 09:45 | 9 | That evidence may or may not be forthcoming.  You may or may |
| 09:45 | 10 | not accept it.  But at the present time, I'm allowing |
| 09:45 | 11 | counsel to ask the question. |
| 09:46 | 12 | BY MR. PRICE: |
| 09:46 | 13 | Q.   And in 2004, you testified that this page in your |
| 09:46 | 14 | notebook related to a Mattel project in 1999, right? |
| 09:46 | 15 | A.   Yes. |
| 09:46 | 16 | Q.   And that's because it talks about shimmery hair stuff |
| 09:46 | 17 | and Ken hair and stained glass -- these were all ideas you |
| 09:46 | 18 | had for a 1999 project at Mattel on large angel, correct? |
| 09:46 | 19 | A.   I believe so, yes. |
| 09:46 | 20 | Q.   So this is something in the notebook that we can |
| 09:46 | 21 | definitively say is 1999, right? |
| 09:46 | 22 | A.   I believe so, yes. |
| 09:46 | 23 | Q.   And then you recall in the notebook -- this is |
| 09:46 | 24 | 1155-0057. |
| 09:47 | 25 |           *(Document displayed.)* |

CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

| | | |
|---|---|---|
| 09:47 | 1 | BY MR. PRICE: |
| 09:47 | 2 | Q.   You remember we went through these calculations which |
| 09:47 | 3 | appear to relate to a July 1999 statement, correct? |
| 09:47 | 4 | A.   Yes. |
| 09:47 | 5 | Q.   So if we're relying just on the testimony you gave |
| 09:47 | 6 | prior to believing that you could trace the four Bratz |
| 09:47 | 7 | drawings -- what you said are the four original Bratz |
| 09:47 | 8 | drawings to this notebook, you were like -- just on your |
| 09:47 | 9 | testimony -- uh, before you understood that, that testimony |
| 09:47 | 10 | says that what you see in this notebook was 1999? |
| 09:47 | 11 | A.   Uh, yes. |
| 09:47 | 12 | THE WITNESS:  Your Honor, is it possible for me to |
| 09:47 | 13 | take a quick restroom break? |
| 09:48 | 14 | THE COURT:  Absolutely. |
| 09:48 | 15 | You're admonished not to discuss this matter |
| 09:48 | 16 | amongst yourselves, nor to form or express any opinion |
| 09:48 | 17 | concerning the case. |
| 09:48 | 18 | Let's take a quick recess. |
| 09:48 | 19 | We'll come and get you in about 20 minutes. |
| 09:48 | 20 | *(Jury recesses at 9:48 a.m.)* |
| 09:48 | 21 | *(Outside the presence of the jury.)* |
| 09:48 | 22 | THE COURT:  All right.  Counsel, if you would be |
| 09:48 | 23 | seated for just a moment. |
| 09:48 | 24 | I want to take up this matter concerning the |
| 09:48 | 25 | filing with the PTO office. |

| 09:48 | 1 | First of all, I want to indicate to both counsel |
| 09:49 | 2 | that this Court well understands that the evidence is |
| 09:49 | 3 | relevant concerning Mattel's fraudulent concealment |
| 09:49 | 4 | allegation, because I've already found no reasonable |
| 09:49 | 5 | factfinder could conclude that Mattel relied upon |
| 09:49 | 6 | representations made in a private application filed with the |
| 09:49 | 7 | United States Patent and Trademark Office.  But it is -- and |
| 09:49 | 8 | the argument can be also that it's the improper use of |
| 09:49 | 9 | extrinsic evidence. |
| 09:49 | 10 | I believe, though, it's a proper use of this |
| 09:49 | 11 | evidence during the examination to establish -- I'm sorry -- |
| 09:49 | 12 | let me restate that. |
| 09:49 | 13 | It is also, obviously, an improper use of such |
| 09:49 | 14 | evidence, especially intrinsic evidence, during the direct |
| 09:49 | 15 | examination, to establish Mr. Bryant's character for |
| 09:49 | 16 | truthfulness under 608(b), and the committee notes to that |
| 09:49 | 17 | rule. |
| 09:49 | 18 | But I find that this evidence is relevant to |
| 09:49 | 19 | Bryant's bias, since Rule 608(b) does not apply to evidence |
| 09:50 | 20 | concerning bias. |
| 09:50 | 21 | And although -- the Court has thoroughly |
| 09:50 | 22 | considered *Lewy v. Southern Pacific Transportation Company,* |
| 09:50 | 23 | at 799 F.2d 1281, 1299, Ninth Circuit (1986), which cites |
| 09:50 | 24 | *United States v. Abel, at* 469 U.S. 45.  And in *Abel* the |
| 09:50 | 25 | Supreme Court described bias as, quote, "the relationship |

09:50  1   between a party and a witness which might lead the witness

09:50  2   to slant unconsciously, or otherwise, his testimony in favor

09:50  3   or against a party.  Bias may be induced by a witness like,

09:50  4   dislike, or fear of a party or by the party's -- or by the

09:50  5   witness's self-interest."

09:50  6          Now, here, I well understand that this is a

09:50  7   difficult call.  The standard is abuse of discretion.  And

09:50  8   uniquely, I think trial courts are called upon to make this.

09:50  9   But I know that this will cause some controversy on any

09:51  10  appeal.

09:51  11         So let me try to set the record on my reasons as

09:51  12  fully as I can at this time.

09:51  13         The application has a nexus to Bratz, to

09:51  14  Mr. Larian, to the relationship between the parties, and it

09:51  15  strikes to the witness's perception of bias and/or

09:51  16  credibility and his willingness, at least, to extend himself

09:51  17  to this rather extraordinary degree of making a statement

09:51  18  under penalty of perjury to the PTO.  It's being received

09:51  19  only for that purpose.

09:51  20         I well understand that it's a Rule 403

09:51  21  determination and a balancing analysis.

09:51  22         I've carefully considered *United States v. Ray* at

09:51  23  731 F.2d 1361, Ninth Circuit case (1984).

09:52  24         And I've tried to take into account the complexity

09:52  25  of Rule 611, which permits leading questions during direct

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 73 of 154   Page ID #:294184
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

73

| 09:52 | 1 | examination of an adverse witness, and the way that this |
| 09:52 | 2 | witness, in fact, came into evidence. |
| 09:52 | 3 | Now, having made that ruling, I'm going to address |
| 09:52 | 4 | my remarks now, of course, to MGA. |
| 09:52 | 5 | You're free to rest on this record for appellate |
| 09:52 | 6 | purposes and do nothing.  I'm inviting you to fashion a |
| 09:52 | 7 | limiting instruction and give that to the Court if you so |
| 09:52 | 8 | choose.  Your unwillingness to do so simply means that |
| 09:52 | 9 | you're resting on this record for appellate purposes. |
| 09:52 | 10 | And I'm encouraging either party at any time, if |
| 09:52 | 11 | you think that there is an evidentiary call that is so |
| 09:52 | 12 | substantially harmful, to request a mistrial.  And that |
| 09:53 | 13 | applies to Mattel at any time, and it applies to MGA at any |
| 09:53 | 14 | time. |
| 09:53 | 15 | So we'll now be in recess. |
| 09:53 | 16 | *(Recess held at 9:53 a.m.)* |
|  | 17 | *(Proceedings resumed at 10:10 a.m.)* |
| 10:10 | 18 | *(In the presence of the jury.)* |
| 10:12 | 19 | THE COURT:  All right.  We're back in session. |
| 10:12 | 20 | The jury's present, the alternates.  All counsel are still |
| 10:12 | 21 | present.  The parties are present. |
| 10:12 | 22 | And, Mr. Bryant, if you would have a seat. |
| 10:12 | 23 | *(Witness resumes the stand.)* |
| 10:12 | 24 | THE COURT:  Mr. Bryant's present. |
| 10:12 | 25 | And, Mr. Price, if you would like to continue with |

CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

74

| | | |
|---|---|---|
| 10:12 | 1 | your examination. |
| 10:12 | 2 | This is redirect. |
| 10:12 | 3 | *(Redirect examination continued.)* |
| 10:12 | 4 | BY MR. PRICE: |
| 10:12 | 5 | Q.   Mr. Bryant, you okay? |
| 10:12 | 6 | A.   I'm good. |
| 10:12 | 7 | Q.   So we were talking about the black notebook, the Jewel |
| 10:12 | 8 | drawing, the Angel notations.  I'd like to go to another |
| 10:12 | 9 | area now. |
| 10:12 | 10 | By the time of the last trial, you had an understanding |
| 10:13 | 11 | that one of the drawings that was taken from that notebook, |
| 10:13 | 12 | 1155, was a Rainy Day Rascals sketch, correct? |
| 10:13 | 13 | A.   Uh, I don't remember. |
| 10:13 | 14 | Q.   Well, at the trial, do you remember you were asked |
| 10:13 | 15 | about a Rainy Day Rascals sketch that was lifted or |
| 10:13 | 16 | determined -- there was testimony that it had been in that |
| 10:13 | 17 | notebook? |
| 10:13 | 18 | A.   Yes. |
| 10:13 | 19 | Q.   Now, prior to understanding that there was a Rainy Day |
| 10:13 | 20 | Rascals drawing that had been in that notebook, prior to |
| 10:13 | 21 | then, you had never testified about Rainy Day Rascals, |
| 10:13 | 22 | correct? |
| 10:13 | 23 | A.   I don't remember. |
| 10:13 | 24 | Q.   Well, sitting here today, you don't remember ever |
| 10:14 | 25 | testifying about Rainy Day Rascals until after you had an |

CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

75

| 10:14 | 1 | understanding that there was a sketch of Rainy Day Rascals |
| 10:14 | 2 | in that black notebook, 1155? |
| 10:14 | 3 | A.   I still don't remember. |
| 10:14 | 4 | Q.   Well, I'm saying, right here today, you don't have any |
| 10:14 | 5 | memory of ever testifying about Rainy Day Rascals until the |
| 10:14 | 6 | trial when you had an understanding that there was a Rainy |
| 10:14 | 7 | Day Rascals sketch which was taken -- or determined to have |
| 10:14 | 8 | come from that notebook? |
| 10:14 | 9 | A.   Oh, yes, you're right. |
| 10:14 | 10 | Q.   And so prior to your trial testimony, your |
| 10:14 | 11 | understanding is no one would have thought that that was |
| 10:14 | 12 | relevant? |
| 10:14 | 13 | MS. KELLER:  Objection. |
| 10:14 | 14 | MR. PRICE:  The Rainy Day Rascals. |
| 10:14 | 15 | THE COURT:  Overruled. |
| 10:14 | 16 | THE WITNESS:  I don't know.  I mean, it's hard for |
| 10:14 | 17 | me to answer that.  I have no idea. |
| 10:15 | 18 | BY MR. PRICE: |
| 10:15 | 19 | Q.   Well, it just hadn't come up until then, right? |
| 10:15 | 20 | A.   That's true. |
| 10:15 | 21 | Q.   And I believe that Ms. Keller showed you some -- or you |
| 10:15 | 22 | were shown during your examination some Rainy Day Rascals |
| 10:15 | 23 | sketches; do you remember that? |
| 10:15 | 24 | A.   Yes. |
| 10:15 | 25 | Q.   And your testimony was that you sketched Rainy Day |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

76

| | | |
|---|---|---|
| 10:15 | 1 | Rascals in 1998, right? |
| 10:15 | 2 | A.   I had done some Rainy Day Rascals sketches in '98, yes. |
| 10:16 | 3 | Q.   Now, you were shown Exhibit 10624. |
| 10:16 | 4 | *(Document displayed.)* |
| 10:16 | 5 | THE WITNESS:  I have it on my screen. |
| 10:16 | 6 | BY MR. PRICE: |
| 10:16 | 7 | Q.   And this is a Rainy Day Rascals drawing which you dated |
| 10:16 | 8 | April 4, 1999, correct? |
| 10:16 | 9 | A.   Yes. |
| 10:16 | 10 | *(Document provided to the witness.)* |
| 10:16 | 11 | BY MR. PRICE: |
| 10:16 | 12 | Q.   And that date was put on there in 1999, correct? |
| 10:16 | 13 | A.   I'm not sure. |
| 10:16 | 14 | Q.   Well, it's a date that you put on the drawing, right? |
| 10:16 | 15 | A.   I'm sorry.  What now? |
| 10:17 | 16 | Q.   It's a date that you put on the drawing, your |
| 10:17 | 17 | handwriting, correct? |
| 10:17 | 18 | A.   Yes. |
| 10:17 | 19 | Q.   I'd like you to look at Exhibit 1154. |
| 10:17 | 20 | *(Document provided to the witness.)* |
| 10:17 | 21 | BY MR. PRICE: |
| 10:17 | 22 | Q.   Do you see 1154 is a copy of -- looks like a red -- the |
| 10:17 | 23 | cover on it is a red notebook? |
| 10:17 | 24 | A.   Yes. |
| 10:17 | 25 | Q.   And your understanding is that the original of that |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:17 | 1 | notebook can't be found? |
| 10:17 | 2 | A.    Um, I've heard that, yes. |
| 10:17 | 3 | Q.    And you remember that back in 2004, you were asked |
| 10:18 | 4 | questions about that notebook? |
| 10:18 | 5 | A.    I believe so, yes. |
| 10:18 | 6 | Q.    And again that's before you had an understanding that |
| 10:18 | 7 | there had been a Rainy Day Rascals drawing which could be |
| 10:18 | 8 | traced to the black notebook, 1155, right? |
| 10:18 | 9 | A.    I'm not sure. |
| 10:18 | 10 | Q.    Well, in 2004, you had no understanding that a Rainy |
| 10:18 | 11 | Day Rascals drawing could be traced to that black notebook? |
| 10:18 | 12 | MS. KELLER:  Objection.  Assumes facts not in |
| 10:18 | 13 | evidence. |
| 10:18 | 14 | THE COURT:  The fact not in evidence is whether, |
| 10:18 | 15 | in fact, it can be traced to that notebook. |
| 10:18 | 16 | So I'll allow that question.  There may or may not |
| 10:18 | 17 | be evidence concerning that subject later in the trial. |
| 10:18 | 18 | MS. KELLER:  Your Honor, it assumes a different |
| 10:18 | 19 | fact not in evidence. |
| 10:18 | 20 | THE COURT:  I missed that fact not in evidence, |
| 10:18 | 21 | then.  What's the other fact? |
| 10:18 | 22 | MS. KELLER:  That he even knew there was a black |
| 10:18 | 23 | notebook in 2004 that had anything in it. |
| 10:18 | 24 | THE COURT:  Overruled. |
| 10:18 | 25 | THE WITNESS:  I'm sorry. |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 78 of 154   Page ID
#:294189
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

78

| | | |
|---|---|---|
| 10:18 | 1 | What was your question again? |
| 10:19 | 2 | BY MR. QUINN: |
| 10:19 | 3 | Q.   Well, first, let's address that. |
| 10:19 | 4 | As of January 24, 2008, you realize that there was a |
| 10:19 | 5 | black notebook, right? |
| 10:19 | 6 | A.   Yes. |
| 10:19 | 7 | Q.   And let me refer to another date, then.  In January of |
| 10:19 | 8 | 2008, you were shown the red notebook in -- uh, correct? |
| 10:19 | 9 | A.   I believe so, yes. |
| 10:19 | 10 | Q.   And that was part of your deposition, right? |
| 10:19 | 11 | A.   Uh, yes, it was. |
| 10:20 | 12 | Q.   So when you looked at the red notebook, you were asked |
| 10:20 | 13 | to flip through it, right? |
| 10:20 | 14 | A.   Yes. |
| 10:20 | 15 | Q.   And you -- you very carefully flipped through the pages |
| 10:20 | 16 | of that red notebook, right? |
| 10:20 | 17 | A.   I'm not sure how carefully I did. |
| 10:20 | 18 | Q.   Well, you recall at the time that you took the |
| 10:20 | 19 | notebook, and you went kind of like I'm doing now -- |
| 10:20 | 20 | (indicating) -- which is looking at the pages, to see if you |
| 10:20 | 21 | could determine what the date was of that notebook? |
| 10:20 | 22 | A.   Yes. |
| 10:20 | 23 | Q.   Because you were asked what the date range was, and you |
| 10:20 | 24 | wanted to give a truthful answer, correct? |
| 10:20 | 25 | A.   Yes. |

| | | |
|---|---|---|
| 10:20 | 1 | Q.   And so, because you wanted to give a truthful answer |
| 10:20 | 2 | under oath, you looked at the pages of the notebook to see |
| 10:20 | 3 | if you could figure out what the date range was of the |
| 10:20 | 4 | notebook, right? |
| 10:20 | 5 | A.   Yes. |
| 10:20 | 6 | Q.   And at that time, when you flipped through the |
| 10:20 | 7 | notebook, you said that you couldn't even begin to guess |
| 10:21 | 8 | what the date of that notebook was, correct? |
| 10:21 | 9 | A.   I don't remember what -- I don't remember what I said |
| 10:21 | 10 | at the time. |
| 10:21 | 11 | Q.   If you look -- this is January 24, 2008.  And it is |
| 10:21 | 12 | page 1204.  It's line 16, to 1205, line 16. |
| 10:21 | 13 | *(Document provided to the witness.)* |
| 10:22 | 14 | THE WITNESS:  Okay.  I see it. |
| 10:22 | 15 | BY MR. PRICE: |
| 10:22 | 16 | Q.   So do you recall that, at the time when you looked at |
| 10:22 | 17 | this notebook, you couldn't even begin to guess what the |
| 10:22 | 18 | date ranges were in that notebook, correct? |
| 10:22 | 19 | A.   That's what I said previously, yes. |
| 10:22 | 20 | Q.   And that was the truth? |
| 10:22 | 21 | A.   Yes. |
| 10:22 | 22 | Q.   Okay.  Now, if you look at the notebook in front of |
| 10:22 | 23 | you -- |
| 10:22 | 24 | THE COURT:  Which notebook, Counsel? |
| 10:22 | 25 | MR. PRICE:  The red notebook, Your Honor. |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 80 of 154   Page ID #:294191
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

80

| 10:22 | 1 | And we move that into evidence, Your Honor. |
| 10:22 | 2 | THE COURT:  1154? |
| 10:22 | 3 | MR. PRICE:  Yes. |
| 10:22 | 4 | THE COURT:  Received. |
| 10:22 | 5 | *(Exhibit No. 1154 received in evidence.)* |
| 10:22 | 6 | BY MR. PRICE: |
| 10:22 | 7 | Q.   If you'd look at 1154, page 20. |
| 10:22 | 8 | *(Document displayed.)* |
| 10:22 | 9 | THE WITNESS:  Okay. |
| 10:22 | 10 | BY MR. PRICE: |
| 10:22 | 11 | Q.   You recognize 1154, page 20, as a Rainy Day Rascals |
| 10:23 | 12 | sketch? |
| 10:23 | 13 | A.   Yes. |
| 10:23 | 14 | Q.   And this, obviously, is a preliminary sketch of some |
| 10:23 | 15 | sort; it's not finished, right? |
| 10:23 | 16 | A.   Yes. |
| 10:23 | 17 | Q.   And when you looked through the notebook, and you saw |
| 10:23 | 18 | this sketch, you still had no idea of what the date ranges |
| 10:23 | 19 | were in this notebook, right? |
| 10:23 | 20 | A.   Uh, that's what I remembered at the time. |
| 10:23 | 21 | Q.   And as of that time, you had no understanding that a |
| 10:23 | 22 | Rainy Day Rascals sketch could be traced to Exhibit 1155, |
| 10:23 | 23 | that black notebook? |
| 10:23 | 24 | MS. KELLER:  Objection.  Argumentative. |
| 10:23 | 25 | THE COURT:  Overruled. |

CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

81

| 10:23 | 1 | Once again, I don't want you to assume a fact that |
| 10:23 | 2 | that can, in fact, be done.  This goes to the witness's |
| 10:23 | 3 | state of mind. |
| 10:24 | 4 | So you can answer the question, sir. |
| 10:24 | 5 | THE WITNESS:  Uh, no, I didn't. |
| 10:24 | 6 | BY MR. PRICE: |
| 10:24 | 7 | Q.   And, at the trial, you testified that that black |
| 10:24 | 8 | notebook -- you know, where we've seen the Large Angel in |
| 10:24 | 9 | '99 and the Jewel in 1999 and the financial calculations in |
| 10:24 | 10 | '99 -- you testified that the black notebook included 1998 |
| 10:24 | 11 | sketches 'cause there was a Rainy Day Rascals sketch that |
| 10:24 | 12 | had once been in there? |
| 10:24 | 13 | A.   Um, I don't remember exactly what I testified to. |
| 10:24 | 14 | Q.   Well, it's accurate that, when you see a Rainy Day |
| 10:24 | 15 | Rascals sketch, you don't think 1998?  Because you didn't |
| 10:24 | 16 | when you looked at the red notebook, and couldn't even guess |
| 10:24 | 17 | what the dates range was in that? |
| 10:24 | 18 | MS. KELLER:  Objection.  Argumentative and |
| 10:24 | 19 | compound. |
| 10:24 | 20 | THE COURT:  Overruled. |
| 10:24 | 21 | You can answer the question. |
| 10:24 | 22 | THE WITNESS:  I -- I don't know.  I don't know how |
| 10:24 | 23 | to answer that question. |
| 10:25 | 24 | BY MR. PRICE: |
| 10:25 | 25 | Q.   Well, if you had sketches of Rainy Day Rascals in 1998, |

| | | |
|---|---|---|
| 10:25 | 1 | and you looked at this notebook to give a date range of |
| 10:25 | 2 | where -- when you did things in this notebook, you would |
| 10:25 | 3 | have said, "Oh, the date range is 1998" to something, right? |
| 10:25 | 4 | A.   I don't know.  I might have. |
| 10:25 | 5 | Q.   But what you said was you had no idea.  You would be |
| 10:25 | 6 | completely guessing if you were trying to date what was in |
| 10:25 | 7 | this red notebook, which is 1154, right? |
| 10:25 | 8 | A.   Yes. |
| 10:25 | 9 | Q.   And if you look at page 18 -- |
| 10:25 | 10 | MR. PRICE:  I'm sorry.  Let's do Exhibit 1533. |
| 10:25 | 11 | (Document provided to the witness.) |
| 10:26 | 12 | BY MR. PRICE: |
| 10:26 | 13 | Q.   And I'd like you to compare that to 1154-0020 from the |
| 10:26 | 14 | notebook that you have no idea when the dates are. |
| 10:26 | 15 | If you would compare -- |
| 10:26 | 16 | MS. KELLER:  Objection.  Misstates his testimony |
| 10:26 | 17 | that he has no idea when the dates are. |
| 10:26 | 18 | THE COURT:  We'll strike the last portion. |
| 10:26 | 19 | The rest of the question remains. |
| 10:26 | 20 | BY MR. PRICE: |
| 10:26 | 21 | Q.   And let me clarify. |
| 10:26 | 22 | You testified under oath that you have no idea what the |
| 10:26 | 23 | date range is for 1154, right? |
| 10:26 | 24 | MS. KELLER:  Your Honor, objection. |
| 10:26 | 25 | Argumentative.  I would ask that counsel quit saying "under |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 83 of 154   Page ID #:294194
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

83

| | | |
|---|---|---|
| 10:26 | 1 | oath" all the time.  It is argumentative. |
| 10:26 | 2 | THE COURT:  Overruled. |
| 10:26 | 3 | I assume that both the deposition, the trial, and |
| 10:26 | 4 | this proceeding were all under oath. |
| 10:26 | 5 | Overruled. |
| 10:26 | 6 | THE WITNESS:  I'm sorry.  What was your question? |
| 10:26 | 7 | BY MR. PRICE: |
| 10:26 | 8 | Q.   You testified under oath that you had no idea what the |
| 10:27 | 9 | date range was for Exhibit 1154, right? |
| 10:27 | 10 | A.   Yes. |
| 10:27 | 11 | Q.   So if you'd look at 15333 -- |
| 10:27 | 12 | MR. PRICE:  My understanding is that was put into |
| 10:27 | 13 | evidence, Your Honor. |
| 10:27 | 14 | THE COURT:  If not, it's received, Counsel. |
| 10:27 | 15 | *(Exhibit No. 15333 received in evidence.)* |
| 10:27 | 16 | *(Document displayed.)* |
| 10:27 | 17 | BY MR. PRICE: |
| 10:27 | 18 | Q.   And you see in 15333 that there's another Rainy Day |
| 10:27 | 19 | Rascals sketch?  Do you see that? |
| 10:27 | 20 | A.   Yes. |
| 10:27 | 21 | THE COURT:  You might indicate where that comes |
| 10:27 | 22 | from.  The jury is going to be confused with just numbers. |
| 10:27 | 23 | MR. PRICE:  And -- I'll ask. |
| 10:27 | 24 | BY MR. PRICE: |
| 10:27 | 25 | Q.   Where does 15333 come from? |

| 10:27 | 1 | A.   I -- I don't remember where that one came from. |
| 10:27 | 2 | Q.   Just a loose page? |
| 10:27 | 3 | A.   Possibly, yes.  I don't know. |
| 10:27 | 4 | Q.   And you can compare that to -- if you look at the |
| 10:28 | 5 | sketch from your red notebook, it says -- you see the line |
| 10:28 | 6 | it says, "Whenever I need you there you were." |
| 10:28 | 7 | THE COURT:  That would be 1154-00020? |
| 10:28 | 8 | MR. PRICE:  0020. |
| 10:28 | 9 | THE WITNESS:  Yes. |
| 10:28 | 10 | BY MR. PRICE: |
| 10:28 | 11 | Q.   And then, if you'd look at 15333-001, it says, |
| 10:28 | 12 | "Whenever I need you, there you are." |
| 10:28 | 13 | A.   Yes. |
| 10:28 | 14 | Q.   There's some similarity in those, right? |
| 10:28 | 15 | A.   Yes. |
| 10:29 | 16 | Q.   So let's look in the red notebook and look at some |
| 10:29 | 17 | other pages, then.  If you look at 1154-0037. |
| 10:29 | 18 | *(Document displayed.)* |
| 10:29 | 19 | THE WITNESS:  Okay. |
| 10:29 | 20 | BY MR. PRICE: |
| 10:29 | 21 | Q.   Now, that's a sketch of one of the Prayer Angel |
| 10:29 | 22 | sketches that you did sometime in August of 1999, right? |
| 10:29 | 23 | A.   I -- that, I don't know. |
| 10:29 | 24 | Q.   Well, let's compare that to 393, which is already in |
| 10:29 | 25 | evidence. |

| | | |
|---|---|---|
| 10:29 | 1 | *(Document provided to the witness.)* |
| 10:29 | 2 | *(Document displayed.)* |
| 10:29 | 3 | BY MR. PRICE: |
| 10:29 | 4 | Q.   And I misstated the date.  I'm sorry. |
| 10:29 | 5 | The Prayer Angel sketches you did in August of 2000, |
| 10:30 | 6 | right? |
| 10:30 | 7 | A.   Okay. |
| 10:30 | 8 | Q.   And that's 393.  Do you see that? |
| 10:30 | 9 | A.   Yes. |
| 10:30 | 10 | Q.   And when you said "Okay," it was in August of 2000 -- |
| 10:30 | 11 | you remembered that?  It was the work you did for Paula |
| 10:30 | 12 | Garcia? |
| 10:30 | 13 | A.   Yes. |
| 10:30 | 14 | Q.   And it was before the meeting you had with Mr. Larian? |
| 10:30 | 15 | A.   Yes. |
| 10:30 | 16 | Q.   And, incidentally, I think in your testimony yesterday |
| 10:30 | 17 | you referred to that as Veronica Marlow's project? |
| 10:30 | 18 | A.   I might have, yes. |
| 10:30 | 19 | Q.   You sent the invoice to Paula Garcia, then |
| 10:30 | 20 | Treantafelles, at MGA, correct? |
| 10:30 | 21 | A.   Yes. |
| 10:30 | 22 | Q.   It was her project? |
| 10:30 | 23 | A.   I think what I was referring to as -- I thought of it |
| 10:30 | 24 | as Veronica's project, but she was doing it for Paula. |
| 10:30 | 25 | Q.   And when you wanted to be paid, you sent your invoice |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 86 of 154   Page ID #:294197
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

86

| | | |
|---|---|---|
| 10:30 | 1 | to Paula? |
| 10:30 | 2 | A.   Yes. |
| 10:30 | 3 | Q.   So if we look at 393, and then you look at |
| 10:31 | 4 | Exhibit 1154-0037 -- Okay? -- does it appear to you that |
| 10:31 | 5 | this was a drawing -- some kind of preliminary sketch that |
| 10:31 | 6 | you had done for Prayer Angels? -- that is, that 1154-0037 |
| 10:31 | 7 | was some sort of preliminary sketch for Prayer Angels? |
| 10:31 | 8 | A.   Um, it's possible.  I really don't even remember this |
| 10:31 | 9 | little sketch. |
| 10:31 | 10 | Q.   Well, let's look at -- then, in the red notebook, if |
| 10:31 | 11 | you could look at 1154-0018. |
| 10:32 | 12 | Oh, I have the wrong page here.  Here we go.  Sorry. |
| 10:32 | 13 | It's 1154-0015. |
| 10:32 | 14 | (Document displayed.) |
| 10:32 | 15 | MR. PRICE:  We can take the Prayer Angels down. |
| 10:32 | 16 | (Technician complies.) |
| 10:32 | 17 | BY MR. PRICE: |
| 10:32 | 18 | Q.   And that's your handwriting, right? |
| 10:32 | 19 | A.   Um, I'm assuming it is. |
| 10:32 | 20 | Q.   And it appears to be some financial calculations? |
| 10:32 | 21 | A.   Yes. |
| 10:32 | 22 | Q.   Something to do with your account at -- at the Mattel |
| 10:32 | 23 | credit union? |
| 10:32 | 24 | A.   That, I don't know. |
| 10:32 | 25 | Q.   If you would look at Exhibit 23766. |

| | | |
|---|---|---|
| 10:33 | 1 | *(Document provided to the witness.)* |
| 10:33 | 2 | BY MR. PRICE: |
| 10:33 | 3 | Q.   And does 23766 appear to be account statements that you |
| 10:33 | 4 | received in -- period of July -- I'm sorry -- does 23766 |
| 10:33 | 5 | appear to be bank statements that you received in July of |
| 10:34 | 6 | 2000? -- sometime between July and -- July 31st? |
| 10:34 | 7 | A.   Yes. |
| 10:34 | 8 | Q.   And -- |
| 10:34 | 9 |         MR. PRICE:  Your Honor, move 23766 into evidence. |
| 10:34 | 10 |         THE COURT:  Received. |
| 10:34 | 11 |         *(Exhibit No. 23766 received in evidence.)* |
| 10:34 | 12 |          *(Document displayed.)* |
| 10:34 | 13 |         MR. PRICE:  So if we can see the first page where |
| 10:34 | 14 | it says, "statement period." |
| 10:34 | 15 |          *(Technician complies.)* |
| 10:34 | 16 |         MR. PRICE:  There we go. |
| 10:34 | 17 | BY MR. PRICE: |
| 10:34 | 18 | Q.   And you see it says, "Statement period:  July 1, 2000 |
| 10:34 | 19 | to July 31, 2000"? |
| 10:34 | 20 | A.   Yes. |
| 10:34 | 21 | Q.   So actually, I guess this is something you would have |
| 10:34 | 22 | received in August 2000, after July 31st? |
| 10:34 | 23 | A.   Um, yes. |
| 10:34 | 24 | Q.   If you'd look at the second page, and specifically |
| 10:34 | 25 | under the activity on July 5th, 2000. |

| | | |
|---|---|---|
| 10:35 | 1 | A.   Okay. |
| 10:35 | 2 | Q.   See, there's a Draft No. 1300.  It's $120.61? |
| 10:35 | 3 | A.   Yes. |
| 10:35 | 4 | Q.   And you see there's a Draft No. 1302, which is $463.31? |
| 10:35 | 5 | A.   Yes. |
| 10:35 | 6 | MS. KELLER:  I would object that this has all been |
| 10:35 | 7 | asked and answered last week.  All of it. |
| 10:35 | 8 | THE COURT:  Overruled. |
| 10:35 | 9 | BY MR. PRICE: |
| 10:35 | 10 | Q.   This is not the same statement we looked at last week, |
| 10:35 | 11 | right? |
| 10:35 | 12 | A.   I don't remember.  I don't remember. |
| 10:35 | 13 | Q.   You remember the statement last week was a statement |
| 10:35 | 14 | that was connected to your black notebook? |
| 10:35 | 15 | A.   I don't know.  You've shown me thousands of things in |
| 10:35 | 16 | the past few days.  I mean, I can't possibly remember every |
| 10:35 | 17 | last thing you've shown me. |
| 10:35 | 18 | Q.   Okay.  Do you recall, generally, that there were |
| 10:35 | 19 | calculations in 1155, the black notebook, that were from a |
| 10:35 | 20 | 1999 bank statement? |
| 10:36 | 21 | A.   Yes. |
| 10:36 | 22 | Q.   Okay.  And now we're in the red notebook, right? |
| 10:36 | 23 | A.   Okay. |
| 10:36 | 24 | Q.   And that's where there's some Rainy Day Rascals |
| 10:36 | 25 | sketches -- not finished work product, correct? |

| | | |
|---|---|---|
| 10:36 | 1 | A.    Yes. |
| 10:36 | 2 | Q.    And what we have here are different bank statements |
| 10:36 | 3 | which are from 2000, right? |
| 10:36 | 4 | A.    Yes. |
| 10:36 | 5 | Q.    And if we'd look at -- then the "seven-five" entry, and |
| 10:36 | 6 | compare it to page 15 -- 1154-0015 -- and you see that the |
| 10:36 | 7 | Draft No. $121.61 *(sic)*, that that similar number is |
| 10:36 | 8 | reflected on your calculations in this notebook, correct? |
| 10:36 | 9 | A.    Yes. |
| 10:36 | 10 | Q.    And that $463.31 is also connected to the numbers in |
| 10:37 | 11 | your notebook, correct? |
| 10:37 | 12 | A.    Yes. |
| 10:37 | 13 | Q.    And you see where it says -- actually, "deposit," it's |
| 10:37 | 14 | right below that -- Deposit "900" -- you see that? |
| 10:37 | 15 | A.    Yes. |
| 10:37 | 16 | Q.    And if you'd look at 1154-0015 in your notebook, on the |
| 10:37 | 17 | second column, there's a plus 900? |
| 10:37 | 18 | A.    Yes. |
| 10:37 | 19 | Q.    So you will agree that these calculations that are in |
| 10:37 | 20 | your red notebook pertain to your banking calculations after |
| 10:37 | 21 | July 31st of 2000? |
| 10:37 | 22 | A.    Yes. |
| 10:38 | 23 | Q.    During the examination, you were asked about your |
| 10:38 | 24 | agreements with Mattel -- your agreements both in '95 -- I'm |
| 10:38 | 25 | sorry -- your agreements -- yeah, in November of '95 and the |

CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

90

| | | |
|---|---|---|
| 10:38 | 1 | agreement you signed in January of '99. |
| 10:38 | 2 | You recall that? |
| 10:38 | 3 | A.   Yes. |
| 10:39 | 4 | Q.   Now, if you'd look at 23. |
| 10:39 | 5 | *(Document provided to the witness.)* |
| 10:39 | 6 | BY MR. PRICE: |
| 10:39 | 7 | Q.   And this is the agreement dated November 6, '95? |
| 10:40 | 8 | A.   Okay. |
| 10:40 | 9 | Q.   Now, you remember you were asked about Exhibit 9924, or |
| 10:40 | 10 | Exhibit 25, which was the agreement that you signed on |
| 10:40 | 11 | January 4th, '99.  Remember that? |
| 10:40 | 12 | A.   Yes. |
| 10:40 | 13 | Q.   And you said -- I guess, the 9924 was one page, but |
| 10:40 | 14 | Exhibit 23 is two pages, right? |
| 10:40 | 15 | A.   Yes. |
| 10:40 | 16 | Q.   So when you worked for Mattel from -- or when you |
| 10:40 | 17 | started at Mattel full time in November 1995, you were given |
| 10:40 | 18 | a two-page document that describes or sets forth the |
| 10:40 | 19 | Employee Confidential Information and Inventions Agreement, |
| 10:40 | 20 | right? |
| 10:40 | 21 | A.   Yes. |
| 10:40 | 22 | Q.   You knew that this document created legal obligations, |
| 10:40 | 23 | right? |
| 10:41 | 24 | A.   Yes. |
| 10:41 | 25 | Q.   Did you think that you wouldn't have to comply with |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 91 of 154   Page ID #:294202
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

91

| | | |
|---|---|---|
| 10:41 | 1 | those obligations if you didn't read it? |
| 10:41 | 2 | A.   I don't remember what I thought. |
| 10:41 | 3 | Q.   Well, you knew that Mattel wouldn't hire you full time |
| 10:41 | 4 | unless you signed it, correct? |
| 10:41 | 5 | A.   Yes. |
| 10:41 | 6 | Q.   So you knew it was a condition of working at Mattel, |
| 10:41 | 7 | right? |
| 10:41 | 8 | A.   Yes. |
| 10:41 | 9 | Q.   You knew it required you to do some things, right? |
| 10:41 | 10 | A.   Yes. |
| 10:41 | 11 | Q.   So when you worked -- started working at Mattel in |
| 10:41 | 12 | November 1995, you knew that you had signed a document that |
| 10:41 | 13 | put some legal obligations on you that required you to do |
| 10:41 | 14 | things or not do things, right? |
| 10:41 | 15 | A.   Yes. |
| 10:41 | 16 | Q.   And you must have had some interest in what that was; |
| 10:42 | 17 | that is, what you were being required to do and not do in |
| 10:42 | 18 | order to be employed at Mattel? |
| 10:42 | 19 | A.   Um, I don't remember how I felt about that one way or |
| 10:42 | 20 | another. |
| 10:42 | 21 | Q.   Well, you certainly didn't think that if you turned a |
| 10:42 | 22 | blind eye to it and didn't read it, that that would relieve |
| 10:42 | 23 | you of the obligations that are in this document? |
| 10:42 | 24 |      You didn't think that, did you? |
| 10:42 | 25 | A.   I don't think so, no. |

| 10:42 | 1 | Q.   So you knew that you were agreeing to the terms of the |
| 10:42 | 2 | Employee Confidential Information and Inventions Agreement, |
| 10:42 | 3 | right? |
| 10:42 | 4 | A.   Yes. |
| 10:42 | 5 | Q.   And if you look at the top, it says, "Inventions |
| 10:42 | 6 | Agreement right in the -- in the title, right? |
| 10:42 | 7 | A.   Yes. |
| 10:42 | 8 | Q.   And so, if we look at the language -- and you were |
| 10:42 | 9 | asked about the language in 2(a) --  and, by the way, when |
| 10:43 | 10 | you looked at this, it's true, I guess, that you had the |
| 10:43 | 11 | document in front of you, right? |
| 10:43 | 12 | A.   Yes. |
| 10:43 | 13 | Q.   And it wasn't several feet from you, put up on a |
| 10:43 | 14 | projector, right? |
| 10:43 | 15 | A.   That's right. |
| 10:43 | 16 | Q.   And if you look at 2(a), it says, "I agree to |
| 10:43 | 17 | communicate to the company as promptly and fully as |
| 10:43 | 18 | practicable all inventions as defined below, conceived or |
| 10:43 | 19 | reduced to practice by me," et cetera. |
| 10:43 | 20 |       Do you see that? |
| 10:43 | 21 | A.   Yes. |
| 10:43 | 22 | Q.   And you were asked about did you know what "reduced to |
| 10:43 | 23 | practice" meant, right? |
| 10:43 | 24 | A.   Yes. |
| 10:43 | 25 | Q.   When we talked earlier, you understood what "conceived" |

| | | |
|---|---|---|
| 10:43 | 1 | meant? |
| 10:43 | 2 | A.    Yes. |
| 10:43 | 3 | Q.    So reading this, you didn't need a lawyer to tell you |
| 10:43 | 4 | what "conceived" means, right? |
| 10:43 | 5 | A.    No. |
| 10:44 | 6 | Q.    Double negative. |
| 10:44 | 7 | Did you need a lawyer to tell you what "conceived" |
| 10:44 | 8 | meant? |
| 10:44 | 9 | A.    No. |
| 10:44 | 10 | Q.    By the way, at the time -- remember, there was a period |
| 10:44 | 11 | where -- with MGA, where you became a freelancer?  Is that |
| 10:44 | 12 | the phrase? |
| 10:44 | 13 | A.    Yes. |
| 10:44 | 14 | Q.    And you were a freelancer in that time between April |
| 10:44 | 15 | '98 and January '99, right? |
| 10:44 | 16 | A.    Uh, yes. |
| 10:44 | 17 | Q.    Now, if you're an employee, you get certain things that |
| 10:44 | 18 | you don't get as a freelancer, right? |
| 10:44 | 19 | A.    Yes. |
| 10:44 | 20 | Q.    For example, between the April '98 and January '99 |
| 10:44 | 21 | timeframe, you didn't have a set income? |
| 10:44 | 22 | A.    No. |
| 10:44 | 23 | Q.    Did you have a set income? |
| 10:44 | 24 | A.    No. |
| 10:44 | 25 | Q.    Sorry.  And you didn't have -- you didn't have health |

| | | |
|---|---|---|
| 10:45 | 1 | benefits? |
| 10:45 | 2 | A.    No. |
| 10:45 | 3 | Q.    So during your employment at Mattel, did you have |
| 10:45 | 4 | health benefits? |
| 10:45 | 5 | A.    Yes. |
| 10:45 | 6 | Q.    During your employment at Mattel, did you have dental |
| 10:45 | 7 | insurance? |
| 10:45 | 8 | A.    Yes. |
| 10:45 | 9 | Q.    During your employment at Mattel, did you have taxpayer |
| 10:45 | 10 | spending accounts? |
| 10:45 | 11 | A.    I don't know. |
| 10:45 | 12 | Q.    There was -- let me ask you this:  During your |
| 10:45 | 13 | employment at Mattel, did your health benefits cover you |
| 10:45 | 14 | after 5:00 p.m.? |
| 10:45 | 15 | A.    Yes. |
| 10:45 | 16 | Q.    During your employment at Mattel, did your dental |
| 10:45 | 17 | insurance and eye insurance cover you after 5:00 p.m.? |
| 10:45 | 18 | MS. KELLER:  Objection.  Argumentative. |
| 10:45 | 19 | THE COURT:  Overruled. |
| 10:45 | 20 | THE WITNESS:  Yes. |
| 10:45 | 21 | BY MR. PRICE: |
| 10:45 | 22 | Q.    So the phrase "during my employment," isn't restricted |
| 10:45 | 23 | from 8:30 to 5:00 or 8:30 to 1:00, is it? |
| 10:46 | 24 | A.    No. |
| 10:46 | 25 | Q.    And when you hear the phrase "during my employment," |

CV 04-9049 DOC – 2/3/2011 – Day 12, Volume 1 of 3

95

| | | |
|---|---|---|
| 10:46 | 1 | you're not thinking that means just a timeframe from 8:00 to |
| 10:46 | 2 | 5:00 or 8:00 to 1:00? |
| 10:46 | 3 | A.   No. |
| 10:46 | 4 | Q.   So if we go back to this –– to the agreement, where it |
| 10:46 | 5 | says, "conceived or reduced to practice by me," paren, |
| 10:46 | 6 | "alone or jointly by others at any time during my employment |
| 10:46 | 7 | by the company" –– you see that? |
| 10:46 | 8 | A.   Yes. |
| 10:46 | 9 | Q.   Now, you understand that meant from the time you were |
| 10:46 | 10 | employed, November '95, until the time you resigned in April |
| 10:46 | 11 | of 1998, right? |
| 10:46 | 12 | A.   Yes. |
| 10:46 | 13 | Q.   I mean, to you, it's no different than saying "during |
| 10:46 | 14 | the period of my employment," right? |
| 10:46 | 15 | A.   Um, well, you could say that, yes. |
| 10:47 | 16 | Q.   I'm sorry.  Reminds me of Cousin Vinny:  "I did say |
| 10:47 | 17 | that.  Would you say that?" |
| 10:47 | 18 | A.   I'm sorry.  What? |
| 10:47 | 19 | THE COURT:  Well, he referred to *My Cousin Vinny,* |
| 10:47 | 20 | and he's wearing a tuxedo right now.  I'm just joking, |
| 10:47 | 21 | Counsel. |
| 10:47 | 22 | Strike the question.  Rephrase the question. |
| 10:47 | 23 | BY MR. PRICE: |
| 10:47 | 24 | Q.   You said, I could say that, but I'm –– |
| 10:47 | 25 | THE COURT:  Never mind.  Just reask the question. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:47 | 1 | BY MR. PRICE: |
| 10:47 | 2 | Q.   In your mind, there's no difference between, "during my |
| 10:47 | 3 | employment" and "during the period of my employment," |
| 10:47 | 4 | correct? |
| 10:47 | 5 | A.   Uh, yes. |
| 10:47 | 6 | Q.   Now, it then says, "I hereby assign to the company |
| 10:47 | 7 | and/or its nominees, all my right, title, and interest in |
| 10:47 | 8 | such inventions." |
| 10:47 | 9 | Do you see that? |
| 10:47 | 10 | A.   Yes. |
| 10:47 | 11 | Q.   You don't need a lawyer to understand that language, do |
| 10:47 | 12 | you? |
| 10:47 | 13 | A.   No. |
| 10:48 | 14 | Q.   And then, if you look at (b), "As used in this |
| 10:48 | 15 | agreement, the term 'inventions' includes, but is not |
| 10:48 | 16 | limited to, all discovery, improvements, processes, |
| 10:48 | 17 | developments, designs, know-how, data" -- you see, it goes |
| 10:48 | 18 | on and on? |
| 10:48 | 19 | A.   Yes. |
| 10:48 | 20 | Q.   Now, you didn't need a lawyer to know that -- what |
| 10:48 | 21 | designs were, right? |
| 10:48 | 22 | A.   No. |
| 10:48 | 23 | Q.   I mean, designs was your job?  That's what you did: |
| 10:48 | 24 | You designed? |
| 10:48 | 25 | A.   Yes. |

| 10:48 | 1 | Q.   So, if you'd read this agreement, you would have known |
|---|---|---|
| 10:48 | 2 | what it said, when it said that -- it's during the time of |
| 10:48 | 3 | your employment by Mattel and that you assigned designs that |
| 10:48 | 4 | you did during your employment to Mattel, right? |
| 10:48 | 5 | A.   I don't know if I would have understood that or not. |
| 10:48 | 6 | Q.   Well, sitting here today, just -- you agree that you |
| 10:48 | 7 | don't need a lawyer to understand those words in English, |
| 10:49 | 8 | right? |
| 10:49 | 9 | MS. KELLER:  Objection.  Vague as to which words. |
| 10:49 | 10 | THE COURT:  Overruled. |
| 10:49 | 11 | THE WITNESS:  Not all the words, no. |
| 10:49 | 12 | BY MR. PRICE: |
| 10:49 | 13 | Q.   The ones we've just gone over, which is "inventions, |
| 10:49 | 14 | designs" and that you assign your right to those inventions |
| 10:49 | 15 | to Mattel? |
| 10:49 | 16 | A.   Yes. |
| 10:49 | 17 | Q.   That's something you'd understand if you just read it |
| 10:49 | 18 | as a layperson -- as anyone, right? |
| 10:49 | 19 | A.   Um, possibly, yes. |
| 10:49 | 20 | Q.   Well, and when you signed this in November '95, again |
| 10:49 | 21 | you knew that this was creating obligations, correct? |
| 10:49 | 22 | A.   Yes. |
| 10:49 | 23 | Q.   And do you recall a few days ago you said that you |
| 10:49 | 24 | could see how it is fair for Mattel to say that, if you come |
| 10:49 | 25 | up with a design that relates to our business, it belongs to |

CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

98

| 10:49 | 1 | us -- if you do it after 5:00 p.m. or on the weekends -- |
| 10:50 | 2 | because we're hiring you for that, and you can't turn it |
| 10:50 | 3 | off. |
| 10:50 | 4 | You said that was fair? |
| 10:50 | 5 | MS. KELLER:  Objection.  Asked and answered. |
| 10:50 | 6 | THE COURT:  Overruled. |
| 10:50 | 7 | THE WITNESS:  Yes. |
| 10:50 | 8 | BY MR. PRICE: |
| 10:50 | 9 | Q.   And you certainly now understand that that's what this |
| 10:50 | 10 | agreement, Exhibit 23-0001, provides? |
| 10:50 | 11 | A.   Uh, yes. |
| 10:50 | 12 | Q.   So you understand some of the key language here, right? |
| 10:50 | 13 | A.   Yes. |
| 10:50 | 14 | Q.   You know that you were legally obligating yourself -- |
| 10:50 | 15 | you thought you were legally obligating yourself to do what |
| 10:50 | 16 | this agreement said, right? |
| 10:50 | 17 | MS. KELLER:  Objection.  Compound. |
| 10:50 | 18 | THE COURT:  Overruled. |
| 10:50 | 19 | THE WITNESS:  Uh, yes. |
| 10:50 | 20 | BY MR. PRICE: |
| 10:50 | 21 | Q.   And you thought that, not only were you legally |
| 10:50 | 22 | obligated, but it was fair for Mattel to say, because you do |
| 10:50 | 23 | designs and you can't turn it off, what you design relating |
| 10:50 | 24 | to our business belongs to us, even if you do it after |
| 10:51 | 25 | 5:00 p.m. or on the weekends? |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 99 of 154   Page ID #:294210
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

99

| 10:51 | 1 | MS. KELLER:  Objection.  Misstates the document. |
| 10:51 | 2 | THE COURT:  Well, the problem is "fair." |
| 10:51 | 3 | MR. PRICE:  It's what he said before. |
| 10:51 | 4 | THE COURT:  Well, I know he did. |
| 10:51 | 5 | (To the jury:) It's certainly not the standard |
| 10:51 | 6 | you'll be judging this by -- well, I'll instruct you on the |
| 10:51 | 7 | law.  I'll let counsel have some latitude on both sides. |
| 10:51 | 8 | So you can ask, Counsel. |
| 10:51 | 9 | It goes to his state of mind, but I'll instruct |
| 10:51 | 10 | you what the standards are that you're to judge the case by |
| 10:51 | 11 | in the jury instructions when you get the case for |
| 10:51 | 12 | deliberation. |
| 10:51 | 13 | So, Counsel, you can ask the question. |
| 10:51 | 14 | BY MR. PRICE: |
| 10:51 | 15 | Q.   And so my question is -- read this language.  There's |
| 10:51 | 16 | some plain language you understand, right? |
| 10:51 | 17 | A.   Yes. |
| 10:51 | 18 | Q.   You knew you were undertaking legal obligations, right? |
| 10:51 | 19 | A.   Yes. |
| 10:51 | 20 | Q.   And, in your own mind, given the position that you were |
| 10:51 | 21 | being hired for, you think it would be fair for Mattel to |
| 10:52 | 22 | say, "If you have a design that relates to our business, it |
| 10:52 | 23 | belongs to us even if you do it after 5:00 p.m. or on the |
| 10:52 | 24 | weekends"? |
| 10:52 | 25 | MS. KELLER:  Objection.  Irrelevant. |

CV 04-9049 DOC – 2/3/2011 – Day 12, Volume 1 of 3

100

| 10:52 | 1 | THE COURT:  Overruled. |
| 10:52 | 2 | THE WITNESS:  Are you talking about my |
| 10:52 | 3 | understanding now?  Or then? |
| 10:52 | 4 | BY MR. PRICE: |
| 10:52 | 5 | Q.   Well, let's just say you now believe it's fair that -- |
| 10:52 | 6 | for Mattel to say, "If you come up with a design that |
| 10:52 | 7 | relates to our business, it belongs to us, even if you do it |
| 10:52 | 8 | after 5:00 p.m. or on the weekends, because we're hiring you |
| 10:52 | 9 | for you to do that and you can't turn it off"? |
| 10:52 | 10 | A.   Uh, well, all I remember is what I thought back then, |
| 10:52 | 11 | which is, I thought that my ideas and designs that I came up |
| 10:52 | 12 | with after hours or on my own time were mine. |
| 10:52 | 13 | MR. PRICE:  Your Honor, if I could read from |
| 10:52 | 14 | January 27.  It's Volume IV, page 14, lines 12 through 18. |
| 10:53 | 15 | MS. KELLER:  January 27th.  What year, Counsel? |
| 10:53 | 16 | MR. PRICE:  It's this year.  It's the trial here. |
| 10:53 | 17 | Page 14, lines 11 through 18. |
| 10:53 | 18 | MS. KELLER:  And what page? |
| 10:53 | 19 | MR. PRICE:  January 27th. |
| 10:53 | 20 | THE COURT:  Not until I have it, Counsel.  And I |
| 10:53 | 21 | don't have it. |
| 10:53 | 22 | MR. PRICE:  It's Volume IV, January 27th, this |
| 10:53 | 23 | trial, page 14, lines 12 to 18. |
| 10:53 | 24 | THE COURT:  Thank you. |
| 10:53 | 25 | THE WITNESS:  Okay.  I see it. |

| | | |
|---|---|---|
| 10:53 | 1 | THE COURT:  Just a moment, Counsel. |
| 10:53 | 2 | Now, ladies and gentlemen, I want you to |
| 10:53 | 3 | understand that, although I'm giving some latitude to all |
| 10:53 | 4 | counsel, what we're really dealing with is the state of mind |
| 10:54 | 5 | back when these documents are signed. |
| 10:54 | 6 | So now, when we transfer it to today's date, and |
| 10:54 | 7 | an opinion's being cast, there's a lot more information. |
| 10:54 | 8 | But what we're relating back to is what was the state of |
| 10:54 | 9 | mind in 1995.  What was the state of mind in 1998. |
| 10:54 | 10 | Now, Counsel, can you ask the question. |
| 10:54 | 11 | MS. KELLER:  Your Honor, may I object that this is |
| 10:54 | 12 | not inconsistent as to goes to now. |
| 10:54 | 13 | THE COURT:  No. |
| 10:54 | 14 | Overruled, Counsel. |
| 10:54 | 15 | MR. PRICE:  May I read? |
| 10:54 | 16 | THE COURT:  No.  You can reask the question, |
| 10:54 | 17 | though.  I think it's confusing.  And I don't think the |
| 10:54 | 18 | witness is gonna recall it. |
| 10:54 | 19 | So let them reask the question of you, Mr. Bryant. |
| 10:54 | 20 | BY MR. PRICE: |
| 10:54 | 21 | Q.   You see that -- how it's fair for Mattel to say, "Look, |
| 10:54 | 22 | if you come up with a design that relates to our business, |
| 10:54 | 23 | it belongs to us, even if you do it after 5:00 p.m. or on |
| 10:54 | 24 | the weekends because we're hiring you for that and you can't |
| 10:54 | 25 | turn it off"? |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 102 of 154   Page ID #:294213
CV 04-9049 DOC – 2/3/2011 – Day 12, Volume 1 of 3

102

| | | |
|---|---|---|
| 10:54 | 1 | A.    Yes. |
| 10:54 | 2 | Q.    And if we look at the agreement -- |
| 10:54 | 3 | *(Document displayed.)* |
| 10:55 | 4 | THE COURT:  All right. |
| 10:55 | 5 | Continue, Counsel. |
| 10:55 | 6 | BY MR. PRICE: |
| 10:55 | 7 | Q.    If we look at the agreement in November 1995, |
| 10:55 | 8 | Exhibit 23, look at Paragraph (c), it says, "Any provision |
| 10:55 | 9 | in this agreement requiring me to assign my rights in the |
| 10:55 | 10 | invention does not apply to the invention which qualifies |
| 10:55 | 11 | under the provisions of Section 2870 of the California Labor |
| 10:55 | 12 | Code." |
| 10:55 | 13 | Now, you're probably not familiar with Section 2870 of |
| 10:55 | 14 | the Labor Code, right? |
| 10:55 | 15 | A.    No. |
| 10:55 | 16 | Q.    But this agreement doesn't require you to be familiar |
| 10:55 | 17 | with it, because it then tells you what it says, right? |
| 10:56 | 18 | A.    I'm not sure that it does. |
| 10:56 | 19 | Q.    Well, see the next section, that section provides that |
| 10:56 | 20 | "the requirement to assign," quote, "shall not apply to an |
| 10:56 | 21 | invention that the employee developed entirely on his or her |
| 10:56 | 22 | own time without using the employer's equipment, supplies, |
| 10:56 | 23 | facilities, or trade secret information" -- so do you |
| 10:56 | 24 | understand that? |
| 10:56 | 25 | A.    Yes. |

CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

103

| | | |
|---|---|---|
| 10:56 | 1 | Q.   And you understand that's telling you what that labor |
| 10:56 | 2 | code says, right? |
| 10:56 | 3 | A.   Yes. |
| 10:56 | 4 | Q.   "Except for those inventions that either, one, relate |
| 10:56 | 5 | at the time of conception or reduction to practice of the |
| 10:56 | 6 | invention to the employer's business" -- you see that? |
| 10:56 | 7 | A.   Yes. |
| 10:56 | 8 | Q.   Understand that language, don't you? |
| 10:56 | 9 | A.   Yes. |
| 10:56 | 10 | Q.   You wouldn't need an attorney to interpret that |
| 10:56 | 11 | language, right? |
| 10:56 | 12 | A.   No. |
| 10:56 | 13 | Q.   Double negative.  Would you need an attorney to |
| 10:56 | 14 | interpret that language? |
| 10:57 | 15 | A.   No. |
| 10:57 | 16 | Q.   And you knew that Mattel was in the toy business, |
| 10:57 | 17 | right? |
| 10:57 | 18 | A.   Yes. |
| 10:57 | 19 | Q.   And it didn't just do Barbies, right? |
| 10:57 | 20 | A.   That's right. |
| 10:57 | 21 | Q.   You were there in the Mattel design center, correct? |
| 10:57 | 22 | A.   Yes. |
| 10:57 | 23 | Q.   And you were free to walk around and go wherever you |
| 10:57 | 24 | wanted to, right? |
| 10:57 | 25 | A.   Yes. |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 104 of 154   Page ID #:294215
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

104

| | | |
|---|---|---|
| 10:57 | 1 | Q.   And you saw Hot Wheels, right? |
| 10:57 | 2 | A.   Yes. |
| 10:57 | 3 | Q.   You saw dolls that were not based on the Barbie sculpt? |
| 10:57 | 4 | A.   Yes. |
| 10:57 | 5 | Q.   Can you tell us some dolls that you were familiar with |
| 10:57 | 6 | that weren't based on the Barbie sculpt? |
| 10:57 | 7 | A.   Um, well, offhand, I can just think of some of the |
| 10:57 | 8 | other Barbie family characters:  Skipper doll.  Let's see, |
| 10:58 | 9 | the Kelly doll.  Um -- I don't know.  There were a lot. |
| 10:58 | 10 | Q.   Weren't there characters that were based and had |
| 10:58 | 11 | different sculpts -- let me rephrase that. |
| 10:58 | 12 | Weren't there dolls that were based on movie |
| 10:58 | 13 | characters? |
| 10:58 | 14 | A.   I believe so, yes. |
| 10:58 | 15 | Q.   And you remember you said that MGA had some movie |
| 10:58 | 16 | Bratz? |
| 10:58 | 17 | A.   Uh, yes. |
| 10:58 | 18 | Q.   And that those weren't based on the same sculpt as the |
| 10:58 | 19 | Bratz?  It was a different sculpt? |
| 10:58 | 20 | A.   I don't remember what I said. |
| 10:58 | 21 | Q.   Well, is that accurate? |
| 10:58 | 22 | A.   I don't know.  I don't remember. |
| 10:58 | 23 | Q.   Okay.  It's correct, is it not, that -- double |
| 10:58 | 24 | negative. |
| 10:58 | 25 | Were -- you know the Clueless dolls? |

CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

105

| | | |
|---|---|---|
| 10:58 | 1 | A.    Yes. |
| 10:58 | 2 | Q.    Based on the movie *Clueless*? |
| 10:58 | 3 | A.    Yes. |
| 10:58 | 4 | Q.    Those were based on a different sculpt than Barbie, |
| 10:59 | 5 | right? |
| 10:59 | 6 | A.    I think the faces -- face sculpts were different, yes. |
| 10:59 | 7 | Q.    And the idea is to -- is to make those dolls look like |
| 10:59 | 8 | the characters in the movie? |
| 10:59 | 9 | A.    Yes. |
| 10:59 | 10 | Q.    Do you recall being asked whether you worked on |
| 10:59 | 11 | anything other than -- than a Barbie? |
| 10:59 | 12 | A.    Yes. |
| 10:59 | 13 | Q.    I believe you said you didn't work on anything except |
| 10:59 | 14 | Barbie? |
| 10:59 | 15 | A.    I don't remember what I said. |
| 10:59 | 16 | Q.    Start with -- uh, you worked on the Clueless dolls, |
| 10:59 | 17 | right? |
| 10:59 | 18 | A.    Yes. |
| 10:59 | 19 | Q.    And as you said, the face on that wasn't a Barbie face |
| 11:00 | 20 | because it's supposed to look like one of the characters in |
| 11:00 | 21 | *Clueless*, right? |
| 11:00 | 22 | A.    Yes. |
| 11:00 | 23 | Q.    If I could show you Exhibit 23- -- I think it's -852. |
| 11:00 | 24 | THE COURT:  23854? |
| 11:00 | 25 | MR. PRICE:  Your Honor, it's 23852. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:00 | 1 | THE COURT: -852? |
| 11:00 | 2 | MR. PRICE: Yes. |
| 11:00 | 3 | THE COURT: Okay. |
| 11:00 | 4 | *(Exhibit provided to the witness.)* |
| 11:00 | 5 | BY MR. PRICE: |
| 11:00 | 6 | Q.   And 23852 is one of the Clueless dolls, the kind that |
| 11:00 | 7 | you worked on? |
| 11:00 | 8 | A.   Yes. |
| 11:00 | 9 | MR. PRICE: Your Honor, move Exhibit 23852 into |
| 11:00 | 10 | evidence. |
| 11:00 | 11 | THE COURT: Received. |
| 11:00 | 12 | *(Exhibit No. 23852 received in evidence.)* |
| 11:01 | 13 | MR. PRICE: Could you just show the jury that. |
| 11:01 | 14 | THE WITNESS: (Witness complies.) |
| 11:01 | 15 | MR. PRICE: Maybe we can put it up, Ken. |
| 11:01 | 16 | *(Document displayed.)* |
| 11:01 | 17 | BY MR. PRICE: |
| 11:01 | 18 | Q.   So I think you were telling us that the facial sculpt |
| 11:01 | 19 | on that is different than a Barbie facial sculpt, right? |
| 11:01 | 20 | A.   Yes. |
| 11:01 | 21 | Q.   And you actually put it -- put your experience with |
| 11:01 | 22 | Clueless on -- |
| 11:01 | 23 | You remember the letter that you saw yesterday, uh, |
| 11:01 | 24 | sort of a letter asking, uh -- sent to the employment |
| 11:01 | 25 | coordinator of Leggett & Platt? |

| | | |
|---|---|---|
| 11:02 | 1 | A.   I'm not sure which document you're talking about. |
| 11:02 | 2 | Q.   Okay.  Let me put before you 10480. |
| 11:02 | 3 | *(Document provided to the witness.)* |
| 11:02 | 4 | *(Document displayed.)* |
| 11:02 | 5 | BY MR. PRICE: |
| 11:02 | 6 | Q.   So, you remember that you looked at this yesterday? |
| 11:02 | 7 | A.   Yes. |
| 11:02 | 8 | Q.   And if we look in the second paragraph, it lists some |
| 11:02 | 9 | of the things you worked on.  And on the fifth line down, it |
| 11:03 | 10 | speaks about you working on the Clueless group? |
| 11:03 | 11 | A.   Yes. |
| 11:03 | 12 | Q.   And if you go a couple of lines down after that, it |
| 11:03 | 13 | says, "My experience at Mattel include all aspects of 2D and |
| 11:03 | 14 | 3D design" -- do you see that? |
| 11:03 | 15 | A.   Yes. |
| 11:03 | 16 | Q.   -- "and illustration, and gave me a very solid |
| 11:03 | 17 | experience in working in a highly creative field with tight |
| 11:03 | 18 | deadlines." |
| 11:03 | 19 |      Is that true:  That at Mattel you had some tight |
| 11:03 | 20 | deadlines? |
| 11:03 | 21 | A.   Yes. |
| 11:03 | 22 | Q.   And you were basically working on your own direction |
| 11:03 | 23 | after getting general directives from design management. |
| 11:03 | 24 |      You see that? |
| 11:03 | 25 | A.   Yes. |

CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

108

| | | |
|---|---|---|
| 11:03 | 1 | Q.   So if we go back to, then, your agreement, in November |
| 11:03 | 2 | '95, which is 23-001 -- 00001 -- at the time you signed |
| 11:03 | 3 | this, you understood that Mattel's business wasn't just |
| 11:04 | 4 | Barbie, right? |
| 11:04 | 5 | A.   Yes. |
| 11:04 | 6 | Q.   You understood that Mattel's business was toys? |
| 11:04 | 7 | A.   Yes. |
| 11:04 | 8 | Q.   And then, if you'd look at 2(b), I'm gonna ask you |
| 11:04 | 9 | whether you understand -- I'm sorry.  It's 3(b) -- whether |
| 11:04 | 10 | you'd need a lawyer to understand this. |
| 11:04 | 11 | (Document displayed.) |
| 11:04 | 12 | BY MR. PRICE: |
| 11:04 | 13 | Q.   And, actually, I'm sorry.  3(a), where it says, "My |
| 11:04 | 14 | employment with the company requires my undivided attention |
| 11:04 | 15 | and effort" -- do you see that? |
| 11:04 | 16 | A.   Yes. |
| 11:04 | 17 | Q.   And now let's talk about that. |
| 11:05 | 18 | In early October of 2000, you received an e-mail from |
| 11:05 | 19 | Mr. Larian saying you should basically put 200 percent of |
| 11:05 | 20 | your effort into making Bratz happen. |
| 11:05 | 21 | You recall that? |
| 11:05 | 22 | A.   Yes. |
| 11:05 | 23 | Q.   And on that day, you were employed by Mattel, correct? |
| 11:05 | 24 | A.   Yes. |
| 11:05 | 25 | Q.   And for the next couple of weeks, you were working on |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:05 | 1 | the Bratz project? |
| 11:05 | 2 | A.   Uh, yes. |
| 11:05 | 3 | Q.   So during that timeframe, you weren't devoting your |
| 11:05 | 4 | undivided attention and efforts to Mattel, correct? |
| 11:05 | 5 | A.   Uh, no. |
| 11:05 | 6 | Q.   Is that correct? |
| 11:05 | 7 | A.   Yes. |
| 11:05 | 8 | Q.   And that language, is that something you need a lawyer |
| 11:05 | 9 | to ask about, that "during my employment with the |
| 11:06 | 10 | company" -- or "My employment with the company requires my |
| 11:06 | 11 | undivided attention and effort"? |
| 11:06 | 12 | A.   Uh, not necessarily, no. |
| 11:06 | 13 | Q.   And then the next sentence:  "I shall not, without the |
| 11:06 | 14 | company's express written consent, engage in any employment |
| 11:06 | 15 | or business other than for the company, or invest in or |
| 11:06 | 16 | assist, in any manner, any business competitive with the |
| 11:06 | 17 | business or the future business plans of the company." |
| 11:06 | 18 |      You see that? |
| 11:06 | 19 |      MS. KELLER:  Your Honor, I'm gonna object that all |
| 11:06 | 20 | of this is the 1995 agreement, not 19- -- not the later |
| 11:06 | 21 | agreement, the 1999. |
| 11:06 | 22 |      THE COURT:  It's understood, Counsel. |
| 11:06 | 23 |      Overruled. |
| 11:06 | 24 |      MS. KELLER:  This whole line of questioning has |
| 11:06 | 25 | been using the '95 -- |

11:06   1          THE COURT:  I assume counsel is then going to go

11:06   2   over the 1998 agreement.

11:06   3          MR. PRICE:  Very quickly.

11:06   4          THE COURT:  Overruled.

11:06   5          THE WITNESS:  What was your question again?  I'm

11:06   6   sorry.

11:06   7   BY MR. PRICE:

11:06   8   Q.   What I just read, you don't need an attorney to

11:06   9   understand that?

11:06  10   A.   Not necessarily, no.

11:07  11   Q.   Well, in fact, you testified that you did understand

11:07  12   that you weren't supposed to assist, in any manner, a

11:07  13   competitive company, right?

11:07  14   A.   Yes.

11:07  15   Q.   You weren't supposed to assist, in any manner, a

11:07  16   company -- another company that was in the toy industry,

11:07  17   right?

11:07  18   A.   Um, I don't remember exactly what my understanding was.

11:07  19   Q.   Well, if you read this without an attorney, that's what

11:07  20   you understand:  That you're not supposed to assist, in any

11:07  21   manner, a company that is in the toy industry, Mattel's

11:07  22   business?

11:07  23   A.   Yes.

11:07  24   Q.   In your examination yesterday, you said that you had

11:07  25   heard rumors about moonlighting.  Remember that?

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:07 | 1 | A.   Yes. |
| 11:08 | 2 | Q.   And, incidentally, you can see that, if Mattel gives |
| 11:08 | 3 | express written consent, that it's okay to engage in |
| 11:08 | 4 | employment by someone other than Mattel, correct? |
| 11:08 | 5 | MS. KELLER:  Your Honor, I'm gonna object again |
| 11:08 | 6 | that this is a 1995 agreement, and ask that the 1999 |
| 11:08 | 7 | agreement be used. |
| 11:08 | 8 | THE COURT:  Overruled. |
| 11:08 | 9 | And the reason I'm allowing this is because I'll |
| 11:08 | 10 | give counsel latitude for both sides to show the length of |
| 11:08 | 11 | time that Mr. Bryant understood or didn't understand |
| 11:08 | 12 | whatever these obligations are. |
| 11:08 | 13 | And if the 1995 agreement, he has some |
| 11:08 | 14 | understanding and that carries over to 1998 and reflects on |
| 11:08 | 15 | 1998, it's relevant. |
| 11:08 | 16 | Overruled. |
| 11:08 | 17 | THE WITNESS:  I'm sorry. |
| 11:08 | 18 | Can you ask me the question again? |
| 11:08 | 19 | BY MR. PRICE: |
| 11:08 | 20 | Q.   So as someone -- if someone read this without a lawyer, |
| 11:08 | 21 | you agree, they would understand that Mattel can give |
| 11:08 | 22 | consent, express written consent, to allow an employee to |
| 11:08 | 23 | work for another business, correct? |
| 11:09 | 24 | A.   They might, yes. |
| 11:09 | 25 | Q.   And you never sought any such consent, right? |

| | | |
|---|---|---|
| 11:09 | 1 | A.    Uh, no. |
| 11:09 | 2 | Q.    I'm sorry.  Is that right? |
| 11:09 | 3 | A.    That's true. |
| 11:09 | 4 | Q.    While you were at Mattel, did you know of any Mattel |
| 11:09 | 5 | employees who worked for any Mattel competitors while they |
| 11:09 | 6 | were simultaneously employed by Mattel? |
| 11:09 | 7 | A.    Uh, no one specifically, no. |
| 11:09 | 8 | Q.    Did you know of any Mattel employees who worked for |
| 11:09 | 9 | other toy companies while they were employed by Mattel? |
| 11:09 | 10 | A.    Not specifically, no. |
| 11:09 | 11 | Q.    When you say "not specifically," I'm asking you whether |
| 11:09 | 12 | you knew of any employees who worked for other toy companies |
| 11:09 | 13 | while they were employed by Mattel? |
| 11:10 | 14 | A.    Uh, no.  I had just heard a rumor. |
| 11:10 | 15 | Q.    Did you have any information that indicated to you that |
| 11:10 | 16 | Mattel permitted employees to work for other toy companies |
| 11:10 | 17 | while they were employed by Mattel? |
| 11:10 | 18 | A.    I don't remember. |
| 11:10 | 19 | Q.    Let me show you on Volume IV of your deposition.  This |
| 11:10 | 20 | is January 23, 2008, lines 4 through 24.  It's page 833, |
| 11:10 | 21 | January 23rd, 2008, Volume IV, lines 4 through 24. |
| 11:10 | 22 | *(Document provided to the witness.)* |
| 11:11 | 23 | THE WITNESS:  Okay. |
| 11:11 | 24 | BY MR. PRICE: |
| 11:11 | 25 | Q.    Does that reflect -- refresh your recollection that you |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 113 of 154   Page ID #:294224
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

113

| 11:11 | 1 | did not have any information that indicated to you that |
| 11:11 | 2 | Mattel employees -- that Mattel permitted Mattel employees |
| 11:11 | 3 | to work for other toy companies while they were employed by |
| 11:11 | 4 | Mattel? |
| 11:11 | 5 | A.   I didn't at the time, no. |
| 11:11 | 6 | Q.   And, by the way, if you could look at that string of |
| 11:11 | 7 | questions. |
| 11:11 | 8 | A.   Yes. |
| 11:11 | 9 | Q.   At that time you didn't mention any rumors, did you? |
| 11:11 | 10 | MS. KELLER:  Objection.  Assumes he was asked |
| 11:11 | 11 | about rumors. |
| 11:11 | 12 | THE COURT:  Sustained. |
| 11:11 | 13 | BY MR. PRICE: |
| 11:11 | 14 | Q.   Well, I just asked you that -- whether, while you were |
| 11:11 | 15 | at Mattel, did you know of any Mattel employees who worked |
| 11:11 | 16 | for any Mattel competitors while they were simultaneously |
| 11:11 | 17 | employed by Mattel.  Do you recall I just asked you that |
| 11:12 | 18 | question using those words? |
| 11:12 | 19 | A.   Yes. |
| 11:12 | 20 | Q.   And you said, "No, except for rumors," right? |
| 11:12 | 21 | A.   Yes. |
| 11:12 | 22 | Q.   And on January 23, 2008, you just said "No"? |
| 11:12 | 23 | A.   Yes. |
| 11:12 | 24 | Q.   And I asked you, "Or do you -- while you were at |
| 11:12 | 25 | Mattel, did you know of any Mattel employees who worked for |

| | | |
|---|---|---|
| 11:12 | 1 | other toy companies while they were employed by Mattel?" |
| 11:12 | 2 | You remember I asked you that question? |
| 11:12 | 3 | A.   Yes. |
| 11:12 | 4 | Q.   And you said "No, except for rumors"? |
| 11:12 | 5 | A.   Yes. |
| 11:12 | 6 | Q.   And at page 833 in the deposition, you simply said |
| 11:12 | 7 | "No," correct? |
| 11:12 | 8 | A.   Yes. |
| 11:12 | 9 | Q.   And do you recall that you were told that you could |
| 11:12 | 10 | have breaks if you wanted to, because it's a long process |
| 11:12 | 11 | and you can just -- uh, just ask for a break if you're |
| 11:12 | 12 | feeling a little tired. |
| 11:12 | 13 | Do you remember that? |
| 11:12 | 14 | A.   Yes. |
| 11:12 | 15 | THE COURT:  Is this in the deposition? |
| 11:12 | 16 | MR. PRICE:  In the deposition. |
| 11:12 | 17 | THE COURT:  And the year again? |
| 11:12 | 18 | MR. PRICE:  This is January -- |
| 11:12 | 19 | THE COURT:  2004? |
| 11:12 | 20 | MR. PRICE:  No.  This is January 23, 2008. |
| 11:13 | 21 | THE COURT:  2008.  All right.  Thank you. |
| 11:13 | 22 | BY MR. PRICE: |
| 11:13 | 23 | Q.   And there came a time or a few times when you had |
| 11:13 | 24 | breaks, right? |
| 11:13 | 25 | A.   Yes. |

| | | |
|---|---|---|
| 11:13 | 1 | Q.   And there was a time where you -- during those breaks |
| 11:13 | 2 | you would -- I don't want to know the substance -- but |
| 11:13 | 3 | consult with your counsel, right? |
| 11:13 | 4 | A.   Yes. |
| 11:13 | 5 | Q.   And after coming back from one of those breaks, your |
| 11:13 | 6 | attorney said that you wanted to clarify one of your earlier |
| 11:13 | 7 | answers. |
| 11:13 | 8 | MS. KELLER:  Objection.  Vague. |
| 11:13 | 9 | THE COURT:  Sustained. |
| 11:13 | 10 | BY MR. PRICE: |
| 11:13 | 11 | Q.   If you look at page 866.  This is 866, line 15.  And go |
| 11:13 | 12 | on to 867, line 2 -- actually, go to 867, line 14. |
| 11:14 | 13 | THE COURT:  No.  Just a moment, Counsel.  Slow |
| 11:14 | 14 | down. |
| 11:14 | 15 | What page? |
| 11:14 | 16 | MR. PRICE:  It's 866, line 15. |
| 11:14 | 17 | THE COURT:  Okay.  Thank you. |
| 11:14 | 18 | MR. PRICE:  To line 867, line 18. |
| 11:14 | 19 | THE WITNESS:  Okay. |
| 11:14 | 20 | BY MR. PRICE: |
| 11:14 | 21 | Q.   Does that reflect -- refresh your recollection about |
| 11:14 | 22 | what happened? |
| 11:14 | 23 | A.   Um, I don't really remember it right now, but I don't |
| 11:14 | 24 | disagree with this. |
| 11:14 | 25 | Q.   And what this says is that, after a break, counsel said |

| | | |
|---|---|---|
| 11:14 | 1 | that -- |
| 11:15 | 2 | MS. KELLER:  Objection.  Argumentative. |
| 11:15 | 3 | THE COURT:  Sustained. |
| 11:15 | 4 | First of all, ladies and gentlemen, I expect the |
| 11:15 | 5 | witnesses to be talking to counsel.  We're not gonna get |
| 11:15 | 6 | counsel involved in either side. |
| 11:15 | 7 | So you can ask what the clarification is, what he |
| 11:15 | 8 | said, but I think my orders are pretty clear in that regard. |
| 11:15 | 9 | We're not dragging counsel into it.  I expect counsel are |
| 11:15 | 10 | talking to all the witnesses in the case for both sides. |
| 11:15 | 11 | So, Counsel. |
| 11:15 | 12 | BY MR. PRICE: |
| 11:15 | 13 | Q.  When you came back, you want -- you made a |
| 11:15 | 14 | clarification on the record; do you recall that? |
| 11:15 | 15 | A.  Yes. |
| 11:15 | 16 | Q.  And the clarification was that you had heard something |
| 11:15 | 17 | about moonlighting? |
| 11:15 | 18 | A.  Yes. |
| 11:15 | 19 | Q.  That you had heard rumors about moonlighting, correct? |
| 11:15 | 20 | A.  Yes. |
| 11:15 | 21 | Q.  And at the time you said you don't know any names of |
| 11:15 | 22 | anyone who moonlighted, correct? |
| 11:15 | 23 | A.  Yes. |
| 11:15 | 24 | Q.  And, by the way, if you had known names and you were |
| 11:16 | 25 | asked that question under oath, you would have given the |

| | | |
|---|---|---|
| 11:16 | 1 | names, right? |
| 11:16 | 2 | A.   Uh, yes. |
| 11:16 | 3 | Q.   And you couldn't recall what any of the products were |
| 11:16 | 4 | connected with moonlighting? |
| 11:16 | 5 | A.   I don't remember about that. |
| 11:16 | 6 | Q.   And you didn't recall -- well, let me see if I can |
| 11:16 | 7 | refresh your recollection:  868, lines 22 and 23. |
| 11:16 | 8 | A.   Okay. |
| 11:16 | 9 | Q.   Does that refresh your recollection that you can't |
| 11:16 | 10 | recall products associated with any moonlighting? |
| 11:16 | 11 | A.   Uh, that's true. |
| 11:16 | 12 | Q.   So you -- you don't known any products, right? |
| 11:16 | 13 | A.   No. |
| 11:16 | 14 | Q.   Do you know any products? |
| 11:16 | 15 | A.   The only one I can think of is the one that I worked |
| 11:16 | 16 | on. |
| 11:16 | 17 | Q.   Bratz? |
| 11:16 | 18 | A.   No.  I'm talking about the Angel project. |
| 11:17 | 19 | Q.   Oh.  So the only moonlighting you're aware of with a |
| 11:17 | 20 | project was you? |
| 11:17 | 21 | A.   Yes. |
| 11:17 | 22 | Q.   And you didn't know -- except for Bratz and MGA, you |
| 11:17 | 23 | didn't know companies that the employees were supposedly, by |
| 11:17 | 24 | rumor, working for, right? |
| 11:17 | 25 | A.   Right. |

| | | |
|---|---|---|
| 11:17 | 1 | Q.   Now, we've talked about your November '95 agreement. |
| 11:17 | 2 | And let me ask you this:  Between November '95 and April of |
| 11:17 | 3 | '98, when you gave your resignation -- between those time |
| 11:17 | 4 | frames, did you work for a competitive company? |
| 11:18 | 5 | A.   I don't remember. |
| 11:18 | 6 | Q.   I mean, sitting here today, you don't recall working |
| 11:18 | 7 | for a competitor of Mattel while you were employed under |
| 11:18 | 8 | this November '95 agreement, correct? |
| 11:18 | 9 | MS. KELLER:  Objection.  Asked and answered. |
| 11:18 | 10 | THE COURT:  Overruled. |
| 11:18 | 11 | THE WITNESS:  No. |
| 11:18 | 12 | BY MR. PRICE: |
| 11:18 | 13 | Q.   I said, "correct"? |
| 11:18 | 14 | My statement was correct, right? |
| 11:18 | 15 | A.   Yes. |
| 11:18 | 16 | Q.   I'd like to you look now at -- I think it's 9924.  And |
| 11:18 | 17 | that's the original of the agreement that you signed when |
| 11:18 | 18 | you returned to Mattel in January of 1994 -- I'm sorry -- |
| 11:18 | 19 | January of '99.  I'm juggling things and... |
| 11:19 | 20 | *(Document provided to the witness.)* |
| 11:19 | 21 | BY MR. PRICE: |
| 11:19 | 22 | Q.   Now, again, this was a document that you signed knowing |
| 11:19 | 23 | that was creating obligations? |
| 11:19 | 24 | A.   Yes. |
| 11:19 | 25 | Q.   And you didn't think that, by not looking at it, that |

| | | |
|---|---|---|
| 11:19 | 1 | you could somehow get out of those legal obligations, right? |
| 11:19 | 2 | A.   I don't remember what I thought at that time. |
| 11:19 | 3 | Q.   Well, you knew that you couldn't pretend that you |
| 11:19 | 4 | didn't read this and then later say, "I'm not bound by any |
| 11:19 | 5 | of this"?  You had that understanding? |
| 11:19 | 6 | A.   Yes. |
| 11:19 | 7 | Q.   And we talked about the November '95 agreement.  In |
| 11:19 | 8 | connection with the obligations you were talking about, this |
| 11:20 | 9 | says the same thing, right? |
| 11:20 | 10 | A.   Basically, yes. |
| 11:20 | 11 |          MS. KELLER:  Objection.  That calls for a |
| 11:20 | 12 | conclusion of the witness -- legal conclusion. |
| 11:20 | 13 |          THE COURT:  Just a moment. |
| 11:20 | 14 |          No.  Overruled. |
| 11:20 | 15 |          The answer stands:  "Yes." |
| 11:20 | 16 | BY MR. PRICE: |
| 11:20 | 17 | Q.   And, at least, that was your understanding:  That these |
| 11:20 | 18 | two agreements said the same thing? |
| 11:20 | 19 | A.   Basically, yes. |
| 11:20 | 20 |          THE COURT:  Now, once again, let me caution the |
| 11:20 | 21 | jury: |
| 11:20 | 22 |          We're dealing with the January 4, 1999 agreement. |
| 11:20 | 23 | I let counsel for both sides get into the 1995 agreement to |
| 11:20 | 24 | see what the state of mind is, if there's any change in the |
| 11:20 | 25 | agreements, you know, how people feel about these agreements |

120

| 11:20 | 1 | at different times. |
|---|---|---|
| 11:20 | 2 | We're still focused on the January 4th, 1999 |
| 11:20 | 3 | agreement. |
| 11:20 | 4 | Okay.  Counsel. |
| 11:20 | 5 | That way you know the state of mind, what |
| 11:20 | 6 | witnesses are thinking about these agreements over a long |
| 11:21 | 7 | period of time, because there were two agreements apparently |
| 11:21 | 8 | signed:  One in 1995.  One in 1999. |
| 11:21 | 9 | BY MR. PRICE: |
| 11:21 | 10 | Q.   Mr. Bryant, I'd like you to look at 1309.  You |
| 11:22 | 11 | recognize this?  You've been asked about it before.  This is |
| 11:22 | 12 | the information you faxed to David Rosenbaum around |
| 11:22 | 13 | September 14th of 2000 from Collectibles at Mattel, right? |
| 11:22 | 14 | A.   Yes. |
| 11:22 | 15 | Q.   And David Rosenbaum was MGA's attorney, correct? |
| 11:22 | 16 | A.   Yes. |
| 11:22 | 17 | Q.   And if we go to the second page, this is where you |
| 11:22 | 18 | inform him that you had an agreement of confidentiality, |
| 11:22 | 19 | right? |
| 11:22 | 20 | A.   Uh, yes. |
| 11:22 | 21 | Q.   And that you didn't want to risk suspicion by going to |
| 11:22 | 22 | HR, correct? |
| 11:22 | 23 | A.   Yes. |
| 11:22 | 24 | Q.   And you attached on page 3, the letter that Mattel had |
| 11:22 | 25 | sent to you on December 11, 1998, correct? |

| | | |
|---|---|---|
| 11:23 | 1 | A.    Yes. |
| 11:23 | 2 | Q.    And so this was a letter that you received before |
| 11:23 | 3 | signing the January 4, 1999 Confidentiality and Inventions |
| 11:23 | 4 | Agreement, right? |
| 11:23 | 5 | A.    Yes. |
| 11:23 | 6 |         THE COURT:  And that's the January 4, 1999 |
| 11:23 | 7 | Inventions Agreement? |
| 11:23 | 8 |         MR. PRICE:  Yes. |
| 11:23 | 9 |         THE COURT:  Okay. |
| 11:23 | 10 | BY MR. PRICE: |
| 11:23 | 11 | Q.    If you go to the second page of that -- it's the fourth |
| 11:23 | 12 | page of this Exhibit 01309-00004.  And the first full |
| 11:23 | 13 | paragraph there, which begins, "Of course" -- it says, "Of |
| 11:23 | 14 | course, this offer is contingent upon satisfactory |
| 11:23 | 15 | verification of all information as to previous employers and |
| 11:23 | 16 | academic institutions attended, eligibly to work in the |
| 11:23 | 17 | United States, and the signing of a Confidential Information |
| 11:23 | 18 | and Inventions Agreement." |
| 11:24 | 19 |     You see that? |
| 11:24 | 20 | A.    Yes. |
| 11:24 | 21 | Q.    So you knew on December 11th that you were going to |
| 11:24 | 22 | have to sign a confidentiality and inventions agreement, |
| 11:24 | 23 | right? |
| 11:24 | 24 | A.    Yes, I did. |
| 11:24 | 25 | Q.    In fact, you knew you'd signed one before? |

| | | |
|---|---|---|
| 11:24 | 1 | A.   Yes. |
| 11:24 | 2 | Q.   And then it says, in the next paragraph, "Enclosed" -- |
| 11:24 | 3 | "Enclosed is a packet containing various information and |
| 11:24 | 4 | forms required to activate your employment.  Please complete |
| 11:24 | 5 | these forms and bring them with you on your first day of |
| 11:24 | 6 | employment". |
| 11:24 | 7 |      Do you see that? |
| 11:24 | 8 | A.   Yes. |
| 11:24 | 9 | Q.   That included the Confidential Information and |
| 11:24 | 10 | Inventions Agreement, didn't it? |
| 11:24 | 11 | A.   Uh, yes. |
| 11:24 | 12 | Q.   So you had that agreement with you from about |
| 11:24 | 13 | December 11, 1998, until January 4, 1999, when you signed |
| 11:24 | 14 | it? |
| 11:24 | 15 | A.   I don't really remember if I did or not.  But according |
| 11:25 | 16 | to this, I was supposed to have it with me. |
| 11:25 | 17 | Q.   Well, you said, yes, your recollection is you got it, |
| 11:25 | 18 | correct? |
| 11:25 | 19 | A.   Yes. |
| 11:25 | 20 | Q.   And you got this around December 11, 1998, correct? |
| 11:25 | 21 | A.   Yes. |
| 11:25 | 22 | Q.   So you had an opportunity to review it ahead of time? |
| 11:25 | 23 | A.   Uh, yes, I did. |
| 11:25 | 24 | Q.   For weeks ahead of time? |
| 11:25 | 25 | A.   Yes, I had an opportunity. |

| | | |
|---|---|---|
| 11:25 | 1 | Q.   And you didn't see the need to contact an attorney, |
| 11:25 | 2 | correct? |
| 11:25 | 3 | A.   Um, I don't recall needing to, no. |
| 11:25 | 4 | Q.   And then, when you went to Mattel on January 4, '99, |
| 11:25 | 5 | and signed the agreement, you knew if you had any questions |
| 11:25 | 6 | you could -- you could ask someone in HR, Human Resources, |
| 11:25 | 7 | correct? |
| 11:25 | 8 | A.   I don't know that -- if I thought about that or not. |
| 11:26 | 9 | Q.   Well, you -- you knew how to contact Human Resources, |
| 11:26 | 10 | right? |
| 11:26 | 11 | A.   Yes. |
| 11:26 | 12 | Q.   Had you ever, um -- during your time at Mattel, did you |
| 11:26 | 13 | ever contact the Human Resources department? |
| 11:26 | 14 | A.   I don't remember if I ever did or not. |
| 11:26 | 15 | Q.   If you'd look at the second page of this exhibit, |
| 11:26 | 16 | 01309-00002. |
| 11:26 | 17 | *(Document displayed.)* |
| 11:26 | 18 | BY MR. PRICE: |
| 11:26 | 19 | Q.   You see you mention that, "I'm unable to look into this |
| 11:26 | 20 | too much further with our Human Resources director without |
| 11:26 | 21 | risking suspicion."  Do you see that? |
| 11:26 | 22 | A.   Yes. |
| 11:26 | 23 | Q.   So you certainly knew that there was a Human Resources |
| 11:26 | 24 | director as of September 2000? |
| 11:26 | 25 | A.   Yes. |

| | | |
|---|---|---|
| 11:26 | 1 | Q.   And as of that date, you didn't want to contact them |
| 11:26 | 2 | because you would raise suspicion, right? |
| 11:26 | 3 | A.   I was just thinking that, you know, I didn't want to -- |
| 11:27 | 4 | as I said yesterday, I didn't want to burn bridges.  I -- I |
| 11:27 | 5 | just wanted to, uh -- I just didn't want to burn my bridge |
| 11:27 | 6 | with Mattel if things didn't work out with MGA. |
| 11:27 | 7 | Q.   Well, I'll get to that. |
| 11:27 | 8 | If you'd look at page 4, 01309-00004. |
| 11:27 | 9 | *(Document displayed.)* |
| 11:27 | 10 | BY MR. PRICE: |
| 11:27 | 11 | Q.   And you see the -- the last paragraph? |
| 11:27 | 12 | MR. PRICE:  If we can show the signature there, |
| 11:27 | 13 | too, Ken. |
| 11:27 | 14 | (Technician complies.) |
| 11:27 | 15 | BY MR. PRICE: |
| 11:27 | 16 | Q.   You see, it says, "Carter, we are all looking forward |
| 11:27 | 17 | to you joining the Mattel team on January 4, '99.  As a new |
| 11:28 | 18 | member of the Mattel family, please feel free to call me at |
| 11:28 | 19 | (310) 252-2535 if you have any questions." |
| 11:28 | 20 | Do you see that? |
| 11:28 | 21 | A.   Yes. |
| 11:28 | 22 | Q.   And then it's signed, "Sincerely, Lynne Robinson, the |
| 11:28 | 23 | Vice President of Human Resources, right? |
| 11:28 | 24 | A.   Yes. |
| 11:28 | 25 | Q.   By the way, when you were at Mattel, did you take |

| 11:28 | 1 | interest in the awards Mattel got or how it was doing? |
| 11:28 | 2 | A.   In the what now? |
| 11:28 | 3 | Q.   Like the awards?  I mean, for example, if Mattel had |
| 11:28 | 4 | been named one of the top hundred companies to work for, |
| 11:28 | 5 | would you have been aware of that? |
| 11:28 | 6 | MS. KELLER:  Objection.  Irrelevant. |
| 11:28 | 7 | THE WITNESS:  I don't know. |
| 11:28 | 8 | THE COURT:  Overruled. |
| 11:28 | 9 | THE WITNESS:  I don't know. |
| 11:28 | 10 | BY MR. PRICE: |
| 11:28 | 11 | Q.   So the handwriting on this, it looks like "Mattel team |
| 11:28 | 12 | on January 4, '99" -- that that appears to be circled? |
| 11:28 | 13 | A.   Yes. |
| 11:28 | 14 | Q.   Who circled that? |
| 11:28 | 15 | A.   I have no idea. |
| 11:29 | 16 | Q.   If you'd look at Exhibit 13. |
| 11:29 | 17 | *(Document provided to the witness.)* |
| 11:29 | 18 | THE COURT:  First, let me find out something from |
| 11:29 | 19 | both counsel. |
| 11:29 | 20 | Is this the document on the screen that Mr. Bryant |
| 11:29 | 21 | received, or is this a document produced from Mattel? |
| 11:30 | 22 | MR. PRICE:  This is a document produced from MGA, |
| 11:30 | 23 | because this was sent to Mr. Rosenbaum. |
| 11:30 | 24 | THE COURT:  I see. |
| 11:30 | 25 | All right.  Thank you. |

11:30    1            MR. PRICE:  So if we could put Exhibit 13 --
11:30    2    BY MR. PRICE:
11:30    3    Q.   Actually, you see that's just a copy, without the cover
11:30    4    letter to Mr. Rosenbaum, of the letter that was sent to you
11:30    5    by Mattel on December 11, 1998, correct?
11:30    6    A.   Yes.
11:30    7            MR. PRICE:  Move Exhibit 13 into evidence,
11:30    8    Your Honor.
11:30    9            THE COURT:  You mean 1309?
11:30   10            MR. PRICE:  No.  It's Exhibit 13-00001.
11:30   11            THE COURT:  All right.
11:30   12            MR. PRICE:  And also move 1309, if I haven't.  I
11:30   13    think that's already in.
11:30   14            THE COURT:  Let me caution you about 1309.  The
11:30   15    reason the Court asked the question, ladies and gentlemen of
11:30   16    the jury, is, I don't want the circles or underlining to
11:30   17    have undue emphasis when I receive this into evidence.
11:31   18            An attorney could have put this on.  Who knows who
11:31   19    put that on.  So I'll receive the document.  But if
11:31   20    Mr. Bryant doesn't recall putting it on, you'll judge
11:31   21    whether that's correct or not.  But I don't want any undue
11:31   22    emphasis, because we don't know who circled these particular
11:31   23    dates.
11:31   24            So I'll receive 1309 with that admonition.
11:31   25            *(Exhibit No. 1309 received in evidence.)*

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 127 of 154   Page ID #:294238
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

127

| 11:31 | 1 | THE COURT: 13- -- what is it? -- -0001. |
| 11:31 | 2 | Received. |
| 11:31 | 3 | *(Exhibit No. 13-00001 received in evidence.)* |
| 11:31 | 4 | *(Document displayed.)* |
| 11:31 | 5 | BY MR. PRICE: |
| 11:31 | 6 | Q.   You see this is a copy of the December 11, 1998 letter |
| 11:31 | 7 | that doesn't have that fax cover sheet to Mr. Rosenbaum. |
| 11:31 | 8 | Do you see that? |
| 11:31 | 9 | A.   Yes. |
| 11:31 | 10 | Q.   And if you look at the second page of that. |
| 11:31 | 11 | *(Document displayed.)* |
| 11:31 | 12 | BY MR. PRICE: |
| 11:31 | 13 | Q.   There's no underlining or circling, correct? |
| 11:31 | 14 | A.   No. |
| 11:31 | 15 | Q.   Is that correct? |
| 11:31 | 16 | A.   That's correct. |
| 11:31 | 17 | Q.   Now, that last paragraph, when they say, if you have -- |
| 11:31 | 18 | "As a new member of the Mattel family, please feel free to |
| 11:32 | 19 | call me at (310) 252-2535 if you have any questions" -- so |
| 11:32 | 20 | after getting the Confidential Inventions Agreement -- |
| 11:32 | 21 | Confidentiality Inventions Agreement -- you had weeks before |
| 11:32 | 22 | January 4, '99, where you could call Ms. Robinson if you had |
| 11:32 | 23 | questions? |
| 11:32 | 24 | MS. KELLER:  Objection.  Assumes facts not in |
| 11:32 | 25 | evidence. |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 128 of 154   Page ID #:294239
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

128

| | | |
|---|---|---|
| 11:32 | 1 | THE COURT:  Overruled. |
| 11:32 | 2 | THE WITNESS:  Um, I don't remember ever feeling |
| 11:32 | 3 | the need to. |
| 11:32 | 4 | BY MR. PRICE: |
| 11:32 | 5 | Q.   Now, you mentioned that you didn't want to burn your |
| 11:32 | 6 | bridges.  You recall that? |
| 11:32 | 7 | A.   Yes. |
| 11:32 | 8 | Q.   And let's look at Exhibit 15609, that you were asked |
| 11:32 | 9 | about yesterday. |
| 11:33 | 10 | (Document provided to the witness.) |
| 11:33 | 11 | (Document displayed.) |
| 11:33 | 12 | BY MR. PRICE: |
| 11:33 | 13 | Q.   And, do you see, this is a notice that you gave in 1998 |
| 11:33 | 14 | when you left, correct? |
| 11:33 | 15 | A.   Yes. |
| 11:33 | 16 | Q.   And by "left," you were in Missouri, but you were |
| 11:33 | 17 | informing Mattel that you weren't going to work as an |
| 11:33 | 18 | employee after, I think, it's April 28, 1998, correct? |
| 11:33 | 19 | A.   Yes. |
| 11:33 | 20 | Q.   And, this situation, you gave -- you give two weeks |
| 11:33 | 21 | notice? |
| 11:33 | 22 | A.   Yes. |
| 11:33 | 23 | Q.   In this situation, you weren't leaving for another |
| 11:33 | 24 | company in the toy business, were you? |
| 11:33 | 25 | A.   No. |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 129 of 154   Page ID #:294240
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

129

| 11:33 | 1 | Q.   In this situation, you were leaving to become -- |
|-------|---|------|
| 11:33 | 2 | actually, it says, "to stay in Missouri and pursue other |
| 11:33 | 3 | interests," right? |
| 11:33 | 4 | A.   Yes. |
| 11:33 | 5 | Q.   So at this time there wasn't a period where you were |
| 11:34 | 6 | working for Mattel and, at the same time, working for a |
| 11:34 | 7 | competitor in the toy business, right? |
| 11:34 | 8 | A.   No. |
| 11:34 | 9 | Q.   Is that right? |
| 11:34 | 10 | A.   That's right. |
| 11:34 | 11 | Q.   So between April 15 and April 29, 1998, you didn't work |
| 11:34 | 12 | for another toy company, right? |
| 11:34 | 13 | A.   Not that I recall, no. |
| 11:34 | 14 | Q.   Now, let's talk about October of 2000.  Between |
| 11:34 | 15 | October 4 of 2000 and October 19, during that timeframe, you |
| 11:34 | 16 | were assisting MGA in pursuing a Bratz doll, right? |
| 11:34 | 17 | A.   I was working to get the Bratz doll project going, yes. |
| 11:34 | 18 | Q.   And you were doing that while you were still in the |
| 11:34 | 19 | Mattel design center? |
| 11:34 | 20 | A.   Yes. |
| 11:35 | 21 | Q.   And your testimony was that you gave the two weeks' |
| 11:35 | 22 | notice, and stayed in the Mattel design center during the |
| 11:35 | 23 | day, while you were also working for MGA to pursue this |
| 11:35 | 24 | Bratz project? |
| 11:35 | 25 |        MS. KELLER:  I object, Your Honor.  Vague as to |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 130 of 154   Page ID #:294241
CV 04-9049 DOC – 2/3/2011 – Day 12, Volume 1 of 3

130

| 11:35 | 1  | where he was working on the Bratz project. |
|-------|----|---------------------------------------------|
| 11:35 | 2  | THE COURT:  Overruled. |
| 11:35 | 3  | BY MR. PRICE: |
| 11:35 | 4  | Q.   Between October 4th -- |
| 11:35 | 5  | THE COURT:  Just reask the question, Counsel. |
| 11:35 | 6  | BY MR. PRICE: |
| 11:35 | 7  | Q.   Between October 4th and October 19th, you were going to |
| 11:35 | 8  | the Mattel design center every weekday, right? |
| 11:35 | 9  | A.   Yes. |
| 11:35 | 10 | Q.   You were, during that timeframe, supposed to devote |
| 11:35 | 11 | 200 percent of your time to the Bratz project, right? |
| 11:35 | 12 | A.   Uh, that's what I was asked, yes. |
| 11:36 | 13 | Q.   And you did devote a substantial amount of time to the |
| 11:36 | 14 | Bratz project, correct? |
| 11:36 | 15 | A.   Yes. |
| 11:36 | 16 | Q.   At the same time you were working in the Mattel design |
| 11:36 | 17 | center, right? |
| 11:36 | 18 | A.   Uh, no.  I worked on the Bratz project at my house, at |
| 11:36 | 19 | home. |
| 11:36 | 20 | Q.   So between October 4th and October 19th, you would work |
| 11:36 | 21 | in the design center at Mattel during the day? |
| 11:36 | 22 | A.   Yes. |
| 11:36 | 23 | Q.   And on Fridays till 1:00? |
| 11:36 | 24 | A.   Yes. |
| 11:36 | 25 | Q.   And on the nights or the weekends, you would work for a |

| 11:36 | 1 | competitor? |
| 11:36 | 2 | A.   At the time I didn't think of MGA as a competitor with |
| 11:36 | 3 | Mattel.  I didn't think about that either way. |
| 11:36 | 4 | Q.   You thought of them as a toy company? |
| 11:36 | 5 | A.   Yes. |
| 11:36 | 6 | Q.   Now, you said you didn't want to burn your bridges with |
| 11:36 | 7 | Mattel, right? |
| 11:36 | 8 | A.   Yes. |
| 11:36 | 9 | Q.   Because you thought, you know, six to eight months down |
| 11:36 | 10 | the road, if, you know, Bratz probably didn't work, then you |
| 11:36 | 11 | would go and ask Mattel perhaps for a job, right? |
| 11:37 | 12 | A.   I think I remember kind of thinking that, yes. |
| 11:37 | 13 | Q.   And that's what you said yesterday? |
| 11:37 | 14 | A.   Yes. |
| 11:37 | 15 | Q.   So -- so you thought the scenario through; that is, you |
| 11:37 | 16 | thought that, well, I don't want to burn my bridges because |
| 11:37 | 17 | I might come back"? |
| 11:37 | 18 | A.   I think I thought that, yes. |
| 11:37 | 19 | Q.   Okay.  When you thought that scenario through, and you |
| 11:37 | 20 | were thinking about going back to Mattel, you did envision |
| 11:37 | 21 | telling them that you had a -- signed a contract with MGA |
| 11:37 | 22 | that was dated effective September 18th of 2000? |
| 11:37 | 23 | A.   I don't remember ever thinking about that. |
| 11:37 | 24 | Q.   When you were thinking of this scenario where Mattel |
| 11:38 | 25 | might hire you in the future, in that scenario, you couldn't |

11:38    1    be thinking of telling 'em that, right?

11:38    2    A.    I'm sorry.   What now?

11:38    3    Q.    You had a pretty good understanding that if you tried

11:38    4    to go back to Mattel, and you told them that you had signed

11:38    5    a contract with MGA effective September 18, 2000, that

11:38    6    Mattel wouldn't want you back, right?

11:38    7              MS. KELLER:   Objection.   Misstates the evidence.

11:38    8              THE WITNESS:   I don't think I thought about that

11:38    9    at all.

11:38   10              THE COURT:   Overruled.

11:38   11    BY MR. PRICE:

11:38   12    Q.    Well, you said you envisioned this scenario that you

11:38   13    didn't want to burn bridges because you would want to go to

11:38   14    Mattel in six months or so if things didn't work out.

11:38   15         So in that scenario that you were thinking of -- you

11:38   16    didn't want to burn bridges -- did that scenario include

11:38   17    telling Mattel that you had a contract with MGA, dated

11:38   18    effective September 18, 2000?

11:38   19    A.    Uh, no.   I think you're putting words in my mouth.   I

11:39   20    just didn't think about that one way or the other.

11:39   21    Q.    You knew, in October 2000 -- October 4, 2000, when you

11:39   22    gave your notice and continued to stay at Mattel for two

11:39   23    weeks, you knew that Mattel would have walked you out

11:39   24    immediately if you had told them that you were going to work

11:39   25    for a competitor?

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 133 of 154   Page ID #:294244
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

133

| | | |
|---|---|---|
| 11:39 | 1 | A.   Um, no, I didn't know that, actually. |
| 11:39 | 2 | Q.   You knew, as October -- as of October 4, 2000, that |
| 11:39 | 3 | Mattel would certainly have walked you out of the Mattel |
| 11:39 | 4 | design center, if Mattel knew that you had signed a contract |
| 11:39 | 5 | with MGA, effective September 18, 2000, before you even gave |
| 11:39 | 6 | notice? |
| 11:39 | 7 | A.   Uh, no.  I didn't think about that at all. |
| 11:39 | 8 | Q.   You knew, as of October 4, 2000, that Mattel would not |
| 11:39 | 9 | have permitted you to go to the Mattel design center during |
| 11:40 | 10 | the day, and then, on nights and weekends, work for another |
| 11:40 | 11 | toy company? |
| 11:40 | 12 | A.   Um, again, I don't think I thought about that one way |
| 11:40 | 13 | or another. |
| 11:40 | 14 | Q.   Well, you knew Mattel never would have taken you back |
| 11:40 | 15 | if you had told them, "I did these things without telling |
| 11:40 | 16 | you:  I signed a September 18 -- effective September 18, |
| 11:40 | 17 | 2000, contract.  And for a two-week time, I worked for you |
| 11:40 | 18 | and also worked for MGA"? |
| 11:40 | 19 | A.   Again, I don't know that I thought about that one way |
| 11:40 | 20 | or another. |
| 11:40 | 21 | Q.   But somehow you thought that you wouldn't be burning |
| 11:40 | 22 | your bridges if you just kept that from them? |
| 11:40 | 23 | A.   I -- again, I don't remember exactly what I was |
| 11:40 | 24 | thinking. |
| 11:40 | 25 | Q.   Well, you said you wanted to complete your projects, |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 134 of 154   Page ID #:294245
CV 04-9049 DOC – 2/3/2011 – Day 12, Volume 1 of 3

134

| | | |
|---|---|---|
| 11:40 | 1 | right? |
| 11:40 | 2 | A.   Yes. |
| 11:40 | 3 | Q.   You thought it was the right thing to do, right? |
| 11:41 | 4 | A.   Yes. |
| 11:41 | 5 | Q.   Well, could you have done that by giving notice and |
| 11:41 | 6 | telling Mattel, "By the way, I'm also working for a |
| 11:41 | 7 | competitive company on nights and weekends"? |
| 11:41 | 8 | A.   Um, I mean, I could have told 'em that, yes. |
| 11:41 | 9 | Q.   I mean, according to you, you didn't think -- |
| 11:41 | 10 | THE COURT:  Excuse me. |
| 11:41 | 11 | Restate the question. |
| 11:41 | 12 | BY MR. PRICE: |
| 11:41 | 13 | Q.   Your belief, you've told us, is that Mattel wouldn't |
| 11:41 | 14 | have thought there was anything wrong with that; that is, |
| 11:41 | 15 | working for Mattel and working for a competitive company on |
| 11:41 | 16 | nights and weekends? |
| 11:41 | 17 | A.   I'm sorry.  What now? |
| 11:41 | 18 | Q.   I think you've told us that your belief is that, if you |
| 11:41 | 19 | told Mattel that you were working for them during the day |
| 11:41 | 20 | and for a competitor at -- nights and weekends, and then |
| 11:41 | 21 | going to join that competitor, that Mattel wouldn't have |
| 11:41 | 22 | cared? |
| 11:41 | 23 | MS. KELLER:  Objection.  That misstates the |
| 11:41 | 24 | testimony, Your Honor. |
| 11:41 | 25 | THE COURT:  Sustained. |

CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

135

| 11:41 | 1 | BY MR. PRICE: |
|---|---|---|

11:42  2  Q.   Do you believe that Mattel would have cared that you

11:42  3  were working in the Mattel design center on days, and

11:42  4  working at a competitive company on nights and weekends?

11:42  5  A.   Do I believe that now?

11:42  6  Q.   No.  At this time, did you believe that's something

11:42  7  that Mattel would have liked to have known?

11:42  8  A.   I don't know.  I don't know what I was -- what my

11:42  9  belief was in that area.

11:42  10  Q.   Well, when you were thinking about staying, from

11:42  11  October 4th to October 19th, for the benefit of Mattel, so

11:42  12  you could finish projects -- okay? -- in thinking that

11:42  13  scenario through, did you think of whether or not you should

11:42  14  tell Mattel that that's what you were doing; that is, that

11:42  15  you were working days at Mattel and then working nights and

11:42  16  weekends MGA, and planning to join MGA?

11:42  17  A.   I don't remember.

11:43  18  Q.   We were talking about the non-Barbie dolls.

11:43  19       And do you remember something called, What's Her Face?

11:43  20  A.   Yes.

11:43  21  Q.   And was that a Barbie doll?

11:43  22  A.   Uh, no.

11:43  23  Q.   Based on Barbie sculpt or anything?

11:43  24  A.   I don't -- I don't know.

11:43  25  Q.   How about Generation Girl?

| | | |
|---|---|---|
| 11:43 | 1 | A.    Yes. |
| 11:43 | 2 | Q.    Was that based on Barbie sculpt? |
| 11:43 | 3 | A.    I believe so, yes. |
| 11:43 | 4 | Q.    How about Diva Starz? |
| 11:43 | 5 | A.    Yes. |
| 11:43 | 6 | Q.    Do you recall it? |
| 11:43 | 7 | A.    Yes. |
| 11:43 | 8 | Q.    Was that based on a Barbie sculpt? |
| 11:43 | 9 | A.    Uh, no. |
| 11:43 | 10 | Q.    Did you work on Diva Starz? |
| 11:44 | 11 | A.    No. |
| 11:44 | 12 | MR. PRICE:  Your Honor, would this be a good time |
| 11:44 | 13 | or -- go 15 more minutes?  I can barely see my watch. |
| 11:44 | 14 | BY MR. PRICE: |
| 11:44 | 15 | Q.    In your examination yesterday, you talked about the -- |
| 11:44 | 16 | trying to remember the name of the Barbie -- that fancy |
| 11:44 | 17 | Barbie you did for collectors. |
| 11:44 | 18 | A.    Uh, yes.  I don't know -- I don't -- Grand Entrance, I |
| 11:44 | 19 | think. |
| 11:44 | 20 | Q.    Grand Entrance, that's it. |
| 11:44 | 21 | And do you recall that you were shown the Grand |
| 11:44 | 22 | Entrance doll? |
| 11:44 | 23 | A.    Yes. |
| 11:44 | 24 | Q.    And if I can find the number on that. |
| 11:44 | 25 | *(Exhibit provided to the witness.)* |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 137 of 154   Page ID #:294248
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

137

| | | |
|---|---|---|
| 11:44 | 1 | BY MR. PRICE: |
| 11:44 | 2 | Q.   Do you have it, the Grand Entrance doll, up there? -- |
| 11:44 | 3 | the doll itself? |
| 11:45 | 4 | A.   Yes. |
| 11:45 | 5 | Q.   Could you tell me the number? |
| 11:45 | 6 | A.   13656. |
| 11:45 | 7 | Q.   Mr. Bryant, thank you. |
| 11:45 | 8 | And you were -- is that still in the box? |
| 11:45 | 9 | A.   Yes. |
| 11:45 | 10 | Q.   Okay. |
| 11:45 | 11 | (Exhibit displayed.) |
| 11:45 | 12 | BY MR. PRICE: |
| 11:45 | 13 | Q.   You were -- I think you said something to the effect |
| 11:45 | 14 | that you were responsible for the fashions on the doll, |
| 11:45 | 15 | correct? |
| 11:45 | 16 | A.   Yes. |
| 11:45 | 17 | Q.   You were the project designer on this doll, correct? |
| 11:45 | 18 | A.   Um, yes, I was. |
| 11:45 | 19 | Q.   So you were responsible for -- for the whole concept, |
| 11:45 | 20 | not just the clothes the doll is wearing, right? |
| 11:45 | 21 | A.   I was responsible for the whole concept of the design |
| 11:45 | 22 | of the doll, yes. |
| 11:45 | 23 | Q.   And that meant, uh, the skin tone -- that you were to |
| 11:45 | 24 | pick from various skin tones to use on the doll, correct? |
| 11:45 | 25 | A.   Uh, yes. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 2/3/2011 – Day 12, Volume 1 of 3

138

| 11:45 | 1 | Q. And the hair? |
|---|---|---|
| 11:45 | 2 | A. Yes. |
| 11:45 | 3 | Q. And which body type to use? |
| 11:46 | 4 | A. Yes. |
| 11:46 | 5 | Q. I mean, there were choices of body types to use with |
| 11:46 | 6 | this sort of doll? |
| 11:46 | 7 | A. Yes. |
| 11:46 | 8 | Q. And -- and you were also responsible for the fashions? |
| 11:46 | 9 | A. Yes. |
| 11:46 | 10 | Q. Because the overall look of this doll -- skin tone, |
| 11:46 | 11 | body type, hair, fashions -- were your responsibility? |
| 11:46 | 12 | A. Yes. |
| 11:46 | 13 | Q. At this time -- let me see. Were you the art |
| 11:46 | 14 | director -- is that what it's called? -- on this doll? |
| 11:46 | 15 | A. Not sure exactly what you mean. |
| 11:46 | 16 | Q. Was that a designation, that you were the art director |
| 11:46 | 17 | on the doll? |
| 11:46 | 18 | A. I don't remember. |
| 11:46 | 19 | Q. Now, if we look at the back of that, this is the one |
| 11:46 | 20 | that has your picture, and you said this was sort of an |
| 11:47 | 21 | honor at Mattel, correct? |
| 11:47 | 22 | A. I thought it was, yes. |
| 11:47 | 23 | Q. And this is a doll you were proud of? |
| 11:47 | 24 | A. Yes. |
| 11:47 | 25 | Q. And you had no problem with the doll going out in that |

CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

139

| | | |
|---|---|---|
| 11:47 | 1 | packaging, recognizing that you had been the creator of this |
| 11:47 | 2 | doll? |
| 11:47 | 3 | A.   That's right. |
| 11:47 | 4 | Q.   And it talked about some -- some personal information |
| 11:47 | 5 | about you, right? |
| 11:47 | 6 | A.   Yes. |
| 11:47 | 7 | Q.   And when this went out, did you tell friends or parents |
| 11:47 | 8 | or folks about it? |
| 11:47 | 9 | A.   Um, probably, yes. |
| 11:47 | 10 | Q.   Did you go to the store and see it in stores? |
| 11:47 | 11 | A.   Uh -- don't remember. |
| 11:47 | 12 | Q.   But, in any event, this is something that you were |
| 11:47 | 13 | justly proud about, right? |
| 11:48 | 14 | A.   Yes. |
| 11:48 | 15 | Q.   Now, you remember yesterday you were shown a document |
| 11:48 | 16 | concerning a David Dees.  Do you recall that? |
| 11:48 | 17 | A.   Yes. |
| 11:48 | 18 | Q.   And that was 22482. |
| 11:48 | 19 | *(Document provided to the witness.)* |
| 11:48 | 20 | *(Document displayed.)* |
| 11:48 | 21 | BY MR. PRICE: |
| 11:48 | 22 | Q.   You have that in front of you? |
| 11:48 | 23 | A.   Yes. |
| 11:48 | 24 | Q.   And this is in March of 2002, right? |
| 11:48 | 25 | A.   Yes. |

| | | |
|---|---|---|
| 11:49 | 1 | Q.   By the way, when did -- the Barbie we've been looking |
| 11:49 | 2 | at, when did that come out? |
| 11:49 | 3 | A.   Uh, this was 2000. |
| 11:49 | 4 | Q.   And in the -- on the second page, there's an e-mail |
| 11:49 | 5 | from you to Paula Garcia, dated March 10, 2002, talking |
| 11:49 | 6 | about statements that David Dees wrote to a fan club. |
| 11:49 | 7 | You see that? |
| 11:49 | 8 | A.   Yes. |
| 11:49 | 9 | Q.   And mentioned that you created the Bratz, right? |
| 11:49 | 10 | A.   It did. |
| 11:49 | 11 | Q.   And the next sentence says, "I know that by now |
| 11:49 | 12 | everyone knows that I created them, but I do not," caps, |
| 11:49 | 13 | "want my name mentioned to the fan club or anyone else.  I |
| 11:50 | 14 | just want to be anonymous." |
| 11:50 | 15 | See that? |
| 11:50 | 16 | A.   Yes. |
| 11:50 | 17 | Q.   And then it says, "Please tell him to retract his |
| 11:50 | 18 | statements or something." |
| 11:50 | 19 | It says you were furious when you read the letter. |
| 11:50 | 20 | You see that? |
| 11:50 | 21 | A.   Yes. |
| 11:50 | 22 | Q.   Now, by this time, the Bratz had been successful? |
| 11:50 | 23 | A.   Uh, they had started to be successful, yes. |
| 11:50 | 24 | Q.   And you were very proud of your work on them, correct? |
| 11:50 | 25 | A.   Uh, yes, I was. |

| 11:50 | 1 | Q.    You were proud of the designs? |
|-------|---|--------|
| 11:50 | 2 | A.    Yes. |
| 11:50 | 3 | Q.    Now, just as proud, I assume, as you were of the work |
| 11:50 | 4 | on Grand Entrance Barbie? |
| 11:50 | 5 | A.    Yes. |
| 11:50 | 6 | Q.    Maybe even more so? |
| 11:50 | 7 | A.    I don't know about that. |
| 11:51 | 8 | Q.    You didn't mind that -- for Grand Entrance Barbie, that |
| 11:51 | 9 | your name was on the box honoring you as the designer, |
| 11:51 | 10 | right? |
| 11:51 | 11 | A.    No. |
| 11:51 | 12 | Q.    I mean, is that correct? |
| 11:51 | 13 | A.    That's correct. |
| 11:51 | 14 | Q.    But you and Mr. Larian had spoken about whether or not |
| 11:51 | 15 | your name should be associated with Bratz, right? |
| 11:51 | 16 | A.    I don't remember if we had or not. |
| 11:51 | 17 | Q.    As of March 10, 2002, you did not want it known that |
| 11:51 | 18 | you had worked on Bratz at the same time that you worked for |
| 11:51 | 19 | Mattel, correct? |
| 11:51 | 20 | A.    I don't remember thinking that, no. |
| 11:52 | 21 | Q.    You see, there's an e-mail -- it starts actually on the |
| 11:52 | 22 | first page -- dated March 11, 2002, from Mr. Larian -- |
| 11:52 | 23 |           *(Document displayed.)* |
| 11:52 | 24 | BY MR. PRICE: |
| 11:52 | 25 | Q.    -- saying, "Dianna, is this guy reporting to you?  I |

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 142 of 154   Page ID #:294253
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

142

| | | |
|---|---|---|
| 11:52 | 1 | need this taken," paren, "Carter, out of all written |
| 11:52 | 2 | material," paren, "Internet, et cetera," in all caps, "now." |
| 11:52 | 3 | A.   Yes. |
| 11:52 | 4 | Q.   And it's your understanding that, uh -- that -- |
| 11:52 | 5 | MS. KELLER:  Your Honor, I would object that |
| 11:52 | 6 | this -- Mr. Bryant was not copied on this e-mail. |
| 11:53 | 7 | THE COURT:  Yeah.  Take that off the screen for |
| 11:53 | 8 | just a moment. |
| 11:53 | 9 | *(Document removed from display.)* |
| 11:53 | 10 | Has this been received yet, Counsel? |
| 11:53 | 11 | MR. PRICE:  It has. |
| 11:53 | 12 | THE COURT:  And the number on it, once again? |
| 11:53 | 13 | MR. PRICE:  This is 22482-00002. |
| 11:53 | 14 | MS. KELLER:  Your Honor, my understanding was the |
| 11:53 | 15 | portion pertaining to Mr. Bryant had been received. |
| 11:53 | 16 | THE COURT:  Yeah.  That means, though, that he |
| 11:53 | 17 | would have had access to this entire e-mail string; is that |
| 11:53 | 18 | correct? |
| 11:53 | 19 | Maybe I should take this up out -- |
| 11:53 | 20 | (To the jury:)  Let me send you to lunch.  And let |
| 11:53 | 21 | me be certain.  Let us take our lunch hour with this issue. |
| 11:53 | 22 | You're admonished not to discuss this matter |
| 11:53 | 23 | amongst yourselves nor form or express any opinion |
| 11:53 | 24 | concerning this case.  We'll see you at 1:00. |
| 11:53 | 25 | Have a nice lunch. |

| | | |
|---|---|---|
| 11:53 | 1 | *(Jury recesses at 11:53 a.m.)* |
| 11:53 | 2 | THE COURT:  Counsel, if you'll be seated. |
| 11:53 | 3 | *(Outside the presence of the jury.)* |
| 11:54 | 4 | THE COURT:  All right.  Counsel, if you would have |
| 11:54 | 5 | a seat.  If you would be kind enough to give me that exhibit |
| 11:54 | 6 | once again. |
| 11:54 | 7 | And, Mr. Bryant, if you would remain for just a |
| 11:54 | 8 | moment -- you want to use the restroom? |
| 11:54 | 9 | THE WITNESS:  I'm fine. |
| 11:54 | 10 | THE COURT:  All right.  Have a seat in the |
| 11:54 | 11 | audience. |
| 11:54 | 12 | I'd like that exhibit, please. |
| 11:54 | 13 | *(Document provided to the Court.)* |
| 11:54 | 14 | THE COURT:  Okay.  Thank you. |
| 11:54 | 15 | MS. KELLER:  Your Honor -- |
| 11:54 | 16 | THE COURT:  Just a moment, Counsel.  Thank you. |
| 11:54 | 17 | MS. KELLER:  Your Honor, do you have two pages? |
| 11:54 | 18 | THE COURT:  Counsel, I said just a moment, please. |
| 11:54 | 19 | Thank you. |
| 11:55 | 20 | All right.  Mr. Bryant, if you would retake the |
| 11:55 | 21 | witness stand for just a moment, sir. |
| 11:55 | 22 | *(Witness resumes the witness stand.)* |
| 11:55 | 23 | THE COURT:  And would somebody place this exhibit |
| 11:55 | 24 | back in front of Mr. Bryant, 22482. |
| 11:55 | 25 | *(Document provided to the witness.)* |

CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

144

| | | |
|---|---|---|
| 11:56 | 1 | THE COURT:  Sir, would you turn to page 2 for just |
| 11:56 | 2 | a moment.  And would you look at the bottom where it says, |
| 11:56 | 3 | "Original message from Bryant, on Sunday, March 10, to |
| 11:56 | 4 | Paula -- and I'm going to refer to her as "Garcia" -- |
| 11:56 | 5 | concerning David Dees. |
| 11:56 | 6 | Do you see that? |
| 11:56 | 7 | THE WITNESS:  Uh, yes, I do. |
| 11:56 | 8 | THE COURT:  All right.  And this has been already |
| 11:56 | 9 | discussed with you. |
| 11:56 | 10 | Now, I'd like to turn to the e-mail above that. |
| 11:56 | 11 | It's apparently from Paula Garcia on March 11th, and you're |
| 11:56 | 12 | included in this e-mail, I note. |
| 11:56 | 13 | You're copied, aren't you? |
| 11:56 | 14 | THE WITNESS:  Yes. |
| 11:56 | 15 | THE COURT:  All right.  And apparently Paula |
| 11:56 | 16 | Garcia is saying, "Isaac," referring to Mr. Larian, "and |
| 11:57 | 17 | Beth," referring to Beth Cahill, "This is not acceptable. |
| 11:57 | 18 | I'd like to call him personally.  Please advise." |
| 11:57 | 19 | Now, go up to the next e-mail.  And this is from |
| 11:57 | 20 | Isaac Larian on Monday, March 11, 2002, back to Paula, to |
| 11:57 | 21 | Beth Cahill, to Dianna Eisenberg -- and I notice that you're |
| 11:57 | 22 | on that e-mail, also; is that correct? |
| 11:57 | 23 | THE WITNESS:  Yes. |
| 11:57 | 24 | THE COURT:  It says, "Who the hell is David Dees? |
| 11:57 | 25 | And why are we telling people this information about where |

| | | |
|---|---|---|
| 11:57 | 1 | the dolls come from anyway?  I don't want to see anything |
| 11:57 | 2 | said or told or written about Bratz without my written |
| 11:57 | 3 | approval ever again.  No one should ever give an interview |
| 11:57 | 4 | either.  Send them all to me." |
| 11:57 | 5 | Did you receive a copy of this as it appears in |
| 11:57 | 6 | this e-mail? |
| 11:57 | 7 | THE WITNESS:  Apparently, yes. |
| 11:57 | 8 | THE COURT:  Okay.  Now, let's turn to the next |
| 11:57 | 9 | e-mail.  Let's go through these slowly and see if the |
| 11:58 | 10 | objection's appropriate or not. |
| 11:58 | 11 | The next e-mail is apparently on March 11th also. |
| 11:58 | 12 | And from here on out, through the rest of the e-mail string, |
| 11:58 | 13 | as I go up this e-mail string, I don't see you copied; is |
| 11:58 | 14 | that correct? |
| 11:58 | 15 | In other words, look at the March 11, 2002, at |
| 11:58 | 16 | 4:54 p.m.  That would be on the first page.  And then go up |
| 11:58 | 17 | to 9:22 a.m., on March 12th. |
| 11:58 | 18 | And we're doing this, partially, so the Circuit, |
| 11:58 | 19 | when they eventually get this case, has the courtesy of |
| 11:58 | 20 | Court trying to go over these documents and make it easier. |
| 11:58 | 21 | March 14, 2002, once again, 5:25.  You're not |
| 11:58 | 22 | copied on that, are you? |
| 11:58 | 23 | THE WITNESS:  Uh, no. |
| 11:58 | 24 | THE COURT:  And March 15, 2002, at 9:28, you're |
| 11:58 | 25 | not copied, are you? |

| | | |
|---|---|---|
| 11:58 | 1 | THE WITNESS:  No. |
| 11:58 | 2 | THE COURT:  And March 14, 2002, at 5:30 -- without |
| 11:58 | 3 | naming the persons and the parties -- it's evident when the |
| 11:58 | 4 | Circuit gets this document. |
| 11:58 | 5 | So, Counsel, you had attempted to get into, once |
| 11:59 | 6 | again, which portion of this e-mail? |
| 11:59 | 7 | MR. PRICE:  Your Honor, I wasn't as focused as |
| 11:59 | 8 | you. |
| 11:59 | 9 | THE COURT:  Uh-huh. |
| 11:59 | 10 | MR. PRICE:  It was the part that goes from the |
| 11:59 | 11 | bottom of page 22482 to the top of 22482. |
| 11:59 | 12 | THE COURT:  Seems to be appropriate. |
| 11:59 | 13 | Now, the objection was that he wasn't included on |
| 11:59 | 14 | the e-mail string, by Ms. Keller. |
| 11:59 | 15 | Ms. Keller. |
| 11:59 | 16 | MS. KELLER:  That's right, Your Honor.  He's not. |
| 11:59 | 17 | The part that was just being asked about, "Dianna, is this |
| 11:59 | 18 | guy reporting to you?" |
| 11:59 | 19 | THE COURT:  No, no.  Just a moment.  Be more |
| 11:59 | 20 | careful with my record. |
| 11:59 | 21 | MS. KELLER:  I'm sorry. |
| 11:59 | 22 | THE COURT:  Go back on the date, so I can turn to |
| 11:59 | 23 | whatever you're looking at, and I can see that and re-read |
| 11:59 | 24 | it. |
| 11:59 | 25 | MS. KELLER:  I'm looking at the message dated |

11:59  1    March 11, 2002, 4:54 p.m. to Abe Mirza , Margo Chazen,

11:59  2    Dianna Eisenberg; copy:  Paula Treantafelles; Subject:

11:59  3    Forward, David Dees, Bratz Fan Club; Importance:  High.

12:00  4            And the body of it says, "Dianna, is this guy

12:00  5    reporting to you?  I need this taken -- Carter -- out of all

12:00  6    written material, Internet, et cetera, now."

12:00  7            THE COURT:  Now, I think instead of just putting

12:00  8    this up on the board, because it's been received, we can ask

12:00  9    for either party's standpoint, if he's aware of any e-mails

12:00  10   after March 11th, 2002.

12:00  11           You can certainly ask about the March 11th,

12:00  12   2002 e-mail at 4:49 p.m., regardless of what Mr. Bryant's

12:00  13   answer is.

12:00  14           You can certainly ask him about the e-mail of

12:00  15   March 22, 2002, at 4:47 p.m., regardless of whether he

12:00  16   recalls it or not.  He's on the e-mail string.

12:00  17           You can certainly ask him, as you already have,

12:00  18   about Sunday, March 10, 2002.

12:00  19           But I think, before the rest of that e-mail goes

12:00  20   up and there's an assumption that he knows about it, that he

12:01  21   needs the courtesy of being asked if he is aware of any

12:01  22   further e-mail strings.  Because he doesn't appear to be

12:01  23   copied.  And, of course, that's the danger of e-mail

12:01  24   strings.

12:01  25           So is that clear?

Case 2:04-cv-09049-DOC-RNB   Document 9797   Filed 02/04/11   Page 148 of 154   Page ID #:294259
CV 04-9049 DOC - 2/3/2011 - Day 12, Volume 1 of 3

148

| 12:01 | 1 | MR. PRICE:  Yes. |
| 12:01 | 2 | THE COURT:  Okay.  Counsel, is that clear? |
| 12:01 | 3 | MS. KELLER:  Not completely.  Because I was gonna |
| 12:01 | 4 | ask the Court that, when the Court allows him to ask that |
| 12:01 | 5 | question, now that he's been shown it -- |
| 12:01 | 6 | THE COURT:  No.  The question will be, "Are you |
| 12:01 | 7 | aware of the content contained in March 11, 2002 at 4:49, or |
| 12:01 | 8 | were you -- I'm sorry -- were you at that time aware of that |
| 12:01 | 9 | e-mail? |
| 12:01 | 10 | MS. KELLER:  So "Were you at that time?" |
| 12:01 | 11 | THE COURT:  Yeah, "Were you at that time?" |
| 12:01 | 12 | MS. KELLER:  Of course, that's clear. |
| 12:01 | 13 | THE COURT:  If he says, "no," then we're moving |
| 12:01 | 14 | on. |
| 12:01 | 15 | Eventually, all this is coming in regardless, |
| 12:01 | 16 | probably when Mr. Larian testifies.  So the end result is |
| 12:01 | 17 | the objection's proper as long as it is lodged at this time |
| 12:01 | 18 | concerning Mr. Bryant's knowledge, or if he has no knowledge |
| 12:01 | 19 | concerning the remaining portions of the string. |
| 12:01 | 20 | MS. KELLER:  Thank you. |
| 12:01 | 21 | THE COURT:  Okay.  But I expect that we're going |
| 12:02 | 22 | to see this at some point. |
| 12:02 | 23 | And you can certainly ask about those other |
| 12:02 | 24 | e-mails that I mentioned, regardless of whether he recalls |
| 12:02 | 25 | it or not. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 12:02 | 1 | Now, I know sometimes counsel feels that they want |
| 12:02 | 2 | more clarification.  So here I am.  We can sit here all |
| 12:02 | 3 | lunch hour. |
| 12:02 | 4 | MR. PRICE:  I understand. |
| 12:02 | 5 | THE COURT:  You understand? |
| 12:02 | 6 | MR. PRICE:  Yes. |
| 12:02 | 7 | THE COURT:  Talk to Mr. Quinn.  Make sure he |
| 12:02 | 8 | understands.  I'm just kidding you. |
| 12:02 | 9 | Ms. Keller? |
| 12:02 | 10 | MS. KELLER:  May I have one follow-up question. |
| 12:02 | 11 | THE COURT:  Oh, certainly. |
| 12:02 | 12 | MS. KELLER:  I assume that this won't be displayed |
| 12:02 | 13 | unless he says -- |
| 12:02 | 14 | THE COURT:  Exactly.  That's why your objection's |
| 12:02 | 15 | appropriate, and we had it taken down. |
| 12:02 | 16 | Now, the first part -- the portions I went over, |
| 12:02 | 17 | Ms. Keller, so we're -- |
| 12:02 | 18 | MS. KELLER:  Yes, I understand. |
| 12:02 | 19 | THE COURT:  No.  I want to be sure you understand. |
| 12:02 | 20 | The Sunday, March 10, 2002 at 12:52 p.m. is |
| 12:02 | 21 | displayed and may be displayed. |
| 12:02 | 22 | The Monday, March 11, 2002 at 4:47 p.m. may be |
| 12:02 | 23 | displayed. |
| 12:03 | 24 | The Monday, March 11, 2002, 4:49 p.m. may be |
| 12:03 | 25 | displayed. |

| | | |
|---|---|---|
| 12:03 | 1 | But, unless we have some foundation that he's |
| 12:03 | 2 | heard this -- about this, then he's not included on the rest |
| 12:03 | 3 | of the e-mails. |
| 12:03 | 4 | Now, do you want me to go over those specifically? |
| 12:03 | 5 | MS. KELLER:  No, Your Honor. |
| 12:03 | 6 | THE COURT:  I'm happy to do so. |
| 12:03 | 7 | MS. KELLER:  No. |
| 12:03 | 8 | THE COURT:  Okay. |
| 12:03 | 9 | MS. KELLER:  Thank you. |
| 12:03 | 10 | THE COURT:  Any questions from MGA? |
| 12:03 | 11 | MS. KELLER:  No, Your Honor. |
| 12:03 | 12 | THE COURT:  Satisfied? |
| 12:03 | 13 | Okay.  Now, once again, Mr. Overland, I want to |
| 12:03 | 14 | constantly at least remind this record that you've made a |
| 12:03 | 15 | conscious decision that you don't want to be called upon or |
| 12:03 | 16 | addressed by the Court concerning direct, cross, redirect, |
| 12:03 | 17 | recross with any of these witnesses until you notify the |
| 12:03 | 18 | Court; is that correct? |
| 12:03 | 19 | MR. OVERLAND:  Yes, Your Honor. |
| 12:03 | 20 | THE COURT:  That's a tactical decision. |
| 12:03 | 21 | Is there any objection by any either party? |
| 12:03 | 22 | MR. PRICE:  No objection. |
| 12:03 | 23 | THE COURT:  Mattel? |
| 12:03 | 24 | MGA? |
| 12:03 | 25 | MS. KELLER:  No. |

| | | |
|---|---|---|
| 12:03 | 1 | THE COURT:  Now, is there anything else you'd like |
| 12:03 | 2 | to take up over the lunch hour? |
| 12:03 | 3 | MR. McCONVILLE:  One request, Your Honor.  We've |
| 12:04 | 4 | discussed with the Court, in the past, that we need to get |
| 12:04 | 5 | additional depositions for experts.  We've been attempting |
| 12:04 | 6 | to get a date for a deposition for their expert, and have |
| 12:04 | 7 | been unsuccessful. |
| 12:04 | 8 | THE COURT:  Which expert? |
| 12:04 | 9 | MR. McCONVILLE:  Wagner. |
| 12:04 | 10 | MS. KELLER:  The damages. |
| 12:04 | 11 | THE COURT:  Mr. Zeller? |
| 12:04 | 12 | MR. ZELLER:  We are going to propose, as I told to |
| 12:04 | 13 | Ms. Hurst last night, a date today. |
| 12:04 | 14 | Part of the problem is, is that they're |
| 12:04 | 15 | conditioning their own expert on ours, which should not |
| 12:04 | 16 | happen.  They should go simultaneously. |
| 12:04 | 17 | THE COURT:  They're going to go simultaneously. |
| 12:04 | 18 | MR. ZELLER:  Right.  And so that's -- |
| 12:04 | 19 | THE COURT:  In other words, one expert's not going |
| 12:04 | 20 | to rely on the other expert in the first round, and then |
| 12:04 | 21 | they can compare it, because so many people have |
| 12:04 | 22 | changed -- well, let me just stop there -- depending upon |
| 12:04 | 23 | what other people have said. |
| 12:04 | 24 | And so when will that be?  Saturday?  Excellent. |
| 12:04 | 25 | Saturday sounds good. |

| | | |
|---|---|---|
| 12:04 | 1 | MS. HURST:  Your Honor, our witness is coming from |
| 12:04 | 2 | Chicago, where -- their weather -- we can do Monday or |
| 12:04 | 3 | Tuesday.  We can do simultaneously on Monday or Tuesday. |
| 12:04 | 4 | MR. ZELLER:  Your Honor, I would prefer -- |
| 12:04 | 5 | THE COURT:  You should probably sit down 'cause |
| 12:04 | 6 | we're gonna spend our lunch hour quibbling about this. |
| 12:05 | 7 | MR. ZELLER:  Honestly, Your Honor, I would ask |
| 12:05 | 8 | that this be deferred until the end of the day.  I had |
| 12:05 | 9 | told -- |
| 12:05 | 10 | THE COURT:  No, no.  You two can get up out of |
| 12:05 | 11 | your chairs and walk towards each other. |
| 12:05 | 12 | Mr. Zeller, as you rise.  Ms. Hurst. |
| 12:05 | 13 | Mr. Bryant, why don't you step down.  This doesn't |
| 12:05 | 14 | involve you, sir.  All right.  Have a nice lunch. |
| 12:05 | 15 | *(Witness exits proceedings.)* |
| 12:05 | 16 | MR. ZELLER:  Since MGA's put us in this position, |
| 12:05 | 17 | where we do not know the schedules of our experts, we'll |
| 12:05 | 18 | just pick Tuesday.  And regardless of whatever those |
| 12:05 | 19 | obligations are -- but I -- |
| 12:05 | 20 | THE COURT:  No.  Why don't we just pick Saturday |
| 12:05 | 21 | or Sunday? |
| 12:05 | 22 | MR. ZELLER:  Because they're claiming he's not |
| 12:05 | 23 | available. |
| 12:05 | 24 | THE COURT:  He'll be here. |
| 12:05 | 25 | MR. ZELLER:  Okay.  Then, let's take Saturday. |

| 12:05 | 1 | THE COURT:  Saturday.  He'll be here.  The weather |
| 12:05 | 2 | will clear up miraculously.  He'll be on a plane and he'll |
| 12:05 | 3 | be here. |
| 12:05 | 4 | MS. HURST:  Your Honor -- |
| 12:05 | 5 | THE COURT:  Counsel, get on the phone.  He's going |
| 12:05 | 6 | to be here.  End of discussion.  Saturday, 8:00 o'clock for |
| 12:05 | 7 | depositions. |
| 12:05 | 8 | MS. HURST:  Your Honor, we have been asking for |
| 12:06 | 9 | this date for weeks.  And we had made it previously clear |
| 12:06 | 10 | what schedule we were available on.  I do not understand why |
| 12:06 | 11 | our expert should be punished because they refused to give |
| 12:06 | 12 | us a date.  Our expert and lawyers are available on Monday |
| 12:06 | 13 | and Tuesday for this.  This is not anything that trial |
| 12:06 | 14 | counsel are handling. |
| 12:06 | 15 | THE COURT:  Sunday also. |
| 12:06 | 16 | I'm in recess now. |
| 12:06 | 17 | MS. HURST:  Your Honor, our witness is not |
| 12:06 | 18 | available on Saturday. |
| 12:06 | 19 | THE COURT:  We're in recess. |
| 12:06 | 20 | *(Lunch recess held at 12:06 p.m.)* |
| 12:07 | 21 | *(Further proceedings reported by Jane Sutton* |
| 12:07 | 22 | *Rule in Volume II.)* |
| 12:07 | 23 | -oOo- |
| 12:07 | 24 | |
| | 25 | |

CV 04-9049 DOC – 2/3/2011 – Day 12, Volume 1 of 3

154

| | | |
|---|---|---|
| 12:07 | 1 | -oOo- |
| 12:07 | 2 | |
| 12:07 | 3 | CERTIFICATE |
| 12:07 | 4 | |
| 12:07 | 5 | I hereby certify that pursuant to Section 753, |
| 12:07 | 6 | Title 28, United States Code, the foregoing is a true and |
| 12:07 | 7 | correct transcript of the stenographically reported |
| 12:07 | 8 | proceedings held in the above-entitled matter and that the |
| 12:07 | 9 | transcript page format is in conformance with the |
| 12:07 | 10 | regulations of the Judicial Conference of the United States. |
| 12:07 | 11 | |
| 12:07 | 12 | Date:  February 3, 2011 |
| 12:07 | 13 | |
| 12:07 | 14 | |
| 12:07 | 15 | _____ |
| 12:07 | 16 | DEBBIE GALE, U.S. COURT REPORTER<br>CSR NO. 9472, RPR |
| 12:07 | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |