QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc., and Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 DOC (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | Hon. David O. Carter |
| MGA ENTERTAINMENT, INC., a California corporation, et al., | **MATTEL'S OBJECTIONS TO MGA PARTIES' JANUARY 28, 2011 AMENDED PROPOSED JURY INSTRUCTIONS** |
| Defendants. | |
| AND CONSOLIDATED ACTIONS | Pre-trial Conference:  January 4, 2011<br>Trial Date:            January 18, 2011 |

1    Plaintiffs Mattel, Inc. and Mattel de Mexico, S.A. de C.V. (collectively,

2    "Mattel"), hereby object to the amended proposed jury instructions submitted by

3    defendants MGA Entertainment, Inc., MGAE de Mexico S.R.L. de C.V., MGA

4    Entertainment (HK) Limited, and Isaac Larian (collectively, the "MGA Parties")

5    on January 28, 2011.  Dkt. No. 9720.  Mattel requests and reserves the right to

6    amend, modify, withdraw and/or supplement the following objections during the

7    trial, including based upon subsequent rulings and the evidence and theories

8    proffered by the parties during the course of the trial.

9

10   DATED:  February 7, 2011           QUINN EMANUEL URQUHART &
                                        SULLIVAN. LLP
11

12                                      By  /s/ Michael T. Zeller
13                                          Michael T. Zeller
                                            Attorneys for Mattel, Inc. and Mattel de
14                                          Mexico. S.A. de C.V.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S OBJECTIONS TO DEFENDANTS' AMENDED PROPOSED JURY INSTRUCTIONS

| DEFENDANTS' PROPOSED INSTRUCTION | PAGE |
| --- | --- |
| Privilege Of Competition | 2 |
| Damages—Aiding And Abetting Breach Of Duty Of Loyalty | 6 |
| Preliminary Instruction—Copyright | 11 |
| Copyright Interests—Joint Authors | 21 |
| Copyright:  Accused Works | 28 |
| Test For Copyright Infringement | 31 |
| Copyright—Damages | 42 |
| Copyright—Damages—Defendant's Profits | 47 |
| Unfair Competition—Fraudulent Practices | 52 |
| Unfair Competition—Restitution | 55 |

605.07975/3950904.3

MATTEL'S OBJECTIONS TO DEFENDANTS' AMENDED PROPOSED JURY INSTRUCTIONS

## <u>GENERAL OBJECTIONS</u>

Each of the following General Objections is hereby incorporated in full into the objections to specific jury instructions set forth below.

1.      Mattel objects generally to Defendants' proposed instructions to the extent they materially deviate, with no good cause, from applicable model instructions and are argumentative or biased.

2.      Mattel objects to Defendants' proposed jury instructions on the ground that they incorporate erroneous statements of law and are inconsistent with applicable legal standards as set forth in the briefing on Mattel's motions for summary judgment, motions *in limine* and proposed jury instructions, which are all hereby incorporated herein by reference.

3.      Mattel reserves the right to assert additional General and Specific Objections to Defendants' proposed jury instructions.

605.07975/3950904.3

1  **DEFENDANTS' PROPOSED INSTRUCTION RE PRIVILEGE OF**
2  **COMPETITION**

3  **PRIVILEGE OF COMPETITION**

4      Ordinarily, a company that engages in business with the primary aim of
5  making profits for itself is not liable for business losses suffered by a competitor.
6  A company has a legal privilege, known as the privilege of competition, that gives
7  it the right to seek profits for itself, at the expense of its competitors and potential
8  competitors.  The privilege of competition is an affirmative defense to a claim of
9  intentional interference with contractual relations.

10      The elements of the privilege of competition are:

11      1.    Mattel and MGA Entertainment, Inc. were engaged in economic
12  competition;

13      2.    The economic relationships between Mattel and Carter Bryant, Ana
14  Cabrera, Beatriz Morales, Maria Salazar, and Ryan Tumaliuan concern matters
15  involved in the competition between Mattel and MGA Entertainment;

16      3.    MGA Entertainment, Inc. or Isaac Larian did not use wrongful means;

17      4.    The purpose of MGA Entertainment, Inc. or Mr. Larian was at least in
18  part to advance MGA Entertainment Inc.'s interest in competing with Mattel.

19      **Authority:**  BAJI 7.86 (modified)

20

21  **MATTEL'S OBJECTIONS:**[1]

22      1.    Defendants' instruction has no place in this case in light of Mattel's
23  claims.  The privilege of competition normally applies where a claim is brought for
24  interference with prospective economic advantage.  *See, e.g.*, *Bed, Bath & Beyond*

25

---

26      [1]   While MGA did not amend its proposed instruction regarding Privilege of
27  Competition, Mattel hereby respectfully submits this further objection to that
instruction, which supersedes the previously stated objections.
28

1  *of La Jolla, Inc. v. La Jolla Village Square Venture Partners*, 52 Cal. App. 4th 867,

2  880-81 (1997) ("California law has long recognized a 'competition privilege'

3  which protects one from liability for inducing a third person not to enter into a

4  prospective contractual relation with a business competitor.") (internal citations

5  and quotations omitted).  The privilege has also been held to apply to a claim for

6  interference with an employee's at-will employment contract by inducing that

7  employee to leave his employer since that is, in essence, a claim for interference

8  with prospective advantage (there is, in such cases, no contractual obligation

9  preventing the employee from leaving for a new employer).  *San Francisco Design*

10 *Ctr. Assocs. v. Portman Cos.*, 41 Cal. App. 4th 29, 41 (1995) ("The competitive

11 privilege clearly is inapplicable to interference with an existing contract unless the

12 contract is terminable at will."); Restatement (Second) of Torts § 768 ("(1) One

13 who intentionally causes a third person not to enter into a *prospective contractual*

14 *relation* with another who is his competitor or not to *continue an existing contract*

15 *terminable at will* does not interfere improperly with the other's relation if (a) the

16 relation concerns a matter involved in the competition between the actor and the

17 other and (b) the actor does not employ wrongful means and (c) his action does not

18 create or continue an unlawful restraint of trade and (d) his purpose is at least in

19 part to advance his interest in competing with the other.") (emphasis added).

20      Mattel's claims, unlike the claims to which this defense is properly

21 addressed, are based on MGA's theft of information and encouragement of

22 Mattel's employees to breach their *existing* duties and obligations to Mattel.

23 Accordingly, no instruction on this defense should be given as to MGA's claims;

24 Mattel is aware of no authority that this defense insulates from liability a party's

25 inducement of a third party to breach an existing duty to a competitor.  *See, e.g.*,

26 *Castaline v. Aaron Mueller Arts*, 2010 WL 583944, at *5-6 (N.D. Cal. Feb. 16,

27 2010) (rejecting competition privilege defense because defendant's refusal to sell

28 to third parties "may have interfered with actual contracts and thus constituted

1  'wrongful means'"; "Courts have drawn a distinction between contractual relations

2  that are 'merely contemplated or potential' and those that are more definite.")

3  (citations omitted); *San Francisco Design Ctr. Assocs.*, 41 Cal. App. 4th at 40

4  ("The primary difference between interference with prospective economic

5  advantage and interference with contract is that a broader range of privilege to

6  interfere is recognized when the relationship or economic advantage interfered

7  with is only prospective.  It is also settled that an affirmative defense to the tort of

8  interference with prospective economic advantage is the privilege of

9  competition."); *see also Los Angeles Land Co. v. Brunswick Corp.*, 6 F.3d 1422,

10 1431 (9th Cir. 1993) ("Because the record shows that L.A. Land's contractual

11 relations with Timberlake were 'merely contemplated or potential,' Brunswick was

12 free to 'refuse to deal with third parties [e.g., Timberlake] unless they cease

13 dealing with' L.A. Land") (citations omitted).

14        Indeed, even the model instruction Defendants cite as authority provides the

15 defense only applies to "[inducing breach of a contract terminable at will]" or

16 "[interference with contractual relations where the contract was terminable at

17 will]."  *See* BAJI 7.86 (2010).  Defendants' proposed instruction replaces this

18 language in the model instruction with "intentional interference with contractual

19 relations," but they offer no authority that the defense applies to a claim for

20 interference with existing contractual obligations.

21        2.     If the instruction is given, it should be far more limited in scope.  The

22 instruction should make clear the defense does not apply to Mattel's trade secret

23 misappropriation claims or Mattel's claims based on MGA's encouragement of

24 Mattel's employees' disloyal work for MGA's benefit.

25        3.     Defendants' instruction improperly modifies the model instruction,

26 BAJI 7.86, by inserting the following language:  "A company has a legal privilege,

27 known as the privilege of competition, that gives it the right to seek profits for

28 itself, at the expense of its competitors and potential competitors."

1         4.     Defendants' instruction fails to specify that Defendants bear the

2    burden of proving the defense by a preponderance of the evidence.

3         5.     To the extent the Court decides, over Mattel's objections, to give any

4    "Privilege of Competition" instruction, Mattel respectfully requests that the Court

5    give the following instruction:

6

7                                        *PRIVILEGE OF COMPETITION*

8         *MGA claims that Mattel's claim for intentional interference with contract is*

9    *barred in part by the competition privilege.  The competition privilege protects one*

10   *from liability for inducing a third person not to enter into a prospective*

11   *relationship with a business competitor.  However, this privilege does not allow*

12   *one to induce a third person to breach an existing duty to a business competitor.*

13   *Nor does it permit the misappropriation of trade secrets.*

14        *To prevail on the affirmative defense of competition privilege, MGA must*

15   *prove by a preponderance of the evidence that (a) MGA did not induce the breach*

16   *of any existing duties to Mattel, (b) the relation between MGA and third parties,*

17   *including Carter Bryant, Ana Cabrera, Beatriz Morales, Maria Salazar, Ronald*

18   *Brawer, and Ryan Tumaliuan, concerns a matter involved in the competition*

19   *between Mattel and MGA, (c) MGA did not employ improper means, and (d)*

20   *MGA's purpose was at least in part to advance its interest in competition with*

21   *Mattel.*

22        **Authority:**  *Bed, Bath & Beyond of La Jolla, Inc., 52 Cal. App. 4th at 880-*

23   *81; San Francisco Design Ctr. Assocs., 41 Cal. App. 4th at 42-43; Restatement*

24   *(Second) Torts § 768.*

25

26

27

28

**DEFENDANTS' PROPOSED INSTRUCTION RE DAMAGES—AIDING AND ABETTING BREACH OF DUTY OF LOYALTY**

### DAMAGES—AIDING AND ABETTING BREACH OF DUTY OF LOYALTY

Mattel must prove that it suffered economic injury as a result of the alleged aiding and abetting a breach of the duty of loyalty by MGA Entertainment, Inc. and Isaac Larian.  If Mattel fails to meet its burden of proving that it suffered economic injury, you may not award any damages to Mattel.  If, however, you find that Mattel suffered economic injury as a result of aiding and abetting a breach of the duty of loyalty by MGA Entertainment, Inc. or Mr. Larian, you may consider whether Mattel has proven the amount of such damages.

The measure of damages for breach of the duty of loyalty is the amount of money necessary to place Mattel in the same economic position it would have been in if the duty had not been breached.  In other words, the purpose of awarding damages to Mattel for breach of the duty of loyalty is to make it whole for any injuries it suffered.

In assessing damages for the breach of the duty of loyalty, you may not consider or award damages for the value of the rights to the Bratz dolls or any Bratz related trade secrets, nor may you award lost profits or unjust enrichment relating to Bratz, or ownership of any Bratz work.  You may only award damages for the loss in value of the services of an employee for which Mattel paid but it did not receive as a result of any breach of the duty of loyalty.

**Authority:**  CACI No. 4102 (2008) (as modified); *Bancroft Whitney Co. v. Glen*, 64 Cal. 2d 327, 345-346 & n.10 (1966); accord *Eckard Brandes, Inc. v. Riley*, 338 F. 3d 1082, 1086 (9th Cir. 2002); *Western Med. Consultants, Inc. v. Johnson*, 80 F.3d 1331, 1336-38 (9th Cir. 1996); *Franklin Music Co. v. Am. Broad. Cos.*, 616 F. 2d 528, 532-33, 537 (3d Cir. 1979); *Merger Mgmt. Consulting, Inc. v.*

1   *Wilde*, 920 F. Supp. 219 (D. D.C. 1996); *Abraham Zion Corp. v. Lebow*, 593 F.

2   Supp. 551, 570-71 (S.D.N.Y. 1984), aff'd, 761 F. 2d 93 (2d Cir. 1985); *Seward v.*

3   *Union Pump Co.*, 428 F. Supp. 161 (S.D. Texas 1977); *GAB Bus. Servs., Inc. v.*

4   *Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 424-25 (2000),

5   overruled on other grounds by, *Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004);

6   *Computer Sciences Corp. v. Ferguson*, 74 Cal. Rptr. 86, 92-93 (1968); Restatement

7   (Third) of Agency Sect. 8.04 cmt. c; *MJT Secs., LLC v. Toronto-Dominion Bank*,

8   2007 WL 1725421, at \*\*7-8 (N.D. Cal. June 14, 2007) (elements); *Neilson v.*

9   *Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1119-20 (C.D. Cal. 2003)

10  (intent); *Resolution Trust Corp. v. Rowe*, 1993 WL 183512, at \*6 (N.D. Cal. Feb.

11  8, 1993) (inverse relationship between demonstration of knowledge and substantial

12  assistance); *Mendelsohn v. Capital Underwriters, Inc.*, 490 F. Supp. 1069, 1084

13  (N.D. Cal. 1979) (causation); *Sarkes Tarzian, Inc. v. Audio Devices, Inc.*, 166 F.

14  Supp. 250 (S.D. Cal. 1958) (competitor employer did not conspire to breach duty

15  to former employer where competitor paid at will employee an advance and

16  employee did not disclose intention to work for competitor), aff'd, 283 F.2d 695

17  (9th Cir. 1960); *Gerard v. Ross*, 204 Cal. App. 3d 968, 983 (1988) (intent); *see*

18  *also Richard B. LeVine, Inc. v. Higashi*, 131 Cal. App. 4th 566, 574 (2005); *Casey*

19  *v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005); *Fiol v. Doellstedt*,

20  50 Cal. App. 4th 1318, 1325-26 (1996); *Saunders v. Sup. Ct.* 27 Cal. App. 4th 832,

21  846 (1994); Restatement (Second) of Torts § 876; Cal. Civ. Code §§1709; 3333; 6

22  Witkin, Summary of Cal. Law (10th ed. 2005) Torts, §1717; BAJI 12.57 (as

23  modified)

24

25  **MATTEL'S OBJECTIONS:**

26      1.      Defendants' proposed instruction is contrary to law in that it

27  improperly limits damages for aiding and abetting breach of duty of loyalty to the

28  "value of the services of the employee for which Mattel paid that it did not receive

as a result of any breach of the duty of loyalty." Mattel's instruction is properly modeled on the standard instruction for tort damages, CACI 3901, which does not include any such limitation on the type of harm Mattel can be compensated for.

2. The authority Defendants cite does not support the limitations in Defendants' proposed instruction. CACI 4102 sets forth the elements of a claim for breach of duty of undivided loyalty, not aiding and abetting breach of duty of loyalty, and in any event does not contain any limitation on damages to the "value of the services of the employee for which Mattel paid that it did not receive as a result of any breach of the duty of loyalty." Likewise, none of the cases Defendants cite limits damages for aiding and abetting breach of the duty of loyalty to "the loss in value of the services of the employee." *See Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1086 (9th Cir. 2003) ("The Restatement supports the district court's award of disgorgement as a remedy for breach of the duty of loyalty."); *C.H. Reynolds Elec., Inc. v. Spears*, 2004 WL 296994, at *8 (Cal. App. 6 Dist. Feb. 17, 2004) ("An employee is liable to his or her employer for *all* losses caused by his or her breach of fiduciary duty or duty of loyalty.") (emphasis added); Restatement (Second) Agency § 401 ("An agent is subject to liability for loss caused to the principal by any breach of duty"); *T.A. Pelsue Co. v. Grand Enters., Inc.*, 782 F. Supp. 1476, 1487 (D. Colo. 1991) (plaintiff entitled to lost profits which it could reasonably have expected to earn had fiduciary duty or duty of loyalty not been breached); *Radio TV Reports, Inc. v. Ingersoll*, 742 F. Supp. 19, 23 (D.D.C. 1990) (awarding lost profits incurred as a result of breach of duty of loyalty).

3. Defendants' proposed instruction is erroneous and confusing in that, in several places, it refers to damages for breach of duty of loyalty and not damages for aiding and abetting breach of duty of loyalty, the claim that is actually at issue here. Defendants' instruction in the second paragraph that the "measure of damages for breach of duty of loyalty is the amount of money necessary to place

Mattel in the same economic position it would have been in if the duty had not been breached" as well as the language in the first paragraph that Mattel's damages are limited to the amount of any "economic injury" is contrary to law, which recognizes unjust enrichment as a remedy for breach of duty of loyalty and aiding and abetting breach of duty of loyalty.  *See Eckard Brandes, Inc.*, 338 F.3d at 1086 ("Although there are few reported cases addressing the appropriate remedy, those we have found have also required employees to turn over profits received as a result of breaching their duty of loyalty."); Restatement (Second) of Agency § 403 ("If an agent receives anything as a result of his violation of a duty of loyalty to the principal, he is subject to a liability to deliver it, its value, or its proceeds, to the principal."); Restatement of Restitution § 201 (2008) ("Where a fiduciary in violation of his duty to the beneficiary communicates confidential information to a third person, the third person, if he had notice of the violation of duty, holds upon a constructive trust for the beneficiary any profit which he makes through the use of such information."); *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 543 (2007) ("Disgorgement of profits is particularly applicable in cases dealing with breach of a fiduciary duty"; "Active participants in the breach of fiduciary duty by another are accountable for all advantages they gained thereby and are liable to the beneficiary of the duty"); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1127 (C.D. Cal. 2003) (a party who aids and abets a breach of fiduciary duty will be jointly liable) (citing *Heckmann v. Ahmanson*, 168 Cal. App. 3d 119 (1985)); *Xum Speegle, Inc. v. Fields*, 216 Cal. App. 2d 546 (1963) (upholding accounting of all insurance commissions wrongfully diverted to defendant in action for breach of fiduciary duty); *Adams v. Herman*, 106 Cal. App. 2d 92, 99 (1951) ("It is an integral part of that rule that, if the agent makes a secret profit from the agency, the principal may recover such profit.").

4.     Defendants' amended proposed language that the jury "may not consider or award damages for the value of the rights to the Bratz dolls or any

1    Bratz-related trade secrets, nor may you award lost profits or unjust enrichment

2    relating to Bratz, or ownership of any Bratz work" is erroneous because Bryant's

3    work in developing Bratz while employed by Mattel—aided and abetted by

4    MGA—constitutes wrongful competition in violation of his duty of undivided

5    loyalty.  An employee cannot take actions inimical to the best interests of his or her

6    employer.  *See Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 295 (1995); *Huong*

7    *Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 413 (2007).  "The duty of loyalty

8    embraces several subsidiary obligations, including the duty 'to refrain from

9    competing with the principal and from taking action on behalf of or otherwise

10   assisting the principal's competitors,' (Rest. 3d, Agency, § 8.04), the duty 'not to

11   acquire a material benefit from a third party in connection with . . . actions taken . .

12   . through the agent's use of the agent's position' (id., § 8.02)."  *Huong Que, Inc*.,

13   150 Cal. App. 4th at 416.  Examples of breach would include "engag[ing] in a

14   competing business even outside of his working hours."  *Charles T. Powner Co*.,

15   91 Cal. App. at 102; *see also Puritas Laundry Co. v. Green*, 15 Cal. App. 654, 660

16   (1911) ("[W]hen a servant becomes engaged in a business which necessarily

17   renders him a competitor, a rival of his master, no matter how much or how little

18   time he devotes to it, he has an interest against his duty.").  Mattel is entitled

19   recover for all injuries, as well as disgorgement of any profits, attributable to

20   MGA's aiding and abetting of Bryant's development of Bratz as a competing

21   product in breach of his duty of loyalty.

22          5.      Mattel requests that the Court adopt Mattel's proposed jury

23   instruction, which conforms to CACI 3901 regarding damages for tort claims.  *See*

24   Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 151.

25

26

27

28

**DEFENDANTS' PROPOSED INSTRUCTION RE PRELIMINARY INSTRUCTION—COPYRIGHT**

**17.0**

**PRELIMINARY INSTRUCTION—COPYRIGHT**

Mattel claims ownership of the copyright in certain works and seeks damages against MGA Entertainment, Inc. ("MGA"), MGA Entertainment (HK) Limited ("MGA HK"), and Isaac Larian, for copyright infringement.  MGA, MGA HK, and Mr. Larian deny that Mattel owns the copyrighted works at issue and also deny that they infringed the copyright in any such works.  If you determine that Mattel owns one or more of the copyrighted works at issue, you will be asked to determine whether certain Bratz dolls, specifically the first generation dolls (Cloe, Yasmin, Sasha, and Jade) and/or either of two later generation dolls, Ooh La La Cloe or Formal Funk Dana, infringe those works.

## DEFINITION OF COPYRIGHT

The owner of a copyright has the right to exclude any other person from reproducing, preparing derivative works from, distributing, performing, displaying, or using the work covered by copyright for a specific period of time.

A copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, mask works fixed in semiconductor chip products, or a computer program.

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles or discoveries cannot themselves be copyrighted.

The copyrighted work must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

505.07975/3950904.3

1    I have determined that certain elements of the Carter Bryant drawings and
2  preliminary Bratz doll sculpt are not original or subject to copyright protection.  I
3  will identify those elements for you in later instructions.

4                        COPYRIGHT INTERESTS

5    The copyright owner may transfer to another person all or part of the
6  owner's property interest in the copyright, that is, the right to exclude others from
7  reproducing, preparing a derivative work from, distributing, performing, or
8  displaying, the copyrighted work.  To be valid, the transfer must be in writing.  The
9  person to whom a right is transferred is called an assignee.

10   Mattel claims that Carter Bryant assigned the copyrighted works to Mattel.
11 MGA, MGA HK, and Mr. Larian claim that Carter Bryant assigned the
12 copyrighted works to MGA.

13                      COPYRIGHT REGISTRATION

14   MGA has registered certain of the works at issue with the U.S. Register of
15 Copyrights and obtained certificates of copyright for those works.  The works
16 registered by MGA are:

17   [Insert to be defined after presentation of evidence]

18   Mattel has also sought and obtained copyright registrations for various of the
19 works at issue in this case.

20   [Insert to be defined after presentation of evidence]

21   A copyright registration does not determine the degree, scope, or amount of
22 original protected expression in the works.

23                    MATTEL'S BURDEN OF PROOF

24   Mattel contends that the defendants have infringed its copyrights.  Mattel
25 has the burden of proving by a preponderance of the evidence that Mattel is the
26 owner of the copyrights and that MGA, MGA HK, or Mr. Larian copied original
27 elements of the copyrighted works.  Preponderance of the evidence means that you

28

1  must be persuaded by the evidence that it is more probably true than not true that

2  the copyrighted work(s) were infringed.

3  ## PROOF OF COPYING: SCULPTS

4  To prove that MGA or Mr. Larian infringed any copyrighted sculpt(s) or

5  drawing(s) of a sculpt that you find is owned by Mattel, Mattel must prove that

6  MGA, MGA HK, or Mr. Larian had access to such work(s) and that the Bratz doll

7  sculpts are virtually identical to such work(s).

8  ## PROOF OF COPYING: SKETCHES

9  To prove that MGA infringed any copyrighted sketch(es) that you find is

10  owned by Mattel, Mattel must prove that MGA, MGA HK, or Mr. Larian had

11  access to such work(s) and that there are substantial similarities between the Bratz

12  dolls and any such work(s).  In making this determination, you must disregard

13  similarities in unprotectable ideas and unprotectable elements of the works at issue.

14  ## LIABILITY FOR INFRINGEMENT

15  One who reproduces, prepares derivative works from, or distributes a

16  copyrighted work without authority from the copyright owner during the term of

17  the copyright, infringes the copyright.

18  ## VICARIOUS INFRINGEMENT

19  MGA HK or Mr. Larian is liable for copyright infringement by another if

20  MGA HK or Mr. Larian has profited directly from the infringing activity and the

21  right and ability to supervise the infringing activity, whether or not MGA HK or

22  Mr. Larian knew of the infringement.

23  ## CONTRIBUTORY INFRINGEMENT

24  MGA HK or Mr. Larian is liable for copyright infringement by another if

25  MGA HK or Mr. Larian knew or should have known of the infringing activity and

26  induced or materially contributed to the activity.

27

28

505.07975/3950904.3

-13-

MATTEL'S OBJECTIONS TO DEFENDANTS' AMENDED PROPOSED JURY INSTRUCTIONS

1

<u>DEFENSES TO INFRINGEMENT</u>

2          MGA, MGA HK, and Mr. Larian contend that there is no copyright

3 infringement.  There is no copyright infringement if you find that Mattel does not

4 own any of the copyrighted works at issue, that the defendants independently

5 created the challenged works, or that the only items you find have been copied are

6 unprotectable elements, as explained more fully below.

7          **Authority:** 9th Cir. Civ. Jury Instr. 17.0 (2007); *Mattel, Inc. v. MGA*

8 *Entertainment, Inc.*, 616 F.3d 904, 917(9th Cir. 2010); Dkt. # 9538 at 12-29 (Order

9 on Motions for Summary Judgment); 37 CFR § 202.20(b)(2)(i-ii); 17 U.S.C. §

10 410(c)

11

12 **MATTEL'S OBJECTIONS:**

13          1.      This proposed instruction, which is more than three pages in length, is

14 too long and confusing to be useful to the jury.

15          2.      It is both incomplete and overbroad.  To the extent this proposed

16 introductory instruction addresses relevant issues, these are, or should be,

17 addressed in more detailed and specified instructions.  Addressing them in an

18 "overview" or "introductory" format omits critical elements and information, as

19 evidenced by the more detailed instructions that follow.  This instruction also is

20 overbroad as it references irrelevant issues, including its identification of types of

21 works that may be subject to copyright protection but are not at issue in this case

22 (such as musical and dramatic works), and defenses that Defendants have not

23 properly asserted (such as independent creation).

24          3.      Defendants describe Mattel's copyright infringement claim as

25 including only "the first generation dolls . . . and/or either of two later generation

26 dolls," while failing to indicate that Mattel's claim also includes infringement by

27 the final Bratz production sculpt that was incorporated into all or almost all MGA's

28 Bratz dolls.  The Court has already found disputed questions of fact concerning

1  whether the final Bratz production sculpt is infringing.  *See* Amended Order on

2  Summary Judgment Motions (Dkt. No. 9600) at 15-16.  Defendants also fail to

3  identify Mattel's claims based on Defendants' infringement of Mattel's rights in

4  the Bratz characters or infringement of the specific compilation or arrangement of

5  elements in Mattel's copyrighted Bratz works.

6       4.     This instruction misleadingly presents the elements MGA claims the

7  Court has found are "not original or subject to copyright protection."  It is

8  confusing to state that certain "elements" are not "protectable" without providing

9  any context concerning the relevance of protectable or unprotectable elements, and

10 without explaining the relevance of even unprotected elements, including to a

11 claim of infringement of the compilation of elements.

12      5.     Similarly, it is biased for Defendants to purport to identify what a

13 copyright registration "does not determine" without also stating that a certification

14 of registration carries a presumption of originality.

15      6.     Defendants' references to their purported receipt of an assignment of

16 the copyrights in Bryant's Bratz works and to their own registrations of the

17 copyrights in those works are misleading and irrelevant.  Whether MGA claims to

18 own or has registered copyrights in works that Mattel claims to own has no bearing

19 on whether Mattel will be able to establish its ownership of those works or whether

20 Defendants infringed Mattel's copyrights in them.  That is particularly so in light

21 of the Court's dismissal of MGA's bona fide purchaser / 17 U.S.C. § 205 defense,

22 which asserted (wrongly, as the Court held) that MGA had priority over Mattel

23 based on Bryant's purported assignment of rights to MGA.  *See* Amended Order

24 on Summary Judgment Motions (Dkt. No. 9600) at 118.  This part of Defendants'

25 instruction also is incomplete in that MGA has not proposed "inserts" for which it

26 has left blanks.

27      7.     Defendants' statement that Mattel "claims that Carter Bryant assigned

28 the copyrighted works to Mattel" is incomplete in that it ignores other bases

-15-

1 through which Mattel claims ownership of Bryant's works, including through the

2 work-for-hire doctrine.

3        8.    Defendants' statement that the jury "must disregard similarities in

4 unprotectable ideas and unprotectable elements of the works at issue" is erroneous.

5 Even "unprotectable" elements are relevant to the copyright infringement test,

6 including to the initial stage of the extrinsic test and the entirety of the intrinsic

7 test, as discussed further below.  *See* Mattel's Objection to Defendants' Proposed

8 Jury Instruction re Test for Copyright Infringement, *infra*.

9        9.    Defendants' statement that Mattel must prove "that the Bratz doll

10 sculpts are virtually identical to such work(s)" misstates the applicable test for

11 copyright infringement.  As discussed below, Mattel is required to prove the

12 sculpts are "virtually identical overall" to Mattel's copyrighted works or that there

13 are "substantial similarities" between the protected elements of such works.  *See*

14 *Mattel, Inc. v. MGA Entm't, Inc*., 616 F.3d 904, 914-16 (9th Cir. 2010).

15       10.    It is incorrect for Defendants to state that "there is no copyright

16 infringement [if] the only items you find have been copied are unprotectable

17 elements," because such a statement overlooks Mattel's claim to infringement of

18 the specific compilation or arrangement of elements in Bryant's works – a

19 compilation of even unprotectable elements is itself protectable.  *See, e.g.*, *Feist*

20 *Publ'ns, Inc. v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 348 (1991)

21 ("[E]ven a directory that contains absolutely no protectible written expression, only

22 facts, meets the constitutional minimum for copyright protection if it features an

23 original selection or arrangement."); *Dream Games of Arizona, Inc. v. PC Onsite*,

24 561 F.3d 983, 988 (9th Cir. 2009) ("Because it is appropriate for the jury to see

25 unprotected elements of a copyrighted work so that it may assess whether the

26 combination of such elements warrants protection, the district court did not abuse

27 its discretion in allowing into evidence complete Fast Action Bingo screen displays

28 that include unprotectable elements.").  When the compilation is not of factual

1  works, such as here, the compilation is infringed by substantially similar works.

2  *See Mattel*, 616 F.3d at 916 ("The district court didn't err in affording the doll

3  sketches broad copyright protection against substantially similar works."); *Lone*

4  *Wolf McQuade Assocs. v. CBS Inc*., 961 F. Supp. 587, 594 (S.D.N.Y. 1997)

5  (evaluating infringement of compilation of non-factual elements in "J.J. McQuade"

6  character for substantial similarity).

7       11.    Defendants' instruction erroneously ignores Mattel's claim to

8  infringement of its rights in Bratz characters.  *See Walt Disney Prods. v. Air*

9  *Pirates*, 581 F.2d 751, 754 (9th Cir. 1978) (copyright protection extends to

10  characters); *Warner Bros. Inc. v. Am. Broad. Cos*., 720 F.2d 231, 235 (2d Cir.

11  1983) ("Plaintiffs own the copyright in various works embodying the character of

12  Superman and have thereby acquired copyright protection for the character

13  itself.").  As with Mattel's claim for infringement of the compilation of elements in

14  the Bratz works, the jury may, contrary to Defendants' instruction, consider

15  "unprotectable" elements in deciding whether MGA infringed Mattel's rights in

16  the Bratz characters, and in particular may decide whether the compilation of such

17  unprotectable elements created protected character rights.  *See, e.g.*, *Bach v.*

18  *Forever Living Prods. U.S., Inc.*, 473 F. Supp. 2d 1127, 1134-1135 (W.D. Wash.

19  2007) ("[C]ases . . . that have focused substantially on character infringement,

20  rather than considering the character as one element of an entire story, . . . have not

21  done a . . . dissection" of protectable and unprotectable elements, but instead have

22  focused on "the unique combination of elements that makes up a protected

23  character."); *Anderson v. Stallone*, 1989 WL 206431, at *7-8 (C.D. Cal. Apr. 25,

24  1989) (considering combination of elements of character, including physical and

25  emotional characteristics, speaking mannerisms, interrelationships, and name of

26  the character); *Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Co., Inc.*,

27  900 F. Supp. 1287, 1296 (C.D. Cal. 1995) (James Bond character subject to

28  protection based on combination of characteristics); *see also Hogan v. DC Comics*,

1   48 F. Supp. 2d 298, 311 (S.D.N.Y. 1999) (concluding that although certain

2   identified similarities between characters "are unoriginal, and therefore,

3   unprotectable elements, plaintiffs could still prevail on a claim for copyright

4   infringement if the way in which the two works express these ideas is substantially

5   similar or these elements have been combined in an original way").

6       12.   Defendants' reference to a defense of "independent creation" is off

7   point.  Defendants raised no such defense in their Reply to Mattel's Fourth

8   Amended Answer and Counterclaims (Dkt. No. 8578) or in the parties' proposed

9   Final Pretrial Conference Order (*see* Amended Final Pretrial Conference Order at

10  19-20), and they do not propose a jury instruction for it.  Any such defense is

11  waived.  *S. Cal. Retail Clerks Union and Food Emp'rs Joint Pension Trust Fund v.*

12  *Bjorklund*, 728 F.2d 1262, 1264 (9th Cir. 1984) ("issues not preserved in the

13  pretrial order have been eliminated from the action").

14      13.   Mattel objects to the terms "sketches" and "preliminary sculpt" as

15  applied to Bryant's designs as derogatory and biased.

16      14.   To the extent the Court decides, over Mattel's objections, to give any

17  "preliminary" instruction on Mattel's copyright infringement claim, Mattel

18  requests that the Court adopt the following instruction:

19

20                              *17.0*

21              *PRELIMINARY INSTRUCTION—COPYRIGHT*

22      *As explained in earlier instructions, Mattel claims ownership of copyrights*

23  *in Carter Bryant's Bratz-related drawings, designs, sculpts and characters*

24  *prepared or created while Mr. Bryant was a Mattel employee, and Mattel seeks*

25  *damages against Defendants for copyright infringement.  Defendants deny that*

26  *Mattel owns the copyrights in Mr. Bryant's Bratz-related works and further deny*

27  *that they infringed those copyrights.  To help you understand the evidence in this*

28  *case, I will explain some of the legal terms that may be relevant to Mattel's*

05.07975/3950904.3

1  copyright infringement claim.  These terms are provided in this instruction by way
2  of background and introduction, and they will be used and discussed further in
3  other instructions that will follow.

4

5  DEFINITION OF COPYRIGHT
6      The owner of a copyright has the right to exclude any other person from
7  reproducing, distributing, performing, displaying, or preparing derivative works
8  based on the work covered by copyright for a specific period of time.
9      Copyright law protects literary works, characters, pictorial works, graphic
10 works, and sculptural works, among other types of works.  Ideas and concepts
11 cannot themselves be copyrighted, but the works that embody those ideas and
12 concepts may be.  The copyrighted work must be original.  An original work that
13 closely resembles other works can be copyrighted so long as the similarity between
14 the two works is not the result of copying.

15

16 COPYRIGHT INTERESTS
17     The copyright owner may transfer to another person all or part of the
18 owner's property interest in the copyright; that is, the right to exclude others from
19 reproducing, preparing a derivative work from, distributing, performing, or
20 displaying, the copyrighted  work.  The person to whom a right is transferred is
21 called an assignee.
22     You have previously been instructed on the grounds and bases on which
23 Mattel claims ownership of the copyrights in Mr. Bryant's Bratz-related works.

24

25 PROOF OF COPYING
26     To prove that the Defendants copied Mattel's works, Mattel may show that
27 the Defendants had access to Mattel's copyrighted works and that there are
28

1    *substantial similarities between the Defendants' Bratz products and Mattel's*

2    *copyrighted works.*

3

4    *LIABILITY FOR INFRINGEMENT*

5         *One who reproduces, prepares derivative works from, distributes or displays*

6    *a copyrighted work without authority from the copyright owner during the term of*

7    *the copyright, infringes the copyright.  Copyright may also be infringed by*

8    *vicariously infringing and contributorily infringing Mattel's works.*

9         ***Authority****:  9th Cir. Civ. Jury Instr. 17.0 (2007) (modified).*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **DEFENDANTS' PROPOSED INSTRUCTION RE COPYRIGHT**
2  **INTERESTS—JOINT AUTHORS**

3                                    **17.7**

4                **COPYRIGHT INTERESTS—JOINT AUTHORS**

5        If you determine that Mattel is the owner of any Bryant sketch or
6  preliminary Bratz doll sculpt, then you must determine whether or not MGA,
7  MGA HK and/or Isaac Larian is a joint author of any such work.

8        A joint work is a work prepared by two or more authors. At the time of the
9  joint work's creation, a joint work must have two or more authors, and

10       1.      each author must have made a substantial and valuable contribution to
11  the work;

12       2.      each author must have intended that their contributions be merged into
13  inseparable or interdependent parts of a unitary whole; and

14       3.      each author must have contributed material to the joint work which
15  could have been independently copyrighted.

16       Each author of a joint work shares an undivided interest in the entire joint
17  work.

18       In deciding whether parties intended their contributions to be merged in
19  element 2, above, you may consider whether they signed a written agreement
20  stating that the copyright in the work is to be jointly owned.  If there is no such
21  agreement, you may consider whether:

22       a.      both parties exercised control over the work. This is the most
23  important factor;

24       b.      both parties' actions showed they shared the intent to be co-authors
25  when they were creating the work, for instance by publicly stating that the work
26  was their shared project; and

27

28

c.      the audience-appeal of the work depends on the contribution of each party so that the share of each party's contribution in the work's success cannot be appraised.

In making a substantial and valuable contribution to a work, each author's contribution to the joint work need not be equal.

The authors of a joint work are co-owners of copyright in the work.  A co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright.

**Authority:**  9th Cir. Civ. Jury Instr. 17.7 (2007); 17 U.S.C. § 201(a); 17 U.S.C. §§ 101, 201(a); *Oddo v. Ries*, 743 F.2d 630, 632-33 (9th Cir. 1984)

## MATTEL'S OBJECTIONS:[2]

1.      This proposed instruction should not be given, and at a minimum should be placed in context to avoid confusion and prejudice.  Defendants' joint authorship defense is limited to, at most, a sculpt that Defendants claim was prepared jointly by Bryant and Margaret Leahy.  *See* MGA Parties' Statement of Genuine Issues In Support of Opposition To Mattel's Motion for Partial Summary Judgment, Oct. 29, 2010, at Fact No. F 50 ("MGA, and specifically Leahy the sculptor who was specially commissioned by MGA to create the Bratz preliminary sculpts as works-made-for-hire, was an author of works created during the period after Bryant's resignation but before he actually departed Mattel").  Apart from that sculpt, Defendants have no claim that any other of Bryant's works that Mattel claims to own is subject to a joint authorship defense.  This instruction is therefore

_____

[2]   While MGA did not amend its proposed instruction regarding Copyright Interests—Joint Authors, Mattel hereby respectfully submits this further objection to that instruction, which supersedes the previously stated objections.

1    overly broad and misleading to the extent it allows the jury to infer that more than

2    just the single sculpt is possibly subject to this defense.

3           2.     This instruction should not be given at all because it does not apply

4    even to that sculpt.  As Defendants acknowledge in their instruction, this doctrine

5    has relevance only if Mattel "is the owner" of the copyright in the sculpt:  "If you

6    determine that Mattel is the owner of any Bryant sketch or preliminary Bratz doll

7    sculpt, then you must determine whether or not MGA, MGA HK and/or Isaac

8    Larian is a joint author of any such work."  But if Mattel is the owner, as the

9    instruction assumes, the relevant question, for joint authorship purposes, is whether

10   *Mattel* and MGA, not *Bryant* and MGA, shared the intent to create a joint work.

11   There is no evidence of such intent.  Indeed, if Mattel owns the sculpt as a work-

12   for-hire, Bryant is not even the author of the work; Mattel is.  *See* 17 U.S.C.A.

13   § 201(b) ("In the case of a work made for hire, the employer or other person for

14   whom the work was prepared is considered the author").  There is no evidence

15   Mattel and MGA intended to jointly own the work, and no basis for this

16   instruction.

17          3.     Because it lacks context, this instruction could permit the jury to infer

18   incorrectly that if MGA proves it is a "joint author" of the sculpt, then it also

19   obtains ownership rights in any works on which the sculpt is based, such as

20   Bryant's drawings that are owned solely by Mattel.  To the contrary, even if MGA

21   "jointly authors" the sculpt, the only ownership rights MGA would obtain would

22   be limited to the original expression added to the drawings of which the sculpt is

23   derivative.  *See* 17 U.S.C. § 103(b) ("The copyright in a compilation or derivative

24   work extends only to the material contributed by the author of such work, as

25   distinguished from the preexisting material employed in the work, and does not

26   imply any exclusive right in the preexisting material.  The copyright in such work

27   is independent of, and does not affect or enlarge the scope, duration, ownership, or

28

1  subsistence of, any copyright protection in the preexisting material."). Any

2  instruction on this issue should make that clear.

3       4.    The instruction improperly provides no basis for the jury to determine

4  whether any authorship purportedly contributed by Margaret Leahy belongs to

5  MGA, either because Leahy was an employee at the time she contributed to the

6  work or she was an independent contractor who had assigned her ownership rights

7  in her authorship to MGA. *See* 17 U.S.C. §§ 101, 201(b).  Any instruction on joint

8  authorship should reference the standard for determining whether MGA owns the

9  authorship purportedly contributed by Leahy.

10      5.    Mattel objects to the term "sketch" to describe Bryant's drawings and

11 designs as derogatory.

12      6.    Mattel objects to the inclusion of the first paragraph, which is not

13 included in the model instruction, as misleading and overly broad to the extent it

14 instructs the jury that it "must" consider this defense as to "any" work Mattel

15 owns, even though this defense applies, at most, to a single sculpt.  That language

16 is also incomplete because it omits that a co-owner of a copyright "must account to

17 other co-owners for any profits he earns from licensing or use of the copyright."

18 *Oddo v. Ries*, 743 F.2d 630, 633 (9th Cir. 1984).

19      7.    This instruction fails to inform the jury that merely transforming a

20 two-dimensional drawing into a three-dimensional depiction of the drawing does

21 not amount to creative "authorship" sufficient for copyright protection or joint

22 authorship.  *See Entm't Research Group, Inc. v. Genesis, Creative Group, Inc.*, 122

23 F.3d 1211, 1222-23 (9th Cir. 1997) (rejecting claim that 3D inflatable costumes

24 derived from 2D cartoon possessed sufficient originality to be copyrightable

25 derivative works); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 910 (2d Cir.

26 1980) (the "mere reproduction of the Disney characters in plastic, even though the

27 adaptation of the preexisting works to this medium undoubtedly involved some

28 degree of manufacturing skill, does not constitute originality as this Court has

1   defined the term"); *JCW Invs., Inc. v. Novelty, Inc.*, 289 F. Supp. 2d 1023, 1033

2   (N.D. Ill. 2003) (sculptor was not the author of the sculpture as a 'derivative work'

3   because the sculptor simply converted a two-dimensional design into a three-

4   dimensional object, without sufficient original artistic contribution).

5        8.      MGA's proposed instruction improperly fails to state that MGA bears

6   the burden of proof on its joint authorship defense.  *See Thomson v. Larson*, 147

7   F.3d 195, 200 (2d Cir. 1998) ("A co-authorship claimant bears the burden of

8   establishing that each of the putative co-authors (1) made independently

9   copyrightable contributions to the work; and (2) fully intended to be co-authors.");

10  *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 866 (S.D.

11  Ohio 2008) ("Defendants bear the burden of establishing joint authorship because

12  Plaintiff's certificate of copyright registration indicates that Plaintiff is the sole

13  author of the catalog.") (citing *Hi-Tech Video Prods., Inc. v. Capital Cities/ABC,*

14  *Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995)).

15       9.      To the extent the Court decides to give any instruction on joint

16  authorship, Mattel requests that the Court adopt the following instruction:

17

18                                  *17.7*

19               *COPYRIGHT INTERESTS—JOINT AUTHORS*

20       *MGA claims that, by virtue of work performed by Margaret Leahy, it is the*

21  *joint author of a Bratz doll sculpt that Mattel alleges was prepared while Carter*

22  *Bryant was a Mattel employee.  Mattel denies that MGA is a joint author of any*

23  *Bratz work prepared while Carter Bryant was a Mattel employee.  MGA bears the*

24  *burden of proving it is a joint author of the sculpt at issue.*

25       *For MGA to prove it is a joint author of the sculpt, it must first establish that*

26  *any contribution made to the sculpt by Margaret Leahy was made at a time when*

27  *Ms. Leahy was either an MGA employee performing work for MGA within the*

28  *scope of her employment duties or was an MGA independent contractor who had*

1  *agreed in writing to assign her interest in the sculpt to MGA.  If MGA fails to make*

2  *either of those showings, then it cannot prevail on its joint authorship claim as to*

3  *the sculpt.*

4     *If MGA makes either showing, then you should consider whether Ms.*

5  *Leahy's contribution is sufficient to create joint authorship and if Mattel and MGA*

6  *intended for the work to be a joint work, as explained more fully below.*

7     *To prove that MGA jointly authored the sculpt with Mattel, MGA must prove*

8  *that it was prepared by MGA and Mattel, or individuals on their behalf, and that at*

9  *the time of the joint work's creation,*

10    *1. MGA and Mattel both made a substantial and valuable contribution to the*

11 *work;*

12    *2. MGA and Mattel both intended that their contributions would be merged*

13 *into inseparable or interdependent parts of a unitary whole; and*

14    *3. MGA and Mattel contributed material to the joint work which could have*

15 *been independently copyrighted.*

16    *In deciding whether parties intended their contributions to be merged (in*

17 *element 2, above), you may consider whether they signed a written agreement*

18 *stating that the copyright in the work would be jointly owned.  A written agreement*

19 *stating the copyright in the work would be jointly owned may show that each*

20 *author of a joint work intended that their contribution be merged into inseparable*

21 *or interdependent parts of a unitary whole.  If there is no such agreement, you may*

22 *consider whether:*

23    *a. both parties exercised control over the work. This is the most important*

24 *factor;*

25    *b. both parties' actions showed they shared the intent to be co-authors when*

26 *they were creating the work, for instance by publicly stating that the work was*

27 *their shared project; and*

28

505.07975/3950904.3

MATTEL'S OBJECTIONS TO DEFENDANTS' AMENDED PROPOSED JURY INSTRUCTIONS

1    *c. the audience-appeal of the work depended on the contribution of each*

2    *party so that the share of each party's contribution in the work's success could not*

3    *be appraised.*

4    *A contributor's contribution will not produce a joint work, and a contributor*

5    *will not obtain a co-ownership interest, unless the contribution represents original*

6    *expression that could stand on its own as the subject matter of copyright.  The*

7    *transformation of a two-dimensional work into a three-dimensional work is, by*

8    *itself, not original expression that could stand on its own as the subject matter of*

9    *copyright.*

10   *If you conclude that the sculpt MGA claims was jointly authored is based on*

11   *a work Mattel owns, such as a drawing, MGA's claim to co-ownership of the*

12   *sculpt, if you accept that claim, extends only to the original expression added to*

13   *the work on which the sculpt is based.  MGA's joint authorship of the sculpt does*

14   *not render MGA a joint author of the underlying drawing as well, or of any other*

15   *copyrighted work it did not jointly author.*

16   *If MGA proves it is a joint author of the early sculpt, MGA, as a joint*

17   *author, is still required to account to Mattel for any profits that MGA earned from*

18   *its use of the joint work, and you may award Mattel damages, if you decide that is*

19   *appropriate, based on such profits.*

20   **Authority:**  *9th Cir. Civ. Jury Instr. 17.7 (2007) (modified); 17 U.S.C. §§*

21   *101, 103(b), 201(b).  Oddo v. Ries, 743 F.2d 630, 633 (9th Cir. 1984); JCW*

22   *Investments, Inc. v. Novelty, Inc., 289 F. Supp. 2d 1023, 1033 (N.D. Ill. 2003);*

23   *Entm't Research Group, Inc. v. Genesis, Creative Group, Inc., 122 F.3d 1211,*

24   *1222-23 (9th Cir. 1997); L. Batlin & Son, Inc. v. Snyder, 536 F.2d 486, 490-92 (2d*

25   *Cir. 1976) (en banc).*

26

27

28

MATTEL'S OBJECTIONS TO DEFENDANTS' AMENDED PROPOSED JURY INSTRUCTIONS

1   **DEFENDANTS' PROPOSED INSTRUCTION RE COPYRIGHT:**

2   **ACCUSED WORKS**

3                         **COPYRIGHT:  ACCUSED WORKS**

4          You have seen many Bratz-branded products throughout the course of this

5   trial. The Court has already determined that all of the Bratz products other than six

6   dolls do not infringe any copyright Mattel may own in Carter Bryant's drawings.

7   For purposes of your copyright infringement analysis, the only dolls that you may

8   consider are the four first generation Bratz dolls, Cloe (TX 12286), Yasmin (TX

9   17561), Sasha (TX 17558) and Jade (TX 17551), and Ooh La La Cloe (TX 17546)

10   and Formal Funk Dana (TX 17529).

11          In addition, if you determine that Mattel solely owns a copyright in the

12   exploratory sculpt (TX 1136A) or Carter Bryant's sketches of doll sculpts (TX 5-

13   88, 5-89), then you should also conduct your infringement analysis by comparing

14   any of these three which you determine Mattel solely owns to the Bratz production

15   sculpt (TX 17733).

16          **Authority:**  *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 915-916

17   (9th Cir. 2010); Dkt. # 9600 at 15-16, 18, 28-29, n.9 (Amended Order on Motions

18   for Summary Judgment).

19

20   **MATTEL'S OBJECTIONS:**

21          1.     This proposed instruction is misleading and erroneous.  Mattel's

22   proposed instructions on copyright infringement properly address the scope of

23   Mattel's claim for copyright infringement following the Court's summary

24   judgment rulings.  *See, e.g.*, Mattel's Fourth Amended Proposed Jury Instructions,

25   at 80 ("Mattel claims that the final production sculpt for the Bratz dolls sold by

26   MGA, as well as the Bratz characters, the finished dolls sold by MGA in 2001, and

27   the "Ooh La La Cloe" and "Formal Funk Dana" Bratz dolls sold by MGA later,

28   infringe Mattel's copyrights.").  MGA's instruction omits important aspects of

605.07975/3950904.3

1   Mattel's claim, including its claims that Bratz characters are infringing and that the

2   final production sculpt, which was incorporated in virtually all MGA dolls, is

3   infringing.

4        2.       This instruction is overly broad and erroneous in its suggestion that

5   works other than the identified "accused works" cannot be considered for purposes

6   of the "copyright infringement analysis."  In fact, even "non-accused" Bratz works,

7   and MGA's profits therefrom, are highly relevant to *Mattel's claim to recover*

8   *indirect profits as a form of damages. See* pp. 49-50, *infra*.  Moreover, the jury

9   could be confused by this instruction into believing that "non-accused" works are

10  not relevant to Mattel's trade secret claim based on the theft of Bratz-related trade

11  secrets, as they are.  That claim is not limited by the Court's summary judgment

12  ruling on Mattel's copyright infringement claim.

13       3.       Even putting aside the other errors in the instruction, the jury need not

14  know the "Court has already determined" that products other than those on which

15  Mattel bases its claim "do not infringe."  Such an instruction could bias the jury

16  against finding infringement by at-issue works, including by suggesting the Court

17  has already rejected Mattel's claims, which is prejudicial.

18       4.       The second paragraph of the instruction is vague and confusing.  To

19  the extent the statement that "Mattel solely owns a copyright" is a reference to

20  Defendants' joint authorship defense, that reference is confusing, does not track the

21  language of the defense, and should not be included in any event because it

22  wrongly suggests that Mattel bears the burden of establishing "sole" ownership,

23  while actually MGA bears the burden of proving joint authorship.  *See* Mattel's

24  Objections to MGA's Proposed Jury Instruction re Joint Authors, *supra*.  The

25  instruction also improperly limits Mattel's claim to infringement of three specified

26  works (TX 5-88, TX 5-89 and TX 1136A), even though there other works at issue

27  that may be infringed by MGA's sculpt, such as TX 1141.

28

1    5.    Mattel objects to the terms "exploratory sculpt" and "sketches" as

2    derogatory.

3    6.    To the extent the Court decides, over Mattel's objections, to give an

4    instruction on this issue other than those proposed by Mattel, Mattel requests that

5    the Court adopt the following instruction:

6

7    *COPYRIGHT INFRINGEMENT: WORKS AT ISSUE*

8    *Mattel claims that defendants MGA, MGA Hong Kong, and Mr. Larian*

9    *engaged in copyright infringement.  Specifically, Mattel claims the final*

10   *production sculpt for the Bratz dolls sold by MGA, as well as the Bratz characters,*

11   *the finished dolls sold by MGA in 2001, and the "Ooh La La Cloe" and "Formal*

12   *Funk Dana" Bratz dolls sold by MGA later, infringe Mattel's copyrights in the*

13   *Bratz works created by Carter Bryant while he was employed by Mattel.  Mattel*

14   *also claims it is entitled to receive, as damages, profits the Defendants obtained*

15   *from sales of other Bratz products which were caused by the infringement.*

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S OBJECTIONS TO DEFENDANTS' AMENDED PROPOSED JURY INSTRUCTIONS

1   **DEFENDANTS' PROPOSED INSTRUCTION RE TEST FOR COPYRIGHT**
2   **INFRINGEMENT**

3                    **TEST FOR COPYRIGHT INFRINGEMENT**

4          To determine whether the Bratz dolls infringe any sculpts or sketches that
5   you determine Mattel to own, you must engage in a comparison of the
6   protectable elements of any such sculpts and sketches and the first generation
7   Bratz dolls (Cloe, Yasmin, Sasha and Jade) and two later generation dolls, Ooh
8   La La Cloe and Formal Funk Dana.

9          To prove copyright infringement, there are two different standards that
10  Mattel must satisfy. With respect to any sculpts or sketches of sculpts you find
11  Mattel to solely own, Mattel must prove by a preponderance of the evidence that
12  an ordinary reasonable observer would consider the Bratz production sculpt
13  virtually identical overall.

14         With respect to any doll drawings you find Mattel to own, Mattel must
15  prove by a preponderance of the evidence that an ordinary reasonable observer
16  would consider the six Bratz dolls I have identified to be substantially similar to
17  the protectable elements of those drawings.

18         You may not consider unprotectable elements when you make the
19  comparison. I have determined that at least the following elements are
20  unprotectable ideas and must be disregarded when you consider whether the
21  works and the Bratz production sculpt or Bratz dolls are virtually identical or
22  substantially similar:

23         1.      fashion dolls with a bratty look or attitude;

24         2.      a young female fashion doll with exaggerated proportions;

25         3.      dolls sporting trendy clothing;

26         4.      exaggerated features, including an oversized or larger head and feet;

27         5.      larger eyes, thick lips, high cheekbones, slim arms, long legs, and slim
28  torsos;

MATTEL'S OBJECTIONS TO DEFENDANTS' AMENDED PROPOSED JURY INSTRUCTIONS

6.     lips that curve;

7.     the look of a girl who is wearing heavy makeup;

8.     oversized almond-shaped eyes;

9.     angular eyebrows;

10.    the dolls' resemblance to humans;

11.    the presence of hair, head, two eyes and other human features;

12.    human clothes, shoes and accessories;

13.    features necessary to depict a certain age, race, or ethnicity;

14.    "urban" or "rural" appearance;

15.    standard features relative to others (like a thin body or small waist);

16.    postures and poses that mimic the human form or are standard for the effective display of fashionable clothing;

17.    elements necessary to make a fashion doll capable of mass production on an efficient economic scale;

18.    elements necessary to satisfy the basic intended play pattern of a fashion doll, *i.e.*, taking off and putting on clothes and accessories;

19.    standard cosmetics techniques and placement, *i.e.,* blush on cheeks or eyeshadow on eyes.

Based on the evidence presented, you may determine that other elements of the works are similarly unprotectable due to the fact that the elements are not original, are standard features, are utilitarian in purpose or "merge" into the expression of the idea. "Merger" occurs when you determine that the range of available choices for expression of a particular idea is so limited that it would be unfair to allow any one copyright holder to have a monopoly on such feature.

I have determined that the following are protectable elements that can be considered in your infringement analysis: the particular expression of face paint, hair color and style, clothing and accessories, and minute sculptural variations.

1    **Authority:** *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 915-916

2    (9th Cir. 2010); Dkt. # 9600 at 14-17, 28-29, n.9 (Amended Order on Motions for

3    Summary Judgment); *Feist Publications, Inc. v. Rural Telephone Co.*, 499 U.S.

4    340, 349-50 (1991); *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 136

5    (2d Cir. 2004); *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 900-01 (9th Cir. 1987);

6    *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442-43 (9th Cir. 1994);

7    *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 209 (9th Cir. 1988); *Satava v.

8    Lowry*, 323 F.3d 805, 807 (9th Cir. 2003); *Cavalier v. Random House*, 297

9    F.3d 815, 824 (9th Cir. 2002; *Harper House, Inc. v. Thomas Nelson, Inc.*, 889

10   F.2d 197, 207-08 (9th Cir. 1989 ; *Herbert Rosenthal Jewelry Corp. v.

11   Kalpakian*, 446 F.2d 738, 740- 42 (9th Cir. 1 71); *Sid & Marty Krofft Television

12   Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162, 1168 (9th Cir. 1977)

13   ("the idea of a plaster statue of a nude will probably coincide with the

14   expression of that idea when an inexpensive manufacturing process is used")

15   (dictum); *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983 (9th Cir.

16   2009); *Pivot Point Intl, Inc. v. Charlene Prods., Inc.*, 372 F.3d 913, 922 (7th Cir.

17   2004).

18

19   **MATTEL'S OBJECTIONS:**

20       1.    Defendants' proposed instruction regarding the "test for copyright

21   infringement" misstates the copyright infringement test applied in the Ninth Circuit

22   in several respects.  It also misstates the facts and the Court's prior rulings.  It

23   should be rejected in its entirety in favor of Mattel's corresponding proposed

24   instruction.  *See* Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No.

25   9638) at 99.

26       2.    Defendants' proposed instruction ignores entirely the initial

27   "extrinsic" test for infringement, which is an objective test that examines "the

28   similarities between the copyrighted and challenged works and then determine[s]

1  whether the similar elements are protectable or unprotectable." *Mattel, Inc. v.*

2  *MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010); *see also Cavalier v. Random*

3  *House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) ("The 'extrinsic test' is an objective

4  comparison of specific expressive elements."). A jury must consider "evidence

5  under both the extrinsic and intrinsic tests." *See, e.g.*, *Cavalier*, 297 F.3d at 824.

6        3.     Defendants' proposed instruction misapplies the "intrinsic" test for

7  copyright infringement. "The 'intrinsic test' is a subjective comparison that

8  focuses on 'whether the ordinary, reasonable audience' would find the works

9  substantially similar in the 'total concept and feel of the works.'" *Id.* (quoting

10  *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994). At

11  the intrinsic stage, the jury applies the standard for infringement (*i.e.*, substantially

12  similar or virtually identical) that was "determined at the 'extrinsic' stage" to

13  decide "whether an ordinary reasonable observer would consider the copyrighted

14  and challenged works substantially similar (or virtually identical)." *Mattel*, 616

15  F.3d at 914. Contrary to Defendants' instruction that the jury "may not consider

16  unprotectable elements" when it considers "whether the works and the Bratz dolls

17  are virtually identical or substantially similar," no "filtering" of "unprotectable"

18  elements takes place at the intrinsic stage. *See, e.g.*, *Three Boys Music Corp. v.*

19  *Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (even unprotectable elements are

20  considered in evaluating whether "the total concept and feel of the works [are]

21  substantially similar" under the intrinsic test); *Data East USA, Inc. v. Epyx, Inc.*,

22  862 F.2d 204, 208 (9th Cir. 1988) ("Analytic dissection of the dissimilarities as

23  opposed to the similarities is not appropriate under [the intrinsic] test because it

24  distracts a reasonable observer from a comparison of the total concept and feel of

25  the works."); *Express, LLC v. Fetish Group, Inc.*, 424 F. Supp. 2d 1211, 1228

26  (C.D. Cal. 2006) ("[T]he intrinsic test requires that the work's elements be viewed

27  as a whole.") (citations omitted). Mattel also objects to the phrase "make the

28  comparison" as being vague.

4.      Defendants' instruction is incomplete in that it fails to explain that the "ordinary reasonable observer" for purposes of applying the intrinsic test is a young girl.  *See*, *e.g.*, *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 902 (9th Cir. 1987) ("Because children are the intended market for the dolls, [the jury] must filter the intrinsic inquiry through the perception of children."); *Sid & Marty Krofft Television Prods. v. McDonald's Corp.*, 562 F.2d at 1166 (resolving copyright cases involving works directed at children "demands an even more intrinsic determination" because the analysis raises "*the particular factual issue of the impact of the respective works upon the minds and imaginations of young people*") (emphasis added).  In objecting to Mattel's instruction on the grounds that "it purports to define a specialized audience of girls age 6-12" (*see* MGA's Objs. at 149), MGA ignores Mattel's well-established authorities and instead relies on a Fourth Circuit opinion that, contrary to MGA's argument, cited Mattel's authorities with approval and agreed that the "ordinary observer" test must be evaluated through the eyes of the intended audience when such audience "possesses specialized expertise, relevant to the purchasing decision, that lay people would lack," including in the situation where children are the target audience.  *Dawson v. Hinshaw Music Inc.*, 905 F.2d 731, 734-737 (4th Cir. 1990) (noting that its conclusion brings its "analysis into line with *Sid & Marty Krofft Television v. McDonald's Corp.*, . . . , another landmark case involving questions of substantial similarity" in which the court "believed that the perspective of the specific audience for which the products were intended (children) was the relevant perspective for the ordinary observer test.").  Mattel's corresponding proposed instruction for the test for infringement properly identifies the "reasonable ordinary observer" as a "girl between the ages of 6 and 12."  *See* Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 99.

5.      Defendants' instruction misinforms the jury concerning how to apply the "virtual identity" standard of similarity.  Defendants claim it is Mattel's burden

1    to establish virtual identity overall.  However, as the Ninth Circuit made clear, the

2    question is whether there is virtual identity of the works overall, including any

3    unprotected elements, *or* substantial similarity of the protected elements.  *See*

4    *Mattel*, 616 F.3d at 915 n.9, 917.  MGA has acknowledged this.  *See* MGA's Reply

5    In Support of Summary Judgment (Dkt. No. 9170) at 11 ("Under the law of this

6    case, only two comparisons matter with respect the sculpts:  overall virtual

7    identity, and substantial similarity of only the protected elements.").  Mattel's

8    proposed jury instruction recites the applicable test, informing the jury that

9    "[w]hen considering whether Mattel has proven infringement of the sculpts and

10   sculpt drawings it claims are infringed, you should decide whether MGA's works

11   are virtually identical overall to Mattel's works, or whether they are substantially

12   similar in their protected elements."  *See* Mattel's Fourth Amended Proposed Jury

13   Instruction (Dkt. No. 9683) at 99.

14        6.    Defendants' attempt to limit Mattel's copyright infringement claim to

15   "the first generation dolls . . . and two later generation dolls" fails to indicate that

16   Mattel's claim also alleges infringement by the characters and by the final Bratz

17   production sculpt that was incorporated into all or almost all its Bratz dolls.  *See*

18   Amended Order on Motions for Summary Judgment (Dkt. No. 9600) at 15-16.

19        7.    Defendants' listing of the "unprotectable" and "protectable" elements

20   of the works is inaccurate.  Defendants' list of "elements" that "must be

21   disregarded" includes the dolls themselves, in addition to virtually every attribute

22   about them.  Defendants' list also is confusing in that it refers to "elements" the

23   jury may not be able to perceive or understand, to the extent they are even

24   recognizable "elements" at all (such as, "postures and poses that mimic the human

25   form or are standard for the effective display of fashionable clothing"; "elements

26   necessary to make a fashion doll capable of mass production on an efficient

27   economic scale"; and "elements necessary to satisfy the basic intended play pattern

28   of a fashion doll, *i.e.*, taking off and putting on clothes and accessories").

1    According to the instruction, the *only* elements of the works the jury may even

2    consider in deciding whether the Bratz dolls infringe Mattel's copyrights are "the

3    particular expression of face paint, hair color and style, clothing and accessories,

4    and minute sculptural variations."  This is not correct.  The Ninth Circuit

5    recognized "there's a wide range of expression for complete young, hip female

6    fashion dolls with exaggerated features," and the doll drawings are entitled to

7    "broad copyright protection against substantially similar works."  *Mattel*, 616 F.3d

8    at 916.  Although the Ninth Circuit noted that among the features that may be

9    varied are the "face paint, hair color and style, and the clothing and accessories, on

10   top of making minor variations to the sculpt" (*id.*), nothing in its opinion limits the

11   "elements" of the works that may be "protectable" to those it specifically

12   enumerated.

13          Indeed, even if the "idea" or "concept" of "depicting a young, fashion-

14   forward female with exaggerated features, including an oversized head and feet, is

15   . . . unoriginal as well as an unprotectable *idea*" (*Mattel*, 616 F.3d at 915 (emphasis

16   added)), the particularized expression of such an idea is fully protectable.  *See, e.g.*,

17   *Satava v. Lowry*, 323 F.3d 805, 812-13 (9th Cir. 2003) ("An artist may . . . protect

18   the original expression he or she contributes to these ideas.  An artist may vary the

19   pose, attitude, gesture, muscle structure, facial expression, coat, or texture of

20   animal. An artist may vary the background, lighting, or perspective.  Such

21   variations, if original, may earn copyright protection."); *Aliotti v. R. Dakin & Co.*,

22   831 F.2d 898, 900-901 (9th Cir. 1987) ("[T]he eye style and stitching of the Ding-

23   A-Saurs are not dictated by the idea of stuffed dinosaur dolls and thus constitute

24   protectable expression"); *Mattel v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135-

25   36 (2d Cir. 2004) (Barbie's face protected by copyright, including particularized

26   expression of an upturned nose, bow lips, and widely spaced eyes); *Fisher-Price,

27   Inc. v. Well- Made Toy Mfg. Corp.*, 25 F.3d 119, 124 (2d Cir. 1994) (abrogated on

28   other grounds) ("Our de novo comparison of the dolls' protectible features

1  convinces us that an ordinary observer would consider them substantially similar.

2  Both sport the same bright, painted eyes, the same skyward gaze, the same knobby

3  nose, and the same cherubic smile.  Both have oversized heads that feature soft

4  vinyl faces and curly tufts of hair peeking out beneath lace-frilled hoods. These

5  dolls do not merely share features that are common to all dolls; they contain

6  virtually identical expressions of those features."); *Durham Indus., Inc. v. Tomy*

7  *Corp.*, 630 F.2d 905, 915-17 (2d Cir. 1980) (among other features, court compared

8  similarity of proportion of head to body, shape of face, separation of eyes, skin

9  tone, eye color, eye lashes, shape of nose, size of mouth, length of body, tilt of

10 head); *Austin Prods., Inc. v. F.D.F. Design Studio, Inc*., 1990 WL 198741, at *4-5

11 (E.D.N.Y. Nov. 2, 1990) (considering stance, body shape, pose, and facial

12 expression three dimensional figures); *Original Appalachian Artworks, Inc. v*

13 *McCall Pattern Co*., 649 F. Supp. 832, 835 (N.D. Ga. 1986) (considering head

14 proportion, flatness of face, shape of eyes, separation of eyes, shape of nose, body

15 shape, torso, shoulders, belly button, elbows, knees, and ankles of Cabbage Patch

16 Kids); *Fisher-Price Toys v. My Toy Co*., 385 F. Supp. 218, 220-22 (S.D.N.Y.

17 1974) (considering body size, body shape, arms, legs, hands, feet, spacing of eyes,

18 nose, smile, cheeks, and size/shape of head dolls).

19        This Court recognized in ruling on Defendants' motion for summary

20 judgment that a number of features of the copyrighted works that Defendants fail

21 to include in their "list" of protectable features are, in fact, "protectable."  With

22 respect to the doll bodies alone, the Court provided an "illustrative" list of

23 protectable elements, and found similarities among them, including with respect to

24 "the precise shape, size, and placement" of the facial elements (specifically

25 referencing ears and noses); the "overall face shape"; the "precise angles,

26 measurements, and shapes of the sculpts' midsections," including with respect to

27 the shape and proportions of the waists and stomachs; the shapes of the shoulders;

28 the posing (or "flare") of the arms; and the features and shape of the shoulder

1    blades and spines.  *See* Amended Order on Motions for Summary Judgment (Dkt.

2    No. 9600) at 15-16.  With respect to the adorned dolls, the Court found similarities

3    based on protectable elements including the dolls' fashions and hairstyles,

4    accessories, make-up style and color, "anatomical similarities" including eyelash

5    shape and angle, eye shape, the particular expression of the eyes and moles.  *See*

6    Amended Order on Motions for Summary Judgment (Dkt. No. 9600) at 16-24.

7            Thus, contrary to Defendants' instruction, neither this Court nor the Ninth

8    Circuit has held that the particularized expressions of the elements that Defendants

9    purport to exclude entirely from the jury's consideration – including expressions of

10   the eyes, heads, lips and feet – are unprotectable.  Any such ruling would be

11   erroneous.

12           8.       Rather than attempt to list unprotected elements in this way, the better

13   approach is to instruct the jury concerning the types of features and elements that

14   are "unprotectable" so that it understands how to conduct its comparisons.  This

15   would include ideas or concepts themselves and elements that (i) are required by or

16   necessarily result from the idea of the work; (ii) are purely utilitarian, as opposed

17   to creative; or (iii) are unoriginal.  *See* Mattel's Fourth Amended Proposed Jury

18   Instructions (Dkt. No. 9683) at 99.  With such instruction, the jury could then

19   apply the legal standards to the specific works at issue to determine infringement.

20   This is fully consistent with the law.  *See Open Source Yoga Unity v. Choudhury*,

21   2005 WL 756558, at *4 (N.D. Cal. Apr. 1, 2005) (disputes over originality create

22   issues of fact to be determined by trier of fact) (citing *Swirsky v. Carey*, 376 F.3d

23   841, 851 (9th Cir. 2004)); *Dongxiao Yue v. Chordiant Software, Inc.*, 2009 WL

24   4931679, at *2 (N.D. Cal. Dec. 21, 2009), citing to *Dezendorf v. Twentieth*

25   *Century-Fox Film Corp.*, 99 F.2d 850, 850 (9th Cir. 1938) ("Whether a work is

26   sufficiently original to warrant copyright protection is a question of fact.").  *Cf.*

27   *Lucky Break Wishbone Corp. v. Sears Roebuck and Co.*, 373 Fed. Appx. 752, 756-

28   57 (9th Cir. 2010) (approving of jury instruction that "made clear . . . that proving

1   infringement required copying of original elements" but did not also include a

2   "redundant statement that copying of 'unoriginal elements' is not infringement");

3   *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 201 (9th Cir. 1989) (jury

4   instruction did not "adequately explain to the jury which material was, in fact,

5   protectable" because the jury "was not told that blank forms, common property, or

6   utilitarian aspects of useful items are not protectable").

7          The Court itself has recognized that the determination whether an element

8   is unprotectable because it is unoriginal or standard is a factual, not legal, matter.

9   *See* Order Denying Mattel's Motion to Exclude Vilppu (Dkt. No. 9696) at 10

10  ("Mattel is finally mistaken about whether Vilppu renders improper legal opinions.

11  . . . Vilppu merely observes that certain elements of Bryant's works are standard

12  or normal elements that are unoriginal.  This is neither express nor implied legal

13  commentary.").  Defendants likewise have recognized this.  In fact, while

14  Defendants want the Court to list specific elements that are "unprotected," they

15  also want the jury to be instructed on how to find other elements are unprotected.

16  *See* Defendants' Proposed Instruction ("Based on the evidence presented, you may

17  determine that other elements of the works are similarly unprotectable due to the

18  fact that the elements are not original, are standard features, are utilitarian in

19  purpose or "merge" into the expression of the idea.").  That approach is

20  unjustifiable.  The better approach is to provide instruction on how the jury can

21  determine what elements of the works are protectable, and how the jury can then

22  fulfill its role in assessing infringement.

23          9.     Mattel objects to the clause that "Mattel solely owns a copyright" in

24  the second paragraph.  To the extent that statement is a reference to Defendants'

25  purported joint authorship defense, that reference is confusing, does not track the

26  language of the defense, and should not be included in any event because it

27  wrongly suggests that Mattel bears the burden of establishing "sole" ownership,

28

1    while actually Defendants bear the burden of proving joint authorship.  *See*

2    Mattel's Objection to MGA's Proposed Jury Instruction re Joint Authors, *supra*.

3              10.    Defendants' definition of "merger" is biased in its use of the words

4    "unfair" and "monopoly" and vague in its use of the phrase "merger occurs when

5    you determine . . . ."  A definition of "merger" is not needed in any event because

6    the parties' instructions concerning the scope of protection of copyright adequately

7    explain the distinction between ideas and expression (*e.g.*, Mattel's Fourth

8    Amended Proposed Jury Instructions (Dkt. No. 9683) at 89).

9              11.    Mattel objects to the term "sketch" used to describe Bryant's drawings

10   and designs as derogatory and biased.

11             12.    For the reasons set forth above, Defendants' proposed instruction

12   regarding the "test for copyright infringement" should be rejected in its entirety,

13   and Mattel's corresponding instruction should be given:  Mattel's Special Jury

14   Instruction No. 16 (Copyright Infringement—Sufficient Similarity).  *See* Mattel's

15   Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 99.

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **DEFENDANTS' PROPOSED INSTRUCTION RE COPYRIGHT—**
2  **DAMAGES (17 U.S.C. § 504)**

3  **17.22**

4  **COPYRIGHT—DAMAGES (17 U.S.C. § 504)**

5  If you find for Mattel on Mattel's copyright infringement claim, you must
6  determine Mattel's damages.  Mattel is entitled to recover any actual damages in
7  the form of lost profits suffered as a result of the infringement.  In addition, Mattel
8  is also entitled to recover any profits of MGA, MGA HK and/or Mr. Larian
9  attributable to the infringement.  Mattel must prove damages by a preponderance
10  of the evidence.

11  **Authority:**  9th Cir. Civ. Jury Instr. 17.22 (2007) (modified).  Section 504
12  of the Copyright Act does not authorize a reasonable royalty calculated using the
13  *Georgia-Pacific factors*. 1 7 U.S.C. § 504; *In re MobiTV*, 712 F. Supp. 2d 206, 243
14  (S.D.N.Y. 2010) ("ASCAP has been unable to identify any copyright case that has
15  applied the Georgia-Pacific factors . . . ").  *Cf.* 35 U.S.C. § 284; Cal. Civ. Code §
16  3426.3.

17  Rather, in all of the cases where a royalty was approved as a measure of
18  copyright actual damages there was some evidence of an established royalty or a
19  prior royalty negotiation between the parties.  *Wall Data, Inc. v. Los Angeles*
20  *County Sheriff's Dept.*, 447 F.3d 769 (9th Cir. 2006) (approving instruction on lost
21  license fee where there was an established license schedule for All Data's
22  computer software); *Polar Bear Prods, Inc. v. Timex Corp.*, 384 F.3d 700, 704,
23  708-709 (9th Cir. 2004) (permitting lost license fee in copyright case based on an
24  actual rate quoted from the copyright owner to infringer before the dispute arose);
25  *On Davis v. The Gap, Inc.*, 246 F.3d 152, 161-162 (2nd Cir. 2001) (finding
26  evidence of an established royalty because the copyright owner had received
27  royalties for the infringed work in the past).

28

1    The only Ninth Circuit cases that could possibly support a hypothetical

2    negotiation in the copyright context emanate from *Krofft,* which was decided under

3    the 1909 Act.  The 1909 Act provision permitting courts to award a "just" remedy

4    as an "in lieu" remedy in cases where damages and profits failed was replaced in

5    the 1976 Act by the statutory damages scheme of 17 U.S.C. § 504(c).  *See Sid &*

6    *Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157,

7    1174 (9th Cir. 1977) (decided under the 1909 Act, and thus not considering

8    whether a hypothetical negotiation under the *Georgia-Pacific* factors could meet

9    the actual harm requirement of Section 504); *F.W. Woolworth Co. v.*

10   *Contemporary Arts*, Inc., 344 U.S. 228 (1952).

11

12   **<u>MATTEL'S OBJECTIONS:</u>**

13        1.    Defendants' proposed instruction is incomplete in the context of

14   Mattel's claims in this case, as actual damages can take the form of lost profits or a

15   lost license fee.  *See Lucky Break Wishbone Corp. v. Sears Roebuck and Co*., 373

16   F. App'x 752, 757 (9th Cir. 2010) (finding that "[t]he jury is not restricted . . . to

17   awarding lost profits" where evidence of lost profits and a fair market value of a

18   lost license fee were presented to the jury, defendant claimed that lost profits were

19   appropriate actual damage measurement, and defendant claimed jury award was

20   too high to account for appropriate deduction of costs to arrive at lost profits);

21   *Polar Bear Prods. Inc. v. Timex Corp.*, 384 F.3d 700, 708-10 (9th Cir. 2004)

22   (evaluating a claim for both a fair market value lost license fee and lost profits as

23   additive actual damages); *On Davis v. The Gap, Inc.,* 246 F.3d 152, 159 (2001)

24   ("[T]he statute [17 U.S.C. § 504(b)] provides for the recovery of both the

25   infringer's profits and the copyright owner's 'actual damages.'"); *Oracle Corp. v.*

26   *SAP AG*, Case No.07-cv-01658-PJH (N.D. Cal. 2008), Dkt. No. 1005 (final jury

27   instructions).

28

2.      Additionally, Defendants fail to include any instruction regarding the calculation of actual damages as embodied by 9th Cir. Civ. Jury Instr. 17.23 (2007).

3.      Defendants' amended proposed instruction deviates from the model instruction and is contrary to law in that it improperly seeks to limit Mattel's recovery of actual damages to "lost profits."  The model instruction states:  "The plaintiff is entitled to recover the actual damages suffered as a result of the infringement" and does not contain any language limiting actual damages to "lost profits."  Defendants' prior proposed version of this instruction did not include this limitation.

4.      Ninth Circuit Model Instruction 17.23 recognizes that actual damages for copyright infringement includes "the amount of money adequate to compensate the copyright owner for the reduction of the fair market value of the copyrighted work caused by the infringement" and that the "reduction of the fair market value of the copyrighted work is the amount a ***willing buyer would have been reasonably required to a pay a willing seller*** at the time of the infringement for the actual use made by the defendant of the plaintiff's work."  (Emphasis added.)

5.      Defendants' argument that reasonable royalty awards for copyright infringement are limited to cases where there is evidence of an established royalty or a prior royalty negotiation between the parties is contrary to law.  Model Instruction 17.23 expressly recognizes the hypothetical negotiation construct involving "the amount a willing buyer would have been reasonably required to a pay a willing seller."  The Ninth Circuit has held repeatedly, in copyright infringement cases, that "to determine the work's 'market value' at the time of the infringement, ***we have endorsed a hypothetical approach***:  what a willing buyer ***would have been*** reasonably required to pay to a willing seller for [the owner's] work."  *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002) (emphasis added) (internal quotations omitted); *see also Frank Music Corp. v. Metro-Goldwyn-*

1   *Mayer, Inc.*, 772 F.2d 505, 512 (9th Cir. 1985) ("In this circuit, we have stated the

2   test of market value as 'what a willing buyer would have been reasonably required

3   to pay to a willing seller for plaintiffs' work.") (quoting *Sid & Marty Krofft*

4   *Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1174 (9th Cir. 1977)).

5   In *Oracle USA, Inc. v. SAP AG*, 2010 WL 334446 (N.D. Cal. Jan. 28, 2010), the

6   court rejected the argument that the plaintiff was not entitled to actual damages in

7   the form of a hypothetical license fee because plaintiff "never would have been

8   willing to negotiate with its arch-rival SAP for the type of copyright license that

9   [plaintiff] has put at issue here." *Id.* at *3.  As that court explained, the

10  hypothetical negotiation is "an objective, not a subjective, analysis," and the

11  plaintiff was not "precluded from seeking license damages simply because it has

12  never before licensed what [defendant] infringed." *Id.*

13       6.    None of the cases cited by Defendants supports their contention that

14  the reasonable royalty must be based on established royalty or a prior royalty

15  negotiation between the parties.  In *Polar Bear Prods., Inc. v. Timex Corp.*, 384

16  F.3d 700 (9th Cir. 2004), the Ninth Circuit affirmed damages on a previously-

17  offered license rate, but it did not hold that such an established rate is necessary; in

18  fact, to the contrary that court held "it is *not* improper for a jury to consider either a

19  hypothetical lost license fee or the value of the infringing use to the infringer to

20  determine actual damages, provided the amount is not based on 'undue

21  speculation.'" *Id.* at 709 (emphasis added) (*quoting McRoberts Software, Inc. v.*

22  *Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir. 2003)).  In *On Davis v. The Gap, Inc.*,

23  246 F.3d 152 (2d Cir. 2001), the court stated:  "The hypothesis of a negotiation

24  between a willing buyer and a willing seller simply seeks to determine the fair

25  market value of a valuable right that the infringer has illegally taken from the

26  owner.  The usefulness of the test does not depend on whether the copyright

27  infringer was in fact himself willing to negotiate for a license.  The honest

28

1    purchaser is hypothesized solely as a tool for determining the fair market value of

2    what was illegally taken." *Id.* at 172.

3         7.    Nor do Defendants articulate any reasons why the well recognized

4    *Georgia-Pacific* factors should not apply to determine the amount of the

5    reasonable royalty.  The one case they cite, *In re MobiTV*, 712 F. Supp. 2d 206,

6    243 (S.D.N.Y. 2010), noted that "[a]pplying the Georgia-Pacific test in the context

7    of a rate court proceeding would be inappropriate."  The court there contrasted the

8    goals of patent law, which "exists to protect an inventor's right to exploit the

9    monopoly he is granted in his invention in order to induce more creative activity"

10   with the ASCAP "rate court," the role of which "is to protect the market for

11   licenses to play ASCAP music.  Rate courts must 'take seriously the fact that they

12   exist as a result of monopolists exercising disproportionate power over the market

13   for music rights.'"  *Id.* (citations omitted).  The Court did not hold that application

14   of the *Georgia-Pacific* factors to copyright claims outside of the rate court context

15   is inappropriate and in fact its reasoning makes it inappropriate to extend that

16   rationale to this context.

17        8    Mattel requests that the Court adopt Mattel's proposed jury

18   instructions based on 9th Cir. Civ. Jury Instr. Nos.17.22 and 17.23 (2007) and

19   associated Special Instructions, which specify that actual damages can take the

20   form of lost profits or a lost license fee and properly explain the calculation of a

21   lost license fee.  *See* Mattel's Fourth Amended Proposed Jury Instructions (Dkt.

22   No. 9683) at 171-182.

23

24

25

26

27

28

1  **DEFENDANTS' PROPOSED INSTRUCTION RE COPYRIGHT—**
2  **DAMAGES—DEFENDANT'S PROFITS (17 U.S.C. § 504(b))**

3  **17.24**

4  **COPYRIGHT—DAMAGES—DEFENDANT'S PROFITS (17 U.S.C. §**
5  **504(b))**

6  In addition to actual damages, the copyright owner is entitled to any profits
7  of the defendant attributable to the infringement. You may not include in an award
8  of profits any amount that you took into account in determining actual damages.

9  You may make an award of MGA, MGA HK and/or Mr. Larian's profits
10  only if you find that Mattel showed a causal relationship between the infringement
11  and the profits generated from the infringement. You may not consider the profits
12  attributable to any Bratz products other than the six dolls I have identified.

13  MGA's profit is determined by subtracting all expenses from MGA, MGA
14  HK and/or Mr. Larian's gross revenue.

15  MGA, MGA HK and/or Mr. Larian's gross revenue is all of MGA, MGA
16  HK and/or Mr. Larian's receipts from the sale of a products associated with the
17  infringement.  Mattel has the burden of proving MGA, MGA HK and/or Mr.
18  Larian's gross revenue by a preponderance of the evidence.

19  Expenses are all operating costs and production costs incurred in producing
20  MGA, MGA HK and/or Mr. Larian's gross revenue.  MGA, MGA HK and/or Mr.
21  Larian have the burden of proving expenses by a preponderance of the evidence.

22  If you find that a portion of the profit from the sale of a product containing
23  or using the copyrighted work is attributable to factors other than use of the
24  copyrighted work, all of the profit cannot be attributed to the infringement and
25  should not be awarded to Mattel.  MGA has the burden of proving the portion of
26  the profit, if any, attributable to factors other than infringing the copyrighted work.

27  You are instructed that Mr. Larian did not receive any profits as a result of
28  the alleged copyright infringement.

805.07975/3950904.3

-47-

1      **Authority:** 9th Cir. Civ. Jury Instr. 17.24 (2010); 17 U.S.C. § 504(b); Dkt. #

2 9600 at 15-16, 18, 28-29, n.9 (Amended Order on Motions for Summary

3 Judgment); *Uniloc USA, Inc. v. Microsoft Corp*., --- F.3d ---, 2011 WL 9738 at *

4 22-24 (Fed. Cir. Jan. 4, 2011) (rejecting application of the entire market value rule

5 to entire Windows revenue base because of infringing product ID key); *Mackie v.*

6 *Rieser*, 296 F. 3d 909 (2002).

7 ## MATTEL'S OBJECTIONS:

8      1.    Defendants' proposed instruction in paragraph 6 does not accurately

9 follow the model instruction, which reads:  "Unless you find that a portion of the

10 profit from the [use] [sale] of a [product] [work] containing or using the

11 copyrighted work is attributable to factors other than use of the copyrighted work,

12 all of the profit is to be attributed to the infringement.  The defendant has the

13 burden of proving the [portion] [percentage] of the profit, if any, attributable to

14 factors other than [copying] [infringing] the copyrighted work."  Defendants'

15 modification is biased in Defendants' favor and is also confusing in that it suggests

16 that if any part of the profit is attributable to factors other than the copyrighted

17 work, none of the profit should be awarded to Mattel.

18      2.    Additionally, Defendants' proposed instruction erroneously and

19 confusingly states only that "MGA's profit is determined by subtracting all

20 expenses from MGA, MGA HK and/or Mr. Larian's gross revenue."  The

21 instruction should properly read that "MGA's, MGA HK's and/or Larian's profit is

22 determined . . . ."

23      3.    The final sentence of Defendants' proposed instruction, "You are

24 instructed that Mr. Larian did not receive any profits as a result of the alleged

25 copyright infringement," is baseless and improper.  The question of whether Mr.

26 Larian profited from the copyright infringement is a fundamental factual matter to

27 be determined by the jury.  Defendants provide no legal or factual authority for this

28 instruction.

1         4.     Defendant's amended proposed instruction admonished the jury that

2 "[y]ou may not consider the profits attributable to any Bratz products other than

3 the six dolls I have identified."  This statement, which does not appear in the any

4 of Defendants' prior proposed versions of this instruction, is erroneous because it

5 improperly precludes Mattel from seeking and the jury from considering profits

6 attributable to the infringement of Mattel's copyrighted sculpt.  *See* Amended

7 Order on Motions for Summary Judgment (Dkt. No. 9600) at 15-16 (denying

8 MGA's motion for summary judgment with respect to Mattel's claims for

9 infringement of the sculpt).

10         5.     Defendants' addition of the statement "[y]ou may not consider the

11 profits attributable to any Bratz products other than the six dolls I have identified"

12 is also clearly erroneous and inconsistent with Ninth Circuit law that permits a

13 copyright holder to recover both "direct" and "indirect profits" attributable to the

14 infringement.  *See Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 710 (9th

15 Cir. 2004) ("We have repeatedly affirmed the availability of [indirect profits]

16 under the Copyright Act of 1976."); *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir.

17 2002), *cert. denied*, 537 U.S. 1189 (2003) ("On its face, § 504(b) does not

18 differentiate between 'direct profits'—those that are generated by selling an

19 infringing product--and 'indirect profits'—revenue that has a more attenuated

20 nexus to the infringement."); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,

21 772 F.2d 505, 517 (9th Cir. 1985) ("Frank Music I") (holding that "[t]he language

22 of the statute is broad enough to permit recovery of indirect as well as direct

23 profits" and remanding for determination of amount of indirect profits).  "Indirect

24 profits" are, by definition, those realized from the sale of non-infringing products.

25 *See* Melville B. Nimmer & David Nimmer, Nimmer on Copyright, §14.03[B][2][a]

26 (2008); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545 (9th Cir.

27 1989) ("Frank Music II") (affirming district court's award of a portion of the

28 MGM Grand hotel's lodging and gaming profits as "indirect profits" attributable to

MATTEL'S OBJECTIONS TO DEFENDANTS' AMENDED PROPOSED JURY INSTRUCTIONS

605.07975/3950904.3

1   the infringing use plaintiff's songs in musical production staged at the hotel).  In

2   *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004), the

3   court held that Section 504(b) "creates a two-step framework for recovery of

4   indirect profits:  1) the copyright claimant must first show a causal nexus between

5   the infringement and the gross revenue; and 2) once the causal nexus is shown, the

6   infringer bears the burden of apportioning the profits that were not the result of

7   infringement."  To establish this "causal nexus," the copyright holder "must proffer

8   some evidence . . . [that] the  infringement at least partially caused the profits that

9   the infringer generated as a result of the infringement."  *Id.* at 711 (quoting

10  *Mackie v. Rieser*, 296 F.3d at 911); *see also* Comment to Ninth Circuit Model Civil

11  Jury Instructions, 17.24 Copyright—Damages—Defendant's Profits ("The

12  'fundamental standard' for whether a causal nexus is shown as required for an

13  award of indirect profit is that the plaintiff "'must proffer some evidence…[that]

14  the infringement at least partially caused the profits that the infringer generated as

15  a result of the infringement.'") (citing *Polar Bear Prods., Inc.*, 384 F.3d at 711);

16  *Garcia v. Coleman*, 2009 WL 799393, at *3 (N.D. Cal. Mar. 24, 2009) ("Even in

17  an indirect profits case, a copyright owner need only present evidence that "the

18  infringement at least partially caused the profits that the infringer generated as a

19  result of the infringement.") (citing *Polar Bear Prods., Inc.*, 384 F.3d at 711).

20      6.      None of the authorities cited by Defendants support their improper

21  attempt to preclude Mattel from seeking an award of indirect profits.  Both the text

22  and the Comment to Ninth Circuit Model Civil Jury Instructions 17.24 expressly

23  recognize the availability of indirect profits.  Indeed, Defendants' prior version of

24  this proposed instruction included the following language which has now been

25  deleted:  "may make an award of MGA, MGA HK and/or Mr. Larian's profits only

26  if you find that Mattel showed a causal relationship between the infringement and

27  the profits generated *indirectly* from the infringement" (emphasis added).  As set

28  forth above, *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002), also expressly

1 recognizes the availability of indirect profits under 17 U.S.C. § 504(b).  *Uniloc*
2 *USA, Inc. v. Microsoft Corp.*, --- F.3d ---, 2011 WL 9738 at *22-24 (Fed. Cir. Jan.
3 4, 2011), is a patent case that does not address the availability of indirect profits
4 under the Copyright statute.

5      7.    Mattel requests that the Court adopt Mattel's proposed jury instruction
6 which conforms to 9th Cir. Civ. Jury Instr. 17.24 (2007) and associated Special
7 Instructions which explain indirect profits and apportionment in more detail.  *See*
8 Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 183-189.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANTS' PROPOSED INSTRUCTION RE UNFAIR COMPETITION—FRAUDULENT PRACTICES**

**UNFAIR COMPETITION—FRAUDULENT PRACTICES**

For purposes of the Unfair Competition Law, a "fraudulent business act or practice" means any business act or practice that is likely to confuse or deceive members of the public.  To prove that a business act or practice was fraudulent, the claimant need not prove that any members of the public were actually confused or deceived, that any member of the public actually relied upon the fraudulent practice, or that any member of the public sustained damages as a result of the practice.

**Authority:**  Cal. Bus. & Prof. Code § 17204; *Comm. on Children's Television v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (Cal. 1983); William L. Stern, Bus. & Prof. C. § 17200 Practice, §§ 3:154-3:167 (2010).

**MATTEL'S OBJECTIONS:**[3]

1.      Defendants' proposed instruction is unnecessary and inapplicable because the unfair competition claim should be decided by this Court, not the jury. *See* Mattel's Corrected Objections to Defendants' Proposed Jury Instructions (Dkt. No. 9739) at 218 #1.

2.      The instruction erroneously states that "[t]o prove that a business act or practice was fraudulent, the claimant need not prove that any members of the public were actually confused or deceived, that any member of the public actually relied upon the fraudulent practice . . . ."  Actual reliance is required to prove standing under § 17200.  *See Hofstetter v. Chase Home Fin., LLC*, 2010 WL

---

[3]   While MGA did not amend its proposed instruction regarding Unfair Competition—Fraudulent Practices, Mattel hereby respectfully submits this further objection to that instruction, which supersedes the previously stated objections.

05.07975/3950904.3

1  3259773, at *15 (N.D. Cal. Aug. 16, 2010) ("Where a plaintiff asserts that conduct

2  is 'fraudulent' under Section 17200, the plaintiff must also plead actual reliance to

3  meet the standing requirements of the statute.") (citing *Morgan v. AT & T Wireless*

4  *Servs., Inc.*, 177 Cal. App. 4th 1235, 1257 (2009)).

5          3.      The instruction erroneously states that "the claimant need not prove . .

6  . that any member of the public sustained damages as a result of the practice."  If

7  the party bringing an unfair competition claim has not suffered lost money or

8  property, it does not have standing to bring the claim.  *See Kwickset Corp. v.*

9  *Superior Court*, --- Cal. Rptr. 3d ----, 2011 WL 240278, at *6 (Jan. 27, 2011)

10  ("Proposition 64 requires that a plaintiff have lost money or property to have

11  standing to sue.  The plain import of this is that a plaintiff now must demonstrate

12  some form of economic injury.") (internal citation and quotation omitted).  The

13  only case cited by MGA has been overruled.  *See Comm. on Children's Television*

14  *v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983), *abrogated by statute as stated in*

15  *Californians For Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 227 (2006)

16  ("After Proposition 64, which the voters approved at the November 2, 2004,

17  General Election, a private person has standing to sue only if he or she 'has

18  suffered injury in fact and has lost money or property as a result of such unfair

19  competition.'").  An "actual injury" is a distinct and palpable injury suffered as a

20  result of Mattel's actions.  *Buckland v. Threshold Enter., Ltd.*, 155 Cal. App. 4th

21  798, 814 (2007).  Mattel's proposed unfair competition instructions correctly

22  identify these standing requirements and explain the limitations on remedies.

23          4.      Defendants' proposed instruction is erroneous because it suggests that

24  a fraudulent business act or practice may support the parties' unfair competition

25  claims even though the Court has limited the conduct giving rise to Defendants'

26  unfair competition claim against Mattel to "unfair" conduct related to Mattel's

27  alleged interference with MGA's relationship with licensees and distributors.  Dkt.

28  No. 9600 at 91, 111.

1    5.    Defendants' proposal to address both parties' unfair competition

2  claims in a single, non-tailored, and generic instruction is confusing and prejudicial

3  for the reasons previously explained.  *See* Mattel's Corrected Objections to

4  Defendants' Proposed Jury Instructions (Dkt. No. 9739) at 69 #1.

5    6.    Should the Court give instructions on unfair competition claims over

6  Mattel's objections, Mattel requests that the Court adopt Mattel's unfair

7  competition instructions, which correctly identify the elements of the claim and

8  available remedies.  *See* Mattel's Fourth Amended Proposed Jury Instructions

9  (Dkt. No. 9683) at 120, 191, 221, 249.

1  **DEFENDANTS' PROPOSED INSTRUCTION RE UNFAIR**

2  **COMPETITION—RESTITUTION**

3  **UNFAIR COMPETITION—RESTITUTION**

4       If you find that Mattel or MGA Entertainment, Inc. committed an act of

5  unfair competition in violation of the Unfair Competition Law, you must decide

6  whether to award monetary restitution to the claimant and the amount of the

7  restitution, if any.  Restitution is limited to money or property the defendant took

8  from the claimant, or money or property in which the claimant had a vested

9  interest.  Property in which the claimant had a vested interest includes pre-existing

10  business relationships with licensees, distributors, and retailers.

11       **Authority:**  Cal. Bus. & Prof. Code § 17203; *Korea Supply Co. v. Lockheed*

12  *Martin Corp.*, 29 Cal. 4th 1134, 1136-37, 1149 (2003); Dkt. No. 9600 (Amended

13  SJ Order) at 111 ("There is a genuine issue of material fact as to whether MGA

14  lost money as a result of Mattel's obstruction of its relationships with licensees and

15  distributors.  MGA's licenses with its retailers were themselves "property" of

16  which Mattel's alleged conduct deprived MGA.  MGA also expended tremendous

17  sums to generate new licenses, or paid premiums to other licensees, because of

18  Mattel's conduct and specifically, the conduct of Mattel's Chief Executive Officer

19  Robert Eckert.  These are not simply harm to goodwill, but actual monetary losses

20  suffered as a result of Mattel's alleged interference with MGA's contractual

21  relationships with its licensees and retailers, whose business is the backbone of a

22  toy manufacturer's success.") (citation omitted).

23

24

25

26

27

28

**MATTEL'S OBJECTIONS:**[4]

1.      Defendants' proposed instruction is misleading and confusing in that it fails to properly clarify that MGA is not entitled to recover damages as a form of relief.  Restitution may not include any profits earned by Mattel that MGA may claim were earned as a result of Mattel's unfair competition.  Nor may restitution include any profits MGA claims it lost.  *See* Cal. Bus. & Prof. Code § 17203; *Korea Supply Co. v Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003) (restitution under the UCL is limited to "classic restitution"; that is, "money or property that defendants took directly from plaintiff" or money or property in which [plaintiff] has a vested interest."); *Citizens of Humanity, LLC v. Costco Wholesale Corp.*, 171 Cal. App. 4th 1, 22 (2009) (harm to goodwill not capable of restitution); *Inline, Inc. v. A.V.L. Holding Co.*, 125 Cal. App. 4th 895, 904-905 (2005) (rejecting various forms of requested recovery because not restitutionary, including consequential losses and fair market value of property sold); *Pegasus Satellite Television, Inc. v. DirecTV, Inc.*, 318 F. Supp. 2d 968, 979 (C.D. Cal. 2004) (one competitor does not have a vested interest in the profits of another); *Kwickset Corp. v. Superior Court*, --- Cal. Rptr. 3d ----, 2011 WL 240278, at *15 (Jan. 27, 2011) ("A restitution order against a defendant thus requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other.").

2.      Mattel requests that the Court adopt Mattel's proposed Special Instruction No. 58, which clarifies these limitations on restitution.  *See* Mattel's Fourth Amended Proposed Jury Instructions (Dkt. No. 9683) at 249.

---

[4]   While MGA did not amend its proposed instruction regarding Unfair Competition—Restitution, Mattel hereby respectfully submits this further objection to that instruction, which supersedes the previously stated objections.