**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. CV 04-9049 DOC (RNBx)                                      Date: February 10, 2011

Title: MATTEL, INC. v. MGA ENTERTAINMENT, INC.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

|  Kathy Peterson  |  Not Present  |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS:   ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                             NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER DENYING MATTEL'S REQUEST FOR AN ORDER COMPELLING PRODUCTION OF REDACTED IN CAMERA SUBMISSION [9837]

**Background**

Mattel's "request for an order compelling production of redacted *in camera* submission" asks the Court to turn over to Mattel a September 14, 2009 *in camera* submission, filed by MGA's prior counsel, with redactions "setting forth what Mr. Nolan was told by Mr. Larian" on the "circumstances surrounding the withholding" of some portion of an email chain between Isaac Larian and Victoria O'Connor. That September 14, 2009 *in camera* submission was filed in response to an Order to Show Cause issued by the prior presiding judge, the Honorable Stephen G. Larson. Judge Larson asked MGA's prior counsel why it should not have been sanctioned for withholding as privileged (prior to and throughout the phase 1 trial) an email exchange between Larian and O'Connor in which Larian responded "good point. Thanks." to O'Connor's question: "Don't you think we should say Bratz was born in October when a certain someone was no longer with their company?" The withheld portions of the email exchange were produced to Mattel after the phase 1 trial. After a review of MGA's counsel's *in camera* submission, and a subsequent hearing, Judge Larson discharged the Order to Show Cause.

The issue more recently came before this Court in connection with Discovery Matter Order No. 90, which granted Mattel's motion to compel MGA and Larian to respond to Requests for Admission concerning the circumstances resulting in the withholding and subsequent production of the

Larian-O'Connor email exchange. The Discovery Master granted Mattel's motion to compel on the basis that a Request for Admission cannot run afoul of the attorney-client privilege and work product doctrine because the responding party need only supply a "yes" or "no" answer. This Court, however, concluded that "yes or no questions can implicate the attorney-client privilege and/or work product doctrine." *Mattel, Inc. v. MGA Entertainment, Inc.*, 2010 WL 3705907, at *5 (C.D. Cal. Sept. 20, 2010) (citing *Bergstrom, Inc. v. Glacier Bay, Inc.*, No. 08 C 50078, 2010 WL 257253, at *4 (N.D. Ill. Jan. 22, 2010)). On the basis of an extensive *in camera* examination of Mr. Larian and his prior counsel, the Court concluded that no exception to the privilege, including the crime fraud doctrine, applied. The Court accordingly sustained MGA's objections to the Discovery Master's ruling. The Discovery Master ruled on remand that all of Mattel's requests for admission impermissibly implicated the attorney-client privilege and work product doctrine. *See* Discovery Matter Order No. 103.

The record is thus clear that the privilege attaches to all attorney-client communications that resulted in the withholding of the Larian-O'Connor email exchange, though it does not attach to the *fact* that the email exchange was withheld. In fact, on February 25, 2010, when the Court ordered Larian to appear for deposition, it specifically instructed the parties that "Larian shall re-appear for deposition and provide responses, **subject to the assertion of privilege**, to questions regarding the O'Connor-Larian email produced after Phase 1." (Emphasis added). During that deposition, Mattel's counsel nevertheless asked Mr. Larian about his communications with the attorneys responsible for designating the email exchange as privileged and Larian responded, after his counsel and Mattel's counsel stipulated that his responses would not be deemed to waive the attorney-client privilege.

During the February 9, 2011 direct examination of Mr. Larian, Mattel's counsel inquired into the fact that the email exchange had been withheld as privileged prior to the phase 1 trial. The following exchange ensued:

> Q. The e-mail chain that continues wasn't produced until 2009, correct?
>
> A. I don't know when it was produced.
>
> Ms. KELLER: Objection. Irrelevant.
>
> THE COURT: Overruled.
>
> THE WITNESS: I don't know when it was produced. All I can tell you is that we turned over all of our documents – everything, everything – millions of millions of pages to our lawyers –
>
> BY MR. PRICE:
>
> Q. Well –

A. – to produce to you. I left them to the lawyers to produce 'em.

Q. Well – and – and you've actually testified in 2010 about this e-mail and another e-mail which includes a little bit more of the string, correct?

[. . .]

Q. So let's talk about the production of this document. Do you recall that prior to the first trial you discussed this full e-mail – that is, 7055 – with some attorneys at a law firm called Skadden Arps?

Ms. KELLER: Objection, Your Honor. Attorney-client privilege.

THE COURT: Overruled.

THE WITNESS: Before – before this trial?

BY MR. PRICE:

Q. Before that first trial.

A. Did I discuss this with my attorneys? Yes, I had discussions with them about this.

[. . .]

Q. So you're sitting there in your office with all these attorneys, talking about this document and whether the sections above that blue line there should be given to Mattel, correct?

A. No.

Ms. Keller: Your Honor, may we impose – interpose a continuing attorney-client privilege objection?

The Court: You have a continuing objection. It's overruled. This is not a privileged document.

Ms. Keller: No, Your Honor, as to the conversation, I mean.

>The Court: Well, I'm not certain, Counsel, if we want to make a further record, that this is privileged. And the exception would be?
>
>Ms. Keller: I understand your honor.
>
>The Court: You understand?
>
>Ms. Keller: (Nods head.)

Mattel's counsel proceeded to ask Larian approximately 20 times about the content of the communications between Larian and his prior counsel, his prior counsel's state of mind and legal conclusions, and his current counsel's state of mind and legal conclusions. *See* Trial Tr. 110:6-7; 111:1-3; 113:10-13, 15-16; 114:4-6, 20-21, 23-24; 115:5-6, 10, 12-14, 16-21, 25-116:2; 116:14-18; 117:2-4, 7-8; 118:19-20; 123:14-16; 126:6-7; 129-9-23. The Court restricted inquiry into prior counsel's statements to Larian, as well as current counsel's state of mind. The Court, however, permitted inquiry into Mr. Larian's statements to his prior counsel on the grounds that the jury was "entitled to know when information is conveyed to an attorney by a client." *Id.* at 130:16-18. The Court nevertheless interposed repeated instructions to the jury that Mr. Larian's responses to Mattel's counsel's inquiry should have only been considered for the "limited purpose" of Mr. Larian's state of mind concerning the production of the email exchange. *Id.* at 126:15-16. The Court also admonished Mattel's counsel that the inquiry was "overstretching my ruling" on occasion. *Id.* at 117:9-12. Moreover, the Court repeatedly instructed the jury that "counsel [] can bring the attorney-client privilege. In fact, they're really required to on behalf of their client." *See, e.g.*, *id.* at 130:11-15.

In a colloquy that occurred outside the presence of the jury, MGA's counsel stated that: "**[I]n light of the court's ruling**, [the MGA Parties] are withdrawing our attorney-client objection to the information Mr. Larian provided to Skadden. But we will continue to object to any discussion or advice that Skadden gave back to Larian." *Id.* at 133:23-134:3 (emphasis added). Mattel's counsel responded that MGA "[c]an't do that." *Id.* at 134:6. The Court then ruled "the information [] given by a client to counsel is normally privileged. But it's not if it's incorrect information, or incomplete information; and it is not, if there's a misrepresentation in that information." *Id.* at 137:15-23.

### Discussion

Mattel's counsel was correct that MGA can't selectively withdraw an attorney-client privilege objection solely as to communications made by the client to the attorney; that would represent an impermissible use of the privilege "as both a sword and a shield." *In re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006) (citing *XYZ Corp. v. United States*, 348 F.3d 16, 22-24 (1st Cir. 2003)). A waiver of the privilege extends to " all other such communications on the same subject" regardless of whether the communications originate with the attorney or the client. *Weil v. Investment/Indicators, Rsrch. & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).

The problem is that MGA only withdrew its objection "in light of the Court's ruling." The Court's ruling, however, was erroneous. In determining whether the privilege applies to a particular communication, the Ninth Circuit applies an eight part standard that plainly applies to communications made by a client to its attorney:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n. 2 (9th Cir. 1982) (quoting *United States v. Margolis (In re Fischer)*, 557 F.2d 209, 211 (9th Cir. 1977)).

The case law reveals no exception for information that is "incorrect," "incomplete," or contains a "misrepresentation." More importantly, a review of the April 12, 2010 deposition of Mr. Larian reveals that, though he testified about the contents of his communications with prior counsel concerning the production of his email exchange with O'Connor, Mattel's counsel expressly stipulated that Larian's testimony would not constitute a waiver of the privilege. Because the attorney-client privilege attached to Larian's communications with his prior counsel, and Mr. Larian had not previously waived the privilege as to those communications, Mr. Larian was improperly ordered to respond to the questions during the February 9, 2011 proceedings. In light of the stipulation reached at the April 12, 2010 deposition, and the binding case law on this matter, MGA's continuing attorney-client privilege objection should have been sustained.

It would obviously compound error to disclose to Mattel the September 14, 2009 *in camera* submission that contains even more attorney-client communications. Mattel's request is therefore denied. The more prudent course is to appropriately instruct the jury and the parties are granted leave to propose limiting instructions on or before February 11, 2011 at 12:00 p.m. If neither proposed instruction is acceptable to the Court, the Court will fashion its own instruction.

The Clerk shall serve this minute order on all parties to the action.