QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc. and Mattel de
Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, et al.,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL'S TRIAL BRIEF REGARDING THE INTERPRETATION OF CARTER BRYANT'S INVENTIONS AGREEMENT**<br><br>Hearing Date: TBD<br>Time: TBD<br>Place: Courtroom 9D<br><br>Discovery Cut-off: October 4, 2010<br>Pre-trial Conf: January 4, 2011<br>Trial Date: January 11, 2011 |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL BACKGROUND........................................................................................ 1

ARGUMENT ................................................................................................................. 3

I. PARAGRAPH 1 PREVENTED DISCLOSURE OF PROPRIETARY INFORMATION REGARDLESS WHETHER CONCEIVED AS A RESULT OF BRYANT'S EMPLOYMENT ...................................................... 3

II. ANY CONTRARY INTERPRETATION WOULD VIOLATE BASIC PRINCIPLES OF CONTRACT CONSTRUCTION ........................................ 5

III. BRYANT OWED INDEPENDENT CONFIDENTIALITY OBLIGATIONS ................................................................................................. 7

    A. The Conflict of Interest Questionnaire Imposed an Independent Contractual Confidentiality Duty .................................................. 7

    B. Bryant Had a Non-Contractual Duty Not to Disclose Mattel's Trade Secrets ............................................................................................ 7

CONCLUSION .............................................................................................................. 8

## Preliminary Statement

The Court requested briefing to reconcile the "as a result of" language in paragraph 1 of the Inventions Agreement with the broad assignment language in paragraph 2. Specifically, the Court inquired whether, assuming paragraph 2 assigned all rights in the Bratz ideas and works created by Bryant on nights and weekends, paragraph 1 restricted Bryant from disclosing any such ideas and works not developed or discovered "as a result of his employment." Dkt. 9786.

Paragraph 1 of the Inventions Agreement required Bryant to maintain the confidentiality of *all* Proprietary Information owned by Mattel, regardless of the circumstances under which it was created. As the Court has recognized, the definition of Proprietary Information in the Inventions Agreement is the same as the legal definition of a trade secret, meaning it derives independent economic value from not being generally known. Paragraph 2 required Bryant to promptly disclose to Mattel any inventions he made, created, conceived or reduced to practice at any time during his employment by Mattel, and it automatically assigned to Mattel all Bryant's rights in those inventions regardless if he disclosed them. The duty of confidentiality imposed by paragraph 1 is broad and *includes* Proprietary Information developed as a result of Bryant's employment, but the scope of protected information—as set forth in a defined term of the contract—contains no such limitation. If an assigned invention created by Bryant at any time during his employment falls within the definition of Proprietary Information, then it is protected from disclosure under paragraph 1 regardless whether developed or discovered as a result of Bryant's employment.

This result is compelled not only by the plain language of the Agreement but also common sense. No conceivable reason exists that the parties would bargain for a disclosure exception that would rob Mattel entirely of the value it obtained in the assignment clause.

## Factual Background

Paragraph 1 states that Mattel "possesses and will continue to develop and acquire

valuable Proprietary Information (defined below), including information that [Bryant] may develop or discover as a result of [his] employment with [Mattel]." TX 9924. The term "possesses" is significant because it demonstrates Mattel is already in possession of certain Proprietary Information at the time a new employee signs the Inventions Agreement. The contract further explained Mattel "will continue to develop and acquire" new Proprietary Information in the future, which includes but is not limited to information that Bryant may develop or discover as a result of his employment with Mattel. Thus, paragraph 1 defines the scope of Proprietary Information broadly to include (1) information already possessed by Mattel before Bryant joined the company and (2) new information that will be possessed by Mattel in the future, including but not limited to information developed or discovered by Bryant as a result of his employment with Mattel.

After defining the scope of Proprietary Information broadly, paragraph 1 twice repeats that the new employee has a duty to maintain the confidentiality of all of Mattel's Proprietary Information regardless of when it was created or who created it. Paragraph 1(a) states that "the value of that Proprietary Information depends upon it remaining confidential. The company depends on me to maintain that confidentiality, and I accept that position of trust." In referring to "*that* Proprietary Information" (emphasis added), the Inventions Agreement refers to Proprietary Information as broadly defined in the immediately preceding sentence. Paragraph 1(c) reinforces the broad scope of the duty of confidentiality by using the terms "any" and "all": "I will not use or disclose at any time during or after my employment with the Company, *any* Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of *all* Proprietary Information." (emphasis added). Although the sentence defining the scope of Proprietary Information acknowledges that such information *may include* information developed or discovered as a result of Bryant's employment with the

Company, it does not say it is *strictly limited* to that information. The sentences defining the scope of the duty of confidentiality do not purport to limit the duty to any particular subset of Proprietary Information.

While paragraph 1 requires the new employee to maintain the confidentiality of any and all Proprietary Information known to that employee, paragraph 2 requires the new employee to promptly disclose certain inventions to Mattel: "I agree to communicate to the Company as promptly and fully as practicable all inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company." The introductory and concluding paragraphs of the contract clarify that the parties intended to define the terms "conceived" and "reduced to practice" in their ordinary and popular sense as "made" or "created." The introductory paragraph states that "inventions that I create will be owned by the Company," and the concluding paragraph states that the contract "AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT."

Separate and apart from the duty of prompt disclosure, paragraph 2(a) contains an automatic and self-executing assignment provision that is not impaired by an employee's failure to disclose the invention to Mattel: "I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon." By using the language "hereby assign," the Inventions Agreement *presently assigns* all right, title and interest the employee has in *future inventions* made, created, conceived or reduced to practice at any time during his employment.

## Argument

### I. PARAGRAPH 1 PREVENTED DISCLOSURE OF PROPRIETARY INFORMATION REGARDLESS WHETHER CONCEIVED AS A RESULT OF BRYANT'S EMPLOYMENT

Paragraph 1(a) of the Inventions Agreement prevented Bryant from disclosing Mattel's Proprietary Information. Paragraph 1(b) of the Inventions Agreement defined

proprietary information as "any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business." TX 9924.

Nowhere in the Inventions Agreement was this prohibition limited—whether directly or by implication—to information developed "as a result" of Bryant's employment. Rather, as the plain language of the Inventions Agreement makes clear, Bryant's duty of confidentiality or non-disclosure extended to all of Mattel's Proprietary Information, "including" any information Bryant might have developed or discovered as a result of his employment. See Dkt. 9786 at 1 (emphasis added).

In other words, the word "including" demonstrates that the "as a result of" clause does not operate to limit Bryant's duty of confidentiality. Instead, the clause provides clarification to the employee that the restriction against disclosure applies not only to pre-existing Mattel works, but also to new works created by Bryant or his co-workers. See St. Paul Mercury Ins. Co. v. Lexington Ins. Co., 78 F.3d 202, 206 -207 (5th Cir. 1996) (interpreting an insurance policy contract in a dispute over a settlement agreement, and finding that the word "including" is "generally given an expansive reading, even without the additional if not redundant language of 'without limitation.'").

In this agreement, it would make little sense for the word "including" to have a limiting or exhaustive function, since it is preceded by text referring to proprietary information in general. Indeed, nothing in the "as a result of" clause purports to place any limitations whatsoever on what information would fall within the broader definition of Proprietary Information. The clause, because it is preceded by the word "including," serves purely to clarify by illustration.

Further, the assignment provisions of Paragraph 2 are self-executing and immediate. Once Bryant made, created, conceived or reduced to practice the Bratz

works, Mattel owned them without either party having to take further action. The fact that Bryant breached his duty of prompt disclosure under paragraph 2 does not impair the effectiveness of his automatic assignment. The plain language of the contract does not allow Bryant to benefit from his breach by using his failure to promptly disclose the Bratz works as a basis for voiding the assignment. The fact that the Bratz works also fit the definition of Proprietary Information in paragraph 1(a) does not make the two provisions necessarily related, much less place them at odds.

It would be anomalous to suggest Mattel properly bargained for ownership of the Bratz works as set forth in paragraph 2, yet intentionally forfeited its rightful trade secret protection for those same works in the narrow circumstance where the works were arguably not created "as a result of" the employee's employment. There would be no rationale for such an exception that would deprive Mattel of the very value it bargained for in the assignment clause.

## II. ANY CONTRARY INTERPRETATION WOULD VIOLATE BASIC PRINCIPLES OF CONTRACT CONSTRUCTION

Mattel's reconciliation of the language in paragraph 1 and 2 of the Inventions Agreement is supported by the contractual language and is the "more natural, probable, and rational interpretation." See Pacific Mut. Life Ins. Co. of Cal. v. Pacific Sur. Co., 182 Cal. 555, 558 (1920) ("It remains to determine which is the more natural, probable, and rational interpretation. There is no evidence in the record that either of the two interpretations urged upon our consideration would have deterred either of the parties from entering into the agreement. What they intended to stipulate, what they understood the contract to mean, and what they would have done if their interpretation of it had been different, can be deduced only from the contract itself, the situation of the parties, and the circumstances surrounding them when they made it.")

Interpreting the "at a result of" language as carving out an exception to the duty of confidentiality makes paragraph 2 meaningless for a category of assigned inventions. The Inventions Agreement assigns the Bratz inventions made, created, conceived or

reduced to practice at any time during Bryant's employment with Mattel. If those inventions fall within the definition of Proprietary Information because they are trade secrets, then Bryant is bound by a duty not to disclose them to MGA pursuant to paragraph 1. The fact that Proprietary Information might include information developed or discovered as a result of Bryant's employment with Mattel does not preclude inventions created at any time during Bryant's employment from being Proprietary Information. There is no conceivable reason why Mattel or Bryant would agree to assign all of Bryant's inventions to Mattel, but then render that assignment meaningless in part by allowing certain assigned inventions to be disclosed to anyone, including direct Mattel competitors. See Advanced Network, Inc. v. Peerless Ins. Co., 119 Cal. Rptr. 3d 17, 25 (2010) (contract should be interpreted in a manner that avoids "absurd results").

Bryant's active concealment of his work with MGA is consistent with an understanding that disclosure of the Bratz works to MGA was not authorized by Mattel. City of Hope Nat'l Medical Center v. Genentech, Inc., 43 Cal. 4th 375, 393 (2008) (finding evidence that party to contract concealed certain activities subsequent to execution of contract relevant to show party's understanding that such activities ran afoul of the contract's terms and admissible to contradict its claim that proper construction of the contract would not prohibit activities it nevertheless chose to conceal). Bryant's actions subsequent to the execution of the agreement, as well as his concealment thereof are relevant to interpretation of the agreement and clearly belie any claim that the parties intended to exempt certain employee inventions from the non-disclosure provision. Id.

Paragraph 1 of the Agreement cannot be read in isolation. Paragraph 2 assigns to Mattel *all* Bryant's inventions and requires Bryant to promptly communicate to the company *all* his inventions. As explained above, the parties' intent and Bryant's subsequent conduct also suggest the intended meaning was that the duty of confidentiality applied to *all* proprietary information, and not just previously existing proprietary information along with proprietary information developed "as a result of" his employment with Mattel. At minimum, therefore, this presents a fact issue to be

Case 2:04-cv-09049-DOC-RNB   Document 9856   Filed 02/11/11   Page 9 of 10   Page ID
#:297533

resolved by the jury.

## III. BRYANT OWED INDEPENDENT CONFIDENTIALITY OBLIGATIONS

### A. The Conflict of Interest Questionnaire Imposed an Independent Contractual Confidentiality Duty

In addition to being prohibited from disclosure of Mattel's "Proprietary Information" by the Inventions Agreement, Bryant was also prohibited from disclosure by the Conflict of Interest Questionnaire. By signing this contract, Bryant undertook an express obligation "not to divulge any company information to unauthorized recipients." TX 26. The Conflict of Interest Questionnaire imposed on Bryant an independent contractual obligation not to disclose confidential information and provides further confirmation that any such disclosure would have been wholly unauthorized by Mattel. Thus, even in the absence of non-disclosure obligations imposed by the Inventions Agreement, the Conflict of Interest Questionnaire alone sufficed to create an "express or implied restriction of nondisclosure" necessary to prohibit Bryant from disclosing Mattel's trade secrets to MGA. See Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 475-476 (1974) ("The protection accorded the trade secret holder is against the disclosure or unauthorized use of the trade secret by those to whom the secret has been confided under the express or implied restriction of nondisclosure or nonuse.").

### B. Bryant Had a Non-Contractual Duty Not to Disclose Mattel's Trade Secrets

The Court recognized in its Summary Judgment Order that "an implied obligation not to use or disclose" trade secrets is sufficient to give rise to a legally cognizable duty. Dkt. No. 9600 at 161 (citing Kewanee Oil, 416 U.S. at 475). Thus, putting aside Bryant's contractual obligations under the Inventions Agreement or Conflict of Interest Questionnaire, Bryant was still under legal duty not to disclose Mattel's trade secrets. See Am. Credit Indemnity Co. v. Sacks, 213 Cal. App. 3d 622, 631 (1989) (finding employee owed duty not to disclose employer's customer list where employer generally required employees to sign a confidential information agreement despite fact that

00505.07975/3966066.1

-7-
MATTEL'S TRIAL BRIEF RE INTERPRETATION OF THE INVENTIONS AGREEMENT

employee claimed never to have signed one). Accordingly, even should the Court determine that the Inventions Agreement did not expressly prevent disclosure of Proprietary Information not developed "as a result" of Bryant's employment, such a finding would still not be dispositive of the scope of Bryant's duty of confidentiality. See Hilderman v. Enea TekSci, Inc., 551 F. Supp. 2d 1183, 1201 (S.D. Cal. 2008) (absence of confidentiality agreement is not dispositive on the issue of secrecy for purposes of trade secret analysis). Bryant's disclosure of Mattel's trade secrets to a direct competitor violated Bryant's duty of loyalty, which specifically imposed a legal duty of confidentiality on Bryant. See Huong Que, Inc. v. Luu, 150 Cal. App. 4th 400, 411 (2007) (duty of loyalty includes the obligation "not to use or communicate confidential information of the principal for the agent's own purposes or those of a third party").[1]

## Conclusion

Mattel respectfully submits that the Inventions Agreement should not be interpreted in a manner that permits unrestricted disclosure of assigned inventions that qualify as Proprietary Information because they are trade secrets.

DATED: February 11, 2011    QUINN EMANUEL URQUHART &
                            SULLIVAN. LLP

                            By /s/ Michael T. Zeller
                               Michael T. Zeller
                               Attorneys for Mattel, Inc., and Mattel de
                               Mexico. S.A. de C.V.

---

[1] This issue of contractual interpretation is largely academic because the Bratz works were clearly created as a result of Bryant's employment by Mattel in any event. Bryant was employed as a fashion doll designer and the Bratz works were fashion dolls. At minimum, this presents a fact issue to be resolved by the jury.