Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 1 of 138   Page ID #:298312
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

1

1          **UNITED STATES DISTRICT COURT**

2          **CENTRAL DISTRICT OF CALIFORNIA**

3       **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                    - - - - - - -

5
   MATTEL, INC., et al.,            )
6                                   )
              Plaintiffs,           )
7                                   )
         vs.                        ) No. CV 04-9049 DOC
8                                   )    Day 17
   MGA ENTERTAINMENT, INC., et al., )    Volume 1 of 4
9                                   )
                                    )
10             Defendants.          )
   _____)
11

12

13

14         REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                    Jury Trial

16              Santa Ana, California

17            Friday, February 11, 2011

18

19

20

21  Debbie Gale, CSR 9472, RPR, CCRR
    Federal Official Court Reporter
22  United States District Court
    411 West 4th Street, Room 1-053
23  Santa Ana, California 92701
    (714) 558-8141
24

25  04cv9049 Mattel 2011-02-11 D17V1

Case 2:04-cv-09049-DOC-RNB  Document 9870  Filed 02/14/11  Page 2 of 138  Page ID #:298313
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

2

1    **APPEARANCES OF COUNSEL:**

2

     FOR PLAINTIFF MATTEL, INC., ET AL.:
3
                 QUINN EMANUEL URQUHART & SULLIVAN
4                BY:  JOHN QUINN
                      WILLIAM PRICE
5                     MICHAEL T. ZELLER
                      Attorneys at Law
6                865 South Figueroa Street
                 10th Floor
7                Los Angeles, California 90017
                 (213) 443-3000
8

9

10

11   FOR DEFENDANT MGA ENTERTAINMENT, INC., ET AL:

12               ORRICK, HERRINGTON & SUTCLIFFE, LLP (Irvine)
                 BY:  THOMAS S. McCONVILLE
13                    Attorney at Law
                 4 Park Plaza
14               Suite 1600
                 Irvine, California 92614
15               (949) 567-6700

16               - AND -

17               ORRICK, HERRINGTON & SUTCLIFFE, LLP (SF)
                 BY:  ANNETTE L. HURST
18                    Attorney at Law
                 405 Howard Street
19               San Francisco, California 94105
                 (415)773-5700
20
                 - AND -
21
                 KELLER RACKAUCKAS
22               BY:  JENNIFER KELLER
                      Attorney at Law
23               18500 Von Karman Avenue
                 Suite 560
24               Irvine, California 92612
                 (949) 476-8700
25

1    **APPEARANCES OF COUNSEL (Continued):**

2

3    FOR CARLOS GUSTAVO MACHADO GOMEZ:

4
                LAW OFFICES OF MARK E. OVERLAND
5               By:  MARK E. OVERLAND
                     Attorney at Law
6               100 Wilshire Boulevard
                Suite 950
7               Santa Monica, California 90401
                (310) 459-2830
8
                - AND -
9
                SCHEPER KIM & HARRIS LLP
10              BY:  ALEXANDER H. COTE
                     Attorney at Law
11              601 West 5th Street
                12th Floor
12              Los Angeles, California 90071
                (213) 613-4660
13

14   ALSO PRESENT:

15              MGA ENTERTAINMENT, INC.
                BY:  JEANINE PISONI
16                   Attorney at Law
                16360 Roscoe Boulevard
17              Suite 105
                Van Nuys, California 91406
18

19              ROBERT ECKERT, Mattel CEO

20              ISAAC LARIAN, MGA CEO

21              KEN KOTARSKI, Mattel Technical Operator

22              MIKE STOVALL, MGA Technical Operator

23              RACHEL JUAREZ, Quinn Emanuel Urquart & Sullivan

24

25

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 4 of 138   Page ID #:298315
CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

4

```
1                            I N D E X

2     WITNESSES               DIRECT  CROSS  REDIRECT  RECROSS

3     LARIAN, Isaac

4
      By Mr. Price                 8
5

6

7                            EXHIBITS

8     EXHIBIT NO.                 IDENTIFICATION    IN EVIDENCE

9       952-7   Document                                49

10      952-00004 Document:  Paragraph 9               50

11      2174    E-mail from Fred larian         19
                forwarded by Ms. Glaser
12              to Isaac Larian

13      4941    E-mail from Chris                9
                Palmeri
14
        10175-0031 Document containing          41
15              one paragraph

16      10175-0039 Schedule 1                   43

17      13591-0043 Document describing          61
                LSC-4
18
        13691-0028 LSC-3                        54
19
        13691-0029 to 13691-0042 –             55
20              drawings

21      13691-0044 Attachment to LSC-4          61

22      22106   E-mail from Mr. Huigen          33
                to Mr. Larian dated
23              2/25/2005

24

25
```

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 5 of 138   Page ID #:298316
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

5

| 1 | **EXHIBITS (Continued)** | | |
|---|---|---|---|
| 2 | **EXHIBIT NO.** | **IDENTIFICATION** | **IN EVIDENCE** |
| 3 | 23857  Style guide | | 68 |
| 4 | 23858  Style guide | | 77 |
| 5 | 23859  MGA Bratz Style Guide | | 80 |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 6 of 138   Page ID #:298317
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

6

|       |    |                                                                         |
|-------|----|-------------------------------------------------------------------------|
|       | 1  | **SANTA ANA, CALIFORNIA, FRIDAY, FEBRUARY 11, 2011**                    |
|       | 2  | **Day 17, Volume 1 of 4**                                               |
|       | 3  | (8:33 a.m.)                                                             |
| 08:33 | 4  | *(In the presence of the jury.)*                                        |
| 08:33 | 5  | THE COURT:  All right.  Counsel, if you would be                        |
| 08:33 | 6  | seated.  First of all, good morning.                                    |
| 08:33 | 7  | MR. LARIAN:  Good morning.                                              |
| 08:33 | 8  | THE COURT:  Let's start with two things that                            |
| 08:33 | 9  | occurred outside of your presence last evening.                         |
| 08:33 | 10 | First, I want to inform you that each of the                            |
| 08:33 | 11 | parties have taken depositions in this case.  In many cases,            |
| 08:33 | 12 | the witnesses for both sides have sat for depositions over              |
| 08:34 | 13 | the course of more than one session and for multiple days at            |
| 08:34 | 14 | a time.  Depositions are entirely proper and expected in a              |
| 08:34 | 15 | case like this, and there's nothing wrong with the parties              |
| 08:34 | 16 | taking such depositions.                                                |
| 08:34 | 17 | Yesterday the Court improperly allowed                                  |
| 08:34 | 18 | introduction of 11259 -- it was a *Kansas City Star*                    |
| 08:34 | 19 | article -- and 631, a *BusinessWeek* article, and 13608, a              |
| 08:34 | 20 | *Total Licensing* magazine article.                                     |
| 08:34 | 21 | That's entirely my mistake.  After reviewing those                      |
| 08:34 | 22 | last evening, the objections were appropriate, and the Court            |
| 08:34 | 23 | has sustained the objections, and those articles will not be            |
| 08:34 | 24 | coming to you.  They are hearsay.                                       |
| 08:34 | 25 | And therefore, the Court's withdrawing those                            |

| | | |
|---|---|---|
| 08:34 | 1 | articles from your consideration, and they're not to be |
| 08:34 | 2 | considered by you. |
| 08:34 | 3 | Now, those were not put up on the screen. |
| 08:34 | 4 | There are two other articles that are not hearsay |
| 08:34 | 5 | or that are subject to depositional testimony.  Those |
| 08:35 | 6 | articles are subject to depositions in which the reporter |
| 08:35 | 7 | actually appeared and was cross-examined.  Those reporters |
| 08:35 | 8 | are unavailable.  I think counsel will stipulate that |
| 08:35 | 9 | there's been contact with their respective press entities |
| 08:35 | 10 | and lawyers, and they've really been requested not to |
| 08:35 | 11 | appear. |
| 08:35 | 12 | But because there was a deposition that took place |
| 08:35 | 13 | and because those reporters testified at one time, their |
| 08:35 | 14 | unavailability means that that depositional testimony can be |
| 08:35 | 15 | read into the record to you. |
| 08:35 | 16 | So those articles will be able to be considered by |
| 08:35 | 17 | you.  And that will be for the truth of the matter asserted. |
| 08:35 | 18 | Now, finally, there's been more than one occasion |
| 08:35 | 19 | and I will continue to admonish you along the way about |
| 08:36 | 20 | witnesses.  Nonresponsiveness to questions propounded to a |
| 08:36 | 21 | witness may be considered by you regarding the credibility |
| 08:36 | 22 | of that witness or any witness. |
| 08:36 | 23 | Gratuitous information or statements that are |
| 08:36 | 24 | nonresponsive to a question may be considered by you |
| 08:36 | 25 | concerning the credibility and truthfulness of that witness. |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 8 of 138   Page ID #:298319
CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

8

| | | |
|---|---|---|
| 08:36 | 1 | But also listen closely to the questions that the |
| 08:36 | 2 | lawyers are asking in terms of the responsiveness of that |
| 08:36 | 3 | question as well. |
| 08:36 | 4 | Now, I'm going to further instruct you on that.  I |
| 08:36 | 5 | think that's the second or third time I've talked to you |
| 08:36 | 6 | about credibility of witnesses, in terms of recollection |
| 08:36 | 7 | earlier, ability to recall, and I'll continue to remind you |
| 08:36 | 8 | of that, not only during the presentation of Mattel's case, |
| 08:36 | 9 | but in the presentation of MGA's counsel. |
| 08:36 | 10 | Counsel. |
| 08:36 | 11 | **ISAAC LARIAN, MATTEL'S WITNESS, PREVIOUSLY SWORN** |
| 08:36 | 12 | **RESUMED THE STAND** |
| 08:36 | 13 | **DIRECT EXAMINATION   (Continued)** |
| 08:37 | 14 | BY MR. PRICE: |
| 08:37 | 15 | Q.   Good morning, Mr. Larian. |
| 08:37 | 16 | A.   Good morning. |
| 08:37 | 17 | Q.   I wanted to show you Exhibit 4941. |
| 08:37 | 18 | *(Document provided to the witness.)* |
| 08:37 | 19 | BY MR. PRICE: |
| 08:37 | 20 | Q.   Do you recognize that as an e-mail sent to you and then |
| 08:37 | 21 | one you apparently sent to yourself? |
| 08:37 | 22 | A.   Give me one moment. |
| 08:38 | 23 | Q.   Certainly. |
| 08:38 | 24 | A.   Yes.  Good. |
| 08:38 | 25 | Q.   And this is an e-mail that was sent to you by Chris |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 9 of 138   Page ID #:298320
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

9

| | | |
|---|---|---|
| 08:38 | 1 | Palmeri at *BusinessWeek*, and then one that you kind of sent |
| 08:38 | 2 | to yourself? |
| 08:38 | 3 | A.   Yes. |
| 08:38 | 4 |        MR. PRICE:  Your Honor, move Exhibit 4941 into |
| 08:38 | 5 | evidence. |
| 08:38 | 6 |        THE COURT:  Received. |
| 08:38 | 7 |        *(Exhibit No. 4941 received in evidence.)* |
| 08:38 | 8 | BY MR. PRICE: |
| 08:38 | 9 | Q.   If you'd look at the lower half of that and you see |
| 08:38 | 10 | that's an e-mail from Mr. Palmeri at *BusinessWeek* to you, |
| 08:38 | 11 | correct? |
| 08:38 | 12 | A.   Yes. |
| 08:38 | 13 | Q.   And he is fact-checking an article which *BusinessWeek* |
| 08:38 | 14 | is going to run about Bratz and about you, correct? |
| 08:38 | 15 | A.   Yes. |
| 08:38 | 16 | Q.   If you look at the first line, "I have a Mattel story |
| 08:38 | 17 | running this week that features Bratz prominently." |
| 08:38 | 18 |        Do you see that? |
| 08:38 | 19 | A.   I do. |
| 08:38 | 20 | Q.   And then he says, "I quote you as saying," and then it |
| 08:39 | 21 | goes on, "Like they say in business school, no risk, no |
| 08:39 | 22 | reward." |
| 08:39 | 23 |        Do you see that? |
| 08:39 | 24 | A.   Yes. |
| 08:39 | 25 | Q.   And then he says -- he describes you as the chief |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 10 of 138   Page ID #:298321
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

10

| | | |
|---|---|---|
| 08:39 | 1 | executive and talks about the sales.  Do you see that? |
| 08:39 | 2 | A.    I do. |
| 08:39 | 3 | Q.    And then the final sentence there in that paragraph, he |
| 08:39 | 4 | says, "We describe you as a 49-year-old Iranian immigrant, |
| 08:39 | 5 | trained as a civil engineer, who modeled Bratz after your |
| 08:39 | 6 | own children, who wear midriff-baring shirts, low rise |
| 08:39 | 7 | jeans, and baseball caps." |
| 08:39 | 8 | Do you see that? |
| 08:39 | 9 | A.    I do. |
| 08:39 | 10 | Q.    And he then says in the last sentence, "Is all of that |
| 08:39 | 11 | accurate?  Please let me know ASAP, and thanks for your |
| 08:39 | 12 | help." |
| 08:39 | 13 | You see that? |
| 08:39 | 14 | A.    I do. |
| 08:39 | 15 | Q.    Now, there had been some prior discussion between you |
| 08:39 | 16 | and Mr. Palmeri about the articles? |
| 08:39 | 17 | A.    It's possible, yes. |
| 08:39 | 18 | Q.    And you see the subject of this is he is fact-checking; |
| 08:39 | 19 | that is, he's trying to make sure his facts are correct? |
| 08:39 | 20 | A.    That's correct.  That's what he says. |
| 08:40 | 21 | Q.    And it's accurate that you did not write back and say |
| 08:40 | 22 | that any of this is not accurate? |
| 08:40 | 23 | A.    I did not. |
| 08:40 | 24 | Q.    And so at the last sentence, for example, where it says |
| 08:40 | 25 | that "You modeled Bratz after your own children, who wear |

CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

11

| | | |
|---|---|---|
| 08:40 | 1 | midriff-baring shirts, low rise jeans, and baseball caps," |
| 08:40 | 2 | that's a statement that you did not correct? |
| 08:40 | 3 | A.   I did not correct that.  That was his statement. |
| 08:40 | 4 | Q.   And if we -- if we look at -- |
| 08:40 | 5 | MR. PRICE:  Is it 302? |
| 08:40 | 6 | *(Document provided to witness.)* |
| 08:40 | 7 | *(Document displayed.)* |
| 08:40 | 8 | BY MR. PRICE: |
| 08:40 | 9 | Q.   And these are the designs that Mr. Bryant showed you, |
| 08:40 | 10 | correct? |
| 08:40 | 11 | A.   Yes. |
| 08:40 | 12 | Q.   And they show girls in midriff-baring shirts and low |
| 08:41 | 13 | rise jeans, right? |
| 08:41 | 14 | A.   Yes. |
| 08:41 | 15 | Q.   And it's -- it's Mr. Bryant's designs that I guess in |
| 08:41 | 16 | your -- in your words were the inspiration for Bratz, |
| 08:41 | 17 | correct? |
| 08:41 | 18 | A.   That's correct. |
| 08:41 | 19 | Q.   Now, yesterday we talked about a *Wall Street Journal* |
| 08:41 | 20 | article.  And you recall saying that that was the first |
| 08:41 | 21 | article in a newspaper or a magazine that identified |
| 08:41 | 22 | Mr. Bryant as being associated with Bratz, correct? |
| 08:41 | 23 | A.   Yes. |
| 08:41 | 24 | MR. PRICE:  And, Your Honor, if we could read into |
| 08:41 | 25 | the record now the deposition of Maureen Tkacik, |

| | | |
|---|---|---|
| 08:41 | 1 | T-K-A-C-I-K. |
| 08:41 | 2 | And it's the -- what has been agreed to. |
| 08:41 | 3 | THE COURT:  I've given counsel last evening the |
| 08:42 | 4 | permission to read into the record this depositional |
| 08:42 | 5 | testimony surrounding these two articles. |
| 08:42 | 6 | Counsel. |
| 08:42 | 7 | MR. PRICE:  And I'll read-in all the sections that |
| 08:42 | 8 | have been agreed to. |
| 08:42 | 9 | "QUESTION:  And just for the record, this is a |
| 08:42 | 10 | *Wall Street Journal* article, dated July 18, 2003, entitled, |
| 08:42 | 11 | quote, 'To Lure Older Girls,' comma, 'Mattel Brings in |
| 08:42 | 12 | Hip-Hop Crowd.' |
| 08:42 | 13 | "ANSWER:  Yes." |
| 08:42 | 14 | THE COURT:  Just a moment.  You should explain |
| 08:42 | 15 | it's a deposition also and the date. |
| 08:42 | 16 | MR. PRICE:  Yes, Your Honor.  This is a deposition |
| 08:42 | 17 | of Maureen Tkacik, taken -- find the day here -- |
| 08:42 | 18 | September 28, 2007. |
| 08:42 | 19 | THE COURT:  And the location, Counsel? |
| 08:42 | 20 | MR. PRICE:  The location is the state of New York. |
| 08:42 | 21 | THE COURT:  New York.  All right. |
| 08:42 | 22 | MR. PRICE:  (Reading:) |
| 08:42 | 23 | "QUESTION:  And just for the record, this is a |
| 08:43 | 24 | *Wall Street Journal* article, dated July 18, 2003, entitled, |
| 08:43 | 25 | quote, 'To Lure Older Girls,' comma, 'Mattel Brings in |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 13 of 138   Page ID #:298324
CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

13

| | | |
|---|---|---|
| 08:43 | 1 | Hip-Hop Crowd.' |
| 08:43 | 2 | "ANSWER:  Correct. |
| 08:43 | 3 | "QUESTIONS:  And this is an article that you |
| 08:43 | 4 | wrote? |
| 08:43 | 5 | "ANSWER:  Yes. |
| 08:43 | 6 | "And if I could have you turn to the second page, |
| 08:43 | 7 | you will see a highlighted paragraph.  Do you see that? |
| 08:43 | 8 | "ANSWER:  Yes. |
| 08:43 | 9 | "QUESTION:  Could I have you read that out loud, |
| 08:43 | 10 | please? |
| 08:43 | 11 | "ANSWER:  Isaac Larian, chief executive of MGA, |
| 08:43 | 12 | says he had never heard of a project similar to the Bratz at |
| 08:43 | 13 | Mattel.  He says he chose Mr. Bryant's idea for the Bratz |
| 08:43 | 14 | over several other offers -- over several others after |
| 08:43 | 15 | holding a sort of fashion, dash, doll design contest in late |
| 08:43 | 16 | 1999. |
| 08:43 | 17 | "QUESTION:  And did you interview Isaac Larian in |
| 08:43 | 18 | preparation for writing this article? |
| 08:43 | 19 | "ANSWER:  Yes. |
| 08:43 | 20 | "QUESTION:  And you would agree, wouldn't you, |
| 08:43 | 21 | that the article attributes certain statements to |
| 08:43 | 22 | Mr. Larian? |
| 08:43 | 23 | "ANSWER:  I'm not sure what -- that statement that |
| 08:44 | 24 | is highlighted, I would say that that is attributed to Isaac |
| 08:44 | 25 | Larian. |

| | | |
|---|---|---|
| 08:44 | 1 | "QUESTION:  And again, turning to the highlighted |
| 08:44 | 2 | paragraph, the -- the second sentence reads, quote, 'He says |
| 08:44 | 3 | he chose Mr. Bryant's idea for the Bratz over several others |
| 08:44 | 4 | after holding a sort of fashion,' dash, 'doll contest in |
| 08:44 | 5 | late 1999.'  Did I read that correctly? |
| 08:44 | 6 | "ANSWER:  You missed the word 'design.'  It's |
| 08:44 | 7 | fashion, dash, doll design contest. |
| 08:44 | 8 | "QUESTION:  Fair enough.  Let me repeat it.  'He |
| 08:44 | 9 | says he chose Mr. Bryant's idea for the Bratz over several |
| 08:44 | 10 | others after holding a sort of fashion,' dash, 'doll design |
| 08:44 | 11 | contest in late 1999'; is that correct? |
| 08:44 | 12 | "ANSWER:  Yes. |
| 08:44 | 13 | "QUESTION:  And did Mr. Larian tell you that |
| 08:44 | 14 | statement during your interview? |
| 08:44 | 15 | "ANSWER:  Yes. |
| 08:44 | 16 | "QUESTION:  Following the publication of your |
| 08:44 | 17 | article, did anybody from MGA ever contact you and ask for |
| 08:44 | 18 | correction or retraction or anything from the article? |
| 08:45 | 19 | "ANSWER:  No. |
| 08:45 | 20 | "QUESTION:  Did Mr. Larian ever contact you and |
| 08:45 | 21 | ask for correction or retraction or anything from the |
| 08:45 | 22 | article? |
| 08:45 | 23 | "ANSWER:  No. |
| 08:45 | 24 | "QUESTION:  The article goes on to say, quote, |
| 08:45 | 25 | 'The history of the Bratz is intertwined with Mattel,' |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 15 of 138   Page ID #:298326
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

15

| | | |
|---|---|---|
| 08:45 | 1 | closed quote.  And it says, quote, 'MGA says the Bratz were |
| 08:45 | 2 | designed by Carter Bryant, a former member of the Bratz |
| 08:45 | 3 | team.' |
| 08:45 | 4 | "ANSWER:  Uh-huh. |
| 08:45 | 5 | "ANSWER:  Yes, sorry. |
| 08:45 | 6 | "QUESTION:  Who at MGA told you that? |
| 08:45 | 7 | "ANSWER:  I talked to Isaac Larian at MGA, and he |
| 08:45 | 8 | told me that.  There were probably other people at MGA who |
| 08:45 | 9 | also had told me that. |
| 08:45 | 10 | "QUESTION:  Mr. Larian, when he spoke to you, did |
| 08:45 | 11 | he attempt to in any way hide Mr. Bryant's involvement with |
| 08:45 | 12 | Bratz from you? |
| 08:45 | 13 | "ANSWER:  I don't remember. |
| 08:45 | 14 | "QUESTION:  You don't remember him saying anything |
| 08:45 | 15 | to that effect, correct? |
| 08:46 | 16 | "ANSWER:  Yes, I don't remember. |
| 08:46 | 17 | "QUESTION:  And he told you that Bratz were |
| 08:46 | 18 | designed by Carter Bryant; is that right? |
| 08:46 | 19 | "ANSWER:  He did.  Yeah, he did.  He did say that. |
| 08:46 | 20 | "QUESTION:  You didn't quote Mr. Larian directly |
| 08:46 | 21 | on that; is that true? |
| 08:46 | 22 | "ANSWER:  Well, this highlighted paragraph is a |
| 08:46 | 23 | paraphrase of him, basically, you know, saying that.  So I |
| 08:46 | 24 | didn't quote him.  Just because I didn't quote him directly |
| 08:46 | 25 | does not mean that he did not say that. |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 16 of 138   Page ID #:298327
CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

16

| | | |
|---|---|---|
| 08:46 | 1 | "QUESTION:  Ms. Tkacik, do you have any notes |
| 08:46 | 2 | reflected of any of the interviews that you did for this |
| 08:46 | 3 | article? |
| 08:46 | 4 | "ANSWER:  No." |
| 08:46 | 5 | (Court reporter interruption for clarification.) |
| 08:46 | 6 | MR. PRICE:  (Continues reading:) |
| 08:46 | 7 | "QUESTION:  Ms. Tkacik, do you have any notes |
| 08:46 | 8 | reflected of any of the interviews that you did for this |
| 08:46 | 9 | article? |
| 08:46 | 10 | "ANSWER:  No. |
| 08:46 | 11 | "QUESTION:  And in the highlighted paragraph that |
| 08:47 | 12 | Mattel's counsel asked you about, the statements allegedly |
| 08:47 | 13 | made by Mr. Larian were not in quotes, right? |
| 08:47 | 14 | "ANSWER:  No, they are not in quotes. |
| 08:47 | 15 | "QUESTION:  And that's because you weren't |
| 08:47 | 16 | intending to literally write down exactly what he said to |
| 08:47 | 17 | you, right? |
| 08:47 | 18 | "ANSWER:  When you put together a story, you |
| 08:47 | 19 | sometimes choose a quote, usually if it sounds good.  This |
| 08:47 | 20 | is a very informational paragraph that has so much space.  I |
| 08:47 | 21 | believe that I do quote -- I remember at some point, you |
| 08:47 | 22 | know, putting a statement by Mr. Larian in quotes in this |
| 08:47 | 23 | story, but not that particular -- not all of that |
| 08:47 | 24 | information.  It's incidental. |
| 08:47 | 25 | "QUESTION:  And you were not directly quoting him, |

| | | |
|---|---|---|
| 08:47 | 1 | because you did not -- these weren't -- as you say earlier, |
| 08:47 | 2 | you were paraphrasing; you were not directly quoting any of |
| 08:47 | 3 | Mr. Larian's statements to you in this paragraph; isn't that |
| 08:47 | 4 | true? |
| 08:47 | 5 | "ANSWER:  Yes.  This is not a direct quote. |
| 08:47 | 6 | "QUESTION:  Now, in here it says you wrote, |
| 08:47 | 7 | "quote, "He says he chose Mr. Bryant's idea for the Bratz |
| 08:48 | 8 | after several others about holding a sort of fashion doll |
| 08:48 | 9 | contest," closed quote.  "Do you see that? |
| 08:48 | 10 | "ANSWER:  Yes. |
| 08:48 | 11 | "QUESTION:  Did you ask him what he meant, or do |
| 08:48 | 12 | you have any understanding of what was meant by this 'sort |
| 08:48 | 13 | of fashion doll contest'? |
| 08:48 | 14 | "ANSWER:  Right now, no, I don't remember.  I |
| 08:48 | 15 | remember talking to him, and I believe he was overseas at |
| 08:48 | 16 | the time, and he explained it to me, but there was -- there |
| 08:48 | 17 | probably just was a rumor story, too. |
| 08:48 | 18 | "QUESTION:  So sitting here today, you have no |
| 08:48 | 19 | idea what sort of fashion doll contest that he was referring |
| 08:48 | 20 | to, that you were talking about, right? |
| 08:48 | 21 | "ANSWER:  No, I don't remember.  I have no idea |
| 08:48 | 22 | who else was involved in this contest or any of the |
| 08:48 | 23 | specifics of it. |
| 08:48 | 24 | "QUESTION:  So you don't know anything about the nature |
| 08:48 | 25 | of this sort of contact; is that right? |

| | | |
|---|---|---|
| 08:48 | 1 | "ANSWER:  No." |
| 08:48 | 2 | BY MR. PRICE: |
| 08:49 | 3 | Q.   So, Mr. Larian, I think as you've -- as you've told us, |
| 08:49 | 4 | linking Mr. Bryant to Mattel, a former Mattel design -- |
| 08:49 | 5 | linking a former Mattel designer to MGA, who came up with |
| 08:49 | 6 | Bratz, is not something in your mind that would cause Mattel |
| 08:49 | 7 | to become suspicious, right? |
| 08:49 | 8 | A.   Just by itself, no. |
| 08:49 | 9 | Q.   So let me go to the next question, which is when |
| 08:49 | 10 | Mattel -- your understanding -- learned that -- of the |
| 08:49 | 11 | possibility that Mr. Bryant did the designs while at Mattel. |
| 08:49 | 12 | And in that regard, I'd like you to look at |
| 08:49 | 13 | Exhibit 21714. |
| 08:50 | 14 | *(Document provided to the witness.)* |
| 08:50 | 15 | THE WITNESS:  Yes. |
| 08:50 | 16 | BY MR. PRICE: |
| 08:50 | 17 | Q.   And do you recognize that as an e-mail forwarded to you |
| 08:50 | 18 | by Ms. Glaser, an e-mail from your brother, Fred Larian? |
| 08:50 | 19 | A.   Yes. |
| 08:50 | 20 | Q.   And we've heard about Farhad Larian and Fred Larian. |
| 08:50 | 21 | He goes by both names? |
| 08:50 | 22 | A.   Yes. |
| 08:50 | 23 | MR. PRICE:  If we could move into evidence, |
| 08:50 | 24 | Your Honor, 21714. |
| 08:50 | 25 | THE COURT:  Received. |

CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

19

| 08:50 | 1 | MS. KELLER:  Objection.  Hearsay. |
| 08:50 | 2 | THE COURT:  Received. |
| 08:50 | 3 | MS. KELLER:  Under 403, Your Honor. |
| 08:50 | 4 | THE COURT:  Thank you. |
| 08:50 | 5 | *(Exhibit No. 2174 received in evidence.)* |
| 08:50 | 6 | *(Document displayed.)* |
| 08:50 | 7 | BY MR. PRICE: |
| 08:50 | 8 | Q.   If we look at the top, it shows that what is on the |
| 08:50 | 9 | bottom is forwarded to you.  It says, "Forward Carter Bryant |
| 08:51 | 10 | agreement."  Do you see that? |
| 08:51 | 11 | A.   I do. |
| 08:51 | 12 | Q.   And attached to that is an e-mail by your brother, |
| 08:51 | 13 | Mr. Larian.  See that's dated March 7, 2007? |
| 08:51 | 14 | A.   I see that. |
| 08:51 | 15 | Q.   And the first paragraph, "Mattel filed the attached in |
| 08:51 | 16 | Court."  And it's your understanding that the attached was |
| 08:51 | 17 | the Carter Bryant agreement, correct? |
| 08:51 | 18 | A.   I have no idea. |
| 08:51 | 19 | Q.   Well, if you'd look at the subject matter of |
| 08:51 | 20 | Ms. Glaser's e-mail to you, you see it says, "Subject: |
| 08:51 | 21 | Forward Carter Bryant Agreement." |
| 08:51 | 22 | Does that help refresh your recollection that what was |
| 08:51 | 23 | attached was the Carter Bryant agreement? |
| 08:51 | 24 | A.   It does not. |
| 08:51 | 25 | Q.   Well, let's see if the rest does. |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 20 of 138   Page ID #:298331
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

20

| | | |
|---|---|---|
| 08:51 | 1 | You see it says, "MGA filed its Bratz-related case in |
| 08:51 | 2 | HK long before I filed mine." |
| 08:51 | 3 | Do you see that? |
| 08:51 | 4 | A.   Yes. |
| 08:51 | 5 | Q.   And was that correct that MGA filed a Bratz-related |
| 08:51 | 6 | case in Hong Kong before your brother filed his case? |
| 08:52 | 7 | A.   I believe so, yes. |
| 08:52 | 8 | Q.   It goes on, "I have been curious why this signed |
| 08:52 | 9 | agreement does not have Bates numbers and where Mattel |
| 08:52 | 10 | obtained it from." |
| 08:52 | 11 | Do you see that? |
| 08:52 | 12 | A.   I do. |
| 08:52 | 13 | Q.   Now, does that refresh your recollection that what was |
| 08:52 | 14 | attached and what is being talked about is the Carter Bryant |
| 08:52 | 15 | agreement, dated effective September 18, 2000? |
| 08:52 | 16 | A.   It doesn't.  I don't know if he -- here he's attaching |
| 08:52 | 17 | the complaint or agreement.  I have no idea. |
| 08:52 | 18 | Q.   Well, you see it says, "this signed agreement."  So |
| 08:52 | 19 | does that refresh your recollection that -- that it's an |
| 08:52 | 20 | agreement that your brother is talking about here? |
| 08:52 | 21 | A.   It does not.  I don't even remember this e-mail. |
| 08:52 | 22 | THE COURT:  And I'm sorry.  For the record, I |
| 08:52 | 23 | understand your hearsay objection. |
| 08:52 | 24 | Last evening, with Mr. McConville, I discussed the |
| 08:52 | 25 | Court's reasoning.  I can put that to you succinctly:  It's |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 21 of 138   Page ID #:298332
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

21

| | | |
|---|---|---|
| 08:52 | 1 | a prior inconsistent statement. |
| 08:53 | 2 | There was a statement that was contradictory on |
| 08:53 | 3 | direct examination. |
| 08:53 | 4 | MS. KELLER:  Yes, Your Honor.  Mr. McConville |
| 08:53 | 5 | conveyed that to me. |
| 08:53 | 6 | It was for the record that I objected. |
| 08:53 | 7 | THE COURT:  All right. |
| 08:53 | 8 | BY MR. PRICE: |
| 08:53 | 9 | Q.  It goes on to say, "Is it possible that MGA filed this |
| 08:53 | 10 | in the Hong Kong action and Mattel obtained it from there?" |
| 08:53 | 11 | Do you see that? |
| 08:53 | 12 | A.  I see, I do. |
| 08:53 | 13 | Q.  Now, does that remind you that MGA was trying to keep |
| 08:53 | 14 | secret the actual Carter Bryant contract with MGA that was |
| 08:53 | 15 | dated as of September 18, 2000, the time when he was still |
| 08:53 | 16 | working for Mattel? |
| 08:53 | 17 | MS. KELLER:  Objection.  Calls for speculation. |
| 08:53 | 18 | THE WITNESS:  It does not, and we were -- |
| 08:53 | 19 | THE COURT:  Just a moment. |
| 08:53 | 20 | MS. KELLER:  Objection.  Calls for speculation. |
| 08:53 | 21 | THE COURT:  Just a minute.  It's the reference to |
| 08:54 | 22 | MGA. |
| 08:54 | 23 | Do you want to include "MGA and you"? |
| 08:54 | 24 | MR. PRICE:  Yes. |
| 08:54 | 25 | THE COURT:  All right.  I'll sustain the objection |

Case 2:04-cv-09049-DOC-RNB  Document 9870  Filed 02/14/11  Page 22 of 138  Page ID #:298333
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

22

| | | |
|---|---|---|
| 08:54 | 1 | on technical grounds. |
| 08:54 | 2 | Just reask it, Counsel. |
| 08:54 | 3 | BY MR. PRICE: |
| 08:54 | 4 | Q.  Let me ask it this way:  Does this refresh your |
| 08:54 | 5 | recollection that MGA and you were trying to keep secret the |
| 08:54 | 6 | agreement between MGA and Carter Bryant that was dated |
| 08:54 | 7 | effective September 18, 2000, a time when Mr. Bryant was |
| 08:54 | 8 | still working for Mattel? |
| 08:54 | 9 | MS. KELLER:  Objection.  Assumes facts not in |
| 08:54 | 10 | evidence. |
| 08:54 | 11 | THE COURT:  Overruled. |
| 08:54 | 12 | THE WITNESS:  No, it does not.  If we were gonna |
| 08:54 | 13 | keep it secret, why would we fight it in Hong Kong? |
| 08:54 | 14 | BY MR. PRICE: |
| 08:54 | 15 | Q.  Well, your understanding is that the Hong Kong court |
| 08:54 | 16 | files are, in fact, not available to the public, right? |
| 08:54 | 17 | A.  I don't know if they are or not. |
| 08:54 | 18 | Q.  Well, if you don't know if they are or not, then you |
| 08:55 | 19 | couldn't really say, "Why would we keep it secret if we |
| 08:55 | 20 | filed it there," right? |
| 08:55 | 21 | MS. KELLER:  Objection.  Argumentative. |
| 08:55 | 22 | THE COURT:  Sustained. |
| 08:55 | 23 | BY MR. PRICE: |
| 08:55 | 24 | Q.  Did you ever respond to your brother in writing about |
| 08:55 | 25 | this e-mail where he's -- where he's asking whether it's |

| | | |
|---|---|---|
| 08:55 | 1 | possible that Mattel got this signed agreement, that did not |
| 08:55 | 2 | have Bates numbers, possibly from the Hong Kong action? |
| 08:55 | 3 | A.   My brother did not send this e-mail to me.  He sent it |
| 08:55 | 4 | to Patty Glaser. |
| 08:55 | 5 | Q.   I understand that, but it was forwarded to you? |
| 08:55 | 6 | A.   It was. |
| 08:55 | 7 | Q.   So you did see it, right? |
| 08:55 | 8 | A.   I am on the e-mail.  I don't recall it, but if it's on |
| 08:55 | 9 | the e-mail, most likely I've seen it. |
| 08:55 | 10 | Q.   Particularly if it's forwarded to you by your attorney, |
| 08:55 | 11 | you're likely to have seen it, right? |
| 08:55 | 12 | A.   Yes. |
| 08:55 | 13 | Q.   So -- so my question, then, is having seen this, did |
| 08:55 | 14 | you ever send anything to your brother about whether or not |
| 08:56 | 15 | it's possible that Mattel got this signed agreement, that |
| 08:56 | 16 | did not have Bates numbers, from Hong Kong? |
| 08:56 | 17 | A.   I don't -- I did not.  I don't recall doing that. |
| 08:56 | 18 | Q.   Go to the next paragraph.  It says, "Had I known |
| 08:56 | 19 | anything about Mattel, I would have obviously told Howarth |
| 08:56 | 20 | not to file the unsigned CB agreement in court." |
| 08:56 | 21 | You understand that Howarth was your brother's attorney |
| 08:56 | 22 | in the case that he filed against you? |
| 08:56 | 23 | A.   That's correct. |
| 08:56 | 24 | Q.   And in connection with that case, is it true that -- |
| 08:56 | 25 | that Mr. Howarth, acting on behalf of your brother, filed |

DEBBIE GALE, U.S. COURT REPORTER

| 08:56 | 1 | the unsigned CB agreement? |
|---|---|---|
| 08:56 | 2 | A.    I believe he did. |
| 08:56 | 3 | Q.    And CB refers to Carter Bryant? |
| 08:57 | 4 | A.    It does. |
| 08:57 | 5 | Q.    And when you read this, did you understand -- was it |
| 08:57 | 6 | your understanding that your brother was saying, uh, that if |
| 08:57 | 7 | he had known about a Mattel issue, he never would have filed |
| 08:57 | 8 | publicly this unsigned Carter Bryant agreement? |
| 08:57 | 9 | A.    I have no idea what he meant. |
| 08:57 | 10 | Q.    Well, sitting here today just reading it, do you have |
| 08:57 | 11 | an understanding as to what that sentence means? |
| 08:57 | 12 | A.    What it says. |
| 08:57 | 13 | Q.    And your understanding is he's saying:  I wouldn't have |
| 08:57 | 14 | filed this agreement so it would be made available publicly |
| 08:57 | 15 | had he known anything about Mattel? |
| 08:57 | 16 | A.    Where does it says "publicly"?  He says, "Had I known |
| 08:57 | 17 | anything about Mattel, I would have obviously told Howarth |
| 08:57 | 18 | not to file the unsigned CB agreement in court."  That's |
| 08:57 | 19 | what he said.  The fact is that he filed it in court and in |
| 08:58 | 20 | Hong Kong.  We filed it in Hong Kong courts.  So there was |
| 08:58 | 21 | nothing to hide. |
| 08:58 | 22 | Q.    Well, look at the next sentence. |
| 08:58 | 23 | "MGA did not ask to enter into a protective order and |
| 08:58 | 24 | could have done so much earlier." |
| 08:58 | 25 | Do you see that? |

| | | |
|---|---|---|
| 08:58 | 1 | A.   I do.  I have no idea what he means. |
| 08:58 | 2 | Q.   Well, you have an understanding what a protective order |
| 08:58 | 3 | is, correct? |
| 08:58 | 4 | A.   I do. |
| 08:58 | 5 | Q.   You know there's one in this case? |
| 08:58 | 6 | A.   Yes. |
| 08:58 | 7 | Q.   And a protective order is something that prevents you |
| 08:58 | 8 | from disclosing certain documents to certain people, |
| 08:58 | 9 | correct? |
| 08:58 | 10 | A.   Yes. |
| 08:58 | 11 | Q.   And so what he's -- do you understand what he's saying |
| 08:58 | 12 | is that -- that MGA could have asked him to -- for a |
| 08:58 | 13 | protective order so the unsigned Carter Bryant agreement |
| 08:58 | 14 | wouldn't be available if -- correct? |
| 08:58 | 15 | A.   Yes.  And that goes to the point that, obviously, we |
| 08:58 | 16 | didn't ask for protective order because we had nothing to |
| 08:59 | 17 | hide. |
| 08:59 | 18 | Q.   What year was that? |
| 08:59 | 19 | A.   I don't remember the year. |
| 08:59 | 20 | Q.   Well, what year was it that your -- your brother and |
| 08:59 | 21 | you had this -- this dispute? |
| 08:59 | 22 | A.   I think he filed the lawsuit before Mattel filed |
| 08:59 | 23 | theirs. |
| 08:59 | 24 | Q.   Before 2004? |
| 08:59 | 25 | A.   That's correct. |

| | | |
|---|---|---|
| 08:59 | 1 | Q.   And how long before 2004?  Do you have any recollection |
| 08:59 | 2 | of that? |
| 08:59 | 3 | A.   I don't. |
| 08:59 | 4 | Q.   It was after this Hong Kong action was filed, right? |
| 08:59 | 5 | A.   Yes. |
| 08:59 | 6 | Q.   Is it your belief that once Mattel had information that |
| 08:59 | 7 | Carter Bryant had an agreement with MGA that was dated |
| 09:00 | 8 | effective as of the time where he was still working at |
| 09:00 | 9 | Mattel -- it's your belief that that information linked |
| 09:00 | 10 | together would be something that could raise suspicion? |
| 09:00 | 11 | THE COURT:  In his mind?  Because if it's in |
| 09:00 | 12 | Mattel's mind, it's not relevant. |
| 09:00 | 13 | MR. PRICE:  In his mind. |
| 09:00 | 14 | THE COURT:  All right. |
| 09:00 | 15 | THE WITNESS:  In my mind, when Mattel found out -- |
| 09:00 | 16 | and that was late 2000, early 2001 -- that MGA was doing |
| 09:00 | 17 | Bratz and Carter Bryant was behind it, and you have said now |
| 09:00 | 18 | even the Bratz name is a trade secret, and you were at MGA |
| 09:00 | 19 | Hong Kong to see the name "Bratz," if that was an issue, you |
| 09:00 | 20 | should have filed the lawsuit then, not wait six years. |
| 09:00 | 21 | That's my understanding. |
| 09:00 | 22 | BY MR. PRICE: |
| 09:00 | 23 | Q.   Well, my question was different. |
| 09:00 | 24 | MR. PRICE:  I move to strike. |
| 09:00 | 25 | THE COURT:  Strike the answer. |

| | | |
|---|---|---|
| 09:00 | 1 | Reask the question. |
| 09:00 | 2 | BY MR. PRICE: |
| 09:00 | 3 | Q.   My question was that in your -- your mind -- your mind, |
| 09:01 | 4 | that at a time when Mattel knew both that Bratz was in the |
| 09:01 | 5 | market and that Mr. Bryant was a designer of Bratz, and that |
| 09:01 | 6 | the contract between him and MGA was dated effective at a |
| 09:01 | 7 | time when he was still working for Mattel, at that time |
| 09:01 | 8 | would you agree that Mattel -- in your mind, Mattel should |
| 09:01 | 9 | have been suspicious? |
| 09:01 | 10 | A.   I don't know what my mind -- I have -- I can't -- I'm |
| 09:01 | 11 | not a lawyer.  I'm a toymaker, so I have no idea how to |
| 09:01 | 12 | answer that question. |
| 09:01 | 13 | Q.   Okay.  I'll ask it another way. |
| 09:01 | 14 | THE COURT:  Yeah, yesterday, Counsel, I allowed a |
| 09:01 | 15 | series of questions, which I'm not certain were correct. |
| 09:01 | 16 | And that is, I don't think it matters what he thinks about |
| 09:01 | 17 | Mattel.  It's his -- I'll let him testify about his own |
| 09:02 | 18 | concerns in these hypotheticals. |
| 09:02 | 19 | BY MR. PRICE: |
| 09:02 | 20 | Q.   I'm gonna switch it to you.  You said you were a |
| 09:02 | 21 | toymaker.  As a toymaker -- |
| 09:02 | 22 | A.   I'm still a toymaker. |
| 09:02 | 23 | Q.   As a toymaker, if you learned that one of your |
| 09:02 | 24 | designers went to a competitor, had come up with a brilliant |
| 09:02 | 25 | design that was just doing great in the market, I think |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 28 of 138   Page ID #:298339
CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

28

| | | |
|---|---|---|
| 09:02 | 1 | you've told us that would not raise suspicion in your mind, |
| 09:02 | 2 | correct? |
| 09:02 | 3 | MS. KELLER:  Objection.  Your Honor, asked and |
| 09:02 | 4 | answered yesterday numerous times. |
| 09:02 | 5 | THE COURT:  It was, Counsel.  But one more time |
| 09:02 | 6 | you can answer the question, sir. |
| 09:02 | 7 | THE WITNESS:  If that was not something that he |
| 09:02 | 8 | was working on at MGA as part of his job, no.  That's how |
| 09:02 | 9 | the business works. |
| 09:02 | 10 | BY MR. PRICE: |
| 09:02 | 11 | Q.  So as a toymaker, if you learned that your former |
| 09:02 | 12 | designer had gone to a competitor, come up with a brilliant |
| 09:02 | 13 | design, and then you learned that he had a contract with |
| 09:02 | 14 | that competitive toymaker that was dated effective as of a |
| 09:02 | 15 | date that he still worked for you, would that raise |
| 09:03 | 16 | suspicions in your mind? |
| 09:03 | 17 | A.  In my mind, if what he had come up with was not part of |
| 09:03 | 18 | his work and job at MGA and he had left MGA and gone to |
| 09:03 | 19 | another company and had come up with that design and it was |
| 09:03 | 20 | nothing like what we were doing or -- we were doing, it |
| 09:03 | 21 | would not raise suspicion.  That is how the industry works. |
| 09:03 | 22 | Q.  So -- so even those facts by themselves would not raise |
| 09:03 | 23 | suspicion in -- in your mind, correct? |
| 09:03 | 24 | A.  I don't know how else to answer this. |
| 09:03 | 25 | THE COURT:  It's been asked and answered, Counsel. |

| | | |
|---|---|---|
| 09:03 | 1 | BY MR. PRICE: |
| 09:03 | 2 | Q.   Now, Bratz, once it came into the market -- I'm sorry. |
| 09:03 | 3 | Let's go back to 21714.  I'm sorry. |
| 09:03 | 4 | You see it goes on to say, "Had I been treated with a |
| 09:03 | 5 | little caring, instead of being told I am not a man if I |
| 09:04 | 6 | don't sue."  Now, when you read that, did you have any |
| 09:04 | 7 | understanding as to what your brother was referring to? |
| 09:04 | 8 | A.   No.  He was just grumbling. |
| 09:04 | 9 | Q.   Did you have a conversation with your brother where you |
| 09:04 | 10 | said anything to the effect that he's not a man if he |
| 09:04 | 11 | doesn't sue? |
| 09:04 | 12 | A.   No, that's not how I talk.  I did not.  He's my younger |
| 09:04 | 13 | brother, who I brought from Iran here and I raised.  And |
| 09:04 | 14 | despite what he did, I still love him. |
| 09:04 | 15 | Q.   I asked you before whether you sent an e-mail in |
| 09:04 | 16 | response to the first part of this.  Did you, uh, |
| 09:04 | 17 | communicate with your brother concerning the third |
| 09:04 | 18 | paragraph? |
| 09:04 | 19 | A.   I did not communicate with him at all. |
| 09:04 | 20 | Q.   And then there's the next paragraph, "It is unfortunate |
| 09:04 | 21 | that what does not get emphasized is the fact that at the |
| 09:04 | 22 | end, I put family first and dropped the case". |
| 09:05 | 23 | Uh, you had some understanding as to what he meant in |
| 09:05 | 24 | that paragraph, right? |
| 09:05 | 25 | A.   I don't know what he meant in that paragraph, but I |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 30 of 138   Page ID
#:298341
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

30

| | | |
|---|---|---|
| 09:05 | 1 | know -- and it's on the record -- why he dropped his |
| 09:05 | 2 | lawsuit.  There was a court reporter there.  He found out |
| 09:05 | 3 | that it was mistake.  He had picked up the date 1999 from a |
| 09:05 | 4 | "wrong" *Wall Street Journal*.  And once Jennifer Maurus |
| 09:05 | 5 | testified that there was no Bratz in 2000, he apologized on |
| 09:05 | 6 | the record and dropped the case and cried and hugged me, and |
| 09:05 | 7 | I hugged him.  That's a fact. |
| 09:05 | 8 | Q.   So the fact he put in this e-mail in March of 2007 -- I |
| 09:05 | 9 | mean -- a fact, let me rephrase that. |
| 09:05 | 10 | This statement that's in this e-mail in March of 2007 |
| 09:05 | 11 | is incorrect? |
| 09:05 | 12 | A.   What is incorrect?  That we are family?  That we are |
| 09:06 | 13 | close? |
| 09:06 | 14 | Q.   Oh, no, not that. |
| 09:06 | 15 | A.   What are you talking about, then?  He says, "I put |
| 09:06 | 16 | family first."  Yes, we are family.  We are close.  We are |
| 09:06 | 17 | very close. |
| 09:06 | 18 | Q.   And my question is whether or not what he said here is |
| 09:06 | 19 | correct.  I understand you're a close family.  But did you |
| 09:06 | 20 | agree with this statement that "It's unfortunate that what |
| 09:06 | 21 | does not get emphasized is the fact that at the end, I put |
| 09:06 | 22 | family first and dropped the case"? |
| 09:06 | 23 | Did you think that is an inaccurate statement? |
| 09:06 | 24 | MS. KELLER:  Your Honor, I would object that the |
| 09:06 | 25 | record of that proceeding speaks for itself. |

| | | |
|---|---|---|
| 09:06 | 1 | THE COURT:  On one hand, I've cautioned about |
| 09:06 | 2 | gratuitous comments; on the other hand, this opens the door |
| 09:06 | 3 | for a gratuitous comment, Counsel. |
| 09:06 | 4 | MR. PRICE:  Well, I -- I think it's a -- I could |
| 09:07 | 5 | follow up with what's incorrect.  I think it's a "yes" or |
| 09:07 | 6 | "no" question. |
| 09:07 | 7 | THE COURT:  Maybe you should narrow it as best you |
| 09:07 | 8 | can. |
| 09:07 | 9 | (To the jury:) Now, remember, I've counseled the |
| 09:07 | 10 | jury concerning gratuitous comments or comments designed to |
| 09:07 | 11 | invoke sympathy on your part:  You can consider that for |
| 09:07 | 12 | credibility.  By the same token, you can consider counsel's |
| 09:07 | 13 | questions. |
| 09:07 | 14 | BY MR. PRICE: |
| 09:07 | 15 | Q.   Let me ask it this way:  After the case was dropped, |
| 09:07 | 16 | did you go forward and apply for an order seeking a million |
| 09:07 | 17 | dollars in attorneys' fees from your brother? |
| 09:07 | 18 | MS. KELLER:  Objection.  Irrelevant.  The Court's |
| 09:07 | 19 | prior rulings, Your Honor. |
| 09:07 | 20 | THE COURT:  We hadn't gone into this last evening, |
| 09:07 | 21 | Counsel. |
| 09:07 | 22 | I'm going to sustain the objection.  I'll discuss |
| 09:07 | 23 | it with you over the recess.  I don't want any surprises, so |
| 09:07 | 24 | spend the lunch with me. |
| | 25 | |

CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

32

| | | |
|---|---|---|
| 09:07 | 1 | BY MR. PRICE: |
| 09:07 | 2 | Q.   So you'll agree that by this time, by March 7, 2007, |
| 09:08 | 3 | Bratz was successful, right? |
| 09:08 | 4 | A.   Yes, it was. |
| 09:08 | 5 | Q.   And in being successful, your understanding was that it |
| 09:08 | 6 | took market share from Barbie, right? |
| 09:08 | 7 | THE WITNESS:  Your Honor, can we take a break, |
| 09:08 | 8 | please? |
| 09:08 | 9 | THE COURT:  Certainly. |
| 09:08 | 10 | All right.  Ladies and gentlemen, you're |
| 09:08 | 11 | admonished not to discuss this matter amongst yourselves, |
| 09:08 | 12 | nor form or express any opinion concerning the case. |
| 09:08 | 13 | We'll come and get you in about 15 minutes. |
| 09:08 | 14 | We may have a series of shorter breaks today. |
| 09:08 | 15 | *(Jury recesses at 9:08 a.m.)* |
| 09:08 | 16 | THE COURT:  All right.  Counsel 15 minutes. |
| 09:08 | 17 | MS. KELLER:  Thank you, Your Honor. |
| 09:08 | 18 | *(Recess held at 9:08 a.m.)* |
| 09:21 | 19 | *(Proceedings resumed at 9:24 a.m.)* |
| 09:24 | 20 | *(In the presence of the jury.)* |
| 09:24 | 21 | THE COURT:  All right.  The jury's present.  The |
| 09:24 | 22 | alternates.  All counsel are present, the parties. |
| 09:24 | 23 | Counsel, Mr. Price, if you would like to continue, |
| 09:24 | 24 | please. |
| | 25 | |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 09:24 | 1 | **DIRECT EXAMINATION (Continued)** |
| 01:59 | 2 | BY MR. PRICE: |
| 09:24 | 3 | Q.   Mr. Larian, I was referring you, I think, or wanted to |
| 09:24 | 4 | refer you to Exhibit 22106. |
| 09:24 | 5 | *(Document provided to the witness.)* |
| 09:25 | 6 | THE WITNESS:  Go ahead. |
| 09:25 | 7 | BY MR. PRICE: |
| 09:25 | 8 | Q.   And you recall, before we broke I asked you whether or |
| 09:25 | 9 | not Bratz was increasing its market share at the expense of |
| 09:25 | 10 | Mattel.  Do you recall that? |
| 09:25 | 11 | A.   Yes. |
| 09:25 | 12 | Q.   And is this an e-mail where you were talking about |
| 09:25 | 13 | Bratz increasing its market share at the expense of the |
| 09:25 | 14 | competition? |
| 09:25 | 15 | A.   Yes.  It's competition.  Go ahead. |
| 09:26 | 16 | MR. PRICE:  I offer 22106 into evidence, |
| 09:26 | 17 | Your Honor. |
| 09:26 | 18 | THE COURT:  Received. |
| 09:26 | 19 | *(Exhibit No. 22106 received in evidence.)* |
| 09:26 | 20 | *(Document displayed.)* |
| 11:59 | 21 | BY MR. PRICE: |
| 09:26 | 22 | Q.   If we look at the very bottom e-mail, it just has the |
| 09:26 | 23 | "To," "From," at the bottom of the first page.  You see it |
| 09:26 | 24 | says, "From Hendrik Huigen, To Isaac Larian, February 25, |
| 09:26 | 25 | 2005."  Do you see that? |

CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

34

| | | |
|---|---|---|
| 09:26 | 1 | Q.    Who is Mr. Huigen? |
| 09:26 | 2 | A.    I have no idea.  I don't remember him. |
| 09:26 | 3 | Q.    If we look at the second page, it says, "Subject: NPD |
| 09:26 | 4 | January 2005 versus January 2004." |
| 09:26 | 5 | Do you see that? |
| 09:26 | 6 | A.    I do. |
| 09:26 | 7 | Q.    And what is NPD? |
| 09:26 | 8 | A.    NPD is a service that tracks market share in the toy |
| 09:26 | 9 | category. |
| 09:26 | 10 | Q.    And is that a service which you've used over the years? |
| 09:26 | 11 | A.    Yes, we have. |
| 09:26 | 12 | Q.    Is it a service that you believe gives reliable |
| 09:27 | 13 | information? |
| 09:27 | 14 | A.    Not now, because -- for the past few years that |
| 09:27 | 15 | information is not reliable, because it's based on a certain |
| 09:27 | 16 | small sample.  Prior to that, they used to get information |
| 09:27 | 17 | directly from retailers and it was a lot more reliable.  But |
| 09:27 | 18 | in the USA, I think they would also agree that their |
| 09:27 | 19 | information is not very reliable because of the small sample |
| 09:27 | 20 | of people they talk to. |
| 09:27 | 21 | Q.    So during what years did you believe NPD information |
| 09:27 | 22 | was reliable? |
| 09:27 | 23 | A.    I don't remember when they stopped using retailer POS |
| 09:27 | 24 | data.  I don't remember the year. |
| 09:27 | 25 | Q.    So in 2005, though, at that point you thought their |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

35

| 09:27 | 1 | information was reliable, correct? |
| 09:27 | 2 | A.   I don't remember.  I don't have state of mind in 2005. |
| 09:27 | 3 | Q.   Well, Mr. Huigen's reporting to you comparison of |
| 09:27 | 4 | January 2005 to 2004 and market results for Barbie.  You see |
| 09:28 | 5 | where it says, "based on share of dollars," it says, "Bratz |
| 09:28 | 6 | increased 21 percent.  Barbie decreased minus 18 percent." |
| 09:28 | 7 | Do you see that? |
| 09:28 | 8 | A.   Yes, I see that. |
| 09:28 | 9 | Q.   So the information you're getting is comparing Bratz to |
| 09:28 | 10 | Barbie, correct? |
| 09:28 | 11 | A.   That's what he's doing in here, yes. |
| 09:28 | 12 | Q.   And then let's look at your were responsive e-mail, and |
| 09:28 | 13 | this is dated February 26, 2005.  On the first page -- and |
| 09:28 | 14 | that's from you to -- can you tell us who those are to?  I |
| 09:28 | 15 | don't remember their names coming up before. |
| 09:28 | 16 | A.   Paulette Prim, Manny Francione, Jim Feldt, John |
| 09:28 | 17 | Barbour, Fred Fortier. |
| 09:29 | 18 | Q.   Who are those folks? |
| 09:29 | 19 | A.   These are buyers and executives at Toys R Us. |
| 09:29 | 20 | Q.   And you write to them, "FYI, Bratz brand is having a |
| 09:29 | 21 | major increase in market share at the expense of the |
| 09:29 | 22 | competition.  Thanks for your support."  Correct? |
| 09:29 | 23 | A.   Yes. |
| 09:29 | 24 | Q.   And when you say "competition," you're referring to |
| 09:29 | 25 | Barbie? |

CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

36

| | | |
|---|---|---|
| 09:29 | 1 | A.    No.   I'm referring to fashion doll business as a whole. |
| 09:29 | 2 | Q.    But the information you were given from Mr. Huigen, |
| 09:29 | 3 | that is, the e-mail before, gives statistics comparing Bratz |
| 09:29 | 4 | to Barbie, correct? |
| 09:29 | 5 | A.    That's what he does, yes. |
| 09:29 | 6 | Q.    And the Bratz -- let me step back. |
| 09:29 | 7 | You or your representatives have made representations, |
| 09:29 | 8 | factual representations, in courts about the origins of the |
| 09:29 | 9 | Bratz dolls, correct? |
| 09:29 | 10 | MS. KELLER:  Objection.  Vague. |
| 09:30 | 11 | THE WITNESS:  I don't understand your question. |
| 08:44 | 12 | BY MR. PRICE: |
| 09:30 | 13 | Q.    Have you or your legal representatives made |
| 09:30 | 14 | representations in any courts concerning when Carter Bryant |
| 09:30 | 15 | did his Bratz designs? |
| 09:30 | 16 | MS. KELLER:  Objection.  Vague.  And prior |
| 09:30 | 17 | rulings. |
| 09:30 | 18 | MR. PRICE:  Factual statement, Your Honor. |
| 09:30 | 19 | THE COURT:  If this involves the Hong Kong issues, |
| 09:30 | 20 | then I'm allowing that, as I said during the evening, to |
| 09:30 | 21 | show the protection, if you will, that MGA undertook in |
| 09:30 | 22 | light of Mr. Larian's testimony.  But not for any other |
| 09:30 | 23 | purpose.  So I'm not certain why this is being brought up. |
| 09:30 | 24 | MR. PRICE:  It was about factual statements made |
| 09:30 | 25 | about the process of -- of creating the dolls, not about |

| | | |
|---|---|---|
| 09:30 | 1 | comparisons. |
| 09:30 | 2 | THE COURT:  In what time period? |
| 09:30 | 3 | MR. PRICE:  Uh, I'll find the date. |
| 09:30 | 4 | THE COURT:  In other words, I think it's relevant |
| 09:30 | 5 | concerning MGA's capability around the time of 2000, up to |
| 09:31 | 6 | the launch in 2001, whether they had the capability or not. |
| 09:31 | 7 | But in 2006 or 2007? |
| 09:31 | 8 | MR. PRICE:  It's not concerning the August -- it's |
| 09:31 | 9 | not concerning the 2001 -- 2000 to 2001 time period. |
| 09:31 | 10 | THE COURT:  Is it during the time period of |
| 09:31 | 11 | 2000/2001? |
| 09:31 | 12 | MR. PRICE:  It is not. |
| 09:31 | 13 | THE COURT:  Okay. |
| 09:31 | 14 | MR. PRICE:  And, Your Honor, I can hold off on |
| 09:31 | 15 | this.  My understanding is we can do factual statements but |
| 09:31 | 16 | not comparisons. |
| 09:31 | 17 | THE COURT:  If I knew where you were going, I |
| 09:31 | 18 | probably wouldn't have a concern.  I just don't know where |
| 09:31 | 19 | you're going with this, and I made some prior rulings. |
| 09:31 | 20 | MR. PRICE:  You have.  My understanding may be |
| 09:31 | 21 | different, though.  I thought we could do factual |
| 09:31 | 22 | representations, not comparisons, if the representation was |
| 09:31 | 23 | made, what year -- or say what year it was made. |
| 09:31 | 24 | THE COURT:  I guess I'm missing it.  I apologize. |
| 09:31 | 25 | MR. PRICE:  Sure.  I thought that in any filings, |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 38 of 138   Page ID #:298349
CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

38

| | | |
|---|---|---|
| 09:31 | 1 | like I said, in the statement to a waitress -- |
| 09:31 | 2 | THE COURT:  Certainly. |
| 09:31 | 3 | MR. PRICE:  -- that we could go into factual |
| 09:32 | 4 | representations made. |
| 09:32 | 5 | THE COURT:  Oh, you can as long as it concerns |
| 09:32 | 6 | Bratz launch.  Absolutely. |
| 09:32 | 7 | MR. PRICE:  It's not concerning that time period; |
| 09:32 | 8 | it's concerning different -- |
| 09:32 | 9 | THE COURT:  You can.  If there are subsequent |
| 09:32 | 10 | statements made in a legal document filed by MGA or |
| 09:32 | 11 | Mr. Larian, you certainly can. |
| 09:32 | 12 | MR. PRICE:  That's what I'm talking about. |
| 09:32 | 13 | THE COURT:  My apologies.  I thought you were |
| 09:32 | 14 | going into similarities. |
| 09:32 | 15 | MR. PRICE:  No. |
| 09:32 | 16 | THE COURT:  Okay.  Thank you. |
| 09:32 | 17 | BY MR. PRICE: |
| 09:32 | 18 | Q.   So let me give you a document so you can kind of get my |
| 09:32 | 19 | question in context -- okay -- understand it. |
| 09:32 | 20 | And I'm going to show you 13561, and specifically |
| 09:32 | 21 | direct your attention to page 244.  Okay? |
| 09:32 | 22 | THE COURT:  Counsel, I'd like to see a copy of |
| 09:32 | 23 | that also.  In other words, for my record, the Court has |
| 09:33 | 24 | close to 40 volumes just concerning this witness.  And to |
| 09:33 | 25 | get into each one of those volumes would be rather difficult |

| | | |
|---|---|---|
| 09:33 | 1 | and pay attention to the case.  So counsel will be kind |
| 09:33 | 2 | enough to give me a copy and give me the page. |
| 09:33 | 3 | MR. PRICE:  Your Honor, we're going to use a |
| 09:33 | 4 | different number.  I think it's easier. |
| 09:33 | 5 | It's 10175. |
| 09:33 | 6 | THE COURT:  10175. |
| 09:33 | 7 | MR. PRICE:  And it's dash 0031. |
| 09:33 | 8 | THE COURT:  0031. |
| 09:33 | 9 | MR. PRICE:  And we'll bring a copy to you. |
| 09:33 | 10 | THE COURT:  Thank you.  That would be easiest |
| 09:33 | 11 | also.  Otherwise, I think it would take too much time.  And |
| 09:33 | 12 | what paragraph?  "Particulars"? |
| 09:33 | 13 | MR. PRICE:  Yes, it's going to be paragraph 7 on |
| 09:33 | 14 | that page. |
| 09:33 | 15 | THE WITNESS:  Under "copyright"? |
| 09:33 | 16 | MR. PRICE:  Yes. |
| 09:34 | 17 | MS. KELLER:  I'm sorry.  Counsel, you said |
| 09:34 | 18 | paragraph 7? |
| 09:34 | 19 | MR. PRICE:  7. |
| 09:34 | 20 | THE COURT:  Under "copyright."  It would be C-7. |
| 09:34 | 21 | MS. KELLER:  Page 031, Counsel? |
| 09:34 | 22 | MR. PRICE:  Yes.  I'm going to move in the |
| 09:34 | 23 | paragraph. |
| 09:34 | 24 | THE COURT:  All right.  Counsel, you may proceed. |
| 09:34 | 25 | I've seen this document.  I just hadn't gone through each |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 09:34 | 1 | page, obviously. |
| 11:59 | 2 | BY MR. PRICE: |
| 09:34 | 3 | Q.   Do you have that in front of you? |
| 09:34 | 4 | A.   I have that page in front of me.  This is a |
| 09:34 | 5 | hundred-page document. |
| 09:34 | 6 |         THE COURT:  Well, turn to page 10175-0031.  That's |
| 09:34 | 7 | the page counsel's referring to. |
| 09:35 | 8 |         THE WITNESS:  Go ahead.  I'm there. |
| 09:35 | 9 | BY MR. PRICE: |
| 09:35 | 10 | Q.   And looking at the document, you recognize this as a |
| 09:35 | 11 | document that has been filed with a Court? |
| 09:35 | 12 |         MS. KELLER:  Your Honor, we're actually missing |
| 09:35 | 13 | that particular page.  If we could just have one second. |
| 09:35 | 14 |         THE COURT:  Certainly. |
| 09:35 | 15 |         THE WITNESS:  Yes, that's what it refers to. |
| 09:35 | 16 |         MR. PRICE:  I'm sorry.  I was way over there |
| 09:35 | 17 | talking to your counsel. |
| 09:35 | 18 |         What was your response? |
| 09:35 | 19 |         THE WITNESS:  Yes.  You look at, it appears -- |
| 09:35 | 20 | page 002 appears to be a filing with the Court. |
| 09:35 | 21 | BY MR. PRICE: |
| 09:35 | 22 | Q.   And it's a filing on behalf of MGA, correct? |
| 09:35 | 23 | A.   Yes. |
| 09:35 | 24 | Q.   And if you'd look at page 01175-0031 (sic), you see in |
| 09:35 | 25 | No. 7 there, there's a representation about the designs of |

| | | |
|---|---|---|
| 09:35 | 1 | the Bratz dolls.  Do you see that? |
| 09:35 | 2 | A.  I don't see a representation.  I see what's written in |
| 09:36 | 3 | here. |
| 09:36 | 4 | Q.  You understand this was filed on behalf of MGA with |
| 09:36 | 5 | that court, correct? |
| 09:36 | 6 | A.  Yes. |
| 09:36 | 7 | MR. PRICE:  Your Honor, I would move just -- we'll |
| 09:36 | 8 | redact it and move that paragraph into evidence. |
| 09:36 | 9 | THE COURT:  Now, ladies and gentlemen, you should |
| 09:36 | 10 | know out of your presence I'm not allowing the entire |
| 09:36 | 11 | documents in.  Some of them I'm finding not to be relevant. |
| 09:36 | 12 | So I'm going to allow this page 0031 to be |
| 09:36 | 13 | received, unless you'd like the whole document.  I'm just |
| 09:36 | 14 | kidding you. |
| 09:36 | 15 | MS. KELLER:  Your Honor, is that the whole page |
| 09:36 | 16 | coming in or just the portion?  Well, I'll excise the rest |
| 09:36 | 17 | this evening.  I don't want to take Mattel's time.  You can |
| 09:36 | 18 | put that one paragraph up.  That's probably the only |
| 09:36 | 19 | relevant paragraph, if you're concerned. |
| 09:36 | 20 | *(Exhibit No. 10175-0031 received in* |
| 09:36 | 21 | *evidence.)* |
| 09:36 | 22 | *(Paragraph displayed.)* |
| 09:36 | 23 | BY MR. PRICE: |
| 09:36 | 24 | Q.  Thank you.  It says, "The designs of the Bratz dolls |
| 09:36 | 25 | were originally created by Mr. Carter Bryant in 1999 and |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 42 of 138   Page ID #:298353
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

42

| | | |
|---|---|---|
| 09:37 | 1 | subsequently amended."  And it says, "Copies of the drawings |
| 09:37 | 2 | of the designs are at Schedule 1." |
| 09:37 | 3 | Do you see that? |
| 09:37 | 4 | A.   I do. |
| 09:37 | 5 | Q.   So that paragraph is referring to drawings which have |
| 09:37 | 6 | been attached to this as Schedule 1.  Do you see that? |
| 09:37 | 7 | A.   I do. |
| 09:37 | 8 | Q.   And if you'd look at 10175-0039, so we know what we're |
| 09:37 | 9 | referring to. |
| 09:37 | 10 | A.   Make sure -- this is Hong Kong filing, right? |
| 09:37 | 11 | Q.   Yes.  Where it says 10175-0039, you see there's a |
| 09:37 | 12 | Schedule 1? |
| 09:37 | 13 | A.   What page again? |
| 09:37 | 14 | Q.   It's 10175-0039. |
| 09:37 | 15 | A.   Yes. |
| 09:37 | 16 | Q.   And -- and these are the Carter Bryant drawings that |
| 09:37 | 17 | are referred to in that paragraph where it says, "The |
| 09:37 | 18 | designs of the Bratz dolls were originally created by |
| 09:38 | 19 | Mr. Carter Bryant in 1999," correct? |
| 09:38 | 20 | A.   I see a lot of drawings, frankly.  In order for me to |
| 09:38 | 21 | put a context to this, I have to read this whole document. |
| 09:38 | 22 | Q.   Well -- |
| 09:38 | 23 | A.   I see some drawings here that I don't think I've ever |
| 09:38 | 24 | seen before. |
| 09:38 | 25 | Q.   Well, let's put it this way:  The paragraph 7 says, |

| | | |
|---|---|---|
| 09:38 | 1 | "Copies of the drawings of the designs are at Schedule 1," |
| 09:38 | 2 | correct? |
| 09:38 | 3 | A.   Yes. |
| 09:38 | 4 | Q.   Okay.  And if you look at 01 –– 10175-0039, that says |
| 09:38 | 5 | Schedule 1, correct? |
| 09:38 | 6 | A.   It does. |
| 09:38 | 7 | Q.   And that goes from 01175-0039 (sic) to 10175-0056.  Do |
| 09:38 | 8 | you see that? |
| 09:39 | 9 | A.   Yes, yes. |
| 09:39 | 10 | Q.   And then, if you go to the next page, 0057, that starts |
| 09:39 | 11 | Schedule 2? |
| 09:39 | 12 | A.   Yes. |
| 09:39 | 13 | Q.   All right.  Okay.  So looking at this document, you |
| 09:39 | 14 | understand Schedule 1 is between 01 –– 10175-0039 to |
| 09:39 | 15 | 10175-0056, correct? |
| 09:39 | 16 | A.   Yes. |
| 09:39 | 17 | MR. PRICE:  Your Honor, to get the meaning of |
| 09:39 | 18 | paragraph 7, I would just move in Schedule 1, which has no |
| 09:39 | 19 | comparisons. |
| 09:39 | 20 | THE COURT:  Received. |
| 09:39 | 21 | *(Exhibit No. 10175-0039 received in* |
| 09:39 | 22 | *evidence.)* |
| 09:39 | 23 | MR. PRICE:  And if we could put up, for example, |
| 09:39 | 24 | 10175-0046. |
| 09:40 | 25 | *(Document displayed.)* |

CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

44

| | | |
|---|---|---|
| 08:56 | 1 | BY MR. PRICE: |
| 09:40 | 2 | Q.   Do you see that? |
| 09:40 | 3 | A.   Yes. |
| 09:40 | 4 | Q.   And you see it has copyright 8/19/98.  Do you see that? |
| 09:40 | 5 | A.   I do. |
| 09:40 | 6 | Q.   And it's your understanding that date was put on there |
| 09:40 | 7 | in 2000, right? |
| 09:40 | 8 | A.   I have no idea.  I don't remember. |
| 09:40 | 9 | Q.   Now, another -- is it correct that in filings with the |
| 09:40 | 10 | Court -- |
| 09:40 | 11 | A.   That's not my handwriting, by the way, so I don't know |
| 09:40 | 12 | what it is. |
| 09:40 | 13 | Q.   Your handwriting is below that, correct? |
| 09:40 | 14 | A.   It is. |
| 09:40 | 15 | Q.   Where it -- |
| 09:40 | 16 | A.   My signature is my handwriting. |
| 09:40 | 17 | Q.   And that's where it says, "contract date and |
| 09:40 | 18 | 9/18/2000," correct? |
| 09:40 | 19 | A.   That is not my handwriting.  Only my signature is my |
| 09:40 | 20 | handwriting. |
| 09:40 | 21 | Q.   Well, this signature with this handwriting saying, |
| 09:40 | 22 | "Contract date September 18, 2000," it's your understanding |
| 09:41 | 23 | this is what was filed with the court by one of your |
| 09:41 | 24 | representatives? |
| 09:41 | 25 | A.   Yes. |

DEBBIE GALE, U.S. COURT REPORTER

```
09:41    1    Q.   Have you also made representations -- strike that --
09:41    2    MGA has made representations to the courts concerning the
09:41    3    process, the use of Mr. Bryant's drawings in the process of
09:41    4    making the Bratz dolls, correct?
09:41    5    A.   I don't remember.  I don't know what's in the...
09:41    6    Q.   Let me show you.  It's Exhibit 952.
09:41    7              (Document provided to the witness.)
09:42    8              THE WITNESS:  Go ahead.  Go ahead.
08:56    9    BY MR. PRICE:
09:42   10    Q.   And in particular, Mr. Larian, I'm gonna call your
09:42   11    attention to 952-0007.
09:42   12    A.   Go ahead.
09:42   13    Q.   And if you'd look at paragraph 16, do you see that?
09:43   14    A.   Yes.  I need a moment to read it.
09:43   15              MS. KELLER:  Your Honor, we're gonna object that
09:43   16    this --
09:43   17              THE COURT:  Would one of you bring me that page.
09:43   18              MS. KELLER:  This deals with a standard in
09:43   19    Hong Kong, Your Honor, rather than the United States, the
09:43   20    legal standard.
        21    BY MR. PRICE:
09:43   22    Q.   Have you had a chance to read paragraph 16?
09:44   23              THE COURT:  Just one moment.  Paragraph 16,
09:44   24    Counsel.  It's a statement concerning Anna Rhee.
09:44   25              Excuse me for just a moment.  This is off the
```

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 46 of 138   Page ID #:298357
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

46

| | | |
|---|---|---|
| 09:44 | 1 | record. |
| 09:44 | 2 | Ladies and gentlemen, just stretch for a moment. |
| 09:44 | 3 | *(Pause in the proceedings at 9:44 a.m.)* |
| 09:49 | 4 | *(Sidebar proceedings outside the presence of* |
| 09:49 | 5 | *the jury as follows:)* |
| 09:49 | 6 | THE COURT:  We're on the record.  I'm gonna order |
| 09:49 | 7 | all the films in my Court preserved from yesterday morning |
| 09:49 | 8 | through today.  I want to capture the demeanor of certain |
| 09:49 | 9 | counsel, and I want to capture what occurred today |
| 09:49 | 10 | apparently outside my presence concerning Mr. Larian and |
| 09:49 | 11 | Mr. Price. |
| 09:49 | 12 | My clerk came in very concerned about Mr. Larian |
| 09:49 | 13 | allegedly approaching Mr. Price.  I don't know what |
| 09:49 | 14 | happened, but I have the blessings of having a number of |
| 09:49 | 15 | cameras in my court, so I'll know at lunchtime. |
| 09:49 | 16 | MR. PRICE:  That's correct. |
| 09:49 | 17 | THE COURT:  That way there's no question about |
| 09:49 | 18 | demeanor in the Court.  There's no question about what |
| 09:49 | 19 | happens, so you're not under the gun. |
| 09:49 | 20 | MR. PRICE:  I appreciate that. |
| 09:49 | 21 | THE COURT:  This is my warning to you.  This is my |
| 09:49 | 22 | Court, and I'll absolutely control it.  And if Mr. Larian |
| 09:49 | 23 | gets out of line, I'm going to put him in custody. |
| 09:49 | 24 | Do you understand? |
| 09:49 | 25 | MS. KELLER:  I do. |

CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

47

| | | |
|---|---|---|
| 09:49 | 1 | THE COURT:  Is there any doubt? |
| 09:49 | 2 | MS. KELLER:  None. |
| 09:49 | 3 | THE COURT:  Any body language to me -- is there |
| 09:49 | 4 | any misunderstanding? |
| 09:49 | 5 | MR. QUINN:  No. |
| 09:49 | 6 | THE COURT:  Any? |
| 09:49 | 7 | MR. QUINN:  No, Your Honor.  He -- |
| 09:49 | 8 | THE COURT:  Thank you. |
| 09:49 | 9 | MR. QUINN:  -- came after me. |
| 09:49 | 10 | THE COURT:  I know that.  But from counsel to the |
| 09:49 | 11 | Court... |
| 09:49 | 12 | Understood? |
| 09:49 | 13 | MR. QUINN:  Has there been a concern in that |
| 09:49 | 14 | regard? |
| 09:49 | 15 | THE COURT:  Understood? |
| 09:49 | 16 | MR. QUINN:  Yes, it's understood. |
| 09:49 | 17 | THE COURT:  All right. |
| 09:49 | 18 | Now, since I have the blessings of having tapes, I |
| 09:49 | 19 | hope that message is very clear. |
| 09:49 | 20 | One is all that's gonna occur, and if I have to |
| 09:49 | 21 | control this Court with an iron hand, I will. |
| 09:49 | 22 | Now, I'm gonna see that tape at lunchtime. |
| 09:49 | 23 | I want to see exactly what happened out there. |
| 09:49 | 24 | That way I don't have to guess. |
| 09:49 | 25 | U.S. MARSHAL:  Okay. |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB  Document 9870  Filed 02/14/11  Page 48 of 138  Page ID #:298359
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

48

| | | |
|---|---|---|
| 09:49 | 1 | THE COURT:  Thank you very much. |
| 09:49 | 2 | *(End of sidebar proceedings at 9:50 a.m.)* |
| 09:52 | 3 | *(Proceedings resumed at 9:52 a.m.)* |
| 09:52 | 4 | *(In the presence of the jury.)* |
| 09:52 | 5 | THE COURT:  Ladies and gentlemen, I'm sorry.  That |
| 09:53 | 6 | was entirely my responsibility.  I had to take a recess for |
| 09:53 | 7 | some personal matters, and I asked counsel to join me.  It |
| 09:53 | 8 | has nothing to do with this case, and I appreciate your |
| 09:53 | 9 | forbearance. |
| 09:53 | 10 | Counsel, if you would like to continue, Mr. Price. |
| 09:53 | 11 | MR. PRICE:  Thank you, Your Honor. |
| 09:53 | 12 | BY MR. PRICE: |
| 09:53 | 13 | Q.  Mr. Larian, I'd ask you to look, if you could, at |
| 09:53 | 14 | 952-7? |
| 09:53 | 15 | A.  Yes. |
| 09:53 | 16 | Q.  And in particular paragraph 16. |
| 09:53 | 17 | A.  Yes. |
| 09:53 | 18 | MR. PRICE:  And, Your Honor, move -- first -- |
| 09:53 | 19 | BY MR. PRICE: |
| 09:53 | 20 | Q.  This was something filed with the Court on MGA's |
| 09:53 | 21 | behalf, correct? |
| 09:53 | 22 | A.  Yes. |
| 09:54 | 23 | MR. PRICE:  Your Honor, if I could read |
| 09:54 | 24 | paragraph 16. |
| 09:54 | 25 | THE COURT:  You may.  If there's an objection, it |

CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

49

| | | |
|---|---|---|
| 09:54 | 1 | was overruled, and you may do so. |
| 09:54 | 2 | MR. PRICE:  And we'd move paragraph 16 into |
| 09:54 | 3 | evidence. |
| 09:54 | 4 | THE COURT:  Received. |
| 09:54 | 5 | *(Exhibit No. 952-7 received in evidence.)* |
| 09:54 | 6 | *(Document displayed.)* |
| 09:54 | 7 | BY MR. PRICE: |
| 09:54 | 8 | Q.   "Based on and originated from the initial concept |
| 09:54 | 9 | drawings of Mr. Bryant, Anna Rhee drew some decoration |
| 09:54 | 10 | directions for the facial decorations for different series |
| 09:54 | 11 | of dolls.  She then created the original deco masters, which |
| 09:54 | 12 | are hand-painted facial decorations on a rubber-head sculpt |
| 09:54 | 13 | of the doll.  With the input of Mr. Bryant, Ms. Rhee revised |
| 09:54 | 14 | the deco masters a number of times until they are perfected, |
| 09:54 | 15 | being the final version that was used to serve as the |
| 09:54 | 16 | benchmark and template -- or template from which the |
| 09:54 | 17 | original four different Bratz dolls' individual facial |
| 09:54 | 18 | decorations are mass-produced by spray masking." |
| 09:55 | 19 | And then it goes on to refer to exhibits. |
| 09:55 | 20 | Do you see that? |
| 09:55 | 21 | A.   I do. |
| 09:55 | 22 | Q.   Do you see that paragraph refers to the initial concept |
| 09:55 | 23 | drawings on the first part of the -- right up there, 16? |
| 09:55 | 24 | A.   Yes. |
| 09:55 | 25 | Q.   And if you'd look at -- it's 00952-00004, paragraph 9. |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 50 of 138   Page ID #:298361
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

50

| | | |
|---|---|---|
| 09:55 | 1 | And do you see that that refers to LSC-3, which are |
| 09:55 | 2 | copies of 17 initial concept drawings? |
| 09:55 | 3 | A.   Just give me a moment to read this. |
| 09:56 | 4 | Q.   Sure. |
| 09:56 | 5 | A.   Go ahead. |
| 09:56 | 6 | Q.   And you see that this describes what is referred to as |
| 09:56 | 7 | the initial concept drawings? |
| 09:56 | 8 | A.   Yes. |
| 09:56 | 9 | Q.   And it gives a -- like an exhibit number to them, |
| 09:56 | 10 | LSC-3? |
| 09:56 | 11 | A.   Yes. |
| 09:56 | 12 |          MR. PRICE:  Your Honor, we would like to have |
| 09:56 | 13 | paragraph 9, 00952-00004, put into evidence as well. |
| 09:57 | 14 |          THE COURT:  Could I see that paragraph? |
| 09:57 | 15 |          THE WITNESS:  Is that what's on the screen? |
| 09:57 | 16 |          MR. PRICE:  No, that's paragraph 16. |
| 09:57 | 17 |          It's 00952-00004.  It's paragraph 9. |
| 09:57 | 18 |          THE COURT:  9.  All right.  I was looking at |
| 09:57 | 19 | paragraph 16 and listening at the same time.  I apologize. |
| 09:57 | 20 |          It's received. |
| 09:57 | 21 |          *(Exhibit No. 952-00004 received in evidence.)* |
| 09:57 | 22 |          MR. PRICE:  If we can put up paragraph 9. |
| 09:57 | 23 |           *(Document displayed.)* |
| 09:57 | 24 | BY MR. PRICE: |
| 09:57 | 25 | Q.   Can you see it says, "Now produced and shown to me, |

CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

51

| | | |
|---|---|---|
| 09:57 | 1 | marked," quote, "LSC-3, are copies of 17 initial concept |
| 09:58 | 2 | drawings of the first four Bratz dolls designed by |
| 09:58 | 3 | Mr. Bryant pursuant to Bryant agreement." |
| 09:58 | 4 | Do you see that? |
| 09:58 | 5 | A.   I do. |
| 09:58 | 6 | Q.   It goes on to say -- it identifies LSC-4 as a copy of a |
| 09:58 | 7 | sheet of paper setting out the concept and idea of the Bratz |
| 09:58 | 8 | dolls by Mr. Bryant.  Do you see that? |
| 09:58 | 9 | A.   Yes. |
| 09:58 | 10 | Q.   It says, "The girls represent best friends in high |
| 09:58 | 11 | school who love to trade clothes, shows, and hairdos." |
| 09:58 | 12 | Do you see that? |
| 09:58 | 13 | A.   Yes. |
| 09:58 | 14 | Q.   And that's part of the -- the presentation that |
| 09:58 | 15 | Mr. Bryant made to you in September of 2000, correct? |
| 09:58 | 16 | A.   The initial concept drawing, yes. |
| 09:58 | 17 | Q.   "Since these accessories are interchangeable, the dolls |
| 09:58 | 18 | can look different every day." |
| 09:58 | 19 | Do you see that? |
| 09:58 | 20 | A.   Yes. |
| 09:58 | 21 | Q.   And that's the concept that Mr. Bryant brought to you |
| 09:58 | 22 | in September of 2000? |
| 09:58 | 23 | A.   That's correct. |
| 09:58 | 24 | Q.   It goes on to say, "The success of the Bratz dolls |
| 09:58 | 25 | ensured a lucrative business of supplying accessories to the |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 09:58 | 1 | owners of Bratz dolls creating a steady stream of revenue." |
| 09:59 | 2 | Do you see that? |
| 09:59 | 3 | A.   I do. |
| 09:59 | 4 | Q.   And that's correct, is it not, that it was the success |
| 09:59 | 5 | of the dolls that ensured a lucrative business of supplying |
| 09:59 | 6 | accessories to the owners of the Bratz dolls, creating a |
| 09:59 | 7 | steady stream of revenue to MGA? |
| 09:59 | 8 | A.   The Bratz brand, yes. |
| 09:59 | 9 | Q.   Well, no; I'm talking about the success of the Bratz |
| 09:59 | 10 | dolls. |
| 09:59 | 11 | A.   That's what this says. |
| 09:59 | 12 | Q.   And the success of the Bratz dolls was necessary to |
| 09:59 | 13 | create a Bratz brand? |
| 09:59 | 14 | A.   Yes. |
| 09:59 | 15 | Q.   You see that refers to LSC-3? |
| 09:59 | 16 | A.   Yes. |
| 09:59 | 17 | Q.   Now, I'd like to refer you to Exhibit 13691-0001 -- |
| 09:59 | 18 | actually, I'm sorry.  It's just Exhibit 13691. |
| 09:59 | 19 | *(Document provided to the witness.)* |
| 10:00 | 20 | THE WITNESS:  Yes. |
| 10:00 | 21 | BY MR. PRICE: |
| 10:00 | 22 | Q.   And first, can you tell me who Lee Cheung is? |
| 10:00 | 23 | A.   It's Steven Lee, Chinese name. |
| 10:00 | 24 | Q.   And we talked about Mr. Lee before in your Hong Kong |
| 10:00 | 25 | office? |

| | | |
|---|---|---|
| 10:00 | 1 | A.    I'm sorry?  Yes. |
| 10:00 | 2 | Q.    Talked about Mr. Lee before in your Hong Kong office? |
| 10:00 | 3 | A.    Yes. |
| 10:00 | 4 | Q.    And you see this is something that Mr. Lee filed in a |
| 10:00 | 5 | Court, correct? |
| 10:00 | 6 | A.    This looks like it. |
| 10:00 | 7 | Q.    And this was on behalf of MGA? |
| 10:00 | 8 | A.    Yes. |
| 10:00 | 9 | Q.    And if you'd look at 13691-0028. |
| 10:01 | 10 | A.    Yes. |
| 10:01 | 11 | Q.    And you see this has attached to it an Exhibit |
| 10:01 | 12 | referenced as LSC-3.  Do you see that? |
| 10:01 | 13 | MS. KELLER:  I'm sorry, Counsel, is it dash 28 or |
| 10:01 | 14 | dash 8? |
| 10:01 | 15 | MR. PRICE:  It's dash 0028. |
| 10:01 | 16 | MS. KELLER:  Thank you. |
| 10:01 | 17 | THE WITNESS:  I'm sorry.  I'm lost a little bit. |
| 10:01 | 18 | BY MR. PRICE: |
| 10:01 | 19 | Q.    Sure.  Do you see 0028? |
| 10:01 | 20 | A.    Yes, I'm there. |
| 10:01 | 21 | Q.    And you see at the bottom of that it says, "This is the |
| 10:01 | 22 | marked exhibit"? |
| 10:01 | 23 | A.    Yes, I do. |
| 10:01 | 24 | Q.    And you see under "exhibit reference" it says, "LSC-3"? |
| 10:01 | 25 | A.    I do. |

| | | |
|---|---|---|
| 10:01 | 1 | Q.   And that's the same reference that we saw in |
| 10:02 | 2 | Exhibit 952, correct? |
| 10:02 | 3 | A.   I assume so.  I don't know if they are the same or not. |
| 10:02 | 4 | Q.   It says LSC-3 are the concept drawings? |
| 10:02 | 5 | A.   Yes. |
| 10:02 | 6 | MR. PRICE:  Your Honor, move that page in, which |
| 10:02 | 7 | is 13691-0028, although I'm going to ask for some pages |
| 10:02 | 8 | beyond that, so maybe we can wait. |
| 10:02 | 9 | THE COURT:  Can I see that document also. |
| 10:02 | 10 | Any objection? |
| 10:02 | 11 | MS. KELLER:  Same objections as lodged before, |
| 10:02 | 12 | Your Honor. |
| 10:02 | 13 | THE COURT:  If we're getting back into these |
| 10:02 | 14 | voluminous documents, it might be helpful as you get into |
| 10:02 | 15 | them to give them to me at that time. |
| 10:02 | 16 | Thank you very much.  It will save you some time. |
| 10:02 | 17 | *(Document provided to the Court.)* |
| 10:02 | 18 | THE COURT:  Received. |
| 10:03 | 19 | *(Exhibit No. 13691-0028 received in* |
| 10:03 | 20 | *evidence.)* |
| 10:03 | 21 | BY MR. PRICE: |
| 10:03 | 22 | Q.   And so this is what I was referring to, Mr. Larian. |
| 10:03 | 23 | You see it says this is the marked exhibit referenced in the |
| 10:03 | 24 | affirmation of a gentleman you know as Mr. Lee, dated the |
| 10:03 | 25 | 18th day of June 2003.  You see that? |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 55 of 138   Page ID #:298366
CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

55

| | | |
|---|---|---|
| 10:03 | 1 | A.    Yes. |
| 10:03 | 2 | Q.    And then it refers to Exhibit LSC-3, a copy of 17 |
| 10:03 | 3 | initial concept drawings? |
| 10:03 | 4 | A.    Yes. |
| 10:03 | 5 | Q.    And if you look at Exhibit 13691-0029, to 13691-0042. |
| 10:03 | 6 | Those are the drawings that are attached as Exhibit LSC-3, |
| 10:03 | 7 | correct? |
| 10:03 | 8 | A.    Give me one moment.  You said page 42? |
| 10:04 | 9 | Q.    Yes.  Up to page -- yes, 0042. |
| 10:04 | 10 | A.    Yes. |
| 10:04 | 11 | MR. PRICE:  I'd move into evidence 13691-0029 to |
| 10:04 | 12 | 13691-0042. |
| 10:04 | 13 | THE COURT:  Those are all the originals, I take |
| 10:04 | 14 | it? |
| 10:04 | 15 | MR. PRICE:  The drawings. |
| 10:04 | 16 | THE COURT:  Received. |
| 10:04 | 17 | *(Exhibit No. 13691-0029 received in* |
| 10:04 | 18 | *evidence.)* |
| 10:04 | 19 | *(Document displayed.)* |
| 10:04 | 20 | BY MR. PRICE: |
| 10:04 | 21 | Q.    So what are attached to this filing as the initial |
| 10:04 | 22 | concept drawings that were referred to by Ms. Rhee are what |
| 10:05 | 23 | we're showing here.  You've got -- for example, right there, |
| 10:05 | 24 | we have 13691-0030.  Do you see that? |
| 10:05 | 25 | A.    These are the exhibits that Mr. Lee is saying is |

56

| 10:05 | 1 | attached to his statement, I guess. |
| 10:05 | 2 | Q.   We've got 13691-0029? |
| 10:05 | 3 | MR. PRICE:  Put that up, Ken. |
| 10:05 | 4 | *(Document displayed.)* |
| 10:05 | 5 | BY MR. PRICE: |
| 10:05 | 6 | Q.   And this was one of the drawings that was presented to |
| 10:05 | 7 | you by Mr. Bryant in that September 2000 meeting, correct? |
| 10:05 | 8 | A.   I don't remember if it was or not. |
| 10:05 | 9 | Q.   Well, let's see if we can refresh your memory. |
| 10:05 | 10 | MR. PRICE:  Can you put Exhibit 302 up there with |
| 10:05 | 11 | Mr. Larian. |
| 10:05 | 12 | *(Document provided to the witness.)* |
| 10:05 | 13 | THE WITNESS:  Go ahead. |
| 10:05 | 14 | BY MR. PRICE: |
| 10:05 | 15 | Q.   Do you recognize that as being one of the drawings |
| 10:06 | 16 | presented to you by Mr. Bryant in September 2000? |
| 10:06 | 17 | A.   You need to direct me to a page so I don't need to go |
| 10:06 | 18 | through every page. |
| 10:06 | 19 | MR. PRICE:  Would you help him, Ms. Juarez. I |
| 10:06 | 20 | don't have that right in front of me. |
| 10:06 | 21 | MS. KELLER:  Your Honor, we're gonna object that |
| 10:06 | 22 | some of these are not. |
| 10:06 | 23 | THE COURT:  We can go through those.  And it was |
| 10:06 | 24 | represented to me that these were the appropriate drawings. |
| 10:06 | 25 | MS. KELLER:  Thank you, Your Honor. |

CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

57

| | | |
|---|---|---|
| 10:06 | 1 | THE COURT:  And I've gone through the documents, |
| 10:06 | 2 | but I haven't gone through, obviously, every page. |
| 10:06 | 3 | THE WITNESS:  Go ahead.  What was your question? |
| 10:06 | 4 | BY MR. PRICE: |
| 10:06 | 5 | Q.   This one, which we've got as -- back to the number, I'm |
| 10:06 | 6 | sorry -- 13691-0029, that was one of the drawings Mr. Bryant |
| 10:06 | 7 | presented to you in September of 2000? |
| 10:06 | 8 | A.   Again, I don't recall all those drawings.  But it's |
| 10:06 | 9 | very possible, yes. |
| 10:06 | 10 | Q.   13691-0030. |
| 10:07 | 11 | (Document displayed.) |
| 10:07 | 12 | BY MR. PRICE: |
| 10:07 | 13 | Q.   Do you recognize that as being -- |
| 10:07 | 14 | A.   Go a little slower. |
| 10:07 | 15 | Q.   Sure. |
| 10:07 | 16 | A.   Which number? |
| 10:07 | 17 | Q.   13691-0030. |
| 10:07 | 18 | A.   Yes. |
| 10:07 | 19 | Q.   You see that as one of the final fashion drawings? |
| 10:07 | 20 | MS. KELLER:  Objection. |
| 10:07 | 21 | BY MR. PRICE: |
| 10:07 | 22 | Q.   I think it's -- I apologize.  You see that as one of |
| 10:07 | 23 | the drawings that was in Mr. Bryant's September 2000 |
| 10:07 | 24 | presentation? |
| 10:07 | 25 | A.   Yeah, I don't know if it was this one or this one.  I |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

58

| | | |
|---|---|---|
| 10:07 | 1 | don't remember the differences in them.  So I don't |
| 10:07 | 2 | remember. |
| 10:07 | 3 | Q.    13691-0031. |
| 10:07 | 4 | *(Document displayed.)* |
| 10:07 | 5 | THE WITNESS:  I haven't received one either. |
| 10:07 | 6 | BY MR. PRICE: |
| 10:08 | 7 | Q.    And you see that's one of Mr. Bryant's drawings that |
| 10:08 | 8 | are -- were in the initial September 2000 presentation? |
| 10:08 | 9 | A.    I believe so, yes. |
| 10:08 | 10 | Q.    And these drawings in LSC-3 are drawings which were |
| 10:08 | 11 | represented to the Court to be copies of the 17 initial |
| 10:08 | 12 | concept drawings of the first four Bratz dolls designed by |
| 10:08 | 13 | Mr. Bryant pursuant to the Bryant agreement, correct? |
| 10:08 | 14 | MS. KELLER:  Objection.  Your Honor, as to every |
| 10:08 | 15 | one of these. |
| 10:08 | 16 | THE COURT:  Overruled. |
| 10:08 | 17 | You can answer the question, sir. |
| 10:08 | 18 | THE WITNESS:  I don't know if they were all there |
| 10:08 | 19 | or not.  I have no -- I don't know. |
| 10:08 | 20 | BY MR. PRICE: |
| 10:09 | 21 | Q.    My question was a little more specific. |
| 10:09 | 22 | When you say they weren't all there.  I'm just asking |
| 10:09 | 23 | this -- and if you can refer to Exhibit 952-00004, |
| 10:09 | 24 | paragraph 9, which we put into evidence. |
| 10:09 | 25 | MR. PRICE:  We can show that on the screen. |

CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

59

| | | |
|---|---|---|
| 10:09 | 1 | (Document displayed.) |
| 10:09 | 2 | MR. PRICE:  It's just that paragraph 9.  It's |
| 10:09 | 3 | 952-00004, paragraph 9. |
| 10:09 | 4 | (Document displayed.) |
| 10:09 | 5 | THE WITNESS:  Yes, go ahead. |
| 10:09 | 6 | BY MR. PRICE: |
| 10:09 | 7 | Q.   So your understanding it was these 17 initial concept |
| 10:09 | 8 | drawings, which is LSC-3, which were represented as copies |
| 10:09 | 9 | of 17 initial concept drawings of the first four Bratz dolls |
| 10:09 | 10 | designed by Mr. Bryant pursuant to the Bryant agreement, |
| 10:10 | 11 | correct? |
| 10:10 | 12 | A.   That's what it says. |
| 10:10 | 13 | Q.   And that's what was represented to a Court by an MGA |
| 10:10 | 14 | representative, correct? |
| 10:10 | 15 | A.   I assume so, yes. |
| 10:10 | 16 | Q.   And I apologize juggling between these documents that |
| 10:10 | 17 | kind of refer to each other.  If you'd look at 13691-0043. |
| 10:10 | 18 | MR. PRICE:  And that is not in evidence yet, Ken, |
| 10:10 | 19 | so don't put that up. |
| 10:10 | 20 | BY MR. PRICE: |
| 10:10 | 21 | Q.   Do you see that's marked as Exhibit LSC-4? |
| 10:10 | 22 | A.   Yes. |
| 10:11 | 23 | Q.   And if you'd go back to 952-00004, paragraph 9, which |
| 10:11 | 24 | is already in evidence.  We'll put that up on the screen |
| 10:11 | 25 | to -- so you don't have to keep juggling. |

| | | |
|---|---|---|
| 10:11 | 1 | A.   I'm lost.  I don't have that in front of me. |
| 10:11 | 2 |         MR. PRICE:  I'm gonna put it on the screen so it's |
| 10:11 | 3 | a little easier. |
| 10:11 | 4 |         *(Document displayed.)* |
| 10:11 | 5 | BY MR. PRICE: |
| 10:11 | 6 | Q.   You see in the second sentence of paragraph 9 it says, |
| 10:11 | 7 | "Now produced and shown to me, marked LSC-4, is copy of a |
| 10:11 | 8 | sheet of paper setting out the initial concept and the idea |
| 10:11 | 9 | of the Bratz dolls by Mr. Bryant." |
| 10:11 | 10 |         You see that? |
| 10:11 | 11 | A.   I see that. |
| 10:11 | 12 | Q.   Okay.  So let's juggle now back to 13691-0043 -- and |
| 10:11 | 13 | that I hope you have in front of you.  Since it's not in |
| 10:11 | 14 | evidence, we can't put it on the screen. |
| 10:12 | 15 | A.   Okay. |
| 10:12 | 16 | Q.   And it says they're marking the exhibit and Mr. Lee's |
| 10:12 | 17 | declaration LSC-4.  Do you see that? |
| 10:12 | 18 | A.   It says LSC-4 here. |
| 10:12 | 19 | Q.   And this was something filed in the court on behalf of |
| 10:12 | 20 | MGA, correct? |
| 10:12 | 21 | A.   Yes, I assume so. |
| 10:12 | 22 | Q.   And the next page, 13691-0044, is what is attached as |
| 10:12 | 23 | LSC-4, correct? |
| 10:12 | 24 |         MS. KELLER:  I'm sorry, Counsel, what page are we |
| 10:12 | 25 | on? |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB  Document 9870  Filed 02/14/11  Page 61 of 138  Page ID #:298372
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

61

| | | |
|---|---|---|
| 10:12 | 1 | THE COURT:  It's 13691-0044.  It's just the |
| 10:12 | 2 | following page.  It has "Bratz" with an exclamation mark at |
| 10:12 | 3 | the top and then a description. |
| 10:12 | 4 | MS. KELLER:  Thank you. |
| 10:12 | 5 | THE COURT:  Counsel, I'm going to allow the |
| 10:12 | 6 | receipt of this.  So if you want to put it up, it would be |
| 10:12 | 7 | easier probably. |
| 10:12 | 8 | MR. PRICE:  Thank you. |
| 10:12 | 9 | *(Exhibit No. 13691-0044 received in* |
| 10:12 | 10 | *evidence.)* |
| 10:12 | 11 | *(Exhibit No. 13591-0043 received in* |
| 10:12 | 12 | *evidence.)* |
| 10:12 | 13 | *(Document displayed.)* |
| 10:12 | 14 | BY MR. PRICE: |
| 10:12 | 15 | Q.   This is 0043, which describes LSC-4.  You see that? |
| 10:13 | 16 | The initial concept and idea of Bratz by Mr. Bryant? |
| 10:13 | 17 | A.   Yes. |
| 10:13 | 18 | Q.   And then we put up 0044, the next page, where it says |
| 10:13 | 19 | "Bratz, meet the Bratz," and then it describes what the |
| 10:13 | 20 | Bratz are.  You see that? |
| 10:13 | 21 | A.   Yes. |
| 10:13 | 22 | Q.   And perhaps Ms. Juarez can refer you to Exhibit 302. |
| 10:13 | 23 | And I think it's at the beginning of the exhibit, the second |
| 10:13 | 24 | page. |
| 10:13 | 25 | *(Document provided to the witness.)* |

| | | |
|---|---|---|
| 10:13 | 1 | BY MR. PRICE: |
| 10:13 | 2 | Q.   And do you see that this exhibit that was filed -- |
| 10:13 | 3 | (Document displayed.) |
| 10:13 | 4 | BY MR. PRICE: |
| 10:13 | 5 | Q.   -- with the Court as being the initial concept and idea |
| 10:13 | 6 | of Bratz dolls by Mr. Bryant was same page that was |
| 10:13 | 7 | presented to MGA in September 2000 by Mr. Bryant? |
| 10:13 | 8 | A.   Yes. |
| 10:14 | 9 | Q.   So it's correct that without the initial concept |
| 10:14 | 10 | drawings, without the initial concept about the Bratz that |
| 10:14 | 11 | were brought to you in September 2000, there would have been |
| 10:14 | 12 | no Bratz at MGA? |
| 10:14 | 13 | A.   The Bratz drawings that Carter Bryant brought to us |
| 10:14 | 14 | became the inspiration for what the Bratz dolls turned out |
| 10:14 | 15 | to be a year later and continued. |
| 10:14 | 16 | Q.   And my question is a little bit different, or maybe you |
| 10:14 | 17 | mean the same thing. |
| 10:14 | 18 | Let me ask you this:  When you say "those drawings," |
| 10:15 | 19 | that concept that was brought to you by Mr. Bryant in |
| 10:15 | 20 | September 2000 was the inspiration for the dolls, do you |
| 10:15 | 21 | mean that without Mr. Bryant bringing you those 17 or so |
| 10:15 | 22 | concept drawings and the concept that we see up on the |
| 10:15 | 23 | screen now -- that without that, there would have been no |
| 10:15 | 24 | Bratz dolls at MGA? |
| 10:15 | 25 | A.   No.  I'm not saying that to you.  Because there was a |

| | | |
|---|---|---|
| 10:15 | 1 | Bratz name which was out since 1996.  We purchased that |
| 10:15 | 2 | name, and we could have easily put that on another doll. |
| 10:15 | 3 | Q.   I wasn't specific enough, so let me be more specific. |
| 10:15 | 4 | Without Mr. Bryant in September of 2000 showing you the |
| 10:15 | 5 | 17 initial concept drawings, showing you his idea for |
| 10:16 | 6 | Bratz -- without that, there would have been no dolls, |
| 10:16 | 7 | whether named "Bratz" or "Kidz" or whatever, like the dolls |
| 10:16 | 8 | you came out with on the market that you call "Bratz"? |
| 10:16 | 9 | A.   Absolutely Carter Bryant's drawings were the |
| 10:16 | 10 | inspiration for Bratz. |
| 10:16 | 11 | Q.   So that means the answer to my question is "yes"? |
| 10:16 | 12 | A.   Carter Bryant's drawings were the inspiration for |
| 10:16 | 13 | Bratz.  That answer to that question is "yes."  I've said |
| 10:16 | 14 | that now many times. |
| 10:16 | 15 | Q.   And I'm just defining what you mean by inspiration. |
| 10:16 | 16 | A.   They were -- |
| 10:16 | 17 | Q.   Let me ask you this:  Do you mean by that, without |
| 10:16 | 18 | Mr. Bryant's 17 drawings that he gave you, without his |
| 10:16 | 19 | concept of Bratz, there would have been no dolls at MGA like |
| 10:16 | 20 | the dolls that came out in 2001? |
| 10:16 | 21 | A.   Yes.  They were the inspiration for Bratz, absolutely. |
| 10:17 | 22 | Q.   And without those drawings by Mr. Bryant and the |
| 10:17 | 23 | concept of Bratz, there would have been no steady stream of |
| 10:17 | 24 | revenue from Bratz accessories, things licensed with the |
| 10:17 | 25 | name Bratz on them, correct? |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 64 of 138   Page ID #:298375
CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

64

| | | |
|---|---|---|
| 10:17 | 1 | A.    Absolutely incorrect.  MGA took those drawings, created |
| 10:17 | 2 | doll, marketed it, advertised it, spent millions building |
| 10:17 | 3 | the brand, and then came the steady stream of the royalty |
| 10:17 | 4 | revenues.  There have been many, many -- I can name them if |
| 10:17 | 5 | you want -- dolls that have come to the market that have |
| 10:17 | 6 | never made it past the first year, including one from |
| 10:17 | 7 | Mr. Bryant himself, who brought to us, called "Sugar |
| 10:17 | 8 | Planet." |
| 10:18 | 9 | Q.    And my question's a little different. |
| 10:18 | 10 | Without Mr. Bryant coming to MGA while he was a Mattel |
| 10:18 | 11 | employee and showing you those drawings and that concept in |
| 10:18 | 12 | September of 2000 -- without that step, you never would have |
| 10:18 | 13 | had a steady stream of revenues based on the dolls that came |
| 10:18 | 14 | out in 2001, because you wouldn't have had those dolls, |
| 10:18 | 15 | right? |
| 10:18 | 16 | A.    Well, I think you're asking me two, three different |
| 10:18 | 17 | questions in one time. |
| 10:18 | 18 | Without his drawings and his inspirations, for -- on |
| 10:18 | 19 | those drawings, they would not have a Bratz doll that looked |
| 10:18 | 20 | like -- like this.  *(Indicating.)* |
| 10:18 | 21 | Q.    That's step one. |
| 10:18 | 22 | A.    Can I finish my answer? |
| 10:18 | 23 | Q.    Sure.  Let's go on to step two. |
| 10:18 | 24 | A.    I was not going to steps.  Would you like me to go |
| 10:18 | 25 | steps?  I mean, how do you want me to answer? |

CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

65

| 10:18 | 1 | Q. Okay. Well, you wouldn't have had the dolls that |
|---|---|---|
| 10:18 | 2 | looked like the ones in 2001. So it follows that you |
| 10:19 | 3 | wouldn't have a steady stream of revenues based on those |
| 10:19 | 4 | dolls without Mr. Bryant bringing those concepts to you |
| 10:19 | 5 | while he was a Mattel employee? |
| 10:19 | 6 | A. Your statement is not correct. You're trying to skip |
| 10:19 | 7 | five or six steps before we get to a stream of profits. I |
| 10:19 | 8 | don't agree with your statement. |
| 10:19 | 9 | Q. You have to take steps to make a brand out of dolls, |
| 10:19 | 10 | correct? |
| 10:19 | 11 | A. Yes. |
| 10:19 | 12 | Q. You have to invest to make the brand out of those |
| 10:19 | 13 | dolls, correct? |
| 10:19 | 14 | A. Yes. |
| 10:19 | 15 | Q. And you had made the decision to take those steps in |
| 10:19 | 16 | September of 2000, provided that Mr. Bryant signed a |
| 10:19 | 17 | contract, correct? |
| 10:19 | 18 | A. Yes. |
| 10:19 | 19 | Q. And you wouldn't have taken those steps to make a brand |
| 10:19 | 20 | to create this steady stream of revenue if Mr. Bryant hadn't |
| 10:20 | 21 | shown you these concept drawings, this concept in |
| 10:20 | 22 | September 2000 while he was an employee at Mattel, right? |
| 10:20 | 23 | A. He gave us drawings that became inspiration for Bratz. |
| 10:20 | 24 | But MGA is the company who invested millions of dollars and |
| 10:20 | 25 | its time over the years -- didn't happen overnight -- over |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 66 of 138   Page ID #:298377
CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

66

| 10:20 | 1 | years after years to build the Bratz brand, which -- which |
| 10:20 | 2 | brought in extreme amount of revenue.  That's the answer to |
| 10:20 | 3 | your question, sir. |
| 10:20 | 4 | Q.   One thing that MGA did to build this brand was to |
| 10:20 | 5 | create some style guides? |
| 10:20 | 6 | A.   Yes. |
| 10:20 | 7 | Q.   And the purpose of those style guides was to ensure |
| 10:20 | 8 | that licensees who were making Bratz dolls -- Bratz |
| 10:21 | 9 | accessories, uh, made it Bratz-y, made it, you know, |
| 10:21 | 10 | associated with Bratz, right? |
| 10:21 | 11 | A.   I don't understand your question. |
| 10:21 | 12 | Q.   All right.  It's a good comment. |
| 10:21 | 13 | The reason you had a style guide -- the style guide was |
| 10:21 | 14 | something that was given to licensees, correct? |
| 10:21 | 15 | A.   Yes. |
| 10:21 | 16 | Q.   And it talked about the kind of artwork that had to go |
| 10:21 | 17 | with the accessories, correct? |
| 10:21 | 18 | A.   I don't have a style guide in front of me to tell you. |
| 10:21 | 19 | We have done many style guides. |
| 10:21 | 20 | Q.   Well, if you'd look at Exhibit 23857. |
| 10:22 | 21 | *(Document provided to the witness.)* |
| 10:22 | 22 | BY MR. PRICE: |
| 10:22 | 23 | Q.   Do you recognize that as an MGA style guide -- |
| 10:22 | 24 | A.   I need to take a look at it.  Give me a moment. |
| 10:22 | 25 | Do you have better copy of this? |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 67 of 138   Page ID #:298378
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

67

| | | |
|---|---|---|
| 10:22 | 1 | Q.   Pardon? |
| 10:22 | 2 | THE WITNESS:  Do you have better copy of this? |
| 10:22 | 3 | MR. PRICE:  I don't know. |
| 10:22 | 4 | Can you read that? |
| 10:22 | 5 | THE WITNESS:  No.  Look at page 003, I can't make |
| 10:22 | 6 | anything out of that, or 004, or 005. |
| 10:22 | 7 | BY MR. PRICE: |
| 10:22 | 8 | Q.   You see the bottom -- |
| 10:22 | 9 | A.   Or 005. |
| 10:22 | 10 | Q.   If you look at the bottom, you see it has an MGA Bates |
| 10:22 | 11 | number? |
| 10:22 | 12 | A.   Yes, it has an MGA Bates number. |
| 10:22 | 13 | Q.   And so if you could look at that and tell me if there's |
| 10:22 | 14 | enough here for you to tell us whether or not this is a |
| 10:22 | 15 | Bratz style guide. |
| 10:22 | 16 | A.   I'm going through -- trying to go through the pages, |
| 10:22 | 17 | and if you look at -- |
| 10:23 | 18 | THE WITNESS:  Do you have a copy, same copy in |
| 10:23 | 19 | front of you? |
| 10:23 | 20 | BY MR. PRICE: |
| 10:23 | 21 | Q.   I do. |
| 10:23 | 22 | Mr. Larian, some pages look lighter than others.  Some |
| 10:23 | 23 | pages look darker than others.  And if you can tell me that |
| 10:23 | 24 | this looks like a Bratz style guide or not.  I mean, if you |
| 10:23 | 25 | can tell me, you can.  If you can't, you can't, but I'd ask |

| | | |
|---|---|---|
| 10:23 | 1 | you to look at the pages to see. |
| 10:23 | 2 | A.   I am looking at 'em, and it's not about darkness or |
| 10:23 | 3 | lightness.  Some pages there's not a word you can read on |
| 10:23 | 4 | it.  For example, page 003 or 005.  The copy I have in front |
| 10:23 | 5 | of me, I cannot read one word about it. |
| 10:23 | 6 | Q.   Okay.  Let's trade copies, because I can read what's on |
| 10:23 | 7 | those pages, and I'd be glad to switch copies. |
| 10:23 | 8 | A.   Maybe you can read it. |
| 10:24 | 9 | (Document provided to the witness.) |
| 10:24 | 10 | BY MR. PRICE: |
| 10:24 | 11 | Q.   Mr. Larian, is that an improvement? |
| 10:24 | 12 | A.   Yes.  Thank you for giving me a better copy. |
| 10:24 | 13 | Q.   So if you'd look at 23857, do you recognize that as a |
| 10:24 | 14 | style guide? |
| 10:24 | 15 | A.   Yes. |
| 10:24 | 16 | MR. PRICE:  Your Honor, move Exhibit 23857 into |
| 10:24 | 17 | evidence. |
| 10:24 | 18 | THE COURT:  Received. |
| 10:24 | 19 | (Exhibit No. 23857 received in evidence.) |
| 10:24 | 20 | (Document displayed.) |
| 10:24 | 21 | BY MR. PRICE: |
| 10:24 | 22 | Q.   And the reason for a style guide is so you have some |
| 10:24 | 23 | sort of brand consistency, right? |
| 10:24 | 24 | A.   Yes. |
| 10:24 | 25 | Q.   Some kind of likeness among the products that are Bratz |

| | | |
|---|---|---|
| 10:24 | 1 | products? |
| 10:24 | 2 | A.   That's part of it. |
| 10:25 | 3 | Q.   And if you look at the first page of the style guide, |
| 10:25 | 4 | that's Mr. Bryant's artwork, correct? |
| 10:25 | 5 | A.   Yes. |
| 10:25 | 6 | Q.   And if you look at the 11th page, dash 00011 -- |
| 10:25 | 7 | A.   Yes. |
| 10:25 | 8 | Q.   -- you see that is the character icons that go with the |
| 10:25 | 9 | specific characters? |
| 10:25 | 10 | A.   Yes. |
| 10:25 | 11 | Q.   So these icons were to be used with the specific |
| 10:25 | 12 | characters, correct? |
| 10:25 | 13 | A.   Yes. |
| 10:25 | 14 | Q.   And these sorts of images -- |
| 10:25 | 15 |          *(Document displayed.)* |
| 10:25 | 16 | BY MR. PRICE: |
| 10:25 | 17 | Q.   -- you know, that exhibit -- the first page, the 11th |
| 10:25 | 18 | page, those images are important to building the brand, to |
| 10:26 | 19 | have consistency in those images, right? |
| 10:26 | 20 | A.   Everything in this style guide is part of building |
| 10:26 | 21 | brand.  It takes a lot of things to build the brand. |
| 10:26 | 22 | Q.   And one of the things you want to be consistent about |
| 10:26 | 23 | are the images we've shown you, for example, dash 0001 and |
| 10:26 | 24 | then the icons, 000011? |
| 10:26 | 25 | A.   Yes, those are part of it. |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 70 of 138   Page ID #:298381
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

70

| | | |
|---|---|---|
| 10:26 | 1 | Q.   And the picture on 00001, which is the four characters, |
| 10:26 | 2 | was that picture on Bratz products? |
| 10:26 | 3 | A.   I think it was on some Bratz products. |
| 10:26 | 4 | Q.   Can you tell me what percentage it was on Bratz |
| 10:26 | 5 | products? |
| 10:26 | 6 | A.   I can't. |
| 10:26 | 7 | Q.   Is that something -- have you referred to that as the |
| 10:26 | 8 | hero pose? |
| 10:26 | 9 | A.   I think somebody has. |
| 10:26 | 10 | Q.   Well, did you ever refer to it as that? |
| 10:27 | 11 | A.   Possibly I have. |
| 10:27 | 12 | Q.   And one of the things that you would put in your style |
| 10:27 | 13 | guide to build this consistency in brand image is you would |
| 10:27 | 14 | describe the characters and their icons, correct? |
| 10:27 | 15 | A.   I'm sorry? |
| 10:27 | 16 | Q.   One of the things you would do to build the brand, to |
| 10:27 | 17 | have consistency, is, in your style guide, you would talk |
| 10:27 | 18 | about the characters and what icons were associated with |
| 10:27 | 19 | them? |
| 10:27 | 20 | A.   Yes. |
| 10:27 | 21 | Q.   If you'd look at 23857-00015. |
| 10:27 | 22 | *(Document displayed.)* |
| 10:27 | 23 | BY MR. PRICE: |
| 10:27 | 24 | Q.   Do you see that? |
| 10:27 | 25 | So, for example, that gives a character profile of Cloe |

CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

71

| | | |
|---|---|---|
| 10:27 | 1 | with the nickname "Angel" and the angel icon, right? |
| 10:27 | 2 | A.   Yes. |
| 10:27 | 3 | Q.   And your licensees were required to use this style |
| 10:27 | 4 | guide, right? |
| 10:27 | 5 | A.   Yes. |
| 10:27 | 6 | Q.   They were required to use this photograph that's on the |
| 10:27 | 7 | first page, the -- what's been referred to as the hero shot? |
| 10:28 | 8 | A.   Not necessarily, no.  You give them the style guide. |
| 10:28 | 9 | Let them choose whether they want to or not.  I know of many |
| 10:28 | 10 | products that did not have this hero shot on 'em. |
| 10:28 | 11 | Q.   The style guide did have requirements so that the Bratz |
| 10:28 | 12 | brand would contain consistency, right? |
| 10:28 | 13 | A.   Yes.  We wanted the Bratz brand to have consistency. |
| 10:28 | 14 | Q.   And the artwork that you have in this style guide for |
| 10:28 | 15 | the character is -- say, for example, at page 16, 00016. |
| 10:29 | 16 | *(Document displayed.)* |
| 10:29 | 17 | BY MR. PRICE: |
| 10:29 | 18 | Q.   That artwork was Mr. Bryant's artwork, correct? |
| 10:29 | 19 | A.   I don't know.  Probably, yes.  I don't know if -- |
| 10:29 | 20 | exactly or not.  I haven't memorized all these artworks. |
| 10:29 | 21 | Q.   And the style guide goes through each character, its |
| 10:29 | 22 | profile, its icons, its character, and provides drawings for |
| 10:29 | 23 | each character, right? |
| 10:29 | 24 | A.   I'm sorry.  Like I'm looking at page 18.  Those are not |
| 10:29 | 25 | Carter Bryant's drawings.  So I'm not sure if I understand |

| | | |
|---|---|---|
| 10:29 | 1 | your question correctly. |
| 10:29 | 2 | Q.   Let's go through a character, for example. |
| 10:29 | 3 | Look at page 00020. |
| 10:29 | 4 | *(Document displayed.)* |
| 10:29 | 5 | BY MR. PRICE: |
| 10:29 | 6 | Q.   That's the character profile for Jade, correct? |
| 10:29 | 7 | A.   Yes. |
| 10:29 | 8 | Q.   The –– her nickname is "Cool Cat"? |
| 10:29 | 9 | A.   Yes. |
| 10:29 | 10 | Q.   She has an icon of a cat, correct? |
| 10:29 | 11 | A.   Yes. |
| 10:30 | 12 | Q.   And that's a picture of the doll and artwork for Jade, |
| 10:30 | 13 | correct? |
| 10:30 | 14 | A.   Yes. |
| 10:30 | 15 | Q.   That artwork is Mr. Bryant's? |
| 10:30 | 16 | A.   Which artwork? |
| 10:30 | 17 | Q.   The one next to Jade. |
| 10:30 | 18 | A.   Here?  *(Indicating.)* |
| 10:30 | 19 | Q.   To the right of Jade. |
| 10:30 | 20 | A.   I don't know if it is or not.  I can't make out of it. |
| 10:30 | 21 | Q.   Look at the next page. |
| 10:30 | 22 | *(Document displayed.)* |
| 10:30 | 23 | BY MR. PRICE: |
| 10:30 | 24 | Q.   That drawing is Mr. Bryant's, correct? |
| 10:30 | 25 | A.   I don't know if it is or not. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

73

| | | |
|---|---|---|
| 10:30 | 1 | Q.   Well, I think you said that the first page, that was |
| 10:30 | 2 | Mr. Bryant's drawings.  If you look at the Jade on |
| 10:30 | 3 | page 00022 –– I'm sorry –– 00021. |
| 10:30 | 4 | A.   I'm on page 00022. |
| 10:30 | 5 | Q.   If you look at the Jade, which I described –– I'm sorry |
| 10:30 | 6 | I gave you the wrong number –– 00021, the one that's up |
| 10:30 | 7 | there. |
| 10:31 | 8 | A.   Right. |
| 10:31 | 9 | Q.   And you compare that to the Jade on the cover of the |
| 10:31 | 10 | style guide. |
| 10:31 | 11 | *(Document displayed.)* |
| 10:31 | 12 | THE WITNESS:  They are similar. |
| 10:31 | 13 | BY MR. PRICE: |
| 10:31 | 14 | Q.   00025, that's Sasha. |
| 10:31 | 15 | *(Document displayed.)* |
| 10:31 | 16 | THE WITNESS:  Yes. |
| 10:31 | 17 | BY MR. PRICE: |
| 10:31 | 18 | Q.   That has the icon of the bunny rabbit, right? |
| 10:31 | 19 | A.   It does. |
| 10:31 | 20 | Q.   Nicknamed "Bunny Boo"? |
| 10:31 | 21 | A.   Yes. |
| 10:31 | 22 | Q.   And the next page has some character art, 00026. |
| 10:31 | 23 | *(Document displayed.)* |
| 10:31 | 24 | THE WITNESS:  Yes. |
| | 25 | |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

74

| | | |
|---|---|---|
| 10:31 | 1 | BY MR. PRICE: |
| 10:31 | 2 | Q.   And that's Mr. Bryant's artwork, correct? |
| 10:31 | 3 | A.   Yes, looks like it. |
| 10:31 | 4 | Q.   Go to Yasmin.  That's 00030. |
| 10:31 | 5 | (Document displayed.) |
| 10:32 | 6 | THE WITNESS:  Yes. |
| 10:32 | 7 | BY MR. PRICE: |
| 10:32 | 8 | Q.   And that's a picture of the doll? |
| 10:32 | 9 | A.   Yes. |
| 10:32 | 10 | Q.   With the icon? |
| 10:32 | 11 | A.   Yes. |
| 10:32 | 12 | Q.   With the nickname "Pretty Princess"? |
| 10:32 | 13 | A.   Yes. |
| 10:32 | 14 | Q.   And that artwork is Mr. Bryant's? |
| 10:32 | 15 | A.   Which artwork? |
| 10:32 | 16 | Q.   On that page. |
| 10:32 | 17 | A.   I don't know if it is or not.  I don't see it on the |
| 10:32 | 18 | first page that you showed me.  Compare them. |
| 10:32 | 19 | Q.   Sure.  Look at the page after that, which is 00031. |
| 10:32 | 20 | A.   Yes. |
| 10:32 | 21 | Q.   And you see at least the artwork in the upper left-hand |
| 10:32 | 22 | corner, that's Mr. Bryant's artwork, correct? |
| 10:32 | 23 | A.   This one here?  (Indicating.) |
| 10:32 | 24 | Q.   In the left-hand corner, yes. |
| 10:32 | 25 | A.   Yes, that looks similar to that, that one. |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 75 of 138   Page ID #:298386
CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

75

| | | |
|---|---|---|
| 10:33 | 1 | Q.   And do you see that, page 00034, there are group poses? |
| 10:33 | 2 | *(Document displayed.)* |
| 10:33 | 3 | THE WITNESS:  Yes. |
| 10:33 | 4 | BY MR. PRICE: |
| 10:33 | 5 | Q.   And the one on the top is definitely Mr. Bryant's |
| 10:33 | 6 | artwork, correct? |
| 10:33 | 7 | A.   Yes. |
| 10:33 | 8 | Q.   As is the one on the bottom? |
| 10:33 | 9 | A.   No. |
| 10:33 | 10 | THE COURT:  Counsel, is there a pending question |
| 10:33 | 11 | without an answer?  I'm not sure. |
| 10:33 | 12 | MR. PRICE:  No.  I think he said -- |
| 10:33 | 13 | THE COURT:  As to the one on the bottom, the |
| 10:33 | 14 | answer was "no." |
| 10:33 | 15 | I'm sorry. |
| 10:33 | 16 | BY MR. PRICE: |
| 10:33 | 17 | Q.   Who drew the one on the bottom? |
| 10:33 | 18 | A.   I've no idea.  Probably designers at MGA. |
| 10:33 | 19 | Q.   Well, if you -- |
| 10:33 | 20 | A.   Artists at MGA.  I can just guess. |
| 10:34 | 21 | Q.   If you have no idea and can just guess, you can't tell |
| 10:34 | 22 | us it's not Mr. Bryant's? |
| 10:34 | 23 | A.   Yes, I can.  It's not Mr. Bryant's. |
| 10:34 | 24 | Q.   If you'd look at page 00004. |
| 10:34 | 25 | A.   Of what exhibit? |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 76 of 138   Page ID #:298387
CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

76

| | | |
|---|---|---|
| 10:35 | 1 | Q.   The same exhibit, 23857. |
| 10:35 | 2 | A.   Yes. |
| 10:35 | 3 | *(Document displayed.)* |
| 10:35 | 4 | BY MR. PRICE: |
| 10:35 | 5 | Q.   And you see at that point –– these are legal |
| 10:35 | 6 | specifications that you give to your licensees, correct? |
| 10:35 | 7 | A.   I need to read it. |
| 10:35 | 8 | Q.   Sure. |
| 10:35 | 9 | A.   Yes, go ahead. |
| 10:35 | 10 | Q.   And so MGA Entertainment provided this style guide to |
| 10:35 | 11 | its licensees for general guidelines on the appearance of |
| 10:36 | 12 | the licensed product, correct? |
| 10:36 | 13 | A.   I don't understand what you mean by "general guideline |
| 10:36 | 14 | on appearance." |
| 10:36 | 15 | Q.   Okay.  If you'd look at the first paragraph. |
| 10:36 | 16 | A.   Yes. |
| 10:36 | 17 | Q.   It says, "To facilitate your correct usage, here are |
| 10:36 | 18 | some general guidelines"? |
| 10:36 | 19 | A.   Yes, I see that. |
| 10:36 | 20 | Q.   By the way, this –– this shot on the first page, or |
| 10:36 | 21 | this drawing, 23857-00001. |
| 10:36 | 22 | *(Document displayed.)* |
| 10:36 | 23 | THE WITNESS:  Yes. |
| 10:36 | 24 | BY MR. PRICE: |
| 10:36 | 25 | Q.   That hero drawing was on the dolls that were displayed |

| | | |
|---|---|---|
| 10:36 | 1 | in the Hong Kong showroom in January 2001, correct? |
| 10:36 | 2 | A.   Dolls -- I don't remember them.  If you can show me, |
| 10:36 | 3 | then I can explain -- I can tell you yes or no. |
| 10:36 | 4 | Q.   There were other style guides that were used besides |
| 10:36 | 5 | this one over the years? |
| 10:36 | 6 | A.   Over the years, yes. |
| 10:37 | 7 | Q.   And let me just show you a couple so we can get them |
| 10:37 | 8 | into evidence and then move on. |
| 10:37 | 9 |      I think if you look at 23858. |
| 10:37 | 10 |         *(Document provided to the witness.)* |
| 10:38 | 11 |      THE WITNESS:  Do you want me go through every page |
| 10:38 | 12 | of this, sir? |
| 10:38 | 13 | BY MR. PRICE: |
| 10:38 | 14 | Q.   You can go through enough to tell us whether that's one |
| 10:38 | 15 | of the style guides MGA used. |
| 10:38 | 16 | A.   Yeah, it says "style guide." |
| 10:38 | 17 |      MR. PRICE:  Move 23858 into evidence. |
| 10:38 | 18 |      THE COURT:  Received. |
| 10:38 | 19 |      *(Exhibit No. 23858 received in evidence.)* |
| 10:38 | 20 |       *(Document displayed.)* |
| 10:38 | 21 |      MR. PRICE:  If we can show you 23859, which should |
| 10:38 | 22 | be right after that. |
| 10:38 | 23 |      THE WITNESS:  There are a couple of pages in front |
| 10:38 | 24 | of this exhibit which I'm not sure if it's style guide or |
| 10:38 | 25 | not. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:38 | 1 | BY MR. PRICE: |
| 10:38 | 2 | Q.   Which pages do you believe are not part of a style |
| 10:38 | 3 | guide? |
| 10:38 | 4 | A.   Again, I'm not sure if they are or not.  001, 002. |
| 10:39 | 5 | Q.   With respect to 00002, do you recall that the style |
| 10:39 | 6 | guides -- |
| 10:39 | 7 | A.   In order -- |
| 10:39 | 8 | Q.   Pardon? |
| 10:39 | 9 | A.   In order for me to really completely -- now that I've |
| 10:39 | 10 | seen this -- testify to it, I'd need to be able to go |
| 10:39 | 11 | through every page, because I don't know what other pages |
| 10:39 | 12 | have been inserted here by mistake or otherwise.  These |
| 10:39 | 13 | first two pages definitely I don't think are part of the |
| 10:39 | 14 | style guide. |
| 10:39 | 15 | Q.   You see that -- do you remember the style guides came |
| 10:39 | 16 | in -- maybe we can find an original up there. |
| 10:39 | 17 |      But the style guides would come in this trifolded |
| 10:39 | 18 | package? |
| 10:39 | 19 | A.   One of the style guides came like that. |
| 10:39 | 20 | Q.   Which had in it CDs? |
| 10:39 | 21 | A.   I don't know if had CD or not. |
| 10:40 | 22 | Q.   At a break, we'll see if we can get you the original on |
| 10:40 | 23 | that. |
| 10:40 | 24 |           THE COURT:  We can take a break now. |
| 10:40 | 25 |           MR. PRICE:  That would be great. |

| | | |
|---|---|---|
| 10:40 | 1 | THE COURT:  Ladies and gentlemen, I'm sorry for |
| 10:40 | 2 | all the breaks, but instead of just watching all of us thumb |
| 10:40 | 3 | through pages, the Court included, why don't you take a |
| 10:40 | 4 | recess. |
| 10:40 | 5 | We'll come back and get you in a moment.  You're |
| 10:40 | 6 | admonished not to discuss this matter amongst yourselves, |
| 10:40 | 7 | nor form or express any opinion concerning the case. |
| 10:40 | 8 | *(Jury recess held at 10:40 a.m.)* |
| 10:40 | 9 | THE COURT:  Mr. Larian, if you would have a seat, |
| 10:40 | 10 | sir. |
| 10:40 | 11 | *(Outside the presence of the jury.)* |
| 10:40 | 12 | THE COURT:  Counsel, have a seat. |
| 10:40 | 13 | (To the witness:) You can go through the guide. |
| 10:41 | 14 | *(Pause in the proceedings at 10:41 a.m)* |
| 10:41 | 15 | *(Proceedings resumed at 10:49 a.m.)* |
| 10:49 | 16 | *(In the presence of the jury.)* |
| 10:50 | 17 | THE COURT:  All right.  Then we're back in |
| 10:50 | 18 | session. |
| 10:50 | 19 | The jury, the witness is present, all counsel, |
| 10:50 | 20 | parties. |
| 10:50 | 21 | And, Mr. Price, if you would like to continue. |
| | 22 | BY MR. PRICE: |
| 10:50 | 23 | Q.   Mr. Larian, you were able to look through 23859? |
| 10:50 | 24 | A.   Yes. |
| 10:50 | 25 | Q.   And is that a Style Guide? |

CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

| | | |
|---|---|---|
| 10:50 | 1 | A.   Yes. |
| 10:50 | 2 | MR. PRICE:  Move 23859 into evidence. |
| 10:50 | 3 | THE COURT:  Received. |
| 10:50 | 4 | *(Exhibit No. 23859 received in evidence.)* |
| 04:59 | 5 | BY MR. PRICE: |
| 10:50 | 6 | Q.   Mr. Larian, do you have an employee who works for MGA |
| 10:50 | 7 | with the nickname of Pooey? |
| 10:51 | 8 | A.   Yes. |
| 10:51 | 9 | Q.   And could you tell us what his full name is, or what |
| 10:51 | 10 | you know of it, anyway? |
| 10:51 | 11 | A.   I call him "Pooey." |
| 10:51 | 12 | Q.   Could you tell us what Pooey does at MGA? |
| 10:51 | 13 | A.   He's a face painter. |
| 10:51 | 14 | Q.   Is he still working at MGA? |
| 10:51 | 15 | A.   He does. |
| 10:51 | 16 | Q.   He certainly was working at MGA a couple of weeks ago? |
| 10:51 | 17 | A.   He's still working at MGA. |
| 10:51 | 18 | Q.   Now, did there come a time this year when you and |
| 10:51 | 19 | Ms. Garcia spoke with Pooey about this case? |
| 10:51 | 20 | A.   I did talk to him, yes. |
| 10:51 | 21 | Q.   Can you tell us where that conversation took place? |
| 10:51 | 22 | MR. ZELLER:  I'm gonna object.  Misstates the |
| 10:51 | 23 | evidence on timing. |
| 10:51 | 24 | THE COURT:  Overruled.  Is it the conversation |
| 10:51 | 25 | itself, or is it the introduction of this evidence at this |

CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

81

| | | |
|---|---|---|
| 10:51 | 1 | time? |
| 10:52 | 2 | MR. PRICE:  It's timing, Your Honor. |
| 10:52 | 3 | MS. KELLER:  It's the timing. |
| 10:52 | 4 | THE COURT:  I don't know what timing means. |
| 10:52 | 5 | MS. KELLER:  The conversation itself, Your Honor. |
| 10:52 | 6 | THE WITNESS:  I can shortcut that and say it's |
| 10:52 | 7 | before trial. |
| 10:52 | 8 | THE COURT:  Just a minute.  Just a minute. |
| 10:52 | 9 | Well, a couple of weeks ago, Ms. Hurst is nodding |
| 10:52 | 10 | her head.  And you look concerned. |
| 10:52 | 11 | MS. KELLER:  No.  I'm just trying to differentiate |
| 10:52 | 12 | between the conversation and the Court's inquiry. |
| 10:52 | 13 | THE COURT:  Just reask the question. |
| 10:52 | 14 | MR. PRICE:  I'll reask it. |
| 10:52 | 15 | THE COURT:  All right. |
| 10:52 | 16 | BY MR. PRICE: |
| 10:52 | 17 | Q.   Did there come a time before trial started -- |
| 10:52 | 18 | A.   Before this trial, yes. |
| 10:52 | 19 | Q.   -- and -- that you had a conversation with this |
| 10:52 | 20 | gentleman that you know as Pooey? |
| 10:52 | 21 | A.   Yes. |
| 10:52 | 22 | Q.   Now, is it common for you to have conversations with |
| 10:52 | 23 | Pooey? |
| 10:52 | 24 | A.   Yes.  I have conversation with all my employees.  I'm |
| 10:52 | 25 | close with them.  I walk around and talk to them. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

82

| | | |
|---|---|---|
| 10:52 | 1 | Q.   And how many employees do you have now in the |
| 10:52 | 2 | United States? |
| 10:52 | 3 | A.   In MGA United States is -- we have a factory in Ohio, |
| 10:53 | 4 | so... |
| 10:53 | 5 | Q.   Let me narrow it down 'cause we don't need to get |
| 10:53 | 6 | everywhere.  But in MGA here in Southern California? |
| 10:53 | 7 | A.   I think we have about 150. |
| 10:53 | 8 | Q.   Do you remember the last time -- well, let me do it |
| 10:53 | 9 | this way:  What's your best recollection of the timing of |
| 10:53 | 10 | the conversation you had with Pooey shortly before the |
| 10:53 | 11 | trial? |
| 10:53 | 12 | A.   My conversation with Pooey is that I know that he's a |
| 10:53 | 13 | friend of Anna Rhee. |
| 10:53 | 14 | Q.   No, I'm sorry.  My question is what's your recollection |
| 10:53 | 15 | about the timing? |
| 10:53 | 16 | A.   Before the trial, a few month before the trial. |
| 10:53 | 17 | Q.   When you say a few months, would it have been in |
| 10:53 | 18 | December? |
| 10:53 | 19 | A.   I don't remember the exact date.  I don't know if it's |
| 10:53 | 20 | December or November. |
| 10:54 | 21 | THE COURT:  You're referring to this trial; is |
| 10:54 | 22 | that correct? |
| 10:54 | 23 | MR. PRICE:  Yes. |
| 10:54 | 24 | BY MR. PRICE: |
| 10:54 | 25 | Q.   Your memory -- you can't -- the conversation was |

| | | |
|---|---|---|
| 10:54 | 1 | concerning this trial, right? |
| 10:54 | 2 | A.   No.   The conversation was regarding Anna Rhee |
| 10:54 | 3 | complaining before, in the first trial, not having a lawyer; |
| 10:54 | 4 | that she had contacted MGA and –– many times –– and had |
| 10:54 | 5 | asked that we get her a lawyer, and nobody had contacted her |
| 10:54 | 6 | back.   That was the conversation. |
| 10:54 | 7 | Q.   Would you be able to remember whether it was in late |
| 10:54 | 8 | December versus November? |
| 10:54 | 9 | A.   No.   I'm sorry.   I don't. |
| 10:54 | 10 | Q.   I mean, that was a short while ago. |
| 10:54 | 11 | A.   It was.   I just don't remember it was November or |
| 10:54 | 12 | December.   Forgive me. |
| 10:55 | 13 | Q.   Can you reference it to an event, for example, the |
| 10:55 | 14 | holidays? |
| 10:55 | 15 | A.   I can't. |
| 10:55 | 16 | Q.   So you had a conversation with Pooey that you recall in |
| 10:55 | 17 | the last couple of months, right? |
| 10:55 | 18 | A.   Last couple of month.   It's before trial, before |
| 10:55 | 19 | 2011 time. |
| 10:55 | 20 | Q.   And can you tell us the location of that conversation? |
| 10:55 | 21 | A.   It was at MGA design center. |
| 10:55 | 22 | Q.   Was there a specific place, MGA design center, that you |
| 10:55 | 23 | had the conversation? |
| 10:55 | 24 | A.   Southeast, north corner –– it was one the cubicles at |
| 10:55 | 25 | MGA design center. |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 84 of 138   Page ID #:298395
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

84

| | | |
|---|---|---|
| 10:55 | 1 | Q.    And who else was in this conversation? |
| 10:55 | 2 | A.    It was me and Pooey. |
| 10:55 | 3 | Q.    Was Ms. Garcia there? |
| 10:55 | 4 | A.    No. |
| 10:55 | 5 | Q.    Now, at the time you had this conversation with Pooey, |
| 10:55 | 6 | you knew that Anna Rhee would be a witness in this case? |
| 10:55 | 7 | A.    I didn't know if she would be or not.  My assumption |
| 10:56 | 8 | was that she would be, yes. |
| 10:56 | 9 | Q.    And that's because she was a witness in another trial, |
| 10:56 | 10 | correct? |
| 10:56 | 11 | A.    She was Mattel's witness in the previous trial, yes. |
| 10:56 | 12 | Q.    And when you say "Mattel's witness," you mean she was |
| 10:56 | 13 | called in our case, correct? |
| 10:56 | 14 | A.    Yes.  And was represented by Mattel lawyers, paid by |
| 10:56 | 15 | Mattel, correct. |
| 10:56 | 16 | Q.    And you said that she had -- she had a number of times |
| 10:56 | 17 | asked for MGA to provide lawyers, correct? |
| 10:56 | 18 | A.    Before the first trial, yes.  That's what I heard her |
| 10:56 | 19 | say. |
| 10:56 | 20 | Q.    So your understanding, that was -- is that before the |
| 10:56 | 21 | first trial, she asked that there be an MGA lawyer to |
| 10:56 | 22 | represent her; and not hearing back, she had a Mattel lawyer |
| 10:56 | 23 | represent her at the trial?  That was your understanding? |
| 10:56 | 24 | A.    No.  My understanding was, is, that she had contacted |
| 10:56 | 25 | MGA few times saying that Mattel had contacted her, that she |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 85 of 138   Page ID #:298396
CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

85

| | | |
|---|---|---|
| 10:56 | 1 | didn't know what -- what was it about, and if MGA lawyer or |
| 10:57 | 2 | somebody could call her back.  And nobody had called her |
| 10:57 | 3 | back.  And then somebody from Mattel -- I don't remember |
| 10:57 | 4 | who -- Jill Thomas, or somebody, had gone and met her. |
| 10:57 | 5 | Q.   And the trial you're referring to was in 2008, correct? |
| 10:57 | 6 | A.   Yes. |
| 10:57 | 7 | Q.   And Ms. Rhee wanted a lawyer prior to her deposition, |
| 10:57 | 8 | correct? |
| 10:57 | 9 | A.   I don't know when she wanted a lawyer, but she had |
| 10:57 | 10 | called to ask for a lawyer. |
| 10:57 | 11 | Q.   You understand that her deposition was in 2005, right? |
| 10:57 | 12 | A.   I don't know when her deposition was. |
| 10:57 | 13 | Q.   Your understanding is that, prior to her deposition, |
| 10:57 | 14 | she had made calls to MGA to see if there could be |
| 10:57 | 15 | representation, and there was no response, correct? |
| 10:57 | 16 | A.   That's correct. |
| 10:57 | 17 | Q.   And if that was 2005, that was some six years ago? |
| 10:57 | 18 | A.   Yes. |
| 10:58 | 19 | Q.   And so in the last few months, you met with Pooey |
| 10:58 | 20 | somewhere, you said, in a cubicle? |
| 10:58 | 21 | A.   Yes. |
| 10:58 | 22 | Q.   Which is -- |
| 10:58 | 23 | A.   -- where he works. |
| 10:58 | 24 | Q.   Was the assumption that Anna Rhee would be a witness in |
| 10:58 | 25 | this case? |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 86 of 138   Page ID #:298397
CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

86

| | | |
|---|---|---|
| 10:58 | 1 | A.   Yes. |
| 10:58 | 2 | Q.   And your assumption was that she would testify to the |
| 10:58 | 3 | same facts she had previously testified about? |
| 10:58 | 4 | A.   No.  My assumption was that she would be a witness in |
| 10:58 | 5 | this case. |
| 10:58 | 6 |     And should I go to -- more over it -- or do you want to |
| 10:58 | 7 | ask me the question?  Should I tell the jury the whole fact, |
| 10:58 | 8 | or you want to go through step by step? |
| 10:58 | 9 | Q.   If you can respond to my questions, that's the way it |
| 10:58 | 10 | works. |
| 10:58 | 11 | A.   Okay. |
| 10:58 | 12 | Q.   You had heard her testimony before? |
| 10:58 | 13 | A.   Heard her testimony, yes, I had. |
| 10:58 | 14 | Q.   You had heard her testimony in 2008 that she had |
| 10:58 | 15 | painted a Bratz face in June or July of 2008 (sic), correct? |
| 10:59 | 16 | A.   Yes. |
| 10:59 | 17 | Q.   I mean -- I'm sorry.  You had heard her testimony in |
| 10:59 | 18 | 2008 that she had painted a Bratz face in June or July of |
| 10:59 | 19 | 2000, correct? |
| 10:59 | 20 | A.   I had. |
| 10:59 | 21 | Q.   And you knew that Pooey was a friend of Anna Rhee? |
| 10:59 | 22 | A.   Yes. |
| 10:59 | 23 | Q.   Now, were there any witnesses to this conversation |
| 10:59 | 24 | other than you and this individual who works for you, Pooey? |
| 10:59 | 25 | A.   I think I testified that now two times. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:59 | 1 | No, there was not. Only was me and him at his cubicle. |
| 10:59 | 2 | Q. And during the conversation you had with Pooey, you |
| 10:59 | 3 | asked him to contact Anna Rhee, right? |
| 10:59 | 4 | A. I did. |
| 10:59 | 5 | Q. And you explained to him what you wanted him to say to |
| 10:59 | 6 | Ms. Rhee? |
| 10:59 | 7 | A. I -- I wanted him to tell Anna Rhee that, if she want a |
| 11:00 | 8 | lawyer this time to -- to testify in this case, that, if she |
| 11:00 | 9 | wants, MGA can provide one. |
| 11:00 | 10 | Q. So you gave Pooey specific instructions as to what to |
| 11:00 | 11 | tell Ms. Rhee, correct? |
| 11:00 | 12 | A. Those specific questions that I wanted her to -- I |
| 11:00 | 13 | wanted him to ask her what I just told you: Call Anna Rhee. |
| 11:00 | 14 | Ask her if she wants a lawyer in this trial. If she does, |
| 11:00 | 15 | we can -- MGA can provide one. |
| 11:00 | 16 | Because last time she had called and we hadn't called |
| 11:00 | 17 | her back. |
| 11:00 | 18 | Q. By "last time," you were referring to six years ago? |
| 11:00 | 19 | A. That's correct. |
| 11:00 | 20 | Q. And it occurred to you, before this trial, when you |
| 11:00 | 21 | knew Ms. Rhee would be a witness -- and you already knew |
| 11:00 | 22 | what she'd testified to in 2008 -- |
| 11:00 | 23 | A. Yes. |
| 11:00 | 24 | Q. -- it occurred to you for the first time that you |
| 11:00 | 25 | should have someone contact her and offer to have an MGA |

| | | |
|---|---|---|
| 11:01 | 1 | lawyer represent her; is that right? |
| 11:01 | 2 | A.   I offer -- I knew that this trial was coming, I knew |
| 11:01 | 3 | that she had complained before that she had contacted MGA |
| 11:01 | 4 | and nobody had called her back.  And I just wanted her to |
| 11:01 | 5 | know that, if she wants lawyer, this time MGA would provide |
| 11:01 | 6 | one for her. |
| 11:01 | 7 | Q.   You knew this trial was coming for quite a while, |
| 11:01 | 8 | right? |
| 11:01 | 9 | A.   Yes. |
| 11:01 | 10 | Q.   I mean, you've known this trial was coming for, you |
| 11:01 | 11 | know -- how many years?  Or how long? |
| 11:01 | 12 | A.   Since Judge Carter set the trial date. |
| 11:01 | 13 | Q.   And that was months ago. |
| 11:01 | 14 | A.   I don't remember exactly, but -- when he set the trial |
| 11:01 | 15 | date, but he said -- Judge Carter said it's gonna be on |
| 11:01 | 16 | January 18. |
| 11:01 | 17 | Q.   You knew there was going to be a trial for a |
| 11:01 | 18 | significant period of time. |
| 11:01 | 19 | A.   I knew since Judge Carter made the ruling that's gonna |
| 11:01 | 20 | be a trial on January 18th.  So I don't know when -- what |
| 11:02 | 21 | you call "significant amount of time." |
| 11:02 | 22 | Q.   Well, do you know how long you've known there was gonna |
| 11:02 | 23 | be a trial in this Court? |
| 11:02 | 24 |             MS. KELLER:  Objection.  Asked and answered. |
| 11:02 | 25 |             MR. PRICE:  Talking about the period. |

CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

89

| | | |
|---|---|---|
| 11:02 | 1 | THE COURT: Counsel, why don't we just stipulate |
| 11:02 | 2 | that it was set in, I believe, September -- |
| 11:02 | 3 | MS. KELLER: Yes, Your Honor. |
| 11:02 | 4 | THE COURT: -- for this date? |
| 11:02 | 5 | MR. QUINN: Summer of 2010. |
| 11:02 | 6 | THE COURT: Yeah, summer of 2010. |
| 11:02 | 7 | Will that be stipulated to? |
| 11:02 | 8 | MS. KELLER: Um -- |
| 11:02 | 9 | THE COURT: Well, Ms. Keller, you might talk to |
| 11:02 | 10 | Ms. Hurst. |
| 11:02 | 11 | MS. KELLER: We're conferring. |
| 11:02 | 12 | Mr. McConville thinks it was July maybe. |
| 11:02 | 13 | THE COURT: No. |
| 11:02 | 14 | MS. KELLER: And Ms. Hurst thinks it was |
| 11:02 | 15 | September. |
| 11:02 | 16 | THE COURT: Why don't we just say late summer of |
| 11:02 | 17 | 2010? It was August or early September. |
| 11:02 | 18 | Counsel, will you stipulate to that? |
| 11:02 | 19 | MR. PRICE: Can we get a stipulation as to when |
| 11:02 | 20 | you got the case? |
| 11:02 | 21 | MR. QUINN: Fall 2008. |
| 11:03 | 22 | THE COURT: Fall 2008? |
| 11:03 | 23 | MS. KELLER: Your Honor, no. Because the trial |
| 11:03 | 24 | could not have been set until later, after the Court got the |
| 11:03 | 25 | case -- if there was going to be a trial. |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 90 of 138   Page ID #:298401
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

90

| | | |
|---|---|---|
| 11:03 | 1 | THE COURT:  That's why I think it's September.  It |
| 11:03 | 2 | could be early September, late August.  It was right around |
| 11:03 | 3 | that period of time.  I'm not certain. |
| 11:03 | 4 | MR. PRICE:  So stipulated. |
| 11:03 | 5 | THE COURT:  All right.  Can we say that the trial, |
| 11:03 | 6 | by stipulation, was set in early September 2010?  Okay? |
| 11:03 | 7 | MR. PRICE:  Thank you. |
| 11:03 | 8 | THE COURT:  Can we say that I received the case |
| 11:03 | 9 | sometime in 2009? |
| 11:03 | 10 | MR. QUINN:  I think you had it in 2008, |
| 11:03 | 11 | Your Honor. |
| 11:03 | 12 | THE WITNESS:  No.  2010. |
| 11:03 | 13 | THE COURT:  I know it seems like years for both of |
| 11:03 | 14 | you. |
| 11:03 | 15 | MS. KELLER:  Your Honor, I don't think that's -- |
| 11:03 | 16 | THE COURT:  It was October of -- |
| 11:03 | 17 | MR. ZELLER:  October of 2009, October -- |
| 11:03 | 18 | MS. KELLER:  Your Honor, our position would be |
| 11:03 | 19 | that's not relevant to the current question, due to the |
| 11:03 | 20 | status of the case, when the Court received it. |
| 11:03 | 21 | THE COURT:  It's not relevant to the current |
| 11:03 | 22 | question.  I think it's good enough that the Court, for its |
| 11:04 | 23 | purposes, set the date for this in early September of 2010. |
| 11:04 | 24 | Okay. |
| 11:04 | 25 | (To the jury:) And counsel have -- just seems that |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 91 of 138   Page ID
#:298402
CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

91

| | | |
|---|---|---|
| 11:04 | 1 | they think it's a lot longer with me. |
| 11:04 | 2 | MR. McCONVILLE:  Is it over yet, Your Honor? |
| 11:04 | 3 | MS. HURST:  I feel that way, too. |
| 11:04 | 4 | BY MR. PRICE: |
| 11:04 | 5 | Q.   So, Mr. Larian, you understood in early September 2010 |
| 11:04 | 6 | that this trial was going to take place? |
| 11:04 | 7 | A.   Yes. |
| 11:04 | 8 | Q.   And you understood in early September 2010 that |
| 11:04 | 9 | Ms. Rhee had previously testified, correct? |
| 11:04 | 10 | A.   Yes. |
| 11:04 | 11 | Q.   And you knew what she had previously testified about, |
| 11:04 | 12 | correct? |
| 11:04 | 13 | A.   Yes. |
| 11:04 | 14 | Q.   And you knew she had previously testified that she had |
| 11:04 | 15 | fainted a pace -- painted a face on a Bratz doll sometime |
| 11:04 | 16 | June or July of 2000, correct? |
| 11:04 | 17 | A.   Whatever she testified to. |
| 11:04 | 18 | Q.   Well, you remember that testimony, right? |
| 11:04 | 19 | A.   Yes. |
| 11:04 | 20 | Q.   And so -- in September of 2010, did you -- do you |
| 11:04 | 21 | contact her to discuss something about a lawyer? |
| 11:05 | 22 | A.   I did not. |
| 11:05 | 23 | Q.   Did you ask anyone to? |
| 11:05 | 24 | A.   No. |
| 11:05 | 25 | Q.   And, by that time, it had been six years since she had |

CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

92

| 11:05 | 1 | called MGA to see if they would provide her a lawyer, |
| 11:05 | 2 | correct? |
| 11:05 | 3 | A.   Yes. |
| 11:05 | 4 | Q.   And how about October:  Did you contact her then? |
| 11:05 | 5 | A.   No, I did not -- or November or December.  I did not |
| 11:05 | 6 | until, uh -- either November -- October, November, December |
| 11:05 | 7 | of 2010.  So I just want to cut through the whole thing and |
| 11:05 | 8 | get there. |
| 11:05 | 9 | Q.   Well, cut through it.  I mean, it was late December |
| 11:05 | 10 | before you asked Pooey to call her, correct? |
| 11:05 | 11 | A.   I don't remember it was late December or late November. |
| 11:05 | 12 | I don't remember that. |
| 11:05 | 13 | Q.   If Pooey said it was late December, you would not |
| 11:05 | 14 | dispute that, correct? |
| 11:05 | 15 | A.   I would not. |
| 11:06 | 16 |         MS. KELLER:  Objection.  Misstates the testimony. |
| 11:06 | 17 |         THE COURT:  Overruled. |
| 11:06 | 18 |         MS. KELLER:  And argumentative, Your Honor. |
| 11:06 | 19 |         THE COURT:  Overruled. |
| 11:06 | 20 | BY MR. PRICE: |
| 11:06 | 21 | Q.   It was -- you would not dispute if Anna Rhee said it |
| 11:06 | 22 | was less than a month before the trial? |
| 11:06 | 23 |         MS. KELLER:  Objection.  Inappropriate |
| 11:06 | 24 | questioning, Your Honor:  Whether he would dispute her |
| 11:06 | 25 | testimony. |

CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

93

| | | |
|---|---|---|
| 11:06 | 1 | THE COURT:  Yeah.  It's sustained, Counsel.  We |
| 11:06 | 2 | can't put a witness in the position of testifying about what |
| 11:06 | 3 | other people would think. |
| 11:06 | 4 | In fact, the prior objection's appropriate, also. |
| 11:06 | 5 | It's sustained. |
| 11:06 | 6 | BY MR. PRICE: |
| 11:06 | 7 | Q.   You asked Pooey to call Ms. Rhee because you wanted to |
| 11:06 | 8 | see if you could affect her testimony, right? |
| 11:06 | 9 | A.   Absolutely not. |
| 11:06 | 10 | Q.   You thought that her testimony previously was not good |
| 11:06 | 11 | for MGA, correct? |
| 11:07 | 12 | A.   No.  I -- I thought, and I know, that her testimony in |
| 11:07 | 13 | the first trial and this trial was false. |
| 11:07 | 14 | Q.   If believed, you thought that her testimony would not |
| 11:07 | 15 | be good for MGA; that is, you thought, if someone believed |
| 11:07 | 16 | her, that would not be good for MGA? |
| 11:07 | 17 | A.   Actually, Mr. Price, I think it's my belief that her |
| 11:07 | 18 | testimony was fantastic for MGA. |
| 11:07 | 19 | Q.   So, if believed, it would have been perfectly fine |
| 11:07 | 20 | then -- if the jury believed that there had been a face |
| 11:07 | 21 | painting of a Bratz doll in June or July of 2000, that would |
| 11:07 | 22 | be fine for you, if -- if that was what a trier of fact |
| 11:07 | 23 | believed? |
| 11:07 | 24 | A.   If that's what they believed, yes.  I leave it up to |
| 11:07 | 25 | them to believe that. |

| | | |
|---|---|---|
| 11:08 | 1 | Q.   You told Pooey to call Ms. Rhee and say, "We know you |
| 11:08 | 2 | lied before"? |
| 11:08 | 3 | A.   I did not. |
| 11:08 | 4 | Q.   You called Pooey and -- I mean, when you talked to |
| 11:08 | 5 | Pooey, you asked her (sic) to call Ms. Rhee and tell her |
| 11:08 | 6 | that Mattel was going to sue her and that you would be happy |
| 11:08 | 7 | to help her out? |
| 11:08 | 8 | A.   Absolutely not. |
| 11:08 | 9 | Q.   Based upon your experience with Pooey -- and how long |
| 11:08 | 10 | have you known Pooey? |
| 11:08 | 11 | A.   He's been working for us for many years. |
| 11:08 | 12 | Q.   And I think you said you've had contact with him over |
| 11:08 | 13 | the years? |
| 11:08 | 14 | A.   Yes, I have. |
| 11:08 | 15 | Q.   Based upon your experience with Pooey -- |
| 11:08 | 16 | A.   Yes. |
| 11:08 | 17 | Q.   -- do you have any reason to doubt his honesty? |
| 11:09 | 18 | A.   No.  He's a very honest man. |
| 11:09 | 19 | Q.   Have you had any conversations with Pooey in the last |
| 11:09 | 20 | three weeks concerning, uh, your request that he call Anna |
| 11:09 | 21 | Rhee? |
| 11:09 | 22 | A.   I have not. |
| 11:09 | 23 | Q.   How many conversations did you have with Pooey about |
| 11:09 | 24 | calling Anna Rhee? |
| 11:09 | 25 | A.   Just that one I told you about. |

CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

95

| | | |
|---|---|---|
| 11:09 | 1 | Q.   Well, when you had the conversation, did you expect |
| 11:09 | 2 | Pooey to take your direction? |
| 11:10 | 3 | A.   Yes. |
| 11:10 | 4 | Q.   And that's 'cause you were his boss? |
| 11:10 | 5 | A.   I'm not his boss.  But I expected him to call Anna Rhee |
| 11:10 | 6 | and tell her if she wants a lawyer this time -- because last |
| 11:10 | 7 | time she had called and complained that we didn't get her |
| 11:10 | 8 | lawyer -- that we would be happy to get her a lawyer.  This |
| 11:10 | 9 | is what happened.  And I had one conversation.  That's all |
| 11:10 | 10 | that happened. |
| 11:10 | 11 | Q.   Did Pooey ever report back to you the conversation? |
| 11:10 | 12 | A.   No. |
| 11:10 | 13 | Q.   Well, if the purpose of the conversation was to convey |
| 11:10 | 14 | to Ms. Rhee that MGA, you know, some six years after the |
| 11:10 | 15 | request, is now happy to provide you a lawyer, wouldn't you |
| 11:10 | 16 | have wanted to -- to have gotten a response from Pooey? |
| 11:10 | 17 | A.   No, not necessarily. |
| 11:10 | 18 | Q.   You didn't want to know what he told Ms. Rhee and what |
| 11:11 | 19 | she told him? |
| 11:11 | 20 | A.   No. |
| 11:11 | 21 | Q.   And, of course, it wouldn't matter if -- if what you |
| 11:11 | 22 | told Pooey to do was basically, uh, threaten Ms. Rhee? |
| 11:11 | 23 | MS. KELLER:  Objection.  No foundation.  Assumes |
| 11:11 | 24 | facts not in evidence. |
| 11:11 | 25 | THE COURT:  Overruled. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:11 | 1 | THE WITNESS:  Mr. Price, I did not ask Pooey or |
| 11:11 | 2 | anybody else to threaten Anna Rhee.  Your insinuation is |
| 11:11 | 3 | false.  It's wrong.  It's provocative. |
| 11:11 | 4 | BY MR. PRICE: |
| 11:11 | 5 | Q.   Is it your understanding, uh, Mr. Larian, that I'm the |
| 11:11 | 6 | first one who made that allegation -- that accusation? |
| 11:11 | 7 | A.   I'm sorry.  What accusation? |
| 11:11 | 8 | Q.   That you told Pooey to call Ms. Rhee and tell her she |
| 11:12 | 9 | was going to be sued by Mattel, and you'd be able to help |
| 11:12 | 10 | her.  Is it your understanding I'm the first one that came |
| 11:12 | 11 | up with that? |
| 11:12 | 12 | A.   No.  It was Anna Rhee, with her lawyer sitting back |
| 11:12 | 13 | there and -- going like this, and this, and this, and giving |
| 11:12 | 14 | hand signals.  *(Indicating.)*  It was Anna Rhee and the |
| 11:12 | 15 | lawyer that you hired and paid to coach her and tell her |
| 11:12 | 16 | what to say.  That's my understanding. |
| 11:12 | 17 | Q.   Do you understand that we, the lawyers, have talked to |
| 11:12 | 18 | or tried to influence Pooey? |
| 11:12 | 19 | A.   Your lawyer, that you -- not Pooey, no.  No, not Pooey. |
| 11:12 | 20 | I was talking about Anna Rhee.  No, you did not influence |
| 11:12 | 21 | Pooey. |
| 11:13 | 22 | Q.   And you have some knowledge sitting here today of -- of |
| 11:13 | 23 | Pooey's understanding of what you told him, correct? |
| 11:13 | 24 | A.   Yes, I do. |
| 11:13 | 25 | Q.   And you firmly believe that his understanding of what |

| | | |
|---|---|---|
| 11:13 | 1 | happened has not in any way been influenced by lawyers from |
| 11:13 | 2 | Mattel, correct? |
| 11:13 | 3 | A.   I don't think he has, but I don't put it behind you to |
| 11:13 | 4 | do something like that.  But I don't think he has.  He's a |
| 11:13 | 5 | nice, honest guy. |
| 11:13 | 6 | Q.   Uh, now when you say you wouldn't "put it behind" -- I |
| 11:13 | 7 | can't remember your phrase -- so you're making a completely |
| 11:13 | 8 | unsubstantiated accusation that we influenced Pooey? |
| 11:13 | 9 | MS. KELLER:  Objection, Your Honor. |
| 11:13 | 10 | Argumentative. |
| 11:13 | 11 | THE COURT:  Overruled. |
| 11:13 | 12 | THE WITNESS:  You asked me a question? |
| 11:13 | 13 | THE COURT:  There's no question pending. |
| 11:13 | 14 | BY MR. PRICE: |
| 11:14 | 15 | Q.   So just to be clear that we have a record on this. |
| 11:14 | 16 | You have no information -- let me ask this:  You know, |
| 11:14 | 17 | actually having -- with personal, firsthand knowledge, you |
| 11:14 | 18 | know that no one on Mattel's side has influenced Pooey's |
| 11:14 | 19 | version of that conversation.  You know that? |
| 11:14 | 20 | MS. KELLER:  Objection.  Your Honor, this calls |
| 11:14 | 21 | for speculation. |
| 11:14 | 22 | THE COURT:  No.  Overruled. |
| 11:14 | 23 | You can answer that question, sir. |
| 11:14 | 24 | THE WITNESS:  I don't think anybody at Mattel has |
| 11:14 | 25 | contacted Pooey.  I -- I hope not. |

CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

98

| 11:14 | 1 | BY MR. PRICE: |
| 11:14 | 2 | Q.  Well, you know, because of timing, that no one from |
| 11:14 | 3 | Mattel contacted Pooey prior to him giving his version of |
| 11:14 | 4 | that conversation, right? |
| 11:14 | 5 | A.  Prior when he came here and took the stand?  Is that |
| 11:14 | 6 | what you're talking about?  That evening? |
| 11:15 | 7 | Q.  I was being less specific, but if that's what you want |
| 11:15 | 8 | to recall -- I'm talking about timing. |
| 11:15 | 9 | MS. KELLER:  Objection.  Argumentative. |
| 11:15 | 10 | THE COURT:  Overruled. |
| 11:15 | 11 | The answer was volunteered so... |
| 11:15 | 12 | THE WITNESS:  I don't think anybody contacted him |
| 11:15 | 13 | from Mattel or from MGA before he took the stand here. |
| 11:15 | 14 | BY MR. PRICE: |
| 11:15 | 15 | Q.  And gave his version of what happened in that |
| 11:15 | 16 | conversation? |
| 11:15 | 17 | A.  That's correct. |
| 11:15 | 18 | Q.  Between the time you had your conversation with Pooey |
| 11:15 | 19 | and the time you say he took the stand here, did you have |
| 11:15 | 20 | any contact with Pooey? |
| 11:16 | 21 | A.  I'm sorry.  Before? |
| 11:16 | 22 | Q.  Between the time you directed him to contact Anna Rhee |
| 11:16 | 23 | and the time you said he took the stand, did you have any |
| 11:16 | 24 | contact with Pooey? |
| 11:16 | 25 | A.  I did not. |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 99 of 138   Page ID #:298410
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

99

| 11:16 | 1 | Q.   So not even to find out what had happened in the |
|---|---|---|
| 11:16 | 2 | conversation with Anna Rhee? |
| 11:16 | 3 | A.   I did not. |
| 11:16 | 4 | Q.   Between the time you took the stand and today, has |
| 11:16 | 5 | anyone at MGA had contact with Pooey about the conversation |
| 11:16 | 6 | you had? |
| 11:16 | 7 | MS. KELLER:  Objection.  Calls for speculation. |
| 11:16 | 8 | THE COURT:  Overruled. |
| 11:16 | 9 | THE WITNESS:  I don't know. |
| 11:16 | 10 | I have not. |
| 11:16 | 11 | BY MR. PRICE: |
| 11:16 | 12 | Q.   Did you direct or tell people at MGA that they were not |
| 11:16 | 13 | to have any contact with Pooey concerning his conversation |
| 11:16 | 14 | with Anna Rhee? |
| 11:16 | 15 | A.   Or, otherwise.  I did not direct anybody to talk to him |
| 11:16 | 16 | or not talk to him. |
| 11:16 | 17 | Q.   My question was about -- was about not talking to him. |
| 11:16 | 18 | Did you, uh, direct people at MGA that they were not to |
| 11:17 | 19 | discuss what you told him to do with respect to Anna Rhee? |
| 11:17 | 20 | Did you give any directions to the people at MGA about |
| 11:17 | 21 | that? |
| 11:17 | 22 | MS. KELLER:  Objection.  That assumes facts not in |
| 11:17 | 23 | evidence, Your Honor. |
| 11:17 | 24 | THE COURT:  Just a moment. |
| 11:17 | 25 | THE WITNESS:  And I'm not sure if I understand |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 100 of 138   Page ID #:298411
CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

100

| | | |
|---|---|---|
| 11:17 | 1 | this question. |
| 11:17 | 2 | THE COURT:  Just reask the question, Counsel. |
| 11:17 | 3 | MR. PRICE:  Sure. |
| 11:17 | 4 | BY MR. PRICE: |
| 11:17 | 5 | Q.   You mentioned Pooey taking the stand, right? |
| 11:17 | 6 | A.   Yes. |
| 11:17 | 7 | Q.   I'm just trying to -- to figure out timeframe. |
| 11:17 | 8 | Between then and now, have you issued a directive to |
| 11:17 | 9 | folks at MGA that they are not to talk to him concerning |
| 11:17 | 10 | your conversation with him about Anna Rhee? |
| 11:17 | 11 | MS. KELLER:  Objection, Your Honor.  The Court |
| 11:17 | 12 | ordered us not to have any contact with him about this |
| 11:17 | 13 | matter in any fashion, positive or negative. |
| 11:17 | 14 | MR. PRICE:  I'm asking whether he did that. |
| 11:17 | 15 | THE COURT:  I may have made an order.  But we'll |
| 11:17 | 16 | find out if it was followed. |
| 11:17 | 17 | You can answer the question. |
| 11:18 | 18 | THE WITNESS:  Yes.  I have told our general |
| 11:18 | 19 | counsel, Jeannie Pisoni, to make sure nobody contacts Pooey |
| 11:18 | 20 | about his testimony, before or after. |
| 11:18 | 21 | BY MR. PRICE: |
| 11:18 | 22 | Q.   And was that direction in writing? |
| 11:18 | 23 | A.   No.  I told her -- she was in Court.  I told her that. |
| 11:18 | 24 | Q.   Did Ms. Garcia ever report -- did Ms. Garcia ever have |
| 11:18 | 25 | a conversation where she said anything about the |

| | | |
|---|---|---|
| 11:18 | 1 | conversation you directed Pooey to have with Anna Rhee? |
| 11:19 | 2 | MS. KELLER:  Objection.  Calls for speculation. |
| 11:19 | 3 | THE COURT:  I don't understand the question. |
| 11:19 | 4 | MR. PRICE:  Let me -- |
| 11:19 | 5 | THE COURT:  Just a moment.  Yeah. |
| 11:59 | 6 | BY MR. PRICE: |
| 11:19 | 7 | Q.   You said Mr. Pooey -- you said Pooey never came to you |
| 11:19 | 8 | after you gave him direction to contact Anna Rhee, correct? |
| 11:19 | 9 | A.   Yes. |
| 11:19 | 10 | Q.   After you told Pooey to contact Anna Rhee, did you have |
| 11:19 | 11 | any conversations with Ms. Garcia about your direction to |
| 11:19 | 12 | Pooey to contact Anna Rhee? |
| 11:19 | 13 | A.   I did not. |
| 11:19 | 14 | Q.   Did you have any conversations with Ms. Garcia |
| 11:19 | 15 | concerning what happened after you instructed Pooey to |
| 11:19 | 16 | contact Anna Rhee? |
| 11:19 | 17 | A.   I did not. |
| 11:19 | 18 | Q.   You did know, when you talked to Pooey, that he was |
| 11:19 | 19 | friends with Anna Rhee, right? |
| 11:19 | 20 | A.   Yes. |
| 11:20 | 21 | Q.   And how did you know at that time that Pooey was |
| 11:20 | 22 | friends with Anna Rhee? |
| 11:20 | 23 | A.   Just, he had told me before, I knew that they're both |
| 11:20 | 24 | from Thailand and they were friends, and they worked |
| 11:20 | 25 | together before at Mattel. |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 102 of 138   Page ID #:298413
CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

102

| 11:20 | 1 | Q.   When you talked with Pooey and directed him to call |
|-------|---|---|
| 11:20 | 2 | Anna Rhee, were you clear in your instructions? |
| 11:20 | 3 | A.   Very clear. |
| 11:20 | 4 | Q.   And how do you know that you were very clear?  Was that |
| 11:20 | 5 | part of your conversation with Pooey? |
| 11:20 | 6 | A.   Because I told him that in the first trial Anna Rhee |
| 11:20 | 7 | had complained that she had contacted MGA many times, asking |
| 11:20 | 8 | that we get her a lawyer, and nobody had called her back. |
| 11:20 | 9 | So I told Pooey to tell Anna Rhee, if -- for this trial, if |
| 11:21 | 10 | she wants a lawyer, we'd be happy to get her lawyer.  That's |
| 11:21 | 11 | all. |
| 11:21 | 12 | Q.   Let me switch topics.  And I want to talk to you about |
| 11:21 | 13 | when you learned that the pattern and sample makers who were |
| 11:21 | 14 | working on Bratz with Veronica Marlow were Mattel employees. |
| 11:21 | 15 |    I think you said yesterday you didn't learn until very |
| 11:21 | 16 | late. |
| 11:21 | 17 | A.   I learned during this trial -- |
| 11:21 | 18 | Q.   And -- and -- |
| 11:21 | 19 | A.   Not this trial here -- during the first trial. |
| 11:21 | 20 | Q.   So when you say "during the first trial," you mean |
| 11:21 | 21 | after the trial actually began, correct? |
| 11:21 | 22 | A.   No.  Probably before. |
| 11:21 | 23 | Q.   Okay.  How did you learn? |
| 11:21 | 24 | A.   Through my lawyers. |
| 11:21 | 25 | Q.   And when you say through your lawyers -- I don't want |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 103 of 138   Page ID #:298414
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

103

| | | |
|---|---|---|
| 11:21 | 1 | to go into substance -- you mean it's something that they |
| 11:22 | 2 | reported to you? |
| 11:22 | 3 | A.   Yes. |
| 11:22 | 4 | Q.   I'd like to show you Exhibit 23915. |
| 11:22 | 5 | *(Document provided to the witness.)* |
| 11:22 | 6 | THE WITNESS:  Are we done with Pooey? |
| 11:22 | 7 | MR. PRICE:  I said I'm going on to a different |
| 11:22 | 8 | topic. |
| 11:22 | 9 | MS. KELLER:  Your Honor, this is -- we're gonna |
| 11:22 | 10 | object to going into this matter. |
| 11:22 | 11 | THE COURT:  Could I see it? |
| 11:22 | 12 | *(Document provided to the Court.)* |
| 11:23 | 13 | THE COURT:  Thank you very much.  Appreciate it. |
| 11:23 | 14 | MR. QUINN:  We discussed this last night, |
| 11:23 | 15 | Your Honor. |
| 11:23 | 16 | THE COURT:  Well, we discussed it, but we didn't |
| 11:23 | 17 | make a ruling on it.  Just a moment. |
| 11:23 | 18 | If you have other topics, I'd like to discuss this |
| 11:23 | 19 | with you outside the presence of the jury.  If you don't, |
| 11:23 | 20 | then I can take a recess and send the jury to lunch. |
| 11:23 | 21 | MR. PRICE:  I have other topics.  I might as well |
| 11:23 | 22 | use the time. |
| 11:23 | 23 | THE COURT:  You sure? |
| 11:23 | 24 | MR. PRICE:  We'll try. |
| 11:23 | 25 | THE COURT:  Okay.  You don't have to use time.  I |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 104 of 138   Page ID #:298415
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

104

| | | |
|---|---|---|
| 11:23 | 1 | mean, I'd just like the courtesy of one more discussion on |
| 11:23 | 2 | the record. |
| 11:23 | 3 | BY MR. PRICE: |
| 11:23 | 4 | Q.   Mr. Larian, when -- at the time you were the 30(b)(6) |
| 11:24 | 5 | designee on the search and seizure of the documents that |
| 11:24 | 6 | were found in Mexico, to prepare for that, one of the things |
| 11:24 | 7 | you did was read the deposition of Ms. Kuemmerle, correct? |
| 11:24 | 8 | A.   Only the few pages that were given to me to read. |
| 11:24 | 9 | Q.   And those would be the pages concerning the topic that |
| 11:24 | 10 | you were testifying on, which is what was found at the MGA |
| 11:24 | 11 | Mexico City offices, correct? |
| 11:24 | 12 | A.   I believe so. |
| 11:24 | 13 | Q.   And you recall that, in the testimony you read, that |
| 11:24 | 14 | Ms. Kuemmerle said that the Mexican authorities located a CD |
| 11:24 | 15 | during their search, correct? |
| 11:24 | 16 | A.   I don't remember her testimony. |
| 11:24 | 17 |      Can you give it to me?  I can read it again. |
| 11:25 | 18 |           MR. PRICE:  Let me give you your testimony. |
| 11:25 | 19 |           MS. KELLER:  Your Honor, we would object to the |
| 11:25 | 20 | publication of a transcript of another witness through this |
| 11:25 | 21 | witness. |
| 11:25 | 22 |           THE COURT:  This is to refresh his recollection. |
| 11:25 | 23 |           MR. PRICE:  Actually, I'm going to give him his |
| 11:25 | 24 | testimony to refresh his recollection. |
| 11:25 | 25 |           And that's July 7, 2010, page 2843, lines 5 |

| 11:25 | 1 | through 25. |

through 25.

*(Documents provided to the witness.)*

MR. OVERLAND:  And, Your Honor, on behalf of Mr. Machado, we would object that it's hearsay.

MS. KELLER:  Your Honor, we have an additional objection that he was not the designee on this matter.  And we have a copy of the Court's order on it.

THE COURT:  Counsel, was he the designee?

MS. KELLER:  Not on the issues that he's being asked about.

THE COURT:  Ladies and gentlemen, instead of taking your time, let's just have you take a quick recess.

Why don't we have counsel and the Court spend the lunch together.

Why don't you go on out.  Can you come back at 12:30?  Will you come back at 12:30?  Okay?

All right.  You're admonished not to discuss this matter amongst yourselves nor to form or express any opinion concerning the case.

*(Jury recesses for lunch at 11:26 a.m.)*

*(Outside the presence of the jury.)*

THE COURT:  Counsel, if you would be seated.

THE WITNESS:  Your Honor, should I step down?

THE COURT:  Thank you, Mr. Larian, you may step down, sir.

| | | |
|---|---|---|
| 11:26 | 1 | (Witness exits the stand.) |
| 11:26 | 2 | THE COURT:  Concerning the last document that I |
| 11:26 | 3 | just returned -- and I want to thank all counsel for getting |
| 11:26 | 4 | the documents to the Court just because of the 40 volumes, |
| 11:26 | 5 | if I thumb through each document as you call them, it would |
| 11:27 | 6 | be an almost impossible task also to try to pay attention. |
| 11:27 | 7 | All right.  This is an e-mail from Isaac Larian |
| 11:27 | 8 | sent on January 3rd, 2008, at 2:47 a.m., and the subject is |
| 11:27 | 9 | "12/28/07 rough, ASCII of Marlow deposition." |
| 11:27 | 10 | Now, the objection to it? |
| 11:27 | 11 | MS. HURST:  Your Honor, this is one of a series of |
| 11:27 | 12 | about 3,000 documents that were improperly extracted from |
| 11:27 | 13 | the Larian hard drives during our review process without all |
| 11:27 | 14 | of the data intact.  And as a result, when people were |
| 11:27 | 15 | reviewing them for privilege, they didn't realize that it |
| 11:27 | 16 | was part of a privileged communication. |
| 11:27 | 17 | This is one of those privileged communications. |
| 11:28 | 18 | We have matched it to other documents that we did withhold |
| 11:28 | 19 | on the ground of privilege with content in the e-mail.  And |
| 11:28 | 20 | we are in the process of trying to identify all of it -- now |
| 11:28 | 21 | that we've realized this problem, identify all of the |
| 11:28 | 22 | documents in the production which are artifacts of the |
| 11:28 | 23 | extraction process and were also privileged. |
| 11:28 | 24 | This document is one of them.  I'll make an offer |
| 11:28 | 25 | of prove to the Court.  If the Court wants to see the |

| 11:28 | 1 | privileged document that it matches, we can bring it in. |
| 11:28 | 2 | It's the same thing that was addressed in the declaration of |
| 11:28 | 3 | Mr. Rubin recently regarding the meta data on the Paula |
| 11:28 | 4 | Garcia e-mail. |
| 11:28 | 5 | THE COURT:  All right.  How do I know that this is |
| 11:28 | 6 | privileged?  How do you know who it's to? |
| 11:28 | 7 | MS. HURST:  Your Honor -- |
| 11:28 | 8 | THE COURT:  In other words, I don't have that |
| 11:28 | 9 | other document. |
| 11:28 | 10 | MS. HURST:  I understand.  I'll make an offer of |
| 11:28 | 11 | proof at the present time, and we'll get the document in |
| 11:28 | 12 | your hands over the lunch hour now. |
| 11:28 | 13 | THE COURT:  Okay.  Who was it to? |
| 11:28 | 14 | MS. HURST:  I don't Remember right now. |
| 11:28 | 15 | THE COURT:  Okay.  "I don't remember." |
| 11:29 | 16 | All right. |
| 11:29 | 17 | MS. HURST:  It was an attorney, Your Honor. |
| 11:29 | 18 | THE COURT:  Okay.  An "I don't remember" attorney. |
| 11:29 | 19 | Well, it's a little difficult to make a ruling |
| 11:29 | 20 | based on that.  I'm going to keep this document now. |
| 11:29 | 21 | Second, I think I've been rather generous with |
| 11:29 | 22 | both parties in terms of not demanding too much. |
| 11:29 | 23 | Why am I now waiting for this inadvertently |
| 11:29 | 24 | disclosed -- not that I distrust counsel, and not being too |
| 11:29 | 25 | facetious -- but an "I don't remember" attorney to sort this |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 108 of 138   Page ID #:298419
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

108

| 11:29 | 1 | out at this date? |
| 11:29 | 2 | MS. HURST:  I'll have it in my hands in moments, |
| 11:29 | 3 | Your Honor. |
| 11:29 | 4 | THE COURT:  Good. |
| 11:29 | 5 | MS. HURST:  I apologize. |
| 11:29 | 6 | THE COURT:  I'm sitting here. |
| 11:29 | 7 | We knew it was coming last night. |
| 11:30 | 8 | Second, with where we stand with Pooey and Anna |
| 11:30 | 9 | Rhee, I want full briefing on this.  The State evidentiary |
| 11:30 | 10 | rules are substantially different, as you know, than the |
| 11:30 | 11 | federal rules.  There's been a lot of criticism about the |
| 11:30 | 12 | federal rules, in fact.  But I'm still bound to follow them. |
| 11:30 | 13 | So I want briefing by tonight on this subject -- or by |
| 11:30 | 14 | tomorrow, if you choose -- because I anticipate that there |
| 11:30 | 15 | will be a request to call either Anna Rhee or Pooey back to |
| 11:30 | 16 | the stand. |
| 11:30 | 17 | Third, so the record's clear, my clerk had come in |
| 11:30 | 18 | during the recess and indicated that there was some concern |
| 11:30 | 19 | out in the courtroom and that somebody had asked a CSO to be |
| 11:30 | 20 | called.  So I've asked for the tape to come up.  And I want |
| 11:30 | 21 | to see what -- what occurred. |
| 11:31 | 22 | Now, what other evidentiary problem -- |
| 11:31 | 23 | Oh, it's down on the computer.  It can be |
| 11:31 | 24 | transferred to a tape, though. |
| 11:31 | 25 | THE CLERK:  I believe so. |

| | | |
|---|---|---|
| 11:31 | 1 | THE COURT:  Okay.  I want limited counsel down to |
| 11:31 | 2 | watch this to begin with. |
| 11:31 | 3 | Here's what happens.  There's the ability to tape. |
| 11:31 | 4 | *(Indicating.)*  And so you've all been on video for a long |
| 11:31 | 5 | time. |
| 11:31 | 6 | And the problem is, we have to transfer that off |
| 11:31 | 7 | of a tape to view it here in Court.  In other words, it has |
| 11:31 | 8 | to come in disk form.  That can't be done quickly.  I can |
| 11:31 | 9 | preserve anything.  So it's just a matter of preservation, |
| 11:31 | 10 | and I've ordered certain tapes. |
| 11:31 | 11 | But we can go down and watch it in the marshal's |
| 11:31 | 12 | office and review it on the computer. |
| 11:31 | 13 | Now, Mr. Overland, would you like to join us? |
| 11:32 | 14 | MR. OVERLAND:  (Shakes head.) |
| 11:32 | 15 | THE COURT:  I don't think it affects you, does it? |
| 11:32 | 16 | MR. OVERLAND:  I don't think so. |
| 11:32 | 17 | THE COURT:  Mr. Cote? |
| 11:32 | 18 | MR. COTE:  No. |
| 11:32 | 19 | THE COURT:  All right.  One counsel from MGA. |
| 11:32 | 20 | Which counsel will it be? |
| 11:32 | 21 | MR. McCONVILLE:  (Raises hand.) |
| 11:32 | 22 | THE COURT:  Mr. McConville. |
| 11:32 | 23 | One counsel from Mattel.  Who will it be? |
| 11:32 | 24 | MR. ZELLER:  (Raises hand.)  Mike Zeller. |
| 11:32 | 25 | THE COURT:  Now, we'll get a preliminary look at |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 110 of 138   Page ID #:298421
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

110

| | | |
|---|---|---|
| 11:32 | 1 | it.  And -- but I've ordered it preserved, just to see what |
| 11:32 | 2 | occurred so we're not guessing. |
| 11:32 | 3 | All right.  Counsel, then, would you tell Mike |
| 11:32 | 4 | that we're coming down.  And I just want to see counsel, |
| 11:32 | 5 | Mr. Zeller, then, and Mr. McConville. |
| 11:32 | 6 | MR. McCONVILLE:  Your Honor, you had asked |
| 11:32 | 7 | about -- we did have an evidentiary issue related to the |
| 11:32 | 8 | publication through this witness of the Kuemmerle |
| 11:32 | 9 | deposition.  I didn't know if you wanted to bring that up |
| 11:32 | 10 | now while the court reporter is here. |
| 11:32 | 11 | THE COURT:  Thank you very much.  I neglected |
| 11:32 | 12 | that.  I apologize. |
| 11:33 | 13 | All right.  The Kuemmerle deposition. |
| 11:33 | 14 | Now, could I see those pages? |
| 11:33 | 15 | MR. PRICE:  Your Honor, I haven't designated the |
| 11:33 | 16 | pages yet from Ms. Kuemmerle's deposition.  I was going to |
| 11:33 | 17 | refresh him with his own deposition.  And the objection was |
| 11:33 | 18 | that was not the topic of this 30(b)(6). |
| 11:33 | 19 | THE COURT:  I initially thought it was the |
| 11:33 | 20 | Kuemmerle deposition, then you corrected it.  You're |
| 11:33 | 21 | absolutely correct.  Mr. Price told me it was the -- or, at |
| 11:33 | 22 | least, allayed my confusion, and told me that it was his own |
| 11:33 | 23 | deposition. |
| 11:33 | 24 | And you were going to use it to refresh his |
| 11:33 | 25 | recollection? |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 111 of 138   Page ID #:298422
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

111

| | | |
|---|---|---|
| 11:33 | 1 | MR. PRICE:  Yes.  But there may be a time when |
| 11:33 | 2 | I'll want to show him the Kuemmerle deposition. |
| 11:33 | 3 | THE COURT:  I'm anticipating that.  So let's just |
| 11:33 | 4 | do that now. |
| 11:34 | 5 | MR. McCONVILLE:  That was the Court order. |
| 11:34 | 6 | THE COURT:  You just handed me the Court order. |
| 11:34 | 7 | MS. HURST:  That's just to explain the basis for |
| 11:34 | 8 | the objection, Your Honor. |
| 11:34 | 9 | THE COURT:  Now, walk me through, Mr. Price, what |
| 11:34 | 10 | you intend to do. |
| 11:34 | 11 | MR. PRICE:  What I intend to do, Your Honor, is |
| 11:34 | 12 | Mr. Larian stated in his 30(b)(6) deposition that he |
| 11:34 | 13 | reviewed Ms. Kuemmerle's deposition in preparation for |
| 11:34 | 14 | testifying on Topic 10, and that he saw this reference to a |
| 11:34 | 15 | CD.  And, at that point I -- if he could not recall, I would |
| 11:34 | 16 | show him Ms. Kuemmerle's deposition, her testimony |
| 11:34 | 17 | concerning the CD and what she did with it. |
| 11:34 | 18 | THE COURT:  All right. |
| 11:35 | 19 | MR. PRICE:  And then ask him questions about |
| 11:35 | 20 | whether, you know, he understood that as -- as the 30(b)(6) |
| 11:35 | 21 | witness for MGA. |
| 11:35 | 22 | I was then going to show him a CD with MGA's Bates |
| 11:35 | 23 | stamp on it, and move that into evidence. |
| 11:35 | 24 | THE COURT:  Okay.  Now, the objection? |
| 11:35 | 25 | MS. HURST:  Your Honor -- |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 112 of 138   Page ID #:298423
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

112

| | | |
|---|---|---|
| 11:35 | 1 | THE COURT:  Goes to refreshing his recollection. |
| 11:35 | 2 | MS. HURST:  No.  He was never designated on the |
| 11:35 | 3 | topic of that CD.  We designated him on MGA's knowledge |
| 11:35 | 4 | regarding the search and seizure.  And what he testified |
| 11:35 | 5 | about -- he never was designated on the contents of any CD |
| 11:35 | 6 | or the documents or how the CD got there, just MGA -- not |
| 11:35 | 7 | its subsidiaries -- knowledge of the search and seizure. |
| 11:35 | 8 | And that was the Court's order dated June 14. |
| 11:35 | 9 | THE COURT:  Just a moment. |
| 11:35 | 10 | It's the search and seizure of the MGA Mexico City |
| 11:36 | 11 | offices and related communications. |
| 11:36 | 12 | MS. HURST:  Well -- but the Court's order says |
| 11:36 | 13 | "MGA's knowledge of the events at its subsidiary's office |
| 11:36 | 14 | remains undiscovered."  So it was MGA versus the subsidiary. |
| 11:36 | 15 | Recall that at this point numerous people had |
| 11:36 | 16 | previously testified about what had happened in MGA Mexico. |
| 11:36 | 17 | And that was our objection.  And the Court said that part of |
| 11:36 | 18 | the objection was well-taken.  But MGA's knowledge hadn't |
| 11:36 | 19 | yet been discovered. |
| 11:36 | 20 | And so what Mr. Larian prepared on -- and if this |
| 11:36 | 21 | was my fault *mia culpa*, but we did not designate him on that |
| 11:36 | 22 | CD or the documents. |
| 11:36 | 23 | THE COURT:  That's reading this order, I think, |
| 11:36 | 24 | too narrowly. |
| 11:36 | 25 | MS. HURST:  Maybe so.  But he was not designated |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 113 of 138   Page ID #:298424
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

113

| | | |
|---|---|---|
| 11:36 | 1 | on the CD.  He was never provided the CD.  He was never |
| 11:36 | 2 | provided testimony about the CD.  He was designated to |
| 11:36 | 3 | testify what MGA was told about the search and seizure. |
| 11:36 | 4 | THE COURT:  Just a moment. |
| 11:36 | 5 | He's not being asked about the content.  He's |
| 11:36 | 6 | being asked about the seizure of the CD. |
| 11:36 | 7 | MS. HURST:  No. |
| 11:36 | 8 | THE COURT:  And the CD, if it doesn't |
| 11:37 | 9 | appropriately come in through Mr. Larian, in all likelihood |
| 11:37 | 10 | it's going to come in through somebody else -- either |
| 11:37 | 11 | Kuemmerle or whomever.  So the CD is eventually coming in. |
| 11:37 | 12 | MS. HURST:  Then it should come in with a witness |
| 11:37 | 13 | who has foundation and not Mr. Larian. |
| 11:37 | 14 | THE COURT:  I don't think so. |
| 11:37 | 15 | MS. HURST:  It's not -- Your Honor, there's no |
| 11:37 | 16 | witness that can authenticate this CD.  The CD was -- just |
| 11:37 | 17 | to be clear:  It was prepared by the Mexican police outside |
| 11:37 | 18 | the presence of any MGA representative.  It was created by |
| 11:37 | 19 | the Mexican police. |
| 11:37 | 20 | THE COURT:  Let's see what the CD says.  Can we |
| 11:37 | 21 | put up the screen? |
| 11:37 | 22 | In other words, we're talking about a CD.  And |
| 11:37 | 23 | from my perspective, it seems a little strange that this |
| 11:37 | 24 | order doesn't apply to the search of different contents and |
| 11:37 | 25 | any related communication down in MGA's offices. |

| | | |
|---|---|---|
| 11:37 | 1 | Now, if you're concerned about the content, |
| 11:37 | 2 | that's, I think, your true concern.  I don't know what that |
| 11:38 | 3 | content is, I would like to see it. |
| 11:38 | 4 | MS. HURST:  Well, he asked him about three |
| 11:38 | 5 | documents yesterday. |
| 11:38 | 6 | THE COURT:  You're not going to let me see it, |
| 11:38 | 7 | apparently. |
| 11:38 | 8 | MS. HURST:  I don't have the CD.  They're the ones |
| 11:38 | 9 | offering it. |
| 11:38 | 10 | THE COURT:  I don't want to waste time bickering |
| 11:38 | 11 | with this when I've asked to see it. |
| 11:38 | 12 | You sure you want to be here, Mr. Overland? |
| 11:38 | 13 | MR. OVERLAND:  Yeah.  I have an objection as to |
| 11:38 | 14 | this also on the grounds that's it hearsay as to |
| 11:38 | 15 | Mr. Machado. |
| 11:38 | 16 | THE COURT:  And it is hearsay as to Mr. Machado. |
| 11:38 | 17 | So how do we sort that out because it may be |
| 11:38 | 18 | relevant as to MGA and Mr. Larian.  In other words, it's the |
| 11:38 | 19 | same objection you raised yesterday. |
| 11:38 | 20 | MR. OVERLAND:  It is. |
| 11:38 | 21 | THE COURT:  I'm waiting for your guidance in that, |
| 11:38 | 22 | because I don't want any confusion about who this may |
| 11:38 | 23 | pertain to.  I agree with you.  So why don't you draft, you |
| 11:38 | 24 | know, the appropriate wording.  Okay? |
| 11:38 | 25 | MR. OVERLAND:  I'll wait for the Court's ruling as |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 115 of 138   Page ID #:298426
CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

115

| | | |
|---|---|---|
| 11:38 | 1 | to Mr. Larian. |
| 11:38 | 2 | MR. PRICE:  Your Honor, we've got the CD's.  It's |
| 11:38 | 3 | thousands of documents and -- |
| 11:39 | 4 | MR. ZELLER:  These are -- |
| 11:39 | 5 | THE COURT:  It seems to me that what the effort |
| 11:39 | 6 | is, is that you really, from MGA's perspective, and maybe |
| 11:39 | 7 | rightfully so, don't want Mr. Larian asked questions about |
| 11:39 | 8 | this CD either about its seizure or about the content. |
| 11:39 | 9 | MS. HURST:  Correct. |
| 11:39 | 10 | THE COURT:  And the concern -- now, Ms. Keller is |
| 11:39 | 11 | shaking her head "no" and you're shaking it "yes." |
| 11:39 | 12 | Now who's going to speak to me?  Just a moment.  I |
| 11:39 | 13 | enjoy body language.  Okay? |
| 11:39 | 14 | MS. KELLER:  Ms. Hurst is gonna speak. |
| 11:39 | 15 | THE COURT:  All right.  Ms. Hurst, thank you. |
| 11:39 | 16 | Then get your heads nodding the same. |
| 11:39 | 17 | MS. HURST:  I apologize, Your Honor. |
| 11:39 | 18 | Mr. Larian has no personal knowledge or foundation |
| 11:39 | 19 | of this CD whatsoever, either in the ordinary course of |
| 11:39 | 20 | business or as a 30(b)(6) witness.  And we don't want to be |
| 11:39 | 21 | back at the place where we were yesterday. |
| 11:39 | 22 | THE COURT:  Just a moment. |
| 11:39 | 23 | Why is Mattel precluded from questioning him about |
| 11:39 | 24 | whether he does have knowledge? |
| 11:39 | 25 | MS. HURST:  It's -- |

CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

116

| | | |
|---|---|---|
| 11:39 | 1 | THE COURT:  He's the CEO of the company.  There's |
| 11:39 | 2 | strong inferences that can be drawn that, in hiring Machado, |
| 11:40 | 3 | Vargas and Trueba, by going to the W Hotel, by having a |
| 11:40 | 4 | presentation, by bringing a number of these gentlemen up to |
| 11:40 | 5 | the United States, that there's every inference that he may |
| 11:40 | 6 | have had a conversation about this CD, or about the |
| 11:40 | 7 | contents, or about the use of it. |
| 11:40 | 8 | So it seems to me it's a blockage.  In other |
| 11:40 | 9 | words, what the attempt really is, is no questions should be |
| 11:40 | 10 | asked of Mr. Larian about this under the objection that he |
| 11:40 | 11 | wasn't prepared under 30(b)(6), which you've read too |
| 11:40 | 12 | narrowly. |
| 11:40 | 13 | That's what I'm hearing. |
| 11:40 | 14 | MS. HURST:  No, Your Honor.  Yesterday the basis |
| 11:40 | 15 | for admitting three of the Mexico documents was that he had |
| 11:40 | 16 | been a 30(b)(6) witness. |
| 11:40 | 17 | Our objection is that's not a proper basis. |
| 11:40 | 18 | THE COURT:  No.  I'm sorry. |
| 11:40 | 19 | It was a duality.  It was the 30(b)(6) witness and |
| 11:40 | 20 | the position that he held, and the access that he had to |
| 11:40 | 21 | information, the ability that he has. |
| 11:40 | 22 | In other words, I keep saying to you, it's so easy |
| 11:40 | 23 | to segment out that "I didn't get this" or "I don't recall |
| 11:41 | 24 | it" or -- a corporation literally can take so many walls. |
| 11:41 | 25 | And at some point, he may or may not have knowledge of this. |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 117 of 138   Page ID #:298428
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

117

| | | |
|---|---|---|
| 11:41 | 1 | But to stop the questioning of that seems rather |
| 11:41 | 2 | ludicrous to me. |
| 11:41 | 3 | MS. HURST:  Well, when he says he doesn't have |
| 11:41 | 4 | knowledge, to show him documents and then ask him to |
| 11:41 | 5 | speculate about the things that he doesn't have foundation |
| 11:41 | 6 | for is improper.  And in the Court's June 14th order, it |
| 11:41 | 7 | said, "Even the Chief Executive Officers, Isaac Larian and |
| 11:41 | 8 | Robert Eckert, understandably lack knowledge about every |
| 11:41 | 9 | aspect of their companies." |
| 11:41 | 10 | THE COURT:  Just a moment.  That was for the |
| 11:41 | 11 | 30(b)(6).  That was for depositional.  I keep trying to tell |
| 11:41 | 12 | you, but you don't hear me, that that is just information |
| 11:41 | 13 | gathering.  That has nothing do with trial work.  It has |
| 11:41 | 14 | nothing to do with preparation.  These witnesses are very |
| 11:41 | 15 | well prepared.  They're lawyered up.  And they're expected |
| 11:41 | 16 | to be prepared.  In fact, they should know every one of |
| 11:42 | 17 | these documents in every single binder, frankly, but -- |
| 11:42 | 18 | MS. HURST:  Your Honor -- |
| 11:42 | 19 | THE COURT:  -- amnesia takes over sometimes.  I'm |
| 11:42 | 20 | sure it will be co-equal. |
| 11:42 | 21 | MS. HURST:  Your Honor, the law is that the |
| 11:42 | 22 | elements of trade secret misappropriation have to be met as |
| 11:42 | 23 | to Mr. Larian individually.  Liability cannot be imposed |
| 11:42 | 24 | upon him -- |
| 11:42 | 25 | THE COURT:  I understand that. |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 118 of 138   Page ID #:298429
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

118

| 11:42 | 1 | MS. HURST:  -- on the basis of his position in the |
| 11:42 | 2 | corporate structure. |
| 11:42 | 3 | THE COURT:  I understand that. |
| 11:42 | 4 | MS. HURST:  Everyone who's gonna come here and |
| 11:42 | 5 | testify -- |
| 11:42 | 6 | THE COURT:  But since I can't get an answer about |
| 11:42 | 7 | whether these are, in fact, trade secrets -- in other words, |
| 11:42 | 8 | with thousands of documents, my understanding was, contained |
| 11:42 | 9 | within this disk are some of the very things that |
| 11:42 | 10 | Mr. Machado is accused of taking and using, and some of the |
| 11:42 | 11 | very trade secrets in this massive disk that Mattel is |
| 11:42 | 12 | concerned about. |
| 11:42 | 13 | There are many non-trade secret items in this.  I |
| 11:42 | 14 | understand that.  I'm going to resolve that by instruction. |
| 11:42 | 15 | But there are trade secret allegations contained in this |
| 11:43 | 16 | disk, from my understanding of our conferences. |
| 11:43 | 17 | Now, you haven't been here.  Remember that. |
| 11:43 | 18 | Mr. McConville's been here.  So let me set the record very, |
| 11:43 | 19 | very straight.  I've spent Saturdays and Sundays and |
| 11:43 | 20 | evenings up until 11:00 o'clock with counsel.  And I've been |
| 11:43 | 21 | very gracious and excused you.  But this comes as no |
| 11:43 | 22 | surprise. |
| 11:43 | 23 | Now, I'll take a moment, as always, to go back, |
| 11:43 | 24 | after having made that first statement, and try to do some |
| 11:43 | 25 | reflection on it.  But, meanwhile, I would like to look at |

CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

119

| | | |
|---|---|---|
| 11:43 | 1 | this tape and find out what happened in my Court or what |
| 11:43 | 2 | didn't happen. |
| 11:43 | 3 | MS. HURST:  I have the information on the identity |
| 11:43 | 4 | of the lawyers now for the Court. |
| 11:43 | 5 | THE COURT:  Okay.  Thank you. |
| 11:43 | 6 | MS. HURST:  With regard to what's been marked as |
| 11:43 | 7 | Exhibit 23916 -- |
| 11:43 | 8 | THE COURT:  I want 23915.  Who's the lawyer? |
| 11:44 | 9 | MS. HURST:  Okay.  Your Honor, what's the subject |
| 11:44 | 10 | line on that one?  I'm sorry.  You have our copy. |
| 11:44 | 11 | THE COURT:  23195. |
| 11:44 | 12 | MS. HURST:  And what's the subject line on it? |
| 11:44 | 13 | THE COURT:  "Isaac Larian, President and CEO, |
| 11:44 | 14 | January 3, 2008, 2:47:53 a.m. Re: 12/28/07 Rough ASCII of |
| 11:44 | 15 | Marlow deposition." |
| 11:44 | 16 | MS. HURST:  The attorneys to whom that was sent |
| 11:44 | 17 | were Craig Holden, in-house counsel; Kenneth Plevan at |
| 11:44 | 18 | Skadden. |
| 11:44 | 19 | THE COURT:  Just a moment.  Holden or Holdman? |
| 11:44 | 20 | MS. HURST:  Holden, H-O-L-D-E-N. |
| 11:44 | 21 | THE COURT:  Okay.  And? |
| 11:44 | 22 | MS. HURST:  Kenneth Plevan, P-L-E-V-A-N, at |
| 11:44 | 23 | Skadden. |
| 11:44 | 24 | THE COURT:  Okay. |
| 11:44 | 25 | MS. HURST:  And Thomas Nolan at Skadden. |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 120 of 138   Page ID #:298431
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

120

| | | |
|---|---|---|
| 11:45 | 1 | THE COURT:  And Craig Holden is "house" counsel? |
| 11:45 | 2 | All right.  Now, if that's the case, what's |
| 11:45 | 3 | Mattel's position? |
| 11:45 | 4 | MR. QUINN:  As, Your Honor, can see, there is no |
| 11:45 | 5 | privileged content to this document.  The attorney-client |
| 11:45 | 6 | privilege only applies to confidential communications made |
| 11:45 | 7 | or rendered in connection with the seeking of legal advice. |
| 11:45 | 8 | It does not apply to the fact that a deposition |
| 11:45 | 9 | transcript, which, itself, is not privileged, is delivered |
| 11:45 | 10 | from Person A to Person B, even if Person B is a lawyer, |
| 11:45 | 11 | anymore than the fact that, you know, a drug dealer retained |
| 11:46 | 12 | a certain lawyer as of a certain date, or that money |
| 11:46 | 13 | exchanged hands as of a certain date.  There is no content. |
| 11:46 | 14 | There is no privileged communication. |
| 11:46 | 15 | THE COURT:  Okay.  And, once again, Ms. Hurst. |
| 11:46 | 16 | MS. HURST:  It doesn't exist in this form in the |
| 11:46 | 17 | real world.  This is just an artifact of the electronic |
| 11:46 | 18 | extraction process. |
| 11:46 | 19 | The e-mail that I'm looking at, which is the real |
| 11:46 | 20 | e-mail, is a whole thread between client and lawyers about |
| 11:46 | 21 | the contents of this deposition, about -- it is an exchange |
| 11:46 | 22 | between the lawyers and client about certain matters -- |
| 11:46 | 23 | THE COURT:  Okay.  What's the purpose of this? |
| 11:46 | 24 | Give me the big picture.  Where are we going with this? |
| 11:46 | 25 | MR. QUINN:  To show timing that he, Mr. Larian, |

| | | |
|---|---|---|
| 11:46 | 1 | knew the content or had the ability to know the content of |
| 11:46 | 2 | things that Marlow testifies to as of -- as of a certain |
| 11:46 | 3 | date. |
| 11:46 | 4 | THE COURT:  Just a moment. |
| 11:46 | 5 | As of December 28th, 2007? |
| 11:47 | 6 | MR. QUINN:  Well, I think the date of the e-mail |
| 11:47 | 7 | is January 3. |
| 11:47 | 8 | THE COURT:  No, I have -- |
| 11:47 | 9 | MR. QUINN:  I'm looking at -- |
| 11:47 | 10 | THE COURT:  My apologies. |
| 11:47 | 11 | You're absolutely right.  January 3rd. |
| 11:47 | 12 | MR. QUINN:  Right.  So that, as of that date, he's |
| 11:47 | 13 | chargeable with knowledge of what is in that deposition. |
| 11:47 | 14 | If they're saying that there's some other form of |
| 11:47 | 15 | this where there is privileged content, we're not seeking to |
| 11:47 | 16 | offer that.  That can be redacted, as we've redacted other |
| 11:47 | 17 | privileged communications. |
| 11:47 | 18 | We're looking only at these blank pages that |
| 11:47 | 19 | merely show the transmittal of a public deposition |
| 11:47 | 20 | transcript as of a certain date. |
| 11:47 | 21 | THE COURT:  What was Mr. Larian's response to |
| 11:47 | 22 | this?  Has he been asked the question yet? |
| 11:47 | 23 | MR. QUINN:  No. |
| 11:47 | 24 | MS. HURST:  No. |
| 11:47 | 25 | MR. QUINN:  He has not been asked the question. |

CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

122

| | | |
|---|---|---|
| 11:47 | 1 | This will impeach his knowledge about what he |
| 11:47 | 2 | claims he knew or didn't know about the seamstresses as of |
| 11:47 | 3 | certain points in time. |
| 11:47 | 4 | MS. HURST:  He said he learned about it in the |
| 11:48 | 5 | case.  It's fully consistent with that. |
| 11:48 | 6 | MR. QUINN:  Well, I don't think that's his |
| 11:48 | 7 | testimony, but let the jury decide. |
| 11:48 | 8 | THE COURT:  Okay.  All right. |
| 11:48 | 9 | Now.  What else besides these issues? |
| 11:48 | 10 | In other words, eventually, I'm going down with |
| 11:48 | 11 | lead counsel.  I'm going to spend ten minutes.  You're going |
| 11:48 | 12 | to sit here while I look at these tapes.  And we can go into |
| 11:48 | 13 | session at 12:30 or not. |
| 11:48 | 14 | MR. PRICE:  You're looking to your right.  We have |
| 11:48 | 15 | just a couple of issues.  I didn't know if you were looking |
| 11:48 | 16 | at us. |
| 11:48 | 17 | First, I want you to know what we're trying to do |
| 11:48 | 18 | with Mr. Larian and Mr. (sic) Kuemmerle's testimony. |
| 11:48 | 19 | THE COURT:  Mr. Larian is sitting in the |
| 11:48 | 20 | courtroom.  Do you want him excused, or do you want him to |
| 11:48 | 21 | remain.  He's more than welcome to remain because he's a |
| 11:48 | 22 | party and -- |
| 11:48 | 23 | MR. PRICE:  It's okay. |
| 11:48 | 24 | THE COURT:  Mr. Larian, you're more than welcome |
| 11:48 | 25 | to remain.  You're not being excused.  I just want you to |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 123 of 138   Page ID #:298434
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

123

| | | |
|---|---|---|
| 11:48 | 1 | understand you're free to stay here or to go.  It's not a |
| 11:49 | 2 | concern. |
| 11:49 | 3 | MR. PRICE:  Mr. Larian was a 30(b)(6) witness on |
| 11:49 | 4 | the search there.  And right now, you kind of have people |
| 11:49 | 5 | saying "I don't know," "You don't know," "We don't know" |
| 11:49 | 6 | about this CD.  It's the situation that you're kind of -- |
| 11:49 | 7 | you were worried about. |
| 11:49 | 8 | THE COURT:  I'm getting a little concerned that |
| 11:49 | 9 | nobody knows. |
| 11:49 | 10 | MR. PRICE:  Exactly.  He's a 30(b)(6) witness. |
| 11:49 | 11 | MR. QUINN:  Mr. Samouhi knows. |
| 11:49 | 12 | MR. PRICE:  Yeah.  And he was to be prepped on |
| 11:49 | 13 | this.  He said he read Ms. Kuemmerle's deposition.  And then |
| 11:49 | 14 | we know, through documents which they're now -- they're |
| 11:49 | 15 | objecting to because we just provided them today.  And I |
| 11:49 | 16 | understand the objection, but it's undisputed that |
| 11:49 | 17 | Ms. Kuemmerle said she sent that disk CD to O'Melveny. |
| 11:49 | 18 | O'Melveny sent it to Skadden -- uh, those documents.  They |
| 11:49 | 19 | prepared 'em for the 30(b)(6).  It has the Bates numbers on |
| 11:49 | 20 | it.  And, you know, there's a -- there's a court-appointed |
| 11:49 | 21 | forensic expert who's compared the -- MGA's copy with |
| 11:50 | 22 | Mattel's, and that they're identical. |
| 11:50 | 23 | So we were thinking we've got the 30(b)(6) witness |
| 11:50 | 24 | here.  It makes sense to get it introduced through him.  I'm |
| 11:50 | 25 | not gonna go through all the documents with him.  I just |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 124 of 138   Page ID
#:298435
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

124

| | | |
|---|---|---|
| 11:50 | 1 | want this CD to be in evidence so, you know, at the end of |
| 11:50 | 2 | the day, it's not gonna be "I don't know," "She doesn't |
| 11:50 | 3 | know," "He doesn't know." |
| 11:50 | 4 | THE COURT:  Or it doesn't come into evidence. |
| 11:50 | 5 | MR. PRICE:  Yeah.  And that would be unfair.  He |
| 11:50 | 6 | was supposed to know about this. |
| 11:50 | 7 | MS. HURST:  You know, he was not designated to |
| 11:50 | 8 | know about this. |
| 11:50 | 9 | And the CD was not created by anyone at MGA |
| 11:50 | 10 | Mexico, let alone Mr. Larian or MGA.  It was created by the |
| 11:50 | 11 | Mexican police outside the presence of any MGA Mexico |
| 11:50 | 12 | employee or representative. |
| 11:50 | 13 | Now, Mr. Machado testified in his deposition about |
| 11:50 | 14 | certain documents on the CD.  And if there's somebody who |
| 11:50 | 15 | can come and identify the documents and those turn out to be |
| 11:50 | 16 | Mattel trade secret documents, then that's all gonna come |
| 11:51 | 17 | into evidence.  But it is not proper to associate this with |
| 11:51 | 18 | Mr. Larian, given the standards of personal liability, |
| 11:51 | 19 | simply because he was designated on a 30(b)(6) topic that |
| 11:51 | 20 | isn't even the authentication of this disk. |
| 11:51 | 21 | Numerous other witnesses testified regarding the |
| 11:51 | 22 | disk.  Lisa Tonnu testified as a 30(b)(6) witness regarding |
| 11:51 | 23 | the disk.  Susanna Kuemmerle testified regarding the disk. |
| 11:51 | 24 | Mr. Machado testified regarding the disk. |
| 11:51 | 25 | Mr. Larian was not designated on the disk.  If |

| | | |
|---|---|---|
| 11:51 | 1 | they ask him -- I'm not saying they can't ask him, "Have you |
| 11:51 | 2 | ever seen this disk?  Are you familiar with it?"  But when |
| 11:51 | 3 | he says "no," they can't -- |
| 11:51 | 4 | THE COURT:  Now, Mr. Larian is standing, trying to |
| 11:51 | 5 | get your attention.  So why don't you go over and talk to |
| 11:51 | 6 | him for just a minute. |
| 11:51 | 7 | MS. HURST:  When he says "no," the fact that he |
| 11:51 | 8 | was once a 30(b)(6) witness on a different topic, as we |
| 11:51 | 9 | understood it, is not then a basis to authenticate and admit |
| 11:51 | 10 | the disk and ask him questions about the contents of it. |
| 11:52 | 11 | THE COURT:  Now, let's go back to the beginning. |
| 11:52 | 12 | It sounded to me that you didn't even want |
| 11:52 | 13 | questions asked.  Are you objecting to Mr. Larian being |
| 11:52 | 14 | asked if he's familiar with this disk? |
| 11:52 | 15 | MS. HURST:  No.  I'm only objecting to what |
| 11:52 | 16 | happens next.  That's all. |
| 11:52 | 17 | THE COURT:  It sounded like you did, to me. |
| 11:52 | 18 | MS. HURST:  Apologize. |
| 11:52 | 19 | THE COURT:  So let's set that aside. |
| 11:52 | 20 | Are you concerned about -- |
| 11:52 | 21 | (To the marshal:)  Brian, we'll be right down. |
| 11:52 | 22 | Can we come down and look at the tape? |
| 11:52 | 23 | U.S. MARSHAL:  Yes, Your Honor. |
| 11:52 | 24 | THE COURT:  I'm only going to take two attorneys |
| 11:52 | 25 | with me. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:52 | 1 | Your concern is that the disk would be received |
| 11:52 | 2 | when Larian's on the stand and worse, from your perspective, |
| 11:52 | 3 | that the contents would be gone into? |
| 11:52 | 4 | MS. HURST:  Yes. |
| 11:52 | 5 | THE COURT:  Simple as that? |
| 11:52 | 6 | MS. HURST:  Yes.  And that's -- yes, because we |
| 11:53 | 7 | thought that's what happened yesterday. |
| 11:53 | 8 | THE COURT:  It's simple as that? |
| 11:53 | 9 | MS. HURST:  Correct. |
| 11:53 | 10 | THE COURT:  And you're concerned -- so I repeat |
| 11:53 | 11 | back to you what I think you said in just one sentence is -- |
| 11:53 | 12 | he wasn't a 30(b)(6) witness designated as such. |
| 11:53 | 13 | MS. HURST:  Right, not on the disk.  Correct. |
| 11:53 | 14 | THE COURT:  On the disk? |
| 11:53 | 15 | MS. HURST:  Not -- he was not designated on the |
| 11:53 | 16 | disk. |
| 11:53 | 17 | THE COURT:  I understand. |
| 11:53 | 18 | That it only concerned the search and seizure of |
| 11:53 | 19 | the documents by the Mexican authorities. |
| 11:53 | 20 | MS. HURST:  What MGA knew about the search and |
| 11:53 | 21 | seizure.  MGA Van Nuys, in California, in Los Angeles. |
| 11:53 | 22 | Because remember -- |
| 11:53 | 23 | THE COURT:  Now, just a moment. |
| 11:53 | 24 | Well, I'm sorry.  Why don't you finish 'cause I |
| 11:53 | 25 | had some questions, but I want you to exhaust yourself |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 127 of 138   Page ID #:298438
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

127

| | | |
|---|---|---|
| 11:53 | 1 | first. |
| 11:53 | 2 | MS. HURST:  The Court's -- here's what we don't |
| 11:53 | 3 | want to have happen.  They're gonna try and show him the |
| 11:53 | 4 | letter which had Category 10 in it.  He never saw that |
| 11:53 | 5 | letter, because I gave him the Court order as -- to prepare |
| 11:53 | 6 | himself to understand what the topic was. |
| 11:53 | 7 | So they're gonna show him the letter.  Then, we're |
| 11:54 | 8 | gonna have to mark the Court's order as a trial exhibit, for |
| 11:54 | 9 | him to say, "Actually, this is what I understood the topic |
| 11:54 | 10 | was," all because there's this fight about whether he was |
| 11:54 | 11 | designated on the disk or not. |
| 11:54 | 12 | We did not designate him on the disk; and I'm |
| 11:54 | 13 | telling you, we never showed it to him.  As an intellectual |
| 11:54 | 14 | property practitioner, it was not good practice for me to |
| 11:54 | 15 | expose my client to trade secrets and put him in a position |
| 11:54 | 16 | of what they were then claiming was still AEO information, |
| 11:54 | 17 | of being accused of continuing use of that information.  If |
| 11:54 | 18 | that's my fault, put it on my head.  So be it.  But I am |
| 11:54 | 19 | telling you we never gave him that disk. |
| 11:54 | 20 | For them to try to then show him the letter of |
| 11:54 | 21 | Category 10, impeach him because he didn't look at the disk, |
| 11:54 | 22 | argue that he was on 30(b)(6) is gonna draw this Court into |
| 11:54 | 23 | it, and it's gonna be a whole line of examination about what |
| 11:54 | 24 | the scope of his topic was, impeaching him because he didn't |
| 11:54 | 25 | look at the disk -- like somehow we didn't prepare him, and |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 128 of 138   Page ID #:298439
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

128

| | | |
|---|---|---|
| 11:55 | 1 | attacking us.  That's what happened yesterday, and that's |
| 11:55 | 2 | our concern again today. |
| 11:55 | 3 | So we just want the normal rules of evidence to |
| 11:55 | 4 | apply, that when they ask him about the disk and he says he |
| 11:55 | 5 | hasn't seen it, that's then not a basis to admit it or ask |
| 11:55 | 6 | him questions about it. |
| 11:55 | 7 | MR. PRICE:  Can I allay counsel's concerns? |
| 11:55 | 8 | THE COURT:  Certainly. |
| 11:55 | 9 | MR. PRICE:  Can I cut through this? |
| 11:55 | 10 | I will not ask him whether he was adequately |
| 11:55 | 11 | prepared.  All I want to do is say, "You read |
| 11:55 | 12 | Ms. Kuemmerle's deposition about the disk.  It was sent to |
| 11:55 | 13 | your attorneys. This is the MGA Bates number." |
| 11:55 | 14 | I just want to get the thing into evidence so that |
| 11:55 | 15 | we don't have to have ten witnesses pointing fingers at each |
| 11:55 | 16 | other and saying, "I don't know," "I don't know," "I don't |
| 11:55 | 17 | know."  He was the 30(b)(6) witness on the topic.  I don't |
| 11:56 | 18 | want to embarrass him or go into what counsel did or he did. |
| 11:56 | 19 | I just want to get enough of a foundation that we can get |
| 11:56 | 20 | the thing into evidence.  'Cause there's no dispute that it |
| 11:56 | 21 | is, you know, what it is. |
| 11:56 | 22 | And, in fact, Ms. Kuemmerle said a copy was made |
| 11:56 | 23 | at MGA by the authorities with MGA present -- or, actually, |
| 11:56 | 24 | with authorities present, MGA made the copies. |
| 11:56 | 25 | I just want it in. |

| | | |
|---|---|---|
| 11:56 | 1 | MS. HURST:  We did not give him the portions of |
| 11:56 | 2 | the Kuemmerle testimony about the disk.  We gave him the |
| 11:56 | 3 | portions of the Kuemmerle testimony about what had been |
| 11:56 | 4 | communicated to MGA Van Nuys in order to show its knowledge |
| 11:56 | 5 | of the search and seizure. |
| 11:56 | 6 | Ms.-- there was a conversation on the day of the |
| 11:56 | 7 | search between Ms. Kuemmerle, Mr. Machado and Mr. Larian. |
| 11:56 | 8 | The fact of the search had been communicated to him on that |
| 11:57 | 9 | day.  Their respective testimony about what that |
| 11:57 | 10 | communication was, was provided to the witness to testify on |
| 11:57 | 11 | the topic of MGA Van Nuys's knowledge of the search.  It was |
| 11:57 | 12 | not the testimony about the disk. |
| 11:57 | 13 | MR. OVERLAND:  Your Honor, can I also add |
| 11:57 | 14 | something? |
| 11:57 | 15 | THE COURT:  Absolutely. |
| 11:57 | 16 | MR. OVERLAND:  I know they want to get this |
| 11:57 | 17 | evidence in, but it's not the way to do it. |
| 11:57 | 18 | Ms. Kuemmerle wasn't present at the time of the |
| 11:57 | 19 | search.  It's all hearsay in terms of the trial.  Whether |
| 11:57 | 20 | she testified as a 30(b)(6) or not makes no difference in |
| 11:57 | 21 | terms of this trial.  You still have to follow the rules of |
| 11:57 | 22 | evidence as to the trial.  And she wasn't present.  Her |
| 11:57 | 23 | entire 30(b)(6) testimony is based on hearsay.  Now, we get |
| 11:57 | 24 | into another hearsay level. |
| 11:57 | 25 | So if they want to get it in, they can get it in, |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 130 of 138   Page ID #:298441
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

130

| | | |
|---|---|---|
| 11:58 | 1 | but not through this witness, and not through a 30(b)(6) |
| 11:58 | 2 | witness who doesn't have firsthand knowledge. |
| 11:58 | 3 | MR. PRICE:  This is the purpose of 30(b)(6):  To |
| 11:58 | 4 | avoid this kind of thing. |
| 11:58 | 5 | THE COURT:  Now, tactically, what I'm also |
| 11:58 | 6 | hearing, so we have an even better record, is that Mattel |
| 11:58 | 7 | would probably like to avoid, of course, all of the |
| 11:58 | 8 | witnesses coming from Mexico, in terms of jurisdiction; and, |
| 11:58 | 9 | of course, we have the problem of the prosecution down in |
| 11:58 | 10 | Mexico that's rearing its ugly head. |
| 11:58 | 11 | From MGA's perspective, you're forgetting a |
| 11:58 | 12 | significant part.  And you did read the order too narrowly. |
| 11:58 | 13 | I'm going to read it back to you. |
| 11:58 | 14 | "Search," what does that mean Ms. Hurst? |
| 11:58 | 15 | Exactly what you had your witness prepare for, |
| 11:59 | 16 | right? |
| 11:59 | 17 | Now, tell me what "seizure" means.  What does a |
| 11:59 | 18 | Court mean when it says "search and seizure"? |
| 11:59 | 19 | Forget "search" for a moment. |
| 11:59 | 20 | What do I mean, by "seizure"? |
| 11:59 | 21 | MS. HURST:  Matters taken. |
| 11:59 | 22 | THE COURT:  Amazing. |
| 11:59 | 23 | And when you get to the second to the last |
| 11:59 | 24 | sentence, when I say, "MGA's knowledge of the events at its |
| 11:59 | 25 | subsidiary's office remains undiscovered," why was I writing |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 131 of 138   Page ID #:298442
CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

131

| | | |
|---|---|---|
| 11:59 | 1 | that?  What did I intend? |
| 11:59 | 2 | It's very clear that the door was still open. |
| 11:59 | 3 | This wasn't a foreclosure.  In wasn't a finding.  This was |
| 11:59 | 4 | simply a deposition that we were moving through in the early |
| 11:59 | 5 | part when Kuemmerle, quite frankly, froze. |
| 11:59 | 6 | Now, before I make a final ruling, I'm gonna get |
| 11:59 | 7 | off the bench for a moment and do some reflection. |
| 12:00 | 8 | Anything else? |
| 12:00 | 9 | MR. PRICE:  The other outstanding issue, |
| 12:00 | 10 | Your Honor, was asking Mr. Larian about seeking attorneys |
| 12:00 | 11 | fees from his brother.  And that's because there's this |
| 12:00 | 12 | issue of why the case was dropped.  And Mr. Larian said, "It |
| 12:00 | 13 | was dropped because we're family" and -- and he realized |
| 12:00 | 14 | that it was -- |
| 12:00 | 15 | THE COURT:  Well, let's walk through that for just |
| 12:00 | 16 | a moment. |
| 12:00 | 17 | Attorneys fees. |
| 12:00 | 18 | MR. PRICE:  Well, the reason that seeking the |
| 12:00 | 19 | attorneys fees is relevant is, one, it impeaches Mr. Larian |
| 12:00 | 20 | on his statement that, you know, "We were all a family," and |
| 12:00 | 21 | "We're all happy afterwards." |
| 12:00 | 22 | Well, he actually sought attorneys fees of a |
| 12:00 | 23 | million dollars.  It's already in evidence, actually. |
| 12:00 | 24 | THE COURT:  I understand it's already in evidence. |
| 12:00 | 25 | MR. PRICE:  And in connection with that, |

| | | |
|---|---|---|
| 12:00 | 1 | Mr. Larian maintained, "I'm owed a million dollars because |
| 12:00 | 2 | the suit was worthless."  And his brother said -- I mean, |
| 12:01 | 3 | the suit was -- the lawsuit had no basis.  And his brother |
| 12:01 | 4 | responded, "That's not true.  I dropped this because of |
| 12:01 | 5 | family, because of what happened on the beach," et cetera. |
| 12:01 | 6 | So Mr. Larian has taken a position in front of |
| 12:01 | 7 | this jury which is untrue, and I think I'm allowed to |
| 12:01 | 8 | impeach him on that. |
| 12:01 | 9 | MS. KELLER:  May we be heard, Your Honor? |
| 12:01 | 10 | THE COURT:  Certainly. |
| 12:01 | 11 | MS. KELLER:  All of this has previously been |
| 12:01 | 12 | elicited by counsel -- all of it -- including the |
| 12:01 | 13 | million-dollar attorneys fees award.  Farhad Larian gave his |
| 12:01 | 14 | understanding that -- he said his brother never tried to |
| 12:01 | 15 | enforce it; that the statute of limitations has now expired |
| 12:01 | 16 | on it; Farhad Larian no longer believes that it could be |
| 12:01 | 17 | enforced. |
| 12:01 | 18 | We got the reasons why that happened:  Because his |
| 12:01 | 19 | father -- late father had asked him not to, and he promised |
| 12:01 | 20 | him that he wouldn't. |
| 12:01 | 21 | This is all in the record.  The only reason for |
| 12:01 | 22 | this -- the one and only reason -- is to set off Mr. Larian |
| 12:01 | 23 | because it's such an emotional issue for him, and it's all |
| 12:02 | 24 | wrapped up in the death of his father.  That succeeded this |
| 12:02 | 25 | morning.  Even though Mr. Larian asked to take a break, the |

133

| | | |
|---|---|---|
| 12:02 | 1 | Court could probably see he had started to cry on the stand. |
| 12:02 | 2 | He did not want the jurors to see him crying, asked to take |
| 12:02 | 3 | a break and left. |
| 12:02 | 4 | That provoked the outburst that the Court is now |
| 12:02 | 5 | gonna be reviewing. |
| 12:02 | 6 | The sole purpose of reopening this wound is to |
| 12:02 | 7 | pour a little salt in it, in the hopes that Mr. Larian will |
| 12:02 | 8 | again become emotional and upset. |
| 12:02 | 9 | It's all in the record already.  And I understand |
| 12:02 | 10 | that Counsel likes to repeat questions and repeat topics |
| 12:02 | 11 | over and over again, but I think this is just too much, |
| 12:02 | 12 | given the surrounding circumstances and the lack of |
| 12:02 | 13 | probative value of it. |
| 12:02 | 14 | THE COURT:  Okay.  Mr. Price. |
| 12:02 | 15 | MR. PRICE:  Your Honor, the intention is -- is not |
| 12:02 | 16 | to provoke.  It is to impeach. |
| 12:03 | 17 | THE COURT:  It's already in the record, isn't it? |
| 12:03 | 18 | MR. PRICE:  Well -- but there are two different |
| 12:03 | 19 | stories in the record. |
| 12:03 | 20 | One is the testimony of Ms. Maurus that the |
| 12:03 | 21 | lawsuit was dropped, Mr. Fred Larian said, because -- |
| 12:03 | 22 | because of family.  And you recall the testimony. |
| 12:03 | 23 | THE COURT:  That's why I allowed that.  There was |
| 12:03 | 24 | a contradictory statement that was pointed out last evening. |
| 12:03 | 25 | I hope we were on the record, weren't we? |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 134 of 138   Page ID #:298445
CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

134

| | | |
|---|---|---|
| 12:03 | 1 | MR. McCONVILLE:  Yes, we were. |
| 12:03 | 2 | MR. QUINN:  Yes.  Yes, Your Honor. |
| 12:03 | 3 | THE COURT:  The nights are running together, also. |
| 12:03 | 4 | I can't remember what night we were. |
| 12:03 | 5 | But last evening, I think we retained a reporter |
| 12:03 | 6 | until 9:00 o'clock.  Oftentimes, we've asked them to go home |
| 12:03 | 7 | and then something's broken out later in the evening. |
| 12:03 | 8 | MR. PRICE:  But Mr. Larian has taken the position, |
| 12:03 | 9 | as has Ms. Keller in her questioning, that it didn't have |
| 12:03 | 10 | anything to do with family; it's because the lawsuit was |
| 12:03 | 11 | entirely baseless. |
| 12:03 | 12 | I mean, so you have those two positions.  You |
| 12:03 | 13 | recall her cross-examination of Ms. Maurus. |
| 12:03 | 14 | THE COURT:  But it's for argument. |
| 12:03 | 15 | What I don't understand is this:  I've already |
| 12:04 | 16 | allowed the totality of the e-mail, after going over it last |
| 12:04 | 17 | evening, because I think Mr. McConville was wrong.  It |
| 12:04 | 18 | wasn't raised by Mattel initially.  We got the contradictory |
| 12:04 | 19 | statement in the examination by MGA of Farhad Larian.  So I |
| 12:04 | 20 | not only let that in, I let the totality of the e-mail in. |
| 12:04 | 21 | We also already have the hundred-million dollars |
| 12:04 | 22 | in -- I'm sorry the one million dollars in.  The one |
| 12:04 | 23 | million. |
| 12:04 | 24 | MR. PRICE:  When I asked Mr. Larian was -- is the |
| 12:04 | 25 | statement true, was it dropped because of family?  He said, |

DEBBIE GALE, U.S. COURT REPORTER

| 12:04 | 1 | "No, it was dropped because my brother thought it had no |
| 12:04 | 2 | merit." |
| 12:04 | 3 | Ms. Maurus's testimony -- so he -- he contradicted |
| 12:04 | 4 | that.  And I'm just trying to follow up, you know, and say, |
| 12:04 | 5 | you know, this wasn't all lovey-dovey.  You got the million |
| 12:04 | 6 | dollars, and your brother opposed it by saying it didn't |
| 12:05 | 7 | have merit.  You shouldn't award that against me.  It's been |
| 12:05 | 8 | brought up with two prior witnesses and -- |
| 12:05 | 9 | THE COURT:  So there's no disagreement:  It's in |
| 12:05 | 10 | evidence? |
| 12:05 | 11 | MR. PRICE:  The -- that's true.  The e-mail -- |
| 12:05 | 12 | THE COURT:  There's no disagreement.  You can |
| 12:05 | 13 | argue it. |
| 12:05 | 14 | MR. PRICE:  I think that's true. |
| 12:05 | 15 | THE COURT:  Okay.  All right. |
| 12:05 | 16 | All right.  What would you like to do? |
| 12:05 | 17 | MS. KELLER:  Nothing further that we can think of, |
| 12:05 | 18 | Your Honor. |
| 12:05 | 19 | THE COURT:  Well, think some more.  'Cause we have |
| 12:05 | 20 | a whole 28 minutes left. |
| 12:05 | 21 | MR. PRICE:  Your Honor, if you would like the |
| 12:05 | 22 | audio to go with the video -- if you want to know what |
| 12:05 | 23 | happened, we can testify to that, but why don't you look at |
| 12:05 | 24 | the video first. |
| 12:05 | 25 | THE COURT:  Well, thank you.  I'm going to anyway. |

Case 2:04-cv-09049-DOC-RNB   Document 9870   Filed 02/14/11   Page 136 of 138   Page ID #:298447
CV 04-9049 DOC - 2/11/2011 - Day 17, Volume 1 of 4

136

| | | |
|---|---|---|
| 12:05 | 1 | MR. PRICE:  But I was saying if you want to know |
| 12:05 | 2 | what -- if you want to know what accompanies that. |
| 12:05 | 3 | THE COURT:  I'll look at the video first.  I'll |
| 12:05 | 4 | look at the Court's own resources first. |
| 12:05 | 5 | MR. QUINN:  Are there cameras in the antiroom here |
| 12:05 | 6 | outside the courtroom? |
| 12:06 | 7 | THE COURT:  No.  But would you like them from now |
| 12:06 | 8 | on? |
| 12:06 | 9 | MR. QUINN:  I'm just saying, it would have been |
| 12:06 | 10 | useful.  You would have seen something. |
| 12:06 | 11 | THE COURT:  I don't have them out there because |
| 12:06 | 12 | those are rooms that the attorneys have historically used. |
| 12:06 | 13 | And the Courts have chosen not to put cameras in those |
| 12:06 | 14 | rooms. |
| 12:06 | 15 | MR. QUINN:  Your Honor, I'm talking about just the |
| 12:06 | 16 | foyer immediately outside, not either of the attorneys |
| 12:06 | 17 | rooms. |
| 12:06 | 18 | THE COURT:  Brian? |
| 12:06 | 19 | U.S. MARSHAL:  Outside the hallway, there is near |
| 12:06 | 20 | the windows. |
| 12:06 | 21 | THE COURT:  In the hallway we do.  But between |
| 12:06 | 22 | these two doors, we don't.  We've tried to keep that a |
| 12:06 | 23 | privileged area for the attorneys, their clients in case |
| 12:06 | 24 | they were having conversation; and both rooms, we've tried |
| 12:06 | 25 | not to -- we don't have any cameras in those rooms. |

CV 04-9049 DOC – 2/11/2011 – Day 17, Volume 1 of 4

137

| | | |
|---|---|---|
| 12:06 | 1 | Tell me when we're done 'cause I'm going to go |
| 12:06 | 2 | look at my own resources first. |
| 12:06 | 3 | MS. KELLER:  Your Honor, we're finished from our |
| 12:06 | 4 | perspective. |
| 12:06 | 5 | THE COURT:  Okay.  Then all of you are ordered to |
| 12:06 | 6 | sit here. |
| 12:06 | 7 | MS. KELLER:  Would it be all right for us to eat, |
| 12:07 | 8 | Your Honor, while we are sitting here? |
| 12:07 | 9 | THE COURT:  It certainly is. |
| 12:07 | 10 | MS. KELLER:  Thank you. |
| 12:07 | 11 | *(Lunch recess held at 12:07 p.m.)* |
| 12:07 | 12 | *(Further proceeding reported by Jane Sutton* |
| 12:08 | 13 | *rule in Volume II.)* |
| 12:08 | 14 | -oOo- |
| 12:08 | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

DEBBIE GALE, U.S. COURT REPORTER

| 12:08 | 1 | -oOo- |
|---|---|---|
| 12:08 | 2 | |
| 12:08 | 3 | CERTIFICATE |
| 12:08 | 4 | |
| 12:08 | 5 | I hereby certify that pursuant to Section 753, |
| 12:08 | 6 | Title 28, United States Code, the foregoing is a true and |
| 12:08 | 7 | correct transcript of the stenographically reported |
| 12:08 | 8 | proceedings held in the above-entitled matter and that the |
| 12:08 | 9 | transcript page format is in conformance with the |
| 12:08 | 10 | regulations of the Judicial Conference of the United States. |
| 12:08 | 11 | |
| 12:08 | 12 | Date:  February 11, 2011 |
| 12:08 | 13 | |
| 12:08 | 14 | |
| 12:08 | 15 | _____ |
| 12:08 | 16 | DEBBIE GALE, U.S. COURT REPORTER<br>CSR NO. 9472, RPR |
| 12:08 | 17 | |
| 12:08 | 18 | |
| 09:08 | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |