QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de C.V., a Mexico business entity,<br><br>              Plaintiffs,<br><br>      vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>              Defendants.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S TRIAL BRIEF ON SCOPE OF CLAIM FOR MISAPPROPRIATION OF BRATZ-RELATED TRADE SECRETS**<br><br>Hearing Date:        TBD<br>Time:                TBD<br>Place:               Courtroom 9D<br><br>Discovery Cut-off:   October 4, 2010<br>Pre-trial Conference: January 4, 2011<br>Trial:               January 11, 2011 |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ....................................................................................................... 4

I.     MATTEL'S COPYRIGHT CLAIMS ARE DISTINCT FROM ITS TRADE SECRET CLAIMS ................................................................... 4

     A.    Copyright And Trade Secret Law Protect Different Rights ................... 4

     B.    The Liability Elements For Establishing Copyright And Trade Secret Claims Are Distinct ........................................................... 8

     C.    California Law Interprets Causation Broadly in Establishing Tort Liability. ............................................................................. 12

II.    MATTEL IS ENTITLED TO HAVE THE JURY CONSIDER BOTH COPYRIGHT AND TRADE SECRETS CLAIMS ........................................ 15

CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

## Cases

Agilent Techs., Inc. v. Kirkland,
    2010 WL 610725 (Del. Ch. Feb. 18, 2010) ........................................... 15

Am. Can Co. v. Manshukhani,
    742 F.2d 314 (7th Cir. 1984) ................................................................. 11

Bank of New York v. Fremont Gen. Corp.,
    523 F.3d 902 (9th Cir. 2008) ............................................................. 3, 12

C&F Packing Co., Inc. v. IBP, Inc.,
    224 F.3d 1296 (Fed. Cir. 2000) ............................................................. 15

Cartel Asset Mgmt. v. Ocwen Fin. Corp.,
    249 Fed. App'x 63, 78-79 (10th Cir. 2007) ...................................... 14, 15

Computer Assocs. Int'l, Inc. v. Altai, Inc.,
    982 F.2d 693 (2d Cir. 1992) ............................................... 4, 5, 15, 16

Electro-Miniatures Corp. v. Wendon Co.,
    771 F.2d 23 (2d Cir. 1985) ................................................................... 15

Farhang v. Indian Institute of Tech.,
    2010 WL 3504897 (N.D. Cal. Sept. 7, 2010) ........................................ 13

JustMed, Inc. v. Byce,
    600 F.3d 1118 (9th Cir. 2010) ........................................................... 9, 10

Mangren Research and Dev. Corp. v. Nat'l Chem. Co.,
    87 F.3d 937 (7th Cir. 1996) ................................................................... 11

Mattel, Inc. v. MGA Entm't, Inc.,
    616 F.3d 904 (9th Cir. 2010) ................................................. 2, 4, 7, 8, 14

McRoberts Software, Inc. v. Media 100, Inc.,
    329 F.3d 557 (7th Cir. 2003) ........................................................... 16, 17

O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,
    420 F. Supp. 2d 1070 (N.D. Cal. 2006) ................................................. 12

PMC, Inc. v. Kadisha,
    78 Cal. App. 4th 1368 (2000) ..................................................... 10, 12, 14

Russo v. Ballard Med. Prods.,
    550 F.3d 1004 (10th Cir. 2008) ............................................................. 15

-ii-

<u>Rutherford v. Owens-Illinois, Inc.,</u>
   16 Cal. 4th 953 (1997) ............................................................................. 3, 11

<u>Serenic Software, Inc. v. Protean Techs.,</u>
   2007 WL 1366547 (D. Idaho Apr. 26, 2007) .................................................. 11

<u>Silvaco Data Sys. v. Intel Corp.,</u>
   184 Cal. App. 4th 210 (2010) .................................................................... 9, 10

<u>Syngenta Crop Prot., Inc. v. Helliker,</u>
   138 Cal. App. 4th 1135 (2006) ....................................................................... 10

<u>Theme Promotions, Inc. v. News Am. Mktg. FSI,</u>
   546 F.3d 991 (9th Cir. 2008) ......................................................................... 15

<u>Think Village-Kiwi, LLC v. Adobe Sys., Inc.,</u>
   2009 WL 3837270 (N.D. Cal. Nov. 16, 2009) ............................................... 11

<u>U.S. Fid. & Guar. Co. v. Am. Employer's Ins. Co.,</u>
   159 Cal. App. 3d 277 (1984) ......................................................................... 12

<u>Verigy US, Inc. v. Mayder,</u>
   2008 WL 564634 (N.D. Cal. Feb. 29, 2008) ............................................... 6, 11

<u>Vermont Microsystems, Inc. v. Autodesk, Inc.,</u>
   88 F.3d 142 (2d Cir. 1996) ..................................................................... 2, 6, 11

## <u>Statutes</u>

17 U.S.C. § 504(b) ............................................................................................ 14

<u>Cal. Civil Code</u> § 3426.1(b) .............................................................................. 9

## <u>Other Authorities</u>

Prosser & Keeton on Torts (5th ed. 1988 supp.) § 41, at 43 ................................. 13

Restatement (Third) Unfair Competition (1995) § 40 .......................................... 10

Restatement (Third) Unfair Competition § 45 ...................................................... 14

MATTEL PARTIES' TRIAL BRIEF ON DISTINCTION BETWEEN
TRADE SECRET AND COPYRIGHT CLAIMS

## **PRELIMINARY STATEMENT**

This brief addresses the question whether this Court's decisions limiting Mattel's copyright claim based on its reading of the Ninth Circuit opinion should also limit Mattel's trade secret claim.  The short answer is no.  The two claims are distinct in terms of the property rights protected (trade secret is broader and protects different interests), and they have different standards for liability (trade secret claims do not require proof of copying, but do protect against improper disclosure).  Moreover, the California courts have held that the "substantial factor" causation test, which governs intentional tort claims, such as trade secret misappropriation, should be interpreted to allow for liability so long as the defendant's wrongful conduct (i.e., misappropriation) was a contributing factor that was not "remote or trivial."

The copyright and trade secret claims should thus be submitted to the jury as distinct claims subject to separate rules for the following reasons:

*First,* the protected property rights that give rise to the copyright claim are distinct from, and based on rulings in this case far more limited than, those underlying the trade secrets claim.  As both the Ninth Circuit and this Court have stated, copyright law does not provide protection for ideas, but only the expression of them.  Copyright law also excludes such things as *scenes a faire*, purely utilitarian elements, and elements of expression merged with the underlying idea.  Amended Order on Motions for Summary Judgment, dated Jan. 5, 2011 (Dkt. No. 9600), at 14-15 (hereinafter, "MSJ Order").  Trade secret law, by contrast, allows claims that are premised on ideas and concepts that have been the subject of reasonable efforts to maintain their secrecy.  See id. at 34 ("Concepts can have value independent from the product they eventually inspire.").  As the Court recognized in rejecting MGA's copyright preemption argument, "trade secret law protects the secrecy of valuable confidential information 'whether or not the material subject to the trade secret is itself copyrightable.'"  Id. at 72 (citations omitted).  Stated simply, the trade secret bucket is bigger than the copyright bucket.

*Second*, the copyright and trade secret claims are subject to distinct liability requirements.  In order to establish copyright infringement in this Circuit, absent direct evidence of copying, the plaintiff must establish "substantial similarity" or "virtual identity" under the two-part extrinsic/intrinsic test.  Id. at 14-15.  The extrinsic part of this test focuses on whether the "specific details of an author's rendering of ideas . . . standing alone, are substantially similar."  Id. at 14 (citations and internal quotations omitted).  This, in turn, requires that the unprotected elements of the plaintiff's work, such as "ideas, scenes a faire (standard features) and unoriginal components . . . [be] 'filtered' out . . . ."  Mattel, Inc. v. MGA Entm't, Inc., 616 F.3d 904, 913 (9th Cir. 2010).  In other words, the substantial similarity analysis requires the Court to filter out elements that are protectable as trade secrets.  Moreover, under the Ninth Circuit ruling, although the drawings are entitled to "broad copyright protection against substantially similar works" (id. at 916), Mattel is only afforded "thin copyright protection" for the sculpt, and therefore can only establish infringement by showing "virtually identical copying" (i.e., copying that is virtually identical overall or substantially similar as to protected elements).  Id. at 915.

Trade secret law, by contrast, does not require proof of copying at all.  Rather, misappropriation can be established by acquisition, disclosure or use, and use-based misappropriation can be shown in a variety of ways that do not require copying. Even where a party seeks to establish improper use of a trade secret through conduct that can be analogized to copying, all that is required is a showing that the defendant's product was substantially based on the trade secret.  Vermont Microsystems, Inc. v. Autodesk, Inc., 88 F.3d 142, 147 (2d Cir. 1996) (applying California law).  This is far less onerous than showing that the defendant's product was "virtually identical" or even "substantially similar" to the plaintiff's work.

*Third*, because trade secret misappropriation is an intentional tort, the law of causation strictly limits the significance of intervening actions or reactions.  Under California's substantial factor causation test, a defendant is liable for an intentional tort, such as misappropriation of trade secrets, if the defendant's conduct merely contributed to the harm; it need not be the only cause of the harm, or even rise to the level of a but-for cause of the harm.  Bank of New York v. Fremont Gen. Corp., 523 F.3d 902, 909-10 (9th Cir. 2008); Rutherford v. Owens-Illinois, Inc., 16 Cal. 4th 953, 969 (1997); BAJI 3.76, cmts.; see also CACI 430.  Clearly, MGA's wrongful acquisition and use of Mattel's trade secrets in this case was a contributing factor in generating profits, even from later generation Bratz products.  At a minimum, the jury could so find.  Indeed, the jury properly could find that but for the misappropriation of Mattel's concepts and designs for Bratz, MGA never would have produced or developed the Bratz brand at all.

For each of these independent reasons, the restriction of Mattel's copyright claim to the sculpt and certain dolls does not affect the permissible scope of the trade secret claim, either with regard to the trade secrets on which the claim is premised, the rules governing liability, or the recovery that may be sought.  If MGA wishes to argue that Mattel's unjust enrichment remedy should be limited because of MGA's claimed contributions, the vehicle to do so is *not* an improper, *per se* restriction on the scope of the trade secret claim.  Rather, MGA may attempt to satisfy its burden to show that some portion of its profits were *not* the result of the misappropriation of Mattel's trade secrets.  It is for the jury to decide if MGA has satisfied that burden, and, if so, to what extent.

Mattel respectfully submits that there will be more than sufficient evidence from which the jury could find in its favor on the trade secret claims it has asserted.

MATTEL PARTIES' TRIAL BRIEF ON DISTINCTION BETWEEN
TRADE SECRET AND COPYRIGHT CLAIMS

1  It would be error, only curable by a retrial, to restrict Mattel's trade secret claims
2  based on the copyright rulings.[1]

## ARGUMENT

**I.   MATTEL'S COPYRIGHT CLAIMS ARE DISTINCT FROM ITS TRADE SECRET CLAIMS**

### A.   Copyright And Trade Secret Law Protect Different Rights

Copyright and trade secret law protect distinct property rights.  "It is a fundamental principle of copyright law that a copyright does not protect an idea, but only the expression of the idea."  _Computer Assocs. Int'l, Inc. v. Altai, Inc._, 982 F.2d 693, 703 (2d Cir. 1992).  Copyright law does not protect such matters as "(1) _scenes a faire_ that 'necessarily result from the choice of a setting or situation,'; (2) purely utilitarian elements; and (3) elements of expression merged with the underlying idea."  MSJ Order at 14-15 (citations omitted).  Here, the Ninth Circuit declined to find copyright protection for "[t]he concept of depicting a young, fashion-forward female with exaggerated features, including an oversized head and feet."  _Mattel_, 616 F.3d at 915.  It stated that "fashion dolls with a bratty look or attitude, or dolls sporting trendy clothing . . . are all unprotectable ideas."  _Id._ at 916.  Applying the Ninth Circuit's analysis, this Court stated that "[t]he oversized head, protrusive lips, and diminished nose found in Bryant's sketches are not original elements."  MSJ Order at 13 (citing Ninth Circuit Opinion, dated July 22, 2010, at 10534-44); _id._ at 17 (use of "exaggerated physical proportions to express this idea, including larger eyes, heads, lips and feet, longer legs, and skinnier torsos and limbs than found in nature . . . is both unoriginal and an unprotectable idea").  With respect to the sculpt, the Court stated that the depiction of "a young, female fashion

---

[1]   By contrast, should the Circuit or this Court later disagree with the approach urged by Mattel, any error in sending these issues to the jury could be cured without the need for retrial by the use of a properly constructed verdict form.

doll with exaggerated proportions [is] an unprotectable idea." <u>Id.</u> at 15. According to the Court's ruling, "large heads, thick lips, high cheekbones, slim arms, long legs, and slim torsos . . . are unprotectable features [of the sculpt] as they are required by the underlying idea." <u>Id.</u> [2]

Going further, MGA's proposed jury instructions list "at least" 19 separate "elements" it contends are "unprotectable ideas" and cannot be considered in a substantial similarity analysis for the copyright claim, including: (1) fashion dolls with a bratty look or attitude; (2) a young female fashion doll with exaggerated proportions; (3) dolls sporting trendy clothing; (4) exaggerated features, including an oversized or larger head and feet; (5) larger eyes, thick lips, high cheekbones, slim arms, long legs, and slim torsos; (6) lips that curve; (7) the look of a girl who is wearing heavy makeup; (8) oversized almond-shaped eyes; (9) angular eyebrows; (10) the dolls' resemblance to humans; (11) the presence of hair, head, two eyes and other human features; (12) human clothes, shoes and accessories; (13) features necessary to depict a certain age, race, or ethnicity; (14) "urban" or "rural" appearance; (15) standard features relative to others (like a thin body or small waist); (16) postures and poses that mimic the human form or are standard for the effective display of fashionable clothing; (17) elements necessary to make a fashion doll capable of mass production on an efficient economic scale; (18) elements necessary to satisfy the basic intended play pattern of a fashion doll, i.e., taking off and putting on clothes and accessories; (19) standard cosmetics techniques and placement, i.e., blush on cheeks or eyeshadow on eyes. Dkt. No. 9720 at 213-214.

By contrast, "trade secret doctrine protects the discovery of ideas, processes, and systems which are explicitly precluded from coverage under copyright law. . . ." <u>Computer Assocs.</u>, 982 F.2d at 717. For example, California law protects

---

[2]   While bound by these rulings at this stage, Mattel reserves its rights to appeal these restrictions on its copyright claims.

a "combination" trade secret consisting of "a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." <u>Vermont Microsystems</u>, 88 F.3d at 147 (internal quotation omitted); <u>see also</u> <u>Verigy US, Inc. v. Mayder</u>, 2008 WL 564634, at *6 (N.D. Cal. Feb. 29, 2008) (granting preliminary injunction based on evidence of misappropriation of trade secret related to flash memory and holding that "the combination of publicly-known elements can be trade secret provided the combination itself is not generally known").

Consistent with this fundamental distinction between copyright and trade secret law, Mattel's trade secret claim is based on material that *was not* the subject of the copyright claim.  For example, while both claims are predicated on the Bratz drawings, the Hero Shot, and the sculpt, the trade secret claim is also based on the Bratz Concept, defined as follows:  a multi-ethnic group of hip, urban, edgy, trendy teen age girls fashion dolls and accessories, collectively known as "Bratz," including designs for large, oversized heads and feet, large eyes, large lips, small, almost non-existent noses, and small bodies.  The dolls are four high school, multi-ethnic friends with attitude; each have distinctive names, nick names, fashions, personalities, back stories and icons descriptive of the doll's personal mascot.  Dkt. Nos. 9829-1 and 9829-2.[3]  The trade secret claim also is predicated on the "Bratz" name.  And the trade secret claim is predicated on the ideas incorporated in and

---

[3]   The Bratz Concept is also defined as a multi-ethnic group of hip, urban, edgy, trendy teen age girls fashion dolls and accessories, including designs for large, oversized heads and feet, large eyes, large lips, small, almost non-existent noses, and small bodies.  The dolls are four high school, multi-ethnic friends with attitude; each have distinctive names, nick names, fashions, personalities, back stories and icons descriptive of the doll's personal mascot.  Dkt. Nos. 9829-1 and 9829-2.

reflected by the Bratz designs – elements of the designs that have been held unprotectable by copyright.

In its summary judgment ruling, the Court recognized that this property may give rise to a trade secret claim without conflicting with the Ninth Circuit's ruling on the scope of copyright protection.  For instance, while under copyright law, "[t]he concept of depicting a young, fashion-forward female with exaggerated features, including an oversized head and feet, is therefore unoriginal as well as an unprotectable idea" (Mattel, 616 F.3d at 915), the Bratz concept – defined to include "the group name Bratz, the four doll names Jade, Hallidae, Lupe, and Zöe, as well as the doll designs, fashions, themes, and marketing slogans in Bryant's pitch book" – can qualify as a trade secret, as "[c]oncepts can have value independent from the product they eventually inspire."  MSJ Order at 31, 34.  Similarly, while copyright law does not provide protection for ideas, Mattel is entitled to pursue a trade secret claim based on its "unreleased product *idea* for a line of dolls with interchangeable heads and fashions. . . ."  Id. at 38 (emphasis added).  Thus, the very items that MGA contends in its proposed jury instruction are unprotected under copyright are an appropriate subject of the trade secret claim.

As this Court recognized, "the Copyright Act doesn't preempt Mattel's claim for misappropriation of the Bratz concept because trade secret law protects the secrecy of valuable confidential information 'whether or not the material subject to the trade secret is itself copyrightable.'"  MSJ Order at 72 (citations omitted).  Far from being an effort by Mattel "to avoid limitations inherent in the copyright analysis," as MGA argued at the time (id. at 73), the distinction between the rights protected by copyright and those protected by trade secret law reflects the distinct purposes served by each.

**B.**   **The Liability Elements For Establishing Copyright And Trade Secret Claims Are Distinct**

Not only do copyright and trade secret claims protect entirely distinct property rights, they require separate elements in order to establish liability.   To establish a claim for copyright infringement, "Mattel must establish that: (1) it owns copyrights in the concept sketches and sculpts; [and] (2) MGA copied original elements of the copyrighted works."   MSJ Order at 12.   "Copying may be established by (1) direct evidence of the copying of original elements of the copyrighted work; or (2) access and substantial similarity 'not only of the general ideas but of the expressions of those ideas as well.'"   Id.   "A two part extrinsic/intrinsic test determines whether two works are substantially similar."   Id. at 14.

The extrinsic test "focuses on whether 'the specific details of an author's rendering of ideas . . . standing alone, are substantially similar.'"   Id.   In applying the extrinsic test, the court must filter out those elements of the defendant's work that are not protectable under copyright law, including "(1) *scenes a faire* that 'necessarily result from the choice of a setting or situation,'; (2) purely utilitarian elements; and (3) elements of expression merged with the underlying idea."   Id. at 14-15.   In addition, the substantially similar test for copying will apply only where "there's a wide range of expression."   Mattel, 616 F.3d at 913-14.   "If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe."   Id. at 914.   The Ninth Circuit concluded that while the "substantial similarity" standard applied to the drawings, the more stringent "virtually identical" test would have to be met with regard to the copyright claim premised on the sculpt.   Id. at 915-17.

Trade secret misappropriation does not require proof of copying, let alone a filtering of non-copyrightable elements under the extrinsic test.   "Under CUTSA,

-8-

misappropriation of a trade secret may be achieved through three types of conduct: '[a]cquisition,' '[d]isclosure, or '[u]se.'" Silvaco Data Sys. v. Intel Corp., 184 Cal. App. 4th 210, 222 (2010) (quoting Cal. Civil Code § 3426.1(b)) (modification in original) (disapproved on other grounds, Kwikset Corp. v. Superior Court, 2011 WL 240278, at *14 (Cal. Jan. 27, 2011)).[4]

Trade secret claims based on improper acquisition or disclosure plainly do not require proof of copying, let alone a showing that the defendant's products are substantially similar to the trade secrets in question.  All that is needed to show acquisition is that the defendant "c[a]me into possession, control, or power of disposal of" the trade secret.  JustMed, Inc. v. Byce, 600 F.3d 1118, 1129 (9th Cir. 2010).  "Disclosure" means just what it says – to disclose the trade secret to a third party absent the requisite consent.  See Cal. Civil Code § 3426.1(b)(2).  Plainly, copying a work is not required to establish misappropriation through either acquisition or disclosure.

---

[4]   The statutory definition of misappropriation, Cal. Civil Code § 3426.1(b), defines "misappropriation" to mean:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(A) Used improper means to acquire knowledge of the trade secret; or

(B) At the time of the disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

(i) Derived from or through a person who had utilized improper means to acquire it;

(ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

"The Uniform Trade Secrets Act does not define the term 'use.'" <u>Syngenta Crop Prot., Inc. v. Helliker</u>, 138 Cal. App. 4th 1135, 1172 (2006) (recognizing that "use" is not defined by the Uniform Trade Secrets Act, and its meaning may vary depending on the context).  "One clearly engages in the 'use' of a secret, in the ordinary sense, when one directly exploits it for his own advantage, e.g., by incorporating it into his own manufacturing technique or product." <u>Silvaco Data Sys.,</u> 184 Cal. App. 4th at 224.  But "use" includes a wide array of other conduct that does not involve actual copying.   "Employing the confidential information in manufacturing, production, research or development, marketing goods that embody the trade secret, or soliciting customers through the use of trade secret information, all constitute use." <u>PMC, Inc. v. Kadisha</u>, 78 Cal. App. 4th 1368, 1383 (2000) (citing Restatement (Third) Unfair Competition (1995) § 40, cmt. c) (reversing summary judgment based on triable issue as to whether new officers of company knew or had reason to know that the manufacturing business was using trade secret information brought to the company by former managers of a competitor).   The Ninth Circuit has also endorsed a broad definition of use under the Uniform Trade Secrets Act, and has quoted with approval the Restatement comment:

> There are no technical limitations on the nature of the conduct that constitutes "use" of a trade secret for purposes of the rules stated in Subsection (b).  As a general matter, any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a "use" under this Section.

<u>JustMed</u>, 600 F.3d at 1130 (quoting Restatement, <u>supra</u>, cmt. c) (interpreting Idaho's version of the UTSA).

Under this broad definition, conduct that does not involve copying a trade secret for defendant's use in a product can still qualify as "use"-based misappropriation.  And even where a plaintiff seeks to establish that the defendant used the trade secret in connection with its manufacture of a new product, the trade

-10-

secret standards are distinct from those required to establish the element of copying on the infringement claim.  The test for "use" in this context is not whether the copyright-protectable elements of the plaintiff's work are "virtually identical" or "substantially similar" to those same elements in the defendant's work, but rather whether the defendant's product was substantially based on the plaintiff's trade secret.  See Vermont Microsystems, 88 F.3d at 147 (to demonstrate misappropriation, the plaintiff had "to show that the display list driver incorporated in R12 Windows was substantially derived from the architecture of its AutoMate display list driver").

Unlike the copyright claim based on the sculpt, Mattel need not prove that the corresponding aspects of MGA's products are "identical" to Mattel's trade secrets. It can prevail by showing that MGA's product was "merely an obvious evolution of a product based on [Mattel's] trade secrets."  Verigy, 2008 WL 564634, at *7. "Under California law, minor variations in a product do not negate a claim for misappropriation of trade secrets."  Id.  "If the law were not flexible enough to reach such modifications, trade secret protection would be quite hollow."  Am. Can Co. v. Manshukhani, 742 F.2d 314, 329 (7th Cir. 1984) (quoted in Verigy).  Mattel need not prove that MGA copied or used each and every element of Mattel's trade secrets in order to establish misappropriation as to that product.  It is sufficient if the jury concludes that MGA "created a new product if [it] could not have done so without use of [Mattel's] trade secret."  Mangren Research and Dev. Corp. v. Nat'l Chem. Co., 87 F.3d 937, 944 (7th Cir. 1996) (approving jury instruction under the Illinois Trade Secret Act, which was "consistent with traditional trade secret law").  "[W]hen 'a defendant uses a plaintiff's trade secret as a "starting point" for new formulations or processes' that may be evidence of misappropriation."  Serenic Software, Inc. v. Protean Techs., 2007 WL 1366547, at *6 (D. Idaho Apr. 26, 2007) (applying Idaho Trade Secret Act); see also Think Village-Kiwi, LLC v. Adobe Sys., Inc., 2009 WL 3837270, at *3 (N.D. Cal. Nov. 16, 2009) (denying defendant's

-11-

motion for summary judgment on trade secret claim in face of evidence that trade secret had "substantial influence" on defendant's accused design).

For these reasons, this Court's summary judgment ruling on copyright infringement as to certain of the later generation dolls does not foreclose a trade secret claim based on these dolls.  The trade secret claim does not require Mattel to establish virtual identity or substantial similarity, which was the basis for the Court's ruling.

## C.   California Law Interprets Causation Broadly in Establishing Tort Liability.

In <u>Bank of New York v. Fremont General Corp.</u>, 523 F.3d 902 (9th Cir. 2008), the Ninth Circuit detailed the causation standard applied to intentional torts:[5] "California employs the 'substantial factor' test for determining causation in intentional torts cases. . . .  California law defines 'substantial' expansively, and at least one court has cautioned against placing 'undue emphasis' on the ordinary meaning of that word." <u>Id.</u> at 909.  *Although "a force which plays only an 'infinitesimal' or 'theoretical' part in bringing about injury, damage, or loss is not a substantial factor,"* the substantial factor test is a "broader rule of causality than the 'but for' test." <u>Rutherford v. Owens-Illinois, Inc.</u>, 16 Cal. 4th 953, 969 (1997) (emphasis added) (citing <u>People v. Caldwell</u>, 36 Cal. 3d 210, 220 (1984)); <u>see also</u> <u>U.S. Fid. & Guar. Co. v. Am. Employer's Ins. Co.</u>, 159 Cal. App. 3d 277, 285 (1984 ("The critical question as to causation in intentional torts is whether the actor's conduct is a substantial factor in bringing about the type of harm which he intended from his original act.  *[N]o consideration is given to the fact that after the event it appears highly extraordinary that it should have brought about such harm*

---

[5]   Trade secret misappropriation is an intentional tort.  <u>O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.</u>, 420 F. Supp. 2d 1070, 1091 (N.D. Cal. 2006); <u>PMC</u>, 78 Cal. App. 4th at 1382.

1   *or that the actor's conduct has created a situation harmless unless acted upon by*

2   *other forces for which the actor is not responsible.*") (quoting Tate v. Canonica, 180

3   Cal. App. 2d 898, 907 (1960)) (internal citations and some punctuation omitted)

4   (emphasis added) (disapproved on other grounds, J.C. Penney Cas. Ins. Co. v. M.K.,

5   52 Cal. 3d 1009, 1019 (1991)); Prosser & Keeton on Torts (5th ed. 1988 supp.) § 41,

6   at 43-44.  "A substantial factor in causing harm is a factor that a reasonable person

7   would consider to have contributed to the harm.  *It must be more than a remote or*

8   *trivial factor.*  It does not have to be the only cause of the harm."  CACI 430

9   (emphasis added).

10   Under this meaning of "substantial factor" – the meaning unquestionably

11   applied by California law to trade secret misappropriation[6] – it would not matter *for*

12   *liability purposes* if MGA's independent contributions were every bit as (or more)

13   important in earning Bratz profits as the concept and the idea and the Mattel-era

14   works.  To address a question raised by this Court last week, it would not matter if

15   changes were made from the original design; it would not matter if Carter Bryant

16   could not have done it without MGA's financial prowess or creative contributions or

17   sweat equity; it would not matter, as compared to copyright law, that the dolls

18   looked at best like sisters or cousins of the older generations, so long as the trade

19   secrets, concept and works and idea were not "*an 'infinitesimal' or 'theoretical'*"

20   factor in the profits earned.

21   In addressing the scope of the constructive trust, the Ninth Circuit concluded

22   that the failure to take account of MGA's "sweat equity" resulted in an overly-broad

23   _____

24   ⁶   See Farhang v. Indian Inst. of Tech., Kharagpur, 2010 WL 3504897, at *6

25   (N.D. Cal. Sept. 7, 2010) (applying substantial factor test to misappropriation of
     trade secrets claim).  See generally Restatement (Third) of Unfair Competition § 45,

26   Monetary Relief: Appropriation of Trade Secrets, cmt. a ("The general rules relating

27   to the recovery of compensatory damages in tort actions apply in actions for the
     appropriation of trade secrets.").

28

1    constructive trust over the entire brand.  The context of that holding was equitable

2    and remedial:  the Court was reviewing the scope of the constructive trust, and

3    concluded that "[i]t is not equitable to transfer this billion dollar brand" given the

4    significance of MGA's "sweat equity" contribution.   Mattel, 616 F.3d at 911.

5    Mattel does not read that language to hold that non-equitable remedies are *per se*

6    limited or that it is entitled to *no* interest in the brand that developed, but only that

7    such interest is subject to apportionment which is available under the principles

8    discussed below.[7]   Indeed, this Court's recent Minute Order recognized that "the

9    Ninth Circuit held that a 'narrower' constructive trust may be imposed on the basis

10   of a fact-finder's determination that Bryant assigned his idea for the name 'Bratz' to

11   Mattel."  Court Minutes for February 12, 2011 Informal Hearing, Dkt. No. 9877, at

12   1.

13            The fact that MGA's contributions do not undermine the required substantial

14   factor causation does not mean that Mattel would automatically recover all profits.

15   Just as the copyright statute permits MGA to argue that some portion of its profits

16   are "attributable to factors other than the copyrighted work" (17 U.S.C. § 504(b)),

17   MGA can seek to satisfy its burden to show that some portion of its profits were

18   "not attributable to the trade secret."   See Restatement (Third) Unfair Competition

19   § 45, cmt. f ("The general rules governing accountings of profits are applicable in

20   trade secret actions.  The plaintiff is entitled to recover the defendant's net profits.

21   The plaintiff has the burden of establishing the defendant's sales; the defendant has

22   the burden of establishing any portion of the sales not attributable to the trade secret

23   and any expenses to be deducted in determining net profits.");[8]  see also Cartel Asset

---

[7]    Transcript of Ninth Circuit Oral Argument, dated Dec. 9, 2009, at 34:23-38:19.

[8]    California courts have followed the Restatement in trade secret cases.  PMC, 78 Cal. App. 4th at 1383 (citing Section 40's definition of trade secret use).

1   Mgmt. v. Ocwen Fin. Corp., 249 Fed. App'x 63, 78-79 (10th Cir. 2007) (applying

2   burden shifting principles to Colorado's UTSA and quoting Restatement); Agilent

3   Techs., Inc. v. Kirkland, 2010 WL 610725, at *30, n.280 (Del. Ch. Feb. 18, 2010)

4   (applying burden shifting under Delaware law).

5        Ultimately, it must be up to the jury to determine how much of MGA's profits

6   Mattel is entitled to recover by looking at categories of products and determining

7   whether the trade secret was more than a trivial factor; and then to determine how

8   much of the resulting profits should be awarded.  See Electro-Miniatures Corp. v.

9   Wendon Co., 771 F.2d 23, 27 (2d Cir. 1985) (upholding award of damages based on

10  all equipment involving part incorporating misappropriated trade secret, not just on

11  sales of the part itself because "all of the sales depended on Wendon's ability to

12  manufacture the equipment using the printed circuit slip rings"); Russo v. Ballard

13  Med. Prods., 550 F.3d 1004, 1016-17 (10th Cir. 2008) (noting that it is within the

14  discretion of the jury to determine the damages attributable to trade secret

15  misappropriation); C&F Packing Co. v. IBP, Inc., 224 F.3d 1296, 1304 (Fed. Cir.

16  2000) (allowing jury to determine whether to award 100% of a defendant's profits

17  for trade secret misappropriation under Illinois law).

18  **II.   MATTEL IS ENTITLED TO HAVE THE JURY CONSIDER BOTH**

19  **COPYRIGHT AND TRADE SECRETS CLAIMS**

20       Because Mattel's trade secrets claim is fundamentally distinct from its

21  copyright claim – it is premised on different property rights, has different liability

22  elements, and is subject to broad causation requirements – the limitations imposed

23  by the Ninth Circuit and this Court on Mattel's copyright claims do not in any way

24  impact Mattel's right to have the jury consider its trade secret claims.  That the two

25  claims may overlap to some degree does not affect the result.

26       "The general rule of compensatory damages bars double recovery for the

27  same wrong."  Theme Promotions, Inc. v. News Am. Mktg. FSI, 546 F.3d 991, 1005

28  (9th Cir. 2008) (finding damages for antitrust and tort claims did not arise from the

-15-

1    same wrong); <u>Computer Assocs.</u>, 982 F.2d at 720 (party "may not obtain a double
2    recovery where the damages for copyright infringement and trade secret
3    misappropriation are coextensive."). This rule does not, however, preclude a party
4    from presenting both trade secret and copyright claims to the jury.

5        This principle was demonstrated in <u>Computer Associates</u>. Plaintiff in that
6    case alleged that two computer programs created by defendant (OSCAR 3.4 and
7    OSCAR 3.5) infringed its copyright in a computer program called ADAPTER. By
8    the time of the appeal, defendant had conceded liability with respect to OSCAR 3.4,
9    so the only question was defendant's potential liability with respect to OSCAR 3.5.
10   982 F.2d at 701. After undertaking a detailed substantial similarity analysis,
11   including the filtration of protectable expression from non-protectable ideas, the
12   court affirmed the district court's denial of the copyright claim. <u>Id.</u> at 715. The
13   court then turned to the trade secret claim, and concluded that the plaintiff could
14   proceed with its trade secret claim relating to OSCAR 3.5 because "additional trade
15   secret damages may well flow from CA's creation of OSCAR 3.5." <u>Id.</u> at 720. "If
16   the district court finds that CA was injured by Altai's unlawful use of CA's trade
17   secrets in creating OSCAR 3.5, CA is entitled to an award of damage for trade
18   secret misappropriation, as well as consideration by the district court of CA's
19   request for injunctive relief on its trade secret claim." <u>Id.</u> at 720-21.

20       A similar analysis led the Seventh Circuit to uphold a jury award on both
21   copyright and trade secret claims in <u>McRoberts Software, Inc. v. Media 100, Inc.</u>,
22   329 F.3d 557 (7th Cir. 2003). Plaintiff MSI sued Media 100 for copyright
23   infringement, trade secret misappropriation, and breach of contract stemming from a
24   1995 licensing agreement between the parties for MSI's character generation
25   computer software program. The jury awarded MSI $1.2 million in actual damages
26   and $900,000 in lost profits on the copyright claim, $300,000 on the trade secret
27   claim, and $85,000 on the breach of contract claim. On post-trial motions, the trial
28   court vacated the trade secret damages award as duplicative of the copyright

-16-

infringement damages and against the weight of the evidence.  <u>Id.</u> at 563.  The Seventh Circuit reversed and upheld both awards.  <u>Id.</u> at 573.

The Seventh Circuit explained that "it is possible to recover damages based on more than one legal theory in the same suit, provided the plaintiff provides sufficient evidence of his injuries." <u>Id.</u> at 570.  The court noted that the measure of damages under each claim was distinct, and that the jury was so instructed.  <u>Id.</u> at 569-70.  Even though the same source code "represented both a trade secret and a protectible copyright," and the jury instructions informed the jury that the value of the source code was relevant to determining damages on both claims, "the value of the code is supposed to be measured differently in each instance" and it is therefore "neither surprising nor impermissibly duplicative for MSI to have presented numerous theories to the jury for calculating its losses." <u>Id.</u>  The Seventh Circuit agreed that the jury could have concluded that the damages MSI suffered "when Media 100 took its trade secrets in the Comet/CG source code and gave them to Venteon, a competing software development company" were "different from the loss that MSI suffered when Media 100 incorporated the translated source code into Wi[n]dows-compatible products and profited from its unauthorized distribution." <u>Id.</u> at 570.

As these cases demonstrate, Mattel is entitled to have a properly instructed jury consider both claims under the distinct rules that govern them.

## <u>Conclusion</u>

For the foregoing reasons, Mattel respectfully submits that this Court should instruct the jury on both copyright and trade secret claims, and allow the jury to decide each independently under the appropriate instructions.

1    DATED:  February 15, 2011            QUINN EMANUEL URQUHART &
2                                         SULLIVAN, LLP

3
4                                         By   /s/ John B. Quinn
                                               John B. Quinn
5                                              Attorneys for Mattel, Inc. and
6                                              Mattel de Mexico, S.A. de C.V.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-18-