QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de C.V., a Mexico business entity,<br><br>                    Plaintiff,<br><br>          vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>                    Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL'S RESPONSE TO MGA PARTIES' TRIAL BRIEF ON COPYRIGHT DAMAGES AND THE UNAVAILABILITY OF A GEORGIA-PACIFIC HYPOTHETICAL NEGOTIATION ROYALTY UNDER 17 U.S.C. § 504**<br><br>Hearing Date:       TBD<br>Time:                   TBD<br>Place:                  Courtroom 9D<br><br>Discovery Cut-off:    October 4, 2010<br>Pre-trial Conference: January 4, 2011<br>Trial:                        January 11. 2011 |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT ............................................................................................................ 2

I.     A HYPOTHETICAL NEGOTIATION ROYALTY IS A PROPER MEASURE OF ACTUAL DAMAGES UNDER SECTION 504(B) ............. 2

     A.     The Hypothetical Negotiation Approach for Copyright Infringement Damages Has Been Recognized in the Ninth Circuit ..................................................................................... 2

     B.     Evidence Of An Actual Or Offered License Is Not Required To Obtain A Hypothetical Negotiation Royalty As Actual Damages ........ 4

     C.     To The Extent The Court Considers Relevant The Panel's Questions From The Ninth Circuit Argument, They Further Support The Propriety Of A Royalty Remedy Here ............................ 5

II.    MGA'S FACTUAL ATTACK ON MATTEL'S DAMAGES EVIDENCE IS BASELESS ..................................................... 6

CONCLUSION.......................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Andreas v. Volkswagen of America*,
    336 F.3d 789 (8th Cir. 2003) ............................................................... 10

*Burns v. Imagine Films Entertainment, Inc.*,
    2001 WL 34059379 (W.D.N.Y. 2001) ..................................................... 11

*Business Trends Analysts, Inc. v. Freedonia Group, Inc.*,
    887 F.2d 399 (2d Cir. 1989) ................................................................... 11

*Christopher Phelps & Associates, LLC v. Galloway*,
    492 F.3d 532 (4th Cir. 2007) .................................................................... 7

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.* (*Frank Music I*),
    772 F.2d 505 (9th Cir. 1985) ..........................................................2, 3, 10

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.* (*Frank Music II*),
    886 F.2d 1545 (9th Cir. 1989) ............................................................... 11

*Garcia v. Coleman*,
    2009 WL 799393 (N.D. Cal. March 24, 2009) ....................................... 8

*Mackie v. Rieser*,
    296 F.3d 909 (9th Cir. 2002) ............................................................2, 3, 8

*In re MobiTV*,
    712 F. Supp. 2d 206 (S.D.N.Y. 2010) ...................................................3, 4

*On Davis v. The Gap, Inc.*,
    246 F.3d 152 (2nd Cir. 2001) ...........................................................3, 4, 5

*Oracle USA, Inc. v. SAP AG*,
    2010 WL 334446 (N.D. Cal. January 28, 2010) ..................................... 4

*Polar Bear Prods, Inc. v. Timex Corp.*,
    384 F.3d 700 (9th Cir. 2004) ......................................................3, 5, 8, 10

*Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*,
    562 F.2d 1157 (9th Cir. 1977) .............................................................2, 3

*Sinclair Refining Co. v. Jenkins Petroleum Process Co.*,
    289 U.S. 689 (1933) ................................................................................ 6

*Sony Corp. of America v. Universal City Studios, Inc.*,
    464 U.S. 417 (1986) ................................................................................ 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Splitfish AG v. Bannco Corp.*,
     727 F. Supp. 2d 461 (E.D.Va. 2010) ................................................................. 7

*St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc.*,
     2004 WL 2213562 (D.Del.) (D.Del. September 28, 2004) ................................. 7

*Sunset Lamp Corp. v. Alsy Corp.*,
     749 F. Supp. 520 (S.D. N.Y. 1990) ................................................................... 9

*Uniloc USA, Inc. v. Microsoft Corp.*,
     ___F.3d ___, 2011 WL 9738 (Fed. Cir. 2011) ................................................. 8

*Wall Data Inc. v. Los Angeles County Sheriff's Dep't*,
     447 F.3d 769 (9th Cir. 2006) ....................................................................2, 3, 5

## <u>Statutes</u>

17 U.S.C. § 504(b) ................................................................................................1, 2

# PRELIMINARY STATEMENT

MGA's trial brief misstates the law on actual damages under Section 504(b) of the Copyright Act, 17 U.S.C. § 504(b).  A hypothetical negotiation royalty is in fact such a well-established measure of copyright damages that it is expressly incorporated into the Ninth Circuit Model Instructions – a point ignored by MGA. Mattel is not aware of any case, nor has MGA cited any, that conditions recovery of such damages on evidence that the copyright owner has offered to license or has in fact licensed its work in the past.  Nor does MGA cite any case that has rejected the *Georgia-Pacific* factors as a basis to determine an appropriate award of actual damages for copyright infringement.

There also is no basis for MGA's attack on the relevant opinion of Mattel's expert Michael Wagner, which is supported by the evidence and governing legal standards.  Mattel's evidence of what a willing buyer would have paid a willing seller for use of the copyrighted works is a measure of actual damages; it does not circumvent the requirements to obtain indirect profits, which are a separate remedy to which Mattel is entitled.  *See* Ninth Circuit Pattern Instruction 17.24 (profits remedy is "[i]n addition to actual damages").  Indirect profits by definition are profits from the sales of non-infringing products, and Mattel will introduce more than sufficient evidence to establish the causal nexus between MGA's infringement and the MGA sales as to which indirect profits are sought.  The opinion of Mattel's marketing expert Ravi Dhar and MGA testimonial and documentary evidence provide an ample basis from which the jury could conclude that the Bratz empire was built on the Bratz drawings and other Bratz properties that Mattel owns. MGA's attempt to foreclose this argument in the guise of a royalty challenge should be rejected.

**ARGUMENT**

**I.   A HYPOTHETICAL NEGOTIATION ROYALTY IS A PROPER MEASURE OF ACTUAL DAMAGES UNDER SECTION 504(B)**

    **A.   The Hypothetical Negotiation Approach for Copyright Infringement Damages Has Been Recognized in the Ninth Circuit**

17 U.S.C. § 504(b) provides that "[t]he copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement . . . ." This includes "the extent to which the market value of a copyrighted work has been injured or destroyed by an infringement." *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002) (internal quotations omitted). "To determine the work's 'market value' at the time of the infringement," the Ninth Circuit has **"endorsed a hypothetical approach**: what a willing buyer *would have been* reasonably required to pay to a willing seller for [the owner's] work." *Id.* (emphasis added) (internal quotations omitted); *see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.* (*Frank Music I*), 772 F.2d 505, 512 (9th Cir. 1985) ("In this circuit, we have stated the test of market value as 'what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work.'" (quoting *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1174 (9th Cir. 1977)).

These principles are so well established that they are reflected in Ninth Circuit Model Instruction 17.23, which recognizes that actual damages for copyright infringement includes "the amount of money adequate to compensate the copyright owner for the reduction of the fair market value of the copyrighted work caused by the infringement" and that the "reduction of the fair market value of the copyrighted work is the amount a *willing buyer would have been reasonably required to a pay a willing seller* at the time of the infringement for the actual use made by the defendant of the plaintiff's work." (Emphasis added.) *See also Wall Data Inc. v. Los Angeles County Sheriff's Dep't*, 447 F.3d 769, 786 (9th Cir. 2006) (cited by

1  MGA) (endorsing jury instruction language as proper statement of law of damages
2  in copyright case).

3      There is no merit to MGA's claim that the actual damages holdings in *Mackie*
4  and *Frank Music I* should be ignored because the court also discussed the concept of
5  "indirect profits."  Br. at 3.  The panel in each case analyzed hypothetical royalties
6  as actual damages separately from its discussion of indirect profits and expressly
7  endorsed the availability of a hypothetical royalty as a measure of actual damages.
8  *Mackie*, 296 F.3d at 916-17; *Frank Music I*, 772 F.2d at 512-15.  Contrary to MGA's
9  argument, the Court in *Mackie* did not reject any award of a royalty; to the contrary,
10  it affirmed the district court's application of the "hypothetical negotiation
11  framework" to arrive at an actual damages award.  296 F.3d at 913, 917.

12      Nor is it relevant that *Frank Music I* and *Krofft* were decided under the 1909
13  Copyright Act, as the same royalty principles have been applied under the 1976 Act,
14  as *Mackie* and other more recent cases make clear.  *Mackie*, 296 F.3d at 917; *Wall*
15  *Data, supra*, 447 F.3d at 786; *Polar Bear Prods, Inc. v. Timex Corp.*, 384 F.3d 700,
16  708 (9th Cir. 2004); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 161-63 (2nd Cir.
17  2001)).  In light of this authority, there is no question that a hypothetical royalty
18  negotiation is a proper basis for copyright damages.

19      MGA argues that the *Georgia-Pacific* factors are not a proper way to
20  determine a hypothetical royalty under the Copyright Act.  But as this Court
21  inquired of MGA's counsel at a hearing earlier this year:  "How else is reasonable
22  royalty calculated, Counsel?"  Hearing Transcript, dated January 4, 2011 at 86:8-9.
23  While MGA asserts that no case has applied these factors under the Copyright Act,
24  it cites no case that has declined to approve the factors to measure a royalty to
25  determine actual copyright infringement damages.  The only case it cites, the
26  Southern District of New York's ruling in *In re MobiTV*, 712 F. Supp. 2d 206, 243
27  (S.D.N.Y. 2010), was not an actual damages case at all.  Rather, the case involves
28  the determination of a reasonable rate for a *compulsory* ASCAP license under a

-3-

2001 consent decree. *MobiTV*, 712 F. Supp. 2d at 228, 232. In this context, the court found the *Georgia-Pacific* factors to be inappropriate because of the rate court's role "to protect the market for licenses to play ASCAP music." *Id.* at 243. Nothing in the opinion addresses the factors that might govern a hypothetical royalty determination outside the unique rate setting context, and in fact the court distinguished rate setting from patent law, which "exists to protect an inventor's right to exploit the monopoly he is granted in his invention in order to induce more creative activity." *Id.* The same is true for copyright. *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 431 (1986) (recognizing a "statutory monopoly" protected by copyright law). Accordingly, *MobiTV* does not foreclose the use of the well-recognized *Georgia-Pacific* factors in a copyright infringement case.

## B.   Evidence Of An Actual Or Offered License Is Not Required To Obtain A Hypothetical Negotiation Royalty As Actual Damages

Unable to make a facial attack on the use of a hypothetical negotiation royalty, MGA seeks to challenge the remedy as applied, claiming no such damages can be recovered unless "there is evidence of the loss of an established license royalty." Br. at 1. But MGA does not cite a single case that says this, and there is indeed law to the contrary.

For example, in *Oracle USA, Inc. v. SAP AG*, 2010 WL 334446 (N.D. Cal. January 28, 2010), the court rejected the argument that the plaintiff was not entitled to actual damages in the form of a hypothetical license because plaintiff "never would have been willing to negotiate with its arch-rival SAP for the type of copyright license that [plaintiff] has put at issue here." Id. at *2. As that court explained, the hypothetical negotiation is "an objective, not a subjective, analysis," and the plaintiff was not "precluded from seeking license damages simply because it has never before licensed what [defendant] infringed." Id. at *3. The Second Circuit emphasized this in *On Davis* as well:

1   As the Goldstein treatise explains, whether the infringer might in fact
2   have negotiated with the owner or purchased at the owner's price is
3   irrelevant to the purpose of the test.  *See* II Goldstein, § 12.1.1.1, at
4   12:13.  The pertinence of the test is not premised on the fictive belief
5   that the copyright owner is worse off than if the infringer, instead of
6   infringing, had done nothing.  It proceeds on a different basis.  The
7   hypothesis of a negotiation between a willing buyer and a willing seller
8   simply seeks to determine the fair market value of a valuable right that
9   the infringer has illegally taken from the owner.  *The usefulness of the*
10  *test does not depend on whether the copyright infringer was in fact*
11  *himself willing to negotiate for a license.*

12  246 F.3d at 171-72 (emphasis added).

13      None of the authorities MGA cites supports its proposed evidentiary
14  limitation.  In both *Wall* and *Polar Bear*, the Ninth Circuit made clear that "it is not
15  improper for a jury to consider either a ***hypothetical*** lost license fee or the value of
16  the infringing use to the infringer to determine actual damages, provided the amount
17  is not based on undue speculation."  *Wall*, 447 F.3d 769, 786 (emphasis added)
18  (quoting *Polar Bear*, 384 F.3d at 709)).  Nowhere in these decisions does the court
19  suggest that the evidence of an offered or existing license was a prerequisite for an
20  award of hypothetical royalty damages.

21  **C.**   **To The Extent The Court Considers Relevant The Panel's**
22      **Questions From The Ninth Circuit Argument, They Further**
23      **Support The Propriety Of A Royalty Remedy Here**

24      Concerned that the Ninth Circuit panel's questions at oral argument suggest
25  that a royalty remedy is appropriate, MGA devotes a full page of its 5-page brief to
26  explaining why that is not so.  Mattel's entitlement to royalty-based copyright
27  damages is fully supported by the law and evidence already discussed.  But to the

28

1   extent the Court is inclined to draw inferences from the panel's questioning at oral
2   argument, it fully supports Mattel's position that a royalty is appropriate here.

3         Counsel for Mattel addressed, at that argument, the propriety of the
4   constructive trust remedy awarded by the trial court.  Chief Judge Kozinski asked
5   "[w]hy wasn't a royalty enough?"  Ninth Circuit Hearing Tr. at 21.  After Mattel's
6   counsel stated that the trial court found the remedy unworkable, Judge Trott asked
7   "[h]ow is it unworkable to order a royalty?"  *Id*. at 21.  The discussion continued for
8   several pages of the transcript.  The logical inference from the questioning is that the
9   panel believed that a royalty remedy would have been more appropriate than the
10  constructive trust imposed by the trial court.  Thus, if anything, the Ninth Circuit
11  questioning lends further support to the logic and availability of a reasonable royalty
12  measure of actual damages here.

13  **II.   MGA'S FACTUAL ATTACK ON MATTEL'S DAMAGES EVIDENCE**
14  **        IS BASELESS**

15        Mattel has shown that a hypothetical royalty is an appropriate measure of
16  actual damages under the Copyright Act, and that it need not show as a condition to
17  obtain a royalty that it would in fact have licensed the infringing works.  This alone
18  is sufficient to defeat the arguments raised in MGA's trial brief.  But MGA has also
19  questioned the methodology used by Mr. Wagner to arrive at his royalty opinion, as
20  well as the extent to which Mattel can establish any harm resulting from MGA's
21  infringement.  As explained below, MGA is wrong here as well.

22        First, Mr. Wagner properly employed the "book of wisdom" methodology in
23  calculating a royalty.   The "book of wisdom" is a convention that has been
24  recognized for decades whereby evidence "ex post" the date of the hypothetical
25  negotiation is considered for purposes of determining damages.  *Sinclair Refining*
26  *Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698 (1933).  Mr. Wagner's
27  application of this methodology has been subject to judicial scrutiny and has been
28  held consistent with established law.  *St. Clair Intellectual Property Consultants,*

1   *Inc. v. Canon, Inc.*, 2004 WL 2213562, *2 (D. Del. September 28, 2004) ("With

2   regard to [defendants'] first contention that the 'book of wisdom' methodology that

3   Mr. Wagner employs is contrary to established patent law, the Court concludes that

4   nothing in Mr. Wagner's methodology conflicts with the settled law in this area or

5   violates the requirements of Rule 702."). Given that a hypothetical negotiation

6   royalty is a proper measure of damages, there is no reason not to use the full

7   panoply of hypothetical negotiation tools in arriving at a reasonable royalty rate.

8       Second, there is no merit to MGA's argument that Mattel does not have "any

9   evidence of causation of harm at all." Br. at 3. To the extent this argument is based

10  on the claimed lack of evidence that Mattel would have licensed the infringing

11  works, and that apparently is the claimed basis (*see* MGA Br. at 2-3), it is misguided

12  for the simple reason that such evidence is not required to obtain a royalty, as

13  explained above. But if MGA is making a broader argument in the context of its

14  royalty brief, it fails as well. Deprivation of exclusive rights to the copyrighted

15  works is the harm specifically sought to be addressed by the Copyright Act. *See*

16  *Splitfish AG v. Bannco Corp.*, 727 F.Supp.2d 461, 467 (E.D. Va. 2010)

17  ("depriv[ation of] the copyright holder of intangible exclusive rights" in copyrighted

18  property is harm for purposes of copyright act); *Christopher Phelps & Associates,*

19  *LLC v. Galloway*, 492 F.3d 532, 544 (4th Cir. 2007) ("Irreparable injury often

20  derives from the nature of copyright violations, which deprive the copyright holder

21  of intangible exclusive rights."). MGA cannot and does not dispute that it caused

22  this deprivation to Mattel by its use of the Bratz drawings and other Bratz works to

23  which Mattel claims ownership to build its Bratz empire.

24      Third, MGA is also wrong when it contends that Mr. Wagner's royalty

25  opinion seeks to circumvent this Court's summary judgment ruling on infringement

26

27

28

and the causation requirement for an award of indirect profits (Br. 4).[1]   Mattel is entitled to indirect profits so long as it establishes "sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement." *Mackie*, 296 F.3d at 915-16.  *See also Garcia v. Coleman*, 2009 WL 799393 at *3 (N.D. Cal. March 24, 2009) ("Even in an indirect profits case, a copyright owner need only present evidence that the infringement at least partially caused the profits that the infringer generated as a result of the infringement.") (internal quotations omitted).  "Circumstantial evidence may establish the causal nexus."  *Id*. (internal citations omitted).  As the comment to the Ninth Circuit Model Civil Jury Instructions states, "[T]he 'fundamental standard' for whether a causal nexus is shown as required for an award of indirect profit is that the plaintiff 'must proffer some evidence…[that] the infringement at least partially caused the profits that the infringer generated as a result of the infringement.'"   Comment to Ninth Circuit Model Civil Jury Instructions 17.2C4 "Copyright—Damages—Defendant's Profits" (*quoting Polar Bear Productions, Inc.*, 384 F.3d at 711).

It matters not that the profits derive from products that do not themselves infringe, because the doctrine of indirect profits presumes that a copyright owner is entitled to profits even from non-infringing works so long as the requisite causal

---

[1]   This is not the first time MGA has tried to call into question Mattel's evidence of a causal nexus. MGA made this exact same argument in an unsuccessful motion to exclude Mr. Wagner's unjust enrichment calculation for copyright infringement prior to the first trial.  Defendants' Notice of Motion and Motion in Limine No. 7 to Exclude All References to and Use of Certain "Expert" Testimony of Michael J. Wagner, dated April 14, 2008 (Dkt. No. 3323) at 15-17. Mattel pointed out then, as it does here, that it will present evidence at trial from a variety of sources, including MGA's own witnesses, to establish the causal nexus between MGA's infringing sales and indirect profits. *Id*. at 18-21.  The Court rejected MGA's argument then and should do so again now.  *See* June 4, 2008 Pre-Trial Conference Order for Phase 1 Trial (Dkt. No 3917) at 18.

nexus is shown.[2]   Indirect profits are, by definition, profits derived other than from the sale of an infringing product itself.   *See*, *e.g.*, *Mackie,* 296 F.3d at 914 ("direct profits" are "those that are generated by selling an infringing product" while "indirect profits" are "revenue that has a more attenuated nexus to the infringement"); *Garcia,* 2009 WL 799393 at *3 ("Indirect profits cases typically involve a defendant using a copyrighted work to sell another product").   Moreover, indirect profits are not limited to sales of non-infringing products that are "bundled" with infringing products, but may be obtained on sales of any products that would not have been sold but for the infringement, including later-generation or follow-on products. *Cf. Sunset Lamp Corp. v. Alsy Corp.*, 749 F. Supp. 520 (S.D.N.Y. 1990) (in the context of lost sales analysis, court held that where an infringed product was intended as a "door opener" to spur sales of an entire line of non-infringed products, plaintiff may pursue actual damages for sales lost on the non-infringed products).

The evidence will establish that MGA's infringement of the copyrighted works was causally related to MGA sales beyond the infringing works themselves. Mattel's marketing expert, Dr. Ravi Dhar, states that the "success of the future waves of Bratz dolls, characters, and Bratz extensions (e.g., Bratz Petz, Lil Bratz)

---

[2]    Nor is Mattel improperly trying to use a concept akin to the patent "entire market value rule" to check the final sum of royalty.   For this reason, MGA's citation to *Uniloc USA, Inc. v. Microsoft Corp.*, __- F.3d ___, 2011 WL 9738 (Fed. Cir. 2011), is misplaced.   The Federal Circuit agreed with the district court that the entire market value rule – which "allows a patentee to assess damages based on the entire market value of the accused product" – was not properly used as a "check to determine whether" the expert's final royalty figure was reasonable.   This was expressly because the "entire market value rule" should be used only when "the patented feature" of the accused product "creates the 'basis for customer demand' or 'substantially create[s] the value of the component parts,'" given that damages may not be speculative. *Id.* at 22.   (internal citations omitted).   In contrast, not only is Mr. Wagner not using the "entire market value rule" to check the final sum of royalty, but, as Mattel has shown, Mattel's indirect profit damages are causally related to MGA's infringement.

are based on the successful positioning of the original Bratz dolls" and that the "success of other merchandise such as licensed goods are linked to sales of Bratz dolls as well as the Bratz positioning based on the doll's unique design or appearance"—testimony that MGA has not sought to exclude.[3]

MGA's own witnesses and documents also establish this causal nexus. For example, when MGA's branding expert, Dr. Erich Joachimsthaler, was asked "Do you think anyone would buy a Bratz bicycle who didn't also like Bratz dolls," he candidly responded "I doubt it, I—I would think that—that those things are related."[4] Similarly, MGA's Vice President of Licensing, Leah Marks, agreed that the sales of Bratz dolls drives Bratz licensing revenue.[5] Mr. Larian himself, referring to 2000 time period, stated that MGA "[was] going to launch a line of Bratz dolls inspired by Carter Bryant's drawings, and we were going to launch accessories and other products to go with it,"[6] and that MGA's hope was to "launch first the dolls to make sure they do well and then build something around it. That's what you hope to do every time you get in the toy business."[7] MGA documents show the same. The Bratz business plan specifically states that MGA can "effectively leverage the Bratz brand by introducing not only apparel, but

---

[3]   See Expert Report of Dr. Ravi Dhar, dated November 1, 2010 at para. 10 (Summary of Opinions).

[4]   Deposition Transcript of Erich Joachimsthaler, Vol. 2, dated December 10, 2010 at 482:23-483:1.

[5]   30(b)(6) Deposition of MGA Entertainment, Inc. (Marks) Vol. 20, dated September 27, 2010 at 5157:25-5158:5;  see also Affirmation of Lee Shiu Cheung, Managing Director, MGA HK, dated June 18, 2003 (stating that "The success of the BRATZ dolls ensured a lucrative business of supplying accessories to owners of the BRATZ dolls creating a steady stream of revenue" and that "Another source of revenue generated by the BRATZ dolls is income derived through merchandising rights by granting non-exclusive licenses to other companies worldwide") (MGA 0883923- 37 at para. 25);

[6]   Trial Tr. (Phase 1) at 6119:20-25 (Isaac Larian).

[7]   Id. at 6113:20- 6114:2.

accessories such as handbags, bookbags, footwear, eyewear, headwear, jewelry, watches and luggage, to name a few" and that "the only risk involved is that the Bratz dolls do not sell-thru at retail."[8]

Courts have upheld damages awards where the relationship between the indirect profits and the infringement was significantly more attenuated than it is in this case. *See Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.* (*Frank Music II*), 886 F.2d 1545 (9th Cir. 1989) (Las Vegas casino's infringing use of the plaintiff's music in one of ten acts in the casino's musical revue entitled the copyright holder to 9% of the casino's profits from the revue and 2% of the casino's hotel and gaming revenue); *Polar Bear*, 384 F.3d at 711-12 (watchmaker's unauthorized use of copyrighted film footage at trade shows entitled film production company to royalties from trade booth sales); *Andreas v. Volkswagen of America*, 336 F.3d 789 (8th Cir. 2003) (where television commercial for Audi automobiles infringed the plaintiff's artwork, the Eighth Circuit upheld damages based on indirect profits on car sales during the period the commercial aired, which the trial court had set aside as too speculative); *Burns v. Imagine Films Entertainment, Inc.*, 2001 WL 34059379, 4 (W.D.N.Y. August 23, 2001) (noting that "a copyright holder can recover profits from a non-infringing enterprise based on its 'enhanced good will or market recognition'" if not based on undue speculation); *Business Trends Analysts, Inc. v. Freedonia Group, Inc.*, 887 F.2d 399, 404 (2d Cir. 1989) (copyright plaintiff may recover indirect profits in form of "value received from an infringing product used to enhance commercial reputation" if it first demonstrates that "the amount of an award is based on a factual basis rather than undue speculation"). The evidence

---

[8]   MGA 4020020-4020042; *see also* MGA 0293869 (MGA document touting the success of Lil' Bratz, stating that "Lil' Bratz captures everything that has made its older counterpart successful"); MGA 0204156-0204175 (MGA consumer research report noting the "close linkage" of the Bratz Petz to the Bratz dolls and describing Bratz Petz as "a natural extension of the Dolls").

1  at trial will establish the required causal nexus between the infringement and the

2  products as to which indirect profits are sought, and Mattel is entitled to present it to

3  the jury.

4                                    <u>**Conclusion**</u>

5          For the foregoing reasons, Mattel respectfully requests that the Court allow

6  Mattel to present evidence supporting a royalty-based measure of actual damages

7  with respect to its copyright infringement claim.

8

9  DATED: February 15, 2011          QUINN EMANUEL URQUHART &
                                     SULLIVAN, LLP
10

11

12                                   By   /s/ John B. Quinn
                                         John B. Quinn
13                                       Attorneys for Mattel, Inc. and
                                         Mattel de Mexico, S.A. de C.V.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28