QUINN EMANUEL URQUHART & SULLIVAN, LLP
   John B. Quinn (Bar No. 090378)
   johnquinn@quinnemanuel.com
   William C. Price (Bar No. 108542)
   (williamprice@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
   (michaelzeller@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc., and Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> vs. <br><br> MGA ENTERTAINMENT, INC., a California corporation, <br><br> Defendant. <br><br>_____<br><br> AND CONSOLIDATED ACTIONS <br>_____ | CASE NO. CV 04-9049 DOC (RNBx) Consolidated with Case Nos. CV 04-09059 and CV 05-02727 <br><br> MATTEL, INC.'S OPPOSITION TO THE MGA PARTIES' MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT RULING REGARDING COPYRIGHT PREEMPTION OF THE BRATZ DRAWINGS AND SCULPTS TRADE SECRETS OR, IN THE ALTERNATIVE, FOR CERTIFICATION OF THE PREEMPTION RULING FOR INTERLOCUTORY APPEAL <br><br> Date:   TBD <br> Time:   TBD <br> Place:  Courtroom 9D <br><br> **Phase 2** <br> Pre-trial Conference: January 4, 2011 <br> Trial Date: January 11, 2011 |

00505.07975/3966310.7

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ..................................................................... 1

II.     ARGUMENT .............................................................................................. 3

     A.      MGA Has Not Shown a Basis for Reconsideration ................................ 3

     B.      MGA Offers No Basis to Undercut the Court's Original Ruling ........... 6

     C.      The Doctrine of Conflict Preemption Does Not Apply ....................... 15

     D.      There Is No Basis for Certification ....................................................... 17

     E.      There Is No Interplay Between the Arguments in MGA's Motion for Reconsideration and Its Jury Instruction on Trade Secret Remedies ................................................................................................. 18

CONCLUSION .................................................................................................. 19

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>Cases</u>

4
5
Aagard v. Palomar Builders, Inc.,
   344 F. Supp. 2d 1211 (E.D. Cal. 2004) ................................................................ 13

6
Altera Corp. v. Clear Logic, Inc.,
   424 F.3d 1079 (9th Cir. 2005) ........................................................................... 6

7
8
APCC Servs., Inc. v. AT&T Corp.,
   297 F. Supp. 2d 101 (D.D.C. 2003) .................................................................. 18

9
Atrium Group de Ediciones y Publicaciones, S.L. v. Harry N. Abrams, Inc.,
   565 F. Supp. 2d 505 (S.D.N.Y. 2008) ............................................................... 14

10
11
Caterpillar, Inc. v. Lewis,
   519 U.S. 61 (1996) .......................................................................................... 17

12
Cavalier v. Jim Henson Co., Inc.,
   2000 WL 33968969 (C.D. Cal. Apr. 3, 2000) ............................................. 7, 8

13
14
In re Cement Antitrust Litig.,
   673 F.2d 1020 (9th Cir. 1982) ......................................................................... 17

15
Compco Corp. v. Day-Brite Lighting, Inc.,
   376 U.S. 234 (1964) ........................................................................................ 13

16
17
Cosmetic Ideas, Inc. v. IAC/Interactivecorp.,
   606 F.3d 612 (9th Cir.) ..................................................................................... 8

18
19
DSC Communications Corp. v. Pulse Communications, Inc.,
   170 F.3d 1354 (Fed. Cir. 1999) ....................................................................... 11

20
Dastar Corp. v. Twentieth Century Fox Film Corp.,
   539 U.S. 23 (2003) .......................................................................................... 16

21
22
Data General Corp. v. Grumman Systems Support Corp.,
   795 F. Supp. 501 (D. Mass. 1992) .................................................................... 9

23
24
Del Madera Properties v. Rhodes and Gardner, Inc.,
   820 F. Supp. 2d 973 (9th Cir. 1987) ................................................................ 12

25
Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.,
   307 F.3d 197 (3d Cir. 2002) ............................................................................ 11

26
27
Ehat v. Tanner,
   780 F.2d 876 (10th Cir. 1985) ......................................................................... 12

28

Entous v. Viacom International, Inc.,
    151 F. Supp. 2d 1150 (C.D. Cal. 2001)................................................ 12

Environmental Prot. Info. Ctr. v. Pacific Lumber Co.,
    2004 WL 838160 (N.D. Cal. Apr. 19, 2004)........................................ 18

Feltner v. Columbia Pictures Television, Inc.,
    523 U.S. 340 (1998) ................................................................................. 8

Firoozye v. Earthlink Network,
    153 F. Supp. 2d 1115 (N.D. Cal. 2001)................................. 7, 8, 11, 18

Fischer v. Viacom International, Inc.,
    115 F. Supp. 2d 535 (D. Md. 2000) ..................................................... 12

Gates Rubber Co. v. Bando Chemical Industries, Ltd.,
    9 F.3d 823 (10th Cir. 1993) ..................................................................... 9

Goldstein v. California,
    412 U.S. 546 (1973) ............................................................................... 16

Harper & Row Publishers v. Nation Enterprises,
    471 U.S. 539 (1985) ............................................................................... 14

Idema v. Dreamworks, Inc.,
    162 F. Supp. 2d 1129 (C.D. Cal. 2001)............................................ 9, 10

James v. Price Stern Sloan, Inc.,
    283 F.3d 1064 (9th Cir. 2002) ............................................................... 17

Jones v. Rath Packing Co.,
    430 U.S. 519 (1977) ............................................................................... 16

KEMA, Inc. v. Koperwhats,
    658 F. Supp. 2d 1022 (N.D. Cal. 2009)................................................ 10

Kewanee Oil Co. v. Bicron Corp.,
    416 U.S. 470 (1974) ................................................................. 15, 16, 18

Laws v. Sony Music Entertainment, Inc.,
    448 F.3d 1134 (9th Cir. 2006) ................................................................. 6

Montz v. Pilgrim Films & Television, Inc.,
    606 F.3d 1153 (9th Cir. 2010) ............................................................. 5, 6

Motorola, Inc. v. J.B. Rodgers Mechanical Contractors,
    215 F.R.D. 581 (D. Ariz. 2003)............................................................... 5

Motown Record Corp. v. George A. Hormel & Co.,
    657 F. Supp. 1236 (C.D. Cal. 1987)...................................................... 13

New York Times Co., Inc. v. Tasini,
    533 U.S. 483 (2001) ..................................................................... 8

Orson, Inc. v. Miramax Film Corp.,
    189 F.3d 377 (3rd Cir. 1999) ..................................................... 17

Rojo v. Bonnheim,
    2009 WL 2382420 (C.D. Cal. July 30, 2009) ............................ 4

S.O.S., Inc. v. Payday, Inc.,
    886 F.2d 1081 (9th Cir. 1989) ....................................... 7, 15, 18

Sears, Roebuck & Co. v. Stiffel Co.,
    376 U.S. 225 (1964) .................................................................. 16

Selby v. New Line Cinema Corp.,
    96 F. Supp. 2d 1053 (C.D. Cal. 2000) ...................................... 12

Shurance v. Planning Control Int'l, Inc.,
    839 F.2d 1347 (9th Cir. 1988) ................................................... 17

Stewart v. Wachowski,
    574 F. Supp. 2d 1074 (C.D. Cal. 2005) ...................................... 4

Swoopes v. Doctors Med. Center,
    2007 WL 1518074 (N.D. Cal. May 21, 2007) ........................... 5

Technicon Medical Information Systems Corp. v. Green Bay Packaging Inc.,
    687 F.2d 1032 (7th Cir. 1982) ................................................... 15

U.S. ex rel. Holder v. Special Devices, Inc.,
    296 F. Supp. 2d 1167 (C.D. Cal. 2003) ...................................... 4

United Fabrics Intern., Inc. v. C&J Wear, Inc.,
    2011 WL 222996 (9th Cir. 2011) ............................................... 8

United States v. Woodbury,
    263 F.2d 784 (9th Cir. 1959) ..................................................... 17

Welch v. Sisto,
    2008 WL 4455842 (E.D. Cal. Oct. 3, 2008) ............................... 5

White House/Black Market, Inc. v. Cache Inc.,
    2010 WL 2985232 (S.D.N.Y. July 27, 2010).............................. 9

Worth v. Universal Pictures, Inc.,
    5 F. Supp. 2d 816 (C.D. Cal. 1997) .......................................... 13

X17, Inc. v. Lavandeira,
    563 F. Supp. 2d 1102 (C.D. Cal. 2007) ...................................... 6

1

## **Statutes**

2    17 U.S.C. § 102...........................................................................................................6

3    17 U.S.C. § 103...........................................................................................................6

4    17 U.S.C. § 106...........................................................................................................6

5    17 U.S.C. § 205(c).......................................................................................................8

6    17 U.S.C. § 301(a)......................................................................................................6

7    17 U.S.C. § 504(c).......................................................................................................8

8    28 U.S.C. § 1292(b)..................................................................................................17

9    Cal. Civ. Code § 3426.1(b)(2)(B)(iii).....................................................................11

10   Local Rule 7-18 ..............................................................................................1, 3, 4, 6

11

## **Other Authorities**

13   1 Nimmer on Copyright § 1.01[B][1][h] 1-39-1-40.............................................8, 18

14   1 Nimmer on Copyright § 1.01[B][1][h] 1-53.......................................................7, 8

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.      **PRELIMINARY STATEMENT**

MGA's motion for reconsideration re-argues this Court's ruling on copyright preemption, without citing any new cases that cast doubt on the Court's decision or the well established law on which it was based.  The Court's ruling was and remains the correct application of preemption law.  MGA claims it can satisfy Local Rule 7-18's requirements for reconsideration by asserting that the very order it seeks to have reconsidered is the "new law" warranting reconsideration.  Motion at 1.  A ruling obviously cannot qualify as its own "new law" for reconsideration purposes; that would allow reconsideration of every ruling, period.  The supposed "new fact" MGA cites – the expert report of Michael Wagner – is not "new."  Mattel served this report on November 1, 2010, before MGA filed its reply brief in support of the summary judgment motion and obviously before this Court issued the ruling MGA now asks it to reconsider.  In any event, the only "fact" cited by MGA – the potential monetary remedy Mattel seeks on its trade secret claim – has nothing to do with whether the Court properly applied copyright preemption principles.  Lacking anything "new," MGA's motion merely re-hashes arguments it made on summary judgment, which is an inappropriate basis for reconsideration.  The motion should be denied on that ground alone.

Even if there were a proper basis for reconsideration under the standards set forth in Local Rule 7-18, which there plainly is not, the Court should reaffirm its original decision and allow the trade secret claim to proceed.  MGA offers no new authority that would undercut the basis for the Court's preemption ruling.  Ninth Circuit law is clear: federal copyright law does not preempt California law trade secret misappropriation claims because they require proof of the "extra element" of secrecy.  That it was Bryant, and not MGA, who owed the duty of secrecy is of no import.  The *claim* against MGA alleges that MGA wrongfully received and used Mattel trade secrets through Bryant and benefited from it.  Not surprisingly, MGA fails to cite *any* authority holding that an express, direct contractual obligation on

-1-

1  the part of the defendant to maintain the secrecy of plaintiff's trade secrets is a

2  condition precedent to avoiding copyright preemption.  MGA similarly cites no

3  authority finding that trade secret claims directly conflict with federal statutes so as

4  to be subject to principles of conflict preemption; this alternative argument should

5  be rejected as inconsistent with principles articulated in Supreme Court authority

6  and with Congressional intent.

7      MGA's request for certification and a stay pending appeal is also baseless.

8  MGA claims the issues the Court addressed are novel, but in truth the only thing that

9  is novel is MGA's preemption argument.  MGA cites one factually distinguishable

10 case holding a trade secret claim preempted by copyright.  And certainly no court

11 has held what MGA urges here—that every other claim that relates to the taking of

12 information is preempted by CUTSA, and that CUTSA is then preempted by

13 copyright, leaving copyright law as the only protection for trade secrets.  There have

14 been dozens of issues in this case raising more novel questions than this one, and

15 neither party has sought certification precisely because, as this Court (and, recently,

16 the Ninth Circuit) has recognized, this case should not be litigated piecemeal.

17     In response to the question posed by the Court's February 9, 2011 Minute

18 Order, there is no "interplay" between MGA's motion for reconsideration and its

19 proposed jury instruction seeking to limit trade secret monetary remedies.  The

20 preemption ruling is correct and should be reaffirmed.  The question of what

21 remedies Mattel may recover on the trade secret claim is entirely separate.  As

22 Mattel will explain in a separate brief to be filed shortly, disclosure of trade secrets

23 by a defendant does not allow the defendant to cut-off its own monetary liability.

24 Even disclosure by a plaintiff or a third party does not necessarily impact the extent

25 to which a wrongdoer must return unjust profits from its trade secret

26 misappropriation.

27     The real motivation for MGA's motion is its assertion that permitting the

28 trade secret claim to proceed effectively nullifies the Court's limitations on the

copyright claim.  Even if that were a valid concern (and Mattel strongly disputes that it is, given the distinct nature of the claims), the answer is *not* to permit reconsideration where the standards are not met, or to bar the trade secret claim under an erroneous application of copyright preemption principles.  Rather, as explained in the trial brief Mattel filed yesterday, the answer is to allow the jury to consider the trade secret claim under proper instructions, including those allowing MGA to attempt to meet its burden of showing that its profits are not all attributable to its trade secret misappropriation.  If, as MGA contends, it can convince the jury that its profits were attributable to its own independent contributions, it can ask the jury to award less than its full profits as unjust enrichment.  But all of this is for the jury to decide.  And the basis of the jury's decision can be made clear through a properly constructed verdict form that will be subject to subsequent review by this Court and the Ninth Circuit.  There is no basis to reconsider a legal ruling that was and remains completely correct under governing law.

The motion should be denied in its entirety.

## II. ARGUMENT

### A. MGA Has Not Shown a Basis for Reconsideration

MGA has previously recognized that "[r]econsideration of a motion is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources' and 'should not be granted, absent highly unusual circumstances.'"[1]  Under Local Rule 7-18, a motion for reconsideration is only proper where the moving party establishes:

---

[1]   MGA Parties' Opposition to Mattel, Inc.'s 3/19/09 Motion for an Order Compelling Production of Communications Purportedly Made in Furtherance of Crimes and Frauds and as to which MGA Has Allegedly Waived Attorney-Client Privilege, dated March 25, 2009, Dkt. 5803 at 11 n.3.

1    (1) a "material difference in fact or law from that presented to the Court

2 before such decision that in the exercise of reasonable diligence could not have been

3 known to the party moving for reconsideration at the time of such decision";

4    (2) "the emergence of new material facts or a change of law occurring after

5 the time of such decision"; or

6    (3) "a manifest showing of a failure to consider material facts presented to the

7 Court before such decision." Local Rule 7-18.

8    A reconsideration motion that does not meet the above requirements should

9 be denied. See, e.g., Rojo v. Bonnheim, 2009 WL 2382420, at *1 (C.D. Cal. July

10 30, 2009) (denying motion for reconsideration where motion "simply reasserts the

11 same arguments raised" and "previously rejected by the Court"); Stewart v.

12 Wachowski, 574 F. Supp. 2d 1074, 1122 (C.D. Cal. 2005) (denying motion for

13 reconsideration where movant did not identify a "material factual or legal difference

14 that she could not have discovered with due diligence prior to the date the court

15 decided the motions for summary judgment"); U.S. ex rel. Holder v. Special

16 Devices, Inc., 296 F. Supp. 2d 1167, 1168-69 (C.D. Cal. 2003) (similar).

17    In its section entitled "New Facts and Law Warranting Reconsideration,"

18 (Motion at 2-3), MGA contends that this Court's summary judgment ruling itself is

19 somehow either a new fact or new law that satisfies the requirements of Local Rule

20 7-18. But that cannot be right.  Otherwise, every court ruling would automatically

21 create a right to reconsider, and courts would be inundated with reconsideration

22 motions based solely on the courts' own rejection of arguments made by the losing

23 party. Local Rule 7-18 makes clear that "[n]o motion for reconsideration shall in

24

25

26

27

28

1  any manner repeat any oral or written argument made in support of . . . the original

2  motion."[2]  Yet that is precisely what MGA has done here.[3]

3      The only other purported basis identified by MGA for reconsideration is Mr.

4  Wagner's damages analysis.  Mot. at 3.  But MGA does not even mention Wagner's

5  report in the remainder of its papers, or explain how it warrants reconsideration.

6  More importantly, though, Mr. Wagner's report was served not on "December 1,

7  2010," as MGA claims, but on November 1, 2010.  See Report of Michael J.

8  Wagner, dated November 1, 2010.  This was before MGA served its summary

9  judgment reply, and long before this Court issued its ruling.[4]  MGA does not explain

10  why it was precluded from presenting arguments relating to Mr. Wagner's report

11  before the Court ruled.

12      Beyond these two purported grounds, MGA offers nothing to satisfy

13  reconsideration requirements.  Significantly, MGA does not offer any post-ruling

14  Ninth Circuit or other case law addressing trade secret preemption that would cast

15  doubt on the authorities relied upon by the Court.  The Montz case, 9th Cir. Docket

16

17      [2]  See also Welch v. Sisto, 2008 WL 4455842, at *1 (E.D. Cal. Oct. 3, 2008) ("A
18  motion for reconsideration is not intended to be used to reiterate arguments, facts
   and law already presented to the court."); Swoopes v. Doctors Med. Center, 2007
19  WL 1518074, at *1 (N.D. Cal. May 21, 2007) ("A motion for reconsideration is not
   a vehicle permitting the unsuccessful party to reiterate arguments previously
20  presented."); Motorola, Inc. v. J.B. Rodgers Mechanical Contractors, 215 F.R.D.
   581, 586 (D. Ariz. 2003) (noting that "[a]lmost all of the local rules prohibit motions
21  for reconsideration based on arguments already presented to and rejected by the
   court").

22      [3]  Compare Reconsideration Motion with MGA's Motion for Summary
23  Judgment in 05-2727 Action, dated October 12, 2010 ("MSJ Mot."), Dkt. 9084 at
   65-66 and MGA's Reply in Support of Motion for Summary Judgment in 05-2727
24  Action, dated November 8, 2010 ("MSJ Reply"), Dkt. 9250 at 2-3, 6-7.

25      [4]  Mr. Wagner served a corrected report on November 12, but this report
   consisted primarily of cosmetic changes and calculation corrections.  Mr. Wagner
26  served a Rebuttal Report on December 1, 2010, but that report did not address
   Mattel's damages, but, rather, MGA's; it is clearly not the report to which MGA
27  refers.

28

1  No. 08-56954, which currently is awaiting *en banc* decision following argument last
2  December, does not involve a trade secret claim, but rather addresses whether the
3  trial court properly applied copyright preemption principles at the pleading stage to
4  dismiss a state law claim for breach of an implied-in-fact contract with respect to a
5  concept for a television series.  Montz v. Pilgrim Films & Television, Inc., 606 F.3d
6  1153 (9th Cir. 2010).  Moreover, the case was ordered heard *en banc* on September
7  30, 2010, before briefing and argument on the summary judgment motions.

8       MGA's reconsideration motion does satisfy Local Rule 7-18 and should be
9  denied on that basis alone.

10          **B.      MGA Offers No Basis to Undercut the Court's Original Ruling**

11       Without offering any new Ninth Circuit or other arguably relevant authority,
12  MGA essentially contends that the Court just got it wrong in its preemption ruling.
13  But it is MGA that is mistaken here.

14       The Ninth Circuit employs a two-part test to determine whether a claim is
15  preempted by the Copyright Act.  Laws v. Sony Music Entertainment, Inc., 448 F.3d
16  1134 (9th Cir. 2006).  First, the content of the protected right must fall within the
17  subject matter of copyright as described in 17 U.S.C. §§ 102 and 103.  Id. at 1137.
18  Second, the right asserted under state law must be "equivalent to the rights
19  contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright
20  holders."  Id. at 1138.  A state-law claim is preempted under § 301(a) only if both
21  conditions are satisfied.  Id.

22       The "extra element" test applied in the Ninth Circuit provides that a state law
23  claim is not preempted if it includes an extra element not involved in a federal
24  copyright claim.  See Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1089-90 (9th
25  Cir. 2005) ("If a state law claim includes an 'extra element' that makes the right
26  asserted qualitatively different from those protected under the Copyright Act, the
27  state law claim is not preempted by the Copyright Act."); X17, Inc. v. Lavandeira,
28  563 F. Supp. 2d 1102, 1105 (C.D. Cal. 2007) ("[I]f other elements are required . . .

1    to constitute a state created cause of action, then the right does not lie 'within the

2    general scope of copyright,' and there is no preemption.").

3         It is black letter law that "[a]ctions for disclosure and exploitation of trade

4    secrets require a status of secrecy, not required for copyright, and hence, are not

5    preempted.  This conclusion follows whether or not the material subject to the trade

6    secret is itself copyrightable."  See generally Nimmer on Copyright, § 1.01[B][1][h]

7    1-53.  In contrast, where a state trade secret statute does not require secrecy, "the

8    element distinguishing the state right from copyright would appear to evaporate,

9    causing the state right thereby to be preempted."  Id.  California courts uniformly

10   have held that actions for misappropriation under the California Uniform Trade

11   Secrets Act ("CUTSA") have the requisite "extra element" of secrecy and are thus

12   not preempted by copyright laws.  See Firoozye v. Earthlink Network, 153 F. Supp.

13   2d 1115, 1131 (N.D. Cal. 2001) (claim for trade secret misappropriation contains an

14   extra element "that makes the claim qualitatively different from a copyright

15   infringement action"); Cavalier v. Jim Henson Co., Inc., 2000 WL 33968969, *3

16   (C.D. Cal. Apr. 3, 2000) (claim for misappropriation of trade secrets was not

17   preempted by the Copyright Act because "[a]ctions for disclosure and exploitation

18   of trade secrets require a status of secrecy, not required for copyright").

19        In its preemption ruling, the Court properly applied this framework.  It ruled

20   that Mattel's trade secrets claim was not preempted both because it was based on

21   property such as "the Bratz concept" that is not subject to protection under copyright

22   law, and because the claim requires the extra element of secrecy, which is not

23   required under copyright law.  Order at 72-73.  The Court's ruling cited the relevant

24   sections of Nimmer on Copyright, and S.O.S. and Firoozye.  Id.  As the Court

25   recently noted, the Ninth Circuit's conclusion that

26        a 'narrower' constructive trust may be imposed on the basis of a

27        fact-finder's determination that Bryant assigned his idea for the

28        name 'Bratz' to Mattel . . . undercuts MGA's argument that the

1     Copyright Act preempts claims based upon the 'wrongful

2     acquisition' of an idea, because 'wrongful acquisition' is a

3     prerequisite to the entry of a constructive trust.

4  Court Minutes for February 12, 2011 Informal Hearing.

5    It is not until page 13 of its motion that MGA endeavors to explain why the

6 authority cited by the Court was not properly relied upon.  When it finally does so,

7 its only argument is that the cases involved circumstances where the defendant

8 breached an express contract with the plaintiff to maintain the secrecy of the

9 information at issue.  Motion at 13-14.[5]  But nothing in these cases states that an

10 express contract between the plaintiff and the defendant is required to avoid

11 preemption.  Rather, as discussed above, the cases all support the Court's conclusion

12 that trade secret claims are not preempted because they require the extra element of

13 secrecy.  See e.g., Firoozye, 153 F. Supp. 2d at 1131; Cavalier, 2000 WL 33968969,

14 *3.  Moreover, it would be illogical to allow trade secret claims against defendants

15

---

16   [5]  MGA states in a footnote that the Nimmer treatise is not "controlling

17 authority" (Motion at 14 n.7) but of course the treatise has been cited with approval on countless occasions by the Supreme Court and the Ninth Circuit, as well as by

18 MGA itself.  See, e.g., New York Times Co., Inc. v. Tasini, 533 U.S. 483, 494-95, (2001) (citing to , inter alia, Nimmer for proposition that absent a specific contract,

19 a court might find that an author had tacitly transferred the entire copyright to a publisher, in turn deemed to hold the copyright in "trust" for the author's benefit);

20 Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 345 (1998) (citing to, inter alia, Nimmer for the proposition that Courts of Appeals have unanimously

21 held that § 504(c) is not susceptible of an interpretation that would avoid the Seventh Amendment question); United Fabrics Intern., Inc. v. C&J Wear, Inc., ---

22 F.3d ----, 2011 WL 222996, *2 (9th Cir. 2011) (citing to Nimmer to support proposition that copyright claimant is presumed to own a valid copyright and the

23 facts stated therein, including the chain of title in the source artwork, are entitled to the presumption of truth); Cosmetic Ideas, Inc. v. IAC/Interactivecorp., 606 F.3d

24 612, 620 (9th Cir.) (citing approvingly to Nimmer as "the leading treatise on copyright"); MGA Opposition to Mattel's Motion for Partial Summary Judgment,

25 Dkt. 9219 at 82 (citing to Nimmer for the proposition that for a subsequent transferee to defeat prior transfers it must satisfy Section 205(c)); MGA Parties'

26 Opposition To Mattel, Inc.'s Daubert Motion No. 5 To Exclude Testimony By Glenn V. Vilppu, Dkt. 9434 at 8 (prefacing reliance on Nimmer's treatise by "[a]s

27 explained by Professor Nimmer, author of the leading treatise on copyright law").

28

1  who had express contracts with the plaintiff, but to preempt such claims where the

2  defendant acquired the trade secret from a third party knowing of that party's

3  contractual obligations to plaintiff to maintain secrecy.

4          Contrary to MGA's argument, courts routinely have held that claims for trade

5  secret misappropriation survive copyright preemption in situations where, as here, a

6  defendant acquires trade secrets from a third party that is under a contractual

7  obligation to plaintiff to maintain secrecy.  For example, in White House/Black

8  Market, Inc. v. Cache Inc., Case No. 10 Civ. 5266(PGG), 2010 WL 2985232, at *2-

9  4 (S.D.N.Y. July 27, 2010), the district court found that plaintiff's trade secret

10  misappropriation claim was not preempted where the claim was predicated on

11  defendant's acquisition of plaintiff's trade secrets from plaintiff's former employees

12  who had contractual obligations and fiduciary duties to maintain secrecy.  Although

13  no one claimed the defendant company owed a direct contractual obligation to

14  plaintiff, that did not impact the preemption analysis.  Rather, the court found that

15  plaintiff's trade secret misappropriation claim contained the "extra element"

16  necessary to avoid copyright preemption—namely, the improper disclosure to

17  defendants by its former employees in breach of their written confidentiality

18  agreements and fiduciary duties.  Id. at *4.[6]

19          The sole case MGA cites in support of its argument, Idema v. Dreamworks,

20  Inc., 162 F. Supp. 2d 1129, 1194-95 (C.D. Cal. 2001), does not hold otherwise.

21

22    [6]  See also Data General Corp. v. Grumman Systems Support Corp., 795 F.
Supp. 501, 507 (D. Mass. 1992) (Copyright Act did not preempt plaintiff's trade
23  secret claim where the gravamen of the claim was that defendant knowingly
benefited from plaintiff's trade secret information that was wrongfully retained by
24  plaintiff's former employees in violation of their duties of confidentiality); Gates
Rubber Co. v. Bando Chemical Industries, Ltd., 9 F.3d 823, 848 (10th Cir. 1993)
25  (claim for trade secret misappropriation was not preempted by copyright where the
crux of plaintiff's claim was that defendant knowingly obtained plaintiff's trade
26  secret information from plaintiff's former employees in violation of their
confidentiality agreements and that defendant's subsequent use of the trade secrets
27  constituted a misappropriation).

28

That case makes no mention of any supposed requirement of a "direct duty of secrecy and breach" (Motion at 9) on the part of a defendant in a trade secret case. See Idema, 162 F. Supp. 2d at 1194-95 (finding that claim under North Carolina Trade Secrets Act was preempted by copyright where the only allegation was that defendants used information in confidential materials; there were no allegations that any defendant or third party owed the owner of the materials a duty to maintain their secrecy; and there were no allegations "that the information in the materials was a 'trade secret' in the sense that mere *disclosure* would undermine its value" or that any defendant made such a disclosure).

Here, the gravamen of Mattel's Bratz trade secret claim is that Carter Bryant misappropriated and misused Mattel property and Mattel resources for the benefit of MGA, including the concept, design and name of Bratz.  Mattel has alleged that Bryant's theft of Mattel proprietary materials was in violation of his employment agreement with Mattel, which prohibited the use or disclosure of Mattel's proprietary information.[7]  Mattel has also alleged that MGA received and used the stolen Bratz property and trade secrets, and that MGA's acquisition and use of the stolen Bratz property and trade secrets from Bryant was with knowledge that Bryant had a duty to Mattel to maintain its secrecy and that he breached that duty by disclosing the Bratz trade secrets to MGA.  Mattel's Bratz trade secret misappropriation claim against MGA is predicated on MGA's acquisition and use of

---

[7]  MGA argues that because the Mattel contract giving rise to Bryant's secrecy obligations was supposedly ambiguous and thus not a reasonable effort to maintain the secrecy of the Bratz trade secrets, Mattel cannot show that MGA knew or should have known that the information was disclosed, acquired, used under circumstances giving rise to a secrecy obligation on Bryant's part. Mot. at 11-12. These contentions address the merits of Mattel's Bratz trade secret claim not whether Mattel's claim is preempted by the Copyright Act.  See KEMA, Inc. v. Koperwhats, 658 F. Supp. 2d 1022, 1030 n.7 (N.D. Cal. 2009) (noting that as long as a trade secret misappropriation plaintiff adequately alleges a trade secret, his claim is not preempted by copyright regardless of whether plaintiff can in fact later prove that the alleged trade secret meets the statutory definition of trade secrets).

1   the stolen trade secrets obtained from Bryant at a time when MGA knew or had

2   reason to know that Bryant owed a duty to Mattel to maintain their secrecy and limit

3   their use.  See Cal. Civ. Code § 3426.1(b)(2)(B)(iii) (defining misappropriation as

4   "[d]isclosure or use of a trade secret of another without express or implied consent

5   by a person who" "[a]t the time of disclosure or use, knew or had reason to know

6   that his or her knowledge of the trade secret was" "derived from or through a person

7   who owed a duty to the person seeking relief to maintain its secrecy or limit its

8   use").

9           Bryant's duty to Mattel to maintain the secrecy of the Bratz trade secrets

10  supplies the requisite "extra element" necessary to avoid copyright preemption.  See

11  Firoozye, 153 F. Supp. 2d at 1131 (a "breach of a duty of trust or confidentiality

12  comprises the core of actions for trade secret misappropriation, and 'supplies the

13  'extra element' that qualitatively distinguishes such trade secret causes of action

14  from claims for copyright infringement that are based solely upon copying.'")

15  (citations omitted); see also DSC Communications Corp. v. Pulse Communications,

16  Inc., 170 F.3d 1354, 1365 (Fed. Cir. 1999) (claim for trade secret misappropriation

17  under Virginia trade secret law, which is analogous to CUTSA, was not preempted

18  by copyright where "the additional element of misappropriation regulates conduct

19  qualitatively different from that regulated by federal copyright law").  Contrary to

20  MGA's argument (Mot. at 6-7), the rights asserted by Mattel in its Bratz trade secret

21  claim are thus qualitatively different from the rights protected by Section 106 of the

22  Copyright Act.  See Dun & Bradstreet Software Services, Inc. v. Grace Consulting,

23  Inc. 307 F.3d 197, 218 (3d Cir. 2002) ("A state law misappropriation of trade

24  secrets claim that requires a proof of breach of duty of trust or confidence to the

25  plaintiff through the improper disclosure of confidential materials is qualitatively

26  different because it is not an element of copyright infringement.  The breach of duty

27  or trust represents unfair competitive conduct 'qualitatively different from mere

28  unauthorized copying.'").

1        MGA argues that even if MGA had an "indirect duty" or had made an

2    "implied promise" to maintain the secrecy of Mattel's trade secrets, Mattel's

3    misappropriation claim would nonetheless be preempted by copyright.  Mot. at 10-

4    11.  But none of the cases it offers preempts a claim for trade secret

5    misappropriation.  Rather, each of the cases cited simply holds that the Copyright

6    Act preempts state law causes of action seeking to enforce a copyright owner's right

7    to keep his works private where the rights sought to be enforced through the state

8    law claims were qualitatively similar to those protected by Section 106 of the

9    Copyright Act.  See Del Madera Properties v. Rhodes and Gardner, Inc., 820 F.

10   Supp. 2d 973, 977 (9th Cir. 1987) (misappropriation claim under the unfair

11   competition law was preempted by copyright because "an implied promise not to

12   use or copy materials within the subject matter of copyright is equivalent to the

13   protection provided by section 106 of the Copyright Act"); Entous v. Viacom

14   International, Inc., 151 F.Supp.2d 1150, 1158-60 (C.D. Cal. 2001) (Copyright Act

15   preempted claim for breach of implied promise "that no use would be made of

16   Plaintiff's ideas or concepts unless first obtaining permission and a license from

17   Plaintiff and compensating Plaintiff for the use of said ideas and concepts"); Selby

18   v. New Line Cinema Corp., 96 F. Supp. 2d 1053, 1061-62 (C.D. Cal. 2000) (claim

19   for breach of an implied-in-fact contract claim was preempted by copyright where

20   defendant's implied promise not to use plaintiff's ideas "does not prohibit any

21   conduct beyond that prohibited by the Copyright Act"); Ehat v. Tanner, 780 F.2d

22   876, 877-79 (10th Cir. 1985) (misappropriation claim under the unfair competition

23   law was preempted by copyright where the gravamen of the claim was the

24   unauthorized reproduction and sale of non-trade secret research materials); Fischer

25   v. Viacom International, Inc., 115 F. Supp. 2d 535, 542 (D. Md. 2000) (claim for

26   breach of an implied-in-fact contract was preempted where the right arising from the

27   implied promise not to use plaintiff's ideas without paying for them was

28   qualitatively equivalent to a right for copyright infringement).  None of the above

1   cases has any bearing on the preemption analysis of a trade secret claim, which

2   focuses on the right of the trade secret holder to require others to maintain the

3   secrecy of the trade secrets, not an implied promise not to use or copy non-trade

4   secret materials.

5          Equally unavailing is MGA's argument that a defendant's culpable intent or

6   knowledge regarding an individual's confidential relationship or duties is

7   insufficient to supply a trade secret misappropriation claim with the "extra element"

8   necessary to avoid copyright preemption.  Mot. at 11-12.  As set forth above,

9   Mattel's Bratz trade secret claim contains the requisite "extra element" of secrecy

10  because it is predicated on MGA's acquisition and use of the Bratz trade secrets

11  through Carter Bryant, who owed a duty to Mattel to maintain their secrecy.  Again,

12  none of the authority cited by MGA involved a claim for trade secret

13  misappropriation, but rather other state law claims functionally equivalent to claims

14  for copyright infringement.  See, e.g., Compco Corp. v. Day-Brite Lighting, Inc.,

15  376 U.S. 234, 238 (1964) (stating that federal patent laws prevent a state from

16  prohibiting the copying and selling of unpatented articles "regardless of the copier's

17  motives" in a case having nothing to do with the "extra element" test); Aagard v.

18  Palomar Builders, Inc., 344 F. Supp. 2d 1211, 1219 (E.D. Cal. 2004) (claim for

19  intentional interference with prospective economic advantage was preempted by

20  copyright where "federal copyright laws already protect the exclusive right of

21  distribution," which was the crux of the state law claim); Worth v. Universal

22  Pictures, Inc., 5 F. Supp. 2d 816, 822 (C.D. Cal. 1997) (claim for intentional

23  interference with prospective economic advantage was preempted by copyright

24  because the claim was "directly related to copyright" as "the additional element of

25  'awareness or intent' only "alter[ed] the scope of the action but not its nature'");

26  Motown Record Corp. v. George A. Hormel & Co., 657 F. Supp. 1236, 1240 (C.D.

27  Cal. 1987) (claim for intentional interference with prospective business advantage

28  was preempted by copyright where the gravamen of the claim was the unauthorized

use of a copyrighted work; the additional elements of "awareness and intent" did not avoid this result because they simply "altere[ed] the scope of the action but not its nature"); <u>Atrium Group de Ediciones y Publicaciones, S.L. v. Harry N. Abrams, Inc.</u>, 565 F. Supp. 2d 505, 509 (S.D.N.Y. 2008) (claims for unjust enrichment and misappropriation under the unfair competition law were preempted because they were functionally equivalent to copyright infringement claims, and defendants' alleged deception did not constitute the extra element necessary to avoid preemption because the "only 'extra element' that avoids preemption for a state-created cause of action is something 'required instead of or in addition to the acts of reproduction, performance, distribution or display'").

Finally, MGA appears to argue that the Copyright Act preempts all trade secret misappropriation claims by virtue of the fact that the Act federalized the common law right of first publication. Mot. at 8-9. To tie the right of first publication to its preemption argument, MGA equates an unpublished copyrightable work with a "secret" work. MGA then argues that because the "concept of secret, unpublished works was expressly incorporated" into the Copyright Act, this somehow means that the secrecy element of a trade secret misappropriation claim is insufficient to differentiate it from a claim for copyright infringement. MGA's argument is insupportable. MGA does not (and cannot) cite to a single trade secret misappropriation case in which this analysis has been applied. The right of first publication "encompasses . . . the choice whether to publish at all." <u>Harper & Row Publishers v. Nation Enterprises</u>, 471 U.S. 539, 564 (1985). In other words, the decision to publish a copyrightable work or keep it secret lies within the discretion of its author. In contrast, a trade secret must remain secret in order to meet the statutory trade secret definition. The right of first publication protects against forced public disclosure of an unpublished work of authorship whereas trade secret misappropriation statutes protect the trade secret owner's rights in the value of the trade secrets. Because these rights are qualitatively different (and as the above cases

-14-

1  hold), the Copyright Act does not preempt all trade secrets claims, contrary to

2  MGA's urging.

3    **C.    The Doctrine of Conflict Preemption Does Not Apply**

4      MGA grandly states that "the Court's ruling that mere secrecy of materials

5  underlying a copyright claim may allow the same theory to be alleged under trade

6  secret law is subject to 'conflict' preemption." Mot. at 15-16. Yet MGA's two-

7  page discussion is entirely inapplicable to the real issue: whether state laws

8  containing a breach of secrecy element are subject to conflict preemption. They are

9  not, as Congress made clear:

10      The evolving common law rights of "privacy," "publicity," and trade
       secrets, and the general laws of defamation and fraud, would remain
11      unaffected as long as the causes of action contain elements, such as an
       invasion of personal rights or a breach of trust or confidentiality, that
12      are different in kind from copyright infringement.

13  Notes of Committee on the Judiciary to the Copyright Act of 1976, House Report

14  No. 94-1476. The Ninth Circuit has noted that because CUTSA "does not involve a

15  legal or equitable right equivalent to an exclusive right of a copyright owner under

16  the Copyright Act, but only prohibits certain means of obtaining confidential

17  information, *its application here would not conflict with federal copyright law.*"

18  S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1090 n.13 (9th Cir. 1989) (internal

19  citation omitted) (emphasis added). Indeed, as another Court of Appeals has

20  assured, there is no "inherent conflict between the Federal Copyright Act and state

21  trade secret law." Technicon Medical Information Systems Corp. v. Green Bay

22  Packaging Inc., 687 F.2d 1032, 1038-39 (7th Cir. 1982) (owner of instruction

23  manual who had affixed copyright seal to manual was not estopped from arguing

24  that manual was trade secret).

25      MGA argues that trade secret laws are subject to conflict preemption because

26  a state may not protect that which Congress intended to be free from restraint. Mot.

27  at 16. The Supreme Court addressed this issue in Kewanee Oil Co. v. Bicron Corp.,

28  416 U.S. 470 (1974), where it considered whether trade secret laws are subject to

1   conflict preemption based on federal patent laws.  Id. at 480-81.  The Supreme

2   Court held that the "policy that matter once in the public domain must remain in the

3   public domain is not incompatible with the existence of trade secret protection.  By

4   definition a trade secret has not been placed in the public domain." Id. at 484.  The

5   Supreme Court thus found that trade secret laws are not subject to conflict

6   preemption by federal patent laws.  In the face of clear congressional intent (see

7   supra Notes of Committee on the Judiciary to the Copyright Act of 1976) this

8   holding is also applicable to conflict preemption due to federal copyright laws.[8]

9        Not surprisingly, MGA fails to cite *any* case for the proposition that trade

10  secret laws are subject to the conflict preemption doctrine in a copyright setting.

11  There is none.  MGA's authorities stand for the unremarkable proposition that

12  federal law is supreme and preempts state statutes with which it conflicts.  See Jones

13  v. Rath Packing Co., 430 U.S. 519 (1977) (state laws on packaging and labeling

14  were subject to conflict preemption by federal Fair Packaging and Labeling Act);

15  Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225 (1964) (Illinois unfair

16  competition law subjecting defendant to liability for marketing product "identical"

17  to plaintiff's unpatented product, in the absence of any allegations of palming off,

18  was incompatible with federal patent law and thus preempted).  Even MGA's

19  authorities concerning federal copyright law are entirely inapposite to the question

20  here: whether state laws with an extra element of secrecy – as is the case with

21  CUTSA – are preempted.  See Goldstein v. California, 412 U.S. 546 (1973) (holding

22  that states have not relinquished all power to grant to authors "the exclusive Right to

23  their respective Writings"); Dastar Corp. v. Twentieth Century Fox Film Corp., 539

24  _____

25      [8]   MGA contends that Dastar Corp., which concerns the intersection of
    trademark and copyright law, is more applicable to the present situation than
26  Kewanee Oil, which deals with preemption of trade secret claims.  To state this
    argument is to refute it:  Dastar Corp. had nothing to do with the secrecy element or
27  trade secret laws, and thus provides no guidance as to the issue presented here.

28

1  U.S. 23 (2003) (Lanham Act does not prevent unaccredited copying of

2  uncopyrighted work); Orson, Inc. v. Miramax Film Corp., 189 F.3d 377 (3rd Cir.

3  1999) (state law concerning manner of distribution of copyrighted material was

4  subject to conflict preemption).  There is no support for the proposition that the

5  constitutional doctrine of conflict preemption causes the Copyright Act to preempt

6  state trade secret laws.

7        **D.**     **There Is No Basis for Certification**

8       MGA's request for certification (and its accompanying request for a stay

9  pending appeal) should be denied.  Section 1292(b) allows for appeals of

10  interlocutory orders only where: (1) there is a controlling question of law; (2) as to

11  which there is substantial ground for difference of opinion; and (3) an immediate

12  appeal may materially advance the ultimate termination of the litigation.  28 U.S.C.

13  § 1292(b); see Shurance v. Planning Control Int'l, Inc., 839 F.2d 1347, 1347 (9th

14  Cir. 1988); United States v. Woodbury, 263 F.2d 784, 788 n.11 (9th Cir. 1959)

15  (certification to "be applied sparingly" to "exceptional cases"); James v. Price Stern

16  Sloan, Inc., 283 F.3d 1064, 1068 n.6 (9th Cir. 2002) (Section 1292 certification is

17  granted only in "rare circumstances"); Caterpillar, Inc. v. Lewis, 519 U.S. 61, 74

18  (1996) ("Routine resort to § 1292(b) requests would hardly comport with Congress'

19  design to reserve interlocutory review for 'exceptional' cases . . . .").  These

20  standards are not satisfied.

21       No Controlling Question of Law.  MGA has made no showing that the

22  preemption question constitutes a controlling question of law.  The Ninth Circuit has

23  expressly rejected the view that a legal issue is "controlling if it is one the resolution

24  of which may appreciably shorten the time, effort, or expense of conducting a

25  lawsuit."  In re Cement Antitrust Litig., 673 F.2d 1020, 1027 (9th Cir. 1982).  MGA

26  has made no showing that the preemption question of the Bratz-related trade secrets

27  claim is so fundamental that it justifies the exceptional procedure of interlocutory

28  appeal.

1      <u>No Substantial Ground for Difference of Opinion.</u>  As noted, there is not

2  substantial ground for difference of opinion.  No court has ever taken MGA's side

3  of the argument and preempted a trade secrets misappropriation claim that is based

4  upon breach of a duty of trust or confidence owed to the trade secret holder (the

5  nature of Mattel's Bratz trade secret claim) based on copyright law.  Indeed, the

6  only cases cited by the Court or the parties that have addressed copyright

7  preemption of trade secrets claims have noted that there was *no* preemption.  <u>See,</u>

8  <u>e.g.</u>, <u>S.O.S.</u>, 886 F.2d at 1090 n.13 (California trade secret statute not preempted by

9  Copyright Act); <u>Firoozye</u>, 153 F. Supp. 2d at 1130 (Copyright Act does not preempt

10  UTSA claim because that claim "require[s] a status of secrecy, not required for

11  copyright") (quoting 1 Nimmer on Copyright § 1.01[B][1][h] 1-39-1-40).  And the

12  Supreme Court's <u>Kewanee Oil</u> decision made apparent that trade secret laws are not

13  subject to conflict preemption.  Because every court to address these issues has

14  resolved it in favor of Mattel's position and this Court's ruling, there can be no

15  substantial ground for difference of opinion.  <u>See, e.g.</u>, <u>Environmental Prot. Info.</u>

16  <u>Ctr. v. Pacific Lumber Co.</u>, 2004 WL 838160 at *3 (N.D. Cal. Apr. 19, 2004)

17  (moving papers "do not show that there is a 'substantial ground for difference of

18  opinion *among the courts* . . . rather, that there is a difference of opinion *between*

19  *[defendants] and this court.*") (emphasis in original) (citing <u>APCC Servs., Inc. v.</u>

20  <u>AT&T Corp.</u>, 297 F. Supp. 2d 101, 107 (D.D.C. 2003) ("A substantial ground for

21  dispute [] exists where a court's challenged decision conflicts *with decisions of*

22  *several other courts.*") (emphasis added)).

### E.      There Is No Interplay Between the Arguments in MGA's Motion for Reconsideration and Its Jury Instruction on Trade Secret Remedies

26      In its February 9, 2011 Minute Order, the Court asked the parties to "consider

27  the interplay between the arguments in MGA's motion and the jury instruction

28  proposed on page 156 of Docket 9620."  The short answer is there is none.

1  Although MGA expresses concern that the Court's preemption ruling will allow

2  Mattel to seek significant monetary remedies on its trade secret claim, that has no

3  bearing on whether the preemption ruling was legally correct, which as explained

4  above it was.  As Mattel will explain in a separate trial brief addressing trade secret

5  remedies, which will include discussion of a disclosure by the plaintiff, the

6  defendant, or a third party, disclosure itself does not necessarily limit a plaintiff's

7  right to recover.  On the other hand, as explained in the trial brief Mattel filed

8  yesterday, MGA may attempt to persuade the jury that its profits were attributable to

9  factors other than its misappropriation of Mattel's trade secrets.  What is important

10  for purposes of this opposition is not the particular standards for monetary relief

11  under CUTSA, but rather that those standards do not bear on whether the trade

12  secret claim is preempted by copyright law.

13  ### Conclusion

14      For the foregoing reasons, Mattel respectfully requests that the Court deny

15  MGA's Motion in its entirety.

16

17  DATED:  February 16, 2011      QUINN EMANUEL URQUHART &

18              SULLIVAN, LLP

19

20        By /s/ John B. Quinn

21          John B. Quinn
        Attorneys for Mattel, Inc.

22

23

24

25

26

27

28