CV 04-9049 DOC - 2/15/2011 - Status Conf., Volume 1 of 3

1

1          **UNITED STATES DISTRICT COURT**

2          **CENTRAL DISTRICT OF CALIFORNIA**

3      **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                  - - - - - - -

5
   MATTEL, INC., et al.,              )
6                                     )
                Plaintiffs,           )
7                                     )
        vs.                           ) No. CV 04-9049 DOC
8                                     )    Status Conference
   MGA ENTERTAINMENT, INC., et al.,   )    Volume 1 of 3
9                                     )
                                      )
10              Defendants.           )
   _____)

11

12

13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                  Status Conference

16                Santa Ana, California

17             Tuesday, February 15, 2011

18

19

20

21   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
22   United States District Court
     411 West 4th Street, Room 1-053
23   Santa Ana, California 92701
     (714) 558-8141
24

25   04cv9049 Mattel 2011-02-15 SCV1

1    **APPEARANCES OF COUNSEL:**

2

     FOR PLAINTIFF MATTEL, INC., ET AL.:
3
                 QUINN EMANUEL URQUHART & SULLIVAN
4                BY:  JOHN QUINN
                      WILLIAM PRICE
5                     MICHAEL T. ZELLER
                      Attorneys at Law
6                865 South Figueroa Street
                 10th Floor
7                Los Angeles, California 90017
                 (213) 443-3000
8

9

10

11   FOR DEFENDANT MGA ENTERTAINMENT, INC., ET AL:

12               ORRICK, HERRINGTON & SUTCLIFFE, LLP (Irvine)
                 BY:  THOMAS S. McCONVILLE
13                    Attorney at Law
                 4 Park Plaza
14               Suite 1600
                 Irvine, California 92614
15               (949) 567-6700

16               - AND -

17               ORRICK, HERRINGTON & SUTCLIFFE, LLP (SF)
                 BY:  ANNETTE L. HURST
18                    Attorney at Law
                 405 Howard Street
19               San Francisco, California 94105
                 (415)773-5700
20
                 - AND -
21
                 KELLER RACKAUCKAS
22               BY:  JENNIFER KELLER
                      Attorney at Law
23               18500 Von Karman Avenue
                 Suite 560
24               Irvine, California 92612
                 (949) 476-8700
25

Case 2:04-cv-09049-DOC-RNB   Document 9961   Filed 02/17/11   Page 3 of 48   Page ID #:301185
CV 04-9049 DOC - 2/15/2011 - Status Conf., Volume 1 of 3

3

```
1    APPEARANCES OF COUNSEL (Continued):

2

3    FOR CARLOS GUSTAVO MACHADO GOMEZ:

4
             LAW OFFICES OF MARK E. OVERLAND
5            By:  MARK E. OVERLAND
                  Attorney at Law
6            100 Wilshire Boulevard
             Suite 950
7            Santa Monica, California 90401
             (310) 459-2830
8
             - AND -
9
             SCHEPER KIM & HARRIS LLP
10           BY:  ALEXANDER H. COTE
                  Attorney at Law
11           601 West 5th Street
             12th Floor
12           Los Angeles, California 90071
             (213) 613-4660
13

14   ALSO PRESENT:

15           MGA ENTERTAINMENT, INC.
             BY:  JEANINE PISONI
16                Attorney at Law
             16360 Roscoe Boulevard
17           Suite 105
             Van Nuys, California 91406
18

19           ROBERT ECKERT, Mattel CEO

20           ISAAC LARIAN, MGA CEO

21           KEN KOTARSKI, Mattel Technical Operator

22           MIKE STOVALL, MGA Technical Operator

23           RACHEL JUAREZ, Quinn Emanuel Urquart & Sullivan

24

25
```

1                          **I N D E X**

2      **PROCEEDINGS**                                      **PAGE**

3      Status Conference                                     5
       Examination of Ken Kotarski by the Court             37
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|   | **SANTA ANA, CALIFORNIA, TUESDAY, FEBRUARY 15, 2011** |
|---|---|
| 1 | **SANTA ANA, CALIFORNIA, TUESDAY, FEBRUARY 15, 2011** |
| 2 | **Status Conference, Volume 1 of 3** |
| 3 | (8:41 a.m.) |

08:27    4    *(Out of the presence of the jury.)*

08:41    5    THE COURT:  We're on the record.

08:41    6    It's 8:45.  All counsel are present.  All of the

08:41    7    jurors and alternates are present, other than one alternate.

08:41    8    We just received a phone call about five minutes

08:41    9    ago, and that juror has the flu, cannot come in today, is

08:41    10    very, very sick.  I'd like to have your permission to have

08:41    11    Kathy try to contact that juror.

08:42    12    My guess is, if that juror has the flu, it could

08:42    13    be for one day to multiple days.  And if you bring in the

08:42    14    juror too soon, you could have an entire jury having the

08:42    15    flu.

08:42    16    So first of all, let's try to designate for you

08:42    17    that juror so you know who that juror is.

08:42    18    Kathy, do you know which one?

08:42    19    THE CLERK:  It's Mr. O'Connor, front row, third

08:42    20    from the far end.

08:42    21    THE COURT:  The gentleman who sits -- you're aware

08:42    22    of Mr. O'Connor?

08:42    23    MR. ZELLER:  Right there.

08:42    24    THE COURT:  What's if he's not able to proceed

08:42    25    today, and he has an indefinite return to Court?

CV 04-9049 DOC - 2/15/2011 - Status Conf., Volume 1 of 3

6

| | | |
|---|---|---|
| 08:42 | 1 | MS. KELLER:  May we confer for a moment? |
| 08:42 | 2 | THE COURT:  Why don't you confer. |
| 08:42 | 3 | Counsel, why don't you confer for a moment, also. |
| 08:42 | 4 | And remember this:  It's not only the duration |
| 08:42 | 5 | that he's gone today; I'm a little concerned if we bring him |
| 08:42 | 6 | back too soon and he's got the flu, that it runs right |
| 08:42 | 7 | through the jury.  But if he's only out a day, so be it. |
| 08:43 | 8 | And I understand it's detrimental to each side having the |
| 08:43 | 9 | case go a prolonged period of time.  It's detrimental to |
| 08:43 | 10 | Mattel -- Mr. Quinn, it's detrimental to Mattel, I |
| 08:43 | 11 | understand, the more time, distances of intervals -- and |
| 08:43 | 12 | it's detrimental to MGA also, because each of you need to |
| 08:43 | 13 | get the case to the jury. |
| 08:43 | 14 | MS. KELLER:  Your Honor, if he really does have |
| 08:43 | 15 | the flu, we don't want to risk the rest of the jurors |
| 08:43 | 16 | getting sick.  We can't do it.  I know the Court doesn't |
| 08:43 | 17 | want to do it. |
| 08:43 | 18 | We'd be willing to have him excused. |
| 08:43 | 19 | THE COURT:  Okay.  What are your thoughts? |
| 08:43 | 20 | MR. QUINN:  We need a few more minutes, |
| 08:43 | 21 | Your Honor. |
| 08:43 | 22 | THE COURT:  Okay.  Why don't you take those |
| 08:43 | 23 | minutes now. |
| 08:43 | 24 | And why don't we have Kathy call also and try to |
| 08:43 | 25 | get some additional information. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 08:43 | 1 | Kathy, why don't you go back in chambers so you |
| 08:43 | 2 | can call, and just ask him.  Obviously, I don't think he |
| 08:43 | 3 | knows how long the flu is going to be and he's going to be |
| 08:43 | 4 | sick.  If we bring him back in, of course, that's tremendous |
| 08:44 | 5 | concern. |
| 08:44 | 6 | MS. KELLER:  Well, he's also older, so it may take |
| 08:44 | 7 | him a little while to get over it. |
| 08:44 | 8 | THE COURT:  Off the record. |
| 08:48 | 9 | *(Pause in the proceedings at 8:44 a.m.)* |
| 08:48 | 10 | *(Proceedings resume at 8:48 a.m.)* |
| 08:48 | 11 | THE COURT:  All right.  Counsel, we're back on the |
| 08:48 | 12 | record.  Kathy was kind enough to place a phone call and got |
| 08:48 | 13 | that juror by phone. |
| 08:48 | 14 | Let her relate her conversation to you so it's not |
| 08:48 | 15 | filtered through the Court. |
| 08:48 | 16 | Kathy. |
| 08:48 | 17 | THE CLERK:  Mr. O'Connor said that he started |
| 08:48 | 18 | feeling sick about 6:00 o'clock last night; had chills; went |
| 08:49 | 19 | to bed, and has slept for the past 15 hours.  Just got up. |
| 08:49 | 20 | He figured he got it from his grandchildren.  His grandson |
| 08:49 | 21 | was out of school all last week and still has a fever.  And |
| 08:49 | 22 | he also said that, as he gets older, it's harder for him to |
| 08:49 | 23 | kick these kinds of things, so he has no clue what his |
| 08:49 | 24 | prognosis is. |
| 08:49 | 25 | THE COURT:  I think, in an abundance of caution, |

| | | |
|---|---|---|
| 08:49 | 1 | if we don't reach an agreement on this issue, I think this |
| 08:49 | 2 | would be a lengthy recess, quite frankly, for two reasons: |
| 08:49 | 3 | First, I don't have any indication by bringing the |
| 08:49 | 4 | juror back tomorrow that the juror is able to return |
| 08:49 | 5 | tomorrow; second, it puts a lot of pressure on that juror to |
| 08:49 | 6 | return in a still-infectious position; third, the jury now |
| 08:49 | 7 | is exposed, and what I'm concerned about now with seven |
| 08:49 | 8 | weeks of trial that we've got a situation where we've got |
| 08:49 | 9 | additional sick jurors. |
| 08:49 | 10 | But I'm going to leave that to you, once again, |
| 08:49 | 11 | with a private discussion for a moment.  Let me step off the |
| 08:49 | 12 | bench for five minutes. |
| 08:50 | 13 | I've told the jurors that Mr. O'Connor is ill and |
| 08:50 | 14 | that we were discussing that, so they know why we're |
| 08:50 | 15 | starting late today.  I'm going to step off the bench so you |
| 08:50 | 16 | can discuss that privately in your own groups. |
| 08:52 | 17 | *(Pause in the proceedings at 8:50 a.m.)* |
| 08:52 | 18 | *(Proceedings resumed at 8:59 a.m.)* |
| 08:58 | 19 | THE COURT:  Then we're back on the record.  The |
| 08:59 | 20 | Court had an opportunity to take a brief recess so counsel |
| 08:59 | 21 | could discuss this with their trial teams respectively. |
| 08:59 | 22 | Let me turn to Mattel. |
| 08:59 | 23 | MR. QUINN:  I mean, Your Honor, uh, I guess our |
| 08:59 | 24 | concern is that, you know, people really aren't good at |
| 08:59 | 25 | self-diagnosing themselves when he's had 15 hours of sleep. |

08:59  1    Um, you know, it seems to us he might be better tomorrow.

08:59  2    It might be worth waiting a day.

08:59  3            We've got -- he has a big investment in this case

08:59  4    up to this point.  The Court has a big investment in his

08:59  5    participation.  I don't think we lose much by waiting a day

08:59  6    to check in with him tomorrow.

08:59  7            THE COURT:  Okay.  If we took that day, would

08:59  8    there be any objection by MGA?

08:59  9            MS. KELLER:  There would be no objection,

08:59  10   Your Honor, but I've got the same concern.

08:59  11           If that's what the Court wants to do, we will not

08:59  12   object.

08:59  13           THE COURT:  I think this:  For my record and the

08:59  14   investment in time, I tend to agree that one day is

09:00  15   well-taken.  If he's still sick tomorrow, that would be good

09:00  16   legal cause.  I don't want to put pressure on him, and I

09:00  17   think if we bring him back tomorrow, we've got to isolate

09:00  18   him.  In other words, we've got to put him over in some

09:00  19   location -- we'll have him sit at Mattel's table.  I'm just

09:00  20   joking with you, counsel.  And then we'll trade over to

09:00  21   MGA's table to co-equal this.

09:00  22           We've got to put him someplace where the jury's

09:00  23   not affected, because when I left, without any leading

09:00  24   question on the Court's part, one of the jurors was saying,

09:00  25   "Well, gee, I wonder how sick he is."  The inference being,

09:00  1    "Are we gonna get sick?"  So there's the concern.

09:00  2         MS. KELLER:  And, Your Honor, the problem I see

09:00  3    also with just putting him away from people is, of course,

09:00  4    viruses, which the flu is, get transmitted all different

09:00  5    ways, including by touching things, by touching doorknobs.

09:00  6         I mean, we don't -- we also don't want the trial

09:00  7    attorneys or witnesses or parties to get sick either.

09:01  8         THE COURT:  Let me try to think out loud and

09:01  9    reason this through.  If he just got the flu, I don't know

09:01  10   whether the flu is lasting one day or three days.  I don't

09:01  11   know his condition after that.  I know a good part of the

09:01  12   courthouse is on antibiotics right now because of the flu.

09:01  13   And I know that the flu, it's going around.  If he has

09:01  14   what's being transmitted throughout the courthouse, and at

09:01  15   least in my personal life, it's more than one day.  And if

09:01  16   he just came down with it, I think you're gonna have a jury

09:01  17   that's not only exposed -- if they haven't already been

09:01  18   exposed, quite frankly, and I think it's more than one day.

09:01  19        I also am a little concerned -- although you're in

09:01  20   the position on Mattel's side of not going forward -- that

09:01  21   it's better for both Mattel and MGA to get this testimony

09:01  22   concerning Mr. Larian especially, and eventually Mr. Eckert,

09:01  23   to the jury at one place in one time.

09:02  24        So under the circumstances, if you want me to

09:02  25   personally place another call and ask some questions of the

09:02  1    jurors -- juror, I'm gonna be happy to do so, but I think

09:02  2    I'm going to find that there's good legal cause because of

09:02  3    the flu, under these circumstances, and go forward.

09:02  4              So, Mr. Price, why don't you think up whatever

09:02  5    you'd like me to ask him.  I'm happy to call him.  I'm happy

09:02  6    to call him personally, Mr. Quinn.

09:02  7              But I think I'm going to have some very ill

09:02  8    jurors, and it's going to be much worse than one.  It's

09:02  9    going to be a multitude.

09:02  10             So why don't you discuss that one more time, and

09:02  11   if there are questions you want me to ask him, I'm happy to

09:02  12   call him.  But I think the reasoning on MGA's part is

09:02  13   well-taken.

09:02  14             Counsel, there's one more thing I could do.

09:02  15   Mr. Quinn.  I could call him and say that we're inclined to

09:03  16   excuse him, and then we could get his reaction.  You know,

09:03  17   if he says, "Judge, I think I would be better by tomorrow,"

09:03  18   I'd have that one more piece of information.  If he said,

09:03  19   "Judge, I'm really sick.  I just don't know if I can come in

09:03  20   tomorrow or the next day," I'd have that one more piece of

09:03  21   information.

09:03  22             If you both give me permission to do so, why don't

09:03  23   I personally call him with Kathy present.

09:03  24             MR. QUINN:  I think that might be useful,

09:03  25   Your Honor.

09:03   1            And also, perhaps, to tell him that we're willing

09:03   2   to wait until tomorrow and check in with you.

09:03   3            THE COURT:  I'm going to.

09:03   4            MR. QUINN:  Based on how you're feeling.

09:03   5            THE COURT:  Yeah.  Let me do that.

09:03   6            Can I place that call in chambers with Kathy?

09:03   7            MR. QUINN:  Sure, yes.

09:03   8            MS. KELLER:  Yes, Your Honor.

09:03   9            THE COURT:  Kathy, why don't you come on back, and

09:03  10   let's try to talk to the gentleman one more time.

09:03  11                 *(Pause in the proceedings at 9:03 a.m.)*

09:07  12                 *(Proceedings resumed at 9:07 a.m.)*

09:07  13            THE COURT:  All right.  We're back on record.

09:07  14   What an extraordinarily nice man.  Where do we get these

09:07  15   people in America who will devote four months of their lives

09:07  16   to jury service?

09:07  17            I'm going to try my best not to relate the

09:08  18   conversation question by question, but the conversation

09:08  19   basically went, "Jim, this is Judge Carter, and I'm calling

09:08  20   on behalf of both parties.  If you've got the flu and you're

09:08  21   this sick and you don't think that you can return tomorrow,

09:08  22   then I certainly would excuse you and we can move on.

09:08  23            "And by the same token, everybody wants you to be

09:08  24   a member of the jury.  You've got a substantial time devoted

09:08  25   to the case.  Do you still want to be on this jury?"

CV 04-9049 DOC - 2/15/2011 - Status Conf., Volume 1 of 3

13

09:08  1        He said, "Yeah, I'd still like to be on the jury."
09:08  2   His next comment was -- and not in any particular order --
09:08  3   that he just didn't know.  That he could feel better this
09:08  4   afternoon, but right now he'd been in bed for 15 hours.  He
09:08  5   had the chills.
09:08  6        I explained to him that I didn't want the rest of
09:08  7   the jurors to be infected, so we might put him over in the
09:08  8   corner with a mask on.  That got a chuckle, so at least his
09:09  9   spirit's still there.  I asked him if it would be
09:09  10  permissible, with all of the effort that he'd made,
09:09  11  literally, being willing to serve and his devotion to the
09:09  12  case, if we could call him at 8:00 o'clock tomorrow morning,
09:09  13  and if he felt better this afternoon or worse, if he could
09:09  14  give Kathy a call and let us know the status.
09:09  15       I think, under the circumstances, I think that one
09:09  16  day is a good investment in time.  And I'm going to send the
09:09  17  jury home with the same explanation I just gave to you, that
09:09  18  we're gonna isolate him tomorrow if he comes in.  He'll know
09:09  19  whether he's better.  If it's the one-day flu, so be it.
09:09  20  But if he's sick tomorrow, then I'm going to excuse him,
09:09  21  counsel, and we'll proceed forward.
09:09  22       Now, if there's any objection to that -- I think
09:09  23  that's a wise course to take, and I think your arguments on
09:09  24  behalf of Mattel are well-taken.
09:09  25       MR. QUINN:  We agree with that approach,

CV 04-9049 DOC - 2/15/2011 - Status Conf., Volume 1 of 3

14

| | | |
|---|---|---|
| 09:09 | 1 | Your Honor. |
| 09:09 | 2 | THE COURT:  Counsel? |
| 09:09 | 3 | MS. KELLER:  That's fine, Your Honor. |
| 09:09 | 4 | THE COURT:  But tomorrow's the day.  If he can't |
| 09:09 | 5 | come in, we move forward. |
| 09:09 | 6 | Let me go back.  Can I informally talk to the |
| 09:09 | 7 | jury, tell them that's what's occurred, and send them on |
| 09:10 | 8 | their way? |
| 09:10 | 9 | Okay.  That's a nod of affirmance by all counsel. |
| 09:10 | 10 | Kathy, come on. |
| 09:10 | 11 | *(Pause in proceedings at 9:10 a.m.)* |
| 09:10 | 12 | *(Proceedings resumed at 9:13 a.m.)* |
| 09:13 | 13 | THE COURT:  All right.  Let the record reflect |
| 09:13 | 14 | there's a wild celebration going on in the jury right now. |
| 09:13 | 15 | I'm just joking with you.  But they were impressed with the |
| 09:13 | 16 | juror's willingness to serve.  And he's going to call us |
| 09:13 | 17 | this afternoon, or we may place a call later today.  I'd |
| 09:13 | 18 | rather have him call us, because I don't know if he's |
| 09:13 | 19 | sleeping, and I think there's plenty of other things we can |
| 09:13 | 20 | do today. |
| 09:13 | 21 | I almost called you in yesterday, but there's a |
| 09:13 | 22 | number of issues that have come up in informal discussions |
| 09:13 | 23 | that I'd like to hear from counsel on. |
| 09:13 | 24 | And I think that it's a good day to start arguing |
| 09:13 | 25 | jury instructions. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 2/15/2011 - Status Conf., Volume 1 of 3

15

09:13  1              But -- we said that that would be this evening,

09:14  2   but, Mr. Zeller, would you be prepared to go forward with

09:14  3   Claims 10 and 11 if we took a small recess?

09:14  4              MR. ZELLER:  Yeah, I think so.

09:14  5              MS. KELLER:  Your Honor, on behalf of Ms. Hurst.

09:14  6              THE COURT:  I'll be right -- because if neither

09:14  7   one of you agree, then we're not going to.

09:14  8              But in an hour or so, would you be prepared?

09:14  9              MR. PRICE:  I would think certainly by 11:00.  I

09:14  10  just need to have some materials brought over.  That's

09:14  11  really it.

09:14  12             THE COURT:  All right.  Ms. Keller.  Here's

09:14  13  Ms. Hurst.

09:14  14             MS. KELLER:  Zeller and Keller.  That's quite a

09:14  15  segue.

09:14  16             Your Honor, Ms. Hurst had informed me that she's

09:14  17  in the middle of doing some research on one of the issues

09:14  18  that is critical, and she was hoping we can do them this

09:14  19  afternoon instead of this morning, and maybe do something

09:14  20  else this morning.

09:14  21             MS. HURST:  1:00 o'clock.

09:14  22             THE COURT:  1:00 o'clock is fine.  Is it the duty

09:14  23  of loyalty?

09:14  24             MS. HURST:  No.  It's the conversion causation

09:14  25  issue.  I just want to close out on that, since you added

CV 04-9049 DOC - 2/15/2011 - Status Conf., Volume 1 of 3

16

| | | |
|---|---|---|
| 09:14 | 1 | that, if that's okay. |
| 09:14 | 2 | THE COURT:  I said it was going to be Wednesday. |
| 09:14 | 3 | That's more than reasonable.  If you're not ready to go |
| 09:15 | 4 | forward even at that time, just tell me. |
| 09:15 | 5 | MS. HURST:  We'll be ready.  1:00 o'clock is fine. |
| 09:15 | 6 | THE COURT:  Is that okay, Mr. Zeller? |
| 09:15 | 7 | MR. ZELLER:  Yes. |
| 09:15 | 8 | THE COURT:  Are you going to argue on behalf of |
| 09:15 | 9 | Mattel, Mr. Zeller? |
| 09:15 | 10 | MR. ZELLER:  Yes. |
| 09:15 | 11 | THE COURT:  One person's gonna argue.  Who's gonna |
| 09:15 | 12 | argue? |
| 09:15 | 13 | MR. ZELLER:  It will be me. |
| 09:15 | 14 | THE COURT:  All right.  Who's going to argue? |
| 09:15 | 15 | MS. KELLER:  Ms. Hurst. |
| 09:15 | 16 | THE COURT:  Ms. Hurst will. |
| 09:15 | 17 | That may save an evening session, Mr. Price, and I |
| 09:15 | 18 | may be able to excuse you, then, and excuse one of the lead |
| 09:15 | 19 | counsel for MGA, Ms. Keller, tonight, because I just want |
| 09:15 | 20 | the trial counsel here during the arguments. |
| 09:15 | 21 | Now, in a moment of hallucination, any chance of |
| 09:15 | 22 | arguing the 17200 this afternoon at 4:00 o'clock? |
| 09:15 | 23 | MR. ZELLER:  Let me check. |
| 09:15 | 24 | MS. HURST:  Yes. |
| 09:15 | 25 | MR. ZELLER:  That may be a little bit -- I mean, I |

09:15 1  have people working on it.

09:15 2            THE COURT:  I'll talk to you at 3:00 o'clock.

09:15 3            Okay.  And if not, then it will go forward

09:15 4  tomorrow evening.

09:15 5            MS. HURST:  Are we doing the 17200 both ways?

09:15 6            THE COURT:  Both ways, because the instructions

09:16 7  are gonna be somewhat synonymous, since it's the same kind

09:16 8  of claim.  Like a 17200.

09:16 9            All right.  What about the injunctive relief?

09:16 10           MR. ZELLER:  Well, one question I have on that is:

09:16 11 Are we just going to talk about it with respect to all

09:16 12 claims and just as kind of a measure of relief, or are we --

09:16 13           THE COURT:  Measure of relief and all claims.

09:16 14           MR. ZELLER:  Okay.

09:16 15           THE COURT:  I'm trying to preserve some of your

09:16 16 weekend.

09:16 17           MR. ZELLER:  Yeah.  Um --

09:16 18           THE COURT:  Tell me today at 3:00 o'clock, and if

09:16 19 you're not ready, we can do that Wednesday night as we

09:16 20 planned, as I accelerate the schedule.

09:16 21           MS. HURST:  Yeah, I'm not sure I understand

09:16 22 exactly what the Court wants on injunctive relief.  I mean,

09:16 23 are you thinking of what the equivalent of what the 1-C

09:16 24 phase was the last time?

09:16 25           THE COURT:  Okay.

09:16   1          MS. HURST:  Okay.  That strikes me as premature.

09:16   2   I'll be honest.  I mean, we can have an argument about the

09:16   3   effect of the Ninth Circuit or something like that.

09:16   4          THE COURT:  Do you want to leave injunctive relief

09:17   5   on the table and not argue any aspects of it at the present

09:17   6   time?

09:17   7          MS. HURST:  That's fine.

09:17   8          THE COURT:  That's fine.  I'll tell you why.  I

09:17   9   want to get to copyright, and I'm going to get to copyright

09:17  10   sometime this week, because that's a critical issue for the

09:17  11   Court.  And most difficult instructions will be my copyright

09:17  12   and my trade secret misappropriation.

09:17  13          MS. HURST:  I'm ready to do copyright whenever you

09:17  14   want.  I mean, I can do it today if you want.

09:17  15          THE COURT:  All right.  Instead of worrying about

09:17  16   it, at 1:00 o'clock, unless I hear differently, we're going

09:17  17   to take the first step.  That's the aiding and abetting,

09:17  18   duty of loyalty, and we'll take the conversion, unless I

09:17  19   hear something differently.

09:17  20          Let's get that far.

09:17  21          The second issue is yesterday I was told by Kathy

09:17  22   that you wanted to see the Court, but I was in the middle of

09:18  23   a conference with Saipan, and then I didn't find anybody.

09:18  24          I talked to the special master last evening

09:18  25   about -- I forget the time -- and he said there was some

09:18   1   concern over either the time that you'd had or the number of

09:18   2   objections you've had concerning counsel who was testifying.

09:18   3           Is there still a dispute between the parties over

09:18   4   that deposition?

09:18   5           All right.  Hearing none at the present time.  I

09:18   6   had an informal conversation with Mr. Overland this morning.

09:18   7   The record should reflect that the letter that we sent to

09:18   8   the judge in Mexico was the wrong address.  And Mr. Overland

09:18   9   is contacting counsel so that we can get permission from the

09:18   10   judge in Mexico to have Mr. Machado appear.

09:18   11          And I want to inform you of that.  So he's going

09:19   12   to call counsel again.  We sent that overnight.  And it came

09:19   13   back incorrect address.

09:19   14          So that's counsel in Mexico's problem.  But the

09:19   15   judge in Mexico apparently hasn't received either of my

09:19   16   letters asking that Mr. Machado appear.

09:19   17          So today we'll accomplish that, and we'll have a

09:19   18   new address and send the same letter off by mail just with a

09:19   19   new address.

09:19   20          The next issue is the metadata that was referred

09:19   21   to Judge Smith.  And his expert caused a report that each of

09:19   22   you should have received, an initial report.  Do you have it

09:20   23   for MGA?

09:20   24          MS. HURST:  Yes.

09:20   25          THE COURT:  Do you have it for Mattel?

Case 2:04-cv-09049-DOC-RNB  Document 9961  Filed 02/17/11  Page 20 of 48  Page ID #:301202
CV 04-9049 DOC - 2/15/2011 - Status Conf., Volume 1 of 3

20

09:20    1          MR. QUINN:  Yes.

09:20    2          THE COURT:  And in an abundance of caution, I was

09:20    3    talking to Judge Smith on Sunday and said that since Mattel

09:20    4    was so concerned about the metadata, that I thought it was

09:20    5    wise that I took the extra step and had it simply sent over

09:20    6    for a final analysis by his expert.

09:20    7          There was some confusion on Saturday.  I think

09:20    8    when Ms. Hurst got the order, she wasn't certain, pursuant

09:20    9    to our conversation, that that was to be accomplished.  It's

09:20   10    clear this morning that that is being sent.

09:20   11          MS. HURST:  Yeah.  As soon as the Court clarified

09:20   12    that, we had it sent.

09:20   13          THE COURT:  Thank you.  I think we'll get that

09:20   14    back within 24 hours, and that will lay the issue to rest.

09:20   15    And I think after all the discovery and expense, it's a

09:20   16    minimal effort, quite frankly, to give both parties

09:21   17    confidence.

09:21   18          Third or fourth on the list logistically.  Each of

09:21   19    you have requested a *Kumho-Daubert* hearing concerning your

09:21   20    damages experts.  We need to find time for that.  And that's

09:21   21    why I'm trying to either have that during the evening hours

09:21   22    or on a weekend.

09:21   23          I didn't envision having today free to discuss

09:21   24    these issues with you, and I was getting concerned about the

09:21   25    jury instructions, because sometime next week, potentially,

09:21   1   Mattel's going to need to rest because of the time

09:21   2   constraints.

09:21   3           And the Rule 50's will be coming in.  And Mr. Cote

09:21   4   had asked for a briefing schedule concerning Rule 50.

09:21   5           What pleases you?  How would you like that

09:22   6   briefing schedule for Rule 50 set up?

09:22   7           MS. HURST:  Your Honor, my understanding, based on

09:22   8   the Court's earlier comments, was that the Court was likely

09:22   9   to reserve those.

09:22   10          THE COURT:  I usually have, but that's not a

09:22   11  guarantee.  I've usually reserved them historically until

09:22   12  the end of the defense case, so I was certain that I had all

09:22   13  of the information in front of the Court, especially in a

09:22   14  case where adverse witnesses are being called by one party

09:22   15  or the other.  But just because I've done that historically

09:22   16  doesn't mean that I will do that on this occasion.

09:22   17          So I'm really at your disposal.  I want you to

09:22   18  proceed as if I didn't have that historic precedent, and I

09:23   19  just don't want you to be surprised, because it's gonna take

09:23   20  a lot of work and a lot of briefing and a lot of reading by

09:23   21  the Court.

09:23   22          So I'm asking you to draw up a briefing schedule

09:23   23  for me and give you the first opportunity to cooperate with

09:23   24  one another before I start dictating time.  Now, if you

09:23   25  can't, I'll dictate the time.

CV 04-9049 DOC - 2/15/2011 - Status Conf., Volume 1 of 3

22

09:23  1           MS. HURST:  Your Honor, can we meet and confer

09:23  2     about that between now and this afternoon and come back with

09:23  3     a proposal to the Court?

09:23  4           THE COURT:  We're going to do that in just a

09:23  5     moment.

09:23  6           Because we've got two things besides some of the

09:23  7     legal arguments that occurred this morning and some of the

09:23  8     evidentiary questions that occurred this morning that we

09:23  9     need to discuss.

09:23  10          I've asked when these two experts will be here,

09:23  11    and I haven't gotten a response.  I've gotten that you're

09:23  12    checking on their availability.  I don't really care about

09:23  13    their availability.

09:23  14          So if you want damages experts, you either come up

09:23  15    with a time and then ask me permission and see if I'm

09:24  16    available, or I'm just gonna dictate the time to you, and

09:24  17    they had better be here or you're not gonna have a damages

09:24  18    expert.  So I think that's the most important conversation

09:24  19    you could have right now, as well as a briefing schedule.

09:24  20          And then, Mr. Quinn, we'll come back to some of

09:24  21    the issues that concern you for one final go-around; some of

09:24  22    the issues, Ms. Keller, that concern you, for one final

09:24  23    discussion about branding, what the limitations are or

09:24  24    aren't, the similarity issues that would occur if the

09:24  25    Hong Kong case came in.

09:24   1        The matters concerning Anna Rhee and the 608(b)

09:24   2   issues.  All of that I think can wait, because I think you

09:24   3   need to start moving people as quickly as possible by

09:24   4   agreement, or that I've got to do something today because I

09:24   5   know what's gonna happen.  You think you've got a lot of

09:24   6   time.  You're running out of time.  Okay.  Because I've got

09:24   7   350 other cases, so I can't fit you in on Mondays.  I have

09:24   8   to fit you in on Saturday and Sunday.

09:25   9        Now, finally, I've canceled the Idaho flight this

09:25  10   Saturday -- canceled it yesterday -- to the Bureau of

09:25  11   Prisons.  I'll go up on another weekend that we're not quite

09:25  12   as busy.  And I've canceled the discussion with the

09:25  13   California Department of Corrections out at Coalinga this

09:25  14   weekend also.

09:25  15        So now I'm available.  And I leave it to all of

09:25  16   you to determine my schedule for a moment.

09:25  17        So I'm going to take a recess for a minute, but I

09:25  18   really do want to hear when we come back, before we take up

09:25  19   the legal issues -- or, I'm sorry -- the evidentiary issues,

09:25  20   what your plans are for your respective experts -- or you

09:25  21   can get them on the phone -- what limitations there should

09:25  22   be.

09:25  23        I'm thinking two hours.  I'm thinking there has to

09:25  24   be a limitation.  This isn't on and on.  This isn't a

09:25  25   deposition.  This is a foundational hearing.  I think it's

| | | |
|---|---|---|
| 09:25 | 1 | going to be rather limited, but I'm willing to have each of |
| 09:26 | 2 | you discuss that first. |
| 09:26 | 3 | So I'm going to meet you at what time?  You have |
| 09:26 | 4 | two things that you have to accomplish immediately.  Number |
| 09:26 | 5 | one, you've got to get on the phone with your experts.  I |
| 09:26 | 6 | want to hear them the same day, by the way.  And right now |
| 09:26 | 7 | I'm planning on Saturdays. |
| 09:26 | 8 | MS. KELLER:  Would 10:00 o'clock, Your Honor, be |
| 09:26 | 9 | sufficient? |
| 09:26 | 10 | THE COURT:  Fine. |
| 09:26 | 11 | MR. ZELLER:  That's fine. |
| 09:26 | 12 | THE COURT:  10:00 o'clock.  I'll see you at |
| 09:26 | 13 | 10:00 o'clock. |
| 09:26 | 14 | Thank you. |
| 09:36 | 15 | *(Recess held at 9:26 a.m.)* |
| 10:10 | 16 | *(Proceedings resumed at 10:10 a.m.)* |
| 10:10 | 17 | *(Outside the presence of the jury.)* |
| 10:10 | 18 | THE COURT:  All right.  Then we're on the record. |
| 10:10 | 19 | Counsel are present.  Of course, the jury's not, |
| 10:10 | 20 | having been excused for the day because of |
| 10:10 | 21 | Juror O'Connor's -- or Alternate Juror O'Connor's illness. |
| 10:10 | 22 | Scheduling? |
| 10:10 | 23 | MS. HURST:  Your Honor, on the *Daubert* motions our |
| 10:10 | 24 | expert, Mr. Malackowski, is on a cruise next weekend, a |
| 10:10 | 25 | special cruise for children with cancer.  His son has |

10:11  1  cancer.  So we requested that Mattel agree to postpone it to

10:11  2  the following Saturday, and they have kindly agreed.

10:11  3          And we would request the Court's permission to

10:11  4  have the *Daubert*'s on Saturday, February 26th.

10:11  5          THE COURT:  Okay.  Just a minute.

10:11  6          Would those be simultaneous *Daubert* hearings?

10:11  7          MS. HURST:  Yes.  That is what the Court had

10:11  8  indicated it wanted.

10:11  9          THE COURT:  Now, what about the time?

10:11  10          I had calculated that, literally, if we had

10:11  11  consumed 24 hours, Mr. Zeller, this week and 24 hours next

10:11  12  week, if we added 48 hours to the approximate, let's just

10:11  13  say roughly, 52 hours, that we were at a hundred hours; and,

10:11  14  therefore, that you had to present Mr. Wagner, if not this

10:12  15  week, the early part of the following week.

10:12  16          How do I get that *Daubert* hearing out of way and

10:12  17  make a determination if it's on the 26th?

10:12  18          MR. ZELLER:  We did discuss that with MGA and I

10:12  19  think there are two points.

10:12  20          Number one is, is that MGA has stated that it will

10:12  21  simply bear the risk that Mr. Wagner is up on the stand

10:12  22  before the *Daubert* hearing can be heard because of the

10:12  23  scheduling realities that were indicated by Ms. Hurst.

10:12  24          THE COURT:  And I'm not -- here's what I'm

10:12  25  hearing:  That we're not going to have a *Daubert* hearing

10:12    1    concerning Mr. Wagner before he takes the stand.

10:12    2         MS. HURST:  Well, Your Honor, so, we were abiding

10:12    3    by Court's instruction that these had to be at the same

10:12    4    time.  And if that's the case, then -- we can't get Mr.

10:12    5    Malackowski here next weekend, but our first preference

10:13    6    would be -- first of all, I don't think Mr. Wagner is going

10:13    7    on next week.

10:13    8         We've got Tuesday, Susanna Kuemmerle for Tuesday.

10:13    9         THE COURT:  Well, just a moment.

10:13   10         MS. HURST:  So it's --

10:13   11         THE COURT:  Just a minute.

10:13   12         Today is the 15th.  There's no time left for

10:13   13    Mattel, unless he testifies, in reality, by the 25th.

10:13   14         MS. HURST:  They're not gonna be taking all those

10:13   15    hours.  So, by my calculation, Your Honor, there's 18 Court

10:13   16    hours this week, six of which are gonna be us putting on

10:13   17    Mr. Larian, for sure for another day.  Okay.

10:13   18         THE COURT:  I'm just talking about Mattel's time

10:13   19    now.

10:13   20         MS. HURST:  I understand.  But there's 42 trial

10:13   21    hours in the next two weeks.  If you assume about a

10:13   22    two-to-one ratio, there's no way that he's gonna get on.

10:13   23         THE COURT:  I see.  So they'll have time, then,

10:13   24    the following week, the first week of March, obviously,

10:13   25    because some significant amount of time -- let me say it a

| | | |
|---|---|---|
| 10:14 | 1 | different way. |
| 10:14 | 2 | This isn't straight Mattel time that's going to be |
| 10:14 | 3 | used. |
| 10:14 | 4 | MS. HURST:  Exactly. |
| 10:14 | 5 | THE COURT:  And you've got at least another day |
| 10:14 | 6 | with Mr. Larian? |
| 10:14 | 7 | MS. HURST:  Right.  And Mr. Overland's going to |
| 10:14 | 8 | have time with all the Mexico witnesses, so it's, at most, |
| 10:14 | 9 | probably a two-to-one ratio. |
| 10:14 | 10 | THE COURT:  As long as you're both comfortable, |
| 10:14 | 11 | that's acceptable. |
| 10:14 | 12 | MS. HURST:  Okay. |
| 10:14 | 13 | THE COURT:  Therefore, I'll set up the Court |
| 10:14 | 14 | resources, then, for Saturday, February 26th; is that |
| 10:14 | 15 | correct? |
| 10:14 | 16 | MR. ZELLER:  Yes. |
| 10:14 | 17 | MS. HURST:  Yes. |
| 10:14 | 18 | THE COURT:  Okay.  Now, just a moment. |
| 10:14 | 19 | Kathy, I need to talk to Milli, and I'm going to |
| 10:14 | 20 | go down right now. |
| 10:14 | 21 | And Debbie -- Jane, Deborah, Sharon, Maria -- I'm |
| 10:14 | 22 | going to need a court reporter or more than one court |
| 10:14 | 23 | reporter on February 26th. |
| 10:14 | 24 | I would like, though, to limit access to the |
| 10:15 | 25 | building.  And I would like your agreement that only the |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9961   Filed 02/17/11   Page 28 of 48   Page ID #:301210
CV 04-9049 DOC - 2/15/2011 - Status Conf., Volume 1 of 3

28

| | | |
|---|---|---|
| 10:15 | 1 | essential people are here for that hearing so that I don't |
| 10:15 | 2 | have to bring in the CSO's.  Otherwise, I've got to do this |
| 10:15 | 3 | at night.  And if I go to nighttime hours, your trial |
| 10:15 | 4 | counsel aren't going to hold up.  That's my concern.  And |
| 10:15 | 5 | I'm trying to have your trial counsel hold up on both sides. |
| 10:15 | 6 | But I'm going to insist that they're here for those |
| 10:15 | 7 | hearings, and I'm going to insist that they are the ones |
| 10:15 | 8 | doing the questioning at those hearings. |
| 10:15 | 9 | So this isn't deposition, in other words.  This is |
| 10:15 | 10 | a *Kumho/Daubert*.  So either Mr. Price, if you're taking on |
| 10:15 | 11 | the expert, or Mr. Quinn, and it doesn't have to be both you |
| 10:15 | 12 | gentlemen. |
| 10:15 | 13 | If you're taking on the expert in |
| 10:15 | 14 | cross-examination, Mr. McConville or Ms. Keller, it doesn't |
| 10:15 | 15 | have to be both of you, when Wagner is on the stand.  But |
| 10:15 | 16 | then, in the afternoon, when Mr. Malackowski is on the |
| 10:16 | 17 | stand, then I need the lead trial counsel on direct and |
| 10:16 | 18 | cross for the afternoon session.  And you may decide to |
| 10:16 | 19 | trade off.  So you work that out.  But this is one area that |
| 10:16 | 20 | I want lead trial counsel to do the questioning.  This is |
| 10:16 | 21 | not depositional. |
| 10:16 | 22 | All right.  How long would you like?  Because it |
| 10:16 | 23 | will be a co-equal amount of time on direct and cross for |
| 10:16 | 24 | these experts.  And I remind you this is not a depositional |
| 10:16 | 25 | hearing. |

CV 04-9049 DOC - 2/15/2011 - Status Conf., Volume 1 of 3

29

| | | |
|---|---|---|
| 10:16 | 1 | MS. KELLER:  Your Honor, does that include |
| 10:16 | 2 | testimony and argument or just the testimony? |
| 10:16 | 3 | THE COURT:  Just the testimony, not the argument. |
| 10:16 | 4 | That doesn't -- |
| 10:16 | 5 | MS. KELLER:  Your Honor, we think a couple of |
| 10:16 | 6 | hours would be fine. |
| 10:16 | 7 | THE COURT:  I was thinking two also, but let me |
| 10:16 | 8 | hear from Mattel. |
| 10:16 | 9 | MR. ZELLER:  That was the number we had in mind, |
| 10:16 | 10 | as well. |
| 10:17 | 11 | THE COURT:  We have our first agreement in the |
| 10:17 | 12 | entire case. |
| 10:17 | 13 | MR. ZELLER:  We do. |
| 10:17 | 14 | THE COURT:  All right.  Now, how do I divide that |
| 10:17 | 15 | two hours? |
| 10:17 | 16 | In other words, Mr. Quinn, are you going to take |
| 10:17 | 17 | Malackowski? |
| 10:17 | 18 | MR. QUINN:  Actually, we have spoken about that, |
| 10:17 | 19 | but Mr. Price and I will split those two up. |
| 10:17 | 20 | THE COURT:  Okay. |
| 10:17 | 21 | MR. QUINN:  What I was assuming is that we'd each |
| 10:17 | 22 | do up to an hour of direct and an hour of cross on each |
| 10:17 | 23 | witness for a grand total of four hours for all *Dauberts*. |
| 10:17 | 24 | THE COURT:  That's what I was thinking, also. |
| 10:17 | 25 | Does that work for MGA? |

10:17   1          MS. KELLER:  May Ms. Hurst address this,
10:17   2   Your Honor?
10:17   3          MR. McCONVILLE:  We missed it, Your Honor.  What
10:17   4   was the proposal?
10:17   5          THE COURT:  They thought an hour on direct and an
10:17   6   hour on cross for each of the witnesses.
10:17   7          MS. HURST:  We know Mr. Machado's counsel has
10:17   8   questions for Mr. Wagner as well, so we may need, say, an
10:17   9   hour and 15 on cross for -- or direct, whatever you want to
10:17  10   call it.
10:17  11          THE COURT:  Okay.  Then an hour and 15 on direct.
10:18  12          So do we want two and a half hours, then --
10:18  13          MR. QUINN:  Fine.
10:18  14          THE COURT:  -- to be certain?  So it's fair, to be
10:18  15   certain, hour and 15 minutes per side; is that acceptable?
10:18  16          MS. HURST:  Sure.
10:18  17          THE COURT:  Okay.  So, Debbie, we'll be starting
10:18  18   at --
10:18  19          What time do you want to start on that day?
10:18  20          In other words, I need to get court reporters
10:18  21   here.  What time would you like to start that day?  7:00?
10:18  22   8:00?
10:18  23          MS. HURST:  I think since Mr. Malackowski is
10:18  24   coming off that cruise to be here at the end of the week, if
10:18  25   we could start at 9:00.

DEBBIE GALE, U.S. COURT REPORTER

| | |
|---|---|
| 10:18 | 1 |
| 10:18 | 2 |
| 10:18 | 3 |
| 10:18 | 4 |
| 10:18 | 5 |

10:18   1          THE COURT:  Why don't we do this:  Why don't we
10:18   2   start at 8:00 o'clock with Mr. Wagner.  Let's complete that.
10:18   3   Then you can have a nice lunch; you can discuss it amongst
10:18   4   yourselves.  And then let's start with Malackowski in the
10:18   5   afternoon.
10:18   6          Is that acceptable?
10:18   7          MS. HURST:  Yes.
10:18   8          THE COURT:  'Cause Wagner's going first, so let's
10:18   9   take him first.  Hour and 15 minutes on direct and cross.
10:18  10          No redirect?  No recross?
10:19  11          MS. HURST:  Is the party sponsoring the witness
10:19  12   gonna put 'em on first?  Or are we gonna do this like
10:19  13   it's --
10:19  14          THE COURT:  I thought that this is what you were
10:19  15   discussing.  I thought I was leaving all this to you.  And
10:19  16   now I'm starting to wing it, believing you'd worked all this
10:19  17   out.
10:19  18          I'm going to step off the bench for a moment,
10:19  19   because I thought this was what you were deciding.  And I
10:19  20   didn't know if that included cross or redirect, so I'm gonna
10:19  21   go take another recess, and we'll do it by the numbers.
10:19  22          I really don't care, Ms. Hurst, as long as you
10:19  23   reach some agreement.  I don't care.  I don't care if you
10:19  24   take four hours apiece or one hour apiece, but reach an
10:19  25   agreement.

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 2/15/2011 - Status Conf., Volume 1 of 3

32

| | | |
|---|---|---|
| 10:19 | 1 | MS. HURST:  Thank you, Your Honor. |
| 10:19 | 2 | THE COURT:  Okay? |
| 10:19 | 3 | MR. ZELLER:  If I may just -- |
| 10:19 | 4 | THE COURT:  No, you may not.  You two talk for |
| 10:19 | 5 | just a moment.  This is a waste of time. |
| 10:19 | 6 | *(Pause in the proceedings at 10:10 a.m.)* |
| 10:19 | 7 | *(Proceedings resumed at 11:05 a.m.)* |
| 10:19 | 8 | *(Outside the presence of the jury.)* |
| 10:19 | 9 | THE COURT:  All right.  We're on the record.  And |
| 11:05 | 10 | all counsel are present -- is Mr. Zeller present? |
| 11:05 | 11 | MR. QUINN:  He's being summoned, Your Honor. |
| 11:05 | 12 | THE COURT:  Great.  Thank you very much, |
| 11:05 | 13 | Mr. Quinn. |
| 11:07 | 14 | All right.  Then we're on the record.  All counsel |
| 11:07 | 15 | are present.  The jury's not present. |
| 11:07 | 16 | And, Counsel, we'd suggested a *Kumho/Daubert* |
| 11:08 | 17 | hearing that would take place hopefully on a weekend, |
| 11:08 | 18 | simultaneous -- well, not simultaneous, but the same day. |
| 11:08 | 19 | And the date that we're choosing is? |
| 11:08 | 20 | MS. HURST:  February 26th. |
| 11:08 | 21 | THE COURT:  Okay.  My Court administrator is here, |
| 11:08 | 22 | and I'm going to ask that the building -- that you stipulate |
| 11:08 | 23 | that the building not be opened for the public; that it's |
| 11:08 | 24 | going to be counsel who are participating on that day, and |
| 11:08 | 25 | the expert. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 2/15/2011 - Status Conf., Volume 1 of 3

33

| | | |
|---|---|---|
| 11:08 | 1 | Would that be acceptable to MGA? |
| 11:08 | 2 | MS. HURST:  Yes, Your Honor. |
| 11:08 | 3 | Could we have maybe one or two extra of our |
| 11:08 | 4 | lawyers who have been working on the damages case present as |
| 11:08 | 5 | well? |
| 11:08 | 6 | THE COURT:  Yes.  But I'd like to know who they |
| 11:08 | 7 | are.  I want to keep the inflow into the building at a |
| 11:08 | 8 | minimum. |
| 11:08 | 9 | MS. HURST:  Will do. |
| 11:08 | 10 | THE COURT:  Is that acceptable to Mattel, with the |
| 11:08 | 11 | same courtesy afforded, that if you have associates who have |
| 11:08 | 12 | been working on the damages portion, Mr. Price, Mr. Quinn, |
| 11:08 | 13 | that they're invited also? |
| 11:08 | 14 | MR. QUINN:  Yes. |
| 11:08 | 15 | THE COURT:  But I'd like to know who they are. |
| 11:08 | 16 | I'd like to keep that at a minimum. |
| 11:09 | 17 | Hours?  In other words, how many hours, how is |
| 11:09 | 18 | that be decided with each expert? |
| 11:09 | 19 | MS. HURST:  We agreed to an hour and 15 minutes |
| 11:09 | 20 | per side.  With each expert, the sponsoring party goes |
| 11:09 | 21 | first, and it can be used however the parties deem fit. |
| 11:09 | 22 | THE COURT:  So direct and redirect, if you choose, |
| 11:09 | 23 | and cross and recross? |
| 11:09 | 24 | MS. HURST:  Yes. |
| 11:09 | 25 | THE COURT:  And once you've hit that hour and 15 |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:09 | 1 | minutes, that's the time period? |
| 11:09 | 2 | MS. HURST:  Yes. |
| 11:09 | 3 | THE COURT:  Acceptable to MGA? |
| 11:09 | 4 | MS. HURST:  Yes. |
| 11:09 | 5 | THE COURT:  Acceptable to Mattel? |
| 11:09 | 6 | MR. PRICE:  Yes. |
| 11:09 | 7 | THE COURT:  Mr. Price, thank you. |
| 11:09 | 8 | What time would you like to start?  8:00 o'clock? |
| 11:09 | 9 | Excellent.  Let's start at 8:00. |
| 11:09 | 10 | All right.  That way you can have some time in |
| 11:09 | 11 | between just to sort out the morning testimony.  And that |
| 11:09 | 12 | way, we can start with the other expert, and get them both |
| 11:09 | 13 | on their way. |
| 11:09 | 14 | Which expert will go first?  I would think Mattel, |
| 11:09 | 15 | only because Mr. Wagner would be the first up in your case, |
| 11:09 | 16 | but -- |
| 11:09 | 17 | MR. QUINN:  We'll go first, Your Honor. |
| 11:09 | 18 | THE COURT:  Is that acceptable, Mr. Quinn? |
| 11:09 | 19 | Mr. Price? |
| 11:09 | 20 | All right.  Acceptable to MGA? |
| 11:09 | 21 | MS. HURST:  Yes. |
| 11:10 | 22 | MR. QUINN:  I will say, Your Honor, there is a |
| 11:10 | 23 | chance we may call Wagner before that Saturday.  And we -- |
| 11:10 | 24 | just to be clear on that. |
| 11:10 | 25 | THE COURT:  Well, then that -- if we do that, what |

| | | |
|---|---|---|
| 11:10 | 1 | it does is it negates the reason for a *Kuhmo/Daubert* hearing |
| 11:10 | 2 | because we're hearing his testimony as we go. |
| 11:10 | 3 | MS. HURST:  Our biggest problem with that is that |
| 11:10 | 4 | he said at his last deposition that he was gonna issue |
| 11:10 | 5 | another report, and he hasn't done that yet.  So we'll need |
| 11:10 | 6 | to insist that we get that report. |
| 11:10 | 7 | THE COURT:  Is he going to issue another report? |
| 11:10 | 8 | Do you know Mr. Quinn? |
| 11:10 | 9 | MR. QUINN:  There is a supplemental report |
| 11:10 | 10 | that's -- I know there's a draft of it, so, yes. |
| 11:10 | 11 | THE COURT:  When will it be here? |
| 11:10 | 12 | MR. QUINN:  We could -- after lunch we can -- |
| 11:10 | 13 | THE COURT:  Can you? |
| 11:10 | 14 | MR. QUINN:  -- nail it down. |
| 11:10 | 15 | THE COURT:  I'd appreciate it. |
| 11:10 | 16 | All right.  Now, I want to come back to this |
| 11:10 | 17 | incident in the Court that occurred on Friday.  And I had |
| 11:10 | 18 | hoped to resolve this a different way and informally, but |
| 11:10 | 19 | that hasn't occurred. |
| 11:10 | 20 | I'm going to ask the MIS technician, Jonathon, to |
| 11:10 | 21 | help the Court.  And I want to replay the tape for just a |
| 11:11 | 22 | moment for both parties. |
| 11:11 | 23 | *(Audio recording played.)* |
| 11:11 | 24 | THE COURT:  Now play it again, Jonathon.  And turn |
| 11:11 | 25 | up the volume a little bit. |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 9961   Filed 02/17/11   Page 36 of 48   Page ID #:301218
CV 04-9049 DOC - 2/15/2011 - Status Conf., Volume 1 of 3

36

| | |
|---|---|
| 11:11 | 1 |

11:11   1          *(Audio recording replayed.)*

11:11   2          THE COURT:  All right.  Now, on Saturday -- during

11:11   3   our Saturday session, the court reporter, Debbie, was kind

11:11   4   enough to come up and play that tape, I think, for Mr. --

11:11   5          MR. QUINN:  For all of us, actually.

11:11   6          THE COURT:  Mr. Price wasn't here.

11:11   7          MR. QUINN:  Mr. Price wasn't here, and McConville

11:11   8   wasn't.

11:11   9          THE COURT:  Yeah.  But Mr. Quinn, Mr. Zeller,

11:12   10  Ms. Hurst and --

11:12   11         MS. KELLER:  I was here, Your Honor.

11:12   12         THE COURT:  -- Ms. Keller.

11:12   13         And Mr. McConville was not present.

11:12   14         The words that can clearly be heard by Mr. Larian

11:12   15  is -- or are, "I will never settle with you, son of a

11:12   16  bitch."  And in the background, there's a voice that says --

11:12   17  that states, "I have it on tape."

11:12   18         And I think I'd had an informal discussion with

11:12   19  all counsel requesting who that person might be.  The Court

11:12   20  had formed an impression and has some videotapes of the

11:12   21  Court that it's ordered preserved.  And, unfortunately, that

11:12   22  it wasn't forthcoming to the Court on either Monday or

11:12   23  Tuesday.

11:12   24         So I'm going to proceed now in a more formal way

11:12   25  and discern, by asking each of you audio gentlemen, first,

CV 04-9049 DOC - 2/15/2011 - Status Conf., Volume 1 of 3

37

| | | |
|---|---|---|
| 11:13 | 1 | to return first to court.  I appreciate it.  And I'm going |
| 11:13 | 2 | to be calling each of you to the stand in just a moment. |
| 11:13 | 3 | But I'm going to start with Ken, from Mattel.  If |
| 11:13 | 4 | you would be kind enough, sir, to stand for just a moment. |
| 11:13 | 5 | Would you raise your right hand. |
| 11:13 | 6 | **KEN KOTARSKI, MATTEL'S TECHNICIAN, SWORN** |
| 11:13 | 7 | THE WITNESS:  I do. |
| 11:13 | 8 | THE COURT:  Thank you, sir. |
| 11:13 | 9 | Would you please take the witness stand. |
| 11:13 | 10 | **EXAMINATION BY THE COURT** |
| 11:13 | 11 | THE COURT:  I have just a few questions for you at |
| 11:13 | 12 | this time, sir. |
| 11:13 | 13 | Is it your voice that we've heard? |
| 11:13 | 14 | THE WITNESS:  I'd have to hear it again. |
| 11:13 | 15 | THE COURT:  Okay.  And I want you to take your |
| 11:13 | 16 | time. |
| 11:13 | 17 | *(Audio replayed.)* |
| 11:13 | 18 | THE WITNESS:  One more time.  I'm sorry. |
| 11:13 | 19 | THE COURT:  Well, what I'm going to do now is I'm |
| 11:14 | 20 | going to supply a pair of earphones for you, and I want you |
| 11:14 | 21 | to listen off of the original, also, as well as the disk. |
| 11:14 | 22 | And I want you to listen to that as many times as you'd |
| 11:14 | 23 | like. |
| 11:14 | 24 | THE WITNESS:  Sure. |
| 11:15 | 25 | THE COURT:  Okay. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 2/15/2011 - Status Conf., Volume 1 of 3

38

| | | |
|---|---|---|
| 11:15 | 1 | And would you state your full name? |
| 11:15 | 2 | THE WITNESS:  Sure.  It's Ken Kotarski. |
| 11:15 | 3 | K-O-T-A-R-S-K-I. |
| 11:15 | 4 | THE COURT:  Thank you. |
| 11:15 | 5 | And if you would like to step down, there's a pair |
| 11:15 | 6 | of ear phones, and I want you to listen to that tape as many |
| 11:15 | 7 | times as you'd like, sir. |
| 11:17 | 8 | *(The witness complies.)* |
| 11:17 | 9 | *(Witness retakes the stand.)* |
| 11:17 | 10 | THE COURT:  All right. |
| 11:17 | 11 | Sir, is that your voice? |
| 11:17 | 12 | THE WITNESS:  It does appear to be my voice, yes. |
| 11:17 | 13 | THE COURT:  I'm sorry? |
| 11:17 | 14 | THE WITNESS:  It does appear to be my voice. |
| 11:17 | 15 | THE COURT:  Is that your voice? |
| 11:17 | 16 | THE WITNESS:  It's hard to tell a hundred percent, |
| 11:17 | 17 | but I have a pretty distinctive voice, and it sounds like my |
| 11:17 | 18 | voice. |
| 11:17 | 19 | THE COURT:  Is that your voice? |
| 11:17 | 20 | THE WITNESS:  It does appear to be my voice.  I'm |
| 11:17 | 21 | not a hundred percent sure, but it sounds like it.  It |
| 11:17 | 22 | sounds distinctively like my voice. |
| 11:17 | 23 | THE COURT:  I want you to go down and listen to it |
| 11:17 | 24 | again as many times as you'd like to, because I don't wish |
| 11:18 | 25 | to go any further, if I don't have to, with calling other |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 2/15/2011 - Status Conf., Volume 1 of 3

39

| | | |
|---|---|---|
| 11:18 | 1 | associates or attorneys to the stand. |
| 11:18 | 2 | So I want you to step down, and take your time and |
| 11:18 | 3 | listen to it as many times as you would like to. |
| 11:18 | 4 | *(Witness complies.)* |
| 11:18 | 5 | THE COURT:  The record should also reflect that |
| 11:18 | 6 | we've preserved videotapes of that particular day.  And I've |
| 11:18 | 7 | ordered that the Marshal's office, Brian, keep those in |
| 11:18 | 8 | custody. |
| 11:19 | 9 | *(Witness resumes the stand.)* |
| 11:19 | 10 | THE COURT:  Thank you. |
| 11:19 | 11 | Is that your voice? |
| 11:20 | 12 | THE WITNESS:  It does sound like my voice, yes, |
| 11:20 | 13 | Your Honor. |
| 11:20 | 14 | THE COURT:  Why were you taping? |
| 11:20 | 15 | THE WITNESS:  I was not taping, Your Honor.  I |
| 11:20 | 16 | have not taped anything in this proceeding at all. |
| 11:20 | 17 | THE COURT:  You've had a wifi unit capable of |
| 11:20 | 18 | streaming that you have shown and discussed with our MIS |
| 11:20 | 19 | expert, Jonathon, sitting here. |
| 11:20 | 20 | Why do you have that wifi unit with you in court? |
| 11:20 | 21 | THE WITNESS:  It's for all the parties on the |
| 11:20 | 22 | Mattel side to have e-mail access. |
| 11:21 | 23 | THE COURT:  Have you been streaming? |
| 11:21 | 24 | THE WITNESS:  I have not. |
| 11:21 | 25 | THE COURT:  If I told you that we had picked up in |

| | | |
|---|---|---|
| 11:21 | 1 | this building streaming to a device on another floor that |
| 11:21 | 2 | comes back to you, would you have an explanation for that |
| 11:21 | 3 | for the Court? |
| 11:21 | 4 | THE WITNESS:  I would not. |
| 11:21 | 5 | THE COURT:  Okay.  What were you referring to when |
| 11:21 | 6 | you said, "I have it on tape"? |
| 11:21 | 7 | THE WITNESS:  I really -- I -- listening to it |
| 11:21 | 8 | five or six times -- |
| 11:21 | 9 | THE COURT:  Listen to me very carefully now.  Take |
| 11:21 | 10 | your time. |
| 11:21 | 11 | And as I'd counseled counsel for both sides on |
| 11:21 | 12 | Saturday, and I'll repeat to you, that sometimes we just |
| 11:22 | 13 | make a mistake.  Handled informally with candidness does not |
| 11:22 | 14 | cause the Court any problem.  I'd given the parties Monday |
| 11:22 | 15 | and received no contact, and gave -- was going to give the |
| 11:22 | 16 | parties until Tuesday at 5:00 o'clock and not make any |
| 11:22 | 17 | statement to see if there was some kind of explanation, even |
| 11:22 | 18 | informally, to the Court. |
| 11:22 | 19 | Since that wasn't forthcoming and both technicians |
| 11:22 | 20 | have broken down their equipment, it's now moved it to a |
| 11:22 | 21 | little bit more formal process, which I'd hoped would be |
| 11:22 | 22 | resolved differently. |
| 11:23 | 23 | What were you referring to when you said, "I have |
| 11:23 | 24 | it on tape"? |
| 11:23 | 25 | THE WITNESS:  I have no recollection of actually |

| | | |
|---|---|---|
| 11:23 | 1 | saying that, but I was previously having a conversation with |
| 11:23 | 2 | Mr. Zeller about some previous videotape deposition |
| 11:23 | 3 | testimony -- |
| 11:23 | 4 | THE COURT:  Would you be kind enough to go down |
| 11:23 | 5 | and listen to the tape again.  Exit the witness stand and |
| 11:23 | 6 | listen to the tape gain. |
| 11:23 | 7 | THE WITNESS:  With all due respect, Your Honor, I |
| 11:23 | 8 | don't think that will help.  I heard it very, you know, |
| 11:23 | 9 | clearly several times. |
| 11:24 | 10 | THE COURT:  The first part of the answer I heard |
| 11:24 | 11 | is, "I have no recollection of actually saying that, but I |
| 11:24 | 12 | was previously having a conversation with Mr. Zeller about |
| 11:24 | 13 | some previous videotape deposition testimony." |
| 11:24 | 14 | This will be the last time I ask you this |
| 11:24 | 15 | question:  Why did you make that statement? |
| 11:24 | 16 | THE WITNESS:  I don't know, Your Honor.  I do not |
| 11:24 | 17 | remember making that statement. |
| 11:24 | 18 | THE COURT:  Have you audio taped any portion of |
| 11:24 | 19 | this proceeding? |
| 11:24 | 20 | THE WITNESS:  I have not. |
| 11:24 | 21 | THE COURT:  Have you streamed any portion of this |
| 11:24 | 22 | proceeding? |
| 11:24 | 23 | THE WITNESS:  I have not.  I have no ability to |
| 11:24 | 24 | record here. |
| 11:24 | 25 | THE COURT:  Why do you have a wifi device with |

| | | |
|---|---|---|
| 11:24 | 1 | you, once again? |
| 11:24 | 2 | THE WITNESS:  That's for e-mail access for myself |
| 11:24 | 3 | and the other Mattel attorneys and paralegals. |
| 11:25 | 4 | THE COURT:  You and the other technician are |
| 11:25 | 5 | present. |
| 11:25 | 6 | You understand that there's no streaming in the |
| 11:25 | 7 | federal courthouse, both of you gentlemen? |
| 11:25 | 8 | THE WITNESS:  Yes, sir. |
| 11:25 | 9 | THE COURT:  Second, if there was streaming going |
| 11:25 | 10 | on, it would give the other side a distinct advantage in |
| 11:25 | 11 | terms of their preparation. |
| 11:25 | 12 | Each of you gentlemen understand that? |
| 11:25 | 13 | THE WITNESS:  Yes, sir. |
| 11:25 | 14 | MGA TECHNICIAN:  Yes. |
| 11:25 | 15 | THE COURT:  Each of you gentlemen understand that |
| 11:25 | 16 | the courtesy afforded to each of you, as technicians, has |
| 11:25 | 17 | been to allow a 60-inch screen to come into court, to change |
| 11:25 | 18 | the court significantly from that of another trial or |
| 11:26 | 19 | proceeding, and that it was done out of a courtesy to |
| 11:26 | 20 | counsel because of their representations that they need the |
| 11:26 | 21 | ability to show these e-mails and documents in court for the |
| 11:26 | 22 | presentation of their case. |
| 11:26 | 23 | Each of you gentlemen understand that? |
| 11:26 | 24 | THE WITNESS:  Yes, sir. |
| 11:26 | 25 | THE COURT:  And for the record, the other |

| | | |
|---|---|---|
| 11:26 | 1 | technician's name is? |
| 11:26 | 2 | MGA TECHNICIAN:  Mike Stovall. |
| 11:26 | 3 | THE COURT:  Mike Stovall. |
| 11:26 | 4 | Thank you. |
| 11:26 | 5 | I think I talked to each counsel informally and |
| 11:26 | 6 | said that, frankly, the Court wasn't inclined, initially, to |
| 11:26 | 7 | even put equipment or enhancing equipment, other than the |
| 11:26 | 8 | ELMO, at each of counsels' disposal; and, quite frankly, for |
| 11:26 | 9 | a while, I'd considered not putting either of you gentlemen |
| 11:26 | 10 | in court, and counsel could simply rely on the ELMO, which |
| 11:27 | 11 | is standard for the federal courthouse.  So I think it's |
| 11:27 | 12 | been a tremendous courtesy and a tremendous help to both |
| 11:27 | 13 | parties along the way to provide to each of lead counsel on |
| 11:27 | 14 | the case the ability to show these documents, as they go. |
| 11:27 | 15 | Obviously, this Court's concerned.  I don't think |
| 11:27 | 16 | the appropriate remedy is to take the equipment from the |
| 11:27 | 17 | respective parties at this time for the following reasons: |
| 11:27 | 18 | First, Mattel would have the advantage of having a |
| 11:27 | 19 | document presenter, where critical documents that they |
| 11:27 | 20 | wanted to rely upon have already been shown to the jury. |
| 11:27 | 21 | Since this is, obviously, not MGA's "voice," MGA would be |
| 11:28 | 22 | unnecessarily punished as you move towards your case not |
| 11:28 | 23 | having co-equal ability to put these e-mails and documents |
| 11:28 | 24 | up on the screen. |
| 11:28 | 25 | Second, I don't think it would be appropriate to |

| | | |
|---|---|---|
| 11:28 | 1 | disadvantage one side this far into the case.  But there may |
| 11:28 | 2 | be other testimony about the wifi signals that have been |
| 11:28 | 3 | picked up in the courthouse, and I will probably summon |
| 11:28 | 4 | those persons after the trial so that there's no more |
| 11:29 | 5 | collateral issues during the trial. |
| 11:29 | 6 | Do you know of any reason, once again, why a wifi |
| 11:29 | 7 | signal traceable back to your, let's say "device," would be |
| 11:29 | 8 | picked up on another floor of this courthouse? |
| 11:29 | 9 | THE WITNESS:  I would assume that would be |
| 11:29 | 10 | impossible unless someone knows the password to my wifi |
| 11:29 | 11 | device. |
| 11:29 | 12 | THE COURT:  I'm going to ask you again.  I want to |
| 11:29 | 13 | be very certain. |
| 11:29 | 14 | Do you know of any reason why a wifi signal would |
| 11:29 | 15 | be picked up on another floor of this courthouse, traceable |
| 11:29 | 16 | back to your device? |
| 11:29 | 17 | THE WITNESS:  I have absolutely no reason. |
| 11:29 | 18 | THE COURT:  Okay. |
| 11:29 | 19 | Let me reinstruct both of you, then:  There is no |
| 11:30 | 20 | recording in the federal courthouse. |
| 11:30 | 21 | I'm not assuming this, but just in an abundance of |
| 11:30 | 22 | caution:  There's no streaming. |
| 11:30 | 23 | And I think that the wisest position that the |
| 11:30 | 24 | Court can be in at the present time is simply setting this |
| 11:30 | 25 | matter in abeyance for the present time until the jury has |

| | | |
|---|---|---|
| 11:30 | 1 | reached a verdict in this matter. |
| 11:30 | 2 | If the Court chooses to go farther at that time, |
| 11:30 | 3 | there may be additional witnesses who are called.  I think |
| 11:30 | 4 | we're -- in an abundance of caution, we'll just leave this |
| 11:30 | 5 | on the table for the present time. |
| 11:30 | 6 | But I'll hear from Mattel at this time and your |
| 11:30 | 7 | lead counsel, and I'll hear then from MGA. |
| 11:30 | 8 | MR. QUINN:  Your Honor, we understand the gravity |
| 11:30 | 9 | of the matter.  You know, we have listened to the tape |
| 11:31 | 10 | ourselves, as the Court knows, and thought hard about what |
| 11:31 | 11 | the origins of this could have been. |
| 11:31 | 12 | As we indicated to the Court on Saturday, it is |
| 11:31 | 13 | our recollection that Mr. Zeller had been having a dialogue |
| 11:31 | 14 | with Mr. Kotarski that day about whether Mr. Kotarski had on |
| 11:31 | 15 | tape, meaning videotape, deposition testimony relating to |
| 11:31 | 16 | the issue of whether Mr. Zeller had broached at depositions |
| 11:31 | 17 | the topics of relationships that Mr. Larian had had, and |
| 11:31 | 18 | that there had been back and forth between Mr. Zeller and |
| 11:31 | 19 | Mr. Kotarski on that subject. |
| 11:31 | 20 | It is our best recollection that, at that moment, |
| 11:31 | 21 | Mr. Kotarski was reporting to Mr. Zeller the results of his |
| 11:31 | 22 | search -- that he said that he had that testimony, |
| 11:31 | 23 | deposition testimony, that Mr. Zeller had been asking for on |
| 11:32 | 24 | tape, that he had located. |
| 11:32 | 25 | It seems to us also from listening to the |

| 11:32 | 1 | recording -- and I have to say, this seems -- I don't know |
|---|---|---|

11:32  1   recording -- and I have to say, this seems -- I don't know

11:32  2   if this has been enhanced, or rather, it's just that the

11:32  3   play back system is better here.  We can hear it better here

11:32  4   than we could downstairs on Saturday.  In listening, to

11:32  5   us -- it seemed, to us, and it seemed, I think, to all

11:32  6   counsel present who listened, including counsel for MGA, as

11:32  7   if the voices of Mr. Larian and Mr. Kotarski -- if that is

11:32  8   Mr. Kotarski -- actually overlapped, which suggested that

11:32  9   Mr. Kotarski statement's could not have been in response to

11:32  10  Mr. Larian's statement.

11:32  11          In any event -- I mean, we do understand the

11:32  12  prescription *(sic)* on recording of any type in federal

11:32  13  court, and take that very seriously.  I will share with the

11:32  14  Court that we have worked with Mr. Kotarski for many, many

11:32  15  years and done many trials with him, and have found him

11:32  16  always consistently to be a highly ethical professional at

11:33  17  what he does.

11:33  18          THE COURT:  Okay.  Thank you.

11:33  19          MGA.

11:33  20          MS. KELLER:  Your Honor, I'm not sure we can

11:33  21  really take a position about what happened because we don't

11:33  22  know.  I will agree that, in listening to the tape, it did

11:33  23  appear to us that there was a little overlap between

11:33  24  Mr. Larian's statement and Mr. Kotarski's statement.  Beyond

11:33  25  that, we don't -- we don't know what it was about anymore

| | | |
|---|---|---|
| 11:33 | 1 | than -- anymore than the Court does. |
| 11:33 | 2 | THE COURT:  Okay. |
| 11:33 | 3 | MS. KELLER:  But we do want to add, on a different |
| 11:33 | 4 | issue, that both parties in here have had wifi access.  And |
| 11:33 | 5 | we have, as well as Mattel -- we have not streamed anything. |
| 11:33 | 6 | But have been e-mailing, as I'm sure Mattel has.  For |
| 11:33 | 7 | example, we e-mail across the street to our office there and |
| 11:33 | 8 | back, but nothing has been streamed, nor -- I'm not even |
| 11:33 | 9 | sure we have the capability to do so.  But if we did, it |
| 11:34 | 10 | hasn't happened. |
| 11:34 | 11 | THE COURT:  Okay.  Mr. Overland? |
| 11:34 | 12 | MR. OVERLAND:  I have nothing, Your Honor. |
| 11:34 | 13 | THE COURT:  All right. |
| 11:34 | 14 | Mr. Kotarski, thank you very much.  You may step |
| 11:34 | 15 | down. |
| 11:34 | 16 | *(Witness steps down.)* |
| 11:34 | 17 | THE WITNESS:  Thank you. |
| 11:34 | 18 | THE COURT:  All right.  Let me take a recess for |
| 11:34 | 19 | just a few moments, and I'll be back with you in just a |
| 11:34 | 20 | minute. |
| 11:34 | 21 | *(Recess held at 11:34 a.m.)* |
| 11:57 | 22 | *(Further proceedings reported by Jane Sutton* |
| 11:57 | 23 | *Rule in Volume II.)* |
| 11:57 | 24 | -oOo- |
| 11:57 | 25 | |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 2/15/2011 - Status Conf., Volume 1 of 3

48

| | | |
|---|---|---|
| 11:57 | 1 | -oOo- |
| 11:57 | 2 | |
| 11:57 | 3 | CERTIFICATE |
| 11:57 | 4 | |
| 11:57 | 5 | I hereby certify that pursuant to Section 753, |
| 11:57 | 6 | Title 28, United States Code, the foregoing is a true and |
| 11:57 | 7 | correct transcript of the stenographically reported |
| 11:57 | 8 | proceedings held in the above-entitled matter and that the |
| 11:57 | 9 | transcript page format is in conformance with the |
| 11:57 | 10 | regulations of the Judicial Conference of the United States. |
| 11:57 | 11 | |
| 11:57 | 12 | Date:  February 15, 2011 |
| 11:57 | 13 | |
| 11:57 | 14 | |
| 11:57 | 15 | _____ |
| 11:57 | 16 | DEBBIE GALE, U.S. COURT REPORTER |
| | | CSR NO. 9472, RPR |
| 11:57 | 17 | |
| 09:26 | 18 | |
| 09:26 | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

DEBBIE GALE, U.S. COURT REPORTER