QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de C.V., <br><br>          Plaintiff, <br><br> vs. <br><br> MGA ENTERTAINMENT, INC., a California corporation, et al., <br><br>          Defendant. <br><br> AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx) <br> Consolidated with <br> Case No. CV 04-09059 <br> Case No. CV 05-02727 <br><br> Hon. David O. Carter <br><br> **MATTEL'S TRIAL BRIEF ON RIGHT TO MONETARY RELIEF FOR TIME PERIOD AFTER PUBLIC DISCLOSURE OF TRADE SECRETS** <br><br> Hearing Date:      TBD <br> Time:              TBD <br> Place:             Courtroom 9D <br><br> Discovery Cut-off:     October 4, 2010 <br> Pre-trial Conference:  January 4, 2011 <br> Trial:                 January 11, 2011 |

00505.07975/3958125.8

MATTEL'S TRIAL BRIEF ON RIGHT TO MONETARY RELIEF FOR
TIME PERIOD AFTER PUBLIC DISCLOSURE OF TRADE SECRETS
CASE NO. CV 04-9049 DOC (RNBx)

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

PROCEDURAL BACKGROUND ..............................................................................1

ARGUMENT .................................................................................................................3

I.   DISCLOSURE OF THE TRADE SECRETS BY A WRONGDOER DOES NOT LIMIT MONETARY RECOVERY TO A "HEAD START" PERIOD OR OTHERWISE. ........................................................3

II.   THE AUTHORITIES CITED IN MGA'S PROPOSED JURY INSTRUCTION ARE INAPPOSITE. ..............................................................7

III.   MGA'S PROPOSED JURY INSTRUCTION IS NOT A CORRECT STATEMENT OF THE LAW AND SHOULD BE REJECTED. ...................9

CONCLUSION..............................................................................................................10

00505.07975/3958105.4

-i-

MATTEL'S TRIAL BRIEF ON RIGHT TO MONETARY RELIEF FOR
TIME PERIOD AFTER PUBLIC DISCLOSURE OF TRADE SECRETS
CASE NO. CV 04-9049 DOC (RNBx)

# TABLE OF AUTHORITIES

Page

## Cases

BondPro Corp. v. Siemens Power Generation, Inc.,
    463 F.3d 702 (7th Cir. 2006) .......................................................................... 6

DVD Copy Control Ass'n, Inc. v. Bunner,
    31 Cal. 4th 864 (2003) ............................................................................... 4, 6

Group One, Ltd. v. Hallmark Cards, Inc.,
    254 F.3d 1041 (Fed. Cir. 2001) ...................................................................... 7

Imi-Tech Corp. v. Gagliani,
    691 F. Supp. 214 (S.D. Cal. 1987) ................................................................. 6

Kilbarr Corp. v. Bus. Sys. Inc.,
    679 F. Supp. 422 (D.N.J. 1988) ..................................................................... 5

Life Point Sys., Inc. v. Cargill, Inc.,
    No. C-93 20352 JW, 1997 U.S. Dist. LEXIS 22845 (N.D. Cal. Feb. 6, 1997) ..... 7

Molinaro v. Burnbaum,
    201 U.S.P.Q. 150 (D. Mass. 1978) ............................................................ 8, 9

RKK Holding Co. v. Sears, Roebuck & Co.,
    563 F. Supp. 2d 832 (N.D. Ill. 2008) .............................................................. 5

Rohm and Haas Co. v. Adco Chem. Co.,
    689 F.2d 424 (3d Cir. 1982) ........................................................................... 6

Russo v. Ballard Medical Prods.,
    550 F.3d 1004 (10th Cir. 2008) .............................................................. 3, 4, 7

Shellmar Prods. Co. v. Allen-Qualley Co.,
    87 F.2d 104 (7th Cir. 1936) ........................................................................... 6

Sokol Crystal Prods., Inc. v. DSC Commc'ns Corp.,
    15 F.3d 1427 (7th Cir. 1994) ....................................................................... 10

Syntex Ophthalmics, Inc. v. Tsuetaki,
    701 F.2d 677 (7th Cir. 1983) ...................................................................... 3, 6

Underwater Storage, Inc. v. U.S. Rubber Co.,
    371 F.2d 950 (D.C. Cir. 1966) ................................................................ 4, 5, 6

Winston Research Corp. v. Minnesota Min. & Mfg. Co.,
    350 F.2d 134 (9th Cir. 1965) ................................................................. 3, 7, 8

**Preliminary Statement**

This trial brief addresses a question that has been raised in two recent minute orders issued by the Court, and in colloquy with counsel over the course of recent proceedings: to what extent is Mattel's monetary remedy on its trade secret claim limited by disclosure of its trade secrets by MGA? The answer is not at all. Mattel's right to monetary relief on its trade secret claim is not cut off by the wrongful disclosure of its trade secrets by MGA. Were it otherwise, a wrongdoer could undermine the rights of the rightful owner with impunity simply by sharing the stolen secret more broadly. The more egregious the defendant's conduct, the more limited the plaintiff's remedies might would be. Disclosure may provide a defense for innocent third parties, who are free to use public information, and a limit on liability in certain cases where the plaintiff/rightful owner discloses the secret himself. In such cases, the post-disclosure remedy may (but need not necessarily) be calculated based on the wrongful head start given the misappropriator. But disclosure *by the misappropriator* does not limit the liability *of the misappropriator* for his wrongful disclosure or use. Such use is no less wrongful because it continues after disclosure.

A post-disclosure limitation on monetary relief to the "head start" period is not proper for a second and independent reason. No calculation measured in months or even years could begin to equal the continuing unfair advantage to MGA of being first to market "Bratz," particularly when, as this Court has noted, its apparent ownership of copyrighted works and trademarks associated with "Bratz" made "catching up" simply not possible. While there may be circumstances where a head start question must be submitted to the jury, the fact that the disclosure was done by MGA makes that unnecessary here.

**Procedural Background**

The remedy issues addressed in this trial brief have been raised in two recent orders of the Court. In its minute order dated February 9, 2011 ordering briefing on

-1-

00505.07975/3958105.4

MATTEL'S TRIAL BRIEF ON RIGHT TO MONETARY RELIEF FOR
TIME PERIOD AFTER PUBLIC DISCLOSURE OF TRADE SECRETS
CASE NO. CV 04-9049 DOC (RNBx)

MGA's motion for reconsideration of the Court's copyright preemption ruling, the Court asked the parties to "consider the interplay between the arguments in MGA's motion and the jury instruction proposed on page 156 of Docket 9620." (Dkt. 9836.)  That instruction is entitled "Trade Secret Misappropriation – No Damages After Public Disclosure Of Trade Secret," and its text is set forth in the footnote.[1]  As Mattel explained in its opposition, filed on February 16, 2011, to the motion for reconsideration, there is no interplay between MGA's arguments on reconsideration and its proposed jury instruction.  The Court's preemption ruling was correct and should be reaffirmed, irrespective of the issues presented by MGA's jury instruction.  The jury instruction should be rejected as an incorrect statement of the law, for reasons Mattel has articulated in objections filed on January 29, 2011 (Dkt. 9739, at 113-16) and will explain further below.

Following an informal discussion on February 12, 2011, the Court issued a second minute order addressing trade secret remedy issues.  (Dkt. 9877.)  In paragraph 2 of that order, identifying "subjects for further discussion," the Court stated:

---

[1] MGA proposes: "If you find that the defendant misappropriated a trade secret of the claimant that was publicly disclosed by someone other than the defendant, the claimant may recover damages for misappropriation only during the period in which the trade secret was still secret.  This is a limitation on the amount of damages that the claimant can be awarded under any theory of damages.  After a public disclosure of the claimant's trade secret, the defendant would not have enjoyed any commercial advantage it gained by misappropriation prior to the public disclosure.

In addition, if you find that the defendant misappropriated the claimant's trade secret, you must limit any damages to the amount of time it would have taken the defendant to independently develop its products without the use of the claimant's trade secret.  For example, if it would have taken the defendant an additional three months to develop a product without the use of the alleged trade secrets, the claimant's damages must be limited to that three month period."

MGA makes the argument that the jury should be instructed to restrict its consideration to "lead time" or "head start" damages. Courts have adhered to this rule in fashioning injunctive relief. See Winston Research Corp. v. Minnesota Min. & Mfg. Co., 350 F.2d 134, 142 (9th Cir. 1965). There is some precedent that the jury can be so instructed, though not in cases where the trade secret defendant was the first to disclose the product. See, e.g., Russo v. Ballard Medical Prods., 550 F.3d 1004, 1020 (10th Cir. 2008). Even assuming the trade secret owner would have used the trade secret, such a rule may not account for the continuing benefits of "first use" or "primacy" beyond just the head start over competition – e.g., the ability to claim intellectual property rights (trademarks and copyrights) in misappropriated product names and works, thereby restraining the rightful owner of the trade secret from ever fully realizing the benefits of the product concept, even after it is no longer a secret.

## Argument

### I. DISCLOSURE OF THE TRADE SECRETS BY A WRONGDOER DOES NOT LIMIT MONETARY RECOVERY TO A "HEAD START" PERIOD OR OTHERWISE.

The general rule that a wrongdoer should not be allowed to profit from its own wrongful act is applied in the trade secret context to mean that a misappropriator and its privies should not be permitted to assert their wrongful disclosure of a trade secret in order to limit the plaintiff's remedies for trade secret misappropriation. "To hold otherwise . . . would be to permit [the wrongdoer] to profit from their own wrong." Syntex Ophthalmics, Inc. v. Tsuetaki, 701 F.2d 677, 683 (7th Cir. 1983) (affirming grant of preliminary injunction after public disclosure of trade secret by defendant under Illinois law before UTSA) ("[A] wrongdoer who has made an unlawful disclosure of another's trade secret cannot assert that

publication to escape the protection of trade secret law."). As the Tenth Circuit recognized in <u>Russo</u>, imposing the full measure of an unjust enrichment remedy on the wrongdoer notwithstanding its disclosure is consistent with the "legitimate deterrent function" of such awards. <u>Russo v. Ballard Med. Prods.</u>, 550 F.3d 1004, 1021 (10th Cir. 2008).

The principle of preventing those who unlawfully use the trade secrets of others from profiting from their theft has been a consistent theme in the law both before and after the Uniform Trade Secret Act was passed. In <u>Underwater Storage, Inc. v. U.S. Rubber Co.</u>, 371 F.2d 950 (D.C. Cir. 1966), for example, the court explained:

> We do not believe that a misappropriator or his privies can "baptize" their wrongful actions by general publication of the secret. . . . Once the secret is out, the rest of the world may well have a right to copy it at will; but this should not protect the misappropriator or his privies. Their gain is ill-gotten and the passage of time or publication to the rest of the world should not serve to cleanse their hands.

<u>Id.</u> at 955 (applying common law before UTSA). More recently, the Tenth Circuit reminded that one function of trade secret law is to ensure that "industrial espionage is not condoned or made profitable." <u>Russo</u>, 550 F.3d at 1021; <u>see also</u> <u>DVD Copy Control Ass'n, Inc. v. Bunner</u>, 31 Cal. 4th 864, 898-99 (2003) (Moreno, J., concurring) ("The general rule is that '[o]nce the secret is out, the rest of the world may well have a right to copy it at will; but this should not protect the misappropriator or his privies.'" (quoting <u>Underwater Storage</u>, 371 F.2d at 955)) (holding that injunction against website owner for posting trade secrets stolen by another does not violate First Amendment, but reversing grant of injunction for further fact findings).

Consistent with this basic principle, courts have recognized the plaintiff's right to relief against the wrongdoer for a period of time after the public disclosure

of the trade secret by the defendant, without imposing a "head start" limitation to the period the defendant would have taken to develop its products absent the theft of the trade secret. For example, in RKK Holding Co. v. Sears, Roebuck & Co., 563 F. Supp. 2d 832 (N.D. Ill. 2008), the defendant disclosed the plaintiff's trade secret product, a combination power tool. See id. at 834. The defendant argued that the plaintiff's damages should be limited to a head start period. See id. at 836. The court disagreed, and upheld the jury award of monetary relief for the period of time after the defendant's disclosure, without any head start limitation. See id. at 836-38, 840 (applying Illinois Trade Secrets Act).

In Kilbarr Corp. v. Bus. Sys. Inc., 679 F. Supp. 422 (D.N.J. 1988) (applying New Jersey law), defendants argued that damages should be limited to a "head start" period, defined as the period of time before the industry, including the defendant, would have become aware of the trade secrets through some legitimate means. Id. at 424-25. Although there was no public disclosure, the court made clear that public disclosure would not limit the plaintiff's remedy, stating "regardless of whether the trade secrets were ultimately made public via the issuance of patent or otherwise, defendant obtained the information by misappropriation and not from the public disclosure or any other legitimate business means." Id. at 425. The defendants prevented the plaintiff from selling its product by refusing to return the stolen information, which provided the know-how for manufacturing the product. See id. at 426-27. Because the defendants prevented the plaintiff from entering the market even after the defendants discontinued their sales, the court awarded "full and complete monetary relief," not just beyond the head start period, but even beyond the date the defendants discontinued their sales. Id. at 427.

Similarly, in Underwater Storage, the court declined to limit monetary remedies post-disclosure and concluded, "We believe that the rule should be in trade secret cases where the secret has been misappropriated the wrongdoer and his privies are amenable to suit for any use of the secret so long as the use has occurred

within the statutory period of limitations immediately preceding the bringing of the action." 371 F.2d at 955 (in addressing statute of limitations argument).

Imi-Tech Corp. v. Gagliani, 691 F. Supp. 214 (S.D. Cal. 1987), a case arising under CUTSA, also refused to limit remedies based on disclosure. See id. at 229. Defendants argued that the stolen information was developed under government contracts and therefore should have been in the public domain, and that some had previously been published. See id. at 230-31. The court was not persuaded on either count: "That the defendants have published some of the information which might lead to discovery of [the plaintiff's] trade secrets 'does not deprive plaintiff of his preexisting cause of action or of his right to complete injunctive and monetary relief against the wrongdoer.'" Id. at 230-31 (granting preliminary injunction after public disclosure of information by defendants) (citing Rohm and Haas Co. v. Adco Chem. Co., 689 F.2d 424, 434 (3d Cir. 1982)).  As to the information allegedly owned by the government, the court reasoned that the right to have the information made public belonged to the government, not the defendants. See id. at 231.

In BondPro Corp. v. Siemens Power Generation, Inc., 463 F.3d 702 (7th Cir. 2006), a case arising under Wisconsin's version of the UTSA, the defendant incorporated information about the plaintiff's manufacturing process into a patent application, thereby disclosing the information to the world. See id. at 706-07. The court stated that even in such an instance where the information was no longer secret to the world at large, the party that unlawfully disclosed it would still be liable for the consequences of trade secret theft:  "[the defendant] would be liable to [the plaintiff] for the consequences of enabling the innocent copying by revealing [the plaintiff's] trade secret to the world." Id. at 704, 707 (affirming denial of trade secret claim because plaintiff had failed to prove that information was trade secret) (citing Syntex Ophthalmics, 701 F.2d at 683; Shellmar Prods. Co. v. Allen-Qualley Co., 87 F.2d 104, 109-10 (7th Cir. 1936); Underwater Storage, 371 F.2d at 955; DVD Copy Control Ass'n, 31 Cal. 4th at 898-99 (Moreno, J., concurring)).

00505.07975/3958105.4

-6-
MATTEL'S TRIAL BRIEF ON RIGHT TO MONETARY RELIEF FOR
TIME PERIOD AFTER PUBLIC DISCLOSURE OF TRADE SECRETS
CASE NO. CV 04-9049 DOC (RNBx)

Finally, in Russo, the defendant disclosed the plaintiff's trade secret in a patent application. 550 F.3d at 1008, 1015. The defendant argued that the jury should have been given an instruction that the plaintiff's monetary relief was limited to a head start period. Id. at 1019-20. The court concluded that the plaintiff had not cited any Utah authorities adopting the head start rule, and that even assuming Utah adopted the rule, the court did not discern any reversible error in the jury instructions given by the district court, which allowed the jury to award a remedy for the period it found the plaintiff's trade secret "would be entitled to protection" plus any additional period "that the trade secret afforded the particular Defendant a competitive advantage." Id. at 1020. The court affirmed the jury award for 53% of the defendant's net profits over the 17-year lifespan of its patent. See id. at 1008, 1020.

The rule articulated in these cases is fully consistent with the Court's statement in the February 12 minute order that precedent would not support a head start limitation on monetary remedies "where the trade secret defendant was the first to disclose the product."

## II. THE AUTHORITIES CITED IN MGA'S PROPOSED JURY INSTRUCTION ARE INAPPOSITE.

In support of its proposed jury instruction (Dkt. 9620 at 156-57), MGA cites only two cases, neither of which involved a disclosure by the misappropriator. Group One, Ltd. v. Hallmark Cards, Inc., 254 F.3d 1041, 1051 (Fed. Cir. 2001) (applying Missouri law); Life Point Sys., Inc. v. Cargill, Inc., No. C-93 20352 JW, 1997 U.S. Dist. LEXIS 22845, at *48 (N.D. Cal. Feb. 6, 1997). In both of those cases, it was the plaintiff, not the defendant, who voluntarily disclosed its own trade secret in a patent application. See Group One, 254 F.3d at 1043, 1050-51; Life Point, 1997 U.S. Dist. LEXIS 22845, at *8-*9, *48. That disclosure was therefore not wrongful. As the court made clear in the Winston case cited in the Court's minute order: "The district court's decision to limit the duration of injunctive relief

was necessarily premised upon a determination that Mincom's [the plaintiff-appellee's] trade secrets would shortly be fully disclosed, through no fault of Winston [the defendant-appellant], as a result of public announcements, demonstrations, and sales and deliveries of Mincom machines." <u>Winston Research Corp. v. Minnesota Mining & Mfg. Co.</u>, 350 F.2d 134, 141 (9th Cir. 1965). Because these cases all address disclosure by the plaintiff, not the wrongdoer, they do not support any limitation on remedy where, as here, the disclosure is by the defendant.

Even in cases where it is the plaintiff, not the wrongdoer, who publicly discloses the trade secret (and there is no such evidence in this case), the plaintiff's monetary remedies would not be limited to a "head start" period where that remedy would be inadequate to eliminate any unfair advantage the defendant gained from being first to market. <u>Molinaro v. Burnbaum</u>, 201 U.S.P.Q. 150 (D. Mass. 1978) (applying common law before UTSA). In <u>Molinaro</u>, the plaintiff voluntarily disclosed its trade secret in a patent application. <u>See id.</u> at 162. Before the patent issued, however, the defendants stole the trade secret and used it to create a product it then introduced into the market. <u>See id.</u> at 162. As a result, the defendants captured and pre-empted the market for the product. <u>See id.</u> at 159, 163. The plaintiff was thereby prevented from licensing its trade secret or entering the market itself. <u>See id.</u> at 163. The Court concluded that the defendants' head start advantage continued until they discontinued their sales of the product based on the trade secret. <u>Id.</u> Cf. <u>Winston Research</u>, 350 F.2d at 142 (cited in the Court's February 12, 2011 minute order) (allowing injunctive relief beyond period of plaintiff's disclosure so that the defendants would not retain the benefit of a head start advantage over their competitors).

Here, MGA's misappropriation of Mattel's trade secrets prevented Mattel from having the ability to perfect or build intellectual property rights based on the trade secret, to license the trade secret, or to sell a product based on the trade secret. MGA stole Mattel's trade secrets and intellectual property rights in those secrets

1  first.  Mattel could not then have obtained the actual and incipient rights for itself in
2  the first instance.  As the Court recognized in its February 12, 2011 Minute Order,
3  "[e]ven assuming the trade secret owner would have used the trade secret, such a
4  rule may not account for the continuing benefits of 'first use' or 'primacy' beyond
5  just the head start over competition – e.g., the ability to claim intellectual property
6  rights (trademarks and copyrights) in misappropriated product names and works,
7  thereby restraining the rightful owner of the trade secret from ever fully realizing the
8  benefits of the product concept, even after it is no longer a secret."

### III. MGA'S PROPOSED JURY INSTRUCTION IS NOT A CORRECT STATEMENT OF THE LAW AND SHOULD BE REJECTED.

Measured by these principles, MGA's proposed jury instruction (quoted in note 1 above) must be rejected as an inaccurate statement of the law.  First, the instruction easily could be read by the jury to impose a disclosure-based limitation or a head start limitation even if the jury finds that the disclosure was by MGA or Bryant.  While the first sentence refers to a disclosure "by someone other than the defendant," the remainder of the instruction is not so limited.  For example, the last sentence of the first paragraph and the entire second paragraph of the instruction are not on their face restricted to situations where the disclosure was "by someone other than the defendant."  MGA cites no case limiting remedies in these circumstances.  Because the instruction can be read to impose limitations in the context of disclosure by the wrongdoer, it is inconsistent with well-established law.

Even with regard to a disclosure by the plaintiff the instruction is not consistent with the law.  A plaintiff's disclosure does not result in a limitation on monetary remedies, where such a limitation would be inadequate to eliminate any unfair advantage the defendant gained from being first to market, as Molinaro makes clear.  There is no limitation based on a plaintiff's disclosure under those circumstances, and MGA's instruction does not accurately state the law here either.

00505.07975/3958105.4

-9-
MATTEL'S TRIAL BRIEF ON RIGHT TO MONETARY RELIEF FOR
TIME PERIOD AFTER PUBLIC DISCLOSURE OF TRADE SECRETS
CASE NO. CV 04-9049 DOC (RNBx)

**Conclusion**

For the foregoing reasons, MGA's wrongful disclosure of Mattel's trade secrets cannot cut-off Mattel's right to monetary relief for trade secret misappropriation. Under the facts of this case, Mattel's monetary remedies are not limited by any disclosure to the period of time before MGA's wrongful disclosure or to a "head start" period.[2] Because MGA's proposed jury instruction does not accurately state the law in this area, and for the other reasons set forth in Mattel's jury instruction objections, the Court should reject that instruction.

DATED: February 17, 2011            QUINN EMANUEL URQUHART &
                                    SULLIVAN, LLP


                                    By  /s/ John B. Quinn
                                        John B. Quinn
                                        Attorneys for Mattel, Inc. and
                                        Mattel de Mexico, S.A. de C.V.

---

[2] Even under a head start limitation, the jury must determine the "head start" period, and the jury may find that the defendant would never have developed the trade secret on its own through legitimate means. See, e.g. Sokol Crystal Prods., Inc. v. DSC Commc'ns Corp., 15 F.3d 1427, 1433 (7th Cir. 1994) ("Because we presume that jurors understand their instructions, . . . we can assume that they did not award damages for lost profits after the head start period. Here, in any event, the jury may well have concluded that DSC would never have developed a workable VCXO had it not misappropriated Sokol's trade secret.").