ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel: (415) 773-5700/ Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel: (213) 629-2020/Fax: (213) 612-2499

THOMAS S. McCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049-DOC (RNBx)<br>Consolidated with Nos. CV 04-9059 and CV 05-2727<br><br>Hon. David O. Carter<br><br>**MGA PARTIES' RESPONSE TO MATTEL'S "NOTICE OF LODGING OF MATERIALS RE: MGA'S ASSERTION OF PRIVILEGE WITH RESPECT TO PURPORTED INTERNAL TRADE SECRET INVESTIGATIONS"**<br><br>Trial Date: January 11, 2011 |

1    On February 17, 2011, Mattel filed a "Notice of Lodging of Materials Re:
2 MGA's Assertion of Privilege with Respect to Purported Internal Trade Secret
3 Investigations," purported at the Court's request.
4    The problem with this Notice of Lodging is that it is non-responsive and
5 completely misses the point.
6    Ms. Keller's question during cross-examination concerned the telephone
7 conversation between Susana Kuemmerle, Daphne Gronich, Gustavo Machado and
8 Isaac Larian *on the day of the raid by the Mexican police*. 2/17/11 Tr. at 64:9-65:1,
9 65:17-66:1, 73:8-76:22. The question did not concern any internal investigation.
10 Mattel objected that privilege had been asserted. But with respect to that
11 conversation, MGA did *not* assert privilege. And, Mr. Zeller on behalf of Mattel
12 expressly agreed that disclosure of that conversation *would not waive anything else*.
13 7/7/10 Depo. Tr. at 2828:17-2831:21.

14    Q. When did MGA become aware of the search
15    that Mexican authorities conducted of MGA's Mexico
16    City office?
17    A. Hold on for a second.
18       To the best of my recollection, the day it
19    happened. I don't remember the exact date.
20    Q. And how -- how is it that MGA learned of
21    that?
22    A. Susana Kimberly [sic] called me, I was on
23    the phone, and I believe, to the best of my
24    recollection, Daphne Gronich was on the phone.
25    Q. You were personally on that phone call?
26    A. I was.
27    Q. And what -- what did you learn from
28    Ms. Kuemmerle on that call?

- 1 -   MGA PARTIES' RESPONSE TO MATTEL'S NOTICE OF LODGING
        Case No. CV 04-9049-Doc (RNBx)

1   THE WITNESS:  Can I testify about that?
2   MS. HURST:  Yeah.  So there's been some
3   confusion about whether we're asserting privilege
4   regarding this call or not.  And two witnesses
5   testified about it and one didn't, because there was
6   an assertion of privilege; that was Mr. Machado.
7   Can we just agree that this isn't a waiver
8   as to anything else to clear this up, and then I can
9   permit him to go ahead?  In other words, beyond the
10  conversation itself?
11  MR. ZELLER:  I think that's fine.
12  MS. HURST:  Okay.
13  MR. ZELLER:  I mean, just so it's clear,
14  you won't have a problem with me inquiring as to the
15  full contents --
16  MS. HURST:  No.
17  MR. ZELLER:  -- of the communication?
18  MS. HURST:  No, absolutely.  That's
19  correct.
20  MR. ZELLER:  Okay.  So I think with that, I
21  think that's okay.
22  MS. HURST:  All right.
23  BY MR. ZELLER:
24     Q.  So please tell me what was -- what was
25  discussed in that phone call?
26     A.  That Susana, best of my recollection, was
27  on the phone.  She told me that Mattel has
28  instigated the Mexican authorities to go to MGA's

1  offices with a search warrant, and that they're
2  basically searching everywhere and taking -- taking
3  a lot of things from MGA Mexico.
4      Q.  And is this how the conversation started
5  out?
6      A.  That was the information that was given to
7  me, yes, and --
8      Q.  Was there -- was there anything that you
9  asked during the course of this?
10     A.  Why?  What -- what happened?  How could
11 that happen? I think.  Those are the things that I
12 asked.
13     Q.  And what did Ms. Kuemmerle tell you in
14 response?
15     A.  I think he [sic] said that they had a
16 search warrant and they were in MGA Mexico and they
17 were taking a lot of things.
18     Q.  During the course of that conversation --
19     A.  Think I told 'em, Go get a lawyer, if I
20 remember correctly.
21     Q.  Was it your understanding as of the time
22 when you said that, when you said to Ms. Kuemmerle,
23 "Go get a lawyer," whether or not MGA Mexico had a
24 lawyer already in the office?
25     A.  I have no -- I have no idea if we did or
26 not.  I don't think we had.
27     Q.  Did Ms. Kuemmerle say in response, when you
28 told her to go get a lawyer, that there was already

- 3 -

1     a lawyer there?

2         A. No, I don't recall that.

3         Q. And when you said to get a lawyer, were you

4     referring to a lawyer for MGA, MGA Mexico, the

5     individual employees, some combination?

6         A. MGA Mexico.

7         Q. And did Ms. Kuemmerle indicate to you one

8     way or another whether she was going to do that?

9         A. I left that to Daphne and Susana to handle.

10     Mr. Larian also previously testified about a conversation that he had with Ms.

11     Trueba, in the presence of in-house counsel, regarding whether she used any Mattel

12     information at MGA and did not assert any privilege about that conversation.

13     12/10/2009 Depo. Trans. at 681:22-683:6.

14         Q  Did you ever discuss that subject with Mariana

15     Trueba?

16         A  No.  You know what?  I take that back.  I did

17     discuss it with Mariana Trueba at one time.

18         Q  And what do you remember on that?

19         A  She swore on her mother that she never took

20     anything from Mattel.

21         Q  And was this during a meeting that you had

22     with her?

23         A  Yes.

24         Q  And was that in Mexico or here or somewhere

25     else?

26         A  In -- in USA.

27         Q  And I take it during the course of this

28     meeting you asked her did you do that?

- 4 -  MGA PARTIES' RESPONSE TO MATTEL'S NOTICE OF LODGING
Case No. CV 04-9049-Doc (RNBx)

1   A  I did.
2   Q  And she said -- she swore on her mother that
3   she didn't take anything from Mattel?
4   A  That's what she said.
5   Q  Do you know one way or another whether she
6   did?
7   A  I don't know.
8   Q  Was there anyone else who was present for
9   this?
10  A  Yes.
11  Q  Who else?
12  A  Craig Holden and Jeanine Pisoni.
13  Q  And can you put a time frame on this at all?
14  A  Maybe past year, 18 months.
15  Q  And was this a meeting that you wanted?
16  A  No.  I think she was in town or something.  I
17  don't remember the exact circumstances.
18  Q  So the meeting was on other subjects, but this
19  is something that came up?
20  A  Yes.
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

1    Mr. Larian has never testified that there was an internal investigation. MGA has consistently taken the position that its only investigation was conducted by outside counsel in connection with the lawsuit, and has asserted privilege with respect to that. Mattel's objection was not well taken.

Dated:   February 18, 2011      Respectfully submitted,

ANNETTE L. HURST
ORRICK, HERRINGTON & SUTCLIFFE LLP


By:     /s/ - Annette L. Hurst
       ANNETTE L. HURST
     Attorneys for MGA Parties