UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

THE HONORABLE DAVID O. CARTER, JUDGE PRESIDING

| | | |
|---|---|---|
| MATTEL INC., ET AL., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | DAY 21 |
| vs. | ) No. | CV 04-9049-DOC |
| | ) | VOLUME 3 of 3 |
| MGA ENTERTAINMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

JURY TRIAL

SANTA ANA, CALIFORNIA

TUESDAY, FEBRUARY 22, 2011

Maria Beesley-Dellaneve, RPR, CSR 9132
Official Federal Reporter
Ronald Reagan Federal Building, room 1-053
411 West 4th Street
Santa Ana, California 92701
(714) 564-9259

```
 1    APPEARANCES OF COUNSEL:

 2    FOR THE PLAINTIFF:   QUINN EMANUEL URQUHART OLIVER & SULLIVAN
                           BY:  MICHAEL ZELLER, ESQ.
 3                         and  JOHN QUINN, ESQ.
                           865 S. FIGUEROA
 4                         10TH FLOOR
                           LOS ANGELES, CALIFORNIA 90017
 5                         (213)443-3000

 6
      FOR THE DEFENDANTS:  ORRICK, HERRINGTON & SUTCLIFFE
 7                         BY:  ANNETTE HURST, ESQ.
                           405 HOWARD STREET
 8                         SAN FRANCISCO, CALIFORNIA 94105
                           (415)773-5700
 9

10
      FOR THE DEFENDANTS:  ORRICK HERRINGTON & SUTCLIFFE
11                         BY:  THOMAS MCCONVILLE, ESQ.
                           4 PARK PLAZA
12                         SUITE 1600
                           IRVINE, CALIFORNIA 92614
13                          (949)567-6700

14
                            KELLER RACKAUCKAS
15                         BY:  JENNIFER KELLER, ESQ.
                           18500 VON KARMAN AVENUE
16                         SUITE 560
                           IRVINE, CALIFORNIA 92612

17

18
      FOR CARLOS MACHADO GOMEZ: LAW OFFICES OF MARK E. OVERLAND
19                         BY:  MARK OVERLAND, ESQ.
                           100 WILSHIRE BLVD
20                         SUITE 950
                           SANTA MONICA, CA. 90401
21                         (310) 459-2830

22

23

24

25
```

1                         - AND -

2                         SCHEPER KIM & HARRIS LLP
                          BY:  ALEXANDER COTE, ESQ.
3                         601 WEST 5TH STREET_12TH FLOOR
                          LOS ANGELES, CA. 90071
4                         (213) 613-4660

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 4

1        SANTA ANA, CALIFORNIA; TUESDAY, FEBRUARY 22, 2011

2                            -oOo-

3        **THE COURT:**  At the end of the day then you want to argue

4   that whatever liability should ensue, it should be personal

5   involving Mr. Larian, and that the amount of damage done to Mattel

6   carries over to Mr. Larian as well as MGA.

7        **MR. QUINN:**  Yes.  And in addition, the separate -- this

8   whole corporate structure, the separateness including Hong Kong

9   should be disregarded.  It's all collapsed.  It's unitary.

10        **THE COURT:**  Just a moment.  Haven't we already had that

11   testimony from Ms. Tonnu?  Just a moment.  Ms. Tonnu was very

12   clear.  When you were referring to 16122, you asked her how does

13   the flow take place between the parent subsidiaries.  You asked if

14   subsidiaries 100 percent owned by MGA U.S.A.  And it's your

15   testimony basically in response to your questions were the parent

16   subsidiaries were treated as a unit.

17        **MR. QUINN:**  That was only as to dash six, the U.S.

18   domestic entities.  This is on the screen, Your Honor.  She did

19   say that, as to the U.S. domestic entities.  We haven't gotten

20   there as to the foreign entities.

21        **THE COURT:**  Well, doesn't -- let me become more

22   knowledgeable.  Doesn't 1354, aren't these distributions from a

23   MGA -- or I'm sorry, MGA U.S.A.?

24        **MR. QUINN:**  Yes, I believe they are distributions from

25   MGA.

1          **THE COURT:**  Then she's already stated that they're a

2     unified entity.  What about --

3          **MR. QUINN:**  I don't think so, Your Honor.

4          **THE COURT:**  Well, she did.

5          **MR. QUINN:**  Well, as to the domestic entities, but I

6     just haven't gotten into the -- I just started to get into the

7     international structure.  I would like to return to that.

8          **THE COURT:**  You are jumping right into the particulars

9     that may cause prejudice that's absolutely unnecessary.  Why don't

10    you ask her about the foreign entities.  If they ask that they

11    collapse into one structure, isn't that resolved?

12         **MR. QUINN:**  That's an important piece of evidence.  But

13    I submit that it's a relevant consideration on the alter ego

14    analysis as to how they do business; how many is taken out; how

15    distributions are done.

16         This is not business as usual.  It's a relevant --

17    again, I repeat, I'm not saying that the end of the year they

18    don't true it up and it doesn't end up in the shareholder

19    distribution account and that taxes aren't paid on it.  I'm not

20    saying that.  But I'm saying during the course of the year until

21    they do that, this is a very irregular way of handling the

22    accounts of the company.  It's treated as his personal cash

23    reservoir.  It's relevant to the alter ego -- and if they want to

24    stipulate that it's all one entity --

25         **THE COURT:**  I was going to ask that.  Are you willing to

Page 6

1    stipulate?

2              MR. QUINN:  -- then the rest of the exam will be very

3    short.

4              THE COURT:  Well, I know that.  It may be very short

5    anyway.  Let's go back to the question I asked you.  Are you

6    willing to stipulate?

7              MR. QUINN:  As to what, Your Honor?  I'm sorry.

8              THE COURT:  That this is a unified or unitary unit

9    between parent and subsidiaries, both internationally and

10   domestically.

11             MR. QUINN:  Yes.

12             THE COURT:  Just a minute.  We'll find out very quickly.

13             MR. QUINN:  Including -- and Mr. Larian as well.

14             THE COURT:  Absolutely.

15             Mr. McConville.  Thank you.  You are the counsel.

16                  (Counsel confer)

17             THE COURT:  There are two counsel speaking for both

18   sides, until others are invited to do so.

19                  (Counsel confer)

20             THE COURT:  Counsel, you'll remain.

21             Mike, come on back.  Counsel just remain.

22                  (Brief pause in proceedings.)

23             THE COURT:  We're on the record, counsel.  Your

24   thoughts?

25             MR. MCCONVILLE:  Your Honor, as I understand the

1   bidding, it was whether or not we could stipulate that MGA was one

2   unified entity, which we can't because there are tax complications

3   for the company throughout the world.  So the short answer is --

4        **THE COURT:**  I understand without saying anything

5   further.  I get it.  Let's just leave the record like that.

6        The request is granted.  You may inquire.

7        **MR. MCCONVILLE:**  So, Your Honor, just to correct -- I'm

8   sorry, to complete my argument, and I want to --

9        **THE COURT:**  I thought you had.  I apologize.  You can go

10   ahead, Mr. McConville.

11        **MR. MCCONVILLE:**  Mr. Quinn said that he agrees that

12   these transactions that are reflected in these documents that he

13   wants to show to Lisa Tonnu get trued up at the end of the year.

14   What that means is there is no transaction that isn't accounted

15   for appropriately at the end of the year when the entire list of

16   transactions are handled by the accounting department.

17        So this isn't a piggy bank.  Those transactions get

18   accounted for as distributions to Mr. Larian and then they are

19   accounted for as distributions --

20        **THE COURT:**  I understand the prejudice.  Okay.  I also

21   understand the probative value.  I don't want to force you into a

22   stipulation -- I understood what you said about making a further

23   record about it -- unless you would like to.  If you can come up

24   with some medium that allows this unitary concept to go before the

25   jury, you know, without getting into the tax implications, I'm

Page 8

1   acceptable.  But right now I'm going to move on.  I have got a lot

2   to do tonight with you.

3          **MR. MCCONVILLE:**  Understood, Your Honor.

4          **THE COURT:**  And that's the ruling right now.  Now, thank

5   you very much.

6          Now, what are we going to do this evening?  Are we going

7   to argue copyright tonight and intentional interference?  Or are

8   we going to save that for Sunday as we talked about on Monday?

9   And if so, how long do you need?  Because I want to set up times

10  now with the court reporters.

11         **MR. QUINN:**  I thought we were going defer that until

12  Sunday, Your Honor.

13         **THE COURT:**  I did too, but I want to make certain.  Now

14  I want a record.  I want to make certain that we're doing that

15  Sunday, and I want definite times agreed to now so I can talk to

16  Maria or Sharon or whoever is here.  It's not fair to them to

17  bring them in for a couple hours.

18         **MR. QUINN:**  I would say three hours on our side for

19  both, Your Honor.

20         **THE COURT:**  Okay.  How long?

21         **MS. HURST:**  I think it's going to take us all day Sunday

22  to do the whole thing.

23         **THE COURT:**  Now, I'm going to step off the bench and

24  eventually you two will give me a time, or you are just going to

25  sit here.  I'm not going to be rude to my court reporters.  I

1  mean, Sharon gave up her holiday, Maria gave up her holiday.  I'll

2  have definite times from the two of you so I can at least tell my

3  court reporters.  I personally don't care.  So what time?

4          **MS. HURST:**  9:00 a.m. to 3:00 p.m.

5          **THE COURT:**  Okay.  Is it fair then, counsel, if I talk

6  to Jane and Maria and see what their schedules are?

7          **MR. QUINN:**  Yes, Your Honor.

8          **THE COURT:**  Because they have got families, etcetera,

9  and it may be from 12:00 to 6:00.  But let me talk to both court

10 reporters because I just found out it's you, Maria and Jane.

11         Let's schedule six hours.  Fair enough?

12         **MR. QUINN:**  Fair enough.

13         **THE COURT:**  What are we going to do tonight?  Kuemmerle,

14 I really didn't get through Kuemmerle and I have got to tonight.

15         **MR. QUINN:**  I thought you had waved the magic wand over

16 Kuemmerle.

17         **THE COURT:**  I had, but I'm now unwaving it.  The only

18 reason I waved it was because that's the first witness we haven't

19 gone over exhibits.  I didn't want to bring you back at 7:00 or

20 8:00 last night.

21         **MR. QUINN:**  We would want to go through Kuemmerle and

22 probably -- I would suggest -- we have got a problem with

23 witnesses, Your Honor.  We can't get any of the Mexicans here this

24 week.  Mr. Aginsky has fallen ill.

25         **THE COURT:**  Just a moment.  Mr.?

Page 10

1          **MR. QUINN:**  Aginsky, the ink guy.

2          **THE COURT:**  Okay.

3          **MR. QUINN:**  So we'd like to do Kinrich tomorrow.  I

4     think --

5          **THE COURT:**  We haven't been through Kinrich.

6          **MR. QUINN:**  We have been through Kinrich, so we can go

7     through Kinrich tonight.  And we told the other side this morning

8     before court started that because of the problems with witnesses,

9     we want to start with Eckert on Thursday.  And we are prepared to

10    start going through exhibits with Eckert tonight.

11         **THE COURT:**  So we have got Mr. Eckert Thursday.

12         **MS. KELLER:**  Your Honor, may we be heard before you go

13    on?

14         **THE COURT:**  Just a moment.  I'm trying to get

15    information.

16         **MR. QUINN:**  And we have --

17         **THE COURT:**  I'm trying to get information.  So we're

18    going to slow down.

19         Tonnu is on the stand now.  Chan.  We have Mr. Machado

20    is still not available; we hope to get on this week, but it's not

21    going to happen apparently.  Vargas?

22         **MR. QUINN:**  Not available.  Can't get him.  We're going

23    to have him the week after next, which might mean we're going to

24    have to ask the Court if we can rest subject to calling Vargas.

25         **THE COURT:**  Trueba?

1          **MR. QUINN:**  Apparently not coming this week.

2          **MR. OVERLAND:**  Next week.

3          **THE COURT:**  We think Machado and Trueba will be here

4    next week.  There are a lot of calls going back between Mr.

5    Overland.  So next week.  So tomorrow, though, minimally Tonnu.

6          **MR. QUINN:**  Chan.

7          **THE COURT:**  Chan.  Kuemmerle.  How long do you think

8    you'll be with Kuemmerle?

9          **MR. QUINN:**  An hour.

10         **THE COURT:**  What do you think?  Who is cross-examining

11   Kuemmerle?

12         **MS. KELLER:**  I am, Your Honor.

13         **THE COURT:**  How long do you think you'll be?

14         **MS. KELLER:**  No more than 45 minutes to an hour.

15         **THE COURT:**  So what do we have, about a two- to

16   three-hour estimate?

17         **MR. QUINN:**  On Kuemmerle?  Sounds shorter than that to

18   me.  Sounds shorter than three.

19         **THE COURT:**  And then we have got after Kuemmerle, who?

20         **MR. QUINN:**  Marlow.

21         **THE COURT:**  Now, we have gone over Marlow.

22         **MR. QUINN:**  Yes.

23         **THE COURT:**  And everybody should be prepared for Marlow.

24         There was also Rachel Harris.  We have gone over the

25   exhibits a long time ago concerning Rachel Harris.  Is she going

Page 12

1   to testify?

2           MR. QUINN:  We're cutting down our case.  We don't think

3   we're going to call Rachel Harris.  We're whacking witnesses off

4   our list.

5           THE COURT:  So give me your best wish, in other words,

6   before I hear MGA who is obviously going to say they're not

7   prepared.

8           MR. QUINN:  Tonnu.

9           THE COURT:  Tonnu.

10          MR. QUINN:  Kuemmerle.

11          THE COURT:  Kuemmerle.

12          MR. QUINN:  Marlow.

13          THE COURT:  Just a moment.  Marlow.  I'm not hearing any

14  surprises so far.  Who else?

15          MR. QUINN:  Well, if the Court has had a chance to

16  address the issue, we would like to call Rhee.

17          THE COURT:  Okay.  Rhee.

18          MR. QUINN:  If we need filler, Kinrich.  He is short.

19          THE COURT:  Kinrich.

20          MR. QUINN:  And Eckert.

21          THE COURT:  And Eckert.  Now, why can't Eckert testify

22  earlier?

23          MR. QUINN:  Why can't he testify earlier?

24          THE COURT:  I don't have to put Rhee on in front of

25  Eckert.

Page 13

1          **MR. QUINN:**  You don't?

2          **THE COURT:**  No, I don't.  So the question is --

3          **MR. QUINN:**  Eckert could testify before Rhee.

4          **THE COURT:**  Well, good.  So Mr. Eckert could be here

5     Wednesday.

6          **MS. KELLER:**  That's tomorrow, Your Honor.  And if we can

7     be heard.

8          **THE COURT:**  I'm sorry.  I missed a whole day of my life.

9     My apologies.  Today is Tuesday, isn't it?  First day back in

10    court I just flipped into Monday.

11         Not yet, Ms. Keller.  I'm trying to find out some

12    information.

13         Am I hearing then that Tonnu, Vargas -- I'm sorry,

14    Tonnu, Kuemmerle, and Marlow would fill the whole day?

15         **MR. QUINN:**  Conceivably, but I think maybe not.

16    Possibly not.

17         **THE COURT:**  All right.  Now, let me hear from MGA,

18    because your concern obviously has to be the preparation for

19    Eckert.

20         **MS. KELLER:**  That is the principle concern.  There is

21    another concern, Your Honor, and that's that we certainly

22    appreciate, and I certainly appreciate, that things change in

23    trial; people become unavailable.  But what is happening is we're

24    getting wholesale changes of the whole list.

25         For example, just last week we were told that the lineup

Page 14

1   was going to be Marlow, Wing, Lissa Freed, Vargas, Michael Moore,

2   McComb --

3          THE COURT:  Just a moment.  Let me list them slowly.

4          MS. KELLER:  Marlow, Anne Wang, Lissa Freed, Mr. Vargas,

5   Michael Moore, McComb, Aginsky, and Harris.  And I think I added

6   Anne Wang.  And Brian Wing.  And as of today, I think we were told

7   that the lineup is now --

8          THE COURT:  Tonnu, Kuemmerle, Marlow.

9          MS. KELLER:  Wing.  We were told Brian Wing again, which

10  I didn't hear just now.  Anne Rhee.  Kinrich, who we haven't heard

11  before.  Eckert, who we hadn't heard before, and possibly Aginsky.

12  And Eckert, of course, is somebody who does require some

13  preparation.  And I would hope that we would have exhibits,

14  because he is such a critical witness.

15          To suddenly pull him out of nowhere where we hadn't seen

16  him on any list and say he is coming Thursday morning, makes it

17  very difficult for us because we haven't even had a chance to go

18  over the exhibits.  And I assume we'll get the usual zillion

19  exhibits that we'll have to try to make some sense out of and

20  figure out what to do with and prepare our outline accordingly.

21          And so that's a real problem for us.  We keep having

22  these lists of witnesses and, frankly, I have gotten to the point

23  where I don't even assume any of the people we're told are coming.

24          THE COURT:  I'm just wondering this.  Tonnu, Kuemmerle

25  and Marlow can't come as any surprise.

1          MS. KELLER:  No.

2          **THE COURT:**  Okay.  So let's set that aside for a moment.

3    The real surprise, as I said before, that Eckert is coming on so

4    quickly.  And why can't Brian Wing, who is going to take some

5    time, be called by the parties?

6          **MS. KELLER:**  We were told --

7          **THE COURT:**  Just a moment.  Let me ask Mattel.

8          **MR. QUINN:**  Your Honor, we -- you look at the numbers

9    over there on that piece of paper, we're cutting witnesses right

10   and left.  We're not calling Freed.  We're not calling Moore.

11         **THE COURT:**  Just a minute.  Slow down.  Not going to

12   call Freed.  Not going to call Moore.

13         **MR. QUINN:**  Not going to call Harris.

14         **THE COURT:**  Rachel Harris, okay.

15         **MR. QUINN:**  We said we were going to call Aginsky, but

16   he is sick.  We would still like to call Aginsky.  We're getting

17   down near the end of our list and it cannot have been a surprise

18   to them --

19         **THE COURT:**  Just a moment.  I'm not worried about the

20   debate right now.  I'm worried about -- just a moment.

21         Now, as far as Machado and Vargas and Trueba, there is

22   the difficulty, from my perspective, right to begin with.  Machado

23   should have been here a long time ago.  And I think that you had

24   almost planned, on Mattel's part, to have Machado on earlier than

25   Mr. Eckert.

1       **MR. QUINN:**  We talked about that tomorrow.

2       **THE COURT:**  And that's what is also causing the case to

3   speed up this.  In fairness to Mattel and in fairness to MGA, I

4   understand that it's putting stress on both of you.

5       So how long are you going to have Mr. Marlow on direct

6   examination?

7       **MR. ZELLER:**  We're estimating an hour, hour 15 minutes.

8       **THE COURT:**  That is a difficult problem.  Now, I

9   understand the problem.  I thought if he was there if a day or

10  two, it resolved the issue because you had the weekend.  I got MGA

11  to the weekend.

12      What about Wagner?  I heard that Wagner was going to be

13  on this week and you are putting him up on that -- not subject to

14  a Kumho/Daubert hearing by agreement of the parties.

15      So here is what I would expect.  I expected some

16  combination of Rachel Harris, which I'm not concerned.  I

17  understand the time limits.  I believe that Kuemmerle was going to

18  testify this morning or today.  Tonnu obviously comes as no

19  surprise, or Ms. Chan.  And Brian Wing I always thought would

20  testify.  But apparently he is not at the present time; is that

21  correct?

22      **MR. QUINN:**  At the present time I think our thinking is

23  not to call him.

24      **THE COURT:**  Okay.  Now what about Bousquette?

25      **MR. QUINN:**  We're not calling him.

1          **THE COURT:**  Okay.

2          **MR. QUINN:**  They will call him.

3          **THE COURT:**  The next question I have got is Wagner.  I

4     tried to set simultaneous Daubert hearings.  There was an

5     agreement reached between the parties that the MGA witness was on

6     a cruise; had a son or daughter with cancer.  And that the

7     agreement that was reached was that you were going to go forward

8     with a Mr. Wagner.

9          **MR. QUINN:**  Last I heard we were going to have those

10    Daubert hearings on Saturday.  But then we heard from --

11         **THE COURT:**  No.  No.

12         **MS. KELLER:**  Yes.

13         **THE COURT:**  Just a moment.  I thought -- I wanted to

14    have them last weekend.  You both told me that that wasn't

15    possible.  I'll read the record back to you.  Then you told me

16    that Wagner was going to go forward and was going to go forward.

17    That's what I heard.

18         **MS. HURST:**  We agreed to Saturday with Mr. Wagner going

19    first in the morning at 8:00 a.m. and Mr. Malackowski could get

20    here in the afternoon.  We had the whole stipulation about how

21    much time.  There was an hour and 15 minutes each for each witness

22    with the sponsoring party of the witness to go first.  Mr. Wagner

23    was to go first with Mattel and they had an hour and 15 minutes.

24    They could decide it however they wanted.  We had an hour 15

25    minutes, we could decide it however we wanted.  Then Malackowski

1   was to go on in the afternoon.  But exactly the same routine.

2   That the stipulation was Saturday starting at 8:00.

3        **THE COURT:**  My apologies then.  You both, if you both

4   agree, then I'm absolutely wrong and I apologize to both of you.

5   I thought Wagner was going on this week.  Why did I form that

6   impression?

7        **MR. QUINN:**  I know we did say that it's conceivable that

8   we would run out of witnesses and call him by the end of the week.

9   I did say that.

10       **THE COURT:**  Well, I vacated my resources now to

11  Saturday.  So you are not going forward on Saturday.  The best you

12  are going to go forward on is Sunday, and I'm going to have to

13  move the copyright arguments around.  That's what we're going to

14  be doing at night.  So I'll reschedule it, but it's going to be to

15  be Daubert hearings on Sunday.  Tell your experts that.  We'll try

16  to take the copyright out earlier.  Saturday is not available to

17  you any longer.

18       So my fault.  But that's -- I thought Wagner was going

19  on the stand.  And I thought that it was a good chance that the

20  Daubert would be waived on the other side.  So Sunday.  Change

21  them around.  Okay.

22       So what do we do about the ability of MGA to prepare and

23  still keep your case moving?

24       **MR. QUINN:**  Well, Your Honor --

25       **THE COURT:**  Get Machado here, it would be resolved.

1       **MR. QUINN:**  It would be resolved if Machado were here.

2       **THE COURT:**  Just a moment.

3       Mr. Overland, any chance of getting Machado up here?

4       **MR. OVERLAND:**  When?

5       **THE COURT:**  Thursday.

6       **MR. OVERLAND:**  No.  Maybe they can get Vargas here.

7       **THE COURT:**  Maybe Vargas.

8       **MS. KELLER:**  We had also heard Castilla as of 1:41 this

9    afternoon.

10      **THE COURT:**  Just a moment.  Castilla is another

11   possibility.  I can't govern your case for you, but I know one

12   thing:  It's going forward.

13      **MR. ZELLER:**  Your Honor, Mr. Castilla invoked the Fifth

14   Amendment.  He was going to be deposed.  Because now he will no

15   longer be invoking --

16      **THE COURT:**  I'm not worried about the deposition.  Time

17   for Mr. Castilla to come in here if we're running out of

18   witnesses.

19      **MR. ZELLER:**  That only benefits MGA, Your Honor, because

20   we don't have a record of what he is going to say.  For us to call

21   him in our case means we would have to put him up; we would get a

22   bunch of answers that will surprise us, and we'll have nothing --

23      **THE COURT:**  That's not fair to Mattel, is it?

24      **MR. ZELLER:**  Right.  We don't think it is.

25      **THE COURT:**  Well, I can't govern your case, and every

Page 20

1   time I make a suggestion I'm going to meet with resistance.  Of

2   course, that's nothing to do with this trial.  You haven't agreed

3   upon anything.  So I can't get your support, quite frankly.  And

4   this jury is not going to sit.

5         So here is what may be happening.  Mr. Eckert may be

6   going on the stand for direct examination and he may be exiting

7   and coming back.

8         **MS. KELLER:**  Your Honor, we really feel we would be

9   prejudiced by that.  The jurors would be left with only the direct

10  exam for some period of time.

11        I know the Court -- I don't want to contribute to any

12  further problems, but we were told this afternoon that the

13  witnesses would include Kuemmerle, Tonnu, Marlow, Wing, Rhee,

14  Kinrich, Eckert, Aginsky, McComb, and possibly Kim and Castilla if

15  fillers were needed just this afternoon.

16        And I understand counsel may want to trim their case,

17  but I mean that was just a -- several hours ago.  But if Eckert is

18  going to go on the stand Thursday, Your Honor, it's going to be

19  very, very difficult for us.  We don't even have the witness

20  binders yet to look at.  Of course, I'll be cross-examining him

21  and I'll be in court all day tomorrow, I'm here tonight.

22        **THE COURT:**  The way we're going it's going to be

23  8:00 o'clock before we even get to the witness binders.

24        **MS. KELLER:**  That's right.  And I could be tomorrow

25  night again.  I would have essentially no opportunity to prepare

Page 21

1    for that.

2              **MR. QUINN:**  Your Honor, part of what happened here, in

3    addition to the Mexicans not being here, is that Mr. Larian went

4    longer than any of us anticipated here.  We burned a lot of time.

5    We have had to jettison witnesses.  It really can't be any

6    surprise to MGA that we're getting to the bottom of the barrel and

7    that we're going to be calling Mr. Eckert.

8              **THE COURT:**  How much time --

9              **MR. QUINN:**  And they're going to call him in their case.

10             **THE COURT:**  How much time has been used?  Can we go off

11   the record for a moment?

12                  (Discussion held off the record.)

13                  (Whereupon the proceedings were adjourned at 6:24

14   p.m.)

15

16                              -oOo-

17

18                            CERTIFICATE

19

20        I hereby certify that pursuant to Section 753, Title 28,

21   United States Code, the foregoing is a true and correct transcript

22   of the stenographically reported proceedings held in the

23   above-entitled matter.

24

25   Date:  FEBRUARY 22, 2011

Page 22

1

2

3   MARIA DELLANEVE, U.S. COURT REPORTER
   CSR NO. 9132

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25