ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA 94105
Tel: (415) 773-5700/Fax: (415) 773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel. (213) 629-2020/Fax: (213) 612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br>Consolidated with: Case No. CV 04-09059 and CASE No. CV 05-02727<br><br>**MGA PARTIES' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR RECONSIDERATION ON THE COURT'S SUMMARY JUDGMENT RULING REGARDING COPYRIGHT PREEMPTION OF THE BRATZ DRAWINGS AND SCULPTS TRADE SECRETS, OR IN THE ALTERNATIVE, FOR CERTIFICATION OF THE PREEMPTION RULING FOR INTERLOCUTORY APPEAL**<br><br>Date:        TBD<br>Time:        TBD<br>Courtroom:  9D<br><br>Trial Date: January 18, 2011 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

I.  MATTEL DOES NOT, AND CANNOT, DISPUTE THAT ITS BRATZ TRADE SECRET CLAIM IS WITHIN THE SCOPE OF COPYRIGHTABLE SUBJECT MATTER .................................................... 3

II. MATTEL FAILS TO ESTABLISH THAT THERE IS ANY ASPECT OF ITS TRADE SECRET CLAIM THAT QUALITATIVELY CHANGES IT FROM MATTEL'S COPYRIGHT CLAIM .......................... 6

    A.  Mattel Fails to Follow the Case by Case Preemption Analysis Required by the Ninth Circuit ............................................... 7

    B.  The Right that Mattel Seeks to Enforce is Identical To Its Copyright Claim .................................................................. 8

    C.  Mattel's Evidence and Witnesses Establish that Mattel's Claimed Secret Elements Were Not Even Secret ................... 9

    D.  The Copyright Act Explicitly Covers Unpublished Works ............... 12

III. MATTEL'S NEWLY DEFINED TRADE SECRETS CANNOT SURVIVE CONFLICT PREEMPTION ....................................... 14

CONCLUSION .................................................................................. 17

- i -

MGA's Reply ISO Their Mtn for Reconsideration of
the Court's Summary Judgment ruling
Case No. CV 04 9049-DOC (RNBx

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Balboa Ins. Co. v. Trans Global Equities,*
218 Cal. App. 3d 1327, 1340, 267 Cal. Rptr. 787 (1990) ................................. 8

*Chicago Lock Co. v. Emberg,*
676 F.2d 400 (9th Cir. 1982) ................................................................. 16

*Dealertrack, Inc. v. Huber,*
460 F. Supp. 2d 1177 (C.D. Cal. 2006) ..................................................... 12

*Eldred v. Ashcroft,*
537 U.S. 186 (2003) ........................................................................... 15

*Entous v. Viacom Int'l,*
151 F. Supp. 2d 1150 (C.D. Cal. 2001) .............................................. 5, 7, 16

*Harper & Row,*
723 F. 2d 195 (2d Cir. 1983) ................................................................. 5

*Idema v. Dreamworks, Inc.,*
162 F. Supp. 2d 1129 ......................................................................... 9

*Kewanee Oil Co. v. Bicron Corp.,*
416 U.S. 470 (1974) ......................................................................... 16

*Laws v. Sony Music Entm't, Inc.,*
448 F.3d 1134 (9th Cir. 2006) ............................................................... 7

*Mattel, Inc. v. MGA Entm't, Inc.,*
616 F.3d 904 (9th Cir. 2010) ............................................................... 16

*Miller v. Holtzbrinck Publishers, L.L.C.,*
377 Fed. Appx. 72 (2d Cir. 2010) ........................................................... 8

*National Basketball Ass'n v. Motorola, Inc.,*
105 F.3d 841 (2d Cir. 1997) ................................................................. 5

*Rodgers v. Watt,*
722 F.2d 456 (9th Cir. 1983) ................................................................. 3

*Ruckelshaus v. Monsanto Co.,*
467 U.S. 986 (1984) ......................................................................... 16

*School Dist. No. 1J, Multnomah County v. ACandS, Inc.,*
5 F.3d 1255 (9th Cir. 1993) ................................................................. 3

*Selby v. New Line Cinema Corp.,*
96 F. Supp. 2d 1053 (C.D. Cal. 2000) .................................................. 5, 14

- ii -

MGA's Reply ISO Their Mtn for Reconsideration of
the Court's Summary Judgment ruling
Case No. CV 04 9049-DOC (RNBx)

# TABLE OF AUTHORITIES
## (continued)

Page

*Stromback v. New Line Cinema*,
   384 F.3d 283 (6th Cir. 2004) .................................................................. 13

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*,
   7 F.3d 1434 (9th Cir. 1993) .............................................................. 7, 8

*U.S. ex rel. Berge v. Bd. of Trustees of the Univ. of Ala.*,
   104 F.3d 1453 (4th Cir. 1997) ................................................................ 5

*Winkles v. United States*,
   2008 WL 755933 (C.D. Cal. Mar. 18, 2008) ....................................... 3

## FEDERAL STATUTES

H.R. No. 94-1476 at 131, reprinted in 1976 U.S.C.C.A.N. at 5747 ........................ 6

17 U.S.C. §102(b) ........................................................................ 4, 14, 15, 16

MGA's Reply ISO Their Mtn for Reconsideration of
the Court's Summary Judgment ruling
Case No. CV 04 9049-DOC (RNBx)

**INTRODUCTION**

Having lost its copyright claim as to all but six dolls, Mattel now seeks to pull out of the public domain all of the ideas that the Ninth Circuit and this Court have expressly found to be unprotectable under copyright law and call them trade secrets.

In fact, Mattel's Opposition to the MGA Parties' Motion for Reconsideration of the Court's Summary Judgment Ruling Regarding Copyright Preemption ("Opp.") *reinforces* the point that these claims are indeed preempted by the Copyright Act – both under express preemption and conflict preemption.  Mattel makes no effort to argue that its claimed Bratz-related trade secrets are not within the scope of copyrightable subject matter, perhaps because it cannot plausibly do so.  Mattel now identifies as its trade secrets the ideas and elements that the Ninth Circuit and this Court have found non-copyright-protectable in this very case.  Indeed, it is well established that the scope of copyrightable subject matter for preemption includes not just elements that are entitled to copyright protection, but also includes all those ideas, unoriginal and nonprotectable elements that flow from that copyrightable subject matter.  Mattel cannot refute this fact and does not even attempt to do so.

Having conceded its claimed trade secrets fall squarely within the ambit of copyrightable subject matter for purposes of preemption, Mattel instead devotes most of iTrade Secret Brief to the issue of equivalency.  But, again, Mattel does not meaningfully or persuasively dispute that the right it is seeking to protect as trade secret is identical to what it sought to protect under copyright law before the Ninth Circuit and this Court issued their copyright opinions:  the right to commercially exploit the Bratz "concept," sculpts, and drawings.  That point also effectively conceded, Mattel instead turns to a blind reliance on "secrecy," a word it elevates to talismanic status, despite the clear legal authority that requires that each claim be considered on a case by case basis, without regard to any labels such as "secrecy"

1   or "trade secret."  When the correct test and analysis are implemented, there is no

2   question that Mattel's Bratz-related trade secret claims are preempted.

3       Mattel's recent belated amendment to its identification of its trade secrets

4   makes the fact of preemption all the more apparent.  In response to MGA's

5   argument that Mattel's Bratz *concept* was disclosed in Diva Starz, Mattel again

6   purported to amend its trade secret identification.  Mattel added the italicized

7   language as follows:

8           Category One. *The following concept for a doll line as*

9           *presented by Carter Bryant to MGA*:  A multi-ethnic

10          group of hip, urban, edgy, trendy teen age girls fashion

11          dolls and accessories, collectively known as "Bratz,"

12          including designs for large, oversized heads and feet,

13          large eyes, large lips, small, almost non-existent noses,

14          and small bodies. The dolls are four high school, multi-

15          ethnic friends with attitude; each have distinctive names,

16          nick names, fashions, personalities, back stories and icons

17          descriptive of the doll's personal mascot.

18  Dkt. # 10034.  Either this means the specific drawings themselves (an expression

19  obviously the subject of copyright), or Mattel has simply taken each element from

20  the Bratz works that have been held not copyrightable as the law of this case and

21  instead turned them into elements of its alleged trade secrets.

22      Copyright preemption prevents exactly this sort of maneuver.  Moreover, the

23  evidence and testimony submitted at trial to date in Mattel's case makes clear that

24  none of these elements, either alone or in combination, were in fact "secret" in any

25  way.  Rather, they were out in the public domain.  The Ninth Circuit clearly

26  intended to prevent reliance on these non-original elements when it issued its

27  decision.  Mattel should not be permitted to recast its failed copyright claim and

28

MGA's Reply ISO Their Mtn for Reconsideration of
the Court's Summary Judgment ruling
Case No. CV 04 9049-DOC (RNBx)

1 unprotectable elements as a trade secret claim.  Mattel's Bratz-related trade secret

2 claims are preempted and should be dismissed.

3 **I.     MATTEL DOES NOT, AND CANNOT, DISPUTE THAT ITS BRATZ TRADE SECRET CLAIM IS WITHIN THE SCOPE OF COPYRIGHTABLE SUBJECT MATTER**

4

5        Tellingly, Mattel makes no attempt to argue that its Bratz-related trade

6 secrets do not fall within the scope of copyrightable subject matter.  In fact, after

7 setting forth the two-part express preemption test, Mattel simply skips the first

8 prong altogether.  Opp. at 7.  This failure is understandable particularly when

9 examined in light of Mattel's recent filings and position on trade secrets.  Those

10 filings include Mattel's most recent identification of its alleged trade secrets

11 pursuant to Court order (Dkt. # 9829, amended by Dkt. # 10034) and its Trial Brief

12 on Scope of Claim Preemption of Bratz-Related Trade Secrets, filed February 15,

13 2011 (Dkt. # 9882, "Trade Secret Brief"), both of which evidence a blatant attempt

14 to admit through the back door particular elements that the Courts have found are

15 not copyright-protectable and dress them up as a trade secret claim.[1]

16        Mattel's Trade Secret Brief does not even pretend to avoid that conclusion.

17 Mattel notes first that copyright law does not protect scenes à faire, utilitarian

18 elements, and elements where the expression merges with the idea.  Trade Secret

19 Brief at 4.  It then lists the various elements that the Ninth Circuit found were not

---

[1] Despite these new filings and other new developments in the case that directly call for reconsideration of the Court's decision on preemption, Mattel argues at length that there are not sufficient grounds for a motion for reconsideration.  Opp. at 3-6. However, it is well-settled that the granting of such a motion is left to the sound discretion of the court and may be granted where there is "clear error or the initial decision was manifestly unjust."  *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *Winkles v. United States*, 2008 WL 755933 *1 & n. 2 (C.D. Cal. Mar. 18, 2008) (quoting *School Dist. No. 1J* and finding that the standard for a motion for reconsideration pursuant to Local Rule 7-18 "is neither materially nor substantively different"); *see also Rodgers v. Watt*, 722 F.2d 456, 460 (9th Cir. 1983) (en banc) (motions to reconsider are committed to the discretion of the trial court).

1   protectable by copyright, such as "fashion dolls with a bratty look or attitude, or

2   dolls sporty trendy clothing . . . larger eyes, heads, lips and feet and skinnier torsos

3   and limbs . . . ." *Id*.  Mattel then goes on to list each and every element that MGA

4   has identified as unprotectable in its proposed jury instruction.  *Compare id*. at 5

5   *with* Dkt. # 9720 at 213-216 (MGA's Proposed Jury Instruction for Test for

6   Copyright Infringement).

7         Continuing from there, Mattel claims that its trade secret claim does not

8   consist of copyrightable elements, instead "Mattel's trade secret claim is based on

9   material that *was not* the subject of the copyright claim."  Trade Secret Brief at 6.

10  In other words, all the elements that were considered by the Court but rejected as

11  not copyrightable and all the elements that have been determined in this case not to

12  qualify as copyright protected are what form the basis of Mattel's trade secret

13  claim.  Mattel identifies its trade secrets as:  "a multi-ethnic group of hip, urban,

14  edgy, trendy teen age girls fashion dolls and accessories . . . including designs for

15  large, oversized heads and feet, large eyes, large lips, small, almost nonexistent

16  noses, and small bodies. . . ."  *Id*.  Mattel makes no attempt to avoid the conclusion

17  that it is simply collecting all the copyright rejects to create its trade secret claim;

18  rather, it touts it in its Trade Secret Brief as a reason why the Court should allow its

19  trade secret claim to go to the jury.

20        The law is well-established, however, that just because an element has been

21  found unprotectable under Copyright law does not mean that that element is not

22  covered as copyrightable subject matter.  In fact, it is well-settled that the scope of

23  copyrightable subject matter for purposes of preemption is much broader than that

24  which is actually protected under Copyright law.  Section 301 of the Act expressly

25  incorporates within its preemptive reach *all* of Section 102—including not only the

26  protectable subject matter under Section 102(a) but also the unprotectable elements

27  described in Section 102(b).  Thus, it has been held repeatedly that ideas and other

28  uncopyrightable elements within a copyrightable work are within the scope of

copyrightable subject matter for preemption purposes.  *See, e.g., Entous v. Viacom Int'l*, 151 F. Supp. 2d 1150, 1159 (C.D. Cal. 2001) ("While 'ideas' do not enjoy copyright protection, courts have consistently held that they fall within the 'subject matter of copyright' for the purposes of preemption analysis."); *Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1058 (C.D. Cal. 2000) ("'ideas embodied in a work covered by the [Act]' are nevertheless within the subject matter of copyright for purposes of preemption because '[s]cope and protection are not synonymous.'") (citation omitted); *see also U.S. ex rel. Berge v. Bd. of Trustees of the Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1997) (noting that ideas are specifically excluded from Copyright Act protection but fall under the scope of copyright subject matter are therefore "clearly preempted by federal copyright law.").

　　　　"Copyrightable material often contains uncopyrightable elements within it, but Section 301 preemption bars state law misappropriation claims with respect to uncopyrightable as well as copyrightable elements."  *National Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997).  The Second Circuit, for example, in *Harper & Row*, considering President Ford's memoirs, held that:

> [T]he [Copyright] Act clearly embraces "works of authorship," including "literary works," as within its subject matter. The fact that portions of the Ford memoirs may consist of uncopyrightable material [here purely factual material]... does not take the work as a whole outside the subject matter protected by the Act.  Were this not so, states would be free to expand the perimeters of copyright protection to their own liking, on the theory that preemption would be no bar to state protection of material not meeting federal statutory standards.

723 F.2d 195, 200 (2d. Cir. 1983) (citation omitted).  That is exactly what Mattel is seeking to do here.

The legislative history is similar.  The House Report stated:

> As long as a work fits within one of the general subject matter categories of sections 102 and 103, the bill prevents the States from protecting it even if it fails to achieve Federal statutory copyright because it is too minimal or lacking in originality to qualify, or because it has fallen into the public domain.

H.R. No. 94-1476 at 131, reprinted in 1976 U.S.C.C.A.N. at 5747.

Mattel does not contest this conclusion or this prong of the express preemption test, as to do so would expose its misguided attempt to shoehorn into a viable trade secret claim elements that are clearly covered as copyrightable subject matter but failed to qualify as protectable under copyright law.

## II.   MATTEL FAILS TO ESTABLISH THAT THERE IS ANY ASPECT OF ITS TRADE SECRET CLAIM THAT QUALITATIVELY CHANGES IT FROM MATTEL'S COPYRIGHT CLAIM

Having conceded that the elements at issue are within the subject matter of copyright, Mattel spends most of its opposition on the second prong of the express preemption test:  whether the rights Mattel seeks to assert under trade secret law are equivalent to the rights granted by the copyright law.  Mattel glosses over the fact that the claim that it seeks to assert is virtually identical to the claim it asserts under copyright law and instead focuses on the alleged "secrecy" element of its claim, arguing that trade secret claims cannot be preempted due to the "secrecy" element.  Mattel's arguments, however, fail to follow the dictates of the Ninth Circuit in analyzing claims for copyright preemption on a case by case basis without regard for the title of the claim.  The reality is that Mattel's claim, when considered in light of the facts and posture of *this case*, is preempted.

**A.      Mattel Fails to Follow the Case by Case Preemption Analysis Required by the Ninth Circuit**

Likely recognizing that a close examination of the claim it is actually asserting will confirm a finding of preemption, Mattel instead relies almost exclusively on the argument that since its cause of action is named "trade secret misappropriation" and since it contains the element of "secrecy," its claim includes an extra element that removes it from preemption.  This blind reliance on "secrecy" and Mattel's efforts to simply lump all trade secret claims together and argue that they can never be preempted ignores the Ninth Circuit's requirement on copyright preemption that each claim must be considered on a case by case basis on its own facts.  In fact, as noted in MGA's motion for reconsideration, this Court has rejected a "categorical rule" that would treat all claims of a certain type, i.e., those with the same label, such as trade secret or unfair competition, as preempted or not, simply based on that label.  "Courts have instead adopted a more fact-specific inquiry" into whether certain rights are equivalent to those in copyright.  *Entous*, 52 U.S.P.Q. 2d at 1634-35.  As a result, the Ninth Circuit has reached disparate conclusions on preemption on claims denominated with the same heading, sometimes finding them preempted and sometimes not, based entirely on what the claimant is asserting in the case at hand and not on what the claim has been titled.  *See Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1145 (9th Cir. 2006) (holding that right of publicity claim preempted, but noting that "not every right of publicity claim is preempted"); *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1439-42 (9th Cir. 1993) (finding one claim for unfair competition preempted and another claim for unfair competition not preempted).

The question that must be asked on a case by case basis is whether there is an extra element asserted in that particular case that makes the claim at issue "qualitatively" different than a copyright claim.  If the claim is still essentially vindicating a copyright right, such as the right to distribute, copy, or display, the

1   claim should be preempted.  *See Miller v. Holtzbrinck Publishers, L.L.C.*, 377

2   Fed.Appx. 72, 73 (2d Cir. 2010) ("In applying this standard, we take a restrictive

3   view of what extra elements transform an otherwise equivalent [state law] claim

4   into one that is qualitatively different from a copyright infringement claim . . .More

5   specifically, [i]f unauthorized publication is the gravamen of [plaintiff's] claim,

6   then it is clear that the right [she] seek[s] to protect is coextensive with an exclusive

7   right already safeguarded by the [Copyright] Act and thus that state law claim is

8   preempted.") (quotation omitted).  In *Miller*, the Second Circuit held that a claim

9   for tortious interference and conversion against a third party defendant publisher

10  who was alleged to have improperly converted and published a manuscript was

11  preempted since the claim was essentially one for unauthorized publication.  377

12  Fed.Appx. at 74; *see also Summit Mach. Tool Mfg. Corp.*, 7 F.3d at 1439-40 (extra

13  element must "change[] the nature of the action 'so that it is *qualitatively* different

14  from a copyright . . . infringement claim.") (quoting *Balboa Ins. Co. v. Trans*

15  *Global Equities*, 218 Cal. App. 3d 1327, 1340, 267 Cal. Rptr. 787 (1990)).

16      Thus, contrary to Mattel's assertion (Trade Secret Brief at 15), MGA is not

17  arguing that all trade secret claims are preempted or that a trade secret claim cannot

18  ever have an extra element sufficient to withstand preemption, MGA is simply

19  arguing that Mattel's specific articulation of its claim and the manner in which it

20  has pursued that claim *in this case* causes it to be preempted.

21      **B.    The Right that Mattel Seeks to Enforce is Identical To Its**
          **Copyright Claim**
22

23      Applying the proper test for preemption, looking at Mattel's claim in this

24  case specifically, and asking whether it is qualitatively different than its copyright

25  claim, the answer is clearly no.  The same acts by MGA serve as the basis for

26  Mattel's copyright claim and its trade secret claim:  the alleged use and

27  modification of copyrighted material that Mattel claims its owns, without

28  authorization, to create a new line of dolls which were reproduced, distributed and

1  sold.  Mattel's trade secret claim is not only "equivalent," it is identical to Mattel's

2  copyright theory.  In addition, the elements that Mattel has identified as the specific

3  basis of its trade secret claim are, as noted above, largely the same exact elements

4  put forth by Mattel and considered by the Court on Mattel's copyright claim.  It is

5  clear that one cannot make a claim for trade secrets that is qualitatively different

6  from a copyright claim where the claim is based on all the elements rejected as

7  unprotectable at the copyright stage.  Mattel's simple black and white approach,

8  where all trade secret claims are safe from preemption without regard to the context

9  of the case must be rejected.  *See Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d

10  1129, 1194-95 (noting that where plaintiffs made no allegation that its "materials

11  [were] a 'trade secret' in the sense that [their] mere *disclosure* would undermine

12  [their] value [and thus it. . . .] lack[ed] the 'element' of 'secrecy' that is required to

13  escape preemption under copyright").

14  **C.    Mattel's Evidence and Witnesses Establish that Mattel's Claimed**

15  **Secret Elements Were Not Even Secret**

16      The evidence and witnesses that Mattel has presented at trial establish the

17  Mattel's claimed "trade secrets" were not even secret.  For example, Mattel's Diva

18  Starz product launched in 2000 show all of the elements Mattel claims as trade

19  secrets.  The Diva Starz "Tia" doll admitted into evidence with Mattel witness Ivy

20  Ross (TX 17384, 1/19/11 Trial Tr. Vol. 1 at 154:19-25) is one of "four teen friends,

21  each with their own personality, ultra trendy look and cool attitude."  TX 35302

22  (2000 Mattel Catalog, M 0044269 at M 0044358-59); *see also* TX 17383 (2000

23  Alexa doll), TX 35313 (2000 Summer doll), TX 31312 (2000 Nikki doll[2] ).[3]   As

24

25  _____

[2] The catalog dolls were named Tia, Alexa, Summer and Paige, while the dolls

26  released in 2000 were named Tia, Alexa, Summer and Nikki (the name Nikki replaced Paige).

27  [3] MGA submits images of the trial exhibits identified herein in the accompanying Declaration of Diana Rutowski, including pictures of the tangible trial exhibits.  As

28  for those tangible exhibits that are not yet admitted, upon request MGA will lodge the tangibles with the Court.

MGA's Reply ISO Their Mtn for Reconsideration of
the Court's Summary Judgment ruling
Case No. CV 04 9049-DOC (RNBx)

Ms. Ross testified, Diva Starz was a "fashion doll" because "you were able to put fashions on and off and play with its hair." 1/19/11 Trial Tr. Vol. 1 at 27:17-28:20 (admitting pictures at TX 432, TX 433). These teen friends are multi-ethnic (*compare* Tia *with* Alexa), they are fashionable, they have distinctive names and nicknames, they come with fashions and accessories, and they even have nicknames, "back stories," and mascots as described in Mattel's catalog:

- Glam Girl*, Alexa*, is into fashion and loves pretty things. She comes with a cat and a teddy bear.
- Earthy Girl*, Summer*, loves animals and cares about the environment. She comes with a bunny and a pretend CD player.
- Sporty Girl*, Paige*, loves the outdoors and is fun to be around. She comes with a dog and a skateboard.
- Urban Girl*, Tia*, is into computers and loves to surf the net. She comes with a dog and a pretend laptop.

TX 35302 (2000 Mattel Catalog, M 0044269 at M 0044359). Ms. Ross and the dolls themselves confirm that each has a "big head" and "oversized feet," which were not unique aspects at the time of their release (1/19/11 Trial Tr. Vol. 1 at 114:12-115:2). They also have big eyes and small noses, and the character art on the box has even smaller to non-existent noses. *See* TX 17384 (2000 Tia doll), TX 17383 (2000 Alexa doll), TX 35313 (2000 Summer doll), TX 35312 (2000 Nikki doll).

Mattel released other lines of fashion dolls prior to 2000 that similarly disclose the features that it has identified as "secret." During its examination of Isaac Larian, Mattel introduced into evidence a Mattel "Hot Looks" doll, Mimi. TX 24031, 2/18/11 Trial Tr. Vol. 2 at 56:19-57:4. Mimi is one of five, multi-ethnic international teenage models "with the hot fashion look!" *Id*. Each character has her own personality, nickname, and back story as depicted both on the product box

1  itself, as well as Mattel's product catalogs: Mimi, "the romantic one" from France;
2  Stacey, "the party girl" from New York; Elkie, "the athletic one" from Sweden;
3  Chelsea, "the adventurous one" is British; and ZiZi, "the creative one" from Africa.
4  *Id*.; TX 35308 (1987 Mattel Catalog, M 0034949 at M 0034984-91).  They have
5  large heads, eyes and feet.  *Id*.

6      Mattel introduced a "Clueless" doll with Carter Bryant, which is one of three
7  multi-ethnic high school characters—Amber, Cher and Dionne—described as "the
8  chicest teen trio in Beverly Hills!" TX 23852, 2/3/2011 Trial Tr. Vol. 1 at 105:23-
9  106:12).  Mattel's 1997 catalog further describes them as "the coolest, most
10  fashionable teens ever," each character with its own animal backpack mascot—
11  teddy bear, puppy dog, and yellow bunny.  TX 35307 (1997 Mattel Catalog, M
12  0017845 at M 0017872-75).

13      In 1999, Mattel introduced the Generation Girl line of dolls, which Mattel's
14  1999 catalog describes as "[a] hot new line of ultra cool teen dolls from around the
15  world, including Barbie® doll and five hip new friends.  Together, they're the
16  coolest teens in high school!"  TX 35310 (1999 Mattel Catalog, M 0018298 at M
17  0018315-16).  The catalog goes on to describe each doll by name and interest
18  (actress, model, singer and song writer, artist, extreme sports buff, and competitive
19  athlete), and comes with a Generation Girl Magazine that "describes each friends
20  personality and how the six friends met."  *Id*.

21      Moreover, Ms. Ross testified that the Blythe dolls, which were "done a long
22  time ago," had "big head, big eyes" (TX 17753, 1/19/11 Trial Tr. Vol 1 at 109:10-
23  19, 112:1-14); Betty Boop had a big head (1/19/11 Trial Tr. Vol. 1 at 109:20-110:2,
24  111:11-13) ; and Japanese Anime from the 90s, such as Sailor Moon, depicted big
25  heads, big eyes and big feet.  TX 17758; 1/19/11 Trial Tr. Vol. 1 at 109:25-110:9,
26  111:14-25, 154:14-18.  Lily Martinez testified that the Power Puff girls also had big
27  head, big eyes, and small body.  TX 17769, 1/19/11 Trial Tr. Vol. 2 at 90:25-91:20.
28  Nor do the Power Puff girls have noses.  *Id*.; TX 34668.

1    The evidence and testimony that Mattel is presenting at trial confirms that it

2    cannot even claim the all-important element of "secrecy" – indeed, there was no

3    secret.

4    **D.    The Copyright Act Explicitly Covers Unpublished Works**

5    As noted in MGA's opening brief at page 8-9, Section 301 of the Copyright

6    Act's express language makes clear that it applies to unpublished, or "secret,"

7    works.  Section 301 says that it preempts matter within the general scope of

8    copyright "whether published *or unpublished*."  Mattel in response argues that the

9    protection afforded unpublished works by the Copyright Act and the secrecy aspect

10   of trade secrets are different such that there is no preemption.  Opp. at 14.  But

11   Mattel's argument once again fails to consider the specific facts of this case.  In this

12   case, the alleged use of the purported Bratz trade secrets and the invasion of the

13   right of first public distribution are exactly the same.  Thus, given the Copyright

14   Act's clear intention to govern the right of first publication, in this case, Mattel's

15   trade secret claim must be preempted.  Mattel's problem is that it never would have

16   exploited Bratz, so it cannot get a big damages award under the right of first

17   publication because it cannot demonstrate the lost opportunity.  But that does not

18   mean that its claim can survive preemption.

19   It is in this context that the interplay between the instruction on page 156 of

20   MGA's Proposed Jury Instructions and copyright preemption is best discussed, as

21   requested in the Court's Order dated February 9, 2011.  MGA's Proposed

22   Instruction is a correct statement of the law:  once a trade secret is published or

23   revealed, it loses its value as a trade secret, as a trade secret owes its value to the

24   fact that it is not known by others.  *See Dealertrack, Inc. v. Huber*, 460 F. Supp. 2d

25   1177, 1184 (C.D. Cal. 2006) (noting that essential element of trade secret is that it

26   is "valuable because it is unknown to others").  While this Proposed Instruction

27   addresses damages, it does help illustrate the point here that the true nature of

28   Mattel's claim is copyright.  As trade secrets, any supposed rights Mattel holds in

MGA's Reply ISO Their Mtn for Reconsideration of
the Court's Summary Judgment ruling
Case No. CV 04 9049-DOC (RNBx)

the alleged Bratz related trade secrets will expire upon publication.  Clearly, that makes little sense in a product that instead derives its value in being made public.  These works, which are intended for sale on the market, are obviously more appropriately protected by copyright – if protected by copyright, publication would do nothing to affect Mattel's continuing rights.  *See Stromback v. New Line Cinema*, 384 F.3d 283, 305-06 (6th Cir. 2004) (while not preempted, trade secret claim was still defective because there was no independent economic value from secrecy in a poem or screenplay whose economic value comes from exploitation).  It is also worth noting that this is not the kind of product where you can publish and still keep the supposed trade secret, like, for example, the formula for Coke.  The formula, which is secret, can be contrasted with the label design, which is made public upon launch and any protection would derive from copyright or trademark law.  Like a label design, once the dolls are marketed, the trade secrets of a trendy doll is revealed and no longer a trade secret, and others are free to make a trendy doll using the same idea.  This fact and MGA's instruction just reiterate that this claim for the Bratz-related trade secrets is properly one of copyright, not trade secrets.

Moreover, this Proposed Instruction draws to the forefront one of the key problems with Mattel's trade secret claim.  Once made public, a trade secret ceases to exist and no damages for its misappropriation can flow from that point on.  As set forth below, Mattel's claimed trade secrets were never secret and thus no damages should be awarded under this theory at all.  At the very least, as set forth in this Proposed Instruction, no damages can be awarded for any period of time after the trade secrets were revealed publicly – and MGA's Proposed Instruction is designed to make this clear to the jury.

## III.    MATTEL'S NEWLY DEFINED TRADE SECRETS CANNOT SURVIVE CONFLICT PREEMPTION

Section 102(b) of the Copyright Act provides that "in no case does copyright protection . . . extend to any idea" or "concept."  Thus, it would be contrary and in conflict with the statutory objectives of the Copyright Act to permit a state to enact or enforce any law that would grant protection to ideas or concepts in the face of the Copyright Act.  As noted in MGA's opening brief, courts have consistently recognized this principal, finding state law claims directed at ideas and concepts preempted.  *See Selby*, 96 F. Supp. 2d at 1058 ("ideas . . . are  . . . within the subject matter of copyright for purposes of preemption . . .").  Mattel ignores this basis for conflict preemption entirely in its opposition, instead invoking once again the same refrain—the "secrecy" element—and arguing that the inclusion of that element in California's trade secret act prevents preemption here.  Mattel Br. at 15-16.  Once again, Mattel fails to consider the claims asserted *in this case* and whether they tread on rights that are covered by copyright law.

The Court has inquired in the charging conferences why, in balancing this Congressional imperative against "states rights," the federal legislation should reign supreme.  One answer, as previously discussed, is the Copyright Clause.  Even more important, however, is *the First Amendment*:

> In addition to spurring the creation and publication of new expression, copyright law contains built-in First Amendment accommodations.  First, it distinguishes between ideas and expression and makes only the latter eligible for copyright protection.  Specifically, 17 U.S.C. §102(b) provides: 'In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it

1          is described, explained, illustrated, or embodied in such

2          work.'  As we said in *Harper & Row*, this

3          'idea/expression dichotomy strike[s] a definitional

4          balance between the First Amendment and the Copyright

5          Act by permitting free communication of facts while still

6          protecting an author's expression.  Due to this distinction,

7          every idea, theory and fact in a copyrighted work

8          becomes instantly available for public exploitation at the

9          moment of publication.

10 *Eldred v. Ashcroft*, 537 U.S. 186 (2003) (citations omitted).  As noted by the Court

11 in *Eldred*, the First Amendment and Copyright Clause were adopted close in time,

12 and are understood to work together.  Section 102(b) and the fair use defense are

13 the Copyright Act's express accommodation of First Amendment principles.  To

14 ignore the express limitations of Section 102(b) is plainly to flout the First

15 Amendment.

16       Congress has specifically determined that ideas and concepts will not be

17 protected.  Yet, given Mattel's new articulation of its trade secret claim, it is

18 apparent that Mattel is seeking protection for the very ideas and elements that the

19 Court has already considered on copyright and determined were not protectable,

20 such as the idea for a "multi-ethnic group of hip, urban, edgy, trendy teen age girl

21 fashion dolls" with "oversized heads and feet."  Mattel's attempt to take the ideas

22 that did not garner protection from the Court under copyright and turn them into

23 trade secrets is conflict preempted as contrary to Congress's intent.  Each of these

24 elements is fully within copyrightable subject matter – it is covered by copyright, as

25 noted above.  Just because the Court found those elements unprotectable does not

26 change that conclusion.  What it means, since those are covered under copyright, is

27 that a state may not enact or enforce a law or claim that protects such material.

28 Mattel is seeking to do just that -- taking those ideas and offering them as its trade

- 15 -

1   secret claim.  It is directly in contravention of copyright law *and the First*

2   *Amendment* to have those ideas protected when copyright law and Section 102(b) in

3   particular, the law that governs them and the law that takes precedence, says they

4   cannot be protected.  This is all the more true where, as here, Mattel *itself* published

5   all of the aspects of the purported "concept" long before MGA made any use of

6   Carter Bryant's expression.

7       As MGA has argued, there is an implicit requirement of novelty with respect

8   to trade secret claims.  *See Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, (1974)

9   ("some novelty will be required if merely because that which does not possess

10   novelty is usually known; secrecy, in the context of trade secrets, thus implies at

11   least minimal novelty.").  When the Ninth Circuit evaluated the Bratz claim and

12   found that certain elements were unprotectable, that was a finding that they lacked

13   originality.  If unoriginal, and thus already in the market or known, they cannot be

14   secret and thus similarly cannot qualify as trade secrets.  *See Ruckelshaus v.*

15   *Monsanto Co.*, 467 U.S. 986, 1002 (1984) ("Information that is public knowledge

16   or that is generally known in an industry cannot be a trade secret."); *see also*

17   *Chicago Lock Co. v. Emberg*, 676 F.2d 400, 404 (9th Cir. 1982) ("[T]rade secrets

18   will lose their character as private property when the owner divulges them or when

19   they are discovered through proper means.").

20       In fact, as noted above, Mattel itself has put into evidence numerous dolls

21   and examples of prior art that show that the claimed elements were not new and

22   thus not "secret" at all.  With lack of secrecy, these ideas cannot serve as trade

23   secrets and to protect them in the context of these facts would undermine copyright

24   law.  *See Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913, 915 (9th Cir.

25   2010) ("[I]deas . . . and unoriginal components aren't protectable."  Thus,

26   "[t]he concept of depicting a young, fashion-forward female with exaggerated

27   features, including an oversized head and feet, is . . . unoriginal as well as an

28   unprotectable idea."); *see also Entous,* 151 F. Supp. 2d at 1159 ("While 'ideas' do

- 16 -

MGA's Reply ISO Their Mtn for Reconsideration of
the Court's Summary Judgment ruling
Case No. CV 04 9049-DOC (RNBx)

1    not enjoy copyright protection, courts have consistently held that they fall within

2    the 'subject matter of copyright' for the purposes of preemption analysis.").

3         To escape this prior art, Mattel argues, and seeks to instruct the jury, that it is

4    not just the idea for trendy doll or any one particular element that is its trade secret

5    but rather the very specific combination of the public domain elements "as

6    presented by Carter Bryant" – just another way of saying they are seeking to protect

7    the very particular expression of the Bratz drawings and concept.  Indeed, on

8    February 20, 2011 (Dkt. # 10034), in the most recent of Mattel's amendments to the

9    identification of its trade secret claim, all of which, it should be noted, have post-

10   dated the Court's deadline for this identification and which MGA has orally moved

11   to strike on the record and hereby reiterates in writing, Mattel amends to make it

12   crystal clear that it does not seek to protect just any "generic doll line concept

13   having the identified elements" but rather only the very specific or "particular" doll

14   line concept with the elements just as presented by Carter Bryant.  In other words,

15   Mattel seeks to protect the *particularized expression of the Carter Bryant drawings*.

16   Such a claim clearly crosses the line into copyright and is preempted.

17                                    **CONCLUSION**

18        For the foregoing reasons, MGA respectfully requests that the Court

19   reconsider its December 27, 2010 preemption ruling and order that Mattel's trade

20   secret claims regarding Bratz are preempted by copyright law.

21

22

23   Dated:      February 23, 2011        Respectfully submitted,

24                                         ORRICK, HERRINGTON & SUTCLIFFE LLP

25

26                                    By: _____/s/  Annette L. Hurst_____
                                               Annett L. Hurst
27                                         Attorneys for MGA Parties

28