QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
   johnquinn@quinnemanuel.com
  William C. Price (Bar No. 108542)
   (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
   (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation,<br><br>Defendants.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>MATTEL'S TRIAL BRIEF RE: FORENSIC INK EXPERT'S RELIANCE ON EVIDENCE OF COMMERCIAL AVAILABILITY OF CERTAIN INKS PURSUANT TO FEDERAL RULE OF EVIDENCE 703<br><br>Date:   TBA<br>Time:   TBA<br>Place:  Courtroom 9D |

00505.07975/3966210.5

MATTEL'S TRIAL BRIEF RE: FORENSIC INK EXPERT'S RELIANCE ON EVIDENCE OF
COMMERCIAL AVAILABILITY OF CERTAIN INKS PURSUANT TO F.R.E. 703

**Preliminary Statement**

Mattel's expert, Dr. Valery Aginsky, is a forensic ink chemist who will testify that he found that the certain entry "From 1998 Missouri" in the notary book, TX-60, was written with a ballpoint pen using water-based ink containing menthol. To address MGA's position that such a finding is unreliable because such menthol-scented inks are rare, Dr. Aginsky will testify that based on his knowledge and research, pens of this type have been sold for years. TX 23561. In preparing this opinion, Dr. Aginsky relied in part on emails and marketing/sales brochures from a major Japanese pen maker, Zebra, demonstrating that Zebra sold pens containing gel ink with a menthol or mint scent, beginning in or around late 2002 or early 2003. See TX 23523; TX 23521; TX 23522; TX 23498. He also relied on similar emails from Bruce Gindelberger of National Ink, L.L.C. confirming the sale of other water-based inks containing menthol. Although this evidence from pen manufacturers is hearsay, it is admissible under Federal Rule of Evidence 703 because it is the type of information upon which experts in the field of document examination reasonably rely. Moreover, the probative value of this evidence substantially outweighs any prejudicial effect, and the jury can be properly instructed that they may consider the evidence only for the purpose of evaluating the validity of the expert's opinion, not as substantive evidence of the facts asserted in the documents.

**Argument**

**THE INFORMATION FROM INK MANUFACTURERS UPON WHICH DR. AGINSKY RELIED IS ADMISSIBLE TO EXPLAIN THE BASIS OF DR. AGINSKY'S OPINION**

Rule 703 permits hearsay, or other inadmissible evidence upon which an expert properly relies, to be admitted to explain the basis of the expert's opinion. See Paddack v. Dave Chr istensen, Inc., 745 F.2d 1254, 1262 -1263 (9th Cir. 1984) (expert witness properly relied on partial hearsay evidence of compliance audits to explain how expert

arrived at the conclusion that appellants performed work covered by the collective bargaining contracts for which the appellees failed to make contributions to the trust funds; if underlying hearsay documents are admitted, jury should be given limiting instruction allowing the jury to use the documents to evaluate the expert's opinion, but not as substantive evidence); U.S. v. Sims, 514 F.2d 147, 149 (9th Cir. 1975) (prosecution's psychiatrist based his opinion concerning defendant's sanity on hearsay information received from Internal Revenue agents about an investigation of defendant pertaining to "alleged irregularities" ) (pre-Federal Rules of Evidence case that analyzed the issue under pre-Rules case law as well as new Rule 703 scheduled to become effective later that year); see also U.S. v. Ramos, 725 F.2d 1322, 1324 (11th Cir. 1984) (expert could properly testify about having conducted investigative checks with New York agencies to show how expert arrived at his conclusion that defendant's birth certificate was not authentic).

Rule 703 requires that an expert base his opinions on information "reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed. R. Evid. 703. Here, the evidence on which Dr. Aginsky relied – the emails and marketing/sales brochures of Zebra Corporation, a major Japanese pen manufacturer, sent in response to Dr. Aginsky's inquiries made through a Japanese-speaking attorney, and e-mails from a pen manufacturer sent in response to the inquiries of MGA's expert, Dr. Lyter[1] – are clearly types of evidence upon which experts in the field may reasonably rely. Specifically, industry reference materials pertaining to the location and date of manufacture are types of evidence upon which an expert in the field of document examination may reasonably rely. See U.S. v. Ware, 914 F.2d 997,

---

[1] The Japanese-speaking attorney, Shinichiro Yokota, is a Japanese lawyer working as an intern at Quinn Emanuel's Los Angeles office. Mr. Yokota's inquiries, like Dr. Lyter's inquiries, were produced in this case along with the responses from the ink manufacturers.

1003 (7th Cir. 1990) (finding that various firearms trade and reference materials were admissible to show how a firearms identification expert reached his conclusion as to location of gun's manufacture); <u>United States v. Cormier</u>, 468 F.3d 63, 72 -73 (1st Cir. 2006) (same); <u>Liggons v. Roehm GMBH</u>, 1993 WL 11835, at *3 (6th Cir. 1993) (same).

In fact, MGA's ink expert, Dr. Lyter, also relied on hearsay statements from pen and ink manufacturers in forming his opinions regarding the prevalence of menthol in gel ink. <u>See</u> Lyter Depo. Tr. 725:12-726:7, Dec. 6, 2010; Expert Report of Albert Lyter, Dec. 1, 2010, at 15 (stating he had "never found by either analysis or research the presence of menthol in gel inks"). Dr. Lyter testified that his research regarding the prevalence of menthol in ink included "communications with the manufacturers." Lyter Depo. Tr. 725:12-726:7. He also testified that he considered an email from a pen manufacturer's representative to be "a reliable source" on which to base his scientific opinion. Lyter Depo. Tr. 736:19-739:1.

Rule 703 also states that "[f]acts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." <u>Fed. R. Evid.</u> 703. The explanation of how and why Dr. Aginsky arrived at his opinion is probative, as it reassures the jury that Dr. Aginsky has based his opinions on evidence that is concrete and reliable. Moreover, any potential prejudice can be eliminated with a limiting jury instruction. <u>See</u> <u>United States v. Gonzalez,</u> 376 F.3d 906, 910 ("In <u>United States v. 0.59 Acres of Land</u>, 109 F.3d 1493, 1496 (9th Cir. 1997), we held that when inadmissible evidence used by an expert is admitted to illustrate and explain the expert's opinion, it is necessary for the district court to give a limiting instruction that the evidence is to be considered solely to evaluate the expert opinion and not as substantive evidence.").

## Conclusion

For the foregoing reasons, under Rule 703, Dr. Aginsky should be permitted to present opinion testimony based on information provided by pen and ink manufacturers, and the underlying documents from the pen and ink manufacturers should be admitted into evidence accompanied by an appropriate limiting instruction that the jury may consider those documents for the limited purpose of evaluating the validity and reliability of the expert's opinion, and not as substantive evidence of the matters asserted in the documents.

DATED: February 24, 2011        QUINN EMANUEL URQUHART &
                                SULLIVAN, LLP

                                By /s/ Michael T. Zeller
                                   Michael T. Zeller
                                   Attorneys for Mattel, Inc.