QUINN EMANUEL URQUHART & SULLIVAN, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
William C. Price (Bar No. 108542)
(williamprice@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de. C.V., a Mexico business entity,

Plaintiffs,

vs.

MGA ENTERTAINMENT, INC., a California corporation, et al.,

Defendants.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 DOC (RNBx)
Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

Hon. David O. Carter

**MATTEL, INC.'S NOTICE OF LODGING OF DEPOSITION TRANSCRIPT OF MGA CANADA 30(B)(6) WITNESS DIANE GOVEIA-GORDON**

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE that plaintiffs Mattel, Inc. and Mattel de Mexico, S.A. de C.V. hereby lodge the following testimony which Mattel sought to offer in connection with the testimony of Mr. Kinrich:

1. Deposition Transcript of MGA Entertainment Canada (Diane Goveia-Gordon), Vol. 2, dated February 4, 2010 at 588:24 to 589:5; 589:23 to 590:18; 595:17 to 598:17; and 625:3 to 625:17, attached as Exhibit A.

DATED: February 26, 2011

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Michael T. Zeller
Michael T. Zeller
Attorneys for Mattel, Inc.

# EXHIBIT A

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC., A DELAWARE CORPORATION, PLAINTIFF, V. MGA ENTERTAINMENT, INC., DEFENDANT. | CASE NO. CV 04-0949 DOC (RNBX) CONSOLIDATED WITH CASE NO. 04-9059 AND CASE NO. 05-2727 |
| AND CONSOLIDATED ACTION(S) | |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**30(B)(6) DEPOSITION OF MGA ENTERTAINMENT CANADA**

**DIANE GOVEIA-GORDON, VOLUME II**

**FEBRUARY 4, 2010**




**REPORTED BY:**
PAULA A. PYBURN
CSR. NO. 7304
JOB NO. 10AE124-PP

515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

MATTEL, INC., A DELAWARE CORPORATION

PLAINTIFF,

V.

MGA ENTERTAINMENT, INC.,

DEFENDANT.

AND CONSOLIDATED ACTION(S)

CASE NO. CV 04-9049 DOC(RNBX)

CONSOLIDATED WITH CASE NO. 04-9059 AND CASE NO. 05-2727

CONFIDENTIAL - ATTORNEYS' EYES ONLY

VIDEOTAPED 30(B)(6) DEPOSITION OF MGA ENTERTAINMENT CANADA (DIANE GOVEIA-GORDON), VOLUME II, taken on behalf of Mattel, Inc., at 600 West Santa Ana Boulevard, Santa Ana, California, commencing at 8:10 a.m., Thursday, February 4, 2010, before Paula A. Pyburn, C.S.R. 7304, R.P.R., C.L.R.

APPEARANCES:

THE DISCOVERY MASTER:

ARENT FOX
BY: DREW R. HANSEN, DISCOVERY MASTER
(Where Indicated)
555 West Fifth Street
48th Floor
Los Angeles, California 90013-1065
(213) 629-7400

FOR MATTEL, INC.:

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
BY: SCOTT L. WATSON, ESQ.
and
BY: JOSEPH C. SARLES, ESQ.
865 South Figueroa Street
10th Floor
Los Angeles, California 90017
(213) 443-3000
scottwatson@quinnemanuel.com
josephsarles@quinnemanuel.com

FOR M.G.A. ENTERTAINMENT, INC., AND THE WITNESS:

ORRICK, HERRINGTON & SUTCLIFFE LLP
BY: WILLIAM A. MOLINSKI, ESQ.
777 South Figueroa Street, Suite 3200
Los Angeles, California 90017-5855
(213) 612-2256
wmolinski@orrick.com

ALSO PRESENT:

Steven Togami, J.T.V. Litigations Services, Inc.

# I N D E X

| WITNESS: | EXAMINED BY: | PAGE: |
|---|---|---|
| 30(B)(6) DEPOSITION OF MGA ENTERTAINMENT CANADA (DIANE GOVEIA-GORDON) | | |
| | MR. WATSON | 348 |
| | AFTERNOON SESSION | 504 |

EXHIBITS PREVIOUSLY MARKED AND REFERRED TO:

(BOUND SEPARATELY)

| NUMBER | PAGE |
|---|---|
| 6908 | 507 |
| 6909 | 516 |
| 6912 | 535 |
| 6913 | 552 |
| 6914 | 590 |
| 6916 | 653 |
| 6917 | 655 |
| 6918 | 657 |
| 6919 | 658 |
| 6920 | 659 |
| 6921 | 660 |
| 6922 | 662 |
| 6943 | 663 |

EXHIBITS FOR IDENTIFICATION: (BOUND SEPARATELY)

| Number: | | |
|---|---|---|
| 8016 | Email Chain, MGA 1024114 - MGA 1024116, 3 pages | 364 |
| 8017 | 7/23/04 KRA Report, MGA 1020029 - MGA 1020031, 3 pages | 426 |

EXHIBITS FOR IDENTIFICATION: (Continued)

(BOUND SEPARATELY)

| Number: | | |
|---|---|---|
| 8018 | 9/10/04 KRA Report, MGA 1020192 - MGA 1020193, 2 pages | 431 |
| 8019 | Job Posting for National Account Director, MGA2 0538324, 1 page | 444 |
| 8020 | Email Chain, MGA 0202494 - MGA 0202499, 6 pages | 458 |
| 8021 | Email Chain, MGA 0202500 - MGA 0202505, 6 pages | 479 |
| 8022 | Email Chain, MGA 0877287, 1 page | 489 |
| 8023 | Email Chain, MGA 0877284 - MGA 0877288, 5 pages | 504 |
| 8024 | ***Withdrawn by Counsel*** | 517 |
| 8025 | 9/29/05 Letter from McCarthy Tetrault to Ms. Goveia-Gordon, MGA 0869790 - MGA 0869791, 2 pages | 535 |
| 8026 | Email Chain, MGA 0202565 - MGA 0202566, 2 pages | 545 |
| 8027 | 4/5/06 Performance Review of Janine Brisbois, MGA 0869793 - MGA 0869795, 3 pages | 562 |
| 8028 | Undated Performance Review of Janine Brisbois, MGA2 0703325 - MGA2 0703327, 3 pages | 573 |
| 8029 | KPMG Report on USB Thumb Drive, M 0926513 - M 0926528, 16 pages | 638 |
| 8030 | Printout of Spreadsheets, M 0099666 - M 0099725, 60 pages | 676 |
| 8031 | Email Chain, IGWT 52507 - IGWT 52508, 2 pages | 689 |

EXHIBITS FOR IDENTIFICATION: (Continued)

(BOUND SEPARATELY)

| Number: | | |
|---|---|---|
| 8032 | Email Chain, MGA2 0567357 - MGA2 0567359, 3 pages | 695 |

INFORMATION REQUESTED:

(None)

QUESTIONS UNANSWERED BY WITNESS:

(None)

Q. Did Ms. Brisbois's title change at any point prior to her first maternity leave?

A. No. The scope of her responsibility changed, but her title did not change.

Q. And when was Ms. Brisbois first responsible for a doll role, either at Toys "R" Us or at Walmart, after she joined M.G.A.? 03:47:39

A. I -- I believe that was not until late 2006, when Sonia stepped out of those two doll roles. 03:48:11

Q. And is -- is it the case that Ms. Brisbois received an increasing responsibility in that time period in late 2006 by virtue of taking on the doll roles?

MR. MOLINSKI: Objection; vague. 03:48:32

THE WITNESS: Increased responsibility?

BY MR. WATSON:

Q. Let me ask it a different way.

Was her job at the end of 2006 a bigger job than her job at the beginning of 2006? 03:48:55

MR. MOLINSKI: Objection; vague.

THE WITNESS: The way I would characterize it is she had more on her plate, because of course we were trying to fill a position that was vacant, so she was -- so she indeed had more on her plate at 03:49:11

that time.

BY MR. WATSON:

Q. So she joins in late 2005, October 2005, and over the next year and couple of months was she kind of increasingly getting more on her plate? Is that a fair characterization? 03:49:24

MR. MOLINSKI: Objection; vague.

THE WITNESS: No, I wouldn't say that she was increasingly getting more. And if we had a position filled for Sonia, to replace Sonia, if we, 03:49:37 you know, lucked out and found somebody to replace Sonia, then that -- that position would have been filled by somebody replacing Sonia at that time. And because we did not, she, you know, took on that additional responsibility and that additional 03:49:57 workload for that period of time.

BY MR. WATSON:

Q. Was the fact that she took that on a reflection of your view that -- that she could handle it? 03:50:09

A. Yes, it was.

Q. Because she was doing a good job.

A. Yes.

Q. Now, you learned at some point that Ms. Brisbois had not in fact returned all of the 03:50:48

information in her possession when she left Mattel; is that correct?

MR. MOLINSKI: Objection; vague, lack of foundation.

THE WITNESS: Yes. 03:50:57

BY MR. WATSON:

Q. And when did you learn that?

A. Can you be more specific when you say that she did not return all of the material in her possession? 03:51:11

Q. Are you aware that Mattel has alleged in this action that Ms. Brisbois took with her certain confidential and trade secret information when she left Mattel?

MR. MOLINSKI: And to the extent you have an awareness of those allegations from counsel, those would be privileged, but if you know otherwise, you can answer. 03:51:25

THE WITNESS: Yes, I am aware of that.

BY MR. WATSON: 03:51:35

Q. You're aware of the allegation?

A. Yes, I am.

Q. And are you aware the Peel Regional Police Department recovered from Ms. Brisbois a flash memory device containing a substantial number of 03:51:47

Mattel confidential documents?

MR. MOLINSKI: Objection; lack of foundation.

THE WITNESS: I am aware that a police officer recovered a disk that had material on it. 03:51:59

BY MR. WATSON:

Q. And when you say "disk" --

A. That -- or fla- -- the term that you used.

Q. Flash memory device?

A. A flash memory device. 03:52:10

Q. When did you first learn that Ms. Brisbois had taken with her from Mattel a flash memory device containing certain Mattel documents?

A. I learned that from Janine either on the day that she was contacted by the Peel police or the 03:52:31 day following.

I believe it was the day she was contacted, I -- I believe I recall.

MR. WATSON: Let's go ahead and take a look at a document that's previously been marked 03:53:20 Exhibit 6943.

(Exhibit 6943 previously marked.)

BY MR. WATSON:

Q. I'll represent to you that the two stamped circles on this document were added by the court 03:53:46

reporter at Ms. Brisbois's deposition.

A. Okay.

Q. And let me know when you have had a chance to review the document.

MR. MOLINSKI: They do use big stamps in Canada, don't they? 03:54:05

MR. WATSON: They also transcribe by talking in like a little earpiece thing, and then they transcribe it later. There's no -- there's a person who sits there who is described as a court reporter, but she doesn't have a stenographic machine. 03:54:24

MR. MOLINSKI: Really?

MR. WATSON: They actually like repeat everything that you say into this tape recorder, and then later somebody else types it up. 03:54:31

Q. Have you had an opportunity to review this?

A. I have.

Q. Have you ever seen this -- this email before? 03:54:58

A. Yes, I have.

Q. And is this an email that Ms. Brisbois sent to Mr. Larian and yourself?

A. Yes, she did.

Q. And you can see that the email is dated 03:55:06

believe that's part of what is considered Peel region.

Q. Did you ask her anything further about why she thought it involved Mattel?

A. I -- I don't -- I don't recall if I asked her at that time, you know, to speculate on what she thought it would be related to. 03:57:52

Q. Do you recall if she shared anything additional other than a -- than speculation that it might relate to Mattel in that call? 03:58:08

A. I -- I don't believe that there was anything further in that call. I think that was a fairly short call.

Q. At any point during that call did she indicate to you that she might have Mattel information that she had brought with her after she left Mattel? 03:58:18

A. I don't believe that that was conveyed in that conversation.

Q. Do you recall doing anything after that conversation? 03:58:30

MR. MOLINSKI: Objection; vague.

THE WITNESS: No. At that point I knew very little, and I don't recall doing anything after that. 03:58:45

BY MR. WATSON:

Q. Subsequently then Ms. Brisbois did meet with the Peel Regional Police; correct?

A. That's correct.

Q. And then I think you indicated she spoke to you about that meeting either the same day or the next day? 03:58:55

A. That's correct, I believe it was the next day.

Q. And you couldn't recall and you can't recall still whether that was an in-person or a telephonic discussion? 03:59:04

A. I believe that meeting was in person.

Q. Do you recall where that meeting took place? 03:59:14

A. I believe that took place in my office.

Q. And what did Ms. Brisbois tell you in that meeting?

A. She conveyed to me that the police officer asked her about a -- a flash drive and -- and -- and she told me that she had indeed copied some personal documents and other files that she described as examples of the work that she had done onto a floppy -- a -- whatever that term is -- 03:59:28

Q. Flash drive? 03:59:48

A. -- flash drive. And -- and that that was what he was coming to ask her about, or meet with her about.

Q. Do you recall anything else that she said to you in that conversation?

04:00:00

A. Well, yes. Certainly I asked her -- (A) I asked her why she had put anything on a flash drive, given the repeated instructions, verbal, written instructions from all of us that she was not to remove anything at all prior to leaving Mattel.

04:00:21

Q. And do you recall what she said in response to that?

A. Yes. I recall that she said, you know, something to the effect of, Di, I know that it was a stupid thing to do, but it was just -- it wasn't -- I wasn't -- I wasn't considering myself taking anything that was confidential -- I -- I shouldn't paraphrase, because I don't remember the terms that she used. But she assured me that she had taken nothing that she intended to use in any way that would have breached that confidentiality that she -- that -- you know, that she indeed took seriously.

04:00:45

04:01:00

Q. Do you recall anything else she said to you in that meeting?

A. Yes. I asked her in that meeting -- or,

04:01:17

no, before I asked her in that meeting, I recall that she said something -- something to the effect of, you know, the ironic part about all of this is that the first time I've even touched the flash drive was about -- and I can't remember if she said a week ago or two weeks ago -- was the first time that I accessed it. 04:01:37

And -- and I asked her why she accessed it, and she said it was to use a -- a format, a format from -- you know, a kind of a format that she had developed at Mattel for something that she wanted to use a similar format for M.G.A. information; so that's what she had conveyed to me at that time. 04:01:52

Q. Do you recall anything else she said to you in that meeting? 04:02:06

A. I believe that I asked her about what that was, and I think as she described that document she -- I think she -- I think it was in this meeting that she said, oh, you might remember, it was -- you know, it was what I called a waterfall chart that I -- I gave you a copy of it, you know, last week or a couple of weeks ago in a proposal for Toys "R" Us. 04:02:24

But it was a -- it was a format that I didn't -- I didn't care for, I didn't like the look of, and we elected not to use it. 04:02:39

So she just reminded me that it was -- oh, it was that format that you -- you asked me to take out of the Toys "R" Us -- I think it was a Toys "R" Us document.

Q. And do you recall anything else that she told you in that meeting? 04:02:50

A. I think she mentioned a -- a second document that, again, she used as a format, a similar format.

She continued to stress to me that she used nothing that wasn't -- you know, she used no data or information of Mattel. She stressed that it was a format that she wanted to use on the second document as well to populate with M.G.A.-related information. 04:03:05

Q. Anything else? 04:03:22

A. That's -- that's what I recall from the conversation.

Q. Do you recall anything that you said to her in that conversation that you haven't told me?

A. Well, I -- you know, I believe that I conveyed to her that, you know, you realize that this is -- you know, regardless of the lack of intent to breach anything, that this -- that this goes against specifically what we asked you and what we instructed not to do. 04:03:44

04:04:03

And -- and, you know, she reiterated, yes, you know, I realize that, but I wasn't taking any information with the intention of using any information, any confidential information.

So that -- I think that covers what I -- I recall in that -- that initial conversation. 04:04:18

Of course I told her that I would be notifying Isaac, Ron, of -- of the incident, and -- and alerting them to -- to that.

Q. Anything else? 04:04:36

A. There isn't anything else that I can think of right now, no.

Q. So you have now told me everything you can recall about that conversation with Ms. Brisbois on May 31st, 2006? 04:04:52

A. Yes.

Q. Had Ms. Brisbois ever informed you prior to that conversation on May 31st, 2006, that she had taken in electronic form any documents from Mattel?

A. No, she had not. 04:05:08

Q. To your knowledge, prior to that conversation on May 31st, 2006, had Ms. Brisbois informed anyone at M.G.A. Canada that she had taken documents in electronic form from Mattel?

A. No. 04:05:25

THE WITNESS: I evaluate something as wrongful if there was intent in -- in some way to --

BY MR. WATSON:

Q. And you've told -- you've told me --

A. -- to -- 04:59:33

MR. MOLINSKI: Do not interrupt the witness.

BY MR. WATSON:

Q. I'm sorry, did I cut you off? Did you finish? 04:59:38

A. I -- I was trying to express that I -- I consider something wrong if -- if it is done with, you know, some kind of an -- an intention, a malicious intention. I believe that this was done in an innocent way. It was not done with any 04:59:51 malicious intent.

Q. And based on that, therefore it is your conclusion that Ms. Brisbois did not act wrongfully when she removed this material from Mattel; is that correct? 05:00:07

MR. MOLINSKI: Objection; asked and answered.

THE WITNESS: I -- yes, I feel that there's a line between wrongful and foolish, and I -- it was wrongful of her to go against the instructions of 05:00:29

M.G.A.

BY MR. WATSON:

Q. So just so I'm clear, the only thing that you're willing to say that she did wrong was to disobey M.G.A.'s instructions? 05:00:43

MR. MOLINSKI: Objection; misstates the witness's testimony, vague.

BY MR. WATSON:

Q. Is that correct?

A. Whether or not she had intention to use the information on the disk to her advantage, I would consider that it was wrong to take it, given that she was told both by Mattel and by M.G.A. that she was not to do so. 05:00:53

Q. So Ms. Brisbois wrongfully took this information from Mattel; correct? 05:01:32

A. Yes.

MR. MOLINSKI: Objection -- objection --

THE WITNESS: I'm --

MR. MOLINSKI: -- misstates testimony -- 05:02:03

BY MR. WATSON:

Q. You --

MR. MOLINSKI: -- calls for a legal conclusion.

///

BY MR. WATSON:

Q. Your answer was yes?

A. Yes.

Q. What do you base your conclusion that Ms. Brisbois was acting without malicious intent on? 05:02:42

A. I base that on -- on my experience with her. She had worked for me for a number of months at that point, and I had seen no evidence, heard no evidence. I had seen no example of her using any information that she had from Mattel. 05:02:53

Q. She never told you, either before or after this incident came to light, that information that she was using had come from Mattel; is that correct?

MR. MOLINSKI: Objection; misstates the testimony, lack of foundation. 05:03:13

MR. WATSON: Let me ask the question differently.

Q. Ms. Brisbois never told you at any time that she was using Mattel documents; is that correct? 05:03:38

MR. MOLINSKI: Objection; assumes facts not in evidence, lack of foundation.

THE WITNESS: She did not ever tell me she was using Mattel documents, and I did not ever see evidence of her using Mattel documents. 05:03:49

Deposition Officer's Certificate

United States District Court )
) SS.
Central District of California )

I, PAULA A. PYBURN, hereby certify:

I am a duly qualified certified shorthand reporter in the state of California, holder of Certificate Number CSR 7304 issued by the Court Reporters Board of California and which is in full force and effect. [FED. R. DIV. P. 28 (A)].

I am authorized to administer oaths or affirmations pursuant to California Code of Civil Procedure, Section 2093(B) and prior to being examined, the deponent was first duly sworn by me. [FED. R. CIV. P. 28(A), 30(F)(1)].

I am not a relative or employee or attorney or counsel of any of the parties, nor am I a relative or employee of such attorney or counsel, nor am I financially interested in this action. [FED. R. CIV. P. 28].

I am the deposition officer that stenographically recorded the testimony in the foregoing deposition and the foregoing transcript that is a true record of the testimony given by the deponent. [FED. R. CIV. P. 30(F)(1)].

Before completion of the deposition, review of the transcript [xx] was [ ] was not requested. If requested, any changes made by the deponent (and provided to the reporter) during the period allowed are appended hereto. [FED. R. CIV. P. 30(E)].

Dated: February 26, 2010

PAULA A. PYBURN
C.S.R. No. 7304, R.P.R.
Certified LiveNote Reporter






ORRICK, HERRINGTON & SUTCLIFFE LLP
THE ORRICK BUILDING
405 HOWARD STREET
SAN FRANCISCO, CALIFORNIA 94105-2669

tel +1-415-773-5700
fax +1-415-773-5759

WWW.ORRICK.COM

April 9, 2010

Jacqueline D. Kaddah
(415) 773-5558
jkaddah@orrick.com

Scott L. Watson, Esq.
Joseph C. Sarles, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Alexander Cote, Esq.
Scheper Kim & Overland LLP
One Bunker Hill
601 West Fifth Street, 12th Floor
Los Angeles, California 90071

Re: Carter Bryant v. Mattel, Inc., and consolidated cases

Dear Counsel:

Enclosed please find the signed errata and Declaration of Witness to the transcripts of the 30(b)(6) MGA Canada deposition of Diane Goveia-Gordon, taken on February 3, 4 and 5, 2010.

Very truly yours,

ORRICK, HERRINGTON & SUTCLIFFE LLP

Jacqueline D. Kaddah
Senior Paralegal

JDK/jdk

cc: Bill Molinski

OHS West:260893908.1

DEPOSITION ERRATA

Bryant v. Mattel and Consolidated Actions,

Case No.: 2:04-CV-9049-DOC, C.D. Cal., Santa Ana

Deposition of Diane Goveia-Gordon, Volume III, taken on February 5, 2010

| PAGE | LINE | DESCRIPTION OF CHANGE |
|---|---|---|
| 138 | 23 | "directed DVD" should read "direct-to-DVD" |
| 245 | 14-15 | should read "...that there was... Exclusives weren't..." |
| 268 | 1 | should read "Don Cameron" not "John" |
| 436 | 13 | "Bandai" should change to "MGA" |
| 458 | 10 | "hadn't" should change to "had" |
| 494 | 18 | "told me that" should change to "told her that" |
| 551 | 10-11 | should read "doing a better job than Mattel" |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

I declare under penalty of perjury under the law of the State of California that the foregoing is true and correct and that I have read my deposition and have made the necessary corrections, additions or changes to my answers which I deem necessary.

Executed on this 9 day of April, 2010.

Diane Goveia-Gordon

DECLARATION OF WITNESS

I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Markham ON, on April 09, 2010.
(PLACE) (DATE)

[signature]
(SIGNATURE OF WITNESS)