ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Tel: 415-773-5700/Fax: 415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel: 213-629-2020/Fax: 213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br>Consolidated with:<br>CV 04-9059<br>CV 05-2727<br><br>**MGA PARTIES' OPPOSITION TO MATTEL INC.'S RESPONSE TO MGA'S ASSERTION OF PRIVILEGE AS TO MGA2 3121569**<br><br>Trial Date: January 11, 2011<br>Judge: Hon. David O. Carter |

**IN CAMERA**

**(REDACTED FOR SERVICE AND FILING)**

1

## INTRODUCTION AND STATEMENT OF FACTS

2   MGA2 3121569 was a confidential communication from Isaac Larian to an

3 MGA attorney, Craig Holden, relating to recent events in the ongoing litigation

4 between MGA and Mattel.  It was produced in error from the unallocated space of

5 an .ost file, a form of short-term storage.  It was partially overwritten or otherwise

6 corrupted and omitted the name of its recipient.  Contrary to Mattel's assertion,

7 MGA2 3121569 is protected by the attorney-client privilege and the work product

8 doctrine.

9   MGA2 3121569 was written shortly after Mattel deposed Veronica Marlow

10 on December 28, 2007.  At that deposition, Marlow testified that she had employed

11 moonlighting seamstresses to help her on nights and on weekends.  12/28/07

12 Veronica Marlow Depo. Tr. at 286 (Cabrera), 306 (Morales), 363 (Salazar).  She

13 further testified that did not tell anyone at MGA whom she employed, let alone that

14 they had day jobs at Mattel, because "it was none of their [MGA's] business.  They

15 contract me, and I would put whatever—whoever I wanted to work on the project."

16 *Id.* at 295.  Peter Marlow likewise testified that neither he nor his wife ever told

17 Paula Garcia or anyone else at MGA who they employed.  5/2/08 Peter Marlow

18 Depo. Tr. 108.  He repeated this testimony at the first trial in this action. Tr. 3659-

19 60.  In fact, as Mr. Marlow testified, the Marlows purposefully withheld this

20 information because they had promised two of the seamstresses, Ana Cabrera and

21 Beatriz Morales, that they would never reveal their moonlighting to anyone because

22 the seamstresses feared reprisal from Mattel if anyone ever found out.  6/2/08 Peter

23 Marlow Depo Tr. 348-352.

24 ███████████████████████████████████████

25 ███████████.  At the time, Paula Garcia had already been deposed four times in

26 2007.  During those depositions, Mattel did not ask her about the seamstresses.  She

27 was not deposed again until April 2010, more than two years later.  Between

28

1   January 2008 and April 2010, she testified at trial, but was not asked about

2   Marlow's use of the moonlighting seamstresses.

3       In April of 2010, when Paula was first asked about the moonlighting

4   seamstresses, she testified that she neither was aware of them or suspected that the

5   Marlows were using moonlighting seamstresses until she received an email from

6   them in August 2005, by which time MGA had ceased using the Marlow's services.

7   1/20/2011 Tr. 37-42. Ms. Garcia also confirmed that the Marlows had never told

8   her who their employees were. 4/21/10 Paula Garcia Depo. Tr. 1443; see also

9   1/20/2011 Tr. 37-42. Paula never thought much about who the Marlows employed:

10  "I was commissioning Veronica to do good work, and she delivered on them. Who

11  she hired to get the job done, I didn't think to ask. I—I was just happy with what

12  she delivered." 4/21/2010 Paula Garcia Depo. Tr. 1444.

13      Finally, the document simply should not be allowed into evidence because it

14  is incendiary and highly prejudicial. ████████████████████████████████

15  ████████████████████████████████████████████████████████████████████

16  ████████████████████. Such communications are precisely what the attorney-

17  client privilege protects. But no jury will hear or care for the explanation given

18  how Mattel intends to use the email. This should not be allowed.

19                          **ARGUMENT**

20  **I.    THE DOCUMENT IS A PRIVILEGED COMMUNICATION WITH**
        **COUNSEL.**
21

22      MGA2 3121569 is privileged because a client is entitled to participate in case

23  preparation, and communications in that regard are privileged. *See United States v.*

24  *Johnson*, 146 F.3d 785, 794 (10th Cir. 1998) (privilege covers communication

25  relating to legal advice or strategy); *Kandel v. Brother Int'l Corp.*, 683 F. Supp. 2d

26  1076, 1083 (C.D. Cal. 2010) (applying California law and noting that

27  communications made for purpose of preparing for defense of litigation are

28  privileged). Although Mattel posits that a communication can be privileged only if

1  made for the purpose of seeking legal advice, courts have recognized that the

2  privilege extends beyond that, as noted above.  That is with good reason.  It would

3  make no sense not to protect communications "because they do not seek legal

4  advice" but rather only provides "instructions."  Dkt. No. 10040 (Mattel's Br.) at 1.

5      Mattel's own cases reflect the gulf between this case and their argument.

6  Asking a lawyer to file a notice of appeal, *Rattner v. Netburn*, 1989 WL 223059,

7  *26 (S.D.N.Y. June 20, 1989), or mail a letter, *United States v. Elkin*, 731 F.2d

8  1005, 1008 n.2 (2d Cir. 1984), is not akin to actual participation in developing a

9  case.  Moreover, application of Mattel's standard would lead to absurd results.  For

10  instance, Mattel's conception of the privilege would protect a communication

11  seeking the advice of counsel "can I sue him?" but not the instruction "I want to sue

12  him."  But whether one is phrased in the form of a question and the other as a

13  directive does not determine privilege.  Communication between a party and his

14  attorney directing the course of litigation is not a game of *Jeopardy!*, in which

15  litigants are at their peril if they fail to make their statements in the form of a

16  question.  Rather, "[c]onfidential disclosures by a client to an attorney *made in*

17  *order to obtain legal assistance* are privileged."  *Fisher v. United States*, 425 U.S.

18  391, 403 (1976) (emphasis added); *In re Grand Jury Witness*, 695 F.2d 359, 362

19  (9th Cir. 1982) ("Confidential communications between attorney and client made in

20  order to obtain legal assistance are likewise privileged."); *see also In re Grand Jury*

21  *Subpoena*, 204 F.3d 516, 520 (4th Cir. 2000) (privilege covers communications

22  "for the purpose of securing primarily either (i) an opinion on law or (ii) legal

23  services or (iii) assistance in some legal proceeding."); *In re Lindsey*, 148 F.3d

24  1100, 1106 (C.A.D.C 1998) (same); *Montgomery County v. MicroVote Corp.,* 175

25  F.3d 296, 301 (3d Cir. 1991) (same); *United States v. Robinson*, 121 F.3d 971, 974

26  (5th Cir. 1997) (same).

27      The analysis here is no different merely because Larian was communicating

28  with in-house litigation counsel rather than external litigation counsel.  *See, e.g.,*

MGA PARTIES' OPPOSITION TO MATTEL INC.'S
RESPONSE RE MGA2 3121569
CV 04-9049 DOC (RNBx)

1   *Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981) (holding that

2   communications between corporate counsel and a corporation's employees made

3   for purpose of obtaining legal advice are protected by the attorney-client privilege);

4   *Tucker v. Fischbein*, 237 F.3d 275, 288 (3d Cir. 2001) ("The  communications with

5   in-house counsel here were clearly for the purpose of rendering legal advice and

6   therefore are privileged."); *see also United States v. Chen*, 99 F.3d 1495, 1501 (9th

7   Cir. 1996) ("the privilege attaches when legal services are sought "from a

8   professional legal advisor *in his capacity as such*.") (emphasis in original).

9   ## II.  THE DOCUMENT IS FURTHER PROTECTED BY THE WORK PRODUCT DOCTRINE.

10

11          In addition, the document at issue is protected by the work-product doctrine.

12  Documents, even if prepared solely by a party to litigation may be accorded work

13  product protection.  This is fully consistent with—and in fact mandated—by

14  Federal Rule of Civil Procedure 26(b)(3).  "[T]o qualify for protection against

15  discovery under Rule 26(b)(3), documents must have two characteristics: (1) they

16  must be 'prepared in anticipation of litigation or for trial,' and (2) they must be

17  'prepared by or for [the] party [seeking the protection] or by or for that … party's

18  representative.'"  *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004)

19  (quoting Fed. R. Civ. Pro. 26(b)(3)) (citations omitted). "A lawyer need not be

20  involved at all for the work product protection to take effect."  *Goff v. Harrah's*

21  *Operating Co., Inc.*, 240 F.R.D. 659, 660 (D.Nev. 2007) (quoting Roger Park et al.,

22  *Hornbook on Evidence Law* § 8.09 (West 2d ed. 2004); *see also Hertzberg v.*

23  *Veneman*, 273 F. Supp. 2d 67, 76 (D.D.C. 2003) ("By its own terms, then, the work

24  product privilege covers materials prepared by or for *any party or for its*

25  *representative*; they need not be prepared by an attorney or even for an attorney.")

26  (emphasis in original) (citation omitted).

27  ██████████████████████████████████████

28  ██████████████████████████████████████

1    ████████████████████████████████████████.  It is

2    protected.  *See Hynix Semiconductor, Inc. v. Rambus, Inc.*, 2008 WL 397350 *2-4

3    (N.D. Cal. Feb. 10, 2008) (contents of communications regarding how witness

4    prepared for testimony protected by work product doctrine); *Holliday v. Extex*, 447

5    F. Supp. 2d 1131, 1139 (D. Haw. 2006) (notes provided by employee to attorney

6    protected by work product doctrine).

7          For these reasons, the privilege applies.

8    **III.    THE EMAIL WAS INTENDED TO REMAIN CONFIDENTIAL.**

9          Mattel's argument that the email should be disclosed because its contents

10   were intended to be communicated makes no sense.  Mattel's Br. at 3.  ██████████

11   ████████████████████████████████████████████████████████

12   ████████████.  As the Marlows each independently testified, they never told

13   Paula who they were using to sew samples.  *See, e.g.,* Veronica Marlow Depo. Tr.

14   at 295; Peter Marlow Depo Tr. at 108.  As Paula Garcia later testified, she did not

15   know and never thought to ask.  *See* Paula Garcia Depo. Tr.  1444.

16         Second, Mattel's interpretation of privilege renders discoverable many

17   clearly privileged communications between attorneys and clients.  For instance, a

18   communication from a client to his attorney suggesting themes to raise at trial or

19   avenues to explore with an opposing witness would be discoverable under Mattel's

20   standard because "they were intended to be disclosed."  This is not the law; nor do

21   Mattel's cases stand for any such proposition.  Rather, all of the cases Mattel cites

22   are instances in which the attorney was merely acting as a conduit for information

23   intended to be communicated verbatim—or nearly so—from the client to a third

24   party.   So, in *United States v. Ruehle*, 583 F.3d 600, 610 (9th Cir. 2009), Ruehle

25   met with attorneys specifically to provide them with information to be passed on to

26   a third party and he "confirmed over and over again his awareness that the

27   substance of his June 2006 interviews with the Irell lawyers was not to be held in

28   confidence."

1        Mattel's other cases all stand for the same, unremarkable principle that a

2   communication that is not intended to remain confidential but rather is expressly

3   intended to be passed on to third parties is not privileged.  *United States v. Lawless*,

4   709 F.2d 485, 487 (7th Cir. 1983) (information intended to be provided by tax

5   attorney to government for preparation of a tax return, which is in any event

6   "primarily an accounting service," is not privileged); *Esposito v. United States*, 436

7   F.2d 603, 606 (9th Cir. 1970) (information to be relayed to court); *Neri v.*

8   *Hornbeak*, 550 F. Supp. 2d 1143, 1171 (C.D. Cal. 2008) (communication intended

9   to be disclosed at trial); *United States v. Sabbeth*, 34 F. Supp. 2d 144, 154

10  (E.D.N.Y. 1999) (communication intended to be relayed "virtually verbatim" to the

11  banks).

12       That is hardly the case here. ███████████████████████

13  ████████████████████████████████████████████████████

14  ████████████████████████████████████████████████

15  ████████████████████████████████████████████████

16  ████████████████████████████████████████████████████. Even

17  if, as Mattel alleges, it was intended to guide counsel's preparation of Paula Garcia

18  for deposition, it would nevertheless be privileged.  *See Banks v. Office of the*

19  *Senate Sergeant-at-Arms*, 241, F.R.D. 376, 382-83 (D.D.C. 2007) (communications

20  between client and counsel during an interview or a deposition preparation session

21  are privileged; further "questions and comments by a lawyer and his client's

22  employees as they discuss legal and factual questions that have arisen in litigation

23  or prepare for a deposition are at the heart of a lawyer's preparation" and are

24  protected by the work-product doctrine);  *AMCO Ins. Co v. Madera Quality Nut,*

25  *LLC*, 2006 WL 931437 at *18 (E.D. Cal. April 11, 2006) (communications between

26  employee and counsel regarding deposition preparation covered by the attorney-

27  client privilege); *Coleman v. City of New York*, 1999 WL 493388, *1-*2 (S.D.N.Y.

28  July 8, 1999) (conversations between counsel and three New York City employees

1  concerning their depositions noticed by plaintiff's counsel are privileged); *Western*

2  *United Life Assur. Co. v. Fifth Third Bank*, 2004 WL 2583916, *1-*3 (N.D.Ill. Nov.

3  12, 2004) (discussions occurring in the course of preparing for a deposition are

4  privileged).

5  ## IV.   THE DOCUMENT SHOULD NOT BE ALLOWED INTO EVIDENCE.

6          Finally, the document should not be allowed into evidence because it is

7  highly prejudicial.  Jurors likely have little, if any, conception of how witnesses are

8  prepared by counsel for deposition.  Explaining this context and the context of this

9  specific email would require MGA to further waiving the privilege.  MGA will be

10 required to go into how it prepared Paula Garcia for deposition and so on.  As noted

11 by the Court in *Hynix Semiconductor*, there are some fair questions to be asked of a

12 witness about deposition or trial preparation—whether it occurred, how long are

13 examples.  2008 WL 397350 * 3-4.  But then, there are things that simply should

14 not be allowed before a jury such as this.  It creates "a sideshow and distract[s] the

15 jurors from the factual issues in [the] case raising FRE 403 concerns."  2008 WL

16 397350 * 4.  And so here.

17 ## CONCLUSION

18         For the foregoing reasons, the document at issue should not be allowed into

19 evidence and no argument, questioning or any suggestion of the claimed facts set

20 forth therein should be allowed.

21         Respectfully submitted,

22 Dated:    February 27, 2011        ORRICK, HERRINGTON & SUTCLIFFE, LLP

23

24                                    By:_____*/s/ Warrington S. Parker III*_____
                                          Warrington S. Parker III
25                                        Attorneys for MGA Parties

26

27

28

MGA PARTIES' OPPOSITION TO MATTEL INC.'S
RESPONSE RE  MGA2 3121569
CV 04-9049 DOC (RNBx)