**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION AT SANTA ANA**

HONORABLE DAVID O. CARTER, JUDGE PRESIDING

```
MATTEL, INC., ET AL.,           )
                                )
         PLAINTIFFS,            )
                                )
     vs.                        ) CV NO. 04-9049-DOC
                                ) Day 22
MGA ENTERTAINMENT, INC., ET AL.,) VOLUME 4 of 4
                                )
         DEFENDANTS.            )
_____)
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

JURY TRIAL

SANTA ANA, CALIFORNIA

WEDNESDAY, FEBRUARY 23, 2011

6:12 P.M.

**DEBORAH D. PARKER, CSR 10342**
**OFFICIAL COURT REPORTER**
**UNITED STATES DISTRICT COURT**
**411 WEST FOURTH STREET**
**SUITE 1-053**
**SANTA ANA, CALIFORNIA 92701**
**(714) 542-8409**
**D.PARKER@IX.NETCOM.COM**

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1   APPEARANCES OF COUNSEL:

 2       FOR THE PLAINTIFF, MATTEL, INC.:

 3                           JOHN QUINN
                             WILLIAM PRICE
 4                           MICHAEL T. ZELLER
                             QUINN EMANUEL URQUHART
 5                           & SULLIVAN, LLP
                             865 S. FIGUEROA STREET
 6                           10TH FLOOR
                             LOS ANGELES, CALIFORNIA 90017
 7                           (213) 443-3000

 8
         FOR THE DEFENDANT, MGA ENTERTAINMENT, INC.:
 9
                             THOMAS S. MC CONVILLE
10                           ORRICK HERRINGTON & SUTCLIFFE, LLP
                             4 PARK PLAZA
11                           SUITE 1600
                             IRVINE, CALIFORNIA 92614
12                           (949) 567-6700

13
                             ANNETTE L. HURST
14                           ORRICK HERRINGTON & SUTCLIFFE, LLP
                             THE ORRICK BUILDING
15                           405 HOWARD STREET
                             SAN FRANCISCO, CALIFORNIA 94105
16                           (415) 773-5700

17
                             JENNIFER L. KELLER
18                           KELLER RACKAUCKAS, LLP
                             18500 VON KARMAN AVENUE
19                           SUITE 560
                             IRVINE, CALIFORNIA 92612
20                           (949) 476-8700

21

22

23

24

25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1   APPEARANCES OF COUNSEL:

 2        FOR THE DEFENDANT, CARLOS GUSTAVO MACHADO GOMEZ:

 3                         MARK E. OVERLAND
                           LAW OFFICES OF MARK E. OVERLAND
 4                         100 WILSHIRE BOULEVARD
                           SUITE 950
 5                         SANTA MONICA, CALIFORNIA 90401
                           (310) 459-2830
 6

 7                         ALEXANDER H. COTE
                           SCHEPER KIM & HARRIS, LLP
 8                         601 WEST FIFTH STREET
                           12TH FLOOR
 9                         LOS ANGELES, CALIFORNIA 90071
                           (213) 613-4660
10

11
     ALSO PRESENT:
12
                           JEANINE PISONI
13                         MGA ENTERTAINMENT, INC.
                           16360 ROSCOE BOULEVARD
14                         SUITE 105
                           VAN NUYS, CALIFORNIA 91406
15

16                         ISAAC LARIAN, MGA CEO
                           KEN KOTARSKI, MATTEL TECHNICAL OPERATOR
17                         MIKE STOVALL, MGA TECHNICAL OPERATOR

18

19

20

21

22

23

24

25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1         SANTA ANA, CALIFORNIA; WEDNESDAY, FEBRUARY 23, 2011;
 2                            6:12 P.M.
 3      (The following proceedings were had outside the
 4       presence of the jury:)
 5              THE COURT:  We're back on the record.
 6              Counsel is responding to Exhibit No. --
 7              MS. KELLER:  I've got it right here, your Honor.
 8              THE COURT:  Let me do the work.
 9              -- 6766, dated May 9th, 2006, Kuemmerle to
10   Villette, initially.
11              Could you put that back up on the board so that
12   we're looking at the exhibit, and I appreciate it.
13              Okay.  Now, we're back on the record, but you
14   understand that may not be preclusion.  It's just my
15   cautiousness not knowing what the witness is going to say,
16   so --
17              MS. KELLER:  Yes, I understand, your Honor.
18              Mr. Quinn questioned the witness rather
19   aggressively, I thought, about the statement that this was a
20   witch hunt, saying to her things like, *A witch hunt that*
21   *would be searching for something that isn't real, but in*
22   *this case we found real documents*, et cetera, and suggested
23   strongly that her -- that that's what she meant and that
24   what she meant was either misplaced, or simply false.
25              THE COURT:  Just a moment.  What he's having to
```

1  deal with, though, is the impression that she has that this
2  is farfetched.
3           MS. KELLER: Yes. Her -- well, not as farfetched.
4  Her impression that it was a deliberate pogrom of sorts that
5  Mattel was coming after their company, and that it was
6  unjustified.
7           So what I asked her on cross was what she meant by
8  that, and she began to say what she meant by it. And what
9  my understanding was -- and I tried to ask a couple of these
10 things. I think maybe the court thought I was going
11 somewhere I wasn't going.
12          THE COURT: No, it's not. It's the witness.
13          MS. KELLER: Well, I'm looking at her deposition
14 testimony.
15          THE COURT: I don't see that. I don't have that.
16          MS. KELLER: And what, among other things, she had
17 said -- none of this takes place in a vacuum. This
18 statement wasn't in a vacuum. In her mind, the search and
19 seizure wasn't in a vacuum. There were a lot of things that
20 were going on with Mattel at the time. She refers to the
21 bad history between the companies.
22          THE COURT: Just a moment. I cut you off. You
23 can go into the bad history.
24          MS. KELLER: But not just the history, the current
25 things that were happening in Mexico. And part of these are

1  things that might otherwise be considered to be part of an
2  affirmative case, because, for example, she was talking
3  about disruption of their goods at customs, Mattel
4  aggressively advertising to stop MGA from getting a foothold
5  in the market, Mattel making -- trying to persuade
6  merchandising to keep MGA products in the back of the store,
7  moving the product off the shelves, threats to businesses
8  and retailers if they carried MGA merchandise and all these
9  sorts of things.  So, in her mind -- and then, she knows
10 that there is litigation, but I don't even think that's the
11 biggest thing.  I think the biggest thing is all this stuff
12 that was going on in Mexico.  And in her mind the raid was
13 just the latest Mattel action against MGA de Mexico.  It was
14 just the latest in a string of things that were going on
15 that they had been doing to their company.
16         THE COURT:  You see the bottom part, *even with the*
17 *bad history between both companies*?
18         MS. KELLER:  Yes.
19         THE COURT:  I have no issue with that, as long as
20 it's confined to the two companies.  I will state, again, my
21 fear and why I granted the objection -- or sustained the
22 objection.  I didn't know what she was going to say.  And if
23 she moves one minute step towards litigiousness allegedly of
24 Mattel outside these two companies, I'm not going to hold
25 Mattel back from the Hong Kong litigation.

```
 1                    MS. KELLER:  No, I understand.
 2                    THE COURT:  And you didn't know what she was going
 3      to say.  Although your questions were well put, I don't
 4      think you intend to go there.  But if she steps over that
 5      line, I'm not going to leave Mattel in the position of being
 6      litigious when it appears that there is a good argument that
 7      MGA is fairly litigious.
 8                    And, by the way, this isn't going to be litigation
 9      to death.
10                    MS. KELLER:  It was not going there.  I don't
11      know --
12                    THE COURT:  I know.
13                    MS. KELLER:  If I can reassure the court, I can
14      show you the outline.  That's not where I was going.  I was
15      going to point her to specific depo testimony and specific
16      exhibits.
17                    MR. QUINN:  Your Honor, what you have now heard --
18      because I questioned her about this particular witch hunt,
19      that then becomes the thin end of the wedge and the excuse
20      for them to go about how we monkeyed with retailers,
21      customs, blah, blah, blah, i.e., their affirmative case
22      which we haven't been permitted to touch now that we're
23      coming to court.
24                    I didn't even ask about bad history between both
25      companies.  I didn't ask about that.  The only thing I
```

```
 1   brought up was this particular witch hunt.  She gave me the
 2   definition.  I said, What's a witch hunt?  She said,
 3   Searching for something that's not there.  I then said, But
 4   there were things there.
 5               THE COURT:  This is resolved if you simply bring
 6   her back in your case and she'll claim that she's
 7   inconvenienced.  I mean, this is not a place you have to go
 8   on cross.  You can go into the bad blood if you choose.  I'm
 9   just --
10               MR. QUINN:  Then, we should be able --
11               THE COURT:  Mr. Quinn, I know.  I know where
12   you're going with this.  Just hold on.
13               MR. QUINN:  All right.
14               THE COURT:  Because I'm trying to tell Ms. Keller,
15   do what she wants, but it's going to -- well, I'm not
16   going --
17               I'll just wait.  You're not being precluded.
18               MS. KELLER:  Well, I know what the court is
19   saying.  You know, the problem is that we are handcuffed a
20   little bit here.  For example, she was also attacked pretty
21   aggressively for her role as a 30(b)(6) witness and really
22   made to look as if somehow she was hiding things.  And she
23   made it really clear early on that she was, in fact, afraid
24   of being sued.  She did not want to look at any of those
25   documents in depth.  She didn't want to be accused of
```

1  violating trade secrets.  She wanted to wash her hands of it
2  and have somebody else take over that role, and that was
3  done.
4          But when she says the reason she didn't want to do
5  it, is because she was afraid of being sued because her
6  belief was that Mattel was sue happy, then all of a sudden,
7  once again, you're trying to open the door.  It's not -- you
8  know, when you're attacking a witness over the witness'
9  state of mind and the witness' fears and the witness'
10 characterizations and things like witch hunts and the
11 witness is not wanting to get involved in something like
12 being a 30(b)(6) witness, you are inevitably getting into
13 state of mind, and you cannot -- these things don't exist in
14 a vacuum.
15         THE COURT:  No, no.  What occurred was, at that
16 time Mr. Quinn asked me to sustain the objection and strike
17 the portion concerning sue happy, which I did.  Because if
18 that would have remained, I'm telling you, I would have
19 opened up the Hong Kong litigation.  So that's been
20 stricken.  You have not been precluded.  And if you chose to
21 go down that road, that's your choice.  Two companies, it's
22 obvious that there's bad blood.  She says that there's bad
23 blood.  But when you start saying you're "sue happy," that's
24 a statement that she came up with.  But I don't know what
25 your notes show, but I don't think you intended that answer

```
 1   to come out.
 2             MS. KELLER:  I wasn't expecting that.  But I was
 3   expecting because she had said so before, *I was afraid of
 4   being sued.*
 5             THE COURT:  So you can understand why the court is
 6   going to be cautious with that.  That's why the objection is
 7   sustained.
 8             MS. KELLER:  I do.
 9             THE COURT:  Now, number two, if both of you think
10   this is the turning point of the case, go at it.  Have a
11   great time.  It seems obvious that Mr. Quinn is able to ask
12   what a "witch hunt" means, because the inference is that
13   Mattel is doing exactly what she was so happy to tell us
14   about; and that is, "sue happy," "witch hunt."
15             By the same token, you're not precluded from
16   showing that there is a bad history between both companies.
17   How you choose to go about it, I leave that to you.  You're
18   not precluded.
19             MR. QUINN:  Your Honor, she says she's afraid to
20   look at documents.  I think the court should instruct the
21   jury that you ordered -- you entered an order that she be
22   required to review AEO material as part of her preparation.
23             I mean, that's just a false impression out there.
24   I mean, if she refused to look at them, that was in
25   violation of this court's order.
```

1            THE COURT:  I think I'm not going to be drawn into
2    this as the court, counsel.  Perhaps you can point to a
3    30(b)(6) in the designation, et cetera, but the courts
4    aren't going to get involved in that.
5            All right.  Now, that gives you no parameters.  It
6    gives you no instruction.  It just gives you a statement by
7    her that was gratuitous which I instruct.  You're not being
8    precluded.  It's up to you.
9            I also think it would be wise if we're going to go
10   down that line that you call her back in your case, and I
11   really don't care if she's inconvenienced.  Your case is
12   pretty close, but --
13           MS. KELLER:  I understand.
14           THE COURT:  -- it's your choice.
15           Is there anything else we need to do on the
16   record?  If not, I'm going to send Deborah home with our
17   thanks and appreciation and send lead counsel home, too.
18   Mr. Price is gone.  And Ms. Keller, are you up tomorrow, or
19   Mr. McConville?  Who's ever up tomorrow, you should get some
20   sleep.
21           Okay.  Anything else we need on the record?
22           MR. MCCONVILLE:  No, sir.
23           THE COURT:  Deborah, thanks a lot.
24      *(At 6:23 p.m., proceedings were adjourned.)*
25                            -oOo-

```
 1                          CERTIFICATE
 2           I hereby certify that pursuant to Section 753,
 3   Title 28, United States Code, the foregoing is a true and
 4   correct transcript of the stenographically reported
 5   proceedings held in the above-entitled matter and that the
 6   transcript page format is in conformance with the
 7   regulations of the Judicial Conference of the United States.
 8
 9   Date:  February 24, 2011
10
11
12                                _____
13                                Deborah D. Parker, Official Reporter
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*