1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
      John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
      William C. Price (Bar. No. 108542)
3      (williamprice@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
4      (michaelzeller@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:   (213) 443-3000
6  Facsimile:   (213) 443-3100

7  Attorneys for Mattel, Inc. and
   Mattel de Mexico, S.A. de C.V.

8

9              UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11               SOUTHERN DIVISION

12  | MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de C.V., | CASE NO. CV 04-9049 DOC (RNBx) Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
|---|---|
|                   Plaintiff, | |
|          vs. | Hon. David O. Carter |
| MGA ENTERTAINMENT, INC., a California corporation, et al., | **REPLY IN SUPPORT OF MATTEL'S MOTION FOR MISTRIAL OR, IN THE ALTERNATIVE, CURATIVE INSTRUCTION TO THE JURY** |
|                   Defendant. | |
| AND CONSOLIDATED ACTIONS | Hearing Date:      TBD Time:            TBD Place:           Courtroom 9D Pre-trial Conf:   January 4, 2011 Trial Date:       January 18, 2011 |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Preliminary Statement**

Mr. Larian's false, prejudicial and gratuitous outbursts have been pervasive. After Mattel filed this motion, Larian continued his outbursts, claiming falsely that counsel paid by Mattel was signaling witnesses, that Mattel has been "suing many people," and asserting that Mattel sold products that "kill kids." In addition, Mr. Larian physically accosted Mattel's lead counsel during a break and yelled, "I will never settle with you, you son of a bitch."

These numerous acts of misconduct, particularly in their pervasive and combined effect, have highly prejudiced Mattel. Yet no targeted curative instructions have been given. A mistrial should be granted.

**Argument**

**I.    MR. LARIAN'S FALSE ACCUSATIONS HAVE BEEN EMPHASIZED, NOT CORRECTED**

MGA claims that the prejudice Mattel suffered "has been addressed" (Opp. at 1-2, 7-8), but most of Larian's improper comments and attacks on Mattel have not been addressed in front of the jury at all, and none have been corrected with a specific curative instruction. The Court's instruction to the jury that nonresponsiveness and gratuitous statements may be considered in evaluating credibility (Opp. at 7-8) did not reference Mr. Larian nor address any specific statements. Thus, the false accusations remain uncorrected. If anything, the Court's instruction that the jury should consider such statements in evaluating credibility has *encouraged* the jurors to consider Larian's irrelevant and highly prejudicial statements and decide for themselves whether such statements are credible. Cf. Sumrall v. United States, 360 F.2d 311, 313 (10th Cir. 1966) (reversing denial of new trial motion and noting that effect of court's refusal to admonish jury "was to inferentially tell the jury that they may consider the [improper evidence] in determining guilt or innocence").

MGA argues that corrective instructions can obviate the prejudice here (Opp. at 8) and that a mistrial is only warranted where misconduct is "incapable of being cured by instruction," but simultaneously argues that corrective instructions cannot issue because they would "usurp[] the role of the jury." Opp. at 1, 11.  MGA cannot have it both ways.   If no corrective instructions are made, under MGA's own arguments, a mistrial is the only alternative.  See Opp. at 9 (citing B.K.B. v. Maui Police Dept., 276 F.3d 1091 (9th Cir. 2002), for the proposition that a mistrial is necessary where "the instruction is clearly inadequate"); id. (citing United States v. Mannie, 409 F.3d 851 (7th Cir. 2007), for the proposition that "in the vast majority of cases . . . cautionary instructions" can cure prejudice).

In any event, instructions as to irrelevant and prejudicial comments do not "usurp" the jury's role, as MGA claims.  Opp. at 1, 11.  The jury's role here is not to decide whether Mattel killed Larian's father, caused Bryant to have a stroke, whether Mattel's counsel made a racist statement, or any of the other irrelevant accusations Larian has made.

## II.     AS THE COURT FOUND, EACH OF LARIAN'S STATEMENTS WERE IMPROPER AND NOT RESPONSIVE

MGA claims that many of Mr. Larian's outbursts were "responsive to questioning" (Opp. at 4-6) and ignores the Court's prior findings that Larian's comments were "non-responsive," "blurt[ed] out," "inappropriate," and "improper."[1]

Larian's Statement that Mattel Killed His Father.  MGA does not dispute this improper comment was highly prejudicial. Opp. at 2.   That the Court struck the statement is insufficient.  See Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 209 (3d Cir. 1992) ("cautionary instructions given to the jury proved to be

insufficient to immunize the jury from the improper and inflammatory remarks"). Indeed, after denying Mattel's request for a curative instruction the Court stated it would simply place "faith in the jury to recognize evasive and nonresponsive answers." Trial Tr., dated Feb. 10, 2011, Vol. 1, at 75:10-18.  But it is precisely the role of the Court to filter out highly prejudicial, irrelevant outbursts of a witness. Fed. R. Evid. 403.  If the jury will not be instructed that Larian's specific statements are false and improper, a mistrial must be granted.

Larian's Statement that Mattel Caused Bryant to Have a Stroke.  MGA also does not dispute that this Larian statement was highly prejudicial.  Again, the Court denied a specific admonition and instead relied on the possibility that Bryant might be re-called later in the case, at which point the jury would then presumably observe and assess his health (a completely irrelevant issue) for themselves.  See Trial Tr., dated Feb. 9, 2011, at 110:10-20 ("THE COURT: "[Bryant] may be back for another portion of this trial.  This Court has already adequately instructed this jury to the effect when this was initially blurted out by Mr. Larian.  I don't feel that the Court need make any further comment, and there will be no further comment by counsel unless it's brought to the Court's attention first and out of the presence of the jury.").  Although the parties have since confirmed that Bryant was not diagnosed with a stroke at all, the Court has not corrected Larian's false claim; rather, the Court's statement to the jury was that the Court "do[es]n't know that Mr. Bryant had a stroke or not."  Trial Tr., dated Feb. 8, 2011, Vol. 2, at 107:11-16.

Larian's Claim that Mattel's Counsel Made a Racist Comment.  MGA attempts to characterize this as an "issue" between Mr. Larian and Mr. Price, but ignores the real issue—Mattel's counsel was subjected to accusations of racism in front of the jury.  Although Mattel was permitted to cross-examine Mr. Larian

---

[1]  2/8/11 Trial Tr., Vol. 3, at 52:14-15, 54:2-16; 2/9/11 Trial Tr., Vol. 3, at (footnote continued)

concerning this false and irrelevant allegation, even during that examination Larian again injected false accusations by implying there were additional racist remarks that were not "on the record." Trial Tr., dated Jan. 10, 2011, Vol. 3, at 75:2-7 ("Q: And we had a break where you and your counsel found the section of the examination in the 2008 trial concerning my examination of you that was the basis for your statement that I, Bill Price, made a racist statement in the 2008 trial, correct?  A:  Yes, what was -- what was on the record."). This comment has not been corrected.  And as a practical matter, it cannot be.

Larian's Statement that Mattel Is "Stifling Competition."  MGA argues that Mr. Larian's statement that Mattel stifles competition "was directly responsive to counsel's questions."  Opp. at 5.  But the Court specifically ruled to the contrary, finding that this statement was "a gratuitous comment by Mr. Larian in a string of gratuitous comments about Mattel's motives in filing this lawsuit as well as Mattel's anticompetitive tendency."  Trial Tr., dated Feb. 10, 2011, Vol. 1, at 78:14-79:5.

Larian's Comment that Mattel Owes Royalties on Trapezoidal Packaging. MGA claims this statement was "solicited" by Mattel.  But the quotation in MGA's own opposition shows that Mattel asked a "yes" or "no" question concerning Mr. Larian's understanding of his application for a patent.  Opp. at 6.  After answering, "yes," Mr. Larian then volunteered a non-responsive assertion that Mattel has used his patent and failed to pay royalties.  Whether "testimony" on trapezoidal packaging is permitted is not the issue.  Opp. at 6.  The Court held on summary judgment that MGA cannot assert any claim against Mattel based on trapezoidal packaging.  See Dkt. No. 9600 at 97-108.  Mr. Larian's claim is thus irrelevant and false.[2]

---

109:25-110:20.

[2]   Dkt. No. 9538 at 104.

00505.07975/3985949.5

Larian's False Accusation that Mattel Fixes Retailer Pricing.  MGA claims that by questioning Larian about his understanding of stolen Mattel documents found in MGA Mexico's possession, Mattel "elicited" Larian's gratuitous testimony that Mattel is illegally fixing retailer prices.  But as MGA admits (Opp. at 6), the question was whether Mr. Larian knows what the retailer margin is, not whether he was *setting* the margin, and certainly not whether Mattel was doing so.

MGA's attempts to distinguish Mattel's cases fail.  MGA claims Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 209 (3d Cir. 1992) involved "attack[s] on defense counsel" and accusations that witnesses were "liars," but that is precisely the type of conduct at issue here.  Indeed, in addition to attacks on Mattel's counsel, Mr. Larian accused another witness, Jennifer Maurus, of lying.  See 2/11/11 Trial Tr., Vol. 1, at 133:19-22 ("MR. LARIAN: . . . She was just, basically, ladies and gentleman, of the jury – was lying as you saw her lying today.").  So too with respect to Draper v. Airco, Inc., 580 F.2d 91 (3d Cir. 1978).  MGA baldly claims the facts of Draper are "not the case here," but MGA's own summary of the misconduct at issue in Draper—including "prejudicial[] refere[nces] to facts not in evidence" and "several prejudicial, vituperative and insulting references to opposing counsel" (Opp. at 10) are precisely the type of conduct that occurred here.  Finally, MGA's discussion of O'Rear v. Freugauf Corp., 554 F.2d 1304 (5th Cir. 1977), only confirms its applicability.  As MGA admits (Opp. at 10), the case involved prejudicial references in violation of the court's orders, and the Fifth Circuit ruled the trial court should either have allowed them to be rebutted or declared a mistrial.  Here, Mattel has asked for curative instructions and its requests were denied.  Accordingly, a mistrial should be granted.

## III.   MATTEL TIMELY OBJECTED TO EACH OF LARIAN'S OUTBURSTS

Contrary to MGA's claim (Opp. at 2), Mattel timely objected to each of Mr. Larian's outbursts, either during the examination or after the jury was excused.  It is

immaterial that, with some of the outbursts, Mattel waited until the jury was excused to avoid further emphasizing Larian's improper comments.  See Jones v. Lincoln Elec. Co., 188 F.3d 709, 727-28 (7th Cir. 1999) (reversing trial court's ruling that objection was waived because objection does not have "to be perfectly contemporaneous with the challenged testimony in order to satisfy Rule 103(a) and be considered 'timely'").  Courts have found objections timely when made "after the close of [the witness's] testimony," recognizing that in some cases "more attention, not less, would have been drawn to [the improper] testimony." Id. at 728.  As the Ninth Circuit has noted, where repeated conduct is causing prejudice, "constant objections are certainly not required, as they could antagonize the jury." Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 346 (9th Cir. 1995) (quotation omitted) (upholding grant of mistrial for pervasive misconduct, including "allegations that [defendant] engaged in sexist and racist behavior").

Indeed, the pervasive nature of Mr. Larian's outbursts is reason to grant a mistrial, even if standing alone the incidents would not have been sufficiently prejudicial.  See United States v. Mooney, 315 F.3d 54, 61 (1st Cir. 2002) ("We acknowledge that several incidents of prosecutorial misconduct, none of which individually would require reversal, taken together may have a cumulative effect that warrants a mistrial.").

## IV.   LARIAN'S HIGHLY PREJUDICIAL COMMENTS ONLY CONTINUED AFTER MATTEL FILED THIS MOTION

Since Mattel filed this motion, Larian has continued to make highly prejudicial and false accusations.  During his continued examination, Mr. Larian:

§   Claimed Mattel paid lawyers to "coach" and give "hand signals" to third party witness Anna Rhee.[3]

---

[3]   2/11/11 Trial Tr., Vol. 1, at 96:8-16.

REPLY ISO MATTEL'S MOTION FOR MISTRIAL

§   Claimed Mattel has been "suing many people" (during questioning by MGA).[4]

§   Implied that Mattel products "have magnets that kill kids."[5]

As his examination progressed, Mr. Larian moved beyond prejudicial comments, and aggressively approached Mattel's lead counsel during a break outside the jury's presence, yelling, "I will never settle with you, you son of a bitch."  The Court was not present for this incident, but informed the parties that the Court's staff was "very concerned about Mr. Larian allegedly approaching Mr. Price," and the Court confirmed Mr. Larian's language in recorded tapes.[6]

DATED:  March 1, 2011              QUINN EMANUEL URQUHART & SULLIVAN, LLP


                                   By /s/ John B. Quinn
                                      John B. Quinn
                                      Attorneys for Mattel, Inc., and
                                      Mattel de Mexico, S.A. de C.V.

---

[4]   2/16/11 Trial Tr., Vol. 2, at 136:6-17.
[5]   2/18/11 Trial Tr., Vol. 1, at 148:7-149:9.
[6]   See 2/11/11 Trial Tr., Vol. 1, at 46:6-23.