QUINN EMANUEL URQUHART & SULLIVAN, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
William C. Price (Bar No. 108542)
(williamprice@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de C.V.,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendant. | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO RECONSIDER THE COURT'S RULING REGARDING MGA'S MOTION *IN LIMINE* REGARDING FRANK KEISER** |
| AND CONSOLIDATED ACTIONS | |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE THAT, on a date to be determined by the Court, Mattel, Inc. and Mattel de Mexico, S.A. de C.V. (collectively, "Mattel"), will, and hereby do, move the above-entitled Court for reconsideration of its Order Granting MGA's Motion *in Limine* Number 38, dated February 1, 2011.[1] This motion is brought pursuant to Local Rule 7-18 and the Court's inherent powers.

Reconsideration is warranted for two reasons: 1) the Court's opinion did not take into account certain material facts and law regarding the ability of Mr. Keiser's scans and comparisons to accurately depict the sculpts at issue; and 2) MGA's lay witnesses continue to introduce into evidence new testimony regarding similarities and differences between the sculpts, but the only *scientific* evidence that has been offered, that of Mr. Keiser, has been barred.

This motion is based on this Notice, the accompanying Motion, all pleadings and papers on file in this action, such other evidence or argument as may be presented to the Court, and such other matters of which this Court may take judicial notice.

DATED: March 1, 2011

QUINN EMANUEL URQUHART & SULLIVAN. LLP

By */s/ John B. Quinn*
John B. Quinn
Attorneys for Mattel, Inc. and Mattel de Mexico, S.A. de C.V.

[1] MGA's Motion *in Limine* regarding Frank Keiser was actually number 36. See MGA Parties' Further Corrected Notice of Motion and Motions *in Limine* Nos. 31-36; Consolidated Memorandum of Points and Authorities in Support of Their Motions; and Declaration of Andrew Baum in Support Thereof, dated December 15, 2010 (Dkt. 9782). This Motion is regarding the Court's February 1, 2011 Order titled "Order Granting MGA's Motion in Limine Number 38," (Dkt. 9758).

## Preliminary Statement

Mattel seeks reconsideration of the Court's February 1, 2011 order excluding expert testimony from witness Frank Keiser on the basis of F.R.E. 403. The Order excluded the only scientific evidence as to similarities and differences, even though lay witnesses have been permitted to give subjective, unscientific testimony as to those same similarities and differences.

The Order rested heavily on the Court's finding that the scans were distorted by resizing one sculpt. The distortion, however, was caused by the upsizing of the grey sculpt due to the manufacturing process, and resizing the scan creates a fair and appropriate comparison of sculpts in true "doll size." The Order also rested on the Court's finding that improper distortions were created by the scans' resolution, but the resolution resulted in uniform (and miniscule) smoothing that would have assisted the jury by minimizing the distraction of irrelevant tooling marks on one of the sculpts.

## Summary of the Order

The Court's February 1, 2001 Order excluded Keiser's testimony and evidence on the basis that "Keiser's opinion and graphical presentation will cause undue confusion to the fact-finder and result in substantial prejudice to MGA" and that "Keiser's technology [thus] has negative value to the jury's application of the virtual identity standard." Order at 1, 2. The Court based its determination first on its understanding that Keiser had admitted that the technology was flawed for the purpose of identifying similarities to aid the fact-finder's determinations as to virtual identity. Order at 2. In particular, the Court noted that Keiser had "conceded during his cross examination that his graphical comparison was based upon a distortion of the relative sizes of the two sculpts, and was affected by the program's inability to consistently highlight the absence of similarities between the sculpts otherwise obvious to the naked eye." Order at 1-2. The Court further stated that cross examination could not cure these weaknesses because "Keiser's purported computer

rendering, his supposed expertise in the field, and the user friendly nature of his technology will likely induce the jury to give undue weight to his depictions when the actual sculpts should control." Order at 2. Finally, the Court held that Keiser's opinion was unnecessary because the jury would be able to compare the physical sculpts for itself. Order at 2.

## Argument

Motions for reconsideration may be made "only on the grounds of . . . (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision." Local Rule 7-18.

### I. THAT THE OBJECTS' DIFFERENCES ARE LESS APPARENT WHEN THE SIZE IS EQUALIZED ARGUES AGAINST – NOT FOR – EXCLUSION

The Order states that the resizing of one sculpt down to match the other sculpt's size made the comparisons misleading or prejudicial because it revealed only minor differences in the features of the two sculpts being compared. Order at 1-2. It is true that whatever differences exist will appear larger when the object's size is larger. But that fact shows why resizing is important and helpful for the jury. The grey sculpt is larger only because it represents a step in the manufacturing process in which the sculpt must be sized *up* by a specific percentage to account for shrinkage that will take place during that process. [2] This "upsizing" actually distorts any actual differences in shape and features by making them look larger than they are or will be when manufactured. By reducing the size of the sculpts in a controlled and measurable way, Keiser allows the fact-finder to account for the distortion caused by the upsizing and allows for a fairer, more accurate comparison of what is at issue – the shape and features of the dolls in actual size. Indeed, size

itself is considered a trivial variation for purpose of copyright infringement analysis. See, L. Batlin & Son, Inc. v. Snyder, 536 F.2d 486, 489-92 (2d Cir. 1976) (proportional reduction in size of an antique Uncle Sam bank from eleven inches to nine inches, along with other slight changes, were considered trivial variations); Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp., 210 F. Supp. 2d 147, 158 (E.D.N.Y. 2002) ("a change in scale or size of a work or sculpture" is a trivial variation) (citations omitted).

## II. KEISER'S SCANS ARE *NOT* INCONSISTENT IN REFLECTING DIFFERENCES

The Court's finding that the technology's "inability to consistently highlight the absence of similarities" was based on the observation that certain surface characteristics of sculpts are not always perfectly reflected – that is, reproduced with the exact same detail – in Keiser's 3D depiction of the sculpt.[3] Mr. Keiser had chosen a particular resolution for the scans that smoothed out some of the tiny variations created by tooling in the grey sculpt. This enables the jury to view the shape of the sculpts without the distraction of irrelevant tooling marks all over the grey sculpt's body, which is something the jury cannot do without the scan.

Just like photographs, three-dimensional scans can be taken with various levels of resolution, and a lower resolution may reflect slightly less detail overall. But contrary to the Court's finding, whatever that resolution is, the result is *consistent* – that is, it is evenly applied across the whole object, rather than changing the result in some unpredictable way. And there is no showing that miniscule smoothing by the chosen resolution distorted the resulting images in such a way that they do not fairly and accurately portray what is being shown, making them admissible under F.R.E. 901. Cf. Kalter v. Grand Circle Travel, 631 F.Supp.2d

---

[2] See Margaret Leahy Depo. Tr., Vol. 1, at 231:25-232:19, December 12, 2007; Phase 1 Trial Tr., A.M. Session, 4261:12-4262:5, July 3, 2008.

[3] See Trial Tr. Vol. 4, 62:8-64:25, January 27, 2011.

1253, at n.2 (C.D. Cal. 2009) (photographs fairly and accurately depicting relevant facts held admissible despite not being a perfect depiction).[4] Moreover, the jury wants to view, has seen, and will have available to it to examine further, the sculpt with its tooling marks.

In any case, cross examination would permit the jury to not only understand and assess the choice made with respect to resolution, but also to weigh any comparisons Keiser has presented differently based on that choice. This is the exact same calculus it must engage in with respect to any other expert or lay witness.

**III. <u>THE SCANS ARE HELPFUL TO THE FACT-FINDER IN DETERMINING SIMILARITIES UNDER THE VIRTUAL IDENTITY STANDARD AND ARE NOT CUMULATIVE OR UNNECESSARY</u>**

Despite its concerns about size and resolution, the Court recognized that Keiser's technology "shows only minor differences between the sculpts." Order at 1. This scientific evidence *proving* that there are only minor differences between the sculpts is thus indisputably relevant to Mattel's claim of infringement under the virtual identity standard and should not have been excluded.[5] By superimposing images, resizing to eliminate the distortion created by MGA's manufacturing down-sizing, and providing accurate numeric measurements of any differences in shape, Mr. Keiser's comparisons would provide reliable scientific evidence that would help the jury apply the extrinsic test by supplying information that cannot be seen just by viewing the sculpts.

---

4 In fact, searches on Westlaw and Lexis did not locate any case in which a photograph, motion picture, video or scan was excluded, despite its being a fair and accurate representation of what it purported to be, just because it was not taken with the highest possible resolution.

5 Similarities between protectable elements may be found based on the shapes of the elements as they appear in the respective works. See Amended Order, dated January 5, 2011, at 15-16, n.8 (Dkt. 9600) (holding that, for example, a reasonable jury could find the shape of various features are substantially similar. Also noting that a reasonable jury could find that the sculpts are virtually identical overall.)

## IV. KEISER'S EVIDENCE WOULD BE SCIENTIFIC AND MORE RELIABLE THAN THE SUBJECTIVE LAY OPINION THAT HAS BEEN ADMITTED

Further, reconsideration is also appropriate in light of the Court's decision to permit MGA to elicit extensive lay testimony as to purported differences in the sculpts from Paula Garcia, Carter Bryant and Isaac Larian. Although the Court ruled in the February 1, 2011 Order that this evidence is "unnecessary" in light of the jury's ability to view the physical sculpts, MGA continues in its efforts to persuade the jurors to draw conclusions about similarity based on this subjective evidence instead of the sculpts.[6] Not only does such testimony have no actual bearing on the shapes of the sculpts, but it is prejudicial because it colors the supposed comparison with individual, subjective opinions. The only scientific evidence the jury will have as to the question of similarity should not be excluded, especially when sizing or resolution issues may easily be considered, measured and weighed.

## Conclusion

Mattel respectfully requests that the Court reconsider its Order granting MGA's Motion *in Limine* regarding Frank Keiser and allow Mattel to call Mr. Keiser to testify and introduce scientific evidence that will assist the jury in deciding the claims and defenses at hand.

DATED: March 1, 2011

QUINN EMANUEL URQUHART & SULLIVAN. LLP

By */s/ John B. Quinn*
John B. Quinn
Attorneys for Mattel, Inc., and Mattel de Mexico. S.A. de C.V.

---

[6] See e.g. Trial Tr. Vol. 2, 8:2-39:17, February 17, 2011; see also Trial Tr. Vol. 1, 133:25-135:18, February 16, 2011; Trial Tr. Vol. 2, 6:12-16, February 16, 2011.