# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Case No. CV 04-9049 DOC (RNBx)                        Date: March 4, 2011

Title: MATTEL, INC. v. MGA ENTERTAINMENT, INC.

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Kathy Peterson | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                      NONE PRESENT

PROCEEDING (IN CHAMBERS): AMENDED[1] ORDER RE MOTIONS TO EXCLUDE EXPERT OPINION OF MICHAEL J. WAGNER

      Before the Court are MGA and Machado's motions to exclude the expert opinion of Mattel expert Michael J. Wagner.

## I. Introduction

      Federal Rule of Evidence 702 provides that a witness qualified as an expert may render an opinion if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. The rule imposes a "gatekeeping" obligation upon trial courts to exclude "expertise that is *fausse* and science that is junky," though courts have "discretion to choose among *reasonable* means of excluding" such expertise. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 158, 119 S.Ct. 1167 (1999) (Scalia, J., concurring) (emphasis in original).

      In performing this gatekeeping function, the district court must determine whether an

---

[1] Section IIB is amended to include a more complete recitation of the facts, and upon further consideration of Mr. Wagner's February 10, 2011 report, which was only submitted to the Court three days before the filing of this Order.

expert's testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786 (1993). The court may consider the following non-exclusive list of factors to determine the reliability of the expert's theory or technique: (1) whether it "can be (and has been) tested"; (2) whether it "has been subjected to peer review and publication"; (3) whether it poses a high "known or potential rate of error" when applied; (4) whether there are "standards controlling [its] operation"; and (5) whether it enjoys "general acceptance" within a "relevant scientific community." *Id.* at 592-94. Ultimately, "[t]he inquiry envisioned by Rule 702 is . . . a flexible one," *id.* at 594, and trial courts should not mechanically apply every *Daubert* factor to expert testimony whose reliability does not depend upon the integrity of a particular theory or technique. *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) ("Concerning the reliability of non-scientific testimony such as Carlin's, the '*Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the *knowledge and experience* of the expert, rather than the methodology behind it.'") (emphasis added) (quoting *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1069 (9th Cir. 2002)). In all events, a trial court is expected to "make some kind of reliability determination to fulfill its gatekeeping function." *Mukhtar*, 299 F.3d at 1066.

## II. Discussion

Mr. Wagner purports to calculate Mattel's lost profits and MGA and Machado's unjust enrichment from the disclosure, acquisition, and use of Mattel's claimed trade secrets — some of the documents, information, and materials allegedly appropriated by certain former Mattel (including subsidiaries) employees, including Carter Bryant. He also purports to calculate Mattel's actual damages and MGA's profits from the alleged infringement of Mattel's copyrights in the Bratz concept sketches and works. MGA and Machado argue that Wagner's opinions must be excluded as unreliable because his techniques are flawed.

### A. Lost Profits

MGA moves to exclude Mr. Wagner's opinion about the actual damages and lost profits that Mattel suffered as a result of both the alleged infringement of Mattel's copyrights in the Bratz sketches and sculpts and the alleged misappropriation of those works and the Bratz concepts. Mr. Wagner calculates actual damages and lost profits by measuring the correlation between Barbie and Bratz market share, and discounting market expansion. Though Mr. Wagner may erroneously assume that the size of the pre-Bratz market, as well as Barbie's share of that market, was static, this assumption can be tested on cross-examination. In all events, the determination of lost profits is relevant to Mattel's claims and the methodology used is reliable.

### B. Unjust Enrichment

Even if the Bratz concept, sketches, and sculpt were trade secrets that MGA

misappropriated, the unjust enrichment from the use of the trade secret does not include the profits generated by MGA's "hard work," "creativity," and "legitimate efforts." *Cf. Mattel, Inc. v. MGA Entmn't, Inc.*, 616 F.3d 904, 910-11 (9th Cir. 2010) (finding equitable relief that captured "sweat equity" to be overbroad). This is because not all enrichment is unjust: "A person is enriched if he has received a benefit. A person is unjustly enriched if the retention of the benefit would be unjust." Restatement of Restitution, section 1, comment a. It is not unjust for a defendant like MGA to retain the "fruits of [its] own labors or legitimate efforts." *See Mattel*, 616 F.3d at 910 (quoting Dan B. Dobbs, *Dobbs Law of Remedies: Damages-Equity-Restitution* § 6.6(3) (2d ed. 1993)). To the contrary, "it is not equitable [to] forc[e] MGA to hand over its sweat equity." *Mattel*, 616 F.3d at 911.

MGA moves to exclude Mr. Wagner's opinions apportioning out the amount of MGA's profits attributable to its reasonable expenses and sweat equity. Mr. Wagner uses a two-step method to reach the apportionment figure, but only the first step passes *Daubert* scrutiny.

First, using a "Benchmark" model, Mr. Wagner compares the aggregate Earning Before Interest and Taxes of various toy manufacturers to MGA's Bratz profits over the last decade. Contrary to MGA's arguments, Mr. Wagner accounts for some fixed costs incurred by MGA, and any deficiencies can be exposed during cross-examination. His Benchmark model does have three flaws; namely: (1) a failure to account for MGA's lower marginal costs on Bratz as compared to the marginal costs of products incorporated by the benchmark EBITs; (2) a failure to normalize for volume of goods produced; and (3) a failure to account for any feedback loop between a company's labor and its intellectual property. However, these deficiencies — and the fact that they may inflate the delta between Bratz profits and industry EBITs — go to the weight of the methodology, and not its reliability. The mere fact of calculating the delta between MGA's profits and industry wide EBITs is relevant to the fact-finder's apportionment of MGA's unjust enrichment.

Second, using the reasonable royalty framework set forth in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), Mr. Wagner breaks down the number derived from the Benchmark method. Specifically, he segregates the "delta" — which he concludes to be the isolated value of the intellectual property — into the value derived from each claimed trade secret (*e.g.*, the name "Bratz," the Bratz concept, the Bratz sculpt, etc.). To determine the value added by each claimed trade secret, Mr. Wagner calculated the reasonable royalty that MGA would have been willing to pay in a hypothetical negotiation with Mattel for the rights to copy and use each of the Bratz works and concept, and applied the "book of wisdom" approach, which considers "later-occurring events" to "correct uncertainties present at the time of negotiation." *Standard Mfg. Co., Inc. v. United States*, 42 Fed.Cl. 748 (1999) (citing *Sinclair Ref. Co. v. Jenkins Petroleum Co.*, 289 U.S. 689, 698-99 (1933)). This approach does not reliably apportion the actual value added by each claimed trade secret, however, because it necessarily assumes a hypothetical bilateral negotiation between the specific intellectual property plaintiff and the defendant. The bilateral agreement of the parties is irrelevant to apportionment, which should consider the *actual* value added by each claimed trade secret. *See* Part IIC, *infra*.

In conclusion, Mr. Wagner's method of apportioning unjust enrichment on the basis of a reasonable royalty calculation is inadmissible, but his method of apportioning unjust enrichment on the basis of a Benchmark model is admissible.

Machado also challenges Mr. Wagner's unjust enrichment calculation. Mr. Wagner calculates the benefit reaped by Machado from the alleged misappropriation of Mattel and Mattel Mexico documents. He adds the manpower allegedly incurred by Mattel and Mattel Mexico in creating the documents, as well as the value of the discounts Mattel and Mattel Mexico provided retailers in exchange for the information allegedly misappropriated by Machado. Machado argues that Mr. Wagner merely sums up information contained in otherwise inadmissible contracts. To remedy this deficiency, the Court will admit Mr. Wagner's opinion subject to a motion to strike, which will be granted if Mattel fails to admit the underlying contracts into evidence prior to the end of trial.

### C.     Reasonable Royalty

Actual damages under the Copyright Act can include the "actual market value" of a license to infringe the copyrighted works. *On Davis v. The Gap, Inc.*, 246 F.3d 152, 164-66 (2d Cir. 2001). In addition, the California Uniform Trade Secrets Act (CUTSA) provides for the "payment of a reasonable royalty for no longer than the period of time the use could have been prohibited," though this royalty must be ordered "by the court" and is only available "[i]f neither damages nor unjust enrichment caused by misappropriation are provable." Cal. Civ. Code § 3426.3(b). Mr. Wagner uses the framework set forth in *Georgia Pacific* to calculate both the reasonable copyright license and a reasonable royalty for the use of the claimed trade secrets.

Mr. Wagner's use of the *Georgia Pacific* framework for the calculation of a copyright license is unreliable. In determining "actual market value," "[t]he question is not what the owner would have charged, but rather what is the fair market value." *On Davis*, 246 F.3d at 166. That is an *ex ante* determination that considers the objective market value of the copyrighted work, as opposed to the *Georgia Pacific* "book of wisdom" framework, that employs a modified *ex post* examination of what the specific copyright plaintiff and defendant would have agreed to in a hypothetical bilateral negotiation. Mr. Wagner's methodology is thus the opposite of the one required to determine a lost license fee as a measure of "actual damages" suffered by a copyright owner. It is therefore irrelevant.

Though the *Georgia Pacific* framework may be relevant to calculating a reasonable royalty recoverable under CUTSA, it is impracticable to preclude the fact-finder from (improperly) considering the reasonable royalty in the context of Mattel's copyright infringement claim. Moreover, evidence about a reasonable royalty for the use of Mattel's trade secrets is unhelpful to the fact-finder, since any reasonable royalty must be imposed by the Court, and only after the fact-finder fails to award either lost profits or unjust enrichment to the trade secret plaintiff. *See* Cal. Civ. Code § 3426.3(b). Mr. Wagner's "reasonable royalty" determination is therefore irrelevant to the damages calculation entrusted to the fact-finder.

In conclusion, Mr. Wagner's opinion about Mattel's lost license fee and reasonable royalty is inadmissible, because it is both unreliable and irrelevant.

### III.   Conclusion

For the foregoing reasons, MGA's motion is granted as to Mr. Wagner's opinion to the extent he relies upon the framework set forth in the *Georgia Pacific* case, both for the purposes of calculating a reasonable royalty and for the purposes of apportioning MGA's unjust enrichment. MGA's motion is otherwise denied.  Machado's motion is denied without prejudice to Machado seeking to strike Mr. Wagner's opinion in the event Mattel fails to admit the contracts relied upon by Mr. Wagner.

The Clerk shall serve this minute order on all parties to the action.