QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar. No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de C.V., <br><br> Plaintiff, <br><br> vs. <br><br> MGA ENTERTAINMENT, INC., a California corporation, et al., <br><br> Defendant. <br><br> AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx) <br> Consolidated with <br> Case No. CV 04-09059 <br> Case No. CV 05-02727 <br><br> Hon. David O. Carter <br><br> **SUPPLEMENTAL BRIEF IN SUPPORT OF MATTEL'S MOTION FOR MISTRIAL OR, IN THE ALTERNATIVE, CURATIVE INSTRUCTION TO THE JURY** <br><br> Hearing Date: TBD <br> Time: TBD <br> Place: Courtroom 9D <br><br> Pre-trial Conf: January 4, 2011 <br> Trial Date: January 18, 2011 |

## Argument

Mattel files this supplemental brief to identify additional misconduct by MGA's counsel which necessitates a mistrial or, in the alternative, corrective instructions.

### I. MGA'S COUNSEL HAS REPEATEDLY ATTEMPTED TO PREJUDICE THE JURY WITH IMPROPER QUESTIONS LACKING ANY GOOD FAITH BASIS

<u>False accusations that "children died" from magnets in products sold by Mattel.</u>  On the purported ground that it was relevant to "lost profits," MGA's counsel sought to prejudice the jury by asking inflammatory questions asserting that "children died" from Mattel products containing magnets, despite having no good faith basis for the question and no evidence to support it:

> Q: Here's my question: Those designs, those were the result of flaws in the design here in the U.S. by Mattel? Yes?
>
> A. Certainly the design was improved. The previous design was insufficient, that's correct.
>
> Q. Insufficient? There were children who actually died from swallowing these magnets, right?
>
> A. No.
>
> Q. And there was a fourth recall in October --
>
> MR. QUINN: Your Honor, there's no good faith basis for that question. I request that the question and the answer be stricken.
>
> MS. KELLER: Children died.
>
> THE COURT: The question remains. The answer's "No."
>
> BY MS. KELLER:

1  Q.  You know better, don't you, Mr. Eckert?
2  A.  No.  In fact, I know no child died as a result of
3     swallowing a magnet in a Mattel toy.
4         MS. KELLER:  Your Honor, I would ask to recess to
5     inquire of the Court as to whether I may ask the next
6     question about a possibly prohibited area.
7         THE COURT:  Well, it depends.
8         Why don't we move on and get to the recess so we
9     don't take another sidebar.

10 Trial Tr., dated March 2, 2011, Vol. 1, at 62:20-63:13.  Thus, after falsely asserting
11 that children died as sa result of Mattel products containing magnets, MGA's
12 counsel also asked for a sidebar, implying to the jury she had additional evidence on
13 this issue (which was also knowingly false).
14        MGA's counsel also sought to prejudice the jury by asking inflammatory
15 questions about children having "convulsions," again without any good faith basis
16 for the question.

17 Q.  Some of these toys had so much lead in 'em that if the
18     child chewed on the toy, the child could go into
19     convulsions, right?
20 A.  No.  In fact, we had professional toxicologists examine
21     just that fact.  Because again, it was small components on a
22     toy that were affected -- still too much, but there was no
23     evidence that any child ever was injured due to the lead
24     paint.  Still unacceptable.
25 Q.  That's the position you took, I understand that.
26     But let me ask you --
27        MR. QUINN:  Move to strike.  Excuse me.  Move to
28     strike the comment.

THE COURT: Sustained.

Stricken.

Reask, Counsel.

Trial Tr., dated March 3, 2011, Vol. 1, at 59:24-60:13. As discussed in Mattel's reply, Mr. Larian also improperly (and falsely) volunteered that Mattel products "have magnets that kill kids."[1] Mattel proposed a curative instruction on this issue to the Court, but the Court has not read it to the jury.

<u>Falsely suggesting Mattel's forensic ink expert was involved in "chemical warfare," in violation of the Court's express Order to cease such questioning</u>. During initial cross examination of Mattel's forensic ink examiner, Dr. Aginsky, MGA's counsel falsely implied that Dr. Aginsky was involved in chemical warfare in the Soviet Union:

> Q. Now, you were educated at an institution dedicated to
> chemical warfare; isn't that true?
> MR. QUINN: It's irrelevant, Your Honor.
> THE COURT: Sustained.

Trial Tr., dated Feb. 25, 2011, Vol. 1, at 145:11-146:1. After the Court sustained this objection, counsel for MGA nonetheless continued with improper questioning:

> Q. And the Soviet secret police were part of the Ministry
> of Internal Affairs, while you were there doing ink
> analysis, correct?
> MR. QUINN: Objection.
> THE COURT: Sustained.
>       Now, why don't we take a lunchtime break for just
> a moment.

---

[1] 2/18/11 Trial Tr., Vol. 1, at 148:7-149:9.

Id. at 146:16-22.

During the break, the Court ordered MGA's counsel to cease this line of questioning, and specifically warned counsel that she would be sanctioned if she referenced "chemical warfare" again:

> THE COURT: Now, you're not being foreclosed about his background. But if you go into the sinister relationship and these unfounded accusations, the prejudicial effect outweighs probative value. You can go into his background.
>
> What did I just say, Ms. Hurst?
>
> MS. HURST: I can go into his background. Don't go into the other stuff. I got it.
>
> THE COURT: Write that million-dollar check out on the table, if you do.
>
> MS. HURST: I understand. But the testimony --
>
> THE COURT: Make it from your law firm.
>
> * * * *
>
> MR. QUINN: I just have two questions, Your Honor -- one question and one item of information.
>
> The question is: ***Is she gonna be permitted to go into chemical warfare at this military academy?***
>
> THE COURT: ***No.*** She can go back into what's appropriate: His training.

Id. at 158:1-25 (emphasis added). Despite the Court's clear order, MGA's counsel immediately interjected "chemical warfare" into her questioning when the jury returned:

> Q    You received your MS and your Ph.D in chemistry from the Military Academy of Chemical Defense?
>
> A    Correct.

1  Q   That was an institution involved in chemical warfare;
2  correct?
3  A   Yes.  Partially, yes.
4 Trial Tr., dated Feb. 25, 2011, Vol. 2, at 21:17-22.

<u>MGA's violation of the Court's express Order to redact a document referencing third party litigation and IP protection.</u>  MGA also violated this Court's express Order that to redact a document relating to third party litigation and IP protection practices by Mattel:

11  Q   And at the bottom of this document, it says,
12  "Aggressive intellectual property plan protection external
13  Simba, others as appropriate"; do you see that?
14  A   I do.
15  Q   Now, let's look at Exhibit 8973.
16      MR. QUINN:  Excuse me, your Honor.  On that
17  exhibit, there was supposed to be a redaction that the Court
18  ordered.  If we are not going to go back to it, that's
19  perhaps something we can address later.
20 Trial Tr., dated March 2, 2011, at 8:13-21.

Although the Court had previously ruled that Mattel would be permitted to introduce evidence of MGA's Hong Kong litigation if MGA introduced evidence of Mattel's third party litigation and IP protection, the Court ruled that the door had not been opened to Mattel's evidence because MGA's violation of the Order was the result of a "disconnect" among MGA's counsel.  Trial Tr., dated March 2, 2011, Vol. 2, at 58:22-59:15.  As a result of the purported "disconnect" MGA offered evidence the Court has already concluded is prejudicial and irrelevant.

## II. A MISTRIAL IS REQUIRED

Since Mattel filed its reply, MGA's counsel has told the jury that Mattel products with magnets killed children and Mattel products recalled for lead contamination caused convulsions; has told the jury that Mattel's expert witness was involved with chemical warfare; and has called the jury's attention to statements about other litigation the Court specifically ordered redacted.

Each of these was improper and prejudicial and, as with the other statements referenced in Mattel's moving papers, none have been corrected by the Court. These improper and inflammatory questions have grossly prejudiced Mattel and require a mistrial. The Ninth Circuit has held that prejudicial questions asked without a good faith basis warrant a new trial. United States v. Davenport, 753 F.2d 1460, 1463-64 (9th Cir. 1985) (reversing and remanding for new trial where "[t]here is no indication here that good faith was ever established" for the prosecutor's prejudicial questions); see also United States v. Blankenship, 382 F.3d 1110, 1127 (11th Cir. 2004) (finding that counsel's questions were not "asked in good faith" and that the "district court's timely intervention is all that prevented the jury from being tainted by these vitriolic considerations").

Indeed, MGA previously attempted to distinguish Mattel's cases in support of a mistrial by claiming they involved "conduct of counsel . . . not conduct by a witness." Opp. to Motion for Mistrial, Dkt. No. 10049, at 9. But now MGA's counsel has engaged in the same pattern of improper and inflammatory interjections designed to prejudice the jury against Mattel. A mistrial is required. B.K.B. v. Maui Police Dept., 276 F.3d 1091 (9th Cir. 2002) (abuse of discretion to deny mistrial where, even with curative instructions, inadmissible and prejudicial testimony "deprived Plaintiff of a fair trial"); Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 209 (3d Cir. 1992) ("cautionary instructions given to the jury proved to be insufficient to immunize the jury from the improper and inflammatory remarks" by counsel); Draper v. Airco, Inc., 580 F.2d 91 (3d Cir. 1978) (trial court erred in

refusing to grant new trial based on plaintiff's counsel's misconduct, including "several prejudicial, vituperative and insulting references to opposing counsel"); O'Rear v. Freugauf Corp., 554 F.2d 1304 (5th Cir. 1977) (trial court's refusal to grant mistrial was abuse of discretion where cautionary instructions could not cure prejudicial effect of counsel's repeated improper remarks).

At the very least, the Court should instruct the jury that counsel's improper statements that "children died" as a result of Mattel products containing magnets were improper, lack any factual basis, and are to be stricken from the record.

DATED: March 7, 2011          QUINN EMANUEL URQUHART &
                              SULLIVAN, LLP


                              By */s/ John B. Quinn*
                                 John B. Quinn
                                 Attorneys for Mattel, Inc., and
                                 Mattel de Mexico, S.A. de C.V.