1

```
                UNITED STATES DISTRICT COURT

                CENTRAL DISTRICT OF CALIFORNIA

                SOUTHERN DIVISION AT SANTA ANA

          HONORABLE DAVID O. CARTER, JUDGE PRESIDING



MATTEL, INC., ET AL.,              )
                                   )
          PLAINTIFFS,              )
                                   )
          vs.                      ) CV NO. 04-9049-DOC
                                   ) DAY 27
MGA ENTERTAINMENT, INC., ET AL.,   ) VOLUME 4 of 4
                                   )
          DEFENDANTS.              )
_____)




             REPORTER'S TRANSCRIPT OF PROCEEDINGS

                         JURY TRIAL

                   SANTA ANA, CALIFORNIA

                  THURSDAY, MARCH 3, 2011

                         5:31 P.M.



              DEBORAH D. PARKER, CSR 10342
                 OFFICIAL COURT REPORTER
              UNITED STATES DISTRICT COURT
                 411 WEST FOURTH STREET
                      SUITE 1-053
              SANTA ANA, CALIFORNIA 92701
                    (714) 542-8409
                D.PARKER@IX.NETCOM.COM
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1   APPEARANCES OF COUNSEL:

 2       FOR THE PLAINTIFF, MATTEL, INC.:

 3                           JOHN QUINN
                             WILLIAM PRICE
 4                           MICHAEL T. ZELLER
                             QUINN EMANUEL URQUHART
 5                           & SULLIVAN, LLP
                             865 S. FIGUEROA STREET
 6                           10TH FLOOR
                             LOS ANGELES, CALIFORNIA 90017
 7                           (213) 443-3000

 8
         FOR THE DEFENDANT, MGA ENTERTAINMENT, INC.:
 9
                             THOMAS S. MC CONVILLE
10                           ORRICK HERRINGTON & SUTCLIFFE, LLP
                             4 PARK PLAZA
11                           SUITE 1600
                             IRVINE, CALIFORNIA 92614
12                           (949) 567-6700

13
                             ANNETTE L. HURST
14                           ORRICK HERRINGTON & SUTCLIFFE, LLP
                             THE ORRICK BUILDING
15                           405 HOWARD STREET
                             SAN FRANCISCO, CALIFORNIA 94105
16                           (415) 773-5700

17
                             JENNIFER L. KELLER
18                           KELLER RACKAUCKAS, LLP
                             18500 VON KARMAN AVENUE
19                           SUITE 560
                             IRVINE, CALIFORNIA 92612
20                           (949) 476-8700

21

22

23

24

25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1   APPEARANCES OF COUNSEL:

 2        FOR THE DEFENDANT, CARLOS GUSTAVO MACHADO GOMEZ:

 3                           MARK E. OVERLAND
                             LAW OFFICES OF MARK E. OVERLAND
 4                           100 WILSHIRE BOULEVARD
                             SUITE 950
 5                           SANTA MONICA, CALIFORNIA 90401
                             (310) 459-2830
 6

 7                           ALEXANDER H. COTE
                             SCHEPER KIM & HARRIS, LLP
 8                           601 WEST FIFTH STREET
                             12TH FLOOR
 9                           LOS ANGELES, CALIFORNIA 90071
                             (213) 613-4660
10

11
     ALSO PRESENT:
12
                             JEANINE PISONI
13                           MGA ENTERTAINMENT, INC.
                             16360 ROSCOE BOULEVARD
14                           SUITE 105
                             VAN NUYS, CALIFORNIA 91406
15

16                           ROBERT ECKERT, MATTEL CEO
                             ISAAC LARIAN, MGA CEO
17                           KEN KOTARSKI, MATTEL TECHNICAL OPERATOR
                             MIKE STOVALL, MGA TECHNICAL OPERATOR
18

19

20

21

22

23

24

25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

1       SANTA ANA, CALIFORNIA; THURSDAY, MARCH 3, 2011; 5:31 P.M.
2          *(The following proceedings were had outside the*
3           *presence of the jury:)*
4               THE COURT:  We're on the record.
5               Counsel is present.  The jury has been excused for
6    the evening.  The alternates are excused.
7               Mr. Overland is not present.  Ms. Keller is not
8    present.  All other counsel are present.
9               Mr. Quinn, you wanted to make a record.
10              MR. QUINN:  Yes, your Honor.
11              Ms. Keller's question about delay in reporting was
12   improper.  Rather than say that "allegations were reported,"
13   which is what was discussed and written out -- and if I may
14   inquire whether the sentence as written out on that manila
15   folder is still here present in the courtroom?
16              MS. HURST:  She took all of her --
17              MR. QUINN:  So we actually wrote it out, and went
18   over what she was going to say.  And rather than say
19   "allegations were reported," which is what was agreed to in
20   the court order, she said that "delay was reported."
21              That's what we were objecting to, your Honor.  And
22   I don't -- Mattel's delay, obviously.  And I don't --
23              Again, your Honor, I don't understand why we spent
24   the time working it out and getting the exact wording when
25   there was an immediate departure from that.  That was

1  actually like the third attempt.  Each one of them was wrong
2  and was not what had been agreed on.  And, you know, that
3  was objectionable, and there has been too much to it.
4         I would like to make an offer of proof, your
5  Honor.  We were told that if we responded to that by
6  pointing out, or eliciting testimony that the Consumer
7  Product Safety Commission took no action, didn't issue a
8  fine, didn't bring any type of charges or allegations
9  against Mattel relating to any delay in reporting, the court
10 advised us that we were welcome to do that but then if we
11 did that, it would open up the whole issue in the trial,
12 including Mr. Eckert's alleged statements.  He's quoted in
13 the article, in the *Wall Street Journal*.
14        In our view, we should have been able to elicit
15 that testimony about the commission not taking any kind of
16 action without opening the door completely to a free for all
17 on the issue of whether there was any delay in reporting.
18        THE COURT:  When the folder, apparently, was with
19 counsel, the court didn't have a copy.  I didn't pick up the
20 difference between "allegations" and "delay."  Everything
21 else seemed to be what the two of you had worked out.
22        And my focus was on the portion that Mr. Price
23 noted that he wanted stricken, and that was "lawsuits."  So
24 if you want to correct that tomorrow and put -- I'm glad to
25 strike the question.  I'm glad to strike the answer, and the

```
 1  same question can be read if you would like tomorrow.
 2          That was the agreement.  I just didn't have a copy
 3  of the folder, so I couldn't track it.
 4          MR. QUINN:  Well, obviously, the cumulative effect
 5  now of having asked the three questions and my having
 6  objected, we don't want to emphasize that anymore.
 7          There, obviously, is a difference between saying
 8  "allegations were reported" and saying that delay was --
 9  Mattel's delay was reported.  And we would ask the court to
10  tell the jury that there is no evidence that Mattel delayed
11  in any way in responding to the safety concerns.
12          THE COURT:  You see, I don't have the folder in
13  front of me, and I thought --
14          MR. QUINN:  Well, apparently, Ms. Keller took it
15  with her; and, perhaps, she could be asked to bring it with
16  her tomorrow.
17          THE COURT:  Well, I'm sure she will.  If you want
18  to call her, Ms. Hurst, and ask her to bring it back, the
19  question is --
20          Sir, your concern is that the word "allegation"
21  was used instead of "delay"?
22          MR. QUINN:  The other way around.
23          MR. PRICE:  Silence the question.
24          The concern is the question assumed there was,
25  in fact, delay.  It was that Mattel's delay was reported.
```

```
 1   And that goes --
 2              THE COURT:  I'm sorry.  You see, I don't know.
 3              MR. PRICE:  We wanted "allegations of delay."
 4              THE COURT:  Allegations of delay.
 5              MR. PRICE:  And the reason I didn't object to
 6   "allegations" being in there, is because I thought it should
 7   be.
 8              THE COURT:  You can just stipulate to it tomorrow:
 9   That was the appropriate question and the answer given
10   responds to that question, or just leave the record like it
11   is.
12              MR. PRICE:  Your Honor, I think because the jury
13   now has the impression that there is some evidence that
14   Mattel, in fact, did delay -- and that's irrelevant to this
15   trial, and there is no evidence of that in this trial -- the
16   court should simply tell the jury there's no evidence that
17   Mattel delayed.
18              THE COURT:  I will not do that.  I will reopen
19   this area if each of you want to.  My only concern -- and
20   I'll restate it -- is that I'm allowing this because of the
21   effect of this kind of notoriety on Mattel's stock,
22   investments and this lost profit issue.
23              The actual truthfulness of these allegations of
24   delay are not of import and my fear was the prejudicial
25   effect, which is why you got a favorable ruling from my
```

```
 1   perspective limiting MGA.  Because MGA's initial request was
 2   to get into the substance of the Congressional hearings,
 3   Senator Derkin's testimony and numerous other specifics, and
 4   I think my response was that that's irrelevant, because this
 5   only has import for how the press picked it up and then
 6   broadcast it.  And I think, if my memory is correct, that
 7   the initial document I was shown was a newspaper, the
 8   Wall Street Journal, the fifth paragraph and then on with
 9   Senator Durkin, and I read part of that just before lunch.
10           I asked MGA to go back and show me additional
11   press clippings, and they showed me four, ranging from
12   Chicago to another New York piece article, and I forget the
13   other two articles.  That was done at the recess.  And I
14   indicated that they had shown me enough to allow them to ask
15   the question.
16           So now the difference between "allegation of
17   delay" and "delay."
18           MR. PRICE:  The fact of it.
19           THE COURT:  I can rectify that, but I'm not going
20   to step into that.  In other words, if you two can reach
21   accommodation, so be it; if you want to call him, so be it.
22   I'll strike the question, and I'll strike the answer for
23   you, if you'd like.
24           Now, who's going to examine Mr. Wagner?
25           Are you going to examine Wagner?
```

1                MR. PRICE:  Yes.
2                THE COURT:  And who's going to cross-examine
3     Wagner?
4                MS. HURST:  I am, your Honor.
5                THE COURT:  My rulings concerning lost profits
6     have resolved that issue that I read to you last evening.
7     You're going to find that that -- I'm going to stay with
8     that ruling.
9                What I'm struggling with, right now, is still the
10    apportionment issue, and I need, well, two hours, maybe
11    three.  I want to read what Judge Posner has to say back in
12    the Seventh Circuit on an unrelated case, but it's
13    interesting reading.  And then my ruling will be very short;
14    in other words, we made enough of a record.  There's not
15    going to be any final argument on this, so I'm inviting
16    counsel to come back; or you can go home this evening, if
17    you would like to, and I can give it to you tonight later on
18    and send it out; or tomorrow morning, first thing, when you
19    come in.
20               I just don't want Mattel to be disadvantaged
21    because, Mr. Zeller, you'd asked to make sure that the
22    slides were appropriately prepared, so it's an effort on my
23    part to stay this evening until I get this done.  And
24    remember, I would have been in much better shape -- I can't
25    stress to both of you -- if I could have heard the two

1  experts back to back.  It just would have been a better
2  resolution of this issue.
3           MR. PRICE:  Your Honor, can I ask Mr. Wagner how
4  quickly he can change the slides, because obviously --
5           THE COURT:  Go out and talk to me.  If you don't
6  have to stay tonight, I would like you all sharp, all
7  rested; if you do have to stay, I'm welcoming you to.  I
8  just need probably 8:00, 9:00, 9:30.  I can't predict,
9  because I have a lot more reading to do.
10      *(Pause.)*
11           MR. PRICE:  Your Honor, we can -- because
12 Mr. Machado is going first thing in the morning, if we get
13 the order tonight and then have an opportunity to make sure
14 we know the parameters tomorrow morning before 8:30, then I
15 will have sufficient time to adjust slides.
16           THE COURT:  Mr. Price, is that acceptable?
17           Mr. Zeller?
18           MR. ZELLER:  Yes.
19           Ms. Hurst?
20           MS. HURST:  Yes, your Honor.
21           THE COURT:  Mr. McConville?
22           MR. MCCONVILLE:  Yes.
23           MR. PRICE:  Shall we come, 8:00 o'clock, or --
24           THE COURT:  What happens if I don't get it out
25 tonight and I get it out first thing in the morning?

1         MS. HURST: That can be a little tough for me.
2         THE COURT: Well, then, stick around. Stick
3    around, then.
4         I'm just two or three hours, but I don't know.
5    Could be 45 minutes. It literally could be midnight, okay?
6         This is not an easy decision. So what each of you
7    think is such an easy decision is not easy at all.
8         I mean, trade secret misappropriation intermixed
9    with copyright and nobody has decided this issue, really,
10   from the circuit perspective -- from my position, anyway.
11   In addition to that, you've got lost profits. You've got
12   unjust enrichment intermixed. You've got the peculiarity of
13   the copyright.
14        MS. HURST: May I inquire how long do they think
15   they have with Mr. Machado on direct?
16        THE COURT: Yes. Just informally talk about that.
17   If I can get you through lunchtime tomorrow, I will; but --
18        Off the record.
19      *(Off the record.)*
20        THE COURT: We're back on the record.
21        All counsel are present.
22        Ms. Hurst has found the folder that was subject to
23   concern. And would one of you read what was the agreed
24   language?
25        MS. HURST: Yes. The agreed language had been:

12

1  *Were you also subject to negative publicity*
2  *regarding delay in reporting the lead paint and magnet*
3  *safety products?*
4          THE COURT:  Which I believe is what Ms. Keller
5  asked.
6          MR. QUINN:  What I said before, I misheard it.
7  But she did say "tremendous."  There was some embellishment,
8  and, you know, this thing fell on me like a cannon.
9          THE COURT:  The court simply says -- will say, I
10 find it appropriate, pursuant to the stipulation entered
11 into by the parties.
12         Off the record.
13     *(At 6:02 p.m., proceedings were adjourned.)*

-oOo-

*DEBORAH D. PARKER, U.S. COURT REPORTER*

13

```
1                        CERTIFICATE
2           I hereby certify that pursuant to Section 753,
3    Title 28, United States Code, the foregoing is a true and
4    correct transcript of the stenographically reported
5    proceedings held in the above-entitled matter and that the
6    transcript page format is in conformance with the
7    regulations of the Judicial Conference of the United States.
8
9    Date:  March 3, 2011
10
11
12                              _____
13                              Deborah D. Parker, Official Reporter
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*