**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION AT SANTA ANA**

HONORABLE DAVID O. CARTER, JUDGE PRESIDING

MATTEL, INC., ET AL.,                )
                                     )
            PLAINTIFFS,              )
                                     )
        vs.                          ) CV NO. 04-9049-DOC
                                     ) STATUS CONFERENCE
MGA ENTERTAINMENT, INC., ET AL.,     ) VOLUME 3 of 4
                                     )
            DEFENDANTS.              )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

JURY TRIAL

SANTA ANA, CALIFORNIA

SUNDAY, MARCH 6, 2011

3:36 P.M.

**DEBORAH D. PARKER, CSR 10342**
**OFFICIAL COURT REPORTER**
**UNITED STATES DISTRICT COURT**
**411 WEST FOURTH STREET**
**SUITE 1-053**
**SANTA ANA, CALIFORNIA 92701**
**(714) 542-8409**
**D.PARKER@IX.NETCOM.COM**

```
1    APPEARANCES OF COUNSEL:

2         FOR THE PLAINTIFF, MATTEL, INC.:

3                          JOHN QUINN
                           WILLIAM PRICE
4                          MICHAEL T. ZELLER
                           QUINN EMANUEL URQUHART
5                          & SULLIVAN, LLP
                           865 S. FIGUEROA STREET
6                          10TH FLOOR
                           LOS ANGELES, CALIFORNIA 90017
7                          (213) 443-3000

8
          FOR THE DEFENDANT, MGA ENTERTAINMENT, INC.:
9
                           THOMAS S. MC CONVILLE
10                         ORRICK HERRINGTON & SUTCLIFFE, LLP
                           4 PARK PLAZA
11                         SUITE 1600
                           IRVINE, CALIFORNIA 92614
12                         (949) 567-6700

13
                           ANNETTE L. HURST
14                         ORRICK HERRINGTON & SUTCLIFFE, LLP
                           THE ORRICK BUILDING
15                         405 HOWARD STREET
                           SAN FRANCISCO, CALIFORNIA 94105
16                         (415) 773-5700

17
                           JENNIFER L. KELLER
18                         KELLER RACKAUCKAS, LLP
                           18500 VON KARMAN AVENUE
19                         SUITE 560
                           IRVINE, CALIFORNIA 92612
20                         (949) 476-8700

21

22

23

24

25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1   APPEARANCES OF COUNSEL:

 2        FOR THE DEFENDANT, CARLOS GUSTAVO MACHADO GOMEZ:

 3                             ALEXANDER H. COTE
                              SCHEPER KIM & HARRIS, LLP
 4                            601 WEST FIFTH STREET
                              12TH FLOOR
 5                            LOS ANGELES, CALIFORNIA 90071
                              (213) 613-4660
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1        SANTA ANA, CALIFORNIA; SUNDAY, MARCH 6, 2011; 3:36 P.M.

 2        (The following proceedings were had outside the

 3        presence of the jury:)

 4             THE COURT:  We're back on the record, Deborah.

 5             Concerning the request for charts, summaries,

 6   et cetera, the court's guided by United States versus

 7   Johnson, 594 F.2d 1253.

 8             The government in that case invoked Federal Rule

 9   of Evidence 1006, which provides, although the government --

10   well, strike that.

11             The contents of voluminous writings, recordings,

12   or photographs which cannot conveniently be examined in

13   court may be presented in the form of a chart, summary, or

14   calculation.  The originals or duplicates shall be made

15   available for examination, or copying, or both by other

16   parties at reasonable time and place.  The court may order

17   that they be produced in court.  We hold that under this

18   rule the proponent of the summary must establish the

19   underlying -- I'm sorry, that the underlying materials upon

20   which the summary is based are admissible in evidence.

21             Moreover, requiring the proponent to show the

22   admissibility of the underlying materials is necessary to

23   protect the integrity of the Federal Rules.  In the instant

24   case, the government argued that notification of opposing

25   counsel obviated the need to show that the underlying
```

1   materials fell within an exception to the hearsay rule.  We

2   do not believe that Congress intended that counsel could

3   abrogate other restrictions on admissibility, like the

4   hearsay rule by using, or by the use of summaries.  We

5   cannot read Rule 1006 as preempting the other rules.

6           So whatever applies to Mr. Wagner will obviously

7   apply coequally to MGA and their expert.  I'm fairly

8   satisfied with the admission of evidence concerning the

9   gentleman who testified concerning the ink -- what's his

10  name?

11          MR. MCCONVILLE:  Kinrich.

12          MS. HURST:  Cunningham?

13          THE COURT:  Cunningham.

14          I'm fairly satisfied that the court has excluded

15  all of, what I call, the demonstrative and argumentative

16  material.  I'll go over Kinrich one more time.  I'm fairly

17  satisfied that my ruling is correct, but I'll look at

18  Kinrich one more time.

19          The jury hasn't had that submitted to it.  And

20  I'll pay close attention to Wagner and Malackowski, also, in

21  terms of what's requested.

22          All right.  Counsel, this is your time for

23  argument concerning ownership, contract and intentional

24  interference, and there's --

25          Why don't I just start with Mattel; and then,

1    we'll come back numerous times.

2         MR. ZELLER:  Currently, the way that the

3    instructions are drafted, it focuses, first of all, on ideas

4    and says that there's a dispute about whether ideas is

5    covered; and then, the verdict form follows this format.

6         We don't think that it should be phrased this way.

7    In fact, we don't even think that saying on the instructions

8    that there is a dispute about ideas is the appropriate way

9    of proceeding.  That's really a matter of argument, I think,

10   by the parties.

11        What we suggest is, is that the court lay out the

12   way that the jury is supposed to construe a contract,

13   including by means of extrinsic evidence; and I'll throw

14   that in with some detail in a moment here.  But part of the

15   premise here is, is that it starts off with suggesting that

16   ideas are really the area of dispute.  But, frankly, if the

17   court is going to get into that, then we think it would have

18   to coequally tell the jury that designs are covered and that

19   other aspects of what Mattel claims ownership of, in fact,

20   are not the subject of this dispute.

21        This is why we actually think it's for the better

22   for the court to stay out of it and give neutral

23   instructions saying, *The parties dispute terms.  You know,*

24   *here is how you go about interpreting a contract.*

25        THE COURT:  Okay.  Just a moment.

```
 1        (Pause.)

 2              THE COURT:  So that's really instruction No. 3 for

 3   our purposes that you would like to have modified?

 4              MR. ZELLER:  It is.

 5              THE COURT:  What do I do with BAJI 10.75, which

 6   uses this exact language in the use notes?

 7              MR. ZELLER:  Bear with me.

 8              THE COURT:  Or at least refers me to this

 9   language?

10              You won't find it in CACI.  You will find it in

11   BAJI.

12        (Pause.)

13              MS. HURST:  I think the court did indicate

14   CACI 314, rather than BAJI 10.75.

15              THE COURT:  I do, I'm sorry.

16              No, you will find it in 10.75.

17              MS. HURST:  It's in the notes, but it's --

18              THE COURT:  No, I went to BAJI first, so --

19              MR. ZELLER:  Well, part of this -- and we actually

20   agree that it makes sense to use the part of the BAJI where

21   it says in deciding what the terms of the contract mean,

22   because that tells the jury how to go about interpreting it.

23   But we don't think the predicate in giving the back and

24   forth, you know, is really necessary, partly too because it

25   makes it sound like -- and this in combination with the
```

verdict form, and this is kind of another of our concerns

over the way that this is set up with ideas -- is it makes

it sound like if ideas are not covered, then it's game over.

Whereas, of course, we have other terms, designs and

everything else.  It may be that some things are not in the

jury's -- the jury can conclude that we don't own, should it

say that ideas are not covered, but there is another set of

terms that we think do cover it.  And we're just concerned

that it sounds like they check "no" for idea; and then, they

are done with that part of the contract or they are done

with the contract.

THE COURT:  Okay.  In other words, you want more

process?

MR. ZELLER:  Right.  And the fact of it is, is

that, really, our view is, is that designs are at the core

here.  I mean, while we do think -- and, obviously, the

court is aware of our position on ideas -- the fact is, is

that we don't think that necessarily has a significant

effect on what we do, or do not own.  I mean, regardless of

whether we own ideas or not, there are some 90 drawings that

we believe that the evidence shows, and these are fixed

designs that the evidence shows were created while Carter

Bryant was a Mattel employee and that we think our doll

designs that we own.  So that's part of our -- that's really

a large part of our concern over this.

9

```
 1              And as the court knows, you know, designs is
 2   specifically used as one of the terms in the contract of
 3   what's covered as an invention.
 4              THE COURT:  In other words, it's not fair to
 5   single out a single term?
 6              MR. ZELLER:  Right.
 7              THE COURT:  It's an isolated -- the impression of
 8   the jury is it's disputed?
 9              MR. ZELLER:  Right.
10              THE COURT:  Isn't it?
11              MR. ZELLER:  Design?
12              THE COURT:  No.  Ideas?
13              MR. ZELLER:  Well, ideas is disputed.  But the way
14   it's set up with the instruction and the verdict form is it
15   sounds like that that's the full extent of what we claim to
16   own as the inventions when, in fact, inventions certainly
17   includes --
18              THE COURT:  Eventually we're going to get a
19   determination from the jury about ideas.  How do you suggest
20   that that fairly includes designs?
21              In other words, take a moment.  Draft it for me,
22   okay?
23              Talk to Mr. Quinn.  He's going to be arguing it,
24   okay?
25              By the way, I understand the concern.
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

1      *(Pause.)*

2           MR. ZELLER:  We propose, your Honor, an

3      instruction that states as follows:  *Mattel claims that the*

4      *terms "inventions," and "at any time during my employment"*

5      *include Carter Bryant's Bratz-related works created between*

6      *January 4th, 1999 and October 20th, 2000.*

7           *MGA claims they do not.  In order to exercise*

8      *ownership over Carter Bryant's Bratz-related work or works,*

9      *rather Mattel must prove its interpretation of the terms is*

10     *correct.*

11          THE COURT:  The point being leaving out the word

12     "ambiguous."  Above all that's your real concern; isn't it?

13          MR. ZELLER:  That's certainly one of them.

14          THE COURT:  Because although "ambiguous" is set

15     forth in -- the first part of the instruction comes from

16     CACI 3.14.  The last part comes from BAJI.  The last line in

17     10.75, so --

18          Just a moment.  Let me see if I can construct the

19     argument.  Let me see if can construct your concern:  *Judge,*

20     *if you give this instruction, by interposing a sentence with*

21     *the word "ambiguous" in it, what it basically does is tell*

22     *the jury that basically the game is over.  Because of the*

23     *ambiguity as you pointed as a trial judge, it leaves the*

24     *jury saying that this is an ambiguous contract.  So how can*

25     *we ever go any further in the interpretation of whether*

1   *ideas is included or not.*

2          Is that somewhat succinctly, you express your

3   concerns?

4          MR. ZELLER:  That is absolutely part of it.

5          THE COURT:  What do I do with 10.75, and why was

6   that line put in there in BAJI?  And is it applicable to

7   this case, even if it's there?

8          Take your time with that.  This is probably one of

9   the most important things we're going to do today, quite

10  frankly.

11         And Ms. Keller and Mr. McConville, whoever is

12  arguing this matter; Mr. Price and Mr. Quinn, this is all

13  yours.  Both sides.

14         MR. ZELLER:  The version of BAJI that we have that

15  says "interpretation," and it says:  "See comment."

16         THE COURT:  Right.  "See comment."

17     *(Pause.)*

18         THE COURT:  Now, here's another interation.  More

19  iterations than we can possibly know.

20         MS. HURST:  Should I respond on these as we're

21  going --

22         THE COURT:  Not yet.  Here's another one.

23     *(Pause.)*

24         THE COURT:  So let's look down for a moment at

25  disputed terms, Inventions:  *Mattel claims that the term*

 1    *Inventions includes Carter Bryant's ideas in addition to*

 2    *discoveries, improvements, processes, developments, designs,*

 3    *know-how, data computer programs and formulae.*

 4            That comes right out of the Inventions Agreement.

 5            *MGA Entertainment, Isaac Larian and MGA Hong Kong*

 6    *claim that Inventions does not include ideas.*

 7            Now, the term "Inventions" is ambiguous.  That's

 8    what you're really concerned about.

 9            *In order to exercise ownership over Carter*

10    *Bryant's ideas, Mattel must prove that its interpretation of*

11    *the term is correct.*

12            So regardless of the drafting, the essence of what

13    you're concerned about is that if I instruct on ambiguity,

14    it sounds like a finding of fact and why should the jury go

15    any further interpreting whether ideas may be included in

16    this contract; is that right?

17            MR. ZELLER:  That's right.  In one way --

18            THE COURT:  You're not going to start quibbling

19    over the rest of the language -- that's right out of the

20    Inventions Agreement -- until I talk to MGA, which will

21    quibble over it.

22            MR. ZELLER:  This is our concern.  Because also I

23    don't think that it's necessarily the case, just because the

24    language of inventions, the definition of it in the

25    agreement is broad.  That doesn't make it ambiguous.  It

1  just makes it a question of, is it covered?

2        So I don't -- I mean, whether that breadth covers

3  it.  And also, of course, the Ninth Circuit, the way that

4  the Ninth Circuit put it, is it was talking more about,

5  well, when concerned in the context of extrinsic evidence,

6  there could be, you know, particular results attached to it.

7  And, you know, I mean, it's a little unusual, of course,

8  because of the posture that we have in terms of normally

9  most of us think of a contract as being an issue that's

10 determined as a matter of law.

11        THE COURT:  Exactly.

12        MR. ZELLER:  But the Ninth Circuit has instructed

13 that this contract goes to a jury.  But I don't think it's

14 one the same to say that you should be instructing the jury

15 that it's ambiguous.  Because then, the other punchline on

16 this going a little bit ahead on the other instruction is,

17 is you say, well -- not you, but the draft instruction says,

18 ambiguity should be construed against Mattel.  And that

19 really does make it sound like game over; and then, in

20 conjunction with the verdict form making it sound like our

21 only claim to ownership is through ideas, game over.

22        THE COURT:  Could I turn to MGA for a moment and

23 hear their argument on one point?

24        MR. ZELLER:  Sure.

25        THE COURT:  As far as the draftsmanship is

```
 1   concerned, I can clean that up later.  I mean, we're down to
 2   the essence of the concern between the parties, so --
 3            MR. QUINN:  Your Honor, before you do, could I say
 4   one thing?
 5            THE COURT:  Sure.  Absolutely.
 6            MR. QUINN:  We all know the contract does not
 7   include the word "ideas."  MGA wants to argue that all
 8   Carter Bryant gave them -- all Carter Bryant gave MGA or at
 9   least part of what he gave MGA were just ideas.
10            THE COURT:  Use that mike.
11            MR. QUINN:  I'm sorry.
12            THE COURT:  No, no, that's fine.  I want to make
13   sure I can hear you.
14            MR. QUINN:  The contract does not include the word
15   "ideas."  MGA wants to be able to argue that all Carter
16   Bryant gave them or at least part of what Carter Bryant gave
17   them was just ideas.  And that's not covered by the
18   contract.  They can make that argument and should make that
19   argument.  But it would be a mistake in the guise of
20   contract construction to start calling out terms that aren't
21   there and ask -- you know, saying, there's a dispute about
22   whether or not this other thing which isn't there in the
23   contract is covered or not.  That's really for argument.
24            I think all the court ought to do is say, *Here is
25   the language of the contract.  There is a dispute about what*
```

1    *it means.  It's for you to decide what it means.  And here*

2    *are the rules of contract construction to aid you in*

3    *deciding what it means.*

4              As soon as we go down the road of calling out

5    things that aren't there and saying, *These are also issues*

6    *that you might want to decide and say yea or nay on.  We*

7    *really left the language of the contract, and we've gone*

8    *into what's really argument.*

9              THE COURT:  Then, I want to propound this question

10   to you.  I think at some point it's critical that the jury

11   make a specific determination of whether "ideas" is included

12   in the contract -- in this contract.

13             How do I do that?  In other words, do I do that

14   leaving it dangling in a special verdict form?  In other

15   words, is your proposal this:  That I instruct the jury

16   about how you go about the process of deciding this issue;

17   and then, I leave a special verdict form of some type that

18   answers that question for us?  Because after all, that's

19   normally what the court would do in a contract

20   determination.  And then, if I was interpreting this and

21   deciding whether ideas was included or not, it would go up

22   to the circuit after a summary judgment motion.

23             Now, the circuit would have the right to know what

24   the district court thought on that issue, and I would make a

25   specific finding at the time of summary judgment.  Well,

```
1   that's exactly what we're doing.  We're transferring this to
2   the jury by direction of the Ninth Circuit to make this very
3   determination.  At some point, I need to get an answer to
4   that determination.  Did this contract include the word
5   "ideas," or not?
6            MR. QUINN:  What I don't -- I guess I don't
7   understand why the court believes that that's necessary,
8   some specific finding regarding ideas.  Because, of course,
9   its our position all these things represent ideas.  It's
10  kind of like an ambiguity within an ambiguity.  We are
11  asking them to construe a contract, and we're pulling out a
12  word that doesn't appear in the contract and asking them,
13  you know, this term is disputed, even though it's not there.
14  It's applicability is disputed, and you should make a
15  finding yea or nay on that.
16            It's much better, I think --
17            THE COURT:  But isn't that exactly what
18  Judge Larson did?  When you really think about this case,
19  didn't he just, basically -- I mean, not "just."
20            Didn't he say that ideas weren't included in the
21  contract?  That's what he did.
22            MR. ZELLER:  What he did was he said that "ideas"
23  were covered.
24            THE COURT:  Do you want to call him?
25            MR. ZELLER:  I remember it was in the opinion.  It
```

1    was actually in the instructions --

2            THE COURT:  I'm just joking with you.

3            MR. ZELLER:  It was actually in the instructions

4    and it said that the inventions included and it gave, among

5    other terms, the word "ideas."  But what it -- what it did

6    not do was -- I mean, that's because he determined it was as

7    a matter of law.

8            THE COURT:  He basically determined "ideas" were

9    included in this contract.

10           MR. ZELLER:  He did, but that's -- but that isn't

11   the same thing --

12           THE COURT:  And that's exactly one of the reasons

13   the circuit sent it back, exactly for that type of

14   determination.  I think it's remiss.  And I'm asking you how

15   to deal with it.  I understand the issue concerning if I

16   instruct that it's ambiguous, okay?  And I'm not quite

17   certain how 10.75 applies in that one line of BAJI, as I

18   synthesize it with CACI.  In this particular case, I don't

19   know if that's a fairer way to instruct the jury, yet.

20   That's why I've got 20 more iterations of this in just a

21   moment in a stack back there.

22           But I start -- but I thought I would start my

23   discussion tonight with this, and I'm not going to quibble

24   too much about the language.  The rest of the language

25   doesn't seem to me to be anything other than nitpicking.

1  But I'm, of course, going to listen to MGA in just a moment,

2  but not yet.

3         Where am I going to and how am I going to get a

4  determination of whether "ideas" is specifically included in

5  this contract, other than if I follow your rationale?  I

6  just stick in the special verdict form is "ideas" included

7  in the contract.  I'll be right with you, I promise you.

8  And you'll have equal time, or greater time.

9         In other words, what you need to hear is, I'm

10  going to get that determination.  It's how I go about

11  eventually getting that determination.  And I understand

12  this problem about ambiguous.  The more I look at this, BAJI

13  in the note makes sense, but it may be prejudicial in this

14  case, okay?

15         And I'm not too certain I'm accepting.  Or I may

16  accept your argument, Mr. Quinn, and include it also as a

17  process, but I'm --

18         MR. QUINN:  Your Honor, I suppose they are

19  asked -- the jury is asked to make a determination:  Are

20  ideas included?  Yes or no?  If they say "no," what have we

21  learned from that?

22         I mean, that's not the end of the decision tree.

23  You've got inventions.  You've got designs.  You've got all

24  these other words.  So we're going to ask them: *Did Carter*

25  *Bryant give them designs?  Give inventions?  Give other*

```
 1   things that are clearly included?

 2           THE COURT:  Just a minute.  Hold on.

 3           MR. QUINN:  I don't think we've gotten a useful

 4   piece of information, whether the answer is "yes" or "no" on

 5   ideas, the term --

 6           THE COURT:  Here's the way I constructed before.

 7   Ideas, check.  Designs, check.  In other words, go down the

 8   whole process.  Go down the whole laundry list of what is in

 9   the Inventions Agreement and on a specific verdict form, and

10   I'm just floating this by for a moment.  You could have

11   lines literally setting forth ideas, designs, developments,

12   improvements, discoveries, processes.  In other words, you

13   could hide in a sense ideas without putting a red light

14   around it and have a jury determine if each of these are

15   included.

16           Now, the problem is that the contract already

17   explicitly includes designs.  It's already there.  And

18   you're right.  If I'm calling out ideas, maybe I should be

19   instructing that the contract is exclusive or already

20   categorically states that there are discoveries, processes,

21   developments and designs for your determination about what

22   these drawings mean.

23           MR. QUINN:  What I keep struggling with is:  What

24   have we learned?  Whatever they say, "yes" or "no" on ideas,

25   where does that get us in terms of determining liability?
```

1    We still have these other terms.  The court is -- if I

2    understand what the court is saying, one alternative is to

3    give them each one of those terms and ask them to check a

4    box "yes" or "no."  I'm not seeing how that is an

5    improvement over, frankly, just telling them, *This is what*

6    *the contract says.  Here's some -- You know, it's up to you*

7    *to decide whether what Carter Bryant gave them is covered by*

8    *this contract.*

9              THE COURT:  Because the argument for MGA will be

10   this, Mr. Quinn; and that is, on appeal, the jury never

11   determined, specifically, if ideas -- idea or ideas was or

12   were included in this contract.

13             MR. QUINN:  Well, they shouldn't do that.  It's

14   not in the contract.  They can get up --

15             The court shouldn't get involved in crafting jury

16   instructions and instructions on law and terms that aren't

17   in the contract.  They can get up there and argue.  If I'm

18   them, I get there and argue and say, you know, whatever I

19   want about the designs in the drawings, but I say,

20   *Everything else he gave them was purely an idea, and you*

21   *don't see that word in this contract.*

22             THE COURT:  Okay.

23             MR. QUINN:  They can argue that.  But for the

24   court to get involved in sorting out terms that aren't there

25   and asking them to make determinations as to the terms that

*DEBORAH D. PARKER, U.S. COURT REPORTER*

1  aren't there, is not something the court should be doing.

2  That's something for argument.

3         The other layer of ambiguity on top of all this,

4  if I'm a juror, I get that instruction.  I look at this

5  laundry list of terms -- I mean, what I'm going to argue in

6  closing, these are all ideas.  An invention is an idea.  A

7  design is an idea.  A process is an idea.  They would be

8  totally confused.  And they are going to say, *No, an idea*

9  *must be something else.*  And that's not in the contract.

10        THE COURT:  I'm going to construct another

11  argument for you:  *Judge, why should you ever even have a*

12  *checklist with all of these terms, because the one missing*

13  *term would be ideas?*

14        So, if the jury literally took the contract, they

15  would go down the list, and they would find:  Discoveries,

16  improvements, processes, developments, designs, know-how,

17  programs, formulae.  Yes, yes, yes, yes; ideas, no.

18        MR. QUINN:  But that --

19        THE COURT:  And now I'm going to ask you this:  If

20  I find all those things and liability occurs, how are you

21  harmed?

22        In other words, the circuit has the answer to

23  whether "ideas" was included or not and they'll do whatever

24  they want.

25        MR. QUINN:  I'm just afraid by calling it out, you

```
 1    mislead the jury that there is some particular significance
 2    in terms of the court's construction of the contract as to
 3    that.  The court has put its imprimatur on that.  What
 4    really should hear is just an argument.  By the way, the
 5    "concept" isn't there, either.
 6              THE COURT:  How do I call out that if I literally
 7    follow the terms of the contract and include -- I'll put
 8    "concept," if you would like to.  I'll include "ideas," if
 9    you would like to.  In other words, it's just a laundry list
10    of eight things that they put a check by, just like special
11    findings.
12              MS. HURST:  I didn't say a word.
13              MR. QUINN:  I don't think we need a checklist.
14    What I'm advocating is, you give them the contract language.
15    You tell them, *Here's some rules to help you construe the*
16    *contract, and it's your job to construe the contract.*
17              THE COURT:  All right.  Now, Ms. Hurst,
18    uninterrupted by Mattel.
19              MS. HURST:  The court -- the entire structure of
20    the California Uniform Instructions is that you tell the
21    jury what term they have to interpret.  And the court did
22    not draft an instruction that says, *Interpret the term*
23    *"ideas."*  It drafted an instruction that says, *Interpret the*
24    *term "Inventions."*  That's the word in the contract.
25              Mr. Quinn has constructed a total fallacy over
```

1   here.  He's making an argument -- it's just inviting error.

2   It's leading right back down the same path.

3          THE COURT:  Just a minute.  Read the last portion:

4   *MGA, Inc., Isaac Larian and MGA Hong Kong claims that*

5   *inventions does not include ideas.*

6          MS. HURST:  You're interpreting the term

7   "Invention."  The word "Invention" is in the contract and

8   it's been found by the Ninth Circuit to be ambiguous.

9          Now, having said all that, I have a solution to

10  the court's problem.

11         THE COURT:  Okay.

12         MS. HURST:  We're only looking for the jury to be

13  instructed on our theory of the case.  We don't care about

14  ideas in the abstract, because that's not even consistent

15  with our position on preemption.  Here's what we care about.

16  The idea for the product name Bratz and Jade.  And that's

17  what the circuit said was not unambiguously covered, and

18  that is what we are contesting.

19         So what this instruction should say, respectfully,

20  is:  Mattel claims that the term, quote, unquote, Invention,

21  includes Carter Bryant's ideas, in addition to -- and if the

22  court wants to add the other terminology, fine, quote:

23  Discoveries, improvements, processes, developments, designs,

24  know-how, data, computer programs and formula, end quote.

25         MGA -- I'm just going to shorthand this -- claimed

1   that "invention" does not include the idea for the product

2   named Bratz and Jade.

3          The term "invention" is ambiguous.  Does that need

4   to be there?  You bet it does.  Because already we had

5   Mr. Quinn stand up in opening and say that the language was

6   clear and simple, which is a -- is absolutely wrong.  And

7   he's going to do it again in closing.  He's going to argue

8   it's clear that it must cover ideas, because who would

9   crazily think that ideas wasn't covered?  That's exactly

10  where the court got into trouble the first time with Judge

11  Larson.  Oh, this is clear.  It's not clear.  The Ninth

12  Circuit has held it's not clear.  And as this case cited

13  here, *Schmidt versus Macco* says -- I'm looking at it right

14  here -- if there are terms that are ambiguous and some that

15  are clear, the jury has to be told when the terms are

16  ambiguous; otherwise, they don't know what they're doing.

17         So continuing with the last sentence, then:  *In*

18  *order to exercise ownership over Carter Bryant's idea for*

19  *the product name Bratz and Jade, Mattel must prove that its*

20  *interpretation of the term is correct.*

21         And then, what does the verdict form look like?

22  It looks like:  Does Mattel own the idea for the product

23  name Bratz and Jade?

24             THE COURT:  Okay.  Mr. Zeller, please continue.

25             MR. ZELLER:  Certainly.  We don't agree with this

1   idea that it ought to be called out as ambiguous.  Because
2   that, along with the verdict form, again, just leads to one
3   conclusion.  It makes it practically -- I mean, really,
4   anyone reading the instructions would think ideas aren't
5   covered.  That's the full extent of what Mattel is claiming.
6   It's an ambiguous term.  You can construe it against the
7   drafter.  We're done.
8           Whereas, you know -- and we can talk about the
9   BAJI comment.  I mean, tellingly, in some respects, it's a
10  comment.  I mean, it doesn't even have in there an actual
11  instruction.  CACI, I think is a lot clearer.  I think where
12  we have to sort of step back is this:  The Ninth Circuit
13  absolutely did not say that the language of the contract was
14  not material in its construction.  It absolutely did not say
15  that.
16          It said that Judge Larson -- no, I mean, that you
17  shouldn't consider the language.  It said that where
18  Judge Larson went awry was by not considering the extrinsic
19  evidence.  That's what the Ninth Circuit said.  It didn't
20  say arguments about the plain language of the agreement
21  shouldn't be considered, or that the language of the
22  contract was now irrelevant, which is -- we think has to be
23  put in context, here, of the kind of the rules of
24  construction that we believe that the court should give to
25  the jury.  And those are, basically, the ones from CACI 314

1    and following about how to go about saying it, so --

2         But the idea that the jury should be making some

3    sort of specific determination along these lines in the

4    verdict form, you know, really is more argument.  And, I

5    think, in some respects you heard from MGA.  What they're

6    really reacting to is Mr. Quinn's statement in opening that

7    we think the agreement is clear.  But that's not foreclosed

8    by the Ninth Circuit.  The Ninth Circuit simply said, there

9    should be a broader palette of evidence that was considered,

10   but it certainly never threw out the idea that the language

11   of the contract now suddenly became irrelevant.  And that's

12   what MGA seems to be reacting to.

13        The jury can decide taking the contract as a

14   whole -- and this is exactly what CACI says.  CACI says

15   start with the language.  You have to interpret it as a

16   whole, and the jury may very well decide that that, along

17   with, say, extrinsic evidence, or whatever else it cares to

18   consider, going through the process of how it's supposed to

19   construe the contract can make the determination.

20        But to tell the jury that it's ambiguous, really,

21   takes that task away from the jury, and that is a serious

22   concern to us.

23        THE COURT:  Okay.  Ms. Hurst.

24        MS. HURST:  Responding to that last point, you

25   have never said that the language of the contract is

1    irrelevant.  I don't know where they get this stuff.  And

2    there is the instruction that the court has set out, and

3    it's consistent with CACI 317, which says:  *Consider the*

4    *whole contract and consider the words.*

5            We never said otherwise.  But is the contract

6    ambiguous?  Yes.  Because that was a legal determination for

7    the court, and the Ninth Circuit made that legal

8    determination.

9            THE COURT:  What happens if I change the term to a

10   more neutral term.  Instead of the word "ambiguous," I

11   informed the jury that this was a contract that was to be

12   construed by them.

13           You see, what Mattel is really objecting to --

14           MR. QUINN:  That's fine.

15           THE COURT:  -- is the word "ambiguity."  They are

16   afraid that the shooting match is over once that occurs.  So

17   although the circuit may write in those terms, or speak in

18   those terms, or think in those terms, or BAJI may have,

19   that's a far different cry than the instruction.

20           MS. HURST:  Well, it's not just BAJI.  It's the

21   *Schmidt versus Macco* case that's cited there.  The *Schmidt*

22   *versus Macco case* says:  *When some terms are clear and some*

23   *terms are ambiguous, you have to tell the jury.*

24           You have to tell the jury what their project of

25   interpretation is.  You have got to tell them what's

 1    ambiguous, and what's not.  There is no doubt that the

 2    circuit found that "inventions" and the phrase "at any time

 3    during my employment" are both ambiguous terms in this

 4    contract that have to be interpreted on remand.  And I

 5    understand they don't like that conclusion.  But that's what

 6    the law of this case is, and the determination of

 7    "ambiguity" as a matter is a determination for the court.

 8    It's not a determination for the jury.

 9           And once the court determines ambiguity, it has

10    made the conclusion that the contract is reasonably

11    susceptible of both means.  What they want to do is preserve

12    the right to get up and argue that the contract is not

13    reasonably susceptible of both means.  And they had one

14    court that agreed with them on that front once.  So, you

15    know, the thumb is on the scale in their favor, if they once

16    got a federal judge to agree that the contract couldn't even

17    be interpreted our way, and that's what they want to do

18    again.  They want to trick, yet, somebody else into thinking

19    it can only be interpreted the one way.  They are looking to

20    do exactly what they did before, but they are transferring

21    their tricking from Judge Larson to the jury this time

22    around.

23           THE COURT:  No, the real issue is that the court

24    is going to highlight the terms as you said under the *Macco*

25    case.  And if I use words like "ambiguous," the concern by

1    Mattel is that tells the jury that there's something, quote,

2    unquote, wrong with this contract to begin with, and since

3    the construction is to be construed against the party who

4    writes the contract, the case is over.

5          MS. HURST:  No, the court has properly drafted the

6    instruction that construe against the drafter is a rule of

7    last resort.  The court has laid that out on the table over

8    here.  It's also the form of CACI is, you know:  Construe is

9    a last resort.  Actually, we have other things that we will

10   propose to add as well, so that there would even be other

11   things that they will ever consider before they get to that

12   point.

13         But construe against the drafter is a rule of last

14   resort.  We all agree on that.  We don't agree that that

15   means the jury has to be deadlocked before the instruction

16   can be given.  That's just goofy.  That's not what *City of*

17   *Hope* says.  You know, the court's proposed instruction,

18   that's been laid out in saying that *if you can't decide,*

19   *after you consider all these other rules, then construe*

20   *against Mattel.*

21         That's the correct way to do it.  Basically, what

22   they are saying is, the jury won't follow the instructions.

23   That's the premise of their argument.  We can't trust the

24   jury to follow the instruction to go through the steps,

25   first; and then, only then follow the instructions of the

1   drafter.

2           THE COURT:  They're also saying it's prejudicial.

3           MS. HURST:  Well, it's only -- this is the, you

4   know -- it's prejudicial, because it's true?

5           I mean, that doesn't work.  It's not the kind of

6   prejudice that's unfair.  It's not unfair prejudice when

7   it's legally correct.  I mean, for the same reason it's not

8   unfairly prejudicial to admit evidence in support of our

9   claims against them, because they support the claims against

10  them.  It's not unfairly prejudicial to instruct on

11  something that's legally correct.

12          As Mr. McConville points out, the word isn't one

13  we came up with.  It's what the Ninth Circuit came up with.

14  And the Ninth Circuit, look, you got to set up the construct

15  for the jury, in terms of what they're here to do.  And CACI

16  does that.  BAJI does it.  And you have to tell them what

17  terms are they here to interpret.  You don't just throw the

18  contract up against the wall and say, *Make a decision.*

19          And we're not arguing that they have to construe

20  the word "ideas."  We never have, and the court's

21  instruction isn't even drafted that way.  I don't know where

22  Mr. Quinn even gets that.  They have to construe inventions

23  and they have to construe the phrase "at any time during my

24  employment."  And, by the way, they also have to construe

25  conception and reduction of practice.

```
 1            THE COURT:  That's right.

 2            MS. HURST:  We'll get to that when we get to our

 3    argument.  I don't want to -- I understand we're, kind of,

 4    where we are right now.

 5            So, you know -- but the -- I actually agree with

 6    Mr. Quinn that we don't want a checklist of different things

 7    that are in this term on the verdict form.  I agree that

 8    doesn't get us anywhere.  But that's why I'm saying we only

 9    want the case submitted to the jury on our theory.  And our

10    theory is:  Look, the drawings are the drawings.  And that's

11    something that in our view is copyrightable subject matter.

12    It ought to be treated as such, and we are consistent in our

13    position in that regard.  The Ninth Circuit has said those

14    drawings can be designed, and we don't intend to argue

15    otherwise.  We don't intend --

16            THE COURT:  I want to add a word.  We're going to

17    play with this for a moment.  Look down at "inventions."

18    MGA Entertainment, Inc.; Isaac Larian; MGA Hong Kong claims

19    that "inventions" does not include -- and I'm going to

20    add -- "the concept of ideas."

21            MS. HURST:  That's not our position.

22            Our position is -- look, to be clear, our position

23    that in an idea, which is, you know, made more concrete is

24    not just -- in other words, if it was an idea embodied in

25    the drawing, we're not claiming we can own that without
```

 1    owning the drawing, okay?

 2             Let me be clear about this.  But the idea for the

 3    product name is something else.  That is something that has

 4    not been reduced to practice in any, way, shape, or form.

 5    It is not -- it is not part of a drawing.  It is simply a

 6    word.  In our view that is not covered.  It's one specific

 7    thing that we are saying is not covered because of this

 8    ambiguity, because of the ambiguity the idea for the product

 9    name.  And that's what was at issue in the Ninth Circuit,

10    under the constructive trust the ideas for the product name

11    Bratz and Jade.

12             We are not saying that the idea of a bratty doll

13    isn't covered, if it's in a drawing.  I mean, that's a

14    different issue.  That's the issue of whether -- if they own

15    it, whether we infringe or not.

16             MR. ZELLER:  We could --

17             THE COURT:  Just a moment.

18        *(Pause.)*

19             THE COURT:  All right.  Ms. Hurst.

20             MS. HURST:  All right.  So I think I'm just

21    responding still on this one instruction, the disputed term

22    "Inventions."

23             With the comments that I've just made, which are

24    to modify the word "ideas" in the second and third sentences

25    to just be "the ideas for the product name Bratz and Jade,"

1    we're satisfied with this instruction.

2           THE COURT:  All right.  Mr. Zeller.

3           MR. ZELLER:  I can respond to the argument part,

4    but let me make a suggestion after we've been mulling over

5    some of these issues.

6           The instruction could read something like this:

7    *The term "inventions" includes discoveries, improvements,*

8    *processes, developments, designs, know-how, data, computer*

9    *programs and formulae.*

10          So that tracks the language of the agreement.  The

11   next sentence could say:  *You are to decide if the term*

12   *"inventions" includes the Bratz name and the Jade name as*

13   *well,* period.

14          And so, what this would do is, it would get across

15   the point that we're trying to make, which is -- and by the

16   way, just to harken back to the Ninth Circuit decision for a

17   moment, the Ninth Circuit said the drawings and sculpt

18   clearly were inventions as that term was defined in Bryant's

19   employment agreement with Mattel.  We could very well say

20   that, you know, simply, picking up on it*, the term*

21   *"inventions" includes but is not limited to*; and then,

22   define, use the language.  And it would get across the point

23   that even if ideas are not covered, Mattel still has

24   potentially ownership rights, based upon the other language

25   in that provision, including language that the Ninth Circuit

```
 1    agreed was not ambiguous.  And that, also, is partly true
 2    why we would have a concern about going down and having a
 3    checklist with the jury, is because the Ninth Circuit has
 4    already said that the drawings and sculpt are already
 5    covered.  I don't think there's, frankly, any dispute that
 6    the drawings and the sculpt were at least inventions.  I
 7    understand MGA doesn't believe we own it for other reasons,
 8    but it's not based upon the language of inventions.
 9              THE COURT:  All right.  Just a moment.
10         (Pause.)
11              THE COURT:  All right.  Mr. Zeller.
12              MS. HURST:  Actually, can I respond to that last
13    point, your Honor?
14              THE COURT:  No.  Mr. Zeller.
15              MR. ZELLER:  Just in conclusion on what we were
16    proposing as an instruction here is, is then the next
17    sentence would read that:  *Mattel claims that the term*
18    *"inventions" does include the Bratz name and the Jade name,*
19    period.  *MGA Entertainment, Inc.; Isaac Larian, and MGA*
20    *Hong Kong, or HK, claim that it does not.*
21              THE COURT:  Just a moment.
22         (Pause.)
23              THE COURT:  All right.  Mr. Zeller.
24              MR. ZELLER:  And then, the final sentence would
25    be:  *Mattel must prove that its interpretation of the term*
```

 1    *is correct,* period.

 2              And then, I think the special verdict.

 3              THE COURT:  Just a moment.

 4         *(Pause.)*

 5              THE COURT:  Special verdict form.

 6              MR. ZELLER:  Then, the special verdict form could

 7    have a "yes" or "no" answer for Bratz name and Jade name.

 8              THE WITNESS:  Anything else?

 9              MR. ZELLER:  With respect to the disputed term

10    "inventions," that that's I think the extent of it.  We

11    obviously have other issues.

12              THE COURT:  Let me go back to Ms. Hurst, then.

13              Ms. Hurst.

14              MS. HURST:  I'm just going to object to that

15    instruction on several grounds, including that it doesn't

16    identify the central issue, which is whether the idea for

17    the name is covered.  It's not a name yet.  It hasn't been

18    applied to anything yet.

19              Here's what the Ninth Circuit says:  *Bryant's*

20    *employment agreement may not have assigned his ideas for the*

21    *name Bratz and Jade to Mattel, et al.  The District Court*

22    *erred by holding that it did so unambiguously.  Even if*

23    *Bryant did assign his ideas, the District Court abused its*

24    *discretion in transferring the entire Bratz trademark --*

25              THE COURT:  Let me stop you there.  That's a

1    holding by the circuit, but that doesn't mean that that's a

2    direction about how to instruct the jury.  That's a far

3    different --

4           The circuit writes in a far different way as

5    opposed to a court instructing a fact-finder.  So I don't

6    see how that becomes, quote, unquote, the law of the case as

7    you said.  It's direction certainly.  And it's the law of

8    the case in terms of the reversal, but it's not necessarily

9    the way a court instructs a jury in a neutral fashion.

10          MS. HURST:  I'm not saying that's the instruction.

11   I'm just pointing out that this has to be done with

12   reference to ideas.

13          Mr. Zeller omitted the words, the fundamental

14   words that captured the essence of the dispute, which is

15   that it's the idea for the product name.  It's not a product

16   name yet.  The product doesn't exist yet.  Just calling it

17   the name "Bratz" or the name "Jade" doesn't make any sense.

18          So what we propose, following CACI 314 and the

19   instructions and the comments to BAJI 10.75, is that, you

20   know:  *Mattel and MGA* -- I'm just going to use MGA for

21   shorthand -- *dispute the meaning of the term "inventions"*

22   *found in paragraph 2(a) of the confidential information and*

23   *Inventions Agreement between Carter Bryant and Mattel.*

24   *Mattel claims that "inventions" includes the ideas for the*

25   *product name Bratz and Jade.*

*MGA claims that inventions does not include the ideas for the product name Bratz and Jade.*

The term "inventions" is ambiguous in this respect.  That solves their problem about the other --

THE COURT:  Just a moment.

(Pause.)

THE COURT:  Why am I including the last sentence: *The term "ambiguous" is -- or the term "inventions" is ambiguous in this respect.*  Why couldn't I simply say:  *This is a decision for you to make*?

MS. HURST:  Because the court has found that the term is ambiguous, because that is a correct application of the law, and because the jury has to be instructed to that.

THE COURT:  Why?  Because if I use the term "ambiguous," then from Mattel's position, I'm creating a finding of fact that, now, it's ambiguous in front of the trier of fact and it's enough from their perspective that the jury just determine --

MS. HURST:  The problem is that the jury has to be told that both interpretations are reasonable.  And if the court wants to use different language and say --

THE COURT:  Suggest it to me.

MS. HURST:  Both interpretations, both of the proffered interpretations are reasonable.  I mean, that's all ambiguous.  All "ambiguous" means is that both parties

1    have a reasonable position.

2            THE COURT:  So both -- just both --

3            MS. HURST:  Both proffered interpretations are

4    reasonable.  That's all ambiguous means.  That would be fine

5    with us.  What we're trying to do --

6            THE COURT:  I understand.  Hold on.

7            MS. HURST:  Right.

8            THE COURT:  This is a determination for you to

9    make, or something --

10           MS. HURST:  It's their burden of proof.

11           So the final sentence, I think, we're basically in

12   agreement on, which is:  *In order to exercise ownership of*

13   *Carter Bryant's ideas* -- and here, I would add for the

14   product name Bratz and Jade -- *Mattel must prove that its*

15   *interpretation is correct.*

16           THE COURT:  The only thing you add is:  *By*

17   *preponderance of the evidence.*

18           MS. HURST:  *By preponderance* is fine.  Right.

19           THE COURT:  Let's stay on this one point.

20           Mr. Zeller.

21           MR. ZELLER:  Another alternative here would be to

22   simply say, I think, the court's proposal or suggestion on

23   *this is an issue for you to decide*, I think makes sense.

24   Another way of putting it more neutrally is, than the idea

25   that it's ambiguous, would be -- *the contract is open to*

1    *interpretation in this respect* would be another way.

2          THE COURT:  Just a moment.  Not too many.  Just

3    start picking your best now.

4          MR. ZELLER:  Yes.

5          THE COURT:  No, matter what, though, it has to be

6    clear that this is Mattel's burden.

7          MR. ZELLER:  Yes.  We agree with that.

8          THE COURT:  All right.  Just a moment.

9       *(Pause.)*

10          THE COURT:  What's the difference between both

11   proffered interpretations are reasonable and the contract is

12   open to interpretation?

13          Just a moment.  Let's just -- what's the

14   difference?

15          MR. ZELLER:  It seems more loaded.  It seems to be

16   saying that each party is being -- that's really for the

17   jury to determine, too.  I mean, whether or not one party is

18   being reasonable or not is entirely up to the jury to decide

19   on this question.

20          THE COURT:  Just a moment.

21       *(Pause.)*

22          THE COURT:  All right.  Let me think about that

23   for a while.  I'll conclude this round for just a moment;

24   and then, we'll move on.

25          Mr. Zeller.

1            MR. ZELLER:  Also, I have no issue with inserting
2    the idea of the Bratz name and the Jade name.  That was --
3    that was implicitly what we were saying.
4            So if I could, perhaps, read it from the top what
5    we're proposing?
6            THE COURT:  Okay.
7            MR. ZELLER:  I think it would start:  *The term*
8    *inventions* --
9            THE COURT:  No.  *Mattel and MGA*, these were your
10   words.
11           *Mattel and MGA dispute the term "inventions" found*
12   *in paragraph 2(a) of the confidential information and*
13   *Inventions Agreement between Carter Bryant and Mattel.*
14   *Mattel claims that inventions include the ideas for the*
15   *product names Bratz and Jade.*
16           Now, you can modify that.  That's just their
17   drafting language.  That's what you read.
18           *MGA claims that inventions does not include the*
19   *idea for the product name Bratz and Jade.*
20           I'm sorry.  That was MGA's proposal.  My
21   apologies.  Just a moment.
22           Your suggestion is that The term "inventions"
23   includes discoveries, improvements, processes, developments,
24   designs, know-how, data, computer programs and formulae.
25   You are to determine the term "inventions" --

1          *You are to determine* -- and I'll add the word --
2    *"whether" the term "inventions" include the Bratz names and*
3    *the Jade name as well.  Mattel claims that the term*
4    *"inventions" does include the Bratz names and Jade names.*
5          *MGA, Larian and MGA Hong Kong claims it does not.*
6    *Mattel must prove the interpretation of the term is correct.*
7          That's what you read, originally.
8          MR. ZELLER:  Right.  But these amendments along
9    the way of what MGA was proposing what we would say is, in
10   the first sentence:  *The term "inventions" includes but is*
11   *not limited to, and then we continue on, which is what the*
12   *contract says.*
13         Then, in the sentence about --
14         THE COURT:  Just a minute.  Does it have -- have
15   the words:  *But not limited to*?
16         MR. ZELLER:  Yes.  *Includes but is not limited to.*
17         And then, in the sentence about *you are to decide*
18   *if the term "inventions" includes the Bratz name and the*
19   *Jade name as well,* we're agreeable, in response to MGA's
20   point, of reframing that to say:  *You are to decide if the*
21   *term "inventions" includes the idea of the Bratz name and*
22   *the Jade name as well.*
23         THE COURT:  Just a moment.
24         Thanks, Bill.  Okay.
25         Continue.

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1              MR. ZELLER:  And then, we do also think that there
 2    should be a sentence inserted using either the phraseology
 3    the court was suggesting that -- you know, which of these
 4    positions is correct is for you to decide, or the precise
 5    words of what the court was suggesting; or as an alternative
 6    that the contract is open to interpretation in this respect.
 7              And then, concluding with the sentence about
 8    Mattel's burden of proof.
 9              THE COURT:  All right.  Anything else?
10              MR. ZELLER:  I think depending on where the other
11    disputed term instructions go, then there ought to be a
12    transition.  And this is reflected in CACI which says:  Now,
13    I'm going to give you guidance on how to go about
14    interpreting the contract; and then, picking up with the
15    remaining CACI instructions, such as 315, interpretation,
16    meaning of ordinary words; 316, interpretation, meaning of
17    technical words; 317 --
18              THE COURT:  Just a second.  317.
19              MS. HURST:  315.  316.
20              And then, assuming that there is an instruction
21    given on construction against the drafter, that would be
22    320.
23              We do want to address that issue at some point --
24              THE COURT:  Okay.
25              MR. ZELLER:  -- as to whether or not that should
```

 1    be given.  Because as the court is I'm sure aware, the

 2    commentary says it should only be given to a deadlock jury.

 3    And, of course, we do have some comments on the other

 4    disputed terms.

 5              THE COURT:  We'll get to that in just a moment.

 6              All right.  Ms. Hurst.

 7              MS. HURST:  I object to their proposed first

 8    sentence, because it is simply reciting one portion of the

 9    language of the agreement.  And what we should be doing

10    instead is following the language in CACI saying --

11    identifying which term is disputed, which is "inventions" in

12    the first -- in that sentence in paragraph 2(a).  And the

13    reason this is significant is that the word "inventions"

14    appears elsewhere in the agreement, and it's not clear at

15    all that it has the same meaning everywhere it appears.

16              So this is -- in other words, it's in that Labor

17    Code 2860 reference as well, and we're not interpreting that

18    right now.  That's got nothing to do with this.  So it

19    should be limited to "inventions" as set forth in 2(a).

20              So to follow the CACI structure, the structure is

21    you say, What's the disputed term?  What are the proffered

22    interpretations?  And that's the structure we should follow.

23    So the disputed term is "inventions."

24              So the parties dispute the meaning of the term

25    "inventions."  Mattel claims it covers the ideas for the

product name Bratz and Jade.  MGA says "inventions" does not include the ideas for the product name Bratz and Jade; and that being super literal here.  And then we got to have -- you either have to say it's ambiguous in this respect or -- actually, I think my preferred interpretation is the one I would argue at this point -- both proffered interpretations are reasonable.

And what they want to do and the reason now we get really to the nub of it, the fact that they will object to this really shows what they are about, which is that they are trying to preclude the notion that MGA's interpretation is reasonable, and that's just not right.  There has been a determination as a matter of law in this case that MGA's interpretation is reasonable, and theirs is, too.  We're not saying it isn't.

THE COURT:  Just a moment.  Are you objecting to the proposal at least about both interpretations are reasonable?  Yes or no?

MR. ZELLER:  Yes.

THE COURT:  Why?

MR. ZELLER:  Because we think it's too loaded of a judgment.

THE COURT:  How is it loaded?

MR. ZELLER:  Because it seems --

THE COURT:  Seems rather neutral.

```
 1              MS. HURST:  I mean, we certainly dispute that

 2    their interpretation is reasonable.  The Ninth Circuit has

 3    not said it's reasonable.  What the Ninth Circuit said was,

 4    is that Judge Larson didn't consider the extrinsic evidence.

 5              THE COURT:  Actually, it would be the opposite.

 6    Ideas is not included.  The stronger argument -- I think

 7    you're pushing a rock uphill on this one.  I think the

 8    stronger argument is quite the opposite, that ideas are not

 9    included.

10              MR. ZELLER:  It's because, ultimately, the

11    guidance or the instruction to the jury ought to be:  *You

12    need to decide this.*  I mean --

13              THE COURT:  Well, that's what it is.

14              MR. ZELLER:  But saying both terms are reasonable

15    adds a value judgment to this that's just unnecessary.  The

16    parties can argue it.  As John Quinn would say, it's

17    superfluous.  Again, it's taking away from the jury's

18    decision-making process in our view.  There are rules of

19    construction.

20              THE COURT:  I can say, maybe, reasonable.

21              No?

22              MS. HURST:  It's coequal.  Look, what we're

23    saying -- we're giving their position equal dignity, both

24    positions get equal dignity, too.  That's the right way to

25    do it, because that's what a legal determination of
```

46

1    "ambiguous" means.  It means that the terms are susceptible;

2    both meanings are reasonable and that the term is

3    susceptible -- reasonably susceptible to interpretation in

4    accordance with either meaning.

5            THE COURT:  Now, just a moment.

6            This is off the record.

7        *(Off the record.)*

8        *(At 5:13 p.m., proceedings were recessed.)*

9

10                            -oOo-

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1                          CERTIFICATE

 2          I hereby certify that pursuant to Section 753,

 3   Title 28, United States Code, the foregoing is a true and

 4   correct transcript of the stenographically reported

 5   proceedings held in the above-entitled matter and that the

 6   transcript page format is in conformance with the

 7   regulations of the Judicial Conference of the United States.

 8

 9   Date:  March 6, 2011

10

11

12                       _____

13                       Deborah D. Parker, Official Reporter

14

15

16

17

18

19

20

21

22

23

24

25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*