QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc. and Mattel de Mexico, S.A. de C.V.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, et al.,<br><br>          Plaintiff,<br><br>     vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>          Defendant.<br><br>─────────────────<br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br><u>Hon. David O. Carter</u><br><br>**MATTEL, INC.'S MEMORANDUM IN RESPONSE TO THE COURT'S ORDER REGARDING RELATION BACK OF THE BRATZ TRADE SECRET CLAIM (DKT. 9898)**<br><br>Hearing Date:          TBD<br>Time:                       TBD<br>Place:                     Courtroom 9D<br><br>Discovery Cut-off:    October 4, 2010<br>Pre-trial Conf:          January 4, 2011<br>Trial Date:               January 11, 2011 |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ................................................................................... 5

I.   MATTEL'S BRATZ TRADE SECRETS CLAIM RELATES BACK
     TO ITS 2004 FILING ..................................................................................... 9

     A.   Relation Back Does Not Turn On The Specificity of Mattel's
          Allegations .......................................................................................... 9

     B.   A Ruling That Mattel's Counterclaims Do Not Relate Back
          Would Be Clearly Erroneous .............................................................. 12

     C.   Mattel Did Not Disclaim All Proprietary Interest in the "Bratz"
          Name .................................................................................................... 16

     D.   The Bratz-Related Trade Secrets Claim is a Discrete Claim for
          Relation Back Purposes ....................................................................... 19

II.  MATTEL'S BRATZ TRADE SECRET CLAIM IS TIMELY BASED
     ON ALTERNATIVE DATES ON WHICH IT SHOULD BE
     DEEMED FILED ........................................................................................... 20

III. THE CLAIM IS SUBJECT TO EQUITABLE TOLLING FROM THE
     DATE OF MGA'S DECEMBER 3, 2004 INTERVENTION ....................... 23

# <u>TABLE OF AUTHORITIES</u>

## CASES

Amaral v. Cintas Corp. No. 2,
    163 Cal. App. 4th 1157 (2008)................................................................. 11, 12

Austin v. Massachusetts Bonding & Ins. Co.,
    56 Cal. 2d 596 (1961)............................................................................. 12

Bowles v. Reade,
    198 F.3d 752 (9th Cir. 1999)................................................................. 13

Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    644 F.2d 690 (8th Cir. 1981)................................................................. 12

Castle v. Wells Fargo Fin., Inc.,
    2007 WL. 1105118 (N.D. Cal. April 10, 2007)........................................ 22

Cervantes v. City of San Diego,
    5 F.3d 1273 (9th Cir. 1993).................................................................. 24

Cole v. Miraflor,
    2001 WL. 138765 (S.D.N.Y. Feb. 19, 2001)............................................ 22

Collier v. City of Pasadena,
    142 Cal. App. 3d 917 (1983)................................................................. 26

DCD Programs, Ltd. v. Leighton,
    833 F.2d 183 (9th Cir. 1987)................................................................. 14

Davis & Cox v. Summa Corp.,
    751 F.2d 1507 (9th Cir. 1985)............................................................... 20

Daviton v. Columbia/HCA Healthcare Corp.,
    241 F.3d 1131 (9th Cir. 2001)............................................................ 24, 26

Employers Ins. of Wausau v. United States,
    764 F.2d 1572 (Fed. Cir. 1985).............................................................. 21

Franklin Fueling Sys., Inc. v. Veeder-Root Co.,
    2009 WL. 2462505 (E.D. Cal. Aug. 11, 2009)....................................... 10

Greenwich Ins. Co. v. Rodgers,
    729 F. Supp. 2d 1158 (C.D. Cal. 2010) ................................................. 10

Grudt v. City of Los Angeles,
    2 Cal. 3d 575 (1970)............................................................................. 11

Hatfield v. Halifax PLC,
    564 F.3d 1177 (9th Cir. 2009)................................................................ 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MATTEL'S MEMORANDUM RE RELATION BACK ORDER

Hurn v. Retirement Fund Trust of Plumbing, Heating and Piping Indus. of S. Cal.,
    648 F.2d 1252 (9th Cir. 1981) ........................................................................ 14

Javier H. v. Garcia-Botello,
    239 F.R.D. 342 (W.D.N.Y. 2006) ................................................................. 22

Jones v. Blanas,
    393 F.3d 918 (9th Cir. 2004) ........................................................................ 24

Kirkpatrick v. Lenoir County Bd. of Educ.,
    216 F.3d 380 (4th Cir. 2000) ........................................................................ 21

Krupski v. Costa Crociere S. p. A.,
    130 S. Ct. 2485 (2010) .................................................................................. 11

Lamont v. Wolfe,
    142 Cal. App. 3d 375 (1983) ........................................................................ 11

Lantzy v. Centex Homes,
    31 Cal. 4th 363 (2003) .................................................................................. 24

Lew v. Countrywide Fin. Corp.,
    2009 WL 1384975 (N.D. Cal. Feb. 24, 2009) ............................................ 22

Lindley v. General Elec. Co.,
    780 F.2d 797 (9th Cir. 1986) ........................................................................ 11

Marcoux v. Shell Oil Prods. Co. LLC,
    524 F.3d 33 (1st Cir. 2008) ............................................................ 2, 8, 9, 15

Mac's Shell Serv., Inc. v. Shell Oil Prods. Co. LLC, 129 S.Ct. 2788 (2009) ........... 8

Norgart v. Upjohn Co.,
    21 Cal. 4th 383 (1999) ........................................................................... 11, 22

Pease & Curren Refining, Inc. v. Spectrolab, Inc.,
    744 F. Supp. 945 (C.D. Cal. 1990) .............................................................. 10

Perrian v. O'Grady,
    958 F.2d 192 (7th Cir. 1992) ........................................................................ 14

In re Pinkstaff,
    974 F.2d 113 (9th Cir. 1992) ........................................................................ 21

Provencio v. Vazquez,
    258 F.R.D. 626 (E.D. Cal. 2009) ................................................................. 19

Ross Island Sand & Gravel Co. v. General Ins. Co. of Am.,
    472 F.2d 750 (9th Cir. 1973) ................................................................. 10, 12

Selph v. Nelson, Reabe & Synder, Inc.,
    966 F.2d 411 (8th Cir. 1992) ........................................................................ 22

Sierra Club v. Union Oil Co. of Cal.,
    813 F.2d 1480 (9th Cir. 1987) ....................................................................... 14

Stanton Road Assocs. v. Lohrey Enters.,
    984 F.2d 1015 (9th Cir. 1993) ....................................................................... 10

Toscano v. Ameriquest Mortgage Co.,
    2007 WL. 3125023 (E.D. Cal. Oct. 24, 2007) ............................................. 10

Union Oil Co. of Cal. v. Sierra Club, 485 U.S. 931 (1988) .................................. 14

United States v. Pend Oreille Public Utility Dist. No. 1,
    926 F.2d 1502 (9th Cir. 1991) ....................................................................... 14

United States v. Sumner,
    226 F.3d 1005 (9th Cir. 2000) ....................................................................... 15

United States v. Webb,
    655 F.2d 977 (9th Cir. 1981) ......................................................................... 14

Valley Fruit Orchards, LLC v. Global Horizons Manpower, Inc.,
    2010 WL. 1286367 (E.D. Wash. March 26, 2010) ..................................... 10

**STATUTES**

28 U.S.C. § 1961 ..................................................................................................... 21

Fed. R. Civ. P. 13(a) ............................................................................................... 21

Fed. R. Civ. P. 15(c) ........................................................................................ 2, 9, 11

**OTHER**

Black's Law Dictionary 1256 (8th ed. 1999) ........................................................ 19

## **Preliminary Statement**

The Court's February 16, 2011 Order vacates its prior ruling that Mattel's Bratz trade secret claim relates back to Mattel's 2004 complaint and solicits further briefing. For the reasons set forth below, the Court's original ruling was correct; the claim does relate back to April 2004.  And even if it did not, the claim remains timely.  At a minimum, it relates back to MGA's April 2005 Complaint or to Mattel's November 2006 pleading, and the limitations period must be tolled while this case was stayed for a year pending appeal in 2005 and 2006.

The claim was first put at issue by Mattel's Amended Answer and Counterclaims filed in January 2007.  As the Court explained when it first granted Mattel's motion to confirm the claim's pendency, the "phase 1 record evidences an understanding between counsel that Mattel was asserting that Bratz and Jade were trade secrets," "Mattel was quite clear that it intended to identify Bratz as a trade secret throughout this litigation," and "the parties have long engaged in the practice of pleading claims broadly, only to later clarify the products encompasse[d] by those claims." Dkt. 8705 at 3, 4.  The Court then explained again, when rejecting MGA's motion to reconsider that ruling, that "Mattel's failure to expressly allege the predicate facts for each of its counter-claims is unremarkable; the parties have long accepted that each other's pleadings need not specifically enumerate all the factual predicates for each claim." Dkt. 9600 at 33.  No amendment of Mattel's broadly-pleaded Counterclaims was needed to put the Bratz trade secret claim at issue:  "*Mattel's request for leave to amend was immaterial and irrelevant to its motion to confirm*, and the Court's failure to rule on Mattel's request does not undermine the force of its Order granting the motion to confirm." Id. at 34 (emphasis added).

This history has been briefed many times.  In November 2006, Mattel sought leave to add its misappropriation claim to the case that it filed against Carter Bryant in April 2004 and in which MGA intervened in December 2004. Judge Larson declined to allow the claims as an amendment to that complaint but permitted them as counterclaims to

MGA's 2005 suit based on his view that relation back would be unaffected by having Mattel's claims pled as counterclaims to MGA's suit: "None of the substantive concerns raised by MGA and Bryant to the present amended complaint, e.g., statutes of limitations, would appear to be affected if the new claims and defendants were brought as defenses and counterclaims in the 05-2727 case as opposed to the 04-9059 one." Dkt. 142 at 22.  If that was error, it was Judge Larson's error made over Mattel's objections; and for that reason, and based on Marcoux and the parties' prior briefing, the Court previously ruled that "Mattel's counter-claims against MGAE, Larian, and MGA HK related back to the date of its complaint against Bryant" and, specifically, that "Mattel's identification of the Bratz concept as a trade secret must as a matter of basic equity relate back to the original complaint against Bryant as well, since it 'arose out of the conduct, transaction, or occurrence,'—i.e., Bryant's disclosure of the Bratz concept to MGA—'set out [] in the original pleading.'"  Dkt. 9600 at 92 (quoting Fed. R. Civ. P. 15(c)).

The Court's recent order vacates that ruling as to the Bratz trade secret claim but leaves it intact as to all other Bratz-related claims.  It is, Mattel respectfully submits, error to apply relation back in that manner, and doing so would lead to odd, unjust results. *All* of Mattel's Bratz-related claims and counterclaims "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c).  *All* of Mattel's Bratz-related claims and counterclaims were pleaded in Mattel's Amended Answer and Counterclaims, which was filed in the 05-2727 case only because the prior judge so ordered.  Relation back turns on whether a pleaded claim arises out of the transactions pleaded earlier, not whether the pleaded claim was pleaded generally or with detailed specificity.  To allow some of the Bratz-related claims to relate back to 2004 while others do not based on the specificity with which those claims were pled has no support in the authorities, and would amount to reversible error which could only be cured by a retrial.

The Court's recent ruling states that "it is legal error to allow relation back to a pleading in a different action.  The only reason this Court would compound this legal

error is to give effect to the intent of the prior court." Dkt. 9898 at 2. But it is not only the intent of the prior court but also Mattel's rights that are at issue. Mattel sought to add its misappropriation of trade secrets claim—a claim the Court has confirmed puts at issue MGA's alleged misappropriation of Bratz-related trade secrets—to the case it filed in 2004. As to Bratz, the claim clearly arises out of the same transactions and occurrences as that case. Judge Larson's Order that Mattel file its claims as counterclaims was issued to promote efficient case management, not—and specifically not—to deprive Mattel of its right to relation back. If the Court is concerned about compounding an error by the prior district judge, the appropriate course is to amend the January 11, 2007 Order *nunc pro tunc* to grant Mattel leave to add its claims in the manner it originally sought. Depriving Mattel of substantive rights is not a fair alternative.

The Court's recent order questions whether the claims at issue in November 2006 even included the Bratz trade secret claim, and whether Judge Larson—in his hypothetical alternative decision to grant Mattel leave to amend—would have included the Bratz trade secret claim. The answer is plainly yes; in the very same order where he found relation back would be unaffected by pleading Mattel's claims as counterclaims, Judge Larson recognized that Mattel's misappropriation of trade secrets claim *does* encompass Bratz: "By the same token, if Mattel does not own rights to BRATZ, then some of the defenses and counterclaims set forth as independent claims in the present amended complaint may become moot, including Mattel's copyright infringement claim *as well as portions of its remaining RICO, misappropriation, and aiding and abetting claims*." Dkt. 142 at 21 (emphasis added). It goes without saying that Mattel's ownership of Bratz is all but irrelevant to Mattel's non-Bratz misappropriation claims. The Court's suggestion that the Bratz misappropriation claim may not have been "one of the claims sought to be asserted by Mattel on November 20, 2006" (Dkt. 9898 at 1), is not supported by the record, is contrary to Judge Larson's January 11, 2007 Order, and conflicts with the Court's own recognition that the Bratz misappropriation claim was put at issue by Mattel's Counterclaims without the need for amendment.

1   The Court's Order also relies on the impression that "Mattel's counsel expressly
2   disclaimed the name Bratz as 'proprietary' at the phase 1 pre-trial conference."  Dkt.
3   9898 at 1-2.  Review of counsel's statements, however, establishes exactly the opposite:
4   what was at issue in the exchange was not whether Mattel claimed an ownership interest
5   in the "Bratz" name, but the source of that claim of ownership.  What Mattel's counsel
6   disclaimed was a "proprietary" interest based in trademark or copyright law; what he
7   insisted upon was an ownership interest in the name under contract (which affords trade
8   secret rights) because Carter Bryant invented it during his employment at Mattel.

9       The Court's Order states that "it is questionable whether a fraction of a never-
10  before-pled claim can relate back to a pleading, even when the vast majority of the claim
11  does not 'arise out of the conduct, transaction, or occurrence set out—or attempted to be
12  set out' in that original pleading."  Dkt. 9898 at 2.  This Court already answered that
13  question on summary judgment when it held that Mattel's misappropriation of trade
14  secrets claim, although pleaded as a single Counterclaim, in fact comprises multiple
15  claims each with a distinct limitations period.  The same approach must certainly be
16  applied when the issue is relation back; no basis exists for applying one rule on the
17  question of timeliness and the opposite rule as to relation back.

18      Finally, even if the Court should ultimately determine that the Bratz trade secret
19  claim does not relate back to 2004, it would then at a minimum relate back to MGA's
20  April 13, 2005 Complaint because the claim is compulsory to the claims in that
21  complaint.  MGA's 2005 pleading alleged that Mattel infringed MGA's trade dress rights
22  in Bratz; it cannot be disputed that MGA's Bratz trade dress claims share a logical
23  relationship with Mattel's Bratz trade secrets claim.  Under the same principles applied
24  by this Court regarding MGA's counterclaims-in-reply, Mattel's Bratz trade secret claim
25  at a minimum relates back to MGA's 2005 Complaint.  Even if it does not, Mattel's
26  claim certainly relates back to November 20, 2006 filing, and the limitations period
27  should be tolled during the 362-day period when the 05-2727 case was stayed between
28  May 2005 and May 2006.  Finally, the doctrine of equitable tolling applies to prevent the

00505.07975/4001919.1

MATTEL'S MEMORANDUM RE RELATION BACK ORDER

1  application of any limitations bar.

2  **Factual Background**

3  **Mattel's November 20, 2006 Proposed Amended Complaint.**   On November

4  20, 2006, Mattel moved to amend its complaint in the 04-9059 case and lodged a

5  proposed amended pleading in that case.  The first paragraph of that pleading states:

6  *For years, MGA Entertainment, Inc. has engaged in a pattern of stealing and using Mattel, Inc.'s property and trade secrets.*  MGA's use of the

7  stolen property and trade secrets caused and continues to cause significant harm to Mattel.  *MGA first stole "Bratz," a fashion doll, from Mattel, and*

8  *then continued to steal Mattel's confidential and proprietary information to fuel MGA's growth.*

9  Proposed First Amended Complaint ("FAC") at ¶ 1 (emphasis added).  After alleging

10 that MGA stole Mattel's trade secrets—beginning with Bratz—Mattel repeatedly

11 referenced MGA's theft of Bratz in the FAC.  Id. at ¶¶ 21-36.  In particular, Mattel

12 detailed how Bryant and other MGA Parties had "misappropriated and misused Mattel

13 property and Mattel resources for the benefit of Bryant and MGA," including the

14 "concept, design and name of Bratz."  Id. at ¶ 26.  Mattel explained that MGA "stole a

15 fashion doll that was owned by Mattel—'Bratz,'" as well as "other confidential

16 information that comprise Mattel's intellectual infrastructure.  MGA's rapid growth

17 was not organic, but rather was based upon its theft of Bratz."  Id. at ¶ 20.  Mattel

18 alleged that Bryant's theft of Mattel's proprietary materials was in violation of Bryant's

19 employment agreement with Mattel, which prohibited the use or disclosure of Mattel's

20 "Proprietary Information."  Id. at ¶¶ 23, 26, 36, Ex. A.  Mattel's proposed claim for

21 misappropriation of trade secrets incorporated by reference all the substantive

22 allegations concerning MGA's and Bryant's taking of Bratz-related information (id. at

23 ¶ 106 (incorporating by reference ¶¶ 1-105)), and broadly pleaded a claim for

24 misappropriation of "the documents, materials and information stolen by" four

25 enumerated individuals and "other persons acting for, on behalf of or at the direction of

26 MGA and/or Larian," including "Other Former Employees" of Mattel.  Id. at ¶ 107.

27

28

1    **The Court's Ruling On Mattel's Motion For Leave To Amend.**  When ruling

2    on Mattel's proposal to add new claims, including its misappropriation of trade secrets

3    claim, to the 04-9059 case, Judge Larson expressly recognized that the trade secret claim

4    encompassed the theft of Bratz trade secrets:

5         By the same token, if Mattel does not own rights to BRATZ, then some of
          the defenses and counterclaims set forth as independent claims in the

6         present amended complaint may become moot, including Mattel's
          copyright infringement claim **as well as portions of its remaining RICO,**

7         **misappropriation, and aiding and abetting claims.**

8    Dkt. 142 at 21 (emphasis added).  Judge Larson granted Mattel leave to amend.  Id. at

9    22.   However, strictly for administrative convenience related to the phasing of

10   litigation, Judge Larson instructed Mattel to file its claims as counterclaims to MGA's

11   2005 Complaint rather than as amendments to Mattel's 2004 Complaint.  Id. at 21-22.

12   To avoid any doubt, after rejecting MGA's statute of limitations and relation back

13   arguments (id. at 13-14), Judge Larson explained, expressly, that statute of limitations

14   issues would be unaffected by its order to file Mattel's proposed amended claims as

15   counterclaims.  Id. at 22.  This he wrote:  "None of the substantive concerns raised by

16   MGA and Bryant to the present amended complaint, e.g. statute of limitations, would

17   appear to be affected if the new claims and defendants were brought at defenses and

18   counterclaims in the 05-2727 case as opposed to the 04-9059 one."  Id.  Both Bryant

19   and MGA argued for the path chosen by Judge Larson:  that if Mattel's proposed

20   amended claims were permitted, those claims should be added as counterclaims to

21   MGA's complaint.  Dkt. 111 at 8 n. 3; Dkt. 110 at 4 n.3.  Doing so, they urged, would

22   result in "no prejudice to Mattel" because such claims could be "severed for trial."  Dkt.

23   111 at 8 n.3.

24   **The Court's Subsequent Findings Of Relation Back.**  Mattel filed its Amended

25   Answer and Counterclaims ("AAC") on January 12, 2007, naming MGA, MGA Hong

26   Kong, and Larian as "Doe" defendants and incorporating by reference the FAC.  Dkt.

27   143 at ¶¶ 8-15; see also id. at 22.  Since then, the Court has rejected every challenge by

28   MGA to undermine or reverse the findings of relation back as to the Bratz-related claims.

Specifically, the Court found that the claims related back in its May 2008 summary judgment order. Dkt. 3826 at 8 ("the Phase 1 claims sought to be asserted by Mattel on November 20, 2006, which arise out of the same factual allegations as do the claims asserted by Mattel against Carter Bryant on April 27, 2004, relate back to the date that complaint was filed."). The Court reiterated that the claims related back in its June 2008 Pre-Trial Conference Order, holding that, for "the new claims asserted on November 20, 2006, . . . all claims (except the copyright claim, upon which the Court found it unnecessary to rule) related back to the filing of Mattel's complaint against Carter Bryant in April, 2004." Dkt. 3917 at 6. Furthermore, in its December 2008 post-trial order, the Court confirmed that "the Court has already found that all the claims asserted against the MGA parties were filed within the applicable limitations periods . . . ." Dkt. 4439 at 3. These findings were all made *after* Mattel had made clear to both MGA and the Court, in its Phase 1 pretrial submissions, that it was pursuing a claim for misappropriation of Bratz trade secrets, as Mattel has shown in detail previously. Dkt. 7801 at 5-7; Dkt. 8577 at 5-6.

**The Court Grants Mattel's Motion To Confirm The Pendency Of Its Bratz Trade Secret Claim.** Because MGA contested the pendency of the claim, Mattel moved last year to confirm the ongoing pendency of its claim for misappropriation of Bratz trade secrets. Mattel demonstrated, in detail, the extensive litigation that had already taken place on that claim. Dkt. 7801 at 7-12; Dkt. 8577 at 7-9. The Court granted Mattel's motion to confirm and ruled that the Bratz trade secret claim was encompassed by Mattel's pleading. Dkt. 8705 at 2, 5. The Court found that Mattel repeatedly identified the Bratz trade secret claim in its interrogatory responses. Id. at 3. "[T]he evidence is perfectly clear that MGA' s counsel was aware of (and sought discovery into) Bratz trade secret claims." Id. "Mattel may have vaguely alleged its Bratz trade secret claims, but it didn't pursue those claims in a vague manner—in fact, Mattel was quite clear that it intended to identify Bratz as a trade secret throughout this litigation." Id. at 4. The Court noted that "the parties have long engaged in the practice of pleading

1  claims broadly, only to later clarify the products encompasse[d] by those claims." Dkt.

2  8705 at 3, 4.

3        The Court subsequently rejected MGA's motion for reconsideration of that ruling.

4  The Court explained that "Mattel's failure to expressly allege the predicate facts for each

5  of its counter-claims is unremarkable; the parties have long accepted that each other's

6  pleadings need not specifically enumerate all the factual predicates for each claim." Dkt.

7  9600 at 33.  In response to MGA's argument that "the Court never ruled on Mattel's

8  request to formally amend its pleading to expressly allege the misappropriation of the

9  Bratz and Jade doll names," the Court found that "Mattel's request for leave to amend

10  was immaterial and irrelevant to its motion to confirm, and the Court's failure to rule on

11  Mattel's request does not undermine the force of its Order granting the motion to

12  confirm." Dkt. 9600 at 92.

13  **MGA Challenges Relation Back To A Different Case, And The Court Rejects**

14  **That Challenge.**  After remaining silent through one trial and for years later, MGA

15  argued for the first time in late 2010 that the Court's January 2007 Order that Mattel file

16  its claims as counterclaims had the effect—notwithstanding the Judge's express

17  statements to the contrary—of depriving Mattel of the benefits of relation back.  On

18  October 12, 2010, MGA filed a motion to "confirm dismissal" of the 04-9059 action—

19  the pleading to which all of Mattel's Bratz-related claims relate back. Dkt. 8922.  MGA

20  argued that "Mattel's dismissal of that action as to Carter Bryant ended the action as to

21  Defendant-in-Intervention MGA as well." Id. at 2.  MGA then argued in its summary

22  judgment brief that "Mattel cannot relate back its counterclaims to the 2004 Complaint

23  because the relation back doctrine does not allow a party to relate back an amended

24  pleading to a pleading in a different case." Dkt. 9219 at 70.

25        Marcoux v. Shell Oil Prods. Co. LLC, 524 F.3d 33, 41-43 (1st Cir. 2008) aff'd in

26  part rev'd in part on other grounds Mac's Shell Service, Inc. v. Shell Oil Products Co.

27  LLC, 129 S.Ct. 2788 (2009), holds otherwise, granting relation back where the error is

28  the judge's and the pleading should have been allowed in the proper form.  Here, MGA

not only encouraged the Court to order the Bratz trade secret claim filed as a counterclaim in the 05-2727 case (Dkt. 110 at 4 n.3), but failed to object to the Court's January 2007, May 2008, June 2008, and December 2008 relation back rulings in a timely manner that would have allowed the prior Judge to correct any mistake. Accordingly, in its summary judgment order, the Court cited <u>Marcoux</u> and held that "[t]hough this [January 11, 2007 relation back] ruling was erroneous, it caused no prejudice to MGA, *since it is clear that Mattel's request for leave to amend its complaint against Bryant would have been granted* if the district court had been aware of the general rule that Rule 15(c) 'by its terms, only applies to the amended pleadings in the same action as the original, timely, pleading.'" Dkt. 9600 at 92 (emphasis added). The Court held that all Bratz-related claims against MGA—including the Bratz trade secret claim—relate back to the 2004 Complaint because those claims arise from the same transaction set forth in the 2004 complaint:

> Mattel's identification of the Bratz concept as a trade secret must as a matter of basic equity relate back to the original complaint against Bryant as well, since it "arose out of the conduct, transaction, or occurrence," – i.e., Bryant's disclosure of the Bratz concept to MGA – "set out [] in the original pleading." Fed. R. Civ. P. 15(c).  To the extent Mattel's surviving counter-claims for copyright infringement, breach of contract, intentional interference with contractual relations, misappropriation of trade secrets, breach of duty of loyalty, and aiding and abetting breach of duty of loyalty, concern the Bratz works and Bryant's work for MGA, those counter-claims are deemed to have been filed on April 27, 2004 pursuant to the law of the case doctrine.

Dkt. 9600 at 92 (Jan. 5, 2011).

## Argument

### I.  MATTEL'S BRATZ TRADE SECRETS CLAIM RELATES BACK TO ITS 2004 FILING

#### A.  Relation Back Does Not Turn On The Specificity of Mattel's Allegations

The Court has ruled, repeatedly and correctly, that Mattel's Bratz trade secrets claim is properly before the jury with no need for any amendments to Mattel's Counterclaims: "Mattel's request for leave to amend was immaterial and irrelevant to its motion to confirm . . . ." Dkt. 9600 at 34.  The Court has also found that all of Mattel's

00505.07975/4001919.1

Bratz-related counterclaims relate back to 2004 (Dkt. 9600 at 91-92), and the current order vacates that holding only as to the trade secret claim.  Yet, as the Court concluded, the only claimed difference between the Bratz misappropriation counterclaim and Mattel's other Bratz-related counterclaims is the specificity with which they were pled: the Bratz misappropriation claim was an "implied predicate to the misappropriation claim proposed on November 20, 2006" (Dkt. 9898 at 2), while other counterclaims, like the counterclaim for intentional interference with contract, expressly referred to Bryant and Bratz (and therefore, under the Court's Order, are entitled to relation back to 2004 to "to give effect to the intent of the prior court").  Id.

Pleading generally is not an infirmity that deprives Mattel of substantive rights, and the right to relation back is substantive.  "In federal court . . . a plaintiff need not allege in his complaint all the facts giving rise to his cause of action.  Indeed, plaintiffs frequently elect to assert their claims in broad, general terms.  The parties then resort to interrogatories, requests for admissions, and the like, to flesh out pretrial orders that will provide the trier of fact a simple statement of the issues of law and fact remaining to be resolved in court."  Ross Island Sand & Gravel Co. v. General Ins. Co. of Am., 472 F.2d 750, 752 (9th Cir. 1973).  There is no basis for applying relation back differently when allegations are made generally; whether the Bratz misappropriation claim was an implied or express predicate of Mattel's pleading is immaterial to whether it relates back.[1]

---

[1]   Federal law of course determines whether Mattel's claims, including its state law claims, were pled sufficiently under Rule 8.  See, e.g., Greenwich Ins. Co. v. Rodgers, 729 F. Supp. 2d 1158, 1164 (C.D. Cal. 2010) ("Pleading standards of California state courts are irrelevant here, however."); Valley Fruit Orchards, LLC v. Global Horizons Manpower, Inc., 2010 WL 1286367, at *3 (E.D. Wash. March 26, 2010) ("the Complaint contains all of the required elements under this liberal notice pleading standard and is not subject to dismissal on the basis that it failed to satisfy the California pleading requirements."); Franklin Fueling Sys., Inc. v. Veeder-Root Co., 2009 WL 2462505, at *8 (E.D. Cal. Aug. 11, 2009) ("With respect to pleading unfair competition, '[w]hile the elements of the UCL Claim derive from state substantive law, the degree of specificity required is governed by the Federal Rules of Civil Procedure.'"); Toscano v. Ameriquest Mortgage Co., 2007 WL 3125023, at *6 (E.D. Cal. Oct. 24, 2007) ("California pleading standards do not govern in federal court."); Pease & Curren Refining, Inc. v. Spectrolab, Inc., 744 F. Supp. 945, 948 -949 (C.D. Cal. 1990), abrogated on other grounds by Stanton Road Assocs. v. Lohrey Enters., 984 F.2d 1015, 1020 (9th Cir. 1993) ("Pleading (footnote continued)

1    Relation back must be permitted where it is permitted by state law.   Fed. R. Civ.

2  P. 15(c)(1)(A) ("An amendment to a pleading relates back to the date of the original

3  pleading when: (A) the law that provides the applicable statute of limitations allows

4  relation back."); see also Lindley v. General Elec. Co., 780 F.2d 797, 800 (9th Cir. 1986)

5  (California's relation back law is substantive and must be applied in federal court).

6  Relation back under California law requires only that the new claim (1) rest on the same

7  general set of facts, (2) involve the same injury, and (3) refer to the same instrumentality

8  as the original one—requirements which are all plainly met here.  See Norgart v. Upjohn

9  Co., 21 Cal. 4th 383, 408-09 (1999).  When the claim asserted in the amended pleading

10  merely asserts a new cause of action based on the same facts alleged in the original

11  pleading, that claim relates back.  See Amaral v. Cintas Corp. No. 2, 163 Cal. App. 4th

12  1157, 1199-1200 (2008) ("amendments alleging a new theory of liability against the

13  defendant have been found to relate back to the original complaint, so long as the new

14  cause of action is based on the same set facts previously alleged."); see also Lamont v.

15  Wolfe, 142 Cal. App. 3d 375, 378-79 (1983) ("it is the sameness of the facts rather than

16  the rights or obligations arising from those facts that is determinative.").

17    The generality of the new claim is not the issue; its relationship to the underlying

18  facts is.  Whether a claim is alleged generally and fleshed out during discovery or alleged

19  specifically in a pleading that reads like a verified complaint is irrelevant to relation

20  back.  Mattel has found no authority, federal or state, holding otherwise.  So long as the

21  new claim arises from the same general set of facts alleged in the original pleading, a

22  new claim will relate back even if it "added a significant new dimension to the lawsuit."

23  Grudt v. City of Los Angeles, 2 Cal.3d 575, 584 (1970).  Where the standards apply,

24  relation back is mandatory, not discretionary.  See Krupski v. Costa Crociere S. p. A.,

25

26  requirements under the Federal Rule of Civil Procedure are *far more liberal* than those of
the California Rules of Civil Procedure.") (emphasis added).  The Court's Order granting

27  Mattel's motion to confirm correctly held that existing pleading encompassed the Bratz
trade secret claim and satisfied the liberal notice pleading requirements of Rule 8 without

28  the need for amendment.  See Ross Island, 472 F.2d at 752.

130 S.Ct. 2485, 2488 (2010) (<u>Rule</u> 15(c) "mandates relation back once its requirements are satisfied; it does not leave that decision to the district court's equitable discretion."); <u>Amaral</u>, 163 Cal. App. 4th at 1199 ("if an amendment is sought after the statute of limitations has run, the amended complaint *will be deemed filed* as of the date of the original complaint provided recovery is sought in both pleadings on the same general set of facts.") (emphasis added) (quoting <u>Austin v. Massachusetts Bonding & Ins. Co.</u>, 56 Cal.2d 596, 600 (1961)).  Denying relation back because the new claim was pleaded generally would be erroneous.

Here, there is no plausible argument to be made that the stealing of the Bratz trade secret arises from a different set of general set of facts than the tort claims alleged in Mattel's original complaint.  The Bratz trade secret claim arises out of the same facts, and involves the same injury and instrumentality, as Mattel's 2004 claims (and as the other Bratz-related claims Mattel pleaded as counterclaims).  The Court has already so found.  Dkt. 9600 at 92.  That finding is dispositive.[2]

### B.    A Ruling That Mattel's Counterclaims Do Not Relate Back Would Be Clearly Erroneous

MGA may rehash the argument, first made in its summary judgment briefing, that none of Mattel's Counterclaims relates back to the 04-9059 case filed in 2004.  Dkt. 9219 at 70.  The Court has already rejected this argument in its summary judgment order.

---

[2]   As Mattel showed at length previously (Dkt. 8986 at 7-8, 14-17; Dkt. 9280 at 1-6), Mattel's Bratz trade secret claim substantially overlaps, in particular, with the conversion claim Mattel asserted in April 2004, as well as others.  In paragraph 12 of Mattel's 2004 Complaint, Mattel alleges that "while Bryant was employed by Mattel, Bryant and other defendants converted, misappropriated and misused Mattel property for the benefit of, and to aid and assist, Bryant personally and Mattel's competitor."  In paragraph 41, Mattel alleges that "Bryant provided such services, and purported to grant rights to such inventions, to a competitor during the time of his exclusive Mattel employment.  All such services and the inventions and work product resulting from such services, including without limitation ideas, concepts, rights, designs, proprietary information, and other intellectual property and intangible property created by Bryant during the term of the aforesaid agreements, were the property of Mattel.  Such services and property were provided by Bryant to others, including defendants, and used by them."  In paragraph 42, Mattel alleges that "Defendants wrongfully converted Mattel property and resources by asserting ownership thereto and by appropriating and using Mattel's property and resources for their own benefit and gain . . . without the permission of Mattel."

Dkt. 9600 at 92 ("The law of the case doctrine demands that the district court's decision be left undisturbed."). As Mattel has shown at length in previous briefing (Dkt. 9280; Dkt. 9250 at 36-37), incorporated here, such a ruling would give prejudicial effect to Judge Larson's mistakes, compounding an error that was demanded by MGA at the expense of Mattel.

Relation back is a primary reason why leave to amend is sought. See Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690, 695 (8th Cir. 1981) ("The plaintiffs' motion for leave to amend was designed to take advantage of Rule 15's 'relation back' provision."). Deprivation of the benefits of relation back is tantamount, in many respects, to a denial of leave to amend altogether. A finding of no relation back now, more than four years after the fact, based on nominal case numbering distinctions would convert the prior Judge's innocuous error in denying Mattel leave to amend its complaint in the 04-9059 case into a highly prejudicial and reversible one.

The record demonstrates this. In the very order where leave to amend Mattel's original complaint was denied, Judge Larson *rejected* every argument defendants made to justify denying leave. Dkt. 142 at 8-15. The Court found there was no "evidence that MGA or Bryant have been prejudiced by the delay". Id. at 8. The Court found no futility and no bad faith. Id. at 13-16. Since those findings were made four years ago, this Court reaffirmed in its Order on Mattel's motion to confirm that allowing Mattel to pursue its Bratz trade secrets claim specifically "will not cause MGA prejudice." Dkt. 8705 at 2. And the Court also found, when ruling on MGA's own request for leave to amend to add the counterclaims-in-reply it pleaded for the first time in August *2010*, that leave to amend was required because "Mattel will suffer little prejudice through the addition of these counterclaims in reply, which involve allegations that are relevant to MGA's existing unclean hands defense, about which MGA has sought discovery for months," and "[a]ny remaining prejudice can be minimized by a one month extension to the discovery cut off for the limited purpose of conducting discovery into these claims." Dkt. 8892 at 10.

As the Court has ruled in connection with MGA's request to amend made just months ago, "Rule 15 permits the liberal amendment of pleadings." Dkt. 8892 at 10. See, e.g., Bowles v. Reade, 198 F.3d 752, 759 (9th Cir. 1999) ("Because the amendment would not have been futile, and the district court made no findings of prejudice or bad faith, we hold that the district court abused its discretion in denying the motion for leave to amend and the motion for reconsideration."); United States v. Pend Oreille Public Utility Dist. No. 1, 926 F.2d 1502, 1512 (9th Cir. 1991) (reversing denial of leave to amend where "the present case does not reflect what, if any, prejudice the State and the PUD would suffer if the Tribe were allowed to add its claim"); Sierra Club v. Union Oil Co. of Cal., 813 F.2d 1480, 1493 (9th Cir. 1987) (reversing denial of leave to amend), vacated on other grounds by Union Oil Co. of Cal. v. Sierra Club, 485 U.S. 931 (1988); DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 190 (9th Cir. 1987) (reversing denial of leave to amend); Hurn v. Retirement Fund Trust of Plumbing, Heating and Piping Indus. of S. Cal., 648 F.2d 1252, 1254-55 (9th Cir. 1981) (although "the motion for leave to amend approximately two years after the original complaint was filed," "denial of leave to amend was an abuse of discretion" because "we cannot accept the Fund's contention that a disposition on the merits at this time would be unduly prejudicial."); United States v. Webb, 655 F.2d 977, 980 (9th Cir. 1981) (vacating denial of leave to amend). Plainly, Mattel should have been granted leave to amend its complaint in the 04-9059 case when that is what it sought.[3]

And, plainly, Mattel not only should but *would* have been granted leave to amend in the manner it sought had Judge Larson realized that his case management plan could

---

[3] Judge Larson previously cited Perrian v. O'Grady, 958 F.2d 192, 195 (7th Cir. 1992), in support of his conclusion that the "burden on the judicial system" justifies denial of leave to amend in the 04-9059 case "even if the amendment would cause no hardship at all to the opposing party". Dkt. 142 at 22. Even assuming Perrian is consistent with Ninth Circuit law, the Seventh Circuit was referring to "amendments shortly before trial [that] serve to defeat the public's interest in speedy resolution of legal disputes." Perrian does not apply here at all because Mattel sought leave to amend its 04-9059 complaint one-and-a-half years before the first trial and four years before the second.

deprive Mattel of substantive rights.  The February 16, 2011 Order asks whether the Court "would have intended for a trade secret claim based on Bratz to relate back," and whether the Court "understood that Mattel intended to predicate its trade secret misappropriation claim, as proposed on November 20, 2006, upon the misappropriation of the Bratz concept and works."  Dkt. 9898 at 1-2.  In fact, the prior Judge answered that question in the January 11, 2007 Order, finding that Mattel's substantive rights, including specifically the right to relation back, would *not* be detrimentally affected by his Order even as he recognized, expressly, that Mattel's misappropriation claim encompassed Bratz. Dkt. 142 at 13-15, 21-22.  And even if there were doubts about the prior Judge's intent, <u>Marcoux</u> does not require the Court to read the mind of the prior Judge.  Under that decision, a claim relates back if the Court erroneously denies leave to amend and orders the party to file the claim in a separate action, so long as the relation back test is otherwise satisfied, as it is here.  524 F.3d at 42.

The appropriate solution is to simply find relation back to 2004, as the Court properly did before.  The Court has observed that "it is legal error to allow relation back to a pleading in a different action," but the error was made by the prior Judge at the urging of MGA.  Mattel relied in good faith on Judge Larson's instructions, and should not now face a potential time bar—in the middle of trial—for having done so.  If the Court chooses to adopt an alternative solution, Mattel respectfully moves, as it has before, that the Court grant Mattel *nunc pro tunc* amendment of the Court's January 11, 2007 Order to grant leave to amend in the 04-9059 case, including based on the Court's recent finding of no prejudice.  Dkt. 9280 at 13-15 (requesting *nunc pro tunc* relief); <u>see also</u> <u>United States v. Sumner</u>, 226 F.3d 1005, 1009-10 (9th Cir. 2000) (*nunc pro tunc* amendment may be employed to make "the record reflect what the district court actually intended to do at an earlier date, but which it did not sufficiently express or did not accomplish due to some error or inadvertence").  As Mattel has requested before, "the Court may amend that Order to provide that Mattel has amended its pleading in the 04-9059 case to assert its Bryant related claims against MGA, MGA Hong Kong, and

Larian.  The claims unrelated to Bryant or Bratz that do not relate back to the 04-9059 Complaint would still be deemed counterclaims in the 05-2727 case based on Judge Larson's conclusion that they do not arise from the same set of facts as the claims in the 04-9059 Complaint."  Dkt. 9280 at 14.  It would be unjust for the Court to grant MGA leave to assert its trade secret claim after the close of discovery in 2010, giving it the benefits of relation back, but refuse to grant Mattel amendment *nunc pro tunc* to accomplish Judge Larson's stated goal of allowing relation back.

### C.   Mattel Did Not Disclaim All Proprietary Interest in the "Bratz" Name

In its February 16, 2011 Order, the Court relies on MGA's arguments that Mattel's counsel disclaimed any proprietary interest in the Bratz name during Phase 1. Respectfully, the context of that hearing establishes just the opposite: Mattel disclaimed a *trademark* claim to "Bratz," but it insisted repeatedly that "[t]he name is part of the concept.  It is part of the idea.  It is part of what it is that Carter Bryant created when he was employed by Mattel that relates to Bratz.  That is among the inventions that he created.  And therefore, we own it."[4]

The  exchange cited by the Court was prompted by MGA's counsel's statement about Mattel's interest in the name Bratz *as a matter of trademark law*:

> MR. NOLAN:  To respond to Mr. Zeller, our whole point is just to confirm that with this addition to the pretrial conference order, they're not adding a trademark claim against the ownership of Bratz.  We understand that that's not the case.  That's—in fact Mr. Zeller made that explicit in his representation to the Court last week.  It was just that the name Bratz was apparently proprietary to Mattel.[5]

Mattel's counsel, in response, disclaimed any "proprietary" interest in the name Bratz under copyright and trademark law, as part of his insistence, literally in the next breath, that Mattel's theory of ownership was instead based in contract law because  it "is part

---

[4]   Hearing on the Pre-Trial Conference Order at 79:19-80:1 (May 23, 2008).

MATTEL'S MEMORANDUM RE RELATION BACK ORDER

1  of what it is that Carter Bryant created when he was employed by Mattel that relates to

2  Bratz":

3      MR. ZELLER:  [W]e have not said that the name Bratz is, quote,

4      proprietary, end quote, to Mattel.  That is not the basis of our theory.

5      The name is part of the concept.  It is part of the idea.  It is part of what

6      it is that Carter Bryant created when he was employed by Mattel that

7      relates to Bratz.  That is among the inventions that he created.  And

8      therefore, we own it . . . .

9      THE COURT:  Your—

10     MR. ZELLER:  Exactly.

11     THE COURT:  Under the contract.

12     MR. ZELLER:  Correct. . . . because there's doctrine that says short

13     phrases and statements couldn't be copyright.[6]

14  Far from disclaiming any ownership interest in the name Bratz, counsel for Mattel

15  insisted on it, and prior Judge acknowledged that claim.

16     The issue of Mattel's interest in the "Bratz" name arose again during the

17  November 10, 2008 hearing on post-verdict motions in response to the suggestion that

18  Mattel's claim to "Bratz" was based on the "Brats" name considered for Diva Starz.  As

19  this Court  is well aware, MGA has repeatedly sought to conflate Bratz  and Diva Starz

20  in the hopes of cutting short the statute of limitations or limiting damages.  On this

21  occasion, Mr. Zeller was responding to MGA's suggestion that any claim Mattel might

22  have to the name, as well as the value of the name, derived from the Diva Starz  work:

23     MR. ZELLER:  . . . . The name itself had value, because it was part of

24     the bundle of proprietary information that Carter Bryant took from

25     Mattel and sold to MGA.  The name itself had value. . . .  MGA is

26

27     _____

28     [5] Hearing on the Pre-Trial Conference Order at 77:15-22 (May 23, 2008).
       [6] Id. at 79:19-80:1.

1   conflating in its argument, is this notion that the name "Brats," B-R-A-
2   T-S, is what we are claiming we derive rights from.  That is not correct.
3   Brats, B-R-A-T-S, as used in the context or considered as part of the
4   Diva Starz project, that was an issue of timing, like the Toon Teens
5   evidence.

6   THE COURT: I understand that.

7   MR. ZELLER: It's not the basis of our rights.[7]

8   A second exchange reaffirmed this point:

9   MR. ZELLER: I think the Court is familiar with our basic theory here,
10   which, as briefly put, is that, as the jury found, Carter Bryant created
11   the name "Bratz," B-R-A-T-Z, so that there's no ambiguity here, the
12   name "Bratz" itself that was used by MGA subsequently while he was
13   employed by Mattel; that was part of this bundle of proprietary
14   information, because Bryant created it, that was improperly transferred
15   and then used by MGA. . . .  The one thing that MGA just never really
16   comes to dispute—and I don't think they can, in light of the jury
17   verdict, as well as the Court's rulings—is that Carter Bryant created the
18   name "Bratz," B-R-A-T-Z, while he was a Mattel employee and that he
19   wrongfully gave it, disclosed it, to MGA. . . .  Mr. Russell, on more
20   than one occasion, has said, basically, Mattel knew and just basically
21   decided not to use the name "Bratz."  But he is again conflating the
22   different names and the different evidence that's here in this case. There
23   is no evidence that Mattel knew about Bryant's creation of the name
24   "Bratz," B-R-A-T-Z, before his deposition in November of 2004.  What
25   is certainly the case is that what he's talking about, Mr. Russell is citing
26   to, are instances about the name Brats, B-R-A-T-S, within Diva Starz.

27

28   [7]  Hearing on Post-Verdict Motions 28:7-19 (November 10, 2008).

1    That's neither here nor there.  It doesn't have anything to do with our

2    theory here.

3    THE COURT: I understand that, Counsel.[8]

4    "Proprietary" is defined as "[o]f, relating to, or holding as property."  Black's Law

5    Dictionary 1256 (8th ed. 1999).  Mattel's position has been consistent throughout this

6    case; it claims a property interest in the name "Bratz" through Bryant's work at Mattel,

7    not through copyright or trademark law or other employees' work on pre-existing Mattel

8    doll lines.  At no time did Mattel disclaim an ownership or proprietary interest in the

9    name "Bratz" for all purposes.

### D.    The Bratz-Related Trade Secrets Claim is a Discrete Claim for Relation Back Purposes

The Court questioned in its Order "whether a fraction of a never-before-pled claim

can relate back to a pleading, even when the vast majority of the claim does not 'arise

out of the conduct, transaction, or occurrence set out—or attempted to be set out' in that

original pleading."  Dkt. 9898 at 2.  This Court answered that question in its ruling on

summary judgment relating to the limitations periods applicable to Mattel's trade secret

claim.  There, the Court found that trade secret misappropriations *by each employee*

constitute discrete claims with discrete limitations periods.  Dkt. 9600 at 96.  To hold

otherwise would make no sense: "there's no reason that Bryant's alleged

misappropriation of the Bratz trade secret would have allowed Mattel to envision

Castilla's future conduct."  Id.

Thus, even though misappropriation was pled as a single claim, the Court

separately analyzed timeliness as it applied to each discrete claim.  The same approach

governs the determination of relation back.  "California's relation back rule is

inextricably intertwined with its statute of limitation."  Provencio v. Vazquez, 258

F.R.D. 626, 631 (E.D. Cal. 2009).  To treat Mattel's trade secret claim as *divisible* for

purposes of application of the statute of limitations but *indivisible* for purposes of

relation back would be both unprecedented and untenable.  The Bratz trade secret misappropriation claim arises out of the same general set of facts set forth in Mattel's 2004 complaint and should therefore relate back to that complaint—without regard to the non-Bratz misappropriations.

Mattel respectfully requests that the Court find that Mattel's Bratz-related trade secret claim relates back to Mattel's April 27, 2004 Complaint, such that it is not time barred unless Mattel's claim accrued, subject to the principles of the discovery rule, prior to April 27, 2001.

## II.   MATTEL'S BRATZ TRADE SECRET CLAIM IS TIMELY BASED ON ALTERNATIVE DATES ON WHICH IT SHOULD BE DEEMED FILED

**The Claim Relates Back To MGA's April 13, 2005 Complaint.**  This Court's ruling on the timeliness of MGA's misappropriation counterclaim-in-reply also establishes the timeliness of  Mattel's Bratz misappropriation claim.  The Court found MGA's counterclaim-in-reply compulsory to Mattel's trade secret counterclaim because MGA alleged that what Mattel was claiming as stolen trade secrets included trade secrets that Mattel's market intelligence group allegedly had originally stolen from MGA.  Dkt. 9600 at 159.  Although discovery established that none of the trade secrets stolen from Mattel contained purported MGA trade secrets, the Court reaffirmed its prior relation back ruling because "[i]f Mattel wanted to limit the scope of MGA's potential counter-claims in reply, it shouldn't have broadly and vaguely pled its own counter-claims."  Id.

The same reasoning governs here.  MGA's trade dress claim alleged that Mattel infringed trade dress that, according to Mattel's trade secrets claim, MGA previously stole from Mattel.  MGA's 2005 Complaint alleges that Mattel works "are confusingly similar to MGA's 'BRATZ' line (including its 'BRATZ PETZ')."  2005 Complaint at ¶ 104.  MGA's complaint alleges "serial copycatting of MGA's product lines" because "Mattel designed its 'My Scene' dolls to evoke the unique and distinctive look of the

---

[8]   Hearing on Post-Verdict Motions 43:10-45:9 (November 10, 2008).

'Bratz'—also *with disproportionately oversized heads, artfully made-up almond-shaped eyes, large, overly-lined and lipsticked lips, trendy, hip clothes and hair styles, and over-sized feet.*" Id. at ¶ 33-34 (italics added).  MGA's claimed trade dress was in many of the very elements of Bratz that Mattel claims were trade secrets stolen by MGA. Mattel's counterclaim for misappropriation attacks MGA's ownership of precisely what MGA claims is being infringed.

The Bratz trade secret claim is compulsory if it arises from the same transaction or occurrence as MGA's 2005 claims.  Fed. R. Civ. P. 13(a)(1); Davis & Cox v. Summa Corp., 751 F.2d 1507, 1525 (9th Cir. 1985), abrogated on other grounds by statute, 28 U.S.C. § 1961.  The Ninth Circuit looks to the "logical relationship" test to determine whether a claim arises from the same transaction or occurrence; "[a] logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim."  Dkt. 8892 at 5 (quoting In re Pinkstaff, 974 F.2d 113, 115 (9th Cir. 1992)).  Clearly, under any reading, the Bratz trade dress and Bratz trade secrets claims share a logical relationship.  Indeed, MGA acknowledged for purposes of argument in its summary judgment briefing that Mattel's Bratz trade secret claim relates back to its April 2005 complaint (Dkt. 9084 at 72), presumably because it could see no basis—and none exists—to apply a different rule here.  See Employers Ins. of Wausau v. United States, 764 F.2d 1572, 1576 (Fed. Cir. 1985) ("The institution of a plaintiff's suit suspends the running of limitations on a compulsory counterclaim while the suit is pending."); see also Kirkpatrick v. Lenoir County Bd. of Educ., 216 F.3d 380, 388 (4th Cir. 2000) (same).

Even if the Court rejects relation back to Mattel's April 2004 pleading, Mattel's claim at a minimum relates back to MGA's April 13, 2005 Complaint, such that it is not time barred unless Mattel's claim accrued, subject to the principles of the discovery rule, prior to April 13, 2002.

**The Claim Relates Back At A Minimum To Mattel's November 20, 2006 Pleading, And The Period Of The Stay Should Be Deducted.**  MGA has argued that

MATTEL'S MEMORANDUM RE RELATION BACK ORDER

00505.07975/4001919.1

Mattel's claim was not added until 2009 when Mattel specified it, in detail, in interrogatory responses. Dkt. 8634 at 1. That is wrong for all the reasons Mattel has shown previously. However, even assuming Mattel's November 2006 pleading did not encompass the Bratz trade secret claim (as it did), even assuming the claim was not asserted until 2009 (contrary to the Court's findings), and even assuming the claim does not relate back to MGA's complaint (it does), the claim, whenever it was added, still relates back to Mattel's November 20, 2006 pleading setting forth the general set of facts giving rise to the claim. See Norgart, 21 Cal. 4th at 408-09; cf. Dkt. 8892 at 16 (ruling that MGA's counterclaims in reply "relate back to the date of Mattel's FAAC, which, except for a few counterclaims, arises 'out of the conduct, transaction, or occurrence set out' in, and therefore relates back to, Mattel's first Answer and Counterclaims").

Moreover, any limitations period should be tolled for the 362-day period that the 05-2727 case was stayed while the Ninth Circuit considered an interlocutory appeal. See Castle v. Wells Fargo Fin., Inc., 2007 WL 1105118, at *1 (N.D. Cal. April 10, 2007) ("statute of limitations should be equitably tolled . . . from March 2, 2007 until the stay is lifted"); Lew v. Countrywide Fin. Corp., 2009 WL 1384975, at *3 (N.D. Cal. Feb. 24, 2009) ("The Court therefore tolls the statute of limitations for the FLSA claim during the stay."); see also Selph v. Nelson, Reabe & Synder, Inc., 966 F.2d 411, 413 (8th Cir. 1992) ("A stay tolls the statute of limitations . . . ."); Javier H. v. Garcia-Botello, 239 F.R.D. 342, 347-48 (W.D.N.Y. 2006) ("the statute of limitations was equitably tolled during the stay of discovery"); Cole v. Miraflor, 2001 WL 138765, at *6 (S.D.N.Y. Feb. 19, 2001) ("The limitations period was equitably tolled during the stay of discovery."). The stay was in effect between May 20, 2005 and May 16, 2006.[9] That time period does not count against any of Mattel's claims, and extends by a year the time Mattel had to assert its Bratz trade secret claim against MGA, MGA Hong Kong, and Isaac Larian.

Accordingly, should the Court reject Mattel's other relation back arguments,

---

[9] Minute Order (May 20, 2005); Minute Order (May 16, 2006).

Mattel requests the Court find that Mattel's claim relates back to November 20, 2006, such that it is not time barred unless Mattel's claim accrued, subject to the principles of the discovery rule—and taking account of the stay—prior to November 23, 2002.

### III.   THE CLAIM IS SUBJECT TO EQUITABLE TOLLING FROM THE DATE OF MGA'S DECEMBER 3, 2004 INTERVENTION

Finally, should the Court's analysis and findings of the jury lead to the application of a limitations bar, the doctrine of equitable tolling operates to prevent such a bar, as to both MGA and Larian.

Mattel's 2004 Complaint pleaded conversion, among other claims, and specifically alleged both Mattel's ownership of the works created by Bryant while employed by Mattel and the defendants' use of those works.  2004 Complaint at, e.g., ¶ 41 (alleging that all "inventions and work product," including "ideas, concepts, rights, designs, proprietary information, and other intellectual property and intangible property," which were "created by Bryant during the term of" his agreements with Mattel "were the property of Mattel.  Such services and property were provided by Bryant to others, including defendants, *and used by them.*") (emphasis added).  Mattel alleged that "while Bryant was employed by Mattel, Bryant and other defendants converted, misappropriated and misused Mattel property and resources for the benefit of, and to aid and assist, Bryant personally and Mattel's competitor." Id. at ¶ 12.

MGA clearly understood this pleading to allege Mattel's ownership of Bratz and MGA's use of Mattel's rights to it.  In fact, MGA sought to intervene as a defendant in the 04-9059 case on December 3, 2004 to protect its claimed rights to Bratz (Dkt. 36 at 2 (04-9059), which the Court approved on December 7, 2004 ( id. at 5), based on MGA's express assertions that it knew ownership of Bratz was at stake and wanted to defend its interests in Bratz.  See Dkt. 37 at 1 (04-09059) ("This copyright action necessarily implicates MGA's rights, as MGA owns all intellectual property rights in 'Bratz.'"); Dkt. 36 at 1 (04-09059) (MGA "has a significantly protectable interest relating to the subject matter of the action, [] the disposition of the action may impair or impede MGA's ability

to protect its interest absent intervention, and [] MGA's interest is not adequately represented by the existing parties."); Sealed Joinder in Opp. to Mot. to Remand at 1 (Dec. 22, 2004) ("MGA intervened in this matter because it believes that its substantial interest in the 'Bratz' property is at stake."). Thus, MGA has long known that Mattel's ownership of Bratz and its use of those Mattel rights is at issue. Mattel's Bratz misappropriation claim has been equitably tolled at least since the date of MGA's intervention, if not since the date of Mattel's original complaint.

"The doctrine of equitable tolling focuses on the effect of the prior claim in warning the defendants in the subsequent claim of the need to prepare a defense." Cervantes v. City of San Diego, 5 F.3d 1273, 1275 (9th Cir. 1993). Mattel's April 2004 Complaint set forth a number of "prior claims" against Bryant, intervenor-defendant MGA and the Doe defendants, including claims for conversion of Mattel's intellectual property. 2004 Complaint at ¶¶ 40-45. At least since the date of its intervention, if not earlier, MGA knew full well that its claimed rights to Bratz were at stake, knew that Mattel sought to prove that Bratz was created by Bryant while at Mattel, and knew that Mattel alleged MGA's use of Mattel's intellectual property. Equitable tolling "'operates independently of the literal wording of the Code of Civil Procedure' to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." Jones v. Blanas, 393 F.3d 918, 928 (9th Cir. 2004) (quoting Lantzy v. Centex Homes, 31 Cal.4th 363, 370 (2003)). The purpose of equitable tolling "is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1137 (9th Cir. 2001) (en banc) (quoting Addison v. State, 21 Cal.3d 313, 318-19 (1978)). California courts apply equitable tolling "to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice." Id. Even if Mattel's Bratz misappropriation claim were otherwise untimely, equitable tolling applies here to prevent a limitations bar.

"Three factors are taken into consideration when deciding whether to apply

equitable tolling under California law: (1) timely notice to the defendant in the filing of the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim." Hatfield v. Halifax PLC, 564 F.3d 1177, 1185 (9th Cir. 2009).

The first question asks whether the April 2004 Complaint put MGA on notice within the limitations period. See Daviton, 241 F.3d at 1141.  By reference to that pleading, MGA was on full notice that (1) "Bryant assigned to Mattel all rights, title and interest in 'inventions,' including without limitation 'designs,' that he conceived or reduced to practice during his employment by Mattel" (2004 Complaint at ¶ 10); (2) "Bryant . . . purported to grant rights to such inventions, to a competitor during the time of his exclusive Mattel employment" (id. at ¶ 41); (3) the inventions purportedly granted to the competitor were "created by Bryant during the term of the aforesaid agreements" assigning ownership to Mattel (id.); and (4) "Defendants wrongfully converted Mattel property . . . by asserting ownership thereto and by appropriating and using Mattel's property . . . without the permission of Mattel" (id. at ¶ 42).  MGA alleged in its answer-in-intervention that "Mattel's purported conversion claim is nothing more than a copyright claim in disguise." Dkt. No. 37 at 1 ( 04-09059).  Thus, MGA was clearly put on notice of Mattel's claims at least by the date of its intervention, if not by the date of Mattel's complaint; and for the reasons explained in Mattel's summary judgment briefing (Dkt. 9044 at 63-65), the Bratz trade secret claim accrued less than three years before those dates.

"'[S]imilarity' of the prior and subsequent claims is a significant consideration when applying the second test factor, prejudice to the defendant . . . . [T]he focus of this factor is whether the facts of the two claims are 'at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second." Cervantes, 5 F.3d at 1276.  The facts underlying Mattel's April 2004 Complaint and its Bratz trade secret claim are so similar that investigation of the former would put the defendants in a position to fairly defend the latter.  In fact, based on MGA's own

1    position and at MGA's urging, the Court has held that Mattel's Bratz misappropriation

2    claim is so similar to the claims of breach of fiduciary duty, breach of the duty of loyalty,

3    and conversion, pleaded by Mattel in 2004, that it supersedes or preempts those claims in

4    whole or part.  Dkt. 9600 at 69-91.  Furthermore, in both its January 11, 2007 and

5    September 4, 2010 Orders, the Court expressly found the assertion of the Bratz trade

6    secret claim caused no prejudice to MGA.  Dkt. 142 at 8; Dkt. 8705 at 2.

7         The third prong is satisfied as well.  The Court has already determined that Mattel

8    did not act in bad faith or engage in spoliation before filing its November 20, 2006

9    misappropriation claim.  Dkt. 142 at 13, 16.  Instead, the Court found in its order

10   granting the motion to confirm that "that MGA has encouraged the circumstances that

11   give rise to its claims of prejudice." Dkt. 8705 at 2.  Accordingly, all three factors apply,

12   and equitable tolling applies.  Because the Bratz misappropriation claim accrued less

13   than three years before Mattel brought its April 2004 complaint, and (alternatively) less

14   than three years before MGA intervened in December 2004, Mattel's claim is timely.

15        Moreover, this is so not only as to MGA, the party that intervened as a defendant

16   in December 2004, but as to Larian as well.  Larian is in "evidentiary privity" with

17   MGA, so the limitations periods applicable to the Bratz trade secret claim against him is

18   also equitably tolled.  See Cervantes, 5 F.3d at 1276 n.3 ("The notice factor may be

19   satisfied where a defendant in the second claim was alerted to the need to gather and

20   preserve evidence by the first claim even if not nominally a party to that initial

21   proceeding.") (citing Collier v. City of Pasadena, 142 Cal. App. 3d 917, 928-29 (1983)).

22   As the Chief Executive Officer of privately-held MGA, Larian has a "close affiliation"

23   with the company he created, and he was personally and directly involved in the

24   transactions giving rise to Mattel's Bratz trade secret claim.  Daviton, 241 F.3d at 1140.

25   These circumstances "justify overlooking [his] nominal absence" from the April 2004

26   Complaint.  Cervantes, 5 F.3d at 1276 n.3.  For purposes of equitable tolling, notice to

27   MGA provides notice to MGA's agent—Larian.  See Collier, 142 Cal. App. 3d at 928

28   ("When Collier filed his workers' compensation claim against the city it was notice as

well to the city's agents, the pension board.").  Furthermore, since Larian had "full access to [MGA's] evidence *whenever* [he] realized [he] needed to defend against [the Bratz trade secret] claim," evidentiary privity exists and the limitations period is equitably tolled.  Id. at 928 (emphasis in original).

## Conclusion

For all of the foregoing reasons, as well as those briefed previously, Mattel's misappropriation of Bratz trade secrets claim is timely.


DATED:  March 7, 2011                QUINN EMANUEL URQUHART & SULLIVAN. LLP


                                     By /s/ John B. Quinn
                                        John B. Quinn
                                        Attorneys for Mattel, Inc., and Mattel de
                                        Mexico. S.A. de C.V.