ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: 415-773-5700
Facsimile: 415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: 213-629-2020
Facsimile: 213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br>Consolidated with:<br>Case No. CV 04-9059<br>and Case No. CV 05-2727<br><br>**MGA PARTIES' OPPOSITION TO MATTEL'S SUPPLEMENTAL BRIEF IN SUPPORT OF MATTEL'S MOTION FOR MISTRIAL OR, IN THE ALTERNATIVE, CURATIVE INSTRUCTION TO THE JURY**<br><br>Judge: Hon. David O. Carter<br>Date: TBD<br>Time: TBD<br>Dept: Courtroom 9D<br>Trial Date: January 18, 2011 |

**INTRODUCTION**

A mistrial is appropriate only when the prejudice to one party is so great that it cannot be addressed by an instruction or is not appropriately addressed during the trial. All of the events of which Mattel complains were contemporaneously corrected—to the limited extent that any arguably required "correction." None, even had they been left entirely unaddressed, justifies a mistrial.

First, MGA was entirely within its rights to ask Mr. Eckert about recalls. Mattel, in opening, and Mr. Eckert, when he testified, attempted to downplay the seriousness and significance of the recall of Mattel's toys. Mattel requires no remedy here. Legitimate questions were asked.

Second, the Court specifically allowed MGA to ask questions regarding Dr. Aginsky's education. MGA did so. MGA did so in light of an instruction by the Court that foreclosed the possibility of prejudice to Mattel. Mattel evidently was satisfied with the instruction and with MGA's questions; it did not object.

Third, counsel for MGA in passing read a bullet point from a document. Counsel did not linger on the subject. No context was provided to the jury to explain the bullet point. Even had context been provided and counsel had embarked on a line of questioning about it—MGA certainly did neither—nothing in the bullet point could compel a mistrial.

Accordingly, Mattel's motion should be denied.

**ARGUMENT**

**I.     THERE IS NO PREJUDICE.**

    **A.     Questions About Mattel's Recalls Were Proper and Relevant.**

This Court ruled before trial began that testimony regarding Mattel's recalls is relevant. It is relevant because Mattel has pursued a claim for lost profits and intends to pin those losses on Bratz. As this Court noted, "MGA should be able to rely upon the fact of the recall, as well as its consequences upon Mattel's business good will, in order to rebut Mattel's claim that its lost market share and profits

1  during the time period in question resulted from the sales of the allegedly infringing
2  Bratz dolls." Dkt. No. 9669 at 22.
3      Following this ruling, Mattel decided to introduce the issue of the recalls
4  itself and to attempt to deflect the jury's attention by minimizing their significance.
5  Mattel wasted no time. It raised the issue during its opening statement and chided
6  MGA for "just trying to change the subject." "As some of you may know, in the
7  summer of 2007, at Mattel there was a recall of some Mattel toys that had lead
8  paint. And the suggestion's going to be made, "Well, it was that recall, not Bratz,
9  that impacted Barbie's sales … that's just an effort to try to change the subject and
10 to divert you from the real issues here." 1/18/11 Trial Tr., Vol. 1 (Mattel Opening
11 Statement) at 81:1-8.
12     Mattel continued on this tack during Mr. Eckert's testimony. Rather than
13 answering the questions posed by counsel, Mr. Eckert went out of his way to
14 downplay the recalls. For example, rather than admit that there were flaws in the
15 design of its toys, Eckert wanted to characterize the designs as merely "insufficient"
16 (whatever that means):
17     Q: … Here's my question: Those designs, those were the result of flaws in
18     the design here in the U.S. by Mattel? Yes?
19     A. Certainly the design was improved. The previous design was insufficient,
20     that's correct.
21 3/3/11 Trial Tr., Vol. 1 at 62:20-63:2.
22     The recalls of millions of Mattel toys were not caused by trifling defects in
23 the design of Mattel's products and were not occasioned by petty complaints. The
24 miniature magnets that Mr. Eckert admitted were falling out of Mattel's products
25 were, in fact, sending children to the hospital and were, in fact, deadly. MGA was
26 entirely within its rights to challenge Mattel's characterization:
27     Q. Insufficient? There were children who actually died from swallowing
28     those magnets, right?

1       A. No.

2  3/3/11 Trial Tr., Vol. 1 at 62:25-63:2.

3       It was widely reported in the press in 2006 and 2007 that at least one child was killed by ingesting the same type of magnet that were the subject of Mattel's recall and that many more children were injured. Declaration of Bryce W. Baker, ¶ 2-5. In any case, Mr. Eckert flatly denied that such magnets had killed children. Mr. Eckert answered that "[i]n fact, I know no child died as a result of swallowing a magnet in a Mattel toy." *Id.* at 63:12-13. So, this issue has been resolved before the jury.

      Given that Mattel has sought to downplay the impact of its recalls and given that millions of dollars ride on what impacted Mattel's sales, Mattel cannot demand that it be allowed to sidestep the serious hazards that led to a spate of notorious recalls of millions of toys without giving MGA the opportunity to respond. MGA did no more than question Eckert about the nature of the product defects and the safety concerns that prompted the recall, which were by no means as minor and incidental as Mattel would imply. This was an entirely legitimate line of questioning given Mattel's damages claim, as this Court recognized: "In the general market, there's conversation about the nonsafety of Mattel toys. There have been numerous recalls you're absolutely allowed to get into. I mean, after all, lost profits, et. cetera, is part of that." *Id.* at 50:2-5. Moreover, Mr. Eckert was given an opportunity to fairly and fully respond to MGA's questions. There is no harm to remedy.

      Nor is it prejudicial to request a sidebar to ask whether a line of questions will be permissible, as Mattel claims. Mot. at 3. In any event, the jury was already conditioned to sidebar conferences on the morning of March 3 and could not have drawn any negative inference from one more. Counsel and the Court had concluded a sidebar regarding the relevance of related evidence—occasioned at

- 3 -

Mattel's request—only minutes prior to MGA's asking leave to confer with the Court. *Id.* at 48:13-57:25.

Finally, if Mattel were harmed by the presence of lead paint in its toys, the fault lies at Mattel's feet. Mr. Eckert again sought to downplay the significance of the lead issue, particularly with Barbie, claiming that it affected "only a small component of the Barbie accessory." *Id.* at 62:3-4. So, to ask Mr. Eckert about that one component is perfectly fair. Eckert admitted that paint on Mattel's products was grossly unsafe:

> Q. The legal limit for lead in paint is 0.06 percent, right?
> A. Yes.
> Q. And the Mattel toys recalled in 2007 had as much as 11 percent, right?
> A. In the component that was affected, yes.

3/3/11 Trial Tr., Vol. 1 at 60:21-61:1. In light of Mr. Eckert's testimony that Mattel conducted no fewer than five separate recalls involving millions of toys, including more than half a million Barbie products, MGA's questions regarding the effects of lead on children was hardly prejudicial. *Id.* at 61:13-62:4. In any event, Mattel has already received its remedy. As Mattel admits, Mot. at 4, the question was stricken.

### B. Mattel Was Not Prejudiced By MGA's Questions About Dr. Aginsky's Credentials.

During the February 25 lunch recess, the Court noted that it would strike particular questions from the morning session regarding the institution that granted Dr. Aginsky's doctorate. But, the Court repeatedly stated that counsel would be allowed to continue to explore the topic. *See, e.g.,* 2/25/11 Trial Tr., Vol. 1 at 157:17-19. Asking Dr. Aginsky about the milieu in which he obtained the training on which he based his ink analysis was hardly prejudicial, particularly when his resume—admitted into evidence—plainly states that he obtained his Ph.D. in 1980 from the "*Military Academy of Chemical Defense*" located in "Moscow, USSR." TX 4595-0028 (emphasis added).

In fact, the Court specifically instructed that MGA be allowed to ask about the Military Academy:

> MS. HURST: Just on his education, am I permitted to inquire—
>
> THE COURT: Now it's on his education?
>
> MS. HURST: Right. No. That's what I asked about first. That's what I'm saying should not be stricken.
>
> THE COURT: No. I'm gonna strike it. I think it's a misimpression, *and you can reask in that area*.

2/25/11 Trial Tr., Vol. 1 at 159:9-15 (emphasis added).

Mattel complains that it has not received a remedy. Yet, the Court strikes the testimony to which Mattel objected, moreover, the first thing the Court did after the lunch break was instruct the jury:

> "Now we're going to strike the prior comment but I'm going to allow Ms. Hurst to inquire. She didn't mean to infer he was part of the nuclear or biological program to blow up the United States. That's not where she is going. But she can inquire into the background, where was he educated, how was he educated. You know those kind of things in terms of his educational background."

2/25/11 Trial Tr., Vol. 2 at 21:4-13.

Counsel for MGA inquired about Dr. Aginsky's education immediately following this instruction. 2/25/11 Trial Tr., Vol. 2 at 21:17-22. Mattel did not object. Nor were there grounds to. There was no risk of prejudice in light of the Court's instruction, particularly when the instruction had just been read.

    **C.**     **Mattel Was Not Prejudiced By Testimony Regarding TX. 8980.**

MGA asked seven questions about Exhibit 8980. One of these referred to a bullet point that was mistakenly left unredacted. Counsel for MGA did not linger on that point, and in fact had already moved off of it, and off of the document entirely, when counsel for Mattel objected. In any event, this is hardly the sort of

1  prejudicial question that requires a mistrial.  This Court found it "harmless" and
2  "meaningless."  The Court has also provided Mattel an adequate remedy:
3      THE COURT:  Or Mr. Quinn, who you've spent numerous hours with me,
4      it's been a pleasure having you both here.  We are trading off.  That's
5      happened to Mattel on occasion, and now it's happening to MGA, and the
6      disconnect now, Ms. Keller, is that apparently this wasn't communicated by
7      Mr. McConville to you, so get this off my screen and redact the last portion.
8      Is that clear?
9      MS. KELLER:  Yes, sir.
10     THE COURT:  What did I just say?
11     MS. KELLER:  Redact the last portion and get it off your screen.
12     THE COURT:  Excellent.  So far it's harmless, it's been flashed up.  We'll
13     get away with it.  The jury will never find out what Simba is, it's
14     meaningless.
15     Number 2, Mr. Quinn, this is not and will not open the door to the Hong
16     Kong litigation.
17     Number 3, don't you dare go into litigation to death.
18     What did I just say?
19     MS. KELLER:  Don't I dare go into the litigation to death.  Don't intend to,
20     your honor.
21     THE COURT:  Now, this is an appropriate area of inquiry.  It's always been
22     an appropriate area of inquiry.
23 3/2/11 Trial Tr., Vol. 2 at 60:10-61:7.  As the Court noted, the text of the bullet
24 point was meaningless to the jury without context and absent questioning to draw it
25 out.  There is no prejudice.  Moreover, as minor as it was, the mistake nevertheless
26 has been cured: the document has been redacted.
27     Nor should Mattel be heard to complain.  As the Court noted, both sides have
28 made inadvertent statements during the course of this litigation.  Mattel, for its part,

1  did not even manage to make it through its opening statement before violating a
2  court Order and swerving into prohibited territory. *See* Dkt. No. 9669 at 4; 1/18/11
3  Trial Tr., Vol. 1 at 84:2-9. No mistrial is warranted.

4  **II.     NOTHING MATTEL COMPLAINS OF COMPELS A MISTRIAL.**

5        The drastic remedy of a mistrial requires far more than what Mattel
6  complains of. The Rules provide that "[u]nless justice requires otherwise, no error
7  in admitting or excluding evidence — or any other error by the court or a party —
8  is ground for granting a new trial… At every stage of the proceeding, the court
9  must disregard all errors and defects that do not affect any party's substantial
10 rights." Fed. R. Civ. P. 61; s*ee also* Fed. R. Evid. 103 ("[e]rror may not be
11 predicated upon a ruling which admits or excludes evidence unless a substantial
12 right is affected"). Here, nothing so dire as to implicate Mattel's "substantial
13 rights" has transpired. And, in every instance where an instruction was even
14 arguably appropriate—and MGA does not concede that any such instruction was in
15 fact compelled—instructions were given. This is sufficient.

16       The law is clear that "[w]here evidence heard by the jury is later ruled
17 inadmissible, a cautionary instruction is ordinarily sufficient to cure any alleged
18 prejudice to the defendant." *United States v. Charmley*, 764 F.2d 675, 677 (9th Cir.
19 1985). Thus, the remedy of a mistrial is only appropriate in situations where a
20 cautionary instruction is unlikely to cure the prejudicial effect of an error." *Id.*;
21 *United States v. Gann*, 732 F.2d 714 (9th Cir. 1984) (holding that an unresponsive
22 statement by a government witness on cross-examination implicating defendant in a
23 bank robbery " is not a situation of great urgency where a mistrial should have been
24 granted for very plain and obvious cause"); *United States v. Sarkisian*, 197 F.3d
25 966, 980, 982 (9th Cir. 1999) (affirming denial of mistrial where an excused juror
26 made a prejudicial statement against "gypsies" and believed she had received a
27 threat in connection with the case, which she expressed to the other jurors); *Romo v.*
28 *Hedgpeth*, 2010 WL 5224141 *19, 21 (C.D. Cal. Nov. 22, 2010) (affirming

magistrate's denial of motion for mistrial following "angry and emotional testimony by the prosecution's 'star witness,' … who accepted a plea deal" because "all of [his] opinions were fully explored, and his biases fully exposed" and were "precisely the kind of statements an admonition could cure").

Mattel's cases concur. They are cases where counsel engaged in highly prejudicial conduct far beyond anything Mattel complains of. In *Fineman v. Armstrong World Indus. Inc.*, 980 F.2d 171 (3d Cir. 1992), plaintiff's trial counsel "improperly testified to his own truthfulness and trustworthiness, supplied 'facts' not in evidence about the credibility of [defendant's] witnesses, accused [defendant's] witnesses of being 'liars' and 'perjurers,' and levied 'an unadorned, disparaging attack' upon defense counsel throughout his summation." *Id*. at 207. Despite this, the trial court repeatedly declined to declare a mistrial until it became clear that curative instructions were of no avail because of counsel's "pervasive and flagrant appeals to speculation, sympathy, outrage and revenge from the jury," the cumulative effect of which was "far greater than that experienced by the Court on a day-to-day basis" and resulted in an "indefensible verdict reached by the jury." *Fineman v. Armstrong World Indus. Inc.*, 774 F.Supp. 266, 274-276 (D.N.J. 1991). Such is definitively not the case here.

In *Draper v. Airco, Inc.*, 580 F.2d 91 (3d Cir. 1978), the Third Circuit recognized that "the trial judge has considerable discretion in determining whether conduct by counsel is so prejudicial as to require a new trial." *Id*. at 94. However, in *Draper* the Circuit reversed the district court because plaintiff's counsel breached the rules of proper argument because: "(1) he attempted to prejudice the jurors through repeated inappropriate references to the defendants' wealth; (2) he asserted his personal opinion of the justness of his client's cause; (3) he prejudicially referred to facts not in evidence; and (4) without provocation or basis in fact, he made several prejudicial, vituperative and insulting references to opposing counsel." *Id*. at 95. That is hardly the case here.

MGA'S OPP. TO MATTEL'S SUPP'L. MOTION FOR MISTRIAL
OR CURATIVE INSTRUCTION
CV-04-9049 DOC (RNBx)

And, in *O'Rear v. Freuhauf Corp.*, 554 F.2d 1304 (5th Cir. 1977), the defense counsel repeatedly referred to a parallel state court proceeding "in deliberate disobedience of the trial court's order forbidding such reference" and the trial judge refused "to permit plaintiff's counsel to respond to these references in final argument." *Id*. at 1306.

Finally, *United States v. Davenport*, 753 F.2d 1460, 1463-64 (9th Cir. 1985), and *United States v. Blankenship*, 382 F.3d 1110, 1127 (11th Cir. 2004), are both entirely inapposite. MGA did not lack a good faith basis for any of the questions it posed. The same type of magnets that Mattel's toys contained had killed children. Dr. Aginsky confirmed that, as counsel for MGA asked, the institute that he received his degree from was involved in planning for chemical warfare. Finally, Mr. Eckert admitted that some recalled Mattel toys contained many times the allowed level of lead, which at a minimum raises the possibility of the health effects mentioned by counsel for MGA—and, indeed, as reported in the press at the time.

In short, there is no basis for a mistrial.

## CONCLUSION

For the foregoing reasons, MGA respectfully submits that Mattel's Motion for Mistrial or, In the Alternative, Curative Instruction to the Jury should be denied.

Dated: March 9, 2011          Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP


By:    */s Warrington S. Parker*
         Warrington S. Parker
         Attorneys for MGA Parties