ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Tel: 415-773-5700/Fax: 415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel: 213-629-2020/Fax: 213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br>Consolidated with:<br>CV 04-9059<br>CV 05-2727<br><br>**MGA PARTIES' BRIEF RE RELATION BACK IN RESPONSE TO COURT'S ORDER OF FEBRUARY 16, 2011 (DKT. NO. 9898)**<br><br>Trial Date: January 11, 2011<br>Judge: Hon. David O. Carter |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................. 1

STATEMENT OF FACTS ....................................................................... 2

    A.    In April 2004, Mattel Sues Carter Bryant For Actions Taken Prior To The End Of His Employment With Mattel ........................... 2

    B.    MGA Intervenes In The Bryant Complaint And Files A Separate Action Against Mattel ................................................................... 4

    C.    Mattel Waits For Years To Seek Leave To Amend And Adds New Claims And New Defendants ................................................. 5

    D.    The Court Denies Leave To Amend The Bryant Complaint Based On Delay; It Grants Leave To Amend As To A Separate Action ........................................................................................ 8

    E.    Until June 2009, Mattel Does Not Disclose Bratz As A Trade Secret And  Disavows It; It Brings No Claims On Bratz As A Trade Secret Until April 2010 ........................................................ 10

        1.    Mattel Fails To Allege Bratz As A Trade Secret Until April 2010 ........................................................................ 10

        2.    Discovery Proceedings Confirm That Mattel Does Not Assert Bratz As A Trade Secret ............................................. 11

        3.    Mattel Disavows The Name Bratz As A Trade Secret And Deliberately Waits Until After It Obtains A Verdict In Phase 1 To Assert Bratz As A Trade Secret ........................... 12

ARGUMENT ..................................................................................... 14

I.    MATTEL'S CLAIMS CANNOT RELATE BACK TO THE BRYANT COMPLAINT .................................................................. 14

    A.    Rule 15(c) Does Not Authorize Relation Back To A Pleading In A Different Action ...................................................................... 14

    B.    Judge Larson Denied Leave To Amend Of The Bryant Complaint On The Merits And Therefore *Marcoux v. Shell Oil Products* Is Not Applicable And A Nunc Pro Tunc Order Is Not Justified ..................................................................................... 15

        1.    *Marcoux* Does Not Apply ...................................................... 16

        2.    A Nunc Pro Tunc Order Is Not Justified ................................ 17

1

**TABLE OF CONTENTS**
(continued)

2

Page

3

        3.    Mattel Is To Blame For Its Delay In Bringing Claims And
MGA Should Not Suffer As A Result ....................................... 18

4

  C.   Mattel Is Not Entitled To Relation Back Of Its Claims Against
The MGA Parties ..................................................................... 18

5

6

        1.    Rule 15(c)(1)(C) Does Not Authorize Relation Back Of
Added Parties To Federal Claims Where There Was No
Mistake Even If The Decision Was Not Tactical, Which It
Was ..................................................................................... 18

7

8

9

        2.    California's Doe Substitution Rule Does Not Authorize
Relation Back Of The State Law Claims Where There
Was No Mistake ................................................................. 22

10

11

        3.    Mattel Made A Deliberate Tactical Choice Not To Name
MGA, Larian And MGA HK ............................................. 23

12

13

  D.   Mattel's Amended Claims Were Permissive Claims To MGA's
Complaint And Therefore Do Not Relate Back ........................ 29

14

  E.   The Bratz Trade Secret Is Not Entitled To Relation Back ................ 30

15

II.   THE EQUITABLE TOLLING DOCTRINE DOES NOT APPLY
AND NO OTHER TOLLING SHOULD BE ALLOWED ........................ 32

16

17

  A.   The Equitable Tolling Doctrine Does Not Apply .............................. 32

18

  B.   No Tolling Should Be Allowed For The Stay ................................... 34

19

CONCLUSION ........................................................................................... 34

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Bailey v. N. Ind. Pub. Serv. Co.,*
910 F.2d 406 (7th Cir. 1990)..................................................................14

*Barrow v. Wethersfield Police Dep't,*
66 F.3d 466 (2d Cir. 1995 ...................................................................19

*Benge v. United States,*
17 F.3d 1286 (10th Cir. 1994)...............................................................14

*Conceptus, Inc. v. Hologic, Inc.,*
2010 WL 1460162 (N.D. Cal. Apr. 12, 2010) ......................................30

*Employers Ins. of Wausau v. United States,*
764 F.2d 1572 (Fed. Cir. 1985).............................................................29

*Eng v. County of Los Angeles,*
2010 WL 3368130 (C.D. Cal. Aug. 24, 2010) ......................................15

*In re Enron Corp.,*
357 B.R. 257 (Bankr. S.D.N.Y. 2006) ..................................................18

*Ervin v. County of Los Angeles,*
848 F.2d 1018 (9th Cir. 1988)...............................................................33

*G.F. Co. v. Pan Ocean Shipping Co.,*
23 F.3d 1498 (9th Cir. 1994)..................................................................19

*Garrett v. Fleming,*
362 F.3d 692 (10th Cir. 2004) ...............................................................19

*In re Greater Southeast Cmty. Hosp. Corp I,*
341 B.R. 91 (Bankr. D.D.C. 2006).........................................................18

*Hope for Families & Cmty. Serv. Inc. v. Warren,*
721 F. Supp. 2d 1079 (M.D. Ala. 2010) ...............................................18

*Kilkenny v. Arco Marine Inc.,*
800 F.2d 853 (9th Cir. 1986)............................................................19, 21

*Korn v. Royal Caribbean Cruise Line, Inc.,*
724 F.2d 1397 (9th Cir. 1984)) .............................................................19

*Krupski v. Costa Crociere S.p.A.,*
130 S. Ct. 2485 (2010) ...........................................................................20

*Lamon v. Stiles,*
2009 WL 230833 (E.D. Cal. Jan. 30, 2009)..........................................15

*Lauter v. Anoufrieva*,
   2010 WL 3504745 (C.D. Cal. July 14, 2010) ...................................................... 21

*In re Lazar*,
   237 F.3d 967 (9th Cir. 2001) ................................................................................. 29

*Louisiana-Pac. Corp. v. ASARCO, Inc.*,
   5 F.3d 431 (9th Cir. 1993) ............................................................................... 21, 24

*Marcoux v. Shell Oil Prods. Co.*,
   524 F.3d 33 (1st Cir. 2008) ...................................................................... 1, 15, 16

*Nelson v. Adams*,
   529 U.S. 460 (2000) ......................................................................................... 21, 24

*O'Donnell v. Vencor*,
   466 F.3d 1104 (9th Cir. 2006) .............................................................................. 14

*Perrian v. O'Grady*,
   958 F.2d 192 (7th Cir. 1992) ............................................................................ 8, 16

*Pierce v. City of Chicago*,
   2010 WL 4636676 (N.D. Ill. Nov. 8, 2010) ........................................................ 21

*Pochiro v. Prudential Ins. Co. of Am.*,
   827 F.2d 1246 (9th Cir. 1987) .............................................................................. 29

*Powers v. Graff*,
   148 F.3d 1223 (11th Cir. 1998) ...................................................................... 19, 24

*Richardson v. John F. Kennedy Mem. Hosp.*,
   838 F. Supp. 979 (E.D. Pa. 1993) ........................................................................ 18

*Ross Island Sand & Gravel Co. v. Gen'l Ins. Co. of Am.*,
   472 F.2d 750 (9th Cir. 1973) ................................................................................ 32

*Shea v. Esensten*,
   208 F.3d 712 (8th Cir. 2000) ................................................................................ 24

*Trigo v. TDCJ-CID Officials*,
   2010 WL 3359481 (S.D. Tex. Aug. 24, 2010) ..................................................... 21

*United States v. Summer*,
   226 F.3d 1005 (9th Cir. 2000) .............................................................................. 17

*Utilx Corp. v. Novimium, Inc.*,
   2009 WL 3517576 (W.D. Wash. Oct. 27, 2009) .................................................. 30

*Wang & Wang LLP v. Banco Do Brasil, S.A.*,
   2008 WL 5070133 (E.D. Cal. Nov. 26, 2008) ..................................................... 33

*Wilson v. United States*,
   23 F.3d 559 (1st Cir. 1994) .................................................................................. 19

*Worthington v. Wilson,*
    8 F.3d 1253 (7th Cir. 1993) ............................................................ 19

**STATE CASES**

*Dover v. Sadowinski,*
    147 Cal. App. 3d 113 (1983) ........................................................... 23

*Grinnell Fire Protection Sys. Co. v. Am. Sav. & Loan Ass'n,*
    183 Cal. App. 3d 352 (1986) ........................................................... 22

*Hull v. Central Pathology Serv. Med. Clinic,*
    28 Cal. App. 4th 1328, 1333 n. 4 (1994) ......................................... 15

*McGee St. Prods. v. Workers' Comp. Appeals Bd.,*
    108 Cal. App. 4th 717 (2003) .......................................................... 22

*McOwen v. Grossman,*
    153 Cal. App. 4th 937 (2007) .......................................................... 22

*Scherer v. Mark,*
    64 Cal. App. 3d 834 (1976) ............................................................. 23

*Woo v. Superior Court,*
    75 Cal. App. 4th 169 (1999) ............................................................ 23

**FEDERAL STATUTES**

Fed. R. Civ. P. 13(a) ............................................................................ 29

Fed. R. Civ. P. 15(c) .................................................................. *passim*

**STATE STATUTES**

Cal. Civ. Proc. Code §3426.1(d)(1) ...................................................... 11

Cal. Civ. Proc. Code §474 .................................................................... 22

**MISCELLANEOUS**

6A Wright, Miller & Kane, *Federal Practice and Procedure* §1498.3 ................. 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## **INTRODUCTION**

2       When Judge Larson considered Mattel's motion for leave to amend, Judge

3   Larson found that Mattel had unduly delayed.  Judge Larson rejected Mattel's

4   excuses for that delay.  Dkt. No. 1142 at 8.  Furthermore, Judge Larson determined

5   that a grant of Mattel's motion to amend the Bryant complaint–the one filed in

6   April 2004, Case No. 04-9059–would hamper the administration of the cases before

7   Judge Larson.  Therefore, Judge Larson denied Mattel's motion for leave to amend.

8   Dkt. No. 142 at 22.  In a word, Judge Larson denied the request on the merits.

9       To be sure, Judge Larson allowed Mattel to file the claims as counterclaims

10  to an entirely different lawsuit, MGA's April 2005 complaint, Case No. 05-2727.

11  Judge Larson did so without then making any express finding that the claims would

12  relate back.  Rather, the Court noted that "[n]one of the substantive concerns raised

13  by MGA and Bryant . . ., e.g., statute of limitations, *would appear* to be affected if

14  the new claims and defendants were brought as defenses and counterclaims in the

15  05-2727 case . . . ."  Dkt. No. 142 at 22 (emphasis added).

16      So what to make of this?  Mattel argues that Judge Larson did not deny it

17  leave to amend.  And, it claims that Judge Larson's decision to allow Mattel to file

18  its proposed claims as amendments must relate back because Judge Larson said so.

19      That is not so for the following reasons.  First, Judge Larson did deny Mattel

20  the right to amend the Bryant complaint.  What he did thereafter was commit an

21  error of law in assessing the statute of limitations in light of that decision.  While

22  Judge Larson allowed Mattel to file the proposed claims as counterclaims in other

23  action, as a matter of federal and California law, claims filed in one action do not

24  relate back to a different action.  Any other determination by Judge Larson is an

25  error of law.  *See* Part I, A, *infra*.  Given this, *Marcoux v. Shell Oil Prods. Co.*, 524

26  F.3d 33 (1st Cir. 2008), does not provide a solution.  In that case, if there was error,

27  it was assigning a new case number to the amended pleading.  The Court did not

28  deny the request on the merits as here.  *See* Part I, B, *infra*.

Second, the Court's relation back analysis fails to take into account that Mattel added entirely new defendants.  Under both federal and California law, Mattel was not entitled to add new defendants when Mattel was well aware of those defendants when it filed its initial complaint.  *See* Part I, C, *infra*.

Third, Mattel's claims, even as counterclaims, do not relate back to the MGA complaint because they are permissive counterclaims, which claims do not relate back.  *See* Part I, D, *infra*.

Fourth, Mattel is not entitled to the benefit of the equitable tolling doctrine.  The equitable tolling doctrine does not apply when there has been a delay in bringing a claim.  Here, Judge Larson found that Mattel unduly delayed in bringing its claims.  That ends the matter as to the equitable tolling doctrine.  *See* Part II, *infra*.

## STATEMENT OF FACTS

### A.   In April 2004, Mattel Sues Carter Bryant For Actions Taken Prior To The End Of His Employment With Mattel.

On April 27, 2004, Mattel filed suit against Carter Bryant—and only Carter Bryant—for breach of contract, breach of fiduciary duty, breach of the duty of loyalty, unjust enrichment and conversion ("Bryant complaint").  Case No. 04-cv-9059 Dkt. No. 1.  The claims arose, according to Mattel, as a result of acts Bryant took during his employment with Mattel prior to the time his employment with Mattel ended in October 2000.  *Id.*  ¶ 9 (noting that Bryant was a Mattel employee until October 2000); ¶ 12 (claiming wrongdoing occurred while Bryant was an employee of Mattel); ¶ 17 (Bryant breached contract because he assisted a competitor during his employment with Mattel); ¶ 22 (breach of fiduciary duty due to actions taken while employed by Mattel); ¶ 30 (same re breach of duty of loyalty); ¶ 36 (referencing conduct while employed at Mattel re unjust enrichment); ¶ 41 (conversion claim based on assignment of ownership during the time of his exclusive employment with Mattel).

1    Mattel did not sue on trade secret misappropriation, a claim that Mattel now

2    argues turns on the fact that Bryant created Bratz while employed by Mattel.  *See,*

3    *e.g.,* Dkt. No. 7801, Ex. 5 at 13-18; Dkt. No. 8577 at 2; Dkt. No. 9182 at 66-67.

4    This is despite the fact that, as of the filing of the Bryant complaint, Mattel knew—

5    according to Mattel—that Bryant created Bratz while at Mattel.  According to

6    Mattel, in November 2003, Mattel received a copy of Bryant's employment

7    agreement with MGA.  The receipt of this agreement, according to Mattel, provided

8    the crucial missing element that Bryant *created and sold Bratz* and worked for

9    MGA *while employed by Mattel*.  *See, e.g.*, Dkt. No. 2767, 2843 at 22 (Mattel's

10   Corrected Opp. to MSJ).  As stated in Paragraph 12 of the Bryant complaint, "In

11   late November 2003, Mattel learned that Bryant secretly aided, assisted and worked

12   for a Mattel competitor, including without limitation by entering into an agreement

13   with the competitor, during the time Bryant was employed by Mattel . . . ."  Case

14   No. 04-cv-9059 Dkt. No. 1 ¶ 12.

15        Moreover, although Mattel did not sue on trade secret misappropriation, the

16   harm claimed was not merely the fact that Bryant worked for MGA.  Rather, Mattel

17   claimed its damages included "the value of the information and intellectual property

18   owned by Mattel which Bryant provided to the competitor."  Case No. 04-cv-9059

19   Dkt. No. 1 ¶ 19; *see also id.* ¶¶ 41-42 (alleging in conversion claim that Bryant

20   wrongfully converted for a competitor "ideas, concepts, rights, designs, *proprietary*

21   *information, and other intellectual property* . . . ." (emphasis added)).

22        As to the parties, Mattel did not sue the MGA Parties or Mr. Larian.  This is

23   so despite the fact that Mattel knew of the existence of MGA and Mr. Larian.  *See*

24   Dkt. No. 9219 (MGA's Opp. to Mattel's MSJ Mot.) at 76-79; s*ee also* Part I, C, 3,

25   *infra*.  And Mattel had collected facts and evidence that Mattel continues to assert

26   establishes the MGA Parties' complicity in the actions of Bryant.  *Id.*

27        Indeed, the April 27, 2004 complaint reflects Mattel's knowledge as to MGA

28   and Mr. Larian.  In Paragraph 12 of that complaint, Mattel alleges the facts that

MGA PARTIES' BRIEF RE RELATION BACK
CV 04-9049 DOC (RNBx)

1  form the basis for its claims that the MGA Parties and Mr. Larian aided and abetted

2  Bryant's breach of duty of loyalty.  In the words of the complaint, "In late

3  November 2003, Mattel learned that Bryant secretly aided, assisted and worked for

4  a Mattel competitor . . . ."  Case No. 04-cv-9059 Dkt. No. 1 ¶ 12. The "Mattel

5  competitor" referenced has to be MGA.  There is—and has never been—any

6  evidence of any other competitor with which Bryant worked.  Moreover, the

7  agreement referenced has to be the agreement between MGA and Bryant, the

8  agreement that Mr. Larian signed.  TX 25.[1]  There is no evidence (and never has

9  been) of any other agreement that meets the description of Mattel's complaint.

10       Mattel was necessarily aware of the role of the "Mattel competitor," i.e.

11  MGA and Mr. Larian, because each of the stated causes of action depended on

12  Bryant's actions with regard to the "Mattel competitor."  The breach of contract

13  action alleged that "Bryant materially breached the foregoing contracts with Mattel

14  . . . [because] he secretly aided, assisted and worked for a Mattel competitor . . . ."

15  Case No. 2:04-cv-9059 Dkt. No. 1 ¶ 18.  The breach of fiduciary duty and duty of

16  loyalty claims depended on the allegation that Bryant "secretly aided, assisted and

17  worked for a competitor of Mattel."  *Id.* ¶¶ 23, 30.  The conversion claimed

18  depended on the allegation that Bryant assigned rights "to a competitor."  *Id.* ¶ 41.

19  And while the unjust enrichment claim is the only claim not to use the term

20  competitor, it depended on those allegations that did alleged unjust enrichment as a

21  result of Bryant's work and assignment to a competitor, i.e., MGA.

    **B.**    **MGA Intervenes In The Bryant Complaint And Files A Separate Action Against Mattel**

24       On December 7, 2004, MGA intervened in the Bryant complaint action for

25  procedural reasons.  2:04-cv-9059 Dkt. No. 37.  Following this intervention, Mattel

26  _____

27  [1] "TX" denotes an exhibit that has been admitted into evidence in this trial.  "Ex." references an exhibit that has been placed on the exhibit list, but that has not yet

28  been admitted.  All "Ex." documents were submitted to this Court in connection with the summary judgment briefing.

MGA PARTIES' BRIEF RE RELATION BACK
CV 04-9049 DOC (RNBx)

did not level any claims against MGA, MGA HK, MGA Mexico or Mr. Larian—not until November 20, 2006.  Indeed, with the possible exception of Mattel's conversion and unjust enrichment claims, none of the claims alleged in the Bryant complaint were legally cognizable against MGA.  MGA could not have breached a contract with Mattel.  It did not have one.  Nor could MGA have breached a fiduciary duty or duty of loyalty it did not owe to Mattel.

On April 12, 2005, MGA filed suit against Mattel.  Case No. 05-cv-2727 Dkt. No. 1.  MGA alleged trade dress and unfair competition claims, claiming that Mattel serially copied MGA products lines.  With regard to Bratz, the complaint alleges that following the June 2001 introduction of Bratz, Mattel's My Scene dolls and product line copied the Bratz concept, from the doll to the commercials to the plush pets.  Case No. 05-cv-2727 Dkt. No. 1 ¶¶ 23, 34-40 (My Scene Dolls); ¶¶ 41-46 (My Scene packaging); ¶¶ 48-50, 53, 60 (My Scene theme); ¶¶ 51 (My Scene commercials); ¶ 59 (My Scene pets).  In addition, MGA claimed serial copying of other product lines by Mattel.  *Id.* ¶ 68 (Wee 3 Friends); ¶ 69 (Little Mommy Potty Training Baby Doll); ¶ 70 (AcceleRacerS).

In addition, MGA's unfair competition claims alleged acts ranging from pressuring retailers to influencing otherwise independent industry organizations. *Id.* ¶¶ 74-100.

### C.   Mattel Waits For Years To Seek Leave To Amend And Adds New Claims And New Defendants.

On November 20, 2006, Mattel moved to amend the Bryant complaint, i.e., the complaint filed on April 27, 2004, in Case No. 2:04-cv-9059.  Dkt. No. 89.  The complaint Mattel sought to file—which the Court allowed Mattel to file as counterclaims—added entirely new claims against entirely new defendants.  Dkt. No. 142 (Order Denying Leave to Amend Complaint and Ordering the Filing of Counterclaims); Dkt. No. 143 (Amend Answer and Counterclaims ("AAC").

1    ***Mattel Adds Allegations Against New Defendants.***  Mattel added a copyright

2    infringement claim against previously unnamed defendants MGA, MGA HK, and

3    Mr. Larian.  Mattel added a RICO claim as to previously unnamed defendants

4    MGA, MGA HK, MGA Mexico and Mr. Larian.  Mattel added a trade secret

5    misappropriation claim against previously unnamed defendants MGA, MGA

6    Mexico and Mr. Larian.  Mattel added an aiding and abetting breach of fiduciary

7    duty claim and an aiding and abetting breach of duty of loyalty claim against

8    previously unnamed MGA and Mr. Larian.  Mattel added a conversion claim

9    against previously unnamed MGA, MGA HK, MGA Mexico and Mr. Larian.  And

10   Mattel added an unfair competition claim against previously unnamed MGA, MGA

11   HK, MGA Mexico and Mr. Larian.  Except for the claim regarding copyright

12   infringement, none of the newly added claims were based on Bryant's actions or his

13   employment with Mattel or MGA at all or in any significant part.

14   ***Mattel's Trade Secret Claim.***  The trade secret misappropriation claim did

15   not accuse Bryant or any of the putative defendants of misappropriating trade

16   secrets.  In fact, Bryant was not named as a defendant in connection with the trade

17   secret claim.

18   Moreover, Mattel identified those acts it believed gave rise to its claims

19   against the MGA Parties and Carter Bryant for the taking and use of Bratz–acts that

20   had nothing to do with trade secrets.  *See, e.g.,* Dkt. No. 143 ¶¶ 1, 20, 26.  Mattel's

21   trade secret claims were explicitly set apart from its claims relating to Bratz and

22   Bryant.  *See*, *e.g., id.* at ¶ 20 ("MGA intentionally stole not just specific Mattel

23   property, such as Bratz designs, prototypes, and related materials, *but also* a vast

24   array of *trade secrets and other confidential information* that comprise Mattel's

25   intellectual infrastructure.") (emphasis added).

26   Indeed, although the AAC identified the trade secrets and the persons who

27   took them by name, absent from the list were Bryant and Bratz.  The AAC

28   identified the alleged trade secrets as "Mattel's proprietary business methods,

1   practices and information" that underpin its "infrastructure," specifically the "plans,

2   strategy, and business information" misappropriated from Mattel Mexico, the

3   "contact file" Ron Brawer retained, and the "trade secrets regarding Mattel's

4   customers, sales projects, advertising and strategy" misappropriated from Canada.

5   *Id.* at ¶¶ 20, 41, 68, 70.  Mattel identified the specific individuals it alleged

6   misappropriated trade secrets as Machado, Trueba, Vargas, Brawer and Brisbois.

7   *Id.* at ¶¶ 41, 68, 74.

8        And while the AAC referred to the fact that "Other Former Employees"

9   misappropriated trade secrets, *id.* ¶ 107, no reasonable interpretation of the AAC

10  could read the phrase "other former employees" to include Bryant. The AAC

11  specifically refers to Bryant by name throughout (indeed, the Third and Fifth

12  Counterclaims, which bracket Mattel's trade secret counterclaim, both mention him

13  by name) and identifies the specific conduct attributable to him.   In short, neither

14  Bryant or Bratz were *ever* mentioned *at all* in relation to allegations regarding

15  misappropriation of trade secrets.  *Id.* at ¶¶ 37-77.

16       Finally, while the claims that would be filed as Counterclaims alleged that

17  Bryant "misappropriated and misused Mattel property and Mattel resources for the

18  benefit of Bryant and Mattel," Dkt. No. 143 ¶ 26, the specifics of that claim are that

19  Bryant (a) used his exposure to Mattel development programs to create Bratz, (b)

20  used Mattel resources while employed by Mattel to develop Bratz and (c) used

21  Mattel resources to assist MGA.  *Id.*  Each of these claims merely parrot Mattel's

22  claim that (a) Bratz was somehow inspired by Toon Teens, (b) Bryant used Mattel

23  employees to do things like root the hair on a dummy doll, and (c) Bryant worked

24  on Bratz for MGA while at Mattel.  And Mattel has repeatedly claimed that it is not

25  basing any claims on the alleged use of Toon Teens.  *See* e.g., Dkt. No. 63 (Order

26  on Mot. To Dismiss) at 2.  In other words, the allegations against Bryant pertaining

27  to Bryant were not trade secret claims, and they certainly did not claim Bratz or the

28  name Bratz was a trade secret.

1    Rather than allege a trade secret claim as to Bratz, Mattel alleged trade secret

2    misappropriation claims relating to thefts in 2004 (four years after the events giving

3    rise to its claims against Bryant) from Mattel Mexico by persons hired by MGA

4    Mexico.  Dkt. No. 143 ¶¶ 37-54.  Mattel also alleged theft of trade secrets in 2004

5    by Ron Brawer.  *Id.* ¶¶ 55-69.  And Mattel alleged theft of trade secrets in 2005 in

6    Canada by Janine Brisbois.  *Id.* ¶¶ 70-76.

7        ***Mattel's Other Claims.***  Mattel's remaining claims in no way were limited to

8    Bryant or, with the possible exception of Mattel's RICO claims, temporally related

9    to his actions. Mattel's intentional interference claim alleged interference with

10   Bryant's contract (in 2000) and then interference with the contracts of the contracts

11   of Brawer, Trueba, Machado, Vargas and Brisbois, all of which acts took place in

12   2004 and 2005, years after Bryant joined MGA.  Dkt. No. 143 ¶¶ 37-54, 55-69, 70-

13   76, 122-28.  Mattel's aiding and abetting the breach of the duty of loyalty carefully

14   parses out those acts relating to Bryant, *id.* ¶ 150, from any other MGA acts that

15   were alleged to have given rise to liability under this theory.  *Id.* ¶ 151 ("excluding

16   Bryant").  Finally, the conversion claim identified those things taken from Bryant

17   relating to Bratz and specifically distinguished them from "Mattel Trade Secret

18   Material."  *Id.* ¶¶ 157-59.

19        **D.    The Court Denies Leave To Amend The Bryant Complaint Based
              On Delay; It Grants Leave To Amend As To A Separate Action.**
20

21       The Court denied Mattel's request for leave to amend the Bryant complaint.

22   It started its analysis by finding that Mattel delayed bringing these additional claims

23   without justification.  Mattel offered two excuses for delay.  First, it claimed that it

24   had insufficient evidence.  Second, it claimed that a stay prevented its amendment.

25   The Court rejected both arguments.  Dkt. No. 142 at 7–8.  The Court found that

26   Mattel's claim that it lacked evidence was not "well–founded."  Dkt. No. 142 at 8.

27   (noting that the Court cannot "fathom" that it took three or four years for facts to

28   materialize).  It rejected the stay argument as without merit.  Dkt. No. 142 at 8.  The

1   only reason the Court did not deny Mattel leave to amend on the grounds of delay

2   alone is that it believed case law required a showing of prejudice.  Dkt. No. 142 at

3   8-9.

4        Still, the Court denied Mattel's motion on the merits.  The Court found that

5   leave to amend could not be granted because the claims asserted in the proposed

6   amendments were not sufficiently related to the allegations pled in the Bryant

7   complaint, thereby justifying the denial of leave to amend on the basis of judicial

8   economy.  *Id.* at 16-22.  The Court made a series of findings in this regard.

9        First, the Court noted that "[t]he proposed amendments would radically alter

10  the litigation in that case to include far ranging disputes involving multiple parties

11  and concerning events not connected with the BRATZ ownership."  *Id.* at 18.

12  Second, the Court found that Mattel's amendments "do not add substance to the

13  claims in its original complaint."  *Id.* at 19.  Indeed, as the Court found, the claims

14  ranged far beyond those alleged in the original complaint.  In the Court's words, the

15  proposed amendments "would expand the universe of claims and defendants

16  stretching well-beyond the questions raised in the original complaint over whether

17  Bryant's conduct while in the employ of Mattel subjected his later attributed

18  creation of BRATZ dolls to the provisions in Mattel's Inventions Agreement or

19  otherwise rendered his creation subject to an infringement action."  *Id.* at 19; *see*

20  *also id.* ("Nowhere does Mattel seek to reconcile the breadth of its present

21  amendments with the narrowness of the allegations contained in its original

22  complaint.").

23        Finally, having so found, the Court denied Mattel's leave to amend the

24  Bryant complaint.  It did so because, as the Court noted, "equally important in

25  determining whether to grant such leave is what impact such amendments would

26  have on the court's ability to manage the case.  *Id.* at 19.  And given the burden

27  imposed on the Court, the Court concluded that a denial of leave to amend was

28  justified.  "In light of the burden allowing Mattel's amendment to proceed would

MGA PARTIES' BRIEF RE RELATION BACK
CV 04-9049 DOC (RNBx)

1  have on this Court's ability to efficiently manage these consolidated matters *denial*

2  *of Mattel's request to amend its complaint in the 04-9059 matter is justified.*"  *Id.* at

3  21-22 (citing to *Perrian v. O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992)) (emphasis

4  added).

5        Having denied leave to amend, the Court then ordered Mattel to file the

6  proposed amendment as counterclaims.  In so ruling, did not rule that the claims

7  related back.  The Court noted that it "would appear" that the statute of limitations

8  would not be affected.  Dkt. No. 142 at 22.

9      **E.**    **Until June 2009, Mattel Does Not Disclose Bratz As A Trade**

10            **Secret And  Disavows It; It Brings No Claims On Bratz As A Trade Secret Until April 2010.**

11          **1.**    **Mattel Fails To Allege Bratz As A Trade Secret Until April**

12              **2010.**

13        After belatedly filing its initial counterclaims, Mattel proceeded to amend

14  them three times.  Not until its Fourth Amendment Counterclaims, proposed in

15  March 2010 and filed in April 2010, Dkt. Nos. 7676, 7714, did Mattel allege Bratz

16  as a trade secret, despite knowing the facts giving rise to this claim for over six

17  years—since at least November 2003, if Mattel is believed.  Dkt. No. 7714 (FAAC)

18  ¶¶ 30-31 (alleging that Mattel learned about the taking of Bratz in 2003).

19        Like its initial counterclaims filed in January 2007, Mattel's Second

20  Amended Answer and Counterclaims failed to identify Bratz as a trade secret or

21  make any claim whatsoever that Bryant stole trade secrets.  *See, e.g.,* Dkt. No. 635

22  ¶¶ 20, 41, 68, 70.  Neither Carter Bryant nor Bratz was associated with the

23  misappropriation of trade secrets.  *Id.* ¶¶ 37-77, 107.  Mattel's Third Amended

24  Answer and Counterclaims only added Jorge Castilla, who Mattel alleges

25  misappropriated "documents related to inventory management and forecasting" and

26  "future international business strategies and marketing priorities," to the group

27  accused of misappropriating trade secrets.  Dkt. No. 5607 at ¶ 84; *see also id.* ¶¶ 44-

28  94, 157.

### 2.   <u>Discovery Proceedings Confirm That Mattel Does Not Assert Bratz As A Trade Secret.</u>

Mattel's discovery responses likewise revealed no intention to assert Bratz as a trade secret.  Mattel never served a 2019.210 disclosure.  It purported to identify its trade secrets in a letter dated March 2, 2007.  Dkt. No. 7691 (Parker Decl. ¶ 2), Ex. 1.  That blanket identification of a Bates range of documents "containing" trade secrets was grossly overbroad and provided no notice of anything.  But even in that grossly overbroad identification, *none of the documents identified Bratz or any aspect of Bratz as a trade secret*. *Id.*

Remarkably, despite its obligation to give clear notice of what it claimed as a trade secret (which under California law would have prevented any discovery on the claim *at all* until it had complied), Mattel has claimed that this list, which it once asserted satisfied CCP 2019.210, was not complete.  Dkt. No. 7801 at 12 n. 35 (the letter "did not purport to include an exhaustive listing of Mattel's trade secrets . . . .").  But the only reservation the letter contained was the fact that additional discovery might disclose additional claims of trade secret misappropriation.  Dkt. No. 7691 (Parker Decl. ¶ 2), Ex. 1.  Of course, by March 2007, Mattel long knew of any claimed taking of Bratz.  Dkt. No. 7714 (FAAC) ¶¶ 30-31 (Mattel alleges that it learned about taking of Bratz in 2003).

After service of the March 2, 2007 letter, Mattel continued making statements inconsistent with the notion that it was claiming Bratz as a trade secret. At a hearing before the Discovery Master on March 19, 2007, Mattel claimed that "the trade secrets that we claim to have misappropriated has [sic] occurred in 2005, 2004, and 2006."  Dkt. No. 7691 (Parker Decl.) Ex. 2 at 12.[2]  Since Carter Bryant left Mattel in 2000 and MGA launched the products using the Bratz trademark by

---

[2] Mattel has claimed that this reference was intended to convey that Mattel was "merely acknowled[ing] that its trade secret damages were continuing through 2006, not that the claim dated back only to 2004."  Dkt. No. 7801 at 12 n. 35.  This was not what was said.

1   2001, this assertion precluded any possibility that Mattel was claiming Bratz as a

2   trade secret.  *See* FAAC ¶ 93; Dkt. No. 7676 ¶¶ 31-32 (noting that MGA has

3   distributed Bratz since 2001); Phase 1 Trial Tr. at 68:25-69:4 (Mattel's opening

4   statement, noting same).  Instead, and consistent with Mattel's claims and identified

5   trade secrets, Mattel's trade secrets related to those necessary to market and

6   commercialize Bratz.  According to Mattel, "MGA lacked an appropriate

7   intellectual infrastructure for a company of its size and it became difficult to

8   manage" and so stole trade secrets that enabled MGA to *market and commercialize*

9   Bratz.  *See* AAC ¶¶ 20, 37, 68, 70; SAAC ¶¶ 20, 37, 68, 70; TAAC ¶¶ 27, 44, 75,

10  84, 88.

11      Nor at any point did Mattel identify Bratz as a trade secret in response to

12  interrogatories seeking the identification of trade secrets until July 31, 2009.  Dkt.

13  No. 7691 (Parker Decl.) ¶ 4.

14          **3.    Mattel Disavows The Name Bratz As A Trade Secret And**
            **Deliberately Waits Until After It Obtains A Verdict In Phase**
15          **1 To Assert Bratz As A Trade Secret.**

16      At the Pretrial Conference, Mattel expressly disavowed the name "Bratz" as a

17  trade secret:  "[W]e have not said that the name Bratz is, quote, *proprietary*, end

18  quote, to Mattel.  That is not the basis of our theory."  Dkt. No. 7850 (Parker Decl.)

19  Ex. 1 (5/23/08 Pre-Trial Conf. Tr.) at 79:20-22 (emphasis added).  Undoubtedly this

20  statement was made at least in part because Adrienne Fontanella, the former

21  President of Mattel's Girls Division, had testified clearly and explicitly on January

22  15, 2008 that Mattel had rejected use of the name Bratz as inconsistent with the

23  company's image.  Fontanella Depo. at 150:2-12 ("And in looking at the Bratz

24  name I didn't like the idea of what Bratz connoted.").[3]

25      If it is not "proprietary" to Mattel, the name cannot be a trade secret.

26  Bryant's employment agreement with Mattel contained a provision defining

27

28  _____
    [3] The transcripts of the depositions cited were submitted to this Court in connection
    with the briefing on summary judgment.

MGA PARTIES' BRIEF RE RELATION BACK
CV 04-9049 DOC (RNBx)

proprietary information.  Paragraph 1(a) of the Inventions Agreement compels Mr. Bryant to keep *Proprietary Information confidential*."  *See* Dkt. No. 4115 at 31 (jury instruction regarding term of Bryant's employment contract) (emphasis added).  In turn, Mattel defines "Proprietary Information" in precisely the same way—and using the same statutory words—that a trade secret is defined.  *Compare id. with* Cal. Civ. Code § 3426.1(d)(1).[4]

Despite all of the foregoing, Mattel asserted that MGA's objection to trying Mattel's trade secret claims in Phase 1 somehow shows that MGA knew what Mattel was claiming.  *See* Dkt. No. 7801 at 7.  MGA objected in part because "they were never informed by Mattel that this claim related to ownership of Bratz."  Dkt. No. 3470 at 16-17; Dkt. No. 3694 at 16-17; Dkt. No. 3765 at 17.

Following the Phase 1 trial, even when the MGA Parties called Mattel out as having effectively identified Bratz as a trade secret by defining it as "proprietary information," and thereby raising the possibility of CUTSA preemption, Mattel denied that this was so.  Dkt. No. 4496 (MGA's Mot. for Partial JMOL) at 7-8. Mattel denied that they were trying a Bratz trade secret claim, noting that the Trade Secret Act "does not preempt claims that are not based on trade secrets; and none of the claims at issue here depended on proof that the Bratz inventions are trade secrets."  Dkt. No. 4683 (Mattel's Opp. to MGA's Renewed Mtn. for Partial JMOL) at 9.

Thus, it was only long after obtaining a verdict on the Phase 1 trial with the threat of preemption safely in the rear view mirror that Mattel again raised the issue it had raised in the eleventh hour service of a draft pretrial conference order.  *See* Dkt. No. 4835.  And even then, Mattel had not yet identified Bratz as a trade secret

---

[4]  Moreover, the only mention of trade secrets by Mattel in the Pretrial Conference Order was a footnote that read "Mattel has claims for misappropriation that are being reserved for Phase II of this litigation.  To the extent defendants seek to raise the issue of trade secrets during Phase I, either as a claim or as an affirmative defense, Mattel reserves its right to argue its misappropriation of trade secrets claim in Phase I."  Dkt. No. 3470 at 11 n. 3; Dkt. No. 3694 at 11 n. 2 Dkt. No. 3765 at 13 n. 2.

1   in response to interrogatories that required it to identify trade secrets.  In fact,

2   Mattel never identified its trade secrets at all in response to that interrogatory until

3   July 30, 2009, even though that interrogatory had first been served *on December 4,*

4   *2007.*  Dkt. No. 6785 Ex. C (identifying trade secrets).

5                                    **ARGUMENT**

6   **I.   MATTEL'S CLAIMS CANNOT RELATE BACK TO THE BRYANT COMPLAINT.**

7

8         **A.   Rule 15(c) Does Not Authorize Relation Back To A Pleading In A Different Action.**

9         The Court denied Mattel's motion for leave to amend the Bryant complaint.

10  Dkt. No. 142 at 21-22.  Having denied that request, the Court then erroneously

11  assumed—but did not even decide at the time—that filing those same claims as

12  Counterclaims in a different action, MGA's complaint (05-2727), would still entitle

13  Mattel to the benefit of the relation back doctrine.  *Id*. At 22.  But that is legal error.

14  Whether or not Mattel could file those claims as an independent action, what it

15  could not do is file those claims in the MGA action (05-2727) and then obtain

16  relation back to either that case or to the Bryant complaint (04-9059).  Having

17  decided that Mattel could not satisfy the standard for leave to amend the Bryant

18  complaint, the Court could not afford Mattel the benefit of the relation back

19  doctrine.

20        This is so because the relation back doctrine does not allow a party to relate

21  back an amended pleading to a pleading *in a different case.  O'Donnell v. Vencor*,

22  466 F.3d 1104, 1111 (9th Cir. 2006) (second complaint is a separate filing and does

23  not relate back to an earlier, separate complaint); *Benge v. United States*, 17 F.3d

24  1286, 1288 (10th Cir. 1994) (untimely second complaint did not relate back to a

25  separate timely complaint); *Bailey v. N. Ind. Pub. Serv. Co.*, 910 F.2d 406, 413 (7th

26  Cir. 1990) (rejecting argument that an untimely complaint related back to an earlier

27  lawsuit filed against the same defendant because Rule 15(c) "by its terms, only

28  applies to amended pleadings in the same action as the original, timely pleading");

1  *Eng v. County of Los Angeles*, 2010 WL 3368130, at *13-14 (C.D. Cal. Aug. 24,

2  2010) (a federal complaint cannot relate back to earlier filed state court complaint);

3  *Lamon v. Stiles*, 2009 WL 230833, at *4 (E.D. Cal. Jan. 30, 2009) (new complaint

4  did not relate back to earlier complaint in separate, but related, action because it

5  was not an amendment to the earlier complaint).  California law is no different.

6  *Hull v. Central Pathology Serv. Med. Clinic*, 28 Cal. App. 4th 1328, 1333 n. 4

7  (1994) (finding that relation back doctrine did not apply when plaintiff did not

8  amend her complaint, but filed an entirely separate action).

9        In November 2006, Mattel sought to file numerous new claims not previously

10  stated in its state court filing against Bryant, and also to add four new parties:

11  MGA, MGA HK, MGA de Mexico and Larian.  Mattel might have been able to file

12  that proposed pleading as a brand new lawsuit.  But Mattel knew that nearly all of

13  its claims would be untimely if filed as a new lawsuit.  Hence, it instead brought its

14  motion for leave to amend to tack on these brand new claims and parties to its

15  existing case against Bryant.

16        As a separate filing in a different case, the counterclaims cannot relate back

17  to the earlier state court complaint against Bryant.

18        **B.    Judge Larson Denied Leave To Amend Of The Bryant Complaint
19             On The Merits And Therefore *Marcoux v. Shell Oil Products* Is
             Not Applicable And A Nunc Pro Tunc Order Is Not Justified.**

20        Mattel cites *Marcoux v. Shell Oil Prods. Co.*, 524 F.3d 33 (1st Cir. 2008), on

21  four separate occasions in its brief, as though it is an answer to its prayers.  Mot. at

22  2, 8, 9, 15.  Mattel cites the case as a way of excusing what it claims was Judge

23  Larson's error when he concluded that the statute of limitations considerations

24  would not be affected were Mattel allowed to amend its answer to the MGA

25  complaint rather than amend the Bryant complaint.  Then, Mattel claims that failing

26  that, it should be entitled to an order *nunc pro tunc* so that the record reflects

27  relation back to the Bryant complaint.  Mot. at 15.  According to Mattel, this is

28  justified because Judge Larson made an error "at the urging of MGA" and because

MGA PARTIES' BRIEF RE RELATION BACK
CV 04-9049 DOC (RNBx)

1   Mattel should not be time barred in the middle of trial. *Id.*  None of these

2   arguments have merit.

3                    **1.   *Marcoux* Does Not Apply**

4            As to the first argument, *Marcoux* is an out-of-circuit case that bears no

5   factual relationship to this case.  In *Marcoux*, there was no true denial of a motion

6   for leave to amend.  As noted by the *Marcoux* Court, the district court merely

7   wanted the amended pleadings filed as a separate lawsuit for reasons the Court does

8   not give.  There was no finding of delay.  There was no finding that an amendment

9   would hamper the administration of the case.  In other words, the denial of leave to

10  amend in *Marcoux* did not depend on the Court's assessment of the merits of

11  allowing leave to amend.

12          Here, in contrast, there *was* an actual and expressly stated denial of a motion

13  for leave to amend.  It was based *on the merits of Mattel's request*.  Judge Larson

14  gave specific reasons for that denial.  Judge Larson found undue delay.  Dkt. No.

15  142 at 8.  Judge Larson found that Mattel's amendment would interfere with the

16  administration of the case.  In the words of the Court, "[i]n light of the burden

17  allowing Mattel's amendment to proceed would have on this Court's ability to

18  efficiently manage these consolidated matters *denial of Mattel's request to amend*

19  *its complaint in the 04-9059 matter is justified*."  *Id.* at 21-22 (citing to *Perrian v.*

20  *O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992)) (emphasis added).

21          Mattel does not claim that Judge Larson's denial on merits was an error.

22  Mattel does not claim that there is a basis for now revisiting Judge Larson's

23  conclusion that Mattel's request for leave to amend the Bryant complaint should be

24  denied.  Instead, Mattel just mischaracterizes the Order.  Mattel claims that "Judge

25  Larson granted Mattel leave to amend" and only for "administrative convenience . .

26  . instructed Mattel to file its claims as counterclaims to MGA's 2005 Complaint . . .

27  ."  Mot. at 6.  But that is simply wrong.  Indeed, Judge Larson spent six pages of his

28  22 page Order analyzing just why it was that leave to amend the Bryant complaint

MGA PARTIES' BRIEF RE RELATION BACK
CV 04-9049 DOC (RNBx)

1   was not going to be allowed.  Dkt. No. 142 at 16-22.

2         Why does this matter?  It matters because the error Mattel supposes Judge

3   Larson is guilty of is not the claimed error that was at issue in *Marcoux*.  In

4   *Marcoux*, at most the error was that the Court granted the motion for leave to

5   amend and assigned a different case number to the amendment.  Here, the error was

6   one of law—whether Mattel's claims related back to an entirely different complaint

7   once the Court concluded that it should deny Mattel's motion for leave to amend on

8   the merits.

9         Second, *Marcoux* does not address the issue of newly added defendants,

10  which is a standard that Mattel fails to satisfy.  *See* Part I, C, *infra*.

11        As a result, *Marcoux* is no answer.

12              **2.    A Nunc Pro Tunc Order Is Not Justified.**

13        A *nunc pro tunc* order is also completely unjustified.  As noted by Mattel, an

14  order *nunc pro tunc* is warranted only when necessary to make "the record reflect

15  what the district court actually intended to do at an earlier date" but did not "due to

16  some error or inadvertence."  *United States v. Summer*, 226 F.3d 1005, 1009-10

17  (9th Cir. 2000) (cited Mot. at 15).

18        Here, Judge Larson clearly explained why the Court denied Mattel's motion

19  for leave to amend the Bryant complaint.  Judge Larson, in fact, spent six pages of

20  his 22 page Order discussing why judicial economy and administration justified the

21  denial of Mattel's request for leave to amend.  This was no mistake or inadvertence

22  and neither was exhibited by the Order.  To be sure, having denied leave to amend,

23  Judge Larson committed legal error in finding that Mattel could be granted leave to

24  amend a separately filed action.  Finding that the Counterclaims related back to the

25  April 2004 Bryant complaint compounded the error.  Dkt. No. 3917 at 6.  But this is

26  a legal error that should not be continued.  There was no mistake when the Court

27  denied leave to amend the Bryant complaint.  If later on the Court committed legal

28  error by miscalculating the relation back date, it is legal error and not one that

MGA PARTIES' BRIEF RE RELATION BACK
CV 04-9049 DOC (RNBx)

1    should continue to be promulgated.

2        **3.    Mattel Is To Blame For Its Delay In Bringing Claims And**
         **MGA Should Not Suffer As A Result.**
3

4        Judge Larson concluded that Mattel had no justifiable reason for its delay in

5    seeking leave to amend and in bringing its claims.  Dkt. No. 142 at 8.  The only

6    reason this case has gotten this far is that Judge Larson allowed Mattel to append

7    these claims to another case.  But that legal error does not in any way justify

8    Mattel's delay.  What Mattel is seeking to do is either blame Judge Larson or MGA

9    for what are its own actions.  Mattel, not MGA, not Judge Larson, made a decision

10   as to when to bring these claims.  If they are late, they are late.  Distorting the law

11   to bring them into some safe harbor is not the answer.

12       **C.    Mattel Is Not Entitled To Relation Back Of Its Claims Against The**
         **MGA Parties.**
13

14       Even assuming Rule 15(c) allowed relation back to a pleading in a different

15   case, Mattel is still not entitled to the benefit of that doctrine either as to Bryant's

16   complaint or to MGA's complaint.  The burden is on Mattel to demonstrate facts

17   sufficient to obtain application of the relation-back doctrine pursuant to Rule 15(c)

18   to add a party where the statute of limitations has expired with respect to that party,

19   which Mattel cannot do.  *Hope for Families & Cmty. Serv. Inc. v. Warren*, 721 F.

20   Supp. 2d 1075, 1174 n.105 (M.D. Ala. 2010) (burden on party to establish

21   mistake); *In re Enron Corp.*, 357 B.R. 257, 262 (Bankr. S.D.N.Y. 2006) (same);

22   *Richardson v. John F. Kennedy Mem. Hosp.*, 838 F. Supp. 979, 987 (E.D. Pa. 1993)

23   (same); *In re Greater Southeast Cmty. Hosp. Corp I*, 341 B.R. 91, 98 (Bankr.

24   D.D.C. 2006) (same).

25       **1.    Rule 15(c)(1)(C) Does Not Authorize Relation Back Of**
         **Added Parties To Federal Claims Where There Was No**
26       **Mistake Even If The Decision Was Not Tactical, Which It**
         **Was.**
27

28       Rule 15(c)(1)(C) is the exclusive means by which the relation back doctrine

applies to an amended pleading adding new parties to federal claims.  *G.F. Co. v. Pan Ocean Shipping Co.*, 23 F.3d 1498, 1501 (9th Cir. 1994) (Rule 15(c)(1)(C) "'is the only vehicle through which a plaintiff may amend his complaint, after a statute of limitation period has run,'" to name a new defendant) (quoting *Korn v. Royal Caribbean Cruise Line, Inc.*, 724 F.2d 1397, 1399 (9th Cir. 1984)) (federal seaman's claim); *Kilkenny v. Arco Marine Inc.*, 800 F. 2d 853, 856 (9th Cir. 1986) ("Because the statute of limitations period expired prior to [plaintiff's] filing of the amended complaint, [Rule 15(c)] is *the only procedural avenue* by which [plaintiff's] original complaint may be amended to add additional parties") (emphasis added); *Wilson v. United States*, 23 F.3d 559, 562 (1st Cir. 1994) ("When a plaintiff amends a complaint to add a defendant, but the plaintiff does so *subsequent* to the running of the relevant statute of limitations, then Rule [15(c)(1)(C)] controls whether the amended complaint may 'relate back' to the filing of the original complaint and thereby escape a timeliness objection."); *see also Garrett v. Fleming*, 362 F.3d 692, 696-97 (10th Cir. 2004) (plaintiff's "substitution of named defendants for the original unknown 'John Doe' defendants amounted to adding a new party" such that "all requirements of [Rule 15(c)(1)(C)] must be met in order for [the plaintiff's] amended pleadings to relate back to the date of the original.") (§1983 claim); *Powers v. Graff*, 148 F.3d 1223, 1225-26 (11th Cir. 1998) (quoting *Garrett*, 362 F.3d 692, and affirming district court's finding that Rule 15(c)(1)(C) was not met where plaintiffs knew the identity of the proposed new defendants before the statute of limitations expired and should have known they would be "persons arguably liable for the alleged wrongdoing.") (federal securities law claim); *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468-69 (2d Cir. 1995) (Rule 15(c)(1)(C) is the only means by which a plaintiff can replace a "John Doe" with a named party) (§1983 claim); *Worthington v. Wilson*, 8 F.3d 1253 (7th Cir. 1993) (no relation back under Rule 15(c)(1)(C) where proposed new defendants were unknown to plaintiff when original complaint was filed)

1    (same).

2         Under Rule 15(c)(1)(C), the inquiry is whether the failure to name MGA,

3    MGA HK and MGA Mexico and Mr. Larian was the result of a mistake as to their

4    identity, e.g., Mattel sued one party believing that that party was the properly

5    named defendant.  Fed. R. Civ. P. Rule 15(c)(1)(C); *see also Krupski v. Costa*

6    *Crociere S.p.A.*, 130 S. Ct. 2485 (2010) (plaintiff mistakenly sued Costa Cruise

7    instead of the Italian related corporate entity Costa Crociere).

8         Here, that cannot be shown. Mattel has never claimed that its failure to plead

9    claims against MGA, MGA HK, MGA Mexico and Mr. Larian was due to a

10   mistake of identity, which is what Rule 15(c)(1)(C) requires.  Nor could it for the

11   reasons explained below.  *See* Part I, C, 3, *infra*.

12        Moreover, while the Court did not consider the issue of mistake *per se* in its

13   January 11, 2007 Order on Mattel's Motion for Leave to Amend, it did consider

14   Mattel's arguments as to why it delayed.  This analysis shines light on the issue of

15   mistake.  According to the Court, Mattel's decision to wait and sue was not justified

16   by a lack of knowledge.  Rather, Mattel possessed sufficient facts to bring its claims

17   before it sought leave to amend, such that the delay was unwarranted.  Dkt. No. 142

18   at 8 (rejecting the argument that Mattel did not possess sufficient facts on which to

19   bring claims because "it is hard to fathom that . . . materialization [of the facts] took

20   three or four years to occur").

21        Indeed, Mattel's newly minted equitable tolling argument, which lacks merit

22   in any case, *see* Part II, *infra*, simply underscores the lack of any mistake of

23   identity.  Mattel's equitable tolling argument depends on its argument that the

24   Bryant complaint—particularly the conversion claim—put the MGA Parties on

25   notice of its trade secret claim because MGA would have been gathering evidence

26   to defend against such a claim.  Mot. at 23-27.  Assuming that is so, then Mattel too

27   had to have been in the same position.  The MGA Parties certainly should not be

28   held to have gleaned an understanding not intended by Mattel.  Nor would it make

MGA PARTIES' BRIEF RE RELATION BACK
CV 04-9049 DOC (RNBx)

1   sense for the Court to find that the MGA Parties were so preternaturally clairvoyant

2   that they gathered evidence pertaining to a trade secret claim while Mattel, having

3   made the allegations, had no clue that its conversion claim read on a trade secret

4   allegation as well.

5       As a result, Mattel is not entitled to relation back.  *See, e.g., Nelson v. Adams*,

6   529 U.S. 460, 467 n.1 (2000) (Rule 15(c) not met where plaintiff "knew of

7   [defendant's] role and existence and, until it moved to amend its pleading, chose to

8   assert its claim for costs and fees only against [the named defendant]."); *Louisiana-*

9   *Pac. Corp. v. ASARCO, Inc.*, 5 F.3d 431, 434 (9th Cir. 1993) (no relation back

10  where plaintiff "knew perfectly well" the identity of the potential defendant and

11  "[t]here was no mistake of identity, but rather a conscious choice of whom to sue");

12  *Kilkenny*, 800 F.2d at 857-58 (Rule 15(c) was "never intended to assist a plaintiff

13  who ignores or fails to respond in a reasonable fashion to notice of a potential party,

14  nor was it intended to permit a plaintiff to engage in piecemeal litigation"); *Pierce*

15  *v. City of Chicago*, 2010 WL 4636676 *4 (N.D. Ill. Nov. 8, 2010) (applying

16  *Krupski* and finding that failure to name an additional defendant was not due to a

17  mistake in identity); *Trigo v. TDCJ-CID Officials*, 2010 WL 3359481 *18 (S.D.

18  Tex. Aug. 24, 2010) (applying *Krupski* and finding that failure to name an

19  additional defendant was not due to a mistake in identity); *Lauter v. Anoufrieva*,

20  2010 WL 3504745 *24-25 (C.D. Cal. July 14, 2010) (applying *Krupski* and finding

21  that failure to name an additional defendant was not due to a mistake in identity).

22      In addition, the fact is that Mattel's choice was not merely motivated by some

23  concern that it could not marshal the facts—an argument rejected by the Court, in

24  any case when it determined that Mattel's delay in seeking leave to amend was

25  unwarranted.  Dkt. No. 142 at 8.  There are *at least* two reasons why Mattel made

26  that deliberate tactical choice.  First, by focusing on Bryant with state law claims

27  brought in state court, Mattel would make MGA's copyright preemption arguments

28  much more difficult to convey and it could dramatically increase its chances of

1    successfully avoiding the limitations of copyright doctrines.  Second, by suing only

2    Bryant, who was a smaller and weaker defendant, Mattel undoubtedly hoped to

3    obtain a judgment that it could then use as collateral estoppel against MGA.  The

4    tactical choice by Mattel not to name MGA, Larian and MGA HK is exactly the

5    kind of reason under both federal and state law why Mattel is *not* entitled to claim

6    the benefit of the relation-back doctrine against these added parties.

7                **2.      California's Doe Substitution Rule Does Not Authorize
                         Relation Back Of The State Law Claims Where There Was
8                         No Mistake.**

9            California's doe-defendant rules does not counsel a different result.

10   California law does not permit the addition of new parties MGA, MGA HK and

11   Larian as "doe" defendants where the initial failure to name them was not a

12   mistake.  Thus, even assuming *arguendo* that Mattel could relate back to a different

13   action (which it cannot), it must satisfy the lack of mistake standard.

14           Generally, under California law "a complaint may not be amended to add a

15   new defendant after the statute of limitations has run."  *McGee St. Prods. v.*

16   *Workers' Comp. Appeals Bd.*, 108 Cal. App. 4th 717, 724, 25 (2003).  "The only

17   exception to this rule is when the original complaint states a cause of action against

18   a Doe defendant and the plaintiff is unaware of the true identity of that party at the

19   inception of the suit."  *Id.*; Cal. Civ. Proc. Code §474 (pleading of doe defendants

20   permissible when the plaintiff is  "ignorant of the name of a defendant.").  In

21   determining whether plaintiff is "ignorant of the name of the defendant," courts

22   look at two things: (1) ignorance of the identity of the defendant; (2) ignorance of

23   the facts giving rise to the cause of action against defendant.  A plaintiff is (1)

24   ignorant of the identity of the defendant only if she lacks "actual knowledge" of the

25   name of the defendant.  *Grinnell Fire Protection Sys. Co. v. Am. Sav. & Loan*

26   *Ass'n*, 183 Cal. App. 3d 352, 359 (1986).  A plaintiff is (2) ignorant of the facts

27   giving rise to the cause of action against defendant if she knows the identity of the

28   person but is ignorant of the facts giving a cause of action against such person.

1   *McOwen v. Grossman*, 153 Cal. App. 4th 937, 942 (2007).

2          A plaintiff is *not* ignorant of the facts giving a cause of action where she

3   knows the identity and facts giving rise to liability when the complaint is filed.

4   *Scherer v. Mark*, 64 Cal. App. 3d 834, 840-41 (1976); *Dover v. Sadowinski*, 147

5   Cal. App. 3d 113 (1983) (no relation back where the plaintiff knew that the

6   proposed defendant was involved in the underlying controversy, even if he did not

7   know "how deeply" involved); *cf. Woo v. Superior Court*, 75 Cal. App. 4th 169,

8   180 (1999) (plaintiff cannot meet "good faith, bona fide ignorance as required"

9   where the information concerning the additional defendants is readily available to

10  the plaintiff).  "The pivotal question in this regard is 'did plaintiff know *facts*?' not

11  'did plaintiff know or believe that she had a cause of action based on those facts?"

12  *Scherer*, 64 Cal. App. 3d at 841 (emphasis original).

13         As noted by the Court in its January 11, 2007 Order, Mattel did have

14  sufficient facts and was not operating under some mistake.  Dkt. No. 142 at 8.  For

15  the reasons discussed in the next section, it is apparent that Mattel did *know facts* at

16  the time of its April 2004 filing, and made no mistake as to whether MGA, MGA

17  HK and Larian should be included as defendants in its filing but instead made a

18  deliberate tactical choice in that regard.

19                   **3.      Mattel Made A Deliberate Tactical Choice Not To Name
                             MGA, Larian And MGA HK.**

20

21         Mattel cannot and does not claim that it lacked actual knowledge of the

22  identities of MGA, Larian, or MGA HK as of the filing of its April 27, 2004

23  Complaint.  Mattel's apparent position is that it did not know the facts that each of

24  the later-added MGA Parties played a role in its injury.  This is a specious argument

25  that has already been rejected.  *See* Dkt. No. 142 at 8.

26         In any case, and as an initial matter, the question for purposes of determining

27  relation-back is not Mattel's knowledge during the earliest period of time from

28  early 2001 through 2002.  Rather, the question whether the doctrine of added-party

1    relation-back is being abused must be viewed in light of everything Mattel knew

2    right up until the time it filed its lawsuit in April 2004, and even after.  *See Powers*

3    *v. Graff*, 148 F.3d 1223 (11th Cir. 1998).  A decision to sue only certain defendants

4    and not others would not entitle Mattel to make a later Doe substitution (or

5    otherwise avail itself of Rule 15(c)(1)(C)).  *Nelson*, 529 U.S. at 467 & n.1;

6    *Louisiana-Pac. Corp. v. ASARCO, Inc.*, 5 F.3d 431 (9th Cir. 1993); *see also* 6A

7    WRIGHT, MILLER & KANE, *Federal Practice and Procedure* §1498.3 ("tactical

8    decisions by plaintiffs as to whom to sue do not constitute mistakes at all for

9    purposes of the rule"); *Shea v. Esensten*, 208 F.3d 712 (8th Cir. 2000).  Thus, the

10   Court must take into account all of the pertinent facts in order to assess whether

11   Mattel's actions were the result of a mistake.

12          In April 2004, Mattel knew it had been harmed by all of the parties it later

13   sought to add.  Consistent with its January 2002 "New Brand Cannibalization

14   Study" (Depo. Ex. 9444; Admitted TX 26554), Eckert admitted that one of Mattel's

15   theories of harm at the time of its April 2004 filing was that it had lost sales of its

16   own products due to MGA's sale of Bratz products.  Thus, as of April 2004,

17   Mattel's claim of harm was not limited simply to having been deprived by Bryant

18   of his drawings:

19          Q.    When Mattel filed suit against Carter Bryant in
                  April 2004, you believed that one of the forms of harm
20                that had been suffered by Mattel was that it had lost sales
                  of its products in favor -- and had lost them to sales of
21                Bratz products; isn't that right?

22          A.    Yes, I believe that. (Eckert Depo. 91:21-92:4)

23          Consistent with this testimony by Eckert, Mattel alleged throughout its April

24   27, 2004 Complaint that it had been harmed by purportedly unknown defendants

25   MGA, MGA HK and Larian, when it alleged that "[t]he other defendants, acting

26   with full knowledge of Bryant's obligations to Mattel, aided and abetted Bryant in

27   such wrongful conduct" (Bryant Complaint ¶¶24, 32), "defendants" had "unfairly

28   used and diverted Mattel property" (*id.* ¶36), and "wrongfully converted Mattel

1   property" including "ideas, concepts, rights, designs, proprietary information, and

2   other intellectual property and intangible property created by Bryant" (*id.* ¶¶41, 42).

3   Mattel sought actual and exemplary damages and disgorgement related to these

4   allegations. *Id.* at 11 (Prayer for Relief).

5         Mattel knew by April 27, 2004 that these "defendants" were at least MGA

6   and Larian.  The most obvious evidence of this fact is that Mattel obtained, no later

7   than November 2003, a copy of the contract between MGA and Bryant, dated "as

8   of September 18, 2000," which assigned Bryant Work Product to MGA.  *See*

9   1/18/11 Trial Tr. Vol. 1 49:20-51:13 (Mattel's Opening Statement); *see also* TX 15;

10  Dkt. No. 2504 (M. Moore Decl.).  The contract was signed by Larian on behalf of

11  MGA, and Bryant was still employed by Mattel on the "as of" date.  *See* TX 15.

12  Mattel also obtained copies of Bryant's drawings in November 2003.  1/18/11 Trial

13  Tr. Vol. 1 49:20-51:13 (Mattel's Opening Statement).  Consequently, when it filed

14  the Bryant state court complaint, Mattel knew that Bryant had assigned his

15  intellectual property to MGA, that Larian had effectuated that assignment on behalf

16  of MGA, and Mattel could easily have named MGA and Larian as defendants who

17  "acting with full knowledge of Bryant's obligations to Mattel, aided and abetted

18  Bryant in such wrongful conduct" (Mattel's 2004 Complaint ¶¶24, 32), or "unfairly

19  used and diverted Mattel property" (*id.* ¶36), or "wrongfully converted Mattel

20  property" including "ideas, concepts, rights, designs, proprietary information, and

21  other intellectual property and intangible property created by Bryant" (¶¶41, 42).

22        Of course, Mattel knew the key facts long before November 2003.  Indeed,

23  by February 2001 Mattel knew that MGA intended to release Bratz later that year,

24  Ex. 9502 at M 1679874,[5] and also that Mattel had considered and rejected use of

25  the name "brats" as part of its Diva Starz product naming process.  TX 314, TX

26  316; 1/19/11 Trial Tr. Vol. 1 28:16-32:14 (testimony of Lilly Martinez); 1/26/11

27  _____

28  [5] As of this writing, this document is not yet in evidence given that it pertains to
MGA's affirmative case.  As this case has been tried, MGA could not seek its
admission during Mattel's case-in-chief.

1   Trial Tr. Vol. 3 12:24-16:10 (testimony of Steve Linker); *see also* Fontanella Depo.

2   150:2-12; Pratte 30b6 Depo. 68:1-16; Ongchangco 30b6 Depo. 33:2-22, 200:23-

3   202;11, 205:16-22, 232:6-233:21, 234:25-236:3; Linker Depo. 34:10-36:14, 38:3-

4   42:8, 43:4-18.

5       By April 2001 Mattel had seen depictions of the Bratz products marketed by

6   MGA and by the summer of 2001 had seen the products themselves on the market

7   in both Spain and the United States.  TX 9856, TX 16925-15; 2/16/11 Trial Tr. Vol.

8   2 44:14-49:14 (testimony of Isaac Larian).

9       Then, right on the heels of MGA's product introduction, by August 21, 2001,

10  Mattel's Vice-President Matt Turetzky had specifically identified in a memo to his

11  boss, SVP of Strategy Jerome Bossick, that all three of MGA, Larian and MGA HK

12  were targets for Mattel's concern about thefts of proprietary information.  Ex.

13  26701.[6]  This document was only recently produced (even after Turetzky's

14  deposition), and clearly would have been a game-changer if it had been available

15  sooner.

16      In late 2001 Mattel commissioned its New Brand Cannibalization Study

17  (Melanie Phillips SJ Decl. Ex. 70 (Cory Schwartz 11/1/2001 letter M 1892703-04)

18  and by January 14, 2002 had published that study, detailing harm caused by the

19  sales of MGA's Bratz products to Mattel's sales of products targeted to older girls.

20  TX 26554; 3/3/11 Trial Tr. Vol. 3 12:15-14:25 (testimony of Robert Eckert).

21      By February of 2002, Mattel's Chief IP Counsel had received a resume of a

22  former Mattel employee, Mercedeh Ward, who left Mattel at about the same time as

23  Carter Bryant.  The MGA experience described on that resume made clear that

24  MGA HK was deeply involved in the production of MGA's then-new doll line

25  (Bratz).  Ex. 8154.[7]

26  ───────────────

[6] This exhibit too has yet to be admitted as of this writing.  MGA submitted this

27  exhibit in connection with its Opposition to Mattel's Motion for Partial Summary
    Judgment as Warrington Parker SJ Decl. Ex. 47, Dkt. No. 9085.

28  [7] MGA submitted this exhibit in connection with its Opposition to Mattel's Motion
    for Partial Summary Judgment as Warrington Parker SJ Decl. Ex. 45, Dkt. No.

1    Turetzky and Bossick's concerns reflected in the August 2001 memo also

2    led, by early 2002, to the articulation of a corporate goal to increase security vis-à-

3    vis MGA.  Mattel identified as a 2002 corporate goal a "process to improve

4    confidentiality" (Ex. 9442[8] at 502, 503, 504), that by VP Turetzky's admission was

5    specifically motivated by Mattel's concerns regarding MGA.  Turetzky Depo. at

6    80:2-10.

7    Mattel's March 2002 investigative file again identified Larian as the owner of

8    MGA, and both Larian and MGA as a "Suspect" in the "Theft" of "Proprietary

9    Information."  TX 1195RS; 3/3/11 Trial Tr. 3/3/11 Trial Tr. Vol. 1 96:3-101:13,

10   102:13-119:3.

11   By August 2002, Mattel's CEO (Eckert), SVP of Human Resources (Kaye)

12   and VP of Security (de Anda) had all reviewed an August 2002 anonymous letter

13   specifically identifying MGA as having committed an alleged wrongdoing

14   involving Bryant.  TX 1193; 3/3/11 Trial Tr. Vol. 1 89:18-91:8 (testimony of

15   Robert Eckert); Eckert Depo. 721:10-722:3, 731:19-732:21; Kaye Depo. 390:19-

16   20; De Anda Depo 225:9-14, 446:4-451:12.

17   By October 2002, Mattel indisputably knew that Bryant was the creator of

18   Bratz, and by that point it was a "widespread belief" within Mattel including in

19   "executive level" discussions that Bratz had been inspired by Toon Teens, Diva

20   Starz or both.  Ex. 4436 (also identified as Depo Ex. 9441); Turetzky Depo. 50:18-

21   52:22, 56:7-24, 57:17-58:4.

22   By July 18, 2003 with the publication of the article in the *Wall Street

23   Journal*, it was public knowledge that Bryant was the creator of Bratz and that

24   MGA and Larian had been directly involved in working with him on that product.

25   TX 1C (WSJ Article); 1/18/11 Trial Tr. Vol. 1 49:20-50:4 (Mattel's Opening

26   Statement).

27   9085.

28   [8] This too is a trial exhibit that has yet to be admitted.  MGA filed this exhibit in
connection with its summary judgment papers.

1       By November 2003, Mattel knew that Bryant had entered into a contract "as

2 of September 18, 2000" assigning Bryant Work Product to MGA, that Larian had

3 signed that contract on behalf of MGA (*see* TX 15 at 15-006), and that Bryant was

4 at the time of that contract still employed by Mattel.  Bryant Complaint ¶¶ 12-13;

5 Dkt. Nos. 2504-4, 2504-5 (M. Moore Decl.).

6       Thus, long prior to April 2004, Mattel had confirmed that the "competitor"

7 whom it ultimately declined to name in its Bryant complaint was MGA, and that

8 Isaac Larian, its CEO, was a "suspect" in the "theft of proprietary information" who

9 had signed the contract with Bryant providing for his transfer of Bryant Work

10 Product *while he was still employed by Mattel*, and that MGA HK was an "affiliate

11 office" of MGA responsible for its production of Bratz.  Mattel did not and cannot

12 demonstrate that the respective roles of MGA, Larian and MGA HK were unknown

13 to Mattel and that such omission from its Bryant Complaint was a "mistake."

14       Indeed, even *after* Mattel stipulated to permit MGA to intervene for

15 "procedural purposes only," Mattel *still* did not amend to name MGA, Larian or

16 MGA HK.  Rather, it continued to take the position, as it then explained to the

17 Ninth Circuit, that it was *not* pressing affirmative claims against MGA.

18       Deliberate tactics are the only conceivable explanation for this course of

19 conduct.  Mattel made a deliberate choice not to name MGA, Larian and MGA HK

20 in its April 2004 filing.  The Bryant Complaint euphemistically identifies and

21 accuses MGA, Larian and MGA HK of all of the actions that it later "amended" to

22 assert against them.

23       Mattel has never offered any legitimate explanation as to what it didn't know

24 on April 27, 2004 that it supposedly later learned between April 28, 2004 and

25 November 2006 to justify its belated "substitution" of MGA, MGA HK and Larian

26 for Doe defendants.  Indeed, Mattel offers no such specific explanation even to this

27 day.  The only explanation it has ever offered has already been rejected by the

28 Court.  *See* Dkt. No. 142 at 8.

MGA PARTIES' BRIEF RE RELATION BACK
CV 04-9049 DOC (RNBx)

D.   **Mattel's Amended Claims Were Permissive Claims To MGA's Complaint And Therefore Do Not Relate Back.**

Only claims that are compulsory counterclaims relate back to the original pleading in the case in which they are filed.  Permissive counterclaims do not.  Fed. R. Civ. P. 13(a); Fed. R. Civ. P. 15(c); *Employers Ins. of Wausau v. United States*, 764 F.2d 1572, 1576 (Fed. Cir. 1985).  Mattel's counterclaims are not compulsory claims to MGA's complaint.

MGA's complaint alleges that Mattel—following the release of Bratz (and therefore from 2001 and after)—engaged in serial copying of MGA trade dress and other acts of unfair competition (such as pressuring retailers) "to create confusion in the marketplace, interfere with MGA's business . . . ."  MGA Complaint ¶ 72; *see also* ¶¶ 74-97.  These claims bear no relation to Mattel's allegations of theft of trade secrets in Mexico and Canada, of interference with contract of Mattel employees, of aiding and abetting the breach of the duty of loyalty, and a RICO violation.

In determining whether claims are compulsory, the Ninth Circuit asks whether "the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all of the issues be resolved in one lawsuit."  *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987).  To state it otherwise, claims are compulsory when they share a "logical relationship," meaning that "the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as a basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights . . . ."  *In re Lazar*, 237 F.3d 967, 979 (9th Cir. 2001).   Here that test cannot be met.

A trade dress claim concerning, My Scene or Wee 3 Friends or Little Mommy Potty Training Baby bears no common factual basis with theft of trade secrets in Mexico or Canada.  Case No. 05-cv-2727 Dkt. No. 1 ¶¶ 23, 34-40 (My Scene Dolls); ¶¶ 41-46 (My Scene packaging); ¶¶ 48-50, 53, 60 (My Scene theme);

¶¶ 51 (My Scene commercials); ¶ 59 (My Scene pets); ¶ 68 (Wee 3 Friends); ¶ 69 (Little Mommy Potty Training Baby Doll); ¶ 70 (AcceleRacerS).  Similarly, whether MGA allegedly aided and abetted Mattel employees to breach their duty of loyalty bears no relationship to MGA's claims of trade dress or even unfair competition, which turns on Mattel's attempts to force MGA out of the market by threatening retailers and those involved in the toy industry.

As courts have recognized, the fact that there are multiple disputes between two companies does not render the claims between the two compulsory. *Conceptus, Inc. v. Hologic, Inc.*, 2010 WL 1460162 *1 (N.D. Cal. Apr. 12, 2010); *Utilx Corp. v. Novimium, Inc.*, 2009 WL 3517576 (W.D. Wash. Oct. 27, 2009). This is true even when the claims alleged concern the same type of improper acts. *Conceptus, Inc.*, 2010 WL 1460162 *1.  Mot. at 20-21.

In addition, while Mattel claims that the trade dress and trade secret claims read on each other, they do not.  Mot. at 20-21.  MGA's trade dress claims arises from facts that post-date any claimed trade secret misappropriation of Bratz. MGA's trade dress claim also concerns what was public and what Mattel was copying.  Mattel's trade secret claim depends on proof that the elements it identifies were secret prior to its disclosure.  They are two very different claims.  They are different temporally.  They are different in terms of what must be shown.  Mattel must show that whatever elements it claims are trade secret were trade secret before disclosure in 2000.  MGA needs to show for trade dress that Mattel copied what was already disclosed in the marketplace.

### E.   The Bratz Trade Secret Is Not Entitled To Relation Back.

Mattel argues that its claim that Bratz is a trade secret and as a specific claim should relate back as a discrete claim.  Mot. at 19.  Then, Mattel claims that it should relate back to its April 2004 Bryant complaint.  *Id.* at 20.

However, as an initial matter, there remains the issue of whether Mattel should have been allowed to plead Bratz as a trade secret at all.  Mattel, in fact, did

MGA PARTIES' BRIEF RE RELATION BACK
CV 04-9049 DOC (RNBx)

1   not identify Bratz as a trade secret until July 2009.  Mattel claims that it did so in its

2   proposed amendment in November 2006, what was filed as its Amended Answer

3   and Counterclaims in January 2007, but it did not.  The most salient fact perhaps is

4   that Mattel did not sue Carter Bryant for trade secret misappropriation.  But also

5   one just needs to read the AAC to see that, in fact, Mattel did not identify Bratz as a

6   trade secret or allege it as such.  *See* Statement of Facts, Part C, *supra*.

7          In addition, the pleading itself is not the only measure of the scope of

8   Mattel's claims.  *See* Statement of Facts, Part E, *supra*.  Mattel did not identify

9   Bratz as a trade secret in discovery until July 2009.  Mattel informed the Discovery

10  Master as to the dates that trade secrets were stolen and that could not have

11  included Bratz.  Mattel has no response or explanation for these fatal discrepancies.

12         The only thing that Mattel offers is its statement to the Court at the May 23,

13  2008 Pretrial Conference.  Mot. 16-19.  Mattel claims that Mattel was merely

14  discussing trademark law in the Pretrial Conference and that Mattel has never

15  disclaimed its ownership interest in the name Bratz.  Instead, Mattel claims that it

16  was using "proprietary" merely to indicate ownership.  Mot. 16 (discussing as a

17  matter of trademark law); Mot. at 17 (Mattel did not disclaim ownership); Mot. at

18  19 (Mattel has consistently claimed a property interest in Bratz as defining

19  proprietary as ownership).

20         However, what is clear from the Pretrial Conference Order is that Mattel was

21  *not* discussing trademark law and it was *not* using "proprietary" to mean ownership

22  as it now claims.  As to the issue of trademark law, MGA counsel did mention

23  trademark law.  But as noted by MGA counsel, "they're not adding a trademark

24  claim . . . ."  5/23/08 Pretrial Conference Tr. 77:18.  So, he moved onto another

25  subject: "It was just that the name Bratz was apparently proprietary to Mattel."  *Id.*

26  77:21-22.  So when Mattel responded.  It could not have been discussing trademark

27  law.  That was off the table.

28         As for Mattel's contention that it was using "proprietary" to mean ownership,

MGA PARTIES' BRIEF RE RELATION BACK
CV 04-9049 DOC (RNBx)

1   that just cannot be.  At the Pretrial Conference, Mattel said that "we have not said

2   that the name Bratz is, quote, *proprietary*, end quote, to Mattel.  That is not the

3   basis of our theory."  5/23/08 Pretrial Conference Tr. 79:20-22.  Moments later

4   Mattel stated that Bratz "is among the inventions that [Bryant] created.  *And*

5   *therefore, we own it.*"  5/23/08 Pretrial Conference Tr. 79:25-80:1.  If "proprietary"

6   means ownership—which is what Mattel now says—then in that one statement

7   Mattel disclaimed ownership—the name is not proprietary—and in the same breath

8   claimed that it owned it.  Mattel's twisting of the facts defeats itself.

9       All of this is important because leave to amend the Fourth Amended

10   Complaint to add Bratz as a trade secret should have been denied.  This was not just

11   a matter of general pleading, as Mattel argues.  Mot. at 9-12.  As Mattel's own

12   argument makes clear a party is put to a choice:  make it clear in a complaint or

13   disclose it in discovery.  *See* Mot. at 10 (quoting *Ross Island Sand & Gravel Co. v.*

14   *Gen'l Ins. Co. of Am.*, 472 F.2d 750, 752 (9th Cir. 1973)).  Mattel did neither.

15       Instead, Mattel delayed for years and years.  Mattel did so in bad faith, as we

16   have already argued before this Court.  Dkt. No. 7960 (Opp. to Mot. for Leave to

17   Amend) at 16-20; Dkt. No. 7850 (Opp. to Mot. to Confirm") at 9-13.  And in any

18   case, Bratz as a trade secret is a permissive claim.

19   **II.    THE EQUITABLE TOLLING DOCTRINE DOES NOT APPLY AND**
     **NO OTHER TOLLING SHOULD BE ALLOWED.**

20

21           **A.    The Equitable Tolling Doctrine Does Not Apply.**

22       For the first time in this case, and despite Mattel's various claims that the

23   issue of statute of limitations has been addressed over and again, Mattel now claims

24   that the equitable tolling doctrine should be applied to save its claims.  But it

25   cannot.  Equitable tolling will not save Mattel because Mattel delayed bringing its

26   claims.

27       As Mattel notes, the equitable tolling doctrine applies when there is (1)

28   timely notice to the defendant in filing the first claim; (2) lack of prejudice to the

- 32 -

1   defendant in gathering evidence to defend against the second claim; and (3) good

2   faith and reasonable conduct by the plaintiff in filing the second claim.  Mot. at 25.

3     Even assuming arguendo that the first two prongs are satisfied, Mattel cannot

4   meet the third requirement.  And the failure to meet the third factor is fatal to the

5   argument even if Mattel can satisfy the first two factors.  *See, e.g.*, *Ervin v. County*

6   *of Los Angeles*, 848 F.2d 1018, 1020 (9th Cir. 1988) (finding that equitable tolling

7   doctrine did not apply due to delay even were there timely notice and lack of

8   prejudice).

9     Mattel did not seek to amend its claims for two and a half years after it filed

10   suit against Bryant.  It did not seek to add Bratz as a trade secret in a complaint

11   until six years after filing suit against Bryant (and it disclosed it as a trade secret

12   five years after filing suit).  That is a delay that is both unwarranted and

13   inexplicable.  And even if one were to assume that Mattel alleged Bratz as a trade

14   secret in its proposed amendment in November 2006, a two and half year delay

15   simply precludes application of the equitable tolling doctrine.  As the Court noted

16   in *Ervin*, even a one and a half year delay precludes application of the doctrine.

17   848 F.2d at 1020; *see also Wang & Wang LLP v. Banco Do Brasil, S.A.*, 2008 WL

18   5070133 (E.D. Cal. Nov. 26, 2008) (refusing to apply equitable tolling doctrine due

19   to delay and noting that "[t]he statute is not tolled while a plaintiff searches for

20   evidence to make out its case").

21     Mattel's answer to this is to argue that the third prong has been met because

22   "[t]he Court has already determined that Mattel did not act in bad faith or engage in

23   spoliation before filing its November 20, 2006 misappropriation claim."  Mot. at

24   26.  But that is beside the point, and actually ignores what the Court found on the

25   score of delay.  What the Court found is that Mattel's delay in bringing these claims

26   was unwarranted and could not be justified by Mattel.  The Court rejected Mattel's

27   argument that Mattel had to delay until it had evidentiary support.  Dkt. No. 142 at

28   7-8.  The Court rejected the argument that the stay justified the delay.  Dkt. No. 142

at 7-8.  So, a finding of unjustified delay has already been made.  And this finding destroys the equitable tolling argument.

And since that time, the evidence that the delay was unjustified has steadily accumulated.  As noted above, Mattel absolutely knew of the facts giving rise to its trade secret claims—particularly as to Bratz—for years and years and even before filing the Bryant complaint in 2004.  Moreover, as noted, if Mattel seriously contends that the MGA Parties were on notice of its claims due to the allegations of the Bryant complaint, Mattel had to have been on notice of the same set of facts and allegations. There could be no reason to hold the MGA Parties to a higher level of understanding than the party that brings the claim.

**B.    No Tolling Should Be Allowed For The Stay.**

Mattel asks for tolling for the 362 day period that the case was stayed.  Mot. at 22.  However, Judge Larson has already determined that "[t]he stay . . . did not operate as an obstacle to Mattel asserting its claims . . . ." Dkt. No. 142 at 8.  This Court should not revisit that finding.  Indeed, Mattel does not ask this Court to do so.  It just simply ignores that finding.

## CONCLUSION

For the reasons stated above, neither the relation back doctrine nor the equitable tolling doctrine apply.

Dated:      March 10, 2011          ORRICK, HERRINGTON & SUTCLIFFE, LLP


By:*/s/ Warrington S. Parker III*
                    Warrington S. Parker III
                    Attorneys for MGA Parties