1

1

2

3

4                 UNITED STATES DISTRICT COURT

5                CENTRAL DISTRICT OF CALIFORNIA

6                      SOUTHERN DIVISION

7                          - - -

8       THE HONORABLE DAVID O. CARTER, JUDGE PRESIDING

9

        MATTEL, INC., et al.,
10                      Plaintiffs,
           vs.
11
                                    CV-04-9049-DOC
12       MGA ENTERTAINMENT, INC.,   DAY 31
         et al.,                    Volume 3 of 3
13                      Defendants.

14       --------------------------

15

16

17            REPORTER'S TRANSCRIPT OF PROCEEDINGS

18                  Santa Ana, California

19               Thursday, March 10, 2011

20

21
                         SHARON A. SEFFENS, RPR
22                       United States Courthouse
                         411 West 4th Street, Suite 1-1053
23                       Santa Ana, CA  92701
                         (714) 543-0870
24

25

            SHARON SEFFENS, U.S. DISTRICT COURT REPORTER

```
 1   APPEARANCES OF COUNSEL:

 2   For Plaintiff MATTEL, INC., ET AL.:

 3   JOHN B. QUINN
     MICHAEL T. ZELLER
 4   WILLIAM PRICE
     QUINN EMANUEL URQUHART & SULLIVAN, LLP
 5   865 South Figueroa Street, 10th Floor
     Los Angeles, CA  90017
 6   (213) 443-3000

 7   For Defendant MGA ENTERTAINMENT, INC., ET AL.:

 8   THOMAS MCCONVILLE
     ORRICK HERRINGTON & SUTCLIFFE LLP
 9   4 Park Plaza, Suite 1600
     Irvine, CA  92614
10   (949) 567-6700

11   ANNETTE HURST
     ORRICK, HERRINGTON & SUTCLIFFE LLP
12   The Orrick Building
     405 Howard Street
13   San Francisco, CA  94105
     (415) 773-4585
14
     KELLER RACKAUCKAS LLP
15   JENNIFER L. KELLER
     18500 Von Karman Avenue, Suite 560
16   Irvine, CA
     (949) 476-8700
17

18   FOR CARLOS GUSTAVO MACHADO GOMEZ:

19   MARK E. OVERLAND
     100 Wilshire Boulevard, Suite 950
20   Santa Monica, CA  90401
     (310) 459-2830
21

22   ALEXANDER COTE
     SCHEPER KIM AND HARRIS LLP
23   601 West Fifth Street, 12th Floor
     Los Angeles, CA  90071-2025
24   (213) 613-4655

25
```

SHARON SEFFENS, U.S. DISTRICT COURT REPORTER

3

```
1    ALSO PRESENT:

2    MGA ENTERTAINMENT, INC.
     JEANINE PISONI
3    16360 Roscoe Boulevard, Suite 105
     Van Nuys, CA  91406
4

5    ALSO PRESENT:

6    ISAAC LARIAN, MGA CEO

7    KEN KOTARSKI, Mattel Technical Operator

8    MIKE STOVALL, MGA Technical Operator

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

SHARON SEFFENS, U.S. DISTRICT COURT REPORTER

4

1

2                                    INDEX

3                                                              PAGE

4    PLAINTIFF'S
     WITNESSES:              DIRECT      CROSS    REDIRECT    RECROSS
5

6    HEATHER MCCOMB

7      (Continued)                                5(Q)

8    PLAINTIFF'S
     EXHIBITS:                        MARKED           RECEIVED
9
      (None)
10

11   DEFENSE
     WITNESSES:           DIRECT    CROSS    REDIRECT    RECROSS
12

13    (None)

14   DEFENSE
     EXHIBITS:                        MARKED           RECEIVED
15

16    (None)

17

18

19

20

21

22

23

24

25

```
 1    SANTA ANA, CALIFORNIA; THURSDAY, MARCH 10, 2011; 3:45 P.M.
 2              (Jury present.)
 3       HEATHER MCCOMB, PLAINTIFF'S WITNESS, PREVIOUSLY SWORN
 4                REDIRECT EXAMINATION (Continued)
 5    BY MR. QUINN:
 6    Q    So could you tell what it is about Carter Bryant's
 7    drawings which provided more information -- or which I
 8    gather were more helpful to a doll designer than what you
 9    had in the case of the Little Mermaid?
10    A    Well, I could see the body of course.  We got that,
11    which is very, very distinctive in this product line.  You
12    could see that very clearly in his drawings.  You could also
13    understand the clay and the look of all the fashions.  You
14    could you really see the face and hair, things a little bit
15    better that you can in the animation but especially in the
16    body.  A nice straight front view, I remember we had that
17    and the head sculpt.
18    Q    If drawings are used by a company that plans on making
19    a doll out of those drawings -- if they are used actually to
20    go to retailers and are used in the selling process, what
21    does that tell you in terms of the importance or commitment
22    that the doll manufacturer has made or attachments to those
23    drawings?
24              MS. HURST:  Objection.  Improper opinion, beyond
25    the scope of cross.
```

1              THE COURT:  I will give both of you some room.

2    Just reask the question.

3    BY MR. QUINN:

4    Q    If the drawings are actually used by the company that

5    plans on making them into a doll to go to retailers like

6    Target or K-Mart, places like that, and actually uses it as

7    a basis to see if they can get orders and make sales, what

8    does that tell you about the importance of those drawings in

9    terms of the doll?

10             THE COURT:  I will sustain the objection.  I want

11   to confine her to her expertise as to the development of the

12   sculpt, the drawings, how mature the drawings are, play

13   style, the theme that goes with the drawings.

14   BY MR. QUINN:

15   Q    Would you expect that if the sculptor is creating a

16   sculpt that the sculptor would be provided with the

17   drawings?

18   A    Yes.

19   Q    With the expectation that the sculptor would try to

20   stay true to the drawings?

21   A    Yes, that's exactly what you do when you hire the

22   sculptor.  Here it is.  There is a lot of conversation

23   between the product development person and the sculptor, and

24   the sculptor knows that they may be a fine sculptor to do

25   something, but in this case, they are engaged to take that

1    2-D into 3-D.  There are many design meetings along the way

2    to critique the sculpt and get it back if it has drifted a

3    little bit, get it back to where it needs to be so you can

4    fulfill the product that you see in the drawings.

5              MR. QUINN:  Thank you.

6              THE COURT:  Recross-examination, Ms. Hurst?

7              MS. HURST:  No further questions, Your Honor.

8              THE COURT:  We are asking all the witnesses to

9    remain on call until May 2.  Subpoenas are served across the

10   country.  If you have any professional obligations, any

11   vacations, please go ahead with those.

12             THE WITNESS:  That would be fine.

13             THE COURT:  Thank you very much.

14             Counsel, your next witness, please.

15             MR. QUINN:  Your Honor, could we have a

16   discussion?

17             THE COURT:  Certainly.

18             Ladies and gentlemen, why don't you go take a

19   recess for just a moment, and we will come and get you.

20   That way we can stay on the record without moving the court

21   reporter.

22             Once again you are admonished not to discuss this

23   matter nor to form or express any opinion concerning the

24   case.

25             (Jury not present.)

8

```
 1              THE COURT:  The jury is not present.  The
 2    alternates are not present.
 3              Mr. Quinn.
 4              MR. QUINN:  Your Honor, we are ready to rest
 5    subject to these document custodian issues.  We have some on
 6    the Mattel side, as well as on the MGA side.  We are not
 7    sure whether the Court wants us to rest and be prepared
 8    to -- subject to that or whether we should be trying to nail
 9    down these custodian issues.
10              THE COURT:  It's up to the two of you.
11              MR. QUINN:  We have -- as the Court knows, we have
12    been endeavoring -- making efforts in that regard in
13    conversation with MGA's counsel for some time, and --
14              THE COURT:  The record should reflect that the
15    dispute between counsel is this.  MGA is willing to
16    stipulate to the foundation but not the authenticity,
17    Counsel?
18              MS. HURST:  It's argument about admissibility and
19    relevance --
20              THE COURT:  I think that is also going to be
21    Mattel's position with your documents, so it's simply a
22    matter of whether they come into evidence or not.  It's
23    simply a matter for argument.  The relevancy of some of
24    those documents may be in question between counsel.
25    Frankly, I don't think that is going to make any difference
```

1    concerning Rule 50.

2              In fact, my intent probably is to reserve most of

3    those, although I do want to hear from Mr. Cote and

4    Mr. Overland certainly if you like concerning Rule 50, and I

5    want to afford you a briefing schedule.

6              I am open to any suggestion, Mr. Quinn, and Ms.

7    Hurst.

8              MS. HURST:  The only concern I have is that -- of

9    course we have been discussing large binders of MGA

10   documents, and we don't have any concern at all about those

11   in terms of foundation and their authenticity or whatever,

12   but this is the first time I have ever heard them talking

13   about a Mattel custodian of records for their own documents.

14             So now if we are talking about they have got a

15   whole bunch of their documents that they want to put in

16   without any sponsoring witness, I don't know what that

17   means.  As far as our documents are concerned, as we have

18   indicated, we will stipulate.  You know, it's just an

19   argument about admissibility.  We will stipulate to

20   authenticity.  It's just argument about admissibility and

21   relevance.

22             THE COURT:  You keep referring to your documents.

23             MS. HURST:  Right.

24             THE COURT:  That's a little self-serving from what

25   I'm hearing.

1        MS. HURST:  No, no, I mean MGA documents.  I don't

2   mean our in the sense of things we want to offer.  I just

3   mean things that have an MGA Bates stamp on it.  That's all

4   I mean.

5        THE COURT:  In other words, if it has an MGA Bates

6   stamp and it's been turned over to Mattel, the authenticity

7   is not in question?

8        MS. HURST:  Right, with the exception of the

9   Mexican CD, but we have been around the block on that.

10       THE COURT:  And that was not a favorable ruling to

11  you.  I have received that.

12       MS. HURST:  Correct.

13       THE COURT:  So the question is what I am going to

14  let in.

15            Knowing Mr. Zeller and counsel, what telephone

16  books do you have for me?  I am just joking, Mr. Zeller.

17  How much material is in dispute between the two of you?

18       MR. ZELLER:  It's the materials that I started to

19  go through.  It's probably about three binders I would say

20  of materials.  We have actually been talking to I think

21  Mr. McConville and others about both our materials and

22  theirs.

23       THE COURT:  Now, would it be acceptable then to

24  both parties that I simply delay that receipt and that

25  discussion so that we can keep the case moving, and does it

|    |                                                                                    |
|----|------------------------------------------------------------------------------------|
| 1  | make any substantial difference in terms of your Rule 50?                          |
| 2  | In other words, if I rule against you on behalf of Mattel,                         |
| 3  | how damaging is that, and if I rule against MGA on some                            |
| 4  | portion of the materials, how damaging is that?                                    |
| 5  | What I don't want to do is be caught in this bind,                                 |
| 6  | and, that is, the expectation that this is coming in, and                          |
| 7  | you could have called persons to substantiate it.  That's                          |
| 8  | not fair to Mattel, and MGA is going to find themselves in                         |
| 9  | the same co-equal position with their documents.  Meanwhile,                       |
| 10 | the clock keeps running.                                                           |
| 11 | MR. ZELLER:  Part of it has to do with this                                        |
| 12 | indirect response to the Court's question about how                                |
| 13 | damaging -- probably the principal issue where it would                            |
| 14 | be -- the principal category is really this product.                               |
| 15 | THE COURT:  The 1,300 exhibits?                                                    |
| 16 | MR. ZELLER:  Yes.  In the sense of -- you recall                                   |
| 17 | on summary judgment MGA did make that into an issue about us                       |
| 18 | not putting all that in.  We obviously then dealt with it,                         |
| 19 | but we don't want to have a reprisal of that situation.                            |
| 20 | MS. HURST:  We stipulated to the admissibility of                                  |
| 21 | that.  We have gone beyond authenticity on the product.  We                        |
| 22 | have agreed it's coming in on behalf of both parties, and we                       |
| 23 | are going to set it up in the room.                                                |
| 24 | THE COURT:  By the way, I have got another room                                    |
| 25 | for you, an even better room.  It's actually a room that I                         |

```
 1   think will not only hold the jury, but it will also hold
 2   your product.  I think I am going to be able to take another
 3   judge's chambers over and set up the entire work room so
 4   that you have the product surrounding the jury, and they
 5   won't even have to walk down the hallway.
 6             I am going to need a lot of help from both of your
 7   staff just moving it out of the court.  I think you are
 8   going to be extraordinarily pleased.  The seventh floor is
 9   just two floors away, and I think the jury is going to be
10   discouraged from looking at the items.  So there are two
11   ways to handle that.  We can put them in boxes, which I
12   prefer not to do, or we can set them up on shelving as each
13   of you suggested and have them in close proximity, which is
14   down the hallway.  I think we can set up the entire chambers
15   for them, and I want to show that to you tonight.  I think
16   you will be very pleased.
17             Two more things, I still don't have any indication
18   how I am going to resolve this.  Mr. Zeller, Ms. Hurst, or,
19   Mr. McConville, as you rise from your seats --
20             (Counsel conferring.)
21             THE COURT:  Mr. Machado, I had written to the
22   judge in Mexico asking for his permission to have you come
23   to the country.  The Court is going to write another letter
24   back to my colleague thanking him for his courtesy.
25   Mr. Overland indicated yesterday that you would be flying
```

 1    back to Mexico tomorrow.

 2              MR. MACHADO:  That's correct, Your Honor.

 3              THE COURT:  Up to this time, I was going to read

 4    an instruction that indicated that whether you were present

 5    or not would have no bearing on these proceedings.  I don't

 6    think that that instruction is any longer necessary, but I

 7    want to hear from Mr. Overland.

 8              MR. OVERLAND:  No, Your Honor, it's not requested.

 9              THE COURT:  That's not requested, so I will take

10    that out of the jury instruction packet.

11              Second, I can't tell you how important if this

12    case goes to verdict concerning your case that you are here.

13    20 percent of the trial has nothing to do with the record.

14    It's simply the small things that happen in the court that

15    can't be defined, and they are never captured on the record.

16    I think your presence would be well-taken during the

17    argument minimally.  I leave that to you.

18              I'm going to order you back because, but I first

19    recognize that my jurisdiction probably doesn't extend

20    beyond that doorway, although it is supposed to, but

21    certainly it's in the United States.  It doesn't extend to

22    Mexico.  So I'm going to order you back, but I want to make

23    that as convenient as possible.  You will consult with

24    Mr. Cote and Mr. Overland, but I am also going to encourage

25    in every way if your matter does go to verdict that you're

1   present.

2            MR. MACHADO:  I will be here.

3            THE COURT:  Okay.  Thank you very much.

4            Mr. Overland, is there anything else you would

5   like me to cover this evening with your client?

6            MR. OVERLAND:  No, Your Honor.

7            THE COURT:  Mr. Cote?

8            MR. COTE:  No, Your Honor.

9            THE COURT:  We just simply will not see you

10   tomorrow.  I won't make any comment.  We wish you the best

11   of flights back home and then back to the United States.

12            Ms. Hurst.

13            MS. HURST:  I hope I state this correctly.  The

14   agreement is they are resting subject to the contents of the

15   binders that have been identified directly to the Court.  We

16   can make our Rule 50 motions.  They can point to the

17   contents of those binders in opposition to the motions, and

18   we can have our dispute about relevance or admissibility or

19   whatever in that context.  If necessary, they can later call

20   custodial witnesses out of order should it become necessary.

21            THE COURT:  Mr. Zeller, is that fair?

22            MR. ZELLER:  That is.

23            THE COURT:  Okay.

24            MS. HURST:  At a time it's convenient and not

25   disruptive.

1           THE COURT:  The jury doesn't need to know about

2    this.  This is just an agreement between the parties.

3           MR. ZELLER:  This applies to both sides'

4    documents, both MGA's records as well as Mattel's records.

5           THE COURT:  All right.  I want you fresh for your

6    arguments, Mr. Zeller, and also, Ms. Hurst, on Sunday.  I

7    want to set up a schedule now.  Instead of 8:00, I would

8    like to start the binder preparation as early as tomorrow

9    night.  I expect that MGA will be as well-prepared as Mattel

10   has been.  Second, I can use Mr. McConville tomorrow evening

11   Ms. Hurst, so you can go back home.

12          Mr. Quinn, do I need anybody else for this binder

13   preparation?

14          MR. MCCONVILLE:  Overland.

15          THE COURT:  I am not certain how many witnesses

16   MGA will get to next week, but I think it's time on the

17   record to start thinking about the order and just let Mattel

18   now know since you are resting and before the jury goes home

19   who you plan to call.

20          MS. HURST:  Give me a minute, and I can get some

21   names.

22          THE COURT:  Mr. Zeller, take this down, and they

23   may have a little variation just like Mattel did within one

24   or two witnesses, so you will be equally well-prepared.

25          Now, the court reporter is coming in at 8:00 on

SHARON SEFFENS, U.S. DISTRICT COURT REPORTER

```
1   Sunday, but I might take that back to 10:00 depending upon
2   the binder preparation because I can use that time with
3   counsel in the morning and also Friday night and Saturday if
4   I need to.
5            MS. HURST:  As the Court knows, we are calling Ms.
6   Luther tomorrow.
7            THE COURT:  And we have got all of those binders.
8            MS. HURST:  Yes.  We have also identified Neil
9   Friedman for tomorrow.
10           THE COURT:  We have gone over those binders,
11  correct?
12           MR. ZELLER:  No, we have not.
13           THE COURT:  My apologies.  We will go over those.
14           The third witness?
15           MS. HURST:  Your Honor, we may call Mr. Holden
16  tomorrow.
17           THE COURT:  Mr. Holden.
18           Do you have exhibits that you are going to be
19  presenting besides the Paula Garcia e-mail?
20           MS. HURST:  No.  We would expect that would take
21  all of tomorrow, Your Honor.
22           THE COURT:  Those three witnesses?
23           MS. HURST:  Yes.
24           THE COURT:  Then we have to go over Neil Friedman.
25           MS. HURST:  Yes.
```

```
 1                THE COURT:  Do we have binders for Neil Friedman?
 2                MS. HURST:  I think we gave them to you.
 3                THE COURT:  I haven't seen them.
 4                MR. ZELLER:  We received a list, but we don't have
 5       the binders.
 6                MS. HURST:  I know they're done.  They were done
 7       this morning, so we can bring them over.
 8                THE COURT:  So those three witnesses would occupy
 9       Friday you believe?
10                MS. HURST:  Yes.
11                MR. ZELLER:  It's their witnesses.  We don't know
12       how long they intend to go.
13                THE COURT:  All right.  Now, I would like to get
14       you home for one day because I am worried about all of you.
15       I want that on the record.  The Court is concerned about
16       counsel and their health.
17                Do you want Saturday off?  Can we accomplish the
18       preparation that you need on behalf of Mattel on Friday
19       evening and give you a day off Saturday, or is there such a
20       volume of material for the next week that we need to be in
21       session on Saturday?  If we do, then I want to know and set
22       up the courthouse for it.
23                No. 2, I work a lot of cases on Monday.  I
24       literally have almost a blank day because I was going to ask
25       as a courtesy and not a requirement do you want to go
```

```
 1    forward on Monday and get an extra day in on behalf of MGA,

 2    or can you just use the normal schedule and not speed things

 3    up?

 4              MS. HURST:  I don't think our witness who is up

 5    next for Tuesday morning --

 6              THE COURT:  I will just keep the same schedule

 7    then, no change.

 8              MS. HURST:  Let's use Monday to do the binder

 9    review, howenever, if that's a possibility.

10              MR. ZELLER:  We obviously need to know sooner

11    rather than later who these witnesses are and what their

12    documents are.

13              MS. HURST:  Sure.

14              THE COURT:  Let's do this.  I want to meet counsel

15    at 8:00 on Sunday, and let's work from 8:00 to 10:00 on the

16    binders.  Let's work Friday evening on the binders.  Why

17    don't you take one day off on Saturday to get rested.

18              Mr. Price, acceptable?

19              MR. PRICE:  Yes.

20              THE COURT:  Mr. Quinn?

21              MR. QUINN:  Yes, Your Honor.

22              THE COURT:  That way you can plan on going home to

23    your families.

24              THE COURT:  Mr. Zeller?

25              MR. ZELLER:  Yes.
```

| | |
|---|---|
| 1 | THE COURT:  Acceptable?  I won't require both |
| 2 | counsel here on Sunday.  I just need one lead counsel on |
| 3 | Sunday and the arguing parties which will be Ms. Hurst and |
| 4 | Mr. Zeller I assume.  So Mr. Quinn, Mr. McConville, you |
| 5 | don't need to be present, and Mr. Price doesn't need to be |
| 6 | present. |
| 7 | MR. QUINN:  I have just a couple of things that |
| 8 | are hanging fire.  One, we still have pending a request that |
| 9 | at a minimum the jury be told that there is no evidence that |
| 10 | any magnets from Mattel toys killed children.  They are |
| 11 | hiding behind the Court on that.  They have told the jury |
| 12 | that this is a prohibited area.  The suggestion has been |
| 13 | left that there were children killed.  I can't imagine |
| 14 | anything more prejudicial.  There is no evidence of it, and |
| 15 | we request that the Court instruct the jury that there is no |
| 16 | evidence of that. |
| 17 | THE COURT:  All right, thank you. |
| 18 | What else? |
| 19 | MR. QUINN:  The Kinrich slides, there is a broken |
| 20 | record on this. |
| 21 | THE COURT:  Some of those are demonstratives.  I |
| 22 | just haven't had time to go over them.  Some aren't.  And it |
| 23 | depends what I do with MGA. |
| 24 | MR. QUINN:  Then you asked me to come up with a |
| 25 | theory on the Ajinsky notes that were read in as past |

1     recollection recorded.  They were shown to the jury by Ms.

2     Hurst.  The rule here has been that only things that are in

3     evidence are going to be shown to the jury.  That's my

4     theory, that the other side put them up and showed them to

5     the jury.  They have been read in.  They should be moved in.

6              THE COURT:  Counsel.

7              MS. HURST:  The rule is clear.  And the only

8     reason I had to do that was because the copy that Mattel had

9     provided was illegible, so it was either put it on the elmo

10    or stand behind of the witness.  I elected to put it on the

11    elmo so he and I could both see it at the same time.  That

12    was never intended to waive our objection to the

13    admissibility.

14             THE COURT:  Tentatively I am going to deny that

15    request, but I will go back and look again in the computer.

16             Anything else?

17             MR. MCCONVILLE:  On Sunday, you said 8:00 to

18    10:00.  Was that 8:00 a.m. to 10:00 p.m., or is that 8:00

19    a.m. -- I know you're always clear, but sometimes I am a

20    little slow.

21             THE COURT:  The days are starting to fade into

22    nights.  8:00 a.m., and let's go over the binders from 8:00

23    to 10:30.  Let Ms. Hurst come in fresh and Mr. Zeller come

24    in fresh.  Why don't you and Mr. Quinn work with me on those

25    binders.  Then you are fresh for the arguments on

```
 1    intentional interference and the ownership.  Those are the
 2    two main areas left, and then I will probably start
 3    partially on the special verdict forms and then a couple of
 4    other questions I have for you.  As far as how late we go, I
 5    will leave that to you.
 6              A couple of hours left for both sides on the jury
 7    instructions?  Mr. Zeller, what do you think, a couple hours
 8    on both sides?
 9              MR. ZELLER:  Yes.
10              THE COURT:  Why don't we simply inform the jury
11    that your resing this evening.
12              MR. PRICE:  That's fine, Your Honor.
13              I have two quick issues.  One is they said that
14    they're going to call Mr. Holden, and I am wondering if that
15    means they are going to be waiving the attorney/client
16    privilege.
17              THE COURT:  Apparently they are.
18              MR. PRICE:  If that's the case, I think we should
19    have the opportunity to take his deposition.
20              MS. KELLER:  I think the Court has already held
21    that the document that came in was not privileged.
22              THE COURT:  I have already held it's not
23    privileged.
24              MS. KELLER:  So it doesn't seem to me that we are
25    waiving anything by calling him to ask him about a
```

1    nonprivileged document.

2             MR. PRICE:  That's true if that's all they do, but

3    if they are going to start talking about conversations with

4    Mr. Larian or --

5             THE COURT:  I think you will finbd pursuant to the

6    in-camera hearing held that you're fears are misplaced.  I

7    spent quite a bit of time with Mr. Holden.

8             MR. PRICE:  The second issue is do you remember at

9    the end of Mr. Larian's testimony when I questioned him he

10   had a list of documents pertaining to Mattel employees being

11   hired.  I just don't recall -- I think they were admitted

12   conditionally and that Ms. Keller was going to raise any

13   objection -- I just need to go back and look at the

14   record and see --

15            THE COURT:  We have never resolved that.  Ms.

16   Keller was going to look at that list.  There was an

17   objection concerning those documents.  Once again, that

18   doesn't make much of a difference for Rule 50.  I think that

19   we can spend some time on that.  It's not subject to any

20   prejudice to Mattel or MGA.

21            MR. PRICE:  I guess I have a third issue.

22            THE COURT:  I have about five for all of you now.

23            MR. PRICE:  There was a suggestion by Mr.

24   McConville that we have that e-mail by Mr. Holden and that

25   we were able to use it earlier.  We request an instruction

1    or some way to let the jury know the history behind that

2    because the strong suggestion was left what are you talking

3    about?  Mattel has this e-mail.

4              THE COURT:  Thank you.

5              What else do we need to do this evening before we

6    excuse the jury?

7              MS. HURST:  Can we agree that our Rule 50 motions

8    are reserved and that we can present them later?

9              THE COURT:  Yes, but I want you to check with

10   Mr. Cote because he is anxious to argue his.

11             MR. COTE:  We will be presenting them now.  I was

12   under the impression we had reached an agreement with all

13   the parties that we would be filing them.

14             THE COURT:  That's my third question, so I will go

15   down my questions.  First of all, I want to know when your

16   damages expert is going to be available for the Daubert

17   hearing.  The same courtesy is going to be afforded to

18   Mattel.  Who is going to cross-examine their damages expert?

19             Mr. Price, are you?

20             MR. PRICE:  I guess so.

21             THE COURT:  When is your damages expert available?

22   Next Saturday.

23             MS. HURST:  I don't know.  Can we check and let

24   the Court know in the morning?

25             THE COURT:  I want to know by tomorrow.  I want to

```
1    set that up, and I want to have that in a block of time.
2              MS. HURST:  Should we let the jury go, Your Honor?
3              THE COURT:  Counsel, you are going to be switching
4    positions, and I want to talk to you about that.  You are
5    going to be sitting now at the plaintiff's table, and Mattel
6    will be sitting at the defendant's table because now the
7    claims switch and visualization becomes important.  Now you
8    are the party bringing your claims.
9              My second question this evening is going to be
10   what about your presenters in the back?  It would seem to me
11   that they would be switching also, and that needs to be
12   accomplished, which leaves Mr. Cote and Mr. Overland back in
13   the corner who certainly not on Mattel's side.  Where are we
14   going to put the two of you because I don't want the table
15   so crowded?  By the same take token, there will be a switch
16   of tables tomorrow.
17             So as Ms. Hurst leaves her seat to go over and
18   talk to Mr. Overland --
19             (Defense counsel conferring.)
20             MS. KELLER:  Mr. Overland would like to sit in the
21   jury box if that's agreeable.
22             MS. HURST:  He wants to cuddle up with a few of
23   the jurors, give them some hugs.
24             THE COURT:  Make your decision because the jury is
25   coming back now.
```

```
 1              MS. HURST:  They are planning on staying here.

 2              THE COURT:  Well, I want to talk to Mattel about

 3    that.

 4              MR. ZELLER:  We do have an issue with that.

 5              THE COURT:  You don't want them on the same side

 6    do you?

 7              MR. ZELLER:  No.  That's the visual.

 8              THE COURT:  We will try to work a table in the

 9    center of the courtroom and put it at a diagonal.  So we

10    will get a small table in there and, Mr. Overland, just

11    transport you over to this location so we keep the sides on

12    both sides.

13              MR. OVERLAND:  That's fine.

14              THE COURT:  Well, I have a number of issues I am

15    going to raise with you Saturday.

16              One, Mr. Zeller, I want you to anticipate my

17    research initially discloses that it's the place of

18    employment, not the place of the document, that is the legal

19    question on the issue, so I want research on that.  I don't

20    need more than three or four pages on it.

21              Mr. Cote, would you be willing to delay your Rule

22    until Sunday?

23              MR. COTE:  This Sunday?  We would be willing to

24    delay it until next Sunday.

25              THE COURT:  Okay, fine, just to keep the case
```

```
 1   going.
 2              MR. COTE:  Yes.
 3              THE COURT:  If that's acceptable to you, that
 4   let's the parties start tomorrow.
 5              MR. COTE:  Of course.
 6              THE COURT:  Counsel, I am going to pay all of you
 7   a compliment in front of the jury about how hard you are
 8   working.
 9              Nancy, would you get the jury.
10              (Jury present.)
11              THE COURT:  The jurors are present.  Counsel are
12   present.
13              Mr. Quinn, on behalf of Mattel.
14              MR. QUINN:  Your Honor, subject to the issues that
15   we discussed the jury's presence, Mattel rests.
16              THE COURT:  Mattel is resting at this time.  There
17   are a few matters that we can accomplish this weekend and
18   outside your presence, but both parties have agreed to go
19   forward tomorrow.
20              We anticipated that Mattel would be resting
21   sometime this week.  We didn't know quite know if it was
22   Wednesday, Thursday, or early Friday, but we anticipated
23   this, and MGA will be ready to start their presentation
24   tomorrow morning at 8:30.
25              Now, we are going to be switching tables.  MGA
```

1 will be sitting at the table that times has been referred to

2 as the plaintiff's table, and Mr. Overland and Mr. Cote will

3 be joining them.  I am going to have a small table set up so

4 we keep visually who is with whom, and Mattel will be over

5 sitting over what we previously referred to as the

6 defendant's table.

7          We have about 152 hours that we have been in

8 session so far, maybe a little bit more by the end of today.

9 I'm not quite certain.  I haven't been keeping that close

10 account, but you can see a running total over on this board.

11 As of yesterday, it was 87 hours and 41 minutes for Mattel

12 and MGA 64 hours and 8 minutes.  That's about right.  The

13 plaintiff is usually using a few more hours in the

14 presentation of their case, and now MGA will probably start

15 using a few more hours.

16          All counsel are on notice when that hits 120 hours

17 that's the end of the lawsuit for that party.  Actually

18 because of the preparation of counsel and the extraordinary

19 efforts on both Mattel and MGA's part and Mr. Machado's

20 counsel, the -- because we are not having sidebars, because

21 they are going all over the evidence on nights and during

22 the weekends, means that that 120 hours for each side is

23 probably the equivalent of about 200 hours.  It's really

24 about a four-month trial that's being brought down into

25 about three months, so it's coming to you pretty quick.

1          Now, a couple of things, I would like to go

2   straight through.  There is nothing like stopping a trial

3   part way through for us to discuss issues, et cetera.  The

4   jury instructions are being prepared on the weekends for

5   you.  You will have those read to you by the Court.

6          I know that that's an extraordinarily difficult

7   thing for you to do because you have been in session since

8   January 18, but I have been involved in trials that have

9   lasted nine months and three 6-month trials that lasted a

10  year and a half involving the Mexican Mafia and the Aryan

11  Brotherhood.  Once you stop a trial, it's hard to get

12  started again.  It's almost difficult to get that ship

13  moving again at some kind of speed.  So I am going to ask

14  you to bear with us.  I know it's an extraordinary hardship

15  on each of you.

16         I have written a letter to all of your employers.

17  I hope that Kathy or Linda have given you a copy of those

18  letters.  Trust me, I will write another letter to your

19  employers probably in the first week of April, which is when

20  I anticipate you will get this case so that they know that

21  they are on the brink of getting you back.  They will be

22  very appreciative.

23         By the way, your employers have been absolutely

24  extraordinary.  I want to personally make sure that the

25  Court continues to thank them for this extraordinary

1   service.  Meanwhile, you can't get sick, no flu, because we

2   don't want to lose any of you, especially with this kind of

3   effort.

4        Now, we will be off tomorrow morning at 8:30

5   again.  I am going to try to get six hours in.  We didn't

6   quite make it today, but you can calculate the time as well

7   as I can.  You will know exactly where you stand, and we

8   will keep the same pace of Tuesday through Friday.

9        Counsel are working extraordinarily hard.  They

10   are joining me usually on Saturdays and Sundays because they

11   are very enthusastic, and it's very much appreciated by the

12   Court.

13        You are admonished not to discuss this matter

14   amongst yourselves nor form or express any opinion about

15   this case, and we will see you tomorrow at 8:30.

16        (Jury not present.)

17        THE COURT:  We are off the record.

18               -oOo-

19

20

21

22

23

24

25

SHARON SEFFENS, U.S. DISTRICT COURT REPORTER

1

2

3

4                              CERTIFICATE

5

6              I hereby certify that pursuant to Section 753,

7    Title 28, United States Code, the foregoing is a true and

8    correct transcript of the stenographically reported

9    proceedings held in the above-entitled matter and that the

10   transcript page format is in conformance with the

11   regulations of the Judicial Conference of the United States.

12

13   Date:  March 11, 2011

14

15

16                        Sharon A. Seffens 3/11/11
                     _____
17                        SHARON A. SEFFENS, U.S. COURT REPORTER

18

19

20

21

22

23

24

25