ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: 415-773-5700
Facsimile: 415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: 213-629-2020
Facsimile: 213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>　　　　Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br>Consolidated with Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**MGA PARTIES' OPPOSITION TO MATTEL, INC.'S MOTION TO RECONSIDER THE COURT'S RULING REGARDING MGA'S MOTION *IN LIMINE* REGARDING FRANK KEISER;**<br><br>Date: TBD<br>Time: TBD<br>Dept: Courtroom 9D<br><br>Trial Date: January 18, 2011<br>Judge: Hon. David O. Carter |

# INTRODUCTION

Mattel's Motion to Reconsider the Court's Ruling Regarding MGA's Motion *In Limine* Regarding Frank Keiser ("Motion") is moot, as Mattel rested its case on March 10, 2011. It should be denied for this reason alone. Nevertheless, MGA submits this opposition to preserve its objections to Mattel's Motion.

Mattel's Motion highlights the exact reasons this Court correctly excluded Mr. Keiser in the first place. Mattel in essence argues that, on an issue where the exacting test of virtual identity applies, Mr. Keiser scans should be admitted because they eliminate the size and other details that contribute to making the sculpts different so that the jury can make a better comparison. This argument not only defies logic, it flouts the "virtual identity" test that both this Court and the Ninth Circuit have held apply in this case—*Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 915-16 (9th Cir. 2010) (emphasis added); Dkt. # 9758 ("Order") at 2. Mattel admits that Mr. Keiser's comparisons "resiz[ed]" one sculpt" (Motion at 2) and "smoothed out" differences because the scans taken at "a lower resolution may reflect slightly less detail overall" (*id*. at 3). In touting these flaws, incredibly, as reasons the scans *should be* admitted, Mattel also fails to account for the Court's conclusion that Mr. Keiser's computerized comparisons are "defective on [their] principle purpose" since they repeatedly failed to pick up differences that were readily apparent to the naked eye. Order at 2. These scans, which eliminate important details in the sculpts, are highly prejudicial, likely to cause confusion and simply not helpful to the jury's task. The Court should deny Mattel's request that the Court reconsider its decision to prevent these flawed and misleading scans from reaching the jury.

///

///

# ARGUMENT

## I. SIZE MATTERS, AND THE COURT WAS CORRECT TO EXCLUDE MR. KEISER'S MANIPULATION OF SIZE OF THE SCULPTS.

Mattel admits that Mr. Keiser altered his scan results to take away any differences in size: "Q. So you manipulated the size of the Chloe [sic] doll in order to perform your comparison? A. Yes." 1/27/11 Trial Tr. Vol. 4 at 61: 18-20; *see also id.* at 61: 9-17. But Mattel, despite the virtual identity standard, attempts to defend that defect by arguing that size should be disregarded. Mattel is mistaken. As the court stated succinctly in *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 210 F.Supp. 147, 158 (E.D.N.Y. 2002), a case cited by Mattel, with respect to the infringement analysis of rag dolls: "Size matters." *Id.* at 169.[1] In comparing rag dolls, the court noted that in the infringement analysis "[d]ifferences become particularly important where copyright protection is 'thin.'" *Id.* at 163. The court found that the "differences in size" and "[d]ifferent body proportions" influence the impression made by the doll, and specifically the smaller doll "has a considerably younger, more winsome look" than the larger doll. *Id.* at 168-169. The court found noninfringement because "the differences between plaintiff's 20 inch doll and defendant's 48 inch doll are too great." *Id.* at 172.

Indeed, this is exactly the case here. The larger preliminary sculpt (TX 1136A) is more mature, as depicted through size, posture and body proportions, while the smaller production sculpt (TX 17733) is more youthful looking in comparison. *See, e.g.*, 1/26/11 Trial Tr. Vol. 1 at 31:21-25 (Garcia) ("Q. One of the things that you talked about yesterday was changing the doll from the exploratory sculpt, which I believe you said was too mature, too old, to a younger version of the doll? A. Yes"; *id.* at 32:1-15; 1/25/11 Trial Tr. Vol. 2 at 82:8-19 (Garcia). MGA deliberately made a smaller doll to make it more appealing to the

---

[1] As discussed further below, in contrast, the quotation cited by Mattel was in the context of copyrightability, not infringement.

1  target consumers. These size differences are highly relevant to the infringement
2  analysis and the total look and feel of the different sculpts, especially under the
3  virtually identical overall standard.
4      Moreover, Mattel is wrong in its attempt to explain away the size difference
5  by saying that it is the result of "upsizing" and the manufacturing process. As the
6  sculptor Margaret Leahy has and will testify, the initial grey sculpt (TX 1136) was
7  cut into pieces by Ms. Leahy in order to make it significantly smaller in her next
8  iteration. *See* 7/2/08 Phase 1 Trial Tr. at 4160:13-18; 8/8/08 Phase 1 Trial Tr. at
9  6698:1-8 and 8/12/08 at 6785:10-12. This had nothing to do with the
10  manufacturing process. Indeed, the grey sculpt (TX 1136) was still several
11  iterations away from the sculpt that was eventually sent for mass marketing, and
12  any "upsizing" or other changes necessary for mass marketing therefore came much
13  later in the process.
14      Mattel cites the *Well Made Toy* case and *L. Batlin & Son* out of context,
15  purportedly in support of its argument that "size itself is considered a trivial
16  variation for purposes of *copyright infringement analysis*." Motion at 3. In the
17  portions of these two cases cited by Mattel, the courts were considering
18  *copyrightability*, <u>not</u> *infringement*. *Well-Made Toy*, 210 F.Supp. at 158; *L. Batlin &*
19  *Son Inc. v. Snyder*, 536 F.2d 486, 489-92 (2d Cir. 1976). In *Well-Made Toy*, the
20  court cited Nimmer as quoted by Mattel in its consideration of what merits
21  protection as a derivative work. *Well-Made Toy*, 210 F.Supp. at 158. Likewise, in
22  *L. Batlin*, the court found that the differences between the Uncle Sam bank at issue
23  and Uncle Sam banks in the public domain were so trivial, that no copyright
24  protection was available: "[t]o extend copyrightability to miniscule variations
25  would simply put a weapon for harassment in the hands of mischievous copiers
26  intent on appropriating and monopolizing public domain work." *Id*. at 492. These
27  cases do not support Mattel's argument. Size is probative to the infringement
28  analysis.

Keiser's scans and comparisons that admittedly resize the sculpts in order to create a similarity where none exists remain irrelevant, prejudicial and properly excluded under Federal Rules of Evidence 401, 402 and 403.

## II. MR. KEISER IMPROPERLY SMOOTHS OUT DIFFERENCES IN DETAILS.

Mattel further admits that Mr. Keiser uses a lower resolution scanning technique "that smoothed out" differences in the surface of the sculpts, particularly their texture. Motion at 3; 1/27/11 Trial Tr. Vol. 4 at 68:5-6 ("Q. Is that the best possible resolution? A. No"); *id*. at 68:9-14 ("Q. You noticed the tool marks on the head? A. Yes. Q. Were the tool marks in your scan? A. No");

Further, the Court correctly noted that the numerous differences readily apparent to the naked eye simply disappeared in the Keiser scan comparisons—specifically, the Court noted "the programs inability to consistently highlight the absence of similarities between the sculpts otherwise obvious t the naked eye." Order at 1-2. *See* 1/27/11 Trial Tr. Vol. 4 at 63:18-64:2 (while the irises on the two real-life sculpts are different, Mr. Keiser admits that "you cannot see it in this rendition," *i.e.* his comparison); *id*. at 64:3-10 (his comparison fails to account for the fact that one sculpt has eyebrows while the other does not); *id*. at 64:13-23 (while there is a difference in the shape of the lips, Mr. Keiser's scan does not note a difference, "Q. So sometimes your overly picks up the changes and sometimes it doesn't, correct? A. Correct…"). The Court rightly concluded that allowing such distorted evidence to go to the jury would be highly prejudicial. [2]

In addition to the anatomical changes cited above that are suspiciously absent from Keiser's scans, differences in texture also matter to a copyright infringement analysis. In *Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003), the Ninth Circuit noted

---

[2] Mattel cites to Federal Rule of Evidence 901 for its argument that Keiser's "smoothing by the chosen resolution" does not distort the resulting images. Rule 901's requirement of authentication or identification is not what is at issue here and is not the test where copyright infringement and virtual identity are the relevant considerations.

1  that texture is one of the elements that an artist may vary in his or her original
2  expression. *Id.* at 813 ("An artist may, however, protect the original expression he
3  or she contributes to these ideas. An artist may vary the pose, attitude, gesture,
4  muscle structure, facial expression, coat, or texture of animal… Such variations, if
5  original, may earn copyright protection."); *see also Hennon v. Kirkland's Inc.*, 64
6  F.3d 657 at 3 (4th Cir. 1995) (considering figurines of carolers and holding that the
7  district court "found several differences in the color, texture, and size of the
8  carolers," which "certainly could be such that a lay person… would not find the sets
9  of carolers substantially similar."). Such different are relevant to determine
10 whether the sculpts are "virtually identical overall."

Mattel seeks to find import in this Court's statement that the Keiser
technology "shows only minor differences between the sculpts." Motion at 4. This
import is entirely misplaced, as the Court's point was that the scans *omit* relevant
differences. Scans that deliberately conceal such relevant differences under the
applicable standard serve only to confuse and prejudice. F.R.E. 401, 402, 403.[3]
They were properly excluded.

### III. MATTEL CONFLATES IMPROPER EXPERT TESTIMONY WITH PROPER FACT WITNESS TESTIMONY.

In Section IV of its Motion, Mattel purports to argue that MGA fact
witnesses have improperly testified to differences in the sculpts. Motion at 5. The
testimony cited by Mattel, however, is that of fact witnesses who have personal
familiarity with the Bratz drawings and MGA's doll development process. Motion
at 5. Their testimony concerns the creative doll design process undertaken by
MGA that resulted in the final production sculpt, the final fashions, and the other
details of the manufactured Bratz products. This testimony includes MGA's

---

[3] Contrary to Mattel's citation, this case is not akin to *Kalter v. Grand Circle Travel*, 631 F.Supp.2d 1253, at n.2 (C.D. Cal. 2009). *Katler* is a personal injury case involving photographs of where the plaintiff was found after her fall. It was not a copyright infringement case, nor did it involve low resolution photographs that deliberately obscure details.

1  decisions to make the doll younger and more appealing to the target audience than
2  the Carter Bryant drawings and exploratory sculpt. 1/26/11 Trial Tr. Vol. 1 at
3  31:21-32:15; *id*. at 82:8-19. Further, these witnesses testified about the actual
4  sculpts themselves, not any manipulated or altered representation of the sculpts.
5  Such fact witness testimony is proper, it is not prejudicial as Mattel contends, and it
6  cannot possibly justify Mattel's admission of expert testimony utilizing unreliable
7  methods.

8  Moreover, evidence of differences is relevant and admissible in connection
9  with the infringement analysis. *Benay v. Warner Bros. Entertainment, Inc*., 607
10 F.3d 620, 625 (9th Cir. 2010) ("a closer examination of the protectable elements,
11 including plot, themes, dialogue, mood, setting, pace, characters, and sequence of
12 events, exposes many more differences than similarities between Plaintiffs'
13 Screenplay and Defendants' film."); 4 Nimmer on Copyright § 13.03[B][1] [a]
14 ("The admission of evidence of differences as between plaintiff's and defendant's
15 works is not ... improper. If the points of dissimilarity not only exceed the points of
16 similarity, but indicate that the remaining points of similarity are, within the context
17 of plaintiff's work, of minimal importance, either quantitatively or qualitatively,
18 then no infringement results."); *Warner Bros., Inc. v. American Broad. Cos.*, 720
19 F.2d 231, 241 (2d Cir. 1983) ("Significant dissimilarities between two works of this
20 sort inevitably lessen the similarity that would otherwise exist between the total
21 perceptions of the two works."); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905,
22 913 (2d Cir. 1980) ("[N]umerous differences tend to undercut substantial
23 similarity.").

24 **IV.  MR. KEISER'S OVERLAYS ARE UNTIMELY AND UNRELIABLE.**
25 For the first time at the hearing on MGA's motion to exclude Mr. Keiser on
26 January 27, 2011, Mr. Keiser purported to show the Court an example of a scan
27 comparison that he intended to present to the jury, as noted in MGA's Opposition
28 to Mattel's Offer of Proof with respect to Mr. Keiser (Dkt. # 9756). No such

1  comparison was disclosed in his expert report. Mattel then filed an Offer of Proof
2  whereby it explained that Mr. Keiser is now prepared to offer numerous
3  comparisons of sculpts, none of which had been identified or disclosed before. Dkt.
4  # 9743; Dkt. # 9756. Nowhere does Mr. Keiser describe the process by which he
5  created these comparisons nor does he provide any explanation or assurance of
6  accuracy.
7      At the hearing on this matter, Mr. Keiser proffered a comparison overlaying a
8  Cloe doll head (TX 17733) with the head of the exploratory sculpt (TX 1136A).
9  1/27/11 Trial Tr. Vol. 4 at 54:10-55:20. He explained (for the first time) that the
10 color codes on the screen indicate how close the match is between the two items.
11 *Id.* at 55:21-56:9. Mr. Keiser was unable to explain the accuracy of the overlays
12 when asked by the Court: "the algorithm overlays it and *brings it in*," (to which the
13 Court replied, "my jury doesn't understand that yet") and then he offered "[t]hese
14 are tied to NITS standards for accuracy" (to which the Court replied "That means
15 nothing to me"). 1/27/11 Trial Tr. Vol. 4 at 56:24-57:3 (emphasis added). When
16 asked to recreate the overlay in Court, Mr. Keiser achieved entirely different
17 results. Specifically, for example, while the overlay that Mr. Keiser created in
18 Court showed a difference between the sculpts in the area of the eyelids, the overlay
19 that Mr. Keiser first showed the Court shows no such difference in the area of the
20 eyelids. *Cf. id.* at 62:22-24) (pointing out that the eyelids on the two sculpts are
21 showing up as different on the scan created in Court) with *id.* at 63:4-14 ("Q. Your
22 first comparison that you showed us did not have red over the eyelids [meaning the
23 two were different], did it?... A. Correct.").
24     Mr. Keiser's inability to explain the accuracy of his testing procedures and to
25 replicate his results is testament to the unreliability of his methods.
26 ///
27 ///
28

- 7 -

## CONCLUSION

For the foregoing reasons, those found in MGA's Motion *in Limine* No. 36 (Dkt. # 9499) and MGA's Supplement to its Motion *in Limine* No. 36 (Dkt. ## 9535, 9536), as well as those presented at any hearings on the matter, Mattel's Motion for Reconsideration should be denied.

Dated: March 11, 2011

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: /s/ Diana M. Rutowski
Diana M. Rutowski
Attorneys for MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT HK, LTD., MGA de MEXICO, S.R.L. de C.V., and ISAAC LARIAN