QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar. No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Mattel, Inc., and Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de C.V., <br><br> Plaintiff, <br><br> vs. <br><br> MGA ENTERTAINMENT, INC., a California corporation, et al., <br><br> Defendant. <br><br> AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx) <br> Consolidated with <br> Case No. CV 04-09059 <br> Case No. CV 05-02727 <br><br> <u>Hon. David O. Carter</u> <br><br> **MATTEL, INC.'S MOTION *IN LIMINE* TO EXCLUDE CONTAMINATION OPINION OF ALBERT LYTER** <br><br> Hearing Date:     TBD <br> Time:                  TBD <br> Place:                Courtroom 9D |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on a date to be determined by the Court, plaintiffs Mattel, Inc. and Mattel de Mexico, S.A. de C.V. (collectively, "Mattel") will, and hereby do, move the above-entitled Court to exclude the contamination opinion of Dr. Albert Lyter.

This Motion is made on the grounds that it would be unfairly prejudicial to Mattel to allow him to present this opinion to the jury, as it is based on hearsay evidence the Court has excluded.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the records and files of this Court, and all other matters of which the Court may take judicial notice, and such further argument and evidence which may be presented at or before the hearing.

DATED:  March 14, 2011          QUINN EMANUEL URQUHART & SULLIVAN, LLP


By */s/ Michael T. Zeller*
    Michael T. Zeller
    Attorneys for Mattel, Inc., and Mattel de Mexico, S.A. de C.V.

## Argument

The Court has ruled that pen manufacturer correspondence and business records "are not the type of evidence reasonably relied upon by experts."[1]  Yet Dr. Albert Lyter, a purported expert retained by MGA, has relied on several hearsay emails and a one paragraph fax[2] as the main foundation for his opinion that the menthol Mattel's expert, Dr. Valery Aginsky, found in the notation "From 1998 Missouri" in the notary book could be the result of contamination.  This correspondence represents multiple layers of hearsay, as Lyter admitted that his correspondents were mere conduits for information from others pursuant to inquiries he was not privy to.  It would be unfair to allow Dr. Lyter to present the same kind of expert testimony that MGA objected to, and excluded, on hearsay grounds. Allowing Dr. Lyter to present his contamination opinion without reference to the emails would also be prejudicial because these very emails, as well as the Zebra fliers that were previously excluded from Dr. Aginsky's testimony, are important sources of impeachment for Dr. Lyter's opinion.

For these reasons, the Court should preclude MGA from presenting any testimony from Dr. Lyter that the menthol reflected in Dr. Aginsky's results could have resulted from contamination.

## I. LYTER'S CONTAMINATION THEORY SHOULD BE EXCLUDED AS IT IS BASED ON HEARSAY

Lyter's contamination theory heavily rests on what he calls a "lack of a known source for menthol in ink formulations"  – meaning, he has never seen

---

[1]  Trial Tr. 5:24-6:3, Vol. 2, Feb. 24, 2011.

[2]  Lyter testified that he contacted six companies. When asked if all of the communications that were part of his investigation were memorialized in written documents provided to Mattel, Lyter responded, "That's right."  Lyter Depo. Tr. 689:11-690:2, Dec. 6, 2010.

1   menthol used in gel inks.[3]   The hearsay emails and fax are the purported support for

2   this supposed dearth of menthol in ink formulations.

3        Dr. Aginsky had tried to present evidence of two black gel ink pens that were

4   made by Zebra Pen Corporation containing menthol in 2002 and 2003 – including

5   business records identified by a Zebra Pen Corporation representative as

6   contemporaneous documentation of the existence of these pens – but the Court

7   excluded this evidence under Rule 703 on the basis that it was hearsay and not a

8   type of information that could be properly relied upon by experts.[4]

9        Accordingly, it would be manifestly unfair to allow Dr. Lyter to present his

10  contamination opinion based on the hearsay emails and faxes he claimed to rely on.

11  That hearsay evidence does not even contain any contemporaneous business

12  information; it is merely multiple layers of untestable hearsay.  Dr. Lyter has

13  admitted that the people he contacted in most cases are just "conduit[s]" for

14  information from other unidentified persons.  See  Lyter Depo. Tr. 739:3-740:14

15  ("DePack is . . . the intermediary between Zebra U.S. and Zebra Japan, so that

16  information gets funneled, you know, through him to Japan, and the information

17  from Japan through him to me."); 742:2-24 ("Mr. DePack is simply a conduit of

18  information, but he knows where to go to get the information that I'm requesting");

19  742:22-743:10 (other email authors viewed as reliable "because they have contacts

20  to be able to . . . know where the information is and . . . to obtain the information").

21       Nor should Dr. Lyter be permitted to testify, based on the remaining two

22  grounds of his opinion, that the menthol resulted from contamination:  (1) the

23  amount of menthol Aginsky detected, which Lyter contends was "limited"; and

24  (2) the "commonality of menthol in society." TX 34702-15.  Dr. Lyter admitted at

25  deposition that "the quantity of [a compound]. . . doesn't really impact whether it's a

26  _____

27   [3]   TX 34702-15; Lyter Depo. Tr. 608:24-609:4, Dec. 6, 2010.
     [4]   Trial Tr. 5:19-6:6, Vol. 2, Feb. 24, 2011.

28

1  contaminant or not" (Lyter Depo Tr. 602:16-603:4), and that he does not even have

2  a specific theory that connects the "menthol in society" with the notary book, much

3  less any evidence concerning the dozens of consumer products he contends would

4  be the likely source for such contamination.  See  Lyter Depo. Tr. 619:19-620:8 (has

5  no particular source in mind);  Lyter Depo Tr. 624:2-4, 628:6-632:2, 674:25-680:14

6  (admitting he identified no evidence of 38 specific chemical compounds commonly

7  seen in menthol hand lotions, chest rubs, cough drops, cigarettes and gums).

8  Moreover, Dr. Lyter did no contamination testing of his own, and did not present

9  any rebuttal report responding to Dr. Aginsky's contamination testing.  Thus,

10  without the emails and fax, Dr. Lyter's contamination theory has no basis at all,

11  making his opinion far more prejudicial than probative under Rule 403.

## II.    MATTEL WOULD BE PREJUDICED IF IT COULD NOT IMPEACH LYTER BASED ON INK MANUFACTURER EVIDENCE

Further, allowing Lyter to present any testimony on the supposed rarity of fragranced inks would be unfair and prejudicial because the evidence that both Dr. Lyter and Dr. Aginsky acquired from ink manufacturers could not be used to impeach Dr. Lyter.

For example, Dr. Lyter has testified that his "opinion that it's a contaminant is more likely than it's a component is based on my experience with dealing with gel inks and the fact that they don't use fragrance in gel inks."  Lyter Depo. Tr. 450:25-451:3.  But that assertion is demonstrably untrue.  Lyter's own "investigation" showed this was not true.  In response to Lyter's inquiry, Bruce Gindelberger of National Ink confirmed that gel pens have frequently contained menthol.[5] Gindelberger also was "100% sure we made scented [gel] ink for RTC"[6] and

---

[5]   Lyter Depo. Tr. 765:6-9 ("Q.  And so according to this email, gel pens have frequently contained menthol, at least the ones by these several Chinese manufacturers?  A.  Yes.  Green ones."

[6]   TX 9778-2.

00505.07975/4010532.2

confirmed that Chinese manufacturers added their own scents to base ink purchased from National and other companies.[7]

Dr. Lyter also contends that Zebra has never made black menthol-fragranced gel inks, but the Zebra fliers that were excluded by the Court show that two pens with such ink were in fact made by Zebra.[8]

Because the Court has already excluded the ink manufacturer hearsay evidence proferred by Mattel, Mattel would be unable to reveal to the jury that both parties' investigations actually disprove Lyter's contentions about the supposed rarity of fragranced gel inks – the major pillar of his contamination opinion.  This evidence should therefore be excluded pursuant to Rule 403.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court preclude MGA from presenting any testimony from Dr. Lyter that the menthol reflected in Dr. Aginsky's results could have resulted from contamination.

DATED:  March 14, 2011               QUINN EMANUEL URQUHART &
                                     SULLIVAN, LLP


                                     By  /s/ Michael T. Zeller
                                         Michael T. Zeller
                                         Attorneys for Mattel, Inc. and Mattel de
                                         Mexico, S.A. de C.V.

---

[7]   TX 9778-1.
[8]   The fliers were attached to Dr. Aginsky's December 26, 2010 supplemental report.  See TX 23561.  Dr. Lyter has conceded that whenever there is a mint scented pen, it should be caused by menthol.  Lyter Depo. Tr. 763:19-764:1.