QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc., and Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE OPINIONS AND TESTIMONY OF JAMES E. MALACKOWSKI**<br><br>*DAUBERT* MOTION NO. 2<br><br>Hearing Date: TBD<br>Time: TBD<br>Place: Courtroom 9D |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................. 2

I. MR. MALACKOWSKI'S HEAD START FIGURES RELATING TO NEWLY IDENTIFIED MY SCENE PRODUCTS ARE ARBITRARY AND UNRELIABLE ............................................................................... 2

  A. The New Damages Claim Relates To Supposed Claims Not Disclosed Until Two Weeks Into Trial ................................................ 2

  B. The New Damages Claim Lacks The Required Factual Basis ................. 2

II. MR. MALACKOWSKI'S OPINION REGARDING MATTEL'S ALLEGED UNJUST ENRICHMENT MUST BE EXCLUDED BECAUSE IT FAILS TO TAKE INTO ACCOUNT MATTEL'S OWN SWEAT EQUITY ........................................................................................ 6

III. MR. MALACKOWSKI'S SET-OFF OPINIONS MUST BE EXCLUDED ................................................................................................ 7

  A. Mr. Malackowski's Set-off Opinions Must be Excluded Because They Are Based On the Injunction ................................................ 7

  B. Mr. Malackowski's Set-off Opinions Also Must Be Excluded Because They Are Based On Other No Longer Viable Claims .................. 8

IV. MR. MALACKOWSKI'S APPORTIONMENT OPINIONS BASED ON THE BRYANT AGREEMENT SHOULD BE EXCLUDED .............................. 9

V. MR. MALACKOWSKI'S OPINIONS REGARDING APPORTIONMENT OF MATTEL'S LOST PROFITS MUST BE EXCLUDED ............................................................................................. 10

CONCLUSION ........................................................................................................ 12

# TABLE OF AUTHORITIES

**Page**

## Cases

Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.,
    135 F. Supp. 2d 1031 (N.D. Cal. 2001) .................................................................... 5

Bracco Diagnostics, Inc. v. Amersham Health, Inc.,
    627 F. Supp. 2d 384 (D. N.J. 2009) ........................................................................... 9

Cartel Asset Management v. Ocwen Financial Corp.,
    249 Fed. Appx. 63, 78 (10th Cir. 2007) .................................................................. 11

Daubert v. Merrell Dow Pharms., Inc.,
    509 U.S. 579 (1993) ............................................................................................. 1, 4

Guillory v. Domtar Indus.,
    95 F.3d 1320 (5th Cir. 1996) .................................................................................... 5

IQ Prods. Co. v. Pennzoil Prods. Co.,
    305 F.3d 368 (5th Cir. 2002) .................................................................................... 9

Law Bulletin Pub., Co. v. Rodgers,
    1988 WL 130024 (N.D. Ill. 1988) .......................................................................... 10

Mackie v. Rieser,
    296 F.3d 909 (9th Cir. 2002) .................................................................................. 12

Sheldon v. Metro-Goldwyn Pictures Corporation,
    309 U.S. 390 (1940) ............................................................................................... 11

Sokol Crystal Products, Inc. v. DSC Commc'ns Corp.,
    15 F.3d 1427 (7th Cir. 1994) .................................................................................... 2

## Statutes

17 U.S.C.
    § 504(b) ................................................................................................................... 12

Fed. R. Evid.
    Rule 702 ............................................................................................................... 1, 5

## Miscellaneous

Restatement (Third) Unfair Competition § 45 cmts. e & ............................................. 11

3 Nimmer § 14.03[C], at 14-42 ....................................................................................... 12

**Preliminary Statement**

The testimony of MGA's damages expert, James Malackowski, should be limited in at least five ways that have not yet been addressed.

*First*, Mr. Malackowski manages to conclude, in his January 28, 2011 supplemental report, that Mattel has been unjustly enriched to the tune of $132.9 million in head start damages due to Mattel's sale of 32 "My Scene" products (supposedly including MGA trade secrets), yet he *identifies no basis for concluding that any of these products actually had, or benefitted from, any head start*. Mr. Malackowski does not even attempt to verify the existence of the most basic prerequisite of any head start damages analysis–the time period of the head start each product purportedly received. Instead, he simply assumes, with no evidence, that there was a head start period, and then arbitrarily selects and applies the percentage he derived earlier for two other products to the 32 at issue here. While a damages expert is entitled to assume liability, he is not entitled to simply conjure up numbers that are completely untethered to the facts. This damages calculation is arbitrary, speculative and precisely the sort of unreliable expert opinion that trial courts are charged with excluding under Rule 702 and Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

*Second,* Mr. Malackowski's unjust enrichment opinions should be excluded because they fail to apportion profits to take into account Mattel's own sweat equity.

*Third,* Mr. Malackowski stated at deposition that he intends to offer testimony about alleged harm due to the injunction and Mattel's alleged RICO activities as "setoff" damages. The Court's January 17, 2011 Order held that this is not permissible, and any such testimony should be excluded.

*Fourth,* Mr. Malackowski's reliance on the 3 percent royalty rate in the agreement between Carter Bryant and MGA as a basis for apportionment is inappropriate under the Court's reasoning that the bilateral agreement of the parties is irrelevant to apportionment.

*Finally,* Mr. Malackowski's apportionment analysis with respect to Mattel's lost profits is wholly improper—apportionment is an equitable concept which may only be

applied to unjust enrichment, not actual losses—and must be excluded as well.

## Argument

### I. MR. MALACKOWSKI'S HEAD START FIGURES RELATING TO NEWLY IDENTIFIED MY SCENE PRODUCTS ARE ARBITRARY AND UNRELIABLE

This Court is of course familiar with the standards for expert testimony, requiring that "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Mr. Malackowski fails to meet these standards, because his opinion is not based on proper facts or data, and proceeds simply by multiplying an unrelated number by the number of products at issue.

#### A. The New Damages Claim Relates To Supposed Claims Not Disclosed Until Two Weeks Into Trial

Mattel's Motion To Preclude MGA's Late-Tendered Contentions That Mattel Products Use MGA Trade Secrets, filed on February 7, 2011 (Dkt. No. 9823), is unopposed by MGA. As is thus undisputed, Mr. Malackowski's opinions in his January 28, 2011 Supplemental Report regarding Mattel's alleged unjust enrichment are based on allegations that 32 "My Scene" products used MGA's trade secrets—allegations that were not disclosed at all during discovery and were in fact disclosed for the first time two weeks into trial in Mr. Malackowski's Supplemental Report. For this reason, Mattel has moved to preclude these claims; for the same reason, much of this motion can be disposed of on that ground alone.

#### B. The New Damages Claim Lacks The Required Factual Basis

By their very definition, "head start" damages for trade secret misappropriation are limited to the time period of the purported head start. See Sokol Crystal Products, Inc. v. DSC Commc'ns Corp., 15 F.3d 1427, 1433 (7th Cir. 1994) ("where a misappropriation of a trade secret only gives a competitor a 'head start' in developing a product, damages should be limited to the injury suffered in that 'head start' period") (citation omitted). Yet in his Supplemental Report, Mr. Malackowski does not even attempt to identify, let alone

factor into his damages estimate, *any specific head start time period* for any of the "My Scene" products that MGA has recently identified as allegedly using MGA's trade secrets.[1]

Instead, Mr. Malackowski simply selects 24 percent of revenues as his head start damages. He contrived this percentage from the alleged head start damages for two "My Scene" products, "Chillin' Out" and "Bling Bling," in his November 5, 2010 report, and then uses this as his head start damages estimate for the 18 of the 32 "My Scene" products for which had revenue data (he had no revenue data at all for the other 14 products).[2] Mr. Malackowski then came up with an average for those 18 and applied it to all 32 products. Using this "methodology," he determined that each of the 32 "My Scene" Products generated $4.15 million in head start unjust enrichment—even though Mr. Malackowski has no evidence that 14 of those products generated any revenue at all nor any evidence as to how long a head start any of them supposedly had.[3]

Mr. Malackowski's explanation for why he applied this completely speculative "methodology" only serves to confirm its impropriety. Rather than attempting to identify an actual head start period for each product and then calculating damages as a function of that head start, he testified that it's not possible" to consider the appropriate time period for head start damages for the individual products.[4] But even this assertion is contradicted by his own report. Mr. Malackowski had no monthly sales data for "Chillin' Out" and "Bling Bling," either, yet he was still able to calculate damages for these products for the specific

---

[1] See Supplemental Report of James E. Malackowski 9-14, Jan. 28, 2011.
[2] See Supplemental Report of James E. Malackowski 12-13, Jan. 28, 2011.
[3] Malackowski Depo. Tr. 595:25-596:10, Feb. 8, 2011. ("Q. And what is the difference between the 18 My Scene products that you applied the 24 percent to and the full 32 My Scene products that you applied a similar average head start benefit to on page 13? A. I only have My Scene revenues for the 18. I don't have the data for the remaining of the 32, so I used the 18 to determine an average head start per product of approximately $4.15 million, and then used that to estimate the head start benefit for the remaining 14 products as shown on page 13 in the Table 6 and Table 7.")
[4] Malackowski Depo. Tr. 645:1-14, Feb. 8, 2011; see also Supplemental Report of James E. Malackowski 12, Jan. 28, 2011.

MATTEL'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION *IN LIMINE* RE: OPINIONS AND TESTIMONY OF MALACKOWSKI

head start period these products allegedly enjoyed.[5]

In other words, Mr. Malackowski did in his November 5 Report precisely what he claimed he was unable to do in his Supplemental Report—calculate head start damages for a specific time period even in the absence of monthly data.

In his January 28 Supplemental Report, however, Mr. Malackowski simply failed to identify any head start period for any of the 32 "My Scene" products addressed in that report.  It is one thing to assume liability; it is quite another for an expert in head start damages not to even attempt to identify the head start period in his calculations, instead using a percentage derived (only after considering their respective and different head start periods) from two other products.  Simply assuming there was a head start period of a comparable length for the 32 products—without any concern for when the alleged trade secrets were misappropriated, and without any evidence showing when the "My Scene" products were released in relation to this alleged misappropriation—amounts to pure speculation.  Mr. Malackowski's failure, compounded by his simple multiplication technique applied to products which may have produced no revenue at all, leaves his opinion connected to facts only by the expert's "*ipse dixit.*"  General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) ("Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

The most plausible explanation for Mr. Malackowski's non-methodology is that, in fact, there were no head start periods for most of these "My Scene" products.  They were released either before the relevant toy fairs or well after the corresponding Bratz product was publicly sold—in some cases *years* afterwards.  Tellingly, Mr. Malackowski's two prior head start calculations for "My Scene Chillin' Out" and "My Scene Bling Bling"

---

[5]  Expert Report of James E. Malackowski, , at 99, 101, Nov. 5, 2010.

vary significantly, affirming just how little sense it makes to simply apply a single percentage across the board. For "My Scene Chillin' Out," Mr. Malackowski calculated that the purported head start included five months of additional sales in the marketplace and reflected 41.7 percent of total revenues for the product.[6] For "My Scene Bling Bling," Malackowski calculated that the purported head start included three months of additional sales in the marketplace and reflected 21.8 percent of total sales for the product—a difference of nearly 100 percent.[7] Yet, in his supplemental report, Mr. Malackowski simply adds up the total revenues for these two products, divides them by the sum of his head start calculations for both products, and presents the resulting percentage–24 percent–as his head start damages estimate,[8] even though there is no relationship between this percentage figure and any purported head start period for *any* of the 32 "My Scene" products, nor any explanation for why it might be even remotely useful.

Such arbitrary, speculative calculations do not meet the Rule 702 and Daubert standard, and should be excluded. See Guillory v. Domtar Indus., 95 F.3d 1320, 1330-31 (5th Cir. 1996) (excluding expert testimony based on "altered facts and speculation"); Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc., 135 F. Supp. 2d 1031, 1040-41 (N.D. Cal. 2001) (excluding expert's arbitrary "assumptions and simplifications that are not supported by real-world evidence"). The failure even to consider whether there was a head start for the 32 products, much less to try to estimate what it was for each, means that his opinions are not "based upon sufficient facts or data." Fed. R. Evid. 702; see also Zenith Electronics Corp. v. WH-TV Broadcasting Corp., 395 F.3d 416, 418 (7th Cir. 2005) (affirming exclusion of expert damages opinion where expert failed to look at actual sales outside small geographic region of alleged harm, "even for a reality check," and thus the opinion was not based on sufficient facts). Mr. Malackowski's unjust enrichment head

---

[6] Expert Report of James E. Malackowski at 98, Nov. 5, 2010; Supplemental Expert Report of James E. Malackowski, 12, Jan. 28, 2011.

[7] Expert Report of James E. Malackowski at 100, Nov. 5, 2010; Supplemental Expert Report of James E. Malackowski, 11-12, Jan. 28, 2011.

[8] Supplemental Expert Report of James E. Malackowski, 12, Jan. 28, 2011.

start calculations in his January 28 Supplemental Report should therefore be excluded.

## II. MR. MALACKOWSKI'S OPINION REGARDING MATTEL'S ALLEGED UNJUST ENRICHMENT MUST BE EXCLUDED BECAUSE IT FAILS TO TAKE INTO ACCOUNT MATTEL'S OWN SWEAT EQUITY

Mr. Malackowski's opinions on Mattel's alleged unjust enrichment based on "My Scene" profits must also be excluded because he fails to apportion profits between those generated by the purported use MGA's alleged theme trade secrets and those generate by Mattel's contributions, including Mattel's sweat equity.

During the <u>Daubert</u> hearings on Mr. Wagner, the Court indicated that for Mattel's trade secret claims, "Mattel would bear the burden of proving unjust enrichment and unjust enrichment does not include sweat equity and business expenses, and Mattel would bear the burden of apportioning out those amounts."[9] The Court also stated: "tentatively, [it] seems that if you bear the burden of proving unjust enrichment and second unjust enrichment does not include sweat equity and business expenses, then you bear the burden of apportioning out those amounts."[10] Moreover, MGA argued with respect to jury instructions that the plaintiff bears the burden of apportioning out the contributions of the defendant's own sweat equity.[11] MGA, therefore, also must bear the burden of apportioning Mattel's purported unjust enrichment on MGA's trade secret claims.

Mr. Malackowski's unjust enrichment calculations fail to apportion the "My Scene" profits attributable to Mattel's sweat equity. Mr. Malackowski admitted at his deposition that this failure to apportion is intentional: "I think I understand your question to be

---

[9] <u>See</u> Daubert Hearing, Trial Day 26, Vol. 4 (3/2/2011) at 20:6-22:11.
[10] <u>See</u> Daubert Hearing, Trial Day 26, Vol. 4 (3/2/2011) at 5:1- 6:22.
[11] <u>See</u> Docket No. 9720 at 153 ("You must take into consideration the extent to which the defendant's profits are the result of factors other than the alleged misappropriation of trade secrets. Amounts attributable to the contributions by the defendant to the accused products, or attributable to the defendant's efforts to market or sell the accused products, are not unjust enrichment. The claimant must prove with reasonable certainty what portion, if any, of the commercial success of the defendant's products is attributable to the alleged trade secrets and not the result of the defendant's efforts. You must not include in an award for unjust enrichment any profits attributable to factors other than the alleged trade secrets, including any profits attributable to the defendant's hard work, skill, investment, or ingenuity.").

effectively, did I conduct an apportionment analysis for the head start. And if that's your question, no. As I understand the law and accepted methodology for head start, it's not necessary to apportion between the trade secret or other assets. It's a but for event."[12]

Mr. Malackowski's unjust enrichment methodology is thus improper. He merely awarded all of Mattel's profits during the so-called "head start" period to MGA's alleged theme trade secrets and does not apportion any of those profits to Mattel's own sweat equity. There is no support in logic, fact, or law as enunciated by this Court for Mr. Malackowski's conclusion that unjust enrichment includes the trade secret defendant's sweat equity, and there is no need to apportion merely because damages are limited to a particular period of time. Indeed, it is illogical to assume that every dollar of profit generated by a "My Scene" product during the "head start" period was attributable to allegedly misappropriated "theme" and that none of the profits are attributable to Mattel's contributions, including the design of the "My Scene" doll itself and Mattel's own sweat equity. Mr. Malackowski's unapportioned unjust enrichment calculations for MGA's trade secret claim should be excluded.

### III. MR. MALACKOWSKI'S SET-OFF OPINIONS MUST BE EXCLUDED

#### A. Mr. Malackowski's Set-off Opinions Must be Excluded Because They Are Based On the Injunction

Flatly contravening the Court's recent order, Mr. Malackowski asserted at his February 8, 2011, deposition that the $289 to $337 million in Bratz estimated lost profits he attributes to the injunction[13] are still relevant to set-off to damages sought from MGA by Mattel.[14] According to Mr. Malackowski, he intends to testify about the "setoff in part to show the impact of the injunction as a subtraction from a calculation of total MGA harm."[15] But the Court's January 17, 2011 order specifically rejected this attempt to

---

[12] 390:23-391:4
[13] See Expert Report of James E. Malackowski at 2-4, Nov. 5, 2010.
[14] Malackowski Depo. Tr. 429:6-25, 567:8-21, Feb. 8, 2011.
[15] Malackowski Depo. Tr. 430:3-5, Feb. 8, 2011.

reference damages allegedly due to the injunction as a "set-off defense."[16]  As this court ruled, the injunction "is no longer relevant to any of the pending claims or defenses in this lawsuit,"[17] and MGA's supposed set-off defense "is a new and unconvincing attempt to circumvent the logic in the Court's order dismissing MGA's counterclaim in reply for wrongful injunction."[18]  Any testimony from Mr. Malackowski related to the injunction, including any testimony regarding alleged "set-off" damages calculated with reference to the injunction, should be excluded as contrary to this Court's unambiguous ruling.  This error infects his entire analysis.  Mr. Malackowski testified that he could not "have done the calculation of the harm without . . . considering the impact of the injunction."[19]  Because Mr. Malackowski's calculations of damages purportedly due to the injunction are inextricably intertwined with his non-injunction MGA lost profits analyses, Mr. Malackowski's entire set-off opinion must be excluded.

### B. Mr. Malackowski's Set-off Opinions Also Must Be Excluded Because They Are Based On Other No Longer Viable Claims

Mr. Malackowski's set-off opinion must be excluded for another reason: it fails to limit MGA's losses to actionable misconduct.  Mr. Malackowski was explicit in his February 8. 2011 deposition that the multi-hundred million dollar MGA lost profits calculation offered in his November 5 report was *not* a trade secrets damages number: "[t]he multihundred-million-dollar lost profits analysis from my November 5th report was not put forward as a trade secret claim.  It was put forward as a RICO damage claim, as an

---

[16] Order on Motions in Limine, dated Jan. 17, 2011. at 18 [Dkt. No. 9669].
[17] Id.
[18] Id. [Dkt. No. 9669].  According to the Court's October 5, 2010 order, "MGA is not entitled to recover the damages it sustained as a result of the wrongfully imposed injunction," and MGA's Third Counterclaim in Reply for "Wrongful Injunction" has been dismissed with prejudice. See Order Granting in Part and Denying in Part Motion to Dismiss; Striking as Moot Cross-Motion for Leave to Amend dated October 5, 2010, at 14, 15 & 21 [Docket No 8892].
[19] Malackowski Depo. Tr. at 49:20-50:4, Dec. 7, 2010 ("Q. And you could just as easily have calculated the net; you just chose, for whatever reasons you had, to first start with a bigger number and then subtract out the damages due to the injunction; is that correct? A. No. I think they're integral -- inter- -- they're directly related. ***I don't think I could have done the calculation of the harm without the injunction without considering the impact***
(footnote continued)

unjust enrichment damage claim, as a common law unfair competition damage claim, and a setoff."[20] Mr. Malackowski also conceded that this lost profits analysis does *not* distinguish between actionable and non-actionable activities by Mattel, such as Mattel's alleged RICO activities.[21] As discussed in detail in Mattel's Daubert Motion No. 2 and Reply, this is improper, and Mr. Malackowski's damages analyses have been excluded in the past for this very same methodological flaw. See IQ Prods. Co. v. Pennzoil Prods. Co., 305 F.3d 368, 376-77 (5th Cir. 2002) (affirming exclusion of expert opinion where expert considered combined effect of two allegedly tortious acts, but did not consider them independently, and one was determined to be non-actionable); Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 442-44 (D. N.J. 2009) (excluding Mr. Malackowski's opinions, stating "Mr. Malackowski has failed to account for the market effects of these non-tortious efforts. Mr. Malackowski's failure to account for the effects of non-tortious activity is fatal to the validity of his calculations."). Accordingly, Mr. Malackowski's lost profits "setoff" calculation based on non-actionable conduct must be excluded.

### IV. MR. MALACKOWSKI'S APPORTIONMENT OPINIONS BASED ON THE BRYANT AGREEMENT SHOULD BE EXCLUDED

Mr. Malackowski purports to offer six different apportionment methodologies for apportioning Bratz profits in connection with Mattel's claims against MGA: "license rates," "investment rates," "profit rates," "product profit comparisons," "influence factors," and "time contribution."[22] The first three of these apportionment methodologies are based on the 3 percent royalty rate in the agreement between Carter Bryant and MGA

---

*of the injunction*.").
[20] Malackowski Depo. Tr. at 547:10-15, Feb. 8, 2011.
[21] Malackowski Depo. Tr. 568:2-10, Feb. 8, 2011 ("Q. So the 563 million you attribute to all accused Mattel wrongful acts; correct? A. Yes. Q. And where do you break out the individual acts that total 563 million? A. There's no apportionment, other than to the injunction. The 563 million is determined based upon but-for sales, less actual sales, using projections.")
[22] See Rebuttal Expert Report of James E. Malackowski at 38-41 and 51-52, Dec. 1, 2010. Mr. Malackowski applies all six methodologies to the Bratz copyrights and all but
(footnote continued)

as "indicative of the maximum contribution" of the Bratz copyrights and the Bratz trade secrets "to the success of the Bratz dolls."[23] Reliance on this bilateral agreement for apportionment is inappropriate under the Court's reasoning that "[t]he bilateral agreement of the parties is irrelevant to apportionment, which should consider the *actual* unilateral investment made by MGA."[24] The bilateral agreement between Carter Bryant and MGA is no more relevant to the actual unilateral investment made by MGA than a hypothetical bilateral agreement between Mattel and MGA that this court ruled, at MGA's insistence, was inadmissible. Moreover, reliance on the 3 percent royalty negotiated by *Bryant* as a measure of the value of *Mattel's* intellectual property is unreliable and misleading. Mr. Bryant was not in the same position Mattel would have been in when the agreement was negotiated—specifically, he faced a much greater risk by turning down MGA's offer and taking Mattel's intellectual property elsewhere, had no means to exploit the intellectual property in the marketplace himself, and acknowledged that one of the benefits from entering into the agreement with MGA was to "get into, you know, designing product a little bit more independently."[25] The 3 percent royalty rate is neither indicative of the "*actual* unilateral investment made by MGA" nor the value of Mattel's intellectual property. Any apportionment methodology relying on the Bryant/MGA Agreement to apportion the relative contribution of MGA's "sweat equity" to Bratz' success should be excluded.

## V. MR. MALACKOWSKI'S OPINIONS REGARDING APPORTIONMENT OF MATTEL'S LOST PROFITS MUST BE EXCLUDED

As a matter of law, apportionment is relevant only to the calculation of a defendant's wrongful profits, not a plaintiff's lost profits. See Law Bulletin Pub., Co. v. Rodgers, 1988 WL 130024, *4 (N.D. Ill. Nov. 28,1988) (denying motion to exclude

---

the "time contribution" methodology to the Bratz trade secrets.
[23] Id. at 39. See also Id. at 51-52
[24] Dkt. No. 10130 at 3.
[25] See Supplemental Rebuttal Expert Report of Michael J. Wagner at 14-18, Dec. 24, 2010.

evidence of plaintiff's lost profits in copyright case on basis that plaintiff failed to "apportio[n] its alleged lost profits to isolate that part attributable to [defendant's] use of the copyrighted material," holding that apportionment "is relevant only to the calculation of [defendant's] profits, not to [plaintiff's] lost profits."). The Copyright Act allows a defendant to offer proof as to which portion of its profits is attributable to factors other than the infringement, but makes no such concession for the plaintiff's lost profits, and instead allows for actual damages suffered "as a result of" the infringement. 17 U.S.C. § 504(b).[26] This is logical: regardless of the portion of a defendant's profits attributable to the infringement, a "Barbie" product sale lost to a "Bratz" sale is a total loss, and any such loss is suffered "as a result of" the infringement, even if it is not the sole cause. Nor is apportionment proper for trade secret lost profits. Paralleling Section 504(b) of the Copyright Act, the Restatement (Third) of Unfair Competition indicates that a defendant's unjust enrichment may be apportioned, but makes no reference to apportionment of loss profits. See Restatement (Third) Unfair Competition § 45 cmts. e & f; see also Cartel Asset Management v. Ocwen Financial Corp., 249 Fed. Appx. 63, 78 (10th Cir. 2007) (noting that courts apply copyright apportionment principles in trade secret cases).

Indeed, that apportionment is neither proper nor supported by any law is demonstrated by MGA's own failure to submit any jury instructions suggesting apportionment of Mattel's lost profits. This is unsurprising given that neither the Ninth Circuit Model Instructions nor CACI, while both allowing for apportionment of a defendant's unjust enrichment, make any allowance for apportionment of lost profits. See 9th Cir. Civ. Jury Instr. 17.23; CACI 4409. Apportionment is an equitable concept and accordingly is properly applied to unjust enrichment, an equitable remedy. Sheldon v.

---

[26] "The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."

Metro-Goldwyn Pictures Corporation, 309 U.S. 390, 399 (1940) (noting that the concept of apportionment in intellectual property cases was "established upon equitable principles"); see also 4 Nimmer § 14.03[D][1] (noting that Copyright Act of 1976 expressly adopted the apportionment principle announced in Sheldon). In proving monetary damages such as lost profits, however, the plaintiff need only show that the plaintiff's losses were caused by the defendant's wrongful acts, consistent with normal tort damages principles. Mackie v. Rieser, 296 F.3d 909, 915 (9th Cir. 2002) (noting that tort damages principles are applied in the copyright context). There is no principle, equitable or otherwise, supporting the notion that where the requisite causation is shown, a defendant is entitled to apportionment of a plaintiff's lost profits for either trade secret misappropriation or copyright infringement.

Mr. Malackowski's opinions apportioning Mattel's lost profits should be excluded. Mattel is entitled to the full loss it has suffered "as a result of" the infringement or "caused" by the misappropriation (see CACI 4409) and it is not proper for Mr. Malackowski to offer opinions diminishing that amount to a tiny fraction of the lost profits Mattel actually suffered under the aegis of a nebulous apportionment exercise.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court preclude MGA from offering or relying upon Mr. Malackowski's opinions regarding: 1) the purported "head start" damages for the newly-identified My Scene products; 2) any unapportioned unjust enrichment calculations; 3) any "set-off" damages calculations; 4) any apportionment or royalty opinions based on Carter Bryant's 3 percent royalty agreement with MGA; and 5) apportionment of Mattel's lost profits.

DATED: March 15, 2011           QUINN EMANUEL URQUHART &
                                SULLIVAN, LLP

                                By /s/ John B. Quinn

_____
John B. Quinn
Attorneys for Mattel, Inc. and Mattel de Mexico. S.A. de C.V.
