<pre>
 1                  UNITED STATES DISTRICT COURT

 2                 CENTRAL DISTRICT OF CALIFORNIA

 3                SOUTHERN DIVISION AT SANTA ANA

 4         HONORABLE DAVID O. CARTER, JUDGE PRESIDING

 5

 6
     MATTEL, INC., ET AL.,              )
 7                                      )
                 PLAINTIFFS,            )
 8                                      )
             vs.                        ) CV NO. 04-9049-DOC
 9                                      ) VOLUME 3 of 3
     MGA ENTERTAINMENT, INC., ET AL.,   )
10                                      )
                 DEFENDANTS.            )
11   _____)

12

13

14            REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                     STATUS CONFERENCE

16                   SANTA ANA, CALIFORNIA

17                  MONDAY, MARCH 14, 2011

18                        4:51 P.M.

19

20
                DEBORAH D. PARKER, CSR 10342
21                 OFFICIAL COURT REPORTER
                UNITED STATES DISTRICT COURT
22                 411 WEST FOURTH STREET
                       SUITE 1-053
23              SANTA ANA, CALIFORNIA 92701
                      (714) 542-8409
24                D.PARKER@IX.NETCOM.COM

25
</pre>

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1   APPEARANCES OF COUNSEL:

 2       FOR THE PLAINTIFF, MATTEL, INC.:

 3                           JOHN QUINN
                             MICHAEL T. ZELLER
 4                           JOHN S. GORDON
                             QUINN EMANUEL URQUHART
 5                           & SULLIVAN, LLP
                             865 S. FIGUEROA STREET
 6                           10TH FLOOR
                             LOS ANGELES, CALIFORNIA 90017
 7                           (213) 443-3000

 8
         FOR THE DEFENDANT, MGA ENTERTAINMENT, INC.:
 9
                             THOMAS S. MC CONVILLE (Not Present)
10                           ORRICK HERRINGTON & SUTCLIFFE, LLP
                             4 PARK PLAZA
11                           SUITE 1600
                             IRVINE, CALIFORNIA 92614
12                           (949) 567-6700

13
                             ANNETTE L. HURST
14                           ORRICK HERRINGTON & SUTCLIFFE, LLP
                             THE ORRICK BUILDING
15                           405 HOWARD STREET
                             SAN FRANCISCO, CALIFORNIA 94105
16                           (415) 773-5700

17
                             JENNIFER L. KELLER(Not Present)
18                           KELLER RACKAUCKAS, LLP
                             18500 VON KARMAN AVENUE
19                           SUITE 560
                             IRVINE, CALIFORNIA 92612
20                           (949) 476-8700

21

22

23

24

25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

69

```
 1   APPEARANCES OF COUNSEL:

 2        FOR THE DEFENDANT, CARLOS GUSTAVO MACHADO GOMEZ:

 3                           MARK E. OVERLAND (Not Present)
                             LAW OFFICES OF MARK E. OVERLAND
 4                           100 WILSHIRE BOULEVARD
                             SUITE 950
 5                           SANTA MONICA, CALIFORNIA 90401
                             (310) 459-2830
 6

 7                           ALEXANDER H. COTE (Not Present)
                             SCHEPER KIM & HARRIS, LLP
 8                           601 WEST FIFTH STREET
                             12TH FLOOR
 9                           LOS ANGELES, CALIFORNIA 90071
                             (213) 613-4660
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

1    SANTA ANA, CALIFORNIA; MONDAY, MARCH 14, 2011; 9:47 P.M.
2                              -oOo-
3         THE COURT:  We're back on the record.
4         This is now unsealed.  Both parties are present.
5         Concerning Friday afternoon session, ordinarily
6    Mattel's counsel's question which included hearsay about the
7    fact that Mr. Villasenor had demanded $3 million would
8    constitute a waiver of the attorney-client privilege.
9    However, after listening this evening, the record reveals to
10   this court that Mattel, in fact, retained separate outside
11   counsel in connection with the Villasenor investigation and
12   settlement negotiations.
13        In other words, Quinn Emanuel is not the holder or
14   a party to the attorney-client privilege.  The individuals
15   with knowledge on this subject may be Mr. Villasenor's
16   attorney, Mr. Patricio Barrera and Mattel's outside counsel,
17   Ms. Eve Wagner.  Neither individual has waived the
18   attorney-client or mediation privileges.  Unless they do so,
19   this is hearsay.  And Mattel's question will be ordered
20   stricken on Tuesday.
21        Regardless, Mr. Villasenor will probably be able
22   to set this record straight concerning the contention of
23   whether he was railroading, quite frankly, Mattel.  And
24   since he'll be testifying, neither counsel, of course, will
25   be precluded from asking if he initially demanded

1  $3 million.  Otherwise, it's hearsay.
2           Second, the order compelling the production of the
3  talking points and draft talking points distributed to
4  Mattel's employees on the eve of the filing of this lawsuit
5  against Carter Bryant was entirely proper by this court.
6           It's been argued this evening that the document
7  was never intended to be released to the public, but that's
8  irrelevant.
9           As evidenced by the recently ordered disclosure to
10 Mattel of Mr. Larian's e-mail to Craig Holden, just because
11 a document is an internal company document, it does not make
12 it privileged.  The set of talking points is not legal
13 advice sought by the client; therefore, it fails the first
14 prong of the Ninth Circuit's eight-part test in
15 *United States versus Mark Nagales*.
16          These talking points were meant for broad
17 dissemination for public relation purposes, not legal
18 purposes.
19          I think I'm going to send you home this evening,
20 and I'll go over the rest of the notebooks tomorrow, because
21 you have enough information to get through tomorrow.
22          I've got some writing and some thinking to do
23 tonight, so you're excused this evening.  We'll see you
24 promptly at 8:30 tomorrow.
25          Thank you.

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1        (Pause.)
 2             THE COURT:  We are on the record.
 3             All right.  Counsel has raised an issue with the
 4   court, concerning the expert tomorrow that will be called.
 5   I believe it's Dr. Lyter.
 6             MR. QUINN:  Right.
 7             THE COURT:  And Mr. Quinn has just submitted a
 8   brief that the court has not read yet, but I will this
 9   evening, concerning a motion in limine to exclude
10   contamination opinion of Dr. Lyter.
11             This is a rather broad request to exclude the
12   contamination opinion of Dr. Albert Lyter.  It says:  The
13   court has ruled that pen-manufactured correspondence and
14   business records are not the type of evidence reasonably
15   relied upon by experts.  Yet, Dr. Lyter, purported expert
16   retained by MGA has, relied on several hearsay e-mails and
17   one paragraph facts as the main foundation for his opinion
18   that menthol -- that the menthol, Mattel's expert,
19   Dr. Valerie Aginsky, found in a notation, quote, from 1998
20   Missouri, end of quote, in the notary book could be the
21   result of contamination.
22             This correspondence represents multiple layers of
23   hearsay as Lyter admitted that his correspondence were
24   merely -- were mere conduits for information from others,
25   pursuant to inquires he was not privy to.
```

73

1       It would be unfair to allow Dr. Lyter to present
2  the same kind of expert testimony that MGA objected to and
3  excluded on hearsay grounds.  Allowing Dr. Lyter to present
4  his contamination opinion without reference to the e-mails
5  would also be prejudicial, because these very e-mails as
6  well as the zebra flyers that were previously excluded from
7  Dr. Aginsky's testimony are important sources for
8  impeachment for Dr. Lyter's opinion.  For these reasons, the
9  court should preclude MGA presenting any testimony from
10 Dr. Lyter -- that the menthol reflected in Dr. Aginsky's
11 results could have resulted from contamination.
12      Lyter's contamination theory should be excluded,
13 as it is based on hearsay.  Lyter's contamination theory
14 heavily rests on what he calls a lack of a known source for
15 menthol and formulations, meaning that he has never seen
16 menthol used in ink gels.  The hearsay e-mails, in fact, are
17 the purported support for the supposed derth of menthol in
18 Ink formulations.
19      Well, let me stop right there.  He is certainly
20 not limited in stating what his personal experience is.  And
21 if his personal experience is broad, et cetera, he can cast
22 that opinion, if he has personal knowledge.  I'm not hearing
23 from counsel, but I'll turn to MGA that she's going to be
24 referring to e-mails, or faxes to support this opinion.
25      MS. HURST:  We have no intention of publishing

*DEBORAH D. PARKER, U.S. COURT REPORTER*

1  hearsay through this witness.  He's going to testify based
2  on his personal knowledge, which, by the way, included seven
3  years with the Secret Service, okay?
4           THE COURT:  I think that has been set aside then.
5  I don't think there's any concern.
6           MR. QUINN:  Your Honor, then, we should be able to
7  impeach him with e-mails that he got from a guy named
8  Gindelberger, saying that a certain period of time, Chinese
9  ink manufacturers were doing ink with menthol.
10          THE COURT:  He's not relying upon e-mails.  That's
11 what you're missing.  He's relying upon his personal
12 experience.  Just like Aginsky was limited to his personal
13 research and experience concerning menthol, Dr. Lyter is
14 relying upon his personal experience, also.  He's not
15 relying upon hearsay.
16          MR. QUINN:  Well, this experience includes he has
17 seen e-mails that in response to his inquiries from this guy
18 Gindelberger, for example, saying, Has National Ink ever
19 done this type of menthol pen?
20          They responded to him, *Yes, it existed.  This type*
21 *of ink existed.*
22          THE COURT:  I'm not hearing that at all.  I'm
23 hearing from MGA that it's going to be simply his personal
24 experience and that does not include e-mails.
25          MR. QUINN:  Well, we should be able to impeach him

75

```
 1   with it, your Honor.
 2              In response to his own inquiries and his work on
 3   this case, he was told that ink was produced that had
 4   menthol in it.  We should be able to refer to that.
 5              MS. HURST:  This is just another way of them
 6   trying to open the door to the hearsay.  Now, they want to
 7   say, if he testifies based on his personal experience, that
 8   somehow opens the door to their same discredited hearsay.
 9   That is inappropriate.  The rule -- and I have --
10              I mean, I'm handling this witness.  There is
11   nothing -- I can tell -- assure the court there's nothing in
12   the outline about the publication of any of that hearsay.
13   He's going to testify, based on his personal experience, and
14   that's it.
15              THE COURT:  Okay.  Hearsay is not going to be
16   allowed.
17              Thank you very much, counsel.
18              Good night.
19         (At 9:47 p.m., proceedings were adjourned.)
20
21                           -oOo-
22
23
24
25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

76

```
 1                          CERTIFICATE
 2           I hereby certify that pursuant to Section 753,
 3   Title 28, United States Code, the foregoing is a true and
 4   correct transcript of the stenographically reported
 5   proceedings held in the above-entitled matter and that the
 6   transcript page format is in conformance with the
 7   regulations of the Judicial Conference of the United States.
 8
 9   Date:  March 15, 2011
10
11
12                                  _____
13                                  Deborah D. Parker, Official Reporter.
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*