QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar. No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de C.V.,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S OFFER OF PROOF REGARDING EVIDENCE OF MGA'S RECEIPT OF INFORMATION REGARDING MATTEL'S UNRELEASED PRODUCTS;**<br><br>**AND NOTICE OF MOTION AND MOTION TO COMPEL;**<br><br>**AND MEMORANDUM OF POINTS AND AUTHORITIES** |

00505.07975/4014750.3

MATTEL'S OFFER OF PROOF AND MOTION TO COMPEL

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, plaintiffs Mattel, Inc. and Mattel de Mexico, S.A. de C.V. (collectively, "Mattel") respectfully submit this offer of proof relating to certain evidence that MGA employees entered Mattel's private toy fair showrooms and otherwise obtained information regarding unreleased Mattel products from toy fairs, planograms, and retailers.

In addition, Mattel moves the Court to compel MGA to produce attendance at trial of two former MGA employees who entered Mattel's private toy fair showrooms, Mr. Thomas Pfau and Ms. Kerstin Stumpf-Trautmann, and their respective MGA personnel files. This Motion is made on the grounds that MGA controls these former employees and should be compelled to provide their testimony at trial.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the records and files of this Court, and all other matters of which the Court may take judicial notice, and such further argument and evidence which may be presented at or before the hearing.

### Statement of Compliance

Lead counsel met and conferred regarding the issues presented by Mattel's Motion on March 13, 2011 and did not reach a resolution.

DATED: March 16, 2011         QUINN EMANUEL URQUHART & SULLIVAN. LLP

By */s/ John B. Quinn*
John B. Quinn
Attorneys for Mattel, Inc., and Mattel de Mexico. S.A. de C.V.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ............................................................................................................. 2

I. EVIDENCE OF MGA'S ACQUISITION OF AND ATTEMPTS TO ACQUIRE INFORMATION REGARDING UNRELEASED MATTEL PRODUCTS IS RELEVANT TO THE CLAIMS AND DEFENSES IN THIS CASE ................................................................................. 2

    A. The Offered Evidence Is Relevant to Undermine MGA's Claim That It Took Reasonable Efforts to Protect Its Alleged Trade Secrets ........................................................................................................ 2

    B. The Offered Evidence is Also Relevant To Impeach MGA's Testimony ............................................................................................... 5

    C. The Offered Evidence Is Relevant to Mattel's Unclean Hands Defense .................................................................................................. 7

II. THE COURT SHOULD COMPEL MGA TO PRODUCE RELEVANT WITNESSES AND DOCUMENTS ............................................ 8

III. MATTEL'S OFFERED DOCUMENTARY AND TESTIMONIAL EVIDENCE ............................................................................................... 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

MGA's trade secret misappropriation claim is based on allegations that Mattel employees obtained information on MGA's unreleased products by entering MGA showrooms without permission. Evidence shows that MGA employees were likewise entering Mattel's showrooms without permission to obtain unreleased product information. MGA employees also obtained unreleased Mattel product information from retailers, including by surreptitiously taking such information from retailer planogram rooms. Isaac Larian was the driving force behind these activities and praised MGA employees who obtained unreleased Mattel product information.

This evidence about MGA's conduct is relevant to the claims and defenses at issue. First, it undermines MGA's contention that it took reasonable efforts to protect its alleged trade secrets. Not only is this recognized by precedent, but MGA's own witnesses acknowledged the point. Second, the evidence is relevant to impeach the testimony of MGA witnesses that Mattel's acquisition of unreleased MGA product information was wrongful. Last, these acts are relevant to Mattel's unclean hands defense to MGA's trade secret misappropriation claim.

The Court also should compel MGA to produce former MGA executive Thomas Pfau and former MGA employee Kerstin Stumpf-Trautmann to appear at trial. Both Mr. Pfau and Ms. Stumpf-Trautmann entered Mattel's toy fair showroom while employed by MGA. Confirming these witnesses' continued relationship with MGA, MGA initially agreed to produce these witnesses at trial, but then reneged and refuses. Indeed, even after Mr. Pfau had left MGA, MGA had sufficient control over and cooperation from Mr. Pfau that it arranged for an MGA Rule 30(b)(6) witness to interview him.

MGA also refuses to produce the personnel files of Mr. Pfau and Ms. Stumpf-Trautmann, despite their obvious relevance. For its part, MGA has repeatedly sought, and the Court has required, the production of personnel files of any

employee with knowledge of toy fair infiltration, including most recently the personnel file of Geri Pilgrim just days ago. MGA likewise should be ordered to produce its relevant personnel files.

**Argument**

**I. EVIDENCE OF MGA'S ACQUISITION OF AND ATTEMPTS TO ACQUIRE INFORMATION REGARDING UNRELEASED MATTEL PRODUCTS IS RELEVANT TO THE CLAIMS AND DEFENSES IN THIS CASE**

**A. The Offered Evidence Is Relevant to Undermine MGA's Claim That It Took Reasonable Efforts to Protect Its Alleged Trade Secrets**

To establish trade secret misappropriation, MGA must show that its alleged trade secrets were "the subject of efforts that are reasonable under the circumstances to maintain [their] secrecy." Cal. Civ. Code § 3426.1(d)(2). "Among the factors relevant to the reasonableness of the trade secret owner's precautions are the foreseeability of the conduct through which the secret was acquired and the availability and cost of effective precautions against such an acquisition, evaluated in light of the economic value of the trade secret." Restatement (Third) Of Unfair Competition § 43.

Evidence that MGA obtained unreleased Mattel product information shows that MGA had no expectation of confidentiality in its showrooms or in other information it shared with retailers: MGA knew that competitors obtained MGA information from toy fair showrooms for the simple reason that MGA, too, obtained competitor information from toy fairs. And MGA knew that retailers shared MGA unreleased product information with MGA's competitors because MGA itself received information about MGA competitors' unreleased products from retailers. The jury should be permitted to consider the reasonableness of MGA's efforts to

protect information in light of its knowledge that MGA's own employees regularly collected competitive information at toy fairs and planograms.

Silicon Image, Inc. v. Analogix Semiconductor, Inc., 2008 WL 166950 (N.D. Cal. January 17, 2008), demonstrates the point.  The court found Silicon Image's claims of reasonable efforts to protect its trade secrets were undermined by evidence that Silicon Image disclosed its trade secrets to customers, even though it had information that its customers did not abide by the non-disclosure agreements they signed. Id.  Specifically, "customers provided Silicon Image with the confidential documents of *competitors* (albeit unsolicited) as early as 2004.  That evidence raises questions about whether Silicon Image's reliance on NDAs to protect its own confidential information was reasonable at the time the alleged copying occurred, in 2005 and 2006." Id. (emphasis added).

MGA testimony establishes the point as well.  MGA executive Patrick Potgiesser, for example, admitted that he received information about unreleased Mattel products.[1]  Indeed, he testified that he understood retailers and others were disclosing MGA unreleased product information to Mattel—because he knew that they were similarly disclosing Mattel unreleased product information to MGA:

> Q   It's your understanding that when you're sharing information with retailers, just as when Mattel has been sharing information with retailers, the retailers talk with others about it, right?
> THE DEPONENT:  I'd say yes.[2]
>
> Q   And it's the case that from time to time you received information from retailers about information they had received from Mattel, right?
> A   Yes.
> Q   About upcoming Mattel products and strategies, right?

---

[1]  Transcript of Potgiesser Deposition, dated October 26, 2010 at 98:16-99:2 (from time to time Potgiesser received information from retailers about information they had received from Mattel about upcoming Mattel products).

[2]  Id. at 97:19-25 (objections omitted).

>           A    I'm not sure about strategies, but products, yes.
>           Q    About products that are not yet on the market but will be, right?
>           A    Correct.
>           Q    And certainly you're not surprised when the retailers disclose the same kind of information about MGA, right?
>           THE DEPONENT:  Absolutely not.
>   BY MR. ZELLER:
>           Q    You're not surprised?
>           A    No.[3]

MGA Vice President of Sales Lisa Saunders also admitted her expectation that retailers disclose unreleased MGA product information to competitors based on her own experience of being able to obtain similar unreleased Mattel product information from retailers.  As she explained:

>           Q.  Is it your expectation as you sit here now that from time [to time] Kmart has discussed with Mattel unreleased MGA products?
>           THE WITNESS:  Yes.
>   BY MR. ZELLER:
>           Q.  You believe that that's occurred?
>           A.  Yes.
>           Q.  You wouldn't be surprised to find out if that happened; right?
>           A.  Correct.
>           Q.  And one reason you wouldn't be surprised if that's happened is, is because of what you described previously, which is your own experience where you've obtained information or received information from Kmart about unreleased Mattel products; right?
>           A.  Yes.
>           Q.  And the situation that we're talking about, this expectation that you've had, you've had this expectation the entire time you've been working there at MGA?
>           THE WITNESS:  Yes.[4]

This and similar evidence shows that MGA was on notice that disclosing its purported trade secrets to retailers and in toy fair showrooms would destroy or at least undermine any reasonable expectation of secrecy.  Larian has even admitted

---

[3] Id. at 99:3-7 (objections omitted).
[4] Transcript of Lisa Saunders Deposition, dated October 28, 2010 at 96:4-97:1 (objections omitted).

that "if a product is shown or, or more importantly, sent to a retailer planogram room, as you described it, they are not going to become confidential anymore;"[5] MGA's CFO too admitted that once information is released to a retailer, it is essentially released to the public.[6] It is relevant to the "reasonable efforts" inquiry that MGA disclosed its alleged trade secrets to retailers – although it knew that retailers shared competitive information – and showcased these alleged trade secrets in the toy fairs where MGA itself obtained information on Mattel's unreleased products.

### B. The Offered Evidence is Also Relevant To Impeach MGA's Testimony

That MGA's employees engaged in similar conduct – with Mr. Larian's knowledge and approval – also independently contradicts MGA's claim that this conduct is wrongful and impeaches key MGA witnesses who are expected to testify to the purportedly wrongful nature of obtaining competitors' unreleased product information. For example, Mr. Larian has repeatedly proclaimed that obtaining this information is unethical[7] and wrong, even "espionage."[8] Indeed, at trial, counsel for MGA solicited testimony that it "would have been improper for either Mattel or MGA to try to get that kind of information without permission of the other company" and that "it would be improper to ask retailers, let's say MGA had a private showroom and invited a select group of retailers in to see the products in the

---

[5] MGA 30(b)(6) Phase 2 – Larian, Isaac – Vol. 11, July 7, 2010, at 2816:19-23.

[6] MGA 30(b)(6) Phase 2 – Jolicoeur – Vol. 18, dated September 2, 2010, at 4934:6-22 ("Q. If the information is released to the retailer, it was released to the public? A. Yes.").

[7] MGA 30(b)(6) Phase 2 – Larian, Isaac – Vol. 26, October 5, 2010 at 6376:6-6376:20 (obtaining unreleased product information from toy fairs is "not … ethical.")

[8] MGA 30(b)(6) Phase 2 – Larian, Isaac – Vol. 15, August 12, 2010 at 3861:4-3862:4 ("When you have a picture of a product, our product, and the pricing on it, I definitely think that's a wrong act. I think it's confidential information. I think it's espionage.")

private showroom, it would have been improper for Mattel to try to get the information out of those retailers as to what they saw."[9]

Federal Rule of Evidence 607 authorizes impeachment by contradiction. Fed. R. Evid. 607 ("The credibility of a witness may be attacked by any party, including the party calling the witness."). See also United States v. Kincaid-Chauncey, 556 F.3d 923, 932 n.8 (9th Cir. 2009) ("Although impeachment by contradiction is not specifically formalized in the Federal Rules of Evidence, it is part of the general body of evidentiary law and is a permissible theory of impeachment under Federal Rule of Evidence 607."). Evidence that Mr. Larian participated in and acquiesced to acts similar to those that MGA and Mr. Larian now maintain are wrongful is relevant to impeach Mr. Larian and other MGA witnesses.[10] Mattel should be allowed to introduce evidence and elicit testimony regarding MGA's acquisition of Mattel unreleased product information from toy fairs without permission to impeach MGA's argument that Mattel's acquisition of similar information from toy fairs without permission was wrongful. Cf. Dorn v. Burlington N. Santa Fe R.R. Co., 397 F.3d 1183, 1193-4 (9th Cir. 2005) (reversing district court's exclusion of testimony rebutting and impeaching witness' conclusions).

---

[9] Trial Transcript, March 11, 2011, Day 32, Vol. 3 of 4 at 66:8-22 (Neil Friedman cross-examination).

[10] Unlike Federal Rule of Evidence 608(b), which "prohibits the use of extrinsic evidence of conduct to impeach a witness' credibility in terms of his general veracity …. impeachment by contradiction permits courts to admit extrinsic evidence that specific testimony is false, because contradicted by other evidence." United States v. Antonakeas, 255 F.3d 714, 724 (9th Cir. 2001) (upholding as proper introduction of extrinsic evidence that defendant was previously arrested for possession of cocaine after defendant "portrayed himself as an anti-drug counselor who taught kids to stay away from drugs.").

### C. The Offered Evidence Is Relevant to Mattel's Unclean Hands Defense

MGA's conduct is relevant to Mattel's unclean hands defense, asserted in answer to MGA's Counterclaims-in-Reply.[11]  The defense of unclean hands arises from the maxim "[h]e who comes into Equity must come with clean hands." Blain v. Doctor's Co., 222 Cal. App. 3d 1048, 1059 (1990).  The defense is available in trade secret misappropriation actions. Vacco Industries, Inc. v. Tony Van Den Berg, 5 Cal. App. 4th 34, 52 (1992) (applied doctrine of unclean hands to trade secret misappropriation claim, but found that acts pleaded under unclean hands defense were not sufficiently related to facts at issue); Kendall-Jackson Winery, Ltd. v. Superior Court, 76 Cal. App. 4th 970, 978 (1999) (unclean hands defense available in both legal and equitable actions).

The doctrine demands that a plaintiff act fairly in the matter for which he seeks a remedy.  "The misconduct which brings the clean hands doctrine into operation must relate directly to the transaction concerning which the complaint is made, i.e., it must pertain to the very subject matter involved and affect the equitable relations between the litigants." Fibreboard Paper Products Corp. v. East Bay Union of Machinists, 27 Cal. App. 2d 675, 728 (1964).  It is clear that MGA's conduct – obtaining information about Mattel's unreleased product information from retailers, toy fairs and planogram rooms – pertains to the very subject matter involved in MGA's trade secret misappropriation claim.

Whether unclean hands bars a claim is a question of fact. CrossTalk Productions, Inc. v. Jacobson, 65 Cal. App. 4th 631, 639 (1998).  As this Court has ruled, defenses of unclean hands, though equitable in nature, will be submitted to the

---

[11] Mattel, Inc.'s Reply And Answer To Defendant MGA Entertainment, Inc.'s Counterclaims-In-Reply, Dkt. 8928 at 11 ("MGA and Larian obtained and attempted to obtain information about unreleased Mattel products, including without limitation from Mattel's toy fair showrooms and by acts of spying").

jury in this litigation. The jury therefore should be able to hear this evidence and make the relevant determination.

## II. THE COURT SHOULD COMPEL MGA TO PRODUCE RELEVANT WITNESSES AND DOCUMENTS

Mattel has repeatedly requested that MGA ensure the attendance at trial of, among others, Thomas Pfau and Kerstin Stumpf Trautman, who infiltrated Mattel's toy fair showrooms. Mr. Pfau was Managing Director of MGA Germany until November 2008. Patrick Potgiesser, Managing Director for MGA Benelux and Nordics, testified that Mr. Pfau sneaked into Mattel's toy fair booth during the Nuremberg Toy Fair.[12] Former MGA employee Kerstin Stumpf Trautman, while a Senior Assistant at MGA, entered Mattel's Toy Fair showroom without permission and co-authored a report detailing unreleased Mattel information.[13]

Confirming its continued relationship with these witnesses, MGA initially agreed to produce Mr. Pfau and Ms. Stumpf-Trautmann to testify at trial, but later refused.[14] MGA should be ordered to produce them both. Cf. Kopperi v. Sikorsky Aircraft Corp., Inc., 2010 WL 3909351, *1 (D. Conn. September 28, 2010) (ordering that "Defendants make available for discovery and for trial, at their own expense, any documents or witnesses, *including retired employees*, within their control that are needed for a fair adjudication of plaintiffs' claims.") (emphasis

---

[12] Depo. Tr. of Patrick Potgiesser, dated Oct. 26, 2010 at 161:17-164:2.
[13] TX 09854. February 13, 2008 email by then-MGA Marketing Director Angelika Sternberg advising Isaac Larian and other MGA and Zapf managers that: "Two of our colleagues have been able to enter the booth of our competitor and wrote the attached report." The "competitor" was Mattel, and that report contained unreleased Mattel product information that was circulated to MGA management. The report was authored by "Kerstin + Katharina," and MGA organizational charts make clear that "Kerstin" was Ms. Stumpf-Trautmann. See MGA2 1800592 at MGA2 1800596.
[14] See January 12, 2011 and January 14, 2011 Letters from D. Mingrone to M. Zeller.

added). MGA's refusal to produce Mr. Pfau – a former MGA executive – is especially inappropriate. Even after he left MGA, Mr. Pfau assisted Ron Brawer in preparing for Brawer's Rule 30(b)(6) deposition regarding the allegations at issue, and is clearly cooperative with MGA. Mr. Brawer testified that he "called Mr. Pfau directly" and spoke to him on the phone.[15] It is clear that MGA can assure his attendance at trial and should be compelled to do so.

MGA also refuses to produce the personnel files of Mr. Pfau and Ms. Stumpf-Trautmann, despite repeated requests. Mattel, on the other hand, has already produced all relevant personnel files that MGA has requested – even of retired employees not on any witness lists. For example, just days ago, the Court granted MGA's mid-trial request that Mattel produce the personnel file of Geri Pilgrim, a retired Mattel HR employee who was reprimanded in the market intelligence gathering context.[16] Mr. Pfau and Ms. Stumpf-Trautmann's personnel files are likely to have relevant information, and MGA should be compelled to produce them.

## III. MATTEL'S OFFERED DOCUMENTARY AND TESTIMONIAL EVIDENCE

For these and other reasons, Mattel submits the following offers of proof of MGA's activities in gathering information about unreleased competitor products from toy fair showrooms, retailer planograms, and retailers. Mattel's offered evidence includes:

1) Testimony by MGA executive Patrick Potgiesser that MGA executive Thomas Pfau entered Mattel's toy fair showroom and that MGA employees have accessed and continue to access Mattel's showroom at the Nuremberg Toy Fair every year. Transcript of Potgiesser Deposition, dated October 26, 2010 at 161:17-162:2, 165:4-7, and 165:15-166:8.
2) Testimony by MGA Vice President of Sales Lisa Saunders that Isaac Larian has directed MGA employees to obtain unreleased

---

[15] Transcript of Zapf Rule 30(b)(6) Deposition, dated December 30, 2010 at 57:16-20.

[16] At bates numbers M 2028009-M 2028136.

Mattel and competitor product information from planogram rooms and from retailers.  Transcript of Lisa Saunders Deposition, dated October 28, 2010 at 97:24-99:5 and 125:9-20.

3) TX 09854. February 13, 2008 email by then-MGA Marketing Director Angelika Sternberg advising Isaac Larian and several other MGA and Zapf managers that: "Two of our colleagues have been able to enter the booth of our competitor and wrote the attached report."  The "competitor" was Mattel, and the report contained unreleased Mattel product information that was circulated to MGA management.

4) TX 09875. April 30, 2002 email from Isaac Larian to Julie Mote Subject RE: FW: pictures.  Includes email from Susanna Kuemmerle to Isaac Larian dated April 29, 2002 where she writes, "YOU SHOULD HAVE SEEN ME WITH MY DIGITAL CAMERA TAKING THE PICTURE IN THE MIDDLE OF THEIR SHOWROOM….I WAS DOING SPY WORK FOR YOU!" (all caps in the original email).

5) TX 01939.  December 16, 2004 email by then-MGA PR Director David Malacrida to Isaac Larian, Subject "Insider Mattel/Barbie News."  Malacrida writes "From a source of my [sic] in NYC …" and forwards BARBIE information obtained from a Mattel preview.   Larian in turn forwards to Paula Garcia, Ed Rodriguez, Mercedeh Ward, Ron Brawer, Nick Contreras, and Diana Lin.

6) TX 08931.  January 31, 2003 email by Isaac Larian to MGA sales staff, subject "Competitive Info."  Larian writes: "As you go to POG [i.e., planograms] or talk to buyers, please check and let me know what are our competitors doing in Fashion Dolls, Mini Dolls, Large dolls: Mattel Jakkx, Bandai, Hasbro."  Janine Firth responds on February 3, 2003: "I was at the layout room today and walked the aisle, since no buyers are around today. Here's what I got!" Her response includes information on Mattel products.

7) TX 09334.  January 27, 2004 email by Isaac Larian to Shawn Brower with copies to Julie Chomo and Jessica Calafa, Subject Re: Target.  Shawn Brower writes: "I tried to steal a line list from the mattel [sic] showroom, but all i [sic] was able to get was a licensee list and marketing one sheet, passed both to marcy."

8) TX 9427. January 19, 2005 email from Isaac Larian to Lisa Saunders, Ron Brawer, and Nick Contreras, Subject "RE: Barbie vs. Bratz." Lisa Saunders forwards Mattel's space allocation and states: "Do not pass this info to anyone, I could get in trouble for snooping. Here is the space for Fall in case of Barbie (Mattel) Vs Bratz." Larian writes in response: "Good Job! You are cooking, How many feet for Babyes and Rescue Pets."

9) TX 09617. February 9, 2005 email from Margot Lopez to Shirin Makabi, Ron Brawer, and Shirin Salemnia, Subject RE: how are we doing on room nights for NYTF.  Brawer writes to Margot Lopez: "I'd like to see if we can get shirin in for a few days to collect catalogues from other showrooms (2 nights)."

10) TX 9429. August 26, 2005 email from Lisa Saunders to Ron Brawer, Subject "RE: YTD Fall 05 Sales- Dolls- Kmart."  This email is in response to a prior email by Saunders on August 25,

2005 where she provides toy rankings and states: "I was just at planogram and given this info today (not to go further than this email) for year to date Fall 05 rankings in sales in Girls at Kmart."

11) TX 09528.  January 31, 2005 email by MGA employee Sandrine de Raspide forwarding to Isaac Larian, Ron Brawer, and Paula Garcia about unreleased Mattel product information obtained from the Paris Toy Fair.  Raspide also writes: "Hasbro got hold of Mattel's catalogue therefore their analysis.  Will catch up with Hasbro on this issue on Wed."

12) TX 08891.  April 20, 2006 email by Isaac Larian to MGA employees, Subject Re: heads UP.  Concerning Mattel's unreleased product "MY Scene Bling Bling Gems," Isaac Larian writes: "I and Daphne need to know which retailer will handle this for fall ASAP."  Lisa Saunders responds on April 28, 2006: "What I was able to find out is that My Scene Bling Bling is being introduced for Fall 06 from Mattel.  I am not able to find out if it comes with real jewelry or not.  I will go down to the planogram room as soon as we get back from the sales meeting to see if Kmart has placed."

13) TX 09533.  February 3, 2007 email by former MGA Marketing Manager Angelika Sternberg to Isaac Larian, with copies to Ron Brawer, Paula Garcia, and Thomas Pfau, Subject: "Competition."  Sternberg writes: "We have some news for you which we heard from customers regarding 'Get Connected' Barbie.  They show it as a TOP SECRET theme in a closed room at Toy Fair. . . . We furthermore heard that they are coming up with a new big Barbie house and an airplane.  In Polly Pocket they are introducing again high-priced accessories."

14) TX 09539.  February 3, 3007 email from Petra Koehler, (MGA executive Thomas Pfau's assistant) to Larian, with copies to Garcia, Brawer, Sternberg, and Pfau, Subject:  "Toy Fair."  Kohler writes about unreleased Mattel product information obtained from a Mattel toy fair showroom: "Isaac, Some more information on the main Barbie themes"  and goes on to list three products.  Brawer responds, "Very helpful.  Danka Shein."

15) TX 22333.  February 5, 2007 email from MGA Executive Thomas Pfau to Isaac Larian, subject "Large Doll."  Pfau writes: "Isaac, we found out today that M is coming with a large doll (My Loving baby) this year."  Included is additional detail on the product features and packaging for the Mattel product "My Loving Baby."

16) TX 09546.  February 7, 2007 email from MGA Vice President of Sales Lisa Saunders to Paula Garcia regarding "Chat Divas."  Saunders writes: "Please delete this email once you talk to isaac and ron.  Sitting in planogram, Barbie is doing chat divas for fall 07 they talk and sing and can be plugged in ipod or other musical sources.  That is all package says."

| | | |
|---|---|---|
| 1 | DATED: March 16, 2011 | QUINN EMANUEL URQUHART & SULLIVAN. LLP |
| 2 | | |
| 3 | | By /s/ John B. Quinn |
| 4 | | John B. Quinn |
| | | Attorneys for Mattel, Inc., and |
| 5 | | Mattel de Mexico. S.A. de C.V. |

00505.07975/4014750.3

-12-
MATTEL'S OFFER OF PROOF AND MOTION TO COMPEL