ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone:   415-773-5700
Facsimile:    415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone:   213-629-2020
Facsimile:    213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>                    Plaintiff,<br><br>         v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                    Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br>Consolidated with Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**MGA PARTIES' OPPOSITION TO MATTEL, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE OPINIONS AND REPORTS OF JAMES E. MALACKOWSKI**<br><br>**OPP'N TO *DAUBERT* MOTION NO. 2**<br><br>Trial Date: January 18, 2011<br>Judge:  Hon. David O. Carter |

# INTRODUCTION

Mattel's objections to Mr. Malackowski's opinions boils down to the fact that Mattel disagrees with Malackowski's conclusions and calculations rather than the reliability of the methods used by him. Each of Mattel's objections goes to the weight of his methodology and Mattel's arguments should be rightfully made to the jury through its own witnesses and cross examination. They are not a sufficient basis for exclusion. Indeed, this Court has previously held that such deficiencies "go to the weight of the methodology, and not its reliability" and are more appropriately "tested on cross examination." Dkt. 10130 at 2, 3.

Further, Mattel's objections simply retread old ground that have already been briefed. For example, Mattel's objections with regard to "set-off" are simply recycled objections that were raised in its December motion. No new fact or law has been put forth by Mattel. Similarly, Mattel's arguments regarding apportionment of unjust enrichment have also been previously made. Any claim of untimeliness of his supplemental report is also meritless as his supplemental report raises no new theory of damages. Further, any alleged delay in calculation of head start damages was caused by Mattel's failure to produce critical product development documents. Mr. Malackowski's opinions are relevant, based on reliable methodology and admissible. Mattel's objections should be made to the jury through cross exam and are not sufficient for exclusion under FRE 402.

# ARGUMENT

## I. MATTEL'S OBJECTIONS ARE NOT A SUFFICIENT BASIS TO EXCLUDE MR. MALACKOWSKI'S TESTIMONY.

Mattel does not and cannot challenge Mr. Malackowski's knowledge or experience qualifying him as an expert on damages calculations. Instead, Mattel merely seeks to limit his testimony based on alleged irrelevancy and unreliability. *See* Dkt. # 10095 at 1-2. Each of Mattel's objections is based on Mattel's disagreement with Malackowski's conclusions rather than the reliability of the

methods used by him.  For example, Mattel criticizes Mr. Malackowski's unjust enrichment opinions for alleged failure to apportion profits.  Dkt. # 10095 at 1.  Similarly, Mattel criticizes the royalty rate used by Mr. Malackowski in his apportionment calculations and his apportionment analysis with respect to Mattel's lost profits.  *Id.*

Each of Mattel's objections go to the weight of his methodology or facts relied upon and Mattel's objections should be rightfully made to the jury through its own witnesses and cross examination, but they are not a sufficient basis to exclude his opinion.  *See United States v. Smith*, 519 F.2d 516, 521 (9th Cir. 1975) (affirming admission of expert testimony); *Veritas Operating Corp. v. Microsoft Corp.*, 2008 WL 7404617. At *2 (W.D. Wash. Feb. 26, 2008); *McKesson Info. Solutions LLC v. Trizetto Group, Inc.*, 2006 WL 5207233, at *1 (D. Del. Apr. 5, 2006); *St. Claire Intellectual Prop. Consultants, Inc. v. Canon Inc.*, 2004 WL 2213562, at *3 (D. Del. Sept. 28, 2004).   Indeed, this Court has previously held that such deficiencies "go to the weight of the methodology, and not its reliability" and is more appropriately "tested on cross examination."  Dkt. 10130 at 2, 3.

## II. **MATTEL HAS NO BASIS TO EXCLUDE MR. MALACKOWSKI'S HEAD START FIGURES BECAUSE THEY ARE REASONABLE CALCULATIONS BASED ON AVAILABLE INFORMATION.**

In his January 28, 2011 Supplemental Report, Mr. Malackowski performed a reasonable calculation to determine head start damages related to 32 My Scene products, based on the best available evidence.   This is *not* a new damages claim.  Damages related to My Scene have been part of Mr. Malackowski's calculations since his first report[1].  Indeed, the My Scene calculations that Mattel claims are "new" in the January 28, 2011 report not only support Mr. Malackowski's previous calculation of $200 million as a result of My Scene revenues, but also lower the bottom end of this damages range to $136 million.

---

[1] TX 25844 (11/1/2010 Expert Report of James E. Malackowski) at 93-101.

1   Further, Mattel's *own* damages expert did not produce schedules reflecting
2   damages on a product basis – the same calculation that Mr. Malackowski performs
3   – until two weeks later, or February 8, 2011.[2,3]  Moreover, to the extent there was
4   any delay, it was caused by Mattel's failure to produce critical development
5   documents that would have enabled MGA to accurately calculate head start
6   damages for the 14 products that Mattel repeatedly points to in its motion.

7   Finally, Mattel deposed Mr. Malackowski on February 8, 2011 – *after* his
8   January 28 Supplemental Report.  Mattel had plenty of opportunity to question him
9   on his calculations on head start damages and Mattel extensively questioned him on
10  this issue[4].  Thus, even if his calculations on head start were untimely (which they
11  are not), Mattel has suffered no prejudice.

12  Further, Mattel objects that there were no head start period for most of these
13  My Scene products because they were released either before the relevant toy fairs
14  or after Bratz was publicly sold (Dkt. #10199 at 4), but fails to cite to a *single* My
15  Scene product that would purportedly fall in this category.  Mattel's objection boils
16  down to the fact that it disagrees with his conclusion and his judgment in
17  calculating head start damages for certain products.  Such objections are rightfully
18  made to the jury as they go towards the weight of his opinion and are not a
19  sufficient basis for exclusion.

20  **III.  MR. MALACKOWSKI HAS PROPERLY APPORTIONED
21  MATTEL'S UNJUST ENRICHMENT INCLUDING
    APPORTIONMENT OF MATTEL'S HEAD START.**

---

[2] For example, TX 24290, Tab B5 of Michael Wagner's February 8, 2011 Second Supplemental Report shows Mr. Wagner's allocation of Mattel's unjust enrichment damages for each Bratz product; TX 24225, Tab B12 of that same report shows Mr. Wagner's allocation of Mattel's lost profits damages across Bratz products.
[3] Mattel has also objected to calculation of damages on certain My Scene products identified in MGA's submission to the Court. Dkt. # 10199 at 2.  Pursuant to the Court's 2/1/2011 Order requiring both sides to identify their trade secrets and products incorporating them, MGA submitted a chart complying with this Order.  This was not improper.
[4] *See for e.g.*, 2/8/2011 Malackowski Depo. at 390-91, 393-99, 411- 419, 423-434, 445, 466-474.

1  Contrary to Mattel's claims, Mr. Malackowski did not fail to apportion Mattel's unjust enrichment to account for Mattel's sweat equity. Dkt. 10199 at 6. Rather, Mr. Malackowski's calculations apportions profits attributable to Mattel's sweat equity, including any profits attributable to Mattel's hard work, skill, investment, ingenuity or other independent contributions[5].

Mattel is asserting that Mr. Malckowski was required to further apportion damages due to head start in addition to his apportionment of unjust enrichment. Such double apportionment is not supported by case law and Mattel cites no authority to support its novel proposition. Further, it can be ascertained that no additional apportionment of head start damages is necessary from trade secret misappropriation cases that impose an injunction as a remedy for a head start period. *See for e.g.*, *General Electric Company v. Chien-Min Sung*, 843 F. Supp. 776, 781 (Mass. 1994)(enjoining the defendant from manufacturing for seven years in order to reverse the head start achieved at plaintiffs expense and to place plaintiffs in the "same position it would have occupied had [defendants] not misappropriated its trade secrets); *Rockwell Graphic Systems, Inc. v. DEV Industries, Inc.*, 1993 U.S. Dist. LEXIS 10397, at *18 (N.D. Ill. July 27, 1993)(two-year injunction proper because it reduced defendants 'lead-time' competitive advantage gained from their trade secret misappropriation).

### IV. MATTEL'S OFT REPEATED ARGUMENTS PROVIDE NO VALID BASIS TO EXCLUDE MR. MALACKOWSKI'S OPINIONS ON THE AFFIRMATIVE DEFENSE OF SETOFF

Mattel's assertions regarding the opinions on setoff by Mr. Malackowski are nothing more than recycled versions of arguments made in the original Daubert briefing in December. Dkt. # 9469 at 4,5,9. Nothing new in terms of the substance of the legal arguments has been added. Even the cases cited in the supplemental

---

[5] *See for e.g.*, TX 25844 (11/1/2010 Malackowski Report) at 94-95 (Mr. Malckowski's model accounts for Mattel's costs including product costs and royalty expense).

brief are the same ones previously cited. Dkt. # 9469 at 4,5,9.  Just as MGA argued in its opposition to Mattel's December briefing (Dkt. # 9924), the Mattel arguments are not well taken and the motion must be denied.

First, the issue of whether or not setoff damages opinions based in whole or in part of the harm done to MGA by reason of the injunction in this case are admissible is not an issue for Mr. Malackowski to decide. He has been asked to express an opinion regarding the total amount of harm to MGA attributable to Mattel's acts and he has done so in his November 1, 2010 opinion.  Mr. Malackowski's report properly reflects the amount attributable to the wrongful injunction claim as a subtraction from that total.  This approach complies with the current rulings of the Court.  Any remaining issue that Mattel raises on this topic is a legal one and is not for resolution by Mr. Malackowski in any event.

Second, the argument by Mattel that Mr. Malackowski's opinion on setoff must be excluded because it includes "non-actionable" claims simply misses the mark in this brief much the same way that it did when Mattel devoted a large segment of its original Daubert motion to this same topic.  Mr. Malackowski made a calculation of damages based on the totality of the harm suffered by MGA as a result of Mattel's actions.  Under the law of setoff and recoupment, MGA is entitled to reduce any damages owed to Mattel on its claims by the amounts owed by Mattel to MGA even if those claims have not been reduced to judgment.  Unlike a counterclaim, a claim for setoff only seeks a reduction of the amount awarded. Mr. Malackowski's opinion as to amounts available for setoff based on the harm caused to MGA by Mattel are appropriate for use in this context.[6]

---

[6] Similarly, the two cases cited by Mattel in an attempt to establish that Mr. Malackowski made the "very same methodological flaw" in the past are substantially off the mark.  Specifically, *IQ Prods Co.* case cited by Mattel has nothing to do with Mr. Malackowski's work (he was not involved in the case at all). The *Bracco Diagnostics, Inc.* case, while dealing with opinion work by Mr. Malackowski, is inapplicable to the issue for which it is presented by Mattel.  The Malackowski opinion for setoff was intended to describe the totality of the harm to MGA as as result of Mattel's conduct.  Mattel's real issue is a legal one and not one related to an expert calculation of harm.

## V. NO BASIS EXISTS TO EXCLUDE MALACKOWSKI'S APPORTIONMENT OPINIONS BASED ON ACTUAL PAYMENTS TO CARTER BRYANT

Contrary to Mattel's claims, Mr. Malackowski's apportionment methodologies are based upon actual (not hypothetical) payments for the disputed intellectual property. As explained in his December 1 rebuttal report, Mr. Malackowski presents six distinct methodologies for apportioning Bratz profits between the value of the disputed intellectual property and MGA's "sweat equity." The three apportionment methodologies which Mattel seeks to exclude compare the ***actual*** payments made by MGA to Carter Bryant for the Bratz drawings and concept(s) to: (1) actual profits earned from MGA's licensees for the use of the Bratz intellectual property; (2) MGA's actual investments in sales, marketing and product development for Bratz products; and (3) actual operating profits that MGA earned through Bratz products.[7]

Simply put, there is nothing "hypothetical" about the amount of money MGA paid to Carter Bryant. Nor is there anything hypothetical about the profits earned by MGA through its licensing, marketing and product development efforts. Indeed, documents reflecting exactly this information have already been received into evidence in this trial.[8] Mr. Malackowski's methodologies are based upon actual (not hypothetical) payments for the disputed intellectual property and are both admissible and highly relevant in determining its fair market value for the purposes of apportionment. *See Wall Data, Inc. v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769, 786-787 (9th Cir. 2006) (established license schedule for copyrighted software was relevant to actual damages).

Moreover, Mattel's reliance upon the March 4 Order is misplaced.[9] The

---

[7] TX 34882 (Expert Rebuttal Report of James E. Malackowski, dated December 1, 2010), at 39.
[8] Carter Bryant Royalty Statements, at TX 27127, TX 27301, TX 27047, and TX 13622.
[9] Order, Dkt. No. 10130, filed on March 4, 2011 at 3.

portion of the Order cited by Mattel is directed to the Court's exclusion of Mr. Wagner's apportionment methodology based upon a *hypothetical* negotiation employing the *Georgia-Pacific* factors. Unlike Mr. Wagner, Mr. Malackowski's apportionment methods do not employ the *Georgia-Pacific* factors, but rather rely upon *actual* amounts paid by MGA for the disputed intellectual property. Indeed, the very language of the Court cited in Mattel's brief supports Mr. Malackowski's methodologies: "[Apportionment] should consider the *actual* value added by each claimed trade secret." The *actual* amounts MGA paid for the Carter Bryant drawings consider precisely this issue, and is consistent with this Court's holding. As such, Mattel's motion should be denied.

## VI. MR. MALACKOWSKI'S OPINION ON LOST PROFITS IS RELIABLE AND PROPERLY APPORTIONS SALES BASED ON THE INTELLECTUAL PROPERTY IN DISPUTE

Mattel's argument that Mr. Malackowski's rebuttal opinion as to lost profits should be excluded because "apportionment" applies only to unjust enrichment damages is inapposite.[10] Mattel puts forth a "straw man" argument that grossly mischaracterizes Mr. Malackowski's opinion regarding his apportionment of lost profits. Mattel conflates the term "apportionment" as used in the context of unjust enrichment (i.e., apportioning defendant's profits between the value of the intellectual property and defendant's legitimate efforts) with "apportionment" in the context of lost profits damages (i.e., apportioning number of lost sales based upon demand for the claimed intellectual property in the marketplace).

Contrary to Mattel's claim, Mr. Malackowski does *not* attempt to apportion Mattel's lost profits for each sale based upon MGA's sweat equity. Rather, Mr. Malackowski's rebuttal opinion on lost profits refutes Mr. Wagner's flawed market share analysis by determining which portion of Bratz sales would have actually gone to Mattel based on consumer demand for the claimed intellectual property. By contrast, Mr. Wagner apportioned sales by market shares in the fashion market

---

[10] Supp. Mot. at 10-11.

excluding Bratz, assuming that all other fashion dolls were equally good substitutes for Bratz.[11] Mr. Malackowski's opinion is based on evidence including Mattel's cannibalization studies[12] and survey evidence measuring the influence on consumers' purchasing decisions with respect to Bratz fashion dolls.[13] The import of Mr. Malackowski's rebuttal opinion on lost profits is that Bratz sales cannot be blindly redistributed to other participants in the fashion doll market, as Mr. Wagner has done in his analysis, without consideration for consumer demand. For example, the Brandware Study, a consumer survey, determined that the influence of the "appearance" of the Bratz doll was 18.6 percent of the decision to purchase a Bratz doll.[14] Such evidence is highly relevant to determine the appropriate number of sales that would have gone to Mattel due to the claimed intellectual property. Indeed, Mr. Malackowski's approach to apportioning lost profits is not only reliable, but has also been expressly upheld in another federal case. *See Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 989 F.Supp. 547, 602-607 (D. Del. 1997) (holding that Mr. Malackowski's apportionment of lost profits "properly focuses on the consumer level" and is "clearly reasonable."). [15]

---

[11] 2/28/2011 Trial Tr. 105:13-106:6; 3/9/2011 Trial Tr. 16:17-20.

[12] TX 34882 (Expert Rebuttal Report of James E. Malackowski, dated December 1, 2010), at 36-37.

[13] TX 34882 (Expert Rebuttal Report of James E. Malackowski, dated December 1, 2010), at 38. ("In order to determine Mattel lost profits attributable to its claimed copyright, the cannibalized Barbie profits and alternatively the cannibalized My Scene profits must be apportioned to reflect the effect ***only of sales of the original Jade and Sasha or the first four Bratz dolls as well as the contribution of the asserted copyright to those sales***.") (emphasis added).

[14] TX 34882 (Expert Rebuttal Report of James E. Malackowski, dated December 1, 2010), at 40.

[15] Mattel's argument that apportionment is improper in the context of lost profits is further undercut by the opinion of its own damages expert, Michael Wagner, who performs *two* apportionments of Bratz sales attributable to arrive at an amount of lost profits of Barbie products attributable to the alleged infringement and/or misappropriation. Mr. Wagner first apportions Bratz sales to account for market expansion for fashion dolls. Setting aside that portion, Mr. Wagner next performs a straight apportionment of the remaining Bratz sales to other participants in the fashion doll market (including Mattel) proportional to each participant's existing market share.

- 8 -
MGA'S OPPOSITION TO MATTEL'S SUPPLEMENTAL BRIEF TO EXCLUDE OPINIONS AND REPORTS OF MALACKOWSKI
CV-04-9049 DOC (RNBx)

**CONCLUSION**

For these foregoing reasons, Mattel's motion to exclude the opinions and proffered testimony of Mr. Malackowski must be denied.

Dated: March 16, 2011      Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:  */s/ Mark P. Wine*
         Mark P. Wine
Attorneys for MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT HK, LTD., MGA de MEXICO, S.R.L. de C.V., and ISAAC LARIAN