```
 1               UNITED STATES DISTRICT COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3              SOUTHERN DIVISION AT SANTA ANA

 4        HONORABLE DAVID O. CARTER, JUDGE PRESIDING

 5

 6
   MATTEL, INC., ET AL.,              )
 7                                    )
              PLAINTIFFS,             )
 8                                    )
           vs.                        ) CV NO. 04-9049-DOC
 9                                    ) DAY 34
   MGA ENTERTAINMENT, INC., ET AL.,   ) VOLUME 4 of 4
10                                    ) PAGES 42 - 57
              DEFENDANTS.             )
11 _____)

12

13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                      JURY TRIAL

16                SANTA ANA, CALIFORNIA

17             WEDNESDAY, MARCH 16, 2011

18                     9:00 P.M.

19

20
            DEBORAH D. PARKER, CSR 10342
21             OFFICIAL COURT REPORTER
            UNITED STATES DISTRICT COURT
22             411 WEST FOURTH STREET
                   SUITE 1-053
23          SANTA ANA, CALIFORNIA 92701
                  (714) 542-8409
24            D.PARKER@IX.NETCOM.COM

25
```

```
 1   APPEARANCES OF COUNSEL:

 2       FOR THE PLAINTIFF, MATTEL, INC.:

 3                               JOHN QUINN (Not Present)
                                 WILLIAM PRICE (Not Present)
 4                               MICHAEL T. ZELLER
                                 QUINN EMANUEL URQUHART
 5                               & SULLIVAN, LLP
                                 865 S. FIGUEROA STREET
 6                               10TH FLOOR
                                 LOS ANGELES, CALIFORNIA 90017
 7                               (213) 443-3000

 8
         FOR THE DEFENDANT, MGA ENTERTAINMENT, INC.:
 9
                                 THOMAS S. MC CONVILLE
10                               ORRICK HERRINGTON & SUTCLIFFE, LLP
                                 4 PARK PLAZA
11                               SUITE 1600
                                 IRVINE, CALIFORNIA 92614
12                               (949) 567-6700

13
                                 ANNETTE L. HURST
14                               ORRICK HERRINGTON & SUTCLIFFE, LLP
                                 THE ORRICK BUILDING
15                               405 HOWARD STREET
                                 SAN FRANCISCO, CALIFORNIA 94105
16                               (415) 773-5700

17
                                 JENNIFER L. KELLER(Not Present)
18                               KELLER RACKAUCKAS, LLP
                                 18500 VON KARMAN AVENUE
19                               SUITE 560
                                 IRVINE, CALIFORNIA 92612
20                               (949) 476-8700

21

22

23

24

25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

44

```
 1   APPEARANCES OF COUNSEL:

 2        FOR THE DEFENDANT, CARLOS GUSTAVO MACHADO GOMEZ:

 3                            MARK E. OVERLAND (Not Present)
                              LAW OFFICES OF MARK E. OVERLAND
 4                            100 WILSHIRE BOULEVARD
                              SUITE 950
 5                            SANTA MONICA, CALIFORNIA 90401
                              (310) 459-2830
 6

 7                            ALEXANDER H. COTE (Not Present)
                              SCHEPER KIM & HARRIS, LLP
 8                            601 WEST FIFTH STREET
                              12TH FLOOR
 9                            LOS ANGELES, CALIFORNIA 90071
                              (213) 613-4660
10

11
     ALSO PRESENT:
12
                              JEANINE PISONI (Not Present)
13                            MGA ENTERTAINMENT, INC.
                              16360 ROSCOE BOULEVARD
14                            SUITE 105
                              VAN NUYS, CALIFORNIA 91406
15

16

17

18

19

20

21

22

23

24

25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1   SANTA ANA, CALIFORNIA; WEDNESDAY, MARCH 16, 20011; 9:56 P.M.
 2                              -oOo-
 3       (The following proceedings were had outside the
 4       presence of the jury:)
 5             THE COURT:  All right.  All counsel are present.
 6             MR. ZELLER:  What I wanted to just address was
 7   some particulars of what it appears Ms. McShane will testify
 8   to.  And what she does say is, is that, basically, her only
 9   memory of the so-called Bratz issue, as it was being
10   discussed or characterized by Ms. Hurst during the
11   deposition, which was really about Toon Teens, was that she
12   communicated with Quinn Emanuel about that.  And then, she
13   says, you know, she believed that it was Mike Zeller who was
14   involved in --
15             THE COURT:  Well, she could be instructed also.
16   I'm waiting, really, for counsel to come up with a solution.
17   It's an easy way for all counsel to resolve.  But if it's
18   simply outside counsel, there's no mention of Mr. Zeller, or
19   Quinn Emanuel.  It's very easily done.
20             But I'm waiting for their best efforts by
21   Ms. Hurst and Mr. McConville and Ms. Keller, first, because
22   you don't have to acquiesce.  Either party can put me in the
23   position of making the decision.  I'm not threatening either
24   party.  I just think that this is an easy thing to resolve
25   without causing any prejudice.
```

1           MS. HURST:  Were we able to get a date as a result
2  of the in-camera proceeding?
3           THE COURT:  No.
4           MS. HURST:  Can we even get a month?
5           THE COURT:  Well, within a couple of years.  I'm
6  just joking with both of you.
7           MS. HURST:  It makes is very hard not to use the
8  privilege log without a date.
9           THE COURT:  I understand that.  But the privilege
10  log also can be excised, and it can simply be in reference
11  to outside counsel.  In other words, if we went down that
12  privilege log carefully and redacted Mr. Zeller's name, or
13  just said, you know, *In these occasions, it's outside*
14  *counsel,* of course it draws attention to the redaction.  But
15  there's a lot of things that can be done.  We just haven't
16  taken the time to come up with that process yet, okay?
17           So I'll leave that to all of you.  She'll be
18  testifying at 1:00 o'clock tomorrow.  Let me have another
19  talk with you.  I may get everybody in here at 7:30
20  tomorrow, okay?
21           MR. ZELLER:  I mean, I do think there's a lot more
22  to discuss about this.  And part of it is, is we're going to
23  be empty-chaired.  Once we go down this road, we are going
24  to have to respond, and we will.  I mean, let me just put
25  that on the table.  The reason why I would not -- at least

47

1     at this point, I mean -- perhaps, if I had known more.
2              THE COURT: Just a moment. Even without -- even
3     with the reference to just "outside counsel," you believe
4     that puts you into that position?
5              MR. ZELLER: I mean, without knowing more --
6              THE COURT: Then, I'm going to make it very easy
7     for you. That is, in fact, the solution. How you decide to
8     respond, of course, depends upon what I do. So your
9     response gets run through me. You just don't respond.
10             And I'm suggesting to you that the initial
11    threshold way to resolve this, to start with, depending upon
12    your purported response is: Cleansing Quinn Emanuel in a
13    sense and cleansing a privilege log of Quinn Emanuel, and
14    specifically Mr. Zeller because he's participating in the
15    case.
16             Now, if I hadn't allowed Mr. Zeller into the case,
17    it wouldn't be an issue. He would be counsel sitting in the
18    audience. But it would still magnify itself because
19    John Quinn would be here with Bill Price, the same firm, so
20    I end up in the same place.
21             Then, if the response is the following, we kind of
22    turn to Quinn Emanuel, and if their response is "X," it may
23    be right back to "Y." I think that's the initial way to
24    handle it, cautiously, but I'm not subject to precluding
25    this. So she's coming.

*DEBORAH D. PARKER, U.S. COURT REPORTER*

1          And now I have one more issue, because I'm going
2    to get rid of you in a few moments about 11:00 o'clock this
3    evening, because I'm going to do some more research.  And I
4    want time to look at a couple of things.
5          No, just a moment.  I want to handle this issue of
6    Mr. or Dr. Lyter.  I'm going to begin with the easiest
7    decision; and then, come back on the record in just a
8    moment, because I pulled the case and was trying to get back
9    there during the in-camera reading to look at the district
10   judge's case, in particular.
11         On one hand, I don't believe that it's appropriate
12   that Dr. Lyter can portray the fact that he is on the stand
13   and has, in fact, qualified in all the cases he has been
14   called upon to testify.  On the other hand, it is not
15   appropriate for my initial reading, and I need a little bit
16   of time in chambers still to get into the specifics, or even
17   the judge's name, or even what the judge's conclusion were.
18         Now, the easiest call, right to begin with, is
19   Hong Kong.  Under no circumstances is that permissible.
20   Different system.  Different issues.  Different standards.
21         Number two, since I haven't had time, Ms. Hurst,
22   at least, on the one case I was able to read, I agree it was
23   the case involving the speculative nature of the eventual
24   conclusion, if you will.  It was a methodology case.  But
25   I'm in the middle of reading the other case, and I need a

```
 1   couple minutes.  So you are all going to sit here for a
 2   moment while I read that case.
 3           And that's why I'm cutting you off on the other
 4   matter this evening; because on the McShane matter, the jury
 5   is still out.  So there's nothing else the two of you can
 6   say to me tonight that's going to be persuasive.
 7           So I'll be back in the few moments.  But somehow
 8   I'm left with the taste and feeling that this is a home run
 9   hitter with no strikes.  And by the same token, the way that
10   this would be portrayed is inappropriate hearsay from
11   another judge, involving a noncongruent issue.  But I've got
12   to read one more case, so I'm going to leave you for a few
13   moments.
14           MS. KELLER:  Your Honor, if I may, on the home run
15   hitter issue, he has always been qualified as an expert.
16           THE COURT:  Well, that's what I'm going to go find
17   out.  And if you're not going to let me read the case, I'll
18   meet you at 1:00 o'clock this morning.  That's exactly what
19   I'm looking at right now.  How did that come into play?
20           On the first issue, I'm fairly well persuaded it
21   was rejected because of speculation and methodology.  I
22   haven't been able to look at the other cases, except the
23   headnotes.  So I'll be back with you.  I'll give you some
24   indication this evening; and then, when you leave, I'll look
25   at it some more.
```

1           Now, Deborah, I'm sorry to keep you.  Just give me
2    a couple of minutes.
3         *(Pause.)*
4           THE COURT:  Well, we're going to have a little fun
5    here with you two.
6           We're back on the record.
7           I've had time to reread *Learning Curve* twice.  And
8    I'm going to joke with both of you, but the reason the case
9    should be so familiar to all of use is that I cited that in
10   the summary judgment motion that I handed down.  Of course,
11   it's the Seventh Circuit opinion, so it caused me a little
12   bit of hilarity.
13          The Seventh Circuit reversed the very district
14   court that you're relying upon.  And the summary judgment
15   ruling --
16          This case was cited by the court, of course, in a
17   summary judgment.  I had a chance to go back also and look
18   at Judge Weinstein, who I have had the pleasure of meeting
19   on many occasions, and look at *Blue Cross versus Blue*
20   *Shield*.  And my colleague forewarned courts that judicial
21   findings in other cases proffered as evidence are generally
22   characterized as inadmissible hearsay.  But he had some very
23   practical reasons for that.  One of the strongest statements
24   is:  *Excluding credibility, assessing statements by judges*
25   *in other cases avoids the practical difficulty of weighing*

```
 1    judicial opinions against contrary evidence.
 2              I mean, I just commend the opinion to you, which I
 3    know you've read.  So I guess the way I summarize it is, the
 4    circuit often says:  Don't listen to district judges,
 5    because I guess we don't know all that much.
 6              So on the other two opinions, the magistrate
 7    judge's opinion is the matter involving methodology, and the
 8    Hong Kong opinion is irrelevant to this court.
 9              Finally, neither of the district court cases
10    involved qualification, anyway.  The methodology issues were
11    entirely different in those matters.  And this line of
12    questioning is going to be precluded.
13              Now, I need some time this evening.  Normally, I
14    would keep you until -- it's only 10:15.  I would keep you
15    later, but there's nothing else you can help me with
16    tonight, because I need to do some more reading.  I want to
17    look at the privilege log, again.  I want to see what you're
18    going to do in regard to that on MGA's part.  I think you
19    need some time to sit down and think, because the solution
20    potentially is in your hands.
21              I can't get a date from Mr. Zeller, because I
22    don't think he can, honestly and ethically, give me a date.
23    And I don't want to disclose the in-camera process or
24    procedure to you.  But in good faith, he can't give you a
25    date.
```

1                I don't know if I'm at liberty just to talk about
2    the long-term.  It's up to you.
3                MR. ZELLER:  Your Honor, one thing that I've been
4    mulling over is, is that --
5                I mean, I do think a stipulation is the way out of
6    this.  I do agree with that.  What I'm concerned about is,
7    is sort of the bare bones approach of, you know, there was
8    an outside law firm.  Because then, we're going to be
9    empty-chaired.  That's my fear, is that they're going to --
10               THE COURT:  Listen.  I'm not precluding you in a
11   sense from coming back after that initial good faith effort
12   by MGA's part.  But then, you're going to find yourself in
13   the same position that MGA is kind of finding themselves in
14   in a couple of rulings today where I said, *If you go forward*
15   *with the pen, I'm forewarning, this could happen in terms of*
16   *the court giving the admonition that it's not for the truth*
17   *of the matter, but here comes the information about a couple*
18   *of Japanese pens.*
19               The same thing.  When you ethically approach it in
20   this manner, then it's in their ballpark.  Then, if they
21   come swinging back, depending upon how they believe they're
22   going to do that, but only would the court be forewarned,
23   frankly, which is why I cut you off today.  Then, maybe,
24   that opens the whole box.  But you've approached it in a way
25   that you got the issue.  You've handled it in a way that

```
 1   doesn't bring the Quinn Emanuel firm into it that then
 2   becomes their decision.  And those get to be tough tactical
 3   decisions.
 4            Now, I'm going to send you home tonight.  I have a
 5   little bit more reading to do tonight on a couple other
 6   issues involving the case, but I want to look at the
 7   privilege log, which was number --
 8            What was the number on that, again?
 9            MS. HURST:  It's 9633, your Honor.
10            THE COURT:  Just a moment.  And that would be
11   under --
12            MS. HURST:  It's in the McShane binder.
13            MR. MCCONVILLE:  It's down there, Judge.
14            MS. KELLER:  It's down here.
15            THE COURT:  I'm going to take that back in
16   chambers.
17            Okay.  Good night.
18            MS. HURST:  Thank you, your Honor.
19            THE COURT:  Thank you very much.
20       (Pause.)
21            THE COURT:  Okay.  We're back on the record,
22   Deborah.
23            Let me just state I believe the selective reading
24   is a poor choice.  What it does is it lets each party go
25   back and forth when these paragraphs are arguably helpful
```

1   and nonhelpful to each party.
2           So I'm not precluding Mr. Quinn from reading that
3   sentence, but the whole paragraph gets read.  "Dr. Aginsky
4   concludes" down to "since the late 1980s."
5           It puts the whole thing in context.  So Mr. Quinn
6   isn't precluded, read the two paragraphs.
7           MS. HURST:  Your Honor, can I just say on this one
8   that our objection goes beyond just a completeness issue.
9   We haven't offered him on this.  We didn't offer him to give
10  an opinion that even if it had been two different
11  instruments -- this doesn't impeach the foundation in any
12  way for the opinion he did offer.  So, really, what they are
13  trying to do is call our expert to speculate about an
14  argument they want to make.  And Mr. Cunningham and
15  Dr. Aginsky both can do that.
16          THE COURT:  Then they should stop writing reports
17  like that.  This is almost a gratuitous report that has
18  nothing to do with why you retained him.
19          So if you are paying him by the word, you're
20  paying him too much.  He should have been here on menthol,
21  his testing.
22          MS. HURST:  But that's all we offered him on.
23          He did respond to Mr. Cunningham originally, as
24  well.  There were different aspects of his report that
25  responded to four different experts.

55

1           THE COURT: Thank you. It's your choice.
2           MS. HURST: We didn't offer him on this. We
3 didn't offer him on this issue. Only on menthol. That's
4 all we asked him about.
5           Now, they're trying to go beyond that to get into
6 document examination, and we didn't offer him on document
7 examination. He didn't respond to Mr. Cunningham at all
8 here, but he did in his report. And there's other areas
9 where he discusses Mr. Cunningham and so forth. But we
10 didn't offer him on any of that.
11           THE COURT: This sentence -- I'm trying to be fair
12 not to preclude either party, once again. But this sentence
13 absolutely makes no sense. I don't know how he ever gets to
14 the position of speculating. It could have been made by
15 Ms. Prince within seconds or minutes after she wrote the
16 first four lines. Frankly, the whole paragraph is literally
17 irrelevant, and that sentence by itself is irrelevant.
18           And the more I look at it, you can read the first
19 or the second paragraph from "if" to "as stated above."
20 That's a fair conclusion for both of you. But the following
21 sentence is just absolutely speculation.
22           MR. ZELLER: I'm sorry. I missed where that
23 starts, and --
24           THE COURT: Prior ruling. Same ruling.
25           MR. ZELLER: So the whole paragraph?

*DEBORAH D. PARKER, U.S. COURT REPORTER*

56

```
 1                THE COURT:  No.
 2                MR. ZELLER:  Okay.
 3                THE COURT:  *If and only if it were assumed both
 4     that Dr. Aginsky was correct in his detection,* all the way
 5     down to "as stated above."  That paragraph.  Whole
 6     paragraph.
 7                Starting with the next paragraph and the line that
 8     Mr. Quinn wants, it's irrelevant.  It doesn't go to his
 9     opinion.
10                MR. ZELLER:  But it does, because he is being --
11     he's being offered to -- it's his opinion that these inks
12     are the same.  He has already given that opinion.
13                THE COURT:  That's correct.
14                MS. HURST:  Which is why it's irrelevant.
15                THE COURT:  No, because this is what Mr. Quinn
16     wants, so the circuit understand:  *Indeed, even if the entry
17     on the fifth line of 8/26/99 entry had been made with a
18     different writing instrument, it could have been made by
19     Ms. Prince within seconds or minutes after she wrote the
20     first four lines.*
21                That is not an opinion for this party to give.
22     And I've given you both a fair rendition in the second
23     paragraph.
24                End of discussion.
25                Have a nice evening.
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
```

57

1  MS. HURST: Thank you.
2  *(At 10:25 p.m., proceedings were adjourned.)*
3
4  -oOo-
5
6  CERTIFICATE
7  I hereby certify that pursuant to Section 753,
8  Title 28, United States Code, the foregoing is a true and
9  correct transcript of the stenographically reported
10 proceedings held in the above-entitled matter and that the
11 transcript page format is in conformance with the
12 regulations of the Judicial Conference of the United States.
13
14 Date:  March 17, 2011
15
16
17 _____
18 Deborah D. Parker, Official Reporter
19
20
21
22
23
24
25

*DEBORAH D. PARKER, U.S. COURT REPORTER*