1  **SCHEPER KIM & HARRIS LLP**
   DAVID C. SCHEPER (State Bar No. 120174)
2  dscheper@scheperkim.com
   ALEXANDER H. COTE (State Bar No. 211558)
3  acote@scheperkim.com
   601 W. Fifth Street, 12th Floor
4  Los Angeles, CA 90071
   Telephone:   (213) 613-4655
5  Facsimile:    (213) 613-4656

6  **LAW OFFICES OF MARK E. OVERLAND**
   MARK E. OVERLAND (State Bar No. 38375)
7  mark@overlaw.net
   100 Wilshire Blvd., Suite 950
8  Santa Monica, CA 90401
   Telephone: (310) 459-2830
9  Facsimile: (310) 459-4621

10 Attorneys for Carlos Gustavo Machado Gomez

11            **UNITED STATES DISTRICT COURT**

12    **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

13 CARTER BRYANT,                    | **CASE NO. CV 04-9049 DOC (RNBx)**

14            Plaintiff,             | **Consolidated with CV 04-9059 and CV 05-2727**

15       v.                         | **GUSTAVO MACHADO'S NOTICE OF MOTION AND MOTION FOR**

16 MATTEL, INC,                      | **JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV.**

17            Defendant.             | **P. 50(a); MEMORANDUM OF POINTS AND AUTHORITIES IN**

18 AND CONSOLIDATED CASES            | **SUPPORT THEREOF; NOTICE OF LODGING OF USB DRIVE IN**

19                                   | **SUPPORT THEREOF**

20                                   | **Date**:   TBA
                                     | **Time**:   TBA
21                                   | **Crtrm**: Honorable David O. Carter

22                                   | **Trial:**   January 18, 2010

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that at a time and date chosen by the Court, in the courtroom of the Honorable David O. Carter, located at 411 West Fourth Street, Santa Ana, CA 92701-4516, Carlos Gustavo Machado Gomez will, and hereby does, move for judgment as a matter of law, or in the alternative, partial judgment as a matter of law in Mr. Machado's favor on the counterclaim for misappropriation of trade secrets brought by Mattel, Inc. and Mattel de Mexico.

The motion is brought on the grounds that Mattel, Inc. and Mattel de Mexico (collectively "Plaintiffs") have been fully heard on the issues described below. No reasonable jury could have a legally sufficient basis to find for Plaintiffs because (1) the uncontradicted evidence establishes Plaintiffs' cause of action is time barred, (2) there is no evidence that Plaintiffs are entitled to any monetary relief from Mr. Machado individually and (3) there is no evidence establishing the elements of the counterclaim of misappropriation of trade secrets. Accordingly, pursuant to Fed. R. Civ. P. 50(a) judgment as a matter of law should now be entered against Plaintiffs and in favor of Mr. Machado on the counterclaim, or in the alternative, on the individual issues identified above.

This motion is based upon this Notice, the attached Memorandum of Points and Authorities, the evidence admitted at trial, the records and files herein and such other evidence and argument that may be presented to the Court at the hearing.

PLEASE TAKE FURTHER NOTICE that, pursuant to Paragraph 2 of the Court's March 8, 2011 Order (Docket No. 10169), Mr. Machado hereby provides

/ / /
/ / /
/ / /
/ / /
/ / /

1  notice that he will lodge a courtesy copy of this brief and supporting materials on a

2  USB drive, and provide same to all counsel.

3  DATED: March 19, 2011          Respectfully submitted,

4                                 SCHEPER KIM & HARRIS LLP
5                                 ALEXANDER H. COTE

6                                 LAW OFFICES OF MARK E. OVERLAND
7                                 MARK E. OVERLAND
                                  By:  /s/ Alexander H. Cote
8                                      ALEXANDER H. COTE

9
10                                     /s/ Mark E. Overland
                                       MARK E. OVERLAND
11

12                                Attorneys for Carlos Gustavo Machado Gomez

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................... 1

II. LEGAL STANDARD ..................................................................... 1

III. ANALYSIS ................................................................................... 2

    A. Mexico's Statute of Limitations Applies to Mattel de Mexico's Counterclaim Under California's Borrowing Statute ............................ 2

    B. Mexico's Statute of Limitations Applies to Mattel, Inc.'s Counterclaim Under California's Choice of Law Doctrine ................... 5

        1. Step 1: Mexico and California's Laws Clearly Differ ................. 6

        2. Step 2: Mexico Has an Interest In Applying its Own Law .......... 6

        3. Step 3: Assuming California Has Any Interest in Applying Its Laws, Comparative Analysis Nevertheless Favors Mexico .......................................................................... 9

    C. Plaintiffs Failed to Establish Unjust Enrichment Against Mr. Machado ............................................................................... 12

    D. Plaintiffs Failed to Establish the Elements of Trade Secret Misappropriation ........................................................................ 14

        1. No Evidence of Avoided Costs for Many Claimed Trade Secrets .......................................................................... 14

        2. The POS Data Was Not a Trade Secret ................................... 15

        3. The MVR Was Never Acquired, Disclosed or Used ................. 16

        4. The PLL Was Never Used or Disclosed .................................. 17

IV. CONCLUSION ............................................................................ 19

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>FEDERAL CASES</u>

*Advocare Int'l LP v. Horizon Labs., Inc.*,
    524 F.3d 679 (5th Cir. 2008)..................................................5

*Arno v. Club Med Inc.*,
    22 F.3d 1464 (9th Cir. 1994) ...............................................11

*Brown v. Baden (In re Yagman)*,
    796 F.2d 1165 (9th Cir. 1986) .............................................5

*Chance v. E.I. Du Pont de Nemours*,
    57 F.R.D. 165 (E.D.N.Y. 1972) ...........................................6

*CRS Recovery, Inc. v. Laxton*,
    600 F.3d 1138 (9th Cir. 2010) .............................................2

*Dalkilic v. Titan Corp.*,
    516 F. Supp. 2d 1177 (S.D. Cal. 2007) ...............................3

*Foster v. Maldonado*,
    433 F.2d 348 (3rd Cir. 1970) ...............................................6

*Gramercy Mills, Inc. v. Wolens*,
    63 F.3d 569 (7th Cir. 1995) .................................................5

*Hatfield v. Halifax PLC*,
    564 F.3d 1177 (9th Cir. 2009) .............................................3

*In re Bonti*,
    898 F. Supp. 391 (S.D. Miss. 1995) ...................................5

*Klaxon Co. v. Stentor Electric Mfg. Co.*,
    313 U.S. 487 (1941) .............................................................6

*Mangum v. Action Collection Service, Inc.*,
    575 F.3d 935 (9th Cir. 2009)...............................................2

*Mayo v. Hartford Life Ins.*,
    220 F. Supp. 2d 714 (S.D. Tex. 2002) ...............................5

*Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp.*,
    407 F.2d 288 (9th Cir. 1969)...............................................11

*Nunez v. Hunter Fan Co.*,
    920 F. Supp. 716 (S.D. Tex. 1996) ....................................5

CV 04-9049 DOC (RNBx)

MACHADO'S MOTION FOR JUDGMENT AS A MATTER OF LAW

**Page**

**STATE CASES**

*Cypress Semiconductor Corp. v. Superior Court,*
    163 Cal. App. 4th 575 (2008)...............................................................3

*Giest v. Sequoia Ventures, Inc.,*
    83 Cal. App. 4th 300 (2000)...............................................................2, 3

*Glue-Fold, Inc. v. Slautterback Corp.,*
    82 Cal. App. 4th 1018 (2000)...............................................................3, 11

*Kearney v. Salomon Smith Barney, Inc.,*
    39 Cal. 4th 95 (2006)...............................................................5

*McCann v. Foster Wheeler LLC,*
    48 Cal. 4th 68 (2010)...............................................................*passim*

*Offshore Rental v. Continental Oil Co.,*
    22 Cal. 3d 157 (1976)...............................................................10, 11, 12


**STATE STATUTES**

Cal. Civil Code § 3426.6 .......................................................................3, 6

Cal. Civil Code § 3426.1 ....................................................15, 16, 17, 18

Cal. Civ. Proc. Code § 361 .......................................................................1, 2, 5


**STATE RULES**

CACI 4400.......................................................................18

CACI 4410.......................................................................13

CV 04-9049 DOC (RNBx)
MACHADO'S MOTION FOR JUDGMENT AS A MATTER OF LAW

## I.   INTRODUCTION

Mattel, Inc. and Mattel de Mexico (collectively "Plaintiffs") assert a single counterclaim for misappropriation of trade secrets against defendant Gustavo Machado. (*See*, *e.g.*, Amended MSJ Order (Docket No. 9600) at 162:23-25.) The only alleged trade secrets at issue involve documents copied by Mr. Machado, Mariana Trueba and Pablo Vargas from their Mattel Servicios computers to a portable USB thumbdrive while the three were in Mexico.

Judgment as a matter of law should now be entered against Plaintiffs on this counterclaim for three independent reasons. First, the Mexico's statute of limitations bars the counterclaim: Mexico law applies to Mattel de Mexico's counterclaim through California's borrowing statute, Cal. Civ. Pro. Code § 361, and applies to Mattel, Inc.'s counterclaim through California's choice of law principles. Second, Plaintiffs failed to establish any basis for an unjust enrichment award against Mr. Machado individually. Rather, as Plaintiffs' own expert admitted, only Mr. Machado's employer – not Mr. Machado – was potentially unjustly enriched. Third, Plaintiffs failed to carry their burden of proof on a number of issues, including by failing to establish damages for any claimed trade secret documents, failing to establish unjust enrichment for the vast majority of the claimed trade secret documents and failing to establish that the remainder were actually secrets or were actually acquired, used or disclosed by any defendant. Because no reasonable jury could find for either Plaintiff on the counterclaim, Mr. Machado respectfully requests that judgment as a matter of law be entered in his favor.

## II.   LEGAL STANDARD

After a plaintiff "has been fully heard on an issue during a jury trial," judgment may be entered against the plaintiff or an issue may resolved against the plaintiff when "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). A "motion for judgment as a matter of law is properly granted only if no

1  reasonable juror could find in the non-moving party's favor." *Mangum v. Action*
2  *Collection Service, Inc.*, 575 F.3d 935, 939 (9th Cir. 2009).

3  **III.   ANALYSIS**

4       Mexican law provides for a two-year statute of limitations "from the date in
5  which damages caused by the conduct giving rise to the claim occurred" for
6  obligations not arising out of contract. (Docket No. 7869-1 at ¶ 5 (admitting that
7  Plaintiffs' claims are time-barred under Mexican law).) In contrast, California law
8  provides for a three-year statute of limitations. Cal. Civ. Code § 3426.6.

9       Mattel, Inc. first filed a counterclaim against Mr. Machado on November 20,
10  2006. (Docket No. 90.) Mattel de Mexico first joined this action on March 24, 2010.
11  (Docket No. 7676.) Assuming for purposes of this motion that Mattel de Mexico's
12  counterclaim relates back to Mattel, Inc.'s first filing against Mr. Machado,
13  Plaintiffs' claim is untimely under Mexican law if it accrued before November 20,
14  2004 and untimely under California law if it accrued before November 20, 2003.

15  **A.    Mexico's Statute of Limitations Applies to Mattel de Mexico's**
16  **Counterclaim Under California's Borrowing Statute**

17       "When a federal court sits in diversity to hear state law claims, the conflicts
18  laws of the forum state—here California—are used to determine which state's
19  substantive law applies." *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1141 (9th
20  Cir. 2010). "Many states have adopted 'borrowing statutes' in order to prevent
21  forum shopping by plaintiffs. These statutes adopt the statute of limitations of the
22  state in which the action arose." *Giest v. Sequoia Ventures, Inc.*, 83 Cal. App. 4th
23  300, 303 (2000). California's borrowing statute, Section 361 of the California Code
24  of Civil Procedure, provides:

25       When a cause of action has arisen in another State, or in a foreign
         country, and by the laws thereof an action thereon cannot there be
26       maintained against a person by reason of the lapse of time, an action
         thereon shall not be maintained against him in this State, except in
27       favor of one who has been a citizen of this State, and who has held the
         cause of action from the time it accrued.
28

1   This statute "prevents non-residents from prosecuting an action in a California court
2   where such action would be barred under the statute of limitations of the jurisdiction
3   whose law would otherwise govern." *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1189
4   (9th Cir. 2009). "By its terms section 361 applies whenever a cause of action arises
5   in another state and would be stale in that state, unless the holder of the cause of
6   action is a California citizen who has held the cause from the time of accrual."
7   *Giest*, 83 Cal. App. 4th at 303. Mattel de Mexico is a citizen of Mexico, not
8   California, and therefore the borrowing statute requires application of Mexico's
9   statute of limitations to its claim against Mr. Machado. (*See, e.g.,* TX 23846-05 at ¶
10  II.A; *see also* Docket No. 7714 at ¶ 10.)

11       The question of *when* a cause of action accrues under the borrowing statute
12  appears to be a question of California law rather than Mexican law. *See e.g.,*
13  *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 86 n. 5 (2010)(citing California law
14  to determine accrual of mesothelioma injury that resulted from exposure to asbestos
15  in Oklahoma), *see also Dalkilic v. Titan Corp.*, 516 F. Supp. 2d 1177, 1184 (S.D.
16  Cal. 2007 (citing California law to determine accrual of fraud claims)). In
17  California, a trade secrets misappropriation cause of action accrues when "the
18  misappropriation is discovered or *by the exercise of reasonable diligence should
19  have been discovered*." Cal. Civ. Code § 3426.6 (emphasis added). The "proper
20  focus, for purposes of the running of the statute of limitations [governing a trade
21  secrets cause of action is] upon the plaintiff's suspicions." *Cypress Semiconductor
22  Corp. v. Superior Court*, 163 Cal. App. 4th 575, 587 (2008). "[T]he
23  misappropriation [of trade secrets] that triggers the running of the statute is that
24  which the plaintiff suspects, not that which may or may not actually exist." *Id.*
25  Misappropriation of trade secrets is not a continuing tort. The statute of limitations
26  accrues upon notice of the first misappropriation. See *Glue-Fold, Inc. v.
27  Slautterback Corp.*, 82 Cal. App. 4th 1018, 1023-1028 (2000), *see also* Cal. Civ.

28

1  Code § 3426.6 ("For the purposes of this section, a continuing misappropriation

2  constitutes a single claim").

3  On cross examination, both Robert Eckert, Mattel, Inc.'s chief executive

4  officer, and Richard de Anda, Mattel, Inc.'s Vice President of Global Security,

5  admitted that Plaintiffs suspected Mr. Machado of taking Plaintiffs' proprietary

6  information no later than April 19, 2004, the day Mr. Machado resigned. On that

7  day, Plaintiffs opened a "Mattel Global Security Investigation." (TX 35952, TX

8  6658T-01, D27 V2 P9:1-18:9 (Eckert), D30 V2 P45:16-47:24 (de Anda).)[1] The

9  investigation report listed three "suspects": Mr. Machado, Mr. Vargas and Ms.

10  Trueba. (TX 35952.) Both Eckert and de Anda admitted that Plaintiffs believed that

11  these "suspects" had copied "proprietary information" as of April 19, 2004. (D27

12  V2 P9:1-18:9 (Eckert), D30 V2 P45:16-47:24 (de Anda).) Plaintiffs continued to

13  investigate these suspects over the next few weeks, by *e.g.* examining and printing

14  copies of Mr. Machado's personal emails from his Mattel Servicios computer on

15  May 13, 2004 and again on July 7, 2004. (TX 6658T-69 to 72, D30 V2 P47:25-

16  49:23.) Those emails showed Mr. Machado negotiating with MGA while still

17  working at Mattel Servicios. (*See, e.g.,* TX 6658T-70 (showing 4/12/04 emails from

18  Tom Park at mgae.com with subject line "offer letters").)

19  Using any of these dates – April, May or July 2004 – as an accrual date

20  renders Mattel de Mexico's counterclaim untimely under Mexican law.

21  Accordingly, judgment as a matter of law should be granted on Mattel de Mexico's

22  counterclaim for misappropriation of trade secrets.

23

24  _____

25  [1] Cites to TX indicate trial exhibits and page numbers therein. Cites to **D**XX **V**YY

26  **P**ZZ refer to the daily transcript for **Page** ZZ of **Volume** YY for **Day** XX of trial.
   The daily transcripts, trial exhibits, authorities and docket entries cited herein have

27  been provided to the Court and all counsel on USB drives as a courtesy.

28

### B.   Mexico's Statute of Limitations Applies to Mattel, Inc.'s Counterclaim Under California's Choice of Law Doctrine

Mattel, Inc. falls within the borrowing statute's exception for California citizens. "[I]n those instances in which section 361 does not mandate application of another jurisdiction's statute of limitations or statute of repose the question whether the relevant California statute of limitations (or statute of repose) or, instead, another jurisdiction's statute of limitations (or statute of repose) should be applied in a particular case must be determined through application of the governmental interest analysis that governs choice-of-law issues generally." *McCann*, 48 Cal. 4th at 87. The governmental interests approach generally involves three steps:

> ***First***, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. ***Second***, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. ***Third***, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which states interest would be more impaired if its policy were subordinated to the policy of the other state [citation] and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Id.* at 87-88 (*quoting Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107-08 (2006)(emphasis added).[2]

_____

[2] To the extent Plaintiffs dispute the facts underlying the choice of law analysis, the Court, not the jury, must resolve those factual issues and determine which law applies. "[A] choice of law under the governmental interest approach is a legal determination to be made by the court." *Brown v. Baden (In re Yagman)*, 796 F.2d 1165, 1171 n.2 (9th Cir. 1986). Federal courts across the country are in accord. *See also Advocare Int'l LP v. Horizon Labs., Inc.*, 524 F.3d 679, 690 (5th Cir. 2008)("the prejudgment interest issue turns on a choice of law, a legal question for the court, not the jury"); *Gramercy Mills, Inc. v. Wolens*, 63 F.3d 569, 571 (7th Cir. 1995)("Judges, not juries, decide questions of law, such as choice of law issues…the jury never gets a crack at deciding the outcome; choice of law merely serves as a (footnote continued)

### 1.   Step 1: Mexico and California's Laws Clearly Differ

With respect to the first step, it is clear that the laws of California and Mexico differ: Mexico applies a two year statute of limitations to all torts while California applies a three year statute of limitations to misappropriation of trade secrets. (*Compare* Docket No. 7869-1 at ¶ 5 (two years) *with* California Civil Code § 3426.6 (three years).) Accordingly, this first step is satisfied because the cause of action is timely under California law but time-barred under Mexican law, as described above. *See McCann,* 48 Cal. 4th at 88-90.

### 2.   Step 2: Mexico Has an Interest In Applying its Own Law

The second step requires the Court to "examine each jurisdiction's interest in the application of its own law in the circumstances of the particular case to determine whether a true conflict exists." *Id.* at 90. Mexico clearly has an interest in the application of its own law here. As with all statutes of limitations, Mexico's two year statute – which applies universally to all non-contract causes of action – is designed to ensure finality and stability in the relationships between potential

---

predicate for the jury's work"); *Coltec Indus. Inc. v. Zurich Ins. Co.*, 2004 U.S. Dist. Lexis 1207, *10 (N.D. Ill. 2004)("The court, not the jury, is responsible for making any factual determinations necessary to resolve the choice-of-law issue based on a preponderance of the evidence standard"); *Mayo v. Hartford Life Ins.*, 220 F. Supp. 2d 714, 730 n. 37 (S.D. Tex. 2002) ("The facts on which choice-of-law rulings depend must be determined by the Court after considering the affidavits, depositions, and other matters submitted by the parties"); *Nunez v. Hunter Fan Co.*, 920 F. Supp. 716, 718 (S.D. Tex. 1996) (same); *In re Bonti*, 898 F. Supp. 391, 399 (S.D. Miss. 1995)("As a final argument Plaintiff contends that the choice of law question is one that could properly be decided by the jury as a question of fact. Plaintiff is unmistakably in error. The question of choice of law is and always has been one for the Court in the first instance.")(*citing Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941)); *Chance v. E.I. Du Pont de Nemours*, 57 F.R.D. 165 (E.D.N.Y. 1972); *but see Foster v. Maldonado*, 433 F.2d 348 (3rd Cir. 1970)(denying interlocutory appeal on choice of law and requiring jury to issue two alternative damages awards).

1    litigants in Mexico. "[T]he relevant statute … was intended to balance the interest of

2    injured persons in having a remedy available for such injuries against the interest of

3    [defendants] in being subject to a specified time limit during which they would

4    remain potentially liable for their actions…" *McCann*, 48 Cal. 4th at 91 (discussing

5    Oklahoma statute of repose).

6         Mexico's interest is legitimate because Mr. Machado lived and worked

7    exclusively in Mexico during the relevant time periods. (D28 V1 P7:2-4, TX 6408

8    (resume listing Mexico address), TX 6401-01 (Mattel Servicios employment

9    contract listing Mexico address in ¶ II.a), TX 6793-19 (MGA de Mexico

10   employment contract listing Mexico address in ¶ 17).) Mr. Machado also worked

11   exclusively for a Mexican company known as Mattel Servicios. (TX 6401-10

12   (defining "employer" as "Mattel Servicios"), D28 V2 P62:12-23, D28 V3 P6:22-

13   7:9, D29 V1 P7:14-16.) Mattel Servicios paid his salary. (D28 V3 P9:12-10:12; *see*

14   *also* TX 23846-06 ("Fourth:…Mattel Servicios shall assume all the responsibilities

15   in relation to the employment contracts").) Moreover, Mr. Machado's employment

16   agreement with Mattel Servicios expressly states that "all documents and

17   information [Mr. Machado] may be given due to the employment relationship are

18   the exclusive property of the employer," Mattel Servicios. (TX 6401-10, D29 V1

19   P7:11-8:23.) In contrast, Mattel, Inc. never entered into an employment agreement

20   with Mr. Machado and never paid his salary. (D28 V3 P10:7-12, D28 V2 P63:9-15.)

21   Mexico clearly has an interest in resolving any dispute between a Mexican employer

22   and its Mexican employee concerning the "exclusive property" of that Mexican

23   employer.

24        Other evidence adduced at trial further reinforces Mexico's interest in this

25   matter. With one possible exception, every alleged trade secret document relates to

26   the Mexico market and was kept in Mexico, either in (1) Mattel Servicios' internal

27   network (D28 V3 P26:21-27:6), (2) its employees' individual computer hard drives

28   (*id*.), (3) its employees' email inboxes (TX 8864 (showing documents emailed to

Mexico) or (4) in paper form in the office in Mexico (TX 6739 (document distributed to Mexico), (D31 V1 P80:2-14, P82:13-22 (same)).[3] Because the alleged trade secrets concern the Mexico market, and were copied and/or taken directly from offices in Mexico to Mr. Machado's apartment in Mexico, and then to MGA de Mexico's office in Mexico, that country has a strong interest in applying its law to this action.

Finally, Mexico's strong interest in this matter is evidenced by the criminal prosecution of Mr. Machado in Mexico. Plaintiffs initiated that criminal case in April 2005 for the same alleged conduct at issue in this case, and ultimately caused thirty federal agents to raid MGA de Mexico's offices in October 2005. (D28 V2 P56:24-57:8, D22 V1 P125:25-126:4, TX 7523-02). The criminal prosecution against Mr. Machado continues today. (D28 V2 P 60:12-17.) By definition, any conduct that could give rise to a police raid and the prosecution of Mr. Machado must be a matter in which Mexico has a legitimate interest.

In sum, Mattel Inc.'s counterclaim against Mr. Machado is brought against a Mexican citizen employed by a Mexican company, concerning: documents owned by and kept by the Mexican employer; documents located in Mexico and concerning the Mexico toy market (with one possible exception); documents that were never taken out of Mexico; and documents that form the basis for a Mexican police raid and Mexican criminal prosecution against Mr. Machado. Mexico clearly has an interest in this action.

---

[3] Jill Nordquist testified that TX 7104, the 2005 Preliminary Line List, did not concern Mexico, would not be shared with subsidiaries in its preliminary form and was kept only on Mattel's U.S. computer system. Even if true, the possibility that *one* document out of dozens concerned a market other than Mexico or was kept on a U.S. server does nothing to diminish Mexico's interest in this dispute.

### 3.   Step 3: Assuming California Has Any Interest in Applying Its Laws, Comparative Analysis Nevertheless Favors Mexico

The third step of the choice of law analysis requires the Court to "carefully evaluate and compare the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state." *McCann*, 48 Cal. 4th at 96-97. This is not an opportunity to evaluate the relative merits of the two competing laws, *i.e.* whether it is better policy to have a two or three year statute of limitations in trade secret cases. *Id.* at 97 ("our task is not to determine [which] rule is the better or worthier rule"). Rather, "the process can accurately be described as a problem of allocating domains of law-making power in multi-state contexts—by determining the appropriate limitations on the reach of state policies— as distinguished from evaluating the wisdom of those policies." *Id.*

In *McCann*, the California Supreme Court considered a choice between the lengthier California and briefer Oklahoma statute of limitations governing injuries from mesothelioma. When addressing this third step in the choice of law analysis, the Supreme Court began and ended with the location of the wrong: "[t]he conduct for which plaintiff contends [defendant] should be held liable…occurred in Oklahoma in 1957, at a time when plaintiff was present in Oklahoma and was an Oklahoma resident." *Id.* at 97. Although California no longer follows the "old choice-of-law rule" that automatically applied the law of the place of the wrong (*lex locus*), "California choice-of-law cases nonetheless continue to recognize that a jurisdiction ordinarily has the predominant interest in regulating conduct that occurs within its borders." *Id.* at 97-98. Accordingly, because the location of the wrong was Oklahoma, the law of that forum applied.

The California Supreme Court's reasoning in *McCann* applies here. As shown above, the undisputed evidence establishes that Mattel, Inc.'s counterclaim is against a *Mexican* citizen working for a *Mexican* company, who copied documents

owned by that company and which concerned the *Mexican* market, from a *Mexican* computer system to a USB thumbdrive in *Mexico*, and then took those documents to another *Mexican* company where he allegedly used those documents in *Mexico* to unlawfully sell dolls to *Mexican* children through *Mexican* retailers. In contrast, the interest of California is scant: *i.e.*, that the Mexico employer's ultimate parent company is in California. This state's negligible interest must yield to Mexico's paramount interest "in being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future." *Id.* at 98 (citing cases).

Nor will application of Mattel's two year statute of limitations *severely* impair California's interests:

> Certainly, if the law of this state is not applied here, California will not be able to extend its liberal statute of limitations for [injuries that] occurred wholly outside of California. *Nonetheless, our past choice-of-law decisions teach that California's interest in applying its laws [to] a potential plaintiff in a case in which the defendant's allegedly tortious conduct occurred in another state is less than its interest when the defendant's conduct occurred in California.*

*Id.* at 99 (emphasis added). As *McCann* explains, California courts "have adopted a restrained view of the scope or reach of California law with regard to the imposition of liability for conduct that occurs in another jurisdiction and that would not subject the defendant to liability under the law of the other jurisdiction." *Id.* For example, in *Offshore Rental v. Continental Oil Co.*, 22 Cal. 3d 157, 169 (1976), the Supreme Court held that "by entering [the foreign jurisdiction], plaintiff exposed itself to the risks of the territory, and should not expect to subject defendant to a financial hazard that [the foreign] law had not created." *McCann*, 48 Cal. 4th at 99. The same is true here: Mattel, Inc. entered the Mexico market with two subsidiaries: Mattel de Mexico to sell the toys and Mattel Servicios to hire and pay the employees. Having done so, "it is reasonable to conclude that [Mattel, Inc.] should not expect to subject [Mr. Machado] to a financial hazard that [Mexico] law had not created." *Id.* at 99

1  (quotes omitted). *See also, Arno v. Club Med Inc.*, 22 F.3d 1464, 1468 n.5 (9th Cir.

2  1994)(Judge Kozinski expressing skepticism that California could have *any*

3  legitimate interest in helping a California resident to collect money from a resident

4  of another country for conduct occurring abroad) (*cited* favorably by *McCann*, 48

5  Cal. 4th at 97 n. 13 and at 100).

6  　　California's interests would not be offended by the application of Mexico's

7  statute of limitations to this conduct occurring in Mexico for another reason: the

8  detriment to California's citizens' ability to seek redress is so slight. Applying

9  Mexico's law does not prevent California citizens from protecting their trade secrets

10  in Mexico – it only requires that they pursue trade secrets claims within two years

11  instead of three. California has no special interest in that extra year – the three year

12  period was copied directly from the Uniform Trade Secrets Act ("UTSA") and does

13  not reflect any important California policies. *See, e.g., Glue-Fold, Inc. v.*

14  *Slautterback Corp.*, 82 Cal. App. 4th 1018, 1023 (2000) (the three year period was

15  "adopted without significant change by California" and "Section 3426.6 is derived

16  almost verbatim from section 6 of the Uniform Act as originally drafted"). To the

17  contrary, before California adopted the UTSA, California applied the statute of

18  limitations governing breach of contract to common law trade secret claims, *i.e.* a

19  two year period for oral contracts and four years for written. *See e.g. Monolith*

20  *Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp.*, 407 F.2d 288, 292

21  (9th Cir. 1969) (applying two-year statute of limitations for oral contracts under Cal.

22  Code Civ. Pro. § 339(1)). When it adopted the UTSA, California intended to

23  supersede common law claims of misappropriation, but it did not manifest any

24  specific interest in the three-year limitation period, as opposed to the two or four-

25  year period previously governing.

26  　　California courts have upheld foreign law where the detriment to California

27  citizen's rights has been much more severe. For example, in both *McCann* and

28  *Offshore Rental*, the entire cause of action was barred by the foreign law. Clearly, a

1  foreign law barring all recovery is far more offensive to California's interests than a

2  foreign law shortening the limitations period by a single year. Yet, in both *McCann*

3  and *Offshore Rental*, the California Supreme Court concluded that foreign law

4  controlled. If *lex locus* overcame California's strong interests in *McCann* and

5  *Offshore Rental*, it certainly overcomes California's much weaker interest here.

6          California's interests would also not be offended by applying the two year

7  period to the particular facts of this case. Perhaps unique among California choice of

8  law cases, in this case the Plaintiffs *could* have brought the claim in compliance

9  with Mexico law and suffered *no detriment at all*, but voluntarily declined to do so.

10  After all, Mattel, Inc. brought the *criminal* proceedings against Mr. Machado in

11  April 2005, well within Mexico's two year period civil period. For reasons

12  unexplained, Mattel, Inc. chose not to pursue a *civil* action at the same time –

13  although it clearly could have. California has no interest in saving Mattel, Inc. from

14  its voluntary decision to pursue criminal – but not civil – remedies during the

15  limitations period.

16          Because Mexico's interest in applying its two year statute of limitations

17  "would be more impaired if its [limitations] policy were subordinated to the policy

18  of [California]," Mexico's two year statute of limitations governs. See *McCann*, 48

19  Cal. 4th at 97. Mattel, Inc.'s claim accrued under Mexican law no later than April

20  19, 2004, the date upon which "the conduct giving rise to the claim occurred."

21  (Docket No. 7869-1 at ¶ 5.) However, Mattel, Inc. waited more than two years to

22  file suit. Accordingly, judgment as a matter of law should be granted on Mattel,

23  Inc.'s counterclaim for misappropriation of trade secrets against Mr. Machado.

24      **C.**     **Plaintiffs Failed to Establish Unjust Enrichment Against**

25              **Mr. Machado**

26          Even if Plaintiffs' counterclaim is timely, it fails because Plaintiffs

27  established no basis for a damages award against Mr. Machado individually.

28  Plaintiffs' damages expert, Michael Wagner, "could find no evidence" that "Mattel

lost any sales" in Mexico. (D30 V1 P25:1-4.) Wagner also "saw no evidence…that could establish" whether "MGA gained any sales at all." (*Id.* at 25:5-10.) The same is true for Mattel de Mexico and MGA de Mexico. (*Id.* at 25:11-25.) With no evidence of actual loss, Plaintiffs offered through Mr. Wagner a theory of unjust enrichment that depended on "a cost approach." (*Id.* at P26:1-16.) Mr. Wagner's theory is that MGA avoided the cost of creating the alleged trade secrets, *i.e.* "that MGA de Mexico saved money because, according to Mattel, they got these trade secret documents for free" (*Id.* at 26:17-20 (agreeing that this description of his opinion is "fair").)

However, Mr. Wagner admitted that "it would be *MGA de Mexico* that would incur the [cost] if [it] were to enter into the same type of arrangement with the retailers." (*Id.* at P30:19-31:4 (emphasis added).) The individual employees of MGA de Mexico, such as Mr. Machado, *would not* have incurred the cost on which the unjust enrichment is based. (*Id.*) "[I]f MGA de Mexico got this sales information for free, it would be *MGA* that would get the benefit." (D31 V1 P31:5-7.) Mr. Wagner clarified that *Mr. Machado* would *not* have received a benefit, because he would not have incurred the cost in the first place. (*Id.* at 31:8-10.) Because Mr. Machado did not receive any benefit from avoiding the cost of obtaining the alleged trade secrets, he was not unjustly enriched as an individual. *See, e.g.,* CACI 4410 ("A person is enriched if he has received a benefit.") (*citing* Restatement of Restitution, section 1, comment a), ("He confers a benefit … where he saves the other from expense or loss") (*citing* Restatement of Restitution, section 1, comment b).

Mr. Wagner speculated during cross-examination that Mr. Machado received either a signing bonus (*id.* at 31:11-32:11) or a bonus based on MGA de Mexico's profits (*id* at 29:23-30:5), and that these bonuses might be an alternate way of calculating unjust enrichment. This new, previously undisclosed theory does not help Plaintiffs, however, because there is no evidence that Mr. Machado received either type of bonus. (*See, e.g.,* D22 V2 P73:6-23 (no signing bonus); TX 6774

(Email from I. Larian to G. Machado stating "As a company policy, we do not give anyone signing bonus."); TX 6793-16 (MGA de Mexico contract provides no signing bonus; provides only bonus based on reaching sales goals, not profits); *see also* D22 V2 P99:25-101:1 (bonus based on sales not profit; MGA de Mexico earned no profits in any event), D28 V3 P37:19-38:9 (same).) The only bonus Mr. Machado received was for reaching a sales goal, but as noted above, neither Mr. Wagner nor any other witness could attribute a single MGA sale in Mexico to any of the alleged trade secrets. (*Id.*, *see also* D30 V1 P25:5-25.) Mr. Wagner's untimely "bonus" theory of unjust enrichment is unsupported by the evidence and cannot be a basis for any award.

In sum, Plaintiffs' theory of unjust enrichment is simply inapplicable to Mr. Machado. Enrichment requires conferring a benefit, and Plaintiffs have failed to present any evidence that Mr. Machado *personally* benefited in any way from the alleged trade secrets. To the contrary, Plaintiffs' theory is that *MGA* or *MGA de Mexico* might have been unjustly enriched. Accordingly, judgment as a matter of law should be entered against Plaintiffs.[4]

    **D.**    **Plaintiffs Failed to Establish the Elements of Trade Secret Misappropriation**

        *1.*    *No Evidence of Avoided Costs for Many Claimed Trade Secrets*

As noted above, Plaintiffs' "avoided costs" theory is inapplicable to Mr. Machado as an individual defendant. Additionally, as shown below, Plaintiffs presented evidence of "avoided costs" for *only* twenty-eight alleged trade secret documents: twenty-six documents containing point of sale data ("POS Data"), one 2005 Preliminary Line List ("PLL") and one 2004 Girls Full Year Mexico Viability

---

[4] Plaintiffs may be entitled to injunctive relief or a reasonably royalty, but these remedies are to be determined by the Court, not the jury. If necessary, Mr. Machado will brief the availability of these remedies in connection with post-verdict motions.

1   Report ("MVR"). Accordingly, Mr. Machado requests that judgment as a matter of

2   law be entered against Plaintiffs for all other alleged trade secret documents. At a

3   minimum, the Court should limit closing argument, the jury instructions and the

4   special verdict form to these twenty-eight documents. However, for the reasons that

5   follow, the counterclaim also fails as to these twenty-eight documents.

6   **2.   *The POS Data Was Not a Trade Secret***

7   The only alleged trade secret Mr. Wagner opined on at trial was POS Data

8   that Mattel de Mexico obtained from retailers. (D29 V2 P20:15-22:4.) According to

9   Mr. Wagner (and Mr. Cavassuto), Mattel de Mexico gave the retailers a 1% discount

10  on their orders of Mattel de Mexico products, in exchange for the POS Data. (*Id.*,

11  *see also* D30 V1 P28:1-18) The 1% discount totaled $5.1 million. (D30 V1 P28:1-

12  21.) The $5.1 million is therefore the amount of avoided costs, *i.e.*, unjust

13  enrichment that Plaintiffs seek from Mr. Machado in connection with the POS Data.

14  (*Id.* at P26:21-23.) The POS Data allegedly appears in twenty-six trial exhibits. [5]

15  However, the POS Data is a trade secret under California law only if it

16  "[d]erives independent economic value, actual or potential, from not being generally

17  known to … other persons who can obtain economic value from its disclosure or

18  use." Cal. Civ. 3426.1(d)(1). Mr. Cavassuto, the sole percipient witness on the POS

19  Data, revealed that the POS Data could not meet this test for two reasons. First,

20  Mattel de Mexico's contracts with retailers permit the retailers to disclose or sell the

21  POS Data to someone other than Mattel de Mexico. (D29 V1 P59:12-17; 60:11-21,

22  *see also* TX 24264T and TX 24269 (translated contracts).) Second, the contracts

23  

24  [5] These exhibits are: TX 6734, 6738, 7077-87, 7090, 7096, 7112, 7119, 7120, 7124,

25  7130, 7138, 7148, 8466, 8471 and 8866. (*See* D29 V1 P37:3-56:3.) Note that TX

26  7077 through 7138 and TX 8471, were never admitted into evidence using those exhibit numbers. However, these documents can be found on the CD purportedly

27  found by Mexican police, which was admitted as TX 8855A.

28

1  permit retailers to use the information to make their own business decisions, for

2  example, by allocating their shelf space to the best selling products. (*See id.*, *see*

3  *also* D29 V1 P59:20-24 ("Q. [Wal-Mart Mexico] can decide that a particular Barbie

4  doll isn't selling very well and decide to carry less of it, right? A. Yes"); 61:1-4 ("Q.

5  None of those retailers in Mexico need to get Mattel de Mexico's permission before

6  they use the information themselves, right? A. Themselves, no.") As Mr. Cavassuto

7  conceded, each retailer can disclose the POS Data or use the POS Data "to try to

8  make money off of the information it collects." (D29 V1 P59:25-60:2.)

9      Mr. Cavassuto's testimony, which remains uncontradicted, is fatal to

10  Plaintiffs' contention that the POS Data is a trade secret. Information can be a trade

11  secret *only* if the information is "*not* generally known … to other persons who can

12  obtain economic value from its *disclosure* or *use*." Cal. Civ. Code.

13  3426.1(d)(1)(emphasis added). Mr. Cavassuto admitted that the retailers can obtain

14  economic value from *both* disclosure *and* use of the POS Data: retailers can sell the

15  information and they can employ the data to maximize their own profits when

16  making their own business decisions. Accordingly, the POS Data is not a trade

17  secret, and therefore judgment as a matter of law should be entered against Plaintiffs

18  on this alleged trade secret, or in the alternative, the documents should not be

19  submitted to the jury.[6]

20          ### 3.    *The MVR Was Never Acquired, Disclosed or Used*

21      Plaintiffs contend that Mattel, Inc. incurred $325,000 in unidentified costs to

22  create the MVR, TX 6739. (D31 V1 P81:15-82:4.) Presumably, Plaintiffs seek to

23  recover this amount under the same "avoided cost" theory that Mr. Wagner

24  articulated for the POS Data.

25  _____

26  [6] In opposition, Plaintiffs may claim that these documents contain *other* information

27  that is a trade secret, but even if that were true, it is irrelevant, as the POS Data is the
   only alleged trade secret for which Plaintiffs calculated an "avoided cost."

28

1    Misappropriation of a trade secret may include acquisition, disclosure or use

2    of the trade secret. *See, e.g.,* Cal. Civil Code § 3426.1(b). However, Plaintiffs failed

3    to present any evidence that the MVR was ever acquired – let alone disclosed or

4    used – by any defendant. The MVR is notably absent from the CD purportedly

5    found in the offices of MGA de Mexico during the raid conducted by Mexican

6    police. (*Compare* TX 8855A (bates no. MGA 3815506) with TX 6739 (bates no.

7    M 0031292).) This is unsurprising, as the MVR was delivered to the Mexico office

8    in paper form. (D31 V1 P80:2-14.) Yet, Plaintiffs also failed to present any evidence

9    that Mr. Machado (or anyone else) took either of the two paper copies sent to

10   Mexico. (*See* TX 6739-01 (MVR sent to Ricardo Ibarra and Gabriel Zalzman), *see*

11   *also* D31 V1 P82:13-22 (Willensky testimony re same).)[7] Indeed, Plaintiffs

12   presented no evidence that those paper copies are actually missing, let alone that

13   defendants acquired either of them. Finally, the MVR is not among the paper copy

14   documents purportedly found by Mexican police during the search of MGA de

15   Mexico's office. Because Plaintiffs has failed to present any evidence that Mr.

16   Machado or anyone else misappropriated the MVR, judgment as a matter of law

17   should be entered against Plaintiffs on this alleged trade secret, or in the alternative,

18   the document should not be submitted for consideration by the jury.

19           **4.      The PLL Was Never Used or Disclosed**

20   Plaintiffs also contend that Mattel, Inc. incurred $202,000 in labor costs to

21   create the PLL, TX 7104. (D30 V2 P98:18-99:18.) Admittedly, the PLL is on the

22   CD purportedly found by the Mexican police, so Plaintiffs have presented evidence

23   of acquisition. However, on the facts of this case, mere acquisition cannot give rise

24

25   _____

26   [7] Mr. Ibarra was Mr. Machado's immediate supervisor at Mattel Servicios while Mr.
     Zalzman was the head of Mattel de Mexico and/or Mattel Servicios. (D29 V1

27   P19:10-22.)

28

1  to damages or unjust enrichment, and therefore acquisition is not a matter to be

2  considered by the jury. As CACI 4400's Directions on Use provide:

3    "Civil Code section 3426.1(b)(1) defines "misappropriation" as
      improper "[a]cquisition" of a trade secret, and subsection (b)(2) defines
4    it as improper "[d]isclosure or use" of a trade secret. In some cases, the
      mere acquisition of a trade secret, as distinguished from a related
5    disclosure or use, will not result in damages and will only be relevant to
      injunctive relief. . . [G]enerally the jury should be instructed only on
6    matters relevant to damage claims…

7  Plaintiffs must present evidence of use or disclosure for this alleged trade secret to

8  go to the jury.

9         Here, Plaintiffs presented no evidence that Mr. Machado (or any other

10  defendant) used or disclosed any information contained in the PLL. To the contrary,

11  the evidence shows that the document was never used. Ms. Kuemmerle denied using

12  "information derived from Mattel documents" to prepare MGA de Mexico's

13  business plan (D22 V1 P117:17-118:3) and denied seeing Mr. Machado, Ms. Trueba

14  or Mr. Vargas using documents with "Mattel" written on them (D22 V2 P84:10-13).

15  In fact, because MGA de Mexico initially sold year-old toys in Mexico in 2004, *i.e.*

16  toys released in the U.S. in 2003, information about Mattel, Inc.'s 2005 U.S. toy line

17  did "absolutely no good whatsoever." (D22 V2 P85:19-88:11.)

18         Similarly, Mr. Machado testified that the only Mattel document he looked at

19  was a report containing POS Data (which is not a trade secret, as noted above). (D28

20  V2 P40:8-23 (looked at "FRP files"), D28 V4 6:7-10:5 (looked at sales document to

21  compare sales).) When specifically asked about the PLL, Mr. Machado testified that

22  he did not select the document for copying, that he did not use it, that neither Ms.

23  Trueba nor Mr. Vargas ever asked to look at it, and that he never saw it at MGA.

24  (D28 V4 P75:3-76:12, D29 V1 P14:6-16.)

25         Finally, Plaintiffs failed to present any evidence showing any similarity

26  between the PLL and any action by MGA de Mexico. Apart from the act of

27  acquisition itself, Plaintiffs failed to present any evidence of use or disclosure of this

28  purported trade secret. Accordingly, judgment as a matter of law should be entered

1   as to the PLL, or in the alternative, the document should not be submitted for

2   consideration by the jury.

3   **IV.   CONCLUSION**

4        The trade secrets counterclaim is untimely as to both Plaintiffs under Mexican

5   law, which applies to Mattel de Mexico through the borrowing statute and applies to

6   Mattel, Inc. through California's choice of law principles. Even if the counterclaim

7   is timely, neither Plaintiff has presented any basis for obtaining any damages or

8   unjust enrichment from Mr. Machado as an individual. As Plaintiffs' own expert

9   admitted, Plaintiffs' damages theory applies only to Mr. Machado's employer, not to

10  Mr. Machado individually. Finally, even assuming Plaintiffs clear these limitations

11  and damages hurdles, the counterclaim still fails for lack of evidence. Specifically,

12  Plaintiffs presented no evidence of compensatory damages for any alleged trade

13  secret, and presented evidence of unjust enrichment for only a handful. But that

14  handful of documents were: not secret (the POS Data), never acquired (the MVR)

15  and/or never used or disclosed (the MVR and PLL). Accordingly, Mr. Machado

16  respectfully requests entry of judgment as a matter of law against Plaintiffs.

17  DATED: March 19, 2011          Respectfully submitted,

18
                                  SCHEPER KIM & HARRIS LLP
19                                ALEXANDER H. COTE

20                                LAW OFFICES OF MARK E. OVERLAND
21                                MARK E. OVERLAND
                                  By:   /s/ *Alexander H. Cote*
22                                    ALEXANDER H. COTE

23
                                      /s/ *Mark E. Overland*
24                                MARK E. OVERLAND

25
                                  Attorneys for Carlos Gustavo Machado Gomez
26

27

28