ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone:  415-773-5700
Facsimile:   415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone:  213-629-2020
Facsimile:   213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br>Consolidated with Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**MGA PARTIES' OPPOSITION TO MATTEL, INC'S OFFER OF PROOF REGARDING EVIDENCE OF MGA'S RECEIPT OF INFORMATION REGARDING MATTEL'S UNRELEASED PRODUCTS;**<br><br>**AND NOTICE OF MOTION AND MOTION TO COMPEL;**<br><br>**AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Trial Date: January 18, 2011<br>Judge:  Hon. David O. Carter |

**INTRODUCTION**

Mattel's Market Intelligence Department routinely used false pretenses to get into competitors' private showrooms to steal information about their competitors' unreleased products. Desperate to counteract this devastating evidence, Mattel seeks to admit a series of emails showing MGA's knowledge of Mattel unreleased products. Mattel's efforts are misguided.

Having information about unreleased product is not, in itself, wrongful. The issue is whether that information was kept secret and how the competitor obtained that information. Both Mattel and MGA have disclosed certain information about unreleased products to the press or other parties not obligated to keep that information confidential. Certain Mattel and MGA products are also sometimes placed in open view in a retailer planogram rooms. Getting information from the press or from planograms is not the same as using fake business cards and made up toy store names to get access to MGA's entire unreleased product line.

None of the emails Mattel seeks to introduce reflect improper means to obtain Mattel product information. Many are unclear as to how or where information was obtained, which would necessitate a mini-trial on each email. Others are clear on their face that no improper methods were used. Indeed, the majority of the emails reflect MGA obtaining information from planogram rooms where Mattel products are in open view.

Mattel has not brought a claim against MGA based on any of these emails. That is because there would be no basis for any such claim. Mattel, in fact, also regularly obtained information about MGA showrooms, and MGA has not brought a claim based on that conduct. Mattel hopes to mislead jurors by introducing these emails to confuse and mislead jurors into believing that MGA has engaged in the same conduct as Mattel. Lets be clear: there is no comparison between Mattel sneaking into showrooms with fake business cards and MGA employees reporting information from retailer planogram rooms. The introduction of these emails

would mislead jurors and require the undue consumption of time explaining the facts surrounding each email. Mattel's request for further discovery is also premised on the false comparison of Mattel's conduct and the conduct reflected in these emails, and, thus, should be denied.

## I. THE EMAILS MATTEL SEEKS TO INTRODUCE ARE IRRELEVANT AND PREJUDICIAL

### A. The Emails Have No Relevance to MGA's Efforts to Protect its Trade Secrets.

Mattel's spies have all unequivocally testified that they would not have gotten into MGA's and other competitors' showrooms had they not pretended to be toy retailers. [Villasenor Depo. 94:3-13; 134:8-21; Bradley Depo. 86:4-8; Dermody Depo. 36:1-7; Plunkett Depo. 75:18-25; Rahimi Depo. 132:10-16.] Indeed, to get into MGA's showroom, the Mattel Intelligence employees had to concoct an elaborate scheme involving false pretenses, false business cards, doctored invoices, made up toy stores and even phony advertisements for the non-existent showrooms. [*See*, *e.g.* Ex. 9484, 9640, and 8412] The Mattel manual on how to pull off this fraud even cautions the spies to practice their story of made up toy stores in case questioned about the size of the store, location and products sold and further cautions Mattel employees not to sign up for showroom visits in advance in case background checks are run on the person's phony business. *See*, Ex. 9640. To get into MGA's showroom took planning, effort and mostly, lots of deception. This was a criminal enterprise.

Mattel asserts, however, that MGA had no reasonable expectation of confidentiality of its showrooms and insists that Mattel spies were free to infiltrate MGA's showrooms. Why? Because various emails reflect MGA obtaining information about Mattel products from various sources. Mattel's argument is nonsensical.

Even assuming, *arguendo*, that these emails reflect MGA employees gaining access to Mattel showrooms - - which, for the vast majority of those emails is

1   negated by the text of the email itself - - such emails cannot be compared to
2   Mattel's criminal conduct and cannot diminish MGA's expectation that its
3   showrooms were free from Mattel undercover agents.  That MGA obtained
4   information in planogram rooms or from retailers does not mean MGA should have
5   expected Mattel employees to sneak into MGA's showroom using false pretenses.
6        First, even if MGA employees improperly got into *Mattel*'s showroom,
7   which one cannot conclude from most of these emails, it does not diminish MGA's
8   efforts to protect the secrecy of *its* showrooms.  Even with the one email reflecting
9   entry into a Mattel showroom, there is no indication that MGA employees used any
10  improper methods to get into Mattel's showrooms.  One can scour the record for
11  evidence of MGA employees misrepresenting themselves to get into Mattel
12  showrooms and can find no such evidence.  None of the emails reflect the use of
13  false business cards, fake retailer names or any other false pretenses by MGA
14  employees.  Indeed, the very witness Mattel relies on to suggest MGA got into
15  Mattel's showrooms, Patrick Potgiesser, testified that Mattel employees, who were
16  friends with MGA employees in Germany would periodically invite their MGA
17  friends into the Mattel showrooms in Nuremberg.  All this proves is that Mattel was
18  lackadaisical with its efforts to protect secrecy.  It does not demonstrate any lack of
19  efforts by MGA.
20       Second, Mattel conflates two entirely different situations - - showrooms vs.
21  planogram rooms.  This is intentional on Mattel's part to create confusion over
22  permissible and impermissible conduct.  Planogram rooms are run by retailers, not
23  manufacturers, at the retailers' home office locations.  The retailers, not the
24  manufacturers, control access to those rooms.  Retailers invite manufacturers into
25  those rooms and the products of one's competitors are often visible in those rooms.
26  Dkt. # 9316 (MGA's Opposition to Mattel's Motion for Summary Judgment) at
27  p. 25.  MGA has taken steps to prevent Mattel from seeing products in planogram
28  rooms.  In 2003, retailers agreed at MGA's request to set up MGA products in

- 3 -

separate rooms. Bodden Dec., ¶6. (Dkt # 9316). MGA has also gone to the extraordinary step of sending retailers "white boxes" – white blank boxes that are the size of MGA products, but do not show the product itself. *Id.*

There is no evidence in the record to suggest that Mattel took similar – – or any – –efforts to prevent MGA from seeing Mattel products in planogram rooms. Even if there were such evidence, it would, at best, only reflect the efforts or lack of efforts by Mattel to protect its product information. Whether MGA has seen Mattel products in planogram rooms does not mean that Mattel necessarily had access to MGA planogram information.

Finally, even if one could make the illogical leap that because MGA saw Mattel products in *planogram* rooms, Mattel was free to see MGA products in *planogram* rooms, this does not impact in any way the secrecy of MGA *showrooms* - -  rooms over which MGA, not the retailer, controlled. There is no evidence to suggest that Mattel could have obtained all the same product information in planogram rooms as it did in showrooms. Planogram rooms do not include the distribution of sell sheets, catalogs and price lists. Cursory view of products in a planogram room is not the equivalent to having color photos from sneaking into a showroom. Bodden Decl., ¶8 (Dkt # 9316).

### B. The Emails Are Not Relevant For Impeachment.

Mattel's claim that these emails are relevant for impeachment again assumes no distinction between its Market Intelligence Department's use of false pretenses to get into private showrooms and the emails reflecting no such fraudulent conduct. That MGA obtained information about Mattel products in planograms or from retailers does not mean that Mattel's Market Intelligence Group's conduct was not wrongful. Indeed, it is just the type of false comparison that justifies the exclusion of these emails as irrelevant, prejudicial and likely to lead to confusion.

### C. The Emails Are Not Relevant to Unclean Hands.

Again, Mattel's argument presupposes a similarity of conduct between Mattel and MGA. This is comparing apples and oranges. Mattel's intention to mislead jurors into believing that MGA engaged in similar conduct is improper and would only mislead jurors. Indeed, most of the emails Mattel wants to use relate to MGA's obtaining access to retailer planogram rooms - - not showrooms – – and the few that relate to showrooms reflect no improper or wrongful methods of accessing Mattel showrooms. This also runs afoul of the Court's prior order limiting the defense of unclean hands to conduct directly related to the claims. (Dkt. # 9538).

## II. NO FURTHER DISCOVERY IS WARRANTED

With less than three weeks left in trial, Mattel now wants to fish through personnel files in search of evidence to link these irrelevant emails to Mattel's criminal conduct. There is no basis to allow this further discovery. Finally, even if such records were located, German privacy issues would arise that would have to be addressed.

## III. THE EVIDENCE MATTEL SEEKS TO ADMIT IS MISLEADING AND IRRELEVANT AND WOULD REQUIRE AN UNDUE CONSUMPTION OF TIME ON MINI-TRIALS OVER WHAT THE EMAILS REFLECT

Mattel seeks to put vague emails in front of the jury and let the jury then guess as to what they mean. Indeed, Mattel hopes the jury will actually reach false conclusions about these emails. An examples illustrate this.

Mattel seeks to admit an email with the following language:

> "YOU SHOULD HAVE SEEN ME WITH MY DIGITAL CAMERA TAKING THE PICTURE IN THE MIDDLE OF THEIR SHOWROOM. . . . I WAS DOING SPY WORK FOR YOU!"

TX 09875 (April 30, 2002 email from Susana Kuemmerle to Isaac Larian).

What is reflected in this email chain is Ms. Kuemmerle taking photos of a suspected knock off products at a showroom in South America. She was taking

pictures so MGA could evidence whether to bring legal action for a possible infringement suit. But what Mattel wants to do is simply publish the email to the jury with no explanation because the language, without explanation, looks suspicious. Several of the emails Mattel seeks to introduce are similarly innocent emails that Mattel seeks to portray as reflecting some improper conduct. In introducing a series of seemingly inflammatory emails, Mattel hopes to both mislead jurors and to unduly waste MGA's time seeking to explain the circumstances surrounding each email so as to avoid any misrepresentations.

## IV. CONCLUSION

For the foregoing reasons, Mattel's request to muddy the record and prejudice jurors with misleading information should be denied.

Dated: March 21, 2011         Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: ___*/s/ William A. Molinski*___
Willilam A. Molinski
Attorneys for MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT HK, LTD., MGA de MEXICO, S.R.L. de C.V., and ISAAC LARIAN