QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, | CASE NO. CV 04-9049 DOC (RNBx) |
| Plaintiff, | Consolidated with |
| vs. | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| MGA ENTERTAINMENT, INC., a California corporation, | Hon. David O. Carter |
| Defendants. | **MATTEL'S TRIAL BRIEF REGARDING TESTIMONY OF GLENN VILPPU** |
| AND CONSOLIDATED ACTIONS | Trial Date:  January 18, 2011 |

00505.07975/4041290.2

**Preliminary Statement**

MGA should be precluded from calling expert Glenn Vilppu in its case-in-chief to testify about "dissimilarities" between the Carter Bryant drawings and the first generation Bratz dolls.  The Court has repeatedly precluded Mattel from offering evidence of "similarities" between Mr. Bryant's drawings and MGA's Bratz dolls.  In particular, the Court excluded evidence of MGA's infringement suits in Hong Kong, in which MGA claimed that a number of dolls that look much less like Bratz than Mr. Bryant's drawings are "copies" or "reproductions" of both Mr. Bryant's drawings and the dolls.  In so ruling, the Court cautioned against allowing the parties to engage in a "similarity test."  The Court also precluded Mattel expert Heather McComb from opining about similarities between the drawings and dolls on the grounds that such opinion concerns an "ultimate issue" in the case.  The Court further excluded Mattel expert Frank Keiser, who created scans of the doll sculpts for use in comparing the sculpt works for similarities, and largely excluded the testimony of Lee Loetz, in part because, the Court found, he impermissibly considered "unprotectable" elements in reaching his conclusions about similarities.

After precluding Mattel from offering evidence of *similarities*, it would be unfairly prejudicial to Mattel to allow Mr. Vilppu to testify to *dissimilarities* between the works.  Mr. Vilppu purports to identify such differences in precisely the same ways that Mattel has been prevented from identifying similarities.  He compares Bratz works to non-Bratz works – such as animated characters and drawings of human forms – to conclude that the Bratz drawings are more similar to those works than to the Bratz dolls and that any similarities between the drawings and dolls are merely the result of "standard" human forms and animation techniques.  He relies on free-hand recreations of the drawings and dolls that he admittedly created to highlight differences and mask similarities between the works.  He opines on the "ultimate issue" of whether the drawings are similar to the dolls, including by concluding that the dolls "are not faithful executions of the drawings."

He identifies "differences" by using the same comparisons and methods that Mr. Loetz used to identify similarities and that the Court found were flawed because they considered "unprotectable" elements.  Mr. Vilppu's testimony on differences should be excluded to the same extent as Mattel's evidence of similarities.

Even if otherwise admissible, Mr. Vilppu's testimony should be precluded as improper rebuttal testimony.  MGA offered Mr. Vilppu to rebut Mr. Loetz's opinions concerning the similarities between Mr. Bryant's drawings and sculpts and MGA's Bratz works.  After the Court found Mr. Loetz's methods flawed, Mattel did not call Mr. Loetz to testify.  Mr. Vilppu's criticism of Mr. Loetz is therefore irrelevant.  Nor has Mattel called other witnesses to whose testimony Mr. Vilppu's opinions on "differences" could be deemed proper rebuttal.  Accordingly, the Court should preclude Mr. Vilppu's testimony in its entirety.

In the alternative, if the Court is inclined to allow Mr. Vilppu to testify about purported differences between the works, then Mattel should, in rebuttal, be permitted to introduce the evidence of similarities that has been excluded to this point, including evidence of MGA's infringement suits in Hong Kong – including the dolls over which MGA sued and MGA's admissions about the "similarities" between those dolls and Bratz works – and Mr. Keiser's scans of the sculpts.

### Relevant Background

As set forth in more detail in Mattel's Daubert Motion No. 5, Mr. Vilppu's background, experience and interests are all decidedly *not* in the area of doll design and development.  Dkt. No. 9470 at 2-3.  His expertise is "traditional Renaissance drawing," or drawing "from imagination" – which Vilppu describes as the "exact opposite" of an approach based on copying or duplicating an image from a model.[1]

---

[1]   Vilppu Depo., Vol. 1 at 33:23-34:23.

MATTEL'S TRIAL BRIEF REGARDING TESTIMONY OF GLENN VILPPU

He admits he is "not an expert in dolls"[2] and is "not knowledgeable concerning . . . the process . . . of converting a design to a three-dimensional doll."[3]

According to Mr. Vilppu, he was asked by MGA "to address the opinions rendered by Mr. Loetz in connection with his report dated October 28, 2010."[4]  Mr. Vilppu also purports to "address certain conclusions" in the reports of Mattel experts Heather McComb and Nicholas Mirzoeff concerning Mr. Bryant's drawings. Specifically, Mr. Vilppu states that "Mr. Bryant's drawings were not of the type that could be faithfully executed in a doll, and the dolls, in fact, are not faithful executions of the drawings."[5]   Other than that statement in his introductory "summary" of opinions, Mr. Vilppu does not address Ms. McComb's or Mr. Mizreoff's reports or opinions anywhere in his 48-page report.  Mr. Vilppu testified that he has not been asked to render, and he does not intend to render, any opinions that are not set forth in his expert rebuttal report.[6]

Mattel did not call Mr. Loetz or Mr. Mirzoeff to testify.  Although Mattel did call Ms. McComb, the Court confined her opinion "to the drawings, . . . and the developmental stage" of the dolls.[7]   Ms. McComb did not do any side-by-side comparisons of the drawings and the dolls, and when she was asked if she has "an opinion about whether or not the first generation Bratz dolls successfully captured Mr. Bryant's vision as set forth in those drawings," the Court sustained MGA's objection that the question improperly pertained to the "ultimate issue" in the case.[8]

---

[2]  Vilppu Depo., Vol. 1 at 155:13-16.
[3]  Vilppu Depo., Vol. 1 at 49:10-14.
[4]  Expert Report of Glenn V. Vilppu, dated December 1, 2010 ("Vilppu Report"), at 2.
[5]  Id.
[6]  Vilppu Depo., Vol. 2 at 433:16-24, 434:14-18.
[7]  March 10, 2011 Trial Tr., Vol. 2 at 121:1-7.
[8]  Id. at 127:4-128:10.

<u>**Argument**</u>

**I.    MR. VILPPU SHOULD BE PRECLUDED FROM TESTIFYING**

The Court has repeatedly denied Mattel's requests to introduce evidence of similarities between Mr. Bryant's works and MGA's Bratz works.  For example, the Court precluded Mattel from offering evidence of the non-Bratz dolls over which MGA sued for infringement of Bratz works – including Mr. Bryant's drawings – in Hong Kong, including by preventing Mattel from showing the dolls to the jury or introducing MGA's admissions that such dolls – which look much less like Bratz than do Mr. Bryant's drawings – are "copies" or "reproductions" of Bratz.  <u>See</u> Dkt. No. 9881 (Mattel's Offer of Proof re MGA's Allegations That Other Dolls Are "Reproductions" of the Bryant Drawings).  In precluding this evidence, the Court expressed its concern that the Ninth Circuit opinion prevents it from allowing Mattel to make such comparisons to other works.  Specifically, the Court stated that it will not "get into what I call a similarity test.  The Circuit's forewarned this Court it's improper, it's unduly consumptive of time, it's prejudicial.  This is a suit about Bratz."[9]

The Court also precluded Mattel from offering expert Frank Keiser's testimony or from relying on digital scans he prepared of various sculpt works.  MGA argued that "Mr. Keiser's scans provide no assistance whatsoever to the jury" because "they mask important differences pertaining to the size and texture of the actual real-life sculpts at issue."  Dkt. No. 9756 at 1.  In excluding Mr. Keiser's testimony, the Court found that "Keiser's opinion and graphical presentation will cause undue confusion to the fact-finder and result in substantial prejudice to MGA," particularly because Mr. Keiser had "conceded during his cross examination that his graphical comparison was based upon a distortion of the relative sizes of the

---

[9]   Feb. 9, 2011 Trial Tr., Vol. 1 at 73:15-20.

MATTEL'S TRIAL BRIEF REGARDING TESTIMONY OF GLENN VILPPU

two sculpts, and was affected by the program's inability to consistently highlight the absence of similarities between the sculpts otherwise obvious to the naked eye." Dkt. No. 9758 at 2. The Court further stated that cross examination could not cure these weaknesses because "Keiser's purported computer rendering, his supposed expertise in the field, and the user friendly nature of his technology will likely induce the jury to give undue weight to his depictions when the actual sculpts should control." Id. Finally, the Court held that Keiser's opinion was unnecessary because the jury would be able to compare the physical sculpts for itself. Id.

The Court also prevented Ms. McComb from testifying that the dolls are similar to the drawings. Specifically, when Ms. McComb was asked about the success with which MGA translated Bryant's drawings from 2D to 3D, the Court sustained MGA's objection that such question improperly pertains to "the ultimate issue."[10] Likewise, the Court precluded Ms. McComb from opining "whether the dolls are a translation" of the drawings, on the grounds that "translation" is a "legal term."[11]

The Court also excluded the testimony of Mr. Loetz in part, including based on its concern that Mr. Loetz's "comparisons may induce the jury to improperly conclude that MGA committed infringement by copying unprotectable elements of Bryant's works." Dkt. No. 9669 at 12-13.

After precluding Mattel from offering this evidence concerning similarities, it would be unfairly prejudicial to Mattel to allow Mr. Vilppu to testify concerning differences. Mr. Vilppu reaches his opinions concerning differences in much the same ways that Mattel's witnesses have been precluded from doing with respect to showing similarities.

---

[10]   March 10, 2011 Trial Tr., Vol. 2 at 127:4-11.
[11]   Id. at 128:14-19.

00505.07975/4041290.2

For example, Mr. Vilppu included in his report pictures of a number of non-Bratz artistic works, including Renaissance-era paintings and sculptures, drawings of human forms, photographs of human faces and pictures of animated characters.[12] MGA has identified these non-Bratz works as exhibits it intends to use with Mr. Vilppu.  See TX Nos. 27485-27494.  As he did in his report, Mr. Vilppu will likely rely on these non-Bratz works to opine that Mr. Bryant's drawings are similar to them and that any similarities between the drawings and the dolls are attributable to "standard" elements found in these other works.[13]  Mr. Vilppu should be precluded from comparing Bryant's drawings or the Bratz dolls to non-Bratz works to the same extent that Mattel has been precluded from comparing Bratz works to the non-Bratz dolls that MGA claimed were "reproductions" of Bratz works.

---

[12]   Vilppu Report at 5-11.

[13]   Mr. Vilppu has no basis to opine that "similarities" between the drawings and dolls are the result of "standard human proportions or standard animation proportioning techniques."  Vilppu Report at 3.  Although he concluded that dolls "tend to be very similar" to the proportions of human beings, he admits that he "didn't examine dolls."  Vilppu Depo., Vol. 2 at 563:21-25, 566:24-567:3.  He also agreed that "there [are] . . . quite a few ways in which the Bratz doll does not reflect a naturalistic human appearance" (id. at 598:13-16), and that, in fact, there are a "number of respects in which Bratz dolls vary from natural human proportions."  Id. at 604:22-25.  He also agreed that other than the "ratio of head size to height," the Bratz dolls do not "display normal human proportions."  Id. at 569:22-570:1.  He further admitted that he is not "aware of any other dolls that vary from natural human proportions in all of the same ways that Bratz dolls vary from natural human proportions," and that he hasn't even "examined any other dolls to see how they vary in proportion similar to Bratz."  Id. at 605:1-6.  When asked to identify "other dolls [that] have the same proportions as the Bratz dolls," he responded that he does not "know what other dolls.  I'm not familiar with dolls.  Animation characters we can go through."  Id. at 567:13-17, 568:5-8.  He even agreed that there is no "standard animation proportion" and that animation proportions actually vary widely.  Id. at 632:19-633:24.  Mr. Vilppu should not be permitted to offer these unreliable opinions to the jury.

1    Mr. Vilppu also calls out "differences" by relying on recreations of Bryant's

2    drawings and MGA's dolls that he created for purposes of his report.  These

3    recreations appear on pages 40-43 of Vilppu's report, and are identified as TX Nos.

4    27499-27502.  To prepare these recreations, Mr. Vilppu purports to have copied the

5    facial features of Mr. Bryant's doll drawings and the facial features of the

6    corresponding dolls.[14]   Remarkably, Mr. Vilppu not only agreed that there are

7    differences between his drawings and the works on which they were based, but that

8    his *intent* was to "highlight differences and not reflect similarities":

9        Q    Why did you choose to focus on some elements of the [drawings

10           and dolls] and ignore other elements?

11       A    Why did we choose to focus on some elements of

12           the top pictures?

13       Q    While ignoring other elements?

14       A    The parts that we focused on clearly showed strong differences.

15       Q    So the focus was – the attempt here was simply to highlight

16           differences and not reflect similarities; is that right?

17       [objection]

18        THE WITNESS:  It was the point, yes.[15]

19    It would be unduly prejudicial to Mattel if Mr. Vilppu were permitted to

20    present his admittedly biased recreations to the jury after Mattel was excluded from

21    offering Mr. Keiser's scans.

22    Mr. Vilppu also stated opinions about what the Court concluded is the

23    "ultimate issue" in the case – i.e., the similarity (or difference) between the drawings

24    and dolls.  He states, for example, that:

---

26    [14]   Vilppu Depo., Vol. 2 at 619:2-620:3, 624:4-7.

27    [15]   Id. at 622:21-623:8; see also id. at 625:4-11 ("The effort was to show the differences.").

- "[I]f the sketches were mine, and the goal of the project was to recreate the sketches in the dolls, I would consider the project a failure. In industry terminology, the dolls are 'off model' and I would have rejected the dolls as not being a faithful execution of the sketches.[16]

- "[T]he dolls, in fact, are not faithful executions of the drawings."[17]

- "If the sketches were mine, and if the intent were to recreate my sketches in the dolls, I would reject the dolls as a faithful reproduction of the sketches because they are 'off model.'  In fact, when the sketches are put next to the doll, it is clear that they do not even depict the same person."[18]

Mr. Vilppu's opinions about the differences between the dolls and the drawings are the type of opinions that the Court, on MGA's objection, precluded Ms. McComb from offering.  Mr. Vilppu should not be permitted to offer such opinions either.

Further, Mr. Vilppu reached his conclusions about "differences" between the works by addressing the same elements, and using the same exhibits, that Mr. Loetz used in his comparisons.  See Vilppu Report at 12-47.  MGA argued that Mr. Loetz's methods were flawed because he did not "filter" unprotectable elements. See Dkt. No. 9497 at 10.  Mattel contends that it is not the task of a non-lawyer expert witness to "filter" unprotectable elements, and that even unprotectable elements are relevant to aspects of the infringement inquiry.  See, e.g., Dkt. No. 9422 at 3-6.  Mattel also contends that Mr. Loetz properly dissected the works he analyzed and compared only protectable expression.  But to the extent Mr. Loetz erred in considering "unprotectable" elements or failing to "filter," then Mr. Vilppu – who simply responded to Mr. Loetz's opinions, almost line-by-line – did the same thing.  Indeed, when asked at his recent deposition if he made "any attempt to distinguish between protectable and unprotectable elements," Mr. Vilppu responded

---

[16]  Vilppu Report at 3.
[17]  Id.
[18]  Id. at 4.

that he's "not an attorney.  No, I don't deal with that."[19]  He also admitted that he has no "understanding of what elements of a drawing are considered protectable under copyright law," and that he has no "understanding what elements are considered unprotectable under copyright law."[20]

Turnabout must be fair play.  Mr. Vilppu should not be permitted to opine on "differences" between the dolls and drawings by using the same sorts of comparisons, evidence and methods that Mattel has been precluded from relying on. In the alternative, if the Court is inclined to permit Mr. Vilppu to offer his opinions on the "differences" between Bryant's works and the Bratz dolls, then Mattel should be permitted to offer the evidence of similarities that it has been precluded from presenting thus far, including, in particular, evidence concerning the dolls over which MGA sued for infringement in Hong Kong, MGA's admissions about the "similarities" between those dolls and Bryant's drawings, and Mr. Keiser's scans.[21]

---

[19]   Vilppu Depo., Vol. 2 at 608:9-16.

[20]   Vilppu Depo., Vol. 2 at 609:13-23.

[21]   If the Court is inclined to allow Mr. Vilppu to testify, he should be limited to using comparisons that he discussed in his expert report and that concern works that are still the subject of Mattel's copyright infringement claim.  MGA has argued repeatedly that Mattel should be limited to the specific "comparisons" that it disclosed in discovery responses and included in Mr. Loetz's expert report.  See, e.g., Dkt. No. 9497 at 9-10.  More recently, in "opposing" Mattel's offer of proof regarding Mr. Keiser, MGA complained about Mr. Keiser attempting to rely on a "scan comparison" that he purportedly "had never indicated that he intended to offer" and that was not "disclosed in his expert report."  Dkt. No. 9756 at 1.  After taking these positions, it would be unfair to permit Mr. Vilppu to testify concerning any comparisons that were not previously disclosed in his expert report.

## II.   MR. VILPPU'S IMPROPER AND IRRELEVANT "REBUTTAL" TESTIMONY SHOULD BE EXCLUDED

As Mr. Vilppu admits, the "focus" of his report was on responding to Mr. Loetz, with whom Mr. Vilppu "disagreed a lot."[22]   In his report, Mr. Vilppu addressed each exhibit relied on by Mr. Loetz and disagreed with just about everything Mr. Loetz said.  The Court has recognized that Mr. Vilppu's relevance is as a rebuttal to Mr. Loetz.  See Dkt. No. 9696 at 9 ("Mattel does not contest the high relevance of Vilppu's expert opinion, especially because MGA needs Vilppu's opinion to rebut Loetz."); id. at 10 (stating that Mattel "seeks to preclude MGA from offering Vilppu's opinion in response to Loetz's opinion . . . to protect Loetz's errors from the fact-finder's scrutiny").  After the Court found Mr. Loetz's methods to be erroneous (see Dkt. No. 9600 at 25-28; Dkt. No. 9669 at 12-13), Mattel did not call Mr. Loetz as a witness.  As a result, Mr. Vilppu's opinions concerning purported "differences" between Mr. Bryant's drawings and the Bratz dolls – which were offered in direct response to Mr. Loetz's report – have been rendered moot and irrelevant.

Mattel recognizes that in denying Mattel's motion to exclude MGA expert Erich Joachimsthaler, the Court concluded that even though the Mattel expert whose opinions Dr. Joachimsthlaer was rebutting (Ravi Dhar) did not testify, Mattel had "called other witnesses, including an expert witness, about the subject matter addressed in Dr. Joachimsthaler's rebuttal report." Dkt. No. 10220 at 1.  Such is not the case with respect to Mr. Vilppu's rebuttal report.  Mattel has not called any witness, expert or lay, to discuss the similarities between Bryant's drawings and

---

[22]   Vilppu Depo., Vol. 2 at 555:25-556:11.

1  MGA's dolls.[23]  As noted, the Court precluded Ms. McComb from discussing the

2  success with which MGA translated Bryant's drawings from 2D to 3D.[24]

3      Accordingly, there is no basis for concluding that Mr. Vilppu's opinions

4  concerning "differences" between the drawings and the dolls are "intended solely to

5  contradict or rebut evidence on the same subject matter identified by another party."

6  Fed. R. Civ. P. 26(a)(2)(D)(ii).  Mr. Vilppu should therefore be precluded from

7  testifying concerning any purported differences between Mr. Bryant's drawings and

8  MGA's dolls.  See, e.g., Johnson v. Grays Harbor Community Hospital, 2007 WL

9  4510313, at *2 (W.D. Wash. Dec. 18, 2007) ("Until and unless Defendants' experts

10  testify, Plaintiff's experts will be unable, as a practical matter, to offer true

11  "rebuttal" testimony.  Therefore, Plaintiff's rebuttal experts will be allowed to

12  testify at trial only after Defendants' experts have testified."); Lindner v. Meadow

13  Gold Dairies, Inc., 249 F.R.D. 625, 636 (D. Haw. March 19, 2008) ("As O'Bryne

14  and Glanville are designated as rebuttal experts, however, their testimony is limited.

15  At trial, O'Bryne and Glanville cannot testify in Plaintiff's case-in-chief, and they

16  cannot testify unless and until Southern Foods' experts testify as to the opinions for

17  which O'Bryne and Glanville have been designated as rebuttal experts.");

18  Hindin/Owen/Engelke, Inc. v. Skilstaf, Inc., 2003 WL 25667624, at *2 (C.D. Cal.

19  Feb. 07, 2003) ("Stark will be permitted to testify as a 'rebuttal' expert, but if (and

20  only if) before he is called to the stand defendant makes a proffer as to exactly what

21  he will rebut in the way of prior expert testimony."); see also Peals v. Terre Haute

22  Police Dep't, 535 F.3d 621, 630 (7th Cir. 2008) ("The proper function of rebuttal

23

24  _____

25  [23]  In contrast, MGA has already examined witnesses concerning purported "differences" between the drawings and the dolls, including an extended

26  examination of Paula Garcia using multiple side-by-side comparisons.  See Jan. 26,

27  2011 Trial Tr., Vol. 1 at 85:8-117:4, 122:7-128:8.

   [24]  March 10, 2011, Vol. 2, at 127:4-128:19.

28

1  evidence is to contradict, impeach or defuse the impact of the evidence offered by

2  an adverse party.") (quotation omitted).[25]

3  **Conclusion**

4  For the foregoing reasons, Mattel respectfully requests that the Court preclude

5  Mr. Vilppu from testifying.

6

7  DATED: March 21, 2011                    QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP
8

9

10                                          By   */s/ John B. Quinn*
                                                 John B. Quinn
11                                               Attorneys for Mattel, Inc. and
                                                 Mattel de Mexico, S.A. de C.V.
12

13

14

15

16  [25]  MGA may argue that Mr. Vilppu should be permitted to testify at least for the

17  limited purpose of "rebutting" Ms. McComb's opinions concerning the sufficiency

18  of Mr. Bryant's design drawings with respect to their use in the development of

    Bratz.  As Mattel argued in its <u>Daubert</u> motion, however, Mr. Vilppu lacks the

19  foundation to respond to those opinions.  Dkt. No. 9470 at 10-11.  In contrast to Ms.

20  McComb's 25 years of experience in doll design and development, Mr. Vilppu is

    "totally incompetent" in the doll-making process, has never been involved in

21  transforming a two-dimensional drawing into a three-dimensional doll, and is "not

    knowledgeable concerning . . . the process . . . of converting a design to a three-

22  dimensional doll."  Vilppu Depo., Vol. 1 at 45:16-25, 46:8-19, 49:10-14, 176:22-

23  177:13.  He also has never inspected "control drawings" for dolls and has no "basis

    for evaluating or comparing how similar Carter Bryant's drawings of Bratz dolls

24  were to the actual Bratz dolls as compared with control drawings made for other

25  dolls that have been marketed."  Vilppu Depo., Vol. 2 at 601:7-10, 603:1-15.

    Accordingly, even if Mr. Vilppu's opinions about the alleged lack of quality of Mr.

26  Bryant's drawings have basis from the perspective of a fine artist, they are non-

27  responsive to Ms. McComb's opinions about the usefulness and sufficiency of those

    drawings.

28