QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc. and Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, et al., <br><br> Plaintiff, <br><br> vs. <br><br> MGA ENTERTAINMENT, INC., a California corporation, et al., <br><br> Defendant. | CASE NO. CV 04-9049 DOC (RNBx) <br><br> Consolidated with <br> Case No. CV 04-09059 <br> Case No. CV 05-02727 <br><br> <u>Hon. David O. Carter</u> <br><br> **MATTEL, INC.'S REPLY IN SUPPORT OF MEMORANDUM IN RESPONSE TO THE COURT'S ORDER REGARDING RELATION BACK OF THE BRATZ TRADE SECRET CLAIM (DKT. 9898)** |
| AND CONSOLIDATED ACTIONS | Hearing Date:       TBD <br> Time:                  TBD <br> Place:                 Courtroom 9D <br><br> Discovery Cut-off:   October 4, 2010 <br> Pre-trial Conf:        January 4, 2011 <br> Trial Date:            January 11, 2011 |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................... 1

ARGUMENT ............................................................................................ 2

I.  MATTEL WAS CLEARLY ENTITLED TO AMEND THE 04-9059
    COMPLAINT TO ADD ITS ADDITIONAL CLAIMS ......................... 2

II.  *MARCOUX* ALLOWS RELATION BACK TO A PLEADING IN A
     DIFFERENT ACTION ...................................................................... 6

     A.  MGA Fails To Distinguish *Marcoux* ......................................... 6

     B.  Disputes About How Mattel Added Its Bratz Trade Secret Claim
         Are Immaterial ........................................................................... 8

     C.  If The Court Declines To Follow *Marcoux*, *Nunc Pro Tunc*
         Amendment Should Be Granted ................................................... 9

     D.  The Court Should Reject MGA's Latest Request For
         Reconsideration Of The Court's Order Granting The Motion To
         Confirm ..................................................................................... 10

III. MGA'S DECEMBER 2004 INTERVENTION MADE IT AN
     ORIGINAL PARTY FOR ALL PURPOSES, AND THE DOE
     SUBSTITUTION OF LARIAN WAS PROPER UNDER
     CALIFORNIA LAW ....................................................................... 11

     A.  MGA's December 2004 Intervention Made It An Original Party
         For All Purposes, So Doe Substitution Is Irrelevant As To MGA ....... 11

     B.  California Law Governs Doe Substitution And Relation Back Of
         The Bratz Trade Secret Claim Against Larian ............................... 11

IV.  IN THE ALTERNATIVE, MATTEL'S BRATZ TRADE SECRET
     CLAIM IS COMPULSORY TO MGA'S APRIL 2005 COMPLAINT ....... 16

     A.  Mattel's Non-Bratz Trade Secret Claims Are Irrelevant To
         Whether The Bratz Trade Secret Claim Is Compulsory To
         MGA's April 2005 Complaint ..................................................... 16

     B.  MGA's Argument That The Bratz Trade Secret Claim Is
         Permissive Relies On The Same Reasoning That Was Rejected
         By The Court .............................................................................. 17

V.   MATTEL NEVER DISCLAIMED A PROPRIETARY INTEREST IN
     THE NAME "BRATZ" .................................................................... 18

VI.  THE LIMITATIONS PERIOD IS EQUITABLY TOLLED FROM APRIL 2004, OR AT LEAST DECEMBER 2004, UNTIL NOVEMBER 2006...........................................................................................19

VII. THE COURT NEVER DECIDED WHETHER THE LIMITATIONS PERIOD WAS TOLLED DURING THE YEAR-LONG INTERLOCUTORY APPEAL .......................................................22

CONCLUSION.......................................................................................23

00505.07975/4009778.4

MATTEL'S REPLY ISO MEMORANDUM RE RELATION BACK ORDER

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

<u>Amaral v. Cintas Corp. No. 2</u>,
    163 Cal. App. 4th 1157 (2008) .................................................................... 8, 9

<u>Bailey v. N. Ind. Pub. Serv. Co.</u>,
    910 F.2d 406 (7th Cir. 1990) ......................................................................... 6

<u>Barrows v. American Motors Corp.</u>,
    144 Cal. App. 3d 1 (1983) ............................................................................ 17

<u>Benge v. United States</u>,
    17 F.3d 1286 (10th Cir. 1994) ....................................................................... 6

<u>Bowles v. Reade</u>,
    198 F.3d 752 (9th Cir. 1999) ..................................................................... 4, 5

<u>Breceda v. Gamsby</u>,
    267 Cal. App. 2d 167 (1968) ........................................................................ 16

<u>Cabrales v. The County of Los Angeles</u>,
    864 F.2d 1454 (9th Cir. 1988), <u>vacated on other grounds</u>,
    490 U.S. 1087 (1989) .................................................................................... 12

<u>Cadence Design Sys., Inc. v. AvantA Corp.</u>,
    29 Cal. 4th 215 (2002) .................................................................................. 17

<u>In re Cintas Corp. Overtime Pay Arbitration Litig.</u>,
    2009 WL 1766595 (N.D. Cal. June 22, 2009) ...................................... 23

<u>City of Los Angeles, Harbor Division v. Santa Monica Baykeeper</u>,
    254 F.3d 882 (9th Cir. 2001) ....................................................................... 23

<u>DCD Programs, Ltd. v. Leighton</u>,
    833 F.2d 183 (9th Cir. 1987) ..................................................................... 3, 6

<u>Daviton v. Columbia/HCA Healthcare Corp.</u>,
    241 F.3d 1131 (9th Cir. 2001) ..................................................................... 20

<u>Doe v. Corp. of the  Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints</u>,
    Case No. 1:09-CV-351-BLW (D. Idaho 2010) ..................................... 18

<u>Eng v. County of Los Angeles</u>,
    737 F. Supp. 2d 1078 (C.D. Cal. 2010) ...................................................... 6

<u>Ervin v. Los Angeles County</u>,
    848 F.2d 1018 (9th Cir. 1988) ..................................................................... 21

Fuller v. Tucker,
    84 Cal. App. 4th 1163 (2000) ................................................................. 13, 14

General Motors Corp. v. Superior Court,
    48 Cal. App. 4th 580 (1996) ................................................................... 14, 16

Howey v. United States,
    481 F.2d 1187 (9th Cir. 1973) ................................................................ 4, 22

Hull v. Central Pathology Serv. Medical Clinic,
    28 Cal. App. 4th 1328 (1994) ...................................................................... 7

Hurn v. Ret. Fund Trust of Plumbing, Heating and Piping Indus. of S. Cal.,
    648 F.2d 1252 (9th Cir. 1981) ............................................................. 4, 6, 22

Javier H. v. Garcia-Botello,
    239 F.R.D. 342 (W.D.N.Y. 2006) ............................................................... 24

Jolly v. Eli Lilly & Co.,
    44 Cal. 3d 1103 (1988) ............................................................................ 14, 16

Lamon v. Stiles,
    2009 WL 230833 (E.D. Cal. Jan. 30, 2009) .................................................. 7

Marcoux v. Shell Oil Prods. Co., Inc.,
    2002 WL 31256197 (D. Mass. Oct. 7, 2002) ................................................. 7

Marcoux v. Shell Oil Prods. Co. LLC,
    524 F.3d 33 (1st Cir. 2008) aff'd in part rev'd in part on other grounds Mac's
    Shell Service, Inc. v. Shell Oil Products Co. LLC, 129 S.Ct. 2788 (2009) ....... 7, 8

McOwen v. Grossman,
    153 Cal. App. 4th 937 (2007) ................................................................. 13, 14

Moore v. James H. Matthews & Co.,
    682 F.2d 830 (9th Cir. 1982) ....................................................................... 12

Munoz v. Purdy,
    91 Cal. App. 3d 942 (1979) ......................................................................... 14

O'Donnell v. Vencor,
    466 F.3d 1104 (9th Cir. 2006) ...................................................................... 6

Olle v. Henry & Wright Corp.,
    910 F.2d 357 (6th Cir. 1990) ....................................................................... 12

Perrian v. O'Grady,
    958 F.2d 192 (7th Cir. 1992) ..................................................................... 2, 5

Provencio v. Vazquez,
    258 F.R.D. 662 (E.D. Cal. 2009) ................................................................. 18

Schneider v. Dumbarton Developers, Inc.,
    767 F.2d 1007 (D.C. Cir. 1985)............................................................. 10

Sierra Club v. Union Oil Co. of Cal.,
    813 F.2d 1480 (9th Cir. 1987), vacated on other grounds by Union Oil Co. of
    Cal. v. Sierra Club, 485 U.S. 931 (1988) ............................................. 6

United States v. Oregon,
    657 F.2d 1009 (9th Cir. 1981) ............................................................. 12

United States v. Pend Oreille Public Util. Dist. No. 1,
    926 F.2d 1502 (9th Cir. 1991) ........................................................... 4, 5

United States v. Sumner,
    226 F.3d 1005 (9th Cir. 2000) ............................................................. 10

Wang & Wang, LLP v. Banco do Brasil, S.A.,
    Case No. 06-CV-761, 2008 WL 5070133 (E.D. Cal. 2008)— ........................... 21

## Statutes

Cal. Code Civ. Proc. § 474 ....................................................... 12, 13, 14

Fed. R. Civ. P. 24(a)(2)................................................................. 12

## **Preliminary Statement**

MGA literally restates every argument it has ever made as to the timeliness of Mattel's Bratz trade secret claim in its opposition, effectively seeking reconsideration—again—of this Court's repeated rulings that the theft of Bratz information is part of Mattel's trade secret claim.  Notwithstanding MGA's effort to entirely restructure this case months into trial, where this claim is being tried, there is no basis for finding that that this claim does not relate back to April 2004.

Judge Larson's denial of leave to amend in the 04-9059 case was an abuse of discretion; Mattel did not further challenge the denial at the time because the Court's relation back ruling—which said, unequivocally, that Mattel's right to relation back would be unaffected—made the error harmless.  A ruling that Mattel's Bratz trade secret claim does not relate back to 2004 would make the error harmful, and reversible.  Nowhere does MGA dispute that Mattel's Bratz trade secret claim arises out of the same facts as its 2004 pleading.  As the Court recognized in its summary judgment order, given the conspicuous absence of prejudice, bad faith, and futility, "*Mattel's request for leave to amend its complaint against Bryant would have been granted* if the district court had been aware of the general rule that Rule 15(c) 'by its terms, only applies to the amended pleadings in the same action as the original, timely, pleading.'"  Dkt. 9600 at 92 (emphasis added).  If Mattel's amended claims relating to Bratz were added to that pleading, as Mattel sought, there would be no question that the Bratz trade secret claim – however and whenever it was added – relates back to that pleading.  It is only because Mattel's Bratz-related claims were *wrongly* ordered added to a different pleading that this issue is even being litigated.

Tellingly, MGA makes virtually no effort to justify the prior Court's ruling denying Mattel leave to amend; the best it can do is to rely on "case administration" and "judicial economy" (Dkt. 10179 at 1, 9), neither of which is recognized as a Rule 15(a) factor in this Circuit, let alone considered sufficient to deny leave for an otherwise proper amendment.  Moreover, even if the Ninth Circuit recognized judicial economy or non-

prejudicial delay as sufficient bases for denying leave, it would make no difference. Mattel sought leave in November 2006—*four years and four months ago*. As the Court recognized in its December 3, 2008 Order rejecting MGA's laches defense: "*Mattel has not delayed* in bringing its claims against the MGA parties . . . . The Court finds *no lack of diligence* by Mattel." Dkt. 4439 at 3-4 (emphasis added). No circuit would find "judicial economy" sufficient to deny leave in these circumstances; the Seventh Circuit, which Judge Larson cited, said that "burden to the judicial system" can justify denial of leave in a case when amendment was sought *immediately* before trial, not years before as here. <u>Perrian v. O'Grady</u>, 958 F.2d 192, 194-195 (7th Cir. 1992). MGA can point to no prejudice, no unfair surprise, and no need to try new and unexpected claims as a result of either this Court's or Judge Larson's decisions. And MGA's emphasis on the burden on the judicial system of trying claims that have been part of the consolidated case for years stands in sharp, irreconcilable contrast with its position, accepted by the Court, that it should be allowed to add new claims *after* the close of discovery six months ago.

Mattel is entitled to relation back of its trade secret claim. This Court's February 16 Order that all Bratz claims relate back except this one unfairly and wrongly prejudices Mattel because the one claim that does not relate back, under that Order, nevertheless has been held to preempt in whole or part five others that do. The Court should rule that Mattel's Bratz-related claims all relate back to April 2004.

## **Argument**

### I.   **MATTEL WAS CLEARLY ENTITLED TO AMEND THE 04-9059 COMPLAINT TO ADD ITS ADDITIONAL CLAIMS**

Leave to amend should be granted with "extreme liberality." <u>DCD Programs, Ltd. v. Leighton</u>, 833 F.2d 183, 186 (9th Cir. 1987) (internal quotations omitted). It is black letter law that "delay, by itself, is insufficient to justify denial of leave to amend." <u>Id</u>. Yet after benefitting from this liberal standard just months ago, when it amended its claims after discovery had ended, MGA argues that Judge Larson properly denied Mattel's four-year-old motion for leave based on a purported finding of undue delay.

Dkt. 10179 at 1.

First, contrary to MGA's argument, Judge Larson's January 2007 Order did not conclude that "Mattel had no justifiable reason for its delay in seeking leave to amend and in bringing its claims." Dkt. 10179 at 18. While recognizing MGA's delay argument, Judge Larson properly held that leave to amend could *not* be denied on that basis because of "the lack of any evidence that MGA or Bryant have been prejudiced by the delay." Dkt. 142 at 8. And one year later, Judge Larson specifically found that Mattel had *not* delayed when he rejected MGA's laches defense:

> **Mattel has not delayed in bringing its claims against the MGA parties.** The Court has already found, based on the undisputed evidence, that Mattel had no reason to know if its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed approximately a year later on November 4, 2004. MGAE intervened in Mattel's suit against Bryant approximately one month later on December 7, 2004. Thereafter, the parties briefed Mattel's motion to remand (filed on December 1, 2004 and denied on March 4, 2005), before a stay was entered in the case on May 20, 2005, pending the Ninth Circuit's consideration of an interlocutory appeal. After MGAE's intervention and before the stay was entered, the parties, including MGAE, engaged in discovery, and the Court considered certain discovery motions, including a motion to compel the deposition of Isaac Larian filed on March 17, 2005. The stay remained in place until after the Ninth Circuit affirmed the Court's denial of the motion to remand; it was lifted on May 16, 2006. Six months later, on November 17, 2006, Mattel sought leave to file its claims against the MGA parties. **On this record, the Court finds no lack of diligence by Mattel.**

Dkt. 4439 at 3-4 (internal citations omitted) (emphasis added).

Second, delay alone is not grounds for denial of leave to amend in any event. "The crucial factor is not length of delay, but prejudice." United States v. Pend Oreille Public Util. Dist. No. 1, 926 F.2d 1502, 1511 (9th Cir. 1991). As the Ninth Circuit has clearly stated: "[W]e know of no case where delay alone was deemed sufficient grounds to deny a Rule 15(a) motion to amend. Where there is a lack of prejudice to the opposing party and the amended complaint is obviously not frivolous, or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny such a motion." Howey v. United States, 481 F.2d 1187, 1190-91 (9th Cir. 1973) (finding denial of a motion for leave to amend to be  abuse of discretion even though the motion was made 5

years after the original complaint was filed); see also Hurn v. Ret. Fund Trust of Plumbing, Heating and Piping Indus. of S. Cal., 648 F.2d 1252, 1254 -1255 (9th Cir. 1981) (citing Howey with approval and holding that "denial of leave to amend was an abuse of discretion" even though "Hurn filed the motion for leave to amend approximately two years after the original complaint was filed.").

In its January 2007 Order, the Court found "a lack of **any** evidence that MGA or Bryant have been prejudiced by the delay." Dkt. 142 at 8 (emphasis added).  The Court found no futility and no bad faith.  Id. at 13-16.  Those findings are dispositive; Mattel should have been granted leave to amend the 04-9059 complaint under Rule 15(a).  See Bowles v. Reade, 198 F.3d 752, 758 (9th Cir. 1999) ("We have previously reversed the denial of a motion for leave to amend where the district court did not provide a contemporaneous specific finding of prejudice to the opposing party, bad faith by the moving party, or futility of the amendment.").

Since Judge Larson found no prejudice, bad faith, or futility, MGA attempts to justify the denial of leave by relying on generalized case administration concerns, a factor that has not been recognized in this circuit as a proper factor for consideration in this context.  Dkt. 10179 at 1; Pend Oreille, 926 F.2d at 1511 ("The propriety of a motion for leave to amend is generally determined by reference to several factors: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party.").  Even assuming this consideration is relevant, it is very narrow, and inapplicable here.  In Perrian v. O'Grady, 958 F.2d 192 (7th Cir. 1992)—relied upon by MGA (Dkt. 10179 at 8, 16)  and cited by Judge Larson (Dkt. 142 at 22)—the court did not even refer to case administration; it found that  the "burden to the judicial system" caused by "substantive amendments *shortly before trial* serve to defeat the public's interest in speedy resolution of legal disputes."  Id. at 195 (emphasis added).  Leave to amend was denied there because it was sought only two months before trial; here, Mattel moved for leave to amend more than a year and a half before the first trial, and many years before this trial.

Moreover, a result in which MGA's September 2010 motion for leave to amend

were granted while Mattel's January 2007 motion for leave to amend were denied would simply be unjust.  In its Order denying Mattel's motion to dismiss, the Court held that "the facts support granting [MGA] leave to amend" to assert its trade secret and other claims despite Brawer's and Machado's admitted knowledge of Villasenor's conduct when they joined in MGA in 2004, *six years* before MGA sought leave to amend.  Dkt. 8892 at 2-4.  Despite an extensive, documented record showing MGA's knowledge years before it brought its claims, MGA chose to lie in wait in bringing them.  A result in which it is allowed to do that, but Mattel is not allowed to bring claims in the manner it sought in late 2006, would be untenable.

Judge Larson denied Mattel leave to amend despite the absence of all four <u>Rule</u> <u>15(a)</u> factors—undue delay, prejudice, bad faith, and futility.  A long line of Ninth Circuit cases demonstrates that such a ruling cannot withstand scrutiny on appeal – unless the error is harmless.  <u>See</u> <u>Bowles,</u> 198 F.3d at 759 ("Because the amendment would not have been futile, and the district court made no findings of prejudice or bad faith, we hold that the district court abused its discretion in denying the motion for leave to amend and the motion for reconsideration."); <u>Pend Oreille</u>, 926 F.2d at 1512 (reversing denial of leave to amend where "the present case does not reflect what, if any, prejudice the State and the PUD would suffer if the Tribe were allowed to add its claim"); <u>Sierra Club v. Union Oil Co. of Cal.</u>, 813 F.2d 1480, 1493 (9th Cir. 1987) (reversing denial of leave to amend), <u>vacated on other grounds by</u> <u>Union Oil Co. of Cal.</u> <u>v. Sierra Club</u>, 485 U.S. 931 (1988); <u>DCD Programs</u>, 833 F.2d at 190 (reversing denial of leave to amend); <u>Hurn v. Ret. Fund Trust of Plumbing, Heating and Piping Indus. of</u> <u>S. Cal.</u>, 648 F.2d 1252, 1254-55 (9th Cir. 1981) (although motion for leave to amend was filed two years after the original complaint was filed, "denial of leave to amend was an abuse of discretion" because "we cannot accept the Fund's contention that a disposition on the merits at this time would be unduly prejudicial").

The prior judge erred in denying leave to amend in the manner Mattel sought. Finding no relation back based on the case in which Mattel's claims were filed would

1  render that error harmful.  The error cannot be permitted to deprive Mattel of its rights.

## II.  *MARCOUX* ALLOWS RELATION BACK TO A PLEADING IN A DIFFERENT ACTION

### A.  MGA Fails To Distinguish *Marcoux*

MGA's argument that Judge Larson "assumed—but did not decide at the time" of the January 2007 Order that the Bratz claims would relate back is wrong. Dkt. 10179 at 14.  He explicitly stated the claims related back (Dkt. 142 at 13-15), he "would not revisit the issue" in his May 2008 Statute of Limitations Order (Dkt. 3826 at 8), he confirmed the holding in his June 2008 Pre-trial Conference Order (Dkt. 3917 at 6), and he confirmed the holding again in his December 2008 Order (Dkt. 4439 at 3).  Not one of the cases MGA cites in support of its argument that a claim cannot relate back to a pleading in a different action involves a situation where the district judge improperly denied leave to amend but explicitly stated that the new claims would relate back to the pleading that was sought to be amended. (Dkt. 10179 at 14-15).[1]

In virtually identical circumstances, the First Circuit concluded that relation back was proper,  and necessary, to remedy the Court's error in denying leave to amend. Marcoux v. Shell Oil Prods. Co. LLC, 524 F.3d 33, 41-43 (1st Cir. 2008) aff'd in part rev'd in part on other grounds Mac's Shell Service, Inc. v. Shell Oil Products Co. LLC, 129 S.Ct. 2788 (2009).  MGA attempts to distinguish Marcoux by arguing that it did not involve a denial on the merits, but a denial of leave to amend "for reasons the Court does not give." Dkt. 10179 at 16.  Denial of leave to amend, explained or not, is a decision on

---

[1]  See O'Donnell v. Vencor, 466 F.3d 1104, 1111 (9th Cir. 2006) (no relation back to the original pleading in the first case that was dismissed for failure to prosecute); Benge v. United States, 17 F.3d 1286, 1288 (10th Cir. 1994) (no relation back to the original pleading in the first case that was dismissed for lack of proper service of process); Bailey v. N. Ind. Pub. Serv. Co., 910 F.2d 406, 413 (7th Cir. 1990) (no relation back because the party did not seek to assert the new claim "in an amended pleading in Suit 1"); Eng v. County of Los Angeles, 737 F. Supp. 2d 1078, 1099 (C.D. Cal. 2010) (no relation back to the original pleading in dismissed state court case because "there were no pleadings to amend when Plaintiff filed his federal action"); Lamon v. Stiles, 2009 WL 230833, at *4 (E.D. Cal. Jan. 30, 2009) (no relation back because the party did not seek to assert the new claims as an "amendment to the complaint filed in the earlier action"); Hull v. Central Pathology Serv. Medical Clinic, 28 Cal.App.4th 1328, 1334 (1994) (no relation (footnote continued)

the merits that is subject to reversal on appeal for failure to consider the <u>Rule</u> 15(a) factors.  The facts of <u>Marcoux</u> are analogous to those presented here: "the lessee-dealers [in <u>Marcoux</u>] *sought to amend the complaint . . . .* On June 12, 2001, *the Court denied the motion*, but stated that plaintiffs 'may file a *new case* which may be deemed to be related.'"  <u>Marcoux v. Shell Oil Prods. Co., Inc.</u>, 2002 WL 31256197, at *1 (D. Mass. Oct. 7, 2002) (emphasis added).  In <u>Marcoux,</u> as here, leave to amend was wrongly denied and the parties instead ordered to file a new complaint which would  relate back to the earlier pleading in a different action.

MGA argues that "Mattel does not claim that Judge Larson's denial on merits was an error" and "does not claim that there is a basis for now revisiting" it.  Dkt. 10179 at 16.  Actually, Mattel dedicated pages of its motion to the argument that "Mattel should have been granted leave to amend its complaint in the 04-9059 case when that is what it sought."  Dkt. 10152 at 14-16.  Mattel further explained that the "appropriate solution is to either find relation back under <u>Marcoux</u> or "grant Mattel *nunc pro tunc* amendment of the Court's January 11, 2007 Order to grant leave to amend in the 04-9059 case, including based on the Court's recent finding of no prejudice."  <u>Id</u>. at 15.

Contrary to MGA's argument, <u>Marcoux</u> clearly applies.  The First Circuit concluded , after examining the evidence objectively, that "the district court denied the motion to add the individual plaintiffs *only because* it granted the plaintiffs a right to file a new action that related back."  <u>Marcoux</u>, 524 F.3d at 41.  The same is true in this case. After explicitly holding that the Bratz claims "relate back to when it filed its original complaint in April, 2004" (Dkt. 142 at 14-15), Judge Larson stated that "[n]one of the substantive concerns raised by MGA and Bryant to the present amended complaint, <u>e.g</u>. statutes of limitations, would appear to be affected if the new claims were brought as defenses and counterclaims in the 05-2727 case."  <u>Id</u>. at 22.  In its summary judgment order, this Court the confirmed that, "[t]hough this [January 11, 2007 relation back]

---

back because the party did not seek to "amend her complaint to allege the new theories
(footnote continued)

1  ruling was erroneous, it caused no prejudice to MGA, *since it is clear that Mattel's*

2  *request for leave to amend its complaint against Bryant would have been granted* if the

3  district court had been aware of the general rule that Rule 15(c) 'by its terms, only

4  applies to the amended pleadings in the same action as the original, timely, pleading.'"

5  Dkt. 9600 at 92 (emphasis added).

6      <u>Marcoux</u> instructs that in these situations, a subsequent court is bound to correct

7  the earlier error by putting the party in the same position it would have been in had leave

8  to amend not been erroneously denied.  And that requires a finding of relation back.

9      **B.**    <u>**Disputes About How Mattel Added Its Bratz Trade Secret Claim Are Immaterial**</u>

10

11      MGA argues at length about when and how Mattel added its Bratz trade secret

claim.  Mattel has responded to those arguments at length previously, and has shown

12  they are wrong.  <u>See, e.g.</u>, Dkt. 7801, 8577, and 8662.  But they have no relevance here

13  in any event.  The decisive questions are objective:  Did the Court explicitly state in its

14  order denying leave that relation back would be unaffected by nominal case number

15  distinctions?  Did the Court deny leave to amend in the manner Mattel sought on that

16  basis?  Where would Mattel be now, in terms of its Bratz trade secret claim, had the

17  leave it sought been granted?

18      In September 2010, the Court confirmed that Mattel's counterclaims in the 05-

19  2727 case encompass a Bratz trade secret claim that arises from the same general set of

20  facts alleged in the April 2004 Complaint.  Dkt. 8705 at 3.  Had Judge Larson, as he

21  should have, granted leave to amend in the manner Mattel sought back in early 2007,

22  then the *counterclaims* in the 05-2727 case would be *claims* in the 04-9059 case.

23  Mattel's current counterclaims -- whenever and however they were added – would relate

24  back to April 2004 so long as they arise out of the general set of facts pleaded in the 04-

25  9059 case.  <u>Marcoux</u> gives Mattel the full benefit of relation back that would have been

26  achieved through amendment.  Since the Bratz trade secret claim is in the case and it

27  _____

28  of intentional infliction of emotional distress and breach of contract").

1   indisputably arises out of the general facts pleaded in 2004, it relates back under

2   Marcoux.

3          This Court's latest Order allows relation back of all Bratz claims except one by

4   asking *what pleading* asserted the Bratz trade secret claim rather than *what facts* underlie

5   the claim.  Although the record shows that the trade secret claim, however broadly

6   framed, encompassed Bratz from the beginning, focusing on that issue at all is,

7   respectfully, inconsistent with the principles of relation back.  If the Court had granted

8   leave to amend in the manner Mattel sought, the Bratz trade secret claim would relate

9   back regardless of which amended pleading asserted it.  See Amaral v. Cintas Corp. No.

10  2, 163 Cal. App. 4th 1157, 1199-1200 (2008) ("amendments alleging a new theory of

11  liability against the defendant have been found to relate back to the original complaint,

12  so long as the new cause of action is based on the same set facts previously alleged.").

13  The prior judge's uninvited error cannot deprive Mattel of substantive rights.  The only

14  way to correct the uninvited error is by finding relation back.

### C.   If The Court Declines To Follow *Marcoux*, *Nunc Pro Tunc* Amendment Should Be Granted

16          If the Court declines to follow Marcoux, *nunc pro tunc* amendment of the January

17  2007 Order is an appropriate remedy.  The Court already found that leave to amend

18  "would have been granted" had the district court been aware of the relation back issues.

19  Dkt. 9600 at 92.  *Nunc pro tunc* amendment is appropriate to make "the record reflect

20  what the district court actually intended to do at an earlier date, but which it did not

21  sufficiently express or did not accomplish due to some error or inadvertence."  United

22  States v. Sumner, 226 F.3d 1005, 1009-10 (9th Cir. 2000).  Here, Judge Larson clearly

23  stated that all 05-2727 counterclaims related to Bryant and Bratz would relate back to the

24  April 2004 pleading; this was not accomplished due to his procedural error.  Rather than

25  punish Mattel for this error four years later, *nunc pro tunc* amendment is called for.[2]

---

[2]   Obviously, should the Ninth Circuit disagree with the application of Marcoux  or with a *nunc pro tunc* correction of Judge Larson's error, it would be free to vacate any
(footnote continued)

MATTEL'S REPLY ISO MEMORANDUM RE RELATION BACK ORDER

### D.      The Court Should Reject MGA's Latest Request For Reconsideration Of The Court's Order Granting The Motion To Confirm

Finally, MGA argues the Bratz trade secret claim does not relate back because "there remains the issue of whether Mattel should have been allowed to plead Bratz as a trade secret at all." Dkt. 10179 at 30.  This is nothing more than a *second* request for reconsideration of the Court's Order granting Mattel's motion to confirm the pendency of a claim that MGA well knows has long been in the case.  Dkt. 10179 at 5-8, 10-14, 30-32.  The Court rejected this argument in its summary judgment order (Dkt. 9600 at 33), after rejecting it when MGA first raised it last year, and MGA offers no new facts or law to overturn the law of the case.

Quite the contrary, MGA simply repeats its position that Mattel did not "make it clear in a complaint or disclose it in discovery" that it was asserting a Bratz trade secret claim.  Dkt. 10179 at 32.  The Court's Order granting Mattel's motion to confirm found to the contrary:   Mattel repeatedly identified the Bratz trade secret claim in its interrogatory responses. Dkt. 8705 at 3.  "[T]he evidence is perfectly clear that MGA's counsel was aware of (and sought discovery into) Bratz trade secret claims." Id.  "Mattel may have vaguely alleged its Bratz trade secret claims, but it didn't pursue those claims in a vague manner—in fact, Mattel was quite clear that it intended to identify Bratz as a trade secret throughout this litigation." Id. at 4.  Even when he erroneously denied leave to amend, Judge Larson recognized that Mattel's misappropriation of trade secrets claim encompasses Bratz:  "By the same token, if Mattel does not own rights to BRATZ, then some of the defenses and counterclaims set forth as independent claims in the present amended complaint may become moot, including Mattel's copyright infringement claim *as well as portions of its remaining RICO, misappropriation, and aiding and abetting claims*." Dkt. 142 at 21 (emphasis added).  The Court has repeatedly addressed these issues, and the parties have been trying Mattel's Bratz trade secret claim to the jury for

relief awarded on that basis.  By contrast, should this Court deny Mattel the right to a jury decision on the merits of its Bratz trade secret claim, a new trial would be the only
(footnote continued)

00505.07975/4009778.4

1  months.  MGA's invitation to belatedly remove this claim from the case altogether

2  should be rejected.

3  **III.   MGA'S DECEMBER 2004 INTERVENTION MADE IT AN ORIGINAL PARTY FOR ALL PURPOSES, AND THE DOE SUBSTITUTION OF LARIAN WAS PROPER UNDER CALIFORNIA LAW**

4

5  **A.   MGA's December 2004 Intervention Made It An Original Party For All Purposes, So Doe Substitution Is Irrelevant As To MGA**

6

7  Revisiting its summary judgment briefing, MGA again claims that Doe

8  substitution of MGA is improper even assuming the Bratz trade secret claim relates back.

9  Dkt. 10179 at 18.  This argument is outside the scope of the Court's February 16, 2011

10  Order and barred by the law of the case doctrine and the rules limiting reconsideration.

11  MGA presents no new facts or law explaining why the Court should revisit this issue.

12  Moore v. James H. Matthews & Co., 682 F.2d 830, 833-34 (9th Cir. 1982).  Critically,

13  MGA never responds to Mattel's argument—raised in three summary judgment briefs—

14  that MGA's December 2004 intervention as of right in the 04-9059 action made it an

15  original party for all purposes, so rules governing added party amendments—whether

16  under federal or state law—are irrelevant as to MGA.[3]  See United States v. Oregon, 657

17  F.2d 1009, 1014 (9th Cir. 1981) (intervenors under Fed. R. Civ. P. 24(a)(2) "enters suit

18  with the status of original parties and are fully bound by all court orders"); Olle v. Henry

19  & Wright Corp., 910 F.2d 357, 361 (6th Cir. 1990) ("H & W2, as an intervenor, became

20  a party for all purposes."); see also Dkt. 9044 at 62-63; Dkt. 9183 at 76; Dkt. 9250 at 37.

21  **B.   California Law Governs Doe Substitution And Relation Back Of The Bratz Trade Secret Claim Against Larian**

22

23  For purposes of the Bratz trade secret claim, Larian (who did not intervene) was

24  ─────────────────

remedy if the appellate court were to find error.

25  [3]  MGA argues that after intervention, "Mattel did not level any claims against MGA . . . until November 20, 2006," but this fails to recognize that MGA was required to

26  respond to the issues raised by the April 2004 Complaint regardless of whether it was a named defendant.  See Schneider v. Dumbarton Developers, Inc., 767 F.2d 1007, 1017

27  (D.C. Cir. 1985) ("As an intervenor, 2106 subjected itself to the plaintiff's claims against the defendant, notwithstanding plaintiff's failure to amend his complaint to include

28  reference to 2106."); see also Dkt. 8986 at 14; Dkt. 9280 at 4, 7.

properly substituted as a Doe defendant.  Contrary to MGA's argument, Mattel did not file suit against Carter Bryant alone on April 27, 2004.  Dkt. 10179 at 2.  Mattel also sued ten Doe defendants under Cal. Code Civ. Proc. § 474.  MGA wastes five pages arguing that Mattel is not entitled to added party relation back under Rule 15(c)(1)(C) (Dkt. 10179 at 18-22), but the Ninth Circuit has unambiguously held that "[t]he California pleading practice allowing new defendants to be named after the original complaint is filed without violating the statute of limitations *is such a substantive state policy that is applicable in the federal courts*."  Cabrales v. The County of Los Angeles, 864 F.2d 1454, 1463-1464 (9th Cir. 1988) (emphasis added), vacated on other grounds, 490 U.S. 1087 (1989), opinion reinstated by 886 F.2d 235, 236 (9th Cir. 1989).  The February 16, 2011 Order addressed only the Bratz trade secret claim—a state law claim—yet MGA acknowledges the authority it cites is only relevant to relation back of federal claims.  *See* Dkt. 10179 at 18 ("Rule 15(c)(1)(C) is the exclusive means by which the relation back doctrine applies to an amended pleading adding new parties to *federal claims*.") (emphasis added).

MGA also argues that Mattel cannot avail itself of Doe substitution because it had "*actual knowledge of the identities* of MGA, Larian, [and] MGA HK as of the filing of its April 27, 2004 Complaint."  Dkt. 10179 at 23 (emphasis added).  That is not the correct legal standard.  In McOwen v. Grossman, 153 Cal. App. 4th 937 (2007), the court reiterated the black letter principle that "[a] plaintiff can avail him or herself of section 474 if the plaintiff is ignorant of facts that give rise to a cause of action against a person *who is otherwise known to the plaintiff*."  Id. at 942 (emphasis added).  Notably, the court emphasized that "[i]n keeping with th[e] liberal interpretation of section 474, it is now well established that even though the plaintiff knows of the existence of the defendant sued by a fictitious name, and even though the plaintiff knows the defendant's actual identity (that is, his name), the plaintiff is 'ignorant' within the meaning of the statute if he lacks knowledge of that person's connection with the case or with his injuries."  Id.  The court noted that "[t]he phrase 'ignorant of the name of a defendant' is broadly

1  interpreted to mean not only ignorant of the defendant's identity, but also *ignorant of the*

2  *facts giving rise to a cause of action against that defendant*." Id. at 943 (quoting Fuller

3  v. Tucker, 84 Cal. App. 4th 1163, 1170 (2000)) (emphasis added).

4      So long as a Doe complaint is filed within the limitations period, "[t]he statute of

5  limitations is not at issue under these circumstances." Id. "If the identity of the Doe

6  defendant is known but, at the timing of the filing of the complaint the plaintiff did not

7  know facts that would cause a reasonable person to believe that liability is *probable*," the

8  court held, "the requirements of section 474 are met." Id. (citing Dieckmann v. Superior

9  Court, 175 Cal. App. 3d 345, 363 (1985)) (emphasis added).  Thus, contrary to MGA's

10 assertions, Mattel's complaint naming Doe defendants was fully proper since "section

11 474 does not impose upon the plaintiff a duty to go in search of facts she does not

12 actually have at the time she files her original pleading." Id. at 944 (citing General

13 Motors Corp. v. Superior Court, 48 Cal. App. 4th 580, 596 (1996)).[4]

14      Doe substitution is thus proper unless MGA shows Mattel had "actual knowledge"

15 of "facts" demonstrating that "liability is probable" against Larian (or MGA) at the time

16 of filing its original complaint – a showing MGA has not even begun to make.  Munoz

17 v. Purdy, 91 Cal. App. 3d 942, 945-948 (1979) ("actual knowledge"); McOwen, 153 Cal.

18 App. 4th at 943 ("liability is probable").  "Mere suspicion," even if sufficiently well-

19 founded to meet the standards for accrual, is not enough.  California courts have

20 repeatedly held that the standard governing accrual under the discovery rule is *different*

21 than the standard governing Doe substitution. Id. at 596; see also Fuller, 84 Cal. App.

22 4th at 1170-71 ("It was an infectious error to import the rationale of Jolly and Sanchez

23 because these cases discuss the accrual of a cause of action, and a plaintiff's obligation to

24 reasonably investigate, inquiries which are not relevant to whether a Doe amendment is

25

26      [4]  In applying § 474, California courts have distinguished between "actual facts" and "mere suspicion."  General Motors, 48 Cal. App. 4th at 595 (quoting Dieckmann, 175

27 Cal. App. 3d at 363).  "The distinction between a suspicion that some cause *could* *exist* and a factual basis to believe a cause *exists* is critical in the operation of § 474." Id.

28 (emphasis in original).

1  timely."). Yet despite these standards, MGA points to nothing more than Mattel's

2  alleged suspicions about MGA and Larian.

3      MGA is wrong when it argues that "Mattel has never offered any legitimate

4  explanation as to what it didn't know on April 27, 2004 that it supposedly later learned

5  between April 27, 2004 and November 2006." Dkt. 10179 at 28. Mattel addressed this

6  issue at length in its summary judgment briefs. Dkt. 9044 at 63; Mattel's Reply in

7  Support Motion for Partial Summary Judgment, dated November 8, 2010 at 38 n.17, 39

8  n.18. Upon suing Bryant in April 2004, Mattel did not know what Larian (or MGA)

9  knew or what Bryant told him. Mattel did not know, at that time, whether Bryant told

10  Larian that he was a current Mattel doll designer when he signed his contract in

11  September 2000. Mattel did not know when Bryant had created Bratz or what Bratz

12  information Bryant had given to MGA. Mattel could not file, at that time, a claim for

13  trade secret misappropriation against Larian, or MGA.

14      Mattel did not learn that Bryant told Larian and Garcia that he was a current

15  Mattel employee until Bryant's deposition in November 4, 2004.[5] Mattel did not know,

16  until then, that Bryant had in fact disclosed the existence of his inventions agreement to

17  Larian at the time he signed his contract.[6] MGA points to the Bryant-MGA contract that

18  Mattel obtained on November 24, 2003 and argues that "Mattel knew by April 27, 2004

19

20  _____

[5]  Carter Bryant Dep. Tr. (Vol. 1) at 87:1-11 (November 4, 2004) ("Q. – referring
21  to? You told them you were still employed by Mattel prior to the time you signed
the October 4 agreement, correct? A. Yes. Q. And did you ask them whether that
22  raised any problems as far as they were concerned at MGA? MS. CENDALI:
Objection to the form. A. Not that I recall. Q. (By Mr. Quinn) Did—what—who
23  did you tell that you were still employed by Mattel? A. I told Isaac Larian and
Paula Treantafelles."); Carter Bryant Dep. Tr. (Vol. 1) at 90:3-10 (November 4,
24  2004) ("Q How did the subject of your Mattel employment come up in this meeting
on September 1? A. I believe that I just told Mr. Larian that I was employed by
25  Mattel. Q. Why did you bring that up? A. Well, I felt it was important for him to
know. Q. Why is that? A. I just felt it was important for him to know that.).
26  [6]  Carter Bryant Dep. Tr. (Vol. 1) at 96:5-23 (November 4, 2004) ("Q. Did the
subject of any agreements that you had with Mattel come up at all in this meeting?
27  A. The only thing that I can remember at all is saying that I thought I had some kind
of confidentiality agreement and that was all that I can remember."); Carter Bryant
28  Dep. Tr. (Vol. 1) at 153:16-18 (November 4, 2004) ("Q. And do you still have
(footnote continued)

that these 'defendants' were at least MGA and Larian" (Dkt. 10179 at 25).  But while the contract may have showed *Bryant's* disloyalty (by agreeing to work with MGA when he owed his allegiance to Mattel), the contract itself does not establish that Bryant told Larian, or that Larian knew of, Bryant's duties to Mattel and induced or encouraged the breaches of those duties; and the contract certainly does not, by itself, support a misappropriation of trade secrets claim against Larian or MGA.  Nothing MGA points to as providing notice to Mattel actually would have permitted Mattel to file such a claim in April 2004 – Mattel simply did not have "actual knowledge" of "facts" demonstrating that "liability is probable" against Larian or MGA at that time, as the Court has repeatedly ruled.  See Dkt. 142 at 15, n.5; Dkt. 3826 at 8-9.

MGA also argues that if the April 2004 Complaint put *MGA* on notice of the Bratz trade secret claim for purposes of equitable tolling, then *Mattel* must have been on notice of that claim as well.  Dkt. 10179 at 20-21.  But that argument  assumes the parties had equal knowledge, which they plainly did not at the time.  MGA and Larian—not Mattel—were on notice because they knew what they had done wrong.  At that time, Mattel lacked such knowledge.

Citing out-of-circuit federal cases, MGA argues that "whether the doctrine of added-party relation back is being abused" requires consideration of Mattel's knowledge "even after" the April 2004 Complaint is filed.  Dkt. 10179 at 24.  That is not the law.  See General Motors, 48 Cal. App. 4th at 588 ("where, as here, a lawsuit is initiated within the applicable period of limitations against someone (that is, almost anyone at all) and the plaintiff has complied with section 474 by alleging the existence of unknown additional defendants, the relevant inquiry when the plaintiff seeks to substitute a real defendant for one sued fictitiously is what facts the plaintiff actually knew *at the time the original complaint was filed*.") (emphasis added).  MGA's reference to Larian's "belated 'substitution'" in November 2006 misses the point of the rule:  so long as Mattel

these—the originals of these color drawings that you created in 1999?  A.  I believe (footnote continued)

substituted within three years after April 2004, all subsequently asserted claims against Larian relate back as if he was an originally named defendant.  See Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1118 (1988) ("From the time such a complaint is filed, the plaintiff has three years to identify and serve the defendant.").  In any event, Judge Larson found no undue delay between April 2004 and November 2006.  Dkt. 4439 at 3-4.

Finally, MGA spends four pages rehashing its argument that Mattel's claims accrued based on rumors and Mattel's investigation into alleged infringement of Toon Teens or Diva Starz.  Dkt. 10179 at 25-28.  For all the reasons explained in Mattel's summary judgment briefing, these facts have nothing to do with the claims that Mattel actually sued on, so they did not trigger accrual under the discovery rule, and they most certainly did not deprive Mattel of the ability to substitute Doe defendants under § 474.  MGA has failed to recognize, much less carry, the  burden imposed by California law of proving that § 474 does not apply.  See Breceda v. Gamsby, 267 Cal. App. 2d 167, 176 (1968) ("Gamsby [the defendant] had the burden of proving such awareness if it existed" to defeat application of § 474); see also Barrows v. American Motors Corp., 144 Cal. App. 3d 1, 9 (1983)  ("[W]e find respondents did not show that plaintiffs should be barred from amending under section 474 on grounds of unreasonable delay in filing the amendment.").

## IV.   IN THE ALTERNATIVE, MATTEL'S BRATZ TRADE SECRET CLAIM IS COMPULSORY TO MGA'S APRIL 2005 COMPLAINT

### A.   Mattel's Non-Bratz Trade Secret Claims Are Irrelevant To Whether The Bratz Trade Secret Claim Is Compulsory To MGA's April 2005 Complaint

MGA argues that Mattel's Bratz trade secret claim is permissive and does not relate back because the *non*-Bratz trade secret claims are permissive. Dkt. 10179 at 29 ("A trade dress claim concerning, My Scene . . . bear no common factual basis with theft of trade secrets in Mexico or Canada.").  This argument squarely contradicts the Court's summary judgment holding that misappropriation of trade secrets by each former Mattel they're in MGA's possession now.").

employee constitutes a distinct claim with a distinct limitations period.  Dkt. 9600 at 96 ("'continuing misappropriation' refers to multiple acts by one individual and not, as here, many other employees."); see also Cadence Design Sys., Inc. v. AvantA Corp., 29 Cal. 4th 215, 224-25 (2002) ("[t]here may be separate claims of continuing misappropriation among different defendants, with differing dates of accrual and types of tortious conduct—some defendants liable for initial misappropriation of the trade secret, others only for later continuing use.").  Even assuming Mattel's non-Bratz claims are permissive, this does not prevent the Bratz trade secret claim—which shares a logical relationship with the Bratz trade dress infringement claim—from being compulsory.

This answers the Court's question "whether a fraction of a never-before-pled claim can relate back to a pleading, even when the vast majority of the claim does not 'arise out of the conduct, transaction, or occurrence set out—or attempted to be set out' in that original pleading."  Dkt. 9898 at 2.  The Court has already treated the trade secret misappropriations by each employee as separate claims for limitations purposes; no plausible justification would allow a different principle to apply to relation back.  Provencio v. Vazquez, 258 F.R.D. 662, 631 (E.D. Cal. 2009).  See Doe v. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, Case No. 1:09-CV-351-BLW (D. Idaho 2010) (Carter, J.) ("The 'claim' in the Complaint may group all of the acts of abuse as a matter of pleading, but that does not do justice to the separate harm occasioned by each act of sexual abuse. Accordingly, the Court proceeds to apply Oregon's choice of law framework to each of the Complaint's claims and, further, treats the first two 'claims' in the Complaint as encompassing a number of sub-claims that arise out of each independent episode of sexual abuse.").

## B.  MGA's Argument That The Bratz Trade Secret Claim Is Permissive Relies On The Same Reasoning That Was Rejected By The Court

In its summary judgment brief, MGA "assumes" that Mattel's Bratz claims—including the Bratz trade secret claim—are compulsory to its April 2005 Complaint.  Dkt. 9084 at 72.  Ignoring its earlier position altogether, and without either

acknowledging or explaining its about-face, MGA now argues that its trade dress claim is "different temporally," "different in terms of what must be shown," and "arises from facts that post-date any claimed trade secret misappropriation of Bratz. Dkt. 10179 at 30. Yet this is precisely the same argument the Court rejected as applied to MGA's trade secret claim.  See Dkt. 8763 at 4 (Mattel arguing MGA's trade secret claim was permissive because "[t]hese alleged thefts occurred at different times, in different places, by different actors, through different means, and targeted different trade secrets.").  The Court ruled that two claims nevertheless may share a logical relationship if they are "contingent," Dkt. 8892 at 7, and if trying them separately "would duplicate the already tremendous burden on judicial resources caused by this litigation, and prevent a fact finder from evaluating evidence arising out of a common factual background." Id.  That certainly applies here.  MGA's trade dress claim alleged that Mattel infringed aspects of Bratz that Mattel claims reflect Mattel trade secrets stolen by MGA.  The fact that the Bratz trade dress claim was not ultimately tried to a jury does not matter.  See Dkt. 9600 at 159 ("[T]he determination of whether a counter-claim is compulsory is made at the time the pleading is filed, not at the end of discovery or at summary judgment.").  What is good for the goose is good for the gander:  the Court should reject MGA's attempt to apply a different, heightened compulsory standard to Mattel's claims but not its own.

## V.   MATTEL NEVER DISCLAIMED A PROPRIETARY INTEREST IN THE NAME "BRATZ"

Citing to a few words from a paragraph-long monologue by its counsel, MGA persists with its argument that Mattel disavowed a claim to ownership of the name "Bratz", so any claim to the rights associated with the name have been abandoned.  Dkt. 10179 at 31.  But, as Mattel showed, the transcript showed the opposite.  MGA's counsel, Mr. Nolan, stated that "our whole point is just to confirm . . . they're not adding *a trademark claim* against the ownership of Bratz.  We understand that that's not the case . . . .  It was just that the name Bratz was apparently proprietary to Mattel." Dkt. 10152 at 16 (emphasis added).  Confirming that Mattel was not adding a trademark

claim, Mr. Zeller replied that Mattel was not claiming a "quote, proprietary, end quote" interest in the name Bratz *under trademark law,* but made absolutely clear that Mattel was indeed claiming ownership of the name:

> MR. ZELLER:  [W]e have not said that the name Bratz is, quote, proprietary, end quote, to Mattel.  That is not the basis of our theory. The name is part of the concept.  It is part of the idea.  It is part of what it is that Carter Bryant created when he was employed by Mattel that relates to Bratz.  That is among the inventions that he created.  And therefore, we own it . . . .
>
> THE COURT:  Your—
>
> MR. ZELLER:  Exactly.
>
> THE COURT:  Under the contract.
>
> MR. ZELLER:  Correct. . . . because there's doctrine that says short phrases and statements couldn't be copyright.[7]

MGA's effort to twist its own request for clarification into a concession by Mattel cannot be squared with the record.

## VI.   THE LIMITATIONS PERIOD IS EQUITABLY TOLLED FROM APRIL 2004, OR AT LEAST DECEMBER 2004, UNTIL NOVEMBER 2006

MGA does not even attempt to claim that it did not receive timely notice of Mattel's claim or that it was prejudiced by the delay in filing the claim. Dkt. 10179 at 33.  Nor could it, since MGA was clearly placed on notice as to the substance of Mattel's allegations and intervened to preserve its claim to Bratz.

Instead, faced with irrefutable evidence establishing the first two requirements for equitable tolling, MGA bases its opposition solely on the claim that Mattel's amended complaint demonstrates lack of good faith and reasonable conduct. Id. at 33.  Improperly equating bad faith with delay, MGA claims that "a finding of unjustified delay has

---

[7]   Id. at 79:19-80:1.

already been made." Dkt. 10179 at 20.  But the Court found the exact opposite to be true: "*Mattel has not delayed* in bringing its claims against the MGA parties . . . . the Court finds *no lack of diligence* by Mattel." Dkt. 4439 at 3-4 (emphasis added).  MGA claims the Court's consideration of delay in its January 2007 Order "destroys the equitable tolling argument" (Dkt. 10179 at 34), but the only conclusion the Court reached was that any delay was irrelevant because there was no prejudice. Dkt. 142 at 8.  When it was forced to definitively resolve the issue of delay in connection with MGA's laches defense, the Court sided with Mattel and explicitly found *no* delay.  Dkt. 4439 at 3-4.

The "principal goal of statutes of limitation [is] preventing the assertion of stale claims . . . ." Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1138 (9th Cir. 2001) (citation omitted)).  Accordingly, courts in California have "affirmed the 'general policy which favors relieving plaintiff from the bar of a limitations period when, possessing several legal remedies, he reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage.'" Id.  That is precisely what Mattel did here, focusing initially on the only wrongdoer of which it was aware—Carter Bryant. Once it knew that Bryant had not acted alone, Mattel properly amended its complaint after the stay was lifted to include misappropriation claims against MGA and Larian.

Because Mattel lacked actual knowledge of MGA's and Larian's complicity when it first sued, the cases on which MGA relies—Ervin v. Los Angeles County, 848 F.2d 1018 (9th Cir. 1988) and Wang & Wang, LLP v. Banco do Brasil, S.A., Case No. 06-CV-761, 2008 WL 5070133 (E.D. Cal. 2008)—are inapposite.  In Ervin, the plaintiff-appellant argued the statute of limitations for her federal civil rights action was equitably tolled by her previous filing of a tort claim action in state court. 848 F.2d at 1019.  The court rejected this argument because the plaintiff—unlike Mattel—was aware of all the relevant facts sufficient to file the federal claim at the time of her tort suit, and thus, had no justification for waiting. Id. at 1020.  As the Ninth Circuit stated, "the appellant had not only conducted an investigation of her own into the facts of this case, but had been in

possession of a copy of the results of the appellee's own investigation file as well for perhaps as much as a year and a half prior to her filing the instant action in federal district court." Id. That is exactly the opposite of Mattel's situation, where it did not learn of MGA's and Larian's wrongdoing until Bryant's deposition.

For similar reasons, the second case on which MGA relies is equally inapplicable. In Wang, the delay in amending the complaint was of the plaintiff's own making, and the rationale offered for the delay—reliance on an arbitration proceeding—was insufficient as a matter of law. In that case, Banco de Brasil initiated an arbitration proceeding to resolve a fee dispute between attorney Wang and client Banco. 2008 WL 5070133 at *1. After the arbitration was initiated, Wang filed a complaint in state court for breach of contract, fraud, and common counts against Rubens, Amaral, and Banco. Id. Wang then dropped Amaral as a defendant in the first and second amended complaints, while "continu[ing] to allege that Amaral made fraudulent representations . . . ." Id. Nonetheless, "more than two years after Wang dropped Amaral as a defendant, Wang filed its Third Amended Complaint . . . adding Amaral as a defendant." Id. Because Wang was previously aware of the allegations contained in his third amended complaint, the court found that he was not entitled to equitable tolling. See id. at * 2 (noting that "it is clear from the proceedings that Wang had sufficient knowledge of Amaral's purportedly fraudulent acts, such that Wang was able to file a complaint against Amaral . . . alleging Amaral's participation in a fraudulent scheme."). Mattel did not sue MGA and Larian in 2004, drop them, and then add them again without new evidence, as Wang did. Mattel's knowledge of MGA's and Larian's role in the scheme was the product of discovery: once the jurisdictional issues were resolved and the stay lifted, Mattel was able, including through Larian's deposition in July 2006, to develop the evidentiary basis for its claims against them.[8]

---

[8] Wang is inapplicable for a second reason as well. The purported basis for tolling the statute of limitations for the fraud claims in Wang—the California fee arbitration statute—was "limited in scope to fee disputes between attorneys and their clients," and
(footnote continued)

**VII.   THE COURT NEVER DECIDED WHETHER THE LIMITATIONS PERIOD WAS TOLLED DURING THE YEAR-LONG INTERLOCUTORY APPEAL**

Ignoring the authority cited by Mattel (Dkt. 10152 at 22), MGA argues that Judge Larson foreclosed tolling the statute of limitations for the 362 day stay of discovery during the interlocutory appeal.  Dkt. 10179 at 34.  Judge Larson did not rule on this tolling issue in his January 2007 Order.  While he stated the stay was not an obstacle to bringing Mattel's claims, he did not purport to resolve the tolling issue.  Dkt. 142 at 8.  When he revisited this issue a year later, Judge Larson definitely held—consistent with Howey and Hurn—that the mere six month delay after the stay was lifted was justified.  Dkt. 4439 at 4 ("The stay remained in place until after the Ninth Circuit affirmed the Court's denial of the motion to remand; it was lifted on May 16, 2006.  Six months later, on November 17, 2006, Mattel sought leave to file its claims against the MGA parties.  On this record, the Court finds *no lack of diligence* by Mattel.") (emphasis added).

The fact that Mattel was able to file *responsive pleadings in the 05-2727 case* on May 13 and September 19, 2005, in no way establishes that the stay was not an obstacle to Mattel asserting *affirmative claims in the 04-9059 case.*  The stay issued as a result of an interlocutory appeal addressing the district court's subject matter jurisdiction over the 04-9059 case – the case in which Mattel would later seek to amend its pleading.  "[T]he filing of a notice of interlocutory appeal divests the district court of jurisdiction over the particular issues involved in that appeal."  City of Los Angeles, Harbor Division v. Santa Monica Baykeeper, 254 F.3d 882, 886 (9th Cir. 2001).  The Court could not have granted a putative motion for leave to file new claims in the 04-9059 case during the stay because doing so would have altered the status quo by adding federal claims.  In re Cintas Corp. Overtime Pay Arbitration Litig., 2009 WL 1766595, at *3 (N.D. Cal. June 22, 2009) (district court agreed with party who "oppose[d] the motion on the ground that the pendency of the interlocutory appeal divests this Court of jurisdiction to hear the

---

thus could not provide a basis for equitable tolling of a fraud claim as a matter of law.
(footnote continued)

1  instant motion" because granting the motion "would alter, not preserve, the status quo.").

2  Mattel had no obligation to bring a motion for leave to amend that could not have been

3  granted during the period of the stay, and certainly had no obligation to risk violating the

4  Court's stay order by seeking leave to amend when the case was ordered stayed in its

5  entirety.  That Mattel filed an answer during the stay period  in the 05-2727 case – the

6  case in which the court's jurisdiction was undisputed – says nothing about its ability to

7  amend in the 04-9059 case during the stay.  In any case, courts have approved tolling

8  even when there is merely a discovery stay, let alone when there is a stay on the entire

9  case and when the Court's jurisdiction was disputed and on appeal.[9]  Mattel is entitled to

10  tolling during the period of the stay.

**Conclusion**

12       For all of the foregoing reasons, Mattel's misappropriation of Bratz trade secrets

13  claim is timely.

15  DATED:  March 22, 2011           QUINN EMANUEL URQUHART &
                                    SULLIVAN. LLP

17                                  By /s/ John B. Quinn
18                                    John B. Quinn
                                      Attorneys for Mattel, Inc., and Mattel de
19                                    Mexico. S.A. de C.V.

---

Id. at *3.  There is no similar limit in this case.

[9]   See Javier H. v. Garcia-Botello, 239 F.R.D. 342, 346-49 (W.D.N.Y. 2006) ("the statute of limitations was equitably tolled during the stay of discovery").  In Javier H., plaintiffs sought leave to file an amended complaint asserting a new claim for involuntary servitude against defendants, including against new defendants added to the amended complaint. Id. at 347, 349.  The court granted leave to amend the complaint as to the new claim, holding that the three year statute of limitations was equitably tolled during a nine month discovery stay.  Id.  The argument in favor of tolling is much stronger here where the entire case was stayed to permit an appeal going to whether the Court had jurisdiction in the first place.