ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: 415-773-5700
Facsimile: 415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: 213-629-2020
Facsimile: 213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br><br>Consolidated with Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**MGA PARTIES' OPPOSITION TO MATTEL'S MOTION FOR RECONSIDERATION STYLED AS A TRIAL BRIEF REGARDING TESTIMONY OF GLENN VILPPU**<br><br>Trial Date: January 18, 2011<br>Judge: Hon. David O. Carter |

# INTRODUCTION

Glen Vilppu is an expert in depicting the human form in two and three dimensions. His opinions will be offered to explain to the jury standard techniques in drawing the human form, standard rules for the depiction of the human form, the information necessary to translate the human form from two to three dimensions, which similarities between Carter Bryant's drawings and the first generation Bratz dolls are the product of standard elements, the important differences between the drawings and the sculpts/dolls, and to explain why Carter Bryant's drawings lacked sufficient information to depict a sculpt in three dimensions.

This Court previously denied Mattel's motion *in limine* seeking to exclude the testimony of Glenn Vilppu for sound reason. 1/25/11 Trial Tr. Vol. 3 at 23:6 ("Mattel's motion is therefore denied"). That order is nearly two months old. Now, on the eve of Mr. Vilppu's testimony, Mattel seeks to couch a motion for reconsideration as a "trial brief" (hereafter "Motion"). Mattel's Motion fails because it does not meet the criteria for reconsideration under Local Rule 7-18 and is otherwise meritless.

Mattel advances exactly the same arguments that this Court has already rejected, particularly that Mr. Vilppu should not be able to opine about differences. *Id*. Mr. Vilppu opines that any similarities derive only from unprotectable elements, consistent with the Ninth Circuit's opinion in this case. As this Court noted, "expert opinion about standard and unoriginal elements in the artistic field" is relevant and admissible. 1/25/11 Trial Tr. Vol. 3 at 22:22-23.

Despite what it now claims, Mattel did seek to put on evidence of similarities in its case, and Mr. Vilppu's testimony is proper rebuttal. Ms. McComb testified that the dolls were a "remarkable execution" of the drawings. The Court also repeatedly made clear throughout her testimony that Ms. McComb could offer opinions about the designs, the sculpts and the dolls. Mattel also cross examined Paula Garcia, Margaret Leahy and others to obtain evidence regarding similarities.

1  Mattel put in evidence that the Court held passed summary judgment muster for a
2  copyright infringement claim. Mr. Vilppu's testimony is directly responsive to all
3  of this evidence.
4        This is yet another tactic by Mattel to try to get in prejudicial,
5  irrelevant evidence. Mattel's real goal is to (again!) seek admission of the Hong
6  Kong litigation and the Keiser scans—for perhaps the tenth time. Mr. Vilppu's
7  opinions do not make this unreliable, irrelevant and prejudicial evidence
8  admissible.
9        Summarizing its earlier opinion as to Mr. Vilppu, the Court said "I can
10 do it in one sentence. He is testifying." 1/25/11 Trial Tr. Vol. 3 at 24:5-6. This
11 Order stands and should not be reconsidered.

12       **ARGUMENT**
13 **I.   RECONSIDERATION IS NOT WARRANTED.**
14       Having no basis on which to move for reconsideration of the Court's
15 prior ruling, Mattel files its motion in the guise of a "trial brief." Mattel, in fact,
16 seeks reconsideration. Reconsideration is only proper when the moving party
17 establishes at least one of the following three criteria under Local Rule 7-18:

18     (1) a "material difference in fact or law from that
19     presented to the Court before such decision that in the
    exercise of reasonable diligence could not have been
20     known to the party moving for reconsideration at the time
    of such decision";

21     (2) "the emergence of new material facts or a change of
22     law occurring after the time of such decision"; or

23     (3) "a manifest showing of a failure to consider material
    facts presented to the Court before such decision."

24 Local Rule 7-18. Failing to meet any of these criteria, Mattel ignores the issue of
25 reconsideration completely in its brief. In the two months since this Court's
26 January 25 order, there has been no material difference in fact or law, no emergence
27 of new material facts or change of law, and no manifest showing of a failure to
28 consider material facts. Mattel's Motion should fail for this reason alone.

## II. THIS COURT HELD THAT MR. VILPPU'S OPINION ABOUT DIFFERENCES IS CONSISTENT WITH THE NINTH CIRCUIT AND ADMISSIBLE.

Mattel rehashes its motion *in limine* argument that Mr. Vilppu's opinions about the lack of similarity in protectable elements between Mattel's claimed copyrighted works and the Bratz dolls is inadmissible. Motion at 4-9. This Court has already held that Mattel is incorrect in this regard, and Mattel does not and cannot offer a basis for reconsideration of this Order. 1/25/11 Trial Tr. Vol. 3 at 20:17-19 ("Mattel also I think *is incorrect* when it faults Vilppu's report for unduly emphasizing differences between Bryant's works and the Bratz dolls.") (emphasis added).[1] The Court offers two reasons for this finding.

First, Vilppu's failure "to find similarities between the protectable elements of Bryant's sketches in all but two of the subsequent generation of Bratz dolls" is the very same conclusion that the Court reached in its summary judgment order, which "renders Mattel's objection to Vilppu's analysis moot." 1/25/11 Trial Tr. Vol. 3 at 20:20-24.

Second, the Court correctly found Mattel's argument to exclude Vilppu's "basic conclusion that the works did not share any similarities in

---

[1] The law is clear that evidence of differences is relevant and admissible in connection with the infringement analysis. *Benay v. Warner Bros. Entertainment, Inc.*, 607 F.3d 620, 625 (9th Cir. 2010) ("a closer examination of the protectable elements, including plot, themes, dialogue, mood, setting, pace, characters, and sequence of events, exposes many more differences than similarities between Plaintiffs' Screenplay and Defendants' film."); 4 Nimmer on Copyright § 13.03[B][1] [a] ("The admission of evidence of differences as between plaintiff's and defendant's works is not ... improper. If the points of dissimilarity not only exceed the points of similarity, but indicate that the remaining points of similarity are, within the context of plaintiff's work, of minimal importance, either quantitatively or qualitatively, then no infringement results."); *Warner Bros., Inc. v. American Broad. Cos.*, 720 F.2d 231, 241 (2d Cir. 1983) ("Significant dissimilarities between two works of this sort inevitably lessen the similarity that would otherwise exist between the total perceptions of the two works."); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir. 1980) ("[N]umerous differences tend to undercut substantial similarity.").

1  protectable elements" is "contrary to the law of this case" because the "Ninth
2  Circuit expressly considered differences in fashions and hair styles relevant to a
3  filing of noninfringement for the vast majority of the subsequent generation Bratz
4  dolls." *Id*. at 20:25-21:19.

5  In this very case, the Ninth Circuit has set the standard: "Mattel will
6  have to show that the Bratz production sculpts are virtually identical to Bryant's
7  drawings or the preliminary sculpts, or that the Bratz dolls are substantially similar
8  to Bryant's drawings, in each case disregarding similarities in unprotectable ideas."
9  *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 .3d 904, 917 (9th Cir. 2010).  Both
10  the Ninth Circuit and this Court on summary judgment have considered what is
11  protectable and what is not.  For example, the Ninth Circuit found that "Mattel
12  can't claim a monopoly over fashion dolls with a bratty look or attitude, or dolls
13  sporting trendy clothing-these are all unprotectable ideas." *Id.* at 16.  Mr. Vilppu's
14  proffered opinion is consistent with the law of this case, and his expertise is highly
15  probative for the jury as it will help them to understand whether or not the
16  similarities claimed by Mattel are standard features in the art of drawing and
17  animation.

### III. MR. VILPPU IS REBUTTAL TO THE EVIDENCE OF PURPORTED SIMILARITIES THAT MATTEL HAS OFFERED.

20  Mattel claims that it was precluded from offering evidence concerning
21  similarities.  Motion at 4.  Nonsense.

22  First, Mattel put in the evidence of the drawings and dolls—evidence
23  of substantial similarity that the Court held was sufficient to survive a motion for
24  judgment as a matter of law.  Mattel called Paula Garcia to the stand, and a large
25  portion of the questioning was directed to questions concerning similarities between
26  the Bratz packaged products and Carter Bryant's sketches.  To give just a few
27  illustrations, Counsel for Mattel asked Ms. Garcia to compare Bratz packaging art
28  (TX 911-00004) with Bryant's pitchbook (TX 302), specifically inquiring into

similarities between the two.  1/25/11 Trial Tr. Vol. 1 at 83:3-90:2 (*e.g.* "Q: And the fourth from the right has similar facial expressions and -- and pose, both, what you represented to the public at Hong Kong and what Carter Bryant gave you on September 1, 2000? … A:  Yes.").  Counsel for Mattel then showed Ms. Garcia demonstratives that line up the faces of two sketches along with a Bratz doll (TX 23797-00001 through 23797-00004) and asked her to compare the faces. *Id*. at 93:19-101:8 (*e.g.* "Q:  So, if you'd notice on these three, they all have that little beauty mark under the left eye, correct? A: Yes, they do. Q: The hair is different, correct?  A: Yes.").   He then showed her demonstratives that line up two full body sketches alongside a Bratz doll (TX 23797-00016 through 23797-00019) and asked her to compare the fashions of those as well. *Id*. at 116:3-124:2 (*e.g.* "Q: Now, in those, they both have purple shoes?  A:  Yes, they do.  Q:  And they have the white pants with the designs on the bottom?  A:  Yes. …   Q:  And then, are the tops similar, these tube tops?  A:  They are similar.  There's differences, but they're similar.").

In addition to the comparisons, Mattel also questioned fact witnesses about the "unique characteristics of Bratz" in its case in chief.  For example, Mr. Larian testified as follows:

> Q:  Well, I'll -- I'll ask it a little bit differently, then.  If Mr. Bryant hadn't brought you the designs which he called Bratz, then you agree you would not have done -- produced a *doll with the oversized head, the oversized feet, you know, with the unique characteristics of Bratz*?
>
> A:  No, that's not correct.  We would not have done the dolls that have similarities to Mr. Bryant's drawings, but at that time and many years before that, there has been dolls, Bly, et cetera, I can name a number of them, Powerpuff Girls, I can go through a whole list, if you'd like, that had big head, big eyes, big lips, big shoes, big feet, so --
>
> […]
>
> A:  So I'm trying to be precise.  It's very possible we could have done a doll line and call it Bratz, but nothing that would have looked something like this, like the doll

- 5 -

1  samples that we have here.

2  2/9/11 Trial Tr. at 17:13-18:5.  Mattel also questioned Carter Bryant on this point:

3  "Q:  Now, it's your belief that your Bratz designs were unique?  A:  Yes."  1/28/11

4  Trial Tr. at 16:10-12.  Thus, not only has Mattel put on evidence of similarities, but

5  Mattel has also sought to elicit testimony about the purportedly "unique"

6  characteristics of Bratz.

7  Mattel's expert Heather McComb likewise compared Bryant's

8  drawings to the Bratz dolls, and ultimately concluded that they were a "remarkable

9  execution."  Indeed, the Court permitted such comparisons in holding that Ms.

10  McComb could testify about "the design, development from what she sees, and the

11  drawings."  3/10/11 Trial Tr. Vol. 2 at 123:19-20; *see also id*. at 109:15-16 ("She

12  may refer to the physical attributes of the dolls and development").  For example,

13  she testified that "the group drawing, that's where I see the DNA of Bratz… When

14  you get to the doll […] I see it's not just a doll, it's a girl.  It's Zoey [sic], and she

15  has a personality…"  *Id*. at 116:5-17.  She further testified that "I just look at the

16  product, and I see the drawings, and I can see the direct translation."  *Id*. at 124:11-

17  16.  When asked about "whether or not Mr. Bryant's drawings were used and were

18  the basis for the first generation Bratz dolls," Ms. McComb testified that "I think

19  it's a remarkable – going from 2D to 3D, I think it's – it's a really remarkable

20  execution."  *Id*. 128:4-10; *see also*, *id*. at 135:13-15 ("Q: Your opinion is ultimately

21  that MGA had a remarkable execution of the drawings, true?  A: Yes.").

22  While the Court repeatedly indicated that counsel could ask questions

23  of Ms. McComb about the "design, . . . relationship with drawings" and the

24  "process.  In other words, drawings, further design, to sculpt," (*id*. at 128:20-

25  129:2), it was Mattel's counsel who chose not to follow up with more detailed

26  questions comparing the drawings with the dolls.  Contrary to Mattel's argument,

27  nowhere in the record does the Court instruct that Mattel may not ask Ms. McComb

28  about specific comparisons between the drawings or sculpts.  Mattel's own failure

1  to elicit more detailed testimony from its witness is no basis for denying MGA's
2  opportunity to defend itself by eliciting proper opinions from Mr. Vilppu.

3        Ms. McComb was also permitted to testify as to her opinion of the
4  quality of Carter Bryant's drawings: "Q: Do you have an opinion as to the quality
5  of Carter Bryant's drawings? A: Yes . . . I think they are an excellent design
6  package. . . they have all the information you need." *Id*. at 115:6-12. There can be
7  no argument that Mr. Vilppu is well-qualified to speak to the quality of Mr.
8  Bryant's drawings, and indeed Mr. Vilppu has disclosed his intention to do so in his
9  report. Mattel offers no reason for excluding this directly relevant rebuttal
10 testimony.

11       Mr. Vilppu's expert opinion responds to comparisons just like those
12 Mattel elicited (or could have elicited) from witnesses such as Paula Garcia and
13 Heather McComb. His expert opinion also responds to Mattel's contention that
14 Bratz is unique. MGA is entitled to an opportunity to present this response.

15 **IV. MR. KEISER AND HONG KONG LITIGATION WERE PROPERLY EXCLUDED FOR REASONS THAT ARE INAPPOSITE HERE.**
16

17       The fact that Mattel was properly precluded from introducing
18 inadmissible evidence is not relevant to whether MGA should be precluded from
19 introducing proper expert testimony. Specifically, Mattel was precluded from
20 putting on evidence of foreign litigations and from its expert Frank Keiser for
21 reasons that have nothing to do with comparisons between Bratz dolls and
22 drawings, let alone Mr. Vilppu.

23     **A. <u>Foreign Litigation Involving Non-Bratz Dolls And Foreign Law Has No Bearing On Mr. Vilppu.</u>**
24

25       Mr. Quinn has argued for the admission of evidence from the Hong
26 Kong litigation more than a dozen times. The Court made a final ruling on this
27 issue after repeated and careful consideration, and lengthy and multiple arguments
28 by both sides. The accused products from the Hong Kong litigation are irrelevant

1   in this case, and unduly prejudicial.  Mr. Vilppu's testimony is nothing like what
2   Mattel sought to do with the Hong Kong litigation.  Mr. Vilppu does not seek to
3   compare a single non-Bratz doll to any Bratz-related drawing or doll, and Mattel's
4   suggestion otherwise is misplaced.   Indeed, Mattel misleadingly states that Mr.
5   Vilppu intends to compare certain foundational and other teaching materials from
6   his publications to the Bratz dolls.  Mr. Vilppu has no such intention and has not
7   indicated any such intention in his report or in any prior testimony.  He expects to
8   use his materials to illustrate fundamental principles in the illustration of the human
9   form.

10  True to course, Mattel takes the Court's statement about a "similarity
11  test" out of context.  Just prior to the passage cited by Mattel, the Court stated that
12  "We're not going to get into a similarity test between MGA's suit *with infringing*
13  *dolls*."  2/9/11 Trial Tr. Vol. 1 at 73:6-7.  Indeed, the Court specified that "foreign
14  litigation is not going to come in concerning similarity," and *not* that no evidence of
15  similarity can come in whatsoever.  *Id*. at 73:4-5.

16  Further, the foreign litigations were conducted under the laws of the
17  foreign jurisdictions, and not within the clearly defined parameters of what is
18  protectable and not protectable under U.S. Copyright Law and the law of this
19  particular case.  Dkt. # 9825 (MGA's Trial Brief in Opposition to The Admission of
20  Foreign Litigation); Dkt. # 9956 (MGA's Trial Brief In Opposition To Mattel,
21  Inc.'s Second Offer Of Proof Regarding Foreign Litigation).  Mattel's "tit-for-tat"
22  approach arguing that if Mr. Vilppu is permitted to offer his opinions, then Mattel
23  should be permitted to offer "evidence concerning the dolls over which MGA sued
24  for infringement in Hong Kong" (Motion at 8), must be rejected.

25  **B.     Mr. Vilppu Relies On The Actual Dolls, Not Flawed Scans Like Mr. Keiser.**
26  
27  Mattel's analogy to its proffered expert Mr. Frank Keiser is as flawed
28  as Mr. Keiser's scans.  With respect to Mr. Keiser, the Court rightly concluded that

1 allowing such distorted evidence to go to the jury would be highly prejudicial. Dkt.
2 # 9758 at 2. Mattel admitted that Mr. Keiser's comparisons "resiz[ed]" one sculpt"
3 (Dkt. # 10112 at 2) and "smoothed out" differences because the scans taken at "a
4 lower resolution may reflect slightly less detail overall" (*id.* at 3). The Court
5 correctly noted that the numerous differences readily apparent to the naked eye
6 simply disappeared in the Keiser scan comparisons—specifically, the Court noted
7 "the programs inability to consistently highlight the absence of similarities between
8 the sculpts otherwise obvious t the naked eye." Dkt. # 9758 at 1-2. *See* 1/27/11
9 Trial Tr. Vol. 4 at 63:18-64:2 (while the irises on the two real-life sculpts are
10 different, Mr. Keiser admits that "you cannot see it in this rendition," *i.e.* his
11 comparison); *id.* at 64:3-10 (his comparison fails to account for the fact that one
12 sculpt has eyebrows while the other does not); *id.* at 64:13-23 (while there is a
13 difference in the shape of the lips, Mr. Keiser's scan does not note a difference, "Q.
14 So sometimes your overlay picks up the changes and sometimes it doesn't, correct?
15 A. Correct…"). *See also,* Dkt. # 9756 (MGA Parties' Opposition to Mattel's Offer
16 of Proof Re: Testimony and Evidence of Frank Keiser); Dkt. # 10186 (MGA
17 Parties' Opposition to Mattel, Inc.'s Motion to Reconsider the Court's Ruling
18 Regarding MGA's Motion *in Limine* Regarding Frank Keiser). Moreover, the
19 Court correctly concluded that Mr. Keiser's methodology was flawed in that he was
20 unable to replicate his results when asked to do so in Court. Dkt. # 9758 at 1-2.
21      Mr. Keiser's misplaced reliance on scans that resize and smooth over
22 differences in the sculpts, and comparison methodologies that he cannot reliably
23 replicate, can be no basis for excluding Mr. Vilppu's opinions. Mr. Vilppu's
24 opinions are properly based on the *actual* Bratz dolls and drawings.

25 **CONCLUSION**
26      For the foregoing reasons, MGA respectfully submits that the Court
27 should deny Mattel's request that Mr. Vilppu be precluded from testifying.
28

| | |
|---|---|
| Dated: March 23, 2011 | Respectfully submitted, |
| | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| | By: */s/ Diana M. Rutowski* |
| | Diana M. Rutowski |
| | Attorneys for MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT HK, LTD., MGA de MEXICO, S.R.L. de C.V., and ISAAC LARIAN |

- 10 -  MGA'S OPPOSITION TO MATTEL'S TRIAL BRIEF REGARDING TESTIMONY OF GLENN VILPPU
CV-04-9049 SGL (RNBx)