QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc. and Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, et al.,<br><br>              Plaintiff,<br><br>      vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>              Defendant.<br><br>_____<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL'S OPPOSITION TO MGA PARTIES' MOTION FOR JUDGMENT AS A MATTER OF LAW RE CONVERSION AND SCULPT OWNERSHIP PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(a)**<br><br>Trial Date:   January 18, 2011 |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................. 1

I.    THE INVENTIONS AGREEMENT ASSIGNED THE CONVERTED
      ITEMS TO MATTEL ................................................................. 2

II.   MATTEL'S CONVERSION CLAIM IS NOT TIME-BARRED ................... 3

III.  MATTEL HAS PROFFERED SUFFICIENT EVIDENCE OF
      DAMAGES FROM MGA'S CONVERSION ...................................... 8

IV.   THE JURY SHOULD DETERMINE OWNERSHIP OF THE
      SCULPTS ............................................................................ 10

CONCLUSION ............................................................................... 11

1

## **TABLE OF AUTHORITIES**

2
**Page**

3
### **Cases**

4
AmerUS Life Ins. Co. v. Bank of Am., N.A.,
5      143 Cal. App. 4th 631 (2006)..................................................................... 3

6
Bennett v. Hibernia Bank,
       47 Cal. 2d 540 (1956)................................................................................. 4

7
In re Brocade Commc'ns Sys., Inc. Derivative Litig.,
8      615 F. Supp. 2d 1018 (N.D. Cal. 2009) ..................................................... 4

9
Deirmenjian v. Deutsche Bank, A.G.,
       526 F. Supp. 2d 1068 (C.D. Cal. 2007)...................................................... 3
10

11
E.W. French & Sons, Inc. v. General Portland Inc.,
       885 F.2d 1392 (9th Cir. 1989)..................................................................... 8
12
GHK Assocs. v. Mayer Group, Inc.,
       224 Cal. App. 3d 856 (1990)....................................................................... 9
13

14
Hangarter v. Provident Life and Accident Ins. Co.,
       373 F.3d 998 (9th Cir. 2004)....................................................................... 2
15
Hunt Foods, Inc. v. Phillips,
16     248 F.2d 23 (9th Cir. 1957)......................................................................... 9

17
Huong Que, Inc. v. Luu,
       150 Cal. App. 4th 400 (2007)...................................................................... 4
18

19
Jedson Eng'g, Inc. v. Spirit Const. Servs., Inc.,
       720 F. Supp. 2d 904 (S.D. Ohio 2010)....................................................... 2
20
LaLonde v. County of Riverside,
       204 F.3d 947 (9th Cir. 2000)....................................................................... 1
21

22
Marsu v. Walt Disney Co.,
       185 F.3d 932 (9th Cir. 1999)....................................................................... 9
23
Mattel, Inc. v. MGA Entertainment, Inc.,
24     616 F.3d 904 (9th Cir. 2010)................................................................... 2, 4

25
McGonigle v. Combs,
       968 F.2d 810 (9th Cir. 1992)....................................................................... 1
26
Pierce v. Multnomah County,
27     76 F.3d 1032 (9th Cir. 1996)................................................................... 1, 2

28

Regents of University of Cal. v. Superior Court,
    20 Cal. 4th 509 (1999)............................................................................... 8

Runge v. Lee,
    441 F.2d 579 (9th Cir. 1971)..................................................................... 8

State Farm Mut. Auto. Ins. Co. v. Dep't of Motor Vehicles,
    53 Cal. App. 4th 1076 (1997).................................................................. 10

Strasberg v. Odyssey Group, Inc.,
    51 Cal. App. 4th 906 (1996)....................................................................... 6

Universal Pictures Co. v. Harold Lloyd, Corp.,
    162 F.2d 354 (9th Cir. 1947)..................................................................... 9

Wade v. Markwell & Co.,
    118 Cal. App. 2d 410 (1953)..................................................................... 8

## **Statutes**

17 U.S.C. § 202 .................................................................................................. 2

Federal Rule of Civil Procedure 50(a).............................................................. 1

**Preliminary Statement**

Mattel has presented ample evidence for its conversion claim to reach the jury. The MGA Parties ("MGA") do not challenge Mattel's showing that MGA did, in fact, convert property from Mattel.  Instead, they rely on three technical arguments, none of which has merit.  MGA's attempt to divorce the intellectual property of Bryant's inventions from the "physical embodiments" of those inventions has no support in the language of the Inventions Agreement (and indeed simply ignores it), nor does it have support in the law.  MGA's statute of limitations argument ignores the discovery rule applies and Mattel's evidence of fraudulent concealment.  Finally, MGA's damages argument fails because Mattel has proffered evidence from which the jury could reasonably calculate the value of the property MGA converted, and Mattel is entitled to other remedies, such as the return of its property, even if the jury could not quantify damages (which it can).  MGA's motion should be denied.

**Argument**

Federal Rule of Civil Procedure 50(a) provides that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:  (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a).

Judgment as a matter of law "is proper only when the evidence permits only one reasonable conclusion as to the verdict." Pierce v. Multnomah County, 76 F.3d 1032, 1037 (9th Cir. 1996) (quoting McGonigle v. Combs, 968 F.2d 810, 816 (9th Cir.), cert. dismissed, 506 U.S. 948 (1992)).  "The evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." LaLonde v. County of Riverside, 204 F.3d 947, 959 (9th Cir. 2000) (reversing judgment as a matter of law).  "If conflicting inferences

1   may be drawn from the facts, the case must go to the jury." <u>Pierce</u>, 76 F.3d at 1037

2   (quoting <u>Rutherford v. City of Berkeley</u>, 780 F.2d 1444, 1448 (9th Cir. 1986)); <u>see</u>

3   <u>also</u> <u>Hangarter v. Provident Life and Accident Ins. Co.</u>, 373 F.3d 998, 1005 (9th Cir.

4   2004) ("Credibility determinations, the weighing of the evidence, and the drawing of

5   legitimate inferences from the facts are jury functions, not those of a judge.")

6   (quotation omitted).

## I.   THE INVENTIONS AGREEMENT ASSIGNED THE CONVERTED ITEMS TO MATTEL

9        MGA argues that even if the Inventions Agreement provides Mattel with

10  ownership of Bryant's "inventions," it does not provide Mattel with ownership of the

11  "physical embodiment of those inventions."  Mot. at 6.  That argument fails.  The

12  Ninth Circuit specifically held that the "drawings and sculpt clearly were 'inventions'

13  as that term is defined in Bryant's employment agreement with Mattel."  <u>Mattel, Inc.</u>

14  <u>v. MGA Entertainment, Inc.</u>, 616 F.3d 904, 911 (9th Cir. 2010).  The Ninth Circuit

15  did not carve out the "physical embodiment" of the drawings and sculpts from the

16  term "inventions" and did not say that only the intellectual property embodied by the

17  drawings and sculpts but not the physical works themselves were inventions.  It said

18  the "drawings and sculpt clearly were 'inventions,'" and indeed they clearly are.

19       Moreover, MGA cites no evidence that any party (let alone both parties)

20  interpreted the Inventions Agreement as divorcing the intellectual property in Mr.

21  Bryant's inventions from the embodiments of such intellectual property, nor is the

22  contract language susceptible of such a reading.  It is simply irrelevant that the

23  Copyright Act separates "ownership of a copyright" from "ownership of any material

24  object in which the work is embodied."  17 U.S.C. § 202.  The contract assigns to

25  Mattel "*all* my right, title and interest" in the covered inventions—not just the

26  copyrights and not just the rights to the material objects in which those copyrights are

27  embodied, but both.  TX 9924 (emphasis added); <u>see also</u> <u>Jedson Eng'g, Inc. v. Spirit</u>

28  <u>Const. Servs., Inc.</u>, 720 F. Supp. 2d 904, 917 (S.D. Ohio 2010) (contracts providing

-2-

00505.07975/4053198.1

for "all right, title and interest" in materials cover both title to materials and rights in intellectual property).   The Court should reject MGA's unsupported attempt to separate Bryant's copyrightable "inventions" from the "embodiment of" those inventions.

## II.   MATTEL'S CONVERSION CLAIM IS NOT TIME-BARRED

Mattel's conversion claim was timely under the discovery rule or the fraudulent concealment doctrine.   Without even addressing these doctrines, MGA simply assumes the statute of limitations for Mattel's conversion claim "begins running the moment the property is taken." Mot. at 5.   MGA's arguments fail.

First, MGA's own authority recognizes that the discovery rule applies to a conversion claim when the property is converted in violation of a duty owed to the victim.   See AmerUS Life Ins. Co. v. Bank of Am., N.A., 143 Cal. App. 4th 631, 639 (2006) ("To the extent our courts have recognized a 'discovery rule' exception to toll the statute, it has only been when the defendant in a conversion action fraudulently conceals the relevant facts *or* where the defendant fails to disclose such facts in violation of his or her fiduciary duty to the plaintiff.") (emphasis added) (internal citation and quotation omitted); see also Deirmenjian v. Deutsche Bank, A.G., 526 F. Supp. 2d 1068, 1075 n.32 (C.D. Cal. 2007) (recognizing that fraudulent concealment and breach of fiduciary duty are independent bases for applying the "'discovery rule' exception" to conversion claims).   As Mattel has shown at length previously, and as the trial record supports, Bryant owed a fiduciary duty to Mattel to protect Mattel's confidential information.   See TX 9924 ("CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST . . . ."); Jan. 28, 2011 Trial Tr., Vol. 1 (Bryant) at 85:25-86:1 ("Q.  And you betrayed the trust of Mattel, also? A. Yes."); February 1, 2011 Trial Tr., Vol. 2 (Bryant) at 81:20-24 (agreeing that "Mattel wants to keep its own trade secrets and proprietary information confidential" based on "the way security is set up"); see also Dkt. 9044 at 53-56 (Mattel's MSJ opening brief); Dkt. 9183 at 56-59 (Mattel's MSJ opposition brief); Dkt. 9600 at 75

(the Court:  "Any fiduciary obligations imposed by these agreements was an obligation not to disclose Mattel's confidential information.").   Even assuming Bryant owed no fiduciary duty to MGA, the discovery rule still applies based on his clear duty of loyalty, and his breach thereof.  See Mattel's Opp. to JMOL re Duty of Loyalty at 1-8; see also In re Brocade Commc'ns Sys., Inc. Derivative Litig., 615 F. Supp. 2d 1018, 1037-38 (N.D. Cal. 2009) (claim for breach of the duty of loyalty is "most akin to a breach of fiduciary duty claim"); Huong Que, Inc. v. Luu, 150 Cal. App. 4th 400, 414 (2007) ("The duty of loyalty embraces several subsidiary obligations, including the duty 'to refrain from competing with the principal and from taking action on behalf of or otherwise assisting the principal's competitors,' the duty 'not to acquire a material benefit from a third party in connection with . . . actions taken . . . through the agent's use of the agent's position,' and the duty 'not to use or communicate confidential information of the principal for the agent's own purposes or those of a third party.'") (internal citations omitted).  In fact, putting aside all his other obligations, Bryant had an unequivocal duty *to disclose to Mattel* the very works he converted.  As his Inventions Agreement required, "I agree to communicate to the Company as promptly and fully as practicable all inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company." TX 9924.  Bryant's breach of that duty is part of what prevented Mattel from filing suit earlier, and it justifies application of the discovery rule.

Moreover, the discovery rule applies even if MGA—which obtained the converted items from Bryant—did not owe a legal duty to Mattel.  See Bennett v. Hibernia Bank, 47 Cal. 2d 540, 562-63 (1956) (statute of limitations on conversion claim against third parties was subject to discovery rule because third parties took the property with knowledge the property was initially acquired in breach of duty owed to plaintiff).  As set forth more fully in Mattel's opposition to MGA's JMOL regarding the duty of loyalty, MGA obtained the Bratz drawings and sculpts from

Bryant with full knowledge of Bryant's duties to Mattel:

> Q. And during the pitch meeting with Mr. Larian on September 1st, 2000, you told him that you were employed by Mattel at the time, right?
>
> A. Yes.
>
> Q. You weren't hiding it?
>
> A. No.
>
> A. You told Victoria O'Connor—she asked you if you had any agreements with Mattel, right, at the same pitch meeting?
>
> A. I don't remember if she did or not.
>
> Q. Okay. Take a look at your deposition transcript of November 4th, 2004, page 96, lines 17 through 20.
>
> A. Okay.
>
> Q. So does that refresh your memory a bit?
>
> A. I don't remember, but I don't dispute the testimony.
>
> Q. And the prior testimony was that you thought Victoria O'Connor had asked you if you had any agreement with Mattel at that pitch meeting, right?
>
> A. Yes.
>
> Q. And you told her that you thought you had some kind of confidentiality agreement, but that was all you remembered; is that correct?
>
> A. Yes.

February 1, 2011 Trial Tr., Vol. 2 (Bryant) at 117:21-118:18.  Accordingly, the conversion claim is subject to the discovery rule, and clearly was timely filed when it was filed on April 27, 2004.  Indeed, it was not until late November 2003 that Mattel even saw for the first time *some* of the drawings that were converted.  March 1, 2011 Trial Tr., Vol. 2 (Eckert) at 46:20-47:18 (explaining that "[i]n the fall of the year 2003, sometime around Thanksgiving," he "saw the contract Mr. Bryant had with Mattel, and I saw Bratz drawings at that meeting.").  Other than the Bratz drawings disclosed at the Cityworld meeting on November 24, 2003, Mattel never even saw the other converted Bratz works until after this case was filed—making this a classic case in which application of the discovery rule is proper.

MGA also ignores fraudulent concealment in its JMOL. "Ordinarily the statute of limitations applying in conversion actions begins to run from the date of the conversion even though the injured person is ignorant of his rights. This rule, however, is not absolute; for example, where there has been a *fraudulent concealment of the facts* the statute of limitations does not commence to run until the aggrieved party discovers or ought to have discovered the existence of the cause of action for conversion." Strasberg v. Odyssey Group, Inc., 51 Cal. App. 4th 906, 916 (1996) (emphasis added) (internal citations omitted).  There is overwhelming evidence that MGA fraudulently concealed the facts underlying Mattel's conversion claim.  E.g., February 4, 2011 Trial Tr., Vol. 1 (O'Connor) at 97:12-23 (O'Connor testifies that Larian told her "we didn't want the public to know that Carter was the inventor of Bratz since he was a Mattel employee at the time"); February 11, 2011 Trial Tr., Vol. 1 (Larian) at 8:17-11:2 (TX 4941) (author of July 2003 Business Week article about Bratz requested confirmation that the following statement was "accurate": Larian "modeled Bratz after [his] own children, who wear midriff-baring shirts, low rise jeans, and baseball caps."  Larian admits that he "did not write back and respond that any of this is not accurate."); February 11, 2011 Trial Tr., Vol. 1 (Larian) at 11:19-23 (Larian responds "Yes" to the following question: "And you recall saying that [the July 18, 2003 Wall Street Journal article] was the first article in a newspaper or a magazine that identified Mr. Bryant as being associated with Bratz?"); February 16, 2011 Trial Tr., Vol. 2 (Larian) at 83:18-91:19 (TX 4507) (Larian writes that "[t]here must be no mention about Mattel or any of their properties, Carter, any MGA Bratz arts" after David Dees allegedly posts a letter on a Bratz fan website identifying Bryant as "creating the Bratz dolls"); February 3, 2011  Trial Tr., Vol. 3 (Bryant) at 40:10-42:24; February 3, 2011  Trial Tr., Vol. 1 (Bryant) at 139:15-142:3; February 4, 2011 Trial Tr., Vol. 2 (O'Connor) at 49:19-55:1 (TX 22482) (in response to David Dees' alleged post on a Bratz fan website identifying Bryant as "creating the Bratz dolls," Larian writes: "I think we need to call this person and nicely ask her to

voluntarily shut down her site because of legal liabilities for MGA"); February 16, 2011 Trial Tr. ,Vol. 2 (Larian) at 91:20-95:11 (TX 23511) (in response to David Dees' alleged post on a Bratz fan website identifying Bryant as "creating the Bratz dolls," Larian writes: "I need this taken (CARTER) out of all written material (internet, etc) NOW"); February 4, 2011 Trial Tr., Vol. 1 (O'Connor) at 90:3-93:14 (TX 15, TX 1309) ("[Larian] asked me to white-out the header that said Barbie Collectibles and fax it to Patty Glaser"); February 9, 2011 Trial Tr., Vol. 1 (Larian) at 94:24-100:25 (TX 1932) (When asked about a spreadsheet listing Bryant's employment dates at MGA as "????-Present" and at Mattel as "DON'T ASK," Larian responded "Yes" when asked whether "MGA would know the MGA dates"); February 9, 2011 Trial Tr., Vol. 1 (Larian) at 84:20-90:23, 92:2-93:19 (TX 4942) (Larian writes "Good ideas" in response to email stating, among other things, "I know we want to keep Carter under wraps"); February 4, 2011 Trial Tr., Vol. 2 (O'Connor) at 74:6-76:21 (TX 9165) (Larian writes in email "Destroy EVERY copy of that we have.  Who have you presented this to? . . . . YOU ARE GETTING US INTO LAW SUITS"); February 9, 2011 Trial Tr., Vol. 1 (Larian) at 101:1-104:11 (TX 11907) (Larian writes that Bratz was "Born September 2000"); February 4, 2011 Trial Tr., Vol. 1 (O'Connor) at 103:22-106:10; February 4, 2011 Trial Tr., Vol. 2 (O'Connor) at 55:2 -57:14; February 4, 2011 Trial Tr., Vol. 3 (O'Connor) at 15:20-16:12; February 9, 2011 Trial. Tr., Vol. 1 (Larian) at 104:12-117:12; February 9, 2011 Trial Tr., Vol. 1 (Larian) at 120:2-131:12; February 9, 2011 Trial Tr., Vol. 2 (Larian) at 6:5-11:17; February 16, 2011 Trial Tr., Vol. 2 (Larian) at 34:8-35:16, 40:16-42:19 (TX 7055) (Regarding Larian's "Born September 2000" comment, O'Connor writes: "don't you think we should say Bratz was born in October when a certain person was no longer with their company," and Larian responds: "good point"); February 16, 2011 Trial Tr., Vol. 1 (Larian) at 39:10-43:23 (TX 12842) (In response to the comment "I'm concerned you changed Bratz intro date to October 200[0], do you want to keep that or not," Larian responds: "October 2000 for legal

MATTEL'S OPPOSITION TO MGA PARTIES' MOTION FOR JUDGMENT AS A MATTER OF LAW RE CONVERSION

purposes"); January 25, 2011 Trial Tr., Vol. 1 (Garcia) at 47:19-54:3; February 4, 2011 Trial Tr., Vol. 1 (O'Connor) at 97:24-100:18; February 9, 2011 Trial Tr., Vol. 1 (Larian) at 81:10-84:19; February 4, 2011 Trial Tr., Vol. 1 (O'Connor) at 100:19-103:21; February 4, 2011 Trial Tr., Vol. 1 (O'Connor) at 101:8-103:4; February 4, 2011 Trial Tr. Vol. 2 (O'Connor) at 83:12-85:13; February 16, 2011 Trial Tr., Vol. 2 (Larian) at  91:20-95:11; February 4, 2011 Trial Tr., Vol. 2 (O'Connor) at 84:11-85:13; February 1, 2011 Trial Tr., Vol. 1 (Bryant) at 71:14-78:1, February 3, 2011 Trial Tr., Vol. 1 (Bryant) at 45:21-47:15 (Bryant agrees that he "committed perjury" to help MGA obtain claimed patent rights in Bratz).  This more than adequately supports fraudulent concealment and tolls the limitations period.  See Regents of University of Cal. v. Superior Court, 20 Cal. 4th 509, 533 (1999) ("[T]he defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations"); see also E.W. French & Sons, Inc. v. General Portland Inc., 885 F.2d 1392, 1400 (9th Cir. 1989) ("The question in reviewing this directed verdict is whether the alleged denials coupled with the alleged use of 'plain white envelopes' to mail pricing information to its competitors *permits only one reasonable conclusion*: that General Portland did not fraudulently conceal a conspiracy. We believe that a reasonable juror could conclude that this evidence sufficed to show that General Portland sought to fraudulently conceal the alleged conspiracy.") (emphasis added).

## III.    MATTEL HAS PROFFERED SUFFICIENT EVIDENCE OF DAMAGES FROM MGA'S CONVERSION

MGA challenges Mattel's showing of damages, arguing that Mattel cannot recover damages because it did not have an expert quantify them with specificity. However, evidence of damages from an unlawful conversion of property may be calculated based on circumstantial evidence, including "the extent of the use of the property and its condition."  Wade v. Markwell & Co., 118 Cal. App. 2d 410, 431 (1953).  Neither expert testimony nor a precise quantification of damages is required.  See Runge v. Lee, 441 F.2d 579, 582 (9th Cir. 1971) (lay testimony sufficient to

-8-

support award of damages); <u>Universal Pictures Co. v. Harold Lloyd, Corp.</u>, 162 F. 2d 354, 369 (9th Cir. 1947) ("it will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result be only approximate") (quotations omitted); <u>see also</u> <u>Hunt Foods, Inc. v. Phillips</u>, 248 F.2d 23, 33 (9th Cir. 1957) ("The California rule is that where it clearly appears that a party has suffered damage, a liberal rule should be applied in allowing a court or jury to determine the amount; and that given proof of damage, uncertainty as to the exact amount is no reason for denying all recovery."); <u>Marsu v. Walt Disney Co.</u>, 185 F.3d 932, 939 (9th Cir. 1999) ("'[T]he fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery.'") (<u>citing</u> <u>Cal. Lettuce Growers v. Union Sugar Co.</u>, 45 Cal. 2d 474, 487 (1955)); <u>GHK Assocs. v. Mayer Group, Inc.</u>, 224 Cal. App. 3d 856, 873-74 (1990) ("The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.").

Mattel has introduced sufficient evidence from which the jury could calculate the value of Bryant's drawings and sculpts.  MGA itself recognized the value of such property as artistic works when it first saw Bryant's drawings and prototype.  Paula Garcia thought the drawings "were incredible" when she first saw them.  TX 10001.  Victoria O'Connor "loved" the "prototype of the Bratz doll" that Bryant brought to the pitch meeting and "thought it was beautiful."  Feb. 4, 2011 Trial Tr., Vol. 1 at 50:14-25.  Ms. O'Connor testified that Ms. Garcia also "loved" the prototype and the drawings just as much as she did, "if not more."  <u>Id.</u> at 52:2-11.  Isaac Larian committed to spending "millions" to develop the Bratz brand based on his assessment of the converted property.  TX 16788; Feb. 4, 2011 Trial Tr., Vol. 1 at 60:2-25; Feb. 8, 2011 Trial Tr., Vol. 2 at 40:6-14; Feb. 9, 2011 Trial Tr., Vol. 3 at 24:12-25:6; <u>id.</u> at 43:21-25; <u>id.</u> at 46:5-10.  MGA offered Mr. Bryant a consulting contract to obtain the converted property.  TX 15.  Heather McComb testified that MGA used the converted

property to "translate" Bratz from two-dimensional to three-dimensional.  Mar. 10, 2011 Trial Tr., Vol. 4 at 7-16.  The jury can reasonably calculate the value of the converted property from this evidence showing MGA's own recognition of the artistic value of the converted property.  For example, it can decide that MGA's initial payment to Bryant under his Assignment Agreement represents a fair value of the works.  TX 15-2.  Indeed, MGA itself has admitted the point.  See Phase 1 Trial Tr. at 8236:23-8237:19 (MGA counsel in closing argument equating value of drawings to amount of value of Bryant contract with MGA).

In any case, even if it were valid (and it is not), MGA's argument does not entitle it to judgment on Mattel's claim.  In addition to recovering the value of the converted property, Mattel is entitled to the return of its converted property and a quieting of title.  See State Farm Mut. Auto. Ins. Co. v. Dep't of Motor Vehicles, 53 Cal. App. 4th 1076, 1081 (1997) ("The remedies for conversion include *specific recovery of the property, damages, and a quieting of title*.") (italics added).  Mattel is aware of no authority denying all available forms of relief for conversion merely because a showing purportedly cannot be made for one. Accordingly, regardless of the damages Mattel may recover, Mattel is entitled to have the jury determine MGA's liability for conversion so that Mattel can regain title to its property.

## IV.   THE JURY SHOULD DETERMINE OWNERSHIP OF THE SCULPTS

In its belated "supplemental" filing in support of its conversion Rule 50 motion, MGA cites evidence purporting to show that certain sculpts were allegedly "created" by Margaret Leahy.  MGA apparently contends this means Mattel does not own them.  Dkt. 10272 at 2.  Ownership of those sculpt works is, at a minimum, a disputed issue for the jury to decide.  Ample evidence shows the works were prepared by and at the direction of Carter Bryant while he was a Mattel employee.  Bryant testified that his role "was to try to make the final sculpt look as close as [he] could to [his] vision."  Feb. 3, 2011 Trial Tr., Vol. 2, at 29:17-19.  To accomplish that, Bryant

gave Ms. Leahy a sculpt drawing to guide the sculpting process (TX 5-89), and worked with Ms. Leahy on the sculpt with Ms. Leahy, giving his input throughout the process.  Feb. 1, 2011 Trial Tr., Vol. 1 (Bryant) at 17:2-7; Jan. 28, 2011 Trial Tr., Vol. 2 at 17:18-22, 21:13-15.  Ms. Leahy created the final Bratz sculpt "from [his] drawing."  Feb. 1, 2011 Trial Tr., Vol. 1 (Bryant) at 12:12-14; TX 5-89; Feb. 3, 2011 Trial Tr., Vol. 2 (Bryant) at 27:13-15, 29:5-12.  Ms. Leahy's notes confirm Bryant's direction of the sculpting process, and she testified that she incorporated Bryant's changes and comments.  See TX 1137-14; March 15, 2011 Trial Tr., Vol. 2 (Leahy) at 11:17-25, 13:7-9, 16:11-19.  Leahy herself gave a presentation on her sculpting practices, which focused on how to execute a design drawing.  Jan. 19, 2011 Trial Tr., Vol. 1 (Ross) at 12:10-14:22.  Under the Inventions Agreement, Mattel owns all works created by Bryant "alone or jointly by others."  TX 9924 ¶ 2(a). The jury clearly could reasonably conclude that Mattel owns these works.

At worst for Mattel, MGA is a "joint author" of those works.  If that were the case, Mattel would be entitled, at a minimum, to recover an equal share of MGA's profits generated from use of those works.  See Dkt. No. 10188 (Mattel's Supplemental Proposed Jury Instruction Re Joint Authorship).  Regardless, this is not an issue appropriate for resolution as a matter of law under Rule 50.  MGA's untimely argument should be rejected.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court deny MGA's motion for judgment as a matter of law on Mattel's conversion claim.

1

2    DATED:   March 25, 2011        QUINN EMANUEL URQUHART &
SULLIVAN. LLP

3

4                              By /s/ John B. Quinn

5                                John B. Quinn
Attorneys for Mattel, Inc., and Mattel de

6                                Mexico. S.A. de C.V.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00505.07975/4053198.1

MATTEL'S OPPOSITION TO MGA PARTIES' MOTION FOR JUDGMENT AS A MATTER OF LAW RE
CONVERSION