QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar 196417)
  michaelzeller@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc. and Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendants.<br><br>AND CONSOLIDATED ACTIONS | CASE CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case CV 04-09059<br>Case CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL'S TRIAL BRIEF RE:  MGA'S TRADE SECRET CLAIMS**<br><br>Date: TBD<br>Time: TBD<br>Courtroom: 9D<br><br>**Phase 2**<br>Pre-trial Conference:  January 4, 2011<br>Trial Date:  January 11, 2011 |

**Preliminary Statement**

On February 1, 2011, the Court ordered the parties to "prepare charts that clearly, and with the specificity required under California law, identify each of their claimed trade secrets on the vertical axis and all products and other items (like multimedia or documents) that, they allege, reflect the unauthorized use of one or more of those trade secrets on the horizontal axis."[1] The parties were also required to identify "every product or other item that allegedly reflect the use of one or more of their claimed trade secrets."[2] As MGA has itself insisted, the lists are to be treated as definitive. For example, when Mattel argued after the due date to amplify certain language in buckets one and two of its list,[3] MGA complained, and the Court would not permit it.

Nevertheless, on March 24, 2011, Isaac Larian testified to alleged "trade secrets" that differ markedly from the trade secrets identified in MGA's required February 4, 2011 trade secret disclosure. Mr. Larian identified for the first time new Mattel MY SCENE products that allegedly used MGA trade secrets. He also asserted previously-undisclosed MGA products were alleged trade secrets. Even for the products that actually were disclosed in MGA's February 4 pleading, Mr. Larian identified purportedly "copied" elements that differ from those identified in the February 4 pleading. Finally, MGA claimed through Mr. Larian's testimony that FOB cost and pricing information were trade secrets for the first time ever in this case.

Through Mr. Larian's testimony, MGA has raised–in violation of this Court's February 1 Order and literally with only days of trial remaining–entirely new trade secret misappropriation claims. This is improper and MGA should not be allowed to proceed on them.

---

[1] Docket No. 9761.
[2] Id.
[3] See Mattel's Notice of Amendment of Its Third Corrected Notice of Compliance With The Court's February 1. 2011 Order (Dkt. No. 10034).

## Background

Column A of MGA's February 4 disclosure sets forth (and is entitled) "MGA's Trade Secrets." The *only* alleged trade secrets identified in Column A are "[t]he appearance, operation, intended play pattern and plans to advertise on television" of 114 named products.[4] Importantly, FOB costs, price lists, and prices are not claimed to be trade secrets anywhere in the column identifying "MGA's Trade Secrets."

During his March 24 testimony, Mr. Larian identified eight alleged MGA trade secret products paired with eight Mattel products that he claimed made use of trade secret information related these products. These are:

- MGA's Alien Racers (TX 36707) vs. Mattel's ACCELERACERS (TX 36888)[5]
- Bratz Petz (TX 17593, TX 17589) vs. MY SCENE Pets (TX 36719, TX 36720, TX 36721)[6]
- Bratz Diamondz (TX 17527) vs. MY SCENE Bling Bling (TX 36742)[7]
- Bratz Flashback Fever (TX 36685) vs. MY SCENE Roller Girls (TX 36684)[8]
- Bratz Winterwonderland (TX 36704) vs. MY SCENE Chillin' Out (TX 35625)[9]
- Bratz Formal Funk Super Stylin Disco Runway (TX 36715) vs. My Scene Sound Lounge Night on the Town (36716)[10]
- Bratz Boyz Motorcycle Style (TX 36718) vs. MY SCENE Miami Getaway Vespa (TX 36717)[11]
- Bratz Girls Nite Out (TX 18741) vs. MY SCENE Day & Nite (TX 36742)[12]

---

[4] Column B identifies "Mattel Multimedia, Documents or Other Items That Reflect Unauthorized Use," and Column C identifies "Mattel Products That Reflect Unauthorized Use of MGA Trade Secret."
[5] March 24, 2011 Trial Tr., Vol. 2 at 124:10-125:20.
[6] Id. at 122:18-124:9.
[7] Id. at 127:8-129:1.
[8] Id. at 129:12-130:12.
[9] Id. at 117:5-118:15.
[10] Id. at 118:16-121:2.
[11] Id. at 121:3-122:16.

Two of the MGA and MY SCENE products that Larian identified—Bratz Flashback Fever and MY SCENE Roller Girls—appear nowhere in MGA's February 4 disclosure. MGA's allegations with respect to these products were raised for the first time during Mr. Larian's March 24 testimony.

MGA identified "MY SCENE Night on the Town" as a Mattel product supposedly reflecting unauthorized use of "Bratz Runway Formal Funk." But MGA's February 4 pleading did not list the MY SCENE "Sound Lounge" playset that Mr. Larian accused during his testimony. Instead, MGA's February 4 list accused only two dolls.[13] Nor do any of the elements MGA claimed Mattel copied from "Bratz Runway Formal Funk" have anything to do with the "Sound Lounge" playset theme that Mr. Larian testified supposedly used MGA trade secrets.[14]

MGA also asserted wholly new allegations regarding Bratz Diamondz and MY SCENE Bling Bling. Mr. Larian claimed in his testimony that the alleged trade secret was the use of a "real diamond."[15] But MGA's court-compelled trade secret disclosure never so stated. MGA instead only identified the trade secret elements to be "dense glitter print on fashions, fur stole jackets, glittery, small hand purses, jewelry for customer to wear."[16]

---

[12] Id. at 125:21-127:7.
[13] See MGA's Trade Secret Chart Filed Pursuant to the Court's February 1, 2011 Order, dated February 4, 2011 at 8.
[14] See id. (identifying allegedly copied elements as "dark, edgy dressy fashions with longer dresses; boy dolls included in each set."). MGA identified "My Scene The Sound Lounge Special Edition - Night on the Town" as allegedly copying "Dazzlin' Disco Café." See id. at 20.
[15] March 24, 2011 Trial Tr., Vol. 2 at 127:8-129:1.
[16] See MGA's Trade Secret Chart Filed Pursuant to the Court's February 1, 2011 Order, dated February 4, 2011 at 24.

## Argument

### I. MGA'S NEWLY MINTED TRADE SECRET CLAIMS SHOULD BE PRECLUDED

MGA's moving-target trade secret allegations—identifying new alleged trade secrets, accusing new products, and claiming new elements were misappropriated for the first time on March 24 with only days of trial remaining—flouts the Court's February 1 Order. As MGA itself has successfully argued to the Court, the parties are precluded from proffering any trade secret allegations not identified in the parties' trade secret charts.[17]  MGA must be held to that same requirement here.

In particular, for the first time during Mr. Larian's March 24 testimony, MGA identified "FOB cost,"[18] "price lists,"[19] and "pricing"[20] as allegedly "confidential" misappropriated information. MGA does not list any sort of pricing information as a trade secret in its Court-ordered February 4 disclosure. This failure to identify FOB costs or pricing as trade secrets was not inadvertent—MGA made a tactical decision to limit its trade secret claims to the "appearance, operation, intended play pattern and plans to advertise on television" of unreleased products and cannot now amend its allegations in the midst of trial. See Notice by MGA Entertainment, Inc. of Trade Secret Designation Pursuant to Cal. Code Civ. Proc. § 2019.210, dated August 24, 2010 at 1 ("The trade secrets at issue in this case relate to MGA's unreleased products. The trade secrets are as follows: The appearance, operation, intended play pattern and plans to advertise on television for the following unreleased MGA products …"). Indeed, MGA *never* identified "FOB costs" or pricing as trade secret in any discovery

---

[17] See Docket No. 9827 at 2 (arguing that "Mattel should be precluded from referring to the copying or taking of" any trade secrets allegedly not identified in Mattel's trade secret chart).
[18] March 24, 2011 Trial Tr., Vol. 2 at 108:21-109:10; 110:19-111:9.
[19] Id. at 41:6-13
[20] Id. at 113:5-24

responses prior to the close of discovery.[21]  And in describing the alleged trade secret elements of products at issue, MGA's 30(b)(6) witness pointed only to "the intended overall look, appearance, theme, play pattern, operation or advertising plan of any of its toys" as the complete list of trade secrets.[22]  MGA has had virtually unlimited opportunities to identify FOB cost or pricing as trade secrets throughout the course of discovery, but failed and declined to do so.

## II. "FOB COSTS" ARE NOT RELEVANT TO UNFAIR COMPETITION

Nor can use of any "confidential" pricing information be relevant to MGA's section 17200 unfair competition claim.  The Court has ruled that MGA cannot backdoor its trade secret claims as unfair competition claims.  In order to avoid discovery from its 30(b)(6) witness, MGA acknowledged on the record that MGA's unfair competition claim was not predicated upon the conduct of Mattel's market intelligence group.  As this Court has held, Mattel and the Court relied upon that admission in limiting the scope of Mattel's discovery.  See Docket No 9669 at 22. Recognizing that Mattel would suffer undue prejudice if MGA were allowed to

---

[21] MGA Entertainment, Inc.'s Corrected Responses to Mattel, Inc.'s First Set of Interrogatories (MGA Reply Counterclaims), dated September 24, 2010, at 5-6 ("The trade secrets at issue in MGA's counterclaims-in-reply relate to MGA's unreleased products.  The trade secrets are as follows: The appearance, operation, intended play pattern and plans to advertise on television for the following unreleased MGA products …"); MGA Entertainment, Inc.'s Supplemental Responses to Mattel, Inc.'s First Set of Interrogatories (MGA Reply Counterclaims), dated October 27, 2010, at 13 ("The trade secrets at issue in MGA's counterclaims-in-reply relate to MGA's unreleased products.  The trade secrets are as follows: The appearance, operation, intended play pattern and plans to advertise on television for the following unreleased MGA products …"); MGA Entertainment, Inc.'s Corrected Second Supplemental Response to Mattel, Inc.'s First Set of Interrogatories (MGA Reply Counterclaims), dated November 10, 2010, at 12 ("The trade secrets at issue in MGA's counterclaims-in-reply relate to MGA's unreleased products.  The trade secrets are as follows: The appearance, operation, intended play pattern and plans to advertise on television for the following unreleased MGA products …")

[22] E.g., Deposition of Dennis Jolicoeur, November 10, 2010 [MGA 30(b)(6) Dep. Vol. 29] at 7115:11-22 ("Q.  Please, tell us specifically what it is that MGA claims was its trade secrets with respect to Bratz Winter Wonderland as of the end of New York Toy Fair in 2003.  A.  Its trade secrets would include any transmittal of any kind, oral, visual, physical or otherwise, describing what would be or will be **the intended overall look, appearance, theme, play pattern, operation or advertising plan** of any of its toys, and that would be true of the Winter Wonderland toy.  Q.  Anything else?  A.  No.") (emphasis added).

1  predicate its unfair competition claim on the conduct of Mattel's market intelligence
2  group, the Court expressly precluded MGA from using the counterclaims-in-reply
3  allegations in support of its unfair competition claim. Id.

4      Any effort by MGA to dress up its toy fair allegations as unfair competition
5  claims at this late date fails under this Court's prior Orders for an independent reason.
6  The Court has already held that any unfair competition claim based on the alleged
7  misappropriation of confidential information is preempted by CUTSA. See Docket
8  No 9600 at 91 ("The counter-claim [based on Cal. Bus. & Prof. Code § 17200] is
9  superseded to the extent it is based upon the misappropriation of Mattel's
10 information."); see also K.C. Multimedia, Inc. v. Bank of America Technology &
11 Operations, Inc., 171 Cal. App. 4th 939, 962 (2009) ("As with the other causes of
12 action, appellant's statutory unfair competition claim rests squarely on its factual
13 allegations of trade secret misappropriation. As a legal basis for its unfair competition
14 claim, appellant asserts a violation of CUTSA. As a factual basis for its claim,
15 appellant alleges the same conduct that gives rise to trade secrets claim. That being
16 so, this claim is also preempted.") (citations omitted). The Court's ruling necessarily
17 bars any attempt by MGA to claim that the taking of pricing and other information
18 could support its unfair competition claim.

### Conclusion

20     MGA has offered newly minted trade secret misappropriation allegations for the
21 first time through Mr. Larian on March 24, 2011. This is in violation of the Court's
22 February 1, 2011 Order. Any reference to any alleged trade secrets not identified in
23 MGA's February 4 trade secret chart should be excluded, and the Court should give a
24 curative instruction regarding these improper references elicited during Mr. Larian's
25 testimony that such references do not and cannot form the basis for any of MGA's
26 claims in this litigation.

| | | |
|---|---|---|
| 1 | DATED: March 28, 2011 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |

By /s/ Michael T. Zeller
_____
Michael T. Zeller
Attorneys for Mattel, Inc. and Mattel de Mexico, S.A. de C.V.