1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3        HONORABLE DAVID O. CARTER, JUDGE PRESIDING

4                  - - - - - - -

5

6    MATTEL, INC., et al.,          )
                                     )
7             Plaintiffs,           )
                                     )
8         vs.                        ) No. CV 04-9049 DOC
                                     )    Day 40
9    MGA ENTERTAINMENT, INC., et al., )    Volume 1 of 2
                                     )
10                                    )
           Defendants.              )
11   _____)

12

13

14           REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                    Jury Trial

16               Santa Ana, California

17              Friday, March 25, 2011

18

19

20

21   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
22   United States District Court
     411 West 4th Street, Room 1-053
23   Santa Ana, California 92701
     (714) 558-8141
24

25   04cv9049 Mattel 2011-03-25 D40V1

Case 2:04-cv-09049-DOC-RNB   Document 10288   Filed 03/28/11   Page 2 of 160   Page ID #:312424
CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

2

1    **APPEARANCES OF COUNSEL:**

2

     FOR PLAINTIFF MATTEL, INC., ET AL.:
3
                 QUINN EMANUEL URQUHART OLIVER & HEDGES LLP
4                BY:  JOHN QUINN
                      WILLIAM PRICE
5                     MICHAEL T. ZELLER
                      Attorneys at Law
6                865 South Figueroa Street
                 10th Floor
7                Los Angeles, California 90017
                 (213) 443-3000
8

9

10

11   FOR DEFENDANT MGA ENTERTAINMENT, INC., ET AL:

12               ORRICK, HERRINGTON & SUTCLIFFE, LLP (Irvine)
                 BY:  THOMAS S. McCONVILLE
13                    Attorney at Law
                 4 Park Plaza
14               Suite 1600
                 Irvine, California 92614
15               (949) 567-6700

16               – AND –

17               ORRICK, HERRINGTON & SUTCLIFFE, LLP (SF)
                 BY:  ANNETTE L. HURST
18                    Attorney at Law
                 405 Howard Street
19               San Francisco, California 94105
                 (415)773-5700
20
                 – AND –
21
                 KELLER RACKAUCKAS
22               BY:  JENNIFER KELLER
                      Attorney at Law
23               18500 Von Karman Avenue
                 Suite 560
24               Irvine, California 92612
                 (949) 476-8700
25

CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

3

**APPEARANCES OF COUNSEL (Continued):**

1

2

3    FOR CARLOS GUSTAVO MACHADO GOMEZ:

4
           LAW OFFICES OF MARK E. OVERLAND
5          By:  MARK E. OVERLAND  (not present)
                Attorney at Law
6          100 Wilshire Boulevard
           Suite 950
7          Santa Monica, California 90401
           (310) 459-2830
8
           – AND –
9
           SCHEPER KIM & HARRIS LLP
10         BY:  ALEXANDER H. COTE
                Attorney at Law
11         601 West 5th Street
           12th Floor
12         Los Angeles, California 90071
           (213) 613-4660
13

14

15
     ALSO PRESENT:
16
           MGA ENTERTAINMENT, INC.
17         BY:  JEANINE PISONI
                Attorney at Law
18         16360 Roscoe Boulevard
           Suite 105
19         Van Nuys, California 91406

20
           ROBERT ECKERT, Mattel CEO
21
           ISAAC LARIAN, MGA CEO
22
           KEN KOTARSKI, Mattel Technical Operator
23
           MIKE STOVALL, MGA Technical Operator
24
           RACHEL JUAREZ, Quinn Emanuel Urquhart, Oliver &
25                     Hedges

CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

4

```
 1                       I N D E X

 2   WITNESSES              DIRECT  CROSS  REDIRECT  RECROSS

 3   LARIAN, Isaac

 4   By Ms. Hurst (resumed)      12

 5   By Mr. Price                         14

 6

 7                        EXHIBITS

 8   EXHIBIT NO.                IDENTIFICATION    IN EVIDENCE

 9    1939    E-mail forwarded to                    132
            Mr. Larian from Mr.
10          Malacrida on 12/16/2004

11    8931    E-mail from Mr. Larian                 132
            to Ms. Garcia
12
      9334    E-mail from Mr. Larian                 133
13          to Mr. Brower dated
            2/17/2004
14
      9344    New York U.S.                          106
15          Appointments for
            February 2000 New York
16          Toy Fair

17    9424    E-mail                                 137

18    9427    E-mail from Mr. Larian                 134
            to Ms. Saunders and
19          Mr. Brawer

20    9528    E-mail to Mr. Larian                   119
            dated 1/31/2005
21
      9539    E-mail from Ms. Koehler                113
22          to Mr. Larian dated
            2/3/2007
23
      9546    E-mail from Ms. Saunders               134
24          to Ms. Garcia dated
            2/7/2007
25
```

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

5

**EXHIBITS (Continued)**

| EXHIBIT NO. | IDENTIFICATION | IN EVIDENCE |
|---|---|---|
| 9854 | E-mail from Ms. Sternberg to Mr. Larian, February 2008 | 114 |
| 9875 | E-mail between Mr. Larian and Ms. Mote dated 4/30/2002 | 131 |
| 9879 | *Reuters* news article | 69 |
| 20803 | E-mail from Mr. Larian to Ms. Garcia dated 10/21/2005 | 67 |
| 22225 | E-mail dated 1/13/2000 re New York Toy Fair | 102 |
| 23702 | MGA release | 154 |
| 24335 | E-mail from Mr. Larian to Ms. Saunders | 19 |
| 24336 | E-mail to Ms. Launders dated 9/23/2004 | 21 |
| 24337 | E-mail chain | 24 |
| 24338 | Document from Mr. Hein to Ms. Chabot | 25 |
| 24339 | Document from Mr. Hein to Ms. Chabot | 26 |
| 24342 | Document from Ms. CHabot to Ms. Saunders | 29 |
| 24346 | E-mail from Mr. Chabot to Mr. Brawer, Ms. Saunders | 34 |
| 24347 | E-mail from Mr. Larian to Mr. Brawer | 35 |

| | **EXHIBITS (Continued)** | |
|---|---|---|
| **EXHIBIT NO.** | **IDENTIFICATION** | **IN EVIDENCE** |
| 24350 | E-mail from Ms. Chabot, "Kohl's Assessment Notes" | 37 |
| 24354 | E-mail from Ms. Quadrio to Mr. Brawer | 38 |
| 24357 | Document from Ms. Quadrio to Mr. Brawer dated 11/2/2005 | 43 |
| 24358 | Document from Mr. Larian to Ms. Quadrio and Mr. Brawer dated 11/22/2005 | 44 |
| 24580 | Document | 84 |
| 24603 | MGA sales invoice | 75 |
| 24671 | Report | 77 |
| 24719 | E-mail from Ms. Quadrio to Mr. Long | 50 |
| 24747 | October 2006 MGA daily ship report | 54 |
| 24748 | Document re MGA Germany | 109 |
| 26758 | Nuremberg Toy Fair, February 2005 document | 13 |

|       |    |                                                               |
|-------|----|---------------------------------------------------------------|
|       | 1  | **SANTA ANA, CALIFORNIA, FRIDAY, MARCH 25, 2011**             |
|       | 2  | **Day 40, Volume 1 of 2**                                     |
|       | 3  | (8:31 a.m.)                                                   |
| 08:24 | 4  | *(Outside the presence of the jury.)*                         |
| 08:31 | 5  | THE COURT: All right. We're on the record.                    |
| 08:31 | 6  | We're out of the presence of the jury and alternates.         |
| 08:31 | 7  | All counsel are present.                                      |
| 08:31 | 8  | And, Ms. Keller, yesterday you had made a request             |
| 08:31 | 9  | before we left court concerning what I'm going to refer to    |
| 08:31 | 10 | as 9484.                                                      |
| 08:31 | 11 | And your concern that you expressed was that the              |
| 08:31 | 12 | redacted portions left Mr. Villasenor with only one           |
| 08:31 | 13 | explanation in terms of being spoken to or talked to by       |
| 08:31 | 14 | Mr. Moore. And the jury doesn't know, because it's been       |
| 08:31 | 15 | redacted, Jon Corey.                                          |
| 08:32 | 16 | I heard your complaint to be and your concern that            |
| 08:32 | 17 | it left Mr. Villasenor looking like there was only one        |
| 08:32 | 18 | explanation for his appearance on the 15th floor.             |
| 08:32 | 19 | Why don't you restate your concern and why you're             |
| 08:32 | 20 | requesting the portions be redacted.                          |
| 08:32 | 21 | MS. KELLER: According to Mr. Villasenor's                     |
| 08:32 | 22 | deposition, he was called up to the 15th floor to talk to     |
| 08:32 | 23 | Mr. Moore and Mr. Corey. Um, according to him, he was         |
| 08:32 | 24 | called up there because of the MGA pending litigation. That   |
| 08:32 | 25 | was the reason. That's what he said in his deposition. And    |

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

8

| | | |
|---|---|---|
| 08:32 | 1 | he, after having his memory refreshed, said it again on the |
| 08:32 | 2 | stand.  But he was cross-examined kind of aggressively about |
| 08:32 | 3 | that, and it was made to sound as if he was called up there |
| 08:32 | 4 | to be told to quit doing improper things and not because of |
| 08:32 | 5 | any pending litigation. |
| 08:32 | 6 | And my concern is, from reading the redacted |
| 08:33 | 7 | letter, the obvious implication, to me anyway, is that |
| 08:33 | 8 | what's redacted is reference to the pending litigation, |
| 08:33 | 9 | because Mr. Corey's name is redacted and then the subject |
| 08:33 | 10 | matter is redacted. |
| 08:33 | 11 | And since Mr. Corey would have only been there |
| 08:33 | 12 | with respect to the pending litigation, it seemed obvious to |
| 08:33 | 13 | me -- I don't think it's obvious to the jurors, though -- |
| 08:33 | 14 | and I think Mr. Villasenor was made to sound like he was |
| 08:33 | 15 | lying about that. |
| 08:33 | 16 | THE COURT:  I don't recall Mr. Zeller ever |
| 08:33 | 17 | receiving the completely unredacted version, but I accept |
| 08:33 | 18 | your representation that it was given to the Court. |
| 08:33 | 19 | I looked last evening, but couldn't find it, so |
| 08:33 | 20 | I'm not questioning your integrity in any way.  But I don't |
| 08:33 | 21 | have it.  All I have is the redacted portion.  This is not |
| 08:33 | 22 | attorney-privilege.  This is ordered to be turned over to |
| 08:34 | 23 | Ms. Keller immediately. |
| 08:34 | 24 | MR. ZELLER:  I'm sorry.  You have seen the |
| 08:34 | 25 | unredacted version now? |

CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

9

| 08:34 | 1 | THE COURT: Now I've seen the unredacted version, |
| 08:34 | 2 | as of last evening. |
| 08:34 | 3 | MR. QUINN: The unredacted. |
| 08:34 | 4 | THE COURT: I had that delivered to me about |
| 08:34 | 5 | 7:00 o'clock, and I appreciate that. |
| 08:34 | 6 | MR. ZELLER: We have -- in fact, I apologize, |
| 08:34 | 7 | 'cause I thought you had it as of last night, because |
| 08:34 | 8 | Mr. Grant was here. |
| 08:34 | 9 | THE COURT: Let me be clear. |
| 08:34 | 10 | I don't have in my records, although I |
| 08:34 | 11 | represent -- I accept Mr. Zeller's representation that the |
| 08:34 | 12 | Court has the completely unredacted version of 9884. And |
| 08:34 | 13 | so, therefore, I'm not quibbling about that, and I don't |
| 08:34 | 14 | even care to check. |
| 08:34 | 15 | But I did receive the completely unredacted |
| 08:34 | 16 | version last evening about 7:00 o'clock. Going back through |
| 08:35 | 17 | the record, it's absolutely clear that Ms. Keller's correct; |
| 08:35 | 18 | this is not work product. It is not attorney-client |
| 08:35 | 19 | privilege. It's an order to be turned over to Ms. Keller |
| 08:35 | 20 | immediately. |
| 08:35 | 21 | So, Mr. Zeller. |
| 08:35 | 22 | MR. ZELLER: Yes, sir. |
| 08:35 | 23 | THE COURT: My copy. That will solve the problem. |
| 08:35 | 24 | The yellow underlining is mine. And, Ms. Keller, I believe |
| 08:35 | 25 | that your concerns will be borne out. |

08:35    1              Hand that to Ms. Keller, and then tell me if we

08:35    2    need Mr. Sal Villasenor back.

08:35    3              MR. ZELLER:  We may call him back after this is

08:35    4    unredacted, because, obviously, our view is it's quite

08:35    5    contrary to what it is Ms. Keller is asserting.

08:35    6              THE COURT:  And it may be helpful to Mattel, so

08:35    7    there may be a request for Mr. Villasenor's reappearance.

08:35    8    It cuts both ways, in other words, and takes the mystery out

08:35    9    of the concerns for both parties.  Nothing like the truth.

08:36   10              MR. ZELLER:  But we still hope that Jon Corey's

08:36   11    name will be kept out of this in terms of keeping outside

08:36   12    counsel out of it.

08:36   13              THE COURT:  We'll discuss it.  I would like to

08:36   14    make every effort to keep the law firms out so neither party

08:36   15    can attack opposing counsel and get them involved in a

08:36   16    lawsuit.

08:36   17              MS. KELLER:  Your Honor, I think we can see how

08:36   18    things go with Mr. Moore and Mr. Normile.  And then we'll

08:36   19    know if we need Mr. Villasenor back.

08:36   20              THE COURT:  Make certain he doesn't leave, though.

08:36   21    In other words, he's the one witness who may, in fact, be

08:36   22    coming back for both parties.

08:36   23              MS. KELLER:  And, Your Honor, frankly looking at

08:36   24    this, it doesn't appear that it's even privileged if -- what

08:36   25    it reads is --

08:36    1                THE COURT:  Well, Counsel, that's my concern.

08:36    2                MS. KELLER:  I mean, it never should have been

08:36    3    withheld or redacted because --

08:36    4                THE COURT:  Let's not get into the quibbling.  We

08:36    5    can get do that after.  Our complaint sessions for both

08:37    6    parties usually start about 5:00 or 6:00.

08:37    7                MS. KELLER:  Thank you, Your Honor.

08:37    8                THE COURT:  That way everybody can complain for an

08:37    9    hour.

08:37   10                MS. HURST:  Your Honor, there had been another

08:37   11    document that came up during Mr. Larian's direct.  I can put

08:37   12    it in on redirect, but we wanted to have at some point a

08:37   13    chance for the Court to look at it.

08:37   14                THE COURT:  I'll look at it, but right now let's

08:37   15    get the jury going.

08:37   16                They're volunteering their time.

08:38   17                 *(In the presence of the jury.)*

08:38   18                THE COURT:  All right.  Counsel are present.  The

08:38   19    alternates are present, the jury, all parties, the witness.

        20                **ISAAC LARIAN, MGA'S WITNESS, PREVIOUSLY SWORN,**

        21                             **RESUMED THE STAND**

08:38   22                THE COURT:  And this is Ms. Hurst, who had one

08:38   23    additional document before she concluded her direct

08:38   24    examination of Mr. Larian.

08:38   25                Counsel.

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

12

| | | |
|---|---|---|
| 08:38 | 1 | **DIRECT EXAMINATION** |
| 08:38 | 2 | BY MS. HURST: |
| 08:38 | 3 | Q.   Good morning, Mr. Larian. |
| 08:38 | 4 | A.   Good morning. |
| 08:38 | 5 | MS. HURST:  We lost our pointer. |
| 08:38 | 6 | THE COURT:  That's all right.  Time's running, |
| 08:38 | 7 | Counsel.  In the old days, we didn't have pointers. |
| 08:38 | 8 | BY MS. HURST: |
| 08:38 | 9 | Q.   Mr. Larian, would you please look at Exhibit 26755, |
| 08:38 | 10 | which is a document that we looked at and was admitted |
| 08:38 | 11 | yesterday. |
| 08:38 | 12 | *(Document displayed.)* |
| 08:39 | 13 | THE WITNESS:  Yes.  Go ahead.  I see it on the |
| 08:39 | 14 | screen. |
| 08:39 | 15 | BY MS. HURST: |
| 08:39 | 16 | Q.   Okay.  And also please look at Exhibit 26758. |
| 08:39 | 17 | *(Document provided to the witness.)* |
| 08:39 | 18 | BY MS. HURST: |
| 08:39 | 19 | Q.   Do you have 26758? |
| 08:39 | 20 | A.   Yes, I do. |
| 08:39 | 21 | Q.   And is that the Nuremberg Toy Fair, February 2005? |
| 08:39 | 22 | It's the -- and do you see references to MGA's products |
| 08:39 | 23 | there on page 7? |
| 08:39 | 24 | A.   I do. |
| 08:39 | 25 | Q.   And also on page 10? |

| | | |
|---|---|---|
| 08:40 | 1 | (Document displayed.) |
| 08:40 | 2 | THE WITNESS:  Yes, I do. |
| 08:40 | 3 | BY MS. HURST: |
| 08:40 | 4 | Q.   And also on page 12? |
| 08:40 | 5 | (Document displayed.) |
| 08:40 | 6 | THE WITNESS:  Yes. |
| 08:40 | 7 | BY MS. HURST: |
| 08:40 | 8 | Q.   And on -- 26755 and 26758, do they appear to be part of |
| 08:40 | 9 | the same Nuremberg Toy Fair, February 2005 competitive |
| 08:40 | 10 | review? |
| 08:40 | 11 | A.   Yes, they are. |
| 08:40 | 12 | MS. HURST:  Your Honor, I'd move to admit the |
| 08:40 | 13 | first page and those reference pages of Exhibit 26758. |
| 08:40 | 14 | THE COURT:  Received. |
| 08:40 | 15 | (Exhibit No. 26758 received in evidence.) |
| 08:40 | 16 | (Document displayed.) |
| 08:40 | 17 | BY MS. HURST: |
| 08:40 | 18 | Q.   And those are products that you identified in your |
| 08:40 | 19 | review of the toy fair reports that were unreleased to the |
| 08:40 | 20 | public at the time; is that right? |
| 08:40 | 21 | A.   That's correct. |
| 08:41 | 22 | MS. HURST:  No further questions. |
| 08:41 | 23 | THE COURT:  Thank you. |
| 08:41 | 24 | And this is Mr. Price on cross-examination on |
| 08:41 | 25 | behalf of Mattel. |

Case 2:04-cv-09049-DOC-RNB   Document 10288   Filed 03/28/11   Page 14 of 160   Page ID #:312436
CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

14

|       |    |                                                             |
|-------|----|-------------------------------------------------------------|
| 08:41 | 1  | **CROSS-EXAMINATION**                                       |
| 08:41 | 2  | BY MR. PRICE:                                               |
| 08:41 | 3  | Q.   Mr. Larian, you were shown a number of products, and I |
| 08:41 | 4  | guess the question was, what Mr. Hurst asked you, whether or |
| 08:41 | 5  | not those products were unreleased to the public.  Do you   |
| 08:41 | 6  | recall that question?                                       |
| 08:41 | 7  | A.   Yes.                                                   |
| 08:41 | 8  | Q.   So for all those products, can you tell us that those  |
| 08:41 | 9  | products were not part of an MGA press release at the time? |
| 08:41 | 10 | Can you tell us that?                                        |
| 08:41 | 11 | A.   I don't remember all 114 products.                     |
| 08:41 | 12 | Q.   Well, even the ones you were shown, can you tell us    |
| 08:41 | 13 | that those were not in an MGA press release at the time?    |
| 08:41 | 14 | A.   No, I can't.                                           |
| 08:41 | 15 | Q.   Can you tell us that those products were not part of an |
| 08:41 | 16 | article that came out at the time of toy fair?             |
| 08:41 | 17 | A.   No.                                                    |
| 08:41 | 18 | Q.   So all you can tell us is that those were products     |
| 08:41 | 19 | which were in MGA's showrooms at the time of the toy fair,  |
| 08:41 | 20 | correct?                                                    |
| 08:41 | 21 | A.   That's correct.                                        |
| 08:41 | 22 | Q.   Now, I wanted to ask you, you talked, toward the end of |
| 08:42 | 23 | yesterday, about Kohl's.  And I'd like to put up if I could |
| 08:42 | 24 | the demonstratives you were using, which is 3678 -- oh,     |
| 08:42 | 25 | 36738.                                                      |

15

| 08:42 | 1 | *(Document displayed.)* |
| 08:42 | 2 | THE WITNESS:  Yes. |
| 08:42 | 3 | BY MR. PRICE: |
| 08:42 | 4 | Q.   And you recall you were showing this to the jury.  And |
| 08:42 | 5 | you said that the change in your sales to Kohl's from 2004 |
| 08:42 | 6 | to 2005 was a complete surprise to you.  Do you recall that? |
| 08:42 | 7 | A.   Yes. |
| 08:42 | 8 | Q.   And you said that there were no business issues between |
| 08:42 | 9 | you and Kohl's, correct? |
| 08:42 | 10 | A.   Not that I recall any of 'em, right. |
| 08:42 | 11 | Q.   And before getting here -- up here to talk to the jury |
| 08:42 | 12 | about this, of course, you looked through all of the |
| 08:42 | 13 | correspondence between you and Kohl's to see if there were |
| 08:42 | 14 | any business issues that might explain what happened in |
| 08:42 | 15 | 2005, right? |
| 08:42 | 16 | A.   No, I did not. |
| 08:42 | 17 | Q.   Well, uh, do you remember, you -- you submitted a |
| 08:42 | 18 | declaration under penalty of perjury in this case?  I'll |
| 08:43 | 19 | have that shown to you, 23885.  And I particularly want to |
| 08:43 | 20 | call your attention to paragraph 4. |
| 08:43 | 21 | *(Document provided to the witness.)* |
| 08:43 | 22 | THE WITNESS:  I need to have a moment to read |
| 08:43 | 23 | that. |
| 08:43 | 24 | MR. PRICE:  I'll read it out loud while you're |
| 08:43 | 25 | reading, if that's permissible, Your Honor? |

CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

16

| | | |
|---|---|---|
| 08:43 | 1 | THE COURT:  Just a moment, Counsel. |
| 08:43 | 2 | MR. PRICE:  Your Honor, if I may read paragraph 4 |
| 08:43 | 3 | of Mr. Larian's declaration concerning Kohl's? |
| 08:44 | 4 | MS. HURST:  This is not inconsistent. |
| 08:44 | 5 | THE COURT:  Well, I don't have that paragraph in |
| 08:44 | 6 | front of me. |
| 08:44 | 7 | MR. PRICE:  It's not inconsistent.  I want to make |
| 08:44 | 8 | sure this is what he's saying. |
| 08:44 | 9 | THE WITNESS:  If -- I'd like to have a moment to |
| 08:44 | 10 | read this, Your Honor. |
| 08:44 | 11 | THE COURT:  Certainly. |
| 08:44 | 12 | MR. QUINN:  Your Honor, time. |
| 08:44 | 13 | MS. HURST:  Your Honor, the way to make sure what |
| 08:44 | 14 | he's saying is to ask him what he's saying.  There's no |
| 08:44 | 15 | reason for the declaration. |
| 08:44 | 16 | MR. PRICE:  It's in writing. |
| 08:44 | 17 | THE COURT:  Just ask the question. |
| 08:44 | 18 | BY MR. PRICE: |
| 08:44 | 19 | Q.   Is it true that you've previously given a sworn |
| 08:44 | 20 | declaration; that you said, at the time of the change -- the |
| 08:44 | 21 | drop from 2004 to 2005 and 2006, "it was completely |
| 08:44 | 22 | mystifying to MGA and was not based upon any change in |
| 08:44 | 23 | ordinary business conditions that we could ascertain." |
| 08:44 | 24 | Do you recall saying that under oath? |
| 08:44 | 25 | A.   I need a moment to read that, sir. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

17

| | | |
|---|---|---|
| 08:44 | 1 | Q.   That's page 3, and it's paragraph 4. |
| 08:44 | 2 | A.   I'm sorry.  I don't see that on page 3.  There's no |
| 08:44 | 3 | paragraph 4 on page 3. |
| 08:45 | 4 | Q.   You're right.  Look at page 00002, paragraph 4. |
| 08:45 | 5 | A.   Yes.  Go ahead. |
| 08:45 | 6 | Q.   So that's what you said under oath in your declaration, |
| 08:45 | 7 | correct? |
| 08:45 | 8 | MS. HURST:  Your Honor, object.  Argumentative. |
| 08:45 | 9 | THE COURT:  Overruled. |
| 08:45 | 10 | MS. HURST:  And also the declaration's irrelevant. |
| 08:45 | 11 | THE COURT:  Overruled. |
| 08:45 | 12 | BY MR. PRICE: |
| 08:45 | 13 | Q.   Correct? |
| 08:45 | 14 | A.   Yes. |
| 08:45 | 15 | Q.   So when you signed the declaration, was this one of |
| 08:45 | 16 | those that you signed without reading, or did you actually |
| 08:45 | 17 | read it ahead of time? |
| 08:45 | 18 | MS. HURST:  Objection.  Argumentative. |
| 08:45 | 19 | THE COURT:  Overruled. |
| 08:45 | 20 | THE WITNESS:  This is October 2010.  I don't |
| 08:45 | 21 | recall if I did or not. |
| 08:45 | 22 | BY MR. PRICE: |
| 08:45 | 23 | Q.   Well, certainly coming here and telling the jury that |
| 08:45 | 24 | there were no business reasons, no issues between you and |
| 08:45 | 25 | Kohl's, that this was a complete surprise, before saying |

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

18

08:45   1   that, you'd want to make sure you knew the facts, right?

08:45   2   A.   I know it was a surprise.

08:45   3   Q.   But you'd want to look at the communications between

08:45   4   you and Kohl's to make sure you knew the facts, right?

08:45   5   A.   I did not look at any communications.

08:45   6   Q.   So you didn't want to know what the facts actually were

08:46   7   when you told the jury that there was no business issues

08:46   8   between you and Kohl's?

08:46   9              MS. HURST:  Objection.  Argumentative.

08:46   10             THE COURT:  Overruled.

08:46   11             THE WITNESS:  That's not correct.

08:46   12  BY MR. PRICE:

08:46   13  Q.   Well, if you'd look at Exhibit 24335, dated August 29,

08:46   14  2004.

08:46   15  A.   I don't have that.

08:46   16  Q.   And while Ms. Juarez is doing that, you see in 2004

08:46   17  there were sales to Kohl's by MGA of over $5 million, right?

08:46   18  A.   That's correct.

08:46   19  Q.   But you realize that your relationship with the

08:46   20  retailer, uh, sort of depends upon whether or not they're

08:46   21  making money, not whether or not you're making money, right?

08:46   22  A.   I'm sure.  I don't think I understand your question.

08:46   23  Q.   Well, the question is, how was Kohl's doing in 2004

08:46   24  with your products, not how you were doing, right?  They

08:46   25  only want to buy from you if they're making money on your

DEBBIE GALE, U.S. COURT REPORTER

08:46   1   products, right?

08:46   2   A.    It's their prerogative what to buy or what not to buy.

08:46   3   Q.    But you understand sometimes retailers come to you and

08:46   4   say, "Look, we're not making money on your product.  Can you

08:47   5   give us some breaks?  Can you give us discounts?  Can you

08:47   6   help us out here?"

08:47   7   A.    Sometimes they do.

08:47   8   Q.    If you look at 24335 -- and this is with an MGA Bates

08:47   9   number -- you see this is an e-mail.  At the top, it has

08:47  10   "Isaac Larian to Lisa Saunders."

08:47  11         Do you see that?

08:47  12   A.    Yes.

08:47  13              MR. PRICE:  Move Exhibit 24335 into evidence,

08:47  14   Your Honor.

08:47  15              THE COURT:  Received.

08:47  16         (Exhibit No. 24335 received in evidence.)

08:47  17          (Document displayed.)

08:47  18   BY MR. PRICE:

08:47  19   Q.    And you see this is August 29, 2004?

08:47  20   A.    Yes.

08:47  21   Q.    And Lisa Saunders is who?

08:47  22   A.    She is our salesperson for Kmart.

08:47  23   Q.    And if you look down at the bottom e-mail, there's an

08:47  24   e-mail from, uh, Mike Hein.  Do you remember who Mike Hein

08:47  25   is?

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

20

| | | |
|---|---|---|
| 08:47 | 1 | A.   I don't. |
| 08:47 | 2 | Q.   Is Mike Hein with Northern Group, who represented MGA |
| 08:47 | 3 | in connection with Kohl's? |
| 08:47 | 4 | A.   I don't remember Mark (*sic*) Hein or Northern Group. |
| 08:47 | 5 | Q.   Uh, so you don't remember who your representative was |
| 08:47 | 6 | that dealt directly with the Kohl's buyers? |
| 08:47 | 7 | A.   I don't. |
| 08:47 | 8 | Q.   So if you look at the e-mail, at the bottom, from |
| 08:47 | 9 | Mr. Hein to Ms. Saunders, and you see toward bottom, I guess |
| 08:48 | 10 | it's about six lines up, it says, "The bottom line is |
| 08:48 | 11 | they're looking for approximately 60,000 at cost, the number |
| 08:48 | 12 | on the far right-hand column.  In my conversation with him, |
| 08:48 | 13 | he feels it's critical to do this right now to free up space |
| 08:48 | 14 | for more new items in his store.  He's not flowing enough |
| 08:48 | 15 | Fall planogram items because the old stock is tying up OTB," |
| 08:48 | 16 | and he says, "Can we help Kohl's?" |
| 08:48 | 17 | Do you see that? |
| 08:48 | 18 | A.   Yes. |
| 08:48 | 19 | Q.   And you see Ms. Saunders to you, "Kohl's is requesting |
| 08:48 | 20 | markdown dollars for Fall '03 items that are not selling. |
| 08:48 | 21 | Please see attached list for your review along with Mike's |
| 08:48 | 22 | note." |
| 08:48 | 23 | And then your response, "We do not mark down Bratz." |
| 08:48 | 24 | Do you see that? |
| 08:48 | 25 | A.   I do. |

| 08:48 | 1 | Q.   And at this time you were doing pretty well on your |
| 08:48 | 2 | sale of Bratz, so you were pretty confident that you could |
| 08:49 | 3 | impose terms on -- on retailers like Kohl's, right? |
| 08:49 | 4 | A.   That's not correct. |
| 08:49 | 5 | Q.   Well, let's look at, uh, Exhibit 24336. |
| 08:49 | 6 | *(Document provided to the witness.)* |
| 08:49 | 7 | BY MR. PRICE: |
| 08:49 | 8 | Q.   This is Bates-stamped MGA.  You see that's an e-mail, |
| 08:49 | 9 | and you're at the top of it, to Lisa Saunders, dated |
| 08:49 | 10 | September 23, 2004. |
| 08:49 | 11 |      Do you see that? |
| 08:49 | 12 | A.   I'm sorry? |
| 08:49 | 13 | Q.   You see it's from you to Lisa Saunders at the top, |
| 08:49 | 14 | dated September 23, 2004? |
| 08:49 | 15 | A.   Yes. |
| 08:49 | 16 |      MR. PRICE:  Move 24336 into evidence, Your Honor. |
| 08:49 | 17 |      THE COURT:  Received. |
| 08:49 | 18 | *(Exhibit No. 24336 received in evidence.)* |
| 08:49 | 19 | *(Document displayed.)* |
| 08:49 | 20 | BY MR. PRICE: |
| 08:49 | 21 | Q.   And you see in the bottom it's another e-mail from |
| 08:49 | 22 | Mr. Hein to Ms. Saunders.  Subject:  Kohl's Markdown |
| 08:49 | 23 | Request. |
| 08:49 | 24 |      And it says, "I've attached two copies of the MGA |
| 08:50 | 25 | markdown spreadsheet for Kohl's as each sheet has room for |

| 08:50 | 1 | five items.  They're asking for approximately 59,000 in |
| 08:50 | 2 | markdown help in total for both sheets."  And then it goes |
| 08:50 | 3 | on to say that Kohl's is taking permanent markdown at |
| 08:50 | 4 | 40 percent off." |
| 08:50 | 5 | Do you see that? |
| 08:50 | 6 | THE WITNESS:  I do. |
| 08:50 | 7 | BY MR. PRICE: |
| 08:50 | 8 | Q.   And it goes on to say, "He said previously he would |
| 08:50 | 9 | place a domestic order dollar-for-dollar to offset any |
| 08:50 | 10 | markdown contributions." |
| 08:50 | 11 | Do you see that? |
| 08:50 | 12 | A.   I do. |
| 08:50 | 13 | Q.   So he's saying he'll purchase from you |
| 08:50 | 14 | dollar-for-dollar if you help him with this.  You see that? |
| 08:50 | 15 | A.   He's not telling me, but that's what it says, yes. |
| 08:50 | 16 | Q.   That's what -- Mr. Hein is telling you that -- is |
| 08:50 | 17 | telling Ms. Saunders that? |
| 08:50 | 18 | A.   Yes. |
| 08:50 | 19 | Q.   And Ms. Saunders, in the middle e-mail, forwards this |
| 08:50 | 20 | to you and says, "Please see attached markdown from Kohl's |
| 08:50 | 21 | on some serious overstocks on Fall 2003 merchandise.  Can we |
| 08:50 | 22 | help out financially?  They will match dollar-to-dollar in |
| 08:50 | 23 | new orders on whatever we give them for markdown moneys." |
| 08:50 | 24 | Do you see that? |
| 08:51 | 25 | A.   I do. |

| | | |
|---|---|---|
| 08:51 | 1 | Q.   So there was a business issue in 2004 between you and |
| 08:51 | 2 | Kohl's, correct? |
| 08:51 | 3 | A.   There was not a business issue.  They were asking for |
| 08:51 | 4 | markdown for Bratz, and we would not mark down Bratz because |
| 08:51 | 5 | we did not want to dilute the brand. |
| 08:51 | 6 | Q.   And then your answer is, "We can't."  Do you see that? |
| 08:51 | 7 | A.   Exactly. |
| 08:51 | 8 | Q.   You don't see that as a business issue when they're |
| 08:51 | 9 | asking for help because they can't sell your product? |
| 08:51 | 10 | A.   No. |
| 08:51 | 11 | Q.   Okay.  When you testified yesterday to the jury that |
| 08:51 | 12 | there were no business issues, that this was a complete |
| 08:51 | 13 | surprise, did you recall this issue with Kohl's, where they |
| 08:51 | 14 | were having trouble selling your product and asking you for |
| 08:51 | 15 | help?  Did you recall that at the time you testified |
| 08:51 | 16 | yesterday? |
| 08:51 | 17 | A.   No.  And asking for $60,000 markdown over $6 million |
| 08:51 | 18 | sales, it's not a big business issue. |
| 08:51 | 19 | Q.   Well -- |
| 08:51 | 20 | A.   It's less than one percent. |
| 08:51 | 21 | Q.   Well, let's look at 24337.  This is an MGA-produced |
| 08:51 | 22 | document. |
| 08:52 | 23 | A.   Right. |
| 08:52 | 24 | Q.   And Lisa Saunders is the sales person who's dealing |
| 08:52 | 25 | with Kohl's, correct? |

| 08:52 | 1 | A.   I don't know if she was or not. |
| 08:52 | 2 | Q.   Well, we've just seen a few e-mails where Ms. Saunders |
| 08:52 | 3 | is dealing with you about Kohl's, right? |
| 08:52 | 4 | A.   We have. |
| 08:52 | 5 | Q.   And, uh, Holly Chabot was also an MGA representative, |
| 08:52 | 6 | an employee, correct? |
| 08:52 | 7 | A.   I do not recall Holly Chabot. |
| 08:52 | 8 | MR. PRICE:   Your Honor, we move 24337 into |
| 08:52 | 9 | evidence. |
| 08:52 | 10 | THE COURT:   Received. |
| 08:52 | 11 | (Exhibit No. 24337 received in evidence.) |
| 08:52 | 12 | (Document displayed.) |
| 08:52 | 13 | BY MR. PRICE: |
| 08:52 | 14 | Q.   And you see this is October.  Attachment:  Kohl's order |
| 08:52 | 15 | cancellation, and there's an e-mail at the bottom from |
| 08:52 | 16 | Ms. Sturney, and it's to you, "Hi, Isaac and Ron.  Attached |
| 08:52 | 17 | please find the Kohl's cancellations for today." |
| 08:52 | 18 | A.   Yes. |
| 08:52 | 19 | Q.   And then if you look at 24338, this is November 19, |
| 08:53 | 20 | 2004. |
| 08:53 | 21 | A.   Yes. |
| 08:53 | 22 | Q.   And this is MGA Bates stamp -- and you see it's from |
| 08:53 | 23 | Mike Hein of the Northern Group.  You see it says at the |
| 08:53 | 24 | bottom "to Holly Chabot," correct? |
| 08:53 | 25 | A.   Yes. |

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

25

| | | |
|---|---|---|
| 08:53 | 1 | MR. PRICE:  Your Honor, move 24338 into evidence. |
| 08:53 | 2 | THE COURT:  Received. |
| 08:53 | 3 | *(Exhibit No. 24338 received in evidence.)* |
| 08:53 | 4 | *(Document displayed.)* |
| 08:53 | 5 | BY MR. PRICE: |
| 08:53 | 6 | Q.   And the e-mail from Mr. Hein to Holly Chabot says, "Hi, |
| 08:53 | 7 | Holly, when we spoke last week regarding Kohl's extremely |
| 08:53 | 8 | slow sales of Bratz, you mentioned that MGA would prefer to |
| 08:53 | 9 | help with ADV dollars versus markdown dollars." |
| 08:53 | 10 | Do you see that? |
| 08:53 | 11 | A.   I do. |
| 08:53 | 12 | Q.   And if you'd look at the last paragraph, it says, |
| 08:53 | 13 | "Their current trend is to miss their sales for Bratz by |
| 08:53 | 14 | 70 percent.  As you can see, they are wrapping up their |
| 08:53 | 15 | promotions for Bratz, which should positively impact sales, |
| 08:53 | 16 | but it's a major hit to their margin, which totals $372,000. |
| 08:53 | 17 | They're looking for support from MGA to offset this |
| 08:54 | 18 | shortfall, so please let me know how we can help." |
| 08:54 | 19 | Do you see that? |
| 08:54 | 20 | A.   I do. |
| 08:54 | 21 | Q.   So now we're up to 372,000 and a 70 percent -- missing |
| 08:54 | 22 | their sales plan for Bratz by 70 percent.  Is this now a |
| 08:54 | 23 | business issue? |
| 08:54 | 24 | A.   It's not. |
| 08:54 | 25 | Q.   And margin -- by the way, we're talking about profit |

| | | |
|---|---|---|
| 08:54 | 1 | when we're talking about margin, right? |
| 08:54 | 2 | A.    Retailer profit. |
| 08:54 | 3 | Q.    And you have to be concerned whether your retailers are |
| 08:54 | 4 | making money off of selling your product, right? |
| 08:54 | 5 | A.    What do you mean by that? |
| 08:54 | 6 | Q.    That is, retailers aren't gonna buy your product to |
| 08:54 | 7 | sell unless they are gonna make money selling your product, |
| 08:54 | 8 | right? |
| 08:54 | 9 | A.    We hope they make profit when they sell our product. |
| 08:54 | 10 | Q.    So you're concerned when they're not making money on |
| 08:54 | 11 | your product, right? |
| 08:54 | 12 | A.    No. |
| 08:54 | 13 | Q.    Well, that perhaps could explain why you might have |
| 08:54 | 14 | problems with retailers, couldn't it? -- if you don't care |
| 08:54 | 15 | at all whether they're making money on your product. |
| 08:54 | 16 | A.    No. |
| 08:54 | 17 | Q.    Let's look at 24339.  You see that's an MGA-produced |
| 08:54 | 18 | document from Mike Hein, again, to Holly Chabot, copying |
| 08:55 | 19 | Lisa Saunders, correct? |
| 08:55 | 20 | A.    On the copy it is, yes. |
| 08:55 | 21 |        MR. PRICE:  We offer 24339 into evidence. |
| 08:55 | 22 |        THE COURT:  Received. |
| 08:55 | 23 |        *(Exhibit No. 24339 received in evidence.)* |
| 08:55 | 24 |         *(Document displayed.)* |
| | 25 | |

CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

27

| 08:55 | 1 | BY MR. PRICE: |
| 08:55 | 2 | Q.   And if you look at the second page there, there's an |
| 08:55 | 3 | e-mail from Ann (*sic*) Anker to Mike Hein of the Northern |
| 08:55 | 4 | Group, and it says in the first full paragraph on that page, |
| 08:55 | 5 | "A few take aways.  MGA has become a big player for us this |
| 08:55 | 6 | year with cost receipts of over 5 million, up over |
| 08:55 | 7 | 250 percent."  That is, Kohl's was paying you over |
| 08:55 | 8 | 5 million, right? |
| 08:55 | 9 | A.   Not paying us.  They're buying over 5 million. |
| 08:55 | 10 | Q.   "We have supported MGA with an entire tower and with |
| 08:55 | 11 | representation on three other out-of-department programs. |
| 08:55 | 12 | This shortfall in margin is sizeable and simply cannot be |
| 08:55 | 13 | covered without sizeable assistance from MGA." |
| 08:56 | 14 | And you knew that at the time, correct? |
| 08:56 | 15 | A.   I did not.  I don't recall it.  I don't recall it. |
| 08:56 | 16 | Q.   Well, look at the first page. |
| 08:56 | 17 | A.   Yes. |
| 08:56 | 18 | Q.   And the bottom -- toward the bottom, it's the last line |
| 08:56 | 19 | on that page and it transitions over that "I simply cannot |
| 08:56 | 20 | carry an additional 2 to 2.5 million in the spring on this |
| 08:56 | 21 | category." |
| 08:56 | 22 | A.   Yes. |
| 08:56 | 23 | Q.   And when you say "shortfall," you understand they're |
| 08:56 | 24 | talking about a shortfall in Kohl's making profit -- a |
| 08:56 | 25 | shortfall in profit, correct? |

DEBBIE GALE, U.S. COURT REPORTER

| 08:56 | 1 | A.   I don't know what he meant.  I'm not -- I have no idea |
| 08:56 | 2 | what he meant in this.  I'm not on this e-mail. |
| 08:56 | 3 | Q.   Well, this is something that wouldn't have been called |
| 08:56 | 4 | to your attention, that one of your retailers is having a |
| 08:56 | 5 | serious problem making profits on your -- on the 5 million |
| 08:56 | 6 | of units you're selling them? |
| 08:57 | 7 | A.   Not necessarily. |
| 08:57 | 8 | Q.   Okay.  Let's look at the top part of the e-mail from |
| 08:57 | 9 | Mr. Hein of the Northern Group.  "Late yesterday I received |
| 08:57 | 10 | the attached e-mail from Alan Anker, the merchandise planner |
| 08:57 | 11 | for toys at Kohl's.  The attachment details their forecasted |
| 08:57 | 12 | sales, markdowns, and year-end financial results for MGA. |
| 08:57 | 13 | It's pretty bleak." |
| 08:57 | 14 |      Do you see that? |
| 08:57 | 15 | A.   I do. |
| 08:57 | 16 | Q.   Okay.  Now, we're talking about a business issue |
| 08:57 | 17 | between you and your retailer, right? |
| 08:57 | 18 | A.   No. |
| 08:57 | 19 | Q.   And then it goes on down to say in this -- I think it's |
| 08:57 | 20 | the fourth line from the bottom, "This obviously will affect |
| 08:57 | 21 | our business in 2005, but to what extent will depend on what |
| 08:57 | 22 | we can do to help this situation.  The buyer's anxious to |
| 08:57 | 23 | find out the status on the advertising help that we |
| 08:57 | 24 | discussed." |
| 08:57 | 25 |      Do you see that? |

| | | |
|---|---|---|
| 08:57 | 1 | A.   I do. |
| 08:57 | 2 | Q.   Now, if you'll go into December 2004 and look at 24342. |
| 08:58 | 3 | And that's from Ms. Chabot to Lisa Saunders.  Do you see |
| 08:58 | 4 | that? |
| 08:58 | 5 | A.   I need a moment to read this. |
| 08:58 | 6 | Q.   I'm asking you to see who it's to and from.  Do you see |
| 08:58 | 7 | that? |
| 08:58 | 8 | A.   From -- I'm sorry? |
| 08:58 | 9 | Q.   From Holly Chabot to Lisa Saunders.  24342. |
| 08:58 | 10 | A.   On the top there is a name from Holly Chabot to Lisa |
| 08:58 | 11 | Saunders.  And that's not -- I don't see that -- yes, that's |
| 08:58 | 12 | okay. |
| 08:58 | 13 | MR. PRICE:  Your Honor, I'd move 24342 into |
| 08:58 | 14 | evidence. |
| 08:58 | 15 | THE COURT:  Received. |
| 08:58 | 16 | *(Exhibit No. 24342 received in evidence.)* |
| 08:58 | 17 | *(Document displayed.)* |
| 08:58 | 18 | BY MR. PRICE: |
| 08:58 | 19 | Q.   Let's go to the bottom e-mail of 24342, and that's from |
| 08:58 | 20 | Mike Hein of the Northern Group to Holly Chabot about Kohl's |
| 08:58 | 21 | e-mail.  Do you see that? |
| 08:58 | 22 | A.   I'm sorry, I got to read.  I need a moment to read this |
| 08:58 | 23 | if you're gonna ask me questions on this.  I really need a |
| 08:59 | 24 | moment to read this if you're gonna ask me questions about |
| 08:59 | 25 | it. |

| 08:59 | 1 | Q.   I'm directing you to certain parts to see whether |
| 08:59 | 2 | you're aware of these facts. |
| 08:59 | 3 | THE WITNESS:  Your Honor, in order for me to get a |
| 08:59 | 4 | context, if he's gonna ask me questions, I ask if I can have |
| 08:59 | 5 | a moment to read this e-mail. |
| 08:59 | 6 | MR. PRICE:  Your Honor, if the time stops. |
| 08:59 | 7 | THE COURT:  Is the time stopping? |
| 08:59 | 8 | MR. PRICE:  If the time stops, that's fine, if he |
| 08:59 | 9 | wants to take the time. |
| 08:59 | 10 | THE COURT:  Time's stopped. |
| 08:59 | 11 | MR. PRICE:  Thank you. |
| 08:59 | 12 | MS. HURST:  Can I have the time back for my |
| 08:59 | 13 | financials yesterday? |
| 08:59 | 14 | THE COURT:  We'll spend between 5:00 and 6:00 |
| 08:59 | 15 | between both of you sorting out the time.  It will all work |
| 08:59 | 16 | out. |
| 08:59 | 17 | MR. PRICE:  Mr. Larian was cooperating during |
| 08:59 | 18 | that. |
| 08:59 | 19 | THE COURT:  All right.  Both of you.  Thank you |
| 08:59 | 20 | very much.  Now let's stop.  We'll strike both counsels' |
| 08:59 | 21 | comments about the financials and Mr. Larian. |
| 08:59 | 22 | Ladies and gentlemen, you're to disregard their |
| 08:59 | 23 | comments.  They're feeling frisky this morning.  They got |
| 08:59 | 24 | some sleep last night. |
| 09:00 | 25 | THE WITNESS:  Go ahead. |

| | | |
|---|---|---|
| 09:00 | 1 | THE COURT:  All right.  Time is starting. |
| 09:00 | 2 | MR. PRICE:  Thank you. |
| 09:00 | 3 | BY MR. PRICE: |
| 09:00 | 4 | Q.   Now, if you'd look at the bottom of the page, this is |
| 09:00 | 5 | an e-mail that says -- you see, it says, "Hi, Holly.  Here's |
| 09:00 | 6 | the e-mail that Ron requested."  Do you see that? |
| 09:00 | 7 | A.   Yes. |
| 09:00 | 8 | Q.   And that's referring to Ron Brawer, correct? |
| 09:00 | 9 | A.   Yes, I believe so. |
| 09:00 | 10 | Q.   And he, in 2004, was your executive vice president for |
| 09:00 | 11 | sales? |
| 09:00 | 12 | A.   He was. |
| 09:00 | 13 | Q.   And if you look at the second paragraph from the |
| 09:01 | 14 | bottom, and it's the fourth line down, begins with "The |
| 09:01 | 15 | sell-through has been very disappointing with October, |
| 09:01 | 16 | November, and early December sales running 50 to 70 percent |
| 09:01 | 17 | behind weekly sales plans.  In addition, several of our |
| 09:01 | 18 | Bratz accessories and game tins have performed poorly, which |
| 09:01 | 19 | compounded the problem."  Do you see that? |
| 09:01 | 20 | A.   I do. |
| 09:01 | 21 | Q.   And the October, November, December sales time's a very |
| 09:01 | 22 | important sales time for companies, retailers, correct? |
| 09:01 | 23 | A.   Yes. |
| 09:01 | 24 | Q.   And then if you look at the last paragraph, it says, |
| 09:01 | 25 | "Currently -- see attached vendor analysis.  Based on their |

09:01   1   sales, '08's levels, and markdowns planned.  They estimate

09:01   2   that the margin for MGA will be minus 10.6 percent for the

09:01   3   Fall season.  The estimated shortfall in gross margin

09:02   4   dollars is 1.87 million.  Since MGA is now his third largest

09:02   5   vendor, the buyer can't offset that hit to his margin

09:02   6   internally.  He said the impact greatly affects his total

09:02   7   toy department margin and affects the entire children's

09:02   8   division margin significantly."

09:02   9         Do you see that?

09:02   10   A.   I do.

09:02   11   Q.   And in the next paragraph, "I asked him to be specific,

09:02   12   and he said he would need $1 million to accomplish that."

09:02   13         Do you see that?

09:02   14   A.   I do.

09:02   15   Q.   And in the next paragraph, it says, "There are some

09:02   16   points that need to be made.  The buyer stated in our

09:02   17   meeting last Thursday that if he gets the kind of help he

09:02   18   needs, that he will go forward with MGA in 2005 as a key

09:02   19   vendor."

09:02   20         Do you see that?

09:02   21   A.   I do.

09:02   22   Q.   Okay.  So now we've -- this is now a business issue,

09:02   23   isn't it?  They need help and they're going to go forward

09:03   24   only if you help them, correct?

09:03   25   A.   That's what he's saying.

| | | |
|---|---|---|
| 09:03 | 1 | Q.   That's -- |
| 09:03 | 2 | A.   But I don't see the word "business issue" in there. |
| 09:03 | 3 | Q.   Okay.  Uh, if we look at the last paragraph there, "The |
| 09:03 | 4 | buyer made it clear that he needs the help he has requested |
| 09:03 | 5 | to get the margin up to 12 percent so he can proceed with |
| 09:03 | 6 | MGA in 2005." |
| 09:03 | 7 | Do you see that? |
| 09:03 | 8 | A.   I do. |
| 09:03 | 9 | Q.   And he says, "They are currently preparing orders for |
| 09:03 | 10 | the 47 new stores opening in March/April, and they're |
| 09:03 | 11 | awaiting our decision before placing the orders.  Kohl's |
| 09:03 | 12 | does business with a very limited list of toy vendors |
| 09:03 | 13 | because their departments are so small, and we've become a |
| 09:03 | 14 | key vendor in a very short time period.  Our decision on |
| 09:03 | 15 | this request from Kohl's is very important to the future of |
| 09:03 | 16 | our relationship." |
| 09:03 | 17 | Do you see that? |
| 09:03 | 18 | A.   I do. |
| 09:03 | 19 | Q.   Your relationship with Kohl's was a business |
| 09:03 | 20 | relationship, right? |
| 09:04 | 21 | A.   It was. |
| 09:04 | 22 | Q.   And this is a business issue? |
| 09:04 | 23 | A.   That's what the buyer is saying. |
| 09:04 | 24 | Q.   Uh, well, when you told the jury yesterday that you |
| 09:04 | 25 | were completely surprised, there were no issues with you and |

| | | |
|---|---|---|
| 09:04 | 1 | Kohl's, did you recall this business issue? |
| 09:04 | 2 | A.   I told the jury that I was not aware of a business |
| 09:04 | 3 | issue.  And people asking for markdown is every day, and |
| 09:04 | 4 | that's not a business issue.  They ask markdown from MGA or |
| 09:04 | 5 | from Mattel or from Hasbro.  And you just don't give them |
| 09:04 | 6 | markdown to dilute your brand. |
| 09:05 | 7 | Q.   If you'd look at Exhibit 24346.  See this is an e-mail |
| 09:05 | 8 | to Ron Brawer, Lisa Saunders, from Holly Chabot.  Do you see |
| 09:05 | 9 | that? |
| 09:05 | 10 | A.   On the top, yes. |
| 09:05 | 11 | MR. PRICE:  Move in 24346. |
| 09:05 | 12 | THE COURT:  Received. |
| 09:05 | 13 | *(Exhibit No. 24346 received in evidence.)* |
| 09:05 | 14 | *(Document displayed.)* |
| 09:05 | 15 | BY MR. PRICE: |
| 09:05 | 16 | Q.   You see it says on the top, "Ron, he is currently |
| 09:05 | 17 | selling the dolls at 40 percent below," paren, "so |
| 09:05 | 18 | approximately 1999.  They are moving slowly.  On average of |
| 09:05 | 19 | 3 percent a week before last week."  Do you see that? |
| 09:05 | 20 | A.   I do. |
| 09:05 | 21 | Q.   And that's in December -- that's like a week before |
| 09:05 | 22 | Christmas, right? |
| 09:05 | 23 | A.   Yes. |
| 09:05 | 24 | Q.   Okay.  Now, certainly you understood that Kohl's |
| 09:05 | 25 | thought this was a big issue? |

| | | |
|---|---|---|
| 09:05 | 1 | A.    The buyer wanted markdown money. |
| 09:05 | 2 | Q.    Let's look at Exhibit 24347.  You see this is an e-mail |
| 09:06 | 3 | from you to Ron Brawer at the top? |
| 09:06 | 4 | A.    Wait.  Wait.  I don't see anything yet. |
| 09:06 | 5 | Q.    Okay. |
| 09:06 | 6 | A.    Just wait. |
| 09:06 | 7 | *(Document provided to the witness.)* |
| 09:06 | 8 | BY MR. PRICE: |
| 09:06 | 9 | Q.    Now you see 24347? |
| 09:06 | 10 | A.    Yes. |
| 09:06 | 11 | Q.    An e-mail from you to Ron Brawer, correct? |
| 09:06 | 12 | A.    I do. |
| 09:06 | 13 | MR. PRICE:  Move 24347. |
| 09:06 | 14 | THE COURT:  Received. |
| 09:06 | 15 | *(Exhibit No. 24347 received in evidence.)* |
| 09:06 | 16 | *(Document displayed.)* |
| 09:06 | 17 | BY MR. PRICE: |
| 09:06 | 18 | Q.    And you see it begins with an e-mail from Mr. Brawer to |
| 09:06 | 19 | you, dated December 17, 2004.  You see that? |
| 09:06 | 20 | A.    Yes. |
| 09:06 | 21 | Q.    And it says, "1, Kohl's is a very good retailer for |
| 09:06 | 22 | toys, one of the few growing; 2, the fashion packs should |
| 09:06 | 23 | not have been in the selection; 3, if we get him to a |
| 09:06 | 24 | 10 percent margin on MGA, it would cost us about 550,000 |
| 09:06 | 25 | over plan." |

CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

36

| | | |
|---|---|---|
| 09:06 | 1 | And then Mr. Brawer's recommendation, "We give him the |
| 09:06 | 2 | 500,000 if he promises in writing to grow MGA's business by |
| 09:07 | 3 | 500,000 next year," paren, "or about 5.7 million, flat with |
| 09:07 | 4 | this year when you include store growth." |
| 09:07 | 5 | Do you see that? |
| 09:07 | 6 | A.   I do. |
| 09:07 | 7 | Q.   And your response is at the top.  "They cherry-pick our |
| 09:07 | 8 | line." |
| 09:07 | 9 | A.   Yes. |
| 09:07 | 10 | Q.   "Get him to buy out casino line and CE line, and we |
| 09:07 | 11 | will give -- let him take 550,000 at 10 percent of 2005 |
| 09:07 | 12 | purchases.  Example, buy 5.5 million to get it." |
| 09:07 | 13 | Do you see that? |
| 09:07 | 14 | A.   I do. |
| 09:07 | 15 | Q.   And that was an offer which Kohl's rejected, correct? |
| 09:07 | 16 | A.   I don't know if they rejected it or not, but that was a |
| 09:07 | 17 | great proposal for them. |
| 09:07 | 18 | Q.   Well, the question is whether or not they think it's a |
| 09:07 | 19 | great proposal, right? |
| 09:07 | 20 | A.   I don't think what they were thinking. |
| 09:07 | 21 | Q.   Well, if you look at -- did you call to find out?  Did |
| 09:07 | 22 | you try to see if you could save this relationship? |
| 09:07 | 23 | A.   Call who? |
| 09:07 | 24 | Q.   Someone at Kohl's. |
| 09:07 | 25 | A.   No. |

| | | |
|---|---|---|
| 09:08 | 1 | Q.   If you look at 24350, see that's an e-mail from Holly |
| 09:08 | 2 | Chabot.  It says, "Kohl's Assessment Notes."  Do you see |
| 09:08 | 3 | that? |
| 09:08 | 4 | A.   Yes. |
| 09:08 | 5 | Q.   And -- |
| 09:08 | 6 | MR. PRICE:  Your Honor, move Exhibit 24350 into |
| 09:08 | 7 | evidence. |
| 09:08 | 8 | THE COURT:  Received. |
| 09:08 | 9 | *(Exhibit No. 24350 received in evidence.)* |
| 09:08 | 10 | MS. HURST:  Your Honor, objection.  Hearsay.  This |
| 09:08 | 11 | is an e-mail to herself.  There's no evidence anybody ever |
| 09:08 | 12 | saw this thing. |
| 09:08 | 13 | THE COURT:  Well, I don't have it in front of me. |
| 09:08 | 14 | MR. PRICE:  These are Ms. Chabot's notes, which |
| 09:08 | 15 | she's the MGA representative for Kohl's. |
| 09:08 | 16 | THE COURT:  Was she a 30(b)(6)? |
| 09:08 | 17 | MS. HURST:  No. |
| 09:08 | 18 | MR. PRICE:  It's Bates number MGA 23869499. |
| 09:08 | 19 | THE COURT:  Instead of showing it, you can refer |
| 09:08 | 20 | to it.  I don't know that it's proper for receipt because |
| 09:08 | 21 | it's hearsay.  But you can ask him if he knows about this. |
| 09:08 | 22 | BY MR. PRICE: |
| 09:08 | 23 | Q.   Did you know that on January 28, 2004, the buyer pulled |
| 09:08 | 24 | spring orders and projections, and there was an emergency |
| 09:09 | 25 | meeting to deal with that? |

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

38

| | | |
|---|---|---|
| 09:09 | 1 | THE WITNESS:  I do not. |
| 09:09 | 2 | THE COURT:  Okay.  It's hearsay, Counsel. |
| 09:09 | 3 | MS. HURST:  Object.  And move to strike that last |
| 09:09 | 4 | question as publishing hearsay. |
| 09:09 | 5 | MR. PRICE:  Your Honor, it's a party admission. |
| 09:09 | 6 | It's their executive. |
| 09:09 | 7 | THE COURT:  It will remain. |
| 09:09 | 8 | BY MR. PRICE: |
| 09:09 | 9 | Q.   Did you have the belief that Kohl's toy department |
| 09:09 | 10 | would not exist unless MGA gave them more assistance in |
| 09:09 | 11 | clearing out their inventory? |
| 09:09 | 12 | A.   No, that's ridiculous. |
| 09:09 | 13 | Q.   If you'd look at Exhibit 24354. |
| 09:09 | 14 | A.   Yes. |
| 09:09 | 15 | *(Document provided to the witness.)* |
| 09:09 | 16 | THE WITNESS:  Yes. |
| 09:09 | 17 | BY MR. PRICE: |
| 09:09 | 18 | Q.   You see that's the e-mail from Karen Quadrio to Ron |
| 09:09 | 19 | Brawer of MGA, your vice president of sales? |
| 09:10 | 20 | A.   Yes. |
| 09:10 | 21 | Q.   Okay.  And it's MGA Bates, correct? |
| 09:10 | 22 | A.   Yes, it is. |
| 09:10 | 23 | MR. PRICE:  Move 24354 into evidence. |
| 09:10 | 24 | THE COURT:  Received. |
| 09:10 | 25 | *(Exhibit No. 24354 received in evidence.)* |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 10288   Filed 03/28/11   Page 39 of 160   Page ID #:312461
CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

39

| | | |
|---|---|---|
| 09:10 | 1 | *(Document displayed.)* |
| 09:10 | 2 | BY MR. PRICE: |
| 09:10 | 3 | Q.   And if you would look at the e-mail on page 6, 24354-6, |
| 09:10 | 4 | from Jen Serra at Kohl's. |
| 09:10 | 5 | A.   Hold on.  I got to get this. |
| 09:10 | 6 | Q.   Sure.  24354, and it's going to be page 6. |
| 09:10 | 7 | *(Document provided to the witness.)* |
| 09:10 | 8 | BY MR. PRICE: |
| 09:10 | 9 | Q.   You see it has MGA GM Analysis.  It's from Kohl's to |
| 09:10 | 10 | the Northern Group, forwarding MGA analysis.  And the second |
| 09:10 | 11 | paragraph is, "Attached is a brief spreadsheet detailing the |
| 09:10 | 12 | margin deficit in 2004 and the markdowns we had to take on |
| 09:10 | 13 | Bratz in spring 2005.  Overall, we were about $1 million in |
| 09:11 | 14 | cost dollars short of making our margin plan with Bratz." |
| 09:11 | 15 | Do you see that? |
| 09:11 | 16 | A.   I do. |
| 09:11 | 17 | Q.   And margin deficit means that that's -- the margin is |
| 09:11 | 18 | their profit, right? |
| 09:11 | 19 | MS. HURST:  Objection.  Lacks foundation.  It's |
| 09:11 | 20 | hearsay. |
| 09:11 | 21 | THE COURT:  Overruled. |
| 09:11 | 22 | THE WITNESS:  Margin deficits means that they were |
| 09:11 | 23 | planning to make certain amount of margin on your product, |
| 09:11 | 24 | and we don't control their margin or selling price on the |
| 09:11 | 25 | retailer, MGA doesn't.  And so they were not making their |

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

40

| | | |
|---|---|---|
| 09:11 | 1 | plan.  That's what this means to me. |
| 09:11 | 2 | BY MR. PRICE: |
| 09:11 | 3 | Q.   And the retailers inform MGA of what their margin is, |
| 09:11 | 4 | correct? |
| 09:11 | 5 | A.   Not necessarily, no.  Actually, they don't. |
| 09:11 | 6 | Q.   Well, I mean, Kohl's told you what margin they needed |
| 09:11 | 7 | to have, correct? |
| 09:11 | 8 | A.   Not that I recall, no.  And I don't think they do. |
| 09:11 | 9 | They don't tell you what margin they need to have.  That |
| 09:11 | 10 | becomes price fixing.  That becomes controlling what |
| 09:11 | 11 | retailers sell a product for.  At least MGA doesn't do that. |
| 09:12 | 12 | Q.   I'm not saying that you demand margins.  I'm saying |
| 09:12 | 13 | retailers tell you what margins they need to get in order to |
| 09:12 | 14 | buy your product.  Not setting margins; they tell you what |
| 09:12 | 15 | they expect to get. |
| 09:12 | 16 | A.   They give you a percentage. |
| 09:12 | 17 | Q.   Yes.  So they give you a percentage.  Say, "That is |
| 09:12 | 18 | what I need to get in order to carry your product," correct? |
| 09:12 | 19 | A.   No.  They give you a percentage of what they expect, |
| 09:12 | 20 | but they set the pricing. |
| 09:12 | 21 | Q.   I'm not saying you set the pricing, but they tell you |
| 09:12 | 22 | the margin percentage, right? |
| 09:12 | 23 | A.   They tell you what is the requirements. |
| 09:12 | 24 | Q.   So, for example, if you have a suggested retail |
| 09:12 | 25 | price -- |

DEBBIE GALE, U.S. COURT REPORTER

| 09:12 | 1 | A.    Yes. |
| 09:12 | 2 | Q.    -- correct?  Or, I'm sorry -- if you have the retail |
| 09:12 | 3 | price that's actually sold of a product from Kohl's -- with |
| 09:12 | 4 | me so far? -- if you know that retail price, okay? |
| 09:12 | 5 | A.    If I know what retail price? |
| 09:12 | 6 | Q.    If you know the retail price of what Kohl's is selling |
| 09:12 | 7 | for -- Bratz, right? |
| 09:12 | 8 | A.    Yes. |
| 09:12 | 9 | Q.    And they tell you the margin they expect from that, |
| 09:12 | 10 | correct? |
| 09:12 | 11 | A.    They don't tell you what retail they're selling the |
| 09:12 | 12 | products at, because that is going to become something for |
| 09:13 | 13 | their competitors to know and they don't want to do that. |
| 09:13 | 14 | That's my experience. |
| 09:13 | 15 | Q.    I'm not saying that.  I'm saying if you know the retail |
| 09:13 | 16 | price and you know the margin that they are demanding, |
| 09:13 | 17 | right? |
| 09:13 | 18 | A.    Again, that's where I'm having a difficulty, because |
| 09:13 | 19 | they don't tell you what retail they're gonna sell your |
| 09:13 | 20 | products at. |
| 09:13 | 21 | Q.    Go to page 24354-0003.  You see that part of the e-mail |
| 09:13 | 22 | is from Mr. Brawer? |
| 09:13 | 23 | A.    Yes. |
| 09:13 | 24 | Q.    And it says, "We need to hold this at 10 percent.  If |
| 09:13 | 25 | they are willing to crawl first, we can give them 100,000 |

| | | |
|---|---|---|
| 09:13 | 1 | against 1 million in spring bookings.  I realize that this |
| 09:13 | 2 | is probably not what they are -- are not looking for, but I |
| 09:13 | 3 | don't feel we owe them more, nor can we afford to buy the |
| 09:13 | 4 | business for more." |
| 09:13 | 5 | Do you see that? |
| 09:13 | 6 | A.   I do. |
| 09:13 | 7 | Q.   So you knew in October 2005 that what Kohl's was |
| 09:14 | 8 | looking for from MGA to assist them, uh, was not what you |
| 09:14 | 9 | were going to be willing to do, right? |
| 09:14 | 10 | A.   We were not going to give them markdown dollars over a |
| 09:14 | 11 | certain amount to dilute our brand. |
| 09:14 | 12 | Q.   And then if you look at the second page, 0002, an |
| 09:14 | 13 | e-mail from Nicole Kuechenmeister to Karen Quadrio. |
| 09:14 | 14 | A.   I'm sorry. |
| 09:14 | 15 | Q.   It's on page 2, the bottom there. |
| 09:14 | 16 | A.   You said from Cole.  I don't see Cole. |
| 09:14 | 17 | Q.   It's Nicole. |
| 09:14 | 18 | A.   Nicole.  Yes.  Okay. |
| 09:14 | 19 | Q.   And third paragraph after "A proposal" says, "While I |
| 09:14 | 20 | know this isn't close to what they're asking for, this is |
| 09:14 | 21 | the best we can do based on our budgets limitations per Ron |
| 09:14 | 22 | below." |
| 09:14 | 23 | Do you see that? |
| 09:14 | 24 | A.   I do. |
| 09:14 | 25 | Q.   So in October 2005, you knew that MGA wasn't willing to |

CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

43

| | | |
|---|---|---|
| 09:14 | 1 | do close to what Kohl's was asking for, correct? |
| 09:14 | 2 | A.   That's correct. |
| 09:14 | 3 | Q.   And then if you go to 24357. |
| 09:15 | 4 | *(Document provided to the witness.)* |
| 09:15 | 5 | BY MR. PRICE: |
| 09:15 | 6 | Q.   You see that's from Ms. Quadrio to Mr. Brawer, dated |
| 09:15 | 7 | November 2, 2005? |
| 09:15 | 8 | A.   Yes. |
| 09:15 | 9 | MR. PRICE:  Move 24357 into evidence. |
| 09:15 | 10 | THE COURT:  Received. |
| 09:15 | 11 | *(Exhibit No. 24357 received in evidence.)* |
| 09:15 | 12 | *(Document displayed.)* |
| 09:15 | 13 | BY MR. PRICE: |
| 09:15 | 14 | Q.   And if you look at the bottom there, there's an e-mail |
| 09:15 | 15 | from Dean Goodman of the Northern Group to Ms. Quadrio |
| 09:15 | 16 | concerning Kohl's? |
| 09:15 | 17 | A.   Yes. |
| 09:15 | 18 | Q.   And if you look at the third paragraph, it says, "While |
| 09:15 | 19 | the buy-in number was an important piece of the puzzle, |
| 09:15 | 20 | Kohl's larger concern is that both sides are able to come |
| 09:15 | 21 | together with a business plan that accommodates Kohl's |
| 09:15 | 22 | margin needs.  She said that they recognize the power of the |
| 09:15 | 23 | Bratz brand and really would like to see it on the shelf. |
| 09:15 | 24 | All that being said, again, spring '06 is behind us and over |
| 09:15 | 25 | with.  They have given that shelf space to Barbie." |

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

44

| | | |
|---|---|---|
| 09:15 | 1 | And then it says, "Our focus now turns to Fall." |
| 09:16 | 2 | Do you see that? |
| 09:16 | 3 | A.   I do. |
| 09:16 | 4 | Q.   And it says, "It would be good to have a meeting with |
| 09:16 | 5 | Kohl's" -- that's the last sentence -- "in Milwaukee." |
| 09:16 | 6 | Do you see that? |
| 09:16 | 7 | A.   It does. |
| 09:16 | 8 | Q.   And let's go to 24358.  And you see at the top -- |
| 09:16 | 9 | A.   I don't see anything yet.  You got to slow down. |
| 09:16 | 10 | (Document provided to the witness.) |
| 09:16 | 11 | BY MR. PRICE: |
| 09:16 | 12 | Q.   I'm trying.  You see at the top, it's from you to |
| 09:16 | 13 | Ms. Quadrio and Ron Brawer, dated November 22nd, 2005? |
| 09:16 | 14 | A.   I do. |
| 09:16 | 15 | Q.   And -- |
| 09:16 | 16 | MR. PRICE:  Your Honor, move 24358 into evidence. |
| 09:16 | 17 | THE COURT:  Received. |
| 09:16 | 18 | (Exhibit No. 24358 received in evidence.) |
| 09:16 | 19 | (Document displayed.) |
| 09:16 | 20 | BY MR. PRICE: |
| 09:16 | 21 | Q.   And let's go to the middle e-mail here on this |
| 09:16 | 22 | document.  Oh, I'm sorry. |
| 09:16 | 23 | Let's first go to page 2. |
| 09:16 | 24 | (Document displayed.) |
| | 25 | |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 09:16 | 1 | BY MR. PRICE: |
| 09:16 | 2 | Q.   You see there's an e-mail from, uh, a Ms. Serra at |
| 09:16 | 3 | Kohl's to Dean Goodman about an appointment request, and |
| 09:17 | 4 | Ms. Serra from Kohl's says, "Dean, do we really need to see |
| 09:17 | 5 | MGA in December?  If there isn't going to be a substantial |
| 09:17 | 6 | buy-in dollar increase and an increase in the overall |
| 09:17 | 7 | margin, we're not going to be able to move forward.  It |
| 09:17 | 8 | didn't sound like there was a lot of love for that scenario |
| 09:17 | 9 | at our last meeting.  If there hasn't been a major change to |
| 09:17 | 10 | the overall program, then we don't really need to meet since |
| 09:17 | 11 | it's not going to make sense for Kohl's." |
| 09:17 | 12 | Do you see that? |
| 09:17 | 13 | A.   I do. |
| 09:17 | 14 | Q.   And MGA was trying to get a meeting with Kohl's in |
| 09:17 | 15 | December, right? |
| 09:17 | 16 | A.   Looks like it, yes. |
| 09:17 | 17 | Q.   Uh, and if you look at the e-mail on top of that, |
| 09:17 | 18 | November 22, 2005, from Dean Goodman to Karen Quadrio -- |
| 09:17 | 19 | A.   Okay. |
| 09:17 | 20 | Q.   -- it says, "Kohl's is not going to give MGA an |
| 09:17 | 21 | appointment in December.  Jen said that without a |
| 09:17 | 22 | substantial change/increase in the dollar buy-in and program |
| 09:17 | 23 | margins, they are not going to be able to move forward." |
| 09:17 | 24 | A.   Yes, I see it. |
| 09:18 | 25 | Q.   And in next one, second sentence on the next paragraph, |

CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

46

| | | |
|---|---|---|
| 09:18 | 1 | "Kohl's feels strongly about their position they laid out to |
| 09:18 | 2 | us last month.  At this point, feel MGA is the one that must |
| 09:18 | 3 | decide if they want to have a presence in the toy |
| 09:18 | 4 | department.  It looks like the lines have been drawn." |
| 09:18 | 5 | Do you see that? |
| 09:18 | 6 | A.   I do. |
| 09:18 | 7 | Q.   And then we have, on the first page, an e-mail from |
| 09:18 | 8 | Karen Quadrio at MGA to you, and it says, "Isaac, last week |
| 09:18 | 9 | you and I had discussed a 250,000 credit allowance against a |
| 09:18 | 10 | 2.5 million commitment.  Should I go to them with this?" |
| 09:18 | 11 | Do you see that? |
| 09:18 | 12 | A.   I do. |
| 09:18 | 13 | Q.   And that means they would be required to buy |
| 09:18 | 14 | 2.5 million for you against a $250,000 credit allowance, |
| 09:18 | 15 | correct? |
| 09:18 | 16 | A.   Not "for you."  "From" us. |
| 09:18 | 17 | Q.   And if you look at your response, could you read to the |
| 09:19 | 18 | jury what your response was? |
| 09:19 | 19 | A.   You can read it.  You've been reading fine. |
| 09:19 | 20 | Q.   Mr. Larian, if you could please read what your response |
| 09:19 | 21 | is to the jury.  Are you ashamed to read it? |
| 09:19 | 22 | A.   Is that a question?  I'm not ashamed. |
| 09:19 | 23 | Q.   Well, then, could you please read your response to the |
| 09:19 | 24 | jury? |
| 09:19 | 25 | A.   "Yes, go ahead.  If they still say no, F-'em.  I don't |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 09:19 | 1 | want them at our showroom.  It is their loss." |
| 09:19 | 2 | Q.   Sounds like there was some significant business issues |
| 09:19 | 3 | between you and Kohl's, right? |
| 09:19 | 4 | A.   There was not a significant business issue for -- |
| 09:19 | 5 | between us and Kohl's.  And if you like, I can explain. |
| 09:19 | 6 | Q.   Well, when you say that at the time business dropped in |
| 09:19 | 7 | 2004 and 200 -- and 2005 and 2006 -- |
| 09:19 | 8 | A.   Yes. |
| 09:19 | 9 | Q.   -- and this was completely mystifying to MGA, and that |
| 09:19 | 10 | was based -- was not based upon any change in ordinary |
| 09:19 | 11 | business conditions that we could ascertain? |
| 09:19 | 12 | A.   Yes. |
| 09:20 | 13 | Q.   False? |
| 09:20 | 14 | A.   It's not false.  And would you like me to explain? |
| 09:20 | 15 | Q.   Well, let me ask you this:  Did you remember any of |
| 09:20 | 16 | this?  Did you remember telling them "F-'em" when you told |
| 09:20 | 17 | the jury yesterday that you had no idea how this occurred |
| 09:20 | 18 | and you had no belief there were any issues between you and |
| 09:20 | 19 | Kohl's? |
| 09:20 | 20 | MS. HURST:  Objection. |
| 09:20 | 21 | BY MR. PRICE: |
| 09:20 | 22 | Q.   Did you remember this? |
| 09:20 | 23 | MS. HURST:  Objection.  Misstates the document. |
| 09:20 | 24 | THE COURT:  Overruled. |
| 09:20 | 25 | MS. HURST:  Argumentative. |

CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

48

| | | |
|---|---|---|
| 09:20 | 1 | THE COURT:  Overruled. |
| 09:20 | 2 | THE WITNESS:  It is now November 22, 2005.  We are |
| 09:20 | 3 | mystified why they haven't bought from us product all of |
| 09:20 | 4 | 2005.  And all of a sudden now they're coming in and they're |
| 09:20 | 5 | saying they want to see our line again and they want |
| 09:20 | 6 | $250,000.  This, we already lost one year because Mattel did |
| 09:20 | 7 | something. |
| 09:20 | 8 | BY MR. PRICE: |
| 09:20 | 9 | Q.  My question was, did you remember any of this?  And we |
| 09:20 | 10 | started in 2004. |
| 09:20 | 11 | A.  Yes. |
| 09:21 | 12 | Q.  We covered a long period here.  Did you remember any of |
| 09:21 | 13 | this at the time you told the jury yesterday that, uh, there |
| 09:21 | 14 | were no issues between you and Kohl's? |
| 09:21 | 15 | MS. HURST:  Objection.  Vague as to "any of this." |
| 09:21 | 16 | THE COURT:  Overruled. |
| 09:21 | 17 | THE WITNESS:  I did not.  This is from six years |
| 09:21 | 18 | ago, but this is not a business issue.  This is Mattel |
| 09:21 | 19 | paying Kohl's not to buy MGA products. |
| 09:21 | 20 | BY MR. PRICE: |
| 09:21 | 21 | Q.  Well, they were asking you to, quote, "buy their |
| 09:21 | 22 | business by giving them discounts," correct? |
| 09:21 | 23 | A.  This is not what they're saying.  This is our |
| 09:21 | 24 | salespeople saying. |
| 09:21 | 25 | Q.  Your salespeople? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

49

| 09:21 | 1 | A.   Yes. |
| 09:21 | 2 | Q.   Now, you talk about -- you talk about the sales from |
| 09:21 | 3 | Kohl's in 2004/2005, and I'd like you to look at |
| 09:21 | 4 | Exhibit 24719. |
| 09:21 | 5 | *(Document provided to the witness.)* |
| 09:22 | 6 | BY MR. PRICE: |
| 09:22 | 7 | Q.   See that's an e-mail from Ms. Quadrio to Lenny Long, |
| 09:22 | 8 | concerning Kohl's weekend sales update -- |
| 09:22 | 9 | A.   Yes. |
| 09:22 | 10 | Q.   -- 2006 versus 2007, correct? |
| 09:22 | 11 | A.   Yes. |
| 09:22 | 12 | MR. PRICE:  Move 24719 into evidence. |
| 09:22 | 13 | MS. HURST:  Your Honor, can I have a continuing |
| 09:22 | 14 | objection to all of these as hearsay?  We're now into |
| 09:22 | 15 | November 2007 here.  And Mr. Larian -- |
| 09:22 | 16 | THE COURT:  Is this still with the Kohl's? |
| 09:22 | 17 | MR. PRICE:  Yes. |
| 09:22 | 18 | THE COURT:  Kohl's account? |
| 09:22 | 19 | MR. PRICE:  Yes. |
| 09:22 | 20 | THE COURT:  In 2007? |
| 09:22 | 21 | MR. PRICE:  It refers back to -- |
| 09:22 | 22 | THE COURT:  It refers back to the time period |
| 09:22 | 23 | 2005/2006? |
| 09:22 | 24 | MR. PRICE:  Refers back to 2006. |
| 09:22 | 25 | THE COURT:  Overruled. |

CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

50

| 09:22 | 1 | BY MR. PRICE: |
|---|---|---|
| 09:22 | 2 | Q.   Actually, Mr. Larian, you're on this -- |
| 09:22 | 3 | MR. PRICE:  Move 24719 into evidence. |
| 09:22 | 4 | BY MR. PRICE: |
| 09:22 | 5 | Q.   Uh, and see you're on the e-mail at the top? |
| 09:22 | 6 | A.   Yes. |
| 09:22 | 7 | Q.   And then on the e-mail at the bottom, it says -- |
| 09:23 | 8 | THE COURT:  It's received. |
| 09:23 | 9 | *(Exhibit No. 24719 received in evidence.)* |
| 09:23 | 10 | *(Document displayed.)* |
| 09:23 | 11 | BY MR. PRICE: |
| 09:23 | 12 | Q.   If you look at the e-mail at the bottom, it says, "It |
| 09:23 | 13 | was a good weekend for us at Kohl's.  Overall sales for the |
| 09:23 | 14 | Little Tikes and MGA items were up 43 percent for the |
| 09:23 | 15 | weekend versus last year." |
| 09:23 | 16 | Do you see that? |
| 09:23 | 17 | A.   Yes. |
| 09:23 | 18 | Q.   Last year is referring to 2006? |
| 09:23 | 19 | THE COURT:  Now, just a moment. |
| 09:23 | 20 | Ladies and gentlemen, where Mr. Larian's name |
| 09:23 | 21 | doesn't appear on the e-mail, this is hearsay.  But it shows |
| 09:23 | 22 | the conduct.  In other words, it shows the thought process, |
| 09:23 | 23 | the eventual decision or nondecision in what's going on with |
| 09:23 | 24 | Kohl's, et cetera.  So some of this can't be for the truth |
| 09:23 | 25 | of the matter asserted. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

51

| | | |
|---|---|---|
| 09:23 | 1 | But in this case, Counsel, I see you've |
| 09:23 | 2 | highlighted Mr. Larian's name. |
| 09:23 | 3 | It's received. |
| 09:23 | 4 | BY MR. PRICE: |
| 09:23 | 5 | Q.   So when it says that "items were up 43 percent for the |
| 09:23 | 6 | weekend versus LY," that means last year? |
| 09:24 | 7 | A.   Right.  In the year we didn't do any business with |
| 09:24 | 8 | Kohl's, yes. |
| 09:24 | 9 | Q.   So that's 2006? |
| 09:24 | 10 | A.   Right. |
| 09:24 | 11 | Q.   And it says, "POS sales at retail were 1,500,000 versus |
| 09:24 | 12 | 1,044,000 last year." |
| 09:24 | 13 | Do you see that? |
| 09:24 | 14 | A.   Yes. |
| 09:24 | 15 | Q.   So that's saying that on this weekend in 2006, the |
| 09:24 | 16 | Thanksgiving weekend, that POS sales at Kohl's for MGA items |
| 09:24 | 17 | was $1,044,000? |
| 09:24 | 18 | A.   Yes.  On the merchandise they had from before.  They |
| 09:24 | 19 | did not buy any merchandise in 2005 and 2006 because Mattel |
| 09:24 | 20 | paid them not to buy from us. |
| 09:24 | 21 | Q.   Well, they had so much overstock from the year before |
| 09:24 | 22 | that they were still selling, in November 2006, uh, a |
| 09:24 | 23 | million dollars' worth of MGA product, right? |
| 09:24 | 24 | A.   I don't know if they had overstock or didn't have |
| 09:24 | 25 | overstock, but that's what they sold. |

| 09:24 | 1 | Q.   Well, they didn't sell it from what you -- they bought |
| 09:24 | 2 | from you in 2005, 'cause you said you didn't sell 'em |
| 09:25 | 3 | anything? |
| 09:25 | 4 | MS. HURST:  Objection.  Misstates the evidence. |
| 09:25 | 5 | It's Little Tikes. |
| 09:25 | 6 | THE COURT:  Overruled. |
| 09:25 | 7 | THE WITNESS:  I'm sorry? |
| 09:25 | 8 | BY MR. PRICE: |
| 09:25 | 9 | Q.   Little Tikes, that count as an MGA sale? |
| 09:25 | 10 | A.   It does. |
| 09:25 | 11 | MS. HURST:  Objection. |
| 09:25 | 12 | THE COURT:  Overruled. |
| 09:25 | 13 | BY MR. PRICE: |
| 09:25 | 14 | Q.   So that chart you put up, 36 -- what was it?  36738? |
| 09:25 | 15 | Does that say "MGA sales"? |
| 09:25 | 16 | A.   In -- I'm sorry.  In 2004 we didn't own Little Tikes. |
| 09:25 | 17 | Q.   I'm talking about 2006 now. |
| 09:25 | 18 | A.   I'm -- I'm trying to explain to you and to the jury. |
| 09:25 | 19 | Q.   Does that say "MGA sales"? |
| 09:25 | 20 | A.   I am -- I'm trying to explain that to the jury. |
| 09:25 | 21 | Q.   It's a "yes" or "no" question.  Does that say "MGA |
| 09:25 | 22 | sales"? |
| 09:25 | 23 | A.   It says -- |
| 09:25 | 24 | MS. HURST:  Objection.  Your Honor, can the |
| 09:25 | 25 | witness please be allowed to answer the question fairly? |

CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

53

| | | |
|---|---|---|
| 09:25 | 1 | THE COURT:  No.  The question is, "Did that say |
| 09:25 | 2 | "MGA sales?"  Answer the question. |
| 09:25 | 3 | BY MR. PRICE: |
| 09:25 | 4 | Q.   Does that mean "MGA sales"? |
| 09:25 | 5 | A.   Yes. |
| 09:25 | 6 | Q.   And now, you look at 24719, and you see Kohl's is |
| 09:26 | 7 | selling a million dollars' worth of product in one weekend |
| 09:26 | 8 | in 2006, right? |
| 09:26 | 9 | A.   Yes.  The Little Tikes products. |
| 09:26 | 10 | Q.   And that's because they were overstocked, 'cause they |
| 09:26 | 11 | didn't buy anything from you in 2005? |
| 09:26 | 12 | A.   No.  That's Little Tikes products that they bought from |
| 09:26 | 13 | Newell before we owned them. |
| 09:26 | 14 | Q.   It says, "Little Tikes and MGA items."  Do you know |
| 09:26 | 15 | what other MGA items? |
| 09:26 | 16 | A.   I have no idea, no. |
| 09:26 | 17 | Q.   How about the next line, "We did receive a lift with |
| 09:26 | 18 | approximately" -- oh, I'll go on to the next e-mail now. |
| 09:26 | 19 | I'm sorry. |
| 09:26 | 20 | Now, if you look at 24747, and you see this is an MGA |
| 09:26 | 21 | Bates document.  It says, "October 2006 final daily ship |
| 09:27 | 22 | report"? |
| 09:27 | 23 | A.   I don't see anything yet. |
| 09:27 | 24 | MS. HURST:  I'm sorry.  What number was that? |
| 09:27 | 25 | MR. PRICE:  It's 24747. |

| | | |
|---|---|---|
| 09:27 | 1 | MS. HURST:  I don't have that here.  Just one |
| 09:27 | 2 | second.  Was that in a supplemental? |
| 09:27 | 3 | MR. PRICE:  Yeah. |
| 09:27 | 4 | *(Document provided to the witness.)* |
| 09:27 | 5 | THE COURT:  Counsel, that's been placed in front |
| 09:27 | 6 | of the witness. |
| 09:27 | 7 | BY MR. PRICE: |
| 09:27 | 8 | Q.   And do you see that's an MGA daily ship report, |
| 09:27 | 9 | October 2006 final.  Do you see that? |
| 09:27 | 10 | A.   Yes. |
| 09:27 | 11 | MR. PRICE:  Move 24747 into evidence, Your Honor. |
| 09:27 | 12 | THE COURT:  Received. |
| 09:27 | 13 | *(Exhibit No. 24747 received in evidence.)* |
| 09:27 | 14 | *(Document displayed.)* |
| 09:27 | 15 | BY MR. PRICE: |
| 09:27 | 16 | Q.   And you see No. 17 there, it has as "Kohl's."  It's |
| 09:27 | 17 | pretty small type, but you can see that, right? |
| 09:27 | 18 | A.   Yes. |
| 09:28 | 19 | Q.   And talks about invoiced from 10/1/2006 under the B |
| 09:28 | 20 | column, and it has 1,254.  Do you see that? |
| 09:28 | 21 | A.   One million two hundred fifty-four -- |
| 09:28 | 22 | Q.   Ah.  1,254,000.  Invoiced by -- is it October 1, 2006, |
| 09:28 | 23 | from MGA to Kohl's? |
| 09:28 | 24 | A.   That's right. |
| 09:28 | 25 | Q.   And if we go to, uh, page -- let's see -- the Bates |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

55

| | | |
|---|---|---|
| 09:28 | 1 | stamp is 230-5843 -- page 8 of the document? |
| 09:28 | 2 | A.   Yes.  What line? |
| 09:28 | 3 | Q.   If you look at line 17 -- |
| 09:28 | 4 | A.   Yes. |
| 09:28 | 5 | Q.   -- that's Kohl's, right? |
| 09:28 | 6 | A.   Yes. |
| 09:28 | 7 | Q.   And it has under the Column N, "year-to-date 2006 total |
| 09:29 | 8 | invoice to Kohl's from MGA."  Do you see that? |
| 09:29 | 9 | A.   I do. |
| 09:29 | 10 | Q.   And the amount it has invoiced to Kohl's in 2006 is |
| 09:29 | 11 | $5,911,677, correct? |
| 09:29 | 12 | A.   That's what it shows, yes. |
| 09:29 | 13 | Q.   Pardon? |
| 09:29 | 14 | A.   That's what it shows, yes. |
| 09:29 | 15 | Q.   And this is one of MGA's business records, correct? |
| 09:29 | 16 | A.   Looks like it, yes. |
| 09:29 | 17 | Q.   Now, let me ask you about -- uh, going back to the |
| 09:29 | 18 | products that were in the -- the toy fair reports.  Okay? |
| 09:29 | 19 | Now, you, uh -- you agree that, uh -- that something's not a |
| 09:29 | 20 | secret if it's known to the public, right? |
| 09:29 | 21 | A.   I'm sorry? |
| 09:29 | 22 | Q.   You agree that -- that something isn't secret if it's |
| 09:29 | 23 | known to the public, right? |
| 09:29 | 24 | A.   What is your definition of something?  A 3-D product? |
| 09:30 | 25 | Q.   A picture, a description of a product, right? |

Case 2:04-cv-09049-DOC-RNB   Document 10288   Filed 03/28/11   Page 56 of 160   Page ID #:312478
CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

56

09:30   1    A.   A picture or description of a product that's in the

09:30   2    press is not public (sic).  That's correct.  It's public.

09:30   3    Q.   You agree that something's on the Internet -- whatever

09:30   4    is on the Internet is not public -- I mean, is not secret?

09:30   5            MS. HURST:  Objection.  Calls for a legal

09:30   6    conclusion.

09:30   7            THE COURT:  Overruled.

09:30   8            THE WITNESS:  You got to tell me what that thing

09:30   9    means if I can answer that.

09:30   10   BY MR. PRICE:

09:30   11   Q.   If something's reported on the Internet at a certain

09:30   12   time, you don't believe it's a secret, right?

09:30   13   A.   What is reported on the Internet, no, it's not.

09:30   14           MS. HURST:  Objection.  Calls for a legal

09:30   15   conclusion.

09:30   16           THE COURT:  Not only that, sustained "at a certain

09:30   17   time."  It has to be in relation to a product release,

09:30   18   et cetera.

09:30   19   BY MR. PRICE:

09:30   20   Q.   At the time something is on the Internet, whatever time

09:30   21   that is -- at the time information is on the Internet --

09:30   22   your belief is that that information at that time is not

09:30   23   secret, correct?

09:30   24           MS. HURST:  Objection.  Calls for a legal

09:30   25   conclusion.

Case 2:04-cv-09049-DOC-RNB   Document 10288   Filed 03/28/11   Page 57 of 160   Page ID #:312479
CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

57

| | | |
|---|---|---|
| 09:30 | 1 | THE COURT: Overruled. |
| 09:30 | 2 | THE WITNESS: Again, I don't know what your |
| 09:30 | 3 | something means but, yeah, if something written on the |
| 09:31 | 4 | Internet, theoretically people can go searching the Internet |
| 09:31 | 5 | and find it. |
| 09:31 | 6 | BY MR. PRICE: |
| 09:31 | 7 | Q.   And, uh, you showed the jury some products yesterday |
| 09:31 | 8 | and said that you were, uh -- uh, disappointed, uh, |
| 09:31 | 9 | surprised that Mattel would have a product that had |
| 09:31 | 10 | similarities to your product.  Do you remember that? |
| 09:31 | 11 | A.   Yes. |
| 09:31 | 12 | Q.   And MGA, though, will attempt to make products similar |
| 09:31 | 13 | to Mattel's products if the Mattel information is public, |
| 09:31 | 14 | correct? |
| 09:31 | 15 | A.   Yes. |
| 09:31 | 16 | Q.   Okay.  So, uh, it's not unusual in the toy industry |
| 09:31 | 17 | from (sic) one manufacturer to see public information about |
| 09:31 | 18 | another and then try to do a -- a similar theme or -- or a |
| 09:31 | 19 | similar line, correct? |
| 09:31 | 20 | A.   As long as that product has not come to the market, |
| 09:31 | 21 | there is a problem.  If that product -- you cannot just go |
| 09:31 | 22 | make a product with the same play value and what they do |
| 09:32 | 23 | based on what's on the Internet or in the press. |
| 09:32 | 24 | Q.   My question was different.  Uh, it's common in the toy |
| 09:32 | 25 | industry -- |

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

58

| | | |
|---|---|---|
| 09:32 | 1 | A.   Right. |
| 09:32 | 2 | Q.   -- for one company to look at what another company's |
| 09:32 | 3 | doing, if it's public, and then try to make something |
| 09:32 | 4 | similar, in the same line, similar theme, correct? |
| 09:32 | 5 | A.   Yes. |
| 09:32 | 6 | Q.   And, for example, if, uh -- you talked yesterday about |
| 09:32 | 7 | 4Ever Best Friends.  Do you remember that? |
| 09:32 | 8 | A.   I did. |
| 09:32 | 9 | Q.   And if we could show you the product of 4Ever Best |
| 09:32 | 10 | Friends.  I think it's 29122. |
| 09:32 | 11 | *(Exhibit provided to the witness.)* |
| 09:32 | 12 | BY MR. PRICE: |
| 09:32 | 13 | Q.   So this was the 4Ever Best Friends that MGA came out |
| 09:32 | 14 | with, correct? |
| 09:32 | 15 | A.   Yes. |
| 09:32 | 16 | Q.   And that's the one that had the *L.A. Times* article with |
| 09:32 | 17 | the picture of the -- of the dolls, correct? |
| 09:32 | 18 | A.   Yes. |
| 09:32 | 19 | Q.   And then after that, Mattel came out with Wee 3 |
| 09:32 | 20 | Friends, which is 24713, correct? |
| 09:32 | 21 | *(Exhibit provided to the witness.)* |
| 09:33 | 22 | BY MR. PRICE: |
| 09:33 | 23 | Q.   Now, if you look at that packaging, it's plastic all |
| 09:33 | 24 | the way around, correct? |
| 09:33 | 25 | A.   Yes. |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 10288   Filed 03/28/11   Page 59 of 160   Page ID #:312481
CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

59

| 09:33 | 1 | Q. And it's got this zipper on it? |
| 09:33 | 2 | A. Yes. |
| 09:33 | 3 | Q. And when that came out, if you'd look at Exhibit 7908, |
| 09:33 | 4 | which is an e-mail. |
| 09:33 | 5 | *(Document provided to the witness.)* |
| 09:33 | 6 | MR. PRICE: And this, Your Honor, is already into |
| 09:33 | 7 | evidence. |
| 09:33 | 8 | THE COURT: Thank you. |
| 09:33 | 9 | *(Document displayed.)* |
| 09:33 | 10 | BY MR. PRICE: |
| 09:33 | 11 | Q. And if you look at page 3, dated March 16, 2004, Paula |
| 09:34 | 12 | Garcia copying you, "Subject: Re Urgent 4Ever Best Friends |
| 09:34 | 13 | versus Wee 3 Friends"? |
| 09:34 | 14 | A. Yes. |
| 09:34 | 15 | Q. "Okay, team. We met with Isaac. We agreed to |
| 09:34 | 16 | immediately incorporate in the first of Fall F2004 |
| 09:34 | 17 | production a reusable vinyl bag." And then it says, "Please |
| 09:34 | 18 | find the attached preliminary costs for the doll packs." |
| 09:34 | 19 | Do you see that? |
| 09:34 | 20 | A. I do. |
| 09:34 | 21 | Q. And, uh, if you'd look at the first page, e-mail from |
| 09:34 | 22 | Aileen Storer, same topic, March 18, 2004. |
| 09:34 | 23 | *(Document displayed.)* |
| 09:34 | 24 | BY MR. PRICE: |
| 09:35 | 25 | Q. "Martha, yes, we should. Could you please gather |

| | | |
|---|---|---|
| 09:35 | 1 | competitive samples to send to Hong Kong for reference on |
| 09:35 | 2 | quality and construction?" |
| 09:35 | 3 | You see that? |
| 09:35 | 4 | A.   Yes. |
| 09:35 | 5 | Q.   And that's what -- what you did:  You came out with -- |
| 09:35 | 6 | we'll show you 8806. |
| 09:35 | 7 | *(Exhibit provided to the witness.)* |
| 09:35 | 8 | THE WITNESS:  Yes, I did. |
| 09:35 | 9 | BY MR. PRICE: |
| 09:35 | 10 | Q.   And that's with a reusable vinyl bag, right? |
| 09:35 | 11 | A.   It sure is. |
| 09:35 | 12 | Q.   And it's got the zipper on it, right? |
| 09:35 | 13 | A.   Sure has. |
| 09:35 | 14 | Q.   If you look at Exhibit 7907. |
| 09:35 | 15 | *(Document provided to the witness.)* |
| 09:35 | 16 | *(Document displayed.)* |
| 09:35 | 17 | MR. PRICE:  And, Your Honor, this is already in |
| 09:35 | 18 | evidence. |
| 09:35 | 19 | THE COURT:  Thank you. |
| 09:35 | 20 | BY MR. PRICE: |
| 09:36 | 21 | Q.   If you look at the e-mail on the second page from the |
| 09:36 | 22 | bottom, sent from Aileen Storer to Paula Garcia, August 6, |
| 09:36 | 23 | 2006. |
| 09:36 | 24 | A.   Yes. |
| 09:36 | 25 | Q.   It says, "Paula heard from Lone --" might be Lonnie -- |

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

61

09:36    1    "Lone that you are requesting to minimize packaging effects.

09:36    2    Only thing is that Isaac 'pecifically (sic) purchased the

09:36    3    Barbie Swappin' Styles packaging and had it 'elivered (sic)

09:36    4    to me so I could match packaging look and go head-to-head

09:36    5    with them."

09:36    6         Do you see that?

09:36    7    A.    I do.

09:36    8    Q.    And then the e-mail above that, to Dennis and Paula, "I

09:36    9    am seriously concerned.  Isaac specifically asked for us to

09:36   10    match the Swappin' Styles look."

09:36   11         Do you see that?

09:36   12    A.    Yes, I do.

09:36   13    Q.    And if you'd look at 1321.

09:36   14              (Document provided to the witness.)

09:37   15    BY MR. PRICE:

09:37   16    Q.    You see that begins with an e-mail from you to Carter

09:37   17    Bryant, December 15, 2004?

09:37   18    A.    Yes.

09:37   19              MR. PRICE:  And that's in evidence, Your Honor.

09:37   20              (Document displayed.)

09:37   21    BY MR. PRICE:

09:37   22    Q.    And if we look at the -- actually, the one on the

09:37   23    bottom, which is from Jasmin to you, your daughter to you on

09:37   24    December 15, 2004.  Do you see that?

09:37   25    A.    Yes.

| | | |
|---|---|---|
| 09:37 | 1 | Q.   It says, "Hi, Dad.  I'm surprised Carter designed |
| 09:37 | 2 | these.  I like the western idea/theme, but I really think |
| 09:37 | 3 | you could do a way better job on this.  The styles are |
| 09:37 | 4 | passé.  With such a good theme, the clothing should match |
| 09:37 | 5 | that level.  Love ya, Jas."  Correct? |
| 09:37 | 6 | A.   I do. |
| 09:37 | 7 | Q.   And let's look at your response.  And you sent this to |
| 09:37 | 8 | Ms. Garcia and Carter Bryant, right? |
| 09:37 | 9 | A.   Yes. |
| 09:37 | 10 | Q.   You say, "I agree with her.  Please see the competition |
| 09:37 | 11 | and fix it." |
| 09:37 | 12 |      Do you see that? |
| 09:37 | 13 | A.   I do. |
| 09:37 | 14 | Q.   And the competition means Mattel? |
| 09:38 | 15 | A.   Probably, yes. |
| 09:38 | 16 | Q.   Uh, and, by the way, for the Swappin' Styles, the |
| 09:38 | 17 | Swappin' Styles is a Mattel product, right? |
| 09:38 | 18 | A.   Are we talking -- |
| 09:38 | 19 | Q.   The one I was talking about before, 7907, the Swappin' |
| 09:38 | 20 | Styles. |
| 09:38 | 21 | A.   Excuse me for one second.  I'm a little confused.  Are |
| 09:38 | 22 | we talking about this one with the western or Swappin' |
| 09:38 | 23 | Styles? |
| 09:38 | 24 | Q.   We're talking about Swappin' Styles.  That's why I said |
| 09:38 | 25 | Swappin' Styles. |

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

63

| | | |
|---|---|---|
| 09:38 | 1 | A.   So what is that exhibit? |
| 09:38 | 2 | Q.   The Swappin' Styles we just talked about, I'm just |
| 09:38 | 3 | asking if that was a Mattel product? |
| 09:38 | 4 | A.   It was. |
| 09:38 | 5 | Q.   So if we look at, then, what you showed the jury |
| 09:38 | 6 | yesterday when you said, "Look, this product seems similar." |
| 09:38 | 7 | I mean, one question is, was the product, quote, "public," |
| 09:38 | 8 | right? |
| 09:38 | 9 | A.   Public means was it in the stores. |
| 09:38 | 10 | Q.   Well, we'll -- we'll talk about that. |
| 09:38 | 11 | And the second was, when did it come out?  Because you |
| 09:38 | 12 | would hold two products up and say, "They came out at about |
| 09:39 | 13 | the same time."  Do you remember that? |
| 09:39 | 14 | A.   Yes. |
| 09:39 | 15 | Q.   And you actually would get NPR data -- I'm sorry -- MGA |
| 09:39 | 16 | would.  I'm sorry -- NPD data which would reflect the first |
| 09:39 | 17 | day that a product came out -- |
| 09:39 | 18 | MS. HURST:  Objection. |
| 09:39 | 19 | BY MR. PRICE: |
| 09:39 | 20 | Q.   -- right? |
| 09:39 | 21 | MS. HURST:  Vague as to time and the receipt of |
| 09:39 | 22 | the data. |
| 09:39 | 23 | THE COURT:  Overruled. |
| 09:39 | 24 | THE WITNESS:  And I don't think NPD data is |
| 09:39 | 25 | accurate on when the date of the product came out. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 09:39 | 1 | BY MR. PRICE: |
| 09:39 | 2 | Q.   Well, you subscribe to the data, right? |
| 09:39 | 3 | A.   Currently, we don't. |
| 09:39 | 4 | Q.   Well, in the 2004/2005/2006/2007 time frame, you paid |
| 09:39 | 5 | for the data, correct? |
| 09:39 | 6 | A.   Well, some years we were -- some years we were shut |
| 09:39 | 7 | down by Mattel. |
| 09:39 | 8 | Q.   In 2004, 2005, 2006, you paid for the data, right? |
| 09:39 | 9 | A.   I don't remember.  Again, one year we were shut down by |
| 09:39 | 10 | Mattel. |
| 09:39 | 11 | Q.   So you were shut down buying data that you didn't think |
| 09:39 | 12 | was useful? |
| 09:39 | 13 | A.   No.  We were just shut down by Mattel. |
| 09:39 | 14 | MR. PRICE:  Your Honor, would this be a good time |
| 09:39 | 15 | for a bathroom break? |
| 09:40 | 16 | THE COURT:  Apparently, it would be. |
| 09:40 | 17 | You're admonished not to discuss this matter |
| 09:40 | 18 | amongst yourselves, nor form or express any opinion |
| 09:40 | 19 | concerning the case. |
| 09:40 | 20 | Have a nice recess. |
| 09:40 | 21 | Why don't we just come and get you right at |
| 09:40 | 22 | 10:00 o'clock. |
| 09:40 | 23 | *(Jury recesses at 9:40 a.m.)* |
| 09:40 | 24 | THE COURT:  Okay.  Counsel, have a nice recess. |
| 09:40 | 25 | *(Recess held at 9:40 a.m.)* |

CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

65

| | | |
|---|---|---|
| 10:02 | 1 | (Proceedings resumed at 10:02 a.m.) |
| 10:02 | 2 | (In the presence of the jury.) |
| 10:03 | 3 | THE COURT:  We're back in session.  The jury's |
| 10:03 | 4 | present.  All counsel are present.  Parties are present. |
| 10:03 | 5 | Mr. Larian's on the witness stand. |
| 10:03 | 6 | We'll continue the cross-examination by Mr. Price |
| 10:03 | 7 | on behalf of Mattel. |
| 10:03 | 8 | **CROSS-EXAMINATION (Continued)** |
| 10:03 | 9 | BY MR. PRICE: |
| 10:03 | 10 | Q.   Mr. Larian, I want to talk to you about some of the |
| 10:03 | 11 | products you showed the jury yesterday, and one of them was |
| 10:03 | 12 | the Bratz Diamond (sic) doll.  I think that's 17527, if we |
| 10:03 | 13 | can show you that. |
| 10:03 | 14 | (Exhibit provided to the witness.) |
| 10:03 | 15 | BY MR. PRICE: |
| 10:03 | 16 | Q.   And that came out when? |
| 10:03 | 17 | A.   I don't remember the exact date.  I don't. |
| 10:03 | 18 | Q.   Was it 2006? |
| 10:03 | 19 | A.   I don't remember the exact date.  Possibly, yes.  Most |
| 10:03 | 20 | likely. |
| 10:03 | 21 | Q.   And you remember that was something which was at the |
| 10:03 | 22 | toy fair in February of 2006? |
| 10:03 | 23 | A.   It would have been, yes. |
| 10:03 | 24 | Q.   Now, you were comparing that to a MyScene Bling Bling, |
| 10:03 | 25 | I think; is that right? |

Case 2:04-cv-09049-DOC-RNB   Document 10288   Filed 03/28/11   Page 66 of 160   Page ID #:312488
CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

66

| | | |
|---|---|---|
| 10:04 | 1 | A.   Yes. |
| 10:04 | 2 | Q.   And when you were -- |
| 10:04 | 3 | A.   Well, there -- |
| 10:04 | 4 | Q.   When you were looking at the Bratz "Diamond," you said |
| 10:04 | 5 | that the big deal for the Bratz Diamond was that it had an |
| 10:04 | 6 | actual, real diamond chip in it.  Do you recall that? |
| 10:04 | 7 | A.   Yes. |
| 10:04 | 8 | Q.   And before you came out with the Bratz "Diamond," the |
| 10:04 | 9 | year before in 2005, uh, MyScene Bling was already on the |
| 10:04 | 10 | market, right? |
| 10:04 | 11 | A.   Not with a -- not with a real, uh... |
| 10:04 | 12 | Q.   Diamond.  We'll get there. |
| 10:04 | 13 | A.   I'm just trying to explain. |
| 10:04 | 14 | Q.   I'm asking you a "yes" or "no" question.  MyScene |
| 10:04 | 15 | Bling, without the diamond, was in the market the year |
| 10:04 | 16 | before? |
| 10:04 | 17 | A.   I believe there was. |
| 10:04 | 18 | Q.   In fact, if you look at 20803 -- |
| 10:04 | 19 | *(Document handed to the witness.)* |
| 10:05 | 20 | BY MR. PRICE: |
| 10:05 | 21 | Q.   -- you see that's an October 21, 2005 e-mail, from you |
| 10:05 | 22 | to Ms. Garcia, correct?  See at the top? |
| 10:05 | 23 | A.   Yes, it is. |
| 10:05 | 24 | MR. PRICE:  Move 20803 into evidence. |
| 10:05 | 25 | THE COURT:  Received. |

| | | |
|---|---|---|
| 10:05 | 1 | *(Exhibit No. 20803 received in evidence.)* |
| 10:05 | 2 | *(Document displayed.)* |
| 10:05 | 3 | BY MR. PRICE: |
| 10:05 | 4 | Q.   And you see it says from you to Ms. Garcia and others. |
| 10:05 | 5 | And there's some attachments that you had.  You say, "Buy |
| 10:05 | 6 | these and review.  Send a set to HK ASAP, please." |
| 10:05 | 7 | Do you see that? |
| 10:05 | 8 | A.   Yes. |
| 10:05 | 9 | Q.   And then at the bottom it says, "MyScene Bling Bling |
| 10:05 | 10 | Barbie doll," correct? |
| 10:05 | 11 | A.   It does. |
| 10:05 | 12 | Q.   So you were instructing Ms. Garcia to buy that and send |
| 10:05 | 13 | it to Hong Kong as soon as she could, correct? |
| 10:05 | 14 | A.   Yes. |
| 10:05 | 15 | Q.   And then in the Decem -- I'm sorry -- in the toy fair |
| 10:05 | 16 | in 2006 you, uh, showed the Bratz with a -- a real diamond |
| 10:06 | 17 | chip, correct? |
| 10:06 | 18 | A.   Yes. |
| 10:06 | 19 | Q.   And you told the world about that.  You told the press. |
| 10:06 | 20 | You issued a press release.  There were articles that yours |
| 10:06 | 21 | was going to have a real diamond chip? |
| 10:06 | 22 | A.   Yes. |
| 10:06 | 23 | Q.   So the world knew in -- in January or February of 2006 |
| 10:06 | 24 | that your version was going to have a real diamond chip? |
| 10:06 | 25 | A.   Yes. |

| | | |
|---|---|---|
| 10:06 | 1 | Q.   So that's not a trade secret at that point, that the -- |
| 10:06 | 2 | what you said was the big deal, having the diamond chip, |
| 10:06 | 3 | that wasn't a trade secret as of the time of the toy fair, |
| 10:06 | 4 | correct? |
| 10:06 | 5 | A.   It was in the press saying "diamond chip," it would not |
| 10:06 | 6 | be.  But I don't think it says "diamond chip."  I don't -- I |
| 10:06 | 7 | don't recall if it says diamond chip. |
| 10:06 | 8 | Q.   But it says a real diamond? |
| 10:06 | 9 | A.   Right. |
| 10:06 | 10 | Q.   So knowing there's a real diamond on your Bratz doll is |
| 10:06 | 11 | not a trade secret as of February 2006, right? |
| 10:06 | 12 | A.   When it was -- if it was made public, no, it was not. |
| 10:06 | 13 | Q.   Your recollection is it was made public, right? |
| 10:07 | 14 | A.   I believe it was, yes. |
| 10:07 | 15 | Q.   If you look at 9879.  Oh, you kept track of what -- of |
| 10:07 | 16 | the publicity for Bratz and what was made public for Bratz, |
| 10:07 | 17 | right? |
| 10:07 | 18 | A.   No, not all of 'em.  It was so much press. |
| 10:07 | 19 | Q.   Well, how about for Bratz "Diamond"?  That's a big |
| 10:07 | 20 | deal.  That's a new product.  That's an innovation. |
| 10:07 | 21 |      You didn't keep track of that? |
| 10:07 | 22 | A.   I don't remember if I did or not.  Most likely I did. |
| 10:07 | 23 | Q.   If you look at 9879, you see that appears to be a |
| 10:07 | 24 | *Reuters* news article? |
| 10:07 | 25 | A.   It is. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:07 | 1 | MR. PRICE:  Your Honor, move 9879 into evidence. |
| 10:07 | 2 | THE COURT:  Received. |
| 10:07 | 3 | *(Exhibit No. 9879 received in evidence.)* |
| 10:07 | 4 | *(Document displayed.)* |
| 10:07 | 5 | MR. PRICE:  If we can blow that up. |
| 10:07 | 6 | BY MR. PRICE: |
| 10:07 | 7 | Q.   You see it's dated February 8, 2006.  "The company's |
| 10:07 | 8 | plans for the autumn also include Bratz Diamond, dolls that |
| 10:07 | 9 | come with a piece of jewelry with a real diamond chip, and |
| 10:08 | 10 | Bratz dolls that can talk." |
| 10:08 | 11 | Do you see that? |
| 10:08 | 12 | A.   Yes. |
| 10:08 | 13 | Q.   And so yesterday you didn't mean to leave the |
| 10:08 | 14 | impression with the jury that this big deal about having the |
| 10:08 | 15 | diamond chip on the doll was a -- a trade secret until the |
| 10:08 | 16 | doll came out?  You didn't mean to leave that impression, |
| 10:08 | 17 | did you? |
| 10:08 | 18 | A.   No. |
| 10:08 | 19 | Q.   Now, how about the other comparisons you made?  Did you |
| 10:08 | 20 | mean to leave the impression that features of those dolls |
| 10:08 | 21 | were trade secrets until the doll came out? |
| 10:08 | 22 | A.   Which dolls are you talking about? |
| 10:08 | 23 | Q.   The ones that you showed the jury yesterday and said |
| 10:08 | 24 | they were your secret information. |
| 10:08 | 25 | A.   Why don't you show it to me, then I tell you. |

| | | |
|---|---|---|
| 10:08 | 1 | Q.   Well, I'm asking you to remember what you did |
| 10:08 | 2 | yesterday.  Do you remember what you did yesterday? |
| 10:08 | 3 | A.   I did. |
| 10:08 | 4 | Q.   Were you trying to convey to the jury that those dolls, |
| 10:08 | 5 | the features of those dolls, were trade secrets until the |
| 10:08 | 6 | doll went to the retail store? |
| 10:08 | 7 | A.   The play value of those, what -- how did they play |
| 10:08 | 8 | with, how did they play, how the marketing plans, |
| 10:08 | 9 | advertising plan, those are all trade secrets. |
| 10:09 | 10 | Q.   I'm talking about the look, the appearance of the doll. |
| 10:09 | 11 | The look and appearance of the doll -- |
| 10:09 | 12 | A.   No, three dimension, you mean, right? |
| 10:09 | 13 | Q.   No.  I mean based on a photograph. |
| 10:09 | 14 | A.   Well, the photograph if it was out, no, but the |
| 10:09 | 15 | three-dimensional toy -- |
| 10:09 | 16 | Q.   Let's -- |
| 10:09 | 17 | A.   -- and how it plays, how it looks. |
| 10:09 | 18 | Q.   Let's break it down. |
| 10:09 | 19 | A.   I'm trying to answer. |
| 10:09 | 20 | Q.   I want to break it down. |
| 10:09 | 21 | MS. HURST:  Can he finish his answer, please? |
| 10:09 | 22 | That was a responsive answer. |
| 10:09 | 23 | THE COURT:  I believe, had you finished your |
| 10:09 | 24 | answer? |
| 10:09 | 25 | THE WITNESS:  I had not. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:09 | 1 | THE COURT:  Finish your answer. |
| 10:09 | 2 | THE WITNESS:  And I forget the question.  Can you |
| 10:09 | 3 | please ask the question? |
| 10:09 | 4 | BY MR. PRICE: |
| 10:09 | 5 | Q.   The look and appearance of the doll, let's say in 2-D, |
| 10:09 | 6 | okay?  By the way, you saw all those toy fair reports, |
| 10:09 | 7 | correct? |
| 10:09 | 8 | A.   I did. |
| 10:09 | 9 | Q.   Okay.  And all of them had pictures of various products |
| 10:09 | 10 | from MGA's catalog, correct? |
| 10:09 | 11 | A.   I don't know how they got those pictures.  Some of them |
| 10:09 | 12 | were from the MGA catalogs, yes. |
| 10:09 | 13 | Q.   Okay.  And your understanding is that -- that those |
| 10:09 | 14 | were, uh, pictures that Mattel, you believe, got because it |
| 10:10 | 15 | had someone go into MGA's showroom posing to be a retailer, |
| 10:10 | 16 | correct? |
| 10:10 | 17 | A.   Well, I know for sure that Mattel had people come with |
| 10:10 | 18 | false ID to MGA showrooms. |
| 10:10 | 19 | Q.   And catalogs -- |
| 10:10 | 20 | A.   And I'm trying to finish answer. |
| 10:10 | 21 | THE COURT:  Just a moment. |
| 10:10 | 22 | Between the two of you, he's going to ask a |
| 10:10 | 23 | question, and you're going to answer directly.  The reason |
| 10:10 | 24 | for that is everybody's on a time clock now.  You can hear |
| 10:10 | 25 | counsel speeding up his questions.  You need to speed up |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:10 | 1 | your answers, and make sure that they're complete. |
| 10:10 | 2 | THE WITNESS:  But he cuts me off. |
| 10:10 | 3 | THE COURT:  Okay. |
| 10:10 | 4 | BY MR. PRICE: |
| 10:10 | 5 | Q.   So my question is, you, MGA, would give out catalogs in |
| 10:10 | 6 | its toy fair showroom, correct? |
| 10:10 | 7 | A.   Yes. |
| 10:10 | 8 | Q.   And those catalogs would have pictures of products, |
| 10:10 | 9 | correct? |
| 10:10 | 10 | A.   Yes. |
| 10:10 | 11 | Q.   Now, you said yesterday you were talking about an |
| 10:10 | 12 | element -- a play element; do you recall that? |
| 10:10 | 13 | A.   Yes. |
| 10:10 | 14 | Q.   Okay.  Now, in the presentations that were made in |
| 10:10 | 15 | Mattel concerning, uh, MGA products -- and let's start with |
| 10:11 | 16 | what was handed out.  You went over that with your counsel |
| 10:11 | 17 | yesterday, right? -- some of those toy fair reports. |
| 10:11 | 18 | A.   Yes. |
| 10:11 | 19 | Q.   And what those reports contain are images and language |
| 10:11 | 20 | from the MGA catalog, correct? |
| 10:11 | 21 | A.   Not all of 'em, but some of 'em, yes. |
| 10:11 | 22 | Q.   And, uh, in those reports, they don't talk about |
| 10:11 | 23 | touching or feeling or play value of any doll except for |
| 10:11 | 24 | what's contained in the catalogs, correct? |
| 10:11 | 25 | A.   In those reports.  But not everything is included in |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:11 | 1 | the catalogs, such as FOB prices. |
| 10:11 | 2 | Q.   We're talking about play value, so let's focus on that. |
| 10:11 | 3 | A.   Okay. |
| 10:11 | 4 | Q.   And then you said you saw video of the presentation, |
| 10:11 | 5 | right? |
| 10:11 | 6 | A.   I did. |
| 10:11 | 7 | Q.   Okay.  So you can then point out to us instances, or at |
| 10:11 | 8 | least one where the person presenting it talked about the |
| 10:11 | 9 | three-dimensional play value of an MGA toy? |
| 10:11 | 10 | A.   I sure can. |
| 10:11 | 11 | Q.   Okay.  So we're gonna have some -- a break, so how many |
| 10:12 | 12 | times did that happen? |
| 10:12 | 13 | A.   At least one. |
| 10:12 | 14 | Q.   So you're saying that over these years there was one |
| 10:12 | 15 | time when someone talked about the play value of the doll in |
| 10:12 | 16 | the report? |
| 10:12 | 17 | MS. HURST:  Objection.  Assumes facts not in |
| 10:12 | 18 | evidence regarding production of the videos from those other |
| 10:12 | 19 | years. |
| 10:12 | 20 | THE COURT:  Overruled. |
| 10:12 | 21 | THE WITNESS:  I only saw two videos.  That's all I |
| 10:12 | 22 | saw. |
| 09:10 | 23 | BY MR. PRICE: |
| 10:12 | 24 | Q.   Okay. |
| 10:12 | 25 | A.   I didn't see all of the other ones. |

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

74

| | | |
|---|---|---|
| 10:12 | 1 | Q.   Okay.  So in the two videos you saw for two years, you |
| 10:12 | 2 | saw one example of someone talking about the play value of |
| 10:12 | 3 | the doll, right? |
| 10:12 | 4 | A.   More than that, yes. |
| 10:12 | 5 | Q.   Well, you said you recalled one.  I'll let you take |
| 10:12 | 6 | your time during a break.  Take all the time you want. |
| 10:12 | 7 | And you -- you understand that people, uh -- by now, |
| 10:12 | 8 | the people who were going into the showrooms were, uh, |
| 10:12 | 9 | researchers like Mr. Villasenor, correct? |
| 10:12 | 10 | A.   They were researchers? |
| 10:12 | 11 | Q.   I mean, that -- they were in the research intelligence |
| 10:12 | 12 | departments, correct?  That's your understanding? |
| 10:13 | 13 | A.   They were in Market Intelligence Department of Mattel. |
| 10:13 | 14 | Q.   So uh, if, however, the catalog was public, then what's |
| 10:13 | 15 | in the catalog would not be trade secret; you agree with |
| 10:13 | 16 | that? |
| 10:13 | 17 | A.   If the catalog was public, yes. |
| 10:13 | 18 | Q.   Now, let's talk about, uh, another example you gave, |
| 10:13 | 19 | which was Bratz Girls Nite Out! and MyScene Day and Night. |
| 10:13 | 20 | And I think Bratz Girls Nite Out! was 18741? |
| 10:13 | 21 | A.   Yes. |
| 10:13 | 22 | *(Exhibit provided to the witness.)* |
| 10:13 | 23 | BY MR. PRICE: |
| 10:13 | 24 | Q.   And that was shown at the toy fair in 2004, correct? |
| 10:13 | 25 | A.   I don't remember the date, but most likely, yes. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

75

| | | |
|---|---|---|
| 10:13 | 1 | Q.   And then there's MyScene Day and Night.  Do you see |
| 10:13 | 2 | that?  That's Exhibit 17379. |
| 10:13 | 3 | THE WITNESS:  I don't see that. |
| 10:13 | 4 | *(Document provided to witness.)* |
| 10:13 | 5 | THE WITNESS:  Oh, okay.  Yes. |
| 10:13 | 6 | BY MR. PRICE: |
| 10:13 | 7 | Q.   And you said those were out at about the same time? |
| 10:13 | 8 | A.   I believe so, yes. |
| 10:13 | 9 | Q.   Well, when you told the jury on all these occasions |
| 10:14 | 10 | that these dolls were out at about the same time, did you |
| 10:14 | 11 | actually go check your records to see if they were? |
| 10:14 | 12 | A.   No.  I -- I -- when products come to the market for new |
| 10:14 | 13 | season, I personally -- like in early August, when they're |
| 10:14 | 14 | setting planograms, I personally go and visit the stores to |
| 10:14 | 15 | see what's out there. |
| 10:14 | 16 | Q.   Okay.  If you look at Exhibit 24603 and you see that is |
| 10:14 | 17 | an MGA Entertainment document, it says, "Sales Invoice."  Do |
| 10:14 | 18 | you see that? |
| 10:14 | 19 | A.   Yes. |
| 10:14 | 20 | Q.   And if you -- |
| 10:14 | 21 | MR. PRICE:  Your Honor, move Exhibit 24603 into |
| 10:14 | 22 | evidence. |
| 10:14 | 23 | THE COURT:  Received. |
| 10:14 | 24 | *(Exhibit No. 24603 received in evidence.)* |
| 10:14 | 25 | *(Document displayed.)* |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

76

| | | |
|---|---|---|
| 10:14 | 1 | BY MR. PRICE: |
| 10:14 | 2 | Q.   And this is an invoice dated December 3, 2003; is that |
| 10:14 | 3 | right? |
| 10:14 | 4 | A.   It appears, yes. |
| 10:15 | 5 | Q.   And if we look at page 3. |
| 10:15 | 6 | (Document provided to the witness.) |
| 10:15 | 7 | (Document displayed.) |
| 10:15 | 8 | THE WITNESS:  Yes. |
| 08:55 | 9 | BY MR. PRICE: |
| 10:15 | 10 | Q.   You see toward the bottom quarter there, there's, uh, |
| 10:15 | 11 | Bratz Girls Nite Out! Cloe, Yasmin, Jade, and Dana.  Do you |
| 10:15 | 12 | see that? |
| 10:15 | 13 | A.   Yes, I do. |
| 10:15 | 14 | Q.   And that is before the toy fair, correct? |
| 10:15 | 15 | A.   That's when we shipped it to Walmart.  Yes.  But that's |
| 10:15 | 16 | not in the Walmart stores yet.  That's correct. |
| 10:15 | 17 | Q.   Well, NPD keeps track of the -- of the, uh, |
| 10:15 | 18 | introduction date of -- of dolls, correct? |
| 10:15 | 19 | A.   They do, but those information is not accurate. |
| 10:15 | 20 | Q.   Well, let's look at 24671. |
| 10:15 | 21 | (Document provided to the witness.) |
| 10:15 | 22 | BY MR. PRICE: |
| 10:15 | 23 | Q.   Look at page 2. |
| 10:15 | 24 | A.   Yes. |
| 10:16 | 25 | Q.   Actually, look at 24671.  That's an MGA -- a document |

DEBBIE GALE, U.S. COURT REPORTER

| 10:16 | 1 | that was produced by MGA, correct? |
| 10:16 | 2 | A.   Looks like it, yes. |
| 10:16 | 3 | Q.   And this is -- appears to be an NPD report? |
| 10:16 | 4 | A.   I don't know what it is.  It didn't say NPD on it. |
| 10:16 | 5 | Q.   Well, it is a report -- it was in MGA's files, correct? |
| 10:16 | 6 | A.   It's MGA-produced.  I don't know what it is. |
| 10:16 | 7 | MR. PRICE:  Your Honor, I'd move 24671 into |
| 10:16 | 8 | evidence. |
| 10:16 | 9 | MS. HURST:  Objection.  Lack foundation.  Hearsay. |
| 10:16 | 10 | THE COURT:  Received. |
| 10:16 | 11 | *(Exhibit No. 24671 received in evidence.)* |
| 10:16 | 12 | *(Document displayed.)* |
| 08:56 | 13 | BY MR. PRICE: |
| 10:16 | 14 | Q.   And you see on page 2, Item 100, it says, "Bratz Girls |
| 10:16 | 15 | Nite Out! on November 2003," under Column D, which is the |
| 10:16 | 16 | intro date.  Do you see that? |
| 10:16 | 17 | A.   I don't see intro date. |
| 10:16 | 18 | Q.   If you look at the first page, it tells you what's |
| 10:16 | 19 | under A, B, C, D, E, F? |
| 10:16 | 20 | A.   Yes, I do see that. |
| 10:16 | 21 | Q.   So under Column D, intro date for Bratz Girls Nite |
| 10:16 | 22 | Out!, it has November 2003, correct? |
| 10:17 | 23 | A.   On this document, yes.  I don't know what this document |
| 10:17 | 24 | is. |
| 10:17 | 25 | Q.   It's just a document MGA has in its files? |

Case 2:04-cv-09049-DOC-RNB   Document 10288   Filed 03/28/11   Page 78 of 160   Page ID #:312500
CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

78

| | | |
|---|---|---|
| 10:17 | 1 | A.    Yes. |
| 10:17 | 2 | Q.    And, uh, you said that -- that for the invoice that |
| 10:17 | 3 | that was, uh, when it was, uh -- not when it was on the |
| 10:17 | 4 | retailers' shelves, but when it was shipped to Walmart? |
| 10:17 | 5 | A.    From that invoice, yes. |
| 10:17 | 6 | Q.    On December 3, 2003, before the toy fair show, correct? |
| 10:17 | 7 | A.    Yes.  From Hong Kong. |
| 10:17 | 8 | Q.    And, uh, you believe that in this time frame your |
| 10:17 | 9 | expectation was that anything that Walmart saw was something |
| 10:17 | 10 | that Mattel would know about.  That was your belief at the |
| 10:17 | 11 | time?  Your expectation? |
| 10:17 | 12 | A.    I don't understand your question. |
| 10:17 | 13 | Q.    Well, we're -- uh, I'm talking about you understand |
| 10:17 | 14 | that -- that for something to be a trade secret, you have to |
| 10:17 | 15 | expect that it will be secret, correct? |
| 10:17 | 16 | A.    Yes. |
| 10:18 | 17 | Q.    And your expectation was that if something is shown to |
| 10:18 | 18 | Walmart, that Mattel will immediately learn about it?  That |
| 10:18 | 19 | was your expectation? |
| 10:18 | 20 | A.    I'm not -- I still don't understand your question. |
| 10:18 | 21 | Q.    Well, let's look at your deposition -- your trial |
| 10:18 | 22 | transcript.  This is February 8, 2011, page 39, let's see, |
| 10:18 | 23 | lines -- hold on one sec.  I believe it's volume -- let me |
| 10:18 | 24 | check.  Just one second.  Didn't realize there were two |
| 10:19 | 25 | volumes.  Let me find out which one. |

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

79

| 10:19 | 1 | Volume III at page 39, February 8, 2011, 39, line 7, to |
| 10:19 | 2 | 40, line 3. |
| 10:19 | 3 | *(Document provided to the witness.)* |
| 10:19 | 4 | THE COURT:  Just a moment. |
| 10:19 | 5 | THE WITNESS:  I'm sorry.  I don't see that in |
| 10:20 | 6 | here. |
| 10:20 | 7 | MS. HURST:  Did you say February 8, Volume III? |
| 10:20 | 8 | MR. PRICE:  February 8, 2011, Larian, Volume III. |
| 10:20 | 9 | MS. HURST:  Volume III is the -- |
| 10:20 | 10 | THE COURT:  Page 39, February 8, lines 39. |
| 10:20 | 11 | MR. PRICE:  7 to 43. |
| 10:20 | 12 | THE COURT:  I'm sorry.  I'm confused. |
| 10:20 | 13 | MR. PRICE:  It's the question and answer. |
| 10:20 | 14 | THE COURT:  Let's start again.  It's page 39. |
| 10:20 | 15 | What line? |
| 10:20 | 16 | MR. PRICE:  39, line 7 until -- |
| 10:20 | 17 | THE COURT:  Just a minute.  Line 7. |
| 10:20 | 18 | MR. PRICE:  To the end of that answer. |
| 10:20 | 19 | THE COURT:  Counsel, what I was handed -- |
| 10:20 | 20 | MR. PRICE:  Is not that -- |
| 10:20 | 21 | THE COURT:  -- has nothing to do with this. |
| 10:21 | 22 | MR. PRICE:  I'll move on while there's a search |
| 10:21 | 23 | for it.  There's a miscite. |
| 10:21 | 24 | BY MR. PRICE: |
| 10:21 | 25 | Q.   Mr. Larian, was it your belief that anything that MGA |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

80

| | | |
|---|---|---|
| 10:21 | 1 | showed to Walmart, that as a matter of practice, as a matter |
| 10:21 | 2 | of your expectation, that Walmart would show to Mattel? |
| 10:21 | 3 | A.   I don't still understand your question. |
| 10:21 | 4 | Q.   Well, you would show stuff to Walmart, correct? |
| 10:21 | 5 | A.   Yes. |
| 10:21 | 6 | Q.   And your expectation, what you believed would happen is |
| 10:21 | 7 | that Walmart would share that with Mattel? |
| 10:21 | 8 | A.   No.  You need to clarify.  I don't still understand |
| 10:21 | 9 | your question. |
| 10:21 | 10 | Q.   Well, you remember earlier in the trial you were |
| 10:21 | 11 | talking about Mattel being a category captain and that if -- |
| 10:21 | 12 | if MGA showed something to Walmart in the fashion doll |
| 10:21 | 13 | category, it was your expectation -- |
| 10:21 | 14 | A.   Yes. |
| 10:21 | 15 | Q.   -- that Walmart would reveal that to Mattel, correct? |
| 10:22 | 16 |        MS. HURST:  Objection.  Misstates the witness's |
| 10:22 | 17 | testimony. |
| 10:22 | 18 | BY MR. PRICE: |
| 10:22 | 19 | Q.   Is that correct recall? |
| 10:22 | 20 |        THE COURT:  Do you recall that? |
| 10:22 | 21 |        THE WITNESS:  I don't recall. |
| | 22 | BY MR. PRICE: |
| 10:22 | 23 | Q.   Is that your belief?  Even if you don't recall your |
| 10:22 | 24 | testimony -- let me finish -- is that your belief that if |
| 10:22 | 25 | MGA shared something with Walmart, that Walmart would share |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

81

| | | |
|---|---|---|
| 10:22 | 1 | that with Mattel if it were saying -- pertained to the |
| 10:22 | 2 | fashion doll category? |
| 10:22 | 3 | A.   I don't know if they do that now or not.  You have to |
| 10:22 | 4 | put a time.  I don't know the answer to that. |
| 10:22 | 5 | Q.   Uh, I'm talking about the time frame here, 2001 to 2006 |
| 10:22 | 6 | time frame. |
| 10:22 | 7 | A.   I can tell you about 2001.  I cannot tell you about |
| 10:22 | 8 | other years. |
| 10:22 | 9 | Q.   If you'd look at -- |
| 10:23 | 10 | MR. PRICE:  Your Honor -- this is February 9, |
| 10:23 | 11 | 2011, Volume I, page 43, lines 2 through 19 -- which I'll |
| 10:23 | 12 | get back to also since I don't... |
| 10:23 | 13 | BY MR. PRICE: |
| 10:23 | 14 | Q.   So we were talking about the -- the intro date for the |
| 10:23 | 15 | Bratz Flashback Fever -- I'm sorry -- for Bratz Girls Nite |
| 10:23 | 16 | Out!, uh, and you say that hit the retail stores in summer |
| 10:23 | 17 | of 2004; is that right? |
| 10:24 | 18 | A.   I don't remember when it hit the stores. |
| 10:24 | 19 | Q.   Well, it was at the New York Toy Fair in 2004.  When |
| 10:24 | 20 | would it have hit the stores? |
| 10:24 | 21 | A.   It would have been August sometime, then, if it was |
| 10:24 | 22 | shipped for Fall. |
| 10:24 | 23 | Q.   And you said that Mattel came out with its MyScene Day |
| 10:24 | 24 | and Night about the same time? |
| 10:24 | 25 | A.   Best of my recollection, yes. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

82

| | | |
|---|---|---|
| 10:24 | 1 | Q.   And what would that be?  When you say "about the same |
| 10:24 | 2 | time," what are you talking about? |
| 10:24 | 3 | A.   If it was -- if that product was for Fall, they came |
| 10:24 | 4 | out with it at the same time for Fall. |
| 10:24 | 5 | Q.   MyScene Day and Night didn't come out in December 2004; |
| 10:24 | 6 | is that right? |
| 10:24 | 7 | A.   I don't remember. |
| 10:24 | 8 | Q.   So you don't remember one day or -- way or another; is |
| 10:24 | 9 | that correct? |
| 10:24 | 10 | A.   I don't. |
| 10:24 | 11 | Q.   If you would look at 24671. |
| 10:24 | 12 | (Document provided to the witness.) |
| 10:24 | 13 | THE WITNESS:  Yes. |
| 10:24 | 14 | BY MR. PRICE: |
| 10:24 | 15 | Q.   And if you'd look at page 2. |
| 10:25 | 16 | (Document displayed.) |
| 10:25 | 17 | BY MR. PRICE: |
| 10:25 | 18 | Q.   And it has Row 75.  You see it says, "MyScene Day and |
| 10:25 | 19 | Night," and it has under Column D, "December 2004." |
| 10:25 | 20 | Do you see that? |
| 10:25 | 21 | A.   I see that. |
| 10:25 | 22 | MS. HURST:  Your Honor, I would like to again |
| 10:25 | 23 | interpose an objection to this document, which is not |
| 10:25 | 24 | identified, not authenticated, and the witness has testified |
| 10:25 | 25 | that NPD data was unreliable.  And it lacks foundation. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:25 | 1 | THE COURT:  Is this NPD data, Counsel, do you |
| 10:25 | 2 | know? |
| 10:25 | 3 | MR. PRICE:  It is NPD data.  It was produced by |
| 10:25 | 4 | MGA.  They paid for it. |
| 10:25 | 5 | THE COURT:  In their files? |
| 10:25 | 6 | MR. PRICE:  Yes. |
| 10:25 | 7 | THE COURT:  Overruled. |
| 10:25 | 8 | BY MR. PRICE: |
| 10:25 | 9 | Q.   And we talked about Bratz Flashback Fever, and that was |
| 10:25 | 10 | 36685 and compared that to MyScene Roller Girls, 36684? |
| 10:25 | 11 | A.   Yes. |
| 10:25 | 12 | Q.   And Bratz Flashback Fever came out in about July 2004, |
| 10:25 | 13 | correct? |
| 10:25 | 14 | *(Document displayed.)* |
| 10:25 | 15 | THE WITNESS:  I don't remember the exact date. |
| | 16 | BY MR. PRICE: |
| 10:25 | 17 | Q.   You said that MS Roller Girls came out about the same |
| 10:26 | 18 | time, correct? |
| 10:26 | 19 | A.   Yes. |
| 10:26 | 20 | Q.   And, in fact, MS Roller Girls came out in December of |
| 10:26 | 21 | 2006? |
| 10:26 | 22 | A.   I don't remember exactly when it came out. |
| 10:26 | 23 | Q.   Okay.  But you kept telling the jury they came out |
| 10:26 | 24 | about the same time.  You're saying -- did you mean within |
| 10:26 | 25 | two years? |

| 10:26 | 1 | A.    No, I was not.  I'm talking about Fall season. |
| 10:26 | 2 | Q.    Well, if you look at Exhibit 24580. |
| 10:26 | 3 | *(Document provided to the witness.)* |
| 10:26 | 4 | THE WITNESS:  Yes. |
| 10:26 | 5 | BY MR. PRICE: |
| 10:26 | 6 | Q.    And you see this is an MGA-produced document.  Do you |
| 10:27 | 7 | see that? |
| 10:27 | 8 | A.    It is. |
| 10:27 | 9 | Q.    Can you tell us what it is? |
| 10:27 | 10 | A.    I don't -- I can't. |
| 10:27 | 11 | Q.    Uh, do you know whose data this is? |
| 10:27 | 12 | A.    I have no idea. |
| 10:27 | 13 | Q.    But it's something that MGA kept in its files as part |
| 10:27 | 14 | of its business practice; is that correct? |
| 10:27 | 15 | A.    Looked like MGA produced it.  I don't know if we kept |
| 10:27 | 16 | it as MGA practice. |
| 10:27 | 17 | MR. PRICE:  I'd move 24580 into evidence. |
| 10:27 | 18 | THE COURT:  Received. |
| 10:27 | 19 | MS. KELLER:  Objection.  Hearsay.  Lacks |
| 10:27 | 20 | foundation.  Lacks authentication. |
| 10:27 | 21 | THE COURT:  Received. |
| 10:27 | 22 | *(Exhibit No. 24580 received in evidence.)* |
| 10:27 | 23 | BY MR. PRICE: |
| 10:27 | 24 | Q.    If you look at page 10. |
| 10:27 | 25 | *(Document displayed.)* |

| | | |
|---|---|---|
| 10:27 | 1 | BY MR. PRICE: |
| 10:27 | 2 | Q.   And on -- I don't -- |
| 10:27 | 3 | *(Document provided to the witness.)* |
| 10:27 | 4 | BY MR. PRICE: |
| 10:27 | 5 | Q.   You see Item 458, is MyScene Barbie, MyScene Roller |
| 10:27 | 6 | Girl ASST.  Do you see that? |
| 10:27 | 7 | A.   I'm sorry, that line again? |
| 10:28 | 8 | Q.   548 *(sic)*. |
| 10:28 | 9 | A.   Yes. |
| 10:28 | 10 | Q.   You see MyScene Barbie, MyScene Roller Girl ASST.  Do |
| 10:28 | 11 | you see that on 458? |
| 10:28 | 12 | A.   Yes, I do. |
| 10:28 | 13 | Q.   Column E says "December 2006," correct? |
| 10:28 | 14 | A.   It does on this document. |
| 10:28 | 15 | Q.   And if you look at the first page, Column E is the |
| 10:28 | 16 | introduction date, correct? |
| 10:28 | 17 | A.   That's what this document says, which I have not seen |
| 10:28 | 18 | or don't know what it is. |
| 10:28 | 19 | Q.   So if this document, which was in MGA's files, is |
| 10:28 | 20 | accurate, then the MyScene Roller Girls came out like a year |
| 10:28 | 21 | and a half -- oh, more than that, uh, a long time -- |
| 10:28 | 22 | July 2004 to December 2006 -- after Bratz Flashback Fever |
| 10:28 | 23 | was on the market? |
| 10:28 | 24 | A.   I don't know if this document is accurate or what it |
| 10:28 | 25 | is. |

| 10:28 | 1 | Q.   You don't know if it's accurate or not, correct? |
| 10:28 | 2 | A.   I don't. |
| 10:28 | 3 | Q.   So you're really not in the position to say -- when you |
| 10:28 | 4 | told the jury yesterday that those items came out at about |
| 10:29 | 5 | the same time, you really don't know? |
| 10:29 | 6 | MS. HURST:  Objection.  Misstates the witness's |
| 10:29 | 7 | testimony. |
| 10:29 | 8 | THE WITNESS:  That is not correct. |
| 10:29 | 9 | THE COURT:  Overruled. |
| 10:29 | 10 | BY MR. PRICE: |
| 10:29 | 11 | Q.   Well, do you know whether or not in this case, where |
| 10:29 | 12 | I've shown you, whether or not, uh, MyScene Roller Girls |
| 10:29 | 13 | came out in December 2006, while Bratz Flashback came out in |
| 10:29 | 14 | July 2004? |
| 10:29 | 15 | MS. HURST:  Objection.  Assumes facts not in |
| 10:29 | 16 | evidence as to showing anything. |
| 10:29 | 17 | THE COURT:  Overruled. |
| 10:29 | 18 | THE WITNESS:  I don't. |
| 10:29 | 19 | BY MR. PRICE: |
| 10:29 | 20 | Q.   Let's talk about the tradeshows. |
| 10:29 | 21 | MR. PRICE:  And do we have -- |
| 10:29 | 22 | Your Honor, now, if we could look at -- I think we |
| 10:29 | 23 | have it for you.  It's February 9, 2011. |
| 10:29 | 24 | THE COURT:  I've forgotten the question now, |
| 10:29 | 25 | Counsel, so you'll have to go back and refresh my |

CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

87

| 10:29 | 1 | recollection. |
| 10:29 | 2 | MR. PRICE:  Sure.  Just want to give you the page |
| 10:30 | 3 | so you have it in front of you.  It's Volume I, page 43, |
| 10:30 | 4 | lines 2 through 19. |
| 10:30 | 5 | *(Document provided to the Court.)* |
| 10:30 | 6 | THE COURT:  And there's no question pending, |
| 10:30 | 7 | Counsel. |
| 10:30 | 8 | MR. PRICE:  I understand. |
| 10:30 | 9 | BY MR. PRICE: |
| 10:30 | 10 | Q.   So Mr. Larian, was it your belief that Mattel was and |
| 10:30 | 11 | is a category captain for Walmart, and therefore, they see |
| 10:30 | 12 | everything -- competitor product, competitor pricing, |
| 10:30 | 13 | competitor packaging -- before it comes to the market? |
| 10:30 | 14 | A.   In 2001 they would. |
| 10:30 | 15 | Q.   Well, didn't you believe that Mattel was and is as of |
| 10:30 | 16 | the date you testified the category captain for Walmart, and |
| 10:31 | 17 | so they see everything -- |
| 10:31 | 18 | A.   In -- |
| 10:31 | 19 | Q.   -- including competitor information?  Isn't that what |
| 10:31 | 20 | your expectation was? |
| 10:31 | 21 | A.   In 2001 it was and it is. |
| 10:31 | 22 | Q.   It was then; is now, right? |
| 10:31 | 23 | MS. HURST:  Objection.  Misstates the witness's |
| 10:31 | 24 | testimony. |
| 10:31 | 25 | THE COURT:  Sustained. |

DEBBIE GALE, U.S. COURT REPORTER

88

| | | |
|---|---|---|
| 10:31 | 1 | BY MR. PRICE: |
| 10:31 | 2 | Q.   Well, is it your testimony that Mattel was and is the |
| 10:31 | 3 | category captain, and they see everything including |
| 10:31 | 4 | competitor information? |
| 10:31 | 5 | MS. HURST:  Objection.  Misstates the witness's |
| 10:31 | 6 | testimony. |
| 10:31 | 7 | THE COURT:  Well, the problem is, Counsel, I don't |
| 10:31 | 8 | have page 42, so I don't know what came before.  I see the |
| 10:31 | 9 | answer on line 11, and I see the answer again all the way |
| 10:31 | 10 | down to line 19, but it's not in context right now. |
| 10:31 | 11 | MR. PRICE:  We'll bring it to you, Your Honor. |
| 10:31 | 12 | THE COURT:  I think it's such valuable time, you |
| 10:31 | 13 | ought to move on.  I think it's becoming unduly consumptive |
| 10:31 | 14 | of time over this point, but it's your time. |
| 10:31 | 15 | MR. PRICE:  I'd rather not use it on this. |
| 10:31 | 16 | THE COURT:  I'll be happy to sit here and read if |
| 10:32 | 17 | you want. |
| 10:32 | 18 | MR. PRICE:  Okay. |
| 10:32 | 19 | BY MR. PRICE: |
| 10:32 | 20 | Q.   Mr. Larian, did you believe that -- that practically |
| 10:32 | 21 | speaking, your experience is that retail -- retailers go |
| 10:32 | 22 | ahead and share the information you give them with other |
| 10:32 | 23 | people in the industry? |
| 10:32 | 24 | A.   They do. |
| 10:32 | 25 | Q.   So that's your expectation at -- at toy fairs.  If you |

| | | |
|---|---|---|
| 10:32 | 1 | share information with retailers, they're going to go ahead |
| 10:32 | 2 | and share it with other people in the industry? |
| 10:32 | 3 | A.   Sometimes they do. |
| 10:32 | 4 | Q.   Well, that's actually your expectation, practically |
| 10:32 | 5 | speaking, correct? |
| 10:32 | 6 | A.   Practically speaking, sometimes they do on certain |
| 10:32 | 7 | products. |
| 10:32 | 8 | Q.   Well, no, I don't -- say sometimes they do.  Your |
| 10:32 | 9 | experience is, practically, the retailers go ahead and share |
| 10:32 | 10 | information from MGA with other people in the industry, |
| 10:32 | 11 | correct? |
| 10:32 | 12 | MS. HURST:  Objection.  Asked and answered. |
| 10:32 | 13 | THE COURT:  Overruled. |
| 10:32 | 14 | MR. PRICE:  Correct. |
| 10:32 | 15 | THE WITNESS:  Yes. |
| 10:32 | 16 | THE COURT:  You can answer one more time, sir. |
| 10:32 | 17 | THE WITNESS:  Yes. |
| 10:32 | 18 | BY MR. PRICE: |
| 10:32 | 19 | Q.   So we're talking about, then, you're at the toy fairs, |
| 10:33 | 20 | and we're talking about your expectation of secrecy.  So |
| 10:33 | 21 | let's talk about, you also understand and know for a fact |
| 10:33 | 22 | that information shown to retailers at toy fairs is not |
| 10:33 | 23 | going to remain secret because you yourself -- MGA gets |
| 10:33 | 24 | information from competitive showrooms from MGA's customers? |
| 10:33 | 25 | A.   I'm sorry, I lost your question. |

| 10:33 | 1 | Q.   Sure.  I mean, one of the reasons you expect -- have |
| 10:33 | 2 | the expectation that retailers will share with other people |
| 10:33 | 3 | in the industry what you show them at toy fair is because |
| 10:33 | 4 | MGA itself has obtained information about competitors by |
| 10:33 | 5 | getting it from retailers who went to toy fairs of |
| 10:33 | 6 | competitors? |
| 10:33 | 7 | MS. HURST:  Objection.  Unintelligible. |
| 10:33 | 8 | THE COURT:  Sustained. |
| 10:33 | 9 | THE WITNESS:  I still don't understand the |
| 10:33 | 10 | question. |
| 10:33 | 11 | THE COURT:  You don't have to answer it, sir. |
| 10:33 | 12 | MR. PRICE:  Sure.  Sure. |
| 10:33 | 13 | BY MR. PRICE: |
| 10:33 | 14 | Q.   MGA itself gets information from competitors' |
| 10:34 | 15 | showrooms, correct? |
| 10:34 | 16 | A.   No. |
| 10:34 | 17 | Q.   Catalogs? |
| 10:34 | 18 | A.   No. |
| 10:34 | 19 | Q.   Price lists? |
| 10:34 | 20 | A.   No. |
| 10:34 | 21 | Q.   2001, was MGA a competitor of Mattel? |
| 10:34 | 22 | A.   Yes. |
| 10:34 | 23 | Q.   Was MGA a competitor of Hasbro? |
| 10:34 | 24 | MS. HURST:  Objection.  Irrelevant. |
| 10:34 | 25 | THE COURT:  Sustained. |

| | | |
|---|---|---|
| 10:34 | 1 | BY MR. PRICE: |
| 10:34 | 2 | Q.   Well, if you'd look at Exhibit 22225. |
| 10:34 | 3 | *(Document provided to the witness.)* |
| 10:34 | 4 | MS. HURST:  I don't have that one. |
| 10:34 | 5 | MR. PRICE:  You do have that one. |
| 10:34 | 6 | THE COURT:  Counsel, we'll move along.  You can go |
| 10:34 | 7 | to the lectern and share. |
| 10:34 | 8 | MR. PRICE:  Pardon? |
| 10:34 | 9 | THE COURT:  That's fine.  Keep moving, Counsel. |
| 10:34 | 10 | Now, ladies and gentlemen, what's happening is |
| 10:34 | 11 | they're running out of time, so you're going to see mass |
| 10:34 | 12 | panic from both MGA and Mattel in a few moments when the |
| 10:34 | 13 | gong hits 120 hours, that's it.  That's the end of the case |
| 10:35 | 14 | for each side. |
| 10:35 | 15 | BY MR. PRICE: |
| 10:35 | 16 | Q.   You see that as a January 13, 2000 e-mail that you sent |
| 10:35 | 17 | to Brady Churches? |
| 10:35 | 18 | MS. HURST:  Your Honor, this is subject to a prior |
| 10:35 | 19 | order on limited scope.  It's irrelevant. |
| 10:35 | 20 | THE COURT:  Yeah.  The -- |
| 10:35 | 21 | MR. PRICE:  This goes to expectations of |
| 10:35 | 22 | confidentiality, Your Honor. |
| 10:35 | 23 | THE COURT:  Well, ladies and gentlemen, would you |
| 10:35 | 24 | excuse us for just one moment.  It's -- my apologies.  It's |
| 10:35 | 25 | my inability that's causing this disruption.  It's certainly |

Case 2:04-cv-09049-DOC-RNB   Document 10288   Filed 03/28/11   Page 92 of 160   Page ID #:312514
CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

92

| | | |
|---|---|---|
| 10:35 | 1 | not either counsel's. |
| 10:35 | 2 | We'll be right back with you. |
| 10:36 | 3 | THE WITNESS:  May I go to the restroom? |
| 10:36 | 4 | THE COURT:  You may go to the restroom. |
| 10:36 | 5 | Mr. Eckert may go to the restroom. |
| 10:36 | 6 | *(Witness steps down.)* |
| 10:36 | 7 | *(Jury recess held at 10:36 a.m.)* |
| 10:36 | 8 | *(Out of the presence of the jury.)* |
| 10:36 | 9 | THE COURT:  Counsel, we're on the record out of |
| 10:36 | 10 | the presence of the jury. |
| 10:36 | 11 | First of all, sit down. |
| 10:36 | 12 | Mattel had previously taken the position and had |
| 10:36 | 13 | adamantly taken the position that they didn't want discovery |
| 10:36 | 14 | concerning other competitive situations.  And I approved |
| 10:36 | 15 | that. |
| 10:36 | 16 | But in light of that, we're not going any further, |
| 10:36 | 17 | Mr. Price, in your cross-examination, thinking the door's |
| 10:36 | 18 | opened or I'm going to reverse that ruling, and we may be |
| 10:36 | 19 | starting all over again. |
| 10:36 | 20 | That was something that Mattel requested.  I |
| 10:36 | 21 | granted that early on, and I repeat, I'm not certain I would |
| 10:36 | 22 | make that same discovery order today.  But having granted |
| 10:36 | 23 | that, then you can't take advantage of it. |
| 10:36 | 24 | MR. PRICE:  Your Honor -- |
| 10:36 | 25 | THE COURT:  Your turn. |

| 10:36 | 1 | MR. PRICE:  If you look at 22225, and we can |
| 10:36 | 2 | redact -- it's Mattel and it lists others.  It is an e-mail |
| 10:36 | 3 | from Mr. Larian to one of his vendors, so he's talking to |
| 10:36 | 4 | one of the retailers. |
| 10:37 | 5 | THE COURT:  If it talks about Hasbro, the answer's |
| 10:37 | 6 | no.  And that's what it does, Counsel.  In that it |
| 10:37 | 7 | specifically mentions Hasbro, and you will not be able to |
| 10:37 | 8 | take advantage of Court's prior discovery order that I |
| 10:37 | 9 | granted on Mattel's part because you didn't wish this to go |
| 10:37 | 10 | any further. |
| 10:37 | 11 | MR. PRICE:  Your Honor, first, they got into |
| 10:37 | 12 | detail of our guy going to other showrooms. |
| 10:37 | 13 | THE COURT:  Yes, they did. |
| 10:37 | 14 | MR. PRICE:  All this -- all this is -- and I'm not |
| 10:37 | 15 | saying this is wrong.  Our whole point is this is what |
| 10:37 | 16 | happens in the industry.  We're not saying it's wrongful |
| 10:37 | 17 | conduct.  We're saying -- |
| 10:37 | 18 | THE COURT:  Are you requesting, do you have any |
| 10:37 | 19 | disagreement, then, that we should lift that discovery order |
| 10:37 | 20 | concerning Mattel?  Why don't we just open up the whole |
| 10:37 | 21 | thing? |
| 10:37 | 22 | MR. PRICE:  Only -- |
| 10:37 | 23 | THE COURT:  All those -- let's get it all out. |
| 10:37 | 24 | MS. HURST:  Your Honor, there's -- |
| 10:37 | 25 | THE COURT:  You think you're in a Court that's not |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:37 | 1 | concerned.  I don't have to finish this case.  I know you'll |
| 10:37 | 2 | find that shocking, but I have no problem starting this case |
| 10:37 | 3 | over again.  So be very careful about what you both ask for. |
| 10:38 | 4 | You're not in a normal Court that fears litigation.  I'm |
| 10:38 | 5 | happy to start all over again. |
| 10:38 | 6 | MS. HURST:  Your Honor -- |
| 10:38 | 7 | THE COURT:  And it will be Wee 3 Friends.  I'm |
| 10:38 | 8 | just going to kid Mr. Eckert and Mr. Larian.  It will be the |
| 10:38 | 9 | judge, Mr. Eckert, and Mr. Larian.  We'll have a new doll, |
| 10:38 | 10 | and it will be called Wee 3 Friends, 'cause we're going to |
| 10:38 | 11 | spend a lot of time together. |
| 10:38 | 12 | You think it out very carefully.  Talk to |
| 10:38 | 13 | Mr. Quinn.  I don't bluff. |
| 10:38 | 14 | MR. PRICE:  I get it.  We can redact this.  It |
| 10:38 | 15 | says Mattel. |
| 10:38 | 16 | THE COURT:  Fine.  Leave it with Mattel.  Now, |
| 10:38 | 17 | that's what I have always expected, quite frankly. |
| 10:38 | 18 | MR. PRICE:  "I need a favor at New York Toy Fair |
| 10:38 | 19 | can you please get me a copy of catalog and price list for |
| 10:38 | 20 | the following companies." |
| 10:38 | 21 | THE COURT:  Fine. |
| 10:38 | 22 | MR. PRICE:  And we'll redact everything except for |
| 10:38 | 23 | Mattel. |
| 10:38 | 24 | THE COURT:  Fine.  I want you to get into the |
| 10:38 | 25 | general practice.  But remember, it was Mattel's position |

Case 2:04-cv-09049-DOC-RNB   Document 10288   Filed 03/28/11   Page 95 of 160   Page ID #:312517
CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

95

| | | |
|---|---|---|
| 10:38 | 1 | that put me in this position.  And if you want to reverse |
| 10:38 | 2 | that, I'm glad to open up all the discovery, but then we're |
| 10:38 | 3 | going to have quite a field day with both sides. |
| 10:38 | 4 | MS. HURST:  Your Honor -- |
| 10:38 | 5 | THE COURT:  Thank you.  I didn't invite your input |
| 10:38 | 6 | right now.  I'm talking to Mr. Price. |
| 10:39 | 7 | MR. PRICE:  And that decision above my pay grade |
| 10:39 | 8 | has been made, so we'll redact everything but Mattel. |
| 10:39 | 9 | THE COURT:  Okay.  Let's get started. |
| 10:39 | 10 | MS. HURST:  I would object to the redaction |
| 10:39 | 11 | because it doesn't solve the problem.  It's also irrelevant |
| 10:39 | 12 | because it's not about MGA's expectation concerning its own |
| 10:39 | 13 | information. |
| 10:39 | 14 | THE COURT:  Counsel, your choice:  You can have it |
| 10:39 | 15 | redacted concerning Hasbro or not, but the document's going |
| 10:39 | 16 | to be received in just a few moments. |
| 10:39 | 17 | MS. KELLER:  Your Honor, if I may, I received an |
| 10:39 | 18 | 8-inch binder from them this morning.  All of these |
| 10:39 | 19 | documents they're cross-examining on, I got for the first |
| 10:39 | 20 | time this morning. |
| 10:39 | 21 | THE COURT:  You did? |
| 10:39 | 22 | MS. HURST:  Yes.  And I have not been objecting, |
| 10:39 | 23 | okay?  But this is one of them. |
| 10:39 | 24 | THE COURT:  Let's do this.  Let's have Mr. Larian |
| 10:39 | 25 | leave the witness stand.  Let's prepare over lunch or |

| | | |
|---|---|---|
| 10:39 | 1 | tomorrow, and he'll come back.  Simple as that. |
| 10:39 | 2 | MS. KELLER:  Well, I would just ask the courtesy |
| 10:39 | 3 | that Mr. Price slow down a little bit, because I'm trying |
| 10:39 | 4 | not to object so we can keep this moving, but we're working |
| 10:39 | 5 | off an 8-inch binder that I got about 20 -- you know, an |
| 10:39 | 6 | hour ago. |
| 10:39 | 7 | THE COURT:  I won't be put in a box as a Court, |
| 10:40 | 8 | because I'm just hearing that for the first time and I'm |
| 10:40 | 9 | sympathetic toward that.  I'm giving you all the options. |
| 10:40 | 10 | Have him step down. |
| 10:40 | 11 | MS. KELLER:  Your Honor, I don't think the remedy |
| 10:40 | 12 | for our late disclosure is that our witness order is |
| 10:40 | 13 | compromised, with all due respect. |
| 10:40 | 14 | THE COURT:  No, I understand that. |
| 10:40 | 15 | MS. HURST:  I mean, I really don't. |
| 10:40 | 16 | THE COURT:  But if we started making a record |
| 10:40 | 17 | about who was late, I understand they've been late on |
| 10:40 | 18 | numerous occasions; in fact, my comments towards you were |
| 10:40 | 19 | overly harsh yesterday in terms of MGA, I think, upon |
| 10:40 | 20 | reflection.  They've been late on many occasions, they had |
| 10:40 | 21 | the majority of their binders prepared, but then we had what |
| 10:40 | 22 | I call last moment dumping. |
| 10:40 | 23 | Your binders weren't prepared quite as far in |
| 10:40 | 24 | advance so it caused the Court to scramble, but last moment |
| 10:40 | 25 | dumping, a little bit. |

Case 2:04-cv-09049-DOC-RNB  Document 10288  Filed 03/28/11  Page 97 of 160  Page ID #:312519
CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

97

| | | |
|---|---|---|
| 10:40 | 1 | This is rather extreme at the last moment that |
| 10:40 | 2 | you're getting these this morning.  I wasn't aware of that. |
| 10:40 | 3 | I didn't have to go home last night, and none of the parties |
| 10:40 | 4 | did.  I asked you specifically if there was anything else, |
| 10:40 | 5 | and we didn't know about it until this morning, so it's not |
| 10:40 | 6 | your fault. |
| 10:40 | 7 | This leaves one of two remedies without quibbling: |
| 10:41 | 8 | I can stop Mr. Larian's testimony and let you be |
| 10:41 | 9 | well-prepared, or you can continue on, 'cause it's catching |
| 10:41 | 10 | me by surprise also.  So I can't make good rulings based |
| 10:41 | 11 | upon this either. |
| 10:41 | 12 | MS. HURST:  Your Honor, we had previously |
| 10:41 | 13 | understood the rule was they just don't get to use the |
| 10:41 | 14 | documents that they didn't disclose, and I think that was |
| 10:41 | 15 | the rule that we had operated under for most of their case. |
| 10:41 | 16 | THE COURT:  That was the rule, and now it seems to |
| 10:41 | 17 | be being abrogated.  But there was a lot of exceptions |
| 10:41 | 18 | created also on MGA's side that Mattel can make a record out |
| 10:41 | 19 | of. |
| 10:41 | 20 | MR. QUINN:  Your Honor, this document they're |
| 10:41 | 21 | making such a fuss over was given to them yesterday morning. |
| 10:41 | 22 | THE COURT:  Okay. |
| 10:41 | 23 | MR. QUINN:  Yesterday morning.  They were given |
| 10:41 | 24 | this binder -- it's about an inch and a half -- this |
| 10:41 | 25 | morning.  I think maybe we've used a couple of documents out |

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

98

| 10:41 | 1 | of it. |
|---|---|---|

10:41  1   of it.

10:41  2            THE COURT:  Were those all the Kohl's documents?

10:41  3            MS. KELLER:  Yeah.  Every one of the Kohl's

10:41  4   documents we got this morning.

10:41  5            THE COURT:  Would that have changed the testimony?

10:41  6            MR. QUINN:  I'm told it's not true.

10:41  7            THE COURT:  Okay.

10:41  8            MR. QUINN:  Two days ago they got the Kohl's

10:42  9   documents.

10:42  10            THE COURT:  Okay.  Let's find out.  We'll spend

10:42  11   our time today arguing over when counsel got the different

10:42  12   documents.

10:42  13            MS. KELLER:  Your Honor, I do think there's a

10:42  14   distinction because if it was a topic that had been

10:42  15   previously allowed and the documents come in late, I think

10:42  16   that's one thing.

10:42  17            THE COURT:  Sure.

10:42  18            MS. KELLER:  But a document that's been previously

10:42  19   excluded and then -- a topic that's been previously excluded

10:42  20   and then the documents come flying in, in the morning,

10:42  21   that's a little different.

10:42  22            THE COURT:  Remember, I'll say to both of you, and

10:42  23   expound to the Circuit, this case would have been over, with

10:42  24   terminal sanctions as to one or both parties.  If I would

10:42  25   have had this case in the beginning, neither one of you had

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

99

| | | |
|---|---|---|
| 10:42 | 1 | been in court.  This case would have ended because of |
| 10:42 | 2 | discovery abuses.  I'll just leave it at that so it's |
| 10:42 | 3 | co-equal for the time being.  I can certainly make a record |
| 10:42 | 4 | for the Circuit.  I think it's very gracious of this Court |
| 10:42 | 5 | that this case is even going to the jury. |
| 10:42 | 6 | MS. HURST:  Your Honor, we'd like to just |
| 10:43 | 7 | continue, but if I may just request, you know, a little more |
| 10:43 | 8 | time to get to the documents in these many volumes, some of |
| 10:43 | 9 | which have been late disclosed.  I don't think that |
| 10:43 | 10 | really -- |
| 10:43 | 11 | THE COURT:  I'll do this.  Why don't I just send |
| 10:43 | 12 | the jury to an early lunch right now for 45 minutes.  Why |
| 10:43 | 13 | don't we sit here and go through those until you're |
| 10:43 | 14 | satisfied and then continue on. |
| 10:43 | 15 | MS. HURST:  I don't think that's necessary, |
| 10:43 | 16 | Your Honor. |
| 10:43 | 17 | THE COURT:  I'm giving you all sorts of remedies, |
| 10:43 | 18 | and every time I give you a remedy, you have a complaint, |
| 10:43 | 19 | both sides. |
| 10:43 | 20 | MR. PRICE:  Your Honor, I will say yesterday |
| 10:43 | 21 | because direct is somewhat restricted, it was tough doing it |
| 10:43 | 22 | quickly, but I did it.  I caught up; they'll catch up. |
| 10:43 | 23 | THE COURT:  Time out.  I hear the complaint.  What |
| 10:43 | 24 | do you want to do? |
| 10:43 | 25 | Okay.  Mr. Price, get out of your chair. |

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

100

| | | |
|---|---|---|
| 10:43 | 1 | Ms. Hurst, get out of your chair. |
| 10:43 | 2 | Go to that lectern, discuss this briefly, and give |
| 10:43 | 3 | me an answer in two seconds. |
| 10:43 | 4 | One thousand one, one thousand two.  What's your |
| 10:43 | 5 | answer?  These are good folks serving from the American jury |
| 10:44 | 6 | system, the public.  They're underpaid.  Harshness.  And |
| 10:44 | 7 | you're quibbling about things like this.  Disgusting. |
| 10:44 | 8 | I want to make sure that's on the record. |
| 10:44 | 9 | All right.  I'm going to bring the jury in and say |
| 10:44 | 10 | both sides are unprepared. |
| 10:44 | 11 | MR. PRICE:  Wait, Your Honor.  I'm going to try to |
| 10:44 | 12 | give her a copy as soon as I use it 'cause we have paper |
| 10:44 | 13 | copies. |
| 10:44 | 14 | MS. HURST:  Your Honor, we do agree we should |
| 10:44 | 15 | continue. |
| 10:44 | 16 | THE COURT:  Bring the jury in. |
| 10:44 | 17 | *(In the presence of the jury.)* |
| 10:44 | 18 | THE COURT:  All right.  Thank you.  The jury's |
| 10:45 | 19 | present, the alternates, all counsel, the parties, the |
| 10:45 | 20 | witness. |
| 10:45 | 21 | Ladies and gentlemen, let me apologize.  That was |
| 10:45 | 22 | strictly my fault. |
| 10:45 | 23 | I was unprepared in this matter, and I just needed |
| 10:45 | 24 | some time with counsel.  It does not reflect poorly on |
| 10:45 | 25 | either Mattel or MGA. |

| 10:45 | 1 | Counsel, if you would like to continue, please. |
| 10:45 | 2 | BY MR. PRICE: |
| 10:45 | 3 | Q.   Mr. Larian, you have Exhibit 22225 in front of you? |
| 10:45 | 4 | A.   I do. |
| 10:45 | 5 | Q.   And that's an e-mail dated January 13, 2000, regarding |
| 10:45 | 6 | the New York Toy Fair, correct? |
| 10:45 | 7 | A.   Yes. |
| 10:45 | 8 | Q.   And, uh, could you tell the jury what Mazel is? |
| 10:45 | 9 | A.   It was a retailer that went out of business. |
| 10:45 | 10 | Q.   It was a retailer which purchased products from MGA? |
| 10:45 | 11 | A.   Yes. |
| 10:45 | 12 | Q.   And you understood at the time that retailers could go |
| 10:45 | 13 | into a competitor's private showroom, correct? |
| 10:45 | 14 | A.   Yes. |
| 10:45 | 15 | Q.   And that in doing that, they would get copies of |
| 10:45 | 16 | catalogs, right? |
| 10:45 | 17 | A.   I don't know if they did or not. |
| 10:45 | 18 | Q.   Well, your experience is retailers came into your |
| 10:46 | 19 | showroom and got copies of catalogs, right? |
| 10:46 | 20 | A.   Retailers -- some retailers got copies of a catalog, |
| 10:46 | 21 | that's right. |
| 10:46 | 22 | Q.   And retailers would go into your showroom and get price |
| 10:46 | 23 | lists, correct? |
| 10:46 | 24 | A.   Some retailers would, yes. |
| 10:46 | 25 | MR. PRICE:  And if we could move, Your Honor, the |

| 10:46 | 1 | redacted version of 22225 into evidence. |
| 10:46 | 2 | THE COURT:  Received. |
| 10:46 | 3 | *(Exhibit No. 22225 received in evidence.)* |
| 10:46 | 4 | MR. PRICE:  Technical difficulties, which will go |
| 10:46 | 5 | against my time. |
| 10:46 | 6 | BY MR. PRICE: |
| 10:46 | 7 | Q.   Mr. Larian, let me ask you about this, and we'll put it |
| 10:46 | 8 | up as soon as technical difficulties are resolved. |
| 10:46 | 9 | Brady Churches, was, uh -- what was his position at |
| 10:46 | 10 | Mazel? |
| 10:46 | 11 | A.   I don't remember.  It's ten years ago.  Over 11 years |
| 10:46 | 12 | ago. |
| 10:46 | 13 | Q.   And you write to him, "Dear Brady, hope you have a safe |
| 10:46 | 14 | trip home, and thank you for your business and support." |
| 10:47 | 15 | Do you see that? |
| 10:47 | 16 | A.   Yes. |
| 10:47 | 17 | Q.   And then you say, "I need a favor.  At New York Toy |
| 10:47 | 18 | Fair, can you please get me a copy of catalog and price |
| 10:47 | 19 | lists for following companies."  And do you see that |
| 10:47 | 20 | underneath that Mattel is mentioned? |
| 10:47 | 21 | A.   It is. |
| 10:47 | 22 | Q.   Now, I'd like you to look at Exhibit 9344. |
| 10:47 | 23 | MR. PRICE:  Which will be similarly redacted, |
| 10:47 | 24 | Your Honor. |
| 10:47 | 25 | Okay.  Actually, let's put up the redacted version |

| | | |
|---|---|---|
| 10:47 | 1 | of 22225.  If you could put up a copy -- put that up on the |
| 10:48 | 2 | screen, Ken. |
| 10:48 | 3 | *(Document displayed.)* |
| 10:48 | 4 | BY MR. PRICE: |
| 10:48 | 5 | Q.   So this is the e-mail we were talking about January 13, |
| 10:48 | 6 | 2000, where you say, "I need a favor at New York Toy Fair. |
| 10:48 | 7 | Can you please get me a copy of catalog and price lists for |
| 10:48 | 8 | the following companies," and then you mention Mattel here, |
| 10:48 | 9 | correct? |
| 10:48 | 10 | A.   Yes. |
| 10:48 | 11 | Q.   Now, you've previously told the jury that, uh, those |
| 10:48 | 12 | catalogs and those toy show -- toy fair showrooms are |
| 10:48 | 13 | secret? |
| 10:48 | 14 | A.   They are. |
| 10:48 | 15 | Q.   And that those price lists are secret, right? |
| 10:48 | 16 | A.   They are. |
| 10:48 | 17 | Q.   But you've also told the jury that you have the |
| 10:48 | 18 | expectation that retailers are gonna share those with other |
| 10:48 | 19 | people in the industry, right? |
| 10:48 | 20 | A.   I said retailers talk about the product, and we never |
| 10:48 | 21 | got Mattel price list or catalog. |
| 10:48 | 22 | Q.   You -- you told the jury that you expect retailers to |
| 10:49 | 23 | talk? |
| 10:49 | 24 | MS. HURST:  Your Honor, I object to the form of |
| 10:49 | 25 | the question "told the jury" as argumentative. |

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

104

| | | |
|---|---|---|
| 10:49 | 1 | THE COURT:  Sustained.  Stricken. |
| 10:49 | 2 | BY MR. PRICE: |
| 10:49 | 3 | Q.   Uh, in any event, in January 13, 2000, you were asking |
| 10:49 | 4 | your retailer -- one of your retailers to get catalog and |
| 10:49 | 5 | price lists for the following companies, and Mattel is |
| 10:49 | 6 | listed there, correct? |
| 10:49 | 7 | A.   Yes. |
| 10:49 | 8 | Q.   And you thought that that was a perfectly appropriate |
| 10:49 | 9 | request of a retailer going into a competitor's showroom at |
| 10:49 | 10 | toy fair? |
| 10:49 | 11 | A.   I don't recall my state of mind in 2000.  I don't |
| 10:49 | 12 | recall. |
| 10:49 | 13 | Q.   Well, do you think you would have done something that |
| 10:49 | 14 | you thought was sneaky and improper and unethical or |
| 10:49 | 15 | illegal? |
| 10:49 | 16 | A.   Like what?  Going to Mattel showroom with a fake ID and |
| 10:49 | 17 | a fake business card?  That's unethical? |
| 10:49 | 18 | Q.   No.  I mean, asking a retailer who worked with you to |
| 10:49 | 19 | go into a competitor's showroom and -- and bring to you that |
| 10:49 | 20 | competitor's catalog and price list.  I mean, did you |
| 10:50 | 21 | think -- would you have asked that if you thought it was |
| 10:50 | 22 | illegal, unethical, improper? |
| 10:50 | 23 | MS. KELLER:  Objection.  Assumes facts not in |
| 10:50 | 24 | evidence that's what was requested. |
| 10:50 | 25 | THE WITNESS:  I'm not asking him to go to Mattel's |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:50 | 1 | showroom and get that information.  I don't see that |
| 10:50 | 2 | anywhere in here. |
| 10:50 | 3 | BY MR. PRICE: |
| 10:50 | 4 | Q.   Oh, I thought you said price lists were those secret |
| 10:50 | 5 | things that you would only give out to retailers in the |
| 10:50 | 6 | private showrooms? |
| 10:50 | 7 | A.   We do. |
| 10:50 | 8 | Q.   Okay.  So here the e-mail's about New York Toy Fair, |
| 10:50 | 9 | right? |
| 10:50 | 10 | A.   Yes. |
| 10:50 | 11 | Q.   You're talking about price lists, which you would |
| 10:50 | 12 | expect only to be in the private showroom, correct? |
| 10:50 | 13 | A.   Or otherwise.  I don't know at that time. |
| 10:50 | 14 | Q.   Mr. Larian, you just don't want to admit that you |
| 10:50 | 15 | expect that things that go on in these toy fair showrooms |
| 10:50 | 16 | are gonna be told to the rest of the industry; you just |
| 10:50 | 17 | don't want to admit that, do you? |
| 10:50 | 18 |         MS. HURST:  Object to the form. |
| 10:50 | 19 |         THE COURT:  Sustained. |
| 10:50 | 20 | BY MR. PRICE: |
| 10:50 | 21 | Q.   Well, when you say, "get me a copy of catalog and price |
| 10:51 | 22 | lists for the following companies:  Mattel," did you think |
| 10:51 | 23 | you were using a retailer to steal trade secrets? |
| 10:51 | 24 | A.   No. |
| 10:51 | 25 | Q.   And if you'd look at Exhibit 9344. |

CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

106

| | | |
|---|---|---|
| 10:51 | 1 | *(Document provided to the witness.)* |
| 10:51 | 2 | BY MR. PRICE: |
| 10:51 | 3 | Q.   You see that that, produced by MGA, appear to be the |
| 10:51 | 4 | New York U.S. appointments for February of 2000 for the |
| 10:51 | 5 | New York Toy Fair? |
| 10:51 | 6 | A.   Yes. |
| 10:51 | 7 | MR. PRICE:  Uh, move redacted version of 9344 into |
| 10:52 | 8 | evidence, Your Honor. |
| 10:52 | 9 | THE COURT:  Received. |
| 10:52 | 10 | *(Exhibit No. 9344 received in evidence.)* |
| 10:52 | 11 | *(Document displayed.)* |
| 10:52 | 12 | BY MR. PRICE: |
| 10:52 | 13 | Q.   And you see on the third page there's a list and -- |
| 10:52 | 14 | MS. HURST:  Objection, Your Honor.  Prior order. |
| 10:52 | 15 | There's no reference here to Mattel. |
| 10:52 | 16 | MR. PRICE:  I'm gonna ask him whether the last |
| 10:52 | 17 | thing there is Mattel or not. |
| 10:52 | 18 | THE COURT:  I don't have the document, Counsel. |
| 10:52 | 19 | MR. PRICE:  Oh. |
| 10:52 | 20 | THE COURT:  We're going to have a continuing |
| 10:52 | 21 | series -- I'll need to get those documents up to me |
| 10:52 | 22 | apparently seriatim, because I can't get to the books fast |
| 10:52 | 23 | enough. |
| 10:52 | 24 | *(Document provided to the Court.)* |
| 10:52 | 25 | THE COURT:  And I don't know what I'm looking at, |

CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

107

| 10:52 | 1 | Counsel, which one? |
| 10:52 | 2 | MR. PRICE:  It's the third -- it's the third page, |
| 10:52 | 3 | Your Honor. |
| 10:52 | 4 | THE COURT:  Of? |
| 10:52 | 5 | MR. PRICE:  Of 934- -- |
| 10:52 | 6 | THE COURT:  What I was handed is four pages of -- |
| 10:52 | 7 | MR. PRICE:  It appears to be their sign-in sheets |
| 10:52 | 8 | for the New York Toy Fair. |
| 10:52 | 9 | THE COURT:  Just a moment.  So is it 9344, page -- |
| 10:53 | 10 | MR. PRICE:  Page 3. |
| 10:53 | 11 | THE COURT:  -- page 3.  Thank you.  And the names |
| 10:53 | 12 | here?  (Indicating.) |
| 10:53 | 13 | MR. PRICE:  Yes.  And we'll redact all but the |
| 10:53 | 14 | bottom one. |
| 10:53 | 15 | MS. HURST:  Your Honor -- |
| 10:53 | 16 | THE COURT:  I don't understand.  I apologize. |
| 10:53 | 17 | MR. PRICE:  Let me try to put it in context. |
| 10:53 | 18 | BY MR. PRICE: |
| 10:53 | 19 | Q.   Mr. Larian, you have 22225 in front of you, which is |
| 10:53 | 20 | your January 13 e-mail, correct? |
| 10:53 | 21 | A.   No, I don't. |
| 10:53 | 22 | THE COURT:  Well, I understand that, but I don't |
| 10:53 | 23 | see how you -- |
| 10:53 | 24 | MR. PRICE:  Okay. |
| 10:53 | 25 | (Document provided to the witness.) |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

108

| | | |
|---|---|---|
| 10:53 | 1 | BY MR. PRICE: |
| 10:53 | 2 | Q.   Well, I'll ask it this way.  If you'd compare that to |
| 10:53 | 3 | 9344-0003? |
| 10:53 | 4 | A.   Yes. |
| 10:53 | 5 | Q.   My question for you:  Does what you see in 9344-0003 |
| 10:53 | 6 | relate to Mattel? |
| 10:53 | 7 | A.   No. |
| 10:54 | 8 | Q.   So let me show you now what is 9533, which is already |
| 10:54 | 9 | into evidence. |
| 10:54 | 10 | MS. HURST:  Can I object and move to strike that |
| 10:54 | 11 | 9344, Your Honor? |
| 10:54 | 12 | THE COURT:  Strike it, Counsel.  Strike the |
| 10:54 | 13 | question and the answer. |
| 10:54 | 14 | BY MR. PRICE: |
| 10:54 | 15 | Q.   This is now 9533.  This is already in evidence. |
| 10:54 | 16 | *(Document displayed.)* |
| 10:54 | 17 | BY MR. PRICE: |
| 10:54 | 18 | Q.   You see this is a February 3, 2007 e-mail from Angelika |
| 10:54 | 19 | Sternberg? |
| 10:54 | 20 | A.   Yes, yes, it is. |
| 10:54 | 21 | Q.   And she worked in your office in Germany, correct? |
| 10:54 | 22 | A.   Yes, she did. |
| 10:54 | 23 | Q.   In fact, if you look at Exhibit 24748 -- |
| 10:54 | 24 | *(Document provided to the witness.)* |
| | 25 | |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

109

| | | |
|---|---|---|
| 10:54 | 1 | BY MR. PRICE: |
| 10:54 | 2 | Q.   -- do you see that's an organizational chart of your |
| 10:54 | 3 | operation in Germany? |
| 10:54 | 4 | A.   No. |
| 10:54 | 5 | Q.   What is it? |
| 10:54 | 6 | A.   It's a B box. |
| 10:55 | 7 | Q.   Ah, 24748. |
| 10:55 | 8 | *(Document provided to the witness.)* |
| 10:55 | 9 | BY MR. PRICE: |
| 10:55 | 10 | Q.   Sorry.  I mean, that's a document which talks about MGA |
| 10:55 | 11 | Germany taken from MGA's files, correct? |
| 10:55 | 12 | A.   Yeah, looks like it. |
| 10:55 | 13 | MR. PRICE:  Move 24748 into evidence, Your Honor. |
| 10:55 | 14 | THE COURT:  Received. |
| 10:55 | 15 | *(Exhibit No. 24748 received in evidence.)* |
| 10:55 | 16 | *(Document displayed.)* |
| 10:55 | 17 | BY MR. PRICE: |
| 10:55 | 18 | Q.   If we look at the second page of this. |
| 10:55 | 19 | *(Document displayed.)* |
| 10:55 | 20 | BY MR. PRICE: |
| 10:55 | 21 | Q.   You see there's an organization chart, and Angelika |
| 10:55 | 22 | Sternberg is the marketing director.  Do you see that? |
| 10:56 | 23 | A.   Yes. |
| 10:56 | 24 | Q.   So let's go back to Exhibit 9533.  Uh, this is, then, |
| 10:56 | 25 | the e-mail from your marketing director in Germany to you; |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:56 | 1 | also to Ron Brawer, Paula Garcia, and Thomas Pfau: |
| 10:56 | 2 | "Dear Isaac, we have some news for you which we heard |
| 10:56 | 3 | from customers regarding Get Connected Barbie." |
| 10:56 | 4 | Do you see that? |
| 10:56 | 5 | A.   I do. |
| 10:56 | 6 | Q.   And by customers you understand you're talking about |
| 10:56 | 7 | the retailers of MGA, correct? |
| 10:56 | 8 | A.   I believe she is, yes. |
| 10:56 | 9 | Q.   They show it as a "TOP SECRET," all caps, "theme in a |
| 10:56 | 10 | closed room at toy fair." |
| 10:56 | 11 | Do you see that? |
| 10:56 | 12 | A.   Yes. |
| 10:56 | 13 | Q.   And so when you got this, you understood that -- that |
| 10:56 | 14 | this was information MGA had gotten from retailers who had |
| 10:56 | 15 | attended a top secret closed room at the Nuremberg Toy Fair, |
| 10:56 | 16 | correct? |
| 10:56 | 17 | A.   No.  I -- I read this as she said, "We have some news |
| 10:56 | 18 | for you which we heard from a customer regarding Get |
| 10:57 | 19 | Connected Barbie.  They show it as TOP SECRET theme in |
| 10:57 | 20 | closed room for -- at toy fair."  That's what she's talking |
| 10:57 | 21 | about. |
| 10:57 | 22 | Q.   And do you understand that to mean that you got |
| 10:57 | 23 | information from a retailer, a customer, about Get Connected |
| 10:57 | 24 | Barbie that was shown at a top street theme -- |
| 10:57 | 25 | A.   Yes. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:57 | 1 | Q.    -- in a closed room at toy fair? |
| 10:57 | 2 | A.    Yes. |
| 10:57 | 3 | Q.    So you understood as -- the retailer went into Mattel's |
| 10:57 | 4 | closed room at the toy fair at Nuremberg and was relaying |
| 10:57 | 5 | this information to MGA Germany? |
| 10:57 | 6 | A.    Yes. |
| 10:57 | 7 | Q.    And it talks about the retail price point.  Do you see |
| 10:57 | 8 | that? |
| 10:57 | 9 | A.    Yes.  Retail price point. |
| 10:57 | 10 | Q.    And then it talks about the main theme and the |
| 10:57 | 11 | storyline.  Do you see that? |
| 10:57 | 12 | A.    Yes. |
| 10:57 | 13 | Q.    And it talks about, "We furthermore heard that they are |
| 10:57 | 14 | coming with a new big Barbie house and an airplane and Polly |
| 10:57 | 15 | Pocket.  There introducing, again, high-priced accessories, |
| 10:58 | 16 | correct? |
| 10:58 | 17 | A.    Yes. |
| 10:58 | 18 | Q.    And this -- this e-mail didn't surprise you, did it? |
| 10:58 | 19 | A.    I'm sorry? |
| 10:58 | 20 | Q.    This e-mail did not surprise you, did it? |
| 10:58 | 21 | A.    I don't recall this e-mail. |
| 10:58 | 22 | Q.    Well, uh, did you, uh, discipline, uh, Ms. Sternberg |
| 10:58 | 23 | for relaying to you information that was Mattel's top |
| 10:58 | 24 | secret, uh -- closed room at toy fair? |
| 10:58 | 25 | A.    That she got from a customer?  No, I did not. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:58 | 1 | Q.    And -- and there would be no reason for you to |
| 10:58 | 2 | discipline Ms. Sternberg for getting this sort of |
| 10:58 | 3 | information from a retailer, uh, that went to one of |
| 10:58 | 4 | Mattel's closed showrooms, correct? |
| 10:58 | 5 | A.    That's correct. |
| 10:58 | 6 | Q.    And -- and, in fact, you expect retailers share this |
| 10:58 | 7 | kind of information with manufacturers, correct? |
| 10:58 | 8 | A.    It did.  And the retail price, not the wholesale price. |
| 10:58 | 9 | Q.    Well, you expect the kind of information that's -- |
| 10:58 | 10 | we'll just say restricted to this Exhibit 9533 -- that's the |
| 10:58 | 11 | kind of information that retailers will share with other |
| 10:59 | 12 | manufacturers, right? |
| 10:59 | 13 | A.    They did in this occasion. |
| 10:59 | 14 | Q.    And you weren't surprised by that 'cause that's the |
| 10:59 | 15 | kind of thing that happens, right? |
| 10:59 | 16 | A.    Yes. |
| 10:59 | 17 | Q.    And then, if we look at 9539 -- you see 9533 is dated |
| 10:59 | 18 | February 3rd, 2007.  So let's look at 9539. |
| 10:59 | 19 | *(Document provided to the witness.)* |
| 10:59 | 20 | BY MR. PRICE: |
| 10:59 | 21 | Q.    And do you see the -- the bottom e-mail there is from |
| 10:59 | 22 | Petra Koehler to you, also dated February 3, 2007. |
| 10:59 | 23 | A.    Yes. |
| 10:59 | 24 | MR. PRICE:  Move 9539 into evidence, Your Honor. |
| 10:59 | 25 | THE COURT:  Received. |

CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

113

| | | |
|---|---|---|
| 10:59 | 1 | *(Exhibit No. 9539 received in evidence.)* |
| 10:59 | 2 | *(Document displayed.)* |
| 10:59 | 3 | BY MR. PRICE: |
| 10:59 | 4 | Q.   And if we look at the bottom there, it says -- at the |
| 10:59 | 5 | bottom, it says, "Subject:  Toy fair."  Right?  "Isaac, some |
| 10:59 | 6 | more information on the main Barbie themes."  And then it |
| 10:59 | 7 | describes Island Barbie.  Do you see that? |
| 10:59 | 8 | A.   Yes. |
| 10:59 | 9 | Q.   And Get Connected Barbie.  You see that? |
| 10:59 | 10 | A.   Yes. |
| 10:59 | 11 | Q.   And then MyScene, with it being a MyScene doll on |
| 11:00 | 12 | roller skates.  You see that? |
| 11:00 | 13 | A.   Yes. |
| 11:00 | 14 | Q.   And this was a follow-up to the letter we just looked |
| 11:00 | 15 | at concerning getting information from retailers from |
| 11:00 | 16 | Mattel's private showroom, correct? |
| 11:00 | 17 | A.   I don't know if it was or not. |
| 11:00 | 18 | Q.   Well, it says, "Some more information."  Do you see |
| 11:00 | 19 | that? |
| 11:00 | 20 | A.   It does. |
| 11:00 | 21 | Q.   And then at the top, it's from Ron Brawer.  That's the |
| 11:00 | 22 | either president or vice president of sales at this time? |
| 11:00 | 23 | A.   Yes. |
| 11:00 | 24 | Q.   And he sends back a response, "Very helpful, danke |
| 11:00 | 25 | schön," correct? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

114

| | | |
|---|---|---|
| 11:00 | 1 | A.   He does. |
| 11:00 | 2 | Q.   And then, if we go the year after that to 2008, I'd |
| 11:00 | 3 | like you to look at 9854. |
| 11:00 | 4 | *(Document provided to the witness.)* |
| 11:00 | 5 | THE WITNESS:  Yes. |
| 11:00 | 6 | BY MR. PRICE: |
| 11:00 | 7 | Q.   And you recognize that as an e-mail to, among others, |
| 11:00 | 8 | you from Ms. Sternberg in February 2008? |
| 11:00 | 9 | A.   Yes. |
| 11:00 | 10 | MR. PRICE:  Uh, 9854 into evidence, Your Honor. |
| 11:01 | 11 | May already be, actually. |
| 11:01 | 12 | THE COURT:  Received. |
| 11:01 | 13 | MS. HURST:  It's already in. |
| 11:01 | 14 | *(Exhibit No. 9854 received in evidence.)* |
| 11:01 | 15 | *(Document displayed.)* |
| 11:01 | 16 | BY MR. PRICE: |
| 11:01 | 17 | Q.   You see there's a thing that says, "Two of our |
| 11:01 | 18 | colleagues have been able to enter the booth of our |
| 11:01 | 19 | competitor and wrote the attached report." |
| 11:01 | 20 | Do you see that? |
| 11:01 | 21 | A.   I do. |
| 11:01 | 22 | Q.   And this is Nuremberg Toy Fair, which you said was for |
| 11:01 | 23 | all for the major manufacturers, these closed showrooms, |
| 11:01 | 24 | correct? |
| 11:01 | 25 | A.   Yes. |

DEBBIE GALE, U.S. COURT REPORTER

| 11:01 | 1 | Q.   And when she says, "two of our colleagues," if you look |
| 11:01 | 2 | at the page 3 here, it says 9854-0003.  Do you see that? |
| 11:01 | 3 | A.   I do. |
| 11:01 | 4 | Q.   And there's, uh -- at the bottom of that it says, |
| 11:01 | 5 | "Kerstin and Katharina."  Do you see that? |
| 11:01 | 6 | A.   I do. |
| 11:01 | 7 | Q.   If we look back at your Germany organizational chart, |
| 11:01 | 8 | 24748, and look at page 2. |
| 11:01 | 9 |          MR. PRICE:  Just put that up on the screen. |
| 11:01 | 10 |          (Document displayed.) |
| 11:01 | 11 | BY MR. PRICE: |
| 11:01 | 12 | Q.   You see that the assistant to the managing director was |
| 11:02 | 13 | Kerstin Stumpf-Trautman.  Do you see that? |
| 11:02 | 14 | A.   Yes. |
| 11:02 | 15 | Q.   And your understanding that the colleagues -- one of |
| 11:02 | 16 | the colleagues referred to here was the assistant to the |
| 11:02 | 17 | managing director, correct? |
| 11:02 | 18 | A.   I don't know.  Probably. |
| 11:02 | 19 | Q.   And if we look at the first page, again it says, "from |
| 11:02 | 20 | the booth of our competitor," but we knew that you |
| 11:02 | 21 | understood what had happened is that one of your employees |
| 11:02 | 22 | had gone into Mattel's private booth -- Mattel was the |
| 11:02 | 23 | competitor, correct? |
| 11:02 | 24 | A.   Yes. |
| 11:02 | 25 | Q.   And if you look at the next page it says, "report," |

116

| | | |
|---|---|---|
| 11:02 | 1 | quote, 'MM' booth, Nuremberg Toy Fair 2008, October 2, |
| 11:02 | 2 | 2008."  And you see there's a whole list of -- of -- |
| 11:02 | 3 | describing the, um, Barbie Cruisers and Barbie Talk To Me, |
| 11:03 | 4 | and hairstyles and MyScene.  Do you see that? |
| 11:03 | 5 | A.   I do. |
| 11:03 | 6 | Q.   Uh, under MyScene, for example, on page 3 it says, |
| 11:03 | 7 | "Egyptian theme, winter theme, eye-catching packaging."  Do |
| 11:03 | 8 | you see that? |
| 11:03 | 9 | A.   Yes. |
| 11:03 | 10 | Q.   Now, did you, uh, discipline uh, Kerstin for -- for |
| 11:03 | 11 | going into Mattel's private showroom? |
| 11:03 | 12 | A.   I don't know if Kerstin went into private showroom.  I |
| 11:03 | 13 | see her name here.  And, no, I did not discipline her. |
| 11:03 | 14 | Q.   Well, did you investigate to see if Kerstin was the |
| 11:03 | 15 | colleague that had gone into the private showroom? |
| 11:03 | 16 | A.   No. |
| 11:03 | 17 | Q.   And when you received this information, 9854, you |
| 11:03 | 18 | weren't surprised, were you? |
| 11:03 | 19 | A.   I don't remember if I was surprised or not. |
| 11:03 | 20 | Q.   I mean, this is the kind of thing, again, that would |
| 11:04 | 21 | not surprise you that -- that that information in enclosed |
| 11:04 | 22 | toy fair showrooms would make its way to a competitor? |
| 11:04 | 23 | MS. HURST:  Objection.  Misstates the testimony. |
| 11:04 | 24 | Misstates the document. |
| 11:04 | 25 | THE COURT:  Overruled. |

DEBBIE GALE, U.S. COURT REPORTER

| 11:04 | 1 | THE WITNESS: I don't know how she got into that |
|---|---|---|

11:04   1        THE WITNESS:  I don't know how she got into that

11:04   2    showroom, so I need to know more circumstances before I can

11:04   3    answer that question.

11:04   4    BY MR. PRICE:

11:04   5    Q.   So you got this and you didn't even investigate.  Got

11:04   6    this and didn't even investigate how they got in the

11:04   7    showroom, correct?

11:04   8    A.   I did not at the time, no.

11:04   9    Q.   So when you told the jury that no one --

11:04  10        MS. HURST:  Object to the form.  "Told the jury."

11:04  11        MR. PRICE:  Let me phrase.

11:04  12        THE COURT:  Sustained.

11:04  13    BY MR. PRICE:

11:04  14    Q.   When you said yesterday that no one from MGA had ever

11:04  15    used fake credentials or pretended to be the press to get

11:04  16    into a showroom, when you said that, you had no idea as to

11:04  17    how your colleagues in Nuremberg got into Mattel's closed

11:05  18    showroom, correct?

11:05  19    A.   Today, I know how they got into that showroom.  I am

11:05  20    one million percent sure they didn't use fake ID to get into

11:05  21    Mattel's showroom.

11:05  22    Q.   I thought you just said seconds ago that you didn't

11:05  23    know how they got into the showroom?

11:05  24    A.   I said at the time.

11:05  25    Q.   And at the time you didn't care enough to ask -- well,

| | | |
|---|---|---|
| 11:05 | 1 | let me rephrase that.  Not fair. |
| 11:05 | 2 | At the time you didn't think it was necessary to ask? |
| 11:05 | 3 | A.   I don't even remember this e-mail at the time, and so I |
| 11:05 | 4 | did not at the time.  But I have since. |
| 11:05 | 5 | Q.   Okay.  Well, let's look at Exhibit 9539. |
| 11:05 | 6 | (Document provided to the witness.) |
| 11:05 | 7 | THE WITNESS:  Yes. |
| 11:05 | 8 | BY MR. PRICE: |
| 11:05 | 9 | Q.   I'm sorry.  I think we already went through that one. |
| 11:05 | 10 | MR. PRICE:  Let's show 9528. |
| 11:05 | 11 | (Document provided to the witness.) |
| 11:06 | 12 | MS. HURST:  Your Honor, I believe this one was |
| 11:06 | 13 | specifically excluded previously. |
| 11:06 | 14 | MR. PRICE:  This was part of -- |
| 11:06 | 15 | MS. HURST:  Was this part of our stipulation? |
| 11:06 | 16 | MR. PRICE:  Yes. |
| 11:06 | 17 | MS. HURST:  My apologies, Your Honor, I withdraw. |
| 11:06 | 18 | I withdraw. |
| 11:06 | 19 | BY MR. PRICE: |
| 11:06 | 20 | Q.   And 9528 is an e-mail? |
| 11:06 | 21 | THE COURT:  I think you're absolutely right, |
| 11:06 | 22 | Counsel, concerning the second line from the top, beginning, |
| 11:06 | 23 | "Speedy also writes." |
| 11:06 | 24 | MS. HURST:  It was the stipulation, Your Honor.  I |
| 11:06 | 25 | need to withdraw. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

119

| 11:06 | 1 | THE COURT:  All right. |
| 11:06 | 2 | BY MR. PRICE: |
| 11:06 | 3 | Q.   Mr. Larian, this is an e-mail you got January 31, 2005, |
| 11:06 | 4 | correct? |
| 11:06 | 5 | A.   Yes. |
| 11:06 | 6 | Q.   And this is concerning the Paris Toy Fair, correct? -- |
| 11:06 | 7 | I'm sorry -- the UK Toy Fair.  Do you see that? |
| 11:06 | 8 | A.   Well, it has both Paris and UK, so I don't know which |
| 11:07 | 9 | one is what. |
| 11:07 | 10 | Q.   Oh, I -- yeah, if you look at the bottom, it refers to |
| 11:07 | 11 | the Paris Toy Fair.  Do you see that? |
| 11:07 | 12 | MR. PRICE:  Your Honor, we move 9528 into |
| 11:07 | 13 | evidence. |
| 11:07 | 14 | THE COURT:  Received. |
| 11:07 | 15 | *(Exhibit No. 9528 received in evidence.)* |
| 11:07 | 16 | *(Document displayed.)* |
| 11:07 | 17 | THE WITNESS:  Yes. |
| 11:07 | 18 | BY MR. PRICE: |
| 11:07 | 19 | Q.   And you see at the bottom there's a message from Hasbro |
| 11:07 | 20 | to sderaspide@MGA.  And do you know -- that's Sandrine de |
| 11:07 | 21 | Raspide? |
| 11:07 | 22 | A.   Yes. |
| 11:07 | 23 | Q.   Who was that? |
| 11:07 | 24 | A.   She was our head of licensing. |
| 11:07 | 25 | Q.   And it says, "Barbie analysis --" |

| | | |
|---|---|---|
| 11:07 | 1 | A.   International. |
| 11:07 | 2 | Q.   I'm sorry.  It says, "Barbie analysis following AW05 |
| 11:07 | 3 | following Paris Toy Fair.  Dear Sandrine, find enclosed the |
| 11:07 | 4 | Barbie analysis we have done after Paris Toy Fair on their |
| 11:07 | 5 | new segmentation and AW05 line.  You will find a focus on |
| 11:07 | 6 | Barbie play sets price positioning to compare to Bratz, one |
| 11:08 | 7 | of the main requests of our customers during the toy fair." |
| 11:08 | 8 | Do you see that? |
| 11:08 | 9 | A.   Yes. |
| 11:08 | 10 | Q.   And then at the top -- this is Ms. -- is it Mr., |
| 11:08 | 11 | Ms. Raspide? |
| 11:08 | 12 | A.   Ms. |
| 11:08 | 13 | Q.   Ms. Raspide sends you an e-mail which says, "Didn't get |
| 11:08 | 14 | a chance to look at it in detail during UKTF."  That's the |
| 11:08 | 15 | UK Toy Fair? |
| 11:08 | 16 | A.   Yes. |
| 11:08 | 17 | Q.   "Hasbro got hold of Mattel's catalog, therefore their |
| 11:08 | 18 | analysis". |
| 11:08 | 19 | Do you see that? |
| 11:08 | 20 | A.   I do. |
| 11:08 | 21 | Q.   And then, "Will catch up with Hasbro on this issue on |
| 11:08 | 22 | Wednesday."  Do you see that? |
| 11:08 | 23 | A.   Yes. |
| 11:08 | 24 | Q.   It's your understanding Hasbro is one of your |
| 11:08 | 25 | competitors? |

| | | |
|---|---|---|
| 11:08 | 1 | A.   It is. |
| 11:08 | 2 | Q.   And that Hasbro had gotten ahold of Mattel's catalog |
| 11:08 | 3 | somehow, correct? |
| 11:08 | 4 | A.   Looks like it, yes.  In Paris Toy Fair, which is open. |
| 11:08 | 5 | Q.   There are no private booths in Paris Toy Fair? |
| 11:08 | 6 | A.   Not the ones I've been to, no. |
| 11:08 | 7 | Q.   Has MGA ever done anything at Paris Toy Fair? |
| 11:08 | 8 | A.   What do you mean "doing anything"? |
| 11:08 | 9 | Q.   A private room or anything at all? |
| 11:09 | 10 | A.   I don't think -- my memory could be wrong, but I don't |
| 11:09 | 11 | think we have ever been to Paris Toy Fair or UK Toy Fair. |
| 11:09 | 12 | Q.   So you have no experience with the Paris Toy Fair, |
| 11:09 | 13 | you're saying, correct? |
| 11:09 | 14 | A.   I do not, but I have been there.  I have the experience |
| 11:09 | 15 | to be there. |
| 11:09 | 16 | Q.   So your competitor, then, is sharing with you an |
| 11:09 | 17 | analysis they did of Mattel's catalog in January of 2005, |
| 11:09 | 18 | right? |
| 11:09 | 19 | A.   Hasbro is, yes. |
| 11:09 | 20 | Q.   And -- and you're accepting that analysis from one of |
| 11:09 | 21 | your competitors about Mattel, correct? |
| 11:09 | 22 | A.   They sent it to us, yes. |
| 11:09 | 23 | Q.   You didn't reject it.  You didn't say, "I don't want to |
| 11:09 | 24 | see this," right? |
| 11:09 | 25 | A.   No, I did not reject it. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:09 | 1 | Q.   Now, you had talked about planogram rooms in your -- |
| 11:09 | 2 | oh, about the toy fair, I almost forgot.  You -- you said |
| 11:09 | 3 | during, uh, your direct examination that, uh, that you don't |
| 11:10 | 4 | recall when MGA started using nondisclosure agreements at |
| 11:10 | 5 | the -- at the New York Toy Fair, correct? |
| 11:10 | 6 | A.   That's correct, I don't remember the date. |
| 11:10 | 7 | Q.   And -- and in fact, you've testified that you've only |
| 11:10 | 8 | used those nondisclosure agreements for the past, quote, |
| 11:10 | 9 | "few years," correct? |
| 11:10 | 10 | A.   Yes. |
| 11:10 | 11 | Q.   And you gave -- uh, or you looked at yesterday -- here |
| 11:10 | 12 | we go -- Exhibit 36635. |
| 11:10 | 13 | MR. PRICE:  If you can put that up. |
| 11:10 | 14 | *(Document displayed.)* |
| 11:10 | 15 | BY MR. PRICE: |
| 11:10 | 16 | Q.   And you said this was sign-in sheets for the Hong Kong |
| 11:10 | 17 | Toy Fair? |
| 11:10 | 18 | A.   It's an MGA sign-in sheet, yes. |
| 11:10 | 19 | Q.   And what date was the Hong Kong Toy Fair? |
| 11:10 | 20 | A.   January in that year.  It's usually the first week of |
| 11:10 | 21 | January, so looks like it's January 4, 2005, from what I can |
| 11:11 | 22 | read. |
| 11:11 | 23 | Q.   Now, if you look at the things -- says, "Dear MGA |
| 11:11 | 24 | guests, your permission to visit MGA Entertainment's offices |
| 11:11 | 25 | and facilities --" |

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

123

| | | |
|---|---|---|
| 11:11 | 1 | A.   Hold on one second.  Can I get it? |
| 11:11 | 2 | *(Document provided to the witness.)* |
| 11:11 | 3 | THE WITNESS:  Yes, go ahead. |
| 11:11 | 4 | BY MR. PRICE: |
| 11:11 | 5 | Q.   "Your permission to enter MGA's offices and facilities |
| 11:11 | 6 | is granted subject to your agreement to keep confidential, |
| 11:11 | 7 | et cetera." |
| 11:11 | 8 | Do you see that? |
| 11:11 | 9 | A.   I do. |
| 11:11 | 10 | Q.   And this is what you used with respect to people |
| 11:11 | 11 | visiting your offices when people come to visit MGA, |
| 11:11 | 12 | correct? |
| 11:11 | 13 | A.   No.  This is in Hong Kong.  Our offices and showrooms |
| 11:11 | 14 | are in the same floor, same building. |
| 11:11 | 15 | Q.   Well, you have offices in Van Nuys, right? |
| 11:11 | 16 | A.   Yes.  And we have showrooms in Van Nuys. |
| 11:11 | 17 | Q.   And is there a Hong Kong Toy Fair in October? |
| 11:12 | 18 | A.   Actually, yes, there was a pre-toy fair in Hong Kong in |
| 11:12 | 19 | October. |
| 11:12 | 20 | Q.   Okay.  How about in July or May? |
| 11:12 | 21 | A.   Yes, there is, in Hong Kong. |
| 11:12 | 22 | Q.   So there are -- to be clear, there are pre-toy fairs |
| 11:12 | 23 | before the toy fairs, right? |
| 11:12 | 24 | A.   No.  We have private toy fairs, so does Mattel.  In May |
| 11:12 | 25 | you go for spring to Hong Kong.  You go in July.  You also |

DEBBIE GALE, U.S. COURT REPORTER

| 11:12 | 1 | go in October. |
|---|---|---|
| 11:12 | 2 | Q.   And -- and are those -- when you say October, so that's |
| 11:12 | 3 | before the main toy fair in January, right? |
| 11:12 | 4 | A.   Yes. |
| 11:12 | 5 | Q.   Okay.  And you recall that when you testified |
| 11:12 | 6 | previously you, uh -- uh, went to visit Kmart, I think it |
| 11:12 | 7 | was, uh, in November of 2000 to show them, uh, the Bratz |
| 11:12 | 8 | concept?  You remember you went and showed them the fashion |
| 11:12 | 9 | drawings? |
| 11:12 | 10 | A.   I did not. |
| 11:12 | 11 | Q.   Someone from MGA did? |
| 11:12 | 12 | A.   Yes, I believe that's true. |
| 11:12 | 13 | Q.   And that is typical that -- that you visit retailers |
| 11:12 | 14 | before -- some retailers before the toy fair to show them |
| 11:13 | 15 | what you're going to do at the toy fair? |
| 11:13 | 16 |             MS. HURST:  Objection.  Vague -- |
| 11:13 | 17 |             THE WITNESS:  Some. |
| 11:13 | 18 |             MS. KELLER:  -- as to time. |
| 11:13 | 19 |             THE COURT:  Do you understand the time period? |
| 11:13 | 20 |             THE WITNESS:  Now I'm really confused, sir. |
| 11:13 | 21 | BY MR. PRICE: |
| 11:13 | 22 | Q.   2001 to 2006, you would visit manufacturers before the |
| 11:13 | 23 | toy fair and show them what you expected to display at the |
| 11:13 | 24 | toy fair. |
| 11:13 | 25 | A.   That's not correct. |

| 11:13 | 1  | Q.   Well, didn't you do that with Kmart in November of |
| 11:13 | 2  | 2000? |
| 11:13 | 3  | A.   You said 2001.  In November of 2000, we went to Kmart. |
| 11:13 | 4  | I showed them our drawings. |
| 11:13 | 5  | Q.   And aren't there such -- didn't you do that with other |
| 11:13 | 6  | manufacturers throughout the years? |
| 11:13 | 7  | A.   Through what years? |
| 11:13 | 8  | Q.   2001?  2002? |
| 11:13 | 9  | A.   I don't think we did that, no. |
| 11:13 | 10 | Q.   Well, you mentioned planogram rooms; do you recall |
| 11:13 | 11 | that? |
| 11:13 | 12 | A.   I do. |
| 11:13 | 13 | Q.   And planogram rooms are usually before the toy fairs? |
| 11:13 | 14 | A.   No. |
| 11:13 | 15 | Q.   Well, Kmart is before the toy fair, correct? |
| 11:13 | 16 |         MS. HURST:  Objection.  Vague. |
| 11:13 | 17 |         THE COURT:  Sustained. |
| 11:13 | 18 | BY MR. PRICE: |
| 11:13 | 19 | Q.   The Kmart planogram room is before the toy fair? |
| 11:14 | 20 | A.   No.  They start -- the start of the planogram -- it |
| 11:14 | 21 | depends on the retailer.  I don't know if Kmart is before. |
| 11:14 | 22 | I think they start in January or February.  That's -- |
| 11:14 | 23 | your -- the answer to your question is not correct, |
| 11:14 | 24 | actually. |
| 11:14 | 25 | Q.   Would Lisa Saunders know that? |

| | | |
|---|---|---|
| 11:14 | 1 | A.    I'm sorry? |
| 11:14 | 2 | Q.    Would Lisa Saunders know when that was? |
| 11:14 | 3 |       MS. HURST:  Objection. |
| 11:14 | 4 |       THE WITNESS:  Yes. |
| 11:14 | 5 | BY MR. PRICE: |
| 11:14 | 6 | Q.    And -- and who is she? |
| 11:14 | 7 | A.    She's the salesperson who calls on Kmart. |
| 11:14 | 8 | Q.    For MGA? |
| 11:14 | 9 | A.    She does. |
| 11:14 | 10 | Q.    And so for planogram rooms, I think you said that what |
| 11:14 | 11 | they do, the -- the retailers do is, uh, at least up through |
| 11:14 | 12 | 2005 -- and we'll get into that -- is they would set out |
| 11:14 | 13 | product to kind of see how it would look on the shelves? |
| 11:14 | 14 | A.    They don't set products.  They set packaging in the |
| 11:14 | 15 | planogram room. |
| 11:14 | 16 | Q.    And that planogram room would have products too, right? |
| 11:14 | 17 | A.    No.  Not -- because of mockup that you make costs |
| 11:15 | 18 | between 3- to 5- to $10,0000 to make.  And you cannot send |
| 11:15 | 19 | that mockup sample to every planogram room, so you send |
| 11:15 | 20 | packaging to the planogram room. |
| 11:15 | 21 |       But the answer to your question is it was a continuing |
| 11:15 | 22 | product.  It was a product that you had in the market |
| 11:15 | 23 | before, like Hot Hoops, and you have a sample of them in |
| 11:15 | 24 | production.  Instead of sending package, you will send the |
| 11:15 | 25 | product. |

11:15  1   Q.   Have you previously testified that within a week or two
11:15  2   of toy fair that Walmart -- Walmart, for example, would have
11:15  3   a planogram room with the products it had thought were
11:15  4   interesting at the toy fair?
11:15  5         MS. HURST:  Object to the form as to reference
11:15  6   prior testimony.
11:15  7         THE COURT:  Sustained.
11:15  8   BY THE COURT:
11:15  9   Q.   Isn't it true that within a week or two of toy fair,
11:15 10   that Walmart would have a planogram room where it would have
11:15 11   products that it had been interested in at the toy fair?
11:16 12   A.   Products, yes.  The products that they are interested
11:16 13   in, that's correct.
11:16 14         A planogram room, when you send things to planogram
11:16 15   room, are the packaging of the new products that are not in
11:16 16   the market yet.  You do not send -- you don't have a product
11:16 17   to send to Walmart in January or February.  You have only
11:16 18   one or two mockup samples which you use to show your
11:16 19   customers in 3-D around the world.
11:16 20   Q.   When were the products that you were going to get in
11:16 21   the market -- when would they first appear in a planogram
11:16 22   room or a layout room?
11:16 23         MS. HURST:  Objection.  Vague as to time.
11:16 24         THE WITNESS:  I'm sorry, can you repeat?
      25

| | | |
|---|---|---|
| 11:16 | 1 | BY MR. PRICE: |
| 11:16 | 2 | Q.   Between 2001 and 2006 -- |
| 11:16 | 3 | THE COURT:  Just stop.  Just stop. |
| 11:16 | 4 | Counsel, we're going to take a break for |
| 11:16 | 5 | 15 minutes. |
| 11:16 | 6 | You're admonished not to discuss this matter |
| 11:16 | 7 | amongst yourselves, nor form or express any opinion |
| 11:16 | 8 | concerning the case. |
| 11:16 | 9 | *(Recess held at 11:16 a.m.)* |
| 11:17 | 10 | *(Outside the presence of the jury.)* |
| 11:17 | 11 | THE COURT:  Counsel, 11:30. |
| 11:17 | 12 | *(Recess held at 11:17 a.m.)* |
| 11:31 | 13 | *(Proceedings resumed at 11:31 a.m.)* |
| 11:31 | 14 | *(In the presence of the jury.)* |
| 11:32 | 15 | THE COURT:  All right.  We're back on the record. |
| 11:32 | 16 | The jury's present, the alternates.  All counsel are |
| 11:32 | 17 | present, the parties, Mr. Larian. |
| 11:32 | 18 | And Mr. Price, cross-examination on behalf of |
| 11:32 | 19 | Mattel. |
| 11:32 | 20 | **CROSS-EXAMINATION (Continued)** |
| 11:32 | 21 | BY MR. PRICE: |
| 11:32 | 22 | Q.   Mr. Larian -- |
| 11:32 | 23 | MR. PRICE:  Your Honor, I think we were talking |
| 11:32 | 24 | about 9875.  Have I moved that into evidence? |
| | 25 | |

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

129

| | | |
|---|---|---|
| 11:32 | 1 | BY MR. PRICE: |
| 11:32 | 2 | Q.   That's an e-mail April, 30, 2002, between you and |
| 11:32 | 3 | Ms. Mote, correct? |
| 11:32 | 4 | *(Document provided to the witness.)* |
| 11:32 | 5 | THE WITNESS:  Sure is. |
| 11:32 | 6 | MR. PRICE:  I understand that's in evidence, |
| 11:32 | 7 | Your Honor.  In case I'm wrong, I move it into evidence. |
| 11:32 | 8 | THE COURT:  It was already received.  I'll |
| 11:32 | 9 | re-receive it counsel.  That's not Mote.  That's -- well, |
| 11:32 | 10 | Mote and Kuemmerle, yes. |
| 11:33 | 11 | If it's not, it's received. |
| 11:33 | 12 | *(Exhibit No. 9875 received in evidence.)* |
| 11:33 | 13 | *(Document displayed.)* |
| 11:33 | 14 | BY MR. PRICE: |
| 11:33 | 15 | Q.   Exhibit 1939. |
| 11:33 | 16 | A.   I'm sorry.  Which exhibit do you want me to look at? |
| 11:33 | 17 | Q.   1939.  That's an e-mail between you and Ms. Garcia, |
| 11:33 | 18 | March 12 -- March 13, 2005, correct? |
| 11:33 | 19 | A.   Yes. |
| 11:33 | 20 | MR. PRICE:  Move 1939 into evidence, Your Honor. |
| 11:33 | 21 | THE COURT:  Received. |
| 11:33 | 22 | *(Exhibit No. 1939 received in evidence.)* |
| 11:33 | 23 | *(Document displayed.)* |
| 11:33 | 24 | BY MR. PRICE: |
| 11:33 | 25 | Q.   Look at Exhibit 8931. |

Case 2:04-cv-09049-DOC-RNB   Document 10288   Filed 03/28/11   Page 130 of 160   Page ID #:312552
CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

130

| 11:33 | 1 | MS. HURST: Your Honor, I'm going to object to |
|---|---|---|
| 11:33 | 2 | these just coming in without any accompanying testimony. |
| 11:33 | 3 | That was not agreed. |
| 11:33 | 4 | THE COURT: Yeah, I agree.  There's a stipulation |
| 11:33 | 5 | between counsel, but there has to be some foundation laid. |
| 11:33 | 6 | So, Counsel, as to 9875, you need to go back to |
| 11:33 | 7 | that. |
| 11:33 | 8 | MR. PRICE: Well, 9875, I think, was in evidence, |
| 11:33 | 9 | Your Honor. |
| 11:33 | 10 | THE COURT: All right. |
| 11:33 | 11 | MR. PRICE: So let's go to 19- -- |
| 11:33 | 12 | THE COURT: 1939. |
| 11:33 | 13 | MR. PRICE: 1939. |
| 11:33 | 14 | MS. HURST: I don't believe there was any |
| 11:33 | 15 | discussion regarding 9875, Your Honor. |
| 11:34 | 16 | THE COURT: I think -- |
| 11:34 | 17 | MR. PRICE: It's in evidence. |
| 11:34 | 18 | THE COURT: -- you're right. |
| 11:34 | 19 | I don't think -- I don't know that I'd previously |
| 11:34 | 20 | received that.  I don't recall any discussion about it.  I |
| 11:34 | 21 | think you're absolutely correct, Ms. Hurst. |
| 11:34 | 22 | So whether it's received or not, Counsel, I'm not |
| 11:34 | 23 | going to receive 9875 and 1939. |
| 11:34 | 24 | BY MR. PRICE: |
| 11:34 | 25 | Q.   Okay.  Let's go -- uh, 9875 is an e-mail from you, |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

131

| | | |
|---|---|---|
| 11:34 | 1 | Ms. Mote, and it says "Forward pictures." |
| 11:34 | 2 | Do you see that? |
| 11:34 | 3 | A.   Yes. |
| 11:34 | 4 | Q.   And then on the last page, there's an e-mail from -- to |
| 11:34 | 5 | you from Ms. Kuemmerle concerning, uh, taking pictures in |
| 11:34 | 6 | the middle of a showroom? |
| 11:34 | 7 | A.   But its e-mail from her to me.  You said "an e-mail |
| 11:34 | 8 | from you" to Ms. -- |
| 11:34 | 9 | Q.   I apologize.  You're right. |
| 11:34 | 10 | MR. PRICE:  Your Honor, uh -- actually, I |
| 11:34 | 11 | shouldn't be talking about the content before I move it in. |
| 11:34 | 12 | THE COURT:  Received. |
| 11:34 | 13 | *(Exhibit No. 9875 received in evidence.)* |
| 11:34 | 14 | *(Document displayed.)* |
| 11:34 | 15 | BY MR. PRICE: |
| 11:34 | 16 | Q.   And this is page 2.  This is an e-mail you sent from -- |
| 11:34 | 17 | you got from Ms. Kuemmerle regarding, uh, taking pictures in |
| 11:35 | 18 | a showroom, correct? |
| 11:35 | 19 | A.   I sure did. |
| 11:35 | 20 | Q.   And 1939.  And this is an e-mail that was forwarded to |
| 11:35 | 21 | you -- actually, it was sent to you from Mr. Malacrida on |
| 11:35 | 22 | December 16, 2004 -- if you'd look at the bottom -- right? |
| 11:35 | 23 | A.   Yes, it is. |
| 11:35 | 24 | MR. PRICE:  Move 1939 into evidence, Your Honor. |
| 11:35 | 25 | THE COURT:  Received. |

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

132

| | | |
|---|---|---|
| 11:35 | 1 | (Exhibit No. 1939 received in evidence.) |
| 11:35 | 2 | (Document displayed.) |
| 11:35 | 3 | BY MR. PRICE: |
| 11:35 | 4 | Q.   And this is -- at the bottom, it says, "From a source |
| 11:35 | 5 | of my source in New York City.  Isaac, I will leave it up to |
| 11:35 | 6 | you to forward.  It seems authentic for the most part," and |
| 11:35 | 7 | then describes, uh, plans that Barbie has, correct? |
| 11:35 | 8 | A.   Yes, it does. |
| 11:35 | 9 | Q.   And then, if you look at 8931. |
| 11:36 | 10 | (Document provided to the witness.) |
| 11:36 | 11 | BY MR. PRICE: |
| 11:36 | 12 | Q.   At the top, that's an e-mail from you to Ms. Garcia, |
| 11:36 | 13 | Ms. Treantafelles, correct? |
| 11:36 | 14 | A.   Yes. |
| 11:36 | 15 | Q.   Concerning competitive info, correct? |
| 11:36 | 16 | A.   Yes. |
| 11:36 | 17 | MR. PRICE:  Move 8931 into evidence. |
| 11:36 | 18 | THE COURT:  Received. |
| 11:36 | 19 | (Exhibit No. 8931 received in evidence.) |
| 11:36 | 20 | (Document displayed.) |
| 11:36 | 21 | BY MR. PRICE: |
| 11:36 | 22 | Q.   And this concerns being in a layout room in -- |
| 11:36 | 23 | February 3, 2003.  Do you see that? |
| 11:36 | 24 | A.   I do. |
| 11:36 | 25 | Q.   That's the same as a planogram room, correct? |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:36 | 1 | A.   Yes. |
| 11:36 | 2 | Q.   Uh, and then you send down the information to |
| 11:36 | 3 | Ms. Garcia, saying, "Check this out.  Confidential," |
| 11:36 | 4 | correct? |
| 11:36 | 5 | A.   Yes. |
| 11:36 | 6 | Q.   If you'd look at 9334. |
| 11:36 | 7 | *(Document provided to the witness.)* |
| 11:36 | 8 | THE WITNESS:  Yes. |
| 11:36 | 9 | BY MR. PRICE: |
| 11:36 | 10 | Q.   This is an e-mail from you to Shawn Brower, dated |
| 11:36 | 11 | January 27, 2004; is that right? |
| 11:36 | 12 | A.   Well, it starts in the bottom, so -- on the top, yes. |
| 11:37 | 13 | MR. PRICE:  Move 9334 into evidence. |
| 11:37 | 14 | THE COURT:  Received. |
| 11:37 | 15 | *(Exhibit No. 9334 received in evidence.)* |
| 11:37 | 16 | *(Document displayed.)* |
| 11:37 | 17 | BY MR. PRICE: |
| 11:37 | 18 | Q.   And this concerns information at a Target expo, |
| 11:37 | 19 | correct? |
| 11:37 | 20 | A.   Yes. |
| 11:37 | 21 | Q.   Look at 9427. |
| 11:37 | 22 | *(Document provided to the witness.)* |
| 11:37 | 23 | BY MR. PRICE: |
| 11:37 | 24 | Q.   This top e-mail is from you to Lisa Saunders and Ron |
| 11:37 | 25 | Brawer, correct? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

134

| | | |
|---|---|---|
| 11:37 | 1 | A.   Yes. |
| 11:37 | 2 | MR. PRICE:  Move 9427 into evidence. |
| 11:37 | 3 | THE COURT:  Received. |
| 11:37 | 4 | *(Exhibit No. 9427 received in evidence.)* |
| 11:37 | 5 | *(Document displayed.)* |
| 11:37 | 6 | BY MR. PRICE: |
| 11:37 | 7 | Q.   And this concerns information that Lisa Saunders got |
| 11:37 | 8 | for "the space for Fall in the case of Barbie v. Bratz." |
| 11:37 | 9 | Do you see that? |
| 11:37 | 10 | A.   Yes. |
| 11:37 | 11 | Q.   And if you look at 9546. |
| 11:37 | 12 | *(Document provided to the witness.)* |
| 11:37 | 13 | BY MR. PRICE: |
| 11:37 | 14 | Q.   You see this is an e-mail from Ms. Saunders to |
| 11:37 | 15 | Ms. Garcia concerning Chat Divas on February 7, 2007? |
| 11:38 | 16 | Do you see that? |
| 11:38 | 17 | A.   Yes. |
| 11:38 | 18 | MR. PRICE:  Move 9546 into evidence. |
| 11:38 | 19 | THE COURT:  It's 9546.  Received. |
| 11:38 | 20 | *(Exhibit No. 9546 received in evidence.)* |
| 11:38 | 21 | *(Document displayed.)* |
| 11:38 | 22 | BY MR. PRICE: |
| 11:38 | 23 | Q.   And this is concerning, "Please delete this e-mail once |
| 11:38 | 24 | you talk to Isaac and Ron," and talks about sitting in a |
| 11:38 | 25 | planogram room with Barbie for Fall '97, correct? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 3/25/2011 – Day 40, Volume 1 of 2

135

| | | |
|---|---|---|
| 11:38 | 1 | A.    It's regarding Chat Divas, yes. |
| 11:38 | 2 | Q.    And this is in February of 2007, correct? |
| 11:38 | 3 | A.    Yes. |
| 11:38 | 4 | Q.    So that's -- that planogram room was -- was that before |
| 11:38 | 5 | the New York Toy Fair? |
| 11:38 | 6 | A.    Well, New York Toy Fair starts about that week. |
| 11:38 | 7 | Q.    Now, if you'd look at Exhibit 9424. |
| 11:38 | 8 | *(Document provided to the witness.)* |
| 11:39 | 9 | BY MR. PRICE: |
| 11:39 | 10 | Q.    You recognize that as a March 7, 2002 e-mail from you |
| 11:39 | 11 | to members of your team at MGA? |
| 11:39 | 12 | A.    Yes, it is. |
| 11:39 | 13 | MR. PRICE:  Move 9424 into evidence, Your Honor. |
| 11:39 | 14 | THE COURT:  Just a moment, Counsel.  Am I missing |
| 11:40 | 15 | this? |
| 11:40 | 16 | MR. PRICE:  9424? |
| 11:40 | 17 | THE COURT:  Uh-huh. |
| 11:40 | 18 | MR. PRICE:  It was actually, uh -- you should not |
| 11:40 | 19 | be, but we can get you a copy. |
| 11:40 | 20 | THE COURT:  No, no, no.  Is this on the list that |
| 11:40 | 21 | each of you had gone over with the Court and agreed to? |
| 11:40 | 22 | MR. PRICE:  I don't think we've gone over, |
| 11:40 | 23 | actually, any of this. |
| 11:40 | 24 | THE COURT:  It's not in this group, so I don't |
| 11:40 | 25 | know what it is. |

| | | |
|---|---|---|
| 11:40 | 1 | MS. HURST:  I don't have that on the stipulation. |
| 11:41 | 2 | THE COURT:  I don't either. |
| 11:41 | 3 | MR. PRICE:  Your Honor -- |
| 11:41 | 4 | THE COURT:  It's denied. |
| 11:41 | 5 | MR. PRICE:  -- we didn't go over any documents |
| 11:41 | 6 | except the stipulated document. |
| 11:41 | 7 | This is just concerning price competition. |
| 11:41 | 8 | THE COURT:  On to price competition.  So we're |
| 11:41 | 9 | switching subjects now? |
| 11:41 | 10 | MR. PRICE:  Yes, yes. |
| 11:41 | 11 | MS. HURST:  Then we should give the instruction. |
| 11:41 | 12 | THE COURT:  The instruction would come at this |
| 11:41 | 13 | time by agreement of both counsel. |
| 11:41 | 14 | MR. PRICE:  Uh, sure.  Can we stop the time? |
| 11:41 | 15 | THE COURT:  Well, we'll stop the clock right now. |
| 11:41 | 16 | There's no charged time to either one of you concerning |
| 11:41 | 17 | this.  Because if we're switching subjects now, this would |
| 11:41 | 18 | be the appropriate time for the stipulation. |
| 11:41 | 19 | (To the jury:)  Now, Counsel have agreed to the |
| 11:41 | 20 | following: |
| 11:41 | 21 | "Mattel has introduced a number of e-mails |
| 11:41 | 22 | regarding planogram rooms during the cross-examination of |
| 11:41 | 23 | Mr. Larian.  You are to consider the planogram rooms |
| 11:41 | 24 | referenced in these e-mails to be open to the public and the |
| 11:41 | 25 | information there is not considered a trade secret." |

137

| | | |
|---|---|---|
| 11:42 | 1 | Stipulated to by MGA? |
| 11:42 | 2 | MS. HURST:  Yes, Your Honor. |
| 11:42 | 3 | THE COURT:  Stipulated to by Mattel? |
| 11:42 | 4 | MR. PRICE:  Yes, Your Honor. |
| 11:42 | 5 | THE COURT:  All right.  Now, you can continue with |
| 11:42 | 6 | cross-examination.  And now we're switching subjects. |
| 11:42 | 7 | MR. PRICE:  Thank you. |
| 11:42 | 8 | BY MR. PRICE: |
| 11:42 | 9 | Q.   We're switching subjects to pricing now, Mr. Larian. |
| 11:42 | 10 | And you see 9424 is an e-mail concerning competing |
| 11:42 | 11 | with, uh, Mattel on the price MGA charges its customers, |
| 11:42 | 12 | correct? |
| 11:42 | 13 | A.   I'm sorry?  Where do you see that? |
| 11:42 | 14 | Q.   Well, "Every slap, we'll punch back, make the FOB HK |
| 11:42 | 15 | price" -- do you see that? |
| 11:42 | 16 | A.   Yes, I do. |
| 11:42 | 17 | MR. PRICE:  Okay.  I don't know if I did this: |
| 11:42 | 18 | Move 9424 into evidence, Your Honor. |
| 11:42 | 19 | THE COURT:  Received. |
| 11:42 | 20 | *(Exhibit No. 9424 received in evidence.)* |
| 11:42 | 21 | *(Document displayed.)* |
| 11:42 | 22 | BY MR. PRICE: |
| 11:42 | 23 | Q.   If you'd look now at 9339. |
| 11:42 | 24 | *(Document provided to the witness.)* |
| 11:43 | 25 | THE WITNESS:  Yes. |

138

| | | |
|---|---|---|
| 11:43 | 1 | BY MR. PRICE: |
| 11:43 | 2 | Q.   And do you see, this appears to be a Mattel document |
| 11:43 | 3 | which was produced by MGA?  Do you see that? |
| 11:43 | 4 | A.   I do. |
| 11:43 | 5 | MR. PRICE:  Your Honor, move 9339 into evidence. |
| 11:43 | 6 | THE COURT:  (To the jury:)  Now, once again, this |
| 11:43 | 7 | is technically hearsay.  We don't have the parties, and I |
| 11:43 | 8 | don't see Mr. Larian's name on the e-mail string.  But if |
| 11:43 | 9 | it's conducive to helping explain conduct, or if it has to |
| 11:43 | 10 | do with pricing generally for the company, it's admitted for |
| 11:43 | 11 | that limited purpose.  He's the CEO, just as Mr. Eckert's |
| 11:43 | 12 | the CEO of Mattel. |
| 11:43 | 13 | Okay, Counsel. |
| 11:43 | 14 | MS. HURST:  Your Honor, I would object.  Lack of |
| 11:43 | 15 | foundation.  And if this is supposed to be some kind of |
| 11:43 | 16 | trade secret document, then it should not come with the |
| 11:43 | 17 | witness who has no foundation. |
| 11:43 | 18 | THE COURT:  Yeah. |
| 11:43 | 19 | MR. PRICE:  Your Honor, the only point is it was |
| 11:44 | 20 | in MGA's files.  That's the only -- |
| 11:44 | 21 | MS. HURST:  Well, that's exactly the point that -- |
| 11:44 | 22 | THE COURT:  Just a moment.  Let's stop now. |
| 11:44 | 23 | MR. PRICE:  I think you're looking at a different |
| 11:44 | 24 | document. |
| 11:44 | 25 | THE COURT:  Yeah.  I need 9339. |

| | | |
|---|---|---|
| 11:44 | 1 | Stop the clock from running, Debbie. |
| 11:44 | 2 | What page, Counsel? |
| 11:44 | 3 | MR. PRICE:  It's the entire document.  But, |
| 11:44 | 4 | your Honor, what we're focusing on is the "A" price, which |
| 11:44 | 5 | is -- the "A" price, if you see in the column. |
| 11:45 | 6 | THE COURT:  What page? |
| 11:45 | 7 | MR. PRICE:  Starts at page 4 and goes throughout |
| 11:45 | 8 | the document. |
| 11:45 | 9 | THE COURT:  Now, ladies and gentlemen, let me |
| 11:45 | 10 | caution you: |
| 11:45 | 11 | I've allowed a number of documents in that I have |
| 11:45 | 12 | some concerns about, and that's because they bear the stamp |
| 11:45 | 13 | of the opponent.  So, for instance, there might be a |
| 11:45 | 14 | document that MGA had in their possession that is a Mattel |
| 11:45 | 15 | document, or there might be a Mattel document -- or that |
| 11:45 | 16 | Mattel has in their possession that has an MGA Bates number |
| 11:45 | 17 | on it.  But we're not quite certain how the other party got |
| 11:45 | 18 | it or where they got it from.  That's the difficulty that |
| 11:45 | 19 | I'm having, quite frankly, with some of this. |
| 11:45 | 20 | And I think I've been rather liberal in letting |
| 11:46 | 21 | both counsel get into documents that the other party might |
| 11:46 | 22 | possess, but we're never going to be quite certain with some |
| 11:46 | 23 | of these, you know, how they came into existence, if a |
| 11:46 | 24 | retailer gave it to them, or even if there's a trade secret, |
| 11:46 | 25 | or even if it's confidential.  And, therefore, I want to |

Case 2:04-cv-09049-DOC-RNB   Document 10288   Filed 03/28/11   Page 140 of 160   Page ID
#:312562
CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

140

11:46   1   caution you that you're not to assume simply because a

11:46   2   document comes in that it's a trade secret or even

11:46   3   confidential in this matter.  Counsel have to show this to

11:46   4   you for both sides.

11:46   5          So, Counsel, I'm not sure where we're going with

11:46   6   this.  And the problem is, if I'm going to continue to do

11:46   7   this, I'm going to open up the same door in terms of all the

11:46   8   Mattel documents.

11:46   9          MR. PRICE:  Well, I -- I believe that's --

11:46   10          THE COURT:  I think it's been pretty co-equal,

11:46   11   frankly, on both sides.

11:46   12          Now let me hear from Ms. Hurst for just a second.

11:46   13          MS. HURST:  Your Honor, I would make an offer of

11:46   14   proof at sidebar on this one that I think would preclude its

11:46   15   introduction with this witness.

11:46   16          THE COURT:  Okay.  Well, let's move on, then.  We

11:46   17   can do that during the brief break we've got.  I just don't

11:47   18   think that this document's of great concern, so let's take

11:47   19   it up during the lunch hour.

11:47   20          MR. PRICE:  Let me see.  The next document is

11:47   21   9430, Your Honor.

11:47   22          THE COURT:  Are we going to do the same thing with

11:47   23   that?

11:47   24          MR. PRICE:  Let me see if that's --

11:47   25          THE COURT:  Yeah.  If there's a whole stack of

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:47 | 1 | them, we'll take them up out -- |
| 11:47 | 2 | MS. HURST:  Same issue, Your Honor. |
| 11:47 | 3 | THE COURT:  Yeah. |
| 11:47 | 4 | MR. PRICE:  It's just these two. |
| 11:47 | 5 | THE COURT:  You're going to have to move onto a |
| 11:47 | 6 | different area. |
| 11:47 | 7 | MR. PRICE:  I will. |
| 11:47 | 8 | THE COURT:  (To the jury:) And let me, once again, |
| 11:47 | 9 | caution you: |
| 11:47 | 10 | Just because it has the stamp of the other party |
| 11:47 | 11 | and it's in another party's possession, be very careful: |
| 11:47 | 12 | Make counsel on both sides prove to you the relevance of |
| 11:47 | 13 | these particular documents. |
| 11:47 | 14 | And also, the foundation may, quite frankly, on |
| 11:47 | 15 | occasion, because of the volume of information, not be |
| 11:47 | 16 | complete, and we may never know if it was innocently given |
| 11:47 | 17 | or obtained in a different way. |
| 11:47 | 18 | So, Counsel. |
| 11:47 | 19 | BY MR. PRICE: |
| 11:47 | 20 | Q.   Mr. Larian, yesterday you testified about, uh, when you |
| 11:47 | 21 | became aware that Mattel had received information from your |
| 11:47 | 22 | showrooms. |
| 11:47 | 23 | Do you recall that? |
| 11:47 | 24 | A.   You mean when I became aware -- where Mattel was using |
| 11:48 | 25 | false ID to get into our showrooms?  Is that what you're |

| | | |
|---|---|---|
| 11:48 | 1 | talking about? |
| 11:48 | 2 | Q.   We'll say it that way, sure. |
| 11:48 | 3 | A.   Yes. |
| 11:48 | 4 | Q.   And, actually, you have known about that for, at least |
| 11:48 | 5 | as of 2009, the past few years, correct? |
| 11:48 | 6 | A.   Know what? |
| 11:48 | 7 | Q.   That Mattel would use -- had used false business cards |
| 11:48 | 8 | to get into MGA's showrooms? |
| 11:48 | 9 | A.   No.  I never had proof of that until you guys finally |
| 11:48 | 10 | produced the documents in 2010. |
| 11:48 | 11 | Q.   Well, you had Ron Brawer, your Vice President of Sales? |
| 11:48 | 12 | A.   Yes. |
| 11:48 | 13 | Q.   Had been working since 2004 with you, who knew about |
| 11:48 | 14 | that, correct? |
| 11:48 | 15 | A.   I don't know if he knew that or not. |
| 11:48 | 16 | Q.   And, if you'd look at your deposition testimony, this |
| 11:48 | 17 | is December 11, 2009.  And that's pages 991 and 992, line -- |
| 11:48 | 18 | 991. |
| 11:48 | 19 | MR. PRICE:  We'll give that to Your Honor.  Lines |
| 11:49 | 20 | 10 through 20, and 992, lines 18 through 23. |
| 11:49 | 21 | THE COURT:  Now, just a moment. |
| 11:49 | 22 | 991.  I'm going to repeat back to you.  No.  Let |
| 11:49 | 23 | me repeat it back to you, Counsel. |
| 11:49 | 24 | 10 through 20; is that correct? |
| 11:49 | 25 | MR. PRICE:  Yes, Your Honor. |

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

143

| | | |
|---|---|---|
| 11:49 | 1 | THE COURT:  And 991 -- I'm sorry. |
| 11:49 | 2 | 992, lines 18 through 23; is that correct? |
| 11:49 | 3 | MR. PRICE:  Yes, Your Honor. |
| 11:49 | 4 | THE COURT:  All right.  Just a moment. |
| 11:49 | 5 | THE WITNESS:  Yes.  Go ahead. |
| 11:49 | 6 | THE COURT:  Just a moment.  There's no question |
| 11:49 | 7 | pending right now that you have to answer. |
| 11:50 | 8 | Well, in relation to Ron Brawer, Counsel, this is |
| 11:50 | 9 | stricken.  This is not an appropriate question.  And it |
| 11:50 | 10 | sounds like it came from Ron Brawer. |
| 11:50 | 11 | That's not a correct reading of this at all. |
| 11:50 | 12 | MR. PRICE:  No, no.  I don't think this did, |
| 11:50 | 13 | Your Honor. |
| 11:50 | 14 | THE COURT:  Well, then your prior question's |
| 11:50 | 15 | improper, because it intimates that it came from Ron Brawer. |
| 11:50 | 16 | MR. PRICE:  The source -- |
| 11:50 | 17 | THE COURT:  (Reading:) |
| 11:50 | 18 | "Ron Brawer, Vice President of Sales? |
| 11:50 | 19 | "ANSWER:  Yes. |
| 11:50 | 20 | "He'd been working since 2004 with you, and you |
| 11:50 | 21 | knew about that, correct? |
| 11:50 | 22 | "ANSWER:  I don't know if he knew that or not." |
| 11:50 | 23 | And then you go right into a deposition that makes |
| 11:50 | 24 | it sound like it's Ron Brawer.  It's an improper question. |
| 11:50 | 25 | MR. PRICE:  Let -- let me ask -- |

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

144

| 11:50 | 1 | THE COURT:  Ladies and gentlemen, disregard the |
| 11:50 | 2 | question just asked.  It's an improper question. |
| 11:50 | 3 | MR. PRICE:  Let me ask -- lay a foundation. |
| 11:50 | 4 | BY MR. PRICE: |
| 11:50 | 5 | Q.  As of December 11, 2009, you had known for the past few |
| 11:51 | 6 | years that Mattel would go into your showroom with a false |
| 11:51 | 7 | business card saying they were either a journalist or a |
| 11:51 | 8 | customer, correct? |
| 11:51 | 9 | MS. HURST:  Objection.  Misstates the testimony. |
| 11:51 | 10 | THE COURT:  No. |
| 11:51 | 11 | You can answer that question, as long as "Ron |
| 11:51 | 12 | Brawer" is stricken, Counsel. |
| 11:51 | 13 | MR. PRICE:  Certainly. |
| 11:51 | 14 | THE COURT:  All right. |
| 11:51 | 15 | (To the jury:) No inference is to be drawn from |
| 11:51 | 16 | the prior question that I ordered you to strike. |
| 11:51 | 17 | You can generally answer the question. |
| 11:51 | 18 | THE WITNESS:  Can you repeat the question? |
| 11:51 | 19 | BY MR. PRICE: |
| 11:51 | 20 | Q.  That, as of December 2009, you had known for the past |
| 11:51 | 21 | few years that someone from Mattel would be -- go into MGA's |
| 11:51 | 22 | showrooms with false business cards saying they worked as a |
| 11:51 | 23 | journalist or for a customer? |
| 11:51 | 24 | A.  It's possible.  We had the suspicion, yes. |
| 11:51 | 25 | Q.  Well, that's something that you heard for, uh, the past |

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

145

| | | |
|---|---|---|
| 11:51 | 1 | few years, as of December 11, 2009, correct? |
| 11:51 | 2 | A.    I don't know if that's true or not, no. |
| 11:51 | 3 | Q.    Well, look at 992, lines 18 through 23. |
| 11:52 | 4 | A.    Where? |
| 11:52 | 5 | Q.    992, lines 18 through 23. |
| 11:52 | 6 | A.    Yes, but I got to read this. |
| 11:52 | 7 | THE COURT:  Yeah, just a moment. |
| 11:52 | 8 | Counsel, that's an incomplete question.  I'm not |
| 11:52 | 9 | going to allow it -- |
| 11:52 | 10 | MR. PRICE:  I can -- |
| 11:52 | 11 | THE COURT:  -- unless you -- |
| 11:52 | 12 | MR. PRICE:  Go from line 10? |
| 11:52 | 13 | THE COURT:  No.  Counsel, it's taken out of |
| 11:52 | 14 | context.  And it can't be read, if it's not read in |
| 11:52 | 15 | conjunction with page 991. |
| 11:52 | 16 | MR. PRICE:  I -- I will. |
| 11:52 | 17 | THE COURT:  No.  I'm sorry.  I don't mean to argue |
| 11:52 | 18 | with you, but I will.  You referred him to 992, 18 through |
| 11:52 | 19 | 23, and that's misleading. |
| 11:52 | 20 | MR. PRICE:  Let me refer you to 991 -- |
| 11:52 | 21 | THE COURT:  I don't mind that the whole thing be |
| 11:52 | 22 | read in, if both parties want to stipulate to it.  But |
| 11:52 | 23 | that's up to each of you.  And that will give the jury a |
| 11:52 | 24 | candid and correct answer to the question you're asking. |
| 11:53 | 25 | All right.  Your question. |

| | | |
|---|---|---|
| 11:53 | 1 | BY MR. PRICE: |
| 11:53 | 2 | Q.   Mr. Larian, 991, line 10, through 992, line 23. |
| 11:53 | 3 | THE COURT:  Okay. |
| 11:53 | 4 | THE WITNESS:  Okay.  I need to read it. |
| 11:53 | 5 | MS. HURST:  Your Honor, I just object.  It's |
| 11:53 | 6 | improper to ask the witness about prior depo testimony.  He |
| 11:53 | 7 | should just ask him a question. |
| 11:53 | 8 | THE COURT:  We'll he previously had, but it's been |
| 11:53 | 9 | lost in antiquity now.  I don't think the jury can remember |
| 11:53 | 10 | it. |
| 11:53 | 11 | BY MR. PRICE: |
| 11:53 | 12 | Q.   Mr. Larian, you said -- you testified previously that |
| 11:53 | 13 | you first -- |
| 11:53 | 14 | MS. HURST:  Object to the form as referring to |
| 11:53 | 15 | prior testimony. |
| 11:53 | 16 | THE COURT:  Just ask him a question. |
| 11:53 | 17 | BY MR. PRICE: |
| 11:53 | 18 | Q.   You knew for the past few years, as of December 11, |
| 11:53 | 19 | 2009, that Mattel would come to your showroom with fake |
| 11:54 | 20 | business cards, saying they were either a journalist or a |
| 11:54 | 21 | customer? |
| 11:54 | 22 | THE COURT:  Now that's a proper question. |
| 11:54 | 23 | You can answer that. |
| 11:54 | 24 | THE WITNESS:  We had the suspicion that -- how our |
| 11:54 | 25 | product all of a sudden would look like theirs -- their |

Case 2:04-cv-09049-DOC-RNB   Document 10288   Filed 03/28/11   Page 147 of 160   Page ID #:312569
CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

147

| | | |
|---|---|---|
| 11:54 | 1 | product looked like ours, so that's what we suspected. |
| 11:54 | 2 | BY MR. PRICE: |
| 11:54 | 3 | Q.   Well, no.  You heard from people that that was what had |
| 11:54 | 4 | happened, correct?  That's what you heard from people? |
| 11:54 | 5 | A.   That what? |
| 11:54 | 6 | Q.   That -- |
| 11:54 | 7 | A.   As of when? |
| 11:54 | 8 | Q.   As of the past few years, as of December 11, 2009, you |
| 11:54 | 9 | had heard from people in your office that -- |
| 11:54 | 10 | A.   No. |
| 11:54 | 11 | Q.   -- people from Mattel would come into your showroom? |
| 11:54 | 12 | A.   No. |
| 11:54 | 13 | MR. PRICE:  In this case, Your Honor, I'd ask to |
| 11:54 | 14 | read 991, line 10, through 992, line 23. |
| 11:54 | 15 | THE COURT:  You may. |
| 11:54 | 16 | Now you may read line 10 through 24, and you may |
| 11:55 | 17 | read line 18 through 23. |
| 11:55 | 18 | MR. PRICE:  Thank you, Your Honor.  (Reading:) |
| 11:55 | 19 | "QUESTION:  And if I" -- |
| 11:55 | 20 | THE COURT:  Better yet, I don't know why this |
| 11:55 | 21 | isn't read continuously all the way through line 23. |
| 11:55 | 22 | So you may read continuously from line 10, on page |
| 11:55 | 23 | 991, through 992, line 23. |
| 11:55 | 24 | MR. PRICE:  I will, Your Honor. |
| 11:55 | 25 | "QUESTION:  And if I understand your testimony, |

DEBBIE GALE, U.S. COURT REPORTER

| 11:55 | 1 | you're saying that Mattel did what? |
| 11:55 | 2 | "ANSWER:  Mattel came to our showroom with a false |
| 11:55 | 3 | business card saying that they're either a journalist or -- |
| 11:55 | 4 | that's my understanding -- or they work for other |
| 11:55 | 5 | organizations, or they're a customer or came with a |
| 11:55 | 6 | customer. |
| 11:55 | 7 | "ANSWER:" (sic) "And when you say Mattel, what |
| 11:55 | 8 | individual or individuals are you referring to? |
| 11:55 | 9 | "ANSWER:  I don't have their names here, but I |
| 11:55 | 10 | think we have names. |
| 11:55 | 11 | "QUESTION:  And you said it was your |
| 11:55 | 12 | understanding, so I take it you derived this from somebody |
| 11:56 | 13 | or heard it from somebody? |
| 11:56 | 14 | "ANSWER:  I didn't -- I don't remember who. |
| 11:56 | 15 | "QUESTION:  I'm sorry.  You don't remember who you |
| 11:56 | 16 | heard it from? |
| 11:56 | 17 | "ANSWER:  Not as I sit here today." |
| 11:56 | 18 | And then, "THE WITNESS:  Excuse me.  I'm losing my |
| 11:56 | 19 | voice, so I apologize." |
| 11:56 | 20 | Let me skip -- |
| 11:56 | 21 | Uh, "Yes" -- line 9, "Is this something you heard |
| 11:56 | 22 | from one person? |
| 11:56 | 23 | "ANSWER:  I heard it from a few people. |
| 11:56 | 24 | "QUESTION:  Do you remember any of them? |
| 11:56 | 25 | "ANSWER:  I don't remember the names as I sit here |

| 11:56 | 1 | today, no. |
| 11:56 | 2 | "QUESTION:  Do you remember the context of any of |
| 11:56 | 3 | this; in other words, where you were or what the |
| 11:56 | 4 | circumstances were when you heard this from anyone? |
| 11:56 | 5 | "ANSWER:  Must have been in any -- in any office. |
| 11:56 | 6 | "QUESTION:  And is this something that you heard |
| 11:56 | 7 | recently?  Was it some time ago? |
| 11:56 | 8 | "ANSWER:  Some time ago. |
| 11:56 | 9 | "QUESTION:  And can you give me an approximate |
| 11:56 | 10 | time period? |
| 11:56 | 11 | "ANSWER:  Past few years." |
| 11:56 | 12 | BY MR. PRICE: |
| 11:56 | 13 | Q.   Now, Mr. Larian, it -- it was, you'll agree with me -- |
| 11:56 | 14 | I think, yes, I think -- that it's clearly wrong for people |
| 11:57 | 15 | to misrepresent themselves?  You agree, correct? |
| 11:57 | 16 | A.   I one hundred percent agree with you on that.  Yes, I |
| 11:57 | 17 | do. |
| 11:57 | 18 | Q.   And, uh, it's also kind of lazy, because you told us |
| 11:57 | 19 | the information in your catalogs is available to the public |
| 11:57 | 20 | as of the time of the toy fair, correct? |
| 11:57 | 21 | MS. HURST:  Object to the form, "You've told us." |
| 11:57 | 22 | Argumentative. |
| 11:57 | 23 | MR. PRICE:  I'll -- I'll -- |
| 11:57 | 24 | THE COURT:  Stricken. |
|  | 25 |  |

Case 2:04-cv-09049-DOC-RNB   Document 10288   Filed 03/28/11   Page 150 of 160   Page ID #:312572
CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

150

| | | |
|---|---|---|
| 11:57 | 1 | BY MR. PRICE: |
| 11:57 | 2 | Q.   It's also lazy because the information -- |
| 11:57 | 3 | A.   What is lazy? |
| 11:57 | 4 | Q.   -- that's in your catalog at toy fairs becomes public? |
| 11:57 | 5 | MS. HURST:  I'm sorry.  I don't understand that |
| 11:57 | 6 | question. |
| 11:57 | 7 | THE COURT:  Are you saying "lazy" or "hazy"? |
| 11:57 | 8 | MR. PRICE:  Lazy. |
| 11:57 | 9 | THE COURT:  Lazy? |
| 11:57 | 10 | MR. PRICE:  Yeah.  Let me rephrase. |
| 11:57 | 11 | BY MR. PRICE: |
| 11:57 | 12 | Q.   The information in your catalogs is available from |
| 11:57 | 13 | retailers, right? |
| 11:57 | 14 | MS. HURST:  Objection.  Misstates the witness's |
| 11:57 | 15 | testimony. |
| 11:57 | 16 | THE WITNESS:  No. |
| 11:57 | 17 | THE COURT:  Overruled. |
| 11:57 | 18 | Your answer is? |
| 11:57 | 19 | THE WITNESS:  No. |
| 11:57 | 20 | THE COURT:  Okay.  Thank you. |
| 11:57 | 21 | BY MR. PRICE: |
| 11:57 | 22 | Q.   It's available in press releases, correct? |
| 11:57 | 23 | A.   Some of the information is, not all of them. |
| 11:57 | 24 | Q.   Available -- some of the information is available in |
| 11:57 | 25 | news articles, correct? |

| | | |
|---|---|---|
| 11:57 | 1 | A.    Some. |
| 11:57 | 2 | Q.    And -- |
| 11:58 | 3 | A.    A few, out of hundreds of products. |
| 11:58 | 4 | Q.    Well -- and we've seen that -- that MGA would collect |
| 11:58 | 5 | information on Mattel's products at toy fairs -- for |
| 11:58 | 6 | example, from the Nuremberg Toy Fair -- and the -- and the, |
| 11:58 | 7 | uh, request at the New York Toy Fair, correct? |
| 11:58 | 8 | A.    I don't understand your question. |
| 11:58 | 9 | Q.    I mean, we've seen that MGA collected information on |
| 11:58 | 10 | Mattel products that were at closed toy fairs, correct? |
| 11:58 | 11 | A.    I have seen two incidents, yes.  Actually, I've seen |
| 11:58 | 12 | one incident, and that's the one with Angelika with "M" on |
| 11:58 | 13 | it. |
| 11:58 | 14 | Q.    And -- and then there's the one where you requested a |
| 11:58 | 15 | retailer in 2000 to go to Mattel and get a price list and a |
| 11:58 | 16 | catalog, right? |
| 11:58 | 17 |        MS. HURST:  Objection.  Assumes facts not in |
| 11:58 | 18 | evidence. |
| 11:58 | 19 |        THE COURT:  Sustained. |
| 11:58 | 20 |        MS. HURST:  Misstates the testimony. |
| 11:58 | 21 |        THE COURT:  Sustained. |
| 11:58 | 22 | BY MR. PRICE: |
| 11:58 | 23 | Q.    Well, 22225, January 13, 2000. |
| 11:58 | 24 |          *(Document provided to the witness.)* |
| 11:58 | 25 |          *(Document displayed.)* |

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

152

| | | |
|---|---|---|
| 11:58 | 1 | BY MR. PRICE: |
| 11:59 | 2 | Q.   "At New York Toy Fair can you please get me a copy of |
| 11:59 | 3 | catalog and price list for following companies:  Mattel." |
| 11:59 | 4 | That's a request that you made, correct? |
| 11:59 | 5 | A.   I did. |
| 11:59 | 6 | Q.   Uh, if we could switch topics, you've -- you've, uh, |
| 11:59 | 7 | been -- |
| 11:59 | 8 | MR. PRICE:  And, actually, since we're switching |
| 11:59 | 9 | topics, is this a time for the jury to get a break? |
| 11:59 | 10 | BY MR. PRICE: |
| 11:59 | 11 | Q.   Okay.  You've been -- you've been here when we've had |
| 11:59 | 12 | discussions about Mr. Villasenor's settlement agreement. |
| 11:59 | 13 | Do you recall that? |
| 11:59 | 14 | A.   Yes. |
| 11:59 | 15 | Q.   And -- and there's been language pointed out in that |
| 11:59 | 16 | agreement about confidentiality and releases during his |
| 11:59 | 17 | examination. |
| 11:59 | 18 | Do you recall that? |
| 11:59 | 19 | A.   I didn't memorize the whole agreement, no. |
| 11:59 | 20 | Q.   Just the substance.  You remember that being talked |
| 11:59 | 21 | about? |
| 11:59 | 22 | A.   Actually, I was very emotional when that was going on, |
| 11:59 | 23 | so I don't remember it, no. |
| 11:59 | 24 | Q.   Well, those kind of clauses about confidentiality and |
| 11:59 | 25 | about releases of attorneys, et cetera, those are common |

| | | |
|---|---|---|
| 11:59 | 1 | clauses that are also in MGA's settlement agreements? |
| 11:59 | 2 | MS. HURST: Objection. Vague as to "those kinds |
| 12:00 | 3 | of clauses." |
| 12:00 | 4 | THE COURT: Well, sustained. |
| 12:00 | 5 | Are you -- I'm not sure which -- which ones you're |
| 12:00 | 6 | referring to, and I don't know. It's so broad that -- |
| 12:00 | 7 | MR. PRICE: We'll go about it this way. |
| 12:00 | 8 | BY MR. PRICE: |
| 12:00 | 9 | Q. If you look at 23702. |
| 12:00 | 10 | *(Document provided to the witness.)* |
| 12:00 | 11 | THE WITNESS: Yes. Hold on one second, please. |
| 12:00 | 12 | BY MR. PRICE: |
| 12:00 | 13 | Q. My question will be, do you see this as being a |
| 12:00 | 14 | severance agreement and release of claims between MGA and |
| 12:00 | 15 | one of its employees? Particularly, if you could look at |
| 12:01 | 16 | the last page. |
| 12:01 | 17 | THE COURT: Mr. Price, haven't we already gone |
| 12:01 | 18 | over this with Larian? |
| 12:01 | 19 | MR. PRICE: Not with -- not for MGA. |
| 12:01 | 20 | THE COURT: All right. |
| 12:01 | 21 | MS. HURST: I'm going to object. This is |
| 12:01 | 22 | irrelevant, Your Honor. |
| 12:01 | 23 | THE COURT: Overruled. |
| 12:01 | 24 | BY MR. PRICE: |
| 12:01 | 25 | Q. This is a release agreement between MGA and one of its |

| 12:02 | 1 | employees, correct? |
|---|---|---|

12:02  1   employees, correct?

12:02  2   A.   It's a severance agreement, yes, and release.

12:02  3            MR. PRICE:  Your Honor, move 23702 into evidence.

12:02  4            MS. HURST:  Objection.  Relevance.

12:02  5            THE COURT:  Are you attempting to show just the

12:02  6   industry, what's happening, generally speaking --

12:02  7            MR. PRICE:  Yes.

12:02  8            THE COURT:  -- in terms of these releases in the

12:02  9   toy world?

12:02  10           MR. PRICE:  Yes, yes.

12:02  11           THE COURT:  Overruled.  It's received.

12:02  12           *(Exhibit No. 23702 received in evidence.)*

12:02  13            *(Document displayed.)*

12:02  14   BY MR. PRICE:

12:02  15   Q.   And if you look at Paragraph 6, you see, with respect

12:02  16   to Ms. Koch (phonetic), you have "employee further agrees

12:02  17   that he will keep the facts" --

12:02  18        Do you see that?

12:02  19   A.   Yes.

12:02  20   Q.   -- "and terms of this agreement completely confidential

12:02  21   and that he will not hereafter disclose any information

12:02  22   concerning this agreement to anyone, provided that any party

12:02  23   hereto may make such disclosures as are required by law and

12:02  24   as are necessary for legitimate, law enforcement or

12:02  25   compliance purposes."

| 12:02 | 1 | Do you see that? |
|---|---|---|
| 12:02 | 2 | A.   I do. |
| 12:02 | 3 | Q.   And that -- you understand that's a typical provision |
| 12:02 | 4 | when you're doing a severance with an employee? |
| 12:03 | 5 | A.   No.  This doesn't say that we give you some money to |
| 12:03 | 6 | have -- "Hush, hush, don't tell anybody." |
| 12:03 | 7 | Q.   Is this an agreement where you give any, uh, |
| 12:03 | 8 | compensation to Ms. Koch? |
| 12:03 | 9 | A.   I don't know if we do or not.  I haven't read the |
| 12:03 | 10 | whole -- |
| 12:03 | 11 | Q.   "Mr." I'm sorry.  "Mr." I apologize. |
| 12:03 | 12 | Uh, well, I'm asking about the confidentiality there. |
| 12:03 | 13 | A.   No.  You asked me a question -- |
| 12:03 | 14 | Q.   About Paragraph 6 -- I asked you about Paragraph 6. |
| 12:03 | 15 | A.   Yeah.  But I'm just going back to your first question |
| 12:03 | 16 | if we are giving him some compensation.  I don't see that in |
| 12:03 | 17 | here. |
| 12:03 | 18 | Q.   Mr. Larian, I asked you about Paragraph 6, and you said |
| 12:03 | 19 | something about compensation.  Paragraph 6 is the kind of |
| 12:03 | 20 | confidentiality agreement you have when people leave the |
| 12:03 | 21 | company, correct? |
| 12:03 | 22 | A.   In this agreement, we have, yes. |
| 12:03 | 23 | Q.   And it's typical, correct? |
| 12:03 | 24 | A.   I don't know if it's typical or not. |
| 12:03 | 25 | Q.   And then, if we look at Paragraph 8, "Not withstanding |

| | | |
|---|---|---|
| 12:03 | 1 | the provisions of Section 1542 of the California Civil Code, |
| 12:03 | 2 | employee hereby irrevocably and unconditionally releases and |
| 12:03 | 3 | forever discharges the company and each and all of its |
| 12:04 | 4 | directors, officers, agents, directors, supervisors, |
| 12:04 | 5 | employees, representatives, attorneys, and their successors |
| 12:04 | 6 | assigns," et cetera. |
| 12:04 | 7 | Do you see that clause? |
| 12:04 | 8 | A.   I see this, yes. |
| 12:04 | 9 | Q.   And that also is a typical clause that you have in a |
| 12:04 | 10 | severance agreement, correct? |
| 12:04 | 11 | A.   I don't know if it is typical or not. |
| 12:04 | 12 | Q.   Okay.  So if you'd look at Paragraph 11, "Employee |
| 12:04 | 13 | further agrees that, in the course and scope of his |
| 12:04 | 14 | employment, he was privileged -- privy to marketing and |
| 12:04 | 15 | sales information and plans, pricing information, business |
| 12:04 | 16 | plans, customer lists, personnel, labor management, |
| 12:04 | 17 | operational and other confidential and proprietary |
| 12:04 | 18 | information," paren, "confidential information relating to |
| 12:04 | 19 | the management and well-being of the company. |
| 12:04 | 20 | "By the execution of this agreement, employee promises, |
| 12:04 | 21 | warrants and guarantees that he will not disclose to any new |
| 12:04 | 22 | employer, no to -- nor to any other person or entity any |
| 12:04 | 23 | confidential information to which he was privy or had access |
| 12:05 | 24 | as an employee of the company." |
| 12:05 | 25 | And then, if you'd look at the last paragraph there: |

| | | |
|---|---|---|
| 12:05 | 1 | "Employee further agrees that he will not orally or in |
| 12:05 | 2 | writing criticize, disparage or otherwise undermine the |
| 12:05 | 3 | reputation of the company, its employees or principals, or |
| 12:05 | 4 | comment in any negative way on the company's business |
| 12:05 | 5 | practices." |
| 12:05 | 6 | Do you see that? |
| 12:05 | 7 | A.   I do. |
| 12:05 | 8 | Q.   And -- and that sort of provision is a provision you |
| 12:05 | 9 | would see -- will see in other severance agreements and |
| 12:05 | 10 | releases and claims with employees, correct? |
| 12:05 | 11 | A.   But if you're -- I'm a little confused.  Are you asking |
| 12:05 | 12 | me that this same language is in Sal Villasenor's severance |
| 12:05 | 13 | agreement with Mattel? |
| 12:05 | 14 | Q.   I'm not asking you that because you were emotional and |
| 12:05 | 15 | may not have heard that so -- |
| 12:05 | 16 | A.   No -- but you were asking -- |
| 12:05 | 17 | MS. HURST:  Objection.  Move to strike the |
| 12:05 | 18 | commentary, Your Honor. |
| 12:05 | 19 | THE COURT:  Between both the counsel and the |
| 12:05 | 20 | witness, we'll strike that.  And start over again. |
| 12:05 | 21 | BY MR. PRICE: |
| 12:06 | 22 | Q.   My question was, I think, fairly clear and fairly |
| 12:06 | 23 | specific, which is that Paragraph 11, here, is the type of |
| 12:06 | 24 | paragraph that -- your Paragraph 11, which is in other |
| 12:06 | 25 | agreements and releases at MGA, correct? |

| | | |
|---|---|---|
| 12:06 | 1 | A.   Yes.  It's possible it is. |
| 12:06 | 2 | Q.   And you also have agreements and releases of employees |
| 12:06 | 3 | who have left MGA where there have been severance payments, |
| 12:06 | 4 | correct? |
| 12:06 | 5 | A.   I don't recall them, but it's possible, yes. |
| 12:06 | 6 | MR. PRICE:  Just a minute, Your Honor. |
| 12:06 | 7 | I'm given the hook. |
| 12:06 | 8 | THE COURT:  Redirect? |
| 12:06 | 9 | MS. HURST:  Can we do that after lunch, |
| 12:06 | 10 | Your Honor? |
| 12:06 | 11 | THE COURT:  Do you want to go to lunch? |
| 12:06 | 12 | A JUROR:  Yes. |
| 12:06 | 13 | THE COURT:  Okay.  "Yes" from one of the jurors. |
| 12:07 | 14 | That's unanimous "yes." |
| 12:07 | 15 | How long would you like today?  45 minutes?  Is |
| 12:07 | 16 | that okay.  40?  Is 40 okay?  Yeah, let's do 40.  I'll meet |
| 12:07 | 17 | you at quarter till.  How is that?  Okay. |
| 12:07 | 18 | Quarter till the hour. |
| 12:07 | 19 | You're admonished not to discuss this matter |
| 12:07 | 20 | amongst yourselves nor form or express any opinion. |
| 12:07 | 21 | That way, we can get you out of here a little |
| 12:07 | 22 | early for the final.  Have a nice lunch. |
| 12:07 | 23 | (Jury recesses for lunch at 12:07 p.m.) |
| 12:07 | 24 | THE COURT:  All right.  Counsel, quarter till the |
| 12:07 | 25 | hour, we'll open the doors and get started again. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

159

| | |
|---|---|
| 12:07 | 1 |
| 12:07 | 2 |
| 12:07 | 3 |
| 12:07 | 4 |
| 12:07 | 5 |
| 12:07 | 6 |
| 12:07 | 7 |
| 12:07 | 8 |
| 12:07 | 9 |

1          All right.  Why don't all of you go to lunch for a

2    moment.  Let me talk briefly to Annette and Bill for a

3    second.

4          Off the record.

5          *(Lunch recess held at 12:07 p.m.)*

6          *(Further proceedings reported by Denise*

7    *Paddock in Volume II.)*

8                              -oOo-

Case 2:04-cv-09049-DOC-RNB  Document 10288  Filed 03/28/11  Page 160 of 160  Page ID #:312582
CV 04-9049 DOC - 3/25/2011 - Day 40, Volume 1 of 2

160

12:07   1                              -oOo-

12:07   2

12:07   3                            CERTIFICATE

12:07   4

12:07   5         I hereby certify that pursuant to Section 753,

12:07   6   Title 28, United States Code, the foregoing is a true and

12:07   7   correct transcript of the stenographically reported

12:07   8   proceedings held in the above-entitled matter and that the

12:07   9   transcript page format is in conformance with the

12:07  10   regulations of the Judicial Conference of the United States.

12:07  11

12:07  12   Date:  March 25, 2011

12:07  13

12:07  14
12:07
12:07  15   _____
12:07
12:07  16           DEBBIE GALE, U.S. COURT REPORTER
                    CSR NO. 9472, RPR

12:07  17

       18

       19

       20

       21

       22

       23

       24

       25