# EXHIBIT B

```
 1              UNITED STATES DISTRICT COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3                    EASTERN DIVISION

 4

 5  MATTEL, INC., a Delaware         )

    corporation,                     )

 6                                   )

                       Plaintiff,    )

 7                                   )

       vs.                           ) Case No.

 8                                   ) CV 04-9049 DOC (RNBx)

    MGA ENTERTAINMENT, INC.,         )

 9                                   ) Consolidated with

                                     ) Case No. 04-9059

10                   Defendant.  )        and

    _____) Case No. 05-2727

11                                   )

    AND CONSOLIDATED ACTION(S).      )

12  _____)

13

14

15

16       CONFIDENTIAL - ATTORNEYS' EYES ONLY

17    VIDEOTAPED 30(B)(6) DEPOSITION of MGA

18    ENTERTAINMENT, INC. (DENNIS JOLICOEUR),

19    VOLUME XXVII, taken on behalf of Mattel,

20    Inc., at 865 South Figueroa Street,

21    10th Floor, Los Angeles, California,

22    commencing at 8:21 a.m., Monday,

23    November 1, 2010, before Michelle Hutton,

24    C.S.R. 7322.

25
```

1      A.   I do.

2      Q.   Is there anything in this document that you

3  believe is incorrect?

4           MR. MOLINSKI:  Objection, compound.

5           THE WITNESS:  I believe the document speaks

6  for itself and is correct.

7  BY MR. ZELLER:

8      Q.   Directing your attention to page 6, you'll

9  see on page 6 a list begins, it goes on to page 8,

10  of 114 different products or product lines.  Do you

11  see that?

12      A.   Yes, I do.

13      Q.   You generally understand that these are the

14  trade secrets that MGA is claiming in this case?

15           MR. MOLINSKI:  Objection, vague, misstates

16  the document.

17           THE WITNESS:  I believe the -- I believe

18  what you've just said is not quite correct.

19  BY MR. ZELLER:

20      Q.   What's incorrect about it?

21      A.   I think that these represents products

22  where we feel that trade secrets have been

23  expropriated.  The products themselves are not the

24  trade secrets.  I may be splitting hairs, but the

25  trade secrets are the appearance, the operation, the

1   intended play patterns, as well as, you know, any

2   advertising that we may have planned around these

3   products, price list, things like that.  So it

4   involves these products.

5        Q.   Focusing your attention on item No. 1,

6   Hopscotch Heather, do you see that?

7        A.   Yes.

8        Q.   What about the appearance of Hopscotch

9   Heather was a trade secret?

10       A.   The appearance itself is a trade secret.

11       Q.   What about the appearance?

12            MR. MOLINSKI:  Objection, vague.

13            THE WITNESS:  Everything about the

14   appearance is a trade secret.

15   BY MR. ZELLER:

16       Q.   Including that it was a doll?

17            MR. MOLINSKI:  Objection, vague.

18            THE WITNESS:  Yes.

19   BY MR. ZELLER:

20       Q.   Including its name, Hopscotch Heather?

21            MR. MOLINSKI:  Objection, vague.

22            THE WITNESS:  Everything that was not

23   public as of the time the toys listed were -- let's

24   say at the time that the trade secrets were

25   misappropriated, everything that was not public was,

1   LOS ANGELES, CALIFORNIA; MONDAY, NOVEMBER 1, 2010

2                          2:38 P.M.

3                           -000-

4

5                    DENNIS JOLICOEUR,

6          having been previously affirmed, was

7             examined and testified as follows:

8

9           THE VIDEOGRAPHER:  This is the start of

10  tape No. 3.  Going back on the record at 2:38 p.m.

11  BY MR. ZELLER:

12     Q.   Other than what you've described, is MGA

13  claiming any other aspect of Hopscotch Heather as a

14  trade secret?

15          MR. MOLINSKI:  Objection, vague.

16          THE WITNESS:  I think in my last answer I

17  may have mischaracterized some trade secrets from a

18  legal standpoint and have confused confidential

19  information from trade secrets.  The trade secrets

20  that I was referring -- that -- that I believe are

21  trade secrets have to do with how a toy looks, its

22  appearance, how a toy works, its operation, how kids

23  use them, namely its play patterns, and the

24  advertising plans of the company, is it going to

25  advertise or not.

1          I may have called trade secrets or

2    characterized as trade secrets the price list,

3    licenses -- licensees and distributor list, product

4    plans, and other forms of advertising or marketing

5    information.  If I did so, then I would like to

6    formally recharacterize them as simply confidential

7    information rather than trade secrets.

8    BY MR. ZELLER:

9        Q.   In fact, was there a licensee list for

10   Hopscotch Heather?

11       A.   Was there a licensee list at Hopscotch

12   Heather?  Where or when?

13       Q.   At any time.

14            MR. MOLINSKI:  Vague.

15            THE WITNESS:  I don't believe I can answer

16   at any time so I'll -- I'll say I -- I don't know.

17   BY MR. ZELLER:

18       Q.   Has Hopscotch Heather ever had a licensee?

19       A.   I don't know.

20       Q.   Has Hopscotch Heather ever had a

21   distributor?

22       A.   I believe it has.

23       Q.   Who?

24       A.   Again, I would have -- we have provided, I

25   believe, lists of our sales, and it may be sales by

1        information?")

2              THE WITNESS:  Okay.  The answer is I really

3   don't know what the differences are.  If you were to

4   ask me privately, they would all be the same, but I

5   have had conversations with counsel --

6              MR. MOLINSKI:  Well, don't reveal

7   conversations --

8              THE WITNESS:  All right.

9              MR. MOLINSKI:  -- with counsel on this

10  subject.

11             THE WITNESS:  And so, you know, I'm giving

12  you the definition as I understand it.  Why it's

13  that way, I don't know.

14  BY MR. ZELLER:

15      Q.   Well, is it your understanding that as to

16  the information that you're identifying in this

17  deposition as being confidential information --

18      A.   Uh-huh.

19      Q.   -- as opposed to trade secret information,

20  that MGA is not making a claim on it against Mattel?

21      A.   I really can't comment to that.  That's a

22  legal thing that I'll leave to the lawyers.  I just

23  know that, you know, the complaint involves the

24  trade secrets and confidential information.  As to

25  how that's phrased, I'll let it to -- leave it to

1    you lawyers to argue.

2            MR. MOLINSKI:  And, Mike, I can confirm

3    that we are not making a -- the trade secret claim

4    does not encompass the information beyond what we've

5    described in the interrogatories so it doesn't

6    include the licensing list that he described, et

7    cetera, information that he considered -- depicted

8    as confidential as opposed to trade secret.

9            MR. ZELLER:  I'm sorry, you said not?

10           MR. MOLINSKI:  Not.

11   BY MR. ZELLER:

12      Q.   Directing your attention back to Exhibit

13   8524 --

14      A.   Yes.

15      Q.   -- and specifically the page M 1771982.

16      A.   982.  This is the Bratz other new themes,

17   is that the title at the top of the page?

18      Q.   Right.

19      A.   I have it.

20      Q.   Bratz - Other New Things.  Do you see that?

21      A.   Yes.

22      Q.   You'll see at the top there are two rows

23   that -- underneath the heading "Spring."  Do you see

24   that?

25      A.   There's a column that says "Spring," yes,