QUINN EMANUEL URQUHART & SULLIVAN, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
William C. Price (Bar. No. 108542)
(williamprice@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de C.V.,

Plaintiffs,

vs.

MGA ENTERTAINMENT, INC., a California corporation, et al.,

Defendants.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 DOC (RNBx)
Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

Hon. David O. Carter

**MATTEL'S OPPOSITION TO MGA PARTIES' TRIAL BRIEF REGARDING DEPOSITION TESTIMONY OF TYLER BRADLEY**

Hearing Date: TBD
Time: TBD
Place: Courtroom 9D

Pre-trial Conf: January 4, 2011
Trial Date: January 18, 2011

## Preliminary Statement

Tyler (Snyder) Bradley is a former employee who left Mattel 8 years ago. While having no control over Ms. Bradley, Mattel nonetheless made numerous attempts to secure her voluntary attendance at trial. MGA's counsel unfortunately chose to harass Ms. Bradley, however, calling her repeatedly and sending process servers to her home late at night – effectively ensuring that she will not appear voluntarily. In response to MGA's abusive conduct, she has moved to quash MGA's deposition subpoena, which would have allowed her to testify live via video link from Georgia. MGA now seeks to offer Ms. Bradley's testimony by video, which would make it the only video testimony in the trial.

The Court should deny MGA's request. MGA is at fault for Ms. Bradley's refusal to attend, and rewarding its conduct would be improper. Furthermore, it would be anomalous to permit the use of her deposition at this late stage of the trial in light of the Court's repeated rulings that it would not permit deposition testimony. Allowing her deposition to be introduced would be especially inappropriate given that Ms. Bradley was already a former (and not current) Mattel employee when she was deposed, which means that her testimony is hearsay. Her testimony also is cumulative, and MGA should be precluded from offering it at trial given that it was MGA's misconduct that has precluded her live appearance.

## Argument

### I. MGA IS AT FAULT FOR MS. BRADLEY'S REFUSAL TO APPEAR

Ms. Bradley is a former-Mattel employee who now resides in Georgia. She is represented by independent counsel, who she personally selected. Although her legal fees are being paid by Mattel because she is a former employee, the agreement governing payment does not include any provision requiring cooperation with Mattel or with requests relating to this litigation. For months, Mattel has sought her attendance at this trial and negotiated extensively with her counsel, pursuant to the

Court's request that all witnesses testify live in front of the jury. Mattel undertook these efforts to persuade Ms. Bradley to appear voluntarily.

MGA meanwhile elected to harass Ms. Bradley, and its heavy-handed tactics have apparently so alienated Ms. Bradley that she will not appear voluntarily. Counsel for MGA sent a process server to Ms. Bradley's house late-at-night and called her repeatedly -- including at least once even *after* the Court had expressly ordered that the Court and the parties' trial counsel would call her counsel together in an effort to persuade Ms. Bradley to appear to testify. MGA's bullying has backfired, and now counsel for Ms. Bradley has indicated that she will not voluntarily appear at trial and that he has been ordered to move-to-quash any trial subpoena seeking her attendance.

## II. MS. BRADLEY'S TESTIMONY IS CUMULATIVE

Although MGA claims that Ms. Bradley has "unique knowledge," she does not. Ms. Bradley is simply another witness with knowledge of toy fair conduct that has been extensively testified to. MGA has called or plans to call a number of former Mattel employees about the same subject matter. MGA claims five-specific areas as to which Ms. Bradley's testimony is "unique." Mot. at 7. All can be (and have been) addressed by other, available witnesses.

Contrary to MGA's claim, Ms. Bradley does not have unique knowledge about the use of false documents, such as invoices, advertisements, and business cards, to gain access to toy fair showrooms. Mot. at 7. Sal Villasenor, Carey Plunkett, Sharon Rahimi, and Kelly Osier all testified at deposition about Mattel employees' (including their own) use of documents with false credentials at toy fairs. See e.g. Villasenor Depo. at 367:19-368:12; Plunkett Depo. at 82:11-13; Rahimi Depo. at 132:10-16; Osier Depo. at 43:15-17. Matthew Turetsky gave trial testimony on this subject. Trial Tr., dated March 22, 2011, Vol. 1, at 32:11-34:19 (discussing use of fake letter head and business cards by Mattel employees to get competitive information from 2001 and 2002 New York Toy Fairs). At most, Ms.

Bradley can testify to only additional kinds of false documents, such as retailer invoices and advertisements. Bradley Depo. at 123:19-124:8; 124:22-153:3. However, there is no material distinction between the different types of false documents, be they business cards, letter head, invoices, or advertisements – the use of which was apparently the same and for the same purpose.

Nor is MGA foreclosed from eliciting testimony about the use of different kinds of false documents. Ms. Bradley, along with other Mattel employees, was instructed to use false documentation by Sal Villasenor. Bradley Depo. at 56:6-10 ("Q. Did he instruct you on how to get into your competitors' showrooms? A. Yes. He would have -- since he had done it in the past, Sal would have been the one that had helped me understand how to get into a showroom."). MGA had ample opportunity to elicit this evidence from Mr. Villasenor and still has an opportunity to recall him or else question other employees who are available to testify at trial. Thus, MGA has sufficient opportunity to learn about the use of these other false documents.

Ms. Bradley also offers no "unique" testimony regarding TX 9640. Mot. at 7. At deposition, she testified that "[t]o answer your question on whether or not I've seen this, I can't remember that I have." Bradley Depo. at 122:10-11. Ms. Bradley testified that some of the information in TX 9640, looked vaguely familiar, but never testified that she had used or seen the document while at Mattel. The most she said was that "[a] portion of this is consistent with advice that Sal gave me" (Bradley Depo. at 123:9-10), but there are a number of other current and former Mattel employees, including Mr. Villasenor himself, who can also so testify. Ms. Bradley did not prepare the document and she has never seen or used the document, and she therefore can offer nothing "unique" about it at trial.

MGA also claims that Ms. Bradley's testimony regarding "Mattel's distribution to senior management of a report in 2002 related specifically to Bratz" is unique. But there are a number of documents and testimony in evidence

regarding the market intelligence group's distribution of its presentations, including video of the presentations themselves. See e.g. Plunkett Depo. at 192:23-193:11 Osier Depo. at 147:1-148:3; Trial Tr., dated March 22, 2011 (Vol. 2), at 73:4-74:17; TX 9489; TX 9498; TX 9502; TX 9504; TX 9507. Carrie Plunkett, a current Mattel employee who is slated to testify live, was also present at the 2002 toy fair. MGA admits this, but claims that it needs Ms. Bradley's testimony because Ms. Plunkett supposedly "had amnesia." Mot. at 3. But all that Ms. Plunkett could not recall was receiving the email from Ms. Snyder in 2002 attaching the report. Plunkett Depo. at 84:18-85:23. Ms. Plunkett testified that she recalled the toy fair, admitted that she attended it and that she "did in fact walk the MGA showroom at the New York Toy Fair in 2002." Plunkett Depo. at 86:12-15.

The last category of "unique" testimony deals with "Mattel's entry into the MGA showroom in 2001." Mot. at 7. Ms. Bradley testified, however, she could not recall if she entered MGA's showroom at NYTF in 2001. Bradley Depo. at 55:15-21 (when asked whether she entered MGA's showroom at the 2001 New York Toy Fair, Ms. Bradley testified that "I don't recall if I went in or if Sal went in."). Sal Villasenor also attended the 2001 New York Toy Fair, and he (not Ms. Bradley) prepared Trial Exhibit 9502, which described Bratz. TX 9502-10; Bradley Depo at 114:10-12 ("THE WITNESS: I would assume Sal used information that I had pulled along with what he had pulled and created this report."). Since he attended the toy fair and prepared the report, he is more qualified to answer questions about the report than Ms. Bradley and has already testified about it at this trial. Trial Tr., dated March 22, 2011, Vol. 2, at 80:13-83:17.

Accordingly, as Ms. Bradley's testimony is cumulative and duplicative of the testimony of other witnesses who have appeared or will appear at trial.

## III. MGA MAY NOT SHOEHORN HEARSAY INTO EVIDENCE VIA 30(B)(6) WITNESSES

In preparing to testify as a 30(b)(6), Keith Storie spoke to a number of current and former Mattel employees, including Ms. Bradley on October 17 or 18, 2010. Storie Depo. at 2204:19-2205:1. Ms. Bradley's employment with Mattel ended in March of 2002 (Bradley Depo. at 9:3-13), more than eight years prior to her conversation with Mr. Storie. Mr. Storie testified that Ms. Bradley said she attended the 2001 and 2002 New York Toy Fairs and that she entered competitor showrooms for Mattel.

In addition to being cumulative, Ms. Bradley's statements to Mr. Storie are out of court statements that MGA wishes to introduce for the truth of the matter asserted. Accordingly, those statements are hearsay and not admissible by MGA as admissions by a party opponent. See Arista Records LLC v. Lime Group LLC, 715 F.Supp.2d 481, 504 (S.D.N.Y., 2010) (holding that statements by a Limewire employee relating to the scope of his employment were admissible as vicarious admissions and non-hearsay, while similar statements made after the employee had left Limewire were hearsay and inadmissible); Bouygues Telecom, S.A. v. Tekelec, 473 F.Supp.2d 692, 695-696 (E.D.N.C., 2007) (rejecting plaintiff's claim that deposition testimony of defendant's former employees relating to the scope of their employment was non-hearsay admission of a party-opponent.).

Hearsay is not admissible at trial just because it was provided by a witness speaking for the company at a Rule 30(b)(6) deposition. Cooley v. Lincoln Elec. Co., 693 F.Supp.2d 767, 791 (N.D. Ohio, 2010) (no exception to hearsay rules for 30(b)(6) witness). Statements from Ms. Bradley to Mr. Storie are inadmissible hearsay.

## IV. THE COURT SHOULD NOT GIVE AN ADVERSE INFERENCE INSTRUCTION AGAINST MATTEL

An adverse inference is an instruction to the trier of fact that 'evidence made unavailable by a party was unfavorable to that party.'" Lewis v. Ryan, 261 F.R.D. 513, 521 (S.D. Cal. 2009). Accordingly, Courts may issue an adverse inference against a party when a witness under that party's control fails to testify or be made available to the other party. See United States v. Mittelstaedt, 31 F.3d 1208, 1215-16 (2d Cir. 1994) (jury may infer unfavorable testimony from witness under control of one party who fails to call the witness). An inference is not appropriate here.

First, Ms. Bradley is not under Mattel's control. She left Mattel over 8 years ago. Under California law, Mattel was required to provide her with counsel. See Cal. Labor Code §2802. Although her legal fees are being paid by Mattel, the agreement governing payment does not include any provision requiring cooperation with Mattel or with requests relating to this litigation. Notwithstanding, Mattel has done everything within its power to secure her attendance at trial, negotiating extensively with her counsel and offering to pay for her expenses to and from Southern California. It is MGA's harassment that ensured her unavailability, and Mattel should not be punished as a result. Mattel also has agreed with the Court that Ms. Bradley should testify in court by video link. It therefore has done everything it can to facilitate, and in no way impeded, her giving of testimony in these proceedings.

Moreover, the Court has previously held that the granting of an adverse inference is inappropriate where the affected party "suffered no prejudice."[1] That is

---

[1] See Dkt. No. 9600, at 47 n.19 ("[t]he Court denies Mattel's request for an adverse inference from Castilla's invocation of his Fifth Amendment right against self-incrimination during his deposition. Castilla is not a party to Mattel's third counter-claim and Mattel suffered no prejudice as a result of Castilla's failure to (footnote continued)

the case here. Ms. Bradley is one of several former Mattel employees accused of sneaking into MGA showrooms. As discussed above, her testimony is not unique and MGA can elicit the same, if not superior, testimony from other witnesses who are available to testify at trial.

## **Conclusion**

For the foregoing reasons, Mattel respectfully requests that the Court deny MGA's motion.

DATED: March 28, 2011

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By *_/s/ John B. Quinn_*
John B. Quinn
Attorneys for Mattel, Inc., and
Mattel de Mexico, S.A. de C.V.

---

substantively respond to questions about whether and to what extent he downloaded Mattel's information prior to his departure").