1                    **UNITED STATES DISTRICT COURT**

2                    **CENTRAL DISTRICT OF CALIFORNIA**

3            **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                         - - - - - - -

5
   MATTEL, INC., et al.,              )
6                                     )
              Plaintiffs,             )
7                                     )
       vs.                            ) No. CV 04-9049 DOC
8                                     )    Status Conf.
   MGA ENTERTAINMENT, INC., et al.,   )    Volume 1 of 2
9                                     )
                                      )
10            Defendants.             )
   _____)

11

12

13

14           REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                       Jury Trial

16                  Santa Ana, California

17                 Monday, March 28, 2011

18

19

20

21   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
22   United States District Court
     411 West 4th Street, Room 1-053
23   Santa Ana, California 92701
     (714) 558-8141

24

25   04cv9049 Mattel 2011-03-28 SCV1

1 **APPEARANCES OF COUNSEL:**

2

FOR PLAINTIFF MATTEL, INC., ET AL.:

3

      QUINN EMANUEL URQUHART & SULLIVAN

4       BY:  JOHN QUINN
          WILLIAM PRICE  (not present)
5           MICHAEL T. ZELLER
          Attorneys at Law
6       865 South Figueroa Street
      10th Floor
7       Los Angeles, California 90017
      (213) 443-3000

8

9

10

11 FOR DEFENDANT MGA ENTERTAINMENT, INC., ET AL:

12       ORRICK, HERRINGTON & SUTCLIFFE, LLP (Irvine)
      BY:  THOMAS S. McCONVILLE
13           Attorney at Law
14       4 Park Plaza
      Suite 1600
      Irvine, California 92614
15       (949) 567-6700

16       - AND -

17       ORRICK, HERRINGTON & SUTCLIFFE, LLP (SF)
      BY:  ANNETTE L. HURST
18           Attorney at Law
      405 Howard Street
19       San Francisco, California 94105
      (415)773-5700
20
      - AND -
21
      KELLER RACKAUCKAS
22       BY:  JENNIFER KELLER (not present)
          Attorney at Law
23       18500 Von Karman Avenue
      Suite 560
24       Irvine, California 92612
      (949) 476-8700

25

CV 04-9049 DOC - 3/28/2011 - Status Conf., Volume 1 of 2

3

**APPEARANCES OF COUNSEL (Continued):**

FOR CARLOS GUSTAVO MACHADO GOMEZ:

          LAW OFFICES OF MARK E. OVERLAND
          By:  MARK E. OVERLAND  (not present)
               Attorney at Law
          100 Wilshire Boulevard
          Suite 950
          Santa Monica, California 90401
          (310) 459-2830

          - AND -

          SCHEPER KIM & HARRIS LLP
          BY:  ALEXANDER H. COTE
               Attorney at Law
          601 West 5th Street
          12th Floor
          Los Angeles, California 90071
          (213) 613-4660

CV 04-9049 DOC - 3/28/2011 - Status Conf., Volume 1 of 2

4

1                              **I N D E X**

2    **PROCEEDINGS**                              **PAGE**

3    Discussion re equitable tolling                5

4    Discussion re trade secret                     13

5    Discussion re constructive trust               29

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
|       | 1  | **SANTA ANA, CALIFORNIA, MONDAY, MARCH 28, 2011**                  |
|       | 2  | **Status Conference, Volume 1 of 2**                              |
|       | 3  | (10:23 a.m.)                                                        |
| 10:23 | 4  | *(Outside the presence of the jury.)*                              |
| 10:23 | 5  | THE COURT:  All right.  Counsel are present.                       |
| 10:23 | 6  | And the first issue I've discussed informally with                 |
| 10:24 | 7  | Counsel, but I want to make certain is on the record, is the       |
| 10:24 | 8  | Court didn't include equitable tolling questions because I         |
| 10:24 | 9  | think that those principles were already incorporated in the       |
| 10:24 | 10 | statute of limitations on the statutory claims.  This jury         |
| 10:24 | 11 | is not making a decision on the statute of limitations.            |
| 10:24 | 12 | They're making a finding:  A date.  The Court would apply          |
| 10:24 | 13 | equitable tolling, if any; and that's why I did not include        |
| 10:24 | 14 | those instructions.                                                |
| 10:24 | 15 | So let me hear from Ms. Hurst, first.                              |
| 10:24 | 16 | MS. HURST:  We disagree with the approach of                       |
| 10:24 | 17 | asking for a special verdict on the date, and we believe          |
| 10:24 | 18 | we're entitled to a verdict on the defense of the statute of       |
| 10:24 | 19 | limitations, up or down.  We think the Court has to instruct       |
| 10:24 | 20 | on the relation-back date and make these decisions, and we         |
| 10:24 | 21 | want a verdict on whether we've met the defense or not.            |
| 10:24 | 22 | And for reasons that we briefed and have discussed                 |
| 10:25 | 23 | in the relation-back briefing, Mattel's not entitled to            |
| 10:25 | 24 | equitable tolling any way.  But in all events, it's                |
| 10:25 | 25 | certainly not entitled to the benefit of these doctrines           |

10:25   1    against parties who were later named, not until 2006;

10:25   2    namely, Mr. Larian and MGA Hong Kong.

10:25   3             So our view is that the -- giving the jury a

10:25   4    series of dates and "pick one" approach, does not work.

10:25   5             THE COURT:  Okay.  Mattel.

10:25   6             MR. ZELLER:  Well, to state the obvious, the

10:25   7    Court, of course, has discretion in how issues are presented

10:25   8    to the jury.  It doesn't have to be done in some conclusory

10:25   9    form in the manner that MGA is suggesting.  There's no

10:25   10   authority to suggest that that's the way it has to be

10:25   11   submitted to the jury.  I have not heard from MGA any

10:25   12   authority as to why a jury would determine an equitable

10:25   13   tolling issue.

10:25   14            But let me also talk about this from just a

10:26   15   practical perspective, which is, MGA has blocked the

10:26   16   introduction of evidence at virtually every turn during the

10:26   17   course of this trial concerning dates of when people

10:26   18   received information.

10:26   19            To be fair, in order to go through this -- and

10:26   20   we're actually contemplating making a submission of a

10:26   21   request for judicial notice to the Court -- but, of course,

10:26   22   the Court's ruling on equitable tolling instructions will be

10:26   23   very helpful for us in terms of how we go forward.  But

10:26   24   right now, the jury doesn't even have the information at

10:26   25   hand it would need in order to make that determination, if

| 10:26 | 1  | it were instructed on equitable tolling. |
| 10:26 | 2  | For example, MGA did not produce the key documents |
| 10:26 | 3  | that we have relied upon for purposes of showing that there |
| 10:26 | 4  | was -- in fact, MGA knew that Carter Bryant was a Mattel |
| 10:26 | 5  | employee and was actively working on Bratz while a Mattel |
| 10:26 | 6  | employee.  MGA withheld that discovery for many months; and, |
| 10:27 | 7  | in fact, in some instances years.  So the jury would need to |
| 10:27 | 8  | know that for purposes of determining, really, a fair date, |
| 10:27 | 9  | if MGA intends all of this to be submitted to the jury. |
| 10:27 | 10 | I mean, by necessity, it means we would have to |
| 10:27 | 11 | get into the back and forth of discover, when certain |
| 10:27 | 12 | documents were produced, why they weren't produced |
| 10:27 | 13 | previously -- all the very things that MGA has routinely and |
| 10:27 | 14 | repeatedly blocked us from getting into.  In fact, to the |
| 10:27 | 15 | contrary, Judge, the factual record that MGA has attempted |
| 10:27 | 16 | to make so far is a very misleading one that's in front of |
| 10:27 | 17 | the jury, which creates even more danger. |
| 10:27 | 18 | And the example I would cite is, is that, for |
| 10:27 | 19 | their own claims, MGA repeatedly suggested to the jury -- |
| 10:27 | 20 | this was through the Kilpin examination, as well as through |
| 10:27 | 21 | Friedman -- that the toy fair allegations were included in |
| 10:27 | 22 | their 2005 complaint, which we all know -- and, in fact, |
| 10:27 | 23 | Ms. Hurst conceded, even off the record this morning -- is |
| 10:28 | 24 | not correct. |
| 10:28 | 25 | So, I mean, there would be a tremendous amount of |

| | | |
|---|---|---|
| 10:28 | 1 | work, including, by way of judicial notice and instructions |
| 10:28 | 2 | to the jury, to really clean up this record to give the jury |
| 10:28 | 3 | the basic, even undisputed, factual information it would |
| 10:28 | 4 | need to make that determination.  So I think, as a practical |
| 10:28 | 5 | matter, MGA really has waived any position that would permit |
| 10:28 | 6 | it to argue that equitable tolling needs to go to this jury. |
| 10:28 | 7 | THE COURT:  Ms. Hurst, how does enough information |
| 10:28 | 8 | go to the jury to have the jury make a fair decision in this |
| 10:28 | 9 | regard? |
| 10:28 | 10 | MS. KELLER:  I don't think the jury should get |
| 10:28 | 11 | equitable tolling.  That's not -- our view is that we're |
| 10:28 | 12 | entitled to a verdict on the statute of limitations.  Our |
| 10:28 | 13 | view is equitable tolling doesn't apply.  It -- as a matter |
| 10:28 | 14 | of law, equitable tolling doesn't apply here. |
| 10:28 | 15 | But even if it does, the Court -- I mean, if the |
| 10:28 | 16 | Court wants a special verdict in addition to a general |
| 10:29 | 17 | question on the statute of limitations, ultimately, that |
| 10:29 | 18 | will be in the Court's discretion.  But we want "yea" or |
| 10:29 | 19 | "nay," up or down, thumbs-up/thumbs-down on statute of |
| 10:29 | 20 | limitations. |
| 10:29 | 21 | I'd like to address a couple of the things that |
| 10:29 | 22 | Mr. Zeller said because I've heard this before, and I really |
| 10:29 | 23 | want to put it to rest. |
| 10:29 | 24 | It is false that anyone has been suggesting that |
| 10:29 | 25 | the toy fair allegations were in the 2005 complaint.  We |

10:29   1   were asking questions about whether the filing of the 2005

10:29   2   unfair competition complaint affected Mattel's conduct.

10:29   3   That's two different things.  Apparently, they can't

10:29   4   understand the distinction.

10:29   5          But there was an allegation of serial copying in

10:29   6   that complaint.  And now we know, five years later, how they

10:29   7   effectuated the serial copying, which was through the

10:29   8   sneaking into the showrooms to get the advance information.

10:29   9          There's no doubt that the filing of that complaint

10:29  10   affected their conduct.  We know that because, when

10:30  11   Mr. Moore takes the stand this week, the Court will hear

10:30  12   that he had ten -- "ten" -- meetings or conversations with

10:30  13   Mr. Villasenor between June and December of 2005.  Ten.

10:30  14          Now, there's a difference between saying that the

10:30  15   allegation is in that complaint and proving, as we will do,

10:30  16   that that complaint affected Mattel's conduct.  And I

10:30  17   just -- this misrepresentation and mischaracterization of

10:30  18   the evidence that MGA has been seeking to introduce is just

10:30  19   wholly inappropriate.

10:30  20          Now, equitable tolling simply does not apply here

10:30  21   to at least two of the defendants:  Mr. Larian and MGA

10:30  22   Hong Kong.  And in out view it doesn't apply to the third

10:30  23   defendant, as well:  MGA.

10:31  24          For the reasons described in our brief, Docket --

10:31  25   filed at Docket 10179 -- and this is the relation-back

Case 2:04-cv-09049-DOC-RNB   Document 10322   Filed 03/30/11   Page 10 of 58   Page ID #:313264
CV 04-9049 DOC - 3/28/2011 - Status Conf., Volume 1 of 2

10

| | | |
|---|---|---|
| 10:31 | 1 | argument that we really need to have -- the Court is gonna |
| 10:31 | 2 | have to make the decision about this.  And the Court is |
| 10:31 | 3 | gonna have to decide whether equitable tolling applies or |
| 10:31 | 4 | not in deciding what the relation-back date is. |
| 10:31 | 5 | THE COURT:  And why do I have to make that now? |
| 10:31 | 6 | MS. HURST:  You can't ask the jury an open-ended |
| 10:31 | 7 | question about when Mattel was on notice. |
| 10:31 | 8 | THE COURT:  Why? |
| 10:31 | 9 | MS. HURST:  There's no way -- |
| 10:31 | 10 | THE COURT:  I'm sorry.  It has nothing to do with |
| 10:31 | 11 | equitable tolling. |
| 10:31 | 12 | MS. HURST:  That's not gonna work. |
| 10:31 | 13 | THE COURT:  The question really is when should |
| 10:31 | 14 | Mattel have had knowledge or reasonable knowledge of these |
| 10:31 | 15 | activities.  And I don't understand the relation to the |
| 10:31 | 16 | issue of equitable tolling and why that has to be made now. |
| 10:32 | 17 | MS. HURST:  I don't -- look, to be clear, our view |
| 10:32 | 18 | is equitable tolling doesn't belong in the case, so, in our |
| 10:32 | 19 | view, you don't have to do anything with it.  Okay? |
| 10:32 | 20 | THE COURT:  Just a moment.  It may depend upon |
| 10:32 | 21 | what entity we're dealing with, and that becomes |
| 10:32 | 22 | extraordinarily difficult for the jury to decide:  Taking a |
| 10:32 | 23 | position that possibly it doesn't belong with Hong Kong, but |
| 10:32 | 24 | it may with MGA. |
| 10:32 | 25 | Now, you've already seen an opinion about |

| | | |
|---|---|---|
| 10:32 | 1 | relation-back that I've written in that regard.  But I don't |
| 10:32 | 2 | know, once again, what that -- why that is decided, and what |
| 10:32 | 3 | relationship it has to equitable tolling at this juncture. |
| 10:32 | 4 | All I'm asking the jury is the standard.  I apply |
| 10:32 | 5 | equitable tolling, and I apply it specifically, or not |
| 10:32 | 6 | specifically, to each of these entities.  That's a judicial |
| 10:32 | 7 | decision, it seems. |
| 10:32 | 8 | MS. HURST:  The problem is that the jury is really |
| 10:32 | 9 | entitled to be instructed on the statute of limitations and |
| 10:33 | 10 | to make a decision about whether the claim was stale or not. |
| 10:33 | 11 | We're entitled to have the jury be instructed on our |
| 10:33 | 12 | defense -- it's our theory of the case -- and to have a |
| 10:33 | 13 | verdict on it. |
| 10:33 | 14 | THE COURT:  What case law stands for that |
| 10:33 | 15 | proposition:  "I'm entitled to get a special verdict on a |
| 10:33 | 16 | 17200 claim," "I'm entitled to get a special finding on |
| 10:33 | 17 | 'ideas.'"  "I'm entitled to get a special finding on statute |
| 10:33 | 18 | of limitations"? |
| 10:33 | 19 | But the application, at least of statute of |
| 10:33 | 20 | limitations, which is rarely submitted to the jury, isn't |
| 10:33 | 21 | something that normally occurs. |
| 10:33 | 22 | Courts usually make that decision.  I've made that |
| 10:33 | 23 | decision to send this to the jury, so I don't know under |
| 10:33 | 24 | what case law you feel you're entitled. |
| 10:33 | 25 | MS. HURST:  Your Honor, I mean, the reason we have |

| | | |
|---|---|---|
| 10:33 | 1 | form instructions on the statute of limitations is because |
| 10:33 | 2 | it's a legal defense.  It's a legal defense.  It goes to the |
| 10:33 | 3 | jury. |
| 10:33 | 4 | THE COURT:  Okay. |
| 10:33 | 5 | MS. HURST:  I mean, I'll find cases that stand for |
| 10:33 | 6 | the general proposition that when you have a defense, you're |
| 10:33 | 7 | entitled to have the jury charged on it. |
| 10:33 | 8 | THE COURT:  Do it quickly 'cause time's running |
| 10:33 | 9 | out. |
| 10:34 | 10 | Now, my second question's this:  There were two |
| 10:34 | 11 | reasons that I had this special question about MGA using |
| 10:34 | 12 | improper means to acquire the works created by Carter |
| 10:34 | 13 | Bryant. |
| 10:34 | 14 | First, wrongful acquisition is an element of your |
| 10:34 | 15 | claim for a constructive trust; and second, I think that |
| 10:34 | 16 | there may be an argument, acquisition by improper means may |
| 10:34 | 17 | be the only type of misappropriation not preempted by the |
| 10:34 | 18 | Copyright Act. |
| 10:34 | 19 | And I wanted to at least keep that special verdict |
| 10:34 | 20 | answer available for Circuit and on appeal. |
| 10:34 | 21 | Your thoughts about that. |
| 10:34 | 22 | MS. HURST:  We agree, the question should be |
| 10:34 | 23 | asked. |
| 10:34 | 24 | THE COURT:  Okay. |
| 10:34 | 25 | MR. ZELLER:  One reaction I have to it, |

| | | |
|---|---|---|
| 10:34 | 1 | Your Honor -- and this is a little bit off the cuff, I |
| 10:34 | 2 | admit, so I'd want to go back and look at some authority on |
| 10:34 | 3 | this -- but I believe another formulation where trade secret |
| 10:35 | 4 | misappropriation could be found under these circumstances, |
| 10:35 | 5 | is that, if MGA took the information with knowledge that |
| 10:35 | 6 | Carter Bryant was in breach of his obligations. |
| 10:35 | 7 | Now, that may come under the heading, generally, |
| 10:35 | 8 | of involving wrongful conduct, but I think there may be a |
| 10:35 | 9 | little bit more just in terms of the phraseology. |
| 10:35 | 10 | THE COURT: Okay. Well, I'm going to put the same |
| 10:35 | 11 | pressure on you now that I am MGA. You've got very limited |
| 10:35 | 12 | time, literally hours now. |
| 10:35 | 13 | MR. ZELLER: We will get something to the Court |
| 10:35 | 14 | this morning. |
| 10:35 | 15 | THE COURT: Finally, I'm trying to be fair to both |
| 10:35 | 16 | parties regarding the specific trade secrets that you've |
| 10:35 | 17 | each claimed. And this has been, really, a sliding, if you |
| 10:35 | 18 | will, trade secret issue for both of you. It started with |
| 10:35 | 19 | Mattel, and now it's ending up with complaints about MGA. |
| 10:35 | 20 | I think Mattel, obviously, wants to be more |
| 10:35 | 21 | specific beyond just a multi-ethnic line of fashion dolls. |
| 10:35 | 22 | So I'm suggesting a solution that I simply instruct the jury |
| 10:36 | 23 | that your claim as trade secret -- you claim, as trade |
| 10:36 | 24 | secrets, all the information in Bryant's works. The concept |
| 10:36 | 25 | that you identify, or the ideas that you identify are all |

| | | |
|---|---|---|
| 10:36 | 1 | contained in the works. |
| 10:36 | 2 | I don't -- asking myself the question, has there |
| 10:36 | 3 | ever been a trade secret case where you identify the |
| 10:36 | 4 | document and then the concept contained in the document |
| 10:36 | 5 | separately?  So, I guess, finally, I don't understand why |
| 10:36 | 6 | all the concepts and ideas that are being claimed as trade |
| 10:36 | 7 | secrets are not already contained in the works.  And I think |
| 10:36 | 8 | that maybe my effort was to make certain that these buckets |
| 10:36 | 9 | be created, which has caused confusion.  But it's been a |
| 10:36 | 10 | very thoughtful process for the Court, quite frankly, to |
| 10:36 | 11 | really give the Circuit the best definitions possible to |
| 10:36 | 12 | protect the verdict if they thought the verdict was |
| 10:36 | 13 | appropriate, but not the damages; to give them a way of |
| 10:36 | 14 | segmenting out so the verdict survives for either party, |
| 10:36 | 15 | quite frankly, which is why I put the same request to MGA in |
| 10:36 | 16 | terms of these buckets, which seemed to be a little bit |
| 10:36 | 17 | broader. |
| 10:36 | 18 | So I'm going to hear from either party on this |
| 10:37 | 19 | matter. |
| 10:37 | 20 | MS. HURST:  I'll address that -- |
| 10:37 | 21 | MR. QUINN:  Your Honor, if I can -- |
| 10:37 | 22 | MS. HURST:  -- Your Honor, If I may. |
| 10:37 | 23 | THE COURT:  Just a moment.  Let me take Mattel |
| 10:37 | 24 | first, because we started with your trade secrets. |
| 10:37 | 25 | MR. QUINN:  Your Honor, I -- you know, we built |

| | | |
|---|---|---|
| 10:37 | 1 | our case around those buckets, including Mr. Wagner's |
| 10:37 | 2 | testimony and -- |
| 10:37 | 3 | THE COURT:  But doesn't this give you a broader -- |
| 10:37 | 4 | a broader sweep?  Doesn't this make your arguments easier? |
| 10:37 | 5 | I don't see how Wagner's harmed. |
| 10:37 | 6 | MR. QUINN:  Well, I think what the Court is |
| 10:37 | 7 | describing is basically what Buckets 1 and 2 are. |
| 10:37 | 8 | THE COURT:  I'm conflating them now. |
| 10:37 | 9 | MR. QUINN:  Yeah. |
| 10:37 | 10 | THE COURT:  I'm conflating them, quite frankly, |
| 10:37 | 11 | making it much easier. |
| 10:37 | 12 | MR. QUINN:  The only difference between Buckets 1 |
| 10:37 | 13 | and 2 was the "Bratz" name. |
| 10:37 | 14 | THE COURT:  Exactly. |
| 10:37 | 15 | MR. QUINN:  But -- I appreciate the Court's desire |
| 10:37 | 16 | to be even-handed here, but I don't think these are at all |
| 10:37 | 17 | parallel situations.  They were -- what they are now trying |
| 10:37 | 18 | to do is come up with new trade secrets, which were -- and |
| 10:38 | 19 | we're gonna show the Court this in a filing we'll make this |
| 10:38 | 20 | afternoon -- never identified by their 30(b)(6) trade |
| 10:38 | 21 | secrets witness, Mr. Jolicoeur; never identified in their |
| 10:38 | 22 | interrogatory answers asking them to list the trade secrets; |
| 10:38 | 23 | and three, never identified in Column A, where they were |
| 10:38 | 24 | told and ordered by the Court to identify the trade secrets. |
| 10:38 | 25 | THE COURT:  But don't they have the same complaint |

| | | |
|---|---|---|
| 10:38 | 1 | against Mattel? -- at the very beginning of this trial.  In |
| 10:38 | 2 | other words, until we had this informal discussion on a |
| 10:38 | 3 | Saturday, and I expressed my concern that I wanted to make |
| 10:38 | 4 | it as easy for the Circuit, and came up with this rough |
| 10:38 | 5 | sense of these buckets so that the verdict might be |
| 10:38 | 6 | protected, weren't we in the same position? |
| 10:38 | 7 | MR. QUINN:  Yeah.  And they were -- MGA was |
| 10:38 | 8 | squawking that we have identified our trade secrets with |
| 10:38 | 9 | particularly.  And the Court's solution to that was:  "Okay. |
| 10:38 | 10 | Both sides are gonna identify their trade secrets.  And |
| 10:38 | 11 | you're gonna be stuck with this."  This is what we were |
| 10:39 | 12 | told. |
| 10:39 | 13 | And if the answer now is, if anywhere in our |
| 10:39 | 14 | filing you can find a reference to something, it can be a |
| 10:39 | 15 | trade secret, whether or not it's specifically listed in |
| 10:39 | 16 | Exhibit A, that is completely unfair.  Then they have never |
| 10:39 | 17 | identified their trade secrets with particularity. |
| 10:39 | 18 | And the idea that pricing information is trade |
| 10:39 | 19 | secret, even though it's not listed in Column A as a trade |
| 10:39 | 20 | secret, because you can find it somewhere else, makes no |
| 10:39 | 21 | sense.  When you look at the purpose of those other |
| 10:39 | 22 | columns -- the second column is "Identify the Mattel |
| 10:39 | 23 | documents that reflect unauthorized use," and C is "Mattel |
| 10:39 | 24 | products that reflect the unauthorized use." |
| 10:39 | 25 | You're not going to find trade secrets -- you |

| 10:39 | 1 | know, pricing information referred to in Column C.  Product |
| 10:39 | 2 | reflecting unauthorized use, it's not there. |
| 10:39 | 3 | This is an *ex post facto* attempt at |
| 10:39 | 4 | justification -- justifying by MGA a change in course, and |
| 10:40 | 5 | springing something on us on the 34th day of trial.  That's |
| 10:40 | 6 | exactly what's happening here. |
| 10:40 | 7 | The -- the Court got to this point of saying, "You |
| 10:40 | 8 | need to identify with specificity," precisely in response to |
| 10:40 | 9 | MGA's objections that we weren't being specific.  And the |
| 10:40 | 10 | Court said, "I'm gonna" -- as I understood it -- "We're |
| 10:40 | 11 | gonna end this once and for all."  I remember vividly being |
| 10:40 | 12 | called into chambers, and saying, "You're both gonna do |
| 10:40 | 13 | these filings."  I think you told us, on a Tuesday, "I want |
| 10:40 | 14 | it by Friday, and you're gonna live with that." |
| 10:40 | 15 | And now we're hearing things that aren't in |
| 10:40 | 16 | Column A.  And if they can refer to column -- I mean, if you |
| 10:40 | 17 | look at Column B, and you go through their list here, and if |
| 10:40 | 18 | they're now free to say anything referenced anywhere in |
| 10:40 | 19 | Column B, which requires identification of documents, is |
| 10:40 | 20 | fair game as a trade secret, that renders this whole |
| 10:40 | 21 | exercise meaningless. |
| 10:40 | 22 | Because, you look at Column B -- Column B are the |
| 10:40 | 23 | documents.  So then anything in any one of those documents |
| 10:41 | 24 | in Column B is a trade secret, whether or not it's |
| 10:41 | 25 | identified in Column A.  And it doesn't match up with |

CV 04-9049 DOC – 3/28/2011 – Status Conf., Volume 1 of 2

18

| 10:41 | 1 | Column C, which is, you know, the Mattel product that |
| 10:41 | 2 | supposedly uses the trade secret. |
| 10:41 | 3 | I mean, this is -- this -- you know, the irony is |
| 10:41 | 4 | MGA is now trying to do, in spades, what they accused Mattel |
| 10:41 | 5 | of doing at the outset of the trial.  And, look, they've got |
| 10:41 | 6 | some 140 trade secrets that they identified.  And we're |
| 10:41 | 7 | gonna be filing a JMOL on those trade secret by trade |
| 10:41 | 8 | secret.  But to add 142, -43, -44, -45, -66 now is just |
| 10:41 | 9 | unfair.  It's too late. |
| 10:41 | 10 | THE COURT:  When will that finally be taking |
| 10:41 | 11 | place?  Because, remember, I want to get that weekend back |
| 10:41 | 12 | to you. |
| 10:41 | 13 | MR. QUINN:  Right. |
| 10:41 | 14 | THE COURT:  But I'll be through all my motions by |
| 10:41 | 15 | the time I give you your freedom. |
| 10:41 | 16 | MR. QUINN:  Right. |
| 10:41 | 17 | THE COURT:  I mean, as you each are now |
| 10:41 | 18 | mentioning, the additional -- fine, I understand that.  It's |
| 10:42 | 19 | always the same in complex litigation.  The last week is |
| 10:42 | 20 | really tough on the parties.  It's really hard. |
| 10:42 | 21 | MS. HURST:  May I respond? |
| 10:42 | 22 | MR. QUINN:  I can check on the status of that |
| 10:42 | 23 | filing.  But we think it's pretty clear that there will be a |
| 10:42 | 24 | complete failure of proof as to the trade secret status of |
| 10:42 | 25 | most of those.  As to those where there has been some |

CV 04-9049 DOC - 3/28/2011 - Status Conf., Volume 1 of 2

19

| | | |
|---|---|---|
| 10:42 | 1 | attempt to make proof, we will have press releases or |
| 10:42 | 2 | articles showing it was already public, or examples showing |
| 10:42 | 3 | that Mattel did the product first before MGA did. |
| 10:42 | 4 | Here, we have Mr. Larian on the stand saying these |
| 10:42 | 5 | products came out the same time.  And in some cases, he was |
| 10:42 | 6 | off by a full year.  And Mattel was, in some cases, first. |
| 10:42 | 7 | THE COURT:  Let me ask you something. |
| 10:42 | 8 | Why do you believe that you're not put on notice |
| 10:42 | 9 | concerning FOB, and that there's a difference between |
| 10:42 | 10 | product and the FOB?  Why do you draw that distinction? |
| 10:43 | 11 | Because, if I was MGA, I would argue that's a |
| 10:43 | 12 | logical nexus.  This isn't like two different lines.  And |
| 10:43 | 13 | FOB relates to the product.  In other words, the prejudice |
| 10:43 | 14 | here, if any, is de minimus. |
| 10:43 | 15 | MR. QUINN:  A lot of things relate to the product. |
| 10:43 | 16 | The advertising relates to the product.  The commercial |
| 10:43 | 17 | relates to the product.  The identity of where they're going |
| 10:43 | 18 | to sell something relates to the product.  That's why you |
| 10:43 | 19 | need to have some precision when you're litigating a trade |
| 10:43 | 20 | secrets case. |
| 10:43 | 21 | THE COURT:  So the FOB is something that is so |
| 10:43 | 22 | starkly nondefined before this time that -- |
| 10:43 | 23 | MR. QUINN:  Well, look at this Trade Secret No. 1: |
| 10:43 | 24 | "The appearance, operation, intended play pattern, and plans |
| 10:43 | 25 | to advertise on television for Bratz mobile --" |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 3/28/2011 - Status Conf., Volume 1 of 2

20

| | | |
|---|---|---|
| 10:43 | 1 | THE COURT: Okay. |
| 10:43 | 2 | MR. QUINN: -- that is the asserted trade secret. |
| 10:43 | 3 | That's Column A. No reference to price, none whatsoever. |
| 10:43 | 4 | But they've got a description of what they claim is the |
| 10:44 | 5 | trade secret. |
| 10:44 | 6 | Column B, the judge ordered -- and we did the same |
| 10:44 | 7 | thing -- "Documents or other items that reflect the |
| 10:44 | 8 | unauthorized use." |
| 10:44 | 9 | They have a page out of one of Sal Villasenor's |
| 10:44 | 10 | toy fair reports. |
| 10:44 | 11 | THE COURT: With "FOB" at the bottom. |
| 10:44 | 12 | MR. QUINN: Huh? |
| 10:44 | 13 | THE COURT: With "FOB" at the bottom. |
| 10:44 | 14 | MR. QUINN: And it has "FOB" at the bottom. But |
| 10:44 | 15 | that, you know, shows this -- it shows a picture of the |
| 10:44 | 16 | Bratz mobile, the claim for which the "appearance, |
| 10:44 | 17 | operation, and intended play pattern, and plans to |
| 10:44 | 18 | advertise" were the trade secret. |
| 10:44 | 19 | We're not put on notice that this number down at |
| 10:44 | 20 | the bottom is a claimed trade secret. |
| 10:44 | 21 | And then Column C, "Mattel products that reflect |
| 10:44 | 22 | unauthorized use of the trade secret," and the Mattel |
| 10:44 | 23 | product is identified as "Club Birthday Car with radio." |
| 10:44 | 24 | "Mattel Club Birthday Car copied at least the |
| 10:44 | 25 | following elements from MGA's Bratz FM cruiser mobile," |

CV 04-9049 DOC – 3/28/2011 – Status Conf., Volume 1 of 2

21

| | | |
|---|---|---|
| 10:44 | 1 | colon:  "Working radio." |
| 10:45 | 2 | THE COURT:  Okay. |
| 10:45 | 3 | MR. QUINN:  So that's it.  That's it.  There's |
| 10:45 | 4 | nothing here that says we used the pricing; that our |
| 10:45 | 5 | product, uh -- you know, that Mattel's Club Birthday Car -- |
| 10:45 | 6 | somehow we undercut them on price.  No clue.  No hint. |
| 10:45 | 7 | Uh, you know, I'm amazed that -- frankly, that |
| 10:45 | 8 | we're having this discussion, in view of the Court's |
| 10:45 | 9 | explicit warning that you had to submit a Column A that |
| 10:45 | 10 | specifically identified the trade secrets because of MGA's |
| 10:45 | 11 | insistence that we hadn't been clear. |
| 10:45 | 12 | And here, now we are scrutinizing the documents |
| 10:45 | 13 | they identify in Column B, and they're arguing to you, "If |
| 10:45 | 14 | we can find anything, anywhere in one of those documents in |
| 10:45 | 15 | Column B, then we get to claim that as a trade secret |
| 10:45 | 16 | whether or not it's in A, or whether or not it makes any |
| 10:45 | 17 | sense in light of C."  It's preposterous. |
| 10:45 | 18 | THE COURT:  Okay.  Counsel. |
| 10:46 | 19 | MS. HURST:  So we're having two points now.  The |
| 10:46 | 20 | Court started with the point about their definition of trade |
| 10:46 | 21 | secret, and we've got -- we're on our definition of trade |
| 10:46 | 22 | secret, too.  I'm gonna address the latter first, and then |
| 10:46 | 23 | go back to the former. |
| 10:46 | 24 | On the face of our trade secret chart, it |
| 10:46 | 25 | identifies that they obtained our FOB pricing information. |

| 10:46 | 1 | THE COURT:  Show me. |
| 10:46 | 2 | MS. HURST:  The Court -- I believe Mr. Quinn |
| 10:46 | 3 | handed it up earlier. |
| 10:46 | 4 | THE COURT:  I've got it in chambers. |
| 10:46 | 5 | MS. HURST:  I don't have an extra copy right now, |
| 10:46 | 6 | Your Honor. |
| 10:46 | 7 | FOB pricing, every one of their documents that |
| 10:46 | 8 | include that information -- our sell sheets, our price |
| 10:46 | 9 | lists -- all that stuff is identified in the chart.  For |
| 10:46 | 10 | them to now claim they didn't understand that that was a |
| 10:46 | 11 | trade secret definition -- they are all literally parsing it |
| 10:46 | 12 | between one column and the other to say they weren't on |
| 10:46 | 13 | notice.  It's ridiculous.  And it's especially -- |
| 10:46 | 14 | THE COURT:  Well, I also let you delay the |
| 10:46 | 15 | identification until you got to your case. |
| 10:46 | 16 | MS. HURST:  Right.  And that's the other thing, is |
| 10:46 | 17 | that, we didn't have -- and he's complaining because he says |
| 10:47 | 18 | Column 3 doesn't reflect the use of the information -- they |
| 10:47 | 19 | never produced discovery on what they did with all the |
| 10:47 | 20 | information.  We found out about that a month before the |
| 10:47 | 21 | close of discovery.  We did everything we could in that |
| 10:47 | 22 | short period of time. |
| 10:47 | 23 | But Mr. Malackowski will come and testify that it |
| 10:47 | 24 | is reasonable to conclude, based on their systematic use of |
| 10:47 | 25 | this information -- especially with respect to the entire |

| 10:47 | 1 | MyScene product line -- and will put a damages number on. |
| 10:47 | 2 | And they -- that's all been fully disclosed to them, and |
| 10:47 | 3 | reports, and they've deposed people up the wazoo on it. |
| 10:47 | 4 | Mr. Larian talked about price at length in his deposition as |
| 10:47 | 5 | a 30(b)(6) witness. |
| 10:47 | 6 | I mean, they never identified Bratz, anything like |
| 10:47 | 7 | Bratz, as a trade secret the way they did in their trade |
| 10:47 | 8 | secret chart, either in 30(b)(6) testimony, interrogatories |
| 10:47 | 9 | or anything else. |
| 10:47 | 10 | So -- and to give the Court an example, looking |
| 10:47 | 11 | at, you know, Document 9803-3, which is their identification |
| 10:48 | 12 | of the Mexico trade secrets, they just say it's the |
| 10:48 | 13 | document.  And that's exactly what we did in our chart with |
| 10:48 | 14 | respect to these documents that they obtained.  The -- both |
| 10:48 | 15 | parties did exactly the same thing.  We systematically |
| 10:48 | 16 | identified the documents that contained the trade secret |
| 10:48 | 17 | information.  And right on the chart it says, "FOB pricing." |
| 10:48 | 18 | MR. QUINN:  Well -- |
| 10:48 | 19 | MS. HURST:  So I'm -- please do not interrupt me, |
| 10:48 | 20 | Mr. Quinn. |
| 10:48 | 21 | THE COURT:  Just a moment.  I'm only speaking to |
| 10:48 | 22 | you now, Ms. Hurst.  And then I'll speak to Mr. Quinn |
| 10:48 | 23 | without you interrupting. |
| 10:48 | 24 | MS. HURST:  Now, to go back to the Court's |
| 10:48 | 25 | proposal that the jury simply be charged that the Bratz |

| | | |
|---|---|---|
| 10:48 | 1 | trade secret is the information in these documents, the |
| 10:48 | 2 | Court cannot -- please do not do that.  That would be legal |
| 10:48 | 3 | error.  It would be a terrible error.  It would totally run |
| 10:48 | 4 | afoul of the IMAX -- the Ninth Circuit case, the IMAX case. |
| 10:48 | 5 | And it doesn't allow the jury to evaluate the prior art in |
| 10:48 | 6 | combinations, what prior art was already disclosed, whether |
| 10:49 | 7 | the thing is really secret or not -- it's gonna create a -- |
| 10:49 | 8 | it's gonna be obvious that the claim is preempted.  I mean, |
| 10:49 | 9 | that would just be a terrible error. |
| 10:49 | 10 | I -- you know, whatever complaints they want to |
| 10:49 | 11 | make about inconsistency -- first, we don't think the Court |
| 10:49 | 12 | is being inconsistent -- but the court can't do that. |
| 10:49 | 13 | As the Court will see, when we file our remaining |
| 10:49 | 14 | JMOLs this week -- I mean, we're going to ask to strike |
| 10:49 | 15 | their entire designation and/or preclude it from going to |
| 10:49 | 16 | the jury on the ground that it violates IMAX anyway. |
| 10:49 | 17 | Because concepts like "hip," "urban," "edgy" are not the |
| 10:49 | 18 | kind of things that are sufficiently defined to ever qualify |
| 10:49 | 19 | as a trade secret. |
| 10:49 | 20 | Additionally, the Court will see that the |
| 10:49 | 21 | statutory definition of information in the Uniform Trade |
| 10:50 | 22 | Secrets Act, that this -- nothing here would meet the |
| 10:50 | 23 | statute requirement, which requires knowledge of facts or |
| 10:50 | 24 | circumstances.  It's knowledge about real world events. |
| 10:50 | 25 | And here, I'd just like to say there is no case |

Case 2:04-cv-09049-DOC-RNB   Document 10322   Filed 03/30/11   Page 25 of 58   Page ID #:313279
CV 04-9049 DOC - 3/28/2011 - Status Conf., Volume 1 of 2

25

| | | |
|---|---|---|
| 10:50 | 1 | under the -- under any version of the Uniform Trade Secret |
| 10:50 | 2 | Act holding that these types of creative works can satisfy |
| 10:50 | 3 | the trade secret definition. |
| 10:50 | 4 | They've argued *ad nauseam* that we didn't come up |
| 10:50 | 5 | with a case on preemption.  The real problem here is not |
| 10:50 | 6 | that we didn't come up with a case on preemption, it's that |
| 10:50 | 7 | no court has ever held that these type of works qualify as a |
| 10:50 | 8 | trade secret under the statutory definition. |
| 10:50 | 9 | And the one Circuit -- appellate court that we |
| 10:50 | 10 | have found that has considered anything close to the issue, |
| 10:50 | 11 | which is that *Stromback* case, has said it is not a trade |
| 10:50 | 12 | secret.  And that's how the court solved the problem between |
| 10:50 | 13 | copyright preemption and trade secret.  It just said this |
| 10:51 | 14 | kind of work can't be, as a matter of law, a trade secret. |
| 10:51 | 15 | They've never cited a single case that a creative |
| 10:51 | 16 | work of this kind can be a trade secret the way they're |
| 10:51 | 17 | claiming here. |
| 10:51 | 18 | So I just urge the Court not to do what it |
| 10:51 | 19 | suggested and simply charge the jury that the information in |
| 10:51 | 20 | the drawings and sculpts is somehow a trade secret.  We've |
| 10:51 | 21 | formed -- we've shaped our case -- I mean, the Court |
| 10:51 | 22 | undoubtedly heard my examination of Ms. Fontanella on each |
| 10:51 | 23 | element in Bucket 1.  We can't go back and fix that now. |
| 10:51 | 24 | THE COURT:  Okay. |
| 10:51 | 25 | Then, Mr. Quinn, without interruption from |

| | | |
|---|---|---|
| 10:51 | 1 | Ms. Hurst. |
| 10:51 | 2 | MR. QUINN:  Your Honor, I did not hear any |
| 10:51 | 3 | response to the point about Column 1.  The Court ordered, |
| 10:51 | 4 | "You will submit Column A identifying the trade secrets; |
| 10:51 | 5 | Column B, showing documents reflecting the use; and column |
| 10:51 | 6 | C, identify the product that reflects the use." |
| 10:51 | 7 | Their claimed trade secret was "the appearance, |
| 10:52 | 8 | operation, intended play pattern, and plans to advertise on |
| 10:52 | 9 | television for the Bratz mobile."  No reference to pricing. |
| 10:52 | 10 | And I challenge -- I challenge MGA's counsel, and all of |
| 10:52 | 11 | them, to find anyplace in any deposition where they claimed |
| 10:52 | 12 | pricing information was trade secret.  They never did it. |
| 10:52 | 13 | Their 30(b)(6) witness, Mr. Jolicoeur, who we |
| 10:52 | 14 | would love to depose on this subject, but never did, because |
| 10:52 | 15 | he didn't identify it as a trade secret.  Mr. Larian didn't |
| 10:52 | 16 | claim it was a trade secret.  They didn't in their answers |
| 10:52 | 17 | to interrogatories. |
| 10:52 | 18 | I mean, this -- if they can do this now and just |
| 10:52 | 19 | say, "It was enough for us to refer to a document and |
| 10:52 | 20 | anything within the four corners of that, we can now claim, |
| 10:52 | 21 | 34 days into trial, is a trade secret," utterly defeats the |
| 10:52 | 22 | purpose of the discovery, defeats the purpose of this |
| 10:52 | 23 | Court's February 1 order requiring us both to definitively |
| 10:53 | 24 | identify trade secrets, and it's completely unfair to |
| 10:53 | 25 | Mattel. |

| | | |
|---|---|---|
| 10:53 | 1 | I mean, we should be permitted to reopen.  I mean, |
| 10:53 | 2 | this pricing issue was never in this case until Mr. Larian |
| 10:53 | 3 | took the stand. |
| 10:53 | 4 | THE COURT:  Okay.  Now, without interruption from |
| 10:53 | 5 | Mr. Quinn, Ms. Hurst. |
| 10:53 | 6 | MS. HURST:  They never identified Bratz -- their |
| 10:53 | 7 | claim, buckets of Bratz, trade secrets -- ever in this case |
| 10:53 | 8 | in seven years.  I mean, as the Court knows, we think |
| 10:53 | 9 | they've never even pled that claim.  It does not lie in the |
| 10:53 | 10 | mouth of that party to come here and complain that, on the |
| 10:53 | 11 | face of our trade secret designation, FOB pricing is there, |
| 10:53 | 12 | but we got it in the wrong column so they didn't figure it |
| 10:53 | 13 | out. |
| 10:53 | 14 | That's ridiculous. |
| 10:53 | 15 | Now, I will -- I'm sorry.  I'm having computer |
| 10:53 | 16 | problems this morning.  I will provide the Court with the |
| 10:53 | 17 | passages from Mr. Larian's testimony where he talks about |
| 10:54 | 18 | pricing.  He says it's confidential.  He says, "I don't |
| 10:54 | 19 | understand what the legal definition of a trade secret is, |
| 10:54 | 20 | or not, but as far as I'm concerned, it was confidential. |
| 10:54 | 21 | It was not supposed to be shared.  We undertook steps to try |
| 10:54 | 22 | to keep it secret by controlling access to our showroom and |
| 10:54 | 23 | only handing it out under limited circumstances," and so |
| 10:54 | 24 | forth.  That's right in Mr. Larian's 30(b)(6) deposition. |
| 10:54 | 25 | It's the same thing he came here and said. |

| | | |
|---|---|---|
| 10:54 | 1 | It's for the jury to decide whether that can |
| 10:54 | 2 | qualify as a trade secret or not when the information has to |
| 10:54 | 3 | be shared with the retailer as part of the ordinary course |
| 10:54 | 4 | of business.  And that's all the distinction that was made |
| 10:54 | 5 | by Mr. Larian in his deposition. |
| 10:54 | 6 | "I don't know what the technical legal definition |
| 10:54 | 7 | of a trade secret is," here are the facts about our claim. |
| 10:54 | 8 | And then those facts were carried through, into the chart, |
| 10:54 | 9 | where, on the face of it, it identifies the Mattel documents |
| 10:54 | 10 | containing information, and it says right on it, "FOB |
| 10:54 | 11 | pricing."  So for them to claim that somehow we got it in |
| 10:55 | 12 | the wrong column and so they didn't understand it was a |
| 10:55 | 13 | trade secret, when the entire first part of their case in |
| 10:55 | 14 | Mexico was about preliminary line lists and other documents |
| 10:55 | 15 | containing their, A, price information that they claim is a |
| 10:55 | 16 | trade secret -- it's ridiculous. |
| 10:55 | 17 | They claimed the very same type of information was |
| 10:55 | 18 | a trade secret stolen by Mr. Machado and Ms. Trueba and |
| 10:55 | 19 | Mr. Vargas in Mexico.  For them to come here and say they |
| 10:55 | 20 | don't understand that's a trade secret after they spent the |
| 10:55 | 21 | first half of their case claiming that it was and making |
| 10:55 | 22 | claims on this basis is absurd. |
| 10:55 | 23 | THE COURT:  All right.  Now I'm go to stop. |
| 10:55 | 24 | There's going to be some more information rolling |
| 10:55 | 25 | out to you.  Okay?  So just have a seat. |

| | | |
|---|---|---|
| 10:55 | 1 | I can tell today's going to be a busy day and |
| 10:55 | 2 | evening.  I'll be right back with you. |
| 10:56 | 3 | *(Pause in the proceedings at 10:56 a.m.)* |
| 11:07 | 4 | *(Proceedings resumed at 11:07 a.m.)* |
| 11:07 | 5 | THE COURT:  Isn't the constructive trust entirely |
| 11:07 | 6 | superceded by CUTSA? |
| 11:08 | 7 | Ms. Hurst? |
| 11:08 | 8 | MS. HURST:  Yes.  That's an available remedy under |
| 11:08 | 9 | CUTSA. |
| 11:08 | 10 | THE COURT:  Mr. Zeller? |
| 11:08 | 11 | MR. ZELLER:  I'm sorry.  Could the Court repeat |
| 11:08 | 12 | the question? |
| 11:08 | 13 | THE COURT:  Yes.  Isn't the constructive trust |
| 11:08 | 14 | entirely superceded by CUTSA? |
| 11:08 | 15 | MR. ZELLER:  I don't think so, Your Honor.  And |
| 11:08 | 16 | part of it has to do with -- or perhaps the key reason is, |
| 11:08 | 17 | is that constructive trust is a remedy.  I mean, the trade |
| 11:08 | 18 | secret act does not -- |
| 11:08 | 19 | *(Mr. Quinn re-enters the courtroom.)* |
| 11:08 | 20 | THE COURT:  I'm sorry.  Mr. Quinn, the question |
| 11:08 | 21 | is, isn't the constructive trust entirely superseded by |
| 11:08 | 22 | CUTSA?  We're just starting. |
| 11:08 | 23 | MR. ZELLER:  I wouldn't agree that it's |
| 11:08 | 24 | superseded.  Constructive trust is a remedy.  Constructive |
| 11:08 | 25 | trust is a remedy that would potentially flow from trade |

11:08  1    secret misappropriation, so it's not a separate claim such

11:08  2    that supersession would apply.

11:08  3              THE COURT:  And why would I cause a special

11:08  4    verdict to that issue?  Why would I instruct on this issue?

11:08  5              MR. ZELLER:  Well, I don't know that the -- well,

11:09  6    the reason why I think it would be -- the reason to submit

11:09  7    it to the jury, a question to the jury, is, is in order to

11:09  8    determine whether or not the Court should grant that kind of

11:09  9    relief.

11:09  10             Ultimately, that would be up to the Court.  But as

11:09  11   I understood where we were, in terms of what was being

11:09  12   submitted to the jury -- and this is, of course, written

11:09  13   large, this is not necessarily the particulars -- but the

11:09  14   overall construct here is to submit these questions to the

11:09  15   jury to help, in some instances, guide the Court's ultimate

11:09  16   determination.  Even on the equitable relief, we've had that

11:09  17   conversation with the 17200 claims, with some of the other

11:09  18   equitable issues in the case so --

11:09  19             THE COURT:  But you both have balancing 17200

11:09  20   claims.  Here, I just don't know why that's being submitted

11:09  21   or I'm asking for a special finding.

11:10  22             MR. ZELLER:  I think, in that particular instance,

11:10  23   the Ninth Circuit has said -- and this is, of course, the

11:10  24   bottom line of its opinion is, is that, the Court can, of

11:10  25   course, consider any kind of equitable relief that it deems

| | | |
|---|---|---|
| 11:10 | 1 | to be appropriate based upon appropriate findings and |
| 11:10 | 2 | further proceedings.  So that chapter has yet to be written |
| 11:10 | 3 | in terms of what this Court ultimately can and should do in |
| 11:10 | 4 | terms of equitable remedies depending upon the verdict. |
| 11:10 | 5 | We do think it would be beneficial for the jury to |
| 11:10 | 6 | be asked. |
| 11:10 | 7 | THE COURT:  Now, just a moment. |
| 11:10 | 8 | Why? |
| 11:10 | 9 | MR. ZELLER:  Well, because we believe that, given |
| 11:10 | 10 | again the landscape of what we're dealing with here, which |
| 11:10 | 11 | are the various other kind of equitable issues that are |
| 11:10 | 12 | already going to this jury, that this is an important one. |
| 11:10 | 13 | I mean, the -- so far, you know, Mattel has not been given, |
| 11:11 | 14 | you know, an equitable remedy that's actually ever been |
| 11:11 | 15 | implemented.  And to have a jury making factual findings |
| 11:11 | 16 | based upon -- |
| 11:11 | 17 | THE COURT:  Just a moment.  Just a moment.  You've |
| 11:11 | 18 | got a 17200 claim. |
| 11:11 | 19 | MR. ZELLER:  Well, but that's not going to answer |
| 11:11 | 20 | the question of constructive trust, necessarily.  And the |
| 11:11 | 21 | kind of relief that the Court should grant.  I mean, I would |
| 11:11 | 22 | actually say, Your Honor, that -- I mean, we would be |
| 11:11 | 23 | comfortable with the idea that questions about whether |
| 11:11 | 24 | forward-looking remedies, such as injunctive relief versus |
| 11:11 | 25 | an ongoing royalty, is something that would be a fair |

11:11   1   question for this jury to consider.

11:11   2            And part of it has to do with this, Your Honor:

11:11   3   During the first trial -- I mean, we do feel like we were

11:11   4   put into this kind of catch 22 untenable position -- MGA

11:11   5   blurted out in front of the jury, basically, "Don't award a

11:11   6   large damages number against us because we're going to be

11:12   7   enjoined down the line by the Court if we lose, so we're

11:12   8   gonna be punished by the Court."

11:12   9            THE COURT:  At the first trial, that kind of

11:12   10  rolled out?

11:12   11           MR. ZELLER:  Right.  Rolled it right out over our

11:12   12  objection.

11:12   13           And then, post trial, they used the jury's verdict

11:12   14  size to basically try to undo the injunctive relief.  This

11:12   15  way, the jury will understand there's a full array of

11:12   16  options -- a menu, if you like, available to it.  It can

11:12   17  decide that perhaps maybe less monetary relief in the past

11:12   18  is warranted because it's going to believe that a future

11:12   19  remedy is appropriate, or vice versa.

11:12   20           And so, I think, having the jury have full

11:12   21  information about what, in fact, would potentially be

11:12   22  available and having it make findings, and in some instances

11:12   23  advisory verdicts on those issues, I think benefits

11:12   24  everybody.  And that's why.  I think just looking at it kind

11:12   25  of from a holistic point of view.

| | | |
|---|---|---|
| 11:12 | 1 | I mean, it's a little hard to argue perhaps or |
| 11:12 | 2 | articulate very well why something as granular as |
| 11:13 | 3 | constructive trust should go perhaps.  But I think as an |
| 11:13 | 4 | overall kind of picture/landscape for the jury to understand |
| 11:13 | 5 | is, is that, yes, there are -- their verdict will have |
| 11:13 | 6 | consequences in terms of past damages that are awarded, but |
| 11:13 | 7 | also potentially what's going forward.  And they can balance |
| 11:13 | 8 | all of that in terms of where do they think this should go. |
| 11:13 | 9 | THE COURT:  Okay. |
| 11:13 | 10 | All right.  Ms. Hurst. |
| 11:13 | 11 | MS. HURST:  Your Honor, the constructive trust is |
| 11:13 | 12 | not a remedy that's available under the Uniform Trade |
| 11:13 | 13 | Secrets Act.  I'm looking for my citation of authority on |
| 11:13 | 14 | that right now, and I'm just not finding it.  But I will.  I |
| 11:13 | 15 | mean, we've filed briefs on this and discussed it before. |
| 11:13 | 16 | THE COURT:  Well, take your time, because things |
| 11:13 | 17 | are rolling out now.  You have no idea what is coming today. |
| 11:13 | 18 | So this is it. |
| 11:13 | 19 | MS. HURST:  It's not a remedy -- |
| 11:13 | 20 | THE COURT:  Take your time.  Quit talking.  Take |
| 11:13 | 21 | your time.  I'm giving you that time. |
| 11:13 | 22 | But these doors are shutting very, very quickly. |
| 11:18 | 23 | I'll come back in just a moment. |
| 11:18 | 24 | MS. HURST:  I'm sorry. |
| 11:18 | 25 | THE COURT:  Take your time. |

| | | |
|---|---|---|
| 11:19 | 1 | Find it. |
| 11:19 | 2 | *(Pause in the proceedings at 11:19 a.m.)* |
| 11:20 | 3 | *(Proceedings resumed at 11:33 a.m.)* |
| 11:33 | 4 | THE COURT:  Both of you come up to the lectern. |
| 11:33 | 5 | *(Document provided to counsel.)* |
| 11:33 | 6 | THE COURT:  My question is, I recognize, |
| 11:33 | 7 | Mr. Quinn, your concern about specifically instructing the |
| 11:33 | 8 | jury about whether ideas are covered by the term |
| 11:33 | 9 | "inventions" and how the jury might be confused about that. |
| 11:33 | 10 | But the Ninth Circuit's opinion makes clear that the |
| 11:34 | 11 | question must be asked as a predicate to the imposition of a |
| 11:34 | 12 | constructive trust. |
| 11:34 | 13 | So Mattel's the party seeking the constructive |
| 11:34 | 14 | trust remedy in this case.  It seems to me that the Uniform |
| 11:34 | 15 | Trade Secrets Act, which supersedes all claims and remedies |
| 11:34 | 16 | based upon the misappropriation of information and ideas, |
| 11:34 | 17 | does not make available constructive trust.  But I |
| 11:34 | 18 | understand that Mattel may want to preserve this issue for |
| 11:34 | 19 | post-trial issues and appeal. |
| 11:34 | 20 | So if I presented you with the choice, what would |
| 11:34 | 21 | your answer be to this Hobson's choice: |
| 11:34 | 22 | If you want to abandon your claim for constructive |
| 11:34 | 23 | trust, then should I consider removing the questions about |
| 11:34 | 24 | ideas?  If not, wouldn't it stay in because that's what the |
| 11:34 | 25 | Ninth Circuit told me to do? |

CV 04-9049 DOC – 3/28/2011 – Status Conf., Volume 1 of 2

35

| | | |
|---|---|---|
| 11:34 | 1 | In other words, as -- we're serving different |
| 11:34 | 2 | masters, in a sense.  Remember, this is one of the few cases |
| 11:34 | 3 | where I'm getting a whole directive coming from the Ninth |
| 11:34 | 4 | Circuit, so I'm not *de novo* on this.  So -- and I don't mean |
| 11:35 | 5 | to put you in that position, but the argument may be, |
| 11:35 | 6 | "Judge, we're willing to remove constructive trust, and |
| 11:35 | 7 | ideas shouldn't go to the jury in that." |
| 11:35 | 8 | But, by the same token, that's just what the |
| 11:35 | 9 | Circuit asked for.  And maybe you're right, maybe, even |
| 11:35 | 10 | though I might tentatively feel constructive trust has |
| 11:35 | 11 | nothing to do with -- in light of the new trade secret |
| 11:35 | 12 | misappropriation claim -- maybe you're right.  Maybe that |
| 11:35 | 13 | should be preserved. |
| 11:35 | 14 | So take a moment and think about that.  These are |
| 11:35 | 15 | tough choices. |
| 11:35 | 16 | Don't turn the page.  It's none of your concern. |
| 11:35 | 17 | It doesn't help you at all. |
| 11:35 | 18 | MR. ZELLER:  Okay. |
| 11:35 | 19 | THE COURT:  Okay.  These are all tentative |
| 11:35 | 20 | thoughts.  And I've redone Ms. Hurst's work, and I'm waiting |
| 11:35 | 21 | for your work, and I've done my own work, and it's still in |
| 11:35 | 22 | flux. |
| 11:36 | 23 | Ms. Hurst, while they're doing that, do you have a |
| 11:36 | 24 | case to cite? |
| 11:36 | 25 | MS. HURST:  I do, Your Honor. |

| | | |
|---|---|---|
| 11:36 | 1 | First, I'm just gonna cite the statute itself, |
| 11:36 | 2 | which has a comprehensive remedial scheme in 3246.2 and |
| 11:36 | 3 | 3426.3.  And that comprehensive remedial scheme defines the |
| 11:36 | 4 | circumstances under which equitable remedies can be granted. |
| 11:36 | 5 | And a constructive trust is not one of the available |
| 11:36 | 6 | options. |
| 11:36 | 7 | The Ninth Circuit, in an -- I'm embarrassed to |
| 11:36 | 8 | say -- an unpublished opinion has adopted that reasoning. |
| 11:36 | 9 | That is the -- |
| 11:36 | 10 | THE COURT:  Judge Kozinski doesn't rely upon them. |
| 11:36 | 11 | MS. HURST:  I know, Your Honor.  But I'm gonna |
| 11:36 | 12 | give you the cite anyway. |
| 11:37 | 13 | THE COURT:  I don't relay upon them.  I completely |
| 11:37 | 14 | agree with him on that.  I don't think they have the dignity |
| 11:37 | 15 | of a published opinion, frankly -- other than the reasoning |
| 11:37 | 16 | process.  Unfortunately, I didn't see the reasoning process |
| 11:37 | 17 | on duty of loyalty, frankly.  She's a fabulous colleague.  I |
| 11:37 | 18 | think it was something a law clerk wrote briefly about, |
| 11:37 | 19 | adopted, and moved on. |
| 11:37 | 20 | MS. HURST:  Your Honor, just for the record, I'll |
| 11:37 | 21 | give you the cite.  I know that Your Honor may not look upon |
| 11:37 | 22 | it -- it's *B. Braun Medical v. Rogers*, 163 Federal Appendix |
| 11:37 | 23 | 500, Ninth Circuit, January 13, 2006. |
| 11:37 | 24 | It's also available at 206 Westlaw 92879. |
| 11:37 | 25 | THE COURT:  I'll look at it for the reasoning |

Case 2:04-cv-09049-DOC-RNB   Document 10322   Filed 03/30/11   Page 37 of 58   Page ID #:313291
CV 04-9049 DOC - 3/28/2011 - Status Conf., Volume 1 of 2

37

| | | |
|---|---|---|
| 11:37 | 1 | process, but that's about it.  And I don't tend to rely on |
| 11:37 | 2 | unpublished opinions. |
| 11:38 | 3 | MR. ZELLER:  And what I would -- |
| 11:38 | 4 | THE COURT:  No, no.  Let me finish with Ms. Hurst. |
| 11:38 | 5 | MR. ZELLER:  I apologize. |
| 11:38 | 6 | THE COURT:  Any other cases that you want to cite? |
| 11:38 | 7 | MS. HURST:  I had thought that there was a |
| 11:38 | 8 | District Court decision and a Federal Circuit opinion on |
| 11:38 | 9 | this, as well, but I haven't found them in the time that |
| 11:38 | 10 | we've taken the break, Your Honor.  I apologize. |
| 11:38 | 11 | THE COURT:  Well, the doors are closing, like I've |
| 11:38 | 12 | said.  You've got minutes now, not hours. |
| 11:38 | 13 | MS. HURST:  Yeah.  I mean, this is really a plain |
| 11:38 | 14 | meaning argument, from our perspective. |
| 11:38 | 15 | THE COURT:  Okay.  Mr. Zeller. |
| 11:38 | 16 | MR. ZELLER:  The plain meaning of the statute -- |
| 11:38 | 17 | and I will quote it -- this is subsection C that has not |
| 11:38 | 18 | been called out by MGA here.  Quote, "In appropriate |
| 11:38 | 19 | circumstances affirmative acts to protect a trade secret may |
| 11:38 | 20 | be compelled by court order," end quote. |
| 11:38 | 21 | That is extremely open-ended.  There is nothing |
| 11:38 | 22 | that suggests that traditional equitable remedies of all |
| 11:38 | 23 | kinds -- |
| 11:38 | 24 | THE COURT:  Thank you. |
| 11:38 | 25 | MR. ZELLER:  -- have been foreclosed. |

| | | |
|---|---|---|
| 11:38 | 1 | THE COURT:  Now, answer my question.  What do you |
| 11:38 | 2 | want to do? |
| 11:38 | 3 | MR. ZELLER:  With respect to the verdict form? |
| 11:38 | 4 | THE COURT:  Well, I'm giving you that choice.  I'm |
| 11:38 | 5 | not saying give me the choice.  I'm interested in your |
| 11:38 | 6 | answer. |
| 11:39 | 7 | Abandon your claim for constructive trust and |
| 11:39 | 8 | potentially have the Court remove the question about ideas? |
| 11:39 | 9 | MR. ZELLER:  I do -- |
| 11:39 | 10 | THE COURT:  The Ninth Circuit is really enthralled |
| 11:39 | 11 | with this idea of "ideas." |
| 11:39 | 12 | MR. ZELLER:  Sure.  I will confess that I, and |
| 11:39 | 13 | Mr. Quinn too -- we were discussing this.  We're not quite |
| 11:39 | 14 | certain the construct for this choice, as to why this would |
| 11:39 | 15 | be a choice between constructive trust as opposed to -- |
| 11:39 | 16 | THE COURT:  No answer is your answer. |
| 11:39 | 17 | MR. ZELLER:  Well, it's just that we don't |
| 11:39 | 18 | understand fully, Your Honor.  That's all.  It's obviously |
| 11:39 | 19 | our failing.  But we're struggling to understand here -- |
| 11:39 | 20 | perhaps, if I just try and repeat it back. |
| 11:39 | 21 | THE COURT:  Let me repeat it back to you. |
| 11:39 | 22 | I might tentatively feel that the Uniform Trade |
| 11:39 | 23 | Secrets Act supersedes all claims and remedies based upon |
| 11:39 | 24 | misappropriation of information and ideas and does not make |
| 11:39 | 25 | available a constructive trust. |

| | | |
|---|---|---|
| 11:39 | 1 | Now, if I felt that, obviously, I would remove |
| 11:40 | 2 | constructive trust.  And if I removed constructive trust, |
| 11:40 | 3 | would I remove this concept of ideas? |
| 11:40 | 4 | But Mattel is the one making the argument that you |
| 11:40 | 5 | want constructive trust left in these claims.  In other |
| 11:40 | 6 | words, you're driving the ship right now. |
| 11:40 | 7 | MR. ZELLER:  Now I think I get it, Your Honor. |
| 11:40 | 8 | THE COURT:  Okay. |
| 11:40 | 9 | MR. ZELLER:  If I could just have a moment. |
| 11:40 | 10 | THE COURT:  Sure. |
| 11:40 | 11 | Now, remember, when you're -- Mike, remember, when |
| 11:40 | 12 | you're asking for all this, remember the time we've spent on |
| 11:41 | 13 | this idea of "ideas."  But you really, in a sense, hold the |
| 11:41 | 14 | first decision. |
| 11:41 | 15 | Doesn't mean I'll follow it.  But you really have |
| 11:41 | 16 | the first decision to make about how I potentially respond, |
| 11:41 | 17 | and Ms. Hurst responds. |
| 11:41 | 18 | Now, the problem is, look, if you remove that, the |
| 11:41 | 19 | problem potentially becomes what are you arguing?  Designs? |
| 11:41 | 20 | Are you limiting yourself?  Your whole -- the whole guise of |
| 11:41 | 21 | your argument thus far has been, look, anybody with the |
| 11:41 | 22 | brain of a chimpanzee would realize that they've got ideas |
| 11:41 | 23 | included in this contract, and you're to suppose that. |
| 11:41 | 24 | Now, if I take that away, because you're pushing |
| 11:42 | 25 | for constructive trust, if I belief trade secret |

DEBBIE GALE, U.S. COURT REPORTER

| 11:42 | 1 | misappropriation, don't you take away your strongest |
| 11:42 | 2 | argument?  In other words, you can't have it both ways. |
| 11:42 | 3 | And so I know you're battling for constructive |
| 11:42 | 4 | trust, but it doesn't seem to make a lot of sense. |
| 11:42 | 5 | It seems to me what Mattel really wants is you |
| 11:42 | 6 | really want a decision on ideas.  You really want to say to |
| 11:42 | 7 | the jury, "Look, 'ideas' is included in this.  Everybody |
| 11:42 | 8 | understood it," because, without that, you're left with |
| 11:42 | 9 | designs. |
| 11:42 | 10 | None of your case was -- your case wasn't |
| 11:42 | 11 | fashioned around designs.  It's a fallback argument, |
| 11:42 | 12 | regardless of what Mr. Quinn says.  So the end result is, if |
| 11:42 | 13 | you're pushing for constructive trust, my impression is that |
| 11:42 | 14 | I should be removing -- strike that -- I might consider |
| 11:42 | 15 | removing "ideas." |
| 11:43 | 16 | And you have to make that initial decision and |
| 11:43 | 17 | guide me so I know where you stand on this.  But it seems |
| 11:43 | 18 | very contradictory. |
| 11:43 | 19 | Do you understand what we're saying, Ms. Hurst? |
| 11:43 | 20 | MS. HURST:  I do. |
| 11:43 | 21 | THE COURT:  Doesn't mean you have to agree with |
| 11:43 | 22 | it.  I'm just waiting for Mattel's answer to this. |
| 11:43 | 23 | By the way, I'm really going to miss -- let me say |
| 11:43 | 24 | this:  I'm really going to miss Ms. Hurst and Mr. Zeller. |
| 11:43 | 25 | I've found our discussions, even if you haven't, to be |

| | | |
|---|---|---|
| 11:43 | 1 | fascinating. |
| 11:43 | 2 | MR. ZELLER:  There's still the antitrust case, |
| 11:43 | 3 | Judge.  I'm not going anywhere. |
| 11:43 | 4 | THE COURT:  Oh, I know. |
| 11:43 | 5 | Well, if MGA's smart, Ms. Hurst isn't going |
| 11:43 | 6 | anyplace either.  She'll be right here with us on the MGA |
| 11:43 | 7 | antitrust case. |
| 11:43 | 8 | MS. HURST:  No.  I'm going home.  I will not be |
| 11:43 | 9 | here. |
| 11:43 | 10 | THE COURT:  Well, you can watch from afar. |
| 11:43 | 11 | MS. HURST:  That reminds me, actually -- well, I |
| 11:43 | 12 | don't want to disrupt their inquiries. |
| 11:43 | 13 | THE COURT:  Okay. |
| 11:44 | 14 | MR. ZELLER:  Our reaction to this is as follows, |
| 11:44 | 15 | Your Honor:  We think -- you know, without quibbling over |
| 11:44 | 16 | the language here, we do think that, in some form, it needs |
| 11:44 | 17 | to be put to the jury about whether or not, uh, these ideas |
| 11:44 | 18 | are covered.  And so I -- I don't think that whether that |
| 11:44 | 19 | continues to stay in the verdict form should be solely |
| 11:44 | 20 | driven by the notion of whether there's some further |
| 11:44 | 21 | question about -- that would illuminate constructive trust. |
| 11:44 | 22 | THE COURT:  I know that will be your position. |
| 11:44 | 23 | That's not the question I'm asking.  I'm putting you to the |
| 11:44 | 24 | Hobson's choice.  If I don't agree with you, what do you |
| 11:44 | 25 | want? |

| 11:44 | 1 | MR. ZELLER: We would want the ideas. Again, not |
| 11:44 | 2 | the language, but we'd want that question presented to the |
| 11:44 | 3 | jury, yes. |
| 11:44 | 4 | THE COURT: Okay. And if I had the choice -- if |
| 11:44 | 5 | I, as a judicial officer, felt that I had the choice for |
| 11:44 | 6 | consistency of feeling then that the Uniform Trade Secret |
| 11:45 | 7 | Act supersedes all claims and remedies based upon this |
| 11:45 | 8 | misappropriation of information and ideas, I want you to |
| 11:45 | 9 | understand I may be inclined to remove constructive trust. |
| 11:45 | 10 | Do you understand that? |
| 11:45 | 11 | MR. ZELLER: Okay. |
| 11:45 | 12 | THE COURT: Okay. That doesn't mean you agree |
| 11:45 | 13 | with it. |
| 11:45 | 14 | MR. ZELLER: Correct. |
| 11:45 | 15 | THE COURT: You may have an appealable issue on |
| 11:45 | 16 | that. Okay? But I'm trying to talk that out with you. |
| 11:45 | 17 | All right. Ms. Hurst. |
| 11:45 | 18 | MR. ZELLER: Understood. Thank you. |
| 11:45 | 19 | MS. HURST: I think the parties are in agreement |
| 11:45 | 20 | that there should be a question in the verdict form about |
| 11:45 | 21 | ownership of ideas. And we think it goes beyond the idea |
| 11:45 | 22 | for the Bratz name, and also to -- the trade secret |
| 11:45 | 23 | combinations of ideas also need to be asked about. |
| 11:45 | 24 | And the Court went on at some length in the |
| 11:45 | 25 | summary judgment order -- 'cause one of our concerns had |

| 11:45 | 1 | been that they wouldn't establish ownership of the trade |
| 11:45 | 2 | secrets, and then we would -- we would be looking at them |
| 11:45 | 3 | not having established ownership of the Bratz trade secrets, |
| 11:46 | 4 | but still having some trade secret claim.  And the Court, at |
| 11:46 | 5 | that time said, "Don't worry.  They're gonna have to |
| 11:46 | 6 | establish ownership of the Bratz trade secrets, as well as |
| 11:46 | 7 | the Bratz designs." |
| 11:46 | 8 | THE COURT:  All right.  Let me talk to you about |
| 11:46 | 9 | one more concept that's troublesome to me.  These are broad, |
| 11:46 | 10 | general ideas. |
| 11:46 | 11 | The Circuit never said that an equitable trust |
| 11:46 | 12 | would not occur.  All the Circuit said was it needed to be |
| 11:46 | 13 | narrowed.  "Needed to be narrowed." |
| 11:46 | 14 | Obviously, the Circuit was revolted by the scope |
| 11:46 | 15 | of the trust, but it never said that a constructive trust |
| 11:46 | 16 | couldn't lie appropriately in this case. |
| 11:46 | 17 | My fear is this:  That, without a question going |
| 11:46 | 18 | to the jury that is specifically answered about a |
| 11:47 | 19 | constructive trust, even if I feel that the trade secret |
| 11:47 | 20 | misappropriation, Ms. Hurst, supersedes this -- all |
| 11:47 | 21 | right? -- that there's gonna be a motion filed by either |
| 11:47 | 22 | Mattel or MGA.  And we're going to be right back into an |
| 11:47 | 23 | issue that could have been decided upon by the jury. |
| 11:47 | 24 | So let's give you for the moment, hypothetically, |
| 11:47 | 25 | an agreement that constructive trust may not be an |

11:47    1   appropriate issue for this jury in light of the new trade
11:47    2   secret misappropriation.
11:47    3            Are we together?
11:47    4            MS. HURST:  Yeah.
11:47    5            THE COURT:  Okay.  Now, the jury comes back, and
11:47    6   we can't determine, depending upon the verdict, how big or
11:47    7   small that's going to be, when it could have been easily
11:47    8   answered by the jury.
11:47    9            So Mattel now files a motion, because we have
11:47   10   nonclarity, and the Judge is supposed to decide that, and I
11:47   11   have nonclarity, and I start now trying to decide the scope
11:48   12   of that equitable relief, that constructive trust, where the
11:48   13   jury could have given us the exact directions, even in light
11:48   14   of it being a superseded claim.
11:48   15            Let me say it a different way.  I never know the
11:48   16   scope unless I ask the question of the jury.  And if I don't
11:48   17   know the scope, then we're right back in here for a month or
11:48   18   two of briefing on this practical matter, with Mattel saying
11:48   19   "It's this big," and MGA saying, "You know, the verdict went
11:48   20   against us, but it's this big."  It's very small.
11:48   21            So what I'm saying to you is, for both sides, I
11:48   22   recognize the legal issues.  I want all of us to discuss the
11:48   23   pragmatic issues.
11:48   24            And now I turn that back to you and
11:48   25   Mr. McConville, and even Ms. Keller, for a brief discussion.

| | | |
|---|---|---|
| 11:48 | 1 | Because I think this:  Remember, I'm entitled to look at a |
| 11:49 | 2 | civil jury verdict in chambers.  I can take it back when the |
| 11:49 | 3 | jury renders it.  If I see inconsistency, I can bring that |
| 11:49 | 4 | to your attention, and I can send it right back with the |
| 11:49 | 5 | jury.  I can even give a directed verdict to the jury.  I |
| 11:49 | 6 | can even comment upon evidence.  It's amazing what we can |
| 11:49 | 7 | do. |
| 11:49 | 8 | MR. QUINN:  You can comment on evidence in this |
| 11:49 | 9 | country? |
| 11:49 | 10 | THE COURT:  You certainly can on the civil side. |
| 11:49 | 11 | Absolutely. |
| 11:49 | 12 | MR. QUINN:  I didn't know that. |
| 11:49 | 13 | THE COURT:  Yes, you can.  On the civil side, |
| 11:49 | 14 | Courts can.  We shouldn't, but we can. |
| 11:49 | 15 | MR. QUINN:  They do that all the time, of course, |
| 11:49 | 16 | in the UK. |
| 11:49 | 17 | THE COURT:  Absolutely.  And we can in this |
| 11:49 | 18 | country, also. |
| 11:49 | 19 | But the end result is, I want you now to look |
| 11:49 | 20 | farther than the legal issue and assume for a moment that |
| 11:49 | 21 | the verdict came back disfavorable to MGA, and it had a high |
| 11:49 | 22 | dollar amount in terms of the trade secret misappropriation, |
| 11:49 | 23 | giving Mattel -- whether I reduce that or not, whatever I |
| 11:50 | 24 | found on the 17200 -- giving Mattel the opportunity to argue |
| 11:50 | 25 | to this Court and the Circuit the verdict -- let's say |

CV 04-9049 DOC - 3/28/2011 - Status Conf., Volume 1 of 2

46

| 11:50 | 1 | 300 million.  Big verdict.  That calls for a big equitable |
| 11:50 | 2 | constructive trust. |
| 11:50 | 3 | Now, that may not have any symmetry at all. |
| 11:50 | 4 | MS. HURST:  Yes. |
| 11:50 | 5 | THE COURT:  You understand what I'm saying? |
| 11:50 | 6 | MS. HURST:  Yes. |
| 11:50 | 7 | THE COURT:  And that could be so easily answered |
| 11:50 | 8 | by the jury at the same time.  And it's a way of checking |
| 11:50 | 9 | their consistency, even though, as a practical matter, I |
| 11:50 | 10 | might agree with you.  Trade secret misappropriation |
| 11:50 | 11 | supersedes -- by the Uniform Trade Secrets Act. |
| 11:50 | 12 | MS. HURST:  So assuming that the conversation is |
| 11:50 | 13 | proceeding from the premise that this is an available remedy |
| 11:50 | 14 | with which we disagree, and putting that disagreement |
| 11:50 | 15 | aside -- |
| 11:50 | 16 | THE COURT:  Assume for a moment that I tentatively |
| 11:50 | 17 | agree with you. |
| 11:50 | 18 | MS. HURST:  Yeah. |
| 11:50 | 19 | THE COURT:  Okay.  I'm trying to foresee the |
| 11:50 | 20 | problems that occur that are practical problems that put it |
| 11:51 | 21 | right back in the Court's lap, in a sense, when I've got the |
| 11:51 | 22 | jury able to give us guidance on that question -- |
| 11:51 | 23 | MS. HURST:  All right.  I don't -- |
| 11:51 | 24 | THE COURT:  -- and consistency. |
| 11:51 | 25 | MS. HURST:  Yeah.  I think that there's not really |

| | | |
|---|---|---|
| 11:51 | 1 | a meaningful way to get the jury's guidance on this because |
| 11:51 | 2 | of the multiplicity of legal arguments and factors that go |
| 11:51 | 3 | into this. |
| 11:51 | 4 | THE COURT: Why not? |
| 11:51 | 5 | You've set out the boxes for me. In other words, |
| 11:51 | 6 | you've done a masterful job. You'll see that I'm adopting a |
| 11:51 | 7 | significant amount of your work. The boxes are better put |
| 11:51 | 8 | together. Now, I'm waiting for Mike Zeller's return. But I |
| 11:51 | 9 | really like some of the constructs that you came up with. |
| 11:51 | 10 | And I didn't see any reason that I didn't have that |
| 11:51 | 11 | consistency in a claim that might not be appropriate to go |
| 11:51 | 12 | to the jury to answer the very onslaught that I thought I |
| 11:51 | 13 | would get possibly at the end of the case, in case the |
| 11:51 | 14 | verdict was against MGA. |
| 11:51 | 15 | That's my fear. |
| 11:51 | 16 | MS. HURST: So here's the reason: The reason |
| 11:51 | 17 | that, even if a constructive trust was available, it would |
| 11:52 | 18 | have to still -- and the Ninth Circuit said this -- it would |
| 11:52 | 19 | still have to account for the value contributed by MGA, |
| 11:52 | 20 | which would mean as a forward-looking remedy. The Court |
| 11:52 | 21 | would have to consider, as alternatives to that, reasonable |
| 11:52 | 22 | royalty and the other things that we have already said don't |
| 11:52 | 23 | go to the jury. |
| 11:52 | 24 | THE COURT: Judge Trott's position from the |
| 11:52 | 25 | beginning. |

| 11:52 | 1 | MS. HURST: Right. And so this is for the Court. |
| 11:52 | 2 | It is not for the jury. Because all of those things have to |
| 11:52 | 3 | be considered as a piece. And we know that the jury is not |
| 11:52 | 4 | supposed to be considering reasonable royalty for all the |
| 11:52 | 5 | myriad reasons we've previously discussed. |
| 11:52 | 6 | And so, um, you can't -- you really can't divorce |
| 11:52 | 7 | all these equitable remedies from each other. The |
| 11:52 | 8 | injunctive relief, the reasonable royalty, the constructive |
| 11:52 | 9 | trust -- these things are all part and parcel of one |
| 11:53 | 10 | consideration. And they all influence each other. |
| 11:53 | 11 | THE COURT: You have to also reflect possibly on |
| 11:53 | 12 | the wisdom of Judge Trott's suggestion, even though it's, |
| 11:53 | 13 | quote/unquote, not legally available. I mean, this whole |
| 11:53 | 14 | case resolves very quickly with a running reasonable royalty |
| 11:53 | 15 | that the Court would assign. And where would your |
| 11:53 | 16 | reasonable royalty be? Potentially down with Carter Bryant, |
| 11:53 | 17 | which adds up to, quite frankly, a not too great sum. |
| 11:53 | 18 | If it's 3 percent of even a billion dollars, what |
| 11:53 | 19 | are you dealing with? 30 million? |
| 11:53 | 20 | MR. ZELLER: Hard to say. |
| 11:53 | 21 | THE COURT: Yeah. You're dealing with about |
| 11:53 | 22 | $30 million. Judge Trott probably hit, in pragmatic terms, |
| 11:53 | 23 | you know, just equitably, a really ingenuous solution. The |
| 11:53 | 24 | problem is we're stuck with the law. And I say that |
| 11:53 | 25 | jokingly. |

| 11:53 | 1  | Now, Mr. Zeller. |
| 11:53 | 2  | MR. ZELLER:  I mean, it seems to me that it's not |
| 11:54 | 3  | that mysterious to submit this to a jury.  I mean, the |
| 11:54 | 4  | overarching question is on a going-forward basis, looking |
| 11:54 | 5  | into the future:  Jury, who should make this?  Should it be |
| 11:54 | 6  | Mattel?  Should it be MGA?  And depending on the answer to |
| 11:54 | 7  | that, should there be some royalty that's paid? |
| 11:54 | 8  | THE COURT:  That's the question I asked of MGA is |
| 11:54 | 9  | this:  How is that reversible error?  In other words, not |
| 11:54 | 10 | wanting to really have both of you sit through the trial |
| 11:54 | 11 | again -- although, I enjoy your company -- how is that |
| 11:54 | 12 | reversible error, even if I'm wrong on trade secret |
| 11:54 | 13 | misappropriation?  Because there's arguments on Mattel's |
| 11:54 | 14 | side that the 17200, as an equitable remedy, shouldn't go to |
| 11:54 | 15 | the jury.  You know, it's co-equal on your side that 17200 |
| 11:54 | 16 | can go as an advisory opinion. |
| 11:54 | 17 | In other words, how is that wrong? |
| 11:54 | 18 | MS. HURST:  It's wrong because it's gonna require |
| 11:54 | 19 | consideration of things that, first of all, have not been |
| 11:55 | 20 | put in evidence by either party at this point.  And second |
| 11:55 | 21 | of all, would improperly influence the other determinations |
| 11:55 | 22 | that the jury has to make. |
| 11:55 | 23 | THE COURT:  In what way?  That's what I don't |
| 11:55 | 24 | understand. |
| 11:55 | 25 | MS. HURST:  Well, for example, I mean, the |

| | | |
|---|---|---|
| 11:55 | 1 | reasonable royalty evidence would have to be considered as |
| 11:55 | 2 | part of this constructive trust analysis.  And that, as the |
| 11:55 | 3 | Court has already held, is improper -- would be improper in |
| 11:55 | 4 | front of the jury. |
| 11:55 | 5 | THE COURT:  No, no.  I would just get a ruling on |
| 11:55 | 6 | constructive trust.  And wouldn't I get the same boxes? |
| 11:55 | 7 | MS. HURST:  What question are you asking? |
| 11:55 | 8 | THE COURT:  I mean, my same boxes, I would know my |
| 11:55 | 9 | finite universe, wouldn't I? |
| 11:55 | 10 | MS. HURST:  No.  Because you would have to ask |
| 11:55 | 11 | conditioned on what? |
| 11:55 | 12 | And, in fact, Mr. Zeller's comment just now is |
| 11:55 | 13 | remarkable and showing exactly what's wrong with this. |
| 11:55 | 14 | Mattel's not gonna exploit Bratz.  And we haven't had a |
| 11:55 | 15 | trial about whether Mattel would exploit Bratz or not, if it |
| 11:55 | 16 | got those rights.  And that's something that we would have a |
| 11:56 | 17 | trial about if the jury was being asked that question. |
| 11:56 | 18 | And we know there's evidence about that, and then |
| 11:56 | 19 | we'd be back into the wrongful injunction, which the Court |
| 11:56 | 20 | has kept away from the jury, and all the discovery about |
| 11:56 | 21 | what they were doing to develop Bratz when they thought they |
| 11:56 | 22 | had the rights which the Court didn't allow.  I mean, |
| 11:56 | 23 | there's -- all that is part of this. |
| 11:56 | 24 | But the fundamental problem is that you can just |
| 11:56 | 25 | ask a question about constructive trust, because you have to |

| | | |
|--|--|--|
| 11:56 | 1 | consider alternatives.  The Court would be obliged to |
| 11:56 | 2 | consider what were all the available alternatives, and would |
| 11:56 | 3 | have to consider conditioning that remedy.  And there's not |
| 11:56 | 4 | any way to ask that in a simple question. |
| 11:56 | 5 | I mean, it's not just to turn this over to Mattel. |
| 11:56 | 6 | The Court is obliged, in its equitable jurisdiction, to |
| 11:56 | 7 | consider that alongside numerous other alternatives. |
| 11:56 | 8 | Maybe I'm not understanding what the question |
| 11:56 | 9 | would be. |
| 11:56 | 10 | THE COURT:  Maybe I'm not -- maybe I'm not clear |
| 11:56 | 11 | in my own mind, so let me restate it a different way. |
| 11:57 | 12 | There are so many aspects to the trade secret |
| 11:57 | 13 | misappropriation damages -- our buckets or boxes -- why |
| 11:57 | 14 | isn't it helpful for me to know, in a constructive trust |
| 11:57 | 15 | situation, whether I'm just dealing with drawings, if I'm |
| 11:57 | 16 | dealing with just sculpts, you know, if I'm dealing with |
| 11:57 | 17 | brands. |
| 11:57 | 18 | And what I'm afraid of is this:  They may decide |
| 11:57 | 19 | that in constructive trusts we're dealing with the drawings, |
| 11:57 | 20 | the sculpts, but they don't think that they're dealing with |
| 11:57 | 21 | what I'm going to call "brand," the subsequent trademarks |
| 11:57 | 22 | that come in.  Now that's gonna tell me that that's |
| 11:57 | 23 | de minimis.  In other words, my equitable relief, in terms |
| 11:57 | 24 | of a constructive trust, is very low-dollar figure, if |
| 11:57 | 25 | anything. |

CV 04-9049 DOC - 3/28/2011 - Status Conf., Volume 1 of 2

52

| | | |
|---|---|---|
| 11:57 | 1 | Whereas, if they've come back with what I'm going |
| 11:57 | 2 | to call "branding," in general, and they're sweeping the |
| 11:57 | 3 | whole board, that tells me potentially that my constructive |
| 11:58 | 4 | trust might be broad.  And therefore, the jury's giving me |
| 11:58 | 5 | direction.  Without me undertaking that independently, I'm |
| 11:58 | 6 | getting what I call an advisory opinion, in a sense.  And |
| 11:58 | 7 | it's something that the Circuit can look at and I can look |
| 11:58 | 8 | at.  That's why those buckets or boxes for both sides could |
| 11:58 | 9 | be extraordinarily helpful. |
| 11:58 | 10 | Otherwise, it's this:  Constructive trust applies. |
| 11:58 | 11 | How big is that supposed to be? |
| 11:58 | 12 | I take Judge Larson's position.  I sweep the |
| 11:58 | 13 | world.  Well, we know that the Circuit's going to disapprove |
| 11:58 | 14 | of that.  Okay? |
| 11:58 | 15 | Or I moderately sweep the world.  And the Circuit |
| 11:58 | 16 | sends it back to Judge Carter and says, "What was your basis |
| 11:58 | 17 | for, you know, this kind of equitable relief?" |
| 11:58 | 18 | How do I create that record, in a sense, or even |
| 11:58 | 19 | have advice? |
| 11:58 | 20 | Do we have another mini trial on that issue? |
| 11:58 | 21 | MS. HURST:  I think that maybe we're using |
| 11:58 | 22 | different terminology here. |
| 11:59 | 23 | We think that you should ask questions about |
| 11:59 | 24 | ownership as part of the declaratory relief. |
| 11:59 | 25 | THE COURT:  Ownership of what? |

| | | |
|---|---|---|
| 11:59 | 1 | MS. HURST:  Of the drawings and the sculpts that |
| 11:59 | 2 | are –– where the ownership is disputed –– |
| 11:59 | 3 | THE COURT:  Just a moment. |
| 11:59 | 4 | MS. HURST:  –– under the agreement. |
| 11:59 | 5 | THE COURT:  No.  Just a minute. |
| 11:59 | 6 | But from Mattel's position, they need to know, in |
| 11:59 | 7 | terms of a constructive trust, if that's broader.  They need |
| 11:59 | 8 | to know, and will argue, "Judge, that's not fair," and "It's |
| 11:59 | 9 | not fair because MGA's restricting us, in that kind of |
| 11:59 | 10 | factual determination or advice from the jury, very narrowly |
| 11:59 | 11 | to the sculpts, the drawing, the first generation dolls," |
| 11:59 | 12 | et cetera. |
| 11:59 | 13 | And their position will be on a constructive |
| 11:59 | 14 | trust –– look, if they hit big on the trade secret |
| 11:59 | 15 | misappropriation, and the intent of the jury is to sweep, |
| 11:59 | 16 | you know, the branding and the trademarks, and the eventual |
| 11:59 | 17 | development of these concepts, their argument's gonna be |
| 11:59 | 18 | "Judge, how can you restrict the questions to the jury so |
| 11:59 | 19 | narrowly?  Why shouldn't we have," what I'm going to call |
| 12:00 | 20 | "Bucket 1 and 2 for Mattel included in this?" |
| 12:00 | 21 | MS. HURST:  Well, because we haven't put on |
| 12:00 | 22 | evidence to defend against that claim in front of the jury. |
| 12:00 | 23 | I mean, we'd have to call –– here's the evidence |
| 12:00 | 24 | we'd have to put on for the jury to make a legitimate |
| 12:00 | 25 | consideration of that:  We'd have to bring in somebody to |

| | | |
|---|---|---|
| 12:00 | 1 | talk about what the worldwide trademark portfolio is, |
| 12:00 | 2 | exactly how much it cost to acquire it; and then we'd have |
| 12:00 | 3 | to put on the branding expert to say what the value of the |
| 12:00 | 4 | trademark portfolio is. |
| 12:00 | 5 | And to consider that fairly, the current net worth |
| 12:00 | 6 | of the company is gonna have to be considered.  And then |
| 12:00 | 7 | you're dealing with the injunction, and the effect that that |
| 12:00 | 8 | has had on MGA. |
| 12:00 | 9 | I mean, a constructive trust is a resulting trust. |
| 12:00 | 10 | It's imposed on things that are not owned by Mattel, but |
| 12:00 | 11 | basically, the conclusion is that somehow the fruits or the |
| 12:00 | 12 | benefits of the things that are owned are so inextricably |
| 12:01 | 13 | intertwined with these other things, that they can't be |
| 12:01 | 14 | separated out.  That's what a constructive trust is. |
| 12:01 | 15 | So you have to ask the ownership question.  But to |
| 12:01 | 16 | fairly litigate the constructive trust question, in terms of |
| 12:01 | 17 | what flows from that, is going to take a separate equitable |
| 12:01 | 18 | mini-trial by Court. |
| 12:01 | 19 | THE COURT:  Well, that's my concern. |
| 12:01 | 20 | Why? |
| 12:01 | 21 | Why would I have that available? |
| 12:01 | 22 | Now, very briefly, Mr. Zeller.  And then I'm going |
| 12:01 | 23 | to take a recess. |
| 12:01 | 24 | MR. ZELLER:  Number one, Your Honor, MGA proposes |
| 12:01 | 25 | that questions on ownership will resolve the constructive |

Case 2:04-cv-09049-DOC-RNB   Document 10322   Filed 03/30/11   Page 55 of 58   Page ID #:313309
CV 04-9049 DOC - 3/28/2011 - Status Conf., Volume 1 of 2

55

| | | |
|---|---|---|
| 12:01 | 1 | trust issue, assuming one is available. |
| 12:01 | 2 | THE COURT:  Just a moment.  It doesn't. |
| 12:01 | 3 | MR. ZELLER:  Exactly. |
| 12:01 | 4 | THE COURT:  It resolves ownership.  It doesn't |
| 12:01 | 5 | resolve the breadth of that ownership. |
| 12:01 | 6 | MR. ZELLER:  Right.  And we know that because |
| 12:01 | 7 | that's exactly what MGA argued in Phase I.  We did have |
| 12:01 | 8 | questions specifically asking about ownership that were |
| 12:01 | 9 | found in Mattel's favor.  MGA convinced the Ninth Circuit |
| 12:01 | 10 | that wasn't good enough.  So we know that that is a |
| 12:02 | 11 | construct that is not workable here for constructive trust. |
| 12:02 | 12 | Number two, this point about additional proof that |
| 12:02 | 13 | would be necessary is absolutely irrelevant to determining |
| 12:02 | 14 | and getting clarified the intent of the jury's verdict. |
| 12:02 | 15 | That is the purpose of asking those additional questions. |
| 12:02 | 16 | It will, of course, ultimately be up to the Court |
| 12:02 | 17 | to decide what to do with those advisory findings by the |
| 12:02 | 18 | jury.  But the proof is, is what it is, that goes to the |
| 12:02 | 19 | jury.  And the jury's verdict is what needs to be clear. |
| 12:02 | 20 | And finally, Your Honor, we have at least three |
| 12:02 | 21 | cases we have found where the Uniform Trade Secrets Act has |
| 12:02 | 22 | been -- applies, and district courts have recognized the |
| 12:02 | 23 | availability of constructive trusts. |
| 12:02 | 24 | THE COURT:  Cite those cases to me. |
| 12:02 | 25 | MR. ZELLER:  Yes, sir. |

CV 04-9049 DOC - 3/28/2011 - Status Conf., Volume 1 of 2

56

| | | |
|---|---|---|
| 12:02 | 1 | The first one is called *O'Very*, O apostrophe |
| 12:02 | 2 | V-E-R-Y, *v. Spectratek*, S-P-E-C-T-R-A-T-E-K.  That is found |
| 12:03 | 3 | at 2004 Westlaw, 5642004. |
| 12:03 | 4 | THE COURT:  564? |
| 12:03 | 5 | MR. ZELLER:  2004. |
| 12:03 | 6 | THE COURT:  Thank you. |
| 12:03 | 7 | MR. ZELLER:  And that is at page 6, Central |
| 12:03 | 8 | District of California, 2004. |
| 12:03 | 9 | THE COURT:  Okay. |
| 12:03 | 10 | MR. ZELLER:  A second one is *TMX Funding v.* |
| 12:03 | 11 | *Impero,* I-M-P-E-R-O.  It is 2010 Westlaw 2509979 at 7, |
| 12:03 | 12 | page 7, Northern District of California. |
| 12:03 | 13 | And a third one is *Encore*, E-N-C-O-R-E, *v. Morris*, |
| 12:03 | 14 | M-O-R-R-I-S. |
| 12:03 | 15 | THE COURT:  Okay. |
| 12:03 | 16 | MR. ZELLER:  2007 Westlaw 601473, at page 3.  And |
| 12:03 | 17 | that is a Northern District -- or excuse me -- a district of |
| 12:04 | 18 | North Dakota decision, which is somewhat interesting, |
| 12:04 | 19 | because it relies on exactly that subsection C language that |
| 12:04 | 20 | I quoted about affirmative acts, and finds that a |
| 12:04 | 21 | constructive trust is a remedy that is consistent and |
| 12:04 | 22 | available pursuant to that language. |
| 12:04 | 23 | THE COURT:  Okay.  Now here's what we're going to |
| 12:04 | 24 | do.  I need to go do some more work during the lunch hour. |
| 12:04 | 25 | I'm going to insist now that I have that time.  You're |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 12:04 | 1 | ordered back here at 1:30.  Okay?  I'm going to start |
| 12:04 | 2 | handing down things. |
| 12:04 | 3 | Go do some more research, Mr. Hurst.  I'm not |
| 12:04 | 4 | closing the door, but I need to go do some more research |
| 12:04 | 5 | independent of both of you now.  Okay?  We'll see you at |
| 12:04 | 6 | 1:30. |
| 12:04 | 7 | *(Recess held at 12:04 p.m.)* |
| 12:04 | 8 | *(Further proceeding reported by Denise* |
| 12:04 | 9 | *Paddock in Volume II.)* |
| 12:04 | 10 | -oOo- |
| 12:04 | 11 | |
| | 12 | |
| | 13 | |
| | 14 | |
| | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

| | | |
|---|---|---|
| 12:04 | 1 | -oOo- |
| 12:04 | 2 | |
| 12:04 | 3 | CERTIFICATE |
| 12:04 | 4 | |
| 12:04 | 5 | I hereby certify that pursuant to Section 753, |
| 12:04 | 6 | Title 28, United States Code, the foregoing is a true and |
| 12:04 | 7 | correct transcript of the stenographically reported |
| 12:04 | 8 | proceedings held in the above-entitled matter and that the |
| 12:04 | 9 | transcript page format is in conformance with the |
| 12:04 | 10 | regulations of the Judicial Conference of the United States. |
| 12:04 | 11 | |
| 12:04 | 12 | Date:  March 28, 2011 |
| 12:04 | 13 | |
| 12:04 | 14 | |
| 12:04 | 15 | _____ |
| 12:04 | 16 | DEBBIE GALE, U.S. COURT REPORTER<br>CSR NO. 9472, RPR |
| 12:04 | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

DEBBIE GALE, U.S. COURT REPORTER