ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: 415-773-5700
Facsimile: 415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: 213-629-2020
Facsimile: 213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br>Consolidated with Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**MGA PARTIES' OPPOSITION TO MATTEL, INC.'S SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE OPINIONS AND REPORTS OF JAMES E. MALACKOWSKI**<br><br>**OPP'N TO *DAUBERT* MOTION NO. 2**<br><br>Trial Date: January 18, 2011<br>Judge: Hon. David O. Carter |

**INTRODUCTION**

Mattel's eleventh hour Second Supplemental Brief addressed to the Malackowski Daubert motion is simply a repeat of the arguments made by Mattel previously. No new substance is added.

Moreover, the arguments aimed at Mr. Malackowski's opinions have a "boomerang" effect on the previously admitted testimony of Mattel witness Michael Wagner. Each of the arguments being made by Mattel serves to highlight the weaknesses in Mr. Wagner's analysis. If any of these arguments by Mattel are sustained, the corresponding testimony of Mr. Wagner must necessarily be stricken and the jury advised to disregard it.

As is shown herein, these recycled Mattel arguments are intended more to confuse the issues then to clarify them for resolution by the Court. Many of the positions taken flow from a misreading of Mr. Malackowski's straightforward testimony. At best, the Mattel assertions go only to the weight of Mr. Malackowski's expert opinion testimony and not to its admissibility. The motion should be denied in all respects.

**ARGUMENT**

**I. MR. MALACKOWSKI'S "TOP DOWN" ANALYSIS IS NOT A HEAD START ANALYSIS.**

Mattel reaches back to suppositions made before the Malackowski Daubert hearing and completely ignores Mr. Malackowski's testimony from the March 19, 2011 Daubert hearing.  To be clear, Mr. Malackowski's top down approach measures the unjust benefit to Mattel from the alleged misappropriation of 114 trade secrets over a seven year period.  As Mr. Malackowski has repeatedly testified, the top down approach is not a head start calculation.  Rather, as stated in Mr. Malackowski's January 28, 2011 report, the top down analysis reflects "wrongful benefits to Mattel from the wrongful conduct alleged by MGA, including misappropriating MGA trade secrets from MGA's private show rooms at toy fairs

for many years, interference with MGA's business relationship with Kohl's and other retailers, and interference with MGA's business relationships with suppliers and licensees".[1]

The Top Down approach compares actual My Scene profits to two benchmarks, both of which are based on actual Mattel sales of fashion doll products targeting older girls. Mr. Malackowski's first benchmark is based on the average sales of other Mattel's fashion dolls targeting older girls : *Diva Stars, Generation Girls and Flavas*. Mr. Malackowski's second benchmark is based on the actual trend in My Scene sales.[2] For both benchmarks, the sales Mattel would have made without MGA's trade secrets are based on Mattel forecasts for 2003. These benchmarks are the most appropriate comparisons as they represent all of Mattel's fashion dolls targeting older girls in the relevant time period.

Moreover, Mr. Malackowski used the same methodology as that employed by Mr. Wagner. Mr. Wagner used industry-based benchmarks in his unjust enrichment calculations to determine MGA's unjust enrichment. As noted by the Court, Mr. Wagner's industry benchmark model is flawed because of (1) a failure to account for MGA's lower marginal costs on Bratz as compared to the marginal costs of products incorporated by the benchmark EBITs; (2) a failure to normalize for volume of goods produced; and (3) a failure to account for any feedback loop between a company's labor and its intellectual property.[3]

In summary, Mr. Malackowski's Top Down benchmark approach improves on the benchmark approach relied upon by Mr. Wagner in his testimony by relying upon comparisons with benchmarks that are closely related to the fashion doll segment and the target age group of My Scene.

---

[1] January 28, 2011 Supplemental Expert Report of James E. Malackowski, § 4.1.
[2] Adjustment was made to My Scene sales to exclude sales of My Scene Chillin' Out and My Scene My Bling Bling, which were specifically quantified as misappropriated trade secrets.
[3] Amended Order re Motions To Exclude Expert Opinion of Michael J Wagner, March 4, 2011 (Dkt. No. 10130).

## II. MR. MALACKOWSKI'S "BOTTOM-UP" CALCULATION IS RELIABLE AND SHOULD NOT BE EXCLUDED.

Mattel is claiming that Mr. Malackowski had all the information he needed to calculate the head start period for all 32 of the alleged trade secrets. That is simply not true. In order to calculate the head start period for all 32 products, two categories of information are critical. First, Mr. Malackowski needs the period of confidentiality, namely the time period between MGA's toy fair to disclosure of the totality of the protected information, such as after product release and launch of planned advertising programs disclosed at the toy fair. Second, Mr. Malackowski needs Mattel's development documents reflecting use by Mattel of the protected information and the timing of incorporation of MGA confidential information into the Mattel products as launched. Despite numerous requests by MGA for this information dating back to November 22, 2006 for the design and development documents for My Scene and January 5, 2010 for the monthly sales by SKU data for My Scene.[4] Mattel has yet to produce this information for all but three of Mattel's matched products.

## III. AVERAGE OF SIX APPORTIONMENT METHODS

Mattel recycles its argument from its previous supplemental brief. And, it is no more persuasive the second time around. Mattel misrepresents Mr. Malackowski's methodology for determining his apportionment method by characterizing his methodology as simply an averaging. While a simple averaging of apportionment factors is not precluded by any authority as a valid approach for an expert to use, in fact Mr. Malackowski has first averaged the determined apportionment factors and then used qualitative factors supported by his

---

[4] See MGA's First Set of Requests For The Production of Documents And Things (November 22, 2006); MGA Entertainment, Inc.'s Fourth Set of Phase 2 Requests for Production of Documents and Things to Mattel Inc. (January 5, 2010).

professional judgment to provide his opinion of the correct apportionment factors for copyright and trade secrets. In fact, the use of averaging and the use of professional judgment were integral in the development of Mr. Wagner's opinions.

Mattel's counsel cites to no case, treatise or other authority providing any guidance as to how individual apportionment factors are to be weighed. That is because there is none. Apportionment factors are in fact case specific. Mr. Malackowski has used his professional judgment and experience in developing his opinions regarding apportionment factors, as is appropriate.

Mattel's arguments are further belied by the apportionment of its own damages expert. To determine his industry benchmarks, Mr. Wagner calculated the simple average of the profitability of Hasbro and JAKK and used the median profitability for 17 "Pure Toy Industry" companies without further explanation or justification.[5]

Mr. Wagner also relied extensively on his professional judgment to support his opinions.

### IV. MR. MALACKOWSKI'S LOST PROFITS METHODOLOGY APPROPRIATELY ISOLATES RELEVANT SALES.

Mattel continues to attempt to confuse the Court with emphasis on semantics rather than accurate consideration of methodology. As stated in MGA's Opposition to Mattel's Supplemental Brief in Support of Motion of Limine to Exclude Opinions and Reports of James Malackowski, Mattel continues to conflate the term "apportionment" as used in the context of unjust enrichment (i.e., apportioning defendant's profits between the value of the intellectual property and defendant's legitimate efforts) with "apportionment" in the context of lost profits damages (i.e., apportioning number of lost sales based upon demand for the claimed

---

[5] Mr. Wagner also offered the simple average profitability of the 17 Pure Toy Industry companies as an alternative benchmark.

intellectual property in the marketplace).[6]

Mr. Malackowski's lost profits methodology is appropriately comprised of three steps:

1. Determine the base of sales to be considered;
2. Determine sales attributable to the intellectual property; and
3. Calculate related profits

These are the same three steps performed by Mr. Wagner in his determination of lost profits. Mr. Malackowski has again simply improved upon Mr. Wagner's application of the methodology by implementation of measures more related to the products and intellectual property at issue.

To determine the appropriate base of sales, Mr. Malackowski has relied upon Mattel's cannibalization study related to Barbie and Bratz instead of the fashion doll market based regression analysis performed by Mr. Wagner.

To isolate Bratz sales attributable to the intellectual property, Mr. Malackowski used factors representing the demand for the intellectual property, as shown through a consumer survey and product specific analyses instead of the overall fashion industry market share analysis used by Mr. Wagner.[7] Mattel conflates the concept of apportionment with respect to unjust enrichment and market demand apportionment as reflected in Mr. Malackowski's analysis. Indeed, Mr. Malackowski's lost profits apportionment, based on market demand, has been expressly upheld by a Delaware federal district court. *See Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 989 F.Supp. 547, 602-607 (D. Del. 1997) (holding that Mr. Malackowski's apportionment of lost profits "properly focuses on the consumer level" and is "clearly reasonable.").

---

[6] MGA Parties' Opposition To Mattel, Inc.'s Supplemental Brief in Support of Motion In Limine to Exclude Opinions and Reports of James E. Malackowski (March 18, 2011).
[7] In fact, an analysis of market share based on the more appropriate older girls market supports the demand factors used by Mr. Malackowski.

## CONCLUSION

For these foregoing reasons, Mattel's motion to exclude the opinions and proffered testimony of Mr. Malackowski must be denied.

Dated: March 30, 2011

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____*/s/ Mark P. Wine*_____
Mark P. Wine
Attorneys for MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT HK, LTD., MGA de MEXICO, S.R.L. de C.V., and ISAAC LARIAN