QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar. No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de C.V.,<br><br>            Plaintiff,<br><br>     vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>            Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF MATTEL'S MOTION FOR MISTRIAL OR, IN THE ALTERNATIVE, CURATIVE INSTRUCTION TO THE JURY**<br><br>Hearing Date:   TBD<br>Time:           TBD<br>Place:          Courtroom 9D<br><br>Pre-trial Conf:  January 4, 2011<br>Trial Date:      January 18, 2011 |

## Argument

Mattel files this supplemental brief to identify additional misconduct by MGA's counsel during the examination of Mr. Moore and Mr. Normile, which necessitates a mistrial or, in the alternative, corrective instructions.

### I. MGA INQUIRED INTO ATTORNEY-CLIENT COMMUNICATIONS AND WORK PRODUCT ATTORNEY NOTES

Over Mattel's objection, MGA's counsel was permitted to examine Mattel's in-house counsel, Michael Moore, about his interviews of Mattel employees regarding issues in this litigation. See Trial Tr., 3/29/11, Vol. 2, at 109-160.

These interviews, whether with current or former Mattel employees, are quintessentially attorney-client privileged and therefore should have been protected from disclosure. See United States v. Rowe, 96 F.3d 1294, 1297 (9th Cir 1996) (reversing district court's finding that attorney interviews with employees of corporate client were not privileged and holding that "fact-finding which pertains to legal advice" is protected by the attorney-client privilege); In re Allen, 106 F.3d 582, 606 (4th Cir. 1997) ("[T]he analysis applied by the Supreme Court in Upjohn to determine which employees fall within the scope of the privilege applies equally to former employees" and thus communications at issue were protected by the privilege).

Separately, MGA also improperly raised and demanded Mr. Moore's notes from these interviews (see Trial Tr., 3/29/11, Vol. 2, at 172:16-173:8, et seq.), which are classic attorney opinion work product. See O'Connor v. Boeing North Am., Inc., 216 F.R.D. 640, 643 (C.D. Cal. 2003) ("Notes and memoranda of an attorney, or an attorney's agent, from a witness interview are opinion work product entitled to almost absolute immunity.") (quoting Baker v. Gen. Motors Corp., 209 F.3d 1051, 1054 (8th Cir. 2000)); Upjohn Co. v. United States, 449 U.S. 383, 399-400 (1981) ("Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental

processes."); see also In re Convergent Techs. Second Half 1984 Sec. Litig., 122 F.R.D. 555, 557-58 (N.D. Cal. 1988) ("while verbatim witness statements are generally considered ordinary work product, an attorney's notes and memoranda of statements are protected as opinion work product because they reveal the attorney's mental processes and show what facts the attorney deems legally significant").

The improper introduction into evidence of privileged and work product information requires a new trial. Cf. Carpenter v. Mohawk Industries, Inc., 541 F.3d 1048, 1052 (11th Cir. 2008) (noting that "[i]f this Court were to determine on appeal from a final judgment that privileged information was wrongly turned over and was used to the detriment of the party asserting the privilege, we could reverse any adverse judgment and require a new trial"). MGA has now questioned a lawyer about the contents of privileged communications and demanded work product materials before the jury. A mistrial is necessary.

## II. MGA'S EXAMINATION VIOLATED THE COURT'S PRIOR RULINGS THAT THE PARTIES COULD NOT EXAMINE WITNESSES REGARDING DISCOVERY DISPUTES

The Court has repeatedly precluded evidence of discovery disputes and misconduct. When Mattel sought to introduce evidence of Carter Bryant's use of Evidence Eliminator, the Court stated: "It would be unduly consumptive of time to allow a back and forth between the parties about conduct during discovery. On the other hand, arbitrarily limiting evidence to Carter Bryant's use of a computer program would paint an unbalanced and incomplete picture." See Order Denying Mattel's Motion for Reconsideration of order on MGA's Motion *in Limine* No. 7, Dkt. No. 9716 at 2.

When Mattel sought to introduce evidence that Isaac Larian's brother destroyed 10-12 boxes of documents related to early Bratz development, the Court again ruled that the evidence was inadmissible. The Court stated: "*As the court has*

*elsewhere noted, these proceedings shall not turn into a mini-trial about discovery misconduct by one party or another.*"  See Dkt. No. 9776 at 2.

Yet MGA has been permitted to accuse Mattel lawyers (called as witnesses) of discovery misconduct, including accusations of wrongfully withholding documents; "burying" documents that MGA claims should have been produced sooner; and improperly redacting information from documents.  Given that Mattel's evidence of misconduct by MGA was excluded, the result is precisely the "unbalanced and incomplete picture" the Court stated it would not permit.

For example, when Mattel sought to question Mr. Larian about the production of documents by MGA, the Court sustained MGA's objection:

> Q   And what we have is largely a result of the Court
> ordering that documents being produced, correct?
> MS. KELLER:  Objection.  Irrelevant.
> THE COURT:  Let's just say that the Court's
> ordered both parties to produce numerous documents.  Leave
> it at that, okay?
> Thank you.
> Counsel?

Trial Tr., 2/9/11, Vol. 3, at 76:9-16.  Regarding MGA's late production and assertion of privilege as to the "prep Paula" email, the Court similarly sustained objections, both by Mattel and MGA, into this area:

> Q   You don't know that your lawyers claimed this was
> privileged and couldn't be used?
> A   I did not.
> MR. MC CONVILLE:  Argumentative, your Honor.
> THE COURT:  Sustained.
> * * *
> Q   So the questions to you were about whether or not a

1    document they have was withheld, right?

2    A   I don't know how it could have been withheld if they

3    have it.

4    Q   Remarkable?

5    MR. PRICE:  Your Honor, object.  Argument, and it

6    opens up a big door.

7    THE COURT:  Sustained.

8  Trial Tr., 3/10/11, Vol. 2, at 46:3-19; 51:5-13.

9       Despite successfully precluding Mattel from such inquiries, MGA violated

10 the prohibition against inquiring into discovery disputes during examinations of

11 Mattel attorneys Robert Normile and Michael Moore.  Over Mattel's objections,

12 MGA asked questions about precisely these kinds of discovery issues.

13      On the examination of Mr. Normile, MGA asked:

14   Q:  Do you understand that in litigation like this that the production of

15       documents is a very important issue, correct?

16   A:  Yes, it is.

17   Q:  And you understand that Mattel has both legal and ethical obligations

18       with respect to the production of documents in litigation, right?

19   A:  Yes.

20   Q:  So for example, hiding relevant and material documents --

21   MR. QUINN: Objection, your Honor. The Court's ruled on these issues for

22       both sides.

23   THE COURT: I have as to both law firms involved, but not as to Mattel.

24       Overruled.

25 Trial Tr., 3/29/11, Vol. 2, at 22:10-22.  MGA continued:

26   Q:  You've buried this e-mail until last year, didn't you?

27   A:  No, I did not.

28

1  Q: Now, in this e-mail, Mr. Villasenor identifies himself as the manager --
2  MR. QUINN: Your Honor, I object. This gets into discovery issues. The
3  Court --
4  THE COURT: Overruled.

Trial Tr., 3/29/11, Vol. 2, at 27:19-25.

Thus MGA has been permitted to create a misleading record about Mattel's document production, while Mattel has been foreclosed from showing that MGA improperly withheld certain documents and produced hundreds of thousands of pages of documents long after Mattel had completed its production.

### III. MGA'S EXAMINATION ALSO VIOLATED THE COURT'S PRIOR RULINGS EXCLUDING EVIDENCE OF SPOLIATION

Also in violation of prior orders, MGA was permitted to question Mr. Moore about alleged spoliation of tapes containing Mattel phone records:

Q: But you never received the tapes for October of 2000, right?
MR. ZELLER: The Court has ruled on spoliation, are we getting into this now?
THE COURT: No, overruled.
BY MS. KELLER:
Q: You never received the October 2000 tapes?
A: I never did.

Trial Tr., 3/29/11, Vol. 2, at 161:19-163:12.

Thus, MGA has been permitted to suggest (falsely) to the jury that Mattel engaged in spoliation, but Mattel has been repeatedly foreclosed from offering even more compelling evidence of spoliation by MGA. These inflammatory questions by MGA have prevented Mattel from receiving a fair trial.

| | | |
|---|---|---|
| 1 | DATED: March 30, 2011 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 2 | | |
| 3 | | |
| 4 | | By */s/ John B. Quinn* |
| 5 | | John B. Quinn |
| | | Attorneys for Mattel, Inc., and |
| 6 | | Mattel de Mexico, S.A. de C.V. |