QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc., and Mattel de
Mexico, S.A. de C.V.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de C.V., a Mexico business entity,<br><br>                 Plaintiffs,<br><br>        vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>                 Defendants.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx) Consolidated with Case Nos. CV 04-09059 and CV 05-02727<br><br>**MATTEL, INC. AND MATTEL MEXICO'S OPPOSITION TO GUSTAVO MACHADO'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(a)**<br><br>Date:   TBD<br>Time:   TBD<br>Place:  Courtroom 9D<br><br>Pre-trial Conference:  January 4, 2011<br>Trial Date:  January 18, 2011 |

00505.07975/4065202.1

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................... 1

STATEMENT OF FACTS ........................................................................... 2

ARGUMENT ............................................................................................. 3

I.   THERE IS SUFFICIENT EVIDENCE FOR THE JURY TO FIND
     MACHADO LIABLE FOR TRADE SECRET THEFT ................................ 3

     A.   The Documents That Mattel Prepared Using Point of Sale Data
          Are Trade Secrets ........................................................................ 3

     B.   Machado Misappropriated The Barbie Mexico Viability Testing
          Report ........................................................................................ 5

     C.   Machado Misappropriated The Barbie Preliminary Line List ............... 5

     D.   The Court Should Not Exclude Evidence of Machado's Theft of
          Other Mattel Trade Secrets From The Jury's Consideration ............... 7

II.  MATTEL AND MATTEL MEXICO HAVE DEMONSTRATED
     SUFFICIENT EVIDENCE OF DAMAGES ............................................. 7

III. NO CHOICE OF LAW ANALYSIS IS NECESSARY BECAUSE
     THE STAY TOLLS THE STATUTE OF LIMITATIONS ............................ 9

IV.  MEXICO'S STATUTE OF LIMITATIONS DOES NOT APPLY ............... 11

     A.   California's Borrowing Statute Does Not Apply .............................. 11

     B.   Machado Waived Any Argument Under Section 361 By Failing
          To Raise The Statute Previously .................................................. 12

     C.   Machado's Choice Of Law Arguments Are Premature, And
          Conflict With The Court's Prior Rulings ....................................... 13

     D.   Under Choice of Law Principles, California's Three Year Statute
          of Limitations Applies ............................................................... 14

          1.   California Has An Interest In Having Its Law Applied ............... 15

          2.   Mexico Does Not Have A Legitimate Interest In Having
               Its Law Applied ................................................................ 16

          3.   Even If Mexico Also Has An Interest In Having Its Law
               Apply, Comparative Impairment Analysis Favors
               Applying California Law ..................................................... 17

1

        (a)    Each Forum's Commitment to The Application of
Its Laws/Prevalence of The Forum's Law ...................... 18

2

        (b)    Whether Each Forum's Law Is The Exclusive

3

                Means of Achieving A Particular Policy Goal ................ 20

4

        (c)    The Situs of The Injury ................................................... 20

5

CONCLUSION ................................................................................... 21

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>Cases</u>

Ajaxo, Inc. v. E*Trade Group, Inc.,
   135 Cal. App. 4th 21 (2005) .................................................................... 7

Bourns, Inc. v. Raychem Corp.,
   331 F.3d 704 (9th Cir. 2003) ................................................................. 6

Bowoto v. Chevron Corp.,
   2006 WL 2455761 (N.D. Cal. Aug. 22, 2006) .................................... 13

Castle v. Wells Fargo Fin., Inc.,
   2007 WL 1105118 (N.D. Cal. April 10, 2007) ................................... 10

Clark v. Bunker,
   453 F.2d 1006 (9th Cir. 1972) ................................................................ 8

Cole v. Miraflor,
   2001 WL 138765 (S.D.N.Y. Feb. 19, 2001) ...................................... 10

CRS Recovery, Inc. v. Laxton,
   600 F.3d 1138 (9th Cir. 2010) ................................................. 13, 15, 19

Dealertrack, Inc. v. Huber,
   460 F. Supp. 2d 1177 (C.D. Cal. 2006) ................................................ 6

Doe v. LDS,
   No. 1:09-cv-00351, Dkt. No. 109 (D. Idaho Aug. 12, 2010) ......... 19, 20

Eagle v. American Telephone & Telegraph Co.,
   769 F.2d 541 (9th Cir. 1985) ............................................................... 13

Fox v. Ethicon Endo-Surgery, Inc.,
   35 Cal. 4th 797 (2005) ......................................................................... 11

Hurtado v. Superior Court,
   11 Cal. 3d 574 (1974) ..................................................................... 15, 19

Intermedics, Inc. v. Ventritex, Inc.,
   775 F. Supp. 1258 (N.D. Cal. 1991) .................................................. 11

Javier H. v. Garcia-Botello,
   239 F.R.D. 342 (W.D.N.Y. 2006) ...................................................... 10

Kearney v. Salomon Smith Barney, Inc.,
   39 Cal. 4th 95 (2006) ........................................................................... 19

Lew v. Countrywide Fin. Corp.,
2009 WL 1384975 (N.D. Cal. Feb. 24, 2009).....................................10

Lincoln Gen. Ins. Co. v. Access Claims Adm'rs, Inc.,
2007 WL 2492436 (E.D. Cal. Aug. 30, 2007) ....................................11

Magnecomp Corp. v. Athene Co.,
209 Cal. App. 3d 526 (1989) ............................................................16

In re Matter of Yagman,
796 F.2d 1165 (9th Cir. 1986) ....................................................14, 21

Marra v. Bushee,
447 F.2d 1282 (2d Cir. 1971) ............................................................14

In re Metro. Sec. Litig.,
532 F. Supp. 2d 1260 (E.D. Wash. 2007)  ...........................................9

McCann v. Foster Wheeler LLC,
48 Cal. 4th 68 (2010).........................................................17, 18, 21

Offshore Rental Co. v. Cont'l Oil Co.,
22 Cal. 3d 157 (1978).................................................................18, 21

Paracor Fin., Inc. v. Gen. Elec. Capital Corp.,
96 F.3d 1151 (9th Cir. 1996) ............................................................14

Reich v. Purcell,
67 Cal. 2d 551 (1967) .......................................................................19

Salton, Inc. v. Philips Domestic Appliances and Pers. Care B.V.,
391 F.3d 871 (7th Cir. 2005) ..............................................................8

Selph v. Nelson, Reabe & Snyder, Inc.,
966 F.2d 411 (8th Cir 1992)  ............................................................10

Smith v. Gulf Oil Co.,
995 F.2d 638 (6th Cir. 1993) ............................................................13

Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.,
299 F. Supp. 2d 565 (E.D. Va. 2004)....................................................4

Van Winkle v. Allstate Ins. Co.,
290 F. Supp. 2d 1158 (C.D. Cal. 2003)...........................................17, 19

Vinyl Interactive, LLC v. Guarino,
2009 WL 1228695 (N.D. Cal. May 1, 2009) .........................................4

Zinser v. Accufix Research Inst., Inc.,
253 F.3d 1180 (9th Cir. 2001) ..........................................................20

00505.07975/4065202.1

MATTEL AND MATTEL MEXICO'S OPPOSITION TO MACHADO'S MOTION FOR JUDGMENT AS A MATTER OF LAW

1

### **<u>Statutes</u>**

2   <u>Cal. Civ. Code</u> § 3426.1 ................................................................................. 4

3   <u>Cal. Civ. Code</u> § 3426.1(b)(1) ...................................................................... 6

4   <u>Cal. Civ. Code</u> § 3426.1(d) .......................................................................... 4

5   <u>Cal. Civ. Code</u> § 3426.3(a) .......................................................................... 6

6   <u>Cal. Civ. Code</u> § 3426.3(c) .......................................................................... 7

7   <u>Cal. Civ. Code</u> § 3426.6 ........................................................................ 9, 16

8   <u>Cal. Civ. Proc. Code</u> § 361 .................................................................. 11, 12

9   <u>Fed. R. Civ. P.</u> 50(a) ................................................................................. 13

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **Preliminary Statement**

Machado asks this Court to conclude that he cannot be liable as a matter of law, even though he admits taking documents and information from Mattel, admits he took this information because he thought it would be useful in his work at MGA, and admits that he actually used some of them.  The Court should not grant his request.

*First*, Machado argues that Mattel's internal point of sale analyses, which were among the stolen documents, cannot be "trade secrets" because the raw data came from outside Mattel.  But no law provides that the source of data, by itself, conclusively determines its status.  Mattel has introduced substantial evidence that these internal compilations, which reflect Mattel's analyses of the data, meet the requirements of trade secret law.

*Second*, Machado argues that Mattel has failed to present evidence of theft of the Barbie Viability Testing Report, which plainly qualifies as a trade secret.  The jury reasonably could find it was stolen.  Shortly after Machado, Vargas and Trueba met with Larian in Mexico City, Trueba sent an email asking for a copy of this report, just as she did as to other documents that she then passed along to Machado for him to download and take.  That the Barbie Viability Testing Report was not actually physically recovered from MGA when MGA Mexico's offices were searched more than a year later does not mean it was not taken in the first place.  There is a "legally sufficient evidentiary basis" to submit the issue whether the document was stolen to the jury.

*Third*, Machado claims the jury need not address Machado's admitted theft of the Barbie Preliminary Line List because he purportedly only "acquired," but did not use that document.  That argument would read out of the statute its clear language providing a cause of action for the improper acquisition of a trade secret.  Moreover, Mattel has presented evidence of use – MGA introduced Hollywood-

themed Bratz dolls after Machado met with Larian and took from Mattel the pre-release line list that identified My Scene Hollywood dolls.

*Fourth*, Machado challenges the timeliness of the claims against him, arguing that Mexico's two-year statute of limitations applies and that the claims raised by Mattel and Mattel Mexico cannot possibly be timely.  But the claims against Machado did not accrue solely in Mexico; they accrued, at least in part, in California.  The Court previously ruled that the choice of law issues will be sent to the jury.  Machado has made no showing that the evidence on these issues—particularly the admitted theft of documents created by Mattel employees in the United States and stored on Mattel computer systems in the United States—does not permit a finding for Mattel.  Moreover, Mattel's claims against Machado are timely, irrespective of whether California or Mexico law applies because the limitations period is tolled by the stay of proceedings in the 05-2727 and  case while the Ninth Circuit considered an interlocutory appeal.

*Finally*, Machado claims Mattel made no showing that Machado benefitted from acquiring or using any of the documents he stole, and hence no showing of damages.  But Mattel proved and Machado admitted to substantially increased salary and bonuses when he left Mattel for MGA.  The jury certainly could conclude he received those benefits because of his trade secrets misappropriation.  Moreover, Machado is a joint tortfeasor; Mattel is entitled to recover against him just as it can recover against MGA, and need not separate out the gains obtained by each.

## Statement of Facts

Both Machado and Kuemmerle admitted that Mattel documents, taken by Machado, Vargas, and Trueba, were at the MGA Mexico offices.  Kuemmerle admitted that numerous Mattel documents were found in the MGA Mexico offices when the Mexican authorities performed their search.  Feb. 23, 2011 Trial Tr. Vol. 2 (Kuemmerle) at 13:10-14:6, 17:8-18:3, 19:16-20:1; Feb. 24, 2011 Trial Tr. Vol. 1 (Kuemmerle) at 21:23-22:18.  Machado coordinated with Vargas and Trueba to take

MATTEL AND MATTEL MEXICO'S OPPOSITION TO MACHADO'S MOTION FOR JUDGMENT AS A MATTER OF LAW

1  Mattel documents when they left for MGA (Mar. 4, 2011 Trial Tr. Vol. 2 (Machado)

2  at 5:19-6:6); they all took documents from Mattel they thought would be useful at

3  MGA (Mar. 4, 2011 Trial Tr. Vol. 2 (Machado) at 46:17-22); and Machado took the

4  Mattel documents to MGA (Mar. 4, 2011 Trial Tr. Vol. 1 (Machado) at 60:19-61:3),

5  hid the thefts from others at Mattel (id. at 58:5-59:15), and sent an email to Larian

6  reporting on how much damage he, Vargas, and Trueba had done to Mattel (TX

7  6437; Mar. 4, 2011 Trial Tr. Vol. 2 (Machado) at 15:19-16:16).

8                                              **Argument**

9  **I.    THERE IS SUFFICIENT EVIDENCE FOR THE JURY TO FIND**

10     **MACHADO LIABLE FOR TRADE SECRET THEFT**

11     **A.    The Documents That Mattel Prepared Using Point of Sale Data**

12          **Are Trade Secrets**

13          Machado argues that the point of sale data is not a trade secret because Mattel

14  purchases it.  Mattel introduced evidence, including from Mr. Machado himself, that

15  the misappropriated POS documents are kept confidential, see Mar. 4, 2011 Trial Tr.

16  Vol. 2 (Machado) at 37:22-38:10, 39:12-40:2; are valuable to competitors, see Mar.

17  8, 2011 Trial Tr. Vol. 1 (Cavassuto) at 37:25-38:24, 41:23-42:3, 44:3-23, 45:25-

18  46:14, 46:21-47:4; and are not available to Mattel's competitors, see Mar. 8, 2011

19  Trial Tr. Vol. 1 (Cavassuto) at 39:11-13, 40:1-3, 49:9-11.  That Mattel's documents

20  may include data that can be purchased does not vitiate their status as trade secrets.

21  The documents are not just raw data compilations, but also reflect Mattel's analyses

22  of that data.  See, e.g., TX 6734 (analyzing Mattel internal quotas to total customer

23  bookings); Mar. 8, 2011 Trial Tr. Vol. 1 (Cavassuto) at 43:9-45:10 (confirming TX

24  6734 contains "total in Mattel" sell-through data, not merely retailer-specific, and

25  analyzes "how Mattel de Mexico was selling in and how the product was moving in

26  the marketplace"); TX 6738 (analyzing multiple months of sell-through data); Mar.

27  8, 2011 Trial Tr. Vol. 1 (Cavassuto) at 45:11-46:8 (confirming document as an

28  internal Mattel report analyzing multiple months of sell-through data); TX 7078

-3-

(analyzing Mattel internal quotas to total customer bookings, identifying customer as "BID" rather than an individual retailer); Mar. 8, 2011 Trial Tr. Vol. 1 (Cavassuto) at 47:5-11 (confirming "BID" documents are essentially an "integrated database and it shows the top seven or eight customers in Mattel").  They are trade secrets.   See Cal. Civ. Code § 3426.1(d) (identifying compilations, methods, techniques, and processes as potential trade secrets); Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., 299 F. Supp. 2d 565, 574-75 (E.D. Va. 2004) (finding analysis of data to qualify as trade secret under trade secret language similar to Cal. Civ. Code § 3426.1); Vinyl Interactive, LLC v. Guarino, 2009 WL 1228695, at *7-8 (N.D. Cal. May 1, 2009) (granting preliminary injunction regarding analysis of information asserted as trade secret under Cal. Civ. Code § 3426.1).

Machado argues that because each retailer has its own raw point of sale data for Mattel products, the trade secret is "generally known to the public or to other persons who can obtain economic value from its disclosure or use," and Mattel's internal analysis based on that data has no trade secret status.  Mot. at 15-16; Cal. Civ. Code § 3426.1(d).  But individual retailers do not have access to the point of sale data of other retailers, or none of them has access to Mattel's analyses thereof. Many of the stolen documents reflect combined point of sale information from the top six Mexican retailers, Mar. 8, 2011 Trial Tr. Vol. 1 (Cavassuto) at 47:5-19, which allowed Mattel (and later Machado) to analyze and make strategic decisions based on sales trends, sales velocity, etc. at a market level, not a retailer level.  See, e.g., TX 6734, TX 6738, TX 7078, TX 7079, TX 7080, TX 7119, TX 7148.  Mattel paid $5.1 million for this data, which further confirms their value, even putting aside the value, as trade secrets, of Mattel's internal analyses of the data.  Mar. 8, 2011 Trial Tr. Vol. 1 (Cavassuto) at 31:24-32:9; TX 24264, TX 24264T, TX 24269.

MATTEL AND MATTEL MEXICO'S OPPOSITION TO MACHADO'S MOTION FOR JUDGMENT AS A MATTER OF LAW

**B.** **Machado Misappropriated The Barbie Mexico Viability Testing Report**

Machado argues no jury could find Mattel's 2004 Girls Full Year Mexico Viability Testing Report (TX 6739) was stolen merely because it was not found during the search of MGA Mexico's offices that occurred 18 months after the thefts. Mot. at 17.   Mattel has introduced circumstantial evidence that is more than sufficient to raise a jury question.  Machado admits he took Mattel documents that would be useful to MGA and coordinated with others to do so. Mar. 4, 2011 Trial Tr. Vol. 2 (Machado) at 5:19-6:6; 46:17-22.  Few documents would have been more valuable than this one, which included detailed information as to future BARBIE sales efforts in Mexico, and the document was specifically requested by Trueba from others at Mattel shortly after Machado, Vargas and Trueba met with Larian at the W Hotel in Mexico City in early March 2004.  Mar. 4, 2011 Trial Tr. Vol. 3 (Machado) at 16:12-16; TX 8147 (Trueba asking Jill Nordquist, of Mattel, "Do you know who can send me the last Barbie 2004 viability?").   Trueba's role was to forward to Machado the internal Mattel documents she collected, TX 6422, TX 6429, TX 8864, which Machado then downloaded and took to MGA.  Mar. 4, 2011 Trial Tr. Vol. 1 (Machado) at 61:24-63:3, 67:16-23, Vol. 3 at 68:16-69:24.  The jury could certainly conclude that a document Trueba specifically asked, after meeting with MGA, for was among those stolen.  That it was not found by Mexican police in their search 18 months later hardly proves conclusively, for <u>Rule</u> 50 purposes, that it was never stolen, particularly given Ms. Kuemmerle's admission that neither she nor anyone else at MGA Mexico even looked for additional Mattel documents after the search of the MGA Mexico offices of Machado, Vargas, and Trueba by the Mexican authorities.  Feb. 23, 2011 Trial Tr. Vol. 2 (Kuemmerle) at 31:17-32:21.

**C.** **Machado Misappropriated The Barbie Preliminary Line List**

It is no defense that Machado purportedly only acquired Mattel's trade secret but did not use it.  Improper acquisition is itself trade secret theft. <u>Cal. Civ. Code</u> §

3426.1(b)(1) (defining misappropriation as "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means"); <u>Dealertrack, Inc. v. Huber</u>, 460 F. Supp. 2d 1177, 1184 (C.D. Cal. 2006) (CUTSA does not require allegations of use; instead misappropriation can be demonstrated by acquisition by improper means). Indeed, although his argument assumes otherwise, even Machado concedes that acquisition is sufficient: "Misappropriation of a trade secret may include acquisition, disclosure or use of the trade secret." Mot. at 17.

Machado took the Barbie Preliminary Line List from Mattel, Mar. 8, 2011 Trial Tr. Vol. 1 (Machado) at 14:13-14; Mar. 4, 2011 Trial Tr. Vol. 4 (Machado) at 75:7-76:7, believing it would be useful at MGA. <u>Id.</u> Vol. 2 at 46:17-22. The List, taken in April 2004, identified every product Mattel would make during 2005, including a description of each product, how many would be made, profitability, margin, approval, product justification and anticipated advertising support. Mar. 9, 2011 Trial Tr. Vol. 2 (Nordquist) at 83:12-85:1, TX7104. Machado's CD, TX 8855A, included the Line List and was found in Machado's office when the search warrant was executed.

Machado's sole argument is that "[i]n some cases" acquisition of a trade secret will not result in damages. Mot. at 18. Machado cites no law identifying those circumstances or suggesting those unidentified circumstances are present here. The plain language of CUTSA provides a claim for a monetary award flowing from acquisition, not just use. <u>Cal. Civ. Code</u> § 3426.1(b)(1) (defining "misappropriation" by acquisition); <u>id.</u> at § 3426.3(a) ("A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss."). This remedy has been recognized in this Circuit. <u>See, e.g.</u>, <u>Bourns, Inc. v. Raychem Corp.</u>, 331 F.3d 704, 709-10 (9th Cir. 2003) (affirming unjust enrichment damages award for trade secret misappropriation based on development costs avoided in light of plaintiff's actual development cost).

1    Moreover, Machado's argument has already been rejected by the Court.   <u>See</u>

2    Amended Order re Motions to Exclude Expert Opinion of Michael J. Wagner, Mar.

3    4, 2011 (Dkt. No. 10130) at 4-5 (rejecting Machado's motion in limine that argued

4    damages require proof of use).  In any case, Mattel has indeed introduced evidence

5    that this document was used.   The Barbie Preliminary Line List discussed

6    forthcoming "Hollywood" themes for Mattel's My Scene doll lines, and MGA came

7    out with Hollywood-themed Bratz dolls thereafter.  <u>Compare</u> TX 7104-41 to 42

8    (Hollywood-themed My Scene dolls) <u>with</u> TX 34790-04 (identifying "Bratz Themes

9    in 2005" as including Bratz "Hollywood Style").

10        **D.    <u>The Court Should Not Exclude Evidence of Machado's Theft of</u>**

11            **<u>Other Mattel Trade Secrets From The Jury's Consideration</u>**

12           With no legal basis, Machado asks the Court to exclude from the jury's

13    consideration stolen trade secrets as to which Mattel does not seek damages.  That

14    Mattel elected not to seek damages from specific trade secrets does not make them

15    irrelevant.   All of this information has been admitted, and evidence of the scope,

16    breadth and depth of Machado's thefts should be considered by the jury in

17    determining whether Machado's misappropriation was willful.  <u>Cal. Civ. Code</u> §

18    3426.3(c); <u>see</u> <u>Ajaxo, Inc. v. E*Trade Group, Inc.</u>, 135 Cal. App. 4th 21, 66-67

19    (2005) (willful misappropriation may be shown "by implication from indirect

20    evidence from which the jury may draw inferences").

21    **II.    <u>MATTEL AND MATTEL MEXICO HAVE DEMONSTRATED</u>**

22            **<u>SUFFICIENT EVIDENCE OF DAMAGES</u>**

23           Machado urges that Mattel and Mattel Mexico have failed to establish unjust

24    enrichment against Machado.  Mot. at 12-13.  While Machado claims he received no

25    benefit from the theft, a jury clearly could find otherwise.  For example, Machado

26    received from MGA a salary that was 62.2% higher than he had at Mattel, Feb. 25,

27    2011 Trial Tr. Vol. 2 (Kinrich) at 37:17-44:2, 58:8-78:7, received bonuses at MGA,

28    Mar. 4, 2011 Trial Tr. Vol. 4 (Machado) at 67:19-68:5, and received a promotion

1   and had the fees of his lawyers paid by MGA, Mar. 4, 2011 Trial Tr. Vol. 1

2   (Machado) at 7:8-16 (promotion), 12:19-21 (attorney fees paid for five years).

3   These are all benefits a jury could find Machado obtained because of his thefts.

4          Moreover, Machado's liability is not limited to his own personal benefits.  He

5   is a joint tortfeasor with MGA, and as such is liable for the benefits that MGA

6   received as well.  See Clark v. Bunker, 453 F.2d 1006, 1110-11 (9th Cir. 1972)

7   (rejecting argument that "no award of compensatory damages [for trade secret

8   misappropriation] could be made against appellants other than Memorial Guardian

9   Plans, Inc., because no other appellant was shown to have received any profits from

10  the misappropriation and use of appellee's plan" where "the trial court found

11  appellants to be joint tortfeasors and hence joint and severally liable for the damage

12  sustained by appellee, and the record supports that finding"); Salton, Inc. v. Philips

13  Domestic Appliances and Pers. Care B.V., 391 F.3d 871, 877 (7th Cir. 2005)

14  ("Under the principle of joint and several liability, which governs not only the

15  common law tort of misappropriation of trade secrets but also the federal statutory

16  tort of copyright infringement, the victim of a tort is entitled to sue any of the joint

17  tortfeasors and recover his entire damages from that tortfeasor. The defendant may

18  have a right to contribution (i.e., to a sharing of the pain) from the other tortfeasors,

19  but the victim is not required to sue more than one of his oppressors.") (internal

20  citations omitted).  Machado can seek to have MGA satisfy any award against him,

21  but he cannot deprive Mattel of a remedy in the first place.

22         Finally, even if Mattel could not prove quantifiable damages, which it can,

23  Machado "benefited" by the possession of Mattel's trade secrets, which he admitted

24  he took because they would be valuable to MGA.  See Feb. 10, 2011 Trial Tr. Vol. 2

25  (Larian) at 39:14-40:9; Feb. 17, 2011 Trial Tr. Vol. 3 (Larian) at 51:21-53:1, 55:2-5;

26  Mar. 4, 2011 Trial Tr. Vol. 1 (Machado) at 34:11-35:24, 38:8-39:7, 49:2-50:1; Mar.

27  4, 2011 Trial Tr. Vol. 3 (Machado) at 12:14-13:25, 15:6-15:14, 38:10-39:1; Mar. 4,

28  2011 Trial Tr. Vol. 4 (Machado) at 58:19-59:14.  As discussed above (supra Section

1  I.C.), the plain language of CUTSA provides a claim for a monetary award flowing

2  from acquisition, not just use, of a trade secret, and Machado's arguments to the

3  contrary have already been rejected.  Even if "damages" could not be proved with

4  reasonable certainty, which they can be, Mattel still has a right to a finding of

5  liability and to other remedies available under CUTSA, such as an injunction.

6  **III.   NO CHOICE OF LAW ANALYSIS IS NECESSARY BECAUSE THE**

7       **STAY TOLLS THE STATUTE OF LIMITATIONS**

8       Invoking choice of law, Machado asks the Court to ignore California law and

9  apply Mexico's two-year limitations period for non-contract claims to bar Mattel's

10  and Mattel Mexico's claims against Machado.  The Court need not engage in a

11  choice of law analysis.  The statute of limitations was tolled during the 362-day stay

12  of this case while the Ninth Circuit considered whether the Court had jurisdiction.

13  Because the statute was tolled for almost a year, Mattel's and Mattel Mexico's

14  claims are timely – whatever law applies.

15       If California law applies, then Mattel's and Mattel Mexico's claims are timely

16  under CUTSA's three-year limitations period.  Cal. Civ. Code § 3426.6.   Machado

17  admits this, Mot. at 2, 6, as he must.  Even he does not argue that the trade secret

18  claim accrued before April 19, 2004, the day Machado resigned.  Mot. at 4.

19  Mattel's claim was filed two-and-a-half years later, on November 20, 2006, Dkt.

20  No. 89, and is timely if California law applies.[1]

21       Mexico has a two-year statute of limitations for non-contract claims like trade

22  secret theft.  Am. MSJ Order (Dkt. No. 9600) at 56:7-10 (quoting Calatayud Decl.

23  (Dkt. 7869-1 ¶ 5)).  Machado assumes the Mexican statute required Mattel to file by

24  ───────────────────

25       [1]  "[I]t is well established, for the purpose of calculating the statute of limitations, that an amended pleading is effectively filed when the motion to amend

26  is filed" because "when a motion to amend is accompanied by the proposed amended pleading, the motion to amend notifies the defendant of the impending

27  claim".  In re Metro. Sec. Litig., 532 F. Supp. 2d 1260,1282 (E.D. Wash. 2007).

28

1  April 19, 2006.  But, even if that statute were to apply under choice of law

2  principles (it does not), Machado's assumption ignores the 362-day discovery stay

3  of this case between May 20, 2005 and May 16, 2006.  See Case No. 05-2727, Dkt.

4  Nos. 17, 35; Case No. 04-9059 Dkt. No. 204.

5          Under California law – which Machado concedes governs accrual of the

6  claim regardless of what law applies (Mot. a 3) – the stay of this case tolled the

7  limitations period.  See Castle v. Wells Fargo Fin., Inc., 2007 WL 1105118, at *1

8  (N.D. Cal. April 10, 2007) ("statute of limitations should be equitably tolled . . .

9  from March 2, 2007 until the stay is lifted"); Lew v. Countrywide Fin. Corp., 2009

10  WL 1384975, at *3 (N.D. Cal. Feb. 24, 2009) ("The Court therefore tolls the statute

11  of limitations for the FLSA claim during the stay."); see also Selph v. Nelson, Reabe

12  & Snyder, Inc., 966 F.2d 411, 413 (8th Cir. 1992) ("A stay tolls the statute of

13  limitations . . . ."); Javier H. v. Garcia-Botello, 239 F.R.D. 342, 347-48 (W.D.N.Y.

14  2006) ("the statute of limitations was equitably tolled during the stay of discovery")

15  (granting motion to join additional defendants and finding such claims were timely

16  filed based upon equitable tolling due to discovery stay lasting twenty months); Cole

17  v. Miraflor, 2001 WL 138765, at *6 (S.D.N.Y. Feb. 19, 2001) ("The limitations

18  period was equitably tolled during the stay of discovery.").  The stay was issued

19  because the Court's jurisdiction over Mattel's complaint was disputed; the question

20  whether the Court had subject matter jurisdiction was before the Circuit.  Tolling of

21  new claims during the period of the stay is appropriate.  Indeed, amendment of

22  Mattel's complaint during the appeal and stay was not possible, and certainly was

23  not required, because whether the Court had jurisdiction over the Complaint at all

24  was before the Circuit.

25          Likewise, Article 359 of the Mexico Federal Code of Civil Procedure

26  provides that where an "incident" -- here, a stay pending interlocutory appeal --

27  poses an obstacle that prevents the proceedings from continuing, the case is held "in

28  suspension," i.e., nothing can happen in the case, until the incident is settled.  See

-10-

MATTEL AND MATTEL MEXICO'S OPPOSITION TO MACHADO'S MOTION FOR JUDGMENT AS A MATTER OF LAW

1  Mattel's Request for Judicial Notice, Ex. A, filed concurrently herewith.  By its

2  terms, this mandatory "suspension" of proceedings applies to toll the two-year

3  statute of limitations, even if that limitations period were to apply.

4       Thus, under both California and Mexican law, the limitations period was

5  tolled during the stay.  The stay extended by almost a year the time to file a trade

6  secret misappropriation claim against Machado.  Even under Machado's proposed

7  accrual date of April 19, 2004, the claims are timely regardless of which law

8  applies.[2]

9  ## IV.  MEXICO'S STATUTE OF LIMITATIONS DOES NOT APPLY

10       The Court ruled previously that which law applies will turn on facts to be

11  decided by the jury.  Machado offers no basis for reaching a different conclusion

12  now.

13  ### A.  California's Borrowing Statute Does Not Apply

14       Machado argues that California's borrowing statute, Cal. Civ. Proc. Code §

15  361, requires that application of Mexico law to Mattel Mexico's – but not Mattel's –

16  claims.  Mot. at 3:7-10, 5:3-4.  But where even a part of the cause of action arose in

17  California, the borrowing statute does not apply.  See Lincoln Gen. Ins. Co. v.

18  Access Claims Adm'rs, Inc., 2007 WL 2492436, at *8-9 (E.D. Cal. Aug. 30, 2007)

19  (section § 361 did not apply to fraud claim because "at least part of the fraud could

20  _____

21    [2]  Machado misstates the law of accrual.  Under the discovery rule, mere
"suspicions" do not cause the limitations period to start.  See Intermedics, Inc. v.

22  Ventritex, Inc., 775 F. Supp. 1258, 1266 (N.D. Cal. 1991) ("We cannot apply statute

23  of limitations law in a way that pressures litigants to file suits based merely on
suspicions and fears. . . . [S]uspicion and fear are not sufficient predicates for

24  launching a lawsuit, and to file an action with no other basis would offend norms
articulated in rules like Federal Rule of Civil Procedure 11.").  Rather, the statute of

25  limitations for a particular claim "will be tolled until such time as a reasonable
investigation would have revealed its factual basis."  Fox v. Ethicon Endo-Surgery,

26  Inc., 35 Cal.4th 797, 802 (2005).  Although the misappropriation claims are timely
in any case, none of the evidence cited in Machado's Motion shows that Mattel was

27  on notice of a trade secret misappropriation claim by April 19, 2004.

28

be said to arise out of California"). Here, Mattel Mexico's trade secrets misappropriation claim arises partly in California, so § 361, and Mexico's two-year statute of limitations, do not apply. Machado's misappropriation of Mattel Mexico's trade secrets was induced by Larian, a California resident. See Feb. 10, 2011 Trial Tr. Vol. 3 (Larian) at 46:21-47:21; Feb. 10, 2011 Trial Tr. Vol. 2 (Larian) at 49:9-17; see also Feb. 10, 2011 Trial Tr. Vol. 2 (Larian) at 39:14-40:9; Feb. 17, 2011 Trial Tr. Vol. 3, (Larian) at 51:21-53:1, 55:2-5; Mar. 4, 2011 Trial Tr. Vol. 1 (Machado) at 34:11-35:24, 38:8-39:7, 49:2-50:1; Mar. 4, 2011 Trial Tr. Vol. 3 (Machado) at 12:14-13:25, 15:6-15:14, 38:10-39:1; Mar. 4, 2011 Trial Tr. Vol. 4 (Machado) at 58:19-59:14. Trueba solicited documents for Machado to steal from California. TX 8147. Machado accessed Mattel systems in California to steal documents. Mar. 4, 2011 Trial Tr. Vol. 1 (Machado) at 53:7-54:17. Machado exchanged emails about his harming Mattel with Larian in California, including his triumphant exclamation that "Rome is on fire." See Mar. 4, 2011 Trial Tr. Vol. 2 (Machado) at 15:19-17:25 (TX 6437), Feb. 10, 2011 Trial Tr. Vol. 2 (Machado) at 50:10-57:13 (TX 3609, TX 6416, TX 3617, TX 3618); Feb. 10, 2011 Trial Tr. Vol. 3 (Larian) at 51:22-52:23 (TX 6785); Mar. 4, 2011 Trial Tr. Vol. 2 (Machado) at 20:25-21:23, 25:9-27:7 (TX 6746); Mar. 4, 2011 Trial Tr. Vol. 4 (Machado) at 45:20-50:9. Machado took Mattel documents that concerned the United States market, including California. TX 7115, TX 6739, Mar. 10, 2011 Trial Tr. Vol. 1 (Willensky) at 78:15-79:3. Portions of Mattel Mexico's causes of action arose out of California, which precludes application of the borrowing statute.

## B.  Machado Waived Any Argument Under Section 361 By Failing To Raise The Statute Previously

Even if California's borrowing statute applied, which it does not, Machado waived his right to rely on it because he failed to assert section 361 previously. See Dkt. No. 8623 at 22 (Machado's Answer to Fourth Amended Counterclaims); Dkt. No. 9073 (Machado's Motion for Summary Judgment); Dkt. No. 9855, Exh. A

-12-

(Second Amended Final Pre-Trial Conference Order).  This is a waiver.  See Smith v. Gulf Oil Co., 995 F.2d 638, 642-44 (6th Cir. 1993) (trial court correctly precluded legal theory that was not raised until during trial); Eagle v. American Telephone & Telegraph Co., 769 F.2d 541, 548 (9th Cir. 1985) (failure to include theory in pre-trial conference order constituted waiver).  Machado cites no case where the borrowing statute was asserted for the first time mid-trial.  It cannot be.

### C.   Machado's Choice Of Law Arguments Are Premature, And Conflict With The Court's Prior Rulings

Under choice of law rules, California law applies unless Machado proves that the law of a foreign forum should be applied.  CRS Recovery, Inc. v. Laxton, 600 F.3d 1138, 1142 (9th Cir. 2010) ("the law of the forum state will be invoked, and the burden is with the proponent of foreign law to show that the foreign rule of decision will further the interests of that state"); Bowoto v. Chevron Corp., 2006 WL 2455761, at *7 (N.D. Cal. Aug. 22, 2006) ("The choice of law analysis includes a presumption that California law applies; the proponent of foreign law therefore bears the burden of showing that there is a compelling reason to displace California law.").  Because Machado bears the initial burden of proving that Mexico law applies, Mattel has to this point had no obligation to present *any* evidence to the contrary.  On that ground alone, the motion must be denied; Mattel has a right to introduce evidence on these issues in rebuttal to Machado's case if he puts one on.  Fed. R. Civ. P. 50(a) (Rule 50 motion can be granted only after "a party has been fully heard on an issue during a jury trial").

Even if now were the time to decide the issue, Machado offers no basis for taking this issue from the jury.  On summary judgment, the Court found disputed factual issues for the jury to resolve:  (i) the situs of Mattel's injury; (ii) which Mattel entity owned the documents; (iii) whether MGA Mexico or MGA used the documents; (iv) whether the documents were accessed on Mattel's El Segundo servers; and (v) whether the documents concerned the U.S. market.  See Dkt. No.

9600 at 56:18-57:23.  The Court noted that the factual dispute underlying the choice

of law determination "runs to the heart of Mattel's claim against Machado . . . ."  Id.

at 57 n.24.  Rather than show the jury could not find in Mattel's favor on these

issues, Machado simply argues the Court should engage in its own factfinding as to

them.  Mot. at 5, n.2.  But the Court's ruling was to the contrary, Dkt. No. 9600 at

57 ("Given the foundational dispute about the scope of Mattel's allegations, this is

an issue the parties can take up with the fact-finder"), and was correct.  Marra v.

Bushee, 447 F.2d 1282, 1285 (2d Cir. 1971) ("because the defendant was entitled to

the *jury's* finding of the facts which were determinative of the choice of law

principles, the judgment of the district court is reversed and the case remanded for a

new trial.") (italics added).  Unlike the Matter of Yagman case that Machado cites,

796 F.2d 1165, 1171 n.2 (9th Cir. 1986), where plaintiffs were "unable to identify

the disputed factual issues that they claim were in need of resolution," the Court's

summary judgment order itself identifies fact issues the jury must decide.

Machado's remaining authorities do not apply California's law choice of law rules,

and merely evidence the Circuit split this Court has recognized in its summary

judgment ruling; they do not control.  See Dkt. No. 9600 at 57 n. 24.

     Machado makes no argument that the jury could not find in Mattel's favor as

to the fact issues previously identified by the Court; there is, accordingly, no basis

for granting his motion.

### D.    Under Choice of Law Principles, California's Three Year Statute of Limitations Applies

     In any case, should the Court choose to decide the matter, a correct choice of

law analysis shows California law applies.  "In a federal question action where the

federal court is exercising supplemental jurisdiction over state claims, the federal

court applies the choice-of-law rules of the forum state. . . "  Paracor Fin., Inc. v.

Gen. Elec. Capital Corp., 96 F.3d 1151, 1164 (9th Cir. 1996).  California courts

apply the "governmental interest" analysis to decide choice of law issues, which

-14-

MATTEL AND MATTEL MEXICO'S OPPOSITION TO MACHADO'S MOTION FOR JUDGMENT AS A
MATTER OF LAW

involves a three-part test.  First, "the court examines the substantive law of each jurisdiction to determine whether the laws differ as applied to the relevant transaction."  CRS Recovery, Inc., 600 F.3d at 1142.  The Court has ruled here that Mexico's and California's laws differ.  Dkt. No. 9600 at 55:26-27.  Second, "if the laws do differ, the court must determine whether a 'true conflict' exists in that each of the relevant jurisdictions has an interest in having its law applied."  Id.  If more than one jurisdiction has a legitimate interest, the court must engage in a third "comparative impairment" step and "identify and apply the law of the state whose interest would be more impaired if its law were not applied."  Id.  See also Hurtado v. Superior Court, 11 Cal. 3d 574, 580 n.2 (1974) ("The governmental interests approach is applicable not only to situations involving multistate contacts but also to those involving a state of the United States vis-a-vis a political entity of a foreign country.").

### 1.    California Has An Interest In Having Its Law Applied

Mattel has presented ample evidence of California's interest in having its law applied.  California is the situs of Mattel's injury.  Machado took documents that he knew came from Mattel in California.  Mar. 4, 2011 Trial Tr. Vol. 1 (Machado) at 53:10-12.  Machado had been to Mattel's offices in California on business and knew that Mattel's headquarters are located in Southern California.  Mar. 4, 2011 Trial Tr. Vol. 1 (Machado) at 53:20-25.  Machado took Mattel documents that concerned the United States market, including California (TX 7115, TX 6739, Mar. 10, 2011 Trial Tr. Vol. 1 (Willensky) at 78:15-79:3) and took documents that were created in the United States and stored on Mattel servers in the United States.  Mar. 10, 2011 Trial Tr. Vol. 1 (Willensky) at 80:19-25; Mar. 9, 2011 Trial Tr. Vol. 2 (Nordquist) at 83:12-87:5, 99:23-104:7, TX 7104, TX 7110.  Machado admits he did not think that Mattel, the parent in California, had all of its computer systems with these documents on them in Mexico.  Mar. 4, 2011 Trial Tr. Vol. 1 (Machado) at 54:11-17.

MATTEL AND MATTEL MEXICO'S OPPOSITION TO MACHADO'S MOTION FOR JUDGMENT AS A MATTER OF LAW

1    There can be no dispute that California has a legitimate interest in

2    encouraging investment in, development of and protection of intellectual property,

3    including trade secrets, by and for the benefit of its residents and its subsidiaries.

4    California has a legitimate interest in prohibiting those who have access to trade

5    secrets by reason of their relationship with a California resident and its subsidiaries

6    from misappropriating those trade secrets and using them to compete improperly

7    against a California resident.   <u>Magnecomp Corp. v. Athene Co.</u>, 209 Cal. App. 3d

8    526, 539-40 (1989) (finding personal jurisdiction over a Japanese corporation in part

9    because California trade secret law would apply over Japanese law and stating,

10   "California has manifested a strong interest in providing a forum to its residents for

11   causes of action arising from misappropriation of trade secrets by its enactment of

12   the Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.)") (citations omitted).

13   The California legislature has considered and enacted limitations periods to protect

14   its residents against such thefts and disloyalty.   <u>See</u> <u>Cal. Civ. Code</u> § 3426.6.

15   California has an interest in having its law applied.

16        **2.    <u>Mexico Does Not Have A Legitimate Interest In Having Its</u>**

17             **<u>Law Applied</u>**

18   Machado argues that all but one alleged trade secret relates to the Mexico

19   market and was kept in Mexico.  Mot. at 7-8.   But the evidence shows the

20   documents were stored on Mattel's servers in California, Dkt. No. 9600 at 56:18-

21   57:23 (<u>see, e.g.</u>, Mar. 10, 2011 Trial Tr. Vol. 1 (Willensky) at 80:19-25, TX 6739;

22   Mar. 9, 2011 Trial Tr. Vol. 2 (Nordquist) at 83:12-87:5, 99:23-104:7, TX 7104, TX

23   7110), and many concerned the United States market.  For example, TX 7115 is a

24   directory of Mattel licensees that includes licensees in the United States, including

25   licensees in California (TX 7115-005, -012, -017), Florida (TX 7115-006, -009),

26   New York (TX 7115-003, -017), New Jersey (TX 7115-009, -017), Texas (TX

27   7115-012), and Illinois (TX 7115-017).   Mattel's 2004 Girls Full Year Mexico

28   Viability Testing Report (TX 6739) contains a comparison of Mattel products in

both the United States and the Mexico markets, Mar. 10, 2011 Trial Tr. Vol. 1 (Willensky) at 78:15-79:3, and was created in the United States and stored on Mattel's servers in the United States. Id. at 80:19-25. The Barbie 2005 Preliminary Line List (TX7104) was created in El Segundo, California. Mar. 9, 2011 Trial Tr. Vol. 2 (Nordquist) at 83:12-87.5; Mar. 9, 2011 Trial Tr. Vol. 2 (Nordquist) at 99:23-104:7, TX 7110. Machado admits he took documents that he knew came from Mattel in California. Mar. 4, 2011 Trial Tr. Vol. 1 (Machado) at 53:10-25.

### 3. Even If Mexico Also Has An Interest In Having Its Law Apply, Comparative Impairment Analysis Favors Applying California Law

Machado has not even begun to satisfy the "comparative impairment" element of the governmental interest test. This requires the proponent of the foreign law to "carefully evaluate [] and compare [] the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state." McCann v. Foster Wheeler LLC, 48 Cal. 4th 68, 96-97 (2010) (internal citation and quotation omitted). The Court does not "weigh" the respective governmental interests, or determine which rule "is the better or worthier rule, but rather [determines] – in light of the legal question at issue and the relevant state interests at stake – which jurisdiction should be allocated the predominating lawmaking power under the circumstances of the present case." Id. at 97. "Several factors are relevant to this determination, including (1) each forum's present commitment to the application of its laws; (2) whether one forum's law is more prevalent; (3) whether each forum's law is the exclusive means of achieving a particular policy goal; and (4) the situs of the injury. Van Winkle v. Allstate Ins. Co., 290 F. Supp. 2d 1158, 1166-1167 (C.D. Cal. 2003) (collecting cases)." Dkt. No. 9600 at 57:8-12.

(a)    <u>Each Forum's Commitment to The Application of Its Laws/Prevalence of The Forum's Law</u>

The very cases Machado cites refute his assertion that "the interest of California is scant."  Mot. at 10.  <u>McCann</u> affirms that California has an interest in seeing its own law applied to claims brought by California residents, even where the alleged injury occurs outside California.  <u>McCann</u>, 48 Cal. 4th at 95 (citing cases).  Indeed, in contrast to this case, where Mattel is seeking redress for injuries it suffered in California, the injury in <u>McCann</u> traced back almost 50 years before the litigation was commenced to a time when both parties resided in another state.  48 Cal. 4th at 98.  California's interest is even stronger here, where trade secrets Machado stole were owned by Mattel, a California corporation headquartered in this state, resulting in substantial harm in this forum to one of its residents, and where the misappropriation of Mattel's trade secrets was part of a broad scheme to harm Mattel orchestrated by Machado with other California residents, including MGA and Larian.

In the other case Machado cites, the court likewise recognized California's interest even though the injuries all occurred outside California.  <u>Offshore Rental Co. v. Cont'l Oil Co.</u>, 22 Cal. 3d 157, 164 (1978) ("California's policy of protection extends beyond such an injury inflicted within California . . .").  The court rejected California law only because the California statute was of "minimal importance".  <u>See</u> <u>id.</u> at 169 ("the California statute has historically been of minimal importance in the fabric of California law, and [ ] the Louisiana courts have recently interpreted their analogous Louisiana statute narrowly in light of that statute's obsolescence.").  Machado offers no argument that California's laws regarding misappropriation of trade secrets generally, or California's determination to give plaintiffs three years to sue specifically, are of minimal importance.  Machado also offers no argument that Mexico has any heightened interest in the enforcement of its general, non-specific statute of limitations that applies to torts.  Absent such evidence, and given that the

1   injuries occurred at least partly in California, Machado cannot satisfy his burden to
2   defeat the application of California law.

3          Machado attempts to downplay California's interest based on his own
4   citizenship, place of employment, and the place where he downloaded Mattel's
5   documents.  Mot. at 9-10.  But these facts alone do not control, as demonstrated by
6   the Court's summary judgment ruling.  Dkt. No. 9600 at 56:18-57:23.  California
7   has long rejected the "location of the wrong" as a basis for analyzing conflict of law
8   issues.  See Reich v. Purcell, 67 Cal. 2d 551, 555 (1967) ("[T]he place of the wrong
9   is not necessarily the applicable law for all tort actions brought in the courts of this
10  state . . . and other cases to the contrary are overruled.") (internal citations omitted);
11  see also Hurtado, 11 Cal. 3d at 579-80 ("[I]n Reich . . . we renounced the prior rule .
12  . . that in tort actions the law of the place of the wrong was the applicable law in a
13  California forum regardless of the issues before the Court.  We adopted in its place a
14  rule requiring an analysis of the respective interests of the states involved");
15  Kearney v. Salomon Smith Barney, Inc., 39 Cal. 4th 95, 107 (2006) ("Beginning
16  with Chief Justice Traynor's seminal decision for this court in Reich . . . California
17  has applied the so-called governmental interest analysis in resolving choice-of-law
18  issues.").

19         In Doe v. LDS, No. 1:09-cv-00351, Dkt. 109 (D. Idaho Aug. 12, 2010)
20  (Carter, J.), the decision the Court recently raised with the parties, the Court applied
21  Oregon's "most significant relationship" test based on the Restatement (Second) of
22  Conflict of Laws § 145.  California on the other hand follows the governmental
23  interest analysis and applies the factors discussed above.  Doe does not apply
24  because the place of employment is neither a principal factor nor a dispositive factor
25  under the governmental interest test that California has adopted.  Compare CRS
26  Recovery, Inc., 600 F.3d at 1142 and Van Winkle, 290 F. Supp. 2d at 1166-67 with
27  Doe, No. 1:09-cv-00351, Dkt. 109 at 6 ("The court may consider the following
28  factors in determining which state has the 'most significant relationship' to a

-19-

particular dispute: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered.").   Moreover, in the Ninth Circuit case cited in the <u>Doe</u>, <u>Zinser v. Accufix Research Inst., Inc.</u>, 253 F.3d 1180, 1187-88 (9th Cir. 2001), the Ninth Circuit rejected the choice of law analysis based just on geographic connections.  <u>See</u> <u>Zinser</u>, 253 F.3d at 1187-88.  <u>Zinser</u> is further distinguishable because the Ninth Circuit was deciding choice of law for purposes of class certification of a nationwide class.  <u>See</u> <u>id.</u>

Given that the injuries here consisted of the theft of intellectual property belonging to a California-based company, application of a non-specific Mexican limitations period to defeat the claim would strongly impair California's interests. Whatever interest Mexico might have in having its shorter limitations period applied is outweighed by the interest of California in permitting its resident corporations to seek redress for theft of their intellectual property.

### (b)      Whether Each Forum's Law Is The Exclusive Means of Achieving A Particular Policy Goal

California's longer statute of limitations extends the time during which a party may sue for trade secret misappropriation.  It is the exclusive means of achieving the policy goal of providing an appropriate period of time, particularly to California residents, to seek redress for misappropriation of trade secrets.

### (c)      The Situs of The Injury

Absent from Machado's motion is any attempt to address the situs of Mattel's injury – an issue the Court specifically reserved for the fact-finder at summary judgment.  <u>See</u> Dkt. No. 9600 at 57:19-23.  The injury (and even the thefts) *did not* occur solely in Mexico.  California has a legitimate interest in ensuring that companies have means of redress for thefts of their intellectual property occurring at least partly in California.  California also has a strong interest in protecting Mattel as

-20-

a California resident injured in this forum, and in ensuring that state laws regulating misappropriation of trade secrets are enforced.  See In re Matter of Yagman, 796 F.2d at 1171; McCann, 48 Cal. 4th at 95; Offshore Rental, 22 Cal. 3d at 164.

There is, in short, no basis for rejecting California law, and certainly no basis for denying Mattel the right to have the jury decide the predicates showing that California law should apply.

### Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court deny Machado's Motion in its entirety.

DATED:  March 31, 2011        QUINN EMANUEL URQUHART & SULLIVAN, LLP


By /s/ John B. Quinn

John B. Quinn
Attorneys for Mattel, Inc., and Mattel de Mexico, S.A. de C.V

MATTEL AND MATTEL MEXICO'S OPPOSITION TO MACHADO'S MOTION FOR JUDGMENT AS A MATTER OF LAW