# Exhibit A

1 | QUINN EMANUEL URQUHART & SULLIVAN, LLP
John B. Quinn (Bar No. 090378)
2 | (johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
5 | Los Angeles, California 90017-2543
Telephone: (213) 443-3000
6 | Facsimile: (213) 443-3100

7 | Attorneys for Mattel, Inc.

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | SOUTHERN DIVISION

11

12 | MATTEL, INC., a Delaware corporation,

13 | Plaintiff,

14 | vs.

15 | MGA ENTERTAINMENT, INC., a California corporation, et al.,

16

17 | Defendants.

18 | AND CONSOLIDATED CASES

19

CASE NO. CV 04-9049 DOC (RNBx)

Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

MATTEL, INC.'S ELEVENTH SET OF REQUESTS FOR DOCUMENTS AND THINGS (PHASE 2)

20
21
22
23
24
25
26
27
28

1      Pursuant to <u>Rule</u> 34 of the <u>Federal Rules of Civil Procedure</u>,

2   Mattel, Inc. hereby requests that MGA Entertainment, Inc. ("MGA") respond to

3   these document requests ("Requests") and make available for inspection and

4   copying originals of the following documents within 30 days of service at the

5   offices of Quinn Emanuel Urquhart & Sullivan, LLP, 865 South Figueroa Street,

6   10th floor, Los Angeles, CA 90017.  MGA shall be obligated to supplement

7   responses to these requests at such times and to the extent required by <u>Rule</u> 26(e) of

8   the <u>Federal Rules of Civil Procedure</u>.

9

10  **I.     DEFINITIONS**

11      For purposes of these Requests, the following definitions apply:

12      A.    "YOU," "YOUR" and "MGA" mean MGA Entertainment, Inc.

13  and any PERSON acting directly or indirectly by, through, under or on behalf of

14  MGA Entertainment, Inc., including but not limited to current or former directors,

15  officers, employees, agents, contractors, attorneys, accountants, or representatives of

16  MGA Entertainment, Inc. and any corporation, partnership, association, trust,

17  parent, subsidiary, division, affiliate, predecessor-in-interest and successor-in-

18  interest, and any other PERSON acting on its behalf.

19      B.    "DOCUMENT" or "DOCUMENTS" means all "writings" and

20  "recordings" as those terms are defined in <u>Rule</u> 34 of the <u>Federal Rules of Civil</u>

21  <u>Procedure</u> and <u>Rule</u> 1001 of the <u>Federal Rules of Evidence</u>, including, but not

22  limited to, all writings and records of every type and description including, but not

23  limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles,

24  electronic mail ("e-mail"), records of telephone conversations, handwritten and

25  typewritten notes of any kind, statements, reports, minutes, recordings, transcripts

26  and summaries of meetings, voice recordings, pictures, photographs, drawings,

27  computer cards, tapes, discs, printouts and records of all types, studies, instruction

28  manuals, policy manuals and statements, books, pamphlets, invoices, canceled

-2-
MATTEL. INC.'S REQUESTS FOR DOCUMENTS AND THINGS

1  checks and every other device or medium by which or through which information of

2  any type is transmitted, recorded or preserved. Without any limitation on the

3  foregoing, the term "DOCUMENT" shall include all copies that differ in any respect

4  from the original or other versions of the DOCUMENT, including, but not limited

5  to, all drafts and all copies of such drafts or originals containing initials, comments,

6  notations, insertions, corrections, marginal notes, amendments or any other variation

7  of any kind.

8        C.    "COMMUNICATION," in the plural as well as the singular,

9  means any transmittal and/or receipt of information, whether such was oral or

10  written, and whether such was by chance, prearranged, formal or informal, and

11  specifically includes, but is not limited to, conversations in person, telephone

12  conversations, electronic mail (including instant messages and text messages),

13  voicemail, letters, memoranda, statements, media releases, magazine and newspaper

14  articles, and video and audio transmissions.

15        D.    "PERSON," in the plural as well as the singular, means any

16  natural person, association, partnership, corporation, joint venture, government

17  entity, organization, trust, institution, proprietorship, or any other entity recognized

18  as having an existence under the laws in United States or any other nation, including

19  all of the PERSON's current or former employees, agents, representatives,

20  attorneys, accountants, vendors, consultants, independent contractors, predecessors-

21  in-interest and successors-in-interest, and anyone else acting on behalf of the

22  PERSON, pursuant to the PERSON's authority or subject to the PERSON's control.

23        E.    "MATTEL" means Mattel, Inc. and all current or former

24  directors, officers, employees, agents, contractors, attorneys, accountants,

25  representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and

26  successors-in-interest, and any other PERSON acting on its behalf, pursuant to its

27  authority or subject to its control.

28

1    F.    "ELECTRONIC MEDIA" means any medium for storing
2  electronic information, including without limitation, compact disks, internal and
3  external hard-drives, flash memory, USB sticks, and/or thumb drives.

4    G.    "MATTEL PERSONNEL" means any individual who works or
5  worked at any time as an employee, independent contractor, or vendor of, or
6  otherwise performs or performed services for, MATTEL.

7    H.    "SALEMNIA" means Shirin Salemnia, and all of her current or
8  former employees, agents, representatives, attorneys, accountants, vendors,
9  consultants, independent contractors, predecessors-in-interest and successors-in-
10  interest, and any other PERSON acting on her behalf, pursuant to her authority or
11  subject to her control.

12    I.    "BRYANT" means Carter Bryant, and all of his current or
13  former employees, agents, representatives, attorneys, accountants, vendors,
14  consultants, independent contractors, predecessors-in-interest and successors-in-
15  interest, and any other PERSON acting on his behalf, pursuant to his authority or
16  subject to his control.

17    J.    "CASTILLA" means Jorge Castilla, and all of his current or
18  former employees, agents, representatives, attorneys, accountants, vendors,
19  consultants, independent contractors, predecessors-in-interest and successors-in-
20  interest, and any other PERSON acting on his behalf, pursuant to his authority or
21  subject to his control.

22    K.    "EMPLOYEE AGREEMENTS" means and refers to all
23  employee agreements used by YOU which contain clauses RELATING TO the
24  assignment of inventions or the protection of confidential information, trade secrets,
25  or intellectual property, including without limitation all versions of the document
26  called Confidentiality And Inventions Assignment Agreement.

27    L.    "MARKET RESEARCH" means any type of research, study,
28  survey or analysis or analysis of consumers or potential consumers of a product or

1   potential product including but not limited to, focus groups, consumers surveys,

2   market analysis, product sales analysis, market reports, sales forecasts, behavioral

3   analyses and consumer research, and including without limitation all reports, charts,

4   data and tangible items relating thereto, such as photographs, videos, or other

5   images.

6         M.   "BRATZ" means any project, product, doll or design ever known

7   by that name (whether in whole or in part and regardless of what such project,

8   product or doll is or has been also, previously or subsequently called) and any

9   product, doll or design or any portion thereof that is now or has ever been known as,

10   or sold or marketed under, the name or term "Bratz" (whether in whole or in part

11   and regardless of what such product, doll or design or portion thereof is or has been

12   also, previously or subsequently called) or that is now or has ever been sold or

13   marketed as part of the "Bratz" line, and each version or iteration of such product,

14   doll or design or any portion thereof. As used herein, "product, doll or designs or

15   any portion thereof" also includes without limitation any names, fashions,

16   accessories, artwork, packaging or any other works, materials, matters or items

17   included or associated therewith. Without limiting the generality of the foregoing,

18   the term "BRATZ" does not and shall not require that there be a doll, product or

19   three-dimensional embodiment existing at the time of the event, incident or

20   occurrence that is the subject of, or otherwise relevant or responsive to, the Requests

21   herein.

22         N.   "BARBIE" means and refers to each image, logo, doll, toy,

23   accessory, product, packaging or other thing or matter that is or has ever been

24   manufactured, marketed, or sold by MATTEL, or others under license by MATTEL,

25   as part of a line of goods or merchandise commonly known as, or sold and marketed

26   under the name, "Barbie."

27         O.   "MY SCENE" means and refers to each image, logo, doll, toy,

28   accessory, product, packaging or other thing or matter that is or has ever been

1   manufactured, marketed, or sold by MATTEL, or others under license by MATTEL,

2   as part of a line of goods or merchandise commonly known as, or sold and marketed

3   under the name, "My Scene."

4          P.   "MOXIE" means any project, product, doll or design ever known

5   by the name or term "Moxy", "Moxie" or "Moxie Girlz" (whether in whole or in

6   part and regardless of what such project, product or doll is or has been also,

7   previously or subsequently called) and any product, doll or design or any portion

8   thereof that is now or has ever been known as, or sold or marketed under, the name

9   or term "Moxy", "Moxie" or "Moxie Girlz" (whether in whole or in part and

10  regardless of what such product, doll or design or portion thereof is or has been also,

11  previously or subsequently called) or that is now or has ever been sold or marketed

12  as part of the "Moxy", "Moxie" or "Moxie Girlz" line, and each version or iteration

13  of such product, doll or design or any portion thereof.  Without limiting the

14  generality of the foregoing, the term "MOXIE" does not and shall not require that

15  there be a doll, product or three-dimensional embodiment existing at the time of the

16  event, incident or occurrence that is the subject of, or otherwise relevant or

17  responsive to, the Requests herein."

18         Q.   "MOXIE PRODUCT" means any product, whether two-

19  dimensional or three-dimensional, and whether in tangible, digital, electronic or

20  other form: (1) that is or has ever been distributed, marketed or sold using the name

21  "Moxie," "Moxy" or "Moxie Girlz" or as part of the "Moxie," "Moxy" or "Moxie

22  Girlz" line or (2) that is or has ever been distributed, marketed or sold in any

23  packaging that includes the name "Moxie," "Moxy" or "Moxie Girlz."

24         R.   "RELATING TO," "REFERRING OR RELATING TO" and

25  "REFER OR RELATE TO" mean any and all of the following terms and their

26  synonyms:  refer to, discuss, constitute, evidence, pertain to, mention, support,

27  contradict, negate, bear on, touch on, indicate, contain, embody, reflect, identify,

28  state, deal with, concern, comment on, respond to, relevant to, or describe.

S.   "Any" as used in these Requests includes the word "all," and the word "all" as used in these Requests includes the word "any."

T.   The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and vice versa; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and vice versa, whenever such construction results in a broader disclosure of documents or information.

## II.   INSTRUCTIONS

A.   YOU are to produce all requested DOCUMENTS in YOUR possession, custody or control.

B.   If YOU contend that YOU are not required to produce certain DOCUMENTS called for by these Requests on the grounds of a privilege or protection that YOU are not prepared to waive, identify each such DOCUMENT and provide the following information:

1.   the date and type of the DOCUMENT, the author(s) and all recipients;

2.   the privilege or protection that YOU claim permits YOU to withhold the DOCUMENT;

3.   the title and subject matter of the DOCUMENT;

4.   any additional facts on which YOU base YOUR claim of privilege or protection; and

5.   the identity of the current custodian of the original of the DOCUMENT.

C.      DOCUMENTS shall be produced in their original file folders, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT and the PERSON for whom or department, division or office for which the DOCUMENT or the file folder is maintained shall be identified.

D.      DOCUMENTS should be produced in their complete and unaltered form. Attachments to DOCUMENTS should not be removed. The DOCUMENTS should not be cut-up, pasted over, redacted or altered in any way for any reason, including alleged nonrelevance. If emails are produced that had attachments, the attachments shall be attached when produced.

E.      DOCUMENTS in electronic form shall be produced in that form.

F.      In the event that any DOCUMENT called for by these requests has been destroyed or discarded, that DOCUMENT is to be identified by stating:

1.      the date and type of the DOCUMENT, the author(s) and all recipients;

2.      the DOCUMENT's date, subject matter, number of pages, and attachments or appendices;

3.      the date of destruction or discard, manner of destruction or discard, and reason for destruction or discard;

4.      the PERSONS who were authorized to carry out such destruction or discard;

5.      the PERSONS who have knowledge of the content, origins, distribution and destruction of the DOCUMENT; and

6.      whether any copies of the document exist and, if so, the name of the custodian of each copy.

### III.    REQUESTS FOR DOCUMENTS AND THINGS

REQUEST FOR PRODUCTION NO. 1:

All DOCUMENTS REFERRING OR RELATING TO aspects of MGA's workforce that were considered to be incomplete or unfilled, lacking, or otherwise insufficient at MGA, and for which MGA considered hiring or sought to hire additional personnel, from 2000 until the present.

REQUEST FOR PRODUCTION NO. 2:

All DOCUMENTS REFERRING OR RELATING TO skills, capabilities, experiences, contacts or other information that were considered by MGA to be useful or desirable, and for which MGA considered hiring or sought to hire additional personnel, from 2000 until the present.

REQUEST FOR PRODUCTION NO. 3:

All DOCUMENTS REFERRING OR RELATING TO efforts at MGA to locate, attract or secure MATTEL PERSONNEL to remedy or ameliorate any perceived deficiencies or weaknesses in MGA's workforce, from 2000 until the present.

REQUEST FOR PRODUCTION NO. 4:

All DOCUMENTS REFERRING OR RELATING TO planned, proposed, contemplated or actual efforts at or by MGA to locate, attract or secure MATTEL PERSONNEL to augment, enhance or change MGA's workforce in any way, including efforts to secure skills, capabilities, experiences, contacts or other information that was/were considered by MGA to be needed, helpful, useful or desirable.

REQUEST FOR PRODUCTION NO. 5:

All DOCUMENTS uncovered during or in connection with any investigation by MGA, conducted between 2000 and the present, inclusive, to determine whether MATTEL PERSONNEL had engaged in any wrongdoing, including but not limited to DOCUMENTS containing or reflecting information that was prepared, made, created, generated, assembled or compiled by or for MATTEL.

REQUEST FOR PRODUCTION NO. 6:

All DOCUMENTS uncovered during or in connection with any investigation by MGA, conducted between 2000 and the present, inclusive, to determine whether each PERSON identified in deposition Exhibit 664 had engaged in any wrongdoing, including but not limited to DOCUMENTS containing or reflecting information that was prepared, made, created, generated, assembled or compiled by or for MATTEL.

REQUEST FOR PRODUCTION NO. 7:

All DOCUMENTS REFERRING OR RELATING TO materials sent, uploaded, downloaded or accepted or received by MGA through or using Skype, or any other internet-based service capable of transmitting files, to or from MATTEL PERSONNEL, including but not limited to DOCUMENTS that were sent, uploaded, downloaded, accepted or received, or DOCUMENTS REFERRING OR RELATING to such sending, uploading, downloading or acceptance or receipt.

REQUEST FOR PRODUCTION NO. 8:

All DOCUMENTS REFERRING OR RELATING TO materials sent, uploaded, downloaded or accepted or received by MGA through or using Skype, or any other internet-based service capable of transmitting files, to or from each PERSON identified in deposition Exhibit 664, including but not limited to

1  DOCUMENTS that were sent, uploaded, downloaded, accepted or received, or

2  DOCUMENTS REFERRING OR RELATING to such sending, uploading,

3  downloading or acceptance or receipt.

4

5  REQUEST FOR PRODUCTION NO. 9:

6      All DOCUMENTS identifying or listing "Key Results Areas" (KRAs)

7  for any MATTEL PERSONNEL.

8

9  REQUEST FOR PRODUCTION NO. 10:

10      All DOCUMENTS identifying or listing "Key Results Areas" (KRAs)

11  for each PERSON identified in deposition Exhibit 664.

12

13  REQUEST FOR PRODUCTION NO. 11:

14      All performance evaluations or reviews of any MATTEL

15  PERSONNEL.

16

17  REQUEST FOR PRODUCTION NO. 12:

18      All performance evaluations or reviews of each PERSON identified in

19  deposition Exhibit 664.

20

21  REQUEST FOR PRODUCTION NO. 13:

22      All DOCUMENTS REFERRING OR RELATING TO MARKET

23  RESEARCH regarding any decision by MGA to create, design, develop, launch,

24  release or abandon BRATZ including, without limitation, the reasons for and factors

25  influencing its decision.

26

27

28

REQUEST FOR PRODUCTION NO. 14:

All DOCUMENTS REFERRING OR RELATING TO the selection, approval process, design and development of MGA's "Alien Racers" products and themes prior to their initial release to the public, including but not limited to any design drawings, MARKET RESEARCH, and product approval memos.

REQUEST FOR PRODUCTION NO. 15:

All DOCUMENTS REFERRING OR RELATING TO the selection, approval process, design and development of MGA's "Mommy's Little" name, including "Mommy's Little Patient" or any similar derivative thereof, products and themes prior to their initial release to the public, including but not limited to any design drawings, MARKET RESEARCH, and product approval memos.

REQUEST FOR PRODUCTION NO. 16:

All studies, analyses, presentations or investigations, including internal studies, analyses, presentations or investigations, REFERRING OR RELATING TO actual or potential market competition between MY SCENE and BRATZ.

REQUEST FOR PRODUCTION NO. 17:

All studies, analyses, presentations or investigations, including internal studies, analyses, presentations or investigations, REFERRING OR RELATING TO actual or potential market competition between BARBIE and BRATZ.

REQUEST FOR PRODUCTION NO. 18:

All studies, analyses, presentations or investigations, including internal studies, analyses, presentations or investigations, REFERRING OR RELATING TO actual or potential market competition between BRATZ and any competing doll, including but not limited to Polly Pocket, Disney Princess, or American Girl dolls.

REQUEST FOR PRODUCTION NO. 19:

DOCUMENTS, including but not limited to organizational charts, sufficient to identify (by name and job function) all MGA personnel with responsibility, at any time since January 2001, for marketing or MARKET RESEARCH, REFERRING OR RELATING TO BRATZ.

REQUEST FOR PRODUCTION NO. 20:

DOCUMENTS, including but not limited to organizational charts, sufficient to identify (by name and job function) all MGA personnel with responsibility, at any time since January 2001, for marketing or MARKET RESEARCH, REFERRING OR RELATING TO any MATTEL products.

REQUEST FOR PRODUCTION NO. 21:

All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATION between MGA and any participant in any MARKET RESEARCH REFERRING OR RELATING TO MY SCENE, BARBIE, MATTEL or BRATZ.

REQUEST FOR PRODUCTION NO. 22:

All DOCUMENTS REFERRING OR RELATING TO MARKET RESEARCH regarding the selection, approval process, design and development of BRATZ products (including, but not limited to, fashion dolls, styling heads and plush toys), themes and packaging prior to their release to the public.

REQUEST FOR PRODUCTION NO. 23:

If YOU contend that BARBIE or MY SCENE has impacted or affected YOUR sales, profits or revenue from any doll or toy, including any fashion doll other than BRATZ, as part of YOUR damages in this case, all DOCUMENTS,

1  including MARKET RESEARCH, REFERRING OR RELATING TO, or

2  influencing MGA's decision to create, design, develop or abandon such doll or toy

3  including, without limitation, the reasons for and factors influencing its decision.

4

5  REQUEST FOR PRODUCTION NO. 24:

6        If YOU contend that BARBIE or MY SCENE has impacted or affected

7  YOUR sales, profits or revenue from any BRATZ doll or toy as part of YOUR

8  damages in this case, all DOCUMENTS, including MARKET RESEARCH,

9  REFERRING OR RELATING TO, or influencing MGA's decision to create,

10  design, develop or abandon such doll or toy including, without limitation, the

11  reasons for and factors influencing its decision.

12

13  REQUEST FOR PRODUCTION NO. 25:

14        All DOCUMENTS REFERRING OR RELATING TO MARKET

15  RESEARCH and competitive studies and analyses prepared or conducted by YOU

16  or prepared on YOUR behalf, at YOUR request or purchased by YOU with respect

17  to the fashion doll market and/or any specific fashion doll, whether marketed by

18  MGA or otherwise.

19

20  REQUEST FOR PRODUCTION NO. 26:

21        All DOCUMENTS REFERRING OR RELATING to any survey, focus

22  group, consumer research or other MARKET RESEARCH (whether conducted by

23  MGA or any third party) concerning MY SCENE, BRATZ, BARBIE or any other

24  MATTEL product.

25

26

27

28

REQUEST FOR PRODUCTION NO. 27:

All DOCUMENTS containing information created by, for, or on behalf of MATTEL, which was stored on any ELECTRONIC MEDIA used by any PERSON identified in Deposition Exhibit 664.

REQUEST FOR PRODUCTION NO. 28:

All DOCUMENTS listing "Mattel" or another MATTEL entity in the "Author" metadata field, and which were stored on any ELECTRONIC MEDIA used by any PERSON identified in Deposition Exhibit 664.

REQUEST FOR PRODUCTION NO. 29:

All DOCUMENTS listing any MATTEL PERSONNEL in the "Author" metadata field, and which were stored on any ELECTRONIC MEDIA used any PERSON identified in Deposition Exhibit 664.

REQUEST FOR PRODUCTION NO. 30:

All DOCUMENTS REFERRING OR RELATING to any access to, use, reproduction, copying, retention, storage, destruction, deletion, transmission, transfer, or disclosure of DOCUMENTS stored on any ELECTRONIC MEDIA used by any PERSON identified in Deposition Exhibit 664 and containing information created by, for or on behalf of MATTEL.

REQUEST FOR PRODUCTION NO. 31:

All DOCUMENTS REFERRING OR RELATING to any access to, use, reproduction, copying, retention, storage, destruction, deletion, transmission, transfer, or disclosure of DOCUMENTS stored on any ELECTRONIC MEDIA used by any PERSON identified in Deposition Exhibit 664 and listing "Mattel" or any MATTEL entity in the "Author" metadata field.

REQUEST FOR PRODUCTION NO. 32:

All DOCUMENTS REFERRING OR RELATING to any access to, use, reproduction, copying, retention, storage, destruction, deletion, transmission, transfer, or disclosure of DOCUMENTS stored on any ELECTRONIC MEDIA used by any PERSON identified in Deposition Exhibit 664 and listing any MATTEL PERSONNEL in the "Author" metadata field.

REQUEST FOR PRODUCTION NO. 33:

Any DOCUMENTS that REFER OR RELATE TO any PERSON'S access to MATTEL confidential or non-public information, including, but not limited to, any MATTEL information not available to the general public, at any time while the PERSON was employed by or otherwise performed services for MGA.

REQUEST FOR PRODUCTION NO. 34:

All DOCUMENTS that REFER OR RELATE TO the receipt by MGA of any non-public and/or confidential information about competitors, including, but not limited to, information regarding future or current products or pricing, product development, advertising plans, business processes or procedures, manufacturing processes or procedures, marketing plans or research, actual or estimated product costs or sales, regardless of how such information was acquired.

REQUEST FOR PRODUCTION NO. 35:

All DOCUMENTS that REFER OR RELATE TO MGA accessing, or attempting to access or visit the showrooms of MATTEL or any other toy manufacturer at any trade show or toy fair, including but not limited to how MGA gained admittance to any competitors' showrooms as well as how MGA controls access to its own showrooms.

REQUEST FOR PRODUCTION NO. 36:

All DOCUMENTS that REFER OR RELATE TO any actions taken by MGA in an attempt to reduce the amount of shelf space occupied by any MATTEL product, including but not limited to moving MATTEL product and COMMUNICATIONS with retailers regarding MATTEL's shelf space.

REQUEST FOR PRODUCTION NO. 37:

All DOCUMENTS that REFER OR RELATE TO any purpose or method by which MGA acquired or possessed any or all non-public MATTEL information including, but not limited to business documents, processes, designs, contact lists, employee information, retailer information, product lists and planning information.

REQUEST FOR PRODUCTION NO. 38:

All DOCUMENTS that REFER OR RELATE TO any and all efforts by MGA, or efforts by any PERSON worldwide, including but not limited to MGA's executives, employees, licensees, agents, contacts, and acquaintances, to acquire MATTEL's non-public information or YOUR efforts worldwide to monitor, "spy on" or gain knowledge of MATTEL's trade secrets or other confidential information, activities, unreleased products, processes, and product creation, design and development, including, but not limited to (a) DOCUMENTS REFERRING OR RELATING TO YOUR COMMUNICATIONS or contacts with any third parties about MATTEL or its business, including but not limited to its products, designs, processes, plans, policies or practices, (b) DOCUMENTS REFERRING OR RELATING TO YOUR use or attempts, including, but not limited to, COMMUNICATIONS with MATTEL PERSONNEL, to gather or obtain confidential information REFERRING OR RELATING TO MATTEL, (c) DOCUMENTS REFERRING OR RELATING TO YOUR knowledge of any

00505.07975/3596492.7

MATTEL product or concept before its release to the public, (d) DOCUMENTS REFERRING OR RELATING TO any instances in which YOU or any MGA employee obtained access to MATTEL showrooms, including obtaining such access under false pretenses, (e) DOCUMENTS REFERRING OR RELATING TO YOUR access to MATTEL's products or showrooms at any toy fair, (f) DOCUMENTS REFERRING OR RELATING TO YOUR access to any retailer's "planograms" or merchandising display plans or display areas, and (g) DOCUMENTS REFERRING OR RELATING TO YOUR access to MATTEL's confidential product and pricing information from any source.

REQUEST FOR PRODUCTION NO. 39:

All DOCUMENTS that REFER OR RELATE TO MGA's efforts, or any efforts by any PERSON worldwide, including but not limited to MGA's executives, employees, licensees, agents, contacts, and acquaintances, to interfere with or inhibit MATTEL'S business with distributors and retailers, including, but not limited to, (a) pressuring or influencing distributors or retailers not to buy, sell or distribute any MATTEL product, to reduce shelf and display space for any MATTEL product, or to place any MATTEL product in unfavorable locations at retail outlets, and (b) COMMUNICATIONS with retailers or distributors making any representations about MATTEL, including but not limited to statements about MATTEL's purported past or future actions, products, or intent.

REQUEST FOR PRODUCTION NO. 40:

All DOCUMENTS that REFER OR RELATE TO MGA's efforts, or any efforts by any PERSON worldwide, including but not limited to MGA's executives, employees, licensees, agents, contacts, and acquaintances, to interfere, modify, tamper with or alter MATTEL's retail product displays, including, but not limited to, COMMUNICATIONS between YOU and any current or former

1  employee or representative of retailers or distributors regarding interfering,

2  modifying, tampering with or altering MATTEL's retail product displays.

3

4  REQUEST FOR PRODUCTION NO. 41:

5       All DOCUMENTS that REFER OR RELATE TO MGA's efforts, or

6  any efforts by any PERSON worldwide, including but not limited to MGA's

7  executives, employees, licensees, agents, contacts, and acquaintances, to interfere

8  with or inhibit MATTEL's business with a licensee or licensing agent and or to

9  decline to renew a licensing agreement based in whole or in part on that licensee's or

10  licensing agent's relationship (or proposed relationship) with MATTEL.

11

12  REQUEST FOR PRODUCTION NO. 42:

13       All DOCUMENTS that REFER OR RELATE TO MGA's efforts, or

14  any efforts by any PERSON worldwide, including but not limited to MGA's

15  executives, employees, licensees, agents, contacts, and acquaintances, to interfere

16  with or inhibit MATTEL's business with suppliers, factories, or manufacturing

17  facilities.

18

19  REQUEST FOR PRODUCTION NO. 43:

20       All COMMUNICATIONS between YOU and any PERSON,

21  including, but not limited to, any supplier, factory manufacturer, distributor, retailer,

22  licensee, licensing agent, market research firm, and independent contractor,

23  REFERRING OR RELATING TO such PERSON's business with MATTEL,

24  including, but not limited to, any efforts by MATTEL to persuade that PERSON (a)

25  to cease doing business with MATTEL, (b) to limit or reduce its business with

26  MATTEL, or (c) increase such PERSON's business with MGA at the expense of

27  that PERSON's business with MATTEL.

28

1  REQUEST FOR PRODUCTION NO. 44:

2          All DOCUMENTS that REFER OR RELATE TO YOUR efforts, or

3  any efforts by any PERSON worldwide, including but not limited to MGA's

4  executives, employees, licensees, agents, contacts, and acquaintances, to unfairly

5  compete with MATTEL by eroding or damaging its goodwill, including, but not

6  limited to (a) efforts to generate negative publicity or consumer comments about

7  MATTEL or MATTEL products, (b) COMMUNICATIONS with any PERSON

8  concerning any potentially negative features of any MATTEL product, (c) any

9  publicly-released studies or market research about any MATTEL products,

10  commissioned or funded by MGA, and (d) efforts to provide negative information

11  about MATTEL to financial or investment analysts regarding MATTEL or

12  MATTEL's products.

13

14  REQUEST FOR PRODUCTION NO. 45:

15          All COMMUNICATIONS between YOU and any recruiting agency or

16  service that REFER OR RELATE TO locating, recruiting, contacting or hiring any

17  MATTEL PERSONNEL to potentially or actually work for MGA.

18

19  REQUEST FOR PRODUCTION NO. 46:

20          All DOCUMENTS REFERRING OR RELATING TO any use or

21  contemplated use by YOU of any recruiting agency or service to locate, contact,

22  recruit or hire any MATTEL PERSONNEL to potentially or actually work for

23  MGA.

24

25  REQUEST FOR PRODUCTION NO. 47:

26          All COMMUNICATIONS between YOU and any third party that

27  REFER OR RELATE TO YOUR efforts to contact, seek out, or identify any

28

1   MATTEL PERSONNEL at a time when such individuals were not employed by

2   MGA.

3

4   REQUEST FOR PRODUCTION NO. 48:

5        All DOCUMENTS REFERRING OR RELATING TO YOUR efforts

6   to contact, seek out, or identify any MATTEL PERSONNEL at a time when such

7   individuals were not employed by MGA.

8

9   REQUEST FOR PRODUCTION NO. 49:

10        All DOCUMENTS REFERRING OR RELATING TO any

11   COMMUNICATIONS between MGA and any MATTEL PERSONNEL at a time

12   when such individuals were not employed by MGA, REFERRING OR RELATING

13   TO MATTEL or any MATTEL product, regarding the origins, design, development,

14   product launch, sales, promotions, advertising, quality, or price of any MATTEL

15   product worldwide.

16

17   REQUEST FOR PRODUCTION NO. 50:

18        All DOCUMENTS that REFER OR RELATE TO any MATTEL

19   product or proposed product, which are dated or were authored or created before the

20   date that the MATTEL product was first publicly announced.

21

22   REQUEST FOR PRODUCTION NO. 51:

23        All DOCUMENTS that REFER OR RELATE TO any MATTEL

24   product or proposed product, which are dated or were authored or created before the

25   date that the MATTEL product was first offered for sale in retail stores to the

26   general public.

27

28

00505.07975/3596492.7

-21-

MATTEL, INC.'S REQUESTS FOR DOCUMENTS AND THINGS

**REQUEST FOR PRODUCTION NO. 52:**

All COMMUNICATIONS between YOU and SALEMNIA prior to April 1, 2003.

**REQUEST FOR PRODUCTION NO. 53:**

All COMMUNICATIONS between YOU and SALEMNIA prior to April 1, 2004 REFERRING OR RELATING TO MATTEL, any MATTEL product, process, plan, practice, policy, or any aspect of SALEMNIA's employment or potential employment at MATTEL.

**REQUEST FOR PRODUCTION NO. 54:**

All COMMUNICATIONS between YOU and any PERSON, including but not limited to recruiters, temp agencies or other placement agencies, prior to April 1, 2003 REFERRING OR RELATING TO SALEMNIA's employment or potential employment at MATTEL.

**REQUEST FOR PRODUCTION NO. 55:**

All DOCUMENTS constituting personnel or employment files or records for any relative, whether by blood or by marriage, of SALEMNIA who is or has been employed by MGA at any time.

**REQUEST FOR PRODUCTION NO. 56:**

All DOCUMENTS REFERRING OR RELATING TO COMMUNICATIONS between YOU and SALEMNIA prior to April 1, 2003, including but not limited to all calendar entries, phone logs, phone records, and notes reflecting such COMMUNICATIONS.

1  REQUEST FOR PRODUCTION NO. 57:

2      All DOCUMENTS REFERRING OR RELATING TO SALEMNIA

3  prior to April 1, 2003.

4

5  REQUEST FOR PRODUCTION NO. 58:

6      All DOCUMENTS sufficient to show the total compensation of

7  SALEMNIA during her employment at MGA, including, but not limited to, salary,

8  wages, bonuses, perks, and gifts, paid or given to her by MGA, including but not

9  limited to MGA's executives, employees, licensees, agents, contacts, and

10  acquaintances.

11

12  REQUEST FOR PRODUCTION NO. 59:

13      All DOCUMENTS REFERRING OR RELATING TO MGA's

14  MARKET RESEARCH methods, including but not limited to processes,

15  procedures, techniques, and plans, from April 1, 2001 to April 1, 2005.

16

17  REQUEST FOR PRODUCTION NO. 60:

18      All DOCUMENTS received by YOU, directly or indirectly, from

19  SALEMNIA, REFERRING OR RELATING TO any MATTEL method, product,

20  process, plan, policy, or practice, prior to April 1, 2003.

21

22  REQUEST FOR PRODUCTION NO. 61:

23      All DOCUMENTS REFERRING OR RELATING TO YOUR receipt,

24  reproduction, copying, storage, transmission, transfer, retention, destruction,

25  deletion or use of any DOCUMENTS, data and/or information, that was compiled,

26  prepared or created  by, for or on behalf of MATTEL and that YOU received,

27  directly or indirectly, from SALEMNIA.

28

1   REQUEST FOR PRODUCTION NO. 62:

2          All DOCUMENTS REFERRING OR RELATING TO MGA'S use of

3   "conversion testing" as a method of MARKET RESEARCH.

4

5   REQUEST FOR PRODUCTION NO. 63:

6          All DOCUMENTS, including but not limited to identification cards,

7   drivers' licenses, and business cards, used or possessed by YOU or any MGA

8   employee, agent, licensee, contact, or acquaintance that contain false names or

9   fictitious business identities.

10

11  REQUEST FOR PRODUCTION NO. 64:

12         All COMMUNICATIONS between YOU and YOUR employees,

13  subsidiaries, associates, and contacts in Hong Kong, that REFER OR RELATE TO

14  any MATTEL product, design, process, plan, policy, or practice, whether or not the

15  COMMUNICATION REFERS OR RELATES TO information that has been

16  released to the general public or to any third party, and DOCUMENTS sufficient to

17  show to whom the requested documents were disclosed.

18

19  REQUEST FOR PRODUCTION NO. 65:

20         All COMMUNICATIONS between YOU and YOUR employees,

21  subsidiaries, associates, and contacts in Hong Kong, that REFER OR RELATE TO

22  any MATTEL product, design, process, plan, policy, or practice, whether or not the

23  COMMUNICATION REFERS OR RELATES TO information that has been used

24  by the general public or any third party, and DOCUMENTS sufficient to show by

25  whom the requested documents were used.

26

27

28

1  REQUEST FOR PRODUCTION NO. 66:

2          All DOCUMENTS that REFER OR RELATE TO the impact of

3  BRATZ on BARBIE'S market share, shelf space, sales volume, or retailer order

4  volume, or on substitutions in the marketplace between BRATZ and BARBIE,

5  including but not limited to sales figures, MARKET RESEARCH, and shelf space

6  analyses.

7

8  REQUEST FOR PRODUCTION NO. 67:

9          All COMMUNICATIONS between YOU and any third party, retailer,

10  licensee, manufacturer, or distributor that REFER OR RELATE TO the impact of

11  BRATZ on BARBIE'S market share, shelf space, sales volume, or retailer order

12  volume, or on substitutions in the marketplace between BRATZ and BARBIE,

13  including but not limited to sales figures, MARKET RESEARCH, and shelf space

14  analyses.

15

16  REQUEST FOR PRODUCTION NO. 68:

17          All DOCUMENTS, including but not limited to research, studies,

18  analyses, presentations, memoranda and emails, that REFER OR RELATE TO the

19  impact of BRATZ on the sales or potential sales of MY SCENE, BARBIE or any

20  other product sold by MATTEL.

21

22  REQUEST FOR PRODUCTION NO. 69:

23          All DOCUMENTS, including but not limited to research, studies,

24  analyses, presentations, memoranda and emails, that REFER OR RELATE TO the

25  impact of MY SCENE on the sales or potential sales of BRATZ.

26

27

28

1  REQUEST FOR PRODUCTION NO. 70:

2        All DOCUMENTS, including but not limited to research, studies,

3  analyses, presentations, memoranda and emails, that REFER OR RELATE TO the

4  impact of BARBIE on the sales or potential sales of BRATZ.

5

6  REQUEST FOR PRODUCTION NO. 71:

7        All DOCUMENTS that REFER OR RELATE TO the origin,

8  conception, creation, or invention of the name "Moxy," "Moxie," or "Moxie Girlz,"

9  in connection with the MOXIE line of dolls or any other MGA product.

10

11  REQUEST FOR PRODUCTION NO. 72:

12        All DOCUMENTS that REFER OR RELATE TO YOUR decision to

13  use the name "Moxy," "Moxie," or "Moxie Girlz" in connection with the MOXIE

14  line of dolls or any other MGA product.

15

16  REQUEST FOR PRODUCTION NO. 73:

17        All COMMUNICATIONS between YOU and BRYANT regarding the

18  names "Moxy," "Moxie," or "Moxie Girlz."

19

20  REQUEST FOR PRODUCTION NO. 74:

21        All license agreements between YOU and any PERSON that REFER

22  OR RELATE TO any MOXIE PRODUCT.

23

24  REQUEST FOR PRODUCTION NO. 75:

25        ALL COMMUNICATIONS between YOU and CASTILLA

26  REFERRING OR RELATING TO DOCUMENTS or information identified or

27  described, on pages 7 through 58 of Mattel, Inc.'s Third Supplemental Objections

28  and Responses to Interrogatory Nos. 20-23 and 28 in MGA Entertainment, Inc.'s

1  Second Set of Interrogatories, served January 11, 2010 and erroneously dated

2  January 11, 2009, including but not limited to the acquisition, use, destruction of

3  such DOCUMENT or other information.

4

5  REQUEST FOR PRODUCTION NO. 76:

6        All DOCUMENTS REFERRING OR RELATING TO any

7  "moonlighting," including, but not limited to, any work performed by MATTEL

8  PERSONNEL outside of the scope of their employment at MATTEL, whether or

9  not it was performed in exchange for compensation of any kind, that YOU claim

10  occurred involving any MATTEL PERSONNEL during his or her employment at

11  MATTEL.

12

13  REQUEST FOR PRODUCTION NO. 77:

14        For each MOXIE PRODUCT sold by YOU or YOUR licensees,

15  DOCUMENTS sufficient to show, by SKU, the number of units sold by YOU or

16  YOUR licensees for each year from 2008 to the present.

17

18  REQUEST FOR PRODUCTION NO. 78:

19        DOCUMENTS sufficient to show, by SKU, the revenues received by

20  YOU from each MOXIE PRODUCT sold by YOU or YOUR licensees for each

21  year from 2008 to the present including, without limitation, DOCUMENTS

22  sufficient to show gross sales, net sales, sales returns, royalty income, licensing

23  income and other revenues.

24

25  REQUEST FOR PRODUCTION NO. 79:

26        DOCUMENTS sufficient to show, by SKU, the costs incurred by YOU

27  for each MOXIE PRODUCT sold by YOU or YOUR licensees for each year from

28  2008 to the present including, without limitation, documents sufficient to show cost

1  of goods sold, unit cost, standard cost and any other costs accounted for by YOU at
2  the SKU level.
3
4  REQUEST FOR PRODUCTION NO. 80:
5        DOCUMENTS sufficient to show, by product line or brand, the
6  revenues received by YOU from each MOXIE PRODUCT sold by YOU or YOUR
7  licensees for each year from 2008 to the present including, without limitation,
8  DOCUMENTS sufficient to show gross sales, net sales, sales returns, royalty
9  income, licensing income and other revenues.
10
11  REQUEST FOR PRODUCTION NO. 81:
12        DOCUMENTS sufficient to show, by product line or brand, the costs
13  incurred by YOU for each MOXIE PRODUCT sold by YOU or YOUR licensees
14  for each year from 2008 to the present including, without limitation, documents
15  sufficient to show cost of goods sold, royalties paid, other costs of sales, total
16  variable costs, ad production expense, ad media expense, other sales and marketing
17  expenses, product development expenses, travel and entertainment expenses,
18  salaries and related expenses, distribution expenses, other operating expenses,
19  depreciation and amortization, taxes and any other costs accounted for by YOU at
20  the product line or brand level.
21
22  REQUEST FOR PRODUCTION NO. 82:
23        DOCUMENTS sufficient to show, by product line or brand, the profits
24  received by YOU from each MOXIE PRODUCT sold by YOU or YOUR licensees
25  for each year from 2008 to the present including, without limitation, DOCUMENTS
26  sufficient to show gross profit on sales, gross margin, net operating income, net
27  income before taxes and net income.
28

REQUEST FOR PRODUCTION NO. 83:

Originals of the documents produced as MGA2 1426085, MGA2 1426086 and MGA2 1426087.

REQUEST FOR PRODUCTION NO. 84:

Originals of the documents produced as MGA2 1489839, MGA2 1426106 and MGA2 1426117.

REQUEST FOR PRODUCTION NO. 85:

All DOCUMENTS REFERRING OR RELATING TO the documents produced as MGA2 1426085, MGA2 1426086, or MGA2 1426087 including but not limited to any DOCUMENTS containing any of the lines of text reflected in MGA2 1426085, MGA2 1426086, or MGA2 1426087.

REQUEST FOR PRODUCTION NO. 86:

All DOCUMENTS REFERRING OR RELATING TO the documents produced as MGA2 1489839, MGA2 1426106 or MGA2 1426117, including but not limited to any DOCUMENTS containing any of the lines of text reflected in MGA2 1489839, MGA2 1426106 or MGA2 1426117.

REQUEST FOR PRODUCTION NO. 87:

All versions of the documents produced as MGA2 1426085, MGA2 1426086, or MGA2 1426087.

REQUEST FOR PRODUCTION NO. 88:

All versions of the documents produced as MGA2 1489839, MGA2 1426106 or MGA2 1426117.

MATTEL. INC.'S REQUESTS FOR DOCUMENTS AND THINGS

Exhibit A, Page 30

1  REQUEST FOR PRODUCTION NO. 89:

2         All DOCUMENTS containing the phrase "RE: Neil Kadisha".

3

4  REQUEST FOR PRODUCTION NO. 90:

5         All DOCUMENTS REFERRING OR RELATING TO the

6  modification or alteration of the documents produced as MGA2 1426085, MGA2

7  1426086 or MGA2 1426087.

8

9  REQUEST FOR PRODUCTION NO. 91:

10         All DOCUMENTS REFERRING OR RELATING TO the

11  modification or alteration of the documents produced as MGA2 1489839, MGA2

12  1426106 or MGA2 1426117.

13

14  REQUEST FOR PRODUCTION NO. 92:

15         All DOCUMENTS REFERRING OR RELATING TO any

16  enforcement of YOUR EMPLOYEE AGREEMENTS by YOU or threatened action

17  by YOU against any of YOUR employees or former employees relating to

18  violations or claimed violations of YOUR EMPLOYEE AGREEMENTS or YOUR

19  employees' obligations to YOU.

20

21  REQUEST FOR PRODUCTION NO. 93:

22         All COMMUNICATIONS REFERRING OR RELATING TO actual,

23  claimed or potential violations of any of YOUR EMPLOYEE AGREEMENTS.

24

25  REQUEST FOR PRODUCTION NO. 94:

26         All DOCUMENTS REFERRING OR RELATING TO actions,

27  lawsuits, demands or claims filed or submitted by YOU against any of YOUR

28

-30-

1  employees or former employees relating to YOUR confidential information, trade
2  secrets, or intellectual property.

3

4  REQUEST FOR PRODUCTION NO. 95:

5      All DOCUMENTS REFERRING OR RELATING TO any training
6  YOU have provided regarding the administration, interpretation, or meaning of any
7  provisions of YOUR EMPLOYEE AGREEMENTS governing, relating to, or
8  concerning protection, safekeeping or maintenance of confidential information,
9  trade secrets, or intellectual property.

10

11  REQUEST FOR PRODUCTION NO. 96:

12      All DOCUMENTS REFERRING OR RELATING TO YOUR rules,
13  guidelines, policies, practices or procedures governing, relating to, or concerning
14  protection, safekeeping or maintenance of YOUR confidential information, trade
15  secrets, or intellectual property.

16

17  REQUEST FOR PRODUCTION NO. 97:

18      All DOCUMENTS REFERRING OR RELATING TO YOUR rules,
19  guidelines, policies, practices or procedures governing, relating to, or concerning
20  YOUR ownership of YOUR employees' inventions, creations or works.

21

22  REQUEST FOR PRODUCTION NO. 98:

23      All DOCUMENTS REFERRING OR RELATING TO YOUR rules,
24  guidelines, policies, practices or procedures governing, relating to, or concerning
25  YOUR ownership of YOUR employees' ideas.

26

27

28

**REQUEST FOR PRODUCTION NO. 99:**

All DOCUMENTS REFERRING OR RELATING TO YOUR rules, guidelines, policies, practices or procedures governing, relating to, or concerning YOUR ownership of confidential information, trade secrets, or intellectual property prepared, developed, or created by YOUR employees.

**REQUEST FOR PRODUCTION NO. 100:**

All DOCUMENTS REFERRING OR RELATING TO YOUR rules, guidelines, policies, practices or procedures governing, relating to, or concerning the avoidance of conflicts of interest on the part of YOUR employees.

**REQUEST FOR PRODUCTION NO. 101:**

All versions of YOUR EMPLOYEE AGREEMENTS.

**REQUEST FOR PRODUCTION NO. 102:**

All DOCUMENTS REFERRING OR RELATING TO any changes to YOUR EMPLOYEE AGREEMENTS.

**REQUEST FOR PRODUCTION NO. 103:**

All DOCUMENTS REFERRING OR RELATING TO the meaning, interpretation or significance of any term in YOUR EMPLOYEE AGREEMENTS governing, relating to, or concerning YOUR confidential information, trade secrets, or intellectual property.

1  DATED:  July 28, 2010                QUINN EMANUEL URQUHART &
                                        SULLIVAN. LLP
2

3                                       By
4                                          Diane C. Hutnyan
                                           Attorneys for Mattel. Inc.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | QUINN EMANUEL URQUHART & SULLIVAN, LLP
John B. Quinn (Bar No. 090378)
2 | johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
5 | Los Angeles, California 90017-2543
Telephone: (213) 443-3000
6 | Facsimile: (213) 443-3100

7 | Attorneys for Mattel, Inc.

8 |                    UNITED STATES DISTRICT COURT

9 |                    CENTRAL DISTRICT OF CALIFORNIA

10 |                         SOUTHERN DIVISION

11 | MATTEL, INC., a Delaware corporation,          CASE NO. CV 04-9049 DOC (RNBx)

12 |                    Plaintiff,                   Consolidated with:
                                                     Case No. CV 04-09059
13 |         vs.                                      Case No. CV 05-02727

14 | MGA ENTERTAINMENT, INC, a                       **PROOF OF SERVICE**
California corporation, et al.,
15 |

16 |                    Defendant.

17 |
AND CONSOLIDATED ACTIONS
18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

00505.07975/3604674.1                            -i-                    Case No. CV 04-9049 DOC (RNBx)
                                                                               PROOF OF SERVICE

Exhibit A, Page 35

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa St., 10th Floor, Los Angeles, California 90017.

On July 28, 2010, I served true copies of the following document described as:

MATTEL, INC.'S ELEVENTH SET OF REQUESTS FOR DOCUMENTS AND THINGS (PHASE 2)

on the parties in this action as follows:

| | |
|---|---|
| Orrick, Herrington & Sutcliffe LLP<br>William A. Molinski<br>777 S. Figueroa Street, Suite 3200<br>Los Angeles, CA 90017<br>wmolinski@orrick.com | *Attorneys for the MGA Parties* |
| Orrick, Herrington & Sutcliffe LLP<br>Annette L. Hurst<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA 94104<br>ahurst@orrick.com | *Attorneys for the MGA Parties* |
| Skadden, Arps, Slate, Meagher & Flom LLP<br>Thomas J. Nolan, Esq.<br>Jason Russell, Esq.<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, CA  90071<br>tnolan@skadden.com<br>jrussell@skadden.com | **Attorneys for** *the MGA Parties*<br><br><br><br><br>Telephone:  213.687-5000<br>Facsimile:  213.687-5600 |
| Law Offices of Mark Overland<br>Mark E. Overland, Esq.<br>100 Wilshire Boulevard, Suite 950<br>Santa Monica, CA  90401<br>mark@overlaw.net | **Attorneys for** *Carlos Gustavo Machado Gomez*<br><br>Telephone: 310.459-3820<br>Facsimile:  310.459-4621 |
| Scheper Kim & Harris LLP<br>David C. Scheper,Esq.<br>Alexander H. Cote, Esq.<br>601 W. Fifth Street, 12th Floor<br>Los Angeles, CA 90071<br>dscheper@scheperkim.com<br>acote@scheperkim.com | **Attorneys for** *Carlos Gustavo Machado Gomez*<br><br><br>Telephone: 213.613-4655<br>Facsimile:  213.613-4656 |
| Bingham McCutchen LLP<br>Todd Gordinier, Esq.<br>Peter Villar, Esq.<br>600 Anton Boulevard, 18th Floor<br>Costa Mesa, CA 92626<br>todd.gordinier@bingham.com | **Attorneys for** *Omni 808 Investors, LLC* |

-1-

Case No. CV 04-9049 DOC (RNBx)
PROOF OF SERVICE

Exhibit A, Page 36

**BY MAIL:** I enclosed the foregoing in a sealed envelope addressed as shown above, and I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

**BY ELECTRONIC MAIL TRANSMISSION:** By electronic mail transmission from ryanmackey@quinnemanuel.com on July 28, 2010, by transmitting a PDF format copy of such document(s) to each such person at the e-mail address listed below their address(es). The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on July 28, 2010, at Los Angeles, California.

_____
Ryan J. Mackey

00505.07975/3604674.1

Case No. CV 04-9049 DOC (RNBx)
PROOF OF SERVICE

Exhibit A, Page 37