ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: 415-773-5700
Facsimile: 415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: 213-629-2020
Facsimile: 213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br><br>Consolidated with Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**MGA PARTIES' OPPOSITION TO MATTEL'S SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR MISTRIAL**<br><br>Trial Date: January 18, 2011<br>Judge: Hon. David O. Carter |

# INTRODUCTION

Mattel's latest request for a mistrial has no more merit than its forebears. First, MGA's questioning of Moore invaded neither the attorney client privilege nor the work product doctrine. Mattel has failed even to identify the testimony it claims invades the privilege, let alone prove that the privilege exists. Second, Mattel repeatedly grilled Isaac Larian about document production dates. Turnabout is fair play: MGA is entitled to ask the same questions, particularly given Mattel's pattern of late production and intentional suppression of evidence. Third, MGA violated no order by questioning Moore about the disappearance of relevant telephone logs. Mattel has suffered no prejudice. Its motion should be denied.

# ARGUMENT

## I. MGA'S QUESTIONS TO MOORE DID NOT INVADE THE ATTORNEY CLIENT PRIVILEGE OR DISCLOSE ATTORNEY WORK PRODUCT DOCTRINE.

Mattel's blanket objection to more than fifty pages of trial testimony by Moore is both unsupported and improper. Mot. at 2. Mattel has not identified which questions it alleges breached privilege, much less proved that any alleged privilege actually exists as to Moore's answers. This alone is fatal to Mattel's claim. Absent evidence that particular questions invaded a privilege that Mattel has proven exists, the objection fails. *U.S. v. Hirsch*, 803 F.2d 493, 496 (9th Cir. 1986) ("The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies"); *U.S. v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002) (blanket assertions of privilege are "extremely disfavored").

Mattel's knowledge and endorsement of the Market Intelligence Department's activities bear on MGA's trade secret claims. Mr. Moore not only played a lead role responding to the mental breakdown and resignation of its chief spy, Sal Villasenor, but also was intimately involved with Mattel's subsequent cover-up of the Market Intelligence Department's activities. Moore was questioned about his knowledge of these events, including particularly his knowledge of a

(formerly improperly redacted) email from Villasenor to Mattel. None of this revealed privileged communications or work product. Mattel's untimely objection that it did is belied not only by Mattel's failure to identify even one particular instance where privilege was invaded, but by the fact that Mattel did not raise a contemporaneous privilege or work product objection until very nearly the end of—forty pages into—the examination it now complains of. *See* 3/29/2011 Tr. (Vol. 2) 148. Even then, the record reflects that Mattel's objection was baseless.

Mr. Moore also was asked whether he took notes when he met with the Mattel designers because he was unable to recall precisely when the meetings took place. But the fact that Mr. Moore met with an employee on a particular date is not privileged. *In re Application for Subpoena to Kroll*, 224 F.R.D. 326, 328-329 (E.D.N.Y. 2004) ("the substance of the meeting may be privileged, but the fact of the meeting itself is not"). And that was the extent of MGA's inquiry into the notes. MGA did not ask Mr. Moore to disclose the contents of the notes. Nor did Mr. Moore, an attorney well aware of his obligations to preserve the attorney-client privilege and presumably cognizant of the protection afforded by the work product doctrine, volunteer them.

Finally, even if any of the questions in the dozens of pages Mattel waves in front of the Court had strayed into protected territory—which the record reflects they did not—Mattel has not even attempted to explain why the drastic remedy of a mistrial is required. Simply put, there is no basis on which this Court can grant a mistrial and has Mattel has not attempted to provide one.

## II. MGA DID NO MORE THAN MATTEL—AND VIOLATED NO ORDER—BY QUESTIONING WITNESSES ABOUT THE PRODUCTION DATES OF PARTICULAR DOCUMENTS.

Before this trial began the Court limited the scope of evidence of discovery conduct that would be admitted at trial. But it did not preclude all such evidence as a rule. MGA's limited questioning of Normile and Moore about the late production of documents regarding Villasenor violated no order of the Court. Moreover, MGA

1  did no more than Mattel, which asked MGA witnesses about production dates. For
2  example, Mattel grilled Isaac Larian at length about the date the production date of
3  the "O'Connor email" chain:
4      Q. This isn't the complete e-mail chain, is it?
5      A. No. I have seen another e-mail on this that continues.
6      Q. The e-mail chain that continues wasn't produced until
7  2009, correct?
8      A. I don't know when it was produced.
9         MS. KELLER: Objection. Irrelevant.
10        THE COURT: Overruled.
11 …
12     Q. This wasn't produced until after that first trial,
13 correct?
14        MS. KELLER: Objection. Assumes facts not in
15 evidence.
16        THE COURT: Overruled.
17 THE WITNESS: All of our documents, including this
18 one, were produced to our lawyers. If they produced it to
19 Mattel -- when, not -- I don't know.
20 BY MR. PRICE:
21     Q. You know that this document wasn't produced to Mattel
22 until after that first trial.
23 …
24     Q. And it's correct that, as of December 11, 2009, uh, you
25 didn't have any understanding as to why it was not produced,
26 other than what your attorneys told you. Just a yes or no
27 response.
28     A. I'm sorry. Repeat the question.

1     Q. Focusing on, as of December 11, 2009 --

2     A. Yes.

3     Q. -- is it true that you didn't have any understanding as

4     to why this document was not produced, other than what your

5     attorneys told you? That's a "yes" or "no" question.

6 2/9/2011 Tr. (Vol. 1) 102:25-103:6, 105:20-106:7. Mattel similarly interrogated

7 Mr. Larian about when particular communications between MGA and its attorney,

8 David Rosenbaum, were produced:

9     THE COURT: Counsel, concerning the date that this

10     came to the parties, upon further reflection, you can use

11     the word "2010."

12     BY MR. PRICE:

13     Q Mr. Larian, is it correct that this e-mail was not

14     produced in this litigation until 2010?

15     A I don't know.

16     Q Is it your understanding that this e-mail was not

17     produced until after the trial that we've referred to in

18     2008?

19 2/8/2011 Tr. (Vol. 2) 118:20-119:4.

20     Mattel should not be heard to complain when MGA is accorded the same

21 privilege. Mattel's whining about MGA being accorded the same opportunity to

22 question witnesses is hardly grounds for a mistrial and is frankly offensive.

23 Moreover, as with its complaint about Moore's testimony, Mattel has entirely failed

24 to demonstrate why this testimony, even assuming it is improper, is grounds for a

25 mistrial.

26 ///

27 ///

28

### III. THE COURT'S ORDER ON MOTIONS IN LIMINE ALLOWS MGA TO ASK THE QUESTIONS MATTEL COMPLAINS OF.

There is no reason for the Court to reopen argument about evidence of spoliation at this late date. First, it bears noting MGA never asked, and Moore never stated, that any documents were spoliated. Although the parties may otherwise be aware that Mattel improperly suppressed or destroyed evidence, the jury does not have the same context to color Moore's testimony. In front of the jury, Mr. Moore testified only that Mattel had the ability to log calls, that he instructed individuals to collect those logs, but that he never received them because "we couldn't figure out whether they actually existed or they were misplaced." 3/29/2011 Tr. (Vol. 2) at 162:22-23. The only mention of "spoliation" was raised by Mattel's own ill-advised objection. *Id.* 162:5-6. Mattel's morning-after regret is not cause to penalize MGA or to reconsider its prior rulings on spoliation.

This Court has spent hours determining what is appropriate evidence of spoliation. Mattel's motion ignores this. It contemplates either that MGA violated an order or that the Court should throw out all of its orders regarding evidence of spoliation and throw open the door to any and all such testimony. Neither course is correct.

First, the Court specifically allowed MGA inquire into "evidence concerning Mattel's other acts of suppression [which] may be relevant to MGA's allegation that Mattel fraudulently concealed the market intelligence group's conduct, thereby tolling the statute of limitations." Dkt. No. 9669 at 21. So even to the extent that a reasonable jury might be able to infer spoliation from the fact that Moore never received the critical phone logs, the questions asked of Moore are squarely within the ambit MGA was permitted.

Second, there is no reason for the Court to revisit its orders on spoliation. The Court has long been familiar with the discovery disputes and allegations of spoliation made by both sides in this case. *See, e.g.,* Dkt. Nos. 7467, 7532, 7545,

7851, 7860. The discovery masters appointed by the Court have considered dozens more motions, oppositions, and declarations regarding alleged spoliation considered by. The parties briefed the Court on alleged instances of spoliation before trial began in light of this exhaustive history. Dkt. Nos. 9458, 9474, 9491. And, the Court has considered additional evidence and argument regarding alleged spoliation and other suppression of evidence as it arose during the course of trial. *See, e.g.,* 2/9/2011 Tr. (Vol. 3) at 96-113; Dkt. Nos. 9971, 9998, 10020, 10040, 10083. Throughout, the Court has consistently issued rulings based on the relevance of particular evidence supporting each individual allegation of spoliation. *See, e.g.,* Dkt. No. 9669; 9778. Mattel offers no rationale for the Court to reconsider this long history or its orders in the last days of trial.

## CONCLUSION

For the reasons stated above, Mattel's motion for mistrial should be denied.

Dated: March 31, 2011         Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Warrington S. Parker III*
Warrington S. Parker III
Attorneys for MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT HK, LTD., MGA de MEXICO, S.R.L. de C.V., and ISAAC LARIAN