QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar. No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de C.V.,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL'S TRIAL BRIEF IN RESPONSE TO THE COURT'S APRIL 1, 2011 ORDER REGARDING THE ADMISSIBILITY OF THE DATE OF PRODUCTION OF KOHL'S DOCUMENTS**<br><br>Hearing Date: TBD<br>Time: TBD<br>Place: Courtroom 9D |

**Preliminary Statement**

Mattel submits this response to the Court's April 1, 2011 Order Re Date of Production of Mattel E-mails Concerning Negotiations with Kohl's ("Order"). Because the recently produced Kohl's negotiation documents were not responsive to any prior request for production, including MGA Request Nos. 62 or 64 which the prior Discovery Master compelled, Mattel respectfully requests that the Court change its Order and preclude MGA from inquiring before the jury about the date of production of those documents.

In the alternative, if the Court does permit the admissibility of the date of production, then it should instruct the jury that such production was in response to a recent Court Order and was timely.

**Statement of Facts**

In 2004, Kohl's lost money on Bratz dolls. As Mattel and the Court now know, the "bratz business" was a "huge disaster" for Kohl's[1] and caused it a $2 million profit shortfall.[2] MGA's response to Kohl's requests to address this loss was unavailing. Indeed, in response to Kohl's growing losses, Larian declared "fuck'm."[3]

At the same time, Kohl's made money on BARBIE products. Kohl's offered additional shelf space to Mattel for BARBIE products if Mattel made up for some of Kohl's Bratz losses. That this was Kohl's idea is confirmed by one of the recently produced documents, an e-mail dated December 16, 2004 from Tom Maskel, a buyer for Kohl's, to Julie Scholvin of Mattel:

> Julie, I would like to explore a potential huge opportunity with you. As you are well aware I have zero love for Bratz. In my humble opinion,

---

[1] TX 24341 ("Tom, with each passing week, the bratz business continues to be huge disaster. the sales decrease to plan is a disgrace, and the margins an even bigger disgrace,").
[2] Id.
[3] TX 24358.

> this is a fad that is done!...What would Mattel think about me throwing out Bratz and replacing the space with our friend Barbie. Her [sic] is the kicker, if I throw them out I will need some help with markdowns on old Bratz (we can talk $$ later)....[4]

Mattel subsequently helped Kohl's with Bratz markdowns in exchange for its promise to buy to total of $20 million in Barbie products over two years.

On October 12, 2010, Mattel had produced to MGA a January 27, 2005 e-mail from Milt Zablow to others within Mattel. As set forth in that e-mail, Mattel reached an agreement with Kohl's on January 27, 2005. That day Mr. Zablow, a Mattel salesman, wrote to his co-workers:

> Kohl's has agreed to the following:
>
> -DOUBLE Barbie's Retail Space to 8 ft. for a minimum of 2 years.
>
> -The Competitor will not be represented in their toy dept. for 2 years
>
> -Internal Barbie tower v. '04
>
> -Minimum $9.5mm Barbie '05 shipping – 36% increase v. '04
>
> -Minimum $10.5mm Barbie '06 shipping – 10.5% increase v. '05
>
> Plus
>
> -Incremental presence for Lil Mommy-Segment will not be positioned on the back wall!!!![5]

This Zablow e-mail is as close as any document gets to supporting MGA's theory. While Zablow, the salesperson, crowed that the "competitor will not be represented . . . ," the contract, TX 24004, is in evidence, and it contains no such exclusionary terms. In fact, MGA was *not* excluded. Consumers and Mattel representatives continued to see MGA brands, including Bratz products and Little Tikes products, in Kohl's stores during 2005 and 2006. Kohl's purchased and sold

---

[4] TX 24828; also TX 24863 (Kohl's requests that Mattel "cover '04 margin shortfall" of $1,274,000 due to slumping Bratz sales.)
[5] TX 26612.

MGA-branded products in 2005 and 2006, including Bratz products,[6] although MGA has yet to produce documents identifying its Bratz sales at Kohl's. MGA should be ordered to produce immediately complete information on sales to Kohl's and Kohl's sales of all MGA products.

Mattel did not produce the January 27, 2005 e-mail in response to any MGA request for production. It was produced in October of 2010 with hundreds of thousands of other documents that Mattel was reviewing and producing. Although non-responsive, it was not privileged.

MGA first suggested that Mattel and Kohl's had engaged in unfair competition in a witness description on October 4, 2010, the final day of discovery. In supplemental initial disclosures, MGA wrote that "Ms. Scholvin may possess knowledge of facts relevant to MGA's allegation that Mattel engaged in unfair business practices, and Mattel's unclean hands."[7] Ms. Scholvin is a Mattel employee whose sole responsibility is Kohl's.

There is nothing in the latest Kohl's production that provides further support for MGA's case. To the contrary, the newly produced Maskel to Scholvin e-mail, quoted above, shows that *Kohl's* had elected not to continue with Bratz, and then *Kohl's* approached Mattel about expanding their relationship.

## Argument

### I. THAT MATTEL PRODUCED TRIAL EXHIBIT 26612 DOES NOT MAKE IT RESPONSIVE TO ANY REQUEST OR RELEVANT

On October 12, 2010, Mattel produced TX 26612, the Zablow email. The Court suggested that Mattel's production of the e-mail proved it was responsive. The predicate is incorrect. Mattel and MGA collected and reviewed and produced millions of pages of documents. Non-responsive documents, like TX 26612, were

---

[6] TX 24747-08; TX 24719-01.
[7] MGA's Second Supplemental Initial Disclosures Under Rule 26(a)(1), dated October 4, 2010, at 50.

produced. Absent good cause, however, non-responsive documents are not generally subject to claw-back requests. See United States v. 753.95 Acres of Land, More or Less, in Washoe County, Nevada, 2009 WL 2045706, at *2-3 (D. Nev. July 10, 2009) (ordering production of documents and noting that the court agreed that "documents subject to relevancy objections should not be given the 'claw back' protections afforded to those subject to the attorney-client privilege or the work product doctrine"); In re Pabst Licensing GmbH Patent Litigation, 2001 WL 797315 at *32 (E.D. La., July 12, 2001) ("No privilege applies to this document, and the motion to compel its return is denied."). Mattel did not seek the return of TX 26612.

## II. NO COURT ORDER REQUIRED THE PRODUCTION OF THE KOHL'S E-MAILS

### A. THE NEW KOHL'S E-MAILS ARE NOT RESPONSIVE TO REQUEST NO. 62

The Court found the Kohl's e-mails responsive to MGA's Request No. 62. Request No. 62 seeks documents "REFERRING OR RELATING TO any interference with or inhibition of the sales or potential sales of MGA's products or REFERRING OR RELATING TO any limitations or restrictions on any retailer's ability to sell 'Bratz' or other MGA products world wide." Discovery Master Infante held that the request was "narrowly tailored to require production of only those documents and communications that refer or relate to *interference or inhibition* of the licensing or potential licensing of MGA's products, that refer or relate to *any limitations or restrictions* on any MGA licensee, and that refer or relate to any third party's licensing or potential licensing of MGA products." Order dated 5/22/07, at 20 (emphasis added). This "narrowly tailored" request does not sweep up the Kohl's e-mails. Kohl's was not a licensee or potential licensee of either Mattel or MGA. Thus, the newly-produced Kohl's/Mattel negotiation e-mails are not responsive to Request No. 62.

### B. THE NEW KOHL'S E-MAILS ARE NOT RESPONSIVE TO REQUEST NO. 64

The Court also found that the newly-produced Kohl's e-mails are responsive to MGA's Request No. 64. Request No. 64 seeks "All DOCUMENTS, including but not limited to COMMUNICATIONS, REFERRING OR RELATING TO any third party's agreement or decision not to license, manufacture, promote, distribute, or sell any MGA products, or supply materials or services to MGA world wide." The Kohl's e-mails are not responsive to this request.

Mattel did not then and does not now have evidence that Kohl's had agreed or decided not to "promote, distribute or sell any MGA products." The newly produced documents show the negotiations leading to a deal in which Kohl's would earn $1.25 million from Mattel, if Kohl's (a) provided eight feet of shelf space for Barbie, (b) purchased $9.5 million and $10.5 million worth of BARBIE products in 2005 and 2006 respectively, (c) provided an additional wing-wall or tower for BARBIE products in 2005 and 2006, and (d) introduced Mattel's "Little Mommy" dolls. TX 24404-01. Mattel's agreement with Kohl's is not an agreement or decision by Kohl's not to "license, manufacture, promote, distribute or sell" MGA products. The negotiations leading up to that agreement focused on the listed terms: making up for Bratz markdowns, when the $1.25 million would be paid, and Kohl's guaranteed purchase amounts.[8] The newly produced documents about the negotiations reflect no decision by Kohl's not to "promote, distribute or sell" Bratz. Nor can MGA credibly argue that they do because its own documents show MGA products being sold by Kohl's in both 2005 and in 2006, the years in which MGA was allegedly excluded.[9] Thus, the newly-produced Kohl's e-mails are not responsive to Request No. 62.

---

[8] M2033644; M2033675-77
[9] TX 24747-08; TX 24719-01

## III. THE DATE OF PRODUCTION IS IRRELEVANT AND SHOULD BE EXCLUDED

The date of production of these documents should be excluded because it is irrelevant to these proceedings and will cause unfair prejudice and confusion. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Here, the date of production of these documents has no bearing on whether Mattel interfered with MGA's relationship with retailers or any other fact of consequence in this action. In addition, this information is highly prejudicial, as MGA will argue and the jury will likely conclude that Mattel wrongfully withheld evidence. It did not.

The date of production of the newly produced Kohl's e-mails is independently irrelevant. MGA claims that Mattel's alleged agreement with Kohl's to exclude MGA's Bratz dolls for 2005 and 2006 is part of MGA's unfair competition claim. The Court recently ruled the Court, not the jury, would rule on that claim. Introducing collateral evidence of the timing of production of documents related a claim that the jury will not consider would be confusing and prejudicial. Fed. R. Evid. 403.

## IV. PERMITTING INQUIRY INTO THE DATE OF PRODUCTION HAS NO BEARING ON MR. LARIAN'S CREDIBILITY

The Court ruled that Mattel attacked Mr. Larian's credibility by calling into question his belief that Mattel paid Kohl's to terminate the contract with MGA. Because Mr. Larian was unable to substantiate his belief, the Court reasoned, Mr. Larian's credibility was called into question.

The newly produced documents provide no additional support for MGA's claim that Mattel induced Kohl's to exclude MGA. In fact, the newly produced documents show that Mattel is innocent of MGA's accusation. They prove that Kohl's wanted to end its relationship with MGA because it was losing money on

Bratz. They confirm that Kohl's approached Mattel about a deal. They also show that, contrary to Larian's testimony, Mattel's agreement with Kohl's for 2005 and 2006 was not exclusionary. Permitting inquiry into the date of the production of these documents does not rehabilitate Mr. Larian's prior testimony.

For these reasons, nothing in the new Kohl's production supports MGA's claim. However, if MGA wishes to contend otherwise and the evidence of the timing of the production is found relevant, then the jury should be instructed that there is no issue with the timing of Mattel's production.

## Conclusion

Mattel respectfully requests that the Court change its April 1, 2011 Order and not permit inquiry into the date or timing of the production of the Kohl's e-mails. Alternatively, if the Court permits inquiry into the timing of the production of the e-mails, then Mattel requests that the Court instruct the jury that the Kohl's e-mails were produced in response to a Court order and were timely.

DATED: April 3, 2011

QUINN EMANUEL URQUHART & SULLIVAN. LLP

By  */s/ John B. Quinn*
John B. Quinn
Attorneys for Mattel, Inc., and
Mattel de Mexico. S.A. de C.V.