# EXHIBIT D
# Part 1 of 2

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 90378)
2     (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
6   Facsimile:  (213) 443-3100

7   Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

11             Plaintiff,                Consolidated With Case No. 04-9059 and
                                         Case No. 05-2727
12        v.
                                         MATTEL, INC.'S THIRD AMENDED
13                                       ANSWER IN CASE NO. 05-2727 AND
    MATTEL, INC., a Delaware             COUNTERCLAIMS FOR:
14  corporation,
                                         1.   COPYRIGHT INFRINGEMENT;
15             Defendant.                2.   VIOLATION OF THE
                                              RACKETEER INFLUENCED AND
16                                            CORRUPT ORGANIZATIONS
                                              ACT;
17                                       3.   CONSPIRACY TO VIOLATE THE
                                              RACKETEER INFLUENCED AND
18                                            CORRUPT ORGANIZATIONS
                                              ACT;
19  AND CONSOLIDATED CASES               4.   MISAPPROPRIATION OF TRADE
                                              SECRETS;
20                                       5.   BREACH OF CONTRACT;
                                         6.   INTENTIONAL INTERFERENCE
21                                            WITH CONTRACT;
                                         7.   BREACH OF FIDUCIARY DUTY;
22                                       8.   AIDING AND ABETTING
                                              BREACH OF FIDUCIARY DUTY;
23                                       9.   BREACH OF DUTY OF
                                              LOYALTY;
24
25                                          **PUBLIC REDACTED**
26
27
28

                                         THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

10. AIDING AND ABETTING BREACH OF DUTY OF LOYALTY;
11. CONVERSION;
12. UNFAIR COMPETITION;
13. AVOIDANCE OF INTENTIONAL AND CONSTRUCTIVE FRAUDULENT TRANSFERS UNDER UNIFORM FRAUDULENT TRANSFER ACT; AND
14. DECLARATORY RELIEF.

DEMAND FOR JURY TRIAL

2875224.1

TX 24885-00002

# **THIRD AMENDED ANSWER**

Defendant Mattel, Inc. ("Mattel") answers the Complaint of MGA Entertainment, Inc. ("Complaint") as follows:

## Preliminary Statement

The Complaint in this case contravenes Rule 8(a) of the Federal Rules of Civil Procedure in multiple respects. For example, in many places, the Complaint improperly mixes factual averments with argumentative rhetoric. The Complaint also includes a selective recitation of alleged historical facts and "rumor," much of which is both irrelevant and inflammatory in tone and content. In addition, many of the allegations of the Complaint are overly broad, vague or conclusory and include terms which are undefined and which are susceptible to different meanings. Accordingly, by way of a general response, all allegations are denied unless specifically admitted, and any factual averment admitted is admitted only as to the specific facts and not as to any conclusions, characterizations, implications or speculations which are contained in the averment or in the Complaint as a whole. These comments and objections are incorporated, to the extent appropriate, into each numbered paragraph of this Third Amended Answer.

Mattel further submits that the use of the headings throughout the Complaint is improper, and therefore no response to them is required. In the event that a response is required, Mattel denies those allegations.

The Complaint also contains many purported photographs of various items, and it uses one or more headings purporting to describe, either individually or in groups, these various photographs. The images of these photographs contained in the Complaint are all relatively small and some are of less than optimal quality, making it difficult to evaluate the adequacy of the photographs or their fairness and accuracy in depicting what they purport to represent. The Complaint also does not describe the circumstances or time frame in which these photographs were taken, and in many cases does not identify, or does not sufficiently or properly identify, the

TX 24885-00003

1   item depicted in the photographs.  All of these factors, as well as the use of these

2   photographs and headings out of context, or with an insufficient context, impair the

3   ability of Mattel to fully respond to these photographs and headings, or to any

4   purported allegations involving, or relying upon, the use of such photographs and

5   accompanying headings.  By way of a general response, Mattel therefore does not

6   admit the authenticity of any photograph, or the accuracy or adequacy of any

7   heading, nor does it admit any allegation or inference that is based on, or purports to

8   be based on, any photograph or accompanying heading in the Complaint.  Mattel

9   reserves the right to challenge the authenticity of any photograph and the accuracy

10  or adequacy of any heading (either as included in the Complaint or in the context of

11  additional material not included).  Further, with reference to all photographs and

12  accompanying headings, or any averments based on the Complaint's use of such

13  photographs and headings, which might be offered into evidence, Mattel specifically

14  reserves its right to object to any use of such photographs, headings, and averments,

15  or the Complaint as a whole or in part, in evidence for any purpose whatsoever.

16          To the extent that Mattel has endeavored to answer any particular

17  allegation containing any such photographs and headings, any admission concerning

18  the item purported to be depicted in such photograph, or described in such headings,

19  shall not constitute an admission that the photograph is authentic, adequate, or

20  admissible, nor that any heading is accurate, adequate, or admissible.  All such items

21  purportedly depicted in such photographs, and described in such headings, "speak

22  for themselves."  Accordingly, to the extent that any such referenced materials are

23  deemed allegations against Mattel, they are denied.

Responses

25          1.      Answering paragraph 1 of the Complaint, Mattel admits that

26  plaintiff MGA Entertainment, Inc. ("plaintiff" or "MGA") is a California

27  corporation with a principal place of business in Van Nuys, California.

28

2875224.1

-3-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00004

1    2.    Answering paragraph 2 of the Complaint, Mattel admits that

2  Mattel is a Delaware corporation with a principal place of business in El Segundo,

3  California.

4    3.    Answering paragraph 3 of the Complaint, Mattel denies that

5  there has been wrongful conduct on its part and states that it is without knowledge

6  or information sufficient to form a belief as to the truth or falsity of the remaining

7  allegations set forth therein and, on that basis, denies them.

8    4.    Answering paragraph 4 of the Complaint, Mattel admits that

9  plaintiff purports to assert claims under the Lanham Act, 15 U.S.C. §§ 1125(a) and

10 (c), California Business and Professions Code §§ 17200 *et seq.*, California Business

11 and Professions Code § 14330 and California common law, denies that plaintiff is

12 entitled to any relief thereunder and denies the truth of the remaining allegations set

13 forth in paragraph 4.

14    5.    Answering paragraph 5 of the Complaint, Mattel admits that it is

15 subject to personal jurisdiction in this District and denies the truth of the remaining

16 allegations set forth in paragraph 5.

17    6.    Answering paragraph 6 of the Complaint, Mattel admits that

18 venue is proper in this District and denies the truth of the remaining allegations set

19 forth in paragraph 6.

20    7.    Answering paragraph 7 of the Complaint, Mattel admits that

21 MGA has filed the instant lawsuit and denies the truth of the remaining allegations

22 set forth in paragraph 7.

23    8.    Answering paragraph 8 of the Complaint, Mattel states that it is

24 without knowledge or information sufficient to form a belief as to the truth or falsity

25 of the allegations regarding MGA's history set forth therein and, on that basis,

26 denies them, states that MGA has made conflicting representations, including in

27 sworn statements, that are at odds with the allegations of the Complaint and denies

28 the truth of the remaining allegations set forth in paragraph 8.

2875224.1

-4-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

Case 2:04-cv-09049-SGL-RNB      Document 5142-2      Filed 04/08/2009      Page 6 of 102

1      9. Answering paragraph 9 of the Complaint, Mattel admits that

2    MGA filed this action, states that Mattel's web site and corporate governance

3    policies speak for themselves and denies the truth of the remaining allegations set

4    forth in paragraph 9.

5      10. Answering paragraph 10 of the Complaint, Mattel admits that it

6    is the world's most successful toy company, states that the first doll in its BARBIE

7    line was publicly introduced in 1959 and that BARBIE-branded dolls have been the

8    world's best-selling toys, states that Mattel's sales and stock price speak for

9    themselves, and denies the truth of the remaining allegations set forth in paragraph

10   10.

11     11. Answering paragraph 11 of the Complaint, Mattel admits that

12   Adrienne Fontanella is the former president for girls' toys at Mattel, states that it is

13   without knowledge or information sufficient to form a belief as to the truth or falsity

14   of the allegations regarding an alleged statement by Ms. Fontanella, and denies the

15   truth of the remaining allegations set forth in paragraph 11.

16     12. Answering paragraph 12 of the Complaint, Mattel is without

17   knowledge or information sufficient to form a belief as to the truth or falsity of the

18   allegations regarding alleged statements by unidentified "analysts," states that

19   Mattel's sales and stock price speak for themselves, and denies the truth of the

20   remaining allegations set forth in paragraph 12.

21     13. Answering paragraph 13 of the Complaint, Mattel admits that Jill

22   Barad became President and Chief Executive Officer of Mattel in January 1997, that

23   Mattel acquired Tyco Industries, Inc. ("Tyco") in March 1997, that Mattel acquired

24   Pleasant Company in 1998, Mattel acquired the Learning Company in May 1999,

25   that Mattel acquired Purple Moon in 1999, that the MATCHBOX brand was owned

26   by Tyco, that the AMERICAN GIRL line of dolls was made by Pleasant Company

27   at the time of that entity's acquisition, and denies the truth of the remaining

28   allegations set forth in paragraph 13.

1        14.    Answering paragraph 14 of the Complaint, Mattel states that its

2    public announcements speak for themselves, and denies the truth of the remaining

3    allegations set forth therein.

4        15.    Answering paragraph 15 of the Complaint, Mattel states that its

5    stock price and its public announcements speak for themselves, and denies the truth

6    of the remaining allegations set forth therein.

7        16.    Answering paragraph 16 of the Complaint, Mattel states that its

8    stock price speaks for itself, states that it is without knowledge or information

9    sufficient to form a belief as to the truth or falsity of the allegations regarding the

10   alleged views of unnamed "analysts" and "[i]nvestors," and denies the truth of the

11   remaining allegations set forth therein.

12       17.    Answering paragraph 17 of the Complaint, Mattel admits that

13   Ms. Barad resigned in February 2000.

14       18.    Answering paragraph 18 of the Complaint, Mattel admits that

15   Robert Eckert became Chairman and Chief Executive Officer of Mattel in May 2000

16   and that Mr. Eckert previously was employed at Kraft Foods, Inc. for 23 years, is

17   without knowledge or information sufficient to form a belief as to the truth or falsity

18   of the allegations regarding the views of unnamed "[i]nvestors" and others, and

19   denies the truth of the remaining allegations set forth in paragraph 18.

20       19.    Answering paragraph 19 of the Complaint, Mattel admits that the

21   *Wall Street Journal* published an article on August 10, 2000 the content of which

22   speaks for itself, and denies the truth of the remaining allegations set forth therein.

23       20.    Answering paragraph 20 of the Complaint, Mattel admits that it

24   disposed of the Learning Company in October 2000, states that its sales and

25   revenues speak for themselves, states that the remainder of the allegations contained

26   therein are characterizations, not factual assertions, and therefore no response is

27   necessary under Fed. R. Civ. P. 8(b) and, to the extent any further response is

28   required, denies the truth of any remaining allegations set forth in paragraph 20.

1          21.    Answering paragraph 21 of the Complaint, Mattel admits that

2  products in plaintiff's "Bratz" line compete with products in Mattel's BARBIE and

3  other product lines and states that the remainder of the allegation contained

4  therein—consisting of a sentence fragment—is unintelligible and on that basis

5  denies the truth of any such remaining allegation set forth therein.

6          22.    Answering paragraph 22 of the Complaint, Mattel admits that

7  products in plaintiff's "Bratz" line compete with Mattel products, states that the

8  remainder of the allegations contained therein are characterizations, not factual

9  assertions, and that therefore no response is necessary under Fed. R. Civ. P. 8(b)

10  and, to the extent any further response is required, denies the truth of any remaining

11  allegations set forth therein.

12          23.    Answering paragraph 23 of the Complaint, Mattel states that

13  MGA has made conflicting statements, including in sworn statements, that are

14  inconsistent with the allegations set forth in paragraph 23 of the Complaint and

15  states that it is therefore without knowledge or information sufficient to form a

16  belief as to the truth or falsity of the allegations set forth therein and, on that basis,

17  denies them.

18          24.    Answering paragraph 24 of the Complaint, Mattel states that the

19  "look" of the referenced dolls speak for themselves and denies the truth of the

20  remaining allegations set forth therein.  By way of further answer, Mattel states that

21  the photographs and their accompanying caption on page 7 of the Complaint are

22  false and misleading to the extent they are intended to suggest that MGA has

23  produced or used a consistent packaging shape or look or that it has protectible

24  rights in the matters depicted in the photographs.

25          25.    Answering paragraph 25 of the Complaint, Mattel admits that

26  Bratz dolls are between approximately 9.5 to 10 inches in height, states that the

27  appearances of the dolls speak for themselves, denies that "Bratz" dolls are or "were

28  intentionally shorter" than dolls in Mattel's BARBIE line, denies that the "Bratz"

2875224.1

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00008

1  dolls "looked like no other" and denies the truth of the remaining allegations set

2  forth in paragraph 25.

3       26.    Answering paragraph 26 of the Complaint, Mattel states that the

4  use of the term "classic" is unintelligible, since Mattel has designed and sold

5  different dolls using different heads and with different fashions and themes over the

6  years, and denies the truth of any remaining allegations.  By way of further answer,

7  Mattel states that the image encaptioned "Mattel's 'Barbie'" on page 8 of the

8  Complaint is misleading in that it depicts one of the doll heads that have been used

9  as part of the BARBIE line for many years, and therefore ignores that Mattel has

10  long designed and sold an array of different BARBIE line dolls that use different

11  doll heads, including doll heads which depict different ethnicities, and that are

12  dressed in different clothing and fashion styles.

13       27.    Answering paragraph 27 of the Complaint, Mattel admits that

14  MGA has used the line "The Girls With a Passion for Fashion" in some contexts,

15  denies that MGA originated or otherwise has rights to that phrase, admits that one

16  audience for products in the "Bratz" line has been "tweens" and denies the truth of

17  the remaining allegations set forth in paragraph 27.

18       28.    Answering paragraph 28 of the Complaint, Mattel admits that

19  certain "Bratz" dolls have won certain awards, the terms of which speak for

20  themselves, states that it is without knowledge or information sufficient to form a

21  belief as to the truth or falsity of the allegations regarding the "awards" MGA claims

22  and, on that basis, denies them, denies that plaintiff has protectible rights and denies

23  the truth of any remaining allegations set forth in paragraph 28.

24       29.    Answering paragraph 29 of the Complaint, Mattel admits that

25  dolls in the "Bratz" line compete with dolls in Mattel product lines, denies that

26  Mattel has or has ever had a "stranglehold" on any market, states that the market

27  allegations contained in paragraph 29 are vague and ambiguous, including without

28  limitation in that the allegations fail to specify what products among the parties'

TX 24885-00009

1 | respective lines are being referred to and what time period is being referred to, and

2 | denies the truth of any remaining allegations set forth in paragraph 29.

3 |       30.   Answering paragraph 30 of the Complaint, Mattel admits that

4 | MGA has been a licensee of Mattel, states that the market allegations are vague and

5 | ambiguous, including without limitation in that the allegations fail to specify what

6 | products are being referred to and what time periods or points in time are being

7 | referred to, and states that the remainder of the allegations contained therein are

8 | characterizations, not factual assertions, and therefore no response is necessary

9 | under Fed. R. Civ. P. 8(b) and, to the extent any further response is required, denies

10 | the truth of any remaining allegations set forth in paragraph 30.

11 |       31.   Answering paragraph 31 of the Complaint, Mattel states that the

12 | allegations contained therein are characterizations, not factual assertions, and

13 | therefore no response is necessary under Fed. R. Civ. P. 8(b) and, to the extent any

14 | further response is required, denies the truth of the allegations set forth in paragraph

15 | 31.

16 |       32.   Answering paragraph 32 of the Complaint, Mattel denies the

17 | truth of the allegations set forth therein.

18 |       33.   Answering paragraph 33 of the Complaint, Mattel denies the

19 | truth of the allegations set forth therein.

20 |       34.   Answering paragraph 34 of the Complaint, Mattel states that it

21 | has released various MY SCENE dolls, including MY SCENE dolls named

22 | "Madison", "Chelsea" and "Barbie," states that the appearance of the Bratz and MY

23 | SCENE dolls speak for themselves, denies that Mattel designed its MY SCENE

24 | dolls to "evoke" or resemble the alleged "look" of "Bratz" dolls, denies that plaintiff

25 | has protectible rights, states that MGA has made conflicting representations that are

26 | at odds with the allegations of the Complaint and that it is therefore without

27 | knowledge or information sufficient to form a belief as to the truth or falsity of the

28 | allegations regarding the "launch" of Bratz dolls set forth therein and, on that basis,

TX 24885-00010

1  denies them, and denies the truth of the remaining allegations set forth therein.  By

2  way of further answer, Mattel states that the photographs and their accompanying

3  captions on page 10 of the Complaint are misleading and false to the extent they are

4  intended to suggest that a particular Mattel doll has been changed over time as

5  purportedly depicted.  Among other things, Mattel has long designed and sold an

6  array of different BARBIE line dolls using different doll heads, and the photographs

7  encaptioned "Mattel's Traditional 'Barbie'" is one of the doll heads that has been

8  used, and continues to be used, as part of the BARBIE line.  In addition, the

9  photographs encaptioned MY SCENE doll "circa 2002" is, in fact, a Mattel doll

10  character called BARBIE that continues to be sold and/or marketed with that head,

11  and the photographs encaptioned MY SCENE doll "circa 2004" depict a MY

12  SCENE doll character separate and apart from the one depicted in the "circa 2002"

13  image (and is not a revised character as plaintiff apparently attempts to imply).

14        35.    Answering paragraph 35 of the Complaint, Mattel admits that

15  Mattel released a product line called FLAVAS, states that the appearance of the

16  FLAVAS dolls speaks for themselves, states that it is without knowledge or

17  information sufficient to form a belief as to the truth or falsity of the allegations

18  regarding the  "rumor" relied upon by plaintiff and the undefined "media"

19  purportedly quoting Isaac Larian and, on that basis, denies them, denies that Mattel

20  has abandoned the FLAVAS line, and denies the truth of the remaining allegations

21  set forth in paragraph 35.

22        36.    Answering paragraph 36 of the Complaint, Mattel denies the

23  truth of the allegations set forth therein.

24        37.    Answering paragraph 37 of the Complaint, Mattel denies the

25  truth of the allegations set forth therein.  By way of further answer, Mattel states that

26  the unnumbered photographs and their accompanying captions on pages 11 through

27  16 of the Complaint -- which apparently were included to purportedly support the

28  allegation that MY SCENE dolls "became 'Bratz,'" which allegation Mattel

TX 24885-00011

1   specifically denies -- are false and misleading.  Among other things, the heads

2   depicted are among an array of different doll heads that Mattel has used, and

3   continues to use, over the course of many years.  Moreover, the images purport to

4   compare different Mattel doll lines to show alleged changes in appearance even

5   though, in fact, each of the heads are currently sold and/or marketed to the public.

6   The "Blonde" series of photographs encaptioned "original" and "recent" MY

7   SCENE is further and specifically misleading in that it purports to compare two

8   differently named and outfitted dolls in the MY SCENE doll line, both of which

9   continue to be sold and/or marketed.

10          38.     Answering paragraph 38 of the Complaint, Mattel states that the

11   phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein,

12   denies that MGA was the originator of or the first to use the eye shape or makeup

13   depicted as purportedly constituting "the 'BRATZ' eye," denies that Mattel has

14   copied the "the 'BRATZ' eye" and denies the truth of the remaining allegations

15   contained in paragraph 38.  By way of further answer, Mattel states that the

16   unnumbered photographs and accompanying caption on page 13 of the Complaint

17   are false and misleading.  Among other things, the purported "Original Mattel 'My

18   Scene' Eye" is one of the eye and makeup designs that Mattel has used over the

19   course of many years, and Mattel continues to sell and/or market dolls using the eye

20   and makeup design depicted therein.

21          39.     Answering paragraph 39 of the Complaint, Mattel states that the

22   phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein,

23   denies that MGA was the originator of or the first to use the eye shape or makeup

24   purportedly described as constituting "the 'BRATZ' eye," denies that Mattel has

25   copied "the 'BRATZ' eye," states that the relevant dolls speak for themselves and

26   denies the truth of the remaining allegations contained in paragraph 39.  By way of

27   further answer, Mattel states that the unnumbered photographs and accompanying

28   captions on page 14 of the Complaint are false and misleading.  Among other things,

TX 24885-00012

1    the purported "New Mattel 'My Scene' Eye" is one of the eye and makeup designs

2    that Mattel has used over the course of many years, and Mattel continues to sell

3    and/or market dolls using the eye and makeup design depicted on page 14 of the

4    Complaint.

5              40.    Answering paragraph 40 of the Complaint, Mattel denies the

6    truth of the allegations therein.  By way of further answer, Mattel states that the

7    unnumbered photographs and their accompanying captions on pages 15 to 16 are

8    false and misleading.  Among other things, the heads depicted are among an array of

9    different doll heads that Mattel has used, and continues to use, over the course of

10   many years.  Moreover, the photographs purport to compare different Mattel doll

11   lines to show alleged changes in appearance even though, in fact, each of the heads

12   are currently sold and/or marketed to the public.  The "Blonde" series of

13   photographs encaptioned "original" and "recent" MY SCENE is further and

14   specifically misleading in that it purports to compare two differently named and

15   outfitted dolls in the MY SCENE doll line, both of which continue to be sold and/or

16   marketed.

17             41.    Answering paragraph 41 of the Complaint, Mattel denies the

18   truth of the allegations set forth therein.

19             42.    Answering paragraph 42 of the Complaint, Mattel admits that the

20   photographs purport to depict two packages that were, among others, part of the MY

21   SCENE line, state that the packages speak for themselves and denies the truth of any

22   remaining allegations set forth therein.

23             43.    Answering paragraph 43 of the Complaint, Mattel admits that the

24   photograph purports to depict one of the packages that were, among others, part of

25   the MY SCENE line, states that the parties' packages speak for themselves, states

26   that MGA has failed to establish that it originated, or has protectible rights in, an

27   "open and transparent style" for packaging and denies the truth of the remaining

28   allegations set forth therein.

2875224.1

-12-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

44.     Answering paragraph 44 of the Complaint, Mattel admits that one photograph purports to depict one of the packages that were, among others, part of the MY SCENE line, admits that the other photograph purports to depict one of the packages that were, among others, used as part of the Bratz line, states that the parties' packages speak for themselves, denies that MGA originated, or has protectible rights in, "the 'BRATZ' packaging" or in the packaging depicted in the Complaint and denies the truth of any remaining allegations set forth therein.

45.     Answering paragraph 45 of the Complaint, Mattel admits that one photograph purports to depict one of the packages that were, among others, part of the MY SCENE line, admits that the other photograph purports to depict one of the packages that were, among others, used as part of the Bratz line, states that the parties' packages speak for themselves, denies that MGA originated, or has protectible rights in, the packaging depicted in the Complaint and denies the truth of any remaining allegations set forth therein.

46.     Answering paragraph 46 of the Complaint, Mattel states that it has utilized a wide variety of packaging styles and shapes over the years, states that the relevant packaging speaks for itself, states that MGA lacks protectible rights in "non-rectangular shaped box" packaging or in the other elements MGA claims in paragraph 46, and denies the truth of the remaining allegations set forth therein.

47.     Answering paragraph 47 of the Complaint, Mattel denies that any alleged "theme" is "MGA's theme," denies that MGA originated or has rights to any theme and denies the truth of the remaining allegations set forth therein.

48.     Answering paragraph 48 of the Complaint, Mattel admits that it released a doll called "Chillin Out!", states that it has released such themed dolls over the course of many years, admits MGA released a "Wintertime Wonderland" themed doll, denies that MGA originated or has rights to such theme, states that the relevant products speak for themselves and denies the truth of the remaining allegations set forth therein.

Case 2:04-cv-09049-DOC-RNB   Document 10367-4   Filed 04/03/11   Page 16 of 52   Page ID
#:314659
Case 2:04-cv-09049-SGL-RNB     Document 5142-2      Filed 04/08/2009     Page 15 of 102

1   49.   Answering paragraph 49 of the Complaint, Mattel admits that it

2   released a doll called "Night on the Town", states that it has released such themed

3   dolls over the course of many years, admits MGA released a "Formal Funk" themed

4   doll, denies that MGA originated or has rights to such theme, states that the relevant

5   products speak for themselves and denies the truth of the remaining allegations set

6   forth therein.

7   50.   Answering paragraph 50 of the Complaint, Mattel admits that it

8   released a doll called "Jammin' in Jamaica" and a playset called "Guava Gulch Tiki

9   Lounge", states that it has released such themed dolls and products over the course

10   of many years, admits that MGA released a "Sun-Kissed Summer" themed doll and

11   playset, denies that MGA originated or has rights to such theme, states that the

12   relevant products speak for themselves and denies the truth of the remaining

13   allegations set forth therein.

14   51.   Answering paragraph 51 of the Complaint, Mattel admits that it

15   has aired television commercials for its MY SCENE line, states that such

16   commercials speak for themselves, denies the truth of the remaining allegations set

17   forth therein and specifically denies that MGA was the originator of or has rights to

18   commercials "combining live action with animated sequences" set to "pop music

19   and lyrics".

20   52.   Answering paragraph 52 of the Complaint, Mattel denies the

21   truth of the allegations set forth therein.

22   53.   Answering paragraph 53 of the Complaint, Mattel admits that it

23   released a MY SCENE "Sound Lounge", admits that MGA released a product called

24   "Runway Disco", states that the relevant products speak for themselves, denies that

25   it "imitated MGA's trapezoidal box," denies that MGA has rights thereto, and

26   denies the truth of the remaining allegations set forth therein.

27   54.   Answering paragraph 54 of the Complaint, Mattel denies the

28   truth of the allegations set forth therein.

TX 24885-00015

1        55.   Answering paragraph 55 of the Complaint, Mattel admits that,

2    among the styling heads it has produced and sold over the course of many years, it

3    released a MY SCENE styling head, admits that MGA released a styling head called

4    "Funky Fashion Makeover Head", states that the relevant products speak for

5    themselves, denies that MGA has protectible rights and denies the truth of the

6    remaining allegations set forth in paragraph 55.

7        56.   Answering paragraph 56 of the Complaint, Mattel is without

8    knowledge or information sufficient to form a belief as to the truth or falsity of the

9    allegations set forth therein because plaintiff fails to identify the alleged instances of

10   confusion, including the source of the unidentified picture titled "Hairstyle practice",

11   and on that basis, denies them, and denies the truth of any remaining allegations set

12   forth in paragraph 56.

13       57.   Answering paragraph 57 of the Complaint, Mattel admits that it

14   has aired television commercials for its MY SCENE line, states that such

15   commercials speak for themselves and denies the truth of the remaining allegations

16   set forth therein.

17       58.   Answering paragraph 58 of the Complaint, Mattel admits that

18   MGA has used the line "The Girls With a Passion for Fashion" in some contexts,

19   denies that MGA originated that phrase or otherwise has rights to it, states that

20   Mattel's web site speaks for itself and denies the truth of the remaining allegations

21   set forth therein.

22       59.   Answering paragraph 59 of the Complaint, Mattel admits that,

23   among the plush products that it has produced and sold over the course of many

24   years, it has released plush dogs as part of its MY SCENE "Miami Getaway"

25   themed product line, states that Mattel has for many years sold plush pets of the type

26   used with its MY SCENE dog, admits that MGA has released various Bratz pets,

27   states that MGA was not the originator of and has no rights to the features and other

28

2875224.1

-15-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00016

1   elements described therein, states that the relevant products speak for themselves

2   and denies the truth of the remaining allegations set forth therein.

3          60.   Answering paragraph 60 of the Complaint, Mattel admits that,

4   among the plush toys that it has released over the course of many years, its MY

5   SCENE dog has been sold in packaging depicted (in part) on page 22 of the

6   Complaint, states that Mattel has for many years sold plush pets and other plush

7   products in packaging of the type used with its MY SCENE dog, admits that MGA

8   has released a "Bratz" dog, states that MGA was not the originator of and has no

9   rights to the packaging described therein, states that the relevant packages speak for

10  themselves and denies the truth of the remaining allegations set forth therein.

11         61.   Answering paragraph 61 of the Complaint, Mattel denies that it

12  has intended to cause any consumer confusion and states that it is without

13  knowledge or information sufficient to form a belief as to the truth or falsity of the

14  allegations set forth therein concerning unnamed retailers, customers and others

15  because plaintiff fails to identify any source for the matters alleged and, on that

16  basis, denies them and denies the truth of any remaining allegations set forth therein.

17         62.   Answering paragraph 62 of the Complaint, Mattel denies that it

18  has intended to cause any confusion and states that it is without knowledge or

19  information sufficient to form a belief as to the truth or falsity of the allegations set

20  forth therein concerning alleged comments and conversations because plaintiff fails

21  to identify any source for the alleged comments and conversations and, on that

22  basis, denies them, and denies the truth of any remaining allegations set forth

23  therein.

24         63.   Answering paragraph 63 of the Complaint, Mattel denies that it

25  has intended to cause any confusion and states that it is without knowledge or

26  information sufficient to form a belief as to the truth or falsity of the allegations set

27  forth therein because plaintiff fails to identify any source for the alleged comments

28

TX 24885-00017

1  and conversations and, on that basis, denies them, and denies the truth of any

2  remaining allegations set forth therein.

3       64.    Answering paragraph 64 of the Complaint, Mattel denies that it

4  has intended to cause any confusion and states that it is without knowledge or

5  information sufficient to form a belief as to the truth or falsity of the allegations set

6  forth therein because plaintiff fails to identify any source for the alleged comments

7  and conversations and, on that basis, denies them, and denies the truth of any

8  remaining allegations set forth therein.

9       65.    Answering paragraph 65 of the Complaint, Mattel denies the

10  truth of the allegations set forth therein.

11       66.    Answering paragraph 66 of the Complaint, Mattel admits that it

12  sued a competitor in the German courts for unfair competition for copying various

13  Mattel BARBIE line products, states that such claims exclusively arose under and

14  were the subject of German law, states that since that time the Federal Supreme

15  Court has rejected the contention made by MGA in paragraph 66 that

16  "systematically copying and borrowing elements" from competing dolls supports a

17  claim for unfair competition, and denies the truth of the remaining allegations set

18  forth therein.

19       67.    Answering paragraph 67 of the Complaint, Mattel denies the

20  truth of the allegations set forth therein.

21       68.    Answering paragraph 68 of the Complaint, Mattel admits that it

22  has released dolls called "Wee 3 Friends," admits that MGA has released dolls

23  called "4-Ever Best Friends," states that the relevant products speak for themselves,

24  denies that MGA's packaging is distinctive, denies that MGA has protectible rights

25  thereto and denies the truth of the remaining allegations set forth in paragraph 68.

26       69.    Answering paragraph 69 of the Complaint, Mattel admits that its

27  Fisher Price division has released, among other dolls called "Little Mommy," the

28  "Little Mommy Potty Training Baby Doll," admits that MGA has released a

TX 24885-00018

1  "Mommy's Little Patient" doll and denies the truth of the remaining allegations set

2  forth therein.

3         70.    Answering paragraph 70 of the Complaint, Mattel admits that it

4  has released die-cast cars and other products called "Acceleracers" as part of its

5  HOT WHEELS line, admits that MGA has released products called "AlienRacers,"

6  denies that MGA was the originator of or has rights to the elements and matters

7  described in paragraph 70, states that the relevant products speak for themselves and

8  denies the truth of the remaining allegations set forth therein.

9         71.    Answering paragraph 71 of the Complaint, Mattel admits that it

10  has aired commercials relating to "Acceleracers," states that such commercials

11  speak for themselves, denies the truth of the remaining allegations set forth therein

12  and specifically denies that MGA originated or has rights to commercials and other

13  matters described therein.

14         72.    Answering paragraph 72 of the Complaint, Mattel states that its

15  web site speaks for itself, denies the truth of the remaining allegations contained in

16  paragraph 72 and specifically denies that Mattel intended to create confusion in the

17  marketplace.

18         73.    Answering paragraph 73 of the Complaint, Mattel denies the

19  truth of the allegations set forth therein.

20         74.    Answering paragraph 74 of the Complaint, Mattel denies the

21  truth of the allegations set forth therein.

22         75.    Answering paragraph 75 of the Complaint, Mattel admits that it

23  has reminded certain former employees who became employed by MGA by letter of

24  their contractual and fiduciary obligation to maintain the secrecy of all Mattel

25  confidential and proprietary business information, states that such letters were

26  prepared and sent to their recipients in good faith contemplation of litigation, admits

27  that it filed a complaint for declaratory relief against Ronald Brawer in Los Angeles

28  Superior Court, entitled Mattel, Inc. v. Brawer, Case No. BC323381, on October 21,

-18-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00019

1   2004, states that pursuant to the Court's Order of August 25, 2005 it need not

2   respond to the allegations in paragraph 75 relating to that action, and denies the truth

3   of the remaining allegations set forth in paragraph 75.

4      76. Answering paragraph 76 of the Complaint, Mattel states that

5   MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

6   including such acts that are lawful in foreign nations, and denies the truth of

7   allegations set forth therein.

8      77. Answering paragraph 77 of the Complaint, Mattel states that

9   MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

10   including such acts that are lawful in foreign nations, and denies the truth of the

11   allegations set forth therein.

12      78. Answering paragraph 78 of the Complaint, Mattel states that it is

13   without knowledge or information sufficient to form a belief as to the truth or falsity

14   of the allegations regarding MGA's claimed "shortage of doll hair" and, on that

15   basis, denies them and denies the truth of the remaining allegations set forth therein.

16      79. Answering paragraph 79 of the Complaint, Mattel states that

17   MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

18   including such acts that are lawful in foreign nations, and denies the truth of

19   allegations set forth therein.

20      80. Answering paragraph 80 of the Complaint, Mattel denies the

21   truth of the allegations set forth therein.

22      81. Answering paragraph 81 of the Complaint, Mattel admits that

23   NPD Funworld ("NPD") supplies sales statistics in *inter alia* the toy, PC games and

24   video games industries, admits that to Mattel's knowledge NPD restricts the use of

25   its subscriber information, states that MGA was sued by NPD and states that it is

26   without knowledge or information sufficient to form a belief as to the truth or falsity

27   of the allegations regarding the need of unspecified "toy companies" for NPD

28

1  statistics and, on that basis, denies them and denies the truth of any remaining
2  allegations set forth therein.
3      82.  Answering paragraph 82 of the Complaint, Mattel denies the
4  truth of the allegations set forth therein.
5      83.  Answering paragraph 83 of the Complaint, Mattel states that it is
6  without knowledge or information sufficient to form a belief as to the truth or falsity
7  of the allegations set forth therein because MGA fails to quantify its annual
8  subscription fees and, on that basis, denies them.
9      84.  Answering paragraph 84 of the Complaint, Mattel states that it is
10  without knowledge or information sufficient to form a belief as to the truth or falsity
11  of the allegations set forth therein and, on that basis, denies them.
12      85.  Answering paragraph 85 of the Complaint, Mattel states that
13  MGA was sued by NPD, states that it is without knowledge or information sufficient
14  to form a belief as to such nature and grounds for such litigation (to which Mattel
15  was not a party) and, on that basis, denies the allegations relating thereto, and denies
16  the truth of the remaining allegations set forth therein.
17      86.  Answering paragraph 86 of the Complaint, Mattel denies the
18  truth of the allegations set forth therein.
19      87.  Answering paragraph 87 of the Complaint, Mattel admits that the
20  Children's Advertising Review Unit ("CARU") is the children's arm of the
21  advertising industry's self-regulation program, states that compliance with CARU's
22  Privacy Program can provide FTC-approved Safe Harbor under the Children's
23  Online Privacy Protection Act ("COPPA"), and denies the truth of the remaining
24  allegations set forth therein.
25      88.  Answering paragraph 88 of the Complaint, Mattel admits that it
26  is one of dozens of CARU Supporters and denies the truth of the remaining
27  allegations set forth therein.
28

2875224.1

-20-
THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00021

1        89.    Answering paragraph 89 of the Complaint, Mattel denies the
2    truth of the allegations set forth therein.

3        90.    Answering paragraph 90 of the Complaint, Mattel states that it is
4    without knowledge or information sufficient to form a belief as to the truth or falsity
5    of the allegations as to the consequences to MGA of MGA's violations of CARU
6    standards and, on that basis, denies them.

7        91.    Answering paragraph 91 of the Complaint, Mattel states that it is
8    without knowledge or information sufficient to form a belief as to the truth or falsity
9    of the allegations as to the consequences to MGA of MGA violation of CARU
10   standards and, on that basis, denies them.

11       92.    Answering paragraph 92 of the Complaint, Mattel admits that the
12   Toy Industry Association, Inc. ("TIA") is a toy industry trade association, admits
13   that at certain times TIA has given awards called the People's Choice Toy of The
14   Year or the Toy of The Year Award, denies that Mattel wrongfully influenced TIA
15   and states that it is without knowledge or information sufficient to form a belief as
16   to the truth or falsity of the remaining allegations set forth therein and, on that basis,
17   denies them.

18       93.    Answering paragraph 93 of the Complaint, Mattel states that the
19   allegations set forth therein are vague and ambiguous, including in that they fail to
20   properly identify the years in which the referenced awards were given and/or the
21   particular product which won such awards, and accordingly lacks knowledge or
22   information sufficient to form a belief as to the truth or falsity of the allegations set
23   forth therein and, on that basis, denies them.

24       94.    Answering paragraph 94 of the Complaint, Mattel admits that
25   Neil Freidman was the chairman of TIA from approximately May 2002 to May
26   2004, states that Fischer Price is a division of Mattel and denies the truth of the
27   remaining allegations set forth therein.

28

TX 24885-00022

1         95.    Answering paragraph 95 of the Complaint, Mattel admits that

2    Hokey Pokey Elmo won the Toy of the Year Award and denies the truth of the

3    remaining allegations set forth therein.

4         96.    Answering paragraph 96 of the Complaint, Mattel states that it is

5    without knowledge or information sufficient to form a belief as to the truth or falsity

6    of the allegations set forth therein and, on that basis, denies them.

7         97.    Answering paragraph 97 of the Complaint, Mattel denies the

8    truth of the allegations set forth therein.

9         98.    Answering paragraph 98 of the Complaint, Mattel denies the

10   truth of the allegations set forth therein.

11        99.    Answering paragraph 99 of the Complaint, Mattel denies the

12   truth of the allegations set forth therein.

13        100.   Answering paragraph 100 of the Complaint, Mattel denies the

14   truth of the allegations set forth therein.

15        101.   Answering paragraph 101 of the Complaint, Mattel repeats its

16   responses contained in paragraphs 1 through 100 of this Third Amended Answer

17   and incorporates them by reference as though fully and completely set forth herein.

18        102.   Answering paragraph 102 of the Complaint, Mattel denies the

19   truth of the allegations set forth therein and specifically denies that MGA's alleged

20   trade dress is distinctive.

21        103.   Answering paragraph 103 of the Complaint, Mattel denies the

22   truth of the allegations set forth therein and specifically denies that MGA's alleged

23   trade dress is distinctive.

24        104.   Answering paragraph 104 of the Complaint, Mattel denies the

25   truth of the allegations set forth therein.

26        105.   Answering paragraph 105 of the Complaint, Mattel denies the

27   truth of the allegations set forth therein.

28

2875224.1

-22-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00023

1           106.   Answering paragraph 106 of the Complaint, Mattel denies the

2    truth of the allegations set forth therein.

3           107.   Answering paragraph 107 of the Complaint, Mattel denies the

4    truth of the allegations set forth therein.

5           108.   Answering paragraph 108 of the Complaint, Mattel denies the

6    truth of the allegations set forth therein and specifically denies that plaintiff is

7    entitled to injunctive relief.

8           109.   Answering paragraph 109 of the Complaint, Mattel repeats its

9    responses contained in paragraphs 1 through 108 of this Third Amended Answer

10   and incorporates them by reference as though fully and completely set forth herein.

11          110.   Answering paragraph 110 of the Complaint, Mattel denies the

12   truth of the allegations set forth therein.

13          111.   Answering paragraph 111 of the Complaint, Mattel denies the

14   truth of the allegations set forth therein.

15          112.   Answering paragraph 112 of the Complaint, Mattel denies the

16   truth of the allegations set forth therein.

17          113.   Answering paragraph 113 of the Complaint, Mattel denies the

18   truth of the allegations set forth therein.

19          114.   Answering paragraph 114 of the Complaint, Mattel denies the

20   truth of the allegations set forth therein.

21          115.   Answering paragraph 115 of the Complaint, Mattel denies the

22   truth of the allegations set forth therein.

23          116.   Answering paragraph 116 of the Complaint, Mattel denies the

24   truth of the allegations set forth therein.

25          117.   Answering paragraph 117 of the Complaint, Mattel denies the

26   truth of the allegations set forth therein and specifically denies that plaintiff is

27   entitled to injunctive relief.

28

2875224.1

-23-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00024

1          118.   Answering paragraph 118 of the Complaint, Mattel denies the
2  truth of the allegations set forth therein.

3          119.   Answering paragraph 119 of the Complaint, Mattel repeats its
4  responses contained in paragraphs 1 through 118 of this Third Amended Answer
5  and incorporates them by reference as though fully and completely set forth herein.

6          120.   Answering paragraph 120 of the Complaint, Mattel denies the
7  truth of the allegations set forth therein.

8          121.   Answering paragraph 121 of the Complaint, Mattel denies the
9  truth of the allegations set forth therein.

10         122.   Answering paragraph 122 of the Complaint, Mattel denies the
11  truth of the allegations set forth therein.

12         123.   Answering paragraph 123 of the Complaint, Mattel denies the
13  truth of the allegations set forth therein and specifically denies that plaintiff is
14  entitled to injunctive relief.

15         124.   Answering paragraph 124 of the Complaint, Mattel repeats its
16  responses contained in paragraphs 1 through 123 of this Third Amended Answer
17  and incorporates them by reference as though fully and completely set forth herein.

18         125.   Answering paragraph 125 of the Complaint, Mattel denies the
19  truth of the allegations set forth therein.

20

21                  <u>General Denial</u>

22        Unless specifically admitted herein, Mattel denies the truth of each and
23  every allegation set forth in plaintiff's Complaint and specifically denies that
24  plaintiff is entitled to any relief against Mattel.

25

26

27

28

TX 24885-00025

Affirmative Defenses

By alleging the Affirmative Defenses set forth below, Mattel does not agree or concede that it bears the burden of proof or the burden of persuasion on any of these issues, whether in whole or in part.

First Affirmative Defense

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

Second Affirmative Defense

Plaintiff has no valid, enforceable or protectible rights or interest in the alleged trade dress or other matters asserted, including without limitation in that plaintiff has failed to establish that its alleged trade dress is distinctive as to plaintiff.

Third Affirmative Defense

Plaintiff's claims, including without limitation plaintiff's claims based upon alleged extra-territorial acts, are barred in whole or in part by lack of subject matter jurisdiction.

Fourth Affirmative Defense

Plaintiff's claims are barred in whole or in part by plaintiff's unclean hands.

Fifth Affirmative Defense

Plaintiff's claims are barred in whole or in part by virtue of Mattel's prior-creation of the elements and other matters asserted in the Complaint.

2875224.1

TX 24885-00026

**Sixth Affirmative Defense**

Plaintiff's claims are barred in whole or in part by its lack of standing.

**Seventh Affirmative Defense**

Plaintiff's claims are barred in whole or in part by the applicable statutes of limitation and the doctrine of laches.

**Eighth Affirmative Defense**

Plaintiff's claims are barred in whole or in part by the doctrines of waiver, estoppel, acquiescence, and abandonment.

**Ninth Affirmative Defense**

Plaintiff's claims are barred in whole or in part by Mattel's constitutional rights of free speech, petitioning and association, including without limitation by the litigation privilege as protected by and/or codified in *inter alia* Section 47(b) of the California Civil Code, the *Noerr-Pennington* doctrine, the common interest privilege and by other privileges.

**Tenth Affirmative Defense**

Plaintiff's claims are barred in whole or in part by Mattel's federal and state constitutional rights of free speech, including without limitation under the First Amendment of the United States Constitution.

**Eleventh Affirmative Defense**

Plaintiff's claims are barred in whole or in part by the competitor privilege.

2875224.1

-26-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00027

#### Twelfth Affirmative Defense

Plaintiff's claims are in whole or in part preempted by the Copyright Act and barred by the *Sears-Compco* doctrine.

#### Thirteenth Affirmative Defense

Plaintiff's requested relief, including plaintiff's requests for punitive and/or enhanced damages, are barred in whole or in part because all of Mattel's actions were in good faith.

#### Fourteenth Affirmative Defense

Plaintiff's damages, if any, were not caused by Mattel and are not attributable to the acts or omissions of Mattel.

#### Fifteenth Affirmative Defense

Plaintiff has failed to mitigate its damages, if any.

#### Additional Defenses

Mattel has insufficient knowledge or information upon which to form a belief as to whether additional defenses are available. Mattel reserves the right to amend this Third Amended Answer to add, delete, or modify additional defenses based on legal theories which may or will be divulged through clarification of the Complaint, through discovery, through change or clarification of the governing law or through further legal analysis of plaintiff's positions in this litigation.

#### Prayer for Relief

WHEREFORE, Mattel prays for relief as follows:

2875224.1

-27-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00028

1       1.     That the Complaint be dismissed with prejudice;

2       2.     That plaintiff take nothing by reason of the Complaint against

3  Mattel and that judgment be entered in Mattel's favor;

4       3.     That Mattel recover its costs and attorneys' fees; and

5       4.     That this Court award such other and further relief as it deems

6  just and proper.

7                  **COUNTERCLAIMS**

8      Pursuant to the Court's Orders of, inter alia, January 12, 2007, and June

9  27, 2007, and incorporating its [Proposed] Amended Complaint dated November 19,

10  2006, Mattel, Inc. alleges as follows:

11               **Preliminary Statement**

12       1.     For years MGA Entertainment, Inc. has engaged in a pattern of

13  stealing and using Mattel, Inc.'s property and trade secrets.  MGA's use of the

14  stolen property and trade secrets caused and continues to cause significant harm to

15  Mattel.  MGA first stole "Bratz," a fashion doll, from Mattel, and then continued

16  stealing Mattel's confidential and proprietary information to fuel MGA's growth.

17  Even after Mattel originally filed this suit, MGA, Isaac Larian and their co-

18  conspirators continued this pattern of wrongdoing, engaging in additional acts of

19  commercial bribery, destruction of evidence, evidence tampering and perjury, and

20  in fraudulent conveyances and bankruptcy fraud.  Indeed, MGA, Larian and their

21  co-conspirators carried out several of these wrongs while the Phase 1 trial was on-

22  going and shortly after it concluded for the specific purpose of thwarting the

23  findings of the jury in Mattel's favor, obstructing the judicial process, and

24  damaging Mattel and its rights.

25       2.     Carter Bryant conceived, created and developed Bratz designs

26  while he was employed by Mattel as a doll designer.  He concealed his Bratz work

27  from Mattel and wrongfully sold Bratz to MGA while he was a Mattel employee.

28  As MGA knows, Mattel owns the Bratz designs that Bryant made.  As the rightful

TX 24885-00029

owner of those Bratz designs, Mattel has registered copyrights for them and seeks damages arising from MGA's repeated infringement of those copyrights.

3.      In 2008, the jury in the Phase 1 trial in this action found that Carter Bryant conceived of and created Bratz, including without limitation Bratz sculpts and prototypes, the Bratz name, the Bratz characters, and more than 70 Bratz design drawings, while working for Mattel and that MGA and Isaac Larian unlawfully aided and abetted that wrongdoing and profited from their wrongful acts. Specifically, the jury found that MGA and Larian unlawfully infringed Mattel's copyrights in Bratz works created by Bryant while a Mattel employee and owned by Mattel, converted Bratz drawings from Mattel, tortiously interfered with Bryant's contract with Mattel, aided and abetted Bryant's breach of his duty of loyalty to Mattel, and aided and abetted Bryant's breach of his fiduciary duty to Mattel. The jury further found that MGA had fraudulently concealed its wrongful conduct from Mattel. Yet MGA's wrongful conduct has not ceased. Undeterred by the jury's findings, MGA continues to infringe even to this day, and threatens to infringe in the future, Mattel's rights in Bratz.

4.      MGA's illegal conduct in stealing Bratz was also just the beginning. Emboldened by the success of its earlier illegal conduct, MGA has repeated—and even expanded through this day—its pattern of theft, bribery, evidence destruction and tampering, perjury, obstruction, financial manipulations and other illegal conduct. For example, in or about 2004, MGA decided to expand into Mexico. To do so, and operating from its Southern California offices, MGA hired away three key Mattel employees in Mexico, who, on their way out, stole virtually every category of Mattel's sensitive and trade secret business plans and information for the Mexican market, as well as a significant quantity of sensitive and trade secret information for Mattel's U.S. and worldwide businesses, and took them to MGA. Armed with Mattel's confidential business plans and methods,

-29-
THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00030

1    MGA claimed to have increased its market share in Mexico alone by 90% in a

2    single year.

3            5.    In 2005, MGA needed help in Canada. So MGA, again

4    operating from its Southern California headquarters, hired Janine Brisbois from

5    Mattel. At that time, Ms. Brisbois was responsible for Mattel's account with Toys

6    'R Us ("TRU") and Wal-Mart. MGA gave her responsibility for those same

7    accounts, and she took from Mattel documents containing proprietary advertising,

8    project, sales, customer and strategy information for not only Canada, but for the

9    United States. Eliminating any doubt that MGA then proceeded to use those stolen

10   materials, Brisbois subsequently accessed and modified certain of those Mattel

11   documents while employed by MGA.

12           6.    Starting no later than 2000, and continuing until at least 2005,

13   MGA bribed Mattel employees in addition to Bryant to work on Bratz and other

14   products for MGA's benefit. In the face of Court Orders compelling MGA to

15   disclose such evidence, MGA falsely denied under oath that there were such other

16   Mattel employees. In December 2007, however, the truth came to light—MGA

17   agents had bribed at least three more Mattel employees over a five-year span,

18   including during times even after this suit was filed. MGA's agents acted to

19   conceal the bribery, including by paying Mattel employees in cash and using false

20   names and false social security numbers.

21           7.    These are not the only instances of such misconduct which MGA

22   orchestrated and carried out from its headquarters in this District. Counter-

23   defendants have engaged in an ongoing, widespread pattern of illegal acts that

24   continues to this day and that threatens to continue into the future. Those acts

25   include, without limitation, inducing Mattel employees to steal Mattel's

26   confidential information or other property and take it with them to MGA to further

27   MGA's business interests and to harm Mattel. They also include, without

28   limitation, continued acts of copyright infringement, evidence destruction and

2875224.1

-30-

TX 24885-00031

1   perjury. They also include, without limitation, Larian's and MGA's illegal transfer,

2   transport and laundering of their ill-gotten profits, including through their use of

3   sham single-purpose entities created during or immediately after the Phase 1 trial,

4   for the purpose of thwarting the jury's Phase 1 verdict against them, continuing

5   with their acts of infringement, manipulating their financial condition and

6   defrauding Mattel.

**Jurisdiction**

7

8         8.   This Court has federal question jurisdiction over this action

9   pursuant to 28 U.S.C. §§ 1331, 17 U.S.C. §§ 101 *et seq.*, and 18 U.S.C. § 1964(c).

10   This Court has supplemental jurisdiction over Mattel's state law claims pursuant to

11   28 U.S.C. § 1367.

**Venue**

12

13         9.   Venue is proper in this District pursuant to 28 U.S.C.

14   §§ 1391(b)-(d), 1391(f) and 1400(a) and 18 U.S.C. § 1965.

**Parties**

15

16         10.   Mattel is a corporation organized and existing under the laws of

17   the State of Delaware, with its principal place of business in El Segundo,

18   California.

19         11.   Counter-defendant MGA Entertainment, Inc. ("MGA") is a

20   corporation organized and existing under the laws of the State of California, with

21   its principal place of business in Van Nuys, California. Mattel is informed and

22   believes, and on that basis alleges, that ABC International Traders, Inc. is a

23   predecessor corporation to MGA and that until September 16, 2002, MGA was

24   incorporated and known as ABC International Traders, Inc. Upon the filing of the

25   Complaint, Mattel, being ignorant of the nature, extent and scope of MGA

26   Entertainment, Inc.'s involvement and complicity in the conduct alleged therein and

27   having designated MGA Entertainment, Inc. in the Complaint as Doe 1 and having

28   discovered its involvement and complicity, Mattel previously amended its

TX 24885-00032

1   Complaint by substituting MGA Entertainment, Inc. for the fictitious Doe name

2   Doe 1.

3          12.   Counter-defendant Carter Bryant ("Bryant") is an individual who

4   formerly was employed by Mattel and has worked for and continues to work as a

5   contractor for MGA.  Mr. Bryant currently resides in the State of Missouri.

6          13.   Counter-defendant MGA Entertainment (HK) Limited is a

7   business entity organized and existing under the laws of the Hong Kong Special

8   Administrative Region, with its principal place of business in Hong Kong.  Upon

9   the filing of the Complaint, Mattel, being ignorant of the nature, extent and scope

10   of involvement and complicity of MGA Entertainment (HK) Limited in the conduct

11   alleged therein and having designated MGA Entertainment (HK) Limited in the

12   Complaint as Doe 2 and having discovered its involvement and complicity, Mattel

13   previously amended its Complaint by substituting MGA Entertainment (HK)

14   Limited for the fictitious Doe name Doe 2.

15          14.   Counter-defendant MGAE de Mexico, S.R.L. de C.V. ("MGA

16   de Mexico") is a business entity organized and existing under the laws of Mexico,

17   with its principal place of business in Mexico City, Mexico.

18          15.   Mattel is informed and believes, and on that basis alleges, that

19   Counter-defendant Larian is the President and CEO of MGA and an individual

20   residing in the County of Los Angeles.   Upon the filing of the Complaint, Mattel,

21   being ignorant of the nature, extent and scope of involvement and complicity of

22   Larian in the conduct alleged therein and having designated Larian in the

23   Complaint as Doe 3 and having discovered his involvement and complicity, Mattel

24   previously amended its Complaint by substituting Larian for the fictitious Doe

25   name Doe 3.

26          16.   Mattel is informed and believes, and on that basis alleges, that

27   Counter-defendant Larian is directly or indirectly principal, owner, member and/or

28   controlling shareholder and alter-ego of IGWT Group, LLC ("IGWT Group") and

2875224.1

-32-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00033

1   IGWT 826 Investments, LLC ("IGWT 826 Investments").  On information and

2   belief, the financial affairs of Larian and these limited liability companies—which

3   were formed during and subsequent to the Phase 1 trial—are significantly

4   intermingled and interconnected, the companies being mere shells which Larian

5   used as conduits for his own business dealings, created and operated pursuant to an

6   unlawful scheme as alleged herein.

7          17.   Mattel is informed and believes, and on that basis alleges, that

8   Counter-defendant Larian is directly or indirectly trustee, principal, owner, and/or

9   controlling participant and alter-ego of several trusts devised by or on behalf of

10  Larian for the purpose of manipulating MGA's and Larian's finances, including

11  without limitation The Makabi Living Trust, The Larian Living Trust, The Angela

12  Larian Qualified Annuity Trust, The Isaac E. Larian Qualified Annuity Trust, The

13  Jahangir Eli Makabi Qualified Annuity Trust, as well as other trusts and similar

14  vehicles presently unknown to Mattel because of their concealment by Larian,

15  MGA and their co-conspirators.

16         18.   Mattel is informed and believes, and on that basis alleges, that

17  Counter-defendant Larian is directly or indirectly principal, owner, member and/or

18  controlling shareholder and alter-ego of several other sham entities devised by or

19  on behalf of Larian for the purpose of manipulating MGA's and Larian's finances,

20  including without limitation Omni 808 Investors, LLC, Vision Capital, LLC and

21  Lexington Financial  Limited (collectively, the "Omni Parties") as well as other

22  entities currently unknown by name to Mattel because of their concealment by

23  Larian, MGA, the Omni Parties and their co-conspirators.

24         19.   Mattel is informed and believes, and on that basis alleges, that

25  Counter-defendant Larian has employed, directly or indirectly, other co-

26  conspirators to directly and indirectly carry out his intentional wrongdoing,

27  including in order to conceal and manipulate his and MGA's finances and to

28  conduct other fraudulent and illegal conduct, including without limitation Neil

2875224.1

-33-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00034

Case 2:04-cv-09049-DOC-RNB   Document 10367-4   Filed 04/03/11   Page 36 of 52   Page ID
#:314679
Case 2:04-cv-09049-SGL-RNB     Document 5142-2     Filed 04/08/2009     Page 35 of 102

1  Kadisha, Leon Neman, Fred Mashian, Jahangir Eli Makabi, Shirin Makabi, Farhad

2  Larian, Angela Larian, Veronica Marlow and Peter Marlow, as well as other

3  persons presently unknown to Mattel because of their concealment by Larian,

4  MGA, the Omni Parties and their co-conspirators.

5       20.   Mattel is informed and believes, and on that basis alleges, that at

6  all relevant times mentioned herein such individuals, trusts, Larian, the Omni

7  Parties, IGWT Group and IGWT 826 Investments, together with their employees,

8  officers, putative owners, members and principals, agents, representatives and

9  attorneys, were acting in concert and in active participation with each other in

10  committing the wrongful acts alleged herein, and were the agents of each other and

11  were acting within the scope and authority of that agency and with the knowledge,

12  consent and approval of each other.

13       21.   Counter-defendant Carlos Gustavo Machado Gomez is an

14  individual who is employed by Counter-defendant MGA and who resided in this

15  District at the time he was named and served as a Counter-defendant in the Second

16  Amended Answer and Counterclaims and, on information and belief, currently

17  resides in Mexico.

18       22.   The true names and capacities of Counter-defendants sued herein

19  as DOES 4 through 10, inclusive, are unknown to Mattel, which therefore sues said

20  Counter-defendants by such fictitious names.  Mattel will amend its pleadings to

21  allege their true names and capacities when the same are ascertained.

22  **Factual Background**

23  **I.   MATTEL**

24       23.   Mattel manufactures and markets toys, games, dolls and other

25  consumer products.  Harold Mattson and Eliot and Ruth Handler founded Mattel in

26  1945.  The name of the company was created by incorporating the names of two of

27  its founders, "MATT-son" and "EL-liot."  Originating from the Handlers' garage in

28  Southern California, the company greatly expanded its operations following World

1    War II.  During the next several decades, Mattel became famous for producing

2    high-quality products at reasonable prices.

3              24.    Critical to Mattel's success is its ability to design and develop

4    new products.  Mattel invests millions of dollars in product design and

5    development and introduces hundreds of new products each year.  Mattel maintains

6    a 180,000 square-foot design center in El Segundo, California, that houses

7    hundreds of designers, sculptors, painters and other artists, who work exclusively to

8    create the products on which Mattel's business depends.

9              25.    Mattel also has invested substantial amounts over many years to

10   develop its business methods and practices, including, without limitation, its

11   marketing and advertising research, plans, methods and processes; its business

12   research and forecasts; its costs, budgets, pricing, credit terms, deal terms and

13   finances; its manufacturing, distribution, and sales methods and processes; and its

14   inventory methods and processes.  These represent a material part of the intellectual

15   infrastructure of Mattel and are highly valuable.

16   **II.    MGA ENTERTAINMENT**

17             26.    MGA is also a toy manufacturer.  MGA began as a consumer

18   electronics business, but expanded into the toy business with licenses to sell

19   handheld electronic games.  By approximately late 1999 or early 2000, MGA

20   developed a strategy to expand its business and compete directly with Mattel by

21   launching a fashion doll line, so it stole a fashion doll that was owned by Mattel –

22   "Bratz."

23             27.    MGA intentionally stole not just specific Mattel property, such

24   as Bratz designs, prototypes and related materials, but also a vast array of trade

25   secrets and other confidential information that comprise Mattel's intellectual

26   infrastructure.  MGA's rapid growth was not organic, but rather was based upon its

27   theft of Bratz.  As a result, MGA lacked an appropriate intellectual infrastructure

28   for a company of its size and it became increasingly difficult to manage.  To deal

TX 24885-00036

1    with these problems, as detailed below, time and time again MGA simply stole

2    Mattel's proprietary business methods, practices and information.  This not only

3    allowed MGA to avoid expending time, money and effort necessary to build a

4    legitimate business, but also allowed MGA to unfairly compete against Mattel by

5    taking Mattel's playbook.

6    **III.  MGA STEALS A NEW LINE OF FASHION DOLLS FROM MATTEL**

7         28.   Carter Bryant is a former Mattel employee.  Bryant joined Mattel

8    in September 1995, where he worked in Mattel's Design Center as a BARBIE

9    product designer.  In or about April 1998, Bryant resigned his position with Mattel

10    and moved to Missouri to live with his parents.  Late in 1998, Bryant applied to

11    Mattel to be rehired.  On January 4, 1999, he began working at Mattel in Mattel's

12    Design Center, again as a product designer, for Mattel's BARBIE collectibles line.

13         29.   Upon his return to Mattel in January 1999, Bryant executed an

14    Employee Confidential Information and Inventions Agreement (the "Employment

15    Agreement"), a true and correct copy of which is attached hereto as Exhibit A.

16         30.   Pursuant to his Employment Agreement and as a condition of

17    and in consideration for his employment, Bryant agreed, among other things, that

18    he held a position of trust with Mattel, that the designs and inventions he created

19    during his Mattel employment (with certain exceptions not relevant here) were

20    owned by Mattel, and that he would be loyal to the company by agreeing not to

21    assist or work for any competitor of Mattel while he was employed by Mattel.

22         31.   On January 4, 1999, Bryant also executed Mattel's Conflict of

23    Interest Questionnaire (the "Conflict Questionnaire").  Among other things, Bryant

24    certified in the Conflict Questionnaire that, other than as disclosed, he had not

25    worked for any competitor of Mattel in the prior twelve months and had not

26    engaged in any business venture or transaction involving a Mattel competitor that

27    could be construed as a conflict of interest.  Bryant understood what the Conflict

28    Questionnaire required because, among other things, he disclosed on it the

TX 24885-00037

1   freelance work he had performed while in Missouri for Ashton-Drake, which is

2   unrelated to the conduct alleged herein.  A true and correct copy of the Conflict

3   Questionnaire executed by Bryant is attached hereto as Exhibit B.

4           32.    Pursuant to the Conflict Questionnaire, Bryant also agreed that

5   he would immediately notify his supervisor of any change in his situation that

6   would cause him to change any of the foregoing certifications.  Despite this

7   obligation, at no time did Bryant disclose to Mattel that he was engaging in any

8   business venture or transaction with MGA or any other Mattel competitor.

9           33.    More specifically, while Bryant was employed by Mattel, Bryant

10  and other Counter-defendants misappropriated and misused Mattel property and

11  Mattel resources for the benefit of Bryant and MGA.  Such acts included, but are

12  not limited to, the following:

13          a.    using his exposure to Mattel development programs to

14  create the concept, design and name of Bratz;

15          b.    using Mattel resources, and while employed by Mattel,

16  Bryant worked by himself and with other Mattel employees and contractors to

17  design and develop Bratz, including without limitation by creating drawings and

18  three-dimensional models of Bratz dolls, and fashion designs for the dolls'

19  associated clothing and accessories; and

20          c.    using Mattel resources, and while employed by Mattel,

21  Bryant took steps to assist MGA to produce Bratz dolls.

22          34.    During the time that he was employed by Mattel and thereafter,

23  Bryant concealed these actions from Mattel, including by failing to notify his

24  supervisor of the conflict of interest he created when he began working on MGA's

25  behalf and when he began receiving payments from MGA.  Bryant additionally

26  enlisted other Mattel employees to perform work on Bratz during the time he was

27  employed by Mattel and, by all indications, in at least some cases led them to

28  believe that they were performing work on a project for Mattel.

2875224.1

-37-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00038

35. Bryant also made affirmative misrepresentations to Mattel management and employees immediately before his departure from Mattel on October 20, 2000. For example, during his last few weeks at Mattel, Bryant told his co-workers and supervisors that he was going to leave Mattel for "non-competitive" pursuits. Bryant's representations to his supervisors and his co-workers were false. Bryant knew at the time that those representations were false and made those false statements to conceal from Mattel the fact that he was already working with MGA and that he had contracted with MGA to assign Bratz works to MGA and to provide design and development services to MGA, a Mattel competitor.

36. As a result of the efforts of Bryant and other Mattel employees working on Bratz (which were done without Mattel's knowledge), the Bratz dolls had been designed and were far along in development during the time that Bryant was employed by Mattel and prior to the time that Bryant left Mattel on October 20, 2000. Not only did Bryant create and develop designs for the dolls as well as other aspects of the products such as their fashion accessories during the time he was employed by Mattel, but MGA showed Bratz prototypes and/or product to both focus groups and retailers in November 2000, less than three weeks after Bryant left Mattel. Bryant, Larian and others at MGA arranged these meetings while Bryant was still employed by Mattel.

37. Bryant and MGA employees also repeatedly and continuously communicated with employees of MGA Entertainment (HK) Limited on subjects such as design and manufacturing of Bratz. On information and belief, at all material times, MGA Entertainment (HK) Limited has maintained regular and continuous contacts with persons in the County of Los Angeles; it regularly has shipped products that it manufactures, or that are manufactured for it, to the County of Los Angeles; and such products have been distributed to retailers and sold to consumers in the County of Los Angeles.

TX 24885-00039

38.   Bratz also were shown to retailers at the Hong Kong Toy Fair in January 2001.  By early 2001, only a few months after Bryant resigned from Mattel, MGA began having the Bratz fashion doll line and accessories manufactured and then, shortly thereafter, began selling them at retail.

39.   Since 2001, MGA has distributed and sold Bratz and Bratz-related products throughout the world.  Mattel is informed and believes that MGA also licenses Bratz to third parties.  Mattel is also informed and believes that MGA has derived annual revenue from its sales and licenses of Bratz in excess of $500 million.  Mattel is further informed and believes that MGA and Bryant claim current ownership of Bratz, and all copyrights and copyright registrations attendant thereto.  MGA continues to market, sell and license Bratz and has expressed an intention to continue to do so.

40.   Mattel is informed and believes that MGA and Larian encouraged, aided and financed Bryant to develop Bratz, knowing full well that Bryant was still employed by Mattel at the time and that by performing such work, including design-related work, for his own benefit and/or the benefit of MGA, Bryant would be, and was, in breach of his contractual, statutory and common law duties to Mattel.  Mattel is also informed and believes that MGA proceeded to aid and encourage Bryant to develop Bratz with the goal of obtaining a valuable fashion doll line that would be commercially successful in the competitive, multi-billion dollar market for fashion dolls.

41.   Pursuant to Bryant's contract with Mattel, among other things, Mattel is the true owner of Bratz designs and works, including those specifically that were conceived, created or reduced to practice during Bryant's Mattel employment as well as all designs and works that are or have been derived therefrom.  Counter-defendants' continued use, sale, distribution and licensing of Bratz thus infringes upon Mattel's rights, injures Mattel and unlawfully enriches the Counter-defendants.

THIRD AMENDED ANSWER AND COUNTERCLAIMS

2875224.1

TX 24885-00040

42.    Bryant and MGA deliberately and intentionally concealed facts sufficient for Mattel to suspect or to know that it was the true owner of Bratz. Their acts of concealment include, but are not limited to, concealing the fact that Bryant conceived, created, designed and developed Bratz while employed by Mattel, including by tampering with and defacing documents which showed that, in fact, Bryant was a Mattel employee while he was working for and with MGA; concealing the fact that Bryant worked with and assisted MGA during the time Bryant was employed by Mattel and was compensated for that assistance; concealing that Bryant was providing consulting services to MGA; concealing Bryant's role in Bratz by falsely claiming that Larian and others were the creators of Bratz; and concealing the fact that Mattel was the true owner of Bratz by, among other things, filing fraudulent registrations and/or amendments to registrations with the United States Copyright Office claiming MGA as the author of Bratz as a work for hire and altering relevant dates on such documents to further obscure the true facts of when the works were created.

43.    Because of Bryant's and MGA's acts of concealment and Bryant's misrepresentations to Mattel, Mattel had no reason to suspect that Bryant had worked with MGA, or assisted MGA, while he still employed by Mattel until approximately November 24, 2003, when Mattel received, through an unrelated legal action, a copy of Bryant's agreement with MGA which showed that the date of Bryant's agreement with MGA predated Bryant's departure from Mattel.  It was then, as a result, that Mattel learned for the first time that Bryant had secretly aided, assisted and worked for and with MGA while employed at Mattel and in violation of his Mattel Employment Agreement.  Specifically, Bryant's agreement with MGA obligated Bryant to provide product design services to MGA on a "top priority" basis.  Bryant's agreement with MGA also provided that Bryant would receive royalties and other consideration for sales of products on which Bryant provided aid or assistance; that all works and services furnished by Bryant under

-40-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

2875224.1

1  the agreement, including those he purportedly provided while still a Mattel

2  employee, purportedly would be considered "works for hire" of MGA; and that all

3  intellectual property rights to preexisting works by Bryant, including Bratz designs,

4  purportedly were assigned to MGA.

5  **IV.  MGA STEALS MATTEL TRADE SECRETS IN MEXICO**

6          44.    On information and belief, in or about late 2003 or early 2004,

7  MGA decided to open business operations in Mexico.  Faced with the difficult task

8  of developing an overall strategy for expanding into a market in which it had only a

9  nominal presence and no operations, MGA elected to steal Mattel's plans, strategy

10  and business information for the Mexican market and materials related to Mattel's

11  worldwide business strategies.  As detailed below, MGA and Larian approached

12  three employees of Mattel's Mexican subsidiary ("Mattel Mexico"), enticed them to

13  steal Mattel's most sensitive business planning materials, and then hired them to

14  assist in establishing and running MGA's new Mexican subsidiary.

15          **A.    MGA Hires Three Senior Mattel Employees in Mexico**

16          45.    Carlos Gustavo Machado Gomez ("Machado") was the Senior

17  Marketing Manager, Boys Division, for Mattel Mexico, a position of trust and

18  confidence.  He was employed at Mattel Mexico from April 1, 1997 until April 19,

19  2004.  His duties included short, medium and long-term marketing planning,

20  generating product sales projections, and assisting in creation of the media plan.  In

21  his position, Machado had access to highly confidential and sensitive marketing

22  and product development information.  Machado had an employment agreement

23  with Mattel in which he agreed to maintain the confidentiality of Mattel's protected

24  information.  Mattel's policies also required Machado to protect Mattel's

25  proprietary information and not to disclose it to competitors.

26          46.    Mariana Trueba Almada ("Trueba") was the Senior Marketing

27  Manager, Girls Division, for Mattel Mexico, a position of trust and confidence.

28  She was employed at Mattel Mexico from November 3, 1997 until April 19, 2004.

2875224.1

-41-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00042

1  Like Machado, her duties included short, medium and long-term marketing

2  planning, generating product sales projections, and assisting in creation of the

3  media plan.  In her position, Trueba had access to highly confidential and sensitive

4  marketing and product development information.  Trueba had an employment

5  agreement with Mattel in which she agreed to maintain the confidentiality of

6  Mattel's protected information.  Mattel's policies also required Trueba to protect

7  Mattel's proprietary information and not to disclose it to competitors.

8       47.   Pablo Vargas San Jose ("Vargas") was a Senior Trade Marketing

9  Manager with Mattel Mexico, a position of trust and confidence.  He was employed

10  at Mattel Mexico from March 29, 2001 until April 19, 2004.  Vargas was

11  responsible for ensuring that point-of-sale promotions were carried out, analyzing

12  the results of such promotions, negotiating promotion budgets, and generally

13  managing promotional activities.  Vargas also had access to highly confidential and

14  sensitive marketing and product development information.  Vargas had an

15  employment agreement with Mattel in which he agreed to maintain the

16  confidentiality of Mattel's protected information.  Mattel's policies also required

17  Vargas to protect Mattel's proprietary information and not to disclose it to

18  competitors.

19       48.   Beginning in late 2003 or early 2004, Machado, Trueba and

20  Vargas began planning to leave Mattel Mexico to join MGA.  In connection with

21  that plan, and with the encouragement of Larian and other MGA officers operating

22  in the United States, they began accessing, copying and collecting proprietary

23  Mattel documents to take with them.  On April 19, 2004, Machado, Trueba and

24  Vargas each resigned their positions with Mattel, effective immediately.  They

25  stated that they had been hired by a Mattel competitor, but refused to identify that

26  competitor.  In fact, they had been offered and accepted employment by MGA to

27  establish and run MGA's new operation in Mexico.

28

2875224.1

-42-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00043

**B.    Machado, Trueba and Vargas Stole Dozens of Confidential Trade Secret Marketing and Sales Documents for MGA's Benefit**

49.    Following these resignations, Mattel discovered that Machado, Trueba and Vargas had been in frequent telephonic and e-mail contact with MGA personnel, including Larian, for over three months prior to their resignations.  The primary vehicle for these communications in furtherance of their "plot" was an America Online e-mail account with the address <plot04@aol.com>.  On information and belief, during this time, Machado, Trueba and Vargas supplied Larian with certain Mattel confidential and proprietary information in order to prove their value to MGA and to improve their negotiating position vis-à-vis their respective employment contracts with MGA.

50.    In March 2004, Machado, Trueba and Vargas were making plans to travel from Mexico to Los Angeles to meet with MGA personnel in person prior to resigning their positions at Mattel.  Also, by at least March 3, 2004, Machado, Trueba and Vargas were discussing with MGA personnel, including Larian, specific details regarding setting up MGA offices in Mexico City.  On information and belief, prior to their resignations, Larian and others at MGA directed Machado, Trueba and Vargas to steal virtually all Mattel confidential and proprietary information that they could access and bring it with them to MGA.  This was reflected in, among things, e-mail messages that Mattel had discovered after Machado, Trueba and Vargas had resigned.  For example, on March 22, 2006, approximately one month before they resigned, Machado, Trueba and Vargas wrote an e-mail message from the <plot04@aol.com> e-mail account addressed to Larian, MGA's General Manager Susan Kuemmerle and another MGA officer Thomas Park.  In that e-mail message, Machado, Trueba and Vargas sought to prove their value in this endeavor to MGA by writing: "Attached you will find our analysis for future discussion.  We will be available during the nights of the week after 16:30 Los Angeles time . . . ."  In another e-mail message, showing that the

TX 24885-00044

1   participants intentionally sought to maximize the damage to Mattel from their

2   conduct, Kuemmerle wrote to Larian and Park:  "Gustavo, Mariana and Pablo want

3   to resign (all at the same time, and you can believe my smile!) next Wednesday."

4          51.    Beginning on April 12, 2004, a week before his resignation and

5   after numerous communications and meetings with Larian and other MGA

6   personnel, Machado began transferring additional Mattel confidential and

7   proprietary information to a portable USB storage device (also know as a "thumb

8   drive") that he connected to his Mattel computer.  On Friday, April 16, 2004, the

9   last business day before he gave notice, Machado copied at least 70 sensitive

10  documents to the portable USB storage device.

11         52.    Starting on April 12, 2004, Vargas also copied a host of

12  confidential and proprietary materials to a portable USB storage device, including

13  sales plans, sales projections and customer profiles.

14         53.    On April 16, 2004, Trueba also copied Mattel confidential and

15  proprietary information to a portable USB storage device connected to her Mattel

16  computer.

17         54.    With full knowledge that she was going to leave Mattel for a

18  competitor, Trueba also took steps to increase further her access to Mattel's

19  confidential information shortly before her resignation.  For example, just four days

20  before leaving, Trueba went out of her way to seek to attend a meeting at which

21  Mattel personnel analyzed BARBIE programs for the United States, Canada and

22  South America.  Two days before her resignation, she contacted both a Mattel

23  employee located in El Segundo, California and Mattel's advertising agency to

24  request updated confidential information about advertising plans for BARBIE.  On

25  information and belief, Trueba acted at the direction of MGA and Larian and did so

26  in order to obtain further information that would allow MGA to obtain unfair

27  competitive advantage over Mattel.

28

2875224.1

-44-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00045

55.   Machado, Trueba and Vargas stole virtually every type of document a competitor would need to enter the Mexican market and to unlawfully compete with Mattel in Mexico, in the United States, and elsewhere.  They stole global internal future line lists that detailed anticipated future products, production and shipping costs for Mattel products; daily sales data for Mattel products; customer data; sales estimates and projections; marketing projections; documents analyzing changes in sales performance from 2003 to 2004; budgets for advertising and promotional expenses; strategic research reflecting consumer responses to products in development; media plans; consumer comments regarding existing Mattel products customer discounts and terms of sale; customer inventory level data; assessments of promotional campaign success; market size historical data and projections; marketing plans and strategies; merchandising plans; retail pricing and marketing strategies; and other similar materials.

56.   The stolen data was not limited to the Mexican market.  The information stolen would, and did, give MGA an unfair competitive advantage in the United States and around the world.  Further, the stolen information was not located exclusively in Mexico, but included confidential and proprietary information that resided on Mattel computers in Phoenix, Arizona and El Segundo, California, and/or documents which were originally created by personnel in El Segundo.  Included among these stolen documents was one of Mattel's earliest internal global line lists, which included information for BARBIE products for the upcoming year and included, for each product, the expected profit margin, advertising expenditures, expected volume and marketing strategy.  On information and belief, Machado, Trueba or Vargas delivered that internal line list to Larian or another MGA officer during their negotiations with MGA.

57.   MGA has used the information taken from Mattel to obtain an unfair advantage over Mattel, including in both the United States and Mexico.  In fact, MGA later publicized its claim that, in 2005, it had increased its Mexican

THIRD AMENDED ANSWER AND COUNTERCLAIMS

2875224.1

TX 24885-00046

1   market share by 90 percent over the prior year.  This increase came at the expense

2   of Mattel, which lost market share during 2004 in Mexico and was forced to

3   increase its advertising and promotional spending to offset further losses.

4        58.   Machado, Trueba and Vargas attempted to conceal their

5   widespread theft of Mattel's proprietary information.  For example, Machado ran a

6   software program on his Mattel personal computer in an attempt to erase

7   information, including information that would reveal the addresses to which he had

8   sent, or from which he had received, e-mail messages.  On information and belief,

9   for the same purpose Machado also damaged the hard drive of the personal

10   computer that he used at Mattel.

11        59.   On information and belief, on April 19, 2004, immediately after

12   Machado, Trueba and Vargas simultaneously resigned, they traveled from Mexico

13   to Los Angeles to meet with MGA personnel, including Larian, in person.

14        60.   Mattel notified Mexican authorities about the theft of its trade

15   secret and confidential information.  On October 27, 2005, the Mexican Attorney

16   General Office obtained a search warrant from the Mexican Federal Criminal

17   Courts for MGA's facilities in Mexico City.  In that search, the Mexican authorities

18   found and seized from MGA's offices both electronic and paper copies of a large

19   number of documents containing Mattel trade secrets, including those that Mattel

20   discovered through its forensic investigations, plus many others that Mattel had not

21   known had been stolen.

22        61.   Based on Machado's "performance" in Mexico, Isaac Larian

23   subsequently promoted Machado, and he was transferred to MGA's main office in

24   Van Nuys, California.  When deposed in connection with this case, Machado

25   refused to answer questions about his misconduct and instead invoked the Fifth

26   Amendment over 100 times.  On information and belief, Machado has resided at

27   times relevant hereto in the County of Los Angeles, California, and on information

28   and belief, currently resides in Mexico.

TX 24885-00047

**V.   MGA HIRES MATTEL'S SENIOR VICE PRESIDENT AND GENERAL MANAGER TO FACILITATE ITS THEFT AND USE OF MATTEL'S HIGHLY VALUABLE BUSINESS METHODS AND PRACTICES**

62.   On October 1, 2004, Mattel's Senior Vice President and General Manager, Ron Brawer, left Mattel and joined MGA.  Tyco Toys, Inc. ("Tyco"), a predecessor to Mattel, had hired Brawer on April 22, 1996.  The same day, Brawer entered into an Employee Invention & Trade Secret Agreement with Tyco.  On April 9, 1997, Brawer became a Marketing Director for Mattel in Mount Laurel, New Jersey, and remained bound by his Employee Invention & Trade Secret Agreement.

63.   In January 2003, while Brawer held a position of trust and confidence at Mattel, Mattel's "Code of Conduct" was circulated to all Mattel employees worldwide.  Included in the Code of Conduct were statements that:

> Employees and Directors have an obligation to protect the confidentiality of Mattel's proprietary information.  Proprietary information is any information not generally known to the public that is useful to Mattel, that would be useful to its competitors or other third parties or that would be harmful to Mattel or its customers if disclosed.  Proprietary information includes trade secrets, revenue and profit information and projections, new product information, marketing plans, design and development efforts, manufacturing processes and any information regarding potential acquisitions, divestitures and investments.
>
> We can protect the security of Mattel's proprietary information by limiting access to it.  Confidential information should not be discussed with those who are not obligated to maintain the information in confidence and in public places where the

2875224.1

-47-

TX 24885-00048

1    information is not likely to be kept secret, such as planes,

2    restaurants and elevators.  The obligation to preserve confidential

3    information continues even after employment ends.

4 The Code of Conduct applied to Brawer and required that he meet his obligations

5 under the Code of Conduct.

6    64. By 2003, Brawer had advanced within Mattel to a Senior Vice

7 President position over customer marketing, a position of trust and confidence.  In

8 his executive position, Brawer was provided access to information that was both

9 sensitive and confidential, including, but not limited to, detailed information related

10 to development, manufacture, marketing, pricing, shipping, and performance of

11 Mattel's then-current and anticipated future product lines, and other confidential

12 business plans between Mattel and its most significant retail customers.

13    65. In December 2003, Alan Kaye, Mattel's Senior Vice President of

14 Human Resources, asked Brawer whether he was discussing potential employment

15 with MGA.  Brawer denied that he had been in contact with MGA and represented

16 that he would not talk to MGA.  Throughout 2004, Mattel reminded and stressed to

17 its employees, including Brawer, the importance of protecting Mattel's confidential

18 and proprietary materials and information.

19    66. On March 18, 2004, in response to a survey from the President of

20 Mattel Brands, Matt Bousquette, confirming compliance with Mattel's Code of

21 Conduct, Brawer wrote back that he "applaud[ed] the company's vigorous

22 protection of it's [sic] intellectual property," reflecting Brawer's clear

23 understanding that Mattel required its proprietary information to be kept

24 confidential.

25    67. In April 2004, Mattel promoted Brawer to Senior Vice

26 President/General Manager.  The General Manager position also is an executive

27 position of trust and confidence.  The role of a General Manager is to lead a cross-

28 functional "Customer Business Team."  Each General Manager is accountable for a

TX 24885-00049

1   strategic partnership with a key Mattel retailer, covering all aspects of the business,

2   including both traditional toy sales and retail development of licensed products.

3        68.   In or about late May 2004, Brawer began performing General

4   Manager duties, working with one of Mattel's major retail customer accounts.

5   Thereafter, Brawer began receiving information related not only to the Senior Vice

6   President, Customer Marketing position that he still formally held, but also began

7   receiving detailed information related to his role as General Manager.  Brawer

8   began requesting and analyzing detailed information related to Mattel and its four

9   key retail accounts.

10        69.   On September 15, 2004, Brawer left work at noon for observance

11   of Rosh Hashanah.  As Brawer left, he carried a large cardboard box with binders

12   and other materials.  Several hours after his departure, Brawer instructed his

13   assistant to print Mattel's 2004 Sales Plan for one of Mattel's significant customers

14   and to provide it to him, falsely claiming he needed it for a meeting

15        70.   On September 17, 2004, Brawer returned to Mattel and

16   immediately informed his supervisor that he was leaving Mattel, effective October

17   1, 2004, to work for competitor MGA.

18        71.   On September 20, 2004, Mattel hand-delivered a letter to Brawer

19   reminding him of his continuing obligation to preserve the confidentiality of

20   Mattel's proprietary information and trade secrets not only through October 1,

21   2004, but continuing beyond the termination of his employment.

22        72.   At his exit interview on September 29, 2004, Mattel reminded

23   Brawer that he had ongoing duties of confidentiality to Mattel, even after the

24   termination of his employment.  Brawer was given a copy of his Original

25   Confidentiality Agreement, which he had signed on April 22, 1996, and another

26   copy of the Code of Conduct.  During the exit interview, however, Brawer noted

27   that he had not signed the Code of Conduct, which he intended and Mattel

28   understood to mean that Brawer believed he was not bound by Mattel's policy

TX 24885-00050

1  because he had not signed it.  Brawer was unwilling to complete or sign the form

2  that sought to confirm that Brawer understood his ongoing obligations under the

3  Code of Conduct, which included the obligation to preserve the confidentiality of

4  Mattel's proprietary and trade secret information.

5          73.    On October 1, 2004, Brawer's final day of employment with

6  Mattel, Mattel hand-delivered to Brawer a letter that, among other things, reminded

7  Brawer of his confidentiality obligations to Mattel under the Code of Conduct.

8          74.    Upon joining MGA, Brawer became its Executive Vice-

9  President of Sales and Marketing.  In that role he was responsible for MGA's sales

10  worldwide.  As part of those responsibilities, Brawer had and continues to have

11  responsibility for MGA's accounts with the same retailers that he worked with

12  while at Mattel.

13          75.    Brawer represented during his Mattel exit interview that he had

14  returned all proprietary information to Mattel.  That representation was false.   On

15  information and belief, Brawer removed proprietary and trade secret information

16  from Mattel that he did not return.  Mattel is informed and believes that Brawer did

17  not return to Mattel, for example, the information contained in his contacts file.

18  The contacts file included contact information for Mattel customers, most notably

19  TRU, and extensive contact information for Mattel employees, including titles, e-

20  mail addresses and telephone numbers.

21          76.    Brawer has used that contact information on a regular basis.

22  Since leaving Mattel, Brawer has had contacts with Mattel employees, both by

23  telephone and by electronic mail.  Based on his knowledge of Mattel's operations

24  and the roles of certain Mattel employees, he has targeted certain Mattel employees

25  who have broad access to Mattel proprietary information in an effort to induce and

26  encourage them to join MGA and to steal or otherwise wrongfully misappropriate

27  Mattel confidential information and trade secrets.  Brawer has done so by

28  promising these Mattel employees salaries 25 percent or more higher than they earn

2875224.1

-50-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00051