# EXHIBIT D
# Part 2 of 2

1    at Mattel and stating to them that they should not be concerned by legal action

2    taken by Mattel to protect its trade secrets and its rights because such claims are

3    hard to prove and easy to defeat.

4    **VI.   MGA HIRES OTHER KEY PERSONNEL FROM MATTEL IN**

5    **ORDER TO OBTAIN TRADE SECRET AND HIGHLY**

6    **CONFIDENTIAL INFORMATION REGARDING MATTEL'S**

7    **FORECASTING & INVENTORY MANAGEMENT SYSTEMS**

8         77.    On March 13, 2006, MGA recruited Jorge Castilla, Mattel's

9    Planning Specialist for Operations, Planning & Finance.  Before he left Mattel,

10   Castilla stole on behalf of counter-defendants significant Mattel trade secrets and

11   proprietary information.

12        78.    Castilla joined Mattel in November 1999 and, in positions both

13   in Europe and the U.S., played a role in Mattel's development of highly proprietary

14   processes and systems for forecasting and inventory management in which Mattel

15   invested heavily.  In Mattel's European operations, Mr. Castilla was involved in

16   Mattel's development of a pilot program to improve sales forecasting in the United

17   Kingdom, and later, with the potential application of the pilot program to Mattel's

18   world-wide sales forecasting.

19        79.    In late 2004, Castilla worked with the International Planning

20   group at Mattel's headquarters in El Segundo, California, where he was responsible

21   for establishing Mattel's Electronic Data Warehouse system, a proprietary database

22   containing highly confidential business information, such as sales, future/pending

23   orders, product availability and sales forecasts at the stock keeping unit level.

24   Additionally, he was responsible for implementing Mattel's customized sales

25   forecasting system and preparing information for senior financial officers regarding

26   inventory levels, sales demands and related topics.

27        80.    Throughout his tenure at Mattel, Castilla became privy to some

28   of Mattel's most confidential and valuable information.  Castilla acknowledged his

2875224.1

TX 24885-00052

1  position of trust confidence and agreed that he would preserve and would not

2  disclose or misuse Mattel's proprietary or confidential information on numerous

3  occasions.  For example, in Castilla's Employee Confidential Information and

4  Inventions Agreement, which he signed on October 29, 1999, he acknowledged

5  that he would develop and have access to Mattel proprietary information.  Castilla

6  further agreed not to "disclose or use at any time either during or after my

7  employment with [Mattel], any Proprietary Information," and to "cooperate with

8  the Company and use [his] best efforts to prevent the unauthorized disclosure, use

9  or reproduction of all Proprietary Information."  He also agreed that when he left

10  Mattel's employ, he would deliver to Mattel "all tangible, written, graphical,

11  machine readable and other materials (including all copies in [his] possession or

12  under [his] control containing or disclosing Proprietary Information."

13              81.   Castilla had agreed to the terms in Mattel's Code of Conduct to

14  preserve Mattel's confidential and proprietary information and was specifically

15  warned that "the unauthorized use or disclosure of [Mattel's] confidential,

16  proprietary or trade secret information" may result in the termination of his

17  employment.  He further agreed:

18              Employees have an obligation to protect the Company's

19              confidential and proprietary information.  Confidential and

20              proprietary information is any information which is not

21              generally known to the public that is useful to the

22              Company and that would either be useful to the

23              Company's competitors or third parties or harmful to the

24              Company or its customers, if disclosed.  Confidential and

25              proprietary information includes, but is not limited to,

26              trade secrets, revenue and profit information and

27              projections, new product information, sales and marketing

28              plans, design and development plans, manufacturing

TX 24885-00053

1   processes, confidential personnel information and

2   information regarding potential acquisitions, divestitures

3   and/or investments.

4       82.   On Monday, March 13, 2006, Castilla informed Mattel that he

5   was resigning to take a position with MGA, as a Manager of Global Sales Planning,

6   with responsibilities that substantially paralleled those that he had at Mattel.

7       83.   During Castilla's exit interview on March 13, 2006, he was

8   provided with a document reminding him of his obligations to preserve Mattel's

9   confidential and proprietary information, including his obligations under Mattel's

10   Employee Confidential Information and Inventions Agreement, including but not

11   limited to "inventions, marketing plans, product plans, business strategies, forecasts

12   and personnel information."  Further, Castilla filled out an exit interview checkout

13   form, in which he acknowledged receiving not only the reminder, but also the

14   Mattel Code of Conduct.  Castilla also acknowledged that, during the course of his

15   employment at Mattel, he had received materials containing confidential and

16   proprietary information, and affirmed that he did not copy or disclose any of the

17   listed documents or the information that they contained to anyone outside of

18   Mattel, and denied having possession of any of the listed documents.  He also

19   affirmed that he returned to Mattel all of its confidential and proprietary documents

20   by representing that he "brought them in on March 12, 2006, filed them and put

21   together a summary of ongoing projects for supervisor, Brenda [Ray-Martin]."

22       84.   Despite his affirmations to the contrary, as of Friday, March 10,

23   2006, Castilla had created a folder on his Mattel network share drive that he labeled

24   "To Take."  The folder contained approximately 56 megabytes of information.  The

25   bulk of that information was made up of documents containing Mattel trade secrets

26   and confidential information, including documents related to inventory

27   management and forecasting for Mattel, as well as a highly confidential document

28   prepared by Mattel's senior executives that laid out Mattel's future international

2875224.1

-53-

TX 24885-00054

1  business strategies and marketing priorities not only up to today, but also for the

2  coming years.

3         85.   Just prior to his resignation, Castilla entered Mattel's

4  headquarters building at approximately 9:30 a.m. on Sunday, March 12, 2006 and

5  departed at approximately 2:00 p.m.  By Monday, March 13, 2006, Castilla had

6  deleted the "To Take" folder and its contents from his network share drive.  Castilla

7  had transferred the information in the "To Take" folder and potentially the folder

8  itself to an e-mail account <hoclau04@gmail.com>, <hoclau04@yahoo.com>

9  and/or to a personal digital assistant device.

10        86.   When he was later interviewed by the FBI about his theft, on

11  information and belief Castilla turned over to the FBI agents the storage media

12  from his personal digital device which contained Mattel trade secrets.  When

13  deposed in connection with this case, Castilla refused to answer questions about his

14  misconduct and instead invoked the Fifth Amendment nearly 500 times.

15        87.   Much of the Mattel trade secrets and confidential information

16  that Castilla took from Mattel related to the successful processes for efficient and

17  cost-effective management of inventory and the use of sophisticated forecasting

18  techniques that Mattel, through significant investment, developed to obtain a

19  competitive advantage in the toy industry with its unique order, manufacture and

20  delivery cycles.  The former Mattel employees working at MGA recognized the

21  value of Castilla's knowledge.  MGA was in dire need of improved inventory

22  management and forecasting, and to remedy this problem MGA targeted Castilla—

23  and the Mattel-specific knowledge that he possessed—and lured him to MGA.

24  With the benefit of the information that he brought with him, on information and

25  belief, MGA, including through Castilla, has used that proprietary and confidential

26  information to improve MGA's sales forecasting and inventory planning, thus

27  saving MGA many millions of dollars.

28

TX 24885-00055

## VII. MGA STEALS MATTEL TRADE SECRETS IN CANADA

88.   In an effort to increase its market share and sales in Canada and elsewhere, MGA stole Mattel trade secrets regarding Mattel's customers, sales, projects, advertising and strategy, not only for Canada, but the United States and the rest of the world.

89.   Janine Brisbois was a Director of Sales for the Girls Division in Canada.  Mattel hired her as a National Account Manager in August 1999.  When she was hired as a Mattel employee, Brisbois agreed that she would preserve and would not disclose Mattel's proprietary or confidential information.  For example, Brisbois agreed:

> You must keep Mattel's Proprietary Information confidential,
> and you may only use or disclose such information as necessary
> to perform your job responsibilities in accordance with Mattel
> policies.  Your obligation to keep Mattel's Proprietary
> Information confidential will continue even after any termination
> of your employment with your employer.
>
> . . .
>
> Mattel takes steps to maintain the secrecy and confidential nature
> of Mattel's Proprietary Information and, if a competitor
> discovered Mattel's Proprietary Information, it could
> significantly damage Mattel and your Employer.

90.   While with Mattel, Brisbois had responsibility for Mattel's account with TRU and later had responsibility for Mattel's Wal-Mart account.  In her capacity as Sales Director-Wal-Mart/CTC/Girls Team, Brisbois had access to Mattel confidential and proprietary information regarding Mattel's future product lines, advertising and promotional campaigns and product profitability.

91.   On September 26, 2005, Brisbois resigned from Mattel to take a position as Vice President of Sales at MGA.  Mattel is informed and believes that

TX 24885-00056

1    in that position Brisbois has responsibility for MGA's accounts with both TRU and

2    Wal-Mart.  During Brisbois' exit interview she was specifically asked whether she

3    was "taking anything."  Brisbois responded, "No."  Both during and after her exit

4    interview, Brisbois was advised by Mattel of her obligations to preserve Mattel's

5    confidential and proprietary information.

6           92.    Mattel is informed and believes that Brisbois spoke with Isaac

7    Larian, MGA's CEO, on September 22, 2005 at approximately 8:30 p.m., when he

8    called Ms. Brisbois at her home.  Mattel subsequently learned that on the same day

9    that she spoke with Mr. Larian and four days before she resigned, Brisbois copied

10   approximately 45 Mattel documents on to a USB or "thumb" drive with the volume

11   label "BACKPACK."  On information and belief, Brisbois removed the thumb

12   drive from Mattel Canada's office by concealing it in her backpack or gym bag the

13   last time that she left that office.  These documents contained Mattel trade secret

14   and proprietary information, and included:

- a document containing the price, cost, sales plan and quantity of every Mattel product ordered by every Mattel customer in 2005 and 2006;

- the BARBIE television advertising strategy and information concerning sales increases generated by television advertisements;

- competitive analysis of Mattel vis-à-vis its competitors in Canada;

- an analysis of Mattel's girls business sales beginning in 2003 and forecasts through 2006;

- profit and loss reviews for Mattel's products being sold in Wal-Mart, including margins and profit in not only Canada, but in the United States and Mexico; and

- a document containing the product launch dates and related advertising for all Mattel new products between Fall 2005 and Spring 2006.

27          93.    After Mattel discovered that Brisbois had copied these sensitive

28   documents to a thumb drive, Mattel notified Canadian law enforcement authorities.

2875224.1

-56-

TX 24885-00057

1  Canadian law enforcement authorities recovered from Brisbois a thumb drive with

2  the volume label "BACKPACK" containing the documents that Brisbois had

3  copied from Mattel's computer system.  Mattel later learned that while she was

4  working as a Vice President of Sales at MGA, Brisbois accessed and modified

5  documents on that thumb drive.

6          94.  After joining MGA, Brisbois repeatedly traveled to MGA's

7  offices in Van Nuys, California and met with Larian and Brawer.  In February,

8  2006, knowing that Mattel trade secrets had been seized from MGA's Mexico City

9  offices and that at least three MGA employees were under criminal investigation,

10  MGA nonetheless issued a press release trumpeting its 2005 performance, with

11  Larian himself concluding, "Our international teams in Mexico and Canada have

12  done a fantastic job."

13  **VIII.  AT MGA'S DIRECTION, MATTEL EMPLOYEES IN ADDITION TO**

14         **BRYANT SECRETLY WORK ON BRATZ FOR YEARS**

15          95.  MGA also knowingly bribed and secretly used Mattel employees

16  in addition to Bryant to work on MGA products such as Bratz while they were

17  Mattel employees and, furthermore, fraudulently concealed such activity.  On

18  December 28, 2007, MGA vendor and agent Veronica Marlow revealed at her

19  deposition that, beginning in 2000 and continuing over a time period spanning at

20  least five years, at least three Mattel employees in addition to Bryant worked on

21  Bratz while employed by Mattel:  Ana Isabel Cabrera, Beatriz Morales and Maria

22  Elena Salazar.  Like Bryant, these Mattel employees all signed agreements

23  assigning Mattel all rights to intellectual property they created while employed by

24  Mattel.  Each of the three Mattel employees worked for MGA through Marlow, to

25  whom MGA and Bryant have paid millions of dollars since 2000.

26          96.  Following Marlow's December 2007 deposition, Ms. Cabrera

27  and Ms. Morales, who were still Mattel employees,  admitted to being paid for and

28  working on Bratz while Mattel employees and to knowing that such conduct was

2875224.1

-57-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00058

1  wrong.  Both specifically acknowledged that they continued to work on Bratz even

2  after Mattel had made them aware of this litigation involving Bryant's secret, illegal

3  work with MGA and had reiterated the need to protect Mattel's intellectual

4  property.  Both admitted that they tried to conceal their work for MGA.

5         97.  MGA and Larian knew that their bribery and use of Mattel

6  employees was wrongful and took steps to conceal that misconduct.  Among other

7  things:  (a) MGA and Larian, by and through their agents Peter Marlow and

8  Veronica Marlow, used devices such as paying the Mattel employees in cash and

9  using false names and false social security numbers in tax and other business

10  records; (b) MGA and Larian continued their acts of bribery and other misconduct

11  after this litigation was filed; (c) MGA and Larian failed to disclose their payments

12  to these Mattel employees despite Court Orders compelling them to disclose any

13  such instances; and (d) MGA and Larian hired Maria Elena Salazar after she left

14  Mattel, even though she specifically touted in her employment application to MGA

15  that she worked on the "first patterns for [the] Bratz doll and release;" and (e) in an

16  email from Peter Marlow to Larian and Paula Garcia of MGA dated June 20, 2005,

17  Marlow informed MGA that the pattern and sample makers "have secure day jobs

18  with an outlook of many more years of stability," they "moonlight" to work on

19  Bratz and "[t]hey have more than 100 years total of doll-making experience

20  between them."

21  **IX.  MGA PERSUADES OTHER EMPLOYEES LEAVING MATTEL TO**

22        **JOIN MGA TO MISAPPROPRIATE MATTEL TRADE SECRETS**

23        **FOR THE BENEFIT OF MGA**

24        98.  In the past few years, MGA has hired directly, or else induced to

25  secretly work for MGA while still Mattel employees, over 100 Mattel employees,

26  from Senior Vice-President level to lower level employees.  On information and

27  belief, many of these employees were specifically targeted and recruited by MGA,

28  including by Larian and Brawer, based on the Mattel confidential and proprietary

1   information they could access.  Many of these employees had access to proprietary

2   and confidential Mattel information.  Mattel believes that some of those former

3   Mattel employees may be observing their obligations not to misappropriate,

4   disclose or use Mattel's confidential and proprietary information.  Mattel is

5   informed and believes, however, that certain additional employees accessed, copied

6   and took from Mattel confidential and proprietary information, including Mattel's

7   strategic plans; business operations, methods and systems; marketing and

8   advertising strategies and plans; future product lines; product profit margins; and

9   customer requirements.  The misappropriated confidential and proprietary

10  information included information that these Mattel employees were not authorized

11  to access.  On information and belief, the misappropriated confidential and

12  proprietary information taken from Mattel is being disclosed to and used by MGA

13  for the benefit of MGA and to the detriment of Mattel.

14  **X.    LARIAN MAKES MISREPRESENTATIONS TO RETAILERS ABOUT**

15         **MATTEL'S PRODUCTS**

16         99.    Counter-defendants have engaged in other illegal practices in

17  their efforts to compete unfairly with Mattel.  Larian has a practice of sending e-

18  mail messages to a "Bratz News" distribution list that Larian created or that was

19  created for him.  Mattel is informed and believes that the recipients of e-mail

20  messages sent to the "Bratz News" distribution list include members of the media

21  as well as representatives of many of Mattel's most significant customers.

22         100.  On May 12, 2006, Larian sent an e-mail message to the "Bratz

23  News" distribution list that included a reference to Mattel's updated MY SCENE

24  MY BLING BLING product with real gems.  Mattel had not publicly announced

25  this product at the time that Larian sent his May 12, 2006 e-mail.  In fact, Mattel

26  had guarded the identification of this particular product.

27         101.  Shortly thereafter, Larian engaged in a campaign of calling

28  Mattel's most significant customers, including but not limited to Target and TRU,

TX 24885-00060

1   regarding the MY SCENE MY BLING BLING product with real gems.  In an

2   effort to dissuade these retailers from purchasing Mattel's MY SCENE MY BLING

3   BLING product with real gems, Larian knowingly made false factual statements

4   about that product to each retailer.  As of the writing of this Third Amended

5   Answer and Counterclaims, Mattel is aware that Larian represented to each retailer

6   that each was the only retailer to purchase the product and that Mattel would not be

7   supporting the product with television advertising.  At the time that Larian made

8   these statements, he knew them to be false.  As a result of Larian's

9   misrepresentations, at least one retailer cancelled its order for 75,000 units of the

10   MY SCENE MY BLING BLING product with real gems.  Only after Mattel

11   learned of Larian's misrepresentations and was able to correct them was Mattel able

12   to assure the retailer that Larian's representations were false and to persuade the

13   retailer to reinstate the order.

14         102.  Such conduct is not an isolated incident.  MGA and Larian, in an

15   effort to gain an unfair competitive advantage, repeatedly issued false and

16   misleading press releases and spread false rumors in the marketplace.  In these

17   press releases and in their other statements made in marketplace, MGA and Larian

18   have deliberately misrepresented Bratz's sales, Bratz's market share, Bratz's

19   position vis-à-vis Mattel's BARBIE products, sales of Mattel's BARBIE products

20   and the market share of Mattel's BARBIE products.

21   **XI.  LARIAN AND MGA DESTROY DOCUMENTS, ENGAGE IN**

22          **PERJURY, CONSPIRACY TO COMMIT PERJURY AND**

23          **OBSTRUCTION OF JUSTICE**

24         103.  On information and belief, Larian and MGA have themselves,

25   and through their agents and co-conspirators, destroyed, altered and fabricated

26   documents and engaged in other acts of spoliation to conceal the existence, nature

27   and breadth of their wrongful conduct.  For example, and without limitation,

28   Farhad Larian, a former MGA executive and director and Isaac Larian's brother,

TX 24885-00061

1   deliberately destroyed several boxes of documents relevant to Mattel's claims

2   against Bryant and MGA to keep them from Mattel.  Farhad Larian did so while

3   still on MGA's payroll.

4         104.  On information and belief, Larian and MGA have also conspired

5   to commit perjury and engaged in acts of perjury and other acts of obstruction in

6   connection with MGA's theft of Mattel's property and Mattel's claims relating

7   thereto.  These actions include, among others, MGA's submission of false

8   information in sworn applications to the U.S. Copyright Office; Larian's repeated

9   sworn testimony during Phase 1 that Bryant told him, and that Larian believed, that

10  Bryant had not created Bratz while employed by Mattel; MGA's and Larian's

11  submission of false statements regarding MGA's ability to receive outside funding

12  in court pleadings and false statements regarding its financial condition in this

13  action.

14  **XII. MGA AND LARIAN LAUNDER MONEY, ENGAGE IN**

15      **FRAUDULENT TRANSFERS AND ATTEMPT TO OBTAIN**

16      **PRIORITY OVER MATTEL'S CLAIMS**

17        105.  MGA and Larian have, on information and belief, engaged in a

18  complex scheme to transfer, launder or otherwise hide the ill-gotten funds they

19  have obtained by virtue of their unlawful conduct and have gone to extensive

20  lengths to cover up and obscure such activities.  On information and belief, this

21  scheme was orchestrated and/or commenced no later than 2007, but accelerated

22  during the pendency of trial, especially after the Jury's Phase 1A verdict in Mattel's

23  favor.  This scheme continues to this day and threatens to continue into the future.

24        106.  On information and belief, in concert with various co-

25  conspirators and shell companies controlled by them, acting on their behalf or in

26  which they have an interest, MGA and Larian have transferred or transported, or

27  caused to be transferred or transported, funds obtained through their unlawful

28  conduct in interstate commerce, including without limitation out of the United

2875224.1

-61-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00062

1   States.  At least some of these funds, on information and belief, were later returned

2   to the United States through shell entities that attempt to disguise not only the true

3   owners of the companies, but the origin and source of the funds as well.

4          107.  These entities have, on information and belief, funded further

5   wrongdoing by MGA and Larian, including the purported purchase, at a substantial

6   discount, of the note held by MGA's then-largest creditor, Wachovia.  By this

7   scheme, Larian and his co-conspirators sought to disguise their identities and to

8   obtain purported priority as an alleged secure creditor (rather than as a shareholder)

9   over Mattel's claims against MGA's assets.  On information and belief, MGA and

10  Larian conducted and participated in this scheme with the purpose of concealing

11  and manipulating their assets and liabilities and the appearance of their financial

12  condition in anticipation of their liability to Mattel, and for the purpose of

13  minimizing any exposure due to that liability.  The scheme has directly assisted

14  MGA and Larian in committing the other wrongs against Mattel identified herein.

15     **A.    Larian and MGA Create Various Shell and Off-Shore Entities**

16          108.  On information and belief, Larian and MGA and those acting in

17  concert with them have created, affiliated with, employed or purchased one or more

18  shell entities to either transfer or assist in the transfer of proceeds generated by their

19  unlawful conduct and the criminal enterprises.  These include, but are not limited

20  to, the following entities and transactions:

21     • Lexington Financial Limited, a Nevis Company ("Lexington"), a

22          company based in the Caribbean island nation of Nevis that is notorious

23          for its secrecy laws.  Lexington, whose purported London business

24          address listed in filings with the State of California is nothing more

25          than a virtual office provided by a London company for a few dollars a

26          month, appears to be a non-operating shell corporation.  Lexington was

27          registered on March 3, 2006 by persons who , on information and

28          belief, were acting on behalf of or in concert with Larian, and Larian

2875224.1

-62-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00063

1   and his co-conspirators used and continue to use Lexington to conceal,

2   receive,  hold and transfer funds generated by the wrongful conduct

3   alleged herein.

4   • Vision Capital, LLC, a Delaware limited liability company ("Vision

5   Capital"), which, on information and belief, was created by persons at

6   the direction or on behalf of Larian on August 19, 2008, just after the

7   Phase 1A verdict in Mattel's favor.  On information and belief, Larian

8   and his co-conspirators used and continue to use Vision Capital to

9   conceal, receive, hold and transfer funds generated by their wrongful

10   conduct alleged herein.

11   • Omni 808 Investors, LLC, a California limited liability corporation

12   ("Omni 808"), which, on information and belief, was created at the

13   direction or on behalf of Larian on August 12, 2008, just after the Phase

14   1A verdict in Mattel's favor.  On information and belief, Larian and his

15   co-conspirators used and continue to use Omni 808 to conceal, receive,

16   hold and transfer funds generated by their wrongful conduct alleged

17   herein.  In 2006, Neil Kadisha, the alleged CEO of Omni 808 and a

18   Larian co-conspirator, was found by a court after trial to be "no more

19   than a common thief" and was held liable for stealing millions of

20   dollars as part of a decade-long pattern of fraudulent conduct that

21   included perjury, subornation of perjury, fabrication of financial

22   records, sham transactions, preparation of back-dated documents,

23   fraudulent accountings, acts of looting, embezzlement and other

24   misappropriations of funds, breaches of fiduciary duty, conflicts of

25   interest and illegal self-dealing.

26       109.  Lexington claims a purported security interest in the assets of

27   Vision Capital.  Vision Capital claims a purported security interest in the assets of

28   Omni 808.

1       110.  MGA and Larian, and their co-conspirators, have, on information

2   and belief, used these entities to transfer their ill-gotten funds from the United

3   States and/or to move laundered funds back into the United States, including

4   without limitation in an attempt to obtain purported priority as an alleged secured

5   creditor over Mattel's claims and to deprive Mattel of assets to which it has a

6   legitimate claim.

7       111.  On information and belief, Lexington, Vision Capital and Omni

8   808 are alter-egos of each other, the companies being mere shells created and

9   operated pursuant to a fraudulent scheme as alleged herein, and with their financial

10   affairs being significantly intermingled and interconnected.

11       112.  On information and belief, Larian, either alone or with other co-

12   conspirators, formed or caused to be formed the alter-ego entity IGWT Group on

13   June 26, 2008—during the Phase 1 trial—and registered its place of business as

14   Larian's home address.  On information and belief, Larian, either alone or with

15   other co-conspirators, also formed or caused to be formed an affiliate alter-ego

16   entity called IGWT 826 Investments on August 27, 2008—the day after the Phase 1

17   trial ended.  IGWT 826 Investments is registered at the home address of Shirin

18   Makabi and Jahangir Eli Makabi.  Shirin Makabi is Isaac Larian's sister, Jahangir

19   Eli Makabi is Isaac Larian's brother-in-law, and both are shareholders or beneficial

20   shareholders of MGA through various trusts.

21   **B.     The Purported Acquisition of the Wachovia Debt**

22       113.  After the Phase 1A verdict, MGA and Larian represented on

23   multiple occasions to both this Court and the Ninth Circuit that MGA was in dire

24   financial straits and might file imminently for bankruptcy.  MGA and Larian

25   represented to the Court that MGA had not obtained and could not obtain credit (a

26   representation that MGA later was forced to retract as false).  At the same time

27   MGA's largest lender, Wachovia, accelerated over $313 million dollars worth of

28   debt that MGA owed it and triggered the lock-box provision of its loan agreements

TX 24885-00065

1   with MGA, which required the transfer to Wachovia of all, or substantially all, of

2   the revenue that MGA received.

3          114.   On information and belief, Larian and MGA, and their co-

4   conspirators, in order to maintain control over MGA's revenue and to frustrate the

5   jury's verdicts in Mattel's favor, determined to purchase the Wachovia note

6   through various entities affiliated with Larian or with MGA.  On information and

7   belief, Larian intended to use Lexington, Vision Capital and Omni 808 to distance

8   himself from the transaction and thereby conceal the true source of the funds used

9   to purportedly purchase the Wachovia note and to conceal that Larian in fact

10   participated in or controlled the acquisition of the debt, directly or indirectly.  On

11   information and belief, at Larian's urging and acting in concert with Larian, Omni

12   808 purportedly acquired the bulk of that debt at a massive discount.

13          115.   Omni 808 has represented to the Court that its claimed

14   acquisition of the Wachovia note was an arms-length business deal.  Omni 808 has

15   also represented to the Court that the funds used for the purported acquisition did

16   not originate from MGA or Larian.  Wachovia, however, recently produced

17   documents that undermine these claims and representations.  A July 29, 2008 offer

18   letter to Wachovia states that Larian would have a non-voting limited interest in the

19   loan acquisition.  And a Senior Promissory Note between MGA and Wachovia,

20   dated September 3, 2008, specifically identifies Omni 808 as an affiliate of MGA.

21          116.   Moreover, Vision Capital, which claims it holds a purported

22   security interest in Omni 808, is also affiliated with MGA.  Vision Capital has

23   listed its address as 1525 South Broadway, Los Angeles, California.  Mattel has not

24   been able to identify an active business named Vision Capital located there.  Mattel

25   did identify this as the location of Neman Brothers & Associates, a business owned

26   by Leon Neman, Larian's brother-in-law who has served as an MGA director.

27   After Mattel uncovered these facts, Mr. Neman claimed to be an alleged principal

28   of Vision Capital.

2875224.1

-65-
THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00066

117. On information and belief, the funds Omni 808 used to purportedly purchase the Wachovia note were, in whole or in part, generated by Larian's and MGA's wrongful conduct directed towards Mattel. On information and belief, Larian has used, at least in part, IGWT Group, IGWT 826 Investments, Lexington, Vision Capital and other shell and alter-ego companies as conduits to transfer funds to Omni 808 and to conceal the source of such funds.

118. MGA and Larian have now also admitted that Omni 808 provided additional funds to MGA beyond the Wachovia debt purchase, though MGA first denied that was the case. MGA and Omni 808 entered into a Secured Delayed Draw Demand Note on October 16, 2008. Pursuant to the terms of that Note, Omni 808 would make available up to $40 million of additional purported credit to MGA. Pursuant to a written request submitted by MGA on October 17, 2008, Omni 808 loaned MGA an additional $6 million under that Note. On information and belief, those funds also were, in whole or in part, generated by Larian's and MGA's wrongful conduct towards Mattel and transferred through Larian-controlled conduits to conceal the true source of the funds. In fact, the Secured Delayed Draw Demand Note between MGA and Omni 808 states that Omni 808's funding came, at least in part, from IGWT 826 Investments.

119. On information and belief, Omni 808's claimed acquisition of the Wachovia note was not an "arms-length" transaction by an independent investor or investors. Instead it was, on information and belief, an insider transaction facilitated by Larian and MGA through the use of nominally independent but affiliated entities, for the purpose of maintaining substantial control over MGA's revenues in the near term, continuing with their wrongful activities despite the jury's verdict against them and establishing purported priority as a secured creditor over Mattel's claims in any eventual bankruptcy. On information and belief, Larian participated and was involved in the purported

1   acquisition of MGA's debt, though the claimed acquisition was structured to

2   conceal it from Mattel.

3          120.   While the precise mechanisms by which Larian transferred funds

4   and manipulated MGA's and Larian's finances through these conduits is not yet

5   known to Mattel because such information is in the exclusive possession and

6   control of MGA, Larian and their co-conspirators, and they have refused to disclose

7   or misrepresented even basic information such as the alleged owners of the entities,

8   on information and belief Larian and his affiliates have created shell entities for the

9   purpose of obscuring and concealing the true ownership of assets held and origin of

10  funds transferred, while Larian and his family members and affiliates further have

11  engaged in a series of related-party transactions as part of a scheme to convert at

12  least tens of millions of dollars in MGA equity into debt.

13         121.   For example, according to an MGA Lender Update dated

14  November 1, 2007, in approximately August 2007, MGA made purported loans in

15  the amount of 2.5 million euros for investments in another toy company, called

16  Zapf, purportedly on behalf of Larian and his family.  Another 12 million euros

17  were due in November 2007, for which MGA was liable if Larian did not

18  contribute.  As shown in a Master Assignment and Exchange Agreement between

19  Omni 808, MGA, and MGA de Mexico and Wachovia and dated September 3,

20  2008, soon after the Phase 1A verdict and during the Phase 1B trial Larian and his

21  family members (including, without limitation, Jahangir Eli Makabi and Shirin

22  Larian Makabi as Co-Trustees of the Makabi Living Trust, Isaac Larian and Angela

23  Larian as Trustees of the Larian Living Trust, the Angela Larian Qualified Annuity

24  Trust, the Isaac E. Larian Qualified Annuity Trust, the Jahangir Eli Makabi

25  Qualified Annuity Trust, Jahangir Eli Makabi, and the Shirin Larian Makabi

26  Qualified Annuity Trust) executed a series of twenty-two separate transactions (on

27  August 4, 5, 8, 19, 25, 2008) which purported to transfer as loans by shareholders

28  over $13.3 million from U.S. based trust accounts to MGA Entertainment (HK)

2875224.1

-67-
THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00068

1    Limited.  Another series of twenty-two transfers (also on August 4, 5, 8, 19, 25,

2    2008) show that Larian and these same family members, MGA shareholders, have

3    also purported to loan nearly $6 million in funds to MGA.

4           C.      **Larian Loots MGA's Assets by Selling MGA Inventory to Himself**

5                   **at Fire Sale Prices**

6                   122.  On information and belief, Larian and MGA have transferred and

7    are continuing to transfer assets from MGA by coordinating the sale of significant

8    MGA inventory, at substantial discounts, to companies affiliated with Larian.

9    These transactions have had the effect of denuding MGA of its most valuable

10   inventory, sold to Larian's own companies for pennies on the dollar, while

11   permitting Larian to substantially benefit by reselling MGA's inventory, and while

12   further infringing Mattel's intellectual property.

13                  123.  On information and belief, Larian, through the Larian-controlled

14   IGWT entities, is purchasing Bratz products that infringe Mattel's rights and other

15   MGA products for steep discounts and reselling, distributing and offering for sale

16   such products.  MGA has admitted that it sold tens of millions of dollars in Bratz

17   inventory to IGWT entities at a "substantial discount."  Documents show that the

18   discount on this self-dealing transaction was in fact massive.

19                  124.  In May of 2008, when MGA was undergoing cash-flow

20   problems for reasons that included Larian's on-going de facto liquidation of MGA

21   assets, Larian arranged to have MGA purportedly sell vast amounts of MGA

22   inventory, including infringing Bratz products, to himself through the IGWT

23   Group.  As shown by an Inventory Purchase Agreement between MGA and IGWT

24   Group, dated July 7, 2008, MGA purportedly agreed to sell hundreds of thousands

25   of inventory items to Larian's IGWT Group.  This agreement was signed by Larian

26   on behalf of both MGA and IGWT Group.  Through this transaction, MGA sold

27   inventory with a retail value of more than $65 million for just $5.3 million.

28

2875224.1

-68-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

1       125.   MGA and Larian have claimed that the arrangement was to

2   MGA's benefit because the deal involved obsolete and overstock inventory.

3   However, as the Bill of Sale accompanying the agreement (which shows the SKUs

4   of the products IGWT Group purchased) shows, much of the inventory MGA sold

5   to IGWT Group was actually current inventory, including current Bratz products.

6       126.   The full extent of this and other transactions by which Larian has

7   arranged the substantially discounted sale of MGA assets to IGWT Group or other

8   Larian-controlled entities or affiliates is not yet known to Mattel because such

9   information is in the exclusive possession and control of MGA, Larian, the IGWT

10  entities and their co-conspirators, and they have refused to disclose information to

11  Mattel.  On information and belief, by arranging this type of transaction with

12  IGWT Group and other similar insider transactions yet unknown to Mattel, Larian

13  has siphoned significant MGA assets for his own personal benefit.  On information

14  and belief, the purported transaction with IGWT Group is only the most recent in a

15  series of insider arrangement facilitated by Larian, which, by May 16, 2008, led

16  Wachovia to conclude that Larian had engaged in a de-facto liquidation of MGA's

17  assets over the course of 2008 and other times.

18                      **CLAIMS FOR RELIEF**

19                      **First Counterclaim**

20                      **Copyright Infringement**

21           **(Against MGA, MGA Entertainment (HK) Limited,**

22              **Larian, Bryant and Does 4 through 10)**

23      127.   Mattel repeats and realleges each and every allegation set forth in

24  paragraphs 1 through 126, above, as though fully set forth at length.

25      128.   Mattel is the owner of copyrights in works that are fixed in

26  tangible media of expression and that are the subject of valid, and subsisting,

27  copyright registrations owned by Mattel.  These include, without limitation, the

28  works that are the subject of Registrations VA 1-378-648, VA 1-378-649, VA 1-

2875224.1

TX 24885-00070

1  378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-

2  378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-378-659, VA 1-

3  378-660, VAu 715-270, VAu 715-271 and VAu 715-273.  These also include,

4  without limitation, the works that are the subject of Registrations VAu 960-439,

5  VAu 964-304, VAu 964-306, VAu 964-308, VAu 964-309, VAu 964-310, VAu

6  964-311, VAu 964-315, VAu 964-318, VAu 964-319, VAu 964-320 and VAu 964-

7  321.

8        129.  Counter-defendants have reproduced, created derivative works

9  from and otherwise infringed upon the exclusive rights of Mattel in its protected

10  works without Mattel's authorization.  Counter-defendants' acts violate Mattel's

11  exclusive rights under the Copyright Act, including without limitation Mattel's

12  exclusive rights to reproduce its copyrighted works and to create derivative works

13  from its copyrighted works, as set forth in 17 U.S.C. §§ 106 and 501.

14        130.  Counter-defendants' infringement (and substantial contributions

15  to the infringement) of Mattel's copyrighted works is and has been knowingly made

16  without Mattel's consent and for commercial purposes and the direct financial

17  benefit of Counter-defendants.  Counter-defendants, moreover, have deliberately

18  failed to exercise their right and ability to supervise the infringing activities of

19  others within their control to refrain from infringing Mattel's copyrighted works

20  and have failed to do so in order to deliberately further their significant financial

21  interest in the infringement of Mattel's copyrighted works.  Accordingly, Counter-

22  defendants have engaged in direct, contributory and vicarious infringement of

23  Mattel's copyrighted works.

24        131.  By virtue of Counter-defendants' infringing acts, Mattel is

25  entitled to recover Mattel's actual damages plus Counter-defendants' profits,

26  Mattel's costs of suit and attorneys' fees, and all other relief permitted under the

27  Copyright Act.

28

2875224.1

-70-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00071

1    132.  Counter-defendants' actions described above have caused and

2   will continue to cause irreparable damage to Mattel, for which Mattel has no

3   remedy at law.  Unless Counter-defendants are restrained by this Court from

4   continuing their infringement of Mattel's copyrights, these injuries will continue to

5   occur in the future.  Mattel is accordingly entitled to injunctive relief restraining

6   Counter-defendants from further infringement.

7                    **Second Counterclaim**

8   **Violation of the Racketeer Influenced and Corrupt Organizations Act**

9              **18 U.S.C. §§ 1962(c) and 1964(c)**

10              **(Against All Counter-defendants)**

11    133.  Mattel repeats and realleges each and every allegation set forth in

12   paragraphs 1 through 132, above, as though fully set forth at length.

13    134.  Beginning at various times from approximately 1999 through the

14   filing of this Third Amended Answer and Counterclaims, in the Central District of

15   California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK)

16   Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and

17   Brawer, Trueba, Vargas, Castilla and Brisbois were employed by and associated-in-

18   fact with an enterprise engaging in, and the activities of which affect, interstate and

19   foreign commerce (the "MGA Criminal Enterprise").  The MGA Criminal

20   Enterprise is made up of the MGA Group (MGA, MGA Entertainment (HK)

21   Limited, MGA de Mexico, Larian, certain of the Doe Counter-defendants and

22   Brawer), the Bryant Group (Bryant and certain of the Doe Counter-defendants), the

23   Mexican Group (Machado, Trueba and Vargas) and the Canadian Group (Brisbois).

24    135.  In addition, beginning at various times from approximately 1999

25   through the filing of this Third Amended Answer and Counterclaims, in the Central

26   District of California and elsewhere, Counter-defendants MGA, MGA

27   Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-

28   defendants, were employed by and associated-in-fact with a second enterprise

2875224.1

-71-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00072

1  engaging in, and the activities of which affect, interstate and foreign commerce (the

2  "Bratz Criminal Enterprise").

3          136.  Further, beginning at least as early 2007, and through the filing

4  of this Third Amended Answer and Counterclaims, in the Central District of

5  California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK)

6  Limited and Larian, as well as IGWT Group, IGWT 826 Investments, Lexington,

7  Omni 808, Vision Capital, Leon Neman, Fred Mashian, Neil Kadisha, Jahangir Eli

8  Makabi, Shirin Larian Makabi, Angela Larian, The Makabi Living Trust, The

9  Larian Living Trust, The Angela Larian Qualified Annuity Trust, The Isaac E.

10  Larian Qualified Annuity Trust, The Jahangir Eli Makabi Qualified Annuity Trust,

11  The Shirin Larian Makabi Qualified Annuity Trust and certain of the Doe Counter-

12  defendants, and others acting in concert with or on behalf of the foregoing, were

13  employed by and associated-in-fact with another enterprise engaging in, and the

14  activities of which affect, interstate and foreign commerce (the "IGWT Criminal

15  Enterprise").

16          137.  MGA, MGA Entertainment (HK) Limited, MGA de Mexico,

17  Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas,

18  Brisbois, Castilla and the Other Former Employees, and each of them, for the

19  purpose of executing and attempting to execute the scheme to improperly defraud

20  Mattel and steal its trade secret or otherwise confidential and proprietary

21  information and infringe Mattel's rights and conceal such misconduct, by means of

22  tortious, fraudulent and criminal conduct, did and do unlawfully, willfully and

23  knowingly conduct and participate, directly and indirectly, in the conduct of the

24  MGA Criminal Enterprise's affairs and, in the case of MGA, MGA Entertainment

25  (HK) Limited, Larian, Bryant, and certain of the Doe Counter-defendants, the Bratz

26  Criminal Enterprise's affairs, through a pattern of racketeering activity.  Their

27  actions include multiple, related acts in violation of:  18 U.S.C. § 1341 (mail fraud),

28  18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1503 (influencing or injuring officer or

1    juror generally), 18 U.S.C. § 1512 (tampering with a witness victim, or informant),

2    18 U.S.C. § 1952 (interstate and foreign travel to aid racketeering), and 18 U.S.C. §

3    2319(a) and 17 U.S.C. § 506(a)(1)(A) (criminal copyright infringement).

4          138.   In addition, MGA, MGA Entertainment (HK) Limited, Larian,

5    IGWT Group, IGWT 826 Investments, Lexington, Omni 808, Vision Capital, Leon

6    Neman, Fred Mashian, Neil Kadisha, Jahangir Eli Makabi, Shirin Larian Makabi,

7    Angela Larian, The Makabi Living Trust, The Larian Living Trust, The Angela

8    Larian Qualified Annuity Trust, The Isaac E. Larian Qualified Annuity Trust, The

9    Jahangir Eli Makabi Qualified Annuity Trust, The Shirin Larian Makabi Qualified

10   Annuity Trust and Does 4 through 10, and each of them, for the purpose of

11   executing and attempting to execute the scheme to infringe Mattel's rights and

12   transfer, transport or launder the ill-gotten gains from their infringements and the

13   MGA and Bratz Criminal Enterprises' thefts and infringements, and secret MGA

14   assets and purportedly obtain priority over Mattel, by means of tortious, fraudulent,

15   and criminal conduct, did and do unlawfully, willfully, and knowingly conduct and

16   participate, directly and indirectly, in the conduct of the IGWT Criminal

17   Enterprise's affairs through a pattern of racketeering activity.  Their actions include

18   multiple, related acts in violation of:  18 U.S.C. § 1341 (mail fraud), 18 U.S.C.

19   § 1343 (wire fraud), 18 U.S.C. § 1952 (interstate and foreign travel to aid

20   racketeering), 18 U.S.C. § 152(7) (concealment of assets), 18 U.S.C. § 1956

21   (money laundering) and 18 U.S.C. § 1957 (use of unlawful funds) and 18 U.S.C. §

22   2319(a) and 17 U.S.C. § 506(a)(1)(A) (criminal copyright infringement).

23          139.   MGA, MGA Entertainment (HK) Limited, MGA de Mexico,

24   Larian, Bryant, Machado, Does 4 through 10, and the other members of the MGA

25   Criminal Enterprise, Bratz Criminal Enterprise and IGWT Criminal Enterprise, and

26   each of them, shared the common purpose of enabling MGA to defraud Mattel and

27   infringe its rights, and obtain confidential, proprietary and otherwise valuable

28   Mattel property through improper means, and conceal and transfer, transport or

2875224.1

-73-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

1  launder the ill-gotten gains from such misconduct, and secret MGA assets and

2  purportedly obtain priority over Mattel, in order to assist MGA in illegally

3  competing with Mattel domestically and throughout the world.

4          140.  The MGA Criminal Enterprise, Bratz Criminal Enterprise and

5  IGWT Criminal Enterprise as described herein are and have been at all relevant

6  times continuing enterprises.  The conduct of each enterprise continues through the

7  date of this Third Amended Answer and Counterclaims and is ongoing, including

8  by virtue of MGA's continuing use and infringement of Mattel's information,

9  property and rights, and its use of ill-gotten gains from such thefts, all to the

10  detriment of Mattel.  Said enterprises furthermore threaten to continue such

11  conduct into the future, to the detriment of Mattel.

12          141.  The pattern of racketeering activity, as defined by 18 U.S.C.

13  §§ 1961(1) and (5), presents both a history of criminal conduct and a distinct threat

14  of continuing criminal activity.  This activity consists of multiple acts of

15  racketeering by each member of the MGA Criminal Enterprise, Bratz Criminal

16  Enterprise and IGWT Criminal Enterprise, is interrelated, not isolated and is

17  perpetrated for the same or similar purposes by the same persons.  This activity

18  extends over a substantial period of time, up to and beyond the date of this Third

19  Amended Answer and Counterclaims.  These activities occurred after the effective

20  date of 18 U.S.C. §§ 1961 *et seq.,* and the last such act occurred within 10 years

21  after the commission of a prior act of racketeering activity.  These racketeering

22  activities included repeated acts of:

23        (a)   Mail Fraud:  Counter-defendants MGA, MGA Entertainment

24             (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, and

25             Does 4 through 10, as well as some or all other members of the

26             MGA and IGWT Criminal Enterprises, aided and abetted by each

27             other, having devised a scheme or artifice to defraud Mattel of its

28             confidential trade secret information and property by conversion,

TX 24885-00075

1  false representations, concealment and breaches of fiduciary duty,
2  and transfer, transport or launder the ill-gotten gains from such
3  thefts, and secret MGA assets and purportedly obtain priority
4  over Mattel, did for the purpose of furthering and executing such
5  a scheme or artifice to defraud, deposited or caused to be
6  deposited matters or things to be sent or delivered by the Postal
7  Service, or any private or commercial interstate carrier, or took or
8  received matters or things therefrom, or knowingly caused
9  matters or things to be delivered by mail or such carrier according
10  to the direction thereon, or at the place at which it is directed to
11  be delivered by the person to whom it is addressed, in violation of
12  18 U.S.C. § 1341 and 18 U.S.C. § 2, as alleged with greater
13  particularity in the foregoing paragraphs and as evidenced by,
14  among other acts of mail fraud, the true and correct copies of
15  communications and other evidence included in Exhibit C, D and
16  E;

17  (b)  Wire Fraud:  Counter-defendants MGA, MGA Entertainment
18  (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, and
19  Does 4 through 10, as well some or all other members of the
20  MGA and IGWT Criminal Enterprises, aided and abetted by each
21  other, having devised a scheme or artifice to defraud Mattel of its
22  confidential and trade secret information and property by
23  conversion, false representations, concealment and breaches of
24  fiduciary duty, and transfer, transport or launder the ill-gotten
25  gains from such thefts, and secret MGA assets and purportedly
26  obtain priority over Mattel, did for the purpose of furthering and
27  executing such a scheme or artifice to defraud, transmit and cause
28  to be transmitted by means of wire communications in interstate

TX 24885-00076

1     or foreign commerce, writing, signs, signals, pictures or sound, in

2     violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2, as alleged with

3     greater particularity in the foregoing paragraphs and as evidenced

4     by, among other acts of wire fraud, the true and correct copies of

5     communications and other evidence included in Exhibit C, D and

6     E;

7     (c)    Tampering With a Witness, Victim or Informant:  Counter-

8          defendants MGA, MGA Entertainment (HK) Limited, MGA de

9          Mexico, Larian, Bryant, Machado and Does 4 through 10, aided

10         and abetted by each other and some or all of the remaining

11         members of the MGA Criminal Enterprise, did corruptly alter,

12         destroy, mutilate, or conceal more than one record, document, or

13         other object, or attempted to do so, with the intent to impair the

14         object's integrity or availability for use in an official proceeding,

15         including this action, including without limitation by:

16             i.      altering Bryant's contract with MGA relating to

17         Bratz to conceal evidence that Bryant faxed the contract from the

18         BARBIE COLLECTIBLES department of Mattel, using a fax

19         machine owned by Mattel and while Bryant was employed by

20         Mattel;

21             ii.      altering numerous original Bratz drawings created

22         by Bryant by adding false and misleading date notations of

23         "8/1998" and "© 8/1998" to the drawings even though the

24         drawings were not created in August 1998; and

25             iii.      destroying electronic and other evidence, including

26         by destroying evidence previously contained on Carter Bryant's

27         and Isaac Larian's computer hard drives, and destroying or

28         causing to be destroyed evidence in possession of Farhad Larian;

TX 24885-00077

1            iv.    altering tax records and other business documents,

2    including by use of false names and false social security numbers,

3    to conceal the bribery of Mattel employees;

4            Such actions are in violation of 18 U.S.C. § 1512 and 18

5    U.S.C. § 2, as alleged with greater particularity in the foregoing

6    paragraphs;

7    (d)   Influencing or Injuring Officer or Juror Generally:  Counter-

8    defendants MGA, MGA Entertainment (HK) Limited, MGA de

9    Mexico, Larian, Bryant, Machado and Does 4 through 10, as well

10    as some or all of the remaining members of the MGA Criminal

11    Enterprise, aided and abetted by each other, did seek to corruptly

12    impede, obstruct or influence the due administration of justice,

13    including without limitation by:

14         i.    Larian's and MGA' submission of false information

15    in sworn applications to the U.S. Copyright Office and the U.S.

16    Patent Office;

17         ii.    Larian repeatedly giving false testimony during the

18    Phase 1 trial that Bryant told him (and that Larian believed) that

19    Bryant had not created Bratz while employed by Mattel;

20         iii.    Larian's and MGA's submission of false statements

21    regarding MGA's ability to receive outside funding and

22    numerous false statements regarding its financial condition in this

23    action;

24            Such actions are in violation of 18 U.S.C. § 1503 and 18

25    U.S.C. § 2, as alleged with greater particularity in the foregoing

26    paragraphs;

27    (e)   Interstate and Foreign Travel in Aid of Racketeering Enterprises:

28    Counter-defendants MGA, MGA Entertainment (HK) Limited,

TX 24885-00078

1   MGA de Mexico, Larian, Bryant, Machado and Does 4 through

2   10, as well as some or all of the remaining members of the MGA

3   Criminal Enterprise and IGWT Criminal Enterprise, aided and

4   abetted by each other, traveled in interstate and foreign

5   commerce, or used the mail or any facility in interstate or foreign

6   commerce, with the intent to promote, manage, establish, carry

7   on and facilitate the promotion, management, establishment and

8   carrying on of unlawful activity, *i.e.* bribery, in violation of the

9   laws of the State of California, *Cal. Penal Code* § 641.3, all in

10  violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2, as alleged with

11  greater particularity in the foregoing and following paragraphs;

12  money laundering in violation of 18 U.S.C. § 1956(a), as alleged

13  with greater particularity in the foregoing and following

14  paragraphs; and engaging in monetary transactions involving

15  property derived from unlawful activities in violation of 18

16  U.S.C. § 1957(a), as alleged with greater particularity in the

17  foregoing and following paragraphs;

18  (f)   Money Laundering:  Counter-defendants MGA, MGA

19  Entertainment (HK) Limited and Larian and Does 4 through 10,

20  as well as some or all of the remaining members of the MGA and

21  IGWT Criminal Enterprises, aided and abetted by each other,

22  willfully engaged in financial transactions which were intended to

23  conceal or disguise the nature, the location, the source, the

24  ownership, or the control of the ill-gotten proceeds of their

25  criminal activities or were intended to further promote the

26  carrying on of their criminal activities, all in violation of 18

27  U.S.C. § 1956(a), as alleged with greater particularity in the

28  foregoing paragraphs;

2875224.1

-78-
THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00079

1        (g)   <u>Engaging in Monetary Transactions in Property Derived from</u>

2              <u>Unlawful Activity</u>:  Counter-defendants MGA, MGA

3              Entertainment (HK) Limited, Larian, and Does 4 through 10, as

4              well as some or all of the remaining members of the MGA and

5              IGWT Criminal Enterprises, aided and abetted by each other,

6              willfully engaged in monetary transactions in criminally derived

7              property of a value greater than $10,000 derived from their

8              unlawful criminal activities, all in violation of 18 U.S.C. §

9              1957(a), as alleged with greater particularity in the foregoing

10             paragraphs;

11       (h)   <u>Concealment of Assets</u>:  Counter-defendants MGA, MGA

12             Entertainment (HK) Limited, Larian, and Does 4 through 10, as

13             well as some or all of the remaining members of the MGA and

14             IGWT Criminal Enterprises, aided and abetted by each other,

15             willfully sought to transfer or conceal property, and/or concealed,

16             destroyed, mutilated, falsified or made false entries in recorded

17             information relating to such property, in contemplation of a

18             bankruptcy proceeding, all in violation of 18 U.S.C. § 152(7) &

19             (8), as alleged with greater particularity in the foregoing

20             paragraphs;

21       (i)   <u>Criminal Copyright Infringement</u>: Counter-defendants MGA,

22             MGA Entertainment (HK) Limited, MGA de Mexico, Larian,

23             Bryant, Machado and Does 4 through 10, as well as some or all

24             other members of the MGA and IGWT Criminal Enterprises,

25             aided and abetted by each other, willfully infringed and continue

26             to willfully infringe Mattel's copyrights, including without

27             limitation with respect to documents containing Mattel trade

28             secret and confidential information and Bratz works created by

TX 24885-00080

1     Bryant and others while Mattel employees, for purposes of

2     commercial advantage and private financial gain, all in violation

3     of 18 U.S.C. § 2319(a) and 17 U.S.C. § 506(a)(1)(A), as alleged

4     with greater particularity in the foregoing paragraphs.

5    142.  The persons alleged herein to have violated 18 U.S.C. § 1962(c)

6 are separate from, though employed by or associated with, MGA, the MGA Group,

7 the Bryant Group, the Mexican Group and the Canadian Group.

8    143.  MGA had a role in the racketeering activity that was distinct

9 from the undertaking of those acting on its behalf.  MGA also attempted to benefit,

10 and did benefit, from the activity of its employees and agents alleged herein, and

11 thus was not a passive victim of racketeering activity, but an active perpetrator.

12    144.   Mattel has been injured in its business or property as a direct

13 and proximate result of the Counter-defendants' and the other enterprise members'

14 violations of 18 U.S.C. § 1962(c), including injury by reason of the predicate acts

15 constituting the pattern of racketeering activity.

16    145.  As a result of the violations of 18 U.S.C. § 1962(c), by MGA,

17 MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado,

18 Does 4 through 10, Brawer, Trueba, Vargas, Brisbois, Castilla and the Other

19 Former Employees, and IGWT Group, IGWT 826 Investments, Lexington, Omni

20 808, Vision Capital, Leon Neman, Fred Mashian, Neil Kadisha, Jahangir Eli

21 Makabi, Shirin Larian Makabi, The Makabi Living Trust, The Larian Living Trust,

22 The Angela Larian Qualified Annuity Trust, The Isaac E. Larian Qualified Annuity

23 Trust, The Jahangir Eli Makabi Qualified Annuity Trust and The Shirin Larian

24 Makabi Qualified Annuity Trust, Mattel has suffered substantial damages, in an

25 amount to be proved at trial.  Pursuant to 18 U.S.C. § 1964(c), Mattel is entitled to

26 recover treble its general and special compensatory damages, plus interest, costs

27 and attorneys, fees, incurred by reason of Counter-defendants' violations of 18

28 U.S.C. § 1962(c).

-80-

TX 24885-00081

**Third Counterclaim**

**Conspiracy To Violate the Racketeer**

**Influenced And Corrupt Organizations Act**

**(18 U.S.C. §§ 1962(d) and 1964(c))**

**(Against All Counter-defendants)**

146. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 145, above, as though fully set forth at length.

147. Beginning at various times from approximately 1999 through the filing of this Third Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois, Castilla and the Other Former Employees willfully, knowingly and unlawfully, did conspire, combine, confederate and agree together to violate 18 U.S.C. § 1962(c).

148. These conspirators were employed by and associated-in-fact with the MGA Criminal Enterprise engaging in, and the activities of which affect, interstate and foreign commerce. Specifically, the MGA Group, the Bryant Group, the Mexican Group and the Canadian Group, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the MGA Criminal Enterprise's affairs through a pattern of racketeering activity. In addition, MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the Bratz Criminal Enterprise's affairs through a pattern of racketeering activity.

149. Beginning at least as early as 2007 through the filing of this Third Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited,

TX 24885-00082

1    MGA de Mexico, Larian, and Does 4 through 10, and IGWT Group, IGWT 826

2    Investments, Lexington, Omni 808, Vision Capital, Leon Neman, Fred Mashian,

3    Neil Kadisha, Angela Larian, Jahangir Eli Makabi, Shirin Larian Makabi, The

4    Makabi Living Trust, The Larian Living Trust, The Angela Larian Qualified

5    Annuity Trust, The Isaac E. Larian Qualified Annuity Trust, The Jahangir Eli

6    Makabi Qualified Annuity Trust and The Shirin Larian Makabi Qualified Annuity

7    Trust, willfully, knowingly and unlawfully, did conspire, combine, confederate and

8    agree together to violate 18 U.S.C. § 1962(c).

9           150.   These conspirators were employed by and associated-in-fact with

10   the IGWT Criminal Enterprise engaging in, and the activities of which affect,

11   interstate and foreign commerce.  Specifically, MGA, MGA Entertainment (HK)

12   Limited, Larian, and IGWT Group, IGWT 826 Investments, Lexington, Omni 808,

13   Vision Capital, Leon Neman, Fred Mashian, Neil Kadisha, Jahangir Eli Makabi,

14   Shirin Larian Makabi, Angela Larian, The Makabi Living Trust, The Larian Living

15   Trust, The Angela Larian Qualified Annuity Trust, The Isaac E. Larian Qualified

16   Annuity Trust, The Jahangir Eli Makabi Qualified Annuity Trust, The Shirin Larian

17   Makabi Qualified Annuity Trust and certain of the Doe Counter-defendants,

18   constituting a group of individuals associated-in-fact, did unlawfully, willfully, and

19   knowingly participate in and conduct, directly and indirectly, the IGWT Criminal

20   Enterprise's affairs through a pattern of racketeering activity.

21          151.   The pattern of racketeering activity, as defined by 18 U.S.C.

22   §§ 1961(1) and (5), includes acts of mail fraud in violation of 18 U.S.C. § 1341 and

23   18 U.S.C. § 2; acts of wire fraud in violation of 18 U.S.C. § 1343 and 18 U.S.C.

24   § 2; conspiracy to commit perjury and acts of influencing or injuring officer or

25   juror generally in violation of 18 U.S.C. § 1503 and 18 U.S.C. § 2; acts of

26   tampering with witnesses, victims or informants in violation of 18 U.S.C. § 1512

27   and 18 U.S.C. § 2; acts of interstate and foreign travel in aid of racketeering

28   enterprises in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2; acts of unlawful

2875224.1

-82-

TX 24885-00083

1    concealment of assets in violation of 18 U.S.C. § 152(7) & (8); acts of money

2    laundering in violation of 18 U.S.C. § 1956; acts of engaging in monetary

3    transactions in property derived from unlawful activities in violation of 18 U.S.C.

4    § 1957; and acts of criminal copyright infringement in violation of 18 U.S.C.

5    § 2319(a) and 17 U.S.C. § 506(a)(1)(A).

6            152.  Counter-defendants and the other members of the MGA Criminal

7    Enterprise schemed to improperly defraud Mattel and steal its trade secret or

8    otherwise confidential and proprietary information and infringe Mattel's rights and

9    conceal such misconduct, as more fully set forth in the foregoing paragraphs.

10   Further, counter-defendants and the other members of the IGWT Criminal

11   Enterprise schemed to infringe Mattel's rights and transfer, transport or launder the

12   ill-gotten gains from their infringements and the MGA and Bratz Criminal

13   Enterprises' thefts and infringements, and secret MGA assets and purportedly

14   obtain priority over Mattel, as more fully set forth in the foregoing paragraphs.

15           153.  In furtherance of this unlawful conspiracy, and to effect its

16   objectives, Counter-defendants and various co-conspirators committed numerous

17   overt acts, including but not limited to those set forth in the foregoing paragraphs.

18           154.  Mattel has been injured in its business or property as a direct and

19   proximate result of the Counter-defendants' and the other enterprise members'

20   violations of 18 U.S.C. § 1962(d), including injury by reason of the predicate acts

21   constituting the pattern of racketeering activity.

22           155.  As a result of the conspiracies between and among all Counter-

23   defendants and the other conspirators to violate 18 U.S.C. § 1962(c), Mattel has

24   suffered substantial damages, in an amount to be proved at trial.  Pursuant to 18

25   U.S.C. § 1964(c), Mattel is entitled to recover treble its general and special

26   compensatory damages, plus interest, costs and attorneys, fees, incurred by reason

27   of Counter-defendants' violations of 18 U.S.C. § 1962(d).

28

TX 24885-00084

### **Fourth Counterclaim**

**Misappropriation of Trade Secrets**

***(Cal. Civ. Code § 3426 et seq.)***

**(Against Counter-defendants MGA, MGA de Mexico,**

**Larian, Machado and Does 4 through 10)**

156.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 155, above, as though fully set forth at length.

157.  As used herein, "Trade Secret Material" shall mean the documents, materials and information stolen by Machado, Trueba, Vargas, Brisbois, Castilla, the Other Former Employees, and other persons acting for, on behalf of or at the direction of MGA and/or Larian.  Prior to their theft by Counter-defendants, the Trade Secret Materials gave Mattel a significant competitive advantage over its existing and would-be competitors, including MGA.  This advantage, as to MGA, has now been compromised as a result of Counter-defendants' unlawful activities.

158.  Mattel made reasonable efforts under the circumstances to maintain the confidentiality of the Trade Secret Materials, including by having employees and consultants who may have access the Trade Secret Materials sign confidentiality agreements that oblige them not to disclose the Trade Secret Materials or characteristics of the Trade Secret Materials; by limiting the circulation of said materials within Mattel; by protecting and limiting access to computers with log-in identifications and passwords; by limiting each employee's access to electronic files to those that the particular employee needs to access; by educating employees on the nature of Mattel's information that is confidential and proprietary; and by reminding employees on a regular and periodic basis of their obligation to protect and maintain Mattel's confidential and proprietary information.

2875224.1

-84-

TX 24885-00085

1       159.  Mattel's Trade Secret Materials derive independent economic

2   value from not being generally known to the public or to other persons who can

3   obtain economic benefit from their disclosure.

4       160.  Counter-defendants have illegally obtained the trade secret

5   materials, as set forth above, and through other means of which Mattel is presently

6   unaware.

7       161.  Counter-defendants have used and disclosed Mattel's Trade

8   Secret Materials without Mattel's consent and without regard to Mattel's rights, and

9   without compensation, permission, or licenses for the benefit of themselves and

10  others.

11      162.  Counter-defendants' conduct was, is, and remains willful and

12  wanton, and was taken with blatant disregard for Mattel's valid and enforceable

13  rights.

14      163.  Counter-defendants' wrongful conduct has caused and, unless

15  enjoined by this Court, will continue in the future to cause irreparable injury to

16  Mattel.  Mattel has no adequate remedy at law for such wrongs and injuries.  Mattel

17  is therefore entitled to a permanent injunction restraining and enjoining Counter-

18  defendants, and each of them, as well as their agents, servants, and employees, and

19  all persons acting thereunder, in concert with, or on their behalf, from further using

20  in any manner Mattel's trade secrets.

21      164.  In addition, as a proximate result of Counter-defendants'

22  misconduct, Mattel has suffered actual damages, and Counter-defendants have been

23  unjustly enriched.

24      165.  The aforementioned acts of the Counter-defendants were willful

25  and malicious, including in that Counter-defendants misappropriated Mattel's trade

26  secrets with the deliberate intent to injure Mattel's business and improve their own.

27  Mattel is therefore entitled to enhanced damages.  Mattel is also entitled to

28  reasonable attorney's fees.

TX 24885-00086

**Fifth Counterclaim**

**Breach of Contract**

**(Against Bryant)**

166.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 165, above, as though fully set forth at length.

167.  Pursuant to his Employment Agreement, Bryant agreed that he would not, without Mattel's express written consent, engage in any employment or business other than for Mattel or assist in any manner any business competitive with the business or future business plans of Mattel during his employment with Mattel.  Pursuant to his Mattel Employment Agreement, Bryant further assigned to Mattel all right, title and interest in "inventions," including without limitation "designs" and other works that he conceived, created or reduced to practice during his employment by Mattel.  In addition, pursuant to the Conflict Questionnaire, Bryant certified that, other than as disclosed, he had not worked for any competitor of Mattel and had not engaged in any business venture or transaction involving a Mattel competitor that could be construed as a conflict of interest.  Bryant further promised that he would notify his supervisor immediately of any change in his situation that would cause him to change any of the foregoing certifications or representations.

168.  The Employment Agreement and the Conflict Questionnaire are valid, enforceable contracts, and Mattel has performed each and every term and condition of the Employment Agreement and Conflict Questionnaire required to be performed by Mattel.

169.  Bryant materially breached the foregoing contracts with Mattel, in that, among other things, he secretly aided, assisted and worked for a Mattel competitor during his employment with Mattel without the express written consent of Mattel.

1    170.  As a consequence of Bryant's breach, Mattel has suffered and

2  will, in the future, continue to suffer damages in an amount to be proven at trial.

3  Such damages include, without limitation, the amounts paid by the competitor to

4  Bryant during his Mattel employment; the amounts paid by MGA to Bryant during

5  his Mattel employment; the amount that Mattel paid Bryant during the time he

6  wrongfully worked with MGA; the value of information and intellectual property

7  owned by Mattel which Bryant provided to MGA; the value of the benefits that

8  MGA obtained from Bryant during the time he was employed by Mattel; and the

9  value of the benefits that MGA obtained from Bryant as a result of the work he

10  performed for or with MGA during his Mattel employment.

11    171.  Bryant's conduct has caused, and unless enjoined will continue to

12  cause, irreparable injury to Mattel that cannot be adequately compensated by

13  money damages and for which Mattel has no adequate remedy at law.  Bryant

14  specifically acknowledged in his Employment Agreement that his breach of the

15  Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be

16  entitled to injunctive relief to enforce this Agreement, in addition to damages and

17  other available remedies."  Accordingly, Mattel is entitled to orders mandating

18  Bryant's specific performance of his contracts with Mattel and restraining Bryant

19  from further breach.

20                      **Sixth Counterclaim**

21              **Intentional Interference with Contract**

22          **(Against MGA, Larian and Does 4 through 10)**

23    172.  Mattel repeats and realleges each and every allegation set forth in

24  paragraphs 1 through 171, above, as though fully set forth at length.

25    173.  Valid agreements existed between Mattel and the Mattel

26  employees who MGA induced to steal or was complicit in stealing Mattel trade

27  secrets and other proprietary and confidential information and who MGA bribed or

28  induced to work for or assist MGA while Mattel employees (collectively, the

2875224.1

-87-
THIRD AMENDED ANSWER AND COUNTERCLAIMS

1  "Mattel Employees"), including without limitation Bryant, Brawer, Machado,

2  Trueba, Vargas, Brisbois, Castilla, Cabrera, Morales, Salazar, and the Other Former

3  Employees.

4       174.  At all times herein mentioned, MGA, Larian and Does 4 through

5  10 knew that the Mattel Employees had a duty under their agreements not to work

6  for or assist any competitor of Mattel, such as MGA.  In addition, at all times

7  mentioned herein, MGA, Larian and Does 4 through 10 knew that Bryant had

8  assigned to Mattel, and was obligated to disclose to Mattel all inventions, including

9  designs and other works, created, conceived or reduced to practice during their

10  employment with Mattel.

11       175.  Despite such knowledge, Counter-defendants MGA, Larian and

12  Does 4 through 10 intentionally and without justification solicited, induced and

13  encouraged the Mattel Employees to breach their contracts with Mattel.

14       176.  As a direct and proximate result of Counter-defendants' efforts

15  and inducements, the Mattel Employees did breach their contracts with Mattel.

16       177.  As a result of said breaches, Mattel has suffered damages and

17  will imminently suffer further damages, including the loss of its competitive

18  position and lost profits, in an amount to be proven at trial.

19       178.  Counter-defendants performed the aforementioned conduct with

20  malice, fraud and oppression, and in conscious disregard of Mattel's rights.

21  Accordingly, Mattel is entitled to recover exemplary damages from Counter-

22  defendants in an amount to be determined at trial.

23       **Seventh Counterclaim**

24       **Breach of Fiduciary Duty**

25       **(Against Bryant and Machado)**

26       179.  Mattel repeats and realleges each and every allegation set forth in

27  paragraphs 1 through 178, above, as though fully set forth at length.

28

2875224.1

-88-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00089

1    180. Bryant and Machado held positions of trust and confidence with

2    Mattel.  In their positions, Bryant and Machado had access to and were entrusted

3    with Mattel's proprietary and confidential information, supervised the work of

4    others, exercised discretion and worked independently in many of their job

5    assignments and duties.  In their positions, Bryant and Machado also represented

6    Mattel in its dealings with third parties and, in actions in the course and scope of

7    their employment with Mattel, were agents of Mattel.  They confirmed their

8    relationship of trust with Mattel in respective employee agreements.  Bryant and

9    Machado thus owed Mattel a fiduciary duty that included, but was not limited to,

10   an obligation not to take any action that would be contrary to Mattel's best interests

11   or that would deprive Mattel of any opportunities, profit or advantage which Bryant

12   or Machado might bring to Mattel.

13   181. Bryant breached his fiduciary duty to Mattel in that, while

14   employed by Mattel, he secretly aided and assisted a competitor of Mattel,

15   including without limitation by entering into an agreement with a Mattel

16   competitor.  As alleged above, Bryant also breached the aforementioned duty by

17   using Mattel property and resources for the benefit of, and to aid and assist, himself

18   personally and MGA.

19   182. Machado breached his fiduciary duty to Mattel, in that while

20   employed by Mattel, he secretly aided and assisted a competitor of Mattel by,

21   among other things, misappropriating Mattel trade secret and proprietary

22   information and providing said information to officers of MGA.  Machado also

23   breached the aforementioned duty by using Mattel property and resources for the

24   benefit of, and to aid and assist, himself personally and MGA.

25   183. As a direct and proximate result of Counter-defendants' wrongful

26   conduct, Mattel has incurred damages in an amount to be determined at trial.

27   184. Counter-defendants acted with malice, fraud and oppression, and

28   in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to an

2875224.1

-89-
THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00090

1   award of exemplary damages against Counter-defendants in an amount to be

2   determined at trial.

3        185.   Furthermore, Counter-defendants' conduct has caused, and unless

4   enjoined will continue to cause, irreparable injury to Mattel that cannot be

5   adequately compensated by money damages and for which Mattel has no adequate

6   remedy at law.   Accordingly, Mattel is entitled to an order restraining further

7   breach of Bryant's fiduciary duty to Mattel and/or restraining Counter-defendants

8   from continuing to benefit from such breach.

9   **Eighth Counterclaim**

10   **Aiding and Abetting Breach of Fiduciary Duty**

11   **(Against MGA, Larian and Does 4 through 10)**

12        186.   Mattel repeats and realleges each and every allegation set forth in

13   paragraphs 1 through 185, above, as though fully set forth at length.

14        187.   At all times herein mentioned, MGA, Larian and Does 4 through

15   10 knew that Bryant held a position of trust and confidence at Mattel.   At all times

16   herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant owed a

17   fiduciary duty to Mattel not to take any action that would be contrary to Mattel's

18   best interests, including but not limited to secretly developing and designing Bratz

19   while employed by Mattel and by secretly assisting Larian and MGA .

20        188.   At all times herein mentioned, MGA, Larian and Does 4 through

21   10 knew that the Mattel Employees (excluding Bryant) held positions of trust and

22   confidence at Mattel.   At all times herein mentioned, MGA, Larian and Does 4

23   through 10 knew that the Mattel Employees (excluding Bryant) owed a fiduciary

24   duty to Mattel not to take any action that would be contrary to Mattel's best

25   interests, including but not limited to taking confidential trade secret information

26   from Mattel's premises and providing that information to a competitor.

27        189.   Despite such knowledge, Counter-defendants MGA, Larian and

28   Does 4 through 10 intentionally and without justification solicited, encouraged,

2875224.1

-90-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00091

1   aided and abetted and gave substantial assistance to the Mattel Employees to breach

2   their fiduciary duties to Mattel, knowing that their conduct would constitute

3   breaches of their fiduciary duties to Mattel.

4          190.  As a direct and proximate result of Counter-defendants' efforts,

5   the Mattel Employees did breach their fiduciary duties to Mattel and Mattel has

6   incurred damages in an amount to be proven at trial.  Mattel, therefore, is entitled to

7   recover compensatory damages in an amount to be determined at trial.

8          191.  In taking the aforesaid actions, MGA, Larian and Does 4 through

9   10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's

10  rights.  Accordingly, Mattel is entitled to recover exemplary damages from

11  Counter-defendants in an amount to be determined at trial.

12  **Ninth Counterclaim**

13  **Breach of Duty of Loyalty**

14  **(Against Bryant and Machado)**

15         192.  Mattel repeats and realleges each and every allegation set forth in

16  paragraphs 1 through 191, above, as though fully set forth at length.

17         193.  As employees of Mattel, Bryant and Machado owed a duty of

18  undivided loyalty to Mattel.  Pursuant to this duty, Bryant and Machado could not

19  compete with Mattel or assist a competitor of Mattel during their employment with

20  Mattel.  Pursuant to this duty, Bryant and Machado were required to always give

21  preference to Mattel's business over their own, similar interests during the course of

22  their employment with Mattel.

23         194.  Bryant and Machado breached their duty of loyalty to Mattel in

24  that, while employed by Mattel, they secretly aided, assisted and worked for a

25  competitor of Mattel, including without limitation by entering into agreements with

26  a Mattel competitor.  As alleged above, they also breached the aforementioned duty

27  by using Mattel property and resources for the benefit of, and to aid and assist,

28  themselves personally and the competitor of Mattel.

TX 24885-00092

1  195.  As a direct and proximate result of Counter-defendants' wrongful

2  conduct, Mattel has incurred damages in an amount to be determined at trial.

3  196.  Counter-defendants acted with malice, fraud and oppression, and

4  in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to an

5  award of punitive damages against Counter-defendants in an amount to be

6  determined at trial.

7  197.  Furthermore, Counter-defendants' conduct has caused, and unless

8  enjoined will continue to cause, irreparable injury to Mattel that cannot be

9  adequately compensated by money damages and for which Mattel has no adequate

10  remedy at law.  Accordingly, Mattel is entitled to an order restraining further

11  breach of Counter-defendants' duty of loyalty to Mattel and/or restraining Counter-

12  defendants from continuing to benefit from such breach.

13  198.  In breaching their duty of loyalty to Mattel, Bryant and Machado

14  acted with malice, fraud and oppression, and in conscious disregard of Mattel's

15  rights.  Accordingly, Mattel is entitled to recover exemplary damages from

16  Counter-defendants in an amount to be determined at trial.

17  **Tenth Counterclaim**

18  **Aiding and Abetting Breach of Duty of Loyalty**

19  **(Against MGA, Larian and Does 4 through 10)**

20  199.  Mattel repeats and realleges each and every allegation set forth in

21  paragraphs 1 through 198, above, as though fully set forth at length.

22  200.  MGA, Larian and Does 4 through 10 knew that Bryant, as an

23  employee of Mattel, owed a duty of loyalty to his employer.  MGA, Larian and

24  Does 4 through 10 knew that this duty included an obligation on the part of Bryant

25  not to compete with Mattel or assist a competitor of Mattel during the term of his

26  employment with Mattel.  MGA, Larian and Does 4 through 10 also knew that

27  Bryant was required to give preference to Mattel's business over his own, similar

28

TX 24885-00093

1   interests or those of Mattel's competitors. or those of Mattel's competitors during

2   the course of his employment with Mattel.

3        201. MGA, Larian and Does 4 through 10 knew that the Mattel

4   Employees (excluding Bryant) were employed by Mattel, and, as employees of

5   Mattel, that they owed duties of loyalty to Mattel. MGA, Larian and Does 4

6   through 10 knew that these duties included an obligation on the part of the Mattel

7   Employees (excluding Bryant) not to compete with Mattel or assist a competitor of

8   Mattel during their Mattel employment.

9        202. Despite such knowledge, Counter-defendants MGA, Larian and

10   Does 4 through 10 intentionally and without justification solicited, encouraged,

11   aided and abetted and gave substantial assistance to the Mattel Employees to

12   breach their duties of loyalty to Mattel, knowing that their conduct would constitute

13   breaches of their duties of loyalty to Mattel.

14        203. As a further consequence of Counter-defendants' efforts, Mattel

15   has suffered injury and is entitled to compensatory damages in an amount to be

16   proven at trial.

17        204. In taking the aforesaid actions, MGA, Larian and Does 4 through

18   10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's

19   rights. Accordingly, Mattel is entitled to recover exemplary damages from

20   Counter-defendants in an amount to be determined at trial.

21   **Eleventh Counterclaim**

22   **Conversion**

23   **(Against All Counter-defendants)**

24        205. Mattel repeats and realleges each and every allegation set forth in

25   paragraphs 1 through 204, above, as though fully set forth at length.

26        206. Counter-defendants wrongfully converted Mattel property and

27   resources by appropriating and using them for their own benefit and gain and for

28   the benefit and gain of others, without the permission of Mattel.

2875224.1

-93-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00094

1  207.  Mattel was entitled to, among other things, the exclusive right

2 and enjoyment in property and tangible materials owned by Mattel, including

3 without limitation such proper and materials that were created by Bryant while he

4 was a Mattel product designer.  Such property was taken by Bryant from Mattel to

5 further his own interests and, in at least some instances, provided by Bryant to

6 Larian and MGA in furtherance of the interests of Bryant, Larian and MGA.

7  208.  In addition, Counter-defendants wrongfully converted Mattel's

8 property by removing the Trade Secret Materials in electronic and paper form from

9 Mattel's offices.  Counter-defendants did so without Mattel's permission and

10 continue to possess them.

11  209.  As a direct and proximate result of Counter-defendants' wrongful

12 conversion of Mattel property, including those relating to Bratz and Mattel's Trade

13 Secret Materials, Mattel has incurred damages.  Mattel, therefore, is entitled to

14 recover compensatory damages in an amount to be determined at trial.

15  210.   As a result of Counter-defendants' acts of conversion, Mattel is

16 entitled to damages in an amount sufficient to indemnify Mattel for the loss

17 suffered, which is not measured by the value of the property misappropriated, but

18 includes the lost profits that Mattel suffered as a result of the conversion or,

19 alternatively, the profits generated by the Counter-defendants that would not have

20 been generated but for the conversion.  Only such a measure of damages would

21 fully and fairly compensate Mattel for the injury it suffered due to Counter-

22 defendants' acts of conversion.

23  211.  Counter-defendants performed the aforementioned conduct with

24 malice, fraud and oppression, and in conscious disregard of Mattel's rights.

25 Accordingly, Mattel is entitled to recover exemplary damages from Counter-

26 defendants in an amount to be determined at trial.

27  212.  Furthermore, Counter-defendants' conduct has caused, and unless

28 enjoined will continue to cause, irreparable injury to Mattel that cannot be

2875224.1

-94-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00095

1  adequately compensated by money damages and for which Mattel has no adequate

2  remedy at law.  Accordingly, Mattel is entitled to an order restraining Counter-

3  defendants from further conversion of Mattel property and resources and/or

4  restraining Counter-defendants from continuing to benefit from such conversion.

**Twelfth Counterclaim**

**Unfair Competition**

**(Common Law and *Cal. Bus. & Prof. Code* § 17200)**

**(Against All Counter-defendants)**

9  213.  Mattel repeats and realleges each and every allegation set forth in

10 paragraphs 1 through 212, above, as though fully set forth at length.

11 214.  Section 17200 of the California Business and Professions Code

12 prohibits unfair competition, including "any unlawful, unfair or fraudulent business

13 act or practice . . . ."

14 215.  By engaging in the foregoing conduct, Counter-defendants have,

15 individually and in combination, engaged in unlawful, unfair and/or fraudulent acts

16 of unfair competition in violation of both the common law of the state of California

17 and *Cal. Bus. & Prof. Code* § 17200 *et seq.*  Such conduct included, without

18 limitation, MGA's commercial bribery of Bryant in violation of *Cal. Penal Code*

19 § 641.3 and misappropriation of trade secrets in violation of 18 U.S.C. § 1832(a).

20 Such conduct also included, without limitation, MGA's and Larian's disparagement

21 of Mattel's products and misrepresentations as alleged above.

22 216.  As a result of the aforementioned conduct, Mattel has suffered

23 damages and will imminently suffer further damages, including but not limited to

24 lost profits in an amount to be proven at trial.  No adequate remedy at law exists for

25 the wrongs and injuries Mattel has suffered and will continue to suffer, and Mattel

26 is entitled to an injunction enjoining Counter-defendants' continued wrongful acts.

27 Mattel is also entitled to recover compensatory and exemplary damages pursuant to

28 the doctrine of common law unfair competition and *Cal. Civ. Code* § 3294.

2875224.1

TX 24885-00096

## Thirteenth Counterclaim

### Avoidance of Intentional and Constructive Fraudulent Transfers Under

### Uniform Fraudulent Transfer Act

### (Common Law and *Cal. Civil Code* §§ 3439 *et seq.*)

### (Against MGA and Larian)

217. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 216, above, as though fully set forth at length.

218. Mattel is a creditor of MGA and Larian, and his alter-egos, because Mattel has substantial claims against MGA and Larian, including but not limited to claims that have already resulted in a jury verdict in this action in Mattel's favor. *Cal. Civil Code* § 3439.01(b), (c).

219. After Mattel's claims had been asserted and continuing until the Phase 1A verdict and dates thereafter, MGA and Larian engaged in fraudulent transfers, *Cal. Civ. Code* § 3439.01(i), 3439.04, 3439.05, including, without limitation, by transferring tens of millions of dollars of Bratz inventory from MGA to the Larian-controlled IGWT Group. These transfers were at massive discounts, and on information and belief MGA did not receive reasonably equivalent value for the Bratz inventory that it transferred.

220. On information and belief, and based on the foregoing, these fraudulent transfers were made with actual intent to hinder, delay, and/or defraud MGA's and Larian's creditor, Mattel.

221. MGA has represented that it was on the verge of filing bankruptcy. If true, on information and belief at the time of the transfers MGA was unable to pay its debts as they became due and was engaged in a transaction, or was about to engage in a business, for which its remaining assets were unreasonably small, and MGA was insolvent. On information and belief, MGA intended to incur, or believed or reasonably should have believed it would incur, debts beyond its ability to pay as they became due.

THIRD AMENDED ANSWER AND COUNTERCLAIMS

2875224.1

TX 24885-00097

1    222.  By virtue of the foregoing, MGA's and Larian's fraudulent

2    transfers, including without limitation the transfers of Bratz inventory to the IGWT

3    Group, should be avoided, the transferred assets and their proceeds, including

4    without limitation the Bratz inventory and/or and the proceeds of the sales of any

5    Bratz inventory by IGWT Group, should be restored to MGA and attached, and

6    injunctions should issue against any further fraudulent transfers and against any

7    disposition of the transferred assets and/or their proceeds, pursuant to *Cal. Civil*

8    *Code* § 3439.07.

9                        **Fourteenth Counterclaim**

10                        **Declaratory Relief**

11                    **(Against All Counter-defendants)**

12    223.  Mattel repeats and realleges each and every allegation set forth in

13    paragraphs 1 through 222, above, as though fully set forth at length.

14    224.  As shown in the foregoing paragraphs above, an actual

15    controversy exists between Mattel and Counter-defendants regarding Counter-

16    defendants' lack of ownership interests in Bratz and Mattel's rights in the same.

17    225.  Accordingly, Mattel seeks a declaration of the Court that

18    Counter-defendants have no valid or protectable ownership rights or interests in

19    Bratz, and that Mattel is the true owner of the same, and further seeks an

20    accounting and imposition of a constructive trust over Bratz, including without

21    limitation registrations and applications for registrations relating thereto made or

22    filed by Counter-defendants and third parties, and over all revenues and other

23    monies or benefits derived or obtained from MGA's and Bryant's purported

24    ownership, use, sale, distribution and licensing of Bratz.

25    226.  Mattel seeks a declaration of the Court that any and all

26    agreements between Bryant and/or any other individuals then-employed by Mattel,

27    on the one hand, and MGA, on the other hand, in which Bryant or any of them

28    purport to assign to MGA any right, title or interests in any work or properties that

TX 24885-00098

1   they conceived, created or reduced to practice while Mattel employees, including

2   but not limited to the Bratz designs, is void and of no effect, including without

3   limitation because Bryant and/or any other such individuals had previously

4   assigned said right, title or interest to Mattel and because Mattel was otherwise the

5   owner of said right, title or interest.

**Prayer for Relief**

7      WHEREFORE, Mattel respectfully requests judgment:

8         1.   For a declaration that Counter-defendants have no valid or

9   protectable ownership interests or rights in Bratz designs, works or properties

10  conceived, made, created or reduced to practice by Bryant during the term of his

11  Mattel employment and/or by any others then-employed by Mattel, as well as in all

12  derivatives prepared therefrom, and that Mattel is the true owner of the foregoing;

13        2.   For a declaration that any agreement between Bryant and/or by

14  any others then-employed by Mattel, on the one hand, and MGA or any person or

15  entity, on the other hand, in which Bryant or such others then-employed by Mattel

16  purported to assign any right, title or interests in any work or properties that they

17  conceived, made, created or reduced to practice while employed by Mattel,

18  including but not limited to the Bratz designs, is void and of no effect;

19        3.   For an Order enjoining and restraining Counter-defendants, their

20  agents, servants and employees, and all persons in active concert or participation

21  with them, from further wrongful conduct, including without limitation from

22  imitating, copying, distributing, importing, displaying, preparing derivatives from

23  and otherwise infringing Mattel's copyright-protected works;

24        4.   For an Order, pursuant to 17 U.S.C. § 503(a) and other

25  applicable law, impounding all of Counter-defendants' products and materials that

26  infringe Mattel's copyrights, as well as all plates, molds, matrices and other articles

27  by which copies of the works embodied in Mattel's copyrights may be reproduced

28  or otherwise infringed;

2875224.1

-98-

THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00099

5.    For an Order mandating that Counter-defendants return to Mattel all tangible items, documents, designs, diagrams, sketches or any other memorialization of inventions conceived, created, made or reduced to practice during Bryant's employment with Mattel as well as all Mattel property converted by Counter-defendants;

6.    For an Order mandating specific performance by Bryant to comply with and satisfy Bryant's contractual obligations to Mattel;

7.    That Mattel be awarded, and Counter-defendants be ordered to disgorge, all payments, revenues, profits, monies and royalties and any other benefits derived or obtained as a result of the conduct alleged herein, including without limitation of all revenues and profits attributable to Counter-defendants' infringement of Mattel's copyrights under 17 U.S.C. § 504;

8.    For an accounting of all profits, monies and/or royalties from the exercise of ownership, use, distribution, sales and licensing of Bratz;

9.    For the imposition of a constructive trust over Bratz, including without limitation registrations and applications for registrations relating thereto made or filed by Counter-defendants and third parties, and all profits, monies, royalties and any other benefits derived or obtained from Counter-defendant's exercise of ownership, use, sale, distribution and licensing of Bratz;

10.    That Mattel recover its actual damages and lost profits;

11.    That Counter-defendants be ordered to pay exemplary damages in a sum sufficient to punish and to make an example of them, and deter them and others from similar wrongdoing;

12.    That Counter-defendants be ordered to pay treble its general and special damages, plus interest, costs and attorney's fees incurred by reason of Counter-defendants' violations of 18 U.S.C. §§ 1962(c)-(d).

THIRD AMENDED ANSWER AND COUNTERCLAIMS

2875224.1

TX 24885-00100

1    13.   That Counter-defendants be ordered to pay double damages due

2  to their willful and malicious misappropriation of Mattel's trade secrets with

3  deliberate intent to injure Mattel's business and improve its own;

4    14.   That Counter-defendants pay to Mattel the full cost of this action

5  and Mattel's attorneys' and investigators' fees;

6    15.   For an Order that Larian is liable for all wrongs of his agents,

7  alter-egos or others committed on his behalf;

8    16.   That Counter-defendants' fraudulent transfers, including their

9  transfers of Bratz inventory, be avoided and set aside; the transferred assets and

10  their proceeds be restored to MGA and attached; and Counter-defendants be

11  enjoined against any further fraudulent transfers and any disposition of the

12  transferred assets and/or their proceeds; and

13    17.   That Mattel have such other and further relief as the Court may

14  deem just and proper.

15

16  DATED:  April 8, 2009          QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP

17

18                                  By /s/ John B. Quinn _____
                                        John B. Quinn
19                                      Attorneys for Defendant and Counter-
                                        claimant Mattel, Inc.
20

21

22

23

24

25

26

27

28

2875224.1

-100-
THIRD AMENDED ANSWER AND COUNTERCLAIMS

TX 24885-00101

1

**DEMAND FOR JURY TRIAL**

2

3          Mattel, Inc. respectfully requests a jury trial on all issues triable

4    thereby.

5

6    DATED:  April 8, 2009                QUINN EMANUEL URQUHART OLIVER &
                                          HEDGES, LLP
7

8                                         By /s/ John B. Quinn
                                             _____
9                                            John B. Quinn
                                             Attorneys for Defendant and Counter-
10                                           claimant Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TX 24885-00102