# EXHIBIT E
# Part 1 of 2

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
      John B. Quinn (Bar No. 90378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
4  Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
5  Facsimile:  (213) 443-3100

6  Attorneys for Mattel, Inc.

7

8                      UNITED STATES DISTRICT COURT

9                      CENTRAL DISTRICT OF CALIFORNIA

10  MATTEL, INC., a Delaware          CASE NO. CV 04-9049 DOC (RNBx)
    corporation,
11                                    Consolidated with
              Plaintiff,             Case No. CV 04-09059
12                                    Case No. CV 05-02727
         vs.
13                                    MATTEL, INC.'S FOURTH AMENDED
    MGA ENTERTAINMENT, INC., a        ANSWER IN CASE NO. 05-2727 AND
14  California corporation, et al.,    COUNTERCLAIMS FOR:

15            Defendants.             1.  VIOLATION OF THE
                                          RACKETEER INFLUENCED AND
16                                        CORRUPT ORGANIZATIONS
                                          ACT;
17  AND CONSOLIDATED CASES           2.  CONSPIRACY TO VIOLATE THE
                                          RACKETEER INFLUENCED AND
18                                        CORRUPT ORGANIZATIONS
                                          ACT;
19                                   3.  MISAPPROPRIATION OF TRADE
                                          SECRETS;
20                                   4.  COPYRIGHT INFRINGEMENT;
                                     5.  BREACH OF CONTRACT;
21                                   6.  INTENTIONAL INTERFERENCE
                                          WITH CONTRACT;
22                                   7.  BREACH OF FIDUCIARY DUTY;
                                     8.  AIDING AND ABETTING
23                                        BREACH OF FIDUCIARY DUTY;
                                     9.  BREACH OF DUTY OF
24                                        LOYALTY;

25                                          **PUBLIC REDACTED**

26

27

28

00505.07975/3437282.1

MATTEL'S FOURTH AMENDED ANSWER AND COUNTERCLAIMS

CONFORMED

FILED
2010 APR 12  PM 2:56
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

TX 24886-00001

1

2

3

4

5

6

7

8

9

10

10. AIDING AND ABETTING BREACH OF DUTY OF LOYALTY;
11. CONVERSION;
12. UNFAIR COMPETITION;
13. AVOIDANCE OF ACTUAL FRAUDULENT TRANSFERS;
14. AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS;
15. PROHIBITED DISTRIBUTIONS;
16. BREACH OF CONSTRUCTIVE TRUST; AND
17. DECLARATORY RELIEF

DEMAND FOR JURY TRIAL

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S FOURTH AMENDED ANSWER AND COUNTERCLAIMS

TX 24886-00002

## **FOURTH AMENDED ANSWER**

Defendant Mattel, Inc. ("Mattel") answers the Complaint of MGA Entertainment, Inc. ("Complaint") as follows:

### Preliminary Statement

The Complaint in this case contravenes <u>Rule</u> 8(a) of the <u>Federal Rules of Civil Procedure</u> in multiple respects.  For example, in many places, the Complaint improperly mixes factual averments with argumentative rhetoric.  The Complaint also includes a selective recitation of alleged historical facts and "rumor," much of which is both irrelevant and inflammatory in tone and content.  In addition, many of the allegations of the Complaint are overly broad, vague or conclusory and include terms which are undefined and which are susceptible to different meanings.  Accordingly, by way of a general response, all allegations are denied unless specifically admitted, and any factual averment admitted is admitted only as to the specific facts and not as to any conclusions, characterizations, implications or speculations which are contained in the averment or in the Complaint as a whole.  These comments and objections are incorporated, to the extent appropriate, into each numbered paragraph of this Fourth Amended Answer.

Mattel further submits that the use of the headings throughout the Complaint is improper, and therefore no response to them is required.  In the event that a response is required, Mattel denies those allegations.

The Complaint also contains many purported photographs of various items, and it uses one or more headings purporting to describe, either individually or in groups, these various photographs.  The images of these photographs contained in the Complaint are all relatively small and some are of less than optimal quality, making it difficult to evaluate the adequacy of the photographs or their fairness and accuracy in depicting what they purport to represent.  The Complaint also does not describe the circumstances or time frame in which these photographs were taken, and in many cases does not identify, or does not sufficiently or properly identify, the

1   item depicted in the photographs.  All of these factors, as well as the use of these

2   photographs and headings out of context, or with an insufficient context, impair the

3   ability of Mattel to fully respond to these photographs and headings, or to any

4   purported allegations involving, or relying upon, the use of such photographs and

5   accompanying headings.  By way of a general response, Mattel therefore does not

6   admit the authenticity of any photograph, or the accuracy or adequacy of any

7   heading, nor does it admit any allegation or inference that is based on, or purports to

8   be based on, any photograph or accompanying heading in the Complaint.  Mattel

9   reserves the right to challenge the authenticity of any photograph and the accuracy

10  or adequacy of any heading (either as included in the Complaint or in the context of

11  additional material not included).  Further, with reference to all photographs and

12  accompanying headings, or any averments based on the Complaint's use of such

13  photographs and headings, which might be offered into evidence, Mattel specifically

14  reserves its right to object to any use of such photographs, headings, and averments,

15  or the Complaint as a whole or in part, in evidence for any purpose whatsoever.

16          To the extent that Mattel has endeavored to answer any particular

17  allegation containing any such photographs and headings, any admission concerning

18  the item purported to be depicted in such photograph, or described in such headings,

19  shall not constitute an admission that the photograph is authentic, adequate, or

20  admissible, nor that any heading is accurate, adequate, or admissible.  All such items

21  purportedly depicted in such photographs, and described in such headings, "speak

22  for themselves."  Accordingly, to the extent that any such referenced materials are

23  deemed allegations against Mattel, they are denied.

24                              <u>Responses</u>

25      1.      Answering paragraph 1 of the Complaint, Mattel admits that

26  plaintiff MGA Entertainment, Inc. ("plaintiff" or "MGA") is a California

27  corporation with a principal place of business in Van Nuys, California.

28

1   2. Answering paragraph 2 of the Complaint, Mattel admits that

2 Mattel is a Delaware corporation with a principal place of business in El Segundo,

3 California.

4   3. Answering paragraph 3 of the Complaint, Mattel denies that

5 there has been wrongful conduct on its part and states that it is without knowledge

6 or information sufficient to form a belief as to the truth or falsity of the remaining

7 allegations set forth therein and, on that basis, denies them.

8   4. Answering paragraph 4 of the Complaint, Mattel admits that

9 plaintiff purports to assert claims under the Lanham Act, 15 U.S.C. §§ 1125(a) and

10 (c), California Business and Professions Code §§ 17200 *et seq.*, California Business

11 and Professions Code § 14330 and California common law, denies that plaintiff is

12 entitled to any relief thereunder and denies the truth of the remaining allegations set

13 forth in paragraph 4.

14   5. Answering paragraph 5 of the Complaint, Mattel admits that it is

15 subject to personal jurisdiction in this District and denies the truth of the remaining

16 allegations set forth in paragraph 5.

17   6. Answering paragraph 6 of the Complaint, Mattel admits that

18 venue is proper in this District and denies the truth of the remaining allegations set

19 forth in paragraph 6.

20   7. Answering paragraph 7 of the Complaint, Mattel admits that

21 MGA has filed the instant lawsuit and denies the truth of the remaining allegations

22 set forth in paragraph 7.

23   8. Answering paragraph 8 of the Complaint, Mattel states that it is

24 without knowledge or information sufficient to form a belief as to the truth or falsity

25 of the allegations regarding MGA's history set forth therein and, on that basis,

26 denies them, states that MGA has made conflicting representations, including in

27 sworn statements, that are at odds with the allegations of the Complaint and denies

28 the truth of the remaining allegations set forth in paragraph 8.

1           9.    Answering paragraph 9 of the Complaint, Mattel admits that

2    MGA filed this action, states that Mattel's web site and corporate governance

3    policies speak for themselves and denies the truth of the remaining allegations set

4    forth in paragraph 9.

5           10.    Answering paragraph 10 of the Complaint, Mattel admits that it

6    is the world's most successful toy company, states that the first doll in its BARBIE

7    line was publicly introduced in 1959 and that BARBIE-branded dolls have been the

8    world's best-selling toys, states that Mattel's sales and stock price speak for

9    themselves, and denies the truth of the remaining allegations set forth in paragraph

10   10.

11          11.    Answering paragraph 11 of the Complaint, Mattel admits that

12   Adrienne Fontanella is the former president for girls' toys at Mattel, states that it is

13   without knowledge or information sufficient to form a belief as to the truth or falsity

14   of the allegations regarding an alleged statement by Ms. Fontanella, and denies the

15   truth of the remaining allegations set forth in paragraph 11.

16          12.    Answering paragraph 12 of the Complaint, Mattel is without

17   knowledge or information sufficient to form a belief as to the truth or falsity of the

18   allegations regarding alleged statements by unidentified "analysts," states that

19   Mattel's sales and stock price speak for themselves, and denies the truth of the

20   remaining allegations set forth in paragraph 12.

21          13.    Answering paragraph 13 of the Complaint, Mattel admits that Jill

22   Barad became President and Chief Executive Officer of Mattel in January 1997, that

23   Mattel acquired Tyco Industries, Inc. ("Tyco") in March 1997, that Mattel acquired

24   Pleasant Company in 1998, Mattel acquired the Learning Company in May 1999,

25   that Mattel acquired Purple Moon in 1999, that the MATCHBOX brand was owned

26   by Tyco, that the AMERICAN GIRL line of dolls was made by Pleasant Company

27   at the time of that entity's acquisition, and denies the truth of the remaining

28   allegations set forth in paragraph 13.

TX 24886-00006

14.    Answering paragraph 14 of the Complaint, Mattel states that its public announcements speak for themselves, and denies the truth of the remaining allegations set forth therein.

15.    Answering paragraph 15 of the Complaint, Mattel states that its stock price and its public announcements speak for themselves, and denies the truth of the remaining allegations set forth therein.

16.    Answering paragraph 16 of the Complaint, Mattel states that its stock price speaks for itself, states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the alleged views of unnamed "analysts" and "[i]nvestors," and denies the truth of the remaining allegations set forth therein.

17.    Answering paragraph 17 of the Complaint, Mattel admits that Ms. Barad resigned in February 2000.

18.    Answering paragraph 18 of the Complaint, Mattel admits that Robert Eckert became Chairman and Chief Executive Officer of Mattel in May 2000 and that Mr. Eckert previously was employed at Kraft Foods, Inc. for 23 years, is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the views of unnamed "[i]nvestors" and others, and denies the truth of the remaining allegations set forth in paragraph 18.

19.    Answering paragraph 19 of the Complaint, Mattel admits that the *Wall Street Journal* published an article on August 10, 2000, the content of which speaks for itself, and denies the truth of the remaining allegations set forth therein.

20.    Answering paragraph 20 of the Complaint, Mattel admits that it disposed of the Learning Company in October 2000, states that its sales and revenues speak for themselves, states that the remainder of the allegations contained therein are characterizations, not factual assertions, and therefore no response is necessary under Fed. R. Civ. P. 8(b) and, to the extent any further response is required, denies the truth of any remaining allegations set forth in paragraph 20.

21.    Answering paragraph 21 of the Complaint, Mattel admits that products in plaintiff's "Bratz" line compete with products in Mattel's BARBIE and other product lines and states that the remainder of the allegation contained therein—consisting of a sentence fragment—is unintelligible and on that basis denies the truth of any such remaining allegation set forth therein.

22.    Answering paragraph 22 of the Complaint, Mattel admits that products in plaintiff's "Bratz" line compete with Mattel products, states that the remainder of the allegations contained therein are characterizations, not factual assertions, and that therefore no response is necessary under Fed. R. Civ. P. 8(b) and, to the extent any further response is required, denies the truth of any remaining allegations set forth therein.

23.    Answering paragraph 23 of the Complaint, Mattel states that MGA has made conflicting statements, including in sworn statements, that are inconsistent with the allegations set forth in paragraph 23 of the Complaint and states that it is therefore without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth therein and, on that basis, denies them.

24.    Answering paragraph 24 of the Complaint, Mattel states that the "look" of the referenced dolls speak for themselves and denies the truth of the remaining allegations set forth therein.  By way of further answer, Mattel states that the photographs and their accompanying caption on page 7 of the Complaint are false and misleading to the extent they are intended to suggest that MGA has produced or used a consistent packaging shape or look or that it has protectible rights in the matters depicted in the photographs.

25.    Answering paragraph 25 of the Complaint, Mattel admits that Bratz dolls are between approximately 9.5 to 10 inches in height, states that the appearances of the dolls speak for themselves, denies that "Bratz" dolls are or "were intentionally shorter" than dolls in Mattel's BARBIE line, denies that the "Bratz"

TX 24886-00008

1  dolls "looked like no other" and denies the truth of the remaining allegations set

2  forth in paragraph 25.

3          26.     Answering paragraph 26 of the Complaint, Mattel states that the

4  use of the term "classic" is unintelligible, since Mattel has designed and sold

5  different dolls using different heads and with different fashions and themes over the

6  years, and denies the truth of any remaining allegations.  By way of further answer,

7  Mattel states that the image encaptioned "Mattel's 'Barbie'" on page 8 of the

8  Complaint is misleading in that it depicts one of the doll heads that have been used

9  as part of the BARBIE line for many years, and therefore ignores that Mattel has

10 long designed and sold an array of different BARBIE line dolls that use different

11 doll heads, including doll heads which depict different ethnicities, and that are

12 dressed in different clothing and fashion styles.

13         27.     Answering paragraph 27 of the Complaint, Mattel admits that

14 MGA has used the line "The Girls With a Passion for Fashion" in some contexts,

15 denies that MGA originated or otherwise has rights to that phrase, admits that one

16 audience for products in the "Bratz" line has been "tweens" and denies the truth of

17 the remaining allegations set forth in paragraph 27.

18         28.     Answering paragraph 28 of the Complaint, Mattel admits that

19 certain "Bratz" dolls have won certain awards, the terms of which speak for

20 themselves, states that it is without knowledge or information sufficient to form a

21 belief as to the truth or falsity of the allegations regarding the "awards" MGA claims

22 and, on that basis, denies them, denies that plaintiff has protectible rights and denies

23 the truth of any remaining allegations set forth in paragraph 28.

24         29.     Answering paragraph 29 of the Complaint, Mattel admits that

25 dolls in the "Bratz" line compete with dolls in Mattel product lines, denies that

26 Mattel has or has ever had a "stranglehold" on any market, states that the market

27 allegations contained in paragraph 29 are vague and ambiguous, including without

28 limitation in that the allegations fail to specify what products among the parties'

1  respective lines are being referred to and what time period is being referred to, and

2  denies the truth of any remaining allegations set forth in paragraph 29.

3     30. Answering paragraph 30 of the Complaint, Mattel admits that

4  MGA has been a licensee of Mattel, states that the market allegations are vague and

5  ambiguous, including without limitation in that the allegations fail to specify what

6  products are being referred to and what time periods or points in time are being

7  referred to, and states that the remainder of the allegations contained therein are

8  characterizations, not factual assertions, and therefore no response is necessary

9  under Fed. R. Civ. P. 8(b) and, to the extent any further response is required, denies

10  the truth of any remaining allegations set forth in paragraph 30.

11     31. Answering paragraph 31 of the Complaint, Mattel states that the

12  allegations contained therein are characterizations, not factual assertions, and

13  therefore no response is necessary under Fed. R. Civ. P. 8(b) and, to the extent any

14  further response is required, denies the truth of the allegations set forth in paragraph

15  31.

16     32. Answering paragraph 32 of the Complaint, Mattel denies the

17  truth of the allegations set forth therein.

18     33. Answering paragraph 33 of the Complaint, Mattel denies the

19  truth of the allegations set forth therein.

20     34. Answering paragraph 34 of the Complaint, Mattel states that it

21  has released various MY SCENE dolls, including MY SCENE dolls named

22  "Madison", "Chelsea" and "Barbie," states that the appearance of the Bratz and MY

23  SCENE dolls speak for themselves, denies that Mattel designed its MY SCENE

24  dolls to "evoke" or resemble the alleged "look" of "Bratz" dolls, denies that plaintiff

25  has protectible rights, states that MGA has made conflicting representations that are

26  at odds with the allegations of the Complaint and that it is therefore without

27  knowledge or information sufficient to form a belief as to the truth or falsity of the

28  allegations regarding the "launch" of Bratz dolls set forth therein and, on that basis,

1   denies them, and denies the truth of the remaining allegations set forth therein.  By

2   way of further answer, Mattel states that the photographs and their accompanying

3   captions on page 10 of the Complaint are misleading and false to the extent they are

4   intended to suggest that a particular Mattel doll has been changed over time as

5   purportedly depicted.  Among other things, Mattel has long designed and sold an

6   array of different BARBIE line dolls using different doll heads, and the photographs

7   encaptioned "Mattel's Traditional 'Barbie'" is one of the doll heads that has been

8   used, and continues to be used, as part of the BARBIE line.  In addition, the

9   photographs encaptioned MY SCENE doll "circa 2002" is, in fact, a Mattel doll

10  character called BARBIE that continues to be sold and/or marketed with that head,

11  and the photographs encaptioned MY SCENE doll "circa 2004" depict a MY

12  SCENE doll character separate and apart from the one depicted in the "circa 2002"

13  image (and is not a revised character as plaintiff apparently attempts to imply).

14        35.    Answering paragraph 35 of the Complaint, Mattel admits that

15  Mattel released a product line called FLAVAS, states that the appearance of the

16  FLAVAS dolls speaks for themselves, states that it is without knowledge or

17  information sufficient to form a belief as to the truth or falsity of the allegations

18  regarding the  "rumor" relied upon by plaintiff and the undefined "media"

19  purportedly quoting Isaac Larian and, on that basis, denies them, denies that Mattel

20  has abandoned the FLAVAS line, and denies the truth of the remaining allegations

21  set forth in paragraph 35.

22        36.    Answering paragraph 36 of the Complaint, Mattel denies the

23  truth of the allegations set forth therein.

24        37.    Answering paragraph 37 of the Complaint, Mattel denies the

25  truth of the allegations set forth therein.  By way of further answer, Mattel states that

26  the unnumbered photographs and their accompanying captions on pages 11 through

27  16 of the Complaint – which apparently were included to purportedly support the

28  allegation that MY SCENE dolls "became 'Bratz,'" which allegation Mattel

1  specifically denies -- are false and misleading.  Among other things, the heads

2  depicted are among an array of different doll heads that Mattel has used, and

3  continues to use, over the course of many years.  Moreover, the images purport to

4  compare different Mattel doll lines to show alleged changes in appearance even

5  though, in fact, each of the heads are currently sold and/or marketed to the public.

6  The "Blonde" series of photographs encaptioned "original" and "recent" MY

7  SCENE is further and specifically misleading in that it purports to compare two

8  differently named and outfitted dolls in the MY SCENE doll line, both of which

9  continue to be sold and/or marketed.

10        38.    Answering paragraph 38 of the Complaint, Mattel states that the

11  phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein,

12  denies that MGA was the originator of or the first to use the eye shape or makeup

13  depicted as purportedly constituting "the 'BRATZ' eye," denies that Mattel has

14  copied the "the 'BRATZ' eye" and denies the truth of the remaining allegations

15  contained in paragraph 38.  By way of further answer, Mattel states that the

16  unnumbered photographs and accompanying caption on page 13 of the Complaint

17  are false and misleading.  Among other things, the purported "Original Mattel 'My

18  Scene' Eye" is one of the eye and makeup designs that Mattel has used over the

19  course of many years, and Mattel continues to sell and/or market dolls using the eye

20  and makeup design depicted therein.

21        39.    Answering paragraph 39 of the Complaint, Mattel states that the

22  phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein,

23  denies that MGA was the originator of or the first to use the eye shape or makeup

24  purportedly described as constituting "the 'BRATZ' eye," denies that Mattel has

25  copied the "the 'BRATZ' eye," states that the relevant dolls speak for themselves and

26  denies the truth of the remaining allegations contained in paragraph 39.  By way of

27  further answer, Mattel states that the unnumbered photographs and accompanying

28  captions on page 14 of the Complaint are false and misleading.  Among other things,

TX 24886-00012

1  the purported "New Mattel 'My Scene' Eye" is one of the eye and makeup designs

2  that Mattel has used over the course of many years, and Mattel continues to sell

3  and/or market dolls using the eye and makeup design depicted on page 14 of the

4  Complaint.

5        40.    Answering paragraph 40 of the Complaint, Mattel denies the

6  truth of the allegations therein.  By way of further answer, Mattel states that the

7  unnumbered photographs and their accompanying captions on pages 15 to 16 are

8  false and misleading.  Among other things, the heads depicted are among an array of

9  different doll heads that Mattel has used, and continues to use, over the course of

10  many years.  Moreover, the photographs purport to compare different Mattel doll

11  lines to show alleged changes in appearance even though, in fact, each of the heads

12  are currently sold and/or marketed to the public.  The "Blonde" series of

13  photographs encaptioned "original" and "recent" MY SCENE is further and

14  specifically misleading in that it purports to compare two differently named and

15  outfitted dolls in the MY SCENE doll line, both of which continue to be sold and/or

16  marketed.

17        41.    Answering paragraph 41 of the Complaint, Mattel denies the

18  truth of the allegations set forth therein.

19        42.    Answering paragraph 42 of the Complaint, Mattel admits that the

20  photographs purport to depict two packages that were, among others, part of the MY

21  SCENE line, state that the packages speak for themselves and denies the truth of any

22  remaining allegations set forth therein.

23        43.    Answering paragraph 43 of the Complaint, Mattel admits that the

24  photograph purports to depict one of the packages that were, among others, part of

25  the MY SCENE line, states that the parties' packages speak for themselves, states

26  that MGA has failed to establish that it originated, or has protectible rights in, an

27  "open and transparent style" for packaging and denies the truth of the remaining

28  allegations set forth therein.

44.     Answering paragraph 44 of the Complaint, Mattel admits that one photograph purports to depict one of the packages that were, among others, part of the MY SCENE line, admits that the other photograph purports to depict one of the packages that were, among others, used as part of the Bratz line, states that the parties' packages speak for themselves, denies that MGA originated, or has protectible rights in, "the 'BRATZ' packaging" or in the packaging depicted in the Complaint and denies the truth of any remaining allegations set forth therein.

45.     Answering paragraph 45 of the Complaint, Mattel admits that one photograph purports to depict one of the packages that were, among others, part of the MY SCENE line, admits that the other photograph purports to depict one of the packages that were, among others, used as part of the Bratz line, states that the parties' packages speak for themselves, denies that MGA originated, or has protectible rights in, the packaging depicted in the Complaint and denies the truth of any remaining allegations set forth therein.

46.     Answering paragraph 46 of the Complaint, Mattel states that it has utilized a wide variety of packaging styles and shapes over the years, states that the relevant packaging speaks for itself, states that MGA lacks protectible rights in "non-rectangular shaped box" packaging or in the other elements MGA claims in paragraph 46, and denies the truth of the remaining allegations set forth therein.

47.     Answering paragraph 47 of the Complaint, Mattel denies that any alleged "theme" is "MGA's theme," denies that MGA originated or has rights to any theme and denies the truth of the remaining allegations set forth therein.

48.     Answering paragraph 48 of the Complaint, Mattel admits that it released a doll called "Chillin Out!", states that it has released such themed dolls over the course of many years, admits MGA released a "Wintertime Wonderland" themed doll, denies that MGA originated or has rights to such theme, states that the relevant products speak for themselves and denies the truth of the remaining allegations set forth therein.

49.     Answering paragraph 49 of the Complaint, Mattel admits that it released a doll called "Night on the Town", states that it has released such themed dolls over the course of many years, admits MGA released a "Formal Funk" themed doll, denies that MGA originated or has rights to such theme, states that the relevant products speak for themselves and denies the truth of the remaining allegations set forth therein.

50.     Answering paragraph 50 of the Complaint, Mattel admits that it released a doll called "Jammin' in Jamaica" and a playset called "Guava Gulch Tiki Lounge", states that it has released such themed dolls and products over the course of many years, admits that MGA released a "Sun-Kissed Summer" themed doll and playset, denies that MGA originated or has rights to such theme, states that the relevant products speak for themselves and denies the truth of the remaining allegations set forth therein.

51.     Answering paragraph 51 of the Complaint, Mattel admits that it has aired television commercials for its MY SCENE line, states that such commercials speak for themselves, denies the truth of the remaining allegations set forth therein and specifically denies that MGA was the originator of or has rights to commercials "combining live action with animated sequences" set to "pop music and lyrics".

52.     Answering paragraph 52 of the Complaint, Mattel denies the truth of the allegations set forth therein.

53.     Answering paragraph 53 of the Complaint, Mattel admits that it released a MY SCENE "Sound Lounge", admits that MGA released a product called "Runway Disco", states that the relevant products speak for themselves, denies that it "imitated MGA's trapezoidal box," denies that MGA has rights thereto, and denies the truth of the remaining allegations set forth therein.

54.     Answering paragraph 54 of the Complaint, Mattel denies the truth of the allegations set forth therein.

55.     Answering paragraph 55 of the Complaint, Mattel admits that, among the styling heads it has produced and sold over the course of many years, it released a MY SCENE styling head, admits that MGA released a styling head called "Funky Fashion Makeover Head", states that the relevant products speak for themselves, denies that MGA has protectible rights and denies the truth of the remaining allegations set forth in paragraph 55.

56.     Answering paragraph 56 of the Complaint, Mattel is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth therein because plaintiff fails to identify the alleged instances of confusion, including the source of the unidentified picture titled "Hairstyle practice", and on that basis, denies them, and denies the truth of any remaining allegations set forth in paragraph 56.

57.     Answering paragraph 57 of the Complaint, Mattel admits that it has aired television commercials for its MY SCENE line, states that such commercials speak for themselves and denies the truth of the remaining allegations set forth therein.

58.     Answering paragraph 58 of the Complaint, Mattel admits that MGA has used the line "The Girls With a Passion for Fashion" in some contexts, denies that MGA originated that phrase or otherwise has rights to it, states that Mattel's web site speaks for itself and denies the truth of the remaining allegations set forth therein.

59.     Answering paragraph 59 of the Complaint, Mattel admits that, among the plush products that it has produced and sold over the course of many years, it has released plush dogs as part of its MY SCENE "Miami Getaway" themed product line, states that Mattel has for many years sold plush pets of the type used with its MY SCENE dog, admits that MGA has released various Bratz pets, states that MGA was not the originator of and has no rights to the features and other

1  elements described therein, states that the relevant products speak for themselves

2  and denies the truth of the remaining allegations set forth therein.

3       60.    Answering paragraph 60 of the Complaint, Mattel admits that,

4  among the plush toys that it has released over the course of many years, its MY

5  SCENE dog has been sold in packaging depicted (in part) on page 22 of the

6  Complaint, states that Mattel has for many years sold plush pets and other plush

7  products in packaging of the type used with its MY SCENE dog, admits that MGA

8  has released a "Bratz" dog, states that MGA was not the originator of and has no

9  rights to the packaging described therein, states that the relevant packages speak for

10  themselves and denies the truth of the remaining allegations set forth therein.

11       61.    Answering paragraph 61 of the Complaint, Mattel denies that it

12  has intended to cause any consumer confusion and states that it is without

13  knowledge or information sufficient to form a belief as to the truth or falsity of the

14  allegations set forth therein concerning unnamed retailers, customers and others

15  because plaintiff fails to identify any source for the matters alleged and, on that

16  basis, denies them and denies the truth of any remaining allegations set forth therein.

17       62.    Answering paragraph 62 of the Complaint, Mattel denies that it

18  has intended to cause any confusion and states that it is without knowledge or

19  information sufficient to form a belief as to the truth or falsity of the allegations set

20  forth therein concerning alleged comments and conversations because plaintiff fails

21  to identify any source for the alleged comments and conversations and, on that

22  basis, denies them, and denies the truth of any remaining allegations set forth

23  therein.

24       63.    Answering paragraph 63 of the Complaint, Mattel denies that it

25  has intended to cause any confusion and states that it is without knowledge or

26  information sufficient to form a belief as to the truth or falsity of the allegations set

27  forth therein because plaintiff fails to identify any source for the alleged comments

28

1  and conversations and, on that basis, denies them, and denies the truth of any
2  remaining allegations set forth therein.
3     64. Answering paragraph 64 of the Complaint, Mattel denies that it
4  has intended to cause any confusion and states that it is without knowledge or
5  information sufficient to form a belief as to the truth or falsity of the allegations set
6  forth therein because plaintiff fails to identify any source for the alleged comments
7  and conversations and, on that basis, denies them, and denies the truth of any
8  remaining allegations set forth therein.
9     65. Answering paragraph 65 of the Complaint, Mattel denies the
10  truth of the allegations set forth therein.
11     66. Answering paragraph 66 of the Complaint, Mattel admits that it
12  sued a competitor in the German courts for unfair competition for copying various
13  Mattel BARBIE line products, states that such claims exclusively arose under and
14  were the subject of German law, states that since that time the Federal Supreme
15  Court has rejected the contention made by MGA in paragraph 66 that
16  "systematically copying and borrowing elements" from competing dolls supports a
17  claim for unfair competition, and denies the truth of the remaining allegations set
18  forth therein.
19     67. Answering paragraph 67 of the Complaint, Mattel denies the
20  truth of the allegations set forth therein.
21     68. Answering paragraph 68 of the Complaint, Mattel admits that it
22  has released dolls called "Wee 3 Friends," admits that MGA has released dolls
23  called "4-Ever Best Friends," states that the relevant products speak for themselves,
24  denies that MGA's packaging is distinctive, denies that MGA has protectible rights
25  thereto and denies the truth of the remaining allegations set forth in paragraph 68.
26     69. Answering paragraph 69 of the Complaint, Mattel admits that its
27  Fisher Price division has released, among other dolls called "Little Mommy," the
28  "Little Mommy Potty Training Baby Doll," admits that MGA has released a

TX 24886-00018

1   "Mommy's Little Patient" doll and denies the truth of the remaining allegations set

2   forth therein.

3         70.    Answering paragraph 70 of the Complaint, Mattel admits that it

4   has released die-cast cars and other products called "Acceleracers" as part of its

5   HOT WHEELS line, admits that MGA has released products called "AlienRacers,"

6   denies that MGA was the originator of or has rights to the elements and matters

7   described in paragraph 70, states that the relevant products speak for themselves and

8   denies the truth of the remaining allegations set forth therein.

9         71.    Answering paragraph 71 of the Complaint, Mattel admits that it

10   has aired commercials relating to "Acceleracers," states that such commercials

11   speak for themselves, denies the truth of the remaining allegations set forth therein

12   and specifically denies that MGA originated or has rights to the commercials and

13   other matters described therein.

14         72.    Answering paragraph 72 of the Complaint, Mattel states that its

15   web site speaks for itself, denies the truth of the remaining allegations contained in

16   paragraph 72 and specifically denies that Mattel intended to create confusion in the

17   marketplace.

18         73.    Answering paragraph 73 of the Complaint, Mattel denies the

19   truth of the allegations set forth therein.

20         74.    Answering paragraph 74 of the Complaint, Mattel denies the

21   truth of the allegations set forth therein.

22         75.    Answering paragraph 75 of the Complaint, Mattel admits that it

23   has reminded certain former employees who became employed by MGA by letter of

24   their contractual and fiduciary obligation to maintain the secrecy of all Mattel

25   confidential and proprietary business information, states that such letters were

26   prepared and sent to their recipients in good faith contemplation of litigation, admits

27   that it filed a complaint for declaratory relief against Ronald Brawer in Los Angeles

28   Superior Court, entitled <u>Mattel, Inc. v. Brawer</u>, Case No. BC323381, on October 21,

1  2004, states that pursuant to the Court's Order of August 25, 2005 it need not

2  respond to the allegations in paragraph 75 relating to that action, and denies the truth

3  of the remaining allegations set forth in paragraph 75.

4         76.  Answering paragraph 76 of the Complaint, Mattel states that

5  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

6  including such acts that are lawful in foreign nations, and denies the truth of

7  allegations set forth therein.

8         77.  Answering paragraph 77 of the Complaint, Mattel states that

9  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

10  including such acts that are lawful in foreign nations, and denies the truth of the

11  allegations set forth therein.

12         78.  Answering paragraph 78 of the Complaint, Mattel states that it is

13  without knowledge or information sufficient to form a belief as to the truth or falsity

14  of the allegations regarding MGA's claimed "shortage of doll hair" and, on that

15  basis, denies them and denies the truth of the remaining allegations set forth therein.

16         79.  Answering paragraph 79 of the Complaint, Mattel states that

17  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

18  including such acts that are lawful in foreign nations, and denies the truth of

19  allegations set forth therein.

20         80.  Answering paragraph 80 of the Complaint, Mattel denies the

21  truth of the allegations set forth therein.

22         81.  Answering paragraph 81 of the Complaint, Mattel admits that

23  NPD Funworld ("NPD") supplies sales statistics in *inter alia* the toy, PC games and

24  video games industries, admits that to Mattel's knowledge NPD restricts the use of

25  its subscriber information, states that MGA was sued by NPD and states that it is

26  without knowledge or information sufficient to form a belief as to the truth or falsity

27  of the allegations regarding the need of unspecified "toy companies" for NPD

28

1   statistics and, on that basis, denies them and denies the truth of any remaining

2   allegations set forth therein.

3          82.    Answering paragraph 82 of the Complaint, Mattel denies the

4   truth of the allegations set forth therein.

5          83.    Answering paragraph 83 of the Complaint, Mattel states that it is

6   without knowledge or information sufficient to form a belief as to the truth or falsity

7   of the allegations set forth therein because MGA fails to quantify its annual

8   subscription fees and, on that basis, denies them.

9          84.    Answering paragraph 84 of the Complaint, Mattel states that it is

10  without knowledge or information sufficient to form a belief as to the truth or falsity

11  of the allegations set forth therein and, on that basis, denies them.

12         85.    Answering paragraph 85 of the Complaint, Mattel states that

13  MGA was sued by NPD, states that it is without knowledge or information sufficient

14  to form a belief as to such nature and grounds for such litigation (to which Mattel

15  was not a party) and, on that basis, denies the allegations relating thereto, and denies

16  the truth of the remaining allegations set forth therein.

17         86.    Answering paragraph 86 of the Complaint, Mattel denies the

18  truth of the allegations set forth therein.

19         87.    Answering paragraph 87 of the Complaint, Mattel admits that the

20  Children's Advertising Review Unit ("CARU") is the children's arm of the

21  advertising industry's self-regulation program, states that compliance with CARU's

22  Privacy Program can provide FTC-approved Safe Harbor under the Children's

23  Online Privacy Protection Act ("COPPA"), and denies the truth of the remaining

24  allegations set forth therein.

25         88.    Answering paragraph 88 of the Complaint, Mattel admits that it

26  is one of dozens of CARU Supporters and denies the truth of the remaining

27  allegations set forth therein.

28

TX 24886-00021

1          89.    Answering paragraph 89 of the Complaint, Mattel denies the

2  truth of the allegations set forth therein.

3          90.    Answering paragraph 90 of the Complaint, Mattel states that it is

4  without knowledge or information sufficient to form a belief as to the truth or falsity

5  of the allegations as to the consequences to MGA of MGA's violations of CARU

6  standards and, on that basis, denies them.

7          91.    Answering paragraph 91 of the Complaint, Mattel states that it is

8  without knowledge or information sufficient to form a belief as to the truth or falsity

9  of the allegations as to the consequences to MGA of MGA's violations of CARU

10  standards and, on that basis, denies them.

11          92.    Answering paragraph 92 of the Complaint, Mattel admits that the

12  Toy Industry Association, Inc. ("TIA") is a toy industry trade association, admits

13  that at certain times TIA has given awards called the People's Choice Toy of The

14  Year or the Toy of The Year Award, denies that Mattel wrongfully influenced TIA

15  and states that it is without knowledge or information sufficient to form a belief as

16  to the truth or falsity of the remaining allegations set forth therein and, on that basis,

17  denies them.

18          93.    Answering paragraph 93 of the Complaint, Mattel states that the

19  allegations set forth therein are vague and ambiguous, including in that they fail to

20  properly identify the years in which the referenced awards were given and/or the

21  particular product which won such awards, and accordingly lacks knowledge or

22  information sufficient to form a belief as to the truth or falsity of the allegations set

23  forth therein and, on that basis, denies them.

24          94.    Answering paragraph 94 of the Complaint, Mattel admits that

25  Neil Freidman was the chairman of TIA from approximately May 2002 to May

26  2004, states that Fischer Price is a division of Mattel and denies the truth of the

27  remaining allegations set forth therein.

28

95.     Answering paragraph 95 of the Complaint, Mattel admits that Hokey Pokey Elmo won the Toy of the Year Award and denies the truth of the remaining allegations set forth therein.

96.     Answering paragraph 96 of the Complaint, Mattel states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth therein and, on that basis, denies them.

97.     Answering paragraph 97 of the Complaint, Mattel denies the truth of the allegations set forth therein.

98.     Answering paragraph 98 of the Complaint, Mattel denies the truth of the allegations set forth therein.

99.     Answering paragraph 99 of the Complaint, Mattel denies the truth of the allegations set forth therein.

100.    Answering paragraph 100 of the Complaint, Mattel denies the truth of the allegations set forth therein.

101.    Answering paragraph 101 of the Complaint, Mattel repeats its responses contained in paragraphs 1 through 100 of this Fourth Amended Answer and incorporates them by reference as though fully and completely set forth herein.

102.    Answering paragraph 102 of the Complaint, Mattel denies the truth of the allegations set forth therein and specifically denies that MGA's alleged trade dress is distinctive.

103.    Answering paragraph 103 of the Complaint, Mattel denies the truth of the allegations set forth therein and specifically denies that MGA's alleged trade dress is distinctive.

104.    Answering paragraph 104 of the Complaint, Mattel denies the truth of the allegations set forth therein.

105.    Answering paragraph 105 of the Complaint, Mattel denies the truth of the allegations set forth therein.

1          106.   Answering paragraph 106 of the Complaint, Mattel denies the

2  truth of the allegations set forth therein.

3          107.   Answering paragraph 107 of the Complaint, Mattel denies the

4  truth of the allegations set forth therein.

5          108.   Answering paragraph 108 of the Complaint, Mattel denies the

6  truth of the allegations set forth therein and specifically denies that plaintiff is

7  entitled to injunctive relief.

8          109.   Answering paragraph 109 of the Complaint, Mattel repeats its

9  responses contained in paragraphs 1 through 108 of this Fourth Amended Answer

10  and incorporates them by reference as though fully and completely set forth herein.

11          110.   Answering paragraph 110 of the Complaint, Mattel denies the

12  truth of the allegations set forth therein.

13          111.   Answering paragraph 111 of the Complaint, Mattel denies the

14  truth of the allegations set forth therein.

15          112.   Answering paragraph 112 of the Complaint, Mattel denies the

16  truth of the allegations set forth therein.

17          113.   Answering paragraph 113 of the Complaint, Mattel denies the

18  truth of the allegations set forth therein.

19          114.   Answering paragraph 114 of the Complaint, Mattel denies the

20  truth of the allegations set forth therein.

21          115.   Answering paragraph 115 of the Complaint, Mattel denies the

22  truth of the allegations set forth therein.

23          116.   Answering paragraph 116 of the Complaint, Mattel denies the

24  truth of the allegations set forth therein.

25          117.   Answering paragraph 117 of the Complaint, Mattel denies the

26  truth of the allegations set forth therein and specifically denies that plaintiff is

27  entitled to injunctive relief.

28

TX 24886-00024

1    118.   Answering paragraph 118 of the Complaint, Mattel denies the
2    truth of the allegations set forth therein.

3    119.   Answering paragraph 119 of the Complaint, Mattel repeats its
4    responses contained in paragraphs 1 through 118 of this Fourth Amended Answer
5    and incorporates them by reference as though fully and completely set forth herein.

6    120.   Answering paragraph 120 of the Complaint, Mattel denies the
7    truth of the allegations set forth therein.

8    121.   Answering paragraph 121 of the Complaint, Mattel denies the
9    truth of the allegations set forth therein.

10   122.   Answering paragraph 122 of the Complaint, Mattel denies the
11   truth of the allegations set forth therein.

12   123.   Answering paragraph 123 of the Complaint, Mattel denies the
13   truth of the allegations set forth therein and specifically denies that plaintiff is
14   entitled to injunctive relief.

15   124.   Answering paragraph 124 of the Complaint, Mattel repeats its
16   responses contained in paragraphs 1 through 123 of this Fourth Amended Answer
17   and incorporates them by reference as though fully and completely set forth herein.

18   125.   Answering paragraph 125 of the Complaint, Mattel denies the
19   truth of the allegations set forth therein.

20

21                          General Denial

22          Unless specifically admitted herein, Mattel denies the truth of each and
23   every allegation set forth in plaintiff's Complaint and specifically denies that
24   plaintiff is entitled to any relief against Mattel.

25

26

27

28

00505.07975/3437282.1

TX 24886-00025

Affirmative Defenses

By alleging the Affirmative Defenses set forth below, Mattel does not agree or concede that it bears the burden of proof or the burden of persuasion on any of these issues, whether in whole or in part.

First Affirmative Defense

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

Second Affirmative Defense

Plaintiff has no valid, enforceable or protectible rights or interest in the alleged trade dress or other matters asserted, including without limitation in that plaintiff has failed to establish that its alleged trade dress is distinctive as to plaintiff.

Third Affirmative Defense

Plaintiff's claims, including without limitation plaintiff's claims based upon alleged extra-territorial acts, are barred in whole or in part by lack of subject matter jurisdiction.

Fourth Affirmative Defense

Plaintiff's claims are barred in whole or in part by plaintiff's unclean hands.

Fifth Affirmative Defense

Plaintiff's claims are barred in whole or in part by virtue of Mattel's prior-creation of the elements and other matters asserted in the Complaint.

MATTEL'S FOURTH AMENDED ANSWER AND COUNTERCLAIMS

TX 24886-00026

1

### Sixth Affirmative Defense

2         Plaintiff's claims are barred in whole or in part by its lack of standing.

3

4

### Seventh Affirmative Defense

5         Plaintiff's claims are barred in whole or in part by the applicable

6 statutes of limitation and the doctrine of laches.

7

8

### Eighth Affirmative Defense

9         Plaintiff's claims are barred in whole or in part by the doctrines of

10 waiver, estoppel, acquiescence, and abandonment.

11

12

### Ninth Affirmative Defense

13         Plaintiff's claims are barred in whole or in part by Mattel's

14 constitutional rights of free speech, petitioning and association, including without

15 limitation by the litigation privilege as protected by and/or codified in *inter alia*

16 Section 47(b) of the <u>California Civil Code</u>, the *Noerr-Pennington* doctrine, the

17 common interest privilege and by other privileges.

18

19

### Tenth Affirmative Defense

20         Plaintiff's claims are barred in whole or in part by Mattel's federal and

21 state constitutional rights of free speech, including without limitation under the First

22 Amendment of the United States Constitution.

23

24

### Eleventh Affirmative Defense

25         Plaintiff's claims are barred in whole or in part by the competitor

26 privilege.

27

28

## Twelfth Affirmative Defense

Plaintiff's claims are in whole or in part preempted by the Copyright Act and barred by the *Sears-Compco* doctrine.

## Thirteenth Affirmative Defense

Plaintiff's requested relief, including plaintiff's requests for punitive and/or enhanced damages, are barred in whole or in part because all of Mattel's actions were in good faith.

## Fourteenth Affirmative Defense

Plaintiff's damages, if any, were not caused by Mattel and are not attributable to the acts or omissions of Mattel.

## Fifteenth Affirmative Defense

Plaintiff has failed to mitigate its damages, if any.

## Additional Defenses

Mattel has insufficient knowledge or information upon which to form a belief as to whether additional defenses are available. Mattel reserves the right to amend this Fourth Amended Answer to add, delete, or modify additional defenses based on legal theories which may or will be divulged through clarification of the Complaint, through discovery, through change or clarification of the governing law or through further legal analysis of plaintiff's positions in this litigation.

## Prayer for Relief

WHEREFORE, Mattel prays for relief as follows:

1.      That the Complaint be dismissed with prejudice;

2.      That plaintiff take nothing by reason of the Complaint against Mattel and that judgment be entered in Mattel's favor;

3.      That Mattel recover its costs and attorneys' fees; and

4.      That this Court award such other and further relief as it deems just and proper.

## COUNTERCLAIMS

Pursuant to the Court's Orders, and incorporating its [Proposed] Amended Complaint dated November 19, 2006, and its prior Amended Answers and Counterclaims, Mattel, Inc. alleges as follows:

## Preliminary Statement

1.      MGA Entertainment, Inc. ("MGA") has engaged in a scheme of stealing and using Mattel property and trade secrets, unlawfully concealing its wrongdoing and secreting its ill-gotten gains, and obstructing efforts by Mattel and the courts to address its wrongful acts. MGA's use of the stolen property and trade secrets, its pattern of concealing and dissipating assets, and its obstruction of the judicial process, caused and continues to cause significant harm to Mattel. MGA first stole "Bratz," a fashion doll, from Mattel, and then continued stealing Mattel's confidential and proprietary information to fuel the growth of Bratz. After Mattel filed this suit in 2004, MGA, Isaac Larian and their co-conspirators continued their pattern of wrongdoing. The objects of this unlawful conspiracy, in addition to the theft of trade secrets, include: concealing assets, tampering with and destroying evidence, perjury, obstruction of justice, commercial bribery and fraudulent transfers. Indeed, MGA, Larian and their co-conspirators carried out several of these wrongs while the Phase 1 trial was on-going and shortly after it concluded, and are continuing to engage in efforts to thwart the findings of the jury in Mattel's favor and obstruct the judicial process, all in an effort and pursuant to a scheme to unfairly and unlawfully compete with Mattel.

2.       Carter Bryant was employed by Mattel as a doll designer.  As the jury in the Phase 1 trial in this action found, Bryant conceived of and created Bratz, including without limitation Bratz sculpts and prototypes, the Bratz name, the Bratz characters, and more than 70 Bratz design drawings, while working for Mattel. Knowing that Bryant was a Mattel employee, that he had designed Bratz while working for Mattel, and that these designs belonged to Mattel under his employment agreement, Larian and MGA unlawfully aided and abetted Bryant's wrongful sale of his Bratz work to MGA, and MGA and Larian profited from doing so.  Bratz products manufactured and sold by MGA and Larian unlawfully infringed Mattel's copyrights in the Bratz works created by Bryant while a Mattel employee.  In addition, MGA tortiously interfered with Bryant's contract with Mattel, aided and abetted Bryant's breach of his duty of loyalty to Mattel, and aided and abetted Bryant's breach of his fiduciary duty to Mattel.  MGA fraudulently concealed its wrongful conduct from Mattel, and wrongly converted the Bratz drawings owned by Mattel, as the jury found as well.

3.       After stealing the Bratz design, MGA expanded its Bratz-based business by stealing additional trade secrets and confidential information from Mattel.  In order to build its operations in Mexico, MGA, operating from its Southern California offices, hired away three key Mattel employees in Mexico in 2004 and induced them to steal virtually every category of Mattel's trade secrets relating to the Mexican market, as well as trade secret information relating to Mattel's U.S. and worldwide businesses, and to take this confidential and proprietary information with them to MGA.  Armed with Mattel's confidential business plans and methods, MGA increased its market share in Mexico by 90% in a single year.

4.       In 2005, MGA repeated the same pattern in Canada.  MGA, again operating from its Southern California headquarters, hired Janine Brisbois from Mattel, giving her responsibility for the same accounts – with Toys 'R Us

- 28 -

MATTEL'S FOURTH AMENDED ANSWER AND COUNTERCLAIMS

TX 24886-00030

1   ("TRU") and Wal-Mart – that she handled at Mattel.  Before leaving Mattel,

2   Brisbois took Mattel documents containing proprietary advertising, project, sales,

3   customer and strategy information for both Canada and the United States, and

4   subsequently accessed and modified certain of those Mattel documents while

5   employed by MGA.

6          5.      Continuing until at least 2005, even after this suit was filed,

7   MGA bribed Mattel employees in addition to Bryant to work on Bratz and other

8   products for MGA's benefit while they were employed by Mattel. In the face of

9   Court Orders compelling MGA to disclose such evidence, MGA falsely denied

10  under oath the existence of these employees.  MGA's agents acted to conceal the

11  bribery, including by paying Mattel employees in cash and using false names and

12  false social security numbers.   MGA also knowingly and intentionally induced, or

13  attempted to induce, additional Mattel employees to violate their contractual

14  obligations and duties of loyalty to Mattel by stealing Mattel's confidential and trade

15  secret information.  Several of these current and former MGA employees have

16  invoked their supposed Fifth Amendment rights against self-incrimination to refuse

17  to provide information in discovery about their unlawful actions taken on MGA's

18  behalf.

19         6.      MGA, Larian and their co-conspirators have lied to Mattel, the

20  jury, and the Courts and withheld and destroyed critical evidence to avoid facing the

21  consequences of their actions.  And MGA's wrongful conduct has not ceased.

22  Faced with the jury's verdicts and Court Orders, MGA, Larian and their co-

23  conspirators intentionally failed to preserve and protect Mattel's property and

24  instead diminished the value of that property as part of a complex scheme to

25  transfer, encumber or otherwise hide their ill-gotten gains to ensure that if MGA

26  cannot profit from Bratz, neither will Mattel.  Faced with rulings that Mattel owns

27  Bratz, MGA also decided to market and promote a new doll – "Moxie" – whose

28

1    name, like "Bratz," was developed at Mattel and delivered by Bryant to MGA, all in

2    an effort to unfairly and unlawfully compete with Mattel.

### Jurisdiction

4         7.     This Court has federal question jurisdiction over this action

5    pursuant to 28 U.S.C. §§ 1331, 17 U.S.C. §§ 101 et seq., and 18 U.S.C. § 1964(c).

6    This Court has supplemental jurisdiction over Mattel's state law claims pursuant to

7    28 U.S.C. § 1367.

### Venue

9         8.     Venue is proper in this District pursuant to 28 U.S.C.

10    §§ 1391(b)-(d), 1391(f) and 1400(a) and 18 U.S.C. § 1965.

### Parties

12         9.     Mattel is a corporation organized and existing under the laws of

13    the State of Delaware, with its principal place of business in El Segundo, California.

14         10.     Mattel de Mexico, S.A. de C.V. ("Mattel Mexico") is an entity

15    existing under the laws of Mexico with a principal place of business in Mexico City,

16    Mexico.  Mattel Mexico shares an identity of interest with Mattel, and Mattel

17    Mexico's claims arise from and relate to the same factual conduct previously alleged

18    by Mattel.  Unless otherwise specified, "Mattel" and "Mattel Mexico" shall be

19    referred to collectively as "Mattel."

20         11.     Counter-defendant MGA Entertainment, Inc. ("MGA") is a

21    corporation organized and existing under the laws of the State of California, with its

22    principal place of business in Van Nuys, California.  Mattel is informed and

23    believes, and on that basis alleges, that ABC International Traders, Inc. is a

24    predecessor corporation to MGA and that until September 16, 2002, MGA was

25    incorporated and known as ABC International Traders, Inc.  Mattel previously

26    amended its Complaint by substituting MGA Entertainment, Inc. for the fictitious

27    Doe 1.

28

12.   Counter-defendant Carter Bryant ("Bryant") is an individual who formerly was employed by Mattel and has worked for and, at all material times, acted as an agent for MGA. Bryant currently resides in the State of Missouri.

13.   Counter-defendant MGA HK ("MGA HK") is a business entity organized and existing under the laws of the Hong Kong Special Administrative Region, with its principal place of business in Hong Kong. Mattel previously amended its Complaint by substituting MGA HK for the fictitious Doe 2.

14.   Counter-defendant Isaac Larian is the President and CEO of MGA and an individual residing in the County of Los Angeles. Mattel previously amended its Complaint by substituting Larian for the fictitious Doe 3.

15.   Counter-defendant MGAE de Mexico, S.R.L. de C.V. ("MGA de Mexico") is a business entity organized and existing under the laws of Mexico, with its principal place of business in Mexico City, Mexico.

16.   Counter-defendant Carlos Gustavo Machado Gomez is an individual who was employed by Counter-defendant MGA and who resided in this District at the time he was named and served as a Counter-defendant in the First Amended Answer and Counterclaims.

17.   Counter-defendant Omni 808 Investors, LLC ("Omni 808") is, on information and belief, a limited liability company organized and existing under the laws of the State of California, formed on August 12, 2008, with its principal place of business in Beverly Hills, California. Mattel, previously being ignorant of the nature, extent and scope of involvement and complicity of Omni 808 in the conduct alleged herein and having designated Omni 808 previously in Mattel's Counterclaims as Doe 4, hereby amends its Counterclaims by substituting Omni 808 for the fictitious Doe name Doe 4.

18.   Counter-defendant IGWT 826 Investments, LLC ("IGWT 826") is, on information and belief, a limited liability company organized and existing under the laws of the State of California, formed on August 27, 2008, with its

1  principal place of business in Van Nuys, California.  Mattel, previously being

2  ignorant of the nature, extent and scope of involvement and complicity of IGWT

3  826 in the conduct alleged herein and having designated IGWT 826 previously in

4  Mattel's Counterclaims as Doe 5, hereby amends its Counterclaims by substituting

5  IGWT 826 for the fictitious Doe name Doe 5.

6          19.    Mattel is informed and believes, and on that basis alleges, that

7  Counter-defendant Larian is directly or indirectly trustee, principal, owner, and/or

8  controlling participant and alter-ego of:  MGA; MGA HK; MGA de Mexico; IGWT

9  826; and of several trusts devised by or on behalf of Larian for the purpose of

10  manipulating MGA's and Larian's finances, including without limitation The

11  Makabi Living Trust, The Larian Living Trust, The Angela Larian Qualified

12  Annuity Trust, The Isaac E. Larian Qualified Annuity Trust, The Jahangir Eli

13  Makabi Qualified Annuity Trust, as well as other trusts and similar vehicles

14  presently unknown to Mattel because of their concealment by Larian, MGA and

15  their co-conspirators.

16          20.    The true names and capacities of Counter-defendants sued herein

17  as DOES 6-10 is unknown to Mattel, which therefore sues said Counter-defendants

18  by such fictitious names.  Mattel will amend its pleadings to allege their true names

19  and capacities when the same are ascertained.

20                         **Factual Background**

21  **I.    MATTEL**

22          21.    Mattel manufactures and markets toys, games, dolls and other

23  consumer products.  Mattel's ability to design and develop new products is critical

24  to its success.  Mattel invests millions of dollars in product design and development

25  and introduces hundreds of new products each year.  Mattel's design center in El

26  Segundo, California, houses hundreds of designers, sculptors, painters and other

27  artists, who work exclusively to create the products on which Mattel's business

28  depends.  Mattel Mexico is a subsidiary of Mattel and conducts the business of

1    manufacturing, importing, distributing, marketing, and selling Mattel toys in

2    Mexico.

3            22.     Mattel has invested substantial amounts over many years to

4    develop its business methods and practices, including, without limitation, its

5    marketing and advertising research, plans, methods and processes; its business

6    research and forecasts; its costs, budgets, pricing, credit terms, deal terms and

7    finances; its manufacturing, distribution, and sales methods and processes; and its

8    inventory methods and processes. These represent a material part of the intellectual

9    infrastructure of Mattel and are highly valuable.

10   **II.    MGA STEALS A NEW LINE OF FASHION DOLLS FROM MATTEL**

11           23.     MGA began as a consumer electronics business in 1979 and then

12   expanded into the toy business. In late 1999 or early 2000, MGA decided to

13   compete directly with Mattel by launching a fashion doll line.

14           24.     Carter Bryant joined Mattel in September 1995 as a BARBIE

15   product designer working in Mattel's Design Center. In or about April 1998, Bryant

16   resigned his position with Mattel and moved to Missouri to live with his parents.

17   Late in 1998, Bryant applied to be rehired by Mattel. On January 4, 1999, he began

18   working at Mattel's Design Center, again as a product designer, for Mattel's

19   BARBIE collectibles line.

20           25.     Upon his return to Mattel in January 1999, Bryant executed an

21   Employee Confidential Information and Inventions Agreement (the "Employment

22   Agreement"), a true and correct copy of which is attached hereto as Exhibit A.

23           26.     Pursuant to his Employment Agreement and as a condition of

24   and in consideration for his employment, Bryant agreed, among other things, that he

25   held a position of trust with Mattel, that the designs and inventions he created during

26   his Mattel employment (with certain exceptions not relevant here) were owned by

27   Mattel, and that he would be loyal to the company and would not assist or work for

28   any competitor of Mattel while he was employed by Mattel.

27.     On January 4, 1999, Bryant also executed Mattel's Conflict of Interest Questionnaire (the "Conflict Questionnaire").  Among other things, Bryant certified in the Conflict Questionnaire that, other than as disclosed, he had not worked for any competitor of Mattel in the prior twelve months and had not engaged in any business venture or transaction involving a Mattel competitor that could be construed as a conflict of interest.  Pursuant to the Conflict Questionnaire, Bryant also agreed that he would immediately notify his supervisor of any change in his situation that would cause him to change any of the foregoing certifications.  A true and correct copy of the Conflict Questionnaire executed by Bryant is attached hereto as Exhibit B.

28.     Despite these obligations, Bryant worked with MGA, a Mattel competitor, while he was still employed by Mattel, and failed to disclose that work to Mattel.  While Bryant was employed by Mattel, Bryant, Larian, MGA and others misappropriated and misused Mattel property and Mattel resources for the benefit of Bryant and MGA.  Such acts included, but are not limited to, the following:

(a)     using Mattel resources, other Mattel employees, and Mattel contractors to design and develop Bratz, including without limitation by creating drawings and three-dimensional models of Bratz dolls, and fashion designs for the dolls' associated clothing and accessories;

(b)     using Mattel resources to assist MGA to produce Bratz dolls; and

(c)     enlisting other Mattel employees to perform work on Bratz, in some cases leading them to believe they were performing work on a project for Mattel.

MGA and Larian obtained confidential and trade secret Mattel information from Bryant, including but not limited to information regarding Bratz, and paid Bryant while he was still employed by Mattel.

29.     Bryant, Larian and MGA, using interstate mail and wire communications, among other means, deliberately and intentionally concealed facts from Mattel so that it would not suspect or know that it was the true owner of Bratz. Their acts of concealment and misrepresentation include, but are not limited to, (i) concealing the fact that Bryant conceived, created, designed and developed Bratz while employed by Mattel, including by tampering with, altering and defacing documents which showed that Bryant was a Mattel employee while he was working for and with MGA; (ii) concealing the fact that Bryant worked with and assisted MGA during the time Bryant was employed by Mattel and was compensated for that assistance; (iii) lying to supervisors and co-workers at Mattel about Bryant's future plans; (iv) falsely claiming that Larian and others were the creators of Bratz; and (v) filing fraudulent registrations and/or amendments to registrations with the United States Copyright Office claiming MGA as the author of Bratz as a work for hire and misdating or altering relevant dates on such documents.

30.     Because of Bryant's and MGA's acts of concealment and Bryant's misrepresentations to Mattel, Mattel had no reason to suspect that Bryant had worked with or assisted MGA while he was still employed by Mattel until approximately November 24, 2003, when Mattel received, through an unrelated legal action, copies of Bryant's contract with MGA, which predated Bryant's departure from Mattel.  It was only after receiving this contract that Mattel learned facts showing that Bryant had secretly worked with MGA while he was still employed at Mattel, in violation of his Mattel Employment Agreement.

31.     Bryant repeatedly met with and worked with MGA employees on Bratz while employed at Mattel; and Bryant and MGA employees in turn repeatedly and continuously communicated with employees of MGA HK on subjects such as design and manufacturing of Bratz while Bryant was still employed by Mattel and thereafter.  At all material times, MGA HK has maintained regular and continuous contacts with persons and entities in the County of Los Angeles; it

1 regularly has shipped products that it manufactures, or that are manufactured for it,

2 to the County of Los Angeles; and such products have been distributed to retailers

3 and sold to consumers in the County of Los Angeles.

4        32.    Since 2001, MGA has distributed and sold Bratz and Bratz-

5 related products throughout the world, and licensed its rights in Bratz to third

6 parties.  During certain time periods, MGA has derived annual revenue from its

7 sales and licenses of Bratz in excess of $500 million.

8        33.    As the jury found, MGA and Larian knew that Bryant was

9 employed by Mattel as a doll designer and that he owed duties of loyalty and trust to

10 Mattel.  MGA and Larian encouraged, aided and financed Bryant's development of

11 Bratz, knowing full well that Bryant, by performing such work, including design-

12 related work, for his own benefit and/or the benefit of MGA, would be, and was, in

13 breach of his contractual, statutory and common law duties to Mattel.

14        34.    Pursuant to Bryant's contract with Mattel, among other things,

15 Mattel is the true owner of Bryant's Bratz creations, including but not limited to the

16 Bratz name, Bratz designs and works, and designs and works that are or have been

17 derived therefrom.  Counter-defendants' use, sale, distribution and licensing of

18 Bratz thus infringes upon and has infringed upon Mattel's rights, injures and has

19 injured Mattel, and unlawfully enriches and has enriched the Counter-defendants.

20        35.    Despite their knowledge and information to the contrary, Larian

21 and MGA continued to claim for years that Bryant did not create Bratz and/or that

22 he did so in 1998, while living with his parents in Missouri.  MGA and Larian

23 knowingly and intentionally lied, including to the Court and the jury, and withheld

24 and destroyed evidence, so as to continue to profit from their willful infringement.

25 **III.   MGA STEALS MATTEL TRADE SECRETS IN MEXICO**

26        36.    In or about late 2003 or early 2004, MGA decided to open

27 business operations in Mexico.  Faced with the difficult task of expanding into a

28 market in which it had no experience, presence or operations, MGA stole Mattel's

1    plans, strategy and business information for the Mexican market and trade secrets

2    related to Mattel's worldwide business strategies.  As detailed below, MGA and

3    Larian approached three employees of Mattel Mexico, induced them to steal

4    Mattel's most sensitive and confidential business planning materials, and hired them

5    to establish and run MGA's new Mexican subsidiary using Mattel's stolen

6    information to do so.

7        **A.**      **MGA Hires Three Senior Mattel Employees in Mexico**

8        37.      Machado was the Senior Marketing Manager, Boys Division, for

9    Mattel Mexico, a position of trust and confidence.  He worked for Mattel Mexico

10    from April 1, 1997 until April 19, 2004.  His duties included short, medium and

11    long-term marketing planning, generating product sales projections, and assisting in

12    creation of the media plan.  In his position, Machado had access to highly

13    confidential and sensitive marketing and product development information.

14        38.      While working for Mattel, Machado agreed on multiple

15    occasions that he was duty-bound to maintain the confidentiality of Mattel's trade

16    secret information.  In 2001, Machado signed Mattel's Conflict Questionnaire, in

17    which he "agree[d] not to divulge any company information to unauthorized

18    recipients."  A true and correct copy of Mattel's Conflict Questionnaire, executed by

19    Machado, is attached hereto as Exhibit C.

20        39.      Similarly, on March 7, 2002, Machado signed a Conflict of

21    Interest Manual acknowledging that he had received and was responsible for

22    following the policies outlined in the Conflict of Interest Manual.  That document

23    stated, in relevant part, that "no employee must get involved in any type of outside

24    business activity, transaction or action which, due to its nature (notwithstanding the

25    personal gain received by the employee), may . . . have a negative impact on

26    Mattel's capacity to compete through the disclosure of proprietary, commercial,

27    pricing, technical information and any other private or confidential information."  It

28    further stated that, "[t]he employees are not authorized to use any of Mattel's

1  Technological Resources for illegal purposes, in violation of any Mattel policy and

2  contrary to Mattel's best interests, in any such way that they disclose Mattel's

3  confidential information or property to third parties, or it to their own personal or

4  secondary benefit." A true and correct copy of that document is attached as Exhibit

5  D.

6      40.    Machado was also bound by Mattel's Code of Ethical Business

7  Conduct, which stated that "Mattel's Intellectual Property, including registered

8  tradenames, intellectual property rights, patents and similar rights or interests are

9  among the most important assets. . . The employees and directors are under the

10  obligation to protect the confidentiality of Mattel's proprietary information. The

11  proprietary information is any information not generally known by the public, which

12  is highly useful to Mattel, which might be useful to its competitors or third parties or

13  which might be harmful to Mattel or its customers if disclosed . . . The obligation to

14  preserve the confidential information continues even after employment has been

15  rescinded." A true and correct copy of Mattel's Code of Ethical Business Conduct

16  is attached hereto as Exhibit E.

17      41.    Mariana Trueba Almada ("Trueba") was the Senior Marketing

18  Manager, Girls Division, for Mattel Mexico, a position of trust and confidence. She

19  worked for Mattel Mexico from November 3, 1997 until April 19, 2004. Like

20  Machado, her duties included short, medium and long-term marketing planning,

21  generating product sales projections, and assisting in creation of the media plan. In

22  her position, Trueba had access to highly confidential and sensitive marketing and

23  product development information. Trueba was bound by agreements with Mattel in

24  which she agreed to maintain the confidentiality of Mattel's protected information

25  and not to disclose that information. True and correct copes of those agreements are

26  attached hereto as Exhibit F.

27      42.    Pablo Vargas San Jose ("Vargas") was a Senior Trade Marketing

28  Manager with Mattel Mexico, a position of trust and confidence. He worked for

Mattel Mexico from March 29, 2001 until April 19, 2004.  Vargas was responsible for ensuring that point-of-sale promotions were carried out, analyzing the results of such promotions, negotiating promotion budgets, and generally managing promotional activities.  Vargas also had access to highly confidential and sensitive marketing and product development information.  Vargas was bound by agreements with Mattel in which he agreed to maintain the confidentiality of Mattel's protected information and not to disclose that information.  True and correct copies of those agreements are attached hereto as Exhibit G.

43.     In 2004, Susanna Kuemmerle, on behalf of Larian and MGA, approached Machado, who she knew worked for Mattel Mexico, to induce him to resign and to join MGA.  In February 2004, while he was in New York attending New York Toy Fair for Mattel, Machado met with Larian in MGA's show space.  They discussed his leaving Mattel and starting MGA's operations in Mexico.  Machado recruited Trueba and Vargas to join him.  Together, they began taking steps to leave Mattel Mexico to join MGA.  With the encouragement of Larian and other MGA officers operating in the United States, they began accessing, copying and collecting proprietary Mattel documents to take with them.

**B.      Machado, Trueba and Vargas Steal Confidential Trade Secret Marketing and Sales Documents for MGA's Benefit**

44.     Machado, Trueba and Vargas were in frequent personal, telephonic and e-mail contact with MGA personnel, including Larian, for over two months before their resignations on April 19, 2004.  The primary vehicle for these communications was an America Online e-mail account with the address <plot04@aol.com>, and to a lesser extent the Yahoo! e-mail account with the address <plot04@yahoo.com.mx>.  On information and belief, during this time Machado, Trueba and Vargas supplied Larian with Mattel's confidential and proprietary information to prove their value to MGA and to improve their negotiating position with MGA.  During March 10, 2004 meetings with Larian,

MATTEL'S FOURTH AMENDED ANSWER AND COUNTERCLAIMS

TX 24886-00041

Kuemmerle and another MGA executive in Mexico City, Machado, Vargas, and Trueba gave a powerpoint presentation about the toy market in Mexico which they created by using Mattel confidential information and trade secrets, as well as information Mattel had purchased; they did so without Mattel's knowledge or agreement.

45.    By at least March 3, 2004, Machado, Trueba and Vargas were discussing with MGA personnel, including Larian, specific details regarding setting up MGA offices in Mexico City.  On information and belief, prior to their resignations, Larian and others at MGA directed Machado, Trueba and Vargas to steal as much Mattel confidential and proprietary information as they could access and bring it with them to MGA.

46.    Beginning weeks before their resignation and after numerous communications with Larian and other MGA personnel, Machado began transferring Mattel confidential and proprietary information to portable USB storage devices (also known as "thumb drives") that he connected to his Mattel computer. On Friday, April 16, 2004, the last business day before he gave notice, Machado copied at least 70 sensitive documents to one or more portable USB storage devices.

47.    During this same period, Vargas and Trueba also copied a host of confidential and proprietary materials to one or more portable USB storage devices, including sales plans, sales projections and customer profiles.

48.    Trueba also took additional steps to increase her access to Mattel's confidential information before her resignation.  Four days before leaving, Trueba went out of her way to attend a meeting in which Mattel personnel analyzed BARBIE programs for the United States, Canada and South America.  Two days before her resignation, she contacted both a Mattel employee located in El Segundo, California and Mattel's advertising agency to request updated confidential information about advertising plans for BARBIE.  On information and belief, Trueba acted at the direction of MGA and Larian and did so in order to obtain

00505.07975/3437282.1

- 40 -

further information that would allow MGA to obtain unfair competitive advantage over Mattel.  Shortly before they resigned, Vargas and Machado attended a three-day off-site meeting of all senior employees of Mattel Mexico.  The sole purpose of the meeting was to establish the business strategy that Mattel Mexico, and each of the departments within Mattel Mexico, would follow for the next three years.  At the time that they attended this meeting, they knew that they would be leaving to work for MGA.  Machado, and on information and belief Vargas, took copious notes of each of the strategy sessions.  They stole those notes.

49.     Machado, Trueba and Vargas stole virtually every document a competitor would need to enter the Mexican market and to compete unlawfully with Mattel not only in Mexico, but also in the United States and elsewhere.  They stole global internal future line lists that detailed anticipated future products; production and shipping costs for Mattel products; daily sales data for Mattel products; customer data; sales estimates and projections; marketing projections; documents analyzing changes in sales performance from 2003 to 2004; budgets for advertising and promotional expenses; strategic research reflecting consumer responses to products in development; media plans; consumer comments regarding existing Mattel products; customer discounts and terms of sale; customer inventory level data; assessments of promotional campaign success; market size historical data and projections; marketing plans and strategies; merchandising plans; retail pricing and marketing strategies; notes from the general and department-specific offsite strategy conference and other similar materials.

50.     The stolen data was not limited to the Mexican market.  The information stolen would, and did, give MGA an unfair competitive advantage in the United States and around the world.  Further, the stolen information was not located exclusively in Mexico, but included confidential and proprietary information that resided on Mattel computers in Phoenix, Arizona and El Segundo, California, and/or documents which were originally created by personnel in El Segundo.

Included among these stolen documents was Mattel's internal line lists, which included information for BARBIE products for the upcoming year and included, for each product, the expected profit margin, advertising expenditures, expected volume and marketing strategy. On information and belief, Machado, Trueba or Vargas delivered that internal line list to Larian or another MGA officer during their negotiations with MGA.

51. On April 19, 2004, Machado, Trueba and Vargas each resigned their positions with Mattel, effective immediately. They stated that they had been hired by a Mattel competitor, but refused to identify that competitor. They were anxious to leave the offices of Mattel Mexico and did so without receiving their last paychecks. When Mattel met with them to provide them their last paychecks, Machado, Vargas and Trueba each refused to sign an acknowledgment that they had not taken or disclosed Mattel confidential information and trade secrets.

52. Shortly after Machado, Trueba and Vargas simultaneously resigned, they traveled from Mexico to Los Angeles to meet with MGA personnel, including Larian, where they made yet another presentation to Larian that, on information and belief, contained Mattel confidential information and trade secrets relating to both the Mexican and international operations of Mattel, and was prepared using Mattel trade secrets.

53. MGA Mexico had no office, computers, materials, personnel, sales information, pricing information, advertising or promotion information, margin information or any other of the types of information (except product identification) necessary to operate a direct distribution toy business in Mexico. Machado, Vargas and Trueba, with the full knowledge of Larian and Kuemmerle, proceeded to use the Mattel trade secrets that they had stolen to copy the strategy that Mattel had been executing in Mexico. They used the sales, pricing, advertising, marketing, customer terms and discounts, budgets and other financial information to ensure that they could obtain every advantage over Mattel, including sales to

1  retailers, prices and margins offered retailers, advertising and marketing.  MGA later

2  claimed publicly that in 2005, it increased its Mexican market share by 90 percent

3  over the prior year.  This increase came at the expense of Mattel, which lost market

4  share during the first few years of MGA de Mexico's operation in Mexico and was

5  forced to increase its advertising and promotional spending to offset further losses.

6         54.    Machado, Trueba and Vargas attempted to conceal their

7  widespread theft of Mattel's proprietary information.  Machado ran a software

8  program on his Mattel personal computer in an attempt to erase information,

9  including information that would reveal the addresses to which he had sent, or from

10  which he had received, e-mail messages.  Machado also damaged the hard drive of

11  the personal computer that he used at Mattel.

12         55.    After conducting an investigation, Mattel notified Mexican

13  authorities about the theft of its trade secret and confidential information.  On

14  October 27, 2005, the Mexican Attorney General Office obtained a search warrant

15  from the Mexican Federal Criminal Courts for MGA's facilities in Mexico City.  In

16  that search, the Mexican authorities found and seized from MGA's offices both

17  electronic and paper copies of a large number of documents containing Mattel trade

18  secrets, including those that Mattel had uncovered through its forensic investigations

19  plus many others that Mattel had not known had been stolen.  Stolen documents

20  recovered during the search were located on the respective desks and in the offices

21  of Machado, Vargas and Trueba.  A CD containing stolen Mattel files combined

22  with MGA working files was also located in the office of Machado.  Certain

23  electronic files on the CD showed that they had been accessed after Machado,

24  Vargas and Trueba resigned.  The search was witnessed by two MGA Mexico

25  employees and a third MGA Mexico employee placed his signature on each page of

26  the hard copy documents located during the search.  A copy of the documents and

27  the CD was left with MGA Mexico.  Those materials remained on the desk and in

28  the office of the head of MGA Mexico, Susanna Kuemmerle, for a number of

TX 24886-00045

months, if not longer, when she delivered those materials to MGA's counsel, and they were produced to Mattel during discovery.

56.    MGA did not terminate Machado, Vargas and Trueba when it learned of their theft, use and disclosure of Mattel trade secrets.  To the contrary, based on Machado's "performance" in Mexico, Larian subsequently promoted him, and he was transferred to MGA's main office in Van Nuys, California.  Since the theft occurred, MGA has paid lawyers to defend Machado, Vargas and Trueba and continues to pay for lawyers for Machado and Trueba, even though neither of them is currently employed by MGA.

## IV.    MGA STEALS MATTEL TRADE SECRETS IN CANADA

57.    In an effort to increase its market share and sales in Canada and elsewhere, MGA stole Mattel trade secrets regarding Mattel's customers, sales, projects, advertising and strategy, not only for Canada, but the United States and the rest of the world.

58.    Janine Brisbois was a Director of Sales for the Mattel Girls Division in Canada.  Mattel originally hired her as a National Account Manager in August 1999.  When she was hired as a Mattel employee, Brisbois agreed that she would preserve and would not disclose Mattel's proprietary or confidential information.  Brisbois agreed:  "You must keep Mattel's Proprietary Information confidential, and you may only use or disclose such information as necessary to perform your job responsibilities in accordance with Mattel policies.  Your obligation to keep Mattel's Proprietary Information confidential will continue even after any termination of your employment with your employer."

59.    At Mattel, Brisbois had responsibility for Mattel's account with TRU and later had responsibility for Mattel's Wal-Mart account.  In her capacity as Sales Director-Wal-Mart/CTC/Girls Team, Brisbois had access to Mattel confidential and proprietary information regarding Mattel's future product lines, advertising and promotional campaigns and product profitability.

- 44 -

MATTEL'S FOURTH AMENDED ANSWER AND COUNTERCLAIMS

TX 24886-00046

60.     On September 26, 2005, Brisbois resigned from Mattel to take a position as Vice President of Sales at MGA.  In that position Brisbois had responsibility for MGA's accounts with both TRU and Wal-Mart.  During Brisbois' exit interview she was specifically asked whether she was "taking anything." Brisbois responded, "No."  Both during and after her exit interview, Brisbois was advised by Mattel of her obligations to preserve Mattel's confidential and proprietary information.

61.     Brisbois spoke with Larian, MGA's CEO, on September 22, 2005, four days before she resigned, at approximately 8:30 p.m., when he called Brisbois at her home.  Mattel subsequently learned that on the same day that she spoke with Larian, Brisbois copied approximately 45 Mattel documents onto a USB or "thumb" drive with the volume label "BACKPACK."  Brisbois also took numerous Mattel documents to her home in the weeks prior to her resignation. These documents contained Mattel trade secret and proprietary information, including:

- a document containing the price, cost, sales plan and quantity of every Mattel product ordered by every Mattel customer in 2005 and 2006;

- the BARBIE television advertising strategy and information concerning sales increases generated by television advertisements;

- competitive analysis of Mattel vis-à-vis its competitors in Canada;

- an analysis of Mattel's girls business sales beginning in 2003 and forecasts through 2006;

- profit and loss reviews for Mattel's products being sold in Wal-Mart, including margins and profit in not only Canada, but in the United States and Mexico; and

- a document containing the product launch dates and related advertising for all Mattel new products between Fall 2005 and Spring 2006.

1         62.    After Mattel discovered that Brisbois had copied these sensitive

2    documents to a thumb drive, it notified Canadian law enforcement authorities.

3    Canadian law enforcement authorities recovered from Brisbois a thumb drive with

4    the volume label "BACKPACK" containing the documents that Brisbois had copied

5    from Mattel's computer system.  Mattel later learned that while she was working as

6    a Vice President of Sales at MGA, Brisbois accessed and modified the Mattel trade

7    secret documents on that thumb drive, incorporated portions of the stolen Mattel

8    documents into documents she used in her work at MGA and showed those

9    documents to other MGA employees, including the President of MGA Canada.

10         63.    MGA never punished Brisbois for these wrongful acts.  After

11    joining MGA, Brisbois repeatedly traveled to MGA's offices in Van Nuys,

12    California and met with Larian and Brawer.  In February, 2006, knowing that Mattel

13    trade secrets had been seized from MGA's Mexico City offices and that at least

14    three MGA employees were under criminal investigation, MGA nonetheless issued

15    a press release trumpeting its 2005 performance, with Larian himself concluding,

16    "Our international teams in Mexico and Canada have done a fantastic job."

17    **V.    MGA HIRES AND SEEKS TO HIRE OTHER KEY MATTEL**

18          **PERSONNEL TO OBTAIN MATTEL'S TRADE SECRET AND**

19          **HIGHLY CONFIDENTIAL INFORMATION**

20         64.    <u>Ron Brawer</u>:  On October 1, 2004, Mattel's Senior Vice

21    President and General Manager, Ron Brawer, left Mattel and joined MGA.  Brawer

22    was hired by Tyco Toys, Inc. a predecessor to Mattel, on April 22,1996, and became

23    a Marketing Director for Mattel on April 9, 1997.  Over the course of the next seven

24    years, Brawer advanced to the position of Senior Vice President/General Manager.

25    He held positions of trust and confidence at Mattel, and was provided access to

26    information that was both sensitive and confidential, including, but not limited to,

27    detailed information related to development, marketing, pricing, shipping, and

28    performance of Mattel's then-current and anticipated future product lines, and other

confidential business plans between Mattel and its most significant retail customers. Brawer entered into an Employee Invention & Trade Agreement with Tyco upon his first employment, and remained bound by that agreement throughout his tenure at Mattel.  A true and correct copy of Brawer's agreement with Mattel requiring him to maintain the confidentiality of Mattel's information and not disclose it in any form is attached as Exhibit H.

65.     On or about May 10, 2004, Brawer began performing General Manager duties, working with one of Mattel's major retail customer accounts. Thereafter, Brawer began receiving information related not only to the Senior Vice President, Customer Marketing position that he still formally held, but also related to his role as General Manager.  Brawer began requesting detailed information related to Mattel and its four key retail accounts.

66.     Upon joining MGA, Brawer became its Executive Vice-President of Sales and Marketing.  In that role he was responsible for MGA's sales in North America.  As part of those responsibilities, Brawer had and continues to have responsibility for MGA's accounts with the same retailers that he worked with while at Mattel.

67.     Brawer represented during his Mattel exit interview that he had returned all proprietary information to Mattel.  On information and belief, however, Brawer removed proprietary and trade secret information from Mattel that he did not return and used that information at MGA to the detriment of Mattel.  Moreover, based on his knowledge of Mattel's operations and the roles of certain Mattel employees, Brawer has targeted certain Mattel employees who have broad access to Mattel proprietary information in an effort to induce and encourage them to join MGA and to steal or otherwise wrongfully misappropriate Mattel confidential information and trade secrets.

68.     <u>Jorge Castilla</u>:  On March 13, 2006, MGA hired Jorge Castilla, Mattel's Planning Specialist for Operations, Planning & Finance.  Before he left

Mattel, Castilla stole on behalf of counter-defendants significant Mattel trade secrets and proprietary information.

69.   Castilla joined Mattel in November 1999 and, working both in Europe and the U.S., played a role in Mattel's development of highly proprietary processes and systems for forecasting and inventory management in which Mattel invested heavily.  In Mattel's European operations, Castilla was involved in Mattel's development of a pilot program to improve sales forecasting in the United Kingdom, and later, with the potential application of the pilot program to Mattel's world-wide sales forecasting.

70.   In late 2004, Castilla worked with the International Planning group at Mattel's headquarters in El Segundo, California, where he was responsible for establishing Mattel's Electronic Data Warehouse system, a proprietary database containing highly confidential business information, such as sales, future/pending orders, product availability and sales forecasts at the stock keeping unit level. Additionally, he was responsible for implementing Mattel's customized sales forecasting system and preparing information for senior financial officers regarding inventory levels, sales demands and related topics.

71.   Through his tenure at Mattel, Castilla became privy to some of Mattel's most confidential and valuable information.  Castilla acknowledged his position of trust and confidence and agreed that he would preserve and would not disclose or misuse Mattel's proprietary or confidential information on numerous occasions.  In Castilla's Employee Confidential Information and Inventions Agreement, which he signed on October 29, 1999, he acknowledged that he would develop and have access to Mattel proprietary information.  Castilla further agreed not to "disclose or use at any time either during or after my employment with [Mattel], any Proprietary Information," and to "cooperate with the Company and use [his] best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information."  He also agreed that when he left Mattel's employ, he

MATTEL'S FOURTH AMENDED ANSWER AND COUNTERCLAIMS

TX 24886-00050

1  would deliver to Mattel "all tangible, written, graphical, machine readable and other

2  materials (including all copies in [his] possession or under [his] control containing

3  or disclosing Proprietary Information." A true and correct copy of Castilla's

4  agreement with Mattel is attached as Exhibit I.

5         72.    On Monday, March 13, 2006, Castilla informed Mattel that he

6  was resigning to take a position with MGA, as a Manager of Global Sales Planning,

7  with responsibilities that substantially paralleled those that he had at Mattel.

8         73.    During Castilla's exit interview on March 13, 2006, he was

9  provided with a document reminding him of his obligations to preserve Mattel's

10  confidential and proprietary information, including his obligations under Mattel's

11  Employee Confidential Information and Inventions Agreement which applies to

12  "inventions, marketing plans, product plans, business strategies, forecasts and

13  personnel information." Further, Castilla filled out an exit interview checkout form,

14  in which he acknowledged receiving not only the reminder, but also the Mattel Code

15  of Conduct. Castilla also acknowledged that, during the course of his employment

16  at Mattel, he had received materials containing confidential and proprietary

17  information, and affirmed that he did not copy or disclose any of the listed

18  documents or the information that they contained to anyone outside of Mattel, and

19  denied having possession of any of the listed documents. He also affirmed that he

20  returned to Mattel all of its confidential and proprietary documents by representing

21  that he "brought them in on March 12, 2006, filed them and put together a summary

22  of ongoing projects for supervisor, Brenda [Ray-Martin]."

23         74.    Notwithstanding these affirmations, Castilla had created, by

24  Friday, March 10, 2006, a folder on his Mattel network share drive that he labeled

25  "To Take." The folder contained approximately 56 megabytes of information, the

26  bulk of which were documents containing Mattel trade secrets and confidential

27  information. Among them was a comprehensive collection of documents sufficient

28  to demonstrate and describe the function, method and manner of operation of