UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HONORABLE DAVID O. CARTER, JUDGE PRESIDING

- - - - - - -

# CERTIFIED TRANSCRIPT

| | |
|---|---|
| MATTEL, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| MGA ENTERTAINMENT, INC., et al., ) | No. CV 04-9049-DOC (RNBx) |
| ) | Day 44 |
| ) | Volume 3 of 3 |
| Defendants. ) | |
| _____) | |

REPORTER'S DAILY TRANSCRIPT OF PROCEEDINGS
JURY TRIAL
SANTA ANA, CALIFORNIA
FRIDAY, APRIL 1, 2011

Denise Paddock, CSR 10199, CMRS, RMR, CRR
Federal Official Court Reporter
United States District Court
411 West 4th Street, Room 1-053
Santa Ana, California 92701
transcripts@ocrecord.com www.ocrecord.com
040111 DCCD CR 9D CARTER MATTEL CIVIL JURY TRIAL DAY 44 V3
04/01/2011

**APPEARANCES OF COUNSEL:**

FOR PLAINTIFF MATTEL, INC., ET AL.:

      QUINN EMANUEL URQUHART & SULLIVAN LLP
      BY: JOHN QUINN
          WILLIAM PRICE
          MICHAEL T ZELLER
          Attorneys at Law
      865 S Figueroa Street, 10th Floor
      Los Angeles, CA 90017-2543
      213-443-3000

FOR DEFENDANT MGA ENTERTAINMENT, INC., ET AL:

      ORRICK HERRINGTON & SUTCLIFFE LLP
      BY: THOMAS S McCONVILLE
          Attorney at Law
      4 Park Plaza, Suite 1600
      Irvine, CA 92614
      949-567-6700

      - AND -

      ORRICK HERRINGTON & SUTCLIFFE LLP
      BY: ANNETTE L HURST
          Attorney at Law
      405 Howard Street
      San Francisco, CA 94105
      415-773-5700

      KELLER RACKAUCKAS LLP
      BY:  JENNIFER L KELLER
          Attorney at Law
      18500 Von Karman Avenue, Suite 560
      Irvine, CA 92612
      949-476-8700

UNITED STATES DISTRICT COURT

1  **APPEARANCES OF COUNSEL (Continued):**

2

3

4    FOR CARLOS GUSTAVO MACHADO GOMEZ:

5          LAW OFFICES OF MARK E OVERLAND
           BY: Mark E Overland
6              Attorney at Law
           100 Wilshire Boulevard, Suite 950
7          Santa Monica, CA 90401
           310-459-2830
8
           -AND-
9
           SCHEPER KIM AND HARRIS LLP
10         BY: ALEXANDER H COTE
               Attorney at Law
11         601 West Fifth Street, 12th Floor
           Los Angeles, CA 90071-2025
12         213-613-4655

13         ALSO PRESENT:

14         MGA ENTERTAINMENT, INC.
           BY: JEANINE PISONI
15             Attorney at Law
           16360 Roscoe Boulevard, Suite 105
16         Van Nuys, California 91406

17

18   ALSO PRESENT:

19             KEN KOTARSKI, Mattel Technical Operator

20             MIKE STOVALL, MGA Technical Operator

21

22

23

24

25

UNITED STATES DISTRICT COURT

1                    SANTA ANA, CALIFORNIA; FRIDAY, APRIL 1, 2011,

2                         Day 44, Volume 3 of 3

3                            P.M. SESSION

4                    (Open court - jury not present.)

16:13 5              THE COURT:  All right.  We're on the record, all

6        counsel are present.

7                    I'm going to return to Mattel three tapes that the

8        court views as being irrelevant.

9                    Those are personally being handed to Mr. Price.

16:14 10             There's one tape that contains information about

11       Bratz.  You two can jointly possess it; it's

12       Yankelovich 2005.

13                   That's been handed to Ms. Keller and Mr. Zeller.

14                   Concerning the next issue, the court's going to

16:14 15     allow MGA's counsel to question the Mattel witnesses,

16       including Mr. Eckert and Mr. Vollero, about the date of

17       production of this latest batch of e-mails concerning

18       Mattel's negotiation with Kohl's.

19                   During the cross-examination of Mr. Larian,

16:14 20     Mattel's counsel called into question the good faith of

21       Mr. Larian's belief that Mattel had paid Kohl's to terminate

22       its contract with MGA.

23                   At the time Mr. Larian was unable to substantiate

24       his assertion with any evidence, and that may have impeached

16:14 25     his credibility.

Case 2:04-cv-09049-DOC-RNB   Document 10377   Filed 04/04/11   Page 5 of 13   Page ID #:315411
CV 04-9049 DOC - 04/01/2011 - Volume 3 of 3

5

1          The fact-finder's entitled to learn that Mr. Larian

2    was not able to point to these e-mails during his examination

3    because these e-mails had not yet been produced.

4          Mattel has responded that the jury will improperly

16:15 5    conclude that Mattel committed some wrongdoing in withholding

6    these e-mails.

7          Mattel argues that no court order or other

8    discovery request compelled the production of these materials

9    until the court's March 30th, 2011, order granting MGA's

16:15 10    ex parte application at Docket No. 9000.

11          I find that argument by Mr. Quinn to be

12    unconvincing.

13          First, if, in fact, there had been no discovery

14    request or order compelling the production of communications

16:15 15    between Mattel and Kohl's about MGA, then Mattel would not

16    have produced the initial e-mail from Milt Zablow to

17    Jerry Cleary dated January 27th, 2005, with the subject

18    "Kohl's -- great news, Barbie."

19          That e-mail was produced on October 12th, 2010,

16:15 20    which suggests that there had been prior discovery requests

21    and orders that required the production of such materials and

22    that Mattel may have thereafter selectively disclosed

23    documents.

24          Second, discovery master Infante's May 22nd, 2000,

16:16 25    order compelled the production of exactly these

1    types of materials.

2            The discovery master, Judge Infante, ordered the

3    production of materials in response to the following two MGA

4    requests for production.  In MGA's First Set of Requests for

16:16 5    Production of Documents and Things, Request No. 62:

6            "All documents, including but not limited to,

7    communications referring or relating to any interference with

8    or inhibition of the sales or potential sales of MGA's

9    products (including but not limited to "Bratz") or referring

16:16 10    or relating to any limitations or restrictions on any

11    retailer's ability to purchase, promote, advertise, develop,

12    design or sell "Bratz" or other MGA products worldwide."

13            Request No. 64:

14            "All documents, including but not limited to,

16:17 15    communications referring or relating to any third-party's

16    agreement or decision not to license, manufacture, promote,

17    distribute or sell any MGA products or supply materials or

18    services to MGA worldwide."

19            In the language that is directly applicable to

16:17 20    Mattel's dealings with Kohl, Discovery Master Infante held

21    that "these requests seek information relevant to MGA's

22    allegation that Mattel interfered with its business

23    dealings."

24            Discovery Master Infante later denied Mattel's

16:17 25    request for reconsideration of that order and in doing so

1    rejected the contention Mattel now makes, that the requests

2    were limited to the specific retailer or licensee

3    relationships listed in MGA's complaint.

4         Instead Discovery Master Infante held that Mattel's

16:17 5    "belief" was unreasonable.  He held that Mattel's production

6    obligations extended beyond "the specific companies or

7    instances identified in the complaint and interrogatory

8    responses."

9         That can be found at Docket No. 688.

16:18 10         There's no ambiguity in Discovery Master Infante's

11    order.  This batch of communications concerning Kohl's should

12    have been produced earlier.

13         This matter's been docketed.  It's being sent over

14    to your BlackBerrys now.

16:18 15         You are to remain in my court.  You are at my

16    disposal.

17         MR. QUINN:  For the record, Your Honor, I had

18    understood the court had said we would have a chance to

19    respond, and we haven't had one.

16:18 20         THE COURT:  Get me a written response to my order.

21         Thank you.

22         (Recess taken.)

23         THE COURT:  All right.  Here's my tentative ruling

24    concerning Mr. Moore, who is next door.

17:11 25         I reviewed the discovery master's report and

Case 2:04-cv-09049-DOC-RNB   Document 10377   Filed 04/04/11   Page 8 of 13   Page ID #:315414
CV 04-9049 DOC - 04/01/2011 Volume 3 of 3

8

1   recommendation which I have docketed and have had handed to

2   counsel, and in light of the recommendation I conducted an

3   independent in-camera review of the subject documents,

4   including Mr. Moore's notes.

17:12 5          I'm concluding that these notes are cumulative of

6   evidence already in the record, specifically the trial

7   exhibits I had called for earlier this afternoon, which are

8   Exhibits No. TX 01195RD-00066 and TX 36114C-00034.

9          I've anticipated the argument by MGA, which I hope

17:12 10  to be as follows:  That this will somehow affect your ability

11  to cross-examine Mr. Moore.

12         But I've already permitted a deposition of both

13  Mr. Moore and Ms. Thomas, both in-house counsel for Mattel,

14  and their testimony is also cumulative of the testimony from

17:12 15  these depositions.

16         There may be some scattered notes about other

17  Mattel employees' knowledge, but those wouldn't come in

18  anyway because they're hearsay.

19         Now I'm briefly going to hear from MGA concerning

17:13 20  the court's ruling.

21             (Pause in the proceedings.)

22         MS. HURST:  Your Honor, may we inquire as to the

23  identity of the interviewees, which is not something of which

24  we are presently aware.  And according to the latest order

17:13 25  from the discovery master, it appears there are

1       ten different documents.

2              If we understand those to be interviews with ten

3       different persons, we'd like to know the identity of those

4       persons in order to be able to respond.

17:13 5        THE COURT:  Well, I'll consider that, Counsel,

6       but --

7              MS. HURST:  Identity is not either work product or

8       privilege, Your Honor.

9              THE COURT:  I understand that, I'll set out a

17:13 10     better record.  I didn't want to keep you until all hours.

11              Although I set the special master about his

12     independent review, it's obvious it became a very close

13     question, so I've had time now to research and I'm going to

14     find that it's cumulative.  That's why I called for these

17:14 15     documents earlier.

16              MS. HURST:  Your Honor, it's -- and without knowing

17     the contents of the documents, it's very difficult to

18     respond.

19              THE COURT:  No, you're not in that position, are

17:14 20     you?

21              MS. HURST:  I know.

22              However, it's hard to imagine that

23     contemporaneous -- well, witness statements much closer in

24     time to the events would be cumulative to the testimony that

17:14 25     we've had during the trial of a lot of "I don't remembers"

UNITED STATES DISTRICT COURT

CV 04-9049 DOC - 04/01/2011 Volume 3 of 3

```
 1    and "I don't knows."

 2              THE COURT:  Okay.

 3              MS. HURST:  And although it would arguably be

 4    hearsay, it would also be an admission for -- if it was

 5    Mattel employees acting in the scope of their employment, and

 6    it would be certainly something that could be used to refresh

 7    recollection, and we've had a lot of witnesses who have said

 8    they don't remember.

 9              And so, you know, without knowing what it is,

10    obviously we're not in a real position to assess all of that.

11    But even 1195, for example, is redacted -- Page 76 is

12    redacted -- and we have the assertions of fraudulent

13    concealment by Mattel and it's -- it's hard to imagine that

14    these statements would be cumulative, especially with respect

15    to an issue of fraudulent concealment.

16              THE COURT:  Okay.  Well, thank you.

17              Now, what are we going to do the rest of this

18    evening?

19              How -- you, once again, are governing me, so you

20    tell me what your schedule is.

21              MR. ZELLER:  So we have the -- the court's order

22    about getting under control the originals and the tangibles

23    by 7:00 p.m. and we're well underway with that.  We do need

24    access, because the court has them, of the sculpts.  We'd

25    appreciate the opportunity to -- we're not going to obviously
```

CV 04-9049 DOC - 04/01/2011 - Volume 3 of 3

```
 1    take them out of the courthouse but do we want to have
 2    control over them so with can understand.
 3              THE COURT:  You and Ms. Hurst?
 4              MR. ZELLER:  Yeah.
17:16  5        THE COURT:  And what else?
 6              MR. ZELLER:  And then we also have, and we will
 7    have in our possession by 7:00, control over the originals as
 8    well as a list that eliminates all the duplicates.
 9              THE COURT:  Okay.
17:16 10        MR. ZELLER:  So that, we expect, should be done in
11    relatively short order, certainly by 7:00.
12              There will be a subset of drawings.  I'm just
13    ballparking the number, but it will be ten or less in which
14    MGA and Bryant never produced "originals."
17:16 15        And so at some point -- and maybe we'd do it now --
16    I would like an opportunity to be heard as to why we think
17    that those photocopies, in lieu of the originals, should be
18    submitted to the jury.
19              THE COURT:  I'll give you that opportunity.
17:16 20        MR. ZELLER:  And just so the court is aware of what
21    our view is, is that we believe under Rule 1004,
22    Subsections 1 -- 1 and 3 apply here, which are basically
23    exceptions for originals; and the first one is, is where the
24    originals have been lost or destroyed or, No. 3, where the
17:17 25   original is in possession of the opponent, which is -- that's
```

UNITED STATES DISTRICT COURT

    1    the situation here.

    2            And why I'm not trying to lay fault on anyone for

    3    not having the originals, the fact is that those were never

    4    under our control.

17:17  5            THE COURT:  And how do we know which ones are

    6    referred to in 502? because obviously it sets the court down

    7    the, you know, wrong path when I see that many duplicates.

    8            MR. ZELLER:  What we will do is we will separately

    9    identify to the court -- again I'm ballparking the

17:17 10    ten-or-less photocopies that we have in which there is no

   11    corresponding original.

   12            THE COURT:  Okay.  By what time?

   13            MR. ZELLER:  That will be done, certainly, by 7:00,

   14    but it's really a matter of -- we're substantially through

17:17 15    this task.

   16            THE COURT:  Okay.  Well, then what else are we

   17    going to do tonight?

   18            MR. QUINN:  Your Honor, I'm -- I'm actually not

   19    feeling very well.

17:18 20            THE COURT:  Okay.  Let's get you home.  Let's get

   21    Mr. Price home.

   22            Let's get all of you home.

   23            Why don't we do this:  Why don't we get you back to

   24    your hotels or your homes, reconvene at 8:00 tomorrow, get

17:18 25    you a good night's sleep.  Okay?

CV 04-9049 DOC - 04/01/2011 - Volume 3 of 3

1         Why don't we handle those sculpts tomorrow just so

2    you're not waiting around until 7:00.  That seems rather

3    ridiculous.

4              So, goodnight, and we'll see you promptly at 8:00.

17:18  5          ALL RESPONSE:  Thank you, Your Honor.

6              (Adjournment at 17:18 to resume on Saturday,

7    April 2, 2011 at 8:00 a.m.  Next session reported by

8    Denise Paddock.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25