UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

THE HONORABLE DAVID O. CARTER, JUDGE PRESIDING

MATTEL INC., et al.,          )
                              )
                Plaintiff,    )
                              )     DAY 45
          vs.                 ) No. CV 04-9049-DOC
                              )     VOLUME 4 OF 4
MGA ENTERTAINMENT, INC.,      )
                              )
                Defendant.    )
_____)


REPORTER'S TRANSCRIPT OF PROCEEDINGS

JURY TRIAL

SANTA ANA, CALIFORNIA

MONDAY, APRIL 4, 2011




Maria Beesley-Dellaneve, RPR, CSR 9132
Official Federal Reporter
Ronald Reagan Federal Building, room 1-053
411 West 4th Street
Santa Ana, California 92701
(714) 564-9259

1   **APPEARANCES OF COUNSEL:**

2   **FOR THE PLAINTIFF:**  QUINN EMANUEL URQUHART OLIVER & SULLIVAN
                            BY:  MICHAEL ZELLER, ESQ.
3                           and  JOHN QUINN, ESQ.
                            865 S. FIGUEROA
4                           10TH FLOOR
                            LOS ANGELES, CALIFORNIA 90017
5                           (213)443-3000

6

     FOR THE DEFENDANTS:  ORRICK, HERRINGTON & SUTCLIFFE
7                           BY:  ANNETTE HURST, ESQ.
                            405 HOWARD STREET
8                           SAN FRANCISCO, CALIFORNIA 94105
                            (415)773-5700
9

10
     FOR THE DEFENDANTS:  ORRICK HERRINGTON & SUTCLIFFE
11                          BY:  THOMAS MCCONVILLE, ESQ.
                            4 PARK PLAZA
12                          SUITE 1600
                            IRVINE, CALIFORNIA 92614
13                           (949)567-6700

14
                            KELLER RACKAUCKAS
15                          BY:  JENNIFER KELLER, ESQ.
                            18500 VON KARMAN AVENUE
16                          SUITE 560
                            IRVINE, CALIFORNIA 92612
17

18
     FOR CARLOS MACHADO GOMEZ: LAW OFFICES OF MARK E. OVERLAND
19                          BY:  MARK OVERLAND, ESQ.
                            100 WILSHIRE BLVD
20                          SUITE 950
                            SANTA MONICA, CA. 90401
21                          (310) 459-2830

22

23

24

25

```
 1                      - AND -

 2               SCHEPER KIM & HARRIS LLP
                 BY:  ALEXANDER COTE, ESQ.
 3               601 WEST 5TH STREET_12TH FLOOR
                 LOS ANGELES, CA. 90071
 4               (213) 613-4660

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 4

1          SANTA ANA, CALIFORNIA; MONDAY, APRIL 4, 2011

2                              -oOo-

3          **THE COURT:**  Back on the record.

4          Mr. Quinn, is your concern on the Bratz Winter

5     Wonderland collection because of the testimony of Malackowski that

6     I'm hearing?  In other words, is that what you need to rebut?  Is

7     that where it comes in?  Because that's the first time --

8          **MR. QUINN:**  Only in the sense that it's one of the

9     claimed trade secrets.

10         **THE COURT:**  Understood.  It's also sitting on page 33,

11    it's the fourth item down.  It's worth 5. -- well, claimed head

12    start of 5.773 million.  That's what you need Winter Wonderland to

13    rebut that; correct?  You need testimony concerning that?

14         **MR. QUINN:**  Yes.

15         **THE COURT:**  And you want to get that from Carter Bryant?

16         **MR. QUINN:**  Yes.

17         **THE COURT:**  The first one through five questions.

18         **MR. QUINN:**  Yes.

19         **THE COURT:**  Where else did that occur?

20         **MR. QUINN:**  I'm sorry, Your Honor?

21         **THE COURT:**  Winter Wonderland.

22         **MR. QUINN:**  Where else did it occur?

23         **THE COURT:**  Yes, in the testimony.  It's not the first

24    time I heard it.  I heard it briefly at some other point, I think

25    but I'm not certain.

1      **MR. QUINN:**  It might have been one of the products --

2  maybe somebody can remember better than I can -- that Mr. Larian

3  testified to.

4      **THE COURT:**  I heard it one other time.  Okay.  That's

5  fine.

6      Second, I want to go back to the concern by Mr. Zeller

7  on 24825.  Is Mr. Zeller here?  This is the front page you were

8  concerned about.  Let's take that up for a moment.  Let me see if

9  I can understand that.  Let me speak to you and Mattel's counsel,

10  Mr. Quinn and Mr. Price.

11      My exclusion of Hong Kong was because of the comparative

12  similarities, but I never intended to exclude you in terms of

13  notice.  So that prior ruling I have reversed when I had a chance

14  to look at it in chambers concerning the dates on the bottom of

15  the drawings.  That front page showed, hypothetically, or that

16  exhibit, when you got that document; correct?

17      **MR. ZELLER:**  That's true.

18      **THE COURT:**  That's what you need it for.  You need it

19  for the notes provision.

20      **MR. ZELLER:**  That's entirely it.

21      **THE COURT:**  I frankly thought it was moving so fast that

22  I couldn't get my hands on the document, so I thought Hong Kong

23  was flying in.

24      **MR. ZELLER:**  I just didn't make that connection.

25      **MR. QUINN:**  We have given up on Hong Kong.  We have

Page 6

1   moved to Brazil now.

2         THE COURT:  But I do apologize.  I just couldn't track

3   it fast enough, and I thought it was going to come in on a wing

4   and a prayer, which is why, when you said you couldn't proceed,

5   that it caught me by surprise.

6         MR. ZELLER:  Also, the front pages, what it will help do

7   is link up to the Exhibit A so that there is no question that

8   these are in fact -- these are the documents that Mr. Moore

9   received so that we don't have an issue about well, is this really

10  what he got at the time and how did he get it.  They can all be

11  shown on the face of Exhibit A to the agreement.

12        THE COURT:  I understand now.  I thought we were back to

13  the continuing and ongoing saga of the exhibits to the Hong Kong

14  litigation.

15        MS. KELLER:  Your Honor, on the front page of 10-1 is --

16        THE COURT:  No, no.  Now we're going to move to 10-61,

17  Mr. Zeller.

18        MR. ZELLER:  Yes.

19        THE COURT:  Want to see 10-1?

20        MR. ZELLER:  Yes.

21        THE COURT:  Then we'll move to 39,842.  Just joking,

22  counsel.  10-1.

23        Now, the front page.  First of all, is there some

24  concern about 24825, and the front page of 24825 by MGA?

25        MS. KELLER:  Well, not other than our position all along

1   that showing a front page of a lawsuit in any jurisdiction is

2   something that shouldn't be happening.

3          THE COURT:  Well, it's only received because of the

4   dates noted on it.

5          MS. KELLER:  We can stipulate to the dates.  We could

6   stipulate that the document shows on the front page the date of

7   18th of June, 2002.

8          THE COURT:  What is your real concern here?  The names

9   that are included, toys and trends, or City World Limited, which

10  has already been testified to?

11         MS. KELLER:  It's that it shows litigation, Your Honor.

12  The Court has been pretty careful about keeping out evidence of

13  litigation, for example, that Mattel has been involved in, and I

14  know that we have been involved in.  And this changes that.  And I

15  think it has a tendency to make us look litigious because the

16  jurors don't know what the lawsuit is about.  They just know it's

17  a lawsuit.

18         THE COURT:  I'm trying not to make any either of you

19  look litigious.  The problem is that litigiousness on MGA's part

20  may be self-imposed.  By the same token, you have had a lot of

21  litigation forced on you because of that worldwide injunction.  So

22  it's a pretty difficult place for both parties, and I'm trying to

23  keep you out of it, of the litigation.

24         Also, you can see towards the end of the lawsuit why the

25  Court made some of the initial rulings.  Many of those I have had

Page 8

1    to backtrack on because they became circles and circles of trials

2    within trials.  I want you to know in good faith, for both

3    parties, I really have tried to keep you out of what I have

4    thought were inappropriate matters.  We're down now to, frankly,

5    things that may be of great import to both of you.

6            MS. KELLER:  But, Your Honor, the witness, Mr. Moore,

7    already testified to the dates.  We can have a stipulation that

8    the date on the front page said 18th of June.  This is the exhibit

9    dated 18 June, 2002.  Why we have to show the entire front page of

10   a complaint in a lawsuit or a document from the lawsuit doesn't

11   seem to -- I don't understand why we have to show the whole front

12   page.

13           THE COURT:  Now, about 10.  Do you have the same

14   complaint on Exhibit 10?

15           MS. KELLER:  Well, 10 we have the same complaint, plus,

16   because if you look under description of document it says, "copies

17   of 17 initial concept and design drawings of the Bratz dolls made

18   by Mr. Bryant in the year 2000."

19           That's what it says on the front page.

20           THE COURT:  That, I'm a little concerned about.

21           MS. KELLER:  I'm very concerned about it.  And I fully

22   anticipate that it will be argued, and that it will be argued in a

23   myriad of ways.  So if that's coming in, I think at a minimum that

24   that description should be redacted.

25           THE COURT:  Okay.  Mr. Zeller, back to you.

1          **MR. ZELLER:**  I think the short response is, is that this

2   is the information that Mr. Moore received.  I mean, to sanitize

3   it risks serious unfairness.  They are going to argue that, in

4   fact, he received all manner of information.  That he is

5   essentially not being forthcoming, candid, or even lying about it.

6   These are the documents he received.  And I think it shows what

7   information he had at that time and what did it say.

8          I would also say that the fact that it says 2000 on

9   there, too, is more conflicting information.  MGA is going to say,

10  why didn't you sue us in April of 2004?  And the reason is because

11  as Mr. Moore has gotten partially out, he gets drawings with a '98

12  date on it, some of them are undated.  We don't know what that is.

13  We have a Wall Street Journal article saying '99, and he's getting

14  this and it says 2000.

15         **MS. KELLER:**  Could we respond, Your Honor?

16         **THE COURT:**  Please.

17         **MS. HURST:**  It doesn't matter because the latest date

18  that we're asking the jury about is November 20, 2003.  And

19  everybody -- I mean it's always been the finding that they were on

20  notice, at the latest, by November 23, 2003 when they got the

21  contract and the drawings in Hong Kong.

22         So all this stuff that happened later and when he saw it

23  and why they didn't sue afterwards is completely irrelevant at

24  this point.

25         **THE COURT:**  Let me go back.  Here is the disconnect.

1   About 9:00 o'clock last night I sent out the first e-mail to you.

2   And about midnight last night I sent out another one.  The

3   disconnect is they're not getting documented until the next day.

4   That's why counsel were puzzled this morning when you approached

5   me.  I sent those out either just before midnight or just after

6   midnight last night from chambers.

7        Therefore, I'm realizing what we're doing on the

8   weekends in terms of my sending out isn't getting docketed until

9   the next day.  So we'll get that docketed earlier, or try to.  And

10  that caused confusion for both counsel this morning.

11       What is our time frame?

12       **MR. MCBIRNEY:**  We're waiting on the last reporter, Your

13  Honor.

14       **THE COURT:**  Is she calculating now?  Okay, great.

15       The second thing is let me ask MGA and Mattel counsel

16  for Mr. Machado, the rules really state that the Court can reserve

17  the rule 50, but I can hand them down at appropriate junctures or

18  time, either denying or granting.  One is after the resting of the

19  plaintiff's case; the other, the defendant's case.  I can hand

20  them down after rebuttal or during the jury deliberations.  I can

21  hand them down after a jury verdict.

22       I don't want to rule on this with finality and

23  prematurely if there is more evidence coming in for either side.

24  In other words, I don't think it's appropriate.  I have got some

25  tentative thoughts on it.  But I'm still writing and last night,

1    frankly, I just gave out early in the morning.

2           So I have got --

3           **MR. QUINN:**  Your Honor gave out?

4           **THE COURT:**  About 2:00 o'clock, that was it.

5           **MR. MCCONVILLE:**  I want proof.

6           **THE COURT:**  No, it's true.  I went home.  2:00 o'clock.

7    I think my wife recognized me.  I'm not sure.

8           But anyway, I need a little bit more time this evening,

9    and I don't want to get so far down the line that if there is

10   other pieces of evidence coming in based upon the arguments or my

11   understanding of the case thus far, that I'm prematurely ruling.

12   I don't think that there is, so I have started to write about the

13   basic law and take into account your arguments, etcetera.

14   Tentatively I can tell you at this juncture I'm probably inclined

15   to grant the rule 50, but I don't want to make that ruling yet.

16   And I want to know from MGA sounds, it sounds to me like you have

17   got a damages expert and that's it.

18          **MS. KELLER:**  Yes.

19          **THE COURT:**  I'm going to turn to Mattel.  And I don't

20   have to hand this down at the present time.  In fact, I'm not

21   prepared to.  If I have to write not only one opinion, but

22   sometimes I write two opinions and I look at each one of them.

23          So my guess is that you won't get that decision until

24   the case concludes, which is after rebuttal and I see everything

25   just so my record is perfected.

1          Second, I'm trying also to get the jury instructions out

2    to you rather than the night before.  I just would like to have a

3    little bit more input.  I thought your discussion with me last

4    evening concerning the special verdict forms was very helpful and

5    I appreciated it.

6          I have got the jury instructions ready to go.  I think

7    I'd like to try distribute them this evening if I could get a few

8    more hours.  But I don't know if I want to bring you back, send

9    you home.

10         So I'm really your servant.  You tell me what to do.

11         **MR. ZELLER:**  We're in favor of going home.

12         **MS. KELLER:**  We have much to do.

13         **MR. MCCONVILLE:**  One thing that would help us, judge, is

14   we have a list of 10, 12 witnesses that are allegedly rebuttal

15   witnesses.  If we can get some definition as to who is actually --

16         **THE COURT:**  I'm waiting for the time.  We're going to

17   stay in session until we have the time, and here's why.  Mattel

18   went forward and I expect the plaintiff to take more time in your

19   case-in-chief than the defense.  But it's not fair in some ways

20   that, let's say the plaintiff takes 86 hours in presenting their

21   case and you take X numbers of hours because you are responding

22   from the MGA side.

23         So what I'm waiting to see is what our total hours are

24   and what your total hours are at the conclusion of your case, and

25   then what is fair in terms of the time limitation I place on

Page 13

1  rebuttal or surrebuttal, because it's not fair that, for instance,
2  you would get three hours and Mattel would get one hour, or Mattel
3  gets three hours and you get one hour.  In other words, you're
4  tied to the total time, but you shouldn't be responding to each
5  other.  So if you have surrebuttal, I have to provide some time
6  within that 120 hours.

7      So I can place time limits on what is occurring, and
8  that's why I'm waiting for the hours tonight to try and get an
9  approximation.  Let's just say, for instance, that you had 115
10 hours apiece when you rested, which you won't.  You'll be way over
11 that.  Let's just assume for a moment that you had five hours
12 left.  Probably the fair position would be two and a half hours on
13 your rebuttal, two and a half hours on your surrebuttal, but I'm
14 not sure of that yet.

15     And you have to remember that the deal that was struck
16 is that adequate time has to be provided to Mattel because you
17 weren't able to present at least what I thought was the gravamen
18 of the rebuttal, and that was the sneaking into the showrooms.
19 And I don't want time to run and you are precluded from that.

20     So there are two essential people.  And I repeat to both
21 of you, the lawsuit is basically over.  You got your damages
22 experts.  We finished with Malackowski.  Wagner has to be the
23 first person on rebuttal that's presented.  You each have to watch
24 your time.  There if it runs, it just runs.

25     You have to have time for Wagner.  If it runs, it just

1    runs.  But there has to be some ability for some affirmative

2    defense because the deal that was struck is you went first and

3    Mattel ought to have an opportunity to respond.  I'm not as

4    concerned, quite frankly, about Winter Wonderland product, but

5    that's one product of many.  And if Carter Bryant is here, so be

6    it.

7             Finally, I just don't know what is happening with Carter

8    Bryant, Mr. Zeller.  It leaves me perplexed because I think my

9    good faith representation was that you would have the opportunity

10   to bring Carter Bryant down.  I didn't expect that to be a

11   prolonged period of time.  I did not envision that he would be

12   brought back, frankly, on the missing drawings.  I thought that

13   those would be covered.

14             But by the same token, Mr. Price, I realize the

15   situation.  We're both right.  I'm confronted with a binder with

16   black and white photos.  You have actually got the real drawings

17   in the back.  Through whatever occurred, those weren't presented.

18   They should have been.  They could have been.  But I don't think

19   it's fair certain items are taken off that list.

20             But you can see the items.  I'm going to let ask you on

21   that last page, 16 or whatever, through the remaining items.

22   He'll be on the stand 15 to 20 minutes at the most.

23             Okay.  All I need is the time.

24             **MR. QUINN:**  Your Honor, could I hand the Court some

25   courtesy copies of a document which have been filed?  One is a

1    request for judicial notice regarding additional case procedural

2    history.  There is a stipulation that's in the record that takes

3    the case up to -- I can't remember, 2005 or 2006.

4              THE COURT:  Just a moment.  Have we signed off on that?

5              MR. QUINN:  We read it into the record.

6              THE COURT:  But I'd also like to get my pretrial

7    conference order.  Is it signed?

8              MS. HURST:  It was up there.

9              THE COURT:  Nancy, would you collect that pretrial

10   conference order.

11             THE CLERK:  Last I saw, Mr. Cote had it.

12             THE COURT:  A lot of courts don't require it.  So you

13   also have the procedural history from the pretrial conference

14   order as well, don't you?

15             MR. QUINN:  Yes.  Exactly.  Now the pretrial conference

16   order includes, I believe, what was read into the record as a

17   stipulation.

18             THE COURT:  Now, that lets me give another jury

19   instruction.

20             Mr. Zeller, that's what I was concerned about last time.

21             MS. HURST:  It doesn't actually include that prior

22   stipulation, Your Honor.  And there was an error in that prior

23   stipulation regarding the scope of the stay which should not be

24   perpetuated.

25             THE COURT:  Why don't we correct that.  It's an easy

1    thing to do.

2         **MS. HURST:**  We're working on the stipulation that

3    includes the prior judicial notice and the other stipulated facts.

4    That will be an exhibit that can go with the jury.

5         **THE COURT:**  While we're waiting for the time, let's talk

6    about your clients.

7         When Mr. Larian had a doctor's appointment today, Mr.

8    Eckert was gracious enough to let him go and he left at the same

9    time.  Here is my concern:

10        I don't want to hold these gentlemen unnecessarily, but

11   there is going to be re-readings and questions.  And if one of

12   them here, they're both here, or neither of them are here.  And

13   let me finish now.  What I'm not going to do is have the concern

14   in the future that Mr. Larian is here looking at the jury and that

15   was prejudicial, or he is not here.  I know he is an individual

16   defendant, but Mr. Eckert -- this is going to reverse itself if we

17   get the antitrust case -- Mr. Eckert is going to be here every

18   day.  Next time I'll start off with Mr. Larian.  He'll be here

19   every single day of that trial.  And I should have done that

20   earlier.

21        **MR. QUINN:**  Your Honor, on that issue, Mr. Eckert has

22   something he has to go to on the 13th, 14th and 15th.  I think

23   it's a board meeting out of town, not from Mattel but another

24   public company that he is on the board.  Although initially Mr.

25   Larian and Mr. Eckert had a deal covering those days, we got a --

Page 17

1    no?  Never mind.

2            **MS. KELLER:**  There never was a deal.

3            **MR. QUINN:**  There never was a deal, but there is no deal

4    now.  And Mr. Eckert really has to be at the meeting out of town.

5            **THE COURT:**  Just a moment.  Mr. Larian wanted to go some

6    place as well?

7            **MS. KELLER:**  He canceled his trip, Your Honor.  He

8    really took to heart what you told him.  And I agree with you,

9    that if the jury is here deliberating and they see that the

10   parties have taken off, then it has a very negative effect on the

11   jurors.  The jurors are devoting their time to being here trying

12   to sort through this and the party is gone.  And I told him that I

13   agreed with Your Honor.  And he canceled his trip and he plans to

14   be here every single day that jury is deliberating.

15           **THE COURT:**  I tell you one trip that I have to take.  I

16   have got to catch the red eye on April 12 to be in D.C. on, I

17   believe the 13th, and I'm coming back on the 13th.  I'm going to

18   be on the ground for about six and a half hours.  But that day is

19   absolutely committed on my part because of some things in

20   Washington D.C.  Beyond that, I'm here the entire time.

21           Let's sort this out tomorrow.  Let me talk to Mr.

22   Eckert, Mr. Larian.

23           **MR. QUINN:**  Can I go back to my request to take judicial

24   notice on the subsequent pleading history?  I started to talk

25   about this a minute ago.  We have a stipulation that's been read

1  into the record about the pleading history up to, I think 2005 or

2  2006 when Mattel filed its claimed on MGA.  There have been

3  numerous pleadings.  I'm only talking about pleadings setting

4  forth -- pleadings in the literal sense; that is to say,

5  complaints and counterclaims and answers and replies.  Since then

6  the timing of some of those I think has been referred to in the

7  evidence.  And we would request that that procedural history be

8  supplemented with the balance of the pleadings since the last

9  stipulation.

10          THE COURT:  What I'm hearing, in fairness, is some

11  things came up today especially concerning Mr. Moore, and when he

12  started his investigative efforts in relation to Sal Villaseñor.

13          MR. QUINN:  That was part of it.  It also came up with

14  Ms. Thomas.

15          THE COURT:  That's a nice pack of papers.  I am going to

16  give those back to you.  There is nothing like truth and

17  transparency.  Why don't we get the procedural history down at

18  least up to the time of the trial.

19          MS. HURST:  Your Honor, since the Court has indicated

20  it's considering the equitable tolling issue, this is irrelevant.

21  There is no reason for the pleading history to be before the jury.

22          THE COURT:  I think there is an argument concerning

23  Moore's testimony he didn't go out and ask to do something things

24  in relation to Sal Villaseñor because that claim wasn't on the

25  table until 2010 but then we get into the opposite problem it's

1    detrimental to you because how can you known have the claim if

2    they were hiding that.  Let me become that.  Okay.

3            MR. QUINN:  Also testified to by Ms. Thomas, Your Honor,

4    as to what claims were at issue?

5            THE COURT:  Keep that for a moment.  I haven't

6    forgotten.

7            MR. QUINN:  May I hand a copy to the other side so they

8    can be looking at that time?

9            THE COURT:  Sure.

10           MS. HURST:  Your Honor, may we request if Mr. Wagner is

11   going to have any new schedules, we get them tonight since he's

12   going to be on tomorrow as their first witness?  Or that he be

13   precluded from having any new schedules, otherwise?

14           THE COURT:  I think so.  I think it's time that both of

15   these experts froze their opinions.  They both been moving

16   targets, through no fault their own, I'm going to be very

17   gracious.  But I got slides up until 7:30 in the morning from both

18   experts.  They're both very fortunate to be testifying, frankly.

19           MR. QUINN:  I had two more.

20           MR. PRICE:  On Mr. Wagner, we got their -- the backup

21   last night.  And it's substantial.  I don't know if he has any new

22   data.  I think he is using the data which --

23           THE COURT:  Call him.  Find out.

24           MS. KELLER:  I don't want to sound unduly negative, but

25   the reason for that is all because Mattel wouldn't give us the

Page 20

1    data.  This wasn't just Malackowski tinkering with his opinion and

2    changed it arbitrarily and deciding to make it sound more

3    persuasive.

4            **THE COURT:**  Let's not do that.  Let's not enter into the

5    bickering.  All we have to do is find out without the blame game.

6    If we have some new exhibits, I'll give you time to look at them

7    and vice versa.

8            So Mr. Overland, that's the only reason I asked you and

9    Mr. Cote to stay.  I'm not certain yet until I hear all the

10   evidence.  I don't think it's appropriate in the middle of the

11   case to make a decision.  So if I make a decision, it will

12   probably come at the end of the defense case or end of rebuttal.

13          Good night.

14          The last thing I want to do when the trial is over, for

15   all you young people out there who have been such great support

16   staff, I really, after the arguments on Thursday, I'd really like

17   you to gather your entire crew sometime and just let me bring you

18   into the Court, and I'd like to name you specifically for all the

19   people who have been involved.

20          And if there are associates you wish to include who have

21   done hard work for both sides, the Court would like to compliment

22   these young people.

23          **MR. MCCONVILLE:**  Really appreciate that, judge.  Thanks.

24          **MR. QUINN:**  May I hand up these other two copies?  One

25   is a request to release in camera transcripts.  There have been a

1   number of testimony of Mr. Moore taken in camera.  The other is a

2   trial brief on this issue of set-off relating to the Kohl's

3   transaction and whether that's a jury issue.

4          THE COURT:  Okay.  What is the release of the

5   transcripts, the in camera on Moore?  The in camera that I have

6   had with him?

7          MR. QUINN:  I thought it was the in camera proceeding

8   that's taken place.

9          THE COURT:  I have also had in camera with him.

10         MR. QUINN:  I'd like those released to Mattel as well.

11         THE COURT:  I see.  Okay.  And the set off, I'll look at

12  those in terms of the instructions tonight also.

13         Now, let me take a minute and let me go back in

14  chambers.  Is this our time?

15         MR. MCCONVILLE:  Yes.

16         THE COURT:  How much longer do you think you'll be with

17  your expert on direct?

18         MS. KELLER:  45 minutes.

19         THE COURT:  So an hour.  How long do you think for --

20         MR. PRICE:  Cross?  An hour or so.

21         THE COURT:  About an hour and 15 minutes -- I'm sorry,

22  115 hours, aren't we?  About 115 hours.

23         Okay.  Let's go over the rebuttal witnesses then.  We

24  have Mr. --

25         MS. HURST:  I'm informed we don't have Mattel's final

Page 22

1    product list to complete the stipulation for what tangibles are

2    going into evidence and we really need to get that.

3              THE COURT:  I do, too.

4              MS. HURST:  We finalized our list a while ago, but we

5    don't have their final list.

6              THE COURT:  I don't want to stay in session for

7    something like that, but if I have to, I will.

8              MS. HURST:  We're almost out of time.

9              THE COURT:  Not only that, but I need the jury

10   instructions or you are not going to get them until Wednesday

11   night.  Bear with me for just a moment.

12        (Brief pause in proceedings)

13             THE COURT:  We're on the record.  All counsel are

14   present.

15             The agreement is as follows:  That exhibit number --

16   MS. HURST:  11342.

17             THE COURT:  -- is received.

18             (Exhibit 11342 received in evidence.)

19             THE COURT:  Number two, it's agreed by the parties that

20   these witnesses will be called in rebuttal:  Wagner, Allen,

21   Johnson, Gronich, Jolicoeur, Potgeisser -- not necessarily in the

22   latter order but as close as we can -- and Carter Bryant whenever

23   he gets here, on behalf of Mattel.

24             On behalf of MGA, Malackowski, deAnda, and Snyder by

25   video depo.

Page 23

1          MR. ZELLER:  I thought we were going to read the

2    deposition.

3          MS. HURST:  We wanted to play it.

4          THE COURT:  It's video depo.  Okay.  All right.  That's

5    the agreement between the parties.  Go read the instructions, I'll

6    see you tomorrow.

7          MR. MCCONVILLE:  7:30?

8          THE COURT:  I want you, Mr. McConville and Mr. Zeller,

9    because in case we're not having contact with the plaintiff like

10   we didn't have tonight, I want to be back on the phone with him

11   tomorrow for Carter Bryant.  Fair enough?

12         MR. ZELLER:  Yes.

13         THE COURT:  Mr. McConville?

14         MR. MCCONVILLE:  Yes.

15              (Whereupon the proceedings were adjourned at 7:20

16   p.m..)

17

18                             -oOo-

19

20                          CERTIFICATE

21

22         I hereby certify that pursuant to Section 753, Title 28,

23   United States Code, the foregoing is a true and correct transcript

24   of the stenographically reported proceedings held in the

25   above-entitled matter.

Page 24

1

2   Date:  APRIL 5, 2011

3

4



5   MARIA DELLANEVE, U.S. COURT REPORTER
    CSR NO. 9132

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

f3471e6c-a321-470e-96ed-5b6ee8b2c4e8