QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar. No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de C.V., <br><br> Plaintiff, <br><br> vs. <br><br> MGA ENTERTAINMENT, INC., a California corporation, et al., <br><br> Defendant. <br><br> AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx) <br> Consolidated with <br> Case No. CV 04-09059 <br> Case No. CV 05-02727 <br><br> Hon. David O. Carter <br><br> **MATTEL'S TRIAL BRIEF AND OFFER OF PROOF RE ORDER PRECLUDING TESTIMONY OF MICHAEL JOHNSON ON RELEVANCY GROUNDS** <br><br> Hearing Date:  TBD <br> Time:            TBD <br> Place:            Courtroom 9D |

**Preliminary Statement**

Michael Johnson is a Senior Vice-President at Kohl's. He has personal knowledge of Kohl's relationship with MGA and Mattel between 2004 and 2007. Mr. Johnson would testify that Mattel did not pressure, intimidate or pay Kohl's not to sell Bratz products. Mr. Johnson would testify that Mattel and Kohl's did not agree, explicitly or implicitly, that Kohl's would not sell Bratz. Kohl's stopped selling the Bratz products was because they were unprofitable. Mr. Johnson would testify that Mattel and Kohl's did not commit the very exclusionary conduct of which MGA complains. The Court improperly prevented Mr. Johnson from offering relevant evidence that would disprove MGA's claim.

**Offer of Proof:  Michael Johnson**

Michael Johnson is a Senior Vice-President at Kohl's, a national chain of department stores. He has profit and loss responsibility for children's apparel, accessories and toys at Kohl's, a $1.8 billion dollar business. Toys are approximately ten percent of that business. No toy manufacturer dictates to Kohl's what products to carry. Kohl's makes that decision.

Mr. Johnson was responsible for the toy department during the relevant time period, 2004 to 2007. Mr. Johnson was reluctant to put the Bratz dolls in Kohl's stores because of their edgy and urban appearance. He did not believe that they would appeal to the Kohl's consumer. But, because other retailers were successfully selling Bratz, Kohl's purchased over $5 million dollars worth of Bratz products from MGA for Fall 2004. Mr. Johnson was right; customers complained. Bratz was Kohl's worst performing product of 2004. Kohl's lost almost $2.0 million dollars on Bratz products. Mr. Johnson wrote to a colleague, Tom Maskel, the "bratz business" was a "huge disaster" for Kohl's.[1]  As a result, Kohl's decided not to

---

[1] TX 24341 ("Tom, with each passing week, the bratz business continues to be huge disaster.  the sales decrease to plan is a disgrace, and the margins an even bigger disgrace,").

purchase additional Bratz dolls; it could not sell the ones that it had.  Kohl's also asked MGA to address the loss.  MGA did not do so in any meaningful manner.  Kohl's decision not to purchase Bratz was based on the performance of the product.  Kohl's kept buying other MGA products and continued to do so through today.

While Bratz proved to be one of the worst performing products that Mr. Johnson , Kohl's made money on BARBIE products.  Because the shelf space that Bratz had taken up was not performing, Mattel was an obvious candidate to supply products for that space.  On January 27, 2005, Mattel and Kohl's reached an agreement for 2005 and 2006.  Based on Mr. Johnson's three decades with retail experience, the agreement contains no terms that are unique or that differ from standards in the retail toy industry.  The agreement contained a clause that permitted Kohl's to earn $1.25 million dollars from Mattel if, for 2005 and 2006, it provided 8 feet of space for Barbie products, purchase $20 million in Barbie products, provided additional out of department space and located Little Mommy dolls on Kohl's back wall.[2]

Mattel never pressured, threatened or agreed that Kohl's would not carry Bratz or any other MGA products.   The agreement contains no language prohibiting Kohl's from carrying Bratz or any other MGA products.  Kohl's sold dolls other than Barbie dolls in its toy department and outside its toy department.  The eight feet committed to Barbie were not the only place that Kohl's sold dolls.  Kohl's sold other dolls other MGA products and, for a period of time, sold Bratz products outside the department and elsewhere within the toy department.

Kohl's elected not to purchase additional Bratz products because it was losing money on products that it had and could not sell.  If MGA offered a product, including Bratz, that made economic sense to Kohl's, then Kohl's would pick it up and carry it.  Eventually, that happened.  Kohl's purchased and stocked some of the

---

[2]   TX 24004-01.

more tame Bratz products for 2007—although Barbie maintained the eight feet of space. They did not sell to Kohl's expectations and Kohl's stopped carrying Bratz. Kohl's then and now continues to purchase, stock and sell MGA products, including Little Tikes products.

Mr. Johnson is now aware of Mr. Zablow's e-mails suggesting, as a salesperson may, that the "competitor will not be represented in their toy dept. for 2 years." That limitation is not reflected in any agreement between Mattel and Kohl's, written or unwritten. To the contrary, Kohl's continued to carry MGA products for 2005 and 2006. Mr. Johnson is aware of Mr. Zablow's e-mail suggesting that Kohl's demanded a response from Mattel by 12/27/2005 or it would continue with the competitor, presumably MGA. That deadline makes no sense from Kohl's perspective. Kohl's management and buyers do not work between Christmas and New Year's. Kohl's fiscal year is January 1st to January 1st. Kohl's deadlines are end of quarter, not mid-quarter. Again, this is salesperson hyperbole, not a deadline that Kohl's imposed.

Kohl's did not accept the $1.25 million dollars from Mattel in exchange for Kohl's agreement not to carry Bratz or other MGA products. Mattel never asked Kohl's not to carry Bratz or other MGA products. MGA was free to offer other products to Kohl's, and Kohl's was free to purchase other products from MGA.

## Argument

### I. MATTEL'S INTENT, ALONE, CANNOT ESTABLISH A VIOLATION OF § 17200

To establish an "unfair" violation of § 17200, MGA must prove "*conduct* that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163, 187 (1999) (emphasis added). Courts construing this standard – both in California and the

1 Ninth Circuit – look to Sherman Act precedents for guidance, see, e.g., id. at 189;
2 Liveuniverse, Inc. v. Myspace, Inc., 2007 WL 6865852, at *18 (C.D. Cal. June 4,
3 2007). These precedents make plain that an antitrust defendant's intent is but one,
4 non-dispositive factor for establishing a violation of § 17200.

5     For example, regardless of Mattel's intent, MGA's claim will fail if it adduces
6 inadequate "proof of some actual or threatened impact on competition." Cel-Tech
7 Comm'ns, Inc., 20 Cal. 4th at 186-87.[3] Thus "the mere expression of
8 anticompetitive intent is insufficient to establish a section 1 claim" under the
9 Sherman Act. Rickards v. Canine Eye Registration Foundation, 783 F.2d 1329,
10 1332 (9th Cir. 1986) (Section 1). Anticompetitive intent alone likewise does not
11 suffice to establish a Section 2 claim under the Sherman Act for monopolization.
12 Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 736 (9th Cir. 1987)
13 (Section 2).[4]

14     Under Cel-Tech, MGA must prove anticompetitive *conduct.* Cel-Tech, 20
15 Cal. 4th at 187; see, e.g., Digital Sun v. The Toro Co., 2011 WL 1044502, at **3-5
16 (N.D. Cal. Mar. 22, 2011) (examining additional factors including anticompetitive
17 conduct and injury) . Mr. Johnson would testify that Mattel did not take any action
18 to pressure or compel Kohl's not to carry Bratz or other MGA products. In fact, his
19 testimony would establish that Kohl's carried dolls other than Barbie in and outside
20 its toy department. Such evidence of pro-competitive conduct demonstrates that no

---

[3] See Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd., 924 F.2d 1484, 1488 (9th Cir. 1991) (plaintiff alleging a violation of Section 1 of the Sherman Act must demonstrate "(1) an agreement or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intend to harm or restrain competition; *and (3) which actually restrains competition*." (emphasis added) (quotation and footnote omitted)).

[4] See id. (monopolization claim requires plaintiff to prove "(1) possession of monopoly power in the relevant market, (2) willful acquisition or maintenance of that power, and (3) causal 'antitrust injury.'"); id. (Section 2 attempted monopolization claim requires plaintiff to prove "(1) specific intent to control prices or destroy competition in the relevant market, (2) predatory or anti-competitive conduct directed to accomplishing the unlawful purpose, and (3) a dangerous probability of success.").

cognizable antitrust injury – a prerequisite under § 17200 and underlying violations of the Sherman Act – resulted from Mattel's agreement with Kohl's. See Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc., 944 F.2d 1525, 1529 (9th Cir. 1991) ("The four remaining allegations do not establish a violation of either section 1 or section 2 of the Sherman Act because [the defendant] failed to demonstrate that the alleged conduct caused antitrust injury."); Cel-Tech Comm'ns, Inc., 20 Cal. 4th at 186 ("Injury to a competitor is not equivalent to injury to competition; only the latter is the proper focus of antitrust laws.").

Mr. Johnson's testimony that no exclusionary *conduct* occurred and the actual terms of the agreement between Kohl's and Mattel disproves both anticompetitive conduct and anticompetitive injury. Because it disproves elements of MGA's § 17200 claim, Mr. Johnson's testimony is relevant. Fed. R. Evid. 402.

## II. **MR. JOHNSON'S TESTIMONY WOULD PROVE THAT MATTEL DID NOT ENGAGE IN ANTICOMPETITIVE CONDUCT TOWARD MGA**

The Court ruled that Mattel's intent is relevant, but Kohl's is not. Even so, Mr. Johnson's testimony regarding the *conduct* of both Mattel and Kohl's is relevant to prove or disprove Mattel's alleged anticompetitive intent. Mr. Johnson's testimony that Mattel and Kohl's arrangement was pro-competitive in practice would thwart MGA's claim that Mattel's intent – which is commonly inferred from conduct – was anticompetitive. See Forro Precision, Inc. v. Int'l Bus. Machs. Corp., 673 F.2d 1045, 1059 (9th Cir. 1982). A plaintiff cannot make out an antitrust claim absent evidence providing a basis, such as unfair or predatory conduct, from which to infer anticompetitive intent. See Caitlin v. Wash. Energy Co., 791 F.2d 1343, 1348 (9th Cir. 1986) ("[p]roof of WNG's unfair or predatory conduct, from which such [specific] intent [to monopolize] may be inferred, is also lacking" (internal quotation marks and citation omitted)). Evidence of conduct certainly may be admitted for the limited purpose of demonstrating whether the defendant had a

specific intent to monopolize during the relevant time period.  See Syufy Enters. v. Am. Multicinema, Inc., 793 F.2d 990, 1002 (9th Cir. 1986).

### III. MR. JOHNSON'S TESTIMONY WOULD PROVE THAT NEITHER MATTEL NOR KOHL'S ENTERED INTO AN UNWRITTEN OR IMPLIED AGREEMENT THAT PREVENTED KOHL'S FROM SELLING BRATZ

Mattel and Kohl's written agreement contains no term restraining Kohl's ability to carry Bratz.  Accordingly, to prevail on its unfair competition claim, MGA must establish the existence of a purported unwritten, exclusionary agreement.  If such an agreement never existed, MGA could not establish that Mattel's dealings with Kohl's in any way restrained competition or resulted in antitrust injury – requirements under the Sherman Act that MGA must address to prevail under § 17200, see Morgan, 924 F.2d at 1488; Rutman Wine Co., 829 F.2d at 736; Digital Sun, 2011 WL 1044502, at **3-5.  Mr. Johnson will testify that there was no unwritten agreement between Mattel and Kohl's and that the written agreement embodied Mattel and Kohl's entire understanding.  Such testimony is relevant; it disproves a key element of MGA's § 17200 claim.

Moreover, Mr. Johnson's testimony will also be probative of Mattel's intent, because the actual terms of an agreement can indicate whether the contracting parties had any intent to harm competition.  Freeman v. San Diego Ass'n of Realtors, 322 F.3d 1133, 1155 (9th Cir. 2003) (focusing on terms of a purportedly anticompetitive shareholders' agreement to conclude that it was not "driven by a specific intent to monopolize," noting that "limitation on the agreement's scope further attenuates the inference of monopolistic intent").  By attesting to the absence of any exclusionary term preventing Kohl's from carrying Bratz, Mr. Johnson will establish the nature of the agreement between Mattel and Kohl's, demonstrating that the agreement provides no basis to infer anticompetitive intent.

## IV. MATTEL HAS A DUE PROCESS RIGHT TO PRESENT MR. JOHNSON'S TESTIMONY

Mattel is entitled to call witnesses in defense of MGA's claims. Due process requires that Mattel be given a fair opportunity to respond. See WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 6164 ("In civil cases, the requirement of due process requires that all parties be given a fair opportunity to present and respond to evidence."); Cooper v. Bombela, 34 F. Supp. 2d 693, 699 (N.D. Ill. 1999) (noting that "an opportunity to respond to evidence is a basic component of procedural due process") (citing Cleveland Bd. Of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)); see also Jinro Am. Inc. v. Secure Inv., Inc., 266 F.3d 993, 1007 (9th Cir. 2001) ("[F]airness to parties and the need for a fair trial are important not only in criminal but also in civil proceedings, both of which require due process."). Preventing Mr. Johnson from being sworn, much less offering testimony in defense of MGA's unfair competition claim, deprives Mattel of a full and fair opportunity to respond.

DATED: April 6, 2011

QUINN EMANUEL URQUHART & SULLIVAN. LLP

By /s/ John B. Quinn
John B. Quinn
Attorneys for Mattel, Inc., and
Mattel de Mexico. S.A. de C.V.