QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar. No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de C.V., <br><br> Plaintiff, <br><br> vs. <br><br> MGA ENTERTAINMENT, INC., a California corporation, et al., <br><br> Defendant. <br><br> AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx) <br> Consolidated with <br> Case No. CV 04-09059 <br> Case No. CV 05-02727 <br><br> Hon. David O. Carter <br><br> **MATTEL, INC.'S OFFER OF PROOF REGARDING RELEVANCE OF TESTIMONY OF PATRICK POTGIESSER** |

00505.07975/4076515.3

MATTEL'S OFFER OF PROOF

1    Mattel, Inc. and Mattel de Mexico, S.A. de C.V. (collectively, "Mattel")

2  respectfully submit this offer of proof relating to the proposed testimony of Patrick

3  Potgiesser and documents Mattel will offer through him.  Mr. Potgiesser, MGA's

4  Sales Director of Benelux countries, will offer relevant and admissible testimony on

5  three issues.

6    First, Mr. Potgiesser will testify that information about upcoming products is

7  no longer confidential once shared with retailers:

8    Q   Is it your testimony that when you
     provide information to retailers, you think they
9    keep it confidential?
        THE DEPONENT:  No.
10   BY MR. ZELLER:
        Q   It's your understanding that when
11   you're sharing information with retailers, just
     as when Mattel has been sharing information with
12   retailers, the retailers talk with others about
     it, right?
13       THE DEPONENT:  I'd say yes.[1]

14 He will testify that retailers share information about unreleased MGA products with

15 MGA's competitors – other manufacturers:

16     Q   So it's your testimony as an MGA
     executive that you understand retailers share
17   information about unreleased MGA products that
     MGA shares with retailers, right?
18       THE DEPONENT:  Yes.
     BY MR. ZELLER:
19       Q   You know that they disclose such
     information to other toy manufacturers including
20   Mattel, correct?
        THE DEPONENT:  Yes, but I don't have
21   proof.
     BY MR. ZELLER:
22       Q   This is something that you've
     understood and believed since the time you've
23   started working with MGA, correct?
        A   Yes.[2]

24

25

26 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

27   [1]   Transcript of Potgiesser Deposition (hereafter "Potgiesser Depo .Tr."), dated
     October 26, 2010 at 97:5-25 (objections omitted).
28   [2]   Id. at 128:19-129:13 (objections omitted).

00505.07975/4076515.3
                                      -1-
                                                        MATTEL'S OFFER OF PROOF

1    In fact, Mr. Potgiesser is "absolutely not" surprised that retailers would share

2    information about unreleased MGA products with Mattel – because he himself

3    routinely received information from retailers about unreleased Mattel products.[3]

4    This admission by an MGA executive directly contradicts the position MGA has

5    taken here and is relevant to an element of MGA's trade secret misappropriation

6    claim – information that MGA did not treat as secret cannot be the basis of such a

7    claim.

8         Second, Mr. Potgiesser will testify that MGA did not require the thousands of

9    entrants to its Nuremberg Toy Fair showroom to sign a confidentiality agreement at

10   any time prior to 2009.[4]  This is directly relevant to MGA's claim that it took

11   reasonable steps to protect the information disclosed in these showrooms.  Cal. Civ.

12   Code § 3426.1(d)(2).  It also contradicts MGA's claim that entrants were required to

13   maintain the confidentiality of information shared in showrooms.

14        Third, Mr. Potgiesser will testify to his understanding that MGA personnel

15   entered Mattel toy fair showrooms on an annual basis.  He will also testify about his

16   knowledge of a specific occasion on which an MGA executive entered the Mattel

17   toy fair showroom at Nuremberg in 2007.  This is directly relevant to the

18   reasonableness of MGA's efforts to protect its alleged trade secrets.  Evidence that

19   MGA knew showrooms were infiltrated at toy fairs supports Mattel's claim that

20   MGA failed to take reasonable steps to protect the information it now sues on by

21   placing it in toy fair showrooms MGA knew were likely to be entered by

22   competitors.  Restatement (Third) Of Unfair Competition § 43 (foreseeability that

23   trade secret information would be disclosed relevant to reasonableness of efforts to

24   maintain secrecy).

25

26

27   [3]   Id. at 98:16-99:14; see also 190:10-191:20 (thousands of people walked
     through MGA's showroom at the Nuremberg toy fair).
28   [4]   Potgiesser Depo. Tr. at 81:4-21.

00505.07975/4076515.3
                                          -2-
                                                          MATTEL'S OFFER OF PROOF

1       <u>Silicon Image, Inc. v. Analogix Semiconductor, Inc.</u>, 2008 WL 166950 (N.D.

2   Cal. January 17, 2008), is on point.  The court found Silicon Image's claims of

3   reasonable efforts to protect its trade secrets were undermined by evidence that

4   Silicon Image disclosed its trade secrets to customers, even though it had

5   information that its customers did not abide by the non-disclosure agreements they

6   signed.  <u>Id.</u>  Mattel should be permitted to offer analogous evidence here.

7       Further, that MGA's employees engaged in similar conduct also

8   independently contradicts MGA's claim that this conduct is wrongful and impeaches

9   MGA witnesses who testified as to the purportedly wrongful nature of obtaining

10   competitors' unreleased product information.

11       For these and other reasons, Mattel submits the following offers of proof:

12         1)    The testimony as set forth in Patrick Potgiesser's October 26,

13             2010 deposition.

14         2)    TX 7051:  Potgiesser emails Larian, Brawer and Villette with an

15             update of his discussions with retailers in the Benelux, including

16             about upcoming Mattel products and prices, dated December 8,

17             2006.  Subject: "Privileged & Confidential: Benelux

18             developments."

19         3)    TX 8890:  Potgiesser email to I. Larian Cc:  R. Brawer dated

20             11/29/06.  Subject RE:  Canada tru.  Discussion of Mattel's

21             upcoming promotion of new products.

22

23         4)    TX 8895:  Potgiesser email to Larian, Machado Cc:  Wing,

24             Carlson, Vilette, Brawer 3/21/06.  Subject RE:  Benelux

25             advertising.  Includes Larian "Let's kill Barbie" comment.

26         5)    TX 8896:  Potgiesser Benelux Weekly Update for Week 23,

27             dated 6/9/06.  Includes information about price changes and

28

1   markdown campaign on Barbie and My Scene for fall obtained

2   from retailers.

3   6)   TX 8898:  Andrew Laughton of Zapf email to Larian and

4   Potgiesser (among others) dated 5/1/07.  Subject FW:  Fisher

5   Price-  My Baby 2007 doll including jpeg attachments (not

6   included).  I. Larian forward of UK report of which states

7   "[p]lease find attached the first sight of the new Fisher Price doll

8   'My Baby."

9

10   DATED:  April 6, 2011               QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP
11

12
                                        By /s/ John B. Quinn
13                                         John B. Quinn
                                           Attorneys for Mattel, Inc., and
14                                         Mattel de Mexico, S.A. de C.V.

15

16

17

18

19

20

21

22

23

24

25

26

27

28