QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc. and Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, et al.,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL, INC.'S TRIAL BRIEF RE FRAUDULENT CONCEALMENT JURY INSTRUCTION**<br><br>Hearing Date: TBD<br>Time: TBD<br>Place: Courtroom 9D<br><br>Discovery Cut-off: October 4, 2010<br>Pre-trial Conf: January 4, 2011<br>Trial Date: January 11, 2011 |

00505.07975/4079439.1

**Preliminary Statement**

During the April 6, 2011 hearing, the Court stated on the record that it might not give a fraudulent concealment jury instruction because (1) acts of fraudulent concealment must be specifically directed at the plaintiff, (2) fraudulent concealment instructions would be redundant of the Court's discovery rule instructions, (3) fraudulent concealment requires proof of actual fraud, and (4) fraudulent concealment should not be submitted to the jury.

Mattel, Inc. and Mattel de Mexico, S.A. de C.V. (collectively, "Mattel) respectfully submit that a fraudulent concealment jury instruction is supported by the evidence and failure to give such an instruction would be erroneous.  The law is settled that the fraudulent concealment does not need to be specifically directed to the plaintiff, fraudulent concealment is not subsumed by the discovery rule, affirmative misrepresentations directed towards a third party are sufficient to invoke the doctrine of fraudulent concealment, and the fraudulent concealment issue is properly submitted to the jury.

**Argument**

**I.   MATTEL HAS INTRODUCED EXTENSIVE EVIDENCE OF FRAUDULENT CONCEALMENT**

The Phase 1 jury found that MGA fraudulently concealed the factual basis of Mattel's Bratz-related claims. Dkt. 4279 at 8-9.  Nevertheless, the Court has indicated that it does not intend to give a fraudulent concealment jury instruction.  This omission would be erroneous because there is overwhelming evidence that MGA fraudulently concealed the facts underlying Mattel's Bratz-related claims. E.g., February 4, 2011 Trial Tr., Vol. 1 (O'Connor) at 97:12-23 (O'Connor testifies that Larian told her "we didn't want the public to know that Carter was the inventor of Bratz since he was a Mattel employee at the time"); February 11, 2011 Trial Tr., Vol. 1 (Larian) at 8:17-11:2 (TX 4941) (author of July 2003 Business Week article about Bratz requested confirmation that the following statement was "accurate": Larian "modeled Bratz after

[his] own children, who wear midriff-baring shirts, low rise jeans, and baseball caps." Larian admits that he "did not write back and respond that any of this is not accurate."); February 11, 2011 Trial Tr., Vol. 1 (Larian) at 11:19-23 (Larian responds "Yes" to the following question: "And you recall saying that [the July 18, 2003 Wall Street Journal article] was the first article in a newspaper or a magazine that identified Mr. Bryant as being associated with Bratz?"); February 16, 2011 Trial Tr., Vol. 2 (Larian) at 83:18-91:19 (TX 4507) (Larian writes that "[t]here must be no mention about Mattel or any of their properties, Carter, any MGA Bratz arts" after David Dees allegedly posts a letter on a Bratz fan website identifying Bryant as "creating the Bratz dolls"); February 3, 2011 Trial Tr., Vol. 3 (Bryant) at 40:10-42:24; February 3, 2011 Trial Tr., Vol. 1 (Bryant) at 139:15-142:3; February 4, 2011 Trial Tr., Vol. 2 (O'Connor) at 49:19-55:1 (TX 22482) (in response to David Dees' alleged post on a Bratz fan website identifying Bryant as "creating the Bratz dolls," Larian writes: "I think we need to call this person and nicely ask her to voluntarily shut down her site because of legal liabilities for MGA"); February 16, 2011 Trial Tr. ,Vol. 2 (Larian) at 91:20-95:11 (TX 23511) (in response to David Dees' alleged post on a Bratz fan website identifying Bryant as "creating the Bratz dolls," Larian writes: "I need this taken (CARTER) out of all written material (internet, etc) NOW"); February 4, 2011 Trial Tr., Vol. 1 (O'Connor) at 90:3-93:14 (TX 15, TX 1309) ("[Larian] asked me to white-out the header that said Barbie Collectibles and fax it to Patty Glaser"); February 9, 2011 Trial Tr., Vol. 1 (Larian) at 94:24-100:25 (TX 1932) (When asked about a spreadsheet listing Bryant's employment dates at MGA as "????-Present" and at Mattel as "DON'T ASK," Larian responded "Yes" when asked whether "MGA would know the MGA dates"); February 9, 2011 Trial Tr., Vol. 1 (Larian) at 84:20-90:23, 92:2-93:19 (TX 4942) (Larian writes "Good ideas" in response to email stating, among other things, "I know we want to keep Carter under wraps"); February 4, 2011 Trial Tr., Vol. 2 (O'Connor) at 74:6-76:21 (TX 9165) (Larian writes in email "Destroy EVERY copy of that we have. Who have you presented this to? . . . . YOU ARE GETTING US INTO LAW SUITS"); February

9, 2011 Trial Tr., Vol. 1 (Larian) at 101:1-104:11 (TX 11907) (Larian writes that Bratz was "Born September 2000"); February 4, 2011 Trial Tr., Vol. 1 (O'Connor) at 103:22-106:10; February 4, 2011 Trial Tr., Vol. 2 (O'Connor) at 55:2 -57:14; February 4, 2011 Trial Tr., Vol. 3 (O'Connor) at 15:20-16:12; February 9, 2011 Trial. Tr., Vol. 1 (Larian) at 104:12-117:12; February 9, 2011 Trial Tr., Vol. 1 (Larian) at 120:2-131:12; February 9, 2011 Trial Tr., Vol. 2 (Larian) at 6:5-11:17; February 16, 2011 Trial Tr., Vol. 2 (Larian) at 34:8-35:16, 40:16-42:19 (TX 7055) (Regarding Larian's "Born September 2000" comment, O'Connor writes: "don't you think we should say Bratz was born in October when a certain person was no longer with their company," and Larian responds: "good point"); February 16, 2011 Trial Tr., Vol. 1 (Larian) at 39:10-43:23 (TX 12842) (In response to the comment "I'm concerned you changed Bratz intro date to October 200[0], do you want to keep that or not," Larian responds: "October 2000 for legal purposes"); January 25, 2011 Trial Tr., Vol. 1 (Garcia) at 47:19-54:3; February 4, 2011 Trial Tr., Vol. 1 (O'Connor) at 97:24-100:18; February 9, 2011 Trial Tr., Vol. 1 (Larian) at 81:10-84:19; February 4, 2011 Trial Tr., Vol. 1 (O'Connor) at 100:19-103:21; February 4, 2011 Trial Tr., Vol. 1 (O'Connor) at 101:8-103:4; February 4, 2011 Trial Tr. Vol. 2 (O'Connor) at 83:12-85:13; February 16, 2011 Trial Tr., Vol. 2 (Larian) at  91:20-95:11; February 4, 2011 Trial Tr., Vol. 2 (O'Connor) at 84:11-85:13; February 1, 2011 Trial Tr., Vol. 1 (Bryant) at 71:14-78:1, February 3, 2011 Trial Tr., Vol. 1 (Bryant) at 45:21-47:15 (Bryant agrees that he "committed perjury" to help MGA obtain claimed patent rights in Bratz).  This more than adequately supports fraudulent concealment and tolls the relevant limitations period.  See Regents of University of Cal. v. Superior Court, 20 Cal. 4th 509, 533 (1999) ("[T]he defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations").

## II. ACTS OF FRAUDULENT CONCEALMENT DO NOT NEED TO BE SPECIFICALLY DIRECTED TO THE PLAINTIFF IN ORDER TO TOLL THE LIMITATIONS PERIOD

The Court raised the possibility that there is insufficient evidence that MGA's and Larian's fraudulent concealment was specifically directed at Mattel. However, a reasonable juror could easily conclude that MGA and Larian actively concealed the facts supporting Mattel's Bratz-related claims from Mattel specifically—including the fact that Bryant worked for MGA and created the Bratz dolls while employed by Mattel. MGA had a specific intent to fraudulently conceal these facts from Mattel because (1) Mattel was MGA's biggest competitor when the Bratz dolls were released, and (2) Carter Bryant was a former Mattel employee who MGA and Larian knew had contractual and legal duties to Mattel.

These facts are not dispositive of the availability of a fraudulent concealment instruction, however, because there is no requirement that the acts of fraudulent concealment be directed at the plaintiff. See Baker v. Beech Aircraft Corp., 96 Cal. App. 3d 321, 329-31 (1979); Evaraets v. Intermedics Intraocular, Inc., 29 Cal. App. 4th 779, 790 n. 5 (1994).

## III. DISCOVERY RULE INSTRUCTIONS ARE NOT SUBSTITUTES FOR FRAUDULENT CONCEALMENT INSTRUCTIONS

The Court raised the argument that fraudulent concealment instructions are duplicative of discovery rule instructions; however, the law is to the contrary. Discovery rule instructions are not substitutes for fraudulent concealment instructions. See Migliori v. Boeing N. Am., Inc., 114 F. Supp. 2d 976, 983 (C.D. Cal. 2000) ("[A]lthough analogous, the two doctrines constitute separate bases for tolling the statute of limitations. Indeed, a close inspection of cases addressing fraudulent concealment reveals that 'notice' or 'inquiry' in the fraudulent concealment context plays a different role than 'notice' or 'inquiry' in the discovery rule context.") (internal citations omitted). Even if raw suspicions could give rise to accrual, something close to

actual knowledge is required when concealment is shown. See Garamendi v. SDI Vendome S.A., 276 F. Supp. 2d 1030, 1042-43 (C.D. Cal. 2003) ("When intentional concealment tolls a statute of limitations, something closer to actual notice than mere inquiry notice is required to end the tolling period . . . . Similarly, if a plaintiff suspects that she has been wronged but does not know the specific facts that constitute the wrong, the statute may be tolled until she learns of those facts if the defendant takes steps to conceal them. Again, this is true even if the plaintiff is already on inquiry notice as to her claim."). Since fraudulent concealment is distinct from the discovery rule, Mattel is entitled to a jury instruction and verdict form questions that address it.

## IV. ALLEGATIONS OF AFFIRMATIVE MISREPRESENTATIONS TO A THIRD PARTY ARE SUFFICIENT TO INVOKE THE DOCTRINE OF FRAUDULENT CONCEALMENT

The Court raised the argument that a fraudulent concealment instruction is not appropriate because there is no proof of actual fraud, but the law is clear that "[a]llegations of affirmative misrepresentations have been held sufficient to invoke the doctrine of fraudulent concealment." Low v. SDI Vendome S.A., 2003 WL 25678880, at *5 (C.D. Cal. Jan. 7, 2003).

## V. FRAUDULENT CONCEALMENT SHOULD BE DECIDED BY THE JURY

The Court raised the argument that it should decide the applicability of the fraudulent concealment doctrine, but both the Ninth Circuit and this Court have held that fraudulent concealment is a jury issue. E.W. French & Sons, Inc. v. Gen. Portland, Inc., 885 F.2d 1392, 1399-1400 (9th Cir. 1989); see also Target Tech. Co., LLC v. Williams Advanced Materials, Inc., 2008 WL 5002935, at *16 (C.D. Cal. Nov. 21, 2008) (Carter, J.).

### Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court instruct the jury on fraudulent concealment.

DATED: April 6, 2011

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Michael T. Zeller
   Michael T. Zeller
   Attorneys for Mattel, Inc.