UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., <br><br> Plaintiff(s), <br><br> v. <br><br> MGA ENTERTAINMENT, INC., <br><br> Defendant(s). <br><br> AND CONSOLIDATED ACTIONS. | CASE NO. CV 04-9049 DOC (RNBx) <br><br> **MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART MGAE DE MEXICO, CARLOS GUSTAVO MACHADO GOMEZ, MGA ENTERTAINMENT, INC., AND ISAAC LARIAN'S MOTION FOR JUDGMENT AS A MATTER OF LAW** |

Before the Court is Carlos Gustavo Machado Gomez ("Machado")'s Motion for Judgment as a Matter of Law. MGA Entertainment, Inc. ("MGAE"), Isaac Larian ("Larian"), and MGAE de Mexico SRL De Cv ("MGA Mexico") join in the Motion. After considering the moving and opposing papers, as well as the parties' oral arguments, the Court GRANTS the Motion and enters judgment against Mattel, Inc. ("Mattel") and Mattel de Mexico, S.A. de C.V. ("Mattel Mexico") on their claims for trade secret misappropriation against Machado and MGA Mexico. The Court also enters judgment against Mattel Mexico on its claim for trade secret misappropriation against MGAE and Larian.

## I. Background

Machado is a former Mattel Servicios, S.A. DE C.V. ("Mattel Servicios") employee who is alleged to have misappropriated certain trade secrets owned or possessed by Mattel Mexico (the parent of Mattel Servicios) and Mattel (the parent of Mattel Mexico). It is undisputed that Machado accepted a position of employment with MGA Mexico in April 2004 following several months of negotiations with Isaac Larian ("Larian") and Thomas Park ("Park"), two MGAE executives. Larian and Park had traveled to Mexico in 2004 looking to recruit employees for a new Mexican subsidiary, which turned out to be MGA Mexico.

It is undisputed that Larian used an independent contractor named Susana Kuemmerle to recruit employees for MGA Mexico. Kuemmerle testified at trial that between 2002 and 2004 she worked with "Latin American distributors to sell the MGA line" of products. Trial Tr., dated February 23, 2011, Vol. I, at 62:23-63:5. In February 2004, Kuemmerle and Larian discussed the creation of a Mexican subsidiary, and Kuemmerle stated: "Yes, we can pull the best from Mama Mexico, ex-Tyco employees that I know. I have some information already." Ex. 3601. Kuemmerle made true on her promise and contacted Machado, a Mexican resident and a prior colleague of Kuemmerle's at Tyco Toys' Mexican subsidiary, Ensueño Tyco Toys de Mexico S.A. de C.V. *See id.*; Trial Ex. 06408-0001. Machado, at the time, was a boys group brand manager at Mattel Servicios, though he represented himself to be a Mattel Mexico employee in pre-printed business cards and on his resume. *See* Trial Ex. 6401 ("Individual Employment Contract For an Indefinite Period of Time Executed by the Party of the First Part, the Company Mattel Servicios, S.A. De C.V. . . . and the Party of the Second Part, Acting On His Own Behalf, Machado."); *see also* Trial Tr., dated March 4, 2011, Vol. I, at 13-14 (noting that business card stated he was "working for Mattel de Mexico"). His responsibilities included product selection, marketing, pricing, and sales forecasting. Trial Tr., dated March 4, 2011, Vol. I, at 27-29. His tenure at Mattel Servicios began in 1997. Trial Ex. 06408-0001.

It is undisputed that Kuemmerle arranged for an introductory meeting between Larian and Machado at the February 2004 New York Toy Fair. Machado was attending that event in the course of his employment with Mattel Servicios. Trial Tr., dated March 4, 2011, Vol. I, at

33:25-34:2. On or about February 5, 2004, Larian greeted Machado at MGAE's toy fair showroom and the two individuals discussed Machado "potentially working for MGA and setting up MGA Mexico operations." *Id.* at 34:22-25-35:1. Larian indicated he would travel to Mexico to continue discussions with Machado about a position of employment at MGAE. *Id.* at 35:19-22. At the February 2004 New York Toy Fair, Kuemmerle also met with Mariana Trueba, another Mattel Servicios employee. *Id.* at 36:8-23. Machado had referred both Trueba and another Mattel Servicios employee named Pablo Vargas to Kuemmerle in connection with her search for potential MGA Mexico employees. *See id.* at 37-38.

It is undisputed that Larian and Park, MGAE's Chief Operating Officer, traveled to Mexico City, Mexico in March 2004 to view office space and interview candidates for employment. The two executives and Kuemmerle interviewed potential MGA Mexico employees at the W Hotel in Mexico City. Trial Tr., dated February 10, 2011, Vol. II, at 41:2-13; Trial Tr., dated February 23, 2011, Vol. II, at 67:3-6. Some of the candidates had been referred to Kuemmerle by a recruiter in Mexico City named Mary Carmen Mendez. *Id.* at 67:7-11. Others, like Machado, Vargas and Trueba had been identified and invited to interview by Kuemmerle herself. *Id.* at 41:10-13.

It is undisputed that Machado and Vargas made a power-point presentation to Larian, Kuemmerle, and Park at the W Hotel in Mexico City. The presentation was displayed on the monitor of a Sony Viao laptop, the same machine on which the presentation was saved. Trial Tr., dated March 4, 2011, Vol. I, at 39:1-3. It incorporated information, including subscription data, available on Mattel Servicios' servers, as well as information from other power point presentations Machado had prepared in the course of his Mattel Servicios employment. *Compare* Trial Ex. 6754, *with* Trial Ex. 7129; *see also* Trial Tr., dated March 4, 2011, Vol. I, at 39:16-25; *id.* at 40:6-41:47:5. Following the presentation, Machado, Vargas, and Trueba interviewed with Larian and Park. Trial Tr., dated February 2, 2011, Vol. II, at 49:9-11.

It is undisputed that Larian sent an e-mail on Friday March 18, 2004 to an address — "plot04@yahoo.com.mx" — registered under the name "Carlos Fuentes" and jointly used by Machado, Vargas, and Trueba. Trial Ex. 06416. Larian's e-mail attached three employment

offer letters: (1) a letter to Machado offering him a position as Director of Marketing at MGA Mexico at a base salary of $8,910.00; (2) a letter to Trueba offering her a position as Director of Marketing, Girls Division at MGA Mexico at a base salary of $8,910.00; and (3) a letter to Pablo Vargas offering him a position as Director of Marketing at MGA Mexico at a base salary of $8,910.00. *Id.* The three individuals responded with some questions and Larian directed them to "work with Tom on this" because Larian was occupied attending to his ill father. Trial Ex. 06418. Larian also directed a fellow MGAE employee to take note of the three employees, noting "These people will run MGA Mexico." Trial Ex. 06785.

It is undisputed that negotiations between the three Mattel Servicios employees and Park continued through March and into April 2004. On April 14, 2004, Kuemmerle e-mailed Larin and Park stating: "Just arrived from South America and talked with Gustavo Machado, as of today they have not received the contracts . . . Gustavo, Mariana and Pablo want to resign (all at the same time, and you cant [sic] believe my smile!) Next Wednesday, but without a contract signed, they will not be able to do it." Trial Ex. 03617. Larian instructed Park to follow up. *Id.* Two days later, on April 16, 2004, the three Mattel Servicios employees consummated employment contracts with MGA Mexico. *See, e.g.*, Trial Ex. 06793 (employment agreement between Machado and MGA Mexico).

It is undisputed that Machado, Trueba and Vargas used their computers to access and copy documents prior to resigning from Mattel Servicios. Machado testified that he began downloading materials from the servers he had access to "after [he] met with Mr. Larian at the W Hotel in March of 2004." Trial Tr., dated March 4, 2011, Vol. I, at 49:2-7. Machado downloaded "internal Mattel information and internal confidential Mattel information" to a thumb drive. *Id.* 49-50. Machado testified that, at the same time, Trueba and Vargas also downloaded documents to a thumb drive. *Id.* at 49:6-9. In addition, Trueba forwarded to Machado e-mails from employees at Mattel Mexico and Mattel that attached certain documents, *see, e.g.*, Trial Ex. 06429-00002 (April 15, 2004 e-mail from Mariana Trueba to Machado forwarding e-mail from Andrea Ramirez attaching Integrated Girls Consolidated Plan); Trial Ex. 06422-00002 (March 25, 2004 e-mail from Mariana Trueba to Machado forwarding e-mail from

Lizbeth Sills attaching licensee directory), and also reached out to Mattel employees to gather specific documents, *see* Trial Ex. 08147-00001; *see also* Trial Ex. 08864 (April 15, 2004 e-mail from Mariana Trueba to Machado forwarding e-mail attaching Barbie Customized Fall Guidelines). The vast majority of the documents concerned the Mexican market, including Mattel Servicios and Mattel Mexico's plans to increase market share in the Mexican market. *See, e.g.*, Trial Tr., dated March 10, 2011, Vol. I, at 75-76 (discussing creation of Trial Exhibit 6739: "a report summarizing the 2004 Girls' Full Year Viability Testing in Mexico [that] evaluate[d] the strength of our concepts and identif[ied] the strongest candidates within our girls' toy brands."). A smaller sub-set of the documents downloaded by Machado, Trueba, and/or Vargas concerned more than just the Mexican market. *See* Trial Ex. 7104 (Barbie 2005 preliminary line list); Trial Ex. 7110 (Barbie Customized Opportunities for Fall 2004); Trial Ex. 07112 (Brittany 2003 Market Analysis).

It is undisputed that some of the documents, including documents concerned with the Mexican market, were stored on computer servers that Mattel and its subsidiaries maintained in the United States. Trial Tr., dated March 10, 2011, Vol. I, at 80-81. One of Mattel's witnesses could not testify about whether the documents were stored in Mattel's servers in California or Arizona. *Id.* at 80:19-21. However, she recognized that the 2004 Girls Full Year Mexico Viability Testing Report (Trial Ex. 6739) was stored on servers in the United States even though the document reflected research conducted in Mexico. *See id.* at 81:11-14. Another Mattel witness testified that the Barbie 2004 preliminary line list (Trial Ex. 7104) that Machado downloaded to a thumb drive was created in El Segundo, California. Trial Tr., dated March 9, 2011, Vol. II, at 83-99.

The three Mattel Servicios employees simultaneously resigned on April 21, 2004. That afternoon, Machado e-mailed Larian from the "plot04@yahoo.com.mx" account and stated:

> Hello new boss,
> 
> As you might have heard we resigned yesterday and let me tell you "Rome is on fire". We left the office at 1:30 PM yesterday and since then they have already made 10 changes in the staff, we are driving

5

them crazy!!!

Based in what we know from our contacts, Jerry's and Gabriel's (Mattel's Mexico GM) quote is "We are 80% sure ithey [sic] went to MGA". They are even thinking of calling Hasbro to ask and prevent our actions.

We will take your pictures tomorrow and we will send them along with a list of topics of what we want to plan for MGAE Mexico.

I will be on my cell phone if you need further information.

Trial Ex. 03618-00001.

Larian responded: "I am in Ny. What is your cell?" *Id.*

Machado, Trueba and Vargas started working at MGA Mexico's new office in Mexico City, Mexico in April 2004. Kuemmerle was hired as MGA Mexico's office manager.

In October 2005, Mexican law enforcement authorities, acting upon a complaint registered by Mattel Mexico, conducted a search of the MGA Mexico offices. It is undisputed that the Mexican authorities claimed to have discovered a number of hard copy documents that appeared to have originated in Mattel and/or Mattel Mexico. *See* Trial Tr., dated February 23, 2011, Vol. II, at 13-25 (discussing hard copy documents: Trial Exs. 7148-7160, 12834). The authorities also claimed to have discovered a compact disc that contained documents that appear to have originated with either Mattel and/or Mattel Mexico; the compact disc was copied and received into evidence as Trial Ex. 8089. That search was conducted pursuant to a "300-page criminal complaint filed by Mattel" — an action that is on-going in Mexico. Trial Ex. 07523.

These facts constitute the basis for Mattel's claim for trade secret misappropriation against MGA Mexico, Machado, Larian, and MGAE. That claim was first asserted by Mattel on November 20, 2006 as a proposed amendment to Mattel's original complaint against Carter Bryant (Case. No. CV 04-9049) after the Ninth Circuit denied Mattel's interlocutory appeal of the district court's refusal to remand its case against Carter Bryant to Los Angeles County Superior Court. Mattel's motion for leave to amend was denied by the Honorable Stephen G. Larson, who directed Mattel to file its claim in the form of an amended answer and counterclaim

to MGAE's April 13, 2005 complaint against Mattel (CV 05-2727). (Docket 142.) Though discovery had been stayed during the pendency of Mattel's appeal, *see* Docket 17, the parties' continued to litigate their claims in district court — Mattel, for instance, filed a motion to dismiss MGAE's complaint and thereafter filed an Answer to MGAE's complaint in the CV 05-2727 action. *See* Docket 28, 29.

Mattel Mexico was joined as a counterclaimant to Mattel's claims against Machado, MGA Mexico, Larian, and MGAE on March 24, 2010. It claims as its trade secrets some of the information misappropriated by the departing Mattel Servicios employees.

## II. Discussion

Machado, MGA Mexico, Larian, and MGAE argue that the law of Mexico governs Mattel and Mattel Mexico's claims arising out of the conduct of Machado, Trueba, Vargas, MGA Mexico, Larian, and MGAE. Mattel and Mattel Mexico respond that California law governs this conduct.

Because this Court exercises supplemental jurisdiction over those claims, it is bound to apply California's choice of law rules. *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996). "[G]enerally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state. In such event he must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it. [Citations]." *Hurtado v. Superior Court*, 522 P.2d 666 (Cal. 1974). The California Supreme Court has adopted a three part "governmental interest" framework to resolve choice of law disputes:

> First, the court examines the substantive law of each jurisdiction to determine whether the laws differ as applied to the relevant transaction. Second, if the laws do differ, the court must determine whether a "true conflict" exists in that each of the relevant jurisdictions has an interest in having its law applied. If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a "false conflict" and the law of the interested

jurisdiction is applied. On the other hand, if more than one jurisdiction has a legitimate interest, the court must move to the third stage of the analysis, which focuses on the "comparative impairment" of the interested jurisdictions. At this stage, the court seeks to identify and apply the law of the state whose interest would be more impaired if its law were not applied.

*Abogados v. AT & T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (citations and internal quotation marks omitted).

There is no dispute that the laws of Mexico and California differ in two material respects as applied to the transaction at issue. <u>First</u>, though both Mexico and California recognize a claim for trade secret misappropriation, Mexico requires a claimant to file suit within two years of the misappropriation, while California requires a claimant to file suit within three years of being put on notice of the potential misappropriation. *Compare* Docket 7869-1 ¶ 5 (Mexico), *with* Cal. Civ. Code § 3426.6 (California). Here, Mattel filed its claim for trade secret misappropriation on November 20, 2006, more than two years after Machado, Vargas, and Trueba left Mattel Servicios for MGA Mexico, and Mattel Mexico filed its claim for trade secret misappropriation nearly six years later. <u>Second</u>, though the Mexican statute only creates liability for disclosure, the California statute makes liable those who wrongfully acquire or use a trade secret. *Compare* Docket 7869-1, *with* Cal. Civ. Code § 3426.1. Here, both Mattel and Mattel Mexico seek to hold MGA Mexico, Larian, and MGAE liable for acquiring and using the materials allegedly misappropriated by the Mattel Servicios employees, even though Mexican law does not similarly attach liability to third parties who benefit from a departing employee's breach of secrecy.

The "true conflict" analysis differs as to each claim against each entity. The Court has already determined that Mexico has a negligible interest in the application of its law to the transaction(s) that give rise to Mattel's claim against MGAE and Larian, especially since that claim includes allegations of other unrelated acts of trade secret misappropriation. *See Mattel, Inc. v. MGA Entm't, Inc.*, 2011 WL 1114250, at *37 (C.D. Cal. Jan. 5, 2011) (Carter, J.). The Court must therefore proceed to determine whether: (1) there is a "true conflict" as to Mattel

Mexico's claims against Machado and MGA Mexico; (2) there is a "true conflict" as to Mattel's claims against Machado and MGA Mexico; and (3) there is a "true conflict" as to Mattel Mexico's claims against MGAE and Larian. For the reasons that follow, the Court concludes that the law of Mexico must apply to all three sets of claims.

### A. Mattel Mexico's Claims against Machado and MGA Mexico

Mattel Mexico claims that, at MGA Mexico's direction, Machado and his colleagues downloaded Mattel Mexico's trade secrets to a thumb drive, misappropriated those trade secrets to MGA Mexico's offices, and thereafter used the trade secret information to MGA Mexico's benefit. California has no "legitimate interest" in the application of its law to a dispute between a Mexican company, a former employee of its Mexican subsidiary, and the former employee's subsequent Mexican employer. *See McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1422 (9th Cir. 1989). California trade secret law — the state law that occupies the field of restraints upon the misappropriation of information — protects a claimant's property interest in its information but, more importantly, protects the integrity of relationships built upon trust and confidence. *See Intermedics, Inc. v. Ventritex, Inc.*, 822 F. Supp. 634, 650-52 (N.D. Cal. 1993) ("Thus, the fundamental purpose of California trade secret law is to encourage the honoring of confidences shared in such relations, *i.e.*, to encourage the preservation of the relationships and the protection of the confidences, and to provide parties who are victimized by breaches of those relationships with a remedy."). It is undisputed that the employment relationships (and even the competitive relationships) that give rise to Mattel Mexico's claims against MGA Mexico and Machado are all centralized in Mexico. Mexico has an obvious and solitary interest in the application of its laws to these relationships.

Mattel Mexico responds that at least some of its trade secret information was stored in servers located in California. But California trade secrets law's predominant concern is the integrity of confidential relationships, not property rights, *see Security People, Inc. v. Medeco Security Locks, Inc.*, 59 F. Supp. 2d 1040, 1043-44 (N.D. Cal. 1999) (citing *Intermedics* with approval), and more importantly, the testimony shows that Machado and his colleagues accessed the vast majority of the supposed trade secrets by exploiting their access to Mattel Servicios and

Mattel Mexico's shared directories. *See* Trial Tr., dated March 4, 2011, Vol. III, at 26:21-27:6; *see also* Decl. Richard DeAnda ISO Mattel Mot. for Summary Judgment ¶ 6 (stating that Mattel and its subsidiaries only permitted employees to access servers containing documents necessary to perform their duties); Trial Tr., dated March 10, 2011, Vol. I, at 80 (testifying that one document stored on Mattel's United States servers but disclaiming knowledge about whether document was stored in Arizona or California); Trial Tr., dated March 10, 2011, Vol. II, at 83 (stating one document was stored on Mattel's United States servers).

Even if *all* the documents accessed and downloaded by Machado and his Mattel Servicios colleagues resided on servers in California, California's interest (if any) in the application of its laws to the transaction would be easily outweighed by Mexico's interest for two reasons. First, regardless of the location of the documents, the relevant conduct did not occur in California. *Cf. McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 96-97 (2010). The three Mattel Servicios employees interviewed in Mexico City, proceeded to download documents from their offices in Mexico, and on occasion solicited documents using their Mattel Servicios e-mail addresses. MGA Mexico's acquisition and use of those materials also occurred, by necessity, in Mexico. Second, California's interest in guarding the property rights of a non-citizen pale in comparison to Mexico's interest in maintaining a balance between (1) its citizens' rights to recover for the loss of property and trust and (2) its citizens' right to be subject to timely lawsuits and immune from indirect liability of the variety that Mattel Mexico seeks against MGA Mexico. Thus, even if the Court were to proceed to the comparative impairment step of the choice-of-law analysis, it is abundantly clear that Mexico's interest in the application of its law would be far more impaired than California's.

### B. Mattel Mexico's Claims Against MGAE and Larian

Mattel Mexico also claims that MGAE and Larian induced the Mattel Servicios employees to misappropriate Mattel Mexico's trade secrets or, knowingly and improperly used the trade secret information misappropriated by the Mattel Servicios employees. Mexico has an obvious interest in regulating business conduct, ensuring timely claims, and protecting residents from expansive liability for the misappropriation of information. California, on the other hand,

has no interest in the application of its law to the dispute between Mattel Mexico and MGAE and Larian for two reasons. <u>First</u>, California has no interest in relieving a non-citizen (like Mattel Mexico) from a more strict statute of limitations so that it can sustain a claim against two California citizens. *Cf. Riley v. Fitzgerald*, 178 Cal. App. 3d 871 (1986) ("We do not believe that California has a greater interest in providing Texas residents - former shareholders in a dissolved Texas corporation - greater protection than Texas would afford them.") (citing *People v. One 1953 Ford Victoria, Texas License No. EY 8613, Motor No. BPV 102617*, 48 Cal.2d 595 (1957)). The California Legislature has, in fact, made clear through the passage of Code of Civil Procedure Section 361 that California has no interest in providing foreign citizens a forum to pursue claims against California citizens that are time-barred under their home state's law. *See* Cal. Civ. Code § 361 (providing that foreign statute of limitations shall apply unless plaintiff hails from California). <u>Second</u>, there is no evidence that any of the conduct alleged to give rise to MGAE and/or Larian's liability occurred in California. Mattel points to the fact that Larian and Park communicated with Larian by e-mail from California, but identifies no e-mail communication that suggests or even acknowledges the alleged misconduct by the Mattel Servicios employees. The misconduct by MGAE and Larian (if any) all occurred in Mexico and potentially during Kuemmerle's correspondence with the Mattel Servicios employees and the meetings at the W Hotel in Mexico City.

   Even if California had a legitimate interest in the application of its law to the dispute between Mattel Mexico and MGAE/Larian, Mexico would suffer a greater impairment absent the application of its law. In conducting the comparative impairment test, the Court may consider the following factors: "(1) each forum's present commitment to the application of its laws; (2) whether one forum's law is more prevalent; (3) whether each forum's law is the exclusive means of achieving a particular policy goal; and (4) the situs of the injury." *Mattel, Inc.*, 2011 WL 1114250, at *37 (citing *Van Winkle v. Allstate Ins. Co.*, 290 F. Supp. 2d 1158, 1166-67 (C.D. Cal. 2003)).

   <u>First</u>, Mexico's commitment to the application of its laws *to this case* is well-documented. Since the 2005 raid at the MGA Mexico offices, Mattel and Mattel Mexico have pursued

11

criminal prosecutions against the three Mattel Servicios employees in Mexico and with the support of Mexican prosecutors and law enforcement. Mexican prosecutors have requested the use of evidence discovered in this case and have continued to investigate the conduct allegedly committed by the departing Mattel Servicios employees and MGA Mexico.

Second, Mexico has an interest in immunizing third-parties from liability for breaches of trust and confidence committed by employees like Machado, Trueba, and Vargas. Even California courts recognize that expansive trade secret liability can inhibit employee mobility by deterring recruitment. *See Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443 (2002). Mexican employees (and Mexican markets) suffer if prospective employers — including foreign employers looking to build a subsidiary — fear that soliciting a competitor's employees may expose them to liability for the departing employee's conduct. That may be a risk worth taking as far as the California Legislature is concerned, but Mexico has struck its own balance between preserving bonds of trust and ensuring employee mobility, market growth, and the free flow of information. The application of California law frustrates this goal at no benefit to California, whose interest in ensuring the integrity of a Mexican corporation's relationships with its Mexican subsidiary's employees is difficult to discern.

Third, the situs of Mattel Mexico's injury is Mexico. Mattel Mexico acknowledges this when it argues that Machado crowed about "damage he, Vargas, and Trueba had done to Mattel" by downloading materials to computers in Mexican offices and thereafter departing to another Mexican employer.

Mexico has the sole legitimate interest in the application of its laws to Mattel Mexico's claims against Larian and MGAE. Even if California had any interest in the application of its laws to those claims, Mexico's interest in ensuring employee mobility, growth, and the free flow of information in its own markets.

### C. Mattel's Claims Against Machado and MGA Mexico

Mattel claims that, at MGA Mexico's direction, Machado, Trueba and Vargas breached separate obligations to maintain the secrecy of trade secret information owned by Mattel Servicios' American parent. The conduct that gives rise to this claim includes (1) Machado's use

1  of his Mattel Servicios computer to access files on Mattel's El Segundo servers; and
2  (2) Trueba's solicitation of the Barbie Line List from employees in the United States.
3        Regardless of the applicable law, Mattel's claim against Machado fails because Machado
4  had no independent obligation to maintain the secrecy of Mattel's trade secret information.
5  During his direct examination, Machado testified about two Mattel conflict-of-interest
6  questionnaires. Trial Ex. 6402; Trial Ex. 6403. Both agreements obligated Machado to maintain
7  the secrecy of Mattel's information. *Id.* But neither is enforceable because Machado received
8  no consideration in exchange for his promise to maintain the secrecy of Mattel (the parent)'s
9  trade secret information. *See Mattel*, 2011 WL 1114250, at *52 ("In its Conflict Questionnaire
10 and Code of Conduct, Mattel purported to impose dozens of obligations upon Machado without
11 providing him consideration in exchange for his promise of performance.") (citing *US Ecology,*
12 *Inc. v. State of California*, 92 Cal. App. 4th 113, 128-29 (2001)).
13       Both Mexico and California have a legitimate interest in the application of their laws to
14 these claims. Mexico, like any other forum, has adopted a statute of limitations "as [a] matter[]
15 of public policy designed to promote justice and prevent the assertion of stale claims after the
16 lapse of long periods of time." *McGee v. Weinberg*, 97 Cal. App. 3d 798, 804 (1979). This
17 statute of limitations "assure[s] individuals and commercial entities operating within [Mexico]
18 that applicable limitations on liability set forth in [Mexico]'s law will be available to those
19 individuals and businesses in the event they are faced with litigation in the future." *McCann*, 48
20 Cal.4th at 98; *see also American Bank of Commerce v. Corondoni*, 169 Cal. App. 3d 368, 373
21 (1985). Mexico also has an interest in shielding its corporate residents, like MGA Mexico, from
22 liability for misconduct committed by incoming employees because the specter of liability on the
23 basis of circumstantial evidence may chill recruitment and stifle growth. On the other hand,
24 California has a demonstrable interest in "protect[ing] California residents [like Mattel] against
25 the misappropriation of their trade secrets." *Integral Development Corp. v. Weissenbach*, 99
26 Cal. App. 4th 576, 122 Cal. Rptr. 24, 36 (2002). Because this presents a "true conflict" of law,
27 the Court proceeds to the comparative impairment test.
28       The site of the alleged misconduct is particularly relevant because this is a case in which

Mattel's porous corporate structure rendered it foreseeable that it would suffer injury from torts committed abroad. Machado had access to documents in large part because he worked for a subsidiary, Mattel Servicios, created for the express purpose of selling Mattel's wares throughout Latin America. Mattel suggests that the obligations (if any) owed by Machado to "Mattel Servicios" or "Mattel Mexico" were Mexico-centered while the obligations (if any) he owed to "Mattel" were California-based, but Machado's employment contracts say no such thing. Indeed, during Machdo's direct examination, Mattel's counsel's whipsawed between identifying "Mattel," "Mattel Mexico," and "Mattel Servicios" as Machado's former employer *in Mexico*. *See, e.g.*, Trial Tr., dated March 4, 2011, Vol. I, at 13:1 ("[Y]ou worked for Mattel in Mexico?"); *id.* at 13:14-17 ("[T]he first title that you list for yourself is at Mattel de Mexico as brand manager?"); *id.* at 26:14 ("Now, when you were working at Mattel Mexico"); *id.* at 26:23-24 ("What was your first position while you were working there for Mattel in Mexico?"); *id.* at 27:4 ("And then what was your next position for Mattel?"). Regardless of this imprecision, every one of the relationships was centered in Mexico because that is where Machado lived and worked.

Mexico's interest in protecting its citizen-employees from stale claims should also triumph because California's more liberal statute of limitations does not protect any meaningful interest in this case. Mattel availed itself of its rights under Mexican law almost immediately after Machado left for MGA Mexico from Mattel Servicios. Mattel filed a 300 page criminal complaint against Machado well within the two year statute of limitations for a civil claim for trade secret misappropriation. Though it was obviously on notice of its claims against Machado at that time, it elected not to pursue a claim under Mexico's trade secret misappropriation statute. No policy objective is redeemed by providing Mattel the extra year available under the California's trade secret statute of limitations. Given the fact that Mattel availed itself of the Mexican forum both by establishing *two* subsidiaries in that country, and then proceeded to pursue criminal charges against Machado in that country, California has no interest in seeing that Mattel's rights are further protected under the California Uniform Trade Secrets Act. To the contrary, Mattel's conduct to date makes it "reasonable to conclude that [Mattel] should not

expect to subject [Machado] to a [further] financial hazard that [Mexican] law had not created." *McCann*, 48 Cal.4th at 99.

Mexico's interest in limiting liability for trade secret misappropriation to the individuals or entities that stand in a position of trust is also impaired by the application of California law to MGA Mexico's alleged inducement of a Mexican employee's misappropriation. Even assuming MGA Mexico used Mattel documents that concerned the American market — a proposition for which there is no evidence in the record — Mexico's interest in protecting a citizen from liability for such conduct trumps any interest that California has in the application of its law to a foreign company's use of a California citizen's trade secret information. *Cf. Subafilms, Ltd. v. MGM-Pathe Comm's Co.*, 24 F.3d 1088, 1093 (9th Cir. 1994) (noting that it is an "undisputed axiom that United States copyright law has no extraterritorial application.").

On the facts of this case, Mexico would suffer a far greater impairment if precluded from applying its laws to Mattel's claims against Machado and MGA Mexico. Mattel has already availed itself of Mexico's system of justice in filing and pursuing criminal proceedings against Machado in that country. More importantly, Mattel was on notice of its claim for trade secret misappropriation against Machado well within Mexico's two-year statute of limitations and elected not to timely pursue its claim. California has little to no interest in rescuing a citizen corporation from a foreign forum's temporal restrictions on a claim brought against a resident of that forum who is employed by a subsidiary of the California corporation that operates in that forum. Under the comparative impairment test, Mexican law prevails.

### D. Application of Mexican Law

Under Mexican law, MGAE, Larian, and MGA Mexico are not liable to Mattel Mexico for acts of misappropriation committed by Machado. MGA Mexico is likewise not liable to Mattel for acts of misappropriation committed by Machado.

Moreover, under Mexico's two year statute of limitations, both Mattel and Mattel Mexico's claims are time-barred. Both Mattel entities respond that this action was stayed during the interlocutory appeal of Judge Manella's remand order, but that argument is flawed for two reasons. First, Mattel Mexico was not a party to action at the time of the stay and its claims

against MGAE, Larian, MGA Mexico and Machado could have been filed during the stay. Second, Mattel had no pending claims against either Machado or MGA Mexico during the stay and it too could have filed its trade secret misappropriation claims at that time. Under any reading of the pleadings at the time of the discovery stay entered by Judge Manella, neither Mattel nor Mattel Mexico were barred from bringing the claims that are the subject of this motion and the statute of limitations need not be equitably tolled as a result.

### III. Disposition

For the foregoing reasons, judgment is entered against Mattel on its claims for trade secret misappropriation against Machado and MGA Mexico. Judgment is also entered against Mattel Mexico on its claims for trade secret misappropriation against Machado, MGA Mexico, MGAE, and Larian.

IT IS SO ORDERED.

DATED: April 6, 2011

_____
DAVID O. CARTER
United States District Judge