QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc., and Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de C.V., a Mexico business entity,<br><br>              Plaintiffs,<br><br>         vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>              Defendants. | CASE NO. CV 04-9049 DOC (RNBx) Consolidated with Case Nos. CV 04-09059 and CV 05-02727<br><br>**MATTEL, INC.'S OBJECTIONS PURSUANT TO FED. R. CIV. PROC. 51(c) REGARDING THE FAILURE TO PROVIDE JURY INSTRUCTIONS**<br><br>Date:    TBD<br>Time:    TBD<br>Place:   Courtroom 9D<br><br>Pre-trial Conference:  January 4, 2011<br>Trial Date:  January 18, 2011 |

00505.07975/4079682.1

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to <u>Federal Rule of Civil Procedure</u> 51(c), Mattel, Inc., and Mattel de Mexico, S.A. de C.V. (collectively, "Mattel") object to the failure of the Court to instruct the jury as to the jury instructions offered by Mattel.  Mattel's objections are based on the positions herein, as well as all prior arguments and objections, both oral and written, and all briefing regarding jury instructions, which are incorporated herein.

Mattel objects to the failure to provide the following jury instructions:

## **Objections**

### **1.   MATTEL SPECIAL JURY INSTRUCTION NO. 2:  OWNERSHIP OF INVENTIONS—INVENTIONS AGREEMENT**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for the reasons Mattel has explained previously and based on the authorities Mattel has cited.  <u>See</u> Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 9-10.  These reasons include that the instruction properly reflects legal rulings made by this Court and the Ninth Circuit concerning the Inventions Agreement.  <u>See</u> MSJ Order (Dkt. No. 9538 at 4-12); Inventions Agreement; <u>Mattel, Inc. v. MGA Entertainment, Inc.</u>, 616 F.3d 904 (9th Cir. 2010).

### **2.   MATTEL SPECIAL JURY INSTRUCTION NO. 4:  OWNERSHIP OF INVENTIONS—IMPLIED-IN-FACT CONTRACT**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for the reasons Mattel has explained previously and based on the authorities Mattel has cited.  <u>See</u> Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 24-25.  These reasons include that the instruction sets forth the implied-in-fact contract theory that Mattel has pursued at trial and that is supported by the law and the evidence.  <u>See</u> <u>Silica Tech, L.L.C. v. J-Fiber, GmbH</u>, 2009 WL 2579432, at *13 (D. Mass. May 19, 2009); <u>Banks v. Unisys Corp.</u>, 228 F.3d 1357, 1359 (Fed. Cir. 2000); <u>Teets v. Chromalloy Gas Turbine Corp.</u>, 83 F.3d

403, 407 (Fed. Cir. 1996); Ultimax Cement Mfg. v. CTS Cement Mfg. Corp., 2004 WL 3770498, at *16 (C.D. Cal. Dec. 6, 2004), rev'd on other grounds by, 587 F.3d 1339, 1343 (Fed. Cir. 2009).

**3.    MATTEL SPECIAL JURY INSTRUCTION NO. 5:  OWNERSHIP OF INVENTIONS—AGENCY**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for the reasons Mattel has explained previously and based on the authorities Mattel has cited.  See Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 26-27.  These reasons include that the instruction sets forth an agency theory of ownership that Mattel has pursued at trial and is supported by the law and the evidence.  See Cal. Civ. Code § 2330; Huong Que, Inc. v. Luu, 150 Cal. App. 4th 400, 416-417 (2007); Bate v. Marsteller, 232 Cal. App. 2d 605, 616-617 (1965); Van de Kamp v. Bank of America, 204 Cal. App. 3d 819, 835 (1988); Savage v. Mayer, 33 Cal. 2d 548, 551 (1949).

**4.    MATTEL SPECIAL JURY INSTRUCTION NO. 6:  OWNERSHIP OF INVENTIONS—CORPORATE OPPORTUNITY**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for the reasons Mattel has explained previously and based on the authorities Mattel has cited.  See Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 26-27.  These reasons include that the instruction sets forth the corporate opportunity theory of ownership that Mattel has pursued at trial and is supported by the law and the evidence.  See Daniel Orifice Fitting Co. v. Whalen, 198 Cal. App. 2d 791, 796-799 (1962); Sequoia Vacuum Sys. v. Stransky, 229 Cal. App. 2d 281, 286 (1964); Components for Research, Inc. v. Isolation Prods., Inc., 241 Cal. App. 2d 726, 729 (1966); Iconix, Inc. v. Tokuda, 457 F. Supp. 2d 969, 982 (N.D. Cal. 2006); C.H. Reynolds Elec., Inc. v. Spears, 2004 WL 296994, at *7 (Feb. 17, 2004).

**5.** **MATTEL'S SPECIAL JURY INSTRUCTION NO. 3: INTERPRETATION—MUTUAL INTENT**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for the reasons Mattel has explained previously and based on the authorities Mattel has cited.  See Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 20-21.  These reasons include that the instruction sets forth the relevance of the parties' mutual intention to the contract interpretation that the jury will be charged to undertake, and the instruction is supported by the law and the evidence.  See Cal. Civ. Code § 1636; Santisas v. Goodin, 17 Cal. 4th 599, 608 (1998).

**6.** **MATTEL'S SPECIAL JURY INSTRUCTION NO. 9:  ACTUAL USE BY TRADE SECRET HOLDER NOT REQUIRED**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for the reasons Mattel has explained previously and based on the authorities Mattel has cited.  See Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 49-50.  These reasons include that the instruction properly reflects that a cause of action for trade secret misappropriation under CUTSA does not require the actual use of a trade secret.  See Cal. Civ. Code § 3426.1; Leatt Corp. v. Innovative Safety Tech., LLC, 2010 WL 1526382, at *5 (S.D. Cal. Apr. 15, 2010) ("To have independent economic value, the information must be 'sufficiently valuable and secret to afford an actual or potential economic advantage over others.'") (quoting Yield Dynamics, Inc. v. TEA Systems Corp., 154 Cal. App. 4th 547, 564 (2007)); Contour Design, Inc. v. Chance Mold Steel Co., Ltd., 2010 WL 174315, at *5 (D. N.H. Jan. 14, 2010) (UTSA "encompasses confidential information that has 'potential' economic value, not just 'actual' economic value, and therefore 'extends protection to a plaintiff who has not yet had an opportunity or acquired the means to put a trade secret to use'") (citing UTSA § 1 cmt.); Learning Curve Toys, Inc. v. PlayWood Toys, Inc., 342 F.3d 714, 726 (7th Cir. 2003) (finding it irrelevant for purposes of trade secret protection that the plaintiff "did not

actually use the concept in its business"); <u>Silvaco Data Sys. v. Intel Corp.</u>, 184 Cal. App. 4th 210, 221 (2010); <u>Courtesy Temporary Service, Inc. v. Camacho</u>, 222 Cal. App. 3d 1278, 1287 (1990) (noting that the definition of a trade secret "'includes information that has commercial value from a negative viewpoint,'" such as "'the results of lengthy and expensive research which proves that a certain process will not work'") (citation omitted).

## 7. MATTEL'S SPECIAL JURY INSTRUCTION NO. 10:  CONCEPTS MAY BE TRADE SECRETS

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for the reasons Mattel has explained previously and based on the authorities Mattel has cited.  <u>See</u> Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 51-52.  These reasons include that the instruction properly instructs the jury that concepts, which both parties assert as trade secrets, may be trade secrets.  <u>See</u> <u>Learning Curve Toys, Inc. v. PlayWood Toys, Inc.</u>, 342 F.3d 714, 726 (7th Cir. 2003) (finding issue of fact as to whether "concept for noise-producing toy railroad track" was trade secret; <u>see also</u> 2 Roger M. Milgrim, Milgrim on Trade Secrets § 9.05[4], at 9-487-9-488.2 & n. 36 (Eric E. Benson, ed., 2003 rev. ed. & 2009 supp.) (explaining that trade secrets may reside in "confidential disclosures of concepts, or as yet-untested, ideas for a new product or new process"); <u>see also</u> <u>Friedman v. Quest Int'l Fragrances</u>, 58 Fed. Appx. 359, 360 (9th Cir. 2003) (remanding case to district court to address whether plaintiff's ideas for marketing fragrances qualified for trade secret protection – again, concern was about secrecy, and not whether "ideas" could be trade secrets); <u>Russo v. Ballard Medical Prods.</u>, 550 F.3d 1004, 1011-12 (10th Cir. 2008) ("Trade secret laws operate only to protect those ideas held in secret, while patent law affords the exclusive means of protecting the right to an invention only after it is disclosed to the public.  [citation]  Similarly, trade secret law applies to innovations that may not ever be amenable to patent, given patent law's strict requirements of novelty, utility,

1  and non-obviousness."); <u>Contour Design, Inc. v. Chance Mold Steel Co. Ltd.</u>, 2010

2  WL 174315, at *8 (D.N.H., Jan. 14, 2010) (holding that plaintiff's "idea to

3  incorporate a removable roller into its ergonomic mouse series possesses" the

4  characteristics of a trade secret as defined in the UTSA); <u>O2 Micro Int'l Ltd. v.

5  Monolithic Power Sys., Inc.</u>, 420 F. Supp. 2d 1070, 1089-1090 (N.D .Cal. 2006) ("It

6  does not matter if a portion of the trade secret is generally known, or even that every

7  individual portion of the trade secret is generally known, so long as the combination

8  of all such information is not generally known."); <u>Mattel, Inc. v. MGA

9  Entertainment, Inc.</u>, 2010 WL 5422504, at *23 (C.D. Cal. Dec. 27, 2010) ("fact-

10 finder [will be] tasked with determining whether the doll names Bratz and Jade

11 qualify as trade secrets; in particular, whether the names derive independent value

12 from not being generally known.").

13 **8.    MATTEL'S SPECIAL JURY INSTRUCTION NO. 11:  TRADE SECRETS MAY EXIST IN COMBINATION OF ELEMENTS**

14

15         The Court declined to give any portion of this instruction.  That is erroneous

16 because the instruction is proper for the reasons Mattel has explained previously and

17 based on the authorities Mattel has cited.  <u>See</u> Mattel's Fourth Amended Jury

18 Instructions, Dkt. No. 9683, at 53-54.  These reasons include that the instruction

19 properly reflects that trade secrets may consist of a combination of generally known

20 individual elements, a legal issue on which MGA has attempted to mislead the jury.

21 <u>See</u> <u>O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.</u>, 420 F. Supp. 2d 1070, 1089-

22 1090 (N.D. Cal. 2006) ("It does not matter if a portion of the trade secret is

23 generally known, or even that every individual portion of the trade secret is

24 generally known, so long as the combination of all such information is not generally

25 known.").

26 **9.    MATTEL'S SPECIAL JURY INSTRUCTION NO. 13:  NOT MARKING AS CONFIDENTIAL IS NOT DETERMINATIVE**

27         The Court declined to give any portion of this instruction.  That is erroneous

28 because the instruction is proper for the reasons Mattel has explained previously and

based on the authorities Mattel has cited.  <u>See</u> Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 62-63.  These reasons include that the instruction properly sets forth that documents need not be marked "confidential" to satisfy the requirement of reasonable efforts to protect secrecy, an issue MGA has repeatedly injected into the trial.  <u>See</u> MSJ Order (Dkt. No. 9538 at 30) ("[I]t makes no sense to hold, as a matter of law, that the failure to mark documents as confidential precludes a finding of reasonable efforts, since the very employee that creates the trade secret at the employer's direction may be the individual who misappropriates it.").

**10.    MATTEL'S SPECIAL JURY INSTRUCTION NO. 14: <u>CONFIDENTIALITY AGREEMENTS AS REASONABLE EFFORTS TO PROTECT SECRECY</u>**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for the reasons Mattel has explained previously and based on the authorities Mattel has cited.  <u>See</u> Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 64-65.  These reasons include that the instruction properly sets forth that confidentiality agreements are an appropriate basis on which to conclude that reasonable steps to maintain secrecy were undertaken, an issue supported by the law and evidence at trial.  <u>See</u> <u>MAI Sys. Corp. v. Peak Computer, Inc.</u>, 991 F.2d 511, 521 (9th Cir. 1993) ("MAI took reasonable steps to insure the secrecy to this information as required by the UTSA.  MAI required its employees to sign confidentiality agreements respecting its trade secrets, including the Customer Database.").

**11.    <u>CACI 3701:  LIABILITY FOR AGENTS' MISAPPROPRIATION</u>**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for the reasons Mattel has explained previously and based on the authorities Mattel has cited.  <u>See</u> Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 74-75.  These reasons include that the instruction sets forth an agency theory that Mattel has pursued throughout its case and at trial and that is supported by the law and the evidence.  <u>See</u> Mattel, Inc.'s Corrected

Opposition To The MGA Parties' Motion For Summary Judgment In 05-2727 Action, at 65-66, 69-70.

**12.** **CACI 3705:  EXISTENCE OF "AGENCY" RELATIONSHIP DISPUTED**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for the reasons Mattel has explained previously and based on the authorities Mattel has cited.  See Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 76-77.  These reasons include that the instruction sets forth an agency theory that Mattel has pursued throughout its case and at trial and that is supported by the law and the evidence.  See Mattel, Inc.'s Corrected Opposition To The MGA Parties' Motion For Summary Judgment In 05-2727 Action, at 65-66, 69-70.

**13.** **CACI 3710:  RATIFICATION**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for the reasons Mattel has explained previously and based on the authorities Mattel has cited.  See Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 78-79.  These reasons include that the instruction sets forth a ratification theory of liability that Mattel has pursued throughout the case and at trial and is supported by the law and the evidence.  See Mattel, Inc.'s Corrected Opposition To The MGA Parties' Motion For Summary Judgment In 05-2727 Action, at 69-70; Ajaxo v. E*Trade Group, Inc., 135 Cal. App. 4th 21, 67-68 (2005) ("they failed to investigate why it had happened.  In short, at best, they 'turned a blind eye' to what was happening . . . top management had the opportunity to know of and either ignore or actually approve of [the former employee's] theft of [Plaintiff's] trade secret"); Roberts v. Ford Aerospace and Commc'ns Corp., 224 Cal. App. 3d 793, 802 (1990) ("ratification may be inferred from the fact that the employer, after being informed of the employee's actions, does not fully investigate and fails to repudiate the employee's conduct by redressing the harm done and

1   punishing or discharging the employee"); In re Estate of Stephens, 28 Cal. 4th 665,

2   673 (2002); Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.,  556

3   F. Supp. 2d 1122, 1136-37 (E.D. Cal. 2008); PMC, Inc. v. Kadisha, 78 Cal. App. 4th

4   1368 (2000) (corporate officer may be vicariously liable for corporation's UTSA

5   violations); C.R. v. Tenet Healthcare Corp., 169 Cal. App. 4th 1094, 1111 (2009).

6   Ratification may be inferred from MGA's lack of investigation.

7   **14.   COMPILATION (17 U.S.C. § 101)**

8        The Court declined to give any portion of this instruction.  That is erroneous

9   because the instruction is proper for the reasons Mattel has explained previously and

10  based on the authorities Mattel has cited.  See Mattel's Fourth Amended Jury

11  Instructions, Dkt. No. 9683, at 91-92.  These reasons include that the instruction sets

12  forth copyright theories that Mattel has pursued throughout its case and at trial and

13  is supported by the law and the evidence.  See 9th Cir. Civ. Jury Instr. 17.14 (2007);

14  17 U.S.C. § 103(a) (the "subject matter of copyright as specified by section 102 . . .

15  includes compilations"); Sid & Marty Krofft Television Productions, Inc. v.

16  McDonald's Corp., 562 F.2d 1157, 1172 (9th Cir. 1977) ("[W]e should remember

17  that it is the combination of many different elements which may command copyright

18  protection because of its particular subjective quality."); Mattel, Inc. v. Goldberger

19  Doll Mfg. Co., 365 F.3d 133, 135 (2d Cir. 2004) ("Even if the record had shown that

20  many dolls possess upturned noses, bow lips, and wide-spread eyes, it would not

21  follow that each such doll – assuming it was independently created and not copied

22  from others – would not enjoy protection from copying."); Dollcraft Indus., Ltd. v.

23  Well-Made Toy Mfg. Co., 479 F. Supp. 1105, 1114-15 (E.D.N.Y. 1978) ("[T]hat

24  plaintiff's toys contained features separately found on other dolls does not render

25  their copyrights invalid.  Rather, the original combination of these features into new

26  dolls makes the dolls copyrightable."); Fisher-Price Toys v. My-Toy Co., 385 F.

27  Supp. 218, 219-20 (S.D.N.Y. 1974) (same).

28

**15.   MATTEL'S SPECIAL JURY INSTRUCTION NO. 15: COPYRIGHTABILITY OF CHARACTERS**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for the reasons Mattel has explained previously and based on the authorities Mattel has cited.  See Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 93-94.  These reasons include that the instruction sets forth a copyright theory that Mattel has pursued throughout its case and at trial and is supported by the law and the evidence.  A significant portion of the case is concerned specifically with copyright claims regarding characters, such as the individual Bratz characters, and the jury should receive this instruction.  Bach v. Forever Living Products U.S., Inc., 473 F. Supp. 2d 1127, 1134-1135 (W.D. Wash. 2007); Olson v. National Broadcasting Co., Inc., 855 F.2d 1446, 1452 (9th Cir. 1988) (distinctive characters can be protected by copyright); Warner Bros. Inc. v. American Broadcasting Companies, Inc., 720 F.2d 231, 235 (2d Cir. 1983) ("Plaintiffs own the copyright in various works embodying the character of Superman and have thereby acquired copyright protection for the character itself."); Walt Disney Productions v. Air Pirates, 581 F.2d 751, 755 (9th Cir. 1978), cert. denied, 439 U.S. 1132 (1979) (distinctive characters, especially if they are expressed in visual form, are protectable by copyright); Anderson v. Stallone, 1989 WL 206431, at *7-8 (C.D. Cal. 1989) (copyright protection extended to the Rocky character); Toho Co., Ltd. v. William Morrow and Co., Inc., 33 F. Supp. 2d 1206, 1215 (C.D. Cal. 1998) (Godzilla); Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Co., Inc., 900 F. Supp. 1287, 1296 (C.D. Cal. 1995) (James Bond); *Funky Films*, 462 F.3d at 1078-79 (looking at characters' actions, dialogue, and interactions with other characters).

**16.   MATTEL'S SPECIAL JURY INSTRUCTION NO. 16:  COPYRIGHT INFRINGEMENT—SUFFICIENT SIMILARITY**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for the reasons Mattel has explained previously and

based on the authorities Mattel has cited.  <u>See</u> Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 99-102.  These reasons include that the instruction sets forth the applicable standard for copyright infringement that applies to the works at issue in the case.  <u>Mattel, Inc. v. MGA Entertainment, Inc.</u>, 616 F.3d 904, 913-916 (9th Cir. 2010); <u>JCW Invs., Inc. v. Novelty, Inc.</u>, 482 F.3d 910, 916 (7th Cir. 2007) ("The problem is not that both Fred and Fartman have black hair or white tank tops or any other single detail; the problem is that the execution and combination of features on both dolls would lead an objective observer to think they were the same."); <u>Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.</u>, 1993 WL 156199 (W.D.N.Y. March 19, 1993) ("While Well-Made tries to argue that Fisher-Price copied the various characteristics of its Puffalump Kids from the standard features that exist on dolls that have appeared in the market, it is the original combination of these features into new dolls that makes the dolls copyrightable.") (citation omitted); <u>Fisher-Price Toys v. My Toy Co.</u>, 385 F. Supp. 218, 220 (S.D.N.Y. 1974) ("That [plaintiff's dolls] contained features separately found on other dolls does not render their copyrights invalid. Rather, the original combination of these features into new dolls makes the dolls copyrightable."); <u>Mattel v. Goldberger Doll Mfg. Co.</u>, 365 F.3d 133, 135 (2d Cir. 2004) (Barbie doll face's particularized combination of an upturned nose, bow lips, and widely spaced eyes was protected by copyright, even though such elements "are the 'idea' of a certain type of doll face" that is in the "public domain."); <u>Apple Computer, Inc. v. Microsoft Corp.</u>, 35 F.3d 1435, 1442 (9th Cir. 1994) (the "extrinsic" test "objectively considers whether there are substantial similarities in both ideas and expression") (emphasis in original); <u>Aliotti v. R. Dakin & Co.</u>, 831 F.2d 898, 901 (9th Cir. 1987) ("even unprotectable material should be considered when determining if there is substantial similarity of expression"); <u>Metcalf v. Bochco</u>, 294 F.3d 1069, 1074 (9th Cir. 2002) ("the presence of so many generic similarities and the common patterns in which they arise [can help to] satisfy the extrinsic test");

Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 637 (9th Cir. 2008) (reversing district court's grant of summary judgment because it "did not conduct an objective test as to both ideas and expression as required under the extrinsic test"); Cavalier v. Random House, Inc., 297 F.3d 815, 824 (2002) (jury must consider "evidence under both the extrinsic and intrinsic tests"); Express, LLC v. Fetish Group, Inc., 424 F. Supp. 2d 1211, 1228 (C.D. Cal. 2006) ("[T]he intrinsic test requires that the work's elements be viewed as a whole.") (citations omitted).

17.    **MATTEL'S SPECIAL JURY INSTRUCTION NO. 17: SUBSTANTIALLY SIMILAR—THE "INVERSE RATIO RULE"**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for reasons and based on authorities Mattel has explained previously.  See Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 103-04.  These reasons include that the instruction sets forth copyright theories that Mattel has pursued throughout its case and at trial and is supported by the law and the evidence.  Three Boys Music Corp. v. Bolton, 212 F.3d 477, 485 (9th Cir. 2000) ("Under our case law, substantial similarity is inextricably linked to the issue of access.  In what is known as the 'inverse ratio rule,' we 'require a lower standard of proof of substantial similarity when a high degree of access is shown.'"); Shaw v. Lindheim, 919 F.2d 1353, 1361-62 (9th Cir. 1990); Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp., 562 F.2d 1157, 1172 (9th Cir. 1977) (high "degree of access justifies a lower standard of proof to show substantial similarity"); Smith v. Jackson, 84 F.3d 1213, 1220-21 (9th Cir. 1996); Swirsky v. Carey, 376 F.3d 841 (9th Cir. 2004); Rice v. Fox Broadcasting Co., 330 F.3d 1170 (9th Cir. 2003) ("Under the 'inverse ratio rule,' we 'require a lower standard of proof of substantial similarity when a high degree of access is shown"); 3D, Ltd. v. Spectratek Technologies, Inc., 41 Fed. Appx. 931 (9th Cir. 2002) ("Because 3D has presented evidence of Spectratek's access to its pattern, we require less proof of substantial similarity.").

**18.  MATTEL'S SPECIAL JURY INSTRUCTION NO. 18:  COPYRIGHT INFRINGEMENT—EVIDENCE OF COPYING NAMES OR TITLES**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for reasons and based on authorities Mattel has explained previously.  <u>See</u> Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 105-06.  These reasons include that the instruction sets forth copyright theories that Mattel has pursued throughout its case and at trial and is supported by the law and the evidence. <u>Shaw v. Lindheim, 919 F.2d 1353, 1362 (9th Cir. 1994)</u>; <u>Wihtol v. Wells</u>, 231 F.2d 550, 553 (7th Cir. 1956).

**19.  MATTEL'S SPECIAL JURY INSTRUCTION NO. 19:  COPYRIGHT INFRINGEMENT—THREE-DIMENSIONAL WORKS CAN INFRINGE TWO-DIMENSIONAL WORKS**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for reasons and based on authorities Mattel has explained previously.  <u>See</u> Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 107-08.  These reasons include that the instruction sets forth copyright theories that Mattel has pursued throughout its case and at trial and is supported by the law and the evidence.  <u>King Features Syndicate v. Fleischer</u>, 299 F. 533, 534, 538 (2d Cir. 1924) (copyright of a comic book infringed by three-dimensional dolls of a character); <u>Fleischer Studios v. Ralph A. Freundlich, Inc.</u>, 73 F.2d 276, 278 (2d Cir. 1934) (drawing of Betty Boop character infringed by substantially similar doll:  "a three-dimensional form of doll, is an infringement of the two-dimensional picture or drawing"); <u>Entm't Research Group, Inc. v. Genesis Creative Group, Inc.</u>, 122 F.3d 1211, 1222-23 (9th Cir. 1997) ("making decisions that enable one to reproduce or transform an already existing work into another medium or dimension – though perhaps quite difficult and intricate decisions – is not enough to constitute the contribution of something 'recognizably his own,'" even where those decisions are "artistic").

**20.  MATTEL'S SPECIAL JURY INSTRUCTION NO. 20: DIFFERENCES ARE NOT A DEFENSE TO COPYRIGHT INFRINGEMENT**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for reasons and based on authorities Mattel has explained previously.  See Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 109-11.  These reasons include that the instruction sets forth copyright theories that Mattel has pursued throughout its case and at trial and is supported by the law and the evidence.  See, e.g., Shaw v. Lindheim, 919 F.2d 1353, 1362 (9th Cir. 1990) ("No plagiarist can excuse the wrong by showing how much of his work he did not pirate.") (citation omitted); Atari Games Corp. v. Nintendo of Am., Inc., 1993 WL 207548, at *4 (N.D. Cal. May 18, 1993) ("Atari argues that there are many lock-specific features which it did not include in the Rabbit program.  Atari may not avoid summary judgment by pointing to what it did not copy."); JCW Inv.s., Inc. v. Novelty, Inc., 482 F.3d 910, 916 (7th Cir. 2007) (dolls were substantially similar as a matter of law notwithstanding "small cosmetic differences" including that "Fartman has his name emblazoned in red across his chest, his shoes are a different color from Fred's, as is his chair, and Fartman wears a hat"); Nicholls v. Tufenkian Imp./Exp. Ventures, Inc., 367 F. Supp. 2d 514, 522 (S.D.N.Y. 2005) ("In determining substantial similarity, 'the key . . . is . . . the similarities rather than the differences.') (internal citation omitted); Concord Fabrics, Inc. v. Marcus Bros. Textile Corp., 409 F.2d 1315, 1316 (2d Cir. 1969) ("While the trial court placed great emphasis on the minor differences between the two patterns, we feel that the very nature of these differences only tends to emphasize the extent to which the defendant has deliberately copied from the plaintiff."); Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 565 (1985) (citation omitted) (finding that the unauthorized reproduction of 300-400 words from a 500-plus page book was actionable because the taking was qualitatively substantial, and stating that "a taking may not be excused merely because it is insubstantial with respect to the infringing work"); Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp., 562 F.2d 1157, 1167 (9th Cir. 1977) (explaining that "an infringement is not confined to

1  literal and exact repetition or reproduction; it includes also the various modes in

2  which the matter of any work may be adopted, imitated, transferred, or reproduced,

3  with more or less colorable alterations to disguise the piracy") (quotation and

4  citation omitted); <u>Baxter v. MCA, Inc.</u>, 812 F.2d 421, 425 (9th Cir. 1987) ("Even if

5  a copied portion be relatively small in proportion to the entire work, if qualitatively

6  important, the finder of fact may properly find substantial similarity."); <u>Loew's Inc.</u>

7  <u>v. Columbia Broad. Sys.</u>, 131 F. Supp. 165, 172 (C.D. Cal. 1955) ("The

8  infringement of a copyright does not depend so much upon the length of the extracts

9  as upon their value.  If they embody the spirit and the force of the work in a few

10  pages, they take from it that in which its chief value consists.") (internal quotation

11  and citation omitted); <u>Murray Hill Pubs. v. ABC Commn's, Inc.</u>, 264 F.3d 622, 633

12  (6th Cir. 2001) ("The misappropriation of even a small portion of a copyrighted

13  work . . . may constitute an infringement under certain circumstances.") (citation

14  omitted); <u>Fred Fisher, Inc. v. Dillingham</u>, 298 F. 145, 148 (S.D.N.Y. 1924) (L.

15  Hand, J.) (eight note "ostinato" held to infringe copyright in song); <u>Curtis v. General</u>

16  <u>Dynamics Corp.</u>, 1990 WL 302725, at *9 (W.D. Wash. Sep. 26, 1990) ("Defendants

17  argue that their poster could not infringe plaintiff's copyright because only a small

18  proportion of its design could possibly be considered similar.  This argument is both

19  factually and legally without merit.").

20  **21.    MATTEL'S SPECIAL JURY INSTRUCTION NO. 21:  ALTERATION OF COLOR NOT A DEFENSE TO COPYRIGHT INFRINGEMENT**

21          The Court declined to give any portion of this instruction.  That is erroneous

22  because the instruction is proper for reasons and based on authorities Mattel has

23  explained previously.  <u>See</u> Mattel's Fourth Amended Jury Instructions, Dkt. No.

24  9683, at 112-13.  These reasons include that the instruction sets forth copyright

25  theories that Mattel has pursued throughout its case and at trial and is supported by

26  the law and the evidence.  <u>Novelty Textile Mills, Inc. v. Joan Fabrics, Corp.</u>, 558

27  F.2d 1090, 1094 n.6 (2d Cir. 1977) ("[O]nce a copyrighted design is found to have

28

1   been copied, mere changes in the color scheme of the copied design would

2   ordinarily not protect the defendant from a claim of infringement."); <u>McCaskill v.</u>

3   <u>Ray</u>, 2008 WL 2222056, at *3 (11th Cir. May 30, 2008) (holding that district court

4   erred in granting summary judgment in favor of plaintiff for copyright infringement

5   when portions of the accused work were "identical" to or "essentially the same

6   except for minor changes in wording or color coding" as plaintiff's work);

7   <u>Tennessee Fabricating Co. v. Moutlrie Mfg. Co.</u>, 421 F.2d 279, 284 (5th Cir. 1970)

8   ("no doubt" that defendant does not avoid infringement by adding additional straight

9   lines to plaintiff's filigree pattern for metal casting); <u>Universal Pictures Co. v.</u>

10  <u>Harold Lloyd Corp.</u>, 162 F.2d 354, 360 (9th Cir. 1947) ("[I]nfringement is not

11  confined to literal and exact repetition or reproduction; it includes also the various

12  modes in which the matter of any work may be adopted, imitated, transferred, or

13  reproduced, with more or less colorable alterations to disguise the piracy.");

14  <u>Mendler v. Winterland Production, Ltd.</u>, 207 F.3d 1119, 1124 (9th Cir. 2000)

15  (Apparel manufacturer's modifications to photograph that was licensed by

16  photographer for use as "guide, model, and example for illustrations on screen-

17  printed" apparel, which included digital reproduction, horizontal flip of image,

18  extension of subject sailing vessel, and changes in color and tonal range, did not

19  destroy photographic quality of photograph, and manufacturer's use of photograph

20  was thus unauthorized by license, which prohibited photographic reproductions, and

21  infringed photographer's copyright).

22  **22.   MATTEL'S SPECIAL JURY INSTRUCTION NO. 22:  COPYRIGHT
       INFRINGEMENT—INTENT TO INFRINGE NOT NECESSARY FOR**

23  **LIABILITY**

24       The Court declined to give any portion of this instruction.  That is erroneous

25  because the instruction is proper for reasons and based on authorities Mattel has

26  explained previously.  <u>See</u> Mattel's Fourth Amended Jury Instructions, Dkt. No.

27  9683, at 114-15.  These reasons include that the instruction sets forth copyright

28  theories that Mattel has pursued throughout its case and at trial and is supported by

1  the law and the evidence.  <u>Pye v. Mitchell</u>, 574 F.2d 476, 481 (9th Cir. 1978)

2  ("[E]ven when the defendant believes in good faith that he is not infringing a

3  copyright, he may be found liable."); <u>L.A. News Serv. v. Conus Communications</u>

4  <u>Co.</u>, 969 F. Supp. 579, 584 (C.D. Cal. 1997) ("Direct infringement does not require

5  intent or any particular state of mind.").

6  **23.**    <u>**DISGORGEMENT OF PROFITS**</u>

7        The Court declined to give any portion of this instruction.  That is erroneous

8  because the instruction is proper for reasons and based on authorities Mattel has

9  explained previously.  <u>See</u> Mattel's Fourth Amended Jury Instructions, Dkt. No.

10  9683, at 155-56.  These reasons include that the instruction sets forth damages

11  theories that Mattel has pursued throughout its case and at trial and is supported by

12  the law and the evidence.  <u>Eckard Brandes, Inc. v. Riley</u>, 338 F.3d 1082, 1086 (9th

13  Cir. 2003) ("Although there are few reported cases addressing the appropriate

14  remedy, those we have found have also required employees to turn over profits

15  received as a result of breaching their duty of loyalty."); Restatement (2d) of

16  Agency, § 403 ("If an agent receives anything as a result of his violation of a duty of

17  loyalty to the principal, he is subject to a liability to deliver it, its value, or its

18  proceeds, to the principal."); Restatement of Restitution, § 201 (2008) ("Where a

19  fiduciary in violation of his duty to the beneficiary communicates confidential

20  information to a third person, the third person, if he had notice of the violation of

21  duty, holds upon a constructive trust for the beneficiary any profit which he makes

22  through the use of such information."); <u>County of San Bernardino v. Walsh</u>, 158

23  Cal. App. 4th 533, 543 (2007) ("Disgorgement of profits is particularly applicable in

24  cases dealing with breach of a fiduciary duty"; "Active participants in the breach of

25  fiduciary duty by another are accountable for all advantages they gained thereby and

26  are liable to the beneficiary of the duty"); <u>Neilson v. Union Bank of Cal., N.A.</u>, 290

27  F. Supp. 2d 1101, 1127 (C.D. Cal. 2003) (a party who aids and abets a breach of

28  fiduciary duty will be jointly liable) (citing <u>Heckmann v. Ahmanson</u>, 168 Cal. App.

3d 119 (1985)); <u>Xum Speegle, Inc. v. Fields</u>, 216 Cal. App. 2d 546 (1963) (upholding accounting of all insurance commissions wrongfully diverted to defendant in action for breach of fiduciary duty); <u>Adams v. Herman</u>, 106 Cal. App. 2d 92, 99 (1951) ("It is an integral part of that rule that, if the agent makes a secret profit from the agency, the principal may recover such profit.").

**24.      17.23 - COPYRIGHT—DAMAGES—LOST LICENSE FEE (17 U.S.C. § 504(B))**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for reasons and based on authorities Mattel has explained previously.  <u>See</u> Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 173-74.  These reasons include that the instruction sets forth damages theories that Mattel has pursued throughout its case and at trial and is supported by the law and the evidence.  9th Cir. Civ. Jury Instr. 17.23, comments (2007) (modified) ("This instruction is based upon a jury instruction approved by the Ninth Circuit as 'properly stat[ing] the law of damages in a copyright infringement suit' and 'in line with our circuit's caselaw.' <u>Wall Data v. Los Angeles County Sheriff's Dept.</u>, 447 F.3d 769, 787 (9th Cir. 2006).  The circuit has noted that '[a]ctual damages are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer.' <u>Polar Bear Prods., Inc. v. Timex Corp.</u>, 384 F.3d 700, 708-09 (9th Cir. 2004) ('[I]t is not improper for a jury to consider either a hypothetical lost license fee or the value of the infringing use to the infringer to determine actual damages, provided the amount is not based on 'undue speculation.'') (emphasis added) (quoting <u>McRoberts Software, Inc. v. Media 100, Inc.</u>, 329 F.3d 557, 566 (7th Cir. 2003)").

**25.      MATTEL'S SPECIAL JURY INSTRUCTION NO. 38:  FAIR MARKET VALUE LICENSE CALCULATION**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for reasons and based on authorities Mattel has

explained previously.  See Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 175-78.  These reasons include that the instruction sets forth damages theories that Mattel has pursued throughout its case and at trial and is supported by the law and the evidence.  Federal Circuit Model Patent Jury Instructions, Instruction Nos.  6.6 and 6.7 (citing Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1340 (Fed. Cir. 2009) (vacating and rewarding jury award as excessive); Golight, Inc. v. Wal-Mart Stores, Inc., 355 F.3d 1327, 1338 (Fed. Cir. 2004); Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); Fifth Circuit Pattern Jury Instructions, Instructions 9.8 (2006)); Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 710-11, 714 n. 10 (9th Cir. 2004); Mackie v. Rieser, 296 F.3d 909, 917 (9th Cir. 2002) ("to determine the work's 'market value' at the time of the infringement, we have endorsed a hypothetical approach: what a willing buyer would have been reasonably required to pay to a willing seller for [the owner's] work." ) (internal quotations omitted); see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 512 (9th Cir. 1985) ("In this circuit, we have stated the test of market value as 'what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work.' "(quoting Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp., 562 F.2d 1157, 1174 (9th Cir. 1977)).

## 26.   ACT OF AGENT IS ACT OF PRINCIPAL—SCOPE OF AUTHORITY NOT IN ISSUE

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for the reasons Mattel has explained previously and based on the authorities Mattel has cited.  See Joint [Proposed] Jury Instructions, Dkt. No. 9633, at 65-66.  These reasons include that the instruction sets forth an

1  agency theory that Mattel has pursued throughout its case and at trial and is

2  supported by the law and the evidence.  See Mattel, Inc.'s Corrected Opposition To

3  The MGA Parties' Motion For Summary Judgment In 05-2727 Action, at 65-66, 69-

4  70; see also 9th Cir. Civ. Jury Instr. 4.6 (2007).

5  **27.   ALTER EGO LIABILITY**

6        The Court declined to give any portion of this instruction.  That is erroneous

7  because the instruction is proper for reasons and based on authorities Mattel has

8  explained previously.  See Mattel, Inc.'s Proposed Jury Instructions Re Alter Ego,

9  Agency, And Joint And Several Liability, Dkt. No. 10282, at 3-6.  These reasons

10  include that the instruction sets forth an agency theory that Mattel has pursued at

11  trial and is supported by the law and the evidence.  Id.

12  **28.   ALTER EGO LIABILITY - ISAAC LARIAN**

13        The Court declined to give any portion of this instruction.  That is erroneous

14  because the instruction is proper for reasons and based on authorities Mattel has

15  explained previously.  See Mattel, Inc.'s Proposed Jury Instructions Re Alter Ego,

16  Agency, And Joint And Several Liability, Dkt. No. 10282, at 7-10.  These reasons

17  include that the instruction sets forth an agency theory that Mattel has pursued at

18  trial and is supported by the law and the evidence.  Id.

19  **29.   AGENCY LIABILITY**

20        The Court declined to give any portion of this instruction.  That is erroneous

21  because the instruction is proper for reasons and based on authorities Mattel has

22  explained previously.  See Mattel, Inc.'s Proposed Jury Instructions Re Alter Ego,

23  Agency, And Joint And Several Liability, Dkt. No. 10282, at 11-14.  These reasons

24  include that the instruction sets forth an agency theory that Mattel has pursued at

25  trial and is supported by the law and the evidence.  Id.

26  **30.   JOINT AND SEVERAL LIABILITY**

27        The Court declined to give any portion of this instruction.  That is erroneous

28  because the instruction is proper for reasons and based on authorities Mattel has

explained previously.  See Mattel, Inc.'s Proposed Jury Instructions Re Alter Ego, Agency, And Joint And Several Liability, Dkt. No. 10282, at 15-16; Mattel, Inc.'s Corrected Opposition To The MGA Parties' Motion For Summary Judgment In 05-2727 Action, at 65-66, 69-70.  These reasons include that the instruction sets forth an agency theory that Mattel has pursued at trial and is supported by the law and the evidence.  Id.

## 31.   TRADE SECRET MISAPPROPRIATION—SCOPE OF UNJUST ENRICHMENT

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for reasons and based on authorities Mattel has explained previously.  See Mattel, Inc.'s Proposed Jury Instructions Re Trade Secret Misappropriation And Copyright Damages, Dkt. No. 10389, at 3-4.  These reasons include that the instruction sets forth a damages theory that Mattel has pursued at trial and is supported by the law and the evidence.  Id.

## 32.   COPYRIGHT—DAMAGES—GROSS REVENUE

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for reasons and based on authorities Mattel has explained previously.  See Mattel, Inc.'s Proposed Jury Instructions Re Trade Secret Misappropriation And Copyright Damages, Dkt. No. 10389, at 5-6.  These reasons include that the instruction sets forth a damages theory that Mattel has pursued at trial and is supported by the law and the evidence.  Id.

## 33.   MATTEL SPECIAL JURY INSTRUCTION NO. 14A COPYRIGHT INFRINGEMENT—CERTIFICATE OF COPYRIGHT REGISTRATION

The Court declined to give any portion of this proposed instruction.  That is erroneous because the instruction is proper for reasons and based on authorities Mattel has explained previously.  See Mattel, Inc.'s Supplemental and Amended Proposed Jury Instructions, Dkt. No. 9821, at 3-4.  The purpose of this instruction is to inform jury that certificates of copyright registration contain representations by

the applicants concerning the works being registered, including as to whether the works are derivative or pre-existing works.  The Court has taken the position that the significance of the parties' representations on their applications for copyright registration is a legal question.  See Dkt. 9696 (Order granting MIL to strike opinions of Oman), at 3 ("Moreover, even if the fact-finder were asked to resolve the issue of whether the representations on Mattel's copyright registrations impact the availability of the work-made-for-hire doctrine, the Court, and not Oman, must provide instruction about the legal significance about Mattel's prior representations, including the representations on its copyright registration.").  Accordingly, this instruction is proper and should have been given.

**34.    MATTEL SPECIAL JURY INSTRUCTION NO. __PARTY ADMISSIONS**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for reasons and based on authorities Mattel has explained previously.  See Mattel's Supplemental Proposed Jury Instruction re Party Admissions, Dkt. No. 10051, at 2-3.  These reasons include that the instruction properly reflects Fed. R. Evid. 801(d)(1) & 801(d)(2).  See Fed. R. Evid. 801(d)(1) & 801(d)(2); Harris v. Vector Mktg. Corp., 656 F. Supp. 2d 1128, 1133 (N.D. Cal. 2009); Pope v. Savings Bank of Puget Sound, 850 F.2d 1345, 1356 (9th Cir. 1988); see also U.S. v. DiSantis, 565 F.3d 354, 360 (7th Cir. 2009) (on appeal of criminal conviction:  "DiSantis's prior inconsistent statements in his police report qualified as party admissions, and the district court committed no error in instructing the jury that they could consider those statements for their truth.").

**35.    MATTEL'S SPECIAL JURY INSTRUCTION NO. 24 ADVERSE INFERENCE FROM SPOLIATION**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for reasons and based on authorities Mattel has explained previously.  See Mattel's Fourth Amended Proposed Jury Instructions, Dkt. No. 9683, at 122-23.  These reasons include that the instruction properly

1  instructs the jury that if relevant evidence was within defendants' control is missing

2  or has been destroyed and that the evidence is missing because of their bad faith or

3  negligent, unjustified or careless actions or inaction, the jury may infer that such

4  evidence, if available now, would have been favorable to Mattel and adverse to

5  defendants.  In addition, the instruction properly instructs the jury that the

6  defendants' destruction of evidence was negligent, unjustified or careless if they had

7  notice that the evidence might be relevant to litigation when they destroyed the

8  evidence or made the evidence unavailable.  A person is under a duty to preserve

9  evidence that he or she knows, or reasonably should know, could be relevant to a

10  case.  See Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993); Akonia v. United

11  States, 938 F.2d 158, 161 (9th Cir. 1991), cert. denied, 503 U.S. 962 (1992);

12  Housing Rights Center v. Sterling, 2005 WL 3320739, at *8 (C.D. Cal. March 2,

13  2005); Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 110 (2d Cir.

14  2002); Rogers v. T.J. Samson Community Hosp., 276 F.3d 228, 232-33 (6th Cir.

15  2002); Nat'l Ass'n of Radiation Survivors v. Turnage, 115 F.R.D. 543, 557 (N.D.

16  Cal. 1987) ("Where one party wrongfully denies another the evidence necessary to

17  establish a fact in dispute, the court must draw the strongest allowable inferences in

18  favor of the aggrieved party."); Beaven v. U.S. Dep't of Justice, 622 F.3d 540, 554-

19  55 (6th Cir. 2010) ("The district court did not abuse its discretion in imposing a non-

20  rebuttable adverse inference after finding that the Defendants' destruction of the

21  folder "severely compromised" the Plaintiffs' case by depriving the Plaintiffs of the

22  most relevant piece of evidence to prove their claims."); Dong Ah Tire & Rubber

23  Co., Ltd. v. Glasforms, Inc., 2009 WL 1949124, at *10 (N.D. Cal. July 2, 2009) ("In

24  the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed

25  evidence goes to the merits of the case, and further, that such evidence was adverse

26  to the party that destroyed it.").

27

28

00505.07975/4079682.1

**36.   JURY INSTRUCTION NO.     NO UNFAVORABLE INFERENCES FROM EXERCISE OF A PRIVILEGE**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for reasons and based on authorities Mattel has explained previously.  <u>See</u> Mattel's Request for Jury Instruction Concerning Impropriety of Inferences Drawn From Privileged Information, Dkt. No. 10281.  These reasons include that the instruction properly instructs the jury that people and companies have a legal right not to disclose their confidential communications with their attorneys because the law considers this information to be privileged; the parties and witnesses in this case may exercise this privilege freely and without fear of penalty; the fact that a party or witness exercised this privilege should not lead the jury to decide whether he, she or it should be believed; and the jury should not draw any inference from a party's or witness's assertion of the privilege.  Courts widely recognize that it is error to permit a jury to draw inferences based on privileged communications.  <u>See</u> <u>Courtney v. United States</u>, 390 F.2d 521, 528 (9th Cir. 1968), <u>cert. denied</u>, 393 U.S. 857 (1968); <u>Parker v. Prudential Ins. Co. of Am.</u>, 900 F.2d 772 (4th Cir. 1990).  California law, which governs privilege questions in federal cases "with respect to an element of a claim or defense as to which State law supplies the rule of decision" (<u>Fed. R. Evid.</u> 501), is in accord.  <u>See</u> <u>Cal. Evid. Code</u> § 913(a) (emphasis added); <u>People v. Doolin</u>, 45 Cal. 4th 390, 441 (2009) ("The jury may not draw any inference from a witness's invocation of a privilege.") (citing <u>Cal. Evid. Code</u> § 913(a)); <u>People v. Coddington</u>, 23 Cal. 4th 529, 605-06.

**37.   MATTEL SPECIAL JURY INSTRUCTION NO.     EVIDENCE THAT IS NOT RELEVANT TO JURY ISSUES**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for reasons and based on authorities Mattel has explained previously.  <u>See</u> Mattel, Inc.'s Proposed Jury Instruction re Evidence That Is Not Relevant to Jury Issues, Dkt. No. 10387, at 2-3.  These reasons include that the instruction properly reflects the jury should disregard evidence heard regarding

1   MGA's unfair competition allegations because those issues will be decided by the

2   Court, and not the jury and are not relevant to any jury issue.  <u>See</u> Order Regarding

3   Advisory Opinion on Claims for Violations of Cal. Bus. & Prof. Code § 17200 (Dkt.

4   10319) (the Court will not instruct the jury on 17200 claims or seek advisory

5   verdict); Order re Trial to Jury of Unclean Hands, Laches, and Alter Ego (Dkt.

6   10333) ("the Court will not try equitable claims or defenses to an advisory jury");

7   <u>Cargill, Inc. v. Progressive Dairy Solutions, Inc.</u>, 362 F. App'x 731, 733-34, 2010

8   WL 178714, at *2 (9th Cir. Jan. 19, 2010) (unpublished) ("[D]efendants' § 17200

9   counterclaim was not subject to a jury trial and would therefore not be a proper basis

10  for allowing the jury to hear motive and cause evidence.") (citation omitted); <u>Hodge</u>

11  <u>v. Sup. Ct.</u>, 145 Cal. App. 4th 278, 281 (2006) ("no jury trial is warranted" because

12  "the section 17200 cause of action is equitable and the relief sought is equitable");

13  <u>In re Tobacco II Cases</u>, 46 Cal. 4th 298, 312 (2009) (a claim under §17200 is

14  "equitable in nature"); <u>Okura & Co. (America), Inc. v. Careau Group</u>, 783 F. Supp.

15  482, 491 (C.D. Cal. 1991) (no jury trial for §17200 claim).

16  **38.   <u>MATTEL SPECIAL JURY INSTRUCTION NO.  ALTER EGO LIABILITY</u>**

17  
18          The Court declined to give any portion of this instruction.  Failure to so

19  instruct was erroneous because the instruction sets forth a well-recognized theory of

20  liability that Mattel advanced at trial and is supported by the law and the evidence.

21  <u>See, e.g.</u>, Mattel's Trial Brief Re MGA's Liability For Its Subsidiaries' Infringement

22  Of Mattel's Copyrights And Misappropriation Of Mattel's Trade Secrets, Dkt. No.

23  10253, at 6-10; Mattel, Inc.'s Proposed Jury Instructions Re Alter Ego, Agency,

24  And Joint And Several Liability, Dkt. No. 10282, at 2-5; <u>First Western Bank &</u>

25  <u>Trust Co. v. Bookasta</u>, 267 Cal. App. 2d 910, 915 (1968) (California has "a liberal

26  policy of applying the alter ego doctrine."); <u>Dong AH Tire & Rubber Co., Ltd. v.</u>

27  <u>Glasforms, Inc.</u>, 2009 WL 975817, at *6 (N.D. Cal. April 10, 2009) (equity required

28  disregarding subsidiary's separate corporate identity because parent was "equally

responsible for harm caused."); <u>Mesler v. Bragg Management Co.</u>, 39 Cal. 3d 290, 300-301 (1985) ("separate corporate entity will not be honored where to do so would be to defeat the rights and equities of third persons.").

**39.   MATTEL SPECIAL JURY INSTRUCTION NO.  ALTER EGO LIABILITY – ISAAC LARIAN**

The Court declined to give any portion of this instruction.  Failure to so instruct was erroneous because the instruction sets forth a well-recognized theory of liability that Mattel advanced at trial and is supported by the law and the evidence. <u>See, e.g.</u>, Mattel's Trial Brief Re MGA's Liability For Its Subsidiaries' Infringement Of Mattel's Copyrights And Misappropriation Of Mattel's Trade Secrets, Dkt. No. 10253, at 6-10; Mattel, Inc.'s Proposed Jury Instructions Re Alter Ego, Agency, And Joint And Several Liability, Dkt. No. 10282, at 6-9; <u>First Western Bank & Trust Co. v. Bookasta</u>, 267 Cal. App. 2d 910, 915 (1968) (California has "a liberal policy of applying the alter ego doctrine."); <u>Troyk v. Farmers Group, Inc.</u>, 171 Cal. App. 4th 1305, 1341 (2009) (alter ego established by showing (1) unity of interest and ownership between corporation and equitable owner such that separateness does not really exist and (2) inequitable result if the acts in question are treated as those of the corporation alone); <u>Shanghai Minguang Intern. Group Co., Ltd. v. Yang</u>, 2008 WL 4004697, at *8 (Cal. Ct. App. Aug. 29, 2008) (inequitable result if corporate form was used by an individual to evade liability created by an entity with which he had a unity of interest).

**40.   MATTEL SPECIAL JURY INSTRUCTION NO.  AGENCY LIABILITY**

The Court declined to give any portion of this instruction.  Failure to so instruct was erroneous because the instruction sets forth a well-recognized theory of liability that Mattel advanced at trial and is supported by the law and the evidence. <u>See, e.g.</u>, Mattel's Trial Brief Re MGA's Liability For Its Subsidiaries' Infringement Of Mattel's Copyrights And Misappropriation Of Mattel's Trade Secrets, Dkt. No. 10253, at 10-18; Mattel, Inc.'s Proposed Jury Instructions Re Alter Ego, Agency,

And Joint And Several Liability, Dkt. No. 10282, at 10-13; Bowoto v. Chevron Texaco Corp., 312 F. Supp. 2d 1229, 1238-40 (N.D. Cal. 2004) ("it may be found [under agency principles] that the parent company is the real party to a transaction conducted by the illusory subsidiary and responsible for its transactions as a principal"); McCollum v. Friendly Hills Travel Center, 172 Cal. App. 3d 83, 91 (1985) ("[a]n agent is anyone who undertakes to transact some business, or manage some affair, for another, by authority of and on account of the latter, and to render an account of such transactions,"); Paramount Farms, Inc. v. Ventilex B.V., 735 F. Supp. 2d 1189, 1211 (E.D. Cal. 2010) ("The agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.").

## 41.   MATTEL SPECIAL JURY INSTRUCTION NO.  JOINT AND SEVERAL LIABILITY

The Court declined to give any portion of this instruction.  Failure to so instruct was erroneous because the instruction sets forth a well-recognized theory of liability that Mattel advanced at trial and is supported by the law and the evidence. See, e.g., PMC, Inc. v. Kadisha, 78 Cal. App. 4th 1368, 1381 (2000) ("Misappropriation of trade secrets is an intentional tort.") (citing Cal. Civ. Code § 3426.1); id. at 1382 ("All persons who are shown to have participated in an intentional tort are liable for the full amount of the damages suffered."); Vacco Industries, Inc. v. Van Den Berg, 5 Cal. App. 4th 34, 54 (1992) (attorney's fees award imposed jointly against three defendants in action for misappropriation of trade secrets); DVPC, Inc. v. DVT 3000, Inc., 2005 WL 1793552, at *4 (Cal. App. July 29, 2005) (affirming joint and several liability of attorney's fees award pursuant to California Uniform Trade Secrets Act); Mattel's Trial Brief Re MGA's Liability For Its Subsidiaries' Infringement Of Mattel's Copyrights And Misappropriation Of

1  Mattel's Trade Secrets, Dkt. No. 10253, at 3-6; Mattel, Inc.'s Proposed Jury

2  Instructions Re Alter Ego, Agency, And Joint And Several Liability, Dkt. No.

3  10282, at 14-15; <u>Temple v. Synthes Corp., Ltd.</u>, 498 U.S. 5, 7 (1990) ("not

4  necessary for all joint tortfeasors to be named as defendants in a single lawsuit");

5  <u>Bowoto v. Chevron Texaco Corp.</u>, 312 F. Supp. 2d 1229, 1238-40 (N.D. Cal. 2004)

6  ("it may be found that the parent company is the real party to a transaction

7  conducted by the illusory subsidiary and responsible for its transactions as a

8  principal"); <u>Lockheed Martin Corp. v. Network Solutions, Inc.</u>, 1997 WL 381967, at

9  *3 (C.D. Cal. March 19, 1997) ("Courts have long held that in patent, trademark,

10  literary property, and copyright infringement cases, any member of the distribution

11  chain can be sued as an alleged joint tortfeasor . . . [s]ince joint tortfeasors are

12  jointly and severally liable.").

13  **42.   <u>17.22 COPYRIGHT—DAMAGES (17 U.S.C. § 504)</u>**

14          While the court gave a modified version of this instruction, the Court declined

15  to instruct the jury that actual damages may take the form of lost profits. That is

16  erroneous for reasons and based on authorities Mattel has explained previously.  <u>See</u>

17  Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 171-172.  Mattel may

18  pursue lost profits as a measure of actual damages.  <u>See</u> <u>Lucky Break Wishbone</u>

19  <u>Corp. v. Sears Roebuck and Co</u>., 373 Fed. Appx. 752, 757 (9th Cir. 2010) (finding

20  that "[t]he jury is not restricted . . . to awarding lost profits" where evidence of lost

21  profits and a fair market value of a lost license fee were presented to the jury,

22  defendant claimed that lost profits were appropriate actual damage measurement,

23  and defendant claimed jury award was too high to account for appropriate deduction

24  of costs to arrive at lost profits); <u>Polar Bear Prods. Inc. v. Timex Corp</u>., 384 F.3d

25  700, 708-710 (9th Cir. 2004) (evaluating a claim for both a fair market value lost

26  license fee and lost profits as additive actual damages); <u>On Davis v. The Gap, Inc</u>.,

27  246 F.3d 152, 159 (2001) ("[T]he statute [17 U.S.C. § 504(b) provides for the

28  recovery of both the infringer's profits and the copyright owner's 'actual damages.'");

Oracle Corp. v. SAP AG, Case No.07-cv-01658-PJH (N.D. Cal. 2008), Dkt. No. 1005 (final jury instructions).

**43.     17.23 COPYRIGHT—DAMAGES—LOST LICENSE FEE (17 U.S.C. § 504(B))**

While the court gave a modified version of this instruction, the Court declined to give the portion of the this instruction that clarifies that a lost license is "one measure" of actual damages, and lost profits is the other measure. <u>See</u> objections regarding Mattel's instruction, "17.22 COPYRIGHT—DAMAGES (17 U.S.C. § 504)," <u>supra</u>. The Court's instruction was also erroneous because the Court precluded Mattel's damages expert, Michael J. Wagner, from offering any opinion as to the value of a hypothetical lost license fee, and therefore Mattel was unable to present to the jury the evidence necessary to award damages pursuant to the Court's instruction. <u>See</u> Amended Order Re Motions To Exclude Expert Opinion Of Michael J. Wagner, Dkt. No. 10130 at 4-5.

**44.     MATTEL'S SPECIAL JURY INSTRUCTION NO. 38 FAIR MARKET VALUE LICENSE CALCULATION**

The Court declined to give any portion of this instruction. That is erroneous because the instruction is proper for reasons and based on authorities Mattel has explained previously. <u>See</u> Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 175-178; Mattel's Response To MGA Parties' Trial Brief On Copyright Damages And The Unavailability Of A <u>Georgia-Pacific</u> Hypothetical Negotiation Royalty Under 17 U.S.C. § 504, Dkt No. 9896 at 3-4; Mattel's Opposition To MGA's Motion In Limine No. 30 To Exclude Reference To And Use Of Expert Testimony Proffered By Mattel Witness Michael J. Wagner, at 2-4. Specifically, the <u>Georgia-Pacific</u> factors are an appropriate measure of a hypothetically negotiated lost license fee. <u>See</u> <u>id</u>.; <u>see</u> <u>also</u> Federal Circuit Model Patent Jury Instructions, Instruction Nos. 6.6 and 6.7 (citing <u>Lucent Techs., Inc. v. Gateway, Inc.</u>, 580 F.3d 1301, 1340 (Fed. Cir. 2009) (vacating and rewarding jury award as excessive); <u>Golight, Inc. v. Wal-Mart Stores, Inc.</u>, 355 F.3d 1327, 1338 (Fed. Cir. 2004);

1   Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); Mahurkar v.

2   C.R. Bard, Inc., 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); Rite-Hite Corp. v. Kelley

3   Co., 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); Georgia-Pacific Corp. v. U.S.

4   Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); Fifth Circuit Pattern Jury

5   Instructions, Instructions 9.8 (2006)); Polar Bear Prods., Inc. v. Timex Corp.,

6   384 F.3d 700, 710-11, 714 n. 10 (9th Cir. 2004); Mackie v. Rieser, 296 F.3d 909,

7   917 (9th Cir. 2002) ("to determine the work's 'market value' at the time of the

8   infringement, we have endorsed a hypothetical approach: what a willing buyer

9   would have been reasonably required to pay to a willing seller for [the owner's]

10  work." ) (internal quotations omitted); see also Frank Music Corp. v. Metro-

11  Goldwyn-Mayer, Inc., 772 F.2d 505, 512 (9th Cir. 1985) ("In this circuit, we have

12  stated the test of market value as 'what a willing buyer would have been reasonably

13  required to pay to a willing seller for plaintiffs' work.' "(quoting Sid & Marty Krofft

14  Television Productions, Inc. v. McDonald's Corp., 562 F.2d 1157, 1174 (9th Cir.

15  1977)).

16  **45.   MATTEL'S SPECIAL JURY INSTRUCTION NO. 39 COPYRIGHT— DAMAGES—LOST PROFITS (17 U.S.C. § 504(B))**

17      The Court declined to give any portion of this instruction.  That is erroneous

18  because the instruction is proper for reasons and based on authorities Mattel has

19  explained previously.  Mattel is entitled to pursue lost profits as a measure of

20  Mattel's actual damages,  See Mattel's Fourth Amended Jury Instructions, Dkt. No.

21  9683, at 179-180; see also objections regarding Mattel's instruction, "17.22

22  COPYRIGHT—DAMAGES (17 U.S.C. § 504)," supra; see also Lucky Break

23  Wishbone Corp. v. Sears Roebuck and Co., 373 Fed. Appx. 752, 757 (9th Cir. 2010)

24  (finding that "[t]he jury is not restricted . . . to awarding lost profits" where evidence

25  of lost profits and a fair market value of a lost license fee were presented to the jury,

26  defendant claimed that lost profits were appropriate actual damage measurement,

27  and defendant claimed jury award was too high to account for appropriate deduction

28

of costs to arrive at lost profits); <u>Polar Bear Prods. Inc. v. Timex Corp.</u>, 384 F.3d 700, 708-710 (9th Cir. 2004) (evaluating a claim for both a fair market value lost license fee and lost profits as additive actual damages); <u>On Davis v. The Gap, Inc.</u>, 246 F.3d 152, 159 (2001) ("[T]he statute [17 U.S.C. § 504(b) provides for the recovery of both the infringer's profits and the copyright owner's 'actual damages.'"); Oracle Corp. v. SAP AG, Case No.07-cv-01658-PJH (N.D. Cal. 2008), Dkt. No. 1005 (final jury instructions).

**46.** **MATTEL'S SPECIAL JURY INSTRUCTION NO. 40 DETERMINING ACTUAL DAMAGES**

The Court declined to give any portion of this instruction. That is erroneous because the instruction is proper for reasons and based on authorities Mattel has explained previously. <u>See</u> Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 181-182; <u>see also</u> ABA Model Jury Instruction 1.7.2 (Copyright); <u>On Davis v. The Gap</u>, 246 F.3d 152, 166-67 (2d Cir. 2001) ("Within reason, any ambiguities should be resolved in favor of the copyright owner.")(quoting William F. Patry, Copyright Law and Practice 1167 (1994)); <u>Polar Bear Prods., Inc. v. Timex Corp.</u>, 384 F.3d 700, 709 (9th Cir. 2004); 4 Nimmer § 14.02[A], at 14-12 ("[U]ncertainty will not preclude a recovery of actual damages if the uncertainty is as to amount, but not as to the fact that actual damages are attributable to the infringement.").

**47.** **MATTEL'S SPECIAL JURY INSTRUCTION NO. 41 COPYRIGHT—DAMAGES—INDIRECT PROFITS**

The Court declined to give any portion of this instruction. That is erroneous because the instruction is proper for reasons and based on authorities Mattel has explained previously. Mattel is entitled to pursue indirect profits. <u>See</u> Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 185-186; <u>see also</u> Mattel's Objections To MGA Parties' January 28, 2011 Amended Proposed Jury Instructions, Dkt no. 9822, at 48-51; <u>see also</u> 9th Cir. Civ. Jury Instr. 17.24, comments (2007) ("The 'fundamental standard' for whether a causal nexus is shown as required for an award of indirect profit is that the plaintiff "'must proffer some

evidence…[that] the infringement at least partially caused the profits that the infringer generated as a result of the infringement.'") (citations omitted); <u>Polar Bear Productions, Inc. v. Timex Corp.</u>, 384 F.3d 700, 711, 714 n.10 (9th Cir. 2004) (approving a jury instruction stating: "Indirect profits have a less direct connection or link to the infringement. Plaintiff seeks indirect profits in this case. To recover indirect profits, Plaintiff must establish a causal relationship between the infringement and the profits generated indirectly from such infringement."); <u>Mackie v. Rieser</u>, 296 F.3d 909, 914 (9th Cir. 2002), cert. denied, 537 U.S. 1189 (2003) ("On its face, § 504(b) does not differentiate between 'direct profits'—those that are generated by selling an infringing product--and 'indirect profits'—revenue that has a more attenuated nexus to the infringement."); <u>Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.</u>, 772 F.2d 505, 517 (9th Cir. 1985) ("Frank Music I") (holding that "[t]he language of the statute is broad enough to permit recovery of indirect as well as direct profits" and remanding for determination of amount of indirect profits); <u>Garcia v. Coleman</u>, 2009 WL 799393, at *3 (N.D. Cal. Mar. 24, 2009) ("Even in an indirect profits case, a copyright owner need only present evidence that "the infringement at least partially caused the profits that the infringer generated as a result of the infringement.") (citing <u>Polar Bear Prods.</u>, Inc., 384 F.3d at 711).

**48.  <u>MATTEL'S SPECIAL JURY INSTRUCTION NO. 42 COPYRIGHT—DAMAGES—APPORTIONMENT</u>**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for reasons and based on authorities Mattel has explained previously.  <u>See</u> Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 187-188; <u>see</u> <u>also</u> 9th Cir. Civ. Jury Instr. 17.24, comments (2007); <u>Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.</u>, 886 F.2d 1545, 1549 (9th Cir. 1989) ("In performing the apportionment, the benefit of the doubt must always be given to the plaintiff, not the defendant . . . ."); <u>Sheldon v. Metro-Goldwyn Pictures Corp.</u>, 309 U.S. 390, 401-02 (1940) ("when the copyrighted portions are so intermingled

with the rest of the piratical work 'that they cannot well be distinguished from it,' the entire profits realized by the defendants will be given to the plaintiff.") (citation omitted); William F. Patry, PATRY ON COPYRIGHT, § 22:147 (2008) ("where the infringing work consists mostly of infringed material that gives the work its value and is inextricably intertwined with the original, courts have refused to apportion.").

## 49.   17.27 COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for reasons and based on authorities Mattel has explained previously.  See Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 189-90; see also 9th Cir. Civ. Jury Instr. 17.27 (2007) (modified); Three Boys Music Corp. v. Bolton, 212 F.3d 477, 487 (9th Cir. 2000) (noting that willful infringers are not permitted to deduct income taxes); Kamar Int'l, Inc. v. Russ Berrie and Co., Inc., 752 F.2d 1326, 1331-32 (9th Cir. 1982) ("[a] portion of an infringer's overhead properly may be deducted from gross revenues to arrive at profits, at least where the infringement was not willful, conscious, or deliberate.") (emphasis added); Sheldon v. Metro-Goldwyn Pictures Corp., 106 F.2d 45, 53 (2d Cir. 1939) (a willful infringer may not deduct its income taxes); Saxon v. Blann, 968 F.2d 676, 681 (8th Cir. 1992) (a willful infringer may not deduct overhead expenses); Jarvis v. A & M Records, 827 F. Supp. 282, 294 (1993) ("[I]f defendant's conduct is willful, overhead may not be deducted"); Liu v. Price Waterhouse LLP, 2000 WL 1644585, at *6  (N.D. Ill. 2000) (approving jury instruction barring deduction of overhead if the jury were to find willful infringement); 5 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 14.03[C][2] (2006) (it is "settled law" that infringers are not entitled to income tax deductions).

## 50.   CACI 4410 TRADE SECRET DAMAGES—UNJUST ENRICHMENT

The Court gave a modified version of this instructions that requires the jury to "subtract from that amount MGA, Larian, and/or Mattel's sweat equity, including their hard work, creativity, and legitimate efforts."  That is erroneous for reasons

1   and based on authorities Mattel has explained previously.  This language is not

2   contained in CACI 4410 and the extraneous terms are not defined.  <u>See</u> Mattel's

3   Corrected Objections to MGA's Jury Instructions, Dkt. No. 9739, at 110-112;

4   Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 161-162; CACI 4410.

5   Moreover, this instruction may incorrectly imply to the jury that the burden is on

6   Mattel to apportion MGA's profits.  As MGA itself has argued, the burden is on the

7   defendant to apportion profits. <u>See</u> MGA's Opposition to Mattel's Daubert Motion

8   No. 2 at 11-12 ("the burden of apportioning profits falls upon the party accused of

9   trade secret misappropriation."); <u>see</u> <u>also</u> <u>Cartel Asset Mgmt. v. Ocwen Fin. Corp</u>.,

10  249 F. App'x 63, 73, 76-79, 87 (10th Cir. 2007) (holding that in trade secret

11  misappropriation actions, the "plaintiff has the burden of establishing the

12  defendant's sales; the defendant has the burden of establishing any portion of the

13  sales not attributable to the trade secret and any expenses to be deducted in

14  determining net profits.") (quoting Comment (f) to the Restatement (Third) of

15  Unfair Competition § 45 (1995)); <u>Petters v. Williamson & Assocs., Inc</u>., 151 Wash.

16  App. 154, 164-165 (2009) (noting that the Restatement approach "places on the

17  party in possession of the relevant information-the defendant-the burden of

18  demonstrating which portion, if any, of the revenue obtained through the transfer of

19  a trade secret was not, in fact, attributable to the transfer," and has been "widely

20  adopted in jurisdictions applying the model act.").

21  **51.   CACI 4411 TRADE SECRET DAMAGES—WILLFUL AND
        MALICIOUS MISAPPROPRIATION**

22

23        The Court declined to give any portion of this instruction.  That is erroneous

      because the instruction is proper for reasons and based on authorities Mattel has

24    explained previously.  Mattel is entitled to a determination of whether MGA's

25    misappropriation was willful.  <u>See</u> Mattel's Fourth Amended Jury Instructions, Dkt.

26    No. 9683, at 163-164; <u>CACI 4411</u>;

27  **52.   MATTEL'S SPECIAL JURY INSTRUCTION NO. 37 TRADE SECRET
        REASONABLE ROYALTY CALCULATION**

28

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for reasons and based on authorities Mattel has explained previously.  The Court should have instructed the Georgia-Pacific factors both for copyright and for  an advisory opinion on trade secret reasonably royalty.  See Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 165-168; Federal Circuit Model Patent Jury Instructions, Instruction No. 6.7; LinkCo, Inc. v. Fujitsu Ltd.,  232 F.Supp.2d 182, 190 (S.D.N.Y. 2002)(discussing application of Georgia-Pacific factors in trade secret case); O2 Micro Intern. Ltd. v. Monolithic Power Systems, Inc., 399 F.Supp.2d 1064, 1077  (N.D. Cal. 2005) (same); Veritas Operating Corp. v. Microsoft Corp., 2008 WL 7404617 (W.D. Feb. 26, Wash. 2008) (same).

## 53.    **MATTEL'S SPECIAL JURY INSTRUCTION NO. 36 DISGORGEMENT OF PROFITS**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for reasons and based on authorities Mattel has explained previously. See Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 155-156.

## 54.    **MATTEL SPECIAL JURY INSTRUCTION NO. 34:  AFFIRMATIVE DEFENSE—STATUTE OF LIMITATIONS—FRAUDULENT CONCEALMENT**

The Court declined to give any portion of this instruction.  That is erroneous because the instruction is proper for the reasons Mattel has explained previously and based on the authorities Mattel has cited.  See Mattel's Fourth Amended Jury Instructions, Dkt. No. 9683, at 145-46.  Mattel has introduced extensive evidence of fraudulent concealment, the jury should decide the issue, and the Court's refusal to instruct the jury on fraudulent concealment seriously prejudices Mattel's ability to respond to MGA's statute of limitations defense.  See Mattel, Inc.'s Trial Brief Re Fraudulent Concealment Jury Instruction, Dkt. No. 10416, at 1-6; see also Baker v. Beech Aircraft Corp., 96 Cal. App. 3d 321, 329-31 (1979); Evaraets v. Intermedics

1 | <u>Intraocular, Inc.</u>, 29 Cal. App. 4th 779, 790 n. 5 (1994); <u>Migliori v. Boeing N. Am.,</u>
2 | <u>Inc.</u>, 114 F. Supp. 2d 976, 983 (C.D. Cal. 2000); <u>Garamendi v. SDI Vendome S.A.,</u>
3 | 276 F. Supp. 2d 1030, 1042-43 (C.D. Cal. 2003); <u>Low v. SDI Vendome S.A.,</u> 2003
4 | WL 25678880, at *5 (C.D. Cal. Jan. 7, 2003).
5 |
6 | DATED:  April 7, 2011          QUINN EMANUEL URQUHART &
                                    SULLIVAN. LLP
7 |
8 |                                By   */s/ John B. Quinn*
9 |                                   John B. Quinn
                                   Attorneys for Mattel, Inc. and Mattel de
10 |                                  Mexico. S.A. de C.V.
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |