Case 2:04-cv-09049-DOC-RNB   Document 10438   Filed 04/08/11   Page 1 of 56   Page ID #:316885
CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

1

1          **UNITED STATES DISTRICT COURT**

2          **CENTRAL DISTRICT OF CALIFORNIA**

3       **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                 - - - - - - -

5
    MATTEL, INC., et al.,              )
6                                      )
                Plaintiffs,            )
7                                      )
         vs.                           ) No. CV 04-9049 DOC
8                                      )    Day 47
    MGA ENTERTAINMENT, INC., et al.,   )    Volume 1 of 4
9                                      )
                                       )
10              Defendants.            )
    _____)

11

12

13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                    Jury Trial

16               Santa Ana, California

17             Wednesday, April 6, 2011

18

19

20

21  Debbie Gale, CSR 9472, RPR, CCRR
    Federal Official Court Reporter
22  United States District Court
    411 West 4th Street, Room 1-053
23  Santa Ana, California 92701
    (714) 558-8141
24

25  04cv9049 Mattel 2011-04-06 D47V1

1    **APPEARANCES OF COUNSEL:**

2

     FOR PLAINTIFF MATTEL, INC., ET AL.:

3
                QUINN EMANUEL URQUHART & SULLIVAN
4               BY:  JOHN QUINN
                     WILLIAM PRICE
5                    MICHAEL T. ZELLER
                     Attorneys at Law
6               865 South Figueroa Street
                10th Floor
7               Los Angeles, California 90017
                (213) 443-3000
8

9

10

11   FOR DEFENDANT MGA ENTERTAINMENT, INC., ET AL:

12              ORRICK, HERRINGTON & SUTCLIFFE, LLP (Irvine)
                BY:  THOMAS S. McCONVILLE
13                   Attorney at Law
                4 Park Plaza
14              Suite 1600
                Irvine, California 92614
15              (949) 567-6700

16              - AND -

17              ORRICK, HERRINGTON & SUTCLIFFE, LLP (SF)
                BY:  ANNETTE L. HURST
18                   Attorney at Law
                405 Howard Street
19              San Francisco, California 94105
                (415)773-5700
20
                - AND -
21
                KELLER RACKAUCKAS
22              BY:  JENNIFER KELLER
                     Attorney at Law
23              18500 Von Karman Avenue
                Suite 560
24              Irvine, California 92612
                (949) 476-8700
25

1    **APPEARANCES OF COUNSEL (Continued):**

2

3    FOR CARLOS GUSTAVO MACHADO GOMEZ:

4

5            LAW OFFICES OF MARK E. OVERLAND
             By:  MARK E. OVERLAND
                  Attorney at Law
6            100 Wilshire Boulevard
             Suite 950
7            Santa Monica, California 90401
             (310) 459-2830

8            – AND –

9
             SCHEPER KIM & HARRIS LLP
10           BY:  ALEXANDER H. COTE
                  Attorney at Law
11           601 West 5th Street
             12th Floor
12           Los Angeles, California 90071
             (213) 613-4660

13

14   ALSO PRESENT:

15           MGA ENTERTAINMENT, INC.
             BY:  JEANINE PISONI
16                Attorney at Law
             16360 Roscoe Boulevard
17           Suite 105
             Van Nuys, California 91406

18

19           ROBERT A. ECKERT, MATTEL CEO

20           ISAAC LARIAN, MGA CEO

21           KEN KOTARSKI, Mattel Technical Operator

22           MIKE STOVALL, MGA Technical Operator

23           RACHEL JUAREZ, Quinn Emanuel Urquart & Sullivan

24

25

Case 2:04-cv-09049-DOC-RNB   Document 10438   Filed 04/08/11   Page 4 of 56   Page ID #:316888
CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

4

| | **I N D E X** | | | | |

| | | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|---|
| **WITNESSES** | | | | | |

JOLICOEUR, Dennis

By Mr. Zeller                        8

**EXHIBITS**

| EXHIBIT NO. | | IDENTIFICATION | IN EVIDENCE |
|---|---|---|---|
| 9418 | E-mail chain containing e-mails to Mr. Larian and Ms. de Raspide | | 23 |
| 20629 | Document | | 7 |
| 22389 | Document | | 7 |
| 23888 | Document | | 7 |
| 23904 | Document | | 7 |
| 24853 | MGA e-mail entitled "Toy Journalist," dated 2/7/2006 | | 39 |

Case 2:04-cv-09049-DOC-RNB  Document 10438  Filed 04/08/11  Page 5 of 56  Page ID #:316889
CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

5

|       |    |                                                        |
|-------|----|--------------------------------------------------------|
|       | 1  | **SANTA ANA, CALIFORNIA, WEDNESDAY, APRIL 6, 2011**    |
|       | 2  | **Day 47, Volume 1 of 4**                              |
|       | 3  | (8:35 a.m.)                                             |
| 08:35 | 4  | *(In the presence of the jury.)*                       |
| 08:35 | 5  | THE COURT:  We're back on record.  The jury's          |
| 08:35 | 6  | present, the alternates.  All counsel are present.     |
| 08:35 | 7  | Thank you for your courtesy, counsel.                  |
| 08:35 | 8  | If you would please be seated.                         |
| 08:35 | 9  | And counsel on behalf of -- Bill, would you like       |
| 08:35 | 10 | to call your next witness, please.                     |
| 08:35 | 11 | MR. ZELLER:  Mattel calls Dennis Jolicoeur.            |
| 08:35 | 12 | THE COURT:  Thank you very much.                       |
| 08:35 | 13 | Mr. Jolicoeur.  Sir, are you Mr. Jolicoeur?            |
| 08:36 | 14 | THE WITNESS:  Yes, I am.                                |
| 08:36 | 15 | THE COURT:  Thank you.  If you will step forward       |
| 08:36 | 16 | between the double doors, sir.  Come up and be seated for |
| 08:36 | 17 | just a moment.  Better yet, why don't you stop right there |
| 08:36 | 18 | and raise your right hand.                              |
| 08:36 | 19 | **DENNIS JOLICOEUR, MATTEL'S WITNESS, SWORN**          |
| 08:36 | 20 | THE WITNESS:  Yes, I do.                                |
| 08:36 | 21 | THE COURT:  Thank you, sir.                             |
| 08:36 | 22 | If you would please be seated here in the witness      |
| 08:36 | 23 | box.                                                    |
| 08:36 | 24 | Sir, after you're seated, would you state your         |
| 08:36 | 25 | full name for the record, please.                      |

CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

6

| | | |
|---|---|---|
| 08:36 | 1 | THE WITNESS:  My name is Dennis Roland Jolicoeur. |
| 08:36 | 2 | THE COURT:  Thank you.  And that chair is hard to |
| 08:36 | 3 | move, so try to scoot it toward you and then bring the |
| 08:37 | 4 | microphone down toward you so we can hear you. |
| 08:37 | 5 | Sir, how do you spell your last name? |
| 08:37 | 6 | THE WITNESS:  With difficulty:  J-O-L-I-C-O-E-U-R. |
| 08:37 | 7 | THE COURT:  Thank you very much.  This is direct |
| 08:37 | 8 | examination by Mr. Zeller on behalf of Mattel. |
| 08:37 | 9 | MR. ZELLER:  Thank you, Your Honor. |
| 08:37 | 10 | Before beginning, as a housekeeping matter, I'd |
| 08:37 | 11 | ask the Court to receive certain exhibits:  Exhibits 20516, |
| 08:37 | 12 | 20629, 22389, 23888, and 23904. |
| 08:37 | 13 | THE COURT:  I don't want these shown right now. |
| 08:37 | 14 | You can talk about them.  So my concern is in just receiving |
| 08:37 | 15 | them, that then they're going up, and I want to have a |
| 08:37 | 16 | better record. |
| 08:37 | 17 | In all likelihood, I will receive them.  He can |
| 08:38 | 18 | discuss them, but I'm not going to receive them at this |
| 08:38 | 19 | moment. |
| 08:38 | 20 | MR. ZELLER:  I believe that this may be -- these |
| 08:38 | 21 | are exhibits that MGA has not objected to, Your Honor. |
| 08:38 | 22 | THE COURT:  Other than on any other grounds which |
| 08:38 | 23 | are preserved, are any of these of concern? |
| 08:38 | 24 | MR. McCONVILLE:  Your Honor, I just got a list, so |
| 08:38 | 25 | I have to look at what they are, so I don't... |

Case 2:04-cv-09049-DOC-RNB   Document 10438   Filed 04/08/11   Page 7 of 56   Page ID #:316891
CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

7

| | | |
|---|---|---|
| 08:38 | 1 | THE COURT:  Well, just a moment.  I thought the |
| 08:38 | 2 | two of you had consulted this morning? |
| 08:38 | 3 | There are a couple of exhibits I need to go over |
| 08:38 | 4 | outside your presence, but at 8:25, counsel were still |
| 08:38 | 5 | looking at a couple of exhibits, so give them just a moment. |
| 08:38 | 6 | And the last one -- I had 2388.  What was the last |
| 08:38 | 7 | one? |
| 08:39 | 8 | MR. ZELLER:  23904. |
| 08:39 | 9 | THE COURT:  Thank you. |
| 08:39 | 10 | MR. ZELLER:  And these are MGA press releases. |
| 08:39 | 11 | MR. McCONVILLE:  We object to them all on hearsay, |
| 08:39 | 12 | but in particular, 20516 is not an MGA press release. |
| 08:39 | 13 | THE COURT:  All right.  That will be reserved.  I |
| 08:39 | 14 | won't receive that, but let me receive, then, 20629. |
| 08:39 | 15 | *(Exhibit No. 20629 received in evidence.)* |
| 08:39 | 16 | THE COURT:  22389. |
| 08:39 | 17 | *(Exhibit No. 22389 received in evidence.)* |
| 08:39 | 18 | THE COURT:  23888. |
| 08:39 | 19 | *(Exhibit No. 23888 received in evidence.)* |
| 08:39 | 20 | THE COURT:  23904. |
| 08:39 | 21 | *(Exhibit No. 23904 received in evidence.)* |
| 08:39 | 22 | THE COURT:  What I'm doing, ladies and gentlemen, |
| 08:39 | 23 | so there's no mystery, I'm going through and making sure |
| 08:39 | 24 | there's no prejudicial information to either side or the -- |
| 08:39 | 25 | you know, that the dates, that they're appropriate.  We |

| | | |
|---|---|---|
| 08:39 | 1 | shouldn't be reading newspaper articles, but they can be |
| 08:39 | 2 | received for a limited purpose, and here I'm going to |
| 08:39 | 3 | receive the four items that I'd stated. |
| 08:39 | 4 | All right.  Counsel, those four items, 20629, |
| 08:39 | 5 | 22389, 23888, 23904 are received. |
| 08:39 | 6 | MR. ZELLER:  Thank you, Your Honor. |
| 08:37 | 7 | **DIRECT EXAMINATION** |
| 08:39 | 8 | BY MR. ZELLER: |
| 08:39 | 9 | Q.   Good morning. |
| 08:39 | 10 | You're currently MGA's chief financial officer? |
| 08:40 | 11 | A.   That is correct. |
| 08:40 | 12 | Q.   And how long have you held that position? |
| 08:40 | 13 | A.   Since November of 2009. |
| 08:40 | 14 | Q.   And you were designated by MGA as its corporate |
| 08:40 | 15 | designee, sometimes called a 30(b)(6) witness, on certain |
| 08:40 | 16 | topics in this case? |
| 08:40 | 17 | A.   Yes. |
| 08:40 | 18 | Q.   And one of the topics that you were designated as a |
| 08:40 | 19 | corporate representative on for MGA to testify was MGA's |
| 08:40 | 20 | practices and activities at toy industry fairs and |
| 08:40 | 21 | tradeshows? |
| 08:40 | 22 | A.   I believe so. |
| 08:40 | 23 | Q.   And, by the way, as the corporate designee, what you |
| 08:40 | 24 | understood was, is that you were to educate yourself, look |
| 08:40 | 25 | at documents, MGA records, talk to other people and gather |

| 08:40 | 1 | information so that you could speak on behalf of the |
| 08:40 | 2 | corporation to certain subjects; is that correct? |
| 08:40 | 3 | MR. McCONVILLE:  Objection.  Relevance. |
| 08:40 | 4 | THE COURT:  Overruled.  He was a 30(b)(6), wasn't |
| 08:40 | 5 | he, Counsel? |
| 08:40 | 6 | MR. ZELLER:  He was. |
| 08:41 | 7 | THE COURT:  All right.  Overruled. |
| 08:41 | 8 | BY MR. ZELLER: |
| 08:41 | 9 | Q.   Is that correct? |
| 08:41 | 10 | A.   Yes. |
| 08:41 | 11 | Q.   And another topic that you were designated on as the |
| 08:41 | 12 | corporate representative was the factual basis for MGA's |
| 08:41 | 13 | claims that Mattel misappropriated trade secrets from MGA; |
| 08:41 | 14 | is that correct? |
| 08:41 | 15 | MR. McCONVILLE:  Objection.  Relevance. |
| 08:41 | 16 | THE COURT:  Yeah.  As to that, that's the ultimate |
| 08:41 | 17 | issue for the jury. |
| 08:41 | 18 | He can get into the -- well, just a moment. |
| 08:41 | 19 | MR. ZELLER:  It's his topic. |
| 08:41 | 20 | THE COURT:  Just a moment.  Whether they're trade |
| 08:41 | 21 | secrets or not is the import of his testimony.  That's a |
| 08:41 | 22 | proper question.  Thank you. |
| 08:41 | 23 | Overruled. |
| 08:41 | 24 | THE WITNESS:  Yes. |
|  | 25 |  |

| | | |
|---|---|---|
| 08:41 | 1 | BY MR. ZELLER: |
| 08:41 | 2 | Q.   And another topic that you were designated on to |
| 08:41 | 3 | testify as MGA's corporate designee was any and all means, |
| 08:41 | 4 | methods, practices, policies and procedures used by MGA at |
| 08:41 | 5 | any time to limit access to any showroom or display of MGA |
| 08:41 | 6 | at any toy fair between 1992 and the present, correct? |
| 08:42 | 7 | MR. McCONVILLE:  Objection.  Relevance.  And no |
| 08:42 | 8 | personal knowledge on all of these topics. |
| 08:42 | 9 | THE COURT:  Designated 30(b)(6) witness, Counsel; |
| 08:42 | 10 | is that correct? |
| 08:42 | 11 | MR. ZELLER:  He was. |
| 08:42 | 12 | THE COURT:  Overruled. |
| 08:42 | 13 | THE WITNESS:  Yes. |
| 08:42 | 14 | BY MR. ZELLER: |
| 08:42 | 15 | Q.   And another topic that you were designated on as the |
| 08:42 | 16 | corporate designee for MGA was all steps, efforts, policies, |
| 08:42 | 17 | procedures, means, measures, agreements, obligations, |
| 08:42 | 18 | understanding, and practices undertaken by MGA at any time |
| 08:42 | 19 | between 1992 and the present to preserve as confidential or |
| 08:42 | 20 | maintain the secrecy of each of the trade secrets that MGA |
| 08:42 | 21 | contends Mattel misappropriated; is that correct? |
| 08:42 | 22 | MR. McCONVILLE:  Objection.  Relevance.  No |
| 08:42 | 23 | personal knowledge for this witness. |
| 08:42 | 24 | THE COURT:  Overruled. |
| 08:42 | 25 | THE WITNESS:  Yes. |

CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

11

| | | |
|---|---|---|
| 08:42 | 1 | BY MR. ZELLER: |
| 08:42 | 2 | Q.   Now, as MGA's corporate designee on these subjects, you |
| 08:42 | 3 | believe that product information and products become public |
| 08:43 | 4 | information once they're disclosed to retailers, correct? |
| 08:43 | 5 |             MR. McCONVILLE:  Objection.  No personal |
| 08:43 | 6 | knowledge. |
| 08:43 | 7 |             THE COURT:  Overruled. |
| 08:43 | 8 |             THE WITNESS:  Would you rephrase the question, |
| 08:43 | 9 | please. |
| 08:43 | 10 | BY MR. ZELLER: |
| 08:43 | 11 | Q.   Isn't it true that when products or product information |
| 08:43 | 12 | is shared with a retailer -- |
| 08:43 | 13 |             THE COURT:  Just a moment. |
| 08:43 | 14 |             Just a minute. |
| 08:43 | 15 |             Did you hear the question?  Did you understand the |
| 08:43 | 16 | question? |
| 08:43 | 17 |             THE WITNESS:  I'm sorry.  I'm a bit nervous. |
| 08:43 | 18 | That's all. |
| 08:43 | 19 |             THE COURT:  Well, that's okay.  I am too.  Don't |
| 08:43 | 20 | worry about that. |
| 08:43 | 21 |             But you answer the question, okay?  We're on a |
| 08:43 | 22 | time limit. |
| 08:43 | 23 |             THE WITNESS:  I will do my absolute best. |
| 08:43 | 24 |             THE COURT:  Ask the question one more time, |
| 08:43 | 25 | Counsel. |

Case 2:04-cv-09049-DOC-RNB   Document 10438   Filed 04/08/11   Page 12 of 56   Page ID #:316896
CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

12

08:43   1              He's not going to rephrase it.  You listen to the

08:43   2     question and answer the question.

08:43   3              THE WITNESS:  Yes.

08:43   4              THE COURT:  All right.  Counsel.

08:43   5     BY MR. ZELLER:

08:43   6     Q.   As MGA's corporate designee, you believe that when

08:43   7     products and product information are shared with retailers,

08:43   8     they're disclosed to retailers, it becomes public

08:43   9     information, correct?

08:43   10             MR. McCONVILLE:  Objection.  Compound.

08:43   11             THE WITNESS:  No.

08:44   12             THE COURT:  Overruled.

08:44   13             And the answer was no; is that correct, sir?

08:44   14             THE WITNESS:  That is correct.

08:44   15             THE COURT:  Thank you.

08:44   16     BY MR. ZELLER:

08:44   17     Q.   Isn't it true that when MGA discloses information and

08:44   18     releases information to a retailer, it is released to the

08:44   19     public?

08:44   20     A.   No.

08:44   21             MR. McCONVILLE:  Objection.  Compound.

08:44   22             THE COURT:  Overruled.  Let's hear your answer.  I

08:44   23     can't hear it over the objection.

08:44   24             THE WITNESS:  No.

08:44   25             THE COURT:  Okay.

| | | |
|---|---|---|
| 08:44 | 1 | BY MR. ZELLER: |
| 08:44 | 2 | Q.   If you can please take a look at your 30(b)(6) |
| 08:44 | 3 | deposition transcript dated September 2nd, 2010, at |
| 08:44 | 4 | page 8933 -- I'm sorry -- actually, 4934.  And this is lines |
| 08:44 | 5 | 20 through 22.  The date is September 2nd, 2010. |
| 08:45 | 6 | THE COURT:  And lines 9 through? |
| 08:45 | 7 | *(Document provided to the witness.)* |
| 08:45 | 8 | THE COURT:  Mr. Zeller, the lines again? |
| 08:45 | 9 | MR. ZELLER:  These are lines 20 through 22. |
| 08:45 | 10 | THE WITNESS:  Yes. |
| 08:45 | 11 | MR. ZELLER:  If I could read those lines, |
| 08:45 | 12 | Your Honor. |
| 08:45 | 13 | THE COURT:  Just a moment. |
| 08:45 | 14 | You may. |
| 08:45 | 15 | MR. ZELLER:  (Reading:) |
| 08:45 | 16 | "QUESTION:  If the information is released to the |
| 08:45 | 17 | retailer, it was released to the public? |
| 08:46 | 18 | "ANSWER:  Yes." |
| 08:46 | 19 | BY MR. ZELLER: |
| 08:46 | 20 | Q.   Isn't it true that by the time of the toy fairs in |
| 08:46 | 21 | January and February of a given year, the unreleased |
| 08:46 | 22 | products of MGA for the Fall season are public information? |
| 08:46 | 23 | A.   No. |
| 08:46 | 24 | Q.   In fact, you believe that unreleased products for the |
| 08:46 | 25 | Fall season become public as early as the prior December, |

Case 2:04-cv-09049-DOC-RNB   Document 10438   Filed 04/08/11   Page 14 of 56   Page ID #:316898
CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

14

| | | |
|---|---|---|
| 08:46 | 1 | correct? |
| 08:46 | 2 | A.   No. |
| 08:46 | 3 | Q.   If you can please take a look at your deposition |
| 08:46 | 4 | transcript of the same date, page 4986. |
| 08:46 | 5 | *(Document provided to the witness.)* |
| 08:46 | 6 | BY MR. ZELLER: |
| 08:46 | 7 | Q.   And this is started at line 1 -- actually, line 2. |
| 08:47 | 8 | THE COURT:  To what line? |
| 08:47 | 9 | MR. ZELLER:  Down to line 18. |
| 08:47 | 10 | THE COURT:  Just a moment.  Let me read that. |
| 08:47 | 11 | MR. McCONVILLE:  It's not inconsistent. |
| 08:47 | 12 | THE COURT:  Counsel, you may read that portion. |
| 08:48 | 13 | Portions of it are and portions of it are not. |
| 08:48 | 14 | MR. ZELLER:  Lines 2 through 18. (Reading:) |
| 08:48 | 15 | "QUESTION:  At what point in the year does the |
| 08:48 | 16 | Fall line become public knowledge? |
| 08:48 | 17 | "THE WITNESS:" -- |
| 08:48 | 18 | BY MR. ZELLER: |
| 08:48 | 19 | Q.   That was you, Mr. Jolicoeur? |
| 08:48 | 20 | THE COURT:  Just a moment, Counsel.  It should be |
| 08:48 | 21 | read over to line 2 on page 4987. |
| 08:48 | 22 | Both of you take a look at that. |
| 08:48 | 23 | MR. ZELLER:  Sure. |
| 08:48 | 24 | Through line 5, Your Honor?  That would be where |
| 08:48 | 25 | the witness's answer ends. |

Case 2:04-cv-09049-DOC-RNB  Document 10438  Filed 04/08/11  Page 15 of 56  Page ID #:316899
CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

15

| | | |
|---|---|---|
| 08:48 | 1 | THE COURT: That's fine. Well, that would be, I |
| 08:48 | 2 | think, a fairly complete reading. |
| 08:48 | 3 | Thank you, Counsel. |
| 08:48 | 4 | MR. ZELLER: (Reading:) |
| 08:48 | 5 | "QUESTION: At what point in the year does the |
| 08:48 | 6 | Fall line become public knowledge? |
| 08:48 | 7 | "THE WITNESS:" -- |
| 08:48 | 8 | BY MR. ZELLER: |
| 08:48 | 9 | Q. And that's you, Mr. Jolicoeur, right? This part that |
| 08:48 | 10 | I'm reading, this is your deposition? |
| 08:48 | 11 | A. Yes. |
| 08:48 | 12 | MR. ZELLER: (Reading:) |
| 08:48 | 13 | "As early, depending on the company, as December |
| 08:49 | 14 | of the prior year, the fall line is -- is starting to be |
| 08:49 | 15 | talked about. And by January and February, at the (sic) |
| 08:49 | 16 | tradeshows and other spots, I mean, the -- the lines are |
| 08:49 | 17 | generally public knowledge. |
| 08:49 | 18 | "So by March it would actually be -- you know, |
| 08:49 | 19 | orders are probably already being placed for the fall time |
| 08:49 | 20 | frame so that they can be produced. So by March it -- you |
| 08:49 | 21 | know, they're certainly -- you know, the fall line is |
| 08:49 | 22 | certainly public knowledge. |
| 08:49 | 23 | "QUESTION: The tradeshows you reference, those |
| 08:49 | 24 | are in January? |
| 08:49 | 25 | "ANSWER: There's tradeshows --" |

Case 2:04-cv-09049-DOC-RNB   Document 10438   Filed 04/08/11   Page 16 of 56   Page ID #:316900
CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

16

08:49   1          Then it continues on with your answer:

08:49   2          "There are tradeshows in January that are major

08:49   3   tradeshows at which fall -- the fall line is shown -- at

08:49   4   which the fall line is shown."

08:49   5   BY MR. ZELLER:

08:49   6   Q.   It's true that you agree that products shown at

08:49   7   New York Toy Fair are public information, correct?

08:49   8   A.   No.

08:50   9   Q.   Please take a look at page 4986, line 19, through 4988,

08:50   10  line 6, so the same transcript.

08:50   11         THE COURT:  Just a minute, Counsel.

08:50   12         MR. McCONVILLE:  I'm going to object.  It's not

08:50   13  inconsistent.

08:50   14         THE COURT:  Just a moment.  I'll need time to read

08:50   15  this now.

08:51   16         MR. ZELLER:  4986, line 19, all the way through

08:51   17  4988 --

08:51   18         THE COURT:  Line 6.

08:51   19         MR. ZELLER:  -- line 6.

08:51   20         THE COURT:  You may read those portions.  It has

08:51   21  both, Counsel; both consistency and inconsistency allegedly.

08:51   22         MR. ZELLER:  (Reading:)

08:51   23         "QUESTION:  The tradeshows you reference, those

08:51   24  are in January?

08:51   25         "ANSWER:  There's tradeshows --

08:51   1          "There are tradeshows in January that are major

08:51   2   tradeshows at which fall -- the fall line is shown -- at

08:51   3   which the fall line is shown.

08:51   4          "QUESTION:  And showing them there makes them

08:51   5   public information?

08:51   6          "THE WITNESS:  As the products are being shown to

08:51   7   customers throughout the country and the world, the

08:51   8   informa- -- you know, the fall lines are certainly -- become

08:52   9   publicly known.

08:52   10         "QUESTION:  And that's true by the time of

08:52   11  January, as to products the will be released the following

08:52   12  fall?

08:52   13         "THE WITNESS:  It's fair to say that in the early

08:52   14  part of the year, including January, there's a -- companies

08:52   15  in this industry are introducing their fall line, and that

08:52   16  by March and April and May, you know, companies are ordering

08:52   17  goods.  I can't say that that's a hundred percent true for a

08:52   18  hundred percent of all products and -- but it is certainly

08:52   19  more than largely true for the toy industry that that is

08:52   20  true."

08:52   21  BY MR. ZELLER:

08:52   22  Q.   And you also understand that when retailers go to toy

08:52   23  fairs they're given catalogs by MGA, correct?

08:52   24  A.   Uh, not necessarily.

08:52   25  Q.   And isn't it true that you know it's not unusual in the

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

18

| | | |
|---|---|---|
| 08:52 | 1 | toy industry for a retailer to share a toy manufacturer's |
| 08:52 | 2 | catalogs with competitors? |
| 08:52 | 3 | MR. McCONVILLE:  Objection.  Vague as to time. |
| 08:52 | 4 | THE COURT:  Overruled. |
| 08:52 | 5 | Generally speaking. |
| 08:52 | 6 | THE WITNESS:  Uh, not necessarily, no. |
| 08:53 | 7 | BY MR. ZELLER: |
| 08:53 | 8 | Q.   Does it seem unusual to you? |
| 08:53 | 9 | MR. McCONVILLE:  Objection.  Relevance. |
| 08:53 | 10 | THE COURT:  Overruled. |
| 08:53 | 11 | You can answer that question. |
| 08:53 | 12 | THE WITNESS:  Um, I don't know what the policies |
| 08:53 | 13 | of each company are.  MGA would not be sharing its catalogs |
| 08:53 | 14 | with other companies. |
| 08:53 | 15 | BY MR. ZELLER: |
| 08:53 | 16 | Q.   Well, you do know that MGA itself has obtained from |
| 08:53 | 17 | retailers Mattel catalogs that Mattel distributed at toy |
| 08:53 | 18 | fairs, correct? |
| 08:53 | 19 | MR. McCONVILLE:  Objection.  Vague as to time. |
| 08:53 | 20 | THE WITNESS:  Um, I don't know. |
| 08:53 | 21 | THE COURT:  Overruled. |
| 08:53 | 22 | BY MR. ZELLER: |
| 08:53 | 23 | Q.   Please take a look at 4941 -- actually, let's start |
| 08:53 | 24 | with Exhibit 9481. |
| 08:54 | 25 | Do you recognize this document, Mr. Jolicoeur? |

| 08:54 | 1 | A.    I don't have the document. |
|---|---|---|

08:54    1    A.    I don't have the document.

12:09    2    Q.    Oh, we don't have it yet.

08:54    3    Then let's maybe look at your deposition transcript.

08:54    4    Do you recall seeing an e-mail at some point where

08:54    5    there was a Sandrine de Raspide who had obtained a copy of a

08:54    6    Mattel catalog from a toy fair?  Do you recall --

08:54    7    MR. McCONVILLE:  Objection.

08:54    8    BY MR. ZELLER:

08:54    9    Q.    -- being asked about that in your deposition?

08:54    10    MR. McCONVILLE:  Objection.  Your Honor, this is

08:54    11    not rebuttal or defense.

08:54    12    THE COURT:  Sustained.

08:54    13    MR. ZELLER:  This is about the catalog,

08:54    14    Your Honor.

08:55    15    THE COURT:  It's hearsay.

08:55    16    MR. ZELLER:  It's an MGA document.

08:55    17    MR. McCONVILLE:  Same objection.

08:55    18    THE COURT:  Is it an MGA document?

08:55    19    MR. ZELLER:  It is.  It is.

08:55    20    THE COURT:  It's an incorrect ruling on my part.

08:55    21    I'm going to reserve my ruling.  You can ask it.

08:55    22    MR. McCONVILLE:  This is not rebuttal, nor is it

08:55    23    defense.

08:55    24    THE COURT:  All right.  Thank you.

     25

Case 2:04-cv-09049-DOC-RNB  Document 10438  Filed 04/08/11  Page 20 of 56  Page ID #:316904
CV 04-9049 DOC – 4/6/2011 – Day 47, Volume 1 of 4

20

| | | |
|---|---|---|
| 08:55 | 1 | BY MR. ZELLER: |
| 08:55 | 2 | Q.   Let's take a look at your deposition, page 4940, if you |
| 08:55 | 3 | can start with line 23.  We're talking about that e-mail |
| 08:55 | 4 | where MGA had obtained a Mattel catalog -- |
| 08:55 | 5 |             MR. McCONVILLE:  Objection. |
| 08:55 | 6 | BY MR. ZELLER: |
| 08:55 | 7 | Q.   -- from a toy fair. |
| 08:55 | 8 |             MR. McCONVILLE:  Objection.  To publishing a |
| 08:55 | 9 | document without having it in front of the witness. |
| 08:55 | 10 |             THE COURT:  Somebody needs to put this e-mail up. |
| 08:55 | 11 |             It would be Exhibit 9418, Bates No. 0151823. |
| 08:55 | 12 |                (Document provided to the witness.) |
| 08:55 | 13 |             THE COURT:  Thank you. |
| 08:55 | 14 |             MR. McCONVILLE:  Can I get a copy? |
| 08:55 | 15 |             THE COURT:  And I'd like a copy also, please. |
| 08:55 | 16 |                (Document provided to the Court.) |
| 08:55 | 17 |             MR. ZELLER:  And I believe that this is in |
| 08:56 | 18 | evidence, Your Honor. |
| 08:56 | 19 |             THE COURT:  All right.  Counsel, your question. |
| 08:56 | 20 | BY MR. ZELLER: |
| 08:56 | 21 | Q.   Sir, if you could please take a look at Exhibit 9418. |
| 08:56 | 22 | A.   Yes. |
| 08:56 | 23 | Q.   You'll see there's a stamp, by the way, at the bottom. |
| 08:56 | 24 | Do you see it has your name there?  "Jolicoeur"? |
| 08:56 | 25 | A.    Yes. |

CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

21

| | | |
|---|---|---|
| 08:56 | 1 | MR. ZELLER:  If we can actually put the document |
| 08:56 | 2 | up. |
| 08:56 | 3 | MR. McCONVILLE:  It's not in evidence, Your Honor. |
| 08:56 | 4 | BY MR. ZELLER: |
| 08:56 | 5 | Q.  Do you recognize this a -- |
| 08:56 | 6 | THE COURT:  Just a moment.  Just a moment.  Both |
| 08:56 | 7 | of you stop. |
| 08:56 | 8 | I've been told it was in evidence.  I've been told |
| 08:56 | 9 | now it's not in evidence. |
| 08:56 | 10 | Could each of you check Exhibit No. 3842. |
| 08:56 | 11 | MR. ZELLER:  I will just move it into evidence |
| 08:56 | 12 | with this witness, Your Honor. |
| 08:56 | 13 | BY MR. ZELLER: |
| 08:56 | 14 | Q.  Do you recognize -- |
| 08:56 | 15 | THE COURT:  Whoa, whoa. |
| 08:56 | 16 | MR. ZELLER:  Sure. |
| 08:56 | 17 | THE COURT:  You're going to give me a couple |
| 08:56 | 18 | minutes to read this.  We're not moving that quickly, when I |
| 08:56 | 19 | haven't seen a document before. |
| 08:57 | 20 | (To the witness:)  Are you on this e-mail? |
| 08:57 | 21 | THE WITNESS:  No, I'm not, Your Honor. |
| 08:57 | 22 | THE COURT:  Sustained. |
| 08:57 | 23 | MR. ZELLER:  He's a 30(b)(6) on a topic that |
| 08:57 | 24 | involves MGA obtaining information from Mattel toy fair |
| 08:57 | 25 | showrooms. |

Case 2:04-cv-09049-DOC-RNB   Document 10438   Filed 04/08/11   Page 22 of 56   Page ID #:316906
CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

22

| | | |
|---|---|---|
| 08:57 | 1 | MR. McCONVILLE:  Same objection. |
| 08:57 | 2 | MR. ZELLER:  That's where this catalog comes from. |
| 08:57 | 3 | THE COURT:  Was he educated about this? |
| 08:57 | 4 | MR. ZELLER:  He absolutely was.  He testified |
| 08:57 | 5 | about it in his deposition. |
| 08:57 | 6 | THE COURT:  Ask the question. |
| 08:57 | 7 | MR. McCONVILLE:  Your Honor, he has no percipient |
| 08:57 | 8 | knowledge.  He's not on the e-mail, and this is not a |
| 08:57 | 9 | document that came from -- from MGA. |
| 08:57 | 10 | THE COURT:  Well, let's ask the question. |
| 08:57 | 11 | (To the jury:)  Now, remember, we're in an area |
| 08:57 | 12 | I'm not quite understanding.  We're not to take this for the |
| 08:57 | 13 | truth of the matter asserted.  It may be hearsay.  There are |
| 08:57 | 14 | designated people who speak on behalf of both companies. |
| 08:57 | 15 | Certainly, they're the CEOs and certainly there are certain |
| 08:58 | 16 | designated witnesses as 30(b)(6) witnesses.  How well |
| 08:58 | 17 | prepared those witnesses are when they speak on behalf of |
| 08:58 | 18 | the company, I'll leave to you.  Okay?  Whether that's a |
| 08:58 | 19 | conscious preparation or sometimes they're not as well |
| 08:58 | 20 | prepared as they should be for both sides. |
| 08:58 | 21 | And, Counsel, I'm not going to foreclose this |
| 08:58 | 22 | area.  Ask the question. |
| 08:58 | 23 | MR. ZELLER:  Thank you. |
| 08:58 | 24 | BY MR. ZELLER: |
| 08:58 | 25 | Q.   Mr. Jolicoeur, do you see at the bottom of Exhibit 9418 |

CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

23

| | | |
|---|---|---|
| 08:58 | 1 | an MGA production stamp on it? |
| 08:58 | 2 | A.   Um, that the -- yes. |
| 08:58 | 3 | Q.   And that means it was produced by MGA in this case, |
| 08:58 | 4 | right? |
| 08:58 | 5 | A.   I believe so. |
| 08:58 | 6 | Q.   And you see, in fact, at the top that this is an e-mail |
| 08:58 | 7 | addressed to Isaac Larian, right? |
| 08:58 | 8 | A.   Yes. |
| 08:58 | 9 | Q.   He's MGA's CEO? |
| 08:58 | 10 | A.   Yes. |
| 08:58 | 11 | Q.   Then you also see it's addressed to a Ron Brawer; do |
| 08:58 | 12 | you see that? |
| 08:58 | 13 | A.   Yes. |
| 08:58 | 14 | Q.   And Mr. Brawer was an MGA executive back in the 2005 |
| 08:58 | 15 | time period, correct? |
| 08:58 | 16 | A.   Yes. |
| 08:59 | 17 | MR. ZELLER:  I would move Exhibit 9418 into |
| 08:59 | 18 | evidence. |
| 08:59 | 19 | MR. McCONVILLE:  Same objection, Your Honor. |
| 08:59 | 20 | THE COURT:  I'll allow the receipt of this |
| 08:59 | 21 | exhibit, but once again, it's not for the truth.  Okay? |
| 08:59 | 22 | *(Exhibit No. 9418 received in evidence.)* |
| 08:59 | 23 | *(Document displayed.)* |
| 08:59 | 24 | BY MR. ZELLER: |
| 08:59 | 25 | Q.   You'll see that the first e-mail is addressed to a |

CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

24

| | | |
|---|---|---|
| 08:59 | 1 | Sandrine de Raspide at MGA; do you see that? |
| 08:59 | 2 | A.   Uh -- |
| 08:59 | 3 | Q.   And it says, "Dear Sandrine, find enclosed the Barbie |
| 08:59 | 4 | analysis we have done after Paris toy on their new |
| 08:59 | 5 | segmentation and AW05 line." |
| 08:59 | 6 | Do you see that? |
| 08:59 | 7 | A.   Yes. |
| 08:59 | 8 | Q.   And AW is referring to the fall 2005 line, correct? |
| 08:59 | 9 | A.   I have no knowledge of that. |
| 08:59 | 10 | Q.   Do you have any reason to doubt it? |
| 08:59 | 11 | A.   I have no reason to think anything about it.  I don't |
| 08:59 | 12 | know what it means. |
| 08:59 | 13 | Q.   Well, you actually read this document in detail and |
| 08:59 | 14 | testified about it at your deposition, correct? |
| 08:59 | 15 | A.   I -- I will -- I only was presented -- it was presented |
| 09:00 | 16 | to me in my deposition and, again, I don't believe I could |
| 09:00 | 17 | comment much other than to say I've read it.  I don't know |
| 09:00 | 18 | what AW05 means. |
| 09:00 | 19 | Q.   Well, isn't it true that when you were -- testified |
| 09:00 | 20 | about this document, you were asked questions about this |
| 09:00 | 21 | document, and where it references the fact that Hasbro got |
| 09:00 | 22 | ahold of a Mattel catalog, that you said, in response, that |
| 09:00 | 23 | catalogs of this kind are public information? |
| 09:00 | 24 | A.   I don't recall what I said.  I do recall that I believe |
| 09:00 | 25 | I only commented that I read it and that Hasbro got it.  I |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 10438   Filed 04/08/11   Page 25 of 56   Page ID #:316909
CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

25

| | | |
|---|---|---|
| 09:00 | 1 | don't know what the circumstances of Hasbro having gotten it |
| 09:00 | 2 | are.  Um, I don't have any knowledge beyond reading the |
| 09:00 | 3 | document itself. |
| 09:00 | 4 | Q.   Well, isn't it true that you did not think that there |
| 09:00 | 5 | was anything unusual about a competitor getting ahold of |
| 09:00 | 6 | another competitor's catalog? |
| 09:01 | 7 | A.   No, I don't know if there's anything unusual or not |
| 09:01 | 8 | about how Hasbro got this.  Uh, I -- I -- you know, the |
| 09:01 | 9 | policies of Hasbro or Mattel are not MGA's policies. |
| 09:01 | 10 | MR. ZELLER:  Your Honor, I would ask to be able to |
| 09:01 | 11 | read -- this is page 4940 through 4941 of his deposition, |
| 09:01 | 12 | specifically 4940, line 19, through 4941, line 16. |
| 09:01 | 13 | THE COURT:  Just a moment. |
| 09:01 | 14 | MR. McCONVILLE:  I'd object.  Part of this needs |
| 09:01 | 15 | to be redacted if it's going to be read. |
| 09:01 | 16 | MR. ZELLER:  It references what he was relying on |
| 09:01 | 17 | for his testimony. |
| 09:01 | 18 | THE COURT:  All right.  Gentlemen, I want to thank |
| 09:01 | 19 | you both very much. |
| 09:01 | 20 | Now, I want you to remain silent. |
| 09:02 | 21 | You may read lines 20 to line 3; in other words, |
| 09:02 | 22 | 20 on 4940 to line 3 on 4941. |
| 09:02 | 23 | MR. ZELLER:  I'm sorry, what was the line after |
| 09:02 | 24 | line 3, Your Honor? |
| 09:02 | 25 | THE COURT:  And line -- well, I'm getting to that. |

CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

26

| | | |
|---|---|---|
| 09:02 | 1 | MR. ZELLER:  Okay.  Sorry. |
| 09:02 | 2 | THE COURT:  And line 8 through line 16. |
| 09:02 | 3 | You may not read lines 4 through 7. |
| 09:03 | 4 | MR. McCONVILLE:  That's not inconsistent with his |
| 09:03 | 5 | testimony, Your Honor. |
| 09:03 | 6 | THE COURT:  Okay.  Thank you, Counsel. |
| 09:03 | 7 | Read it. |
| 09:03 | 8 | MR. ZELLER:  (Reading:) |
| 09:03 | 9 | "QUESTION:  We've marked as Exhibit 9418 an e-mail |
| 09:03 | 10 | chain, Bates numbered MGA 015-1823." |
| 09:03 | 11 | BY MR. ZELLER: |
| 09:03 | 12 | Q.   Mr. Jolicoeur, you recognize that as the document -- |
| 09:03 | 13 | THE COURT:  Counsel. |
| 09:03 | 14 | BY MR. ZELLER: |
| 09:03 | 15 | Q.   -- the e-mail we were just discussing? |
| 09:03 | 16 | THE COURT:  Well, we know it's 9418. |
| 09:03 | 17 | That's the document in front of you? |
| 09:03 | 18 | THE WITNESS:  Yes. |
| 09:03 | 19 | THE COURT:  Read it. |
| 09:03 | 20 | MR. ZELLER:  (Reading:) |
| 09:03 | 21 | "QUESTION:  And what did you do to prepare to |
| 09:03 | 22 | testify about this document today? |
| 09:03 | 23 | "ANSWER:  I read the document in detail. |
| 09:03 | 24 | "QUESTION:  Did you speak to any of the |
| 09:03 | 25 | individuals that are named in the document? |

| | | |
|---|---|---|
| 09:03 | 1 | "ANSWER:  No." |
| 09:03 | 2 | BY MR. ZELLER: |
| 09:03 | 3 | Q.    Then picking up with line 8 -- and, by the way, what |
| 09:03 | 4 | you did is you did do some investigation into it, apart from |
| 09:03 | 5 | talking to individuals, correct? |
| 09:03 | 6 | MR. McCONVILLE:  Your Honor, I object to, if |
| 09:03 | 7 | they're going to read the testimony -- |
| 09:03 | 8 | THE COURT:  Sustained.  Counsel. |
| 09:03 | 9 | MR. ZELLER:  Well, it's to explain he's got a |
| 09:04 | 10 | conclusion here.  I'm not asking what he did, just that he |
| 09:04 | 11 | did something. |
| 09:04 | 12 | THE COURT:  When I allow a reading, it's to be |
| 09:04 | 13 | read from beginning to end and then come back and ask the |
| 09:04 | 14 | question.  We're not going to chop this up now. |
| 09:04 | 15 | MR. ZELLER:  Fair enough, Your Honor. |
| 09:04 | 16 | THE COURT:  Proceed. |
| 09:04 | 17 | MR. ZELLER:  Line 8, then: |
| 09:04 | 18 | "QUESTION:  And what was your conclusion? |
| 09:04 | 19 | "ANSWER:  There was nothing unusual about this |
| 09:04 | 20 | e-mail.  You know, Hasbro has gotten ahold of a Mattel |
| 09:04 | 21 | catalog, which is probably a public document -- I don't know |
| 09:04 | 22 | if it was public or not, but it was a catalog that was |
| 09:04 | 23 | prepared -- and this catalog was circulated.  It doesn't |
| 09:04 | 24 | seem unusual -- |
| 09:04 | 25 | "QUESTION:  Did -- |

| | | |
|---|---|---|
| 09:04 | 1 | "ANSWER:  -- at all." |
| 09:04 | 2 | THE COURT:  Now you can loop back and ask your |
| 09:04 | 3 | questions after the reading. |
| 09:04 | 4 | MR. ZELLER:  Thank you, Your Honor. |
| 09:04 | 5 | BY MR. ZELLER: |
| 09:04 | 6 | Q.   And while you didn't talk to the individuals on the |
| 09:04 | 7 | e-mail, you did do some investigation, as reflected in your |
| 09:04 | 8 | deposition, to figure out what the meaning of this e-mail |
| 09:04 | 9 | was, correct? |
| 09:04 | 10 | A.   Um, quite frankly, I barely remember this.  Um, I read |
| 09:04 | 11 | it and came to conclusions, uh, the same conclusion that |
| 09:05 | 12 | I've stated in court, which is not much different than this, |
| 09:05 | 13 | and that is, I'm not sure how it was gotten ahold of.  The |
| 09:05 | 14 | e-mail itself does not seem unusual.  Um, you know, I don't |
| 09:05 | 15 | know what Hasbro's relationship with Mattel is.  And as a |
| 09:05 | 16 | consequence, I -- I come to the conclusion that it's |
| 09:05 | 17 | probably not unusual. |
| 09:05 | 18 | I don't know.  I really don't know. |
| 09:05 | 19 | Q.   Well, isn't it true that -- well, let me ask it this |
| 09:05 | 20 | way. |
| 09:05 | 21 | When you read Exhibit 9481, did you think that Hasbro |
| 09:05 | 22 | and MGA had misappropriated Mattel trade secrets? |
| 09:05 | 23 | MR. McCONVILLE:  Objection.  No foundation. |
| 09:05 | 24 | THE WITNESS:  No. |
| | 25 | |

CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

29

| | | |
|---|---|---|
| 09:05 | 1 | BY MR. ZELLER: |
| 09:05 | 2 | Q.  Directing your attention to Exhibit 9451. |
| 09:05 | 3 | *(Document provided to the witness.)* |
| 09:05 | 4 | BY MR. ZELLER: |
| 09:05 | 5 | Q.  Now, isn't it true that you know, as MGA's corporate |
| 09:05 | 6 | designee on its trade secrets, that MGA disclosed many of |
| 09:05 | 7 | the claimed trade secrets that it's asserting in this case |
| 09:06 | 8 | in press releases and news articles before or at the time of |
| 09:06 | 9 | New York Toy Fair? |
| 09:06 | 10 | MR. McCONVILLE:  Objection.  Compound. |
| 09:06 | 11 | THE COURT:  That is compound.  There needs to be a |
| 09:06 | 12 | link between those products at the New York Toy Fair |
| 09:06 | 13 | compared to products at Nuremberg or Hong Kong. |
| 09:06 | 14 | MR. ZELLER:  I'll break it down. |
| 09:06 | 15 | THE COURT:  Sustain the objection. |
| 09:06 | 16 | BY MR. ZELLER: |
| 09:06 | 17 | Q.  It's true that -- you know, that MGA is asserting that |
| 09:06 | 18 | certain MGA trade secrets were misappropriated by Mattel at |
| 09:06 | 19 | New York Toy Fair, correct? |
| 09:06 | 20 | A.  Yes. |
| 09:06 | 21 | Q.  And as MGA's corporate designee, you know that in fact |
| 09:06 | 22 | at least many of those trade secrets that MGA's claiming in |
| 09:06 | 23 | this case were public knowledge prior to or at the time of |
| 09:06 | 24 | New York Toy Fair, correct? |
| 09:06 | 25 | MR. McCONVILLE:  Same objection.  Same objection. |

CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

30

| | | |
|---|---|---|
| 09:06 | 1 | THE COURT:  Overruled. |
| 09:07 | 2 | THE WITNESS:  I think that's inaccurate.  No. |
| 09:07 | 3 | BY MR. ZELLER: |
| 09:07 | 4 | Q.   Please take a look at Exhibit 31530. |
| 09:07 | 5 | (Document provided to the witness.) |
| 09:07 | 6 | BY MR. ZELLER: |
| 09:07 | 7 | Q.   You recognize this as one the documents that MGA claims |
| 09:07 | 8 | reflects Mattel stealing MGA trade secrets, correct? |
| 09:07 | 9 | A.   Um... |
| 09:07 | 10 | MR. McCONVILLE:  What was the exhibit number? |
| 09:07 | 11 | MR. ZELLER:  It is Exhibit -- |
| 09:07 | 12 | THE COURT:  31530. |
| 09:07 | 13 | MR. ZELLER:  And I believe its dash 22 in |
| 09:07 | 14 | particular we'll talk about here. |
| 09:07 | 15 | THE COURT:  They'll turn the page for you. |
| 09:07 | 16 | THE WITNESS:  Okay.  Yes. |
| 09:08 | 17 | BY MR. ZELLER: |
| 09:08 | 18 | Q.   And you also recognize that one of the products that |
| 09:08 | 19 | MGA's claimed in this case -- one of the trade secrets that |
| 09:08 | 20 | MGA claims in this case that Mattel has misappropriated was |
| 09:08 | 21 | something called "Alien Racers," correct? |
| 09:08 | 22 | A.   That's correct. |
| 09:08 | 23 | Q.   And isn't it -- let's -- if we take a look at 31530-22. |
| 09:08 | 24 | (Document displayed.) |
| | 25 | |

Case 2:04-cv-09049-DOC-RNB   Document 10438   Filed 04/08/11   Page 31 of 56   Page ID #:316915
CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

31

09:08   1    BY MR. ZELLER:

09:08   2    Q.   And this is the Mattel 2004 New York Toy Fair report,

09:08   3    right?  You have it in front of you?

09:08   4    A.   Uh --

09:08   5          MR. McCONVILLE:  Objection.  No foundation.

09:08   6          THE COURT:  Overruled.

09:08   7          THE WITNESS:  I believe it is.

09:08   8    BY MR. ZELLER:

09:08   9    Q.   And all this information that's reflected here in this

09:08  10    Mattel document in fact was public information that MGA had

09:08  11    already released to the public as of the time of New York

09:08  12    Toy Fair, no later than February 11, 2004, correct?

09:08  13    A.   I'm not certain as to what date, uh, press release-type

09:09  14    information was released.  But that's only one element of

09:09  15    trade secret information.  That's not the entirety.

09:09  16    Q.   Isn't it true that all the information that we have

09:09  17    displayed here on the screen about Alien Racer -- it's from

09:09  18    the Mattel 2004 New York Toy Fair report -- is directly from

09:09  19    an MGA press release?

09:09  20    A.   I don't know where this information was garnered, so I

09:09  21    can't say that this was directly from an MGA press release.

09:09  22    There may have been MGA press releases that included this

09:09  23    information, but I don't know where this information was

09:09  24    garnered from.

09:09  25    Q.   Uh, if you can please take a look at page 7043, line 14

| | | |
|---|---|---|
| 09:09 | 1 | of your deposition, and this is the one dated November 10, |
| 09:10 | 2 | 2011 *(sic)*.  And this would be through page 7044, line 24. |
| 09:10 | 3 | THE COURT:  Just a moment. |
| 09:10 | 4 | MR. McCONVILLE:  It's not inconsistent, |
| 09:10 | 5 | Your Honor. |
| 09:10 | 6 | THE COURT:  Just a moment.  I'm going to have time |
| 09:10 | 7 | to read this now. |
| 09:11 | 8 | You may. |
| 09:11 | 9 | MR. ZELLER:  (Reading:) |
| 09:11 | 10 | "QUESTION:  Isn't it true that all the other |
| 09:11 | 11 | information here reflected under the Alien Racer's heading |
| 09:11 | 12 | on page 22 of this 2004 toy fair report is, in fact, from |
| 09:11 | 13 | MGA's own press release dated February 11, 2004? |
| 09:11 | 14 | "ANSWER:  Yes.  I believe that's correct. |
| 09:11 | 15 | "QUESTION:  Point to me, sir, where in the 2004 |
| 09:11 | 16 | New York Toy Fair report there is any information about |
| 09:12 | 17 | AcceleRacers that was not already public as a result of |
| 09:12 | 18 | MGA's own press releases by the end of February 2004? |
| 09:12 | 19 | "ANSWER:  As I've already testified, the |
| 09:12 | 20 | information, as set forth in the lines here, is, |
| 09:12 | 21 | essentially, the same information that was included in the |
| 09:12 | 22 | MGA press release that was issued in this time frame. |
| 09:12 | 23 | "QUESTION:  So it's true that you don't have any |
| 09:12 | 24 | knowledge or information, as MGA's 30(b)(6) witness, that |
| 09:12 | 25 | Mattel obtained any nonpublic information about AcceleRacers |

CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

33

| 09:12 | 1 | that's reflected in this report, which we've marked as |
|---|---|---|
| 09:12 | 2 | Exhibit 9451, correct? |
| 09:12 | 3 | "THE WITNESS:  Specifically looking at this report |
| 09:12 | 4 | and only this report, nothing else, this report contains a |
| 09:12 | 5 | lot of other information about MGA, some of which was not |
| 09:12 | 6 | included in press releases, but with respect to the Alien |
| 09:12 | 7 | Racers, that information was, in fact, included in the press |
| 09:12 | 8 | release that you cited. |
| 09:12 | 9 | "QUESTION:  I promise that we will talk about the |
| 09:12 | 10 | other information.  I'm asking about AcceleRacers.  You |
| 09:13 | 11 | understand that, right? |
| 09:13 | 12 | "ANSWER:  Yes. |
| 09:13 | 13 | "QUESTION:  Please point out -- isn't it true that |
| 09:13 | 14 | all the information in Exhibit 9451 pertaining to Alien |
| 09:13 | 15 | Racers is public information that MGA itself released in a |
| 09:13 | 16 | press release on February 11, 2004? |
| 09:13 | 17 | "ANSWER:  That is correct." |
| 09:13 | 18 | BY MR. ZELLER: |
| 09:13 | 19 | Q.   And you also understood that another trade secret that |
| 09:13 | 20 | MGA has claimed was misappropriated by Mattel in this case |
| 09:13 | 21 | pertaining to a product called "Bratz Diamondz"? |
| 09:13 | 22 | A.   Yes. |
| 09:13 | 23 | Q.   And specifically, what MGA's -- claimed was its trade |
| 09:13 | 24 | secret with respect to Bratz Diamondz was the fact that it |
| 09:13 | 25 | would have a real gem with it, correct? |

CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

34

09:13    1    A.    That was a trade secret, not the only trade secret.

09:13    2    Q.    Isn't it true that MGA claimed as a trade secret and

09:13    3    claimed that Mattel had misappropriated as a trade secret

09:13    4    the idea of having a real gem with a doll; yes or no?

09:14    5    A.    That is a trade secret, yes.

09:14    6    Q.    And that was -- that was a trade secret that MGA

09:14    7    claimed Mattel misappropriated by getting into the New York

09:14    8    Toy Fair showroom at -- of MGA, correct?

09:14    9    A.    I believe so.

09:14    10   Q.    But isn't it true that as of the time of New York Toy

09:14    11   Fair, the fact that Bratz Diamondz would have a real gem was

09:14    12   public information released by MGA itself no later than

09:14    13   February 8, 2006?

09:14    14   A.    I can't recall the exact date, but in that time frame I

09:14    15   believe there was a press release of some sort.

09:14    16   Q.    Isn't it true that no later than February 8, 2006, as

09:14    17   of the time of New York Toy Fair, where Bratz Diamondz was

09:14    18   shown, MGA had disclosed publicly that it planned to release

09:15    19   for the Fall of 2006 the Bratz Diamondz product?

09:15    20   A.    Uh, I believe so.

09:15    21   Q.    And as part of that, MGA also disclosed publicly by

09:15    22   that time that the dolls would come with a piece of jewelry,

09:15    23   with a real diamond chip, correct?

09:15    24   A.    Yes.

09:15    25   Q.    And by the way, you agree with me that information that

| 09:15 | 1 | MGA puts into a press release and issues is not a trade |
| 09:15 | 2 | secret, correct? |
| 09:15 | 3 | A.   Uh, I'm not sure that -- not being a lawyer, I'm not |
| 09:15 | 4 | sure that I could answer that quite the same way.  But it -- |
| 09:15 | 5 | it would be public information if it was in a press release. |
| 09:15 | 6 | Q.   There's some doubt in your mind? |
| 09:15 | 7 | A.   I'm not a lawyer to be able to define trade secret |
| 09:15 | 8 | maybe as precisely as you do, and I don't want to get into |
| 09:15 | 9 | any dialogue on it.  But I'm certainly comfortable saying |
| 09:16 | 10 | it's public information. |
| 09:16 | 11 | Q.   If it's public information, it's not a trade secret, |
| 09:16 | 12 | true? |
| 09:16 | 13 | A.   Uh, I guess so. |
| 09:16 | 14 | Q.   You know that, don't you? |
| 09:16 | 15 | A.   Um. |
| 09:16 | 16 | Q.   You're an executive of MGA, correct? |
| 09:16 | 17 |         MR. McCONVILLE:  Objection.  Calls for a legal |
| 09:16 | 18 | conclusion, which the witness is not. |
| 09:16 | 19 |         THE COURT:  You can answer the question. |
| 09:16 | 20 | BY MR. ZELLER: |
| 09:16 | 21 | Q.   You're an MGA executive, correct? |
| 09:16 | 22 | A.   Yes. |
| 09:16 | 23 | Q.   You know that MGA has come in here and asked for |
| 09:16 | 24 | hundreds of millions of dollars for these trade secrets, |
| 09:16 | 25 | right? |

CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

36

| | | |
|---|---|---|
| 09:16 | 1 | A.   Yes. |
| 09:16 | 2 | Q.   You were MGA's designee on what was a trade secret and |
| 09:16 | 3 | what wasn't, right? |
| 09:16 | 4 | A.   Yes. |
| 09:16 | 5 | Q.   You understand that Mattel had a right to know what |
| 09:16 | 6 | allegations MGA is making against it and what facts it's |
| 09:16 | 7 | claiming supports those claims, correct? |
| 09:16 | 8 | MR. McCONVILLE:  Objection.  No foundation. |
| 09:16 | 9 | THE COURT:  Overruled. |
| 09:16 | 10 | THE WITNESS:  Yes. |
| 09:16 | 11 | BY MR. ZELLER: |
| 09:16 | 12 | Q.   And you know that one way that MGA was supposed to |
| 09:16 | 13 | inform Mattel of that was through you, right? |
| 09:17 | 14 | A.   Yes. |
| 09:17 | 15 | Q.   And you're telling us you don't know whether or not |
| 09:17 | 16 | something was a trade secret, by MGA's own "lights," by -- |
| 09:17 | 17 | by its own understanding? |
| 09:17 | 18 | MR. McCONVILLE:  Objection.  Compound. |
| 09:17 | 19 | THE COURT:  Strike "you're telling us," and the |
| 09:17 | 20 | rest of the question remains. |
| 09:17 | 21 | Answer the question. |
| 09:17 | 22 | THE WITNESS:  Um, you know, the -- yes, I guess. |
| 09:17 | 23 | I... |
| 09:17 | 24 | BY MR. ZELLER: |
| 09:17 | 25 | Q.   Is it the case that when MGA invites a member of the |

09:17  1   press into its toy fair showroom, it understands that that

09:17  2   journalist is going to disclose the information that he or

09:17  3   she saw in the showroom?

09:17  4              MR. McCONVILLE:  Objection.  No foundation.

09:17  5              THE COURT:  Overruled.

09:17  6              THE WITNESS:  That -- that's not necessarily true.

09:17  7   There could be, uh, at some point in time it would be true,

09:17  8   but it's not unusual for the press to be told by any company

09:18  9   that there's an embargo on the information until a certain

09:18  10  release date.  So it's not necessarily true that the

09:18  11  information would be, uh, given to the public immediately.

09:18  12  Uh, but at some point in time, it would go to the public,

09:18  13  yes.

09:18  14  BY MR. ZELLER:

09:18  15  Q.  Well, please tell us the names of the journalists that

09:18  16  MGA has invited into its New York Toy Fair showroom that it

09:18  17  said, um, were embargoed, that they could not write about

09:18  18  what they saw in the showroom for a certain period of time?

09:18  19              MR. McCONVILLE:  Objection.

09:18  20              THE WITNESS:  I would not be able to do that.

09:18  21              I have no knowledge of that.

09:18  22  BY MR. ZELLER:

09:18  23  Q.  You can't identify even one instance of that; is that

09:18  24  true?

09:18  25              MR. McCONVILLE:  Objection.  No foundation.

| | | |
|---|---|---|
| 09:18 | 1 | THE COURT:  Overruled. |
| 09:18 | 2 | THE WITNESS:  I don't know.  I can't answer the |
| 09:18 | 3 | question. |
| 09:18 | 4 | BY MR. ZELLER: |
| 09:18 | 5 | Q.   You can't identify -- you can't tell us that it ever |
| 09:18 | 6 | even happened at MGA, correct? |
| 09:18 | 7 | A.   I can't tell you if it happened or didn't happen.  I |
| 09:18 | 8 | just don't know. |
| 09:19 | 9 | Q.   Now, one journalist who MGA had invited into the |
| 09:19 | 10 | New York Toy Fair showroom was a journalist named Denise |
| 09:19 | 11 | Van Patten? |
| 09:19 | 12 | A.   Well, I think it's unclear if she got into the showroom |
| 09:19 | 13 | as a journalist or as a retailer.  She was a retailer, as |
| 09:19 | 14 | well, and as a consequence, it is unclear as to how she got |
| 09:19 | 15 | into the showroom, with credentials as a retailer, which |
| 09:19 | 16 | would have been perfectly normal, or if she showed |
| 09:19 | 17 | credentials as a journalist.  There's no record of how she |
| 09:19 | 18 | got into the booth.  So she could have come in as a |
| 09:19 | 19 | retailer. |
| 09:19 | 20 | Q.   Isn't it -- let's please take a look at Exhibit 24853. |
| 09:19 | 21 | *(Document provided to the witness.)* |
| 09:20 | 22 | BY MR. ZELLER: |
| 09:20 | 23 | Q.   Do you recognize this as an MGA e-mail that's entitled |
| 09:20 | 24 | "Toy Journalist," dated February 7, 2006? |
| 09:20 | 25 | A.   Uh... |

Case 2:04-cv-09049-DOC-RNB   Document 10438   Filed 04/08/11   Page 39 of 56   Page ID #:316923
CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

39

| | | |
|---|---|---|
| 09:20 | 1 | MR. ZELLER:  I would move this into evidence, |
| 09:20 | 2 | Your Honor. |
| 09:20 | 3 | THE WITNESS:  Uh... |
| 09:20 | 4 | MR. McCONVILLE:  Objection.  No foundation. |
| 09:20 | 5 | THE COURT:  Could I see the e-mail for just a |
| 09:20 | 6 | moment. |
| 09:20 | 7 | *(Document provided to the Court.)* |
| 09:20 | 8 | THE COURT:  Thank you. |
| 09:21 | 9 | Overruled.  Once again I'm going to allow this, |
| 09:21 | 10 | not for the truth of matter asserted.  These people aren't |
| 09:21 | 11 | before us.  He's a designated 30(b)(6) witness.  He can |
| 09:21 | 12 | testify on behalf of MGA. |
| 09:21 | 13 | Counsel. |
| 09:21 | 14 | *(Exhibit No. 24853 received in evidence.)* |
| 09:21 | 15 | *(Document displayed.)* |
| 09:21 | 16 | BY MR. ZELLER: |
| 09:21 | 17 | Q.  You'll see at the top this is an e-mail to a Dave |
| 09:21 | 18 | Malacrida.  By the way, you recognize this as an internal |
| 09:21 | 19 | MGA e-mail, correct? |
| 09:21 | 20 | MR. McCONVILLE:  Objection.  Misstates the |
| 09:21 | 21 | document. |
| 09:21 | 22 | BY MR. ZELLER: |
| 09:21 | 23 | Q.  Actually, let me rephrase that. I did misstate that.  I |
| 09:21 | 24 | apologize. |
| 09:21 | 25 | You recognize this as an e-mail that MGA produced in |

CV 04-9049 DOC – 4/6/2011 – Day 47, Volume 1 of 4

40

| 09:22 | 1 | this case, correct? |
| 09:22 | 2 | A.   It has an MGA production number, yes. |
| 09:22 | 3 | Q.   Let's go to the top.  You'll see it's addressed to a |
| 09:22 | 4 | Dave Malacrida, and it's dated February 7, 2006.  Do you see |
| 09:22 | 5 | that? |
| 09:22 | 6 | A.   Yes. |
| 09:22 | 7 | Q.   And Dave Malacrida was a PR person at MGA at the time, |
| 09:22 | 8 | correct? |
| 09:22 | 9 | A.   Yes, that's correct. |
| 09:22 | 10 | Q.   And you'll see that the subject is "Toy journalist at |
| 09:22 | 11 | About.com, a *New York Times* company."  Do you see that? |
| 09:22 | 12 | A.   Yes. |
| 09:22 | 13 | Q.   And you do know that About.com is a web publication |
| 09:22 | 14 | that's done by the *New York Times*, correct? |
| 09:22 | 15 | MR. McCONVILLE:  Objection.  No foundation. |
| 09:22 | 16 | THE COURT:  Overruled. |
| 09:22 | 17 | THE WITNESS:  I only know what it says in the |
| 09:22 | 18 | e-mail.  And it does say About.com is part of the |
| 09:22 | 19 | *New York Times* company. |
| 09:22 | 20 | BY MR. ZELLER: |
| 09:22 | 21 | Q.   Then take a look at the e-mail at the bottom of this |
| 09:22 | 22 | page from Dave Malacrida, so you'll see that this is written |
| 09:22 | 23 | by the MGA PR person, right?  Do you see that? |
| 09:23 | 24 | A.   Uh, yes. |
| 09:23 | 25 | Q.   And it says, "Hi, do you have a number I can call you |

CV 04-9049 DOC – 4/6/2011 – Day 47, Volume 1 of 4

41

| | | |
|---|---|---|
| 09:23 | 1 | at today?  I know that Denise Van Patten has an appointment |
| 09:23 | 2 | with Rachel who works for me also.  Best, Dave." |
| 09:23 | 3 | Do you see that? |
| 09:23 | 4 | A.   Yes. |
| 09:23 | 5 | Q.   And Rachel was someone else who worked in the PR |
| 09:23 | 6 | department for MGA at the time, correct? |
| 09:23 | 7 | MR. McCONVILLE:  Objection.  No foundation. |
| 09:23 | 8 | THE COURT:  Overruled. |
| 09:23 | 9 | THE WITNESS:  I don't know that. |
| 09:23 | 10 | BY MR. ZELLER: |
| 09:23 | 11 | Q.   And it's true that the toy journalist at About.com |
| 09:23 | 12 | who's being referenced here the subject is, in fact, Denise |
| 09:23 | 13 | Van Patten? |
| 09:23 | 14 | MR. McCONVILLE:  Objection.  No foundation.  Calls |
| 09:23 | 15 | for hearsay. |
| 09:23 | 16 | THE COURT:  Overruled. |
| 09:23 | 17 | THE WITNESS:  I can only reference what it says in |
| 09:23 | 18 | the e-mail.  I -- I don't know what the reference to Denise |
| 09:24 | 19 | Van Patten is.  I can only know -- "Thank you for the |
| 09:24 | 20 | reply." |
| 09:24 | 21 | BY MR. ZELLER: |
| 09:24 | 22 | Q.   You recognize that this is an e-mail exchange that |
| 09:24 | 23 | shows exactly -- |
| 09:24 | 24 | A.   Yeah. |
| 09:24 | 25 | Q.   -- the fact that MGA was well aware that Denise |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

42

| | | |
|---|---|---|
| 09:24 | 1 | Van Patten was a journalist when she was invited into the |
| 09:24 | 2 | MGA toy fair showroom in 2006, correct? |
| 09:24 | 3 | A.   I can't say that.  I know that she was a -- uh, in this |
| 09:24 | 4 | here it seems to say that she's a journalist.  But she's |
| 09:24 | 5 | also a retailer.  I don't know exactly how she got into the |
| 09:24 | 6 | MGA showroom. |
| 09:24 | 7 | Q.   Because you didn't investigate, correct? |
| 09:24 | 8 | A.   That's not correct. |
| 09:24 | 9 | Q.   Well, what did you do to find out before you made an |
| 09:24 | 10 | accusation that somehow she got in, um, not -- posing as |
| 09:24 | 11 | someone other than a journalist? |
| 09:24 | 12 | MR. McCONVILLE:  Objection.  Argumentative. |
| 09:24 | 13 | THE WITNESS:  I didn't make that accusation. |
| 09:24 | 14 | THE COURT:  Sustained.  It's argumentative, |
| 09:24 | 15 | Counsel.  Just reask the question. |
| 09:24 | 16 | BY MR. ZELLER: |
| 09:24 | 17 | Q.   Please tell us the full basis you had for the prior |
| 09:24 | 18 | testimony that you gave about doubts that you had that |
| 09:24 | 19 | Denise Van Patten was invited into the MGA showroom as a |
| 09:25 | 20 | journalist? |
| 09:25 | 21 | MR. McCONVILLE:  Objection.  Misstates the |
| 09:25 | 22 | testimony. |
| 09:25 | 23 | THE COURT:  Overruled. |
| 09:25 | 24 | THE WITNESS:  I just honestly said that I don't |
| 09:25 | 25 | know how she got into the -- there.  And I still don't.  I |

| 09:25 | 1 | don't know what -- she represented herself as either a |
|---|---|---|
| 09:25 | 2 | retailer or a journalist or both.  I don't know.  This was |
| 09:25 | 3 | between Mr. Malacrida -- I don't know. |
| 09:25 | 4 | BY MR. ZELLER: |
| 09:25 | 5 | Q.   The question is, what was your basis for suggesting |
| 09:25 | 6 | that Denise Van Patten was invited into the MGA showroom in |
| 09:25 | 7 | any capacity other than as a journalist? |
| 09:25 | 8 | MR. McCONVILLE:  Objection.  Misstates his |
| 09:25 | 9 | testimony. |
| 09:25 | 10 | THE COURT:  Overruled. |
| 09:25 | 11 | THE WITNESS:  I -- again, Counselor, I just said |
| 09:25 | 12 | that I don't know how she got into the showroom or under |
| 09:25 | 13 | what basis.  As she was both a retailer and apparently a |
| 09:25 | 14 | journalist, it could have been either.  That's all I've |
| 09:25 | 15 | said. |
| 09:25 | 16 | BY MR. ZELLER: |
| 09:25 | 17 | Q.   Who told you she was a retailer as opposed to a |
| 09:26 | 18 | journalist? |
| 09:26 | 19 | A.   Uh, you know, I -- I've talked to so many people.  I |
| 09:26 | 20 | can't recall exactly who.  I think there's a blog site she |
| 09:26 | 21 | maintains where I think I saw something at some point in |
| 09:26 | 22 | time where she mentions she's a retailer.  But again, the |
| 09:26 | 23 | amount of documentation that I've reviewed over, you know, |
| 09:26 | 24 | 20-plus hours, I think, of depositions, I can't recall |
| 09:26 | 25 | specifically. |

Case 2:04-cv-09049-DOC-RNB   Document 10438   Filed 04/08/11   Page 44 of 56   Page ID #:316928
CV 04-9049 DOC – 4/6/2011 – Day 47, Volume 1 of 4

44

| | | |
|---|---|---|
| 09:26 | 1 | Q.   I'm asking specifically who told you, even generally, |
| 09:26 | 2 | that she was a retailer? |
| 09:26 | 3 | A.   I can't tell you.  It's -- it's probably something that |
| 09:26 | 4 | I read from her blog. |
| 09:26 | 5 | Q.   Isn't it true that you don't want to admit that MGA |
| 09:26 | 6 | knowingly invited Denise Van Patten into its New York Toy |
| 09:26 | 7 | Fair showroom because you recognize that showing products, |
| 09:26 | 8 | giving product information to the press means it cannot be a |
| 09:26 | 9 | trade secret? |
| 09:26 | 10 | MR. McCONVILLE:  Objection.  Argumentative and |
| 09:26 | 11 | compound. |
| 09:26 | 12 | THE COURT:  Overruled.  Overruled. |
| 09:26 | 13 | THE WITNESS:  That's absolutely an incorrect |
| 09:26 | 14 | statement, Counselor. |
| 09:26 | 15 | BY MR. ZELLER: |
| 09:26 | 16 | Q.   Isn't it true that when MGA shared information with |
| 09:27 | 17 | Denise Van Patten at the New York Toy Fair, that it invited |
| 09:27 | 18 | into -- it invited her into its showroom, that MGA knew |
| 09:27 | 19 | whatever it shared with her was not a trade secret at that |
| 09:27 | 20 | point? |
| 09:27 | 21 | MR. McCONVILLE:  Objection.  No foundation. |
| 09:27 | 22 | THE COURT:  Overruled. |
| 09:27 | 23 | THE WITNESS:  Um, I think it's true that, you |
| 09:27 | 24 | know, whatever you -- you -- you give someone that you think |
| 09:27 | 25 | is gonna be published is, uh -- uh, you know, becomes public |

CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

45

| | | |
|---|---|---|
| 09:27 | 1 | information. |
| 09:27 | 2 | BY MR. ZELLER: |
| 09:27 | 3 | Q.   And isn't it true that MGA routinely invites many |
| 09:27 | 4 | members of the press into its New York Toy Fair showroom |
| 09:27 | 5 | every year? |
| 09:27 | 6 | A.   I don't think that's entirely correct.  I mean... |
| 09:28 | 7 | Q.   What's incorrect about it? |
| 09:28 | 8 | A.   Well, you know, I don't wish to split hairs, but I |
| 09:28 | 9 | don't know what -- you know, what you or I mean as "many" |
| 09:28 | 10 | may be different.  But it is true that at times, uh, MGA |
| 09:28 | 11 | like any other company will selectively give information to |
| 09:28 | 12 | the press that it would like to see, you know, become public |
| 09:28 | 13 | for all the typical PR reasons that companies wish to garner |
| 09:28 | 14 | PR.  But it also seeks to be in control of that information. |
| 09:28 | 15 | I think Ms. Van Patten herself, in one of her writings |
| 09:28 | 16 | that I read, indicated that she was not allowed to take any |
| 09:28 | 17 | pictures, so that MGA was considering that information it |
| 09:28 | 18 | did not want to see disseminated. |
| 09:28 | 19 | MGA, uh, puts -- when someone goes into a showroom, |
| 09:28 | 20 | that does not mean that they've seen everything in the |
| 09:29 | 21 | showroom.  It could very well mean that it just, uh -- you |
| 09:29 | 22 | know, they're segmented off and not show anything that's |
| 09:29 | 23 | live.  They might be shown one item that's live.  They may |
| 09:29 | 24 | be shown nothing.  They just might have discussions about |
| 09:29 | 25 | things. |

CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

46

09:29   1        Uh, but it's -- someone being invited to the showroom

09:29   2    is not the equivalent of being allowed to see everything

09:29   3    that's in the showroom.  There are choices that are made by

09:29   4    MGA, and it's based on those choices that information is

09:29   5    given to certain members of the press.

09:29   6        We like to -- you know, MGA, like most companies, likes

09:29   7    to be in control of what is disseminated.

09:29   8    Q.   By the way, you know we're on the clock here, right?

09:29   9    People forewarned you of that?

09:29   10   A.   No.

09:29   11   Q.   Well, you see there is these times over there?  We only

09:29   12   have a few hours left, so I would appreciate it if you

09:29   13   keep --

09:30   14          MR. McCONVILLE:  Objection.  Argumentative.

09:30   15   Q.   -- your answers short.

09:30   16   A.   Sure.

09:30   17   Q.   Isn't it true that MGA's practice is to invite the

09:30   18   press into its toy fair showrooms every year?

09:30   19   A.   Um, I don't know about every year.  It does invite

09:30   20   people into its showrooms, uh, selectively, but it -- always

09:30   21   into a segmented area of the showroom.

09:30   22   Q.   Isn't it true that MGA has a policy of allowing the

09:30   23   press into its showrooms at New York Toy Fair?

09:30   24   A.   That's an overbroad statement.  It vets who it's going

09:30   25   to allow into its showroom.

| | | |
|---|---|---|
| 09:30 | 1 | Q.   Please take a look at your deposition transcript, your |
| 09:30 | 2 | 30(b)(6) deposition transcript, of September 29, 2010, at |
| 09:30 | 3 | page 5566. |
| 09:30 | 4 | MR. McCONVILLE:  September 29? |
| 09:30 | 5 | MR. ZELLER:  Yes, sir.  September 29, 2010. |
| 09:31 | 6 | THE COURT:  What date? |
| 09:31 | 7 | MR. ZELLER:  September 29. |
| 09:31 | 8 | THE COURT:  I'm sorry, what page? |
| 09:31 | 9 | MR. ZELLER:  This is page 5566. |
| 09:31 | 10 | THE COURT:  My apologies.  Thank you. |
| 09:31 | 11 | *(Document provided to the witness.)* |
| 09:31 | 12 | MR. ZELLER:  This is lines 2 through 5. |
| 09:31 | 13 | MR. McCONVILLE:  Objection.  He wasn't designated |
| 09:31 | 14 | as a 30(b)(6) on this topic. |
| 09:31 | 15 | THE COURT:  Just a moment. |
| 09:31 | 16 | Just a minute. |
| 09:31 | 17 | Well, Counsel, the answer extends all the way back |
| 09:31 | 18 | to page 5564. |
| 09:31 | 19 | MR. ZELLER:  No.  The -- this is just the |
| 09:31 | 20 | question -- he had it reread.  He moved to strike it as |
| 09:31 | 21 | nonresponsive and asked for it to be reread, and then he |
| 09:32 | 22 | gave the answer. |
| 09:32 | 23 | THE COURT:  No.  Counsel, look at 5565, lines |
| 09:32 | 24 | 2 through 10 just to begin with.  I'm not going to allow |
| 09:32 | 25 | that reading. |

| | | |
|---|---|---|
| 09:32 | 1 | MR. ZELLER:  I'll try it a different way, then. |
| 09:32 | 2 | BY MR. ZELLER: |
| 09:32 | 3 | Q.   Isn't it true you talked with Isaac Larian about your |
| 09:32 | 4 | testimony? |
| 09:32 | 5 | MR. McCONVILLE:  Objection.  Relevance. |
| 09:32 | 6 | THE COURT:  Overruled. |
| 09:32 | 7 | MR. McCONVILLE:  And it's vague as to time. |
| 09:32 | 8 | THE COURT:  Well, I'm assuming that they talk if |
| 09:32 | 9 | he's a member of the organization.  Objection overruled. |
| 09:32 | 10 | I don't know where we're going with it, but they |
| 09:32 | 11 | probably talk.  Let's find out if they talk. |
| 09:32 | 12 | THE WITNESS:  With respect to today's |
| 09:32 | 13 | deposition -- not deposition testimony -- no.  We certainly |
| 09:32 | 14 | talked prior to some of my 30(b)(6) depositions as part of |
| 09:32 | 15 | my research, yes. |
| 09:32 | 16 | BY MR. ZELLER: |
| 09:32 | 17 | Q.   And isn't it true that, um, when you spoke to |
| 09:32 | 18 | Mr. Larian and you asked him a question of whether or not |
| 09:32 | 19 | the press was ever allowed to take pictures in the New York |
| 09:32 | 20 | Toy Fair showroom, he gave you an answer of a firm "no"? |
| 09:33 | 21 | A.   I think -- |
| 09:33 | 22 | Q.   It never happened? |
| 09:33 | 23 | MR. McCONVILLE:  Objection.  Publishing hearsay. |
| 09:33 | 24 | THE COURT:  Overruled. |
| 09:33 | 25 | THE WITNESS:  I think a more precise answer would |

CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

49

| | | |
|---|---|---|
| 09:33 | 1 | be that he told me that the firm policy of the company was |
| 09:33 | 2 | not to allow pictures to be taken at toy fair by anyone and |
| 09:33 | 3 | that we should beware in this -- that, you know, people do |
| 09:33 | 4 | carry cell phones and so forth, so that not to allow those |
| 09:33 | 5 | pictures to be taken.  That we had a firm policy. |
| 09:33 | 6 | BY MR. ZELLER: |
| 09:33 | 7 | Q.   Isn't it true that, in fact, MGA has routinely invited |
| 09:33 | 8 | television crews, news crews with video cameras into its |
| 09:33 | 9 | New York Toy Fair showrooms and allowed them to tape? |
| 09:33 | 10 | A.   I don't believe that's correct. |
| 09:33 | 11 | Q.   You've never heard of that occurring? |
| 09:33 | 12 | MR. McCONVILLE:  Objection.  Different question. |
| 09:33 | 13 | THE COURT:  Sustained. |
| 09:34 | 14 | BY MR. ZELLER: |
| 09:34 | 15 | Q.   Please take a look at Exhibit 24867. |
| 09:34 | 16 | (Document provided to the witness.) |
| 09:34 | 17 | BY MR. ZELLER: |
| 09:34 | 18 | Q.   Do you recognize this as an e-mail that MGA produced, |
| 09:34 | 19 | dated February 28, 2006? |
| 09:34 | 20 | MR. McCONVILLE:  Objection.  No foundation with |
| 09:34 | 21 | this witness. |
| 09:34 | 22 | THE COURT:  Could I see that e-mail, please. |
| 09:34 | 23 | (Document provided to the Court.) |
| 09:34 | 24 | THE COURT:  Thank you very much. |
| 09:34 | 25 | Ladies and gentlemen, I'll allow it, but once |

CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

50

| 09:34 | 1 | again, hearsay. It's not for the truth of matter asserted. |
| 09:34 | 2 | It's just the background of this industry from both Mattel |
| 09:35 | 3 | and MGA's perspective so you know as much about it as you |
| 09:35 | 4 | can. |
| 09:35 | 5 | MR. McCONVILLE: Can we get an offer of why it's |
| 09:35 | 6 | being offered if not for the truth? |
| 09:35 | 7 | THE COURT: Well, Counsel, it's being offered to |
| 09:35 | 8 | show apparently what happens in the industry and, quite |
| 09:35 | 9 | frankly, I'm not absolutely positive. |
| 09:35 | 10 | So, Counsel, ask a question. Let's move along. |
| 09:35 | 11 | MR. ZELLER: So if we can please pull that up. |
| 09:35 | 12 | *(Document displayed.)* |
| 09:35 | 13 | BY MR. ZELLER: |
| 09:35 | 14 | Q. Let's take a look at the first sentence. You recognize |
| 09:35 | 15 | this as addressed to Rachel Griffin, with a CC to Dave |
| 09:35 | 16 | Malacrida, who we talked about as the MGA person? |
| 09:35 | 17 | THE COURT: So I have a better record, and I'm not |
| 09:35 | 18 | being facetious, it's because of the 30(b)(6) designation. |
| 09:35 | 19 | He should know the industry, Counsel. |
| 09:35 | 20 | MR. McCONVILLE: Same objection, then, Your Honor. |
| 09:35 | 21 | THE COURT: Overruled. |
| 09:35 | 22 | BY MR. ZELLER: |
| 09:35 | 23 | Q. It's correct Dave Malacrida is the MGA PR person we |
| 09:35 | 24 | talked about earlier? |
| 09:35 | 25 | A. Yes. |

Case 2:04-cv-09049-DOC-RNB   Document 10438   Filed 04/08/11   Page 51 of 56   Page ID #:316935
CV 04-9049 DOC – 4/6/2011 – Day 47, Volume 1 of 4

51

| | | |
|---|---|---|
| 09:35 | 1 | Q.   He's on this e-mail, and it says, "Hi, Rachel, we met |
| 09:35 | 2 | at the toy fair.  My production crew was videotaping at your |
| 09:36 | 3 | showroom for a one-hour special for HGTV, Home and Garden |
| 09:36 | 4 | Television," and then continues on.  Do you see that? |
| 09:36 | 5 | A.   Yes. |
| 09:36 | 6 | Q.   And then, in fact, you'll see it's from a Carol Yancho, |
| 09:36 | 7 | Y-A-N-C-H-O, who is a senior producer of something called |
| 09:36 | 8 | Nancy Glass Productions. |
| 09:36 | 9 |          THE COURT:  Counsel, you should read the entire |
| 09:36 | 10 | document. |
| 09:36 | 11 | BY MR. ZELLER: |
| 09:36 | 12 | Q.   It says, "Thanks again for your help at the" –– |
| 09:36 | 13 | New York (sic) –– "toy fair.  We're writing and editing some |
| 09:36 | 14 | of the pieces now. |
| 09:36 | 15 |      I was wondering if you could e-mail me releases or more |
| 09:36 | 16 | information about the Bratz Diamondz line and any other new |
| 09:36 | 17 | Bratz items for spring/fall 2006," question mark, question |
| 09:36 | 18 | mark.  We're including Bratz in the doll segment, but I need |
| 09:36 | 19 | some more information for the piece.  Again, HGTV show won't |
| 09:36 | 20 | be airing until December 2006.  Thanks so much.  And please |
| 09:37 | 21 | give me a call if you have any questions.  Best regards, |
| 09:37 | 22 | Carol."  And then continues on. |
| 09:37 | 23 |      Do you see that? |
| 09:37 | 24 | A.   Yes. |
| 09:37 | 25 | Q.   And isn't it true that MGA in this instance invited a |

Case 2:04-cv-09049-DOC-RNB   Document 10438   Filed 04/08/11   Page 52 of 56   Page ID #:316936
CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

52

09:37    1    television crew into the showroom to do videotaping?

09:37    2    A.   I think it's important to note that the

09:37    3    December 2006 --

09:37    4              MR. ZELLER:  Move to strike.  It's nonresponsive.

09:37    5              THE COURT:  Overruled.

09:37    6              Finish your answer.

09:37    7              THE WITNESS:  I think it's important to note the

09:37    8    December 2006 airing date, which is almost 11 months from

09:37    9    February.  So it's clear that in this particular case, MGA

09:37   10    was allowing this because, by the time this aired, all of

09:37   11    these goods would have been on the store shelves.  So this

09:37   12    doesn't seem to violate any kind of MGA policy.

09:37   13    BY MR. ZELLER:

09:37   14    Q.   Mr. Jolicoeur, you just made that answer up on the

09:37   15    spot, didn't you?

09:37   16              MR. McCONVILLE:  Objection.  Argumentative.  It's

09:37   17    states in the document.

09:37   18              THE COURT:  Sustained.

09:37   19              THE WITNESS:  I read this e-mail last night and

09:38   20    picked it up immediately.  It's -- it's something that you

09:38   21    would pick up immediately.

09:38   22    BY MR. ZELLER:

09:38   23    Q.   So when you answered my question earlier about whether

09:38   24    MGA had ever invited any television or news crew into its

09:38   25    showroom and you said "No," you actually knew about this

CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

53

| | | |
|---|---|---|
| 09:38 | 1 | e-mail; is that true? |
| 09:38 | 2 | A.   I don't believe I said "No." |
| 09:38 | 3 |         MR. McCONVILLE:  Objection.  Misstates his |
| 09:38 | 4 | testimony. |
| 09:38 | 5 |         THE COURT:  Overruled.  I'll let the ladies and |
| 09:38 | 6 | gentlemen of the jury recall. |
| 09:38 | 7 | BY MR. ZELLER: |
| 09:38 | 8 | Q.   Let's go back to my original question. |
| 09:38 | 9 |      Isn't it true that this reflects that MGA invited a |
| 09:38 | 10 | television crew into its New York Toy Fair showroom and |
| 09:38 | 11 | allowed them to videotape the showroom for an hour? |
| 09:38 | 12 | A.   In this particular instance, yes. |
| 09:38 | 13 | Q.   And isn't it true that regardless of when that footage |
| 09:38 | 14 | was going to be aired, you have absolutely no document, no |
| 09:38 | 15 | basis for saying that the information, once it was already |
| 09:39 | 16 | videotaped by this television crew, was still trade secret? |
| 09:39 | 17 |         MR. McCONVILLE:  Objection.  Misstates the |
| 09:39 | 18 | document. |
| 09:39 | 19 |         THE COURT:  Overruled. |
| 09:39 | 20 |         THE WITNESS:  I think that's absolutely incorrect. |
| 09:39 | 21 | BY MR. ZELLER: |
| 09:39 | 22 | Q.   Please -- is there some agreement that you've seen that |
| 09:39 | 23 | they signed that said that they would keep it confidential? |
| 09:39 | 24 | A.   Well, it says here they're not gonna show it until |
| 09:39 | 25 | December 2006.  I've not read any other agreements, but |

CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

54

| | | |
|---|---|---|
| 09:39 | 1 | it's -- it's absolutely clear to me that the intent is to |
| 09:39 | 2 | show it after the goods are public. |
| 09:39 | 3 | Q.  Regardless of what the intent is as to when to air the |
| 09:39 | 4 | program, you understand that something is no longer a trade |
| 09:39 | 5 | secret once it is shared with a third party without an |
| 09:39 | 6 | obligation of confidentiality, right?  You know that? |
| 09:39 | 7 | A.  I don't -- I -- I'm not quite understanding what you're |
| 09:39 | 8 | saying.  It's clear to me that, you know, this was allowed |
| 09:39 | 9 | because this was gonna happen in December after the goods |
| 09:39 | 10 | were gonna be on the shelf. |
| 09:40 | 11 | Q.  Please point to us all the agreements and the |
| 09:40 | 12 | documentation and e-mails that MGA has stating that the |
| 09:40 | 13 | video footage that was taken of the showroom, which you said |
| 09:40 | 14 | didn't exist previously, could not be used until December -- |
| 09:40 | 15 | MR. McCONVILLE:  Objection. |
| 09:40 | 16 | BY MR. ZELLER: |
| 09:40 | 17 | Q.  -- of '06 as opposed to that's just when this network |
| 09:40 | 18 | was choosing to air it? |
| 09:40 | 19 | MR. McCONVILLE:  Objection.  Compound. |
| 09:40 | 20 | Argumentative.  Misstates the testimony. |
| 09:40 | 21 | THE COURT:  Overruled. |
| 09:40 | 22 | You can answer the question, sir. |
| 09:40 | 23 | THE WITNESS:  All I've seen is this e-mail.  I |
| 09:40 | 24 | can't go back to any other e-mails or agreements 'cause I |
| 09:40 | 25 | haven't seen them. |

CV 04-9049 DOC - 4/6/2011 - Day 47, Volume 1 of 4

55

| | | |
|---|---|---|
| 09:40 | 1 | BY MR. ZELLER: |
| 09:40 | 2 | Q.   You don't have any, correct? |
| 09:40 | 3 | MR. McCONVILLE:  Objection.  Misstates the |
| 09:40 | 4 | testimony. |
| 09:40 | 5 | THE COURT:  Overruled. |
| 09:40 | 6 | THE WITNESS:  I think I've just stated that I |
| 09:40 | 7 | don't have them. |
| 09:40 | 8 | MR. ZELLER:  Is now a good ahead time for a break, |
| 09:40 | 9 | Your Honor? |
| 09:40 | 10 | THE COURT:  This would be a perfect time for a |
| 09:40 | 11 | break. |
| 09:40 | 12 | You're admonished not to discuss this matter |
| 09:40 | 13 | amongst yourselves, nor form or express any opinion |
| 09:40 | 14 | concerning the case. |
| 09:40 | 15 | We'll come and get you at 10:00 o'clock. |
| 09:41 | 16 | Counsel, at 10:00 o'clock, please. |
| 09:41 | 17 | *(Recess held at 9:41 a.m.)* |
| 09:41 | 18 | *(Further proceedings reported by Denise* |
| 09:42 | 19 | *Paddock in Volume II.)* |
| 09:42 | 20 | -oOo- |
| 09:42 | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

CV 04-9049 DOC – 4/6/2011 – Day 47, Volume 1 of 4

56

09:42   1                          -oOo-

09:42   2

09:42   3                        CERTIFICATE

09:42   4

09:42   5        I hereby certify that pursuant to Section 753,

09:42   6   Title 28, United States Code, the foregoing is a true and

09:42   7   correct transcript of the stenographically reported

09:42   8   proceedings held in the above-entitled matter and that the

09:42   9   transcript page format is in conformance with the

09:42   10  regulations of the Judicial Conference of the United States.

09:42   11

09:42   12  Date:  April 6, 2011

09:42   13

09:42   14
09:42
09:42   15   _____
09:42
09:42   16        DEBBIE GALE, U.S. COURT REPORTER
09:42            CSR NO. 9472, RPR

09:42   17

        18

        19

        20

        21

        22

        23

        24

        25