UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HONORABLE DAVID O. CARTER, JUDGE PRESIDING

- - - - - - -

# CERTIFIED TRANSCRIPT

| | |
|---|---|
| MATTEL, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| MGA ENTERTAINMENT, INC., et al., ) | No. CV 04-9049-DOC (RNBx) |
| ) | Day 47 |
| ) | Volume 4 of 4 |
| Defendants. ) | |
| _____) | |

REPORTER'S DAILY TRANSCRIPT OF PROCEEDINGS
JURY TRIAL
SANTA ANA, CALIFORNIA
WEDNESDAY, APRIL 6, 2011

Denise Paddock, CSR 10199, CMRS, RMR, CRR
Federal Official Court Reporter
United States District Court
411 West 4th Street, Room 1-053
Santa Ana, California 92701
transcripts@ocrecord.com www.ocrecord.com
040611 DCCD CR 9D CARTER MATTEL CIVIL JURY TRIAL DAY 47 V4
04/06/2011

**APPEARANCES OF COUNSEL:**

FOR PLAINTIFF MATTEL, INC., ET AL.:

     QUINN EMANUEL URQUHART & SULLIVAN LLP
     BY: JOHN QUINN
        WILLIAM PRICE
        MICHAEL T ZELLER
        Attorneys at Law
     865 S Figueroa Street, 10th Floor
     Los Angeles, CA 90017-2543
     213-443-3000

FOR DEFENDANT MGA ENTERTAINMENT, INC., ET AL:

     ORRICK HERRINGTON & SUTCLIFFE LLP
     BY: THOMAS S McCONVILLE
        Attorney at Law
     4 Park Plaza, Suite 1600
     Irvine, CA 92614
     949-567-6700

     - AND -

     ORRICK HERRINGTON & SUTCLIFFE LLP
     BY: ANNETTE L HURST
        Attorney at Law
     405 Howard Street
     San Francisco, CA 94105
     415-773-5700

     KELLER RACKAUCKAS LLP
     BY:  JENNIFER L KELLER
        Attorney at Law
     18500 Von Karman Avenue, Suite 560
     Irvine, CA 92612
     949-476-8700

```
1    APPEARANCES OF COUNSEL (Continued):

2

3

4      FOR CARLOS GUSTAVO MACHADO GOMEZ:

5             LAW OFFICES OF MARK E OVERLAND
              BY: Mark E Overland
6                  Attorney at Law
              100 Wilshire Boulevard, Suite 950
7             Santa Monica, CA 90401
              310-459-2830
8
              -AND-
9
              SCHEPER KIM AND HARRIS LLP
10            BY: ALEXANDER H COTE
                   Attorney at Law
11            601 West Fifth Street, 12th Floor
              Los Angeles, CA 90071-2025
12            213-613-4655

13            ALSO PRESENT:

14            MGA ENTERTAINMENT, INC.
              BY: JEANINE PISONI
15                 Attorney at Law
              16360 Roscoe Boulevard, Suite 105
16            Van Nuys, California 91406

17

18   ALSO PRESENT:

19            KEN KOTARSKI, Mattel Technical Operator

20            MIKE STOVALL, MGA Technical Operator

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

1        SANTA ANA, CALIFORNIA; WEDNESDAY, APRIL 6, 2011

2                  Day 47, Volume 4 of 4

3                     P.M. SESSION

4        (Open court - jury not present.)

15:09  5        THE COURT:  All right.  Let's go back on the record

6    for just a moment, and let's see how we're going to

7    distribute the time regardless of the court's eventually

8    rulings concerning these contracts and this dispute between

9    the parties over the registrations, as well as the codes, for

15:09 10    a moment.

11        What I'm deeply concerned about is that you're

12    going to be arguing on Friday, and how are we going to

13    instruct before your argument, knowing that we're not willing

14    to split the argument and your lead counsel aren't here at

15:10 15    the present time, the two primary arguers, but each of you

16    are capable of giving me some ideas.

17        The only idea I have, Counsel, is that I'm being

18    forced into instructing at the end of the argument on Monday

19    morning.

15:10 20        MS. HURST:  Your Honor, we would think that if

21    Mattel calls all of its other witnesses and Mr. Bryant gets

22    here at noon, we should be able to instruct tomorrow

23    afternoon late.

24        THE COURT:  If I can, I will, of course.

15:10 25        So that means, then, when do I hear the Rule 50

 1    concerning Mr. Machado?

 2            MR. MCCONVILLE:  We've already argued it.

 3            MS. HURST:  It's been argued and submitted.

 4            THE COURT:  I know that, but I should only be

15:11  5    making those rulings at certain junctures.

 6            If you look at the code, the end of the plaintiff's

 7    case, the end of the defendant's case -- I mean, I have wide

 8    discretion, I just want to be certain that it's an

 9    appropriate time to speak to both of you about that; and

15:11 10    Mr. Overland's here, Mr. Cote's here, Mr. Quinn is here,

 11    Mr. Zeller and Mr. McConville and Ms. Hurst.

 12            What are your thoughts?  Do you want me to become

 13    involved in the Rule 50 concerning Machado at this point or

 14    do you want to wait until later tonight or tomorrow?

15:11 15            MR. OVERLAND:  You can do it now.

 16            MR. COTE:  Now, Your Honor.

 17            MS. HURST:  It's fine with us.

 18            THE COURT:  I want to see what Mr. Quinn and

 19    Mr. Zeller want.

15:11 20            (Discussion held off the record.)

 21            MR. ZELLER:  We don't really have a view on that,

 22    Your Honor.

 23            THE COURT:  Well, I want your opinion.  I want

 24    everyone's opinion on this.

15:12 25            It depends upon timing issues.  I want all

Case 2:04-cv-09049-DOC-RNB   Document 10441   Filed 04/08/11   Page 6 of 178   Page ID #:317139
CV 04-9049 DOC - 04/06/2011   Volume 4 of 4

6

 1    parties' opinions.

 2              MR. ZELLER:  Well, I mean we do think it should go

 3    to a -- to the jury.  You know, it's obviously one of these

 4    things the court can always hold in abeyance and decide

15:12  5    later.  You know, obviously, we don't know what exactly the

 6    court's thinking is, although I think I have a general

 7    understanding where the court is, generally, but it would

 8    certainly seem that taking a verdict on it would -- would

 9    make some sense.

15:12 10              THE COURT:  If we're going to solidify these

 11    instructions, then I think it would be appropriate that each

 12    of you knew where the Rule 50 stood concerning Machado; and

 13    I've got a -- I'll be right with you.

 14              (Pause in the proceedings.)

15:20 15              THE COURT:  We have an extraordinary amount of work

 16    that we need to accomplish tonight, and we're back on the

 17    record.

 18              The Rule 50 has been submitted to the court

 19    concerning MGA de Mexico, Carlos Gustavo, Machado Gomez,

15:21 20    MGA Entertainment, Inc., and Mr. Larian's motion for judgment

 21    as a matter of law.

 22              I'm going to hand the clerk four copies, two --

 23    strike that -- one -- one to each party.

 24              I'm handing the clerk three copies.

15:21 25              One to each party, two copies for the clerk and the

Case 2:04-cv-09049-DOC-RNB   Document 10441   Filed 04/08/11   Page 7 of 178   Page ID #:317140
CV 04-9049 DOC - 04/06/2011   Volume 4 of 4

7

| | |
|---|---|
| 1 | court will keep the original.  The motions are granted for |
| 2 | the reasons contained in this disposition. |
| 3 | Judgment's entered against Mattel on this claim for |
| 4 | trade secret misappropriation against Machado and MGA Mexico. |
| 15:21 5 | Judgment is also entered against Mattel de Mexico |
| 6 | on its claim for trade secret misappropriation against |
| 7 | Machado, MGA Mexico, MGA AE and Mr. Larian. |
| 8 | I will resolve that with the jury in an appropriate |
| 9 | instruction that I already asked the parties to consider on a |
| 15:22 10 | prior date. |
| 11 | That's the final order of the court and I'll be |
| 12 | back with you in just a moment. |
| 13 | And Mr. Overland and Mr. Cote can leave. |
| 14 | MR. COTE:  Thank you, Your Honor. |
| 15:22 15 | MR. OVERLAND:  Thank you. |
| 16 | (Recess taken.) |
| 17 | THE COURT:  All right.  We're on the record. |
| 18 | (Pause in the proceedings.) |
| 19 | THE COURT:  I want you guys to do some research for |
| 15:37 20 | me, basically, on a case I don't know what to do with. |
| 21 | (Pause in the proceedings.) |
| 22 | THE COURT:  Okay.  We're on the record; all counsel |
| 23 | are present. |
| 24 | I wanted you both to look at Turner Broadcasting |
| 15:38 25 | again, Turner Entertainment.  You've got two copies. |

Case 2:04-cv-09049-DOC-RNB   Document 10441   Filed 04/08/11   Page 8 of 178   Page ID #:317141
CV 04-9049 DOC - 04/06/2011 - Volume 4 of 4

8

```
 1            I don't know what to do with the direction, at the
 2   present time, from the Ninth Circuit in Footnote No. 4 in
 3   terms of judicial notice and I want to argue this and I want
 4   directions from the parties about what you think the
 5   appropriate procedure is.
 6            (Pause in the proceedings.)
 7            THE COURT:  Okay.  Here's the next copy of the
 8   special verdicts, always still open for discussion up until,
 9   you know; okay.
10            MR. MCCONVILLE:  I could always go in with the jury
11   if they have questions, Judge.
12            THE COURT:  I'm going to role out a set of
13   instructions next just because I'm trying to get it to your
14   trial counsel first before we get anymore involved in the
15   legal descriptions tonight, so Bill and Jennifer have it as
16   much as possible, and you, John, and I want to get you out of
17   here as quick as possible.
18            Well, no, tomorrow's kind of an easy day, isn't it?
19            MR. QUINN:  Well, whatever free time there is --
20            THE COURT:  Trust me.  I'll work all night with
21   you, if I have to, just to give time for you essentially,
22   since you're splitting the argument.
23            Do you guys want to split the argument?
24            MR. MCCONVILLE:  No -- yes, but no.
25            (Laughter.)
```

1           THE COURT:  You've been banned.

2           MS. HURST:  We've got to get these done tonight,

3    though.

4           (Recess taken.)

16:16 5     THE COURT:  Okay.  Here's what you've got to do.

6           I'll work as hard as you guys can possibly work to

7    get this to your counsel, but you guys have got to help me

8    too.

9           I want you to assume that these are coming in from

16:16 10   Carter Bryant, like the list you gave me.

11          MR. ZELLER:  We have it.

12          THE COURT:  Okay.  And I can always cross it out if

13   it doesn't come in.

14          MS. HURST:  Right; and we have one for them as

16:16 15   well.

16          THE COURT:  You've got to give me your charts so I

17   see that completed and I've got a competence level that I'm

18   not moving on to Round 2 and getting fragmented.

19          And then we've got to get on the record and you've

16:16 20   got to make a record one more time because this perfection is

21   for someone else, these.  Fair enough?

22          I'm going to send out the copy of instructions to

23   you within ten minutes so we can go through them again.

24          And if we can get those in some basic form, what

16:16 25   I'd like to do is get them out to Jennifer and Bill and John

CV 04-9049 DOC - 04/06/2011 - Volume 4 of 4

```
 1    so you can look at them and then we can go on with the rest

 2    of them this evening, and that way your counsel has it and

 3    then if we have to make a change it's like one typo or word.

 4          But at least they're sitting at home looking at

16:17  5    them for two nights because we can always self-correct them

 6    ourself.

 7          MS. HURST:  I think we should go through them.

 8          THE COURT:  I think that's the best way of handling

 9    them because I have my trial counsel out front.

16:17 10          MS. HURST:  As long as we can stay on the record

11    tonight and get through these instructions.

12          THE COURT:  I've got the right to change them, but

13    they ought to have 90 percent of them and then you can call

14    them tonight if there is a change.

16:17 15          MS. HURST:  Can I give the court an authority on

16    this registration issue?

17          THE COURT:  In just a moment.

18          I'm going to get on the record and take all that,

19    but I'm not going to get fragmented right now.

16:17 20          MS. HURST:  That's all right.

21          THE COURT:  I've got five things in the back going

22    on in the works right now to try to help you.

23          I think you want me instructing tomorrow.

24          MS. HURST:  We do.

16:18 25          THE COURT:  And if you don't give me time --
```

UNITED STATES DISTRICT COURT

 1          MS. HURST:  I'm leaving you alone.

 2          (Recess taken.)

 3          THE COURT:  Okay.  The yellow tabs mean I'm

 4   worried; okay.

16:19  5          The yellow tabs on these aren't the only ones, of

 6   course, but it means I've got some concern.

 7          Here's two copies.

 8          It means I've got some concern and I need help.

 9          (Recess taken.)

17:22 10          THE COURT:  We're on the record; all counsel are

11   present.

12          First, just an informal matter, while we're on the

13   record, there is a lectern that was brought up.

14          Do you want to use that lectern when you argue to

17:22 15   the jury?

16          And where it will be located is here, here, and we

17   set up a portable microphone and you're speaking to the jury.

18          MR. QUINN:  Yes.

19          THE COURT:  You face them.

17:22 20          MR. QUINN:  Yes.

21          MR. MCCONVILLE:  Yes.

22          THE COURT:  Okay.  We'll use it.

23          We can thank the US attorney's office for supplying

24   it to us.

17:23 25          All right.  The second thing is that the --

1    concerning the special verdict.

2            Let's go through this one more time so I can get

3    this finally word processed while we're going through the

4    instructions, Page 1.

17:23 5          Page 1, Page 2 --

6            MS. HURST:  Your Honor, on Page 1, I think the

7    Question 2 should be "Has Mattel proven that it owns the

8    following ideas?"

9            THE COURT:  Do you want -- well, second -- first of

17:24 10   all, "the following ideas" and "Jade" should be stricken out.

11           MS. HURST:  Right.

12           THE COURT:  We have names, Bratz --

13           MS. HURST:  And "the concept for" blah, blah, blah.

14           THE COURT:  Yeah; "The concept for a multiethnic

17:24 15   group of" what -- of "hip dolls"?

16           MR. ZELLER:  We think that No. 2 should just read:

17   "Has Mattel proven that it owns the following:"

18           THE COURT:  Colon.

19           MR. ZELLER:  Because it -- certainly the concept

17:25 20   that we described here is more than just ideas.

21           THE COURT:  Okay.  "The following:" --

22           MS. HURST:  If it's going to say that, then the

23   first line needs to be "The idea for the name 'Bratz'."

24           THE COURT:  All right.  Let me get the best

17:25 25   suggestion from Mattel first.

1          How do you want this to read?

2          MR. ZELLER:  I think it should read:

3          "No. 2, Has Mattel proven that it owns the

4     following:"

17:25 5          And then the first one, I agree, should say "The

6     idea for the name 'Bratz'."

7          Or -- or "The idea for the name 'Bratz'."

8          THE COURT:  "The idea for the name 'Bratz'."

9          2 would just read:  "Has Mattel proven that it owns

17:26 10     the following:"  And then it would drop down to, what, the

11     name "Bratz"?

12          MR. ZELLER:  "The idea for the name 'Bratz'."

13          THE COURT:  "The idea for the name 'Bratz'."  And I

14     would take out the word "ideas"; right?"

17:27 15          MR. ZELLER:  Correct.

16          THE COURT:  Okay.  Now, let me get MGA's best

17     suggestion.

18          MS. HURST:  I think that's fine.

19          THE COURT:  I'm going to read it one more time:

17:27 20          "Has Mattel proven that it owns the following:"

21          "The idea for the name 'Bratz'."  I would strike

22     out "ideas" for the name "Bratz" and "Jade" in the first

23     line.

24          And then I would drop down to the second box, the

17:27 25     concept of multiethnic, hip, et cetera, Page 2.

1          MS. HURST:  Your Honor, on Question 1 --

2          THE COURT:  Question 1.

3          MS. HURST:  -- we think it should say "Has Mattel

4    proven that it owns the copyrights in the following:"

17:28  5          THE COURT:  That might be legally correct and isn't

6    it confusing to the jury?

7          MR. ZELLER:  Yeah, it is.  I don't think it's legal

8    and correct either for that matter.

9          THE COURT:  Yeah, I'm concerned about that also.

17:28 10          MR. ZELLER:  MGA raised that before and I thought

11    it did not -- was not going to be accepted.

12          MS. HURST:  Your Honor, it is legally correct and

13    it is not confusing.  The jury is being instructed repeatedly

14    on how to determine ownership of copyright.  That's the whole

17:28 15    point.

16          The trade secrets are being listed separately in

17    the trade secret chart, so it's not confusing from that

18    perspective.

19          THE COURT:  Okay.

17:28 20          MR. ZELLER:  Actually, that's completely incorrect.

21          The court will recall that the buckets that we

22    created, pursuant to the court's order, also listed --

23          THE COURT:  The court's suggestion.

24          MR. ZELLER:  Okay.  I apologize.

17:28 25          THE COURT:  That was not an order, I want that

 1    absolutely clear.

 2              And let me continually repeat that.

 3              Quite the opposite, I was concerned that if Mattel

 4    got a large verdict, it might be attacked and that that

17:29 5   verdict wouldn't stand in terms of just a big number.  So I

 6    don't want to ever be put in the position that I'm ordering

 7    this at all.

 8              MR. ZELLER:  I'll describe it more neutrally as the

 9    chart.

17:29 10             The court will recall that in the chart that we

 11   prepared and that was filed with the court, we, in fact, did

 12   list tangibles that included the sculpt and the like, and so,

 13   it would be, in fact, incorrect here to say that it owns the

 14   copyrights in the following items because there's more than

17:29 15  that at issue.

 16             MS. HURST:  Then we need separate questions,

 17   because the legal test for ownership of the copyright and the

 18   trade secret are not the same.

 19             THE COURT:  Okay.

17:29 20             MS. HURST:  And it cannot be all lumped into one,

 21   Your Honor.

 22             THE COURT:  Okay.  Thank you.

 23             Page 2.

 24             And remember, also, special verdict forms are

17:29 25  simply that, they're verdict forms, and of course, the court

UNITED STATES DISTRICT COURT

| | |
|---|---|
| 1 | has to instruct appropriately, but the instructions are what |
| 2 | govern, so Page 2. |
| 3 | MR. ZELLER:  On No. 3 there is a TX number that |
| 4 | needs to be inserted. |
| 17:30 5 | THE COURT:  All right.  Which -- |
| 6 | MR. ZELLER:  And this is after "Ooh La La Cloe |
| 7 | Doll." |
| 8 | THE COURT:  Okay.  And what's that number? |
| 9 | MR. ZELLER:  That is 17546. |
| 17:30 10 | THE COURT:  TX 17546. |
| 11 | Do you agree, Ms. Hurst? |
| 12 | MS. HURST:  Yes. |
| 13 | THE COURT:  All right.  Anything else from Mattel |
| 14 | on Page 2?  And then I'll turn to MGA. |
| 17:30 15 | MR. ZELLER:  No. |
| 16 | THE COURT:  Ms. Hurst, for MGA. |
| 17 | MS. HURST:  Your Honor, the last sentence here |
| 18 | makes it particularly acute that they have to satisfy the |
| 19 | copyright ownership -- |
| 17:30 20 | THE COURT:  I'm sorry, you lost me. |
| 21 | I want you to read the question and I want you to |
| 22 | read what you are concerned about. |
| 23 | MS. HURST:  No. 3, the last sentence says, "To |
| 24 | determine whether Mattel owns a valid copyright in a |
| 17:31 25 | particular creative work, refer to your answers in |

1    Question 1."

2              Question 1 has got to ask about copyright.

3              THE COURT:  Okay.  I can consider that.

4              And then the same problem occurs in Question 4,

17:31 5    obviously?

6              MS. HURST:  Yes.

7              THE COURT:  Okay; and that's all referenced back to

8    Page 1, Question 1.  Okay.

9              MR. ZELLER:  If I could briefly address that,

17:31 10   Your Honor.

11             No. 1 is -- we talked about on that first

12   question -- it would not just simply be "copyright."

13             No. 2, if we are going to get into this, then I

14   think, in fairness, we should have to put our -- should be

17:31 15   able to put our registrations in front of the jury.  The law

16   is is that that can be used as evidence --

17             THE COURT:  I understand that.

18             MR. ZELLER:  -- to establish ownership.

19             I mean, we prefer not to, but if -- MGA seems to be

17:32 20   trying to create a Catch 22 for us, which is we don't put

21   them in, no subject matter jurisdiction, which we think is

22   wrong.  If we do put them in then basically it will cause

23   jury confusion and prejudice to MGA.

24             MS. HURST:  May I respond?

17:32 25             THE COURT:  Sure.

Case 2:04-cv-09049-DOC-RNB   Document 10441   Filed 04/08/11   Page 18 of 178   Page ID #:317151
CV 04-9049 DOC - 04/06/2011 - Volume 4 of 4

18

1    MS. HURST:  The registrations are an element of

2    proof after this -- after they're an element of the claim,

3    after the Supreme Court decision in *Reed Elsevier* and that's

4    discussed in *Cosmetic Ideas* at 606 F.3d 612.

17:32  5    We're not saying that they can't put them in; we're

6    saying that they have to have a sponsoring witness who is

7    prepared to come in and testify about them.

8    They had a 30(b)(6) witness on this, his name was

9    Patrick Avakian, he's a Mattel employee, they can produce

17:32 10    him, he can testify without waiver to our position that they

11    should have done it in their case-in-chief.

12    That's what should have happened.

13    He was a 30(b)(6) witness, he came and testified

14    about their registrations.  There's no reason why they can't

17:33 15    produce him to do that.

16    THE COURT:  Mr. Zeller?

17    MR. ZELLER:  Nothing further.

18    THE COURT:  Okay.  Thank you.

19    Page 3, Question 5.

17:33 20    MR. ZELLER:  Our concern is the column 1 "Creative

21    works infringed byproduct."

22    THE COURT:  And the concern is?

23    MR. ZELLER:  Well, I think on its -- on its face

24    it's going to have the jury potentially just throw up its

17:33 25    hands and then decide "no."  As opposed to having to figure

```
 1   out and go through every drawing and every sculpt.

 2             THE COURT:  Okay.

 3             MR. ZELLER:  Because it says to list the specific

 4   creative work that the product infringes.

17:34 5            THE COURT:  Okay.  MGA?

 6             MS. HURST:  We disagree.  We think the columns

 7   should stay.  They're combinations of underlying works and

 8   accused works here that clearly would not satisfy the

 9   requisites under the Act and so this is a necessary safeguard

17:34 10  to guard against the jury making an improper decision in that

11   regard.

12             THE COURT:  Okay.  Page 4, Question 6.

13             MS. HURST:  Your Honor, also the way that chart is

14   numbered, it looks like it should be Column 1 in Question 1?

17:34 15  Am I right?

16             Either that or the columns should be renumbered?

17             THE COURT:  I don't understand; I apologize.

18             MS. HURST:  It's okay -- in mine -- and I don't

19   know if yours is the same -- in Question 5 --

17:35 20            THE COURT:  Wait, just a moment.  I just handed out

21   a new chart too.

22             Did you get that chart?

23             MS. HURST:  I think so, I think I have the new one.

24             THE COURT:  Let me look at it.

17:35 25            MS. HURST:  But in Question 5, sub-Paragraph 1, the
```

UNITED STATES DISTRICT COURT

| | |
|---|---|
| 1 | very last number in the parenthetical is Column 2. |
| 2 | Does yours say Column 2? |
| 3 | I think this should be Column 1 or this should be |
| 4 | renumbered. |
| 17:35 5 | THE COURT:  Oh, I've got it.  I've got it. |
| 6 | I didn't see that. |
| 7 | Okay.  What else from MGA?  Anything? |
| 8 | MS. HURST:  No. |
| 9 | THE COURT:  Mattel? |
| 17:36 10 | All right.  Page 4, No. 6. |
| 11 | Now, that was my best effort after our discussion |
| 12 | last evening to try to clear up the confusion on the statute |
| 13 | of limitations. |
| 14 | Okay.  So either party -- Mattel? |
| 17:36 15 | MR. ZELLER:  No. 1, we -- we believe that this |
| 16 | standard where it talks about "a reasonable person to |
| 17 | suspect" is not the -- is not the right standard. |
| 18 | This would also apply to the jury instructions and |
| 19 | the Ninth Circuit has said -- and this is in *Polar Bear*, |
| 17:37 20 | "That the statute of limitations does not prohibit the |
| 21 | recovery of damages incurred more than three years prior to |
| 22 | the filing of the suit if the copyright plaintiff was unaware |
| 23 | of the infringement and that lack of knowledge was reasonable |
| 24 | under the circumstances." |
| 17:37 25 | So that's -- that's the articulated standard for |

1    statute of limitations in the copyright arena for the -- per

2    the Ninth Circuit in *Polar Bear*.

3         In standard, and particularly in use of its term

4    "suspect" -- which it doesn't even really say "suspect"

17:37  5    what -- we don't think states the correct standard.

6         No. 2, we -- we think that the December 7th, 2001

7    date, which we think was in prior versions, should be in here

8    as well.

9         That, the court will recall, was the date three

17:38 10    years before the date when the intervention stipulation was

11    signed by the then presiding judge in this case.

12         The final point, Your Honor, is is that we believe

13    that the fraudulent concealment question should be asked

14    here.

17:38 15         That would be in addition, of course.

16         THE COURT:  Okay.  MGA.

17         MS. HURST:  We disagree and think the standard is

18    stated correctly.  I've said this before and I'll just say it

19    for the record, we just -- we think that the court should

17:39 20    decide the relation-backdate and ask a yes or no question

21    about the statute of limitations.

22         Having said that, I'll move on.

23         Mattel previously agreed that this December 7, 2001

24    date should not be present, so I'm not sure why they changed

17:39 25    their position on that now.

| | |
|---|---|
| 1 | THE COURT:  We don't have to ask the motivation. |
| 2 | You ask that it be added back in. |
| 3 | MR. ZELLER:  We're all puzzled over here.  We |
| 4 | didn't remember asking that it come out, but we do think it |
| 17:39 5 | should be in there regardless of -- |
| 6 | THE COURT:  That's good enough. |
| 7 | MS. HURST:  November 23rd, 2002 -- actually, in our |
| 8 | view, neither December 7, 2001, nor November 23rd, 2002, |
| 9 | should be in there because the court has said that it will |
| 17:39 10 | apply equitable tolling.  The only basis for those dates to |
| 11 | be considered would be some misguided theory of equitable |
| 12 | tolling, so that shouldn't be there. |
| 13 | THE COURT:  Okay. |
| 14 | MS. HURST:  We obviously disagree about fraudulent |
| 17:40 15 | concealment. |
| 16 | But I think the court's new instructions about what |
| 17 | to do with the answer "yes" or "no" takes care of the problem |
| 18 | that we discussed last night. |
| 19 | THE COURT:  Okay. |
| 17:40 20 | Page 5, Question 7. |
| 21 | Page 5, Question 8. |
| 22 | Page 5, Question 9. |
| 23 | Any comments on any of those three questions before |
| 24 | I turn the page? |
| 17:40 25 | All right.  Now, do I have my descriptions and how |

1    can I incorporate those into my chart tonight?

2          MR. ZELLER:  We -- we do have some -- some

3    groupings, along with TX numbers, and we've done that both

4    for Question 1 as well as the other trade secrets that --

17:41  5    that we have asserted were misappropriated, and I can -- I

6    can --

7          THE COURT:  Now, is there going to be disagreement

8    over this between the parties?  I don't know if you've shown

9    each other your product?

17:41 10          MR. ZELLER:  We have.  I have not -- I have -- I

11    don't know one way or the other whether they object.

12          THE COURT:  And, remember, I haven't seen this yet.

13    I've been waiting for three or four days now for this.

14          MS. HURST:  I think a few of the descriptions of

17:41 15    the buckets would be argumentative, we'd want to talk about

16    those, and some of the things are not in evidence.

17          So we thought that the thing to do would be to

18    e-mail their thing to the court, let the court put in a

19    version that's then official and then we would just make our

17:41 20    objections, and we're prepared to e-mail our chart to the

21    court as well.

22          THE COURT:  Could I -- do you have a copy of it

23    that I could take back in hand-held form?

24          MS. HURST:  Yes.

17:42 25          THE COURT:  And are you doing the same thing, some

1  brief description?

2          MS. HURST:  Yes.

3          THE COURT:  And what's this, Mike?

4          MR. ZELLER:  That's what's broken out so it's just

17:42 5  what would be in Question 1.

6          THE COURT:  That's Question 1, I've got it and then

7  this would be in question -- right now, that would be in

8  Question 9?

9          MR. ZELLER:  Right.

17:42 10         THE COURT:  Got it.

11         MR. ZELLER:  We are providing the court with an

12 electronic version of it so you can cut and paste.

13         THE COURT:  Okay.  And --

14         MS. HURST:  Do you want us to e-mail that to you,

17:42 15 Judge?

16         THE COURT:  If you would, I'd appreciate it, that

17 way I could have it after you leave tonight and I could try

18 to incorporate it.

19         All right.  Question 10?

17:43 20         Question 11?

21         MR. ZELLER:  Here we're back to -- to the statute

22 of limitations formulation that we -- and it's a slightly

23 different argument here because this is for the -- for the

24 trade secret misappropriation.

17:43 25         THE COURT:  Okay.

```
 1          MR. ZELLER:  And the statute on its face -- and

 2     this was -- this was, in fact, the formulation that the court

 3     had previously used, we believe, correctly; but the -- the

 4     statute itself says -- and I'll find the language here -- "An

 5     action for misappropriation must be brought within three

 6     years after the misappropriation is discovered or by the

 7     exercise of reasonable diligence should have been

 8     discovered."

 9          And that's the exact language of the California

10     Civil Code Section 3426.6.

11          And there is, in fact, Ninth Circuit -- or excuse

12     me -- California Supreme Court Authority that has that exact

13     formulation, the Fox case, in particular, of the discovery

14     rule in California.

15          Also, as we've cited in our briefs to the court,

16     there are cases specifically saying that the use of suspicion

17     or suspect is not the correct formulation.

18          The danger here, too, is that it says "cause a

19     reasonable person to suspect" but it doesn't say what, and it

20     also doesn't take into account the fact that mere suspicions

21     are -- are not sufficient to sue.  This is going to have the

22     jury -- it really doesn't give the jury any guidance and the

23     instructions don't, that there are constraints such as

24     Rule 11 and other requirements before -- of actual evidence

25     before a lawsuit can be filed.
```

```
 1                And -- and so we're concerned about the use of this
 2      language -- of the formulation "to suspect."
 3                THE COURT:  Okay.  MGA?
 4                MS. HURST:  This language is exactly right, it's
17:45 5      the exact language in CACI 4421.  It is -- which is approved
 6      and cites the Fox case.  The Fox case is a reasonable person
 7      standard; it's not a subjective standard.  So this is exactly
 8      correct.
 9                THE COURT:  No. 12?
17:45 10                MR. ZELLER:  All right.  There was actually a
11      couple of other things with No. 11.
12                THE COURT:  Okay.
13                MR. ZELLER:  The dates, I believe, we would need to
14      add the additional date we talked about, but --
17:45 15                THE COURT:  Let's be specific.
16                MR. ZELLER:  Sure.
17                THE COURT:  December 1st, 2001 --
18                MR. ZELLER:  Actually, December 7th, 2001.
19                THE COURT:  Wasn't your request for December 1st,
17:45 20      2001 on Question 6 on Page 4?
21                MR. ZELLER:  No, no.  It was -- I apologize -- it
22      was December 7th, 2001.
23                THE COURT:  Okay.  You said December 1.
24                MR. ZELLER:  I misspoke, then.
17:46 25                THE COURT:  Okay.  December 1st, 2001.
```

|   |   |
|---|---|
| 1 | MR. ZELLER:  December 7th. |
| 2 | THE COURT:  And also you want to -- well, MGA wants |
| 3 | to delete, once again, the November 23rd date. |
| 4 | MS. HURST:  Right; and December 8th was the date of |
| 17:46  5 | the intervention.  We object to including it, but if it's |
| 6 | going to be included it should be the right date. |
| 7 | MR. ZELLER:  December 7th. |
| 8 | MS. HURST:  December 8th. |
| 9 | MR. ZELLER:  Instead of the 8th. |
| 17:46 10 | THE COURT:  Now, how are we going to resolve this |
| 11 | weighty dispute? |
| 12 | MR. ZELLER:  (Shook head.) |
| 13 | THE COURT:  She'll just show me the order. |
| 14 | MR. ZELLER:  Go get the order. |
| 17:46 15 | THE COURT:  It takes two seconds to find this. |
| 16 | MS. HURST:  And -- |
| 17 | THE COURT:  We're going to wait.  We'll do this by |
| 18 | the numbers tonight. |
| 19 | MS. HURST:  I was just going to say for the record |
| 17:46 20 | that we just would like a question yes-or-no statute of |
| 21 | limitations defense with the relation-backdate charge.  I've |
| 22 | said that before, so -- |
| 23 | THE COURT:  Well, under normal circumstances |
| 24 | without what occurred in Judge Larson's court, maybe we |
| 17:47 25 | wouldn't be in this situation, but we are. |

1          MR. ZELLER:  So, yeah, the order was signed on

2     December 7th, 2004, and we'll get a copy of it.

3          THE COURT:  Okay.  We'll just wait.

4          (Pause in the proceedings.)

17:47  5          THE COURT:  The docketing number isn't necessarily

6     the date it's signed.  It's usually docketed -- well, I'd

7     like to say one day later, but sometimes longer than that.

8          (Pause in the proceedings.)

9          THE COURT:  This is off the record.

17:47  10          (Discussion held off the record.)

11          THE COURT:  We're back on the record.

12          I've been handed a copy of the stipulation

13     permitting MGA to intervene in this matter.  It is signed by

14     my former colleague, Nora Manella.

17:53  15          (Discussion held off the record.)

16          THE COURT:  And it was signed December 7th, 2004.

17          So that will be the date.

18          If I include that date.

19          All right.  You can have this back; thank you.

17:54  20          I appreciate it.

21          MR. ZELLER:  Then there's another date in question,

22     11 as well, where it says "April 14th, 2002" it should be

23     "April 13, 2002" so that's off by one day.

24          THE COURT:  Okay.  Just a moment.

17:54  25          Let's see if there's disagreement about that.

1          It matches with April 13th on Page 4, by the way,

2     2002, I think that's just my misprint.

3          MS. HURST:  I'm checking.

4          THE COURT:  Okay.  And what else?

17:55 5          MR. ZELLER:  And then we think after Question 11 we

6     should have the fraudulent concealment question.

7          THE COURT:  Okay.

8          MR. ZELLER:  And just to make a brief pitch on

9     that, the court will recall we did put in evidence on that

17:55 10    subject.  There was the "don't ask" document we put into

11    evidence.  There was the "I know you wanted to keep Carter

12    under wraps" document and testimony.  There were statements

13    by Isaac Larian that indicated that they were -- there was an

14    effort to keep certain facts hidden.

17:55 15         There was the whiting out of the fax.  There was

16    testimony by Victoria O'Connor, so we believe we're entitled

17    to go to the jury on that, and it's a -- it's an important

18    issue, from our perspective, on the statute of limitations,

19    because it also, under the legal standard, basically requires

17:55 20   something more akin to actual knowledge rather than any

21    formulation that would be, you know -- should have discovered

22    or even a reasonable person to suspect kind of formulation.

23    So it does also change the legal standard as to what -- what

24    would start the -- the running of the statute of limitations.

17:56 25         THE COURT:  Okay.  MGA.

Case 2:04-cv-09049-DOC-RNB  Document 10441  Filed 04/08/11  Page 30 of 178  Page ID #:317163
CV 04-9049 DOC - 04/06/2011   Volume 4 of 4

30

 1          MS. HURST:  None of what was described would be

 2    legally sufficient to charge on a fraudulent concealment

 3    theory.  None of it was directed to Mattel.  It's got to be

 4    directed to Mattel, and there has been no evidence whatsoever

17:56  5    that any statements were made to anyone from Mattel or that

 6    there was any failure to disclose in light of an obligation

 7    to do so.

 8          So it's -- it's simply not an available rebuttal

 9    option.

17:56 10          And it doesn't, in any event, change the legal

 11    standard once you're on notice, unless there is a specific

 12    lulling to dispel that notice, the fraudulent concealment

 13    doctrine is irrelevant and there has been no evidence

 14    whatsoever of that.

17:57 15          THE COURT:  Mr. Zeller.

 16          MR. ZELLER:  The court will recall that Mr. Moore

 17    testified recently that he received that information and he

 18    actually read the Business Week article which contained the

 19    misleading statement, which there is evidence of record, came

17:57 20    from Isaac Larian, where he said he was the one who came up

 21    with Bratz.

 22          The court will also recall that the documents that

 23    Mr. Moore received concerning the Bryant drawings had the

 24    8-98 date put on it as well, and that is information that he

17:57 25    received.

Case 2:04-cv-09049-DOC-RNB   Document 10441   Filed 04/08/11   Page 31 of 178   Page ID
#:317164
CV 04-9049 DOC - 04/06/2011   Volume 4 of 4

31

1          It was, of course, subsequent that then there was

2     evidence that -- and that those dates were put on.  We found

3     that discovery after the fact by Mr. Bryant, but, obviously,

4     the facts at that time, there's -- there's certainly ample

17:58 5     basis for showing that there was, in fact, fraudulent

6     concealment.  And why we don't agree that there has to be

7     some proof of actual reliance, even if it were, there is such

8     evidence of record through Mr. Moore.

9          The other thing I would point out, Your Honor, is

17:58 10     that Mattel actually obtained a verdict, a jury finding with

11     the first trial that there was fraudulent concealment by MGA.

12     So -- so -- so there is ample evidence here and we think it's

13     entirely appropriate to both instruct on it and have it as a

14     finding on the verdict form.

17:58 15          THE COURT:  Okay.

16          MS. HURST:  And they also got $30 million on a

17     cause of action that the court subsequently found doesn't

18     exist, so that's a particularly compelling argument.

19          Fraudulent concealment cannot occur by general

17:58 20     public statements.  That's simply not the legal standard.

21          In fact, Mr. Zeller's argument conspicuously said

22     information was received rather than MGA gave information to

23     Mattel, and that's because MGA never gave any information to

24     Mattel of any kind in this regard.

17:59 25          You can't claim a fraud based on a Business Week

1    article and going to -- going and getting documents out of a

2    file in Hong Kong.

3           The standard is that affirmative conduct directed

4    to the plaintiff, and this is discussed in our -- in our JMAL

17:59 5    motion at Pages 54 to 56, "You must show that the defendant

6    actively misled and even denials of wrongdoing in press

7    releases are not sufficient."  And that's the Rutledge

8    Case 576 F.2d 248 at 250.

9           It requires active conduct by a defendant -- by a

18:00 10    defendant, *Santa Maria versus PacBell*, 202 F.3d 1170.

11    Failure to disclose is not fraudulent concealment, absent an

12    obligation for disclosure, obviously not present here.  These

13    are arm-length competitors, 816 F.2d 1406.

14           You simply -- you simply can't characterize a

18:00 15    Business Week article and pleadings in another court case,

16    none of which was ever directed to Mattel as sufficient for

17    application of fraudulent concealment.

18           Moreover, given the suspicion evidenced by the

19    March 2002 investigation report and the opening of a

18:00 20    September 9th -- by no later than September 9th, 2003, of an

21    investigation, because Mattel already had suspicion at the

22    time of these subsequent -- but prior to these subsequent

23    receipts of information in 2003 and the Business Week article

24    and the -- and when they went and got the pleadings in 2003,

18:01 25    the fraudulent concealment doctrine simply cannot apply

 1    because they already had suspicion, and that's also discussed

 2    in our brief.

 3         So it's -- fraudulent concealment is not properly

 4    charged and it's certainly not -- even if charged, not

18:01  5    properly a separate question on the verdict form.

 6         THE COURT:  No. 12 on Page 7.

 7         Do you want to use the same kind of formatting you

 8    did on Page 1, Question 2?

 9         MS. HURST:  Yes.

18:01 10         MR. ZELLER:  Yes.

11         THE COURT:  Okay.

12         MR. ZELLER:  With the one caveat that, you know --

13    and I'm not really entirely sure where we are on this

14    particular subject because there's -- certainly between the

18:02 15    parties there has been back and forth over the formulation of

16    the trade secrets.

17         When we get to MGA's the court is going to see that

18    they've changed theirs.  Well, they've added on FOB pricing

19    even though it wasn't in that column on their trade secret

18:02 20    chart.

21         THE COURT:  I've already made a ruling on that.

22         MR. ZELLER:  I'm sorry?

23         THE COURT:  I've already made my ruling on that.

24         MR. ZELLER:  It's just that if they're allowed to

18:02 25    change, we ought to be allowed to refine ours which was

```
 1    simply additional language that says that these are the
 2    things that Carter Bryant brought to -- to Mattel.
 3             THE COURT:  Such as?
 4             MR. ZELLER:  Well, Mr. Quinn, I think, can give
 5    the --
 6             THE COURT:  Okay.
 7             MR. ZELLER:  He had the language, I know, more at
 8    the tip of his tongue.
 9             MR. QUINN:  Do we have that?
10          The court may recall we attempted to amend our
11    filing.  I think we filed on Friday, amended it Saturday, and
12    then tried to amend it again on Sunday just to add the
13    preamble before "concept," language to the effect of "these
14    doll concepts brought to MGA by Carter Bryant consisting of,"
15    and then it went on with the same list that you presently
16    had.  We just wanted to add those words in the beginning.  I
17    think this was in the first week of February that we sought
18    to add those words.
19             THE COURT:  I recall.  Okay.
20          Xerox that off again for me.  Just print it one
21    more time.  I want to look at it one more time this evening.
22             MR. QUINN:  Okay.
23             THE COURT:  All right.  No. 13, Page 8.
24             MS. HURST:  I assume I don't need to say anymore on
25    that.  We object, obviously.
```

UNITED STATES DISTRICT COURT

1          THE COURT:  Okay.  No. 13, Page 8.

2          MS. HURST:  No comment.

3          MR. ZELLER:  No comment here.

4          THE COURT:  Okay.  So does that mean you're

18:04  5   accepting it?

6          (Laughter.)

7          THE COURT:  We'll just leave it at "no comment" so

8    you both protect yourself.

9          MS. HURST:  Obviously, we made a JMAL that there

18:04 10   would be insufficient evidence for that evidence to go to the

11   jury.

12         MR. ZELLER:  And we do think as a matter of law

13   that the answers must be "yes."

14         THE COURT:  Page 9, Question 14.

18:04 15        Question 14, I assume MGA's going to object,

16   because previously I only had one question.  Now, I've

17   inserted two questions.  I thought that was more

18   appropriate --

19         MS. HURST:  That's fine.

18:04 20        THE COURT:  -- because in case in chief you check

21   "no" --

22         MS. HURST:  That's fine.  You're just making it

23   parallel.  We don't object to that.

24         THE COURT:  Page 10, 16.  Question 16.

18:05 25        Okay.  Page 11, Question 17.

1      MS. HURST:  There's some weird numbering stuff.

2      I'm sorry.  Back on Page 10, Question 16,

3  Your Honor.

4      THE COURT:  I'm sorry; 8.

18:05  5      MS. HURST:  Yeah, it should be a 5.

6      THE COURT:  Thank you very much.  It used to be 8

7  and then I've tried to reduce these columns, so --

8      MS. HURST:  And did you want to add instructions by

9  saying "yes or no" in column 4 on -- at the end of sub 2?

18:05 10      THE COURT:  Yeah, yeah, I do.  Just a moment.

11      All right.  Page 11, Question 17.

12      MR. ZELLER:  We think that the statute of

13  limitations formulation should be changed and should be

14  parallel for the misappropriation of trade secrets.

18:06 15      THE COURT:  Use the boxes again?

16      MR. ZELLER:  No, this is 17.  It's the -- the use

17  of --

18      THE COURT:  Oh.

19      MR. ZELLER:  -- the language "would lead a

18:06 20  reasonable person to suspect."

21      I'm just making my pitch that I think it should be

22  reformulated and -- and -- and consistent throughout.

23      THE COURT:  Right.

24      Page 12, 18 -- Question 18.

18:07 25      Okay.  Page 13, Question 19.

```
 1                    (Pause in the proceedings.)

 2                    THE COURT:  Page 13, Question 20.

 3                    MS. HURST:  Hold on.

 4                    (Pause in the proceedings.)

18:07  5             MS. HURST:  Your Honor, it looks like the

 6       instruction under Question 20 needs to be -- have its numbers

 7       updated.

 8                    THE COURT:  Yeah, it does.  Yeah, it certainly

 9       does:  Incorrect numbers.

18:07 10             MS. HURST:  Probably in 19 or 20 the court meant

11       "and/or."

12                    THE COURT:  Yeah.  Yeah, I did.

13                    MR. ZELLER:  I also wonder if we could, perhaps,

14       drop all the names in the question and just say "Has Mattel,

18:08 15  Inc., proven that MGA Entertainment Inc., intentionally

16       inferred with Mattel Inc.'s contractual relations with the

17       following:"  And then just pick up in the chart?

18                    THE COURT:  And that's "yes" or "no"?

19                    MR. ZELLER:  Yes.

18:08 20             THE COURT:  How do we know which one, though?

21                    MR. ZELLER:  Well, then it will have "contractual

22       relations" and "Carter Bryant" in the box, so you're just not

23       repeating the names of the questions in the boxes.

24                    THE COURT:  I'll come to you.  Have a seat.

18:08 25             Sit down, please.
```

```
 1                (Discussion held off the record.)

 2                THE COURT:  This is what is being suggested, just

 3      take out the names with the following and then you just go

 4      down the chart.

 5                MS. HURST:  "Suggest any of the following" and if

 6      so --

 7                MR. ZELLER:  Yeah, any of the following."

 8                THE COURT:  And then the same thing obviously in

 9      20.

10                The same thing, obviously, in 20, and I'll renumber

11      Questions 16 and 17 and 19.  That seems to be a little askew.

12                Okay.

13                (Pause in the proceedings.)

14                THE COURT:  All right.  Page 14.

15                MS. HURST:  And, obviously, Your Honor, we don't

16      think this claim should go to the jury at all based on our

17      comments earlier.

18                THE COURT:  Well, I was going to work on the JMAL

19      later this evening; right now, tentatively it is, but I

20      haven't, quite frankly, because of just our trial work, had

21      time to really bear down on that and, you know, right now

22      tentatively I'm indicating it is; but I -- I have a lot more

23      work to do on this tonight.

24                MR. ZELLER:  And if I could just address that

25      briefly.
```

1          I mean, the -- literally MGA dropped a

2     112-page JMAL on us with no warning.  There was absolutely no

3     discussion in advance with either the court or with us.

4          It was literally obviously something they had in

18:10  5     process for quite sometime and it's -- it's going to take us

6     awhile to prepare on opposition.  I mean, that --

7          THE COURT:  I'm just joking with you for a moment,

8     but you've reacted appropriately in some of the other areas

9     on the JMAL that were kind of -- kind of void, so I'm

18:11 10     absorbing it.  Trust me.  I'll get to it.

11          All right.  Now, 21, "What amount of damages, if

12     any, do you award Mattel, Inc.," blah, blah, blah, any

13     problems with 24?

14          MR. ZELLER:  I don't see any.

18:11 15          THE COURT:  Okay.  22, Question 22 on Page 14.

16          MR. ZELLER:  I would just like to incorporate my

17     comments from earlier, this is back to this "to suspect"

18     language.

19          THE COURT:  Okay.

18:11 20          MR. ZELLER:  And also that we -- we think that --

21          THE COURT:  Under *Polar*.

22          MR. ZELLER:  And also we think that fraudulent

23     concealment should be --

24          THE COURT:  And fraudulent concealment should

18:11 25     follow?

```
 1              MR. ZELLER:  Yes.

 2              THE COURT:  Okay.

 3              MS. HURST:  I don't think the word "has" after

 4     Isaac Larian probably belongs there, Your Honor.

18:11  5              THE COURT:  Just a moment.

 6              So "or Isaac Larian" intentionally, just strike

 7     "has."

 8              MS. HURST:  Yeah.

 9              THE COURT:  I agree.

18:12 10              All right.  23.

11              Okay.  Now, let me go back and start some word

12     processing for just a moment.  But before I go back, I want

13     to go over some instructions for a moment.

14              All right.  First of all, for MGA, from last

18:12 15     evening's discussion, I'm inclined to deny all of your

16     proposed instructions except the privilege of competition and

17     mitigation.

18              MS. HURST:  Will the court allow the request for

19     judicial notice on reduction of practice?

18:12 20              THE COURT:  Don't know.  Still doing research this

21     evening after you leave.

22              MS. HURST:  We would you like to call a witness on

23     surrebuttal if the court's not going to permit the argument.

24              THE COURT:  I think that would be the appropriate

18:13 25     thing to do.
```

UNITED STATES DISTRICT COURT

Case 2:04-cv-09049-DOC-RNB Document 10441 Filed 04/08/11 Page 41 of 178 Page ID #:317174
CV 04-9049 DOC - 04/06/2011 Volume 4 of 4

41

1           But I'll tell you at 6:00 tomorrow morning, I'm

2   still doing a lot of research on it, so -- and --

3           MR. QUINN:  May we address those points,

4   Your Honor?

18:13 5         THE COURT:  Sure.

6           MR. QUINN:  I don't think calling a witness on the

7   construction of a contract at this point would be appropriate

8   surrebuttal.

9           THE COURT:  Okay.

18:13 10         MR. QUINN:  That was clearly their opposition to

11  our case-in-chief.

12          THE COURT:  Right.

13          MR. QUINN:  In any event, again, the problem with

14  giving that -- that instruction is that there is no evidence

18:13 15  in the record that that was understood by anybody to be a

16  technical term.  All the evidence is to the contrary.

17          I mean, it is a term that -- it's a -- it's a

18  phrase that has more than one meaning, and the court

19  shouldn't instruct the jury that it only has one meaning.

18:13 20  It's just not relevant.

21          There's theory and there's practice and then you

22  reduce the theory to practice.  It's a phrase that you hear

23  all the time in the arts and elsewhere.

24          So to tell them -- tell the jury that it has a

18:14 25  special patent law meaning when there is no patent claim in

 1        the case, I think is -- is completely misleading.

 2                With respect to mitigation, mitigation should not

 3        apply to Mattel's copyright and trade secret claims here with

 4        respect to Bratz where MGA retains sole possession of the

18:14  5        Bratz line, and for that we'd cite the court to *Janes versus*

 6        *Watson*.  It's a Western District of Texas case --

 7                THE COURT:  Just a moment.

 8                (Pause in the proceedings.)

 9                THE COURT:  Please continue.

18:14 10                MR. QUINN:  But it stands for the proposition that

11        a Plaintiff could not mitigate damages caused by copyright

12        infringement or trade secret misappropriation where

13        Defendants continue to have exclusive use of the infringing

14        and misappropriated property.

18:15 15                We could not bring out a Bratz line, which is the

16        only relevant type of mitigation that would apply in a

17        circumstance like this.

18                The proposed instruction is also improper in that

19        it suggests that mitigation of damages may reduce Mattel's

18:15 20        claim for unjust enrichment and the law is clear that

21        mitigation does not apply to claims for unjust enrichment.

22                THE COURT:  So it would be minimally confusing?

23                MR. QUINN:  Yeah.  But there are two cases that we

24        would cite the court to, California District Court cases,

18:15 25        that mitigation does not apply to unjust enrichment, *Federal*

1    *Trade Commission versus Medicorp* and *Cal Microsoft Corp.*

2    *versus Utah Printing.*

3            MS. HURST:  Can we get cites on those?

4            MR. QUINN:  Yes.

18:16  5        Federal Trade Commission is 2001 WestLaw 765628.

6            THE COURT:  What court?

7            MR. QUINN:  Central District of California.

8            THE COURT:  What judge?

9            MR. QUINN:  Does somebody know?

18:16 10       We'll get that, Your Honor.

11           THE COURT:  Okay.

12           MR. QUINN:  But the court there said that, "All

13    relief sought by the Plaintiff is equitable and dependant

14    upon the amount of gain received by the defendants, not the

18:16 15    amount of loss suffered by the Plaintiff, thus mitigation of

16    damages is not relevant."

17           Thus hear the question is:  How much was MGA

18    enriched, not how much we were enriched.

19           The other case, *Cal Microsoft* is 1996 WestLaw

18:16 20    479066, Northern District of California.

21           THE COURT:  Just a moment.

22           479066?

23           MR. QUINN:  479066, yes, a 1996 WestLaw 479066.

24           THE COURT:  And Northern District of California?

18:17 25        MR. QUINN:  Yes.

1    THE COURT:  Okay.  I'll find that in just a moment.

2    Now, do you have the cite on the *Federal Trade*

3    *Commission*.  It says 2001 case.  What's the cite?

4    MR. QUINN:  2001 WestLaw 765628.

18:17 5    THE COURT:  Thank you.

6    MS. HURST:  What was the *Janes versus Watson*, if

7    you don't mind, Mr. Quinn.

8    MR. QUINN:  2006 WestLaw 2322820, 2322820.

9    So in the *Cal Microsoft* case, the district court

18:17 10    found that a Defendant's affirmative defense of failure to

11    mitigate did not apply to award equitable award of

12    disgorgement of profits.

13    THE COURT:  Okay.  I'll go find those.

14    MR. QUINN:  But in any event, the instruction that

18:18 15    Defendants have proposed alters the language of the CACI

16    Instruction 3931 which indicates it applies to property

17    damage.

18    There's no cite to any authority to support the

19    assertion that this would apply to all the claims in this

18:18 20    case.

21    And then the language has been altered that's been

22    offered in the proffered instruction, and we don't think

23    mitigation applies in the context of these claims.  And if

24    the court is inclined to --

18:18 25    THE COURT:  If I come out, I'll -- trust me.  Let

```
 1    me go back and read while you're at dinner.
 2              MS. HURST:  May I respond?
 3              MR. QUINN:  That's Connie Marshall, Your Honor, the
 4    Judge.
 5              THE COURT:  Okay.  That's the judge.
 6              On the Trade Tech?
 7              MR. QUINN:  Federal Trade Commission case.
 8              THE COURT:  And on the Microsoft out of the
 9    Northern District of California?
10              MR. QUINN:  Northern District of California --
11              THE COURT:  Judge Alsup or Susan Illston or --
12              MR. QUINN:  We'll pull that up, Your Honor.
13              THE COURT:  It doesn't matter.
14              All jurists are equal.
15              I'm just curious who is doing the writing in the
16    area.
17              MS. HURST:  Your Honor, on reduction of practice,
18    the notion that there's no evidence for the proposition that
19    a technical term might have been intended is silly.
20              It's right on the face of the contract.  It's a
21    definition of "inventions."
22              That's what patents protect.  The fact that it also
23    applies to nonpatentable inventions by its terms, because
24    they're trying to sweep a broader scope, doesn't mean there's
25    no evidence to support the application of the definition.
```

Case 2:04-cv-09049-DOC-RNB   Document 10441   Filed 04/08/11   Page 46 of 178   Page ID #:317179
CV 04-9049 DOC - 04/06/2011   Volume 4 of 4

46

1          To the contrary, it contemplates specifically the

2     assignment of patent on the face of the contract.

3          THE COURT:  Okay.

4          MS. HURST:  It was drafted by lawyers and, I am

18:20  5     sorry, but Mr. Quinn's comment everyday use is a reduction of

6     practice is not one familiar to me and nor was it, more

7     importantly, familiar to Ms. Mc Shane, their head

8     intellectual property lawyer for eight years.

9          I mean, the evidence in this record is that it is

18:20 10     not a commonly used term and that it is a technical term and

11     we should not have to call a witness on this.  We will, if we

12     have to; but certainly the notion that we can't call one now

13     after they're being allowed to cure every missing element of

14     their case can't fly.

18:20 15          So I -- I really think that the right way to go on

16     this, because it is a legal term of art, is the request for

17     judicial notice or an instruction.

18          So that's reduction of practice.

19          Mitigation is absolutely appropriate for any lost

18:21 20     profits damages claim.  And last night what I asked for was

21     CACI, CACI, so, you know, we're not trying to alter it.  I'm

22     not sure if they're looking back at some earlier version.

23     I'm not sure what they're looking for.  We're happy to live

24     with the earlier instruction on this.

18:21 25          Under the two statutes unjust enrichment is being

1    presented as a measure of damages, not as a separate form of

2    equitable relief; because if that were the case, then it

3    would be going to the court, and in both instances it goes to

4    the jury.

18:21 5          It's true that disgorgement is, you know, called

6    "unjust enrichment," but under both statutory schemes, it's a

7    proxy for damages, so in our view mitigation would apply.

8    Obviously, we'll go look at these cases and see if we can

9    find contrary authority.

18:21 10         THE COURT:  Okay.

11         MS. HURST:  But they're basically -- what they're

12   basically doing is making a JMAL on a -- an affirmative

13   defense here in the instructions argument.  They haven't

14   filed any motion, they haven't given notice of any motion in

18:22 15  that regard.  We have put in evidence of mitigation.  We had

16   been requesting this instruction from the outset and this is

17   a theory on the case that we think we're entitled to

18   instruction on, so --

19         THE COURT:  Okay.

18:22 20        MS. HURST:  Your Honor, with respect to omitted

21   instructions, a couple of things in addition, if I may, on

22   tonight's draft we noticed that about half of the form

23   instruction copyright for Ninth Circuit form instruction on

24   1713, derivative work copyright, is missing, and we think --

18:22 25  this is the matter we discussed the other night, what if they

1    find, you know, we own some things and they own other things,

2    how will the jury figure out what the test is, they're going

3    to need the rest of 1713 in order to do that.

4              THE COURT:  Okay.

18:22   5              MS. HURST:  Your Honor, and we also noticed that

6    copyright form 17.6 is missing, which is the authorship

7    instruction, and we're clearly entitled to that instruction

8    because it's our theory that Carter Bryant was not an author,

9    period, of the sculpts.

18:23  10              THE COURT:  Okay.

11              MS. HURST:  That his contribution would not rise to

12    the level of authorship under *Aalmuhammed versus Lee*, which

13    Your Honor, is why I would -- in part why I would like

14    Question 1 to reference copyrights because there's multiple

18:23  15    legal standard in play here that are relevant to the jury's

16    consideration especially on the sculpts.

17              For the sculpts, Carter Bryant can't be an author

18    at all under copyright, and we believe we're entitled to have

19    the jury charged on that theory.

18:23  20              THE COURT:  Okay.

21              MR. QUINN:  Your Honor, if I --

22              THE COURT:  Let me finish, just one moment.

23              1713, 17.6.

24              MS. HURST:  Yes.

18:23  25              THE COURT:  What else do you believe

```
 1    that's been omitted?

 2               (Discussion held off the record.)

 3         MS. HURST:  Your Honor, in CACI 314, the disputed

 4    term, the paragraph on the objective theory of contract and

 5    the meaning the parties intended at the time is missing.

 6         I think that should be put back in.

 7         Let me see if there's anything else.

 8         I think everything else would be just words missing

 9    or edits as opposed to omissions.

10         THE COURT:  Mr. Quinn, your comments.

11         MR. QUINN:  Your Honor, just a couple of things.

12    The judge who wrote the opinion in Cal Microsoft is Susan

13    Illston.

14         THE COURT:  Oh, that's great.

15         MR. QUINN:  With respect to mitigation, Your Honor,

16    we think it doesn't apply to these theories, but, in any

17    event, they have not introduced any evidence bearing on

18    mitigation, at least as that term is used in the usual sense.

19         If you remember Mr. Malackowski's theory that

20    MyScene is mitigation.

21         THE COURT:  Right.

22         MR. QUINN:  But they had to acknowledge that he had

23    never seen it that way or used that term until he came here

24    to testify.

25         This is not mitigation as we usually think of it
```

Case 2:04-cv-09049-DOC-RNB   Document 10441   Filed 04/08/11   Page 50 of 178   Page ID #:317183
CV 04-9049 DOC - 04/06/2011   Volume 4 of 4

50

1    where you go out and buy cover or, you know, you cover a

2    contract or replace something or take some action to minimize

3    damages.

4          Their theory here is a very strained theory that,

18:25 5    well, we -- we came out with a new product, that somehow, if

6    we hadn't come out with it, our losses would be greater, but

7    it's not mitigation in any sense in which we usually think of

8    that.

9          I mean, with respect to reduction to practice,

18:25 10    clearly this contract covers patents, but it also says

11    nonpatentable subject matter, and refers specifically to

12    designs, concepts, copyrights, anything of that nature.

13          So "inventions" sure, we think of "inventions"

14    often being the subject of patent law, but the term

18:26 15    "Inventions" initial caps, is defined here in a much, much

16    broader way.

17          I mean, think back, there's a lot of witnesses that

18    have testified about their understanding of the meaning of

19    the words of this contract.  Not one witness has said they

18:26 20    understood that to refer only to patentable items.

21          And then, finally, Your Honor, this, you know,

22    clearly would not be surrebuttal; but what I understand is --

23    what I understand is being offered here is their

24    interpretation of the contract which was the subject of our

18:26 25    case-in-chief.

UNITED STATES DISTRICT COURT

CV 04-9049 DOC - 04/06/2011 Volume 4 of 4

 1          I also have, Your Honor, that additional phrasing

 2    for the trade secrets description that we had proposed back

 3    in February.

 4          THE COURT:  Just give me a copy of it.

18:27  5          Thank you very much.  I appreciate it.

 6          I'll look at it one more time.

 7          I rejected it the first time, but I want to look at

 8    it one more time.

 9          All right.  Now, let me turn back to MGA and then I

18:27 10    want to go through some concerns I have that you can think

 11    about while you're in recess for a few minutes.

 12          MS. HURST:  I'm just -- I'll just add one last

 13    point on this reduction of practice:  Mattel is

 14    misunderstanding completely what we're doing here.

18:27 15          We are not saying the court is directing an

 16    interpretation.  And I have said this repeatedly and I don't

 17    know why it's not getting through, but in case it's not

 18    getting through to the court as well as to Mattel, I want to

 19    say it again:  CACI 318 enables the jury to make a choice --

18:27 20    pardon me, not 318 -- 315 and 316 meaning of "ordinary" and

 21    meaning of "technical words."  When it's a technical word

 22    they decide whether to apply the technical meaning or not.

 23          THE COURT:  The dispute is simple.  You two are not

 24    speaking to each other apparently.

18:28 25          But the simple phrase is you believe it's a

UNITED STATES DISTRICT COURT

 1    technical word, they believe it has a much broader meaning

 2    within the contract that being a technical word.  It's as

 3    simple as that.

 4              MS. HURST:  Right; but that's a question for the

18:28  5    jury to decide.

 6              Was it the technical meaning or was it the ordinary

 7    meaning?  And here's what CACI 316 says --

 8              THE COURT:  And if they decide it's a technical

 9    meaning, I should define what that is.

18:28 10              MS. HURST:  Well, but if you don't give them the

11    technical meaning, they can't figure it out.

12              THE COURT:  I understand that.

13              MS. HURST:  So we have to give them the technical

14    meaning so that they can make a choice.

18:28 15              THE COURT:  I just said that.

16              MS. HURST:  Okay.

17              THE COURT:  That doesn't mean I'm going to do it.

18              In other words, the gateway is 315 and 316 and from

19    your standpoint, it is silly not to give that, if I don't

18:29 20    define what "inventions" means.

21              MS. HURST:  Well, they're going to define what

22    inventions means.  The jury is going to ultimately define

23    that.

24              THE COURT:  That's right.

18:29 25              MS. HURST:  But we need to give them the

         1   tools to do that.

         2           THE COURT:  That's right.

         3           MS. HURST:  And that would include a definition of

         4   reduction to practice.

18:29    5           THE COURT:  That's right; that's your position and

         6   you believe that reduction to practice is a technical term.

         7           MS. HURST:  And, Your Honor, anybody who has ever

         8   practiced in patent law knows it is and I know the court has

         9   handled many patent cases, so I mean, it -- it's a farce to

18:29   10   sit around here and think that that's not a technical term.

        11           THE COURT:  Now, I'm going to just play with that

        12   concept for a moment, since I didn't -- and not by synergy.

        13           Why am I doing that in light of not allowing patent

        14   law to extend into a copyright issue?

18:30   15           Remember how careful we were to keep the Georgia

        16   Pacific factors out and how many of my colleagues have

        17   written that that's not a -- how careful we were to draw that

        18   line on past juris prudence.

        19           Why do we now in the copyright area jump over that

18:30   20   fence?

        21           MS. HURST:  We're in the contract interpretation

        22   area here.  We're not in the copyright frame.  We're in the

        23   contract interpretation area.

        24           And, Your Honor, there is a very good argument that

18:30   25   this definition of inventions was limited to technical

1    subject matter.

2           If you just read the way it reads, I mean, the

3    definition for copyright of what is protected is fixed in a

4    tangible medium of expression.  It's a completely different

18:30 5    phrase and that's not found in the contract anywhere.

6           I mean, really, a plain reading of the definition

7    of "inventions" in this contract is that it was intended to

8    cover technical subject matter, and that is the most -- that

9    is the reading to which it is most reasonably susceptible.

18:31 10           Having said that, we're dealing with a fight about

11    whether it's broader and we're not asking the court to

12    instruct the jury that it's not broader; but we are asking

13    the court to instruct -- give the jury the tools it needs to

14    decide what does "reduction to practice" mean, and there's no

18:31 15    reason why the technical definition can't be applied to the

16    subject matter at issue.

17           We've got drawings, their designs, according to the

18    Ninth Circuit, but that doesn't answer the question of when

19    they were reduced to practice.

18:31 20           THE COURT:  What I'm hearing from you is that there

21    needs to be some guideline to the jury, because otherwise

22    anybody could subjectively define "reduction to practice."

23           MS. HURST:  Right.

24           THE COURT:  It's as simple as that.

18:31 25           MS. HURST:  Right.

 1          THE COURT:  All right.  Now let me turn back to

 2     Mattel.

 3          MR. QUINN:  Well, the Ninth Circuit opinion in this

 4     case, the Ninth Circuit said, and I quote, "the drawings and

18:32 5     sculpt clearly were inventions as that term is defined in

 6     Bryant's employment agreement with Mattel."

 7          It does not -- clearly this is not a patentable

 8     matter.  In the preamble, the contract, at the top -- I don't

 9     have it in front of me -- refers expressly to nonpatentable

18:32 10    matter.

 11          Your Honor, I don't think this phrase "reduction to

 12     practice" is so easily pigeonholed as being a patent law

 13     term.  I mean we talk in terms of theory and practice.  You

 14     know, the phrase "that works in practice," you know -- "that

18:32 15    works in theory, but will it work in practice?"

 16          You have a theory and then it's reduced to

 17     practice.  It's not a phrase or concept that is owned only by

 18     patent lawyers.

 19          THE COURT:  I'll come back to this in just a

18:32 20    moment.  I'm going to go back and word process, but I want to

 21     speak to Mattel for a moment, obviously, and I want to speak

 22     to MGA about two instructions I put yellow tabs on for just a

 23     moment.

 24          The first instruction is entitled -- and turn to

18:33 25    those instructions and then you can go out to dinner for

1    awhile -- the first instruction is entitled -- do you both

2    have it?

3            MS. HURST:  I do, Your Honor.

4            THE COURT:  Make sure your trial attorneys have it

18:33 5    and make sure your trial attorneys are sharing this.

6            It's entitled "to dispute a term at any time during

7    my employment."

8            So I want to break -- I gave you a packet of

9    instructions that had two yellow tabs on it.

18:33 10           MR. ZELLER:  We are now lost.  We are buried in a

11    sea of papers, so we'll find it.

12            (Laughter.)

13            THE COURT:  Well, come up here and take a look at

14    the bench.  I'm just joking.

18:33 15           MR. QUINN:  We've got it, Judge.

16            THE COURT:  You've got it; okay.

17            Now, we're going to pretend we're back in law

18    school for a moment.

19            But, remember, this is going up to the Circuit with

18:34 20    some very learned people who are going to start asking

21    themselves this question; so follow me closely with this, and

22    I want to the -- the first instruction is entitled "dispute a

23    term at any time during my employment."

24            So I want to break the issue down as follows, and

18:34 25    then have you discuss each point with me after you go to

1    dinner and I'll repeat this to give you a little bit of time,

2    just to take a break; okay.

3           So the term "at any time during my term of

4    employment in January 4th, 1999, 'employee confidential

18:35  5   information' and 'inventions agreement refers to the scope.'"

6           Now, I want you to focus on the word "scope" for a

7    moment "of Carter Bryant's employment between January 4th,

8    1999, and October 19th, 2000.  However, the parties dispute

9    whether the term 'also extends upon the scope of

18:35 10   Carter Bryant's employment' includes nights and weekends.

11   This is another dispute you must resolve."

12          And then it goes on, and you can read the remainder

13   of the instruction, but it states -- well, just for the

14   record:

18:35 15          "In order to own any of Carter Bryant's inventions,

16   first, Mattel must prove that Carter Bryant's Bratz-related

17   inventions were conceived or reduced to practice between

18   January 4th, 1999, and October 19th, 2000; and, second,

19   Mattel must also prove that the inventions were conceived or

18:36 20   reduced to practice at any time during Carter Bryant's

21   employment either because:

22          A, the inventions were conceived or reduced to

23   practice during the scope of Carter Bryant's employment; or

24          B, the term 'at any time during my employment'

18:36 25   extends outside the scope of Carter Bryant's employment

```
  1    includes nights and weekends."

  2          Now I've got five different thoughts for you.

  3          I think much attention for the past seven years has

  4    focused on the term "at any time."

18:36  5          "At any time."

  6          "At any time."

  7          But the Ninth Circuit suggests that the actual

  8    ambiguity is on the term "employment."

  9          "Employment."

18:36 10          "Employment."

 11          The Circuit wisely observes that "most people don't

 12    necessarily associate periods of time in their lives by

 13    reference to their employment" -- and I'm going to joke with

 14    you a little bit, but perhaps with the exception of the

18:37 15    attorneys that have dedicated their lives to this case for

 16    nearly a decade and most of their waking lives in this

 17    court -- "thus the phrase 'during my employment' may not

 18    mean, 'during the time that I am employed,' but instead,

 19    'during the time I perform my employment duties.'"

18:37 20          Do you understand what I just said?

 21          MR. QUINN:  Could you say it once more, Your Honor?

 22          THE COURT:  Yeah, yeah, take your time with this.

 23          The Circuit may be observing that most people don't

 24    necessarily associate periods of time in their lives by

18:37 25    reference to their employment, thus the phrase "during my
```

 1    employment" may not mean "during the time I am employed," but

 2    instead, "during the time I perform my employment duties."

 3         And I'll come back to this right after you get some

 4    food.

18:38 5         Second, to balance all of that in a way that's easy

 6    for the jury to understand, I use the phrase "outside the

 7    scope of my employment, including nights and weekends."

 8         I think Mattel, Mr. Quinn, is suggesting that I

 9    simply use the phrase "outside the scope of my employment,"

18:38 10   but my concern is the word "scope."

 11        "Scope."

 12        "Scope" may be ambiguous, in fact, very ambiguous.

 13   It isn't clear whether that means your actual job duties or

 14   things that relate to your employer's line of business."

18:39 15        So in reading Judge Kozinski's opinion, it's clear

 16   that he is not using the term "scope" to refer to works

 17   relating to the employer's line of business.

 18        Next, maybe a better formulation is to discard the

 19   word "scope" and use the phrase "during working hours while

18:39 20   performing tasks for the employer."

 21        "During working hours and while performing tasks

 22   for the employer."

 23        "During working hours and while performing tasks

 24   for the employer."

18:40 25        Now, I'm concerned for the purposes of each of your

```
 1   eventual appeals about undue emphasis being placed on the

 2   Labor Code exclusion in the inventions agreement.

 3          The Ninth Circuit thinks that you need to look

 4   outside the words of the contract to figure out what it

 5   means.

 6          And in a footnote, the Ninth Circuit explicitly

 7   rejected the conclusion that the Labor Code exclusion has any

 8   bearing on how the assignment clause should be interpreted.

 9          Now, that's my first thought before you go to

10   dinner tonight and I'm concerned.  I want to really talk to

11   you about this, and it may fill the rest of the evening.

12          MR. ZELLER:  Can I ask you to repeat the part of --

13   where you were talking about Judge Kozinski's thought of --

14          THE COURT:  Yeah, Judge Kozinski's opinion, I think

15   it's clear that he's not using the term "scope" to refer to

16   works relating to the employer's line of business; okay.

17          Now, second, I flagged the intentional interference

18   lost profits instructions for your thoughts on readability.

19   I want you to know that what I did was combine the opening

20   damages instruction with the lost profits instruction.

21          And I want to talk to you about that also when you

22   come back so you have a chance to get a little bit of food

23   tonight and just sort out some of your thoughts.

24          Now, concerning some tentative thoughts I have

25   concerning the issues you raised last night, Mr. Zeller, on
```

 1    behalf of Mattel, fraudulent concealment, I recognize this as

 2    an instruction that Judge Larson gave during phase 1.  I'm

 3    quite aware of that.

 4          And I also realize both parties in this case are

18:41 5    seeking to invoke the doctrine of fraudulent concealment; and

 6    I have two concerns.

 7          First is that this doctrine was developed at a time

 8    when statute of limitations did not incorporate discovery

 9    rules.

18:42 10          In this case, both the Copyright Act and the

 11    Uniform Trade Secrets Act have a discovery period built into

 12    the statute of limitations.

 13          I think, moreover, California courts have

 14    incorporated a discovery period into the statute of

18:42 15    limitations that applies to a claim for intentional

 16    interference with contractual relations.

 17          The statute of limitations under all three claims

 18    is tolled during a period of time during which a party could

 19    not have discovered through the exercise of reasonable

18:42 20    diligence the facts that would give rise to this claim.

 21          I guess what I'm trying to say is, in other words,

 22    under existing law, you're able to argue that the defendants

 23    fraudulently concealed the basis for your claims and that you

 24    could not have discovered your claims even through the

18:42 25    exercise of reasonable diligence, as a result.

     1              So tentatively this doctrine seems to have no

     2      application to these facts.

     3              Second, every other case concerning the fraudulent

     4      concealment applies in case of actual fraud.

18:43 5              Third, this is an equitable defense anyway, so it

     6      seems like I would be reserving that decision for myself.

     7              So I want to discuss that with you after dinner

     8      also.

     9              Second, this "joint and several liability."

18:43 10              I cannot locate any authority, so I'm asking for

    11      your help that applies joint and several liability in the

    12      context of the Uniform Trade Secrets Act.  And I'm not sure

    13      how that kind of theory would even apply in the context of

    14      unjust enrichment.

18:43 15              I've looked to see if a separate instruction is

    16      given in any copyright cases and found case law that applied

    17      the following principle in the context of preemption:

    18      "Copyright law already recognizes the concepts of

    19      contributory infringement and vicarious copyright

18:44 20      infringement concepts which extend joint and several

    21      liability to those who participate in the copyright

    22      infringement."

    23              And I'm citing *Irwin versus ZDF Enterprises, GmbH,*

    24      2006, WestLaw, 374960 at Footnote 4.

18:44 25              It's a Southern District of New York case.  It's

```
 1    filed on February 16th, 2006.

 2            I'm already instructing on vicarious and derivative

 3    liability for copyright infringement, so this kind of theory

 4    would seem to me to be redundant.

18:44  5            That leaves the joint and several liability on the

 6    intentional interference with contractual relations claim,

 7    but even as to this claim, isn't joint and several liability

 8    simply an issue about how an eventual judgment should be

 9    enforced against one or both defendants to the claim?

18:45 10            And I'd like to discuss that with you after dinner.

11            Concerning the unfair competition, Mattel's asking

12    me to give an instruction that the jury should disregard the

13    Kohl's allegation.  I think it's unduly consumptive of time

14    to have a separate argument without the jury present about

18:45 15   Kohl's.  It's just kind of strange at this juncture, but I'm

16    going to consider that.

17            I want to talk to you about that after dinner, once

18    again, and on the record.

19            In addition, what I'm struggling with is even if I

18:45 20   accepted Mattel's belief concerning the unfair competition, I

21    believe Kohl's allegations are also relevant to Mattel's lost

22    profits claim, so it leaves me right back in the same place.

23            Concerning party admissions, I have no strong

24    thoughts at the present time concerning that.  I don't even

18:46 25   have a tentative thought on that, so I want to hear
```

UNITED STATES DISTRICT COURT

 1    from both of you.

 2             Concerning the instruction regarding the liability

 3    of an affiliate for trade secret misappropriation, the

 4    problem here is that the trade secret misappropriation

18:46 5   statute already takes into account this sort of vicarious

 6    liability based on principles under agency law.

 7             The statute provides that one can be liable if he

 8    discloses or uses a trade secret that knows it was wrongfully

 9    acquired.

18:46 10            So I want to talk to you about that after dinner.

 11            Concerning privileged communications, Mr. Zeller, I

 12   think you're seeking an instruction that the jury should draw

 13   no conclusions from the assertion of the attorney-client

 14   privilege.

18:47 15            I think both parties seem to be in agreement about

 16   this, and I am too, but I want to make certain that you're

 17   still in agreement about that this evening, but I've always

 18   got a shifting landscape, so I don't want to presume, from

 19   what I heard last evening that there's still a continuing

18:47 20   agreement.

 21            And, finally, for work for hire, I'm already

 22   instructing the jury on the work-for-hire doctrine.

 23            I think, Mr. Zeller, you want an additional

 24   instruction saying that you own -- or Mattel owns not only

18:47 25   the copyrights in a work for hire, but the work itself.  I

UNITED STATES DISTRICT COURT

1   don't think that this is -- I think that this is just an

2   incorrect statement of law.

3          MR. ZELLER:  I think that what we were trying to

4   get across was, on that instruction, if I'm thinking of the

18:47 5   right one, was on the assumption that the registrations would

6   actually be in evidence in front of the jury.

7          THE COURT:  Right.

8          MR. ZELLER:  So it's predicated on that assumption.

9   The court wouldn't have to say anything along those lines if

18:48 10   the court is satisfied, as we think it's entitled to make

11   that determination, that it has subject-matter jurisdiction

12   based upon the -- the existing registrations.

13          THE COURT:  Okay.

14          MR. ZELLER:  So we -- we -- we don't think that

18:48 15   it's a jury issue and I didn't want the -- the court to think

16   otherwise, but it is -- but it is there as a somewhat

17   prophylactic instruction simply because we didn't want MGA to

18   argue from those registrations --

19          THE COURT:  I see.

18:48 20          MR. ZELLER:  -- that certain inferences should be

21   drawn from it because it's, frankly, a rather complicated

22   legal issue.

23          You can only pick one author on these.

24          If you pick work made for hire as the basis for

18:48 25   ownership, then you put the author as Mattel.  You can't put

1    down Carter Bryant as the author; Mattel's the author.

2           And that's why these are somewhat mutually

3    exclusive on the face of a copyright registration even though

4    the law is perfectly clear that you aren't electing anything.

18:48  5           There's the -- there's the Ninth Circuit case, in

6    fact, directly on point, and, in fact, it basically says that

7    even picking the wrong one can't be fraud on the copyright

8    office because it's just not material.

9           THE COURT:  Okay.

18:49  10           Now, I would suggest you go get a bite to eat.

11    It's going to be a very, very late night and I would suggest

12    that I get back and start doing some word processing on some

13    of the suggestions you've made in terms of the special

14    verdict and then I'm going to grab a quick bite to eat.

18:49  15           But I would just suggest we meet back here at,

16    what?  Do you want 8:00 or 7:30?

17           Do you want to try 7:30?

18           MR. QUINN:  7:30.

19           THE COURT:  I'm trying to get you out of here.

18:49  20           But, otherwise, if I'm not happy with this then I

21    take tomorrow night with the instructions because I want them

22    as good as I can get them in my time sending them to the

23    Circuit, but that leaves Mr. Quinn and Ms. Keller --

24           MR. MCCONVILLE:  Thank you.

18:49  25           THE COURT:  -- arguing, with me instructing

1    afterwards, which I'm trying not to do.

2         But if I get that box that's exactly what's

3    happening on Friday.

4         So a lot of hard work tonight; okay.

18:49 5         Let's try to get it as good as we can get them.

6         All right.  Now, go get yourselves a bite to eat;

7    we'll see you at 7:30.

8         (Recess taken.)

9         THE COURT:  Let's go back on the record and get

20:34 10   everybody.

11         Before we get on the record -- oh, second

12    amended -- all right.

13         (Pause in the proceedings.)

14         I'm going to wait for McConville.

20:35 15         (Pause in the proceedings.)

16         THE COURT:  All right.  Then we're back on the

17    record, Denise, all counsel are present.

18         Beginning this evening's session I want to address

19    two issues and I'm not inviting argument.

20:37 20         It's time that the court started setting records

21    now concerning the trade secret definition and this whole

22    issue of copyright preemption.

23         First I want to address you, Mr. Quinn, and

24    Mattel's concern about your trade secret definition.

20:38 25         I've heard this a number of times.

1         I'm hearing that your concern is that the court's

2    being arbitrary by setting a artificial deadline for

3    clarifying your claimed trade secrets in a litigation of this

4    magnitude, but I don't think that that's really what's at

20:38  5    work here.

6         I -- I continue to think that the disputes about

7    the precise wording of your trade secret definition will seem

8    very academic in retrospect and on appeal and here's why.

9         I think, unlike many of the other trade secret

20:38 10   cases, this is a case about artistic works.  You've claimed

11   that the drawings and sculpts are trade secrets, but have

12   then separately tried to articulate in words the concept

13   expressed by the works.

14        I think the old saying is a "picture's worth a

20:39 15   thousand words," so I think you should actually find a way of

16   limiting yourself to the following 66 words, and I'm going to

17   read them right into the record:

18        The concept of a multiethnic group of hip, urban,

19   edgy, trendy fashion dolls and accessories that are

20:39 20   high school friends with attitude, distinctive names,

21   nicknames, fashions, personalities, back stories and mascots,

22   as well as teenage girls' fashion dolls and accessories,

23   collectively known as "Bratz," including designs for large

24   oversized heads and feet, large eyes, large lips and small,

20:39 25   almost nonexistent noses and small bodies, I continue to

1    think that the separate identification of the concept is

2    ultimately unnecessary and probably unprecedented.

3         The more I've thought about this over the last

4    couple of months, in other trade secret cases you might have

20:39 5    the design, for instance, of a jet engine or some complex

6    chemical formula, maybe even a revolutionary drug, but I

7    highly doubt that a plaintiff in such a case would even

8    attempt to capture in words the complexity expressed in the

9    actual trade secret work itself, and I think your revised

20:40 10    trade secret definition exemplifies that problem.

11         By adding the words "specific concept created by

12    Carter Bryant" you're almost conceding to the jury that you

13    have no way of articulating Carter Bryant's particular

14    expression of the underlying concept.

20:40 15         I'm going to put it another way, because when you

16    went out to dinner I tried to do some drafting and writing.

17         If a jury looks at your revised definition, the

18    only way they'll be able to define "Carter Bryant's specific

19    concept" is by looking at the actual works of art themselves.

20:41 20         That's why -- and that's precisely why I thought it

21    would be far more helpful in your case and easy for the jury

22    if you simply abandoned the buckets and told the jury that

23    the drawings and sculpts and nothing more were trade secrets.

24         All my comments have been pragmatic concepts, "What

20:41 25    if?  What if?"  And I started on that on, I think, the first

1    Saturday I met you and other counsel and just the informal

2    meetings, but that's not a legal definition.  That was a

3    pragmatic concern on my part, that each juror interact and

4    find meaning in the drawings for himself or herself, but

20:41 5    that's the tactical move you've made and it's your right to

6    do so.

7            But, Ms. Hurst, that leads to my second point in

8    tying together this repetitive preemption argument.  I think,

9    after hearing what I just said to Mattel and Mr. Quinn,

20:41 10    you're probably inclined to tell me that that's everything

11    that you've been saying that exactly proves your claim that

12    this should be preempted by the Copyright Act.

13           But I thought last night, and I went back and

14    looked again, the test for copyright preemption doesn't just

20:42 15    look at whether the claimed trade secrets fall within the

16    subject matter of copyright, but also whether the alleged

17    conduct -- and I'm going to underline that and give you a

18    case to look at -- with a particular emphasis on conduct is

19    something that is not addressed by copyright law.

20:42 20           The Copyright Act prohibits the copying of

21    another's work.  Trade secrets law also prohibits that

22    conduct to the extent that it forbids the use or disclosure

23    of a creative work through copying.

24           But the trade secret law also prohibits the

20:42 25    acquisition of a secret work by inducing a breach of a duty

 1    to maintain secrecy.

 2            So last night you threw me back.  You're a very

 3    impassioned person and I tend to try listen, anyway, and it

 4    gave me a little pause.  So I went back last night and I went

20:42  5    back again this evening and I am correct and you're wrong.

 6            I'm going to cite to you a case called *Computer*

 7    *Associates International, Inc., versus Altai;* A-l-t-a-i.

 8            It's at 982 F.3d 693.  It's a Second Circuit 1992

 9    case where the majority and even the dissent agreed that

20:43 10    inducing a breach of a duty to maintain the secrecy of

 11    copyrightable subject matter is not conduct preempted by the

 12    Copyright Act.

 13            The key language begins on Page 720 of the opinion.

 14            So this is the last time I'm going to talk about

20:43 15    preemption and I'm not going to listen to any argument in

 16    response.  I'm going to start setting my records now since

 17    everybody's been bent the last couple nights on setting their

 18    records for appellate purposes.

 19            I thought this would be a good opportunity, though,

20:43 20    to tie together the two core issues in this case which are

 21    trade secret definitions and preemption.

 22            Now I'm done and I'm not inviting comment to that.

 23            Now I'm going to go back to the instruction.

 24            I'm going to start by saying I think you're

20:44 25    absolutely right.  It's amazing how much I can think when I

 1    get away from all of you.

 2          Mitigation doesn't make sense in trade secret

 3    misappropriation nor copyright.  Where it comes into play,

 4    unfortunately, on what I deem is a $50,000 claim, quite

 5    frankly -- and I'm putting you on fair notice right now.  I'm

 6    going to look very closely at any verdict that comes in on a

 7    trade secret misappropriation -- strike that -- on an

 8    intentional infliction or intentional interference;

 9    I'm sorry.  I have tort cases back there.  On intentional

10    interference claim.

11          There mitigation is appropriate, and I'll give that

12    instruction, but I caution you, when I throw in a mitigation

13    instruction -- and listen carefully, Mr. Zeller.  This is the

14    last opportunity --

15          MR. ZELLER:  I'm writing it down.

16          THE COURT:  Here's what's going to happen.

17          On a claim that's probably worth a di minimus

18    amount of money, I think MGA's right.  I've got to give

19    mitigation on the intentional interference claim, and what

20    that's going to do is take your very wise argument and

21    confuse the jury, because I don't believe -- and I'm going to

22    go back and do a lot more research tonight -- but I'm pretty

23    far down the line that MGA's not entitled to a mitigation

24    instruction on trade secret misappropriation and copyright.

25          Now, I want you to go with full wording if you get

1    up to the Circuit and start saying, gee, Judge, this was

2    confusing.  This, what I view as a di minimus claim, is

3    asserting all sorts of confusion that you're requesting, so

4    you're going to get this mitigation instruction on this

20:46  5    intentional interference claim.

6         Now, I'm going to go back and look at the JMAL

7    again tonight.  I'm just starting to read it, and I have to

8    admit, Ms. Hurst, both of you have gored each other -- I'll

9    say that for the record -- but you've got time to react and

20:46 10    adjust your case and that's why you're coming before me with

11    some of the issues on Mattel's part and I'll talk to MGA

12    about your reduction to practice in just a moment.

13         I probably will let this claim go to the jury, and

14    I'm probably going to accept tentatively your argument that

20:46 15    for a limited period of time, although you'll stretch that to

16    the maximum, that the dolls could not have been created

17    without the seamstress, but I'm -- it's very limited.

18         And you just have to weigh very carefully if it's

19    worth the introduction of mitigation instructions, which I

20:47 20    will tailor-make, by the way, to that claim.  In other words,

21    it will be well defined to that claim, but it's going to

22    insert such confusion that I don't think Mattel can complain

23    in the future.

24         The other area that I'm fairly well convinced of,

20:47 25    and I'll talk to you after we get done with the majority of

1    the instructions, is I really don't want to introduce a -- a

2    patent concept and define "reduction to practice."

3          By the same token, I think that you're probably

4    entitled to present that evidence, and you wanted to be put

20:47  5    on notice.  So I'm putting you on notice for surrebuttal

6    tonight that you can bring in that person.

7          Now, Mattel's going to claim prejudice and take you

8    to the Circuit on that, et cetera, but you have the coequal

9    argument when it goes up to the Circuit that there has been a

20:48 10   last-moment interjection.

11         Now, I'll think about that a little while because

12   we've got a lot more work to do tonight, because I even get

13   down to the practical aspects of the contracts and the codes.

14   But I think, Mr. Quinn, you can expect tomorrow that through

20:48 15   your Dail and -- I can't pronounce it -- Schoffhauser --

16         MR. QUINN:  I think that's -- that's as good as I

17   can do, Judge.

18         THE COURT:  -- that you will have some opportunity

19   to produce the codes and the contracts, and I think that's

20:48 20   part of what was bargained for, quite frankly, and it doesn't

21   affront my expectations and I don't think it's substantially

22   is to the detriment of MGA, although they'll claim it is.

23         My concern's with the copyright right now, and

24   that's what I need to spend a lot more time on this evening.

20:49 25         First of all, most of that's hearsay, and so when

1    you turn each of these documents to the second page, I've got

2    a bundle of hearsay information that strikes right at the

3    heart of this case.  And I've got to give a limiting

4    instruction, if I give this, or simply cause the excision of

20:49  5    those -- those pages that are absolute hearsay, and I'm very

6    concerned about it.

7              I'm not inviting comment now.

8              Thank you very much.

9              MR. QUINN:  Okay.

20:49 10             THE COURT:  I'm also not going to get into any

11   further dispute about what's in the three binders or what

12   wasn't.  That's something that the two of you will wrestle

13   with the rest of your lives, but I don't think I should be

14   making decisions on binders that are simply held up and then

20:49 15   choosing which party was right or wrong and which was

16   included.

17             I'm a judge and I'll make the legal decisions and

18   then you'll take them to the Circuit.

19             Now I want to go over the things that I started

20:50 20   with.

21             I want to go back to this disputed term and I'll

22   tell you I'm concerned and you know what I'm concerned about;

23   it's this word "scope."

24             So I'm going to invite argument, first of all, from

20:50 25   MGA and any thoughts you have concerning that first yellow

1    tag page and then I'm going to turn to Mr. Quinn.

2            MS. HURST:  Thank you, Your Honor.

3            THE COURT:  Or Mr. Zeller; I'm sorry.  Either one.

4            MS. HURST:  We agree with the court's concern and

20:50  5    its conclusion that "scope of employment" is not supposed to

6    be broad enough to encompass line business.

7            And, in part, with reference to the Copyright Act

8    in its conception of the work-made-for-hire doctrine, but

9    more generally as well, "scope of employment" is usually

20:51 10    considered to be assigned job duties.

11           And so we agree with the suggestion that the phrase

12    "scope" should be disregarded -- or discarded in favor of

13    "during working hours and while performing tasks."

14           I would suggest "assigned by the employer," but for

20:51 15    the "employer."

16           The only concern we have is that in 2(b) that it's

17    clear that our position is not that if somebody takes work

18    home, you know, that is their assigned job duty, that --

19    that -- I mean, we're not saying that if somebody takes work

20:51 20    home that is part of their assigned job duties that that

21    wouldn't be covered, and so that's why we'd suggest that the

22    word "and" -- I wasn't sure if the court said "and" frankly.

23    Some of us wrote down "and" and some of us didn't.

24           THE COURT:  No, during work hours and while

20:52 25    performing tasks for the employer.  That's just the beginning

1    of what I'm trying to work through.

2              MS. HURST:  So that would solve the problem, the

3    potential problem in 2(b) of the insertion of the word "and"

4    and we think that change -- we agree that that change should

20:52 5  be made.

6              THE COURT:  I'm going to go back and forth a couple

7    times.  It's really caused me a lot of problems over the

8    weekend, and I want to talk to Mr. Zeller or Mr. Quinn or

9    both of you.  It doesn't matter.

20:52 10             MR. QUINN:  Well, Your Honor, we tried to catch it

11   as you read it and we actually think it sounds -- we agree

12   that it sounded like an improvement to us, this switching to

13   the language of working --

14             THE COURT:  Let me say it again.

20:52 15             There's no time limit on this.

16             This is one of the two instructions that really --

17   and by the way, you're right, I'm going to -- I've left out a

18   substantial amount of the copyright sections that you noted.

19   I'm going to come back and correct that and show you, so take

20:53 20  that off of our list in just a moment as well.

21             I originally had written "during working hours and

22   while performing tasks for the employer."

23             Now, that's just beginning draftsmanship and I

24   really thought I'd have more time during the week than I had,

20:53 25  and that's why I haven't been able to come back to it; and I

1    meant to raise it with you earlier in the week.  We just

2    haven't had, you know, the time.

3         And that's why, in a way, I'd like to be

4    instructing on Monday.  My problem is if I don't solidify

20:53 5    these instructions, you don't want to be on a slippery slope

6    making an argument that later is undermined; so for good or

7    bad we're going to do some instructions tonight and then I'll

8    do some work after you leave.

9         Now, if you can improve on that language -- I'm

20:54 10   going to read it to parties again -- "during working hours

11   and while performing tasks for the employer" -- and I'm open

12   to any suggestion.

13        This is one where I'm not cutting you off.  I'm

14   actually asking for whatever wisdom you have.

20:54 15        (Pause in the proceedings.)

16        THE COURT:  You see what happened in the first

17   trial.  You get into a nights-and-weekend situation based

18   upon the testimony, and that just kind of carried forward

19   into the instructions and it became a mantra and -- and I

20:54 20   agree that Judge Kozinski didn't address it, but he wasn't

21   using "scope of employment."

22        So any -- any thoughts, Ms. Hurst?

23        You're an excellent draftsperson and I'm listening.

24        MS. HURST:  Yeah; only the suggestion that I

20:55 25   mentioned "during working hours and while performing tasks

1    assigned by the employer."

2          MR. QUINN:  We would object to that change,

3    Your Honor.  It's too confining.

4          THE COURT:  It's too confining.

20:55 5          Yeah, I agree.  It means that I have to

6    specifically assign a task.  It just directs the verdict.

7          I think that -- I think that "for the employer" is

8    about the best I can come up with thus far.

9          Now, if any of you can use another word besides

20:55 10   "assigned" -- okay.  Don't be surprised if when you come in

11   tomorrow that that's a change.  I want to think about it a

12   little bit more, but I think that that has about a 50 to

13   80 percent chance of changing and I just need time after you

14   leave tonight.

20:55 15         All right.  Now I want to go back to this -- the

16   readability of the intentional interference lost profit

17   instruction.  I'm concerned about that also.

18         Remember, I used the opening damages instruction

19   with the lost profits instruction, and I'm open to any

20:56 20   suggestion that you have.

21         And then I'm going to throw it open to you again

22   for any comments, and then if you'll give me half an hour to

23   two hours I'll give you a completed set, subject to meeting

24   you again at 7:30 tomorrow morning.  But I need a couple

20:56 25   hours after you leave tonight or most of the evening.

```
 1              (Pause in the proceedings.)

 2              (Discussion held off the record.)

 3              THE COURT:  Do you want to think about that for

 4         awhile and let me go back and make some more word processing

20:57  5    changes?

 6              MS. HURST:  I think -- I mean, I think we're okay

 7         with it.

 8              My understanding of the general rule here is

 9         certainty in the fact of damages and reasonable calculation

20:57 10    of the amount.

11              We were concerned that the court make it clear that

12         this didn't extend to the same thing as the trade secret

13         claim.  The court has done that.

14              I mean, I'm sure there may be some more simplistic

20:57 15    way of saying that, but we think the concept is here and it's

16         important for that concept to be here.

17              THE COURT:  Okay.  Give Mr. Zeller some time, and

18         then I'll try to get out a preliminary draft tonight that's

19         pretty far down the line, if you'll just bear with me for

20:58 20    awhile.

21              MS. HURST:  Your Honor, I have trade secret and

22         copyright cases where mitigation was applied.

23              THE COURT:  Do you?

24              MS. HURST:  Yeah.

20:58 25         THE COURT:  Okay.
```

UNITED STATES DISTRICT COURT

Case 2:04-cv-09049-DOC-RNB   Document 10441   Filed 04/08/11   Page 81 of 178   Page ID #:317214
CV 04-9049 DOC - 04/06/2011   Volume 4 of 4

81

 1          MS. HURST:  And also California Supreme Court says

 2    in all torts that the doctrine of avoidable -- even

 3    intentional torts -- the doctrine of avoidable consequences

 4    applies.

20:58  5          It also says when you confer a benefit that's

 6    coincident with your tortious behavior that that has to be

 7    netted out and that may be even more precisely on point here

 8    in terms of what we're talking about.

 9          In other words, MGA came in and -- and that's a

20:58 10    form of mitigation, that conferral of special benefit is a

 11    form of the mitigation doctrine.  What we had here was MGA

 12    came in and expanded the market and opened it up to the -- in

 13    the older girls, and then Mattel followed.  And as a result

 14    they earned 260-whatever million dollars in profit that they

20:59 15    would not -- I mean, there's no showing that they would have

 16    done, you know, two dolls there at the same time.  So there's

 17    no reason to believe that that's anything other than a net

 18    benefit, and that -- California law clearly recognizes as a

 19    form of mitigation.

20:59 20          THE COURT:  I want the cases.

 21          I'm going to go back and look right now.  It's too

 22    important an issue to let slide.

 23          MS. HURST:  So first of all here's a trade secret

 24    case in which a mitigation was applied.  It's a New York

20:59 25    case, *Suburban Graphics Supply versus versus Nagle*.

1          THE COURT:  What's the cite on it?

2          MS. HURST:  It's 5 A.D.3d 663.

3          THE COURT:  Okay.

4          MS. HURST:  That's the appellate division in the

20:59 5    New York state court.

6          THE COURT:  Okay.

7          MS. HURST:  Conditionally --

8          THE COURT:  Anything in California?

9          MS. HURST:  I haven't found anything discussing it

21:00 10   one way or the other.

11         THE COURT:  Ninth Circuit?

12         MS. HURST:  Nope.  Not yet.

13         THE COURT:  Second Circuit?

14         MS. HURST:  No.

21:00 15   THE COURT:  Let me list them off to you.

16         MS. HURST:  We've got a lot of unpublished cases.

17  Actually, ours are published at least.  Theirs are not.

18         *NCH Corporation versus Broyles* 563 F.Supp 142,

19  that's a breach of a covenant to keep secret, so -- and then

21:00 20  a copyright case where the assumption -- there was an

21  assumption that mitigation applied and an analysis of whether

22  it was available on a fact, *Gener-Villar* -- G-e-n-e-r,

23  hyphen, Villar, V-i-l-l-a-r -- *versus Adcom*, 560 F.Supp.2nd

24  112.

21:01 25   THE COURT:  Okay.

 1              MS. HURST:  And then the doctrine that I -- that I

 2    was talking about, the conferral of benefit doctrine, a

 3    couple of California Supreme Court cases, *Maben versus Rankin*

 4    55 Cal.2nd 139; *Turpin versus Sortini*, there's a discussion

21:01  5    in --

 6              THE COURT:  What's the cite in *Sortini*?

 7              MS. HURST:  Oh, I'm sorry.

 8              31 Cal.3d 220.

 9              THE COURT:  Thank you.

21:01 10              MS. HURST:  And there is a discussion of mitigation

11    in Witkin Summary of California Law at Section 1629 which

12    makes clear it's applicable across the board to all torts in

13    California including intentional torts, and so does the CACI

14    instruction, Your Honor, it says so in the use notes.

21:02 15              THE COURT:  Yes.

16              MR. QUINN:  Your Honor, if I could just respond to

17    the argument about growing the market.

18              THE COURT:  Yes.

19              MR. ZELLER:  That is counted for in the lost

21:02 20    profits calculation.  I mean, if the market grows and we sell

21    more dolls because of that, that in itself is -- is --

22    becomes part of the lost profits calculation.

23              In other words, because the market grew, our lost

24    profits are not as large as they otherwise would have been,

21:02 25    but that is not an argument for our having a duty to come out

 1    with a new doll.

 2              When you talk about mitigation, that's a duty that

 3    a plaintiff has to mitigate the defendant's damages so it's a

 4    completely different concept.  And if we impose some

21:02 5    additional obligation to have done something more and also

 6    took into account the fact that our damages were reduced

 7    because the market grew, you'd be double-counting.

 8              MS. HURST:  Your Honor, that's an issue of fact for

 9    the jury.  There was a hotly- -- a hot dispute between the

21:03 10   two damages expert on that point, and it's -- it's -- it's

 11   not at all -- I mean, Mr. Wagner said it, but the reality is

 12   if you take MyScene out of his calculation their lost profits

 13   goes down and that means that they did not take this into

 14   account and the jury is entitled to decide who had the better

21:03 15   of this issue.

 16              And the fact of the matter is it's -- they did

 17   mitigate, they did follow us into the newly-expanded market

 18   and they benefitted as a result.  They did turn on the hose.

 19              THE COURT:  Okay.  Now, let me go do some research;

21:03 20   let me come back out.

 21              It's worth zero or hundreds of millions of dollars.

 22              MS. HURST:  Exactly.

 23              THE COURT:  So let me spend a little bit of time.

 24              What else -- and I'm your servant until you're done

21:04 25   with me, but then you're mine until I'm done doing my

```
 1   research, so you tell me what else -- and I'll throw it open

 2   to MGA and then Mattel and then we're done.

 3             MS. HURST:  There is a couple of things that might

 4   even be typos.

 5             THE COURT:  Sure, I would welcome those

 6   corrections.

 7             I went to a public school.

 8             MS. HURST:  So did I, Your Honor, by the way.

 9             The court's said that before and I haven't been

10   able to jump in, so --

11             THE COURT:  Where are we at?

12             Let's just go through them.  This takes two

13   seconds.

14             Yeah, one by one.

15             Duty of jury.  Any instruction -- any objections?

16             MS. HURST:  No.

17             THE COURT:  Claims and defenses, Mr. Zeller?

18             MR. ZELLER:  Yes.

19             THE COURT:  Any objections?

20             MR. ZELLER:  I was hoping Mr. Quinn was going to

21   take this laboring oar.

22             THE COURT:  Burden of proof, preponderance of the

23   evidence?

24             Any nits, any problems?

25             Burden of proof, preponderance of the evidence; any
```

 1    problems or issues?

 2              MS. HURST:  No.

 3              THE COURT:  Two or more parties, different legal

 4    rights?

21:05  5          MR. ZELLER:  No.

 6              MS. HURST:  No.

 7              THE COURT:  Any nits, any problems?

 8              MR. ZELLER:  No.

 9              MS. KELLER:  No.

21:05 10         THE COURT:  Corporations and partnerships, fair

11    treatment.

12              What is evidence?

13              Any disagreements?  Any nits?

14              What is not evidence?  Any problems or issues?

21:05 15         Evidence for a limited purpose, any issues of

16    disagreements?

17              Direct or circumstantial evidence?

18    No disagreements.

19              Rulings on objections?  No disagreements.

21:05 20         Credibility of witnesses?  Any disagreements?

21              MR. ZELLER:  No.

22              THE COURT:  These are standard instructions so far.

23              Stipulations of fact.  I need the exhibit.

24              MS. HURST:  Yeah; we need to deal with that still.

21:05 25         MR. ZELLER:  And I do have an issue, as I mentioned

 1    before, with judicial notice as well.

 2              I think, frankly, that that would just be combined

 3    and it just simply ought to say that "the following facts

 4    should be taken as true by you," because I -- I am concerned

21:06  5    that some of these things, particularly where it says "the

 6    court has decided to accept as proof the fact that" --

 7              THE COURT:  Now, where are you?

 8              MR. ZELLER:  I'm actually on the -- this is the

 9    stipulations of fact, together with the judicial notice

21:06 10    instructions.  I think that these ought to be combined and

11    simply say "you, the jury, should take the following facts as

12    proven" and then we'll have, you know, a list of what those

13    are.

14              I'm a little concerned that having "judicial

21:06 15    notice" here is going to give all those registrations that

16    MGA introduced through judicial notice undue weight.  It's

17    going to make it sound like the court has somehow given its

18    imprimatur on these facts, where I think something more

19    neutral can be done.  You can just simply say, you know,

21:07 20    combining, really, the stipulations of fact and judicial

21    notice instruction and say, "you should take the following

22    facts as being been proven."

23              MS. HURST:  It's a standard-form instruction.

24              THE COURT:  First of all, I don't think I'm going

21:07 25    to reiterate where it says "state the facts, fill

CV 04-9049 DOC - 04/06/2011 - Volume 4 of 4

```
 1     in the blank."

 2             Just "the court has decided to accept as proved" --

 3     well, I'll maybe rework that.

 4             "Certain matters that I took judicial notice of,

21:07  5     you must accept this fact as true."  I'll rework that.

 6             MS. HURST:  It's going to be on an exhibit,

 7     Your Honor.

 8             It's going to be referred to in the same way.

 9             MR. ZELLER:  And that's what causes me concern is

21:07 10     that it's going to be the court -- and the word "the court"

11     is used here in the instruction and reiterating, and they're

12     going to say that because the court took judicial notice of

13     these registrations that the facts in the registrations too

14     must be taken as true.

21:07 15             THE COURT:  Let me turn down both of those pages.

16             (Pause in the proceedings.)

17             THE COURT:  So the parties have agreed to certain

18     facts to be placed in evidence -- why not just a period?

19             "You should therefore treat these facts as having

21:08 20     been proved"?

21             MS. HURST:  I mean, for stipulations of fact that's

22     fine, but these weren't stipulations.

23             I mean, we had a --

24             THE COURT:  Just a moment.

21:08 25             You entered into a couple stipulations.
```

UNITED STATES DISTRICT COURT

CV 04-9049 DOC - 04/06/2011 - Volume 4 of 4

```
 1              MS. HURST:  Yes, yes.

 2              THE COURT:  So let's take stipulations of fact.

 3              Those stipulations were stated at the time.

 4              MR. ZELLER:  They were.

21:08  5        THE COURT:  There's no reason to go back and attach

 6      an exhibit number now when we didn't attach an exhibit number

 7      at the time.

 8              MR. ZELLER:  Right.

 9              THE COURT:  It ought to readjust very simply:  "The

21:08 10    parties have agreed to certain facts to be placed into

11      evidence.  You should therefore treat these facts as having

12      been proved."

13              MR. ZELLER:  Well, we could say "certain facts that

14      were placed in evidence."

21:08 15        I think it -- it's historical at that point.

16              THE COURT:  Just --

17              MR. ZELLER:  "The parties agreed to certain

18      facts" --

19              THE COURT:  "Placed in evidence."

21:09 20        MR. ZELLER:  Yeah, "placed in evidence."

21              THE COURT:  "You should therefore treat these facts

22      as having been proved."

23              Done; okay.

24              (Pause in the proceedings.)

21:09 25        THE COURT:  I will do the judicial notice and tell
```

UNITED STATES DISTRICT COURT

|         |    |                                                              |
|---------|----|--------------------------------------------------------------|
|         | 1  | you what that is when I come out.                            |
|         | 2  |          Deposition in lieu of live testimony.  Any         |
|         | 3  | disagreements?                                              |
|         | 4  |          MR. ZELLER:  No.                                    |
| 21:09   | 5  |          THE COURT:  Now, this doesn't waive any prior      |
|         | 6  | objections or disagreements.  This is just going through with |
|         | 7  | the nits.                                                   |
|         | 8  |          Impeachment evidence, witness?                      |
|         | 9  |          MR. ZELLER:  No.                                    |
| 21:10   | 10 |          THE COURT:  Okay.  Annette?                         |
|         | 11 |          MS. HURST:  No.                                     |
|         | 12 |          THE COURT:  Use of interrogatories of a party?     |
|         | 13 |          Unless I hear something different I'll just read   |
|         | 14 | them, if there's a nit.                                     |
| 21:10   | 15 |          MR. ZELLER:  I think this may be unnecessary.  I   |
|         | 16 | don't recall any interrogatory answers being read to the    |
|         | 17 | jury.                                                       |
|         | 18 |          THE COURT:  Weren't there?                          |
|         | 19 |          MS. HURST:  Mr. Cote did.                           |
| 21:10   | 20 |          MR. MCCONVILLE:  Mr. Cote did.                      |
|         | 21 |          MR. ZELLER:  I will be corrected.  I'm sorry.      |
|         | 22 |          THE COURT:  Expert opinion?                         |
|         | 23 |          MS. HURST:  Fine.                                   |
|         | 24 |          THE COURT:  Charts and evidence not received into  |
| 21:10   | 25 | evidence?                                                   |

```
 1              MR. ZELLER:  Fine.

 2              MS. HURST:  Fine.

 3              THE COURT:  Charts and summaries in evidence?

 4              I can't remember any.

21:10 5         MR. MCCONVILLE:  Well, there was the -- with the

 6     forensic fella.

 7              MS. HURST:  Yeah, there is a couple.

 8              MR. MCCONVILLE:  There was a couple of charts that

 9     you accepted because they were just copies of --

21:10 10        MS. HURST:  Well, they were the tests.

 11             THE COURT:  Well, I thought when -- this is the --

 12             MR. MCCONVILLE:  No, it was Cunningham; right?

 13             MR. QUINN:  Actually, some -- some were received

 14    with both Cunningham and Aginsky.

21:11 15        THE COURT:  Aginsky.

 16             MS. HURST:  Yeah, those are in.

 17             THE COURT:  Declaratory relief.  Any nits?

 18             Disputed term inventions?

 19             MR. QUINN:  Yeah, we have some issues here.

21:11 20        THE COURT:  Okay.

 21             MR. QUINN:  The words "includes should we suggest"

 22    should be followed by "but is not limited to, all."

 23             THE COURT:  Just a moment.

 24             In the bottom -- "however the parties' dispute"?

21:11 25        MR. QUINN:  May I hand up to the court a redline
```

```
 1    with some additional words?
 2              THE COURT:  No, just that one page.
 3              I appreciate the work, but I'm done with the
 4    avalanche now.
 5              MS. HURST:  Can we have a copy?
 6              MR. QUINN:  Can we have a copy, Phil.
 7              THE COURT:  Thanks.
 8              (Pause in the proceedings.)
 9              THE COURT:  Okay.  I'll take it back and look at
10    it.
11              I'm going to work on disputed term "at any time
12    during my employment."
13              Interpretation and meaning of ordinary words.  Any
14    issues?
15              MR. MCCONVILLE:  No.
16              THE COURT:  All right.
17              Now, we're not going back and rearguing the
18    instructions.  These are just nits, et cetera, things you
19    said you might have noticed.
20              Interpretation; meaning of technical words.  Now
21    I've got to work on that.
22              Interpretation; construction of contract as a
23    whole; construction by conduct.
24              MS. HURST:  Your Honor, on "technical words," can
25    we have a judicial notice of the Black's Law Dictionary
```

1     definition of "reduction of practice" and leave it at that?

2             It's right in there, Black's Law Dictionary.

3             THE COURT:  What does Black's Law Dictionary say?

4             MS. HURST:  I have it.  Give me a moment.

21:13  5       THE COURT:  It's like saying, Judge, would you

6     agree to the following.

7             MS. HURST:  Give me one second.  I have it printed

8     out in the other room.

9             THE COURT:  No, I'll come back to it.  I don't have

21:13 10   to get it.  I can find Black's Law Dictionary, believe it or

11    not.

12            All right.  Interpretation, construction of

13    contract as a whole?

14            Okay.  Construction by conduct?

21:13 15       Interpretation and construction against drafter,

16    you said you had some nits or --

17            MS. HURST:  Your Honor, on that I would suggest it

18    would be a little clearer if the words "uncertainty" -- after

19    the word "uncertainty" in the contract were added so that

21:13 20   it's --

21            THE COURT:  "In cases of uncertainty in the

22    contract not removed by the preceding rules"?

23            MS. HURST:  Actually, "the final uncertainty."

24            "It should be interpreted most strongly against the

21:13 25   party who caused the uncertainty in the contract to exist."

1                The last line.

2                MR. QUINN:  This is right out of the statutory

3      language, Your Honor.

4                THE COURT:  I just took it right out of the

21:14 5    instruction.

6                Introduction, copyright infringement?

7                MS. HURST:  Yeah, "joint author" should come out.

8                It's gone.  Never mind.  It looks like it's gone.

9                THE COURT:  It's gone.

21:14 10               MS. HURST:  Thank you.

11               THE COURT:  Copyright defined?

12               MS. HURST:  We're good.

13               THE COURT:  Now, let me start giving you some

14     supplementals for just a moment.  I agree that portions were

21:14 15   taken out, and I -- I'll do it.

16               (Discussion held off the record.)

17               MS. HURST:  I have that definition, Your Honor.

18               THE COURT:  Just keep it for a moment.

19               I'll come back to you; okay.

21:17 20               We'll clean this up in a minute.

21               All right.

22               "Copyright" defined?

23               MS. HURST:  No problems here.

24               THE COURT:  Okay.  That doesn't mean you're

21:17 25   consenting.

1            Copyright, subject matter, generally?  Any nits?

2            Copyrights, subject matter, ideas and expression?

3            Copyright infringement, elements, ownership and

4    copying?

21:18  5            MR. QUINN:  We do have a comment here, Your Honor.

6            THE COURT:  Okay.

7            MR. QUINN:  Subpart 2 should ask whether Mattel is

8    the author of the sketches, drawings and sculpts and works

9    made for hire or received each -- I'm sorry --

21:18 10            THE COURT:  Sure.

11            MR. QUINN:  I'm sorry; that's the next instruction.

12            THE COURT:  Let me do this.  Let me do this.  I've

13    already got --

14            (Discussion held off the record.)

21:19 15            THE COURT:  All right.  Let's go back.

16            Copyright infringement, elements, ownership and

17    copying?

18            Copyright infringement, ownership of valid

19    copyright definition?

21:19 20            MR. ZELLER:  This is the one we had a comment on --

21            THE COURT:  Okay.

22            MR. ZELLER:  -- because we -- I think we need to

23    insert the concept of "work made for hire" here because it

24    says that Mattel received a transfer.

21:19 25            So what we'd suggest is saying "Mattel is the owner

1     of the sketches, drawings and sculpts because they are works

2     made for hire and/or because Mattel received a transfer of

3     the copyright in the sketches, drawings and sculpts."

4              THE COURT:  Now, repeat that slowly.

21:20  5              MS. HURST:  You're just reading Point 2; is that

6     right, Mr. Zeller?

7              THE COURT:  Yes, Subsection 2.

8              MR. ZELLER:  Right; subsection 2.

9              THE COURT:  So 1 remains:  "Sketches, drawings and

21:21 10    sculpts are original," and we're on No. 2.

11             MR. ZELLER:  And No. 2 --

12             THE COURT:  Very slowly.

13             MR. ZELLER:  -- "Mattel is the owner of the

14    sketches, drawings and sculpts" --

21:21 15             THE COURT:  Just a moment.

16             MS. HURST:  Did you mean "author"?

17             MR. ZELLER:  We could say "author" but I thought

18    "owner" was just --

19             THE COURT:  "Author" would be more consistent,

21:21 20    wouldn't it?

21             MS. HURST:  That's the legally correct.

22             MR. ZELLER:  It is the legally correct term is

23    "author."

24             THE COURT:  But it's confusing when we start with

21:21 25    "owner" in the first sentence.

UNITED STATES DISTRICT COURT

CV 04-9049 DOC - 04/06/2011 - Volume 4 of 4

```
 1              MR. ZELLER:  Exactly, and that's why.

 2         I just think --

 3              THE COURT:  Well, let's finish the thought.

 4              MR. ZELLER:  So the thought is "Mattel is the" --

21:21  5         THE COURT:  "Owner of these sketches, drawings and

 6    sculpts."

 7              MR. ZELLER:  -- "and sculpts because they are works

 8    made for hire or" -- "and/or because Mattel received a

 9    transfer of the copyright in the sketches, drawings and

21:22 10   sculpts."

11              (Pause in the proceedings.)

12              THE COURT:  Why?

13              MR. ZELLER:  Because we have two theories.

14              THE COURT:  I mean, what is substantially different

21:23 15   than Subsection 2?

16              MR. ZELLER:  Well, because this explains that

17    Mattel can be the owner of the works at issue either by way

18    of the works-made-for-hire doctrine or by virtue of the

19    transfer.

21:23 20         Right now as phrased it only reflects that Mattel's

21    ownership is by way of assignment, potentially.

22              THE COURT:  But you could simplify that

23    dramatically by simply saying "and Mattel received a transfer

24    of the copyright and the sketches, drawings and sculpts

21:23 25   and/or Mattel is the owner of the sketches, drawings and
```

1    sculpts because they are work made for hire."

2            MR. ZELLER:  That formulation is fine for us as

3    well.

4            THE COURT:  In other words, you just want the two

21:24  5    concepts?

6            MR. ZELLER:  Right.

7            THE COURT:  Let me think about that for awhile.

8            Ms. Hurst.

9            MS. HURST:  I do think it should be "author," but

21:24 10    apart from that if the court is going to permit the jury to

11    be charged on the work-made-for-hire doctrine then I agree

12    that this is an appropriate way to do so.

13            THE COURT:  So Mattel is the author of the

14    sketches, drawings and sculpts because they are work made for

21:24 15    hire and/or Mattel received a transfer of the copyrighted

16    sketches, drawings and sculpts.

17            MS. HURST:  I don't think it's "and."  I think it's

18    just "or."

19            It's one or the other, not both.

21:24 20            THE COURT:  Let me go back and word-process it

21    because we'll be one or two words off.  Let me just look at

22    it.

23            MR. ZELLER:  I am concerned about the word "author"

24    that it is not parallel with the word "owner."

21:25 25            THE COURT:  In the special verdict it doesn't make

1    sense either.

2         MR. ZELLER:  Exactly.

3         MS. HURST:  Well --

4         MR. ZELLER:  And the court also is now inclined by

21:25  5    virtue of me now seeing the copyright infringement authorship

6    instruction, it will make it very confusing to the jury and

7    then they'll go and look at the authorship instruction which

8    won't talk about the fact that a work made for hire makes the

9    employer the author under the law.

21:25 10         We'd have to, I think, to be clear and complete,

11    have to explain that concept to the jury and, frankly there

12    is no need to in this case.

13         THE COURT:  Let me get in the back and think about

14    it for a moment.

21:25 15         Copyright interest; work made for hire.

16         Copyright interest assignee.

17         Copyright infringement.

18         Copyright derivative work.

19         Copying; excess of substantial similarity.

21:26 20         MS. HURST:  Hold on we got the new derivative work

21    one already.

22         THE COURT:  The derivative work should go -- here,

23    let's substitute that right now.

24         And Ms. Hurst, look at that for a moment.  I think

21:26 25    that will answer your concerns and issues you

1    noted last night.

2              MS. HURST:  Let me just check.

3              THE COURT:  Also --

4              MS. HURST:  This is the reason why it's important

21:26  5    to say "author" in the prior instruction, because if they

6    found on some and not on the others it needs to carry -- the

7    concept needs to carry through properly so they all --

8              THE COURT:  Let me go back.  Let me go back.

9              Just a moment.

21:26 10              Let me go back to which instruction?

11              MS. HURST:  The one we were just talking about

12    whether in the work-made-for-hire part of ownership it should

13    say "author" or "owner."

14              Ownership of valid copyright definition.

21:27 15              THE COURT:  So you'd say Mattel is the -- is the

16    author and owner or author or owner?

17              MS. HURST:  No.  It's like this:  Mattel is the

18    owner in the first sentence either because it's original and

19    they received a transfer; or they are an author because it's

21:27 20    a work made for hire.

21              THE COURT:  Read from the beginning of the

22    instruction.  Read the whole instruction to me.

23              MS. HURST:  "Mattel is the owner of a valid

24    copyright in the sketches, drawings and sculpts at issue.

21:27 25              If it proves by a preponderance of the evidence

UNITED STATES DISTRICT COURT

```
 1    that, 1, the sketches, drawings and sculpts are original;

 2    and, 2, either, A, Mattel received a transfer of the

 3    copyright in the sketches, drawings or sculpts; or, B, Mattel

 4    is an author of the sketches, drawings or sculpts because

 5    they are works made for hire."

 6          And that allows for a determination on a

 7    drawing-by-drawing basis or object-by-object basis.

 8          THE COURT:  And that, then, by using the word

 9    "author" in what is Subsection 2 but what you're calling

10    "B" --

11          MS. HURST:  Right.

12          THE COURT:  -- then that would tie in with

13    copyright infringement authorship.

14          MS. HURST:  And also derivative work definition and

15    everything else.

16          THE COURT:  Okay.  Let me turn back to derivative

17    work for just a second and see how that reads.

18          (Pause in the proceedings.)

19          THE COURT:  That does make sense.

20          Why does that cause confusion, Mr. Zeller?

21          MR. ZELLER:  It will cause massive confusion, and

22    the reason is, is that the words "author" and "owner" in some

23    of these instructions are used interchangeably.

24          THE COURT:  Well, look at "author" in the third

25    paragraph in the copyright -- in the derivative work
```

UNITED STATES DISTRICT COURT

1    instruction I just gave you.

2         MR. ZELLER:  Right; it's saying "if the copyright

3    owner" -- that starts off the first paragraph, the second

4    paragraph, and then "copyright protection of a derivative

21:30  5    work covers only the contribution made by the author of the

6    derivative work."

7         THE COURT:  Okay.  I'll look at it in the back for

8    awhile.

9         Let's go on.

21:30 10    MR. ZELLER:  If I could just elaborate a little

11   more on this, the reason why I'm particularly concerned about

12   this is then the jury's going to come across the copyright

13   infringement authorship instruction which is clearly talking

14   about individual authors.

21:30 15        It's, frankly, unnecessary.  I mean, while I

16   applaud being precise in terms of the law here, which there's

17   no dispute and I completely agree with Ms. Hurst that for

18   purposes of the Copyright Act the employer is considered the

19   author for purposes of work made for hire, but that nuance

21:31 20   and that terminology doesn't need to be presented to this

21   jury and is going to cause potential confusion.

22         THE COURT:  Okay.

23         MR. ZELLER:  I think if we use the word "owner" in

24   terms of -- in terms of talking about the -- the copyright

21:31 25   holder, that's going to be consistent; but to distinguish

1    between Mattel being an author and an owner for purposes of

2    work made for hire, but an "owner" for purposes of assignment

3    is not going to be a distinction that moves -- that advances

4    the ball for the jury here.

21:31 5        THE COURT:  Okay.  Copyright interest; work made

6    for hire.  Any nits, any problems on that instruction?

7        MR. ZELLER:  I'm sorry.  On the work-made-for-hire

8    one I would suggest if we're going to be consistent with

9    "author" I think the portion where it says "the employer is

21:31 10   considered the author of the work," that paragraph, I think

11   the words "is considered the author of the work and" should

12   be stricken and just simply say "the employer owns the

13   copyright unless the employer and employee have agreed

14   otherwise in writing."

21:32 15       THE COURT:  All right.  Ms. Hurst.

16       MS. HURST:  This is the standard instruction and --

17   and -- and let me just say, carrying the concept of "author"

18   through properly allows the jury to deal with the situation

19   where they think that the original drawings were done in '98

21:32 20   and something else was added later.  It's very important that

21   we allow them to deal with that properly.

22       THE COURT:  Thank you.

23       Okay.  I'm going to move on now.

24       Copyright interest assignee.

21:32 25       All right.  Copyright infringement originality.

1    All right.  Copyright interest derivative work.

2  I've corrected that this evening.

3    MS. HURST:  That looks good now.

4    THE COURT:  Well, Mr. Zeller?

21:32  5    MR. ZELLER:  Well, I -- I haven't had a full

6  opportunity to really look at the more "fulsome" instruction

7  under derivative work --

8    THE COURT:  Go ahead and read it.

9    (Pause in the proceedings.)

21:34 10    MR. ZELLER:  I'm a little puzzled by the last

11  sentence -- although I assume this comes out of the standard

12  instruction -- but I'm a little puzzled by the applicability

13  of the last sentence here:  "The owner of a derivative work

14  may enforce the right to exclude others in an action for

21:34 15  copyright infringement."

16    So I don't think that's at issue here.

17    THE COURT:  Okay.

18    Copying; access to substantial similarity.

19    MR. ZELLER:  Okay.  There we think that we should

21:34 20  add in a reference to Exhibit 17332.

21    THE COURT:  Where?

22    MR. ZELLER:  Let's see.  It should go, "claims the

23  final Bratz production sculpt" and then it's --

24    THE COURT:  Dolls, sculpts -- and so we should

21:35 25  be -- 1136 is setting up original sculpts, and you need --

|     |     |
| --- | --- |
| 1 | MS. HURST:  I think he means the first |
| 2 | parenthetical, Your Honor, and it should be 17732 and 17733. |
| 3 | THE COURT:  Yeah. |
| 4 | 17732 comma or just "and." |
| 21:35 5 | MS. HURST:  And. |
| 6 | MR. ZELLER:  "And 17732." |
| 7 | THE COURT:  Okay.  So we have 17732 and 17733? |
| 8 | MR. ZELLER:  Correct. |
| 9 | THE COURT:  Okay.  Anything else? |
| 21:35 10 | MR. ZELLER:  And then I think after -- it says |
| 11 | "copied the original elements from the original sculpts" and |
| 12 | then it has in parenthetical "TX 1136," and there are a |
| 13 | couple of other sculpts that we -- that we claim ownership |
| 14 | of. |
| 21:36 15 | THE COURT:  What was it?  1141? |
| 16 | MR. ZELLER:  Yeah, those are -- |
| 17 | THE COURT:  1234? |
| 18 | MR. ZELLER:  Let's see. |
| 19 | I have them in a slightly different word. |
| 21:36 20 | The September 1, 2000, item. |
| 21 | THE COURT:  Well, I need numbers now so I can check |
| 22 | it off. |
| 23 | MS. HURST:  Your Honor, that doesn't exist. |
| 24 | THE COURT:  Yeah. |
| 21:36 25 | MS. HURST:  That doesn't exist and it can't be the |

UNITED STATES DISTRICT COURT

 1    basis for a claim when nobody's ever seen it.

 2              MR. ZELLER:  It doesn't have to exist to be the

 3    basis of a claim.  I mean, it's a copyright --

 4              THE COURT:  I'm not going to get in an argument

21:36  5    with the two of you tonight.

 6              MR. ZELLER:  I'm sorry?

 7              THE COURT:  I'm not going to get in an argument

 8    with the two of you tonight.

 9              This is closing out fast.

21:36 10              What are your numbers?

11              MR. ZELLER:  The other ones are TX 537B-3.

12              THE COURT:  Where did that come from?

13              MR. ZELLER:  That is -- that's the one that's

14    depicted in that photograph to the e-mail, because MGA has

21:37 15    not produced that sculpt, but there is a photograph of it

16    that exists.

17              MS. HURST:  She testified it was the same as 1141.

18              MR. ZELLER:  It might be; it might not be.  The

19    jury gets to decide.

21:37 20              THE COURT:  All right.  What's the other one?

21              MR. ZELLER:  The other one is 1141.

22              THE COURT:  Now, is there any disagreement over

23    1141?

24              MS. HURST:  It's in evidence.

21:37 25              THE COURT:  No, I know that; but being listed on

1    this instruction.

2              MS. HURST:  I mean, there is a disagreement in that

3    there -- there's no way they could own it, but other than

4    that, I mean, there's no disagreement.

21:37  5              I'm sorry.

6              MR. MCCONVILLE:  That's the one that was made

7    October 26th?

8              MS. HURST:  Right.

9              THE COURT:  Okay.  Now, copyright infringement,

21:37 10    copying access denied.

11              All right.  Similarity extrinsic/intrinsic test.

12              Do you need 11732 up at the top as well?

13              MR. ZELLER:  Right; that would require that one as

14    well.

21:38 15              MS. HURST:  It should be access to work that Mattel

16    owns.

17              Your Honor, going back to "access defined," it

18    should be "had access to the works that Mattel owns."

19              THE COURT:  Well, I don't know what -- I don't know

21:38 20    what instruction you're on now.

21              MS. HURST:  Access copying, access defined, the one

22    before.

23              THE COURT:  Okay.  Just a minute.  Just a minute.

24              Copyright infringement; copying access defined.

21:38 25              MS. HURST:  The first sentence.

CV 04-9049 DOC - 04/06/2011 - Volume 4 of 4

```
 1              THE COURT:  "As part of its burden, Mattel must

 2       show" --

 3              MS. HURST:  -- "had access to the work that Mattel

 4       owned."

21:38  5              THE COURT:  All right.  Read this to me.

 6              MS. HURST:  Okay.

 7              "As part of its burden, Mattel must show by a

 8       preponderance of the evidence that MGA Entertainment, Inc.,

 9       Isaac Larian and MGA Entertainment Hong Kong Ltd., had access

21:39 10       to the works that Mattel owns."

11              THE COURT:  Keep reading.

12              MS. HURST:  The rest remains the same.

13              THE COURT:  Read it.

14              MS. HURST:  Oh, "had access to Mattel's works, if

21:39 15       any" -- "works, if any, if they had a reasonable opportunity

16       to view and/or copy the copyrighted works before their

17       products were created."

18              (Pause in the proceedings.)

19              THE COURT:  Read it again, the entire instruction.

21:40 20              MS. HURST:  "As part of its burden, Mattel must

21       show by a preponderance of the evidence that" -- I'll

22       shortcut here --

23              THE COURT:  No, don't shortcut.

24              MS. HURST:  I'm sorry.

21:40 25              -- "that MGA Entertainment Inc., Isaac Larian, and
```

1    MGA Entertainment (HK) Ltd., had access to the works that

2    Mattel owns.  You may find that MGA Entertainment, Inc.,

3    Isaac Larian, and MGA Entertainment (HK) Ltd., had access to

4    Mattel's works, if any, if they had a reasonable opportunity

21:40 5   to view and/or copy the copyrighted works before their

6    products were created."

7            THE COURT:  Mr. Zeller.

8            MR. ZELLER:  I do think conceptually that that

9    change makes some sense.

21:41 10          THE COURT:  It makes more sense.

11           MR. ZELLER:  I would change the wording somewhat,

12   though.

13           I think if we say "had access to the Bratz works

14   that Mattel owns, if any," that would be for the first

21:41 15  sentence.

16           THE COURT:  Just a moment.

17           (Pause in the proceedings.)

18           THE COURT:  Any disagreement, Ms. Hurst, "had

19   access to the Bratz works that Mattel owns"?

21:42 20          MS. HURST:  "If any."

21           MR. ZELLER:  "If any."

22           THE COURT:  "If any," comma?

23           MS. HURST:  Period.

24           MR. ZELLER:  Period there, "owns, if any."

21:42 25          THE COURT:  Okay.

```
 1              MR. ZELLER:  And I'm just a little bit concerned

 2    about the "if any/if they" formulation in the next sentence,

 3    so I think we can make that a little less wordy by simply

 4    saying:  "You may find that MGA Entertainment, Inc.,

 5    Isaac Larian and MGA Entertainment (HK) Ltd., had access to

 6    those" -- or even say "access to any such copyrighted works

 7    if they had a reasonable opportunity to view and/or copy the

 8    copyrighted works before their products were created."

 9              THE COURT:  Ms. Hurst.

10              MS. HURST:  That sounds reasonable.

11              MR. MCCONVILLE:  That sounds better at this point.

12              MS. HURST:  I think that's pretty close.

13              THE COURT:  Let me read that back and let's see if

14    we're on track the same way.

15              "As part of its burden, Mattel must show by a

16    preponderance of the evidence that MGA Entertainment, Inc.,

17    Isaac Larian, and MGA Entertainment (HK) Ltd., had access

18    to -- 'the Bratz works' or 'Bratz works'"

19              MR. ZELLER:  To "the Bratz works."

20              THE COURT:  -- "to the Bratz works that Mattel

21    owns, if any."

22              MR. ZELLER:  Comma, "if any."

23              THE COURT:  Comma, "if any," period.

24              "You may find that MGA Entertainment, Inc.,

25    Isaac Larian, and MGA Entertainment had access
```

```
 1    to any copyrighted" --

 2             MR. ZELLER:  I would say "any such copyrighted

 3    works."

 4             THE COURT:  "Any such copyrighted works if they had

 5    a reasonable opportunity to view and/or copy the copyrighted

 6    works before their products were created."

 7             MR. ZELLER:  Yes.

 8             THE COURT:  Does that work?

 9             MS. HURST:  I think that works.

10             THE COURT:  The similarity tests, intrinsic tests,

11    I've added "7732" and 17733 and you're also requesting what

12    else?

13             MR. ZELLER:  There was the 17732.

14             THE COURT:  I've got that.

15             That was a 537B.

16             MR. ZELLER:  No, because this is -- this is

17    referring to the accused sculpts.

18             THE COURT:  Objective intrinsic test.

19             Now, obviously, I have to number these eventually,

20    and then I have to reference back.

21             MS. HURST:  Your Honor, I think you should send

22    it -- change it to "layperson's sense of the term."

23             THE COURT:  Just a moment.

24             MS. HURST:  I think I'm on the prior instruction.

25             THE COURT:  I think you are too.
```

1          So let's go back to substantial similarity.

2          MS. HURST:  Extrinsic.

3          THE COURT:  Extrinsic test.

4          MS. HURST:  After all, our jury is --

21:46 5          THE COURT:  Well, it says a "layman's sense of the

6     term."

7          MS. HURST:  I was suggesting you change it to

8     "layperson," Your Honor.

9          THE COURT:  Thank you.  I agree.

21:46 10          "A layperson's sense."

11          I agree with that.

12          MS. HURST:  That's my biggest contribution of the

13    night.

14          THE COURT:  That's an excellent contribution.

21:46 15          All right.  It will be "layperson's" instead of

16    "layman's."

17          Now, let's go back to objective extrinsic test, and

18    once I number these then I'll simply fill in the instruction

19    number; okay.

21:46 20          Any disagreements?

21          MR. ZELLER:  Well, we -- our understanding of the

22    test is, is that the jury actually first should be finding

23    similarities and then filtering.

24          Here we have "you must first disregard or filter

21:47 25    out unprotectible elements."

     1          MS. HURST:  And we disagree with that and we think

     2     it's stated correctly.

     3          THE COURT:  Okay.  I'll put a marker.

     4          And then the protectable; unprotectable elements;

21:47 5     doll drawings.

     6          MR. ZELLER:  Our issues on this are more

     7     substantive.

     8          I don't know if this is the proper forum for that

     9     at this point -- or at this juncture, rather, but they aren't

21:47 10    nits.

    11          THE COURT:  Okay.

    12          Why don't you go ahead.

    13          MR. ZELLER:  What we have is, first of all, kind of

    14     a view that overall this -- this is telling the jury that

21:48 15    virtually everything is unprotectable and virtually nothing

    16     is protectable.

    17          So one thing is I would start with is, is, you

    18     know, "protectable elements include," and then "unprotectable

    19     elements include" as part of the heading.

21:48 20         And then on the protectable elements in the first

    21     box we would suggest adding additional language to make clear

    22     that it includes, but isn't limited to, facial elements and

    23     body parts and we could even call those out.

    24          THE COURT:  Okay.

21:48 25         MR. ZELLER:  And then we would even suggest in that

1    first box for unprotectable elements, right after the human

2    form in the second line, something like "the presence of

3    hair, head, eyes, nose" -- or "a nose."

4            THE COURT:  Okay.

21:49  5            MR. ZELLER:  And then we think that the rest of it

6    after "torso" should be taken out.

7            So this will make it clear that, again, ultimately

8    we're going back to the notion of the particularized

9    expression can be protected; the more abstract elements can't

21:49 10    be.  And I think that's -- that distinction can be brought

11    home through this --

12            The second box for protectable elements, I would

13    suggest after "an outfit" I would suggest adding "or the

14    combination of precise body proportions."

21:50 15            THE COURT:  Just a moment.  "Precise combinations

16    of unprotectible elements like, combination of hairstyle,

17    face, paint, makeup and outfit and body proportions."

18            MR. ZELLER:  And I would say "or the combination of

19    precise body proportions."

21:50 20            THE COURT:  What does that mean?

21            MR. ZELLER:  Well, it's adding to the menu.

22            THE COURT:  No, no; "precise body portions."  I'm

23    trying to think about it.

24            MR. ZELLER:  Well, it mirrors the precise

21:50 25    combination.

Case 2:04-cv-09049-DOC-RNB   Document 10441   Filed 04/08/11   Page 115 of 178   Page ID #:317248
CV 04-9049 DOC - 04/06/2011 - Volume 4 of 4

115

1          It's to make clear that we're not -- we're not

2     trying to say to the jury protect something that's abstract

3     but, rather, it's a particularized expression when we say

4     "precise."

21:50  5          THE COURT:  Okay.  What else?

6          MS. HURST:  Your Honor, proportions cannot be a

7     particularized expression.  That's a merger.

8          THE COURT:  Okay.

9          MR. ZELLER:  We think that, then, the second box of

21:51 10     unprotectible elements -- this is on the right -- it's the

11     one that begins "exaggerated features."

12          We would add something like "the concept of

13     depicting a female fashion doll with exaggerated features,"

14     and then continues on.

21:51 15          MS. HURST:  And that would directly violate

16     Section 102B.

17          THE COURT:  What else?

18          MR. ZELLER:  The difficulty is, is that when you

19     say -- when the chart says "exaggerated features" it isn't --

21:51 20     it isn't explaining that it's the more abstract concept of

21     the exaggerated features rather than the particularized one.

22          THE COURT:  What I'm going to do is go back and

23     start word processing some of this while you have it fresh in

24     mind.

21:51 25          Why don't you have an informal discussion with each

```
 1    other and I'll come back.

 2              MR. ZELLER:  Okay.

 3              MS. HURST:  Your Honor, on that one, there's just

 4    one wording change in the first box of protectable elements

 5    on the two.  You used "exact shape" one time and "precise

 6    shape" the other time.

 7              THE COURT:  Just a moment.

 8              MS. HURST:  The very first box on the left in both

 9    instructions you used "exact shape" and "precise shape."

10              THE COURT:  Oh.

11              MS. HURST:  I bet the court didn't mean for those

12    to be different.

13              THE COURT:  I did not.

14              MS. HURST:  We're satisfied with either.

15              THE COURT:  I did not.

16              Okay.  Thank you.  I'll be right back.

17              I'm going to start with some things fresh in my

18    mind.

19              Why don't you visit, reach agreement, and I'll be

20    right back.

21              MR. QUINN:  Your Honor, can we give you the redline

22    with the words that Mike was trying to give?

23              THE COURT:  Oh, sure.  Sure.

24              MR. QUINN:  Just so you have it in front of you.

25    We've revised it.
```

UNITED STATES DISTRICT COURT

CV 04-9049 DOC - 04/06/2011 - Volume 4 of 4

```
 1                    THE COURT:  Okay.

 2               (Recess taken.)

 3                    THE COURT:  Okay.  Here's the next decision for

 4     you.

 5               I think we're missing a paragraph down at the

 6     bottom; okay.

 7               Annette, I think we're missing a paragraph down at

 8     the bottom.

 9                    MS. HURST:  Right.

10                    MR. ZELLER:  Yep.

11                    MS. HURST:  We should put that in the one before.

12                    THE COURT:  I'll be back.

13               (Recess taken.)

14                    THE COURT:  No wonder you're confused.  I took the

15     instruction out and gave each of you half of it.

16               Give me that page back.

17                    MS. HURST:  We knew what you meant.

18                    THE COURT:  Give me this.

19               I'm going to give you a complete copy.

20               Mike, here; this is a set the way you should have

21     gotten it.  It was split in two, and there's your copy; okay.

22                    MS. HURST:  All right.

23               Yeah, that's where it goes.

24                    THE COURT:  I was just testing you guys.

25               (Recess taken.)
```

```
 1            THE COURT:  All right.  We're on the record.

 2            Counsel has sent the court a stipulation concerning

 3   disputed term "at any time during my employment."

 4            There have been a number of suggestions, as the

 5   record as reflected, from both counsel to the court.

 6            I think they have been very wise suggestions that

 7   the court's heeded and counsel has additionally worked on

 8   this instruction as it reads as follows:

 9            The term "at any time during my employment" in the

10   January 4th, 1999, Employment Confidential Information and

11   Inventions Agreement, refers to the scope of Carter Bryant's

12   employment between January 4th, 1999, and October 19th, 2000.

13   However, the parties dispute whether the term "also" extends

14   beyond the scope of Carter Bryant's employment and includes

15   nights and weekends.  This is another dispute you must

16   resolve.

17            In order to own any of Carter Bryant's inventions:

18            1.  Mattel must prove that Carter Bryant's

19   Bratz-related inventions were conceived or reduced to

20   practice between January 4th, 1999, and October 19th, 2000,

21   and;

22            2.  Mattel must also prove that the inventions were

23   conceived or reduced to practice at any time during

24   Carter Bryant's employment either because:

25            (A) The inventions were conceived or reduced to
```

UNITED STATES DISTRICT COURT

1    practice during working hours and while performing tasks for

2    Mattel, or;

3         (B) The term "at any time during my employment"

4    extends beyond working hours, nights and weekends and to

22:29 5    tasks not performed for Mattel.

6         In deciding what the terms of a contract mean you

7    must decide what the parties intended at the time the

8    contract was created.  You must consider the usual and

9    ordinary meaning of the language used in the contract, as

22:29 10   well as the circumstances surrounding the making of the

11   contract.

12        The following instructions may also help you

13   interpret the terms of the contract.

14        Is that acceptable to Mattel?

22:29 15   MR. ZELLER:  Actually, I think a couple things,

16   Your Honor.

17        Is that --

18        THE COURT:  We'll just redraft it until --

19        MR. ZELLER:  I think we just -- both of us think

22:30 20   that part of this language goes into another instruction, is

21   all.

22        THE COURT:  Just --

23        MR. ZELLER:  But as to --

24        THE COURT:  No, I'm going to wait.

22:30 25   MR. ZELLER:  Okay.

 1          THE COURT:  You draft it to the point that you

 2   agree or -- or transfer the language over to another

 3   instruction.  But believe me, this is the stuff that you've

 4   already agreed upon that's going to take hours and I've

22:30 5   got -- if you want me to instruct tomorrow, anyway, a lot to

 6   do.

 7          So I'll wait until you get your --

 8          MS. HURST:  All right.  We'll put it where it

 9   belongs.

22:30 10          That's fine.

 11          Here are two other things we've agreed on.

 12          THE COURT:  Oh, okay.  Well, let's see.

 13          There's an agreement between counsel that

 14   "copyright infringement, ownership of valid copyright

22:30 15   definition":

 16          Mattel is the owner of a valid copyright in a

 17   sketch, drawing or sculpt at issue if it proves by a

 18   preponderance of the evidence that:

 19          1.  The sketches, drawings, and sculpts are

22:30 20   original and;

 21          2.  Mattel is the author of the work under the

 22   work-made-for-hire instruction" -- and the instruction number

 23   is to be inserted -- "or received a transfer of the copyright

 24   in the sketch, drawing or sculpt."

22:31 25          Is that stipulated to by Mattel?

          1              MR. ZELLER:  Subject to our objections we stipulate

          2       to the form.

          3              THE COURT:  And by MGA?

          4              MS. KELLER:  Yes.

22:31     5              THE COURT:  The next, simply --

          6              MS. HURST:  Subject to our, you know, prior-stated

          7       position that they shouldn't be charged on the

          8       work-made-for-hire doctrine.

          9              THE COURT:  And the word "or" has been added to

22:31    10       copying, access and substantial similarity TX 1136 or

         11       TX 1141."

         12              Okay.  We'll go redraft that so we can get a

         13       complete copy to you in a minute.

         14              I'll be right back in just a moment and we'll

22:31    15       resume with these other instructions.

         16              (Recess taken.)

         17              THE COURT:  Annette, the fourth paragraph's just

         18       been changed.

         19              MS. HURST:  This is agreed and I just e-mailed it

22:36    20       to you (indicating).

         21              THE COURT:  All right.  Thanks a lot.

         22              And these aren't finals coming out, so if you don't

         23       like them, work together and that's it.

         24              (Recess taken.)

22:40    25              THE COURT:  On the record.

CV 04-9049 DOC - 04/06/2011 Volume 4 of 4

1          Counsel have stated to the court that they've

2     agreed on the following:

3          "Disputed term:  'Inventions.'

4          The term 'inventions' in the January 4th, 1999,

22:40 5     Employee Confidential Information and Inventions Agreement

6     between Mattel, Inc., and Carter Bryant includes

7     'discoveries, improvements, processes, developments, designs,

8     know-how, data computer programs and formulae.

9          "However, the parties dispute whether the term

22:40 10    'inventions' in the Jan 4, 1999, Employee Confidential

11    Information and Inventions Agreement between Carter Bryant

12    and Mattel, Inc., also includes 'ideas' and this is a dispute

13    that you must resolve.  In order to exercise ownership over a

14    Carter Bryant idea, Mattel must prove that the term

22:40 15    'inventions' includes 'ideas.'"

16          Is that agreed to?

17          MS. HURST:  It is by us.

18          MR. QUINN:  We -- we don't -- we don't recall

19    agreeing to this.  It doesn't include changes that we thought

22:41 20    we had suggested.

21          THE COURT:  Okay.  Well, just continue working on

22    it.

23          I'm not trying to trap anybody.  I just -- okay.

24    I'll give them back to you.

22:41 25          MS. HURST:  But these other ones are agreed; the

UNITED STATES DISTRICT COURT

1    other two are.

2         THE COURT:  I just read them into the record,

3    didn't I?

4         MR. ZELLER:  No, you haven't.

22:41 5   MS. HURST:  These two are agreed (indicating).

6         THE COURT:  Just a moment.

7         I had -- well, I thought they were all three

8    related.

9         MS. HURST:  No, it's the -- sorry.

22:41 10      THE COURT:  All right.  So the first disputed term:

11   "Inventions" is not agreed upon at the present time.

12        MS. HURST:  But the other two are.

13        THE COURT:  But the following:  "Disputed term:

14   'At any time during my employment.'

22:41 15      "The term "at any time during my employment" in the

16   January 4th, 1999, Employee Confidential Information and

17   Inventions Agreement refers to the scope of Carter Bryant's

18   employment between January 4, 1999, and October 19, 2000.

19        "However, the parties dispute whether the term also

22:42 20   extends beyond the scope of Carter Bryant's employment and

21   includes nights and weekends.  This is another dispute you

22   must resolve.

23        In order to own any of Carter Bryant's inventions:

24        1.  Mattel must prove that Carter Bryant's

22:42 25   Bratz-related inventions were conceived or reduced to

1    practice between January 4, 1999, and October 19, 2000; and

2            2.  Mattel must also prove that the inventions were

3    conceived or reduced to practice at any time during

4    Carter Bryant's employment either because:

22:42  5            (A) The inventions were conceived or reduced to

6    practice during working hours and while performing tasks for

7    Mattel; or

8            (B) The term 'at any time during my employment'

9    extends beyond working hours (nights and weekends) and to

22:43  10   tasks not performed by Mattel."

11           Is that agreed to by Mattel and MGA?

12           MR. ZELLER:  Subject to our objections we agree to

13   the language.

14           THE COURT:  Your prior objections?

22:43  15           MR. ZELLER:  Yes.

16           MS. HURST:  I agree.

17           THE COURT:  "In deciding what the terms of a

18   contract mean, you must decide what the parties intended at

19   the time the contact was created.  You must consider the

22:43  20   usual, ordinary meaning of the language used in the contract

21   as well as the circumstances surrounding the making of the

22   contract.

23           "The following instructions may also help you

24   interpret the terms of the contract."

22:43  25           Is that agreed to by the parties?

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|       | 1  | MS. HURST:  Yes.                                         |
|       | 2  | MR. ZELLER:  Yes.                                        |
|       | 3  | THE COURT:  I'll be back in awhile.                     |
|       | 4  | I've got some more to give you.                         |
| 22:44 | 5  | (Recess taken.)                                         |
|       | 6  | THE COURT:  Let's turn to the subjective intrinsic     |
|       | 7  | test and I assume that you want to add, as you have been,|
|       | 8  | 17732.                                                   |
|       | 9  | No; no.  It's just 17733 in this instruction.          |
| 22:50 | 10 | MR. ZELLER:  I see.                                      |
|       | 11 | THE COURT:  See down in the first --                    |
|       | 12 | MR. ZELLER:  Right; you're right.                       |
|       | 13 | We would want 17732 added there.                        |
|       | 14 | THE COURT:  Yeah.  And --                               |
| 22:51 | 15 | MR. ZELLER:  It appears it's actually two places.       |
|       | 16 | THE COURT:  It is.                                       |
|       | 17 | And, now, any other objections or concerns about        |
|       | 18 | this instruction?                                       |
|       | 19 | MR. ZELLER:  I do wonder --                             |
| 22:51 | 20 | THE COURT:  Without waiving your prior arguments.       |
|       | 21 | MR. ZELLER:  I do wonder if we should put in the TX     |
|       | 22 | references to the first four -- or the four first-generation |
|       | 23 | Bratz dolls, Ohh La La Cloe and Formal Funk Dana.       |
|       | 24 | I know in other instructions we've included them.       |
| 22:51 | 25 | THE COURT:  Yeah.                                        |

```
 1                  Ms. Hurst?

 2                  MS. HURST:  I -- that's fine.

 3                  THE COURT:  Okay.  Do you want to draft it for me

 4      and save another ten minutes?

 5                  MR. ZELLER:  Okay.

 6                  THE COURT:  Copyright affirmative defense;

 7      abandonment?

 8                  MS. HURST:  That should be withdrawn.

 9                  THE COURT:  Withdrawn.

10                  MS. HURST:  It's not applicable.

11                  THE COURT:  Mr. Zeller?

12                  MR. ZELLER:  I agree with that.

13                  THE COURT:  Yeah, I agree too.

14                  So copyright affirmative defense, abandonment's

15      withdrawn by stipulation with counsel and agreement with the

16      court.

17                  Derivative liability; vicarious infringement;

18      elements and burden of proof:

19                  MS. HURST:  We have no comment.

20                  MR. ZELLER:  Nothing here, Your Honor.

21                  THE COURT:  Derivative liability; contribution;

22      infringement?

23                  MS. HURST:  No comment.

24                  MR. ZELLER:  Nothing.

25                  THE COURT:  Copyright damages?
```

1           MR. ZELLER:  Subject to the usual caveat of prior

2      discussions, we don't have any --

3           THE COURT:  Just a minute.

4           I'll make that clear.

22:52  5           All the objections you've previously made are

6      preserved for appellate purposes.

7           MR. ZELLER:  We are talking about form.

8           THE COURT:  Form, nits, any general agreement we

9      can give or get without waiving the substance of the

22:53 10      objections.

11           MS. HURST:  Your Honor, we're concerned in this

12      one.  The second paragraph assumes that damages were suffered

13      rather than being worded conditionally as all the other

14      damages instruction and verdict form and so forth are.  So I

22:53 15      would suggest adding the words "if any" after the actual word

16      "damages."

17           THE COURT:  Why?  Isn't it clear in the first

18      sentence?

19           In other words "if you find for Mattel on Mattel's

22:53 20      copyright infringement claim, you must determine Mattel's

21      damages."

22           MS. HURST:  No.  I think the first sentence makes

23      it even worse because by saying "you must determine Mattel's

24      damages," it sounds like an imperative to find that there

22:54 25      were damages.

1          THE COURT:  Doesn't it state that you can give

2     nominal damages?

3          MS. HURST:  No, not for copyright.

4          You can get statutory damages.

22:54  5          THE COURT:  That's true.  That's true.

6          MS. HURST:  That's not at issue here.

7          THE COURT:  So is your suggestion "if any"?

8          Any others?

9          MS. HURST:  Yes, that's our suggestion.

22:54 10          (Discussion held off the record.)

11          MS. HURST:  We'd also suggest adding the words --

12     in the second sentence -- so, "Mattel is entitled to recover

13     the actual damages, if any, it suffered" -- "as" should be

14     inserted -- "a result of the infringement by" -- suggest

22:55 15     insertion of the words "any of the particular works at issue

16     which are the first-four generation dolls, two subsequent

17     generation dolls and the final production" -- "sculpts,"

18     plural.

19          THE COURT:  Plural.

22:56 20          MS. HURST:  And then in the next paragraph, "in

21     addition, Mattel is entitled to recover any profits of

22     MGA Entertainment, Inc., MGA Entertainment (HK) Ltd., and/or

23     Isaac Larian, attributable to the infringement by" -- insert

24     "any of" --

22:56 25          THE COURT:  Just a moment.

1           "Any of the particular works at issue."

2           MS. HURST:  Right; "which are the first-four

3    generation dolls, two subsequent generation dolls and the

4    final production sculpts," plural.

22:56  5           THE COURT:  Okay.

6           Mike, on behalf of Mattel?

7           MR. ZELLER:  Other than it should be "the final

8    production sculpts" in the plural.

9           THE COURT:  Plural; we've got that.  Add the "s."

22:56 10           MR. ZELLER:  It should be the plural, production

11    "sculpts" with an 's.'

12           Other than that, we agree with those changes.  This

13    is pretty clear.

14           THE COURT:  Copyright damages; actual damages.

22:57 15           MR. ZELLER:  I think there everything after,

16    really, the first sentence we think should just come out,

17    because, I mean, it's -- this is obviously subject to our

18    prior position about licensing, but this gets us into it --

19    in fact, into the licensing area, and -- and, really --

22:57 20           THE COURT:  Yeah.

21           MR. ZELLER:  -- I'm concerned the way that this is

22    phrased it sounds like it's actually excluding the actual

23    damages which are lost profits that we're seeking.

24           So this would -- this would, in our view, kind of

22:57 25    give us the worst of both worlds, you know, so we -- we

        1   actually think that licensing should have -- reasonable

        2   royalty should go to the jury, but it wouldn't be this

        3   instruction, and then it almost seems to preclude the theory

        4   that we are proceeding on.

22:57   5          THE COURT:  Well, Ms. Hurst?

        6          MS. HURST:  I'd like to think about that a little

        7   bit.

        8          THE COURT:  Okay.  I'll put down "thinking."

        9          MS. HURST:  So -- and what did you say, you wanted

22:58  10   only the first sentence?

       11          MR. ZELLER:  Yeah.  It would just simply stop after

       12   "Mattel is entitled to recover" --

       13          THE COURT:  I'm going to move on now and you two

       14   can talk about that because I'm going to keep trying to word

22:58  15   process so I can hopefully read these tomorrow.

       16          If not, if I can't get them done by tonight, I'm

       17   instructing Monday and they're arguing Friday.  That's --

       18   that's it.

       19          Now, I'm not too worried about the special verdict

22:58  20   forms but I'll have you do what I call the "paralegal work"

       21   by putting in the boxes.

       22          MS. HURST:  We did.

       23          THE COURT:  But you're going to do the work and

       24   putting in the boxes; I'm not.

22:58  25          Copyright damages; Defendant's profit.

CV 04-9049 DOC - 04/06/2011 - Volume 4 of 4

```
 1              MR. ZELLER:  I think we need to add here too, a

 2       reference to that additional sculpt and so it would be --

 3              THE COURT:  You can do that.  You can put that in.

 4       I can keep processing back there.

22:59  5          Plus I'm trying to get some orders out for you

 6       tomorrow to keep you going, so I'm only partly through the

 7       copyright works that you've submitted to me.

 8              I've only done half of them so far.

 9              Copyright affirmative defense --

22:59 10          MS. HURST:  Hold on, hold on.  There is a word

11       missing in the last paragraph.

12              THE COURT:  Well, you can work on that.

13              MS. HURST:  This completely changes the meaning of

14       the instruction in a way that makes it erroneous, so whether

22:59 15       they agree or not this needs to be made.

16              THE COURT:  Okay.

17              MS. HURST:  In the first sentence of the last

18       paragraph, "if you find that a portion of the profit from the

19       sale of a product containing or using the copyrighted work is

22:59 20       attributable to factors other than use of the copyright work,

21       all of the profit is not to be attributed to the

22       infringement."

23              This is exactly wrong.

24              If we meet our burden of proving that it's -- that

22:59 25       there's something attributable to other factors, then you
```

UNITED STATES DISTRICT COURT

1    can't attribute all the profit to the infringement.  This is

2    exactly wrong.

3              (Pause in the proceedings.)

4              MR. ZELLER:  It -- it -- it's right, Your Honor.

23:00  5    What it's saying is, is presumptively the rule is all the

6    profit is attributable to the infringement, unless -- as the

7    next sentence makes clear -- the defendants on that claim

8    prove otherwise.

9              THE COURT:  Yeah, but as it goes on, then, and

23:00 10   "Isaac Larian, et cetera, have the burden of proving the

11   portion of the profit, if any, attributable to factors other

12   than infringing the copyrighted work."

13             MR. ZELLER:  Right.

14             THE COURT:  It's a burden-shifting in a sense.

23:00 15             MR. ZELLER:  Exactly.  Exactly.

16             THE COURT:  Copyright affirmative --

17             MS. HURST:  Your Honor, it really -- it doesn't

18   track the language of the form.  There are important words

19   missing.

23:00 20             THE COURT:  I'll go back and look at the form;

21   okay.

22             MS. HURST:  Okay.

23             THE COURT:  And you've got as CACI --

24             MS. HURST:  It's Ninth Circuit 17.24.

23:01 25             THE COURT:  17.24.

1          Let me go back and look.  That could be my error.

2     I'll track the exact language; okay.

3          MS. HURST:  Okay.

4          THE COURT:  Copyright affirmative defense statute

23:01 5     of limitations.

6          MR. ZELLER:  Subject to our prior arguments, but I

7     don't think we have anything further.

8          MS. HURST:  The burden of proof is wrong.

9          THE COURT:  Okay.

23:01 10         MS. HURST:  The burden's on them on the discovery

11    rule.  The case I cited the other day, that Ninth Circuit

12    case, the federal statute -- the federal delayed-discovery

13    rule, the burden is on the plaintiff the same way it is in

14    state law.

23:01 15         So it should say --

16         THE COURT:  "Mattel must prove."

17         MS. HURST:  "Mattel must prove" -- it should be

18    worded like 4421 is.  First, we establish that they're

19    outside the time limit and then must show that they did not

23:01 20    discover or through exercise of reasonable diligence could

21    not have discovered.

22         THE COURT:  Just a moment.

23         Now, just a minute.

24         (Pause in the proceedings.)

23:02 25         THE COURT:  I'll go back and look again.  I don't

```
 1    think that that's correct.

 2              MS. HURST:  Well, I -- I do.

 3              THE COURT:  I'm not sure.

 4         Mattel.

23:02  5         MR. ZELLER:  Subject to our prior comments, I don't

 6    really have much further.

 7              The one thing I guess I should point out -- and

 8    it's not necessarily reactive to this instruction -- but the

 9    statute of limitations for copyright infringement, of course,

23:02 10    is rolling, so even if the jury were to find that Mattel

 11   or -- knew, discovered, or should have discovered that there

 12   was infringement, that -- that doesn't completely cut off

 13   Mattel's ability to get damages; it just simply cuts it off

 14   at a certain period, namely, three years before whatever the

23:03 15   operative date is.

 16              THE COURT:  Okay.

 17              MR. ZELLER:  I'm struggling a little bit to figure

 18   how we get that concept across to the jury, but it seems to

 19   me that having them render a damages award and then, of

23:03 20   course, there will be a finding as to when Mattel knew or

 21   should have known, whatever the appropriate formulation is

 22   for the particular claim, but we can -- we can address it

 23   that way.  But I do know that we haven't really told the jury

 24   that the statute of limitations, at least for copyright, is

23:03 25   rolling.
```

Case 2:04-cv-09049-DOC-RNB   Document 10441   Filed 04/08/11   Page 135 of 178   Page ID #:317268
CV 04-9049 DOC - 04/06/2011 - Volume 4 of 4

135

1          THE COURT:  Yeah; okay.

2          Introduction, misappropriation of trade secrets.

3     Obviously, Mattel de Mexico is no longer with us after the

4     Rule 50.

23:03 5          What else?

6          (Pause in the proceedings.)

7          MS. HURST:  Your Honor, on the last one, the cite

8     for the burden being on Mattel is *O'Connor versus Boeing*

9     *North American,* 311 F.3d 1139.

23:04 10          THE COURT:  311 F.3d --

11          MS. HURST:  1139.

12          THE COURT:  -- 1139.

13          Okay.  I'll take a look at that.

14          If Mattel has any other cases when I come back out,

23:04 15     give those to me.

16          Okay.  Anything else on introduction,

17     misappropriation of trade secrets?

18          MR. ZELLER:  Subject, of course, to the prior

19     comments, particularly about pricing information, I think it

23:04 20     should at a minimum be changed to "FOB price."

21          Right now the way it's phrased here it says

22     "MGA Entertainment, Inc., claims that the appearance,

23     operation, intended play pattern, marketing plans and pricing

24     information about," and then continues on.  "Pricing

23:04 25     information," at least in this context -- well, we don't

 1    think it should be there at all, but if it is going to be, we

 2    just think it should just be specified as being "FOB price,"

 3    which is the only pricing information that we're aware of

 4    that MGA has, even now, been asserting as a trade secret.

23:05  5              THE COURT:  Okay.

 6              MS. HURST:  I don't think the name should be plural

 7    anymore.

 8              THE COURT:  Where are you?

 9              MS. HURST:  "Mattel claims that the product concept

23:05 10    name" -- singular, since Jade has been dropped.

11              THE COURT:  Which paragraph?

12              MS. HURST:  I'm in the third paragraph, Your Honor.

13              THE COURT:  "Mattel claims that the product

14    concept, names and designs for Bratz --

23:05 15              MS. HURST:  Right; should just be "name," singular.

16              THE COURT:  Okay.  Anything else?

17              MR. ZELLER:  No.

18              THE COURT:  Okay.

19              Misappropriation of trade secret; essential

23:06 20    elements.

21              MS. HURST:  I think -- I'm sorry, Your Honor.

22              I'm moving a little slow here, but there is a typo

23    or grammatical error in that last one.

24              THE COURT:  Okay.

23:06 25              MS. HURST:  In the third paragraph.

 1              I think that after "Larian," there should be no

 2       comma or "and."

 3              THE COURT:  Just a moment.

 4              MR. ZELLER:  No, actually it should be there.

23:06  5              "Mattel claims that these particular matters are

 6       trade secrets and that MGA and Larian," there's actually -- I

 7       think the comma goes somewhere else --

 8              MR. QUINN:  She's right.

 9              MR. ZELLER:  I'm looking at the wrong part of it, I

23:06 10       see.

11              THE COURT:  Comma and "Larian" is stricken.  I

12       agree.

13              Okay.  Anything else?

14              MR. ZELLER:  No.

23:06 15              THE COURT:  Misappropriation of trade secrets;

16       essential factual elements.

17              (Pause in the proceedings.)

18              MS. HURST:  Your Honor, under 1(a) Mattel has not

19       defined its trade secrets as information, that's --

23:07 20              THE COURT:  I've got them also identified as

21       Appendix A.  I'm still working off of appendixes, and here's

22       what's going to happen to you:  The way the special verdict's

23       going to look is you're going to have a couple questions and

24       then about a small telephone book of decisions that they

23:07 25       make.

 1          By the time they get over to Question 4, 5 or 6,

 2    that's why I had come up with the appendix idea to begin

 3    with.

 4          MS. HURST:  So that's going out, then?

23:07  5          THE COURT:  No; I'm -- I'm -- you're the ones who

 6    are going to suffer from the confusion; I'm not.

 7          MS. HURST:  No; I was just trying to understand if

 8    it was going to be both in the instructions or the verdict

 9    form or just one place, that is, the verdict form?

23:08 10          THE COURT:  It's up to you.

 11          MS. HURST:  I mean, we had always been concerned

 12    that having it passed through to the verdict form would

 13    implicitly make it seem as if it had met the legal test.

 14          THE COURT:  It's -- right now I would prefer to

23:08 15    simply refer this back to the verdict -- to the verdict form,

 16    but if you want these delineated in a small telephone-book

 17    size than this, that's fine.

 18          MR. ZELLER:  My vote would be is that we refer back

 19    to the verdict form.

23:08 20          MS. HURST:  I need to think about it.

 21          THE COURT:  Okay.  Thinking.

 22          MS. HURST:  I do think it shouldn't be worded

 23    information because they haven't defined it as information.

 24          THE COURT:  Well, what should it read?  That it

23:08 25    owns --

| | |
|---|---|
| 1 | MS. HURST:  "The claimed trade secrets identified |
| 2 | in Appendix A." |
| 3 | Say the same thing for both. |
| 4 | THE COURT:  "The claimed trade secrets |
| 23:09 5 | identified" -- |
| 6 | Remember, I'm not using the appendices yet.  I'm |
| 7 | kind of waiting to see how the special verdict forms sort out |
| 8 | and that's why I can't complete these instructions yet. |
| 9 | MS. HURST:  I understand. |
| 23:09 10 | THE COURT:  And they're synonymous with each other. |
| 11 | MS. HURST:  So you want to say "claimed trade |
| 12 | secrets identified in the verdict form"? |
| 13 | THE COURT:  I don't care. |
| 14 | MS. HURST:  That's okay. |
| 23:09 15 | THE COURT:  Oh, "the claimed trade secrets |
| 16 | identified" -- "in these jury instructions" or "in the |
| 17 | verdict form"? |
| 18 | MR. ZELLER:  "In the verdict form." |
| 19 | MS. HURST:  Yes. |
| 23:09 20 | THE COURT:  Okay.  "In the verdict form." |
| 21 | Now let's go to B:  "MGA must prove that it owns |
| 22 | the" -- |
| 23 | Strike that. |
| 24 | MS. HURST:  "Claimed trade secrets." |
| 23:09 25 | THE COURT:  "Claimed trade secrets identified in |

UNITED STATES DISTRICT COURT

1    the verdict form."

2              MR. ZELLER:  And I think, probably, this may be the

3    first reference of the verdict form, so it may be that you'll

4    need to say "in the verdict form that I will provide to you."

23:10  5              THE COURT:  You are more than welcome to draft it.

6              MR. ZELLER:  Okay.

7              THE COURT:  All the five or ten minutes you two

8    could save.  I mean, you can save a couple hours tonight, if

9    you want.

23:10 10              "Trade secret" defined.

11              MS. HURST:  Your Honor, could you give us a Word

12   copy of these so that when we're editing then -- could you

13   have someone send us a Word copy so we could get it done

14   faster?  Or WordPerfect or whatever the court's using.

23:10 15              THE COURT:  Sure.

16              "Trade secret" defined.

17              I'll be right back.

18              MR. QUINN:  Judge, there's one that we don't have

19   an agreement on, and we haven't gone through it the first

23:10 20   time yet, so this is for you.

21              The defined term "inventions."

22              THE COURT:  Is that the one we just couldn't reach

23   that agreement?

24              MR. QUINN:  Yes; there isn't an agreement on this

23:10 25   and --

```
 1                    THE COURT:  That's fine.

 2                    Thanks a lot.

 3                    And that was the first of the three we started to

 4          read; right, John?

23:11  5             MR. QUINN:  Right.

 6                    MS. HURST:  We object to those changes, Your Honor.

 7                    THE COURT:  Right.

 8                    (Recess taken.)

 9                    THE COURT:  Secrecy requirement.

23:24 10             Any nits, disagreements, without waiving any prior

11          objections?

12                    MR. ZELLER:  I'm sorry, which one again?

13                    THE COURT:  Secrecy requirement.

14                    (Pause in the proceedings.)

23:25 15             MR. ZELLER:  No problem.

16                    THE COURT:  No problem; okay.

17                    Reasonable efforts to protect secrecy.

18                    MS. HURST:  No problem.

19                    (Pause in the proceedings.)

23:25 20             MR. ZELLER:  Nothing further on that.

21                    THE COURT:  Okay.

22                    Misappropriation by acquisition without waiving any

23          prior objections?

24                    MS. HURST:  There's no basis for charging this

23:25 25    against Larian because he did not acquire the Bratz trade
```

UNITED STATES DISTRICT COURT

1    secrets; MGA did.

2              MR. ZELLER:  We don't have any comments on this.

3              THE COURT:  Do you disagree about Larian?

4              MR. ZELLER:  Oh, yes.

23:25  5         I mean he's -- he's a defendant here and he is

6    potentially liable for his own actions.

7              THE COURT:  Improper means of acquiring trade

8    secret, without waiving any prior objections?

9              (Pause in the proceedings.)

23:26 10         MS. HURST:  No issues.

11             MR. ZELLER:  No.

12             THE COURT:  Okay.  Misappropriation by use, without

13   waiving any prior objections?

14             (Pause in the proceedings.)

23:26 15         MS. HURST:  Just a second.

16             THE COURT:  Take a look.  It doesn't mean we're

17   correct.

18             We think we took it right out of the form, but I

19   want to make sure that you're satisfied.

23:26 20         (Pause in the proceedings.)

21             MS. HURST:  I don't think that 2(a) is applicable

22   when you're coordinating by acquisition.  It doesn't make

23   sense.

24             (Pause in the proceedings.)

23:27 25         MS. HURST:  Also we think that the last paragraph

1    in the form should be given.

2              THE COURT:  "E"?

3              MS. HURST:  Yeah; it should have the innocent

4    misappropriator defense in here.

23:28  5       MR. ZELLER:  One concern I have about this language

6    is, is that it doesn't make clear that it must actually be a

7    trade secret.

8              I mean, obviously it says so in the first sentence.

9    It says, "a party misappropriates a trade secret by use if

23:28 10  it" -- But then No. 1 says "use the claimed trade secrets

11   without the claimant's consent," which almost seems to take

12   away the idea that it actually has to be a trade secret as

13   opposed to being a claimed trade secret.

14             THE COURT:  Okay.  What about Subparagraph E?

23:29 15       MR. ZELLER:  Just going back to the point, I would

16   suggest something like, for Point 1, "used a trade secret of

17   the claimant without the claimant's consent."

18             THE COURT:  Why?

19             MR. ZELLER:  Because, again, it -- it almost

23:29 20  suggests that the first element can be met by using what is

21   claimed to be the trade secret rather than something that's

22   already been established as a trade secret.

23             THE COURT:  Okay.  What about Subparagraph E?

24             MR. ZELLER:  I'm sorry, E?

23:29 25       THE COURT:  "E."

         1            MR. ZELLER:  We don't have an E.

         2            THE COURT:  It's over in the book, innocent

         3     misappropriator defense.

         4            MR. ZELLER:  Do we have that instruction?

23:30    5            Maybe I've just gotten punchy, but I'm confused

         6     because the version of this we have ends with "D," so the --

         7            MR. MCCONVILLE:  No; the book -- there is a form

         8     instruction book.

         9            MR. ZELLER:  So I just want to be clear on that, so

23:30   10     we should look at the -- and we're digging that up -- is the

        11     standard instruction.

        12            THE COURT:  Why don't they just share their book

        13     with you for a moment.  It will take one second and save you

        14     a lot of time.

23:30   15            See, now we're sharing.

        16            (Pause in the proceedings.)

        17            THE COURT:  Now, let me ask you this, can we get

        18     this in shape tomorrow so I can read it about 12 noon?

        19            MS. HURST:  Yes, we're not giving up.

23:30   20            THE COURT:  No, you haven't.  No, you haven't.

        21            You're just starting, you're not tired and you're

        22     not hot and you're doing just fine, all of you are.

        23            MS. HURST:  We've got to do this before argument.

        24            THE COURT:  Okay.  Let's do it.

23:31   25            Now, how was that?  What about E?

Case 2:04-cv-09049-DOC-RNB   Document 10441   Filed 04/08/11   Page 145 of 178   Page ID #:317278
CV 04-9049 DOC - 04/06/2011   Volume 4 of 4

145

```
 1              MR. ZELLER:  I think that's fine to add.

 2              THE COURT:  Okay.  I'll add it.

 3              All right.  Now what about misappropriation by

 4     disclosure?

23:31  5              MS. HURST:  Now that Machado's out I don't see how

 6     this is even relevant.

 7              THE COURT:  I'm wondering that also, but I want to

 8     check with Mattel -- Mr. Zeller, and see what --

 9              MR. ZELLER:  It definitely still applies with

23:31 10     Bryant.

11              THE COURT:  Give me an example.

12              MR. ZELLER:  Well, I mean, in fact, this is -- this

13     is, in some respects, one of our main theories here:

14     Carter Bryant developed Bratz while a Mattel employee, and it

23:31 15     was, in fact, his disclosure of that trade secret, almost

16     regardless of anything else that happened --

17              THE COURT:  Okay.

18              MR. ZELLER:  -- that alone caused us damage.

19              THE COURT:  Independent economic value.

23:32 20              MS. HURST:  But Carter Bryant's not a defendant

21     anymore.

22              THE COURT:  Carter Bryant's not a defendant

23     anymore.  I heard that from Ms. Hurst.

24              MS. HURST:  So it doesn't make sense.

23:32 25              THE COURT:  Okay.  Let me go back and look.
```

```
 1              (Pause in the proceedings.)

 2              THE COURT:  Independent economic value.

 3              MS. HURST:  Do we have issues with that?

 4              THE COURT:  Check your book and make sure it's --

23:33  5        (Pause in the proceedings.)

 6              THE COURT:  And I think in 1 it should be in

 7   keeping its secret.

 8              "To the extent the claimant obtained or could

 9   obtain economic value from the information in keeping" --

23:33 10  well, no, I'm sorry.  I'm wrong; it's "its secret."

11              MS. HURST:  "In keeping" -- you're right, though,

12   that that's part of the test.

13              THE COURT:  Now, remember, you've got the choice.

14   Your lead counsel can argue Friday and I can have another day

23:34 15  and an evening with you tomorrow night, if we can't get it

16   done tonight, to complete it so we can instruct on Monday.

17              MS. HURST:  We need it tonight; I'm sorry.

18              THE COURT:  Okay.  That's fine.

19              (Pause in the proceedings.)

23:35 20        THE COURT:  So economic value explained?

21              MS. HURST:  We're okay with it.

22              MR. ZELLER:  Yes.

23              THE COURT:  Remedies for trade secret

24   misappropriation.

23:35 25        MR. ZELLER:  This one, actually, a fair amount of
```

UNITED STATES DISTRICT COURT

```
 1    this can actually go.
 2            The last paragraph we had in brackets -- I mean, we
 3    agree subject to our position on royalty, but since the
 4    court's not going to be submitting that to the jury, I -- I
23:35  5    think all that should come out.
 6            THE COURT:  The last paragraph?
 7            MR. ZELLER:  Yes.
 8            And then I also think --
 9            THE COURT:  Ms. Hurst?
23:35 10           MS. HURST:  The last paragraph is our remedies
11    paragraph.
12            What are you talking about?
13            THE COURT:  Okay.
14            MR. MCCONVILLE:  This is --
23:35 15           MR. ZELLER:  This is reasonable royalty.
16            MS. HURST:  Oh, I'm on the wrong -- wait a minute.
17            Mine is way different.
18            THE COURT:  No, we're on remedies for trade secret
19    misappropriation.
23:35 20           You've got the exact copy I've got.
21            MS. HURST:  I've got three paragraphs here.
22            I think he gave us a later one.
23            MR. ZELLER:  Oh, you have another one?
24            Then I guess I don't have the most current version
23:36 25    of it.
```

```
 1               MS. HURST:  Is yours the long one or the short one,
 2       Your Honor?
 3               The short one.
 4               MR. ZELLER:  Okay.  Well, then, we're on the same
23:36  5       page.
 6               But does it still include the language of "if
 7       Mattel proves" -- "if Mattel proves" -- "if
 8       Mattel de Mexico" --
 9               MR. MCCONVILLE:  Well, Mattel de Mexico's out?
23:36 10       Isn't Mattel de Mexico out?
11               MS. HURST:  Yeah, this looks right to me.
12               MR. MCCONVILLE:  You're looking at the wrong form,
13       Mike.
14               THE COURT:  I gave a brand new copy tonight that
23:36 15       I'm working off of with yellow tabs.  That should be the only
16       copy you're working off of, and I think your associate is now
17       handing you that copy -- and he has.
18               MR. ZELLER:  He has the --
19               THE COURT:  He's -- your associate's had them
23:36 20       because he's doing a lot of work tonight.
21               MR. ZELLER:  Well, that he is.
22               THE COURT:  And that's why there has been some
23       confusion, so now we're back with remedies for trade secret
24       misappropriation.
23:37 25               (Pause in the proceedings.)
```

CV 04-9049 DOC - 04/06/2011 - Volume 4 of 4

```
 1              MR. ZELLER:  Much better.

 2              THE COURT:  Is that acceptable?

 3              MR. ZELLER:  That's acceptable.

 4              THE COURT:  Okay.  Trade secret misappropriation;

23:37  5   lost profits.

 6              Now, have you been out of sync? because if you are

 7    I want to go back over.

 8              MR. ZELLER:  No, no, I haven't been.  That one

 9    wasn't updated and I haven't --

23:37 10              THE COURT:  So, you're okay thus far?

11              MR. ZELLER:  I am.

12              THE COURT:  Okay.

13              So, then, trade secret misappropriation; lost

14    profits.

23:37 15              (Pause in the proceedings.)

16              MR. ZELLER:  That's fine.

17              THE COURT:  MGA?

18              MR. MCCONVILLE:  Lost profits.

19              THE COURT:  Trade secret misappropriation; lost

23:38 20   profits.

21              (Pause in the proceedings.)

22              THE COURT:  Trade secret misappropriation; lost

23    profits.

24              MR. QUINN:  Going, going, gone.

23:38 25              MS. HURST:  Looks good.  Going three times.
```

UNITED STATES DISTRICT COURT

```
 1                   THE COURT:  Good; okay.

 2                   Okay.  Trade secret misappropriation; unjust

 3       enrichment.

 4                   MR. ZELLER:  Fine by us.

23:38  5             THE COURT:  Okay.  Mattel.

 6                   And MGA?

 7                   Take your time with it.

 8                   (Pause in the proceedings.)

 9                   THE COURT:  Pay attention to the "and/or," and see

23:38 10       if that's appropriate.

11                   (Pause in the proceedings.)

12                   MS. HURST:  Okay.  We're good with it.

13                   THE COURT:  Affirmative defense; information was

14       readily ascertainable by proper means.

23:39 15             MS. HURST:  It looks like the form to me.

16                   MR. ZELLER:  We don't have any comments on that.

17                   THE COURT:  Okay.  Affirmative defense; statute of

18       limitation, three-year limit, 3426.6, Civil Code.

19                   MS. HURST:  Can I just ask for clarification.  Are

23:39 20       they really claiming that our counterclaim and reply is

21       barred if the relation-backdate is November 20th, 2003?

22                   They can't claim that.

23                   There was a continuing wrong.

24                   That -- that -- that doctrine's not -- they can't

23:39 25       claim statute of limitations.  We put in evidence that they
```

| 1 | continued to sneak into our showrooms in 2004 and 2005. |
| 2 | MR. ZELLER:  We don't agree with that. |
| 3 | THE COURT:  Okay. |
| 4 | MS. HURST:  I mean, okay -- I don't think this |
| 23:40 5 | defense can go to the jury for them. |
| 6 | THE COURT:  All right. |
| 7 | MR. ZELLER:  I mean, our -- |
| 8 | THE COURT:  Unless you weren't sneaking into their |
| 9 | showrooms. |
| 23:40 10 | MS. HURST:  Right; but that's a different issue. |
| 11 | THE COURT:  Intentional interference with |
| 12 | contractual relations. |
| 13 | MS. HURST:  Hold on, hold on. |
| 14 | (Pause in the proceedings.) |
| 23:41 15 | MS. HURST:  Okay.  And statute of limitations in |
| 16 | that third paragraph, it should be "Bratz-related -- |
| 17 | THE COURT:  The paragraph beginning "first" -- |
| 18 | MS. HURST:  Yes. |
| 19 | THE COURT:  "First you must determine whether the |
| 23:41 20 | Bratz-related trade secret information" -- |
| 21 | MS. HURST:  "Were" -- |
| 22 | THE COURT:  "Were allegedly misappropriated." |
| 23 | MS. HURST:  I'm not even sure whether they do need |
| 24 | to determine that, quite frankly. |
| 23:41 25 | Well, it's confusing. |

UNITED STATES DISTRICT COURT

1          THE COURT:  It is confusing.

2          MS. HURST:  I don't think they need to determine

3     that.  I think they only need to decide the discovery issue.

4          I mean, that's certainly -- certainly the way the

23:41  5     form is constructed.

6          I mean, we're not asking them up or down.  This

7     sentence is only relevant if you're asking them up or down.

8          (Pause in the proceedings.)

9          THE COURT:  Mike, what do you think on behalf of

23:42 10     Mattel?

11          (Pause in the proceedings.)

12          MR. ZELLER:  I mean, that does, on the face of it,

13     seem to make sense.

14          In other words, we're just asking them to determine

23:42 15     the date.

16          MS. HURST:  I think it should say "the lawsuit was

17     filed on" -- or the "claim was timely."

18          THE COURT:  Do you two want to work on that,

19     because the more I can process the more --

23:42 20          MS. HURST:  Yeah, I can work on that.

21          THE COURT:  Frankly, it doesn't make sense to me.

22          I'm not going to get reversed on it, so it's really

23     up to the two of you.

24          I think confusion works to your benefit, but it

23:43 25     also works to your detriment.

1            So intentional interference with contractual

2    relations.

3            MS. HURST:  Think we already stated our issues on

4    this.

23:43  5            THE COURT:  Frankly, with your JMAL I'm probably

6    not going to have time to look at this in depth, and

7    fortunately or unfortunately it's probably going to go to the

8    jury.

9            MS. HURST:  Yeah.

23:43 10            THE COURT:  But I have to express to both of you

11    I've got some real qualms about this.

12            But --

13            MS. HURST:  Yeah, I mean --

14            THE COURT:  And I'm just saying to both of you, I'm

23:43 15    forewarning you, I'm really looking closely at this claim.

16            MS. HURST:  I mean, this really adds a claim

17    that -- well, I don't know.  It's just a shame --

18            THE COURT:  Well, you've got the whole supersession

19    issue, you've got a di minimus claim, and you've got jury

23:44 20    confusion being introduced through mitigation which, through

21    MGA's standpoint, is a benefit, potentially.

22            MS. HURST:  Well, I think we're entitled to

23    mitigation across the board.

24            THE COURT:  I know you are; but regardless, whether

23:44 25    you are or aren't, it introduces a concept.

```
 1            MS. HURST:  Well, I think this claim should go.
 2            THE COURT:  I know.
 3            MS. HURST:  But it's a shame for us to take up time
 4    discussing it with the jury in closing, but --
23:44 5       THE COURT:  I mean, it's a compliment to both of
 6    you.
 7            You've each snowed each other with work and I
 8    compliment you for it.
 9            MR. QUINN:  I think you had something to do with it
23:44 10   too, Judge.
11            THE COURT:  I was an innocent participant.
12            MR. QUINN:  No, you weren't.
13            MS. HURST:  Did you see that I was quoted today
14    calling you the "hardest working judge in the business"?
23:45 15      THE COURT:  No; I haven't read anything except for
16    your briefing for the last 48 hours.
17            MS. HURST:  All right.
18            THE COURT:  Where were you quoted?  In the --
19            MS. HURST:  In the *Daily Journal Top 75 IP*
23:45 20   *Litigators*.
21            THE COURT:  No, I haven't seen that.
22            I haven't had time to read anything.
23            MR. QUINN:  Wait until you see what Mike said,
24    Judge.
23:45 25      MS. HURST:  Well, I take a page out of Mr. Quinn's
```

UNITED STATES DISTRICT COURT

1    book:  "I only read my own press."

2              THE COURT:  Yeah.

3              But, anyway, I will express to both of you, I don't

4    know what the jury's going to do.

23:45  5              I used to kid you about a few things, but in this

6    case I really believe it could be anything.  I mean, it's

7    really going to depend upon the eight people sitting back

8    there.

9              It could be a huge verdict on trade secrets, it

23:45 10   could be nothing, and it could be a verdict for MGA.  It

11   could be anything in the world.  I could not predict this and

12   wouldn't even try.

13             MS. HURST:  All right.  So, you know, we've said

14   prior things like "but for," and that the particular

23:46 15   obligation should be specified and a lot of other things,

16   subject to all of that, this is fine -- and the JMAL, this is

17   fine with us.

18             THE COURT:  Intentional interference with

19   contractual obligations without waiving any of your prior

23:46 20   objections?

21             MS. HURST:  Right.

22             THE COURT:  Intent, without waiving any of your

23   prior objections?

24             MS. HURST:  It looks good.  It looked like the

23:46 25   form.

```
 1              THE COURT:  Mike?

 2              MR. ZELLER:  Same.

 3              THE COURT:  Remedy with intentional interference

 4      for contractural relations, lost profits?

23:46  5              (Pause in the proceedings.)

 6              THE COURT:  Now, the problem became, the JMAL came

 7      in recently, and I've been devoting an awful, awful lot of

 8      energy to that Rule 50, but with -- with Machado, which took

 9      a lot of time.  And the instructions, we've been working on

23:47 10     the instructions for as long as you can possibly think.

11              And I want to express to you the hardest part has

12      been to bring the instructions down for some semblance of the

13      ability of the jury to understand these instructions.  That's

14      been extraordinarily difficult without putting each of you in

23:47 15     jeopardy in terms of some instruction that we thought was

16      vital that you needed.  But we can't reduce the complexity

17      anymore.

18              So we're -- remedies for intentional interference

19      with contractural license, lost profits.

23:47 20              MR. QUINN:  We're okay with that.

21              THE COURT:  Okay.  MGA, without waiving any of your

22      objections?

23              Affirmative defense statute of limitations;

24      intentional interference with contractual limitations?

23:48 25              (Pause in the proceedings.)
```

```
 1              MS. HURST:  I think the burden of proof issue
 2       again, Your Honor.
 3              THE COURT:  On statute of limitations is reversed.
 4              MS. HURST:  Yeah; for delayed discovery it's on
23:48 5  Mattel.
 6              THE COURT:  I think you're right, but I'm asking
 7       you to gather every case you can find.  I certainly don't
 8       want to retry the case over something as silly as that.
 9              So you've got a lot of associates here and -- okay.
23:48 10             MS. HURST:  Who do you think is going to be the
11       foreperson, Your Honor --
12              THE COURT:  Don't know.
13              MS. HURST:  Take a bet on that one, off the record.
14              (Laughter.)
23:49 15             THE COURT:  I honestly don't know.
16              Well, duty to deliberate, it seems like a standard
17       instruction.
18              Let's pass through it quickly.
19              Communications with the court and return of
23:49 20 verdict.
21              MR. QUINN:  You remember -- Your Honor, could I
22       make a pitch?
23              You really -- you've got to tell them that all that
24       unfair competition stuff has nothing to do with this.  That's
23:49 25 for you.  It shouldn't color their deliberations on
```

 1   copyright, trade secret, or anything else, what happened at

 2   Kohl's --

 3            THE COURT:  On Kohl's --

 4            MR. QUINN:  -- whether we moved boxes, you know,

23:49  5   whether we terminated licenses.  They need to be told that

 6   they -- that that is irrelevant to their work.

 7            MS. HURST:  We disagree with that.

 8            THE COURT:  Why?

 9            MS. HURST:  Because we think it's related to

23:49 10   damages, amongst other reasons.

11            THE COURT:  I thought it was related to trade

12   secret misappropriation.

13            MS. HURST:  Exactly.

14            THE COURT:  That's the only reason it's there.

23:49 15   Otherwise I agree with Mr. Quinn.

16            MR. QUINN:  How is what happened at Kohl's related

17   to any trade secret misappropriation?

18            THE COURT:  I'll be back with you and address you

19   on that in just a second.

23:50 20            MR. MCCONVILLE:  It also relates to the credibility

21   of the witnesses too, Your Honor.

22            THE COURT:  Okay.  Now, just a moment.

23            MS. HURST:  Right.

24            THE COURT:  Just a minute.

23:50 25            Can I go back and keep my crew working for a moment

Case 2:04-cv-09049-DOC-RNB   Document 10441   Filed 04/08/11   Page 159 of 178   Page ID #:317292
CV 04-9049 DOC - 04/06/2011 - Volume 4 of 4

159

```
 1    in the word processing department and get out a set of

 2    instructions to you in a moment?

 3              MS. HURST:  Yes.

 4              MR. QUINN:  Yes.

 5              THE COURT:  The second thing is -- and I'm going to

 6    delay -- and you can word process the special verdict form --

 7    okay -- there's no reason to hold you for filling in blanks

 8    tonight, but it's got to be done before I instruct tomorrow.

 9    In other words, I've got to see some product from your

10    paralegals and your counsel.

11              MS. HURST:  We sent you a chart.

12              THE COURT:  You did but I'm not going to transfer

13    that.

14              MS. HURST:  Well, we need your verdict form, then,

15    so we can transfer that.

16              THE COURT:  I'll send you the verdict form.

17              MR. QUINN:  Another one hanging fire, Your Honor,

18    is inferences from privileged communications not to draw?

19              Anything else?

20              THE COURT:  Now, you're also going to work on a

21    couple instructions, just the wording, which would help me

22    out, probably save me half an hour right now; okay.

23              MS. HURST:  Your Honor, on privileged

24    communications we'll agree to CACI's form but not to go

25    beyond that the way Mattel has suggested.
```

Case 2:04-cv-09049-DOC-RNB   Document 10441   Filed 04/08/11   Page 160 of 178   Page ID #:317293
CV 04-9049 DOC - 04/06/2011   Volume 4 of 4

160

|   |   |
|---|---|
| 1 | THE COURT:  CACI? |
| 2 | Dan, CACI? |
| 3 | MS. HURST:  215. |
| 4 | Just take a look at the standard instruction on |
| 23:51 5 | inferences. |
| 6 | Just see if everybody agrees and we can move on |
| 7 | quickly. |
| 8 | (Discussion held off the record.) |
| 9 | MR. QUINN:  This is fine. |
| 23:52 10 | THE COURT:  Is that fine? |
| 11 | MR. QUINN:  Yeah. |
| 12 | THE COURT:  So we can -- what is it, 215? |
| 13 | MS. HURST:  215. |
| 14 | THE COURT:  I can just pull it back there. |
| 23:52 15 | All right.  Okay. |
| 16 | And I need to make some rulings tomorrow -- for |
| 17 | tomorrow also tonight, so give me a little bit of time. |
| 18 | MR. QUINN:  Judge, can I take Mr. McConville? |
| 19 | I've got -- I've got witnesses, I've got a closing |
| 23:52 20 | to do and I'm turning 60 years old in June. |
| 21 | THE COURT:  You are.  Those are great years.  Enjoy |
| 22 | them. |
| 23 | MS. HURST:  Is that all? |
| 24 | THE COURT:  But I've got to make some rulings. |
| 23:52 25 | Give me -- give me half an hour.  Just give me half |

1    an hour.  Give me until 12:15 or 12:20 to get my crew back

2    there with directions, because they don't have any directions

3    right now.  They can't do anything.

4            And, No. 2, let me try to get out a semi semifinal

23:53  5    and just give me 20 minutes because you don't have any idea

6    what they're doing.

7            MR. QUINN:  I don't know what I'm doing now.

8            (Recess taken.)

9            THE COURT:  We're back on the record.

00:07  10            Now, two things and I can get these instructions

11    out between one and three hours from now.

12            This rolling statute of limitations is a huge

13    concern.

14            I recognize the near impossibility of this.

00:07  15            MS. HURST:  We agreed that you would decide it

16    after they pick a date and we'll just brief it and argue it

17    at the same time we deal with the other stuff.

18            THE COURT:  Is that acceptable?

19            MR. ZELLER:  It is.

00:07  20            THE COURT:  I think it's the only way it can be

21    handled, frankly.

22            MR. ZELLER:  We came to the same conclusion

23    given -- given that they don't know what the filing date was,

24    that there's no way that they can -- they -- the jury, can --

00:08  25    can figure this without.

1          THE COURT:  Okay.  Is that stipulated by Mattel and

2    MGA?

3          MS. HURST:  Yes.

4          MR. ZELLER:  It is.

00:08  5          THE COURT:  Now, first -- where's Mr. Quinn?

6          MR. QUINN:  Right here, Your Honor.

7          THE COURT:  Okay.  Mr. McConville.

8          I'm going to allow the records custodian to come

9    back in and admit the contracts and the codes of conduct that

00:08 10   you placed before me and the employees' handbooks at issue.

11          I think that this was always on the table and I

12   think it would be prejudicial to Mattel not to have this set

13   forth, and that's over MGA's strenuous objection.

14          I'm going to allow MGA to call a surrebuttal

00:08 15   witness on the conception and reduction to practice because

16   otherwise the CACI in your surrebuttal for -- about technical

17   words it makes no sense to the jury.

18          I'm going to take judicial notice of the -- I'm

19   not -- well, I'm going to delay taking judicial notice of the

00:08 20   copyright registrations submitted by Mattel; however, the

21   other registrations by Mattel that are already in evidence

22   may be discussed because, first, Mr. Eckert testified to them

23   in his personal capacity and the hearsay on those documents

24   is admissible because Mattel is a party admission against

00:09 25   interest.

CV 04-9049 DOC - 04/06/2011 Volume 4 of 4

```
 1              However, the hearsay and the registrations that

 2      I've been looking at -- and I'm through about three quarters

 3      of them right now -- are supportive of Mattel's position in

 4      this case and it's obviously not a party admission against

 5      interests and it goes to the heart of the case.

 6              Most courts, in fact, every -- most courts actually

 7      treat the registration as a prime facie evidence of ownership

 8      and that would be entirely improper for the jury to do in

 9      this case.

10              And I handed out the Time Warner case this

11      afternoon and Judge Gold was on the panel, and Footnote 4

12      makes it clear that judicial notice should not be taken when

13      the ownership of the copyright is at issue.

14              If the jury finds ownership, then I will properly

15      take judicial notice of the recordation and registration and,

16      therefore, the attorney or whoever that custodian was is not

17      going to be admitted or -- or allowed to testify concerning

18      this.

19              Now, that should keep you both rolling with my

20      rulings tonight.

21              MR. ZELLER:  Can I just ask a question about that,

22      Your Honor?

23              THE COURT:  Yes.

24              MR. ZELLER:  So if I understand it, then, there

25      won't be an issue concerning the court's
```

00:09 5
00:09 10
00:09 15
00:10 20
00:10 25

UNITED STATES DISTRICT COURT

| | |
|---|---|
| 1 | subject-matter jurisdiction? |
| 2 | THE COURT:  Repeat that to me. |
| 3 | MR. ZELLER:  I just want to make sure that there |
| 4 | won't be an issue concerning the court's -- in the court's |
| 00:10 5 | view, there will not be an issue concerning the court's |
| 6 | subject-matter jurisdiction over -- |
| 7 | THE COURT:  Which protects you for appellate |
| 8 | purposes. |
| 9 | MR. ZELLER:  Correct. |
| 00:10 10 | THE COURT:  I think that that's fair. |
| 11 | MS. HURST:  Your Honor, it's not a subject-matter |
| 12 | jurisdiction issue; it's an element of the claim. |
| 13 | After -- after *Reed/Elsevier* where the Supreme |
| 14 | Court decided it's not a matter of subject-matter |
| 00:10 15 | jurisdiction, the Ninth Circuit has held that it is an |
| 16 | element of the claim. |
| 17 | THE COURT:  Give me the case. |
| 18 | MS. HURST:  Just a moment. |
| 19 | THE COURT:  Okay.  I'll go back and look. |
| 00:11 20 | MR. ZELLER:  This is -- |
| 21 | MS. HURST:  Cosmetic ideas -- |
| 22 | THE COURT:  Hold on.  Let me go back and look. |
| 23 | MS. HURST:  Cosmetic ideas. |
| 24 | THE COURT:  Cosmetic ideas. |
| 00:11 25 | MS. HURST:  606 F.3d. |

```
 1              THE COURT:  606 F.3d.

 2              MS. HURST:  612.

 3              THE COURT:  612.

 4              Okay.

00:11  5        MS. HURST:  And we would just renew our request

 6    that Mr. Avakaian has to come in testify to this.

 7              He was their 30(b)(6).  We'll be satisfied if they

 8    put a witness on the stand.

 9              THE COURT:  Just a moment.  That's up to you.

00:11 10        But I'm not bargaining between the parties.  I got

11    into that the other evening and I didn't feel comfortable at

12    all.

13              That's the ruling, and if you two want to work that

14    out, that's fine, but I'm not going to be a part of that.

00:11 15        So let me just go look at the Cosmetics case for

16    just a moment and let me see if there's anything else that

17    can get these instructions out to you quickly.

18              MR. ZELLER:  This is a issue concerning the verdict

19    form.  I don't know if that's something that we can address

00:11 20    later.

21              THE COURT:  You can address it tomorrow afternoon,

22    if you want to.

23              MR. ZELLER:  Okay.

24              THE COURT:  In other words, the verdict form is

00:11 25    something I don't have to give to the jury tomorrow.
```

UNITED STATES DISTRICT COURT

 1          And -- but I do need the appendices.  I've got to

 2   have Appendix A and B so at least even if I don't read them I

 3   refer to them; okay.

 4          And I need to match my instructions to those and I

00:12 5   need to number the instructions, and I've got to do that

 6   later this morning or -- or before I read to the jury,

 7   hopefully by --

 8          MR. ZELLER:  Then I should raise our concern about

 9   MGA's trade secrets chart that it submitted to the court.

00:12 10          THE COURT:  Oh, I'm not going to give them -- oh, I

 11   see, my apologies, the chart that would go in either

 12   Appendix B?

 13          MR. ZELLER:  Right.

 14          And if there is going to be an appendix.

00:12 15          THE COURT:  Well, let's -- let's talk about that.

 16          Here's what's confronting us, so I have a record.

 17          If I simply have a verdict form with the

 18   delineations that you've set forth, then technically they're

 19   not part of the instructions and I think many appellate

00:13 20   courts would frown upon that.  Verdict forms are simply --

 21   they can be general forms.

 22          And I don't think the Circuit or the Supreme Court

 23   will be concerned about any mis- -- well, di minimus

 24   miswording on the verdict form, although the court is

00:13 25   certainly trying not to have that occur.

1            But I think they would be very concerned concerning

2       the instructions.

3            So I would think that we would have Appendix A and

4       B, that they would be referred to no different than a

00:13  5       criminal indictment being attached in a criminal matter, but

6       they would simply be a duplicate on the special verdict form.

7            So what are your concerns about MGA's proposals?

8            MR. ZELLER:  Well, what they have proposed in terms

9       of what they claim are "MGA's trade secrets and trial exhibit

00:14  10      numbers," is that they describe in words MGA's claimed trade

11      secrets.  So, so far so good, at least in terms of what we --

12      what they -- what we believe should be in the chart.

13           The difficulty is, is that then they cite to Mattel

14      toy fair reports as though those are their trade secrets and

00:14  15      that is not our understanding of what the purpose of the

16      chart was.

17           The chart that we created, for example, and the

18      exhibit numbers that we're pointing to are the Mattel

19      documents that are the trade secrets.

00:14  20           MGA is essentially saying through this chart to the

21      jury, here's a description of our trade secret and look at

22      Mattel's document and you'll see it.

23           THE COURT:  I hadn't, frankly, paid close attention

24      to those tonight.

00:15  25           Can I go back and look?

1      MR. ZELLER:  And our view is that it's

2  argumentative and that's prejudicial and is misleading to the

3  jury.

4      I can show the court --

00:15  5      THE COURT:  We can make it very simple.

6      I can just have exhibit numbers.

7      MR. ZELLER:  But they shouldn't -- they -- they

8  don't have exhibit numbers for their trade secrets.  They

9  just have a description.

00:15 10      So, No. 1, for example, is "the appearance,

11  operation, intended play pattern, plans to advertise on

12  television and FOB pricing for Bratz Mobile," but then the

13  problem arises because they go on and beyond saying what

14  their trade secret is they have in parentheses (TX 9507.1)

00:15 15  and (.43).

16      What they're citing to is a Mattel document that --

17  one of the toy fair reports or an equivalent -- where they're

18  essentially arguing to the jury through this chart --

19      THE COURT:  What the evidence is that supports

00:15 20  their position.

21      MR. ZELLER:  Correct; which is obviously not --

22      THE COURT:  You're not doing that, are you?

23      MR. MCCONVILLE:  What we're doing is telling them

24  where our trade secret is.

00:16 25      MR. QUINN:  That is the only identification is by

1    referring to Sal's toy fair report.

2            In other words, for this, "see this."  For this,

3    "see this."  And it's in the form.

4            THE COURT:  It's a form of argument.

00:16  5            MR. ZELLER:  It is.

6            MS. HURST:  Well, I -- actually, all we were trying

7    to do was demonstrate that we had met the element of proof.

8    I mean, that's not -- we're not trying to argue.

9            THE COURT:  Well, but the "element of proof" is

00:16 10    simply argument.

11            In other words, I just want identification.

12            MS. HURST:  Well, then theirs is too by saying the

13    sculpt or the drawing is the trade secret.

14            THE COURT:  Why don't we resolve that and refer to

00:16 15    TX numbers.

16            MR. ZELLER:  Well, we're referring to different TX

17    numbers.  The TX numbers we're referring to are things that

18    we own or claim to own.

19            THE COURT:  Uh-huh.

00:16 20            MR. ZELLER:  And most of them, in fact, are Mattel

21    documents.

22            THE COURT:  And can't you do the same thing for

23    your 114?

24            MR. MCCONVILLE:  So what we're doing is those are

00:16 25    things that we claim to own that are in their documents.

Case 2:04-cv-09049-DOC-RNB   Document 10441   Filed 04/08/11   Page 170 of 178   Page ID #:317303
CV 04-9049 DOC - 04/06/2011   Volume 4 of 4

170

1    It's a mirror image of what they're doing.

2              MS. HURST:  It's the same thing.

3              MR. ZELLER:  No, those are Mattel documents.

4    They're pointing to where it was supposedly misappropriated.

00:17  5    You can tell that from their chart.

6              THE COURT:  Okay.  Have a seat for a moment.

7              MR. MCCONVILLE:  And so they're -- their things

8    that they're claiming are our document and our --

9              THE COURT:  Let me go look for awhile.

00:17 10             MR. QUINN:  Judge, I have a couple of gifts for

11   you.

12             I have a binder for the HR person; the contracts

13   and the things that we proposed to get in for her and a

14   freshly minted trial brief on fraudulent concealment

00:17 15   addressing the issue that the court raised two hours ago.

16             THE COURT:  Excellent.

17             Thank you.

18             (Recess taken.)

19             THE COURT:  Two -- two questions.

00:22 20             On the issue concerning MGA's trade secret chart,

21   your concern that MGA's identifying Sal Villasenor's reports

22   and videos as containing his trade secret information --

23   that's what I'm hearing in the argument --

24             MR. ZELLER:  It's actually worse than that.

00:22 25             They're claiming that that is their trade secret.

1      THE COURT:  Here's my question.  Information is not

2   tangible and is usually contained in a tangible item.

3      For example, if Carter Bryant went to Staples or

4   wherever and he bought a pitch book that Mattel has no

00:22  5   legitimate ownership right to, since it didn't actually buy

6   the pitch book itself, but if Mattel claims to own the

7   designs and information in that pitch book, so why isn't that

8   the same thing when MGA claims to own the information in a

9   document that Sal Villasenor created?

00:23 10      MR. ZELLER:  Because they're not claiming that they

11   own the document.

12      They're not claiming that the work product is their

13   invention that they own; it's -- what they're claiming --

14   and, in fact, I'll show the chart.

00:23 15      You see, the chart, as they've set it up -- and

16   this was the way --

17      THE COURT:  No, I've got it back there.  We're

18   looking at it.

19      MR. ZELLER:  So they have MGA's trade secrets,

00:23 20   right, in their chart, and that's for Bratz Mobile, is the

21   "appearance, operation, intended play pattern and plans to

22   advertise on television for Bratz Mobile."

23      Then Column B says, "Mattel multimedia documents or

24   other items that reflect unauthorized use."

00:23 25      So what they're doing is, is that they're putting

1    TX numbers in that they argue and are arguing reflect

2    unauthorized use of the trade secrets.

3            The charts are intended to identify what the trade

4    secrets are themselves, but what they are doing with their

00:24  5    chart and the information that they want put into the chart

6    is combining those two things, which will mislead the jury

7    into thinking that the claim is, is that this Mattel

8    document, which they are not claiming ownership to -- they're

9    claiming the Mattel document reflects unauthorized use, not

00:24 10    that they own it, and not that it's their trade secret.

11            They're conflating those two things and that's why

12    it's not proper.

13            MS. HURST:  No; they're confusing, again, the

14    difference between the tangible object and the information

00:24 15    contained therein.

16            It's exactly the same as what the court just said.

17            By identifying Carter Bryant's drawings and the

18    sculpts, they're -- they're attacking the accused -- they're

19    identifying their trade secret by identifying accused work.

00:24 20    It's one in the same.  It's exactly the same thing.

21            THE COURT:  Okay.

22            MS. HURST:  And we didn't put -- by the way, our

23    chart doesn't say anything about this is --

24            THE COURT:  I got it.

00:25 25            MS. HURST:  Yeah.

1        THE COURT:  But, okay, one more thing.

2        I understand your submission, but you need to

3    stipulate on the exact wording of the copyright statute of

4    limitations instruction.  I mean, you've left me in a place

00:25 5    where my instruction --

6        MS. HURST:  We're working on it.

7        THE COURT:  Okay.

8        One more question.

9        If we had this continuing dispute and I need more

00:25 10   time with Appendix A and B, can I still instruct the jury

11   tomorrow about your consent?

12       MS. HURST:  Without having finalized A and B?

13       THE COURT:  That's what I'm worried about.

14       I'm going to go back and look again.  I'm just not

00:25 15   sure how much time it's going to take.

16       Well, talk about that for a moment, because we're

17   not going anyplace.  And I'm going to release lead counsel in

18   just a moment, but I need them here because I respect the two

19   of you immensely; but I know where this is going tonight with

00:26 20   Mr. Zeller and Ms. Hurst, so I need counsel here for some

21   overall perspective.

22       I'm going to go back and work some more.

23       You tell me.  I'll come out in ten minutes or so.

24       (Recess taken.)

01:18 25       THE COURT:  We're on the record.

1          All counsel are present.

2          Counsel and the court have been struggling with a

3    very difficult problem, what we refer to as the "rolling

4    statute of limitations" concerning copyright, and I wanted to

01:19  5    provide, first of all, my compliments to counsel for their

6    extraordinary work on an exceedingly difficult issue.

7          And, counsel, the lectern is yours.

8          MR. ZELLER:  Well, I think that -- that we've

9    agreed on the forms for these -- these instructions,

01:19  10   preserving everyone's right, as usual; and also, I assume

11   from all this -- and I think this has been implicit in what

12   we've talked about, but also even to omitted instructions, we

13   don't need to constantly reassert those.  Those are deemed

14   preserved.

01:20  15         So the statute of limitations issue pertaining to

16   the copyright infringement claim can involve the potentially

17   thorny issue of the rolling statute of limitations, so the

18   parties have agreed -- and we've all discussed off the record

19   and acknowledged that this could be a very, very difficult

01:20  20   problem in the aftermath of the jury's verdict and it's going

21   to be, at best, an imprecise science, depending on the dates

22   that are determined by the jury and then trying to use those

23   as data points to figure out if they do find that certain of

24   the acts occurred, or the claimed infringement should have

01:20  25   been discovered outside the three years or -- and, of course,

1    that Mattel knew that we're all going to have to grapple with

2    that problem, and I think we all recognize the difficulty

3    that we'll have.

4         But it's at least -- I think we also all

01:21  5    acknowledge that difficulty is far less than what we'll have

6    in trying to instruct the jury and avoid jury confusion.

7         THE COURT:  Counsel.

8         MS. HURST:  Subject to our prior objections that it

9    should be the actual injury rule under TRW and -- well, I

01:21 10    think there was another one -- I can't remember what it is --

11    we agree on the form of the language that's been submitted to

12    the court.

13        I think under -- trying to reconcile *Rolly* and

14   *Polar Bear* and apply it to this case it would be an

01:21 15    impossibility for the jury -- oh, I remember what our other

16    objection is -- up-or-down vote with the relation-backdate --

17    and -- and there is simply no way to charge the jury on this,

18    so we agree that this is going to have to be an issue for the

19    court once the jury picks a date.

01:21 20        THE COURT:  Okay.  And I want to thank counsel.

21        It's about 1:30 in the morning and we're trying to

22    get the jury instructions after many, many weeks together on

23    these instructions in a form in this last evening so that the

24    jury can be instructed tomorrow and counsel then can argue on

01:22 25    Friday with the court preinstructing.

1          Now, if you'd remain for just one moment I want to

2     make sure that we've received everything.  They're

3     word-processing.  We'll send this out between probably

4     3:00 and 5:00 this morning.

01:22 5          MS. HURST:  Your Honor, can I just make one pitch

6     on this change to the protectable elements chart?

7          THE COURT:  Certainly.

8          MS. HURST:  When the court added the language or

9     the combination of precise body proportions, we don't agree

01:22 10    with that language, but even if you're going to leave it in,

11    the grammatical construction of this sentence now makes it

12    unclear whether the precise combination of features modifies

13    that language after the "or" and really leaves that -- it

14    leaves a problem, because it leaves it as if a protected

01:23 15    element is simply the combination of precise body proportions

16    and that is just not correct.

17          THE COURT:  Show that to Mr. Zeller so you're both

18    viewing the document.

19          (Discussion held off the record.)

01:23 20         MS. HURST:  Here.

21          (Pause in the proceedings.)

22          THE COURT:  All right.  Can I send Denise home this

23    evening with our thanks and appreciation.

24          MR. MCCONVILLE:  Always.

01:24 25         Thank you, Denise.

CV 04-9049 DOC - 04/06/2011 - Volume 4 of 4

```
1          THE COURT:  Denise, on the record you've been
2   absolutely incredible.  All counsel thank you.  It's 1:30 in
3   the morning.  That's extraordinary.
4       //                                              //
5       //                                              //
6       //                                              //
7       //                                              //
8       //                                              //
9       //                                              //
10      //                                              //
11      //                                              //
12      //                                              //
13      //                                              //
14      //                                              //
15      //                                              //
16      //                                              //
17      //                                              //
18      //                                              //
19      //                                              //
20      //                                              //
21      //                                              //
22      //                                              //
23      //                                              //
24      //                                              //
25      //                                              //
```

UNITED STATES DISTRICT COURT

CV 04-9049 DOC - 04/06/2011 - Volume 4 of 4

1              Goodnight.

2              (Adjournment at 25:24 to resume on Thursday,

3     April 7, 2011 at 8:00.  Next session reported by Debbie Gale.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT