1              **UNITED STATES DISTRICT COURT**

2              **CENTRAL DISTRICT OF CALIFORNIA**

3         **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                   - - - - - - -

5
   MATTEL, INC., et al.,              )
6                                     )
              Plaintiffs,             )
7                                     )
        vs.                           ) No. CV 04-9049 DOC
8                                     )    Day 48
   MGA ENTERTAINMENT, INC., et al.,   )    Volume 1 of 3
9                                     )
                                      )
10            Defendants.             )
   _____)

11

12

13

14            REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                    Jury Trial

16               Santa Ana, California

17              Thursday, April 7, 2011

18

19

20

21   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
22   United States District Court
     411 West 4th Street, Room 1-053
23   Santa Ana, California 92701
     (714) 558-8141
24

25   04cv9049 Mattel 2011-04-07 D48V1

1    **APPEARANCES OF COUNSEL:**

2

     FOR PLAINTIFF MATTEL, INC., ET AL.:

3

             QUINN EMANUEL URQUHART & SULLIVAN
4            BY:  JOHN QUINN
                  WILLIAM PRICE (not present)
5                 MICHAEL T. ZELLER
                  Attorneys at Law
6            865 South Figueroa Street
             10th Floor
7            Los Angeles, California 90017
             (213) 443-3000

8

9

10

11   FOR DEFENDANT MGA ENTERTAINMENT, INC., ET AL:

12           ORRICK, HERRINGTON & SUTCLIFFE, LLP (Irvine)
             BY:  THOMAS S. McCONVILLE
13                Attorney at Law
             4 Park Plaza
14           Suite 1600
             Irvine, California 92614
15           (949) 567-6700

16           - AND -

17           ORRICK, HERRINGTON & SUTCLIFFE, LLP (SF)
             BY:  ANNETTE L. HURST
18                Attorney at Law
             405 Howard Street
19           San Francisco, California 94105
             (415)773-5700

20           - AND -

21           KELLER RACKAUCKAS
22           BY:  JENNIFER KELLER (not present)
                  Attorney at Law
23           18500 Von Karman Avenue
             Suite 560
24           Irvine, California 92612
             (949) 476-8700

25

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 3 of 103   Page ID #:317379
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

3

1    **APPEARANCES OF COUNSEL (Continued):**

2

3    FOR CARLOS GUSTAVO MACHADO GOMEZ:

4
              LAW OFFICES OF MARK E. OVERLAND
5             By:  MARK E. OVERLAND  (not present)
                   Attorney at Law
6             100 Wilshire Boulevard
              Suite 950
7             Santa Monica, California 90401
              (310) 459-2830
8
              - AND -
9
              SCHEPER KIM & HARRIS LLP
10            BY:  ALEXANDER H. COTE  (not present)
                   Attorney at Law
11            601 West 5th Street
              12th Floor
12            Los Angeles, California 90071
              (213) 613-4660
13

14   ALSO PRESENT:

15            MGA ENTERTAINMENT, INC.
              BY:  JEANINE PISONI
16                 Attorney at Law
              16360 Roscoe Boulevard
17            Suite 105
              Van Nuys, California 91406
18

19            ROBERT A. ECKERT, MATTEL CEO

20            ISAAC LARIAN, MGA CEO

21            KEN KOTARSKI, Mattel Technical Operator

22            MIKE STOVALL, MGA Technical Operator

23

24

25

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 4 of 103   Page ID #:317380
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

4

```
1                           I N D E X

2    WITNESSES              DIRECT  CROSS  REDIRECT  RECROSS

3    SCHAFFHAUSER, Jackie

4    By Mr. Quinn              13

5    By Ms. Hurst                     21

6    DAIL, Sally

7    By Mr. Quinn              25

8    By Ms. Hurst                     41

9

10

11                          EXHIBITS

12   EXHIBIT NO.            IDENTIFICATION    IN EVIDENCE

13     07283   Employee Confidential              28
               Information and
14             Inventions Agreement for
               Jorge Castilla
15
       7284    Conflict-of-Interest              31
16             Questionnaire for Jorge
               Castilla
17
       15882   Employee Confidential              28
18             Information and
               Inventions Agreement for
19             Daniel Cooney

20   20572-26 and -27 Employee                    28
               Confidential Information
21             and Inventions Agreement
               for Ryan Tumaliun
22
       20572-25  Conflict-of-Interest             31
23             Questionnaire for Ryan
               Tumaliun
24

25
```

1                    **EXHIBITS (Continued)**

2   **EXHIBIT NO.**              **IDENTIFICATION**         **IN EVIDENCE**

3

4   20572-10  Proprietary                                        32
                Information Checkout for
5               Ryan Tumaliun

6   20572    Pages 7 and 8 HR Action                             42
                Notice re R. Tumaliun
7

8   24134-46 and -47  Employee                                   28
                Confidential Information
                and Inventions Agreement
9               for Ana Isabel Cabrera

10  24134-31 to -35  Employee                                    28
                Confidentiality and
11              Inventions Agreement for
                Ana Isabel Cabrera
12

13  24134-44 to-45                                               31
                Conflict-of-Interest
                Questionnaire for Ana
14              Cabrera

15  24134-37 to -38  Offer of                                    34
                employment for Ana
16              Isabel Cabrera

17  24134-58  Compensation summary                               37
                for Ana Cabrera
18

19  24135-39  Employee                                           28
                Confidentiality and
                Inventions Agreement for
20              Beatriz Morales

21  24135-24 to -28  Employee                                    28
                Confidentiality and
22              Inventions Agreement for
                Beatirz Morales
23

24  24135-38  Conflict-of-Interest                               31
                Questionnaire for
                Beatriz Morales
25

DEBBIE GALE, U.S. COURT REPORTER

| | | | |
|---|---|---|---|
| 1 | **EXHIBITS (Continued)** | | |
| 2 | **EXHIBIT NO.** | **IDENTIFICATION** | **IN EVIDENCE** |
| 3 | 24135-32 to -34  Offer of | | 34 |
| 4 | employment for Beatriz Morales | | |
| 5 | 24135-45  Compensation summary | | 37 |
| 6 | for Beatriz Morales | | |
| 7 | 24830 | MyScene Delancey Styling Head invoice dated 7/14/2004 | 16 |
| 8 | | | |
| 9 | 24834 | Club Birthday Car with Radio invoice dated 10/25/2004 | 16 |
| 10 | | | |
| 11 | 24835 | MyScene Swappin Styles invoice dated 4/7/3005 | 16 |
| 12 | 24836 | MyScene Dress to Impress invoice dated 8/20/2004 | 16 |
| 13 | | | |
| 14 | 24838 | Bling Bling Vehicle invoice dated 10/6/2005 | 16 |
| 15 | 24839 | MyScene Madison's Loft invoice dated 6/18/2004 | 16 |
| 16 | | | |
| 17 | 24840 | MyScene Delancy & Hudson Convertible invoice dated 6/12/2004 | 16 |
| 18 | | | |
| 19 | 24841 | MyScene Mall Maniacs Skechers Playset invoice dated 4/12/2006 | 16 |
| 20 | | | |
| 21 | 24847 | MyScene Junglicious Salon Safari invoice dated 5/31/2007 | 16 |
| 22 | | | |
| 23 | 24949 | MyScene Masquerade Madness Party Pad Playset invoice | 16 |
| 24 | | | |
| 25 | 24950 | MyScene Styling Head invoice dated 7/21/2003 | 16 |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 7 of 103   Page ID #:317383
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

7

```
1                    EXHIBITS (Continued)

2    EXHIBIT NO.              IDENTIFICATION        IN EVIDENCE

3
       34193-40  2000 review for Maria                  37
4            Salazar

5    35193-37 and -38  Employee                         28
             Confidential Information
6            and Inventions Agreement
             for Maria Elena Salazar
7
     35193-35 to -36                                    31
8            Conflict-of-Interest
             Questionnaire for Maria
9            Salazar

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case 2:04-cv-09049-DOC-RNB  Document 10446  Filed 04/12/11  Page 8 of 103  Page ID #:317384
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

8

| | |
|---|---|
| | **SANTA ANA, CALIFORNIA, THURSDAY, APRIL 7, 2011** |
| 1 | |
| 2 | **Day 48, Volume 1 of 3** |
| 3 | (9:20 a.m.) |
| 09:14  4 | *(Outside the presence of the jury.)* |
| 09:20  5 | THE COURT:  We're on the record out of the |
| 09:20  6 | presence of the jury.  Ms. Hurst and Mr. Zeller. |
| 09:20  7 | Mr. Zeller, we need an indirect profits |
| 09:20  8 | instruction on copyright that's restricted to the sculpts. |
| 09:20  9 | Ms. Hurst. |
| 09:20  10 | MS. HURST:  It says that already, I thought. |
| 09:20  11 | THE COURT:  Look at it again in just a moment. |
| 09:20  12 | Let me give you the second concern.  We need a |
| 09:20  13 | punitive damages instruction since we're asking the jury to |
| 09:20  14 | reach threshold findings on punitive damages without -- in |
| 09:20  15 | other words, that gateway.  And I think it's |
| 09:20  16 | Question No. 18.  So we don't have a malicious instruction. |
| 09:21  17 | And third, you need to draft up an instruction |
| 09:21  18 | about drawing no inference from the assertion of the |
| 09:21  19 | privilege and e-mail that into my chambers like you did last |
| 09:21  20 | night. |
| 09:21  21 | MS. HURST:  CACI 215 last night. |
| 09:21  22 | THE COURT:  215 for our record. |
| 09:21  23 | Mr. Zeller, is that acceptable?  CACI 215? |
| 09:21  24 | MR. ZELLER:  I don't know. |
| 09:21  25 | MR. QUINN:  Yes.  Yes, it is, Your Honor. |

CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

9

09:21   1          THE COURT:  All right.  Thank you, Mr. Quinn.

09:21   2          Then don't you agree concerning the special

09:21   3   verdicts that we need an instruction that would be

09:21   4   synonymous with Question 18?

09:21   5          MS. HURST:  Yes, we do.  I mean, we don't think

09:21   6   that should go to the jury.

09:21   7          THE COURT:  I know you don't.

09:21   8          MS. HURST:  But having, you know...

09:21   9          THE COURT:  Having not prevailed on that argument,

09:21   10  MGA -- the Court denies MGA's request.

09:21   11         And, Mr. Quinn, I need a punitives.

09:21   12         MR. QUINN:  Yes.

09:21   13         THE COURT:  Okay.  And finally, once again let me

09:22   14  repeat I need an indirect profits instruction on copyright

09:22   15  that's restricted to sculpts.

09:22   16         Now, I assume that we'll be in session just a few

09:22   17  minutes this morning.  We'll recess and get at your

09:22   18  additional arguments on the areas that I expressed concern

09:22   19  this morning.

09:22   20         The JMOL just arrived a few days ago from MGA.

09:22   21  There's been a response by Mattel this morning.  The Court's

09:22   22  deeply concerned that intentional interference is

09:22   23  appropriate for the jury.

09:22   24         It may be superseded, and there may be no harm.

09:22   25  But at this late date, there's simply no way to examine that

| 09:22 | 1 | thoughtfully in light of the last moment JMOL's from both |
| 09:22 | 2 | parties. |
| 09:22 | 3 | In all likelihood, that will, in fact, go to the |
| 09:22 | 4 | jury. |
| 09:22 | 5 | Second -- and I'll look at that very closely.  I |
| 09:22 | 6 | forewarned counsel I think that that's a *de minimis* damages |
| 09:23 | 7 | cause of action. |
| 09:23 | 8 | Second, I'm concerned about backpack.  I've |
| 09:23 | 9 | forewarned Mattel that in all likelihood that's not coming |
| 09:23 | 10 | in for lack of foundation, although the chain seems to be |
| 09:23 | 11 | complete.  But I'm not satisfied with that, and I need |
| 09:23 | 12 | argument again on the record.  Although that's been a |
| 09:23 | 13 | tentative thought I've shared with all counsel on many |
| 09:23 | 14 | occasions. |
| 09:23 | 15 | Fourth, the Court's dissatisfied with itself in |
| 09:23 | 16 | terms of the fraudulent concealment.  I did some research |
| 09:23 | 17 | after counsel left last evening about 1:30.  I'm not certain |
| 09:23 | 18 | I've had time to adequately consider that yet, but I'll look |
| 09:23 | 19 | at that in the interim period of time. |
| 09:23 | 20 | Those are the four areas that I find displeasure |
| 09:23 | 21 | with myself, in the limited time that's left to me, and I |
| 09:23 | 22 | want to put that on the record. |
| 09:23 | 23 | All right.  Counsel, are you ready? |
| 09:23 | 24 | MR. QUINN:  Yes, Your Honor. |
| 09:23 | 25 | MS. HURST:  Your Honor, we'd offer CACI 3941 and |

CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

11

| 09:24 | 1 | 3944 on the punitive damages standard for first phase of a |
| 09:24 | 2 | bifurcated trial against an entity and an individual. |
| 09:24 | 3 | THE COURT:  Okay.  And 215 is agreed to.  Let me |
| 09:24 | 4 | take a look at 3941 and 3944. |
| 09:24 | 5 | We'll give 215 concerning assertion of privilege, |
| 09:24 | 6 | and the indirect profits instruction.  And I think that I |
| 09:24 | 7 | e-mailed to you last night about 3:00 o'clock -- did you get |
| 09:24 | 8 | it about 3:00?  Maybe you got it when you woke up.  I sent |
| 09:24 | 9 | each of you a copy of the instructions last night about |
| 09:24 | 10 | 3:00 a.m. |
| 09:24 | 11 | MS. HURST:  Your Honor -- |
| 09:24 | 12 | THE COURT:  And -- |
| 09:24 | 13 | MS. HURST:  I'm sorry. |
| 09:24 | 14 | THE COURT:  Keep going. |
| 09:24 | 15 | MS. HURST:  I'm not sure if 4411 is in on trade |
| 09:24 | 16 | secret definition, willful and malicious. |
| 09:24 | 17 | THE COURT:  Well, why don't we take that up so we |
| 09:24 | 18 | get -- |
| 09:25 | 19 | MS. HURST:  Yeah, we need 4411 in as well for |
| 09:25 | 20 | willful and malicious. |
| 09:25 | 21 | THE COURT:  Mr. Zeller, would you look at that |
| 09:25 | 22 | also? |
| 09:25 | 23 | MR. ZELLER:  I will. |
| 09:25 | 24 | THE COURT:  Okay.  Let's get back in session. |
| 09:26 | 25 | *(In the presence of the jury.)* |

CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

12

| | | |
|---|---|---|
| 09:26 | 1 | THE COURT:  We're back in session.  The jury's |
| 09:26 | 2 | present, all counsel. |
| 09:26 | 3 | Counsel, thank you for your courtesy.  If you |
| 09:26 | 4 | would be seated. |
| 09:26 | 5 | Ladies and gentlemen, I want to apologize to you. |
| 09:26 | 6 | Any delay this morning and yesterday is completely my |
| 09:27 | 7 | responsibility.  I've been a little bit disorganized.  I |
| 09:27 | 8 | want to put that on the record, and it does not reflect on |
| 09:27 | 9 | counsel for either side.  The last days have been a little |
| 09:27 | 10 | interesting. |
| 09:27 | 11 | Counsel, would you like to call your next witness, |
| 09:27 | 12 | please. |
| 09:27 | 13 | MR. QUINN:  Your Honor, Mattel calls Jackie |
| 09:27 | 14 | Schaffhauser. |
| 09:27 | 15 | THE COURT:  Thank you very much.  Would you step |
| 09:27 | 16 | forward, please.  Would you be kind enough to raise your |
| 09:27 | 17 | right hand. |
| 09:27 | 18 | **JACKIE SCHAFFHAUSER, MATTEL'S WITNESS, SWORN** |
| 09:27 | 19 | THE WITNESS:  I do. |
| 09:27 | 20 | THE COURT:  Thank you.  If you would please come |
| 09:27 | 21 | along the jury railing, right here is an entrance. |
| 09:27 | 22 | If you would be seated, please. |
| 09:27 | 23 | Would you state your full name for the jury, |
| 09:27 | 24 | please. |
| 09:27 | 25 | THE WITNESS:  Jackie Schaffhauser. |

| 09:27 | 1 | THE COURT: Would you spell your last name, |
| 09:27 | 2 | please. |
| 09:27 | 3 | THE WITNESS: S-C-H-A-F-F-H-A-U-S-E-R. |
| 09:27 | 4 | THE COURT: Thank you very much. |
| 09:27 | 5 | This is direct examination by Mr. Quinn on behalf |
| 09:27 | 6 | of Mattel. |
| 09:27 | 7 | **DIRECT EXAMINATION** |
| 09:28 | 8 | BY MR. QUINN: |
| 09:28 | 9 | Q. Good morning, Ms. Schaffauser. Did I get that right? |
| 09:28 | 10 | A. Yes. |
| 09:28 | 11 | Q. You work at Mattel? |
| 09:28 | 12 | A. Yes. |
| 09:28 | 13 | Q. And what position do you have there? |
| 09:28 | 14 | A. I'm a supervisor in the Trade Finance Department. |
| 09:28 | 15 | Q. And how long have you worked at Mattel? |
| 09:28 | 16 | A. I've been at Mattel for 14 years, but a total tenure of |
| 09:28 | 17 | 32 years with my time at Tyco. |
| 09:28 | 18 | Q. That's a company that Mattel acquired? |
| 09:28 | 19 | A. Yes. |
| 09:28 | 20 | Q. And they got you with Tyco? |
| 09:28 | 21 | A. Yes. |
| 09:28 | 22 | Q. And what does the trade finance department do? |
| 09:28 | 23 | A. Our group, we issue policies, sales policies, and |
| 09:28 | 24 | implement those policies and do a bunch of customer finance |
| 09:28 | 25 | obligations. |

CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

14

09:28  1   Q.   While working at Mattel, have you become familiar with

09:28  2   Mattel's procedures for generating and storing shipping

09:28  3   invoices for Mattel products that Mattel sells?

09:28  4   A.   Yes.

09:28  5   Q.   You should have before you a stack of exhibits --

09:28  6            *(Documents provided to the witness.)*

09:28  7   BY MR. QUINN:

09:28  8   Q.   -- including Exhibit 24834 relating to Club Birthday

09:29  9   Car with Radio, dated October 25, 2004;

09:29  10       Exhibit 24835, MyScene Swappin Styles, invoice dated

09:29  11  April 7, 2005;

09:29  12       24836, MyScene Dress to Impress, invoice dated

09:29  13  August 20, 2004;

09:29  14       24838, Bling Bling Vehicle, dated October 6, 2005;

09:29  15       24839, MyScene Madison's Loft, dated June 18, 2004;

09:29  16       24840, MyScene Delaney (sic) and Hudson Convertible,

09:29  17  dated June 12, 2004;

09:29  18       24841, MyScene Mall Maniacs Skechers Playset, April 12,

09:30  19  2006;

09:30  20       24847, MyScene Junglicious Salon Safari, dated May 31,

09:30  21  2007;

09:30  22       24849, MyScene Masquerade Madness --

09:30  23            THE COURT:  Did you skip 24848?

09:30  24            MR. QUINN:  Yes, there isn't one.  Yes, in the

09:30  25  numbering, we did.

CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

15

| | | |
|---|---|---|
| 09:30 | 1 | THE COURT:  Okay. |
| 09:30 | 2 | BY MR. QUINN: |
| 09:30 | 3 | Q.   -- dated June 17, 2004. |
| 09:30 | 4 | Exhibit 24850, MyScene Styling Head, dated July 21, |
| 09:30 | 5 | 2003; |
| 09:30 | 6 | 24830, MyScene Delancey Styling Head, dated July 14, |
| 09:30 | 7 | 2004. |
| 09:30 | 8 | Now, before you took the witness stand this |
| 09:30 | 9 | morning, you reviewed these documents, correct? |
| 09:30 | 10 | A.   Yes. |
| 09:30 | 11 | Q.   And can you identify what those documents are? |
| 09:30 | 12 | A.   They're Mattel invoices. |
| 09:30 | 13 | Q.   And these are product invoices relating to products |
| 09:30 | 14 | that Mattel has sold? |
| 09:31 | 15 | A.   Yes. |
| 09:31 | 16 | Q.   And these -- are these documents made and kept at |
| 09:31 | 17 | Mattel in the regular course of Mattel's business? |
| 09:31 | 18 | A.   Yes. |
| 09:31 | 19 | Q.   What purpose do these invoices serve at Mattel? |
| 09:31 | 20 | A.   They show products shipped, and they're for the |
| 09:31 | 21 | customer to pay us. |
| 09:31 | 22 | Q.   What is the process by which the invoices are |
| 09:31 | 23 | generated? |
| 09:31 | 24 | A.   Every day as shipments go out of the building, an |
| 09:31 | 25 | invoice is created. |

| | | |
|---|---|---|
| 09:31 | 1 | Q.   Are the -- when -- are the invoices generated on the |
| 09:31 | 2 | very day the product ships? |
| 09:31 | 3 | A.   Yes. |
| 09:31 | 4 | Q.   And what do you do with the invoice after it's |
| 09:31 | 5 | generated? |
| 09:31 | 6 | A.   We send it to the customer. |
| 09:31 | 7 | Q.   Does Mattel keep a copy of these invoices? |
| 09:31 | 8 | A.   Yes. |
| 09:31 | 9 | Q.   And where are the copies stored at Mattel? |
| 09:31 | 10 | A.   In the Mattel finance department. |
| 09:31 | 11 | Q.   And that's where you work? |
| 09:31 | 12 | A.   Yes. |
| 09:31 | 13 | MR. QUINN:  We'd offer those exhibits, Your Honor. |
| 09:31 | 14 | THE COURT:  Received. |
| 09:31 | 15 | *(Exhibit No. 24834 received in evidence.)* |
| 09:31 | 16 | *(Exhibit No. 24835 received in evidence.)* |
| 09:31 | 17 | *(Exhibit No. 24836 received in evidence.)* |
| 09:31 | 18 | *(Exhibit No. 24838 received in evidence.)* |
| 09:31 | 19 | *(Exhibit No. 24839 received in evidence.)* |
| 09:31 | 20 | *(Exhibit No. 24840 received in evidence.)* |
| 09:31 | 21 | *(Exhibit No. 24841 received in evidence.)* |
| 09:31 | 22 | *(Exhibit No. 24847 received in evidence.)* |
| 09:31 | 23 | *(Exhibit No. 24949 received in evidence.)* |
| 09:31 | 24 | *(Exhibit No. 24950 received in evidence.)* |
| 09:31 | 25 | *(Exhibit No. 24830 received in evidence.)* |

CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

17

| | | |
|---|---|---|
| 09:31 | 1 | BY MR. QUINN: |
| 09:31 | 2 | Q.   Now, this particular collection of invoices, were you |
| 09:31 | 3 | involved in putting these together and collecting them? |
| 09:31 | 4 | A.   Yes. |
| 09:32 | 5 | Q.   And what was your purpose in gathering this particular |
| 09:32 | 6 | stack of invoices? |
| 09:32 | 7 | A.   I was provided with a list of SKUs to provide the first |
| 09:32 | 8 | shipment date. |
| 09:32 | 9 | Q.   And did you -- by SKUs, you mean these particular |
| 09:32 | 10 | products? |
| 09:32 | 11 | A.   Correct. |
| 09:32 | 12 | Q.   And did you do that? |
| 09:32 | 13 | A.   Yes. |
| 09:32 | 14 | Q.   And how did you do that? |
| 09:32 | 15 | A.   I ran queries to determine the first date of shipment, |
| 09:32 | 16 | and then I ran another query to find the first invoice date, |
| 09:32 | 17 | and then I printed them. |
| 09:32 | 18 | Q.   So do each of these invoices represent the earliest |
| 09:32 | 19 | shipment of a Mattel product? |
| 09:32 | 20 | A.   Yes. |
| 09:32 | 21 | Q.   And did you prepare a demonstrative exhibit to help |
| 09:32 | 22 | illustrate this for the jury? |
| 09:32 | 23 | A.   Yes. |
| 09:32 | 24 | Q.   If you'd take a look, please, at Exhibit 24905. |
| 09:32 | 25 | *(Document provided to the witness.)* |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

18

| 09:32 | 1 | BY MR. QUINN: |
| 09:32 | 2 | Q.   Is this the demonstrative that you prepared? |
| 09:32 | 3 | A.   Yes. |
| 09:32 | 4 | MR. QUINN:  We'd request permission to display the |
| 09:32 | 5 | demonstrative, Your Honor. |
| 09:32 | 6 | THE COURT:  You may display it to help the |
| 09:32 | 7 | testimony.  I won't be receiving it, but you can put it up |
| 09:33 | 8 | on the board. |
| 09:33 | 9 | *(Document displayed.)* |
| 09:33 | 10 | BY MR. QUINN: |
| 09:33 | 11 | Q.   So on the left-hand side, we have the invoice number; |
| 09:33 | 12 | is that correct? |
| 09:33 | 13 | A.   The -- |
| 09:33 | 14 | Q.   Or the trial exhibit number? |
| 09:33 | 15 | A.   The trial exhibit number by invoice. |
| 09:33 | 16 | Q.   And then the SKU of the particular Mattel product that |
| 09:33 | 17 | was of interest? |
| 09:33 | 18 | A.   Yes. |
| 09:33 | 19 | Q.   And then the name of the product that's referred to |
| 09:33 | 20 | there? |
| 09:33 | 21 | A.   Yes. |
| 09:33 | 22 | Q.   So by looking at these invoices, it would be possible |
| 09:33 | 23 | to tell when Mattel first shipped the first example of these |
| 09:33 | 24 | products; is that true? |
| 09:33 | 25 | A.   Yes. |

| | | |
|---|---|---|
| 09:33 | 1 | Q.   So if one wanted to determine whether this particular |
| 09:33 | 2 | Mattel product was in the market before some other product, |
| 09:33 | 3 | this would be something -- these invoices would be something |
| 09:33 | 4 | that one could look at? |
| 09:33 | 5 | A.   Yes. |
| 09:33 | 6 | Q.   Just by way of example, if we could take a look at |
| 09:33 | 7 | Exhibit 24835 now in evidence. |
| 09:33 | 8 | *(Document provided to the witness.)* |
| 09:33 | 9 | MR. QUINN:  If we could put that up on the screen, |
| 09:34 | 10 | Ken. |
| 09:34 | 11 | *(Document displayed.)* |
| 09:34 | 12 | BY MR. QUINN: |
| 09:34 | 13 | Q.   And does this here refer to MyScene Swappin Styles? |
| 09:34 | 14 | A.   Yes. |
| 09:34 | 15 | Q.   And the invoice is dated April 7, 2005? |
| 09:34 | 16 | A.   Yes. |
| 09:34 | 17 | Q.   And would that indicate, based on your records and your |
| 09:34 | 18 | research, that this was the first date that this particular |
| 09:34 | 19 | Mattel SKU, MyScene Swappin Styles, was shipped by Mattel? |
| 09:34 | 20 | A.   Yes. |
| 09:34 | 21 | Q.   And would that be true for every other invoice in this |
| 09:34 | 22 | batch that we just went through, with the exception of trial |
| 09:34 | 23 | Exhibit 24830, the last one we looked at? |
| 09:34 | 24 | A.   Yes. |
| 09:34 | 25 | Q.   And if we could look at that last one, 24830. |

CV 04-9049 DOC – 4/7/2011 – Day 48, Volume 1 of 3

20

| 09:34 | 1 | MR. QUINN:  If we could put that on the screen. |
| 09:34 | 2 | *(Document displayed.)* |
| 09:34 | 3 | BY MR. QUINN: |
| 09:34 | 4 | Q.   That relates to MyScene Delancey Styling Head? |
| 09:34 | 5 | A.   Yes. |
| 09:34 | 6 | Q.   And that is dated July 14, 2004? |
| 09:34 | 7 | A.   Yes. |
| 09:35 | 8 | Q.   Now, for this particular product, do you know whether |
| 09:35 | 9 | this is the first invoice for that product? |
| 09:35 | 10 | A.   No. |
| 09:35 | 11 | Q.   That was not something you were able to determine? |
| 09:35 | 12 | A.   No. |
| 09:35 | 13 | Q.   Is it -- my statement's correct? |
| 09:35 | 14 | A.   Yes. |
| 09:35 | 15 | Q.   But as to all the others, all the others in this group |
| 09:35 | 16 | that we've looked at, the invoice does reflect the first |
| 09:35 | 17 | shipment date? |
| 09:35 | 18 | A.   Yes. |
| 09:35 | 19 | Q.   But would it be true to say that as of the date of this |
| 09:35 | 20 | invoice, July 14, 2004, we do know that there was a sale of |
| 09:35 | 21 | MyScene Delancey Styling Head as of that date? |
| 09:35 | 22 | A.   Yes. |
| 09:35 | 23 | MR. QUINN:  Nothing further. |
| 09:35 | 24 | THE COURT:  Cross-examination?  Ms. Hurst. |
|  | 25 | |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 21 of 103   Page ID #:317397
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

21

| | | |
|---|---|---|
| 09:36 | 1 | **CROSS-EXAMINATION** |
| 09:36 | 2 | BY MS. HURST: |
| 09:36 | 3 | Q.   Good morning. |
| 09:36 | 4 | A.   Good morning. |
| 09:36 | 5 | Q.   You also used shipment manifests or bills of lading |
| 09:36 | 6 | that go out when the actual product is shipped? |
| 09:36 | 7 | A.   I'm sure we do, but I don't deal with the shipping |
| 09:36 | 8 | documents of that sort. |
| 09:36 | 9 | Q.   Okay.  So you did not look at those prior to |
| 09:36 | 10 | testifying; is that correct? |
| 09:36 | 11 | A.   Yes. |
| 09:36 | 12 | Q.   Just going back to that last one, 24830? |
| 09:36 | 13 | A.   Yes. |
| 09:36 | 14 | *(Document displayed.)* |
| 09:36 | 15 | BY MS. HURST: |
| 09:36 | 16 | Q.   And there's a MyScene Delancey Styling Head in the |
| 09:36 | 17 | middle there; is that right? |
| 09:36 | 18 | A.   Yes. |
| 09:36 | 19 | Q.   And you said that's not the first invoice? |
| 09:36 | 20 | A.   I don't know if it's the first invoice for that |
| 09:37 | 21 | product. |
| 09:37 | 22 | Q.   And why is there uncertainty on that? |
| 09:37 | 23 | A.   I wasn't asked to specifically pull an invoice for that |
| 09:37 | 24 | SKU. |
| 09:37 | 25 | Q.   Okay.  Are there ever more than one SKU for a product, |

CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

22

| | | |
|---|---|---|
| 09:37 | 1 | the same product? |
| 09:37 | 2 | A.   I don't know. |
| 09:37 | 3 | Q.   Is it true that products sometimes get different SKUs |
| 09:37 | 4 | for different retailers even though it's effectively the |
| 09:37 | 5 | same product? |
| 09:37 | 6 | A.   I don't know. |
| 09:37 | 7 | Q.   Please turn back to Exhibit 24905.  It's the chart. |
| 09:38 | 8 | *(Document displayed.)* |
| 09:38 | 9 | BY MS. HURST: |
| 09:38 | 10 | Q.   You have that in front of you now, ma'am? |
| 09:38 | 11 | A.   Yes, yes. |
| 09:38 | 12 | Q.   Okay.  In the product name column, I notice that there |
| 09:38 | 13 | are some entries that have more than one product name.  Do |
| 09:38 | 14 | you see that? |
| 09:38 | 15 | A.   Yes. |
| 09:38 | 16 | Q.   So let's just take, for example, MyScene My Bling Bling |
| 09:38 | 17 | Wheels, and then it also says MyScene Bling Bling Vehicle |
| 09:38 | 18 | underneath, right? |
| 09:38 | 19 | A.   Uh-huh. |
| 09:38 | 20 | Q.   Why are there two names in that box? |
| 09:38 | 21 | A.   Sometimes they abbreviate the name on invoices.  I |
| 09:38 | 22 | don't know the reason for that, but they do. |
| 09:38 | 23 | Q.   Okay.  And just looking there MyScene Masquerade |
| 09:38 | 24 | Madness Party Pad Playset.  Do you see that? |
| 09:39 | 25 | A.   Yes. |

| | | |
|---|---|---|
| 09:39 | 1 | Q.   And you see it also says MyScene Madness with Loft? |
| 09:39 | 2 | A.   Yes. |
| 09:39 | 3 | Q.   Which one was the name of the product as it was |
| 09:39 | 4 | marketed? |
| 09:39 | 5 | A.   I don't know. |
| 09:39 | 6 | Q.   And MyScene Cruisin' in My Ride versus MyScene Delancey |
| 09:39 | 7 | and Hudson Convertible, which one of those was the name of |
| 09:39 | 8 | the product as it was marketed? |
| 09:39 | 9 | A.   I don't know. |
| 09:39 | 10 | Q.   MyScene Mall Maniac Skechers Store Playset versus |
| 09:39 | 11 | MyScene Mall Maniac Playset, which one of those is the name |
| 09:39 | 12 | of the product as it was marketed? |
| 09:39 | 13 | A.   I don't know. |
| 09:39 | 14 | Q.   MyScene the Sound Lounge, Night on the Town versus |
| 09:39 | 15 | MyScene Sound Lounge, which one of those was the name of |
| 09:39 | 16 | product as it was marketed? |
| 09:39 | 17 | A.   I don't know. |
| 09:39 | 18 |          MS. HURST:  No further questions. |
| 09:39 | 19 |          THE COURT:  Redirect.  Mr. Quinn on behalf of |
| 09:39 | 20 | Mattel. |
| 09:39 | 21 |          MR. QUINN:  No further questions, Your Honor. |
| 09:39 | 22 |          THE COURT:  May the witness be excused, Ms. Hurst? |
| 09:40 | 23 |          MS. HURST:  Yes, Your Honor. |
| 09:40 | 24 |          THE COURT:  Mr. Quinn? |
| 09:40 | 25 |          MR. QUINN:  Yes. |

Case 2:04-cv-09049-DOC-RNB  Document 10446  Filed 04/12/11  Page 24 of 103  Page ID #:317400
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

24

| | | |
|---|---|---|
| 09:40 | 1 | THE COURT:  Thank you very much for coming to |
| 09:40 | 2 | Court.  You're excused from these proceedings. |
| 09:40 | 3 | *(Witness excused.)* |
| 09:40 | 4 | THE COURT:  Counsel, your next witness. |
| 09:40 | 5 | MR. QUINN:  Mattel calls Sally Dail. |
| 09:40 | 6 | THE COURT:  If you will step forward, please, |
| 09:40 | 7 | between the double doors. |
| 09:40 | 8 | Now stop at that location and raise your right |
| 09:40 | 9 | hand, please. |
| 09:40 | 10 | **SALLY DAIL, MATTEL'S WITNESS, SWORN** |
| 09:40 | 11 | THE WITNESS:  I do. |
| 09:40 | 12 | THE COURT:  Thank you.  If you will walk along the |
| 09:40 | 13 | side of the jury railing, please, there's an entrance |
| 09:40 | 14 | closest to the wall. |
| 09:40 | 15 | And would you please be seated in the witness box. |
| 09:41 | 16 | Would you state to the jury your full name, |
| 09:41 | 17 | please. |
| 09:41 | 18 | THE WITNESS:  Sally Dail. |
| 09:41 | 19 | THE COURT:  Would you spell your last name, |
| 09:41 | 20 | please. |
| 09:41 | 21 | THE WITNESS:  D-A-I-L. |
| 09:41 | 22 | THE COURT:  Thank you. |
| 09:41 | 23 | Direct examination by Mr. Quinn on behalf of |
| 09:41 | 24 | Mattel. |
| | 25 | |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 25 of 103   Page ID #:317401
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

25

| | | |
|---|---|---|
| 09:41 | 1 | **DIRECT EXAMINATION** |
| 09:41 | 2 | BY MR. QUINN: |
| 09:41 | 3 | Q.   Sally Dail? |
| 09:41 | 4 | A.   Dail, yes. |
| 09:41 | 5 | Q.   You're employed by Mattel? |
| 09:41 | 6 | A.   I am. |
| 09:41 | 7 | Q.   You're a manager in the Human Resources Department? |
| 09:41 | 8 | A.   That's correct. |
| 09:41 | 9 | Q.   How long have you worked at Mattel? |
| 09:41 | 10 | A.   This is my 18th year. |
| 09:41 | 11 | Q.   And how long have you worked in the Human Resources |
| 09:41 | 12 | Department? |
| 09:41 | 13 | A.   Since 2001. |
| 09:41 | 14 | Q.   And while working in the Human Resources Department, |
| 09:41 | 15 | have you become familiar with the forms and agreements that |
| 09:41 | 16 | Mattel enters into with its employees? |
| 09:41 | 17 | A.   Yes. |
| 09:41 | 18 | Q.   And its procedures for maintaining its personnel |
| 09:41 | 19 | records? |
| 09:41 | 20 | A.   Correct. |
| 09:41 | 21 | Q.   And if you'd take a look, please, at trial |
| 09:41 | 22 | Exhibit 07283. |
| 09:41 | 23 | *(Document provided to the witness.)* |
| 09:42 | 24 | MR. QUINN:  Actually, I'm going to ask if we can |
| 09:42 | 25 | place before the witness 07283, 15822, 20572-26 and -27, |

CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

| | | |
|---|---|---|
| 09:42 | 1 | 24134-46 and -47. |
| 09:42 | 2 | THE COURT: There's a couple of those I don't have |
| 09:42 | 3 | in my binder. I can sort those out later. |
| 09:42 | 4 | MR. QUINN: I'm sorry, Your Honor. |
| 09:42 | 5 | THE COURT: That's fine. I'll sort those out |
| 09:42 | 6 | later. I'll probably receive these subject to and then go |
| 09:42 | 7 | over those out of the presence of the jury. |
| 09:42 | 8 | MR. QUINN: 24134-31 to -35. |
| 09:42 | 9 | 24135-39. |
| 09:42 | 10 | 24135-24 to -28. |
| 09:43 | 11 | And 35193-37 and -38. |
| 09:43 | 12 | *(Documents provided to the witness.)* |
| 09:43 | 13 | BY MR. QUINN: |
| 09:43 | 14 | Q.   Do you have those before you? |
| 09:43 | 15 | A.   I do. |
| 09:43 | 16 | Q.   Do you recognize these forms? |
| 09:43 | 17 | A.   I do. |
| 09:43 | 18 | Q.   What are they? |
| 09:43 | 19 | A.   They are, um -- they vary from confidential -- Employee |
| 09:43 | 20 | Confidential Information and Inventions Agreement. |
| 09:43 | 21 | Q.   Let's take them one at a time. First, 07283, the first |
| 09:43 | 22 | one, can you tell us what that is? |
| 09:43 | 23 | A.   It's Employee Confidential Information and Inventions |
| 09:43 | 24 | Agreement. |
| 09:43 | 25 | Q.   And that's between Mattel and whom? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

27

| | | |
|---|---|---|
| 09:43 | 1 | A.   Jorge Castilla. |
| 09:43 | 2 | Q.   And then 15822? |
| 09:43 | 3 | A.   Employee Confidential Information and Inventions |
| 09:43 | 4 | Agreement. |
| 09:43 | 5 | Q.   Between Mattel and? |
| 09:43 | 6 | A.   Daniel Cooney. |
| 09:43 | 7 | Q.   And then 20572-26 and -27? |
| 09:44 | 8 | A.   Employee Confidential Information and Inventions |
| 09:44 | 9 | Agreement. |
| 09:44 | 10 | Q.   Between Mattel and? |
| 09:44 | 11 | A.   Ryan Tumaliun. |
| 09:44 | 12 | Q.   And then 24134-36 and -47? |
| 09:44 | 13 | A.   Employee Confidential Information and Inventions |
| 09:44 | 14 | Agreement. |
| 09:44 | 15 | Q.   And between Mattel and? |
| 09:44 | 16 | A.   Ana Isabel Cabrera. |
| 09:44 | 17 | Q.   And then 24134-31 to -35? |
| 09:44 | 18 | A.   Employee Confidentiality and Inventions Agreement. |
| 09:44 | 19 | Q.   Between Mattel and? |
| 09:44 | 20 | A.   Ana Isabel Cabrera. |
| 09:45 | 21 | Q.   And then 24135-39? |
| 09:45 | 22 | A.   Employee Confidential Information and Inventions |
| 09:45 | 23 | Agreement. |
| 09:45 | 24 | Q.   Between Mattel and? |
| 09:45 | 25 | A.   Beatriz Morales. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

28

| 09:45 | 1 | Q. 24135-24 to -28? |
|---|---|---|
| 09:45 | 2 | A. Employee Confidentiality and Inventions Agreement. |
| 09:45 | 3 | Q. Between Mattel and? |
| 09:45 | 4 | A. Beatriz Morales. |
| 09:45 | 5 | Q. And then 35193-37 to -38? |
| 09:45 | 6 | A. Employee confidential information and inventions |
| 09:45 | 7 | agreement. |
| 09:45 | 8 | Q. Between Mattel and? |
| 09:45 | 9 | A. Maria Elena Salazar. |
| 09:45 | 10 | Q. Are these agreements, uh, agreements that are entered |
| 09:46 | 11 | into, made, and kept by Mattel in the regular course of its |
| 09:46 | 12 | business? |
| 09:46 | 13 | A. Yes, they are. |
| 09:46 | 14 | MR. QUINN: We'd offer these, Your Honor. |
| 09:46 | 15 | THE COURT: Received. |
| 09:46 | 16 | *(Exhibit No. 07283 received in evidence.)* |
| 09:46 | 17 | *(Exhibit No. 15882 received in evidence.)* |
| 09:46 | 18 | *(Exhibit No. 20572-26 and -27 received in evidence.)* |
| 09:46 | 19 | *(Exhibit No. 24134-46 and -47 received in evidence.)* |
| 09:46 | 20 | *(Exhibit No. 24134-31 to -35 received in evidence.)* |
| 09:46 | 21 | *(Exhibit No. 24135-39 received in evidence.)* |
| 09:46 | 22 | *(Exhibit No. 24135-24 to -28 received in evidence.)* |
| 09:46 | 23 | *(Exhibit No. 35193-37 and -38 received in evidence.)* |
| 09:46 | 24 | MR. QUINN: Then I would ask that another batch -- |
| 09:46 | 25 | I'll read off some numbers -- be placed before the witness. |

DEBBIE GALE, U.S. COURT REPORTER

| 09:46 | 1 | Let me know when you're ready, Rachel. |
| 09:46 | 2 | MATTEL'S ASSISTANT:  I don't have the next batch. |
| 09:46 | 3 | MR. QUINN:  This would be Exhibit 7284; it's the |
| 09:46 | 4 | first one.  So 7284. |
| 09:46 | 5 | Then 20572-25. |
| 09:46 | 6 | Then 24134-44 to -45. |
| 09:47 | 7 | Then 24135-38. |
| 09:47 | 8 | *(Documents provided to the witness.)* |
| 09:47 | 9 | MR. QUINN:  Then 351 -- am I getting ahead of you? |
| 09:47 | 10 | MATTEL'S ASSISTANT:  I think I'm okay. |
| 09:47 | 11 | MR. QUINN:  35193-35 to -36. |
| 09:47 | 12 | *(Documents provided to the witness.)* |
| 09:47 | 13 | BY MR. QUINN: |
| 09:47 | 14 | Q.   Do you have those before you? |
| 09:47 | 15 | A.   Three of them, correct? |
| 09:47 | 16 | Q.   Okay. |
| 09:47 | 17 | A.   Okay. |
| 09:47 | 18 | Q.   Looking at Exhibit 7284, can you identify that for us? |
| 09:47 | 19 | 7284. |
| 09:48 | 20 | A.   Okay. |
| 09:48 | 21 | Q.   Can you identify that document for us? |
| 09:48 | 22 | A.   Yes, Conflict-of-Interest Questionnaire. |
| 09:48 | 23 | Q.   And that's signed by who? |
| 09:48 | 24 | A.   Jorge Castilla. |
| 09:48 | 25 | Q.   And then Exhibit 20572-25.  20572-25. |

CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

30

| | | |
|---|---|---|
| 09:48 | 1 | A.   Conflict-of-Interest Questionnaire. |
| 09:48 | 2 | Q.   Signed by? |
| 09:48 | 3 | A.   Ryan Tumaliun. |
| 09:48 | 4 | Q.   Then 24134-44 to -45? |
| 09:48 | 5 | A.   Conflict-of-Interest Questionnaire. |
| 09:48 | 6 | Q.   Signed by? |
| 09:48 | 7 | A.   Ana Cabrera. |
| 09:48 | 8 | Q.   Then 24135-38? |
| 09:48 | 9 | A.   Conflict-of-Interest Questionnaire. |
| 09:49 | 10 | Q.   Signed by? |
| 09:49 | 11 | A.   Beatriz Morales. |
| 09:49 | 12 | Q.   35193-35 to -36? |
| 09:49 | 13 | A.   Conflict-of-Interest Questionnaire. |
| 09:49 | 14 | Q.   Signed by? |
| 09:49 | 15 | A.   Maria Salazar. |
| 09:49 | 16 | Q.   Are these documents documents that are made and kept in |
| 09:49 | 17 | the regular course of Mattel's business? |
| 09:49 | 18 | A.   Yes, they are. |
| 09:49 | 19 | Q.   And what is the purpose of these forms? |
| 09:49 | 20 | A.   Of the Conflict-of-Interest Questionnaire? |
| 09:49 | 21 | Q.   Yes. |
| 09:49 | 22 | A.   It gives the employee an opportunity to disclose to the |
| 09:49 | 23 | company any potential conflicts of interest. |
| 09:49 | 24 | Q.   And when do employees sign these forms? |
| 09:49 | 25 | A.   Usually prior to their first day of employment or their |

CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

31

| 09:49 | 1 | first day of employment. |
| 09:49 | 2 | Q.   And are these forms then kept in the regular course of |
| 09:49 | 3 | Mattel's business in the employee's personnel files? |
| 09:49 | 4 | A.   Yes, they are. |
| 09:49 | 5 |             MR. QUINN:  We'd offer these exhibits, Your Honor. |
| 09:49 | 6 |             MS. HURST:  We're going to object to these, |
| 09:49 | 7 | Your Honor. |
| 09:49 | 8 |             THE COURT:  Each are received. |
| 09:49 | 9 |         *(Exhibit No. 7284 received in evidence.)* |
| 09:46 | 10 |        *(Exhibit No. 20572-25 received in evidence.)* |
| 09:46 | 11 |     *(Exhibit No. 24134-44 to -45 received in evidence.)* |
| 09:46 | 12 |        *(Exhibit No. 24135-38 received in evidence.)* |
| 09:46 | 13 |     *(Exhibit No. 35193-35 to -36 received in evidence.)* |
| 09:50 | 14 |             MR. QUINN:  And then if I could request that |
| 09:50 | 15 | Exhibit 20572-10 be placed before the witness. |
| 09:50 | 16 |          *(Document provided to the witness.)* |
| 09:50 | 17 |             MR. QUINN:  20572-10. |
| 09:50 | 18 |             THE WITNESS:  Okay. |
| 09:50 | 19 |           *(Document displayed.)* |
| 09:50 | 20 |             MR. QUINN:  I'm not sure this is in evidence yet, |
| 09:50 | 21 | Ken. |
| 09:50 | 22 |          *(Document removed from display.)* |
| 09:50 | 23 | BY MR. QUINN: |
| 09:50 | 24 | Q.   Do you recognize this form? |
| 09:50 | 25 | A.   Yes, I do. |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 32 of 103   Page ID #:317408
CV 04-9049 DOC – 4/7/2011 – Day 48, Volume 1 of 3

32

| | | |
|---|---|---|
| 09:50 | 1 | Q.   What is it? |
| 09:50 | 2 | A.   Proprietary information Checkout. |
| 09:50 | 3 | Q.   And does this relate to a particular Mattel employee? |
| 09:50 | 4 | A.   Yes.  Ryan Tumaliun. |
| 09:50 | 5 | Q.   Again, is this form kept in the regular course of |
| 09:50 | 6 | Mattel's business? |
| 09:50 | 7 | A.   Yes, it is. |
| 09:50 | 8 | Q.   And what is the purpose of this form? |
| 09:50 | 9 | A.   To remind departing employees of their continuing |
| 09:50 | 10 | confidentiality obligations as it relates to Mattel's |
| 09:50 | 11 | confidential information as well as ownership in any IP. |
| 09:50 | 12 | Q.   When do employees sign this form? |
| 09:50 | 13 | A.   Typically on their last day. |
| 09:51 | 14 | MR. QUINN:  We'd offer Exhibit 20572-10, |
| 09:51 | 15 | Your Honor. |
| 09:51 | 16 | MS. HURST:  Your Honor, we object on relevance |
| 09:51 | 17 | grounds to these and the Conflict-of-Interest |
| 09:51 | 18 | questionnaires. |
| 09:51 | 19 | THE COURT:  Overruled. |
| 09:51 | 20 | Received. |
| 09:51 | 21 | *(Exhibit No. 20572-10 received in evidence.)* |
| 09:51 | 22 | MR. QUINN:  Request that two more exhibits be |
| 09:51 | 23 | placed before the witness:  Exhibit 24134.  24134-37 and |
| 09:51 | 24 | -38. |
| 09:51 | 25 | *(Documents provided to the witness.)* |

| | | |
|---|---|---|
| 09:51 | 1 | MR. QUINN:  And 24135-32 to -34. |
| 09:51 | 2 | *(Documents provided to the witness.)* |
| 09:51 | 3 | BY MR. QUINN: |
| 09:51 | 4 | Q.   Are you familiar with these documents? |
| 09:51 | 5 | A.   Yes, I am. |
| 09:51 | 6 | Q.   What is 24134-37 to -38? |
| 09:51 | 7 | A.   It's an offer of employment for Ana Isabel Cabrera. |
| 09:51 | 8 | Q.   And 24135-32 to -34? |
| 09:52 | 9 | THE COURT:  Counsel, I'm going to take these |
| 09:52 | 10 | subject to a motion to strike.  I want to make sure that |
| 09:52 | 11 | these are around the time period -- the 2000 time period or |
| 09:52 | 12 | earlier.  If these are 2004, et al., I probably won't allow |
| 09:52 | 13 | them.  So I'll talk to counsel.  I think I indicated that, |
| 09:52 | 14 | but I'm not certain which ones 'cause I can't see them fast |
| 09:52 | 15 | enough. |
| 09:52 | 16 | MR. QUINN:  Understood, Your Honor. |
| 09:52 | 17 | THE COURT:  I'll hold on the ruling that the 2004, |
| 09:52 | 18 | if that's your objection, it will be sustained.  But |
| 09:52 | 19 | anything around 1995 through 1999, up through the 2000 time |
| 09:52 | 20 | period, I'll receive. |
| 09:52 | 21 | BY MR. QUINN: |
| 09:52 | 22 | Q.   Do you have -32, -34 before you as well? |
| 09:52 | 23 | A.   Yes, I do. |
| 09:52 | 24 | Q.   And what is that? |
| 09:52 | 25 | A.   It's an offer letter for employment for Beatriz |

| | | |
|---|---|---|
| 09:52 | 1 | Morales. |
| 09:52 | 2 | Q.   And are these documents created, kept, and maintained |
| 09:52 | 3 | in the regular course of Mattel's business? |
| 09:52 | 4 | A.   Yes, they are. |
| 09:52 | 5 | MR. QUINN:  We'd offer these two exhibits, |
| 09:53 | 6 | Your Honor. |
| 09:53 | 7 | THE COURT:  All right.  Subject to the same |
| 09:53 | 8 | admonition.  I'm just not certain right now whether they're |
| 09:53 | 9 | the 2000 time period versus 2004.  2004, I'm going to rule |
| 09:53 | 10 | are irrelevant; 2000, 2001, relevant. |
| 09:53 | 11 | MR. QUINN:  Understood, Your Honor. |
| 09:53 | 12 | THE COURT:  All right.  Thank you. |
| 09:53 | 13 | *(Exhibit No. 24134-37 to -38 received in evidence.)* |
| 09:53 | 14 | *(Exhibit No. 24135-32 to -34 received in evidence.)* |
| 09:53 | 15 | MR. QUINN:  And then final set, Exhibits 24134-58. |
| 09:53 | 16 | 24134-58. |
| 09:53 | 17 | *(Document provided to the witness.)* |
| 09:53 | 18 | MR. QUINN:  And 24135-44. |
| 09:53 | 19 | *(Document provided to the witness.)* |
| 09:53 | 20 | MR. QUINN:  And 35193-40. |
| 09:53 | 21 | *(Document provided to the witness.)* |
| 09:53 | 22 | BY MR. QUINN: |
| 09:53 | 23 | Q.   Directing your attention to the first one, 24134-58, |
| 09:53 | 24 | can you identify that document? |
| 09:53 | 25 | A.   Yes, I can. |

| | | |
|---|---|---|
| 09:53 | 1 | Q.   What is it? |
| 09:53 | 2 | A.   It's a compensation summary. |
| 09:53 | 3 | Q.   Relating to a particular Mattel employee? |
| 09:53 | 4 | A.   Yes. |
| 09:53 | 5 | Q.   And who would that be? |
| 09:53 | 6 | A.   Ana Cabrera. |
| 09:54 | 7 | Q.   And then 24135-44?  24135-44. |
| 09:54 | 8 | MATTEL'S ASSISTANT:  We have -45, which is a |
| 09:54 | 9 | compensation summary. |
| 09:54 | 10 | MR. QUINN:  Okay.  Thank you very much. |
| 09:54 | 11 | THE WITNESS:  Okay. |
| 09:54 | 12 | BY MR. QUINN: |
| 09:54 | 13 | Q.   You have -45 before you, 24135-45? |
| 09:54 | 14 | A.   Yes, I do. |
| 09:54 | 15 | Q.   And is that also a compensation summary? |
| 09:54 | 16 | A.   Yes, it is. |
| 09:54 | 17 | Q.   What employee does that relate to? |
| 09:54 | 18 | A.   Beatriz Morales. |
| 09:54 | 19 | Q.   And then 34193-40? |
| 09:54 | 20 | A.   Yes. |
| 09:54 | 21 | Q.   What is that? |
| 09:54 | 22 | A.   2000 common review. |
| 09:54 | 23 | Q.   And does that relate to a particular employee? |
| 09:54 | 24 | A.   Yes, it does. |
| 09:54 | 25 | Q.   And what employee is that? |

| | | |
|---|---|---|
| 09:54 | 1 | A.   Maria Salazar. |
| 09:54 | 2 | Q.   Can you tell -- do these reflect compensation for -- |
| 09:54 | 3 | these documents reflect the compensation for Ms. Cabrera and |
| 09:54 | 4 | Ms. Morales? |
| 09:54 | 5 | A.   Yes. |
| 09:54 | 6 | Q.   And could you tell us what -- the last compensation for |
| 09:55 | 7 | Ms. Cabrera that's referenced there? |
| 09:55 | 8 | A.   $54,341. |
| 09:55 | 9 | THE COURT:  I'm sorry.  Is that yearly? |
| 09:55 | 10 | THE WITNESS:  That would have been her new annual |
| 09:55 | 11 | salary. |
| 09:55 | 12 | THE COURT:  Annual.  Thank you. |
| 09:55 | 13 | BY MR. QUINN: |
| 09:55 | 14 | Q.   And then Ms. Morales? |
| 09:55 | 15 | A.   $37,218 annually. |
| 09:55 | 16 | Q.   And then the common review, the -40 -- |
| 09:55 | 17 | Exhibit 35193-40, which I think you already have before you, |
| 09:55 | 18 | that relates to which employee? |
| 09:55 | 19 | A.   Maria Salazar. |
| 09:55 | 20 | Q.   Are all -- are these exhibits that we've just now |
| 09:55 | 21 | reviewed, are these prepared in the regular course of |
| 09:55 | 22 | Mattel's business? |
| 09:55 | 23 | A.   Yes, they are. |
| 09:55 | 24 | Q.   And maintained in the regular course of Mattel's |
| 09:55 | 25 | business in the Human Resources Department? |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 37 of 103   Page ID #:317413
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

37

| | | |
|---|---|---|
| 09:55 | 1 | A.   Yes. |
| 09:55 | 2 | MR. QUINN:  We'd offer these as well, Your Honor. |
| 09:55 | 3 | THE COURT:  Received. |
| 09:55 | 4 | *(Exhibit No. 24134-58 received in evidence.)* |
| 09:46 | 5 | |
| 09:46 | 6 | *(Exhibit No. 24135-45 received in evidence.)* |
| 09:46 | 7 | *(Exhibit No. 34193-40 received in evidence.)* |
| 09:55 | 8 | MR. QUINN:  Nothing further. |
| 09:55 | 9 | THE COURT:  Cross-examination, Ms. Hurst? |
| 09:56 | 10 | MS. HURST:  I do, Your Honor, but could I just |
| 09:56 | 11 | have about a five-minute recess to catch up here? |
| 09:56 | 12 | THE COURT:  You're admonished not to discuss this |
| 09:56 | 13 | matter amongst yourselves, nor form or express any opinion |
| 09:56 | 14 | concerning the case. |
| 09:56 | 15 | You'll be up and down a lot today.  Why don't we |
| 09:56 | 16 | take 15 minutes, in fact. |
| 09:56 | 17 | Counsel, let's take 15 minutes. |
| 09:56 | 18 | And if you would remain for just a moment. |
| 09:56 | 19 | THE WITNESS:  Sure. |
| 09:56 | 20 | *(Outside the presence of the jury.)* |
| 09:56 | 21 | THE COURT:  Counsel, the jury is no longer |
| 09:56 | 22 | present.  Yesterday -- have a seat, Counsel -- yesterday I |
| 09:56 | 23 | made a ruling that -- even though MGA had objected, feeling |
| 09:56 | 24 | that the case involving Mattel had closed, the Court had |
| 09:56 | 25 | ruled that I thought it was extraordinarily prejudicial to |

| | | |
|---|---|---|
| 09:56 | 1 | Mattel not to be able to get in these documents in what |
| 09:56 | 2 | would literally be called the rebuttal case. |
| 09:57 | 3 | The Court was -- went back and reviewed the |
| 09:57 | 4 | record, saw that there was some type of an agreement between |
| 09:57 | 5 | counsel.  I had not seen the three notebooks, and I don't |
| 09:57 | 6 | want to get into a credibility contest between counsel. |
| 09:57 | 7 | They're both very honorable people.  Whatever their |
| 09:57 | 8 | perceptions are, the Court will rely upon without entering |
| 09:57 | 9 | into that. |
| 09:57 | 10 | In addition, it wouldn't make any difference what |
| 09:57 | 11 | their disagreements were in this regard. |
| 09:57 | 12 | I'd indicated that I was going to allow you to |
| 09:57 | 13 | testify today, Ms. Dail, so that a number of documents could |
| 09:57 | 14 | come in. |
| 09:57 | 15 | And I want to make certain that these are the |
| 09:57 | 16 | documents, Counsel, that would pertain to, let's say, the |
| 09:57 | 17 | 1995 initial signing period that would correspond to Carter |
| 09:57 | 18 | Bryant and/or up through 2000 to 2004.  Anything concerning |
| 09:57 | 19 | 2004 would be irrelevant, because the assignment agreements |
| 09:57 | 20 | changed again. |
| 09:57 | 21 | So what's the objection and quarrel between the |
| 09:57 | 22 | parties?  Because I haven't been able to see each of those |
| 09:58 | 23 | as they were presented. |
| 09:58 | 24 | MS. HURST:  Your Honor, our concern is that on the |
| 09:58 | 25 | Conflict-of-Interest questionnaires, that those are not |

09:58   1   agreements.  And it's going to confuse the jury because

09:58   2   that's not -- I mean, even assuming the intentional

09:58   3   interference claim goes to the jury, the agreement that

09:58   4   we're accused of having interfered with is the -- is the

09:58   5   contract.

09:58   6            THE COURT:  Is a lack of foundation objection?  In

09:58   7   other words, is the Conflict-of-Interest agreement --

09:58   8            Ms. Dail, is a Conflict-of-Interest agreement

09:58   9   given to me as an employee if I was coming to your company?

09:58   10           THE WITNESS:  Yes, it is.

09:58   11           THE COURT:  So the day I signed the

09:58   12   confidentiality agreement in the normal course and pattern

09:58   13   of Mattel, do I get a confident- -- strike that -- a

09:58   14   Conflict-of-Interest agreement?

09:58   15           THE WITNESS:  Yes, you do.

09:58   16           THE COURT:  Now, we can never be guaranteed that

09:58   17   happens on each occasion, but that's the normal practice of

09:58   18   Mattel?

09:58   19           THE WITNESS:  Correct.

09:58   20           THE COURT:  When I leave the company, there's a

09:58   21   proprietary information checkout?

09:58   22           THE WITNESS:  That's correct.

09:58   23           THE COURT:  But I can't be guaranteed that that

09:58   24   happens on every occasion out of thousands, but that's

09:58   25   typically your procedure?

| | | |
|---|---|---|
| 09:58 | 1 | THE WITNESS:  Correct. |
| 09:58 | 2 | THE COURT:  Okay.  Now, would you look at those |
| 09:58 | 3 | documents in front of you just to help me, and then I think |
| 09:59 | 4 | we're going to almost be done. |
| 09:59 | 5 | Are there any of those documents that bear the |
| 09:59 | 6 | date of 2004?  I know that with Salazar, Morales, and |
| 09:59 | 7 | Cabrera, that there were a series of confidentiality |
| 09:59 | 8 | agreements up to about 19 -- oh, '91 or '92, that had the |
| 09:59 | 9 | word "ideas" in it.  Then it's my understanding, so that you |
| 09:59 | 10 | understand what I'm after, "ideas" was taken out for some |
| 09:59 | 11 | reason. |
| 09:59 | 12 | I have no idea why. |
| 09:59 | 13 | But it was put back in, in 2004.  And the |
| 09:59 | 14 | disagreements between the parties is that MGA is arguing |
| 09:59 | 15 | that that was put back in subject to this pending |
| 09:59 | 16 | litigation.  Mattel is arguing that this is something that |
| 09:59 | 17 | was put back in that had previously been taken out that |
| 09:59 | 18 | existed before. |
| 09:59 | 19 | THE WITNESS:  Okay. |
| 09:59 | 20 | THE COURT:  And it was with former counsel back in |
| 09:59 | 21 | the 1990's, who I think is deceased. |
| 09:59 | 22 | Are any of these documents dated 2004?  If so, |
| 10:00 | 23 | they would be irrelevant. |
| 10:00 | 24 | But anything up to 2004 would be relevant, about |
| 10:00 | 25 | the time Carter Bryant signed in '99/2000/2001 time period. |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 41 of 103   Page ID #:317417
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

41

| | | |
|---|---|---|
| 10:00 | 1 | Well, better yet.  Why don't you step down.  Why |
| 10:00 | 2 | don't you take a recess so counsel can -- we can sort |
| 10:00 | 3 | through these. |
| 10:00 | 4 | And, Counsel, you can go through those.  We can |
| 10:00 | 5 | take them up afterward.  So you have a break from -- why |
| 10:00 | 6 | don't we take a ten-minute recess. |
| 10:00 | 7 | *(Recess held at 10:00 a.m.)* |
| 10:18 | 8 | *(Proceedings resumed at 10:18 a.m.)* |
| 10:18 | 9 | *(In the presence of the jury.)* |
| 10:18 | 10 | THE COURT:  We're back in session.  The jury's |
| 10:19 | 11 | present.  All counsel are present.  And the witness is |
| 10:19 | 12 | present.  If you would be seated. |
| 10:19 | 13 | Counsel, this would be cross-examination by |
| 10:19 | 14 | Ms. Hurst on behalf of Mr. Larian and MGA. |
| 10:19 | 15 | **CROSS-EXAMINATION** |
| | 16 | BY MS. HURST: |
| 10:19 | 17 | Q.   Good morning, Ms. Dail. |
| 10:19 | 18 | A.   Good morning. |
| 10:19 | 19 | Q.   I'm going to give you back that binder with a few more |
| 10:19 | 20 | pages in it. |
| 10:19 | 21 | A.   Okay. |
| 10:19 | 22 | Q.   Would you please turn to Exhibit 20572. |
| 10:19 | 23 | *(Documents provided to the witness.)* |
| 10:19 | 24 | BY MS. HURST: |
| 10:19 | 25 | Q.   And you recognize that as the personnel file for |

| 10:19 | 1 | Mr. Tumaliuan? |
| 10:19 | 2 | A.   Yes. |
| 10:19 | 3 | Q.   Please turn to pages 7 and 8 of that document.  You |
| 10:19 | 4 | recognize that as a form of record in use at Mattel called |
| 10:19 | 5 | an "HR Action Notice"? |
| 10:19 | 6 | A.   That's correct. |
| 10:19 | 7 | MS. HURST:  Your Honor, move the admission of |
| 10:20 | 8 | pages 7 and 8. |
| 10:20 | 9 | THE COURT:  Received. |
| 10:20 | 10 | *(Exhibit No. 20572 received in evidence.)* |
| 10:20 | 11 | *(Document displayed.)* |
| 01:59 | 12 | BY MS. HURST: |
| 10:20 | 13 | Q.   Now, page 7 and 8 of Mr. Tumaliuan's file indicate that |
| 10:20 | 14 | his job title was "Summer Intern Undergraduate"; is that |
| 10:20 | 15 | correct? |
| 10:20 | 16 | A.   Yes. |
| 10:20 | 17 | Q.   And that he was a temporary employee? |
| 10:20 | 18 | A.   Correct. |
| 10:20 | 19 | Q.   And that his service dates were from May to August of |
| 10:20 | 20 | 2003; is that correct? |
| 10:20 | 21 | A.   That's correct. |
| 10:20 | 22 | Q.   And then his annual compensation rate for that period |
| 10:20 | 23 | was $24,960, right? |
| 10:20 | 24 | A.   Correct. |
| 10:20 | 25 | Q.   So that would -- you would have to prorate that for the |

| | | |
|---|---|---|
| 10:20 | 1 | period of time he was there to know how much he was actually |
| 10:20 | 2 | compensated during those few months; is that right? |
| 10:20 | 3 | A.   I do believe the comp rate was based on the hours that |
| 10:20 | 4 | he was actually scheduled to work. |
| 10:21 | 5 | Q.   So -- but 24,960, that would be what he would make if |
| 10:21 | 6 | he worked a whole year, right? |
| 10:21 | 7 | A.   Correct. |
| 10:21 | 8 | Q.   So if he only worked for three months, then he would |
| 10:21 | 9 | make 25 percent of that? |
| 10:21 | 10 | A.   Correct. |
| 10:21 | 11 | Q.   Okay. |
| 10:21 | 12 | THE COURT:  For three months, 25 percent, Counsel? |
| 10:21 | 13 | MS. HURST:  3 over 12 is 25 percent. |
| 10:21 | 14 | THE COURT:  25 percent. |
| 10:21 | 15 | MS. HURST:  I did not draw the bad math objection, |
| 10:21 | 16 | Your Honor. |
| 10:22 | 17 | *(Laughter in the courtroom.)* |
| 10:22 | 18 | BY MS. HURST: |
| 10:21 | 19 | Q.   Is there anything in Mr. Tumaliuan's file that |
| 10:21 | 20 | indicates that he failed to perform his duties as an intern |
| 10:21 | 21 | in any way? |
| 10:21 | 22 | A.   May I look through his file? |
| 10:21 | 23 | Q.   Go right ahead. |
| 10:22 | 24 | A.   No. |
| 10:22 | 25 | Q.   Thank you.  Please turn to Exhibit 24134. |

| | | |
|---|---|---|
| 10:22 | 1 | A.    Okay. |
| 10:22 | 2 | Q.    And is that the personnel file of Ana Cabrera? |
| 10:22 | 3 | A.    Yes, it is. |
| 10:23 | 4 | Q.    Please turn to pages 2 through 9 -- pardon me -- |
| 10:23 | 5 | 2 through 11 of that document. |
| 10:23 | 6 | A.    Okay. |
| 10:23 | 7 | Q.    Is that Ms. Cabrera's evaluation for the period of the |
| 10:23 | 8 | year 2005? |
| 10:23 | 9 | A.    Yes, it is. |
| 10:23 | 10 | Q.    And does the summary indicate -- of her performance -- |
| 10:23 | 11 | indicated on page 9 that she was above expectations? |
| 10:23 | 12 | A.    That's correct. |
| 10:24 | 13 | Q.    And the reviewer's comments for Ms. Cabrera were that, |
| 10:24 | 14 | "Ana is extremely talented and goes above and beyond |
| 10:24 | 15 | her skill set for her position.  She's able to make her own |
| 10:24 | 16 | patterns as well as embroidery, beading, and crocheting. |
| 10:24 | 17 | She has worked on many dolls this year without any direction |
| 10:24 | 18 | from a pattern maker, and I feel is capable of working |
| 10:24 | 19 | directly with a designer." |
| 10:24 | 20 | A.    Correct. |
| 10:24 | 21 | Q.    And would you agree with me that those were generally |
| 10:24 | 22 | favorable comments regarding her performance? |
| 10:24 | 23 | A.    Yes. |
| 10:24 | 24 | Q.    Would you please turn to pages 12 through 16 of that |
| 10:24 | 25 | same exhibit, 24134. |

| | | |
|---|---|---|
| 10:24 | 1 | A.   Okay. |
| 10:24 | 2 | Q.   And is that Ms. Cabrera's performance review for the |
| 10:25 | 3 | year 2002? |
| 10:25 | 4 | A.   Yes, it is. |
| 10:25 | 5 | Q.   And it was the overall rating that she was performing |
| 10:25 | 6 | above expectations? |
| 10:25 | 7 | A.   Yes, it is. |
| 10:25 | 8 | Q.   And were the review comments -- reviewer's comments, |
| 10:25 | 9 | would you agree with me, also, that those were favorable for |
| 10:25 | 10 | her performance during the year 2002? |
| 10:25 | 11 | A.   Just one moment to read it.  Yes. |
| 10:25 | 12 | Q.   Her supervisor in 2002 said, "I'm pleased that she's on |
| 10:25 | 13 | my team.  She always takes pride in her work and is very |
| 10:25 | 14 | dependable."  Is that right? |
| 10:25 | 15 | A.   Yes. |
| 10:26 | 16 | Q.   And would you please turn to pages 18 through 23 of |
| 10:26 | 17 | Exhibit 24134. |
| 10:26 | 18 | A.   Okay. |
| 10:26 | 19 | Q.   And is that the performance review for Ms. Cabrera in |
| 10:26 | 20 | 2001? |
| 10:26 | 21 | A.   Yes, it is. |
| 10:26 | 22 | Q.   For her performance during the year 2001, correct? |
| 10:26 | 23 | A.   Correct, correct. |
| 10:26 | 24 | Q.   And again her rating was above expectations; is that |
| 10:26 | 25 | right? |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 46 of 103   Page ID #:317422
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

46

| 10:26 | 1 | A.    That's correct. |
| 10:26 | 2 | Q.    And her reviewer's comments for 2001 were that "Isabel |
| 10:26 | 3 | consistently meets job expectations.  She's a good team |
| 10:26 | 4 | player.  Works well with others.  Handles stress well and is |
| 10:26 | 5 | very flexible.  I am very happy that she is on my team.  She |
| 10:27 | 6 | shows great pride in her work.  I know that I can always |
| 10:27 | 7 | depend on her to get her projects done on time.  She is |
| 10:27 | 8 | artistic.  She has a good eye for color." |
| 10:27 | 9 |      Were those her reviewer's comments for her performance |
| 10:27 | 10 | during the year 2001? |
| 10:27 | 11 | A.    Yes, they were. |
| 10:27 | 12 | Q.    And would you agree with me that that's a positive |
| 10:27 | 13 | review? |
| 10:27 | 14 | A.    Yes. |
| 10:27 | 15 | Q.    And if you look at page 66 of Ms. Cabrera's personnel |
| 10:27 | 16 | file. |
| 10:27 | 17 | A.    I'm sorry.  66? |
| 10:27 | 18 | Q.    Yes, please. |
| 10:27 | 19 | A.    Okay. |
| 10:27 | 20 | Q.    And does that indicate that she got a merit increase in |
| 10:27 | 21 | the year 2000? |
| 10:27 | 22 | A.    Yes, it does. |
| 10:27 | 23 | Q.    And would it be fair to say people don't usually get |
| 10:27 | 24 | merit increases if they're not performing well? |
| 10:28 | 25 | A.    Not necessarily. |

CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

47

| | | |
|---|---|---|
| 10:28 | 1 | Q.   You hand out merit increases for people who aren't |
| 10:28 | 2 | performing well? |
| 10:28 | 3 | A.   It depends on the level of their performance.  It would |
| 10:28 | 4 | indicate the amount of merit. |
| 10:28 | 5 | Q.   Okay.  On page 65, Ms. Cabrera got a merit increase of |
| 10:28 | 6 | 5 percent in 2001; is that right? |
| 10:28 | 7 | A.   That's right. |
| 10:28 | 8 | Q.   And looking at pages 65 and 66, Ms. Cabrera's salary in |
| 10:29 | 9 | 2000 and 2001 ranged from 36,700 to 38,535 on an annual |
| 10:29 | 10 | basis; is that correct? |
| 10:29 | 11 | A.   Correct. |
| 10:29 | 12 | Q.   All right.  Would you turn, please, to 24135. |
| 10:29 | 13 | A.   Okay. |
| 10:29 | 14 | Q.   And is that the personnel file of Beatriz Morales? |
| 10:29 | 15 | A.   Yes, it is. |
| 10:29 | 16 | Q.   Page 32 of that document, please. |
| 10:30 | 17 | A.   Okay. |
| 10:30 | 18 | Q.   And that indicates that Ms. Morales was hired at a |
| 10:30 | 19 | salary of $26,000 per year in 2000; is that right? |
| 10:30 | 20 | A.   Correct. |
| 10:30 | 21 | Q.   Would you turn, please, to page -- pages -- pardon |
| 10:30 | 22 | me -- 8 through 14. |
| 10:31 | 23 | A.   Okay. |
| 10:31 | 24 | Q.   Is that Ms. Morales' review for the calendar year 2001? |
| 10:31 | 25 | A.   Yes, it is. |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 48 of 103   Page ID #:317424
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

48

| | | |
|---|---|---|
| 10:31 | 1 | Q.   And does it indicate that she met expectations for that |
| 10:31 | 2 | period of time? |
| 10:31 | 3 | A.   Yes. |
| 10:31 | 4 | Q.   And her reviewer's comments were that, |
| 10:31 | 5 |      "Beatriz has performed very well this year.  Her |
| 10:31 | 6 | sample-making skills have improved significantly.  She is |
| 10:31 | 7 | willing to learn various kinds of skills" -- I think that's |
| 10:31 | 8 | a typo probably -- "to support preliminary design needs. |
| 10:31 | 9 | Beatriz did a lot of excellent handwork this year.  She |
| 10:31 | 10 | worked on a variety of detailed handwork, including |
| 10:31 | 11 | embroidery and beading, showing great talent in this area, |
| 10:32 | 12 | which helps to cut down on time and cost by not having to |
| 10:32 | 13 | send it out to a vendor." |
| 10:32 | 14 |      Were those her reviewers' comments for 2001? |
| 10:32 | 15 | A.   Yes. |
| 10:32 | 16 | Q.   And are pages 2 through 6 of Exhibit 24135 -- is that |
| 10:32 | 17 | Ms. Morales' review for the calendar year 2002? |
| 10:32 | 18 | A.   Yes, it is. |
| 10:32 | 19 | Q.   And in that year she was found also to have met |
| 10:32 | 20 | expectations; is that correct? |
| 10:32 | 21 | A.   That's correct. |
| 10:32 | 22 | Q.   And her reviewer's comments indicated, "Beatriz is |
| 10:32 | 23 | always eager to develop better sewing skills, and she is a |
| 10:32 | 24 | hard worker.  She continues to improve her sewing techniques |
| 10:32 | 25 | and is a flexible worker.  She is friendly, has a good |

| | | |
|---|---|---|
| 10:32 | 1 | attitude, and works well with others." |
| 10:32 | 2 | Were those her comments? |
| 10:33 | 3 | A.  Yes, they were. |
| 10:33 | 4 | Q.  Please turn to Exhibit 35193.  And is that the |
| 10:33 | 5 | personnel file of Maria Salazar? |
| 10:33 | 6 | A.  Yes, it is. |
| 10:33 | 7 | Q.  And on page 23 through 30, is that the separation |
| 10:34 | 8 | agreement with Ms. Salazar? |
| 10:34 | 9 | A.  Yes, it is. |
| 10:34 | 10 | Q.  And does that indicate that she left Mattel's employ in |
| 10:34 | 11 | or about March of 2001? |
| 10:34 | 12 | A.  One moment while I read through it. |
| 10:34 | 13 | Q.  Thank you. |
| 10:34 | 14 | A.  Yes.  March 2001. |
| 10:34 | 15 | Q.  And just staying with that file for a moment, you |
| 10:35 | 16 | referred earlier to pages 35 and 36 of Ms. Salazar's file. |
| 10:35 | 17 | Do you see those? |
| 10:35 | 18 | A.  Yes. |
| 10:35 | 19 | Q.  And that is a document entitled "Conflict-of-Interest |
| 10:35 | 20 | Questionnaire," correct? |
| 10:35 | 21 | A.  Correct. |
| 10:35 | 22 | Q.  And in the last paragraph of that document, it |
| 10:35 | 23 | indicates that, "The failure to answer fully and truthfully |
| 10:35 | 24 | constitutes grounds for immediate termination of |
| 10:35 | 25 | employment."  Is that correct? |

Case 2:04-cv-09049-DOC-RNB  Document 10446  Filed 04/12/11  Page 50 of 103  Page ID #:317426
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

50

| | | |
|---|---|---|
| 10:35 | 1 | A.   Yes. |
| 10:36 | 2 | Q.   One moment. |
| 10:36 | 3 | MS. HURST:  No further questions. |
| 10:36 | 4 | THE COURT:  Redirect, Mr. Quinn, on behalf of |
| 10:36 | 5 | Mattel. |
| 10:36 | 6 | MR. QUINN:  I think not, Your Honor. |
| 10:36 | 7 | THE COURT:  Okay.  Counsel, may the witness be |
| 10:36 | 8 | excused, Mr. Quinn and Ms. Hurst? |
| 10:36 | 9 | MR. QUINN:  Yes, Your Honor. |
| 10:36 | 10 | MS. HURST:  Yes, Your Honor. |
| 10:36 | 11 | THE COURT:  Thank you very much for coming in. |
| 10:36 | 12 | You're excused from these proceedings. |
| 10:36 | 13 | *(Witness excused.)* |
| 10:36 | 14 | THE COURT:  Counsel, is there another witness, or |
| 10:36 | 15 | will we take the next witness at the recess? |
| 10:36 | 16 | MR. QUINN:  At the recess. |
| 10:36 | 17 | THE COURT:  Now, ladies and gentlemen, I warned |
| 10:36 | 18 | you that I would have you up and down a couple times today. |
| 10:36 | 19 | Let me talk to you for a moment on the record. |
| 10:36 | 20 | First of all, I want to compliment all counsel. |
| 10:37 | 21 | You'll see two lead counsel aren't here today, and I've |
| 10:37 | 22 | already given them permission not to be here.  They're |
| 10:37 | 23 | preparing their final arguments for tomorrow, so there's no |
| 10:37 | 24 | disrespect intended. |
| 10:37 | 25 | Second, counsel are working extraordinarily hard. |

CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

51

| 10:37 | 1 | I promise you that.  My compliments to counsel for both |
| 10:37 | 2 | parties.  Their intent is to have this matter argued to you |
| 10:37 | 3 | tomorrow, and my intent is to instruct you on the law today. |
| 10:37 | 4 | We have one more witness scheduled for about |
| 10:37 | 5 | 1:00 o'clock to 1:15, sometime in that time period, and then |
| 10:37 | 6 | possibly a few short witnesses after that.  But I hope to be |
| 10:37 | 7 | instructing you by 3:00 o'clock and then send you home. |
| 10:37 | 8 | Now, it only takes about seven hours for me to |
| 10:37 | 9 | read the instructions. |
| 10:37 | 10 | *(Laughter in the courtroom.)* |
| 10:37 | 11 | THE COURT:  They're lengthy.  And the first time |
| 10:37 | 12 | you hear them, they may be a little overpowering to you. |
| 10:37 | 13 | But you'll have my only copy of the instructions |
| 10:37 | 14 | in the jury room; and when you're done with the |
| 10:38 | 15 | deliberations, you'll return them to me.  And I'll talk to |
| 10:38 | 16 | the alternates about what we expect, because I know you're |
| 10:38 | 17 | wondering if you're coming to the courthouse every day or |
| 10:38 | 18 | not.  We still haven't sorted that out. |
| 10:38 | 19 | Both counsel are very, very concerned that if you |
| 10:38 | 20 | go back to your workplace or your home, that people are, |
| 10:38 | 21 | obviously, going to ask you about this case. |
| 10:38 | 22 | Also, let me forewarn you that we will have quite |
| 10:38 | 23 | a few people attending tomorrow who are just interested in |
| 10:38 | 24 | the case. |
| 10:38 | 25 | I'm going to admonish you in the strongest terms |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 52 of 103   Page ID #:317428
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

52

| | | |
|---|---|---|
| 10:38 | 1 | not to start reading any press articles, et cetera.  You're |
| 10:38 | 2 | the only eight people at the present time, and alternates, |
| 10:38 | 3 | who have ever heard the entire case.  So if some press |
| 10:38 | 4 | member dropped in and wrote on a particular witness that |
| 10:38 | 5 | they thought was favorable or unfavorable in the middle of |
| 10:38 | 6 | direct or cross-examination, they really are reporting |
| 10:38 | 7 | accurately, but it's such a narrow perspective.  So please |
| 10:38 | 8 | don't rely upon the press, and please set any articles down. |
| 10:39 | 9 | Now, I'm going to send you on your way till -- |
| 10:39 | 10 | let's just say 1:00 o'clock to be safe. |
| 10:39 | 11 | Be patient with us because the evidence is |
| 10:39 | 12 | concluding today.  Okay? |
| 10:39 | 13 | You're admonished not to discuss this matter |
| 10:39 | 14 | amongst yourselves, nor form or express any opinion |
| 10:39 | 15 | concerning the case.  And you go have a nice recess.  All |
| 10:39 | 16 | right?  Thank you. |
| 10:39 | 17 | Counsel, if you would remain in session for just a |
| 10:39 | 18 | moment. |
| 10:39 | 19 | *(Jury recesses at 10:39 a.m.)* |
| 10:39 | 20 | *(Outside the presence of the jury.)* |
| 10:39 | 21 | THE COURT:  All right.  If you would be seated, |
| 10:39 | 22 | Counsel.  Thank you for your courtesy. |
| 10:39 | 23 | I'm assuming Carter Bryant, Mr. Quinn, is the last |
| 10:39 | 24 | witness? |
| 10:39 | 25 | MR. QUINN:  Yes, Your Honor. |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 53 of 103   Page ID #:317429
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

53

| | | |
|---|---|---|
| 10:39 | 1 | THE COURT:  Our last information is he was on a |
| 10:39 | 2 | plane at 10:10, but that's Missouri time, so 8:10 our time |
| 10:39 | 3 | we expect arrival at 10:10.  LAX or Orange County? |
| 10:40 | 4 | MR. ZELLER:  Orange County.  And he has arrived. |
| 10:40 | 5 | THE COURT:  He has arrived. |
| 10:40 | 6 | MR. ZELLER:  That's the word I've received. |
| 10:40 | 7 | THE COURT:  That gives him time to get to Court |
| 10:40 | 8 | and to be accommodated. |
| 10:40 | 9 | MS. HURST:  And we may be calling that one more |
| 10:40 | 10 | witness as well. |
| 10:40 | 11 | THE COURT:  Okay.  Now, what or who is the |
| 10:40 | 12 | surrebuttal witness you may be calling? |
| 10:40 | 13 | MS. HURST:  Mr. Astor. |
| 10:40 | 14 | THE COURT:  Mr. Astor.  And he would be the |
| 10:40 | 15 | gentleman you discussed last evening -- |
| 10:40 | 16 | MS. HURST:  Yes. |
| 10:40 | 17 | THE COURT:  -- with the Court.  Okay.  Then |
| 10:40 | 18 | counsel's on notice. |
| 10:40 | 19 | Now, could I have the written questions? |
| 10:40 | 20 | They can be handwritten, but I would like to see |
| 10:40 | 21 | what Mr. Astor's going to be asked. |
| 10:40 | 22 | MS. HURST:  Okay.  Can I bring those back at |
| 10:40 | 23 | lunch? |
| 10:40 | 24 | THE COURT:  You can bring those back. |
| 10:40 | 25 | Now, how are we going to resolve the few remaining |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 54 of 103   Page ID #:317430
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

54

| | | |
|---|---|---|
| 10:40 | 1 | jury instructions?  Let me ask once again, Mr. Quinn and |
| 10:40 | 2 | Mr. Zeller. |
| 10:40 | 3 | On the intentional interference claim concerning |
| 10:40 | 4 | Salazar, she was, I believe, not in Mattel's employment as |
| 10:41 | 5 | of March 2001? |
| 10:41 | 6 | MR. ZELLER:  That is correct. |
| 10:41 | 7 | THE COURT:  Okay.  Now, just a moment. |
| 10:41 | 8 | If your theory is on the intentional interference |
| 10:41 | 9 | claim -- and you know I'm concerned about it, but it will |
| 10:41 | 10 | probably go to the jury -- what is the theory -- first of |
| 10:41 | 11 | all, trademark -- I'm sorry -- trade secret.  *(Indicates.)* |
| 10:41 | 12 | Copyright.  *(Indicates.)* |
| 10:41 | 13 | Intentional interference.  *(Indicates.)* |
| 10:41 | 14 | What is the theory that you have for, you know, |
| 10:41 | 15 | expansive damages wherein I'm going to let you argue for a |
| 10:41 | 16 | billion dollars on the trade secret misappropriation, or |
| 10:41 | 17 | whatever you think this amount is, and argue your damages |
| 10:41 | 18 | claims on copyright with no indication of preemption by the |
| 10:41 | 19 | Court? |
| 10:42 | 20 | How do you argue expansively concerning Salazar? |
| 10:42 | 21 | Is it because she created the first generation dolls that |
| 10:42 | 22 | damages flow literally forever into the billion-dollar range |
| 10:42 | 23 | when, in fact, the eyes, face, painting -- these dolls |
| 10:42 | 24 | consistently and constantly change, which is why I'm so |
| 10:42 | 25 | concerned about this claim.  And frankly, I think it's |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 55 of 103   Page ID #:317431
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

55

10:42  1   equally harmful to Mattel because of the mitigation

10:42  2   instruction I have to give with intentional interference and

10:42  3   the introduction of that.

10:42  4            So let's just go one by one.

10:42  5            Maria Salazar for a moment.  Are you sure Mattel's

10:42  6   going to proceed on that claim with that person?  Take a

10:42  7   moment and think about this.

10:42  8            MR. ZELLER:  We are.  We have discussed it.

10:42  9            THE COURT:  Then how do you get to your expansive

10:42  10  damages?  In other words, I can understand an argument that

10:43  11  says, look, it's worth -- the first generation dolls, they

10:43  12  produced X amount with this face paint, with this exact

10:43  13  combination, and it's worth, you know, $5 million or

10:43  14  $10 million or, from MGA's perspective, $50,000.

10:43  15           So focus on Maria Salazar, and then I'm going to

10:43  16  turn to Morales for just a moment.

10:43  17           MR. ZELLER:  Well, I think, of course, it's

10:43  18  important that at this stage we're focused on that this is a

10:43  19  determination the jury gets to make as to whether or not

10:43  20  it's -- whether it's tiny, whether it's medium, or something

10:43  21  else.

10:43  22           THE COURT:  Just a moment.  The jury's going to

10:43  23  make that determination.  I've already indicated they're

10:43  24  going to the jury.

10:43  25           I anticipate an objection.  "Objection, Judge."

| 10:43 | 1 | And Mr. Price will be arguing, who isn't here, and so I want |
| 10:43 | 2 | to hear how -- or is this just going to be an avalanche? |
| 10:43 | 3 | You know, all of these are lumped together; the |
| 10:43 | 4 | three seamstresses, and, "Judge, they created dolls for all |
| 10:44 | 5 | time with the same," you know, face paint, eyes -- which we |
| 10:44 | 6 | know is not the case. |
| 10:44 | 7 | So I'm going to come back and ask you once again |
| 10:44 | 8 | with Maria Salazar, and I want you to answer my question |
| 10:44 | 9 | now. |
| 10:44 | 10 | MR. ZELLER:  Sure.  I just wanted to make sure |
| 10:44 | 11 | that we were talking about what's -- a JMOL here. |
| 10:44 | 12 | THE COURT:  Just a moment, Counsel.  The jury's |
| 10:44 | 13 | going to decide this issue probably.  So I'm worried about |
| 10:44 | 14 | damages. |
| 10:44 | 15 | MR. ZELLER:  Maria Salazar was one of the two who |
| 10:44 | 16 | worked on the first generation. |
| 10:44 | 17 | THE COURT:  I know. |
| 10:44 | 18 | MR. ZELLER:  And the evidence is, is that that |
| 10:44 | 19 | first generation was critical.  It was the lynchpin.  It |
| 10:44 | 20 | was, your know, the "launch product," I think is the term |
| 10:44 | 21 | that's used. |
| 10:44 | 22 | We've also heard testimony about -- um, that the |
| 10:44 | 23 | fashions that were prepared, including prepared to show at |
| 10:44 | 24 | these toy fairs -- |
| 10:44 | 25 | THE COURT:  Did she prepare any of the fashions? |

| | | |
|---|---|---|
| 10:44 | 1 | MR. ZELLER:  She did. |
| 10:44 | 2 | THE COURT:  For the first generation dolls? |
| 10:44 | 3 | MR. ZELLER:  Correct. |
| 10:44 | 4 | THE COURT:  How many? |
| 10:44 | 5 | MR. ZELLER:  Well, I don't know that we know the |
| 10:44 | 6 | details since MGA has never disclosed it. |
| 10:45 | 7 | THE COURT:  Okay. |
| 10:45 | 8 | MR. ZELLER:  But we know that two of them, one of |
| 10:45 | 9 | which was Ms. Salazar, worked on that first generation. |
| 10:45 | 10 | And, in fact, she's never distinguished between them.  I |
| 10:45 | 11 | mean, there's actually an MGA employment file -- |
| 10:45 | 12 | THE COURT:  Was she a contract employee?  It |
| 10:45 | 13 | sounds like she was actually employed by Mattel. |
| 10:45 | 14 | MR. ZELLER:  She was at that time. |
| 10:45 | 15 | THE COURT:  When she left the employment in 2001, |
| 10:45 | 16 | continued to work on a contract basis? |
| 10:45 | 17 | MR. ZELLER:  Not for Mattel. |
| 10:45 | 18 | Not for Mattel. |
| 10:45 | 19 | THE COURT:  Who did she work for? |
| 10:45 | 20 | MR. ZELLER:  There was a gap period, if I |
| 10:45 | 21 | understand it, and then she went to MGA.  I don't know how |
| 10:45 | 22 | quickly she went to MGA, but I believe that -- um, that |
| 10:45 | 23 | she -- there was no overlap in terms of actual employment, |
| 10:45 | 24 | per se, between the two companies.  But ultimately, she went |
| 10:45 | 25 | to MGA. |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 58 of 103   Page ID #:317434
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

58

| | | |
|---|---|---|
| 10:45 | 1 | THE COURT:  Now, I want both of you to turn to |
| 10:45 | 2 | Ryan Tumaliuan for a moment.  I've gotten different pieces |
| 10:45 | 3 | of information about Mr. Tumaliuan in our informal |
| 10:46 | 4 | conversations on Saturdays and Sundays, and I want to set |
| 10:46 | 5 | this record so the Circuit knows what I'm struggling with if |
| 10:46 | 6 | I let this go to the jury. |
| 10:46 | 7 | Tumaliuan was an intern or extern, however he's |
| 10:46 | 8 | labeled.  And it's my understanding that Tumaliuan worked -- |
| 10:46 | 9 | just a moment.  Make me do the work.  He worked from May to |
| 10:46 | 10 | August, 25 percent, but about $8,000 worth of time in 2003. |
| 10:46 | 11 | This was his employment at Mattel. |
| 10:47 | 12 | Isn't he the intern that subsequently went to MGA? |
| 10:47 | 13 | MS. HURST:  He actually worked at MGA before he |
| 10:47 | 14 | worked at Mattel. |
| 10:47 | 15 | THE COURT:  He worked at MGA before he worked at |
| 10:47 | 16 | Mattel, and Mr. Price did the examination in that area, |
| 10:47 | 17 | didn't he, Mr. Quinn? |
| 10:47 | 18 | MR. QUINN:  Yes. |
| 10:47 | 19 | THE COURT:  Now, my memory is those are the |
| 10:47 | 20 | e-mails that I've allowed to come to the jury that show the |
| 10:47 | 21 | linkage between MGA as if he's a -- a plant, in a sense, |
| 10:47 | 22 | over at Mattel; is that correct? |
| 10:47 | 23 | MR. ZELLER:  That is correct. |
| 10:47 | 24 | THE COURT:  Okay.  How long -- we don't have any |
| 10:47 | 25 | evidence in the record.  We have e-mails, don't we?  How |

| | | |
|---|---|---|
| 10:47 | 1 | long did he work at MGA? |
| 10:47 | 2 | MR. ZELLER:  Well, in fact, MGA's employment |
| 10:47 | 3 | file -- which is not in the record -- but it shows, in fact, |
| 10:47 | 4 | he was an employee of MGA through August of 2003. |
| 10:47 | 5 | THE COURT:  So just before he goes to Mattel. |
| 10:47 | 6 | MR. ZELLER:  In fact, a complete overlap.  In |
| 10:47 | 7 | fact, MGA's employment file shows that in fact MGA |
| 10:48 | 8 | terminated him about two weeks after his Mattel stint. |
| 10:48 | 9 | THE COURT:  Two weeks after August 2003? |
| 10:48 | 10 | MR. ZELLER:  Correct. |
| 10:48 | 11 | THE COURT:  So was he being double paid?  In other |
| 10:48 | 12 | words, was he receiving compensation from MGA at the same |
| 10:48 | 13 | time he was at Mattel? |
| 10:48 | 14 | MR. ZELLER:  That, we don't know. |
| 10:48 | 15 | MS. HURST:  No.  And that evidence is not even in |
| 10:48 | 16 | the record. |
| 10:48 | 17 | THE COURT:  I understand. |
| 10:48 | 18 | MS. HURST:  And the truth is that that is just a |
| 10:48 | 19 | form in the file indicating that he was terminated, but he |
| 10:48 | 20 | wasn't working there at MGA during the summer.  He was a |
| 10:48 | 21 | school-year intern.  He ended in June before he went to |
| 10:48 | 22 | Mattel. |
| 10:48 | 23 | THE COURT:  Well, the Mattel records show he came |
| 10:48 | 24 | over in May; is that correct?  May? |
| 10:48 | 25 | MR. QUINN:  I believe that's -- |

| | | |
|---|---|---|
| 10:48 | 1 | MR. ZELLER:  Yes, May to Mattel.  And he had |
| 10:48 | 2 | started at MGA originally in the summer of '02. |
| 10:48 | 3 | THE COURT:  Okay.  Let me turn then to, um -- |
| 10:48 | 4 | MR. ZELLER:  Could I just add one thing about this |
| 10:48 | 5 | individual?  We -- we are -- we'll abandon an intentional |
| 10:49 | 6 | interference claim based on him.  We do still think we |
| 10:49 | 7 | should be allowed to argue the conduct to the jury in terms |
| 10:49 | 8 | of willfulness, intent, knowledge, notice, and the like, but |
| 10:49 | 9 | we're willing to have him taken out of the instructions and |
| 10:49 | 10 | the verdict form. |
| 10:49 | 11 | THE COURT:  Well, that's what I'm going to discuss |
| 10:49 | 12 | with you.  That's why this conversation is leading |
| 10:49 | 13 | someplace.  Just bear with me. |
| 10:49 | 14 | It's going to be very difficult for the Court |
| 10:49 | 15 | concerning Machado, who you'd like to argue; the Kohl's that |
| 10:49 | 16 | you would like to argue, now separating out what is |
| 10:49 | 17 | appropriate before the jury and what isn't before the jury. |
| 10:49 | 18 | And each of you are going to feel somewhat disadvantaged, |
| 10:49 | 19 | and it's going to be very, very difficult to say to the |
| 10:49 | 20 | jury, "Well, strike certain parts of Machado's testimony |
| 10:49 | 21 | because these are no longer claims," and choice of law |
| 10:50 | 22 | prevails, which I won't tell the jury, "But you can only |
| 10:50 | 23 | consider parts of Machado's testimony and not others."  And |
| 10:50 | 24 | MGA's gonna object to that. |
| 10:50 | 25 | It's going to be very difficult in Kohl's, because |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 61 of 103   Page ID #:317437
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

61

| | | |
|---|---|---|
| 10:50 | 1 | you're going to want to strike Kohl's, and then MGA's going |
| 10:50 | 2 | to say they've been disenfranchised, because it shows |
| 10:50 | 3 | motivation, credibility, and, "Judge, how can you sort that |
| 10:50 | 4 | out?" |
| 10:50 | 5 | So we'll cover that in just a moment. |
| 10:50 | 6 | I want to go to Ana Cabrera.  You've told me |
| 10:50 | 7 | informally about Ana Cabrera.  What does the personnel file |
| 10:50 | 8 | show?  When did she end her employment? |
| 10:50 | 9 | Because there was a claim by MGA that one of these |
| 10:50 | 10 | people was not even employed when the first generation of |
| 10:50 | 11 | dolls was set forth in 2001.  And I want to just make |
| 10:50 | 12 | certain that my records are complete. |
| 10:50 | 13 | MS. HURST:  That was Salazar, Your Honor. |
| 10:50 | 14 | THE COURT:  Salazar. |
| 10:50 | 15 | MS. HURST:  She left in March 2001. |
| 10:50 | 16 | MR. ZELLER:  I didn't think there was a dispute |
| 10:51 | 17 | that she was employed by Mattel during 2001. |
| 10:51 | 18 | THE COURT:  Okay.  So Salazar's employed in 2001. |
| 10:51 | 19 | MS. HURST:  Your Honor, on the issue of what they |
| 10:51 | 20 | worked on -- |
| 10:51 | 21 | THE COURT:  No.  Just a moment.  I'll be right |
| 10:51 | 22 | with you. |
| 10:51 | 23 | I don't want the avalanche again from either one |
| 10:51 | 24 | of you.  Just answer my questions. |
| 10:51 | 25 | Salazar left in 2001, in March; is that correct? |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 62 of 103   Page ID #:317438
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

62

| 10:51 | 1 | MS. HURST:  Yes. |
|-------|---|------------------|

10:51   1       MS. HURST:  Yes.

10:51   2       MR. ZELLER:  Yes.

10:51   3       THE COURT:  Now, the jury doesn't know all this

10:51   4  yet.

10:51   5       MS. HURST:  Well, they know that.

10:51   6       THE COURT:  Well, Cabrera, once again, leaves on

10:51   7  what date?

10:51   8       MS. HURST:  She was fired in 2008 with

10:51   9  Mr. de Anda.

10:51  10       THE COURT:  And Morales?

10:51  11       MS. HURST:  Same.

10:51  12       THE COURT:  Now, was there a subsequent 2004

10:51  13  confidentiality and inventions agreement -- when the

10:51  14  inventions agreement was changed back and included the word

10:51  15  "ideas," was there a whole new re-signing at Mattel in that

10:52  16  period of time?

10:52  17       MR. ZELLER:  Yes.

10:52  18       MR. McCONVILLE:  And, Judge, I know you've taken

10:52  19  notes.  Morales did not work on the first generation dolls.

10:52  20  She started working on the -- for the Marlows in October of

10:52  21  2001.

10:52  22       THE COURT:  Okay.  Now, there's the person I've

10:52  23  been hunting for laboriously.

10:52  24       How is Morales involved?  Because the Circuit's

10:52  25  going to look very closely at an intentional interference

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 63 of 103   Page ID #:317439
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

63

| | | |
|---|---|---|
| 10:52 | 1 | claim going to the jury.  They're going to readily accept, I |
| 10:52 | 2 | think, trade secret misappropriation.  I think they're going |
| 10:52 | 3 | to readily accept copyright.  There will be preemption |
| 10:52 | 4 | arguments in the Circuit.  They're going to have to sort a |
| 10:52 | 5 | lot of this out. |
| 10:52 | 6 | How is Morales argued, Mr. Quinn, as being |
| 10:52 | 7 | involved in the first-generation dolls if she isn't working? |
| 10:53 | 8 | Or is she employed as a private contractor by Mattel in that |
| 10:53 | 9 | period of time?  I don't understand Morales.  That's the |
| 10:53 | 10 | name I've been hunting for. |
| 10:53 | 11 | MR. ZELLER:  She was -- it's correct that |
| 10:53 | 12 | Ms. Morales did not work on the first generation as far as |
| 10:53 | 13 | we know.  Cabrera and Salazar did while they were both |
| 10:53 | 14 | Mattel employees. |
| 10:53 | 15 | THE COURT:  Let's stay with Morales for a moment. |
| 10:53 | 16 | What I expect to hear is argument by both sides |
| 10:53 | 17 | lumped together. |
| 10:53 | 18 | MR. ZELLER:  I'm trying to put time periods on it. |
| 10:53 | 19 | Morales began working on Bratz while a Mattel |
| 10:53 | 20 | employee in 2001. |
| 10:53 | 21 | THE COURT:  Okay.  So she was hired by Mattel in |
| 10:53 | 22 | 2001? |
| 10:53 | 23 | MR. ZELLER:  No.  She had been a Mattel employee |
| 10:53 | 24 | for several years at that point.  But then she started |
| 10:53 | 25 | working on Bratz while a Mattel employee in 2001. |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 64 of 103   Page ID #:317440
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

64

| | | |
|---|---|---|
| 10:53 | 1 | THE COURT:  Morales? |
| 10:53 | 2 | MR. ZELLER:  Correct. |
| 10:53 | 3 | THE COURT:  Now, just a moment. |
| 10:53 | 4 | I'm going to go off that again. |
| 10:53 | 5 | She was hired by Mattel and let's say worked in |
| 10:54 | 6 | 1999 or some period of time.  Did she then leave Mattel's |
| 10:54 | 7 | employment? |
| 10:54 | 8 | MR. ZELLER:  No.  She was continuously employed by |
| 10:54 | 9 | Mattel -- and I may get the year wrong, but we'll call it |
| 10:54 | 10 | '95, '99.  It was prior to 2001, and then worked for Mattel |
| 10:54 | 11 | continuously through 2008. |
| 10:54 | 12 | THE COURT:  Okay. |
| 10:54 | 13 | MR. ZELLER:  During that time period. |
| 10:54 | 14 | THE COURT:  I'm sorry for both of you.  This is |
| 10:54 | 15 | very confusing, and I'm going to stay with this, if I have |
| 10:54 | 16 | to, for five hours. |
| 10:54 | 17 | MGA has consistently said Morales was not at |
| 10:54 | 18 | Mattel for some period of time and was not working on the |
| 10:54 | 19 | first-generation dolls.  I just want to know that period of |
| 10:54 | 20 | time that she's not employed by Mattel. |
| 10:54 | 21 | MR. ZELLER:  There was no such time. |
| 10:54 | 22 | THE COURT:  Okay.  Mr. McConville? |
| 10:54 | 23 | MR. McCONVILLE:  She was not employed by the |
| 10:54 | 24 | Marlows, so -- she was never employed by MGA.  She was |
| 10:55 | 25 | employed by Mattel. |

| | | |
|---|---|---|
| 10:55 | 1 | THE COURT:  But -- |
| 10:55 | 2 | MR. McCONVILLE:  And didn't start working on the |
| 10:55 | 3 | patterns until 2001. |
| 10:55 | 4 | THE COURT:  Okay.  So she was employed by Mattel. |
| 10:55 | 5 | MR. McCONVILLE:  Correct. |
| 10:55 | 6 | THE COURT:  Continuously? |
| 10:55 | 7 | MR. McCONVILLE:  Um. |
| 10:55 | 8 | MR. ZELLER:  No.  She left in 2006 and became a |
| 10:55 | 9 | contractor at that point. |
| 10:55 | 10 | THE COURT:  Okay.  Let's go back to 2000, 2001, |
| 10:55 | 11 | the germane period of time. |
| 10:55 | 12 | Was she employed by Mattel? |
| 10:55 | 13 | MR. McCONVILLE:  Yes. |
| 10:55 | 14 | MS. HURST:  Yes. |
| 10:55 | 15 | THE COURT:  Okay.  And then she was also working |
| 10:55 | 16 | for the Marlows in that period of time -- strike that -- |
| 10:55 | 17 | starting in October 2001? |
| 10:55 | 18 | MR. McCONVILLE:  Yes. |
| 10:55 | 19 | MS. HURST:  Right. |
| 10:55 | 20 | THE COURT:  So she would have been available as a |
| 10:55 | 21 | Mattel employee throughout the period of time, but she |
| 10:55 | 22 | didn't start working on the Bratz, whatever that Bratz was, |
| 10:56 | 23 | in October 2001.  Did she work on the first-generation |
| 10:56 | 24 | dolls? |
| 10:56 | 25 | MS. HURST:  No. |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 66 of 103   Page ID
#:317442
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

66

| 10:56 | 1 | MR. McCONVILLE:  No. |
| 10:56 | 2 | THE COURT:  Did she work on Ooh-La-La? |
| 10:56 | 3 | MS. HURST:  They haven't put the evidence in to |
| 10:56 | 4 | establish that she did. |
| 10:56 | 5 | THE COURT:  Okay.  So that's not in front of the |
| 10:56 | 6 | jury. |
| 10:56 | 7 | MR. ZELLER:  The evidence from Mr. Marlow is, is |
| 10:56 | 8 | that between them, they worked on every Bratz doll -- |
| 10:56 | 9 | THE COURT:  Okay. |
| 10:56 | 10 | MR. ZELLER:  -- during the time period from the |
| 10:56 | 11 | launch, starting in 2000, up until the time when the Marlows |
| 10:56 | 12 | and MGA stopped using them, which was in mid-2005. |
| 10:56 | 13 | THE COURT:  Okay.  Now -- |
| 10:56 | 14 | MS. HURST:  I'm sorry, Your Honor, but that is |
| 10:56 | 15 | just not correct. |
| 10:56 | 16 | Mr. Marlow has no idea what all the Bratz dolls |
| 10:56 | 17 | were.  He doesn't have foundation to testify to that. |
| 10:56 | 18 | THE COURT:  All right.  Thank you. |
| 10:56 | 19 | We'll stop the disagreement.  It's not important |
| 10:56 | 20 | to me now.  Now I have an understanding. |
| 10:56 | 21 | I need an indirect profits instruction on |
| 10:56 | 22 | copyright restricted to the sculpts.  Can I get that? |
| 10:57 | 23 | And then let me give you a break for a few |
| 10:57 | 24 | moments.  And Mr. Larian and Mr. Eckert, there's no reason |
| 10:57 | 25 | to remain.  We won't be back in session until 1:00 o'clock. |

| | | |
|---|---|---|
| 10:57 | 1 | So if you two gentlemen want to go do something productive, |
| 10:57 | 2 | please be my guest. |
| 10:57 | 3 | And, Counsel, we'll remain in session. |
| 10:57 | 4 | *(Mr. Eckert and Mr. Larian exit the proceedings.)* |
| 10:57 | 5 | THE COURT:  Now, let's set forth some of the |
| 10:57 | 6 | things we need to get accomplished before the reading of the |
| 10:57 | 7 | instructions. |
| 10:57 | 8 | Okay.  What's left on the table?  Appendix A and |
| 10:57 | 9 | B.  And I'll come out in just a moment.  I've got a series |
| 10:57 | 10 | of rulings to make, and then I'll be right with you. |
| 11:13 | 11 | *(Recess held at 10:58 a.m.)* |
| 11:13 | 12 | *(Proceedings resumed at 11:14 a.m.)* |
| 11:14 | 13 | *(Out of the presence of the jury.)* |
| 11:14 | 14 | THE COURT:  All right.  We're back on record.  All |
| 11:14 | 15 | counsel are present. |
| 11:14 | 16 | First, these are tentative thoughts, not rulings |
| 11:14 | 17 | yet. |
| 11:14 | 18 | But I don't think MGA's appendix is appropriate in |
| 11:14 | 19 | this regard:  I cannot reference any -- I don't think you |
| 11:14 | 20 | can reference by trial exhibit number Sal Villasenor's |
| 11:14 | 21 | documents.  And Mr. Zeller raised that with the Court last |
| 11:14 | 22 | evening. |
| 11:14 | 23 | That would be like Mattel identifying as its trade |
| 11:14 | 24 | secrets every single Bratz doll that was ever sold, simply |
| 11:14 | 25 | because those products contain the information that Mattel |

| | | |
|---|---|---|
| 11:14 | 1 | claims to own. |
| 11:14 | 2 | So I'm tentatively, subject to your argument, |
| 11:14 | 3 | going to order you to immediately revise your trade secret |
| 11:14 | 4 | claims chart. |
| 11:14 | 5 | Now, I want to hear from MGA, but in just a |
| 11:14 | 6 | moment. |
| 11:15 | 7 | Second, tentatively I don't feel it's appropriate |
| 11:15 | 8 | to instruct on fraudulent concealment for a few reasons. |
| 11:15 | 9 | And then I'm going to hear from Mattel. |
| 11:15 | 10 | First, under California law, it is an equitable |
| 11:15 | 11 | doctrine, and there is no corresponding right to a jury |
| 11:15 | 12 | trial. |
| 11:15 | 13 | Since I'm granting Mattel's request and not |
| 11:15 | 14 | sending MGA's equitable claims and defenses, principally |
| 11:15 | 15 | unclean hands, to the jury, it's simply unfair and |
| 11:15 | 16 | prejudicial to be sending the notion of, quote, "fraudulent |
| 11:15 | 17 | concealment" to the jury. |
| 11:15 | 18 | Second, tentatively, I think there's a failure of |
| 11:15 | 19 | proof on this issue. I think on behalf of Mattel, you've |
| 11:15 | 20 | noted that the Phase I jury found that MGA had fraudulently |
| 11:15 | 21 | concealed the basis for the intentional interference with |
| 11:15 | 22 | contractual relations claim, but there was a serious |
| 11:15 | 23 | omission in the instruction. |
| 11:15 | 24 | This is not meant as a criticism of a wonderful |
| 11:15 | 25 | colleague. But "a critical element of fraudulent |

11:16   1    concealment is inducement or actual reliance on the alleged

11:16   2    fraud." And the Court cites *Lantz v. Centex Homes*, 31

11:16   3    Cal.4th 363, 383 through 384.

11:16   4            So you have a number of your young associates and

11:16   5    counsel here. Get busy on this. Okay? It's a 2003 case.

11:16   6            The phase -- in that phase, the jury was never

11:16   7    instructed on this element, but was instructed to find

11:16   8    fraudulent concealment if MGA concealed facts that would

11:16   9    have helped Mattel file its claims sooner. And I'm going to

11:16  10    refer you back to Phase I-B at Jury Instruction No. 35 at

11:16  11    Docket 4267. This was not the proper legal standard.

11:16  12            Third, I want to talk to you about this

11:17  13    intentional interference with a contractual relations claim

11:17  14    for a moment. I'm struggling to see how Mattel has proven

11:17  15    harm on this issue that's unrelated to the misappropriation

11:17  16    of trade secrets claim.

11:17  17            And that misappropriation, of course, is

11:17  18    superseded by the trade secrets act; so the theory seems to

11:17  19    be that because Bryant, Cabrera, Morales, Salazar, and

11:17  20    Tumaliuan moonlighted for MGA, that Bratz dolls took off and

11:17  21    that caused Mattel to lose profits. That seems extremely

11:17  22    attenuated. And I can't find a single case last evening and

11:17  23    early this morning in which the causation standard has been

11:17  24    met on these kinds of facts.

11:17  25            On top of that, I have the fact that the contracts

11:17   1   are interesting, if not ambiguous.  And it becomes pretty

11:17   2   hard to see how the employees themselves, let alone Larian

11:17   3   and MGA, could have anticipated that moonlighting would

11:18   4   constitute a breach.

11:18   5            So let me clarify, at least for my record, that

11:18   6   unjust enrichment is not available on a claim for

11:18   7   intentional interference with contractual relations.

11:18   8            So it has to be damage to Mattel.  And today's

11:18   9   damage or today -- I'm sorry -- today's testimony about the

11:18   10  employment evaluation may lend clarity that these employees

11:18   11  were favorably reviewed and were not doing poorly at the

11:18   12  company.

11:18   13           Now, those are only tentative thoughts, and I want

11:18   14  to get you back in here as soon as possible, because I may

11:18   15  be instructing as early as 2:00 o'clock.

11:18   16           Now, third -- or fourth, I want to just speak to

11:18   17  Mr. McConville and I want to speak to Mr. Quinn for a

11:18   18  moment.  I want you to help me shape this.

11:18   19           Look, I've got Machado on a Rule 50.  Okay?  Where

11:18   20  do I begin and end this testimony without trying to nitpick

11:19   21  away the argument on behalf of you, Mr. Quinn and Mr. Price,

11:19   22  about Machado's machination.  Hear me out.  I've got a whole

11:19   23  series of things to talk to you about.

11:19   24           What do I do about Kohl's?  Kohl's has a whole set

11:19   25  of arguments that lend itself to motivation to harm MGA, a

| | | |
|---|---|---|
| 11:19 | 1 | continuing pattern relevant for trade secret, but by the |
| 11:19 | 2 | same token, as you say, I'm gonna decide that claim.  So at |
| 11:19 | 3 | this stage, what's Kohl's doing in doing the jury. |
| 11:19 | 4 | Third, what do I do about backpack and Brisbois? |
| 11:19 | 5 | I'd like to see that backpack tape for a moment, that disc. |
| 11:19 | 6 | Do we have that in evidence? |
| 11:19 | 7 | Is that in evidence yet? |
| 11:19 | 8 | MS. HURST:  No. |
| 11:19 | 9 | THE COURT:  Where is that disc?  I want to look at |
| 11:19 | 10 | it for a few moments. |
| 11:19 | 11 | MR. QUINN:  Chris has it. |
| 11:19 | 12 | THE COURT:  Okay.  Let me pull that up. |
| 11:20 | 13 | And finally, how far-reaching do you really want |
| 11:20 | 14 | the arguments to go?  When you first came in here, I said, |
| 11:20 | 15 | How did you want the case to proceed, and how did you want |
| 11:20 | 16 | to set the tone of the case.  So as you both fear, this case |
| 11:20 | 17 | could be awfully vitriolic during argument with different |
| 11:20 | 18 | objections at different times and counsel getting animated |
| 11:20 | 19 | with counsel who's objecting and there being a significant |
| 11:20 | 20 | amount of interruptions. |
| 11:20 | 21 | I don't know how I start dividing out at this |
| 11:20 | 22 | stage, you know, testimony about Machado or Brisbois. |
| 11:20 | 23 | Let me give an example of Brisbois up in Canada |
| 11:20 | 24 | for just a moment, for both of you.  Let's assume that you |
| 11:20 | 25 | prevailed on MGA's side and the tape wasn't authenticated. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

72

| 11:20 | 1 | I think, Mr. Zeller, that there's enough evidence |
| 11:21 | 2 | in this record from Mr. de Anda's testimony -- not from |
| 11:21 | 3 | Kinrich, but from de Anda, et cetera -- hold on.  Now listen |
| 11:21 | 4 | to me -- because this preclusion's going both ways, |
| 11:21 | 5 | remember.  Kohl's.  Brisbois.  Each of you are going to want |
| 11:21 | 6 | to get it chopped up in your self-interest.  But there could |
| 11:21 | 7 | be the argument -- before everybody starts shaking their |
| 11:21 | 8 | heads on both sides -- that as MGA wants this testimony |
| 11:21 | 9 | excluded because there's no nexus to Mr. Larian, there's no |
| 11:21 | 10 | inducement, MGA is still a defendant. |
| 11:21 | 11 | So what do I do?  Do I instruct that there's no |
| 11:21 | 12 | nexus to Larian and you're to disregard any insinuation that |
| 11:21 | 13 | Mr. Larian is involved in this on the basis of this record? |
| 11:21 | 14 | Or are we left with a bare record if the tape doesn't come |
| 11:21 | 15 | in that there's 200 downloads.  That's the state of the |
| 11:21 | 16 | record.  And the end result is that now MGA gets up and has |
| 11:22 | 17 | to argue away 200 downloads when we know, at most, depending |
| 11:22 | 18 | upon what I see on this tape in a few moments, that there |
| 11:22 | 19 | are six. |
| 11:22 | 20 | Now, hold on.  They're going to argue Kohl's in |
| 11:22 | 21 | just a moment, so hold on.  I'm not listening yet; I'm |
| 11:22 | 22 | telling you. |
| 11:22 | 23 | And how, at this late stage, is the Court starting |
| 11:22 | 24 | to grant Rule 50 motions, et cetera, you know, start |
| 11:22 | 25 | segmenting out with a fine comb how far you go with Machado |

| 11:22 | 1 | or how far MGA goes with Kohl's or how far you go with |
| 11:22 | 2 | Brisbois? |
| 11:22 | 3 | Knowing what I do now, the case would have an |
| 11:22 | 4 | entirely different flavor, having gone through it for the |
| 11:22 | 5 | first three months. |
| 11:22 | 6 | So I know your respective positions. In a few |
| 11:22 | 7 | moments, it's going to be, "Judge, Brisbois has nothing to |
| 11:22 | 8 | do with this. The tape's not authenticated. It shouldn't |
| 11:22 | 9 | come in, and there's no evidence independent of the tape |
| 11:23 | 10 | coming in that would support any insinuation that this was |
| 11:23 | 11 | anything other than a download by a private employee in |
| 11:23 | 12 | Canada." |
| 11:23 | 13 | Mr. Quinn, I hear your argument. Your argument |
| 11:23 | 14 | is, "Look, Judge, this is a matter for the jury. You should |
| 11:23 | 15 | instruct them that the matter of Kohl's is not before them |
| 11:23 | 16 | on an unfair competition claim." And then how do I segment |
| 11:23 | 17 | that out 'cause so many witnesses testified to so many |
| 11:23 | 18 | different things, including credibility determinations? |
| 11:23 | 19 | Finally, I think Machado's a fairly safe ruling |
| 11:23 | 20 | for the Court. I think that, in retrospect, Machado would |
| 11:23 | 21 | have come into this case whether you charged Machado or not. |
| 11:23 | 22 | But I'm not entirely certain of that on the choice of law. |
| 11:23 | 23 | So I'm just going to throw the lectern open to |
| 11:23 | 24 | you, because that's what I was struggling with last night. |
| 11:23 | 25 | I think I know your respective positions, but I'll start |

| | | |
|---|---|---|
| 11:23 | 1 | with either party. |
| 11:23 | 2 | Mr. Quinn. |
| 11:23 | 3 | MR. QUINN:  Your Honor, I -- I think -- I really |
| 11:24 | 4 | think the situation with respect to the Machado evidence and |
| 11:24 | 5 | the 17200 evidence -- and it's not just Kohl's; it's moving |
| 11:24 | 6 | products around on the shelves at Walmart; it's alleged |
| 11:24 | 7 | mistreatment of licensees.  There may be even other acts -- |
| 11:24 | 8 | evidence of unfair competition that was offered in support |
| 11:24 | 9 | of the 17200 claim. |
| 11:24 | 10 | I think that body of evidence and that situation |
| 11:24 | 11 | is quite a bit different than Machado for the following |
| 11:24 | 12 | reasons: |
| 11:24 | 13 | The case relating to Machado and the evidence |
| 11:24 | 14 | relating to that case always -- it was always contemplated |
| 11:24 | 15 | that had to go before the jury.  Those were jury claims.  If |
| 11:24 | 16 | this case wasn't dismissed before trial, then that had to be |
| 11:24 | 17 | tried before the jury. |
| 11:24 | 18 | The 17200 claim was never a jury issue.  That was |
| 11:25 | 19 | never something for the jury to decide.  Up to a certain |
| 11:25 | 20 | point, the Court saw some value in getting an advisory |
| 11:25 | 21 | verdict from the jury, but that was never going to be a jury |
| 11:25 | 22 | question. |
| 11:25 | 23 | The Machado case always was to be a jury question. |
| 11:25 | 24 | So it -- properly and necessarily, that evidence came in |
| 11:25 | 25 | before the jury. |

| | | |
|---|---|---|
| 11:25 | 1 | The 17200 case was never going to be for the jury. |
| 11:25 | 2 | It was never to be for their decision. |
| 11:25 | 3 | Machado, of course, his case was dismissed on -- |
| 11:25 | 4 | you know, not on the merits -- on statute of limitations |
| 11:25 | 5 | grounds.  As I think -- as I understand the Court's |
| 11:25 | 6 | comments -- |
| 11:25 | 7 | THE COURT:  Choice of law. |
| 11:25 | 8 | MR. QUINN:  -- choice of law, which then sent us |
| 11:25 | 9 | to a statute of limitations, as I understand it. |
| 11:25 | 10 | THE COURT:  Right. |
| 11:25 | 11 | MR. QUINN:  I think the Court intimated that even |
| 11:25 | 12 | if Machado had not been a defendant, that evidence would |
| 11:25 | 13 | have been relevant to the case as tried. |
| 11:26 | 14 | THE COURT:  I think so.  Let me state the record |
| 11:26 | 15 | so it's perfected on your behalf.  I think because of the |
| 11:26 | 16 | nexus in New York and the eventual, if you will, hiring |
| 11:26 | 17 | after the close of MGA Mexico and the rehiring, at least in |
| 11:26 | 18 | the United States, that, at least tentatively -- and I don't |
| 11:26 | 19 | know if that would be a final ruling -- but tentatively, I |
| 11:26 | 20 | saw a nexus, plus Mr. Larian flying into Mexico. |
| 11:26 | 21 | MR. QUINN:  All right.  So the unfair competition |
| 11:26 | 22 | evidence relating to 17200 is a totally different situation. |
| 11:26 | 23 | That wouldn't have come before the jury.  And if the Court |
| 11:26 | 24 | had decided initially that it -- but for the Court's |
| 11:26 | 25 | decision that it saw some value for a while and having an |

| | | |
|---|---|---|
| 11:26 | 1 | advisory verdict, none of that would have come before the |
| 11:26 | 2 | jury. |
| 11:26 | 3 | So I -- and then I think that this is very |
| 11:26 | 4 | dangerous, because they actually put in a damages case |
| 11:27 | 5 | through their expert with respect to the Kohl's situation, |
| 11:27 | 6 | the lost profits for those -- you know, those two years. |
| 11:27 | 7 | What's the jury going to do with that?  If they're not -- |
| 11:27 | 8 | they're gonna think, "We were told that for some reason." |
| 11:27 | 9 | They're -- they will think, unless they're told |
| 11:27 | 10 | otherwise, that -- if they believe that evidence, that MGA |
| 11:27 | 11 | was the subject of improper anticompetitive conduct at |
| 11:27 | 12 | Kohl's -- if that's what they think, they will think they |
| 11:27 | 13 | must find a place on that form to award that money. |
| 11:27 | 14 | THE COURT:  How does it help if the Court |
| 11:27 | 15 | instructs the jury that this is a Court determination?  In |
| 11:27 | 16 | other words, the jury doesn't really know the claims that |
| 11:27 | 17 | still left before them. |
| 11:27 | 18 | MR. QUINN:  Well, I -- we -- we suggested a |
| 11:27 | 19 | proposed instruction that basically says, you know, "You've |
| 11:28 | 20 | heard some evidence regarding an alleged interference with |
| 11:28 | 21 | the relationship at Kohl's about moving" -- I think you'd |
| 11:28 | 22 | actually have to refer enough to the facts or the evidence |
| 11:28 | 23 | so that they know what to disregard -- about, you know, |
| 11:28 | 24 | moving around product on Walmart shelves and about |
| 11:28 | 25 | licensing.  I think that -- you have to say -- tell them |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 77 of 103   Page ID #:317453
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

77

| 11:28 | 1 | that that shouldn't enter into their decisions on the claims |
|---|---|---|
| 11:28 | 2 | that are submitted to them. |
| 11:28 | 3 | Now, of course, jurors can't, you know, completely |
| 11:28 | 4 | ignore what they've heard, and we have to assume that |
| 11:28 | 5 | there's -- it's possible it will affect their decision |
| 11:28 | 6 | making on those claims.  There's nothing that can be done |
| 11:28 | 7 | about that.  But to not say anything, I think this will |
| 11:28 | 8 | infect their deliberations on the claims that are for their |
| 11:28 | 9 | decision.  They will think that all -- you know, "Those |
| 11:28 | 10 | witnesses were called for a reason; this has been submitted |
| 11:29 | 11 | to us; we're supposed to take that into account." |
| 11:29 | 12 | So I think that's very dangerous. |
| 11:29 | 13 | THE COURT:  Let me hear from MGA, and ask this |
| 11:29 | 14 | question: |
| 11:29 | 15 | What independent reason supports any reference to |
| 11:29 | 16 | Kohl's in front of this jury?  In other words, if the 17200 |
| 11:29 | 17 | claim is now deemed by this Court that initially sought an |
| 11:29 | 18 | advisory opinion, what independent reason can you state on |
| 11:29 | 19 | this record that would support argument about Kohl's?  Take |
| 11:29 | 20 | your time with that. |
| 11:29 | 21 | MR. McCONVILLE:  Just a couple points, Your Honor. |
| 11:29 | 22 | One, it was always the Court's intention that this |
| 11:29 | 23 | evidence would be adduced.  So I don't believe that there's |
| 11:29 | 24 | been any misperception as to when this evidence was coming |
| 11:29 | 25 | in.  Because the Court announced a long time ago that it |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 78 of 103   Page ID #:317454
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

78

| | | |
|---|---|---|
| 11:29 | 1 | intended to have an advisory jury decision on this point. |
| 11:30 | 2 | So to say that it was never going to be before the jury, I |
| 11:30 | 3 | believe, is not what we had all understood all along. |
| 11:30 | 4 | THE COURT:  I changed my position based upon |
| 11:30 | 5 | Mattel's argument. |
| 11:30 | 6 | Let me ask this:  Do you want the 17200 to go as |
| 11:30 | 7 | an advisory decision to the jury? |
| 11:30 | 8 | MR. McCONVILLE:  No. |
| 11:30 | 9 | THE COURT:  Okay.  Does Mattel want this to go as |
| 11:30 | 10 | an advisory decision to the jury? |
| 11:30 | 11 | MR. ZELLER:  No. |
| 11:30 | 12 | MR. QUINN:  No. |
| 11:30 | 13 | THE COURT:  That's why the Court finds itself in |
| 11:30 | 14 | this position. |
| 11:30 | 15 | MR. McCONVILLE:  Understood.  So let me -- |
| 11:30 | 16 | THE COURT:  And it's only because of the |
| 11:30 | 17 | stipulation between the parties, because this would be the |
| 11:30 | 18 | first case I haven't sent, on a 17200 claim, an advisory |
| 11:30 | 19 | decision to the jury. |
| 11:30 | 20 | Now, that doesn't mean it's correct in the past, |
| 11:30 | 21 | but I've always relied upon them in a mixed claim. |
| 11:30 | 22 | Counsel. |
| 11:30 | 23 | MR. McCONVILLE:  Uh, so actually, the Kohl's |
| 11:30 | 24 | activities go to a number of different concepts which have |
| 11:30 | 25 | to be before the jury. |

| 11:30 | 1 | THE COURT:  What are those independent concepts |
| 11:30 | 2 | that would justify this? |
| 11:31 | 3 | MR. McCONVILLE:  One -- one is Mr. Larian's |
| 11:31 | 4 | credibility.  Now, the Court has said that this case will |
| 11:31 | 5 | rise and fall depending on which of the heads of these |
| 11:31 | 6 | companies that the jury believes. |
| 11:31 | 7 | THE COURT:  Okay. |
| 11:31 | 8 | MR. McCONVILLE:  The jury has now heard that, from |
| 11:31 | 9 | Mr. Larian's perspective, he was frozen out.  He was then |
| 11:31 | 10 | cross-examined to make -- and left the impression with the |
| 11:31 | 11 | jury that Mr. Larian had no evidence to support whether or |
| 11:31 | 12 | not he was frozen out. |
| 11:31 | 13 | What the jury has been permitted to hear is that, |
| 11:31 | 14 | from our perspective, Mr. Larian had a good faith basis for |
| 11:31 | 15 | saying he was frozen out.  I mean, there have been a number |
| 11:31 | 16 | of tangents that we have taken in this case, and frankly, |
| 11:31 | 17 | it's been a long time, but I'm pretty sure we spent more |
| 11:31 | 18 | time on the shoe patent than we have spent on Kohl's.  So, I |
| 11:31 | 19 | mean, there are a lot of issues that relate -- that don't |
| 11:32 | 20 | necessarily relate to a claim in this case, but we spent a |
| 11:32 | 21 | lot of time challenging people's credibility.  And |
| 11:32 | 22 | Mr. Larian testified, was cross-examined, and the Kohl's |
| 11:32 | 23 | evidence supports Mr. Larian's credibility. |
| 11:32 | 24 | THE COURT:  I want to remind both of you -- and |
| 11:32 | 25 | I'm going to joke with you a little bit, but I'm not -- I |

CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

80

| 11:32 | 1 | tried to contain it.  That's why I took a look at those 81 |
| 11:32 | 2 | *in limine* motions.  I tried to narrow this from a trial |
| 11:32 | 3 | within a trial, and now we've gotten off on tangents, so... |
| 11:32 | 4 | MR. McCONVILLE:  I understand.  I'm just |
| 11:32 | 5 | addressing the Court's position.  And the shoe patent's just |
| 11:32 | 6 | one that comes to mind, though a long time ago. |
| 11:32 | 7 | THE COURT:  So credibility. |
| 11:32 | 8 | MR. McCONVILLE:  We spent a lot of time on it. |
| 11:32 | 9 | THE COURT:  So credibility of Larian. |
| 11:32 | 10 | MR. McCONVILLE:  Second, part of the Kohl's |
| 11:32 | 11 | testimony relates directly to the trade secret claim, |
| 11:32 | 12 | because the testimony from the woman who testified yesterday |
| 11:32 | 13 | was there were 8 feet of shelf space, 4 feet went to Bratz, |
| 11:33 | 14 | and then -- and then after this deal, 8 feet went to Barbie, |
| 11:33 | 15 | and Bratz was never again sold at Kohl's. |
| 11:33 | 16 | THE COURT:  Okay. |
| 11:33 | 17 | Now, turn to Machado for a moment.  Do you have a |
| 11:33 | 18 | request concerning Machado? |
| 11:33 | 19 | Because the factors for the Court are the New York |
| 11:33 | 20 | Toy Fair -- Mr. Zeller, listen -- the New York Toy Fair, |
| 11:33 | 21 | flying to the W Hotel, and then what I call the reverse |
| 11:33 | 22 | nexus -- which I'm not finding in Canada, by the way, and |
| 11:33 | 23 | I'll get to Brisbois in just a moment -- the reverse nexus |
| 11:33 | 24 | of coming right back to MGA.  And that's why I keep saying |
| 11:33 | 25 | "tentatively" without ruling.  I don't know what I would |

| | | |
|---|---|---|
| 11:33 | 1 | have done if the case was starting anew and I would have |
| 11:33 | 2 | granted Machado summary judgment. |
| 11:33 | 3 | But this far along, it seems to me that that's a |
| 11:34 | 4 | real nexus between Machado, Larian, inducement, and there's |
| 11:34 | 5 | a lot of confusion about what was obtained off of different |
| 11:34 | 6 | servers. |
| 11:34 | 7 | So if you have any comments to perfect your record |
| 11:34 | 8 | for appeal, I still feel that there's a nexus to Larian. |
| 11:34 | 9 | Now, my next point's going to be:  What's the |
| 11:34 | 10 | nexus to Larian with Brisbois up in Canada on the state of |
| 11:34 | 11 | this record?  So let's take Machado first, and if you |
| 11:34 | 12 | disagree with the Court, make your record for appellate |
| 11:34 | 13 | purposes. |
| 11:34 | 14 | MS. HURST:  I mean, there's no evidence to meet |
| 11:34 | 15 | the elements of the claim against Larian and MGA as opposed |
| 11:34 | 16 | to MGA Mexico. |
| 11:34 | 17 | There's no benefit been shown to either Larian or |
| 11:34 | 18 | MGA.  There's -- and they're not arguing harm. |
| 11:34 | 19 | So there's just a fundamental element missing |
| 11:34 | 20 | there.  That claim should not be going and argued. |
| 11:35 | 21 | The evidence is -- does not show a nexus, because |
| 11:35 | 22 | a 15-minute interview in New York and an hour-and-a-half |
| 11:35 | 23 | meeting in Mexico City -- |
| 11:35 | 24 | THE COURT:  What about the e-mails? |
| 11:35 | 25 | MS. HURST:  The plot04 e-mail -- you mean to hire |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 82 of 103   Page ID
#:317458
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

82

| 11:35 | 1 | people? |
| 11:35 | 2 | THE COURT:  Well, a reasonable inference for the |
| 11:35 | 3 | jury was plot04.  I mean, there's a lot of circumstantial |
| 11:35 | 4 | evidence there potentially -- |
| 11:35 | 5 | MS. HURST:  I mean -- |
| 11:35 | 6 | THE COURT:  -- for Mattel. |
| 11:35 | 7 | MS. HURST:  I think that that evidence is no more |
| 11:35 | 8 | than an ordinary hiring process.  And the only thing that |
| 11:35 | 9 | makes it look strange is that things were taken, and that's |
| 11:35 | 10 | exactly what can't be done.  That's the *ipse dixit*.  Well, |
| 11:35 | 11 | he took things, therefore, there must have been an |
| 11:35 | 12 | inducement.  There is no evidence at all that there was any |
| 11:35 | 13 | importuning.  This is *post hoc ergo propter hoc*.  The |
| 11:36 | 14 | rooster crows and the sun rises; therefore, the rooster |
| 11:36 | 15 | crowing must have caused the sun to rise.  I mean, that's |
| 11:36 | 16 | the argument. |
| 11:36 | 17 | There's no evidence at all of inducement, none |
| 11:36 | 18 | whatsoever.  They got all of those e-mails.  They examined |
| 11:36 | 19 | them carefully.  There's no reference whatsoever.  Nobody's |
| 11:36 | 20 | testified, not even Vargas -- not even Vargas, the |
| 11:36 | 21 | turncoat -- he denied steadfastly that Isaac Larian had ever |
| 11:36 | 22 | induced anything.  There's ample evidence they had |
| 11:36 | 23 | independent reason for their desire to perform their jobs to |
| 11:36 | 24 | take things. |
| 11:36 | 25 | We -- and that we did not condone that and |

| | | |
|---|---|---|
| 11:36 | 1 | specifically instructed them to the contrary. |
| 11:36 | 2 | Your Honor, you can't get an inference of |
| 11:36 | 3 | inducement on that record.  If you do, then, any job |
| 11:37 | 4 | interview will be sufficient to support, not just filing a |
| 11:37 | 5 | lawsuit, not just beating summary -- but beating summary |
| 11:37 | 6 | judgment and going to the jury.  Just by having a job |
| 11:37 | 7 | interview.  That is not the law in California. |
| 11:37 | 8 | THE COURT:  Okay.  Now, I want to turn to the next |
| 11:37 | 9 | area of concern. |
| 11:37 | 10 | I want to turn to backpack.  Do we have that tape |
| 11:37 | 11 | for just a moment?  Thanks a lot.  John, if you would just |
| 11:37 | 12 | give it.  And, Annette, have you seen this? |
| 11:37 | 13 | MS. HURST:  It's a thumb drive. |
| 11:37 | 14 | THE COURT:  The thumb drive -- I call it |
| 11:37 | 15 | "backpack" -- leave it with Nancy for just a moment. |
| 11:37 | 16 | I have been very gracious, although MGA doesn't |
| 11:37 | 17 | feel that way about your Tyler Snyder witness and allowing |
| 11:37 | 18 | some teleconferencing in the last portion of the case.  And |
| 11:38 | 19 | I repeat, I don't think that either one of you could have |
| 11:38 | 20 | tried a fair case without getting witnesses into the |
| 11:38 | 21 | courtroom concerning their demeanor.  So the Court took a |
| 11:38 | 22 | pretty hard position on that at the beginning. |
| 11:38 | 23 | But the same offer that I made to Tyler Snyder has |
| 11:38 | 24 | been opened to Mattel.  And here I've got a -- what I call a |
| 11:38 | 25 | backwards presentation, and I'm not going to undo it.  It's |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 84 of 103   Page ID #:317460
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

84

| | | |
|---|---|---|
| 11:38 | 1 | too far down the line.  But I think it's valid that Kinrich |
| 11:38 | 2 | can take certain amounts or certain numbers of employees who |
| 11:38 | 3 | left Mattel, but now I'm very concerned because Brawer |
| 11:38 | 4 | wasn't included in this list.  It skews the whole |
| 11:39 | 5 | methodology from where I thought we were going. |
| 11:39 | 6 | And my concern's this:  We've got the chain on |
| 11:39 | 7 | backpack.  We've got some independent evidence.  And I want, |
| 11:39 | 8 | for the record, Mr. Zeller or Mr. Quinn, you to refresh this |
| 11:39 | 9 | record, as if backpack didn't come in for a moment.  So take |
| 11:39 | 10 | me through de Anda, for instance. |
| 11:39 | 11 | There was a -- there was a download, but de Anda |
| 11:39 | 12 | didn't personally conduct it, if my memory's correct. |
| 11:39 | 13 | Somebody else conducted the download, and the |
| 11:39 | 14 | following was found.  Who was that person, and what was |
| 11:39 | 15 | found? |
| 11:39 | 16 | MR. QUINN:  Maryman.  Maryman was the witness's |
| 11:39 | 17 | name. |
| 11:40 | 18 | THE COURT:  And did he personally conduct the |
| 11:40 | 19 | download? |
| 11:40 | 20 | MR. QUINN:  Yes. |
| 11:40 | 21 | THE COURT:  And his testimony was that he found -- |
| 11:40 | 22 | MR. QUINN:  His testimony was that he found a |
| 11:40 | 23 | number of files and he identified by name certain files. |
| 11:40 | 24 | THE COURT:  Yeah. |
| 11:40 | 25 | MR. QUINN:  Just the file names. |

| 11:40 | 1 | THE COURT:  What date did that occur on? |
| 11:40 | 2 | MR. QUINN:  His testimony? |
| 11:40 | 3 | THE COURT:  Yeah. |
| 11:40 | 4 | MR. QUINN:  Somebody know? |
| 11:40 | 5 | THE COURT:  I've got here in eight notebooks, but |
| 11:40 | 6 | if you can help me with the date, I can turn to my own notes |
| 11:40 | 7 | quickly. |
| 11:40 | 8 | MS. HURST:  Day 31, Volume II. |
| 11:40 | 9 | THE COURT:  May 31? |
| 11:40 | 10 | MS. HURST:  Day 31, March 10th, Your Honor. |
| 11:40 | 11 | THE COURT:  Just a moment.  Day 31, Volume II. |
| 11:40 | 12 | And let me ask, so I can turn to my own notes for just a |
| 11:40 | 13 | moment, if he came before or after Valery Aginsky. |
| 11:41 | 14 | MR. McCONVILLE:  It was after. |
| 11:41 | 15 | MS. HURST:  No.  Before.  Oh, in between. |
| 11:41 | 16 | MR. McCONVILLE:  We're both right. |
| 11:41 | 17 | THE COURT:  We might as well end the case where we |
| 11:41 | 18 | stated. |
| 11:41 | 19 | I'm just joking with you, Counsel. |
| 11:41 | 20 | Before, after, and in between. |
| 11:41 | 21 | Peter Marlow.  Before or after Mr. Marlow? |
| 11:41 | 22 | Then we went Jeffrey Kinrich, Laura Owens. |
| 11:41 | 23 | MR. McCONVILLE:  It's in there. |
| 11:41 | 24 | THE COURT:  Just a moment, Counsel.  Counsel, I'll |
| 11:41 | 25 | be right back with you.  Just stay where you are, and I'll |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 86 of 103   Page ID #:317462
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

86

| | | |
|---|---|---|
| 11:42 | 1 | be back in just a moment.  Okay. |
| 11:46 | 2 | (Pause in the proceedings at 11:42 a.m.) |
| 11:46 | 3 | (Proceedings resumed at 12:03 p.m.) |
| 12:03 | 4 | THE COURT:  All right.  First -- we're back on |
| 12:03 | 5 | record. |
| 12:03 | 6 | First, to begin with, concerning Kohl's, I'm not |
| 12:03 | 7 | going to preclude argument on the issue for three reasons. |
| 12:03 | 8 | It would be unduly consumptive of time, although I |
| 12:03 | 9 | recognize some prejudicial effect.  This evidence is |
| 12:04 | 10 | relevant to other claims, and it's unfair to start cutting |
| 12:04 | 11 | out arguments.  I'm going to give you examples on each side |
| 12:04 | 12 | so the Circuit knows why the case is in this position. |
| 12:04 | 13 | Everyone seems to be under the impression, at |
| 12:04 | 14 | Mattel, that this evidence only came in because I thought I |
| 12:04 | 15 | would seek an advisory verdict.  Partially that's correct. |
| 12:04 | 16 | But even before I considered an advisory verdict, |
| 12:04 | 17 | I decided on the in limine motions that Kohl's evidence and |
| 12:04 | 18 | the shelf space evidence was still relevant to claims being |
| 12:04 | 19 | tried to the jury, specifically Mattel's allegation of lost |
| 12:04 | 20 | profits and unjust enrichment. |
| 12:04 | 21 | This whole Kohl's transaction can be argued in a |
| 12:04 | 22 | lot of ways.  For instance, MGA could point to the fact that |
| 12:04 | 23 | Bratz sold incredibly well in some stores and then poorly in |
| 12:04 | 24 | Kohl's because the intellectual property itself was not |
| 12:04 | 25 | really the valuable part of the product. |

| 12:04 | 1 | Instead, the rise or fall of the product resulted |
| 12:04 | 2 | from exigent factors like competitors' conduct or |
| 12:05 | 3 | relationships with retailers.  Kohl's can also be argued as |
| 12:05 | 4 | proof that Mattel actually benefited from the fact that |
| 12:05 | 5 | Bratz opened up a huge market; that MGA's management and |
| 12:05 | 6 | competence allowed Mattel to gain a share of that market. |
| 12:05 | 7 | Kohl's is also relevant to credibility of |
| 12:05 | 8 | witnesses.  So it isn't -- so this isn't as clear a call, I |
| 12:05 | 9 | think, as, Mr. Quinn, you're suggesting. |
| 12:05 | 10 | Next, in just chopping up evidence, I keep |
| 12:05 | 11 | thinking about this shoe patent as well.  The jury has heard |
| 12:05 | 12 | all kinds of unrelated evidence about a shoe patent, and |
| 12:05 | 13 | that's also evidence about MGA toy fair showroom conduct. |
| 12:05 | 14 | I'm very receptive to instructing the jury that I |
| 12:05 | 15 | will award damages on the Kohl's conduct if you ask and that |
| 12:05 | 16 | that won't be before them.  But my concern is that may |
| 12:05 | 17 | actually prejudice Mattel by suggesting that I prejudged |
| 12:05 | 18 | Mattel to be liable. |
| 12:05 | 19 | Also, I think your fear presumes the jury will not |
| 12:05 | 20 | follow instructions, which do not anywhere allow the jury to |
| 12:06 | 21 | account for the Kohl's conduct. |
| 12:06 | 22 | In short, I'm not going to start chopping up |
| 12:06 | 23 | claims such as the shoe patent, and I'm going to let you |
| 12:06 | 24 | work together, if you chose to, to reach a stipulation.  And |
| 12:06 | 25 | if you both agree to exclude or to let in all evidence, I'll |

| | | |
|---|---|---|
| 12:06 | 1 | leave that in your own self-interest. |
| 12:06 | 2 | I think it's too late now to start chopping up |
| 12:06 | 3 | these cases. |
| 12:06 | 4 | Second, I'm going to -- this -- is anybody going |
| 12:06 | 5 | to have Brisbois come on a teleconference to authenticate |
| 12:06 | 6 | this tape?  I have no concern concerning the chain.  I think |
| 12:06 | 7 | that's been stipulated to.  I hope it has. |
| 12:06 | 8 | MR. QUINN:  Right. |
| 12:06 | 9 | THE COURT:  Right?  Okay. |
| 12:06 | 10 | Now, what is the state of this record?  The state |
| 12:06 | 11 | is that I understand Brisbois from each of you or one of |
| 12:07 | 12 | you, I forget, is available.  She's not unwilling to either |
| 12:07 | 13 | come or to testify by teleconference. |
| 12:07 | 14 | I'm not sure where we left that conversation.  Is |
| 12:07 | 15 | the state of the record just going to be this call on this |
| 12:07 | 16 | set of circumstances? |
| 12:07 | 17 | MR. QUINN:  Well, the state of the record, the |
| 12:07 | 18 | trial evidence is:  Four days before her resignation, on the |
| 12:07 | 19 | evening of Thursday, September 22nd, 2005, at 11:07 p.m., |
| 12:07 | 20 | she began downloading Mattel documents onto a thumb drive |
| 12:07 | 21 | she had named "backpack."  She resumed downloading the |
| 12:07 | 22 | following documents the following morning at 7:43 a.m. |
| 12:07 | 23 | Maryman testified that she downloaded over 30 documents to |
| 12:07 | 24 | the thumb drive during the period immediately prior to her |
| 12:07 | 25 | resignation. |

| 12:07 | 1 | De Anda testified that she down- -- some of |
| 12:07 | 2 | downloaded -- that these downloaded files were Mattel's |
| 12:08 | 3 | proprietary information. |
| 12:08 | 4 | It's trial record March 9, 2011, Volume I, page |
| 12:08 | 5 | 141, line 9, to 144, line 4. |
| 12:08 | 6 | Mr. Maryman identified on the stand the particular |
| 12:08 | 7 | files by file name:  The Barbie Spring 2005 point of sale |
| 12:08 | 8 | analysis, the competitive review, Walmart Canada, Barbie |
| 12:08 | 9 | pricing initiative letter and GLP March 28th, and Walmart |
| 12:08 | 10 | line review presentation.  That's all in the record. |
| 12:08 | 11 | THE COURT:  Okay.  That's very helpful in terms of |
| 12:08 | 12 | refreshing my recollection. |
| 12:08 | 13 | MR. McCONVILLE:  Can we be heard on that, |
| 12:08 | 14 | Your Honor? |
| 12:08 | 15 | THE COURT:  Absolutely. |
| 12:08 | 16 | MR. McCONVILLE:  So the state of the record is |
| 12:08 | 17 | that the Court continually invited Mattel put on percipient |
| 12:08 | 18 | witnesses to testify about Brisbois' conduct and did not. |
| 12:09 | 19 | The state of the record is that no one has testified that |
| 12:09 | 20 | the information on the Brisbois thumb drive is a trade |
| 12:09 | 21 | secret; therefore, it's irrelevant.  No one has testified |
| 12:09 | 22 | that Isaac Larian did anything. |
| 12:09 | 23 | THE COURT:  Now, just a moment. |
| 12:09 | 24 | MR. McCONVILLE:  Yes? |
| 12:09 | 25 | THE COURT:  Why can't the jury, if they choose, |

| 12:09 | 1 | and it's argued, simply take this tape and put it in a |
| 12:09 | 2 | computer if they ask for it and flip up the contents? |
| 12:09 | 3 | MR. McCONVILLE: So, Your Honor, because you'll |
| 12:09 | 4 | recall the methodology you went through with regard to the |
| 12:09 | 5 | Mexico CD. |
| 12:09 | 6 | THE COURT: Right. |
| 12:09 | 7 | MR. McCONVILLE: You said, "I want testimony about |
| 12:09 | 8 | these documents." You put -- in a parallel situation. |
| 12:09 | 9 | THE COURT: No, no. It's not parallel. Here's |
| 12:09 | 10 | what happened on the Mexico CD. I asked for the very chain |
| 12:09 | 11 | of evidence that's being stipulated to here. My concern was |
| 12:09 | 12 | that I wanted to know how that flowed. Your objection was |
| 12:09 | 13 | to authenticity. And I overruled MGA's objection on that |
| 12:10 | 14 | occasion because I felt eventually that the circumstances |
| 12:10 | 15 | were rather farfetched that the Mexican police had placed |
| 12:10 | 16 | this on that disc. |
| 12:10 | 17 | MR. McCONVILLE: I apologize. |
| 12:10 | 18 | THE COURT: So it was an authenticity argument. |
| 12:10 | 19 | It was a chain concern. And I didn't accept this for a |
| 12:10 | 20 | significant period of time. Here I don't have that chain |
| 12:10 | 21 | concern. |
| 12:10 | 22 | MR. McCONVILLE: I was imprecise with the way I |
| 12:10 | 23 | spoke. |
| 12:10 | 24 | What I meant was the way -- not whether it's |
| 12:10 | 25 | authentic. The content of the CD, you required Mattel to |

| 12:10 | 1 | put on a witness to testify about the documents.  You |
| 12:10 | 2 | required that before you would admit the documents into |
| 12:10 | 3 | evidence.  That was the practice that you required Mattel to |
| 12:10 | 4 | do. |
| 12:10 | 5 | THE COURT:  Right, right. |
| 12:10 | 6 | MR. McCONVILLE:  You've invited them to call |
| 12:10 | 7 | somebody, anybody with percipient witness -- or testimony |
| 12:10 | 8 | about Brisbois.  No one has come in to testify what it was |
| 12:10 | 9 | Brisbois did, whether these things are trade secrets, what |
| 12:11 | 10 | the contents of that thumb drive is, the use of those trade |
| 12:11 | 11 | secrets by MGA, whether those trade secrets ever made it to |
| 12:11 | 12 | MGA, they -- it is legally irrelevant at this point.  And |
| 12:11 | 13 | it's just prejudicial. |
| 12:11 | 14 | THE COURT:  Okay. |
| 12:11 | 15 | Now -- |
| 12:11 | 16 | MR. QUINN:  There was a witness -- no objection -- |
| 12:11 | 17 | de Anda testified she downloaded files that are Mattel's |
| 12:11 | 18 | proprietary information in the last days before she left. |
| 12:11 | 19 | And then those were identified by file name. |
| 12:11 | 20 | THE COURT:  That's my recollection also. |
| 12:11 | 21 | MS. HURST:  Mr. -- |
| 12:11 | 22 | THE COURT:  All right.  Now, I'm going to take |
| 12:11 | 23 | this up at a later time because it doesn't make any |
| 12:11 | 24 | difference concerning my instructions.  And I'm going to put |
| 12:11 | 25 | this back in the envelope.  I'm going to look at it one more |

| | | |
|---|---|---|
| 12:11 | 1 | time. |
| 12:11 | 2 | But I want to turn back to this intentional |
| 12:11 | 3 | interference for just a moment. |
| 12:11 | 4 | MR. QUINN:  Your Honor, could you indulge me just |
| 12:12 | 5 | a second? |
| 12:12 | 6 | THE COURT:  Sure. |
| 12:12 | 7 | MR. QUINN:  On the Kohl's matter, I really think |
| 12:12 | 8 | we're asking for trouble, but if the -- if the Court is |
| 12:12 | 9 | saying that it's willing to give an instruction that they |
| 12:12 | 10 | should not take into account those damages numbers, I -- I |
| 12:12 | 11 | welcome that. |
| 12:12 | 12 | THE COURT:  Okay. |
| 12:12 | 13 | How much were the damages numbers for Kohl's? |
| 12:12 | 14 | About 15 million? |
| 12:12 | 15 | MR. McCONVILLE:  I think it was around 6 million. |
| 12:12 | 16 | THE COURT:  Five? |
| 12:12 | 17 | MR. McCONVILLE:  6 million. |
| 12:12 | 18 | THE COURT:  It was about 5 to 6 million, wasn't |
| 12:12 | 19 | it? |
| 12:12 | 20 | MR. McCONVILLE:  Roughly, yeah. |
| 12:12 | 21 | THE COURT:  All right.  Now, let me consider that |
| 12:12 | 22 | also.  It's not a matter that I have to decide right now, |
| 12:12 | 23 | with an hour left before we resume, either one of these, so |
| 12:12 | 24 | we can have one further discussion.  Those were tentative |
| 12:12 | 25 | thoughts for both of you. |

| | | |
|---|---|---|
| 12:12 | 1 | Here's the state of the JMOL on this.  And this is |
| 12:13 | 2 | not finding fault, but this is absolutely what's occurred. |
| 12:13 | 3 | I am very, very, very concerned about this |
| 12:13 | 4 | intentional interference and the harm aspect.  By the same |
| 12:13 | 5 | token, the Court finds itself in the position of getting a |
| 12:13 | 6 | JMOL appropriately filed and now the response to the JMOL |
| 12:13 | 7 | appropriately filed, but at the last moment. |
| 12:13 | 8 | I'm placing all counsel on warning on this:  It's |
| 12:13 | 9 | causing jury -- it's going to cause instructional confusion. |
| 12:13 | 10 | I'm not certain that it's not superseded by the trade secret |
| 12:13 | 11 | misappropriation; but by the same token, I don't know that |
| 12:13 | 12 | I'm willing to take this from the jury at this late stage. |
| 12:13 | 13 | And this may be the very ruling that should be reserved by |
| 12:13 | 14 | the Court for a Rule 50.  Because I just don't feel that I |
| 12:13 | 15 | put the quality of work into this at this stage to make a |
| 12:13 | 16 | decision that is harmful to either party. |
| 12:14 | 17 | I'm going to simply freeze it at this point. |
| 12:14 | 18 | And I'll decide the Rule 50 on this.  But |
| 12:14 | 19 | everybody's on notice.  I'm having a tremendous concern |
| 12:14 | 20 | about the harm in this -- in this claim. |
| 12:14 | 21 | Now, I would suggest this:  I know you're -- you |
| 12:14 | 22 | were here quite late last night, at least from your |
| 12:14 | 23 | perspectives.  Why don't you go get a bite to eat and take |
| 12:14 | 24 | the 45 minutes before we resume 'cause you've got to be |
| 12:14 | 25 | fairly sharp for Mr. Bryant. |

| 12:14 | 1 | MR. QUINN: Carter Bryant. |
| 12:14 | 2 | THE COURT: Well, thank you. |
| 12:14 | 3 | MR. QUINN: Carter Bryant. That is my job, |
| 12:14 | 4 | Your Honor, always to fill in the blank there. |
| 12:14 | 5 | THE COURT: To help the Court when the Court |
| 12:14 | 6 | stumbles with a memory lapse. |
| 12:14 | 7 | Thank you, Mr. Quinn. |
| 12:14 | 8 | But you do need some decompression time, so take |
| 12:14 | 9 | it now. |
| 12:14 | 10 | The backpack issue can be decided upon further |
| 12:14 | 11 | reflection this evening, but I should be prepared to |
| 12:14 | 12 | instruct about 3:00 o'clock as I represented to you I would |
| 12:15 | 13 | be today. |
| 12:15 | 14 | Now, remember this. If either of you want more |
| 12:15 | 15 | time, I can instruct on Monday. And the only reason we're |
| 12:15 | 16 | keeping these hours, which, you know, for you is 1:30 and |
| 12:15 | 17 | for me, quite frankly, is a lot longer, is because you |
| 12:15 | 18 | wanted me to instruct beforehand. And you wanted me to |
| 12:15 | 19 | instruct today. And that's been our effort. |
| 12:15 | 20 | If either of you want more time on any of these |
| 12:15 | 21 | issues, you can argue tomorrow, and I offer you that I will |
| 12:15 | 22 | instruct on Monday. |
| 12:15 | 23 | I think your lead counsel wants the tactical |
| 12:15 | 24 | advantage of having the instructions from the Court first so |
| 12:15 | 25 | they're not having to spend half an hour of their time, and |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 95 of 103   Page ID #:317471
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

95

| | | |
|---|---|---|
| 12:15 | 1 | I understand that. But I want a clear record that with this |
| 12:15 | 2 | last moment, you know, avalanche of JMOLs and the opposition |
| 12:15 | 3 | coming in, that I'm really uncomfortable doing things on the |
| 12:15 | 4 | fly. When I make a mistake, I hope it's at least a |
| 12:16 | 5 | well-thought-out mistake. And I don't feel that this is |
| 12:16 | 6 | well thought out. |
| 12:16 | 7 | But I do remind you I'm deeply concerned about |
| 12:16 | 8 | this intentional interference and whether there's harm |
| 12:16 | 9 | involved and whether this shouldn't be a Rule 50. |
| 12:16 | 10 | So what's your choice? Do you want me to instruct |
| 12:16 | 11 | beforehand, or do you want me to delay instruction until |
| 12:16 | 12 | Monday? |
| 12:16 | 13 | MS. HURST: Instruct first. |
| 12:16 | 14 | THE COURT: What do you want me to do: Instruct |
| 12:16 | 15 | first or delay the instruction until Monday? |
| 12:16 | 16 | MR. QUINN: We agree. |
| 12:16 | 17 | THE COURT: Okay. Under that situation, I'm going |
| 12:16 | 18 | to reserve the Rule 50, and let this go to argument. |
| 12:16 | 19 | I'm trying to give you both enough breadth in your |
| 12:16 | 20 | arguments without getting down to the nitpicking of, you |
| 12:16 | 21 | know, where I start finally slicing everything from Machado |
| 12:16 | 22 | to -- to Kohl's, to the shoe patents. It's going to be |
| 12:16 | 23 | quite a far-ranging argument, but unfortunately, that's |
| 12:16 | 24 | where this case started. It started with 17 claims. We're |
| 12:16 | 25 | down to three, or two and a quarter. I'm joking with you. |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 96 of 103   Page ID #:317472
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

96

| | | |
|---|---|---|
| 12:17 | 1 | Therefore, it's almost impossible for me now to go |
| 12:17 | 2 | back and chop that up, because each of you have good |
| 12:17 | 3 | arguments that it's detrimental to your respective |
| 12:17 | 4 | positions.  And if Mr. Price was here, he would be yelling |
| 12:17 | 5 | about the shoe patent if I kicked that out. |
| 12:17 | 6 | MR. QUINN:  Sure. |
| 12:17 | 7 | MR. McCONVILLE:  He's an agitated guy.  He yells a |
| 12:17 | 8 | lot. |
| 12:17 | 9 | THE COURT:  Well, you should be yelling about the |
| 12:17 | 10 | shoe patent, Mr. McConville, obviously.  And Mr. Quinn's |
| 12:17 | 11 | concerned about Kohl's.  There's no way to undo that.  That |
| 12:17 | 12 | goes to credibility now, motivation, all parties have gotten |
| 12:17 | 13 | involved in tangential events. |
| 12:17 | 14 | Let me go back and look and see how I'm going to |
| 12:17 | 15 | instruct in terms of damages for a moment, see what I'm |
| 12:17 | 16 | going to do about that.  So I can use my 45 minutes. |
| 12:17 | 17 | Now, the next thing is this.  Now, give me just a |
| 12:17 | 18 | moment, because I've got a lot of work to do still. |
| 12:17 | 19 | What do I do about Machado and when do I do that? |
| 12:17 | 20 | In other words, how is that best gotten off our radar screen |
| 12:17 | 21 | in a way -- do I include that instruction in my instructions |
| 12:17 | 22 | where it's kind of buried amongst 80 instructions, or do I |
| 12:18 | 23 | say, "Here's the bright light.  Mr. Machado's no longer |
| 12:18 | 24 | before you"? |
| 12:18 | 25 | MR. ZELLER:  It goes with the instructions. |

| 12:18 | 1 | MS. HURST:  BAJI 124. |
|---|---|---|

12:18   1          MS. HURST:  BAJI 124.

12:18   2          THE COURT:  Yeah.

12:18   3          MS. HURST:  And I think you should do it like now

12:18   4   before we start launching into this.

12:18   5          THE COURT:  We might as well end the case as we

12:18   6   started with it.  I think it's the least prejudicial if I

12:18   7   simply do it in the packet of instructions.  They're so

12:18   8   close to being read today anyway.

12:18   9          MR. QUINN:  Your Honor, I think that the shoe

12:18  10   patent, the whole point of that was it proved that Carter

12:18  11   Bryant was prepared to lie about dates in order to get IP

12:18  12   for MGA.

12:18  13          THE COURT:  I agree.

12:18  14          MR. QUINN:  So that's not parallel to Kohl's.

12:18  15          THE COURT:  Yes, it is.  It makes the whole idea

12:18  16   about Mr. Larian being called a liar concerning shelf space

12:18  17   in Kohl's -- it's the exact same argument.

12:18  18          MR. QUINN:  No.  That wasn't the cross on Larian.

12:18  19   The cross on Larian was no business issues.  It wasn't about

12:19  20   whether he knew about the Mattel deal.  But that's water

12:19  21   under the bridge, I know.

12:19  22          THE COURT:  But credibility, I kept saying, has

12:19  23   become the paramount part of this case, frankly.  I mean,

12:19  24   who's telling the truth.

12:19  25          MR. QUINN:  The jury could be told you can

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 98 of 103   Page ID #:317474
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

98

| | | |
|---|---|---|
| 12:19 | 1 | consider it for credibility. |
| 12:19 | 2 | THE COURT:  And we all spun off on tangents, and |
| 12:19 | 3 | the Court tried not to let you go there, and thank goodness |
| 12:19 | 4 | at least we're not going as far as each of you would like to |
| 12:19 | 5 | go. |
| 12:19 | 6 | You go have a nice lunch. |
| 12:19 | 7 | MR. QUINN:  Are we going to have a chance to talk |
| 12:19 | 8 | about a few clean-up evidentiary issues at some point? |
| 12:19 | 9 | THE COURT:  Yeah.  But why don't you get the |
| 12:19 | 10 | evidence on that you need. |
| 12:19 | 11 | MR. QUINN:  Right.  And then we'll do that. |
| 12:19 | 12 | THE COURT:  And then we'll do that after I |
| 12:19 | 13 | instruct. |
| 12:19 | 14 | MR. QUINN:  Is it foreclosing argument -- is it a |
| 12:19 | 15 | demonstrative if we take an exhibit and underline key |
| 12:19 | 16 | language so it goes up with the underlining already on? |
| 12:19 | 17 | THE COURT:  If it's an exhibit that's already in |
| 12:19 | 18 | evidence and you're making a point during your argument, you |
| 12:19 | 19 | can underline the important or salient point; or you can |
| 12:19 | 20 | even do this so, since we are being so precise:  You can |
| 12:20 | 21 | make it in yellow. |
| 12:20 | 22 | MR. ZELLER:  Can we blow it up? |
| 12:20 | 23 | THE COURT:  You can blow it up.  As long as it's |
| 12:20 | 24 | an item in evidence, those are absolutely appropriate things |
| 12:20 | 25 | that aid you.  It's the demonstratives that aren't in |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 99 of 103   Page ID #:317475
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

99

| | | |
|---|---|---|
| 12:20 | 1 | evidence that I'm precluding across the board. |
| 12:20 | 2 | MR. QUINN:  That's helpful.  Thank you. |
| 12:20 | 3 | THE COURT:  I think most of these documents, if I |
| 12:20 | 4 | didn't allow that, you can't read. |
| 12:20 | 5 | MR. QUINN:  Right. |
| 12:20 | 6 | THE COURT:  And the jury is not going to be able |
| 12:20 | 7 | to search out quickly enough the salient points you're |
| 12:20 | 8 | pointing to.  And I think that's rather consistent, because |
| 12:20 | 9 | if I wasn't allowing that, I would have never allowed your |
| 12:20 | 10 | technicians in here.  Okay? |
| 12:20 | 11 | MS. HURST:  Your Honor, a couple things. |
| 12:20 | 12 | THE COURT:  Sure. |
| 12:20 | 13 | MS. HURST:  I'd like to make a pitch that you |
| 12:20 | 14 | don't need an indirect profits instruction on the sculpt, |
| 12:20 | 15 | because by including all the gross revenue associated with |
| 12:20 | 16 | all the dolls containing the sculpt, they've already |
| 12:20 | 17 | included that as part of their direct profits case. |
| 12:20 | 18 | THE COURT:  Okay. |
| 12:20 | 19 | MS. HURST:  And if you add an indirect profits |
| 12:20 | 20 | instruction at this point, it's gonna cause mass confusion, |
| 12:20 | 21 | and they're going to think, does this now allow to extend to |
| 12:21 | 22 | every product ever sold with the name "Bratz" on it, which |
| 12:21 | 23 | is not permissible. |
| 12:21 | 24 | THE COURT:  Okay.  Just a moment.  I'd like to |
| 12:21 | 25 | exclude lead counsel, but here you are again.  You're |

| | | |
|---|---|---|
| 12:21 | 1 | staying with me now.  Mr. Zeller. |
| 12:21 | 2 | MR. ZELLER:  I'm all in favor of taking a recess |
| 12:21 | 3 | as the Court suggested. |
| 12:21 | 4 | THE COURT:  No, but I've got to prepare that jury |
| 12:21 | 5 | instruction.  That's what I've got to go back and do right |
| 12:21 | 6 | now. |
| 12:21 | 7 | MR. ZELLER:  We actually have a proposed one for |
| 12:21 | 8 | the Court, if you would consider it.  I have provided it to |
| 12:21 | 9 | MGA. |
| 12:21 | 10 | THE COURT:  Give me that proposed instruction.  If |
| 12:21 | 11 | you have a proposed one -- assume for a moment it's being |
| 12:21 | 12 | given, even though it may not be. |
| 12:21 | 13 | MS. HURST:  I'm about 75 percent through with |
| 12:21 | 14 | mine.  I'll e-mail it to you in a few minutes. |
| 12:21 | 15 | THE COURT:  Oh, let's just sit here.  That way I |
| 12:21 | 16 | know I've got it, because I'm running out of time. |
| 12:21 | 17 | MR. McCONVILLE:  Just one other point on the |
| 12:21 | 18 | Brisbois documents.  I was reminded by Mr. Molinski that two |
| 12:21 | 19 | of those file names that are on the thumb drive, which is |
| 12:21 | 20 | all we know, that they're file names, have been dropped as |
| 12:21 | 21 | trade secrets.  So I don't know how we will parse through |
| 12:22 | 22 | the information. |
| 12:22 | 23 | THE COURT:  If I let this into evidence, it would |
| 12:22 | 24 | simply be the thumb drive.  In other words, selective |
| 12:22 | 25 | documents can't be pulled off.  So I've really got to think |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 101 of 103   Page ID #:317477
CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

101

| | | |
|---|---|---|
| 12:22 | 1 | this through, and I haven't been able to. |
| 12:22 | 2 | MS. HURST: All right. Let me just spell-check |
| 12:22 | 3 | it. |
| 12:22 | 4 | THE COURT: You want to just send it to me. |
| 12:22 | 5 | MS. HURST: Is that okay? |
| 12:22 | 6 | THE COURT: Yeah. |
| 12:22 | 7 | MS. HURST: Can I add one more thing, Your Honor? |
| 12:22 | 8 | I'm sorry. |
| 12:22 | 9 | THE COURT: Sure. |
| 12:22 | 10 | MS. HURST: When the Court added combination of |
| 12:22 | 11 | body proportions last night, it added it to the substantial |
| 12:22 | 12 | similarity test related to the drawings. Your Honor, |
| 12:22 | 13 | combination of body proportions would be a compilation of |
| 12:22 | 14 | unprotected elements that could only be protected under the |
| 12:23 | 15 | virtual identity test, and so that does not belong in that |
| 12:23 | 16 | instruction in that part of the chart, Your Honor. |
| 12:23 | 17 | THE COURT: Okay. |
| 12:23 | 18 | MS. HURST: And we would just request that it go |
| 12:23 | 19 | back to the way it was before. |
| 12:23 | 20 | THE COURT: Okay. Mr. Zeller? |
| 12:23 | 21 | MR. ZELLER: There isn't authority for the idea |
| 12:23 | 22 | that it has to be under the virtual identity standard. |
| 12:23 | 23 | That's not correct. |
| 12:23 | 24 | This is, in fact -- the language that we propose, |
| 12:23 | 25 | although we obviously reserve our rights in terms of what we |

CV 04-9049 DOC - 4/7/2011 - Day 48, Volume 1 of 3

| | | |
|---|---|---|
| 12:23 | 1 | think is the proper scope of copyright, is based on this |
| 12:23 | 2 | Court's summary judgment decision. That's where this |
| 12:23 | 3 | language comes from. |
| 12:23 | 4 | There's nothing remarkable about it. In fact, we |
| 12:23 | 5 | think it should be more favorable to us, but -- because we |
| 12:23 | 6 | have a different -- more expansive version or viewpoint on |
| 12:23 | 7 | this, but -- but where we are, we're playing by the rules, |
| 12:23 | 8 | that this was the Court's determination. We think, in |
| 12:24 | 9 | fairness, it ought to be stated to the jury. |
| 12:24 | 10 | THE COURT: All right. Anything else? |
| 12:24 | 11 | MS. HURST: I'm printing now, and I'll e-mail it |
| 12:24 | 12 | to you too. |
| 12:24 | 13 | THE COURT: Thank you. If you e-mail it to me, |
| 12:24 | 14 | I'll go back in chambers now. |
| 12:24 | 15 | Listen, you've got 35 minutes. Go get as |
| 12:24 | 16 | refreshed as you can. |
| 12:24 | 17 | Let me get back to work. |
| 12:24 | 18 | *(Lunch recess held at 12:24 p.m.)* |
| 12:24 | 19 | *(Further proceedings reported by Maria* |
| 12:24 | 20 | *Dellaneve in Volume II.)* |
| 12:24 | 21 | -oOo- |
| 12:24 | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

Case 2:04-cv-09049-DOC-RNB   Document 10446   Filed 04/12/11   Page 103 of 103   Page ID #:317479
CV 04-9049 DOC – 4/7/2011 – Day 48, Volume 1 of 3

103

12:24    1                         -oOo-

12:24    2

12:24    3                   CERTIFICATE

12:24    4

12:24    5       I hereby certify that pursuant to Section 753,

12:24    6 Title 28, United States Code, the foregoing is a true and

12:24    7 correct transcript of the stenographically reported

12:24    8 proceedings held in the above-entitled matter and that the

12:24    9 transcript page format is in conformance with the

12:24   10 regulations of the Judicial Conference of the United States.

12:24   11

12:24   12 Date:  April 7, 2011

12:24   13

12:24   14
12:24
12:24   15             _____
12:24                DEBBIE GALE, U.S. COURT REPORTER
12:24   16                CSR NO. 9472, RPR

12:24   17

12:24   18

12:24   19

      20

      21

      22

      23

      24

      25