UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

THE HONORABLE DAVID O. CARTER, JUDGE PRESIDING

MATTEL INC., et al.,                )
                                    )
                    Plaintiff,      )
                                    )       DAY 48
            vs.                     ) No. CV 04-9049-DOC
                                    )    VOLUME 2  OF 3
MGA ENTERTAINMENT, INC.,            )
                                    )
                    Defendant.      )
_____    )

REPORTER'S TRANSCRIPT OF PROCEEDINGS

JURY TRIAL

SANTA ANA, CALIFORNIA

THURSDAY, APRIL 7, 2011

Maria Beesley-Dellaneve, RPR, CSR 9132
Official Federal Reporter
Ronald Reagan Federal Building, room 1-053
411 West 4th Street
Santa Ana, California 92701
(714) 564-9259

 1    **APPEARANCES OF COUNSEL:**

 2    **FOR THE PLAINTIFF:**  QUINN EMANUEL URQUHART OLIVER & SULLIVAN
                              BY:  MICHAEL ZELLER, ESQ.
 3                            and  JOHN QUINN, ESQ.
                              865 S. FIGUEROA
 4                            10TH FLOOR
                              LOS ANGELES, CALIFORNIA 90017
 5                            (213)443-3000

 6
      FOR THE DEFENDANTS:  ORRICK, HERRINGTON & SUTCLIFFE
 7                            BY:  ANNETTE HURST, ESQ.
                              405 HOWARD STREET
 8                            SAN FRANCISCO, CALIFORNIA 94105
                              (415)773-5700
 9

10
      FOR THE DEFENDANTS:  ORRICK HERRINGTON & SUTCLIFFE
11                            BY:  THOMAS MCCONVILLE, ESQ.
                              4 PARK PLAZA
12                            SUITE 1600
                              IRVINE, CALIFORNIA 92614
13                            (949)567-6700

14
                              KELLER RACKAUCKAS
15                            BY:  JENNIFER KELLER, ESQ.
                              18500 VON KARMAN AVENUE
16                            SUITE 560
                              IRVINE, CALIFORNIA 92612

17

18
      FOR CARLOS MACHADO GOMEZ: LAW OFFICES OF MARK E. OVERLAND
19                            BY:  MARK OVERLAND, ESQ.
                              100 WILSHIRE BLVD.
20                            SUITE 950
                              SANTA MONICA, CA. 90401
21                            (310) 459-2830

22

23

24

25

7577ce05-4795-4152-ada7-78272af64f5e

Page 3

1                          - AND -

2                     SCHEPER KIM & HARRIS LLP
                      BY:  ALEXANDER COTE, ESQ.
3                     601 WEST 5TH STREET_12TH FLOOR
                      LOS ANGELES, CA. 90071
4                     (213) 613-4660

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

7577ce05-4795-4152-ada7-78272af64f5e

```
                                                            Page 4
 1                           I N D E X

 2
     DEFENDANT'S                                           VOIR
 3   WITNESS               DIRECT   CROSS   REDIRECT  RECROSS  DIRE

 4   CARTER BRYANT            6       16

 5

 6

 7

 8                           EXHIBITS

 9
     PLAINTIFF'S                          FOR          IN
10   EXHIBIT  DESCRIPTION            IDENTIFICATION   EVIDENCE

11     2                                                8
       5-51                                             9
12     5-96                                            10
       1329                                             7
13                           EXHIBITS

14
     DEFENDANT'S                          FOR          IN
15   EXHIBIT  DESCRIPTION            IDENTIFICATION   EVIDENCE

16     10565                                          18

17

18

19

20

21

22

23

24

25
```

Page 5

1          SANTA ANA, CALIFORNIA; THURSDAY, APRIL 7, 2011

2                            -oOo-

3          **MR. MCCONVILLE:**  We would request that the arguments be

4     on Monday, just to give also additional time to craft the

5     arguments.

6          **THE COURT:**  I think at this stage that I have offered

7     that, and I think we're going to be proceeding on Friday.  I'd

8     discuss that with you even further.  I mean, if there is illness

9     or incapacity by lead counsel, that's a different matter, and I

10    may be required by law.  But if there is inability or -- I will

11    tell you, I really want to have a serious discussion about that

12    now.

13         **MR. MCCONVILLE:**  Okay.

14         **THE COURT:**  Would you get the jury, please.

15                        (Jury in.)

16         **THE COURT:**  The jury is present, all counsel are

17    present.  Thank you for your courtesy.  If you would be seated,

18    please.

19              And, counsel, would you like to call your next witness,

20    please.

21         **MR. PRICE:**  Yes, Your Honor, we call Carter Bryant.

22         **THE COURT:**  Mr. Bryant, if you would step forward, sir.

23    Mr. Bryant, would you stop at that location and please raise your

24    right hand.

25              CARTER BRYANT, PLAINTIFF'S WITNESS, SWORN

Page 6

1        **THE CLERK:**  Thank you, sir.  If you would walk along the

2   jury railing, please, and if you would be seated in the witness

3   chair.  Once you are seated, would you reintroduce yourself to the

4   jury, please.

5        **THE WITNESS:**  Sure.  I'm Carter Bryant.

6        **THE COURT:**  Would you spell your last name, sir?

7        **THE WITNESS:**  B-r-y-a-n-t.

8        **THE COURT:**  Direct examination by Mr. Price on behalf of

9   Mattel.

10                        DIRECT EXAMINATION

11  BY MR. PRICE

12  **Q**   Mr. Bryant, we're going to put in front of you Exhibit 1329.

13       And do you recognize 1329 as a collection of drawings

14  that you did while you were employed by Mattel?

15       **MS. HURST:**  Objection.  Compound, vague.

16       **THE COURT:**  No, counsel.  It was TX 576, this was the

17  representation, question 15 through 26.

18       **MS. HURST:**  I don't recognize that exhibit number, Your

19  Honor.

20       **THE COURT:**  I don't either.

21       **MR. PRICE:**  1329 is the Winter Wonderland.

22       **THE COURT:**  My apologies.  Absolutely.  And I apologize

23  I thought you were starting with the reverse side.  Thank you very

24  much.  Entirely appropriate.

25

1    BY MR. PRICE

2    **Q**    Do you recognize 1329 as a set of drawings you did while you

3    were at Mattel?

4              **MS. HURST:**  Objection.  Vague.

5              **THE COURT:**  Overruled.

6              **THE WITNESS:**  I think some of them may have been, yes.

7    BY MR. PRICE

8    **Q**    And in particular, if you look at page 1329-00002, you see

9    there, where it says "Winter Wonderland"?

10   **A**    Yes, I do.

11   **Q**    And further down says "Silver Bells"?

12   **A**    Yes.

13   **Q**    And you were working on a project when you were at Mattel for

14   a -- holiday-themed dolls using different song titles; correct?

15   **A**    I think so, yes.

16             **MR. PRICE:**  Your Honor, move Exhibit 1329 into evidence.

17             **THE COURT:**  Received.

18                  (Exhibit 1329 received in evidence.)

19   BY MR. PRICE

20   **Q**    And you were aware of there being various ski or

21   Winter-Wonderland kind of themes with Barbie dolls over the years;

22   correct?

23             **MS. HURST:**  Objection.  Vague.

24             **THE COURT:**  Overruled.

25             **THE WITNESS:**  I don't have any recollection of that, one

Page 8

1    way or the other.

2    BY MR. PRICE

3    **Q**    But you do recall that you yourself, at Barbie, worked on

4    this Winter-Wonderland or Silver-Bells kind of theme project?

5              **MS. HURST:**  Objection.  Vague.

6              **THE COURT:**  Overruled.

7              **THE WITNESS:**  I believe so, yes.

8    BY MR. PRICE

9    **Q**    I'd like to also put in front of you, if we could, Exhibit 2.

10    If you would flip through Exhibit 2.

11              Do you see that these are original Bratz drawings that

12    you did?

13    **A**    Yes.

14    **Q**    And these are the same as the colored pitch drawings that you

15    presented to MGA in the summer of 2000?

16    **A**    Yes.

17              **MR. PRICE:**  Your Honor, move Exhibit 2 into evidence.

18              **MS. HURST:**  Vague as to time.

19              **THE COURT:**  Time period, counsel?

20    BY MR. PRICE

21    **Q**    Did you put Exhibit 2 together in 1999?

22    **A**    I believe so, yes.

23              **MR. PRICE:**  Move Exhibit 2 into evidence.

24              **THE COURT:**  Received.

25                      (Exhibit 2 received in evidence.)

Page 9

1   BY MR. PRICE

2   **Q**    Look at Exhibit 5-51.

3          Do you recognize Exhibit 5-51 as an original sketch that

4   you did?

5   **A**    It looks to be one of my sketches, yes.

6   **Q**    And do you have a recollection as to when did you that

7   sketch?

8   **A**    Not particularly, no.

9   **Q**    Is this is a sketch that pertains to Bratz fashions?

10  **A**    I think so, yes.

11          **MR. PRICE:**  Your Honor, move Exhibit 5-51?

12          **THE COURT:**  Received.

13          (Exhibit 5-51 received in evidence.)

14  BY MR. PRICE

15  **Q**    And if you would look at Exhibit 5-96?

16  **A**    Okay.

17  **Q**    Do you recognize that as an original drawing that you did in

18  connection with some boots for the Fiona doll?

19  **A**    Yes.

20  **Q**    And you see at the bottom, it seems to have an e-mail address

21  there.

22          Do you see that, bottom; right?

23  **A**    Yes.

24  **Q**    And whose e-mail address is that?

25  **A**    I think this is pertaining to maybe Mercedeh Ward.

1  **Q**    And that's Mercedeh Ward mgac.com?

2          Do you see that?

3  **A**    Yes.

4  **Q**    Your recollection is, she joined MGA in the beginning of

5  October 2000?

6          **MS. HURST:**  Objection.  Vague.

7          **THE COURT:**  Overruled.

8          **THE WITNESS:**  I don't remember exactly when she joined

9  MGA.

10  BY MR. PRICE

11  **Q**    Well, when you were in MGA after you actually signed your

12  contract and left Mattel, you met with Mercedeh Ward that month;

13  correct?

14  **A**    I believe so, yes.

15          **MR. PRICE:**  Move Exhibit 5-96 into evidence.

16          **MS. HURST:**  Vague as to time.

17          **THE COURT:**  Received.

18          (Exhibit 5-96 received in evidence.)

19          **MR. PRICE:**  Nothing further.

20          **THE COURT:**  Counsel, cross-examination on behalf of MGA.

21          Counsel, will that complete the TX list also on

22  Exhibit 8?

23          **MR. PRICE:**  Yes.

24          **THE COURT:**  Would you like a recess for five minutes?

25          **MS. HURST:**  Yes.

1          **THE COURT:**  We're getting towards the end of the case.

2   Very few witnesses will be called.

3          You are admonished not to discuss this matter amongst

4   yourselves or form or express any opinion about the case.

5                          (Jury out.)

6          **THE COURT:**  Counsel, why don't we simply take

7   15 minutes, resume at 20 minutes to the hour.

8          **MS. HURST:**  Your Honor, I gave those questions to Nancy.

9          **THE COURT:**  I have got the questions.  I just want to

10   make sure Mr. Quinn has the questions for Mr. Allen.

11          **MR. MCCONVILLE:**  We didn't get their questions in

12   advance.  They gave them to you, and we learned the questions

13   during the course of the examination.

14          **MS. HURST:**  Those were in-camera, Your Honor.

15          **THE COURT:**  I didn't read all of them, but I read a few

16   of them, so we'll take the mystery out of this.  These are not

17   startling questions.  Let's just get transparency.  These are

18   scintillating questions.

19          **MS. HURST:**  I may choose not to ask all of them.  I

20   don't want my work product turned over, Your Honor.

21          **THE COURT:**  I'll give them an idea.  It concerns the

22   definition we talked about.  If you need a recess, I'll take it

23   for 15 minutes.  They are mundane.

24          Why don't you go take a 5- or 10-minute recess.  I think

25   we're going to be up and down.

Page 12

1          Will this be your last witness, Mr. Quinn?

2          **MR. QUINN:**  Yes, Your Honor, subject to the issue about

3     the copyright registration.

4          **THE COURT:**  I thought I already ruled last evening.  I

5     have.

6          **MR. ZELLER:**  You held the matter in abeyance.

7          **THE COURT:**  No, no.  I ruled last evening about

8     12 midnight.  Counsel, they all pertain to reduction of practice,

9     simple as that.

10         Why don't you go take a recess for just a moment.  Be

11    back in 15 minutes.

12         Let's stay on the record for just one moment.  My

13    apologies.

14         Mr. Zeller, I need more research.  The reason I have

15    been so concerned about intentional interference is as follows.

16         Under the California Civil Code section 3426.3, that

17    code section provides, quote:  "If" -- for your trade secret

18    misappropriation claim, quote:  "If willful and malicious

19    misappropriation exists, the Court may award exemplary damages in

20    an amount not to exceed twice any award made under subdivision A

21    or B," end of quote.

22         Thus, all the Court does in this scenario is to take the

23    jury verdict on the liability phase and, in my discretion, choose

24    to double that amount or not.

25         I want you to look at that code section.  There is also

1    no punitive phase under the Copyright Act because a finding of

2    willful infringement in a liability phase triggers statutory

3    damages.  Take a look at 17 U.S.C. section 504(C)2.  That leaves

4    the intentional interference with contract claim as the only one

5    that even has a jury determination of punitives.

6            And what I'm so concerned about, and putting both

7    parties on notice about, is the merits of that claim itself.  I'm

8    pretty certain that, based on case law, that the circuit Court is

9    going to take even a more dim view of this claim.  And, thus, you

10   have seen my concern about a jury looking at punitive damages on a

11   claim based upon moonlighting by the seamstresses and the intern

12   Tumaliuan.  I'm going to leave that tactical decision to you, but

13   I put both parties on notice that I'm concerned about a rule 50 on

14   this, but I'm going to let this go to the jury at this point.

15           Now, we can do some more research this evening, but I'm

16   fairly certain -- not fairly certain, positive that that's the

17   state of law.

18           So take a recess.  We can discuss that this afternoon or

19   this evening, okay?  But I want to start everybody looking at

20   that.

21           MR. ZELLER:  Could I inquire about the registration

22   since --

23           THE COURT:  No.  Let's wait until he is done and get

24   into that whole process.  Let's get Mr. Bryant on the way.

25           MS. HURST:  Your Honor, with respect to that last point,

1    given the Court's qualms about whether the claim can go to the

2    jury at all, clearly there is not clear and convincing for a

3    punitive damages award, and they shouldn't be instructed on it,

4    they shouldn't be asked about it.  It's just the implication that

5    the evidence would even be sufficient to get to that point is

6    prejudicial.

7            **THE COURT:**  I hear your constant argument to the Court

8    about letting this go to the jury, but I have to remind you, I'm

9    happy to devote all of the time I have got to these issues.  But

10   the JMOL was filed recently, the option to the JMOL was only able

11   to be responded to yesterday.  It's 100-some pages, and I have

12   devoted most of your evening to the jury instructions because you

13   both requested that I instruct the jury first.

14            I consistently said that I'm happy to have you argue

15   Friday, and I'm happy to instruct the jury on Monday.  But each of

16   you have requested that I instruct the jury.  Therefore, that's

17   why you have been here to these -- or for these odd hours.

18            Now, what catches me by surprise, Mr. McConville, just

19   so we're having this discussion -- so apparently we're not going

20   to have a recess, which is fine -- this morning I put out to all

21   parties on the record and -- well, informally initially, the

22   opportunity to have this argument take place on Monday.  And each

23   of you told me that it would not take place on Monday, that each

24   of you wanted to go forward on Friday.

25            And the discussion we have had has been whether you

1   wanted me to instruct on Thursday or Monday, and all parties

2   agreed that I was to instruct today, which is -- today Thursday?

3        **MR. MCCONVILLE:**  Yes, sir.

4        **THE COURT:**  Thursday.  Thank you, counsel.

5        What is happening here?  If I have got death or illness,

6   I can understand.  But if I have a sudden change, I think that the

7   Court deserves some explanation.  Because now I have moved a

8   number of criminal cases, moved my civil calendar, created the

9   expectation on all parties, who are honed to a fine edge, what is

10  going on.

11       **MR. MCCONVILLE:**  Your Honor, everything you have said is

12  absolutely correct, the thought process I was discussing with

13  Ms. Keller over the break, and just thought that the better part

14  of presenting the argument would be if we could present it on

15  Monday.

16       **THE COURT:**  Let's unthink that process.  You are going

17  to be going forward on Friday.  Thank you very much.

18       Now let's have a 10-minute recess.

19       (Recess taken, from 1:27 to 1:42.)

20       **THE COURT:**  Jury is present, the alternates are present.

21       Counsel, thank you for your courtesy.

22       And this is cross-examination by Ms. Hurst on behalf of

23  MGA and Mr. Larian.

24

25

7577ce05-4795-4152-ada7-78272af64f5e

Page 16

1                          CROSS-EXAMINATION

2    BY MS. HURST

3    **Q**    Mr. Bryant, if you would please take a look at Exhibit 2 that

4    Mr. Price showed you.

5    **A**    Yes.

6    **Q**    And actually the original of that is in color; right?

7    **A**    Yes.

8    **Q**    That's -- you see that's Exhibit 2-1, Mr. Bryant?

9    **A**    I'm not seeing an exhibit number on there.

10            Yes.

11   **Q**    You see that?

12   **A**    Yes.

13   **Q**    And you recognize that as a drawing that you made; right?

14   **A**    Yes.

15   **Q**    Would you please take a look at your prior testimony on

16   page 3238 of the June 20, 2008 session, starting at line 9.

17            Do you see that?

18            **THE COURT:**  Counsel.  I don't want you to answer

19   anything, sir, until you have a transcript in front of you.

20            What pages are you referring him to?

21            **MS. HURST:**  I was looking at page 3238, starting at

22   line 9, Your Honor.

23   BY MS. HURST

24   **Q**    Mr. Bryant, would it be correct to say that you had done the

25   black-and-white version of this back in 1998?

Page 17

1   **A**    Yes.

2   **Q**    And it was when Mr. Price asked you if you put this together

3   in 1999, that was when you added the color; is that right?

4   **A**    Yes.

5   **Q**    Please look at Exhibit 5-96, which Mr. Price asked you about.

6   **A**    Okay.

7   **Q**    That refers to Fiona's boots; right?

8   **A**    Yes.

9   **Q**    And Fiona was a name that you were using for Bratz after you

10  left Mattel; correct?

11  **A**    Yes.

12  **Q**    And one more.  I ask you to please take a look at

13  Exhibit 10565.

14          Do you have a copy of that in front of you, sir?

15  **A**    Yes, I do.

16  **Q**    And do you recognize that as a drawing that you made?

17  **A**    Yes.

18  **Q**    And you have got some handwritten notes there of the date

19  January 26, 1998; is that correct?

20  **A**    Yes.

21          **MS. HURST:**  Your Honor, move 10565 into evidence.

22          **MR. PRICE:**  I haven't seen it.

23          Is that the original, Your Honor?

24          **THE COURT:**  Come up for a moment, both of you, and take

25  a look at it.

1          Counsel, come on up and take a look.  That way there

2    won't be any misunderstanding about what is being shown.

3          **MR. PRICE:**  I'm told it's not the original, so I object.

4    It's produced by Mr. Bryant, but I object it's not the original.

5          **MS. HURST:**  Your Honor, we have searched all the records

6    and the original is not there.

7          **THE COURT:**  I need a further foundation and description

8    of what is being shown and why.

9    BY MS. HURST

10   **Q**    Is this a gown design that you made for Mattel in or about

11   January 26, 1998?

12   **A**    Yes.

13   **Q**    And this was when you were working in Missouri but still

14   doing contract work for Mattel; is that correct?

15   **A**    Yes.

16         **MS. HURST:**  Your Honor, is that sufficient?

17         **THE COURT:**  I'll receive this.  It's a black-and-white.

18         Can I see that, sir?

19         Received.

20             (Exhibit 10565 received in evidence.)

21         **MS. HURST:**  Thank you, Your Honor.  No further

22   questions.

23         **THE COURT:**  Redirect, Mr. Price.

24         **MR. PRICE:**  No questions.  No time.

25         **THE COURT:**  Just a moment.  You have time.  You have

Page 19

1    time, Mr. Price.

2              **MR. PRICE:**  No questions to be included against my time.

3              **MS. HURST:**  May this witness please be excused.

4              **THE COURT:**  You may be EXCUSED.

5              Counsel, next witness.

6              Would you like a recess to discuss that matter with the

7    Court?

8              **MR. QUINN:**  Yes, thank you, Your Honor.

9              **THE COURT:**  All right.  Ladies and gentlemen, you are

10   going to be up and down.  It's going to be short sessions.

11             You are admonished not to discuss this matter amongst

12   yourselves or form or express any opinion about the case.

13   Probably 10 to 15 minutes again.

14                       (Jury out.)

15             **THE COURT:**  We're on the record.  All counsel are

16   present.  Now, I want you to hark back -- because Mr. Price wasn't

17   here, but you were, Mr. Quinn, and you were, Mr. McConville -- and

18   this was Court's ruling.  And I want to recall the conversation.

19   I'm going to read verbatim what you ordered last night.

20             If you remember the point that MGA was vociferously

21   telling the Court that I was rescuing Mattel, Mr. Quinn.

22             **MR. QUINN:**  Yes, Your Honor.

23             **THE COURT:**  That the Court was rescuing Mattel and

24   Ms. Hurst, Mr. Zeller.

25             **MR. ZELLER:**  Yes, sir.

Page 20

1          **THE COURT:**  Do you recall that?

2          **MR. ZELLER:**  I do.

3          **THE COURT:**  The case had rested, that this was an

4    appealable issue, that Mattel had no right to get in these codes

5    and contracts.

6          Is that correct, Ms. Hurst?

7          **MR. MCCONVILLE:**  Yes.

8          **THE COURT:**  Ms. Hurst.

9          **MS. HURST:**  Yes.

10         **THE COURT:**  I think it was in stronger terms than that.

11   I don't think the record could reflect, at 11:00 or 12:00 o'clock,

12   your displeasure with the Court.  And you will recall the

13   following ruling.  I'm going to read the whole set of rulings that

14   came down about the same time, not the same order necessarily.  I

15   will allow a records custodian to come in and admit the contracts

16   and code of conduct and employee handbooks at issue on behalf of

17   Mattel.  And I felt it was extraordinarily prejudicial to Mattel

18   that if a mistake had been made, that Mattel would be precluded at

19   this late date, even on rebuttal, and not being allowed to get

20   into the contracts and to get into this area.

21         Do you recall that, Mr. Zeller?

22         **MR. ZELLER:**  I do.

23         **THE COURT:**  Do you recall Ms. Hurst's response to that?

24         **MR. ZELLER:**  I do.

25         **THE COURT:**  I basically, I think, politely told you to

1   take it to the circuit.

2            **MS. HURST:**  No swear words were used, Your Honor.

3            **THE COURT:**  The end result is, take it to the circuit.

4   There was no rescuing of Mattel going on.  But I thought after

5   three months it was extraordinary that this case would not go to

6   the jury with as much evidence as I thought was legally

7   significant and sufficient.  And this was something that Mattel

8   was going to be allowed to do.  We HAD always talked about the

9   contracts, we had always talked about the codes of conduct.  And

10  Mr. Eckert had been examined, at least on the codes of conduct.

11  And I felt that even those weren't explicit, that you would also

12  reserve the right on the record.

13           Do you recall this conversation?

14           **MR. QUINN:**  This is coming back to me, yes.

15           **THE COURT:**  The next part of the conversation -- and

16  you'll see it in the daily transcript -- is as follows, and I'll

17  read that to you:  "I'm going to delay taking judicial notice of

18  the copyright registration submitted by Mattel.  However, the

19  other registrations by Mattel that are already in evidence may be

20  discussed because Mr. Eckert testified in his personal capacity

21  and the hearsay on those documents is admissible against Mattel as

22  a party admission against interest."

23           Is this coming back to counsel in any way?

24           "However, the hearsay and the registration that is

25  supportive of Mattel's position in this case is not obviously a

1   party admission against interest.  It goes to the heart of the

2   case.  Many courts actually treat the registration as Prima facie

3   evidence of ownership, and that would be entirely improper for a

4   jury to do in this case."

5           I told you that I had handed out a Time Warner case many

6   days before, and also this afternoon.

7           Do you recall that?

8           **MR. MCCONVILLE:**  Yes, sir.

9           **THE COURT:**  And I told you to read it.

10          Do you recall that?

11          And I mentioned judge Gould specifically, who sat on the

12  panel, and footnote 4, which I not only highlighted but directed

13  you to early in the afternoon.  And it makes it clear that

14  judicial notice should not be taken when the ownership of the

15  copyright is at issue.  If the jury finds ownership, then I will

16  properly take judicial notice of the recordation and registration.

17  And I specifically said I'm not going to allow Mattel to call an

18  attorney who is a records custodian to come and admit the

19  corporate registrations and recordation.  Then I went on.

20          So your recollection is refreshed because I know you

21  were tired when you left, and we talked about the rolling statute

22  of limitations.  And among the many orders, we said last evening

23  that the Court was concerned about the rolling statute of

24  limitations instructions on copyright.

25          I recognized the near impossibility on this issue, and I

1   had also intimated to you and said on the record on many occasions

2   that the relation-back ruling, now that both parties have agreed,

3   that the district court committed error in its initial relation-

4   back ruling.  That's not a criticism of Judge Larson, but I think

5   all parties have stipulated to and understand that error.

6            There is literally no good solution to what the prior

7   district court did, and this will ultimately have to be sorted out

8   through a panel of Appellate judges' wisdom. and MGA once again

9   implored THE Court to -- do what, Mr. Quinn -- relate back.

10          **MR. QUINN:**  Yes.

11          **THE COURT:**  Recall that?

12          **MR. QUINN:**  I do.

13          **THE COURT:**  And the Court denied MGA's request to relate

14  back, feeling that this should go to the jury.

15          Now, has this refreshed your recollection?

16          **MR. QUINN:**  Somewhat.  I admit I'm bit foggy-headed at

17  this point.

18          **THE COURT:**  Mr. Zeller was right on top of this.

19          Does this refresh your recollection, Ms. Hurst?

20          **MS. HURST:**  Your Honor, mine did not need refreshing.

21  Remarkably, I remembered the Court's order.

22          **THE COURT:**  That's my order.

23          Now, when I bring the jury back in, are there further

24  witnesses?  Because you have time left.

25          Do you want to call Ms. Hurst?

1           Just joking with you on the record.  Check as a team,

2    take a few moments.

3           **MS. HURST:**  While they're conferring, can we go out and

4    confer about our surrebuttal witness?

5           **THE COURT:**  I'm just wondering why we're here.  I really

6    think that this should be the end of the lawsuit, quite frankly,

7    but I leave that to each of the parties.  And you have two hours

8    left, or three hours, and I don't want Mattel disadvantaged only

9    having a SMALL period of time.

10          In fact, Ms. Hurst, I would indicate to you that

11   regardless, if more witness are called, I'm not going to quibble

12   over 25 or 20 minutes.  If you are calling more witnesses, I would

13   be entitled to extend the time period a little bit because Mattel

14   is not going to be in a position of not examining at all.

15          **MS. HURST:**  Somehow we knew you would do that.

16          **THE COURT:**  I mean 10, 15, 20 minutes, but I'm not going

17   to have one party placed in such a complete disadvantage when --

18          **MR. MCCONVILLE:**  Now that you have reconsidered that

19   position, can we play the deposition of Tyler Snyder, please?

20          **THE COURT:**  No.  No.

21          **MR. QUINN:**  Hong Kong dolls?

22          THE COURT:  No.

23          **MR. ZELLER:**  Brazil?

24          **THE COURT:**  The circuit will know we're joking.  Those

25   are two rulings that, each side has indicated to the Court, they

1    think the Court should have let in the Hong Kong litigation and

2    Tyler Snyder, who allegedly is the person who got direct orders

3    from Mattel to sneak into showrooms.

4            I have declined that.  No depositional testimony.  If

5    the circuit reverses me on that, so be it.  But I said from the

6    beginning this could not be a fairer trial for both sides unless

7    the Court was rather overbearing, frankly, threatened both sides

8    to get their witnesses into court.  I think both of you would have

9    been disadvantaged.

10           Mr. Larian would have appeared, Mr. Eckert would have

11   appeared.  Carter Bryant, in my impression, would have never

12   appeared, amongst others.  So for the seven days he was here, at

13   least the jury has the ability to see and hear him.  And that was

14   among many witnesses from Kuemmerle, so I won't change.  I think

15   there is a very good reason.  I hope the circuit agrees with me.

16   If they disagree, probably MGA will be entitled to a new trial.

17           **MS. HURST:**  Oh, boy.

18           **THE COURT:**  I'll rest with what I said, and that is no

19   depositional testimony because it would be inherently unfair and,

20   at this late date, it would be prejudicial to Mattel.

21           Agreed, Mr. Quinn?

22           **MR. QUINN:**  Yes, Your Honor.

23           **MS. HURST:**  We'll trade you Tyler Schneider for that

24   intentional interference claim.

25           **THE COURT:**  What are we going to do with the jury?

Page 26

1           **MS. HURST:**  Can we have 10 minutes to confer, Your

2    Honor?

3           **THE COURT:**  Ten minutes.

4           **MR. PRICE:**  Can I put one thing on the record that the

5    parties agreed to.  Just so that you are not shocked, in closing,

6    when we pull up the testimony during the trial, both parties have

7    agreed that we can use those little pictures to remind the jury of

8    who the witness was.  Usually he --

9           **THE COURT:**  Any time you both agree, I'll accede to your

10   wisdom.  Any preparation you finally enter into, believe it or

11   not, I'll do anything if you ever agree.  Well, not anything,

12   but --

13          **MS. HURST:**  We agreed to Tyler Bradley.

14          **THE COURT:**  Let's get busy, though.  I don't want this

15   jury sitting.  And then whatever you are doing, I have to take a

16   few moments to get the instructions and read.  While I'm reading,

17   you'll see a monitor over here.  I'm going to need Adrian up,

18   Nancy and the crew.  I'll be the guinea pig; therefore, if it

19   doesn't look good or feel good, I'm the one who will look foolish

20   instructing the jury.  But that way, lead trial counsel will see

21   what I'm doing today, and you can adjust accordingly so you make

22   an appropriate presentation tomorrow.

23          **MR. QUINN:**  Your Honor, we had two requests to take

24   judicial notice that were hanging fire, one the subsequent

25   pleading history -- I raised this the other night -- since 2006.

7577ce05-4795-4152-ada7-78272af64f5e

1           **THE COURT:**  You did, and I'll clean that up for you

2     tonight.  You have got a judicial notice hanging fire, also.

3     We'll clean all that up tonight.  Let's get back to the jury right

4     now.

5           **MS. HURST:**  That should not be before the jury.

6           **THE COURT:**  Let's get back to this jury right now.

7           **MR. QUINN:**  But this should be read to the jury.

8           **MS. HURST:**  No.  It's irrelevant.

9           **THE COURT:**  Not at this time.  Not at this point.

10          **MR. QUINN:**  And the request to take judicial notice

11    about the trademark application Moxie Girl.  We have a certified

12    copy.

13          **THE COURT:**  That should be received as received by the

14    Court.  If you have the certified copy, it's appreciated.  It's

15    received into evidence for Moxie Girl.

16          Let the record reflect that counsel, they very rarely

17    stipulated to the other parties' offer in this case concerning

18    registration and have, quite frankly, made each party go out and

19    get certified registrations.

20          **MS. HURST:**  Your Honor, my concern on that one is, it's

21    going to be misleading because this data is not usually available

22    on the PTO database for 60 days after filing.  We have judicial

23    notice of that fact, as well.

24          **THE COURT:**  No.  Received.

25          Mr. Quinn would like to make a record concerning the

Page 28

1    witness that they would call so he has a record?

2          MR. QUINN:  Thank you, Your Honor.  Mr. Zeller will do

3    it.

4          MR. ZELLER:  Your Honor, the Court has been provided the

5    certified copies of the registrations and the recordation

6    documents that we requested that the Court issued notice of.  With

7    respect to those documents, the registrations and the

8    recordations, if Mattel were to call a witness, it would call John

9    Jennison.  He is an attorney.  He is an attorney who was actually

10   personally involved, an outside lawyer who was personally and

11   directly involved in the preparation of those documents, their

12   submission to the copyright office and, therefore, would have

13   percipient knowledge with respect to their creation, their

14   maintenance, their authenticity, and their contents.

15         THE COURT:  As last evening, the Court will once again

16   cite back the Time Warner case, Judge Gould of the Ninth Circuit

17   as the authority.  The Court will hold to its ruling that I made

18   last evening.

19         Now, anything further on behalf of Mattel?

20         MR. QUINN:  No, Your Honor.

21         THE COURT:  Anything further on behalf of MGA?

22         MR. MCCONVILLE:  No, Your Honor.

23         THE COURT:  Can we bring the jury in, in just a moment,

24   and can I have maybe 10 more minutes to just get the instructions

25   and get set up.  There is no reason to bring them in and tell them

1    that you have rested and send them out.  Why don't you go use

2    restroom.  It's actually not a large set of instructions.  It will

3    take me about 45 minutes to an hour to read.  Maybe an hour.

4    Counsel, 2:30.

5         Nancy, would you tell the jury I'll bring them in about

6    2:30.

7         (Brief pause in proceedings.)

8         **THE COURT:**  Back on the record.  The jury is not

9    present.

10        I'm handing out a copy of the instructions.  First, I'm

11   going to grant rule 50(a) on only the punitive elements of

12   intentional interference with contractual relevance claim.  There

13   is simply no basis in this record for finding that MGA or Larian

14   acted with malice, oppression, or fraud with regard to the

15   seamstresses or the intern Tumaliuan, and Mr. Bryant's two-week

16   stint at Mattel.

17        The rest of the conduct is superceded by the trade

18   secret misappropriation statute, isn't relevant to this

19   determination.  Thus, I'm still sending it to the jury on

20   intentional interference claim, but I'm not instructing the jury

21   on the threshold punitives as to that claim only.

22        As to the two remaining claims, Mr. Quinn, you are going

23   to the jury on malice, on the trade secret misappropriation, and

24   you are going to jury on malice on the copyright.

25        Now, the eventual effect of that may be that there

Page 30

1    wouldn't be a punitives phase for one reason.  If my research is

2    correct, Mr. Zeller, the court has the potentiality of doubling

3    it.  So 500 million, a billion, or any mark in between.  We'll do

4    some more research and discuss that.  Also, statutory damages on

5    the copyright.  We'll all do some more research tonight and

6    discuss that.

7             I'm also not giving MGA's requested instruction on the

8    privilege of competition affirmative offense instruction.  It has

9    no relevance to the intentional experience claim, in this Court's

10   opinion.  This a final decision.

11            Nancy, bring out the jury, please.

12            **MR. QUINN:**  Is Your Honor instructing on the Kohl's

13   damages?

14            **THE COURT:**  Mr. Quinn, state your request again.  My

15   apologies.  State your request again.

16            **MR. QUINN:**  We would request that the Court advise THE

17   jury that the evidence that was presented regarding damages that

18   MGA incurred by reason of the Kohl's transaction was not to be

19   considered by the jury.

20            **THE COURT:**  I apologize.  You made that request before.

21   MGA.

22            It's about 5 to 6 million DOLLARS in damages, aren't

23   there?

24            **MR. ZELLER:**  Right.

25            **THE COURT:**  Mr. Quinn, do you have a proposed

Page 31

1    instruction to that effect if not?

2           MR. QUINN:  I can write one out.

3           THE COURT:  Let's see what MGA's position is.  I don't

4    think anybody is in this lawsuit for $5 million, but it might be

5    an appropriate instruction.  Let me think about that.

6           MS. HURST:  Your Honor, our position is that would be

7    unnecessary because the instructions already fairly make clear

8    what is allowable and what is not.

9           THE COURT:  In what sense?

10          MS. HURST:  They define what the claims are, what the

11   elements of proof are, what damages are available, and the jury

12   can consider all of that fairly.

13          THE COURT:  Why don't you handwrite that instruction,

14   Mr. Quinn.  I can process it.

15          Mr. Zeller?

16          Mr. Quinn, think this through:  Is that potentially

17   damaging to Mattel; does it have the effect on the jury of being a

18   correct instruction from your standpoint, but impliedly telling

19   the jury that the Court must have reached a determination and is,

20   therefore, reserving the right to impose damage.

21          In other words, there is one thing being right, legally

22   right, and there is one thing of giving the impression to the jury

23   what you are asking for a billion dollars and 5 million is on the

24   stake on offsets.

25          MR. QUINN:  I understand what the Court is saying.

1          **THE COURT:**  I leave that to you.  I want to get that on

2     the record.  I don't want in the future any concern.  Because it

3     could have the impression on the jury that, in reserving that, the

4     Court has decided that there is liability involving Mattel because

5     that was a part of the affirmative presentation by MGA, and that

6     the Court has made a determination about that, and that can carry

7     over to your trade secret misappropriation and your copyright.

8     Let me consider that.  I'll take it back, and we'll process it,

9     see if I like it or not.

10          **MR. ZELLER:**  Then did Your Honor have a copy of the

11    standard privilege instruction, as well?

12          We did type one up.

13          **THE COURT:**  Thank you very much.

14          (Brief pause in proceedings.)

15          **THE COURT:**  Back on the record.  All counsel are

16    present.

17          That's, I believe, an incomplete instruction, Mr. Quinn,

18    but I propose the following:

19          "You have heard evidence concerning damage that MGA

20    entertainment Inc. claims it incurred by reason of a transaction

21    between Mattel Inc. and Kohl's corporation.  The calculation of

22    damages, if any, from this alleged conduct is one that the Court

23    will make."

24          **MR. QUINN:**  Well, that suggests -- then you should tell

25    them that the entire issue is something the Court is going to

Page 33

1    resolve.  I would rather --

2              THE COURT:  The instruction you gave me is incomplete

3    and it's misleading.  If you want me to give this one, I will.  If

4    you object to it, I'm not going to give it.  We're going to move

5    on.

6                   (Counsel confer)

7              MR. QUINN:  I would rather the Court said nothing than

8    said that.

9              THE COURT:  Get the jury.

10                      (Jury in.)

11             THE COURT:  Ladies and gentlemen, if you would be seated

12   for just a moment.  The jury is present and the alternates are

13   present.

14             And on behalf of Mattel, Mr. Quinn, are you resting?

15             MR. QUINN:  Yes, Your Honor, Mattel rests --

16             THE COURT:  And on behalf of.

17             MR. QUINN:  -- subject to the evidentiary issues that

18   we're going to discuss.

19             THE COURT:  And on behalf of MGA, are you resting?

20             MR. MCCONVILLE:  Yes, sir, subject to the same

21   evidentiary issues.

22             THE COURT:  Okay.  Ladies and gentlemen, the case is

23   concluded as far as the evidence is concerned, as we promised.

24   I'm going to come down and read to you from the lectern.  I have

25   always preferred to in long cases.  There is a lot of things that

7577ce05-4795-4152-ada7-78272af64f5e

Page 34

1    just distract me.  And tomorrow I'm going to allow counsel to read

2    from the lectern also.  I'd rather have them face you.  I think

3    it's a little bit more appropriate than the angle that they have

4    had to look at you for the last three months.

5              I'm going to give you a copy of the instructions that I

6    read to you today after their final arguments on Friday.  When I'm

7    done reading the instructions today, you'll be done today.  I'll

8    send you home and promptly tomorrow at 8:30 counsel will begin

9    their arguments.

10             Do you have time for a story?  In 1835 a French

11   gentleman named Alexander de Tocqueville came to the United

12   States.  I met him.  He's a wonderful man, in 1835.  And he had

13   two things to observe about America that sets us apart from any

14   other country in the world.  And I hate that phrase "second to

15   none."  He said, in studying our political system and the

16   judiciary he didn't believe a judge in his home country, France,

17   or a panel of judges -- because in France, in the European system,

18   they often sit as a tribunal of three judges -- that their judges

19   would make a significantly different decision than an individual

20   American judge.

21             But he was amazed at our system and by our system,

22   because he said two things occur.  For some reason in America you

23   have decided to empower people in your country and make them

24   jurors, and when you do that you give them a sense of ownership in

25   your great democracy.  They're not dictated to by somebody, they

7577ce05-4795-4152-ada7-78272af64f5e

1   share they and participate in this democracy, and therefore you

2   give everyday people with common sense and wisdom the ability to

3   apply your laws.

4           The second thing he said that was so astounding about

5   our country was that our community accepts the verdicts from you,

6   the people, much more readily than from an individual jurist or

7   judge.

8           So therefore, when I instruct you on the law and

9   throughout your deliberations, you are now held to that same high

10  standard that you have exhibited throughout these proceeding.

11  You'll eventually become judges of the facts and the application

12  of the law.  That's my story for today to you.

13          Alexander, by the way, is dead, but his thoughts live

14  on.

15          So members of the jury now, that you have heard all the

16  evidence, it is my duty to instruct you as to the law of this

17  case.  A copy of these instructions will be sent with you to the

18  jury room when you deliberate.  You must not infer from these

19  instructions or from anything that I may say or do, or have said

20  or done as a judge, as indicating that I have an opinion regarding

21  the evidence of what your verdict should be.

22          It is your duty to find the facts from all the evidence

23  in the case.  To those facts you will apply the law as I give it

24  to you.  You must follow the law as I give it to you whether you

25  agree with it or not.  And you must not be influenced by any

7577ce05-4795-4152-ada7-78272af64f5e

1   personal likes or dislikes, opinions, prejudices or sympathy.

2   That means that you must decide the case solely on the evidence

3   before you.

4          You will recall that you took an oath to do so at the

5   beginning of the case.  In following my instructions you must

6   follow all of them and not single out some and ignore others.

7   They are all important.

8          To help you follow the evidence, I'll give you a brief

9   summary of the positions of the parties.  This is a lawsuit

10  between Mattel, MGA Entertainment, MGA Entertainment Hong Kong

11  Limited and Mr. Isaac Larian.

12         Mattel claims that MGA Entertainment Inc., MGA

13  Entertainment Hong Kong Limited, and Isaac Larian infringed its

14  copyrights.  MGA Entertainment Inc, MGA Entertainment Hong Kong

15  Limited and Isaac Larian deny this claim.

16         Mattel also claims that MGA Entertainment Inc. and Isaac

17  Larian misappropriated its trade secrets and intentionally

18  interfered entered with its contractual relations.  MGA

19  Entertainment Inc. and Isaac Larian deny this claim.

20         MGA Entertainment claims that Mattel Inc.

21  misappropriated its trade secrets.  Mattel denies this claim.

22         When a party has the burden of proof on any claim or

23  affirmative defense by a preponderance of the evidence, it means

24  that you must be persuaded by the evidence that the claim or

25  affirmative defense is more probably true than not true.  You

1   should base your decision on all evidence regardless of which

2   party presented it.

3           When a party has the burden of proving any claim or

4   defense by clear and convincing evidence, it means that you must

5   be persuaded by the evidence that the claim or defense is highly

6   probable.  This is a higher standard of proof than proof by a

7   preponderance of the evidence.  You should base your decision on

8   all of the evidence regardless of which party presented it.

9           You should decide the case as to each party separately.

10  When there are multiple claimants or multiple defendants, you must

11  consider the elements of the claims and defenses separately for

12  each claimant and each defendant.  Each claimant and defendant

13  must carry its burden of proof as to each claim or affirmative

14  defense.  Unless otherwise stated, the instructions apply to all

15  parties.

16          All parties are equal before the law, and a corporation

17  is entitled to the same fair and conscientious consideration by

18  you as any party.

19          Mattel Mexico, Gustavo, or Carlos Gustavo Machado Gomez

20  and MGA Mexico are no longer parties this case.  Do not speculate

21  on the reasons.  You should decide this case as to the remaining

22  parties.

23          The evidence you are to consider in deciding what the

24  facts are consist of, first, the sworn testimony of any witness;

25  second, the exhibits which are received into evidence; and third

Page 38

1    any facts to which the lawyers have agreed.

2              In reaching your verdict you may consider only the

3    testimony exhibits received into evidence.  Certain things are not

4    evidence and you may not consider them in deciding what the facts

5    are.  I'll list them for you.

6              First, arguments and statements by lawyers are not

7    evidence.  The lawyers are not witnesses.  What they say in their

8    opening statements and in their closing arguments tomorrow and at

9    other times is intended to help you interpret the evidence, but it

10   is not evidence.  If the facts as you remember them differ from

11   the way the lawyers have stated them, your memory of them

12   controls.

13             Second, questions and objections by lawyers are not

14   evidence.  Attorneys have a duty to their clients to object when

15   they believe a question is improper under the rules of evidence.

16   You should not be influenced by the objection or by the Court's

17   ruling on it.

18             Third, testimony that has been excluded or stricken, or

19   that you have been instructed to disregard is not evidence and

20   must not be considered.  In addition, sometimes testimony and

21   exhibits are received only for a limited purpose.  And when I give

22   a limiting instruction, you must follow it.

23             Fourth, anything you may have seen or heard when the

24   Court was not in session is not evidence.  You are to decide the

25   case solely on the evidence received at this trial.

1        Some evidence may be admitted for a limited purpose

2    only.  When I instruct you that an item of evidence has been

3    admitted for a limited purpose, you must consider it only for that

4    limited purpose and for no other.

5        Evidence may be either direct or circumstantial.  Direct

6    evidence is direct proof of a fact, such as testimony by a witness

7    about what that witness personally saw, or heard, or did.

8        Circumstantial evidence is proof of one or more facts

9    from which you could find another fact.

10       By way of example, if you wake up in the morning and see

11   that the sidewalk is wet, you may find from that fact that it

12   rained during the night.  However, other evidence such as a

13   turned-on garden hose may provide a different explanation for the

14   presence of water on the sidewalk.  Therefore, before you decide

15   that a fact has been proved by circumstantial evidence, you must

16   consider all the evidence in the light of reason, experience, and

17   common sense.

18       You should consider both kinds of evidence.  The law

19   makes no distinction between the weight to be given to either

20   direct or circumstantial evidence.  It is for you to decide how

21   much weight to give to any evidence.

22       There are rules of evidence that control what can be

23   received into evidence.  When a lawyer asks a question or offers

24   an exhibit into evidence and a lawyer on the other side thinks it

25   is not permitted by the rules of evidence, that lawyer may object.

Page 40

1   If I overrule the objection, the question may be answered or the

2   exhibit received.  If I sustain the objection, the question cannot

3   be answered and the exhibit cannot be received.  Whenever I

4   sustain an objection to a question, you must ignore the question

5   and must not guess what the answer might have been.

6          Sometimes I may order that evidence be stricken from the

7   record and that you disregard or ignore the evidence.  That means

8   that when you are deciding the case, you must not consider the

9   evidence that I told you to disregard.

10          In deciding the facts in this case, you may have to

11   decide which testimony to believe and which testimony not to

12   believe.  You may believe everything a witness says, or part of

13   it, or none of it.

14          Proof of a fact does not necessarily depend on the

15   number of witnesses who testify about it.  In considering the

16   testimony of any witness, you may take into account, first, the

17   opportunity and ability of the witness to see or hear or know the

18   things testified to.

19          Second, the witness' memory.

20          Third, the witness' manner while testifying.

21          Fourth, the witness' interest in the outcome of the case

22   and any bias or prejudice.

23          Fifth, whether other evidence contradicted the witness'

24   testimony.

25          Sixth, the reasonableness of the witness' testimony in

1   light of the evidence.

2            Seventh, any other factors that bear on believability.

3            The weight of the evidence as to a fact does not

4   necessarily depend on the number of witnesses who testify about

5   it.

6            The parties have agreed to certain facts that were

7   placed in evidence.  You should, therefore, treat these facts as

8   having been proved.  The Court has decided to accept as proof

9   certain facts even though no evidence has been introduced on those

10  subjects.  You must accept these facts as true.

11           A deposition is a sworn testimony of a witness taken

12  before trial.  A witness is placed under oath to tell the truth,

13  and lawyers for each party may ask questions.  The questions and

14  answers are recorded.  When a person is unavailable to testify at

15  trial, the deposition of that person may be used at trial.  The

16  deposition of a number of witnesses were taken in this case.  You

17  should consider deposition testimony presented to you in court in

18  lieu of live testimony insofar as possible in the same way as if

19  the witness had been present to testify.

20           The evidence that a witness has lied under oath on a

21  prior occasion or given inconsistent testimony under oath may be

22  considered along with all other evidence in deciding whether or

23  not to believe the witness and how much weight to give to the

24  testimony of that witness and for no other purpose.

25           Evidence has been presented to you in the form of

Page 42

1    answers of one of the parties to written interrogatories submitted

2    by the other side.  These answers have been given in writing and

3    under oath, before the actual trial, in response to questions that

4    were submitted in writing under established court procedures.  You

5    should consider the answers insofar as possible in the same way as

6    if they were made from the witness stand by the party that

7    responded to the written interrogatories.

8            People have a legal right not to disclose what they told

9    their attorney in confidence, because the law considers this

10   information privileged.  People may exercise this privilege freely

11   and without fear of penalty.  You must not use the fact that a

12   witness exercised this privilege to decide whether he or she

13   should be believed.  Indeed, you must not let it affect any of

14   your decisions in this case.

15           Some witnesses, because of education or experience, are

16   permitted to state opinions and reasons for those opinions.

17   Opinion testimony should be judged just like any other testimony.

18   You may accept it or reject it and give it as much weight as you

19   think it deserves considering the witness' education and

20   experience, the reasons given for the opinion, and all the other

21   evidence in the case.

22           Certain charts and summaries not received into evidence

23   have been shown to you in order to help explain the contents of

24   books, records, documents or other evidence.  They are not

25   themselves evidence or proof of any facts.  If they do not

Page 43

1    correctly reflect the facts or figures shown by the evidence in

2    the case, you should disregard these charts and summaries and

3    determine the facts from the underlying evidence.

4          Certain charts and summaries have been received into

5    evidence to illustrate information brought out in the trial.

6    Charts and summaries are only as good as the underlying evidence

7    that supports them.  You should, therefore, give them only such

8    weight as you think the underlying evidence deserves.

9          Now, why don't you stand up for a moment and just

10   stretch because we're going to do that a couple times.  We're not

11   going to leave for a moment.

12          (Brief pause in proceedings.)

13          **THE COURT:**  Declaratory relief.

14          Mattel Incorporated claims that its January 4, 1999

15   Employee Confidential Information and Inventions Agreement with

16   Carter Bryant assigned to Mattel Carter Bryant's right, title, and

17   interest in his Bratz-related ideas and works.  Paragraph 2A of

18   the Employee Confidential Information and Inventions Agreement

19   provides:  "I agree to communicate to the company as promptly and

20   fully as practicable all inventions conceived or reduced to

21   practice by me alone or jointly by others at any time during my

22   employment by the company.  I hereby assign to the company and/or

23   its nominee all my right, title, and interest in such inventions,

24   and all my right, title and interest in any patents, copyrights,

25   patent applications, or copyright applications based thereon.  I

Page 44

1   will assist the company and/or its nominees without charge, but at

2   no expense to me, at any time in every proper way to obtain for

3   its use and/or their benefit, patents and copyrights for all such

4   inventions anywhere in the world, and to enforce its and/or their

5   rights in legal proceedings."

6           The term "inventions" in the January 4, 1999 Employee

7   Confidential Information and Inventions Agreement between Mattel

8   Inc. and Carter Bryant includes "discoveries, improvements,

9   processes, developments, designs, know-how data computer programs

10  and formulae."  However, the parties dispute whether the term

11  "inventions" in the January 4, 1999 Employee Confidential

12  Information and Inventions Agreement between Carter Bryant and

13  Mattel Inc. also includes ideas.  And this is a dispute that you

14  must resolve.

15          In order to exercise ownership over a Carter Bryant

16  idea, Mattel must prove that the term "inventions" includes ideas.

17          The term "at any time during my employment" in the

18  January 4, 1999 Employee Confidential Information and Inventions

19  Agreement refers to the scope of Carter Bryant's employment

20  between January 4, 1999 and October 19, 2000.  However, the

21  parties dispute whether the term also extends beyond the scope of

22  Carter Bryant's employment and includes nights and weekends.  This

23  is another dispute that you must resolve.

24          In order to own any of Carter Bryant's inventions,

25  first, Mattel must prove that the inventions were conceived or

7577ce05-4795-4152-ada7-78272af64f5e

1    reduced to practice between January 4, 1999 and October 19, 2000.

2    And second, Mattel must also prove that the inventions were

3    conceived or reduced to practice at any time during Carter

4    Bryant's employment either because, A, the inventions were

5    conceived or reduced to practice during working hours and while

6    performing tasks for Mattel; or B, the term "at any time during my

7    employment" extends beyond working hours, nights and weekends, and

8    to tasks not performed for Mattel.

9         In deciding what the term of a contract means you must

10   decide what the parties intended at the time the contract was

11   created.  You may consider the usual and ordinary meaning of the

12   happening used in the contract as well as the circumstances

13   surrounding the making of the contract.  The following

14   instructions may help you to interpret the terms of the contract.

15        You should assume that the parties intended the words in

16   their contract to have their usual and ordinary meaning unless you

17   decided that the parties intended the words to have a special

18   meaning.  You should assume that the parties intended technical

19   words used in the contract to have the meaning that is usually

20   given to them by people who work in that technical field unless

21   you decide that the parties clearly used the words in a different

22   sense.

23        In deciding what the words of a contract mean to the

24   parties to the contract, you should consider the whole contract,

25   not just isolated parts.  You should use each part to help you

Page 46

1    interpret the others so that all the parts make sense when taken

2    together.   In deciding what the words in a contract meant to the

3    parties you may consider how the parties acted after the contract

4    was created but before any disagreement between the parties arose.

5    In cases of uncertainty not removed by the preceding rules, the

6    language of a contract should be interpreted most strongly against

7    the party who caused the uncertainty to exist.

8            I want you to stand up again.   We'll move to the next

9    section in just a second.

10                    (Brief pause in proceedings)

11        **THE COURT:**   Introduction.   Copyright infringement.

12           Mattel claims ownership of certain copyrights and seeks

13    damages against MGA Entertainment Inc., Isaac Larian and MGA

14    Entertainment Hong Kong Limited for copyright infringement.   MGA

15    Entertainment Inc., Isaac Larian and MGA Entertainment -- and

16    you'll see it referred to as HK which is obviously Hong Kong --

17    Limited deny infringing the copyright.

18           Mattel has the burden of proving by a preponderance of

19    the evidence that it is the owner of the copyrights, and that MGA

20    Entertainment Inc., Isaac Larian, and/or MGA Entertainment Hong

21    Kong Limited copied original elements of the copyrighted works.

22           "Preponderance of the evidence" means that you must be

23    persuaded by the evidence that it is more likely true than not

24    true that the copyrighted work was infringed.

25           Copyright is the exclusive right to copy.   This right to

7577ce05-4795-4152-ada7-78272af64f5e

1   copy includes the exclusive rights to, first, authorize or make

2   additional copies or otherwise reproduce the copyrighted work in

3   copies.

4              Second, recast, transform, and adapt the work; that is,

5   prepared derivative works based upon the copyrighted work.

6              Third, distribute copies of the copyrighted work to

7   public by sale or through a limited license.

8              And fourth, display publicly a copyrighted pictorial

9   work, graphic work, or sculptural work.

10             It is owner of a copyright who may exercise these

11  exclusive rights to copy.  The term "owner" includes the author of

12  the work or the assignee.

13             In general, copyright law protects against distribution

14  of substantially similar copies of the owner's copyrighted work

15  without the owner's permission.  An owner may enforce these rights

16  to exclude others in an action for copyright infringement.  The

17  works at issue are the sketches, drawings and sculpts, if any,

18  that Mattel has proven it owns.  These works are known as

19  pictorial works, graphic works, and sculptural works.

20             These works can be protected by the copyright law.  Only

21  that part of the works comprised of original works of authorship

22  fixed in a tangible medium of expression from which it can be

23  perceived, reproduced or otherwise communicated, either directly

24  or with the aid of a machine or device is protected by the

25  Copyright Act.

1          Copyright protection for an original work of authorship

2     does not extend to any idea or concept regardless of the forum in

3     which it is described, explained, illustrated, or embodied.

4          Copyright law allows the author of an original work to

5     prevent others from copying the way, or forum the author used to

6     express the ideas in the author's work.  Only the particular

7     expression of an idea can be copyrighted.

8          Copyright law does not give the author the right to

9     prevent others from copying or using the underlying ideas

10    contained in the work, such as procedures, processes, systems,

11    methods of operation, concepts, principles or discoveries.

12         The right to exclude others from copying extends to only

13    how the author expresses the ideas in copyrighted work.  The

14    copyright is not violated when someone uses an idea from a

15    copyrighted work as long as the particular expression of that idea

16    in the work is not copied.  Anyone who copies original elements of

17    a copyrighted work during the term of the copyright without the

18    owner's permission infringes the copyright.

19         Mattel has the burden of proofing both of the following

20    by a preponderance of the evidence:

21         First, that it is the owner of a valid copyright; and

22    second, MGA Entertainment Incorporated, Isaac Larian and/or MGA

23    Entertainment Hong Kong Limited copied original elements from the

24    copyrighted work.  If you find that Mattel has proved both of

25    these elements, your verdict should be for Mattel.

Page 49

1          If, on the other hand, Mattel has failed to prove either

2     of these elements, your verdict should be for MGA Entertainment

3     Incorporated, Isaac Larian, and/or MGA Entertainment Hong Kong

4     Limited.

5          Mattel is the owner of a valid copyright in a sketch,

6     drawing or sculpt at issue if it proves by a preponderance of the

7     evidence that, one, the sketches, drawings, and sculpts are

8     original; and two, Mattel is the author of the work or received a

9     transfer of the copyright in the sketch drawing or sculpt.

10         The creator of an original work is called the author of

11    that work.  An author originates or masterminds the original work,

12    controlling the whole work's creation and causing it to come into

13    being.

14         Others may help or make valuable or creative

15    contributions to a work.  However, such a contributor cannot be

16    the author of the work unless that contributor caused the work to

17    come into being.  One must translate an idea into a fixed,

18    tangible expression in order to be the author of the work.  Merely

19    giving an idea to another does not make the giver an author of a

20    work embodying that idea.

21         A copyright owner is entitled to exclude others from

22    copying a work made for hire.

23         A work made for hire is one that is prepared by an

24    employee in carrying out the employer's business.

25         The employer is considered the author of the work and

Page 50

1   owns the copyright unless the employer and employee have agreed

2   otherwise in writing.

3            A copyright owner of a work made for hire may enforce

4   the right to exclude others in an action for copyright

5   infringement.

6            A copyright owner may convey to another person all or

7   part of the owner's property interest in the copyright; that is,

8   the right to exclude others from copying the work.  The person to

9   whom the copyright is conveyed becomes the owner of the copyright

10  in the work.

11           To be valid, the conveyance must be in writing.  The

12  person to whom this right is transferred is called an assignee.

13           An original work may include or incorporate elements

14  taken from works in the public domain.

15           The original parts of the work at issue are the parties

16  created, first, independently by Carter Bryant; that is, Carter

17  Bryant did not copy it from another work.

18           And second, by use of at least some minimal creativity.

19           In copyright law, the original element of a work need

20  not be new or novel.

21           A copyright owner is entitled to exclude others from

22  creating derivative work based upon the owner's copyrighted work.

23  The term "derivative work" refers to a work based on one or more

24  pre-existing works, such as a reproduction, or any other forum in

25  when the pre-existing work is recast, transformed or adapted.

1          Accordingly, the owner of a copyrighted work is entitled

2    to exclude others from recasting, transforming or adapting the

3    copyrighted work without the owner's permission.  If the copyright

4    owner exercises the right to create or allow others to create a

5    derivative work based upon the copyrighted work, this derivative

6    work may also be copyrighted.  Only what was newly created, such

7    as the editorial revisions, annotations, elaborations or other

8    modifications to the pre-existing work is considered to be the

9    derivative work.

10          Copyright protection of a derivative work covers only

11    the contribution made by the author of the derivative work.  If

12    the derivative work incorporates pre-existing work by others or

13    work in the public domain, the derivative author's protection is

14    limited to elements added by the derivative author to the

15    pre-existing work of others or public domain work, or limited to

16    the manner in which the derivative author combined the

17    pre-existing elements by other persons or pre-existing elements in

18    the public domain work into the derivative work.

19          The owner of a derivative work may enforce the right to

20    exclude others in an action for copyright infringement.

21          Mattel claims that the Bratz productions sculpts TX

22    17732 and TX 17733 copied original elements from the original

23    sculpts TX 1136 or TX 1141, as well as sculpt drawings to which

24    Mattel claims ownership.

25          Mattel also claims that the four first generation Bratz

1   dolls, TX 12286, TX 17561, TX 17558 and TX 17551, as well as two

2   subsequent generation dolls TX 17546 and TX 17529 copied original

3   elements from Carter Bryant's sketches, to which Mattel claims

4   ownership.

5           Mattel may show that MGA Entertainment Inc., Isaac

6   Larian, and MGA Entertainment Hong Kong Limited copied from the

7   copyrighted work by showing by a preponderance of the evidence

8   that MGA Entertainment Incorporated, Isaac Larian, and MGA

9   Entertainment Hong Kong Limited had access to the copyrighted

10  works at issue, and that MGA Entertainment Incorporated, Isaac

11  Larian, and MGA Entertainment Hong Kong Limited created products

12  that are substantially similar to the original elements of the

13  copyrighted works.

14          As part of its burden, Mattel must show by a

15  preponderance of the evidence that MGA Entertainment Incorporated,

16  Isaac Larian, and MGA Entertainment Hong Kong Limited had access

17  to any works in which Mattel has proven it owns a copyright.  You

18  may find that MGA Entertainment Incorporated, Isaac Larian, and

19  MGA Entertainment Hong Kong Limited had access to any works in

20  which Mattel has proven it owns a copyright if they had a

21  reasonable opportunity to view and/or copy the copyrighted works

22  before their products were created.

23          Mattel must prove that the final Bratz production

24  sculpts TX 17732 and TX 17733, the first four generation Bratz

25  dolls TX 12286, TX 17561, TX 17558 and TX 17551, and two

1    subsequent generation Bratz dolls TX 17546 and TX 17529 were

2    substantially similar to their works in which Mattel has proven it

3    owns a copyright.

4         The term "substantial similarity" has a legal meaning.

5    Works of art may be similar in the layperson's sense of the term,

6    but that is not the sort of similarity relevant under copyright

7    law.  To prove that two works are substantially similar, Mattel

8    must prove similarities in expression, not ideas.

9         The determination of whether two works are substantially

10   similar proceeds in two parts.  First, an objective or extrinsic

11   test; and second, a subjective or intrinsic test.  To prove

12   substantial similarity, Mattel must satisfy both tests by a

13   preponderance of the evidence.

14        The objective or extrinsic test has two parts.  Mattel

15   must first prove that the ideas expressed by the copyrighted work

16   and the allegedly infringing work are substantially similar.

17        Second, Mattel must prove that the protectable elements

18   of the copyrighted work and the allegedly infringing work are

19   substantially similar.

20        Protectable elements do not include, first, an idea.

21   Second, an expression required by an idea.  Third, expression that

22   is an idea in and of itself.  And fourth, expression that serves a

23   functional purpose.

24        In conducting the second type of objective or extrinsic

25   test, you must first disregard or filter out unprotectable

Page 54

1    elements of the works in which Mattel Inc. claims it owns a

2    copyright.  You must then determine whether an allegedly

3    infringing work is substantially similar to the protectable

4    elements of any of the works in which Mattel has proven that it

5    owns a copyright.

6            Instruction number 47 contains a chart that lists the

7    unprotectable and protectable elements of doll drawings that

8    Mattel claims have been infringed by the first -- strike that, by

9    the four first generation Bratz dolls TX 12286, TX 17561, TX 17558

10   and TX 17551 and the two subsequent generation dolls TX 17546 and

11   TX 17529.

12           Instruction number 48 contains a chart that lists the

13   unprotectable and protectable elements of the sculpts and sculpt

14   sketches that Mattel claims have been infringed by the Bratz

15   production sculpts TX 17732 and TX 17733.

16           To satisfy the objective or extrinsic test, Mattel must

17   prove that an allegedly infringing work is substantially similar

18   to the protectable elements in the drawings, sculpts, and sketches

19   that Mattel has proven that it owns.

20           Now, there is a chart.  In looking at instruction 47 it

21   states protectable/unprotectable elements of doll drawings.

22           Let's start with the first column, protectable elements

23   include:  The precise shape, size and placement of the doll's

24   anatomical features.  Hair-dos.  Face paint.  Fashion outfits and

25   accessories.  The precise combination of features.

1          Unprotectable elements include:  The resemblance or

2    similarity to human form.  The presence of hair, head, eyes, a

3    nose, mouth, lips, ears, a neck, legs, arms, and a torso.

4          Exaggerated features, including but not limited to an

5    oversized head, oversized almond-shaped eyes, large lips,

6    oversized feet, slim arms and a diminished nose.

7          Idealized features such as luscious lips, a slim waist,

8    a small nose and long limbs.

9          The idea of a young fashionable -- strike that.  The

10   idea of a young fashion-forward female with an attitude, and the

11   expression traditionally associated with that idea, including but

12   not limited to heavy make-up, an urban look, defiant poses,

13   defiant gazes, angular eyebrows, trendy clothing, shoes and

14   accessories.

15         Features shared by a particular race or ethnicity, for

16   example, skin tone.  Postures that mimic the human form and

17   postures that are standard for the effective display of

18   fashionable clothing.

19         Instruction number 48.  These are protectable and

20   unprotectable elements, sculpts and sculpt sketches.  Protectable

21   elements include:  The precise shape, size and placement of the

22   doll's anatomical features.  Minute sculptural variations

23   including the precise angles at which the doll's anatomical

24   features meet.

25         Unprotectable element include the resemblance or

Page 56

1   similarity to human form, anatomy and physiology.

2           Exaggerated features including, but not limited to an

3   oversized head, oversized eyes, large limbs, oversized feet, slim

4   arms, a diminished nose and a long torso.

5           Idealized features such as luscious lips, high

6   cheekbones, almond-shaped eyes, a slim waist, a small nose and

7   long limbs.

8           Postures and poses that mimic the human form or are

9   standard for the effective display of fashionable clothing such as

10  arms that protrude outwards so that doll clothes and accessories

11  can be easily removed.

12          Features necessary to make a fashion doll capable of

13  mass production.

14          Counsel, let's take the next one down just because I

15  have to cite certain words and later on we might make certain that

16  those words flow into text without any special highlighting.  I

17  want to make sure there is no particular portions.  We'll do that

18  tonight.

19          As to those works that have survived the objective or

20  extrinsic evidence you must now compare the allegedly infringing

21  works to the copyrighted works from the perspective of an

22  ordinarily -- strike that, of an ordinary reasonable observer.

23  Whereas the objective test uses analytical dissection to compare

24  specific elements of the works, this test considers the works as a

25  whole with a view to their total concept and feel.

1           The standard you must apply in comparing the works as a

2    whole depends upon the copyrighted work at issue.  First, when

3    comparing the Bratz production sculpts TX 17732 and TX 17733 to

4    any sculpt or sculpt drawings in which Mattel has proven it owns a

5    copyright, you must determine whether the Bratz production sculpts

6    TX 17732 and TX 17733 are virtually identical overall to sculpt or

7    sculpt drawings in which Mattel has proven it owns a copyright.

8           Second, when comparing any of the first -- strike that,

9    second, when comparing any of the four first generation Bratz

10   dolls TX 12286, TX 17561, TX 17588 and TX 17551 and two subsequent

11   generation dolls TX 17546 and TX 17529 to any drawing or sketch in

12   which Mattel has proven it owns a copyright, you must determine

13   whether the doll is substantially similar overall to such drawing

14   or sketch.

15          If Mattel fails to meet the requirements of the

16   subjective or intrinsic test as to any of the allegedly infringing

17   works, you must reach a verdict of noninfringement as to that

18   work.  However, if Mattel meets the requirements of the subjective

19   or intrinsic test as to a particular work and, in addition, meets

20   the objective or extrinsic test as to that work, then the work is

21   infringing.

22          If you find that MGA Entertainment Incorporated and/or

23   MGA Entertainment Hong Kong Limited infringed a copyright that

24   Mattel has proven it owns, you may consider Mattel's claim that

25   Isaac Larian vicariously infringed that copyright.

1          Mattel has the burden of proving each of the following

2    by a preponderance of the evidence:  First, Isaac Larian profited

3    directly from the infringing activities of MGA Entertainment

4    Incorporated and/or MGA Entertainment Hong Kong Limited.

5          Second, Isaac Larian had the right and ability to

6    supervise the infringing activity of MGA Entertainment Inc. and/or

7    MGA Entertainment Hong Kong Limited.

8          And third, Isaac Larian failed to exercise that right

9    and ability.

10          If you find that Mattel proved each of these elements,

11    your verdict should be for Mattel if you also find that MGA

12    Entertainment Incorporated and/or MGA Entertainment Hong Kong

13    Limited infringed the copyright that Mattel has proven it owns.

14    If, on the other hand, Mattel has failed to prove any of these

15    elements, your verdict should be for Isaac Larian.

16          A defendant may be liable for copyright infringement

17    engaged in by another if it knew or had reason to know of the

18    infringing activity and intentionally induced or materially

19    contributed to that infringing activity.  If you find that MGA

20    Entertainment Incorporated and/or MGA Entertainment Hong Kong

21    Limited infringed a copyright that Mattel has proven it owns, you

22    may proceed to consider Mattel's claim that Isaac Larian

23    contributorily infringed that copyright.

24          To prove copyright infringement, Mattel must prove both

25    of the following elements by a preponderance of the evidence:

1      First, Isaac Larian knew or had reason to know of the

2  infringing activity of MGA Entertainment Incorporated and/or MGA

3  Entertainment Hong Kong Limited.

4      And second, Isaac Larian intentionally induced or

5  materially contributed to MGA Entertainment Incorporated and/or

6  MGA Entertainment Hong Kong Limited infringing activity.

7      If you find that MGA Entertainment Incorporated and/or

8  MGA Entertainment Hong Kong Limited infringed a copyright that

9  Mattel has proven it owns, and you also find that Mattel has

10  proved both of these elements, your verdict should be for Mattel.

11      If, on the other hand, Mattel has failed to prove either

12  or both of these elements, your verdict should be for Isaac

13  Larian.

14      If you find for Mattel on Mattel's copyright

15  infringement claim, you must determine Mattel's damages, if any.

16  Mattel is entitled to recover actual damages it suffered, if any,

17  as of a result of the infringement by any of the particular works

18  at issue which are the first four generation dolls TX 12286, TX

19  17561, TX 17558, and TX 17551; two subsequent generation dolls TX

20  17546 and TX 17529, and the production sculpts TX 17732, and

21  17733.

22      In addition, Mattel is also entitled to recover the

23  profits, if any, of MGA Entertainment Incorporated, MGA

24  Entertainment Hong Kong Limited, and/or Isaac Larian attributable

25  to the infringement by any of the particular works at issue which

Page 60

1   are the first four generation dolls TX 12286, TX 17561, TX 17558,

2   and TX 17551, the two subsequent generation dolls TX 17546 and TX

3   17529, and the production sculpts TX 17732, and 17733.

4           Mattel must prove damages by a preponderance of the

5   evidence.

6           Mattel is entitled to recover the actual damages, if

7   any, suffered as a result of the infringement by any of the

8   particular works at issue which are the first four generation

9   dolls TX 12286, TX 17561, TX 17558, and TX 17551, two subsequent

10  generation dolls TX 17546 and TX 17529, and the production sculpts

11  17732 and TX 17733.

12          Actual damages means the amount of money adequate to

13  compensate the copyright owner for the reduction of the fair

14  market value of the works in which Mattel has proven it owns a

15  copyright that are infringed by the products at issue.

16          The reduction of the fair market value of the

17  copyrighted work is the amount a willing buyer would have been

18  reasonably required to pay a willing seller at the time of the

19  infringement for the actual use made by MGA Entertainment

20  Incorporated, MGA Entertainment Hong Kong Limited, and/or Isaac

21  Larian of the work.

22          That amount also could be represented by the lost

23  license fees Mattel would have received for MGA Entertainment Inc,

24  MGA Entertainment Hong Kong Limited, and/or Isaac Larian's

25  unauthorized use of the works in which Mattel has proven it owns a

Page 61

1    copyright.

2           In addition to actual damages, the copyright owner is

3    entitled to any profits of the defendant attributable to the

4    infringement.

5           You may not include in an award of profits any amount

6    that you took into account in determining actual damages.  You may

7    make an award of MGA Entertainment Incorporated, MGA Entertainment

8    Hong Kong Limited, and/or Isaac Larian's profits only if you find

9    that Mattel showed a casual relationship -- I'm sorry, a causal

10   relationship between the infringement and MGA Entertainment

11   Incorporated, MGA Entertainment Hong Kong Limited, and/or Isaac

12   Larian gross revenue.

13          Profits are determined by deducting all expenses from

14   that defendant's gross revenue.  Gross revenue is all receipts

15   from the sale of a product that infringes a work in which Mattel

16   proves it owns a copyright.

17          Mattel has the burden of proving MGA Entertainment

18   Incorporated, MGA Entertainment Hong Kong Limited, and Isaac

19   Larian's gross revenue by a preponderance of the evidence.

20          Expenses are all operating costs, overhead costs and

21   production costs incurred in producing the gross revenue.  Each

22   defendant has the burden of proving its expenses by a

23   preponderance of the evidence.

24          Unless you find that a portion of the profit from the

25   sale of a product containing or using the copyrighted work is

Page 62

1   attributable to factors other than use of the copyrighted work,

2   all of the profit is to be attributed to the infringement.  MGA

3   Entertainment Incorporated, MGA Entertainment Hong Kong Limited,

4   and/or Isaac Larian have the burden of proving the portion of the

5   profit, if any, attributable to factors other than infringing the

6   copyrighted work.

7           MGA Entertainment Incorporated, MGA Entertainment Hong

8   Kong Limited and Isaac Larian claim that Mattel's copyright claim

9   was not filed within the time set by law.

10          Mattel must prove by a preponderance of the evidence

11  that it did not discover, nor with reasonable diligence should

12  have discovered, the claimed copyright infringement by MGA

13  Entertainment Incorporated, MGA Entertainment Hong Kong Limited or

14  Isaac Larian.  You must determine the date by which Mattel should

15  have so discovered through the exercise of reasonable diligence.

16          Now, why don't you stand up.  We're going to start

17  another page in a moment.

18          This is going to be introduction misappropriation of

19  trade secrets.  So we're switching from copyright now to trade

20  secrets.

21          Mattel Incorporated (Mattel) claims that it is the owner

22  of certain information about toys and the toy industry.  MGA

23  Entertainment Incorporated (MGA) claims that it is the owner of

24  certain information about toys and the toy industry.

25          Mattel claims that the product, concept, name, and

Page 63

1   design for Bratz dolls as well as information contained in some of

2   its documents are trade secrets and that MGA and Isaac Larian

3   misappropriated these claimed trade secrets.

4          MGA claims that the appearance, operation, intended play

5   pattern, marketing plans and pricing information about the

6   unreleased product lines are trade secrets and that Mattel

7   misappropriated these claimed trade secrets.

8          Mattel and MGA also claim that these acts of alleged

9   misappropriation caused them harm and resulted in unjust

10  enrichment of the alleged misappropriating party.

11         Mattel, MGA and Isaac Larian deny these respective

12  allegations of trade secret misappropriation made against them.

13         Mattel claims that MGA and Isaac Larian have

14  misappropriated trade secrets.  MGA claims that Mattel has

15  misappropriated trade secrets.  To succeed on this claim, each of

16  the elements -- to succeed on this claim, each of the claimants

17  must prove, first, ownership of the claim trade secrets:

18         **A.**  Mattel must prove that it owns the claimed trade

19  secrets identified in appendix A to these jury instructions, and

20  you will receive an appendix A.

21         On the other hand, also, MGA must prove that it owned

22  the claimed trade secrets identified in appendix B to these jury

23  instructions because remember, they're suing each other.

24         Second -- and that will be in appendix B.  Second, each

25  claimant must prove that the information it claims to own was a

Page 64

1    trade secret at the time of the misappropriation.

2            Third, each claimant must prove that the defendant to

3    its claim improperly disclosed, acquired, or used trade secret

4    information.

5            Fourth, each claimant must prove that it was harmed or

6    the alleged misappropriator was unjustly enriched.

7            And fifth, each claimant must prove that the

8    misappropriation was a substantial factor in causing its harm or

9    the misappropriator's unjust enrichment.

10           To prove that the information claimed to be a trade

11   secret was a trade secret, a claimant must prove all of the

12   following:

13           First, that the information was secret.

14           Second, that the information had actual or potential

15   independent economic value because it was secret.

16           And second -- I'm sorry, and third, that the claimant

17   took reasonable efforts to keep the information secret.

18           The secrecy required to prove that something is a trade

19   secret does not have to be absolute in the sense that no one else

20   in the world possesses the information.  It may be disclosed to

21   employees involved in the claimant's use of the trade secret as

22   long as they are instructed to keep the information secret.  It

23   may also be disclosed to nonemployees if they are obligated to

24   keep the information secret.  However, it must not have been

25   generally known to the public or to people who could obtain the

Page 65

1   value from knowing it.

2          To establish that information is a trade secret, Mattel

3   must prove that it made reasonable efforts under the circumstances

4   to keep it secret.  To establish that information is a trade

5   secret MGA must prove that it made reasonable efforts under the

6   circumstances to keep it secret.

7          Reasonable efforts are the efforts that would be made by

8   a reasonable business in the same situation and having the same

9   knowledge and resources as the claimant, exercising due care to

10  protect important information of the same kind.

11         This requirement applies separately to each item that

12  the claimant claims to be a trade secret.

13         In determining whether or not the claimant made

14  reasonable efforts to keep the information secret, you should

15  consider all of the facts and circumstances.  Among the factors

16  you may consider the following:

17         **A.**  Whether documents or computer files containing the

18  information were marked with confidentiality warnings.

19         B.  Whether the claimant instructed its employees to

20  treat the information as confidential.

21         C.  Whether the claimant restricted access to the

22  information to persons who had a business reason to know the

23  information.

24         D.  Whether the claimant kept the information in a

25  restrict or secured area.

1          E.   Whether the claimant required employees or others

2    with access to the information to sign confidentiality or

3    nondisclosure agreements.

4          F.   Whether the claimant took any action to protect the

5    specific information or whether it relied on general measures

6    taken to protect its business information or assets.

7          G.   The extent to which any general measures taken by

8    the plaintiff would prevent the unauthorized disclosure of the

9    information.

10         H.   Whether there were other reasonable measures

11   available to the claimant that it did not take.

12         The presence or absence of any one or more of these

13   factors is not necessarily determinative.

14         Mattel misappropriated trade secrets by acquisition if

15   it acquired the trade secrets and knew or had reason to know that

16   it used improper means to acquire the trade secrets.

17         MGA misappropriated trade secrets by acquisition if it

18   acquired the trade secrets and knew or had reason to know that it

19   used improper means to acquire the trade secrets.

20         Isaac Larian misappropriated trade secrets by

21   acquisition if he acquired trade secrets and knew or had reason to

22   know that he used improper means to acquire the trade secrets.

23         Improper means of acquiring a trade secret or knowledge

24   of a trade secret include, but are not limited to theft, bribery,

25   misrepresentation, breach, or inducing a breach of a duty to

Page 67

1   maintain secrecy.

2          However, it is not improper to acquire a trade secret or

3   knowledge of the trade secret by:

4          One.  Independent efforts to invest or discover the

5   information.

6          Two.  Reverse engineering; that is, examining or testing

7   a product to determine how it works by a person who has a right to

8   possess the product.

9          Three.  Obtaining the information as a result of a

10  licensing agreement with the owner of the information.

11         Four.  Observing information in public or on public

12  display.  Or,

13         Five.  Obtaining the information from published

14  literature such as trade journals, reference books, the internet

15  or other publicly available sources.

16         A party misappropriates a trade secret by use if it,

17  first, used the trade secret without the claimant's consent; and

18  second, did any of the following:

19         **A.**  Acquired information of the trade secret by improper

20  means.  Or,

21         B.  At the time of use, knew or had reason to know that

22  their knowledge of the claimant's trade secret came from or

23  through a third party, and knew or should have known that the

24  third party had previously acquired the trade secret by improper

25  means.  Or,

Page 68

1          C.   At the time of use, knew or had reason to know that

2    their knowledge of the trade secrets was acquired under

3    circumstances creating a legal obligation to limit use of the

4    information.  Or,

5          D.   At the time of use, knew or had reason to know that

6    their knowledge of the trade secrets came from or through a third

7    party, and that the third party had a duty to the claimant to

8    limit use of the information.

9          E.   Before a material change of its position, knew or

10   had reason to know it was a trade secret and that knowledge of it

11   had been acquired by accident or mistake.

12          Misappropriation by disclosure.

13          A party misappropriates a trade secret by disclosure if

14   it:

15          One.  Disclosed the trade secrets without the claimant's

16   consent; and two, did any of the following:

17          **A.**  Acquired knowledge of the trade secrets by improper

18   means.  Or,

19          B.   That the time of disclosure, knew or had reason to

20   know that their knowledge of the claimant's trade secret came from

21   or through a third party, and knew or should have known that the

22   third party had previously acquired the trade secret by improper

23   means.  Or,

24          C.   At the time of disclosure, knew or had reason to

25   know that their knowledge of the trade secrets was acquired under

Page 69

1    circumstances creating a legal obligation to limit use of the

2    information.  Or,

3              D.   At the time of disclosure, knew or had reason to

4    know that their knowledge of the trade secrets came from or

5    through a third party, and that the third party had a duty to the

6    claimant to limit use of the information.

7              E.   Before a material change of its position, knew or

8    had reason to know that it was a trade secret and that knowledge

9    of it had been acquired by accident or mistake.

10             Information has independent economic value if it gives

11   the owner an actual or potential business advantage over others

12   who do not know the information, or who could obtain economic

13   value from its disclosure or use.

14             In determining whether information had actual or

15   potential independent economic value because it was secret, you

16   may consider the following:

17             One.  The extent to which the claimant obtained or could

18   obtain economic value from the information in keeping it secret.

19             Second.  The extent to which others could obtain

20   economic value from the information if it were not secret.

21             Third.  The amount of time, money, or labor that the

22   claimant expended in developing the information.

23             Fourth.  The amount of time, money, or labor that would

24   be, was saved by a competitor who used the information.

25             The presence or absence of any one or more of these

1   factors is not necessarily determinative.

2           If Mattel proves that MGA misappropriated trade secrets,

3   then Mattel is entitled to recover damages if the misappropriation

4   caused it to suffer an actual loss or MGA to be unjustly enriched.

5           If Mattel proves that Isaac Larian misappropriated trade

6   secrets, Mattel is entitled to recover damages if the

7   misappropriation caused it to suffer an actual loss or Isaac

8   Larian to be unjustly enriched.

9           If MGA proves that Mattel misappropriated trade secrets,

10  then MGA is entitled to recover damages if the misappropriation

11  caused it to suffer an actual loss or Mattel to be unjustly

12  enriched.

13          To recover damages for lost profits, a claimant must

14  prove it is reasonably certain it could have earned profit but for

15  the misappropriator's conduct.

16          To decide the amount of damages for lost profits, you

17  must determine the gross amount the claimant would have received

18  but for the misappropriator's conduct and then subtract from that

19  amount the expenses, including the value of the labor, materials,

20  rents and other expenses the claimant would have had if the

21  misappropriator's conduct had not occurred.

22          The amount of lost profits need not be calculated with

23  mathematical precision, but there must be a reasonable basis for

24  computing the loss.

25          MGA, Isaac Larian, and/or Mattel was unjustly enriched

1   if its misappropriation caused it to receive a benefit that it

2   otherwise would not have achieved.

3           To decide the amount of any unjust enrichment, first,

4   determine the value of MGA, Isaac Larian, and/or Mattel's benefit

5   that would not have been achieved except for its misappropriation.

6   Then subtract from that amount MGA, Isaac Larian, and/or Mattel's

7   sweat equity, including their hard work, creativity and legitimate

8   efforts, as well as their reasonable expenses, including the value

9   of the labor, materials, rents, cost of transportation and

10  interest on invested capital.

11          In calculating the amount of any unjust enrichment, do

12  not take into account any amount that you included in determining

13  any amount of damages for the claimant's actual loss.

14          If you decide that Mattel, MGA, and/or Isaac Larian's

15  misappropriation caused a claimant harm, you must decide whether

16  that conduct justifies an award of punitive damages.

17          The purposes of punitive damages are to punish a

18  wrong-doer for the conduct that harmed the claimant and to

19  discourage similar conduct in the future.

20          In order to recover punitive damages, a plaintiff must

21  prove by clear and convincing evidence that the defendant acted

22  willfully and maliciously.  You must determine whether the

23  defendant acted willfully and maliciously, but you will not be

24  asked to determine the amount of any punitive damages.  The Court

25  will calculate the amount later.

7577ce05-4795-4152-ada7-78272af64f5e

Page 72

1    "Willfully" means that the defendant acted with a

2    purpose or willingness to commit the act or engaged in the conduct

3    in question, and the conduct was not reasonable under the

4    circumstances at the time and was not undertaken in good faith.

5    "Maliciously" means that the defendant acted with an

6    intent to cause injury, or that the defendant's conduct was

7    despicable and was done with a willful and knowing disregard for

8    the rights of others.

9    "Despicable conduct" is conduct so vile, base or

10   wretched, that it would be looked down and on and despised by

11   ordinary, decent people.

12   A defendant acted with knowing disregard if it was aware

13   of the probable consequences of its conduct and deliberately

14   failed to avoid those consequences.

15   Mattel did not misappropriate a claimed trade secret if

16   it proves that the information claimed to be a trade secret was

17   readily ascertainable by proper means at the time of the alleged

18   acquisition, use, or disclosure.

19   MGA or Isaac Larian did not misappropriate a claimed

20   trade secret if they prove that the information claimed to be a

21   trade secret was readily ascertainable by proper means at the time

22   of the alleged acquisition use or disclosure.

23   There is no fixed standard for determining what is

24   readily ascertainable by proper means.  In general, information is

25   readily ascertainable if it can be obtained, discovered,

Page 73

1   developed, or compiled without significant difficulty, effort, or

2   expense.

3           For example, information is readily ascertainable if it

4   is available in trade journal, reference books, or published

5   materials.  On the other hand, the more difficult information is

6   to obtain and the more time and resources that must be expended in

7   gathering it, the less likely it is that the information is

8   readily ascertainable by proper means.

9           Mattel, MGA, and Isaac Larian claim that each claimant's

10  lawsuit was not filed within the time set by law.  Mattel must

11  prove by a preponderance of the evidence that it did not timely

12  discover, nor with reasonable diligence should it have discovered,

13  facts that would have caused a reasonable person to suspect that

14  MGA and/or Isaac Larian had misappropriated the Bratz-related

15  concepts and works.  You must determine the date by which it

16  should have so discovered through the exercise of reasonable

17  diligence.

18          MGA must prove by a preponderance of the evidence that

19  it did not timely discover, nor with reasonable diligence should

20  it have discovered, facts that would have caused a reasonable

21  person to suspect that Mattel had misappropriated information

22  available in its showrooms.  You must determine the date by which

23  it should have so discovered through the exercise of reasonable

24  diligence.

25          Now, stand up one more time.

Page 74

1          MGA claims that MGA Entertainment Inc. and Isaac Larian

2   intentionally interfered with the employee confidential

3   information and inventions agreement it entered into with Carter

4   Bryant, Ryan Tumaliuan, Ana Cabrera, Maria Salazar, and Beatriz

5   Morales.

6          To establish this claim, Mattel must prove all of the

7   following:

8          First.  That there was a contract between Mattel and

9   Bryant, Tumaliuan, Cabrera, Salazar and/or Morales.

10          Second.  That MGA Entertainment Inc. and/or Isaac Larian

11   knew of the contract.

12          Third.  That MGA Entertainment Inc. and/or Isaac Larian

13   intended to disrupt the performance of the contract.

14          Four.  That MGA Entertainment Inc. and/or Isaac Larian's

15   conduct prevented performance or made performance more expensive

16   or difficult.

17          Five.  That Mattel was harmed.

18          And six, that MGA Entertainment Inc. and/or Isaac

19   Larian's conduct was a substantial factor in causing Mattel's

20   harm.

21          Do not consider the acquisition, disclosure, and/or use

22   of Mattel's claimed trade secrets in determining liability and

23   calculating damages for this claim.  The law that applies to that

24   conduct is set forth in the instructions concerning the claim for

25   trade secret misappropriation.

1          In deciding whether MGA Entertainment Inc. and/or Isaac

2     Larian acted intentionally, you may consider whether they knew

3     that a breach was substantially certain to result from their

4     conduct.

5          Mattel claims it lost profits and services as a result

6     of MGA Entertainment Inc. and Isaac Larian's alleged intentional

7     interference with Mattel's contractual relations with Cabrera,

8     Morales, Salazar and Tumaliuan.

9          To recover these damages, Mattel must prove it is

10    reasonably certain it would have earned profits or received

11    services but for MGA Entertainment Inc. and/or Isaac Larian's

12    intentional interference.

13         To decide the amount of damages for lost profits, you

14    must determine the gross amount Mattel would have received but for

15    MGA Entertainment Inc. and/or Isaac Larian's intentional

16    interference with Mattel's contractual relations with Carter

17    Bryant, Ana Cabrera, Beatriz Morales, Maria Salazar, and Ryan

18    Tumaliuan, and then subtract from that amount the expenses Mattel

19    would have had if MGA Entertainment Inc. and/or Isaac Larian's

20    conduct had not occurred.

21         The amount of the lost profits need not be calculated

22    with mathematical precision, but there must be a reasonable basis

23    for computing the loss.

24         In calculating Mattel's lost profits resulting from MGA

25    Entertainment Incorporated and/or Isaac Larian's intentional

1    interference with Mattel's contractual relations, you must exclude

2    any lost profits caused by the acquisition, disclosure, and/or use

3    of Mattel's claimed trade secret materials.

4            If you decide MGA Entertainment Inc. and/or Isaac Larian

5    is responsible for the original harm, Mattel is not entitled to

6    recover damages for harm that MGA Entertainment Inc. and/or Isaac

7    Larian proves Mattel could have avoided with reasonable efforts or

8    expenditures.

9            You should consider the reasonableness of Mattel's

10   efforts in light of the circumstances facing it at the time,

11   including its ability to make the efforts or expenditures without

12   undue risk or hardship.

13           If Mattel made reasonable efforts to avoid harm, then

14   your award should include reasonable amounts that it spent for

15   this purpose.

16           MGA Entertainment Incorporated and Isaac Larian contend

17   that Mattel's claim for intentional interference with contractual

18   relations was not filed within the time set by law.  Mattel must

19   prove by a preponderance of the evidence that it did not discover,

20   nor with reasonable diligence should have discovered, facts that

21   would have caused a reasonable person to suspect its claim for

22   intentional interference with contractual relations.  You must

23   determine the date by which Mattel should have so discovered

24   through the exercise of reasonable diligence.

25           When you begin your deliberations, you should elect one

Page 77

1   person on this jury to argue as your presiding juror.  That person

2   will preside over your deliberations and speak for you here in

3   court.  You will then discuss the case with your fellow jurors to

4   reach agreement if you can do so.  Your verdict must be unanimous.

5            Each of you must decide the case for yourself, but you

6   should do so only after you have considered all of the evidence,

7   discussed it fully with the other jurors, and listened to the

8   views of your fellow jurors.

9            Do not hesitate to change your opinion if the discussion

10  persuades you that you should.  Do not come to a decision simply

11  because other jurors think it is right.  It is important that you

12  attempt to reach a unanimous verdict but, of course, only if each

13  of you can do so after having made your own conscientious

14  decision.

15           Do not change an honest belief about the weight and

16  effect of the evidence simply to reach a verdict.

17           If it becomes necessary during your deliberations to

18  communicate with me, you may send me a note through the bailiff or

19  the clerk signed by your presiding juror or one or more members of

20  the jury.  No member of the jury should ever attempt to

21  communicate with me except by writing -- except by signed writing.

22           Now, I haven't gotten that uppity all of a sudden.  I

23  have said "good morning" each day to you, I hope, and enjoyed you

24  just coming through the hallway.  From now on, though, when I

25  communicate, it has to be in writing.  I can say "good morning" to

Page 78

1    you.  I may come back and make sure you're all there as I have

2    every day along with Nancy and the other clerks.  But any question

3    you have for me from this point has to be communicated in writing

4    as it has been through the entire trial.

5            I will communicate with any member of the jury on

6    anything concerning the case only here in writing or here in open

7    court.  If you send out a question, I will consult with the

8    parties before answering it, which may take some time.

9            Now, they're going to be sitting right here, but that

10   doesn't mean we'll get an answer back to you right away.  We have

11   had five court reporters, so if you request some particular

12   re-reading, I might have to go to another judge, a colleague of

13   mine, and it may be the following day, for instance, or following

14   morning.  But we'll do our best to have an answer back to you if

15   you have any question.

16           You may continue your deliberations while awaiting for

17   the answer to any question you have asked.  Remember that you are

18   not to tell anyone, including me, how the jury stands numerically

19   or otherwise until after you have reached a unanimous verdict or

20   have been discharged.  Do not disclose any vote count in any note

21   to the juror.

22           A verdict form has been prepared for you.  It contains a

23   number of questions I have asked you to answer.  After you have

24   reached a unanimous agreement on a verdict, your presiding juror

25   will fill in the form that's been given to you, sign it, date it

7577ce05-4795-4152-ada7-78272af64f5e

1    and advise the Court that you are ready to return to this

2    courtroom.

3              Now, that concludes my reading this evening.

4              Counsel, would you like me to read those again?

5              Why don't we send you home for tonight with our best

6    wishes.  And remember, don't talk to anybody about the case.

7    We'll be open for business at 8:30 tomorrow.  I'll actually be in

8    session at 7:00 o'clock tomorrow on some unrelated matters.  So if

9    the doors are closed for a brief period of time on some unrelated

10   matters, I need to get going at 7:00 o'clock.  But during the day

11   from 8:30 we will start promptly at usual.

12             So I'll see you tomorrow.  Do not discuss the matter,

13   don't form or express any opinion.  Good night.

14                          (Jury out.)

15   (Whereupon there was a change in reporters and DEBORAH PARKER

16   reported the 7:00 P.M session.)

17

18                            -oOo-

19

20                          CERTIFICATE

21

22             I hereby certify that pursuant to Section 753, Title 28,

23   United States Code, the foregoing is a true and correct transcript

24   of the stenographically reported proceedings held in the

25   above-entitled matter.

Page 80

1

2    Date:  APRIL 8, 2011

3

4



5    MARIA DELLANEVE, U.S. COURT REPORTER
     CSR NO. 9132

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

7577ce05-4795-4152-ada7-78272af64f5e