CV 04-9049 DOC - 4/11/2011 - Day 50, Volume 1 of 2

1

1           **UNITED STATES DISTRICT COURT**

2           **CENTRAL DISTRICT OF CALIFORNIA**

3       **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                   - - - - - - -

5
    MATTEL, INC., et al.,              )
6                                      )
              Plaintiffs,              )
7                                      )
         vs.                           ) No. CV 04-9049 DOC
8                                      )    Day 50
    MGA ENTERTAINMENT, INC., et al.,   )    Volume 1 of 2
9                                      )
                                       )
10            Defendants.              )
   _____)

11

12

13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                   Jury Trial

16              Santa Ana, California

17             Monday, April 11, 2011

18

19

20

21  Debbie Gale, CSR 9472, RPR, CCRR
    Federal Official Court Reporter
22  United States District Court
    411 West 4th Street, Room 1-053
23  Santa Ana, California 92701
    (714) 558-8141

24

25  04cv9049 Mattel 2011-04-11 D50V1

Case 2:04-cv-09049-DOC-RNB   Document 10453   Filed 04/13/11   Page 2 of 46   Page ID #:317931
CV 04-9049 DOC – 4/11/2011 – Day 50, Volume 1 of 2

2

```
 1    APPEARANCES OF COUNSEL:

 2
      FOR PLAINTIFF MATTEL, INC., ET AL.:
 3
                QUINN EMANUEL URQUHART OLIVER & HEDGES LLP
 4              BY:  JOHN QUINN
                     WILLIAM PRICE
 5                   MICHAEL T. ZELLER
                     Attorneys at Law
 6              865 South Figueroa Street
                10th Floor
 7              Los Angeles, California 90017
                (213) 443-3000
 8

 9

10
      FOR DEFENDANT MGA ENTERTAINMENT, INC., ET AL:
11
                ORRICK, HERRINGTON & SUTCLIFFE, LLP (Irvine)
12              BY:  THOMAS S. McCONVILLE
                     Attorney at Law
13              4 Park Plaza
                Suite 1600
14              Irvine, California 92614
                (949) 567-6700
15
                – AND –
16
                ORRICK, HERRINGTON & SUTCLIFFE, LLP (SF)
17              BY:  ANNETTE L. HURST
                     Attorney at Law
18              405 Howard Street
                San Francisco, California 94105
19              (415)773-5700

20              – AND –

21              KELLER RACKAUCKAS
                BY:  JENNIFER KELLER
22                   Attorney at Law
                18500 Von Karman Avenue
23              Suite 560
                Irvine, California 92612
24              (949) 476-8700

25
```

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB Document 10453 Filed 04/13/11 Page 3 of 46 Page ID #:317932
CV 04-9049 DOC - 4/11/2011 - Day 50, Volume 1 of 2

3

1    **APPEARANCES OF COUNSEL (Continued):**

2

3    FOR CARLOS GUSTAVO MACHADO GOMEZ:

4
            LAW OFFICES OF MARK E. OVERLAND
5           By:  MARK E. OVERLAND  (not present)
                Attorney at Law
6           100 Wilshire Boulevard
            Suite 950
7           Santa Monica, California 90401
            (310) 459-2830
8
            - AND -
9
            SCHEPER KIM & HARRIS LLP
10          BY:  ALEXANDER H. COTE  (not present)
                Attorney at Law
11          601 West 5th Street
            12th Floor
12          Los Angeles, California 90071
            (213) 613-4660
13

14

15
     ALSO PRESENT:
16
            MGA ENTERTAINMENT, INC.
17          BY:  JEANINE PISONI
                Attorney at Law
18          16360 Roscoe Boulevard
            Suite 105
19          Van Nuys, California 91406

20
            ROBERT ECKERT, Mattel CEO
21
            ISAAC LARIAN, MGA CEO
22
            KEN KOTARSKI, Mattel Technical Operator
23
            MIKE STOVALL, MGA Technical Operator
24

25

CV 04-9049 DOC - 4/11/2011 - Day 50, Volume 1 of 2

4

1                         **I N D E X**

2    **PROCEEDINGS**                                    **PAGE**

3    Discussion re Instruction No. 47                     5

4    Discussion re Jury Forms                             6

5    Discussion with jurors and alternates               32

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 10453   Filed 04/13/11   Page 5 of 46   Page ID #:317934
CV 04-9049 DOC – 4/11/2011 – Day 50, Volume 1 of 2

5

| | |
|---|---|
| 1 | **SANTA ANA, CALIFORNIA, MONDAY, APRIL 11, 2011** |
| 2 | **Day 50, Volume 1 of 2** |
| 3 | (7:39 a.m.) |
| 4 | *(Outside the presence of the jury.)* |
| 07:38 5 | THE COURT:  We're on the record. |
| 07:38 6 | Instruction No. 47.  In this portion, "exaggerated |
| 07:39 7 | features, including but not limited to an oversized head, |
| 07:39 8 | oversized eyes, large lips, oversized feet, slim arms, and a |
| 07:39 9 | diminished nose, and a long torso." |
| 07:39 10 | This "and" should come out.  And should read to |
| 07:39 11 | "oversized feet, slim arms, a diminished nose, and a long |
| 07:39 12 | torso." |
| 07:39 13 | Can I take that "and" out? |
| 07:39 14 | MR. McCONVILLE:  Yeah. |
| 07:39 15 | THE COURT:  It's a double conjunctive. |
| 07:39 16 | MS. KELLER:  Uh-huh. |
| 07:39 17 | THE COURT:  All right. |
| 07:39 18 | Now, let me have your special verdict form back |
| 07:39 19 | for just a moment.  It should be two. |
| 07:39 20 | MR. McCONVILLE:  That's their Appendix A. |
| 07:39 21 | THE COURT:  Okay.  Just a moment.  So you should |
| 07:39 22 | have the instructions.  You should have Appendix A and B to |
| 07:40 23 | go over. |
| 07:40 24 | Let me have your special verdict forms back. |
| 07:40 25 | MR. McCONVILLE:  This is what Annette e-mailed me |

| | | |
|---|---|---|
| 07:40 | 1 | last night. |
| 07:40 | 2 | THE COURT:  Okay.  I haven't approved your special |
| 07:40 | 3 | verdict forms yet. |
| 07:40 | 4 | MR. McCONVILLE:  Okay. |
| 07:40 | 5 | THE COURT:  There's a lot of word-processing typos |
| 07:40 | 6 | in them. |
| 07:40 | 7 | So why don't I bring those out next.  But I want |
| 07:40 | 8 | to make certain that all the corrections we've made have now |
| 07:40 | 9 | been completed, including the last "and" in the jury |
| 07:40 | 10 | instructions.  You have Appendix A and Appendix B. |
| 07:40 | 11 | MS. HURST:  Appendix A does not match document |
| 07:40 | 12 | 9801.  This is objectionable. |
| 07:40 | 13 | THE COURT:  Well, I don't know what you two agreed |
| 07:40 | 14 | to over the weekend. |
| 07:40 | 15 | MS. HURST:  I didn't ever agree to that.  I've |
| 07:40 | 16 | never agreed to that form.  I've never even see their form |
| 07:40 | 17 | of Appendix A.  This does not match Document No. 9801. |
| 07:41 | 18 | THE COURT:  9801.  All right.  Have a seat. |
| 07:41 | 19 | *(Pause in the proceedings at 7:41 a.m.)* |
| 07:41 | 20 | *(Proceedings resumed at 7:43 a.m.)* |
| 07:43 | 21 | THE COURT:  We're back on the record. |
| 07:43 | 22 | I have the forms. |
| 07:43 | 23 | And, with all of the nits that we've made |
| 07:43 | 24 | corrections to, but I don't believe any substantive changes |
| 07:43 | 25 | to the instructions, at least meet with the approval of |

| 07:44 | 1 | Mattel and MGA, not waiving any prior objections, of course. |
| 07:44 | 2 | So go through that and see the nits that have all |
| 07:44 | 3 | been corrected.  And those were just nits that we corrected. |
| 07:44 | 4 | We did that on the record on Friday evening, word-processed |
| 07:44 | 5 | them, but I want them finally checked by you. |
| 07:44 | 6 | Meanwhile, Ms. Keller and Mr. Quinn, Kathy is |
| 07:44 | 7 | going to hand you a form.  Your signatures are the |
| 07:44 | 8 | representations on this form that the jury room exhibits are |
| 07:44 | 9 | complete and in order. |
| 07:45 | 10 | The Court will not retry this matter if an exhibit |
| 07:45 | 11 | is missing.  That's completely your responsibility and your |
| 07:45 | 12 | teams'.  So your signature attests that these documents, |
| 07:45 | 13 | through you able staff, are in order. |
| 07:45 | 14 | MR. ZELLER:  I don't know if this is part of that |
| 07:45 | 15 | form, Your Honor; but there is an issue concerning the list |
| 07:45 | 16 | the tangible trial exhibits list.  But I did understand |
| 07:45 | 17 | there might be a possibility that would go to the jury |
| 07:45 | 18 | because it tells them on what shelf an item is. |
| 07:45 | 19 | THE COURT:  Thank you. |
| 07:45 | 20 | Signature over to Mr. Quinn. |
| 07:45 | 21 | MS. KELLER:  Your Honor, we just need to check on |
| 07:45 | 22 | one thing, just to make sure our exhibit -- |
| 07:45 | 23 | THE COURT:  You and Mr. Quinn go back together. |
| 07:45 | 24 | We'll do it by the numbers. |
| 07:45 | 25 | Mr. Quinn, if you would be kind enough to go with |

CV 04-9049 DOC – 4/11/2011 – Day 50, Volume 1 of 2

8

07:45   1    Ms. Keller, so I have lead counsel.

07:46   2              Kathy, take 'em back.

07:46   3              *(Mr. Quinn and Ms. Keller accompany the*

07:46   4        *clerk to the exhibit room.)*

07:47   5              *(Pause in the proceedings at 7:47 am.)*

07:50   6              *(Proceedings resumed at 7:50 a.m.)*

07:50   7              THE COURT:  All right.  Now, we're back on the

07:50   8    record.

07:50   9              Are you satisfied with the exhibit room?

07:50   10             Ms. Keller?

07:50   11             MS. KELLER:  Yes, Your Honor.

07:50   12             THE COURT:  Mr. Quinn.

07:50   13             MR. QUINN:  Apparently there's three that are

07:51   14   missing.

07:51   15             THE COURT:  I want a complete record before we go

07:51   16   on to number two, three, four.

07:51   17             *(Brief pause in proceedings.)*

07:51   18             THE COURT:  All right.  We're back on the record.

07:51   19   The second issue is, what are we going to do with the

07:51   20   alternates?

07:51   21             There are three things that we can do.

07:51   22   Ms. Keller, Mr. Quinn, it's ultimately your decision:

07:51   23             One, keep them all here.  But I've usually had

07:51   24   them report in at a different time so they're not mixing.

07:51   25   So they would come in at 9:00 or 9:30, the alternates would,

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 07:51 | 1 | and they'd go home at 3:30 to 4:00, before the jury goes |
| 07:51 | 2 | home. |
| 07:51 | 3 | Option No. 2 is to send them all back to work and |
| 07:51 | 4 | have them available.  The problem is, once they all go back |
| 07:51 | 5 | to work, how can they possibly resist, "What have you been |
| 07:51 | 6 | doing the last three months?" |
| 07:52 | 7 | "Nothing. |
| 07:52 | 8 | "No, no.  Where have you been?  I heard you were |
| 07:52 | 9 | on jury service. |
| 07:52 | 10 | "Yeah, you might have heard about this case. |
| 07:52 | 11 | "Oh, yeah, I heard about the case." |
| 07:52 | 12 | So when we bring all six in, we'll spend more time |
| 07:52 | 13 | voir diring them on the information that they might have |
| 07:52 | 14 | received, and putting each one of them on the spot, which |
| 07:52 | 15 | causes animosity, because we expect them to be ethical.  And |
| 07:52 | 16 | now, the Court and counsel are probing, "When you were home |
| 07:52 | 17 | for the last week or at your employment, did anybody contact |
| 07:52 | 18 | you? |
| 07:52 | 19 | The third is that you draw one through six; in |
| 07:52 | 20 | other words, you just go one through six.  We release the |
| 07:52 | 21 | last three, hoping that we don't get to the last three, |
| 07:52 | 22 | which is dangerous, and we already know the order, and we |
| 07:52 | 23 | just bring three back. |
| 07:52 | 24 | The problem is we promised them all a tour of the |
| 07:52 | 25 | courthouse afterwards.  And I think you're gonna want to |

| 07:52 | 1 | talk to them afterwards.  And I'm probably going to let you |
| 07:52 | 2 | talk to them right here in court, right next door in the |
| 07:52 | 3 | complex courtroom if they reach a verdict.  Because that |
| 07:52 | 4 | saves the 50 calls that will go out.  Those are not |
| 07:52 | 5 | appreciated by a court once a juror's served.  And although |
| 07:53 | 6 | you're entitled to do that, you might as well hear their |
| 07:53 | 7 | thoughts right next door, right after they reach a verdict. |
| 07:53 | 8 | So my suggestion's this:  That all six come in. |
| 07:53 | 9 | It saves the taint.  That we bring them in at a different |
| 07:53 | 10 | hour and, whether it's 5 minutes or 55 days, that they sit |
| 07:53 | 11 | with us. |
| 07:53 | 12 | And we can make the decision later on -- next |
| 07:53 | 13 | week, the week after, if the jury's still going forward, or |
| 07:53 | 14 | if they have particular hardships that they need to get back |
| 07:53 | 15 | to, but I leave that to you. |
| 07:53 | 16 | So why don't you, Ms. Keller and Mr. Quinn, |
| 07:53 | 17 | discuss that quietly for a moment and see what you want to |
| 07:53 | 18 | do. |
| 07:54 | 19 | MS. KELLER:  Your Honor, we agree with the Court's |
| 07:54 | 20 | assessment, I think, and -- but do think that it would be |
| 07:54 | 21 | best for them to come in at different times. |
| 07:54 | 22 | THE COURT:  Yeah.  Mr. Quinn -- |
| 07:54 | 23 | MR. QUINN:  Yes. |
| 07:54 | 24 | THE COURT:  -- acceptable? |
| 07:54 | 25 | All right.  Then we'll inform the six alternates, |

| | | |
|---|---|---|
| 07:54 | 1 | out of the presence of the jury, once the eight jurors start |
| 07:54 | 2 | their deliberation, that we expect them to be here at -- |
| 07:54 | 3 | MR. QUINN:  10:00?  11:00? |
| 07:54 | 4 | THE COURT:  10:00.  And that we'll probably |
| 07:54 | 5 | release them between 3:30 and 4:00 o'clock in the afternoon, |
| 07:54 | 6 | so that the jury doesn't mix.  But we -- and let's be |
| 07:54 | 7 | upfront and tell them why.  That we're really concerned |
| 07:55 | 8 | about just the pressure that people will apply in a friendly |
| 07:55 | 9 | way to speak to them about the case. |
| 07:55 | 10 | All right. |
| 07:55 | 11 | Second, Kathy, we have a stipulation regarding |
| 07:55 | 12 | admission of tangible items.  I want to make certain that |
| 07:55 | 13 | the stipulation -- well, these stipulations are acceptable |
| 07:55 | 14 | to both parties.  Kathy, why don't you give these to the |
| 07:55 | 15 | parties informally. |
| 07:55 | 16 | Third, with Mr. Larian's family issue this |
| 07:56 | 17 | weekend, I don't want any mention of that in front of the |
| 07:56 | 18 | jury. |
| 07:56 | 19 | Ms. Keller, what did I say? |
| 07:56 | 20 | MS. KELLER:  Your Honor, I -- that never even |
| 07:56 | 21 | occurred to me to do that. |
| 07:56 | 22 | THE COURT:  It wouldn't occur to you.  But if I |
| 07:56 | 23 | need to speak to Mr. Larian, I will. |
| 07:56 | 24 | MS. KELLER:  I'll make sure that I talk to |
| 07:56 | 25 | Mr. Larian. |

| | | |
|---|---|---|
| 07:56 | 1 | THE COURT: All right. I would immediately start |
| 07:56 | 2 | this trial over again. |
| 07:56 | 3 | MS. KELLER: I understand. |
| 07:56 | 4 | THE COURT: Understood? No sympathy. |
| 07:56 | 5 | Second, Mr. Eckert apparently will be here at |
| 07:56 | 6 | 10:00 o'clock. I'd like to work a way out for both of you |
| 07:56 | 7 | so that Mr. Eckert can go back to work. Mr. Larian can go |
| 07:56 | 8 | back to work, if he wants to. I assume he wants to be here |
| 07:56 | 9 | because he's the defendant. But, if Mr. Eckert was able to |
| 07:56 | 10 | go back to work and he was on-call, leaving that option to |
| 07:56 | 11 | you, what I would do is be courteous and give him enough |
| 07:56 | 12 | time to come back, if he wanted to, for either a rereading, |
| 07:56 | 13 | a question or a verdict. |
| 07:57 | 14 | So why don't you talk to him when he comes in. |
| 07:57 | 15 | Because, otherwise, he's just sitting. And we don't know if |
| 07:57 | 16 | this is 5 days, 55 days. We have no idea. |
| 07:57 | 17 | And I'd just like to get a time estimate that's |
| 07:57 | 18 | reasonable, from my perspective. El Segundo? |
| 07:57 | 19 | MR. QUINN: Yeah. |
| 07:57 | 20 | THE COURT: An hour? |
| 07:57 | 21 | MR. QUINN: Yeah. |
| 07:57 | 22 | THE COURT: With no traffic? |
| 07:57 | 23 | MR. QUINN: With no traffic. It's the 405 the |
| 07:57 | 24 | whole way. |
| 07:57 | 25 | MS. KELLER: Your Honor, I'm thinking that if the |

Case 2:04-cv-09049-DOC-RNB   Document 10453   Filed 04/13/11   Page 13 of 46   Page ID #:317942
CV 04-9049 DOC - 4/11/2011 - Day 50, Volume 1 of 2

13

07:57    1    Court were to take a waiver from Mr. Eckert with respect to

07:57    2    whether counsel could answer a question in his absence, if

07:57    3    the jury had a question, that would take care of it.

07:57    4            THE COURT:  No, no.  That's not the issue.

07:57    5            He doesn't have to be here for the answering of a

07:57    6    question.  That's counsel's decision.  It's the fact I don't

07:57    7    want it imbalanced, and I don't want it to appear that one

07:57    8    client is extraordinarily interested and the other doesn't

07:57    9    care.  Specifically during a rereading where we might be

07:58   10    sitting here for an hour to three hours, and all of a

07:58   11    sudden, it looks like Mr. Eckert's gone back to work with no

07:58   12    involvement.  It makes a bad impression.

07:58   13            MS. KELLER:  But --

07:58   14            THE COURT:  But that's -- no, that's Mr. Eckert's

07:58   15    choice.

07:58   16            But I'd like to pay him the courtesy of being able

07:58   17    to go back to work if we can work that out.  So let's talk

07:58   18    about that at 10:00 o'clock with both Mr. Larian and

07:58   19    Mr. Eckert.

07:58   20            The third or fourth thing I was thinking of this

07:58   21    weekend is that your Appendix A and Appendix B appears now

07:58   22    in the order or the format that you gave them to me in the

07:58   23    instructions.  I'm going to go back and look at 9801.  I'll

07:58   24    do the work.  But I didn't realize you were running into

07:58   25    those kinds of problems.  All I saw this weekend was the

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 07:58 | 1 | e-mail traffic between the two of you. |
| 07:58 | 2 | Fourth, Ms. Hurst, I know you want to go home. |
| 07:59 | 3 | Mr. Zeller and Mr. Price you may want to.  The problem is |
| 07:59 | 4 | I'm going to answer questions immediately.  In other words, |
| 07:59 | 5 | I'm not going to wait for counsel. |
| 07:59 | 6 | I would pay the courtesy of waiting for Mr. Larian |
| 07:59 | 7 | and Mr. Eckert for a verdict, probably an hour or more.  But |
| 07:59 | 8 | I'm not going to wait to resolve issues. |
| 07:59 | 9 | Now, what else do we need to resolve?  Those three |
| 07:59 | 10 | items of evidence -- |
| 07:59 | 11 | Mr. Zeller. |
| 07:59 | 12 | MR. ZELLER:  Yes.  Just with respect to |
| 07:59 | 13 | Appendix A, the Mattel one, we did provide that in that form |
| 07:59 | 14 | last week to MGA.  There was no issue that was raised upon |
| 07:59 | 15 | it supposedly not being consistent with 91 -- excuse me, |
| 07:59 | 16 | 9801. |
| 07:59 | 17 | I think the Court will look at it and be satisfied |
| 07:59 | 18 | that, in fact, it is consistent, in any event, with 9801. |
| 07:59 | 19 | I think that the part that she's complaining about |
| 07:59 | 20 | is we don't have heading each and of time for these |
| 08:00 | 21 | inventory documents.  It's the same heading. |
| 08:00 | 22 | THE COURT:  But we have that heading, in a sense, |
| 08:00 | 23 | and we have that in the special form, don't we? |
| 08:00 | 24 | MR. QUINN:  You sure do.  It's separately |
| 08:00 | 25 | bucketized on the verdict form, so, I mean, this saves |

08:00  1    paper.

08:00  2              MS. HURST:  Your Honor, that is not the complaint.

08:00  3    It has nothing to do with the heading.

08:00  4              THE COURT:  Few words now.  We're down to very few

08:00  5    words.

08:00  6              MS. HURST:  There were six Bratz-related buckets

08:00  7    in 9801.  In Appendix A there are 11 buckets and they don't

08:00  8    conform to the definitions in 9081.  I'm retyping it out of

08:00  9    the verdict form right now.  I'll have it ready in two

08:00  10   minutes.  That's the problem.

08:00  11             THE COURT:  Okay.

08:00  12             MR. ZELLER:  Well, if that's the issue, I don't

08:00  13   know why it wasn't raised on Thursday or Friday, when this

08:00  14   was sent to MGA.  This is obviously gonna cause delay.

08:00  15             I'll look at what she has to offer, but this is

08:00  16   the form they've had.

08:01  17             MS. HURST:  Just so the Court knows, I've never

08:01  18   seen anything with the words "Appendix A" on it, and we

08:01  19   never waived our objection to it conforming to 9081.

08:01  20             THE COURT:  Thank you.

08:01  21             We're done now.  Thank you very much.  I'll

08:01  22   resolve that if I need to.

08:01  23             Lastly, I want to go back to those three exhibits

08:01  24   that you were concerned were included.

08:01  25             Are they included now?

CV 04-9049 DOC – 4/11/2011 – Day 50, Volume 1 of 2

16

08:01  1        MR. ZELLER:  They should be here.  They just have

08:01  2   to be put back in the jury room is all.  Those were the ones

08:01  3   we discussed on Friday that the Court admitted.

08:01  4        THE COURT:  And once those are put back in the

08:01  5   jury room with Kathy, are you satisfied?

08:01  6        Mr. Quinn?

08:01  7        MR. QUINN:  Yes, Your Honor.

08:01  8        THE COURT:  Then you'll be able to sign it --

08:01  9        MR. QUINN:  Yes.

08:01 10        THE COURT:  -- but not till then.

08:01 11        MR. ZELLER:  And then, I know that there was an

08:01 12   issue, I believe -- at least, I understand that there's an

08:01 13   issue about the tangible exhibit list to go back with -- to

08:01 14   the jury room.

08:01 15        THE COURT:  Kathy, I'm going to get off the bench

08:01 16   now.  We're wasting time.

08:01 17        Kathy's going to show you those.  Okay?  And

08:01 18   they're right there.  And you're going to make sure that the

08:01 19   three exhibits are in order.

08:02 20        And I'm going to get the latest formatted

08:02 21   Appendix A to 9801 and see what's going on with that.  And

08:02 22   I'll be right back with you.

08:02 23            (Pause in the proceedings at 8:02 a.m.)

08:02 24            (Proceedings resumed at 8:15 a.m.)

08:15 25        THE COURT:  All right.  We're back on the record.

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 4/11/2011 - Day 50, Volume 1 of 2

17

08:15  1          And there are these things that I want to make

08:15  2  certain are recorded; and that is, Kathy just came in and

08:15  3  informed me that, Mr. Quinn, you're satisfied and you've now

08:15  4  signed the document; is that correct?

08:15  5          MR. QUINN:  That's correct.

08:15  6          THE COURT:  All right.  Let me read this.

08:15  7          It simply states, "Counsel stipulate that the

08:15  8  exhibits on the joint exhibit list are the exhibits in the

08:15  9  jury deliberation room.  They've been reviewed, and counsel

08:15  10  agree that they've been admitted into evidence and are

08:15  11  properly submitted to the jury for deliberation," with

08:15  12  Mr. Quinn and Ms. Keller's signature.

08:15  13          What this means -- and I want it absolutely

08:16  14  clear -- is, if an exhibit's missing by inadvertence or

08:16  15  mistake, the Court will not declare a mistrial, will not

08:16  16  start over again.  This is counsels' responsibility.

08:16  17          Second, Kathy, we had a -- I think Mr. Zeller

08:16  18  informed me last week that he was attempting to draw up a

08:16  19  schematic of where the different exhibits were located in

08:16  20  the jury room.  And is this -- has it been shown to MGA?

08:16  21          MR. McCONVILLE:  Yes, sir.

08:16  22          THE COURT:  Is this acceptable?

08:16  23          MR. McCONVILLE:  Yes, sir.

08:16  24          THE COURT:  Acceptable to you, Mr. Zeller?

08:16  25          MR. ZELLER:  It is.

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 4/11/2011 - Day 50, Volume 1 of 2

18

08:16   1          THE COURT:  And Mr. Quinn and Ms. Keller?

08:16   2          MR. QUINN:  Yes, I Your Honor.

08:16   3          MS. KELLER:  Yes, Your Honor.

08:16   4          THE COURT:  All right.  Then that will go back

08:16   5   also to the jury with an explanation when we bring them into

08:16   6   court.

08:16   7          The third is that, on the exhibit involving

08:16   8   Machado's disc from Mexico that MGA's objected to, but I've

08:16   9   allowed into evidence.  We tried to pull that up on the

08:16   10  computer.  Neither one of you were willing to go over that

08:17   11  disc with me during the trial.

08:17   12          But the computer doesn't pull up the information

08:17   13  with a totally clean laptop.  So we need a way to pull up

08:17   14  all that information, Mr. Zeller.

08:17   15         MR. ZELLER:  Yes, Your Honor.

08:17   16         THE COURT:  In addition, did you know there's a

08:17   17  dictionary involved; Machado had a dictionary, when you pull

08:17   18  it up, there's a dictionary there?

08:17   19         MR. ZELLER:  I did not.

08:17   20         THE COURT:  There's a dictionary.

08:17   21         MR. QUINN:  How does that define "idea"?

08:17   22         THE COURT:  Or "designs" or "reduce to practice."

08:17   23          But, any way, there's a dictionary there, among

08:17   24  other things.  So we need some way to pull up that

08:17   25  information so you have that, in total, along with the

CV 04-9049 DOC - 4/11/2011 - Day 50, Volume 1 of 2

19

08:17  1   printed exhibits that I've allowed.  And we need to resolve

08:17  2   that quickly.

08:17  3          So I'll leave that to each of your ability.

08:18  4          And, Kathy, what else?

08:18  5          Oh, I had moved, along with some help, all of your

08:18  6   stray boxes.  So Chris and Diane, if you're here, those

08:18  7   boxes along the wall, I've moved to a different room, the

08:18  8   empty ones.  So they're retrievable, but I just didn't want

08:18  9   "MGA" and "Mattel" with the markings on the boxes.  I moved

08:18  10  them Saturday morning out of that room.  They're just across

08:18  11  the hallway.  So when we need 'em for you and Diane, we can

08:18  12  retrieve them later on and pack everything back up.

08:18  13         I've got the special verdict form coming out to

08:18  14  you in just a moment.  It lacked the foreperson's signature,

08:18  15  and a lot of nits that I've corrected over the weekend.

08:18  16         Now, anything else?  And I'll be right back with

08:18  17  you.  Okay.

08:40  18             *(Pause in the proceedings at 8:18 a.m.)*

09:36  19             *(Proceedings resumed at 9:37 a.m.)*

09:36  20             *(Outside the presence of the jury.)*

09:37  21         THE COURT:  We're back on the record.  All counsel

09:37  22  are present.

09:37  23         We have a laptop that is capable of pulling up

09:37  24  this information.  How do we do that?  And can we bring the

09:37  25  disc out and test it now.

DEBBIE GALE, U.S. COURT REPORTER

09:37  1        MR. ZELLER:  I'm having someone look into this.

09:37  2        Apparently, what the issue is, is that, when --

09:37  3   when any kind of Microsoft program is enabled -- like

09:38  4   Word -- that it has a built-in dictionary.  So we're

09:38  5   attempting to find out if that function can be disabled.

09:38  6   And so that's a technical question we're just waiting for

09:38  7   the answer on.

09:38  8        THE COURT:  But the majority of the information we

09:38  9   still can't pull up.  It's a blank.  It's a compatibility

09:38  10  issue.  In fact, why don't we go back and just put the disc

09:38  11  in for a moment.  And let me take Ms. Hurst and Mr. Zeller

09:38  12  back with me.

09:38  13       MR. ZELLER:  Sure.

09:38  14       THE COURT:  Okay?

09:38  15       Off the record.

09:38  16         *(Pause in the proceedings at 9:38 a.m.)*

09:38  17         *(Proceedings resumed at 10:07 a.m.)*

09:38  18         *(Outside the presence of the jury.)*

10:07  19       THE COURT:  All right.  We're back on the record.

10:07  20  All counsel are present, and the parties are present.

10:07  21       Ms. Hurst and Mr. Zeller were present with

10:07  22  Jonathon, our MIS person.  There's a computer available to

10:07  23  pull up the Machado tapes -- or, I'm sorry -- disc.

10:07  24       Are you satisfied, Mr. Zeller?

10:07  25       MR. ZELLER:  Yes.  And what we're going to do is

| | | |
|---|---|---|
| 10:07 | 1 | prepare a duplicate copy of 8855-A.  And we're going to |
| 10:07 | 2 | convert those files to a pdf form, so they can be read. |
| 10:07 | 3 | THE COURT:  But that has to be ready to go now.  I |
| 10:07 | 4 | don't want to single out different pieces of evidence that |
| 10:07 | 5 | simply go flying back into the jury room. |
| 10:07 | 6 | So is that ready? |
| 10:07 | 7 | MR. ZELLER:  I will check on the status.  It was |
| 10:07 | 8 | being prepared when we decided that about -- when we agreed |
| 10:08 | 9 | upon this 15 or 20 minutes ago. |
| 10:08 | 10 | THE COURT:  All right.  Concerning the jury |
| 10:08 | 11 | verdicts -- or strike that -- the jury instructions, we've |
| 10:08 | 12 | corrected -- |
| 10:08 | 13 | MS. HURST:  I was just making sure I had their |
| 10:08 | 14 | concurrence on the disc, Your Honor.  I apologize. |
| 10:08 | 15 | THE COURT:  Do you have their concurrence? |
| 10:08 | 16 | MS. HURST:  Yes. |
| 10:08 | 17 | THE COURT:  All right.  I want to make certain |
| 10:08 | 18 | that the nits have been corrected in the jury instructions |
| 10:08 | 19 | and that you're satisfied, without waiving any prior |
| 10:08 | 20 | arguments. |
| 10:08 | 21 | Ms. Keller? |
| 10:08 | 22 | MS. KELLER:  Yes, Your Honor. |
| 10:08 | 23 | THE COURT:  Ms. Hurst? |
| 10:08 | 24 | MS. HURST:  Yes. |
| 10:08 | 25 | THE COURT:  Mr. Quinn? |

| | | |
|---|---|---|
| 10:08 | 1 | MR. QUINN:  Yes. |
| 10:08 | 2 | THE COURT:  Mr. Zeller? |
| 10:08 | 3 | MR. ZELLER:  Yes. |
| 10:08 | 4 | THE COURT:  All right.  Are you now satisfied with |
| 10:08 | 5 | Appendix A and Appendix B? |
| 10:08 | 6 | Ms. Hurst? |
| 10:08 | 7 | MS. HURST:  Yes, Your Honor. |
| 10:08 | 8 | THE COURT:  Ms. Keller? |
| 10:08 | 9 | MS. KELLER:  Yes, Your Honor. |
| 10:08 | 10 | THE COURT:  Mr. Quinn? |
| 10:08 | 11 | MR. ZELLER:  Yes, we are with appendix. |
| 10:08 | 12 | MR. QUINN:  Yes, Your Honor. |
| 10:09 | 13 | THE COURT:  With both appendices? |
| 10:09 | 14 | MR. ZELLER:  Yes. |
| 10:09 | 15 | THE COURT:  All right.  Concerning the special |
| 10:09 | 16 | verdict form.  Each counsel have agreed that the court would |
| 10:09 | 17 | previously explain the verdict form to the jury.  It will be |
| 10:09 | 18 | as simple as this:  That there are basically four causes of |
| 10:09 | 19 | action that will be decided. |
| 10:09 | 20 | The first is for declaratory relief, Mattel's |
| 10:09 | 21 | claim; the second for copyright infringement, the claim that |
| 10:09 | 22 | Mattel is bringing against MGA and Mr. Larian; the trade |
| 10:09 | 23 | secrets claim that Mattel is bringing against MGA and |
| 10:09 | 24 | Mr. Larian, and the claim by MGA against Mattel; and |
| 10:09 | 25 | finally, Mattel's claim for intentional interference with |

| 10:09 | 1 | contractual relations. |
| 10:10 | 2 | That's about as brief as the Court's explanation |
| 10:10 | 3 | should be.  But if you want anything else, I'm happy to |
| 10:10 | 4 | inform the jury. |
| 10:10 | 5 | On behalf of -- Mr. Quinn -- Mattel? |
| 10:10 | 6 | MR. QUINN:  That's satisfactory, Your Honor. |
| 10:10 | 7 | THE COURT:  Let's try to make it sound simple, |
| 10:10 | 8 | even though there's nothing simple about what they're about |
| 10:10 | 9 | to decide.  In fact, the Ninth Circuit hasn't decided some |
| 10:10 | 10 | of these issues yet, let alone the Supreme Court. |
| 10:10 | 11 | MR. ZELLER:  There was one nit on the first page |
| 10:10 | 12 | of the verdict form, which is, currently there's the |
| 10:10 | 13 | heading:  "Head and Body Drawings."  The parties agreed last |
| 10:10 | 14 | week that it should be "Sculptural Head and Body Drawings." |
| 10:10 | 15 | It's about halfway down the first page. |
| 10:10 | 16 | THE COURT:  Oh, where it says, "Head and Body |
| 10:10 | 17 | Drawings"? |
| 10:10 | 18 | MR. ZELLER:  Correct. |
| 10:10 | 19 | THE COURT:  And it should be "Head" -- |
| 10:10 | 20 | MR. ZELLER:  The word "sculptural" should be |
| 10:10 | 21 | inserted before "Head and Body Drawings." |
| 10:10 | 22 | THE COURT:  So "Head Sculptural." |
| 10:11 | 23 | MR. ZELLER:  "Head and Body Drawings." |
| 10:11 | 24 | THE COURT:  And? |
| 10:11 | 25 | MR. ZELLER:  No, no.  Just "Sculptural Head and |

CV 04-9049 DOC - 4/11/2011 - Day 50, Volume 1 of 2

24

| | | |
|---|---|---|
| 10:11 | 1 | Body Drawings." |
| 10:11 | 2 | THE COURT:  Okay.  Just a moment. |
| 10:11 | 3 | "Sculptural Head And Body Drawings." |
| 10:11 | 4 | Satisfactory to both parties? |
| 10:11 | 5 | MS. HURST:  We did agree to that. |
| 10:11 | 6 | THE COURT:  Okay.  I'll have that corrected in |
| 10:11 | 7 | just a moment. |
| 10:11 | 8 | Anything else on the verdict form, without waiving |
| 10:11 | 9 | any prior objections? |
| 10:11 | 10 | All right.  Now, let me talk to each of you, then, |
| 10:11 | 11 | about one more thing.  I want to speak to Mr. Eckert and |
| 10:11 | 12 | Mr. Larian with counsel present. |
| 10:11 | 13 | First, I've been getting a lot of discovery |
| 10:11 | 14 | requests on this alleged antitrust suit.  I want each of you |
| 10:11 | 15 | gentlemen to know I'm not going to release any information |
| 10:11 | 16 | until, or if, there's a verdict.  I think what that does is |
| 10:12 | 17 | it heightens the notoriety.  And I don't want another |
| 10:12 | 18 | attorney in Los Angeles who gets this making a public |
| 10:12 | 19 | statement because they think that they've now entered into |
| 10:12 | 20 | some discovery process.  So that's being consciously |
| 10:12 | 21 | withheld by the Court. |
| 10:12 | 22 | Number two, I've decided not to bring the |
| 10:12 | 23 | insurance carriers together at this moment.  If either of |
| 10:12 | 24 | you gentlemen are still capable or willing to negotiate, |
| 10:12 | 25 | whoever you want to go to is still available. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 4/11/2011 - Day 50, Volume 1 of 2

25

10:12   1       And I'll be supportive of that.  But until that

10:12   2   time, I'm not going to do anything about bringing your

10:12   3   insurance carriers together, Mr. Larian.  But if and when

10:12   4   there's a verdict, regardless of that verdict, I'm going to

10:12   5   bring those carriers together very quickly.  And in fact, I

10:12   6   think the carriers are going to be shocked at how quick that

10:12   7   is.

10:12   8       Number three, you have a series of lawsuits,

10:12   9   Mr. Larian, involving licensees.  I'm not certain of how

10:13   10  many of them there are.  There are anywhere between 8 and

10:13   11  15.  I'm not quite certain which licensee was suing you, and

10:13   12  which -- and who you were suing.  I'm probably going to

10:13   13  bring all of those cases together, as well.  But I'm not

10:13   14  going to do that until there's -- after a verdict.  In other

10:13   15  words, I want to get this case as low profile during the

10:13   16  deliberations as I can.

10:13   17      And my guess is that, many of your lawsuits --

10:13   18  without any comment from you -- involve licensing

10:13   19  disagreements in anticipation of Judge Larson's, what I

10:13   20  call, "worldwide injunction."  And, therefore, I don't know

10:13   21  if you lost zero money or if, in a sense, you believe you've

10:13   22  lost hundreds of millions of dollars because of the

10:13   23  injunction that went into effect, and eventually Ninth

10:13   24  Circuit's overturning of that injunctive relief.

10:13   25      So I'm going to wait also concerning any discovery

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:14 | 1 | requests and any motions to consolidate those cases, which |
| 10:14 | 2 | are tumbling into the Court, as well. |
| 10:14 | 3 | Finally, there have been inquiries, I think, of |
| 10:14 | 4 | Kathy from the U.S. Attorney's Office for information.  This |
| 10:14 | 5 | Court's not going to turn over any information until, and |
| 10:14 | 6 | if, there's a verdict in this matter to the U.S. Attorney's |
| 10:14 | 7 | Office.  They can go about their own devices, but I don't |
| 10:14 | 8 | want any heightened notoriety or any insinuation that either |
| 10:14 | 9 | or both parties are being investigated in this matter. |
| 10:14 | 10 | Now, is there anything further before I call the |
| 10:14 | 11 | jury? |
| 10:14 | 12 | MR. ZELLER:  There was one other description that |
| 10:14 | 13 | appears to have changed.  And I'm not sure how it happened. |
| 10:14 | 14 | It's on page 8. |
| 10:14 | 15 | THE COURT:  Of the special verdict form? |
| 10:14 | 16 | MR. ZELLER:  Correct. |
| 10:14 | 17 | THE COURT:  Just a minute.  I'm going to go back |
| 10:14 | 18 | and word process this one final time. |
| 10:14 | 19 | Let me look at page 8.  Page 8? |
| 10:15 | 20 | MR. ZELLER:  Item 9. |
| 10:15 | 21 | THE COURT:  "International Overview Strategic |
| 10:15 | 22 | Plan"?" |
| 10:15 | 23 | MR. ZELLER:  Right. |
| 10:15 | 24 | THE COURT:  TX24033? |
| 10:15 | 25 | MR. ZELLER:  Right. |

10:15   1           THE COURT:  I thought we picked that right up from

10:15   2   your --

10:15   3           MS. HURST:  That was the agreed name of the

10:15   4   document last week.

10:15   5           MR. ZELLER:  No, that's not correct.  It didn't

10:15   6   have the word "meetings" in it.  First of all, there's --

10:15   7   that's wrong.

10:15   8           THE COURT:  Okay.  How do you want that labeled?

10:15   9           MR. ZELLER:  Previously, it was testified to as

10:15   10  the International Strategic Plan.  I'm certainly willing to

10:15   11  call it something like "International Strategic Plan

10:15   12  Document" or PowerPoint.  But this is very confusing the way

10:15   13  it is in here.  It talks about "meetings," and that was

10:15   14  never agreed to.

10:15   15          THE COURT:  All right.

10:15   16          MS. HURST:  This is the title of the document, and

10:15   17  it is what we agreed to last week.  And I'm just -- I

10:15   18  apologize to the Court, but it's very frustrating not to

10:15   19  have people adhere to their agreements.

10:15   20          THE COURT:  No, no.  We're going to stop this

10:15   21  between the two of you now.  I've listened to this for over

10:15   22  four months.  You're both done.

10:15   23          MS. HURST:  Then we don't agree to the use of the

10:15   24  word "sculptural" in the block "Head and Body Drawings,"

10:16   25  because all the testimony has been that those were not

CV 04-9049 DOC - 4/11/2011 - Day 50, Volume 1 of 2

28

10:16  1    sculptural drawings.

10:16  2              THE COURT:  Well, there's no reason not to end the

10:16  3    case with the way we started.

10:16  4              MR. ZELLER:  The label on the drawings is

10:16  5    "Sculptural Head and Body Drawings."  That's the only reason

10:16  6    MGA agreed to it at all, because it says -- that's what

10:16  7    Carter Bryant labeled them.  We --

10:16  8              MS. HURST:  And the label on the document --

10:16  9              MR. ZELLER:  Excuse me.  Why is counsel

10:16  10   interrupting me, which apparently is her habit.

10:16  11             THE COURT:  Get out your checkbooks.

10:16  12             Do hear me?

10:16  13             MR. ZELLER:  Yes, sir.

10:16  14             THE COURT:  Do you hear me?

10:16  15             MS. HURST:  Yes, sir.

10:16  16             THE COURT:  I'll double it.

10:16  17             All right.  That is my first and last warning.

10:16  18             You have the floor, Mr. Zeller.

10:16  19             MR. ZELLER:  Thank you.

10:16  20             THE COURT:  Without interruption.

10:16  21             MR. ZELLER:  The Bryant drawings themselves that

10:16  22   are at issue here are actually labeled that by Mr. Bryant.

10:16  23   That's why -- that's why those were the words we suggested.

10:17  24   Those were the words that MGA agreed to.

10:17  25             THE COURT:  Okay.

| | | |
|---|---|---|
| 10:17 | 1 | MR. ZELLER: And we can pull those drawings for |
| 10:17 | 2 | the Court and show them to Your Honor. |
| 10:17 | 3 | THE COURT: All right. Now, just a moment. |
| 10:17 | 4 | Also, I find it rather strange that we wouldn't |
| 10:17 | 5 | label No. 9 on page 8 the same. If you look down the entire |
| 10:17 | 6 | list, it says "Documents." There isn't one other document |
| 10:17 | 7 | that says "meetings." |
| 10:17 | 8 | MR. ZELLER: Right. |
| 10:17 | 9 | THE COURT: I can go back through my notes. It's |
| 10:17 | 10 | *de minimus*. |
| 10:17 | 11 | Now, your concern, Ms. Hurst, without interruption |
| 10:17 | 12 | from Mattel. |
| 10:17 | 13 | MS. HURST: One moment, Your Honor. I'm just |
| 10:17 | 14 | gonna pull up the document. |
| 10:17 | 15 | THE COURT: If somebody would show me TX24033, it |
| 10:17 | 16 | would be very easy to make that judgment call. |
| 10:17 | 17 | And finally, for my record, so the Circuit |
| 10:17 | 18 | understands, this is what this Court discerns occurred early |
| 10:18 | 19 | on in the litigation when Judge Larson had the case. With |
| 10:18 | 20 | no fault of any counsel present, there were negotiations, |
| 10:18 | 21 | apparently. And the negotiations went this way: Instead of |
| 10:18 | 22 | complying with discovery requests, each party felt that the |
| 10:18 | 23 | other party hadn't turned over certain information. So each |
| 10:18 | 24 | party took it upon themselves not to turn over information, |
| 10:18 | 25 | and to simply take the position that since they hadn't |

Case 2:04-cv-09049-DOC-RNB   Document 10453   Filed 04/13/11   Page 30 of 46   Page ID #:317959
CV 04-9049 DOC - 4/11/2011 - Day 50, Volume 1 of 2

30

| | | |
|---|---|---|
| 10:18 | 1 | received a document request, or a response to a |
| 10:18 | 2 | interrogatory, or a discovery request -- because Item 1 |
| 10:18 | 3 | hadn't been turned over, they weren't going to, on the |
| 10:18 | 4 | opposite side, turn over No. 5. |
| 10:18 | 5 | That apparently continued throughout the duration |
| 10:18 | 6 | of Judge Larson's trial.  And what the parties came to |
| 10:18 | 7 | expect is that they do not comply with discovery requests |
| 10:18 | 8 | from the other party, and demanded specificity; therefore, |
| 10:18 | 9 | we've run into millions and millions of dollars of Court |
| 10:19 | 10 | time and wasted time between the parties. |
| 10:19 | 11 | MS. HURST:  I have the document, Your Honor. |
| 10:19 | 12 | THE COURT:  All right.  Let me see it. |
| 10:19 | 13 | MS. HURST:  It's entitled, Strategic Plan |
| 10:19 | 14 | Meetings, September 20, 2005, International Overview." |
| 10:19 | 15 | THE COURT:  Let me see the document. |
| 10:19 | 16 | MS. HURST:  *(Shows document on laptop.)* |
| 10:19 | 17 | THE COURT:  Mike, come on up here for a moment. |
| 10:19 | 18 | Well, we're going to make this simple.  We're |
| 10:19 | 19 | going to name it "Strategic Plan Meetings International |
| 10:19 | 20 | Overview Document." |
| 10:20 | 21 | MR. ZELLER:  Right. |
| 10:20 | 22 | THE COURT:  Incredible.  That will be the new |
| 10:20 | 23 | label.  So read that back to me, Deborah -- I mean, Debbie. |
| 10:20 | 24 | *(Record read.)* |
| 10:20 | 25 | THE COURT:  All right.  Now, the next concern was |

CV 04-9049 DOC - 4/11/2011 - Day 50, Volume 1 of 2

31

| | | |
|---|---|---|
| 10:20 | 1 | on what page? |
| 10:20 | 2 | MR. ZELLER:  That was it. |
| 10:20 | 3 | THE COURT:  Oh, it was the sculptural. |
| 10:20 | 4 | "Sculptural" is going to remain.  That's a silly dispute |
| 10:20 | 5 | between the parties. |
| 10:20 | 6 | All right.  I'll be right back with you. |
| 10:20 | 7 | *(Pause in the proceedings at 10:20 a.m.)* |
| 10:21 | 8 | *(Proceedings resumed at 10:28 a.m.)* |
| 10:28 | 9 | THE COURT:  All right.  Counsel, we're back on the |
| 10:28 | 10 | record. |
| 10:28 | 11 | Page 1 is being replaced with "Sculptural Head and |
| 10:28 | 12 | Body Drawings." |
| 10:28 | 13 | Page 2, what I decided to do is simply |
| 10:28 | 14 | "International Overview Strategic Plan Meetings Document," |
| 10:28 | 15 | as you requested, Mr. Zeller. |
| 10:28 | 16 | MR. ZELLER:  Thank you. |
| 10:29 | 17 | THE COURT:  All right.  Counsel, is there anything |
| 10:29 | 18 | further before I call in the jury? |
| 10:29 | 19 | All right.  Nancy, get the jury. |
| 10:29 | 20 | MR. ZELLER:  There's just the matter of the CD, |
| 10:29 | 21 | which is being burnt and is on its way from our office. |
| 10:29 | 22 | THE COURT:  Do I have your permission during the |
| 10:29 | 23 | lunch hour just to go in with the clerk and put the correct |
| 10:29 | 24 | CD burned into the packet? |
| 10:29 | 25 | MR. ZELLER:  Yes, sir, Your Honor. |

CV 04-9049 DOC - 4/11/2011 - Day 50, Volume 1 of 2

32

| | | |
|---|---|---|
| 10:29 | 1 | THE COURT:  Ms. Hurst? |
| 10:29 | 2 | MS. HURST:  Yes. |
| 10:29 | 3 | MS. KELLER:  Yes. |
| 10:29 | 4 | THE COURT:  And I'll have the court clerk do that. |
| 10:29 | 5 | I'm not going to enter into the room. |
| 10:30 | 6 | *(In the presence of the jury.)* |
| 10:30 | 7 | THE COURT:  Good morning. |
| 10:30 | 8 | How is everybody today? |
| 10:30 | 9 | Good morning. |
| 10:30 | 10 | All right.  Counsel, thank you very much for your |
| 10:30 | 11 | courtesy.  And the parties are present. |
| 10:31 | 12 | And, Debbie, if you can't hear me, let me know. |
| 10:31 | 13 | Now, any delay this morning was entirely my |
| 10:31 | 14 | responsibility.  Counsel have been ready since 7:30 this |
| 10:31 | 15 | morning, so it's the Court you should blame for the luxury |
| 10:31 | 16 | you've had this morning.  All right? |
| 10:31 | 17 | There are a series of pages on what we call a |
| 10:31 | 18 | "Special Verdict Form."  And it's going to be thick.  And |
| 10:31 | 19 | I'm going to try to walk through it, because it looks worse |
| 10:31 | 20 | than it is.  Okay?  And the simplest way to explain this is |
| 10:31 | 21 | that there are basically four claims that you're going to be |
| 10:31 | 22 | considering. |
| 10:31 | 23 | The first claim we're going to call "Mattel's |
| 10:31 | 24 | Claim for Declaratory Relief."  Okay?  So Mattel has a claim |
| 10:32 | 25 | against MGA for declaratory relief.  And there are two |

DEBBIE GALE, U.S. COURT REPORTER

10:32  1   questions that you would be responding to.

10:32  2          The second claim is a claim by Mattel against MGA

10:32  3   and Mr. Larian for copyright infringement.  So Mattel is

10:32  4   claiming against MGA and Mr. Larian for copyright

10:32  5   infringement.

10:32  6          The third claim is a claim for trade secret

10:32  7   misappropriation.  And each of the parties are accusing the

10:32  8   other party of misappropriating a trade secret or trade

10:32  9   secrets.  So Mattel is accusing MGA and Mr. Larian of

10:32 10   misappropriation of trade secrets, and MGA is accusing

10:32 11   Mattel of misappropriation of a trade secret or trade

10:33 12   secrets.

10:33 13          And the fourth and last claim is a claim by Mattel

10:33 14   for intentional interference with contractual relation.

10:33 15          Now, depending upon what your answers are depends

10:33 16   upon what you fill out.

10:33 17          You'll see sometimes "If you answer Question No. 1

10:33 18   or 2" in a certain way, "turn over to Question 3, 4, 5."  Or

10:33 19   if you answer Question 1 or 2 in a different way, you stop

10:33 20   and jump to another question.  So read that carefully.

10:33 21          And believe me we're sitting here.  So if you have

10:33 22   a question, you send that out.  Now, we believe that we've

10:33 23   covered all the law and so, therefore, we're not amiss,

10:33 24   though, to any questions you might have to make certain

10:34 25   we're giving as much clarity as possible to you.

| | | |
|---|---|---|
| 10:34 | 1 | Now, you're gonna be taken into a room that's |
| 10:34 | 2 | dazzling.  It's going to have lots and lots of displays. |
| 10:34 | 3 | But you'll see that they're set up -- and counsel have been |
| 10:34 | 4 | kind enough -- Counsel, give me the planogram -- or the jury |
| 10:34 | 5 | room chart.  And I'm actually giving you a courtroom, a |
| 10:34 | 6 | chambers of a judge.  And you're going to be deliberating |
| 10:34 | 7 | here.  *(Indicating.)* |
| 10:34 | 8 | And there's going to be a computer, if you need |
| 10:34 | 9 | it, on a table right here that's set up for you.  And if you |
| 10:34 | 10 | have any need of help, we have an MIS person, Jonathon, |
| 10:34 | 11 | who's here who can help you, as well. |
| 10:34 | 12 | And then you're going to see racks of displays |
| 10:34 | 13 | around the room and also evidence in the kitchen area. |
| 10:34 | 14 | Okay?  And when you get in there, it will take you a little |
| 10:35 | 15 | while just to sort all that out.  But you'll see it's very |
| 10:35 | 16 | well set up.  So we'll send back with you this chart also |
| 10:35 | 17 | that basically helps you find things, if you need to find |
| 10:35 | 18 | certain items. |
| 10:35 | 19 | Now, finally, we don't know whether you take |
| 10:35 | 20 | 5 minutes literally or 55 days.  And I've had juries out as |
| 10:35 | 21 | long as 31 days before.  So, for the eight of you, pace |
| 10:35 | 22 | yourself.  If you want to go home at 4:30 in the afternoon, |
| 10:35 | 23 | or you've just gotten to a point where there's, you know, |
| 10:35 | 24 | just a need for a perspective the next day, be kind to |
| 10:35 | 25 | yourselves.  By the same token, if you want to deliberate |

CV 04-9049 DOC - 4/11/2011 - Day 50, Volume 1 of 2

35

10:35   1   until midnight, that's fine.  Just call out -- and I'm not

10:35   2   joking about that.  I think the federal courts don't

10:35   3   understand that, when we think it's 4:30 or 5:00, you might

10:35   4   be at a critical part of your discussion, where you've been

10:36   5   taking all day about an issue and you're about ready to

10:36   6   first, second or third vote.  And when that occurs, I don't

10:36   7   want to call in, as a judge, and say, "Oops, it's time to go

10:36   8   home."

10:36   9        It's time to go home when you want to go home.

10:36   10  But tell me about 5:00 or 5:30 if you want to go late, so I

10:36   11  always have a court reporter so, in case you need something

10:36   12  on the record, I have that available.

10:36   13       Now, I've been going in and taking all your food

10:36   14  at night.  I'm just joking with you.  But you can bring food

10:36   15  in there if you'd like to.  We don't have a refrigerator in

10:36   16  that room.  But if you want cold Coca-Colas or whatever, you

10:36   17  know, soda pop, there's a refrigerator right down the

10:36   18  hallway.  But from now on, we're moving you out of this jury

10:36   19  room in my court to a much larger judge's chambers, because

10:36   20  we thought it would be wise to have you in one location with

10:37   21  the evidence.  And the small jury room just didn't

10:37   22  accomplish it.

10:37   23       Now, what we going to do with the six of you

10:37   24  alternates?  You start running laps around the courthouse.

10:37   25  I'm just joking you.

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 10453   Filed 04/13/11   Page 36 of 46   Page ID #:317965
CV 04-9049 DOC - 4/11/2011 - Day 50, Volume 1 of 2

36

10:37  1        We're really concerned because one of the six of

10:37  2   you will be drawn by lot if one of the jurors can't continue

10:37  3   because of sickness or some tragedy, if there's good legal

10:37  4   cause.  And we don't know which of the six of you would be

10:37  5   called, because we have your names in a little bowl.  And if

10:37  6   one of you are called, the jury is required to start their

10:37  7   deliberations all over again.

10:37  8        So what that means is, let's say that they decided

10:37  9   a particular claim, but one of the jurors couldn't go on

10:37  10  because of illness.  You need to go back and participate in

10:37  11  that entire process so that we have the same eight jurors

10:37  12  deciding that issue.

10:37  13       And here's what we're afraid of:  The case has

10:38  14  gotten some notoriety, from my perspective.  I think from

10:38  15  counsel's perspective, they believe it's gotten a lot of

10:38  16  notoriety.  As old as I am, it's kind of -- you know.  But

10:38  17  it's gotten some notoriety.

10:38  18       And we're concerned -- and let me say that I'm

10:38  19  concerned that, if you go back to work, or you go back to

10:38  20  the community, it's impossible for you six alternates to

10:38  21  withstand a supervisor, a spouse, a friend who says,

10:38  22  "Welcome back to work.  What have you been doing?"

10:38  23       "Oh, I've been sitting on the jury."

10:38  24       "Oh, is that the case that I read about?"

10:38  25       You see?  And you can't withstand that.  And

CV 04-9049 DOC - 4/11/2011 - Day 50, Volume 1 of 2

37

| | | |
|---|---|---|
| 10:38 | 1 | that's normal. |
| 10:38 | 2 | So we're going to have you come in at a different |
| 10:38 | 3 | time so that you don't mix with the eight sitting jurors. |
| 10:38 | 4 | You're going to come in at 9:30 every day. |
| 10:38 | 5 | Now, you can come in earlier, if you want to.  But |
| 10:39 | 6 | I want you to bring reading material, whatever you'd like to |
| 10:39 | 7 | bring, as long as it's not associated with this case and as |
| 10:39 | 8 | long as it's not the press. |
| 10:39 | 9 | Okay?  No newspapers coming in. |
| 10:39 | 10 | So I don't have anything further with the eight of |
| 10:39 | 11 | you right now. |
| 10:39 | 12 | Now, counsel have given me permission to tell you |
| 10:39 | 13 | that there's one day that I have to catch a plane to |
| 10:39 | 14 | Washington D.C. and I want to tell you -- |
| 10:39 | 15 | Counsel, do I have your permission? |
| 10:39 | 16 | MR. ZELLER:  Yeah. |
| 10:39 | 17 | MR. McCONVILLE:  Yes, sir. |
| 10:39 | 18 | THE COURT:  I'm going to be with you today.  I'm |
| 10:39 | 19 | going to be with you Tuesday.  I'm going to be with you |
| 10:39 | 20 | Thursday and Friday.  But I've arranged so I'm here all day |
| 10:39 | 21 | Tuesday, but I'm going to catch the red eye special out of |
| 10:39 | 22 | LAX at 11:00 something.  I've got to be in DC just for four |
| 10:39 | 23 | hours.  I'm going to literally touch the ground, have a |
| 10:39 | 24 | meeting, which is of not great significance -- well, to you |
| 10:40 | 25 | anyway -- and I'm going to come right back. |

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 10453   Filed 04/13/11   Page 38 of 46   Page ID #:317967
CV 04-9049 DOC - 4/11/2011 - Day 50, Volume 1 of 2

38

| | | |
|---|---|---|
| 10:40 | 1 | So that's the one day, Wednesday, that I can't |
| 10:40 | 2 | have a rereading.  And if you ask a question, I may have to |
| 10:40 | 3 | respond to it first thing Thursday morning.  I want you to |
| 10:40 | 4 | know about that.  That's entirely my fault, and I apologize |
| 10:40 | 5 | to you.  But that's the one day I literally have to be gone, |
| 10:40 | 6 | and I've changed it a number of times now. |
| 10:40 | 7 | So you can continue on with your deliberations and |
| 10:40 | 8 | anything that you can resolve or talk about.  I just want |
| 10:40 | 9 | you to know that, with Counsel's permission, that we've all |
| 10:40 | 10 | agreed that I can't tell you that.  And I don't want to tell |
| 10:40 | 11 | you why 'cause of the drama.  It's drama. |
| 10:40 | 12 | Beyond that, if you want to deliberate on a |
| 10:40 | 13 | Saturday -- and I'm not suggesting it -- that's fine.  If |
| 10:40 | 14 | you're close to a point that you think that a Saturday |
| 10:40 | 15 | deliberation's acceptable, you tell me.  You set the hours. |
| 10:41 | 16 | I would appreciate if you come in every day at |
| 10:41 | 17 | 8:30, just because we're accustomed to doing that, except |
| 10:41 | 18 | for the alternates.  Okay. |
| 10:41 | 19 | Now, you will take all your notes with you. |
| 10:41 | 20 | Let me check with counsel. |
| 10:41 | 21 | Mr. Quinn, Mr. Price, Mr. Zeller, is there |
| 10:41 | 22 | anything you would like me to say to the jury at this time? |
| 10:41 | 23 | MR. ZELLER:  No. |
| 10:41 | 24 | MR. QUINN:  No. |
| 10:41 | 25 | MR. PRICE:  No. |

| 10:41 | 1 | THE COURT: Ms. Hurst, Ms. Keller, and |

10:41   1          THE COURT: Ms. Hurst, Ms. Keller, and

10:41   2   Mr. McConville, is there anything you would like me to say?

10:41   3          MS. KELLER: No, Your Honor.

10:41   4          MR. McCONVILLE: No, sir.

10:41   5          MS. HURST: Nothing.

10:41   6          THE COURT: Now, there's one more thing that I

10:41   7   want to make certain that you know.

10:41   8          Courts have started more cases over, and we've

10:41   9   been required to, because a juror has gone to a reference

10:41   10  work of some type. They've gone to the Internet, or they've

10:41   11  gone to the dictionary to look up a term, or they've gone to

10:41   12  an outside source or friend to ask them about, you know,

10:42   13  some aspect of the law or even advice.

10:42   14         There are only eight people who have ever heard

10:42   15  these facts at one time and in one place. So, if you go to

10:42   16  a dictionary or you go to the Internet to start looking up

10:42   17  legal definitions or terms -- everything that we believe you

10:42   18  need is in this packet of instructions. And if it's not,

10:42   19  you'll make a request of me.

10:42   20         Now, remember, finally, I've got to keep a record

10:42   21  of what you say. So I haven't become that formal. Let me

10:42   22  warn you. I've kind of come in and said good morning to

10:42   23  you. I may come in and say good morning to you in the

10:42   24  morning; but beyond that, I'll have no conversation. And if

10:42   25  you ask a question, you'll have the foreperson write out

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 10453   Filed 04/13/11   Page 40 of 46   Page ID #:317969
CV 04-9049 DOC - 4/11/2011 - Day 50, Volume 1 of 2

40

10:42  1   that question, or any member of the jury, and send that out

10:43  2   to me, and we'll try to respond.  Okay?

10:43  3        All right.  Why don't you take all your notes with

10:43  4   you.  Why don't you take everything that you've got in this

10:43  5   room.  Let me see the alternates in just a moment.  You six

10:43  6   stay with me.

10:43  7        And, Bob, if you would take them out of this room,

10:43  8   down to the main room, and explain the restroom facilities,

10:43  9   et cetera.

10:43  10       COURT SECURITY OFFICER:  Ladies and gentlemen.

10:43  11  *(Indicates.)*

10:43  12           *(Jury retires to deliberate.)*

10:43  13           *(Outside the presence of the jury.)*

10:43  14       THE COURT:  *(To the alternate jurors:)* That means

10:43  15  there's been no death, no illness to any of the jurors.

10:43  16       But if something happens, we can't wait now for a

10:43  17  person to recover from the flu.  In other words, we would

10:43  18  probably, by agreement, not know how long that person would

10:43  19  be sick -- for one, two, three or four days.  Counsel would

10:43  20  probably stipulate that they didn't want the rest of the

10:44  21  jurors infected.  And even if it took more time, we would

10:44  22  probably send one of you right back into the jury room.

10:44  23       So this room now belongs to you.  That old jury

10:44  24  room is your jury room.  And if you'd like, I'm simply going

10:44  25  to excuse you at this time to go to an early lunch or go

Case 2:04-cv-09049-DOC-RNB   Document 10453   Filed 04/13/11   Page 41 of 46   Page ID #:317970
CV 04-9049 DOC - 4/11/2011 - Day 50, Volume 1 of 2

41

| | | |
|---|---|---|
| 10:44 | 1 | around Santa Ana.  But I'm going to ask you to be back in |
| 10:44 | 2 | the jury room at 1:30.  Okay? |
| 10:44 | 3 | Except we have to take the notebooks.  I'm going |
| 10:44 | 4 | to have you leave them right on your seat, because you're |
| 10:44 | 5 | not going to do any deliberating.  You're not even thinking |
| 10:44 | 6 | about this case.  So any notes you've taken, put right on |
| 10:44 | 7 | your seat. |
| 10:44 | 8 | Now, there's one thing -- don't go away for just a |
| 10:44 | 9 | moment.  Okay? |
| 10:44 | 10 | Can I see lead counsel for a moment. |
| 10:44 | 11 | *(Pause in the proceedings at 10:44 a.m.)* |
| 10:46 | 12 | THE COURT:  What I'm trying to check on is if we |
| 10:46 | 13 | can take you to lunch as a group. |
| 10:46 | 14 | And I think the first day I'm simply going to |
| 10:46 | 15 | order that.  I don't know that the rules allow it, but |
| 10:46 | 16 | that's what we're going to do. |
| 10:46 | 17 | I think after 50 days of serving, that you're |
| 10:46 | 18 | entitled to a free lunch. |
| 10:46 | 19 | I'm just joking with you. |
| 10:46 | 20 | But let's try to keep you together today, so if |
| 10:46 | 21 | you'd go back in this jury room right here, I think the |
| 10:47 | 22 | marshals will take you downstairs. |
| 10:47 | 23 | Now, if you want to go to lunch separately, then I |
| 10:47 | 24 | can't pay for that.  But I'd like to at least try to afford |
| 10:47 | 25 | that courtesy to you.  And I would like to try to keep you |

| | | |
|---|---|---|
| 10:47 | 1 | together, in case there are any press or people walking |
| 10:47 | 2 | around.  Nobody is intentionally talking to you.  But |
| 10:47 | 3 | somebody might say something in the courthouse.  So let's |
| 10:47 | 4 | try to keep you separate.  So if you would go back to this |
| 10:47 | 5 | jury room, I think the marshals will take you to lunch |
| 10:47 | 6 | separate from the other jurors today. |
| 10:47 | 7 | Okay.  Do you have any questions of me? |
| 10:47 | 8 | A JUROR:  We're going to be here from 9:30 until |
| 10:47 | 9 | what time every day? |
| 10:47 | 10 | THE COURT:  I think about 3:30 or 4:00. |
| 10:47 | 11 | I think a couple of you ride the bus together |
| 10:47 | 12 | 'cause I've seen you get off the bus right down here at 6:30 |
| 10:47 | 13 | in the morning, and I've seen -- he gets off the bus |
| 10:48 | 14 | about -- before you. |
| 10:48 | 15 | A JUROR:  We take the bus. |
| 10:48 | 16 | THE COURT:  That's about 6:30. |
| 10:48 | 17 | A JUROR:  We ride the bus together. |
| 10:48 | 18 | THE COURT:  You can continue to ride the bus |
| 10:48 | 19 | together, but please don't have any conversation.  I know |
| 10:48 | 20 | you both get off the bus together.  But you can't talk to |
| 10:48 | 21 | him about the case, and he can't talk to you about his |
| 10:48 | 22 | deliberations.  Understood? |
| 10:48 | 23 | I know you're on the same bus. |
| 10:48 | 24 | Any other questions. |
| 10:48 | 25 | A JUROR:  Is it possible to get wifi access. |

DEBBIE GALE, U.S. COURT REPORTER

10:48  1              THE COURT:  I don't know.  Let me talk to

10:48  2  Jonathon.

10:48  3              I'm a little afraid of that, but wifi access?

10:48  4              MIS TECHNICIAN:  We don't have any the government

10:48  5  can provide, Your Honor.

10:48  6              THE COURT:  But the jury room down in the first

10:48  7  floor has wifi access?

10:48  8              MIS TECHNICIAN:  Yes, it does, Your Honor.

10:48  9              THE COURT:  If you want to sit down in the jury

10:48  10  room on the first floor, as long as there's no conversation.

10:48  11  But no Internet, no dictionaries, no newspaper articles.

10:49  12              A JUROR:  Just for work.

10:49  13              THE COURT:  Internet for work for everything else,

10:49  14  but don't Google this case.  So if you want to work down

10:49  15  there, fine.

10:49  16              A JUROR:  We leave the notes here?

10:49  17              THE COURT:  Leave the notes.

10:49  18              A JUROR:  If the news is not related to this case?

10:49  19              THE COURT:  If the news is the not related to this

10:49  20  case, that's fine.  I'm a little worried that if there's any

10:49  21  press coverage.

10:49  22              A JUROR:  International Times?

10:49  23              THE COURT:  Fine.

10:49  24              A JUROR:  Your Honor, we also have a phone, in

10:49  25  case there's –– next week leave a phone number here, in case

| | | |
|---|---|---|
| 10:49 | 1 | you want to call us? |
| 10:49 | 2 | THE COURT:  I'll know you're here because you've |
| 10:49 | 3 | got to be around the area.  You've got to be in a restaurant |
| 10:49 | 4 | because we're taking you there.  Or if you decide to go |
| 10:49 | 5 | yourself, we can find you.  But I really want you on the |
| 10:49 | 6 | premises from about, oh, 9:30 until the marshal comes in and |
| 10:50 | 7 | releases you every day for lunch or takes you to lunch |
| 10:50 | 8 | around 11:30 to 12:00.  And I want you back here about 1:30. |
| 10:50 | 9 | But I'll send you home probably about 3:30 to 4:00 every |
| 10:50 | 10 | day, little bit earlier.  Okay. |
| 10:50 | 11 | Yes, sir? |
| 10:50 | 12 | A JUROR:  When we come at 9:30, do we come here? |
| 10:50 | 13 | THE COURT:  Come right into this room.  The six of |
| 10:50 | 14 | you will go into this room.  The other eight will be in the |
| 10:50 | 15 | larger room deliberating. |
| 10:50 | 16 | I want to thank you very. |
| 10:50 | 17 | A JUROR:  One more question, Your Honor.  We are |
| 10:50 | 18 | going to be here until they reach a verdict? |
| 10:50 | 19 | THE COURT:  Until they reach a verdict.  We don't |
| 10:50 | 20 | know if it's 5 hours or 55 days. |
| 10:50 | 21 | A JUROR:  Be here everyday? |
| 10:50 | 22 | THE COURT:  Monday through Friday. |
| 10:50 | 23 | Now, thank you very much.  If you will put your |
| 10:50 | 24 | notebooks on the seat you occupy and go back to the jury |
| 10:50 | 25 | room. |

DEBBIE GALE, U.S. COURT REPORTER

| | |
|---|---|
| 10:50 | 1 |
| 10:50 | 2 |
| 10:51 | 3 |
| 10:51 | 4 |
| 10:51 | 5 |

1    *(Alternates jurors retire to the jury room*

2    *at 10:50 a.m.)*

3         *(Proceedings concluded at 10:50 a.m.)*

4                    -oOo-

CV 04-9049 DOC – 4/11/2011 – Day 50, Volume 1 of 2

46

10:51  1                              –oOo–

10:51  2

10:51  3                           CERTIFICATE

10:51  4

10:51  5         I hereby certify that pursuant to Section 753,

10:51  6   Title 28, United States Code, the foregoing is a true and

10:51  7   correct transcript of the stenographically reported

10:51  8   proceedings held in the above-entitled matter and that the

10:51  9   transcript page format is in conformance with the

10:51  10  regulations of the Judicial Conference of the United States.

10:51  11

10:51  12  Date:  April 11, 2011

10:51  13

10:51
10:51
10:51  14
10:51
10:51  15  _____
10:51
10:51  16           DEBBIE GALE, U.S. COURT REPORTER
10:51  16           CSR NO. 9472, RPR

10:51  17

      18

      19

      20

      21

      22

      23

      24

      25