```
 1                    UNITED STATES DISTRICT COURT

 2                   CENTRAL DISTRICT OF CALIFORNIA

 3            HONORABLE DAVID O. CARTER, JUDGE PRESIDING

 4                          - - - - - - -

 5

 6   MATTEL, INC., ET AL.,            )
                                      )
 7             Plaintiffs,            )
                                      )
 8        vs.                         )  No. CV 04-9049-DOC
                                      )      Day 50
 9   MGA ENTERTAINMENT, INC., ET AL., )      Volume 2 of 2
                                      )
10             Defendants.            )
     _____)
11

12

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                       Jury Trial

17                  Santa Ana, California

18                 Monday, April 11, 2011

19

20

21

22   Jane C.S. Rule, CSR 9316
     Federal Official Court Reporter
23   United States District Court
     411 West 4th Street, Room 1-053
24   Santa Ana, California 92701
     (714) 558-7755
25
     l1-04-12 MattelV2
```

Case 2:04-cv-09049-DOC-RNB   Document 10454   Filed 04/13/11   Page 2 of 19   Page ID #:317977
CV 04-9049-DOC - 04/11/2011 - Day 50, Vol. 2 of 2

2

```
 1   APPEARANCES OF COUNSEL:

 2


 3   FOR PLAINTIFFS MATTEL, INC., ET AL.:

 4             QUINN, EMANUEL, URQUHART & SULLIVAN
               By:  JOHN B. QUINN
 5                  MICHAEL T. ZELLER
                    WILLIAM PRICE
 6                  Attorneys at Law
               865 South Figueroa Street
 7             10th Floor
               Los Angeles, California 90017-2543
 8             (213) 443-3000

 9


10   FOR DEFENDANTS MGA ENTERTAINMENT, INC., ET AL.:

11             ORRICK, HERRINGTON & SUTCLIFFE, LLP
               BY:  THOMAS S. MC CONVILLE
12                  Attorney at Law
               4 Park Plaza
13             Suite 1600
               Irvine, California 92614
14             (949) 567-6700

15             - AND -

16             ORRICK, HERRINGTON & SUTCLIFFE, LLP
               BY:  ANNETTE L. HURST
17                  Attorney at Law
               405 Howard Street
18             San Francisco, California 94105
               (415) 773-5700

19
               - AND -
20
               KELLER RACKAUCKAS, LLP
21             BY:  JENNIFER L. KELLER
                    Attorney at Law
22             18500 Von Karman Avenue
               Suite 560
23             Irvine, California 92612
               (949) 476-8700

24

25
```

```
 1   APPEARANCES OF COUNSEL (Continued):

 2


 3   FOR DEFENDANT CARLOS GUSTAVO MACHADO GOMEZ:

 4            SCHEPER, KIM & OVERLAND, LLP
              BY:  ALEXANDER H. COTE
 5                Attorney at Law
              601 West Fifth Street
 6            12th Floor
              Los Angeles, California 90071
 7            (213) 613-4660

 8            - AND -

 9            LAW OFFICES OF MARK E. OVERLAND
              BY:  MARK E. OVERLAND
10                Attorney at Law
              100 Wilshire Boulevard
11            Suite 950
              Santa Monica, California 90401
12            (310) 459-2830

13

14   Also Present:

15            ISAAC LARIAN, MGA CEO
              ROBERT ECKERT, Mattel CEO
16            LILY MARTINEZ, Mattel Employee

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | **I N D E X** |
| 2 | |
| 3 | |
| 4 | **JURY NOTES** |
| 5 | |

Case 2:04-cv-09049-DOC-RNB   Document 10454   Filed 04/13/11   Page 5 of 19   Page ID #:317980
CV 04-9049-DOC - 04/11/2011 - Day 50, Vol. 2 of 2

5

| | |
|---|---|
| 1 | **SANTA ANA, CALIFORNIA, MONDAY, APRIL 11, 2011** |
| 2 | **DAY 50, VOLUME 2 OF 2** |
| 3 | **(3:27 p.m.)** |
| 4 | *(The following proceedings is taken outside* |
| 5 | *the presence of the jury.)* |
| 6 | THE COURT: All right. Counsel, we are back on |
| 7 | the record on Mattel v. MGA. |
| 8 | And counsel now are still present, Mr. Quinn is |
| 9 | present, Ms. Keller is present. |
| 10 | Counsel, I've proposed to bring the jury out and |
| 11 | state to them that we'll start reading the January 27th and |
| 12 | January 28th transcript tomorrow morning and ask them if |
| 13 | they are looking for the transcript for the entire day or |
| 14 | just a portion thereof. If they clarify that, then we'll |
| 15 | know that they are looking for a specific portion. My guess |
| 16 | is that they are looking for that portion of Carter Bryant, |
| 17 | and I don't recall if he just started testifying that day |
| 18 | or -- |
| 19 | MR. ZELLER: That was his -- the beginning of his |
| 20 | first day was the 27th. |
| 21 | THE COURT: Beginning of his first day. Then I |
| 22 | propose that we read that portion and not inquire any more |
| 23 | specifically than the jury's request, but I'll ask them. |
| 24 | MS. KELLER: Your Honor, if the request is to read |
| 25 | a specific portion on a specific topic, then I would ask the |

1  Court to include in the read back the cross-examination on
2  that specific topic.
3           THE COURT: It's not -- it's the 27th and the
4  28th, and that's what I'm going to read. So if they want
5  more, they will ask for more. I take that literally from
6  the jury.
7           MS. KELLER: The problem is, your Honor, some of
8  the jurors may not recall that that was only direct
9  testimony, and this is a problem we run into over and over
10 again that -- that, you know, you may have one juror who has
11 in his notes a particular day, but the other jurors may not,
12 and they may not realize that there was either supplementary
13 testimony or contradictory testimony. So I would just ask
14 the Court to inquire about the topic.
15          MR. QUINN: Your Honor, they will tell us if --
16 if, you know, it turns out that they wanted something or
17 intended something different.
18          THE COURT: All right. Second, I know there is a
19 request for a content index of what specific evidence is
20 available, and they want us to "explain," quote, "to us how
21 to better locate it concerning the exhibits." Is there an
22 objection to the Court's index that's been prepared by the
23 clerk and the descriptive nature of it?
24          MR. ZELLER: The dispute is -- is limited to the
25 descriptions that MGA had prepared for these documents. As

Case 2:04-cv-09049-DOC-RNB   Document 10454   Filed 04/13/11   Page 7 of 19   Page ID #:317982
CV 04-9049-DOC - 04/11/2011 - Day 50, Vol. 2 of 2

7

1   I mentioned previously when we discussed this, MGA has some
2   fairly argumentative entries.  I can provide some examples
3   to the Court.
4         THE COURT:  Give me an example, for instance.
5         MR. ZELLER:  Exhibit 1820, 12/3/03 Kilpin to
6   Russell e-mail re-preempting MGA Forever Best Friends
7   launch; Exhibit 2107, 10/23/03 Han, H-a-n, to Bousquette and
8   Kilpin re: confidential MGA retail prices from TRU.
9         THE COURT:  All right.  Now, let's stop with
10  those.  I don't propose to go through the Court's records
11  and ferret out each one of these.
12        Is there any way we can get this information to
13  the jury without, you know, the accusation by either party
14  that these are overly descriptive?
15        MS. KELLER:  Your Honor, each party -- this isn't
16  just MGA's description.  Each party every week went through
17  the lists of the exhibits and worked out a description that
18  was placed in this document, each party every week
19  laboriously.  Now we are hearing from Mattel --
20        THE COURT:  Just a moment.
21        MS. KELLER:  -- some objections.
22        THE COURT:  Nancy, I want Cathy up here.  She was
23  the clerk at the time, okay?
24        Please continue.
25        MS. KELLER:  The night before closing argument is

1    when we first got a bunch of objections from Mr. Zeller with
2    respect to this document that was prepared throughout the
3    entire trial by both sides, little by little, week by week.
4            THE COURT: Okay. I'll have Cathy come up. She
5    is now supervising clerk, and she was the clerk of the
6    Court.
7            MS. KELLER: This was submitted as a stipulated
8    list, your Honor.
9            THE COURT: I see. All right. I'll talk to
10   Cathy.
11           MR. ZELLER: It was not stipulated to in terms of
12   its descriptions. The Court recalls that I did object.
13   Mr. Watson told them that the descriptions were not correct.
14   The reason why it never got resolved was, simply put,
15   because, ultimately, it became very clear and the Court
16   stated that the list, as is, was not going back to the jury.
17           THE COURT: And that was my recollection also. I
18   never intended the list to go back and go through a
19   description of each of these items and to be concerned about
20   how the parties were describing them and -- I want to talk
21   to Cathy.
22           MS. KELLER: Your Honor, if I could, the time that
23   objection was raised by Mr. Zeller was the night before
24   closing argument.
25           THE COURT: Well, that's all right. I'll still

1  make my record, and I'll still find out from Cathy what
2  occurred from each of you, so we'll see.  I just don't know
3  because it was represented to me that everything was going
4  along well, and apparently not quite as well as we expected.
5       Well, let's do this:  Let's bring out the jury and
6  find out if it's acceptable to them if we start with a
7  rereading tomorrow of January 27th.  I think that will take
8  us probably at least a day.
9       Jane, I'll need a series of court reporters up
10 tomorrow to interchange.
11      So Nancy, why don't we gather the jury for a
12 moment and ask them to come into court.
13      And by the way, counsel, this is quite typical.  I
14 can't remember a case where we haven't had extensive
15 rereading that's complex in nature.  This doesn't catch the
16 Court by surprise at all.  In fact, it's suspected.
17          *(Discussion held off the record.)*
18      THE COURT:  We are on the record.
19      There is a request by the jury to "Please provide
20 us with a table of content/index of what a specific evidence
21 is, or explain to us better how to locate it," and those are
22 the exhibits.
23      Now, I've got two contradictory views.  One is
24 from MGA that this was a stipulated description in each line
25 each week.  The other by Mattel that this was not only not

Case 2:04-cv-09049-DOC-RNB   Document 10454   Filed 04/13/11   Page 10 of 19   Page ID
#:317985
CV 04-9049-DOC - 04/11/2011 - Day 50, Vol. 2 of 2

10

```
 1  descriptive, but I think Mr. Zeller is correct.  I
 2  represented to Mr. Zeller that this description we could
 3  expect wouldn't be going back to the jury.  I think that was
 4  on -- in the last week sometime of our proceedings, because
 5  I think Mr. Zeller was concerned about the descriptive
 6  nature of that at the time.
 7           I want to have you quietly work with both counsel
 8  and see if we can resolve this in some way to get an index
 9  back to them, but we'll do that after the jury comes in.  I
10  want you to listen to this, though, because you were the
11  clerk at the time.
12           Counsel, I don't think we want the alternates at
13  this time, do we?
14           MR. QUINN:  No.
15           THE COURT:  Okay.  Get the jury.
16           (The following proceedings is taken in the
17       presence of the jury and not the alternate
18       jurors.)
19           THE COURT:  All right.  The jury is present, of
20  course the alternates are not present.
21           I received three notes from the jury, and let me
22  restate those back to you.  The first note, "For your
23  information, we will be leaving at 4:00 p.m. today, thank
24  you."  Yes, you will.  That's the easy one we can resolve
25  for you immediately, okay?
```

Case 2:04-cv-09049-DOC-RNB   Document 10454   Filed 04/13/11   Page 11 of 19   Page ID #:317986
CV 04-9049-DOC - 04/11/2011 - Day 50, Vol. 2 of 2

11

```
 1              The second one is, "Please provide us with a table
 2   of content/index of what specific evidence is, or explain to
 3   us better how to locate it."  I'm a little concerned, and
 4   I'm going to work with the parties, because some of those
 5   tables that the Court use have descriptive natures, and I
 6   don't want you to be influenced by the descriptive nature of
 7   it.  It could be unduly prejudicial, so we've got to work
 8   that out this evening and try to get some better index to
 9   you in some way.  Now, they may just be numbers, we're not
10   sure yet, and that may not be helpful, but we'll try.  And
11   you can also ask us, you know, what you're thinking about
12   trying to locate it.  Maybe we can, you know, ferret those
13   out for you quickly also.
14              The third is, "Need a transcript for both
15   January 27th and January 28th."  We'll be prepared tomorrow
16   morning.  Here is the process.  We need to read back to you
17   in open court.  In other words, there is no transcript that
18   we can just hand you, okay?  So I want to apologize for
19   that, but I have a series of two or three court reporters
20   coming up.  And January 27th and 28th we think was Carter
21   Bryant's testimony, or the beginning of it.
22              I'm going to take each of your requests literally.
23   When you request something January 27th, 28th, we're going
24   to read those two days to you.  Now, you may decide -- hold
25   on, don't panic.  It's fine.  It's fine.
```

1      You may decide that you're looking for one
2 specific portion of the testimony, and if so, and you can
3 narrow that down for us, we'll try to find that, but I have
4 to be very careful and have time with counsel to make
5 certain that we supply what you're looking for.  For
6 instance, maybe a question is asked the 27th, but there is a
7 different answer or the same answer on the 29th or the 30th
8 because he was on the stand for a long period of time.
9      So if you're looking for one portion, please tell
10 us, and then we'll go through the five or six days he was on
11 the stand in direct, cross, redirect, recross.  If you are
12 literally looking for January 27th and 28th, that's what
13 we'll read to you.  And you may decide that you don't want
14 to stop at the 28th.  You may decide what you are looking
15 for hasn't been covered, okay?
16      So right now, January 27th and 28th, and I will
17 commence the reading of those two days tomorrow morning at
18 8:30.  I think for the 15 minutes you get tonight, did you
19 want to do 15 minutes of reading tonight, or do you want to
20 go back and talk about it?
21      THE JUROR:  Your Honor, we wanted to get -- to be
22 more specific on the 27th and 28th, we wanted to get
23 information on the Hawaiian Mamma -- Alaska Mamma.
24      THE COURT:  Alaska Mamma?
25      THE JUROR:  Alaska Mamma, thank you.

1                THE COURT: Okay. Are you limiting it to those
2     two days, the 27th and 28th, or all information during the
3     time he was on the stand?
4                Better yet, I'm going to send you back. Make a
5     specific note so that you are not doing that in our
6     presence, and go back and tell us if you are looking for
7     Alaska Mamma, that gives us time to search through
8     everything. In other words, we should be supplying to you
9     direct, cross, redirect, recross, if any questions were
10    asked, and we should make certain that that flows in a
11    format that includes all of that comprehensive information,
12    okay?
13               I can't recall, quite frankly, if it was limited
14    to January 27th or January 28th, or if it might have
15    extended to cross or redirect or recross. So if you are
16    specific, then we'll do a word search tonight and try to
17    come up with what you need. Otherwise, please don't be
18    concerned. I remind you that I've sat through nine months
19    of litigation before in complex litigation, and having
20    testimony reread is not only appropriate, it really gives
21    you a sense of, you know, what you need, you're hearing
22    again. So don't shy away from either volume of work or any
23    demand you're making on us; is that fair? And both parties
24    will work very hard to get this to you, I promise you.
25               So why don't you go back before you leave this

```
 1  evening.  If this is still your request, we'll start
 2  January 27th and 28th, but I want to read those full days.
 3  I'm going to stop on the 28th, literally, and that's the end
 4  of it.  If you want to go on at that time, you'll inform me.
 5  If this is a narrow request, or you're looking for something
 6  specific, put that in writing so I have a good record, and
 7  then we'll get busy tonight when you go home, okay?
 8              THE JURY:  No audible response.
 9              THE COURT:  Okay.  You're excused.
10              Counsel, anything further at this time?
11              MR. QUINN:  No, your Honor.
12              MR. ZELLER:  No, your Honor.
13              MS. KELLER:  No, your Honor.
14              THE COURT:  Thank you very much.
15              THE JUROR:  Thank you.
16              THE COURT:  And by the way, just leave at 4:00.
17  You are admonished not to discuss this matter amongst
18  yourselves, nor form or express any opinion concerning the
19  case.  I won't call you back into court formally.  When you
20  leave, forget about this case.
21              THE JUROR:  Absolutely.
22              THE COURT:  And come back tomorrow, 8:30.
23              THE JUROR:  Okay.
24              THE COURT:  All right.  Now, counsel, have a seat
25  for a moment.
```

Case 2:04-cv-09049-DOC-RNB   Document 10454   Filed 04/13/11   Page 15 of 19   Page ID #:317990
CV 04-9049-DOC - 04/11/2011 - Day 50, Vol. 2 of 2

15

 1           *(The following proceedings is taken outside*
 2        *the presence of the jury.)*
 3              THE COURT:  Cathy, I want you to work with
 4   Ms. Keller and Mr. Quinn for just a moment.  They are lead
 5   counsel.  Get out the list and see if we can narrow some of
 6   the descriptive terms.  If we can't, then I think
 7   tentatively I agree with Mr. Zeller.  I think tentatively
 8   these terms were never agreed upon going back to the jury,
 9   and if it has an influence or bearing on the way the jurors
10   looked at a particular incident and thought it had the
11   Court's preemptor on it, I think that's extraordinarily --
12   well, not extraordinarily, but has the potentiality of bias.
13              So Cathy, they are yours.  I'll be back with you
14   in just a moment.
15              MS. KELLER:  Your Honor, before we commence, can
16   we just add one thing for the record?
17              THE COURT:  Please.
18              MS. KELLER:  As I said, there had been weeks and
19   weeks of collaboration on this list, and it was either the
20   night before -- I think it was the night before of closing
21   argument we received an extremely lengthy redlined list from
22   Mr. Zeller that is just enormous with proposed changes.  I
23   think this would take --
24              THE COURT:  Just a moment.  How many?  It doesn't
25   look to me like you're thumbing through that, that there are

 1  that many redlines.
 2          MS. KELLER:  Every single page has multiple
 3  entries.  Some pages have every single entry redlined.
 4          THE COURT:  Can I see one?
 5          MS. KELLER:  Yes.
 6          THE COURT:  Believe it or not, I've got time.  So
 7  let's just take page 1 for just a moment.  And on page 1,
 8  let's take 1, "photo of original Bratz drawing presented by
 9  Bryant," and what Mr. Zeller is objecting to is 9/1/2000
10  meeting, and the reason I assume is because you believe the
11  drawings might have been presented in August.
12          MR. ZELLER:  Correct.
13          THE COURT:  Okay.  Number 2, or 1C, 7/18/03 Wall
14  Street Journal article revealing "Bryant designated Bratz."
15  That is a redacted article.  That, I would leave.  I would
16  strike the 9/1/2000 meeting because it may be earlier in
17  August, and in fact, there's one argument that could have
18  been presented in June.
19          MR. ZELLER:  All right.
20          THE COURT:  So I think that's prejudicial.
21  1C, I don't think is prejudicial.  It's obviously
22  redacted.
23          Three, "Tangible Bryant Bratz notebook," and it's
24  got "tangible" --
25          Well, you know, I've got your note, don't I?  You

```
 1  can't follow me because I've got your --
 2          MS. KELLER:  It's a -- I think you have a redlined
 3  version with --
 4          THE COURT:  Yeah, so in other words, I need this
 5  duplicated.
 6          MS. KELLER:  Both parties --
 7          THE COURT:  We can go through this one by one.
 8          MS. HURST:  It doesn't include our edits is the
 9  problem.  We have compromised on various descriptions all
10  along the way, so if we're going to reopen a description on
11  everything, then we'll need to supply a Redline to the Court
12  as well.
13          THE COURT:  Well, that's fine.  But here is what I
14  think we are going to do.  My -- my guess is I don't know
15  how to present the Court's official record in light of
16  complaint.
17          And Cathy, work with them for a second, and we'll
18  get back on the record, but we'll wait for the note from the
19  jurors.
20          MS. KELLER:  Your Honor, maybe I should give you
21  the original, un-redlined version, so the Court can look at
22  it.
23          THE COURT:  Sure, why don't you give me the
24  redlined and un-redlined, and why don't you get a copy for
25  yourself and we'll Xerox that off and counsel, you'll
```

```
 1   remain.
 2           Now, Mr. Larian, Mr. Eckert, you are more than
 3   welcome to go home.  We're going to do redlining and
 4   un-redlining tonight, so why don't you gentlemen spend your
 5   time in a better way.  Counsel and I want to enjoy each
 6   other's company tonight.  We'll resolve it, but it may take
 7   a long, long time, okay?  Goodnight.
 8           Oh, I'm sorry, Mr. Eckert, just in case the jury
 9   comes back in, my apologies, give us 15 more minutes.  If
10   they come back in with a note, we know they are going home
11   at 4:00, just so that you are here and cover the basis.
12           Counsel, if you want to go out to dinner from 4:00
13   to 4:30 and then meet me at 5:00 and start in on this, or if
14   you want to start in on this, if you can't reach an
15   agreement, and then go to dinner, or do you want to just
16   skip dinner?
17           MS. KELLER:  Your Honor --
18           THE COURT:  Let's talk about that informally.  I'm
19   going to get off the bench.
20           (Recess.)
21                            -oOo-
22
23
24
25
```

-oOo-

**CERTIFICATE**

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date: April 12, 2011

_____
JANE C.S. RULE, U.S. COURT REPORTER
CSR NO. 9316