## INSTRUCTION NO. 25

## DISPUTED TERM: "AT ANY TIME DURING MY EMPLOYMENT"

The term "at any time during my employment" in the January 4, 1999 Employee Confidential Information and Inventions Agreement refers to the scope of Carter Bryant's employment between January 4, 1999 and October 19, 2000.

However, the parties dispute whether the term also extends beyond the scope of Carter Bryant's employment and includes nights and weekends. This is another dispute you must resolve.

In order to own any of Carter Bryant's inventions:

1.     Mattel must prove that the inventions were conceived or reduced to practice between January 4, 1999 and October 19, 2000;

AND

2.     Mattel must also prove that the inventions were conceived or reduced to practice at any time during Carter Bryant's employment either because:

(a)     The inventions were conceived or reduced to practice during working hours and while performing tasks for Mattel;

OR

(b)     The term "at any time during my employment" extends beyond working hours (nights and weekends) and to tasks not performed for Mattel.

## INSTRUCTION NO. 26
## INTERPRETATION — INTRODUCTION

In deciding what the terms of a contract mean, you must decide what the parties intended at the time the contract was created. You may consider the usual and ordinary meaning of the language used in the contract as well as the circumstances surrounding the making of the contract.

The following instructions may also help you interpret the terms of the contract.

## INSTRUCTION NO. 27

## INTERPRETATION — MEANING OF ORDINARY WORDS

You should assume that the parties intended the words in their contract to have their usual and ordinary meaning unless you decide that the parties intended the words to have a special meaning.

## INSTRUCTION NO. 28

## INTERPRETATION — MEANING OF TECHNICAL WORDS

You should assume that the parties intended technical words used in the contract to have the meaning that is usually given to them by people who work in that technical field, unless you decide that the parties clearly used the words in a different sense.

## INSTRUCTION NO. 29
## INTERPRETATION —
## CONSTRUCTION OF CONTRACT AS A WHOLE

In deciding what the words of a contract mean to the parties to the contract, you should consider the whole contract, not just isolated parts. You should use each part to help you interpret the others, so that all the parts make sense when taken together.

**INSTRUCTION NO. 30**

**INTERPRETATION — CONSTRUCTION BY CONDUCT**

In deciding what the words in a contract meant to the parties, you may consider how the parties acted after the contract was created but before any disagreement between the parties arose.

## INSTRUCTION NO. 31

## INTERPRETATION — CONSTRUCTION AGAINST DRAFTER

In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.

## INSTRUCTION NO. 32
## COPYRIGHT INFRINGEMENT — INTRODUCTION

Mattel claims ownership of certain copyrights and seeks damages against MGA, Isaac Larian, and MGA Entertainment (Hong Kong) Ltd. for copyright infringement.  MGA, Isaac Larian, and MGA Entertainment (Hong Kong) Ltd. deny infringing the copyrights.

Mattel has the burden of proving by a preponderance of the evidence that it is the owner of the copyrights and that MGA, Isaac Larian, and/or MGA Entertainment (Hong Kong) Ltd. copied original elements of the copyrighted works.  Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringed.

## INSTRUCTION NO. 33
## COPYRIGHT INFRINGEMENT — COPYRIGHT — DEFINED

Copyright is the exclusive right to copy.  This right to copy includes the exclusive rights to:

1.  Authorize, or make additional copies, or otherwise reproduce the copyrighted work in copies;

2.  Recast, transform, and adapt the work; that is, prepare derivative works based upon the copyrighted work;

3.  Distribute copies of the copyrighted work to the public by sale or through a limited license; and

4.  Display publicly a copyrighted pictorial work, graphic work, or sculptural work.

It is the owner of a copyright who may exercise these exclusive rights to copy.  The term "owner" includes the author of the work or an assignee.  In general, copyright law protects against distribution of substantially similar copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.

## INSTRUCTION NO. 34
## COPYRIGHT INFRINGEMENT — COPYRIGHT —
## SUBJECT MATTER — GENERALLY

The works at issue are the sketches, drawings, and sculpts, if any, that Mattel has proven it owns. These works are known as pictorial works, graphic works, and sculptural works.

These works can be protected by the copyright law. Only that part of the works comprised of original works of authorship fixed in any tangible medium of expression from which it can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device is protected by the Copyright Act.

Copyright protection for an original work of authorship does not extend to any idea or concept, regardless of the form in which it is described, explained, illustrated, or embodied.

# INSTRUCTION NO. 35
## COPYRIGHT INFRINGEMENT — COPYRIGHT —
## SUBJECT MATTER — IDEAS AND EXPRESSION

Copyright law allows the author of an original work to prevent others from copying the way or form the author used to express the ideas in the author's work.  Only the particular expression of an idea can be copyrighted. Copyright law does not give the author the right to prevent others from copying or using the underlying ideas contained in the work, such as procedures, processes, systems, methods of operation, concepts, principles, or discoveries.

The right to exclude others from copying extends only to how the author expressed the ideas in the copyrighted work.  The copyright is not violated when someone uses an idea from a copyrighted work, as long as the particular expression of that idea in the work is not copied.

# INSTRUCTION NO. 36

## COPYRIGHT INFRINGEMENT — ELEMENTS — OWNERSHIP AND COPYING

Anyone who copies original elements of a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

Mattel has the burden of proving both of the following by a preponderance of the evidence:

1.    That it is the owner of a valid copyright; and
2.    MGA, Isaac Larian, and/or MGA Entertainment (Hong Kong) Ltd. copied original elements from the copyrighted work.

If you find that Mattel has proved both of these elements, your verdict should be for Mattel. If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for MGA, Isaac Larian, and/or MGA Entertainment (Hong Kong) Ltd.

## INSTRUCTION NO. 37

## COPYRIGHT INFRINGEMENT —

## OWNERSHIP OF VALID COPYRIGHT — DEFINITION

Mattel is the owner of a valid copyright in a sketch, drawing, or sculpt at issue if it proves by a preponderance of the evidence that:

1.     The sketches, drawings, and sculpts are original; and

2.     Mattel is the author of the work under the work made for hire Instruction (Instruction No. 39) or received a transfer of the copyright in the sketch, drawing, or sculpt.

## INSTRUCTION NO. 38
## COPYRIGHT INFRINGEMENT — AUTHORSHIP

The creator of an original work is called the author of that work. An author originates or "masterminds" the original work, controlling the whole work's creation and causing it to come into being.

Others may help or may make valuable or creative contributions to a work. However, such a contributor cannot be the author of the work unless that contributor caused the work to come into being. One must translate an idea into a fixed, tangible expression in order to be the author of the work. Merely giving an idea to another does not make the giver an author of a work embodying that idea.

# INSTRUCTION NO. 39

## COPYRIGHT INFRINGEMENT —

## COPYRIGHT INTERESTS — WORK MADE FOR HIRE

A copyright owner is entitled to exclude others from copying a work made for hire.

A work made for hire is one that is prepared by an employee in carrying out the employer's business.

The employer is considered the author of the work and owns the copyright unless the employer and employee have agreed otherwise in writing.

A copyright owner of a work made for hire may enforce the right to exclude others in an action for copyright infringement.

## INSTRUCTION NO. 40
## COPYRIGHT INFRINGEMENT —
## COPYRIGHT INTERESTS — ASSIGNEE

A copyright owner may convey to another person all or part of the owner's property interest in the copyright; that is, the right to exclude others from copying the work.  The person to whom the copyright is conveyed becomes the owner of the copyright in the work.

To be valid, the conveyance must be in writing.  The person to whom this right is transferred is called an assignee.

## INSTRUCTION NO. 41
## COPYRIGHT INFRINGEMENT —
## COPYRIGHT INTERESTS — ORIGINALITY

An original work may include or incorporate elements taken from works in the public domain.  The original parts of the works at issue are the parts created:

1.   Independently by Carter Bryant, that is, Carter Bryant did not copy it from another work; and

2.   By use of at least some minimal creativity.

In copyright law, the "original element" of a work need not be new or novel.

# INSTRUCTION NO. 42

## COPYRIGHT INFRINGEMENT —
## COPYRIGHT INTERESTS — DERIVATIVE WORK

A copyright owner is entitled to exclude others from creating derivative works based upon the owner's copyrighted work. The term derivative work refers to a work based on one or more pre-existing works, such as a reproduction, or any other form in which the pre-existing work is recast, transformed or adapted. Accordingly, the owner of a copyrighted work is entitled to exclude others from recasting, transforming or adapting the copyrighted work without the owner's permission.

If the copyright owner exercises the right to create or allow others to create a derivative work based upon the copyrighted work, this derivative work may also be copyrighted. Only what was newly created, such as the editorial revisions, annotations, elaborations, or other modifications to the pre-existing work, is considered to be the derivative work.

Copyright protection of a derivative work covers only the contribution made by the author of the derivative work. If the derivative work incorporates pre-existing work by others or work in the public domain, the derivative author's protection is limited to elements added by the derivative author to the pre-existing work of others or public domain work, or limited to the manner in which the derivative author combined the pre-existing elements by other persons or pre-existing elements in the public domain work into the derivative work.

The owner of a derivative work may enforce the right to exclude others in an action for copyright infringement.

# INSTRUCTION NO. 43
## COPYRIGHT INFRINGEMENT — COPYING — ACCESS AND SUBSTANTIAL SIMILARITY

Mattel claims that the Bratz production sculpts (TX 17732 and TX 17733) copied original elements from the original sculpts (TX 1136 or TX 1141) as well as sculpt drawings to which Mattel claims ownership.

Mattel also claims that the four first generation Bratz dolls (TX 12286, TX 17561, TX 17558, and TX 17551), as well as two subsequent generation Bratz dolls (TX 17546 and TX 17529) copied original elements from Carter Bryant's sketches, to which Mattel claims ownership.

Mattel may show that MGA, Isaac Larian, and MGA Entertainment (Hong Kong) Ltd. copied from the copyrighted work by showing by a preponderance of the evidence that MGA, Isaac Larian, and MGA Entertainment (Hong Kong) Ltd. had access to the copyrighted works at issue and that MGA, Isaac Larian, and MGA Entertainment (Hong Kong) Ltd. created products that are substantially similar to original elements of the copyrighted works.

## INSTRUCTION NO. 44
## COPYRIGHT INFRINGEMENT — COPYING — ACCESS DEFINED

As part of its burden, Mattel must show by a preponderance of the evidence that MGA, Isaac Larian, and MGA Entertainment (Hong Kong) Ltd. had access to any works in which Mattel has proven it owns a copyright.  You may find that MGA, Isaac Larian, and MGA Entertainment (Hong Kong) Ltd. had access to any works in which Mattel has proven it owns a copyright if they had a reasonable opportunity to view and/or copy the copyrighted works before their products were created.

## INSTRUCTION NO. 45
## COPYRIGHT INFRINGEMENT —
## SUBSTANTIAL SIMILARITY EXTRINSIC TEST; INTRINSIC TEST

Mattel must prove that the final Bratz production sculpts (TX 17732 and TX 17733), the four first generation Bratz dolls (TX 12286, TX 17561, TX 17558, and TX 17551), and two subsequent generation Bratz dolls (TX 17546 and TX 17529) were substantially similar to any works in which Mattel has proven it owns a copyright.

The term "substantial similarity" has a legal meaning.  Works of art may be "similar" in the layperson's sense of the term, but that is not the sort of similarity relevant under copyright law.  To prove that two works are substantially similar, Mattel must prove similarities in expression, not ideas.

The determination of whether two works are substantially similar proceeds in two parts: (1) an objective or "extrinsic" test; and (2) a subjective or "intrinsic" test.  To prove substantial similarity, Mattel must satisfy both tests by a preponderance of the evidence.

# INSTRUCTION NO. 46

## COPYRIGHT INFRINGEMENT — OBJECTIVE ("EXTRINSIC") TEST

The objective or "extrinsic" test has two parts.

Mattel must first prove that the ideas expressed by the copyrighted work and the allegedly infringing work are substantially similar.

Second, Mattel must prove that the protectable elements of the copyrighted work and the allegedly infringing work are substantially similar. Protectable elements do not include (1) an idea, (2) expression required by an idea, (3) expression that is an idea in and of itself, and (4) expression that serves a functional purpose.

In conducting this second step of the objective or "extrinsic" test, you must first disregard or "filter out" unprotectable elements of the works in which Mattel has proven it owns a copyright. You must then determine whether an allegedly infringing work is substantially similar to the protectable elements of any of the works in which Mattel has proven that it owns a copyright.

Instruction No. 47 contains a chart that lists the unprotectable and protectable elements of doll drawings that, Mattel claims, have been infringed by the four first generation Bratz dolls (TX 12286, TX 17561, TX 17558, and TX 17551) and the two subsequent generation Bratz dolls (TX 17546 and TX 17529).

Instruction No. 48 contains a chart that lists the unprotectable and protectable elements of the sculpts and sculpt sketches that, Mattel claims, have been infringed by the Bratz production sculpts (TX 17732 and TX 17733).

To satisfy the objective or "extrinsic" test, Mattel must prove that an allegedly infringing work is substantially similar to the protectable elements in the drawings, sculpts and sketches that Mattel has proven that it owns.

# INSTRUCTION NO. 47

## COPYRIGHT INFRINGEMENT —

## PROTECTABLE/UNPROTECTABLE ELEMENTS:

## DOLL DRAWINGS

| **Protectable Elements Include:** | **Unprotectable Elements Include:** |
|---|---|
| The precise shape, size, and placement of the dolls' anatomical features | The resemblance or similarity to human form (the presence of hair, head, eyes, a nose, mouth, lips, ears, a neck, legs, arms, and a torso) |
| Hair-dos | Exaggerated features, including but not limited to an oversized head, oversized eyes, large lips, oversized feet, slim arms, a diminished nose, and a long torso |
| Face paint | Idealized features, such as luscious lips, high cheekbones, almond-shaped eyes, a slim waist, a small nose, and long limbs |
| Fashion outfits and accessories | The idea of a young, fashion-forward female with an attitude, and the expression traditionally associated with that idea, including but not limited to heavy make-up, an "urban" look, defiant poses, defiant gazes, angular eyebrows, trendy clothing, shoes and accessories |
| The precise combination of features | Features shared by a particular race or ethnicity (e.g., skin tone) |
| | Postures that mimic the human form, and postures that are standard for the effective display of fashionable clothing |

# INSTRUCTION NO. 48

## COPYRIGHT INFRINGEMENT —
## PROTECTABLE AND UNPROTECTABLE ELEMENTS:
## SCULPTS AND SCULPT SKETCHES

| **Protectable Elements Include:** |
|---|
| The precise shape, size, and placement of the dolls' anatomical features |
| Minute sculptural variations, including the precise angles at which the dolls' anatomical features meet |

| **Unprotectable Elements Include:** |
|---|
| The resemblance or similarity to human form, anatomy, and physiology |
| Exaggerated features, including but not limited to an oversized head, oversized eyes, large lips, oversized feet, slim arms, a diminished nose, and a long torso |
| Idealized features, such as luscious lips, high cheekbones, almond-shaped eyes, a slim waist, a small nose, and long limbs |
| Postures and poses that mimic the human form or are standard for the effective display of fashionable clothing, such as arms that protrude outwards so that doll clothes and accessories can be easily removed |
| Features necessary to make a fashion doll capable of mass production |