ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: 415-773-5700
Facsimile: 415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: 213-629-2020
Facsimile: 213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant. | Case No. CV 04-9049 DOC (RNBx)<br><br>Consolidated with Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**MGA PARTIES' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE MGA'S UNFAIR COMPETITION CLAIM** |
| AND CONSOLIDATED ACTIONS | Trial Date: January 18, 2011<br>Judge: Hon. David O. Carter |

1    Pursuant to the Court's April 14, 2011 order, MGA submits the following

2 proposed findings of fact and law regarding MGA's claim for unfair competition

3 under California Business and Professions Code § 17200.

4    This civil case was called for trial concurrently before the Court and jury, on

5 January 18, 2011, the Honorable David O. Carter presiding.  The Court, having

6 heard all the testimony and having considered all admissible evidence, as well as

7 the arguments of counsel and their respective proposed findings of fact and

8 conclusions of law, hereby enters its findings of fact and conclusions of law in this

9 case in conformity with Federal Rule of Civil Procedure 52 on MGA

10 Entertainment, Inc.'s claim for violations of California Business & Professions

11 Code § 17200, *et seq.* against Mattel, Inc.  Any finding of fact that constitutes a

12 conclusion of law shall be deemed a conclusion of law and any conclusion of law

13 that constitutes a finding of fact shall be deemed a finding of fact.

14                          **FINDINGS OF FACT**

15 **I.    PARTIES**

16 1.    Plaintiff MGA Entertainment, Inc. is a California Corporation with its

17      principal place of business in Van Nuys, California.  Dkt. No. 8583 (MGA

18      Reply to Mattel Fourth Amended Answer and Counterclaims) ¶ 71.

19 2.    Defendant Mattel, Inc. is a Delaware corporation with its principal place of

20      business in El Segundo, California.  Dkt. No. 8583 (MGA Reply to Mattel

21      Fourth Amended Answer and Counterclaims) ¶ 69.

22 **II.   BACKGROUND**

23 3.    Mattel's introduced a fashion doll product "Barbie" in 1959.  3/1/2011 (Vol.

24      1) Tr. 125:18-19 (Eckert Testimony).  Barbie enjoyed largely unrivaled

25      dominance over the fashion doll market since her introduction.  As late as

26      2000, Barbie had approximately ninety percent share of the fashion doll

27      market.  3/1/2011 (Vol. 2) Tr. 22:7-19 (Eckert Testimony).

28 4.    MGA introduced its own fashion doll product "Bratz" in 2001.  2/16/2011

- 1 -

1    (Vol. 2) Tr. 119:20-120:1 (Larian Testimony).

2  **III.   MATTEL'S AGREEMENT WITH AND PAYMENTS TO KOHL'S**
          **FOR MGA'S BRATZ SHELF SPACE**
3

4  5.   Kohl's Department Stores is a national retailer that carries fashion dolls in its

5       stores nationwide.  3/29/2011 (Vol. 1) Tr. 112:3-9 (Vollero Testimony),

6       4/6/2011 (Vol. 3) Tr. 66:13-19 (Scholvin Testimony), 3/24/2011 (Vol. 2) Tr.

7       159:22-160:2 (Larian Testimony).

8  6.   In 2004, Kohl's had a total of eight feet of shelf space in the toy department

9       in each of its stores nationwide allocated to fashion doll products.  4/6/2011

10      (Vol. 3) Tr. 73:4-8, 77:3-5 (Scholvin Testimony).  Barbie had four feet of

11      this shelf space and Bratz also had four feet.  *Id.* at 73:9-10, 77:6-9.

12  7.  In January 2005, Mattel entered into an agreement with Kohl's whereby

13      Kohl's agreed to give Mattel the shelf space that Kohl's had allotted to MGA

14      for its Bratz dolls.  Under this agreement, in exchange for Mattel's payment

15      of $1.25 million to Kohl's, Mattel received all eight feet of fashion doll shelf

16      space at Kohl's and MGA's shelf space for Bratz products was reduced

17      completely.  TX 37113, 26612; 3/29/2011 (Vol. 1) Tr. 120:24-121:10,

18      121:22-122:1 (Vollero Testimony), 4/4/2011 (Vol. 1) Tr. 56:21-57:1 (Eckert

19      Testimony), 4/6/2011 (Vol. 3) Tr. 84:22-85:11 (Scholvin Testimony).

20  8.  On December 22, 2004, Tom Maskel of Kohl's sent an email to Julie

21      Scholvin at Mattel regarding a "[h]uge opportunity."  TX 37113.  Mr. Maskel

22      stated that Kohl's had "approximately 4' of POG designated for Bratz this

23      spring.  What would Mattel think about me throwing out Bratz and replacing

24      the space with our friend Barbie."  *Id.*  The "kicker" in the deal, as Mr.

25      Maskel termed it, was "[i]f I throw them out I will need some help with

26      markdowns on old Bratz (we can talk $$ later)."  *Id.*  Kohl's acknowledged

27      that this offer presented Mattel a "nice opportunity for Mattel to take back a

28      little market share" in exchange for Mattel providing Kohl's with money.

MGA'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW RE MGA'S 17200 CLAIM
CV-04-9049 SGL (RNBx)

1   TX 37113.

2   9.      As Mattel acknowledged, in an internal email, such an agreement with

3           Kohl's presented an "opportunity" whereby the "Competition will not be

4           represented in Toy Dept."  Mattel further acknowledged that it needed to

5           respond to Kohl's offer promptly "or they will maintain competition."  TX

6           37112.

7   10.     Mattel negotiated with Kohl's and agreed to give Kohl's $1.25 million in

8           exchange for, *inter alia*, Barbie occupying all shelf space designated for

9           MGA's Bratz dolls in the toy department.  TX 37112, 26612, 4/6/2011 (Vol.

10          3) Tr. 79:16-80:12 (Scholvin Testimony), 3/29/2011 (Vol. 1) Tr. 143:8-14

11          (Vollero Testimony) ("I would say it looks like $1.25 million is being paid

12          for maintaining a minimum of 8 feet of Barbie planogram."); *see also* TX

13          24004 (detailing Kohl's ability to "earn $1,250,000 for maintaining a

14          minimum of 8 ft. of Barbie planogram space for entire year 2005 and 2006");

15          TX 24005 (same).

16  11.     Mattel heralded its final deal with Kohl's as "Great News Barbie!!" and

17          internally acknowledged that Kohl's had agreed that "The Competitor will

18          NOT BE REPRESENTED in their Toy dept. for 2 years."  TX 26612.

19  12.     Mattel admitted that Kohl's decision to no longer carry Bratz was a result of

20          Mattel's deal with Kohl's.  3/29/2011 (Vol. 1) Tr. 121:22-122:1 (Vollero

21          Testimony), 4/4/2011 (Vol. 1) Tr. 56:21-57:1 (Eckert Testimony) ("The

22          result of [a program we built for them] was they no longer carried Bratz").

23  13.     Mattel also admitted that as a result of its deal with Kohl's Bratz dolls no

24          longer appeared on the eight feet of shelf space in the toy department

25          allocated to fashion dolls.  4/6/2011 (Vol. 3) Tr. 84:22-85:11 (Scholvin

26          Testimony).

27  14.     Kohl's had purchased $5.089 million in Bratz inventory from MGA in 2004.

28          TX 31180 at p. 14, ln. 398.  Kohl's purchased $646,230 worth of MGA

MGA'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW RE MGA'S 17200 CLAIM
CV-04-9049 SGL (RNBx)

products in 2005 and $140,468 in 2006.  TX 31181 at p. 16, ln. 421 and TX 31182 at p. 11, ln. 151 (respectively); 3/24/2011 (Vol. 2) Tr. 162:13-19 (Larian Testimony).  However, Kohl's did not buy any Bratz products in 2005 or 2006.  3/24/2011 (Vol. 2) Tr. 162:14-163:5 (Larian Testimony).

15.    Moreover, Mattel's sales at Kohl's increased 36% in 2005 and an additional 10% in 2006.

16.    Based upon Mattel's increased sales and Kohl's and MGA's sales of Bratz to other retailers, MGA lost at least $4.294 million in 2005 and 2006 combined as a result of Mattel's agreement with Kohl's for MGA's shelf space, which is consistent with what Mattel gained as a result of its agreement with Kohl's. 4/5/2011 (Vol. 1) Tr. 31:21-33:20 (Malackowski testimony).  At the same time, Mattel's sales at Kohl's increased 36% in 2005 and an additional 10% in 2006.  *Id.; see also* TX 26612.

17.    Mattel still occupies all eight feet of shelf space for fashion dolls in Kohl's stores today.  4/6/2011 (Vol. 3) Tr. 85:12-14 (Scholvin Testimony).

**IV.    MATTEL'S POLICY OF EXCLUSIVITY WITH THIRD PARTY VENDORS AND LICENSEES**

18.    Mattel had a policy of terminating its relationships with third-party vendors and licensees that also did business with MGA.  TX 8972; 4/4/2011 (Vol. 1) Tr. 27:23-28:9, 101:17-25 (Eckert Testimony) ("[I]n general, we prefer exclusivity . . . and we get the focus of the other company's resources exclusively on our business."); 3/22/2011 (Vol. 1) Tr. 8:8-9:24 (Debrowski Testimony).

19.    Even though Robert Eckert, the CEO of Mattel, sent an email asking if he should "kill" a deal with a licensee that was also doing business with MGA or "let it slide," he denied that Mattel had a policy of terminating relationships with companies also dealing with MGA.  4/4/2011 (Vol. 1) Tr. 22:4-8 (Eckert Testimony).

MGA'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW RE MGA'S 17200 CLAIM
CV-04-9049 SGL (RNBx)

20.   Mr. Eckert was impeached with his deposition testimony.  In a 30b6 deposition, Mr. Eckert was asked whether Mattel's "practices include threatening existing licensees that you would terminate their relations at once if they did not stop dealing with MGA," and he answered "Yes, I believe it did." *Id.* at 24:21-25.  While Mr. Eckert attempted to explain away this prior testimony, *id.* at 106:2-107:2, his explanation was not credible based upon the deposition transcript in full, *id.* at 25:2-27:21.  Furthermore, Mr. Eckert personally emailed other Mattel executives about "killing a deal" as a result of a third-party's relationship with MGA.  TX 8972; 4/4/2011 (Vol. 1) Tr. 27:23-28:9 (Eckert Testimony).

## FINDINGS OF LAW

### I.   CALIFORNIA UNFAIR COMPETITION

1.   California law prohibits unfair competition:  "Unfair competition" includes "any unlawful, unfair or fraudulent business act or practice . . . ."  Cal. Bus. & Prof. Code § 17200 ("unfair competition law" or "UCL").

2.   "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction."  *Id.* at § 17203.

3.   "The UCL covers a wide range of conduct.  It embraces 'anything that can properly be called a business practice and that at the same time is forbidden by law.'"  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (1993) (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)).

4.   In the context of a § 17200 claim brought by one party against a competitor, "the word 'unfair' . . . means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  *Cel-Tech*, 20 Cal.

- 5 -

1    4th at 187 (emphasis added).

2    5.    The federal Cartwright Act prohibits contracts that provide a discount "on the

3          condition, agreement or understanding that the . . . purchaser thereof shall not

4          use or deal in the goods, wares, merchandise, machinery, supplies, or other

5          commodities of a competitor."  15 U.S.C. § 14.  The California Cartwright

6          Act prohibits every trust for anticompetitive purposes and defines "trust" as

7          "a combination of capital, skills, or acts by two or more persons," for

8          anticompetitive purposes.  Bus. & Prof. Code §§ 16720, 16726.

9    6.    The Clayton Act and Cartwright Act have the common purpose of protecting

10         and promoting competition.  *Brooke Group v. Brown & Williamson Tobacco,*

11         *Inc.*, 509 U.S. 209, 251 (1993); *State of California ex rel. Van de Kamp v.*

12         *Texaco, Inc.*, 46 Cal. 3d 1147, 1153 (1988).

13   7.    Mattel entered into an agreement with Kohl's to exclude Bratz products from

14         toy departments in Kohl's stores nationwide for two years.  MGA has shown

15         that Mattel's conduct threatened an incipient violation of antitrust law,

16         violated the policy or spirit of one of those laws because its effects are

17         comparable to or the same as a violation of the law, and otherwise

18         significantly threatened or harmed competition.  *See Monsanto Co. v. Spray-*

19         *Rite Serv. Corp.*, 465 U.S. 752, 767-68 (1984).

20   8.    Given Mattel's market position as the dominant manufacturer, its agreement

21         with a major national retailer to exclude Bratz, a competitive product with

22         less market share, for a two-year period, constituted conduct that threatened

23         an incipient violation of antitrust law, violated the policy or spirit of one of

24         those laws because its effects are comparable to or the same as a violation of

25         the law, and otherwise significantly threatened or harmed competition.  *See*

26         *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002)

27         (finding that engaging in exclusive agreements with retailers, removing

28         competitor's racks from stores without permission, moving competitor's

MGA'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW RE MGA'S 17200 CLAIM
CV-04-9049 SGL (RNBx)

racks to less visible locations, among other conduct, constituted anticompetitive conduct sufficient to submit to the jury); *see also Slotting Allowances and the Antitrust Laws, Testimony of the Federal Trade Commission Before the H. Comm. on the Judiciary* (1999) (statement of Willard K. Tom, Deputy Director, Bureau of Competition) ("Even without 100% exclusivity, a manufacturer or a group of manufacturers might be able to marginalize their competitors and lessen the competition they face through partial exclusivity requirements that, for example, guarantee the manufacturer (or the group) a large percentage of shelf space or give it a veto right over other manufacturers' products.").

## II.   MGA IS ENTITLED TO RESTITUTION AND AN INJUNCTION

9.   California law provides that a party may receive restitution and injunctive relief for acts of unfair competition. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992).

### A.   Restitution

10.   Restitution is not limited to the return of money or property that was once in the possession of the claimant; it includes the right to "recover money or property in which [one] has a vested interest." *Korea Supply*, 29 Cal. 4th at 1149.

11.   Kohl's initial email to Mattel confirms that "we have approx 4' of POG space designated for Bratz this spring." TX 37113. As a result of Mattel's agreement to pay Kohl's for the shelf space, MGA lost this previously designated shelf space (and the corresponding sales volume to Kohl's).

12.   Accordingly, MGA is entitled to $4.294 million based upon Mattel's increased sales at Kohl's for the relevant time period identified above.

### B.   Injunctive Relief

13.   "[T]he language of section 17203 is clear that the equitable powers of a court are to be used to 'prevent' practices that constitute unfair competition . . . ."

MGA'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW RE MGA'S 17200 CLAIM
CV-04-9049 SGL (RNBx)

| | |
|---|---|
| 1 | *Korea Supply*, 29 Cal. 4th at 1137. The California Supreme Court has |
| 2 | declared that the "overarching legislative concern was to provide a |
| 3 | streamlined procedure for the prevention of ongoing or threatened acts of |
| 4 | unfair competition." *Id.* at 43. |
| 5 | 14. A party is entitled to an injunction for past conduct where there is a showing |
| 6 | that the conduct will probably recur. *Sun Microsystems, Inc. v. Microsoft* |
| 7 | *Corp.*, 188 F.3d 1115, 1123 (9th Cir. 1999) (citing *People v. Toomey*, 157 |
| 8 | Cal. App. 3d 1, 20 (1984)); *Cal. Serv. Station etc. Ass'n v. Union Oil Co.*, |
| 9 | 232 Cal. App. 3d 44, 57, (1991). |
| 10 | 15. MGA has shown that there is a risk that the conduct here will recur. MGA |
| 11 | and Mattel continue to compete for shelf space in the fashion doll market, as |
| 12 | well as other toy categories. |
| 13 | /// |
| 14 | /// |
| 15 | /// |
| 16 | /// |
| 17 | /// |
| 18 | /// |
| 19 | /// |
| 20 | /// |
| 21 | /// |
| 22 | /// |
| 23 | /// |
| 24 | /// |
| 25 | /// |
| 26 | /// |
| 27 | /// |
| 28 | /// |

MGA'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW RE MGA'S 17200 CLAIM
CV-04-9049 SGL (RNBx)

# DISPOSITION

Mattel's payment to Kohl's for Bratz' shelf space constitutes unfair competition under California law.  MGA is entitled to recover $4.294 million for the loss of shelf space.  MGA is further entitled to an injunction against Mattel that prohibits Mattel from paying retailers to obtain shelf space allocated to MGA.  An injunction shall issue that enjoins Mattel as follows:  Mattel, Inc., along with its respective officers, directors, principals, agents, representatives, servants, employees, affiliates, successors or assigns, and any other person or entity acting on their behalf or in concert or participation with them, are hereby permanently enjoined from entering into arrangements with retailers with the intent to exclude MGA products.  This Court shall have jurisdiction to interpret and enforce the terms of this injunction and to determine any issues which may arise concerning this injunction.

Dated: April 26, 2011                    Respectfully submitted,

                                        ORRICK, HERRINGTON & SUTCLIFFE LLP


                                        By:_____*/s/ Warrington S. Parker III*_____
                                              Warrington S. Parker III
                                        Attorneys for MGA ENTERTAINMENT, INC.,
                                        MGA ENTERTAINMENT HK, LTD., MGA de
                                        MEXICO, S.R.L. de C.V., and ISAAC LARIAN

MGA'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW RE MGA'S 17200 CLAIM
CV-04-9049 SGL (RNBx)