QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc. and Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, et al., | CASE NO. CV 04-9049 DOC (RNBx) |
| | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| Plaintiff, | |
| vs. | Hon. David O. Carter |
| MGA ENTERTAINMENT, INC., a California corporation, et al., | **MATTEL'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MATTEL'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING MGA'S UNFAIR COMPETITION CLAIM (CAL. BUS. & PROF. CODE § 17200)** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | **Proposed Findings of Fact and Conclusions of Law filed concurrently herewith** |
| | Trial Date:  January 18, 2011 |

00505.07975/4111584.1

1

# <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3

4

MEMORANDUM OF POINTS AND AUTHORITIES..............................................1

5

PRELIMINARY STATEMENT ................................................................1

6

PROCEDURAL BACKGROUND ............................................................4

7

ARGUMENT ....................................................................................9

8

I.   THE SEVENTH AMENDMENT PRECLUDES THE COURT FROM
DECIDING MGA'S UNFAIR COMPETITION CLAIM WHILE

9

MGA'S DUPLICATIVE ANTITRUST SUIT IS PENDING..........................9

10

II.  IN THE ALTERNATIVE, THE COURT SHOULD ENTER
JUDGMENT FOR MATTEL AND AGAINST MGA ON ITS

11

UNFAIR COMPETITION CLAIM ....................................................14

12

A.   MGA Lacks Standing To Pursue Its UCL Claim .................................14

13

B.   MGA Did Not Prove that Mattel Committed An Incipient
Violation of Antitrust Law or Policy ....................................15

14

C.   MGA Did Not Prove that Mattel Caused Any Loss of Sales of

15

Bratz Dolls at Kohl's................................................................23

16

D.   MGA Proved No Basis For Restitution .................................25

17

E.   MGA's UCL Claim Is Barred By The Competition Privilege .............28

18

F.   MGA's Unfair Competition Claim Is Barred by Its Unclean

19

Hands.....................................................................................30

20

G.   MGA's UCL Claim Is Superseded By CUTSA ...................................32

CONCLUSION.............................................................................33

21

22

23

24

25

26

27

28

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

## <u>Cases</u>

4
5
<u>Adams v. Dep't of Health Servs.</u>,
   487 F.3d 684 (9th Cir. 2007) ............................................................... 11

6
<u>Adler v. Federal Republic of Nigeria</u>,
   219 F.3d 869 (9th Cir. 2000) ............................................................... 32

7
8
<u>Atlantic Richfield Co. v. USA Petroleum Co.</u>,
   495 U.S. 328 (1990) ............................................................................ 16

9
<u>Bank of the West v. Superior Court</u>,
   2 Cal. 4th 1254 (1992) ................................................................... 25, 26

10
11
<u>Beacon Theatres, Inc. v. Westover</u>,
   359 U.S. 500 (1959) ................................................................ 11, 12, 13

12
<u>Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners</u>,
   52 Cal. App. 4th 867 (1997) ............................................................... 28

13
14
<u>Brown Shoe Co. v. United States</u>,
   370 U.S. 294 (1962) ............................................................................ 17

15
16
<u>Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.</u>,
   429 U.S. 477 (1977) ............................................................................ 16

17
<u>Cargill, Inc. v. Monfort of Colorado, Inc.</u>,
   479 U.S. 104 (1986) ............................................................................ 16

18
19
<u>Cascade Health Solutions v. PeaceHealth</u>,
   515 F.3d 883 (9th Cir. 2008) ............................................................... 17

20
<u>Cel-Tech. Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.</u>,
   20 Cal. 4th 163 (1999) ............................................................ 16, 18,, 25

21
22
<u>Chavez v. Whirlpool Corp.</u>,
   93 Cal. App. 4th 363 (2001) ......................................................... 16, 22

23
24
<u>Colgan v. Leatherman Tool Group, Inc.</u>,
   135 Cal. App. 4th 663 (2006) ...................................................... 25, 26

25
<u>Cortez v. Purolator Air Filtration Prods. Co.</u>,
   23 Cal. 4th 163 (2000) ................................................................... 30, 31

26
<u>Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.</u>,
   890 F.2d 165 (9th Cir. 1989) ............................................................... 31

27

28

El Aguila Food Products, Inc. v. Gruma Corp.,
   301 F. Supp. 2d 612, 616 (S.D. Tex. 2003)....................................... 18, 19

F.D.I.C. v. Craft,
   157 F.3d 697 (9th Cir. 1998) ................................................ 28

FTC v. H.J. Heinz Co.,
   116 F. Supp. 2d 190 (D.D.C. 2000) ....................................... 18

FTC v. H.J. Heinz Co.,
   246 F.3d 708 (D.C. Cir. 2001)............................................... 18

F.T.C. v. Indiana Federation of Dentists,
   476 U.S. 447 (1986) ........................................................ 18

Fireman's Fund Ins. Companies v. Big Blue Fisheries, Inc.,
   143 F.3d 1172 (9th Cir. 1998)............................................... 28

Inline, Inc. v. A.V.L. Holding Co.,
   125 Cal. App. 4th 895 (2005) ............................................... 27

K.C. Multimedia, Inc. v. Bank of America Tech. & Operations, Inc.,
   171 Cal. App. 4th 939 (2009) ............................................... 32

Kendall-Jackson Winery Ltd. v. Sup. Ct.,
   76 Cal. App. 4th 970 (1999) ............................................... 31

Korea Supply Co. v. Lockheed Martin Corp.,
   29 Cal. 4th 1134 (2003)........................................... 25, 26, 27

Kwikset Corp. v. Superior Court,
   51 Cal. 4th 310 (2011) ................................................ 14, 25, 26

Lytle v. Household Mfg., Inc.,
   494 U.S. 545 (1990) ....................................................... 12, 13

Oculus Innovative Sciences, Inc. v. Prodinnv, S.A. de C.V.,
   2010 WL 4774659 (N.D. Cal., November 16, 2010)........................... 26

Omega Envtl., Inc. v. Gilbarco, Inc.,
   127 F.3d 1157 (9th Cir. 1997)............................................... 21

Parklane Hosiery Co., Inc. v. Shore,
   439 U.S. 322 (1979) ....................................................... 12, 13

Pegasus Satellite Television, Inc. v. DirecTV, Inc.,
   318 F. Supp. 2d 968 (C.D. Cal. 2004)....................................... 27

People's Choice Wireless, Inc. v. Verizon Wireless,
   131 Cal. App. 4th 656 (2005).............................................. 20

1
2
R.J. Reynolds Tobacco Co. v. Philip Morris Inc.,
    67 Fed. Appx. 810 (4th Cir. 2003) ...................................................... 22

3
R.J. Reynolds Tobacco Co. v. Philip Morris Inc.,
    199 F. Supp. 2d 362 (M.D.N.C. 2002) ............................................... 22

4
5
San Francisco Design Center Assocs. v. Portman Cos.,
    41 Cal. App. 4th 29 (1995) ................................................................ 29

6
Sanders v. City of Newport,
    2011 WL 905998 (9th Cir. Mar. 17, 2011) ........................................ 12

7
8
Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.,
    621 F.3d 981 (9th Cir. 2010) ............................................................. 31

9
Tampa Elec. Co. v. Nashville Coal Co.,
    365 U.S. 320 (1961) ........................................................................... 21

10
11
Ticconi v. Blue Shield of California Life & Health Ins. Co.,
    160 Cal. App. 4th 528 (2008) ............................................................ 31

12
U.S. v. Rodrigues,
    229 F.3d 842 (9th Cir. 2000) ............................................................. 26

13
14
Weyerhaeuser Co. v. Atropos Island,
    777 F.2d 1344 (9th Cir. 1985) ........................................................... 25

15

16
**Statutes**

17
15 U.S.C. § 1125(a) ................................................................................. 4

18
15 U.S.C. § 1125(c) ................................................................................. 4

19
Cal. Bus. and Prof. Code § 17200 et seq ...................................... passim

20
Cal. Bus. and Prof. Code § 14330 ........................................................ 4

21
Cal. Bus. & Prof. Code § 17203 ............................... 25, 26, 27, 28, 31

22
Cal. Bus. & Prof. Code § 17204 .................................................. 14, 24

23
Fed. R. Civ. P. 52(a) .............................................................................. 8

24

25
**Other Authorities**

26
Restatement (Second) of Torts § 768 ................................................... 29

27
Richard M. Steuer, Exclusive Dealing in Distribution, 69 Cornell L. Rev. 101
    (1983) ................................................................................................. 22

28

1
2

W. Prosser & W. Keeton, <u>Prosser and Keeton on the Law of Torts,</u>
    (5th ed. 1984) .......................................................................................................... 25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Mattel, Inc. ("Mattel") respectfully requests that the Court defer ruling on MGA Entertainment, Inc.'s ("MGA") statutory unfair competition claim to preserve Mattel's Seventh Amendment right to a jury trial.  Alternatively, Mattel requests that the Court adopt Mattel's findings of fact and conclusions of law submitted herewith and direct entry of judgment for Mattel and against MGA on its statutory unfair competition claim.

A ruling by the court on MGA's unfair competition claim, unless and until MGA's pending antitrust suit is disposed of, would infringe Mattel's Seventh Amendment right to a jury trial.  In 2005, MGA sued Mattel for violating California's unfair competition statute.  After trial started, MGA filed a new complaint against Mattel asserting antitrust, abuse of process and predatory pricing claims.  MGA repackaged the same facts underlying its unfair competition claim in the new complaint and added new theories of liability.  Mattel has a right to a jury trial on MGA's new claims.  If the Court were to make findings on the unfair competition claim and those findings are deemed to have preclusive effect on issues raised in the antitrust action, then Mattel's Seventh Amendment right to a jury trial in the antitrust action will have been infringed.  MGA simply cannot have it both ways.  The Court should defer ruling on MGA's unfair competition claim until after MGA's antitrust claims are dismissed or they have been tried to a jury to preserve Mattel's Seventh Amendment rights.

If the Court makes findings on MGA's unfair competition claim, then the Court should adopt Mattel's proposed findings and conclusions and direct entry of judgment for Mattel and against MGA.  MGA asserted a sweeping unfair competition claim.  At trial, MGA offered evidence relating to only four instances of alleged unfair competition: (1) an allegation regarding the licensee THQ, (2) an allegation regarding the manufacturer Early Light, (3) an allegation regarding the distributor

Bandai, and (4) an allegation regarding the retailer Kohl's in 2005 and 2006.  The evidence does not support a finding of liability as to any of these.

As to the allegations regarding THQ, Early Light and Bandai (or any other licensee, manufacturer or distributor), MGA's claim fails for several reasons.  First, the evidence proves that Mattel never interfered with MGA's relationship with those companies.  Mattel and MGA both had contemporaneous, ongoing relationships with those companies.  Second, MGA introduced no evidence that it suffered any harm, either quantified or not, as a result of Mattel's alleged interference with these companies, or any other licensee, manufacturer or distributor.  Third, MGA made no showing that Mattel's conduct threatened an incipient violation of the antitrust laws, *i.e.*, harmed either consumers or competition.  And fourth, MGA's losses, if any, take the form of damages, which are not available on a UCL claim.

MGA also variously accused Mattel of bribing or pressuring Kohl's not to carry Bratz products in 2005 and 2006, but MGA did not prove this.  Kohl's stopped buying additional Bratz dolls for a period of time because Kohl's lost over $1 million on Bratz dolls in 2003 and 2004.  In those years, Bratz failed in the marketplace at Kohl's; consumers purchased BARBIE products and not Bratz.  Kohl's had no reason to buy new Bratz products when it could not sell the 2004 Bratz dolls that it had.  And when Kohl's asked MGA to provide relief from the losses it had sustained, MGA conditioned payments to Kohl's on Kohl's purchases of yet more non-performing Bratz dolls.  Kohl's response—to seek out a deal in which it bought more BARBIE products and gave its consumers more of what they wanted—is the hallmark of competition.

In 2005, Mattel and Kohl's agreed that in exchange for advertising and promotion, expanded shelf-space and placement, and minimum purchases, Mattel would pay $1.25 million to Kohl's.  Such agreements are not only common in the industry—MGA engaged in the same practices—they are pro-competitive.  They reduce the retailer's effective wholesale price, which allows the retailer to charge

1  consumers a lower retailer price.  They also promote competition for shelf space
2  among the retailer's suppliers, like Mattel and MGA.  The Federal Trade Commission
3  agrees that such payments, allowances, rebates and discounts promote competition.

4       MGA has accused Mattel of bargaining to exclude MGA's products from
5  Kohl's.  But Mattel and Kohl's did not agree to exclude MGA products—Kohl's
6  continued to sell Bratz dolls from its inventory and other MGA products in both 2005
7  and 2006.  Even if Mattel and Kohl's had struck such a deal (and they did not), such
8  an agreement would not be anticompetitive unless it excluded MGA's Bratz dolls
9  from a substantial portion of the relevant market.  Kohl's sales of toys are so small,
10 however, that MGA did not make and could not prove market exclusion.  MGA
11 claims (though it has not proven) that it lost about $4.3 million in 2005 and 2006,
12 combined.  But, in 2005 and 2006, MGA sold over $500 million and $600 million in
13 Bratz products, respectively, mostly at Wal-Mart, Target and Toys 'R Us.  The
14 claimed missing sales at Kohl's are not even a "substantial portion" of Bratz sales for
15 those years, much less a substantial portion of the relevant market.

16      Finally, MGA has no right to monetary relief.  MGA introduced no evidence
17 from which the Court can conclude that Mattel violated California's unfair
18 competition law, in any respect.  Independently, MGA is not entitled to any
19 "restitution" from Mattel. The unfair competition statute allows only "restitution,"
20 *i.e.*, money that MGA had that Mattel now has.  MGA does not seek restitution from
21 Mattel.  It instead seeks lost profits.  By definition, and under established law, lost
22 profits are not restitutionary.  Even if they were, MGA claims lost profits on non-
23 specific and undifferentiated products which may not include Bratz doll sales at all.
24 MGA provided the Court with no evidentiary basis to award any damages based on
25 allegedly lost Bratz sales.

26      If the Court rules on MGA's statutory unfair competition claim, the Court
27 should enter judgment against MGA and for Mattel.

28

## **Procedural Background**[1]

1      **MGA files its Complaint in Case No. 05-2727 on April 13, 2005.** MGA's
2   2005 Complaint alleged causes of action for (1) False Designation of Origin,
3   Affiliation, Association or Sponsorship in Violation of 15 U.S.C. § 1125(a); (2)
4   Unfair Competition in Violation of 15 U.S.C. § 1125(a), Cal. Bus. and Prof. Code §
5   17200 et seq., and California Common Law; (3) Dilution in Violation of 15 U.S.C. §
6   1125(c), Cal. Bus. and Prof. Code § 14330, and California Common Law; and (4)
7   Unjust Enrichment. See Docket No. 1 (05-2727).  In the Complaint, MGA asserts
8   that Mattel engaged in unfair competition by, among other things, allegedly:

9       (1)    sending letters to "former employees who now work for MGA"
10  reminding them of their obligation to keep Mattel information confidential (2005
11  Complaint ¶¶ 75, 113);

12      (2)    issuing threats to "a number of companies . . . not to license MGA
13  products" (2005 Complaint ¶¶ 76, 113);

14      (3)    making false statements and threats to "distributors and retailers,
15  particularly in foreign countries, not to distribute 'Bratz,' to reduce shelf and display
16  space for 'Bratz' and to place 'Bratz' in unfavorable locations at retail outlets"
17  (2005 Complaint ¶¶ 77, 79, 113);

18      (4)    "buying up the supply" of doll hair to "lock out" MGA (2005
19  Complaint ¶¶ 78, 113); and

20      (5)    intimidating and manipulating trade industry groups (2005 Complaint
21  ¶¶ 80-97, 113).

22      **MGA serves a 100-page interrogatory response identifying claimed factual
23  bases of its unfair competition claim.**  On November 2, 2009, MGA served an
24  interrogatory response identifying the factual bases of its unfair competition claim.
25  See MGA's Objections and Responses to Mattel's Second Set of Interrogatories

---
[1]   For the factual background, Mattel refers the Court to the findings of fact in
(footnote continued)

(Phase 2), dated November 2, 2009 at 8-51, 104-160.   In that response, MGA alleged that all of the following were predicates of its unfair competition claim:

(1)     Mattel demanded its employees sign oppressive intellectual property assignment agreements in order to shore up and preserve its dominant market position;

(2)     Mattel engaged in efforts to undermine MGA's business and to "kill" Bratz, including pursuing litigation to drain MGA's financial resources;

(3)     Mattel regularly threatens, manipulates, intimidates, and improperly influences its employees and third parties, including retailers, distributors, and law enforcement officials, to prevent them from working with MGA and to intimidate former employees;

(4)     Mattel has threatened and pressured distributors and retailers not to distribute Bratz products;

(5)     Mattel has tampered with retail displays and disseminated false information about the retail market;

(6)     Mattel has intimidated former Mattel employees who have gone to work for MGA by sending threatening letters warning them not to disclose publicly-available information about Mattel;

(7)     Mattel has threatened and warned companies not to license MGA properties or risk retribution from Mattel;

(8)     Mattel has threatened and warned raw goods suppliers and toy manufacturers not to supply goods to MGA or to make MGA products or they would lose business from Mattel;

(9)     Mattel engaged in efforts to create negative publicity or press about MGA, MGA products, Bryant, Larian or MGA employees, including practices relating to NPD and consumer organizations TIA and CARU;

_____

Mattel's Proposed Findings of Fact and Conclusions of Law submitted herewith.

1     (10)   Mattel engaged in unfair practices relating to MGA's relationship with

2 NPD, including pressuring NPD to terminate its relationship with MGA;

3     (11)   Mattel engaged in efforts to fund or commission market research or

4 studies that portray Bratz or MGA products negatively;

5     (12)   Mattel engaged in efforts to interfere with MGA's acquisition of or

6 investment in Zapf Creation AG;

7     (13)   Mattel engaged in efforts to include negative references to MGA or

8 Bratz on Mattel's "We Believe In Girls" website;

9     (14)   Mattel engaged in efforts or intended to interfere with business dealings

10 or contractual relations between MGA and Smoby Group;

11     (15)   Mattel influenced Nickelodeon to reject MGA advertisements or to

12 limit time slots for advertisements;

13     (16)   Mattel assisted parties in lawsuits against MGA;

14     (17)   Mattel contacted persons under false pretenses in order to question

15 them about Bratz and this lawsuit;

16     (18)   Mattel coerced employees to sign restrictive covenants and non-

17 compete agreements and other efforts to prevent MGA from hiring them;

18     (19)   Mattel delayed filing suit against Bryant because Mattel wanted Bryant

19 to testify in an unrelated Mattel case;

20     (20)   Mattel falsely inflated its BARBIE sales figures in an effort to mislead

21 the public and retailers; and

22     (21)   Mattel improperly initiated and influenced criminal investigations of its

23 former employees, including Janine Brisbois and Jorge Castilla.

24     Mattel moves for summary judgment as to all claims in MGA's 2005

25 Complaint, and the Court grants Mattel's motion except as to portions of MGA's

26 statutory unfair competition claim.   On October 12, 2010, Mattel moved for

27 summary judgment as to MGA's 2005 Complaint. Dkt. No. 8927. On January 5,

28 2011, the Court granted Mattel's Motion as to all claims in the 2005 Complaint

except statutory unfair competition.  Dkt. No. 9600 at 107:28-108:4, 110:5, 112:23-24, 113:19.  In denying Mattel's motion for summary judgment on MGA's § 17200 claim, the Court stated that "Mattel may have routinely conditioned its contracts with retailers on the retailers not carrying MGA's products."  Dkt. No. 9600 at 111:22-24.  The Court also focused on MGA's allegation that Mattel allegedly pressured its licensees not to do business with MGA, stating that this conduct "may have harmed competition by potentially restricting the supply of MGA's products to consumers."  Dkt. No. 9600 at 112:2-3.

The Court presides over a trial between January 18, 2011 and April 8, 2011. Over the course of the trial, the Court heard evidence and testimony from 64 witnesses.  In support of its unfair competition claim, MGA presented evidence regarding only four discrete instances of Mattel's alleged interference with MGA's business relationships:

> (1)   an allegation regarding the retailer Kohl's in 2005 and 2006;
>
> (2)   an allegation regarding the licensee THQ;
>
> (3)   an allegation regarding the manufacturer Early Light; and
>
> (4)   an allegation regarding the distributer Bandai.[2]

See Mattel's Proposed Findings of Fact and Conclusions of Law at Findings of Fact ¶¶ 33-131.  With respect to the Kohl's allegation, the evidence presented showed that the harm to MGA, if there was any, occurred because MGA's Bratz product did not appeal to the Kohl's consumer and because of MGA's resulting mismanagement of its relationship with Kohl's.  Findings of Fact ¶¶ 33-104.  With respect to the other three allegations, MGA presented no evidence that any Mattel conduct caused

---

[2]   MGA also claimed that Mattel merchandisers allegedly moved MGA products at Wal-Mart.  However, the only evidence presented were unsubstantiated allegations in an email that was not admitted for the truth of its contents.  Mattel CEO Bob Eckert testified that Mattel asked Wal-Mart for specifics to substantiate the allegations in the email, but that Wal-Mart provided none.  Thus, MGA did not even show that the accused conduct in fact happened, much less that the accused conduct harmed MGA, competition or consumers.  Findings of Fact ¶¶ 133-135.

1    any disruption in MGA's relationships with any of these entities, much less that

2    MGA suffered any harm from any disruption.  Findings of Fact ¶¶ 111-113, 124,

3    125, 129-131.  With respect to all four allegations, MGA presented no evidence that

4    consumers or the marketplace generally were detrimentally impacted.  Findings of

5    Fact ¶¶ 71-75, 96, 113, 125, 131.

6        <u>Two weeks into trial, MGA files a new and purportedly "stand-alone"</u>

7    <u>complaint against Mattel.</u>  Mid-trial, MGA filed a new complaint asserting antitrust,

8    abuse of process and predatory pricing claims.  <u>See</u> Dkt. No. 1 (Case No. 11-01063).

9    These new legal theories are predicated on the same factual allegations underlying

10   MGA's claims in the present action, including MGA's statutory unfair competition

11   claim.   For instance, in the new complaint, MGA alleges that "Mattel has

12   threatened, bribed or pressured distributors and retailers not to distribute Bratz

13   products, including, without limitation, Kohl's Department stores" and that "Mattel

14   has threatened and warned a number of companies not to license MGA properties or

15   risk retribution in that Mattel would cease relations with the company or decline to

16   renew its licensing agreements." Dkt. No. 1 at 18:4-9.  These are exactly the same

17   factual bases that MGA claims underlie its unfair competition claim in this case.

18       <u>On March 30, 2011, the Court orders that it will not instruct the jury on</u>

19   <u>Mattel's or MGA's statutory unfair competition claims or seek an advisory jury</u>

20   <u>verdict.</u>  The Court determined there was "a substantial risk of jury confusion on the

21   issue of whether the conduct that gives rise to the trade secret claims also gives rise

22   to the unfair competition claims."  Dkt. No. 10319 at 2.  "To avoid this confusion,

23   the Court will not instruct the jury on these claims or seek an advisory verdict from

24   the jury on these claims.  Instead, on the basis of the evidence admitted during trial,

25   the Court will separately issue written findings of fact and conclusions of law on the

26   parties' unfair competition claims.  <u>See</u> Fed. R. Civ. P. 52(a)."  <u>Id.</u>

27

28

## Argument

## I. THE SEVENTH AMENDMENT PRECLUDES THE COURT FROM DECIDING MGA'S UNFAIR COMPETITION CLAIM WHILE MGA'S DUPLICATIVE ANTITRUST SUIT IS PENDING

On February 3, 2011, two weeks after trial started, MGA filed a new, purportedly "stand-alone" complaint against Mattel asserting antitrust, abuse of process and predatory pricing claims.  See Dkt. No. 1 (11-01063).  MGA's latest complaint repackages, and is based on, the same factual allegations and legal theories that MGA has repeatedly asserted in *this* litigation.  For example, in its newest complaint, MGA alleges that "Mattel has threatened, bribed or pressured distributors and retailers not to distribute Bratz products, including, without limitation, Kohl's Department stores" and that "Mattel has threatened and warned a number of companies not to license MGA properties or risk retribution in that Mattel would cease relations with the company or decline to renew its licensing agreements."  Dkt. No. 1 at 18:4-9.  Virtually every factual allegation MGA has advanced in support of its latest claims was previously alleged in support of MGA's unfair competition and/or RICO claims:

| Allegation in Latest Complaint | Allegations in Prior-Filed Litigation |
|---|---|
| Seeking to litigate Bratz out of business by pursuing "baseless litigation remedies."  Compl. ¶ 53(m). | Alleged in support of RICO claim, see, e.g., Dkt. No. 8583 ¶¶ 4, 60, 315-318, and unfair competition claims, see, e.g., Dkt. No. 19 (05-2727)  at 17; Dkt. No. 9157, Ex. 36 at 14, 16. |
| Engaging in illicit market intelligence practices to "secure protected competitor information." Compl. ¶ 53(a). | Alleged in support of RICO claim.  See, e.g., Dkt. No. 8583 ¶¶ 4, 6, 11-13. |
| Concealing documentary evidence that would have "changed the outcome" of the Phase 1 rulings and suborning perjury.  Compl. ¶ 30(f)-(g). | Alleged in support of RICO claim.  See, e.g., Dkt. No. 8583 ¶¶ 4, 60,  315. |

| Allegation in Latest Complaint | Allegations in Prior-Filed Litigation |
|---|---|
| Copying MGA's (1) "service mark for 'Passion for Fashion,'" (2) "4-Ever Best Friends" doll, and (3) "distinctive trapezoidal packaging." Compl. ¶ 53(a). | Alleged in support of unfair competition claims. <u>See, e.g.</u>, Dkt. No. 1 (05-2727) ¶ 46, 58, 68. |
| Improperly influencing companies not to distribute and license Bratz dolls or supply MGA with raw materials. <u>See</u> Compl. ¶ 53(b). | Alleged in support of unfair competition claims. <u>See, e.g.</u>, Dkt. No. 1 (05-2727) ¶¶ 9, 76-78, 113. |
| Manipulating NPD data. <u>See</u> Compl. ¶ 53(c). | Alleged in support of unfair competition claims. <u>See, e.g.</u>, Dkt. No. 1 (05-2727) ¶ 86. |
| Forcing employees to sign overbroad agreements assigning intellectual property. <u>See</u> Compl. ¶ 53(d). | Alleged in support of unfair competition claims. <u>See, e.g.</u>, Dkt. No. 9157, Ex. 36 at 13-15. |
| Making MY SCENE television commercials that imitated MGA commercials. <u>See</u> Compl. ¶ 53(e). | Alleged in support of unfair competition claims. <u>See, e.g.</u>, Dkt. No. 1 (05-2727) ¶¶ 51, 57, 62. |
| Booking actresses that appeared in Bratz commercials to interfere with MGA's ability to shoot its own commercials. <u>See</u> Compl. ¶ 53(f). | Alleged in support of unfair competition claims. <u>See, e.g.</u>, Dkt. No. 9157, Ex. 36 at 18. |
| Selling Wee 3 Friends dolls below allocated costs. <u>See</u> Compl. ¶ 53(g). | In a March 25, 2010 deposition, MGA's counsel asserted that it was "likely" that Wee 3 Friends was priced below costs in violation of California unfair competition laws and asserted that it was pursuing the issue in the prior action. <u>See</u> Dkt. No. 8169, Ex. 1 at 726:5-7; Dkt. No. 8168 at 1-2. |
| Tampering with retail displays. <u>See</u> Compl. ¶ 53(h). | Alleged in support of unfair competition claims. <u>See, e.g.</u>, Dkt. No. 1 (05-2727) ¶ 79. |
| Sending intimidating letters to former employees. <u>See</u> Compl. ¶ 53(i). | Alleged in support of unfair competition claims. <u>See, e.g.</u>, Dkt. No. 1 (05-2727) ¶ 75. |
| "[I]mproperly initiated and influenced | Alleged in support of unfair competition |

| Allegation in Latest Complaint | Allegations in Prior-Filed Litigation |
|---|---|
| criminal investigations."  Compl. ¶ 53(j). | claims.  <u>See, e.g.</u>, Dkt. No. 9157, Ex. 36 at 36. |

These same factual bases underlie MGA's unfair competition claim in this case.

Mattel has moved to dismiss MGA's latest Complaint on claim-splitting and other grounds.  Dkt. No. 11 (11-01063).  That motion should be granted.  <u>See, e.g.</u>, <u>Adams v. Dep't of Health Servs.</u>, 487 F.3d 684, 688 (9th Cir. 2007) (internal cites omitted) (plaintiff generally has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.").   However, if it is not, MGA's tactical decision to split its claim threatens to infringe Mattel's Seventh Amendment jury trial right.   Given the substantial overlap between MGA's equitable § 17200 claim and its legal antitrust claim, the Court's § 17200 rulings could have a preclusive effect on issues raised in the antitrust action, issues that would otherwise be triable to a jury.  <u>See</u> <u>Beacon Theatres, Inc. v. Westover</u>, 359 U.S. 500, 504 (1959) (noting that equitable determinations may be granted preclusive effect in antitrust action).

To avoid impingement on Mattel's constitutional right to a jury trial, the Court should defer ruling on MGA's UCL claim until after the antitrust action has been dismissed or heard by a jury.  Issuing findings now, which could be preclusive later, would erode the basic protections of the Seventh Amendment and set a precedent that a plaintiff may strip a defendant of the right to a jury trial by splitting legal claims from equitable claims and bringing the equitable claims in an initial action.  No authority permits MGA to deprive Mattel of its jury trial rights in that manner.  A party's Seventh Amendment rights cannot turn on the litigation strategy of his adversary, particularly in the antitrust context where the jury right forms an "essential part of the congressional plan for making competition rather than monopoly the rule of trade."  <u>Beacon Theatres</u>, 359 U.S. at 504.

1    Deferring a ruling on MGA's § 17200 claim until the antitrust suit is disposed
2  of would conform to the settled rule that "where legal claims tried by the jury and
3  equitable claims tried by the court are based on the same set of facts, the Seventh
4  Amendment requires the trial judge to follow the jury's implicit or explicit factual
5  determinations."  Sanders v. City of Newport, 2011 WL 905998, at *10 (9th Cir.
6  Mar. 17, 2011) (internal quotation marks omitted).  This means that, in a typical
7  case, the court must order proceedings so that the jury resolves legal claims before
8  making a ruling on equitable claims.  Beacon Theatres, 359 U.S. at 510.  "[O]nly
9  under the most imperative circumstances . . . can the right to a jury trial of legal
10  issues be lost through prior determination of equitable claims."  Id. at 510-11.  No
11  such imperative circumstances exist here.

12    In Parklane Hosiery, the Supreme Court created an exception to Beacon
13  Theatres for separate actions, holding that a court's equitable findings "can have
14  collateral-estoppel effect in a subsequent legal action and that this estoppel does not
15  violate the Seventh Amendment."  Parklane Hosiery Co., Inc. v. Shore, 439 U.S.
16  322, 335 (1979).  But in Parklane Hosiery there was no suggestion, as there is here,
17  that the plaintiff had split its claim, strategically bringing some claims before others.
18  See id. at 324.  In fact, the SEC, not the plaintiff, brought the prior equitable action
19  considered by the Court in Parklane Hosiery.  See id.  Accordingly, in Parklane
20  Hosiery, granting preclusive effect to equitable rulings from the prior action did not
21  reward gamesmanship; here, on the other hand, issuing findings and finding them to
22  be preclusive would do just that.

23    Subsequent Supreme Court precedent shows the importance of the Seventh
24  Amendment right now at issue.  In Lytle, the petitioner brought Title VII and § 1981
25  claims alleging workplace discrimination.  Lytle v. Household Mfg., Inc., 494 U.S.
26  545, 548 (1990).  The district court dismissed the legal section 1981 claims and,
27  after a bench trial, entered judgment against the petitioner on his equitable Title VII
28  claims.  See id. at 548-49.  The Court of Appeals found that the dismissal of the

section 1981 claims was erroneous but did not remand for further proceedings.  <u>Id.</u> at 549.  Instead, it concluded that "the District Court's findings with respect to the Title VII claims collaterally estopped [the petitioner] from litigating his § 1981 claims."  <u>Id.</u>  A unanimous Supreme Court reversed, holding that the Seventh Amendment precluded giving any collateral estoppel effect to the district court's Title VII findings.  <u>See id.</u> at 551-54.  The Court explained:

> Only the District Court's erroneous dismissal of the § 1981 claims enabled that court to resolve issues common to both claims, issues that otherwise would have been resolved by a jury.  But for that erroneous ruling, this case would be indistinguishable from <u>Beacon Theatres</u> and <u>Dairy Queen</u>.

<u>Id.</u> at 551-52.  The Court specifically rejected the argument that further proceedings on the section 1981 claims would "constitute a separate action" under the <u>Parklane Hosiery</u> exception.  <u>See id.</u> at 551.

The same principles apply here, and with even greater force.  In <u>Lytle</u>, judicial error caused the equitable and legal claims to be litigated in different periods of time.  Here, it was MGA's intentional, strategic decision to split its section 17200 claim from its antitrust claim based on the same facts that led to the split in their litigation.  MGA cannot be permitted to deprive Mattel of rights by splitting its claims.  Because the Seventh Amendment affords Mattel the right to have a jury resolve MGA's antitrust claim, this Court should defer making findings on MGA's unfair competition claim until the antitrust action is dismissed or adjudicated.

1  **II.    IN THE ALTERNATIVE, THE COURT SHOULD ENTER**
2  **JUDGMENT FOR MATTEL AND AGAINST MGA ON ITS UNFAIR**
3  **COMPETITION CLAIM**

4  **A.    MGA Lacks Standing To Pursue Its UCL Claim**

5  MGA has not proven that it suffered injury in fact or lost money or property
6  due to Mattel's alleged unfair competition.  Cal. Bus. and Prof. Code § 17204
7  (requiring proof of "injury in fact" as a result of unfair competition); Kwikset Corp.
8  v. Superior Court, 51 Cal. 4th 310, 323 (2011) ("Proposition 64 requires that a
9  plaintiff have lost money or property to have standing to sue.  The plain import of
10 this is that a plaintiff now must demonstrate some form of economic injury.")
11 (internal citation and quotation omitted).

12  **1.    MGA Proved No Harm Due To Mattel's Alleged Interference**
13  **With Licensees, Distributors or Suppliers**

14  On summary judgment, the Court found a genuine issue of material fact as to
15 whether MGA lost money as a result of Mattel's alleged interference with MGA's
16 relationships with licensees and distributors.  Dkt. No. 9600 at 111.  The Court also
17 suggested that MGA's licenses with retailers were "property" for purposes of
18 determining whether MGA lost "property."  See id.

19  MGA did not prove that it suffered any harm from Mattel's alleged
20 interference with MGA's agreements with licensees, manufacturers and distributors.
21 MGA presented no evidence that it lost or could not get agreements with licensees,
22 manufacturers or distributors, or that any Mattel conduct impacted MGA's
23 relationship with any licensee, distributor or manufacturer in any way.  Finding of
24 Fact ¶¶ 111-113, 124, 125, 129-131.  MGA's damages expert offered no opinion
25 identifying or quantifying any harm from Mattel's alleged interference with these
26 agreements.  Finding of Fact ¶¶ 113, 125, 131.

27  The evidence actually proves that MGA shared at least one common licensee
28 with Mattel, THQ; that MGA and Mattel shared at least one common manufacturer,

00505.07975/4111584.1
-14-
MATTEL'S MEMORANDUM RE MGA'S UNFAIR COMPETITION CLAIM

Early Light; and that MGA and Mattel shared at least one common distributor, Bandai.  Findings of Fact ¶¶ 106, 114, 126.  Mattel never terminated any licensee because it dealt with MGA.  Findings of Fact ¶ 112.

## 2.   MGA Proved No Actionable Harm Due to Mattel's Alleged Interference With MGA's Sales at Kohl's

MGA accused Mattel of pressuring or bribing Kohl's not to carry MGA's Bratz dolls in 2005 and 2006.  Even if true (and it is not), the Court recognized at summary judgment that for the claim to proceed, MGA had to show that it possessed some right, contractual or otherwise, to force Kohl's to buy Bratz dolls and sell them.  Dkt. No. 9600 at 111.  Absent such a showing, MGA lost no "property."

MGA introduced no contract obligating Kohl's to purchase Bratz dolls in 2005 and 2006.  Finding of Fact ¶ 47.  Nor did MGA introduce any evidence that it had a reasonable expectation of placement of Bratz products at Kohl's in 2005 and 2006.  Kohl's lost at least $1 million on the Bratz dolls it purchased in 2004, and MGA did not respond to Kohl's requests to MGA for markdown dollars to compensate it.  Findings of Fact ¶¶ 53-70.  Because Kohl's consumers did not buy Bratz dolls and Kohl's lost money on them, it decided not to buy more.  Finding of Fact ¶¶ 52-54.  No contract required Kohl's to make such a purchase.  MGA therefore lacks standing to assert a claim under the UCL.[3]

## B.   MGA Did Not Prove that Mattel Committed An Incipient Violation of Antitrust Law or Policy

MGA did not prove by a preponderance of the evidence that Mattel engaged in an "unfair" act or practice in violation of Section 17200.  See Dkt. No. 9600 at 111.  To prove that Mattel, a competitor of MGA, engaged in "unfairness" under the

---

[3]   MGA may argue that it has standing to pursue an UCL claim because it has a lost profits theory of damages.  Finding of Fact ¶ 99.  Lost profits, however, are not
(footnote continued)

UCL, MGA had to prove that Mattel engaged in "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  <u>Cel-Tech. Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.</u>, 20 Cal. 4th 163, 187 (1999).  <u>See also</u> Dkt. No. 9600 at 111.  A showing of mere harm to a competitor's interests is insufficient.  <u>See</u> <u>Cel-Tech.</u>, 20 Cal. 4th at 186 ("the 'antitrust laws ... were enacted for 'the protection of competition, not competitors.'") (citing <u>Cargill, Inc. v. Monfort of Colorado, Inc.</u>, 479 U.S. 104, 115 (1986)).  Injury to a competitor is not equivalent to injury to competition; only the latter is the proper focus of antitrust laws. <u>See</u> <u>Atlantic Richfield Co. v. USA Petroleum Co.</u>, 495 U.S. 328, 344 (1990); <u>Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.</u> 429 U.S. 477, 488-489 (1977).  Likewise, if the antitrust laws permit the questioned conduct, then the unfair competition claim fails. <u>See</u> <u>Chavez v. Whirlpool Corp.</u>, 93 Cal. App. 4th 363, 375 (2001) (affirming judgment of dismissal) ("If the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason—because it unreasonably restrains competition and harms consumers—the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers."); <u>see also</u> <u>Cel-Tech.</u>, 20 Cal. 4th at 184 (prohibiting courts from applying "purely subjective notions of fairness" but requiring courts to determine unfairness "within the meaning of the unfair competition law").

### 1.  <u>MGA Presented No Evidence that Consumers Suffered Any Harm Because Kohl's Sold Less Bratz Than MGA Wanted</u>

The hallmark of the federal and state competition laws is the protection of consumers and competition, not individual competitors like MGA.  <u>Brunswick Corp.</u>

---

the injury in fact that the statute requires for standing. <u>See</u> Part II.D (lost profits are (footnote continued)

1    v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488 (1977) (quoting Brown Shoe Co. v.

2    United States, 370 U.S. 294, 320 (1962) (The antitrust laws "were enacted for 'the

3    protection of competition not competitors.'")); see also Cascade Health Solutions v.

4    PeaceHealth, 515 F.3d 883, 901 (9th Cir. 2008) (noting the "Supreme Court's long

5    and consistent adherence to the principle that the antitrust laws protect the process of

6    competition, and not the pursuits of any particular competitor").  MGA did not prove

7    that Mattel engaged in any conduct that harmed consumers or competition.

8         The evidence proves that MGA's Bratz dolls—placed side-by-side with

9    BARBIE dolls at Kohl's—could not compete with BARBIE dolls for the dollars of

10   Kohl's consumers.  Finding of Fact ¶¶ 50-54.  The Bratz dolls failed with Kohl's

11   consumers in 2003 and 2004, long before MGA accuses Mattel of having engaged in

12   anticompetitive conduct.  Finding of Fact ¶ 53-61.  Kohl's decision to purchase more

13   BARBIE products did not harm the Kohl's consumer, but addressed their demand for

14   more BARBIE products and less Bratz products.   Finding of Fact ¶ 50-54.  Bratz

15   products remained in the stores for those few Kohl's customers who desired them.

16   Finding of Fact ¶ 71-75, 96.

17        When Kohl's reduced the Bratz products in its stores in 2005 and 2006,

18   consumers were not deprived of any opportunities to purchase Bratz dolls.  MGA

19   sold over $500 million and over $600 million of Bratz dolls, respectively, in each of

20   those years.  Finding of Fact ¶ 32.  Given the order of magnitude of Bratz doll sales in

21   2005 and 2006, MGA's claim that it missed out on no more than $4.294 million at

22   Kohl's over a two year period does not come close to proving injury to competition

23   or that consumers suffered any harm.  Finding of Fact ¶ 99.

24

25

26

27

28   _____
     not a restitutionary measure of damages that the UCL contemplates).

2.      **MGA Presented No Evidence That Payments to Kohl's For Shelf Space Minimums, Advertising and Minimum Purchases Are Anticompetitive**

MGA has characterized Mattel's payment to Kohl's for eight feet of shelf space, minimum agreements and promotions as "bribery."  But the payment to Kohl's for shelf space minimums, advertising and minimum purchases actually benefitted consumers by reducing the price that the retailer pays and creating price competition among toy manufacturers.  The FTC itself has determined that such "slotting fees" benefit competition and have a positive effect on consumer prices, and the D.C. Circuit has held the FTC made a *prima facie* showing in this regard.  FTC v. H.J. Heinz Co., 246 F.3d 708, 712, 719 (D.C. Cir. 2001) (holding district court erred in refusing to enjoin proposed merger of makers of Beech-Nut and Heinz brand baby foods, where FTC argued that competition between the two manufacturers, including payment of slotting fees in exchange for shelf space, reduced the ultimate price to the consumer); see FTC v. H.J. Heinz Co., 116 F. Supp. 2d 190, 197 (D.D.C. 2000) (reciting the FTC's efforts to show "that trade spending competition between Heinz and Beech-Nut benefits consumers").  The FTC's determination is entitled to deference in a UCL action: California courts consider federal courts' Section 5 jurisprudence when determining what constitutes unfair under the unfair competition law, and federal courts give deference to the FTC's "informed judgment that a particular commercial practice is to be condemned as 'unfair.'"  See Cel-Tech. Comms., Inc., 20 Cal. 4th at 185-186 (stating that the federal courts' jurisprudence under Section 5 "are more than ordinarily persuasive" in determining what is unfair under the unfair completion law).  See also F.T.C. v. Indiana Federation of Dentists, 476 U.S. 447, 455, (1986) (internal cites omitted) ("in considering such issues the courts are to give some deference to the Commission's informed judgment that a particular commercial practice is to be condemned as 'unfair'").

El Aguila Food Products, Inc. v. Gruma Corp. is on point.  In El Aguila, the

plaintiffs, tortilla manufacturers, brought antitrust claims against Gruma, another tortilla manufacturer, arising from Gruma's agreement to pay slotting promotional, co-op advertising, and other allowances or discounts that favor the retailers.  El Aguila, 301 F. Supp. 2d 612, 616 (S.D. Tex. 2003).  The El Aguila Court stated, "It is well known that retailers and manufacturers engage in negotiations that result in the payment of slotting promotional, co-op advertising, and other allowances or discounts that favor the retailers."  Id. at 620.  The plaintiffs were "required to show that, because of slotting fees, the customers of the plaintiffs and other independents are being forced to purchase Gruma products when in fact they desire the plaintiffs' products."  Id. at 631.  The court entered judgment for the defendant, holding that the payment of such fees and allowances is pro-competitive (because it reduced the price that the retailer had to pay and fostered price competition among suppliers) and that such fees and allowances were not exclusionary because many of the plaintiffs' tortillas remained on shelves, even if some suppliers had exclusivity agreements with retailers.  Id. at 630-31.  The court concluded that offering slotting fees, advertising and promotional allowances and other allowances and discounts are not exclusionary as a matter of law.  Id. at 629.

Here, the focus cannot be just on Kohl's, but on the market.  Bratz products were continuously available to customers in 2005 and 2006; MGA's total Bratz sales were over $500 million in 2005 and over $600 million in 2006.  See Findings of Fact ¶ 32.  Moreover, Kohl's continued to sell MGA products, including Bratz products, in its stores from 2004 to 2006.  See Findings of Fact ¶¶ 50, 96.  MGA introduced no evidence that Mattel forced a Kohl's customer (or any retail customer) to purchase a BARBIE product when the customer wanted a Bratz doll.  To the contrary, as Kohl's informed MGA in 2003 and 2004, Kohl's consumers, given a choice between BARBIE and Bratz products, simply did not buy the Bratz dolls.  Finding of Fact ¶ 50-54.  MGA cannot show that Mattel had market power that violated antitrust laws or that its actions forced consumers to buy its products instead of MGA's at Kohl's.

And MGA certainly cannot show that Mattel's agreement with Kohl's accomplished such a feat.  In fact, MGA, like Mattel, offers incentives to retail customers to obtain larger orders (either more product or additional products), better placement for their products in stores, additional or incremental space allocated to their products within retail stores, and better or priority placement in retailer advertisements, and MGA itself has entered into slotting fee arrangements with retailers. Findings of Fact ¶¶ 18, 19, 62, 67, 69.

### 3.   MGA Has Not Proven an Unlawful Exclusive Dealing Arrangement

A company may choose with whom it wishes to deal and unilaterally may refuse to deal with a distributor or a customer without violating the antitrust laws or the policy or spirit of those laws.   People's Choice Wireless, Inc. v. Verizon Wireless, 131 Cal. App. 4th 656, 663 (2005) (affirming judgment of dismissal) ("Nearly a century ago, the Supreme Court recognized that, subject to antitrust laws such as the Sherman Act, there is a 'long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal.' (United States v. Colgate & Company (1919) 250 U.S. 300, 307, 39 S.Ct. 465, 63 L.Ed. 992 (Colgate).) That theme has continued life. (See Dimidowich v. Bell & Howell (9th Cir.1986) 803 F.2d 1473, 1478 [stating that a "manufacturer may choose those with whom it wishes to deal and unilaterally may refuse to deal with a distributor or customer for business reasons without running afoul of the antitrust laws"].").

Because "[t]here are . . . well-recognized economic benefits to exclusive dealing arrangements, including the enhancement of interbrand competition", exclusive dealing arrangements are analyzed under the rule of reason.   Omega Envtl., Inc. v. Gilbarco, Inc., 127 F.3d 1157, 1162 (9th Cir. 1997) ("We thus analyze challenges to exclusive dealing arrangements under the antitrust rule of reason."). "Only those arrangements whose 'probable' effect is to 'foreclose competition in a

1   substantial share of the line of commerce affected' violate Section 3." <u>Id.</u> (quoting

2   <u>Tampa Elec. Co. v. Nashville Coal Co.</u>, 365 U.S. 320, 327 (1961)) (internal citations

3   omitted).

4       As the Supreme Court explained in <u>Tampa Elec. Co.</u>, "the competition

5   foreclosed by the contract must be found to constitute a substantial share of the

6   relevant market." <u>Tampa Elec. Co.</u>, 365 U.S. at 328. "That is to say, the

7   opportunities for other traders to enter into or remain in that market must be

8   significantly limited" and will be "judged on a comparative basis . . . when weighed

9   against the total volume of that product in the relevant market." <u>Id.</u> at 328-29

10  (internal citations and quotations omitted). "To determine substantiality in a given

11  case, it is necessary to weigh the probable effect of the contract on the relevant area

12  of effective competition, taking into account the relative strength of the parties, the

13  proportionate volume of commerce involved in relation to the total volume of

14  commerce in the relevant market area, and the probable immediate and future

15  effects which pre-emption of that share of the market might have on effective

16  competition therein.  It follows that a mere showing that the contract itself involves

17  a substantial number of dollars is ordinarily of little consequence." <u>Id.</u> at 329.

18      The Ninth Circuit also recognizes that "exclusive dealing arrangements

19  imposed on distributors rather than end-users are generally less cause for

20  anticompetitive concern." <u>Omega Envtl., Inc.</u>, 127 F.3d at 1162. "If competitors

21  can reach the ultimate consumers of the product by employing existing or potential

22  alternative channels of distribution, it is unclear whether such restrictions foreclose

23  from competition any part of the relevant market." <u>Id.</u>; <u>see</u> <u>generally</u> ABA Antitrust

24  Section, Monograph No. 8, Vertical Restrictions Upon Buyers Limiting Purchases

25  of Goods from Others, 92 (1982); Richard M. Steuer, Exclusive Dealing in

26  Distribution, 69 Cornell L. Rev. 101, 118-124 (1983); Herbert Hovenkamp, Federal

27  Antitrust Policy § 10.8 at 391 (1994) (foreclosure of even 'a large percentage of one

28

1   mode of distribution will have little anticompetitive effect if another mode is
2   available.').

3       In <u>R.J. Reynolds Tobacco Co. v. Philip Morris Inc.</u>, 199 F. Supp. 2d 362
4   (M.D.N.C. 2002), the district court granted summary judgment against competitors
5   of Philip Morris who complained that its merchandising program violated federal
6   antitrust laws. The 4th Circuit affirmed.  <u>R.J. Reynolds Tobacco Co. v. Philip</u>
7   <u>Morris Inc.</u>, 67 Fed. Appx. 810 (4th Cir. 2003).   Specifically, other tobacco
8   companies complained, as MGA does here, that Philip Morris engaged in unfair
9   competition because it made "promotional payments . . . .to retailers in exchange for
10  favorable display, advertising, and promotional space within retailers' stores."  <u>R.J.</u>
11  <u>Reynolds</u>, 199 F. Supp. 2d at 370.   The court rejected plaintiff's argument that
12  Philip Morris retailer programs foreclosed a substantial share of the relevant market,
13  <u>id.</u> at 388, because, among other things (a) plaintiffs market share increased, like
14  Bratz did, during the relevant time period, (b) plaintiffs revenues increased, like
15  MGA's, during the relevant time period, (c) the merchandising agreements are of
16  short term duration, as are Mattel's one-year agreements with Kohl's, and (d) all
17  retailers, including Kohl's, sold MGA's products.  <u>Id.</u> at 391-93.

18      MGA has not even begun to meet any of these required showings—even
19  though, as to a § 17200 claim, "[i]f the same conduct is alleged to be both an
20  antitrust violation and an 'unfair' business act or practice for the same reason—
21  because it unreasonably restrains competition and harms consumers—the
22  determination that the conduct is not an unreasonable restraint of trade necessarily
23  implies that the conduct is not 'unfair' toward consumers."  <u>Chavez</u>, 93 Cal. App.
24  4th at 375 (affirming judgment of dismissal).   Kohl's, an $18 billion dollar
25  corporation much larger than Mattel, was unhappy with MGA due to the poor
26  performance of MGA products in 2004.  Findings of Fact ¶¶ 40-41, 48-55.  When
27  Kohl's repeatedly sought assistance from MGA to offset mounting losses, MGA
28  refused or offered counter-proposals that were unacceptable to Kohl's.   Findings of

Fact ¶¶ 56-70.   As the relationship between Kohl's and MGA deteriorated, MGA knew that failure to address Kohl's concerns would affect MGA's future business with Kohl's.  Findings of Fact ¶¶ 58, 60, 62, 67-70.   It is therefore unsurprising that Kohl's, faced with $1 million in losses on Bratz, approached Mattel in December 2004 with a potential business opportunity that involved, among other terms, (1) increasing Barbie's shelf space by 4 feet in Kohl's toy department; and (2) assisting with markdowns for Kohl's old Bratz inventory.  Findings of Fact ¶¶ 77-80.  MGA failed to present any evidence that the 2005 and 2006 contracts between Kohl's and Mattel, or any other conduct by Mattel in connection with Kohl's, even comes close to meeting the requisite showing required to state an unfair competition claim.

### 4.   MGA Presented No Evidence That Mattel Interfered With Any MGA Licensee, Distributor or Manufacturer

There is no evidence in the trial record of any interference with MGA's relationship with any licensee, manufacturer or distributor, much less evidence of harm to competition.   There is no evidence that any licensee, manufacturer or distributor terminated or modified its relationship with MGA, much less did so as the result of any conduct of Mattel.  Findings of Fact ¶¶ 105-31.  MGA itself has recognized that it did not present at trial any evidence of damages that it allegedly suffered as a result of alleged interference with licensees, manufacturers or distributors.  Findings of Fact ¶¶ 113, 125, 131.

### C.   MGA Did Not Prove that Mattel Caused Any Loss of Sales of Bratz Dolls at Kohl's

The UCL requires proof of causation.  MGA failed to prove that it "lost money or property *as a result of such unfair competition*."  Cal. Bus. & Prof. Code § 17204 (emphasis added).

Kohl's decision to stop buying Bratz dolls had nothing to do with Mattel.  Kohl's purchased in excess of $5 million of Bratz dolls to sell in 2004.  Finding of Fact ¶ 48.  Kohl's placed Bratz and BARBIE dolls side-by-side in the toy department.

Finding of Fact ¶¶ 49-50.  Consumers did not buy Bratz dolls and Kohl's lost money on them.  Finding of Fact ¶¶ 51-54.  Kohl's and MGA knew that the performance of the Bratz dolls was a disaster by fall 2004, long before Mattel allegedly "bribed" Kohl's not to carry Bratz dolls.  Finding of Fact ¶¶ 55-61.  MGA refused to take responsibility for the poor performance of the Bratz dolls at Kohl's.  Finding of Fact ¶¶ 62-70.  MGA tied markdown money to Kohl's agreement to purchase more Bratz dolls.  Finding of Fact ¶¶ 62, 69-70.  Kohl's elected not to purchase more Bratz dolls given that it could not sell the Bratz dolls that it had, even at reduced prices.  Finding of Fact ¶ 77.

In contrast, Kohl's consumers could not purchase BARBIE dolls fast enough and BARBIE was profitable for Kohl's.  Finding of Fact ¶¶ 49-51.  Responding to the proven demand of its consumers, and after deciding not to fill its shelves with more Bratz dolls that it could not sell, Kohl's offered Mattel additional shelf space for BARBIE.  Finding of Fact ¶¶ 78-81.  Mattel and Kohl's agreed to terms on January 27, 2005.  Finding of Fact ¶ 82.  Those terms did not exclude Bratz dolls or preclude Kohl's from selling Bratz dolls or any other product anywhere in Kohl's stores.  Finding of Fact ¶¶ 84-88.

MGA claims that Mattel caused Kohl's not to purchase Bratz dolls in 2005 and 2006.  If Kohl's consumers demanded Bratz dolls, then *in 2007*, after Mattel allegedly stopped excluding Bratz dolls from Kohl's, Kohl's would have purchased millions of dollars of Bratz dolls to address the pent up demand.  Tellingly, however, MGA presented no evidence of the value or amount of Kohl's purchase of Bratz dolls in 2007 or later.  It was the Kohl's consumers' disinterest in Bratz, not Mattel's alleged anticompetitive conduct, that caused Kohl's not to continue purchasing Bratz dolls.

Independently, MGA continued to negotiate with Kohl's into 2005, although without addressing the losses on the Bratz dolls to Kohl's satisfaction.  On November 22, 2005, Larian instructed Karen Quadrio to "fuck'm," referring to Kohl's.  Finding

MATTEL'S MEMORANDUM RE MGA'S UNFAIR COMPETITION CLAIM

00505.07975/4111584.1

of Fact ¶¶ 68-70.  Larian's edict, independent of any Mattel conduct, breaks any chain of causation attributable to Mattel.  See Weyerhaeuser Co. v. Atropos Island, 777 F.2d 1344, 1352 n.7 (9th Cir. 1985) (citing W. Prosser & W. Keeton, Prosser and Keeton on the Law of Torts, at 305 (5th ed. 1984) (a defendant is not liable for damages due to an intervening cause "unless the defendant's conduct has created or increased an unreasonable risk of harm through its intervention.").

### D.    MGA Proved No Basis For Restitution

California Business and Professions Code § 17203 provides for equitable relief in the form of an injunction or restitution.  The restitutionary relief available under the UCL permits a court to "restore to any person in interest any money or property, real or personal, which may have been acquired by means of … unfair competition."  Cal. Bus. & Prof. Code § 17203.  Section 17203 does not provide for an award of damages.  See Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1266 (1992); see also Cel-Tech Commc'ns, Inc., 20 Cal. 4th at 179 ("Plaintiffs may not receive damages, much less *treble* damages, or attorney fees" under the UCL) (emphasis in original).  The goal of restitution under the UCL is "to restore the status quo by returning to the plaintiff funds in which he or she had an ownership interest."  Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1149 (2003) (restitution under the UCL is limited to "money or property that defendants took directly from plaintiff" or "money or property in which [plaintiff] has a vested interest.").  Restitution under the UCL is only available where the sum at issue can "clearly be traced to particular funds or property in the defendant's possession."  Colgan v. Leatherman Tool Group, Inc., 135 Cal. App. 4th 663, 699 (2006); see Kwikset Corp., 51 Cal. 4th at 336 ("A restitution order against a defendant thus requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other.").

MGA has presented no evidence supporting any monetary award of any type for Mattel's alleged unfair competition with respect to Early Light, Bandai or THQ

00505.07975/4111584.1

(or any other manufacturer, distributor or licensee).  <u>See</u> Finding of Fact ¶¶ 105-31. There is no evidentiary basis to make any monetary award to MGA for that alleged conduct.

Mr. Malackowski, MGA's damages expert, did present a damages theory with respect to Kohl's (Finding of Fact ¶ 99-100), but it is not a theory of restitution.  His Kohl's-related damages theory does not even contemplate funds in the hands of Mattel, a necessary predicate to a restitutionary award.  <u>See</u> <u>Bank of the West</u>, 2 Cal. 4th at 1266 (holding that the only "nonpunitive monetary relief available" under the UCL "is disgorgement of money that has been wrongfully obtained").  He did not trace to Mattel any amount of property or particular funds belonging to MGA. Finding of Fact ¶¶ 99-100.  Property, as used in section 17203, refers to a vested property interest, not merely an expectation of a future business.  <u>Korea Supply Co.</u>, 29 Cal.4th at 1149-1150 (holding that an expectancy of payment from a third party is a contingent right that cannot be recovered through a UCL claim); <u>see also</u> <u>U.S. v. Rodrigues</u>, 229 F.3d 842, 846 (9th Cir. 2000) (finding that under the federal Victim and Witness Protection Act of 1982, restitution was not available for a contingent loss in which the company had only an expectancy interest; restitution could only be recovered for the loss of a vested interest).  For purposes of MGA's statutory unfair competition claim, "property" cannot be an expectation of continued placement of non-performing products on a retailer's shelf, particularly when the retailer has unfettered discretion to make that election.  Finding of Fact ¶¶ 22-27.  MGA's failure to show that Mattel possesses any money or property as to which MGA has a vested property interest is fatal to any claim for restitution.  <u>See</u> <u>Kwikset Corp.</u>, 51 Cal. 4th at 336; <u>Colgan</u>, 135 Cal. App. 4th at 699.

MGA's Kohl's damages theory is, at bottom, a generic damages claim seeking lost profits from sales of Bratz dolls at Kohl's in 2005 and 2006.  Findings of Fact ¶¶ 99-100.  By definition, a plaintiff's lost profits are damages, not restitution.  <u>Oculus Innovative Sciences, Inc. v. Prodinnv, S.A. de C.V.</u>,  2010 WL

4774659 at *5 (N.D. Cal., November 16, 2010) (finding that disgorgement of profits is "has been held not to be available as a remedy under the UCL."); <u>Korea Supply Co.</u>, 29 Cal. 4th 1134 at 1149 (holding sole monetary relief available under section 17203 is restitution, and that "[a]ny award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that defendants took directly from plaintiff"); <u>Inline, Inc. v. A.V.L. Holding Co.</u>, 125 Cal. App. 4th 895, 904-05 (2005) (rejecting various forms of requested recovery because not restitutionary, including consequential losses and fair market value of property sold); <u>Pegasus Satellite Television, Inc. v. DirecTV, Inc.</u>, 318 F. Supp. 2d 968, 979 (C.D. Cal. 2004) (one competitor does not have a vested interest in the profits of another).

In denying Mattel's motion for summary judgment as to MGA's statutory unfair competition claim, the Court identified a potential factual dispute as to whether MGA had a property right arising from contract to placement of its products on Kohl's shelves. Dkt. 9600 at 110-11. Even if interference with such a contract could provide a basis for an award of restitution under the UCL, MGA adduced no evidence at trial that it had any "vested interest" in the placement of its products on Kohl's shelves. It introduced no agreement with Kohl's of any type for any year. Finding of Fact ¶ 47. Kohl's, like other retailers, does not enter into long term contracts to purchase and place toys, but make decisions twice a year as to what, of the new crop of offered toys, it will purchase and place in its stores. Findings of Fact ¶¶ 14-17. This practice benefits consumers. MGA had no right to placement at Kohl's. It had to compete for shelf space at Kohl's by offering products that would appeal to the Kohl's consumer and generate profits for Kohl's. Bratz dolls did neither of those things. Findings of Fact ¶¶ 17, 28, 29. Accordingly, Mattel did not deprive MGA of any "property" as that term is used in section 17203.

Finally, even if the Court were to consider awarding MGA lost profits (and it should not), MGA offered no evidentiary basis from which the Court could

determine the proper amount of any such award.  While MGA alleges that Mattel induced Kohl's not to sell Bratz dolls on four feet of space within the Kohl's toy department for two years, its damages analysis is different—it does not measure lost profits based on claimed lost sales of Bratz dolls for 2005 and 2006, but rather purports to do so based on *all* MGA products.  Findings of Fact ¶ 101.  MGA's own records show that Kohl's purchased and sold MGA products in its stores in both 2005 and 2006.  Findings of Fact ¶¶ 71-75.  In addition, MGA failed to show that Kohl's purchased any Bratz dolls, or the amounts of such sales, in 2007, 2008 or 2009, after Mattel's alleged unlawful conduct ceased.  Finding of Fact ¶¶ 102-04.  Because MGA's expert failed to limit or apportion damages for the teenage Bratz dolls, as opposed to Little Tikes, Little Bratz or any other MGA product, the Court has no evidence from which to determine (a) whether MGA in fact lost profits on Bratz dolls sales in 2005 and 2006, or (b) the amount of any such lost profits.  Findings of Fact ¶¶ 99-104.   Accordingly, no restitution should be awarded to MGA.  See, e.g., Fireman's Fund Ins. Companies v. Big Blue Fisheries, Inc., 143 F.3d 1172, 1174 (9th Cir. 1998) ("We uphold the district court's finding that the Big Blue's use of radar was non-negligent, but reverse the district court's demurrage award because it is unsupported by the record."); F.D.I.C. v. Craft, 157 F.3d 697, 704-05 (9th Cir. 1998) (holding that speculative damages that have not been established at trial are not recoverable).

**E.    MGA's UCL Claim Is Barred By The Competition Privilege**

The competition privilege bars MGA's UCL claim with respect to Kohl's.  See Mattel's Fourth Am. Answer And Counterclaims, Dkt. No. 7714, at 25 (Eleventh Affirmative Defense); Mattel's Fourth Am. Proposed Jury Instructions, Dkt. No. 9683, at 237-38.  The competition privilege protects a party from liability for inducing a third person not to enter into a prospective contractual relation with a business competitor.  See Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners, 52 Cal. App. 4th 867, 880-81 (1997) ("California law has

long recognized a 'competition privilege' which protects one from liability for inducing a third person not to enter into a prospective contractual relation with a business competitor.") (internal citations and quotations omitted); <u>San Francisco Design Center Assocs. v. Portman Cos.</u>, 41 Cal. App. 4th 29, 42-43 (1995) ("In order to defeat the privilege the defendant's conduct must be unlawful or illegitimate.  That is, when a claimant charges its competitor with interference with prospective economic advantage and the competitor raises the competition privilege as a defense, the claimant must show the competitor's conduct violated a statute or constituted a tort such as fraud or unfair competition.  The defendant's conduct must be independently actionable."); Restatement (Second) of Torts § 768 ("(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if (a) the relation concerns a matter involved in the competition between the actor and the other and (b) the actor does not employ wrongful means and (c) his action does not create or continue an unlawful restraint of trade and (d) his purpose is at least in part to advance his interest in competing with the other.").

The relationship between MGA and Kohl's concerns a matter involved in the competition between Mattel and MGA.  Findings of Fact ¶¶ 11, 12, 77, 78.  Mattel did not employ improper means or create a restraint on trade.  Kohl's decided not to purchase additional Bratz dolls before even approaching Mattel about expanding shelf space.  Finding of Fact ¶ 78.  MGA introduced no evidence of any improper conduct by Mattel with respect to Kohl's.  Neither the 2005 nor the 2006 contracts contain any exclusionary provision or reference to MGA.  Findings of Fact ¶¶ 84-88.  There is no evidence the practical effect of either agreement would have been to foreclose MGA from competing for business at Kohl's.  Findings of Fact ¶¶ 84-98.  Further, MGA did not prove that the payments that Mattel agreed to make to Kohl's, in exchange for Kohl's making minimum purchases and providing eight feet of shelf

space, among others, were not improper.  Even if they were, then MGA cannot complain because it was offering to make payments in exchange for similar concessions from Kohl's.  Finding of Fact ¶¶ 62, 68-70.

Nor is there any evidence of any harm to consumers.  Kohl's continued to carry MGA products at its stores in 2005 and 2006.  Findings of Fact ¶¶ 71-75.  Far from harming consumers, Kohl's responded to consumer demands by increasing the selection of the product that Kohl's consumers wanted—BARBIE dolls—and reducing the selection of the product that Kohl's consumers did not like—Bratz dolls.

Mattel's purpose in entering into the 2005 and 2006 contracts with Kohl's was "at least in part" to advance its business interest.  Mattel sought to increase representation of BARBIE at Kohl's and engaged in lawful negotiations with Kohl's to do so.  Findings of Fact ¶¶ 78-95.

For the reasons above, even if MGA had proven all of the elements of its UCL claim, the Court should nonetheless dismiss it because Mattel has prevailed on its affirmative defense of competition privilege.

## F.    MGA's Unfair Competition Claim Is Barred by Its Unclean Hands

The Court should not award MGA any restitution or injunctive relief against Mattel because MGA has unclean hands and is not entitled to any equitable remedy.  See Mattel's Fourth Am. Answer And Counterclaims, Dkt. No. 7714, at 24 (Fourth Affirmative Defense); Mattel's Fourth Am. Proposed Jury Instructions, Dkt. 9683, at 226-27.  While "equitable defenses may not be asserted to wholly defeat a UCL claim since such claims arise out of unlawful conduct," the California Supreme Court held in Cortez v. Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 179-80 (2000), that equitable considerations may "guide the court's discretion in fashioning the equitable remedies authorized by section 17203."  Cortez, 23 Cal. 4th at 179. "[W]hat would otherwise be equitable defenses may be considered by the court when the court exercises its discretion over which, if any, remedies authorized by

section 17203 should be awarded." Id. at 179-80.  Under Cortez, "the trial court has the discretion to consider equitable defenses such as unclean hands in creating the *remedies* authorized by Business and Professions Code section 17203." See, e.g., Ticconi v. Blue Shield of California Life & Health Ins. Co., 160 Cal.App.4th 528, 544-45 (2008) (citing Cortez, 23 Cal. 4th at 179) (emphasis in original).

The doctrine of unclean hands requires that a plaintiff act fairly in the matter for which he seeks a remedy.  See Kendall-Jackson Winery Ltd. v. Sup. Ct., 76 Cal. App. 4th 970, 978 (1999) ("The defense of unclean hands arises from the maxim, 'He who comes into Equity must come with clean hands.'  The doctrine demands that a plaintiff act fairly in the matter for which he seeks a remedy.  He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim.") (internal citations and quotations omitted). "It is fundamental to [the] operation of the doctrine that the alleged misconduct by the plaintiff relate directly to the transaction concerning which the complaint is made." Dollar Sys., Inc., 890 F.2d at 173 (internal quotation omitted), quoted with approval in Seller Agency Council, Inc., 621 F.3d at 986.

MGA alleges Mattel is liable for unfair competition based upon its conduct with the retailer Kohl's, but there is ample evidence MGA offered money to Kohl's for the same shelf space.  Findings of Fact ¶¶ 62, 68-70.  MGA did so at a time when Kohl's was facing severe margin losses due to poorly performing Bratz products, yet MGA conditioned its offers of money to Kohl's in 2004 and 2005 on minimum purchase requirements for more non-performing MGA products. Findings of Fact ¶¶ 55-70.  Moreover, MGA routinely offered incentives to retailers including, without limitation, incentive payments if targets are met.  Findings of Fact ¶¶ 19.  Even if MGA would otherwise have a claim, it is precluded from any equitable relief under the unclean hands doctrine.  Dollar Sys., Inc., 890 F.2d at 173; see also Adler v. Federal Republic of Nigeria, 219 F.3d 869, 877 (9th Cir. 2000) (affirming district court's application of unclean hands defense).

### G.   MGA's UCL Claim Is Superseded By CUTSA

None of the evidence presented at trial regarding MGA's toy fair allegations or alleged misappropriation of MGA information can properly be part of MGA's unfair competition claim.  The Court has previously ruled that CUTSA supersedes claims, including the statutory unfair competition claims in this case, based upon the misappropriation of trade secret information.  <u>See</u> Am. MSJ Order, Dkt. No. 9600, at 91; Order on Mtns. In Limine, Dkt. No. 9669, at 22; Order Regarding Advisory Opinion on Claims for Violations of Cal. Bus. & Prof. Code § 17200, Dkt. No. 10319, at 1-2.   <u>See also</u> <u>K.C. Multimedia, Inc. v. Bank of America Tech. & Operations, Inc.</u>, 171 Cal.App.4th 939, 962 (2009) (holding that "appellant's statutory unfair competition claim" was preempted by CUTSA where "[a]s a factual basis for its claim, appellant alleges the same conduct that gives rise to trade secrets claim").  Accordingly, to the extent MGA's UCL claim is based upon its "toy fair" allegations or any alleged misappropriation of MGA information, the claim is superseded by CUTSA.  <u>See</u> Am. MSJ Order, Dkt. No. 9600, at 91; Order on Mtns. In Limine, Dkt. No. 9669, at 22; Order Regarding Advisory Opinion on Claims for Violations of Cal. Bus. & Prof. Code § 17200, Dkt. No. 10319, at 1-2.   <u>See also</u> <u>K.C. Multimedia</u>, 171 Cal. App. 4th at 962.

00505.07975/4111584.1

MATTEL'S MEMORANDUM RE MGA'S UNFAIR COMPETITION CLAIM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>Conclusion</u>

For the foregoing reasons, Mattel respectfully requests that the Court defer ruling on MGA's statutory unfair competition claim to preserve Mattel's Seventh Amendment right to a jury trial on MGA's newly-filed antitrust claim or, in the alternative, reject MGA's statutory unfair competition claim and adopt Mattel's Proposed Findings of Fact and Conclusions of Law, filed concurrently herewith.


DATED:  April 26, 2011            QUINN EMANUEL URQUHART &
                                  SULLIVAN. LLP


                                  By /s/ John B. Quinn
                                     John B. Quinn
                                     Attorneys for Mattel, Inc., and Mattel de
                                     Mexico. S.A. de C.V.

MATTEL'S MEMORANDUM RE MGA'S UNFAIR COMPETITION CLAIM