ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone:  415-773-5700
Facsimile:   415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone:  213-629-2020
Facsimile:   213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>         Plaintiff,<br><br>    v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>       Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br><br>Consolidated with Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**MGA PARTIES' MOTION FOR JUDGMENT ON MATTEL'S INTENTIONAL INTERFERENCE WITH CONTRACT AND UNFAIR COMPETITION CLAIMS**<br><br>Date: May 24, 2011<br>Time: 8:30 a.m.<br>Dept: Courtroom 9D<br><br>Trial Date: January 18, 2011<br>Judge:  Hon. David O. Carter |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 24, 2011, at 8:30 a.m., or as soon as counsel may be heard, in the Courtroom of the Honorable David O. Carter, located at 411 West Fourth Street, Room 1053, Santa Ana, California 92701, the MGA Parties will, and hereby do, move for judgment on Mattel's claims of intentional interference with contract and unfair competition and, in the alternative, a reduction of the jury's damages award.

This Motion is made on the grounds that: (1) Mattel failed to present evidence to support these claims at trial; (2) the evidence presented at trial and the findings of the jury demonstrate that the statute of limitations has run on both claims; and (3) Carter Bryant has already repaid Mattel for any damage found by the jury.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration(s) filed concurrently herewith, all matters cited to herein and all other matters of which the Court may take judicial notice.

Dated: May 5, 2011

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____ /s/ Annette L. Hurst _____
Annette L. Hurst
Attorneys for MGA ENTERTAINMENT, INC.,
MGA ENTERTAINMENT HK, LTD., MGA de
MEXICO, S.R.L. de C.V., and ISAAC LARIAN

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................1

STATEMENT OF FACTS ...................................................................2

I.     CARTER BRYANT LEAVES MATTEL TO WORK FOR MGA ...............2

II.    MATTEL IS AWARE OF FACTS TO PUT IT ON NOTICE OF ITS CLAIMS......................................................................................2

     A.     Mattel Employees Are Suspicious When Bryant Left in 2000 and Hear About Brant's Involvement With Bratz in 2001 ...................2

     B.     Mattel Investigates MGA, MGA HK and Larian in 2001 ...................3

     C.     In Early 2002, Mattel Finds Out More About Bryant's Involvement with Bratz........................................................................4

     D.     In Early 2002, Mattel Opens an Official Investigation File for MGA and Larian Regarding the Theft of Proprietary Information .........................................................................5

     E.     In August 2002, Mattel Receives an Anonymous Letter Regarding Bryant and Bratz............................................................6

III.   MATTEL SUES CARTER BRYANT ON APRIL 27, 2004.........................7

IV.   MGA INTERVENES IN THE CARTER BRYANT CASE ON DECEMBER 7, 2004..............................................................................8

V.     MGA FILES SUIT AGAINST MATTEL ON APRIL 12, 2005 ..................8

VI.   MATTEL SEEKS LEAVE TO AMEND ON NOVEMBER 20, 2006, TO ADD CLAIMS AGAINST MGA, MGA HK AND LARIAN ...............9

VII. THE JURY FINDS MATTEL KNEW OR SHOULD HAVE KNOWN ABOUT ITS CLAIMS AGAINST MGA AND LARIAN BY APRIL 27, 2002 ......................................................................................11

ARGUMENT .....................................................................................11

I.     MATTEL'S INTERFERENCE WITH CONTRACTUAL RELATIONS CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS ...............................................................................13

     A.     Mattel Knew the Generic Elements of Its Intentional Interference Claim Before November 20, 2004................................14

     B.     The Evidence Supports the Jury's Decision That Mattel Discovered, or Should Have Discovered Intentional Interference With Bryant's Contract Before November 20, 2004 ........................15

II.    MATTEL'S UNFAIR COMPETITION CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS............................................................17

     A.     Mattel's Unfair Competition Claim Relating to Carter Bryant Expired by October 2004 ...............................................................17

     B.     The Discovery Rule Does Not Apply to Unfair Competition Claims ...............................................................................18

1
2

**TABLE OF CONTENTS**
(continued)

Page

3  III.   THE RELATION BACK DOCTRINE DOES NOT SAVE
4         MATTEL'S CLAIM FOR INTENTIONAL INTERFERENCE OR
         UNFAIR COMPETITION..........................................................................19

5         A.   The Claims Cannot Relate Back to the Bryant Complaint.................19

6              1.   The Court Has Recognized That Mattel's Claims Against
                   MGA and Larian Cannot Relate Back to the Action
7                  Against Bryant......................................................................19

8              2.   Mattel's Failure to Name MGA and Larian as Defendants
                   in the Bryant Action was Not the Result of a Mistake............20

9         B.   The Claims Cannot Relate Back to MGA's Complaint ......................23

10             1.   Mattel's Claims Would Still Be Barred by the Statute of
                   Limitations............................................................................23

11             2.   Mattel's Claims Are Not Compulsory Counterclaims.............23

11 IV.   CALIFORNIA'S DOE-DEFENDANT RULE DOES NOT SAVE
12        MATTEL'S CLAIMS..............................................................................25

13 V.    MGA IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON
         MATTEL'S INTENTIONAL INTERFERENCE CLAIM BASED
14        UPON MATTEL'S FAILURE OF PROOF.................................................27

15        A.   Mattel Did Not Prove Any Harm Resulting From the Alleged
                Interference.........................................................................27

16        B.   MGA's Conduct Was Permitted and Protected by California's
                Public Policy........................................................................28

17        C.   Mattel's Evidence Will Not Support a Finding That MGA
                Intended to Cause a Breach of Bryant's Contract With Mattel or
18             to Disrupt the Performance of the Contract ........................................29

19 VI.   MATTEL'S RECOVERY AGAINST MGA AND LARIAN
         SHOULD BE EXTINGUISHED DUE TO CARTER BRYANT'S
         SETTLEMENT PAYMENT TO MATTEL..................................................31

20 CONCLUSION ...................................................................................................33

21
22
23
24
25
26
27
28

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

## FEDERAL CASES

4   *Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l*
      *Publ'ns, Inc.*,
5         108 F.3d 1147 (9th Cir. 1997)..................................................................... 12

6   *Ambassador Hotel Co., Ltd. v. Wei-Chuan Investment*,
          189 F.3d 1017 (9th Cir. 1999)..................................................................... 31
7
    *Applied Med. Res. Corp. v. United States Surgical Corp.*,
8         2008 WL 1901935 (C.D. Cal. Apr. 29, 2008) ............................................ 12

9   *Bailey v. Northern Ind. Pub. Serv. Co.*,
          910 F.2d 406 (7th Cir. 1990)....................................................................... 19
10
    *Barrow v. Wethersfield Police Dep't*,
11        66 F.3d 466 (2d Cir. 1995)........................................................................... 21

12  *Bauer v. Interpublic Group of Companies, Inc.*,
          255 F. Supp. 2d 1086 (N.D. Cal. 2003)....................................................... 31
13
    *Conceptus, Inc. v. Hologic, Inc.*,
14        2010 WL 1460162 (N.D. Cal. Apr. 12, 2010) ............................................ 24

15  *Crowe v. Wiltel Commc'n Sys.*,
          103 F.3d 897 (9th Cir. 1996)....................................................................... 12
16
    *DeVoto v. Pacific Fidelity Life Ins. Co.*,
17        618 F.2d 1340 (9th Cir. 1980)..................................................................... 31

18  *EchoStar Satellite Corp. v. NDS Group PLC*,
          2008 WL 4596644 (C.D. Cal. Oct. 15, 2008)............................................. 17
19
    *Eich v. Bd. of Regents for Cent. Mo. State Univ.*,
20        350 F.3d 752 (8th Cir. 2003)....................................................................... 12

21  *Employers Ins. of Wausau v. United States*,
          764 F.2d 1572 (Fed. Cir. 1985).................................................................. 24
22
    *Endres v. Wells Fargo Bank*,
23        2008 WL 344204 (N.D. Cal. Feb. 6, 2008) ................................................ 19

24  *Floyd v. Laws*,
          929 F.2d 1390 (9th Cir. 1991)..................................................................... 17
25
    *Forcier v. Microsoft Corp.*,
26        123 F. Supp. 2d 520 (N.D. Cal. 2000)......................................................... 13

27  *G.F. Co. v. Pan Ocean Shipping Co.*,
          23 F.3d 1498 (9th Cir. 1994)....................................................................... 20
28

*Garrett v. Fleming,*
    362 F.3d 692 (10th Cir. 2004)..............................................................20, 21

*In re Lazar,*
    237 F.3d 967 (9th Cir. 2001)...................................................................... 24

*Jones-Hamilton Co. v. Beazer Materials & Services, Inc.,*
    973 F.2d 688 (9th Cir. 1992)...................................................................... 19

*Karl Storz Endoscopy-America, Inc. v. Surgical Techs., Inc.,*
    285 F.3d 848 (9th Cir. 2002)...................................................................... 17

*Kilkenny v. Arco Marine Inc.,*
    800 F.2d 853 (9th Cir. 1986)..................................................................20, 22

*Korn v. Royal Caribbean Cruise Line, Inc.,*
    724 F.2d 1397 (9th Cir. 1984).................................................................... 20

*Krupski v. Costa Crociere S.p.A.,*
    130 S. Ct. 2485 (2010)............................................................................21, 23

*Lakeside-Scott v. Multnomah County,*
    556 F.3d 797 (9th Cir. 2009)...................................................................... 12

*Lauter v. Anoufrieva,*
    2010 WL 3504745 (C.D. Cal. July 14, 2010)............................................ 23

*Los Angeles Police Protective League v. Gates,*
    995 F.2d 1469 (9th Cir. 1993).................................................................... 17

*Louisiana-Pac. Corp. v. ASARCO, Inc.,*
    5 F.3d 431 (9th Cir. 1993).......................................................................21, 22

*Mangum v. Action Collection Serv., Inc.,*
    575 F.3d 935 (9th Cir. 2009)...................................................................... 12

*Miller v. Fairchild Indus.,*
    885 F.2d 498 (9th Cir. 1989)...................................................................... 17

*Mujica v. Occidental Petroleum Corp.,*
    381 F. Supp. 2d 1164 (C.D. Cal. 2005) ..................................................... 18

*Nelson v. Adams USA, Inc.,*
    529 U.S. 460 (2000).................................................................................... 21

*Perez v. Nidek Co.,*
    657 F. Supp. 2d 1156 (S.D. Cal. 2009) ..................................................... 19

*Perrian v. O'Grady,*
    958 F.2d 192 (7th Cir. 1992)...................................................................... 11

*Pierce v. City of Chicago,*
    2010 WL 4636676 (N.D. Ill. Nov. 8, 2010) .............................................. 23

*Pochiro v. Prudential Ins. Co. of Am.*,
   827 F.2d 1246 (9th Cir. 1987)................................................................. 24

*Powers v. Graff*,
   148 F.3d 1223 (11th Cir. 1998)............................................................... 21

*Shea v. Esensten*,
   208 F.3d 712 (8th Cir. 2000)................................................................... 21

*Torres v. City of Los Angeles*,
   548 F.3d 1197 (9th Cir. 2008)................................................................. 12

*Trigo v. TDCJ-CID Officials*,
   2010 WL 3359481 (S.D. Tex. Aug. 24, 2010) ........................................ 23

*Utilx Corp. v. Novimium, Inc.*,
   2009 WL 3517576 (W.D. Wash. Oct. 27, 2009) ..................................... 24

*Wilson v. United States*,
   23 F.3d 559 (1st Cir. 1994) .................................................................... 20

*Worthington v. Wilson*,
   8 F.3d 1253 (7th Cir. 1993).................................................................... 21

## STATE CASES

*1-800 Contacts, Inc. v. Steinberg*,
   107 Cal. App. 4th 568 (2003).................................................................. 29

*Acadia, California, Ltd. v. Herbert*,
   54 Cal. 2d 328 (1960) ............................................................................ 32

*Aryeh v. Canon Bus. Solutions*,
   185 Cal. App. 4th 1159 (2010)................................................................ 18

*Broberg v. The Guardian Life Ins. Co. of Am.*,
   171 Cal. App. 4th 912 (2009).................................................................. 18

*Buxbon v. Smith*,
   23 Cal. 2d 535 (1944) ............................................................................ 29

*Cypress Semiconductor Corp. v. Superior Court*,
   163 Cal. App. 4th 575 (2008).................................................................. 14

*Davis v. Nadrich*,
   174 Cal. App. 4th 1 (2009)..................................................................... 29

*Diodes, Inc. v. Franzen*,
   260 Cal. App. 2d 244 (1968)................................................................... 29

*Dover v. Sadowinski*,
   147 Cal. App. 3d 113 (1983)................................................................... 26

*Edwards v. Arthur Anderson LLP*,
   44 Cal. 4th 937 (2008)........................................................................... 28

*Fox v. Ethicon Endo-Surgery, Inc.*,
    35 Cal. 4th 797 (2005) ............................................................ 14

*Grinnell Fire Protection Sys. Co. v. Am. Sav. & Loan Ass'n*,
    183 Cal. App. 3d 352 (1986)...................................................... 26

*Jolly v. Eli Lilly & Co.*,
    44 Cal. 3d 1103 (1988) ............................................................ 14

*Lafeyette v. County of Los Angeles*,
    162 Cal. App. 3d 547 (1984)...................................................... 32

*Massachusetts Mutual Life Ins. Co. v. Superior Court*,
    97 Cal. App. 4th 1282 (2002)..................................................... 18

*McGee St. Prods. v. Workers' Comp. Appeals Bd.*,
    108 Cal. App. 4th 717 (2003)..................................................... 26

*Metro Traffic Control Inc. v. Shadow Traffic Network*,
    22 Cal. App. 4th 853 (1994)....................................................... 29

*Miller v. Bechtel Corp.*,
    33 Cal. 3d 868 (1983) ............................................................... 15

*Norgart v. Upjohn Co.*,
    21 Cal. 4th 383 (1999) .............................................................. 14

*Reeves v. Hanlon*,
    33 Cal. 4th 1140 (2004) ............................................................ 29

*Richardson v. Allstate Ins. Co.*,
    117 Cal. App. 3d 8 (1981)......................................................... 13

*Scherer v. Mark*,
    64 Cal. App. 3d 834 (1976)....................................................... 26

*Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson*,
    96 Cal. App. 4th 884 (2001)....................................................... 18

*Tavaglione v. Billings*,
    4 Cal. 4th 1150 (1993) .............................................................. 31

*Trembath v. Digardi*,
    43 Cal. App. 3d 834 (1974)....................................................... 13

*Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist.*,
    106 Cal. App. 4th 1219 (2003).................................................... 29

*Woo v. Superior Court*,
    75 Cal. App. 4th 169 (1999)....................................................... 26

## STATUTES

Business and Professions Code section 16600 ................................... 28

Cal. Civ. Code § 3426.6................................................................................ 15

Cal. Civ. Proc. Code § 474 ........................................................................... 26

Cal. Code Civ. Proc. § 339 ............................................................................ 13

Cal. Code of Civil Proc. § 877 ...................................................................... 32

Cal. Code of Civil Proc. section 339(1)......................................................... 13

Fed. R. Civ. P. 13(a) ..................................................................................... 24

Fed. R. Civ. P. 15(c) ..................................................................................... 22

Fed. R. Civ. P. 15(c)(1)(C)......................................................................20, 21

Fed. R. Civ. P. 50(a) ..................................................................................... 11

Fed. R. Civ. P. 50(a)(1).................................................................................. 12

Fed. R. Civ. P. 50(b)(3)................................................................................. 11

**MISCELLANEOUS**

6A WRIGHT, MILLER & KANE, Federal Practice and Procedure § 1498.3 ....... 21

Restatement (Second) of Torts § 766 .................................................... 31

# INTRODUCTION

The Court should grant judgment in favor of MGA and Isaac Larian on Mattel's intentional interference and unfair competition claims.  In the first instance, both claims are barred by the statute of limitations.  Mattel did seek not file any claims against MGA or Larian until November 2006.  A claim for intentional interference has a two-year statute of limitations.  Based upon the fact that Carter Bryant's contractual relationship with Mattel ended in October 2000, Mattel's claim expired in October 2002.  Even if the discovery rule applied, which it does not, based on the jury's finding that Mattel knew or should have known about its intentional interference claim on or before April 27, 2002, the claim expired by April 27, 2004.  For Mattel's unfair competition claim, the statute of limitations is four years and the discovery rule does not apply.  Accordingly, Mattel's unfair competition claim expired four years after Mattel's relationship with Bryant ended–October 2004.  Further, as detailed below, neither of these claims relate back to Mattel's initial complaint against Bryant or MGA's complaint against Mattel.  Similarly, Mattel cannot rely on the doe defendant rule to save these claims, as it had knowledge of MGA and Larian's actions at the time it filed the Bryant complaint.

Second, even if the intentional interference claim was not barred by the statute of limitations, the Court should still grant judgment in favor of MGA and Larian because Mattel failed to introduce evidence to support these claims at trial.  Specifically, Mattel failed to present evidence of: (1) harm to Mattel as a result of the alleged interference; and (2) MGA and Larian's intent to interfere with the contractual relationship.  Further, the conduct at issue is privileged under California law.

Finally, even if the Court were to allow the jury verdict regarding intentional interference to stand, the judgment against MGA and Larian must be reduced based upon the payment already received by Mattel from Carter Bryant.  Bryant's

MGA PARTIES' MOTION FOR JUDGMENT RE INTENTIONAL
INTERFERENCE AND UNFAIR COMPETITION
CV-04-9049 DOC (RNBx)

1  payment was to settle Mattel's claim for breach of conduct, which addresses the

2  same conduct and harm at issue in Mattel's claim against MGA and Larian for

3  intentional interference with Bryant's Mattel contract.

4  **STATEMENT OF FACTS**

5  **I.    CARTER BRYANT LEAVES MATTEL TO WORK FOR MGA**

6       Carter Bryant was a Mattel employee from January 4, 1999 to October 19,

7  2000.  1/28/2011 (Vol. 1) Tr. 62:11-13 (Bryant Testimony); 2/1/2011 (Vol. 3) Tr.

8  7:9-16 (Bryant Testimony).  Prior to the end of his employment relationship with

9  Mattel, Bryant sold MGA his idea for a line of fashion dolls called Bratz and agreed

10  to work for MGA as a consultant.  *See, e.g.*, TX 15.  Upon reaching agreement with

11  MGA for the development of the Bratz dolls, Bryant gave two-weeks notice to

12  Mattel.  2/1/2011 (Vol. 3) Tr. at 7:1-8 (Bryant Testimony).

13  **II.   MATTEL IS AWARE OF FACTS TO PUT IT ON NOTICE OF ITS**
14        **CLAIMS**

       **A.    Mattel Employees Are Suspicious When Bryant Left in 2000 and**
15            **Hear About Brant's Involvement With Bratz in 2001**

16       After Bryant left Mattel in October 2000, Mattel employees in the Design

17  Center suspected that Bryant had a "conflict of interest while he was working at

18  Mattel."  TX 36091-0033.  Nordquist testified that she did not believe Bryant when

19  he said that he was not going to work for a competitor and would not tell her where

20  he was going to work.  3/10/2011 (Vol. 1) Tr. 9:9-10:5 (Nordquist testimony); *see*

21  *also* 1/19/2011 (Vol. 2) 147:21-148:12 (Martinez testimony).  Nordquist was

22  concerned that Bryant was in fact going to work for a competitor.  3/10/2011 (Vol.

23  1) Tr. 10:14-17 (Nordquist testimony).

24       In the summer of 2001, Nordquist heard from two to three people in the

25  Mattel Design Center about Bryant's involvement and work on the Bratz doll.

26  3/10/2011 (Vol. 1) Tr. 11:22-12:7 (Nordquist testimony).  Nordquist discussed this

27  information with Mattel's SVP Anne Parducci.  3/10/2011 (Vol. 1) Tr. 12:8-14

28  (Nordquist testimony).

The discussions in the Design Center also related to the similarity between Bratz and Mattel's unreleased product, Toon Teens.  1/19/2011 (Vol. 1) 115:13-116:2, 126:6-16 (Ross testimony); 1/19/2011 (Vol. 2) 15:4-14 (Ross testimony); 3/9/2011 (Vol. 2) Tr. 33:2-8 (De Anda testimony); 3/17/2011 (Vol. 2) Tr. 22:6-23:5, 29:19-22 (Fontanella testimony); TX 1C (Wall Street Journal Article discussing rumors at Mattel).  Fontanella thought the similarities included the shape of the eyes, the eye face paint, the shape of the lips, the small nose, the big feet and the short waist.  3/17/2011 (Vol. 2) Tr. 22:6-23:5 (Fontanella testimony).  Ivy Ross, Cassidy Park and Lilly Martinez knew that Bryant had seen Toon Teens while at Mattel and believed that Bratz was "inspired" by the unreleased Toon Teens.  1/19/2011 (Vol. 1) Tr. 115:13-116:2 (Ross testimony); 3/9/2011 (Vol. 2) Tr. 77:22-79:23 (De Anda testimony); TX 1195RS-0066.[1]

### B.   Mattel Investigates MGA, MGA HK and Larian in 2001

By August 2001, Mattel had begun investigating MGA, MGA HK and Isaac Larian.  On August 21, 2001, Mattel VP Matthew Turetzky issued a report to SVP Jerome Bossick detailing information on MGA, MGA HK and Larian.  TX 26701-A.  Similar to what Romano had reported in declining to distribute Bratz in Latin America, Turetzky reported to Bossick:  "Recently, we have grown increasingly concerned due to the similarity of some of [MGA's] products to ours (Scooter Samantha, Bratz, and One Man Jam DJ Mixer)."  *Id.*

Turetzky's report to Bossick was prompted in part because of a belief at

---

[1] Mattel's employees also noticed the similarity between its line of four Diva Starz fashion dolls (TX 17383, 17384, 35312, 35313) released in the fall of 2000 and Bratz.  1/19/2011 (Vol. 1) Tr. 115:13-116:2 (Ross testimony); 3/10/2011 (Vol. 1) Tr. 13:2-14:10 (Nordquist testimony); 3/17/2011 (Vol. 1) Tr. 95:4-16 (Fontanella testimony); 3/17/2011 (Vol. 2) Tr. 18:14-19:13, 21:14-22:2 (Fontanella testimony); 3/22/2011 (Vol. 2) Tr. 18:8-24 (Romano testimony); TX 35302-00090-91 (Mattel 2000 catalogue); TX 25858 (Mattel declined to distribute Bratz "because some products are very similar to our own concepts and this is a very sensitive issue with the brand groups (Bratz and Samantha)."); TX 9502-00010; TX 9504-0012 (both describe Bratz as "'Diva Starz' with a smarty attitude.").  Mattel's Sr. Director of Marketing Jill Nordquist referred to Bratz as a Diva Starz knockoff.  3/10/2011 (Vol. 1) Tr. 13:2-23, 14:7-10 (Nordquist testimony).

MGA PARTIES' MOTION FOR JUDGMENT RE INTENTIONAL
INTERFERENCE AND UNFAIR COMPETITION
CV-04-9049 DOC (RNBx)

1   Mattel that MGA was copying Mattel's products, including two large dolls, and

2   was involved in the disappearance of prototypes from Mattel.  TX 26701-A;

3   3/22/2011 (Vol. 1) Tr. 114:22-115:5, 117:4-22, 142:20-143:21 (Turetzky

4   testimony).  The disappearance of Mattel prototypes and similar products sold by

5   MGA resulted in Mattel instituting new security measures to protect its projects.

6   TX 9442 at 502, 503, 504; 3/22/2011 (Vol. 1) Tr. 113:13-115:14 (Turetzky

7   testimony).

8          **C.     In Early 2002, Mattel Finds Out More About Bryant's**
               **Involvement With Bratz**
9

10         By early 2002, many people at Mattel had connected Carter Bryant with

11  Bratz and MGA, including Adrienne Fontanella, Cassidy Park, Elise Cloonan,

12  Evelyn Viohl and Ivy Ross.  1/19/2011 (Vol. 2) Tr. 150:6-153:13 (Martinez

13  testimony); 3/9/2011 (Vol. 2) Tr. 6:20-23, 16:25-17:7 (De Anda testimony);

14  3/17/2011 (Vol. 2) Tr. 23:16-24, 24:6-9 (Fontanella testimony); TX 1195RS-0066;

15  TX 36091-0033 ("After Mr. Bryant left, the design studio suspected that Mr.

16  Bryant may have had a conflict of interest while he was working at Mattel.").  After

17  she heard that Bryant was working with MGA, Fontanella assumed that he was

18  working on Bratz because it was MGA's doll line.  3/17/2011 (Vol. 2) Tr. 23:16-24,

19  24:6-9 (Fontanella testimony).  Fontanella then decided in early 2002 to involve

20  Michelle McShane, Mattel's chief legal officer responsible for enforcing Mattel's

21  trademarks and copyrights, to determine whether or not Bratz was violating the

22  legal rights of Mattel.  3/17/2011 (Vol. 2) Tr. 24:10-25, 25:21-26:9 (Fontanella

23  testimony).  Fontanella met with McShane and Mattel's outside counsel to

24  determine whether Bratz was violating the legal rights of Mattel.  3/17/2011 (Vol.

25  2) Tr. 24:13-25 (Fontanella testimony).

26         In February 2002, McShane received the resume of a former Mattel

27  employee, Mercedeh Ward, who left Mattel at about the same time as Bryant.  TX

28  8154; 3/17/2011 (Vol. 2) Tr. 68:1-69:5 (McShane testimony).  Ward's resume

MGA PARTIES' MOTION FOR JUDGMENT RE INTENTIONAL
INTERFERENCE AND UNFAIR COMPETITION
CV-04-9049 DOC (RNBx)

1  described her work with MGA HK on the production of MGA's then-new doll line,
2  which had to be Bratz.  TX 8154.

3       By this time, Mattel's outside counsel also was monitoring MGA's activities.
4  On February 5, 2002, Mattel's outside counsel sent Larian a letter demanding that
5  he remove references to Mattel's products on one of the Bratz fan websites.  TX
6  17252.  One month later, in early March 2002, this same web revealed Bryant's role
7  as the Bratz creator.  TX 4507.

8       **D.  In Early 2002, Mattel Opens an Official Investigation File for**
         **MGA and Larian Regarding the Theft of Proprietary Information**
9

10      On March 15, 2002, Mattel officially opened an investigative file that
11  identified Larian as the owner of MGA, and both Larian and MGA as a "Suspect"
12  in the "Theft" of "Proprietary Information."  TX 1195RS-004; 3/3/2011 (Vol. 2) Tr.
13  90:9-91:8 (Eckert testimony); 3/3/2011 (Vol. 1) Tr. 96:3-101:13, 102:13-119:3
14  (Eckert testimony); 3/9/2011 (Vol. 2) 11:8-12:21 (De Anda testimony).

15      As part of its investigation, Mattel interviewed some of the very employees
16  who had long suspected Bryant's involvement with Bratz, including Ivy Ross and
17  Cassidy Park.  3/9/2011 (Vol. 2) 8:25-9:23, 33:2-8 (De Anda testimony); TX
18  1195RS-0066.  The investigative file reveals that Mattel believed that MGA,
19  headed by Larian, had "recently hired a number of former Mattel employees and is
20  manufacturing products that appear to be Mattel designs."  1195RS-004.

21      Mattel's investigator also interviewed Cassidy Park, Mattel's VP of Product
22  Design, who "suspected Carter Bryant as illustrator/former employee who may
23  have plagerized [sic] design of Lilly Martinez and created 'Bratz' dolls for MGA."
24  TX 1195RS-066; 3/9/2011 (Vol. 2) 8:25-10:9, 33:2-8 (De Anda testimony).  Ivy
25  Ross also testified that the resemblance of Bratz to Toon Teens, coupled with
26  comments made by Bryant to Martinez that "Mattel will be sorry some day that
27  they didn't make those dolls," made her think "that maybe there was something
28  here."  1/19/2011 (Vol. 1) Tr. 115:13-116:7, 125:8-126:16 (Ross testimony);

1    1/19/2011 (Vol. 2) Tr. 72:8-73:4 (Martinez testimony); *see also* 1/19/2011 (Vol. 2)

2    Tr. 156:6-15 (Martinez testimony) (Bryant said "that he liked the doll so much,

3    Mattel would be crazy not to make them.").  De Anda admitted that in March 2002

4    he suspected that Bryant had violated at least his confidentiality agreement with

5    Mattel.  3/9/2011 (Vol. 2) Tr. 80:23-81:5 (De Anda testimony).

6    **E.    In August 2002, Mattel Receives an Anonymous Letter Regarding
7    Bryant and Bratz**

8         On August 5, 2002, Mattel's CEO Robert Eckert received an anonymous

9    letter stating that Bryant created Bratz in 2000 while employed by Mattel.  TX

10   1193; TX 6678-00005.  The anonymous letter made its way to SVP of Human

11   Resources Alan Kaye and then Richard De Anda for investigation.  3/9/2011 (Vol.

12   2) Tr. 38:2-39:8 (De Anda testimony); TX 1194.  However, Mattel did not open an

13   official investigation into the anonymous letter until September 9, 2003.  TX 6678-

14   00002.

15        By the fall of 2002, there were discussions not only in the lunch room, but

16   also at the executive level, that Carter Bryant was the origin of the Bratz design.

17   TX 9441; 3/22/2011 (Vol. 1) Tr. 124:2-125:2 (Turetzky testimony).

18        Then, in July 2003, The Wall Street Journal published an article about Bratz

19   that identified Larian as the President of MGA and Bryant as the creator of Bratz.

20   TX 1C.  Eckert read the article at the time that it was published.  3/1/2011 (Vol. 2)

21   Tr. 45:16-46:19 (Eckert testimony); 3/3/2011 (Vol. 1) Tr. 124:3-7, 126:18-22

22   (Eckert testimony).

23        On September 4, 2003, Mattel received a letter from an attorney in Hong

24   Kong who informed Mattel about a "legal battle" where "one of the points in

25   contention is whether MGA owns the copyright of the design of the Bratz dolls."

26   TX 15987.  The letter specifically refers to "design and concept drawings" that

27   MGA "claims to be the origin of its relevant copyright in the Bratz dolls."  *Id.*  The

28   letter also states that MGA had "alleged that these drawings were made and drawn

originally by one Carter Bryant who (according to the Wall Street Journal news article) was a former member of the Barbie designer team." *Id.* Finally, the letter refers to Mattel's unreleased doll designed by Martinez. *Id.* In November 2003, Mattel's in-house counsel Michael Moore went to Hong Kong and obtained copies of Bryant's contract with MGA (signed by Larian) and Bryant's drawings. 3/9/2011 (Vol. 2) Tr. 75:8-12 (De Anda testimony).

### III.   MATTEL SUES CARTER BRYANT ON APRIL 27, 2004

Six months later, on April 27, 2004, Mattel filed suit against Carter Bryant— and only Carter Bryant—for breach of contract, breach of fiduciary duty, breach of the duty of loyalty, unjust enrichment and conversion (the "Bryant complaint"). Case No. 04-cv-9059 Dkt. No. 1.[2]  The claims arose, according to Mattel, as a result of acts Bryant took during his employment with Mattel prior to the time his employment with Mattel ended in October 2000. *Id.* at ¶ 9 (noting that Bryant was a Mattel employee until October 2000); ¶ 12 (claiming wrongdoing occurred while Bryant was an employee of Mattel); ¶ 17 (Bryant breached contract because he assisted a competitor during his employment with Mattel); ¶ 22 (breach of fiduciary duty due to actions taken while employed by Mattel); ¶ 30 (same re breach of duty of loyalty); ¶ 36 (referencing conduct while employed at Mattel re unjust enrichment); ¶ 41 (conversion claim based on assignment of ownership during the time of his exclusive employment with Mattel).

Mattel did not sue MGA or Larian at that time.  This is despite the fact that, as of the filing of the Bryant complaint, Mattel knew of MGA's involvement with Bratz and its relationship with Bryant.  In fact, Mattel had collected facts and evidence that Mattel continues to assert establishes the MGA Parties' complicity in the actions of Bryant. *E.g.* TX 26701-A (8/21/2001 Turetzky memo re MGA, Larian), TX 1195RS (3/15/2002 Investigation Log re MGA, Larian), TX 15-1

---

[2] Unless indicated, all references to Dkt. No. are to the Case No. 04-cv-9059 docket.

(Bryant's MGA contract).  For example, Paragraph 12 of the Bryant complaint states, "In late November 2003, Mattel learned that Bryant secretly aided, assisted and worked for a Mattel competitor, including without limitation by entering into an agreement with the competitor, during the time Bryant was employed by Mattel . . . ."  Dkt. No. 1 ¶ 12.  The "Mattel competitor" referenced is MGA.  Moreover, the agreement referenced has to be the agreement between MGA and Bryant—the agreement that Larian signed.  TX 15-1.  Mattel was necessarily aware of the role of the "Mattel competitor," i.e., MGA and Larian, because each of the stated causes of action depended on Bryant's actions with regard to the "Mattel competitor."  Importantly, the breach of contract action alleged that "Bryant materially breached the foregoing contracts with Mattel . . . [because] he secretly aided, assisted and worked for a Mattel competitor . . . ."  Dkt. No. 1 ¶ 18.

## IV.   MGA INTERVENES IN THE CARTER BRYANT CASE ON DECEMBER 7, 2004

On December 7, 2004, MGA intervened in the Bryant complaint action for procedural reasons.  Dkt. No. 37.  At the time of this intervention, Mattel did not level any claims against MGA or Larian.  Indeed, none of the claims alleged in the Bryant complaint were legally cognizable against MGA (with the possible exception of Mattel's conversion and unjust enrichment claims).  For example, MGA could not have breached a contract with Mattel, as it did not have one.

## V.   MGA FILES SUIT AGAINST MATTEL ON APRIL 12, 2005

On April 12, 2005, MGA filed suit against Mattel.  Case No. 05-cv-2727 Dkt. No. 1.  MGA alleged trade dress and unfair competition claims, claiming that Mattel serially copied MGA's product lines.  MGA's unfair competition claims alleged acts ranging from pressuring retailers to influencing otherwise independent industry organizations.  *Id.* at ¶¶ 74-100.  Mattel answered these claims without asserting any claims of its own against MGA or Larian.

## VI. MATTEL SEEKS LEAVE TO AMEND ON NOVEMBER 20, 2006, TO ADD CLAIMS AGAINST MGA, MGA HK AND LARIAN

It was not until November 20, 2006, that Mattel moved to amend the Bryant complaint; i.e., the complaint filed on April 27, 2004, in Case No. 2:04-cv-9059, to assert claims against MGA and Larian.  Dkt. No. 89.  The complaint Mattel sought to file—which the Court allowed Mattel to file as counterclaims—added entirely new claims against entirely new defendants.  Dkt. No. 142 (Order Denying Leave to Amend Complaint and Ordering the Filing of Counterclaims); Dkt. No. 143 (Amend Answer and Counterclaims ("AAC")).

Mattel added a copyright infringement claim against previously unnamed defendants MGA, MGA HK and Larian.  Dkt. No. 143, ¶¶ 82-87.  Mattel added a RICO claim as to previously unnamed defendants MGA, MGA HK, MGA Mexico and Larian.  *Id.* at ¶¶ 88-105.  Mattel added a trade secret misappropriation claim against previously unnamed defendants MGA, MGA Mexico and Larian.  *Id.* at ¶¶ 106-115.  Mattel added an intentional interference with contract, aiding and abetting breach of fiduciary duty claim and an aiding and abetting breach of duty of loyalty claim against previously unnamed MGA and Larian.  *Id.* at ¶¶ 122-128, 136-141, 149-154.  Mattel added a conversion claim against previously unnamed MGA, MGA HK, MGA Mexico and Larian.  *Id.* at ¶¶ 155-162.  And Mattel added an unfair competition claim against previously unnamed MGA, MGA HK, MGA Mexico and Larian.  *Id.* at ¶¶ 163-166.

The Court denied Mattel's request for leave to amend the Bryant complaint. It started its analysis by finding that Mattel delayed bringing these additional claims without justification.  Mattel offered two excuses for delay.  First, it claimed that it had insufficient evidence.  Second, it claimed that a stay prevented its amendment. The Court rejected both arguments.  Dkt. No. 142 at 7-8.  The Court found that Mattel's claim that it lacked evidence was not "well-founded."  *Id.* at 8 (noting that the Court cannot "fathom" that it took three or four years for facts to materialize).

MGA PARTIES' MOTION FOR JUDGMENT RE INTENTIONAL
INTERFERENCE AND UNFAIR COMPETITION
CV-04-9049 DOC (RNBx)

1  It rejected the stay argument as without merit.  *Id.*  The only reason the Court did

2  not deny Mattel leave to amend on the grounds of delay alone is that it believed

3  case law required a showing of prejudice.  *Id.* at 8-9.  Still, the Court denied

4  Mattel's motion on the merits.

5          The Court found that leave to amend could not be granted because the claims

6  asserted in the proposed amendments were not sufficiently related to the allegations

7  pled in the Bryant complaint, thereby justifying the denial of leave to amend on the

8  basis of judicial economy.  *Id.* at 16-22.  The Court made a series of findings in this

9  regard.  First, the Court noted that "[t]he proposed amendments would radically

10  alter the litigation in that case to include far ranging disputes involving multiple

11  parties and concerning events not connected with the BRATZ ownership."  *Id.* at

12  18.  Second, the Court found that Mattel's amendments "do not add substance to

13  the claims in its original complaint."  *Id.* at 19.  Indeed, as the Court found, the

14  claims ranged far beyond those alleged in the original complaint.  In the Court's

15  words, the proposed amendments "would expand the universe of claims and

16  defendants stretching well-beyond the questions raised in the original complaint

17  over whether Bryant's conduct while in the employ of Mattel subjected his later

18  attributed creation of BRATZ dolls to the provisions in Mattel's Inventions

19  Agreement or otherwise rendered his creation subject to an infringement action."

20  *Id.* at 19 ("Nowhere does Mattel seek to reconcile the breadth of its present

21  amendments with the narrowness of the allegations contained in its original

22  complaint.").  Finally, having so found, the Court denied Mattel's leave to amend

23  the Bryant complaint.  It did so because, as the Court noted, "equally important in

24  determining whether to grant such leave is what impact such amendments would

25  have on the court's ability to manage the case."  *Id.* at 19.  And given the burden

26  imposed on the Court, the Court concluded that denial of leave to amend was

27  justified.  "In light of the burden allowing Mattel's amendment to proceed would

28  have on this Court's ability to efficiently manage these consolidated matters *denial*

MGA PARTIES' MOTION FOR JUDGMENT RE INTENTIONAL
INTERFERENCE AND UNFAIR COMPETITION
CV-04-9049 DOC (RNBX)

1    *of Mattel's request to amend its complaint in the 04-9059 matter is justified.*"  *Id.* at

2    21-22 (citing to *Perrian v. O'Grady,* 958 F.2d 192, 195 (7th Cir. 1992)) (emphasis

3    added).

4         Having denied leave to amend, the Court then ordered Mattel to file the

5    proposed amendment as counterclaims to MGA's Complaint.  In so ruling, the

6    Court did *not* rule that the claims related back.  The Court noted that it "would

7    appear" that the statute of limitations would not be affected.  *Id.* at 22.

8    **VII.   THE JURY FINDS MATTEL KNEW OR SHOULD HAVE KNOWN
          ABOUT ITS CLAIMS AGAINST MGA AND LARIAN BY APRIL 27,**

9    **2002**

10        The claims of both MGA and Mattel were tried to a jury starting in January

11   2011.  The jury was charged on Mattel's claim of intentional interference with

12   contract, among other claims, on April 11, 2011.  After eight days of deliberation,

13   the jury returned a verdict in favor of MGA on the intentional interference claim

14   with respect to the contracts of Cabrera, Morales and Salazar.  Dkt. No. 10518

15   (Verdict Form) at 27.  The jury found in favor of Mattel with respect to Mattel's

16   contract with Bryant with respect to both MGA and Larian.  *Id.*  On this claim, the

17   jury awarded Mattel the nominal sum of $10,000 ($5,000 against MGA and Larian

18   each).  *Id.* at 28.  Importantly, the jury also found that Mattel knew or should have

19   known about the alleged interference with contract on or before April 27, 2002.  *Id.*

20                                  **ARGUMENT**

21        Federal Rule of Civil Procedure 50(b) provides that a party may renew a

22   motion for judgment as a matter of law after a jury verdict.  In response, under

23   Rule 50(b)(3), the judge may direct the entry of judgment as a matter of law.

24   Federal Rule of Civil Procedure 50(a) governs motions for judgment as a matter of

25   law and provides that "[i]f a party has been fully heard on an issue during a jury

26   trial and the court finds that a reasonable jury would not have a legally sufficient

27   evidentiary basis to find for the party on that issue, the court may (A) resolve the

28   issue against the party; and (B) grant a motion for judgment as a matter of law on a

MGA PARTIES' MOTION FOR JUDGMENT RE INTENTIONAL
INTERFERENCE AND UNFAIR COMPETITION
CV-04-9049 DOC (RNBx)

1   claim or defense that, under the controlling law, can be maintained or defeated only
2   with a favorable finding on that issue."  "Judgment as a matter of law is appropriate
3   when the evidence presented at trial permits only one reasonable conclusion.  That
4   is, a motion for judgment as a matter of law is properly granted only if no
5   reasonable juror could find in the non-moving party's favor." *Mangum v. Action*
6   *Collection Serv., Inc.*, 575 F.3d 935, 938-39 (9th Cir. 2009) (affirming JMOL for
7   defendants).

8        Stated differently, a court should "grant a JMOL motion when there is a
9   'complete absence of probative facts to support the conclusion reached so that no
10  reasonable juror could have found for the nonmoving party.'" *Applied Med. Res.*
11  *Corp. v. United States Surgical Corp.*, 2008 WL 1901935, at *1 (C.D. Cal. Apr. 29,
12  2008) (quoting *Eich v. Bd. of Regents for Cent. Mo. State Univ.*, 350 F.3d 752, 761
13  (8th Cir. 2003)); *see also Torres v. City of Los Angeles*, 548 F.3d 1197, 1205-06
14  (9th Cir. 2008) (affirming granting of JMOL); *Am. Prof'l Testing Serv., Inc. v.*
15  *Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*, 108 F.3d 1147, 1155 (9th
16  Cir. 1997) (affirming JMOL); *Crowe v. Wiltel Commc'n Sys.*, 103 F.3d 897, 899
17  (9th Cir. 1996) (affirming granting of JMOL where plaintiff failed to prove element
18  of claim). Moreover, "a reasonable inference cannot be supported by only
19  threadbare conclusory statements instead of significant probative evidence . . . a
20  mere scintilla is not enough to sustain a verdict for the prevailing party." *Lakeside-*
21  *Scott v. Multnomah County*, 556 F.3d 797, 802 (9th Cir. 2009).

22        Rule 50(a)(1) also makes clear that the Court's power extends to resolving
23  "issues," not just claims or defenses. Fed. R. Civ. P. 50(a)(1) ("the court may . . .
24  resolve the issue against the party"); *see also Torres*, 548 F.3d at 1210-12 (JMOL
25  granted on qualified immunity issue for one officer, but qualified immunity of other
26  defendants left for jury).

27
28

### I.   MATTEL'S INTERFERENCE WITH CONTRACTUAL RELATIONS CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS

The Court held in its order on summary judgment that Mattel's Carter Bryant interference claim was superseded by the California Uniform Trade Secrets Act to the extent it is based on the alleged inducement of misappropriation of "Mattel trade secrets and other proprietary information."  Dkt. No. 9600 at 82-83.  The interference claim survived only "to the extent it arises out of conduct unrelated to the misappropriation of Mattel's information." *Id.* at 83.  In the case of Bryant, the surviving allegations include the possible inducement of his failure to "communicate . . . as promptly and fully as practicable all inventions," and his work with MGA in September and October 2000. *Id.* at 84.

The evidence at trial demonstrates that Mattel's claim that MGA and Larian interfered with Carter Bryant's contractual relationship with Mattel is barred by the statute of limitations.  A claim for interference with contract is subject to the two-year statute of limitations found in California Code of Civil Procedure section 339(1). *See id.* at 93-94 ("Mattel's state law counter-claims grounded in tort, including its counter-claims for … intentional interference with contractual relations must have been brought within two years of the alleged wrongdoing.  Cal. Code Civ. Proc. § 339(1)."); *accord Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000) (*quoting Richardson v. Allstate Ins. Co.*, 117 Cal. App. 3d 8, 11-12 (1981)).[3]

---

[3] This Court previously found that the discovery rule does not apply to claims for intentional interference. *See* Dkt. No. 3902 (June 2, 2008, Further and Final Order Re Statute of Limitations Defense) at 3 (noting that because the claim for intentional interference with contractual relations is not subject to the discovery rule, "the conclusions drawn by the Court regarding the possible accrual dates for the remaining state-law claims do not apply to" this claim).  MGA and Larian believe this is a correct interpretation of the law.  A claim for intentional interference generally accrues at the time of the defendant's wrongful act of inducement, but "the accrual date could not be later than the actual breach of the contract by the party who was wrongfully induced to breach." *Forcier*, 123 F. Supp. 2d at 530 (*quoting Trembath v. Digardi*, 43 Cal. App. 3d 834, 836 (1974)).  By definition, any such conduct by MGA and Larian occurred more than six years before Mattel's claim was asserted in November 2006.  MGA and Larian do not

A.  **Mattel Knew the Generic Elements of Its Intentional Interference Claim Before November 20, 2004**

While MGA and Larian do not concede that the discovery rule applies to the intentional interference claim, even if the Court applies this rule, the evidence fully supports the jury's decision that Mattel knew or should have discovered that it had such a claim before November 20, 2004.  Under the discovery rule, the statute of limitations begins to run when a party "'has reason at least to suspect a factual basis" of what California courts term the "generic elements" of a claim.  *Cypress Semiconductor Corp. v. Superior Court*, 163 Cal. App. 4th 575, 586 (2008) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005)).  The generic elements are not the legal elements of any particular or specific claim; *e.g.*, Mattel need not suspect facts that support the legal elements of an intentional interference claim.  Rather the generic elements are: wrongdoing, causation and harm.  *Cypress Semiconductor Corp.*, 163 Cal. App. 4th at 586 (citing *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)).

Under this rule, "'suspicion of one or more [of the generic] elements of a cause of action coupled with knowledge of any remaining elements will generally trigger the statute of limitations.'"  *Id.* (quoting *Fox*, 35 Cal. 4th at 807).  In applying this standard, "wrongdoing," "causation" and "harm" are not to be defined in some hypertechnical sense.  *Id.*; *see also Fox*, 35 Cal. 4th at 807; *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103 , 1110 n.7 (1988) ("wrong," "wrongdoing," and "wrongful" are used in their lay understanding).  Instead, "'[r]ather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them.'"  *Cypress Semiconductor Corp.*, 163 Cal. App. 4th at 586 (quoting *Fox*, 35 Cal. 4th at 807).

waive this argument, but, for the purposes of this motion, apply the discovery rule to establish that the statute of limitations on the intentional interference claim definitively has run under all scenarios.

MGA PARTIES' MOTION FOR JUDGMENT RE INTENTIONAL
INTERFERENCE AND UNFAIR COMPETITION
CV-04-9049 DOC (RNBx)

1    There are two additional overlays.  First, the statute of limitations begins to

2    run even if a plaintiff is "not . . . aware of the specific facts necessary to establish

3    the claim . . . ." *Jolly*, 44 Cal. 3d at 1111.  Second, once a "potential plaintiff . . .

4    suspects that an injury has been wrongfully caused [that plaintiff] must conduct a

5    reasonable investigation of all potential causes of that injury." *Fox*, 35 Cal. 4th at

6    808.  And whether or not an investigation is conducted, the plaintiff is charged with

7    knowledge of those facts that a reasonable investigation would have revealed.

8    *Miller v. Bechtel Corp.*, 33 Cal. 3d 868, 875 (1983); *see also* Cal. Civ. Code

9    § 3426.6 (statute of limitations begins to run when "by the exercise of reasonable

10   diligence," the theft "should have been discovered").

### B.   The Evidence Supports the Jury's Decision That Mattel Discovered, or Should Have Discovered, Intentional Interference With Bryant's Contract Before November 20, 2004

13   The jury's determination that Mattel discovered, or should have discovered it

14   had a claim for intentional interference related to Bryant by April 27, 2002, April

15   13, 2003, November 23, 2003 or November 20, 2004, supports granting judgment

16   to MGA and Larian on the Carter Bryant-related interference claim.  Dkt. No.

17   10518, Question 23.  The jury's determinations are fully supported by the record.

18   Testimony by several witnesses establishes Mattel's knowledge of the

19   generic elements of its intentional interference claim before it first asserted its claim

20   in November 2006.  Robert Eckert, Ivy Ross, Jill Nordquist, Rich de Anda,

21   Adrienne Fontanella, Lilly Martinez, Mateo Romano, Matthew Turetzky, Michelle

22   McShane and Michael Moore all testified to facts supporting Mattel's knowledge

23   that it had been harmed (Mattel was losing sales to Bratz) and that the harm was

24   caused by MGA and Larian.  *See* Statement of Facts, Section II, above.  The

25   testimony of these witnesses establishes that Mattel had this knowledge by April

26   27, 2002, April 13, 2003, November 23, 2003 or November 20, 2004.  With regard

27   to the third generic element—wrongdoing—Mattel employees knew Bryant created

28   Bratz and that he was working with MGA.  *See* Statement of Facts, Section II,

1   above.  Mattel easily could have, and should have, discovered that Bryant began

2   working with MGA before resigning from Mattel.  Indeed, by November 23, 2003,

3   Mattel had Bryant's contract with MGA that was signed by Larian.  3/9/2011 (Vol.

4   2) Tr. 75:8-12 (De Anda testimony).

5       The jury also saw documents demonstrating that Mattel knew these generic

6   elements of wrongdoing, harm and causation well before the statute of limitations

7   had expired.  TX 25858 (Mattel declined to distribute Bratz "because some

8   products are very similar to our own concepts and this is a very sensitive issue with

9   the brand groups (Bratz and Samantha)."); TX 9502-00010; TX 9504-0012 (both

10  describe Bratz as "'Diva Starz' with a smarty attitude."); TX 26701 (8/21/2001

11  Turetzky report to Bossick on MGA, MGA HK and Larian); TX 9442 at 502, 503,

12  504 (new security measures in response to similar products at MGA); TX 36091-

13  0033 ("After Mr. Bryant left, the design studio suspected that Mr. Bryant may have

14  had a conflict of interest while he was working at Mattel."); TX 8154 (2/20/2002

15  Franke fax to McShane); TX 17252 (2/7/02 Cease and Desist Letter); TX 4507

16  (email summarizing 3/2 post regarding Bryant and Bratz on public website); TX

17  1195RS (3/15/2002 investigative file); TX 1194 (8/5/2002 anonymous letter); TX

18  9441; TX 1C (7/18/2003 *The Wall Street Journal* article); TX 6678 (9/9/2003

19  investigative file).

20      Mattel also cannot escape the fact that it instituted official investigations in

21  March 2002 and again in September 2003—both well before November 20, 2004.

22  TX 1195RS; TX 6678.  Notably, by September 2003, Mattel was in contact with an

23  attorney in Hong Kong who specifically identified Bryant as the designer of Bratz.

24  TX 15987.

25      All of this evidence supports the jury's determination that Mattel knew or

26  should have known that it had a claim for intentional interference related to Bryant

27  as early as April 27, 2002, and no later than November 20, 2004.  Based on the

28  jury's determinations, fully supported by the record, MGA and Larian are entitled

MGA PARTIES' MOTION FOR JUDGMENT RE INTENTIONAL
INTERFERENCE AND UNFAIR COMPETITION
CV-04-9049 DOC (RNBX)

to judgment as a matter of law on Mattel's intentional interference claim related to Bryant.

## II.   MATTEL'S UNFAIR COMPETITION CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS

### A.   Mattel's Unfair Competition Claim Relating to Carter Bryant Expired by October 2004

In light of the jury verdict, Mattel has informed the Court that "Mattel is not seeking further relief under the UCL . . . ." Dkt. No. 10532 at 1. Presumably, this is because, based upon the jury's findings, Mattel's unfair competition claim is barred by the statute of limitations.

The statute of limitations for a claim for unfair competition is four years. Cal. Bus. & Prof. Code § 17208; *Karl Storz Endoscopy-America, Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002); *see also* Dkt. No. 9600 at 93; Dkt. No. 10532 at 11 (admitting that "Under Cal. Bus. & Prof. Code § 17208, '[a]ny action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued.'").

With trade secret and copyright preemption, the scope of Mattel's unfair competition claim is limited to its allegations that MGA induced Mattel employees to work for MGA while remaining Mattel employees. Dkt. No. 9600 at 91. This overlaps with the intentional interference claims tried to the jury relating to Bryant, Cabrera, Morales and Salazar. Importantly, the jury found MGA and Larian liable only for interference with Mattel's contract with Carter Bryant and not for any alleged interference with the contracts of Cabrera, Morales and Salazar. Dkt. No. 10518 (Verdict Form) at 27. Those findings are controlling on the Court for purposes of Mattel's § 17200 claim. *Los Angeles Police Protective League v. Gates,* 995 F.2d 1469, 1473 (9th Cir. 1993); *Floyd v. Laws,* 929 F.2d 1390, 1397 (9th Cir. 1991); *Miller v. Fairchild Indus.,* 885 F.2d 498, 507 (9th Cir. 1989); *see also EchoStar Satellite Corp. v. NDS Group PLC,* 2008 WL 4596644, at *4 (C.D. Cal. Oct. 15, 2008) (finding same in context of § 17200); *see also* Dkt. No. 10532

MGA PARTIES' MOTION FOR JUDGMENT RE INTENTIONAL INTERFERENCE AND UNFAIR COMPETITION
CV-04-9049 DOC (RNBx)

1  *passim* (admitting that "the Court is bound by the jury's findings").  Accordingly,
2  only the facts relating to Bryant are relevant for statute of limitations purposes.

3       Bryant's contractual and employment relationship ended with Mattel on
4  October 19, 2000.  Thus, the latest date upon which Mattel could have filed its
5  unfair competition claim would be four years after that relationship ended—
6  October 19, 2004.  However, Mattel did not even seek to file its unfair competition
7  claim until November 2006, more than two years after the statute of limitations had
8  run.  Thus, Mattel's unfair competition claim is barred by the statute of limitations.
9  *See* Dkt. No. 10532 at 19 (admitting that with respect to the statute of limitations on
10  its unfair competition claim "the Court is bound by the jury's findings").

11      **B.**    **The Discovery Rule Does Not Apply to Unfair Competition Claims**

12       Any argument by Mattel that the statute of limitations for its unfair
13  competition claim was tolled because Mattel did not "discover" the facts relating to
14  this claim until a later date must be rejected.  The statute of limitations for unfair
15  competition begins to run on the date on which the cause of action accrued, and not
16  on the date of discovery.  Cal. Bus. & Prof. Code § 17208 ("Any action to enforce
17  any cause of action pursuant to this chapter shall be commenced within four years
18  *after the cause of action accrued*.") (emphasis added); *Karl Storz*, 285 F.3d at 857;
19  *Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1164, 1184 n.17 (C.D. Cal.
20  2005); *Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson*,
21  96 Cal. App. 4th 884, 891 (2001).[4]  Accordingly, the discovery rule cannot save

22

23  ───────────────
[4] There is conflicting California Court of Appeals authority on the issue of whether
the "discovery rule" applies.  *Compare Broberg v. The Guardian Life Ins. Co. of*
24  *Am.*, 171 Cal. App. 4th 912, 920 (2009) (holding the discovery rule applies to
fraudulent unfair competition claims) *and Massachusetts Mutual Life Ins. Co. v.*
25  *Superior Court*, 97 Cal. App. 4th 1282, 1295 (2002) (stating the statute of
limitations under section 17208 would "probably" be subject to the discovery rule)
26  *with Aryeh v. Canon Bus. Solutions*, 185 Cal. App. 4th 1159, 1165-1166 (2010)
27  (holding that a claim for unfair competition "accrues when the defendant's conduct
occurs, not when the plaintiff learns about the conduct") *and Snapp & Assocs. Ins.*
28

MGA PARTIES' MOTION FOR JUDGMENT RE INTENTIONAL
INTERFERENCE AND UNFAIR COMPETITION
CV-04-9049 DOC (RNBx)

1  Mattel's unfair competition claim.

2  **III.    THE RELATION BACK DOCTRINE DOES NOT SAVE MATTEL'S
   CLAIM FOR INTENTIONAL INTERFERENCE OR UNFAIR
3      COMPETITION**

4        Mattel cannot rely on the relation back doctrine to save its intentional

5  interference or unfair competition claim.  MGA's position why the relation back

6  doctrine does not apply to allow Mattel to relate back to the April 27, 2004 Carter

7  Bryant complaint or MGA's April 12, 2005 complaint is set forth in its summary

8  judgment papers, Dkt. Nos. 9010 and 9121, and the MGA Parties' brief filed on

9  March 10, 2011, in response to the Court's February 16, 2011 Order, Dkt. No.

10  10179.  None of the evidence admitted during this trial has undermined MGA's

11  argument because the procedural facts remain the same.  As explained below,

12  Mattel's claims do not relate back to either its original complaint against Carter

13  Bryant or MGA's complaint against Mattel.  Thus, the relation back doctrine does

14  not save Mattel's untimely intentional interference and unfair competition claims.

15    **A.    The Claims Cannot Relate Back to the Bryant Complaint**

16        **1.    The Court Has Recognized That Mattel's Claims Against
           MGA and Larian Cannot Relate Back to the Action Against
17          Bryant**

18        In the Court's Order dated February 16, 2011, the Court recognized that a

19  pleading cannot relate back to a pleading in a different action.  Dkt. No. 9898

20  (citing *Bailey v. Northern Ind. Pub. Serv. Co.*, 910 F.2d 406, 413 (7th Cir. 1990)).

21  This case law applies to Mattel's intentional interference and unfair competition

22  claims against MGA and Larian.  In its order, the Court denied Mattel's motion to

23  amend the Bryant complaint to add claims against MGA and Larian.  Mattel's

24  ─────────────────────────────────────

25  *Servs., Inc. v. Malcolm Bruce Burlingame Robertson*, 96 Cal. App. 4th 884, 891
   (2001).  The Ninth Circuit has found the discovery rule inapplicable.  *Karl Storz*,
26  285 F.3d at 857.  This Court is required to follow the Ninth Circuit's interpretation.
   *Perez v. Nidek Co.*, 657 F. Supp. 2d 1156, 1166 (S.D. Cal. 2009) (citing *Jones-
27  Hamilton Co. v. Beazer Materials & Services, Inc.*, 973 F.2d 688, 696 n. 4 (9th Cir.
   1992), *Endres v. Wells Fargo Bank*, 2008 WL 344204 (N.D. Cal. Feb. 6, 2008)).
28

MGA PARTIES' MOTION FOR JUDGMENT RE INTENTIONAL
INTERFERENCE AND UNFAIR COMPETITION
CV-04-9049 DOC (RNBx)

1  claims against MGA and Larian were then filed as counterclaims to MGA's April

2  13, 2005 complaint against Mattel—a separate and different action than Mattel's

3  case against Bryant.  Mattel cannot rely on its complaint against Bryant to save its

4  intentional interference and unfair competition claims against MGA and Larian.

5  **2.    Mattel's Failure to Name MGA and Larian as Defendants in
the Bryant Action Was Not the Result of a Mistake**

6

7  Even if the Court analyzes the Bryant complaint as a possible vehicle for

8  relating back to Mattel's claims, it cannot save Mattel's intentional interference or

9  unfair competition claims.  The evidence establishes that the statute of limitations

10  on Mattel's intentional interference and unfair competition claims had expired by

11  the time that Mattel filed its motion to amend on November 20, 2006.  Thus, the

12  only means by which Mattel could seek to amend its complaint was Fed. R. Civ. P.

13  15(c)(1)(C).  *G.F. Co. v. Pan Ocean Shipping Co.*, 23 F.3d 1498 , 1501 (9th Cir.

14  1994) (Rule 15(c)(1)(C) "'is the only vehicle through which a plaintiff may amend

15  his complaint, after a statute of limitation period has run,'" to name a new

16  defendant) (*quoting Korn v. Royal Caribbean Cruise Line, Inc.*, 724 F.2d 1397,

17  1399 (9th Cir. 1984)); *Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 856 (9th Cir.

18  1986) ("Because the statute of limitations period expired prior to [plaintiff's] filing

19  of the amended complaint, [Rule 15(c)] is the only procedural avenue by which

20  [plaintiff's] original complaint may be amended to add additional parties.")

21  (emphasis added); *Wilson v. United States*, 23 F.3d 559, 562 (1st Cir. 1994)

22  ("When a plaintiff amends a complaint to add a defendant, but the plaintiff does so

23  subsequent to the running of the relevant statute of limitations, then Rule

24  [15(c)(1)(C)] controls whether the amended complaint may 'relate back' to the

25  filing of the original complaint and thereby escape a timeliness objection."); *see

26  also Garrett v. Fleming*, 362 F.3d 692, 696-97 (10th Cir. 2004) (plaintiff's

27  "substitution of named defendants for the original unknown 'John Doe' defendants

28  amounted to adding a new party" such that "all requirements of [Rule 15(c)(1)(C)]

1   must be met in order for [the plaintiff's] amended pleadings to relate back to the

2   date of the original."); *Powers v. Graff*, 148 F.3d 1223, 1225-26 (11th Cir. 1998)

3   (*quoting Garrett*, 362 F.3d 692, and affirming district court's finding that Rule

4   15(c)(1)(C) was not met where plaintiffs knew the identity of the proposed new

5   defendants before the statute of limitations expired and should have known they

6   would be "persons arguably liable for the alleged wrongdoing."); *Barrow v.*

7   *Wethersfield Police Dep't*, 66 F.3d 466, 468-69 (2d Cir. 1995) (Rule 15(c)(1)(C) is

8   the only means by which a plaintiff can replace a "John Doe" with a named party);

9   *Worthington v. Wilson*, 8 F.3d 1253 (7th Cir. 1993) (no relation back under

10  Rule 15(c)(1)(C) where proposed new defendants were unknown to plaintiff when

11  original complaint was filed).

12      Under Rule 15(c)(1)(C), the inquiry is whether the failure to name MGA and

13  Larian was the result of a mistake as to their identity; *e.g.*, Mattel sued one party

14  believing that that party was the properly named defendant.  Fed. R. Civ. P. Rule

15  15(c)(1)(C); *see also Krupski v. Costa Crociere S.p.A.*, 130 S. Ct. 2485 (2010)

16  (plaintiff mistakenly sued Costa Cruise instead of the Italian-related corporate

17  entity Costa Crociere).

18      Here, that cannot be shown.  Mattel has never claimed that its failure to plead

19  claims against MGA and Larian was due to a mistake of identity.  Indeed, the Court

20  has already rejected any such claim by Mattel that it did not know the facts that

21  each of the later-added MGA Parties played a role in its injury.  *See* Dkt. No. 142 at

22  8.  Moreover, a decision to sue only certain defendants and not others would not

23  entitle Mattel to avail itself of Rule 15(c)(1)(C).  *Nelson v. Adams USA, Inc.*, 529

24  U.S. 460, 467 & n.1 (2000); *Louisiana-Pac. Corp. v. ASARCO, Inc.*, 5 F.3d 431

25  (9th Cir. 1993); *see also* 6A WRIGHT, MILLER & KANE, Federal Practice and

26  Procedure § 1498.3 ("tactical decisions by plaintiffs as to whom to sue do not

27  constitute mistakes at all for purposes of the rule"); *Shea v. Esensten*, 208 F.3d 712

28  (8th Cir. 2000).

MGA Parties' Motion for Judgment re Intentional
Interference and Unfair Competition
CV-04-9049 DOC (RNBx)

1    The overwhelming evidence demonstrates that Mattel knew that it had an

2  intentional interference claim related to Bryant and an unfair competition claim

3  against MGA and Larian well before it filed its original complaint against Bryant

4  on April 27, 2004.  Indeed, Mattel's complaint against Bryant identifies MGA and

5  Larian, even if not by name.  Dkt. No. 1, ¶¶ 12, 41-42.

6    By the time of the Bryant complaint, Mattel had obtained a copy of the

7  contract between MGA and Bryant, dated "as of September 18, 2000," which

8  assigned Bryant's work product to MGA.  1/18/2011 (Vol. 1) Tr. 49:20-51:13

9  (Mattel's Opening Statement); *see also* TX 15. The contract was signed by Larian

10  on behalf of MGA, and Bryant was still employed by Mattel on the "as of" date.

11  TX 15.  Mattel also obtained copies of Bryant's drawings in November 2003.

12  3/9/2011 (Vol. 2) Tr. 75:8-12 (De Anda testimony).  Consequently, when it filed

13  the Bryant state court complaint, Mattel knew that Bryant had assigned his

14  intellectual property to MGA, that Larian had effectuated that assignment on behalf

15  of MGA and Mattel could easily have named MGA and Larian as defendants who

16  "acting with full knowledge of Bryant's obligations to Mattel, aided and abetted

17  Bryant in such wrongful conduct" (Dkt. No. 1 ¶¶ 24, 32), or "unfairly used and

18  diverted Mattel property" (*id.* at ¶ 36), or "wrongfully converted Mattel property,"

19  including "ideas, concepts, rights, designs, proprietary information, and other

20  intellectual property and intangible property created by Bryant" (*id.* at ¶¶ 41, 42).

21    Given all of this knowledge, Mattel is not entitled to apply the relation back

22  doctrine to save its claims.  *See, e.g.*, *Nelson*, 529 U.S. at 467 n.1 (Rule 15(c) not

23  met where plaintiff "knew of [defendant's] role and existence and, until it moved to

24  amend its pleading, chose to assert its claim for costs and fees only against [the

25  named defendant].");  *Louisiana-Pac. Corp.*, 5 F.3d at 434 ) (no relation back where

26  plaintiff "knew perfectly well" the identity of the potential defendant and "[t]here

27  was no mistake of identity, but rather a conscious choice of whom to sue");

28  *Kilkenny*), 800 F.2d at 857-58 (Rule 15(c) was "never intended to assist a plaintiff

1   who ignores or fails to respond in a reasonable fashion to notice of a potential party,

2   nor was it intended to permit a plaintiff to engage in piecemeal litigation"); *Pierce*

3   *v. City of Chicago*, 2010 WL 4636676, at *4 (N.D. Ill. Nov. 8, 2010) (applying

4   *Krupski* and finding that failure to name an additional defendant was not due to a

5   mistake in identity); *Trigo v. TDCJ-CID Officials*, 2010 WL 3359481, at *18 (S.D.

6   Tex. Aug. 24, 2010) (applying *Krupski* and finding that failure to name an

7   additional defendant was not due to a mistake in identity); *Lauter v. Anoufrieva*,

8   2010 WL 3504745, at *24-25 (C.D. Cal. July 14, 2010) (applying *Krupski* and

9   finding that failure to name an additional defendant was not due to a mistake in

10  identity).

## B.   The Claims Cannot Relate Back to MGA's Complaint

### 1.   Mattel's Claims Would Still Be Barred by the Statute of Limitations

14       Mattel also cannot rely on the argument that its claims relate back to MGA's

15  April 13, 2005 complaint, as the claims are still barred by the statute of limitations.

16  With regard to Mattel's intentional interference claim, the jury found that Mattel

17  knew, or should have known, the facts necessary to assert the claim by April 27,

18  2002.  Dkt. No. 10518, Question 23.  Thus, even if the Court allows Mattel to relate

19  back to MGA's April 13, 2005 complaint, Mattel's intentional interference claim is

20  barred by the two-year statute of limitations.  *See* Section I, above.

21       Mattel also cannot rely on the argument that its unfair competition should

22  relate back to MGA's April 13, 2005 complaint.  In the first instance, the statute of

23  limitations had run in October 2004, more than six months prior to the filing of

24  MGA's complaint.  *See* Section II, above.  Thus, even if the Court allows Mattel to

25  relate back to MGA's April 13, 2005 complaint, Mattel's claim is barred by the

26  four-year statute of limitations.

### 2.   Mattel's Claims Are Not Compulsory Counterclaims

28  Furthermore, Mattel's intentional interference and unfair competition claims

1   are not compulsory claims to MGA's complaint.  Only claims that are compulsory

2   counterclaims relate back to the original pleading in the case in which they are

3   filed.  Permissive counterclaims do not.  Fed. R. Civ. P. 13(a); Fed. R. Civ. P.

4   15(c); *Employers Ins. of Wausau v. United States*, 764 F.2d 1572, 1586 (Fed. Cir.

5   1985).

6        As courts have recognized, the fact that there are multiple disputes between

7   two companies does not render the claims between the two compulsory.

8   *Conceptus, Inc. v. Hologic, Inc.*, 2010 WL 1460162, at *1 (N.D. Cal. Apr. 12,

9   2010); *Utilx Corp. v. Novimium, Inc.*, 2009 WL 3517576 (W.D. Wash. Oct. 27,

10  2009).  This is true even when the claims alleged concern the same type of

11  improper acts.  *Conceptus, Inc.*, 2010 WL 1460162, at *1.

12       In determining whether claims are compulsory, the Ninth Circuit asks

13  whether "the essential facts of the various claims are so logically connected that

14  considerations of judicial economy and fairness dictate that all of the issues be

15  resolved in one lawsuit." *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246,

16  1249 (9th Cir. 1987).  To state it otherwise, claims are compulsory when they share

17  a "logical relationship," meaning that "the counterclaim arises from the same

18  aggregate set of operative facts as the initial claim, in that the same operative facts

19  serve as a basis of both claims or the aggregate core of facts upon which the claim

20  rests activates additional legal rights . . . ." *In re Lazar*, 237 F.3d 967, 979 (9th Cir.

21  2001).  Here that test cannot be met.

22       MGA's complaint relates to events that occur from 2001 forward, *i.e.*, after

23  the release of Bratz in the marketplace.  MGA alleges that Mattel engaged in serial

24  copying of MGA's trade dress and other acts of unfair competition "to create

25  confusion in the marketplace, interfere with MGA's business . . . ."  05 Dkt. No. 1 ¶

26  72; *see also id.* at ¶¶ 74-97.  These allegations centered on My Scene or Wee 3

27  Friends or Little Mommy Potty Training Baby products, *id.* at ¶¶ 23, 34-40 (My

28  Scene Dolls); ¶¶ 41-46 (My Scene packaging); ¶¶ 48-50, 53, 60 (My Scene theme);

¶¶ 51 (My Scene commercials); ¶ 59 (My Scene pets); ¶ 68 (Wee 3 Friends); ¶ 69 (Little Mommy Potty Training Baby Doll); ¶ 70 (AcceleRacerS), as well as Mattel's attempts to force MGA out of the market by threatening retailers and those involved in the toy industry, *id.* at ¶¶ 9, 31-32, 74-100. These allegations all relate to Mattel's conduct in the marketplace and to conduct that happened in 2001 and beyond.

These MGA allegations are wholly unrelated to the facts and issues encompassed by Mattel's claim that MGA unfairly interfered with its contractual relationship with Carter Bryant, an employee. The conduct at issue in Mattel's intentional interference and unfair competition claim are, by definition, based upon Mattel's contractual relationship with Bryant that ended in 2000. Mattel's claim relating to MGA's hiring of a Mattel employee is unconnected from MGA's claims relating to Mattel's conduct in the marketplace.

None of the elements or facts necessary to support the elements for a trade dress claim or Mattel's conduct in the marketplace overlap with MGA's claims. MGA's trade dress claims relate to product and packaging designs, not employees or contractual relationships with employees. With regard to MGA's allegations regarding Mattel's inequitable conduct, the focus is entirely on Mattel, rather than anything done by MGA or Larian, which is the focus of Mattel's intentional interference and unfair competition. There is no logical relationship between MGA's claims against Mattel and Mattel's untimely intentional interference and unfair competition claims.

## IV.   CALIFORNIA'S DOE-DEFENDANT RULE DOES NOT SAVE MATTEL'S CLAIMS

California law does not permit the addition of new parties MGA and Larian as "doe" defendants where the initial failure to name them was not a mistake. Thus, even assuming *arguendo* that Mattel could relate back to a different action (which it cannot), Mattel cannot show that it was unaware of the identity of MGA or Larian

1    at the inception of its suit against Bryant.  Generally, under California law "a

2    complaint may not be amended to add a new defendant after the statute of

3    limitations has run."  *McGee St. Prods. v. Workers' Comp. Appeals Bd.*, 108 Cal.

4    App. 4th 717, 724, 25 (2003).  "The only exception to this rule is when the original

5    complaint states a cause of action against a Doe defendant and the plaintiff is

6    unaware of the true identity of that party at the inception of the suit."  *Id.*; Cal. Civ.

7    Proc. Code § 474 (pleading of doe defendants permissible when the plaintiff is

8    "ignorant of the name of a defendant.").  In determining whether plaintiff is

9    "ignorant of the name of the defendant," courts look at two things: (1) ignorance of

10   the identity of the defendant; and (2) ignorance of the facts giving rise to the cause

11   of action against defendant.  A plaintiff is (1) ignorant of the identity of the

12   defendant only if she lacks "actual knowledge" of the name of the defendant.

13   *Grinnell Fire Protection Sys. Co. v. Am. Sav. & Loan Ass'n*, 183 Cal. App. 3d 352 ,

14   359 (1986).  A plaintiff is (2) ignorant of the facts giving rise to the cause of action

15   against defendant if she knows the identity of the person but is ignorant of the facts

16   giving a cause of action against such person.

17        A plaintiff is not ignorant of the facts giving a cause of action where she

18   knows the identity and facts giving rise to liability when the complaint is filed.

19   *Scherer v. Mark*, 64 Cal. App. 3d 834, 840-41 (1976); *Dover v. Sadowinski*, 147

20   Cal. App. 3d 113 (1983) (no relation back where the plaintiff knew that the

21   proposed defendant was involved in the underlying controversy, even if he did not

22   know "how deeply" involved); *cf. Woo v. Superior Court*, 75 Cal. App. 4th 169,

23   180 (1999) (plaintiff cannot meet "good faith, bona fide ignorance as required"

24   where the information concerning the additional defendants is readily available to

25   the plaintiff). "The pivotal question in this regard is 'did plaintiff know facts?' not

26   'did plaintiff know or believe that she had a cause of action based on those facts?'"

27   *Scherer*, 64 Cal. App. 3d at 841 (emphasis original).

28        As noted by the Court in its January 11, 2007 Order, Mattel had sufficient

- 26 -

1   facts and was not operating under some mistake.  Dkt. No. 142 at 8.  The evidence

2   demonstrates that Mattel did know facts at the time of its April 2004 filing and

3   made no mistake as to whether MGA and Larian should be included as defendants

4   in its filing, but instead made a deliberate tactical choice in that regard.

5           The relevant scope of Mattel's knowledge is everything Mattel knew right up

6   until the time it filed its lawsuit in April 2004, as well as the facts that it learned

7   after it filed.  *See Powers*, 148 F.3d 1223 (11th Cir. 1998).  As described above, the

8   overwhelming evidence demonstrates that Mattel knew it had a claim against MGA

9   and Larian from the time that Bryant left Mattel in October 2000 up to (and

10  beyond) April 27, 2004 when Mattel filed suit against only Bryant.  Therefore,

11  Mattel cannot rely on the California Doe defendant rule to save its claims.

12  **V.    MGA IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON**
        **MATTEL'S INTENTIONAL INTERFERENCE CLAIM BASED**
13      **UPON MATTEL'S FAILURE OF PROOF**

14          **A.    Mattel Did Not Prove Any Harm Resulting From the Alleged**
                **Interference**
15

16          Mattel's intentional interference claim fails because Mattel has not

17  demonstrated any harm from the alleged interference.  Despite all of the attention

18  paid to Bryant's activities in September and October 2000, Mattel did not explain

19  what it expected of Bryant as a Mattel employee, before or after he gave notice, and

20  it did not present any evidence that would allow the jury to determine that Mattel

21  was harmed as a result of any alleged interference by MGA or Larian with Bryant's

22  contract with Mattel.  While Mattel's damages expert presented damage theories

23  and amounts to the jury relating to Bryant's conduct, that testimony was limited to

24  copyright infringement and trade secret misappropriation, and did not identify

25  damages specifically stemming from the alleged contractual breach.  *See* 3/8/2011

26  (Vol. 1) Tr. 79:2-130:19 (Wagner testimony); 3/8/2011 (Vol. 2) Tr. 5:3-74:14

27  (Wagner testimony); 3/9/2011 (Vol. 1) Tr. 6:16-94:4 (Wagner testimony).

28  Accordingly, the Court must grant judgment in favor of MGA and Larian for the

1    claim of intentional interference.

2    **B.    MGA's Conduct Was Permitted and Protected by California's**
         **Public Policy**
3

4          There is no evidence that Carter Bryant, MGA or Larian engaged in conduct

5    that creates tort liability while Bryant was still at Mattel.  The evidence is that

6    MGA engaged in arm's-length contract negotiations with Bryant for the purchase

7    and development of Bratz and entered into a licensing agreement with Bryant.  *See*,

8    *e.g.*, TX 15, 2207, 9258, 16788, 17236, 18463; 1/28/2011 (Vol. 3) Tr. 9:11-18

9    (Bryant hired Ann Wang to help him negotiate the contract with MGA); Tr. 67:23-

10   25 (MGA hired David Rosenbaum to draft the license agreement); 2/16/2011 (Vol.

11   1) Tr. 31:25-32:22 (As of Oct. 4, 2000, the parties were still negotiating and MGA

12   was prepared to walk away); 2/22/2001 (Vol. 2) Tr. 22:11-16, 78:16-81:7

13   (Rosenbaum negotiated the terms of the agreement with Wang).  Such conduct is

14   protected by California's strong public policy in support of employee mobility.

15         On the employee side, under Business and Professions Code section 16600,

16   an employee cannot be contractually restrained from future employment.  The

17   California Supreme Court has interpreted section 16600 in a literal sense and held

18   that section 16600 prohibits contractual provisions that purport to limit a former

19   employee's ability to compete with his or her former employee.  *Edwards v. Arthur*

20   *Anderson LLP*, 44 Cal. 4th 937, 946-947 (2008).  Mattel's interpretation of its

21   contracts makes it a breach for an employee to work on his or her own idea, as the

22   jury found, for future employment.  Enforcing this provision as Mattel is currently

23   proposing would put a restraint on Bryant's employment relationship with MGA in

24   a manner contrary to section 16600.  As such, the term is an unenforceable non-

25   compete provision.

26         On the employer side, MGA and Larian's negotiation of a contract with

27   Bryant, even while he was employed by Mattel, is protected under the privilege of

28   competition in California.  Under California law, "it is not ordinarily a tort to hire

the employees of another for use in the hirer's business." *Buxbon v. Smith,* 23 Cal. 2d 535, 547 (1944).  "[N]o actionable wrong is committed by a competitor who solicits his competitor's employees or who hires away one or more of his competitor's employees who are not under contract, so long as the inducement to leave is not accompanied by unlawful action." *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 255 (1968); *see Reeves v. Hanlon*, 33 Cal. 4th 1140, 1149-50 (2004). To the contrary, "absent a showing of unlawful purpose or means, [a competitor] is privileged and not liable for inducing … employees to leave and move to" the competitor. *Metro Traffic Control Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 853, 860 (1994).  The employer enjoys "immunity against liability" for such standard business behavior. *Diodes*, 260 Cal. App. 2d at 267; *see Reeves*, 33 Cal. 4th at 1149-50.  Mattel has presented no evidence that MGA or Larian engaged in any unlawful conduct in connection with its contract negotiations with Bryant. Accordingly, MGA and Larian must be granted judgment on Mattel's intentional interference claim with respect to Bryant.

### C.   Mattel's Evidence Will Not Support a Finding That MGA Intended to Cause a Breach of Bryant's Contract With Mattel or to Disrupt the Performance of the Contract.

To prove that MGA and Larian intended to interfere with Bryant's Inventions Agreement, Mattel must show that MGA and Larian knew that "the interference is certain or substantially certain to occur as a result of his action. The rule applies, in other words, to interference that is incidental to the actor's independent purpose and desire *but known to him to be a necessary consequence of his action.*" *Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist.*, 106 Cal. App. 4th 1219, 1239 (2003) (emphasis added).  It is axiomatic that under California law MGA could not form the intent to interfere because a third party must have sufficient knowledge of the details of the contract with which it is interfering to form the intent to harm the contractual relationship. *See Davis v. Nadrich*, 174 Cal. App. 4th 1, 10-11 (2009); *1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568, 586 (2003)).

1    In *Davis*, the appellate court upheld the granting of summary judgment for an

2    attorney who had referred cases to a partner in a dissolving law firm because he was

3    not sufficiently aware of the details and requirements of the partnership contract to

4    be liable for intentionally interfering with that contract.  *Id*. at 10-11.  The

5    defendant attorney was told by the partner that the partnership "was in dissolution,

6    but remained open to wind-up its existing cases" and that "he had begun his own

7    practice and was accepting cases apart from" the partnership.  *Id*.  While the

8    plaintiff argued that the defendant attorney "had no right to rely upon [the partner's]

9    statements that the [] partnership was dissolving" and "had a duty to investigate

10   further to ascertain if there was a partnership agreement," the appellate court

11   rejected those arguments, concluding that "assuming [defendant] had a duty to

12   investigate, [he] discharged that duty by talking to [the partner], the person who had

13   knowledge of the terms of the [] contract" and noting that the plaintiff "has

14   presented no facts that would have led [defendant] to disbelieve [the partner's]

15   statements."  *Id*. at 11.  The undisputed facts here show that Larian and MGA took

16   steps to verify that by contracting with Bryant for the ownership of Bratz, they

17   would not infringe any potential rights of Mattel, and thus the intent element cannot

18   be met.

19   Moreover, MGA and Larian did not know the specific requirements of

20   Bryant's agreement with Mattel; Bryant never provided a copy of his Mattel

21   agreement to MGA.  TX 2201; 2/22/2001 (Vol. 2) Tr. 102-03 (Rosenbaum

22   testimony) (Rosenbaum did not receive Bryant's agreement with Mattel).  Given

23   this evidence, MGA and Larian were far from "certain" that any interference with

24   Mattel's rights was likely to occur—indeed, the opposite is true.  Thus, MGA and

25   Larian's lack of intent to interfere with Bryant's contract with Mattel is established

26   as a matter of law.

27   Furthermore, it is settled that a defendant is not liable for intentional

28   interference with contract where the breaching party initiates contact with him.  *See*

1   Restatement (Second) of Torts § 766, comment *n*.[5]  *See also DeVoto v. Pacific*

2   *Fidelity Life Ins. Co.*, 618 F.2d 1340, 1348 (9th Cir. 1980) (noting that "where a

3   contract has been abrogated, competitors may thereafter offer to deal with the party

4   who repudiated the contract without incurring liability in tort: there is no act of

5   inducement, and once the contract is abrogated there is no advantage to

6   appropriate") (citing Restatement (Second) of Torts § 766, comment n); *Bauer v.*

7   *Interpublic Group of Companies, Inc.*, 255 F. Supp. 2d 1086, 1093, 1095 (N.D. Cal.

8   2003).  Mattel presented no evidence that MGA or Larian initiated its relationship

9   with Bryant.

10   **VI.   MATTEL'S RECOVERY AGAINST MGA AND LARIAN SHOULD**
     **BE EXTINGUISHED DUE TO CARTER BRYANT'S SETTLEMENT**
11   **PAYMENT TO MATTEL**

12          On the eve of the Phase 1 trial, Mattel settled its claims against Carter Bryant

13   for the sum of $2 million for copyright infringement, breach of contract, breach of

14   fiduciary duty, conversion, breach of duty of loyalty, violation of the RICO statute

15   and conspiracy to violate RICO.  TX 7520.  Bryant later paid Mattel $50,000

16   towards this settlement.  TX 23793.

17          While it is true that a breach of contract may rise to the level of tortious

18   conduct, Mattel is not entitled to double recovery of the same damages for both a

19   contract and tort theory based on the same facts and based on the same alleged

20   damages.  *Ambassador Hotel Co., Ltd. v. Wei-Chuan Investment*, 189 F.3d 1017,

21   1032 (9th Cir. 1999) (plaintiff "may not receive multiple awards for the same item

22   of damages."); *Tavaglione v. Billings*, 4 Cal. 4th 1150, 1158-59 (1993)

23   ("Regardless of the nature or number of legal theories advanced by the plaintiff, he

24   is not entitled to more than a single recovery for each distinct item of compensable

---

[5] "One does not induce another to commit a breach of contract with a third person under the rule stated in this Section when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person. .... For instance, B is under contract to sell certain goods to C. He offers to sell them to A, who knows of the contract. A accepts the offer and receives the goods. A has not induced the breach and is not subject to liability under the rule stated in this Section."

MGA PARTIES' MOTION FOR JUDGMENT RE INTENTIONAL
INTERFERENCE AND UNFAIR COMPETITION
CV-04-9049 DOC (RNBx)

1    damage supported by the evidence."); *Acadia, California, Ltd. v. Herbert*, 54 Cal.

2    2d 328, 337 (1960).  Given that Bryant paid Mattel $50,000, TX 23793, the jury's

3    award of $10,000 for intentional interference is duplicative of the amount already

4    paid by Bryant.

5        Additionally, Cal. Code of Civil Proc. § 877 provides:

6        Where a release, dismissal with or without prejudice, or a covenant not to
         sue or not to enforce judgment is given in good faith before verdict or
7        judgment to one or more of a number of tortfeasors claimed to be liable
         for the same tort –

8
9        (a) It shall not discharge any other such tortfeasor from liability unless
         its terms so provide, but it shall reduce the claims against the others in
10       the amount stipulated by the release, the dismissal or the covenant, or
         in the amount of the consideration paid for it whichever is the greater;
         and
11
12       (b) It shall discharge the tortfeasor to whom it is given from all
         liability for any contribution to any other tortfeasors.

13   "[T]he purpose of section 877 is to avoid double recovery for the same injury."

14   *Lafayette v. County of Los Angeles*, 162 Cal. App. 3d 547, 556 (1984).  In *Lafayette*,

15   the plaintiff sued his attorney for legal malpractice related to a medical malpractice

16   claim.  The plaintiff added a medical malpractice claim against Los Angeles

17   County.  Before trial, the plaintiff settled with the attorney for $15,000.  After a

18   verdict was reached against the County, the County moved under Civ. Proc. § 877

19   to reduce the award by the $15,000 settlement with the attorney.

20       In rejecting the plaintiff's argument that § 877 did not apply because the torts

21   were different and the defendants were not joint tortfeasors, the Court noted, "Two

22   tortfeasors can both be liable for the same tort without being joint tortfeasors in the

23   sense of concert of action and unity of purpose urged by plaintiff."  *Id.*  The Court

24   held,

25       For section 877 to apply, it was not necessary that [the attorney] be liable
         for the same tort for which a verdict was returned against the County.
26       The section applied if [the attorney] was *claimed* to be liable for the same
         tort.  Plaintiff clearly claimed [the attorney] was liable for the damages
27       resulting from the County's tort . . . and in continuing to prosecute the suit
         against [the attorney] for damages resulting from the County's tort.

28

*Id.* at 555-56.

In this case, based on the same set of facts, Mattel sought damages against Carter Bryant for breach of contract, breach of fiduciary duty and breach of duty of loyalty arising out of the contract, unjust enrichment and conversion, and, later, against MGA and Larian for intentional interference with Bryant's contract with Mattel.  Similar to the plaintiff in *Lafeyette*, Mattel claimed that MGA was liable for the damages resulting from Bryant's breach of contract.  For both claims, the same contract, the same contractual relationship and the same alleged harm, *i.e.*, disclosure and use of Bratz by MGA, were at issue.  *Compare* Dkt. No. 7676 ¶¶ 150, 152, 153 *with id.* at ¶¶160, 161, 163, 164.  MGA is therefore entitled to a reduction of the jury's verdict by the amount paid by Bryant to Mattel.  *Lafeyette*, 162 Cal. App. 3d at 554-56.

## CONCLUSION

For the reasons set forth above, MGA requests judgment be entered as a matter of law in MGA's favor on Mattel's intentional interference claim and Mattel's unfair competition claim.  In the alternative, MGA requests that Mattel's damage award for Mattel's intentional interference claim be reduced to zero on the basis of the previous contribution from Carter Bryant.

Dated: May 5, 2011

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____ */s/ Annette L. Hurst* _____
Annette L. Hurst
Attorneys for MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT HK, LTD., MGA de MEXICO, S.R.L. de C.V., and ISAAC LARIAN