# EXHIBIT B





A DAILY JOURNAL PUBLICATION

HOME | CLE | DISCIPLINE | JOBS | ADVERTISE | REPRINTS | SUBSCRIPTIONS | ABOUT US | CONTACT US | RESOURCE CENTER

**General Credit Categories**

- Alternative Dispute Resolution
- Appellate Practice
- Art Law
- Bankruptcy
- Business Organization
- Civil Practice
- Civil Procedure
- Communication Skills
- Constitutional Law
- Contracts
- Court Rules and Procedures
- Criminal Law
- Criminal Practice
- Damages
- Disabilities
- Discrimination
- E-Discovery
- Education Law
- Employment
- Environmental Regulation
- Estate Planning
- Evidence
- Expert Testimony
- Family Law
- Insurance
- Insurance Law
- Intellectual Property
- Internet Law
- Judicial Misconduct
- Jury Practice
- Law Practice Management
- Legal Malpractice
- Litigation
- Practice and Pleading
- Practice and Procedure
- Privacy Law
- Real Estate
- SLAPP
- Tax
- Torts
- Unfair Competition

**Special Credit Categories**

- Detection or Prevention of Substance Abuse
- Elimination of Bias
- Legal Ethics

### CLE CENTER

E-DISCOVERY

# BARBIE'S BODYGUARDS

*If you mess with Barbie, be prepared to mess with Quinn Emanuel.*

**By Tracie L. Thompson**

It was a typically gorgeous day in L.A. as J. Christopher Lynch headed downtown with two magnificent dolls. The then 36-year-old intellectual property litigator had flown in from Spokane, Washington, and was still flying high, because these beauties in his briefcase weren't just any old things. One was a Barbie®- actually, an original 1959 Barbie with the blond ponytail and zebra-striped maillot- worth around $5,000 to collectors. The other was an equally prized 1950s Lilli, a doll modeled after a sexy cartoon character from Germany's *Bild* newspaper. Together, these were the IP equivalent of a smoking gun in Lynch's biggest case ever. They showed, he believed, that the toy world's most valuable copyright was hardly an original work. Instead, the freakishly buxom Barbie was rather obviously related to the European doll sometimes described as a "sexpot" and a "pornographic gag gift." And Lynch was betting that Mattel Inc., the El Segundo-based creator and protector of Barbie, would do anything to prevent the revelation of such a tawdry lineage.

Lynch and his dolls landed on the tenth floor of the Trust Company of the West building in downtown Los Angeles for his meeting with Mattel's IP counsel at Quinn Emanuel Urquhart Oliver & Hedges. He was immediately struck by the postmodern look of the firm's offices-the exposed pipes make it look like a renovated warehouse but it actually costs more than a traditional office setting. And then there was the unusual attire. "Everyone was dressed casually," Lynch recalls, describing one library denizen clad in shorts, sandals, and an inside-out sweatshirt. "They were in front on that trend." Once inside the glass-walled conference room and outnumbered by his opponents, Lynch let the discussion build up to his Perry Mason moment. Then, with a deliberation that anticipated the gasps that were sure to erupt, Lynch triumphantly pulled out his evidence. It was a big bust.

"Tell us something we don't know already, Chris," Lynch says now, nearly four years after the fact, characterizing his opponents' blasé reaction. Then he catches himself: He's gotten in trouble with this kind of comment before. "I have to be careful what I say," he notes. "She tried to have my pro hac vice taken away, you know."

The "she" Lynch refers to is not Barbie. (And here's a heads-up for opposing lawyers and interviewers: Mattel's lawyers have been known to correct those who refer to Barbie as though she were a person rather than a multibillion-dollar brand.) Rather, Lynch is referring to Adrian M. Pruetz, the Quinn Emanuel partner leading IP litigation on behalf of a company renowned for its IP litigation. And what is Mattel's reputation? Well, news articles about "Barbie-Sue" and "Cease-and-Desist Barbie" described a number of lawsuits against smaller defendants in pun-filled terms. But for the lawyers involved, this was no joking matter.

In one extreme example, the firm of Luce, Forward, Hamilton & Scripps is still battling a defamation suit filed in Los Angeles County Superior Court after a former partner talked to the tabloid TV show *Extra* about his client's ultimately disastrous infringement countersuit against Mattel. *Mattel v Luce Forward Hamilton & Scripps*, Civ No. BC225556. Other attorneys say they've been stunned by the lawyering they've encountered in Mattel IP cases. And there's no denying Mattel's litigation success to date.

But it now appears that Take-No-Prisoners Barbie is losing her edge. For one, Mattel has finally met its match, in terms of resources, in its case against MCA

MAY 2006
**CONTINUE TO TEST**

**REGISTERED CLE USERS**

Bar Number:

Password:

Login

First time user? Click here to create a free account.

Registered Users enjoy these benefits:
- Track your CLE credits
- Print a summary of completed credits
- Email notification of new tests
- It's free!

Problems Logging On?

**MCLE Credit**
Earn one hour of MCLE credit by reading the article and answering the questions that follow for $32.00. You will receive the correct answers with explanations and an MCLE certificate upon completion of test.

**Certification**
The Daily Journal Corporation, publisher of California Lawyer, has been approved by the State Bar of California as a continuing legal education provider. This self-study activity qualifies for Minimum Continuing Legal Education credit in the amount of one hour. The Daily Journal Corp. certifies that this activity conforms to the standards for approved education activities prescribed by the rules and regulations of the State Bar of California.




Records. Unlike the small defendants TKO'd for infringing on Barbie, MCA has stayed in for the Ninth Circuit round in defense of its hit single "Barbie Girl."

And although the right to trash a doll is hardly the weightiest free-speech issue in America, the ACLU of Southern California has noisily taken up the cause of the little guys, the cultural critics allegedly silenced by Mattel's trademark-infringement suits. The ACLU's poster critic is a Utah artist whose photographs of Barbies are either profound parodies of shallow consumerist values or trademark-tarnishing trash, depending on whom you ask. Based on the early rulings in both the MCA and ACLU cases, however, it looks as though Barbie may have thrown too many kicks with those on-point toes. Back in Spokane, Chris Lynch was somewhat deflated by his trip to Los Angeles. The doll show-and-tell hadn't convinced Mattel to drop its infringement suit against his clients, Barb and Dan Miller, a local couple publishing a national magazine for doll collectors, although Lynch still couldn't believe the suit had been filed in the first place.

The Millers' magazine generally featured lavish photographs of Barbie dolls, but it also referred to green discoloration on some models and the alleged sale of a Bloomingdale's-exclusive Barbie into Toys 'R Us stores that would diminish its collectible value. So while the couple had been sued in federal court for misappropriating Barbie trademarks, copyright, and trade dress, Lynch figured they had been targeted for, as the suit stated, "disparaging Mattel's products." *Mattel v Miller* (CD Cal) Civ No. 97-2173.

Despite his failed gambit at Quinn Emanuel, Lynch still thought he had a good case on First Amendment grounds and, with Lilli, a legitimate question about the validity of the copyright his clients were accused of infringing. And he definitely had the Barbie-as-bully angle on his side. So he was happy to talk to the local paper about the plight of his clients. Lawyers for Mattel weren't returning phone calls for comment, so Lynch assisted a columnist at the *Spokane Spokesman-Review* by characterizing his opponents' litigation stance. The resulting quote from Lynch was attributed to an unnamed Quinn Emanuel attorney: "We want the Millers' house."

Within days the Spokesman-Review was enjoying some rare circulation in Los Angeles. Quinn Emanuel's team denied having said anything even close to the reported statement and argued that Lynch had broken rules of professional conduct.

Lynch was stunned by the opposition response, which was to challenge the pro hac vice status that allowed him to represent the Millers in California. "I didn't know if it was overly aggressive for Los Angeles, but it's certainly not something that would have happened in this community," says Lynch, who is now a partner with Preston Gates & Ellis in Spokane. "I was nervous about it because they were calling into question my ethics."

Fortunately for Lynch, U.S. District Judge Edward Rafeedie didn't see a need to toss him from the L.A. courthouse or preclude him from talking to the media. Yet Lynch, who was replaced as the Millers' lead counsel shortly thereafter and shortly before a settlement, is still haunted by the case. "The experience was draining and tough and depressing," he says. No one disputes that Mattel has a valuable stake to protect in Barbie. The brand is in more than 150 countries and is the best-selling fashion doll in almost every major market around the world, garnering a reported 75 to 80 percent of the U.K. doll market, for example. The average American girl between the ages of 3 and 11 owns ten Barbie dolls, according to Mattel. Of the company's $5.5 billion in annual revenues, more than a quarter, or $1.5 billion, come from Barbie brand sales. "The Barbie brand is, I think by anybody's definition, one of the most famous and successful brands ever," says Quinn Emanuel's Pruetz.

And yes, Mattel does file plenty of IP lawsuits. "Apparently a number of companies and individuals out there see it as their ticket to success to trade off the hard work and creativity of a company that has invested in and developed a major brand," says Pruetz. The company is indisputably prolific: Of the 5,501 trademarks Mattel sought in 1999, the U.S. Patent and Trademark Office issued 3,445-three times the number given to second-place Avon Products that year. Many of those trademarks and corresponding copyrights cover the many faces and moods of Barbie, who comes in virtually every ethnicity and has a new wardrobe each year.

Exhibit B - Page 229

Pruetz also represents Mattel's popular Hot Wheels brand in court, but those suits don't seem to attract nearly the attention that Barbie does. Perhaps that's because Mattel reserves the right to sue for trademark tarnishment. And given her "anatomically improbable dimensions"-in the words of one federal judge-Barbie inspires a limitless amount of carnal and cultural commentary. In addition to her character's unrealistic physical attributes, Mattel promotes a Barbie image that no real woman could ever match. One settlement with a doll catalogue reportedly specified that Barbie should be portrayed strictly as "wholesome, friendly, accessible and kind, caring and protecting, cheerful, fun-loving, talented and independent."

Barbie never loses her smile, of course, even in photos in which Utah artist Tom Forsythe has posed dolls so they are mooning the camera or interacting with various kitchen appliances. Still, the toymaker maintains in its infringement suit that many of Forsythe's images are "crudely sexual and violently misogynistic."

A federal judge also found some of the artist's photographs "jarring," says Douglas A. Winthrop, one of Forsythe's pro bono attorneys at Howard, Rice, Nemerovski, Canady, Falk & Rabkin in San Francisco. But that's because the artist is trying to make a point.

"Whether I like Tom's work or not, I think the work is as he intended it-legitimate social commentary about Barbie," Winthrop says. "It's a legitimate critique of Barbie and the values that Mattel has this doll representing."

The free-speech defense is winning thus far. U.S. District Judge Ronald S. W. Lew denied Mattel's bid for a preliminary injunction against Forsythe last year, saying it was unlikely the toymaker would ultimately prevail in its lawsuit. The Ninth Circuit affirmed without comment this year, sending the parties back to Lew in Los Angeles for a trial currently scheduled for October. *Mattel v Walking Mountain Productions* (CD Cal) Civ No. 99-8543.

Winthrop predicts his team and the ACLU will ultimately prevail-maybe even on a summary judgment. But there's little ebullience about the victories so far because the case has also been unusually unpleasant, Winthrop notes guardedly.

A summary of Winthrop's declaration in the case is more specific. "[A]t virtually every turn, counsel for Mattel has engaged in unprofessional, abusive, and manipulative tactics the likes of which not one of Defendant's attorneys has ever before witnessed.... [T]he last time counsel for Defendant called to make a request of counsel for Mattel, she wrote back and called Defendant's counsel liars."

Another filing says Mattel's claim should be barred by the doctrine of unclean hands because the company allegedly uses harassing litigation to silence commentary on Barbie. In support of the claim, the Howard Rice team writes: "[Mattel] is known in the legal community for writing a blank check to lawyers whose motto is 'litigation is war,' namely the Quinn Emanuel firm."Sitting down for an interview with Adrian Pruetz, it seems quite inconceivable that she could be the lead lawyer inflicting such grief.

With a ready smile and friendly demeanor, the 5-foot-tall, 100-pound Pruetz defies any casting-call notion of an aggressive litigator, which is just as well since she rejects that tag. "I'm more tenacious than aggressive," says the former accountant and ex-stay-at-home mom.

Despite Pruetz's denials, the aggressive reputation comes with being part of Quinn Emanuel. The 110-lawyer, 15-year-old firm claims to be the nation's largest business litigation boutique and markets itself in assertive terms. Several lawyers said they weren't surprised to hear about a marketing piece Quinn Emanuel sent out last year exhorting potential clients to "arm themselves"-presumably with legal services. The packages also included fake hand grenades so realistic that two San Jose businesses called police about the unexpected mailing. The resulting bomb squad evacuations generated a lot of unintended but widespread press coverage for Quinn Emanuel.

Although Pruetz represents AOL Time Warner, Avery Dennison, and others,

her Barbie workload is obvious when you step into her corner office. Four Barbie dolls are decoratively seated along the front edge of a bookshelf next to Pruetz's desk. Another five in boxes are lined up across the credenza, leaving just enough room for portraits of Pruetz's two adult children. A few more boxes are stashed on top of a tall bookshelf, including a "Barbie as Marilyn Monroe" doll clad in a shimmering red gown drawn from the film *Gentlemen Prefer Blondes*.

Another blonde with strikingly blue eyes, Pruetz is dressed for visitors in a well-tailored suit rather than her firm's hallowed casual style. Despite the frequent media coverage of Barbie's trips to the courthouse, this is the first interview Pruetz has given on the subject. One major hitch: She won't discuss any pending litigation, including Mattel's case against Forsythe. But speaking generally, Pruetz rejects Howard Rice's description of unprofessional tactics by Quinn Emanuel in the case.

She acknowledges, however, that her team will not return phone calls and will resort to written correspondence when they believe they're being misquoted by opposing counsel. "I'm talking about instances where you really feel you're putting a client at risk with oral communications," she says.

Other opponents complain that the firm makes litigation difficult by refusing to accommodate scheduling conflicts. "Continuances are rarely in the best interest of the client," Pruetz says. And Quinn Emanuel doesn't have to reschedule: With more than 100 trial specialists working together in a relatively nonhierarchical structure, Pruetz says she can call on any and all colleagues to help out as needed. "I've had partners step in for me on 20 minutes' notice," she says. "Our tough persona is born of that teamwork."

Certainly Pruetz enjoys a supportive environment at Quinn Emanuel. When partner Bill Urquhart drops in to invite her to lunch, he's pleased to learn she'll be spending time with a journalist instead. Such notice is long overdue, he enthuses: "I bet there aren't five women in California in litigation who have achieved what Adrian has."

Urquhart and partner John Quinn snagged Pruetz seven years ago as she was leaving Morrison & Foerster and supposedly headed for Orrick Herrington & Sutcliffe. Shortly thereafter Quinn introduced Pruetz to Michele McShane, Mattel's vice president and assistant general counsel. Pruetz has been leading the toymaker's major IP litigation ever since.

As the conversation turns to criticism of Mattel's litigation strategy, Pruetz loses her smile and crosses her arms. But she maintains a measured calm while addressing Barbie's alleged litigiousness. "The cases we file are meritorious," she says. "They normally end with an injunction or settlement in favor of Mattel, or damages in favor of Mattel." If the alleged infringer is a small operation, Pruetz says she seeks only modest damages of $10,000 or less. But she will usually seek some amount of damages because, she says, "If all you do is stop the infringing, then there's no penalty."

Yet the perception of Mattel going full tilt against smaller defendants persists. Even the quote that Quinn Emanuel vehemently denied-"We want the Millers' house"-lives on, thanks to the Internet. It surfaced again last fall in an ACLU press release. Meanwhile, media coverage of the Millers' case never touched on more serious allegations, such as Mattel's claim that the couple published unauthorized photos of unfinished works, including "Barbie as Marilyn Monroe," and ruined the launch of some products.

In another case cited by civil libertarians, *Mattel v Seal Press* (CD Cal) Civ No. 99-12324, the defendant gives Mattel credit for sincere intentions. The toymaker sued the feminist press over Adiós, Barbie, a collection of essays on body image, including one that found Barbie guilty of inspiring fourth-grade girls to diet. But publisher Faith Conlon says that Mattel only wanted changes to the cover, which included Barbie's name in Mattel's usual pink and images of a Barbie leg and tiny accessories. Having reissued the book with a new title and cover, Conlon says she believes Mattel saw the case strictly as a trademark infringement. On the other hand, she says, "It's a shame they keep winning just because they're bigger than everyone else."Whether size matters now appears moot, as Mattel's opponents in

some of the lingering Barbie cases appear committed to matching Quinn Emanuel in long battles. One such case is *Mattel Inc. v MCA Records* (CD Cal) Civ No. 97-6791, in which Mattel is up against the considerable resources of another major corporation and a trial team led by Russell J. Frackman of Mitchell Silberberg & Knupp, recently seen as the recording industry's counterpunch to David Boies in the Napster litigation.

The toymaker sued the music company over the international hit single entitled "Barbie Girl." Mattel alleged that the pop tune, which inspired sales of 1.4 million albums in the United States, tarnished the trademark and could also confuse young consumers. (Some months after filing its suit against MCA, Mattel announced that Barbie had secured a record deal with Sony.)

But U.S. District Judge William M. Byrne Jr. dismissed all of Mattel's claims on summary judgment, saying that the song clearly fell within the fair use and noncommercial speech exceptions in trademark law. "[T]he song's lyrics appear to target for parody a woman who is like Barbie-i.e. a Barbie Girl-one who is plastic, unreal, and easily manipulable by others," Byrne wrote. "Although plaintiff clearly wishes that its doll only be associated with 'wholesomeness,' defendants point out that the Barbie doll has become an icon that means different things to different people," he added.

Mattel appealed Byrne's summary judgment to the Ninth Circuit, where Judges Dorothy W. Nelson, Melvin Brunetti, and Alex Kozinski heard arguments in December. The resulting opinion is probably a doozy: Seven months later, the parties are still waiting for a decision.

Pruetz declined to discuss the case while it was pending, but MCA attorney Frackman expressed confidence in the outcome. "I think we're right, and I think Judge Byrne wrote a very well-reasoned and lengthy opinion in our favor," he says. As for the general tenor of his litigation with Quinn Emanuel, Frackman says, "I really don't make it a habit of commenting on opposing counsel."

Frackman did share a few thoughts with Spokane attorney Chris Lynch, who visited the MCA attorney in Los Angeles. to tell him about the Lilli and Barbie copyright argument. The information wasn't of much use in Frackman's "Barbie Girl" suit, Lynch says, which focused on trademark infringement. But Lilli hasn't gone away.

She has reappeared, most recently in the ACLU's defense of photographer Forsythe. Howard Rice's Doug Winthrop won't talk about the copyright challenge, other than saying that Quinn Emanuel has only recently produced requested discovery on the topic. But Lynch contends that by failing to note Barbie's derivation from the German doll in its registrations, Mattel may be vulnerable to a so-called inequitable conduct defense to its copyright.

Is Pruetz concerned about the copyright challenges? "Not even slightly," she says with a little smile. "While every now and then someone makes a weak argument like that, no one's ever pursued it because there would be no basis." In court papers, Quinn Emanuel notes that although Barbie was admittedly inspired by Lilli's hour-glass figure, she doesn't have the European's spit curl, molded earrings, puckered lips, webbed fingers, or molded shoes.

A court review of Barbie's copyright would be welcome validation for Lynch, but he already has a legacy from his tangles with Barbie's bodyguards. "It actually changed the way I've practiced. I've been doing more IP work and less litigation, and I'm sleeping better," he says.

To underscore that point, when an associate showed Lynch a cease-and-desist letter sent to a prospective client by Quinn Emanuel, Lynch advised the associate not to take on the case. "My prediction is there will be more heartache than you'll expect in a normal case," he told his colleague.

When Pruetz is asked if she's pleased by the reputation she has garnered in Spokane, she laughs out loud. "Considering that what your clients hope for is deterrence, then the answer would have to be yes."

Exhibit B - Page 232

*Tracie L. Thompson is a senior editor at* CALIFORNIA LAWYER.

**CONTINUE TO TEST**



post comments    email article    printer friendly

Copyright © 2011 Daily Journal Corporation. All rights reserved. User Agreement
915 E First Street, Los Angeles, CA 90012