1  WARRINGTON S. PARKER III (State Bar No. 148003)
   wparker@orrick.com
2  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
3  405 Howard Street
   San Francisco, California  94105-2669
4  Telephone:  +1-415-773-5700
   Facsimile:   +1-415-773-5759
5
6  WILLIAM A. MOLINSKI (State Bar No. 145186)
   wmolinski@orrick.com
7  ORRICK, HERRINGTON & SUTCLIFFE LLP
   777 South Figueroa Street
8  Suite 3200
   Los Angeles, California  90017
9  Telephone:  +1-213-629-2020
   Facsimile:   +1-213-612-2499
10
11 THOMAS S. MCCONVILLE (State Bar No. 155905)
   tmcconville@orrick.com
12 ORRICK, HERRINGTON & SUTCLIFFE LLP
   4 Park Plaza
13 Suite 1600
   Irvine, California  92614-2558
14 Telephone:  +1-949-567-6700
   Facsimile:   +1-949-567 6710
15
   Attorneys for MGA Parties
16

17            UNITED STATES DISTRICT COURT
             CENTRAL DISTRICT OF CALIFORNIA
18                SOUTHERN DISTRICT

| | |
|---|---|
| 19  CARTER BRYANT, an individual, | Case No. CV 04-9049-DOC (RNBx) |
| 20           Plaintiff, | Consolidated with Nos. CV 04-9059 and CV 05-2727 |
| 21       v. | Hon. David O. Carter |
| 22  MATTEL, INC., a Delaware corporation, | **[PUBLIC REDACTED VERSION] MGA PARTIES' MOTION FOR AWARD OF ATTORNEYS' FEES AND "FULL COSTS" UNDER SECTION 505 OF THE COPYRIGHT ACT** |
| 23           Defendant. | |
| 24 | |
| 25 | |
| 26 | Date:     May 24, 2010 |
| 27 | Time:     8:30 a.m. |
| 28  AND CONSOLIDATED ACTIONS. | Dept:     Courtroom 9D |

1

**TABLE OF CONTENTS**

2

**Page**

3

4

INTRODUCTION ................................................................................................ 1

5

STATEMENT OF FACTS ................................................................................. 1

6

A.    Procedural History Of The Action. ............................................. 1

B.    Mattel's Well-Known Litigiousness, Particularly Against
7
       Competitors. ................................................................................. 3

8
C.    The Scope Of Discovery In This Case And John Quinn's Stunning
       Admission Regarding Mattel's Bad-Faith Litigation Practices. ................ 5

9
D.    The Harm Suffered By MGA As A Result Of This Litigation. ................... 5

E.    Summary Of MGA's Fees And Costs Claimed In This Motion. ................ 6
10

ARGUMENT ...................................................................................................... 8

11
I.     THE COURT SHOULD AWARD MGA'S ATTORNEYS' FEES UNDER
      SECTION 505 OF THE COPYRIGHT ACT. ....................................... 8
12
A.    MGA's Successful Defense Furthered The Purposes Of The
13
       Copyright Act. .............................................................................. 8

14
      1.    MGA Is The Prevailing Party On The Copyright Claim. ................. 9

      2.    MGA's Successful Defense Furthered The Purposes Of The
15
          Copyright Act. ................................................................. 10

16
B.    Other Considerations Militate In Favor Of A Fee Award.......................... 12

      1.    The Degree Of Success Obtained Was High. .................................. 12
17
      2.    Considerations of Compensation and Deterrence Strongly
18
          Militate In Favor Of An Award. ........................................ 12

19
      3.    Mattel's Motivation For The Litigation Justifies An Award. ........... 13

      4.    Frivolousness/Unreasonableness ........................................ 13
20
II.    NO ALLOCATION BETWEEN DEFENSE CLAIMS IS NECESSARY AS
      THE CLAIMS ARE INEXTRICABLY INTERTWINED. .................................. 14
21
A.    The Core Of This Action Was Always The Copyright Claim And
22
       State Law Claims Necessary To Support The Ownership Prong Of
       Copyright. .................................................................................. 15
23
B.    Mattel Itself Characterized All Of Its Trade Secret Claims As
       Copyright Claims. ......................................................................... 15
24
C.    MGA Has Excluded From Its Fee Request Under Section 505 Those
       Fees Clearly Related Exclusively To Non-Copyright Issues,
25
       Including All Fees For Its Affirmative Claims. ..................................... 16

26
III.    THE FEES MGA SEEKS WERE NECESSARILY AND REASONABLY
       INCURRED. ..................................................................................... 16
27
A.    The Rates Charged By All Of The Firms Were Reasonable,
       Especially For Bet-The-Company Litigation Of This Complexity ............ 16
28

FIRM NAME
ATTORNEYS AT LAW
OFFICE ADDRESS

- i -

MGA MOT. FOR FEES AND COSTS UNDER
COPYRIGHT ACT
CV 04-9049-DOC (RNBx)

# TABLE OF CONTENTS
(continued)

**Page**

B.   The Amounts Sought In This Motion Were Actually, Necessarily And Reasonably Incurred For The Defense. ............................................... 17

C.   If Mattel Contests The Reasonableness Of The Fees, Then The Court Should Order Immediate Production Of Redacted Versions Of All Of Quinn Emanuel's Invoices For This Matter. ............................................. 18

IV.   THE COURT SHOULD ALSO AWARD "FULL COSTS" AS PROVIDED BY SECTION 505. ................................................................................................. 19

Firm Name
Attorneys at Law
Office Address

- ii -

MGA MOT. FOR FEES AND COSTS UNDER
COPYRIGHT ACT
CV 04-9049-DOC (RNBx)

# **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Ambriz v. Arrow Fin. Serv.*,
  LLC, 2008 WL 2095617 (C.D. Cal., May 15, 2008) ................................ 20

*Apple v. Microsoft, Inc.*,
  35 F.3d 1435 (9th Cir. 1994) ................................................................ 8

*Assessment Technologies of WI, LLC v. WIREdata, Inc.*,
  361 F.3d 434 (7th Cir. 2004) .......................................................... 9, 11

*Barrientos v. 1801-1825 Morton LLC*,
  583 F.3d 1197 (9th Cir. 2009) ............................................................. 9

*Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*,
  532 U.S. 598 (2001) . No .................................................................... 9

*Cairns v. Franklin Mint Co.*,
  292 F.3d 1139 (9th Cir. 2002) ............................................................ 18

*Davis v. City and County of San Francisco*,
  976 F.2d 1536 (9th Cir. 1992) ............................................................ 20

*Express LLC v. Forever 21*,
  Case 2:09-CV-04514, Dkt. # 4783 (C.D. Cal., Nov. 15, 2010) ........................... 20

*Fantasy, Inc. v. Fogerty*,
  94 F.3d 553 (1996) ................................................................... 11, 12

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994) ........................................................ 8, 10, 11, 12

*Gilbert v. New Line Productions, Inc.*,
  2010 WL 5790688 (C.D. Cal., Dec. 6, 2010) ............................................ 20

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) (statutory "prevailing party" for purposes of fee
  award under Section 1988 is one who succeeds on a significant issue
  actually litigated in the suit) ....................................................... 9, 14

*Historical Research v. Cabral,*
    80 F.3d 377 (9th Cir. 1996) ........................................................................ 9

*in the litigation. Sole v. Wyner,*
    551 U.S. 74 (2007) ..................................................................................... 9

*Jackson v. Axton,*
    25 F.3d 884 (9th Cir. 1994) ........................................................................ 8

*Kourtis v. Cameron,*
    358 Fed. Appx. 863, 2009 WL 4885054 (9th Cir. 2009) ................................. 16, 20

*Mattel, Inc. v. Goldberger Doll Mfg. Co.,*
    236 F.R.D. 175 (S.D.N.Y. April 13, 2006) ..................................................... 4

*Mattel, Inc. v. MGA Entertainment, Inc.,*
    616 F.3d 904 (9th Cir. 2010) ................................................................ 3, 10, 11

*Mattel, Inc. v. Walking Mountain Prods., Inc.,*
    353 F.3d 792 (9th Cir. 2004) ............................................................... 4, 8, 18

*McGinnis v. Kentucky Fried Chicken of CA,*
    51 F.3d 805 (9th Cir. 1994) ....................................................................... 18

*Miles v. California,*
    320 F.3d 986 (9th Cir. 2003) ...................................................................... 9

*Morales v. City of San Rafael,*
    96 F.3d 359 (9th Cir. 1996) ....................................................................... 17

*NLFC, Inc. v. Devcom Mid-America, Inc.,*
    916 F. Supp. 751 (N.D. Ill. 1996) ............................................................... 13

*Riordan v. State Farm Mut. Auto. Ins. Co.,*
    589 F.3d 999 (9th Cir. 2009) ...................................................................... 9

*Screenlife Establishment v. Tower Video, Inc.,*
    868 F. Supp. 47 (S.D.N.Y. 1994) ................................................................ 9

*Sorenson v. Mink,*
    239 F.3d 1140 (9th Cir. 2001) ............................................................... 15, 17

*Twentieth Century Fox Film Corporation v. Entertainment Distributing,*
    429 F.3d 869 (9th Cir. 2005) .......................................................... 9, 14, 19, 21

*Twentieth Century Music Corp. v. Aiken*,
    422 U.S. 151 (1975) ....................................................................................... 11

*Wall Data, Inc. v. Los Angeles County Sheriff's Dep't*,
    447 F.3d 769 (9th Cir. 2006) ........................................................................ 12

*Webb v. Sloan*,
    330 F.3d 1158 (9th Cir. 2003) ...................................................................... 15

*Yankee Candle Co., Inc. v. Bridgewater Candle Co, LLC*,
    140 F. Supp. 2d 111 (D. Mass. 2001), *aff'd*,
    259 F.3d 25 (1st Cir. 2001) ..................................................................... 13, 15

## STATUTES

17 U.S.C. Section 505 ...................................................................................... passim

28 U.S.C. § 1920 ....................................................................................... 19, 20

Core Of This Action Was Always The Copyright Claim And State Law ................ 15

## OTHER AUTHORITIES

Amended SJ Order, Dkt. #9600 ......................................................................... 10

L.R. 54-5 .............................................................................................................. 20

Rule 54 ...................................................................................................... 10, 20

Rule 54(d)(2)(b) .................................................................................................... 9

Rule 706 ................................................................................................................ 5

U.S. Const., Art I §8, cl. 8 ................................................................................ 11

# INTRODUCTION

Mattel destroyed most of the value of MGA's business and its Bratz brand with this copyright lawsuit. That destruction of a smaller competitor was precisely Mattel's objective. But despite waging litigation against MGA to the point of near destruction, Mattel ultimately lost this copyright case. Mattel's loss is society's gain: MGA's win promotes a greater diversity of copyrighted works in the marketplace, and as the Ninth Circuit noted, gives "Barbie, the all-American girl" the opportunity to "thrive on competition."

This is precisely the circumstance in which fees should be awarded to the prevailing defendant under Section 505 of the Copyright Act. MGA prevailed. It furthered the purposes of the Copyright Act in doing so. And, Mattel's conduct of the litigation strongly signals the need for compensation and deterrence. MGA qualifies for fees; this Court has the discretion to award them, and it should do so.

## STATEMENT OF FACTS

### A.    Procedural History Of The Action.

From the very beginning, this was a copyright case—whether Mattel called it that or not. On April 27, 2004, Mattel sued Carter Bryant in Los Angeles Superior Court. *See* April 27, 2004 Complaint, Case No. BC314398. Mattel's state law claims for breach of contract, breach of duty and conversion were designed to acquire ownership of intellectual property from Carter Bryant, which could then be used against MGA. *See id*. Mattel's prayer expressly sought such specific relief. *Id.* at 11. Recognizing the threat to its copyrights, on December 7, 2004, MGA filed an answer in intervention that explained why "Mattel's purported conversion claim is nothing more than a copyright claim in disguise." December 7, 2004 Answer in Intervention to Plaintiff's Unverified Complaint, Case No. CV 04-9059 at 1. Mattel stipulated to MGA's intervention. Dkt. # 36.

On November 20, 2006, Mattel moved to amend its complaint against Bryant

1   to formalize its effort to acquire ownership of MGA's copyrights and use them

2   against it.  Dkt. # 89.  MGA opposed based on the statute of limitations.  Dkt. #

3   110.  To save the claims in its amended complaint, Mattel responded that its

4   copyright claim is not time barred because it "relates back to its original complaint"

5   filed on April 27, 2004.  Dkt. # 117 at 7-9.  Mattel represented that it "has said from

6   the inception of this case that 'if [Bryant] produced designs for Bratz while

7   employed by Mattel, then Mattel owns them and all profits derived from their

8   exploitation.'"  *Id*. at 12 (citing a 2004 brief).  Indeed, later when MGA moved to

9   confirm dismissal of the 04-9059 action (Dkt. # 8922), Mattel again argued that "all

10  of Mattel's Bratz-related claims relate back to the 2004 Complaint" because they

11  "arise from the same general set of facts as Mattel's original claims against

12  Bryant."  Dkt. # 8986 at 14-15.  Thus, Mattel itself has repeatedly made clear that

13  the state law claims were a means for Mattel to acquire the copyright in Bryant's

14  work and thus satisfy the first element of its prima facie case for copyright

15  infringement.  Even prior to the phase 1 trial, the Court applied a substantial

16  element of copyright preemption to Mattel's claims.  Indeed, Judge Larson partially

17  granted MGA's motion for summary judgment on copyright preemption.  Dkt. #

18  3285 at 2.  With respect to interference with contract, Judge Larson found that "the

19  tortuous interference with contractual relations is preempted to the extent that it is

20  based on Mattel's rights to Bratz" because it "is premised upon MGA's alleged

21  interference with any copyrights that Mattel may have under the Inventions

22  Agreement."  *Id*.  With respect to Mattel's unfair competition claim, Judge Larson

23  found that to the extent that it "is based on copyright infringement, it is preempted."

24  *Id*. at 3-4.

25      When the jury in Phase 1 found that Mattel owned the copyright in Bratz

26  works and the Court granted injunctive relief, MGA appealed to the Ninth Circuit.

27  Case No. 09-55673,  Dkt. # 6988970.  As the Ninth Circuit recognized, it was the

28  copyright claim that led to "an injunction prohibiting MGA from producing or

MGA MOT. FOR FEES AND COSTS UNDER
COPYRIGHT ACT
CV 04-9049-DOC (RNBx)

marketing virtually every Bratz female fashion doll, as well as any future dolls substantially similar to Mattel's copyrighted Bratz works." *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 908 (9th Cir. 2010). The Ninth Circuit aptly stated: "In effect, Barbie captured the Bratz. The Bratz appeal." *Id*.

On appeal, the Ninth Circuit found that the district court erred and "[t]his error was significant" with respect to its copyright analysis, and that "we fail to see how the district court could have found the vast majority of Bratz dolls, such as 'Bratz Funk 'N' Glow Jade' or 'Bratz Wild Wild West Fianna,' substantially similar…unless it was relying on similarities in ideas." *Id*. at 916. Accordingly, the Ninth Circuit vacated the copyright injunction stating that "the entire case will probably need to be retried." *Id*. at 917. This Court subsequently vacated the entirety of the phase 1 verdict. Dkt. # 9131.

MGA then succeeded in obtaining summary judgment as to infringement by all but six Bratz dolls and the production sculpt. Dkt. # 9600 at 28-29. Meanwhile, Mattel attempted to shift its theory to trade secret misappropriation. Mattel's Bratz trade secret claim was an afterthought – an effort to recast the defunct copyright claim under a different name. Still, that claim involved the same core of common facts as to who owned what and how it had been used. And, MGA repeatedly explained that Mattel's Bratz trade secret claim fell squarely within the scope of copyrightable subject matter—an issue with which the Court struggled throughout the trial and ultimately adopted a special verdict form designed to preserve the issue of the scope of copyright preemption of the trade secret claim for appeal. *See* Dkt. ## 9572, 10064. The 2011 trial against presented the core issues of a copyright claim—ownership and copying—and MGA again found itself rebutting that claim.

## B.   Mattel's Well-Known Litigiousness, Particularly Against Competitors.

Mattel's aggressive litigation against competitors has been the subject of books (*Toy Monster* and *Forever Barbie: The Unauthorized Biography of a Real*

1   *Doll*), numerous articles ("Barbie's Bodyguards," "Barbie-Sue" and "Cease-and-

2   Desist Barbie" to name a few), as well as prior court decisions.  Hurst Decl. Exs. A,

3   B, C, D.

4         In Barbie's Bodyguards, then-Quinn Emanuel partner Adrian Pruetz exulted

5   over her firm's success in garnering a reputation for take-no-prisoners litigation on

6   behalf of Mattel:  "When Pruetz is asked if she's pleased by the reputation she has

7   garnered in Spokane, she laughs out loud.  'Considering that what your clients hope

8   for is deterrence, then the answer would have to be yes.'"  Hurst Decl. Ex. B.

9   Mattel and Quinn Emanuel have deliberately cultivated a reputation as a team of

10  difficult litigants, which the courts have recognized.

11        The United States District Court for the Northern District of California,

12  Judge William Alsup presiding, granted $10,000 in discovery sanctions against

13  Mattel and Quinn Emanuel for a pattern of abusive discovery and witness

14  intimidation—a sanctions award the Ninth Circuit expressly held was justified.

15  *Mattel, Inc. v. Walking Mountain Prods., Inc.*, 353 F.3d 792, 814 (9th Cir. 2004).

16  The Ninth Circuit also reversed the denial of attorneys' fees in that case, *see id.* at

17  815-16, and nearly $2M in fees were ultimately awarded by this Court, Judge Lew

18  presiding.  Hurst Decl. ¶2.

19        In *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, in which Mattel was also

20  represented by Quinn Emmanuel, the Southern District of New York granted a

21  judgment of dismissal of Mattel's copyright claim against the manufacturer of a

22  competing "Rockettes" fashion doll.  Mattel then sought to settle the case

23  contingent upon vacatur of the court's judgment, apparently in an effort to avoid

24  negative precedent.  Judge Rakoff declined to vacate, holding that in light of

25  Mattel's well-known litigiousness as a repeat player in the courts, the public interest

26  was better served in keeping the judgment intact so that the public was aware that

27  "not every female doll is a Barbie knock-off."  *Mattel, Inc. v. Goldberger Doll Mfg.*

28  *Co.*, 236 F.R.D. 175 (S.D.N.Y. April 13, 2006).

C.     **The Scope Of Discovery In This Case And John Quinn's Stunning Admission Regarding Mattel's Bad-Faith Litigation Practices.**

The discovery in this case has been nothing short of brutal in its scope and intensity.  The parties served many thousands of written discovery requests.  MGA produced well more than 1.1M documents, comprising many millions of pages.  Mattel produced approximately 275,000 documents.  More than three hundred seventy-five (375) volumes of deposition were taken, including dozens of volumes of 30b6 deposition testimony.  Mattel designated more than twenty experts.  Throughout the course of the case, the Court appointed numerous masters, including multiple discovery masters, a Rule 706 forensic expert, and a temporary receiver and monitor.

For MGA, discovery was made more expensive and the source of endless litigation because of Mattel's bad faith no-compromise policy.  No discovery request issued by Mattel was ever limited by agreement (rather than by court order), and discovery request propounded upon Mattel were almost never the subject of production absent court order.  Even when ordered to produce, Mattel files objections or moves for reconsideration.  *See, e.g.*, Dkt. # 6768; Dkt. # 7523; Dkt. # 7951; Dkt. # 8034.  In fact, in a stunning admission during the trial, John Quinn expressly acknowledged that when represented by Quinn Emanuel, Mattel never voluntarily produces anything—all discovery of Mattel must be conducted by court order.  4/1/11 Vol. 2 at 43-49.

D.     **The Harm Suffered By MGA As A Result Of This Litigation.**

MGA has watched its profits drained by payments of legal fees and has to fight with its insurers to obtain a defense.  Even with an adjudicated right to a defense from its insurers, some have refused to pay at all, and MGA has incurred approximately ▮▮▮▮▮▮▮▮ in legal fees and is out of pocket more than ▮▮▮▮▮▮▮▮ net of insurance reimbursements in connection with the Mattel action.  The toll of the litigation on MGA's financial condition was exacerbated by Mattel's efforts to

- 5 -

1    obtain a receivership and its constant public drumbeat of MGA perfidy.

2         **E.      Summary Of MGA's Fees And Costs Claimed In This Motion.**

3         In the course of seven years of protracted litigation by the biggest toy

4    company in the world, MGA has incurred approximately ▌▌▌▌▌ in attorney

5    fees and costs, primarily in defense of Mattel's claims but also in bringing its

6    affirmative claims against Mattel.  The attorney fees sought herein—

7    ▌▌▌▌▌—include only the fees of those firms that MGA retained to intervene

8    and defend Mattel's complaint against Carter Bryant and to defend against the

9    various iterations of Mattel's amended answer and counterclaims, to try the case in

10   Phase 1 and handle the injunctive relief proceedings and ongoing supervision by the

11   Court, to prosecute the appeal from the injunction, and to retry the case in 2011.

12   Schultz Decl. ¶¶5-15.  O'Melveny & Myers, Skadden Arps, Orrick Herrington &

13   Sutcliffe, and Keller Rackackaus are the primary firms whose fees are sought by

14   way of this Motion.  *Id.* ¶¶5-9 & Exs. 1-5.

15        A number of other law firms and attorneys were paid by MGA throughout its

16   defense of the case.  MGA is not seeking herein, however, the fees of a number of

17   those other firms whose roles were less centrally related to the MGA Parties'

18   defense of the copyright claim.  Thus, for example, MGA has not included the fees

19   incurred for representations limited in scope or time (such as Glaser Weil  and

20   Mitchell Silberberg who worked almost exclusively on phase 2 issues in the first

21   half of 2009), for firms who assisted but did not appear as counsel of record (such

22   as Kaye Scholer or Lewis Brisbois), for representations of related parties (IGWT

23   Group LLC and IGWT 826), for representations MGA paid pursuant to contractual

24   indemnity provisions (such as Bingham McCutchen's representation of OMNI) or

25   for representation of certain non-party witnesses (Keats McFarland & Wilson).

26   Indeed, MGA is not seeking reimbursement even for those fees paid on behalf of

27   Carter Bryant to the law firm of Keker & Van Nest.  Rather, MGA seeks to recover

28   only those fees central to the MGA Parties' defense of Mattel's claims.  *See* Schultz

MGA MOT. FOR FEES AND COSTS UNDER
COPYRIGHT ACT
CV 04-9049-DOC (RNBx)

1   Decl. ¶¶ 4-15, 17-18 & Exs. 1-11.  MGA thus has not sought in this motion the

2   following fees that it actually incurred: Glaser Weil Fink Jacobs Howard Avchen &

3   Shapiro LLP, which billed more than ██████ to Mattel matters; Bingham

4   McCutchen, which billed more than ██████ to Mattel matters; Keker & Van

5   Nest LLP, which billed more than ██████ to Mattel matters; Littler

6   Mendelson, which billed more than ██████ to Mattel matters; Mitchell

7   Silberberg & Knupp LLP, which billed more than ██████ to Mattel matters;

8   Keats McFarland & Wilson, which billed more than ██████ to Mattel matters;

9   and Kaye Scholer LLP, which billed more than ██████ to Mattel matters.

10   Schultz Decl. ¶18.

11        Likewise, MGA seeks to recover under Section 505 of the Copyright Act

12   only those costs that were necessarily and reasonably incurred in its defense.  These

13   costs fall within the following categories:

14        • Court-appointed masters, commissioners & receivers;

15        • Administration of the recall of Bratz products;

16        • Court reporters and videographers;

17        • Translation services;

18        • Electronic document processing, case hosting and database

19        management;

20        • Experts and consultants;

21        • Legal research;

22        • Hyperlinking of briefs and pleadings for the Court;

23        • Document copying and processing services;

24        • Couriers;

25        • Technology for the satellite office set up across from Court for

26        depositions and trial;

27        • Hotels for trial;

28        • Trial graphics and presentation; and

1      • Investigators.

2   Schultz Decl. ¶¶ 9-74; Exs. 12-58.

3        MGA's calculation of the fees and costs that it seeks through this motion is

4   conservative.  MGA seeks recover the fees and costs of fewer than half of service

5   providers and vendors that MGA retained and significantly less than the total

6   expense that MGA incurred in this litigation commenced by Mattel more than

7   seven years ago.  Schultz Decl. ¶ 3.

8                                **ARGUMENT**

9   **I.    THE COURT SHOULD AWARD MGA'S ATTORNEYS' FEES**
        **UNDER SECTION 505 OF THE COPYRIGHT ACT.**
10

11      **A.    MGA's Successful Defense Furthered The Purposes Of The**
            **Copyright Act.**

12      17 U.S.C. Section 505 provides:

13          In any civil action under this title, the court in its
            discretion may allow the recovery of full costs by or
14          against any party other than the United States or an officer
            thereof. Except as otherwise provided by this title, the
15          court may also award a reasonable attorney's fee to the
            prevailing party as part of the costs.
16

17   Defendants, when prevailing parties, are equally entitled to an award of fees under

18   this provision under the statutory "evenhanded" approach.  *Fogerty v. Fantasy, Inc.*,

19   510 U.S. 517 (1994).

20        The touchstone of this evenhanded inquiry is whether the prevailing party's

21   position furthered the purposes of the Copyright Act.  *Id.* at 527; *Mattel, Inc. v.*

22   *Walking Mtn. Prods., Inc.*, 353 F.3d 792, 816 (9th Cir. 2003) ("the question is

23   whether a successful defense of the action furthered the purposes of the Act, not

24   whether a fee award would do so") (emphasis original).  Neither frivolousness nor

25   bad faith is required for a fee award to a prevailing defendant under Section 505.

26   *Apple v. Microsoft, Inc.*, 35 F.3d 1435, 1448 (9th Cir. 1994); *Jackson v. Axton*, 25

27   F.3d 884, 890 (9th Cir. 1994).  Under the Copyright Act, unlike the Lanham Act or

28   Patent Act, there is no exceptional case requirement for an award of fees.  *See*

MGA MOT. FOR FEES AND COSTS UNDER
COPYRIGHT ACT
CV 04-9049-DOC (RNBx)

1 | *Historical Research v. Cabral*, 80 F.3d 377, 379 (9th Cir. 1996).

2 |      Rather, the inquiry is left to the sound equitable discretion of the Court,

3 | where that discretion is to be guided principally by the purposes of the Copyright

4 | Act.

5 | **1.     MGA Is The Prevailing Party On The Copyright Claim.**

6 |      Ordinarily the prevailing party determination is made in connection with a

7 | fee motion brought pursuant to Rule 54(d)(2)(b) within two weeks after entry of

8 | judgment. *See* Fed. R. Civ. P. 54(d)(2)(b); *Riordan v. State Farm Mut. Auto. Ins.*

9 | *Co.*, 589 F.3d 999, 1004-06 (9th Cir. 2009); *Barrientos v. 1801-1825 Morton LLC*,

10 | 583 F.3d 1197, 1217 (9th Cir. 2009). Defendants in copyright cases are considered

11 | prevailing parties when they successfully defend against significant claims actually

12 | litigated in the action. *Screenlife Establishment v. Tower Video, Inc.*, 868 F. Supp.

13 | 47, 50 (S.D.N.Y. 1994); *cf. Hensley v. Eckerhart*, 461 U.S. 424 (1983) (statutory

14 | "prevailing party" for purposes of fee award under Section 1988 is one who

15 | succeeds on a significant issue actually litigated in the suit).

16 |      Beginning in *Hensley*, the Supreme Court sought to unify the statutory

17 | "prevailing party" standard and to make it the subject of uniform interpretation

18 | throughout the federal laws. *See Buckhannon Bd. & Care Home, Inc. v. West*

19 | *Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603 n.4 (2001) (noting that

20 | all prevailing party fee-shifting statutes are interpreted consistently). No matter the

21 | statute, a final judgment of dismissal of the claim with prejudice on the merits is a

22 | determination that the defendant is the prevailing party. *Cf. Miles v. California*,

23 | 320 F.3d 986, 989 (9th Cir. 2003). This is true *even where the plaintiff previously*

24 | *enjoyed some success in the litigation. Sole v. Wyner*, 551 U.S. 74 (2007);

25 | *Twentieth Century Fox Film Corporation v. Entertainment Distributing*, 429 F.3d

26 | 869, 884 (9th Cir. 2005); *Assessment Technologies of WI, LLC v. WIREdata, Inc.*,

27 | 361 F.3d 434 (7th Cir. 2004).

28 |      Here, the Court has advanced the timing of the fee motions by order as

1    permitted by Rule 54.  Nonetheless, it is apparent from the jury's verdict that MGA

2    is the prevailing party on the copyright claim.  There is no ambiguity whatsoever on

3    that point.  The first element of Mattel's prima facie case of infringement—

4    ownership of a valid copyright—was thoroughly rejected by the jury.  Moreover,

5    even prior to the jury's determination on ownership, MGA had succeeded in

6    obtaining relief both from the Ninth Circuit and this Court to substantially limit

7    Mattel's copyright infringement claim.  *Mattel, Inc. v. MGA Entertainment, Inc.*,

8    616 F.3d 904 (9th Cir. 2010); Amended SJ Order, Dkt. #9600 at 28-29.

9           There is no reason to doubt the propriety of the jury's verdict on Mattel's

10   infringement claim and that a judgment of dismissal with prejudice will be entered

11   on that claim forthwith.  Mattel is entitled to absolutely no relief whatsoever in the

12   litigation.  Accordingly, MGA is the prevailing party for purposes of Section 505.

13                   **2.    MGA's Successful Defense Furthered The Purposes Of The
                     Copyright Act.**

14

15          As the Supreme Court held in *Fogerty*, a successful defense can further the

16   purposes of the Copyright Act every much as a successful prosecution:

17                 Because copyright law ultimately serves the purpose of
                   enriching the general public through access to creative
18                 works, it is peculiarly important that the boundaries of
                   copyright law be demarcated as clearly as possible.  To
19                 that end, defendants who seek to advance a variety of
                   meritorious copyright defenses should be encouraged to
20                 litigate them to the same extent that plaintiffs are
                   encouraged to litigate meritorious claims of infringement.
21                 In the case before us, the successful defense of 'The Old
                   Man Down The Road' increased public exposure to a
22                 musical work that could, as a result, lead to further
                   creative pieces.  Thus a successful defense of a copyright
23                 infringement action may further the policies of the
                   Copyright Act every bit as much as a successful
24                 prosecution of an infringement claim by the holder of
                   copyright.

25

26   *Fogerty*, 510 U.S. at 527.  In so holding, the Court reiterated the tenets of its prior

27   jurisprudence: "The immediate effect of our copyright law is to secure a fair return

28   for an 'author's' creative labor.  But the ultimate aim is, by this incentive, to

                                              - 10 -

1  stimulate artistic creativity for the general public good." *Id.* at 537-27 (quoting

2  *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975)).  Thus, the

3  copyright monopoly authorized in the Constitution (U.S. Const., Art I §8, cl. 8)

4  must be limited in a fashion that ultimately serves the public good.  *Id.* at 526.

5       The purposes of the Copyright Act plainly are met by MGA's successful

6  defense of Mattel's copyright claim.  MGA is itself a copyright holder and

7  defendant author who prevailed on the merits rather than on a technical defense.

8  MGA's successful defense has "secured the public's access to an original work of

9  authorship and paved the way for future original compositions." *Fantasy, Inc. v.*

10  *Fogerty*, 94 F.3d 553, 556 (1996).  MGA's successful defense will allow it to keep

11  marketing Bratz fashion dolls, accessories and related products, providing

12  consumers with much-needed choice in the fashion doll market.  As Mattel's

13  damages expert conceded, Mattel had a legal monopoly in the fashion doll market

14  shortly prior to MGA's entry into that market.  .  Several witnesses—including

15  Mattel's former SVP Sujata Luther—testified to the beneficial effect of having a

16  true multi-ethnic doll available offering real choice in the fashion doll market.  This

17  is exactly the type of activity approved under *Fogerty* as serving the purposes of the

18  Copyright Act.  Indeed, the Ninth Circuit has already implicitly so held when

19  vacating the injunction and determining that "Barbie, the all-American girl, will

20  [thrive on competition]." *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904,

21  918 (9th Cir. 2010).

22       Under *Fogerty*, MGA is a prevailing party whose successful defense furthers

23  the purposes of the Copyright Act.  No more is required for a fee award, and fees

24  should be awarded.  *See Fantasy*, 94 F.3d at 558 ("faithfulness to the Copyright Act

25  is, therefore, the pivotal criterion"); *Assessment Techs.*, 361 F.3d at 436-37 (when

26  defendant is prevailing party, there is strong presumption in favor of awarding

27  attorney's fees, because without prospect of fee award, defendant might be forced

28  into nuisance settlement or deterred altogether from enforcing rights) (Posner, J.).

- 11 -

**B.      Other Considerations Militate In Favor Of A Fee Award.**

The Court also may, but is not required to, consider other factors in connection with its exercise of equitable discretion under Section 505.  *Fogerty*, 510 U.S. at 534 n.19; *Wall Data, Inc. v. Los Angeles County Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006); *Fantasy*, 94 F.3d at 556-60.  Such factors include, without limitation, the degree of success obtained, motivation, frivolousness/reasonableness of losing party's legal and factual arguments, and the need to advance considerations of compensation and deterrence.  If the Court chooses to consider these additional factors, it will find that they also support an award of attorneys' fees to MGA.

**1.      The Degree Of Success Obtained Was High.**

MGA obtained a complete defense verdict and a judgment of dismissal with prejudice on all claims shall follow.  No greater degree of success could be obtained.

**2.      Considerations of Compensation and Deterrence Strongly Militate In Favor Of An Award.**

MGA has suffered harm as a result of this litigation for which it has not been compensated.  MGA is out of pocket by approximately ██████████ spent in order to defend itself, even net of insurance reimbursements.  The total fees and costs incurred are much higher—approximately ██████████.  As in *Fantasy*, a fee award here is just one small step in "restoring to [defendant] some of the lost value of the copyright [it] was forced to defend." *Fantasy*, 94 F.3d at 556.

Considerations of deterrence also strongly justify an award.  Mattel is a prolific litigant.  It has been the subject of prior sanctions and fee awards by courts and such awards seem to have had no effect on its profligate litigation tactics.  Mattel used this litigation to stifle a competitor—and Mattel wielded its abusive methods of litigation, apart from the merits, with a deliberate effort and pattern to inflict damage on MGA and the Bratz brand.  A substantial fee award is exactly the

kind of deterrence needed to make Mattel pause before again embarking on such a course of action against a competitor.

### 3. Mattel's Motivation For The Litigation Justifies An Award.

A desire to discourage and financially damage a competitor by forcing it into costly litigation justifies an award of fees. *Yankee Candle Co., Inc. v. Bridgewater Candle Co, LLC*, 140 F. Supp. 2d 111, 116 (D. Mass. 2001), *aff'd*, 259 F.3d 25 (1st Cir. 2001); *NLFC, Inc. v. Devcom Mid-America, Inc.*, 916 F. Supp. 751, 759-60 (N.D. Ill. 1996).

The evidence at trial showed that Mattel initiated this litigation when all of its other efforts to contain MGA failed. Other evidence pertinent to this factor that the Court did not permit the jury to consider included the fact that Mattel President Matt Bousquette and other Mattel executives discussed the use of the burdens of litigation as a deliberate tactic in order to litigate MGA to death. 2/4/08 Brawer Depo. at 232:19-233:22. Mattel waged war against MGA in this litigation, using every means available to a litigant to multiply the expense, burden and business disruption. "Taken as a whole, [plaintiff's] conduct in pursuing this litigation provides evidence of an improper motivation: to drain as much profit as possible out of a far smaller competitor. The attorneys' fees provision in the copyright act should serve to deter litigation conduct of this kind." *Yankee Candle*, 140 F. Supp. 2d at 118.

### 4. Frivolousness/Unreasonableness.

As noted above, frivolousness or the unreasonableness of a litigant's factual or legal position may be considered, but is not required for an award of fees to a prevailing party in a copyright case. Nonetheless, Mattel had serious legal problems with its copyright claim. Four state law tort claims were the basis of Mattel's original claim to ownership of MGA's copyrights: breach of fiduciary duty, breach of duty of loyalty, intentional interference with contract, and conversion. By the time the case was submitted to a second jury, three of these four

1   claims had been dismissed as a matter of law as a basis for Mattel's claim of

2   copyright ownership.  Duty of loyalty did not exist.  Fiduciary duty was not present

3   as a matter of law.  Conversion was preempted.  The Court granted dismissal or

4   judgment as a matter of law on numerous claims brought by Mattel, and both the

5   Ninth Circuit and this Court substantially limited the scope of Mattel's copyright

6   claim.  It was apparent from the outset that Mattel was grossly overreaching in

7   seeking to obtain every penny of profit MGA ever earned.

8       Indeed, it was not only the second jury who rejected Mattel's core theory of

9   the case.  Based upon the phase 1 verdict form, it also appears that the first jury at

10  least hung on the issue of whether the first four original drawings were made in

11  1998.  Carter Bryant told Ramona Prince he had made the drawings in 1998 long

12  before he ever came into contact with MGA.  Mattel had absolutely no objective

13  evidence that the original drawings were made other than in 1998 when Carter

14  Bryant said they were; and, Mattel had no objective evidence at all that MGA knew

15  otherwise.  Not even Mattel's forensic document examiner could put a date on

16  when the drawings were made.  Rather, Mattel's entire case hinged solely upon its

17  constant and repeated accusation that Carter Bryant and Isaac Larian were liars,

18  and nothing else.  Mattel's case rested on the proposition that it owns its employees,

19  and that anyone who dares to do business with them is a thief.  The massive effort

20  Mattel undertook to destroy MGA and seek in excess of $1B in damages based on

21  no more than an accusation that Carter Bryant lied and Isaac Larian knew about it,

22  with no supporting objective evidence whatsoever, was not only legally but also

23  factually unreasonable.

24  **II.   NO ALLOCATION BETWEEN DEFENSE CLAIMS IS NECESSARY

25       AS THE CLAIMS ARE INEXTRICABLY INTERTWINED.**

26      Where the claims upon which the prevailing party prevailed are inextricably

27  intertwined, the Court need not apportion amongst the various claims in awarding

28  fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *Twentieth Century Fox*

- 14 -

1   *Film Corporation v. Entertainment Distributing*, 429 F.3d 869, 884 (9th Cir. 2005);

2   *Webb v. Sloan*, 330 F.3d 1158 (9th Cir. 2003); *Sorenson v. Mink*, 239 F.3d 1140,

3   1147 (9th Cir. 2001); *Yankee Candle Co.*, 140 F. Supp. 2d at 122-23.

### A.   The Core Of This Action Was Always The Copyright Claim And State Law Claims Necessary To Support The Ownership Prong Of Copyright.

6   The core factual contention of Mattel's copyright claim, and all of its other

7   claims as well, was that Mattel was the true owner of Bratz and that Mattel should

8   be awarded damages because MGA improperly acquired and exploited something

9   that Mattel owned.  The origins of Bratz were relevant to the copyright claim and

10  all other claims.  MGA's use of Bryant's drawings in its business was relevant to

11  the copyright claim and to all other claims.  Mattel sought lost profits and

12  disgorgement of profits on its copyright claim in addition to its other claims,

13  making all of the evidence regarding the market for fashion dolls, the ten-year sales

14  history of both parties' products, and the business history and financial

15  circumstances of both sides relevant and common to all claims.  In short, it is clear

16  that all of the claims in this litigation were factually intertwined.

17  The claim were legally intertwined as well.  The two elements of a prima

18  facie case of copyright infringement were ownership and copying.  Mattel's state

19  law tort claims were all premised upon meeting that first element—seeking

20  ownership of Bryant's work and hence MGA's copyrights, so that it could then use

21  those copyrights against MGA to stop its exploitation of Bratz and continue

22  competition with Mattel.  As the Court repeatedly found, aspects of all of Mattel's

23  state law claims implicated, and were preempted by, the Copyright Act.  In short,

24  the standards and strictures of the Copyright Act were the driving force behind the

25  legal structure of this litigation as framed by Mattel and defended by MGA.

### B.   Mattel Itself Characterized All Of Its Trade Secret Claims As Copyright Claims.

28  Indeed, even as to Mattel's other employee-based claims, Mattel invoked the

- 15 -

Copyright Act.  Mattel claimed that the departing employees "stole" trade secrets in order to enable MGA's continued successful exploitation of Bratz.  Mattel pled that the purported theft of trade secrets was part of one large ongoing scheme to steal Mattel's purported Bratz intellectual property and to continue stealing from Mattel in order to benefit from that intellectual property for a decade.  When faced with a lack of evidence in support of its employee-based trade secret claims in connection with MGA's summary judgment motion, Mattel even went so far as to claim that its trade secret claims were in fact copyright claims—asserting that MGA violated the Copyright Act in connection with documents copied by departing employees.  Dkt. # 9182 at 70-73.  Throughout this case, Mattel itself has viewed all of its claims as inextricably intertwined.  Indeed, this was Mr. Zeller's rationale in arguing that Mattel had never desired to have the case bifurcated.

### C. MGA Has Excluded From Its Fee Request Under Section 505 Those Fees Clearly Related Exclusively To Non-Copyright Issues, Including All Fees For Its Affirmative Claims.

To the extent that fees have been clearly identified as not directly related to the core of the MGA Parties' successful defense of Mattel's copyright claim brought against them, such fees have been excluded from the request made in this Motion.  *See* SOF Part E, *infra*.

### III. THE FEES MGA SEEKS WERE NECESSARILY AND REASONABLY INCURRED.

### A. The Rates Charged By All Of The Firms Were Reasonable, Especially For Bet-The-Company Litigation Of This Complexity.

The rates charged by the various firms whose fees are sought in this Motion are set forth in the invoices attached to the Schultz Declaration.  Ninth Circuit law makes clear that it is within the district court's discretion to award these actual rates.  *Kourtis v. Cameron*, 358 Fed. Appx. 863, 867, 2009 WL 4885054 (9th Cir. 2009) (upholding the district court's award of the prevailing defendant's fees based on actual rates).  As set forth in the Declaration of Peter Zeughauser filed herewith, the rates charged MGA were reasonable given the seniority and experience of the

1   various counsel, prevailing market rates, and the complexity of the issues involved.

2   Zeughauser Decl. ¶¶ 9-15; *see Sorenson v. Mink,* 239 F.3d 1140, 1145 (9th Cir.

3   2001) (a reasonable hourly rate is calculated according to the prevailing market

4   rates in the community in which the court sits).  Indeed, as revealed by various

5   declarations filed by Quinn Emanuel throughout the course of the case, it charged

6   to Mattel rates for work in this case that were comparable, if not higher, than those

7   charged to MGA.  Zeughauser Decl. ¶ 15.

8         Given the stakes at issue here, where an adverse ruling could have, and

9   nearly did end MGA's very existence, the rates charged to represent MGA are

10   reasonable.  This is particularly true in light of the result achieved.  *See Morales v.*

11   *City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 1996) (in determining reasonableness

12   of rates or hours, court can consider "(1) the novelty and complexity of the issue;

13   (2) the specific skill and experience of counsel; (3) the quality of representation; (4)

14   the results obtained; and (5) the contingent nature of the fee arrangement.")

15   **B.**   **The Amounts Sought In This Motion Were Actually, Necessarily**
        **And Reasonably Incurred For The Defense.**

16

17         Attached to the Declaration of Stephen Schultz submitted herewith are copies

18   of all of the actual invoices reflecting the fees and costs that MGA seeks through

19   this Motion, redacted in order to delete descriptions of the work which reflect

20   attorney work product and attorney-client privileged communications.  The total

21   sum sought is ████████.  These fees were actually incurred.  Schultz Decl. ¶¶

22   4-76 & Exs. 1-58.

23         The sum sought is no doubt considerable.  But the fees MGA is seeking

24   through this Motion were actually incurred and were necessary to the defense; they

25   were reasonable in the context of the litigation war conducted by Mattel.  As the

26   Court is well aware, this litigation was remarkable in scope, and MGA faced a

27   relentless, implacable foe.  The circumstances have previously been described by

28   sworn testimony of MGA witnesses and counsel at a fee arbitration between MGA

- 17 -

1  and its insurers.  The scope and scale of the case when Skadden took over in late

2  2007 was unprecedented, necessitating a massive effort to meet hundreds of

3  pending motions and discovery requests.  *See* Hurst Decl. Ex. G (Nolan arbitration

4  testimony).  Eventually the huge receivable with Skadden after the phase 1 trial

5  forced MGA to look elsewhere for phase 2 counsel.  Despite the challenges, MGA

6  carefully negotiated its fee arrangements and did its best to monitor them closely.

7  *See* Hurst Decl. Ex. I (Pisoni arbitration testimony).  MGA's attorneys separated

8  their billings for affirmative and defensive claims.  *See* Schultz Decl. ¶¶4-6 & Exs.

9  1-2; Hurst Decl. Ex. H (Hurst arbitration testimony).

10       The fees and costs MGA seeks in this Motion are less than all of the fees and

11  costs actually incurred by MGA in connection with this litigation.  MGA has

12  excluded from its request more than ▮▮▮▮▮ in fees and costs actually incurred.

13  MGA has been reasonable in identifying those fees most closely related to the

14  defense of the copyright and related claims.  The number is large, but the law is

15  clear:  it is the favorable consequences of the successful defense, rather than the

16  number sought, that is the touchstone for evaluating the propriety of a fee award.

17  *Walking Mountain*, 353 F.3d at 815-16.

18       **C.    If Mattel Contests The Reasonableness Of The Fees, Then The
         Court Should Order Immediate Production Of Redacted Versions**
19       **Of All Of Quinn Emanuel's Invoices For This Matter.**

20       It is axiomatic that the reasonableness of fees can be demonstrated by those

21  expended by the opposing party.  *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1159

22  (9th Cir. 2002); *McGinnis v. Kentucky Fried Chicken of CA*, 51 F.3d 805, 809 (9th

23  Cir. 1994).  Mattel strenuously resisted producing evidence of its attorneys' fees

24  expended in this action.  In order to avoid such discovery, Mattel even stipulated

25  that it would not seek fees as an element of damages, and thereby obtained multiple

26  protective orders.  Still, a press report based on an analyst who follows Mattel has

27  pegged Mattel's fee expenditures at ▮▮▮▮▮—far more than is sought by MGA in

28  connection with this Motion.  *See*  Hurst Decl. Ex. E (industry analyst estimated

MGA MOT. FOR FEES AND COSTS UNDER
COPYRIGHT ACT
CV 04-9049-DOC (RNBx)

1    Mattel has spent $400 million over six years on the litigation).

2        If Mattel contests the reasonableness of MGA's fees and costs sought by this

3    Motion, then it should be ordered to produce immediately redacted copies of all of

4    its invoices for this case sufficient to demonstrate its total expenditure of fees and

5    costs on this litigation.

6    **IV.    THE COURT SHOULD ALSO AWARD "FULL COSTS" AS
         PROVIDED BY SECTION 505.**

7        In addition to fees, the Court should award "full costs."  17 U.S.C. § 505.

8    Ninth Circuit law is clear that the language "full costs" under Section 505 means

9    exactly that: "full costs."  Thus, a district court may award not only those costs that

10   are automatically taxable under 28 U.S.C. § 1920, but also otherwise non-taxable

11   costs incurred by the prevailing party.   *Twentieth Century Fox Film Corporation v.*

12   *Entertainment Distributing*, 429 F.3d 869, 885 (9th Cir. 2005) ("we hold that

13   district courts may award otherwise non-taxable costs, including those that lie

14   outside the scope of § 1920, under § 505").

15
16               Construing § 505 as limiting the costs that may be
                 awarded to any particular subset of taxable costs
17               effectively reads the word "full" out of the statute. We
                 must give every word in a statute meaning. To do
18               otherwise would be to violate the long standing principle
                 of statute interpretation that "statutes should not be
                 construed to make surplusage of any provision."
19
20   *Id.*  "Full costs" under Section 505 thus include the full costs incurred by the

21   prevailing party in a copyright case.

22       The six categories of taxable costs routinely awarded to prevailing parties

23   include:

24               (1) Fees of the clerk and marshal;

25               (2) Fees of the court reporter for all or any part of the
                 stenographic transcript necessarily obtained for use in the
26               case;

27               (3) Fees and disbursements for printing and witnesses;

28               (4) Fees for exemplification and copies of papers
                 necessarily obtained for use in the case;

- 19 -

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920; L.R. 54-5.  These costs are recoverable by MGA and will be the subject of a post-judgment cost bill as provided by Rule 54 and the Local Rules.

In addition, however, "full costs" under Section 505 include all of those other reasonable costs incurred that are not authorized by Section 1920.  These include expert witness fees; amounts beyond the allotted *per diem* witness fees; costs and fees for paralegals; and out-of-pocket expenses, including travel, telephone, mailing, copying and computerized legal research expenses.  *Kourtis v. Cameron*, 358 Fed. Appx. 863, 867, 2009 WL 4885054 (9th Cir. 2009) ("The court's inclusion of an additional $37,850.00 to compensate Kassar's expert witness was not an abuse of discretion because non-taxable costs may be included in the calculation of 'full costs' under 17 U.S.C. § 505"); *Gilbert v. New Line Productions, Inc.*, 2010 WL 5790688 at *6 (C.D. Cal., Dec. 6, 2010) (finding requested costs for legal research and mailing reasonable under Section 505); *Express LLC v. Forever 21*, Case 2:09-CV-04514, Dkt. # 4783 (C.D. Cal., Nov. 15, 2010) (holding that Section 505 is not limited to *per diem* witness fee for experts and that "properly included in an award of attorney's fees are costs and fees for paralegals, out-of-pocket expenses, including travel, telephone, mailing, copying and computerized legal research expenses"); *Ambriz v. Arrow Fin. Serv*., LLC, 2008 WL 2095617 (C.D. Cal., May 15, 2008).  *See also Davis v. City and County of San Francisco*, 976 F.2d 1536 (9th Cir. 1992) ("we have continued to hold that attorneys' fees awards can include reimbursement for out-of-pocket expenses including the travel, courier and copying costs").

These costs are awarded not only in connection with the successful copyright defense, but also in connection with defending against related claims and against

any appeals on the road to the "ultimate victory in the lawsuit."  First, the Ninth Circuit has made clear "[f]ee awards may include costs and fees associated with defending against counterclaims if the counterclaims 'involve a common core of facts or are based on related legal theories.'"  *Twentieth Century Fox Film Corporation v. Entertainment Distributing*, 429 F.3d 869, 884 (9th Cir. 2005) (holding that the district court did not improperly grant fees for defending against unfair competition and slander claims because they were predicated on the issue of copyright ownership).  "Full costs" further include costs incurred during appeal because they are part of "winning the war."  *Id.* (finding "no abuse of discretion in the district court's decision to award [prevailing party] its fees for the prior summary judgment appeal).

With respect to the costs that MGA seeks, MGA has identified those third parties providers that were necessary to defending this large scale litigation against Mattel.  As discussed above, these include court-appointed masters, commissioners & receivers; administration of the recall of Bratz products; court reporters and videographers; translation services; electronic document processing, case hosting and database management; experts and consultants; legal research providers; copying services; and other expenses reasonably and necessarily incurred.  Schultz Decl. ¶¶19-75, Exs. 12-58.

The net cast for costs is wide where, as here, the defendant has had to expend an exorbitant amount of money during years of protracted litigation.  Accordingly, MGA seeks, and is entitled to, the full costs of its successful defense of Mattel's copyright claim.

## CONCLUSION

For all of the foregoing reasons, MGA's motion for attorneys' fees and full costs under Section 505 should be granted, and MGA should be awarded ███████ as detailed in the declaration of Stephen Schultz.

1    Dated:    May 5, 2011              Orrick, Herrington & Sutcliffe LLP

2

3                                       By:_____/s/ Annette L. Hurst_____

4                                           ANNETTE L. HURST
                                            Attorneys for MGA
5                                       ENTERTAINMENT, INC., MGA
                                        ENTERTAINMENT HK, LTD.,
6                                       MGA de MEXICO, S.R.L. de C.V.,
                                            and ISAAC LARIAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA MOT. FOR FEES AND COSTS UNDER
COPYRIGHT ACT
CV 04-9049-DOC (RNBx)