1 | QUINN EMANUEL URQUHART & SULLIVAN, LLP
2 |   John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
3 |   William C. Price (Bar No. 108542)
  (williamprice@quinnemanuel.com)
4 |   Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
5 | 865 South Figueroa Street, 10th Floor
6 | Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
7 | Facsimile:   (213) 443-3100

8 | Attorneys for Mattel, Inc. and Mattel de
Mexico, S.A. de C.V.

9

UNITED STATES DISTRICT COURT

10

CENTRAL DISTRICT OF CALIFORNIA

11

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, et al.,<br><br>        Plaintiff,<br><br>     vs.<br><br>MGA ENTERTAINMENT, INC., a California corporation, et al.,<br><br>        Defendant.<br><br>_____<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. David O. Carter<br><br>**MATTEL'S POST TRIAL BRIEF RE: EQUITABLE DEFENSES**<br><br>Trial Date:  January 18, 2011 |

1

# **<u>TABLE OF CONTENTS</u>**

2
<b><u>Page</u></b>

3

4

PRELIMINARY STATEMENT ................................................................................. 1

5

ARGUMENT ........................................................................................................... 1

6

I.     MGA'S UNCLEAN HANDS BARS ITS TOY FAIR CLAIMS ..................... 1

7

    A.     The Unclean Hands Doctrine .................................................. 2

8

    B.     MGA Engaged In Directly Related Misconduct ....................... 2

9

    C.     MGA's Misconduct Bars Recovery ......................................... 4

10

II.    LACHES BARS MGA'S CLAIMS .............................................................. 5

11

    A.     The Doctrine of Laches ........................................................... 6

12

    B.     MGA's Unreasonably Delayed In Bringing Its Claim ............. 7

13

    C.     Mattel Was Prejudiced ........................................................... 8

14

CONCLUSION ..................................................................................................... 10

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

## Cases

4

Adler v. Federal Republic of Nigeria,
    219 F.3d 869 (9th Cir. 2000) .................................................................... 2, 5

5

6

Brzozowski v. Corr. Physician Servs., Inc.,
    360 F.3d 173 (3d Cir. 2004) ......................................................................... 6

7

Danjaq LLC v. Sony Corp.,
    263 F.3d 942 (9th Cir. 2001) ........................................................... 6, 7, 8, 10

8

9

Ellenburg v. Brockway, Inc.,
    763 F.2d 1091 (9th Cir. 1985) ...................................................................... 2

10

Intamin, Ltd. v. Magnetar Technologies Corp.,
    623 F. Supp. 2d 1055 (C.D. Cal. 2009) ........................................................ 5

11

12

Jackson v. Axton,
    25 F.3d 884 (9th Cir. 1994) .......................................................................... 6

13

Kendall-Jackson Winery Ltd. v. Superior Court,
    76 Cal. App. 4th 970 (1999) ...................................................................... 2, 4

14

15

Pond v. Insurance Co. of North America,
    151 Cal. App. 3d 280 (1984) ........................................................................ 4

16

TrafficSchool.com, Inc. v. Edriver, Inc.,
    633 F. Supp. 2d 1063 (C.D. Cal. 2008) ..................................................... 4, 5

17

18

Tustin Cmty. Hosp., Inc. v. Santa Ana Cmty. Hosp. Ass'n.,
    89 Cal. App. 3d 889 (1979) .......................................................................... 6

19

20

Vernon Firefighters Assn., Local 2312 v. City of Vernon,
    178 Cal. App. 3d 710 (1986) ........................................................................ 6

21

Whitefield v. AnheuserBusch, Inc.,
    820 F.2d 243 (8th Cir. 1987) ...................................................................... 10

22

23

Whittaker Corp. v. Execuair Corp.,
    736 F.2d 1341 (9th Cir. 1984) ...................................................................... 6

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Mattel submits this brief outlining its position on its equitable defenses to MGA's trade secret misappropriation claims.  These defenses – unclean hands and laches – bar MGA's claims.

First, the doctrine of unclean hands bars MGA's claims because MGA was engaging in misconduct directly related to its trade secret misappropriation claims. At the Toy Fairs in New York and Nuremberg that are the subject of MGA's claims, MGA sent its own agents to get the same type of information about Mattel's unreleased products.  This is not misconduct in the abstract.  MGA's hands are dirty with respect to this claim and it cannot recover for Mattel's Toy Fair misconduct.

Second, laches bars MGA's trade secret theft claims because MGA sat on them for years and by doing so prejudiced Mattel.  MGA knew about Mattel's Toy Fair conduct for over half a decade.  It was engaged in litigation with Mattel over this entire period – filing lawsuits, responding to counterclaims, and issuing discovery requests.  Yet MGA waited until August 2010 – mere months before trial – before bringing its trade secret misappropriation claim.  MGA's unexplained (and unexplainable) delay resulted in missing evidence and faded memories – all of which played to MGA's advantage.  This is laches.

### Argument

The Court has determined that it will decide Mattel's equitable defenses.  See March 30, 2011 Order.  As set forth below, Mattel's equitable defenses of unclean hands and laches each bar in full MGA's trade secret claims.

### I.   MGA'S UNCLEAN HANDS BARS ITS TOY FAIR CLAIMS

MGA's trade secret misappropriation claims are based on Mattel employees' alleged entering of MGA's showrooms and acquiring trade secret information about the "appearance, operation, intended play pattern, plans to advertise on television,

and FOB pricing" of MGA products.[1]  The jury found for MGA as to 26 of the claimed trade secret products.  But MGA is barred from any recovery by its own unclean hands – it has engaged in the same misconduct at the same Toy Fairs.

### A.   The Unclean Hands Doctrine

The doctrine of unclean hands is derived from the maxim, "He who comes into equity must come with clean hands." Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1097 (9th Cir. 1985).  The doctrine demands that a plaintiff act fairly in the matter for which he seeks a remedy.  Kendall-Jackson Winery Ltd. v. Superior Court, 76 Cal. App. 4th 970, 978 (1999).  "He must come into court with clean hands, and keep them clean, or he will be denied relief, *regardless of the merits of his claim.*"  Id. (citing Precision Co. v. Automotive Co., 324 U.S. 806, 814-15 (1945)) (emphasis added).  In order for the doctrine to apply, all that must be shown is that the plaintiff engaged in misconduct that relates directly to the asserted cause of action.  Kendall-Jackson, 76 Cal. App. 4th at 979.  "Courts have expressed this relationship requirement in various ways.  The misconduct must relate directly to the transaction concerning which the complaint is made, i.e., it must pertain to the very subject matter involved and affect the equitable relations between the litigants." Id. (internal quotations and citations omitted).  Where applicable, an unclean hands defense bars a plaintiff's recovery.  Adler v. Federal Republic of Nigeria, 219 F.3d 869, 877-878 (9th Cir. 2000).

### B.   MGA Engaged In Directly Related Misconduct

The jury found that Mattel misappropriated MGA trade secrets relating to 26 products at toy fairs – 4 at the Nuremberg Toy Fair and 22 at the New York Toy Fair.[2]  The evidence shows that MGA used its own employees and agents to obtain the same types of information from these same Toy Fairs.  At the Nuremberg Toy

---

[1]   See Verdict Form, Dkt. No. 10518 at Question 16.

Fair, two MGA Germany employees entered Mattel's showroom and wrote a detailed report on the pricing, appearance, operation, and play pattern of Mattel's unreleased products.[3]   This report was then forwarded to MGA executives, including Isaac Larian, Ron Brawer, and Paula Garcia.[4]   MGA also obtained information, from a "closed room" at the Nuremberg Toy Fair, about the appearance and play pattern of a "TOP SECRET" unreleased Barbie product.[5]  MGA was also going after this same type of "trade secret" information from the New York Toy Fair.  Before the 2000 New York Toy Fair, Isaac Larian wrote to a retailer that did business with MGA:

> I need a favor.  **At NYTF, can you please get me a copy of catalog and price list** for following companies:
>
> Playmate, Tiger, Manley, Radica, Hasbro, Parker brothers, Thinkway toys, DSI, Toymax, **Mattel**, ToyBiz
>
> Thanks.[6]

Mattel's catalogs and price lists contain the same types of information – such as product appearance and FOB price – that the jury found Mattel misappropriated from MGA showrooms.

Nor was MGA's misconduct limited to these specific Toy Fairs.  MGA went after these same types of information at other trade shows and in retailer planogram rooms.  See TX 9418 (acquiring pricing and other information about unreleased Barbie products at the 2005 Paris Toy Fair); TX 9528 (same); 4/6/2011 Trial Tr.,

---

[2]   See Verdict Form, Dkt. No. 10518 at Question 16, Nos. 24, 27, 28, and 29 (Nuremberg Toy Fair); id., Nos. 1, 2, 4-9, 14-16, 18-22, 41, 49, 58, 65, 66, and 69 (New York Toy Fair).
[3]   See TX 9854; 3/25/2011 Trial Tr., Vol. 1 (Larian) at 114:2-118:4.
[4]   Id.
[5]   See TX 9533; TX 9539; TX 9616; 3/25/2011 Trial Tr., Vol. 1 (Larian) at 109:24-114:1; 3/31/2011 Trial Tr., Vol. 2 (Brawer) at 9:25-12:17.
[6]   TX 22225 (emphasis added); see also 3/25/2011 Trial Tr., Vol. 1 (Larian) at 101:2-105:24.  Additional evidence, not admitted at trial, shows that MGA was sending its employees to New York Toy Fair with the express purpose of entering competitor showrooms to acquire catalogs.  See Dkt. No. 10215 (Offer of Proof, offering TX 9617 [Brawer email, subject ""Re: how are we doing on room nights for NYTF?" stating "I'd like to see if we can get shirin in for a few days to collect catalogues from other showrooms (2 nights)."]).

1 Vol. 1 (Jolicoeur) at 20:1-28:24 (same); TX 9546 (acquiring information about the

2 operation and play pattern of unreleased Barbie product from February 2007

3 planogram room).[7]  In fact, one MGA agent reported directly to Larian in 2002 that

4 she was "DOING SPY WORK FOR YOU" by taking photographs with a digital

5 camera "IN THE MIDDLE OF THEIR SHOWROOM".[8]

6    **C.    MGA's Misconduct Bars Recovery**

7    MGA's conduct at the New York and Nuremberg Toy Fairs is not misconduct

8 in the abstract; this is the same type of conduct done to collect the same types of

9 information at the same Toy Fairs.  It is conduct that has "directly 'infected' the

10 actual cause of action before the court."  Pond v. Insurance Co. of North America,

11 151 Cal. App. 3d 280, 290 (1984) (citation omitted).  It is directly related to the

12 transactions at issue in MGA's counterclaims-in-reply, pertaining to identical subject

13 matter.  Cf. TrafficSchool.com, Inc. v. Edriver, Inc., 633 F. Supp. 2d 1063, 1084

14 (C.D. Cal. 2008) (applying unclean hands doctrine to Lanham Act claim because

15 "Plaintiffs' registration of domain names that are confusing in precisely the same

16 manner that Defendants' domain name is confusing clearly relates to the subject

17 matter of Plaintiffs' suit.").  MGA's acquisition of the same types of information

18 about Mattel's unreleased products "renders inequitable the assertion of such rights

19 against the defendant."  Kendall-Jackson, 76 Cal. App. 4th at 978 (internal

20 quotations and citations omitted).  This is paradigmatic evidence of unclean hands.

21 MGA should not be permitted to undermine the integrity of the justice system by

22 recovering substantial damages for the very misconduct it too engaged in.  See

23 Kendall-Jackson, 76 Cal. App. 4th at 979 ("The unclean hands doctrine protects

24

25 [7]    Additional evidence, not admitted at trial, also shows MGA's widespread attempts to acquire this type of information.  See Dkt. No. 10215 (Offer of Proof, offering TX 9334 [acquiring licensee list and marketing sheet from Mattel showroom at January 2004 trade show]; TX 1939 [acquiring information about unreleased Barbie line before 2004 NYTF]; TX 8931 [acquiring information about the appearance and play pattern of unreleased My Scene and Barbie products from February 2003 planogram room]).
26
27
28 [8]    TX 9875 (emphasis in original).

1  judicial integrity and promotes justice.   It protects judicial integrity because
2  allowing a plaintiff with unclean hands to recover in an action creates doubts as to
3  the justice provided by the judicial system … The doctrine promotes justice by
4  making a plaintiff answer for his own misconduct in the action.") (internal
5  quotations and citations omitted).

6       It is of no moment that MGA's employees who acquired information about
7  unreleased Mattel products may not have used the precise methods used by the
8  Mattel employees at issue, such as by showing fake identification.  MGA's claim for
9  trade secret misappropriation is not based on the use (or non-use) of fake business
10 cards; it is based on the acquisition of information about unreleased products from
11 the toy fairs.  MGA has unclean hands when it comes to acquiring competitive
12 information at such toy fairs.  Because MGA came to court with unclean hands, it
13 should be denied relief.  See Adler v. Federal Republic of Nigeria, 219 F.3d 869,
14 877-878 (9th Cir. 2000) (affirming district court application of unclean hands to bar
15 Plaintiff's recovery on claims of fraud, conspiracy to commit fraud, and negligence);
16 TrafficSchool.com, Inc. v. Edriver, Inc., 633 F. Supp. 2d 1063, 1084 (C.D. Cal.
17 2008) (barring award of damages in Lanham Act claim based on plaintiff's unclean
18 hands); Intamin, Ltd. v. Magnetar Technologies Corp., 623 F. Supp. 2d 1055, 1077-
19 1078 (C.D. Cal. 2009) (granting summary judgment in patent infringement action
20 under the doctrine of unclean hands).

21 **II.    LACHES BARS MGA'S CLAIMS**

22      MGA has known about Sal Villasenor and the Market Intelligence group for
23 over half a decade, but intentionally delayed bringing its trade secret
24 misappropriation claims until discovery was closing in this case, less than a year
25 ago.   This unreasonable delay, and the resulting prejudice to Mattel, should
26 equitably bar any recovery for MGA under the doctrine of laches.

27

28

A.      **The Doctrine of Laches**

Laches applies when there is unreasonable delay by plaintiff, and prejudice to defendant.  Danjaq LLC v. Sony Corp., 263 F.3d 942, 951 (9th Cir. 2001).  Laches bars a trade secret misappropriation claim.  See Whittaker Corp. v. Execuair Corp., 736 F.2d 1341 (9th Cir. 1984) (acknowledging and declining to review trial court ruling that claim for misappropriation was barred by laches).

In determining the reasonableness of the delay, the delay should be measured from the time MGA should have been aware of its potential claims until it brought those claims against Mattel in August 2010.  This analysis is distinct from the analysis of whether MGA's claims are timely under the statute of limitations.  "The relation back provisions of Rule 15 are primarily concerned with alleviating unfair prejudice in circumstances involving statutes of limitations.  *It has no controlling force where, as here, a defendant's remedy is provided by the equitable doctrine of laches.*"  Brzozowski v. Corr. Physician Servs., Inc., 360 F.3d 173, 182 (3d Cir. 2004) (emphasis added).  "On the contrary, it has been held that delay *during litigation* may constitute such laches as would bar the granting of relief."  Tustin Cmty. Hosp., Inc. v. Santa Ana Cmty. Hosp. Ass'n., 89 Cal. App. 3d 889, 904 (1979) (emphasis added).[9]

There are two chief forms of prejudice sufficient to support a laches defense: evidentiary and expectations-based prejudice.  Danjaq LLC v. Sony Corp., 263 F.3d 942, 955 (9th Cir. 2001).  Either form, standing alone, meets the prejudice prong.  Id.  Where there is delay, some prejudice is presumed.  Jackson v. Axton, 25 F.3d 884, 889-890 (9th Cir. 1994).  Evidentiary prejudice consists of "lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died."  Danjaq, 263 F.3d at 955.  Expectations prejudice involves a "showing [by

---

[9]      See also Vernon Firefighters Assn., Local 2312 v. City of Vernon, 178 Cal. App. 3d 710, 720 (1986) ("There is no doubt but that the period of time to be (footnote continued)

1  defendant] that it took actions or suffered consequences that it would not have, had

2  the plaintiff brought suit promptly." Id.

3  **B.  MGA's Unreasonably Delayed In Bringing Its Claim**

4  The uncontroverted fact is that MGA delayed for years in bringing its trade

5  secret claims against Mattel.  Ron Brawer, an MGA executive who joined MGA

6  from Mattel, testified that he knew about the Toy Fair conduct MGA brought suit on

7  in late 2010 by the time he started at MGA – which was in 2004.[10]  He then

8  personally tried to recruit Sal Villasenor to work for MGA in 2006.[11]  Isaac Larian

9  admitted that, as of December 2009, he had been aware of Mattel's use of false

10  business cards to enter MGA showrooms for the "past few years".[12]  This is not

11  surprising, since Brawer – who knew in 2004 – reported directly to Larian the entire

12  time he was at MGA.[13]

13  Despite knowing of the Toy Fair conduct by no later than 2004, MGA sat on

14  its trade secret misappropriation claims for years, despite the ongoing, active

15  litigation between it and Mattel.  MGA brought a laundry list of claims against

16  Mattel in 2005, including trade dress infringement and unfair competition, but did

17  not bring a claim for trade secret misappropriation.[14]  Nor, after Mattel brought

18  counterclaims against MGA in 2007, did MGA bring these claims as counterclaims-

19  in-reply.[15]  This is so even though MGA propounded discovery on these issues

20  going as far back as 2006.  For example, in August 2007, MGA served a sweeping

21  request seeking documents regarding the use of "fake business cards" to "gain

22  access to MGA showrooms" or "Toy Fair displays."[16]  But MGA held back the

23  _____

24  considered as constituting possible laches includes the period of time the action is pending.  Filing of the action does not toll laches.").

[10]  5/30/2011 Trial Tr., Vol. 2 (Brawer) at 89:18-96:18.

25  [11]  See TX 22395.

[12]  See 3/25/2011 Trial Tr., Vol. 1 (Larian) at 141:20-149:11.

26  [13]  3/31/2011 Trial Tr., Vol. 1 (Brawer) at 81:13-15.

[14]  See MGA's 2005 Complaint.

27  [15]  See Dkt. No. 807.

[16]  MGA's Fifth Set of Requests for the Production of Documents and Things,

28  dated August 3, 2007, at Request No. 476 (emphasis added).

claims when answering Mattel's Third Amended Answer and Counterclaims in June 2009.[17]  It was not until August 2010 that MGA finally brought its trade secret misappropriation claims based on conduct it had known about for over six years – just as discovery in this case was closing.

This delay was unreasonable.  MGA has never offered an explanation as to why it did not bring these claims at any of its earlier opportunities.  There is none.  The Court has held that MGA's claim is timely in light of relation back principles, but, whether filed within the statutory time period or not, MGA's delay clearly was not reasonable.  See Danjaq, 263 F.3d at 954-55 (delay was unreasonable where plaintiff "has offered no viable justification for the delay; thus, this element of laches is also satisfied.").

### C.    Mattel Was Prejudiced

Mattel suffered evidentiary prejudice from MGA's unreasonable delay.  Evidence was "lost, stale or degraded" by the time these claims were finally tried.  Danjaq, 263 F.3d at 955.  In fact, MGA decided to actively hide behind the time passed when confronted with its non-production of evidence.  Emails show that MGA created compact discs – called "press kits" or "media kits" – filled with photos of unreleased products and handed them out to the press at MGA's showroom at New York Toy Fair.[18]  For example, in late January 2001, MGA executives discussed the high-resolution images of products included in the "media kit" to be distributed to "ALL print media" during the New York Toy Fair in February of that same year "after they leave the showroom."[19]  In another email,

---

[17]   See Dkt. No. 5798.
[18]   See 4/6/2011 Trial Tr., Vol. 2 (Jolicoeur) at 8:10-16; see also TX 23718.
[19]   See TX 23718 (01/23/2001 from D. Malacrida, MGA's Public Relations Manager, subject "NYTF CD's for Press":  "The Following Hi-Res Images are needed to be burned on 50 CD's, MAC format, for NYTF. . . . [I]t is what I need to distribute to ALL Print Media after they leave the showroom along with Our NYTF Releases. ***This will be our NYTF "Media Kit".***  These CD's are needed in NY at the showroom by Wednesday the 7th of February.  Here are the images needed: [lists, (footnote continued)

1  MGA executives discussed making product photos available to the media in

2  electronic format on a disc.[20]  MGA's Dennis Jolicoeur could not name a year in

3  which MGA had ***not*** distributed such a CD.[21]  The contents of these press kits are

4  crucial to determining whether the appearance, operation, play pattern, and FOB

5  price was in fact subject to reasonable efforts of secrecy at the time of Toy Fair.

6  However, ***none*** of the actual CDs were produced by MGA.  When asked about this

7  marked deficiency, Mr. Jolicoeur blamed it on the time passed: "It would not strike

8  me as unusual given the dating of this that they simply didn't exist."[22]  MGA's

9  laches was directly to blame.

10      MGA also failed to provide documents regarding the allegedly controlled

11  access to its purported trade secrets.  Specifically, MGA failed to produce ***any*** non-

12  disclosure agreements for the relevant toy fairs and years.  Instead, MGA offered

13  into evidence the language of a single non-disclosure agreement from the 2005

14  Hong Kong Toy Fair – where MGA does not allege any specific trade secrets were

15  misappropriated – and alleged that similar non-disclosure agreements existed at the

16  relevant toy fairs.[23]  Larian testified that he instructed his employees to look

17  "everywhere" for these sign-in sheets with the confidentiality language, but MGA

18  was not able to find them because too much time had passed.[24]  MGA's non-

19  production of these purported sign-in sheets made it impossible for Mattel to

20  analyze the language of the confidentiality obligation and formulate a proper

21  defense – or to prove they never existed in the first place.

22

23  _____

  among others, six alleged trade secrets: Bratz, Palm Puppies, Insectobots, Scooter
24  Samantha, Monkey See Monkey Do, Hello Kitty Scooter]."} (emphasis added).
     [20]    See TX 23770 (January 19, 2000 email to MGA executives suggesting that
25  MGA makes product photos available to media in electronic format on a disc: "Based
   on our Toy Fair experience, we would like to make MGA product photos available to
26  media in electronic format on disk.").
     [21]    See 4/6/2011 Trial Tr., Vol. 2 (Jolicoeur) at 8:10-9:14.
27   [22]    4/6/2011 Trial Tr., Vol. 2 (Jolicoeur) at 15:17-18.
     [23]    3/24/2011 Trial Tr., Vol. 2 (Larian) at 62:2-18.
28   [24]    3/24/2011 Trial Tr., Vol. 2 (Larian) at 63:7-64:9.

1       The prejudice also was evident in "witnesses whose memories have faded"

2   during MGA's delay.  <u>Danjaq</u>, 263 F.3d at 955.  Sal Villasenor could not recollect

3   important information such as whether he attended specific Toy Fairs in specific

4   years,[25] whether he had or hadn't told individuals about his use of fake business

5   cards[26] and whether he had seen public articles or MGA press releases in preparing

6   his reports.[27]  Had MGA brought these claims within a reasonable time, Mattel

7   could have used this and other testimony in its own defense.  MGA's unexcused

8   delay prejudiced Mattel.  <u>See</u>  <u>Whitefield v. AnheuserBusch, Inc.</u>, 820 F.2d 243, 246

9   (8th Cir. 1987) (barring Title VII claim due to laches where "[b]ased on the

10   impaired recollection of Anheuser-Busch's two key witnesses, we agree that the

11   district court's finding that Anheuser-Busch was prejudiced by the delay in bringing

12   this action.").

13       Because MGA's delay was unreasonable, and Mattel was prejudiced, MGA's

14   trade secret claims are barred by laches.

15   <u>**Conclusion**</u>

16       For the foregoing reasons, Mattel respectfully requests that the Court bar MGA

17   any recovery on its trade secret misappropriation claims.

18

19   DATED:  May 12, 2011             QUINN EMANUEL URQUHART &
                                 SULLIVAN. LLP

20

21                     By /s/ John B. Quinn

22                        John B. Quinn
                         Attorneys for Mattel, Inc., and Mattel de

23                        Mexico. S.A. de C.V.

24

25   [25]   <u>See</u>, <u>e.g.</u>, 3/23/2011 Trial Tr., Vol. 2 (Villasenor) at 89:1-14 (could not remember whether he attended New York Toy Fair in 2004).

26   [26]   <u>See</u>, <u>e.g.</u>, 3/23/2011 Trial Transcript, Vol. 1 (Villasenor) at 41:18-42:19 (could not remember whether he had told Ron Brawer); <u>id.</u> at 75:8-77:5 (could not

27   remember whether he had told Matt Bousquette); 3/24/2011 Trial Tr., Vol. 1 at 13:15-14:2 (could not remember whether he had told Neil Friedman).
    [27]   3/23/2011 Trial Tr., Vol. 1 (Villasenor) at 78:15-20; <u>id.</u> at 52:23-53:6.

28