1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
2    John B. Quinn (Bar No. 090378)
     (johnquinn@quinnemanuel.com)
3    Michael T. Zeller (Bar No. 196417)
     (michaelzeller@quinnemanuel.com)
4  865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-2543
5  Telephone:  (213) 443-3000
   Facsimile:   (213) 443-3100
6
7  Attorneys for Mattel, Inc. and Mattel de Mexico, S.A. de C.V.
8
9                UNITED STATES DISTRICT COURT
10              CENTRAL DISTRICT OF CALIFORNIA
11                    SOUTHERN DIVISION

| | |
|---|---|
| 12  MATTEL, INC., a Delaware corporation, et al., | CASE NO. CV 04-9049 DOC (RNBx) |
| 13                   Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 14         vs. | |
| 15  MGA ENTERTAINMENT, INC., a California corporation, et al., | Hon. David O. Carter |
| 16                   Defendant. | **MATTEL, INC.'S OPPOSITION TO MACHADO'S MOTION FOR AN AWARD OF ATTORNEY'S FEES UNDER CAL. CIV. CODE § 3426.4** |
| 17  AND CONSOLIDATED ACTIONS | |
| 18 | Hearing Date:  May 24, 2011 |
| 19 | Time:              9:00 a.m.<br>Place:             Courtroom 9D |
| 20 | Trial Date:        January 11, 2011 |

21
22
23
24
25
26
27
28

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

PRELIMINARY STATEMENT ................................................................1

STATEMENT OF FACTS .....................................................................1

ARGUMENT .........................................................................................6

I.    MATTEL'S TRADE SECRET THEFT CLAIM AGAINST MACHADO WAS NOT IN BAD FAITH..................................6

    A.    Bad Faith Requires Objective Speciousness And Subjective Improper Purpose ..........................................................6

    B.    Because Mattel's Trade Secret Misappropriation Claim Survived Summary Judgment And Proceeded To Trial, It Is Not Objectively Specious..................................................6

    C.    Mattel's Trade Secret Misappropriation Claim Against Machado Was Not Objectively Specious or in Bad Faith .....................7

    D.    Mattel's Claim for an Award of Unjust Enrichment Was Not Specious or In Bad Faith.............................................13

    E.    Mattel's Trade Secret Claim For the Stolen Point of Sale Data Was Not Specious or In Bad Faith..............................15

    F.    Mattel's Trade Secret Claim For The Presentation At The W Hotel Was Not Specious Or In Bad Faith.........................17

    G.    Mattel's Trade Secret Claim For The Viability Testing Report Was Not Specious Or In Bad Faith.............................18

    H.    Mattel's Claim That Machado Used Mattel's Trade Secrets Was Not Specious or In Bad Faith..................................19

    I.    That Vargas Ultimately Told The Truth About The Theft and Use of Mattel's Trade Secrets Does Not Prove Bad Faith....21

II.    MACHADO'S CLAIMED FEES ARE NOT REASONABLE.......23

    A.    Machado Fails To Apportion Attorney's Fees Among Claims...........23

    B.    Machado Overstates His Claimed Fees ..................................24

CONCLUSION.....................................................................................25

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>Cases</u>

4

<u>Ajaxo, Inc., v. ETrade Group, Inc.,</u>
  135 Cal. App. 4th 21 (2005)........................................................................10, 19

5

6

<u>Bell v. Vista Unified Sch. Dist.,</u>
  82 Cal. App. 4th 672 (2000).................................................................................23

7

<u>Bourns, Inc. v. Raychem Corp.,</u>
  331 F.3d 704 (9th Cir. 2003)...............................................................................14

8

9

<u>Bowoto v. Chevron Corp.,</u>
  2006 WL 2455761 (N.D. Cal. Aug. 22, 2006).................................................12

10

<u>CRS Recovery, Inc. v. Laxton,</u>
  600 F.3d 1138 (9th Cir. 2010)............................................................................12

11

12

<u>CRST Van Expedited, Inc. v. Werner Enters.,</u>
  479 F.3d 1099 (9th Cir. 2007)..............................................................................6

13

<u>Clark v. Bunker,</u>
  453 F.2d 1006 (9th Cir. 1972)............................................................................15

14

15

<u>Cole v. Miraflor,</u>
  2001 WL 138765 (S.D.N.Y Feb. 19, 2001)....................................................13

16

<u>Dalla, Inc. v. Petrossian,</u>
  2004 WL 1277571 (Cal. App. 2 Dist. June 10, 2004)........................................7

17

18

<u>Dealertrack, Inc. v. Huber,</u>
  460 F. Supp. 2d 1177 (C.D. Cal. 2006)..............................................................19

19

<u>Eagle v. Am. Tel. & Tel. Co.,</u>
  769 F.2d 541 (9th Cir. 1985)................................................................................9

20

21

<u>FLIR Sys., Inc. v. Parrish,</u>
  174 Cal. App. 4th 1270 (2009).................................................................6, 15, 21

22

<u>Forcier v. Microsoft Corp.,</u>
  123 F. Supp. 2d 520 (N.D. Cal. 2000)..................................................................6

23

24

<u>Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.,</u>
  95 Cal. App. 4th 1249 (2002)...............................................................................6

25

<u>JLM Formation, Inc. v. Form+Pac,</u>
  2004 WL 1858132 (N.D. Cal. Aug. 19, 2004)....................................................6

26

27

<u>Javier H. v. Garcia-Botello,</u>
  239 F.R.D. 342 (W.D.N.Y. 2006)......................................................................13

28

-ii-

Ketchum v. Moses,
  24 Cal. 4th 1122 (2001)..................................................................24

Norwood Operating Co. v. Beacon Promotions, Inc.,
  2006 WL 3103154 (D. Minn. Oct. 31, 2006)..................................7

Pixion, Inc. v. PlaceWare Inc.,
  2005 WL 3955890 (N.D. Cal. Apr. 22, 2005).................................7

Rakestraw v. Rodrigues,
  8 Cal. 3d 67 (1972)........................................................................10

Salton, Inc. v. Philips Domestic Appliances and Pers. Care B.V.,
  391 F.3d 871 (7th Cir. 2004)..........................................................15

Serrano v. Priest,
  20 Cal. 3d 25 (1977)......................................................................24

Silvaco Data Sys. v. Intel Corp.,
  184 Cal. App. 4th 210 (2010).........................................................11

Smith v. Gulf Oil Co.,
  995 F.2d 638 (6th Cir. 1993)............................................................9

Sullivan v. Hunt,
  350 F.3d 664 (7th Cir. 2003)..........................................................23

Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.,
  299 F. Supp. 2d 565 (E.D. Va. 2004) .......................................16, 18

Thayer v. Wells Fargo Bank, N.A.,
  92 Cal. App. 4th 819 (2001)...........................................................24

Trope v. Katz,
  11 Cal. 4th 274 (1995)...................................................................23

Vinyl Interactive, LLC v. Guarino,
  2009 WL 1228695 (N.D. Cal. May 1, 2009) .............................16, 18

Yield Dynamics, Inc. v. TEA Sys. Corp.,
  154 Cal. App. 4th 547 (2007) ..........................................................6

**Statutes**

18 U.S.C.
  § 1964(c) .......................................................................................23

Cal. Civ. Code
  § 3426.1 ..........................................................................................16
  § 3426.1(b) ......................................................................................19
  § 3426.1(d) .................................................................................16, 18
  § 3426.3(a) ......................................................................................14
  § 3426.4 .......................................................................................6, 25

1

Fed. R. Civ. P.
   Rule 50(a) ..................................................................................................... 13

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S OPPOSITION TO MACHADO'S MOTION FOR ATTORNEY'S FEES

1

## Preliminary Statement

Machado stole from Mattel thousands of pages of confidential documents. His computer and e-mails recorded the collection and downloading of these documents. Mexican law enforcement officials executing a search warrant on the offices of MGA Mexico discovered these documents (and others) on a CD in his office. Based on those facts, Mattel sued Machado who was then living in the United States. Then, at deposition and at trial, Machado admitted stealing and using the misappropriated Mattel trade secrets. Mattel's claim was not in bad faith, but well grounded in fact.

That this Court ultimately dismissed the trade secret claim against Machado at the end of trial on difficult and technical choice-of-law grounds—after denying Machado's and MGA's motions to dismiss and motions for summary judgment on this same basis and never reaching the merits of Mattel's claim—does not make Mattel's claim objectively specious or prove that Mattel exercised subjective bad faith in bringing it. Accordingly, Machado is entitled to no fees.

Even if the Court awards fees, the fees Machado claims are overstated and unreasonable. Machado recognizes that only one of the seven claims against him allow even conditional recovery of fees. He therefore concedes that apportionment is appropriate and backs out 75% of his fees, but only for a fraction of the entries. The 75% reduction must apply to all time Machado's attorneys billed before the other claims were resolved. In addition, Machado's counsel billed time (a) for "reviewing today's filings" when the vast majority had nothing to do with Machado, (b) for translating, hardly legal advice, and (c) for two partners to sit in court for over 40 days saying nothing or virtually nothing while dozens of witnesses testified about matters wholly unrelated to Mattel's claim against Machado. None of those fees are recoverable.

Mattel respectfully requests that the Court deny Machado's motion in its entirety.

## Statement of Facts

*Machado Admitted Stealing and Using Mattel Trade Secrets From California.* The facts forming the essential elements of Mattel's trade secret claim are largely

undisputed.  Machado claims there is a "complete lack of evidence" supporting Mattel's claim that the information had "economic value," was kept confidential, and was misappropriated (Mot. at 2), but Machado *admitted* all of these facts.   Machado admitted that in March 2004 he made a presentation to Larian at the W Hotel in Mexico using internal Mattel information.   3/4/11 Trial Tr. Vol. 1, at 39:16-25; 40:6-47:5. Machado admitted that he returned to Mattel and began downloading documents from Mattel servers after this March 2004 presentation to Larian. 3/4/11 Trial Tr. Vol. 1 (Machado) at 49:2-7.  Machado admitted that he coordinated with Vargas and Trueba to take these Mattel documents before leaving for MGA (3/4/11 Trial Tr. Vol. 2 (Machado) at 5:19-6:6).  Machado admitted he took documents from Mattel that he thought would be useful at MGA (3/4/11 Trial Tr. Vol. 2 (Machado) at 46:17-22).  And Machado admitted he in fact took the Mattel documents with him to MGA (3/4/11 Trial Tr. Vol. 1 (Machado) at 60:19-61:3), and that these included "internal Mattel information and internal confidential Mattel information."  3/4/11 Trial Tr. Vol. 1 (Machado) at 49-50.  Thus, Machado's own admissions establish the basis for Mattel's claim—he took confidential Mattel information to a competitor because he believed it would be useful to him in his new job.

Mattel's belief that the claims were appropriately brought under California law had ample factual basis as well.  The law presumes as much.  Machado claims there was no evidence that Mattel's servers were in California or that Machado "reached out to California servers to copy files" (Mot. at 3, 4), but Machado admitted the opposite. See 3/4/11 Trial Tr. Vol. 1 (Machado) at 53:7-54:17 ("Q: You took documents that you knew came from Mattel here in California, correct?  A:  Yes.  I copied some files, yes." . . . Q:  You understood that the centralized computer systems of Mattel are here in the United States?  California and Arizona?  A:  I know now. . . . Q: Well, you didn't think that Mattel, Inc., the parent here in California, had all of its computers with the systems with these documents on them there in Mexico, did you?  A:  I didn't think that.") (objections omitted).

-2-

Indeed, the Court previously noted the trial testimony that the two documents the jury found to be trade secrets had originated from California.  See Dkt. No. 10417 at 5 (noting that TX 6739, which Machado took and which was found by the jury to be a Mattel trade secret, was "stored on servers in the United States) (citing 3/10/11 Trial Tr. Vol. 1, at 81:11-14); id. (noting that TX 7104, which Machado took from Mattel and which was found by the jury to be a Mattel trade secret, was "created in El Segundo, California.") (citing 3/9/11 Trial Tr. Vol. 2 at 83-99).  Indeed, the testimony at trial established that the Barbie Preliminary Line List (TX 7104) "didn't exist outside of Mattel El Segundo" as of April 2004 when Machado stole it.

Machado then hid his thefts from others at Mattel (id. at 58:5-59:15), and sent an email to Larian celebrating how much damage he, Vargas, and Trueba had done to Mattel (TX 6437; Mar. 4, 2011 Trial Tr. Vol. 2 (Machado) at 15:19-16:16).  See generally Mattel's Opposition to Machado's Motion for Summary Judgment at 1-7 (Dkt. No. 9186).

*Mattel timely files RICO and other claims against Machado.*  Mattel's claims against Machado were filed on November 20, 2006.  Dkt. No. 89.  Mattel pleaded claims against Machado for violations of the RICO Act, Conspiracy to Violate the RICO Act, Misappropriation of Trade Secrets, Breach of Fiduciary Duty, Breach of Duty of Loyalty, Conversion, Unfair Competition, and for Declaratory Relief. Machado never moved to dismiss those claims and discovery proceeded.  Machado moved for partial summary judgment, which the Court granted in part and denied in part, allowing the misappropriation of trade secrets claim to proceed to trial.  Amended Summary Judgment Order, Jan. 5, 2011 (Dkt. No. 9600).  The Court noted that there were multiple factual issues regarding Mattel's trade secret claims against Machado that precluded summary judgment.  These included a "genuine issue of material fact as to whether a 'true conflict' exists between California and Mexico" regarding the choice of law question (id. at 56-57); "a genuine issue of material fact as to whether the documents resided on Mattel's California servers" (id. at 57); the "factual dispute runs

to the heart of Mattel's claim against Machado and its resolution would require the examination of evidence not cited by the parties' submissions" (id. at 57 n.24); "a genuine issue of material fact as to the situs of the injury, since the parties do not agree about (1) which Mattel entity owned the documents; (2) whether MGA Mexico or MGA used the documents; and (3) whether the three employees accessed Mattel's El Segundo servers" (id. at 58); "a genuine issue of material fact as to whether Mattel or Mattel Mexico have standing to bring their claims against Machado, Trueba, and Vargas" (id. at 60); "genuine issues of material fact as to whether any of the documents claimed to be trade secrets derived economic value from not being generally known" (id.); "genuine issues of material fact as to whether any of the documents claimed to be trade secrets were the subject of reasonable efforts to maintain secrecy" (id.); and "a genuine issue of material fact as to whether Mattel suffered harm and/or MGA benefitted as a result of Machado, Vargas, and Trueba's alleged misappropriation of trade secret documents" (id. at 62).

*At Trial, Machado Admits More Than He Did At Deposition.*  At trial, Machado admitted many more details than he did at deposition or during summary judgment proceedings.  For example, at trial, Machado admitted multiple times that he believed he owed duties to Mattel Inc. and to Mattel Mexico, long after the Court's finding that Machado did not owe any duties to either company, including obligations "not to take or misuse the internal confidential  Mattel information of any Mattel company" regardless of the name of the Mattel entity.  3/4/11 Trial Tr. Vol. 1 (Machado) at 17:18-22 ("Q.  You certainly understood that you had obligations to Mattel de Mexico, correct? A:  Yes.") (objections omitted); Id. at 24:5-16 (admitting that he agreed "not to divulge any company information to unauthorized recipients"); Id. at 31:6-11 ("Q. And you understood that as part of your obligations while you were there for -- working for Mattel in Mexico, that you were not to take or give to other people outside the company, without permission, confidential information you had access to, right? A. Yes."); Id. Vol. 4 (Machado) at 53:12-25 (no reason to doubt he had obligations to

-4-

MATTEL'S OPPOSITION TO MACHADO'S MOTION FOR ATTORNEY'S FEES

1  Mattel); Id. Vol. 4 (Machado) at 54:10-20 (admitting that he knew "while [he was] a

2  Mattel employee that [he] had an  obligation not to take or misuse the internal

3  confidential  Mattel information of any Mattel company, right, regardless  of what the

4  name of it was").  Machado also admitted at trial that he spent "around two weeks"

5  going through Mattel's files to decide which ones he should take.  3/4/11 Trial Tr. Vol.

6  1 (Machado) at 51:3-8.  He admitted that he re-filled that USB drive with stolen Mattel

7  documents "around eight to ten" times.  Id. at 58:14-18.

8      *The Court Grants Judgment as a Matter of Law on Technical Choice of Law*

9  *Grounds.*  Near the end of trial, Machado moved for judgment as a matter of law.  The

10  Court recognized that the choice of law question was a close one:

11      THE COURT: . . . "On the other  hand, there is a strong argument as
       follows: He's not just a Mexican citizen who steals documents relating to
12      Mattel Mexico, he also eventually has  what I call a "backward nexus" to
       the United States.  He  comes to the United States within a year and a half
13      and  becomes the vice president of MGA; and, second, that the documents
       that flow in the  Internet age  are not uniquely Mexican documents
14      pertaining to Mexico Wal-Mart at all, that they're documents that also
       flow across on the Internet . . . ."
15
       . . .
16
       "[T]here is a huge nexus, if you will, to this country."
17
       . . .
18
       You've got transactions taking place back and forth across international
19      boundaries, Mr. Larian flies all the way to Mexico, even if it's Servicios
       on the Mattel side, it's still MGA Mexico on the MGA side, and he's not
20      only employed, but in this Internet age, it's not just documents in Mexico
       that he has access to, somehow he's got documents that come from the
21      Mattel El Segundo, and the most important of those documents seem to
       be, from Mr. Eckert's perspective, this local strategy.  4/2/11 Trial Tr. at
22      4:15-5:21, 7:23-8:1, 10:1-10.

23  On April 6, 2011, the Court granted Machado's Motion for Judgment as a Matter of

24  Law on choice-of-law grounds, finding that, as to him, Mexico's two-year statute of

25  limitations applied and the misappropriation claim against Machado was time barred.

26  Dkt. No. 10417 at 9-10.

27

28

00505.07975/4132190.6

-5-

**Argument**

I.   **MATTEL'S TRADE SECRET THEFT CLAIM AGAINST MACHADO WAS NOT IN BAD FAITH**

     A.   **Bad Faith Requires Objective Speciousness And Subjective Improper Purpose**

       Under <u>Cal. Civ. Code</u> § 3426.4, a court may award "reasonably attorney's fees and costs" if it concludes that "a claim of misappropriation is made in bad faith." <u>See</u> <u>Cal. Civ. Code</u> § 3426.4.  To prove bad faith, Machado must prove (1) objective speciousness of the claim, *and* (2) subjective bad faith in bringing or maintaining the action, *i.e.*, for an improper purpose (emphasis added). <u>FLIR Sys., Inc. v. Parrish</u>, 174 Cal. App. 4th 1270, 1275 (2009) (citing <u>Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.</u>, 95 Cal. App. 4th 1249, 1262 (2002); <u>see</u> <u>also</u> <u>CRST Van Expedited, Inc. v. Werner Enters.</u>, 479 F.3d 1099, 1112 (9th Cir. 2007); <u>Yield Dynamics, Inc. v. TEA Sys. Corp.</u>, 154 Cal. App. 4th 547, 578 (2007).  "An objectively specious claim is one that is completely unsupported by the evidence, or one that lacks proof as to one of its essential elements." <u>JLM Formation, Inc. v. Form+Pac</u>, 2004 WL 1858132, at *2 (N.D. Cal. Aug. 19, 2004) (citations omitted).  "To be deterrable, conduct must be at least reckless or grossly negligent, if not intentional or willful." <u>Forcier v. Microsoft Corp.</u>, 123 F. Supp. 2d 520, 529 (N.D. Cal. 2000) ("The Court finds no such evidence in this case. While plaintiffs' claims are barred, they are not specious. Plaintiffs presented evidence to support their claims and vigorously pursued them.").

     B.   **Because Mattel's Trade Secret Misappropriation Claim Survived Summary Judgment And Proceeded To Trial, It Is Not Objectively Specious**

       The arguments in Machado's brief reflect and implicitly concede the weakness of his motion.  Machado never addresses his repeated admission, much less refutes, of the substantive essential elements of Mattel's claim for trade secret theft.  The entire brief

1  focuses on isolated and peripheral issues and avoids the substantive merits of Mattel's
2  claim completely.

3      The Court need not address the collateral issues that Machado raises.  If a trade
4  secret theft claim withstands a motion for summary judgment (Dkt. No. 9073 at 38-39),
5  as Mattel's claim did here, then by definition it is not objectively specious.  See Pixion,
6  Inc. v. PlaceWare Inc., 2005 WL 3955890, at *3 (N.D. Cal. Apr. 22, 2005) (finding no
7  bad faith and denying motion for attorney's fees under CUTSA where "many of
8  Pinion's trade secrets, as pled, had been publicly disclosed, but [] four of the trade
9  secrets were protectible."); see Norwood Operating Co. v. Beacon Promotions, Inc.,
10 2006 WL 3103154, at *2-3 (D. Minn. Oct. 31, 2006) ("In addressing the trade secret
11 claims on summary judgment, the Court did find genuine issues of material fact as to
12 some elements of these claims. Accordingly, the Court finds that the trade secret claims
13 were not objectively specious."); Dalla, Inc. v. Petrossian, 2004 WL 1277571, 4 (Cal.
14 App. 2 Dist. June 10, 2004) (where summary judgment was denied because there were
15 triable issues of fact, trial court did not abuse its discretion in reasoning there was "at
16 least probable cause for that cause of action, and therefore bringing the cause of action
17 to trial court could not be found to be 'objectively specious,'" and no attorneys fees were
18 warranted under § 3426.4) (internal cites omitted).

19      **C.**   **Mattel's Trade Secret Misappropriation Claim Against Machado Was**
20           **Not Objectively Specious or in Bad Faith**

21      Rather than addressing the merits of Mattel's claim, Machado asks the Court to
22 find bad faith because, before suing Machado, Mattel should have anticipated that the
23 Court would—after a choice-of-law analysis—reject the presumption that California
24 law applies and would find that the Mexican statute of limitations would apply to
25 Machado's thefts of property belonging to both Mattel and Mattel de Mexico.  No
26 authority requires such foresight.  As the Court recognized, the choice-of-law question
27 was difficult, with both sides having merit.  Nevertheless, Mattel will address and
28 refutes Machado's arguments on this point.

*First*, Machado argues that Mattel "failed to put on any evidence that Mr. Machado reached out to California servers to copy files." (Mot. at 3)  This does not refute Machado's admitted thefts, and it is wrong, Machado admitted he never believed that Mattel was storing its documents in Mexico – rather, they were stored on servers in California.  3/4/11 Trial Tr. Vol. 1 (Machado) at 53:7-54:17.  Machado *never* denied that he took Mattel's documents when he spent weeks collecting Mattel's documents before leaving for MGA, some of which he admitted came from Mattel in California. "Q. You took documents that you knew came from Mattel here in California, correct? A. Yes.  I copied some files, yes." 3/4/11 Trial Tr. Vol. 1 (Machado) at 53:10-12.  See also id. at 49:2-12, 50:20-51:8, 52:8-13, 53:3-6.  Trueba also solicited documents for Machado to steal from California.  TX 8147.  Two of the trade secret documents taken by Machado, the Viability Testing Report and the Barbie All Worlds Line List, were stored on Mattel servers in the United States.  3/10/11 Trial Tr. Vol. 1 (Willensky) at 80:19-25 (Viability Testing Report, TX 6739, was created in the United States and stored on Mattel servers in the United States); 3/9/11 Trial Tr. Vol. 2 (Nordquist) at 83:12-87:5 (TX 7104, Barbie All Worlds Line List, was created in United States), 99:23-104:7 (TX 7104 was stored on Mattel servers in the United States), TX 7104, TX 7110.  The Court, at hearing on Machado's JMOL, even agreed that Mattel had "a strong argument" and that there was "a huge nexus, if you will, to this country" regarding the facts surrounding Machado's actions.  See 4/2/11 Trial Tr. at 4:15-5:21, 7:23-8:1, 10:1-10.

*Second*, Machado argues that he raised the California borrowing statute prior to his JMOL.  (Mot. at 4-5)  This does not go to the merits of Mattel's claims.  Even so, that Machado dug deep enough into the summary judgment hearing record to find passing references to the borrowing statute—raised apparently in an attempt to sandbag Mattel—hardly makes Mattel's claim objectively specious.  If Machado were relying on the borrowing statute, one would have expected it in his answers, his Motion for Summary Judgment, or a pre-trial conference order.  See Dkt. No. 8623 at 22

-8-

MATTEL'S OPPOSITION TO MACHADO'S MOTION FOR ATTORNEY'S FEES

(Machado's Answer to Fourth Amended Counterclaims); Dkt. No. 9073 (Machado's Motion for Summary Judgment); Dkt. No. 9855, Exh. A (Second Amended Final Pre-Trial Conference Order). This is a waiver. See Smith v. Gulf Oil Co., 995 F.2d 638, 642-44 (6th Cir. 1993) (trial court correctly precluded legal theory that was not raised until during trial); Eagle v. Am. Tel. & Tel. Co., 769 F.2d 541, 548 (9th Cir. 1985) (failure to include theory in pre-trial conference order constituted waiver).

*Third*, Mattel presented circumstantial evidence that Larian induced Machado, from both California and Mexico, to steal Mattel's trade secrets. See 2/10/11 Trial Tr. Vol. 3 (Larian) at 46:21-47:21; 2/10/11 Trial Tr. Vol. 2 (Larian) at 49:9-17; see also 2/10/11 Trial Tr. Vol. 2 (Larian) at 39:14-40:9; 2/17/11 Trial Tr. Vol. 3, (Larian) at 51:21-53:1, 55:2-5; 3/4/11 Trial Tr. Vol. 1 (Machado) at 34:11-35:24, 38:8-39:7, 49:2-50:1; 3/4/11 Trial Tr. Vol. 3 (Machado) at 12:14-13:25, 15:6-15:14, 38:10-39:1; 3/4/11 Trial Tr. Vol. 4 (Machado) at 58:19-59:14. Whether Larian induced Machado or not has nothing to do with the merits of Mattel's claim against Machado. Nonetheless, Mattel presented circumstantial evidence that Larian induced the theft. Machado admitted that, immediately following his meeting with Larian, he instituted his plan to take Mattel documents to MGA. 3/4/11 Trial Tr. Vol. 1 (Machado) at 49:2-19. And after he left Mattel, Machado immediately exchanged emails with Larian in California and "reported" on his activities, including his triumphant exclamation that "Rome is on fire." See 3/4/11 Trial Tr. Vol. 2 (Machado) at 15:19-17:25 (TX 6437), 2/10/11 Trial Tr. Vol. 2 (Larian) at 50:10-57:13 (TX 3609, TX 6416, TX 3617, TX 3618); 2/10/11 Trial Tr. Vol. 3 (Larian) at 51:22-52:23 (TX 6785); 3/4/11 Trial Tr. Vol. 2 (Machado) at 20:25-21:23, 25:9-27:7 (TX 6746); 3/4/11 Trial Tr. Vol. 4 (Machado) at 45:20-50:9. Moreover, when Machado, Trueba, and Vargas were taking these Mattel documents, they knew the documents were confidential. See, e.g., 3/4/11 Trial Tr. Vol. 1 (Machado) at 49:24-50:9, 59:19-24; Id. at Vol. 2 (Machado) at 5:25-6:6, 48:8-18.

In addition to evidence of inducement, Mattel also presented evidence that Larian and MGA knew of and ratified Machado's thefts of Mattel trade secrets for the benefit

-9-

00505.07975/4132190.6

of MGA.  Larian testified that he told Machado, Trueba, and Vargas to "only bring their brains."  This statement was meaningless, and Machado and the others knew it.  Once Larian learned the full scope of their theft—and that they directly disobeyed his "order" only to bring "their brains"—Larian did not reprimand or discipline them.  <u>See</u>, <u>e.g.</u>, 2/10/11 Trial Tr. Vol. 3 (Larian) at 46:14-47:18, 49:2-51:1.  He embraced them and ratified their thefts.  Larian testified that MGA paid them bonuses after the thefts, and even paid bonuses after the October 2005 search of MGA Mexico offices by the Mexican authorities.  <u>Id.</u> at 65:19-67:4.  Machado was promoted.  <u>Id.</u> at 46:10-13.  Larian did nothing to ensure that Vargas or Trueba were not promoted.  2/10/11 Trial Tr. Vol. 3 (Larian) at 47:12-16, 49:12-17.  MGA and Larian provided and paid for lawyers for Machado, Vargas and Trueba, and continued to pay *after* they left MGA. 2/10/11 Trial Tr. Vol. 3 (Larian) at 64:13-65:18.  This is ratification.  <u>Rakestraw v. Rodrigues</u>, 8 Cal. 3d 67, 73 (1972) (principal may adopt agent's act expressly or by implication based on conduct that reflects an intention to consent to or adopt the act, or may be inferred from conduct that is "inconsistent with any reasonable intention on his part, other than that he intended approving and adopting it")(citation omitted).

Willful ignorance by Larian and MGA also proves ratification.  <u>Ajaxo, Inc., v. E*Trade Group, Inc.</u>, 135 Cal. App. 4th 21, 68 (2005) (finding that failure to investigate and turning a blind eye support ratification).  Kuemmerle admitted that neither she nor anyone else at MGA Mexico bothered to look for additional Mattel documents after the search of the MGA Mexico offices of Machado, Vargas, and Trueba by the Mexican authorities.  2/23/11 Trial Tr. Vol. 2 (Kuemmerle) at 31:17-32:21.

*Fourth*, Machado argues erroneously that "the only evidence on ownership of the documents is Mr. Machado's employment contract."  (Mot. at 5)  To the contrary, Mattel introduced evidence that various documents were owned by other Mattel entities. For example, Mattel's 2004 Girls Full Year Mexico Viability Testing Report (TX 6739) was created by Mattel, Inc. employees in the United States and stored on

-10-

Mattel's servers in the United States.  3/10/11 Trial Tr. Vol. 1 (Willensky) at 80:19-25. The Barbie 2005 Preliminary Line List (TX 7104) was created by Mattel, Inc. employees in El Segundo, California.  3/9/11 Trial Tr. Vol. 2 (Nordquist) at 83:12-87.5; 3/9/11 Trial Tr. Vol. 2 (Nordquist) at 99:23-104:7.  Mattel also entered evidence that the entire purpose of Mattel Servicios was to provide services to Mattel Mexico.  <u>See</u>, <u>e.g.</u>, TX 23846 (agreement between Mattel Mexico and Mattel Servicios); 3/8/11 Trial Tr. Vol. 1 (Cavassuto) at 29:5-13 ("the purpose of Mattel Servicios is to provide services to Mattel de Mexico.").  Thus, Mattel introduced evidence that, independent of any agreement with Machado, Mattel Inc. and Mattel Mexico owned at least some of the stolen trade secrets, or at the least had standing to bring a misappropriation claim for their theft.  <u>See</u> <u>Silvaco Data Sys. v. Intel Corp.</u>, 184 Cal. App. 4th 210, 220-21 (2010) ("The *sine qua non* of a trade secret, then, is the plaintiff's possession of information of a type that can, at the possessor's option, be made known to others, or withheld from them, *i.e.*, kept secret.").  And, the jury found documents Machado stole to be Mattel trade secrets.  Dkt. No. 10518 at 7.

*Fifth*, Machado argues that Mattel's claim was specious because "the court found on summary judgment [that] Mr. Machado owed no obligations to Mattel, Inc." (Mot. at 5)  Whether Machado had contractual obligations to Mattel or not, he still had a legal obligation not to steal what he admitted did not belong to him.  3/4/11 Trial Tr. Vol. 1 (Machado) at 46:25-47:5; <u>id.</u> Vol. 2 (Machado) at 5:22-6:6.  Machado recognized this common sense truth even after the motion for summary judgment ruling.  He admitted that his obligations to Mattel, Inc. and Mattel Mexico included the obligation "not to take or misuse the internal confidential  Mattel information of any Mattel company" regardless of the name of the Mattel entity.  3/4/11 Trial Tr. Vol. 1 (Machado) at 17:18-22 ("Q.  You certainly understood that you had obligations to Mattel de Mexico, correct? A:  Yes.") (objections omitted); <u>Id.</u> at 24:5-16 (admitting that he agreed "not to divulge any company information to unauthorized recipients"); <u>Id.</u> at 31:6-11 ("Q.  And you understood that as part of your obligations while you were there for -- working for

Mattel in Mexico, that you were not to take or give to other people outside the company, without permission, confidential information you had access to, right? A. Yes."); Id. Vol. 4 (Machado) at 54:10-20 (admitting that he knew "while [he was] a Mattel employee that [he] had an  obligation not to take or misuse the internal confidential  Mattel information of any Mattel company, right, regardless  of what the name of it was").

*Sixth*, Machado argues that Mattel "*never* put forward *any* legitimate basis for applying California law to Mattel de Mexico's trade secret claim." (Mot. at 6, emphasis in original).  This argument, again ignores Machado's admissions, but also turns choice-of-law analysis on its head.  California law presumptively applies.  Bowoto v. Chevron Corp., 2006 WL 2455761, at *7 (N.D. Cal. Aug. 22, 2006) ("The choice of law analysis includes a presumption that California law applies; the proponent of foreign law therefore bears the burden of showing that there is a compelling reason to displace California law.")  Machado, not Mattel, had to present evidence that Mexico, not California, has a more significant governmental interest in having its law applied to this dispute.  CRS Recovery, Inc. v. Laxton, 600 F.3d 1138, 1142 (9th Cir. 2010) ("the law of the forum state will be invoked, and the burden is with the proponent of foreign law to show that the foreign rule of decision will further the interests of that state").  Machado failed to make a persuasive argument on this point at summary judgment, and the Court acknowledged that California law could apply to the claims against Machado.  See, e.g., Hearing Tr. 4/2/11 at 5:3-18 ("Now, the Court could find that California law applies" when discussing documents taken from Mattel Mexico).  The Court found "a genuine issue of material fact as to whether a 'true conflict' exists between California and Mexico."  Amended Order on Motions for Summary Judgment, Dkt. No. 9600 at 56-57.  Where both the presumption and evidence supported the application of California law, Mattel's argument is not specious or in bad faith, but completely proper, even if the Court eventually ruled that Mexico law applied.  See Section I. C (claims that survive summary judgment cannot be objectively specious).

*Seventh*, Machado argues that Mattel's claims were specious because Mattel argued that a discovery stay tolled the limitations period. Again, Machado advances a technical legal argument rather than addressing the merits of Machado's substantive admissions. (Mot. at 6)  Mattel cited authorities holding that a stay tolls a limitations period.  <u>See</u> Mattel, Inc. and Mattel Mexico's Opposition To Gustavo Machado's Motion For Judgment As A Matter Of Law Pursuant To Fed. R. Civ. P. 50(a), Dkt. No. 10330 at 10.  One cited case specifically found that a stay of *discovery alone* will toll a statute of limitations.  <u>See</u> <u>Javier H. v. Garcia-Botello</u>, 239 F.R.D. 342, 347-48 (W.D.N.Y. 2006) ("the statute of limitations was equitably tolled during the stay of discovery") (granting motion to join additional defendants and finding such claims were timely filed based upon equitable tolling due to discovery stay lasting twenty months).  <u>Garcia-Botello</u> relied on an earlier opinion that also found that a stay in discovery tolled the statute of limitations.  <u>See</u> <u>Cole v. Miraflor</u>, 2001 WL 138765, *6 (S.D.N.Y Feb. 19, 2001) ("The limitations period was equitably tolled during the stay of discovery.").  That the Court disagreed with Mattel's supported legal argument does not make Mattel's trade secret claim objectively specious or in subjective bad faith.

### D.   <u>Mattel's Claim for an Award of Unjust Enrichment Was Not Specious or In Bad Faith</u>

Machado argues that Mattel's expert, Michael Wagner, "'could find no evidence' that 'Mattel lost any sales' in Mexico." (Mot. at 7)  So? Machado missed the point. Mattel's election not to pursue lost profits damages hardly renders Mattel's claim objectively specious.  Mattel never pursued a lost profits theory of damages, as is its right.  Mattel did not ask Mr. Wagner to spend time researching or developing such a theory.  Even so, Mattel presented evidence of lost market share in Mexico. *Machado himself* reported to Larian and others that their efforts in Mexico were causing Mattel to lose market share there.  <u>See</u>, <u>e.g.</u>, TX 6746; 3/4/11 Trial Tr. Vol. 2 (Machado) at 26:11-27:13 (describing email from Machado to Larian detailing Mattel loss of market share).

1    Wagner pursued a well-recognized theory of damages based on Mattel's

2    investment in the creation of the documents that Machado stole. See, e.g., Cal. Civ.

3    Code § 3426.3(a) ("A complainant also may recover for the unjust enrichment caused

4    by misappropriation that is not taken into account in computing damages for actual

5    loss."); Bourns, Inc. v. Raychem Corp., 331 F.3d 704, 709-10 (9th Cir. 2003) (affirming

6    unjust enrichment damages award for trade secret misappropriation based on

7    development costs avoided in light of plaintiff's actual development cost). Machado

8    argues that "*Mr. Machado* would *not* have received a benefit" from taking Mattel's

9    documents. (Mot. at 7, emphasis in original) But this is not true. Machado admitted

10   that he took the Mattel documents so they would help *him*. See e.g., 3/4/11 Trial Tr.

11   Vol. 1 (Machado) at 49:9-15, 60:10-17, 61:11-18; id. at Vol. 2 (Machado) at 42:17-20

12   ("Q. So if I understand what you're saying, you used that information, this Mattel

13   information or information that Mattel had paid for in order to get your job; right? A.

14   Yes."). Machado admitted using the Mattel information to get his very job at MGA –

15   something that had value to Machado or he would not have sought it out.

16   Moreover, Machado did in fact stand to benefit personally from taking Mattel's

17   trade secrets. Machado's was eligible to and did receive sales bonuses that were

18   directly tied to MGA Mexico sales. 3/4/11 Trial Tr. Vol. 3 (Machado) at 37:19-38:5

19   ("there were different levels of sales and different bonus according to which level of

20   sales"). By using Mattel documents to increase sales faster than he could have done so

21   without them, Machado stood to increase his personal bonus payment. In fact, Mattel

22   introduced evidence that MGA claimed a 90% increase in sales in the Mexico market in

23   just one year in the "Fashion Doll category." See TX 21068; 2/10/11 Trial Tr. Vol. 3

24   (Larian) at 71:24-72:13, 73:7-17. Machado also received from MGA a salary that was

25   62.2% higher than he had at Mattel, Feb. 25, 2011 Trial Tr. Vol. 2 (Kinrich) at 37:17-

26   44:2, 58:8-78:7, received bonuses at MGA, 3/4/11 Trial Tr. Vol. 4 (Machado) at 67:19-

27   68:5, and received a promotion and had the fees of his lawyers paid by MGA, 3/4/11

28   Trial Tr. Vol. 1 (Machado) at 7:8-16 (promotion), 12:19-21 (attorney fees paid for five

1  years).  These are all benefits a jury could have found Machado obtained because of his

2  thefts.

3  Moreover, Machado's potential liability was not limited to his own personal

4  benefits.  Machado was a joint tortfeasor with MGA, and as such could have been liable

5  for the benefits that MGA received as well.  See Clark v. Bunker, 453 F.2d 1006, 1110-

6  11 (9th Cir. 1972); Salton, Inc. v. Philips Domestic Appliances and Pers. Care B.V.,

7  391 F.3d 871, 877 (7th Cir. 2004) ("Under the principle of joint and several liability,

8  which governs not only the common law tort of misappropriation of trade secrets but

9  also the federal statutory tort of copyright infringement, the victim of a tort is entitled to

10  sue any of the joint tortfeasors and recover his entire damages from that tortfeasor.")

11  Machado cites to Flir Systems for the proposition that a trade secret

12  misappropriation claim was objectively specious where the plaintiff "suffered no

13  economic harm."  (Mot. at 8).  As discussed above, Mattel introduced evidence,

14  including Machado's own e-mails to Larian, that Machado and MGA did harm Mattel

15  by using Mattel's trade secrets to cause Mattel to lose market share.  See, e.g., TX 6746;

16  3/4/11 Trial Tr. Vol. 2 (Machado) at 26:11-27:13 (describing email from Machado to

17  Larian detailing Mattel loss of market share).  And, Machado was jointly and severally

18  liable for any harm the thefts caused, whether attributable to Machado or MGA. It was

19  not specious or in bad faith for Mattel to seek a remedy from Machado for his admitted

20  theft.

21  **E.    Mattel's Trade Secret Claim For the Stolen Point of Sale Data Was**

22  **Not Specious or In Bad Faith.**

23  Machado continues to misstate Mattel's trade secret claim regarding the point of

24  sale data that Mattel obtained from certain retailers.  Mattel introduced evidence,

25  including from Mr. Machado himself, that the misappropriated POS documents are kept

26  confidential, see Mar. 4, 2011 Trial Tr. Vol. 2 (Machado) at 37:22-38:10, 39:12-40:2;

27  are valuable to competitors, see Mar. 8, 2011 Trial Tr. Vol. 1 (Cavassuto) at 37:25-

28  38:24, 41:23-42:3, 44:3-23, 45:25-46:14, 46:21-47:4; and are not available to Mattel's

-15-

00505.07975/4132190.6

competitors, <u>see</u> Mar. 8, 2011 Trial Tr. Vol. 1 (Cavassuto) at 39:11-13, 40:1-3, 49:9-11. That Mattel's documents may include data that can be purchased does not vitiate their status as trade secrets.  The documents are not just raw data compilations, but also reflect Mattel's analyses of that data.  <u>See</u>, <u>e.g.</u>, TX 6734 (analyzing Mattel internal quotas to total customer bookings); Mar. 8, 2011 Trial Tr. Vol. 1 (Cavassuto) at 43:9-45:10 (confirming TX 6734 contains "total in Mattel" sell-through data, not merely retailer-specific, and analyzes "how Mattel de Mexico was selling in and how the product was moving in the marketplace"); TX 6738 (analyzing multiple months of sell-through data); Mar. 8, 2011 Trial Tr. Vol. 1 (Cavassuto) at 45:11-46:8 (confirming document as an internal Mattel report analyzing multiple months of sell-through data); TX 7078 (analyzing Mattel internal quotas to total customer bookings, identifying customer as "BID" rather than an individual retailer); Mar. 8, 2011 Trial Tr. Vol. 1 (Cavassuto) at 47:5-11 (confirming "BID" documents are essentially an "integrated database and it shows the top seven or eight customers in Mattel").  They are trade secrets.  <u>See</u> <u>Cal. Civ. Code</u> § 3426.1(d) (identifying *compilations*, methods, techniques, and processes as potential trade secrets); <u>Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.</u>, 299 F. Supp. 2d 565, 574-75 (E.D. Va. 2004) (denying motion to dismiss claim that analysis of data is trade secret under trade secret language similar to <u>Cal. Civ. Code</u> § 3426.1); <u>Vinyl Interactive, LLC v. Guarino</u>, 2009 WL 1228695, at *7-8 (N.D. Cal. May 1, 2009) (granting preliminary injunction regarding analysis of information asserted as trade secret under <u>Cal. Civ. Code</u> § 3426.1).

Machado argues that because each retailer has its own raw point of sale data for Mattel products, the trade secret is "generally known to the public or to other persons who can obtain economic value from its disclosure or use," and Mattel's internal analysis of that data has no trade secret status.  Mot. at 8-9; <u>Cal. Civ. Code</u> § 3426.1(d). Machado chooses to ignore that individual retailers do not have access to the point of sale data of other retailers, which Mattel combines and analyzes (and Machado stole),

and that no retailer has access to Mattel's analyses.  Many of the stolen documents reflect combined point of sale information from the top six Mexican retailers, Mar. 8, 2011 Trial Tr. Vol. 1 (Cavassuto) at 47:5-19, which allowed Mattel (and later Machado) to analyze and make strategic decisions based on sales trends, sales velocity, etc. at a market level, not a retailer level.  See, e.g., TX 6734, TX 6738, TX 7078, TX 7079, TX 7080, TX 7119, TX 7148.  Mattel paid $5.1 million for this data, which further confirms their value, even putting aside the value, as trade secrets, of Mattel's internal analyses of the data.  Mar. 8, 2011 Trial Tr. Vol. 1 (Cavassuto) at 31:24-32:9; TX 24264, TX 24264T, TX 24269.  Thus, rather than being specious or in bad faith, Mattel's claims are grounded in uncontroverted evidence and supported by authority that such compilations do qualify for trade secret status.

## F.   Mattel's Trade Secret Claim For The Presentation At The W Hotel Was Not Specious Or In Bad Faith.

Machado argues that Mattel's claim of trade secret to the W Hotel Presentation was specious.  (Mot. at 9)  The primary purpose of this document - and this is undisputed - was to show that while Machado and Vargas were Mattel employees, they blatantly copied and misused Mattel information to benefit Larian and MGA by making verbatim copies of Mattel presentations to present to Larian.  Compare TX 6754 with TX 7129, TX 6715.  Further, Mattel specifically noted that "Gustavo Machado and Pablo Vargas used Mattel trade secrets that have not been produced despite Court order, to create a presentation that was given to Isaac Larian of MGA."  Dkt. No. 9801-3 at 22 (Mattel's listing of trade secret claims) (emphasis added).  Mattel's list also emphasized that the document was incomplete, because neither Machado nor MGA ever complied with the Court's order to produce the final version of the presentation that was given to Larian.  Id.; see also Vargas Depo. Vol. 3, June 18, 2010 at 591:15-592:19 (testifying that the presentation version contained different information, including information from confidential Mattel documents).  Mattel made do at trial with what it had, but Mattel's claim was certainly not specious.  Machado admitted that he used an internal

-17-

Mattel presentation created for a Mattel executive review to create a similar presentation for Mattel's competitor, MGA and Larian.  See, e.g., TX 6754; TX 7129; Mar. 4, 2011 Trial Tr. Vol. 1 (Machado) at 39:13-21, 40:6-18 (identifying TX 7129 as a source for the W Hotel presentation).  The Mattel presentation contained not just information gained from subscription services, as Machado argues, but also contained internal Mattel analyses of that data.  TX 7129.  Compilations and analyses are protectable as trade secrets.  See Cal. Civ. Code § 3426.1(d) (identifying compilations, methods, techniques, and processes as potential trade secrets); Tao of Sys. Integration, Inc., 299 F. Supp. 2d at 574-75; Vinyl Interactive, LLC, 2009 WL 1228695, at *7-8. Mattel's claim for theft and use of this misappropriated presentation was not specious or in bad faith.

### G.   Mattel's Trade Secret Claim For The Viability Testing Report Was Not Specious Or In Bad Faith.

Machado argues that Mattel's trade secret claim for Mattel's 2004 Girls Full Year Mexico Viability Testing Report (TX 6739) was specious because it was not found during the search of MGA Mexico's offices that occurred 18 months after the thefts. Mot. at 10.  Mattel introduced circumstantial evidence that it was misappropriated. Machado admitted he took Mattel documents that would be useful to MGA and coordinated with others to do so.  Mar. 4, 2011 Trial Tr. Vol. 2 (Machado) at 5:19-6:6; 46:17-22.  Few documents would have been more valuable than this one, which included detailed information as to future BARBIE sales efforts in Mexico, and the document was specifically requested by Trueba from others at Mattel shortly after Machado, Vargas and Trueba met with Larian at the W Hotel in Mexico City in early March 2004.  Mar. 4, 2011 Trial Tr. Vol. 3 (Machado) at 16:12-16; TX 8147 (Trueba asking Jill Nordquist, of Mattel, "Do you know who can send me the last Barbie 2004 viability?").  Trueba's role was to forward to Machado the internal Mattel documents she collected, TX 6422, TX 6429, TX 8864, which Machado then downloaded and took to MGA.  Mar. 4, 2011 Trial Tr. Vol. 1 (Machado) at 61:24-63:3, 67:16-23, Vol. 3 at

-18-

MATTEL'S OPPOSITION TO MACHADO'S MOTION FOR ATTORNEY'S FEES

68:16-69:24.  Although due to time constraints Mattel was not able to present this evidence at trial, Ricardo Ibarra, Trueba's supervisor, testified that shortly after Trueba left Mattel, he discovered that his numbered copy of the Viability Testing Report was missing from the binder where he kept it.  Ibarra Tr. (Vol. 2) at 468:12-471:7.  A jury could certainly conclude that a document Trueba specifically asked for, after meeting with MGA, was among those stolen.  That it was not found by Mexican police in their search 18 months later hardly proves conclusively that it was never stolen, particularly given Ms. Kuemmerle's admission that neither she nor anyone else at MGA Mexico even looked for additional Mattel documents after the search of the MGA Mexico offices of Machado, Vargas, and Trueba by the Mexican authorities.  Feb. 23, 2011 Trial Tr. Vol. 2 (Kuemmerle) at 31:17-32:21.  Trade secret misappropriation can be shown by circumstantial evidence.  Ajaxo, Inc., 135 Cal. App. 4th at 50.  Mattel's claim for theft of this document was neither specious nor in subjective bad faith.

## H.   Mattel's Claim That Machado Used Mattel's Trade Secrets Was Not Specious or In Bad Faith.

Machado argues that to recover any damages, Mattel "must establish that Mr. Machado used or disclosed the files he copied."  This is wrong as a matter of law. "Misappropriation means:  (1) Acquisition of a trade secret … acquired by improper means; or (2) Disclosure or use of a trade secret …." Cal. Civ. Code 3426.1(b); Dealertrack, Inc. v. Huber, 460 F. Supp. 2d 1177, 1184 (C.D. Cal. 2006) (CUTSA does not require allegations of use; instead misappropriation can be demonstrated by acquisition by improper means).  Mattel needed only show "[a]cquisition of a trade secret … acquired by improper means," not use or disclosure.  Id.

However, Machado himself admitted use.  In fact, Machado's own motion admits that he used the Mattel POS analyses – "(looked at sales document to compare sales)." (Mot. at 11)  Machado also admitted use during trial.  Mar. 4, 2011 Trial Tr. Vol. 2 (Machado) at 40:16-25 ("Q. Among those documents that you actually accessed and *used* that you and the other two had taken from Mattel Mexico included these FRP

1    files; right?   A. *Correct*.   Q. And what you did specifically was you *used* that

2    information to compare MGA's Bratz against Mattel's Barbie; right? A. *Yes*.  Q. And

3    Mattel's MyScene; right?  A. Yes.") (emphasis added).  It is irrelevant that he "testified

4    that he did not change any of MGA's marketing after comparing these sales." (Mot. at

5    11) Machado's admitted use of Mattel's trade secret document to make the comparison

6    was use enough.  Mattel's claim cannot be specious or brought in bad faith when

7    Machado himself admitted using the documents at MGA Mexico.

8         Machado then argues that Mattel did not prove use of the All Worlds Line List,

9    TX 7104.  Machado bases this argument on his testimony and Kuemmerle's testimony

10   that they did not use it.  However, Mattel need not prove exactly how Machado used

11   the All Worlds Line List – such proof could have been impossible to obtain absent a

12   direct admission as Machado made regarding his use of the Mattel point of sale

13   analyses documents.  Whether Machado used it to take an idea – trade secret or not –

14   such as the Hollywood theme, or whether Machado used it to make comparisons as he

15   admitted to doing with the other Mattel documents, the jury was free to discount his

16   denial of use when the evidence proved that the document was stored on a CD (TX

17   8855 A) in his own MGA Mexico office and recovered by the Mexico police 18 months

18   after he left Mattel.

19        In addition, as Machado well knows, once Mr. Vargas was able to extricate

20   himself from the influence of his MGA-paid lawyers and was able to tell the truth, he

21   testified that Machado, Vargas and Trueba regularly, and in some cases exclusively,

22   used the documents stolen from Mattel to establish MGA de Mexico.  One week after

23   resigning, Machado and Vargas travelled to Los Angeles to meet with MGA personnel,

24   including Larian.  <u>See</u>, <u>e.g.</u>, Depo. Ex. 8464 (Vargas Declaration) at 15-17; Vargas

25   Depo. Vol. 1, dated June 16, 2010, at 89:2-11; Machado Depo. Vol. 3, dated Apr. 21,

26   2010, at 304:18-305:9.  Working with Kuemmerle, they prepared a business plan using

27   information from a file on Machado's computer called FRP Walmex that Machado or

28   Vargas told Kuemmerle had been stolen from Mattel.  <u>See</u>, <u>e.g.</u>, Depo. Ex. 8464

-20-

(Vargas Declaration with translation) at 15-17; Vargas Depo. Vol. 1, dated June 16, 2010, at 101:6-105:2. Machado, Vargas and Kuemmerle presented this business plan to Larian and others in Larian's office.  See, e.g., Depo. Ex. 8464 (Vargas Declaration) at 15-17.  By May 12, 2004, they had prepared an advertising and marketing budget. See, e.g., Depo. Ex. 6438; MGA Mexico (Kuemmerle) Depo. Vol. 3, dated December 9, 2009 at 773:25-778:18.  Machado, Vargas, and Trueba completed these plans with virtually no input from anyone at MGA, and without any independent access to information regarding the Mexican toy market.  See, e.g., Depo. Ex. 8464 (Vargas Declaration with translation) at 18; Machado Depo. Vol. 4, dated Apr. 22, 2010, at 534:20-535:9, 538:17- 551:5, 567:15-19.  Such plans could have only been completed with access to Mattel's trade secrets and confidential information.

## I.  That Vargas Ultimately Told The Truth About The Theft and Use of Mattel's Trade Secrets Does Not Prove Bad Faith.

Machado argues that Mattel's settlement agreement with Vargas was improper. Whether improper or not (it was not), that has no bearing on the Court's determination that Mattel's trade secret theft claim against Machado was objectively specious or brought in subjective bad faith.  FLIR Sys., Inc. v. Parrish, 174 Cal. App. 4th 1270, 1275 (2009).  Mattel's negotiation and agreement with Vargas are irrelevant.

Even so, it was MGA, not Mattel, who induced Vargas to lie.  It was only after he fired his MGA-paid attorneys and rejected their advice that he told the truth.  The "statements" that Machado cites prove this.  The discovery of stolen documents in MGA Mexico's offices and the proof of downloading on the Mattel computers of Machado, Vargas and Trueba are empirical and undisputed.  See, e.g., TX 8855A; TX 6658T-00090; 3/9/11 Trial Tr. Vol. 2 (De Anda) at 50:3-51:9.

The Vargas "statements" that Machado vouches for are both internally inconsistent and contradict the empirical proof of theft: sometimes he stole, sometimes he did not; if he did steal, he didn't use; then he told Mattel he did nothing wrong.  See Motion at 19-20.  Vargas explained the inconsistencies at deposition.  His MGA-paid

counsel in Mexico advised him to lie and deny stealing and using Mattel trade secrets, and he followed their advice. Vargas Depo. Vol. 3 at 535:15-536:21 (testifying, in part, as follows: "Q. So you believed that the declaration your lawyers were presenting to Mattel was not truthful; is that correct? A. I believed it explained things from a point of view that it wasn't truthful, but *that's the advice that I received from the attorneys*. Q. And you allowed them to submit a declara- -- you allowed your lawyers to submit to Mattel a declaration that you thought was not truthful; is that right? A: Yes, *because it was part of the strategy, my attorney strategy*.") (emphasis added); id. at 570:20-571:66 ("In 2007, would it be an accurate statement, Mr. Vargas, that you did not view as confidential any of the Mattel files that you took because they weren't password protected and didn't come from confidential files. [objection omitted] The Witness: No, it wouldn't be accurate. Because, in effect, I had taken files from Mattel, but *I had decided to follow my lawyer's advice to lie about it and to keep maintaining that lie*.") (emphasis added); Vargas Depo. Vol. 2 at 443:5-19 (testifying that MGA paid for Vargas' attorneys in Mexico). Tellingly, Machado does not now and has never offered any evidence that Vargas' declaration and testimony about Machado's leadership, organization and execution of the theft, concealment of the theft and subsequent use of the stolen trade secrets at MGA from both Machado's personal laptop and thumb drives was false in any way.

Machado chastises Mattel for not calling Vargas to testify (Mattel did not call him due to time limitations and Machado's unendingly delaying his appearance). Machado was free to call Vargas, and undoubtedly would have questioned Vargas about bias and the prior inconsistencies. For example, Vargas had been fired by MGA and was looking for a job.[1]  But, neither line of inquiry makes his declaration or

---

[1]  The suggestion that Mattel helped Vargas get a job at Bandai is nonsensical. Mattel distributed Bandai products in Mexico. Now, Bandai does to Mattel's detriment. Vargas Dep. Vol. 4, dated June 19, 2010, at 828:19-829:6 (Vargas hired by Bandai to set up a new office in Mexico in direct competition with Mattel).

1  deposition testimony that Machado used stolen trade secrets (once he obtained ethical

2  counsel) untruthful.  The Vargas discussion is a sideshow, having no bearing on the

3  merits of Mattel's trade secret theft claim against Machado.

4  **II.    MACHADO'S CLAIMED FEES ARE NOT REASONABLE**

5       As discussed above, the evidence permits no conclusion that Mattel filed or

6  maintained a trade secret theft claim against Machado in bad faith and no fees should

7  be awarded.  If the Court considers awarding fees to Machado, the award that he seeks

8  is not reasonable and should be reduced for the reasons set forth below.

9       **A.    Machado Fails To Apportion Attorney's Fees Among Claims**

10      Machado recognizes that he has no right to attorney's fees for the RICO or RICO

11 conspiracy claims or the state law claims for breach of fiduciary duty, breach of duty of

12 loyalty, conversion and unfair competition.  Sullivan v. Hunt, 350 F.3d 664, 665 (7th

13 Cir. 2003) ("The plain language of this statute allows plaintiffs who successfully bring

14 suit under RICO to recover costs and attorney's fees.  It does not, however, provide a

15 remedy for defendants who successfully defend against a RICO suit."); 18 U.S.C. §

16 1964(c); see also Trope v. Katz, 11 Cal. 4th 274, 278 (1995) ("California follows what

17 is commonly referred to as the American rule, which provides that each party to a

18 lawsuit must ordinarily pay his own attorney fees."); see Dkt. No. 143 (Mattel's

19 Amended Answer and Counterclaims dated 1/12/2007).

20      Recognizing his inability to recover fees incurred in connection with those

21 claims, Machado claims to have reduced the fees for a fraction of the billed tasks—

22 specifically summary judgment briefing—by 75%.  But, Machado does not go far

23 enough.  See Bell v. Vista Unified Sch. Dist., 82 Cal. App. 4th 672, 688-89 (2000)

24 (failure to apportion out fees unrelated to violation of statute before awarding attorney's

25 fees was abuse of discretion).  Machado does not apply that reduction consistently.

26 See, e.g., Ex. C to Cote Decl. at billing entries for 9/15/10, 9/22/10, 10/6/10, 10/7/10,

27 10/18/10, 10/21/10, 11/1/10, 11/9/10, 1/5/11. More significantly, Machado provides no

28 similar reduction for any other task performed before the summary judgment order

disposed of the RICO and non-trade secret theft claims, even though Mattel was prosecuting and Machado was defending two other RICO claims and four other state tort claims against Machado until that point.  If a 75% reduction is appropriate for summary judgment tasks in light of the RICO and other claims, as Machado concedes, then the 75% reduction must be applied across the board to all tasks that pre-date entry of the summary judgment order.  Accordingly, the Court should not award $556,353 in the claimed fees.  <u>See</u> Corey Decl. Ex. A.

## B.    **Machado Overstates His Claimed Fees**

Machado overstates the fees he seeks to recover.  California Supreme Court authorities make clear that "reasonable" compensation does not include "'padding' in the form of inefficient or duplicative efforts."  <u>Ketchum v. Moses</u>, 24 Cal. 4th 1122, 1132 (2001) (citing <u>Serrano v. Priest</u>, 20 Cal. 3d 25, 48 (1977)).  <u>See</u> <u>also</u> <u>Thayer v. Wells Fargo Bank, N.A.</u>, 92 Cal. App. 4th 819, 844 (2001) (award of attorney's fees was abuse of discretion where counsel "not only duplicated the work of counsel for plaintiffs in other cases but duplicated each other's work").

There was no reason for Mr. Overland and Mr. Cote to sit and bill silently for virtually every trial day–from January 13 through March 31, 2011–including trial proceedings unrelated to Mattel's claims against Mr. Machado.  For instance, Mr. Overland and Mr. Cote both billed for their attendance at trial during Mattel's presentation of its case-in-chief regarding Bratz; Mr. Overland and Mr. Cote examined no witness.  <u>See, e.g.</u>, Ex. C at billing entries for 1/19/11-1/20/11; 1/25/11-1/28/11; 2/1/11-2/4/11; 2/8/11-2/9/11.  Similarly, Mr. Overland and Mr. Cote both billed for their attendance at trial during MGA's presentation of its trade secret claims, which had nothing to do with Machado.  <u>See, e.g.</u>, Ex. C at billing entries for 3/22/11-3/25/11; 3/29/11-3/31/11.  Other days Mr. Overland or Mr. Cote attended trial or hearings but spoke only a couple of words.  There is no reasonable basis to award attorney's fees for mere attendance at trial under these circumstances.  Accordingly, the Court should not award $212,300 of the claimed fees.  Corey Dec. Ex. B.

Second, Mr. Overland and Mr. Cote collectively billed time to "review[ing] filings" without describing what they were.  Given the inadequate descriptions provided, there is no way to confirm they relate to Mattel's trade secret misappropriation claims against Mr. Machado. Corey Dec. Ex. B.  The Court cannot assess the reasonableness of Machado's fees claim without further detail that establishes the activity billed is even subject to Cal. Civ. Code § 3426.4.  Accordingly, the Court should not award $34,738.00 of the claimed fees.  Corey Dec. Ex. C.

Third, Mr. Overland billed $500 an hour for translation services.  Translators and translation services are available for far less than that.  Translation is not a legal advice or representation.  Accordingly, the Court should not award $10,345.00 of the claimed fees.  Corey Dec. Ex. D.

## Conclusion

Machado's presence in this case is no mystery.  He stole and used Mattel's trade secrets.  He admitted this.  Mattel therefore requests that the Court find that Mattel did not assert or maintain a claim against Machado for trade secret misappropriation in bad faith and deny Machado's motion for attorney's fees in its entirety.

DATED:  May 12, 2011

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By
Michael T. Zeller
Attorneys for Mattel, Inc.

MATTEL'S OPPOSITION TO MACHADO'S MOTION FOR ATTORNEY'S FEES

00505.07975/4132190.6