# EXHIBIT 11

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA

3    EASTERN DIVISION

4    -------------------------------

5    MATTEL, INC., a Delaware        )

6    Corporation,                    )

7              Plaintiff,            )

8              vs.                   )  No. CV 04-9059

9    CARTER BRYANT, an individual;   )      NM (RNBx)

10   and DOES 1 through 10,          )  VOLUME I

11   Inclusive,                      )

12             Defendants.           )

13   --------------------------------  )

14   (COMPLETE CAPTION ON NEXT PAGE.)

15

16     CONFIDENTIAL - ATTORNEYS' EYES ONLY

17

18     Videotaped Deposition of IVY ROSS,

19     taken at 300 South Grand Street,

20     Los Angeles, California, commencing

21     at 9:17 A.M., Thursday, January 17,

22     2008, before Ricki Q. Melton,

23     CSR No. 9400, RPR No. 45429.

24

25   PAGES 1 - 258

Certified Copy

Confidential Attorneys' Eyes Only

1

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              UNITED STATES DISTRICT COURT

 2             CENTRAL DISTRICT OF CALIFORNIA

 3                    EASTERN DIVISION

 4

 5       ------------------------------

 6    MATTEL, INC., a Delaware          )

 7    Corporation,                      )

 8              Plaintiff,              )

 9              vs.                     )  No. CV 04-9059

10    CARTER BRYANT, an individual;     )     NM (RNBx)

11    and DOES 1 through 10,            )

12    Inclusive,                        )

13              Defendants.             )

14       ----------------------------- )

15    CARTER BRYANT, on behalf of       )

16    himself, all present and          )

17    former employees of Mattel,       )

18    Inc., and the general public,     )

19              Counter-Claimants,      )

20              vs.                     )

21    MATTEL, INC., a Delaware          )

22    Corporation,                      )

23              Counter-Defendant.      )

24    ------------------------------

25
                                                2
```

Exhibit 11 - Page 113

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1      APPEARANCES OF COUNSEL:

 2

 3         For the Plaintiff:

 4

 5            QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

 6            BY:  DYLAN PROCTOR, ESQ.

 7            865 South Figueroa Street, Tenth Floor

 8            Los Angeles, California 90017

 9            (213) 443-3000

10            dylanproctor@quinnemanuel.com

11

12                     -and-

13

14            MATTEL, INC.

15            BY:  MICHAEL MOORE, ESQ.

16            333 Continental Boulevard

17            El Segundo, California 90245-5012

18            (310) 252-2000

19            michael.moore@mattel.com

20

21

22

23

24

25
                                                        3
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        APPEARANCES (Continued):

 2

 3             For the Defendant and Counterclaimant

 4             Carter Bryant:

 5

 6                  KEKER & VAN NEST LLP

 7                  BY:  CHRISTA ANDERSON, ESQ.

 8                  710 Sansome Street

 9                  San Francisco, California 94111-1704

10                  (415) 391-5400

11                  canderson@kvn.com

12

13        For Defendant MGA Entertainment, Inc.:

14

15                  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

16                  BY:  KENNETH PLEVAN, ESQ.

17                      MICHELLE M. CAMPANA, ESQ.

18                  Four Times Square

19                  New York, New York 10036-6522

20                  (212) 735-3000

21                  kplevan@skadden.com

22                  micampan@skadden.com

23

24        ALSO PRESENT:

25                  David West, Video Operator
```

4

Exhibit 11 - Page 115

CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | and ambiguous as to time, vague and ambiguous as to | 11:58:11 |
| 2 | who the contractors are. | 11:58:13 |
| 3 | THE WITNESS:  Yeah, I did not -- no, I did | 11:58:15 |
| 4 | not make those agreements.  I do not -- that was | 11:58:17 |
| 5 | not my responsibility. | 11:58:21 |
| 6 | BY MR. PLEVAN: | 11:58:23 |
| 7 | Q.   Were the contractors told they couldn't | 11:58:24 |
| 8 | work for competitors? | 11:58:26 |
| 9 | MR. PROCTOR:  Objection. | 11:58:29 |
| 10 | THE WITNESS:  I don't -- | 11:58:29 |
| 11 | MR. PROCTOR:  Objection.  Calls for | 11:58:31 |
| 12 | speculation, documents speak for themselves, vague | 11:58:31 |
| 13 | and ambiguous. | 11:58:35 |
| 14 | Go ahead. | 11:58:35 |
| 15 | THE WITNESS:  I don't remember the | 11:58:36 |
| 16 | specifics. | 11:58:37 |
| 17 | BY MR. PLEVAN: | 11:58:56 |
| 18 | Q.   Do you recall any situations where someone | 11:58:56 |
| 19 | who was working in your area, the design center, | 11:58:58 |
| 20 | when you were vice president in girls, was | 11:59:04 |
| 21 | disciplined or terminated because of a concern | 11:59:07 |
| 22 | about a breach of the restrictions on employees? | 11:59:10 |
| 23 | A.   I don't remember anything specific. | 11:59:16 |
| 24 | Q.   Do you recall whether there were any | 11:59:30 |
| 25 | lawsuits against Mattel which alleged that Mattel | 11:59:31 |
| | | 111 |

Exhibit 11 - Page 116

CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | had taken someone else's idea and used it in a | 11:59:35 |
| 2 | product? | 11:59:41 |
| 3 | MR. PROCTOR:  Objection.  Lacks | 11:59:41 |
| 4 | foundation, calls for speculation. | 11:59:42 |
| 5 | THE WITNESS:  No, nothing specific comes | 11:59:45 |
| 6 | to mind. | 11:59:48 |
| 7 | BY MR. PLEVAN: | 12:00:02 |
| 8 | Q.  When did you first learn that there was a | 12:00:02 |
| 9 | lawsuit brought by either Carter Bryant or Mattel | 12:00:05 |
| 10 | involving Bratz? | 12:00:10 |
| 11 | A.  I'm trying to remember whether it was -- I | 12:00:20 |
| 12 | think it was when someone legally, after I had | 12:00:23 |
| 13 | left, called and wanted to let me know that that | 12:00:29 |
| 14 | has happened or was being filed or -- it was a few | 12:00:35 |
| 15 | years after I left. | 12:00:39 |
| 16 | Q.  Did you hear any discussion about a | 12:00:40 |
| 17 | possible lawsuit while you were still at Mattel? | 12:00:43 |
| 18 | A.  Lawsuit, no, not that I can recall. | 12:00:45 |
| 19 | Q.  Have you ever -- when you were at Mattel, | 12:00:55 |
| 20 | did you ever hear anyone say that Mattel used | 12:00:57 |
| 21 | litigation as a business strategy? | 12:00:59 |
| 22 | A.  No. | 12:01:01 |
| 23 | Q.  Have you ever personally testified before | 12:01:06 |
| 24 | today? | 12:01:08 |
| 25 | A.  Yes. | 12:01:10 |

112

Exhibit 11 - Page 117

CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   In a lawsuit?  I'm talking -- let me | 12:01:11 |
| 2 | withdraw. | 12:01:15 |
| 3 | Testified, first, at a deposition, a | 12:01:16 |
| 4 | session like this? | 12:01:19 |
| 5 | A.   Yes. | 12:01:20 |
| 6 | Q.   And/or have you ever testified in a court? | 12:01:21 |
| 7 | A.   Yes. | 12:01:23 |
| 8 | Q.   Was that in connection with a business | 12:01:25 |
| 9 | matter or a personal matter? | 12:01:27 |
| 10 | A.   Business. | 12:01:28 |
| 11 | Q.   And when was that, the last such time? | 12:01:29 |
| 12 | A.   I don't remember the date.  It was a few | 12:01:33 |
| 13 | years ago. | 12:01:36 |
| 14 | Q.   Was it while you were at Mattel? | 12:01:36 |
| 15 | A.   No. | 12:01:39 |
| 16 | Q.   It was before you were at Mattel? | 12:01:40 |
| 17 | A.   No. | 12:01:41 |
| 18 | Q.   After you were at Mattel? | 12:01:42 |
| 19 | A.   Yes. | 12:01:43 |
| 20 | Q.   Who was your employer at that time? | 12:01:44 |
| 21 | A.   At that time my employer was The Gap. | 12:01:46 |
| 22 | Q.   What was the nature of the legal issue as | 12:01:51 |
| 23 | you understand it? | 12:01:55 |
| 24 | A.   It was regarding Mattel in terms of a -- I | 12:01:56 |
| 25 | don't know what you call it -- unlawful letting go | 12:02:02 |

113

Exhibit 11 - Page 118

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    I declare under penalty of perjury

2  under the laws of the State of California

3  that the foregoing is true and correct.

4

5    Executed on *Feb 4*        , 2008,

6  at _____ , _____ .

7

8

9

10  _____

11         SIGNATURE OF THE WITNESS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                          251

Exhibit 11 - Page 119

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1     STATE OF CALIFORNIA    ) ss:

 2     COUNTY OF LOS ANGELES  )

 3

 4       I, RICKI Q. MELTON, CSR No. 9400, RPR No. 45429,

 5     do hereby certify:

 6

 7       That the foregoing deposition testimony of

 8     IVY ROSS was taken before me at the

 9     time and place therein set forth, at which time the

10     witness was placed under oath and was sworn by me to

11     tell the truth, the whole truth, and nothing but the

12     truth;

13

14       That the testimony of the witness and all objections

15     made by counsel at the time of the examination were

16     recorded stenographically by me and were thereafter

17     transcribed under my direction and supervision, and

18     that the foregoing pages contain a full, true, and

19     accurate record of all proceedings and testimony to

20     the best of my skill and ability.

21

22       I further certify that I am neither counsel for

23     any party to said action nor am I related to any

24     party to said action, nor am I in any way interested

25     in the outcome thereof.
                                                        252
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1          IN WITNESS WHEREOF, I have subscribed my name

2    this 21st day of January, 2008.

3

4

5

6                    _____

7              RICKI Q. MELTON, CSR No. 9400

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

253

Exhibit 11 - Page 121

# EXHIBIT 12

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile (212) 849-7100

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

TOKYO
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**   March 13, 2008

**NUMBER OF PAGES, INCLUDING COVER:**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Larry McFarland, Esq. | (310) 248-3830 | (310) 860-0363 |

**FROM:**   Melissa Grant

**RE:**   Bryant v. Mattel

**MESSAGE:**

See attached.

> FAXED
> MAR 1 3 2008

| CLIENT # | 7209 | ROUTE/ RETURN TO: | Lucille Clavel | ☐ CONFIRM FAX ☐ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | | CONFIRMED?  ☐ NO  ☐ YES: _____ | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

Exhibit 12 - Page 122

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO              0435
RECIPIENT ADDRESS     76706#7209#13108600363
DESTINATION ID
ST. TIME              03/13 11:43
TIME USE              01'50
PAGES SENT            8
RESULT                OK
```

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
# FACSIMILE TRANSMISSION

**DATE:**     March 13, 2008          **NUMBER OF PAGES, INCLUDING COVER:**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Larry McFarland, Esq. | (310) 248-3830 | (310) 860-0363 |

**FROM:**     Melissa Grant

**RE:**       Bryant v. Mattel

**MESSAGE:**

See attached.

**Exhibit 12 - Page 123**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3191**
WRITER'S INTERNET ADDRESS
melissagrant@quinnemanuel.com

March 13, 2008

**VIA EMAIL, FACSIMILE AND U.S. MAIL**

Larry W. McFarland, Esq.
Keats McFarland & Wilson LLP
9720 Wilshire Boulevard
Penthouse Suite
Beverly Hills, CA 90212

Re:    Mattel, Inc. v. Bryant et al.

Dear Larry:

It was a pleasure to meet you and Christian in person the other day and to hear that your mother is on her way to a full recovery.

This letter confirms our understanding of the results of our meet and confer discussions yesterday regarding the outstanding motions and issues relating to your clients.

**Motions and Subpoenas Relating to Financial and Banking Records Regarding Veronica Marlow.**

With respect to the production of financial and banking records related to Ms. Marlow, you proposed and we agreed to the following:

1.    Ms. Marlow will not object to or oppose the production of financial or bank records from any third party in response to a Mattel subpoena, including without limitation, the subpoenas issued by Mattel to Washington Mutual Bank, Wells Fargo Bank, Union Bank of California, Bank of America, Capital Bank & Trust c/o American Funds, ING Direct, Charles Schwab, International Rectifier Federal

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

Exhibit 12 - Page 124

Larry W. McFarland, Esq.
Keats McFarland & Wilson LLP
Page 2

Credit Union, Mattel Federal Credit Union, A. Mitch Bhatia, and Kenneth R. Bailey ("Financial/Bank Records Subpoenas").

2.   The parties agreed to discontinue the use of the previously agreed on banking records protocol and to permit the production of documents responsive to the Financial/Bank Records Subpoenas directly to Mattel's counsel.

3.   You will promptly deliver to our office any and all financial and banking records in your possession, custody, or control that are responsive to the Financial/Bank Records Subpoenas.

4.   To facilitate the prompt production of documents responsive to the Financial/Bank Records Subpoenas, Ms. Marlow and Mr. Peter Marlow will provide Mattel's counsel with any financial and banking records responsive to the Financial/Bank Records Subpoenas in their possession, custody, or control.

With respect to the production of documents responsive to the subpoenas Mattel issued to Doll Bag, Inc., Veronica Marlow, Inc., and Marlow Techno-logic, Inc. ("Three Marlow-Related Entities"), you proposed and we agreed to the following:

1.   You agreed to accept service of the subpoenas issued to the Three Marlow-Related Entities and to deem service completed as of January 28, 2008.

2.   We agreed to narrow the scope of certain document requests contained in the subpoenas issued to the Three Marlow-Related Entities as follows:

a.   Document Request No. 1 seeks "All of YOUR formation DOCUMENTS, and drafts thereof." We agreed to narrow the scope of this request to "YOUR formation DOCUMENTS and drafts thereof."

b.   Document Request No. 3 seeks "ALL DOCUMENTS RELATING TO YOU, including without limitation accounting records, profits and loss statements, work papers, worksheets, payroll records, financial statements (audited and unaudited), pro formas, budgets, account information and account statements, from the period beginning January 1, 1999 to the present." We will agree to narrow the scope of this request to "YOUR accounting, payroll, budget, and work records RELATING TO work or services performed by YOU or for YOU, DESIGNS created by YOU or FOR YOU, and payments received by YOU or made by YOU RELATING to BRATZ, BRYANT, MGA, ISAAC LARIAN, or MATTEL, as well as YOUR profit and loss statements, financial

2

**Exhibit 12 - Page 125**

Larry W. McFarland, Esq.
Keats McFarland & Wilson LLP
Page 3

statements (unaudited and audited, if any), and account information and statements, from January 1, 1999 to the present.   To the extent that YOUR profit and loss statements, financial statements (unaudited and audited, if any), and account information and statements RELATE only to Peter Marlow's business activities that are wholly unrelated to BRATZ, BRYANT, MGA, ISAAC LARIAN, or MATTEL, they need not be produced.

c.   Document Request Nos. 4 and 5 seek "ALL DOCUMENTS RELATING TO [the] corporate and/or financial relationship [between and among the Three Marlow-Related Entities] since January 1, 1999."  We agreed to narrow the scope of this request to "DOCUMENTS sufficient to show [the] corporate and/or financial relationship [between and among the Three Marlow-Related Entities] since January 1, 1999."

d.   Document Request Nos. 6-15 seek "ALL DOCUMENTS RELATING TO payments or transfers of value from [each of the Three Marlow-Related Entities] to VERONICA MARLOW, BRYANT, ISAAC LARIAN, PETER MARLOW; any parent(s), sibling(s), children, or other relative(s) of PETER MARLOW and/or VERONICA MARLOW; CABRERA, MORALES, SALAZAR, any other MATTEL EMPLOYEE, and any other MGA employee."  We agreed to narrow the scope of this request to "DOCUMENTS sufficient to show all payments or transfers of value from [each of the Three Marlow-Related Entities] to [the person(s) identified in the respective requests] RELATING TO BRATZ, BRYANT, MGA, ISAAC LARIAN, OR MATTEL.

d.   Document Request Nos. 16 seeks "ALL DOCUMENTS RELATING TO payments or transfers of value from MGA to [each of the Three Marlow-Related Entities]."  We agreed to narrow the scope of this request to "DOCUMENTS sufficient to show all payments or transfers of value from MGA to [each of the Three Marlow-Related Entities]."

e.   Document Request Nos. 17-21 seek "ALL DOCUMENTS RELATING TO payments or transfers of value between [each of the Three Marlow-Related Entities] and BRYANT, VERONICA MARLOW, ISAAC LARIAN, and [one of the other Three Marlow-Related Entities].  We agreed to narrow the scope of this request to "DOCUMENTS sufficient to show all payments or transfers of value between [each of the Three Marlow-Related Entities] and BRYANT, VERONICA MARLOW, ISAAC LARIAN, and [one of the other Three Marlow-Related Entities].

**Exhibit 12 - Page 126**

Larry W. McFarland, Esq.
Keats McFarland & Wilson LLP
Page 4

    f.      Document Request Nos. 33 seeks "ALL DOCUMENTS RELATING TO any business expenses incurred by VERONICA MARLOW RELATED TO MGA, BRYANT, BRATZ, ISAAC LARIAN, or MATTEL since January 1, 1999, including without limitation receipts, invoices, correspondence, e-mails, credit card statements, cancelled checks, and wire transfers." We agreed to narrow the scope of the request to "DOCUMENTS sufficient to show all business expenses incurred by VERONICA MARLOW RELATED TO MGA, BRYANT, BRATZ, ISAAC LARIAN, or MATTEL since January 1, 1999, including without limitation receipts, invoices, correspondence, e-mails, credit card statements, cancelled checks, and wire transfers."

    g.      Document Request Nos. 34 seeks "ALL DOCUMENTS RELATING TO any business expenses incurred by [each of the Three Marlow-Related Entities] between January 1, 1999 and December 31, 2001 RELATED TO MGA, BRYANT, or ISAAC LARIAN RELATED TO any project, doll, DESIGN other than BRATZ, including without limitation receipts, invoices, correspondence, e-mails, credit card statements, cancelled checks, and wire transfers." We agreed to narrow the scope of the request to "DOCUMENTS sufficient to show all business expenses incurred by [each of the Three Marlow-Related Entities] between January 1, 1999 and December 31, 2001 RELATED TO MGA, BRYANT, or ISAAC LARIAN RELATED TO any toy project, doll, DESIGN other than BRATZ, including without limitation receipts, invoices, correspondence, e-mails, credit card statements, cancelled checks, and wire transfers."

    We are in the process of preparing a stipulation and proposed order reflecting our agreement, which will provide you tomorrow. The stipulation will include Mattel's agreement to withdraw its Motion for Leave to Obtain Discovery After the Phase 1 Discovery Cut-Off in Response to Subpoenas Serviced on Doll Bag, Inc., Veronica Marlow, Inc., Marlow Techno-Logic, Inc., and Washington Mutual Bank, and Ms. Marlow's agreement to withdraw her Motion to Compel Mattel to Purge Itself of Private Bank Records.

    Finally, you proposed that Peter Marlow's deposition be set for a date after Mattel has received and reviewed documents responsive to the Financial/Bank Records Subpoenas and the subpoenas issued to the Three Marlow-Related Subpoenas. In principle, we would agree; however, we have no way to determine when Mattel will receive the documents responsive to the Financial/Bank Records Subpoenas and the Phase 1 trial of this matter is fast-approaching. We therefore propose that we agree to set Peter Marlow's deposition during the week of April 14, 2008. If Mattel has not received all documents responsive to the Financial/Bank Records

**Exhibit 12 - Page 127**

Larry W. McFarland, Esq.
Keats McFarland & Wilson LLP
Page 5


Subpoenas at least five calendar days before the actual date selected, the parties will promptly meet and confer to discuss the scheduling of Mr. Marlow's deposition.

## Mattel's Motions to Compel Additional Deposition Testimony and Production of Documents re Marlow and re Leahy

You stated your position that you will not agree to any further deposition testimony by either Veronica Marlow or Margaret Leahy.

## Mattel's Motion to Compel Production of Fee Agreements and Privilege Logs from Leahy, Cloonan, Halpern, and Marlow, and for Sanctions

You agreed to produce the fee agreements of Ms. Leahy, Ms. Cloonan, Ms. Halpern, and Ms. Marlow. You also agreed to provide us with written confirmation that the only documents you are withholding as privileged are communications (1) that were exclusively between Ms. Leahy, Ms. Cloonan, Ms. Halpern, and Ms. Marlow, on the one hand, and yourself, other attorneys at your firm, or their respective individual attorneys, on the other hand; (2) that were sent on or after January 1, 2006; (3) that were not copied or addressed to other parties or third parties; and (4) that do not relate to the fee or indemnification matters at issue here. Mattel will accept such written confirmation in lieu of a formal privilege log. Upon receipt of the agreements and such confirmation, Mattel will withdraw its motion.

## Mattel's Motion to Compel Electronic Media from Third Parties Cloonan, Leahy, and Marlow

We do not believe we can come to an agreement to resolve this motion. In exchange for Mattel withdrawing this motion, you offered to run a further "keyword" search on the Cloonan and Leahy computers and the Cloonan zip disk; and you said that you would consider searching graphic files for responsive documents based on a document request we might formulate that identifies what you should be searching for. You also stated that you would not agree to do any of this for the Marlow computers. Finally, regardless of what you might find in the way of additional documents to be produced, you will not re-produce Leahy or Cloonan for further deposition.

As we stated in the meet and confer, we believe that all documents in your (or your client's) possession (or in the possession of Data Chasers) should have been searched for documents responsive to prior document requests, especially where such documents were not capable of being searched by "keywords," such as graphical files. You have acknowledged that this was never done. Further, based on the evidence adduced so far, and described in our motion papers, even a further key word search of file names will not identify documents that are coded and the relevance of which names are transparent. Accordingly, we cannot agree with your proposal

**Exhibit 12 - Page 128**

Larry W. McFarland, Esq.
Keats McFarland & Wilson LLP
Page 6


Please let me know when we can expect to receive the banking records in your possession and which date during the week of April 14, 2008 Mr. Marlow is available for deposition.


Very truly yours,


Melissa Grant


MG:lc
07209/2430576.2

6

**Exhibit 12 - Page 129**

Larry W. McFarland, Esq.
Keats McFarland & Wilson LLP
Page 6


Please let me know when we can expect to receive the banking records in your possession and which date during the week of April 14, 2008 Mr. Marlow is available for deposition.


Very truly yours,

Melissa Grant


MG:lc
07209/2430576.2

6

**Exhibit 12 - Page 130**

# EXHIBIT 13



**ORRICK**

RECEIVED

SEP 1 1 2009

ORRICK, HERRINGTON & SUTCLIFFE LLP
777 SOUTH FIGUEROA STREET
SUITE 3200
LOS ANGELES, CALIFORNIA 90017-5855

tel +1-213-629-2020
fax +1-213-612-2499

WWW.ORRICK.COM

*VIA EMAIL AND U.S. MAIL*

September 9, 2009

William A. Molinski
(213) 612-2256
wmolinski@orrick.com

Marshall M. Searcy III, Esq.
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 S. Figueroa St. 10th Floor
Los Angeles, California 90017

Re:     MGA v. Mattel, Inc.

Dear Marshall:

I write in response to your September 4, 2009 letter regarding our meet and confer meetings on September 3 and 4, 2009. Below is our understanding of the meetings, which differs from yours in important respects as reflected below.

## I.     MATTEL IS CONSIDERING WITHDRAWING OR LIMITING THE FOLLOWING REQUESTS:

### Phase 1, Set One

RFP 1:          Mattel is considering withdrawing this request.

RFP 12:         Mattel is considering limiting the request to documents regarding the hiring of Machado, Trueba, and Vargas, with that limitation MGA Mexico will agree to produce responsive documents.

RFP 23:         Mattel is considering withdrawing or limiting this request.

RFP 35:         Mattel is considering withdrawing this request in its entirety.

RFP 46:         Mattel is considering limiting the request to documents that refer or relate to promotions, bonuses, and incentives for the first year of employment for Machado, Trueba, and Vargas, with that limitation MGA Mexico will agree to produce responsive documents.

RFPs 59-62:     Mattel is considering limiting these requests.

RFPs 70-71:     Mattel is considering limiting the requests to documents on which MGA Mexico currently intends to rely on.

**Exhibit 13 - Page 131**



**ORRICK**

Marshall M. Searcy III, Esq.
September 9, 2009
Page 2

RFPs 79-125:    Mattel is considering withdrawing or limiting these requests; MGA Mexico is also considering the relevance of these requests in relation to MGA's damage claims.

RFP 132:    Mattel is considering withdrawing or limiting this request.

RFP 134:    Mattel is considering limiting this request in accordance with the parties' previous practices in this case.

RFP 137:    Mattel is considering withdrawing or limiting this request.

## Phase 1, Set Two

RFPs 269-275: Mattel is considering withdrawing these requests.

## Phase 1, Set Three

RFPs 1-6:    Mattel is reviewing its responses to MGA's Seventh Set of Requests for Production. Mattel stood on its objections in response to MGA's requests for document storage information. Accordingly, MGA Mexico presumes that Mattel will either supplement those responses or will withdraw these requests.

## Phase 2, Set One

RFPs 1-26:    Mattel is considering withdrawing or limiting these requests, which currently include the March 1, 2007 and after timeframe. As we discussed, the Discovery Master has indicated that documents in this time frame are not relevant to the action. You said you were considering whether to accept the Discovery Master's reasoning or reject it and would back to me on that issue.

RFPs 29-37:    Mattel is considering withdrawing or limiting these requests, which currently include the March 1, 2007 and after timeframe.

RFPs 39-41:    Mattel is considering withdrawing or limiting these requests, which currently include the March 1, 2007 and after timeframe.

RFP 42:    Mattel is considering limiting this request.

RFPs 43-47:    Mattel is considering withdrawing or limiting these requests, which currently include the March 1, 2007 and after timeframe.

**Exhibit 13 - Page 132**



**ORRICK**

Marshall M. Searcy III, Esq.
September 9, 2009
Page 3

RFPs 55-56:    Mattel is considering withdrawing or limiting these requests, which currently include the March 1, 2007 and after timeframe.

RFP 57:    Mattel is considering limiting this request both with regard to subject matter and timeframe.

RFPs 59-60:    Mattel is considering withdrawing or limiting these requests, which currently include the March 1, 2007 and after timeframe.

Your letter surprisingly makes no mention of these areas of consideration for Mattel. We will assume that Mattel has either withdrawn the requests or has accepted MGA Mexico's limitations as specified above. Otherwise, we expect your proposed limitations no later than Friday, September 11, 2009.

**II.**    **MGA MEXICO IS GIVING FURTHER CONSIDERATION TO THE FOLLOWING REQUESTS:**

**Phase 1, Set One**

RFPs:  11, 16, 17, 19, 39, 41, 42, 51, 55-58, 64, 76, 78, 126, 127, 133-139, 141.

**Phase 1, Set Two**

RFP:   46-53, 59, 60, 62, 63, 97-100, 105, 107-110, 168-173, 176, 317-328, 344.

**Phase 2, Set One**

RFP:   48, 49, 61, 65, 77, 78.

MGA Mexico does not agree with Mattel's characterization of MGA Mexico's position with regard to these requests. MGA Mexico has not waived any of the objections asserted in response to the requests in its objections and responses to each set of Mattel's requests for production. MGA Mexico hereby reserves its right to rely on an objection asserted to Mattel's requests for production, whether or not specifically mentioned during the parties' meet and confer conferences. MGA Mexico will give Mattel its position on these requests by Friday, September 11, 2009.

**III.**    **MGA MEXICO AGREED TO PRODUCE DOCUMENTS, SUBJECT TO THE FOLLOWING AGREED UPON LIMITATIONS, IN RESPONSE TO THE FOLLOWING REQUESTS:**

**Phase 1, Set One**

OHS West:260724062.1

**Exhibit 13 - Page 133**



**ORRICK**

Marshall M. Searcy III, Esq.
September 9, 2009
Page 4

RFP 3:        MGA Mexico is willing to produce in response to the request as written.

RFP 6:        MGA Mexico is willing to produce in response to the request as written.

RFPs 7-10:    MGA Mexico is willing to produce in response to the request with "REFER or RELATE TO" changed to "discussing or communications regarding" to the extent such documents have not already been produced, as agreed by Mattel.

RFPs 13-15:   MGA Mexico is willing to produce in response to the request with MGA MEXICO or YOU defined as "MGA Mexico or anyone acting on its behalf", as agreed by Mattel.

RFP 18:       MGA Mexico is willing to produce in response to the request with REFER OR RELATE to limited to "refers to", as agreed by Mattel.

RFP 20:       MGA Mexico is willing to produce in response to the request as written.

RFP 21:       MGA Mexico is willing to produce in response to the request with MGA MEXICO or YOU defined as "MGA Mexico or anyone acting on its behalf", as agreed by Mattel.

RFP 26:       MGA Mexico is willing to produce in response to the request as written.

RFPs 27-28:   MGA Mexico is willing to produce in response to these requests with MGA MEXICO or YOU defined as "MGA Mexico or anyone acting on its behalf", as agreed by Mattel.

RFPs 29-30:   MGA Mexico is willing to produce in response to the request as written.

RFP 40:       MGA Mexico is willing to produce in response to the request as written.

RFP 52:       MGA Mexico is willing to produce in response to the request as written.

RFPs 53-54:   MGA Mexico is willing to produce in response to the request with MATTEL DOCUMENT defined as "document taken from Mattel by a former Mattel employee", as agreed by Mattel.

RFP 63, 65-69: MGA Mexico is willing to produce in response to the request with MATTEL DOCUMENT defined as "document taken from Mattel", as agreed by Mattel.

**Exhibit 13 - Page 134**



**ORRICK**

Marshall M. Scarcy III, Esq.
September 9, 2009
Page 5

RFP 128:    MGA Mexico is willing to produce in response to the request in so far as MGA Mexico understands, after a reasonable investigation, that any document in its possession was created for Mattel's benefit and was not publicly available when MGA Mexico came into possession of it, as agreed by Mattel.

RFP 140:    MGA Mexico is willing to produce in response to the request in so far as the requests is limited to documents on which MGA Mexico currently intends to rely, as agreed by Mattel.

RFP 142-143:    MGA Mexico is willing to produce in response to the request in so far as the requests is limited to documents on which MGA Mexico currently intends to rely, as agreed by Mattel.

**Phase 1, Set Two**

RFP 399:    MGA Mexico is willing to produce in response to the request with MGA MEXICO or YOU defined as "MGA Mexico or anyone acting on its behalf".

**Phase 2, Set One[1]**

RFP 69:    MGA Mexico is willing to produce in response to the request with MGA MEXICO or YOU defined as "MGA Mexico or anyone acting on its behalf".

Your letter made no mention of Mattel's acceptance of MGA Mexico's proposed limitations discussed at our meetings. As I indicated at the beginning of the September 3, 2009 meeting, MGA Mexico is only willing to produce if Mattel is willing to accept MGA Mexico's proposed production as fully responsive to the request. Please let me know immediately if Mattel no longer intends to accept MGA Mexico's proposed scope of production. In agreeing to produce documents with the limitations agreed to by Mattel, MGA Mexico is not admitting that the requests are not objectionable as written or even as narrowed. We agree to produce documents in an effort to avoid the time and expense of motion practice. If Mattel is revoking its agreed upon limitations, we will maintain our objections.

---

[1] MGA Mexico is in the process of collecting documents relevant documents responsive to RFPs 27, 28, 38, 51-54, 58, 60, 62, 64, 66-68, 70-76, 79-83, pursuant to Order No. 52.

OHS West:260724062.1

**Exhibit 13 - Page 135**



**ORRICK**

Marshall M. Searcy III, Esq.
September 9, 2009
Page 6

**IV.    MGA MEXICO AND MATTEL COULD NOT COME TO ANY AGREEMENT ABOUT THE FOLLOWING REQUESTS DESPITE THEIR MEET AND CONFER EFFORTS:**

**Phase 1, Set One**

   RFPs:  2, 4, 5, 22, 24, 25, 31-34, 36, 37, 38, 43-45, 47-50, 72-75, 77, 129-131, 144-148.

**Phase 1, Set Two**

   RFPs:  9-12, 23, 24, 36-41, 64-70, 86-88, 111-114, 148-150, 180, 193, 200, 223-226, 249-252, 276, 300, 301, 343, 386, 398, 411, 418-420.

**Phase 2, Set One**

   RFPs:  50, 63.

MGA Mexico does not agree with Mattel's characterization of MGA's position with respect to any of these requests.  MGA Mexico has not waived any of the objections asserted in response to the requests in its objections and responses to each set of Mattel's requests for production.  MGA Mexico hereby reserves its right to rely on an objection asserted to Mattel's requests for production, whether or not specifically mentioned during the parties' meet and confer conferences.

Finally, we will not know when our production will be forthcoming until the parties come to an agreement about the remaining outstanding requests, including those requests that Mattel is considering withdrawing or limiting.  We will be happy to give you an estimate of production once we have completed the meet and confer process for these requests.

Very truly yours,

William A. Molinski

WAM/mdp

**Exhibit 13 - Page 136**

# EXHIBIT 14

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3152**

WRITER'S INTERNET ADDRESS
**marshallsearcy@quinnemanuel.com**

June 26, 2009

**VIA ELECTRONIC MAIL**

Jean Pierre Nogues
Mitchell Silberberg & Knupp LLP
11377 West Olympic Blvd.
Los Angeles, CA 90064

Re:    Bryant v. Mattel, Inc.

Dear Mr. Nogues:

I write concerning the parties' meet and confer on Wednesday, June 24, 2009 regarding Mattel's responses to MGA's First Set of Phase 2 Requests for Admissions, First Set of Phase 2 Interrogatories, and Second Set of Phase 2 Requests for Production.

**Mattel's Responses to MGA's Phase 2 Requests for Admission**

During our conference, I agreed that Mattel would supplement our responses to MGA's Phase 2 Requests for Admission Nos. 1-7 by Thursday, July 6, 2009. With respect to RFA No. 4, I explained that this RFA is vague and ambiguous as presently written, but that we would supplement our response based on our understanding of the Interrogatory.

**Mattel's Responses to MGA's First Set of Phase 2 Interrogatories**

The parties were unable to reach agreement as to whether or not MGA has exceeded its allotted interrogatories in this case, and thus we did not get to the other objections interposed by Mattel. You stated your belief that Mattel's position is inconsistent with Mattel's previous positions on interrogatories. I asked you to identify the pleadings you believed are inconsistent. Though you could not identify them with specificity, we went back and reviewed the one pleading that you

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY 10010 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA 94111 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA 94065 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 250 South Wacker Drive, Suite 230, Chicago, IL 60606 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG United Kingdom | TEL (44(0) 20 7653 2000 FAX (44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052 Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

07975/2988483.1

**Exhibit 14 - Page 137**

mentioned, as well as the prior orders in the case, and do not believe there is any inconsistency. Because we cannot agree, it appears that we will need guidance from the Discovery Master on this threshold counting issue.

**Mattel's Responses to MGA's Second Set of Phase 2 Requests for Production**

As I explained Wednesday, a large number of the Requests for Production in MGA's Second Set of Phase 2 Requests for Production are duplicative of previously served RFPs, including RFPs that were limited by the previous Discovery Master. You confirmed that you did not intend for Mattel to reproduce documents served previously. In light of this statement, Mattel will agree to supplement its responses by July 6 as follows:

**Requests To Which Mattel Will Supplement Its Responses:**

The following RFPs seek documents previously produced in response to other RFPs, but Mattel will supplement its responses to these RFPs to clarify that it will produce additional responsive, non-privileged documents found after a reasonably diligent search, if any, on a rolling basis.

**REQUEST FOR PRODUCTION NO. 88:**
All DOCUMENTS that REFER OR RELATE to ANY alleged destruction or spoliation of evidence by or on behalf of MGA, as alleged in YOUR OPERATIVE COUNTERCLAIMS in THIS ACTION.

**REQUEST FOR PRODUCTION NO. 89:**
All DOCUMENTS that REFER OR RELATE to the DOCUMENTS to which Farhad Larian allegedly gave YOU access and which YOU allegedly viewed or inspected before Farhad Larian allegedly destroyed or spoiled the same, including but not limited to ANY lists of such DOCUMENTS to which YOU actually were given access and/or YOU actually viewed or inspected.

**REQUEST FOR PRODUCTION NO. 99:**
ALL DOCUMENTS that constitute or REFER OR RELATE to any analysis of Janine Brisbois' "thumb" drive referred to in YOUR OPERATIVE COUNTERCLAIMS, including but not limited to any analysis by or on behalf of KPMG.

**REQUEST FOR PRODUCTION NO. 100:**
YOUR entire personnel file (except health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers) for Carlos Gustavo Machado Gomez ("Machado"), including but not limited to ANY employment agreements between YOU and Machado, all confidentiality or non-disclosure agreements signed by Machado, and ANY other DOCUMENTS signed by Machado that concern the use, confidentiality, and disclosure of MATTEL'S TRADE SECRETS.

**REQUEST FOR PRODUCTION NO. 101:**
YOUR entire personnel file (except health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers) for Mariana Trueba Almada ("Trueba"), including but not limited to ANY

**Exhibit 14 - Page 138**

employment agreements between YOU and Trueba, ANY confidentiality or non-disclosure
agreements signed by Trueba, and ANY other DOCUMENTS signed by Trueba that concern the
use, confidentiality, and disclosure of MATTEL's TRADE SECRETS.

**REQUEST FOR PRODUCTION NO. 102:**

YOUR entire personnel file (except health care specific information, social
security numbers, tax identification numbers, dates of birth, bank account numbers, and checking
account numbers) for Pablo Vargas San Jose ("Vargas"), including but not limited to ANY
employment agreements between YOU and Vargas, ANY confidentiality or non-disclosure
agreements signed by Vargas, and ANY other DOCUMENTS signed by Vargas that concern the
use, confidentiality, and disclosure of MATTEL's TRADE SECRETS.

**REQUEST FOR PRODUCTION NO. 103:**

YOUR entire personnel file (except health care specific information, social
security numbers, tax identification numbers, dates of birth, bank account numbers, and checking
account numbers) for Ron Brawer ("Brawer"), including but not limited to ANY employment
agreements between YOU and Brawer, ANY confidentiality or non-disclosure agreements
signed by Brawer, and ANY other DOCUMENTS signed by Brawer that concern the use,
confidentiality, and disclosure of MATTEL's TRADE SECRETS.

**REQUEST FOR PRODUCTION NO. 104:**

YOUR entire personnel file (except health care specific information, social
security numbers, tax identification numbers, dates of birth, bank account numbers, and checking
account numbers) for Janine Brisbois ("Brisbois"), including but not limited to ANY
employment agreements between YOU and Brisbois, ANY confidentiality or non-disclosure
agreements signed by Brisbois, and ANY other DOCUMENTS signed by Brisbois that concern
the use, confidentiality, and disclosure of MATTEL's TRADE SECRETS.

**REQUEST FOR PRODUCTION NO. 111:**

All DOCUMENTS that refer or relate to ANY contacts allegedly made by Ron
Brawer after his resignation from MATTEL to past or present MATTEL employees, as alleged
in paragraph 60 of YOUR OPERATIVE COUNTERCLAIMS.


**Requests Intertwined with Improper Interrogatories:**

Certain of the RFPs are inextricably intertwined with MGA's First Set of Phase 2 Interrogatories,
in that the documents responsive to these RFPs depend upon Mattel's answers to those
interrogatories. Because the interrogatories in question exceed MGA's allotted interrogatories,
Mattel cannot produce documents in response to the RFPs unless or until the Discovery Master
rules on the counting issue. The following RFPs fall into this category: RFP Nos. 69, 70, 71, 72,
73, 74, 75, 76, 80, 82, 84, 85, 90, 93, 98, 107 and 108.

**Exhibit 14 - Page 139**

**Overbroad Requests To Which Mattel Will Not Supplement Its Responses:**

<u>Requests Seeking Documents Relating To Bratz</u>

RFP Nos. 72, 87, 92, 95 and 97 seek documents relating to the Bratz line of dolls and products. The documents responsive to RFP No. 72 depend upon Mattel's answer to RFA No. 4, the RFA which you refused to limit by timeframe or product line. To the extent this RFP seeks documents regarding any Mattel product developed from the intellectual property that the jury found Mattel owned in the Phase 1 trial, such documents appear to be irrelevant. RFP No. 72 is also dependent upon Mattel's answer to Interrogatory No. 4, one of the interrogatories that is beyond MGA's allotted number.

To the extent RFP Nos. 87, 92, 95 and 97 seek information regarding any Mattel product developed from the intellectual property that the jury found Mattel owned in the Phase 1 trial, the requests are overbroad and seek documents that again appear to be irrelevant. Thus, RFP Nos. 95 and 97 are wholly objectionable on this ground alone. RFP Nos. 87 and 92 seek documents that refer or relate to any market research generated from January 1, 2000 to the present relating to Bratz popularity (RFP No. 87) or the sale of the Bratz line of dolls and products (RFP No. 92). The previous discovery master found similarly overbroad requests that sought all documents referring or relating to Bratz to be overbroad in that they did not "have anything to do with the claims and defenses in this case." <u>See, e.g.</u>, Discovery Master's Order, dated May 22, 2007, at 17:14-16, 18:16-19, 21:1-7. In addition, RFP Nos. 87 and 92 are duplicative of previous requests, including MGA RFP Nos. 175, 555, 557, 567, 737 and 787.

<u>Requests Seeking Documents Relating To Barbie</u>

RFP Nos. 86, 91 and 94 seek broad categories of documents relating to "the Barbie line of dolls and products," an undefined term. RFP Nos. 86 and 91 seek market research generated from January 1, 2000 to the present regarding the sales or popularity of the Barbie line of dolls and products (RFP No. 86) or the sale of the Barbie line of dolls and products (RFP No. 91). These two requests seek documents responsive to previously served MGA requests, including RFP Nos. 149-164, 555, 567, 737 and 787. Like those previously served requests, RFP Nos. 86 and 91 are overbroad and seek documents that are irrelevant. RFP No. 94 seeks documents referring or relating to *future* sales of the Barbie line of dolls and products, which are also irrelevant. Notably, the Court previously rejected MGA arguments that such information is material.

<u>Requests Seeking Documents Relating To "The 2007 Toy Recall"</u>

RFP Nos. 77, 78, 80, 81, 82, 83 and 84 seek broad categories of documents relating to "the 2007 TOY RECALL." These broad categories are duplicative of MGA RFP Nos. 591-593. Like those previous requests, these requests seek documents that do not have anything to do with the claims and defenses in this case.

<u>Requests Seeking Documents Relating To Jon Corey's January 9 Letter</u>

RFP Nos. 109 and 110 seek documents relating to the hardware based backup system for Mattel's Exchange servers referenced in Jon Corey's letter of January 9, 2009. However, Mattel

**Exhibit 14 - Page 140**

requested that MGA object to Mattel's change to this hardware based backup system by January
14, 2009.  MGA failed to respond at all until February 10, 2009 -- more than a month after Mr.
Corey's initial letter.  Thus, MGA waived any objections to the hardware change and is not
entitled to discovery regarding the hardware.  In addition, these requests are overbroad, irrelevant
and unduly burdensome.

<u>Request Seeking Communications Relating to Lobbying</u>

RFP No. 79 seeks "ALL non-privileged COMMUNICATIONS between MATTEL and ANY
PERSON that REFER OR RELATE to ANY lobbying efforts by or on behalf of MATTEL
concerning proposed legislation before the U.S. Congress to ban ANY chemicals or other
substances found in MATTEL PRODUCTS."  This request seeks documents that do not have
anything to do with the claims and defenses in this case.

<u>Requests Seeking Personnel Files of Employees and Contractors Moving To Mattel</u>

RFP Nos. 105 and 106 seek Mattel personnel files for any past employees or contractors hired
since January 1, 1998 who worked for MGA prior to working for Mattel (RFP No. 105) or who
worked in designing, manufacturing, producing or selling dolls prior to working for Mattel (RFP
No. 106).  Both of these requests are overbroad and seek documents that do not have anything to
do with the claims and defenses in this case.

Mattel anticipates serving supplemental responses to RFP Nos. 88, 89, 99, 100, 101, 102, 103,
104 and 111 on Thursday, July 6, 2009 and producing any additional responsive documents on a
rolling basis after that date.

Very truly yours,


/s/ Marshall M. Searcy

Marshall M. Searcy III

MMS
07975/2988448.3

**Exhibit 14 - Page 141**

**Tiffany Garcia**

| | |
|---|---|
| **From:** | Bridget Hauler |
| **Sent:** | Friday, June 26, 2009 1:22 PM |
| **To:** | Andrea Hoeven; Laura Kinsey; Tiffany Garcia |
| **Cc:** | Amy Kuzio |
| **Subject:** | FW: Bryant v. Mattel |
| **Attachments:** | 2988716_Jun 26 Searcy letter to Nogues.PDF |

for file

---

**From:** Bridget Hauler
**Sent:** Friday, June 26, 2009 1:21 PM
**To:** 'jpn@msk.com'
**Cc:** Marshall Searcy
**Subject:** Bryant v. Mattel

Counsel, please see the attached correspondence.

Thanks,

Bridget Hauler
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3402
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  bridgethauler@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

6/26/2009

**Exhibit 14 - Page 142**

# EXHIBIT 15

**Tiffany Garcia**

| | |
|---|---|
| **From:** | Bridget Hauler |
| **Sent:** | Wednesday, March 03, 2010 6:25 PM |
| **To:** | Hurst, Annette; John Quinn |
| **Subject:** | RE: Revised Eckert Document Requests |

With respect to the other outstanding item, Mattel is willing to produce any agendas, minutes and Eckert memos to the Board concerning Mattel's Girls' Brands or the performance of executives responsible for Girls' brands, as long as we can redact all non-responsive information. This is necessary because the minutes, in particular, contain highly sensitive, irrelevant info such as info re contemplated acquisitions.

---

**From:** Hurst, Annette [mailto:ahurst@orrick.com]
**Sent:** Wednesday, March 03, 2010 5:43 PM
**To:** John Quinn; Bridget Hauler
**Subject:** RE: Revised Eckert Document Requests

Thanks. Understood and do appreciate the effort. Let me think and get back to you. In the meantime where are we on the rest?

---

**From:** John Quinn [mailto:johnquinn@quinnemanuel.com]
**Sent:** Wednesday, March 03, 2010 5:41 PM
**To:** Hurst, Annette; Bridget Hauler
**Subject:** Re: Revised Eckert Document Requests

Annette--trying to work with u on this--

Mattel has literally thousands of in licenses and out licenses (none of which were reviewed by eckert or were relied on for his testimony). Is there any way we could limit this in some reasonable way.

One suggestion: u could designate types of products/licenses; mattel could give u a range of royalty rates for each; u would have the ability to confirm the representation of the range by sampling (with or without the involvement of some neutral)--reviewing the documents representing the high and low end.

I am thinking out loud here, and don't have client authority for this.

John B. Quinn
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: 213-443-3000
Facsimile: 213-443-3100
E-mail: johnquinn@quinnemanuel.com
Web: www.quinnemanuel.com


"There is nothing which is not the subject of debate. Amidst all this bustle tis not reason which carries the prize but eloquence, and no man needs ever despair of gaining prosyletites to the most extravagant hypothesis who has art enough to represent it in any favorable colors. The victory is not gained by the men at arms who manage the pike and sword, but by the trumpeters, drummers and musicians of the army."

--David Hume

---

**From:** Hurst, Annette <ahurst@orrick.com>
**To:** Bridget Hauler

1

**Exhibit 15 - Page 143**

**Cc:** John Quinn
**Sent:** Wed Mar 03 16:20:49 2010
**Subject:** RE: Revised Eckert Document Requests

Bridget:

Thanks.

I've reviewed the Infante order and I don't agree that it has any relevance to the current situation. Those document requests were limited by definition to matters involving the institution of the Mattel v. Bryant suit. We are now dealing with a much broader set of issues. Mattel has put at issue on its RICO claim a potential damages claim involving every girls product it has sold in the last 10 years.

Nonetheless, I am willing to agree to limit the requests only to those sets of Board Agendas, Minutes and Memos that concern the Girls' Brands or anything pertinent thereto (such as the performance of executives responsible for Girls Brands).

With regard to the request for licenses (which you omitted from your proposal), unless Mattel stipulates that it will never make any request for a reasonably royalty or damages calculation based upon any assumed royalty in this case, then I must also insist on production of those documents. If it will so stipulate, then we can drop that category as well in this context.

We need the financial spreadsheets in native format at some point. I don't need to insist on them now for purposes of resumption of the Eckert deposition. Also, to be clear, we are not dropping our requests for some portion of these other types of documents permanently. We will need to revisit the issue of market research with respect to Mattel's lost opportunity claim. But again, I don't think we need to deal with that in the context of the Eckert deposition.

If we can reach an accommodation on these final 2 disputed issues then I believe we will not have to trouble the Court further with this. If not, then I will send something to Sid later this evening so the Court can consider it tomorrow night. I'd appreciate it if you would let me know by 7 p.m. whether or not we have a deal. You can reach me at 415-713-3273 today, tonight (or tomorrow) if you wish to discuss.

---

**From:** Bridget Hauler [mailto:bridgethauler@quinnemanuel.com]
**Sent:** Wednesday, March 03, 2010 3:17 PM
**To:** Hurst, Annette
**Cc:** John Quinn
**Subject:** RE: Revised Eckert Document Requests

Sorry, I've now attached the order.

---

**From:** Bridget Hauler
**Sent:** Wednesday, March 03, 2010 3:15 PM
**To:** 'Hurst, Annette'
**Cc:** John Quinn
**Subject:** RE: Revised Eckert Document Requests

Annette, regarding each of your questions:

Item 1: the annual information. The year-end information will give you the complete financial results for each year.
Item 2: the quarterly information that Mr. Eckert would have received, meaning the quarterly forecasts beginning in 2000, not 1999.
Item 3: all presentations in the Board packages concerning any of the Girls Brands from 2000 to the present.
Items 4/5: the restriction is to meeting minutes and memos from Mr. Eckert to the Board that refer or relate to Mattel's decision to sue Bryant and any Mattel decision as to the litigation against MGA or involving Bratz. We updated this

**Exhibit 15 - Page 144**

production prior to Mr. Eckert's deposition but are checking now to see if any additional responsive documents exist as of today. I've attached the order for your reference.

With respect to the native format issue, your understanding differs from ours. Nonetheless, as I noted below, the documents at issue here are hard copy compilations, thus it's a moot point with respect to our current discussion.

Please let us know if you have any other questions.

Best regards,
Bridget

---

**From:** Hurst, Annette [mailto:ahurst@orrick.com]
**Sent:** Wednesday, March 03, 2010 2:32 PM
**To:** Bridget Hauler
**Cc:** John Quinn
**Subject:** RE: Revised Eckert Document Requests

Bridget:

To get to the point and avoid posturing I am not going to respond to your various arguments unless and until we need to take this to the Court.

Please clarify the following so that we can consider this proposal:

With respect to items 1 and 2, are you proposing to produce quarterly or only annual information, and with respect to forecasts please clarify whether you are proposing to produce the forecast in 1999 for the year 2000?

With respect to item 3 are you agreeing to produce all board presentations that concern any of the Girls Brands from 2000 to present?

With respect to items 4 and 5, rather than make me dig for an order, please state exactly what is the limitation you propose and please explain whether there are any documents that will be produced in light of that limitation. I don't want to mess around arguing over some limitation if you already are aware that no documents will be produced.

With respect to your comments on native format documents, that is simply incorrect. In fact, we proposed a blanket production of spreadsheets in native format months ago and your side refused to do so, stating instead that the parties should continue to request native format on a document-by-document basis. To my knowledge, we have not since refused to produce anything in native format.

Thank you.

Annette

---

**From:** Bridget Hauler [mailto:bridgethauler@quinnemanuel.com]
**Sent:** Wednesday, March 03, 2010 2:22 PM
**To:** Hurst, Annette
**Cc:** John Quinn
**Subject:** Revised Eckert Document Requests

Annette,

We have reviewed the revised categories that you sent yesterday morning. Unfortunately, these categories seek documents that are wholly irrelevant to the claims in this suit. Nonetheless, to address the concerns raised in your email, we provide the following counter proposal, reserving all rights in the event we cannot avoid motion practice.

3

**Exhibit 15 - Page 145**

First, you noted in yesterday's email that Mattel has asserted that sales of many Mattel Girls products were harmed by MGA's conduct.  However, the categories in the attachment to your email are not limited to documents relating to the products at issue in this case.  In addition, as you know, Mattel has already produced P&Ls for the Mattel harmed product at the SKU level.  Thus, MGA already has ample financial data regarding each of the Mattel products harmed by MGA's conduct.  Mattel also has produced research reports and presentations regarding the Mattel harmed products and Bratz, consistent with prior orders of the Court and the Discovery Master.

Nonetheless, to avoid unnecessary motion practice, Mattel is willing to provide certain categories of documents in your letter as limited below:

1.   Quarterly financial packages: Mattel will produce the end of year financial packages for 2000 through the present.
2.   Quarterly forecasts: Mattel will produce forecasts for 2000 through the present.
3.   Board packages: Mattel will produce written memoranda from Kevin Farr to the Board of Directors regarding quarterly results as well as presentations relating to Mattel's Girls brands.
4.   Board minutes: Mattel will supplement its production of Board minutes, to the extent any additional responsive minutes exist, consistent with Discovery Master Infante's Order, dated September 12, 2007, at 6:2-7:10.
5.   Board memoranda: Mattel will supplement its production of memoranda from Mr. Eckert to the Board, to the extent any additional responsive memoranda exist, consistent with Discovery Master Infante's Order, dated September 12, 2007, at 6:2-7:10.

With respect to the POS Reports, Mattel does not intend to rely on any POS data to establish that NPD market share reports are inaccurate.  With respect to valuations of MGA or its brands, Mattel has confirmed that the only such valuations that may exist are privileged.  Similarly, with respect to communications to Mattel's sales team regarding the Injunctive Orders, the only such communications that exist are privileged.  The remaining categories of documents seek irrelevant and highly sensitive information.

Finally, you requested that any spreadsheets in the above categories be produced in Native format; however, these files are compilations maintained in hard copy, not electronic files, so there are no native format spreadsheets to produce.  Mattel is willing to consider your request to produce the P&L data referred to above in native format.  However, MGA has repeatedly rejected Mattel's request that MGA produce certain financial reports in native format.  Any agreement to produce financial reports in native format must be reciprocal.

I look forward to hearing from you and hope that we can resolve this issue.

Best regards,

**Bridget Hauler**
*Associate,*
Quinn Emanuel Urquhart Oliver & Hedges LLP.

865 S. Figueroa St 10th Floor
Los Angeles, Ca 90017
213-443-3402 Direct
213.443.3000 Main Office Number
213.443.3100 FAX
bridgethauler@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.
"EMF <orrick.com>" made the following annotations.
-----------------------------------------------------------------------------
===================================================================

4

**Exhibit 15 - Page 146**

IRS Circular 230 disclosure:
To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication, unless expressly stated otherwise, was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.

===========================================================

NOTICE TO RECIPIENT:  THIS E-MAIL IS  MEANT FOR ONLY THE INTENDED RECIPIENT OF THE TRANSMISSION, AND MAY BE A COMMUNICATION PRIVILEGED BY LAW.  IF YOU RECEIVED THIS E-MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS E-MAIL IS STRICTLY PROHIBITED.  PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY RETURN E-MAIL AND PLEASE DELETE THIS MESSAGE FROM YOUR SYSTEM. THANK YOU IN ADVANCE FOR YOUR COOPERATION.

For more information about Orrick, please visit http://www.orrick.com/
=========================================================
===========================================================

**Exhibit 15 - Page 147**

# EXHIBIT 16

JUL 2 0 2007

# O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
CENTURY CITY
HONG KONG
LONDON
NEWPORT BEACH

400 South Hope Street
Los Angeles, California  90071-2899

TELEPHONE  (213) 430-6000
FACSIMILE  (213) 430-6407
www.omm.com

NEW YORK
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TOKYO
WASHINGTON, D.C.

OUR FILE NUMBER
0527436-00008

WRITER'S DIRECT DIAL
(310) 246-8462

WRITER'S E-MAIL ADDRESS
wcharron@omm.com

July 20, 2007

## VIA FACSIMILE (LETTER ONLY) AND U.S. MAIL

Michael T. Zeller, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017

Re: ***Bryant v. Mattel, Inc and Consolidated Actions.***
***Case No. CV 04-09049 SGL (RNBx)***

Dear Mr. Zeller:

MGA's Second Supplemental and Amended Responses to Mattel's Third Set of Requests for Admissions is enclosed.

After reconsideration, MGA has decided to stand on MGA's objections that certain requests call for legal conclusions and violate attorney-client privilege and attorney work product privilege. Therefore, MGA has not supplemented Requests for Admissions Nos. 192, 193, 199, 200, 206, 207, 213, 214, 222-224, 226, 228, 230, 232, 234, 236, 238 and 240.

The same objections to similar requests for admissions are currently before Judge Infante in connection with a motion to compel that Mattel filed against Carter Bryant. Consequently, it is premature to answer these requests until Judge Infante has had an opportunity to rule on the issues. MGA will await Judge Infante's ruling before taking further action with regard to these requests.

Very truly yours,

*William J. Charron/CN*

William J. Charron
for O'MELVENY & MYERS LLP

Enclosure
cc : Michael Page, Esq.
     James Spertus, Esq.
LA2:837334.1

**Exhibit 16 - Page 148**



# O'MELVENY & MYERS LLP

400 South Hope Street
Los Angeles, California 90071-2899

TELEPHONE (213) 430-6000
FACSIMILE (213) 430-6407

## F A X   T R A N S M I T T A L

| DATE & TIME: | | TOTAL NUMBER OF PAGES: |
|---|---|---|
| Friday, July 20, 2007 | | 2 |

| TO: | FAX NUMBER: | TELEPHONE NUMBER: |
|---|---|---|
| Michael T. Zeller, Esq. - QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP | (213) 443-3100 | (213) 443-3000 |
| Michael H. Page, Esq. - KEKER & VAN NEST LLP | (415) 397-7188 | (415) 391-5400 |
| James W. Spertus, Esq. LAW OFFICES OF JAMES W. SPERTUS | (310) 826-4711 | (310) 826-4700 |

| FROM: | RETURN FAX NUMBER: | TELEPHONE NUMBER: |
|---|---|---|
| Chris D. Nguyen | (213) 430-6407 | (213) 430-6389 |

## M E S S A G E

**IF YOU DID NOT RECEIVE ALL PAGES, PLEASE CALL OUR FAX DEPARTMENT AT (213) 430-6357.**

| FILE NO.: | 527,436-004 | RETURN ORIGINAL TO: | C. Kelley Canning |
|---|---|---|---|
| USER NO.: | 15823 | EXTENSION: | 6564 |
| RESPONSIBLE ATTY NAME: | Chris D. Nguyen | LOCATION: | 11S6 |
| SPECIAL INSTRUCTIONS: | | | |

This document is intended for the exclusive use of the addressee. It may contain privileged, confidential, or non-disclosable information. If you are not the addressee, or someone responsible for delivering this document to the addressee, you may not read, copy, or distribute it. If you have received this document by mistake, please call us promptly and securely dispose of it. Thank you.

**Exhibit 16 - Page 149**

LA2:834128

# EXHIBIT 17

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR EMBARCADERO CENTER

SAN FRANCISCO, CALIFORNIA 94111-4144
——
TEL: (415) 984-6400

FAX (415) 984-2698

http://www.skadden.com

DIRECT DIAL
415-984-2547
Email Address
TMILLER@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEWARK
NEW YORK
PALO ALTO
RESTON
WASHINGTON, D.C.
WILMINGTON
——
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO

November 27, 2007

Via Facsimile and E-Mail

Jon Corey, Esq.
Quinn Emanuel
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

RE:   Mattel v. Bryant, et al.

Dear Jon:

I write in response to your letter to me dated November 26, 2007,
which responded to my November 21, 2007, letter to Dylan Proctor regarding MGA
Entertainment, Inc.'s, MGA Entertainment (HK) Ltd.'s, MGAE de Mexico S.R.L. de
C.V.'s, and Isaac Larian's Objections and Responses to Mattel's Revised Third Set
and Amended Fourth Set of Interrogatories.

At our conference of counsel on November 16, 2007, I told you that
the MGA entities and Mr. Larian would be supplementing their responses to the
Revised Third and Amended Fourth Sets of Interrogatories, but never committed to
supplement all of those responses.  Indeed, I was very clear that the MGA entities
and Mr. Larian may decide to stand on their objections with respect to certain of the
interrogatories.  We are presently deciding which responses the MGA entities and
Mr. Larian will supplement and will provide those supplemental responses to you on
or before November 30, 2007, as agreed.

Very truly yours,

Timothy A. Miller

# EXHIBIT 18

RECEIVED
MAR 2 0 2008

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

525 UNIVERSITY AVENUE
PALO ALTO, CALIFORNIA 94301

TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

DIRECT DIAL
650.470.4511
DIRECT FAX
888.329.6334
EMAIL ADDRESS
APARK@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

March 18, 2008

**By Email and U.S. Mail**

Jon Corey, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

      RE:    *Carter Bryant v. Mattel, Inc.* (and consolidated cases)
              Case No. CV 04-9049 SGL (RNBx) (consolidated with
              Cases Nos. CV 04-09059 and CV 05-02727)

Dear Jon:

          I am writing to follow up on our meet-and-confer discussion on
February 21, 2008 regarding Mattel's motion to compel MGA to produce documents in
response to Mattel's third set of requests for production and for sanctions. Because we
have not heard back from you in response to our requests to conclude the meet-and-
confer, I am writing to set forth our position with respect to those issues about which we
have not yet concluded our discussions.

Documents And Things Related To Other Lawsuits And Claims By MGA That Other
Products Infringe Bratz (Request Nos. 1-30)

          Request Nos. 1-30 seek every scrap of paper and every byte of data
regarding at least 25 different lawsuits, involving 29 different parties, spanning seven
years. MGA will stand by its objections to these requests, including that the requests
are overbroad, seek a host of irrelevant information, are unreasonably cumulative of
other discovery requests and are unduly burdensome. MGA also believes, as set forth
in its papers, that the burden of searching for and producing the non-privileged
documents, redacting any partially privileged documents, and logging any privileged or
redacted documents is outweighed by any marginal relevance of the requested
documents. In response to other requests for production, MGA has produced thousands
of documents pertaining to prior Bratz-related litigations and its rights to Bratz,
including numerous sworn statements and testimony. MGA does not believe any

**Exhibit 18 - Page 151**

Jon Corey, Esq.
March 18, 2008
Page 2

further production is warranted.  (*See* MGA Opposition to Mattel's Motion to Compel
Production of Documents and Things and for Sanctions at 7-11, Temkin Decl. at ¶¶ 3,
6; Suppl. Temkin Decl. at ¶¶ 2-5.)

 During the parties' February 21 conference of counsel, Mattel declined to
narrow Request Nos. 1 through 30, but proposed – in a purported attempt to alleviate
the burden on MGA – to go to all places, including counsel's offices, where non-
privileged, potentially responsive documents are located, to look through the documents
themselves, and select what they want.  Mattel's proposal does not cure the overbreadth
or cumulative nature of the requests or eliminate the irrelevance.  Nor does Mattel's
proposal eliminate or even meaningfully reduce the burden on MGA.  As explained in
Mr. Temkin's supplemental declaration, the documents from 25 different lawsuits are
not all sitting conveniently on a single shelf or in a single location; they are stored in
multiple locations, including overseas.  Thus, locating all potentially responsive
documents is itself a burden.  Moreover, the non-privileged documents are not
segregated from the privileged documents, and not all documents that contain privileged
information are privileged in their entirety.  In addition, some documents may be
protected from disclosure under a protective order in one of the litigations.  (Suppl.
Temkin Decl. ¶¶ 3, 6.)  Accordingly, under Mattel's proposal, MGA would still have to
review a significant portion, if not all, of the documents to determine which are
privileged or protected and remove them before any inspection by Mattel.  In addition,
MGA would still have to redact the partially privileged documents and log redacted and
privileged documents.  Thus, Mattel's proposal does not cure the defects with these
requests.  As phrased and even with Mattel's proposal to review the documents
themselves, Mattel's requests are an improper and unduly burdensome fishing
expedition.

Documents Concerning The Use Or Considered Use Of The Name "Jade" (Request
No. 31)

 During the February 21 conference of counsel, MGA explained that it
has already produced documents responsive to this request through January 1, 2001.
Mattel proposed that MGA produce documents through September 30, 2001.  Mattel
asserts that documents regarding use of the name "Jade" are relevant to the issue of
when MGA developed and created Bratz because one of the original Bratz dolls was
named "Jade."  (Mattel's Motion to Compel at 8.)

 MGA proposes that this request should be limited to seek documents
through June 30, 2001.  By that time, as Mattel has acknowledged, MGA had already
released the Bratz dolls (including a doll named "Jade") to the market.  Thus,
documents after June 2001 are irrelevant to and unnecessary to establish when Bratz

**Exhibit 18 - Page 152**

Jon Corey, Esq.
March 18, 2008
Page 3

was first created or developed.  Please let us know whether you will accept MGA's
proposed compromise with respect to this request.

<u>Documents Relating To Sandra Bilotto (Request Nos. 32-41)</u>

Request Nos. 32, 33, 36 and 38 seek, respectively, all documents that
refer or relate to when Ms. Bilotto first came to MGA's attention, the circumstances
under which she was hired, all of Ms. Bilotto's work for Mattel before January 1, 2001,
and MGA's knowledge of that work.  During the parties' February 21 conference of
counsel, MGA explained that these requests are objectionable for various reasons set
forth in our papers.  MGA further explained that even if these documents may be
relevant to Mattel's allegation that MGA induced Mattel employees to abscond with
Mattel's trade secrets, that is a Phase 2 issue as to which discovery has been stayed.
Please confirm that Mattel will withdraw its motion as to these Phase 2 requests.

Request Nos. 35, 37 and 39 seek, respectively, all documents that refer
or relate to Ms. Bilottto's work for MGA, all tangible items that she gave to MGA, and
all payments made by MGA to her – all before January 1, 2001.  Mattel contends that
MGA improperly limited its search to documents concerning Prayer Angels.  That is not
the case.  As MGA explained at the February 21 meeting, MGA has produced all non-
privileged responsive documents in its possession, custody or control and did not limit
its search to documents concerning Prayer Angels.  Request 34 seeks all documents that
refer or relate to Ms. Bilotto's first engagement with MGA, including invoices.  As
MGA explained at the February 21 meeting, although MGA objected to this request, it
did not withhold non-privileged documents on the basis of its objections, and
documents responsive to this request were produced in response to Request Nos. 35, 37
and 39.  Accordingly, please confirm that Mattel will withdraw its motion as to Request
Nos. 34, 35, 37 and 39.

Request No. 40 seeks all documents that refer or relate to MGA's
payments to Ms. Bilotto after January 1, 2001.  Request No. 41 seeks all
communications between Ms. Bilotto and Isaac Larian, with no time or subject matter
limitation.  Mattel has asserts that these documents are relevant to the conception,
design and development of Prayer Angels and whether Ms. Bilotto worked on the
development of Bratz, as well as Mattel's trade secrets claim.  (Mattel's Motion to
Compel at 9.)  During the February 21 conference of counsel, MGA reiterated its
objections to these requests and stated that, with respect to Request No. 41, MGA had
produced non-privileged responsive documents through January 1, 2001 and that it did
not limit its production to documents concerning Prayer Angels.  Mattel stated that it
would be willing to narrow Request No. 40 to seek documents from January 1, 2001
through September 30, 2001 and would narrow Request No. 41 to seek documents
through September 30, 2001.  MGA proposes that Request Nos. 40 and 41 should be

**Exhibit 18 - Page 153**

Jon Corey, Esq.
March 18, 2008
Page 4

limited to seek documents through June 30, 2001 to the extent that they refer or relate to Bryant, Bratz or Prayer Angel. By that time, as Mattel has acknowledged, MGA had already released the Bratz and Prayer Angels dolls to the market. Thus, documents after June 2001 are irrelevant to and unnecessary to establish when Bratz or Prayer Angels were created or developed. In addition, to the extent Mattel asserts that any documents are relevant to Mattel's trade secrets claim, that claim is a Phase 2 claim for which discovery has been stayed. Please let us know whether you will accept MGA's proposed compromise with respect to Request Nos. 40 and 41.

<u>MGA's Communications With And Payments To Paula Garcia (Request Nos. 42, 76 and 77)</u>

Request No. 42 seeks all communications between Isaac Larian and Paula Garcia without any limitation as to subject mater or time. Mattel asserts that these documents are relevant to show (i) the timing of the creation and development of Bratz and (ii) whether Ms. Garcia shared confidential Mattel information with MGA while she was at Mattel.

During the parties' February 21 conference of counsel, MGA explained that Mattel's allegations regarding sharing of confidential Mattel information concern Phase 2 claims, which the court has stayed. With respect to the development of Bratz, MGA explained that, in response to other requests, it has already produced thousands of pages reflecting communications between Ms. Garcia and others, including Mr. Larian, that concern the timing of the creation and development of Bratz.[1] These documents

---

[1]   These requests include, but are not limited to, the following:

All DOCUMENTS prepared, drafted, written, transmitted or received (whether in whole or in part) prior to December 31, 2001 RELATING TO BRATZ. (1st set to Larian, No. 1)

All DOCUMENTS RELATING TO BRATZ and RELATING TO any time prior to December 31, 2001 (regardless of when such DOCUMENT was prepared, written, transmitted or received, whether in whole or in part). (1st set to Larian, No. 2)

All DOCUMENTS RELATING TO the origin(s), conception and creation of BRATZ, including without limitation all DOCUMENTS RELATING TO the timing and the method and manner in which BRATZ first came to YOUR or MGA's attention. (1st set to Larian, No. 3)

All DOCUMENTS RELATING TO COMMUNICATIONS between YOU or MGA and BRYANT prior to December 31, 2001 (regardless of when such DOCUMENT was prepared, written, transmitted or received, whether in whole or in part), including without limitation all diaries, notes, calendars, logs, phone records and letters, that reflect, record or memorialize or otherwise RELATING TO any such COMMUNICATIONS. (1st set to Larian, No. 12)

ALL DOCUMENTS prepared, created, received or transmitted (whether in whole or in part) prior to January 1, 2001 that REFER OR RELATE TO BRYANT. (1st set to MGA, No. 6)

**Exhibit 18 - Page 154**

Jon Corey, Esq.
March 18, 2008
Page 5

include, among others, MGA 0011243-MGA 0053550.  MGA explained, as it
demonstrated in its papers, that Mattel's demand for every single communication
between Paul Garcia and Isaac Larian over a nine-year period is untailored and
untethered to any particular claim or defense and is overbroad.  (MGA's Opp. at 14-15.)
Nonetheless, MGA offered to conduct a targeted search for and to produce (to the
extent they were not already produced) all communications between Ms. Garcia and
Mr. Larian through May 31, 2001 that refer or relate to Bryant or Bratz.  Mattel rejected
that proposal and insisted that MGA produce documents (with no subject matter
limitation) through September 30, 2001.

 Mattel's proposal is unacceptable because, among other reasons, it is still
overbroad in that it is unlimited in subject matter and not tethered to any particular
claim or defense.  MGA submits that Request No. 42 should be limited to
communications between Mr. Larian and Ms. Garcia that refer or relate to Bryant or
Bratz through June 30, 2001.  Documents from that time period would yield what
Mattel claims it needs because the Bratz dolls were first sold in the market in June 2001
and thus were created and developed by that date.  Please let us know if Mattel will
agree to MGA's proposal.

 Request Nos. 76 and 77 seek all documents that refer or relate to
payments made by MGA to Paula Garcia.  Mattel asserts that these documents are
relevant to show Ms. Garcia's bias and credibility.  During the parties' February
conference of counsel, MGA reiterated its objections to these requests.  MGA also
explained that it has already produced approximately 60,000 pages of documents

---

ALL DOCUMENTS that REFER OR RELATE TO any work, activities or services, including without
limitation any freelance work or consulting services, that BRYANT performed for or with YOU or on
YOUR behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was prepared, created,
received or transmitted, whether in whole or in part).  (1st set to MGA, No. 7)

ALL DOCUMENTS prepared, written, transmitted or received (whether in whole or in part) prior to
January 1, 2001 that REFER OR RELATE TO BRATZ. (Mattel's First Set of Requests for Production to
MGA at Request No. 32)

ALL DOCUMENTS that REFER OR RELATE TO BRATZ that REFER OR RELATE TO any time
prior to January 1, 2001 (regardless of when such document was prepared, written, transmitted or
received, whether in whole or in part).  (Mattel's First Set of Requests for Production to MGA at Request
No. 33)

ALL DOCUMENTS that REFER OR RELATE TO the origin(s), conception or creation of BRATZ,
including without limitation all DOCUMENTS that REFER OR RELATE TO the timing of, and the
method and manner in which, BRATZ first came to YOUR attention (1st set to MGA, No. 36)

ALL DOCUMENTS that REFER OR RELATE TO BRYANT'S participation in the conception, creation,
design, development, sculpting, tooling, production or manufacture of BRATZ (1st set to MGA, No. 46)

**Exhibit 18 - Page 155**

Jon Corey, Esq.
March 18, 2008
Page 6

regarding Paula Garcia in response to other requests, including documents showing payments that MGA and/or Isaac Larian made to her. MGA explained that those documents include, among others: MGA 0070878-MGA 0070948; MGA 0070962-MGA 0071044; MGA 0071047-MGA 0071117; MGA 0071119-MGA 0071290; MGA 0071292-MGA 0071365; MGA 0602411-MGA 0602598; MGA 0602599-MGA 0602616; MGA 1195999-MGA 1196008; and MGA 0011243-MGA 0053550. MGA therefore believes that it has produced documents sufficient to show payments that MGA has made to Ms. Garcia and that Mattel does not also need every shred of paper that relates in any way to every payment Ms. Garcia received. Please let us know whether Mattel will withdraw its motion with respect to Request Nos. 76 and 77.

Documents Regarding The Conception And Development Of Scooter Samantha (Request Nos. 43-55)

Request Nos. 43-55 seek various documents and things relating to MGA's Scooter Samantha product, including when and the circumstances under which that product was first conceived of, and documents sufficient to show the manufacturing and shipping dates of Scooter Samantha products. During the parties' meet and confer discussion and in its papers, Mattel asserted that these documents are relevant (i) to Mattel's trade secrets claim and Mattel's defense to MGA's unfair competition claims, both of which are Phase 2 claims; and (ii) to challenge MGA's development timeline of Bratz dolls; and (iii) to impeach Paula Garica's testimony about her involvement in the product conception, design and development of MGA products during the year 2000.

MGA continues to believe, as set forth in its briefing and as explained during the conference of counsel, that Mattel is not entitled at this time to documents relating to the conception and development of Scooter Samantha because, among other reasons, such documents concern Phase 2 claims. Mattel's assertion that documents concerning Scooter Samantha are necessary to impeach MGA's statements about the development timeline of Bratz or to impeach Paula Garcia also do not justify production of these Phase 2 documents. MGA has received thousands of documents and days of testimony concerning the development of Bratz and the timeline thereof. Mattel has likewise received thousands of documents regarding Paula Garcia, including her involvement in the development of Bratz. Although Mattel asserts that documents related to Scooter Samantha might be relevant to MGA's or Ms. Garcia's credibility, that speculative possibility is too remote to justify the breadth of Mattel's requests regarding this Phase 2 product line, especially at this time. Please let us know whether Mattel will reconsider its position with respect to Request Nos. 43-45 and withdraw its motion as to these requests.

**Exhibit 18 - Page 156**

Jon Corey, Esq.
March 18, 2008
Page 7

Documents Relating To Scott Reyes And Space Babes (Request Nos. 56-75)

During the February 21 conference, MGA stated that Request Nos. 56-75, which seek documents relating to Scott Reyes and Space Babes, concern exclusively Phase 2 issues.  Mattel agreed.  In light of that, please confirm that Mattel will withdraw its motion as to these requests.

Personnel and vendor files for individuals involved in the development of Bratz and individuals previously employed by Mattel (Request Nos. 78-88)

Request Nos. 78-86 seek all personnel and vendor files for Maureen Mullen, Scott Reyes, Sandra Bilotto, Steve Linker, Veronica Marlow, Peter Marlow, Wendy Ragsdale, Billy Ragsdale and Sarah Halpern.  Mattel asserts that these documents are relevant because these people have knowledge regarding the conception, creation and development of Bratz.  In response to Request Nos. 78-86, MGA searched for and, to the extent found and not previously produced, produced documents from the personnel and vendor files of these individuals relating to the work they performed on Bratz prior to January 1, 2001.  During the conference of counsel, MGA also offered to produce all documents from the personnel and vendor files of these individuals, if any, that relate to any work they performed on Bratz, Angel and Prayer Angels through May 31, 2001.  Mattel rejected that proposal and insisted that MGA produce documents through September 30, 2001.

MGA submits that Request Nos. 78-86 should be limited to documents from the personnel and vendor files of these individuals, if any, that relate to any work they performed on Bratz, Angel and Prayer Angels through June 30, 2001.  Documents from that time period would yield what Mattel claims it needs because the Bratz dolls were first sold in the market in June 2001 and thus were created and developed by that date.  Please let us know if Mattel will agree to MGA's proposal.

Request Nos. 87 and 88 seek all personnel and vendor files of all former Mattel employees or Mattel vendors that have worked for or provided services to MGA, without limitation.  In its moving brief, Mattel asserted that these documents are relevant to Mattel's trade secrets, RICO and unfair competition claims.  In its reply brief, Mattel asserted that these documents should be produced because the entirety of the Bratz line is directly at issue in Phase 1.  During the conference of counsel, MGA explained – as it did in its papers – that Mattel's trade secrets, RICO and unfair competition claims are Phase 2 claims.  Accordingly, all discovery concerning these claims has been stayed.  MGA also explained that Mattel's assertion that the entire Bratz line is at issue in Phase 1 also does not justify an order compelling production of the personnel and vendor files of *every* former Mattel employee or vendor that *ever* did work for MGA regardless of the topic and time.

**Exhibit 18 - Page 157**

Jon Corey, Esq.
March 18, 2008
Page 8


Mattel asserted that it is entitled to the entire contents of the personnel and vendor files for every MGA employee or vendor who worked on Bratz and previously did work for Mattel. Mattel agreed to provide a list of those people, but did not do so. MGA maintains that Mattel's demand for every document in the personnel and vendor files of every MGA employee or vendor who worked on Bratz and previously did work for Mattel is still overbroad for the reasons set forth in its objections and its briefing. Please let us know whether Mattel will reconsider its position regarding Request Nos. 87 and 88 and withdraw its motion as to those requests.

Sincerely,

Amy S. Park

**Exhibit 18 - Page 158**

# EXHIBIT 19

06-25-2009   05:59pm   From-GLASE_EIL   310-556-29_   T-893   P.001/004   F-084

LAW OFFICES

## GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP

10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067

ᵐ MERITAS LAW FIRMS WORLDWIDE

## FAX TRANSMISSION

TELEPHONE NO.: (310) 553-3000
FACSIMILE NO.:   (310) 556-2920

Number of Pages:   4
(including this page)

| | |
|---|---|
| FROM: | **Amman Khan** |
| DATE: | **June 25, 2009** |

Client Reference No.:

TO:

**Marshall Searcy III**

FAX NO.:

213-443-3100

CONFIRMATION NO:

**Sender's Comments:**

**If you have received this Transmission in error, please call: (310) 553-3000 and mail it to the above address. Thank you.**

NOTE: THE INFORMATION CONTAINED IN THIS FAX MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS NAMED ABOVE.   THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION AND, AS SUCH, IS PRIVILEGED AND CONFIDENTIAL.  IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU HAVE RECEIVED THIS DOCUMENT IN ERROR, AND THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE BY MAIL. THANK YOU.

**Exhibit 19 - Page 159**

06-25-2009    05:59pm    From-GLAS...EIL                                310-556-29...          T-893    P.002/004    F-084

LAW OFFICES

## GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP

10250 CONSTELLATION BOULEVARD

NINETEENTH FLOOR

LOS ANGELES, CALIFORNIA 90067

(310) 553-3000

FAX (310) 556-2920

DIRECT DIAL NUMBER
(310) 556-7865
EMAIL: AKMAN@GLASERWEIL.COM

June 25, 2009

☰☰☰ MERITAS LAW FIRMS WORLDWIDE

### VIA U.S. MAIL, E-MAIL & FAX

Marshall M. Searcy III, Esq.
Quinn, Emanuel, Urquhart,
 Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

      Re:    *Bryant v. Mattel, Inc. and Consolidated Actions*
             U.S.D.C. Eastern Division, Case No. CV04-09049 SGL (RNBx)

Dear Marshall:

        This responds to your June 18, 2009, letter regarding MGAE de Mexico S.R. de C.V.'s ("MGA Mexico") objections to Mattel, Inc.'s ("Mattel") First Set of Requests for Documents and Things (Phase 2) (the "Requests"), which are proper for the reasons stated below.

        First, MGA Mexico properly objected to a number of Requests on the ground that they are not relevant to any of the parties' claims or defenses in this litigation. *See* Fed. R. Civ. Proc. 26(b)(1). For instance, Request Nos. 1-21, 24-26, 29-32, 37, 39-50, 55, and 56 all purport to seek information to establish that Mariana Trueba and Pablo Vargas are managing agents of MGA Mexico. That information is only conceivably relevant to determine whether Ms. Trueba or Mr. Vargas may be compelled to attend depositions based on mere notice. *See* Fed. R. Civ. Proc. 30(b)(1). Both the Discovery Master and Judge Larson have put that inquiry to rest and have ruled that Mattel cannot depose these witnesses without first complying with the Hague Convention. (*See* Dkt. Nos. 5088, 5565.) Indeed, you admitted that you would pursue this route in your June 24, 2009, correspondence. Accordingly, these Requests seek information that is not relevant to the claims or defenses in this litigation, and MGA Mexico has properly objected on this basis.

        Request Nos. 22, 23, 33-36, 57, 59, 61, 63, 65, 69, 77, and 78 are also objectionable because they bear no relevance to the parties' claims and defenses. With respect to MGA Mexico, Mattel's claims focus on the alleged theft of trade secrets from Mattel's Mexican subsidiary. However, these Requests bear no relation to that inquiry. By example only:

680188

**Exhibit 19 - Page 160**

06-25-2009  05:59pm  From-GLAS    EIL                310-556-29(       T-693  P.003/004  F-084

Marshall M. Searcy III, Esq.
June 25, 2009
Page 2

- Request No. 36 seeks "All DOCUMENTS REFERRING OR RELATING TO any disbursements, expenditures, payouts, or other uses of YOUR funds in which VARGAS or TRUEBA had any input, participation or involvement, on or after March 1, 2007."

- Request No. 59 seeks "All DOCUMENTS REFERRING OR RELATING TO VARGAS' and TRUEBA'S duties, obligations or responsibilities to preserve YOUR trade secrets and confidential information, on or after March 1, 2007."

- Request No. 77 seeks "All DOCUMENTS REFERRING OR RELATING TO any rules, procedures, policies, protocol or practices requiring VARGAS or TRUEBA to act in YOUR interests or pursuant to YOUR request."

- Requests No. 78 seeks "All DOCUMENTS REFERRING OR RELATING TO any rules, procedures, policies, protocol or practices requiring YOUR employees, officers, consultants, independent contractors or vendors to act in YOUR interests or pursuant to YOUR request."

MGA Mexico's internal policies, if any, that require employees to act in the company's best interests bear no relation to the claims or defenses in this litigation. Likewise, MGA Mexico's trade secrets and confidential information are completely irrelevant to any claims or defenses asserted in this action. Thus, Mattel has failed to establish the required nexus between the information sought and those Phase 2 issues.

Moreover, Request Nos. 22, 23, 57, 65, 69, 77, and 78 are also objectionable because they are vastly overly broad. For instance:

- Request No. 22 seeks "All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS with any PERSON in the United States by VARGAS or TRUEBA regarding sales or licensing, or potential sales or licensing, on or after March 1, 2007."

- Request No. 23 seeks "All DOCUMENTS REFERRING OR RELATING TO any COMMUNICATIONS with any PERSON in Hong Kong by VARGAS or TRUEBA regarding sales or licensing, or potential sales or licensing, on or after March 1, 2007."

**Exhibit 19 - Page 161**

Marshall M. Searcy III, Esq.
June 25, 2009
Page 3

- Request No. 57 seeks "All DOCUMENTS REFERRING OR RELATING TO any instance in which YOU disavowed or repudiated any actions by VARGAS or TRUEBA."

Among other defects, these Requests are overly broad with respect to subject matter and time, and were properly objected to by MGA Mexico. *See O'Brien v. Maui County*, 2002 U.S. App. LEXIS 10835, at *273 (9th Cir. May 6, 2002) (district court did not abuse discretion in denying motion to compel because document requests were "irrelevant, overbroad and unduly burdensome"); *Davis v. C/O Kissinger*, 2009 U.S. Dist. LEXIS 2828, at *10 (E.D. Cal. Jan. 8, 2009) (denying motion to compel because defendant properly objected to document requests as overbroad, burdensome and not reasonably calculated to lead to the discovery of admissible evidence).

Your letter does not sufficiently describe the relevance of the foregoing Requests. Therefore, unless you describe in detail how *each* of these Requests is relevant to the parties' claims or defenses in this action, MGA Mexico will stand by its objections.

Finally, subject to and without waiving any of its stated objections, to the extent any such documents exist, MGA Mexico will produce all relevant, non-privileged documents responsive to Request Nos. 27, 28, 38, 51-54, 58, 60, 62, 64, 66-68, 70-76, and 79-83.

I am available during the morning of Friday, June 26, 2009, if you wish to discuss these matters further.

Very truly yours,

Amman Khan (amk)

Amman A. Khan
of GLASER, WEIL, FINK, JACOBS,
HOWARD & SHAPIRO, LLP

cc:   Joel N. Klevens, Esq.
      Jason Russell, Esq.
      Patricia Benson, Esq.

G80188

**Exhibit 19 - Page 162**