1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
2    John B. Quinn (Bar No. 090378)
     (johnquinn@quinnemanuel.com)
3    William C. Price (Bar No. 108542)
     (williamprice@quinnemanuel.com)
4    Michael T. Zeller (Bar No. 196417)
     (michaelzeller@quinnemanuel.com)
5  865 South Figueroa Street, 10th Floor
   Los Angeles, California  90017-2543
6  Telephone:  (213) 443-3000
7  Facsimile:   (213) 443-3100

8  Attorneys for Mattel, Inc. and Mattel de
   Mexico, S.A. de C.V.

9                   UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11                      SOUTHERN DIVISION

| 12 | MATTEL, INC., a Delaware corporation, et al., | CASE NO. CV 04-9049 DOC (RNBx) |
|----|----|----|
| 13 | | |
| 14 | | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| 15 | Plaintiff, | |
| 16 | vs. | Hon. David O. Carter |
| 17 | MGA ENTERTAINMENT, INC., a California corporation, et al., | MATTEL, INC.'S OPPOSITION TO MGA ENTERTAINMENT, INC.'S MOTION FOR ATTORNEY'S FEES AND "FULL COSTS" UNDER SECTION 505 OF THE COPYRIGHT ACT |
| 18 | | |
| 19 | Defendant. | |
| 20 | AND CONSOLIDATED ACTIONS | Hearing Date:        TBD |
| 21 | | Time:                    TBD Place:                   Courtroom 9D |
| 22 | PUBLIC REDACTED VERSION | Discovery Cut-off:    October 4, 2010 |
| 23 | | Pre-trial Conf:         January 4, 2011 Trial Date:              January 11, 2011 |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

00505.07975/4139341.2

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................... 1

I.  MGA IS NOT ENTITLED TO ATTORNEY'S FEES AND FULL
    COSTS UNDER THE COPYRIGHT ACT ........................................ 4

    A.  Mattel's Copyright Claim Was Objectively Reasonable, And
        MGA Has Failed To Prove Otherwise ........................................ 6

    B.  Mattel Brought This Litigation In Good Faith, And MGA's
        Efforts To Prove Otherwise Fail .............................................. 10

    C.  Fee Shifting Does Not Advance Considerations Of
        Compensation And Deterrence .................................................. 16

II. MGA'S MOTION SHOULD BE DENIED BECAUSE MGA FAILED
    TO SUBMIT BILLING RECORDS ADEQUATE TO DETERMINE
    WHETHER ITS FEES WERE EITHER REASONABLE OR
    PROPERLY APPORTIONED ......................................................... 18

    A.  MGA's Complete Redaction Of All Work Descriptions Prevents
        Mattel And The Court From Evaluating Whether The Fees Were
        Reasonably And Necessarily Incurred In Defense Of The
        Copyright Claim ..................................................................... 19

    B.  MGA Should Not Be Awarded Attorney's Fees And Costs
        Because It Failed To Apportion These Costs .............................. 21

    C.  Even Without Apportionment Or Billing Descriptions, MGA's
        Demand For ████████ In Attorney's Fees And Costs Is
        Grossly Excessive .................................................................. 26

    D.  Should The Court Decide To Award Fees, It Should Reduce
        Them ...................................................................................... 30

III. MATTEL IS ENTITLED TO SET-OFF ATTORNEY'S FEES
     INCURRED IN DEFENSE OF MGA'S LANHAM ACT CLAIMS ......... 31

IV. MGA IS NOT ENTITLED TO "FULL COSTS" UNDER THE
    COPYRIGHT ACT ..................................................................... 31

CONCLUSION ................................................................................. 32

# TABLE OF AUTHORITIES

**Page**

## Cases

Assessment Technologies of WI, LLC v. WIREdata, Inc.,
    361 F.3d 434 (7th Cir. 2004) .......................................................................... 5

Automotive Prods., plc v. Tilton Eng'g, Inc.,
    1993 WL 660164 (C.D. Cal. Sept. 16, 1993) ............................................. 20

Berkla v. Corel Corp.,
    302 F.3d 909 (9th Cir. 2002) ........................................................................ 18

Chalmers v. City of Los Angeles,
    796 F.2d 1205 (9th Cir. 1986) ...................................................................... 18

Copeland v. Marshall,
    641 F.2d 880 (D.C. Cir. 1980) ...................................................................... 26

Dr. JKL Ltd. v. HPC IT Education Center,
    749 F. Supp. 2d 1038 (N.D. Cal. 2010) ...................................................... 30

EOS GMBH Electro Optical Sys. v. DTM Corp.,
    2002 WL 34536678 (C.D. Cal. Mar. 18, 2002) ..................................... 19, 20

Earthquake Sound Corp. v. Bumper Indus.,
    352 F.3d 1210 (9th Cir. 2003) ...................................................................... 27

Entm't Research Group, Inc. v. Genesis Creative Group, Inc.,
    122 F.3d 1211 (9th Cir. 1997) ............................................................... passim

Estate of Hevia v. Potrio Corp.,
    602 F.3d 34 (1st Cir. 2010) .......................................................................... 14

Ets-Hokin v. Skyy Spirits, Inc.,
    323 F.3d 763 (9th Cir. 2003) ............................................................. 4, 6, 19

Fantasy, Inc. v. Fogerty,
    94 F.3d 553 (9th Cir. 1996) ............................................................................ 5

Fogerty v. Fantasy, Inc.,
    510 U.S. 517 (1994) ............................................................................. 4, 5, 17

MATTEL'S OPP TO MGA'S MOTION FOR ATTORNEY'S FEES AND COSTS UNDER COPYRIGHT ACT

Fogerty v. MGM Group Holdings Corp., Inc.,
    379 F.3d 348 (6th Cir. 2004) ............................................................. 6, 7

Halicki Films LLC v. Sanderson Sales & Marketing,
    547 F.3d 1213 (9th Cir. 2008) .............................................................. 16

Harris Custom Builders Inc. v. Hoffmeyer,
    140 F.3d 728 (7th Cir. 1998) ........................................................... 6, 29

Hensley v. Eckerhart,
    461 U.S. 424 (1983) ......................................................................... 4, 18

Hustler Magazine Inc. v. Moral Majority Inc.,
    796 F.2d 1148 (9th Cir. 1986) .............................................................. 17

Identity Arts v. Best Buy Enterprise Servs. Inc.,
    2008 WL 820674 (N.D. Cal. Mar. 26, 2008) ...................................... 24

Innovention Toys, Inc. v. MGA Entm't, Inc.,
    07-CV-6510-MLCF-ALC (E.D. La. Jan. 28, 2009) ............................ 14

In Re Fine Paper Antitrust Litig.,
    751 F.2d 562 (3d Cir. 1984) ................................................................ 21

Johnson v. University College of University of Alabama in Birmingham,
    706 F.2d 1205 (11th Cir. 1983) ........................................................... 21

Lotus Dev. Corp. v. Borland Int'l, Inc.,
    140 F.3d 70 (1st Cir. 1998) ......................................................... passim

MGIC Indem. v. Weisman,
    803 F.2d 500 (9th Cir. 1986) ............................................................... 20

Magnuson v. Video Yesteryear,
    85 F.3d 1424 (9th Cir. 1996) ................................................................. 5

Martinez v. Home Depot USA, Inc.,
    2007 WL 2254432 (E.D. Cal. Aug. 2, 2007) ...................................... 20

Mattel, Inc. v. Goldberger Doll Mfg. Co.,
    236 F.R.D. 175 (S.D.N.Y. 2006) ......................................................... 14

Mattel, Inc. v. MGA Entm't, Inc.,
    616 F.3d 904 (9th Cir. 2010) ......................................................... 1, 8, 9

00505.07975/4139341.2

MATTEL'S OPP TO MGA'S MOTION FOR ATTORNEY'S FEES AND COSTS UNDER COPYRIGHT ACT

Mattel, Inc. v. Walking Mountain Prods., Inc.,
   353 F.3d 792 (9th Cir. 2004) ................................................................... 14, 16

Mattel, Inc. v Walking Mountain Prods., Inc.,
   2004 WL 1454100 (C.D. Cal. June 21, 2004) ...................................... 17

Matthew Bender & Co., Inc. v. West Pub. Co.,
   240 F.3d 116 (2d Cir. 2001) ................................................................... 1, 6

Mitek Holdings, Inc. v. Arce Eng'g Co.,
   198 F.3d 840 (11th Cir. 1999) ................................................................ 7, 17

Modular Arts, Inc. v. Interlam Corp.,
   2009 WL 151336 (W.D. Wash. Jan. 20, 2009) .................................. 6, 12

NLFC, Inc. v. Devcom Mid-America, Inc.,
   916 F. Supp. 751 (N.D. Ill. 1996) ......................................................... 11

Nicholls v. Tufenkian Import/Export Ventures, Inc.,
   2005 WL 1949487 (S.D.N.Y. Aug. 11, 2005) .................................... 10

Oskar Sys., LLC v. Club Speed, Inc.,
   2010 WL 4235812 (C.D. Cal. Oct. 20, 2010) ...................................... 27

Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.,
   2004 WL 728878 (S.D.N.Y. April 6, 2004) ........................................ 10

Perfect 10, Inc. v. CCBill LLC,
   488 F.3d 1102 (9th Cir. 2007) ............................................................... 31

Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,
   2005 WL 2007932 (N.D. Cal. Aug. 12, 2005) ........................... 7, 8, 12, 13

Reed v. Peterson,
   2005 WL 1522187 (N.D. Cal. June 27, 2005) .............................. 10, 12

Rodriguez v. Del Taco, Inc.,
   2002 WL 32987532 (C.D. Cal. Jan. 10, 2002) .................................. 26

Smith v. Jackson,
   84 F.3d 1213 (9th Cir. 1996) ................................................................. 6, 8

Stephen W. Boney, Inc. v. Boney Services, Inc.,
   127 F.3d 821 (9th Cir. 1997) ................................................................. 30, 31

<u>T-Peg, Inc. v. Vermont Timber Works, Inc..,</u>
   2010 WL 3895715 (D. N.H. Sept. 30, 2010) ...................................................... 30

<u>The Traditional Cat Ass'n, Inc. v. Gilbreath,</u>
   340 F.3d 829 (9th Cir. 2003)................................................................ 19, 24

<u>Thelen Oil v. Fina Oil,</u>
   962 F.2d 821 (8th Cir. 1992) ................................................................... 19

<u>Trustees of Directors Guild of America-Producer Pension Benefits Plans v. Tise,</u>
   234 F.3d 415 (9th Cir. 2000)................................................................... 30

<u>UMG Recordings, Inc. v. Veoh Networks Inc.,</u>
   2010 WL 1407316 (C.D. Cal. April 6, 2010) ................................................ 15, 16

<u>United States v. $1,379,879.09 Seized From Bank of America,</u>
   374 F. App'x 709, 711 (9th Cir. 2010) ......................................................... 20

<u>Wall Data, Inc. v. Los Angeles County Sheriff's Dep't,</u>
   447 F.3d 769 (9th Cir. 2006)...................................................................... 5

<u>Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC,</u>
   140 F. Supp. 2d 111 (D. Mass. 2001) ......................................................... 11

## **Statutes**

15 U.S.C. § 1117(a) .................................................................................. 30

17 U.S.C. § 505 ................................................................................. passim

Rule 12(b)(6) ......................................................................................... 8

Rule 30(b)(6) ....................................................................................... 14

Rule 34............................................................................................... 13

00505.07975/4139341.2

MATTEL'S OPP TO MGA'S MOTION FOR ATTORNEY'S FEES AND COSTS UNDER COPYRIGHT ACT

### Preliminary Statement

After receiving an award of $88 million on its trade secret claims, which it is ███████████████████████████, MGA also seeks █████████████ in attorney's fees and costs for defeating Mattel's copyright claim. As MGA concedes, in copyright cases, an award of fees is far from automatic. "[T]he imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." Matthew Bender & Co., Inc. v. West Pub. Co., 240 F.3d 116, 122 (2d Cir. 2001). Mattel's litigation position was, by any standard, including that applied by the Ninth Circuit, "objectively reasonable." The purposes of the Copyright Act are served by deterring frivolous actions and encouraging reasonable ones, not by shifting fees in a case which this Court has repeatedly acknowledged raises novel and important issues usefully briefed and argued by two parties well-represented by private counsel. This is precisely the sort of case where Courts do *not* shift fees, ██████████████████████.

MGA's only real argument that Mattel has not been reasonable is grounded in its claim that "Mattel had absolutely no objective evidence that the original drawings were made other than in 1998." Mot. at 14. That is truly astonishing. A wealth of evidence showing exactly that was introduced at trial, as it was at the first trial—when the first jury found that Bryant created virtually every Bratz work at issue, as well as the Bratz name and characters, while he was employed by Mattel and not in 1998. Those findings have been vacated, but to say that Mattel "had absolutely no objective evidence" supporting its claims is absurd. Indeed, the Ninth Circuit itself recognized the substance of Mattel's claims and went so far as to say: "[i]t might have been reasonable to hold that *some* of the Bratz dolls were substantially similar to Bryant's sketches, especially those in the first generation." Mattel, Inc. v. MGA Entm't, Inc., 616 F.3d 904, 917 (9th Cir. 2010) (emphasis in original).

MGA also justifies its demands by arguing the "destruction of a smaller competitor was precisely Mattel's objective." Mot. at 1. That ground has been covered

1   repeatedly.  As MGA itself has so often argued, if Mattel is guilty of anything, it is of

2   delaying to bring its claims against MGA until it had definite information about Carter

3   Bryant's relationship with the company.  MGA was a very successful company, and

4   Mattel hesitated long and hard before suing.

5       Even if it could make a case for fee shifting, which it cannot and does not, MGA

6   has failed to carry its burden to apportion its fees between its defense of Mattel's

7   copyright claim and other activity.  See Entm't Research Group, Inc. v. Genesis

8   Creative Group, Inc., 122 F.3d 1211, 1230 (9th Cir. 1997) (finding district court's

9   failure to follow the "rule" established by the Supreme Court "requiring segregation of

10  attorney's fees" to be clear error) (citing Hensley v. Eckerhart, 461 U.S. 424, 437

11  (1983)).  Among other obvious flaws:

- Mattel's claims based on the conduct of Brawer, Castilla, Cooney, Contreras, Brisbois, Machado, Trueba, Vargas, Cabrera, Morales, and Salazar are not related to Mattel's copyright claim at all, yet MGA made no effort to apportion out the fees it expended defending against those claims.

- This case was active for more than two and a half years before Mattel even brought its copyright claim, yet MGA demands, under the Copyright Act, nearly all the fees it expended *before that claim was even brought.*

- MGA demands that Mattel pay *every dime* the Skadden firm ever billed on this case, more than ▮▮▮▮▮▮▮—with no setoff for any of MGA's many affirmative claims and no consideration of the many non-copyright claims Skadden defended against.

- MGA demands that Mattel pay ▮▮▮▮▮▮ in attorney's fees incurred by O'Melveny & Meyers ("OMM") without mentioning that MGA has sued that firm for overbilling—and without mentioning MGA's own claims that OMM's misconduct required Skadden to engage in, and bill for, duplicative, wasteful, and unnecessary work after OMM's withdrawal.

- MGA wants Mattel to compensate it for its unilateral decision to hire more than 13 different law firms to represent it in this matter—a shuffling of lawyers that is so unprecedented that it has been repeatedly reported in the press.[1]

---

[1]  Schultz Dec. ¶¶ 1-18; Drew Combs, The AmLaw Daily, "Mattel v. MGA: Welcome Back to the Dollhouse" (1/12/11) ("There are changes at counsel tables, too. MGA, which has called on more than nine law firms at various points in the trial and appellate phases of the litigation, was represented by Skadden, Arps, Slate, Meagher & (footnote continued)

00505.07975/4139341.2

MATTEL'S OPP TO MGA'S MOTION FOR ATTORNEY'S FEES AND COSTS UNDER COPYRIGHT ACT

1    Except for fees expended on separate law firm billing numbers, MGA is seeking

2    reimbursement for every dime its many law firms have billed, including all the fees it

3    expended defending against Mattel's substantial RICO claim, Mattel's fraudulent

4    transfer claims, all the fees it expended to mandamus this Court's pre-trial

5    disqualification order and so on. It is impossible to determine the full scope of MGA's

6    overreaching because MGA has—contrary to clear legal requirements—entirely

7    redacted the work descriptions in the billing invoices it submitted, but the excessiveness

8    of MGA's demand is obvious on its face.

9    Mattel respectfully requests that the application to shift fees in this hard-fought

10   copyright dispute be denied. Mattel's case was "objectively reasonable" enough for a

11   jury to award damages and a judge to enter an injunction. It was "objectively

12   reasonable" enough to command the attention of the Court of Appeals, which issued

13   both an original opinion and a clarification of its copyright holding; that court gave

14   specific guidance on the copyright tests to be applied on remand, signaling that it fully

15   expected the case to go to the jury, as it did. It was "objectively reasonable" enough to

16   survive this Court's exacting scrutiny at the motion to dismiss and summary judgment

17   stages. It would be objectively unreasonable, and an abuse of discretion, to allow MGA

18   Flom at the initial trial. The retrial will be handled by Orrick, Herrington & Sutcliffe,
     which successfully argued the appeal. (O'Melveny & Myers, which had previously

19   represented MGA in the case, filed a lawsuit against the toy company in July 2010
     seeking $10.2 million in unpaid fees. MGA, which countersued O'Melveny alleging

20   malpractice, wanted those proceedings stayed until its case against Mattel is resolved,
     but on Nov. 12, 2010, a Los Angeles County superior court judge ruled that the case

21   could proceed.") (available at http://amlawdaily.typepad.com/amlawdaily/
     2011/01/bratzretrial.html) (last visited May 12, 2011), Searcy Dec. Ex. 1; Erin Fuchs,

22   Law 360, "O'Melveny Says MGA Owes $10M In Bratz Legal Fees" (7/14/10)
     (referring to the "revolving door of law firms in connection with the Bratz matters")

23   (available at http://www.law360.com/topnews/articles/180868/o-melveny-says-mga-
     owes-10m-in-bratz-legal-fees) (last visited May 12, 2011), Searcy Dec. Ex. 2; Amanda

24   Bronstad, National Law Journal, "MGA Pleads to Retain Counsel—or at Least for a
     Delay of Bratz Doll Retrial" (1/6/11) ("The disqualification was the latest legal

25   headache for MGA, which has replaced its lawyers numerous times during the
     copyright dispute.") (available at http://www.law.com/jsp/cc/PubArticleCC.jsp?

26   id=1202477107603&MGA_Pleads_to_Retain_Counsel_mdash_or_at_Least_for_a_
     Delay_of_Bratz_Doll_Retrial) (last visited May 12, 2011), Searcy Dec. Ex. 3.

27

28

00505.07975/4139341.2

-3-

1  ██████████████████████████, for no reason or principle having anything

2  whatsoever to do with the Copyright Act. If any fees are to be awarded, Mattel requests

3  that the costs be properly apportioned between those specific tasks performed in

4  defense of Mattel's copyright claim and non-chargeable tasks, and that MGA be

5  ordered to produce its invoices to Mattel in unredacted form to enable Mattel to

6  independently review them to identify non-chargeable work.

7  **Argument**

8  **I.    MGA IS NOT ENTITLED TO ATTORNEY'S FEES AND FULL**

9  **      COSTS UNDER THE COPYRIGHT ACT**

10      "The burden of establishing entitlement to an attorney's fees award lies solely

11  with the claimant." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). "The Supreme

12  Court [has] identified the following non-exclusive list of factors to guide the award or

13  denial of attorney's fees: 'frivolousness, motivation, objective unreasonableness (both

14  in the factual and in the legal components of the case), and the need in particular

15  circumstances to advance considerations of compensation and deterrence.'" Ets-Hokin

16  v. Skyy Spirits, Inc., 323 F.3d 763, 766 (9th Cir. 2003) (quoting Fogerty v. Fantasy,

17  Inc., 510 U.S. 517, 534 n. 19 (1994)).

18      An award of attorney's fees to the prevailing party under the Copyright Act is

19  discretionary, not automatic. See 17 U.S.C. § 505 ("[T]he court *may* also award a

20  reasonable attorney's fee to the prevailing party . . . .") (emphasis added). Fogerty

21  emphatically rejected the argument that "§ 505 was intended to adopt the 'British

22  Rule'" that "both prevailing plaintiffs and defendants should be awarded attorney's fees

23  as a matter of course, absent exceptional circumstances." Fogerty, 510 U.S. at 533.

24  "[T]he [statutory] word 'may' [in 17 U.S.C. § 505] clearly denotes discretion," and

25  "[t]he automatic awarding of attorney's fees to the prevailing party would pretermit the

26  exercise of that discretion." Id. Because "Congress legislates against the strong

27  background of the American Rule" that "parties are to bear their own attorney's fees,"

28

00505.07975/4139341.2

-4-

**MATTEL'S OPP TO MGA'S MOTION FOR ATTORNEY'S FEES AND COSTS UNDER COPYRIGHT ACT**

1   the Court must consider much more than just prevailing party status in exercising its

2   "equitable discretion." Id. at 533-34.

3        MGA argues the Court "is not required to" consider factors such as

4   frivolousness, motivation, objective unreasonableness of the losing party's legal and

5   factual arguments, and considerations of compensation and deterrence. Mot. at 11.

6   The Ninth Circuit holds otherwise. See Magnuson v. Video Yesteryear, 85 F.3d 1424,

7   1432 (9th Cir. 1996) (remanding for reconsideration of attorney's fees award

8   "[b]ecause it is not apparent from the district court's decision that it considered the

9   factors listed in Fogerty"). None of MGA's authorities supports its claim that these

10  factors need not be considered at all.[2]

11       Citing out-of-circuit authority, MGA also argues that "when defendant is [the]

12  prevailing party, there is [a] *strong presumption* in favor of awarding attorney's fees . . .

13  ." Mot. at 11 (citing Assessment Technologies of WI, LLC v. WIREdata, Inc., 361

14  F.3d 434, 436-37 (7th Cir. 2004) (emphasis added)). That is not the law in the Ninth

15  Circuit:

16      Interlam asserts that there is a strong presumption in favor of awarding
        fees to prevailing defendants. Assessment Technologies of WI, LLC v.

17      WIREdata, Inc., 361 F.3d 434, 437 (7th Cir. 2004). However, there are
        several reasons to believe that such a presumption does not apply, in the

18      Ninth Circuit in general, or in this case in particular. First, WIREdata is a
        Seventh Circuit case; Interlam has not cited Ninth Circuit authority that

19      indicates an applicable presumption. Second, in WIREdata, an award of

20     [2] In Fogerty, the Supreme Court observed that circuit courts "ha[ve] listed several

21  nonexclusive factors that courts *should consider* in making awards of attorney's fees to
    any prevailing party." 510 U.S. at 534 n.19 (emphasis added). The Supreme Court

22  agreed that "such factors may be used to guide courts' discretion." Id. In Wall Data,
    Inc. v. Los Angeles County Sheriff's Dep't, 447 F.3d 769 (9th Cir. 2006), the Court

23  stated that the district court "may consider (but is not limited to) five factors" when
    evaluating whether an award of attorney's fees "furthered the goal of copyright law."

24  Id. at 787. The Court did not state that the district court's discretion was unbounded; it
    affirmed because the district court did not commit a "clear error of judgment in the

25  conclusion it reached *upon a weighing of the relevant factors*." Id. In Fantasy, Inc. v.
    Fogerty, 94 F.3d 553, 560 (9th Cir. 1996), the Court described the factors as "guides"

26  and recognized—consistent with the Supreme Court's opinion—that courts "may apply
    them so long as they are consistent with the purposes of the Copyright Act and are

27  applied evenly."

28

attorney's fees was appropriate because the Plaintiff's conduct came close to copyright misuse; in that case, the Plaintiff was attempting to extend copyright protection to public domain data. <u>Id.</u> at 437. No such accusation of an impermissible application of copyright has been claimed against the Plaintiff in the present case. Third, in <u>Fogerty</u>, the Supreme Court rejected an argument that courts in copyright cases should employ the "British Rule" and automatically award attorney's fees to prevailing parties.

<u>Modular Arts, Inc. v. Interlam Corp.</u>, 2009 WL 151336, at *1 (W.D. Wash. Jan. 20, 2009). Winning is not enough. <u>See Ets-Hokin</u>, 323 F.3d at 766 (affirming denial of attorney's fees because "[t]he only factor to weigh in Skyy's favor is the degree of success obtained."). The same is true here.

**A.** **Mattel's Copyright Claim Was Objectively Reasonable, And MGA Has Failed To Prove Otherwise**

Section 505 is not compensatory; it is a fee-shifting statute designed to deter frivolous or objectively unreasonable or bad faith copyright cases. <u>See</u> <u>Smith v. Jackson</u>, 84 F.3d 1213, 1221 (9th Cir. 1996) (affirming denial of attorney's fees because, *inter alia*, the "district court also explicitly noted that it did not find frivolousness or that the suit was motivated by bad faith"); <u>Lotus Dev. Corp. v. Borland Int'l, Inc.</u>, 140 F.3d 70, 74 (1st Cir. 1998) (affirming denial of fees because copyright holder's "claims were neither frivolous nor objectively unreasonable"); <u>Harris Custom Builders Inc. v. Hoffmeyer</u>, 140 F.3d 728, 730-31 (7th Cir. 1998) (vacating award of attorney's fees because the copyright claims were objectively reasonable); <u>see also</u> <u>Fogerty v. MGM Group Holdings Corp., Inc.</u>, 379 F.3d 348, 357 (6th Cir. 2004) (citing <u>Matthew Bender & Co., Inc. v. West Pub. Co.</u>, 240 F.3d 116, 122 (2d Cir. 2001) and holding that an award of attorney's fees to the prevailing defendant was an abuse of discretion because the copyright claim was objectively reasonable).

MGA argues the "touchstone" of fee shifting is whether the prevailing party's position "furthered the purposes of the Copyright Act" (Mot. at 8), but that is not the test. The prevailing party's position may further the purposes of the Act in a close case or a clearcut one, against a well-meaning litigant or one acting in bad faith. The

1   question is not whether the position that ultimately prevails furthers the Copyright Act

2   (presumably that is why it is prevailing), but whether the litigation does; it turns on the

3   reasonableness of the positions taken, not who wins.  See Mitek Holdings, Inc. v. Arce

4   Eng'g Co., 198 F.3d 840, 842-43 (11th Cir. 1999) ("The touchstone of attorney's fees

5   under § 505 is whether imposition of attorney's fees will further the interests of the

6   Copyright Act, i.e., *by encouraging the raising of objectively reasonable claims and*

7   *defenses . . . .*") (emphasis added); Lotus Dev., 140 F.3d at 75 ("When close

8   infringement cases are litigated, copyright law benefits from the resulting clarification

9   of the doctrine's boundaries.  But because novel cases require a plaintiff to sue in the

10  first place, the need to encourage meritorious defenses is a factor that a district court

11  may balance against the potentially chilling effect of imposing a large fee award on a

12  plaintiff, who, in a particular case, may have advanced a reasonable, albeit

13  unsuccessful, claim."); see also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, 2005 WL

14  2007932, *5 (N.D. Cal. Aug. 12, 2005) (denying fees: "In looking of the magnitude of

15  the allegations and potential liabilities, both parties had important economic interest in

16  the case and thus, rightfully litigated their claims."); MGM Group Holdings, 379 F.3d

17  at 357 ("While plaintiffs' claim ultimately proved meritless, that does not make it

18  'objectively unreasonable' as a matter of law or fact.").

19        Despite the critical importance of assessing the reasonableness of the litigation

20  positions, MGA treats them in less than a page, bluntly asserting that Mattel never had

21  any "objective evidence" supporting its claim to ownership of Bratz and that even the

22  first jury, in 2008, "rejected Mattel's core theory of the case."  Mot. at 14.  This made-

23  up history does not withstand scrutiny.

24        Mattel's copyright claim survived summary judgment in 2008, was met with a

25  verdict for Mattel and a $10 million damages award following a nearly three month

26

27

28

1   trial,[3] supported further equitable relief issued by the prior district judge sitting in

2   equity, and then survived summary judgment again on remand in 2010.    This

3   extraordinary level of prior success establishes that the claim was never frivolous,

4   objectively unreasonable, or brought in bad faith, and strongly weighs against fee

5   shifting. See Smith v. Jackson, 84 F.3d 1213, 1221 (9th Cir. 1996) (affirming denial of

6   fees where, *inter alia*, "the district court concluded that appellants had more success in

7   pursuing their claims than is typical of copyright infringement actions, mainly due to

8   their 'respectable evidence of access by defendants'" and that the copyright claim "had

9   a legal basis sufficient to survive summary judgment and a factual basis supported by

10  expert testimony."); see also Perfect 10, 2005 WL 2007932, at *3-4 (plaintiff's success

11  in twice obtaining leave to amend its copyright claim demonstrated "possib[ility]" that

12  plaintiff might be able to properly plead a "potential claim[]" sufficient to preclude a

13  finding that potential copyright claims, despite ultimately being dismissed under Rule

14  12(b)(6), could be considered "objectively unreasonable").

15      When MGA sought an emergency motion to stay the post-Phase 1 permanent

16  injunction, the Ninth Circuit found that "MGA has not met the prevailing standard to

17  show a substantial likelihood of success on the merits."   Mattel Inc. v. MGA Entm't,

18  Inc., Case No. 09-55673, Dkt. 6952687 at 3 (9th Cir. June 10, 2009).  While the Ninth

19  Circuit ultimately vacated the equitable relief issued by the prior judge, its order on

20  MGA's emergency motion to stay and subsequent opinion authoritatively confirm the

21  reasonableness of Mattel's copyright claim.  Regarding ownership, the Ninth Circuit

22  held "[t]he drawings and sculpt"—the main predicates of Mattel's copyright claim—

23  "clearly were 'inventions' as that term is defined in Bryant's employment agreement

---

24

25   [3]   MGA claims the first jury "at least hung on the issue of whether the first four
     original drawings were made in 1998." Mot. at 14, but the jury determined that MGA
26   and Larian were liable for infringing Bratz copyrights owned by Mattel, and awarded
     $10 million to Mattel (Dkt. 4279 at 4-5)—hardly the rejection of "Mattel's core theory
27   of the case" that MGA claims. Mot. at 14.

28

with Mattel." <u>Mattel</u>, 616 F.3d at 911. While finding that California state law required submission of contract interpretation to the jury, the Ninth Circuit found the jury's interpretation of this contract "could easily" support Mattel's claims to ownership of Bratz. <u>Id.</u> at 912. "On remand, Mattel might well convince a properly instructed jury" of its ownership claim, the Court ruled. <u>Id.</u> at 913. Likewise, while the prior judge's infringement determinations did not apply a correct standard, the Ninth Circuit did not question that Mattel's copyright claim remained viable on remand.

Recognizing this, this Court held during the second round of summary judgment briefing in 2010 that the jury "*could easily*" find that the first generation Bratz dolls and two subsequent generation dolls infringed the Bratz drawings. Dkt. 9600 at 18 ("A reasonable fact-finder could easily conclude that there are articulable and substantial similarities between the protectable expression of the Jade sketch (Trial Exhibit 1107, 10638) and sculpt (Trial Exhibit 17551)"); <u>id.</u> at 20 (could easily find infringement with regard to Chloe/Zoe); <u>id.</u> at 22 (could easily find infringement with regard to Yasmin); <u>id.</u> at 24 (could easily find infringement with regard to Hallidae/Sasha); <u>id.</u> at 29 (similar with regard to Ooh La La Cloe and Formal Funk Dana). The Court also of course found genuine issues regarding Mattel's ownership claims. <u>Id.</u> at 9-12.

Mattel lost before the second jury, which found that Mattel did not own Bryant's Bratz creations. That finding was dispositive of Mattel's copyright claim under the special verdict form, (Dkt. 10518 at 2), so the jury never considered, or needed to



MATTEL'S OPP TO MGA'S MOTION FOR ATTORNEY'S FEES AND COSTS UNDER COPYRIGHT ACT

1  consider, whether the protectable elements of the Bratz dolls (far right) were
2  substantially similar to Bryant's drawings (two on left).  Still, a comparison of the
3  drawings and the dolls demonstrates that Mattel's infringement contentions were, at a
4  minimum, objectively reasonable, as the prior orders and verdicts in Mattel's favor
5  show.

6       "[O]nly those claims that are clearly without merit or otherwise patently devoid
7  of legal or factual basis ought to be deemed objectively unreasonable."  <u>Penguin Books</u>
8  <u>U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.,</u> 2004 WL 728878, at *3
9  (S.D.N.Y. April 6, 2004); <u>see</u> <u>Reed v. Peterson,</u> 2005 WL 1522187, at *7 (N.D. Cal.
10  June 27, 2005) (granting motion for summary judgment in favor of defendant on all
11  copyright claims but denying fee shifting where "[p]laintiff's copyright claim, while
12  weak, was neither frivolous nor motivated by anything other than Plaintiff's desire to
13  gain the protection of his copyrighted work that he believed he was entitled to.");
14  <u>Nicholls v. Tufenkian Import/Export Ventures, Inc.,</u> 2005 WL 1949487, at *5
15  (S.D.N.Y. Aug. 11, 2005) (denying fees where copyright claim presented a "close
16  question" of fact, "was sufficiently colorable to overcome a motion to dismiss and
17  presented a sufficient number of litigable issues to go to trial," and "[b]oth parties had
18  legitimate economic interests and concerns about protecting their designs").  Mattel's
19  litigation position was indisputably "objectively reasonable."  MGA's abbreviated
20  effort to suggest otherwise by claiming that the 1998 creation story is unassailable
21  simply cannot be squared with Judge Larson's view (perhaps wrong, but certainly not
22  without any reason) that in telling it, Larian was committing perjury.

23  **B.    Mattel Brought This Litigation In Good Faith, And MGA's Efforts**
24  **To Prove Otherwise Fail**

25       MGA urges that Mattel brought its case with an improper motive to harm MGA,
26  and that "[a] desire to discourage and financially damage a competitor by forcing it
27  into costly litigation justifies an award of fees."  Mot. at 13.  MGA is wrong on all
28  counts.

-10-

1    First, the only *evidence* that anyone at Mattel initiated suit for improper reasons

2    is the deposition testimony of Ron Brawer—a disgruntled former Mattel employee who

3    joined MGA. Mot. at 13. Every other witness who has ever been asked about it—

4    whether still at Mattel or long gone, and including Robert Eckert, Sujata Luther, Tim

5    Kilpin, Ivy Ross, Douglas Wadleigh, Jean Gomez, Gene Murtha, and Sal Villasenor—

6    has testified there was *no* attempt to use litigation to destroy MGA. [4] MGA's argument

7    defies logic: if this litigation truly were a product of Mattel's business strategy, it would

8    have sued MGA sooner rather than later and it would have brought every claim it could

9    think of at the outset. But Mattel did just the opposite: it *didn't* sue MGA when it first

10   initiated this case (MGA intervened) and *didn't* bring its copyright claim until the

11   factual record substantiating its claim to ownership of Bratz was developed.

12   Nor do the cases cited by MGA support its position. In <u>NLFC, Inc. v. Devcom</u>

13   <u>Mid-America, Inc.</u>, 916 F. Supp. 751 (N.D. Ill. 1996), the court found bad faith

14   motivation because the plaintiff "never even tried to gather any evidence to support its

15   case." <u>Id.</u> at 759. Similarly, in <u>Yankee Candle Co., Inc. v. Bridgewater Candle Co.,</u>

16   <u>LLC</u>, 140 F. Supp. 2d 111, 118 (D. Mass. 2001), the copyright claim did not have a

17   "reasonable likelihood of success" and there was extensive "evidence of anti-

18   competitive motivation in Yankee's prosecution of this suit," including that the plaintiff

19   deliberately scheduled depositions in order to prevent key employees of the defendant

20   from attending an important trade show. There is simply no comparable evidence to

21   support MGA's accusations here. Mattel diligently collected evidence in support of its

22   copyright claim both before filing suit and after, and, more than just having a

23   _____

24   [4]  Eckert Depo. Tr. (Vol. 8) at 1585:10-19 (4/28/10), Searcy Dec. Ex. 4; Wadleigh Depo. Tr. (Vol. 1) at 109:6-9 (1/29/10), Searcy Dec. Ex. 5; Luther Depo. Tr. (Vol. 1) at 81:19-82:2 (7/8/10), Searcy Dec. Ex. 6; Kilpin Depo. Tr. (Vol. 2) at 512:2-4 (4/8/10), Searcy Dec. Ex. 7; Gomez Depo. Tr. (Vol. 1) at 192:24-193:4 (1/24/08), Searcy Dec. Ex. 8; Murtha Depo. Tr. (Vol. 1) at 116:18-117:12 (2/25/10), Searcy Dec. Ex. 9; Villasenor Depo. Tr. (Vol. 1) at 220:13-221:2 (7/12/10), Searcy Dec. Ex. 10; Ross Depo. Tr. (Vol. 1) at 112:19-22 (1/17/08), Searcy Dec. Ex. 11.

25

26

27

28

-11-

1   reasonable likelihood of success, actually won on the claim once. No more than that is
2   required. See, e.g., Lotus Dev. Corp., 140 F.3d at 75 ("Arguably, there is nothing
3   inherently improper about bringing a claim that is well-founded in law and fact against
4   one's competitors, even when legal action, if successful, will inflict severe economic
5   consequences upon them."); Reed, 2005 WL 1522187, at *7 (granting motion for
6   summary judgment in favor of defendant on all copyright claims but denying
7   defendant's motion for attorney's fees under § 505 where "[p]laintiff's copyright claim,
8   while weak, was neither frivolous nor motivated by anything other than Plaintiff's
9   desire to gain the protection of his copyrighted work that he believed he was entitled
10  to"); Modular Arts, 2009 WL 151336, at *2 ("As to the third factor, Plaintiff's
11  motivation was to enforce their copyright registration to maintain a competitive
12  business advantage. This is a proper motivation.").

13      MGA also argues that considerations of compensation and deterrence favor an
14  award of attorney's fees, but the same argument could be made by any prevailing party,
15  most of whom lack the resources of MGA. See Lotus Dev., 140 F.3d at 75 (affirming
16  denial of fees: "when a plaintiff prosecutes an action in good faith, in an unsettled area
17  of law, and with a reasonable likelihood of success, against a party with similar
18  financial resources, the prevailing party's case for attorney's fees is weaker"); Perfect
19  10, 2005 WL 2007932, at *4 ("Granting attorney's fees is disfavored when a plaintiff
20  pursues an action in good faith in an unsettled area of law and the parties have alike
21  financial resources.").

22      MGA's deterrence argument, based on Mattel's supposed status as "a prolific
23  litigant" that engages in "abusive methods of litigation" (Mot. at 12), is not only
24  unsupported by the evidence, but cannot be addressed at this point lest MGA later claim
25  that any such findings are preclusive and negate Mattel's Seventh Amendment rights.
26  Dkt. 10527 at 9-13. The Court is fully empowered to reject MGA's fee motion without
27  considering its off-point claims about Mattel's litigiousness and motives for suing, and
28  it should do so.

1    MGA's claims are flawed on their face in any event.  MGA insists Mattel

2 employed a "bad faith no-compromise policy" during discovery, but all three of its

3 examples are demonstrably false.  Mot. at 5.  First, MGA argues that "[n]o discovery

4 request issued by Mattel was ever limited by agreement." Id. That is wrong.[5] Second,

5 MGA argues that "discovery requests propounded upon Mattel were almost never the

6 subject of production absent a court order." Mot. at. 5.  That too is wrong.[6]  Third,

7 MGA claims that John Quinn made the "stunning admission" that Mattel "never

8 voluntarily produces anything" and "all discovery of Mattel must be conducted by court

9 order." Mot. at 5.  But all Mr. Quinn said was that a good faith objection to a discovery

10 request excuses production until a motion to compel has been filed and decided.   Trial

11 Tr. (Vol. 2), at 44:9-11 (4/1/11) ("MR. QUINN: Of course, your Honor, if a discovery

12 request for documents, Rule 34, is served and objections are made, there's no

---

16     [5]  For example, on March 13, 2008, Mattel's counsel Melissa Grant wrote a letter to

17 Veronica Marlow's counsel Larry McFarland stating "We [Mattel] agreed to narrow the scope of certain documents requests contained in the subpoenas issued to the Three

18 Marlow-Related Entities as follows: . . . ." March 13, 2008 Letter at 2, Searcy Dec. Ex. 12.  Mattel proceeded to list 22 requests for production with modified language. Id. at

19 2-4.  A September 11, 2009 letter from MGA's counsel Bill Molinski to Mattel's counsel Marshall Searcy identifies a laundry list of requests for production that "Mattel

20 is considering withdrawing or limiting."  September 11, 2009 Letter at 1, Searcy Dec. Ex. 13.

21

22     [6]  On June 26, 2009, Mattel's counsel Marshall Searcy wrote an email to MGA's counsel Jean Pierre Noques stating that "Mattel anticipates serving supplemental

23 responses to RFP Nos. 88, 89, 99, 100, 101, 102, 103, 104 and 111 on Thursday, July 6, 2009 and producing any additional responsive documents on a rolling basis after that

24 date." June 26, 2009 Letter at 5, Searcy Dec. Ex. 14.  Similarly, a March 3, 2010 email exchange between Annette Hurst, John Quinn, and Bridget Hauler describe Mattel's

25 willingness "to produce any agendas, minutes, and Eckert memos to the Board concerning Mattel's Girls' Brands or the performance of executives responsible for

26 Girls' brands, as long as we can redact all non-responsive information . . . . [that] contain highly sensitive, irrelevant info such as info re contemplated acquisitions."

27 Searcy Dec. Ex. 15.

28

MATTEL'S OPP TO MGA'S MOTION FOR ATTORNEY'S FEES AND COSTS UNDER COPYRIGHT ACT

1  obligation to produce."). This is hardly a controversial position, particularly since

2  MGA took the same position during discovery.[7]

3       MGA also cites irrelevant, inadmissible statements about *other* suits (and

4  "articles" and "books"), all of which bear absolutely no connection to this case. Mot. at

5  4 (citing Mattel, Inc. v. Goldberger Doll Mfg. Co., 236 F.R.D. 175 (S.D.N.Y. 2006),

6  and Mattel, Inc. v. Walking Mountain Prods., Inc., 353 F.3d 792, 814 (9th Cir. 2004)).

7  Mattel had an objectively reasonable basis to believe that it owned the *Bratz* drawings

8  and sculpts created by Bryant and that the Bratz dolls infringed those copyrighted

9  works; the BARBIE infringement cases MGA cites are wholly irrelevant. The Court's

10  inquiry must be "narrow[ed]" to "the copyright infringement claim asserted in the case

11  at hand." Estate of Hevia v. Potrio Corp., 602 F.3d 34, 46 (1st Cir. 2010) (rejecting

12  claim that multiple lawsuits filed by plaintiff justified fee shifting). Were it otherwise,

13  MGA's own extraordinary history of aggressive litigation—and sanctions—would

14  surely weigh against its claim for fees. TX 8809 (listing over 100 lawsuits with MGA

15  or Larian named as a party); see, e.g., Innovention Toys, Inc. v. MGA Entm't, Inc., 07-

16  CV-6510-MLCF-ALC (E.D. La. Jan. 28, 2009) (Dkt. 63 at 2), Searcy Dec. Ex. 30

17  (awarding $6,000 sanction against MGA in connection with a motion for contempt). If

18  this is a contest, MGA loses: it has been sanctioned *in this case* for its discovery

19  misconduct—in far greater amounts than Mattel:

---

21     [7] E.g. 7/20/07 MGA Letter from William Charron to Michael Zeller at 1, Searcy

22  Dec. Ex. 16 ("The same objections [by MGA] to similar requests for admission are currently before Judge Infante in connection with a motion to compel . . . .

23  Consequently, it is premature to answer these requests until Judge Infante has had an opportunity to rule on the issues."); 11/27/07 MGA Letter from Timothy Miller to Jon

24  Corey at 1, Searcy Dec. Ex. 17 ("[T]he MGA entities and Mr. Larian may decide to stand on their objections with respect to certain of the interrogatories."); 3/17/08 MGA

25  Letter from Amy Park to Jon Corey at 1, Searcy Dec. Ex. 18 ("MGA will stand by its objections to these requests . . . ."); June 25, 2009 Letter from Amman Khan to

26  Marshall Searcy at 3, Searcy Dec. Ex. 19 ("Therefore, unless you describe in detail how each of these Requests is relevant to the parties' claims or defenses in this action, MGA

27  Mexico will stand by its objections.") (emphasis in original).

| Docket | Title of Order | MGA Sanctions |
|---|---|---|
| Searcy Dec. Ex. 20 | 6/16/06 Civil Minutes re: Mattel's Motion to Enforce the Court's Order of March 23, 2005 and for Sanctions | $1,360.00 |
| Dkt. 827 at 10 | 8/15/07 Order Granting In Part Mattel's Motion to Enforce The Court's Order of May 16, 2007, to Compel MGA to Produce Witnesses for Deposition Pursuant to Rule 30(b)(6), and Granting Request for Sanctions | $1,000.00 |
| Dkt. 1305 at 1 | 12/19/07 Order Re Mattel, Inc.'s Motion To Enforce The Court's Order Of May 15, 2007 To Compel MGA To Produce Compelled Documents In Unredacted Form And For Sanctions | $3,500.00 |
| Dkt. 1304 at 1 | 12/19/07 Order Re Mattel's Motion To Enforce The Court's Order Of May 15, 2007 To (1) Compel MGA To Produce Compelled Documents (Including Fee And/Or Indemnity Agreements Between MGA And Bryant, (2) Order That Any Privilege Objections Have Been Waived, And (3) Impose Sanctions | $3,500.00 |
| Dkt. 1505 at 34 | 1/9/08 Order Granting/Denying In Part Mattel's Motion To Enforce Court's Discovery Orders And To Compel; To Overrule Purportedly Improper Instructions; And For Sanctions | $6,000.00 |
| Dkt. 5190 at 33 | 4/14/09 Order No. 17 Re (1) The MGA Parties' Motion For A Protective Order Staying Discovery On Trade Dress Claims; (2) Motion Of Mattel, Inc. To Enforce Prior Court Order And To Compel Responses To Interrogatories; And (3) *Ex Parte* Application Filed By Mattel, Inc. For An Order To Show Cause Re: MGA Entertainment, Inc.'s Failure To Comply With Court Order | $4,515.00 |
| | | **$19,875.00** |

In UMG Recordings, Inc. v. Veoh Networks Inc., 2010 WL 1407316 (C.D. Cal. April 6, 2010), the Court denied attorney's fees to the prevailing defendant despite accusations that the plaintiff "pursued discovery in an 'unnecessarily aggressive manner.'" Id. at *2. The Court noted that "many of UMG's discovery motions were granted, and Veoh itself engaged in aggressive discovery practices (for example, filing so many *ex parte* applications that the Court eventually ordered Veoh to stop filing them without prior approval)." Id. Here, as in UMG, many of Mattel's discovery

-15-

MATTEL'S OPP TO MGA'S MOTION FOR ATTORNEY'S FEES AND COSTS UNDER COPYRIGHT ACT

1   motions were granted in whole or part—at least 73 motions to compel or enforce[8]—and

2   MGA also engaged in aggressive discovery tactics. This was undoubtedly hard fought

3   litigation, but it was hard fought by two large corporations with considerable resources.

4   Although both sides were aggressive, "[MGA] has failed to demonstrate that [Mattel's]

5   legal challenge was improper, in bad faith, or contrary to the purposes of the Copyright

6   Act." See id. at *1-2.

7       **C.**   **Fee Shifting Does Not Advance Considerations Of Compensation And**

8         **Deterrence**

9       MGA insists that its defense furthered the purposes of the Copyright Act, but

10   offers no argument why its victory (on contract grounds), more than any/every other,

11   did so. The question is not who won, but what specific goal would be served by fee

12   shifting. See Ets-Hokin, 323 F.3d at 766 (considering whether there is a "need in

13   particular circumstances to advance considerations of compensation and deterrence").

14   No legitimate goal would be served by shifting fees here.

15

16

17   [8] See, e.g., LASC No. BC314398, 10/5/2004 Ruling On (1) Motion To Compel Deposition And (2) Motion For A Protective Order And Establish The Sequence And

18   Timing Of Discovery, at 2, Searcy Dec. Ex. 21; LASC No. BC314398, 10/20/2004 Order Granting Mattel's Ex Parte Application To Set Compelled Deposition Of

19   Defendant And Cross-Claimant Carter Bryant For A Date Certain Pursuant To The Court's Order Of October 5, 2004, Searcy Dec. Ex. 22; Dkt 195 at 2; Dkt. 175 at 16-17;

20   Dkt. 286 at 2; Dkt. 487 at 14; Dkt. 412 at 7; Dkt. 493; Dkt. 841 at 8; Dkt 804 at 14; Dkt. 842 at 7; Dkt. 913; Dkt. 1013 at 12; Dkt. 1291 at 11; Dkt. 1305; Dkt. 1439 at 19;

21   Dkt 4293 at 2; Dkt. 1426; Dkt 1699 at 19-20; Dkt. 2266 at 22; Dkt. 2577 at 3-4; Dkt. 3921 at 1-2; Dkt. 3111 at 7; Dkt. 3921 at 2; Dkt. 3113 at 7-8; Dkt. 3921 at 1; Dkt. 3092

22   at 6; Dkt. 3111 at 7; Dkt. 3921 at 3; Dkt. 3420 at 9-10; Dkt. 2921 at 3; Dkt. 3031; Dkt. 3921 at 3; Dkt. 3669 at 3-4; Dkt. 3898 at 1-2; Dkt. 5279 at 56-57; Dkt. 4992 at 29-30;

23   Dkt. 5088 at 38-39; Dkt. 5092; Dkt. 5279 at 55; Dkt. 6098 at 26-27; Dkt. 5514 at 58; Dkt. 5279 at 56-57; Dkt. 5510 at 11-12; Dkt. 6456 at 24; Dkt. 6407 at 41; Dkt. 6437 at

24   33-34; Dkt. 6437 at 34-35; Dkt. 6456 at 24; Dkt. 6671 at 14; Dkt. 7319; Dkt. 8767 at 14-15; Dkt. 7636 at 8, 10; Dkt. 8239-1 at 6-7; Dkt. 8239-1 at 4; Dkt. 7717 at 4; Dkt.

25   8079 at 14; Dkt. 8079 at 15-18; Dkt. 8079 at 4-5; Dkt. 8079 at 5-6; Dkt. 8459 at 5-6; Dkt. 8459 at 7; Dkt. 8319 at 2; Dkt. 8459 at 8-9; Dkt. 8752 at 8; Dkt. 8459 at 8-9; Dkt.

26   8752 at 8; Dkt. 8752 at 4-6; Dkt. 8752 at 6-7; Dkt. 8880; Dkt. 8921 at 3; Dkt. 8974 at 15; Dkt. 9027 at 3; Dkt. 9002; Dkt. 9662; Dkt. 9824; Dkt. 10374.

27

28

MATTEL'S OPP TO MGA'S MOTION FOR ATTORNEY'S FEES AND COSTS UNDER COPYRIGHT ACT

1    First, MGA urges that it "prevailed on the merits rather than a technical defense."

2    Mot. at 11.  MGA prevailed on an issue of contract interpretation governed by state

3    law; in the future, if parties want to assure ownership of work done on nights and

4    weekends, or of ideas, they will have to so specify in their contracts.  See Halicki Films

5    LLC v. Sanderson Sales & Marketing, 547 F.3d 1213, 1230-31 (9th Cir. 2008)

6    (affirming denial of attorney's fees under the Copyright Act to the prevailing defendant

7    where plaintiff reasonably sought to protect interest "that they believed was theirs"

8    pursuant to contract).  This was not Mattel, Inc. v Walking Mountain Prods., Inc., 353

9    F.3d 792, 797-803 & n.2 (9th Cir. 2004) (cited by MGA), which upheld an award of

10   fees to an artist represented by the ACLU who "[b]y developing and transforming

11   associations with Mattel's Barbie doll, [] created the sort of social criticism and parodic

12   speech protected by the First Amendment *and promoted by the Copyright Act*."

13   (emphasis added)).[9]   This was a hard fought action between two well-financed

14   corporations with significant resources and sophisticated counsel.

15       Second, shifting fees in this circumstance would defeat the purposes of the Act

16   by discouraging individuals with valid, or even close claims, from suing for

17   infringement.  See Lotus Dev., 140 F.3d at 75 (district court may balance the need to

18   encourage meritorious defenses "against the potentially chilling effect of imposing a

19   large fee award on a plaintiff, who, in a particular case, may have advanced a

20   reasonable, albeit unsuccessful, claim"); Hustler Magazine Inc. v. Moral Majority Inc.,

21   796 F.2d 1148, 1157 (9th Cir. 1986) ("Section 505 is intended in part to encourage the

22   assertion of colorable copyright claims and to deter infringement.").  "The touchstone

23   of attorney's fees under § 505 is whether imposition of attorney's fees will further the

24

---

25   [9]   The court on remand awarded attorney's fees because "the parodic character of
     Defendant's work is reasonably perceived *and Plaintiff was objectively unreasonable to*
26   *make any other claim*."   Mattel, Inc. v Walking Mountain Prods., Inc., 2004 WL
     1454100, at *1 (C.D. Cal. June 21, 2004) (emphasis added).
27

28

1   interests of the Copyright Act, i.e., by encouraging the raising of objectively reasonable

2   claims and defenses, which may serve not only to deter infringement but also to ensure

3   'that the boundaries of copyright law [are] demarcated as clearly as possible' in order to

4   maximize the public exposure to valuable works." <u>Mitek Holdings, Inc. v. Arce Eng'g</u>

5   <u>Co.</u>, 198 F.3d 840, 842-43 (11th Cir. 1999) (quoting <u>Fogerty</u>, 510 U.S. at 526-27).

6       <u>Third</u>, while MGA points out that its victory allows it "to keep marketing Bratz

7   fashion dolls," promoting consumer choice (Mot. at 11), the only question in this case

8   was *who* would provide those choices to consumers.  After Mattel won the first trial,

9   the Court initiated a process to enable Mattel to produce its own Bratz line based on

10   Bryant's designs. Dkt. 5565 at 13.  The defense verdict dictates who can make Bratz,

11   not whether it can be made at all.

12       <u>Finally</u>, MGA is not without fault here.  Even the second jury concluded that

13   MGA and Larian intentionally interfered with Bryant's contract with Mattel (Dkt.

14   10518 at 28), and while that claim was time-barred,  the finding of fault militates

15   against rewarding them by shifting fees. <u>See</u> <u>Berkla v. Corel Corp.</u>, 302 F.3d 909, 923

16   (9th Cir. 2002) (affirming denial of attorney's fees to a prevailing defendant who the

17   jury found engaged in "a highly questionable business practice" related to an

18   objectively reasonable but unsuccessful copyright claim).

19   **II.   MGA'S MOTION SHOULD BE DENIED BECAUSE MGA FAILED**

20   **TO SUBMIT BILLING RECORDS ADEQUATE TO DETERMINE**

21   **WHETHER ITS FEES WERE EITHER REASONABLE OR**

22   **PROPERLY APPORTIONED**

23       The law is clear that "counsel bears the burden of submitting detailed time

24   records justifying the hours claimed to have been expended." <u>Chalmers v. City of Los</u>

25   <u>Angeles</u>, 796 F.2d 1205, 1210 (9th Cir. 1986).  The law is also clear that there can be

26   no recovery of fees under the Copyright Act where work was performed on "distinctly

27   different claims for relief that are based on different facts and legal theories." <u>Entm't</u>

28

MATTEL'S OPP TO MGA'S MOTION FOR ATTORNEY'S FEES AND COSTS UNDER COPYRIGHT ACT

1 | Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211, 1230 (9th Cir.
2 | 1997) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434-35 (1983)).

3 |      Even though literally dozens of claims have been asserted in this case, MGA has
4 | made virtually no attempt to apportion fees between work related to Mattel's copyright
5 | claim and other claims.  MGA has also provided no work descriptions to support its
6 | application.  MGA failed to meet its burden of (1) providing detailed work descriptions
7 | to establish that the fees incurred were reasonable and necessary and give Mattel an
8 | opportunity to challenge them, and (2) apportioning attorney's fees between its defense
9 | of Mattel's copyright claim and litigation on other claims.

10 |     A.   **MGA's Complete Redaction Of All Work Descriptions Prevents**
11 |         **Mattel And The Court From Evaluating Whether The Fees Were**
12 |         **Reasonably And Necessarily Incurred In Defense Of The Copyright**
13 |         **Claim**

14 |      MGA has not provided a description of the tasks its lawyers performed sufficient
15 | to support even $1, let alone ██████, in fee shifting.  By completely redacting the
16 | work descriptions in over ███ pages of invoices (and, as discussed below, by failing
17 | to apportion the fees expended on different claims), MGA "has not met even its most
18 | minimal burden of showing entitlement to any fees or costs."  EOS GMBH Electro
19 | Optical Sys. v. DTM Corp., 2002 WL 34536678, at *4-5 (C.D. Cal. Mar. 18, 2002)
20 | (Carter, J.); see also Jadwin v. County of Kern, --- F. Supp. 2d ----, 2011 WL 240695,
21 | at *21 (E.D. Cal. Jan. 24, 2011) (disapproving of "refusal to provide a properly
22 | documented fee motion containing adequate descriptions of hours expended for specific
23 | services provided on identifiable subject matter.  This includes failing to provide a
24 | functional delineation of the number of hours spent litigating this case with a
25 | description of the services performed.").  MGA's request for fees should be denied
26 | outright.  See Thelen Oil v. Fina Oil, 962 F.2d 821, 824 (8th Cir. 1992) ("[I]t is not
27 | inappropriate to deny fees completely when the fee request is outrageously excessive
28 | and unsupported by adequate documentation."); The Traditional Cat Ass'n, Inc. v.

00505.07975/4139341.2

1  Gilbreath, 340 F.3d 829, 834 (9th Cir. 2003) ("[W]e can conceive of a case where the

2  party seeking fees would have so little evidence supporting a fee request that a

3  wholesale denial might be appropriate . . . ."); see also Entm't Research Group, 122

4  F.3d at 1231 ("[T]he district court abused its discretion by concluding that the

5  summaries submitted in conjunction with the declaration of Genesis's counsel were

6  sufficient to determine exactly how many hours Genesis spent solely defending against

7  the [copyright] claims.  Indeed, in these circumstances, we believe that the district court

8  erred in not requiring Genesis to submit its original time records and billing statements

9  so that ERG—and the district court—could determine whether the fees being claimed

10 were truly for time spent in defending against the [copyright] claims.").  MGA's

11 complete redaction of all work descriptions is "insufficient to sustain an award of

12 attorney's fees and costs" because it leaves Mattel "without the opportunity to impose a

13 meaningful objection" and gives the Court no basis "to accept its representations that

14 the costs and fees are reasonable." EOS, 2002 WL 34536678, at *4-5.

15        The Court has ordered MGA to submit unredacted billing records to the

16 Discovery Master, but Mattel is also entitled to review those records so it can

17 meaningfully challenge MGA's request.  See United States v. $1,379,879.09 Seized

18 From Bank of America, 374 F. App'x 709, 711 (9th Cir. 2010) ("[W]e vacate the fee

19 award and remand for further proceedings.  On remand, the government must have

20 access to the billing records underlying the fee request, including the specific

21 descriptions of services rendered; the records should be redacted only to the extent

22 absolutely necessary to protect information covered by the attorney-client privilege or

23 the work-product doctrine.  The government then must have an opportunity to object to

24 the fee request.").  MGA states, without explanation, that complete redaction of its

25 billing records is necessary to preserve privilege (Mot. at 17), but MGA has not carried

26 its burden of justifying this blanket invocation, and the law does not support it.  See

27 MGIC Indem. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986) ("No reason appears why

28 the timesheets should not have been made available to MGIC and MGIC given the

1    opportunity to challenge them.”); Martinez v. Home Depot USA, Inc., 2007 WL

2    2254432, at *3-4 (E.D. Cal. Aug. 2, 2007) (rejecting request that invoices not be

3    disclosed to opposing party; party opposing fee award could not adequately contest the

4    reasonableness of the fees sought “without access to a more detailed record”);

5    Automotive Prods., plc v. Tilton Eng’g, Inc., 1993 WL 660164, at *7 (C.D. Cal. Sept.

6    16, 1993) (“Tilton must turn over its unredacted invoices unless it can show the Court

7    specifically how providing these invoices will impermissibly infringe on the attorney-

8    client privilege.”).

9         At a minimum, if MGA’s motion for fees is not denied outright, Mattel must be

10   given an opportunity to challenge its particulars by reviewing MGA’s detailed work

11   descriptions.  If the Court determines that any fee award is justified, MGA should be

12   ordered to disclose its invoices to Mattel, subject only to the most restrictive privilege

13   limits, and Mattel should be permitted to then respond.[10]

14        **B.    MGA Should Not Be Awarded Attorney’s Fees And Costs Because It**

15              **Failed To Apportion These Costs**

16        Literally dozens of claims have come and gone in this case—from MGA’s trade

17   dress claim against Mattel, to both parties’ RICO claims, to MGA’s wrongful

18   injunction action, to Mattel’s claim against Omni.   More than 29 separately-

19

20   ───────────────────

21   [10]   There is no support, on the other hand, for MGA’s demand that Mattel be
     ordered to turn over its invoices; it is the fee shifting claimant, not the fee shifting
     opponent, that must produce its invoices to support its claim.  See Johnson v.
22   University College of University of Alabama in Birmingham, 706 F.2d 1205, 1208
     (11th Cir. 1983) (affirming district court’s decision to quash a subpoena sought by
23   plaintiffs requiring the defendants to produce their counsel’s billing records where “this
     defense information was irrelevant to the reasonable fees and hours of plaintiffs’
24   counsel”); In Re Fine Paper Antitrust Litig., 751 F.2d 562, 587 (3d Cir. 1984) (finding
     no abuse of discretion by district court in denying plaintiff’s motion for in camera
25   production of fees paid by defendants because such discovery could generate inquires
     into collateral matters).  However, for purposes of apportionment, Mattel is prepared to
26   submit its invoices to the Discovery Master for review, as has been ordered with
     MGA’s invoices.

27

28

denominated claims have been asserted,[11] and many of those had multiple subparts; MGA itself said its unfair competition claim encompassed more than 23 distinct issues and allegations.  Dkt. 10526 at 19-21.  MGA is only entitled to fees, in this motion, for costs incurred in defending the copyright claim.

While Mattel can only evaluate apportionment based on detailed billing records it has yet to see, what it has seen already suggests that MGA did not apportion its fees to these many other claims.  For example:

- MGA made no effort at all to segregate fees expended defending against Mattel's RICO claim, even though significant litigation focused exclusively on that claim, including multiple hearings before the Court and broad swaths of motions to dismiss and summary judgment briefing.

- MGA made no effort to segregate work it performed in its defense of Mattel's multiple claims related to the alleged thefts of non-Bratz related information by Mr. Brawer, Mr. Castilla, Mr. Cooney, Mr. Contreras, Ms. Brisbois, Mr. Machado, Ms. Trueba, and Mr. Vargas (except for a "specific matter" set up by the Orrick firm relating to the "defense of Jorge Castilla, Schultz Dec. ¶ 5), even though, once again, a tremendous amount of litigation focused exclusively on those claims. Literally dozens and dozens of depositions, in Mexico and Canada as well as the United States, were held on these claims; and extensive issues relating to everything from jurisdiction to choice of law were briefed.  MGA accounts for none of it.

- MGA made no effort to segregate work it performed in its defense of Mattel's claims relating to the Omni transaction (other than fees charged by the Bingham firm for representing Omni, not MGA), even though 8 very significant depositions (Neil Kadisha, Fred Mashian, Joseph Moinian, David Nazarian, Leon Neman, Arsalan Gozini, and Leon Farahnik) were devoted exclusively to that transaction, not to mention extensive discovery and motion practice.

---

[11]  Dkt. 1, 7714, 7733, 7766, 8583 (04-9049); Dkt. 1 (04-9059); Dkt. 1 (05-2727).

MATTEL'S OPP TO MGA'S MOTION FOR ATTORNEY'S FEES AND COSTS UNDER COPYRIGHT ACT

- MGA made no effort at all to segregate work performed defending against Mattel's fraudulent transfer claims (and the related prohibited distributions claim), though discovery and motion practice on those claims likewise was substantial.

- MGA made no effort at all to segregate work it performed in defending against Mattel's claims relating to the sample makers, Ms. Cabrera, Ms. Morales, and Ms. Salazar, even though significant litigation also focused on them.

- MGA seeks all the fees it billed even before Mattel's copyright claim was asserted, without regard for the issues litigated at that time (and despite the Court's rulings that Mattel's claims were not veiled copyright claims that arose under federal law). See, e.g., Schultz Dec. ¶6 and Schultz Dec. Exh. 2 at 2 (requesting attorneys fees and submitting bills for work done by O'Melveny & Myers beginning in June, 2004); Dkt. 180 at 14-17 (04-9059).

- MGA made little effort even to apportion out even the fees it incurred litigating the many MGA affirmative claims that it lost on.  For example, MGA is seeking every dime invoiced by the Skadden firm, more than ▮▮▮▮▮▮▮, even though Skadden represented MGA for a period of years, including active representation up through the recent trial, and worked on every claim that has ever been in the case— including every MGA claim.  Schultz Dec. ¶7 (declining to apportion any attorneys fees incurred by the Skadden firm and requesting all attorneys fees for work done by the Skadden firm); Schultz Dec. Ex. 3 at 2, 8628-8635 (submitting bills for work done by the Skadden firm between October 2007 and February 2011).  Similarly, MGA is seeking every dime invoiced by the Keller firm as copyright fees, even though much of her trial time was devoted to arguing MGA's affirmative case.  Mattel rested its case on March 10, 2011, yet MGA seeks substantial fees incurred after that date.  Schultz Dec. ¶8 (declining to apportion any attorneys fees incurred by Keller Rackaukas); Schultz Dec. Ex. 4 at 8671 (requesting attorneys fees in excess of ▮▮▮▮▮▮ after March 10, 2011).

- MGA disingenuously attempts to "apportion" fees by providing the Court with a calculation for fees it has purportedly "excluded" from both Orrick's and O'Melveny's total bills. See Schultz Dec. ¶ 5-6. Upon closer examination, all of them relate to matters having nothing whatsoever to do with Mattel, much less Mattel's copyright claim. Id.

-23-

(purporting to exclude attorneys fees incurred in connection with, among other things, "miscellaneous commercial questions," "the Art Attacks litigation," "the Belair litigation," "European competition issues," and "general MGA matters").  Calling this decision to "exclude" fees for unrelated litigation against third parties "apportionment" is hollow and misleading at best.

MGA defends its conceded failure to apportion with the claim that all of Mattel's claims were always "inextricably intertwined" with the copyright claim (Mot. at 14-15), and claims it carved off fees that "have been clearly identified" as non-chargeable. Mot. at 16.  Mattel is in no position to assess what can be "clearly identified" since nothing has been, but all of the claims in this action did not hinge on such copyright issues as which elements are protectable or how much the sculpt varied.  There can be no recovery for fees expended on "distinctly different claims for relief that are based on different facts and legal theories." Entm't Research Group, 122 F.3d at 1230 (quoting Hensley, 461 U.S. at 434-35); see also Identity Arts v. Best Buy Enterprise Servs. Inc., 2008 WL 820674, at *3 (N.D. Cal. Mar. 26, 2008) (court "must make an attempt to apportion fees between the copyright and non-copyright claims").  "The fact that it is not a simple task to discern from this data precisely what fees are attributable to the copyright claims does not excuse a failure to make such an allocation." Gilbreath, 340 F.3d 829, 834 (9th Cir. 2003).

Only the Bratz trade secret claim—confirmed by the Court in its September 2010 Order (Dkt. 8705)—is  sufficiently "related" to the Bratz copyright claim for apportionment purposes that all work done on it might fairly be charged as easily to the copyright claim.  All of the other claims are sufficiently distinct, by virtue of both the facts and the legal theories involved, that some or all of the work done on them would not overlap in any way with the copyright claim. See Entm't Research Group, 122 F.3d at 1230 (holding that 10 common law claims, including claims for intentional interference and breach of contract, were not "related" to 2 copyright claims for purposes of apportionment).

1   Tellingly, while MGA argues that all of Mattel's claims are inextricably
2   intertwined with the Bratz copyright claim, stating "[f]rom the very beginning, this was
3   a copyright case" (Mot. at 1), when Bryant removed Mattel's April 2004 Complaint on
4   federal question and diversity grounds, the Court found *no* complete preemption under
5   the Copyright Act—it found that Mattel's state law claims did not arise under copyright
6   law. Dkt. 180 at 14-17 (04-9059). As the Court recognized then, Mattel's April 2004
7   Complaint did not identify MGA, Larian or Bratz; it did not allege that Mattel owns
8   Bratz; and it certainly did not allege that the Bratz dolls infringed the Bratz drawings
9   that Mattel owns. MGA argues that the state law claims asserted in April 2004 "were a
10  means for Mattel to acquire the copyright in Bryant's work" (Mot. at 2), but Mattel
11  claimed ownership of the Bratz works through assignment or the work-made-for-hire
12  statute, not through its common law claims. MGA argues that Mattel's relation back
13  allegations establish that the copyright and common law claims are related for
14  apportionment purposes (Mot. at 2), but California's relation back doctrine is irrelevant
15  to the interpretation of § 505. <u>Entm't Research Group</u>, 122 F.3d at 1230. And while
16  MGA relies on the Court's preemption rulings to establish that the common law claims
17  are related to the Bratz copyright claim (Mot. at 2), these rulings actually prove the
18  opposite: Mattel's common law claims were not based on the same facts as the
19  copyright claims—the ownership and exploitation of Bratz works—because claims
20  based on such facts would be preempted.
21  MGA has demanded that Mattel pay for its defense of every claim and even for
22  its assertion of its own claims without any attempt at apportionment. This is wholly
23  improper. Because the January 2007 Bratz copyright claim is unrelated to the April
24  2004 common law claims for apportionment purposes, and in fact had not even been
25  asserted when those claims were filed, MGA is not entitled to the nearly ████ in
26  claimed attorney's fees and costs incurred before January 2007. For fees incurred after
27  that date, MGA must apportion. MGA argued in August 2010 that its "discovery in
28  Phase 1 and Phase 2 has not focused on these [Bratz trade secret] allegations." Dkt.

1   8634 at 7.  In light of that representation, MGA bears a heavy burden to justify any fees

2   for the period  between January 2007 and September 2010—when Mattel's motion to

3   confirm was granted.  MGA must apportion all fees incurred since, and must produce

4   records that will allow both Mattel, the Discovery Master and the Court to review the

5   accuracy of the records and of the proposed apportionment.

6        **C.**    **Even Without Apportionment Or Billing Descriptions, MGA's**

7            **Demand For** ███████ **In Attorney's Fees And Costs Is Grossly**

8            **Excessive**

9        Even without apportionment or billing descriptions, MGA's demand is clearly

10   unreasonable and excessive.  "Hours that are not properly billed to one's client also are

11   not properly billed to one's adversary pursuant to statutory authority."  <u>Copeland v.</u>

12   <u>Marshall</u>, 641 F.2d 880, 891 (D.C. Cir. 1980).  "The Court must exclude from the

13   lodestar amount hours that are not reasonably expended because they are excessive,

14   redundant, or otherwise unnecessary."  <u>Rodriguez v. Del Taco, Inc.</u>, 2002 WL

15   32987532, at *2-*3 (C.D. Cal. Jan. 10, 2002) (Carter, J.) (citing <u>Hensley</u>, 461 U.S. at

16   433).  There are certain entries, or sets of entries, that stand out as unreasonable and

17   improper, even  on the limited record presented.

18        **O'Melveny & Meyers ("OMM").**  MGA has included in its motion ███████

19   in attorney's fees incurred by a firm that MGA has sued for overbilling for work that

20   was "never performed, took less time than actually billed, or was meaningless 'busy'

21   work which provided little or no value to the effort in the underlying legal actions."

22   <u>See</u> MGA's Cross-Complaint in <u>O'Melveny & Myers vs. MGA</u>, Case No. BC441593,

23   Superior Court of California, County of Los Angeles Central Division, filed August 5,

24   2010 ("MGA Cross-Complaint") at ¶47, Searcy Dec. Ex. 23.  MGA's pleading details

25   OMM's alleged "misrepresent[ation of] the qualifications and experience [of lead

26   counsel]," "improper[] staffing," "egregious overbilling," "inefficiencies by virtue of a

27   lack of direction, oversight, coordination and review," "vague billing statements,"

28   "[c]harging and collecting unreasonable costs in excess of the costs O'Melveny

1    expended or incurred for the underlying legal actions," "fraudulent[] overbilling," and

2    "[t]hrowing countless bodies of legal personnel at the MGA case, resulting in

3    inefficiencies by virtue of a lack of direction."  Id.; MGA's Case Management

4    Statement in O'Melveny & Myers vs. MGA, Case No. BC441593, Superior Court of

5    California, County of Los Angeles Central Division, filed August 5, 2010 ("MGA

6    CMS") at 8 (April 29, 2011), Searcy Dec. Ex. 24.  "MGA's claim," according to the

7    state court hearing it, is "that it was overbilled for work O'Melveny performed that was

8    ineffective, inappropriate, unnecessary, duplicative or wasteful."  Notice of Ruling in

9    O'Melveny & Myers vs. MGA, Case No. BC441593, Superior Court of California,

10   County of Los Angeles Central Division, filed (Nov. 17, 2010) ("Notice of Ruling"),

11   Searcy Dec. Ex. 25.  Yet MGA insists that Mattel pay fees that MGA contends "are

12   improper, bloated, excessive, unreasonable *or even false*."  MGA Cross-Complaint at ¶

13   50 (emphasis added).

14        **Skadden.**  MGA also argues that Mattel should pay for ██████ in attorney's

15   fees incurred by Skadden even though MGA's malpractice claim includes allegations

16   that Skadden engaged in duplicative, wasteful, and unnecessary ramp-up work caused

17   by OMM's "fail[ure] and refus[al] to meaningfully assist Skadden during the

18   transition."  MGA Cross-Complaint at ¶ 38.  According to MGA, "O'Melveny's and

19   Cross-Defendants [] conduct cost MGA *millions of dollars in additional and

20   unnecessary fees and costs* as Skadden struggled to get up to speed, organize the file

21   and correct O'Melveny's mistakes."  Id. at ¶ 40 (emphasis added).  Mattel should not

22   pay for "Skadden to *recreate* the case files that O'Melveny had in its possession."  Id.

23   at ¶ 39 (emphasis added); see also MGA's Case Management Statement in O'Melveny

24   & Myers vs. MGA, Case No. BC441593, Superior Court of California, County of Los

25   Angeles Central Division, filed August 5, 2010 ("MGA CMS") at 5 (April 29, 2011);

26   see Earthquake Sound Corp. v. Bumper Indus., 352 F.3d 1210, 1219 (9th Cir. 2003)

27   ("[I]t is appropriate for a district court to reduce duplicative fees when awarding

28   attorney's fees."); Oskar Sys., LLC v. Club Speed, Inc., 2010 WL 4235812, at *3 (C.D.

1  Cal. Oct. 20, 2010) (reducing defendants' requested "getting up to speed" attorneys' fee

2  award by one-third where there was "an indisputable overlap of time and ensuing

3  inefficiency given that prior counsel was replaced").

4      **Other Firms.** MGA has shuffled through dozens of lawyers on this; it is seeking

5  reimbursement for fees paid to 13 separate firms. Schultz Dec. at ¶¶4-8, 10-12. The

6  waste and need for duplication associated with hiring multiple separate firms is

7  obvious. Mattel should not have to pay for that waste and duplication.

8      **Other Examples.** Mattel is reluctant to present anything which might resemble

9  a comprehensive list of exclusions precisely because no such list is possible without

10 more detailed records. But certain issues clearly present themselves which will need to

11 be addressed in light of those records. For example:

12 • Despite the Court's warnings, MGA filed for summary judgment prior
13   to the close of discovery in May 2010—papers which the Court struck
     as premature even though MGA "seem[ed] to have expended
14   considerable time and effort in the preparation and submission of the
15   dispositive motions."[12] The Court found that "the instant motions are
     remarkable precisely because the MGA Parties previously requested a
16   July 23, 2010 deadline for summary judgment motions," and that the
17   "Court's consideration of the arguments in favor of summary judgment
     detracts from the Court's interest in a just, speedy, and inexpensive
18   resolution of this lawsuit."[13]

19 • Rather than proceed to trial, MGA chose to file a frivolous mandamus
20   petition seeking to overturn the Court's orders disqualifying its
     conflicted counsel and requiring it to proceed to trial, after having made
21   the decision to hire a former Quinn Emanuel attorney who worked for
22   Mattel on this case (Jill Bassinger)—all of which required lengthy,
     expensive proceedings both before the Court and the Court of Appeals.
23

---

24 [12]  Order Striking as Premature and Denying Without Prejudice MGA Parties'
25 Motions for Summary Adjudication; Denying Mattel's Ex Parte Application, dated
   May 13, 2010, at 3 (Docket No. 7854).
26
27 [13]  Id. at 3-4.
28

See, e.g., MGA's Opposition to Mattel's Inc.'s Motion to Disqualify Glaser Weil, Dkt. 9407; Hearing Tr., Motion to Disqualify Glaser Weil Firm, Dec. 20, 2010, Vol. 1 - 3; Hearing Tr. on Motion to Disqualify Glaser Weil Firm, Dec. 21, 2010, Vol. 1-3; MGA's Opening Brief and/or Petition for Writ of Mandamus to the 9th Circuit.

- Before that, MGA, acting through the Skadden firm, decided to hire a former Mattel employee who worked with the legal department at Mattel (Christina Tomiyama) as an "expert" prior to the Phase 1 trial, and disclosed privileged Mattel information in Tomiyama's expert report. This led to another costly round of disqualification proceedings on which Mattel prevailed. See, e.g., MGA's Response in Opposition to Disqualify, dated March 31, 2008; MGA Parties' Memorandum of Points and Authorities in Opposition to Mattel's Motion in Limine No. 15, dated May 2, 2008 (opposing Mattel's Motion in Limine to exclude testimony of Ms. Tomiyama); Hearing Tr., April 7, 2008 at 4:16-97:23.

- MGA spent long hours working with the Court-appointed receiver and forensic auditor in Phase 1—judicial officers appointed by the Court not based on Mattel's copyright claim, but based on MGA's documented gamesmanship with its financials—gamesmanship that caused the Court to declare that it found MGA's finances a "mystery." Dkt. 4657 at 2 (appointing forensic auditor "[f]or good cause shown"); Dkt. 5168 at 1-2 (ordering production of documents to forensic auditor).

- MGA expended significant resources moving for terminating sanctions in 2007, efforts the Court rejected as "rhetoric laced with hyperbole"[14] and "sheer speculation, unsupported by evidence".[15]

- Just last week, MGA filed a 33-page JMOL on Mattel's UCL and intentional interference claims. Dkt. 10535. It did this even though Mattel had already made clear that it was not pursuing UCL relief in light of the jury's verdicts and even though Mattel never had any intention of seeking a judgment on its intentional interference claim in

---

[14] Order Denying Motion for Terminating Sanctions, dated August 27, 2007, at 4 (Dkt. 895).

[15] Id.

MATTEL'S OPP TO MGA'S MOTION FOR ATTORNEY'S FEES AND COSTS UNDER COPYRIGHT ACT

light of the jury's findings on timeliness. Dkt. 10535 at 17 ("In light of the jury verdict, Mattel has informed the Court that 'Mattel is not seeking further relief under the UCL . . . .'") (quoting Dkt. 10532 at 1). Rather than email counsel to confirm Mattel's non-opposition, MGA instead spent tens of thousands of dollars drafting an unnecessary motion—and presumably intends to send Mattel the bill.

Finally, both parties will no doubt argue that the other engaged in discovery abuse. At this point, it is no longer a contest, but a question of whether such conduct should disqualify MGA from receiving fees or at least limit the fees it receives. See Harris Custom Builders, Inc. v. Hoffmeyer, 140 F.3d 728, 731 (7th Cir. 1998) ("If the district judge is convinced that Hoffmeyer was, in fact, a party to destruction of evidence, as Harris alleges, or any other sanctionable conduct, that conduct should be considered in determining the amount of a fee award, or indeed in deciding whether fees should be awarded at all. Unfortunately, sometimes the prevailing party will also be a party who misbehaved during the course of the litigation. We make no judgment whether that is true here, but if it is, the conduct should be considered."). Only when detailed billing records can be compared with the motions and disputes to which they relate will a proper evaluation and appropriate allocation be possible.

**D.  Should The Court Decide To Award Fees, It Should Reduce Them**

The Court always has discretion to reduce attorney's fees. Should the Court decide—contrary to Mattel's arguments, and even to its Order requiring MGA to submit more detailed records—to make its decision based on the current record, then Mattel respectfully respects that the Court exercise its discretion to reduce substantially the award from that requested. See Trustees of Directors Guild of America-Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 427 (9th Cir. 2000) ("Where the documentation is inadequate, the district court is free to reduce an applicant's fee award accordingly."); Dr. JKL Ltd. v. HPC IT Education Center, 749 F. Supp. 2d 1038, 1052 (N.D. Cal. 2010) (reducing attorney's fees claimed by plaintiff where plaintiff submitted a billing sheet that omitted "any explanation of the tasks performed"); T-Peg,

1  Inc. v. Vermont Timber Works, Inc., 2010 WL 3895715, at *5-6 (D. N.H. Sept. 30,
2  2010) (awarding 15% of requested amount because "having presided over this lengthy
3  litigation, and having observed the often unnecessary and unproductive contentiousness
4  between the parties, [the judge] conclude[d] that a discretionary award of partial
5  attorney's fees as described above is fair and adequate.").

6  **III.    MATTEL IS ENTITLED TO SET-OFF ATTORNEY'S FEES**
7  **INCURRED IN DEFENSE OF MGA'S LANHAM ACT CLAIMS**

8         To the extent the Court awards attorney's fees to MGA, Mattel is entitled to set-
9  off attorney's fees that Mattel incurred in its successful defense of MGA's Lanham Act
10  claims, which were groundless. 15 U.S.C. § 1117(a); Stephen W. Boney, Inc. v. Boney
11  Services, Inc., 127 F.3d 821, 827 (9th Cir. 1997) ("'When a plaintiff's case is
12  groundless, unreasonable, vexatious, or pursued in bad faith, it is exceptional, and the
13  district court may award attorney's fees to the defendant.'") (quoting Scott Fetzer Co. v.
14  Williamson, 101 F.3d 549 (8th Cir. 1996)). A finding of bad faith is not necessary to
15  award attorney's fees under the Lanham Act. Id.

16         MGA abandoned the bulk of its trade dress claims after forcing Mattel to expend
17  millions of dollars in discovery over a four-year period. Dkt. No. 10452. The only two
18  trade dress claims that MGA did not abandon—Bratz trapezoidal packaging and 4-Ever
19  Best Friends heart-shaped packaging—were rejected during summary judgment.
20  "[T]oys, and even dolls, have been sold in trapezoids for decades," and [t]he heart is a
21  'common, basic shape, similar to a geometrical design.'" Dkt. 9600 at 98, 100.

22  **IV.    MGA IS NOT ENTITLED TO "FULL COSTS" UNDER THE**
23  **COPYRIGHT ACT**

24         Finally, MGA seeks to recover *costs* of more than ██████████ under the
25  Copyright Act, in addition to fees. As with attorney's fees, the decision to award costs
26  under § 505, and the amount of any such award, is discretionary. See Perfect 10, Inc. v.
27  CCBill LLC, 488 F.3d 1102, 1120-21 (9th Cir. 2007) (denying both costs and fees).
28  The same arguments detailed earlier govern here: Mattel's litigation position was

1  objectively reasonable, and it did not act in bad faith. If any costs at all are to be

2  awarded, they should be apportioned. MGA has neither offered such records nor

3  provided sufficient detail that Mattel and the Court can do the necessary review. For

4  example, MGA seeks to recover ██████████ in fees for "Experts & Consultants"

5  (Schultz Dec. ¶¶ 35-52) even though only one of them, Peter S. Menell, is identified as

6  an expert in copyright (Schultz Dec. ¶ 43)—and MGA abandoned him long before trial.

7  Similarly, MGA seeks to recover ████████ in costs for Discovery Masters and

8  electronic discovery consultants (Schultz Dec. ¶¶ 20, 22, and 23) and ████████ in

9  costs for "Electronic Document Processing, Case Hosting and Database Management"

10  (Schultz Dec. ¶¶ 31-34) without any showing of which, if any, of these costs relate to

11  defending Mattel's copyright claim as opposed to defending or pursuing other claims.

12  As with its attorney's fees, MGA has failed to (1) apportion its costs between its

13  defense of Mattel's copyright and non-copyright claims and (2) provide detailed work

14  descriptions to establish that the costs incurred were reasonable and necessary and to

15  allow Mattel an opportunity to challenge them.

### Conclusion

17      For all these reasons, Mattel requests that the Court deny MGA's motion for

18  attorney's fees and costs under the Copyright Act.

20  DATED:  May 12, 2011       QUINN EMANUEL URQUHART &
                           SULLIVAN, LLP

23                By _____
                     Michael T. Zeller
24                 Attorneys for Mattel, Inc.

MATTEL'S OPP TO MGA'S MOTION FOR ATTORNEY'S FEES AND COSTS UNDER COPYRIGHT ACT