ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, California  94105-2669
Telephone:  +1-415-773-5700
Facsimile:   +1-415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street
Suite 3200
Los Angeles, California  90017
Telephone:  +1-213-629-2020
Facsimile:   +1-213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza
Suite 1600
Irvine, California  92614-2558
Telephone:  +1-949-567-6700
Facsimile:   +1-949-567 6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DISTRICT

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS. | Case No. CV 04-9049-DOC (RNBx)<br>Consolidated with Nos. CV 04-9059 and CV 05-2727<br><br>Hon. David O. Carter<br><br>**REPLY MEMORANDUM IN SUPPORT OF MGA'S  MOTION FOR AWARD OF ATTORNEYS' FEES AND "FULL COSTS" UNDER SECTION 505 OF THE COPYRIGHT ACT**<br><br>Date:      May 24, 2011<br>Time:      8:30 a.m.<br>Dept:      Courtroom 9D |

1

# TABLE OF CONTENTS

2    INTRODUCTION ...................................................................................................1

3    ARGUMENT ..........................................................................................................1

4    I.     THE COURT SHOULD AWARD MGA'S ATTORNEYS' FEES
          UNDER SECTION 505 OF THE COPYRIGHT ACT...................................1

          A.     Mattel Grossly Misstates The Law.......................................................1

          B.     MGA Is Entitled To Fees Under *Fogerty*. ..........................................3

II.    NO ALLOCATION AMONG FEES INCURRED FOR DEFENSE OF
      MATTEL'S  CLAIMS IS NECESSARY AS THE CLAIMS ARE
      ALL RELATED TO THE COPYRIGHT CLAIM. .......................................10

          A.     Mattel Has Failed To Show That The Included Claims Are
               Unrelated. ...........................................................................................10

          B.     Failure To Apportion Is Not A Basis For Denial Of Fees..................12

          C.     Mattel's Redaction Argument Is Meritless And Moot.......................13

III.   THE FEES MGA SEEKS WERE NECESSARILY AND
      REASONABLY INCURRED...........................................................................14

          A.     Mattel Does Not Contest Rate Reasonableness. ................................14

          B.     Mattel's Own Fee Expenditures Will Undoubtedly Support The
                Reasonableness Of The Fees Spent On Behalf Of MGA...................14

          C.     Mattel's Specific Attacks On The Necessity Of MGA's Defense
                Efforts Are Unpersuasive...................................................................16

IV.  THE COURT SHOULD ALSO AWARD "FULL COSTS" AS
      PROVIDED BY SECTION 505. ...................................................................20

V.   MATTEL'S PURPORTED FEE SETOFF UNDER THE LANHAM
      ACT IS IMPROPER AND MERITLESS. ...................................................22

CONCLUSION .....................................................................................................25

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

*Ambriz v. Arrow Fin. Serv.*, LLC,
    2008 WL 2095617 (C.D. Cal., May 15, 2008) ..................................................20

*Apple Computer, Inc. v. Microsoft Corp.*,
    35 F.3d 1435 (9th Cir. 1994)......................................................................2

*Assessment Techs. of WI., LLC v. WIREdata, Inc.*,
    361 F.3d 434 (7th Cir. 2004)......................................................................4

*Brown v. Electronic Arts, Inc.*,
    722 F.Supp.2d 1148 (C.D. Cal. 2010)......................................................23, 24

*Cairns v. Franklin Mint Co.*,
    292 F.3d 1139 (9th Cir. 2002)...................................................................15

*Consolidated Sawmill Machinery Int'l v. Hi-Tech Eng'g, Inc.*,
    879 F. Supp. 945 (E.D. Ark. 1995) .............................................................5

*Cooling Sys. and Flexibles, Inc. v. Stuart Radiator, Inc.*,
    777 F.2d 485 (9th Cir. 1985)......................................................................2

*CyberMedia, Inc. v. Symantec Corp.*,
    19 F.Supp.2d 1070 (N.D. Cal. 1998)............................................................7

*Davis v. City and County of San Francisco*,
    976 F.2d 1536 (9th Cir. 1992)...................................................................20

*Echostar Satellite Corp. v. NDS Group PLC*,
    2008 WL 5116513 (C.D. Cal. 2008) ...........................................................23

*Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*,
    122 F.3d 1211 (9th Cir. 1997)................................................................2, 10

*Express LLC v. Forever 21*,
    Case 2:09-CV-04514, Dkt. # 4783 (C.D. Cal., Nov. 15, 2010) ........................20

*Fantasy Inc.  v. Fogerty*,
    1995 WL 261504 (N.D. Cal. 1995)............................................................23

*Fantasy, Inc. v. Fogerty*,
    94 F.3d 553 (9th Cir. 1996)................................................................1, 2, 9

*Ferland v. Conrad Credit Corp.*,
    244 F.3d 1145 (9th Cir. 2001)...................................................................16

*FM Indus., Inc. v. Citicorp Credit Servs., Inc.*,
    614 F.3d 335 (7th Cir. 2010).......................................................................3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

*Fogerty v. Fantasy, Inc.,*
510 U.S. 517 (1994)...............................................................................1

*Gilbert v. New Line Productions, Inc.,*
2010 WL 5790688 (C.D. Cal., Dec. 6, 2010) ...................................20

*Gillete v. Delmore,*
886 F.2d 1194 (9th Cir. 1989)...................................................23, 24

*Gracie v. Gracie,*
217 F.3d 1060 (9th Cir. 2000).............................................................13

*Halicki Films, LLC v. Sanderson Sales and Mktg.,*
547 F.3d 1213 (9th Cir. 2008)...............................................................2

*Hensley v. Eckerhart,*
461 U.S. 424 (1983)...............................................................................5

*In re Grand Jury Witness,*
695 F.2d 359 (9th Cir. 1982)...............................................................13

*Jackson v. Axton,*
25 F.3d 884 (9th Cir. 1994)...................................................................2

*Kerr v. Screen Extras Guild, Inc.,*
526 F.2d 67 (9th Cir. 1975).................................................................14

*Kourtis v. Cameron,*
358 Fed. Appx. 863, 2009 WL 4885054 (9th Cir. 2009)...................20

*Love v. Associated Newspapers, Ltd.,*
611 F.3d 601 (9th Cir. 2010).................................................................2

*Love v. The Mail on Sunday,*
2007 WL 2709975 (C.D. Cal. Sept. 7, 2007) ......................................3

*Maljack Prods., Inc. v. GoodTimes Home Video Corp.,*
81 F.3d 881 (9th Cir. 1996)...................................................................6

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,*
571 F.3d 873 (9th Cir. 2009).................................................................7

*Mattel, Inc. v. Goldberger Doll Mfg. Co.,*
236 F.R.D. 175 (S.D.N.Y. 2006)...........................................................9

*Mattel, Inc. v. Walking Mtn. Prods., Inc.,*
353 F.3d 792 (9th Cir. 2003).................................................................3

*McGinnis v. Kentucky Fried Chicken of California,*
51 F.3d 805 (9th Cir. 1994)...........................................................15, 16

# TABLE OF AUTHORITIES

**Page**

*Metcalf v. Bochco,*
200 Fed.Appx. 635 (9th Cir. 2006) ...................................................................9

*Miller v. Mackey Int'l, Inc.,*
70 F.R.D. 533 (S.D. Fla. 1976) .......................................................................16

*Mostly Memories, Inc. v. For Your Ease Only, Inc.,*
526 F.3d 1093 (7th Cir. 2008)...........................................................................3

*New York Stock Exchange, Inc. v. Ghary,*
2003 WL 68038 (S.D.N.Y. 2003) ...................................................................24

*Oracle v. SAP,*
No. 4:07-cv-01658-PJH (N.D. Cal.), Dkt. # 1036) ...................................14, 15

*Pennsylvania v. Delaware Valley Citizen's Council for Clean Air,*
483 U.S. 711 (1987)..........................................................................................15

*Qualitex Co. v. Jacobson Prods. Co., Inc.,*
514 U.S. 159 (1995)....................................................................................24, 25

*Real v. Continental Group, Inc.,*
116 F.R.D. 211 (N.D. Cal. 1986) .......................................................13,  16, 21

*Riker v. Distillery,*
2009 WL 2486196 (E.D. Cal. Aug. 12, 2009) ....................................13, 16, 21

*Riviera Distrib., Inc. v. Jones,*
517 F.3d 926 (7th Cir. 2008)..............................................................................4

*Shaw v. AAA Eng'g & Drafting, Inc.,*
213 F.3d 538 (10th Cir. 2000)..........................................................................16

*Sorenson v. Mink,*
239 F.3d 1140 (9th Cir. 2001)..........................................................................21

*Subafilms, Ltd. v. MGM-Pathe Comm 'cs Co.,*
24 F.3d 1088 (9th Cir. 1994)..............................................................................7

*The Traditional Cat Ass'n, Inc. v. Gilbreath,*
340 F.3d 829 (9th Cir. 2003) ......................................................................10, 13

*Thomas v. City of Tacoma,*
410 F.3d 644 (9th Cir. 2005)........................................................................5, 10

*Twentieth Century Fox Film Corporation v. Entertainment Distributing,*
429 F.3d 869 (9th Cir. 2005)..................................................................9, 10, 20

*Webb v. Sloan,*
330 F.3d 1158 (9th Cir. 2003).........................................................................21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

*Woodhave Homes & Realty, Inc.  v. Hotz*,
  396 F.3d 822 (7th Cir. 2005).................................................................4

*Yankee Candle Co., Inc. v. Bridgewater Candle Co, LLC*,
  140 F. Supp. 2d 111 (D. Mass. 2001), *aff'd*, 259 F.3d 25 (1st Cir.
  2001) ..............................................................................................21

## STATUTES

17 U. S. C. § 505 ......................................................................... 1, 25

## OTHER AUTHORITIES

M. Derfner & A. Wolf, Court-Awarded Attorney Fees
  ¶16.02[8][a] (2010 ed.) .................................................................15

## RULES

California Rule of Professional Conduct 5-200.........................................2

Fed. R. Civ. P. 50(b) .........................................................................20

**INTRODUCTION**

Mattel, Inc.'s Opposition to MGA Entertainment, Inc.'s Motion for Attorney's Fees and "Full Costs" Under Section 505 of the Copyright Act ("Opp.") relies upon material misstatements of the law and gross mischaracterizations of the facts.   Indeed, Mattel takes positions diametrically opposed to those it previously announced for approximately seven years of litigation.  Perhaps we should not be surprised at this continuing campaign of legal distortion and overweening hypocrisy, but we are.  The unreasonable positions of Mattel's brief are just one more reason why MGA Parties' Motion for Award of Attorneys' Fees and "Full Costs" Under Section 505 of the Copyright Act ("Motion") should be granted.

**ARGUMENT**

**I.   THE COURT SHOULD AWARD MGA'S ATTORNEYS' FEES UNDER SECTION 505 OF THE COPYRIGHT ACT.**

**A.   Mattel Grossly Misstates The Law.**

In at least two material respects, Mattel has grossly misstated the basic legal principles governing this Motion.

As MGA demonstrated in the Motion, it is entitled to a fee award under the Supreme Court's decision adopting the "evenhanded approach" in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).  On remand, the Ninth Circuit held that "[f]aithfulness to the purposes of the Copyright Act is . . . the pivotal criterion." *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996).  Mattel ignores both of these opinions, spending four pages of its opposition arguing that since its claims were supposedly not frivolous, fees cannot be awarded, relying largely on out-of-circuit authority.  Opp. at 6-10.  Mattel argues that whether the prevailing party furthered the purposes of the Copyright Act "is not the test" (Opp. at 6:26-27) and instead that "it turns on the reasonableness of the positions taken, not who wins." Opp. at 7:2-3.

Mattel's argument is directly contrary to the Supreme Court's decision in

*Fogerty* and numerous other controlling decisions of the Ninth Circuit since.  From just a few months after *Fogerty* was decided in March 1994 to the present, the Ninth Circuit has explicitly and repeatedly recognized that the Supreme Court overruled in *Fogerty* any requirement that a prevailing defendant in a copyright case demonstrate frivolousness or bad faith in order to obtain a fee award.  *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994) (recognizing that *Fogerty* overruled bad faith/frivolousness requirement of *Cooling Sys. and Flexibles, Inc. v. Stuart Radiator, Inc.*, 777 F.2d 485 (9th Cir. 1985)); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1448 (9th Cir. 1994) ("[T]he Supreme Court has overruled *Cooling Systems*…. the district court now has greater discretion to award attorney's fees to prevailing defendants…."); *Fantasy*, 94 F.3d at 560 ("[A] finding of bad faith, frivolous or vexatious conduct is no longer required…."); *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1229 (9th Cir. 1997) ("discretion is not cabined by a requirement of culpability on the part of the losing party"); *Halicki Films, LLC v. Sanderson Sales and Mktg.*, 547 F.3d 1213, 1230 (9th Cir. 2008) ("In [*Fogerty*], the Supreme Court eliminated the 'dual standard' approach where attorneys' fees are awarded to defendants only where claims against it were frivolous or brought in bad faith."); *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 615 n.11 (9th Cir. 2010) (noting that *Jackson* first recognized *Fogerty* overruling of *Cooling Sys.*).

For Mattel to argue that the substantive strength of its position, rather than the purposes of the Copyright Act, is the touchstone of the fee inquiry, simply flies in the face of these seventeen years of precedent.  MGA cited and discussed *Fogerty* at length in the Motion, and certainly Mattel cannot claim ignorance of the holding of that case and its subsequent treatment by the Ninth Circuit.  Mattel's argument that bad faith or frivolousness is required for a prevailing defendant to obtain fees under the Copyright Act comes dangerously close to a violation of California Rule of Professional Conduct 5-200.

1  Mattel's treatment of the legal standard for assessing Copyright Act purposes
2  is equally bad.  On page 16 of its Opposition, Mattel argues as follows:  "The
3  question is not who won, but what specific goal would be served by fee shifting."
4  Opp. at 16:11-12.  This is just wrong:  "the question is whether a successful *defense*
5  of the action furthered the purposes of the Act, not whether a *fee award* would do
6  so."  *Mattel, Inc. v. Walking Mtn. Prods., Inc.*, 353 F.3d 792, 816 (9th Cir. 2003)
7  (emphasis in original); *Love v. The Mail on Sunday*, 2007 WL 2709975, *5 (C.D.
8  Cal. Sept. 7, 2007) ("Ultimately, the question is whether a successful defense of the
9  action furthered the purposes of the Copyright Act, not whether a fee award would
10 do so").  Mattel and Quinn Emanuel *know* that they are misstating the law, because
11 this is the very same argument which they made that was *expressly rejected by the*
12 *Ninth Circuit in reversing the denial of fees in Walking Mountain.*

13  The Court has previously remarked on Mattel's misstatements of governing
14 legal principles and misquoting of cases.  Once again, Mattel seeks to lead the
15 Court down the garden path to legal error.

16  **B.      MGA Is Entitled To Fees Under *Fogerty*.**

17  When Mattel's legal misstatements are put aside, it is plain that MGA is
18 entitled to fees.

19  ***Prevailing Party***.  Mattel does not contest, nor could it, that MGA prevailed
20 on the copyright claim.  *See* Mot. at 9-10.  Indeed, Mattel has now expressly thrown
21 in the towel on its claims against MGA.  *See* Mattel JMOL at 1 (after moving for
22 JMOL on MGA's toy fair-based trade secret claims, Mattel stated: "This is all that
23 Mattel asks of this Court, despite its disagreements with many other aspects of the
24 verdict.  With this motion, Mattel seeks to bring closure to this matter after six
25 years and two trials.").[1]

26 ───────────────
[1] Indeed, the Seventh Circuit has repeatedly held that a prevailing defendant in a
27 copyright case is presumptively entitled to fees.  *FM Indus., Inc. v. Citicorp Credit*
*Servs., Inc.*, 614 F.3d 335, 339-40 (7th Cir. 2010) (Easterbrook, J.); *Mostly*
28 *Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1099 (7th Cir. 2008)

REPLY ISO MOTION FOR FEES AND
COSTS UNDER COPYRIGHT ACT
CV 04-9049-DOC (RNBx)

1    ***Purposes of Copyright Act.***  The Supreme Court identified this as the

2    touchstone of the fees inquiry in *Fogerty* and discussed at length the importance of

3    recognizing that a successful defense also contributes to the purposes of the Act.

4    Mattel fails to counter the assertion that MGA's successful defense furthered the

5    purposes of the Copyright Act.  The Ninth Circuit's opinion makes clear that a

6    strong limitation on the Copyright Act in this case would further competition in the

7    fashion doll market and the purposes of the Copyright Act to disseminate more

8    ideas and creative works.

9        Mattel asserts that it could (and seemingly implies that it would) have

10   marketed Bratz as well.  Opp. at 18.  Of course there is no evidence at all to support

11   the notion that Mattel would have done so in 2001.  Moreover, as the Court knows,

12   Mattel vigorously opposed all discovery into the proposition that it would have

13   marketed Bratz in 2010.  Mattel's introduction in 2010 of Monster High, a new line

14   of fashion dolls targeted to the same set of older girls, completely belies the

15   assertion that it would have marketed Bratz at the same time.  Monster High was a

16   multi-year project with a huge launch accompanied by plans for entertainment

17   properties to go with it.  Mattel made a titular example of its creativity at trial using

18   Monster High.  Mattel's unsupported assertion that it too would have marketed

19   Bratz cannot be credited; but in all events, it is no basis for a finding that MGA's

20   successful defense and exploitation of Bratz did not further the purposes of the

21   Copyright Act.  On that point, the Ninth Circuit has pretty much already spoken.

22   ***Degree of Success.***  Mattel does not contest, nor could it, that MGA had a

23   high degree of success, or that the high degree of success MGA enjoyed is a

24   significant factor in the fee analysis.  MGA is entitled to a complete dismissal with

25   prejudice of the copyright claim and all related claims brought against it by Mattel.

26   (presumption in favor of prevailing defendant is "very strong"); *Riviera Distrib.,*

27   *Inc. v. Jones*, 517 F.3d 926, 928-929 (7th Cir. 2008); *Woodhave Homes & Realty,*

28   *Inc.  v. Hotz*, 396 F.3d 822, 824 (7th Cir. 2005); *Assessment Techs. of WI, LLC v.*
     *WIREdata, Inc.*, 361 F.3d 434, 436-37 (7th Cir. 2004).

No greater degree of success could have been achieved.  Indeed, the degree of success is the "most important factor" in determining the *amount* of fees.  *Hensley v. Eckerhart*, 461 U.S. 424, 435-436 (1983); *Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005).

Mattel tries to argue that the verdict on the intentional interference claim is a sufficient finding of "fault" to militate against a fee award in the success calculation.  Opp. at 18.  Hardly.  As the Court repeatedly noted, this claim was so weak that it barely deserved consideration by the jury.  It was limited to a two-week period of overlapping employment by Carter Bryant, which resulted in a $10,000 damage award that is completely extinguished by the setoff of Carter Bryant's settlement, and a statute of limitations finding that Mattel admits in its opposition to MGA's motion for judgment means that the claim came far too late.  That verdict was a deliberate slap in the face by the jury to Mattel.  Mattel *lost* on that claim.

***Improper Motive.***  Mattel's argument that it had no improper motive in bringing and in its manner of conducting this litigation likewise cannot be credited.  Ron Brawer was a very credible witness who testified directly to Mattel's desired practice of using the burdens of litigation as a weapon based specifically on the statements of Matt Bousquette, who was then the President of the company.  Mattel's effort to portray Brawer as a lying "disgruntled former employee" bears no reality to the demeanor and character of the witness who appeared at trial.  Although Mattel cites to the testimony of others purporting to deny Mattel's goal to use the cost of litigation as a business weapon, it offers no testimony from the man who made the statements, Matt Bousquette, to refute them.  *See Consolidated Sawmill Machinery Int'l, Inc. v. Hi-Tech Eng'g, Inc.*, 879 F. Supp. 945, 947 (E.D. Ark. 1995) (unrefuted testimony that plaintiff's executive intended to use costs of litigation to drive competitor out of business warranted fee award).  There is no doubt that an effort to use the burdens of litigation to achieve the objective of hindering or eliminating a competitor is an improper purpose relevant to the

1  Copyright Act fee-shifting analysis.  *Maljack Prods., Inc. v. GoodTimes Home*

2  *Video Corp.*, 81 F.3d 881, 889 (9th Cir. 1996); *see* Mot. at 12-14.

3      Moreover, Brawer's testimony that the burden of litigation was to be used as

4  an ancillary business strategy is strongly supported by all of the available

5  circumstantial evidence.  Mattel and Quinn Emanuel have deliberately cultivated a

6  reputation as aggressive litigators who will destroy competitors as "Barbie's

7  Bodyguards."  The evidence adduced at trial and otherwise is that Mattel initiated

8  this litigation after its other efforts to counter MGA had failed, and that Mattel then

9  waged protracted and costly litigation against MGA as a means of destroying it as a

10  competitor.

11      In 2002, Girls Division President Adrienne Fontanella adopted a "Bratz

12  Defense Strategy" and tried to shut down Bratz manufacturing by a demand to

13  leverage vendor Early Light.  In 2002 and 2003, MGA received numerous

14  complaints for its prospective licensees that Mattel was threatening them, and CEO

15  Eckert admitted that Mattel had a preference for exclusivity and that it had

16  threatened its licensees with termination—a practice that was confirmed in his

17  infamous "kill the deal or let it slide" email many years later.  From The Bratz Brief

18  in October 2003 through its proclamation of a "House on Fire" on April 13, 2005—

19  just two weeks before it filed its lawsuit against Carter Bryant—Mattel repeatedly

20  analyzed the Bratz situation, and desperately tried and failed to stop MGA's

21  success.  Mattel viewed Bratz as an enormous threat to its Barbie brand—a brand

22  whose excess profitability during the time when Mattel was a legal monopolist (to

23  use the words of its own damages expert, Michael Wagner) had fueled a great

24  portion of the company's financial success.

25      The circumstantial evidence that this litigation was motivated by the desire to

26  eliminate or hinder a competitor is buttressed by Mattel's 2004 corporate goals,

27  adopted shortly prior to initiation of this litigation, citing "aggressive IP

28  enforcement" as a business objective.  TX 8980 (unredacted version).  It is also

1  buttressed by the manner in which Mattel conducted the litigation—which has

2  characterized by some as the "Bataan death march" of litigation.  Mattel's assertion

3  that MGA was evenly matched in resources, "[t]his was a hard fought action

4  between two well-financed corporations with significant resources and

5  sophisticated counsel" (Opp. at 17:13-14), is patently ridiculous.  Mattel did

6  everything it could to kill MGA, a much smaller competitor with far fewer

7  resources, with this litigation.

8        Mattel waged war with an enormous volume of written discovery.  At the

9  first trial, Mattel demanded more than $1.4 billion in damages.  Mattel sought

10  injunctive relief that would prevent MGA from continuing to utilize its Bratz brand

11  at all, even in a noninfringing fashion—relief that was later overturned as wholly

12  improper by the Ninth Circuit.  Mattel obtained a worldwide recall order that

13  violated the law.  *See Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088,

14  1095 (9th Cir. 1994) (en banc) (no extraterritorial jurisdiction under the Copyright

15  Act); *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873,

16  879 (9th Cir. 2009) (heightened standard for recall order); *CyberMedia, Inc. v.

17  Symantec Corp.*, 19 F.Supp.2d 1070, 1079 (N.D. Cal. 1998) (declining to order

18  extraterritorial recall).  In over-enforcing that order, Mattel took the position that

19  MGA had to "sweep the shelves" of Bratz product worldwide—another blatant

20  effort to put MGA out of business using the mechanisms of this litigation.  *See* Dkt.

21  #7071 at 20-23.

22        When MGA somehow managed to survive foreclosure by its largest creditor,

23  Wachovia Bank, with an eleventh hour rescue by Omni 808, Mattel attempted to

24  deter any further investment or loans to MGA by seeking a receivership and waging

25  war on MGA's lenders using its specious RICO claims.  Mattel investigated, sued,

26  deposed and harassed the IGWT Group—an entity set up to inject cash into MGA

27  and preserve the Bratz brand through the purchase and careful sale of closeout

28  inventory—only to later drop it as a party.  Mattel investigated, deposed and

1   harassed Omni 808, eventually suing it as well—a suit that was ultimately

2   dismissed.  In obtaining the receivership, Mattel claimed in court filings that the

3   Omni transaction was "secret," when in fact Omni's managing director Neil

4   Kadisha had called Bob Eckert directly to tell him about it at the time the

5   transaction happened.  8/28/09 Kadisha Depo. at 41:12-42:24; 12/18/09 Eckert

6   Depo. at 683:3-685:22.  Mattel's General Counsel Bob Normile and Litigation

7   Counsel Jill Thomas supervising this litigation were apprised of the phone call

8   informing Eckert of the Omni 808 loan, 12/18/09 Eckert Depo. at 686:22-687:19;

9   2/15/10 Normile Depo. at 245:19-246:24, but Mattel nonetheless filed papers

10  claiming that the transaction was secret and that the secrecy was evidence of the

11  purported impropriety of that loan.

12      All of Mattel's claims based on the Omni loan were dismissed, and then

13  Mattel re-filed the claims again in state court despite this Court's determination that

14  they were meritless.  And again they were dismissed.  It is obvious that Mattel

15  waged this litigation with a motive to destroy a competitor.

16      Mattel's assertion that the Court cannot adjudicate Mattel's improper motive

17  on a fee motion because of "Seventh Amendment concerns" is wrongheaded.  The

18  fee motion in this case has nothing to do with what evidence will be put before the

19  jury in the antitrust case.  As this Court has done many times in the past—notably

20  in deciding various discovery and summary judgment issues and determining that

21  the Court's findings will not be put before the jury—the Court can decide the

22  motive question for attorneys' fees purposes in this case and leave the evidence for

23  the jury in the antitrust case to draw its own conclusions.  This Court's finding now

24  need have no substantive role in the antitrust case.

25      ***Compensation/Deterrence.***  Even when the antitrust case goes forward MGA

26  will never be fully compensated for the harm it has suffered as a result of this

27  litigation without a fee award in this action.  The expenditure of those fees was a

28  significant financial burden to MGA that nearly put it out of business and it

1   continues to struggle under the weight of its fee obligations; MGA deserves

2   compensation, especially given its high degree of success.  Moreover, Mattel

3   should be deterred from its aggressive, overweening litigation against

4   competitors—as the Southern District of New York noted, Mattel is a "repeat

5   player."  *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 236 F.R.D. 175, 177 (S.D.N.Y.

6   2006).  Mattel's other points advanced under the heading that "fee shifting does not

7   advance considerations of compensation and deterrence" (Opp. at 16-18) are

8   completely irrelevant to proper consideration of the factor and grossly misstate the

9   applicable law, as discussed above in Part A, *supra*.

10          ***Frivolousness/Objective Unreasonableness*.**  Many of the positions taken by

11   Mattel in this action were objectively unreasonable as a factual or legal matter.

12   MGA believes it will prove in the antitrust case that the entire action was

13   unreasonable and the investment undertaken by Mattel could only be justified by

14   the objective of eliminating the most significant competitor it ever had to its Barbie

15   brand.  But even assuming, *arguendo*, for purposes of the present motion that the

16   copyright claim was not objectively unreasonable either factually or legally, it

17   simply does not matter.  The Court has the discretion to award fees so long as MGA

18   is a prevailing party whose successful defense furthered the purposes of the Act.

19   *See Fantasy*, 94 F.3d at 556-60 (upholding award of attorney's fees based on the

20   prevailing party's success and the policy objectives of the Copyright Act, even

21   though the district court found that none of the culpability factors—frivolousness,

22   motivation, or objective unreasonableness—weighed against the losing party);

23   *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 883-84 (9th

24   Cir. 2005) (awarding fees to prevailing plaintiff in closely contested work-for-hire

25   ownership case); *Metcalf v. Bochco*, 200 Fed.Appx. 635, 640 (9th Cir. 2006)

26   (expressly recognizing discretion under *Fantasy* to award fees without any

27   culpability on the part of the losing party).  There is no doubt these factors are

28   met—and many more.

1       Even if Mattel were right about objective unreasonableness (which it is not),

2   MGA is still entitled to an award of fees.  All of the other factors tilt strongly in

3   MGA's favor.  The Court plainly has the discretion to award fees, and should do so.

4   **II.   NO ALLOCATION AMONG FEES INCURRED FOR DEFENSE OF
        MATTEL'S  CLAIMS IS NECESSARY AS THE CLAIMS ARE ALL
5        RELATED TO THE COPYRIGHT CLAIM.**

6       **A.   Mattel Has Failed To Show That The Included Claims Are
              Unrelated.**
7

8       When a litigant achieves complete success on fee-bearing and non-fee-

9   bearing claims, it is entitled to recover all fees for work related to the fee bearing

10  claims.  *See Thomas*, 410 F.3d at 649; *The Traditional Cat Ass'n, Inc. v. Gilbreath*,

11  340 F.3d 829, 833-34 (9th Cir. 2003).  The first step in assessing the amount of fees

12  is to determine relatedness.  *Traditional Cat*, 340 F.3d at 833-34.  Related claims

13  are those that involve a common core of facts or are based on related legal theories.

14  *Thomas*, 410 F.3d at 649; *Twentieth Century Fox*, 429 F.3d at 884.  Claims are

15  unrelated only when they allege "distinctly different claims for relief that are based

16  on different facts and legal theories from the other causes of action in the overall

17  litigation."  *Entm't Research Group, Inc.*, at 1230.

18      As MGA discussed in its opening brief, all of Mattel's affirmative claims

19  were related to the copyright claim.  Mot. at 1-3.  The state law tort claims

20  (intentional interference with contract, aiding and abetting breach of duty of loyalty

21  and breach of fiduciary duty, conversion) were all part of the common core of facts

22  of who did what and when; further, those claims formed the legal basis of Mattel's

23  claim to ownership of copyright—the first prong of the copyright claim.  Indeed,

24  Mattel concedes the Bratz trade secret claim involves a common core of facts.

25  Opp. at 24.  The question of damages on the copyright claim presented the same

26  issues regarding the fashion doll market and the parties' respective roles in it as did

27  all of the other claims.

28      Mattel's effort to refute the relatedness of all of its claims under the

1  governing legal test is no better than an attempt to revise history and excise the

2  record of its own positions taken in this litigation.  True, MGA took the position

3  that these claims were not a proper basis for copyright ownership and were

4  preempted.  But MGA's assertions demonstrate precisely why the claims were

5  related *as Mattel litigated them*.  Mattel now claims that only express contract and

6  work-made-for-hire were its ownership theories.  Opp. at 24-25.  This is revisionist

7  history and cannot be credited.

8      The initial bifurcation for trial in 2007 and the entire phase 1 trial were

9  structured around the proposition advanced by Mattel that a favorable result on the

10  state law tort claims would determine ownership of the copyrights for purposes of

11  the copyright claim.  In its ownership interrogatory response served on

12  September 10, 2010, Mattel expressly cited all of its numerous state law tort

13  theories as a basis for copyright ownership:  "Bryant owed statutory, contractual

14  and common law duties to Mattel . . . as a result of Bryant's breaches of those

15  duties, all rights to the Bratz works must be transferred to Mattel."  9/10/10 Mattel

16  Rog Resp. at 7:11-15.  Mattel further urged that

17
18      [b]ecause Bryant ceated, developed, pitched and marketed
        Bratz in violation of his statutory, common law and
        contractual duties and obligations, with the MGA Parties'
        aid and encouragement, Bryant and the MGA Parties are
19      prohibited from exploiting the Bratz works, and Mattel
        has exclusive rights in them, including pursuant to a
20      constructive trust over them for Mattel's benefit.

21  *Id.* at 8:15-20.

22      Only someone who knows nothing about this case or is deliberately ignoring

23  Mattel's previous positions could now assert that Mattel's state law tort claims were

24  factually and legally unrelated to the ownership prong of copyright.  Whichever is

25  the explanation, it is no excuse for this 180 degree about-face by Mattel.

26      Moreover, Mattel argues that the RICO claims were unrelated to the

27  copyright claim, but the RICO claims included as a predicate act the assertion of

28  *ongoing criminal copyright infringement*—an assertion that involved common facts

1    and legal theories to the ongoing prosecution of the copyright infringement claim.

2    In support of its RICO and copyright claims, Mattel asserted that MGA was

3    continuing to willfully infringe after the verdict in 2008 and during the time the

4    injunction was in effect.

5         Mattel asserted that the employee trade secret claims were also copyright

6    claims.  When MGA took the position on summary judgment that trade secret

7    misappropriation was not a RICO predicate act, Mattel responded that it didn't

8    matter because the same facts—employees downloading Mattel's business

9    documents—supported the copyright infringement predicate act.  Moreover, Mattel

10   consistently argued that the purported misappropriation of Mattel's business trade

11   secrets by MGA was for the purpose of exploiting the copyrights and continuing

12   the successful business of copyright infringement.  This common scheme or plan

13   was the basis for Mattel's RICO enterprise pattern of related acts—Mattel always

14   posited that the singular purpose of the purported trade secret thefts was to support

15   and expand the copyright infringement.  Mattel pled and litigated all of the claims

16   as interrelated according to MGA's purported common objective of unlawfully

17   exploiting the Mattel copyrights.  MGA was forced to defend on that basis.  Mattel

18   made all of its claims related factually and legally by design.  That was the core of

19   its strategy, and it cannot avoid that approach now after seven years of litigation.

20        Finally, contrary to Mattel's assertions, as MGA explained in its moving

21   papers, the fees exclusively related to its affirmative claims that were not related to

22   the defense of the copyright claims were not included in the fees requested.

23        Mattel has failed to demonstrate that apportionment is required because the

24   fees sought for defense of the Mattel claims are unrelated to the copyright claim.

**B.    Failure To Apportion Is Not A Basis For Denial Of Fees.**

26        For the foregoing reasons, it is apparent that no apportionment of the defense

27   fees is required because the claims were related and the defense of all of the claims

28   related to the defense of the copyright claim.  But even if the Court concludes that

some apportionment is required, Mattel's position to deny the motion as an answer to the lack of apportionment goes way too far.  Failure to apportion is not a basis for denial of fees; rather, the Court must make a determination as to what amount of fees are appropriate.  *Traditional Cat*, 340 F.3d at 834 ("[w]here a district court must apportion fees, 'the impossibility of making an exact apportionment does not relieve the district court of its duty to make some attempt to adjust the fee award in an effort to reflect an apportionment'") (quoting *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000)) (failure to apportion fees rather than denying them was an abuse of discretion mandating reversal).

### C.    Mattel's Redaction Argument Is Meritless And Moot.

Mattel was provided with invoices specifying the identity of all timekeepers, dates and hours of their billings, and rates.  These redacted invoices identified the numbers of hours billed and when they were billed over the entire course of the litigation, the fees billed each month, each year, in total, as well as all the costs. This was a significant amount of information—especially for a firm like Quinn Emanuel well-versed in the history of this litigation with knowledge of exactly what events occurred at each and every step of the way.

It is well-recognized that time entry descriptions contain work product and attorney-client privileged information, and that redaction of such information is appropriate.  *See In re Grand Jury Witness*, 695 F.2d 359, 362 (9th Cir. 1982); *Riker v. Distillery*, 2009 WL 2486196, at *1 (E.D. Cal. Aug. 12, 2009); *Real v. Continental Group, Inc.*, 116 F.R.D. 211, 213-14 (N.D. Cal. 1986).  The billing descriptions here contain all sorts of information about strategy considerations, legal research, topics of client communications and other information that plainly qualifies as privileged and work product.  Mattel is not entitled to these descriptions, just as MGA has not requested to see the descriptions on Quinn Emanuel's invoices.

The MGA Parties had two weeks to collect and prepare the billing invoices

for seven years of litigation and it was an enormous undertaking; nuanced judgments regarding privilege and work product simply were not possible in that time frame.  In all events, the Court has cured any concerns by ordering the *in camera* submission of all of the invoices to the Discovery Master.

## III.  THE FEES MGA SEEKS WERE NECESSARILY AND REASONABLY INCURRED.

### A.    Mattel Does Not Contest Rate Reasonableness.

MGA submitted an expert declaration of Peter Zeughauser explaining the propriety of hourly rates charged by all firms and lawyers whose fees are sought in the motion.  The declaration was supported by Quinn Emanuel's own rates for this litigation.  Mattel has not contested rate reasonableness in its opposition, so the rate component of the lodestar has been established as presumptively reasonable.

### B.    Mattel's Own Fee Expenditures Will Undoubtedly Support The Reasonableness Of The Fees Spent On Behalf Of MGA.

As noted above, MGA's high degree of success affords it the greatest degree of latitude in terms of an assessment of the reasonableness of the amount of fees to be awarded.  Consideration of other reasonableness factors related to time spent also favor an award of the complete sum sought by MGA.  *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).  The time and labor required were enormous—the docket runs to more than 10,000 entries.  The novelty and difficulty of questions presented was very high.  The degree of skill and expertise required was very high.  The case was a full time job for the attorneys involved.  *See* Supp. Hurst Decl.  ¶ 2.  The amount involved was much greater than the fees now requested—Mattel's damages demands exceeded $1B dollars and the Bratz brand was at stake.  In a case with similar stakes represented by big firms that lasted for a shorter period of time and had only one trial, *Oracle v. SAP*, Oracle obtained a $120M fee award as the prevailing plaintiff.  Supp. Hurst Decl. Ex. 10 at 5.  (Judgment ¶2 awarding $120M as reasonable attorneys' fees) (*Oracle v. SAP*, No.

1   4:07-cv-01658-PJH (N.D. Cal.), Dkt. # 1036).  All of these factors justify the

2   reasonableness of the fees sought here.

3        Mattel makes three basic attacks on the reasonableness of time spent.  Two of

4   Mattel's three challenges are based on MGA's redaction of billing records and

5   failure to apportion.  Opp. at 21-18.  For the reasons discussed above, these

6   arguments fail.

7        Mattel's third argument regarding reasonableness is that certain time spent by

8   MGA's attorneys is excessive irrespective of apportionment.  Opp. at 26-31.

9   Certainly this is the pot calling the kettle black.  Published news accounts place

10   Mattel's expenditure of fees on this litigation at $400M—well more than twice the

11   amount MGA has requested on this motion.  As set forth in the Motion and in

12   MGA's Ex Parte Application, MGA is entitled to discovery of Mattel's fee

13   expenditures to support its claim of reasonableness.

14        For example, the Supreme Court noted in *Pennsylvania v. Delaware Valley*

15   *Citizen's Council for Clean Air*, 483 U.S. 711, 716 (1987), that the "difficult or

16   obstreperous" nature of an opponent is a component of the initial lodestar.  "[T]he

17   vehemence or tenacity of the opposition justifies an increase in the amount of time

18   an attorney must necessarily—and therefore reasonably—spend in countering the

19   opposition and winning the suit.  Similarly, the skill of an opposing counsel may

20   justify the expenditure of a greater amount of time in litigation than would

21   ordinarily be reasonable."  M. DERFNER & A. WOLF, COURT-AWARDED ATTORNEY

22   FEES ¶16.02[8][a] at 16-46 (2010 ed.).

23        Accordingly, the Ninth Circuit has repeatedly considered the fees spent by an

24   opponent in considering the reasonableness of a particular amount.  *See Cairns v.*

25   *Franklin Mint Co.*, 292 F.3d 1139, 1159 (9th Cir. 2002) ("Equally important is the

26   undisputed fact that the [plaintiff] has expended £1.7 million British pounds

27   (approximately $2.6 million) on this case, several hundred thousand dollars *more*

28   than the amount the District Court awarded to Franklin Mint"); *McGinnis v.*

- 15 -

1    *Kentucky Fried Chicken of California*, 51 F.3d 805, 809 (9th Cir. 1994) ("The

2    company's argument might have more weight if it had not found it necessary to

3    spend considerably more money losing that its adversary spent winning").  Other

4    courts have considered the amount spent by an opponent in reducing requested fee

5    awards.  *See Miller v. Mackey Int'l, Inc.*, 70 F.R.D. 533, 537 (S.D. Fla. 1976).  Still

6    other decisions have considered and rejected a lower amount spent by an opponent

7    as a basis for reduction of a fee request.  *See Ferland v. Conrad Credit Corp.*, 244

8    F.3d 1145, 1151 (9th Cir. 2001) (per curiam); *Shaw v. AAA Eng'g & Drafting, Inc.*,

9    213 F.3d 538, 542-43 (10th Cir. 2000).  What is clear from all of these cases is that

10    *the amount spent by the opponent is directly relevant to the lodestar inquiry.*

11         Accordingly, courts have routinely ordered discovery of the billing records of

12    an opponent in connection with the fee reasonableness inquiry.  In *Real v.*

13    *Continental Group, Inc.*, 116 F.R.D. at 213, the court granted the prevailing party's

14    request for the other party's billing records in connection with its fee request: "I

15    conclude that the hours expended by the defendant on matters pertaining to this

16    case, counsel's hourly rates, as well as total billings and costs, are at least

17    minimally relevant to the plaintiff's fees and costs petition."  The same conclusion

18    was reached in *Riker*, 2009 WL 2486196, *1: "This court finds that defendants'

19    billing records may be relevant to assist the court in determining the reasonableness

20    of plaintiff's request for attorneys fees."  The fees and costs incurred by Mattel are

21    plainly relevant and should be produced for MGA and the Court's consideration of

22    reasonableness in connection with this Motion.  Mattel's attacks on the time spent

23    by the firms representing MGA can only be fairly evaluated in light of the work of

24    the firm spent by MGA's opponent, Quinn Emanuel.

25         **C.**     **Mattel's Specific Attacks On The Necessity Of MGA's Defense
Efforts Are Unpersuasive.**

26

27         MGA responds here as best as it can to Mattel's attacks on the

28    reasonableness of spending time on certain tasks in the absence of information

1   regarding Mattel's expenditures.

2       **OMM**.  Mattel argues that because MGA is suing OMM for overbilling,

3   MGA should not recover fees based on OMM's billings.  Opp. at 26-27.  OMM is

4   suing MGA for recovery of their fees, and therefore MGA remains at risk for the

5   entire amount of fees billed by OMM if OMM prevails.

6       **Skadden.**  Mattel argues that MGA should not be awarded fees for

7   Skadden's duplication of efforts by OMM.  Opp. at 27.  The amount of total

8   expenditures by Skadden that comprise duplication is a drop in the bucket

9   compared to the overall amount incurred by Skadden on behalf of MGA.  When

10  Skadden entered the case it was a short time until trial, there were dozens of

11  discovery motions pending, dozens of depositions to be taken, thousands of

12  documents to be produced and experts to be retained and prepared for deposition

13  and trial.  Any time spent duplicating efforts with OMM was a very small portion

14  of the overall fees billed by Skadden—that firm had no choice but to jump in and

15  move forward with substantive work immediately upon its entry into the case.

16      **Other Firms.**  Mattel argues that the fees must be excessive because MGA is

17  seeking reimbursement for fees paid to thirteen different firms.  Opp. at 28.  This is

18  both false and misleading.  All told, MGA is seeking reimbursement for eleven

19  legal service providers.  Schultz Decl. ¶¶ 5-15.  Over 96% of the fees requested are

20  for the work of Orrick, O'Melveny and Skadden, the three major law firms that

21  represented MGA during different stages of these consolidated actions.  Of the

22  other eight entities, Keller Rackauckas LLP was brought in as co-lead trial counsel

23  for the 2011 trial, and Trial Asset provided paralegal assistance to Keller

24  Rackauckas.  Three of the remaining legal service providers—American Discovery,

25  Depo Sums and Special Counsel—employ contract attorneys that MGA and its

26  three primary law firms used in discovery for to *reduce* the costs by having worked

27  performed at lower billing rates than charged by the three big firms.  The final three

28  entities, Sidley Austin, Howard Rice and Pachulski Stang, were brought in for

1  limited purposes related to the copyright claims including the appeal of the

2  copyright injunction and handling receivership issues, and account for only just

3  over $1.2 million of the fees requested.  Other matters handled by these three firms

4  were not included in MGA's fee request.  Mattel's cursory accusation that 13 firms

5  shows unreasonableness is both inaccurate and wrong.  The fees incurred by these

6  different entities were reasonably and necessarily incurred to defend against the

7  resources that Mattel and Quinn Emanuel flung at these proceedings—as Quinn

8  Emanuel's invoices undoubtedly will show.

9      **Other Examples.**  Finally, Mattel picks and chooses a few examples of work

10  it decries as wasteful and unnecessary.  These examples completely miss the mark.

11      Mattel complains that MGA filed a premature summary judgment motion.

12  Opp. at 28.  What Mattel ignores is that all of the work compiling evidence, legal

13  research, and writing for this motion was later used by MGA in filing the motions

14  that were eventually heard by the Court.  Supplement Hurst Declaration ¶ 3.

15  Accordingly, the only unnecessary duplication related to the filing of two motions

16  was the actual time spent filing the first motion—a few hours of paralegal and

17  secretary time on that day.

18      Mattel next complains that MGA sought to avoid disqualification of the

19  Glaser Weil firm and then appealed and sought mandamus of the decision

20  disqualifying that firm.  Opp. at 28-29.  What Mattel fails to appreciate is that *MGA*

21  *did not include the fees for these activities in the motion.*  The opposition to the

22  disqualification was handled by the Glaser Weil and Cooper White & Cooper firms,

23  and the appeal was handled by Max Blecher's law firm.  Orrick did not work on the

24  disqualification motion.  None of the time of the other firms was included in the

25  copyright fee motion.

26      Mattel complains that MGA should not have hired a former Mattel employee

27  as an expert.  Opp. at 29.  But the fees of that expert were not included in the costs

28  requested.

- 18 -

Mattel next argues that the attorney time spent working with the Court-appointed monitor was not related to the copyright claim. Opp. at 29. This is absurd. The entire basis for the monitor's supervision was the worldwide copyright injunction and recall order, and Mattel's specious claim for a receivership based on the notion that the copyright verdict was being undermined by a transaction *which injected money into the company*. Mattel's continuing complaints about this transaction simply underscore its improper motive in this litigation. Any judgment creditor who really wanted to be paid, rather than desiring to extinguish a competitor, would have been delighted that MGA was able to avoid foreclosure and attract working capital to keep the business afloat. Instead, Mattel lied to the Court about the supposed "secrecy" of this purported financial "gamesmanship," and then after its claims on the Omni transaction were dismissed, filed the frivolous claims again in state court. The time spent by MGA's attorneys working with the monitor to help the company avoid Armageddon on the basis of Mattel's worldwide copyright recall order was time directly related to the successful defense of the copyright claim.

Mattel argues that the time spent working on a terminating sanctions motion was wasted. Opp. at 29. In denying the Motion at that time, the Court was unaware of the venal depths of Mattel's actions to hide evidence and its flagrant disregard of the Court's discovery orders. MGA was on the right track, and although the motion was denied, the Court-ordered affidavit of Michael Moore that resulted was a significant piece of evidence relevant to many later proceedings.

Finally, Mattel argues that MGA should not have filed its JMOL on Mattel's UCL and intentional interference claims. Opp. at 29. MGA was required by order of this Court to file the brief on that deadline. Dkt. #10521. In order to preserve its legal arguments, MGA had to make them at that time. *See* Fed. R. Civ. P. 50(b). Mattel had not dismissed either of the claims, nor had it offered MGA a stipulation of dismissal with prejudice of those claims. Mattel has never voluntarily dismissed

1  a claim with prejudice in this case, and to the contrary has continually re-filed

2  claims even after they were dismissed.  The argument that MGA's motion was

3  unnecessary because MGA was somehow supposed to divine Mattel's intentions to

4  drop its claims is absurd.

5  **IV.  THE COURT SHOULD ALSO AWARD "FULL COSTS" AS**
   **PROVIDED BY SECTION 505.**

6

7      In opposition to MGA's request for full costs, Mattel simply cites back to its

8  early argument that "Mattel's litigation position was objectively reasonable, and it

9  did not act in bad faith."  Opp. at 31-32.  For all the reasons articulated previously,

10  Mattel misstates the standard, and fees and costs should be awarded.

11      "Full costs" includes exactly that: "*full* costs."  Mattel does not dispute that

12  "full costs" covers all of the types of expenses sought by MGA.  *Twentieth Century*

13  *Fox Film Corporation*, 429 F.3d at 885 ("district courts may award otherwise non-

14  taxable costs, including those that lie outside the scope of § 1920, under § 505");

15  *Kourtis v. Cameron*, 358 Fed. Appx. 863, 867(9th Cir. 2009) (expert compensation

16  may be included under § 505); *Gilbert v. New Line Productions, Inc.*, 2010 WL

17  5790688, at *6 (C.D. Cal., Dec. 6, 2010) (costs for legal research and mailing may

18  be included under § 505); *Express LLC v. Forever 21*, Case 2:09-CV-04514, Dkt. #

19  4783 (C.D. Cal., Nov. 15, 2010) ("costs and fees for paralegals, out-of-pocket

20  expenses, including travel, telephone, mailing, copying and computerized legal

21  research expenses" may be included under § 505); *Ambriz v. Arrow Fin. Serv.*,

22  LLC, 2008 WL 2095617, at *7 (C.D. Cal., May 15, 2008).  *See also Davis v. City*

23  *and County of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992) ("out-of-pocket

24  expenses including the travel, courier and copying costs" may be included in

25  attorneys' fees awards).

26      Instead, Mattel advances only two arguments regarding (1) apportionment,

27  and (2) detailed work descriptions to assess reasonableness.   Addressing the

28  second point first, MGA attached the invoices supporting its request for costs to the

- 20 -

1  Declaration of Stephen Schultz, with only minimal redactions for privilege and

2  work product—these invoices provide ample descriptions.  To the extent Mattel

3  challenges reasonableness, it should be required to provide invoices showing the

4  costs that it has incurred in connection with these consolidated actions that it

5  commenced more than seven years ago, as requested in MGA's *Ex Parte*

6  Application (Dkt. # 10574).  *Real*, 116 F.R.D. at 213 ("I conclude that the hours

7  expended by the defendant on matters pertaining to this case, counsel's hourly

8  rates, as well as total billings and costs, are at least minimally relevant to the

9  plaintiff's fees and costs petition." ); *Riker*, 2009 WL 2486196, at *1  ("This court

10 finds that defendants' billing records may be relevant to assist the court in

11 determining the reasonableness of plaintiff's request for attorneys fees.").

12        With respect to Mattel's apportionment argument, as detailed previously,

13 apportionment is not required here.  When the claims upon which the prevailing

14 party prevailed involve a common core of facts or are based on related legal

15 theories, the Court need not apportion amongst the various claims in awarding fees.

16 Mot. at 14-15; *see Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003); *Sorenson v.*

17 *Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001); *Yankee Candle Co., Inc. v. Bridgewater*

18 *Candle Co, LLC*, 140 F. Supp. 2d 111, 122-23 (D. Mass. 2001), *aff'd*, 259 F.3d 25

19 (1st Cir. 2001).  This includes costs and fees incurred during appeal.  *Twentieth*

20 *Century Fox*, 429 F.3d at 884 (costs incurred during appeal are part of "winning the

21 war") (citation omitted).  MGA's successful Phase 1 appeal and its defense over the

22 last seven years to all of Mattel's inextricably intertwined claims were part of

23 "winning the war."  Mot. at 8-14.

24        Accordingly, all of the examples of costs detailed in the Schultz Declaration

25 cited by Mattel (Opp. at 32) were part of "winning the war."  Mattel's effort to

26 cloud this fact fails.  For example, it is simply not true that Peter Menell was the

27 only expert MGA retained in connection with its copyright defense or claims

28 inextricably linked thereto.  As detailed in the Schultz Declaration and invoices

- 21 -

attached thereto, Meyer from Navigant Consulting and Malackowski from Ocean Tomo were MGA's damages experts in Phase 1 and Phase 2 respectively, and were necessary to defend against Mattel's damages claims.  Likewise, Gruca from Brandware and Joachimsthaler from Vivaldi Partners provided expertise on the value of the different components of the Bratz brand in defense of Mattel's copyright damages claim and in rebuttal to Mattel expert Dhar.  Bergstein, Tonner and Vilppu were experts on common features of art and the doll industry who opined about whether elements of Mattel's claimed copyrights are protectable or not and rebutted Mattel experts Loetz, Mirzeoff and McComb.  Lyter from Federal Forensic Associates and Kullman from Speckin Forensic Labs were rebuttal experts to Mattel experts Cunningham and Aginsky, who offered forensic opinions related to the creation date of Bratz and whether or not Mattel owns Bratz.  Duffy from Management Practices Group was a contract effort retained by MGA in defense of Mattel's claim that it owned Bratz through its contract with Carter Bryant.  Stroz Friedberg, LLC was a computer forensic expert of MGA that MGA retained in defense of Mattel's claims of spoliation and in order to satisfy Mattel's discovery requests.  Trial Partners Inc. and Varinsky Associates were jury consultants retained by MGA.  Hemming Morse and Shlonsky were certified public accountants that MGA retained.  In total, MGA seeks to recover for work of only fifteen experts, which is a bargain considering that in Phase 2 alone, Mattel served no less than *twenty* opening expert reports (Dkt. # 9038), while MGA served only four.

For the foregoing reasons, MGA is entitled to the "full costs" requested.

## V.  MATTEL'S PURPORTED FEE SETOFF UNDER THE LANHAM ACT IS IMPROPER AND MERITLESS.

Mattel asserts that, to the extent this Court awards attorney's fees to MGA, Mattel is entitled to "set-off the attorney's fees that Mattel incurred in its successful defense of MGA's Lanham Act claims, which were groundless."  *See* Opp. at 30-31.  This request is both procedurally improper and substantively meritless.

1    First, the request is procedurally improper because Mattel never made a

2    timely motion for fees with supporting evidence.  May 5, 2011 was the Court-

3    mandated deadline for the recovery of attorneys' fees.  Dkt. No. 10521.  Mattel

4    made no motion for fees by that deadline.  Mattel therefore waived its opportunity

5    to collect fees and that waiver applies to a claim of fee setoff as well.  *See Fantasy*

6    *Inc.  v. Fogerty*, 1995 WL 261504, *9 (N.D. Cal. 1995) (denying plaintiff's request

7    for set-off; plaintiff waived its opportunity collect fees when it did not move for

8    fees after summary judgment was granted in its favor).  Moreover, Mattel did not

9    even substantiate its fee setoff request with the filing of its Opposition, as it offered

10   no evidence of the fees incurred in connection with the Lanham Act claims.  Mattel

11   has failed in every respect to substantiate a setoff defense.

12   Mattel also did not establish in its Opposition any entitlement to attorneys'

13   fees under the Lanham Act.  The standard for an award of fees under the Lanham

14   Act is exceptional circumstances, which Mattel has made no attempt to satisfy.

15   Mattel does not explain how or why there are exceptional circumstances here.

16   Mattel relies exclusively on MGA's voluntarily dismissal of portions of its trade

17   dress claim (MyScene, AlienRacers, Mommy's Little Patient), and the fact that

18   other aspects of that claim  (trapezoid packaging and Forever Best Friends

19   packaging trade dress) were dismissed at summary judgment.  Opp. at 31.

20   This does not give rise to exceptional circumstances required to support a

21   Lanham Act fee award.  *See Echostar Satellite Corp. v. NDS Group PLC*, 2008 WL

22   5116513, *8 (C.D. Cal. 2008) (Carter, J.) (reversed on other grounds) (addressing

23   Lanham Act claims, "the mere dismissal of certain claims on summary judgment is

24   not enough to transform such claims into 'groundless' claims..."); *see also Brown*

25   *v. Electronic Arts, Inc.*, 722 F.Supp.2d 1148, 1152 (C.D. Cal. 2010) (Gee, J.) ("As a

26   preliminary matter, the sheer fact that a motion to dismiss is granted does not

27   suffice to show that the claim was groundless or was not a colorable claim.  *Gillete*

28   *v. Delmore*, 886 F.2d 1194, 1199-1200, (9th Cir. 1989) (under Rule 11's similar

standard, attorneys' fees cannot be awarded simply because a claim was voluntarily dismissed; there must be a determination that pleading or motion was frivolous, legally unreasonable, or without factual foundation).

A decision to abandon a claim may be based on tactical or strategic reasons and have nothing to do with a lack of evidence. *See, e.g.*, *New York Stock Exchange, Inc. v. Ghary*, 2003 WL 68038, *2 (S.D.N.Y. 2003) ("The fact that plaintiff decided to move for voluntary dismissal before trial does not change the court's determination, nor should it … the court is simply unconvinced that plaintiff's moving for voluntary dismissal was anything but a legitimate tactical decision."). Indeed, here, MGA's decision to abandon its MyScene, AlienRacerS and Mommy's Little Patient trade dress claims was tactical as it preferred to drop those claims in favor of a more robust defense of copyright infringement; the voluntary dismissal does nothing to reveal the claims to be groundless.

Mattel also did not provide a shred of evidence to suggest that MGA's trade dress case was groundless. "A claim is considered factually groundless where there is 'no reasonable basis to believe' in the factual allegations underlying the claim and is considered legally groundless where there is 'no legal basis' for the claim itself, which instead rests on 'absurd' or 'just short of frivolous' contentions of law." *Brown*, 722 F.Supp.2d at 1152 (citation omitted).

Mattel cites no evidence to show, much less prove, that MGA did not have a legal or reasonable basis to bring its claims. With respect to MGA's Bratz and 4Ever Best Friends packaging, as argued by Mattel, Mattel forgets, or ignores, that MGA owned valid, registered, protectable trademarks and design patents for its trapezoidal packaging, heart-shaped box, and the name 4-EVER BEST FRIENDS. *See* Dkt. No. 9015 Exs 8, 10, 11, 12, 13. The Supreme Court has held that a shape may be a protectable trade dress. *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 161, 174 (1995) (when interpreting 15 U.S.C. §1127, the accompanying Senate Report "intentionally retains … the words 'symbol or device' so as not to

preclude the registration of colors, *shapes*, sounds or configurations where they function as trademarks.") (citation omitted) (emphasis added).  In registering the marks, the USPTO expressly found that the marks were non-functional, thereby giving MGA a legal and perfectly reasonable basis to bring suit against Mattel for infringement and dilution.  The fact that this Court later disagreed with the USPTO does not make MGA's claims groundless.

Finally, MGA's trade dress claim was a serial copying claim, and the gravamen of that claim was Mattel's repeated copying of MGA's products.  That very same complaint was ultimately redressed in MGA's trade secret misappropriation claim.  When MGA was finally able to unravel Mattel's web of secrecy to establish its longstanding practice of corporate espionage, MGA finally was able to learn *how* Mattel was able to continually knock off various aspects of its products and so quickly bring them to market.  In other words, MGA *prevailed* on the core factual proposition that underlay both the trade dress and trade secret misappropriation claim.  The dismissal of MGA's trade dress claim presents no "exceptional circumstance," even assuming Mattel had properly preserved a fee set-off claim, which it did not.

## CONCLUSION

For all of the foregoing reasons, MGA's motion for attorneys' fees and full costs under Section 505 should be granted, and MGA should be awarded $162,088,590 as detailed in the declarations of Stephen Schultz.

Dated:       May 19, 2011              ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____*/s/ Annette L. Hurst*_____
ANNETTE L. HURST
Attorneys for MGA PARTIES