1    QUINN EMANUEL URQUHART & SULLIVAN, LLP
       John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
       William C. Price (Bar No. 108542)
3      (williamprice@quinnemanuel.com)
       Michael T. Zeller (Bar No. 196417)
4      (michaelzeller@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
5    Los Angeles, California 90017-2543
     Telephone: (213) 443-3000
6    Facsimile:  (213) 443-3100

7    Attorneys for Mattel, Inc. and Mattel de
     Mexico, S.A. de C.V.

8

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                    SOUTHERN DIVISION

12   MATTEL, INC., a Delaware          CASE NO. CV 04-9049 DOC (RNBx)
     corporation, et al.,
13                                     Consolidated with
                                       Case No. CV 04-09059
14              Plaintiff,             Case No. CV 05-02727

15        vs.                          Hon. David O. Carter

16                                     **MATTEL, INC.'S OBJECTIONS TO
     MGA ENTERTAINMENT, INC., a        THE DISCOVERY MASTER
17   California corporation, et al.,   REPORT AND
                                       RECOMMENDATION RE
18                                     APPLICATION FOR ATTORNEYS'
                Defendant.             FEES BY (1) MR. MACHADO AND
19                                     (2) MGA**

20   AND CONSOLIDATED ACTIONS          Hearing Date:      TBD
                                       Time:              TBD
21                                     Place:             TBD

22       **Public Redacted Version**
                                       Discovery Cutoff:      October 4, 2010
23                                     Pre-trial Conference:  January 4, 2010
                                       Trial:                 January 11, 2011
24

25

26

27

28

1       Mattel, Inc. ("Mattel") respectfully submits the following objections to the

2  June 20, 2011 Discovery Master Report and Recommendation ("Report") regarding

3  Application for Attorneys' Fees by (1) Mr. Machado and (2) MGA, incorporating its

4  prior briefing and arguments on each of these issues.[1]

5      1.    The Court's review of the Discovery Master's Report and

6  Recommendation is *de novo*. Fed. R. Civ. P. 53(f)(4) requires *de novo* review of the

7  Discovery Master's proposed legal conclusions. Rule 53(f)(3) requires *de novo*

---

[1] A number of these sealed briefs do not have assigned docket numbers other than in redacted form. In order to assure a complete record on appeal, Mattel submits that docket numbers should be assigned to Mattel's sealed briefs (Mattel has filed applications to file under seal and proposed orders for all of them). In the interim, Mattel cites herein the sealed brief by full name and the docket number for the redacted brief. See Mattel, Inc.'s Opposition to MGA Entertainment, Inc.'s Motion for Attorney's Fees and "Full Costs" under Section 505 of the Copyright Act (5/12/11) (Sealed: Dkt. N/A) (Redacted: Dkt. 10568); Mattel, Inc.'s Opposition to MGA's Motion for Exemplary Damages and Fees Pursuant California's Uniform Trade Secret Act, Cal. Civ. Code §§ 3426.3, 3426.4 (5/12/11) (Sealed: N/A) (Redacted: Dkt. 10566); Mattel, Inc.'s Opposition to Machado's Motion for an Award of Attorney's Fees Under Cal. Civ. Code § 3426.4 (5/12/11) (Dkt. 10561); Mattel, Inc.'s Opposition to MGA Entertainment, Inc.'s *Ex Parte* Application to Compel Production of Evidence in Connection with Hearing on Motions for Attorneys' Fees (5/19/11) (Sealed: Dkt. N/A) (Redacted: Dkt. 10584); Mattel, Inc.'s Notice of Motion and Motion to Compel MGA Entertainment, Inc. to Produce Attorney Billing Records Submitted to the Discovery Master Pursuant to the Court's May 9, 2011 Order (5/19/11) (Sealed: Dkt. N/A) (Redacted: Dkt. 10583); Mattel, Inc.'s Surreply in Opposition to MGA Entertainment, Inc.'s *Ex Parte* Application to Compel Production of Evidence in Connection with Hearing on Motions door Attorneys' Fees (5/19/11) (Dkt. 10591); Mattel, Inc.'s Reply in Support of Motion to Compel MGA Entertainment, Inc. and Mr. Machado to Produce Attorney Billing Records Submitted to the Discovery Master Pursuant to the Court's May 9, 2011 Order (5/22/11) (Dkt. 10597); Declaration of Susan R. Estrich in Support of Mattel Inc.'s Opposition To MGA Entertainment, Inc.'s Motion for Attorneys' Fees and "Full Costs" Under Section 505 of the Copyright Act and the California Uniform Trade Secrets Act (6/1/11) (Dkt. 10615); Mattel, Inc.'s Objection to MGA Entertainment Inc.'s Request to Submit the Declaration of Stephen Schultz In Camera and Notice of Motion and Motion to Compel Production of the Schultz Declaration (6/9/11) (Dkt. 10634); Mattel, Inc.'s Notice of Intervening Authority Concerning MGA Entertainment, Inc.'s Motions for Attorneys' Fees and Costs Under the Copyright Act and CUTSA: Fox V. Vice, -- S. Ct. ---, 2011 WL 2175211 (U.S. June 6, 2011) (6/10/11) (Dkt. 10635).

1  review of the Discovery Master's proposed factual findings, unless the parties have
2  agreed otherwise.[2]  Mattel never consented to the Discovery Master making findings
3  as to non-discovery matters or to anything less than *de novo* review by the Court for
4  post-trial motions.  Thus, under Rule 53, the Court must "g[i]ve each of [Mattel's]
5  claimed discrepancies a fresh look" and "independently consider[] all of the
6  evidence that the special master considered." Sukumar v. Direct Focus, Inc., 349 F.
7  App'x 163, 165 (9th Cir. Oct. 16, 2009).

8      2. *De novo* review is also required under the Stipulation for Appointment of a
9  Discovery Master, which provides that the Discovery Master's rulings "shall be
10 treated as rulings made by a Magistrate Judge." Dkt. 107 at ¶ 6.  Under Rule 54,
11 referral of a motion for attorney's fees to a Magistrate is treated "under Rule 72(b)
12 as if it were a dispositive pretrial matter."  A Magistrate's proposed findings on
13 "dispositive pretrial matters" must be reviewed *de novo*, both as to factual and legal
14 findings.[3]  All proposed findings on MGA's fee applications are thus subject to *de
15 novo* review.[4]

16     3. The Discovery Master was not authorized to make the findings of facts and
17 conclusions of law included in the Report; the Discovery Master was originally

---

19 [2] Sukumar v. Direct Focus, Inc., 349 F. App'x 163, 165 (9th Cir. Oct. 16, 2009);
20 Summers v. Howard Univ., 374 F.3d 1188, 1195 n.6 (D.C. Cir. 2004); Brown v.
21 Chinen, 2010 WL 1783571, at *3 (D. Haw. May 3, 2010) ("The district court must
   decide *de novo* all objections to findings of fact and/or conclusions of law made or
22 recommended by the special master.").
   [3] Fed. R. Civ. P. 72(b) ("The district judge must determine *de novo* any part of
23 the magistrate judge's disposition that has been properly objected to.").
   [4] Estate of Conners v. O'Connor, 6 F.3d 656, 658-59 (9th Cir. 1993) ("because
24 the plaintiffs sought a determination of their claim for attorney's fees, their motion
   was dispositive of a claim of a party" that required "the district court's later *de novo*
25 review"); Navarro v. Gen. Nutrition Corp., 2005 WL 2333803, at *5 (N.D. Cal.
26 Sept. 22, 2005) ("[T]he district court cannot simply 'concur' in the magistrate's
   findings, . . . it must conduct its own review in order to adopt the recommendations .
27 . . [and] provide a detailed account of how it arrives at appropriate figures for the
   number of hours reasonably expended") (internal quotations and citations omitted).
28

00505.07975/4218905.1

MATTEL'S OBJECTIONS TO DM REPORT AND RECOMMENDATION RE ATTORNEYS' FEES

appointed to resolve discovery disputes, not to make substantive findings unrelated to such matters,[5] and no written order was stipulated to or entered to expand the duties of the Discovery Master as required.[6]  Mattel did not consent to the Discovery Master's evaluation of MGA's fee applications.  The Discovery Master did not attend the entire trial or all the hearings on the post-trial motions.  Thus, the Discovery Master was deprived of access to live evidence and argument relevant to MGA's fee applications.

4.   As stated in Mattel's opposition to Machado's motion for fees (Dkt. 10561), Machado is not entitled to any fees under CUTSA because there is no evidence whatsoever that Mattel's claims against Machado were objectively specious and pursued in bad faith.  FLIR Sys., Inc. v. Panfish, 174 Cal. App. 4th 1270, 1275 (2009).  Machado is not entitled to attorneys' fees under Cal. Civ. Code § 3426.4 because it is undisputed that he prevailed on "technical choice-of-law grounds," a fact-finder never "evaluated the merits" of Mattel's trade secret claim against Machado, and Machado "admitted facts under oath that established several elements of Mattel's trade secret claim."  Report at 1-2.

5.   The Discovery Master recommended that the Court award MGA attorneys' fees under the Copyright Act without considering the factors identified in Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n. 19 (1994).  Report at 8.  Mattel's opposition establishes that each Fogerty factor weighs against an award of fees to MGA.  Magnuson v. Video Yesteryear, 85 F.3d 1424, 1432 (9th Cir. 1996).  The Discovery Master did not find that Mattel's copyright claim was frivolous, that it

---

[5]  Dkt. 107 at 3 ("[A] discovery master should be appointed in this matter to resolve any *discovery disputes*") (emphasis added).

[6]  To the extent the Discovery Master's duties were to be expanded beyond the parties' prior Stipulated Order or the Court's May 5, 2011 Order, a written Order was required.  See Local Rule 53-1 ("Appointment of a master pursuant to Fed. R. Civ. P. 53 shall be made by written order of the Court.").  *De novo* review of the Discovery Master's Report is required, and the Report is entitled to no deference.

1  was objectively unreasonable, that Mattel had a bad faith motivation in filing suit, or

2  that considerations of deterrence weigh in favor of an award.  Ets-Hokin v. Skyy

3  Spirits, Inc., 323 F.3d 763, 766 (9th Cir. 2003).  MGA failed to carry its burden of

4  proving that the Fogerty factors weigh in favor of an award of attorneys' fees under

5  the Copyright Act.  Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).

6       6.    The Discovery Master rejected Mattel's argument that objective

7  unreasonableness is the touchstone for awarding fees under § 505 despite Ninth

8  Circuit[7] and out-of-circuit authority[8] supporting this position.  The objective

9  reasonableness of Mattel's copyright claim was conclusively established by, among

10  other things, the facts that the claim survived summary judgment in 2008 and 2010,

11  Mattel prevailed on the claim at the first trial and obtained substantial damages, a

12  federal District Judge subsequently granted equitable relief based on the copyright

13  claim, the Ninth Circuit denied MGA's emergency motion to stay based on a finding

14  that MGA was not likely to succeed on the merits, and the Ninth Circuit held on

15  appeal that Mattel "could easily" prove ownership of the Bratz works and

16  infringement of the first generation of Bratz dolls.  Dkt. 10568 at 4-10.  The Report

17  is also at odds with the Ninth Circuit's holding, on appeal of the original equitable

---

20  [7]  Smith v. Jackson, 84 F.3d 1213, 1221 (9th Cir. 1996); Ets-Hokin v. Skyy
Spirits, Inc., 323 F.3d 763, 766 (9th Cir. 2003); Perfect 10, Inc. v. CCBill LLC, 488

21  F.3d 1102, 1120 (9th Cir. 2007); Halicki Films, LLC v. Sanderson Sales and
Marketing, 547 F.3d 1213, 1231 (9th Cir. 2008); UMG Recordings, Inc. v. Veoh

22  Networks Inc., 2010 WL 1407316, at *2 (C.D. Cal. April 6, 2010); Modular Arts,
Inc. v. Interlam Corp., 2009 WL 151336, at *3 (W.D. Wash. Jan. 20, 2009); Guino

23  v. Besder, Inc., 2009 WL 3188375, at * 2-3 (D. Ariz. Sept. 29, 2009); Dalton-Ross
Homes, Inc. v. Williams, 2008 WL 324199, at *1 (D. Ariz. Feb. 5, 2008); Reed v.

24  Peterson, 2005 WL 1522187, at *7 (N.D. Cal. June 27, 2005); Perfect 10, Inc. v.

25  Visa Int'l Serv. Ass'n, 2005 WL 2007932, *5 (N.D. Cal. Aug. 12, 2005).

26  [8]  Fogerty v. MGM Group Holdings Corp., Inc., 379 F.3d 348, 357 (6th Cir.
2004); Matthew Bender & Co., Inc. v. West Pub. Co., 240 F.3d 116, 122 (2d Cir.

27  2001); Mitek Holdings, Inc. v. Arce Eng'g Co., 198 F.3d 840, 842-43 (11th Cir.
1999); Lotus Dev. Corp. v. Borland Int'l, Inc., 140 F.3d 70, 74 (1st Cir. 1998).

28

00505.07975/4218905.1

MATTEL'S OBJECTIONS TO DM REPORT AND RECOMMENDATION RE ATTORNEYS' FEES

1  relief, that each party should pay their own costs, which too attests to the

2  reasonableness of Mattel's claim. Fed. R. App. P. 39.

3       7.   The Discovery Master also did not consider that the other recognized

4  Fogerty factors weigh against an award of fees under § 505. Dkt. 10568 at 10-18.

5  There is no evidence that Mattel asserted its copyright claim for an improper

6  purpose; the clear reasonableness of the claim shows the contrary.  Compensation is

7  not an issue because MGA has substantial financial resources (and in fact has been

8  forced, in the past, to correct misrepresentations it made to the Court to the

9  contrary).[9]  MGA's examples of Mattel's supposed bad faith discovery conduct are

10 demonstrably false; it is MGA, not Mattel, that has been repeatedly sanctioned in

11 this case for discovery misconduct.  MGA's reliance on Mattel's conduct in other

12 cases to establish bad faith is replete with factual misstatements, irrelevant and

13 hypocritical—MGA's own litigiousness is well established.[10]  MGA's success did

14 not further the purposes of the Copyright Act in legal or factual terms because it

15 prevailed on a fact-specific issue of state contract law, consumer choice would not

16 have been limited because Mattel would have made and distributed Bratz,[11] and a

17 large fee award would have a chilling effect on the pursuit of legitimate but

18 ultimately unsuccessful copyright claims.  Finally, MGA's and Larian's own fault in

19 interfering with Bryant's contract militates against an award of fees. Berkla v. Corel

20 Corp., 302 F.3d 909, 923 (9th Cir. 2002).

21

22

23

24  [9]  Dkt. 6154 (MGA filing correcting prior MGA filing at Dkt. 4594, which falsely claims that MGA could not obtain credit following Mattel's success on its copyright claim in 2008).

25  [10]  Estate of Hevia v. Potrio Corp., 602 F.3d 34, 46 (1st Cir. 2010) (rejecting claim that multiple lawsuits filed by plaintiff justified fee shifting).

26  [11]  Dkt. 5565 at 11 ("The Monitor is ordered and directed to obtain from MGA . . . such of the Bratz assets . . . as are necessary to enable Mattel to begin preparation

27  of its own Bratz line for the Spring, 2010 sales season.").

28

8.   The Discovery Master's fee award under the Copyright Act was based on the erroneous conclusion that this case is "[s]imilar" to <u>Fantasy, Inc. v. Fogerty</u>, 94 F.3d 553, 557 (9th Cir. 1996).   This case is nothing like <u>Fogerty</u>.   The Discovery Master states that MGA's victory "secured the public's access to the original works of authorship embodied in the Bratz line" (Report at 8), but the same argument could be made by any defendant who successfully defends a copyright claim and continues producing the allegedly infringing work.   The issue here was not whether the public would have access to Bratz, but which company would provide Bratz to the public. Dkt. 10568 at 18.   <u>Fogerty</u> was a defendant-author case; the plaintiff (the assignee of Fogerty's copyrights in earlier Creedence Clearwater Revival songs) sued Fogerty for releasing a new song that allegedly infringed Fantasy's copyright in Fogerty's old song.   <u>Fantasy</u>, 94 F.3d at 555-56.   The defendant author Fogerty was being deprived of his ability to create music in the "Swamp Music" genre that he and his band created.   <u>Id.</u> at 555.   This unique fact pattern was emphasized by both the district court and the Ninth Circuit in holding that a fee award was appropriate.   <u>See</u> <u>Fantasy</u>, 94 F.3d at 560 ("copyright claims do not always involve defendant authors, let alone defendant authors accused of plagiarizing themselves, and do not always implicate the ultimate interests of copyright . . . .").

The Discovery Master states that MGA "prevailed on the merits" (Report at 8), ignoring that its victory was not based on copyright law but on an issue of state contract law.   This is not a case like <u>Mattel, Inc. v. Walking Mtn. Prods., Inc.</u>, 353 F.3d 792, 816 (9th Cir. 2003), which was decided on fair use grounds under the Copyright Act.   The only other reason given for the ▮▮▮▮ award is that Mattel is not an "impecunious plaintiff."   Report at 8.   That is hardly a reason to award MGA a windfall.[12]

---

[12]   <u>Lotus Dev. Corp.</u>, 140 F.3d at 75 (finding that plaintiff's "unusual wealth in no way alter[ed]" the court's conclusion that a denial of fees is appropriate).

9.  As Mattel has previously shown, the Seventh Amendment prohibits factual determinations in MGA's favor while its duplicative antitrust action remains pending.[13]  In an effort to avoid Seventh Amendment problems, the Report fails to address a <u>Fogerty</u> factor—Mattel's motivation in filing suit.  The fact that addressing this <u>Fogerty</u> factor would violate the Seventh Amendment by depriving Mattel of its jury trial right in the pending antitrust case is grounds for denying the fee award or at least deferring decision, not ignoring one of the factors which courts address under § 505.  By untethering entitlement to attorneys' fees from the <u>Fogerty</u> factors, the Discovery Master's award reflects unguided discretion—raising serious issues as to predictability and equal treatment of like cases.  <u>Adams v. Dep't of Health Servs.</u>, 487 F.3d 684, 688 (9th Cir. 2007).  If the Court were to make factual findings regarding Mattel's motivation in filing suit now, Mattel's Seventh Amendment rights will be violated.  <u>Beacon Theatres, Inc. v. Westover</u>, 359 U.S. 500, 504 (1959).  Indeed, according to MGA itself, the Court's equitable findings will have preclusive effect in the antitrust case.[14]  However, if the Court ignores this factor, Mattel will be deprived of a factual finding supporting Mattel's opposition to MGA's fee application.  MGA cannot deprive Mattel of its rights through a strategic decision to split its claims in this action from its antitrust claim arising from the same set of facts.  <u>Lytle v. Household Mfg., Inc.</u>, 494 U.S. 545, 548 (1990).

10.  The Discovery Master recommended a fee award under CUTSA without addressing Mattel's arguments in opposition.  Dkt. 10566 at 4-21.  A fee award under CUTSA is not proper where, as here, the trade secret status of information

---

[13] Dkt. 10527 at 9-13; Dkt. 10568 at 12; Hearing Tr. (Vol. 1) at 72:25-75:25 (May 25, 2011); Hearing Tr. (Vol. 4) at 28:3-29:10 (May 25, 2011); Hearing Tr. (Vol. 1) at 65:22-69:20, 75:2-76:8 (May 26, 2011).

[14] Hearing Tr. at 29:5-8 (May 26, 2011) ("MS. HURST: You know, as you mentioned, your Honor, you know, MGA's view is that it would be fully consistent with the Seventh Amendment in <u>Parklane Hosiery[, Inc. v. Shore</u>, 439 U.S. 322 (1979)] to apply this Court's findings in the second case.")

00505.07975/4218905.1

publicly disclosed at toy fairs is a novel question or an issue of first impression. Mattel did not engage in repetitive misconduct at toy fairs knowing it was unlawful under CUTSA.  As Mattel has explained at length previously, Mattel voluntarily stopped the toy fair activities at issue here in 2005—long before the conduct was adjudged unlawful in 2011.  MGA had actual knowledge of Villasenor's misconduct for years and even attempted to hire him, and Mattel conceded at trial that Villasenor's conduct was unethical and improper—all of which militates against a fee award.  MGA argued that Mattel would have continued to wrongfully access toy fair show rooms but for MGA's assertion of its trade secret claim, but there is no evidence that anyone from Mattel entered any toy fair showroom wrongfully after 2006.  The jury's substantial compensatory damages award more than adequately deters future misconduct.  All these facts weigh against an award of attorneys' fees under CUTSA, yet the Discovery Master considered none of them.  <u>02 Micro Int'l, Inc. v. Monolithic Power Sys., Inc.</u>, 399 F. Supp. 2d 1064, 1080 (N.D. Cal. 2005).

11.  The Discovery Master found that Mattel should pay MGA ████████ in attorneys' fees—and an undetermined amount of costs—without giving Mattel the opportunity to review any work descriptions in the more than ████ pages of billing records that MGA submitted for *in camera* review without prior authorization by the Court.  Mattel should not be required to pay any attorneys' fees, much less the amount recommended by the Discovery Master, without a meaningful opportunity to review, assess, and brief the impact of the work descriptions supporting MGA's fee demand.  The Discovery Master's opinion that every single work description in MGA's bills is "comprised primarily of information protected by the attorney-client privilege and the attorney work product doctrine" is contrary to law.[15]  Report at 12.  If MGA's blanket redactions were proper, every post-trial

---

[15]  <u>MGIC Indem. Corp. v. Weisman</u>, 803 F.2d 500, 505 (9th Cir. 1986); <u>Clarke v. Am. Commerce Nat'l Bank</u>, 974 F.2d 127, 129 (9th Cir. 1992); <u>Entm't Research</u> (footnote continued)

1    fee application would be considered *in camera*.  MGA's complete redaction of all
2    work descriptions is "insufficient to sustain an award of attorney's fees and costs"
3    because it leaves Mattel "without the opportunity to impose a meaningful objection"
4    and gives the Court no basis "to accept its representations that the costs and fees are
5    reasonable." EOS GMBH Electro Optical Sys. v. DTM Corp., 2002 WL 34536678,
6    at *4-5 (C.D. Cal. Mar. 18, 2002) (Carter, J.).  The Discovery Master questions
7    whether it would be "practicable" to create "partially redacted version[s] of the
8    bills" (Report at 12), but Mr. Machado provided redacted billing records with
9    substantial disclosure of work descriptions. Dkt. 10550-1.  A general description of
10   services performed by an attorney, as required to substantiate the reasonableness of
11   a statutory claim for attorneys' fees, is not privileged information. Clarke, 974 F.2d
12   at 129.

13        12.    The Discovery Master's failure to order the production of MGA's
14   unredacted billing records makes it impossible to meaningfully challenge the
15   specific amounts awarded.    The only information regarding the ███████
16   copyright fee award is that the Discovery Master did not award fees incurred prior to
17   January 2007 (Report at 10), he "disallowed the bulk of fees related to the transition
18   from one law firm to another" (Report at 11), and he "disallowed fees for work that,
19   in [his] opinion, could have been performed more efficiently through other means."
20   Report at 11. Mattel has no other information to challenge this ██████ award,
21   nor does it provide Mattel any basis whatsoever even to challenge whether these
22   decisions were properly implemented.    That MGA engaged in "block billing"
23   weighs against a high fee award; it is not something that justifies depriving Mattel of

24
25
26   Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211, 1231 (9th Cir. 1997);
27   United States v. $1,379,879.09 Seized from Bank of Am., 374 F. App'x 709, 711
     (9th Cir. 2010).
28

1   the right to access MGA's relevant bills as the Discovery Master ruled.[16]  Mattel

2   cannot verify whether the Discovery Master apportioned fees incurred in defense of

3   non-chargeable claims, including the claims related to Brawer, Castilla, Cooney,

4   Contreras, Brisbois, Machado, Trueba, Vargas, Cabrera, Morales and Salazar.  Nor

5   can it verify whether the Discovery Master deducted fees incurred by O'Melveny

6   that MGA itself alleges were unreasonable, duplicative, or even fraudulent.  Dkt.

7   10568 at 26-28.  The same is true of the Discovery Master's ███████ award

8   under CUTSA.

9       13.  The Discovery Master did not address Mattel's argument that MGA has

10  impliedly waived any privilege by submitting its fee applications, and putting its

11  fees and costs at issue.[17]  The attorney-client privilege may not be used as both a

12  sword and a shield.  Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1162 (9th Cir.

13  1992).  It would be unfair to permit MGA to use its attorney invoices to substantiate

14  its ███████ claim for attorneys' fees, while simultaneously allowing MGA to

15  redact from those same invoices any information which might enable Mattel to

16  challenge the fees sought.  Luna v. Sears Life Ins. Co., 2008 WL 2484596, at *1

17  (S.D. Cal. Jan. 11, 2008).  If the work descriptions are indeed privileged, implied

18

19

20

---

21  [16] Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007) ("The

22  fee applicant bears the burden of documenting the appropriate hours expended in the
    litigation and must submit evidence in support of those hours worked.  It was

23  reasonable for the district court to conclude that Welch failed to carry her burden,
    because block billing makes it more difficult to determine how much time was spent

24  on particular activities."); Lahiri v. Universal Music & Video Distrib. Corp., 606
    F.3d 1216, 1223 (9th Cir. 2010) (citing California State Bar's Committee on

25  Mandatory Fee Arbitration's report that block billing may increase time by 10 to
    30% and reducing majority of block billed fees by 30%).

26  [17] Mancini v. Insurance Corp. of New York, 2009 WL 1765295, at *4 (S.D. Cal.
    June 18, 2009); Ideal Elec. Sec. Co. v. Int'l Fidelity Ins. Co., 129 F.3d 143, 151-52

27  (D.C. Cir. 1997); Concept Enterprises, Inc. v. Hartford Ins. Co. of the Midwest,
    2001 WL 34050685, at *8 (C.D. Cal. May 22, 2001).

28

00505.07975/4218905.1

1   waiver exists because Mattel cannot get the information necessary to challenge

2   MGA's fee applications from any other source. Dkt. 10583 at 5-7; Dkt. 10597 at 1.

3       14. MGA further waived any privilege by producing unredacted copies of

4   O'Melveny's, Skadden's, and Orrick's billing records during the course of its

5   malpractice case against O'Melveny.[18]  By bringing a malpractice suit against

6   O'Melveny—and producing attorney invoices in connection therewith—MGA

7   waived privilege as to those invoices.[19]   MGA cannot disclose confidential

8   communications to aid in its malpractice claim against O'Melveny and

9   simultaneously maintain those same communications are privileged for purposes of

10  prevailing in its fees motion against Mattel. Permian Corp. v. United States, 665

11  F.2d 1214, 1221 (D.C. Cir. 1981).

12      15. The Discovery Master failed to properly consider and apply the decision

13  of the United States Supreme Court in Fox v. Vice, --- S. Ct. ----, 2011 WL 217521,

14  (U.S. June 6, 2011). Fox's "but for" apportionment standard applies to fee awards

15  to prevailing defendants under the Copyright Act. The Discovery Master purported

16  to distinguish Fox without the benefit of briefing from the parties (Report at 3 n.1 &

17  4). In Fox, the Supreme Court held that a "but for" apportionment test applies to

18  prevailing civil rights defendants. 2011 WL 2175211, at *2. In choosing whether

19  the "related" or "but for" standard applies to a particular fee shifting statute, the

20  Supreme Court explained that "the standard for allocating fees in 'mixed' cases

21

22  [18] United States v. Shibley, 112 F. Supp. 734, 742 (S.D. Cal. 1953); In re Syncor
    Erisa Litig., 229 F.R.D. 636, 646 (C.D. Cal. 2005); Permian Corp. v. United States,
23  665 F.2d 1214, 1221 (D.C. Cir. 1981). See Estrich Dec. at ¶ 2 (Hearing Transcript,
    dated June 20, 2011, from O'Melveny and Myers LLP v. MGA Entertainment, Inc,
24  Los Angeles Superior Court Case No. BC441593 at 9-10) (MGA has already
    produced "all of the OMM's [sic] invoices," has already produced "all of Skadden's
25  invoices for 2007, 2008," and is in the process of producing "all communications
    between MGA and Orrick" in the O'Melveny malpractice litigation).
26  [19] In re Syncor Erisa Litig., 229 F.R.D. at 646 ("'[O]nce a party has disclosed
27  work product to an adversary, it has waived work product protection as to all other
    adversaries.").

28

matches the relevant congressional purpose." Id. at *7 n.3. Fox noted that fees are awarded to prevailing defendants under § 1988 to remove "the burdens associated with fending off frivolous litigation." 2011 WL 2175211, at *7. Similarly, Fogerty identified frivolousness and objective unreasonableness as factors the Court should consider in awarding fees under the Copyright Act. 510 U.S. at 534 n.19. The standards for awarding fees to prevailing civil rights and copyright defendants both ask, through the factors they consider, whether the losing party "acted wrongly in leveling such allegations." Fox, 2011 WL 2175211, at *6. The same "but for" apportionment standard should be applied here as in Fox. Any other standard would yield a windfall by awarding MGA fees it would have incurred even absent any copyright claim. Id. at *7. Accordingly, fees incurred for defense of related claims that would have been incurred by MGA in the absence of the copyright claim are not recoverable, and the Discovery Master failed to apply the proper apportionment standard. Id.; Harris, 631 F.3d at 972. In addition, the "but for" apportionment standard requires a more thorough examination of billing records because unredacted billing records are necessary to determine if MGA would not have incurred its defense costs but for the Bratz copyright claim.[20]

16. According to MGA, it incurred ██████ in attorneys' fees "associated with the MGA Parties' affirmative claims."[21] MGA did not break out what portion of this amount was related to its trade secret claim versus the six other affirmative claims it unsuccessfully asserted.[22] Out of the six, the first was dismissed on October 5, 2010 (Dkt. 8892) and the remaining five were dismissed on January 5,

---

[20] Rico v. School Board of Miami-Dade County Public Schools, 2011 WL 2223607, at *3 (S.D. Fla. June 7, 2011) (finding that the absence of detailed time sheets precluded the court from applying the "but for" standard).

[21] Schultz Decl. ISO MGA's Mot. for Fees and Costs (Schultz Decl.), ¶ 16.

[22] MGA unsuccessfully asserted the following additional affirmative claims: 1) RICO, 2) wrongful injunction, 3) trade dress infringement, 4) trade dress dilution, 5) unjust enrichment, and 6) common law unfair competition.

2011 (Dkt. 9600).  One of the claims was a complex RICO claim that remained in the case until early January 2011.  Moreover, the Discovery Master acknowledges that MGA's "success rate" with respect to its trade secret claim was approximately ███ Report at 5.  Yet, the Discovery Master chose to award MGA ███ of its fees.  The sole explanation for this number is that there was likely "overlapping work" done in prosecuting the 114 trade secrets (id.), but MGA provided nothing to support that ███ of the work was overlapping.  Nor did the Discovery Master identify the amount of fees that the ███ reduction was applied to—or whether that amount was limited solely to MGA's trade secret claim or included all affirmative claims.  The amount awarded is unsupported.  See Moreno v. City of Sacramento, 534 F.3d 1106, 1116 (9th Cir. 2008) ("gut feelings are not enough" and the Court "needs to explain why [it awarded the specific amount] with sufficient specificity that the lawyer can meaningfully object and [the Ninth Circuit] can meaningfully review the objection"); see also Ergobilt, Inc. v. Neutral Posture Ergonomics, Inc., 2002 WL 1489521, at *8 (N.D. Tex. July 9, 2002) (vacating an arbitrator's "unapportioned award" because it was "arbitrary and capricious" and "create[d] a massive windfall for the Defendant").

17.  The Discovery Master's calculations of CUTSA fees are not correct, even apart from the legal errors.  MGA requested a total of ███ in fees allegedly incurred in pursuing its affirmative claims.  Schultz Decl. at ¶ 16.  The Discovery Master awarded MGA ███.  Report at 13.  ███ of ███ is ███—not ███—and this ███ figure still results in vast overcompensation because it assumes the ███ is applied to all the requested affirmative claims fees, which included fees incurred in prosecuting unrelated affirmative claims that MGA lost or abandoned.

18.  The Discovery Master's Report fails to take into account the amount MGA has actually paid its attorneys and the actual billing arrangement with its counsel.  Section 505 is compensatory and intended to reimburse for attorneys' fees

1 | *actually* incurred.  <u>Video-Cinema Films, Inc. v. Cable News Network, Inc.</u>, 2004

2 | WL 213032, at *4-5 (S.D.N.Y. 2004).   A fee award for the face value of the

3 | invoices does not further considerations of compensation; it is a windfall for MGA.

4 | Courts cannot award fees that "amount to a windfall for the prevailing party" under

5 | the Copyright Act.  <u>Crescent Publ'g Group v. Playboy Enters., Inc.</u>, 246 F.3d 142,

6 | 151 (2d Cir. 2001); <u>Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.</u>, 253 F.3d 1332,

7 | 1337 (11th Cir. 2001).   This point was reaffirmed by the Supreme Court in <u>Fox</u>.

8 | 2011 WL 2175211, at *7 (noting that §1988 was "never intended to produce

9 | windfalls" for parties).   The actual billing arrangement and amount a prevailing

10 | party actually paid is directly relevant to the amount of fees that can be awarded,

11 | <u>Robinson v. Lopez</u>, 2003 WL 23162906, at *3 (C.D. Cal. Nov. 24, 2003), and

12 | courts properly take into account "discounts given clients, write-offs of time,

13 | collection experience or the host of other matters that determine the attorney fees

14 | that actually prevail in the market."  <u>Yahoo!, Inc. v. Net Games, Inc.</u>, 329 F. Supp.

15 | 2d 1179, 1192 (N.D. Cal. 2004).   An award of fees in excess of what MGA has paid

16 | is an impermissible windfall to MGA.

17 |     19.   Orrick has not been paid and stated that it will not be paid (at least

18 | without arbitration) any future fees awarded by this Court as "attorneys' fees."  In a

19 | declaration filed in related litigation, MGA's counsel swore that "MGA has refused

20 | to pay Orrick in full for its work in the Mattel action . . . . To the contrary, MGA has

21 | indicated that it will not pay Orrick and has no plan to do so at the present time."[23]

22 | MGA's counsel further declared that "[i]n April and May of 2011, after the verdict

23 | in the Mattel action, I and others at Orrick had discussions with MGA in an effort to

24 | resolve payment issues.  MGA indicated that it had no present plan to pay Orrick the

25 |

26 | [23]  Declaration of Annette Hurst in Support of Orrick's Motion to Withdraw as

27 | Counsel in <u>Belair v. MGA Entertainment, Inc.</u>, No. 09-CV-8870 (S.D.N.Y.). at ¶ 6
(Hurst Decl.).  Dkt. 10615-1 at 13-17.

28 |

1  fees that are owed on this <u>Belair</u> matter or any other outstanding matter, other than

2  remitting any further insurance proceeds that it receives as a result of reimbursement

3  for Orrick's billing."[24]  Reimbursing MGA for fees that MGA's own counsel has

4  said MGA will not pay would result in a windfall.  The Discovery Master failed to

5  address this issue.  In addition, the Report does not say whether the Discovery

6  Master relied on the third *in camera* Schultz declaration, which purports to address

7  whether MGA's requested award would result in a windfall.  Although Mattel

8  moved to compel MGA to serve Mattel with its third Schultz Declaration, which

9  MGA submit solely for *in camera* review, that motion has not been ruled on and in

10  any event Mattel has never had access to that Declaration or provided with an

11  opportunity to respond to it. Dkt. 10634.  Mattel has a right to see MGA's alleged

12  evidence in support of its fee requests.

13      20.  The Court should reject MGA's request for "full costs" under the

14  Copyright Act for the same reasons that an award of fees is not justified under the

15  <u>Fogerty</u> factors.  <u>Perfect 10, Inc. v. CCBill LLC</u>, 488 F.3d 1102, 1120-21 (9th Cir.

16  2007).

17      21.  Should the Court award costs under § 505 at all, it must "limit[] recovery

18  to costs causally associated with the copyright claim."[25]  Yet MGA has made ***no***

19  effort to apportion its costs between its defense of Mattel's copyright and non-

20  copyright claims.  MGA's opportunity to do so has passed.  Its motion was and is

21  unsupported by evidence as to its claimed costs (and, likewise, as to its claimed fees

22  in light of MGA's redaction of all its invoices). Denial of fees and costs is

23  appropriate given the complete redaction of work descriptions and MGA's failure to

---

24  [24] Hurst Decl. (Dkt. 10615-1) at ¶ 9.
25  [25] <u>InveSys, Inc. v. McGraw-Hill Companies, Ltd.</u>, 369 F.3d 16, 24 (1st Cir.
26  2004); <u>Wall Data Inc. v. Los Angeles County Sheriff's Dept.</u>, 447 F.3d 769, 776
27  (9th Cir. 2006) (affirming the district court's limited award of only $38,000 out of
the nearly $150,000 in § 505 costs sought by party).
28

1  submit evidence to meet its burden in seeking fee shifting.  The Traditional Cat
2  Ass'n, Inc. v. Gilbreath, 340 F.3d 829, 834 (9th Cir. 2003); Entm't Research Group,
3  Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211, 1231 (9th Cir. 1997); United
4  States v. $1,379,879.09 Seized From Bank of America, 374 F. App'x 709, 711 (9th
5  Cir. 2010); EOS GMBH Electro, 2002 WL 34536678, at *4-5; see also Lahiri v.
6  Universal Music & Video Distribution Corp., 606 F.3d 1216, 1223 (9th Cir. 2010)
7  (affirming significantly reduced award of costs under § 505 where district court
8  excluded inadequately documented costs). The Discovery Master's recommendation
9  that MGA resubmit its cost records impermissibly gives MGA yet another bite at the
10  apple and is inconsistent with the Court's May 9 Order that all evidence supporting
11  MGA's fee applications be submitted to the Discovery Master by no later than May
12  12, 2011.  Dkt. 10547.

14  DATED:  June 24, 2011            QUINN EMANUEL URQUHART &
                                     SULLIVAN. LLP

16                            By _Susan R. Estrich_
18                                Susan R. Estrich
                                  Attorney for Mattel. Inc.