# EXHIBIT 1

```
 1            SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2                 FOR THE COUNTY OF LOS ANGELES
 3   Department 48              Hon. Elizabeth A. White, Judge
 4
 5   O'Melveny & Myers, LLP,            )
                                        )
 6                  Plaintiff,          )
                                        )
 7              vs.                     ) Case No:  BC441593
                                        )
 8   MGA Entertainment, Inc,            )
                                        )
 9                  Defendant.          )
     _____)   CERTIFIED COPY
10
11
12         REPORTER'S DAILY TRANSCRIPT OF PROCEEDINGS
13                   MONDAY, JUNE 20, 2011
14
15
16   APPEARANCES:
17   For Plaintiff:       Gibson, Dunn & Crutcher, LLP
                          BY:  KEVIN S. ROSEN, ESQ.
18                             J. CHRISTOPHER JENNINGS, ESQ.
                          333 South Grand Avenue
19                        Los Angeles, California 90071-3197
                          (213) 229-7635
20
     For Defendant:       Rosen Saba, LLP
21                        BY:  JAMES R. ROSEN, ESQ.
                               RYAN D. SABA, ESQ.
22                        468 North Camden Drive
                          Third Floor
23                        Beverly Hills, California 90210
                          (310) 285-1727
24
25
26
27                        Reported by:
                          Louis R. Machuca, CSR No. 12274
28                        Official Court Reporter
```

```
 1  Case Number:              BC441593
 2  Case Name:                O'Melveny & Myers, LLP vs. MGA
 3                            Entertainment, Inc.
 4  Los Angeles, California   Monday, June 20, 2011
 5  Department 48             Judge Elizabeth A. White
 6  Appearances:              (As heretofore noted.)
 7  Reporter:                 Louis Machuca, CSR No. 12274
 8  Time:                     Afternoon Calendar
 9
10
11         (The following proceedings were held
12     in open court:)
13
14     THE COURT:  O'Melveny versus MGA Entertainment,
15  case Number BC441593.
16     MR. KEVIN ROSEN:  Good morning, Your Honor.
17  Kevin Rosen and Christopher Jennings on behalf of the
18  plaintiff and cross-defendants.
19     MR. JIM ROSEN:  Good morning, Your Honor.
20  Jim Rosen, Rosen Saba, on behalf of MGA and associated
21  parties.
22     MR. SABA:  Good morning, Your Honor.  Ryan Saba of
23  Rosen Saba on behalf of MGA.
24     THE COURT:  All right.  This is a continuance of
25  the hearing from May 13 at which we discussed some of
26  the issues related to discovery and related to case
27  management.  I had asked counsel to submit a joint
28  response to the court's order with regard to a joint
```

1  initial case management order.
2           You timely filed that document with the court.
3  The court has had the opportunity to review the
4  transcript of the May 13 hearing, as well as the
5  proposed joint case management order.  There are areas
6  where the parties disagree in terms of the future
7  discovery and pretrial deadlines:
8           Areas of disagreement concerning responses to
9  special interrogatories; areas of disagreement
10 concerning MGA's privilege log; MGA'S document
11 production; pending discovery disputes, and the format
12 of documents to be produced.
13          Those seem to be the real areas where counsel
14 is unable to reach any kind of agreement.
15          My question to counsel is whether any further
16 meet and confer efforts would be useful.  I know that
17 there was a request to continue, for two days, the
18 filing deadline for the joint report, which leads me to
19 believe that perhaps you felt like you were somewhat
20 pressured into coming together in terms of your joint
21 report.
22     MR. KEVIN ROSEN:  Your Honor, I would say no.  The
23 two days was to allow us to get in writing what we were
24 able to agree with.  We have certain disagreements about
25 what we should do prospectively and then we have certain
26 issues with respect to continued positions being taken
27 that the court has already ruled on, such as the Skadden
28 materials, which Judge Swart ruled on, Your Honor has

```
 1  ruled on, and, yet, in their draft, they continue to
 2  provide that they're going to log it in the privilege
 3  log that we got from them on Friday.
 4           We have all the Skadden documents on the
 5  privilege log.  They've produced none of that.  So I
 6  think we're at the point where we need the court's
 7  guidance in terms of the additional provisions that are
 8  at issue in the proposed case management order as well
 9  as some firm deadlines in terms of production.  And the
10  only other thing that's built into the case management
11  order is we both agree that we should comb back at some
12  point in July for the court to be able to assess where
13  we are in discovery.
14       THE COURT:  All right.  Let me just ask this
15  question, and perhaps you're unable to answer.  In light
16  of the discovery issues, is it fair to say that you're
17  not able to determine when we could set the case for
18  trial?
19       MR. KEVIN ROSEN:  That's correct.  I think both
20  sides agreed upon that.
21       THE COURT:  And as far as the outstanding issues, I
22  think Judge Swart made clear, I made clear that any
23  assertion of privilege with regard to the documents, the
24  Skadden documents, probably would not be well taken.
25  And, again, I don't know why this continues to be an
26  issue.
27           Go ahead, Mr. Rosen.
28       MR. JIM ROSEN:  Thank you, Your Honor.  Jim Rosen
```

1  for MGA.
2           I'm surprised, actually, because I think we
3  had made a lot of progress in getting up to speed and to
4  be getting the compliance that was ordered before our
5  firm came into the case.
6           In between the filing of the last joint report
7  and today's appearance, our firm produced almost 10
8  million pages of documents, electronically, on two hard
9  drives in addition to other documents in zip files
10 containing all of the trial transcripts from the two
11 trials that plaintiffs had requested.  We've produced --
12 we began the logging process.
13          But the Skadden documents, which I understand,
14 and we were here for the last conference and heard the
15 court's comments; however, in between then and today,
16 the Skadden firm has again resumed its function as MGA's
17 attorneys in the ongoing MGA versus Mattel action.  And
18 so to say that we've unilaterally waived the privileges
19 that are applicable to a piece of ongoing litigation,
20 that has been become complicated.
21          We have sent notice to Mattel's counsel Quinn
22 Emanuel that this court is inclined to rule that MGA
23 must turn over what has been designated attorneys' eyes
24 only documents produced by Mattel under an applicable
25 protective order issued by the Federal court.  And we're
26 awaiting their response.  I had hoped perhaps someone
27 would show up here to give their intention, but we'll
28 wait.

1   But there's only so much that we can do, and
2 we've produced ten million documents and begun the
3 logging process. We've agreed -- even though I know it
4 was put in the report that the special interrogatory
5 responses were still a matter of dispute, I was under
6 the impression that the last time we were here we agreed
7 that if we accelerated the audit process and actually
8 identified to plaintiffs our selected auditor and have
9 an auditor produced, which would basically subsume all
10 other special interrogatories that had been made on that
11 subject, that we would comply with that under Section
12 2030.230.
13   And I read it in the court's order last time,
14 so I'm finding it difficult to believe --
15   THE COURT: I think the problem is you've
16 identified the auditor, but the auditor hasn't yet done
17 the work to selectively give us examples. And I guess
18 that, hopefully, is under way.
19   MR. JIM ROSEN: No, in the meantime, Your Honor, we
20 agreed in the last time that we met at Gibson Dunn that
21 we would continue to respond to the continuing to linger
22 special interrogatory responses without prejudice to an
23 auditor coming in and setting the entire table as to
24 what MGA's claims are.
25   We're going to continue to do that. We think
26 at the end of the day it's going to be -- it's just to
27 tread water, because an official auditor will come in
28 and actually give to O'Melveny and its counsel MGA's

```
 1  complete statement as to what their problems are with
 2  their invoices.
 3      THE COURT:  What's your best estimate as to when
 4  that would be completed, and I don't mean in a dilatory
 5  faction, I mean expeditiously?
 6      MR. JIM ROSEN:  We had hoped to give you an
 7  indication of when that would occur at the next CMC that
 8  we would hope to have at the end of July.  And it would
 9  really depend upon what the auditor tells us.
10      MR. KEVIN ROSEN:  A few things, Your Honor.
11      THE COURT:  Go ahead.
12      MR. KEVIN ROSEN:  As the court knows, we're talking
13  about discovery that was propounded last August.  The 11
14  million documents that counsel is referring to, those
15  are the documents that were stored on an electronic
16  database.  They were documents produced by MGA in the
17  underlying litigation.
18          That's a database that MGA, last August, could
19  have simply provided to us.  They could have provided it
20  to us following Judge Swart's order in March.  They
21  could have provided it to us immediately following the
22  court's hearing on May 13th.  And here we are five weeks
23  later from May 13th, and all we've received in discovery
24  are a few transcripts and a database of documents that
25  they didn't have to do anything to produce other than to
26  download it onto a disk.
27          So that's what's happened in the last five
28  weeks.  Beyond that what's happened is plaintiffs have
```

 1  backtracked.  Over and over again, as the court noted,
 2  they were ordered to produce the Skadden documents.  And
 3  now they're -- you heard counsel say they're still not
 4  willing to do that.
 5          And I don't know what else we as a litigant
 6  can do other than to bring a motion compel, win before
 7  Judge Swart, then win before Your Honor, then come back
 8  on May 13th and have Your Honor order it again.  And
 9  here we are five weeks later, and we still don't have
10  it.
11      THE COURT:  Well, I think the remedies for that are
12  apparent to you under the Code, and I'm not going to
13  suggest what those remedies should be.  But I was hoping
14  that by today we could have everything ironed out.  It's
15  apparent we do not have everything ironed out.
16      MR. KEVIN ROSEN:  And the problem, Your Honor, is
17  until -- and that's where -- I understand the remedies
18  point, Your Honor.  I think the only way we're going to
19  make progress here -- and it's not just the Skadden
20  documents.  You heard again the reference to a provision
21  in the protective order.  We've been through that.
22          Your Honor has seen the transcript when we had
23  the motion to compel before Judge Swart, and Judge Swart
24  said whatever protective orders there are in other cases
25  is not an excuse to fail to produce documents.
26          Moreover, Your Honor reiterated that when Your
27  Honor came back.  Moreover, we specifically entered into
28  a stipulation with opposing counsel to confirm what

1  Judge Swart already ordered, which is those documents
2  that he's saying he won't produce, despite the court
3  orders, because of an underlying protective order in the
4  Federal litigation would be covered by the protective
5  order in this case.  Why in the world would he enter
6  into that stipulation that we've submitted to the court
7  last week.
8           So the problem is not only are we not moving
9  forward, and for that I would request, Your Honor, a
10 very specific date to complete the production, they're
11 moving backward on certain issues.  With respect to the
12 order that was issued, Your Honor ordered them, within
13 30 days, to respond to the special interrogatories and
14 to respond to the form interrogatories.  We don't have
15 that yet.  We're five weeks down the road.  We don't
16 have that.
17          What we talked about was instead of providing
18 the additional information about the billing entries, we
19 agreed in a meet and confer process that within 90 days
20 or so, they would retain an auditor, and the auditor
21 would identify everything that's in issue.  All the --
22 if Your Honor remembers, there are about 20 categories.
23 They would go and identify every line item in the
24 invoice.
25          That's what we agreed to as part of a meet and
26 confer process.  And then we get their proposed
27 stipulation, and what it is is some generic statements
28 about not what -- not to identify everything

1  specifically, but that we'll give you enough information
2  to put you on notice.  Well, that's where we are right
3  now.  The whole point of this was to give them time to
4  hire an auditor and to provide that information to us
5  with specific references to each of the line items.
6          And so even when we meet and confer and we
7  agree on something, we then try to submit it to the
8  court and it's not there.
9      THE COURT:  Here's what I'm going to suggest.  I'm
10 going to continue this, but I will ask that compliance
11 with the court's order be achieved.  And if it's not
12 achieved, that motions to compel seeking terminating
13 sanctions or issue sanctions or additional sanctions be
14 filed, because I cannot seem to get the parties to any
15 kind of -- I simply can't seem to get you moving.
16     MR. JIM ROSEN:  Your Honor, with all due respect to
17 opposing counsel and the information that was given to
18 the court, that's not quite the state of affairs that
19 we're in right now.  We have produced -- I mean, I don't
20 want to belabor the issue and I know there's a gallery
21 of people out there who want your attention, Your Honor,
22 we've since the last time we saw you have approved --
23 have produced all phase one trial transcripts, 2008; all
24 phase two trial transcripts, 2011; all phase two trial
25 exhibits;
26         2011 trial transcripts word indices; all of
27 the OMM's invoices; all of Skadden's invoices for 2007,
28 2008.  We've begun production of all communications

1  between MGA and Orrick; and in addition to all of the
2  nine-and-a-half million pages that were produced in the
3  trials.  We have -- and --
4      THE COURT:  Here's my concern.  Mr. Kevin Rosen has
5  indicated that these are all documents that supported
6  the underlying discovery, all documents related to the
7  trial transcripts.  They may be voluminous.  They have
8  to be voluminous.  Clearly it was a major, major piece
9  of litigation, but it's not what -- it's not the be-all
10 and end-all of this discovery.
11          There are clearly categories that need to be
12 responded to, interrogatories that need to be responded
13 to.  Simply a document dump is not sufficient for
14 purposes of the discovery that they are seeking to gain
15 compliance.
16     MR. JIM ROSEN:  Your Honor, the joint report signed
17 by all counsel here says that our interrogatory
18 responses are due June 30th.  This is premature to be
19 calling us out for not complying with it when the
20 stipulation it says in front of you, Your Honor, says
21 June 30th, and today is not June 30th.
22          And so I have already indicated on the record,
23 we intend to do what we said, but since we've agreed to
24 June 30th, we get until June 30th.  And so, for that
25 point, I think it's a little premature to be talking
26 about that.
27          And so, moreover, I know that we are being
28 tagged with what happened before we entered into the

```
 1  case.  Mr. Saba and I entered into this case, associated
 2  in on April 1, and five weeks later at the last
 3  conference, took it over entirely by substituting out
 4  prior counsel.  Since then, we've put out eight figures
 5  worth of production of documents.
 6            And we're very sensitive to the fact, first,
 7  the Skadden issue has now reemerged, because Skadden is
 8  current counsel.  But also because there's an allegation
 9  in this case that O'Melveny inadvertently disclosed
10  privileged documents because they didn't read them ahead
11  of time.  We would be a little remiss if we now did that
12  very same thing in defense of the action brought by
13  O'Melveny.
14            And so, quite frankly, I feel we have a
15  professional duty to at least look at, in a cursory
16  matter, these things that we know we must produce.
17        THE COURT:  All right.  Let me just ask, if I were
18  to continue this into the early part of July, would we
19  have better clarity in terms of the discovery?
20        MR. JIM ROSEN:  We actually agreed on late July,
21  Your Honor, when with met and conferred, if that's all
22  right.
23        MR. KEVIN ROSEN:  We'll obviously do whatever is
24  appropriate for the court.  I -- what I might suggest,
25  Your Honor, to help move things along, is if Your Honor
26  were inclined to look at the competing proposals in the
27  proposed case management order and rule on that.  And
28  the reason I suggest that is one of the things that the
```

1   parties agreed to is a very streamlined motion to compel
2   procedure that will provide a lot less paper to the
3   court in terms of dealing with these issues.
4           And so if Your Honor were to look at this
5   proposal and select the -- well, first of all, that's
6   not disputed.  We agreed to that, and we agreed to a few
7   other things.  It's just the existing discovery.  So you
8   could do one of two things.  You could enter as initial
9   case management order number one everything that the
10  parties agreed to in here and then defer the rest, or
11  second would be to do that, plus, rule on the competing
12  proposals with respect to discovery.
13          But, fundamentally, again, when counsel says
14  we'd be remiss if we don't look into this in terms of
15  his professional duties, his professional duty and his
16  client's obligation -- let me stay focused on his
17  client.  His client's duty is to respond to the orders
18  of this court.  And to suggest that somehow Skadden has
19  reemerged, well, Mr. Nolan from Skadden has been quoted
20  as saying, quote, "We never left the litigation battles
21  of MGA."
22          So to suggest to this court that somebody
23  Skadden is new and that becomes a pretext for not
24  complying with the court order is inconsistent with the
25  public statements that Skadden, itself, is making.  And
26  it's these types of things that we can come back again,
27  and, again, we'll do whatever is convenient for the
28  court, but --

```
 1        THE COURT:  Let me suggest this.  Why don't you
 2   give me an initial case management order to sign that
 3   contains all of the agreed upon issues.  We'll defer any
 4   disputed issues until the next hearing, which I would
 5   assume would be the week of July the 25.  I don't know
 6   that you agreed to a specific date.
 7        MR. JIM ROSEN:  We actually said the 27th, 28th or
 8   29th were all okay on all of our calendars.
 9        THE COURT:  Let's do July 29 at 8:30.  I'll ask
10   counsel to submit an initial case management order
11   containing those areas where counsel is in agreement.
12   And then we'll defer remaining issues to the July 29
13   case management conference.
14             And to the extent that there have been rulings
15   of this court, compliance needs to be achieved.  I don't
16   know what else to say; otherwise, we're going to be
17   looking at motions for terminating sanctions down the
18   line.  And if it gets to that point, I would probably
19   suggest that counsel meet and confer and agree on a
20   discovery referee, because it's going to get absolutely
21   impossible for this court to handle the discovery
22   issues.
23        MR. JIM ROSEN:  Thank you.  Your Honor, are you
24   ordering us to meet and confer with respect to the
25   provision of an order summarizing our agreements and
26   then asking us to meet and confer regarding the joint
27   statement to be produced in advance of the next CMC?
28        THE COURT:  Please.  In order words, you have those
```

1  areas of agreement.  You've actually specified that in
2  the joint response.  All you need to do is take those
3  areas that are in agreement and prepare an initial case
4  management order.  It's just basically blocking and
5  putting it into a new document.
6      MR. KEVIN ROSEN:  What counsel just said I think
7  misstates what the court has in mind.  And I need to be
8  very careful here because what tends to happen is broad
9  statements get made and then they become a pretext for
10 not doing what the court contemplates.
11          As I understand what the court is saying, we
12 are going to take the areas of the case management
13 conference order that we've agreed on, and today we are
14 going to submit to the court to be signed that part of
15 the case management order.  And then we will -- we've
16 already met and conferred, so we will provide to the
17 court, I guess, in advance of the July 29th proceeding
18 those areas that we don't agree on, which would
19 basically be taking the rest of what the court has right
20 now.
21     THE COURT:  Correct.
22     MR. KEVIN ROSEN:  And the only other question I
23 have with respect to July 29 is may we also submit to
24 the court the areas of discovery where there's been a
25 failure to comply so that on July 29, we don't hear the
26 same thing that we heard on May 13 and again today,
27 which is we're trying to comply.  We're trying to figure
28 out this and that.

```
 1        THE COURT:  I think for clarity's sake, they won't
 2   be motions to compel.  In other words, these are areas
 3   where you feel that there has been a failure to comply.
 4   I won't treat it as a motion to compel.  It will just be
 5   for the court's information that you intend to file a
 6   discovery motion, and perhaps we can sketch out when
 7   those discovery motions would be heard.
 8        And perhaps counsel may want to think about a
 9   discovery referee in anticipation of that hearing.
10        MR. JIM ROSEN:  Your Honor, what I only wanted was
11   because we don't seem to be able to agree what we agree
12   upon, before counsel turns around and sends back a
13   proposed order for Your Honor to sign as to what we've
14   already agreed, I would like an advance copy as to what
15   counsel thinks we've agreed upon, because I don't think
16   we're even speaking the same language.
17        THE COURT:  Wait.  This is very simple.
18        On June 15, you submitted a joint response, as
19   I had requested.  You separated out those areas that you
20   were not in agreement on.  So the only thing I'm asking
21   is the areas where you are in agreement, submit it as an
22   initial case management order.  Somebody back at the
23   office can just block and copy it into a new document in
24   order form.
25        MR. KEVIN ROSEN:  Absolutely, Your Honor.
26        THE COURT:  That's all I'm asking.  I think that's
27   pretty clear.
28        MR. KEVIN ROSEN:  Exactly.  It is, Your Honor.
```

```
 1      THE COURT:  So we'll see you back here on July 29.
 2 The updated issue report, for lack of a better word,
 3 these are issues that are in dispute, to be submitted
 4 five court days before.  And the initial order to be
 5 submitted forthwith.
 6           Notice waived?
 7      MR. JIM ROSEN:  Notice waived, Your Honor.
 8      MR. KEVIN ROSEN:  Notice is waived, Your Honor.
 9      THE COURT:  Thank you.
10      MR. KEVIN ROSEN:  We'll get that order to you
11 today, Your Honor.
12      THE COURT:  Thank you.  I appreciate it.
13
14           (The proceedings were concluded.)
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

```
 1           SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2                  FOR THE COUNTY OF LOS ANGELES
 3  Department 48            Hon. Elizabeth A. White, Judge
 4
 5  O'Melveny & Myers, LLP,              )
                                         )
 6                 Plaintiff,            )
                                         )
 7          vs.                          ) Case No:  BC441593
                                         )
 8  MGA Entertainment, Inc,              )
                                         )
 9                 Defendant.            )
    _____)
10
11
12          I, Louis R. Machuca, official court reporter
13  of the Superior Court of the State of California, for
14  the County of Los Angeles, do hereby certify that the
15  foregoing pages 1 through 16, inclusive, comprise a
16  full, true, and correct daily transcript of the
17  proceedings held in the above-entitled matter
18  on June 20, 2011.
19
20            Dated this 21st day of June, 2011.
21
22
23
               [signature: Louis R. Machuca]
24          _____
               LOUIS R. MACHUCA
25             CSR NO. 12274
26
27
28
```