ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone:   415-773-5700
Facsimile:    415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone:  213-629-2020
Facsimile:   213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>                    Plaintiff,<br><br>          v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                    Defendant. | Case No. CV 04-9049 DOC (RNBx)<br><br>Consolidated with Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**MGA PARTIES' RESPONSES TO MATTEL'S OBJECTIONS TO THE DISCOVERY MASTER REPORT AND RECOMMENDATION RE APPLICATION FOR ATTORNEYS' FEES BY MGA** |
| AND CONSOLIDATED ACTIONS | Date: TBD<br>Time: TBD<br>Dept: Courtroom 9D<br><br>Trial Date: January 18, 2011<br>Judge:  Hon. David O. Carter |

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*02 Micro Int'l, Inc. v. Monolithic Power Sys., Inc.,*
   399 F. Supp. 2d 1064 (N.D. Cal. 2005)................................................................ 10

*Adriana Int'l Corp. v. Thoeren,*
   913 F.2d 1406 (9th Cir. 1990) ................................................................................ 2

*Apple Computer, Inc. v. Microsoft Corp.,*
   35 F.3d 1435 (9th Cir. 1994) ................................................................................. 4

*Bond v. Blum,*
   317 F.3d 385 (4th Cir. 2003) ............................................................................... 23

*Burlington Northern R.R. Co. v. Dep't of Revenue of Wash.,*
   934 F.2d 1064 (9th Cir. 1991) ................................................................................ 2

*Chevron Corp. v. Pennzoil Co.,*
   974 F.2d 1156 (9th Cir. 1992) .............................................................................. 17

*Clarke v. Am. Commerce Nat'l Bank,*
   974 F.2d 127 (9th Cir. 1992) ............................................................................... 13

*Cooling Sys. and Flexibles, Inc. v. Stuart Radiator, Inc.,*
   777 F.2d 485 (9th Cir. 1985) ................................................................................. 4

*Crescent Publ'g Group, Inc. v. Playboy Enters., Inc.,*
   246 F.3d 142 (2nd Cir. 2001) .............................................................................. 24

*Entm't Research Group, Inc. v. Genesis Creative Group, Inc.,*
   122 F.3d 1211 (9th Cir. 1997) ................................................................ 4, 6, 8, 13

*EOS GMBH Electro Optical Sys. v. DTM Corp.,*
   2002 WL 34536678 (C.D. Cal. Mar. 18, 2002) ................................................. 13

*Fantasy, Inc. v. Fogerty,*
   94 F.3d 553 (9th Cir. 1996) ...................................................................... 4, 6, 7, 8

*Ferland v. Conrad Credit Corp.,*
   244 F.3d 1145 (9th Cir. 2001) .............................................................................. 14

*Fogerty v. Fantasy, Inc.*,
   501 U.S. 517 (1994) ................................................................................. passim

*Fox v. Vice*,
   --- S.Ct. ---, 2011 WL 217521 (June 6, 2011) ....................................... 18, 19, 20

*Halicki Films, LLC v. Sanderson Sales and Mktg.*,
   547 F.3d 1213 (9th Cir. 2008) ............................................................. 4, 6, 8

*Hearn v. Rhay*,
   68 F.R.D. 574 (E.D. Wash. 1975) ....................................................... 17

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ........................................................... 6, 12, 15,22, 25

*In re Grand Jury Witness*,
   695 F.2d 359 (9th Cir. 1982) .............................................................. 12

*In re Syncor Erisa Litig.*,
   229 F.R.D. 636 (C.D. Cal. 2005) ...................................................... 18

*Jackson v. Axton*,
   25 F.3d 884 (9th Cir. 1994) ................................................................. 4

*Korbin v. Univ. of Minn.*,
   121 F.3d 408 (8th Cir. 1997) ............................................................... 2

*Lahiri v. Universal Music & Video Distribution Corp.*,
   606 F.3d 1216 (9th Cir. 2010) ........................................................... 16

*Love v. Associated Newspapers, Ltd.*,
   611 F.3d 601 (9th Cir. 2010) .............................................................. 4, 7

*Luna v. Sears Life Ins. Co.*,
   2008 WL 2484596 (S.D. Cal. Jan. 11, 2008) .................................. 17

*Mattel, Inc. v. MGA Entm't, Inc.*,
   616 F.3d 904 (9th Cir. 2010) ............................................................... 7

*Metcalf v. Bochco*,
   200 Fed. Appx. 635 (9th Cir. 2006) ................................................. 7, 8

*MGIC Indem. v. Weisman*,
   803 F.2d 500 (9th Cir. 1986) ............................................................. 13

*Parklane Hosiery, Inc. v. Shore*,
    439 U.S. 322 (1979) ..................................................................................... 9

*Permian Corp. v. U.S.*,
    665 F.2d 1214 (D.C. Cir. 1981) ................................................................. 18

*Real v. Continental Group, Inc.*,
    116 F.R.D. 211 (N.D. Cal. 1986) ................................................. 12, 13, 14

*Riker v. Distillery*,
    2009 WL 2486196 (E.D. Cal. Aug 12, 2009) .......................................... 14

*Sorenson v. Mink*,
    239 F.3d 1140 (9th Cir. 2001) ..................................................... 12, 15, 25

*Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*,
    253 F.3d 1322 (11th Cir. 2001) ................................................................ 24

*Transamerica Computer Co., v. Int'l Bus. Machs. Corp.*,
    573 F.2d 646 (9th Cir. 1978) .................................................................... 18

*Twentieth Century Fox Film Corp. v. Entm't Distrib.*,
    429 F.3d 869 (9th Cir. 2005) ........................................................... passim

*U. S. v. de la Jara*,
    973 F.2d 746 (9th Cir. 1992) .................................................................... 18

*U.S. v. Raddatz*,
    447 U.S. 667 (1980) .................................................................................... 1

*U.S. v. $1,379,879.09 Seized From Bank of Am.*,
    374 F. App'x 709 (9th Cir. 2010) .............................................................. 13

*U.S. v. Shibley*,
    112 F. Supp. 734 (S.D. Cal. 1953) ........................................................... 18

*Venegas v. Mitchell*,
    495 U.S. 82 (1990) ................................................................................... 23

*Video-Cinema Films, Inc. v. Cable New Network, Inc.*,
    2004 WL 213032, at *4-5 (S.D.NY. 2004) ............................................. 23

*Wall Data, Inc. v. Los Angeles County Sheriff's Dep't*,
    447 F.3d 769 (9th Cir. 2006) ...................................................................... 7

MGA'S RESPONSES TO MATTEL'S OBJECTIONS RE
ATTORNEYS' FEES
CV-04-9049 DOC (RNBx)

*Webb v. Sloan*,
  330 F.3d 1158 (9th Cir. 2003)........................................12, 15, 24, 25

*Welch v. Metropolitan Life Ins. Co.*,
  480 F.3d 942 (9th Cir. 2007) ..............................................16

*Yahoo!, Inc. v. Net Games, Inc.*,
  329 F. Supp. 2d 1179 (N.D. Cal. 2004)........................................22, 23

*Yankee Candle Co., Inc. v. Bridgewater Candle Co. LLC*,
  140 F. Supp. 2d 111,122-23 (D. Mass. 2001), *aff'd*, 259 F.3d 25 (1st Cir. 2001) ..............................................12, 15, 25

## STATE CASES

*Fed-Mart Corp. v. Price*,
  111 Cal. App. 3d 215 (1980) ..............................................22

*Reynolds Metal Co. v. Alpeson*,
  25 Cal. 3d 124 (1979) ..............................................22

*West Coast Development v. Reed*,
  2 Cal. App. 4th 693 (1992) ..............................................23

## FEDERAL STATUTES

17 U.S.C. § 505........................................4, 5, 23, 24, 25

28 U.S.C. § 1920 ..............................................24, 25

## STATE STATUTES

Cal. Code Evid. 912(a) ..............................................18

## FEDERAL RULES

Fed. R. Civ. P. 26........................................17, 25

Fed. R. Civ. P. 53(a)(1)(c) ..............................................1

Fed. R. Civ. P. 53(f)..............................................1

Fed. R. Civ. P. 54..............................................24, 25

Fed. R. Civ. P. 54(d)(2)(D)..............................................1

MGA'S RESPONSES TO MATTEL'S OBJECTIONS RE
ATTORNEYS' FEES
CV-04-9049 DOC (RNBx)

Fed. R. Civ. P. 72(b)(3) ................................................................ 1

Fed. R. Evid. 502 ....................................................................... 18

Local Rule 54 .............................................................................. 25

Local Rule 54-3 .......................................................................... 25

Local Rule 54-5 .......................................................................... 25

## CONSTITUTIONAL PROVISIONS

Seventh Amendment ............................................................... 8, 9

1           MGA Entertainment, Inc., MGA Entertainment HK, LTD., and Isaac Larian

2    respectfully submit the following responses to Mattel's objections to the Discovery

3    Master's Report and Recommendation regarding the MGA Parties' Application for

4    Attorneys' Fees, including incorporating all of their prior briefing and argument on

5    each of the issues.

6           1.     The Court must review the portions of the findings and

7    recommendations objected to *de novo*.  The Court ordered the Discovery Master to

8    "conduct an initial review of the attorney billing records submitted by the moving

9    parties and prepare a Report and Recommendation to the Court in connection with

10   that review."  Dkt. No. 10547.  Under Federal Rule 53(f), a master's legal

11   conclusions are reviewed *de novo* (subsection 4), and, unless the parties stipulate

12   otherwise, factual findings are also reviewed *de novo* (subsection 5).  There is no

13   party stipulation regarding the master's review of these billing records.

14   Accordingly, under Rule 53(f), the Court should review any factual and legal

15   conclusions to which there is an objection *de novo*.

16          2.     As stated in paragraph 1, above, the Discovery Master's review of the

17   fees issue was pursuant to the Court's May 9, 2011 order.  Dkt. No. 10547.

18   Accordingly, the parties Stipulation for Appointment of a Discovery Master, which

19   provided that the Discovery Master's reports "shall be treated as ruling made by a

20   Magistrate Judge of the United States District Court," is inapposite.  Dkt. No. 107.

21   Moreover, even if the stipulation applied, the Court would still apply the *de novo*

22   standard to review a Magistrate Judge's findings.  Fed. R. Civ. P. 72(b)(3); Fed. R.

23   Civ. P. 54(d)(2)(D) (the district court "may refer a motion for attorney's fees to a

24   magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter."); *see*

25   *U.S. v. Raddatz*, 447 U.S. 667, 673-74 (1980).

26          3.     Mattel's representation that the Discovery Master was not authorized

27   to make findings of fact and conclusions of law is false.  The authorization came in

28   the Court's May 9, 2011 order, Dkt. No. 10547, pursuant to Rule 53(a)(1)(c).  Any

objection Mattel has to this appointment has been waived.  *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1410 (9th Cir. 1990) (holding that a party waived its objection to the special master's appointment by not filing an objection within a "reasonable time" of the appointment).  The Court ordered MGA to submit information relating to its attorney's fees claims to the Discovery Master nearly two months ago on May 9, 2011.  Dkt. No. 10547.  That Court Order makes clear that the Discovery Master is to review the attorney billing records and prepare a Report and Recommendation based on that review.  *Id.*  Mattel did not raise any objection to the Discovery Master reviewing the billing records and rendering a recommendation on fee awards, including at the four days of hearings held.  Rather, Mattel waited until after the Discovery Master ruled that MGA was entitled to attorney's fees to raise an objection.  In other words, not having substantively persuaded the Discovery Master to adopt its position, Mattel now objects to the Discovery Master's involvement.  By waiting to object until after a report and recommendation was prepared, Mattel waived any objection to the Discovery Master's involvement in the fee determinations.[1]  *Burlington Northern R.R. Co. v. Dep't of Revenue of Wash.*, 934 F.2d 1064, 1069 (9th Cir. 1991); *Korbin v. Univ. of Minn.*, 121 F.3d 408 (8th Cir. 1997) (stating that "where a litigants waits to object to the appointment of a special master until after the special master has filed an unfavorable report, any objections to the appointment of that special master are particularly unpersuasive.").

4.     Mattel's argument in paragraph 4 relates to Machado's recovery of attorney's fees.

5.     Mattel's objection that the Discovery Master did not consider the

---

[1] Since the Court has to conduct its own independent review of MGA's entitlement to an award of attorney's fees, whether Discovery Master exceeded the scope of his engagement is irrelevant and will be rendered moot by the Court's *de novo* determination.  This is particularly true here where Mattel has objected to the entirety of Discovery Master's Report, even those portions where Discovery Master found in favor of Mattel, such as his findings concerning Machado.  *See* Obj. at ¶ 4.

1    factors in *Fogerty v. Fantasy, Inc.*, 501 U.S. 517, 534 n.19 (1994) fails for two

2    reason.  First, the factors referenced in *Fogerty* are not exclusive, but rather

3    exemplary.  *Id.* at 534.  The *Fogerty* Court explained that "[t]here is no precise rule

4    or formula for making these determinations" and referred to the factors in footnote

5    19 as "nonexclusive," emphasizing that "such factors *may* be used to guide courts'

6    discretion, so long as such factors are faithful to the purposes of the Copyright

7    Act . . . ."  *Id.* at 534, 534 n.19.

8         Moreover, to the extent consideration of these nonexclusive factors is

9    relevant, the Discovery Master made the following findings relating to *Fogerty*:

10

11

12

13

14

15

16

17

18

19

20   R&R at 8.  Far from not making any findings, in that single paragraph, the

21   Discovery Master finds that:

22

23

24

25                                                                    *Id.*  These findings

26   are in accord with MGA's showing that it is entitled to an award of attorney's fees

27   under the Copyright Act under *Fogerty* and applicable Ninth Circuit law.  Dkt. Nos.

28   10561 (Copyright Motion), 10588 (Copyright Reply).

6.      In its Objections, Mattel continues to misstate the standard for awarding fees under the Copyright Act.  R&R at ¶ 6.  Mattel's argument that objective unreasonableness is necessary for an attorney's fees award under the Copyright Act is directly contrary to the Ninth Circuit law in *Fogerty* (on remand) and numerous other controlling decisions of the Ninth Circuit since.  From just a few months after *Fogerty* was decided by the Supreme Court in March 1994 to the present, the Ninth Circuit has explicitly and repeatedly recognized that in *Fogerty* the Supreme Court overruled any requirement that a prevailing defendant in a copyright case demonstrate frivolousness or bad faith in order to obtain a fee award.  *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 615 n.11 (9th Cir. 2010) (noting that *Jackson* first recognized *Fogerty* overruling of *Cooling Sys.*); *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1229 (9th Cir. 1997) ("discretion is not cabined by a requirement of culpability on the part of the losing party"); *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 560 (9th Cir. 1996) ("[A] finding of bad faith, frivolous or vexatious conduct is no longer required. . . ."); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1448 (9th Cir. 1994) ("[T]he Supreme Court has overruled *Cooling Systems* . . . . the district court now has greater discretion to award attorney's fees to prevailing defendants. . . ."); *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994) (recognizing that *Fogerty* overruled bad faith/frivolousness requirement of *Cooling Sys. and Flexibles, Inc. v. Stuart Radiator, Inc.*, 777 F.2d 485 (9th Cir. 1985)).

The cases cited by Mattel as purported Ninth Circuit authority in footnote 7 do not support its bold misstatement of the law that "objective unreasonableness is the touchstone for awarding fees under § 505."  Obj. at ¶ 6.  Indeed, in *Halicki Films, LLC v. Sanderson Sales and Mktg.*, 547 F.3d 1213, 1230 (9th Cir. 2008), the Ninth Circuit stated that "[i]n [*Fogerty*], the Supreme Court eliminated the 'dual standard' approach where attorney's fees are awarded to defendants only where claims against it were frivolous or brought in bad faith."  MGA is simply not

1   required to show objective unreasonableness in order to obtain its fees under

2   Section 505, and Mattel's objections based upon this improper assertion must be

3   rejected.

4        Moreover, even if the standard is objective unreasonableness, MGA would be

5   entitled to fees.  Mattel had serious legal problems with its copyright claim.  Four

6   state law tort claims were the basis of Mattel's original claim to ownership of

7   MGA's copyrights:  breach of fiduciary duty, breach of duty of loyalty, intentional

8   interference with contract, and conversion.  By the time the case was submitted to a

9   second jury, three of these four claims had been dismissed as a matter of law as a

10  basis for Mattel's claim of copyright ownership.  Moreover, both the Ninth Circuit

11  and this Court substantially limited the scope of Mattel's copyright claim.  It was

12  apparent from the outset that Mattel was grossly overreaching in seeking to obtain

13  every penny of profit MGA ever earned.

14       Further, Mattel had no objective evidence that the Bratz drawings were made

15  other than in 1998 when Bryant said they were.  Not even Mattel's forensic

16  document examiner could put a date on when the drawings were made.  Rather,

17  Mattel's entire case hinged solely upon its constant and repeated accusation that

18  Bryant and Larian were liars, and nothing else.  The massive effort Mattel

19  undertook to destroy MGA and seek in excess of $1B in damages based on no more

20  than an accusation that Bryant lied and Larian knew about it, with no supporting

21  objective evidence whatsoever, was not only legally but also factually

22  unreasonable.

23       7.    In paragraph 7, Mattel simply refuses to accept that the Discovery

24  Master considered relevant factors and found that they weighed in favor of an

25  award of fees.  R&R at 7-11.  Moreover, contrary to Mattel's repeated contention

26  that there are specific factors that must be resolved in MGA's favor under *Fogerty*

27  to support a fee award, *i.e.* that the claim was asserted for an improper purpose and

28  in bad faith, that is not the law.  The Supreme Court has explained that "'[t]here is

no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.'" R&R at 7 (citing *Fogerty*, 510 U.S. at 534 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983))).  In applying this standard, courts have not required a finding of improper purpose, unreasonableness, or bad faith as necessary for an award of attorney's fees. *Halicki Films, LLC*, 547 F.3d at 1230 ("In [*Fogerty*], the Supreme Court eliminated the 'dual standard' approach where attorney's fees are awarded to defendants only where claims against it were frivolous or brought in bad faith."); *Entm't Research Group, Inc.*, 122 F.3d at 1229 ("discretion is not cabined by a requirement of culpability on the part of the losing party"); *Fantasy*, 94 F.3d at 560 ("[A] finding of bad faith, frivolous or vexatious conduct is no longer required . . . .").  With the specific grounds for each of these findings set forth in MGA's briefing, *see* Dkt. Nos. 10561 (Copyright Motion), 10588 (Copyright Reply), the Discovery Master's finding in his Report that MGA's successful defense furthered the purposes of the Copyright Act is sufficient to support an award of attorney's fees.  R&R at 8.

Mattel's tacked on objection that the jury's finding regarding intentional interference with contract prevents the award of fees appears to be challenging the level of success MGA achieved.  However, the jury's intentional interference finding does not lessen MGA's level of success.  The jury made unequivocal findings regarding ownership.  Against these ownership findings, the jury's intentional interference finding can only be interpreted as being limited to the two-week period of overlapping employment by Carter Bryant.  Moreover, Mattel's intentional interference claim is wholly barred by the jury's statute of limitation findings.  Dkt. No. 10652 at 1 ("Mattel does not dispute that the jury's verdict on the statute of limitations issue (Question 23) undermines the timeliness of Mattel's claim for interference.").  Accordingly, MGA was, in fact, successful on the intentional interference claim, especially as it relates to Mattel's copyright claim.

8.      Mattel's objection regarding the Discovery Master's finding of "similarity" between the instant case and *Fantasy, Inc. v. Fogerty*, 94 F.3d 553 (9th Cir. 1996) boils down to a claim that the cases are not factually identical.  Being factually identical, or even factually similar, is not the touchstone of qualifying under the rationale set forth in *Forgerty*.  Under *Fogerty*, a party that furthers the purpose of the Copyright Act has the right to attorney's fees.  *Fogerty*, 510 U.S. at 527; *Fantasy*, 94 F.3d at 555.  The entire point of *Fogerty* was to reject a formulaic approach to such awards and to instead focus on advancing the purpose of the Copyright Act.  *Fogerty*, 510 U.S. at 534.  This is not limited to parties who can point to factual scenarios identical to *Fogerty*.  *See, e.g., Love*, 611 F.3d at 614-615 (holding that "a district court has the discretion to award 'a reasonable attorneys' fee to the prevailing party'" and upholding award of fees under the facts of that case); *Wall Data, Inc. v. Los Angeles County Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006) (awarding attorney's fees to prevailing plaintiff in software case); *Metcalf v. Bochco*, 200 Fed. Appx. 635, 640 (9th Cir. 2006); *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 883-84 (9th Cir. 2005) (upholding fee award under Copyright Act, including fees for prior appeal and defense of unfair competition and slander claims, based on incorporation of earlier findings); *Fantasy*, 94 F.3d at 555 (explaining that "an award of attorney's fees to a prevailing defendant that furthers the underlying purposes of the Copyright Act is reposed in the sound discretion of the district courts").  Indeed, the Ninth Circuit has already implicitly held that the purposes of the Copyright Act are furthered in this litigation in its order vacating the injunction, stating that "Barbie, the all-American girl, will [thrive on competition]."  *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 918 (9th Cir. 2010).

The Discovery Master did examine the facts of this case against the findings in *Fogerty*.  After a lengthy quote from *Fogerty*, he found that ███████ ████████████████████████████████████████████████  R&R at ¶ 8.  The Discovery

1   Master found the following similarities: ███████████████████

2   █████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████

5   ███████████████████████████████████████  *Id.*  The Discovery

6   Master's analogy to *Fogerty* was to show that MGA's successful defense of the

7   copyright claim ████████████████████████████████████████

8   ██████████████████████████  R&R at 8.

9        9.     Mattel's objection regarding the Seventh Amendment is unpersuasive.

10   On the one hand, Mattel argues that the lack of a finding regarding its motivation in

11   filing suit reflects the Discovery Master's straying from the (nonexclusive) factors

12   cited in *Fogerty*.  Obj. at ¶ 9.  Again, a finding on the motivation for bringing the

13   lawsuit is not necessary to an attorney's fee award under the Copyright Act.  *See*

14   *Halicki Films, LLC*, 547 F.3d at 1230 ("In [*Fogerty*], the Supreme Court eliminated

15   the 'dual standard' approach where attorney's fees are awarded to defendants only

16   where claims against it were frivolous or brought in bad faith."); *Metcalf*, 200 Fed.

17   Appx. at 640 (expressly recognizing discretion under *Fantasy* to award fees without

18   any culpability on the part of the losing party); *Twentieth Century Fox Film Corp.*,

19   429 F.3d at 883-84 (awarding fees to prevailing plaintiff in closely contested work-

20   for-hire ownership case); *Entm't Research Group, Inc.*, 122 F.3d at 1229

21   ("discretion is not cabined by a requirement of culpability on the part of the losing

22   party"); *Fantasy*, 94 F.3d at 556-60 (upholding award of attorney's fees based on

23   the prevailing party's success and the policy objectives of the Copyright Act, even

24   though the district court found that none of the culpability factors—frivolousness,

25   motivation, or objective unreasonableness—weighed against the losing party).

26        On the other hand, Mattel argues that any finding regarding its motivation in

27   filing suit would be a violation of Mattel's Seventh Amendment rights because this

28   issue is also relevant to MGA's antitrust suit.  Obj. at ¶ 9.  Contrary to Mattel's

1   assertion, applying any findings in this court to the antitrust case would be

2   consistent with the Supreme Court's interpretation of the Seventh Amendment in

3   *Parklane Hosiery, Inc. v. Shore*, 439 U.S. 322 (1979).  Obj. at 7 fn.14.  In *Parklane*

4   *Hosiery*, the Supreme Court held that the application of non-mutual offensive

5   collateral estoppel does not violate the Seventh Amendment.   In that case, the

6   Supreme Court was faced with the absolute extreme of estoppel, non-mutual

7   offensive collateral estoppel, and held that application of non-mutual offensive

8   collateral estoppel between an equitable and a legal proceeding was okay under the

9   common law and did not violate the Seventh Amendment. *Id.* at 337.  The question

10  is even easier here, as there is mutuality.  So Mattel's assertion that there would be

11  a Seventh Amendment problem here is simply wrong, even if you assume that this

12  Court makes a finding regarding Mattel's motivation and it is binding in the

13  antitrust case.  5/26/2011 Tr. (Vol. 1) at 23:8-24:21.

14       Moreover, under the Supreme Court's holding in *Parklane Hosiery*, the trial

15  court has wide discretion in determining the fairness concerns of applying estoppel

16  in the second case.  The second case here is the antitrust case.  Mattel's concern is

17  its affirmative defense of good faith.  Mattel bears the burden on that defense.

18  Accordingly, it is Mattel's burden to demonstrate, in the antitrust case, that

19  application of estoppel on this issue is somehow unfair.  After hearing that

20  argument, it will be within the wide discretion of the trial court in that antitrust

21  proceeding, which happens to be this court, to determine whether application of

22  preclusionary principles is fair.  *See* 5/26/2011 Tr. (Vol. 1) at 23:22-24-13, 29:5-

23  30:21.

24       10.    The jury found that Mattel misappropriated MGA's valuable trade

25  secrets in unreleased products and that Mattel's trade secret misappropriation was

26  willful and malicious.  Dkt. No. 10518 at 26.  Mattel nevertheless, renewing its

27  JMOL, argues that the Discovery Master abused his discretion in awarding fees

28  because the "trade secret status of information publicly disclosed at toy fairs is a

- 9 -

novel question" and further "Mattel voluntarily stopped [stealing trade secrets] in 2005."   Obj. at ¶ 10.  These arguments ignore the factors relevant to the determination of fees under CUTSA and ignore the jury's rejection of Mattel's defense of its conduct.  *See 02 Micro Int'l, Inc. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064 (N.D. Cal. 2005) (explaining that the three relevant factors for determining whether attorney's fees should be awarded are: (1) the nature of the conduct; (2) the amount of compensatory damages; and (3) the defendant's financial condition).  By ignoring these factors, Mattel's objections attempt to turn the CUTSA fee shifting provision on its head.  Mattel redefines the nature of conduct at issue, claiming Mattel was just accessing "information publicly disclosed at toy fairs."  (The public disclosure contention was rejected by the jury.) This of course ignores the flagrant nature of Mattel's conduct:

-   Mattel employees affirmatively misrepresented themselves as toy store owners to get information about unreleased products from MGA, as well as many other toy manufacturers;

-   Every Mattel witness asked about this conduct admitted that it was wrongful;

-   The misrepresentations occurred for more than ten years;

-   Members of Mattel's senior management were aware of this conduct and took no steps to stop the conduct;

-   Mattel attempted to keep the conduct covered up, including by making hush payments to the primary employee involved; and

-   Mattel never reprimanded any persons involved in this conduct.

Further, Mattel's characterization of this conduct as presenting a "novel" issue is belied by Mattel's assertion in this case that its own unreleased product lines were protectable trade secrets, *see, e.g.*, Dkt. No. 9182 ("Even if these product names were not protectable in their own right, they are certainly protectable as 'elements' of *unreleased product lines that are, in their entireties, indisputably*

- 10 -

1  *trade secrets*.") (emphasis added), Dkt. No. 7676 ("Mattel's ability to design and

2  develop new products is critical to its success."), and its submission to the jury of

3  its own trade secret claims based upon unreleased product lines.  Dkt. No. 10518 at

4  6, 7.  Moreover, it is not novel to lie about who you are to find out information you

5  should not have – it is just wrong.  Second, the claimed cessation of the conduct

6  prior to a verdict does not change the "nature of the conduct."  Only the most

7  brazen misappropriator would, faced with a lawsuit regarding the misappropriation,

8  continue unabated in its conduct.

9         Moreover, deterrence is necessary.  Evidence was presented at trial that

10  Mattel's conduct began as early as 1992 and had not stopped in 2005, but continued

11  even in 2009, including through the hiring of outside contractors.  3/22/2011 Tr.

12  (Vol. 2) at 50:24-51:7); TX 9566; TX 9869; 4/1/2011 Tr. (Vol. 1) at 115:4-116:1;

13  3/30/2011 Tr. (Vol. 1) at 17:9-20:8; 3/16/2011 Tr. (Vol. 3) at 36:5-37:1; 3/22/2011

14  Tr. (Vol. 2) at 70:10-71:5, 72:8-73:3.  At trial, Mattel executive after Mattel

15  executive denied knowledge of the conduct even after Mattel's legal department,

16  including its General Counsel, were notified of the conduct, showing the company

17  turning a blind eye to the conduct.  3/22/2011 Tr. (Vol. 1) at 29:24-30:16, 35:3-7,

18  58:19-59:23, 129:13-24; 3/29/2011 Tr. (Vol. 2) at 28:9-19, 77:6-12; *see also*

19  3/22/2011 Tr. (Vol. 1.) at 60:4-68:8; 3/29/2011 Tr. (Vol. 2) at 123:3-18.  Mattel

20  attempted to conceal this conduct – not showing a remorseful actor, but a wrong-

21  doer seeking not to get caught.  TX 9266; 3/15/2011 Tr. (Vol. 1) at 52:9-53:4;

22  3/29/2011 Tr. (Vol. 2) at 144:8-16.  Mattel's decision, rather than to discipline the

23  employees involved, to issue vague non-reprimand letters to only two people

24  involved.  TX 25103; TX 25107.  Thus, there is substantial evidence that Mattel's

25  future misconduct would not be deterred by a damage award alone.  The Discovery

26  Master was presented with all of this evidence in making his findings and his

27  Report is wholly supported by this evidence.

28         11.    In paragraph 11, Mattel reiterates its argument that it should be

1  permitted to review work descriptions containing privileged and work product

2  information.  First, Mattel has confirmed that it is challenging neither the

3  reasonableness of the time spent by MGA's attorneys on particular tasks, nor the

4  reasonableness of the billing rates of MGA's attorneys.  5/25/2011 Hearing Tr.

5  (Vol. 4) at 41:4-42:5.  Thus, Mattel's argument that it requires a general description

6  of services performed by an attorney "to substantiate the reasonableness" of MGA's

7  claim for attorney's fees (Obj. at ¶ 11) must fail simply because Mattel has

8  conceded reasonableness.

9        The only remaining issue in dispute regarding the amount of fees is that of

10  apportionment.  Under the Copyright Act, where the claims upon which the

11  prevailing party prevailed are inextricably intertwined, the Court need not apportion

12  amongst the various claims in awarding fees.  *See Hensley*, 461 U.S. at 435;

13  *Twentieth Century Fox Film Corp.,* 429 F.3d at 884; *Webb v. Sloan*, 330 F.3d 1158

14  (9th Cir. 2003); *Sorenson v. Mink,* 239 F.3d 1140, 1147 (9th Cir. 2001); *Yankee*

15  *Candle Co., Inc. v. Bridgewater Candle Co. LLC*, 140 F. Supp. 2d 111,122-23 (D.

16  Mass. 2001), *aff'd*, 259 F.3d 25 (1st Cir. 2001).  The core factual and legal

17  contentions of all of Mattel's claims were that Mattel was the true owner of Bratz

18  and that Mattel should be awarded damages because MGA improperly acquired and

19  exploited something Mattel owned.  Under the Copyright Act, no apportionment of

20  the defense fee is required, and the billing descriptions of MGA's attorneys are not

21  necessary for that purpose either.

22        Further, Mattel's position is contrary to the law.  The Discovery Master's

23  conclusion that MGA's attorney work descriptions are protected by privilege and/or

24  the attorney work product doctrine (R&R at 12) is consistent with clear Ninth

25  Circuit authority that "bills, ledgers, statements, time records and the like which

26  also reveal the nature of the services provided, such as researching particular areas

27  of law, . . . fall within the privilege."  *In re Grand Jury Witness*, 695 F.2d 359, 362

28  (9th Cir. 1982); *Real v. Continental Group, Inc.*, 116 F.R.D. 211, 214 (N.D. Cal.

1   1986).  *See* Dkt. No. 10604 (MGA's Opp. to Mattel's Motion to Compel MGA to

2   Produce Attorney Billing Records Submitted to the Discovery Master Pursuant to

3   the Court's May 9, 2011 Order).  The authorities cited by Mattel in its Objections

4   confirm as much.  Obj. at 8 fn.15; *U.S. v. $1,379,879.09 Seized From Bank of Am.*,

5   374 F. App'x 709, 711 (9th Cir. 2010) (holding that billing "*records should be*

6   *redacted* only to the extent absolutely necessary to protect information covered by

7   the attorney-client privilege or the work-product doctrine") (emphasis added);

8   *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992)

9   ("correspondence, bills, ledgers, statements and time records which also reveal the

10  motive of the client in seeking representation, litigation strategy, or the specific

11  nature of the services provided, such as researching particular areas of law, fall

12  within the privilege"); *MGIC Indem. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986)

13  ("The *court may withhold from MGIC any information it finds protected* by the

14  lawyer-client privilege.") (emphasis added).

15      Mattel also cites *Entertainment Research Group, Inc. v. Genesis Creative*

16  *Group, Inc.*, 122 F.3d 1211 (9th Cir. 1997) and *EOS GMBH Electro Optical Sys. v.*

17  *DTM Corp.,* 2002 WL 34536678 (C.D. Cal. Mar. 18, 2002), but the facts of these

18  cited cases are in stark contrast to the facts here.  In *Entertainment Research*, the

19  party seeking fees did not provide either the district court or the opposing party

20  with its original time records and billing statements.  *Entm't Research Group, Inc.*,

21  122 F.3d at 1213.  Similarly, in *EOS GMBH*, the party seeking fees submitted

22  "merely the names of the attorneys that worked on the matter and the amount of

23  time each attorney spent," and did not provide unredacted versions to the court.

24  *EOS GMBH Electro Optical Sys.,* 2002 WL 34536678, at *4-5.  In contrast, MGA

25  has both provided redacted versions of its original time records and billing

26  statements with matter information to Mattel, and provided unredacted versions to

27  the Discovery Master.

28

MGA'S RESPONSES TO MATTEL'S OBJECTIONS RE
ATTORNEYS' FEES
CV-04-9049 DOC (RNBx)

1    Mattel's statement that if MGA's redactions were proper, then "every post-

2    trial fee application would be considered *in camera*" rings hollow in light of the

3    case law supporting redaction for privilege.  Moreover, it is simply not true that

4    MGA's fee application has been considered solely *in camera*.  MGA has provided

5    to Mattel thousands of pages of invoices submitted with the Schultz declarations,

6    redacted only to preserve privilege.  Dkt. Nos. 10621, 10580.  MGA has

7    extensively briefed the issue and described in detail the fees sought.  Dkt. Nos.

8    10619 (Copyright Motion), 10588 (Copyright Reply), 10618 (CUTSA Motion),

9    10586 (CUTSA Reply).  Mattel has filed oppositions.  Dkt. Nos. 10568 (Copyright

10   Opposition), 10566 (CUTSA Opposition).  The hearing on the issue extended into

11   four days and ten volumes of transcripts.  Dkt. Nos. 10606, 10607, 10608, 10609,

12   10610, 10611, 10612, 10613, 10626, 10627.  Mattel cannot deny that it has had a

13   full and fair opportunity to oppose an award of the fees and costs sought by MGA.

14       Finally, if the Court were to conduct any further inquiry into apportionment,

15   which is the only remaining issue in dispute since Mattel has conceded

16   reasonableness, it should not do so without also ordering production of Mattel's

17   invoices.  The amount that Mattel has spent on this litigation, and specifically on its

18   attorneys, is relevant to its motivation and reasonableness in bringing its claims

19   under the Copyright Act.  The magnitude of the expenditure, if it even approaches

20   the ████████ estimated by analysts, would show that Mattel's objective in

21   bringing claims against MGA was not to vindicate an intellectual property right, but

22   to destroy a competitor.  Mattel's billing records are relevant to the factors a court

23   may consider in awarding fees under the Act.  *See also*, Dkt. Nos. 10574, 10581;

24   *Real*, 116 F.R.D. at 213 (granting the prevailing party's request for the other party's

25   billing records because "I conclude that the hours expended by the defendant on

26   matters pertaining to this case, counsel's hourly rates, as well as total billings and

27   costs, are at least minimally relevant to the plaintiff's fees and costs petition");

28   *Riker v. Distillery*, 2009 WL 2486196, at *1 (E.D. Cal. Aug 12, 2009) ("This court

MGA'S RESPONSES TO MATTEL'S OBJECTIONS RE
ATTORNEYS' FEES
CV-04-9049 DOC (RNBx)

1    finds that defendants' billing records may be relevant to assist the court in

2    determining the reasonableness of plaintiff's request for attorney's fees"); *see also*

3    *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001) (any

4    comparison of the fees expended by the two parties "must carefully control . . . for

5    the possibility that the prevailing party's attorney—who, after all, did prevail—

6    spent more time because she did better work").

7          12.    Paragraph 12 reiterates the same objection as in paragraph 11 above,

8    and MGA incorporates herein its response.  Mattel's statement that other than three

9    statements in the Discovery Master's R&R, it "has no other information to

10   challenge this ███████ award" (Obj. at ¶ 12) is simply false for all the reasons

11   discussed above, including the thousands of pages of invoices produced and

12   redacted only to preserve privilege, the extensive briefing on the Copyright and

13   CUTSA motions, and the four days of hearings on the matter.

14         Also as discussed above, Mattel confirmed that it is challenging neither the

15   reasonableness of the time spent by MGA's attorneys on particular tasks, nor the

16   reasonableness of the billing rates of MGA's attorneys.  5/25/2011 Hearing Tr.

17   (Vol. 4) at 41:4-42:5.  Thus, Mattel's argument that cannot verify whether fees

18   were "unreasonable, duplicative, or even fraudulent" (Obj. at ¶ 12) is moot in light

19   of Mattel's concession of reasonableness.  Mattel's suggestion that the descriptions

20   are necessary for apportionment (Obj. at ¶ 12) must also fail because Mattel's

21   claims all derived from a common core of facts and law.  Accordingly, no

22   apportionment of the defense fee is warranted.  *See Hensley*, 461 U.S. at 435;

23   *Twentieth Century Fox Film Corp.,* 429 F.3d at 84; *Webb*, 330 F.3d 1158;

24   *Sorenson,* 239 F.3d at 1147; *Yankee Candle Co.*, 140 F. Supp. 2d at 122-23. What

25   Mattel is asking for in this paragraph is that MGA be ordered to turn over every

26   single piece of privileged and work product information contained in its attorney's

27   billing records.  Mattel is asking for relief that is grossly out of proportion with the

28

MGA'S RESPONSES TO MATTEL'S OBJECTIONS RE
ATTORNEYS' FEES
CV-04-9049 DOC (RNBx)

1    value of the information sought to the attorney's fees motion, especially since

2    Mattel is not able to demonstrate relevance to any particular issue.

3           With respect to Mattel's argument about block billing, again, this is negated

4    by Mattel's concession that it is not challenging the reasonableness of rates.  It is

5    also not supported by the records produced.  The cases cited by Mattel in footnote

6    16 do not help its cause.  Indeed, in *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d

7    942 (9th Cir. 2007), the court vacated the district court's across-the-board 20

8    percent reduction of hours due to block billing finding that such a high reduction

9    was "well above the range justified" and was clear error.  *Id*. at 948.  Here, the

10   Discovery Master's recommended award is significantly more than a 20 percent

11   reduction of the fees sought by MGA and the reasons for the reduction are

12   articulated in the R&R.  In *Lahiri v. Universal Music & Video Distribution Corp.*,

13   606 F.3d 1216 (9th Cir. 2010), the district court identified particular attorneys and

14   paralegals responsible for block billing and reduced some of their billable hours

15   accordingly.  *Id*. at 1222-1223.  Here, there is not, and cannot be a similar finding

16   with respect to the hours billed by MGA's counsel.  Nevertheless, the Discovery

17   Master has already ████████████████████████████████████████

18   ████████████████████████████████████████████████████████

19   ██████████████████████████████████████████████

20   ███████████████████████████████  R&R at 11.  The Discovery

21   Master could have awarded even greater fees to MGA and would have been fully

22   justified in doing so.  Mattel's objection rings hollow.

23          13.    The Discovery Master considered Mattel's briefing, which includes

24   arguments regarding waiver, and concluded that ████████████████████████

25   ████████████████████████████████████████████████

26   ███████████████████████████████  R&R at 12.  It is simply not the

27   case that the Discovery Master did not address the privilege issue, as Mattel

28   contends in this paragraph.  Obj. at ¶ 13.

1      Implicit in the Discovery Master's finding that the information is protected is

2      the conclusion that MGA has not waived privilege for all of the reasons set forth in

3      its opposition to Mattel's Motion to Compel MGA to Produce Attorney Billing

4      Records.  Dkt. No. 10604.  There has been no express waiver of privilege, nor can

5      Mattel satisfy the test for implied waiver under *Hearn v. Rhay*, 68 F.R.D. 574, 576-

6      77 (E.D. Wash. 1975).  To the extent that Mattel seeks to raise additional arguments

7      in its Objections, such arguments are belated and must fail.

8          Nonetheless, none of the newly cited cases consider the context before the

9      Court here: a post-trial motion for fees by a prevailing defendant who did not

10     initiate the claim and who produced redacted billing records and provided *in*

11     *camera* inspection of privileged and work product content.  In *Chevron Corp. v.*

12     *Pennzoil Co.*, 974 F.2d 1156 (9th Cir. 1992), the court considered whether privilege

13     protected materials disclosed to an outside auditor and materials reflecting tax

14     advice that was the basis for the party's advice of counsel defense.  *Id.* at 1162.

15     Neither consideration exists here.  Further, in an ironic move, Mattel cites as

16     authority a Magistrate Judge's Report and Recommendation on a Motion for

17     Sanctions in *Luna v. Sears Life Insurance Co.*, 2008 WL 2484596 (S.D. Cal. Jan.

18     11, 2008).  Obj. at ¶ 13.  The R&R in *Luna* dealt with a damages claim brought by

19     the plaintiff that includes attorney's fees and discovery into that claim pursuant to

20     Fed. R. Civ. P. 26.  In *Luna* the Magistrate made the unremarkable statement that

21     "the documentation supporting the damages claimed is not privileged."  *Id.*  Here,

22     MGA is not seeking fees as part of a damages claim, instead it is entitled to

23     attorney's fees under statutory provisions.  It would be an incongruous result if

24     prevailing parties under statutory provisions were required to waive privilege in

25     order to recover their fees.

26     14.    In paragraph 14, Mattel raises another entirely new waiver argument.

27     Mattel did not make a waiver argument based on disclosures in the litigation

28     between MGA and O'Melveny in any of its post-trial briefing.  Mattel cannot now

MGA'S RESPONSES TO MATTEL'S OBJECTIONS RE
ATTORNEYS' FEES
CV-04-9049 DOC (RNBx)

1   raise the argument for the first time in its Objections.  This argument has neither

2   been briefed by the parties nor considered by the Discovery Master, and Mattel's

3   belated and after-the-fact attempt to raise it now must fail.

4          Nonetheless, Mattel's reliance on the litigation between MGA and its prior

5   counsel, O'Melveny, is plainly misplaced.  Both MGA and O'Melveny were parties

6   to the attorney-client privilege, indeed, O'Melveny was the author and issuer of

7   bills and MGA was the recipient.  The Skadden records produced in the OMM

8   litigation were produced pursuant to a court order.  Declaration of James R. Rosen,

9   ¶ 4.  MGA's counsel has not produced Orrick fee records in that action.  *Id*. at ¶ 5.

10  Compelled disclosure of privileged material does not constitute a waiver.  Cal.

11  Code Evid. 912(a) (privilege is only waived if disclosure is made "without

12  coercion"); Fed. R. Evid. 502; *U. S. v. de la Jara*, 973 F.2d 746, 749 (9th Cir.

13  1992); *Transamerica Computer Co., v. Int'l Bus. Machines Corp.*, 573 F.2d 646

14  (9th Cir. 1978).

15         On the contrary, in the authority cited by Mattel, *Permian Corp. v. United*

16  *States*, 665 F.2d 1214 (D.C. Cir. 1981), the party claiming privilege had voluntarily

17  disclosed the privileged information to a *third party*, namely the SEC, in order to

18  obtain a benefit in an SEC investigation.  *Id*. at 1216.  No such scenario exists

19  here.[2]  MGA's disclosure of OMM and Skadden billing records was pursuant to a

20  court order, and occurred in an action between MGA and its prior counsel, not a

21  third party.

22         15.    Based upon a recent Supreme Court case relating to civil rights

23  litigation, Mattel attempts to assert a new apportionment standard applies for fee

24  awards under the Copyright Act.   Obj. at ¶ 15.  *Fox v. Vice*, --- S.Ct. ---, 2011 WL

---

25  [2] Likewise, the cases cited in Mattel's footnote are similarly in apropos.  In *United*
26  *States v. Shibley*, 112 F. Supp. 734, 742 (S.D. Cal. 1953), the court held that
    because the attorney had disclosed some information to a third party for the purpose
27  of securing a benefit to the client, that information was not covered by the privilege.
    Like *Permian*, discussed above, the court in *In re Syncor Erisa Litig.*, 229 F.R.D.
28  636, 646 (C.D. Cal. 2005), found waiver based on disclosures to a third party,
    namely the SEC.

MGA'S RESPONSES TO MATTEL'S OBJECTIONS RE
ATTORNEYS' FEES
CV-04-9049 DOC (RNBx)

217521 (June 6, 2011), is a case about civil rights attorney's fees and holds that a prevailing civil rights defendant can only recover attorney's fees for fees that would not have been incurred "but for" frivolous claims. *Id.* at *3. Mattel argues that the same "but for" apportionment standard must be applied to Copyright Act claims because frivolousness is a factor that may be considered under *Fogerty*. Obj. at ¶ 15. Mattel's analogy fails. It compares apples to oranges, as fee awards under the Civil Rights Act are governed by different standards than fees under the Copyright Act.

In civil rights cases, there is a different standard applied for recovery of attorney's fees depending on whether you are the plaintiff or defendant. Plaintiffs can recover fees even if they are not victorious on every claim and can recover any fees that are "related to" the favorable outcome. *Fox*, 2011 WL 217521, at *6. Comparatively, a defendant is *only* entitled to fees for defeating a frivolous claim, and after *Fox*, only for fees that would not have been incurred "but for" the frivolous claim. *Id.* at *19. In contrast, Copyright Act fee awards are not governed by a dual standard. In *Fogerty*, the Supreme Court, specifically found that fee awards for plaintiffs and defendants under the Copyright Act must be awarded using the same standard. 501 U.S. at 534-35.

The Supreme Court's decision in *Fox* does not address, much less overrule, the line of cases, outside of the defendants' fees in the civil rights context, permitting the recovery of all fees for work "related to" fee bearing claims. In fact, the Court in *Fox* left untouched "related to" apportionment standard as it applies to fee awards for civil rights plaintiffs, which allows plaintiffs to recover fees for all work "related to" redressing civil rights violations. *Fox*, 2011 WL 2175211, at *7 fn.3. In declining to apply the "related to" standard to defendants' fee awards, the Court explained that different congressional purposes underlie plaintiff and defendant fee awards under the Civil Rights Act and reasoned that by setting forth different standards for the different parties "the standard for fee allocation in

1  'mixed' cases match the relevant congressional purpose." *Id.*

2        Similarly, differing congressional purposes for copyright fee awards and civil

3  rights fee awards dictate different standards be applied.  The Supreme Court made

4  this explicit finding in *Fogerty*, where the respondent argued that previous Supreme

5  Court precedent regarding awarding attorney's fees in civil rights cases must apply

6  to claims under the Copyright Act because the statutes had virtually identical

7  language.  *Fogerty*, 510 U.S. at 522.  The Court rejected the argument, finding no

8  suggestion in the legislative history that fees under the Copyright Act were intended

9  to be apportioned similarly to civil rights fees, and that "[t]he goals and objectives

10  of the two Acts are likewise not completely similar."  *Id.* at 523, 524.

11        By extension, differing congressional purposes also dictate that different

12  apportionment standards must be applied.  The purpose of awarding fees to

13  successful defendants under the civil rights act is to relieve "the burdens associated

14  with fending off frivolous litigation."  *Fox*, 2011 WL 2175211, at *7; *see also*

15  *Fogerty*, 501 U.S. at 524 (explaining that civil rights fees are intended to "provide

16  incentives for the bringing of meritorious lawsuits").  The purpose of awarding fees

17  to a successful defendant under the Copyright Act is to demarcate the boundaries of

18  copyright law and "to that end, defendants who seek to advance a variety of

19  meritorious copyright defenses should be encouraged to litigate them to the same

20  extent plaintiffs are encouraged to litigated meritorious claims of infringement."

21  *Fogerty*, 501 U.S. at 527.  In other words, the fee award is a reward for helping

22  clarify the boundaries of the Copyright Act.  Accordingly, the purpose underlying

23  the Copyright Act's fee provision would be undercut by the imposition of a "but

24  for" standard for fee recovery, as it would discourage the advancement of "a variety

25  of meritorious copyright defenses."

26        Under long standing authority, MGA, as a copyright litigant who achieved

27  complete success on fee-bearing and non-fee-bearing claims, is entitled to recover

28  all fees for work related to the fee bearing claims.  *See* Dkt. Nos. 10619 (Copyright

1   Motion), 10588 (Copyright Reply).

2          16.    Mattel's assertion that the Discovery Master's determination to award

3   MGA ███████████ is unsupported is incorrect.  The Discovery Master discussed

4   his determination of the applicable standard for more than a page in his report.

5   R&R at 4-5.  First, the Discovery Master made the determination ████████████

6   ███████████████████████████████████████████████████████████████

7   ████  *Id.* at 4.  (MGA disagrees with this determination, as set forth in its motion

8   for attorney's fees under CUTSA (Dkt. No. 10539).)  Then, of the fees incurred

9   █████████████████████████████████████ Discovery Master adopted the theory

10  that, ███████████████████████████████████████████████████████████

11  ███████████████████████████████████████████████████████████

12  ███████████████████████████████████████████████████████████████

13  ████  *Id.* at 5.  Analogizing to plaintiffs bringing civil rights actions, the Discovery

14  Master determined that MGA should be awarded more than ██████████████  *Id.*

15  The Discovery Master found that ███████████████████████████████████

16  ████████████████████████████████████████████████████████████████

17  ███████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████████

19  ███████████████████████████████████████████████████████████  *Id.*

20  Accordingly, the Discovery Master determined that █████████████████████████

21  ████████  This ████ represents a balancing of: ████████████████████

22  ████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████

24  ████████████

25          17.    Mattel summarily concludes that the Discovery Master's calculations

26  of CUTSA fees are incorrect.  However, an award of ████████████ is both fair

27  and reasonable and supported by the record.  MGA, in fact, spent significantly more

28  than that amount in prosecuting its trade secret claims and defending against related

MGA'S RESPONSES TO MATTEL'S OBJECTIONS RE
ATTORNEYS' FEES
CV-04-9049 DOC (RNBx)

1   and overlapping Mattel claims.  MGA is entitled to fees for work reasonably related

2   to its trade secret claims.  *Hensley*, 426 U.S. at 435 (common core of fact or related

3   legal theories); *Reynolds Metal Co. v. Alpeson*, 25 Cal. 3d 124, 129-30 (1979) (no

4   apportionment on "an issue common to both a cause of action in which the fees are

5   proper and one in which they are not allowed."); *Fed-Mart Corp. v. Price*, 111 Cal.

6   App. 3d 215, 227 (1980) (affirming statutory award of fees absent a court

7   determination of the precise number of hours expended where factually intertwined

8   by distinct theories of recovery were asserted and "it would be impractical, if not

9   impossible, to separate the multitude of conjoined activities into compensable or

10  noncompensable time units.").  This is consistent with Discovery Master's rejection

11  of Mattel's argument that MGA is only be entitled to fees from work exclusively on

12  MGA's successful trade secret claims and recognition of the overlay in the trade

13  secret claims.  R&R at 4.

14       The award of ████████ in fees on the trade secret claims would not be a

15  windfall.  Over the course of this litigation, MGA incurred more than ████████

16  in legal fees.  Accordingly, the recovery of ████████ in fees, less than ██ of

17  this total, is not a windfall.  Even combining this ████████ with the ████████

18  recommended by the Discovery Master on the copyright claims leaves MGA short

19  of recover all fees.  Moreover, through this litigation, Mattel was able to do

20  significant harm to MGA and the Bratz brand, including the loss of many MGA

21  jobs.  A fee award of ████████ could not even begin to make this case a

22  "windfall" for MGA.

23       18.    In paragraphs 18 and 19, returns to the issue of reasonableness which it

24  conceded at the hearing, and Mattel shamelessly continues to attempt to exploit █

25  ████████████████████████████████████████████████

26  ████████████████████  Mattel cites no authority for this position,

27  and the law does not support it.  Indeed, both Supreme Court authority and Mattel's

28  own cases are to the contrary.  For example, Mattel cites *Yahoo!, Inc. v. Net Games,*

MGA'S RESPONSES TO MATTEL'S OBJECTIONS RE
ATTORNEYS' FEES
CV-04-9049 DOC (RNBx)

1    *Inc.*, 329 F. Supp. 2d 1179 (N.D. Cal. 2004), for its list of various market factors

2    the court may consider when determining the reasonableness of attorney's fees.

3    Obj. at ¶ 18.   But that case nowhere suggests an attorney fee award is tied to the

4    amount *actually paid* by the client, and instead notes the Supreme Court's holding

5    that "a court's determination of a reasonable attorney fee controls what the losing

6    defendant must pay, not what the prevailing party must pay his lawyer."  *Id.* at 1185

7    (quoting *Venegas v. Mitchell*, 495 U.S. 82, 90 (1990)).   Because it is "the party,

8    rather than the lawyer," who is eligible for fees, a fee award may issue even where

9    a party incurs *no fees* "because they were represented free of charge."  *Venegas*,

10    495 U.S. at 87-88 (citing *Blum v. Stetson*, 465 U.S. 886, 894-95 (1984)).  *See also*

11    *Bond v. Blum*, 317 F.3d 385, 399-400 (4th Cir. 2003) (fees award under 17 U.S.C.

12    §505 proper where organization represented "through in-house or pro bono

13    counsel.").  Similarly, *Video-Cinema Films, Inc. v. Cable New Network, Inc.*, cited

14    by Mattel, holds that a fee award is to be based on fees incurred, not paid.  2004

15    WL 213032, at *4-5 (S.D.NY. 2004).  California law is in accord, finding that fee

16    awards should be based on fees incurred, even if not paid.  *West Coast*

17    *Development v. Reed*, 2 Cal. App. 4th 693, 707 (1992) (rejecting argument that

18    unpaid fees could not be awarded as sanction and holding that "the fact that a fee

19    was not paid is no evidence that it has not been earned and that the client is not

20    obligated to pay it.").  Accordingly, ███████████████████████████████████

21    ████████████████████████

22         Mattel attempts to circumvent the controlling cases by ignoring them and

23    instead citing to an unpublished district court case that limited a fee award to fees

24    actually incurred under the billing agreement. Obj. at ¶ 18.  But that limitation was

25    based on the court's finding that the fee agreement at issue provided the best

26    evidence of what fee amount was *reasonable*, and the controlling circuit authority it

27    relied on made clear that "the actual billing arrangement does not necessarily

28    establish a ceiling on the rate attributed to private counsel under the Copyright

1  Act." *Crescent Publ'g Group, Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 149 (2nd

2  Cir. 2001).  *See also Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d

3  1322 (11th Cir. 2001) (affirming fee award over rate actually paid under fee

4  agreement, because higher rate better reflected prevailing market rate).  Mattel's

5  cases are inapposite and should be disregarded.

6          19.    Based upon the above standard, Mattel's invocation of ███████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████

███  ██████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████

███  ████████████████████████████████████████

███████████████████████████████████████

22          20.    For all the reasons discussed above in paragraphs 5-9 regarding

23  attorney's fees, MGA's request for full costs under the Copyright Act is justified

24  under the relevant standard.  Section 505 is explicit that "full costs" may be

25  recovered in a case under the Copyright Act in addition to attorney's fees.  17

26  U.S.C. § 505.  Ninth Circuit law makes clear that the language "full costs" under

27  Section 505 means exactly that: "full costs."  *Twentieth Century Fox Film Corp.*,

28  429 F.3d at 885.  Thus, a district court may award not only those costs that are

1   automatically taxable but also otherwise non-taxable costs incurred by the

2   prevailing party.  The categories of taxable costs routinely awarded to prevailing

3   parties are detailed in 28 U.S.C. § 1920 and Local Rule 54-5.  *See also* Fed. R. Civ.

4   P. 54; *Twentieth Century Fox Film Corp.*, 429 F.3d at 885 ("we hold that district

5   courts may award otherwise non-taxable costs, including those that lie outside the

6   scope of § 1920, under § 505").  As MGA is entitled to "full costs" under the

7   Copyright Act, its application for fees and costs includes both taxable costs and

8   non-taxable costs.[3]  For all the same reasons that MGA is entitled to attorney's fees,

9   MGA is similarly entitled to these full costs incurred as the prevailing party in a

10  copyright case.

11         21.     Contrary to Mattel's argument in paragraph 21, apportionment is not

12  required for costs incurred on related claims any more than it is required with

13  respect to attorney's fees.  Dkt. No. 10619 at 14-15; *Hensley*, 461 U.S. at 435;

14  *Twentieth Century Fox Film Corp.,* 429 F.3d at 84; *Webb*, 330 F.3d 1158;

15  *Sorenson,* 239 F.3d at 1147; *Yankee Candle Co.*, 140 F. Supp. 2d at 122-23.

16  Further, for costs taxable under Federal Rule of Civil Procedure 54, Local Rule 54

17  and in 28 U.S.C. § 1920, apportionment is not required.

18         Moreover, unlike the attorney's fee invoices, the invoices that MGA has

19  provided reflecting costs generally contain less privileged or work product

20  information and, accordingly, they were redacted very sparingly or not at all.  *See*

21  Declarations of Stephen Schultz, Dkt. Nos. 10621, 10580.  The only exception to

22  this is the invoices for expert witnesses, which were redacted pursuant Fed. R. Civ.

23  P. 26 and the parties' agreement throughout this litigation that communications

24  with experts are not discoverable.  Fed. R. Civ. P. 26(B), (C), (D) (protecting expert

25  draft reports and communications from disclosure); Dkt. No. 8463.

26  _____
    [3] Pursuant to Local Rule 54-3, "[w]ithin fifteen (15) days after the entry of
27  judgment, the party entitled to costs shall electronically file a Notice of Application
    to the Clerk to Tax costs and shall attach a proposed Bill of Costs."  MGA intends
28  to follow this procedure with respect to any taxable costs to which it is entitled that
    are not awarded under Section 505 of the Copyright Act or CUTSA.cp,

MGA'S RESPONSES TO MATTEL'S OBJECTIONS RE
ATTORNEYS' FEES
CV-04-9049 DOC (RNBx)

1    Finally, Mattel's argument that MGA is somehow getting another bite at the

2  apple is contrary to the facts.  MGA filed and served on Mattel the invoices

3  reflecting its costs with the declarations of Stephen Schultz.  Dkt. Nos. 10621,

4  10580.  Thus, all the evidence has been submitted and served.  The highlighted

5  binders and totals requested in the May 9, 2011 Order pertained only to "attorney

6  billing records" reflecting "attorneys' fees" with tasks highlighted and total

7  amounts generated by timekeeper.  Dkt. No. 10547.  The Order did not cover costs,

8  nor would this procedure specified in the Order make sense in the context of an

9  invoice for cost, which is not organized by timekeeper and task.  That the

10  Discovery Master has now requested a different procedure to assist with the review

11  of the invoices already submitted does not equate to any failure of proof on the part

12  of MGA.

13  Dated: June 29, 2011                    Respectfully submitted,

14                                          ORRICK, HERRINGTON & SUTCLIFFE LLP

15

16                                          By:_____
                                                    WILLIAM A. MOLINSKI
17                                          Attorneys for MGA ENTERTAINMENT, INC.,
                                            MGA ENTERTAINMENT HK, LTD., MGA de
18                                          MEXICO, S.R.L. de C.V., and ISAAC LARIAN

19

20

21

22

23

24

25

26

27

28