1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     William C. Price (Bar No. 108542)
3    (williamprice@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
4    (michaelzeller@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:   (213) 443-3100

7  Attorneys for Mattel, Inc. and Mattel de
   Mexico, S.A. de C.V.
8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                 SOUTHERN DIVISION

12  MATTEL, INC., a Delaware           CASE NO. CV 04-9049 DOC (RNBx)
    corporation, et al.,
13                                     Consolidated with
                                       Case No. CV 04-09059
14              Plaintiff,             Case No. CV 05-02727

15     vs.                            Hon. David O. Carter

16                                    **MATTEL, INC.'S REPLY IN
                                      SUPPORT OF OBJECTIONS TO
17  MGA ENTERTAINMENT, INC., a        THE DISCOVERY MASTER
    California corporation, et al.,    REPORT AND
18                                    RECOMMENDATION RE
                                      APPLICATION FOR ATTORNEYS'
19              Defendant.            FEES BY (1) MR. MACHADO AND
                                      (2) MGA**
20  AND CONSOLIDATED ACTIONS
                                      Hearing Date:      TBD
21                                    Time:              TBD
                                      Place:             TBD
22

23                                    Discovery Cutoff:       October 4, 2010
                                      Pre-trial Conference:   January 4, 2010
24                                    Trial:                  January 11, 2011

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>Cases</u>

<u>Berkla v. Corel Corp.</u>,
   302 F.3d 909 (9th Cir. 2002)................................................................. 7

<u>Borunda v. Richmond</u>,
   885 F.2d 1384 (9th Cir. 1988)............................................................ 14

<u>Christiansburg Garment Co. v. E.E.O.C</u>,
   434 U.S. 412 (1978) .................................................................... 14, 15

<u>Clarke v. Am. Commerce Nat'l Bank</u>,
   974 F.2d 127 (9th Cir. 1992)................................................................. 9

<u>Mattel, Inc. v. Walking Mtn. Prods., Inc.</u>,
   353 F.3d 792 (9th Cir. 2003)................................................................. 3

<u>Crescent Publ'g Group v. Playboy Enters., Inc.</u>,
   246 F.3d 142 (2d Cir. 2001).............................................................. 18

<u>Entm't Research Group, Inc. v. Genesis Creative Group, Inc.</u>,
   122 F.3d 1211 (9th Cir. 1997)........................................................... 14

<u>Ets-Hokin v. Skyy Spirits, Inc.</u>,
   323 F.3d 763 (9th Cir. 2003)................................................................. 3

<u>ExperExchange, Inc. v. Doculex, Inc.</u>,
   2010 WL 1881484 (N.D. Cal. May 10, 2010) .............................. 18, 19

<u>FLIR Sys., Inc. v. Panfish</u>,
   174 Cal. App. 4th 1270 (2009)............................................................. 2

<u>Fantasy, Inc. v. Fogerty</u>,
   94 F.3d 553 (9th Cir. 1996).............................................................. 3, 7

<u>In re First Alliance Mortg. Co.</u>,
   2003 WL 21530096 (C.D. Cal. June 16, 2003) ................................... 8

<u>Fluck v. Blevins</u>,
   969 F. Supp. 1231 (D. Or. 1997).......................................................... 2

<u>Fogerty v. Fantasy, Inc.</u>,
   510 U.S. 517 (1994) ......................................................... 2, 3, 5, 7, 16

<u>Fogerty v. MGM Group Holdings Corp., Inc.</u>,
   379 F.3d 348 (6th Cir. 2004)................................................................. 4

-i-

Fox v. Vice,
    131 S. Ct. 2205 (2011) ....................................................................... 14, 15, 16, 18

Gilbert v. New Line Productions, Inc.,
    2010 WL 5790688 (C.D. Cal. Dec. 6, 2010) ..................................................... 18

Halicki Films, LLC v. Sanderson Sales and Marketing,
    547 F.3d 1213 (9th Cir. 2008) .......................................................................... 3

Harris v. Maricopa County Superior Court,
    631 F.3d 963 (9th Cir. 2011) .......................................................................... 15

Hensley v. Eckerhart,
    461 U.S. 424 (1983) ........................................................................................ 14

Hyland v. Wonder,
    972 F.2d 1129 (9th Cir. 1992) ........................................................................ 16

InvesSys, Inc. v. McGraw-Hill Companies, Ltd.,
    369 F.3d 16 (1st Cir. 2004) ............................................................................ 19

Jackson v. Sturkie,
    255 F. Supp. 2d 1096 (N.D. Cal. 2003) ............................................................ 3

Kentucky v. Graham,
    473 U.S. 159 (1985) ........................................................................................ 15

Lahiri v. Universal Music & Video Distribution Corp.,
    606 F.3d 1216 (9th Cir. 2010) ........................................................................ 19

Lucky Break Wishbone Corp. v. Sears, Roebuck and Co.,
    2009 WL 86491 (W.D. Wash. Jan. 9, 2009) ................................................... 19

Magnuson v. Video Yesteryear,
    85 F.3d 1424 (9th Cir. 1996) ............................................................................ 2

Maljack Productions, Inc. v. GoodTimes Home Video Corp.,
    81 F.3d 881 (9th Cir. 1996) .............................................................................. 2

Matthew Bender & Co., Inc. v. West Pub. Co.,
    240 F.3d 116 (2d Cir. 2001) ............................................................................. 4

MGIC Indem. v. Weisman,
    803 F.2d 500 (9th Cir. 1986) .......................................................................... 10

MiTek Holdings, Inc. v. Arce Engineering Co., Inc.,
    198 F.3d 840 (11th Cir. 1999) .................................................................... 4, 16

1
Moreno v. City of Sacramento,
2      534 F.3d 1106 (9th Cir. 2008) ................................................................ 17

3
Newman v. Piggie Park Enterprises, Inc.,
       390 U.S. 400 (1968) ................................................................................. 15
4

5
Palmer v. Sanderson,
       9 F.3d 1433 (9th Cir. 1993) ...................................................................... 3
6

7
Parklane Hosiery, Inc. v. Shore,
       439 U.S. 322 (1979) ................................................................................... 8
8
People v. Ledesma,
       39 Cal. 4th 641 (2006) ............................................................................. 11
9

10
People v. Morris,
       20 Cal. App. 3d 659 (1971) ..................................................................... 12

11
Perfect 10, Inc. v. CCBill LLC,
       488 F.3d 1102 (9th Cir. 2007) .................................................................. 3
12

13
Permian Corp. v. United States,
       665 F.2d 1214 (D.C. Cir. 1981) .............................................................. 12
14

15
Riverside v. Rivera,
       477 U.S. 561 (1986) ................................................................................. 15

16
Smith v. Jackson,
       84 F.3d 1213 (9th Cir. 1996) .................................................................... 8
17

18
Symantec Corp. v. Logical Plus, Inc., C 06-7963 SI,
       2010 WL 2330388 (N.D. Cal. June 4, 2010) ........................................... 2
19

20
In re Syncor Erisa Litigation,
       229 F.R.D. 636 (C.D. Cal. 2005) ............................................................ 12

21
In re Toyota Motor Corp.,
       2010 WL 3260180 (C.D.Cal. August 13, 2010) .................................. 2, 9
22

23
Twentieth Century Fox Film Corp. v. Entertainment Distrib.,
       429 F.3d 869 (9th Cir. 2005) ................................................................... 18
24

25
UMG Recordings, Inc. v. Veoh Networks Inc., CV07-5744AHM(AJWX),
       2010 WL 1407316 (C.D. Cal. Apr. 6, 2010) ............................................ 3

26
U.S. v. Shibley,
       112 F. Supp. 734 (S.D. Cal. 1953) .......................................................... 12
27

28

United States v. Amlani,
    169 F.3d 1189 (9th Cir. 1999)...........................................................................10

Video-Cinema Films, Inc. v. Cable News Network, Inc.,
    2004 WL 213032 (S.D.N.Y. 2004) ...................................................................18

Waits v. Frito-Lay,
    978 F.2d 1093 (9th Cir. 1992)............................................................................8

Wall Data Inc. v. Los Angeles County Sheriff's Dept.,
    447 F.3d 769 (9th Cir. 2006)............................................................................19

Wellpoint Health Networks, Inc. v. Superior Court,
    59 Cal. App. 4th 110 (1997).............................................................................12

Yahoo!, Inc. v. Net Games, Inc.,
    329 F. Supp. 2d 1179 (N.D. Cal. 2004) ...........................................................18

**Statutes**

Cal. Evid. Code § 919(b) ...........................................................................................13

Cal. Evid. Code § 958.........................................................................................11, 12

Fed. R. Evid. 201 .........................................................................................................2

Fed. R. Evid. 502(c)...........................................................................................13, 14

Mattel respectfully submits this reply in support of its objections to the June 20, 2011 Discovery Master Report and Recommendation regarding MGA's and Machado's applications for attorney's fees.  As before, Mattel incorporates its prior briefing and arguments on each of these issues.

1, 2.  MGA agrees that the Court's review is *de novo*.

3.  MGA argues the Discovery Master was authorized to make findings of fact and conclusions of law pursuant to the court's May 9, 2011 Order, but that Order only stated that the Discovery Master would assist with "calculation of reasonable attorneys' fees" through his "review of voluminous attorney billing records," and the Order specified he would do so only "to the extent such fees are deemed recoverable."  Dkt. 10547 at 1.  The Discovery Master was not appointed to evaluate the threshold issue of entitlement to attorneys' fees, which was briefed and argued to the Court largely out of the presence of the Discovery Master, who also was not present for trial.  The Discovery Master was not authorized to issue the Report on these issues, and contrary to MGA's arguments Mattel did not waive any objection in this regard.  Mattel had no reason to believe—based on the plain language of the Order—that the Discovery Master would make recommendations regarding MGA's entitlement to fees at all (including the rejection of the Fogerty factors) or interpret  the law applicable to apportionment.  Moreover, the Discovery Master has now hired, as his partner, the prior District Judge assigned to this case, which creates an appearance of impropriety (at a minimum) and further renders the Discovery Master's unauthorized ruling on this matter improper.[1]  In any case, even

---

[1]  See Press Release, Former Federal District Judge Stephen G. Larson Joins Arent Fox's Los Angeles Office, http://www.arentfox.com/newsroom/index.cfm?fa=pressReleaseDisp& content_id=3204 (last visited July 3, 2011); Drew Combs, The AmLaw Daily, Former Federal Judge Joins Arent Fox, http://amlawdaily.typepad.com/amlawdaily/ 2011/06/larsonmove.html (last visited July 3, 2011).  Mattel requests that the Court take judicial notice of the facts disclosed in these articles, which are capable of accurate and ready determination by
  (footnote continued)

1  to the extent the Discovery Master's review was authorized, it is entitled to no
2  deference as the parties have agreed.  See Obj. 1 and 2, *supra*.

3      4.  Mr. Machado's request for fees should be denied for the reasons that were
4  briefed and argued to the Court.  Furthermore, although MGA purports to argue that
5  the Discovery Master's Report and Recommendation was authorized, neither Mr.
6  Machado nor MGA has challenged or contested the Discovery Master's
7  recommendation that the Court deny Machado's fee application in its entirety or
8  attempted to answer Mattel's arguments in support of that recommendation.  Under
9  MGA's own position, by failing to object to the Discovery Master's Report in the
10  time frame ordered by the Court,[2] Machado has waived any challenge to it.  "Failure
11  to meet this deadline results in permanent waiver of any objection to the Special
12  Masters' specific order, finding, report, or recommendation."  In re Toyota Motor
13  Corp. 2010 WL 3260180, *3 (C.D.Cal. August 13, 2010).  As Mattel has shown,
14  there is no evidence that Mattel's claims against Machado were objectively specious
15  and pursued in bad faith, which is required.  FLIR Sys., Inc. v. Panfish, 174 Cal.
16  App. 4th 1270, 1275 (2009).  The Court should deny Machado's motion for fees.

17      5.  MGA argues that consideration of the Fogerty factors, see Fogerty v.
18  Fantasy, Inc., 510 U.S. 517, 534 n. 19 (1994), is discretionary, Dkt. 10667 at 2-3,
19  but fails to acknowledge substantial Ninth Circuit authority instructing courts to
20  apply these factors and even vacating a district court order regarding fees for failure
21  to consider and apply the Fogerty factors.  See Magnuson v. Video Yesteryear, 85
22  F.3d 1424, 1432 (9th Cir. 1996).[3]  Nor does MGA address the Ninth Circuit cases

23  ───────────────

24  resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid.
25  201.
   [2]  See Order dated June 20, 2011 (Dkt. 10638).
26     [3]  See also Maljack Productions, Inc. v. GoodTimes Home Video Corp., 81 F.3d
27  881, 889 (9th Cir. 1996) (stating that courts "should consider" the Fogerty factors,
among other things: the degree of success obtained on the claim; frivolousness;
28  motivation; objective reasonableness of factual and legal arguments; and need for
   (footnote continued)

1  affirming denial of fee awards after weighing of the <u>Fogerty</u> factors.[4]

2  MGA's exclusive reliance on <u>Fantasy, Inc. v. Fogerty</u>, 94 F.3d 553 (9th Cir.

3  1996), is misplaced because MGA's own argument for equating this case with

4  Fogerty (and ignoring the very factors Fogerty articulates) the five reasons

5  purportedly supporting its fee award are so abstract and detached from the facts of

6  <u>Fogerty</u> that they are meaningless, and they also are factually wrong.  1) MGA

7  argues that it is entitled to fees because it is the prevailing party.  Dkt. 10667 at 3.

8  Supreme Court precedent forecloses this argument.  <u>Fogerty v. Fantasy, Inc.</u>, 510

9  U.S. 517, 533 (1994) (rejecting argument that § 505 adopted the "British Rule");

10  <u>Ets-Hokin v. Skyy Spirits, Inc.</u>, 323 F.3d 763, 766 (9th Cir. 2003) (affirming denial

11  of fees after noting that "[t]he only factor to weigh in Skyy's favor is the degree of

12  success obtained").  2) MGA argues that it prevailed on the merits, Dkt. 10667 at 3,

13  yet fails to address that it prevailed on an issue of state contract law, not on grounds

14  that implicate the fundamental policies of the Copyright Act.[5]  3) MGA argues that

15  "MGA's success secured public access to the original works contained in the Bratz

16

17  _____

18  compensation and deterrence"); <u>Symantec Corp. v. Logical Plus, Inc.</u>, C 06-7963 SI, 2010 WL 2330388, at *3 (N.D. Cal. June 4, 2010) (similar); <u>UMG Recordings, Inc.</u>

19  <u>v. Veoh Networks Inc.</u>, CV07-5744 AHM(AJWx), 2010 WL 1407316, at *1 (C.D. Cal. Apr. 6, 2010) (similar); <u>Jackson v. Sturkie</u>, 255 F. Supp. 2d 1096, 1104 (N.D.

20  Cal. 2003) (similar).  To the extent <u>Magnuson</u>'s reversal of a fee order for failure to consider the factors conflicts with <u>Fantasy, Inc. v. Fogerty</u>, 94 F.3d 553 (9th Cir.

21  1996), <u>Manguson</u> controls because it was decided earlier.  <u>Palmer v. Sanderson</u>, 9 F.3d 1433, 1437 n. 5 (9th Cir. 1993); <u>see also</u> <u>Fluck v. Blevins</u>, 969 F. Supp. 1231,

22  1236 (D. Or. 1997) ("When two Ninth Circuit panel decisions conflict, the trial court ordinarily follows the older case.").

23

24  [4]  <u>Smith v. Jackson</u>, 84 F.3d 1213, 1221 (9th Cir. 1996); <u>Ets-Hokin v. Skyy Spirits, Inc.</u>, 323 F.3d 763, 766 (9th Cir. 2003); <u>Perfect 10, Inc. v. CCBill LLC</u>, 488

25  F.3d 1102, 1120 (9th Cir. 2007); <u>Halicki Films, LLC v. Sanderson Sales and Marketing</u>, 547 F.3d 1213, 1231 (9th Cir. 2008).

26  [5]  <u>Compare</u> <u>Mattel, Inc. v. Walking Mtn. Prods., Inc.</u>, 353 F.3d 792, 803 (9th Cir. 2003) ("By developing and transforming associations with Mattel's Barbie doll,

27  Forsythe has created the sort of social criticism and parodic speech protected by the First Amendment and promoted by the Copyright Act.").

28

line" (Dkt. 10667 at 3), but offers no response to Mattel's showing that, in fact, this lawsuit revolved around which company would provide Bratz to the public, not whether it would be provided at all.  4) MGA argues that its "success created the opportunity for future original creations of ethnically diverse fashion dolls," but Mattel claimed that it owned Bryant's Bratz designs, not the abstract idea of ethnically diverse fashion dolls.  5) MGA argues that "an award of fees will not deter Mattel from asserting claims under the Copyright Act" (Dkt. 10667 at 3), but there is no factual basis for that finding and, moreover, the Discovery Master improperly focused on Mattel's ostensible wealth rather than whether a substantial fee award can be expected to chill the assertion of objective reasonable but ultimately unsuccessful copyright claims, which the proposed award here clearly would.[6]

6.   MGA continues to err in its effort to minimize the importance of the "objective unreasonableness" factor.  Neither MGA nor the Discovery Master has addressed the authorities holding that "the imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act."  Matthew Bender & Co., Inc. v. West Pub. Co., 240 F.3d 116, 122 (2d Cir. 2001); see also Fogerty v. MGM Group Holdings Corp., Inc., 379 F.3d 348, 357 (6th Cir. 2004) (citing Matthew Bender and vacating award of attorneys' fees as abuse of discretion because the unsuccessful copyright claim was objectively reasonable).  That *bad faith* is not required, as MGA repeatedly asserts, does not mean that *objective unreasonableness* is not

---

[6]   MiTek Holdings, Inc. v. Arce Engineering Co., Inc., 198 F.3d 840, 842-843 (11th Cir. 1999) ("[W]e have found no case affirming a grant of attorney's fees based solely on an economic disparity between the prevailing and losing parties. . . . . Thus, in determining whether to award attorney's fees under § 505, the district court should consider not whether the losing party can afford to pay the fees but whether imposition of fees will further the goals of the Copyright Act.") (citing Lotus Dev. Corp. v. Borland Int'l Inc., 140 F.3d 70, 75 (1st Cir. 1998)).

1  critical; that <u>Fogerty</u> recites this factor shows that it is, as does the Supreme Court's

2  rejection of a bad faith standard in favor of an unreasonableness one in other

3  contexts.[7]

4       The objective reasonableness of Mattel's copyright claim was established by

5  the Ninth Circuit's opinion and Mattel's success through two rounds of summary

6  judgment briefing and the Phase 1 trial and equitable relief.  MGA argues that

7  Mattel had "serious legal problems" with its copyright claim, but that is not the

8  standard for fee shifting.  That some non-copyright claims were dismissed before

9  the second trial is irrelevant to the merits of the copyright claim.

10      MGA repeats its prior assertion that Mattel had "no objective evidence" that

11  Bryant created Bratz "other than in 1998".  Dkt. 10667 at 5.  This perplexing

12  assertion simply ignores the fact that the first jury explicitly found otherwise, and

13  that the second jury's verdict is not necessarily inconsistent with that finding.[8]

14  Mattel introduced substantial evidence that Bratz was created while Bryant was

15  employed at Mattel, including evidence that the first Bratz drawings appeared on

16  pages of a 1999 notebook used by Bryant for his work for Mattel.[9]  Although these

17

18  _____

19  [7]  <u>Christiansburg Garment Co. v. E.E.O.C</u>, 434 U.S. 412, 421 (1978) ("[A]
    district court may in its discretion award attorneys' fees to a prevailing defendant in
20  a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable,
    or without foundation, even though not brought in subjective bad faith.").
21  [8]  Phase 1A Final Verdict Form As Given (7/17/08) (Dkt. 4125).
    [9]  2/3/11 Trial Tr. (Cunningham) Vol. 2 at 61:14-63:1 (confirming TX 5-39 and
22  5-42 were removed from the black notebook, TX 1155C and that TX 5-40 and 5-41
    have the same paper characteristics as that seen in TX 1155C); 2/2/11 Trial Tr.
23  (Bryant) Vol. 1 at 117:18-118:22 (admitting his first Bratz drawings, TX 5-39, 5-40,
    5-41, and 5-42, were torn out of a notebook); 1/28/11 Trial Tr. (Bryant) Vol. 1 at
24  51:17-54-9 (Bryant compares bank statement at Trial Exhibit 13649 to page 57 of
    notebook and admits that this page of the notebook was written in 1999); 2/3/11
25  Trial Tr. (Bryant) Vol. 1 at 88:18-21 (Bryant recalls calculations in black notebook
    that were taken from his 1999 bank statements); 1/28/11 Trial Tr. (Bryant) Vol. 1 at
26  36:23-43:15 (Bryant confirmed working on a Jewel project during his second stint at
27  Mattel; TX 10756, 1155-C-027, and 13657 are Jewel drawings); 1/28/11 Trial Tr.
28     (footnote continued)

Bratz drawings were removed from the notebook before they were provided to Mattel, forensic examination revealed that they in fact came from the 1999 notebook.[10]   Upon learning of this, Bryant admitted that the first drawings were torn out of a notebook, but that he doesn't know which one.[11]   Indeed, Bryant himself admitted he created numerous Bratz drawings while he was working at Mattel. These included the pitch packet,[12] the formal wear drawings,[13] and the other colored Bratz drawings.[14]   MGA also admitted in other actions that "[t]he designs of the BRATZ dolls were originally created by Mr. Carter Bryant in 1999,"[15] and many of Bryant's drawings bore 1999 dates.[16]   Bryant testified in separate litigation that he did not do any design work while in Missouri in 1998.[17]   Larian wrote in an email that Bryant had a roommate, Richard Irmen, who saw Bryant designing Bratz, and that roommate lived with Bryant only in California while Bryant worked for Mattel, not in Missouri.[18]   There was ample evidence to support Mattel's claim of ownership and infringement.

      7.    In addition to objective unreasonableness, the Discovery Master did not consider whether frivolousness, motivation, and considerations of compensation and

---

(Bryant) Vol. 1 at 54:10-56:2 (Bryant testimony re 1155C-87 (note from his brother) and fact that he was in Missouri for Thanksgiving and Christmas 1999).

   [10]   1/28/11 Trial Tr. (Bryant) Vol. 1 at 66:17-68:2 (stating that he tore original drawings at 00179, 00180, 00181, and 00182 out of "some notebook"); 2/3/11 Trial Tr. (Cunningham) Vol. 2 at 86:14-92:25 (Cunningham states positively that 5-39 and 5-42 were originally in 1155C and were torn out).

   [11]   1/28/11 Trial Tr. (Bryant) Vol. 1 at 66:17-68:2.

   [12]   TX 1, 2, 3, 302; 1/28/11 Trial Tr. (Bryant) Vol. 1 at 13:14-18:15; 2/3/11 Trial Tr. (Bryant) Vol. 2 at 32:8-34:6.

   [13]   2/1/11 Trial Tr. (Bryant) Vol. 1 at 78:9-86:5.

   [14]   TX 323, 1107, 1108, 1109, 1110, 1125; 2/1/11 Trial Tr. (Bryant) Vol. 1 at 99:21-100:2; 2/2/11 Trial Tr. (Bryant) Vol. 2 at 42:12-18; 2/3/11 Trial Tr. (Bryant) Vol. 2 at 32:8-34:6.

   [15]   TX 10175-31.

   [16]   See, e.g., TX 1327, 1328, 777.

   [17]   3/30/11 Trial Tr. (Thomas) Vol. 2 at 31:14-32:8.

   [18]   TX 9855.

00505.07975/4232471.16

1   deterrence weigh against an award of fees under § 505, and MGA does not argue

2   otherwise.  MGA barely responds  to Mattel's arguments that there is no evidence of

3   bad faith motivation, that MGA has substantial financial resources, that MGA

4   prevailed on a fact-specific issue of state contract law, that consumer choice would

5   not have been limited because Mattel would have made and distributed Bratz, or that

6   a nine-figure fee award would substantially chill the assertion of objectively

7   reasonable copyright infringement claims.  That the jury found Mattel's intentional

8   interference claim time barred does not alter its conclusion that MGA and Larian

9   engaged in a "highly questionable business practice," and indeed intentional

10  wrongdoing directed at Mattel and relating to Bryant.  Berkla v. Corel Corp., 302

11  F.3d 909, 923 (9th Cir. 2002).

12      8.  The Discovery Master cites no authority supporting MGA's entitlement to

13  copyright fees other than Fantasy, Inc. v. Fogerty, 94 F.3d 553, 557 (9th Cir. 1996).

14  MGA argues that the Discovery Master's eight-figure award is justified even if

15  Mattel's copyright claims is not "factually identical, or even factually similar" to

16  Fogerty, Dkt. 10667 at 7, but Fogerty itself recognized the critical relevance of the

17  facts of that case.  Fantasy, 94 F.3d at 560 ("copyright claims do not always involve

18  defendant authors, let alone defendant authors accused of plagiarizing themselves,

19  and do not always implicate the ultimate interests of copyright . . . .").

20      9.  By bringing a new antitrust case in January 2011 alleging, among other

21  things, that Mattel sought to litigate Bratz out of business by pursuing "baseless

22  litigation remedies," MGA has created a jury right as to the issues in that case unless

23  and until that case is dismissed or otherwise resolved.[19]  It offers no substantive

24  response to Mattel's showing that it has a right to have all issues raised in the

25  antitrust case decided by the jury, with those jury findings being binding on the

26  _____

27  [19]   Complaint in MGA Entertainment, Inc. v. Mattel, Inc., et al, Case No. CV 11-
    01063, Dkt. No. 1 at ¶53(m).

28

1   Court sitting in equity.  MGA argues that a finding of bad faith motivation is not

2   "necessary" to support a fee award, but that is only because of MGA's manipulation

3   of the standard,  and certainly  should not deprive Mattel of a favorable jury finding

4   in the antitrust case that specifically addresses  the <u>Fogerty</u> factors and would be

5   binding on the Court.   <u>Smith v. Jackson</u>, 84 F.3d 1213, 1221 (9th Cir. 1996)

6   (affirming denial of fees based in part on determination that copyright claim was not

7   brought in bad faith).[20]

8        10.   MGA argues that the novel trade secret status of information publicly

9   disclosed at toy fairs "ignore[s] the factors relevant to the determination of fees

10  under CUTSA."  Dkt. 10667 at 10.   But the first factor that MGA itself identifies in

11  the test for fees is the "nature of the conduct," <u>id.</u>;  the fact that it was unclear at the

12  time of the misappropriation whether Mattel's conduct violated CUTSA given the

13  nature of toy fairs is highly material under established law.  MGA claims that its

14  trade secret claim is not novel because Mattel asserted that "its own unreleased

15  product lines were protectable trade secrets," Dkt. 10667 at 10, but Mattel was

16  referring to genuinely unreleased products—not products that were being advertised

17  to retailers and through the press to the public at toy fairs.[21]   Just as punitive

18  damages are not appropriate in cases of first impression, neither are attorneys' when

19  entitlement is based on the losing defendant's culpability.[22]  Mattel has previously

20  addressed at length MGA's erroneous allegations that Mattel used false

21  identification to access competitors' toy fair show rooms through 2009 and turned a

22

---

23    [20]   As Mattel has shown previously, MGA's reliance on <u>Parklane Hosiery, Inc. v.</u>
<u>Shore</u>, 439 U.S. 322 (1979) is misplaced because there was no suggestion there, as

24  here, that the plaintiff had split its claim.  MGA has taken inconsistent positions
regarding whether the Court's findings will have collateral estoppel effect in the

25  antitrust case, but regardless of the answer to that question, Mattel has a jury right
and a right to have the jury's findings control here.

26    [21]   Dkt. 9183 at 67.

27    [22]   <u>In re First Alliance Mortg. Co.</u>, 2003 WL 21530096, at * 10-11 (C.D. Cal.
June 16, 2003) (citing <u>Waits v. Frito-Lay</u>, 978 F.2d 1093, 1104 (9th Cir. 1992)).

28

blind eye to the misconduct.  Dkt. 10566 at 6-10.  MGA simply ignores Mattel's showing that MGA had actual knowledge of Villasenor's misconduct for years and attempted to hire him, and fails to answer at all the argument that the jury's substantial compensatory damages award more than adequately deters future misconduct.  None of these facts were considered by the Discovery Master and all weigh against an award of fees.

11, 12.  Mattel is entitled to review and challenge the evidence supporting the Discovery Master's nine-figure fee award.  MGA's position that Mattel does not need to see the work descriptions because it has made a blanket waiver of all reasonableness objections is false; the issue is not the hourly rate, but what work is being billed.  Mattel has not conceded that MGA can be reimbursed for time spent on illegitimate tasks or for time entries that are duplicative, unnecessary, or fraudulent.  5/25/2011 Hearing Tr. (Vol. 4) at 41:4-42:5.  Moreover, MGA's argument fails in any case because Mattel needs to see the billing records to challenge apportionment even putting reasonableness to the side.

A description of the general nature of services performed by an attorney, as required to substantiate the reasonableness of a statutory claim for attorneys' fees, is not privileged.  Clarke v. Am. Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992).  None of the cases cited by MGA endorses MGA's proposed *ex parte* procedure.  They stand at most for the proposition that specific portions of work descriptions can be redacted for privilege provided enough information remains to meaningfully assess and challenge the award—which is not the case here.  MGIC Indem. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986).

MGA has waived its renewed demand for production of Mattel's bills by failing to object to the Discovery Master's Report in the time allotted by the Court.  In re Toyota Motor Corp. 2010 WL 3260180, *3 (C.D.Cal. August 13, 2010).  Moreover, that demand, which has nothing to do with the reasonableness or apportionment of MGA's bills, should be rejected for all the reasons previously

1  explained by Mattel, Dkt. 10584; Dkt. 10591, and recognized by the Court,  5/25/11

2  Hearing Tr. (Vol. 1) at 11:4-9.

3      MGA's claim that the billing descriptions are unnecessary because Mattel's

4  claims are all related is wrong because the "but for" apportionment standard applies

5  (as discussed below).   And even assuming the "related" standard applies,  MGA

6  does not even attempt to explain how claims related to Brawer, Castilla, Cooney,

7  Contreras, Brisbois, Machado, Trueba, Vargas, Cabrera, Morales and Salazar,

8  among others, could be "related" to the Bratz copyright claim for purposes of

9  apportionment.  MGA cites no authority supporting the Discovery Master's holding

10  that MGA's block billing is a basis for depriving Mattel of access to MGA's bills.

11  The information available to Mattel is inadequate to enable Mattel to meaningfully

12  challenge the apportionment specifically or the copyright fee award generally, and

13  MGA makes no showing to the contrary.

14      13.   Contrary to MGA's argument that the Discovery Master must have

15  implicitly considered it, the Discovery Master failed to address Mattel's implied

16  waiver argument entirely.  MGA argues that Mattel's cases don't apply because they

17  involve attorneys' fees sought as an element of damages rather than pursuant to a

18  fee shifting statute.  This is a distinction without a difference.  MGA has put its

19  claimed attorneys' fees at issue by the affirmative act of seeking to recover fees.

20  MGA fails to explain why it would be "incongruous" to require the disclosure of

21  evidence supporting its affirmative claim for a nine-figure fee award.  United States

22  v. Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999).

23      14.   MGA does not dispute that it disclosed the O'Melveny and Skadden

24  invoices in the O'Melveny litigation, but argues the "compelled disclosure" of its

25  billing records in one case does not waive the privilege in another.  MGA fails to

26  disclose, however, that it was ordered to produce its invoices because, the state court

27

28

found, it *had already waived privilege* as to the documents at issue.[23]   The state

court's order did not compel disclosure of privileged documents; it ordered

production of documents over which MGA no longer has any legitimate claim of

privilege.

Indeed, the documents at issue are not considered privileged in the first place.

Cal. Evid. Code § 958 ("There is no privilege under this article as to a

communication relevant to an issue of breach, by the lawyer or by the client, of a

duty arising out of the lawyer-client relationship."); see also People v. Ledesma, 39

Cal.4th 641 (2006) ("Statute providing there is no attorney-client privilege as to

communication relevant to issue of breach, by lawyer or by client, of duty arising

out of attorney-client relationship, establishes an exception to the privilege, not a

waiver.").   Given the allegations of malpractice, non-payment of fees, and

overbilling in the O'Melveny litigation, and MGA's expansive damages claims

against O'Melveny based on every negative outcome during the course of the

litigation, all of O'Melveny's, Skadden's, and Orrick's bills are relevant to an issue

of breach arising out of the lawyer-client relationship.   Thus the documents are not

privileged.   People v. Morris, 20 Cal. App. 3d 659, 663 (1971) (disapproved of on

other grounds) (exception to privilege under Cal. Evid. Code § 958 applies in later

proceedings against third parties).

Moreover, any privilege that did apply has been waived.   The state court

correctly found that MGA impliedly waived the privilege by putting its billing

---

[23]   5/3/11 Order Denying MGA's Motion to Quash Subpoenas and Related
Joinders and Certain Insurer's Motions for Protective Order at 6-7 ("MGA has
impliedly waived the attorney-client privilege and work product with respect to the
materials addressed in Section 1.A.3. above (all bills and invoices sent by MGA to
the Responding Insurers that reflect fees and costs incurred by MGA from all
lawyers and law firms (not just O'Melveny), and all audits, reviews, or analyses of
those bills and invoices) . . . ."), attached as Exhibit 1 to the Declaration of B. Dylan
Proctor ("Proctor Dec."), dated July 7, 2011 and filed concurrently herewith.

1   records at issue in the O'Melveny litigation.[24]   Thus, the affirmative act of MGA in

2   asserting its claims against O'Melveny operated as a waiver of privilege before the

3   Order in question even issued.   Wellpoint Health Networks, Inc. v. Superior Court,

4   59 Cal. App. 4th 110, 128 (1997) ("As our Supreme Court has held, waiver is

5   established by a showing that 'the client has put the otherwise privileged

6   communication directly at issue and that disclosure is essential for a fair

7   adjudication of the action.   California law is to the same effect as federal law in this

8   area, although it is not judge-made.'").   The implied waiver extends to all MGA's

9   bills related to this litigation.   Having waived privilege and work product protections

10   by bringing a suit in one forum, MGA may not simultaneously attempt to claim the

11   benefit of such protections in another.   Permian Corp. v. United States, 665 F.2d

12   1214, 1221 (D.C. Cir. 1981) ("The client cannot be permitted to pick and choose

13   among his opponents, waiving the privilege for some and resurrecting the claim of

14   confidentiality to obstruct others, or to invoke the privilege as to communications

15   whose confidentiality he has already compromised for his own benefit."); In re

16   Syncor Erisa Litigation, 229 F.R.D. 636, 646 (C.D. Cal. 2005) ("'[O]nce a party has

17   disclosed work product to an adversary, it has waived work product protection as to

18   all other adversaries."); U.S. v. Shibley, 112 F.Supp. 734, 742 (S.D. Cal. 1953)

19   ("[W]hen the client and attorney themselves, for purposes beneficial to the client,

20   lift the veil, they cannot lower it again.").

21        Finally, even putting aside the implied waiver and the state court's express

22   finding of waiver, MGA cannot shield the documents it produced in state court

23   under Federal Rule of Evidence 502(c), which provides that "[w]hen the disclosure

24   is made in a State proceeding and is not the subject of a State-court order concerning

---

26   [24]   See 5/23/11 Order, Proctor Dec. Exh. 1, at 6-7; see also O'Melveny & Myers's

27   Opposition to MGA Entertainment, Inc.'s Motion to Quash Subpoenas and Request for Attorneys Fees and/or Sanctions, dated March 9, 2011, Proctor Dec. Exh. 2, at 8-9.

waiver, the disclosure does not operate as a waiver in a Federal proceeding if the disclosure: (1) would not be a waiver under this rule if it had been made in a Federal proceeding; or (2) is not a waiver under the law of the State where the disclosure occurred."  Neither of these elements is satisfied, meaning that  the disclosure does operate as a waiver in this case.  First, the disclosure would be "a waiver under this rule if it had been made in a Federal proceeding," <u>Fed. R. Evid.</u> 502(c).  MGA does not claim that its production of unredacted billing records in the state court litigation was subject to an order that there would be no waiver.  The absence of a no-waiver provision would result in a waiver as to other cases in federal court under <u>Rule 502(d)</u>, which provides "[a] Federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court— in which event the disclosure is also not a waiver in any other Federal or State proceeding."  Second, MGA also has not shown that the disclosure "is not a waiver under the law of the State where the disclosure occurred." <u>Fed. R. Evid.</u> 502(c). The order pursuant to which the documents were produced articulated precisely why a waiver *did* occur under California law.  Moreover, under the California Evidence Code, a disclosure of privileged information has been "coerced," such that there is no waiver, where "a person authorized to claim the privilege claimed it, whether in the same or a prior proceeding, but nevertheless disclosure ***erroneously*** was required by the presiding officer to be made". <u>Cal. Evid. Code</u> § 919(b) (emphasis added) (providing that in cases of erroneous compelled disclosures, "neither the failure to refuse to disclose nor the failure to seek review of the order of the presiding officer requiring disclosure indicates consent to the disclosure or constitutes a waiver and, under these circumstances, the disclosure is one made under coercion.").  MGA has not shown, or even argued, that the order compelling it to produce its invoices was erroneous.  MGA thus cannot show that the disclosure "is not a waiver under the law of the State where the disclosure occurred," <u>Fed. R.</u>

Evid. 502(c), and under Rule 502 MGA's production of allegedly privileged documents to O'Melveny, its adversary, vitiates its claims of privilege.

15. _Fox v. Vice, 131 S. Ct. 2205 (2011)._  Neither <u>Fogerty</u> nor any other Supreme Court case has held that the "related" apportionment standard applies to awards of attorneys' fees under the Copyright Act.  When previously confronted with the apportionment issue in the copyright context, the Ninth Circuit borrowed the "related" apportionment standard applicable to prevailing civil rights plaintiffs because, at the time, that was the only apportionment standard endorsed by the Supreme Court. <u>Entm't Research Group, Inc. v. Genesis Creative Group, Inc.</u>, 122 F.3d 1211, 1230 (9th Cir. 1997) (citing <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434-35 (1983)).  <u>Fox</u> changed the landscape, and it requires a different result here.

Courts apply a "dual standard" to fee awards under Section 1988.  A prevailing civil rights plaintiff is entitled to fees "as a matter of course." <u>Hensley</u>, 461 U.S. at 429 (a prevailing civil rights plaintiff "'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"); <u>Borunda v. Richmond</u>, 885 F.2d 1384, 1392 (9th Cir. 1988) ("'The presumption in favor of an award of fees to prevailing plaintiffs in private attorney general lawsuits is, in fact, so strong that a denial of fees on the basis of 'special circumstances' is extremely rare.'") (citation omitted).  A prevailing civil rights defendant can recover fees if the plaintiff's claims are "frivolous, unreasonable, or without foundation," although bad faith is not required. <u>Christiansburg Garment Co. v. EEOC</u>, 434 U.S. 412, 421 (1978).  <u>Hensley</u> established a "related" apportionment standard for fee awards to a prevailing civil rights plaintiff.  461 U.S. at 435-36.  <u>Fox</u> adopted the "but for" apportionment standard for awards to prevailing civil rights defendants. 131 S. Ct. at 2215 & n.3.

This differing treatment was justified, the Court explained, by the different purposes of fee shifting for civil rights plaintiffs and defendants:

When a plaintiff succeeds in remedying a civil rights violation, we have stated, he serves "as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority." Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402 (1968) (per curiam). He therefore "should ordinarily recover an attorney's fee" from the defendant—the party whose misconduct created the need for legal action. Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 416 (1978) (internal quotation marks omitted). Fee shifting in such a case at once reimburses a plaintiff for "what it cos[t][him] to vindicate [civil] rights," Riverside v. Rivera, 477 U.S. 561, 577-78 (1986) (internal quotation marks omitted), and holds to account "a violator of federal law," Christiansburg, 434 U.S. at 418.

In Christiansburg, we held that § 1988 also authorizes a fee award to a prevailing defendant, but under a different standard reflecting the "quite different equitable considerations" at stake. Id. at 419. In enacting § 1988, we stated, Congress sought "to protect defendants from burdensome litigation having no legal or factual basis." Id. at 420. Accordingly, § 1988 authorizes a district court to award attorney's fees to a defendant "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." Id. at 421; see also Kentucky v. Graham, 473 U.S. 159, 165, n. 9 (1985).

Fox, 131 S. Ct. at 2213.

These different equitable considerations in favor of fee shifting, the Court explained, not only require a more stringent entitlement standard for fee shifting, but also a different apportionment standard. Two apportionment standards have now been endorsed by the Supreme Court—the "related" standard (for civil rights plaintiffs) and the "but for" standard (for civil rights defendants). The "related" apportionment standard serves the purpose of "reimburs[ing] a plaintiff" who acts "as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority." Fox, 131 S. Ct. at 2213. The "related" standard is thus appropriate when the success of the claim, standing alone, necessarily vindicates an important federal policy, id.; when the claim's success means that the defendant is, by definition, "a transgressor of federal law," Harris v. Maricopa County Superior Court, 631 F.3d 963, 972 n.1 (9th Cir. 2011); and when the burden imposed by the fee award does not implicate strong countervailing policy considerations, Fox, 131 S. Ct. at 2213-14.

1   In contrast, the "but for" apportionment standard is appropriate when the fee
2   entitlement standard implicates competing policy considerations.  A prevailing civil
3   rights defendant must prove that the unsuccessful claim was "frivolous,
4   unreasonable, or without foundation," reflecting a congressional policy that
5   prevailing civil rights defendants should only be protected "from burdensome
6   litigation" where the losing party "acted wrongly in leveling [] allegations." Fox,
7   131 S. Ct. at 2214.

8   The "but for" standard matches the purpose behind § 505.  When enacting §
9   505, Congress sought to relieve defendants of the financial burden of objectively
10  unreasonable copyright infringement suits—not all infringement suits. Mitek
11  Holdings, 198 F.3d at 842-43.  As with § 1988 defendants, § 505 strikes a balance
12  between relieving a defendant of the burden of objectively unreasonable copyright
13  claims while simultaneously avoiding a situation where the pursuit of legitimate
14  claims would be chilled by "more expansive fee-shifting that would furnish
15  windfalls to some defendants." Fox, 131 S. Ct. at 2215.  The Fogerty factors for
16  copyright fee shifting are comparable to the factors guiding civil rights defense fee
17  shifting. Compare Fogerty, 510 U.S. at 535 n.19 (approving the following factors to
18  guide the court's determination of attorney's fees: "frivolousness, motivation,
19  objective unreasonableness (both in the factual and in the legal components of the
20  case) and the need in particular circumstances to advance considerations of
21  compensation and deterrence"), with Hyland v. Wonder, 972 F.2d 1129, 1143 (9th
22  Cir. 1992) ("frivolous, unreasonable, or without foundation, even though not
23  brought in subjective bad faith").  The automatic award of fees to prevailing civil
24  rights plaintiffs, which engendered the "related" apportionment test, is completely
25  different.  The factors identified by the Supreme Court in favor of the "but for"
26  apportionment standard, including the need to avoid a windfall for a defendant when
27  the same work would have been done even if the fee shifting claim were never filed
28  in the first place, wholly apply here.

MGA is only entitled to fees it would not have incurred but for Mattel's assertion of the Bratz copyright claim.  In light of MGA's own statements as to the relatedness of Mattel's claims, MGA has not demonstrated that there are any such fees.  Accordingly, the claim for copyright fees should be rejected entirely.[25]

16, 17.   The Discovery Master failed to justify his award to MGA 60% of its fees under CUTSA when MGA only had a 23% "success rate" on its trade secret claim, and failed to explain whether he applied the 60% factor to fees incurred in prosecuting all of MGA's affirmative claims (including unrelated claims that MGA lost, abandoned, or asserted before August 2010) or only its trade secret claim.  Cf. Moreno v. City of Sacramento, 534 F.3d 1106, 1116 (9th Cir. 2008).  MGA's argument that the ruling is supported by analogizing to civil rights claims assumes that MGA is similarly situated to a civil rights plaintiff, which it is not.

MGA requested a total of $6,846,272 in fees allegedly incurred in pursuing its affirmative claims.  Schultz Decl. at ¶ 16.  The Discovery Master awarded MGA $23,433,164.  Report at 13.  MGA states that it "spent significantly more than that amount in prosecuting its trade secret claims *and defending against related and overlapping Mattel* claims," Dkt. 10776 at 21 (emphasis added), but that is irrelevant to its claim for fees on MGA's CUTSA claim.

18, 19.   The fees actually paid by MGA—reflecting discounts, write-offs, and collection experience—represent the true billing arrangement with counsel, which is highly probative if not dispositive of the reasonableness of the requested fees.

---

[25]   Even assuming the "related" apportionment standard applies, Mattel has already demonstrated that only its Bratz trade secret claim is sufficiently related to its copyright claim to be eligible for fees under the Copyright Act.  Unlike the Bratz common law claims, which relate to MGA's interference with the legal and contractual relationships between Bryant and Mattel, only the Bratz copyright and trade secret claims relate to the copying or misappropriation of tangible or intangible Bratz works owned by Mattel.  Nor are Mattel's non-Bratz claims related to the actions of Brawer, Castilla, Cooney, Contreras, Brisbois, Machado, Trueba, Vargas, Cabrera, Morales and Salazar "related" to the Bratz copyright claim.

1  Crescent Publ'g Group v. Playboy Enters., Inc., 246 F.3d 142, 151 (2d Cir. 2001);

2  Yahoo!, Inc. v. Net Games, Inc., 329 F. Supp. 2d 1179, 1192 (N.D. Cal. 2004).

3  Awarding MGA fees in excess of what MGA actually paid its counsel will result in

4  a windfall.   Video-Cinema Films, Inc. v. Cable News Network, Inc., 2004 WL

5  213032, at *4-5 (S.D.N.Y. 2004).   The Supreme Court confirmed, in Fox, that

6  windfall fee awards are prohibited.   Fox, 131 S. Ct. at 2215 (section 1988 was

7  "never intended to produce windfalls").   Ms. Hurst represented that "MGA has

8  indicated that it will not pay Orrick and has no plan to do so at the present time."[26]

9  Reimbursing MGA for fees that MGA has admitted (at least to its lawyers, if not to

10  the Court) it will not pay would result in a windfall.   Mr. Larian's vague declaration

11  that "MGA remains committed to paying appropriate fees and expenses" begs the

12  question of what fees MGA believes are "appropriate" (Dkt. 10631-1), and does not

13  meet MGA's burden of substantiating its fee request.[27]

14       20, 21.  Even under Twentieth Century Fox Film Corp. v. Ent'mt Distrib., 429

15  F.3d 869, 885 (9th Cir. 2005) (noting circuit split), MGA has failed to carry its

16  burden of demonstrating that its requested fees are reasonable, necessary to the

17  litigation, and correctly apportioned.   ExperExchange, Inc. v. Doculex, Inc., 2010

18  WL 1881484, at *11 (N.D. Cal. May 10, 2010); Gilbert v. New Line Prods., Inc.,

19  2010 WL 5790688, at *6 (C.D. Cal. Dec. 6, 2010).   The Court can and should refuse

20  to award fees for expert witnesses who were unnecessary because they did not

21  testify at trial.   Lucky Break Wishbone Corp. v. Sears, Roebuck and Co., 2009 WL

22  86491, at *2 (W.D. Wash. Jan. 9, 2009).   Similarly, unreasonable travel expenses,

23

24

25  [26]   See Dkt. 10615-1 at 13-17 (Declaration of Annette Hurst in Support of Orrick's Motion to Withdraw as Counsel in Belair v. MGA Entertainment, Inc., No.

26  09-CV-8870 (S.D.N.Y.), at ¶ 6).

27  [27]   MGA's reliance on the supplemental Shultz declaration is inappropriate because Mattel has never seen the contents of that document, and Mattel renews its

28  motion to compel its production.  Dkt. 10634.

1  such as "valet parking," "banquets," and other exorbitant hotel charges, should be
2  excluded.  ExperExchange, 2010 WL 1881484, *12.

3      Even with unredacted *in camera* records, the Discovery Master did not award
4  any costs because MGA "did not segregate the costs in separate binders or
5  summarize the amount sought by type, vendor, or period."  Report at 11.  Like
6  MGA's fee records, Mattel cannot meaningfully challenge MGA's cost records with
7  specificity because the vast majority of work descriptions are fully redacted.  Mattel
8  is entitled to receive copies of all unredacted materials submitted to the Discovery
9  Master so it can challenge the reasonableness and apportionment of the costs
10 awarded.

11     Moreover, MGA has made *no* effort to apportion costs associated with the
12 copyright claim, so it has not carried its burden of proving entitlement to costs.[28]
13 See 5/5/11 Schultz Dec. at ¶ 19-74.  For the reasons previously discussed, every
14 penny expended by MGA in costs is not somehow "related" to Mattel's copyright
15 claim.  Denial of fees and costs is appropriate given the complete redaction of work
16 descriptions and MGA's failure to submit evidence to meet its burden in seeking fee
17 shifting.  Lahiri v. Universal Music & Video Distrib. Corp., 606 F.3d 1216, 1223
18 (9th Cir. 2010).  Nor should the Court consider the 50 additional cost applications
19 that MGA submitted *after* the Discovery Master issued his Report.[29]  Dkt. 10672.
20 All evidence submitted to the Discovery Master after the May 12, 2011 deadline,
21 including but not limited to the supplemental materials ordered by the Discovery

23 [28]  InvesSys, Inc. v. McGraw-Hill Companies, Ltd., 369 F.3d 16, 24 (1st Cir.
24 2004); Wall Data Inc. v. Los Angeles County Sheriff's Dept., 447 F.3d 769, 776
   (9th Cir. 2006) (affirming the district court's limited award of only $38,000 out of
25 the nearly $150,000 in § 505 costs sought by party).
   [29]  All evidence supporting MGA's applications for fees and costs that post-date
26 May 12, 2011 (the date by which they were ordered submitted) should not be
27 considered because they were untimely, or at a minimum Mattel should be given
   access to the evidence that forms the basis for the Discovery Master's $108 million
28 award.  See Dkt. 10547.

1   Master and the materials submitted after his Report was issued, should be struck as
2   untimely and not considered.  Dkt. 10547.

3

4   DATED:  July 8, 2011                  QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP
5

6
                                          By  _Susan R. Estrich_____
7
                                              Susan R. Estrich
8                                             Attorney for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28