ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: 415-773-5700
Facsimile: 415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: 213-629-2020
Facsimile: 213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant. | Case No. CV 04-9049 DOC (RNBx)<br>Consolidated with Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**MGA PARTIES' OPPOSITION TO MATTEL'S APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782 COMPELLING ISSUANCE OF SUBPOENAS FOR THE TAKING OF TESTIMONY FOR USE IN A FOREIGN PROCEEDING PURSUANT TO LETTER ROGATORY** |
| AND CONSOLIDATED ACTIONS | Date: TBD<br>Time: TBD<br>Dept: Courtroom 9D<br><br>Trial Date: January 18, 2011<br>Judge: Hon. David O. Carter |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................... 1

STATEMENT OF FACTS ........................................................................ 2

    A.   Mattel's Mexican Criminal Prosecution ............................... 2

    B.   The Instant Letters Rogatory ................................................. 5

    C.   The Prior Section 1782 Application ...................................... 7

    D.   Changes In Circumstances Since The Letters Were Sought By Mattel .................................................................................... 8

ARGUMENT ........................................................................................ 10

I.     THE COURT SHOULD DENY MATTEL'S § 1782 APPLICATION ....... 10

    A.   Mattel's Application Is Barred By Res Judicata ................. 11

    B.   Particularly In Light Of Its Long Delay And Intervening Events, Mattel Has Again Failed To Demonstrate That The Mexican Court Is Receptive To Assistance ......................................... 11

    C.   Mattel is Attempting To Circumvent Other Policies And Procedures In Mexico And The United States ....................... 12

    D.   Mattel's Request Is Unduly Intrusive and Burdensome ..... 14

    E.   Mattel's Request For Testimony In The Existing Prosecution Is Pretextual, As Mattel Intends To Continue Seeking Criminal Charges Against Larian And Makabi in Mexico ................... 17

    F.   Special Circumstances Of The Litigation Between These Parties Further Require Denial of Mattel's Request ........................ 18

CONCLUSION ..................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Four Pillars Enters. v. Avery Dennison Corp.*,
    308 F.3d 1075 (9th Cir. 2002) ................................................................ 10, 11, 13

*In re Application of Digitechnic*,
    2007 WL 1367697 (W.D. Wash May 8, 2007) ..................................... 11, 15, 16

*In re Application of Fischer Advanced Composite Components AG*,
    2008 WL 5210839 (W.D. Wash Dec. 11, 2008) ............................ 11, 14, 15, 18

*In re Application of Peter Damien Marino*,
    2009 WL 482649 (N.D. Cal. Feb. 25, 2009) .................................................. 10, 11

*In re Premises Located at 840 140th Ave NE*,
    634 F.3d 557 (9th Cir. 2011) ............................................................................ 10

*In re the Republic of Ecuador*,
    2011 WL 736868 (N.D. Cal. Feb. 22, 2011) .................................................... 10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ..................................................................................... 10, 12

## FEDERAL STATUTES

28 U.S.C. § 1782 ............................................................................................ *passim*

## RULES

Fed. R. App. Proc. 4(a) ..................................................................................... 8

## OTHER AUTHORITIES

Article 20 of the Constitution of Mexico ............................................................ 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# INTRODUCTION

While Mattel represented to this Court that it "seeks to bring closure to this matter after six years at two trials" (Dkt. No. 10537 at 1), Mattel's application for an order granting it leave to serve deposition subpoenas on Isaac Larian, Jahanghir Makabi, Thomas Park, and Daphne Gronich, in connection with Mattel's criminal prosecution of Gustavo Machado and Mariana Trueba in Mexico, demonstrates that Mattel is not yet done needlessly harassing Mr. Larian and MGA's employees.  The Court should not entertain Mattel's application for six reasons.  First, Mattel has already requested that this Court provide the Mexican proceeding with testimony on the topics at issue in the letters rogatory.  The Court's denial of that motion, coupled with Mattel's failure to appeal the order, presents a bar to this request for the same information.  Second, Mattel has failed to demonstrate that the Mexican court (as opposed to Mattel, the prosecutor) is receptive to the assistance it is claiming.  This is particularly true when one considers Mattel's year-long delay in seeking leave and the intervening jury verdict in favor of Larian and MGA are considered.  Third, the application should be denied because Mattel is using the application to avoid the jury outcome in this case and the restrictions on evidence gathering under Mexican law.  Fourth, Mattel's request that the Court grant it leave to ask each of these individuals more than 450 broad questions is overbroad and unduly burdensome on its face.  Given seven years of litigation, there is no reason why Mattel should be granted leave to take weeks of additional deposition testimony.  Fifth, Mattel's request is pretextual.  After losing its misappropriation claim in this Court, Mattel is seeking to gather sound bites that it will, as the prosecutor, present to a Court in Mexico to have new claims filed against Larian and Makabi.  This Court has previously cautioned Mattel against using evidence gathered in this case for such a purpose, but here Mattel explicitly seeks to use this proceeding, accompanied by some fancy footwork, to do just that.  Finally, the Court should recognize Mattel's request for exactly what it is – Mattel's continued

gamesmanship. Mattel filed this application, a year after the letters issued in Mexico, and just as the Court is ready to issue judgment, as a way to harass Larian and MGA and gain any leverage it possibly can in the face of the jury's $88 million verdict and MGA's request for punitive damages and attorneys' fees. The time for blunderbuss discovery has come and gone. Mattel's application is nothing more than a ploy to continue its harassment of Larian and MGA and, accordingly, should be denied.

## STATEMENT OF FACTS

### A.     Mattel's Mexican Criminal Prosecution.

As the Court is well aware, Mattel's criminal Mexican proceedings involving Gustavo Machado and Mariana Trueba has a long history. MGA de Mexico recruited Gustavo Machado, Mariana Trueba, and Pablo Vargas, who were employees of Mattel Servicios, to become MGA de Mexico employees in April 2004. TX 3617, 3618, and 6437. As part of those negotiations, Isaac Larian told Machado, Trueba, and Vargas to bring "only your brain" to MGA de Mexico. Dkt. No. 9868 (2/10/11 Tr. (Vol. 3) at 47:2-11). Furthermore, the three were given explicit instructions in writing not to bring any documents relating to their employment at Mattel Servicios with them to MGA de Mexico. Dkt. No. 10031 (2/17/11 Tr. (Vol. 4) at 11:9-25), Dkt. No. 10031 (2/18/11 Tr. (Vol. 4) at 11:9-19), TX 6793. Nevertheless, prior to leaving Mattel Servicios, documents were downloaded.

Mattel found out almost immediately, but did not contact any of these three former employees, nor did Mattel contact MGA de Mexico. Rather, Mattel filed its lawsuit against Carter Bryant in the United States, and then waited nearly another year in Mexico, filing a complaint with the Mexican Attorney General on April 6, 2005, just before the statute of limitations ran. The Complaint named not only Machado, Trueba and Vargas, but also Isaac Larian and Eli Makabi, directors of MGA de Mexico.

1

2       Mattel then sought an arrest warrant against all of these named individuals.

3   The Mexican trial court denied Mattel's request for an arrest warrant in its entirety.

4   As to Machado, Vargas and Trueba, the court found insufficient evidence of theft of

5   industrial secrets.  Dkt. No. 7923, Kieckhefer Decl. Ex. 29 at 3647:11-24.  As to

6   Larian and Makabi, the court found there was no evidence of any use by MGA.  *Id.*

7   Mattel appealed.  On appeal, the Mexican appellate court affirmed the denial of the

8   warrant against Larian and Makabi, holding that "[T]here is *no proof* of the

9   information contained therein having been in any manner been used by principals

10  or third parties . . . there is *no proof* evidencing that any officer from MGAE de

11  Mexico already knew about that information, let alone its use."  Dkt. No. 7923,

12  Kieckhefer Decl. Ex. 95 at 5897-5898 (emphasis added).  The appellate court

13  reversed as to Machado, Trueba, and Vargas, however, allowing arrest warrants to

14  be issued for these individuals in 2007.

15      After the denial of arrest warrants against Larian and Makabi was affirmed,

16  Mattel changed tack and continued to pressure the Mexican government to

17  investigate Larian and Makabi under a different legal theory.  San Miguel

18  Declaration ¶¶ 5-7.  This new theory of culpability arose only after Mattel's failed

19  bid to obtain arrest warrants against them both under its first legal theory.  *Id.*

20      As this Court has previously found, Mattel is the instigator and the

21  prosecutor of the Mexican criminal charges that continue to this day against

22  Machado and Trueba.  *E.g.*, Dkt. No. 8459 at 9.  Indeed, given the private property

23  nature of the charges, the Mexican government could not have instigated the

24  criminal case against Machado and Trueba on its own initiative.  Tiburcio Depo. at

25  222:17-23:20.  Mattel prepared and filed the initial complaint in the action.  *See id.*

26  at 173:13-16, 186:4-87:7.  Mattel's lawyers did all of the initial factual

27  investigation leading up to the filing of that complaint, including the preparation of

28  3600 pages of attachments and other material included with the complaint.  *See,*

*e.g., id.* at 176:25-177:15-197, 205:12–13:22.

OPPOSITION TO MATTEL'S APPLICATION FOR LEAVE UNDER
28 USC 1782
CV-04-9049 DOC (RNBx)

After the complaint was filed, Mattel continued its heavy involvement in the Mexican criminal investigation.  Mattel's lawyers prepared witnesses in advance and attended interviews in the prosecutor's office.  *Id*. at 225:16-28:10, 248:16-49:6, 262:3-268:11, 273:13-78:4.  Mattel also suggested that the prosecution meet with expert witnesses.  *Id*. at 251:1-14.  Mattel's counsel repeatedly met with the prosecution to discuss strategy.  *Id*. 251:1-14.  Mattel worked arm in arm with the prosecutor to obtain a search warrant.  *Id*. at 280:7-82:14.  Mattel instructed the authorities on where the search should take place.  *Id*. at 287:17-88:13.  Mattel's counsel admitted to meeting with the prosecutor daily after submitting the request for the search warrant, to be sure that the search would occur.  *Id*. 293:11-16.  Mattel was present outside MGA de Mexico's offices during the execution of the search, and met with the prosecutor immediately afterward.  *Id.* at 294:9-297:3, 298:10-300:5.  Mattel's lawyers admitted to meeting with the prosecution so often that counsel could not reasonably estimate the frequency of the meetings.  *Id*. at 249:7-25.

Mattel's attorneys have actively litigated the case against the criminal defendants in Mexico in an effort to obtain a conviction.  Mattel has filed motions in the criminal case against the defendants.  *Id*. at 239:1-243:23.  Mattel has also opposed motions filed by the defendants.  *Id*. at 232:12-33:13.  Mattel's lawyers have even gone so far as to appeal lower court decisions in favor of the defense.  *Id*. at 237:5-38:25.  All told, Mattel has paid its lawyers in Mexico millions of dollars in fees for their prosecution of the criminal case.  *Id*. at 574-75.

Mattel's absolute control over the Mexican criminal prosecution is exemplified by its pardon of Pablo Vargas.  Mattel promised that Vargas would be pardoned in exchange for a declaration from Vargas that was heavily edited by Mattel's attorneys.  *See* Dkt. No. 10038 (3/3/2011 Tr. (Vol. 1) at 83:16-87:6).  The pardon was carried out.  *Id.* at 141:25-142:23; *see* Ex. 8463.

OPPOSITION TO MATTEL'S APPLICATION FOR LEAVE UNDER
28 USC 1782
CV-04-9049 DOC (RNBx)

1

2  **B.  The Instant Letters Rogatory.**

3  The instant letters rogatory were issued on August 11, 2010—nearly a year

4  before this application and eight days after this Court had already denied a prior

5  application.  MPA ISO App. at 1-2; *see* Dkt. No. 8459 at 9 (denying prior

6  application for letters rogatory).  The letters were issued in the ongoing criminal

7  prosecution of Machado and Trueba, and seek deposition testimony from four

8  witnesses:  Isaac Larian, Eli Makabi, Tom Park and Daphne Gronich.  Mattel did

9  not disclose the existence of the letters to this Court when they were issued in

10  August 2010.  Subsequent to the issuance of these letters, Isaac Larian was deposed

11  on four additional occasions:  August 12, 2010, September 1, 2010, October 5,

12  2010, and October 23, 2010.

13  The letters were apparently issued based upon representations by Mattel that

14  these four witnesses would provide testimony in support of a conviction of

15  Machado and Trueba.  But the stated basis for such an assertion, particularly given

16  the prior attempts to prosecute Larian and Makabi, is inherently suspect:  the letters

17  state that the basis for taking the testimony of these four witnesses is their

18  "awareness of the taking of the possession of industrial secrets which ownership

19  belongs to the victims . . . ."  Corey Decl. Ex. A at 16.

20  The only apparent basis for Mattel's assertion of awareness is the emails

21  exchanged in which the particulars of employment were negotiated between MGA

22  de Mexico and Machado, Vargas and Trueba.  Corey Decl. Ex. A at 69-145 (Ex. 81,

23  84).  Nothing in those emails constitutes a transmission of industrial secrets nor

24  makes any reference to such.  As the Court is well aware, the jury in this case

25  considered exactly the same evidence, *e.g.* TXs 3610, 3617, 6774, and expressly

26  rejected any knowledge or involvement of Isaac Larian and MGA in any

27  misappropriation of Mexican trade secrets with a much lower burden of proof.  Dkt.

28  No. 10518 at 5 (Verdict Question #8).  The notion that Larian and MGA had

awareness before the fact has been roundly rejected by the jury in this case.  Mattel

has not shown, or even attempted to show in its application, that awareness after the fact based on United States civil litigation proceedings is a basis of personal knowledge that would make for admissible testimony in a Mexican criminal proceeding.  Nor has Mattel shown in its application to this Court that even such after-the-fact hearsay knowledge exists on the part of any of these four witnesses.

The Mexican procedure for questioning of the type sought by Mattel is to require advance approval by the court of the questions.  Accordingly, Mattel attached massive lists of questions to the letters.  The questions "approved" by the Mexican court for these four individuals total nearly 2,000:

- 467 questions for Mr. Larian;
- 458 questions for Mr. Makabi[1];
- 450 questions for Ms. Gronich; and
- 449 questions for Mr. Park.

Corey Decl. Ex. A at 40-68, 176-203, 234-60, 356-82.  Larian has been previously asked all of these questions and it helped Mattel exactly none.  Gronich was deposed, and later listed on Mattel's witness list, but was not called to testify at trial.  Mattel never even bothered to depose Makabi or Park, even though it was trying to prove exactly the same thing in this case that it seeks to prove in Mexico.  Yet the questions identified in the letters strongly suggest not that Mattel is seeking evidence solely against Machado and Trueba, but that it is seeking this evidence in an effort to infuse its ongoing efforts to prosecute Larian and Makabi in Mexico with a new sense of vigor.  *See, e.g.,* Corey Decl. Ex. A at 66-67 (Larian Questions 445-448, 450-453 ask about his personal access to allegedly confidential information taken by Machado and Vargas; Larian Questions 461-464 ask about Makabi and whether Makabi was a manager of MGA de Mexico), 201-203 (Makabi

---

[1] There is no way to verify the "approval" of Questions 63-185 of the proposed questions for Makabi, as Mattel has not provided the Spanish version of these questions allegedly submitted to the Mexican Court.  *Compare* Corey Decl. Ex. A at 204-209, 215-232 *with* 210-214.

Questions 436-439, 441-444 ask about his personal access to allegedly confidential information taken by Machado and Vargas, Makabi Questions 452-456 ask about Larian and whether Larian was a manager of MGA de Mexico), 260 (Park Questions 443-447 ask about Larian and whether Larian was a manager of MGA de Mexico), and 382 (Gronich Questions 443-447 ask about Larian and whether Larian was a manager of MGA de Mexico).

## C.    The Prior Section 1782 Application.

As Mattel recognizes, an application pursuant to 28 U.S.C. Section 1782 is an independent proceeding.  MPA at 1-2.  Mattel made a prior application pursuant to Section 1782, seeking much the same information as is sought here through the use of an apostille to the deposition testimony of Machado, Vargas and Trueba, as well as Susana Kuemmerle.  Dkt. No. 8366.  In that motion, Mattel sought to have the Court order an apostille for 18 volumes of depositions from these four deponents, including four volumes of MGA de Mexico corporate designee testimony.  Encompassed within those 18 volumes of depositions included testimony about each of the topics upon which Mattel now seeks to have further depositions.  For example, of the more than twenty emails that make up Exhibits 81 and 84 (which were the basis for Mattel's letters rogatory) only two of the emails are not included within the 18 volumes of deposition.  Those two emails are from Mary Carmen Mendez (whom Mattel could seek testimony from in Mexico) and appear to relate to the renting of office space in Mexico (which is not relevant to the issue of misappropriation).  The other emails in Exhibit 81 and 84 are largely emails to and from the "plot04" account and have been the subject of extensive questioning in the 18 volumes of transcripts for which Mattel requested an apostille.  (From Exhibit 81, Machado testified regarding Exs. 6410 (Ex. A at 72), 6411 (Ex. A at 74), 6420 (Ex. A at 78, 84-6), 6419 (Ex. A at 80), 6428 (Ex. A at 112-16), 6431 (Ex. A at 118), 6432 (Ex. A at 122-26, 134); Trueba testified regarding Ex. 3612 (Ex. A at 80), 6428 (Ex. A at 112-16); Vargas testified

- 7 -

regarding Ex. 7266 (Ex. A at 106-10); Kuemmerle testified regarding Exs. 3606 (Ex. A at 72), 3604 (Ex. A at 74), 6775 (Ex. A at 76), 6774 (Ex. A at 78, 84-6), 3610 (Ex. A at 80), 3611 (Ex. A at 82), 6775 (Ex. A at 82), 6786 (Ex. A at 88-94), 6788 (Ex. A at 106-10), 6428 (Ex. A at 112-16), 6431 (Ex. A at 118), 3617 (Ex. A at 118-20), 6432 (Ex. A at 122-26), 6434 (Ex. A at 128-32), From Exhibit 84, Kuemmerle testified regarding Exs. 3616 (Ex. A at 139), 6433 (Ex. A at 141-43), Machado testified regarding Ex. 6433 (Ex. A at 141-43)).  Similarly, the other topics on which Mattel seeks testimony, such as Machado, Trueba, and Vargas's interactions with Larian and other MGA employees from 2004-2007 (Ex. A at 36-51, 178-87, 236-45, 358-67), Machado, Trueba, and Vargas' salaries and bonuses while working for MGA de Mexico, as well as their job duties (Ex. A at 58-65, 194-200, 251-58, 373-81), and so on were extensively discussed in these 18 volumes of depositions.  *E.g.* Kuemmerle Vol. 1 at 97-99 (job duties) 104 (bonuses), 30b6 Vol. 2 at 365-367 (job duties), 30b6 Vol. 3 at 670-75 (bonuses), 708-710 (salaries), 755-56 (bonuses), 768-73 (salaries); Machado Vol. 1 at 26-32 (job duties), 42 (salary), 55 (job duties), 69-73 (salary, bonus), 179-81 (job duties), 186-87 (job duties), 257-66 (job duties), Vol. 2 at 382-98 (salary, bonuses, job duties), 430-37 (salary), Vol. 5 at 745 (job duties, salary), 902-6 (salary, bonus); Trueba Vol. 2 at 180-182 (salary, bonus), 282 (salary, bonus), Vol. 4 at 663 (salary); Vargas Vol. 1 at 68-70 (salary, bonus), Vol. 2 at 275 (bonus), Vol. 3 at 523-28 (salary, bonus), 770 (salary, bonus), 882 (job duties).  On August 3, 2010, the Court denied Mattel's application for an apostille for those 18 volumes in a final order.  Dkt. No. 8459 at 9.  Mattel never filed a notice of appeal from that denial of its application, and the time for such an appeal has long since passed.  *See* Fed. R. App. Proc. 4(a).

### D.   Changes In Circumstances Since The Letters Were Sought By Mattel.

The letters were issued on August 11, 2010, shortly after this Court denied

1

2   Mattel's other application on August 3.   Dkt. No. 8459.  The Court also denied

3   MGA's cross-motion for protective order at the same time, but cautioned Mattel's

4   counsel that the consequence of its profligate use of MGA information in the

5   Mexican criminal proceeding would result in depositions of Mattel's counsel.  *Id.* at

6   11.  The Court was particularly concerned whether the information would be used

7   *to institute new proceedings* rather than to prosecute existing ones.  *See id.*

8           The Mexican court has never been given the opportunity to consider the

9   letters in light of the current circumstances and with the benefit of full adversarial

10  litigation.  The individuals who are the putative subjects of the letters were not

11  represented before the Mexican court, and had no opportunity to speak there.  The

12  Mexican court apparently did not consider that this Court had rejected a prior

13  application and was particularly concerned about use of the information to institute

14  new proceedings.  The Mexican court certainly never considered that the jury here

15  in the United States rejected Mattel's claims under a lower burden of proof and

16  having considered exactly the same evidence that Mattel purports is the basis for

17  the letters.  And, the Mexican court never had the chance to consider the recently

18  issued decision of the Mexican Supreme Court regarding email privacy of third

19  parties in criminal proceedings.

20          In the year since the letter rogatory issued, the Mexico Supreme Court issued

21  an opinion regarding obtaining third-party emails and testimony regarding such

22  emails.[2]  San Miguel Decl. ¶ 8.  The Mexico Supreme Court held that a third-

23  party's fundamental right of private communication is violated when one's

24  communications are obtained without consent or a Court order.  *Id.*  Moreover,

25  where communications are obtained in violation of this fundamental right of

26  privacy, no third-party can be questioned about the communication.  *Id.*

27

28

---

[2] If helpful, MGA can provide the Court with a certified copy of this decision.

- 9 -

1

2

**ARGUMENT**

3

**I.     THE COURT SHOULD DENY MATTEL'S § 1782 APPLICATION.**

4          Section 1782 provides that a federal district court "*may* order" a person

5   residing within the district to give testimony in a foreign or international tribunal.

6   28 U.S.C. § 1782 (emphasis added).  The Supreme Court has emphasized that this

7   determination is soundly within a district court's discretion:  "§ 1782(a) authorizes,

8   *but does not require*, a federal district court to provide judicial assistance to foreign

9   or international tribunals or to 'interested person[s]' in proceedings abroad."  *Intel*

10  *Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  This Court has

11  wide discretion in its consideration of the current application.  *Four Pillars Enters.*

12  *v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002) ("We review the

13  district court's decision under 28 U.S.C. § 1782 for abuse of discretion.").

14         Applications pursuant to Section 1782 should be scrutinized to determine

15  "what, if any, assistance is appropriate."  *Intel Corp.*, 542 U.S. at 266.  In *Intel*, the

16  Supreme Court laid set forth a non-exhaustive list of "factors that bear

17  consideration" for a §1782 request, including:  (1) whether the person from whom

18  discovery is sought is a participant in the foreign proceeding; (2) the nature of the

19  foreign tribunal, the character of the proceedings underway, and the receptivity of

20  the foreign court to assistance; (3) whether the request is an attempt to circumvent

21  foreign proof-gathering restrictions or other policies of the foreign jurisdiction; and

22  (4) whether the request is unduly intrusive or burdensome.  *Id.* at 264-65; *see In re*

23  *Premises Located at 840 140th Ave NE*, 634 F.3d 557, 571 (9th Cir. 2011).

24         This is not an exhaustive list.  In *Intel*, the Supreme Court went on to identify

25  additional issues that could be considered, including whether the requests were a

26  "'fishing expedition' or a vehicle for harassment" and whether the complaint in the

27  foreign jurisdiction is merely pretextual.  542 U.S. at 266.  Other discretionary

28  factors considered by courts after *Intel* include bad faith, delay in bringing

application, and availability of information from parties to the foreign action.  *See*,

OPPOSITION TO MATTEL'S APPLICATION FOR LEAVE UNDER
28 USC 1782
CV-04-9049 DOC (RNBx)

1  *e.g.*, *In re the Republic of Ecuador*, 2011 WL 736868, *8 (N.D. Cal. Feb. 22, 2011)

2  ("The Court accepts [bad faith] as an appropriate discretionary consideration."); *In*

3  *re Application of Peter Damien Marino*, 2009 WL 482649, *4 (N.D. Cal. Feb. 25,

4  2009) ("Absent any evidence that Elena [party to foreign action whose information

5  was being sought from nonparties] herself does not possess the desired information

6  . . . this court finds no basis to authorize the issuance of the requested subpoenas.");

7  *In re Application of Fischer Advanced Composite Components AG*, 2008 5210839,

8  *5 (W.D. Wash Dec. 11, 2008) (denying application as duplicative after finding

9  requested information was equally available in foreign jurisdiction); *In re*

10 *Application of Digitechnic*, 2007 WL 1367697, *4 (W.D. Wash May 8, 2007)

11 (noting requestor's unexplained one year delay in making the discovery request

12 under §1782 as another factor favoring denial of application).  As detailed below,

13 the relevant factors here dictate that the Court deny Mattel's application.

14 ### A.    <u>Mattel's Application Is Barred By Res Judicata.</u>

15    Mattel previously sought the same information for the same reasons in an

16 earlier Section 1782 proceeding.  Dkt. No. 8366 (seeking apostille for 18 volumes

17 of transcripts relating to activity in Mexico).  That application was denied (Dkt. No.

18 8459 at 9), and Mattel did not file a timely appeal.  That order is now a final

19 judgment and is not subject to collateral attack in a new Section 1782 proceeding.

20 *Four Pillars* is apposite:  in that case the Ninth Circuit expressly affirmed that the

21 failure to appeal a prior denial under Section 1782 barred subsequently seeking the

22 same information through a new Section 1782 proceeding.  *Four Pillars*, 308 F.3d

23 at 1079 (holding that Section 1782 application was properly denied where the

24 requesting party "was seeking essentially the same material in several requests in its

25 'Supplemental Application'" as in a previous Section 1782 application).

26 ### B.    <u>Particularly In Light Of Its Long Delay And Intervening Events, Mattel Has Again Failed To Demonstrate That The Mexican Court Is Receptive To Assistance.</u>

27

28    Additionally, the rationale of the Court's prior denial is fully applicable here.

1

2   Given Mattel's control of the Mexican criminal prosecution, "this case does not

3   present a scenario in which a 'foreign government or [foreign] court or agency' is

4   receptive to assistance from the United States, since it is unclear whether the

5   government's request(s) for assistance are being made on behalf of Mattel."  Dkt

6   No. 8459 (August 3, 2010 Order) at 9 (citing *Intel Corp.*, 542 U.S. at 265).  Mattel

7   continues to control the Mexican proceedings.

8         There can be no dispute that Mattel stands in the shoes of the "foreign

9   prosecutor."  Mattel initiated and funded the criminal prosecution, and is an active

10  litigant in the process.  Mattel files its own motions against the criminal defendants,

11  opposes their motions, and then independently appeals when it does not prevail on

12  these motions.  Mattel has also done the investigation for the criminal case itself, by

13  identifying witnesses to be heard by the prosecutor, helping them to prepare their

14  statements and literally ferrying those witnesses to the prosecutor's office for their

15  interviews.  Mattel also crafted the prosecution's strategy for investigating and

16  prosecuting the case.  Notably, defense counsel was not present for any of Mattel's

17  too-numerous-to-count meetings with the prosecutor.  In short, although Mattel

18  may not be the prosecutor in name, it is most certainly the prosecutor in fact.  Given

19  Mattel's long delay in seeking this application since the issuance of the letters, and

20  the important intervening events never considered by the Mexican court, this factor

21  is all the more pertinent.

22       C.    **Mattel is Attempting To Circumvent Other Policies And**
             **Procedures In Mexico And The United States**
23

24        While there is no threshold requirement that the information sought be

25  discoverable in the foreign action, the Court should "consider whether the § 1782(a)

26  request conceals an attempt to circumvent foreign-proof gathering requirements or

27  other policies of a foreign country or the United States."  *Intel Corp.*, 542 at 265.

28  Here, each of these considerations counsel against granting Mattel's application.

          Mattel's application would frustrate this Court's proceedings.  Mattel is

- 12 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

circumventing this Court's orders putting an end to discovery in this action.  Mattel is also circumventing the jury's verdict in this action.  Mattel and Mattel Mexico chose to litigate the issue of alleged trade secret misappropriation by Larian and MGA relating to the actions of Machado, Trueba, and Vargas in its civil case before this Court.  More than four years after Mattel and Mattel Mexico asserted those claims, they were tried to a jury as part of a three month trial.  The jury rejected the trade secret allegations against Larian and MGA.  Dkt. No. 10518 at 5 (Question 8).  To require Larian and three former MGA employees to sit for multiple day depositions regarding these same allegations would frustrate the findings of the jury and the proceedings in this Court.  *See Four Pillars Enters.*, 308 F.3d at 1079 (affirming discretionary denial of § 1782 application because "backdrop of nasty litigation between the parties concerning competing allegations of pilfered trade secrets" and verdict against the requester created special circumstances where granting it "would improperly frustrate" the district court's orders).

Mattel's application is also an attempt to circumvent Mexico's proof gathering requirements and policies.  In the year since the letter rogatory issued, two major developments indicate that the Mexico court likely would not issue the letters rogatory today.  First, the Mexico court issued the letters in August 2010 based on its acceptance of Mattel's representations regarding Larian and MGA's alleged involvement with misappropriation in Mexico.  Since then, the jury in this case carefully reviewed Mattel's evidence and unequivocally found those representations to be inaccurate.  Second, the letter rogatory focuses on exhibits 81 and 84 of the initial criminal complaint in Mexico. Dkt. No. 10671, Corey Decl., Ex. A at 16-18.  These exhibits are emails between MGA, including Isaac Larian, and Machado, Trueba, and Vargas regarding their hiring at MGA de Mexico.  *Id.* at 69-114.  Recent Mexican Supreme Court authority makes clear that this entire line of testimony is improper.  The emails which are the focus of the letters rogatory were not obtained with consent or pursuant to a Mexican court order.  Accordingly,

1    the fundamental right of privacy under the Mexican constitution is violated by

2    Mattel's use of these emails to question non-parties in the Mexican criminal

3

4    proceeding.

5        Additionally, Larian and Makabi were initially investigated as parties to the

6    Mexico criminal proceedings.  Akin to the Fifth Amendment, the Twentieth Article

7    of the Mexican Constitution prohibits forcing testimony from persons considered

8    suspects in the criminal proceedings.  San Miguel Decl., ¶ 5; *see*, *e.g.*, Article 20 of

9    the Constitution of Mexico ("In every criminal trial the accused shall enjoy the

10   following guarantees: . . . II.  He may not be forced to be a witness against

11   himself").  Mattel has made clear from the outset that additional MGA Mexico

12   personnel are suspects, and has sought to have additional parties prosecuted at

13   every turn, including in an ongoing investigation.  Therefore, by seeking ordered

14   testimony from this Court, Mattel is seeking to circumvent rights as they exist

15   under Mexican law.  San Miguel Decl., ¶ 7.

16       **D.    Mattel's Request Is Unduly Intrusive and Burdensome**

17       The Court may deny an unduly intrusive and burdensome § 1782 application

18   on that ground alone.  *In re Application of Fischer Advanced Composite*

19   *Components AG*, 2008 WL 5210839 at *3 (finding that while the first three factors

20   of *Intel* cut in favor of requester, "[n]evertheless, the last factor identified by *Intel*

21   compels this court to preclude the discovery requested") (emphasis added).  Larian

22   has repeatedly testified that he had no involvement in the actions of Machado,

23   Trueba, and Vargas and he was not personally aware of any such conduct.  Dkt. No.

24   9867 (2/10/2011 Tr. (Vol. 2) at 49:1-11); Dkt. No. 9868 (2/10/22 Tr. (Vol. 3) at

25   46:14-47:3); *see* Dkt. No. 10030 (2/17/2011 Tr. (Vol. 3) at 45:12-19, 75:22-76:10).

26   He has nothing new or different to add on this subject and Mattel knows that very

27   well.  Another deposition will not advance Mattel's action in Mexico and is being

28   sought only to harass Larian, force him to spend more on attorneys' fees, and to

     seek leverage against him in light of the current posture of the parties.

OPPOSITION TO MATTEL'S APPLICATION FOR LEAVE UNDER
28 USC 1782
CV-04-9049 DOC (RNBx)

First, Mattel has failed to demonstrate that it cannot obtain the information from the parties in Mexico—including, importantly, its informant Vargas.  Surely it would be less burdensome to have a witness who has already been bought and paid for give the testimony—and the fact that Mattel has destroyed the credibility of Vargas is its own problem and cannot be laid at the feet of Larian and MGA.  The discovery Mattel seeks is unduly intrusive and burdensome because any information it may need that is legitimately relevant to the Mexico action is available from the parties to the Mexico action themselves.  *See In re Application of Fischer Advanced Composite Components AG*, 2008 WL 5210839 at *3 (denying application as unduly burdensome because requested information about any instructions and communications between party and nonparty could be obtained from party directly).

Second, there is no question that if the subpoenas were to issue, the depositions would be unduly intrusive and burdensome.  The sheer volume of the proposed questions alone indicates that Mattel intends to take days of deposition from each witness.  And, the substance of the questions also demonstrates a burdensome and harassing purpose.  The questions are not narrowly tailored.  For example, the first question to be put to each of these four individuals is "What do you know about the facts of this case?"  Corey Decl. Ex. A at 40, 176, 234, 356.  Similarly, each person is asked if they "have knowledge" regarding Mattel, Inc., Mattel Mexico, Mattel Servicios, MGA de Mexico, and MGA, as well as how they first came to have knowledge of each corporation, and whether they have knowledge of the corporate "purpose" of each entity.  *Id.* at 40-43, 176-79, 234-37, 356-59.  There are also more than 75 questions about email addresses and phone numbers.  Setting aside the inane nature of these questions, there is simply no reason that Mattel should be permitted to continue a fishing expedition after it has already received extensive discovery relating to these misappropriation allegations.  *See also In re Application of Digitechnic*, 2007 WL 1367697 at *5 (denying

OPPOSITION TO MATTEL'S APPLICATION FOR LEAVE UNDER 28 USC 1782
CV-04-9049 DOC (RNBx)

application after finding valid the objection that "the extremely broadly-worded and sweeping requests quoted *supra* will unduly burden Microsoft in terms of time, effort, and expense at this late stage").

Third, these questions cannot answer the ultimate issue in the Mexico court – whether Machado or Trueba misappropriated Mattel trade secrets. It is really a question that can be answered only through the testimony of either Mattel's forensic experts and business personnel or Machado and Trueba. There is no evidence whatsoever that any of these four people has firsthand knowledge of any theft of industrial secrets by Machado or Trueba. The emails upon which Mattel relied as a basis for "awareness" of purported theft in obtaining the letters in August 2010 have since been conclusively rejected by a United States jury as a basis for a finding of misappropriation of trade secrets; the entire basis for the letters is proven nonsense.

Fourth, while Mattel seeks leave for its Mexican attorneys to be present, under Mexican law, attorneys for Machado and Trueba, defendants in the Mexican proceedings, would also have to be present. San Miguel Decl. ¶ 3; *see also* Corey Decl., Ex. B at ¶7. Thus, if Mattel's application is granted, numerous attorneys would need to be present for the depositions. As this Court is well aware based upon the recent briefing on the issue, Larian and MGA have already incurred millions of dollars in attorneys' fees defending against what the jury determined to be non-meritorious allegations of trade secret misappropriation by MGA and Larian. Weeks of additional unfocused and irrelevant depositions would only escalate these costs further.

To spend days asking Larian, Makabi, Park and Gronich about their knowledge about Mattel and its business purposes clearly would not advance the criminal proceedings in Mexico. Ultimately, when the number of questions, the breadth of the questions, and the irrelevant nature of the responses is contrasted with the length of the litigation between the parties and the extensive discovery

already taken by Mattel, there is no reason that Mattel should be given leave to spend another two weeks harassing MGA and its present and former officers with questions relating to conduct in Mexico.

**E.** **Mattel's Request For Testimony In The Existing Prosecution Is Pretextual, As Mattel Intends To Continue Seeking Criminal Charges Against Larian And Makabi in Mexico.**

Mattel's application also should be denied because Mattel's representation that it is seeking discovery in relation only to the existing criminal case against Machado and Trueba in Mexico is merely a pretext.  Mattel's thinly veiled intentions are clear:  after losing its misappropriation claims regarding Mexico in front of the U.S. jury, Mattel would like to reinstitute criminal proceedings relating to the same conduct in Mexico.  In fact, Mattel has asserted a second criminal complaint for investigation in which both Larian and Makabi are expressly named "suspects."  San Miguel Decl. ¶ 5-7.

Indeed, the language of the letter rogatory reveals Mattel's continued assertion that Larian is responsible for the conduct in Mexico:

> **By means of it, the offeror of this evidence tries to strengthen**, among other issues, **the fact that the aforementioned person sent, and is involved in, the e-mails** found in the hard disks of the computers assigned, at that moment, by Mattel of Mexico, S.A. de C.V., to the persons being prosecuted; **as well as awareness of the taking of possession of industrial secrets which ownership belongs to the victims** and the effects observed in relation to the above mentioned fact."

Corey Decl. Ex. A at 16.  This language demonstrates that Mattel has continued to argue to the Mexican court that Larian somehow enticed Machado, Trueba, and Vargas to take Mattel documents, contrary to all of the evidence and the U.S. jury's verdict.  Mattel's new investigation undoubtedly makes similar, unsupported claims, in an attempt to again ensnare Larian and Makabi in burdensome and expensive foreign litigation.  Moreover, Mattel would undoubtedly use any information provided in response to the nearly 2,000 questions on which testimony is sought to further support this assertion (again disregarding the fact that the

assertion is simply false and has been held to be so by a jury).

Mattel's actions have demonstrated that Mattel is not acting to preserve some important interest, but rather to cause business harm to Larian and MGA. Mattel's treatment of Pablo Vargas fully demonstrates its venal intentions. Vargas is the only person who has ever admitted using information from Mattel Mexico at MGA de Mexico. Vargas, however, is also the *only* former employee who has been dismissed from the Mexican criminal proceedings. As with Carter Bryant in the U.S. cases, Mattel settled with and dismissed the person arguably most culpable, in an effort to improve its position against Larian and MGA.

Mattel can obtain all the relevant information it needs for the criminal case from the parties themselves. Any information it seeks from the individuals it seeks subpoenas for is at best duplicative and more accurately a pretext for continuing to explore failed claims against Larian and MGA. The court should not allow this. *See In re Application of Fischer Advanced Composite Components AG*, 2008 WL 5210839 at *4 (given history of the case and availability of requested information from the parties themselves, court was "skeptical of FACC's true motivation . . . the real reason FACC seeks information from Primus directly may indeed be to determine if FACC has any colorable claims against Primus").

### F.   Special Circumstances Of The Litigation Between These Parties Further Require Denial of Mattel's Request

The specific circumstances of this case further require that the Court deny Mattel's application. This Court is all too familiar with the lengthy and contentious relationship between the parties in the instant case. The parties have been engaged in litigation for more than seven years. Each side has incurred millions and millions of dollars in attorneys' fees. The Mexican criminal litigation is merely a further extension of these hostilities.

In each of these litigations, the legal defeats have mounted against Mattel. The Mexican court has held that Larian and Makabi are not proper defendants to

OPPOSITION TO MATTEL'S APPLICATION FOR LEAVE UNDER
28 USC 1782
CV-04-9049 DOC (RNBx)

criminal trade secret misappropriation claims in Mexico.  The U.S. jury found that neither Larian nor MGA misappropriated Mattel trade secrets in connection with the hiring of Machado, Trueba, and Vargas.  Most importantly, the U.S. jury found that Mattel willfully and maliciously misappropriated MGA's trade secrets through a decades-long pattern of intentional misrepresentation and fraud.  Mattel now faces attorneys' fees and punitive damages on top of the $88 million awarded to MGA by the jury on these claims.

Rather than allowing the jury verdict to end the war Mattel started against MGA, as Mattel represented was its intention in its post-trial briefing, Mattel's application demonstrates that it is merely gearing up for its next round of attack. This application is nothing more than an attempt to gain leverage over Larian and MGA through the promise of additional pointless discovery regarding allegations that have already been resolved in their favor and the threat of new criminal charges in Mexico.  As the litigation between the parties in the consolidated cases at hand is merely awaiting a judgment, now is not the time for granting Mattel's continued demands for boundless, repetitive discovery that everyone is aware will not support its claims.  This exercise is a poignant illustration of why MGA's legal fees in this action are so high.  It is also further support for the fact that Mattel's continuous misconduct and harassment begs an award of substantial punitive damages.

## CONCLUSION

The Application should be denied in its entirety.

Dated: July 12, 2011                     Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP


By:_____/s/ - Annette L. Hurst_____
         ANNETTE L. HURST
Attorneys for MGA ENTERTAINMENT, INC.,
MGA ENTERTAINMENT HK, LTD., MGA de
MEXICO, S.R.L. de C.V., and ISAAC LARIAN

OPPOSITION TO MATTEL'S APPLICATION FOR LEAVE UNDER
28 USC 1782
CV-04-9049 DOC (RNBx)