QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  William C. Price (Bar No. 108542)
  (williamprice@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc. and Mattel de Mexico, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, et al., | CASE NO. CV 04-9049 DOC (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | Hon. David O. Carter |
| MGA ENTERTAINMENT, INC., a California corporation, et al., | **MATTEL, INC.'S OBJECTIONS TO THE SUPPLEMENTAL SCHULTZ DECLARATIONS AND ADDITIONAL FEE AND COST INVOICES** |
| Defendant. | Hearing Date:      TBD<br>Time:             TBD<br>Place:            TBD |
| AND CONSOLIDATED ACTIONS | Discovery Cutoff:       October 4, 2010<br>Pre-trial Conference:   January 4, 2010<br>Trial:                  January 11, 2011 |

**Objections**

Mattel, Inc. ("Mattel") objects and moves to strike the First and Second Supplemental Declarations of Stephen Schultz ("Declarations") in support of MGA's application for attorneys' fees and "full costs" under the Copyright Act, 17 U.S.C. § 505.

The Court should strike the Declarations because MGA has not established that excusable neglect justifies extension of the Court's May 5 deadline for submitting post-trial briefing to the Court or the May 12 deadline for submitting fee and cost invoices to the Discovery Master. MGA has failed to explain why it was impeded from submitting reams of old invoices dating back to 2008 and why it failed to file a motion before the deadline seeking an extension of time for invoices allegedly received after the deadline expired.

If the Court considers the untimely cost invoices attached to the Declarations, the Court should decline to award the fees and costs MGA seeks. MGA's demand for roughly $34 million in costs alone—consisting of every dollar MGA has spent in this litigation on anything other than attorneys' fees—is unprecedented and unjustified.

## I. MGA HAS NOT JUSTIFIED ITS POST-HOC REQUESTED EXTENSION OF THE MAY 5, 2011 DEADLINE

The Court ordered that all fee and cost submissions to be made by May 5, 2011. Dkt. 10521. The Court also ordered MGA to submit to the Discovery Master all fee and costs invoices in the appropriate format by May 12, 2011. Dkt. 10547. After those dates came and went, MGA submitted two supplemental declarations with 56 invoices requesting further fees and costs, including the May 19, 2011 First Supplemental Schultz Declaration (Dkt. 10683) and the July 1, 2011 Second Supplemental Schultz Declaration (Dkt. 10684). The Court should not consider these untimely submissions. The July 1, 2011 declaration was filed not only after the deadline for submitting fee or cost requests, but was filed weeks *after* the

Discovery Master issued his June 20, 2011 ruling on the fees issues.  Dkt. 10641.  There is no excuse for this lengthy delay.

MGA states that its 50 new cost invoices "were not previously submitted because they relate to costs recently incurred in May or June 2011, or because the MGA Parties only recently received the invoices, or because the invoices were inadvertently omitted from previous submissions."  Dkt. 10669.  MGA offers no explanation for its failure to timely submit claimed invoices from years ago—including invoices from well before the Phase 2 trial even began.  Nowhere does MGA even arguably meet its burden of showing "excusable neglect" to justify extending the Court's deadlines.  See Fed. R. Civ. P. 6(b)(1); see also O'Shea v. Yellow Tech. Servs., Inc., 208 F.R.D. 634, 636 (D. Kan. 2002) (applying Rule 6(b)(1) and refusing to consider untimely bill of costs:  "Both the court and Plaintiff were entitled to rely on the time limitations of [Local] Rule 54.1.  More importantly, the court is not satisfied that counsel for Defendant was impeded in any significant way from either preparing and filing the bill of costs on time or filing a motion for an extension prior to the expiration of the established deadline."); Garcia v. Berkshire Life Ins. Co. of Am., 2008 WL 821805, at *4 (D. Colo. March 26, 2008) (striking bill of costs submitted one month late).  MGA has failed to explain why it was impeded from timely submitting the old invoices and why it did not file a motion for extension of time to submit new invoices allegedly received after the Court-ordered deadlines.  Its tardy submissions should not be considered.

## II.   MGA HAS FAILED TO DEMONSTRATE THAT ITS REQUEST FOR $34 MILLION IN COSTS IS REASONABLE AND APPORTIONED

To the extent any non-taxable costs are awarded under § 505,[1] they must be reasonable.  See Identity Arts v. Best Buy Enter. Servs. Inc., 2008 WL 820674, at *6

---

[1]  In Twentieth Century Fox Film Corp. v. Entm't Distrib., 429 F.3d 869 (9th Cir. 2005), the Ninth Circuit held that "district courts *may award* otherwise non-taxable (footnote continued)

1   (N.D. Cal. 2008) ("Having determined that attorney's fees and costs are warranted

2   under section 505, the only remaining issue for the court is whether the fees and

3   costs requested—$123,527.00 in fees and $7,252.14 in costs—are reasonable."); see

4   also ExperExchange, Inc. v. Doculex, Inc., 2010 WL 1881484, at *11 (N.D. Cal.

5   May 10, 2010) ("[T]he Court concludes that Defendants are entitled to recover

6   expert witness fees to the extent that they are reasonable.").   The award of costs

7   must also be apportioned to limit the award to those costs incurred in defense of

8   Mattel's copyright claim.   See Berry v. Hawiian Exp. Serv., Inc., 2006 WL

9   4102120, at *16 (D. Haw. Oct. 25, 2006) ("As with the attorney's fees, this Court

10  must allocate the non-taxable costs attributable to the copyright claims and related

11  claims.") (emphasis added).   MGA has not even begun to show that its requested

12  costs were properly apportioned or reasonably incurred.   Cf. Gilbert v. New Line

13  Prods., Inc., 2010 WL 5790688, at *6 (C.D. Cal. Dec. 6, 2010) ("[T]he Court finds

14  that Defendants' requested $14,571 in costs is reasonable given that the present case

15  was litigated over two years and involved 649 docket entries.").

16      The Court should follow the approach of Lucky Break Wishbone Corp. v.

17  Sears, Roebuck and Co., 2009 WL 86491, at *2 (W.D. Wash. Jan. 9, 2009), aff'd

18  373 F. App'x 752, 758 (9th Cir. April 7, 2010):   "While recognizing that the Ninth

19  Circuit might allow expert fees under § 505 in an amount exceeding the limits stated

20  in § 1821, the Court refuses, as a matter of discretion, to award expert fees in this

21  _____

22  costs, including those that lie outside the scope of § 1920, under § 505." Id. at 885
    (emphasis added).  Mattel respectfully submits, however, that this ruling is incorrect
23  and that the law should be to the contrary.   As other Circuits have held, that
    Congress' mere inclusion of the word "full" in a statute stating that costs may be
24  awarded does not evidence Congress' clear intent to exceed the scope of § 1920.
    See Pinkham v. Camex, Inc., 84 F.3d 292, 295 (8th Cir. 1996); Artisan Contractors
25  Ass'n, of Am., Inc. v. Frontier Ins. Co., 275 F.3d 1038, 10-40 (11th Cir. 2001).
    Given the national scope of the Copyright Act, it is untenable that an unsuccessful
26  copyright plaintiff in California could be forced to pay $34 million in costs under §
    505 when the exact same plaintiff in Minnesota or Florida would pay less than 1%
27  of that amount.

28

case beyond the $382 allowed by the Clerk."   Other awards already obtained by MGA are more than adequate to compensate it.  See Dunn & Fenley, LLC v. Allen, 2007 WL 2973549, at *6-7 (D. Or. Oct. 9, 2007) (awarding attorneys' fees under section 505 but limiting recovery of costs to those available under section 1920: "To the extent that the other expenses that plaintiff seeks to recover here may not be ordinarily included in counsel's hourly rate, I exercise my discretion under § 505 to deny the recovery of these costs because I am satisfied that the award of attorney fees adequately compensates plaintiff for the costs of this litigation."); see also Sanford v. CBS Inc., 108 F.R.D. 42, 43 (N.D. Ill. 1985) (denying award of costs under § 505 where the plaintiff brought an unsuccessful but "legitimate copyright claim" and in light of the "close outcome of the case").

MGA has made literally *no* effort to apportion costs associated with the Bratz copyright claim, so it has not carried its burden of proving entitlement to costs at all. See Dkt. 10621 at ¶¶ 19-74 (5/5/11 Schultz Dec.) (seeking payment in full for 47 cost invoices totaling $27,788,040 without any apportionment); Dkt 10683 at ¶¶ 4-8 (5/19/11 Schultz Dec.) (seeking payment in full for six fee and cost invoices totaling $2,296,667 without any apportionment); Dkt. 10684 at ¶¶ 4-53 (7/1/11 Schultz Dec.) (seeking payment in full for 50 cost invoices totaling $1,455,564 without any apportionment); cf. Wall Data Inc. v. Los Angeles County Sheriff's Dept., 447 F.3d 769, 776 (9th Cir. 2006) (affirming the district court's limited award of only $38,000 out of the nearly $150,000 in § 505 costs sought by party).  Moreover, like MGA's fee records, Mattel cannot meaningfully test or challenge MGA's cost records with specificity because work descriptions in many cost invoices are improperly redacted.   See Dkt. 10684, Ex. 14-20 (work descriptions in Stroz Friedberg invoices totaling $262,284 completely redacted); Ex. 37-38 (same with regard to work descriptions in Malackowski invoices totaling $161,384); Ex. 48, 50 (same with regard to work descriptions in Orrick and Skadden invoices totaling $14,653).  Denial of fees and costs is appropriate—and indeed mandated—given the

1  complete redaction of work descriptions and MGA's failure to submit evidence to

2  meet its burden in seeking fee shifting.  See Lahiri v. Universal Music & Video

3  Distrib. Corp., 606 F.3d 1216, 1223 (9th Cir. 2010) ("In reducing defendants'

4  recovery of costs by $82,978.68, the district court carefully excluded inadequately

5  documented costs, as well as taxable costs not included in defendants' bill of costs.

6  The significantly reduced award of recoverable costs was reasonable and not an

7  abuse of discretion.").

8  **III.   SPECIFIC OBJECTIONS TO MGA'S COST INVOICES**

9      Exhibits 1-5 consist of $436,416 in hotel bills from the Phase 1 trial—May to

10  August 2008.  The Court should decline to award fees or costs because Mattel won

11  the Phase 1 trial.  At a minimum, substantial percentage reductions are appropriate.

12  See TVT Records v. Island Def Jam Music Group, 288 F. Supp. 2d 506, 511-12

13  (S.D.N.Y. 2003), rev'd on other grounds, 412 F.3d 82 (2d Cir. 2005) ("[T]he Court

14  will reduce TVT's lodestar figure by 20 percent, and lower the other expenses

15  claimed also by 20 percent."); T.B. Proprietary Corp. v. Sposato Builders, Inc., 1996

16  WL 488940, at *3 (E.D. Pa. Aug. 23, 1996) ("[T]he sums expended are excessive;

17  these costs will be reduced by one-half . . . .").

18      Unreasonable travel expenses, such as $15 daily valet parking, $1,000+ daily

19  banquets, $500 hotel rooms, and spa and movie charges should be excluded.

20  ExperExchange, 2010 WL 1881484, *12.  MGA's 2008 hotel bills are replete with

21  such charges, which Mattel should not be required to pay:

22  - Daily room charges ranging from $99 to $500.  Only the lowest nightly rate is

23    reasonable and recoverable.  See ExperExchange, 2010 WL 1881484, at *2
       ("Second, the travel expenses sought by Defendants in connection with the
       summary judgment hearing include a hotel charge of $388.62 for one night

24     for Defendants' counsel.  Given that Defendants' invoices for other trips to
       San Francisco for court appearances reflect that the cost of a hotel in San

25     Francisco is approximately $225.00/night (or less), the court reduces this
       amount by $150.00.")  Ex. 1 at 9, 12; Ex. 2 at 99; Ex. 3 at 257, 261.  If the

26     cost of a hotel room in 2011 in Santa Ana did not exceed $99, the cost of a
       hotel room in 2008 in Riverside should not exceed $99 either.  Ex. 7 at 504.

27
28  - Daily "banquet" charges up to $2,998.  Such expenses are not compensable.
      Ex. 1 at 8, 18, 29; Ex. 2 at 112; Ex. 4 at 315.

- Daily parking and valet parking charges ranging from $8 to $15. These parking charges are excessive and not recoverable. See J.S. Nicol, Inc. v. Peking Handicraft, Inc., 2008 WL 4613752, at *14 (S.D.N.Y. Oct. 17, 2008) ("[T]he Court will not require Peking to pay the approximately $528.00 in valet parking charges . . . ."); Berry v. Hawaiian Exp. Serv., Inc., 2006 WL 4102120, at *16 (D. Haw. Oct. 25, 2006) ("Ths Court finds that Guidance's expenses for courier delivery, staff overtime, and parking fees, should be disallowed."),

- Voluminous numbers of long distance phone calls without any explanation of the purpose of the call. See T.B. Proprietary Corp. v. Sposato Builders, Inc., 1996 WL 488940, at *3 (E.D. Pa. Aug. 23, 1996) ("In this district, ordinary expenses incurred in operating a law firm are not treated as costs; charges for assignment searches, federal express services, litigation supplies, postage, telephone services, shipping and handling, and courier charges will not be awarded."). Ex. 1 at 9.

- Voluminous numbers of movie charges ranging from $11.99 to $16.99. See J.S. Nicol, 2008 WL 4613752, at *14 ("Peking is correct, however, and J.S. Nicol agrees, that Peking should not have to pay for $414.66 in spa, movie and hotel mini bar charges."). Ex. 2 at 106, 126, 131.

- "Banquet" room rental for $1,020. Ex. 2 at 98.

- $110 spa charges by Isaac Larian. J.S. Nicol, 2008 WL 4613752, at *14 ("Peking is correct, however, and J.S. Nicol agrees, that Peking should not have to pay for $414.66 in spa, movie and hotel mini bar charges."). Ex. 3 at 210.

- Daily charges often exceeding $1,000 for multiple conference rooms without any explanation of what they were used for. Ex. 3 at 263-309.

When a cost request contains a large number of unreasonable or unnecessary line items, it should be significantly reduced or denied altogether. See Symantec Corp. v. CD Micro, Inc., 2005 WL 1972563, at *5 (D. Or. Aug. 12, 2005) ("There is no way for me to tell, however, how many of the copies are necessarily obtained for use in the case and how many are for the convenience of the attorneys. Thirty thousand plus copies strikes me as excessive. I decline to award costs for any of the copies.") (internal citations omitted).

In Exhibit 6—a hotel bill from December 2010 to January 2011—MGA request reimbursement of costs for "no show" hotel rooms in the amount of $99 per night. Ex. 6 at 399. In Exhibit 7—a hotel bill from March to April 2011—MGA request reimbursement of $48,124 for hotel costs incurred during MGA's case-in-

1   chief, which is not related to defense of Mattel's copyright claim and is not

2   recoverable under § 505.  <u>Berry</u>, 2006 WL 4102120, at *16.

3   In Exhibits 8 and 9, MGA seeks recovery of $227,971 for database hosting

4   without any attempt at apportionment or any explanation for how that cost relates to

5   defense of Mattel's copyright claim.  The same is true of Exhibits 33-36, which seek

6   recovery of $4,000 in "monthly hosting" charges, and Exhibits 46 and 47, which

7   seek recovery of $12,685 in costs invoiced by ILS for data hosting fees.  <u>See</u> <u>Berry</u>,

8   2006 WL 4102120. at *17 (denying request for non-taxable costs under § 505

9   because "many of the cost items have insufficient descriptions"); <u>see</u> <u>also</u> <u>Love v.</u>

10  <u>Mail on Sunday</u>, 2007 WL 2709975, at *11 (C.D. Cal. Sept. 7, 2007) ("The Gomez

11  Declaration states merely that 'Manatt also billed $23,501 for computerized legal

12  research,' and includes one line item in Exhibit A saying the same thing.  This is

13  insufficient evidence to demonstrate that the requested fees were actually incurred in

14  this litigation.  Accordingly, the Court will reduce Defendants' fee request by

15  $23,501."), <u>aff'd sub nom.</u> <u>Love v. Assoc. Newspapers, Ltd.</u>, 611 F.3d 601 (9th Cir.

16  2010).  Furthermore, the database hosting charges were incurred between April and

17  June 2011 during either MGA's case-in-chief or post-trial.

18  In Exhibit 10, MGA seeks recovery of $71,309 for audio-visual services

19  during MGA's own case-in-chief and closing.  MGA has failed to establish that this

20  service is necessary, correctly apportioned, and related to defense of Mattel's

21  copyright claim.  Even if recoverable, a reasonable fee would not exceed the hourly

22  rate of a paralegal, and Mattel is not responsible for paying for hotel lodging for a

23  technician who could have been hired in Orange County.  <u>J.S. Nicol</u>, 2008 WL

24  4613752, at *15-17.

25  Exhibits 11-12 seek recovery of $77,750 of costs invoiced by the Discovery

26  Master in March and April 2011.  The Arent Fox invoices provided by MGA

27  contain no description of the work performed.  The Court is aware that the

28  Discovery Master spent considerable time during March 2011 supervising the

00505.07975/4257085.1

depositions and *in camera* hearings related to Mattel's in-house lawyer Michael Moore.  Significant portions of the Discovery Master's work during that time period related to MGA's trade secret claim, not Mattel's copyright claim.  Without work descriptions, it is impossible to correctly apportion this cost.  Exhibit 13 seeks recovery of $6,832 of costs invoiced by the Arent Fox settlement officer in July 2009; clearly these negotiations addressed settlement of claims unrelated to Mattel's Bratz copyright claim.

Exhibits 14-20 seek recovery of $262,284 of costs invoiced by Stroz Friedberg between October 2010 and May 2011.  Since the work descriptions in all these invoices are completely redacted, Mattel has no clue what these charges are— let alone whether these bills were necessary, reasonable, or related to Mattel's copyright claim.  MGA carries the burden of proving entitlement to fees and costs. Having failed to do so, MGA cannot recover them.  See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("The burden of establishing entitlement to an attorney's fees award lies solely with the claimant.").  Mattel should not be required to pay a bill for $161,191 in "hourly fees" or $26,107 in "electronic discovery & other fees"— without any explanation or justification of the costs sought.  Ex. 14 at 553.  The Stroz Friedberg invoices also disclose that MGA failed to even pay $209,069 in bills dating back six months, further demonstrating that MGA seeks a windfall award of fees and costs it has not paid.  Ex. 20 at 566.

Exhibits 21-32 seek recovery of $17,739 of deposition transcript costs invoiced by A&E, First Legal, or Veritex court reporters.  But the depositions of Patrick Potgeisser (Ex. 21 at 572), Steven Olson (Ex. 25 at 576), Jorge Castilla (Ex. 26 at 577; Ex 28 at 579), and Tyler Bradley (Ex. 29 at 580; Ex. 32 at 583) either related to MGA's trade secret claim or Mattel's Mexico trade secret claims.  Ron Brawer's testimony also related to MGA's trade secret claim.  Ex. 22 at 573. Indeed, all but four of the depositions (Exhibits 22, 27, 30, 31) relate to witnesses whose depositions were unnecessary because they did not testify at the 2011 trial:

Potgeisser (Ex. 21 at 572), Foti (Ex. 23 at 574), Bassok (Ex. 24 at 575), Olson (Ex. 25 at 576), Castilla (Ex. 26 at 577; Ex 28 at 579) and Bradley (Ex. 29 at 580; Ex. 32 at 583).  See Dunn & Fenley, LLC, 2007 WL 2973549, at *7 ("The $1,750 in expert witness fees that plaintiff seeks to recover will not be awarded because I did not allow the witness in question to testify at trial."); Lucky Break, 2009 WL 86491, at *2 (same).

MGA seeks recovery of $161,384 of costs (Exhibits 37-38) invoiced by MGA's damages expert James Malackowski; however, Mattel cannot test or challenge the reasonableness or apportionment of those bills because the work descriptions are improperly redacted and should be rejected for this reason alone. Furthermore, expert fees incurred in April and May 2011—during MGA's case-in-chief or post-trial—indicate that fees were unrelated to defense of Mattel's copyright claim but instead were related to damages for MGA's affirmative claims. For the same reasons, MGA is not entitled to unapportioned recovery of the cost of Malackowski's deposition transcript.  Ex. 27 at 578.

Exhibits 39-45 seek recovery of $46,193 in copier rental and document reproduction costs associated with MGA's fee applications.  Courts have exercised discretion and declined to award these overhead expenses under § 505.  See Dunn & Fenley, LLC, 2007 WL 2973549, at *7 ("I deny plaintiff's request to recover those expenses here, because I am satisfied that the attorney fees awarded plaintiff should include most of the costs that plaintiff seeks to recover under § 505.  The hourly rates billed by plaintiff's counsel are ample, and are sufficient to include the kinds of ordinary office expenses such as telephone, photocopy, and postage charges that plaintiff seeks to recover under § 505.").  Nor has MGA established that every photocopy in this litigation was necessarily obtained in defense of Mattel's copyright claim.  For the same reasons, the Court should reject MGA's request for $14,653 in miscellaneous costs invoiced by Orrick and Skadden.  MGA's complete redaction of the work descriptions in those attorneys' fee invoices makes it

impossible to determine the purpose of those associated costs.  Ex. 48, 50.  Nor should Mattel pay for MGA's JAMS retainer fees that will be "refunded" at the end of the case.  Ex. 49 at 673.

The five attorneys' fee invoices (exceeding 1,400 pages) attached as Exhibits 1-5 to the First Supplemental Schultz Declaration are likewise deficient because the work descriptions are completely redacted.   Dkt. 10683.   Mattel is unable to meaningfully challenge the reasonableness and apportionment of the attorneys' fees billed in these invoices, and it is unable to determine whether the associated costs of $74,648 (Exhibit 2) and $586 (Exhibit 3) were incurred in defense of Mattel's Bratz copyright claim.

The deficiencies in the cost invoices attached to the May 19 and July 1 Schultz Declarations also appear in the cost invoices attached to the original May 5 Schultz Declaration.   Under § 505, the Court may award reasonable costs necessarily incurred in defense of Mattel's copyright claim; however, review of MGA's cost invoices demonstrates that MGA seeks recovery of every dime spent in this litigation without regard to reasonableness or apportionment.

Exhibit 12 seeks $2,375,659 in costs invoiced by the Discovery Master or Settlement Officer between February 2008 and March 2011.   None of these summary bills include a detailed accounting of how the Discovery Master's time was spent, making apportionment impossible.  Furthermore, $164,552 of those costs were incurred after August 2010 when MGA first asserted its trade secret claim; many of the disputes addressed by the Discovery Master during that time period related to MGA's trade secret claim rather than Mattel's copyright claim. Ex. 12 at 9614-9632.

MGA improperly seeks recovery of costs for every deposition conducted during this litigation, including for depositions that related to non-copyright claims. Exhibit 17 seeks $739,644 in costs invoiced by Veritext court reporters, but more than half of that amount is attributable to witnesses who did not testify at the 2011

1   trial.  Those costs are not recoverable.  The same is true of Exhibit 18, which seeks

2   $173,537 in costs invoiced by A&E court reporters.  Even assuming MGA can

3   recover deposition transcript costs for witnesses who did not appear at the 2011 trial,

4   those costs must be apportioned.  Strictly by way of example, MGA is not entitled to

5   deposition costs for those individuals who did not provide testimony regarding the

6   Bratz copyright claim, such as Castilla, Goveia-Gordon, Kuemmerle, Machado,

7   Plunkett, Trueba, Vargas, and Villasenor.  Nor is MGA entitled to recover full costs

8   for those witnesses who provided testimony regarding Mattel's non-Bratz claims

9   and MGA's affirmative claims, such as Bousquette, De Anda, Eckert, Jolicoeur,

10  Normile, Moore, and Thomas.   In Exhibit 17, MGA demands that Mattel pay

11  interest charges for deposition transcripts that MGA did not timely pay for.[2]

12  Furthermore, Exhibits 17 and 18 contain thousands of dollars in duplicate invoices.

13  MGA has failed to carry its burden of proving that these deposition costs are

14  necessary, reasonable, and correctly apportioned.

15      Exhibit 21 seeks $2,275 in costs invoiced by a Spanish translation service

16  (Ricardo Ibarra and Roberto Isaias) that clearly relate to Mattel's non-Bratz trade

17  secret claims.  Exhibits 22-24 seek $7,116,968 in database hosting and management

18  charges and Exhibit 33 seeks $4,181,248 in costs invoiced by Stroz Friedberg for

19  computer forensic services that clearly are not limited to copyright as opposed to

20  other claims.

21      MGA seeks full costs invoiced by the following experts who did not testify at

22  the 2011 trial: $2,322,761 (Exhibit 25: Meyer), $60,470 (Exhibit 27: Gruca);

23  $128,800 (Exhibit 28: Gruca), $26,331 (Exhibit 29: Bergstein), $240,568 (Exhibit

24  32: Menell), $44,822 (Exhibit 34: Tonner), and $158,054 (Exhibit 37: Duffy).  This

25  is inappropriate.  See Dunn & Fenley, LLC, 2007 WL 2973549, at *7 ("The $1,750

---

27      [2]   Ex. 17 at 9816, 9818, 9820, 9822, 9824, 9826, 9918, 9956, 10202, 10204,
28  10206, 10208, 10212, 10214, 10216, 10218, 10220, 10228, 10417, 10419, 10421.

in expert witness fees that plaintiff seeks to recover will not be awarded because I did not allow the witness in question to testify at trial."). MGA seeks $2,702,414 in expert witness fees invoiced by Malackowski even though he provided extensive damages analysis for MGA's own affirmative claims. Ex. 37. Similarly, MGA seeks $37,161 for video deposition services related to witnesses who either did not testify at trial or whose testimony related to MGA's affirmative claims. Ex. 56.

MGA seeks $765,249 (Exhibit 38) and $42,339 (Exhibit 39) for jury consultants who advised MGA concerning issues other than defense of Mattel's copyright claim. MGA seeks $439,932 (Exhibit 43) in costs for hyperlinking services that relate to summary judgment briefing addressing, among other things, MGA's affirmative claims that the Court rejected on summary judgment and Mattel's affirmative claims that are unrelated to the Bratz copyright claim.

MGA seeks $147,362 (Exhibits 40, 41) for CPA costs allegedly incurred in defense of Mattel's copyright claim, but Mattel has no way of assessing the necessity, reasonableness, or apportionment of these costs because the work descriptions are fully redacted.

Exhibits 44-48 seek $1,361,925 in photocopying and document preparation services. MGA has not begun to carry its burden of proving that this mountain of paper was necessarily obtained in defense of Mattel's copyright claim. On the contrary, MGA is attempting to force Mattel to pay for every photocopy in this litigation. Symantec Corp., 2005 WL 1972563, at *5. MGA seeks $20,699 (Exhibit 50) for copier rental services and $8,250 (Exhibit 51) for hotel Ethernet service without any attempt to apportion those costs; section 505 simply does not shift all costs incurred during the entire litigation to Mattel. The same is true for the $876,323 (Exhibits 54, 55) in trial graphics and presentation costs sought by MGA.

MGA seeks $223,172 (Exhibits 52, 53) in hotel costs incurred during the 2011 trial. MGA's four-page bill from the Hyatt Regency in Irvine contains only the total dollar amount billed ($219,172) without any line item charges.

Consequently, there is no way for Mattel or the Court to assess the reasonableness or apportionment of those costs.  The Court should reject this gross overreaching. Exhibit 53 is an incomprehensible bill for $4,000 in "war room" charges invoiced between February 5, 2008 and March 13, 2008—before the Phase 1 trial even started.

Finally, MGA seeks $87,807 for "investigators," but since the work descriptions in the invoices are completely redacted, Mattel has no way of knowing whether those alleged investigations were necessary, reasonable, and related to Mattel's copyright claim.

## Conclusion

There are glaring deficiencies in nearly every one of the cost invoices submitted by MGA.  These problems highlight the pressing need for Mattel to review unredacted copies of all of MGA's *in camera* submissions.  Mattel should be given a reasonable amount of time to individually challenge the reasonableness and apportionment of every MGA fee or cost invoice.  Mattel respectfully requests that the Court strike the First and Second Supplemental Schultz Declarations as untimely, limit an award of costs—if any—to those costs recoverable under § 1920, and order MGA to produce unredacted copies of all of MGA's *in camera* attorney billing records.


DATED:  July 19, 2011          QUINN EMANUEL URQUHART & SULLIVAN. LLP


By
Susan R. Estrich
Attorney for Mattel. Inc.