| | |
|---|---|
| 1 | ANNETTE L. HURST (State Bar No. 148738) |
| 2 | ahurst@orrick.com<br>WARRINGTON S. PARKER III (State Bar No. 148003) |
| 3 | wparker@orrick.com<br>ORRICK, HERRINGTON & SUTCLIFFE LLP |
| 4 | The Orrick Building<br>405 Howard Street |
| 5 | San Francisco, CA 94105<br>Telephone: 415-773-5700<br>Facsimile: 415-773-5759 |
| 6 | |
| 7 | WILLIAM A. MOLINSKI (State Bar No. 145186)<br>wmolinski@orrick.com |
| 8 | ORRICK, HERRINGTON & SUTCLIFFE LLP<br>777 South Figueroa Street, Suite 3200 |
| 9 | Los Angeles, CA 90017<br>Telephone: 213-629-2020<br>Facsimile: 213-612-2499 |
| 10 | |
| 11 | THOMAS S. MCCONVILLE (State Bar No. 155905)<br>tmcconville@orrick.com |
| 12 | ORRICK, HERRINGTON & SUTCLIFFE LLP<br>4 Park Plaza, Suite 1600 |
| 13 | Irvine, CA 92614-2258<br>Tel: (949) 567-6700/Fax: (949) 567-6710 |
| 14 | Attorneys for MGA Parties |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| 18 | CARTER BRYANT, an individual | Case No. CV 04-9049 DOC (RNBx) |
| 19 | Plaintiff, | Consolidated with Case No. CV 04-9059 and Case No. CV 05-2727 |
| 20 | v. | |
| 21 | MATTEL, INC., a Delaware corporation, | **MGA PARTIES' RESPONSE TO OBJECTIONS TO THE SUPPLEMENTAL SCHULTZ DECLARATION AND ADDITIONAL FEE AND COST INVOICES** |
| 22 | | |
| 23 | Defendant. | |
| 24 | AND CONSOLIDATED ACTIONS. | **[DECLARATION OF BRYCE BAKER FILED CONCURRENTLY]** |
| 25 | | |
| 26 | | Trial Date: January 18, 2011<br>Judge: Hon. David O. Carter |
| 27 | | |
| 28 | | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 2

I. OBJECTIONS TO SUPPLEMENTAL SCHULTZ DECLARATION AND EXHIBITS. ............................................................................................ 4
    A. Hotel Bills—Exhibits 1-7 ............................................................. 4
    B. Database Hosting—Exhibits 8- 9, 33-36, 46 to 47 ............................... 4
    C. Audio-Visual Services—Exhibit 10 ......................................................... 5
    D. Discovery Master Invoices—Exhibits 11 to 13 ...................................... 5
    E. Stroz Friedberg Invoices—Exhibits 14 to 20 ......................................... 6
    F. Deposition Transcript Costs—Exhibits 21 to 32 ................................... 7
    G. James Malackowski—Exhibits 27, 37-38 .............................................. 9
    H. Copier Rental And Reproduction Costs—Exhibits 39-45 .................... 9
    I. Attorneys' Bills And JAMS Retainer Fees—Exhibits 48, 49, 50 ........ 9

II. MATTEL'S ADDITIONAL AND LATE OBJECTIONS TO THE EXHIBITS FILED ON MAY 5, 2011 SUPPORTING AN AWARD OF COSTS ........................................................................................................ 10
    A. Discovery Master Invoice—Exhibit 12 ............................................... 10
    B. Deposition Costs—Exhibits 17, 18 and 56 .......................................... 10
    C. Spanish Translation Service—Exhibits 21 .......................................... 11
    D. Expert Costs—Exhibits 25, 27, 28, 29, 32, 34, 37 .............................. 12
    E. Remaining Objections ........................................................................... 13

CONCLUSION ....................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abner v. Kansas City Southern Ry. Co.*, 541 F.3d 372 (5th Cir. 2008) ..................... 3

*Cruces v. KFC Corp.*, 768 F.2d 230 (8th Cir. 1985) ................................................. 3

*Dunn & Fenley, LLC v. Allen*,
   2007 WL 2973549 (D. Or. Oct. 9, 2007) ..................................................... 7, 12

*ExperExchange, Inc. v. Doculex, Inc.*,
   2010 WL 1881484 (N.D. Cal. May 10, 2010) ................................................... 4

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................... 3

*Identity Arts v. Best Buy Enterp. Servs., Inc.*,
   2008 WL 820674 (N.D. Cal. Mar. 26, 2008) ..................................................... 2

*In re Grand Jury Witness*,
   695 F.2d 359 (9th Cir. 1982) .............................................................................. 3

*J.S. Nicol, Inc. v. Peking Handicraft, Inc.*,
   2008 WL 4613752 (S.D.N.Y. 2008) ................................................................... 4

*Lucky Break Wishbone Corp. v. Sears, Roebuck and Co.*,
   2009 WL 86491 (W.D. Wash. Jan. 9, 2009) ...................................................... 7

*Twentieth Century Fox Film Corp. v. Entm't Distrib.*,
   429 F.3d 869 (9th Cir. 2005) .............................................................................. 2

### STATUTES

17 U.S.C. § 505 ................................................................................................. 1, 2, 9

28 U.S.C. § 1782 ......................................................................................................... 1

28 U.S.C. § 1920 ......................................................................................................... 2

Code Civ. Proc. § 1033.5 ........................................................................................ 2, 7

Civil Code § 3426.4 .......................................................................................... 1, 2, 9

# INTRODUCTION

Having engaged in scorched earth litigation over seven years to litigate MGA to death without any care to the expense imposed on MGA,[1] Mattel now objects to the costs that MGA incurred as a result, even objecting to the costs MGA seeks to recover arising from depositions *that Mattel took*. And while claiming at various times that MGA should be blamed and penalized for unfairly prolonging this case, Mattel has chosen in its objections to re-hash arguments that have been briefed and argued. In fact, Mattel extends its objections *beyond* the filings it is purportedly objecting to, addressing exhibits that were filed with MGA's May 5, 2011 filings to which Mattel has already objected.

For example, Mattel argues, yet again, that MGA has failed to apportion costs and fees between Mattel's copyright claims and Mattel's other claims. This argument, rejected by the Discovery Master, fails to account for the fact that *all* of Mattel's claims centered on the ownership and exploitation of the Bratz copyright. *See* Dkt. No. 10542 (Mot. for Fees and Costs) at 15-16. In its complaint and at trial, Mattel made crystal clear that its theory was that MGA stole Bratz and all of the trade secrets at issue in order to exploit Bratz. Within the first few minutes of Mattel's opening statement, Mattel made clear for the jury that: "We will further prove that they—MGA not only took Mattel's design for Bratz, but that they also systematically *took Mattel's confidential information, information that MGA did not have, and information that MGA needed in order to exploit that design . . . .*" 1/18/11 Tr. (Vol. 1) at 18:15-19 (emphasis added). This merely was restating what Mattel alleged in its complaint. *See* Dkt. No. 7714 (FAAC) ¶¶ 30-31.

When not re-hashing old arguments, Mattel just chooses to ignore that MGA is seeking fees and costs under *both* 17 U.S.C. § 505 of the Copyright Act *and* California Uniform Trade Secret Act, Civil Code § 3426.4. Mattel's challenge to

---

[1] Indeed, Mattel has hardly cease its litigious pursuit of MGA. *See* Dkt. No. 10671 (28 U.S.C. § 1782 Request for Taking of Testimony).

1 the costs of MGA expert Jim Malackowski because they "were related to damages
2 for MGA's affirmative claims," for example, thus has no merit. Obj. at 9. Section
3 3426.4 expressly allows recovery of costs for "the services of expert witnesses."
4     In any case, as set forth below, the costs sought relate either to the defense of
5 Mattel's copyright claims or MGA's pursuit of its trade secret claims. The costs
6 sought were reasonably incurred. They are properly awarded.[2]

## ARGUMENT

8     The Parties are in agreement that this Court should award reasonable fees
9 costs to MGA. But, under Section 505 of the Copyright Act, and as is provided by
10 the Ninth Circuit authority that Mattel acknowledges is binding, costs are not
11 limited to the costs set forth in 28 U.S.C. § 1920. Obj. at 2 n. 1 (citing *Twentieth
12 Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869 (9th Cir. 2005)). Despite
13 Mattel's objection to the contrary, recoverable costs include overhead costs, as
14 Mattel's own authority holds. *See* Obj. at 2 (citing *Identity Arts v. Best Buy Enterp.
15 Servs., Inc.*, 2008 WL 820674 * 9 (N.D. Cal. Mar. 26, 2008), for proposition that
16 reasonable costs must be awarded).

17     Moreover, while Mattel's objections are all centered on fees and costs
18 associated with Mattel's copyright claims, MGA has sought fees and costs under
19 California's Uniform Trade Secret Act, Civil Code § 3426.4, which allows the
20 recovery of fees and costs as well in light of the jury's finding of willful and
21 malicious misappropriation. *See* Dkt. No. 10618 (Mot. for Exemplary Damages
22 and Fees). The costs that may be awarded include those associated with experts
23 and those associated with depositions. Cal. Civ. Code § 3426.4; Cal. Code Civ.
24 Proc. § 1033.5.

25     In addition, neither Section 505 nor California's Uniform Trade Secret Act,
26 requires apportionment when the claims for which costs may be awarded are

---

[2] With respect to the costs associated with hotels, as noted in Part I, A, *infra*, MGA has clarified the scope of the costs sought. *See* Declaration of Bryce Baker.

1  intertwined in those claims for which fees and costs are not sought. *See* Dkt. No.
2  10542 (Mot. for Fees and Costs) at 14-16; Dkt. No. 10588 (Reply Br. ISO Fees and
3  Costs) at 10-12; Dkt. No. 10586 (Reply Br. ISO Exemplary Damages and Fees) at
4  22-24.  A failure to apportion is not grounds for denying a request for fees or costs.
5  Dkt. No. 10588 at 12-13.

6  Mattel asserts again that MGA's redactions of certain invoices is improper.
7  It is not.  As already noted, the Ninth Circuit has recognized that redactions are
8  appropriate.  And the fact that the invoices have been submitted *in camera* for
9  review answers any contrary argument leveled by Mattel.  *See, e.g.*, *In re Grand*
10 *Jury Witness*, 695 F.2d 359, 362 (9th Cir. 1982); *see also* Dkt. No. 10588 (Reply
11 ISO Fees) at 13 (citing cases); Dkt. No. 10681 (Resp. to Mattel's Objs.) at 11-13
12 (citing cases).[3]

13 Finally, the fact that Mattel notes that certain costs were incurred during the
14 first trial is not a grounds to deny MGA fees or costs incurred in connection with
15 that first trial.  The "ultimate result" of this case is that MGA prevailed.  *See Abner*
16 *v. Kansas City Southern Ry. Co.*, 541 F.3d 372, 378-84 (5th Cir. 2008) (noting that
17 under *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983), courts must look to the
18 ultimate result and affirming fees and costs incurred in first and second trial;
19 discussing cases also so holding).  MGA, as the prevailing party, is entitled to fees
20 and costs in connection with both trials.  *Cruces v. KFC Corp.*, 768 F.2d 230, 234
21 (8th Cir. 1985) (awarding fees and costs incurred in first trial to party that lost first
22 trial, but prevailed at second trial that followed a successful appeal).  The remainder
23 of Mattel's objections are as easily dispatched.

---

[3] Given that this issue has been briefed over and again, MGA does not respond below to those Mattel objections that argue 1) that MGA should not have redacted invoices or 2) that Mattel is entitled to unredacted invoices.

## I. OBJECTIONS TO SUPPLEMENTAL SCHULTZ DECLARATION AND EXHIBITS.[4]

### A. Hotel Bills—Exhibits 1-7.

Mattel does not dispute that hotel expenses are recoverable as costs. In fact, two of the cases Mattel cites award such costs. *See* Obj. at 5-6 (citing *ExperExchange, Inc. v. Doculex, Inc.*, 2010 WL 1881484 (N.D. Cal. May 10, 2010); *J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, 2008 WL 4613752 (S.D.N.Y. 2008)). Nonetheless, to forestall further issue as to at least some of the hotel expenses, MGA is not seeking certain of the costs identified by Mattel. *See* Obj. at 5-6; Declaration of Bryce Baker.

With regard to the hotel bills, Mattel also levels two additional objections. First, Mattel claims that Exhibit 7 reflects hotel costs incurred in March and April 2011, during MGA's case-in-chief. Obj. at 6-7. However, MGA's case-in-chief concerned its trade secret claim on which it prevailed. In any case, in March and April 2011, the parties were still litigating Mattel's copyright claims. In that time period, and just to provide an example, Margaret Leahy was called as a witness to discuss the creation of the sculpts, which went to Mattel's copyright claim. Alan Kaye was called as a witness to testify about the interpretation of the Inventions Agreement under which Mattel claimed ownership of Bratz. Mattel recalled Carter Bryant as a witness. Mattel also neglects to mention that the parties, throughout that period, were arguing jury instructions involving issues of copyright and then argued the case to the jury.

### B. Database Hosting—Exhibits 8- 9, 33-36, 46 to 47.

Mattel objects to the database hosting charges. Obj. at 7. Mattel does not claim that the costs are unreasonable. Mattel just claims that there is no apportionment "or any explanation of how that cost relates to defense of Mattel's

---

[4] MGA first addresses Mattel's objections to the exhibits filed in connection with the Supplemental Schultz Declaration, Dkt. No. 10684. MGA will then address the additional objections leveled against the Schultz Declaration filed on May 5, 2011.

copyright claims." Obj. at 7. This Court already knows through numerous filings the number of documents that MGA was required to collect and produce in this case. And this Court knows the types of deadlines Mattel sought and this Court imposed during the discovery process and through trial. The documents collected were placed on databases so that they could be produced and used at trial. In a case of this size and volume, there was no feasible way to defend or try this case otherwise. Moreover, while Mattel claims that the hosting charges were incurred in April and June 2011, during MGA's case-in-chief and post-trial, that does not mean that they are not recoverable. Mattel's insistence that somehow, from April to June 2011, this case ceased to include Mattel's copyright claims—that there was no copyright issue in closing arguments and post-trial motions—is meritless.

As for Exhibits 46 and 47, those are charges reflecting database hosting by ILS. As this Court will recall, Mattel—not MGA—insisted that the hard drives of Ron Brawer be inspected. ILS did that work and stored that work. Furthermore, Mattel insisted that ArchiveOne be searched, which involved ILS doing that work. Again, ILS created a database for that. In both instances, there is no need to apportion. The ILS work relating to Ron Brawer involved Mattel's claims of trade secret misappropriation for the purpose of exploiting Bratz. As for ArchiveOne, as this Court recalls there were over 679 search terms involving ArchiveOne, all aimed at Mattel trying to prove Mattel's case, which Mattel claimed related to Bratz and its exploitation.

### C. Audio-Visual Services—Exhibit 10.

Mattel claims that the audio-visual services referenced in Exhibit 10 were services rendered in connection with MGA's case-in-chief and closing. Again, Mattel acts as though the trial could somehow be neatly split between its copyright claims and those involving MGA's trade secret claims. That is not how it worked. MGA's case-in-chief also involved defending against Mattel's copyright claims, as noted. Nor were the closings somehow divorced of Mattel's copyright claims.

Starting from issues of ownership, through comparing dolls, through Mattel's claim of MGA's motive for stealing trade secrets, Mattel's copyright claims were a prominent feature of the closing.

### D. Discovery Master Invoices—Exhibits 11 to 13.

Mattel challenges the Arent Fox invoices for work performed in March and April 2011. Obj. at 7. Mattel claims that during that time period, the Discovery Master was spending "significant" time supervising depositions and *in camera* hearings. *Id.* at 8. MGA has no quarrel with that statement. In March and April 2011, the Discovery Master had to attend the depositions of Michael Moore, Jill Thomas and Michelle McShane, while also participating in *in camera* proceedings. Since much of this activity directly resulted from MGA's trade secret claims, it is recoverable for that reason. Moore, for example, was intimately involved in the issues surrounding MGA's trade secret claims. *See* Dkt. No. 10618 (Mot. for Exemplary Damages and Fees) at 5-6, 12-19. One of the reasons for the Jill Thomas deposition was Mattel's decision to make inquiry into Villasenor's demands of Mattel after he wrote an email stating that he was committing criminal activity by stealing competitors' information. *See* 3/23/11 Tr. (Vol. 2) at 13:13-33:4, 77:14-83:1

The depositions also arose from Mattel's efforts to determine when Bryant created Bratz—a crucial element of Mattel's claim of ownership—such as whether or not Bryant plagiarized Toon Teens. Every witness offered testimony about the investigation into this issue. Moreover, McShane testified as to the meaning of the Inventions Agreement, another of Mattel's theories of ownership. So, again, while the depositions and work concerning these witnesses may also have involved other issues, it is not possible to segregate out in some neat package the work that went to Mattel's copyright claims and MGA's trade secret claims.

### E. Stroz Friedberg Invoices—Exhibits 14 to 20.

Samuel Rubin, from Stroz, was an expert for MGA retained to address

1  Mattel's various claims that MGA and Carter Bryant spoliated evidence, which
2  Mattel sought to introduce for the purpose of establishing that Bryant, MGA and
3  those affiliated with MGA destroyed evidence in order to hide the wrongdoing at
4  issue—the improperacquisition and exploitation of Bratz. *See* Dkt. No. 9491
5  (MGA MIL No. 7); Dkt. No. 10008 (Mattel Opp to MIL No. 7). And as noted,
6  Stroz was involved to satisfy Mattel's discovery requests. Dkt. No. 10588 at 22.
7      Mattel makes two arguments concerning the Stroz invoices. First, Mattel
8  claims that they should not have been redacted. Obj. at 8. This argument has been
9  addressed.
10     Second, Mattel claims that certain of the invoices have not been paid. Obj.
11 at 8. They have.
12     **F.    <u>Deposition Transcript Costs—Exhibits 21 to 32.</u>**
13     Mattel advances two arguments regarding deposition transcript costs: that all
14 but four of the depositions were unnecessary because the witnesses did not testify at
15 trial, and that the depositions related to MGA's or Mattel's trade secrets claim.
16 Obj. at 8-9. Mattel is wrong on both counts.
17     Neither of the cases cited by Mattel— *Dunn & Fenley, LLC v. Allen*, 2007
18 WL 2973549 (D. Or. Oct. 9, 2007), and *Lucky Break Wishbone Corp. v. Sears,*
19 *Roebuck and Co.*, 2009 WL 86491 (W.D. Wash. Jan. 9, 2009)—hold that a party is
20 precluded from recovering costs associated with a witness who is not called at trial.
21 Both concern *expert* costs that were disallowed, but without the underlying reasons
22 for that decision. It is not at all difficult to image a scenario where a court denied
23 expert costs when that court forewarned the party that the expert might not make
24 the stand, and the party went forward with the expert anyway.
25     Imposition of such a rule—imaginatively pried from two unpublished district
26 court cases, no less—would be unjust here. With two exceptions, *Mattel* was solely
27 responsible for the taking of the depositions of the witnesses it identifies in its
28 Objection. To allow Mattel to impose a cost on MGA because Mattel was

dissatisfied with the results of its deposition, when MGA had no need to call the witness, is simply wrong. Neither the law nor simple fairness dictates such a result.

The facts surrounding Patrick Potgeisser exemplify the injustice that would result. Mattel deposed Patrick Potgeisser, an MGA employee located in Germany. Mattel deposed Patrick Potgeisser on, among other things, MGA's efforts to protect information concerning unreleased product at toy fairs and about MGA's claimed attempts to obtain information relating to other competitor products (a defense that Mattel asserted at trial). His deposition related to MGA's trade secret claims. During trial, Mattel demanded that Mr. Potgeisser be flown overseas to Santa Ana to testify as a witness. Yet, Mattel chose not to call him at trial.

Mattel deposed Janice Foti, of MGA Human Resources, about MGA hiring practices. She was also deposed on the subject of MGA's trade secret claims: 1) MGA's efforts to protect the secrecy of its information, 2) the type of information that MGA maintained as secret, and 3) whether MGA employees had ever snuck into Mattel showrooms. Again, this cost is recoverable.

Tyler Bradley is one of the former Mattel employees that stole from MGA's showrooms. Her deposition is necessarily related and relevant to MGA's trade secret claims for which MGA seeks costs. MGA ultimately was not able to obtain her appearance at trial because she lives in Georgia. However, MGA made every effort to obtain Bradley's appearance at trial, even seeking to have her appear by video conference. *See* Dkt. No. 10242 (Trial Brief re Bradley); Dkt. No. 10242 (Decl. re Testimony of Bradley); Dkt. No. 10325 (Supp'l Trial Brief re Bradley). The failure to call her as a witness is not MGA's fault, even were MGA required to have her as a witness at trial to recover costs—something the rules do not require.

Jorge Castilla and Steven Olson were also witnesses deposed by Mattel. Castilla, as this Court knows, was charged with stealing trade secrets relating to Mattel's inventory system because, as Mattel claimed, such a system was necessary to exploit Bratz. Steven Olson is an attorney at O'Melveny & Myers that Mattel

deposed about the information he gathered concerning the alleged theft of trade secrets in Mexico. Again, these issues go to Mattel's claims concerning the theft of trade secrets to exploit Bratz.

Finally, Yahuda Bassok was an expert designated to testify on forecasting and inventory systems—the items that Jorge Castilla allegedly stole. Mattel deposed Professor Bassok three times, including during trial. His testimony was relevant and related to Mattel's claims that trade secrets were stolen to exploit the alleged copyright Bratz.

### G. James Malackowski—Exhibits 27, 37-38.

Mattel's argument demonstrates why the invoices of James Malackowski, MGA's damages expert, are properly submitted for an award of costs. Mattel argues that the expert fees incurred in April and May 2011 indicate that they "were related to damages for MGA's affirmative claims." Obj. at 9. As such, MGA is entitled to recover these costs by the express terms of Section 3246.4, which provides for the recovery of expert costs. In addition, as this Court knows, Malackowski's testimony was also related to Mattel's claims for damages on its affirmative case of ownership and exploitation of Bratz. For this reason, the costs are recoverable as well under Section 505.

### H. Copier Rental And Reproduction Costs—Exhibits 39-45.

Mattel's only challenge here is the same tired apportionment arguments, which MGA has already shown is unnecessary. *Compare* Obj. at 9 *with* Dkt. No. 10619 at 14-16; Dkt. No. 10588 at 20-22.

### I. Attorneys' Bills And JAMS Retainer Fees—Exhibits 48, 49, 50.

Mattel's objections to Exhibits 48 and 50 complaining of redactions have been addressed here and elsewhere, and are not grounds for the denial of fees. Obj. at 9-10. MGA agrees that it should not be reimbursed for the JAMS retainer fee if all the funds are refunded. Obj. at 10. But to the extent not refunded, MGA is entitled to an award of costs in the amount not refunded. Mattel's objection does

not voice a concern in this regard.

## II. MATTEL'S ADDITIONAL AND LATE OBJECTIONS TO THE EXHIBITS FILED ON MAY 5, 2011 SUPPORTING AN AWARD OF COSTS.

With regard to the objections that follow, Mattel had a full opportunity to brief and argue any deficiencies it wished. All of the exhibits referenced below were filed with the Court on May 5, 2011. For this reason alone, Mattel's objections should be rejected.

That said, MGA responds as follows.

### A. Discovery Master Invoice—Exhibit 12.

Mattel's complaints of a lack of description have been answered. Mattel does not challenge the reasonable of these costs. Mattel too has received invoices from the Discovery Master, and to MGA's knowledge, Mattel has never challenged the costs as unreasonable. But Mattel also claims that costs incurred after August 2010 should not be the subject of any cost award because "those costs were incurred after . . . MGA first asserted its trade secret claim . . . ." Obj. at 10.

MGA is seeking costs under the California Uniform Trade Secret Act as well. Therefore, Mattel's objection can be rejected for that reason. Moreover, there is no plausible way to argue that the Discovery Master's work can or could be isolated to just Mattel's copyright claims.

### B. Deposition Costs—Exhibits 17, 18 and 56.

As discussed above, Mattel attacks the deposition costs because many of the witnesses were not called at trial. Obj. at 10. However, as noted, there is no rule that imposes such a requirement, and such a rule would be unfair. *See* Part I, F, *supra*. Mattel, not MGA, sought the depositions of people like Rebecca Harris, David Malacrida, and Edmond Lee. *See, e.g.*, Exhibit 18 at 10708, 10718, 10816. MGA should not be denied costs because it obtained the transcripts of those witnesses and then Mattel decided not to call them at trial.

Mattel also argues apportionment, claiming that a host of people do not relate

to Mattel's copyright claims. But the testimony of witnesses like Castilla (alleged to have stolen Mattel trade secrets), Goveia-Gordon (the MGA supervisor of Janine Brisbois), Trueba and Vargas go to Mattel's claim that MGA stole trade secrets to improperly exploit Bratz. The testimony of witnesses like Villasenor and Carey Plunkett go to MGA's trade secret claim; they stole MGA trade secrets. And Machado was asked both about the theft of trade secrets from Mattel *and* about MGA's claimed attempt to hire Villasenor, which was one of Mattel's defenses to MGA's trade secret claims.

Mattel's claim that there should be apportionment of costs relating to witnesses such as De Anda, Eckert, Jolicouer, Normile, Moore and Thomas defies credulity. All these individuals testified on the issues relevant to Mattel's theft of MGA trade secrets and to Mattel's copyright claims. In the case of MGA employee Jolicouer, he testified on MGA's efforts to maintain secrecy and as a 30b6 witness issues pertaining to Mattel's copyright claims. Therefore, there is no cause to apportion these costs. Regarding the interest charge appearing on certain of the invoices in Exhibit 17, Obj. at 11 n. 2, MGA is not seeking that as a cost.

Finally, Mattel claims that the Exhibits 17 and 18 contain duplicative invoices. The dollar amounts sought do not include any duplicative invoices.

### C. **Spanish Translation Service—Exhibits 21.**

Mattel claims that the translation service for Ricardo Ibarra and Roberto Isaias "clearly relate to Mattel's non-Bratz trade secret claims." Obj. at 11.

Roberto Ibarra admitted to speaking English, but still wished to have an interpreter. He was Mattel's Marketing Director for Mattel Mexico. True, he did offer testimony concerning Mattel's trade secret claims, which is in any case part and parcel of Mattel's copyright claim, but he also offered testimony concerning the market intelligence group and the ways in which Mattel gathered market intelligence, which is relevant to MGA's trade secret claims. Similarly, Roberto Isaias, Mattel's Vice President and General Manager of Mattel de Mexico, testified

1  about Mattel's trade secret claims and about toy fairs, including that he did not
2  believe that MGA would allow Mattel to enter such toy fairs and that it would be
3  improper had Mattel entered into toy fairs. These costs too are therefore properly
4  sought.

### D. Expert Costs—Exhibits 25, 27, 28, 29, 32, 34, 37.

MGA is seeking expert fees both for the experts retained in Phase 1 and in this last trial. With regard to this last trial, as this Court will recall, Mattel designated 20 experts. MGA designate four experts. The Court did not limit Mattel's number of designated experts. 11/17/11 Tr. (Vol. 3) at 158-62. But the vast majority of these 20 Mattel experts never saw the stand; they were obviously intended to keep MGA distracted and scrambling while trial loomed. Furthermore, MGA did not designate an expert to respond to each of Mattel's expert opinions.

In any case, Thomas Gruca (Exhibit 27) is a Professor of Marketing designated to rebut the opinion of Mattel expert Dan Kivetz. Jan Duffy (Exhibit 37) was designated as a rebuttal expert to Mattel experts Jeffrey Breslow, Ginger McRae and Angel Gomez, all of whom Mattel designated to speak on the issue of the interpretation of the Inventions Agreement. None of these expert witnesses were called by Mattel. MGA nonetheless had to incur the costs in case they did.

As for the remaining experts, all were retained to offer opinions going directly to the issue of the copyright claims. *See* Dkt. No. 10588 at 22. While Mattel claims that these costs should not be recovered because these experts were not called, Mattel does not claim that MGA had some improper motive in retaining these witnesses or that these witnesses were somehow irrelevant or unnecessary to the proceedings at the time they were retained. As this Court well knows, the vagaries of a case, as it develops to trial, often dictate that an expert will not be called. But that does not mean that their retention was somehow unwarranted or unnecessary. As for the case cited by Mattel, as noted, *Duff & Fenley, LLC*, 2007 WL 2973549 at *7, it does not hold that a party is unable to recover fees for

1  witnesses that were not called at trial.

2  **E.  Remaining Objections.**

3  The remainder of Mattel's objections found on pages 12 and 13 of its brief all complain of a failure to apportion and redactions. That issue has now been twice briefed. And the reasons why apportionment is unnecessary are set forth in full in MGA's Motion for Fees and in its Reply in support. Dkt. No. 10619 at 14-16; Dkt. No. 10588 at 20-22. There is no need to replow that field.

## **CONCLUSION**

For the foregoing reasons, Mattel's objections should be overruled.

Dated: July 25, 2011            Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP


By: */s/ Warrington S. Parker III*
    Warrington S. Parker III
  Attorneys for MGA ENTERTAINMENT, INC.,
  MGA ENTERTAINMENT HK, LTD., MGA de
  MEXICO, S.R.L. de C.V., and ISAAC LARIAN