# EXHIBIT G

CV 04-9049 DOC - 2/10/2011 - Day 16, Volume 1 of 4

1

1         UNITED STATES DISTRICT COURT

2         CENTRAL DISTRICT OF CALIFORNIA

3    HONORABLE DAVID O. CARTER, JUDGE PRESIDING

4              - - - - - - -

5

6    MATTEL, INC., et al.,              )
                                        )
7              Plaintiffs,              )
                                        )
8         vs.                           ) No. CV 04-9049 DOC
                                        )     Day 16
9    MGA ENTERTAINMENT, INC., et al.,   )     Volume 1 of 4
                                        )
10             Defendants.              )
                                        )
11   _____

12

13

14        REPORTER'S TRANSCRIPT OF PROCEEDINGS

15              Jury Trial

16         Santa Ana, California

17       Thursday, February 10, 2011

18

19

20

21   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
22   United States District Court
     411 West 4th Street, Room 1-053
23   Santa Ana, California 92701
     (714) 558-8141
24

25   04cv9049 Mattel 2011-02-10 D16V1

CERTIFIED COPY
Debbie Gale, CSR 9472

Exhibit G - Page 13

CV 04-9049 DOC - 2/10/2011 - Day 16, Volume 1 of 4

2

1    **APPEARANCES OF COUNSEL:**

2

3    FOR PLAINTIFF MATTEL, INC., ET AL.:

4                QUINN EMANUEL URQUHART & SULLIVAN
             BY:  JOHN QUINN
                  WILLIAM PRICE
5                 MICHAEL T. ZELLER
                  Attorneys at Law
6            865 South Figueroa Street
             10th Floor
7            Los Angeles, California 90017
             (213) 443-3000

8

9

10

11   FOR DEFENDANT MGA ENTERTAINMENT, INC., ET AL:

12               ORRICK, HERRINGTON & SUTCLIFFE, LLP (Irvine)
             BY:  THOMAS S. McCONVILLE
13                Attorney at Law
             4 Park Plaza
14           Suite 1600
             Irvine, California 92614
15           (949) 567-6700

16           - AND -

17               ORRICK, HERRINGTON & SUTCLIFFE, LLP (SF)
             BY:  ANNETTE L. HURST
18                Attorney at Law
             405 Howard Street
19           San Francisco, California 94105
             (415) 773-5700

20           - AND -

21               KELLER RACKAUCKAS
             BY:  JENNIFER KELLER
22                Attorney at Law
             18500 Von Karman Avenue
23           Suite 560
             Irvine, California 92612
24           (949) 476-8700

25

DEBBIE GALE, U.S. COURT REPORTER

3

1    **APPEARANCES OF COUNSEL (Continued):**

2

3    FOR CARLOS GUSTAVO MACHADO GOMEZ:

4
          LAW OFFICES OF MARK E. OVERLAND
5         By:  MARK E. OVERLAND
                  Attorney at Law
6         100 Wilshire Boulevard
          Suite 950
7         Santa Monica, California 90401
          (310) 459-2830
8
          - AND -
9
          SCHEPER KIM & HARRIS LLP
10        BY:  ALEXANDER H. COTE
                  Attorney at Law
11        601 West 5th Street
          12th Floor
12        Los Angeles, California 90071
          (213) 613-4660
13

14   ALSO PRESENT:

15        MGA ENTERTAINMENT, INC.
          BY:  JEANINE PISONI
16                Attorney at Law
          16360 Roscoe Boulevard
17        Suite 105
          Van Nuys, California 91406
18

19        ROBERT ECKERT, Mattel CEO

20        ISAAC LARIAN, MGA CEO

21        KEN KOTARSKI, Mattel Technical Operator

22        MIKE STOVALL, MGA Technical Operator

23        RACHEL JUAREZ, Quinn Emanuel Urquart & Sullivan

24

25

DEBBIE GALE, U.S. COURT REPORTER

4

# I N D E X

| WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| LARIAN, Isaac | | | | |
| By Mr. Price | 6 | | | |

## EXHIBITS

| EXHIBIT NO. | IDENTIFICATION | IN EVIDENCE |
|---|---|---|
| 827 | E-mail between Mr. Larian and Mr. Bryant | 13 |
| 7056 | E-mail string betweeen Mr. Larian and Mr. Brawer, dated 4/11/2005 | 113 |
| 7540 | E-mail chain between Mr. Larian and Ms. Hocut | 115 |
| 7544 | E-mail from Mr. Larian dated 2/24/2006 | 118 |
| 8928 | E-mail string | 10 |
| 8947 | E-mail string between Mr. Larian and Ms. Garcia dated 1/29/2004 | 23 |
| 11641 | E-mail | 8 |
| 13223 | E-mail from Mr. Marlow to Ms. Garcia and Mr. Larian | 38 |
| 13624 | E-mail string from Mr. Marlow to Mr. Larian | 26 |

**Exhibit G - Page 16**

CV 04-9049 DOC - 2/10/2011 - Day 16, Volume 1 of 4

5

| | | | |
|---|---|---|---|
| | **EXHIBITS** (Continued) | | |
| EXHIBIT NO. | | IDENTIFICATION | IN EVIDENCE |

22173   E-mail chain between
        Mr. Larian, Ms. Garcia
        and Mr. Hall                                          16

22292   E-mail string between
        Mr. Larian and
        Ms. Garcia                                            35

**Exhibit G - Page 17**

CV 04-9049 DOC - 2/10/2011 - Day 16, Volume 1 of 4

118

| | | |
|---|---|---|
| 11:28 | 1 | and that's 7544. |
| 11:28 | 2 | A.   It's the same e-mail?  I'm sorry. |
| 11:28 | 3 | Q.   No.  It's a different one, Mr. Larian.  And I'll, this |
| 11:28 | 4 | time, wait until Rachel, Ms. Juarez, finds it for you. |
| 11:28 | 5 | A.   She's doing a great job. |
| 11:28 | 6 | *(Document provided to the witness.)* |
| 11:28 | 7 | BY MR. PRICE: |
| 11:28 | 8 | Q.   So you have 7544 in front of you? |
| 11:28 | 9 | A.   Yes.  Just give me a moment to... |
| 11:28 | 10 | Q.   Certainly. |
| 11:29 | 11 | A.   Go ahead.  Yes, I have -- I'm on this e-mail, at least |
| 11:29 | 12 | the bottom portion. |
| 11:29 | 13 |         MR. PRICE:  Your Honor, move Exhibit 7544 into |
| 11:29 | 14 | evidence. |
| 11:29 | 15 |         THE COURT:  Received. |
| 11:29 | 16 |         *(Exhibit No. 7544 received in evidence.)* |
| 11:29 | 17 |         *(Document displayed.)* |
| 11:29 | 18 | BY MR. PRICE: |
| 11:29 | 19 | Q.   And so this is e-mail -- if we can look at 7544 -- |
| 11:29 | 20 | there's the bottom e-mail that you send out, correct?  I'm |
| 11:29 | 21 | sorry.  7544-00002.  There's the e-mail which you send out, |
| 11:29 | 22 | correct? |
| 11:29 | 23 | A.   Yes. |
| 11:29 | 24 | Q.   That's dated February 24, 2006? |
| 11:29 | 25 | A.   Yes. |

DEBBIE GALE, U.S. COURT REPORTER

**Exhibit G - Page 18**

CV 04-9049 DOC - 2/10/2011 - Day 16, Volume 1 of 4

119

| | | |
|---|---|---|
| 11:29 | 1 | Q. That's about three weeks after the e-mail we just saw |
| 11:29 | 2 | on February 3rd, 2006, right? |
| 11:30 | 3 | A. Yes. |
| 11:30 | 4 | Q. And if you look at -- at the one you wrote on |
| 11:30 | 5 | February 24th. "I want this reviewed and handled for the |
| 11:30 | 6 | first day when I come back. Our forecast sales is out of |
| 11:30 | 7 | whack." |
| 11:30 | 8 | Do you see that? |
| 11:30 | 9 | A. Yes, I did. |
| 11:30 | 10 | Q. And the number two item there is that "we are not |
| 11:30 | 11 | forecasting correctly," which you say is a sales problem, |
| 11:30 | 12 | correct? |
| 11:30 | 13 | A. Yes. |
| 11:30 | 14 | Q. And you tell Mr. Brawer that he has to "take this on |
| 11:30 | 15 | and lead it," that it's a big concern of yours, right? |
| 11:30 | 16 | A. Yes. |
| 11:30 | 17 | Q. And Mr. Castilla is hired about three weeks after that; |
| 11:30 | 18 | isn't that right? |
| 11:30 | 19 | A. I don't know. I take your representation. |
| 11:30 | 20 | Q. At some point it came to your attention that, before |
| 11:30 | 21 | leaving his job at Mattel, that he downloaded information |
| 11:31 | 22 | from Mattel on his -- on his PDA? |
| 11:31 | 23 | A. Yes. At some point it came to my attention during this |
| 11:31 | 24 | litigation. |
| 11:31 | 25 | Q. And do you remember what year that came to your |

DEBBIE GALE, U.S. COURT REPORTER

**Exhibit G - Page 19**

| | | |
|---|---|---|
| 11:31 | 1 | attention? |
| 11:31 | 2 | A. No, I don't. |
| 11:31 | 3 | Q. Can you give us some estimate as to whether it was in |
| 11:31 | 4 | the last two years or three years? |
| 11:31 | 5 | A. I can't. |
| 11:31 | 6 | Q. Okay. Do you recall, I think, yesterday saying that |
| 11:31 | 7 | you don't want Mattel employees to bring any Mattel |
| 11:31 | 8 | information to you, not now, not ever? |
| 11:31 | 9 | A. Yes, and not tomorrow. |
| 11:31 | 10 | Q. But at some point you understood that Mr. Castilla |
| 11:31 | 11 | joined MGA, and before that, downloaded files that he had at |
| 11:32 | 12 | Mattel, right? |
| 11:32 | 13 | A. I found out about that, yes. He never brought 'em to |
| 11:32 | 14 | MGA. |
| 11:32 | 15 | Q. Well, do you have any understanding as to what, you |
| 11:32 | 16 | know, the types of things were that he downloaded? |
| 11:32 | 17 | A. I have no idea. I don't. |
| 11:32 | 18 | Q. Does, uh -- does MGA do strategic plans? |
| 11:32 | 19 | A. Once in a while. |
| 11:32 | 20 | Q. A strategic plan, is that an exercise where you try to |
| 11:32 | 21 | figure out where the company's going, where you're going to |
| 11:32 | 22 | concentrate your resources, things of that nature? |
| 11:32 | 23 | A. Yeah, we do 'em once in a while. We a small company. |
| 11:32 | 24 | Q. And is it your understanding that one of the things |
| 11:32 | 25 | that Mr. Castilla downloaded before he left Mattel was a |

**Exhibit G - Page 20**

CV 04-9049 DOC - 2/10/2011 - Day 16, Volume 1 of 4

121

| | | |
|---|---|---|
| 11:33 | 1 | five-year strategic plan? |
| 11:33 | 2 | A.   No.  I have no idea what he downloaded.  It's the first |
| 11:33 | 3 | time I'm hearing that he downloaded five-year strategic plan |
| 11:33 | 4 | of Mattel -- even today. |
| 11:33 | 5 | Q.   Have you ever tried to find out what Mr. Castilla |
| 11:33 | 6 | downloaded before he left Mattel and went to MGA? |
| 11:33 | 7 | A.   No.  What I did try to find out -- if he brought |
| 11:33 | 8 | anything to MGA, and it was confirmed to me that he didn't |
| 11:33 | 9 | bring anything from Mattel to MGA. |
| 11:33 | 10 | Q.   Well -- but you wouldn't want to have an employee |
| 11:33 | 11 | working for MGA that you know downloaded important |
| 11:33 | 12 | information from Mattel when he left Mattel, right? |
| 11:33 | 13 | A.   I'm sorry? |
| 11:33 | 14 | Q.   Sure.  You wouldn't want to employ someone at MGA who |
| 11:33 | 15 | you know downloaded information from Mattel before he came |
| 11:34 | 16 | and worked for MGA? |
| 11:34 | 17 | A.   Yes.  It's very stupid for somebody -- especially when |
| 11:34 | 18 | he was told not to bring anything with him, it's very stupid |
| 11:34 | 19 | of anybody -- Jorge Castilla -- to download something to |
| 11:34 | 20 | take out of Mattel.  Very stupid. |
| 11:34 | 21 | Q.   And you wouldn't want to employ someone who did that |
| 11:34 | 22 | 'cause you wouldn't trust them anymore, right? |
| 11:34 | 23 | A.   If we knew that, yes, I would not want to hire him, |
| 11:34 | 24 | absolutely. |
| 11:34 | 25 | Q.   If you knew that he had downloaded it? |

DEBBIE GALE, U.S. COURT REPORTER

**Exhibit G - Page 21**

CV 04-9049 DOC - 2/10/2011 - Day 16, Volume 1 of 4

122

| 11:34 | 1 | A.    If I knew that he was bringing -- we had told Jorge |
| 11:34 | 2 | Castilla -- we tell actually every employee at MGA that we |
| 11:34 | 3 | hire, "Just come with your brain. We don't want you to |
| 11:34 | 4 | bring anything else." And he was told that. And I learned |
| 11:34 | 5 | afterwards, when he was hired, that he had downloaded the |
| 11:34 | 6 | information from Mattel against our advice. |
| 11:35 | 7 | Q.    So -- |
| 11:35 | 8 | A.    And I don't know what he had downloaded. Today is the |
| 11:35 | 9 | first time I hear that he downloaded -- whatever you called |
| 11:35 | 10 | it -- strategic plan. And I don't think it's right. He |
| 11:35 | 11 | should not have done that. |
| 11:35 | 12 | Q.    So, obviously, you fired him because you said "Just |
| 11:35 | 13 | come with your brain"? |
| 11:35 | 14 | A.    Fired him when? |
| 11:35 | 15 | Q.    Mr. Castilla, once you learned that he had downloaded |
| 11:35 | 16 | information from Mattel on his PDA and that that was the |
| 11:35 | 17 | wrong thing to do -- once you learned that, you obviously |
| 11:35 | 18 | fired him because you had told him "Just come with your |
| 11:35 | 19 | brain"? |
| 11:35 | 20 | A.    No. Because people make mistakes. He made mistake. |
| 11:35 | 21 | He has a family. He has children. And I knew that Mattel |
| 11:35 | 22 | was doing this to get to me. I had no issues with Jorge |
| 11:35 | 23 | Castilla. |
| 11:35 | 24 |     You wanted to get to me. And I did not fire him. He |
| 11:36 | 25 | apologized. He said he was remorseful, he was sorry for |

DEBBIE GALE, U.S. COURT REPORTER

**Exhibit G - Page 22**

| | | |
|---|---|---|
| 11:36 | 1 | doing what he did.  And I did not fire him. |
| 11:36 | 2 | Q.   I think you've told us you tell everybody who you hire |
| 11:36 | 3 | from Mattel just "Bring your brains.  Don't download stuff," |
| 11:36 | 4 | right? |
| 11:36 | 5 | A.   I tell 'em "Not to bring anything but your brain." |
| 11:36 | 6 | Q.   And you -- |
| 11:36 | 7 | A.   Whether they from Mattel or any other toy company. |
| 11:36 | 8 | Q.   And you eventually learned that Mr.-- is that an |
| 11:36 | 9 | important promise that you get when you hire people? |
| 11:36 | 10 | A.   Yes. |
| 11:36 | 11 | Q.   And you know that, if they download stuff from |
| 11:36 | 12 | Mattel -- right? -- that even if they don't bring it into |
| 11:36 | 13 | the offices of MGA, that that's something they will have |
| 11:36 | 14 | access to that they might be able to use in performing their |
| 11:36 | 15 | job, right? |
| 11:36 | 16 | A.   I don't know if that's true or not. |
| 11:36 | 17 | I know for a fact, 100 percent, two things:  That, A, |
| 11:37 | 18 | he never brought that information to MGA; and more |
| 11:37 | 19 | importantly, our forecasting system has gotten worse since |
| 11:37 | 20 | Jorge Castilla joined MGA. |
| 11:37 | 21 | Q.   Hope springs eternal. |
| 11:37 | 22 | But let me ask you about Mr. Castilla.  I think you |
| 11:37 | 23 | said that's an important promise that he -- that you ask 'em |
| 11:37 | 24 | to make to you, that they not do things like download |
| 11:37 | 25 | information from a competitor, right? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 2/10/2011 - Day 16, Volume 1 of 4

124

| 11:37 | 1 | A. Yes. It's not appropriate. |
| 11:37 | 2 | Q. And, if that's important, then you certainly would -- |
| 11:37 | 3 | would want to, uh, discipline the employee in some way. |
| 11:37 | 4 | A. If they didn't bring it to MGA and he didn't use it for |
| 11:37 | 5 | MGA, again, I don't know what to do about disciplining him. |
| 11:37 | 6 | I didn't fire him. I had compassion for him and his family. |
| 11:37 | 7 | I did not fire him. |
| 11:37 | 8 | Q. Well, you -- you didn't discipline him in any way |
| 11:38 | 9 | either, right? |
| 11:38 | 10 | A. I don't remember that. He didn't report to me |
| 11:38 | 11 | directly. I don't know if he was disciplined or not, but |
| 11:38 | 12 | again, he didn't bring anything to MGA. |
| 11:38 | 13 | Q. In situations like this, do you agree that you send a |
| 11:38 | 14 | message to other employees by the way you handle situations |
| 11:38 | 15 | like this: You send a message as to how seriously you take |
| 11:38 | 16 | the promise that they won't download information from a |
| 11:38 | 17 | competitor before joining you? |
| 11:38 | 18 | A. We take it very seriously. That's why we tell them in |
| 11:38 | 19 | person and in writing. We take it very seriously. |
| 11:38 | 20 | Q. But as important as what you tell them is the way you |
| 11:38 | 21 | act, correct? Would you agree with that? |
| 11:38 | 22 | A. What you say? I'm sorry. |
| 11:39 | 23 | Q. As important as what you tell them, I mean, is the way |
| 11:39 | 24 | you act, correct? |
| 11:39 | 25 | A. Yes. |

DEBBIE GALE, U.S. COURT REPORTER

**Exhibit G - Page 24**

CV 04-9049 DOC - 2/10/2011 - Day 16, Volume 1 of 4

125

| | | |
|---|---|---|
| 11:39 | 1 | Q.   And you don't want to be sending a message to your |
| 11:39 | 2 | other employees that you don't take the promise seriously |
| 11:39 | 3 | that you -- that you have them make, that they haven't |
| 11:39 | 4 | downloaded anything from a competitor? |
| 11:39 | 5 | MS. KELLER:  Objection.  Your Honor, this assumes |
| 11:39 | 6 | facts not in evidence about when Mr. Larian found out, and |
| 11:39 | 7 | how, and how much. |
| 11:39 | 8 | THE COURT:  Overruled. |
| 11:39 | 9 | THE WITNESS:  Again, we found out -- I mean, |
| 11:39 | 10 | should I get into the detail of when I found out, and how I |
| 11:39 | 11 | found out?  Or -- that should be for another day? |
| 11:39 | 12 | BY MR. PRICE: |
| 11:39 | 13 | Q.   You can give us a day or a week or a year. |
| 11:39 | 14 | A.   I mean, I don't remember the date.  But I can tell you |
| 11:39 | 15 | the circumstances when I found out through this litigation |
| 11:39 | 16 | what happened.  Should I say that?  I don't know. |
| 11:39 | 17 | Q.   Your counsel might ask you the circumstances, and then |
| 11:39 | 18 | I'll get a chance to ask questions. |
| 11:40 | 19 | But my question right now is -- |
| 11:40 | 20 | A.   Okay.  My answer is, Mr. Price, that 100 percent Jorge |
| 11:40 | 21 | Castilla, what he did at Mattel was wrong.  But he did not |
| 11:40 | 22 | bring any of that to MGA.  And that information, whatever it |
| 11:40 | 23 | is, has never been used at MGA, and we can prove that. |
| 11:40 | 24 | Q.   My question's a bit different. |
| 11:40 | 25 | You tell these folks not to download information from |

CV 04~9049 DOC - 2/10/2011 - Day 16, Volume 1 of 4

126

| | | |
|---|---|---|
| 11:40 | 1 | your competitors when they leave, right? |
| 11:40 | 2 | A.   I do. |
| 11:40 | 3 | Q.   Okay.  And you want that request to be taken seriously, |
| 11:40 | 4 | right? |
| 11:40 | 5 | A.   Yes, I do. |
| 11:40 | 6 | Q.   And you understand that sometimes actions speak louder |
| 11:40 | 7 | than words, right? |
| 11:40 | 8 | A.   Yes. |
| 11:40 | 9 | Q.   And so other employees might be looking at you to see |
| 11:40 | 10 | what do you do when you learn that an employee has |
| 11:40 | 11 | intentionally downloaded information of a competitor at the |
| 11:41 | 12 | time they leave the competitor, right? |
| 11:41 | 13 | A.   Yes, you're right. |
| 11:41 | 14 | Q.   And even sitting here today, you told me you don't know |
| 11:41 | 15 | what he took? |
| 11:41 | 16 | A.   I don't.  You just told me what he took. |
| 11:41 | 17 | MS. KELLER:  Objection.  Your Honor, these were |
| 11:41 | 18 | AEO materials. |
| 11:41 | 19 | THE COURT:  Overruled. |
| 11:41 | 20 | THE WITNESS:  You just told me what he took.  I |
| 11:41 | 21 | didn't know it up till now. |
| 11:41 | 22 | BY MR. PRICE: |
| 11:41 | 23 | Q.   Well, I don't want you to take my word for it.  So, |
| 11:41 | 24 | even before you took the stand, you did not know what it was |
| 11:41 | 25 | that Mr. Castilla took, correct? |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC - 2/10/2011 - Day 16, Volume 1 of 4

127

| | | |
|---|---|---|
| 11:41 | 1 | A.   Absolutely, correct. |
| 11:41 | 2 | Q.   And, therefore, you don't know if he referred to it |
| 11:41 | 3 | while doing his job or used the information in those |
| 11:41 | 4 | materials to do his job 'cause you don't know what he took? |
| 11:41 | 5 | A.   I don't know what he took.  But whatever he took, and |
| 11:41 | 6 | if he referred to it, our forecasting system today is worse |
| 11:41 | 7 | than what was when Jorge Castilla joined MGA. |
| 11:42 | 8 | Q.   So it's -- |
| 11:42 | 9 | A.   So it must have not been very good things that he took. |
| 11:42 | 10 | Q.   So, uh, it's okay for you, then, if someone takes |
| 11:42 | 11 | information from a competitor and it turns out when you use |
| 11:42 | 12 | it, it doesn't work out? |
| 11:42 | 13 | A.   Two questions you asked, and I'm gonna answer 'em one |
| 11:42 | 14 | by one. |
| 11:42 | 15 | MS. KELLER:  Your Honor, that assumes facts not in |
| 11:42 | 16 | evidence. |
| 11:42 | 17 | THE COURT:  Overruled. |
| 11:42 | 18 | THE WITNESS:  Absolutely, it is not.  It is not |
| 11:42 | 19 | okay for any employee to take one company's trade secret to |
| 11:42 | 20 | another.  It's absolutely not okay to download it, |
| 11:42 | 21 | especially if that person's been told not to do it. |
| 11:42 | 22 | Secondly, the second answer to your question is, |
| 11:42 | 23 | you said he used it at MGA.  He did not use it at MGA. |
| 11:42 | 24 | BY MR. PRICE: |
| 11:42 | 25 | Q.   And you can't know that without knowing what it is he |

DEBBIE GALE, U.S. COURT REPORTER

**Exhibit G - Page 27**

CV 04-9049 DOC - 2/10/2011 - Day 16, Volume 1 of 4

128

| | | |
|---|---|---|
| 11:42 | 1 | took, right? |
| 11:42 | 2 | A.    You're right. |
| 11:43 | 3 | Q.    And without knowing what he took and, therefore, |
| 11:43 | 4 | without knowing whether he could have used it at MGA, |
| 11:43 | 5 | beginning in about August of 2007, MGA began paying his |
| 11:43 | 6 | legal fees? |
| 11:43 | 7 | A.    We did. |
| 11:43 | 8 | Q.    So at that time you knew he had downloaded information |
| 11:43 | 9 | from Mattel when he left Mattel, correct? |
| 11:43 | 10 | A.    We found out through litigation that he had done that, |
| 11:43 | 11 | yes. |
| 11:43 | 12 | Q.    And you knew that before you started paying his |
| 11:43 | 13 | attorneys fees, correct? |
| 11:43 | 14 | A.    I don't know if we did -- we knew that before or after, |
| 11:43 | 15 | I don't. |
| 11:43 | 16 | Q.    Uh -- |
| 11:43 | 17 | A.    I don't know we knew that then, no. |
| 11:43 | 18 | Q.    You knew at the time you began paying his attorneys |
| 11:44 | 19 | fees that there was at least an accusation he had downloaded |
| 11:44 | 20 | information from MGA, correct? -- from Mattel.  I'm sorry. |
| 11:44 | 21 | A.    Again, I know a lot of detail.  I'm not sure if I can |
| 11:44 | 22 | get into it right now or not.  But we hired a lawyer for |
| 11:44 | 23 | him, yes.  That's all I'm gonna say at this time. |
| 11:44 | 24 | Q.    And at the time you did that, you understood that there |
| 11:44 | 25 | were allegations against Mr. Castilla that he had downloaded |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 2/10/2011 – Day 16, Volume 1 of 4

129

| | | |
|---|---|---|
| 11:44 | 1 | information from Mattel when he quit and went to MGA, right? |
| 11:44 | 2 | A.   That's what he told us, yes, when he came to my office. |
| 11:44 | 3 | Q.   And -- |
| 11:44 | 4 | A.   That was month after he was hired at MGA. |
| 11:44 | 5 | Q.   And I think I have the date wrong here. |
| 11:45 | 6 |      You began paying his fees in -- it was about February |
| 11:45 | 7 | of 2007? |
| 11:45 | 8 | A.   I don't know the date. |
| 11:45 | 9 | Q.   Have you continued paying Mr. Castilla's legal fees? |
| 11:45 | 10 | A.   When? |
| 11:45 | 11 | Q.   I mean, to this date, have you continued paying? |
| 11:45 | 12 | A.   No.  We don't pay his legal fees anymore. |
| 11:45 | 13 | Q.   When did you stop -- I just want a date now:  When did |
| 11:45 | 14 | you stop paying Mr. Castilla's legal fees? |
| 11:45 | 15 |      MS. KELLER:  Objection, Your Honor.  Calls for a |
| 11:45 | 16 | information that was the subject of MIL's. |
| 11:46 | 17 |      THE COURT:  Just a moment.  What would the next |
| 11:46 | 18 | question be? |
| 11:46 | 19 |      The question, right now, is "When did you stop |
| 11:46 | 20 | paying?" |
| 11:46 | 21 |      MR. PRICE:  Just a timeframe.  That's why I said |
| 11:46 | 22 | "just a date." |
| 11:46 | 23 |      THE COURT:  Overruled. |
| 11:46 | 24 |      THE WITNESS:  And I don't know the date. |
| | 25 | |

DEBBIE GALE, U.S. COURT REPORTER

**Exhibit G - Page 29**

CV 04-9049 DOC – 2/10/2011 – Day 16, Volume 1 of 4

130

| | | |
|---|---|---|
| 11:46 | 1 | BY MR. PRICE: |
| 11:46 | 2 | Q.    It was over a number of years, correct? |
| 11:46 | 3 | A.    What was over a number of years? |
| 11:46 | 4 | Q.    That you were paying Mr. Castilla's attorneys fees |
| 11:46 | 5 | after the accusation that he'd downloaded material from |
| 11:46 | 6 | Mattel when he left Mattel? |
| 11:46 | 7 | A.    Well, no, you're -- either I'm confused or you're |
| 11:47 | 8 | trying to confuse me, but... |
| 11:47 | 9 | Q.    Let me try to make it simpler. |
| 11:47 | 10 | A.    Yes. |
| 11:47 | 11 | Q.    I'm gonna ask that Ms. Juarez put before you |
| 11:47 | 12 | Exhibit 6741. |
| 11:47 | 13 |          (Document provided to the witness.) |
| 11:47 | 14 |          THE WITNESS:  Okay.  Go ahead.  You want me to |
| 11:47 | 15 | read this? |
| 11:47 | 16 |          MR. PRICE:  Yeah.  I'm gonna take you to a certain |
| 11:47 | 17 | page. |
| 11:47 | 18 | BY MR. PRICE: |
| 11:47 | 19 | Q.    You see 6741-00010? |
| 11:47 | 20 | A.    Yes. |
| 11:47 | 21 | Q.    And you see there's a chart there? |
| 11:47 | 22 | A.    Yes. |
| 11:47 | 23 | Q.    And at the front of this, you see this, uh, |
| 11:48 | 24 | Supplemental Response of MGA Entertainment to |
| 11:48 | 25 | Interrogatories? |

DEBBIE GALE, U.S. COURT REPORTER

**Exhibit G - Page 30**

CV 04-9049 DOC - 2/10/2011 - Day 16, Volume 1 of 4

131

| | | |
|---|---|---|
| 11:48 | 1 | A.    Which page? |
| 11:48 | 2 | Q.    That's the first page.  But keep your finger on |
| 11:48 | 3 | page 10. |
| 11:48 | 4 | A.    Yes.  Go ahead. |
| 11:48 | 5 | Q.    And on the chart, on page 10, do you see "Payments made |
| 11:48 | 6 | on behalf of Mr. Castilla"? |
| 11:48 | 7 | A.    That's what it says, yes. |
| 11:48 | 8 | Q.    And does that refresh your recollection that, if you |
| 11:48 | 9 | look at this page, for example, there were payments through |
| 11:48 | 10 | September of 2008 reflected on this page? |
| 11:48 | 11 | A.    Yes.  I see "September 2008" in there. |
| 11:48 | 12 | Q.    And if you'd look at page 16. |
| 11:49 | 13 | A.    Go ahead. |
| 11:49 | 14 | Q.    Do you see there are other payments to Mr. Castilla? |
| 11:49 | 15 | A.    To Mr. Castilla?  Payments to? |
| 11:49 | 16 | Q.    On behalf of Mr. Castilla to his counsel. |
| 11:49 | 17 | A.    Yes. |
| 11:49 | 18 | Q.    And then if you look at 06741-0023, do you see -- |
| 11:49 | 19 | A.    Hold on.  I'm not there yet. |
| 11:49 | 20 | Q.    Sure. |
| 11:49 | 21 | A.    Yes.  Go ahead. |
| 11:49 | 22 | Q.    Do you see that reflects bonus payments? |
| 11:49 | 23 | A.    Where do you see that? |
| 11:49 | 24 | Q.    Okay.  If you look at -- you won't see the context -- |
| 11:49 | 25 | 06741-00022. |

DEBBIE GALE, U.S. COURT REPORTER

CV 04-9049 DOC – 2/10/2011 – Day 16, Volume 1 of 4

132

| 11:50 | 1 | A.    Yes. |
| 11:50 | 2 | Q.    And when this chart starts, it says, that, uh, "The |
| 11:50 | 3 | only such payments made by MGA are bonus payments."  You see |
| 11:50 | 4 | that?  That's in the -- couple sentences right before the |
| 11:50 | 5 | chart. |
| 11:50 | 6 | A.    Yes.  Go ahead.  I see the bonus payments. |
| 11:50 | 7 | Q.    And you see on the next page that there are a couple of |
| 11:50 | 8 | bonus payments made to Mr. Castilla in 2007 and 2008? |
| 11:50 | 9 | A.    Yes. |
| 11:50 | 10 | Q.    Now, do you know whether there have been bonus payments |
| 11:50 | 11 | made to Mr. Castilla since 2008? |
| 11:50 | 12 | A.    I don't. |
| 11:51 | 13 | Q.    Did you -- as far as you're aware, uh, there was no |
| 11:51 | 14 | discipline that was imposed on Mr. Castilla, correct? |
| 11:51 | 15 | A.    At MGA, no, it was not. |
| 11:51 | 16 | Q.    And as far as you are aware, did he have raises? |
| 11:51 | 17 | A.    I don't know. |
| 11:51 | 18 | Q.    You are aware that he had bonuses, correct? |
| 11:51 | 19 | A.    Well, according to this chart, he had two bonuses. |
| 11:51 | 20 | Q.    And you're not aware of any negative impact on |
| 11:51 | 21 | Mr. Castilla's advancement with MGA after you became aware |
| 11:51 | 22 | that, uh, he had downloaded Mattel information before he |
| 11:51 | 23 | left Mattel? |
| 11:51 | 24 | A.    As far as I know, he still does the same job at MGA. |
| 11:52 | 25 | Q.    Now, I want to talk to you now about a Mr. Cooney. |

DEBBIE GALE, U.S. COURT REPORTER

**Exhibit G - Page 32**

CV 04-9049 DOC - 2/10/2011 - Day 16, Volume 1 of 4

133

| | | |
|---|---|---|
| 11:52 | 1 | Do you know a Dan Cooney? |
| 11:52 | 2 | A. Yes, I do. |
| 11:52 | 3 | Q. And was he an individual who worked at Mattel and then |
| 11:52 | 4 | left Mattel to join MGA? |
| 11:52 | 5 | A. Yes. |
| 11:52 | 6 | Q. And do you recall that when he was at Mattel he was |
| 11:52 | 7 | responsible for the boys, kind of, products for Toys R Us? |
| 11:52 | 8 | A. I know he was a salesman for Toys R Us. I don't know |
| 11:52 | 9 | boys or whatever. I don't know. |
| 11:52 | 10 | Q. Did you come to learn that -- when he left Mattel, that |
| 11:52 | 11 | he burned on a CD information that was on Mattel's |
| 11:52 | 12 | computers? |
| 11:52 | 13 | A. I learned through this litigation, yes. |
| 11:52 | 14 | Q. And do you have, uh, any knowledge as to what it was he |
| 11:53 | 15 | downloaded? |
| 11:53 | 16 | A. Yes. I have some knowledge now through this |
| 11:53 | 17 | litigation. I do. |
| 11:53 | 18 | Q. And is it knowledge you've gotten from your attorneys, |
| 11:53 | 19 | or is it something which you became aware of in some other |
| 11:53 | 20 | way? |
| 11:53 | 21 | A. I got it through my attorneys and also as a 30(b)(6) |
| 11:53 | 22 | deponent. |
| 11:53 | 23 | Q. And when you say "30(b)(6)," this is when you were |
| 11:53 | 24 | deposed as the person at MGA most knowledgeable about what |
| 11:53 | 25 | Mr. Cooney downloaded when he left Mattel? |

CV 04-9049 DOC – 2/10/2011 – Day 16, Volume 1 of 4

136

| Time | Line | |
|---|---|---|
| 11:56 | 1 | -oOo- |
| 11:56 | 2 | |
| 11:56 | 3 | CERTIFICATE |
| 11:56 | 4 | |
| 11:56 | 5 | I hereby certify that pursuant to Section 753, |
| 11:56 | 6 | Title 28, United States Code, the foregoing is a true and |
| 11:56 | 7 | correct transcript of the stenographically reported |
| 11:56 | 8 | proceedings held in the above-entitled matter and that the |
| 11:56 | 9 | transcript page format is in conformance with the |
| 11:56 | 10 | regulations of the Judicial Conference of the United States. |
| 11:56 | 11 | |
| 11:56 | 12 | Date:   February 10, 2011 |
| 11:56 | 13 | |
| 11:56 11:56 | 14 | |
| 11:56 11:56 | 15 | |
| 11:56 | 16 | DEBBIE GALE, U.S. COURT REPORTER |
| | | CSR NO. 9472, RPR |
| 11:56 | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

DEBBIE GALE, U.S. COURT REPORTER

1

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3        SOUTHERN DIVISION AT SANTA ANA

4     HONORABLE DAVID O. CARTER, JUDGE PRESIDING

5

6

    **CERTIFIED COPY**

7  MATTEL, INC., ET AL.,    )

                     )

8         PLAINTIFFS,    )

                     )

         vs.           )  CV NO. 04-9049-DOC

9                     )  Day 16

  MGA ENTERTAINMENT, INC., ET AL., )  VOLUME 2 of 4

10                   )

         DEFENDANTS.    )

11  _____)

12

13

14    REPORTER'S TRANSCRIPT OF PROCEEDINGS

15            JURY TRIAL

16        SANTA ANA, CALIFORNIA

17    THURSDAY, FEBRUARY 10, 2011

18         11:57 A.M.

19

20

      DEBORAH D. PARKER, CSR 10342

21      OFFICIAL COURT REPORTER

    UNITED STATES DISTRICT COURT

22      411 WEST FOURTH STREET

        SUITE 1-053

23    SANTA ANA, CALIFORNIA 92701

       (714) 542-8409

24    D.PARKER@IX.NETCOM.COM

25

*DEBORAH D. PARKER, U.S. COURT REPORTER*

2

```
 1    APPEARANCES OF COUNSEL:

 2         FOR THE PLAINTIFF, MATTEL, INC.:

 3                          JOHN QUINN
                            WILLIAM PRICE
 4                          MICHAEL T. ZELLER
                            QUINN EMANUEL URQUHART
 5                          & SULLIVAN, LLP
                            865 S. FIGUEROA STREET
 6                          10TH FLOOR
                            LOS ANGELES, CALIFORNIA 90017
 7                          (213) 443-3000

 8

 9         FOR THE DEFENDANT, MGA ENTERTAINMENT, INC.:

10                          THOMAS S. MC CONVILLE
                            ORRICK HERRINGTON & SUTCLIFFE, LLP
11                          4 PARK PLAZA
                            SUITE 1600
12                          IRVINE, CALIFORNIA 92614
                            (949) 567-6700

13

14                          ANNETTE L. HURST
                            ORRICK HERRINGTON & SUTCLIFFE, LLP
15                          THE ORRICK BUILDING
                            405 HOWARD STREET
16                          SAN FRANCISCO, CALIFORNIA 94105
                            (415) 773-5700

17

18                          JENNIFER L. KELLER
                            KELLER RACKAUCKAS, LLP
19                          18500 VON KARMAN AVENUE
                            SUITE 560
20                          IRVINE, CALIFORNIA 92612
                            (949) 476-8700

21

22

23

24

25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

**Exhibit G - Page 36**

3

```
1    APPEARANCES OF COUNSEL:

2         FOR THE DEFENDANT, CARLOS GUSTAVO MACHADO GOMEZ:

3                              MARK E. OVERLAND
                               LAW OFFICES OF MARK E. OVERLAND
4                              100 WILSHIRE BOULEVARD
                               SUITE 950
5                              SANTA MONICA, CALIFORNIA 90401
                               (310) 459-2830
6

7                              ALEXANDER H. COTE
                               SCHEPER KIM & HARRIS, LLP
8                              601 WEST FIFTH STREET
                               12TH FLOOR
9                              LOS ANGELES, CALIFORNIA 90071
                               (213) 613-4660
10

11   ALSO PRESENT:

12
                               JEANINE PISONI
13                             MGA ENTERTAINMENT, INC.
                               16360 ROSCOE BOULEVARD
14                             SUITE 105
                               VAN NUYS, CALIFORNIA 91406
15

16                             ROBERT ECKERT, MATTEL CEO
                               ISAAC LARIAN, MGA CEO
17                             KEN KOTARSKI, MATTEL TECHNICAL OPERATOR
                               MIKE STOVALL, MGA TECHNICAL OPERATOR
18

19

20

21

22

23

24

25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

4

```
 1                          I N D E X

 2

 3   PLAINTIFF'S WITNESSES:   DIRECT   CROSS   REDIRECT   RECROSS

 4     ISAAC LARIAN                    27

 5

 6                       E X H I B I T S

 7   PLAINTIFF'S EXHIBITS:              IDENTIFICATION   EVIDENCE

 8     3601-000001 E-MAIL                                  39

 9     3609   E-MAIL                                       50

10     3617   E-MAIL                                       55

11     3618   E-MAIL                                       56

12     6416   E-MAIL                                       53

13     6754   PRESENTATION                                 46

14     8859   E-MAIL                                       57

15     8865   E-MAIL                                       63

16     20838  E-MAIL                                       37

17     22408  E-MAIL                                       42

18

19

20

21

22

23

24

25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

1    A.   Go ahead.

2    Q.   And you recognize that as the e-mail string between you

3    and someone identified on here as Susana, around February 5,

4    2004; correct?

5    A.   Yes.

6            MR. PRICE:   Your Honor, move Exhibit 3601-000001

7    into evidence.

8            THE COURT:   Received.

9        *(Plaintiff's Exhibit 3601-000001 received in*

10       *evidence.)*

11           MR. PRICE:   We can show that, Ken.

12       *(The exhibit was displayed on the screen.)*

13   BY MR. PRICE:

14   Q.   Let's look at the bottom part.

15           And you see it says from, looks like,

16   argentrade@aol.com.

17           You have an understanding of who sent this e-mail;

18   correct?

19   A.   I'm sorry?

20   Q.   You have an understanding of who it was that sent this

21   e-mail?

22   A.   Yeah, it says on the bottom:   Susana Kuemmerle.

23   Q.   Susana Kuemmerle, can you tell us what her position was

24   at the time in 2004 when she sent you this e-mail?

25   A.   She was independent sales representative for MGA.

40

Q.   And if we look, she says:  *Yes, we can pull the best from Mama Mattel Mexico, ex-Tyco employees that I know.   I have some of the info already.   Where are you?*

     Do you see that?

A.   I do.

Q.   And she is talking about the ex-Tyco employees.   Did you come to learn among the people she was talking about were Mr. Machado?

A.   Yes.

Q.   And did you come to learn that she was also going to refer you to Mr. Vargas and Ms. Trueba?

A.   No.   Because I think this is dated February 5.   And what I recall next was, we went to the New York toy fair, and she introduced Gustavo to me.

Q.   Okay.   The toy fair, we see this is February 5.

A.   Yes.

Q.   What time was the New York toy fair?

A.   I believe just around Valentine's Day.

Q.   And was Tyco a Mattel company?

A.   Yes.   At the time, yes.   Before that they were not.   Mattel had purchased it.

Q.   So at the New York toy fair, Mr. Machado was at the toy fair in New York; correct?

A.   He was.

Q.   And you had an initial meeting with him?

*DEBORAH D. PARKER, U.S. COURT REPORTER*

**Exhibit G - Page 40**

41

```
 1   A.   Yes.

 2   Q.   After that initial meeting, shortly thereafter, you and

 3   I think it was Thomas Park went to Mexico?

 4   A.   We went to Mexico.  I don't know how -- how far after

 5   that meeting.

 6   Q.   You recall that in Mexico City with Ms. Kuemmerle --

 7   A.   Kuemmerle.

 8   Q.   -- that you met at the W Hotel in Mexico City?

 9   A.   Yes.

10   Q.   And at that meeting, you had Mr. Machado, Mr. Vargas

11   and Ms. Trueba?

12   A.   Again, I don't remember if they were all together or

13   not.  But I met them there in Mexico at the W Hotel.

14   Q.   When you went there, you knew that they were planning

15   on making a presentation to you; right?

16   A.   I had no idea.  I don't remember if I did or not.

17   Q.   Okay.  Let's look at 22408.

18   A.   Yes.  Go ahead.

19   Q.   And do you recognize 22408 as e-mails between you and

20   Ms. Kuemmerle and Thomas Park?

21   A.   Yes.

22   Q.   And Mr. Park was at this time the COO?

23   A.   Yes.

24   Q.   Chief operating officer?

25   A.   Yes.
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

**Exhibit G - Page 41**

42

1          MR. PRICE:  Your Honor, I move Exhibit 22408 into

2     evidence.

3          THE COURT:  Received.

4     *(Plaintiff's Exhibit 22408 received in evidence.)*

5     BY MR. PRICE:

6     Q.   If we look at the bottom e-mail here, you see that's an

7     e-mail dated February 24, '04 from Ms. Kuemmerle to, among

8     others, you and Mr. Park.

9          Do you see that?

10    A.   I do.

11    Q.   Who is the other -- there's a Shirin Makabi?

12    A.   That's my sister sitting right behind you.

13    Q.   Okay.  I'll have to look later.  I don't have eyes in

14    the back of my head.

15         You see it's regarding Mexico; right?

16    A.   Yes.

17    Q.   You received this before you went down to meet at the

18    W Hotel?

19    A.   That's correct.

20    Q.   And the e-mail to you says:  *Perfect.  The people in*

21    *Mexico want to show us some retail points during the*

22    *weekend.  Is anybody interested in seeing this?  Best*

23    *regards, Susana.*

24         Do you see that?

25    A.   Yes.

43

1    Q.   And your response here at the top was:  *Yes.*

2    A.   Yes.

3    Q.   Does this refresh your recollection that when you went

4    to Mexico, you knew that, quote, the people in Mexico wanted

5    to show you some retail points?

6    A.   It doesn't refresh my memory, but I guess that's what

7    they wanted to show.

8    Q.   When you went there, there was some presentation;

9    right?

10   A.   I don't recall the presentation.  There might have

11   been, but I don't recall it.  It's very possible they had,

12   but I don't just recall it.

13   Q.   Let me show you Exhibit 6754.

14   A.   *(Witness so complies.)*

15   Q.   If you look through that, Mr. Larian, and I'm going to

16   be asking whether or not you recognize that as a

17   presentation that was made by you, in Mexico City, in 2004?

18            MR. OVERLAND:  Object as misstating the evidence.

19            THE COURT:  That's Mr. Overland, on behalf of

20   Mr. Machado.

21   BY MR. PRICE:

22   Q.   Mr. Larian, I'm looking through 06754.

23   A.   It's many pages.  Should I just go through every page?

24   Q.   Look through it and tell me whether or not you

25   recognize all or a portion of this as being a presentation

*DEBORAH D. PARKER, U.S. COURT REPORTER*

**Exhibit G - Page 43**

44

1    that was made to you when you went to Mexico City, in March

2    of 2004?

3    A.    Okay.

4            THE COURT:    Counsel, hasn't Mr. Larian been shown

5    this before?

6            MS. HURST:    Yes, and he didn't recognize it then

7    either.

8            THE COURT:    Counsel, do you know?  Has he been

9    shown this before?

10           MR. PRICE:    I'll take Ms. Hurst's representation.

11           THE COURT:    Well, I don't mean whether he

12   recognizes it or not.

13           And we're going to strike that comment by

14   Ms. Hurst.  I mean, has he seen these documents?  Have they

15   been put before him at deposition before?

16           So at least he ought to recognize if he's seen

17   these before; correct?

18           MR. PRICE:    Yes.

19           THE COURT:    All right.

20           THE WITNESS:    Again, I still don't recognize it.

21   I don't remember if they showed this to me or not.

22   BY MR. PRICE:

23   Q.    Earlier this morning, you mentioned something about you

24   being a 30(b)(6) witness?

25   A.    Yes.

*DEBORAH D. PARKER, U.S. COURT REPORTER*

**Exhibit G - Page 44**

45

1    Q.   And one of the things -- well, let's step back.

2           Your understanding of a 30(b)(6) witness is that

3    you were testifying as a MGA representative about certain

4    topics; correct?

5    A.   My understanding is that I'm just like an empty vessel,

6    and the attorneys try to tell me these are the things and

7    you go and talk about it.  That doesn't mean that I knew

8    about it.

9    Q.   Well, for the deposition you were supposed to be

10   briefed so that you could testify about topics that were

11   designated; correct?

12   A.   That's correct.

13   Q.   And MGA, with respect to those topics, could have

14   chosen anyone to be that what you've called empty vessel;

15   correct?

16   A.   Unfortunately, they chose me.

17   Q.   Well, did they choose you, or did you choose you?

18   A.   I think I chose me.

19   Q.   Okay.  So this was a situation where there's a

20   deposition and the lawyers could have educated anyone to

21   testify about the topics as a representative of MGA, but you

22   wanted -- you chose yourself to do it?

23   A.   I don't remember exactly if -- one way or another.

24   But, again, I was asked and I said, *Yeah, I'd be the*

25   *30(b)(6)*.

46

1   Q.   Your testimony at the 30(b)(6) -- your testimony not of

2   yourself individually but the testimony of the company.

3        Do you understand that?

4   A.   I guess -- I'm not a lawyer.  I guess -- I guess

5   30(b)(6) is the company, yes, then.  Yes.

6   Q.   And one of the things that you were designated as the

7   company representative to testify about were searches and

8   seizures of documents by Mexican authorities from MGA's

9   Mexico City offices and then related communications in

10  connection with that?

11  A.   I believe so.

12  Q.   So in connection with that empty vessel, did you see

13  Exhibit 6754?

14  A.   I think so.  Again, there was so many documents.  I

15  didn't memorize all of them.  If that was in my folders, I

16  must have seen it.

17       MR. PRICE:  I'm going to move Exhibit 6754 into

18  evidence.

19       THE COURT:  Received.

20       (Plaintiff's Exhibit 6754 received in evidence.)

21  BY MR. PRICE:

22  Q.   If you just look through this, there's some information

23  about -- for example, 6754-00004, you'll see there is some

24  information starting about -- the economics in Mexico.

25       Do you see that?

*DEBORAH D. PARKER, U.S. COURT REPORTER*

**Exhibit G - Page 46**

47

```
 1    A.    Yes.
 2    Q.    And it talks about economic indicators, stores by
 3    region, things like that.
 4              Do you see that?
 5    A.    On this page, it talks about --
 6    Q.    You look through the pages.  Like, for example,
 7    6754-00011, you see there's some kind of presentation of
 8    self-service, stores by region.
 9              Do you see that?
10    A.    Yes.
11    Q.    And some of the information -- look, for example, at
12    6754-00040.
13    A.    (Witness so complies.)  Yes.
14    Q.    There is a chart there, and it says:  "Source:
15    Nielson"?
16    A.    Yes.
17    Q.    Now, prior to this time MGA was using, I think, Hasbro
18    as a distributor?
19    A.    Yes.
20    Q.    And there are services you can subscribe to, to pay to
21    get information about the toy market; right?
22    A.    Yes.
23    Q.    Before you opened MGA Mexico, was MGA paying for that
24    kind of information about Mexico?  Were they a subscriber?
25    A.    I don't think we were.  Hasbro, I'm sure was.  MGA,
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

**Exhibit G - Page 47**

48

1   directly, no, we didn't have an office there.

2   Q.   And so what we see at 6754-00040, you see it says:

3   "Source:  Nielson"?

4   A.   Yes.

5   Q.   So someone had to pay for that information to get it;

6   correct?

7   A.   I assume so.

8   Q.   And your understanding is as of that date, MGA wasn't

9   paying for that service and that information?

10   A.   I don't know we were or not.  I don't know.

11   Q.   There's no doubt that you knew that what you were

12   getting in this presentation was information from Mattel

13   employees; correct?

14   A.   I don't even remember this presentation being made to

15   me when I was in Mexico.

16   Q.   So you remember a presentation being made to you?

17   A.   No, I don't.  I saw that e-mail saying that they're

18   going to make a presentation.  I just don't remember the

19   presentation.  It's very well possible that they made this

20   presentation.  I just don't have a memory of it.

21   Q.   There is no doubt that the people you were meeting with

22   at the W Hotel -- Mr. Machado, Mr. Vargas and Ms. Trueba --

23   were at that time employees of Mattel Mexico?

24   A.   That's correct.  They were.

25   Q.   Now, as MGA's 30(b)(6) witness -- let me strike that.

49

1          You eventually had the understanding that after

2  meeting with you, in March 2004, that Mr. Machado,

3  Mr. Vargas and Ms. Trueba went to Mattel and started

4  downloading information?

5  A.   I learned this during this litigation.  After they

6  left, I don't know if it was after or before they left, but

7  I know that they downloaded information from Mattel against

8  our advice.

9  Q.   Was this one of those situations where you said, *Just*

10  *bring your brain*?

11  A.   I told them to bring their brain, absolutely.

12  Q.   But in any event, you have come to learn that they

13  brought more than their brain?

14          MR. OVERLAND:  Objection.  Vague as to time.

15          THE COURT:  Overruled.

16          THE WITNESS:  I learned afterward, yes,

17  unfortunately, they brought more than their brain.

18  BY MR. PRICE:

19  Q.   And as of March 17, 2004 -- let me strike that.

20          As of March 17, 2004, Mr. Machado, Mr. Vargas and

21  Mr. Trueba were, at that point, willing to come see you in

22  L.A. and start working to create a MGA Mexico?

23          MR. OVERLAND:  Objection.  Calls for speculation.

24  It's the state of mind of others.

25          THE COURT:  Overruled.

50

```
 1              THE WITNESS:  I'm sorry.  Can you repeat the

 2   question?

 3   BY MR. PRICE:

 4   Q.    In fact, let me give you Exhibit 3609.

 5              THE WITNESS:  One thing I just want to go back to,

 6   this exhibit that he just showed me on that page, which I

 7   just noticed, page 40.  It shows "Toy Sensuality 2003," and

 8   I thought we were talking about 2004.  It says "2003."

 9   BY MR. PRICE:

10   Q.    Now, if you'll look at Exhibit 3609-0001.

11              Do you recognize this as communications between

12   you, Mr. Machado, Mr. Vargas and Ms. Trueba?

13   A.    Yes.

14              MR. PRICE:  Your Honor, move Exhibit 3609-0001 --

15   actually, just 3609 into evidence.

16              THE COURT:  Received.

17        (Plaintiff's Exhibit 3609 received in evidence.)

18   BY MR. PRICE:

19   Q.    I would like you to look at the top e-mail, and you see

20   that's from you to plot04@yahoo.com and Susana.

21              Do you see that?

22   A.    I do.

23   Q.    And "Susana" is Ms. Kuemmerle; right?

24   A.    Yes.

25   Q.    And "plot04" was the e-mail address that Mr. Machado,
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

**Exhibit G - Page 50**

51

1    Mr. Vargas and Ms. Trueba were using; correct?

2    A.    I believe so, yes.

3    Q.    And in that first e-mail, you say we need copies of any

4    employment agreements you currently have.  And that's

5    urgent.

6             Do you see that?

7    A.    Yes.

8    Q.    Did you get copies of those employment agreements?

9    A.    I don't know if we did or not.

10   Q.    And in the e-mail below that --

11   A.    Yes.

12   Q.    -- that's from -- you see it's Carlos Fuentes, plot04?

13   A.    This says "Carlos Fuentes," then in parentheses.

14   Q.    Can you tell us what was your understanding as to who

15   was using the name Carlos Fuentes at the e-mail address

16   plot04?

17   A.    I have no idea.  Today still I don't know who is Carlos

18   Fuentes.

19   Q.    Well, you knew it was either Mr. Machado, Ms. Trueba,

20   or Mr. Vargas; right?

21   A.    Well, yes, I think the e-mail is the e-mail address

22   that they're using, so I assumed that's what it meant.

23   Q.    And at this point, your father was ill at this time

24   frame; correct?

25   A.    He was.

*DEBORAH D. PARKER, U.S. COURT REPORTER*

**Exhibit G - Page 51**

52

Q.    And they give you regards and kind of apologized for, I
guess, kind of intruding at that point.  I mean, they
apologize for -- *don't worry.  We understand your mind is
with your dad now and please receive our best wishes for his
prompt recovery.*

A.    That's what it says.  Can we move on?

Q.    And the P.S., you see it says:  *We are very excited too
and ready for war.  We are ready to travel on March 25th at
night.  Please confirm if this date is okay with you.*

A.    Yes, I see that.

Q.    And when they say *We're to travel on March 25th at
night*, it was your understanding that they were ready to fly
to Los Angeles on the night of March 25th to meet with you?

A.    Probably, yes.

Q.    And at this time, they're talking to you about being
excited and ready for war.  At this time, was your
understanding that they were still Mattel employees?

A.    I don't know at this time or not.  I don't know.
Probably they were still Mattel employees.  I don't know.
Again -- yes, because I think -- yes, they were, because
we're asking for their employment agreements at the top.  If
you go to the top.

Q.    Yes.  You were asking for the employment agreements?

A.    Yes.  They were still Mattel employees.

Q.    So they are telling you that they are ready for war.

*DEBORAH D. PARKER, U.S. COURT REPORTER*

**Exhibit G - Page 52**

53

1              Did you understand that meant to compete with

2    Mattel?

3    A.    Yes.  Or Hasbro, or other people.

4    Q.    And they are telling you that they're ready for that

5    while they're still working at Mattel?

6    A.    Yes.

7    Q.    And before they had gotten job offers?

8    A.    Yes.

9    Q.    Okay.  So if you look at 6416, Exhibit 6416 --

10   A.    *(Witness so complies.)*

11   Q.    -- do you recognize this as an e-mail from you to

12   plot04 with an attachments of offer letters?

13   A.    Yes.

14              MR. PRICE:  Your Honor, I move Exhibit 6416 into

15   evidence.

16              THE COURT:  Received.

17        *(Plaintiff's Exhibit 6416 received in evidence.)*

18   BY MR. PRICE:

19   Q.    So by this communication, you were sending to

20   Mr. Machado and Ms. Trueba and Mr. Vargas offer letters to

21   join MGA Mexico?

22   A.    Yes.

23   Q.    And if we look at the first letter -- let's go to

24   page 0002 -- that's a letter to Mr. Machado which contains

25   what you are offering him in terms of salary and vacation,

*DEBORAH D. PARKER, U.S. COURT REPORTER*

54

1  et cetera; right?

2  A.   Yes.

3  Q.   If we look at the next page, you see that it says:

4  "Sincerely, Isaac Larian, CEO"?

5  A.   Yes.

6  Q.   MGA de Mexico.

7       Do you see that?

8  A.   Yes.

9  Q.   So as of this date, you were representing yourself to

10  be the chief executive officer of MGA Mexico; correct?

11  A.   Yes.

12  Q.   And then, we have in this document the offer letters

13  for Mr. Vargas and Ms. Trueba; correct?

14  A.   Yes.

15  Q.   If you look at 3617 --

16  A.   *(Witness so complies.)*

17  Q.   And do you recognize this as an e-mail from you to

18  Ms. Kuemmerle and Mr. Park around April 14 of 2004?

19  A.   I don't recollect anything yet.  She's getting it.

20  Q.   Hopefully, you will.

21  A.   Go ahead.

22  Q.   So do you recognize Exhibit 3617?

23  A.   Yes.  An e-mail, but I'm on it.

24       MR. PRICE:  Move 3617 into evidence.

25       THE COURT:  Received.

*DEBORAH D. PARKER, U.S. COURT REPORTER*

**Exhibit G - Page 54**

55

1          (Plaintiff's Exhibit 3617 received in evidence.)

2    BY MR. PRICE:

3    Q.     And you see the first e-mail in that string is to you

4    from Ms. Kuemmerle; right?

5    A.     That's correct.

6    Q.     And she says:  *Hello, just arrived from South America*

7    *and talked with Gustavo Machado.  As of today, they have not*

8    *received the contracts.  Machado talked with the Mexican*

9    *lawyers and he was told that they do not have a power of*

10   *attorney to handle these contracts.*

11          Do you see that?

12   A.     Yes.

13   Q.     So there was some issue about getting the contract

14   signed as of April 14 of 2004?

15   A.     That they didn't receive their contract, I guess.

16   That's what it meant.

17   Q.     And then, Ms. Kuemmerle writes:  *Gustavo, Mariana and*

18   *Pueblo want to resign (all at the same time and you can't*

19   *believe my smile!) next Wednesday.  But without a contract*

20   *signed, they will not be able to do it.*

21          Do you see that?

22   A.     Yes.

23   Q.     The plan or your understanding of what they were

24   planning to do was to all three resign from Mattel Mexico at

25   the same time and then start up the MGA Mexico office?

56

1   A.   Yes.

2   Q.   And your response to this was, including Mr. Parks,

3   saying:  *Tom told me the contract is done.  Please follow*

4   *up?*

5   A.   Yes.

6   Q.   Now, look at 3618.

7   A.   Go ahead.

8   Q.   Do you recognize 3618?

9   A.   Yes, I'm remember seeing it.

10       MR. PRICE:  Your Honor, I move Exhibit 3618 into

11   evidence.

12       THE COURT:  Received.

13       (Plaintiff's Exhibit 3618 received in evidence.)

14   BY MR. PRICE:

15   Q.   And do you see the e-mail at the bottom is sent to you

16   on April 21, 2004 from that plot04 e-mail address?

17   A.   Yes.

18   Q.   And it's from Mr. Machado?

19   A.   It is.  Bless you.

20   Q.   And he says:  *Hello, new boss.  As you might have*

21   *heard, we resigned yesterday and let me tell you, quote,*

22   *Rome is on fire.  We left the office at 1:30 p.m. yesterday*

23   *and since then they have already made 10 changes in the*

24   *staff.  We are driving them crazy!!!*

25       Do you see that?

*DEBORAH D. PARKER, U.S. COURT REPORTER*

**Exhibit G - Page 56**

57

1    A.    I do.

2    Q.    And when you received this, you understood that

3    although he was referring -- he said *Rome was on fire* that

4    that referred to Mattel?

5    A.    Yes.

6    Q.    And that at this point, Mr. Machado and Mr. Vargas and

7    Ms. Trueba, again working on a business plan to get MGA

8    Mexico off and running?

9          MR. OVERLAND:  Objection.  Calls for speculation.

10   No personal knowledge.

11         THE COURT:  Overruled.

12         You may answer the question.

13         THE WITNESS:  I don't know if they did or not.

14   BY MR. PRICE:

15   Q.    Well, look at the 8859.

16   A.    *(Witness so complies.)*

17   Q.    Do you have 8859 in front of you?

18   A.    Give me a minute to review it.  Yes, I do have it.

19         MR. PRICE:  Your Honor, move Exhibit 8859 into

20   evidence.

21         THE COURT:  Received.

22         *(Plaintiff's Exhibit 8859 received in evidence.)*

23   BY MR. PRICE:

24   Q.    You see at the top of this is to "Isaac, Tom", and

25   that's you and Mr. Park; correct?

*DEBORAH D. PARKER, U.S. COURT REPORTER*

**Exhibit G - Page 57**

58

1    A.   Yes.

2    Q.   It says:  *We've been thinking of a handful of issues.*

3    *We should be talking when we are with you in L.A. next week,*

4    *aside from seeing the line and begin with the commercial*

5    *plan.*

6         Do you see that?

7    A.   I do.

8    Q.   So this is something that they came up with, that is,

9    Mr. Machado, Ms. Trueba and Mr. Vargas; that they created

10   this to send to you before coming to Los Angeles to see the

11   line and begin the commercial plan?

12        MS. KELLER:  I going to object, your Honor.

13        No foundation.  There is no signature.  No date,

14   no showing who it's from.

15        THE COURT:  Can I see the stamp on it down at the

16   bottom?

17        MR. PRICE:  Yes.

18        THE COURT:  Overruled.

19        THE WITNESS:  I see this document.  I don't

20   remember this document at all.

21   BY MR. PRICE:

22   Q.   Your understanding is that it came from MGA's file?

23   A.   Yes.  It has a MGA Bates number on it, yes.

24   Q.   And you see it appears to be a communication to you?

25   A.   Yes.

59

1   Q.   Concerning issues that they wanted to talk to you about

2   when they came to L.A.?

3   A.   It has my name and Tom's name on it, but I just don't

4   remember this -- when was it sent, et cetera.

5   Q.   Look under "overall."

6   A.   Where is that?

7   Q.   At the bottom where it says "overall."

8   A.   Yes.

9   Q.   It says, under, like, bullet point 2:  *We need a legal*

10  *representative in Mexico.  Either of us could be and/or the*

11  *administrative director, otherwise Tom will have to be*

12  *flying very often to sign.*

13            Do you see that?

14  A.   I do.

15  Q.   And does this indicate, then, it's coming from your --

16  gives you the understanding it's coming from your New Mexico

17  office?

18  A.   What's coming from my New Mexico office?

19  Q.   This document.

20  A.   I have no idea where is it coming from.

21  Q.   Well, when it says *We need a legal representative in*

22  *Mexico* --

23  A.   Yes.

24  Q.   -- what's your understanding as to who that is

25  referring to?

*DEBORAH D. PARKER, U.S. COURT REPORTER*

**Exhibit G - Page 59**

60

1   A.   That we -- the three of them need a legal

2   representative in Mexico.

3   Q.   And when you say the three of you, are you talking

4   about Mr. Machado, Mr. Vargas and Ms. Trueba?

5   A.   Yes.

6   Q.   And if you look under "marketing," it talks about, for

7   example, the first bullet point:   Line selection.

8           Do you see that?

9   A.   Yes.

10  Q.   And "line selection" means what?

11  A.   Selecting your line that you're going to sell in

12  Mexico.

13  Q.   And the second bullet point is:   "Lodge event and

14  showroom."  *We must launch no later than June 15th.*

15          Do you see that?

16  A.   I do.

17  Q.   And that's referring to the launch of MGA Mexico;

18  right?

19  A.   Probably.

20  Q.   And that would be a consistent time frame if in

21  April 21, 2004 they left Mattel.  They're talking about just

22  a couple months later having -- being ready for the launch;

23  correct?

24  A.   I don't know.  Have a party, or -- or have a party.  I

25  don't know what it means.

61

1    Q.   If you look at this -- let me ask you this:  The trio,

2    as you refer to them, were creating this plan without MGA

3    guidance.  That is, they were coming up with this on their

4    own?

5              MR. OVERLAND:  Objection.  Calls for speculation.

6              THE COURT:  You can ask him if that's your

7    opinion.

8    BY MR. PRICE:

9    Q.   Is that your opinion?

10   A.   That this is a plan?

11   Q.   Is it your opinion that when the trio came up with

12   what's in this document --

13   A.   Yes.

14   Q.   -- that they were doing that on their own without

15   guidance at this point from MGA United States?

16   A.   I have no idea what they were doing and how they were

17   coming this from.  Frankly, I don't even know if this is or

18   this is not from the trio.  I don't see the names in here.

19   I know it's a document in our file.  I have no idea what

20   this document is.

21   Q.   Can you name anyone else who would be sending this to

22   you and talking about a launch no later than June 15th and

23   needing a legal representative in Mexico, other than the

24   folks who were in MGA Mexico?

25   A.   Yes, I can speculate.  Could have been Tom.  Could be

*DEBORAH D. PARKER, U.S. COURT REPORTER*

**Exhibit G - Page 61**

62

1    Carmen.  Could be Susana.  Could be anyone.

2    Q.    Were they in Mexico?

3    A.    Carmen lives in Mexico, yes.

4    Q.    And Tom, here, you see it's sent to Tom; right?

5    A.    Right.  That's what it says.

6    Q.    And if you look at, overall, Bullet Point 2, it said:

7    *Either of us could be and/or the administrative director,*

8    *otherwise Tom will have to be flying very often to sign.*

9            Do you see that?

10   A.    Yes.  Either of us could have been.  Either Susana

11   Kuemmerle, or Carmen.  I forget her last name.

12   Q.    So who was supposed to come up with the management in

13   the plan to run MGA Mexico?

14   A.    Susana and Carmen was supposed to do that.

15   Q.    What was Mr. Machado hired to do?

16   A.    Marketing.

17   Q.    And what about Mr. Vargas?

18   A.    Selling.

19   Q.    And Ms. Trueba?

20   A.    Also marketing.

21   Q.    Do you know what, if any, guidance was coming from MGA

22   U.S. in putting together what you see in this document?

23   A.    I don't.  I delegated that to Tom Park to handle.  He

24   was the chief operating officer.

25   Q.    And your understanding from looking at this document is

*DEBORAH D. PARKER, U.S. COURT REPORTER*

**Exhibit G - Page 62**

63

1    that it wasn't Tom Park who created the document; right?

2    A.   I'm speculating.  I don't know who created this

3    document.

4    Q.   I'm just saying, your view -- your understanding, if

5    you look at this, it's not Tom because it's sent to him?

6    A.   I don't know if it was sent to him, or not.  I'm not

7    arguing with you.  It probably was not done by Tom, but I

8    don't know who done it.

9    Q.   Okay.  Now, you began receiving weekly reports from

10   Mexico; right?

11   A.   I received weekly reports.  I don't remember if they

12   were regularly, or not.  At what time?

13   Q.   Well, let's see if I can show you an example of what --

14   maybe a weekly report, may not.  You can tell us.  It's

15   8865.

16   A.   *(Witness so complies.)*  This is an e-mail with my name

17   on it.

18          MR. PRICE:  Your Honor, may I move Exhibit 8865

19   into evidence?

20          THE COURT:  Received.

21     *(Plaintiff's Exhibit 8865 received in evidence.)*

22          MS. KELLER:  Is that pages 1 and 2, counsel?

23          MR. PRICE:  It will be a two-page document.

24   BY MR. PRICE:

25   Q.   And you see this is the e-mail dated October 15, 2004?

*DEBORAH D. PARKER, U.S. COURT REPORTER*

**Exhibit G - Page 63**

64

```
 1    A.    It is.

 2    Q.    From Mr. Machado to you and copied to others?

 3    A.    Yes.

 4    Q.    And it says:  Marketing status for the week ending

 5    October 15th.

 6    A.    That's what it says.

 7    Q.    So if you look at this, does this refresh your

 8    recollection that you had weekly status reports on marketing

 9    from Mr. Machado?

10    A.    No.

11    Q.    You at least got this marketing status for the week

12    ending October 15th?

13    A.    I did.

14    Q.    Look at the third paragraph here:  Flavas is hitting

15    more retailers.  We now know that it will be TV supported

16    and they have a special consignment term with those two

17    elements.  It means the stores will be packed.

18          Do you see that?

19    A.    Yes.

20    Q.    And Fla-vus was whose --

21    A.    Fla-vas.

22    Q.    I should know that.

23    A.    You represent them.

24    Q.    Yeah.

25    A.    Mattel.
```

DEBORAH D. PARKER, U.S. COURT REPORTER

**Exhibit G - Page 64**

65

1      MR. PRICE:  Your Honor, could I request a short

2  break?

3      THE COURT:  Certainly.

4      All right.  Now, ladies and gentlemen, you're

5  admonished not to discuss the matter amongst yourselves, nor

6  to form or express any opinion concerning this case.

7      See you back in a few minutes.  Take a good

8  recess.

9      *(At 1:59 p.m., proceedings were adjourned.)*

10

11                     -oOo-

12

13                    CERTIFICATE

14      I hereby certify that pursuant to Section 753,

15  Title 28, United States Code, the foregoing is a true and

16  correct transcript of the stenographically reported

17  proceedings held in the above-entitled matter and that the

18  transcript page format is in conformance with the

19  regulations of the Judicial Conference of the United States.

20

21  Date:  February 10, 2011

22

23

24  _____

25              Deborah D. Parker, Official Reporter

*DEBORAH D. PARKER, U.S. COURT REPORTER*

**Exhibit G - Page 65**

1

1   **UNITED STATES DISTRICT COURT**

2   **CENTRAL DISTRICT OF CALIFORNIA**

3   **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4      - - - - - - -

5

6   MATTEL, INC., ET AL.,      )

7         Plaintiffs,    )

8      vs.          ) No. CV 04-9049-DOC
                   ) Day 19

9   MGA ENTERTAINMENT, INC., ET AL., ) Volume 3 of 4

10     Defendants.    )

11  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯)

12                            *CERTIFIED COPY*

13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              Jury Trial

17           Santa Ana, California

18        Thursday, February 17, 2011

19

20

21

22  Jane C.S. Rule, CSR 9316
    Federal Official Court Reporter

23  United States District Court
    411 West 4th Street, Room 1-053

24  Santa Ana, California 92701
    (714) 558-7755

25  11-02-17 MattelV2

CV 04-9049-DOC - 02/17/2011 - Day 19, Vol. 3 of 4

55

| | | |
|---|---|---|
| 13:47:24 | 1 | A     Yes. |
| 13:47:25 | 2 | Q     Who were the people that you interviewed in Mexico City |
| 13:47:29 | 3 | other than -- well, did you interview Mr. Machado? |
| 13:47:32 | 4 | A     I interviewed Mr. Machado, I interviewed Pablo Vargas |
| 13:47:40 | 5 | and I interviewed Mariana Trueba. |
| 13:47:46 | 6 | Q     And what did you interview them for, in other words, |
| 13:47:48 | 7 | what jobs were you considering them for? |
| 13:47:50 | 8 | A     Mariana for girls' marketing and Pablo for sales. |
| 13:47:53 | 9 | Q     What were their references? |
| 13:47:55 | 10 | A     What do you mean "what were their references"? |
| 13:47:57 | 11 | Q     What were you told were their backgrounds? |
| 13:48:00 | 12 | THE COURT:  Just a moment.  The jury is now going |
| 13:48:02 | 13 | to have trouble with Pablo matching up a last name, so |
| 13:48:08 | 14 | Machado or Vargas or Trueba, so reask the question. |
| 13:48:16 | 15 | THE WITNESS:  Pablo Vargas, I am not very good |
| 13:48:18 | 16 | with the spelling of the names. |
| 13:48:19 | 17 | THE COURT:  It's not the spelling.  I don't think |
| 13:48:22 | 18 | they know who Pablo is.  Counsel knows it's Pablo Vargas, |
| 13:48:22 | 19 | but the jury doesn't, so let's use last names, now. |
| 13:48:25 | 20 | BY MS. KELLER: |
| 13:48:26 | 21 | Q     Is Pablo, Pablo Vargas? |
| 13:48:33 | 22 | A     Yes. |
| 13:48:34 | 23 | Q     So there is Pablo Vargas, Gustavo Machado? |
| 13:48:40 | 24 | A     And Mariana Trueba. |
| 3:48:42 | 25 | Q     Is it Trueba? |

CV 04-9049-DOC - 02/17/2011 - Day 19, Vol. 3 of 4

56

| | | |
|---|---|---|
| 13:48:44 | 1 | A    Trueba. |
| 13:48:45 | 2 | Q    Mariana? |
| 13:48:45 | 3 | A    Yes. |
| 13:48:46 | 4 | Q    Okay. |
| 13:48:47 | 5 |        THE COURT:  Refer to them by last name, Counsel. |
| 13:48:50 | 6 |        MS. KELLER:  I am going to, your Honor. |
| 13:48:51 | 7 |        THE COURT:  Thank you. |
| 13:48:52 | 8 | BY MS. KELLER: |
| 13:48:52 | 9 | Q    And so you interviewed Mr. Machado, Ms. Trueba and |
| 13:48:53 | 10 | Mr. Vargas in Mexico City? |
| 13:48:56 | 11 | A    Yes, I did. |
| 13:48:57 | 12 | Q    And where?  Where was that in Mexico City? |
| 13:49:01 | 13 | A    At the W Hotel in Mexico City. |
| 13:49:03 | 14 | Q    After you interviewed them, what was your impression of |
| 13:49:06 | 15 | them in terms of whether you wanted to hire them? |
| 13:49:09 | 16 | A    I thought they were good, they had experience. |
| 13:49:11 | 17 | Q    And what was the nature of their experience? |
| 13:49:14 | 18 | A    Mariana was in -- in girls' marketing, and Pablo was in |
| 13:49:24 | 19 | sales services.  They used to work at Mattel.  They were |
| 13:49:27 | 20 | working at Mattel Mexico when I interviewed them. |
| 13:49:31 | 21 | Q    Were there any negotiations over their contracts -- |
| 13:49:35 | 22 | potential contracts with you? |
| 13:49:36 | 23 | A    Yes, there was. |
| 13:49:37 | 24 | Q    And did they ultimately enter into a contract with you? |
| 3:49:42 | 25 | A    Yes, they did. |

**Exhibit G - Page 68**

CV 04-9049-DOC - 02/17/2011 - Day 19, Vol. 3 of 4

57

| | | |
|---|---|---|
| 13:49:45 | 1 | Q    When they entered into their contracts, did they |
| 13:49:47 | 2 | promise that they would not take any Mattel confidential |
| 13:49:50 | 3 | information when they came to work for you? |
| 13:49:53 | 4 | A    Yes. |
| 13:49:54 | 5 | MS. KELLER:  Could we see Exhibit 6793. |
| 13:50:14 | 6 | THE WITNESS:  Yes. |
| 13:50:15 | 7 | BY MS. KELLER: |
| 13:50:19 | 8 | Q    Now, I know that this is in Spanish, but is this |
| 13:50:22 | 9 | Mr. Machado's contract? |
| 13:50:24 | 10 | A    It's in Spanish.  I don't read Spanish. |
| 13:50:27 | 11 | Q    Well, there's Spanish at the beginning, and then if you |
| 13:50:29 | 12 | look at the back, you'll see some English, but look -- look |
| 13:50:33 | 13 | at 6793, page 10. |
| 13:50:37 | 14 | MS. KELLER:  And your Honor, I'd move this into |
| 13:50:39 | 15 | evidence. |
| 13:50:40 | 16 | THE WITNESS:  Yes. |
| 13:50:41 | 17 | THE COURT:  Received. |
| 13:50:41 | 18 | (Defendant's Exhibit No. 6793 is received in |
| 13:50:41 | 19 | evidence.) |
| 13:50:42 | 20 | BY MS. KELLER: |
| 13:50:45 | 21 | Q    And you see where it says, "El empleado Carlos Machado |
| 13:50:51 | 22 | Gomez"? |
| 13:50:52 | 23 | A    Yes. |
| 13:50:53 | 24 | Q    And then under "la empresa," you see a signature "Por: |
| 3:51:02 | 25 | Thomas Park"? |

CV 04-9049-DOC - 02/17/2011 - Day 19, Vol. 3 of 4

58

| | | | |
|---|---|---|---|
| 13:51:03 | 1 | A | Yes. |
| 13:51:03 | 2 | Q | Who's Thomas Park? |
| 13:51:06 | 3 | A | Thomas Park was our chief operating officer at the |
| 13:51:09 | 4 | | time. |
| 13:51:10 | 5 | Q | And then if you turn to page 11, does this look like an |
| 13:51:14 | 6 | | English version of that contract? |
| 13:51:17 | 7 | A | Yes. |
| 13:51:18 | 8 | Q | And if you turn to the signature -- signature page on |
| 13:51:24 | 9 | | this contract is not signed, correct, page 20? |
| 13:51:34 | 10 | A | It's not.  It's a trans -- |
| 13:51:35 | 11 | Q | So this is a translation of the Spanish-language |
| 13:51:38 | 12 | | contract, right? |
| 13:51:40 | 13 | A | Yes. |
| 13:51:40 | 14 | Q | Do you need a break, Mr. Larian? |
| 13:51:42 | 15 | A | No, I'm okay. |
| 13:51:47 | 16 | Q | And if you look at -- if you look at the English |
| 13:52:04 | 17 | | version. |
| 13:52:06 | 18 | A | Yes. |
| 13:52:11 | 19 | Q | 6793, page 12. |
| 13:52:18 | 20 | A | Yes. |
| 13:52:18 | 21 | Q | Part I. |
| 13:52:37 | 22 | A | Yes. |
| 13:52:38 | 23 | Q | It says that the employee, quote, "that he does not |
| 13:52:43 | 24 | | have any legal impediment arising from an agreement or |
| 13:52:48 | 25 | | contract executed with a third party that would prevent his |

**Exhibit G - Page 70**

CV 04-9049-DOC - 02/17/2011 - Day 19, Vol. 3 of 4

59

| | |
|---|---|
| 13:52:53 1 | from doing the work for which he is contracted by the |
| 13:52:58 2 | company. |
| 13:52:59 3 | "The employee undertakes not to use, for the work to be |
| 13:53:03 4 | done at the company, the privileged information known to his |
| 13:53:06 5 | due to work, position or title, practice of his profession |
| 13:53:10 6 | or business relationship known to any other company or |
| 13:53:13 7 | individual and which is considered an industrial secret |
| 13:53:16 8 | pursuant to the law under a contract agreement or |
| 13:53:19 9 | understanding he may have executed." |
| 13:53:29 10 | And if you look at Exhibit 6793-20, you'll see a |
| 13:53:40 11 | confirmation that after the parties read this contract in |
| 13:53:42 12 | full, they confirmed and signed it in token of agreement in |
| 13:53:47 13 | Mexico Federal District on the 16th day of April, 2004. |
| 13:53:54 14 | A    Correct. |
| 13:53:54 15 | Q    And if you'd look back to 6793, page 10, and put those |
| 13:54:03 16 | side by side, you see the Spanish version of that, correct? |
| 13:54:12 17 | A    Yes. |
| 13:54:18 18 | Q    Now, let's -- let's take a look at Exhibit 6794. |
| 13:54:37 19 | A    Go ahead. |
| 13:54:38 20 | Q    Is this the Spanish language version with an English |
| 13:54:42 21 | translation immediately afterwards of Pablo Vargas' |
| 13:54:48 22 | contract? |
| 13:54:48 23 | A    Yes. |
| 13:54:53 24 | MS. KELLER:  Your Honor, I would move 6794 into |
| 3:54:56 25 | evidence. |

CV 04-9049-DOC - 02/17/2011 - Day 19, Vol. 3 of 4

60

| | | |
|---|---|---|
| 13:54:56 | 1 | THE COURT:  Received. |
| 13:54:57 | 2 | (Defendant's Exhibit No. 6794 is received in |
| 13:54:57 | 3 | evidence.) |
| 13:54:57 | 4 | BY MS. KELLER: |
| 13:54:58 | 5 | Q    And if you'd look at the signature page on page 10, |
| 13:55:04 | 6 | 6794-10, you see under "el empleado," the employee, Pablo |
| 13:55:12 | 7 | Vargas San Jose? |
| 13:55:15 | 8 | A    Yes. |
| 13:55:15 | 9 | Q    Is that the Mr. Vargas you've been talking about? |
| 13:55:19 | 10 | A    Yes. |
| 13:55:19 | 11 | Q    And on the signature page for MGA de Mexico, do you see |
| 13:55:23 | 12 | "Por:  Thomas Park"? |
| 13:55:26 | 13 | A    Yes. |
| 13:55:26 | 14 | Q    And that's the Thomas Park you just mentioned? |
| 13:55:29 | 15 | A    Yes. |
| 13:55:29 | 16 | Q    And does Mr. Vargas' contract contain, on page 13 of |
| 13:55:38 | 17 | the translated portion, the same clause that we just read in |
| 13:55:47 | 18 | Mr. Machado's contract? |
| 13:55:49 | 19 | A    Yes. |
| 13:55:50 | 20 | Q    So he is promising, as Mr. Machado did, that he's not |
| 13:55:56 | 21 | going to bring to the new company anything that is |
| 13:55:59 | 22 | considered an industrial secret from his old company, any |
| 13:56:03 | 23 | privileged information, et cetera? |
| 13:56:05 | 24 | A    Yes. |
| 3:56:08 | 25 | Q    And it's -- does it appear to you to be the identical |

CV 04-9049-DOC - 02/17/2011 - Day 19, Vol. 3 of 4

61

| | | |
|---|---|---|
| 13:56:11 | 1 | clause? |
| 13:56:12 | 2 | A    Yes. |
| 13:56:12 | 3 | Q    And was his contract also, if you'd look at page 21, |
| 13:56:17 | 4 | also signed on April 16th, 2004? |
| 13:56:22 | 5 | A    Yes. |
| 13:56:24 | 6 | Q    Now, if you can turn to Exhibit 6795. |
| 13:56:39 | 7 | A    Yes. |
| 13:56:39 | 8 | Q    Do you recognize that as the contract for Mariana |
| 13:56:42 | 9 | Trueba? |
| 13:56:43 | 10 | A    Yes. |
| 13:56:43 | 11 | Q    And if you'd look at page 10. |
| 13:56:48 | 12 | A    Yes, I'm there. |
| 13:56:49 | 13 |         MS. KELLER:  Your Honor, I'd ask that 6795 be |
| 13:56:53 | 14 | admitted. |
| 13:56:53 | 15 |         THE COURT:  Received. |
| 13:56:54 | 16 |         (Defendant's Exhibit No. 6795 is received in |
| 13:56:54 | 17 |     evidence.) |
| 13:56:54 | 18 | BY MS. KELLER: |
| 13:56:54 | 19 | Q    Under "el empleado," do you see Mariana Trueba Almada? |
| 13:57:03 | 20 | A    Yes. |
| 13:57:03 | 21 | Q    And that's the same person you've been describing as |
| 13:57:05 | 22 | Mariana Trueba? |
| 13:57:06 | 23 | A    Yes. |
| 13:57:07 | 24 | Q    And then if you look to the left, you see, signed on |
| 3:57:10 | 25 | behalf of la empresa MGA de Mexico is Thomas Park? |

CV 04-9049-DOC - 02/17/2011 - Day 19, Vol. 3 of 4

62

| | | |
|---|---|---|
| 13:57:19 | 1 | A    Yes. |
| 13:57:20 | 2 | Q    Or "Por:  Thomas Park"? |
| 13:57:22 | 3 | A    Yes. |
| 13:57:22 | 4 | Q    And is the clause in Ms. Trueba's contract, that she |
| 13:57:25 | 5 | also has no legal impediment arising from an agreement or |
| 13:57:30 | 6 | contract executed with a third party that would prevent her |
| 13:57:34 | 7 | from doing work contracted by the company, and I'm referring |
| 13:57:37 | 8 | to 6795-12, same clause? |
| 13:57:41 | 9 | A    Yes. |
| 13:57:42 | 10 | Q    And does she also promise not to bring privileged |
| 13:57:46 | 11 | information from her old company or anything that's |
| 13:57:49 | 12 | considered an industrial secret pursuant to the law under a |
| 13:57:53 | 13 | contract agreement or understanding she may have executed? |
| 13:57:57 | 14 | A    Yes. |
| 13:57:57 | 15 | Q    So that's the same clause in all three contracts? |
| 13:58:00 | 16 | A    Yes, it is. |
| 13:58:01 | 17 | Q    And in addition to that, you said you told all three of |
| 13:58:06 | 18 | them orally not to bring anything from Mattel? |
| 13:58:09 | 19 | A    I did. |
| 13:58:10 | 20 | Q    How clear do you think you were about that? |
| 13:58:12 | 21 | A    Extremely clear. |
| 13:58:14 | 22 | Q    And did you say that to them more than once? |
| 13:58:24 | 23 | A    I did. |
| 13:58:24 | 24 | Q    Now, if we can go back to Exhibit 3619, and that's the |
| 3:58:30 | 25 | e-mail from you to Scot Rank? |

**Exhibit G - Page 74**

CV 04-9049-DOC - 02/17/2011 - Day 19, Vol. 3 of 4

63

| | | |
|---|---|---|
| 13:58:34 | 1 | A    Yes. |
| 13:58:34 | 2 | Q    And we look at the top e-mail, you are telling Mr. Rank |
| 13:58:47 | 3 | and David Dager, it says, Dear David -- well, yeah, it says |
| 13:58:53 | 4 | from Isaac Larian to Scot Rank, but it begins, "Dear David, |
| 13:58:57 | 5 | MGA Mexico will be opened in 15 days.  We'd like to invite |
| 13:59:02 | 6 | you and all Walmart buyers to come to L.A. and see our full |
| 13:59:06 | 7 | fall 2004 line, including all Bratz.  We have products for |
| 13:59:14 | 8 | toys, stationery, sporting goods, electronics, party goods." |
| 13:59:20 | 9 | So you were inviting the Walmart buyers to come to L.A. |
| 13:59:23 | 10 | to see your fall 2004 line, right? |
| 13:59:26 | 11 | A    I was. |
| 13:59:27 | 12 | Q    And you continued to receive Walmart support for the |
| 13:59:31 | 13 | new Mexico subsidiary? |
| 13:59:34 | 14 | A    Yes, they were one of our biggest customers. |
| 13:59:41 | 15 | Q    Now, did any of the three people that you interviewed |
| 13:59:44 | 16 | in that meeting in Mexico and who signed contracts with MGA |
| 13:59:48 | 17 | de Mexico, did any of those three disclose any Mattel |
| 13:59:57 | 18 | information to you during your meetings with them? |
| 13:59:59 | 19 | A    No. |
| 13:59:59 | 20 | Q    Let's look at Exhibit 3622.  And this is an e-mail from |
| 14:00:10 | 21 | you to Gustavo Machado Gomez, with CCs to, among others, |
| 14:00:16 | 22 | Mr. Vargas and Ms. Trueba, dated December 24th, 2004; is |
| 14:00:23 | 23 | that correct? |
| 14:00:23 | 24 | A    Yes. |
| 1:00:25 | 25 | MS. KELLER:  I move to have that admitted, your |

| | |
|---|---|
| 14:00:27 1 | Honor. |
| 14:00:27 2 | THE COURT:  Received. |
| 14:00:28 3 | (Defendant's Exhibit No. 3622 is received in |
| 14:00:28 4 | evidence.) |
| 14:00:28 5 | BY MS. KELLER: |
| 14:00:28 6 | Q    Now, you were unhappy about the lack of profitability |
| 14:00:34 7 | of MGA Mexico in this e-mail; is that right? |
| 14:00:38 8 | A    I was. |
| 14:00:39 9 | Q    And in October of 2005, you learned that there had been |
| 14:00:47 10 | a raid on the MGA Mexico offices -- |
| 14:00:54 11 | A    Yes. |
| 14:00:54 12 | Q    -- that month, right? |
| 14:00:55 13 | A    Yes.  Yes, I was. |
| 14:00:59 14 | Q    Was this the first that you or MGA had learned that |
| 14:01:04 15 | Mr. Machado, Ms. Trueba or Mr. Vargas had taken any |
| 14:01:08 16 | documents from Mattel? |
| 14:01:09 17 | A    In this e-mail? |
| 14:01:10 18 | Q    No, when you learned in October of 2005, was that the |
| 14:01:15 19 | first you heard of it? |
| 14:01:16 20 | A    Yes. |
| 14:01:17 21 | Q    And that was the first you or MGA had learned about the |
| 14:01:21 22 | raid? |
| 14:01:22 23 | A    Yes. |
| 14:01:28 24 | Q    You were asked some questions about why you didn't just |
| 1:01:31 25 | fire all three of them; do you remember that? |

CV 04-9049-DOC — 02/17/2011 - Day 19, Vol. 3 of 4

65

| | | |
|---|---|---|
| 14:01:33 | 1 | A    Yes. |
| 14:01:34 | 2 | Q    What did they tell you about whether they had used |
| 14:01:37 | 3 | anything they took from Mattel? |
| 14:01:41 | 4 | MR. PRICE:  Your Honor.  Object.  It's hearsay if |
| 14:01:45 | 5 | offered for the truth. |
| 14:01:48 | 6 | MS. KELLER:  It's offered to show his actions, |
| 14:01:48 | 7 | your Honor. |
| 14:01:48 | 8 | THE COURT:  Overruled. |
| 14:01:49 | 9 | First of all, it's -- once again, it's not offered |
| 14:01:51 | 10 | for the truth.  It's offered to show his subsequent conduct |
| 14:01:54 | 11 | or what he said or did in relation to the information he's |
| 14:01:58 | 12 | receiving, but we don't have Mr. Machado on the stand at the |
| 14:02:01 | 13 | present time, Ms. Trueba or Mr. Vargas, so it's technically |
| 14:02:07 | 14 | hearsay, there's an exception to that rule, so it goes to |
| 14:02:09 | 15 | his state of mind and his conduct. |
| 14:02:12 | 16 | BY MS. KELLER: |
| 14:02:12 | 17 | Q    What did they tell you about whether they took anything |
| 14:02:14 | 18 | at all from Mattel that they then used in their employment |
| 14:02:20 | 19 | at MGA? |
| 14:02:21 | 20 | A    They told me they haven't used anything from Mattel at |
| 14:02:25 | 21 | MGA. |
| 14:02:26 | 22 | Q    How carefully did you question them about that? |
| 14:02:29 | 23 | A    I don't remember.  It was me, together with Daphne |
| 14:02:33 | 24 | Gronich, but I questioned them extensively on this, and they |
| 1:02:39 | 25 | promised me that they haven't used anything from Mattel at |

**Exhibit G - Page 77**

| | | |
|---|---|---|
| 14:02:42 | 1 | MGA. |
| 14:02:42 | 2 | Q    Were you angry? |
| 14:02:44 | 3 | A    I was angry. |

14:02:47  4         MR. PRICE:  Your Honor, I am going to object.

14:02:48  5  Move to strike.  My understanding is they've asserted

14:02:50  6  privilege on that communication.

14:02:55  7         THE COURT:  Now, Counsel, just a moment.

14:02:58  8         Counsel, just a minute.

14:03:13  9         This probably would be a good time for recess.

14:03:17 10  Would this be a good time for recess?

14:03:20 11         MS. KELLER:  Yes, your Honor.

14:03:20 12         THE COURT:  This would be a good time for recess.

14:03:22 13         Remind you not to discuss this matter amongst

14:03:24 14  yourselves, nor form or express any opinion concerning this

14:03:28 15  case.  We'll come get you in about 20 minutes.

14:03:33 16         Thank you.

14:03:34 17         Counsel, will you be seated, please.

14:03:37 18         (The following proceedings is taken outside

14:03:40 19     the presence of the jury.)

14:04:03 20         THE COURT:  The question was that Mr. Larian was

14:04:14 21  told that they had not used anything from this raid.

14:04:19 22         Mr. Price?

14:04:21 23         MR. PRICE:  The question involved a conversation

14:04:23 24  where Ms. Gronich, the general counsel, was present.

1:04:33 25         THE COURT:  And the privilege has been asserted by

| | |
|---|---|
| 14:04:35 | 1 | MGA concerning the -- |
| 14:04:41 | 2 | MR. PRICE:  I'll defer to Mr. Zeller on that. |
| 14:04:42 | 3 | THE COURT:  Do you want to wait for just a moment |
| 14:04:46 | 4 | for Mr. Zeller? |
| 14:04:48 | 5 | MR. ZELLER:  We are getting for the transcript, |
| 14:04:51 | 6 | but I also know that they did decline to produce documents |
| 14:04:51 | 7 | and the like on these communications when the lawyers were |
| 14:04:52 | 8 | involved. |
| 14:04:52 | 9 | In fact, the Court will recall that we had moved |
| 14:04:55 | 10 | during discovery to get MGA's so-called investigation into |
| 14:05:00 | 11 | these trade secret thefts, and they asserted privilege over |
| 14:05:04 | 12 | that, as the Court will recall, and the Court sustained it. |
| 14:05:07 | 13 | So regardless of what little we've been given, the |
| 14:05:10 | 14 | Court definitely upheld their assertion of privilege and |
| 14:05:13 | 15 | they vigorously asserted privilege over that investigation |
| 14:05:17 | 16 | issue, if you recall. |
| 14:05:21 | 17 | MS. HURST:  Your Honor, may I, your Honor? |
| 14:05:23 | 18 | Mr. Larian has repeatedly testified about this |
| 14:05:27 | 19 | particular conversation on the day of the search.  We had |
| 14:05:30 | 20 | not asserted privilege over that.  He testified that |
| 14:05:34 | 21 | Ms. Kuemmerle participated and Mr. Machado had participated |
| 14:05:40 | 22 | and others have testified about that conversation as well. |
| 14:05:42 | 23 | What outside counsel did separately, we have |
| 14:05:45 | 24 | asserted privilege on that, but this particular |
| 1:05:49 | 25 | conversation, it's been testified about. |

CV 04-9049-DOC — 02/17/2011 — Day 19, Vol. 3 of 4

72

| 14:23:59 | 1 | MS. KELLER: Your Honor, I'm going to be done |
|---|---|---|

14:23:59  1          MS. KELLER:  Your Honor, I'm going to be done

14:24:02  2   before the afternoon is out, and I have a deposition here

14:24:04  3   where Ms. Hurst is specifically not asserting the privilege,

14:24:07  4   and he's answering the question, and I --

14:24:09  5          THE COURT:  So just a moment.  So where is the

14:24:13  6   problem?

14:24:14  7          MS. HURST:  There isn't a problem.

14:24:15  8          MS. KELLER:  There isn't a problem.  We didn't

14:24:16  9   assert a privilege to that conversation.

14:24:16 10          THE COURT:  Just a moment.  Did you see me make

14:24:17 11   any contrary ruling?  I just took a recess, that's all I

14:24:20 12   did, to let everybody tell me what was on their mind.  So

14:24:25 13   I'm going to go back in session.

14:24:27 14          MS. KELLER:  So, your Honor, may I ask the

14:24:30 15   question about the conversation that I was asking?

14:24:34 16          THE COURT:  I never said you couldn't.  All I

14:24:36 17   heard was Mr. Price say there is a privilege, and I took a

14:24:39 18   recess.  So Mr. Price thinks that there's a privilege.

14:24:43 19          MR. ZELLER:  And they did assert privilege over a

14:24:45 20   part --

14:24:48 21          THE COURT:  Okay.  Thank you very much.  Now we

14:24:49 22   are now back in session.

14:24:52 23          *(The following proceedings is taken in the*

14:24:55 24       *presence of the jury.)*

25:10 25          THE COURT:  All right.  The jury is present.  All

CV 04-9049-DOC - 02/17/2011 - Day 19, Vol. 3 of 4

73

| | | |
|---|---|---|
| 14:25:11 | 1 | counsel are present.  The witness is present. |
| 14:25:13 | 2 | Ms. Keller, if you'd like to continue on with your |
| 14:25:16 | 3 | cross-examination, please. |
| 14:25:18 | 4 | MS. KELLER:  Thank you, your Honor. |
| 14:25:19 | 5 | **ISAAC LARIAN, PLAINTIFFS' WITNESS, RESUMED** |
| 14:25:21 | 6 | **CROSS-EXAMINATION (Continued)** |
| | 7 | BY MS. KELLER: |
| 14:25:23 | 8 | Q    Mr. Larian, before we broke, I was asking you about |
| 14:25:25 | 9 | your having heard in October of 2005 about there having been |
| 14:25:32 | 10 | a raid on the MGA Mexico offices; do you remember that? |
| 14:25:36 | 11 | A    Yes. |
| 14:25:37 | 12 | Q    And you said that was the first you had heard of it? |
| 14:25:39 | 13 | A    Yes. |
| 14:25:40 | 14 | Q    Who did you hear about it from? |
| 14:25:42 | 15 | A    Susana Kuemmerle. |
| 14:25:44 | 16 | Q    And what did Susana tell you?  Did she call you?  Did |
| 14:25:50 | 17 | she meet with you in person? |
| 14:25:51 | 18 | A    No.  It was a phone call. |
| 14:25:52 | 19 | Q    And what did she tell you? |
| 14:25:54 | 20 | A    She told me -- |
| 14:25:57 | 21 | MR. PRICE:  Your Honor, this part would be hearsay |
| 14:25:58 | 22 | as well, unless it's offered for another purpose. |
| 14:26:02 | 23 | THE COURT:  No.  It goes to his state of mind, to |
| 14:26:04 | 24 | his conduct.  The exception is the same that I've applied |
| :26:05 | 25 | before in this area, Counsel, so overruled. |

CV 04-9049-DOC - 02/17/2011 - Day 19, Vol. 3 of 4

74

| | | |
|---|---|---|
| 14:26:11 | 1 | Now, Susana Kuemmerle will testify? |
| 14:26:14 | 2 | MR. QUINN:  Yes. |
| 14:26:15 | 3 | THE COURT:  That will resolve that problem also, |
| 14:26:17 | 4 | but right now it's not for the truth.  We don't have Susana |
| 14:26:22 | 5 | Kuemmerle on the stand, but she'll be here. |
| 14:26:26 | 6 | Counsel? |
| 12:37:09 | 7 | BY MS. KELLER: |
| 14:26:27 | 8 | Q    What did you find out from Susana? |
| 14:26:29 | 9 | A    She told me that Mattel Mexico has instigated the |
| 14:26:30 | 10 | Mexican police to raid MGA Mexico, and that they were there, |
| 14:26:36 | 11 | and they were taking a lot of things out of MGA Mexico. |
| 14:26:40 | 12 | Q    And specifically -- |
| 14:26:44 | 13 | MR. PRICE:  I object.  Ambiguity as to "they." |
| 14:26:49 | 14 | THE WITNESS:  Mexican police. |
| 14:26:50 | 15 | THE COURT:  I'm assuming it's the Mexican police, |
| 14:26:52 | 16 | so overruled. |
| 14:26:53 | 17 | MR. PRICE:  She said and Mattel, so I didn't know |
| 14:26:53 | 18 | what she meant. |
| 14:26:56 | 19 | THE COURT:  "Mattel" is Mattel and "they" is the |
| 14:26:58 | 20 | Mexican police. |
| 14:26:59 | 21 | BY MS. KELLER: |
| 14:27:00 | 22 | Q    Okay.  Just to clarify, so Ms. Kuemmerle told you that |
| 14:27:02 | 23 | Mattel Mexico had instigated an investigation? |
| 14:27:06 | 24 | A    A raid. |
| :27:06 | 25 | Q    A raid.  And that the Mexican authorities had gone to |

Exhibit G - Page 82

CV 04-9049-DOC - 02/17/2011 - Day 19, Vol. 3 of 4

75

| | | |
|---|---|---|
| 14:27:10 | 1 | MGA's offices, and the Mexican authorities had been doing |
| 14:27:15 | 2 | what? |
| 14:27:15 | 3 | A    Mexican police, they were taking a lot of things out of |
| 14:27:18 | 4 | MGA Mexico.  They had search warrant, and they had gun in |
| 14:27:23 | 5 | there, and they were taking a lot of things out of MGA |
| 14:27:26 | 6 | Mexico. |
| 14:27:27 | 7 | THE COURT:  Now, just a moment.  Let me just |
| 14:27:29 | 8 | caution you, just to be certain.  Once again, Ms. Kuemmerle |
| 14:27:32 | 9 | is not on the stand.  She is not subject to |
| 14:27:35 | 10 | cross-examination right now.  And whether this was an |
| 14:27:39 | 11 | instigation, we have no idea, and whether even if, in fact, |
| 14:27:45 | 12 | the word "raid," we have no idea.  So this is simply |
| 14:27:48 | 13 | information that Mr. Larian is testifying to that he |
| 14:27:50 | 14 | received, and the only purpose is to show his conduct and |
| 14:27:54 | 15 | state of mind at that time. |
| 14:27:55 | 16 | Counsel? |
| 14:27:56 | 17 | MS. KELLER:  Thank you. |
| 14:27:56 | 18 | BY MS. KELLER: |
| 14:27:57 | 19 | Q    And by the way, Mr. Larian, you've testified about this |
| 14:27:59 | 20 | topic before? |
| 14:28:00 | 21 | A    I have. |
| 14:28:01 | 22 | Q    And so was it after that that you found out that some |
| 14:28:09 | 23 | of the things taken, seized by the Mexican police from the |
| 14:28:15 | 24 | MGA offices have been documents apparently taken from Mattel |
| :28:20 | 25 | by one or more of those three employees? |

**Exhibit G - Page 83**

| | | |
|---|---|---|
| 14:28:23 | 1 | A    Yes. |
| 14:28:25 | 2 | Q    And was it Ms. Kuemmerle who told you that as well? |
| 14:28:29 | 3 | A    No. |
| 14:28:31 | 4 | Q    Now, after you found that out, how did you react? |
| 14:28:36 | 5 | A    I was really shocked and disappointed. |
| 14:28:40 | 6 | Q    And why is that? |
| 14:28:42 | 7 | A    Because I had told these people repeatedly in front of |
| 14:28:48 | 8 | Tom Parks, in front of Susana Kuemmerle, in front of Mary |
| 14:28:52 | 9 | Carmen, "Just come with your brain.  Don't bring anything. |
| 14:28:57 | 10 | Just come with your brain.  Don't bring anything." |
| 14:29:00 | 11 | Q    So you were asked by Mr. Price, then, why didn't you |
| 14:29:04 | 12 | fire them? |
| 14:29:06 | 13 | A    Yes. |
| 14:29:07 | 14 | Q    Why didn't you fire them? |
| 14:29:08 | 15 | A    Because they -- I talked to them later on.  They said |
| 14:29:13 | 16 | they have not used any of these at MGA Mexico, and they were |
| 14:29:17 | 17 | sorry that they had not followed my direction. |
| 14:29:21 | 18 | Q    Did they explain to you what it was that they had |
| 14:29:23 | 19 | brought with them? |
| 14:29:24 | 20 | A    They did not. |
| 14:29:24 | 21 | Q    So they just told you they hadn't used anything? |
| 14:29:27 | 22 | A    Right. |
| 14:29:28 | 23 | Q    And did that -- was that -- did that satisfy you? |
| 14:29:32 | 24 | A    I wasn't happy that they hadn't followed my direction, |
| :29:36 | 25 | but I didn't take anymore disciplinary action against them |

| | | |
|---|---|---|
| 14:29:42 | 1 | because they were remorseful, they had families, kids, et |
| 14:29:46 | 2 | cetera.  I just didn't want to go ahead and fire them, |
| 14:29:51 | 3 | whether it's them or somebody else at my company.  I have a |
| 14:29:55 | 4 | soft spot. |
| 14:29:55 | 5 | Q    Well, you have other employees at your company that |
| 14:29:58 | 6 | you've let go in the past, right? |
| 14:30:00 | 7 | A    Yes. |
| 14:30:00 | 8 | Q    And have you had other employees that you've let go in |
| 14:30:03 | 9 | any similar situation? |
| 14:30:05 | 10 | A    What kind of situation? |
| 14:30:06 | 11 | Q    Well, when you let employees go in the past, what would |
| 14:30:09 | 12 | have been the circumstances? |
| 14:30:10 | 13 | A    Not working out, not following company policy, but I've |
| 14:30:14 | 14 | always given people a second chance, a third chance, and |
| 14:30:18 | 15 | that's -- that's my soft spot. |
| 14:30:28 | 16 | Q    Did Mr. Machado assure you that he hadn't used any |
| 14:30:31 | 17 | Mattel confidential information? |
| 14:30:33 | 18 | A    I don't recall. |
| 14:30:34 | 19 | Q    You just remember that all three of them, more or less, |
| 14:30:37 | 20 | told you that? |
| 14:30:38 | 21 | A    Yes. |
| 14:30:39 | 22 | Q    Now, Exhibit 6766, if you could take a look at that. |
| 14:30:59 | 23 | A    Yes, go ahead. |
| 14:31:00 | 24 | Q    Do you recognize this as an e-mail chain where Susana |
| :31:04 | 25 | Kuemmerle, the head of MGA Mexico, was asking whether or not |

**Exhibit G - Page 85**

CV 04-9049-DOC - 02/17/2011 - Day 19, Vol. 3 of 4

78

| | | |
|---|---|---|
| 14:31:09 | 1 | her people would get bonuses? |
| 14:31:11 | 2 | A     Yes. |
| 14:31:12 | 3 | Q     And this is dated May 9th, 2006? |
| 14:31:15 | 4 | A     Yes. |
| 14:31:17 | 5 |       MS. KELLER:  Your Honor, I'd ask that 6766 be |
| 14:31:19 | 6 | admitted. |
| 14:31:20 | 7 |       THE COURT:  Received. |
| 14:31:21 | 8 |       (Defendants' Exhibit No. 6766 is received in |
| 14:31:21 | 9 |       evidence.) |
| 16:59:57 | 10 | BY MS. KELLER: |
| 14:31:23 | 11 | Q     And if you'd go to the middle of the page on page 2, |
| 14:31:29 | 12 | you'll see an e-mail from Eric Villette, executive vice |
| 14:31:34 | 13 | president of operations to Susana Kuemmerle -- |
| 14:31:38 | 14 | A     Yes. |
| 14:31:38 | 15 | Q     -- dated May 9th, 2006? |
| 14:31:41 | 16 | A     Yes. |
| 14:31:45 | 17 | Q     And it says, "Susana we've taken a look at the bonus |
| 14:31:49 | 18 | schedule, and we are almost good to go.  We still have one |
| 14:31:52 | 19 | issue.  We have incurred so far roughly 114,000 in legal |
| 14:32:00 | 20 | expenses re: Pablo Gustavo and Mariana.  I believe they need |
| 14:32:06 | 21 | to bear some of these costs, as they created the situation |
| 14:32:10 | 22 | in the first place." |
| 14:32:11 | 23 |       What did he mean, in your understanding, by "they |
| 14:32:12 | 24 | created the situation in the first place"? |
| :32:13 | 25 | A     They didn't follow my direction and Tom Parks' |

| | |
|---|---|
| 14:32:13 1 | direction and our head of human resources' direction not to |
| 14:32:18 2 | bring anything from Mattel, "just come with your brain." |
| 14:32:20 3 | Q    And then he goes on, "Individual share, if fully |
| 14:32:23 4 | charged back, would be just under 38K.  What would you |
| 14:32:29 5 | suggest?" |
| 14:32:30 6 | "Brian, all the 114K related to just the employee |
| 14:32:30 7 | defense or MGA and employees." |
| 14:32:36 8 | What's your understanding why he was asking that? |
| 14:32:37 9 | A    Because I think Mattel sued also MGA Mexico, and I |
| 14:32:43 10 | think he was asking is that all for the defense because we |
| 14:32:49 11 | decided to defend these three employees.  Mattel sued them. |
| 14:32:53 12 | I don't know if they sued them all.  They sued Gustavo.  I |
| 14:32:57 13 | really don't remember, but they were -- they had issues, |
| 14:33:00 14 | now, with the Mexican authorities.  They didn't have money |
| 14:33:03 15 | or lawyers, so we were providing them legal service. |
| 14:33:08 16 | Q    So in that -- your understanding, then, of that |
| 14:33:11 17 | sentence is he's trying to figure out how much of this |
| 14:33:14 18 | relates to the defense of MGA versus the individuals? |
| 14:33:16 19 | A    That's correct. |
| 14:33:24 20 | Q    Now, if you look at Ms. Kuemmerle's reply on page 1, |
| 14:33:29 21 | dated May 9th, 2006, she says, "Eric, although you and I |
| 14:33:34 22 | just talked about this, it is because I am head of MGA de |
| 14:33:37 23 | Mexico, I felt I needed to put this in writing and on the |
| 14:33:44 24 | record.  I see and respect your point of view and understand |
| 14:33:48 25 | the global implications this may have in the future. |

| | | |
|---|---|---|
| 14:33:48 | 1 | However, I disagree completely on this suggestion.  Even |
| 14:33:53 | 2 | when it is clear that a stupid mistake was made, and it is |
| 14:33:57 | 3 | also clear that neither one of us ever imagined that this |
| 14:34:00 | 4 | particular witch hunt was going to take place in Mexico, |
| 14:34:03 | 5 | even with the bad history between both companies. |
| 14:34:07 | 6 | "Like I mentioned to you, if we were to do something |
| 14:34:10 | 7 | to, quote, 'reprimand,' unquote, Gustavo, Pablo and Mariana, |
| 14:34:12 | 8 | we should have done it on October 28th, 2005, the day after |
| 14:34:17 | 9 | the search in our offices.  To do it now, when we have to |
| 14:34:22 | 10 | pay our bonuses, seems unfair and unethical to me, |
| 14:34:25 | 11 | especially when Gustavo is about to move to L.A. and Pablo |
| 14:34:27 | 12 | is closing X-mas bookings.  I think we must put in the |
| 14:34:33 | 13 | balance the effects of this decision. |
| 14:34:37 | 14 | "I ask you all with what mode is Gustavo going to move |
| 14:34:42 | 15 | and Pablo going to keep on pushing sales in Mexico. |
| 14:34:45 | 16 | "Lastly, and as I mentioned to you, if this is the |
| 14:34:48 | 17 | order you and Isaac give me, then this is what I will have |
| 14:34:48 | 18 | to do and we will proceed immediately." |
| 14:34:55 | 19 | So what was your understanding of what Ms. Kuemmerle's |
| 14:34:59 | 20 | position was about whether they should be deprived of their |
| 14:35:04 | 21 | bonuses because of the raid? |
| 14:35:05 | 22 | A    She didn't want -- she didn't want us to withhold their |
| 14:35:09 | 23 | bonuses. |
| 14:35:10 | 24 | Q    So you were also asked about -- I'm sorry. |
| :35:23 | 25 | Let's look at the top of that e-mail chain, and this is |

CV 04-9049-DOC - 02/17/2011 - Day 19, Vol. 3 of 4

81

| | | |
|---|---|---|
| 14:35:26 | 1 | from Eric Villette, the executive vice president of |
| 14:35:34 | 2 | operations, to you and Ms. Kuemmerle. |
| 14:35:37 | 3 | A    Right. |
| 14:35:39 | 4 | Q    And he says, "Susana feels strongly about this, as she |
| 14:35:42 | 5 | should as head of Mexico.  A potential solution is to defer |
| 14:35:48 | 6 | the decision on the potential charge until next year.  Pay |
| 14:35:51 | 7 | the bonus for 2005, but have a frank discussion with Pablo |
| 14:35:56 | 8 | and Gustavo on whether they feel accountable and are willing |
| 14:36:00 | 9 | to defray partially the costs. |
| 14:36:02 | 10 | "After thinking about it, we should not tie the two |
| 14:36:05 | 11 | issues, as they are separate.  However, whether now or at a |
| 14:36:08 | 12 | later stage, I strongly believe we need to take some action |
| 14:36:11 | 13 | at the corporate level, as the number of former Mattel |
| 14:36:15 | 14 | employees will likely continue to increase, it must be made |
| 14:36:19 | 15 | clear that anyone who breaks his/her engagement in writing |
| 14:36:23 | 16 | not to bring anything confidential will be held |
| 14:36:25 | 17 | accountable." |
| 14:36:27 | 18 | So what was your understanding of what your executive |
| 14:36:31 | 19 | vice president was responding back to Ms. Kuemmerle? |
| 14:36:34 | 20 | A    Not to tie the bonus with -- with the legal fees that |
| 14:36:39 | 21 | we were paying for these people's stupid act and -- but -- |
| 14:36:49 | 22 | they have to be kept accountable. |
| 14:36:52 | 23 | Q    So by "kept accountable," have that reinforced, that if |
| 14:36:59 | 24 | they did anything like that in the future, stupid like that, |
| :37:04 | 25 | that they would pay the? |

CV 04-9049-DOC - 02/17/2011 - Day 19, Vol. 3 of 4

82

| | | |
|---|---|---|
| 14:37:07 | 1 | MR. PRICE:  Objection.  Leading. |
| 14:37:08 | 2 | THE COURT:  Sustained. |
| 14:37:08 | 3 | BY MS. KELLER: |
| 14:37:10 | 4 | Q    Held accountable how? |
| 14:37:11 | 5 | A    I made it very clear that if there were anymore contact |
| 14:37:14 | 6 | whatsoever from any of them with anybody at Mattel, former |
| 14:37:17 | 7 | friends, et cetera, then they would be fired. |
| 14:37:21 | 8 | Q    But you didn't fire them then? |
| 14:37:23 | 9 | A    I didn't fire them at that moment, no. |
| 14:37:27 | 10 | Q    Now, you recall being asked about the fact that |
| 14:37:29 | 11 | Mr. Machado was transferred to the United States? |
| 14:37:35 | 12 | A    He was. |
| 14:37:36 | 13 | Q    If you could take a look at Exhibit 35075. |
| 14:37:42 | 14 | A    Yes. |
| 14:37:42 | 15 | Q    And look at the second page. |
| 14:37:49 | 16 | Is this an e-mail from Ron Brawer to you and copies to |
| 14:37:57 | 17 | Brian Wing, Eric Villette, the person we were just talking |
| 14:38:01 | 18 | about, and somebody named Jay Wagner, dated August 24th, |
| 14:38:05 | 19 | 2005? |
| 14:38:06 | 20 | A    Yes. |
| 14:38:08 | 21 | MS. KELLER:  Your Honor, I ask to admit 35075. |
| 14:38:11 | 22 | THE COURT:  It's received. |
| 14:38:12 | 23 | (Defendants' Exhibit No. 35075 is received in |
| 14:38:12 | 24 | evidence.) |
| | 25 | |

CV 04-9049-DOC - 02/17/2011 - Day 19, Vol. 3 of 4

83

| | | |
|---|---|---|
| 13:05:36 | 1 | BY MS. KELLER: |
| 14:38:17 | 2 | Q    Now, if you look at the second page, this is a |
| 14:38:26 | 3 | discussion of Mr. Machado having been asked by Ron Brawer to |
| 14:38:33 | 4 | transfer to the U.S.; is that right? |
| 14:38:36 | 5 | A    Yes. |
| 14:38:36 | 6 | Q    Who was Ron Brawer? |
| 14:38:37 | 7 | A    He was an executive vice president of sales and |
| 14:38:40 | 8 | marketing. |
| 14:38:41 | 9 | Q    In the U.S.? |
| 14:38:42 | 10 | A    Yes. |
| 14:38:43 | 11 | Q    And this says, "I spoke to Gustavo twice before I read |
| 14:38:49 | 12 | this note.  He wants a very clear description of what it is |
| 14:38:52 | 13 | we want him to do in L.A.  I told him the core job was head |
| 14:38:58 | 14 | of brand marketing for Bratz, but I was not crystal clear. |
| 14:39:02 | 15 | For example, I cannot promise the position reported to me. |
| 14:39:06 | 16 | "Two, Gustavo let on that he would like to help build |
| 14:39:10 | 17 | subsidiaries, so I then tried to assure him that his job |
| 14:39:13 | 18 | would be global and it could move him, eventually, to Spain |
| 14:39:17 | 19 | or Europe. |
| 14:39:18 | 20 | "Three, he suggested he is best serving the company" -- |
| 14:39:22 | 21 | that b-l-d-i-n-g spells "building" -- "the Vivid of Latin |
| 14:39:28 | 22 | America.  I told him he could still do this from L.A., and |
| 14:39:32 | 23 | he disagreed. |
| 14:39:33 | 24 | "Next steps, A, I can give him some kind of a job |
| :39:37 | 25 | write-up but would like team input; B, wants to sit down |

**Exhibit G - Page 91**

CV 04-9049-DOC - 02/17/2011 - Day 19, Vol. 3 of 4

84

| | | |
|---|---|---|
| 14:39:41 | 1 | with Isaac when he is in Mexico on September 9th.  Ron." |
| 14:39:47 | 2 | So this was not a reward to Mr. Machado to come to the |
| 14:39:53 | 3 | United States, correct? |
| 14:39:54 | 4 | MR. PRICE:  Objection.  Leading. |
| 14:39:56 | 5 | THE COURT:  Sustained. |
| 14:39:56 | 6 | BY MS. KELLER: |
| 14:39:57 | 7 | Q    Was this a reward to Mr. Machado to come to the United |
| 14:40:00 | 8 | States? |
| 14:40:01 | 9 | A    Absolutely not. |
| 14:40:02 | 10 | Q    What was your understanding of whether he wanted to |
| 14:40:04 | 11 | come to the U.S. or not? |
| 14:40:06 | 12 | A    He didn't want to come to the U.S.  He wanted to do |
| 14:40:10 | 13 | these Vivid -- he refers to a company called Vivid |
| 14:40:14 | 14 | Imagination, which is a distributor in -- a very successful |
| 14:40:19 | 15 | distributor in UK, and his mind was we set up something like |
| 14:40:25 | 16 | this to handle all of Latin America, and he didn't want to |
| 14:40:30 | 17 | do it out of L.A. |
| 14:40:31 | 18 | Q    So was his transfer to Los Angeles and his -- well, |
| 14:40:39 | 19 | let's take it one at a time. |
| 14:40:41 | 20 | Was paying him his bonus a reward for him stealing |
| 14:40:46 | 21 | Mattel information? |
| 14:40:47 | 22 | A    It was not. |
| 14:40:47 | 23 | Q    Was his transfer to Los Angeles a reward for stealing |
| 14:40:51 | 24 | Mattel information? |
| :40:52 | 25 | A    It was not.  He didn't even want to come to |

**Exhibit G - Page 92**