UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., et al.<br><br>Plaintiffs,<br><br>v.<br><br>MGA ENTERTAINMENT, INC., et al.<br><br>Defendants.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 DOC (RNBx)<br><br>O R D E R GRANTING IN PART AND DENYING IN PART MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT (HK) LTD., MGAE DE MEXICO S.R.L. DE CV, AND ISAAC LARIAN'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS |

Before the Court is MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de CV, and Isaac Larian (collectively "MGA")'s Application for Attorneys' Fees and Costs Under Section 505 of the Copyright Act. The Court referred the Application to the Special Master for Discovery. *See* Fed. R. Civ. P. 53(a)(C). Mattel did not initially object to the Special Master's appointment, but states that it "did not consent to the [Special] Master's evaluation of MGA's fee applications." Because any interest in convenience must yield to Mattel's right to a judicial determination, the Court STRIKES the Special Master's Report and Recommendation.

## I.   Introduction

Section 505 of the Copyright Act provides that "[i]n any action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof." 17 U.S.C. § 505. "[T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs." *Id.* The statute's use of the word "may" makes clear that a prevailing party is not always entitled to recover its costs. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023 (1994).

The court's exercise of discretion under Section 505 is guided by a single equitable inquiry: did the successful prosecution or defense "further the purposes of the Copyright Act[?]" *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 559 (9th Cir. 1996); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007). Factors relevant to that inquiry may include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986).[1] These factors are not exclusive, *id.*, or mandatory, *Fogerty*, 94 F.3d at 558, and must always yield to the purposes of the Copyright Act, *Fogerty*, 510 U.S. at 534 n. 19. "Faithfulness to the purposes of the Copyright Act [] is the pivotal criterion." *Fogerty*, 94 F.3d at 558.

## II.   Discussion

Unlike many other statutes, the Copyright Act limits the rights it confers, and prevents other jurisdictions from enlarging those rights. 17 U.S.C. § 301. Thus, "the policies served by the Copyright Act are more complex, more measured, than simply maximizing the number of meritorious suits for copyright infringement." *Fogerty*, 510 U.S. at 526. By restricting the rights of copyright holders, the Act ensures that "private motivation [] ultimately serve[s] the cause of promoting broad public availability of literature, music, and the other arts." *See id.* at 526-27 (quoting *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156, 95 S.Ct. 2040 (1975)). "The primary objective of copyright is not to reward the labor of authors, but '[t]o promote the

---

[1] Mattel is not an impecunious litigant. *See Mattel, Inc. v. Greiner & Hauser GmbH*, 354 F.3d 857, 859 (9th Cir. 2003).

Progress of Science and useful Arts.'" *Feist Publ'ns, Inc. v. Rural Tele. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282 (1991). This purpose is satisfied when the public can "build freely upon the ideas and information" in the public domain. *Id.* at 349-50.

### A. Recovery of Fees

In this case, Mattel claimed that it owned valid copyrights in the concept sketches and sculpts for the "Bratz" line of dolls and that every generation of "Bratz" dolls released by MGA infringed those copyrights. The breadth of Mattel's infringement claim corresponded with its request for "more than $1 billion dollars in copyright damages" and an "injunction prohibiting MGA from producing or marketing virtually every Bratz female fashion doll, as well as any future dolls substantially similar to Mattel's copyrighted Bratz works." *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 910 (9th Cir. 2010). This request for relief was predicated on Mattel's mistaken expectation that it owned the "ideas" in the copyrighted works; and the mere specter of that relief may have clouded MGA's business prospects, bolstered Mattel's status, and changed the landscape of the fashion doll industry. *Cf. Ideal Steel Supply Corp. v. Anza*, ___ F.3d ___, 2011 WL 2557618, at *19 (2d Cir. June 28, 2011) ("In light of (i) the broad scope of RICO (and what might constitute proceeds from a RICO 'predicate act'), and (ii) the specter of paying treble damages, the mere threat of such a suit would chill competition.").

The Ninth Circuit held that only a small minority of Mattel's claim "might" be reasonable. *Mattel*, 616 F.3d at 917. This Court agreed on remand, finding "no indicia of sufficient disagreement" that all but six Bratz dolls did not infringe the concept sketches and sculpts. *Mattel, Inc. v. MGA Entm't, Inc.*, ___ F. Supp. 2d ___, 2011 (C.D. Cal. Jan. 5, 2011). Regardless of Mattel's disputed claim to ownership of the concepts sketches and sculpts, these rulings, prompted by MGA, prevented Mattel from stifling the dissemination of "fashion dolls with a bratty look or attitude," *Mattel*, 616 F.3d at 916, and encouraged the widespread "production of original . . . artistic . . . expression for the good of the public." *Fantasy*, 94 F.3d at 557 (quoting *Fogerty*, 510 U.S. at 524).[2]

---

[2] Contrary to Mattel's argument, its copyright claim affected more than just "which company would provide Bratz to the public." Mattel's request for an injunction, as well

There are compelling equitable reasons to award MGA its attorneys' fees. MGA secured the public's interest in a robust market for trendy fashion dolls populated by multiple toy companies, not just Mattel or even MGA. *Cf. Fogerty*, 94 F.3d at 556 ("Fogerty's vindication of his copyright in "The Old Man Down the Road" secured the public's access to an original work of authorship and paved the way for future original compositions-by Fogerty and others-in the same distinctive "Swamp Rock" style and genre."); *see also Mattel*, 616 F.3d at 917 ("Mattel can't claim a monopoly over fashion dolls with a bratty look or attitude, or dolls sporting trendy clothing-these are all unprotectable ideas."). A fee award accounts for this lawsuit's detrimental impact on MGA's sales, as well as the economic benefit Mattel may have obtained by distracting its primary competitor with litigation. *Cf. Fogerty*, 94 F.3d at 556 ("Further, the district court found that a fee award was appropriate to help restore to Fogerty some of the lost value of the copyright he was forced to defend."). MGA's successful defense also nudged copyright law in the direction of "free expression" by appealing to basic principles about the unprotectability of ideas, instead of relying on "technical defense[s], such as the statute of limitations, laches, or the copyright registration requirements." *Id.* MGA's contribution to the state of the law in the field of copyright in a case of this magnitude and notoriety cannot be understated; its failure to vigorously defend against Mattel's claims could have ushered in a new era of copyright litigation aimed not at promoting expression but at stifling the "competition" upon which America thrives. *Mattel*, 616 F.3d at 918; *cf. Fogerty*, 94 F.3d at 556 ("Finally, the benefit conferred by Fogerty's successful defense was not slight or insubstantial relative to the costs of litigation.").

Mattel argues that MGA's successful defense could not have furthered the purposes of copyright law because Mattel's underlying claim was reasonable. This argument is factually and legally incomplete. In many cases involving reasonable claims, a successful defense is no more effective than a successful prosecution at furthering the purposes of copyright law, and a fee award to the defendant is therefore inappropriate. *See Lotus Dev. Corp. v Borland Int'l, Inc.*,

---

as the legal reasoning offered in support of that request, attempted to justify a restriction on *every other prospective doll designer* from producing "fashion dolls with a bratty look or attitude, or dolls sporting trendy clothing." *Mattel*, 616 F.3d at 916.

140 F.3d 70, 75 (1st Cir. 1998); *Matthew Bender & Co. v. W. Publ'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001); *see also Harris Custom Builders Inc. v. Hoffmeyer*, 140 F.3d 728, 730-31 (7th Cir. 1998). But that is a rule of thumb, not rule of law, and Mattel's insistence that objective unreasonableness is a prerequisite to the recovery of costs under Section 505 defies clear authority to the contrary.

Indeed, Justice Thomas wrote separately in *Fogerty* to express concern about the disparate treatment of prevailing parties seeking attorneys' fees under identically worded statutes. Justice Thomas' concurrence recognized that unreasonableness is not a prerequisite to the recovery of attorneys' fees in a copyright case:

> Under the Title VII provision, a prevailing plaintiff 'ordinarily is to be awarded attorney's fees in all but special circumstances,' whereas a prevailing defendant is to be awarded fees only 'upon a finding that plaintiff's action was frivolous, unreasonable, or without foundation.' *By contrast*, under the Court's decision today, prevailing plaintiffs and defendants in the copyright context 'are to be treated alike,' and 'attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion.'

*Fogerty*, 510 U.S. at 536 (emphasis added) (Thomas, J., concurring in judgment).

In any event, Mattel's claim – that the reproduction of the look of a "girl with too much makeup on" must be remedied by a billion dollars in damages and injunctive relief – is far less reasonable than the claim in *Fogerty*, which reached the jury in its entirety. 94 F.3d at 556.[3] By and large, the protected features of subsequent generation "Bratz" dolls "are nothing like" the concept sketches and sculpts to which Mattel claimed ownership. *Mattel*, 616 F.3d at 917. Differences in the "fashions and hairstyles" are plainly evident and Mattel never argued that any such similarities existed. Instead, Mattel claimed that the *types* and *placement* of features

---

[3] The Ninth Circuit awarded defendant his fees and costs on appeal, even though plaintiff's appeal raised close and difficult legal issues. *See Fogerty*, 94 F.3d at 561. There was no discussion of reasonableness; the court considered it sufficient that "it served the purposes of the Copyright Act for [defendant] to defend an appeal so that the district court's fee award would not be taken away from him." *Id.*

depicted in the concept sketches and sculpts were protectable merely because they made the dolls "look younger." *Mattel*, 2011 WL 1114250, at *16. But it is well-established that copyright protection does not extend to ideas, especially not ubiquitous ideas like young and fashionable females. *Id.*; *see also Mattel*, 616 F.3d at 917. Mattel had been reminded of this black letter law in prior litigation. *See, e.g., Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 136 (2d Cir. 2004) ("An upturned nose, bow lips, and wide eyes are the 'idea' of a certain type of doll face. That idea belongs not to Mattel but to the public domain.").

Mattel argues that its claim could not have been unreasonable because the prior district court judge entered its requested injunctive relief. Far from demonstrating the reasonableness of its copyright claim, the fact that Mattel convinced a judicial officer to commit legal error underscores the value of MGA's persistent defense in furthering the purposes of copyright law. Judges occasionally make mistakes, and sometimes, as in this case, those mistakes are unreasonable. *See Mattel*, 616 F.3d at 917 ("It might have been reasonable to hold that *some* of the Bratz dolls were substantially similar to Bryant's sketches, especially those in the first generation. But we fail to see how the district court could have found the vast majority of Bratz dolls . . . substantially similar[.]"). MGA's successful defense prevented that error from affecting the outcome of this lawsuit and setting poor precedent in the field of copyright.

Mattel also argues that its copyright claim did not offend the policies served by copyright law because some evidence supported its ultimately unsuccessful assertion of ownership over the concept sketches and sculpts. But ownership of the copyrighted work is only one element of a successful copyright claim, and it is often uncontested. *See Feist Publ'ns, Inc. v. Rural Tele. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282 (1991); *see, e.g., Fogerty*, 94 F.3d at 556. Even if a plaintiff's assertion of ownership to a valid copyright is reasonable or even uncontested, the claim may still aspire to stifle works that "build freely upon the ideas and information" in the public domain, and a successful defense may further the purposes of the Act. *Id.*; *Feist*, 499 U.S. at 349-50. The danger of over-aggressive copyright prosecution that concerned the Supreme Court in *Fogerty* was exemplified not by Mattel's assertion of ownership over the copyrighted works but by its pursuit of grossly overbroad monetary and injunctive relief.

-6-

Mattel finally argues that its good faith cannot be questioned because its motivation in filing suit is the subject of a separate action presently pending before this Court and in which Mattel has filed a jury demand.[4] Though *Lieb* discussed "motivation" as a relevant factor, "a finding of bad faith, frivolous or vexatious conduct is no longer required," *Fogerty*, 94 F.3d at 960, and the Court fails to see its applicability here. Had Mattel advanced a meritorious copyright claim, the presence of a nefarious motivation (excepting a purpose to "harass, cause unnecessary delay, or needlessly increase the cost of litigation," *see* Fed. R. Civ. P. 11) might not have entitled MGA to a fee award. *Lotus Dev. Corp.*, 140 F.3d at 75 ("Arguably, there is nothing inherently improper about bringing a claim that is well-founded in law and fact against one's competitors, even when legal action, if successful, will inflict severe economic consequences upon them."). Similarly, the Copyright Act's interest in creative freedom is no more vindicated by a successful defense against an unreasonable claim brought by a mischievous plaintiff as it is by a successful defense against an unreasonable claim brought by a clean-hearted plaintiff. *See Screenlife Establishment v. Tower Video, Inc.*, 868 F. Supp. 47, 51-52 (S.D.N.Y. 1994) (citing *Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503 (4th Cir. 1994)). Mattel's claim posed a serious threat to the public's access to free and competitive expression; the possibility that Mattel ignored decades-old principles about the unprotectability of ideas in good faith is not an excuse and does not diminish the benefits society will reap as a result of MGA's successful defense.

  **B. Calculation of Attorneys' Fees and Costs**

    <u>1.</u> <u>Invoices</u>

MGA has filed its attorney invoices in support of its Application and, pursuant to this

---

[4] In support of its argument that Mattel acted in bad faith, MGA asks the Court to consider the conduct of Mattel's attorneys. However, the Court's duty is to do "justice between the parties," *see Elder v. Holloway*, 984 F.2d 991, 998 (9th Cir. 1993) (Kozinski, J., dissenting from denial of petition for rehearing), not the attorneys. Mattel's attorneys may represent the company in litigation, but the Court's Orders affect Mattel, and the company should not have to account for its lawyers' independent conduct.

Court's order, submitted unredacted versions of those invoices for review *in camera*.[5] Mattel has moved to compel the production of those unredacted invoices pursuant to the rule that invoices submitted in support of a request for attorneys' fees "should be redacted *only* to the extent absolutely necessary to protect information covered by the attorney-client privilege or the work-product doctrine." *U.S. v. $1,379,879.09 Seized From Bank of America*, 374 Fed. Appx. 709, at **1 (9th Cir. Mar. 19, 2010) (emphasis in original) (citing *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986)); *see also Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 286 (7th Cir. 2002). Mattel's position is legally sound; this Court has recognized that the submission of *in camera* information or argument circumvents the adversarial process.[6] *See* Hearing Tr., dated December 20, 2010, Vol. I-B, at 21:8-17. But that concern has been partially alleviated here, because MGA has served Mattel with redacted copies of its attorney invoices that (1) identify the number of hours each attorney dedicated to the case on a monthly basis; and (2) categorize attorney hours between time spent on MGA's affirmative claims and time spent on MGA's defense against Mattel's claims. Further detail could be necessary for Mattel to assess the reasonableness of the fees charged, but Mattel has expressly waived any objection to the "rates" charged by MGA's attorneys or the allocation of time on "particular tasks." Hearing

---

[5] Contrary to Mattel's argument, MGA did not waive the attorney-client privilege or work product doctrine.

[6] Despite the Court's admonition, the parties have requested a number of *in camera* proceedings over the course of this lawsuit and, particularly, during discovery. For instance, Mattel demanded that its in-house counsel be examined *in camera* about his factual investigation prior to the filing of this lawsuit prior to testifying about that subject in connection with MGA's statute of limitations defense. Mattel also requested that its outside counsel and in-house counsel be subject to *in camera* examination before being exposed to the adversarial process in connection with MGA's claim that Mattel concealed evidence about its market research tactics – conduct that ultimately resulted in a finding of liability against Mattel. MGA likewise requested that its outside and in-house counsel be subject to *in camera* examination in connection with Mattel's claims that the company's communications with its lawyers about the withholding of an email chain were made in furtherance of a crime or a fraud as well as Mattel's claim that MGA suborned perjury.

Tr., dated May 25, 2011, Vol. IV, at 41-42.[7]

Mattel argues that it needs to review MGA's unredacted invoices in order to object to the "apportionment" of fees between MGA's defense against Mattel's claim for copyright infringement and MGA's defense against Mattel's other claims. But information relevant to apportionment, including legal strategy and the results of witness interviews, is covered by the attorney-client privilege and work product doctrine. *Weisman*, 803 F.2d at 505; *Federal Savings and Loan Ins. Corp. v. Ferm*, 909 F.2d 372 (9th Cir. 1990) (noting that *in camera* review of attorney invoices was necessary to protect "the confidentiality of Ferm's communications with her counsel and her counsel's mental impressions concerning litigation strategy"); *In Re Grand Jury Witness*, 695 F.2d 359 (9th Cir. 1982) ("[C]orrespondence between attorney and client which reveals the client's motivation for creation of the relationship or possible litigation strategy ought to be protected. Similarly, bills, ledgers, statements, time records and the like which also reveal the nature of the services provided, such as researching particular areas of law, also should fall within the privilege."). Mattel already has information about MGA's monthly bills and its attorneys' allocation of time between affirmative and defensive claims. The risk of disclosing specific information about seven years of MGA's legal strategy is particularly concerning in this case, since both parties are involved in several lawsuits, including a lawsuit against each other in this Court. If the parties were no longer engaged in litigation or if Mattel agreed to some reciprocal production of its own attorney invoices, the Court might have lent greater credence to Mattel's claimed due process concern. But granting this demand for additional transparency, despite the absence of any objection to the hourly rates and time allocation by MGA's attorneys, gives Mattel a one-way view into the litigation strategy of a

---

[7] Mattel has opposed the production of its own billing records by noting its lack of objection to the reasonableness of MGA's fees. Had Mattel so objected, its own billing records may have been relevant. *See* M. Derfner & A. Wolf, Court-Awarded Attorney Fees ¶ 16.02[8][a] at 16-46 (2010 ed.) ("[T]he vehemence or tenacity of the opposition justifies an increase in the amount of time an attorney must necessarily – and therefore reasonably – spend in countering the opposition and winning the suit. Similarly, the skill of an opposing counsel may justify the expenditure of a greater amount of time in litigation than would ordinarily be reasonable.").

party that it continues to battle with in other cases.

### 2. Relatedness

MGA is entitled to recover the fees it incurred in defending against claims that "involve[d] a common core of facts or [were] based on related legal theories." *The Traditional Cat Ass'n v. Gilbreath*, 340 F.3d 829, 833 (9th Cir. 2003); *see also Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005). That test has been imported from the federal civil rights context, in which a prevailing plaintiff is entitled to recover its reasonable attorney's fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933 (1983). In *Hensley*, the Supreme Court noted that the calculation of "reasonable attorney's fees" involves (1) multiplying the number of hours "reasonably expended on the litigation" with a reasonable hourly rate; (2) the interrelatedness of the claims; (3) the extent of the plaintiff's success; and (4) other equitable factors, including those identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). 461 U.S. at 434-37. On the other hand, fees incurred defending against unrelated claims are not recoverable because time spent on the prosecution of those claims cannot "be deemed to have been 'expended in pursuit of the ultimate result achieved.'" *Id.*

Contrary to Mattel's argument, the Supreme Court's recent decision in *Fox v. Vice* does not undermine *Hensley*. In *Fox*, a successful civil rights defendant applied for its reasonable attorneys' fees contending, as a § 1988 defendant must, that the plaintiff's claim was "frivolous."[8] The plaintiff responded that frivolousness requires that *every* claim be frivolous, but the Court disagreed, citing *Hensley* for the proposition that "a court may reimburse a defendant for costs under § 1988 even if a plaintiff's suit is not wholly frivolous." 131 S.Ct.

---

[8] Unlike copyright law's "evenhanded" approach that evaluates attorney's fee applications brought by prevailing plaintiffs and defendants under the same test, *Fogerty*, 510 U.S. at 534, § 1988 plaintiffs and defendants are treated differently in light of the statute's obvious interest in vindicating civil rights. Section 1988 plaintiffs need only demonstrate that they prevailed, *i.e.*, that "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit," *Hensley*, 461 U.S. at 433 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978), but defendants must demonstrate that the action was "frivolous, unreasonable, or without foundation." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694 (1978).

2205, 2214 (2011). If "a plaintiff [] prevail[s] on one contention in a suit while also asserting an unrelated frivolous claim[,] a court could probably award fees to *both* parties." *Id.* (emphasis added) (citing *Hensley*, 461 U.S. at 435 n. 10). However, the Court held, just as the statute's interest in deterring frivolous claims entitles a defendant to recover fees incurred defending against such claims, it also limits recovery to amounts the defendant "would not have paid but for the frivolous claims." 131 S.Ct. at 2215. If the defendant would have incurred those fees anyway, "he has suffered no incremental harm from the frivolous claim" and "has never shouldered the burden that Congress, in enacting § 1988, wanted to relieve." *Id.*

Mattel reads *Fox*'s second holding to require that "fees incurred for defense of related claims that would have been incurred by MGA in the absence of the copyright claim are not recoverable" because "frivolousness and objective unreasonableness [are] factors the Court should consider in awarding fees under the Copyright Act" and in the context of federal civil rights claims, fees incurred for non-frivolous related claims are not recoverable. Docket 10644 at ¶ 15. This syllogism misreads the controlling standard for the recovery of fees by copyright defendants, flips *Fox*'s reasoning on its head, promotes absurd outcomes, and, even if correct, does not undermine MGA's entitlement to its fees. "Reasonableness" may affect defendants' recovery of fees in both the federal civil rights and copyright contexts, but for different reasons.

An interest in compensation drives fee awards to civil rights defendants. *Fox*, 131 S.Ct. at 2215 ("[T]he relevant purpose of § 1988 is to relieve defendants of the burdens associated with fending off frivolous litigation."). Federal civil rights statutes, like the one considered in *Fox*, are mechanisms to safeguard and expand liberties and promote broad compliance with the law. *See Christianburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 418-19 (1978) (citing *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 401-02, 88 S.Ct. 964 (1968)). Plaintiffs that bring civil rights claims therefore resemble "private attorneys general," helping vindicate "polic[ies] that Congress considered of the highest priority." *Id.* Both because plaintiffs' successful prosecutions of federal civil rights claims serve an important public benefit, and because "violat[ions] of federal [civil rights] law" must be vigorously deterred, a prevailing civil rights plaintiff "should ordinarily recover an attorney's fee unless special

circumstances would render such an award unjust." *Newman*, 390 U.S. at 417 (Title II); *see also Christianburg*, 434 U.S. at 417 (Title VII); *Fox*, 131 S.Ct. at 2213. Since successful civil rights defendants rarely vindicate the same "important public benefits" and civil rights plaintiffs can hardly be considered "violator[s] of federal law," civil rights defendants do not enjoy the same presumption in favor of fee recovery. *Christianburg*, 434 U.S. at 418-19. Instead, defendants' entitlement to fees rests on "different equitable considerations," namely the interest in preserving the integrity of the "adversary judicial process" that must "ultimately effectuat[e]" Congress' policies, *id.* at 419, and compensating defendants for "shoulder[ing] the burden" of defeating the "frivolous [or] unreasonable" claims that undermine that process. *Fox*, 131 S.Ct. at 2215; *see also Christianburg*, 434 U.S. at 420-21 (discussing legislative history). Of course, no burden has been "shouldered" and no compensation is necessary if the defendant would have incurred its fees anyway, *Fox*, 131 S.Ct. at 2215.

Fee awards to copyright defendants serve a purpose loftier than mere compensation: rewarding a successful defense that "enrich[es] the general public through access to creative works." *Fogerty*, 510 U.S. at 527. The rationales that underlie copyright law favor limitation. Defendants play an important role in "demarcat[ing]" the "boundaries of copyright law" by raising defenses predicated upon public access to creative works and the novel expression of ideas. *Id.* Defendants should accordingly be "encouraged to litigate [meritorious copyright defenses] to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Id.* Unlike the narrow compensatory principles that limit recovery to civil rights defendants in cases involving frivolous claims, *see Fox*, 131 S.Ct. at 2215, society's interest in the assertion of meritorious defenses against *both* reasonable and unreasonable copyright claims is best achieved through the award of all fees incurred in connection with the claim and related "claims [that] involve a common core of facts or . . . legal theories." *Hensley*, 461 U.S. at 435. That is the standard that has been applied to civil rights plaintiffs, *see Fox*, 131 S.Ct. at 2214, copyright plaintiffs, *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 939 (9th Cir. 1999) (applying *Hensley*'s relatedness standard to contract fee provision), and copyright defendants, *see Twentieth Century Fox Film Corp. v. Entm't Distributing*, 429 F.3d 869, 884 (9th Cir. 2005).

Indeed, Mattel concedes that *Fox* does not affect copyright plaintiffs' entitlement to fees incurred in prosecuting "related claims." Reading *Fox* to nevertheless preclude copyright defendants from recovering fees spent defending against related claims runs afoul of the rule that courts should apply the same standards in awarding fees to copyright plaintiffs and copyright defendants. *See Fogerty*, 510 U.S. at 527.

In any event, *Fox* acknowledged that "the 'but-for' standard . . . may in some cases allow compensation to a defendant for attorney work relating to both frivolous and non-frivolous claims." 131 S.Ct. at 2216. If the "frivolous" claim implicated greater "monetary exposure" or "involved a specialized area that reasonably caused [defendant] to hire more expensive counsel," a court could find that the "costs would not have been incurred in the absence of the frivolous allegation." *Id.* Such is the case here. Mattel sought expansive legal and equitable relief through its claim for copyright infringement. The parties' attorneys dedicated significant resources to that claim as a result, recognizing its potential to enrich Mattel and destroy MGA.

Though the Court, for reasons discussed below, still attempts to apportion fees to the extent practicable, *Fox* does not compel a denial of fees. The specter of billion dollar relief spurred the vast majority of MGA's legal expenditures and motivated the parties' commitment to litigate the remaining claims. The Court accordingly awards MGA the reasonable attorneys' fees it incurred in defending against the copyright claim and all related claims.

### 3. Pre-Filing Costs

MGA is also entitled to recover a modest amount of the fees incurred after the filing of Mattel's lawsuit but before the filing of Mattel's copyright infringement counterclaim. Prevailing plaintiffs are permitted to recover fees incurred for essential pre-filing activity, *see Webb v. Bd. of Educ. of Dyer County, Tenn.*, 471 U.S. 234, 243, 105 S.Ct. 1923, and evenhandedness demands that defendants similarly recover fees incurred in the preparation of their defense against an imminent claim. *See Fogerty*, 510 U.S. at 527. Mattel sought discovery relevant to its copyright infringement claim before formally moving for leave to assert that claim in an amended pleading. In response to Mattel's requests, MGA performed extensive factual investigation, retrieved physical evidence, researched the law on copyrights, and prepared

witnesses to respond to Mattel's questions about substantial similarity and access during depositions. It is equitable to reimburse MGA for some of this work not just because MGA's early efforts may have directly contributed to its eventual success, but also because Mattel did not limit its discovery requests prior to the formal filing of its claim for copyright infringement.

### 4. Discussion

All but four of Mattel's claims arose out of the reproduction of the Bratz concept sketches and sculpts. *See* Fourth Amended Answer and Counterclaims ¶¶ 124(f) (first counterclaim); 129 (second counterclaim); 146 (fourth counterclaim); 154 (fifth counterclaim); 161-62 (sixth counterclaim); 168 (seventh counterclaim); 176 (eighth counterclaim); 181 (ninth counterclaim); 187 (tenth counterclaim); 194 (eleventh counterclaim); 203 (twelfth counterclaim); 240 (seventeenth claim); *see also* Memo. in Support of Mot. to Confirm Pendency [Docket 7801] at 2:7-9 (arguing that "Mattel's Bratz-related trade secret claim . . . has long been at issue."). Mattel's thirteenth, fourteenth, fifteenth, and sixteenth counterclaims, which did not survive MGA's motion to dismiss, concerned conduct unrelated to Mattel's copyright infringement counterclaim and the Court accordingly excludes from the attorneys' fees award amounts incurred in defense of those allegations.

Some of these claims also encompassed other conduct, including the alleged misappropriation of Mattel documents using other Mattel employees (a claim the jury rejected). MGA argues that it is entitled to recover the fees it incurred defending against these allegations because the claims are related – an argument that hews to the legal rule while betraying its origins. *Hensley*'s rule ensures that courts do not become bogged down in a "second major litigation" about the "determination of fees." *Fox*, 131 S.Ct. at 2216 (quoting *Hensley*, 461 U.S. at 437). If two claims "involve a common core of facts" or a single "legal theory" supports a claim to relief arising out of two sets of facts, then one would expect "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis" or, in the case of a single claim, on an allegation-by-allegation basis. *Hensley*, 461 U.S. at 435. For instance, MGA's attorneys spent thousands of hours performing routine tasks in connection with the filing of dispositive motions, and

1 allocating out time spent on allegations concerning the Bratz works represents a futile and
2 wasteful use of judicial resources, especially since counsel's diligence was more likely
3 motivated by an attempt to defeat Mattel's Bratz-related allegations, and not Mattel's claim that
4 a few employees downloaded company documents. *Fox*, 131 S.Ct. at 2216.

The Court has nevertheless attempted to exclude attorneys' fees and costs incurred investigating these other allegations of wrongdoing. The Supreme Court has recognized that "rough justice" is sufficient in the context of fee awards, but justice is still required. Though MGA's billing records are voluminous, the attorneys hired after December 2007 specifically identified the tasks they performed, and thereby enabled the Court to easily separate out time spent on unrelated tasks. Based on these records, the Court estimates that MGA incurred $24 million in fees for the factual or legal investigation of allegations that did not overlap with the alleged reproduction of the Bratz concept sketches and sculpts, and excludes that amount from the total fee award. Mattel does not dispute that the total sum incurred by MGA in defense of Mattel's claims totals $129,688,073. *See* Declaration of Stephen Schultz In Support of MGA's Motion for Attorneys' Fees ¶ 17. Deducting $24 million in fees unrelated to the copyright claim results in a total fee award of $105,688,073.

### 5. Other Costs

MGA also claims to have incurred approximately $40 million in costs over the life of this litigation. That amount must also be reduced, so as to exclude costs unrelated to the copyright claim, including costs for outside investigators ($87,807), approximately $7000 in costs for deposition recording services, branding research ($509,806), and a study performed in connection with MGA's affirmative claims ($128,800). Recoverable costs do, of course, include the modest fees paid to Mr. Glenn Vilppu for his copyright specific expert opinion and other general trial costs incurred over the life of this litigation. Subject to these deductions, MGA's recoverable costs amount to $31,667,104.

### III. Disposition

A fee award is appropriate if a successful defense furthers the purposes of the Copyright Act. Mattel asserted a copyright claim that was stunning in scope and unreasonable in the relief

1  it requested. The claim imperiled free expression, competition, and the only serious competitor
2  Mattel had faced in the fashion doll market in nearly 50 years. MGA's successful defense
3  ensured that well-resourced plaintiffs cannot bend the law to suit their pecuniary interests. For
4  these reasons, and pursuant to 17 U.S.C. § 505, the Court awards MGA $105,688,073.00 in
5  attorneys' fees and $31,677,104.00 in costs.[9]

8  IT IS SO ORDERED.
9  DATED: August 4, 2011

_____
DAVID O. CARTER
United States District Judge

---

[9] MGA's *ex parte* Application to Compel Production of Evidence in Connection with the Hearing on Motions for Attorneys' Fees [Docket 10574] is DENIED. Mattel's Motion to Compel MGA Entertainment, Inc. and Mr. Machado to Produce Attorney Billing Records [Docket 10676] is DENIED. Mattel's Motion to Compel the Production of the Declaration of Stephen Schultz [Docket 10634] is STRICKEN AS MOOT, in light of MGA's withdrawal of its request to submit that Declaration to the Court, *see* Docket 10682. Mattel's Motion to Compel Production of, or Strike, Cost Materials and Additional Cost Invoices [Docket 10672] is DENIED.