ANNETTE L. HURST (State Bar No. 148738)
ahurst@orrick.com
WARRINGTON S. PARKER III (State Bar No. 148003)
wparker@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: 415-773-5700
Facsimile: 415-773-5759

WILLIAM A. MOLINSKI (State Bar No. 145186)
wmolinski@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Telephone: 213-629-2020
Facsimile: 213-612-2499

THOMAS S. MCCONVILLE (State Bar No. 155905)
tmcconville@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614-2258
Tel: (949) 567-6700/Fax: (949) 567-6710

Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 DOC (RNBx)<br><br>Consolidated with Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**MGA PARTIES' OPPOSITION TO MATTEL'S EX PARTE APPLICATION FOR STAY OF JUDGMENT PENDING APPEAL WITHOUT SUPERSEDEAS BOND, FOR APPROVAL OF BOND, AND FOR TEMPORARY STAY**<br><br>Date: TBD<br>Time: TBD<br>Dept: Courtroom 9D<br><br>Trial Date: January 18, 2011<br>Judge: Hon. David O. Carter |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1
ARGUMENT .......................................................................................................... 2
I. MATTEL SHOULD NOT BE WHOLLY EXCUSED FROM THE SUPERSEDEAS BOND REQUIREMENT ............................................... 2
    A. Mattel's Motion Must Be Denied Because It Cannot Establish Extraordinary Circumstances, And Even Had It, Some Form Of Security Is Required ................................................................................ 2
        1. A Bond Is Required Unless The Judgment Is Nominal When Compared To The Judgment Debtors Assets .................. 3
        2. A Bond Is Required In This Case .................................................. 7
II. THE BOND SHOULD BE AT LEAST $464,830,765 ............................... 10
III. NO TEMPORARY STAY SHOULD BE GRANTED ............................... 11
CONCLUSION ..................................................................................................... 12

# TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Acevedo-Garcia v. Vera-Monroig*,
  296 F.3d 13 (1st Cir. 2002) .................................................................................. 4

*Am. Ass'n of Naturopathic Physicians v. Hayhurst*,
  227 F.3d 1104 (9th Cir. 2001) ............................................................................ 10

*Am. Color Graphics v. Travelers Prop. Cas. Ins. Co.*,
  2007 WL 1520952 (N.D. Cal. May 23, 2007) ............................................. 4, 5, 7

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
  2009 WL 1390811 (S.D. Cal. May 15, 2009) .................................................... 10

*Arban v. West Publishing Corp.*,
  345 F.3d 390 (6th Cir. 2003) ............................................................................ 4, 5, 7

*Bolt v. Merrimack Pharm., Inc.*,
  2005 WL 2298423 (E.D. Cal. Sept. 20, 2005) ................................................. 5, 6

*Brooktree Corp. v. Advanced Micro Devices, Inc.*,
  757 F. Supp. 1101 (S.D. Cal. 1990) .............................................................. 6, 7, 10

*Cabot, Cabot & Forbes Co. v. Brian, Simon, Peragine, Smith & Redfearn*,
  1986 WL 13153 (E.D. La. Nov. 17, 1986) ......................................................... 10

*Campbell v. Rainbow City, Ala.*,
  209 Fed. Appx. 873 (11th Cir. 2006) ................................................................... 7

*Columbia Steel Casting Co. v. Portland Gen'l Elec. Co.*,
  1993 WL 414639 (D. Or. Oct. 5, 1993) ............................................................... 3

*F.D.I.C. v. Ann-High Assocs.*,
  1997 WL 1877195 (2d Cir. Dec. 2, 1997) ........................................................... 7

*Federal Prescription Serv., Inc. v. Am. Pharm. Ass'n*,
  636 F.2d 755 (D.C. Cir. 1980) ............................................................................. 5

*Hynix Semiconductor Inc. v. Rambus Inc.*,
  2010 WL 3719086 (N.D. Cal. Sept. 17, 2010) .................................................... 3

*In re Diet Drugs*,
 582 F.3d 524 (3d Cir. 2009) .................................................................................. 7

*Intern'l Telemeter Corp. v. Hamlin Intern'l Corp.*
 754 F.2d 1492 (9th Cir. 1985) ............................................................................... 3

*Miami Int'l v. Paynter*,
 807 F.2d 871 (10th Cir. 1986) ............................................................................... 4

*N. Indiana Pub. Serv. Co. v. Carbon Cnty. Coal Co.*,
 799 F.2d 265 (7th Cir. 1986) ............................................................................ 6, 7

*Nat'l Labor Relations Bd. v. Westphal*,
 859 F.2d 818 (9th Cir. 1988) ............................................................................ 3, 4

*Olympia Equip. Leasing Co. v. W. Union Tel. Co.*,
 786 F.2d 794 (7th Cir. 1986) ............................................................................ 3, 4

*Poplar Grove Planting and Refining Co. v. Bache Halsey Stuart, Inc.*,
 600 F.2d 1189 (5th Cir. 1979) .................................................................... 2, 4, 10

*Rachel v. Banana Republic, Inc.*,
 831 F.2d 1503 (9th Cir. 1987) ........................................................................... 2, 3

*Taylor v. Horizon Distribs.*,
 2010 U.S. Dist. Lexis 20226 (D. Ariz. Feb. 16, 2010) ......................................... 9

*Taylor v. Horizon Distribs., Inc.*,
 2010 WL 582108 (D. Ariz. Feb. 17, 2010) ........................................................... 2

*Townsend v. Holman Consulting Corp.*,
 929 F.2d 1358 (9th Cir. 1990) ............................................................................... 4

*United States v. Boyce*,
 148 F. Supp. 2d 1069 (S.D. Cal. 2001) ................................................................ 9

*Wu v. Doucette*,
 2010 WL 3368118 (C.D. Cal. Aug. 25, 2010) .............................................. 2, 4, 9

**STATUTES**

Fed. R. Civ. P. 62(f) ..................................................................................................... 7

## MISCELLANEOUS

RUTTER GROUP, CAL. PRAC. GUIDE FED. 9TH CIR. CIV. APP. PRAC.,
  Ch. 1A, §1:168 (2010).................................................................................... 10

12 James Wm. Moore, et. al., MOORE'S FEDERAL PRACTICE § 62.03
  (Matthew Bender 3d ed. 2004)..................................................................... 10

# INTRODUCTION

Mattel asks that it be excused from a series of standard post-judgment obligations designed to protect judgment-creditors like MGA. Mattel's request should be rejected.

First, Mattel should not be excused from its obligation to post a supersedeas bond. In its August 4, 2011 Order on Exemplary Damages, this Court found that under the direction of "senior management" Mattel had engaged in "reprehensible conduct" and "nefarious tactics" that were "intentional, pervasive, long-standing, and egregious." Dkt. No. 10702 at 5. Now, Mattel asks MGA and this Court to take its word for it that, in two or three years, when its appeal is over, MGA can count on Mattel to do the right thing. MGA, Mattel urges, can rest easy at night knowing that Mattel will be good for the substantial judgment now outstanding against it. After suffering for years at the hand of Mattel's under-handed and deceitful tactics, MGA is unwilling puts its faith in Mattel's word. MGA would prefer to rely on Mattel's supersedeas bond. The Court should insist that Mattel post such a bond.

Even without the history of this litigation as a backdrop, Mattel just simply has not satisfied the legal standards necessary for relief from posting a bond.

Second, Mattel seeks to have its supersedeas bond requirement set at $315 million. This proposed bond is 1.02 times the judgment, much lower than the 1.25 to 1.5 times the judgment that is considered the necessary and reasonable amount of a bond. Mattel arrives at its figure by claiming that MGA will only incur $2 million in fees and costs on appeal. However, Mattel has litigated this case in a scorched-earth manner that made this case one of the largest in the history of the Central District of California with over 10,700 docket entries, driving up the fees and costs for the MGA Parties, and has indicated that it will take the same approach on appeal. Mattel intends to appeal not only the final judgment, but also "any and all interlocutory rulings, decisions and orders that gave rise to the judgment." Dkt.

- 1 -

1   No. 10707 at 1.  Also, the fact is that there is a customary amount set for bonds.  It
2   avoids having a Court engage in guesswork on the amount of fees and costs
3   generated on appeal.  It ensures that there is no shortfall when the party seeking a
4   reduction in the bond claims, as here, to have some mystical means of estimating
5   the fees and costs to be incurred by the judgment creditor.  To protect the prevailing
6   party on appeal from the cost of delay and increased costs and fees, courts have
7   required a bond greater than Mattel proposes.  The Court should impose the
8   standard 1.5 times judgment rate for a $$464,830,765 bond.
9         Finally, Mattel seeks to have the Court grant a temporary stay.  However,
10  Mattel is the maker of its own exigencies here.  Mattel waited until half of the
11  automatic stay expired to come before the Court with these issues.  Accordingly,
12  the Court should deny Mattel's request for a temporary stay.

## ARGUMENT

**I.   MATTEL SHOULD NOT BE WHOLLY EXCUSED FROM THE SUPERSEDEAS BOND REQUIREMENT.**

    **A.   <u>Mattel's Motion Must Be Denied Because It Cannot Establish Extraordinary Circumstances, And Even Had It, Some Form Of Security Is Required.</u>**

Mattel bears the burden of establishing that there are extraordinary circumstances that justify the relief it seeks. *Poplar Grove Planting and Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979) ("If a court chooses to depart from the usual requirement of a full security supersedeas bond . . . it should place the burden on the moving party to objectively demonstrate reasons for such a departure."); *Wu v. Doucette*, 2010 WL 3368118 (C.D. Cal. Aug. 25, 2010); *Taylor v. Horizon Distributors, Inc.*, 2010 WL 582108 (D. Ariz. Feb. 17, 2010).  Absent such proof, a bond is required. *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1505 n.1 (9th Cir. 1987) (noting that "[t]he purpose of a supersedeas bond is to secure the appellees from a loss resulting from the stay of execution and a full supersedeas bond should *therefore be required*." (emphasis

1 added)); *see also Hynix Semiconductor Inc. v. Rambus Inc.*, 2010 WL 3719086
2 (N.D. Cal. Sept. 17, 2010) (noting that absent compelling circumstances bond is
3 required); *Columbia Steel Casting Co. v. Portland Gen'l Elec. Co.*, 1993 WL
4 414639, at *1 (D. Or. Oct. 5, 1993) (denying request for stay without bond because
5 "this is not an extraordinary case").

6       This rule exists because a judgment creditor—such as MGA—should not be
7 placed at risk and should be compensated for the delay of any appeal. After all,
8 MGA has won and is entitled to the money awarded. Thus, a bond serves the
9 function of protecting the appellee from the risk that the judgment will not be paid
10 *and* ensures that the appellee will be compensated for the delay caused by any
11 appeal. "The posting of a bond protects the prevailing plaintiff from the risk of a
12 later uncollectible judgment and compensates him for delay in the entry of the final
13 judgment." *Nat'l Labor Relations Bd. v. Westphal*, 859 F.2d 818, 819 (9th Cir.
14 1988); *see also Rachel*, 831 F.2d at 1505 n.1 ("The purpose of a supersedeas bond
15 is to secure the appellees from a loss resulting from the stay of execution and a full
16 supersedeas bond should therefore be required."). To state it otherwise, a
17 supersedeas bond is "an important safeguard" that fully protects the judgment
18 creditor while an appeal is pending. *Olympia Equip. Leasing Co. v. W. Union Tel.
19 Co.*, 786 F.2d 794, 800 (7th Cir. 1986) (Easterbrook, J., concurring).

### 1. A Bond Is Required Unless The Judgment Is Nominal When Compared To The Judgment Debtors Assets.

22     Mattel argues that a bond is "unnecessary" here because its "net worth,
23 assets, and revenues make clear that it will be able to satisfy the Court's judgment."
24 App. at 1. Mattel proposes no form of security.

25     While the Ninth Circuit has allowed the bond requirement to be waived
26 under circumstances not present here, the Ninth Circuit has also consistently
27 required an alternative form of security. It has not held that the security
28 requirement can be waived altogether. *See Intern'l Telemeter Corp. v. Hamlin*

1 *Intern'l Corp.* 754 F.2d 1492, 1495 (9th Cir. 1985) (discussing alternative form of security); *Nat'l Labor Relations Bd.*, 859 F.2d at 819 (same); *see also Townsend v. Holman Consulting Corp.*, 929 F.2d 1358 (9th Cir. 1990) (en banc) (explaining that the Ninth Circuit "has held that the district court may permit security other than a bond.").[1] Neither of the two California district court cases cited by Mattel establish otherwise. In *Am. Color Graphics v. Travelers Prop. Cas. Ins. Co.*, 2007 WL 1520952 (N.D. Cal. May 23, 2007), plaintiff did not oppose defendant's request to stay enforcement of the judgment without a supersedeas bond being posted. In *Wu*, 2010 WL 3368118, the court *denied* defendant's requested stay of judgment because defendant did not post a supersedeas bond. Because Mattel proposes no security at all, Mattel's motion should be denied as against the law in the Ninth Circuit.

Moreover, those cases cited by Mattel where there was neither a bond nor some form of security involve judgments that were a tiny fraction of the judgment debtor's net worth – a much smaller fraction than the judgment in this case when compared to Mattel's net worth. As Mattel concedes, its net worth is only 7.5 times larger than the judgment, a much larger fraction than virtually all of the cases where courts waive the bond requirement based on the defendant's obvious ability to satisfy the judgment.

For example, in *Arban v. West Publishing Corp.*, 345 F.3d 390 (6th Cir. 2003), the debtor sought to stay enforcement of a $225,000 judgment without

---

[1] This is consistent with a number of cases cited by Mattel, which, while waiving the bond requirement, require an alternative form of security. *E.g., Olympia Equip. Leasing Co.*, 786 F.2d 794 (some form of security needs to be posted); *Poplar Grove Planting and Refining Co.*, 600 F.2d 1189 (remand to district court for explanation of why a full supersedeas bond was not posted); *Miami Int'l v. Paynter*, 807 F.2d 871 (10th Cir. 1986) (only partial supersedeas bond required to be posted because defendant had demonstrated that a full bond would put defendant into bankruptcy). Indeed one case cited by Mattel, actually required the posting of a supersedeas bond to stay execution of judgment. *See Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13 (1st Cir. 2002) (vacating an earlier stay of execution of the judgment, and required defendant to post a supersedeas bond for the full amount of the award).

posting a bond. The Sixth Circuit concluded that West had shown that a bond was not necessary because of "the vast disparity between the amount of the judgment in this case and the annual revenue of the group of which West [Publishing] is a part [($2.5 billion), thus] the district court's decision to grant a stay without a bond was not an abuse of discretion." *Id*. Indeed, the debtor's annual revenue was more than 11,100 times the amount of the amount to be secured.

Likewise, in *Federal Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755 (D.C. Cir. 1980), the court observed that "the damage award was $102,000, with action on the request for attorneys' fees and costs being deferred pending appeal" and "the documented net worth of the judgment debtor was $4.8 million, about 47 times the amount of the damage award . . . ." *Id.* at 761. The court then held that it was not an abuse of discretion for the district court to grant a stay on appeal without requiring a supersedeas bond. *Id*.

Similarly, in *Am. Color Graphics, Inc.,* the district court analyzed whether to grant an *unopposed* motion for a stay of enforcement of a $4,140,000 judgment pending appeal without requiring the judgment debtor to post a supersedeas bond. The court found that Travelers had "net assets of $256,735,805.00, a policyholders' surplus of $89,682,927.00, and total direct premium written for $4,173,646,091.00." 2007 U.S. Dist. LEXIS 40600, at *5. The court granted Traveler's motion given the magnitude of its assets, and because there was "no dispute that Travelers will be able to pay the judgment." *Id.* Notably, Travelers' net assets ($256 million) were 62 times the amount of the judgment ($4.14 million).

Thus, courts have generally found that the bond requirement may be waived where, unlike the facts here, the judgment is only a nominal fraction of the debtor's net worth. In contrast, where, as here, the judgment is *more* than a tiny fraction of the judgment debtor's net worth, representing instead a significant fraction of that net worth, courts routinely insist that the debtor post a supersedeas bond.

For example, in *Bolt v. Merrimack Pharm., Inc.*, 2005 WL 2298423 (E.D.

- 5 -

MGA PARTIES' OPPOSITION TO APPLICATION FOR STAY OF JUDGMENT
CV-04-9049 DOC (RNBx)

Cal. Sept. 20, 2005), the judgment debtor asked the district court to stay enforcement of a $712,729 judgment without a bond, based on a net worth of $5 million. The court denied the request, stating that it "fail[ed] to see how defendant might qualify for a stay under either the clear ability to pay or impracticability standards." *Id.* at *3. The court noted that "unlike the appellants in *Federal Prescription Service*, who had a documented net worth of 'about 47 times the amount of the damage award,' defendant's appeal is based on a claim that its net worth has never surpassed . . . $5,000,000 . . . ." *Id.* The court concluded that where the debtor's net worth was only 7 times the amount of the judgment, it was not convinced "that a grant of an unsecured stay would not jeopardize plaintiff's chances of recovery." *Id.* at *8.

Likewise, in *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 757 F. Supp. 1101 (S.D. Cal. 1990), the judgment debtor, Advanced Micro Devices, sought a stay of enforcement of a $25 million judgment without a bond based on its being "a well-established company, with a net worth of more than 20 times the amount of the judgment." *Id.* at 1103. The court distinguished the case from *Federal Prescription* because "not only was the judgment/net worth ratio almost twice what it is in this case, but the total dollar figure, $102,000, was considerably less." *Id.* at 1104. The court concluded that "Brooktree has the right to ask for more concrete assurances that its judgment will be collectable after this case has gone through the appeal process than the current financial strength of AMD." *Id.* The court determined an adequate alternative to a bond was to require AMD to post real estate valued at twice the amount of the judgment as security. *Id.*

Mattel relies primarily on a Seventh Circuit case, *N. Indiana Pub. Serv. Co. v. Carbon Cnty. Coal Co.*, 799 F.2d 265, 281 (7th Cir. 1986), which affirmed an order granting a stay without requiring a bond where the judgment was $181 million, debtor's net worth was $1 billion, and thus 5.5 times the judgment, arguing

- 6 -

MGA PARTIES' OPPOSITION TO APPLICATION FOR STAY OF JUDGMENT
CV-04-9049 DOC (RNBx)

that a stay without requiring a bond is thus appropriate here.[2] Mattel fails to tell the entire story of *N. Indiana Pub. Serv. Co.* First, there were independent grounds for affirming the stay based on the judgment creditor's cross-appeal for specific performance. As the court emphasized, "[a] party that is trying to obtain specific performance in lieu of damages cannot at the same time attempt to execute a damage judgment." *Id.* Second, and more importantly, the court focused on the fact that the judgment debtor was a public utility, and as "a public utility, it is in no financial jeopardy, it is not about to place its assets beyond the reach of this judgment creditor, and it is, in short, good for the $181 million." *Id*

In short, Mattel has not established any entitlement to a waiver of the bond requirement.

### 2. A Bond Is Required In This Case.

Here, Mattel asks to stay enforcement of a $310 million judgment based solely on its stated net worth of 7.5 times the amount of the judgment. App. at 4. That ratio is about the same as the 7-times-net-worth-to-judgment rejected as inadequate in *Bolt*, and only a third of the 20-times-net-worth-to-judgment ratio that was rejected by the court in *Brooktree*. And it is far less than the 47-times-net-worth-to-judgment ratio that was deemed sufficient in *Federal Prescription*. *See also Arben*, 345 F.3d at 400, 409 (more than 11,100 times the amount of judgment); *Am. Color Graphics*, 2007 U.S. Dist. LEXIS 40600, at *5 (62 times the amount of judgment).

In fact, it is not certain that Mattel will have the ability to satisfy the

---

[2] The balance of Mattel's cases are inapposite. Some *deny* motions for stay without posting a supersedeas bond. *F.D.I.C. v. Ann-High Assocs.*, 1997 WL 1877195 at *4 (2d Cir. Dec., 2, 1997) (denying motion for stay without supersedeas bond under Fed. R. of Civ. P. 62(f)). The remaining cases fail to address at all the question presented here. *In re Diet Drugs*, 582 F.3d 524, 552 (3d Cir. 2009) ("We also find it significant—and surprising—that Valori, who has argued so vigorously that the allocation is unfair, never sought a stay of the refund distribution pending appeal."); *Campbell v. Rainbow City, Ala.*, 209 Fed. Appx. 873, 876 (11th Cir. 2006) ("The district court did not abuse its discretion in determining that the bond was unnecessary and the premiums should not be borne by the unsuccessful appellees.").

- 7 -

judgment after appeal. As was explained in detail at trial, toys are a tough business. Children's tastes are fickle and as a result overall profits of a toy company can vary greatly on a year-to-year basis. *E.g.*, 3/17/11 Trans. (Vol. 1) 150:22-151:4 (Fontanella testifies that "[G]irls are very fickle and are always looking for something new."); 2/11/11 (Vol. 3) at 61:7-18 (Larian testifying to same). Mattel's own financial history demonstrates that it suffers from these highs and lows. For example, in 1974 and 1984, the company was facing bankruptcy. Declaration of Melanie D. Phillips in support of MGA Parties' Opposition to Mattel's Ex Parte Application Ex. A at p. 3, Ex. C at p. 10, Ex. D at 12, Ex. E at 14. Mattel lost $10 billion in value between early 1998 and November 1999 and its stock price plummeted from $45 to $13. *Id.* Ex. C at p.10. In 2000, Mattel was considered "a company in crisis." *Id.* Ex. A at p. 3; *see also id.* Ex. B at 5-6. The emergence of Bratz as a Barbie competitor also sent the company into a panic over the loss of market share and revenue. *E.g.*, TX 1804, 1806, 1807. Against this record, and especially in the current economic environment, Mattel's reliance on its current net worth as obviating any need for it to post a security ignores economic realities.

Many of the economic vicissitudes to which Mattel is subject are sufficiently serious as to require disclosure as risk factors, spread across nine pages of its Form 10K. Dkt. No. 10709 (Topham Decl.) Ex. B pp. 12-20. Reviewing just a few of these risk factors reveals that Mattel is indeed vulnerable to poor economic conditions:

- "Liquidity problems or bankruptcy of Mattel's key customers could have a significant adverse effect on Mattel's business, financial condition, and results from operations." *Id.* at 14.
- Mattel has significant customer concentration, so that economic difficulties or changes in the purchasing policies or patterns of its key customers could have a significant impact on Mattel's business and operating results." *Id.* at 14 ("Mattel's three largest customers, Wal-

1         Mart, Toys "R" Us and Target . . . accounted for approximately 41%
2         of net sales").

3     • "If global economic conditions deteriorate, Mattel's business and
4         financial results could be adversely affected." *Id.* at 15.

5     By Mattel's own estimates, the appeal could take as long as three years. In
6 light of the uncertainties of the current economic environment, no one can forecast
7 where Mattel Inc. will be in three years time, or whether it will be able to pay a
8 judgment approaching one-third of a billion dollars. After all, three years ago AIG
9 and Lehman Brothers appeared to be strong companies.

10     Finally, it bears emphasis that Mattel is precisely the sort of defendant who
11 should be required to post a full supersedeas bond. Several courts, including
12 district courts in this circuit, consider as additional factors "(1) the complexity of
13 the collection process; [and] (2) the amount of time required to obtain a judgment
14 after it is affirmed on appeal" when deciding whether to grant a stay without a
15 bond. *Wu*, 2010 WL 3368118, at *1-2 (quoting *United States v. Boyce*, 148 F.
16 Supp. 2d 1069, 1096 (S.D. Cal. 2001)).

17     As a result of its decision to pursue a years-long, meritless legal campaign
18 against MGA and its willful and malicious theft of MGA's trade secrets, Mattel
19 owes MGA nearly $310 million in compensation. If Mattel were relieved of the
20 requirement to post a bond, it would invite Mattel to delay prosecution of its appeal,
21 as it would have no incentive to proceed quickly, efficiently, and thoughtfully with
22 whatever arguments it believes are meritorious. Based on the history of this case,
23 Mattel will take the exact opposite tact, in order to drive up costs and fees to the
24 MGA Parties, and disrupt MGA's toy business in the process. *See Taylor v.*
25 *Horizon Distribs.*, 2010 U.S. Dist. Lexis 20226 (D. Ariz. Feb. 16, 2010) (denying
26 motion for stay without bond, finding, among other things, that "Taylor's repeated
27 attempts to avoid paying the judgment show that the collection process likely will
28 continue to be difficult," and therefore the factor regarding the complexity of the

1  collection process went against granting the stay.).

2  In the end, the prevailing party "has the right to ask for more concrete
3  assurances that its judgment will be collectable after this case has gone through the
4  appeal process than the current financial strength of [the appealing party]."
5  *Brooktree Corp.*, 757 F. Supp. at 1104; *see also Cabot, Cabot & Forbes Co. v.*
6  *Brian, Simon, Peragine, Smith & Redfearn*, 1986 WL 13153, at *2 (E.D. La. Nov.
7  17, 1986). Mattel provides nothing more than assurances. Its request should be
8  denied.

9  **II.   THE BOND SHOULD BE AT LEAST $464,830,765.**

10  The amount of the bond should be at least $464,830,765, which is 1.5 times
11  the judgment. Such an amount is consistent with practice. *See* RUTTER GROUP,
12  CAL. PRAC. GUIDE FED. 9TH CIR. CIV. APP. PRAC., Ch. 1A, §1:168 (2010)
13  ("Although practice varies among judgments, a bond of 1.25 to 1.5 times the
14  judgment is typically required."). Courts set bonds at that amount because a bond
15  must cover the judgment, interest, and costs, including the costs incurred while the
16  appeal is pending. *Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d
17  1104, 1109 (9th Cir. 2001); *Poplar Grove Planting and Refining Co.*, 600 F.2d at
18  1191; *Antoninetti v. Chipotle Mexican Grill, Inc.*, 2009 WL 1390811, at *2 (S.D.
19  Cal. May 15, 2009) (relying on 12 James Wm. Moore, et. al., MOORE'S FEDERAL
20  PRACTICE § 62.03 (Matthew Bender 3d ed. 2004)).

21  In this case, a bond in the amount of 1.5 times the judgment is warranted.
22  Mattel has shown itself to be litigious. Nothing has gone unchallenged in this case.
23  Mattel's present *ex parte* simply underscores this fact. Mattel has filed this request
24  for relief knowing, as demonstrated above, that its motion does not have merit.
25  Mattel should not be allowed the opportunity to post a smaller bond against the
26  backdrop of its scorched earth litigation techniques. Nor is such a bond outrageous.
27  Indeed, the Ninth Circuit has even upheld an award that was 2.5 times the
28  judgment. *Am. Ass'n of Naturopathic Physicians*, 227 F.3d at 1109 (finding that

1  the district court "[c]ertainly . . . did not abuse its discretion" when requiring a
2  supersedeas bond of $30,000 for an $11,900 judgment).

3        In addition, Mattel's request is really a desire to cap MGA costs on appeal.
4  In other words, by saying that MGA will not pay more than $2 million on appeal,
5  Mattel is really saying that it should not be on the hook for a greater amount.
6  Nothing Mattel cites justifies such logic, and past experience shows that Mattel's
7  litigation conduct needlessly inflates expected costs and fees.

8        Finally, Mattel's estimate of the costs simply cannot be credited. In its notice
9  of appeal, Mattel states that it appeals the final judgment "as well as any and all
10 interlocutory rulings, decisions and orders that gave rise to the judgment." Dkt. No.
11 10707 (Notice of Appeal) at 1. Given the almost seven year history of this case,
12 Mattel's appeal could involve hundreds of issues. Add to that the voluminous
13 record of this case, including more than 10,700 docket entries. Top it off with the
14 fact that MGA encountered well over $2 million in attorneys fees when appealing
15 the limited issue of the Phase 1 injunction. Dkt. No. 10621 (Shultz Decl. ISO Mtn.
16 for Attorney's Fees) at ¶¶ 5, 10, 11. Cumulatively, it is apparent that an estimation
17 of $2 million in attorney's fees for an appeal of a case of this magnitude is simply
18 unreasonable. Given the obvious unreasonableness of Mattel's proposed
19 supersedeas bond, the Court should require a bond in the amount of 1.5 times the
20 judgment.

21 **III.  NO TEMPORARY STAY SHOULD BE GRANTED.**

22       Mattel has not presented the Court with a legitimate reason to provide Mattel
23 with a temporary stay. The jury verdict against Mattel was returned more than
24 three months ago. The parties presented argument to the Court regarding punitive
25 damages, attorneys' fees and costs, more than two months ago. In the interim,
26 Mattel has had plenty of time to arrange for a bond and to prepare any motion for
27 waiver. Mattel should not be rewarded for waiting before coming before the Court
28 with a request relating to the judgment.

- 11 -      MGA PARTIES' OPPOSITION TO APPLICATION FOR STAY OF
JUDGMENT
CV-04-9049 DOC (RNBx)

# CONCLUSION

For the reasons set forth above, MGA respectfully requests that Mattel's motion be denied in its entirety and that Mattel be required to post a supersedeas bond in the amount of $464,830,765 to stay enforcement of the judgment.

Dated: August 14, 2011

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Warrington S. Parker III*
Warrington S. Parker III
Attorneys for MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT HK, LTD., MGA de MEXICO, S.R.L. de C.V., and ISAAC LARIAN