

1  DRINKER BIDDLE & REATH LLP
   1800 Century Park East, Suite 1400
2  Los Angeles, California 90067
   Telephone: (310) 203-4000
3  Facsimile: (310) 229-1285
   Ryan S. Fife (State Bar No. 235000)
4  ryan.fife@dbr.com

5  Attorneys for Intervenors
   National Union Fire Insurance Company of
6  Pittsburgh, PA, Lexington Insurance Company, and
   Chartis Specialty Insurance Company
7
   MUSICK, PEELER & GARRETT, LLP
8  One Wilshire Blvd., Suite 2000
   Los Angeles, California
9  Telephone: (213) 629-7600
   Facsimile: (213) 624-1376
10 Susan J. Field (State Bar No. 086200)
   s.field@mpglaw.com
11 Jennifer M. Kokes (State Bar No. 210261)
   j.kokes@mpglaw.com
12
   Attorneys for Intervenor
13 Crum & Forster Specialty Insurance Company

14

15               UNITED STATES DISTRICT COURT

16               CENTRAL DISTRICT OF CALIFORNIA

17 CARTER BRYANT, an individual         Case No. CV-04-9049-DOC (RNBx)

18                Plaintiff,            Consolidated with Case Nos. CV 04-9059
                                        and CV 05-2727
19        v.
                                        NOTICE OF MOTION AND
20 MATTEL, INC., a Delaware            MOTION TO INTERVENE;
   corporation,                         MEMORANDUM OF POINTS AND
21                                      AUTHORITIES IN SUPPORT
22                Defendant.
                                        Date:  September 26, 2011
23                                      Time:  8:30 a.m.
                                        Dept.: Courtroom 9D
24 ─────────────────────────

25 AND CONSOLIDATED ACTIONS

26

27

28

TO THE COURT AND TO ALL INTERESTED PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 26, 2011, at 8:30 a.m., or as soon thereafter as the matter may be heard, before the Hon. David O. Carter located at 411 West Fourth Street, Courtroom 9D, Santa Ana, California 92701, proposed Intervenors National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), Lexington Insurance Company ("Lexington"), Chartis Specialty Insurance Company ("Chartis Specialty") (formerly American International Specialty Lines Insurance Company) (collectively, the "Member Companies") and Crum & Forster Specialty Insurance Company ("Crum & Forster") will move the Court for an order permitting them to intervene in this action pursuant to Rules 24(a) and 24(b) of the Federal Rules of Civil Procedure ("FRCP") for the limited purposes set forth below.

The Member Companies and Crum & Forster are entitled to intervene as of right pursuant to Rule 24(a) of the FRCP because they are subrogated to any recovery of payments made in connection with the representation of MGA Entertainment, Inc., ("MGA"), their rights may be impaired or impeded by disposition of this action, their interests are not adequately represented by existing parties, and the application to intervene is timely. Alternatively the Member Companies and Crum & Forster should be granted leave to intervene pursuant to Rule 24(b) of the FRCP because they maintain a claim of subrogation to defense payments recently awarded as attorneys' fees in this action.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on August 12, 2011. This motion is based upon this Notice; the

///
///
///
///
///

1 │ attached Memorandum of Points and Authorities; the Proposed Order; the records
2 │ and files in this action; and such evidence and argument the Court may consider
3 │ appropriate or may be presented at or before any hearing on this motion.

4

5 │ DATED:  August 25, 2011          **DRINKER BIDDLE & REATH LLP**

6

7 │                                 By: _____
8 │                                        Ryan S. Fife
9 │                                 Attorneys for Intervenors
    │                                 National Union Fire Insurance Company of
10 │                                 Pittsburgh, PA, Lexington Insurance
    │                                 Company, and Chartis Specialty Insurance
11 │                                 Company

12 │ DATED:  August 25, 2011          **MUSICK, PEELER & GARRETT** LLP

13

14 │                                 By: _____
15 │                                        Susan J. Field
    │                                 Attorneys for Intervenor
16 │                                 Crum & Forster Specialty Insurance Company

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES..............................................1

I.   STATEMENT OF FACTS..............................................................................2

    A.   The Underlying Action. .....................................................................2

    B.   The Member Companies' Subrogation Rights. ..................................3

    C.   Crum & Forster's Subrogation Rights. ............................................5

    D.   The Attorneys' Fees. .........................................................................7

II.   THE MEMBER COMPANIES AND CRUM & FORSTER MAY INTERVENE AS OF RIGHT. ......................................................................9

    A.   Intervention Is Timely......................................................................11

    B.   The Intervenors Have A Significant Protectable Interest In Recovering The Attorneys' Fees..................................................15

    C.   Disposition Of The Action Will Impair Or Impede The Intervenors' Ability To Protect Their Interests......................................17

    D.   Intervenors' Interests Are Not Adequately Represented By MGA......................................................................................18

III.   PERMISSIVE INTERVENTION IS ALSO WARRANTED. ......................19

IV.   CONCLUSION. ...........................................................................................20

# TABLE OF AUTHORITIES

**CASES**

Barnes v. Independent Auto. Dealers Association of Cal. Health & Welfare
    Benefit Plan, 64 F.3d 1389 (9th Cir. 1995)................................................10, 16

Cabazon Band of Missouri Indians v. Wilson,
    124 F.3d 1050 (9th Cir. 1997)...............................................................9

California Dep't of Toxic Substances Control v. Commercial Realty Projects,
    Inc., 309 F.3d 1113 (9th Cir. 2002)..............................................11

Chitkin v. Lincoln National Insurance Co.,
    879 F. Supp. 841 (S.D. Cal. 1995)................................................10

Donnelly v. Glickman,
    159 F.3d 405 (9th Cir. 1998)..........................................9, 13,15

Hodge v. Kirkpatrick Development, Inc.,
    130 Cal. App. 4th 540 (2005)..........................................16

International Associate of Bridge Local Union 75 v. Madison Industrial, Inc.,
    733 F.2d 656 (9th Cir. 1984)..........................................14

Intri-Plex Technologies, Inc. v. Crest Group, Inc.,
    499 F.3d 1048..........................................16

Masalosalo v. Stonewall Insurance Co.,
    718 F.2d 955 (9th Cir. 1983)..........................................14

McDonald v. E.J. Lavino Co.,
    430 F.2d 1065 (5th Cir. 1970)..........................................12

Mountain Top Condominium Association v. Dave Stabbert Master Builder,
    Inc., 72 F.3d 361 (3d Cir. 1995)..........................................13, 16

Northwest Forest Resource Council v. Glickman,
    82 F.3d 825 (9th Cir. 1995)..........................................18

Progressive West Insurance Co. v. Superior Court,
  37 Cal. Rptr. 3d 434 (Cal. Ct. App. 2005) ........................................... 9

Sierra Club v. EPA,
  995 F.2d 1478 (9th Cir. 1993) ............................................................ 15

Southwest Ctr. for Biological Diversity v. Berg,
  268 F.3d 810 (9th Cir. 2001) ............................................ 9, 11, 15, 17, 18

U.S. ex rel. Shutt v. Community Home and Health Care Servs., Inc.,
  550 F.3d 764 (9th Cir. 2008) ............................................................. 13

United States v. Oregon,
  745 F.2d 550 (9th Cir. 1984) ...................................................... 11, 12, 15

Williams v. Lycoming,
  No. 1:10-cv-02358-AWI-SKO, 2011 WL 2066742 (E.D. Cal. May 25,
  2011) ............................................................................................... 10

**STATUTES**

17 U.S.C. § 505 ................................................................................ 2, 7, 12

Cal. Corp. Code §§ 501, 506 ...................................................................... 2

**RULES**

Fed. R. Civ. P. 24 ........................................................................... 17, 19, 20

## MEMORANDUM OF POINTS AND AUTHORITIES

Intervenor-Plaintiffs National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), Lexington Insurance Company ("Lexington"), Chartis Specialty Insurance Company ("Chartis Specialty") (formerly American International Specialty Lines Insurance Company) (collectively, the "Member Companies") and Crum & Forster Specialty Insurance Company ("Crum & Forster") (collectively with the Member Companies, "Intervenors") move to intervene in the consolidated action captioned *Carter Bryant v. Mattel, Inc.*, no. CV-04-9049-DOC (C.D. Cal.) solely to preserve their right to the portion of attorneys' fees and costs awarded to MGA, Entertainment, Inc. ("MGA") that they have paid.

The proposed Intervenors have paid more than $80 million in attorneys' fees and costs towards MGA's representation in this matter, with the Member Companies having paid in excess of $55 million and Crum & Forster paying more than $25 million. A significant portion of the fees and costs paid by the proposed Intervenors are the fees and costs that MGA have now been awarded. The Intervenors have both common law and contractual rights to millions of dollars of the fees and costs awarded. Despite these rights, MGA has advised this Court and Mattel that the insurers are not entitled to any portion of the fees and costs that have been awarded. MGA is incorrect. The Member Companies and Crum & Forster seek to intervene to protect their rights to the fees and costs that they paid towards MGA's represenation, fees and costs that have now been awarded to MGA.

It cannot credibly be argued that the Member Companies and Crum & Forster do not have a protectable interest in the the attorneys' fees and costs awarded in this action. Nor is it possible to claim that absent intervention, the interests of the Member Companies or Crum & Forster will be adequately represented. Accordingly, the Member Companies and Crum & Forster are entitled to intervention as of right.

To the extent intervention is not granted as of right, permissive intervention

1  should be granted.

2  **I.     STATEMENT OF FACTS.**

3       **A.     The Underlying Action.**

4       Mattel, Inc. ("Mattel") and MGA have been involved in protracted litigation

5  regarding the ownership and use of the "Bratz" line of dolls designed by Carter

6  Bryant, a former employee of Mattel who created the "Bratz" sketches and sculpt

7  (*Carter Bryant v. Mattel, Inc., et al*, and other consolidated actions pending under

8  Case Nos. CV 04-09049 DOC) (the "Mattel Litigation").  In the course of the Mattel

9  Litigation, Mattel asserted various counterclaims against MGA for copyright

10  infringement, violations of the Racketeer Influenced and Corrupt Organizations Act,

11  misappropriation of trade secrets, breach of constructive trust, prohibited

12  shareholder distributions under Cal. Corp. Code §§ 501, 506, avoidance of actual

13  fraudulent transfers, avoidance of constructive fraudulent transfers, and claims

14  under the California Uniform Trade Secrets Act ("CUTSA").

15       On April 21, 2011, the jury rendered a verdict, (Docket No. CV-04-9049-

16  DOC ("Docket"), Document No. 10518) finding for MGA on many of its claims

17  under the CUTSA and against Mattel on all of its Copyright Act and trade secret

18  claims.  (Id.).  In particular, it found that Mattel did not own any of the asserted

19  copyrights in "Bratz" and, therefore, MGA's dolls were not infringing.  (Id.).  Both

20  parties filed a number of post-verdict motions.  Among them was a motion by MGA

21  for attorneys' fees pursuant to the Copyright Act, 17 U.S.C. § 505, (Docket, Doc.

22  No. 10542) and pursuant to the CUTSA, (Docket, Doc. No. 10539).

23       On August 4, 2011, this Court granted in part MGA's motion for attorneys'

24  fees under the Copyright Act and awarded $105,688,073 in attorneys' fees and

25  $31,677,104 in costs.  (See Docket, Doc. No. 10703 at 16).  In the calculation of

26  fees and costs, $24,000,000 in fees unrelated to the copyright claim were deducted

27  from the total amount incurred by MGA in defense of Mattel's claims,

28  $129,688,073.  (Id. at15).  Also on August 4, 2011, this Court granted in part

1  MGA's motion for attorneys' fees under the CUTSA and awarded $2,172,000 in
2  attorneys' fees and $350,000 in costs. (Docket, Doc. No. 10702 at 11). Mattel has
3  recently filed a Notice of Appeal disputing, among other things, the award of
4  attorneys' fees and costs.

5  ### B.   The Member Companies' Subrogation Rights.

6  Lexington issued to MGA general liability policies for the years 2006-2007
7  and 2007-2008. National Union and Chartis Specialty issued excess umbrella
8  policies for the years 2001-2002 and 2002-2003. During the pendency of the Mattel
9  Litigation, MGA requested that the Member Companies defend and indemnify
10  MGA in connection with the Mattel Litgation. MGA and several insurers, including
11  the Member Companies and Crum & Forster, are currently involved in litigation to
12  determine whether coverage exists and the extent of any coverage (*MGA*
13  *Entertainment, Inc., et al. v. Hartford Insurance Company*, and consolidated cases
14  pending under Case No. 5:08-cv-00459-DOC) (the "Coverage Litigation").

15  By letter dated May 15, 2008, Lexington agreed to defend MGA in
16  connection with the Mattel Litigation under Policy No. 0308552 for the period of
17  2006 through 2007 (the "2006 Policy") and Policy No. 0350122 for the period of
18  2007 through 2008 (the "2007 Policy") (collectively, the "Lexington Policies"),
19  subject to a full reservation of Lexington's rights. By letters dated July 8 and 9,
20  2008, National Union and Chartis Specialty agreed to participate in the defense of
21  MGA in connection with the Mattel Litigation under National Union Policy no.
22  BE7408285 for the period 2001 through 2002 (the "2001 Excess Policy") and
23  Chartis Specialty Policy no. BE7413666 for the period 2002 through 2003 (the
24  "2002 Excess Policy") (collectively, the "Excess Policies"), subject to a full
25  reservation of all of National Union and Chartis Specialty's respective rights. On
26  December 19, 2008, MGA and the Member Companies entered into a privileged and
27  confidential settlement agreement and mutual release to resolve, among other issues,
28  the hourly rates to be paid to independent counsel retained by MGA in connection

with the defense of the Mattel Litigation.   The litigation against Lexington was dismissed, and the remaining Coverage Litigation has followed a separate course. The issues there are distinct from the issue here: subrogation rights for payments made by the Member Companies in defense of MGA.

To date, the Member Companies have paid **in excess of $55 million directly** to MGA – not its counsel – in connection with the representation of of MGA in the Mattel Litigation.   (Declaration of Mark D. Sheridan at ¶6).   Each payment the Member Companies made was pursuant to a full reservation of rights under their respective policies and under common law.   Moreover, the Lexington Policies and the Excess Policies provide that MGA must take steps to protect the Member Companies' interests where necessary.   These interests include any right to recovery of payments made by the Member Companies under their respective policies to MGA during the Mattel Litigation.

The subrogation rights depend upon whether the Member Companies made payments under their contracts with MGA, and whether MGA has recovered these payments from the party at fault.   The Lexington Policies are substantially similar in content.   They provide:

Section V.    Conditions

\* \* \*

8.    Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Policy, those rights are transferred to us.   The insured must do nothing after loss to impair them.   At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

\* \* \*

1   (Complaint in Intervention, Exhibits A, B).  The 2001 Excess Policy provides, in

2   relevant part:

3       III.   Conditions –

4                                       * * *

5           O.     Transfer of Rights of Recovery

6                  1.     If any insured has rights to recover all or part of

7                         any payment we have made under this policy, those

8                         rights are transferred to us.  The Insured must do

9                         nothing after loss to impair these rights and must

10                        help us enforce them.

11                                      * * *

12  (Complaint in Intervention, Exhibit C).  Similarly, the 2002 Excess Policy

13  provides:

14      VI.   Conditions –

15                                      * * *

16          O.     Subrogation

17                  If any insured has rights to recover all or part of any

18                  payment we have made under this policy, those rights are

19                  transferred to us.  The Insured must do nothing after loss

20                  to impair these rights and must help us enforce them.

21                                      * * *

22  (Complaint in Intervention, Exhibit D).

23      **C.    Crum & Forster's Subrogation Rights.**

24          Crum & Forster issued to MGA Commercial General Liability Policies,

25  Policy No.GLO 0000222 , for the period January 1, 2003 to January 1, 2004 (the

26  "2003 Policy"), Policy No. GLO 011079, for the period January 1, 2004 to January

27  1, 2005 (the "2004 Policy") and  Policy No. GLO 050151, for the period January 1,

28  2005 to January 1, 2006  (the "2005 Policy") (collectively, the "Crum & Forster

Policies"). In or around January of 2007, MGA gave notice to Crum & Forster and thereafter tendered the defense of the counterclaim asserted in the Mattel Litigation.

Crum & Forster declined to defend and, on April 3, 2008, MGA brought the action captioned *MGA Entertainment, Inc., et al. v. Crum & Forster Specialty Insurance Company*, Case No. 5:08-cv-00459-SCL-JCR, asserting causes of action for: (1) Breach of the Implied Covenant of Good Faith and Fair Dealing; (2) Breach of Insurance Contract; and (3) Declaratory Judgment, alleging that Crum & Forster owed a duty to defend under the Policies' coverage for "personal and advertising injury", part of the Coverage Litigation.

Following a partial settlement of that portion of the Coverage Litigation in December 2008, the Court ruled on cross-motions for summary judgment and determined that Crum & Forster had a duty to defend, based on the allegations of the Second Amended Answer and Counterclaim. Pursuant to that Ruling and the Settlement Agreement, Crum & Forster agreed to defend, subject to a full reservation of rights, which was then confirmed in a letter dated July 15, 2009. Following the filing by Mattel of the Fourth Amended Answer and Counterclaim, Crum & Forster addressed the amendments to the pleadings and supplemented its reservation of rights by letter dated May 17, 2010. In both the July 15, 2009 and the May 17, 2010 letters, Crum & Forster reserved all of its rights under its policies and under California law. As noted above, the Coverage Litigation and the remaining cause of action for Declaratory Relief as to the duty to defend remains pending on a separate course. To date, since its partial settlement Crum & Forster has paid **in excess of $25 million directly** to MGA in connection with the representation of MGA in the Mattel Litigation. (Declaration of Susan J. Field at ¶5).

The Crum & Forster Policies contain certain express "Conditions" to coverage under the Crum & Forster Policies, including Crum & Forster's right to subrogation. That condition provides:

Section V.   Conditions

* * *

8.    Transfer Of Rights Of Recovery Against Others To Us

> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

(Complaint in Intervention, Exhibits E, F, G). The Crum & Forster Policies, therefore, expressly preserve Crum & Forster's right to subrogation.

**D.    The Attorneys' Fees.**

On May 6, 2011, MGA filed a motion seeking reimbursement of its attorneys' fees pursuant to, among other things, the Copyright Act, which authorizes the court to award "a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. In its motion, MGA contended that as the prevailing party in defense of Mattel's copyright claim, it should be reimbursed for its defense of that action. (Docket, Doc. No. 10542).

On May 25, 26, and 27 of 2011, this Court conducted oral argument on the post-trial motions, including MGA's motion for attorneys' fees. During argument, MGA asserted that it was entitled to all attorneys' fees because, among other things, an award of fees would further the purposes of the Copyright Act and Mattel was a "prolific Copyright Act litigant" that had improper motivation in bringing its copyright claim against an impecunious defendant. (Transcript of Proceedings, Docket No. CV-04-9049-DOC ("Transcript"), May 25, 2011, Vol. 4, 14:3-14:5, 18:22-19:11). Mattel contended that the jury did not render its verdict on the merits of the copyright claim, and the litigation was not important enough in the context of

1   the Copyright Act to merit attorneys' fees.  (Id. at 22:11-22:24).  Mattel maintained,

2   among other things, that the Ninth Circuit's decision supported the "reasonableness"

3   of Mattel's Copyright Act claims, as did the claims' survival on summary judgment.

4   (Id. at 25:12-25:18, 27:21-27:23).

5       Finally, Mattel argued that MGA was a well-funded litigant, in part because it

6   was supported by insurance funds.  (Id. at 28:3-28:11).  It suggested that, in spite of

7   equitable principles of loss allocation among indemnitors, reimbursement would be

8   a "truly extraordinary award" because "much of [it] would probably go to the

9   insurance companies, raising issues as to the compensatory purpose." (Id. at 45:15-

10  45:17).

11      In response, MGA stated unequivocally that: "It is absolutely MGA's position

12  that the insurance companies will not be entitled to funds awarded on a fee motion."

13  (Transcript, May 26, 2011, Vol. 1 at 22:21-22:23).  At this point, this Court asked

14  the parties to address the financial status of each party, including the potential rights

15  of the insurers, noting that "whatever financial resources [MGA has] are still subject

16  to the whims of the insurance carriers or their well-reasoned positions."  (Id. at

17  25:25-26:2).

18      Following this invitation to address the insurer's "positions", Mattel raised the

19  issue that if Mattel were to be charged attorneys' fees, MGA would recover twice

20  for defense costs that were also paid by insurers.  Specifically, counsel for Mattel

21  stated that "[counsel for MGA] chastised me for mentioning insurance and tells me

22  that not a penny of this is going to go to insurance. Well, that sounds like a windfall

23  to me."  (Id. at 67:3-67:6; see also id. at 74:11-74:14).  MGA did not explain its

24  position that the insurers were not entitled to reimbursement.

25      As noted, this Court awarded attorneys' fees and costs on August 4, 2011,

26  totaling $105,688,073.00 in fees and $31,677,104.00 in costs under the Copyright

27  Act, and $2,172,000 in attorneys' fees and $350,000 in costs under the CUTSA.

28  Mattel has appealed that award along with other issues, but as noted further below,

1  the issue which the Intervenors seek to represent is collateral to the issues Mattel has

2  raised on appeal.  To the extent MGA recovers or will recover fees and costs that

3  were paid by the Intervenors, the Intervenors are subrogated to and are entitled to

4  reimbursement for payments they made in connection with the representation of

5  MGA.

6  **II.   THE  MEMBER  COMPANIES  AND  CRUM  &  FORSTER  MAY**

7  **       INTERVENE AS OF RIGHT.**

8      The Intervenors have a legal claim to the attorneys' fees at issue in the Mattel

9  Litigation and meet the requirements for intervention as of right.  In motions to

10 intervene as of right, courts must "generally interpret the requirements broadly in

11 favor of intervention."  <u>Donnelly v. Glickman</u>, 159 F.3d 405, 409 (9th Cir. 1998).  A

12 party seeking to intervene as of right need only show that:

13        (1) [I]t has a "significant protectable interest" relating to the property

14        or transaction that is the subject of the action; (2) the disposition of the

15        action may, as a practical matter, impair or impede the applicant's

16        ability to protect its interest; (3) the application is timely; and (4) the

17        existing parties may not adequately represent the applicant's interest.

18 <u>Id.</u> (citing <u>Cabazon Band of Missouri Indians v. Wilson</u>, 124 F.3d 1050, 1061 (9th

19 Cir. 1997)).   In its review, the court is guided by practical considerations, not

20 technical distinctions.   <u>Southwest Ctr. for Biological Diversity v. Berg</u>, 268 F.3d

21 810, 818 (9th Cir. 2001) (citations omitted).

22     The Intervenors are subrogated[1] to any recovery for payments they made in

23

24 [1] While there is a technical difference between the right of subrogation and the right

25 to reimbursement, for practical purposes California does not draw a distinction: "Subrogation refers to the right of the insurance company to step into the shoes of

26 the insured and assert the insured's rights against the third party . . . . Reimbursement refers to the right to receive payment back of what has been

27 expended by the insurance company . . . . In California, both the subrogation rights

28 and reimbursement rights of the insurance company fall within the rubric of

Continued on Next Page

1   connection with the representation of MGA.  "Subrogation is the insurer's right to

2   be put in the position of the insured, in order to recover from third parties who are

3   legally responsible to the insured for a loss paid by the insurer."   Barnes v.

4   Independent Auto. Dealers Ass'n of Cal. Health & Welfare Benefit Plan, 64 F.3d

5   1389, 1392 (9th Cir. 1995).  Under Rule 24(a), insurers can intervene as of right to

6   preserve their right to subrogation.   Williams v. Lycoming, No. 1:10-cv-02358-

7   AWI-SKO, 2011 WL 2066742, at *2 (E.D. Cal. May 25, 2011).  Indeed, by failing

8   to attempt to intervene, an insurer may risk losing the right to challenge the outcome

9   of legal proceedings.  See Chitkin v. Lincoln Nat'l Ins. Co., 879 F. Supp. 841, 862

10  (S.D. Cal. 1995) (preventing an insurer from challenging the basis for a settlement

11  where the insurer did not intervene at the trial level in state court proceedings).  In

12  Chitkin, an insurer sought reimbursement for medical payments it made to its

13  insured, after the insured had settled with the tortfeasors in a prior California state

14  court action.  Id. at 846-47.  The insurer had notice of that state court action, but did

15  not attempt to intervene.  Id.  In arguing for reimbursement, the insurer attempted to

16  challenge the terms of the insured's settlement with the tortfeasors.  Id. at 861.  The

17  court denied the challenge, stating that:

18        California law offered [the insurer] at least a chance to intervene. . . .

19        In the case at hand, [the insurer] probably could have met the burden

20        on it to show that it satisfied all three factors [for intervention under

21        California law]. . . . In short, [the insurer] cannot say that any efforts it

22        might have made to intervene in the state court proceedings would

23        have been in vain . . . . [It] did not even attempt to intervene in the

24        state court proceedings between the [insured and the tortfeasors].

25  subrogation."  Progressive West Ins. Co. v. Superior Court, 37 Cal. Rptr. 3d 434,

26  442 (Cal. Ct. App. 2005).  Following California case law, this brief will refer to

27  subrogation rights, although Member Companies are entitled to either subrogation

    or reimbursement.

28

1   Id. at 861-62. Similarly here, the Intervenors are constrained to take steps in order to

2   protect their rights.

3        The Intervenors are legally and contractually subrogated to any recovery of

4   attorneys' fees from Mattel, but the record is devoid of any argument preserving

5   their rights to recover the amounts they paid. Instead, MGA has taken a position

6   inimical to the redemption of the Intervenors' subrogation or reimbursement rights

7   in the recent award. The Intervenors therefore meet the requirements for

8   intervention, and are entitled to intervene as of right to preserve their subrogated

9   claim to attorneys' fees.

10       **A.    Intervention Is Timely.**

11       The recent award of fees and costs created a fund in which the Intervenors

12   had a protectable interest, and Intervenors now seek only to assert their rights where

13   MGA has rejected them. The determination of timeliness is consigned to the

14   discretion of the trial court, but is guided by three factors: "(1) the stage of the

15   proceeding at which an applicant seeks to intervene; (2) the prejudice to other

16   parties; and (3) the reason for and length of the delay." California Dept. of Toxic

17   Substances Control v. Commercial Realty Projects, Inc., 309 F.3d 1113, 1119 (9th

18   Cir. 2002). These factors are steered by "practical considerations" and the

19   permissive standard governing motions to intervene. Southwest Ctr., 268 F.3d at

20   818. They are also founded on a mandate of leniency for interventions as of right.

21   United States v. Oregon, 745 F.2d 550, 552 (9th Cir. 1984). Thus, "the length of

22   time that has passed since a suit was filed is not, in and of itself, determinative of

23   timeliness." Commercial Realty, 309 F.3d at 1120.

24       For example, in Nikon Corp. v. ASM Lithography B.V., the court allowed

25   intervention during discovery in "protracted litigation." 222 F.R.D. 647, 649 (N.D.

26   Cal. 2004). Particularly important to the court's analysis was that the intervening

27   party would not repeat requests for discovery, that it would "readily comply with all

28   existing court-set schedules, and that it would not attempt to upset any of [the]

court's existing decisions." Id.  Moreover, with respect to the explanation for the delay, the court noted that "[o]nly recently [did] it become clear that the [intervenor's] products sit at the center of this multifarious litigation." Id.; see also Oregon, 745 F.2d at 552 (holding that a "change in circumstance, which suggests that the litigation is entering a new stage, indicates that the stage of proceedings and reason for delay are factors which militate in favor of granting the application [to intervene]"); Williams, 2011 WL 2066742, at *1 (holding that insurer's intervention was timely where it "only recently determined the amount it seeks in its claim"). The Nikon court thus found that the motion to intervene was timely.

Indeed, the mere fact that judgment has already been entered is not dispositive of timeliness.  McDonald v. E.J. Lavino Co., 430 F.2d 1065 (5th Cir. 1970).  In McDonald, for example, the Fifth Circuit held that an insurer's intervention was timely where the insurer "was not attempting to reopen or relitigate any issue which had previously been determined.  On the contrary, [the insurer] was merely attempting to protect its subrogation interest in a fund which had not yet been distributed." Id. at 1071.  Thus, where a intervention seeks only the proper allocation of funds, rather than reallocation, it is timely.  Similarly here, Intervenors' motion with respect to allocation of the recent award of fees and costs is timely.

The Intervenors' protectable interest in this litigation was created by the award of attorneys fees and costs on August 4, 2011.  The jury entered a verdict in the Mattel Litigation shortly before this motion to intervene, on April 21, 2011. Following the jury's verdict, the litigation reached a new stage.  MGA and Mattel confronted the Court with a number of motions, including a motion for attorneys' fees under the Copyright Act.  17 U.S.C. § 505.  Entering the briefing, it appeared that the subrogation rights of the Member Companies were adequately preserved by MGA's efforts to secure attorneys fees from Mattel.  That is, MGA has a contractual obligation to preserve and pursue the Members Companies' rights under the insurance contract, including pursuing reimbursement from the wrongdoer for

payments made by the Member Companies. During argument, however, counsel for MGA stated that MGA would work to ensure that the Intervenors would not receive reimbursement from any fees awarded, despite the fact that the Intervenors have been funding MGA's representation through years of litigation. (Transcript, May 26, 2011, Vol. 1 at 22:21-22:23). Though neither Mattel nor MGA raised or acknowledged the Intervenors' subrogation and reimbursement rights, intervention at that time was inappropriate as MGA represented the argument that fees should be awarded. The Intervenors, on the other hand, could not present an argument contributing to the merits of the §505 and CUTSA debate, and were concerned primarily with the proper allocation of an award that did not exist. See Donnelly, 159 F.3d at 409 (noting that all four factors must be present for intervention as of right to be proper). On August 4, 2011, when this Court granted MGA's motion for fees, it created for the first time a fund from which the Intervenors' could rightfully be reimbursed for attorneys fees which they paid. See Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 366 (3d Cir. 1995) (holding that "as intervenor's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund"). MGA has nonetheless continued to refuse to acknowledge the Intervenors' rights to subrogation and reimbursement. Now that a fund exists to which Intervenors are rightfully subrogated, and because the record remains devoid of any recognition of those subrogation rights, a real, protectable interest has arisen in which the Intervenors may represent their position.

Moreover, the Intervenors' rights of subrogation are separate from the merits substantiating the award of attorneys' fees, and intervention will not prejudice or interfere with the disposition of the other claims. The Ninth Circuit has held that similar claims of allocation of awards may be determined separately from the substantive question – even when those substantive questions are on appeal. U.S. ex rel. Shutt v. Community Home and Health Care Servs., Inc., 550 F.3d 764 (9th Cir. 2008). In Shutt, a relator brought suit against a nursing home facility for Medicare

1    fraud. Id. at 765. The defendant pleaded guilty to the charges, admitting fraud and
2    damages of approximately $600,000, and agreeing to repay that amount. Id. At that
3    point, the government intervened, alleging a civil penalty of $5,500 and treble the
4    defendant's admitted damages under the False Claims Act ("FCA"), as well as
5    several common law claims; the relator filed to share in the judgment, pursuant to a
6    federal statute. Id. at 766. The district court granted the government's motion for
7    partial summary judgment under the FCA, while dismissing the common law
8    claims, and retained jurisdiction over the relator's claim for a share of the judgment.
9    Id.

10        The Ninth Circuit, on appeal of the district court's partial summary judgment
11   order, held that the district court's retention of jurisdiction over the relator's claim
12   did not interfere with the finality of the district court's order. Id. It noted the
13   analogy between other collateral issues:

14        [W]e [have previously] held that a district court retains the power to
15        award attorney's fees after a notice of appeal from the decision on the
16        merits has been filed, Masalosalo v. Stonewall Ins. Co., 718 F.2d 955,
17        957 (9th Cir. 1983), and adopted the "bright-line rule" that "all
18        attorney's fees requests are collateral to the main action," rendering a
19        "judgment on the merits . . . final and appealable even though a
20        request for attorney's fees is unresolved," Int'l Assoc. of Bridge Local
21        Union 75 v. Madison Indus., Inc., 733 F.2d 656, 659 (9th Cir. 1984).
22        Although relators' claims for a percentage of FCA awards are likely to
23        be larger in amount than those of attorneys in some instances, those
24        claims are similarly "collateral" to the judgment on the merits. . . . The
25        criteria for determining the relator's share, as set out in the Department
26        of Justice's "Relator's Share Guidelines" ("Guidelines"), generally are
27        not relevant to the defendant's liability under the FCA.

28

1    Id.  Shutt parallels the situation here; the issue of allocation of the attorneys' fees
2    among those who paid them is collateral in the sense that it is separate from the
3    disposition of the merits of the §505, CUTSA, and other claims, which Mattel has
4    now appealed.  Because of the collateral nature of the subrogation issue, it will not
5    affect the merits of the dispute between the other parties, and cannot prejudice the
6    disposition of those issues.

7           The August 4, 2011 award was the first opportunity Intervenors had to meet
8    the elements of intervention as of right, and no party will be prejudiced by
9    intervention at this stage in litigation.  Intervenors do not seek additional discovery
10   or to reopen decided issues, only the opportunity to represent their position where
11   MGA has declined to and claim reimbursement for fees that Intervenors have paid.
12   Courts are instructed to be lenient in the necessarily imprecise interpretation of
13   "timeliness." Oregon, 745 F.2d at 552.  Given that the post-verdict award represents a
14   new stage of litigation as well as a newly-created protectable interest, and given the
15   collateral nature of this award, the Intervenors may rightfully intervene at this time.

16   **B.    The Intervenors Have A Significant Protectable Interest In**
17         **Recovering The Attorneys' Fees.**

18          Intervenors' rights of subrogation, both common law and contractual, entitle
19   them to be reimbursed from fees recovered or to directly recover attorneys' fees
20   from Mattel. The "protectable interest" requirement is satisfied when "the interest is
21   protectable under some law, and [] there is a relationship between the legally
22   protected interest and the claims at issue." Sierra Club v. EPA, 995 F.2d 1478, 1484
23   (9th Cir. 1993). "An applicant generally satisfies the relationship requirement only
24   if the resolution of the plaintiff's claims actually will affect the applicant."
25   Donnelly, 159 F.3d at 410. In Southwest Center, for example, the Ninth Circuit
26   found that "[c]ontract rights are traditionally protectable interests." 268 F.3d at 820.
27   There, the Court of Appeals overturned a trial court decision and allowed a
28   developer to intervene because the lawsuit imperiled an environmental agreement

1  which only obliquely granted the developer certain assurances.  Id.; see also
2  Mountain Top, 72 F.3d at 366 (noting an interest in a fund can be protected).

3        Subrogation constitutes a protectable legal right allowing intervention.
4  "Under the doctrine of subrogation, when an insurer pays money to its insured for a
5  loss caused by a third party, the insurer succeeds to its insured's rights against the
6  third party in the amount the insurer paid.  Upon subrogation, the insurer steps into
7  the shoes of its insured." Intri-Plex Technologies, Inc. v. Crest Grp., Inc., 499 F.3d
8  1048, 1053 n6 (9th Cir. 2007) (quoting Hodge v. Kirkpatrick Dev., Inc., 130 Cal.
9  App. 4th 540, 548 (2005)).  Thus, in Williams, the trial court allowed an insurer to
10 intervene to preserve its subrogation rights, stating that subrogation "is designed to
11 compel discharge of the obligation by the one who in equity should bear the loss."
12 2011 WL 2066742, at *2 (quoting Barnes, 64 F.3d at 1392).  The court noted that
13 the insurer had paid costs related to damage to the insured's aircraft, and held that
14 "intervention is appropriate to allow [the insurer] right to protect its subrogation
15 interest and to ensure reimbursement." Id.

16       The situation here is no different – if anything, Intervenors have an even more
17 direct contractual and equitable interest in recovering the attorneys' fees that they
18 paid in the representation of MGA.  There is no dispute that Intervenors paid
19 attorneys' fees and costs for MGA and that there is now an award of some of those
20 attorneys' fee and costs to MGA.  The payments made by Intervenors were made on
21 the express "Condition" in the each of the Intervenors' policies that, where the sums
22 paid out were subsequently recovered from the party that caused the loss, the
23 Intervenors would be reimbursed from or subrogated to the recovery.  An award of
24 attorneys' fees and costs to MGA would represent the actual funds for
25 reimbursement, thus it is impossible to say that there is no relationship between the
26 Intervenors' subrogation rights and the award granted by this Court.  This right
27 indisputably qualifies as a significant protectable interest, and Intervenors are
28 entitled to intervene in order to assert this interest where MGA fails to recognize it.

C.    **Disposition Of The Action Will Impair Or Impede The
Intervenors' Ability To Protect Their Interests.**

If the Intervenors are denied intervention, their subrogation and reimbursement rights will be impaired.  The Ninth Circuit follows the guide of the advisory committee notes for Rule 24 of the FRCP, stating that "[i]f an absentee would be substantially affected **in a practical sense** by the determination made in an action, he should, as a general rule, be entitled to intervene."  Fed. R. Civ. Pro. 24, Advisory Committee Notes (emphasis added); see also Southwest Center, 268 F.3d at 822 (adopting that rule).

In a "practical sense," MGA's recent denial of the Intervenors' subrogation and reimbursement rights substantially affect their ability to collect the amounts they paid in connection with the represenation of MGA.[2]  MGA's recovery of attorneys' fees and costs does not guarantee that Intervenors will be reimbursed from those payments, particularly in view of MGA's stated intent to not offer insurers anything.  Even if Intervenors brought a reimbursement action, MGA may eventually be able to put assets out of reach of those seeking to recover, either through bankruptcy or otherwise.  (See, e.g., Docket, Order Appointing Forensic Auditor, Doc. No. 4657).  When combined with MGA's stated intent to avoid reimbursing its defending insurers, the result of putting the fund of attorneys' fees in MGA's hands is to place those funds out of reach of Intervenor's, even if they later bring a reimbursement action.  Thus, the practical effect of MGA denying the Intervenors' right of subrogation and reimbursement is that the Member Companies and Crum & Forster may be foreclosed from obtaining any reimbursement from MGA without extraordinary effort, additional litigation, and significant cost.  This

---

[2] As part of the recent "meet and confer" with MGA and Mattel, Intervenors' counsel inquired whether MGA and Mattel would stipulate to the Intervenors' rights to subrogation or reimbursement.  Neither party consented. (Sheridan Declaration at ¶7; Field Declaration at ¶6).

1   burden supports a finding that the Intervenors would be "substantially affected" by
2   any decision regarding distribution of the attorneys' fees in the Mattel Litigation,
3   and the Intervenors may intervene as of right to voice their position.

4   **D.   <u>Intervenors' Interests Are Not Adequately Represented By MGA.</u>**

5   It is clear from the record that MGA does not recognize the Intervenors' right
6   to subrogation.   MGA has made no offer of nor expressed any recognition of
7   reimbursement or subrogation.   When evaluating whether a party is adequately
8   represented, the court considers:

9   (1) whether the interest of a present party is such that it will
10   undoubtedly make all the intervenor's arguments; (2) whether the
11   present party is capable and willing to make such arguments; and (3)
12   whether the would-be intervenor would offer any necessary elements
13   to the proceedings that other parties would neglect.

14   Southwest Center, 268 F.3d at 822 (quoting Northwest Forest Resource Council v.
15   Glickman, 82 F.3d 825, 838 (9th Cir. 1995)); see also Wright, Miller & Kane,
16   Federal Practice and Procedure: Civil 3d § 1909 at 393-94 (2007) ("If the interest
17   of the absentee is not represented at all, or if all existing parties are adverse to the
18   absentee, then there is no adequate representation."). These factors relate the
19   precise concerns of Intervenors here.

20   Despite MGA's contractual obligations, Intervenors' interests are not
21   represented. First, MGA has made it clear that it will not reimburse any portion of
22   any recovery to the Member Companies or Crum & Forster. (Transcript, May 26,
23   2011, Vol. 1 at 22:21-22:23). Second, having adopted a position that it will not
24   reimburse its insurers for their defense payments, MGA is obviously unwilling to
25   make any such argument on behalf of the Intervenors. Third, in view of the current
26   absence of this obviously germane consideration, the Member Companies' and
27   Crum & Forster's intervention would offer the Court a critical element to consider
28   in its decision of how to allocate the award of fees.

1    Because Intervenors meet all four elements required for intervention as of

2    right under Rule 24(a), this Court should grant their motion and allow them to

3    participate in the Mattel Litigation with respect to their subrogated right to the

4    recovery of attorneys' fees.

5    **III.    PERMISSIVE INTERVENTION IS ALSO WARRANTED.**

6        Where grounds for permissive intervention exist, a court can exercise its

7    discretion and allow a party to intervene under Rule 24(b)(1)(B).  Rule 24(b)(1)(B)

8    provides that, "[o]n timely motion, the court may permit anyone to intervene who . .

9    . has a claim or defense that shares with the main action a common question of law

10   or fact."  Here, the Member Companies and Crum & Forster are entitled to a grant

11   of permissive intervention because the August 4, 2011 Order created a fund of

12   attorneys' fees that represents a direct source of reimbursement for fees and costs

13   paid by the Intervenors.  As such, the claim shares an obvious nucleus of fact,

14   stemming from the Intervenors' payments in connection with the representation of

15   MGA in the Mattel Litigation.  Moreover, intervention on the limited issue of the

16   allocation of attorneys' fees will not "unduly delay or prejudice the adjudication of

17   the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  Far from it, intervention here

18   will help clarify the parties' respective obligations regarding attorneys' fees in the

19   Mattel Litigation.  Thus, the Court should allow the Member Companies and Crum

20   & Forster to intervene.

21       First, it is indisputable that the Intervenors' cause of action has "a claim or

22   defense that shares with the main action a common question of law or fact."  As the

23   Mattel Litigation has progressed, the Member Companies and Crum & Forster have

24   reviewed and paid costs in connection with the representation of MGA.  They are

25   familiar with the underlying issues and have been connected to and apprised of

26   developments in the Mattel Litigation as they have occurred.  This is so, because the

27   events of the Mattel Litigation affect the obligations of the parties under the relevant

28   insurance policies.  As such, the Mattel Litigation – and in particular, the attorneys'

1    fees award under the Copyright Act – forms the factual basis for the Member

2    Companies' and Crum & Forster's right of subrogation to payments made in the

3    representation of MGA.   This direct factual nexus meets the requirement for a

4    common question of fact under Rule 24(b)(1)(B).

5        Second, intervention by the Member Companies and Crum & Forster will not

6    prejudice the rights of any party to the litigation.   It will not cause significant delay,

7    or compromise the rights of any party to the litigation.   Intervenors do not seek to

8    reopen discovery or raise new issues beyond those that should properly be

9    considered.   Indeed, allowing intervention will maximize the efficiency of the

10    resolution by potentially forestalling additional litigation on subrogation or

11    reimbursement grounds.   Intervenors will simply be presenting an argument on their

12    own behalf in order to protect their legal and contractual right to subrogation.

13        As there is an independent basis for jurisdiction over the Intervenors on

14    grounds of diversity, permissive intervention should be granted pursuant to Rule

15    24(b)(1)(B).

16    **IV.    CONCLUSION.**

17        For the foregoing reasons, Intervenors respectfully request that this Court

18    grant their motion to intervene as of right pursuant to F.R.C.P. 24(a).   In the

19    alternative, Intervenors respectfully request that the Court exercise its discretion and

20    permit them to intervene in the action under F.R.C.P. 24(b).

21

22

23

24

25

26

27

28

1

2   DATED:  August 25, 2011          **DRINKER BIDDLE & REATH LLP**

3

4                                    By: _____

5                                          Ryan S. Fife
                                     Attorneys for Intervenors
6                                    National Union Fire Insurance Company of
                                     Pittsburgh, PA, Lexington Insurance
7                                    Company, and Chartis Specialty Insurance
8                                    Company

9   DATED:  August 25, 2011          **MUSICK, PEELER & GARRETT LLP**

10

11                                   By: _____
                                          Susan J. Field
12                                   Attorneys for Intervenor
                                     Crum & Forster Specialty Insurance Company
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28