1   MICHAEL J. BIDART #60582
2   RICARDO ECHEVERRIA #166049
    **SHERNOFF BIDART ECHEVERRIA LLP**
3   600 South Indian Hill Boulevard
4   Claremont, CA 91711
    Telephone: (909) 621-4935
5   Facsimile: (909) 625-6915

6   Attorneys for Plaintiffs
7   MGA Entertainment, Inc. and Isaac Larian

8

9              UNITED STATES DISTRICT COURT
10   CENTRAL DISTRICT OF CALIFORNIA; SOUTHERN DIVISION
11

| | |
|---|---|
| 12   CARTER BRYANT, an individual, | Case No. CV-04-9049-DOC (RNBx) |
| 13 | Consolidated with Case Nos. |
| 14        Plaintiff, | CV 04-9059 and CV 05-2727 |
| 15   vs. | MGA'S MEMORANDUM OF |
| 16   MATTEL, INC., a Delaware | POINTS AND AUTHORITIES IN OPPOSITION TO INSURANCE |
| 17   corporation, | CARRIERS' MOTION TO INTERVENE |
| 18        Defendant. | |
| 19 | Date:      September 26, 2011 |
| 20 | Time:      8:30 a.m. |
| 21 | Crtrm.:    9-D |
| 22 | [Honorable David O. Carter] |
| 23   AND CONSOLIDATED ACTIONS. | |

24

25

26

27

28

1

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................. 2

    A. The carriers' intervention motion must be denied because this Court lacks jurisdiction to grant it ..................................................................... 2

    B. The statement by MGA's counsel that the funds awarded in MGA's fee application would go to MGA fails to provide the carriers with a basis for intervention as of right ..................................................... 5

        1. The carriers elected to seek reimbursement from MGA in lieu of pursuing a subrogation claim directly against Mattel ................................ 5

        2. The carriers' subrogation and reimbursement claims are subject to various equitable and legal defenses ......................................................... 6

        3. The statements by MGA's counsel did not alter the legal position of either MGA or the carriers with respect to the carriers' reimbursement rights ....................................................................... 8

    C. The carriers have not shown a basis for permissive intervention ................... 9

    D. MGA would be prejudiced if the carriers were allowed to intervene ........... 10

CONCLUSION ......................................................................................................... 10

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



1

## TABLE OF AUTHORITIES

2

3

**Cases**

4

*21st Century Ins. Co. v. Superior Court*

5
   47 Cal.4th 511, 98 Cal.Rptr.3d 516 (2009).......................................................2, 7

6
*Associated Builders and Contractors, Inc. v. Herman*
   166 F.3d 1248 (D.C. Cir. 1999) ......................................................................4, 8

7

8
*Associated Gen. Contractors of California v.*
   *Sec'y of Commerce of U. S. Dept. of Commerce*

9
   77 F.R.D. 31(C.D. Cal. 1977) ...........................................................................4

10
*Griggs v. Provident Consumer Discount Co.*

11
   459 U.S. 56 (1982) ............................................................................................3

12
*Halderman v. Pennhurst State School & Hospital*

13
   612 F.2d 131 (3d Cir. 1979).............................................................................4

14
*Hocker v. New Hampshire Ins. Co.*

15
   922 F.2d 1476 (10th Cir. 1991)......................................................................2, 7

16
*Nicol v. Gulf Fleet*

17
   743 F2d 298 (5th Cir. 1984)....................................................................1, 3, 4, 10

18
*Progressive West Ins. Co. v. Superior Court*

19
   135 Cal.App.4th 263, 37 Cal.Rptr. 434 (2005).................................................5

20

**Rules**

21

Federal Rules of Civil Procedure, Rule 24 ................................................................9

22

23

24

25

26

27

28


SHERNOFF BIDART
ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

MGA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
INSURANCE CARRIERS' MOTION TO INTERVENE

**INTRODUCTION**

1

2          As this Court is amply aware, MGA and its insurance carriers have not seen

3   eye-to-eye about many issues involving the *Mattel* litigation, and they are currently

4   embroiled in separate litigation before this Court to resolve their coverage disputes.

5   One of the issues on which MGA and the carriers do not agree is the amount of

6   reimbursement that the carriers may be entitled to receive from the attorney's fee

7   award against Mattel.

8          But the existence of that dispute does not provide a legitimate basis for the

9   carriers to intervene in the *Mattel* litigation as direct participants — thereby

10  injecting insurance-related issues into the underlying action.  It is difficult enough

11  for MGA to deal with its own insurers and Mattel as litigation adversaries in

12  separate lawsuits.  MGA should not be forced to litigate against them both in the

13  same action, particularly given the potential mischief that could be occasioned if

14  Mattel is rendered a defendant on claims by MGA's insurers.

15         There are two grounds that allow this Court to avoid that inequitable

16  outcome by denying the carrier's motion.

17         First, this Court lacks jurisdiction to grant the motion.  Once a notice of

18  appeal is filed, jurisdiction shifts to the appellate court, and the district court loses

19  its power to rule on motions to intervene.  *Nicol v. Gulf Fleet*, 743 F2d 298, 299

20  (5th Cir. 1984).  That precludes this Court from granting the carriers' motion —

21  which was filed two weeks after Mattel appealed the underlying judgment.

22         Second, even if this Court had the power to grant the motion, there would be

23  no reason for it to exercise that power because the carriers have no valid need to

24  intervene.  In their motion, they admit that until the hearing on MGA's motion for

25  attorney's fees against Mattel, "it appeared that the subrogation rights of the

26  Member Companies were adequately preserved by MGA's efforts to secure

27  attorney's fees from Mattel." (Motion at 12:24-26.)  Their only argument for how

28

SHERNOFF BIDART
ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

1   those rights are no longer adequately protected is that, during the hearing, MGA's

2   counsel stated that the fee award would not directly go to its insurers.

3          The carriers portray that comment as some sort of categorical denial by

4   MGA that the carriers might possess any legitimate reimbursement rights.  They

5   attach undue significance to a single comment made in passing during the course

6   of a three-day hearing.  MGA's counsel was simply stating, in effect, that the

7   carriers' reimbursement rights are subject to various limitations and defenses

8   provided by California law — like the made-whole rule, the common-fund rule,

9   and the defense of unclean hands.  *See, e.g., 21st Century Ins. Co. v. Superior*

10  *Court*, 47 Cal.4th 511, 519, 98 Cal.Rptr.3d 516, 521 (2009) (discussing made-

11  whole and common-fund rules); *Hocker v. New Hampshire Ins. Co.*, 922 F.2d

12  1476, 1486 (10th Cir. 1991) (applying unclean-hands defense to insurer's

13  subrogation claim).

14         Counsel's shorthand acknowledgement of these realities did not create a

15  predicate for intervention here because it did not "impair" the carriers' ability to

16  protect or assert their rights.  Moreover, the carriers' argument is entirely

17  pretextual because if this stray comment had truly concerned them, they could have

18  sought leave to intervene four months ago when the comment was made, not after

19  the litigation had concluded and was on appeal.  To the extent that the carriers are

20  truly concerned, that comment changed nothing as MGA is in no position to alter

21  their rights in any way because a payment from Mattel on the judgment is years

22  away.

## ARGUMENT

23

24  **A.    The carriers' intervention motion must be denied because this
25         Court lacks jurisdiction to grant it**

26         "The filing of a notice of appeal is an event of jurisdictional significance —

27  it confers jurisdiction on the court of appeals and divests the district court of its

28  control over those aspects of the case involved in the appeal."  *Griggs v. Provident*

1    *Consumer Discount Co.,* 459 U.S. 56, 58 (1982).  Here, Mattel filed its notice of

2    appeal from the final judgment, which included the award of attorney's fees, on

3    August 11, 2011.  (Docket 10707.)  The carriers' motion to intervene was not filed

4    until August 25, 2011.  Accordingly, this Court must deny the motion because it

5    lacks jurisdiction to grant it.  *Nicol,* 743 F.2d at 299.

6         *Nicol* was an admiralty action by a foreign seaman against the owners of a

7    tugboat on which he was injured.  The lawyer who represented him, Poindexter,

8    was associated with the Hammett firm when the action was filed, but then left the

9    firm and started his own practice, taking the *Nicol* matter with him.  Poindexter

10   and his former firm became embroiled in a dispute about the firm's interest in the

11   fees on the *Nicol* matter.

12        After the district court dismissed Nicol's suit for lack of subject-matter

13   jurisdiction and entered judgment for the defendants, the Hammett firm moved for

14   leave to intervene in Nicol's case to protect its interest in the fees and costs that it

15   claimed Poindexter owed the partnership.  *Id.,* 743 F.2d at 298.  Before the district

16   court ruled on the motion, Nicol filed his notice of appeal.  A magistrate granted

17   the motion to intervene, but the district court overruled the decision.  The Fifth

18   Circuit affirmed, finding that the district court lacked jurisdiction to rule on the

19   motion after the notice of appeal had been filed.  It explained:

20            If an appeal is taken from a judgment which determines the entire

21            action, the district court loses power to take any further action in

22            the proceeding upon the filing of a timely and effective notice of

23            appeal, except in aid of the appeal or to correct clerical errors

24            under Rule 60(a).  9 J. Moore & B. Ward, *Moore's Federal*

25            *Practice* ¶ 203.11 at 3-54 (1983).  That is the general rule in this

26            Circuit, and it has been applied to motions for intervention.

27            *Avoyelles Sportsmen's League, Inc. v. Marsh,* 715 F.2d 897, 928-

28            29.  Accordingly, the district court in this case was without

- 3 -

SHERNOFF BIDART
ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

1    jurisdiction to rule on the motion to intervene filed by Hammett,

2    Leake & Hammett once Nicol had filed his notice of appeal. *Id.*,

3    743 F.2d at 299, footnote omitted.

4    The Ninth Circuit has not addressed the issue presented in *Nicol*.  But a court

5    in this district has considered the question and independently adopted the same

6    approach as the *Nicol* court.  *See Associated Gen. Contractors of California v.*

7    *Sec'y of Commerce of U. S. Dept. of Commerce*, 77 F.R.D. 31, 35-36 (C.D. Cal.

8    1977).

9    Other courts that have reached this issue have not reached contrary results.

10   Without mentioning *Nicol*, the Third Circuit held in *Halderman v. Pennhurst State*

11   *School & Hospital*, 612 F.2d 131, 134 (3d Cir. 1979), that a district court did have

12   jurisdiction to hear a post-appeal motion to intervene if intervention was sought for

13   the purpose of appealing.  But the carriers here are not seeking to intervene for that

14   purpose.  In fact, during the meet-and-confer process before they filed their

15   motion, the carriers expressly disavowed any intent to participate in the appeal of

16   the *Mattel* action.  And it would make no sense for them to participate because

17   their interest is entirely aligned with MGA's interests in having the judgment

18   affirmed.

19   In *Associated Builders and Contractors, Inc. v. Herman*, 166 F.3d 1248,

20   1256 (D.C. Cir. 1999), the court declined to address whether *Nicol* deprived the

21   district court of jurisdiction to hear a post-appeal motion to intervene, and affirmed

22   the denial of intervention on the ground that the motion had not been brought

23   timely.  Here, because *Nicol* is directly in point and the carriers are not seeking to

24   intervene for the purpose of pursuing the appeal, their motion should be denied for

25   lack of jurisdiction.

26

27

28

- 4 -

SHERNOFF BIDART
ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS
sbe



1   **B.    The statement by MGA's counsel that the funds awarded in**
2           **MGA's fee application would go to MGA fails to provide the**
        **carriers with a basis for intervention as of right**
3
        **1.    The carriers elected to seek reimbursement from MGA in**
4                 **lieu of pursuing a subrogation claim directly against Mattel**

5    As the carriers' motion acknowledges, the terms "subrogation" and

6   "reimbursement" are technically different, but are often used interchangeably

7   because "[i]n California, both the subrogation rights and reimbursement rights of

8   the insurance company fall within the rubric of subrogation." *Progressive West*

9   *Ins. Co. v. Superior Court*, 135 Cal.App.4th 263, 273, 37 Cal.Rptr. 434 (2005).

10  The *Progressive West* court explained the difference between subrogation and

11  reimbursement this way: "Subrogation refers to the right of the insurance company

12  to step into the shoes of the insured and assert the insured's rights against the third

13  party.... Reimbursement refers to the right to receive payment back of what has

14  been expended by the insurance company...." *Id.*

15   Here, the carriers' motion acknowledges that they decided to allow MGA to

16  pursue its claims against Mattel for attorney's fees and that they planned to then

17  seek reimbursement from the proceeds awarded to MGA.  (Motion at 9 [claiming

18  that the carriers are "subrogated to and are entitled to reimbursement" from any

19  recoveries by MGA for fees and costs].)

20   The motion further acknowledges that the carriers felt secure that their

21  reimbursement rights were fully protected by MGA as long as MGA sought to

22  pursue its right to an attorney's fee award.  It states:

23       Entering the briefing [on MGA's attorney's fees application] it

24      appeared that the subrogation rights of the Member Companies

25      were adequately preserved by MGA's efforts to secure attorney's

26      fees from Mattel.  That is, MGA had a contractual obligation to

27      preserve and pursue the Member Companies' rights under the

28      insurance contract, including pursuing reimbursement from the

1   wrongdoer for payments made by the Member Companies.

2   (Motion at 12:24 – 13:1.)

3   The carriers argue that their sense of security evaporated during the hearing

4   on the attorney's fee motion.  According to the carriers, "During argument,

5   however, counsel for MGA stated that MGA would work to ensure that [the

6   carriers] would not receive reimbursement from any fees awarded, despite the fact

7   that [the carriers] have been funding MGA's representation through years of

8   litigation." (Motion at 13:1-5.)  The carriers also claim that "MGA has made it

9   clear that it will not reimburse any portion of any recovery to the Member

10   Companies or to Crum & Forster." (Motion at 18:21-22.)

11   This is hyperbole.  The carriers' motion relies exclusively on a single

12   sentence by MGA's counsel, Ms. Hurst (who is not counsel for MGA for any

13   insurance-related matters) during the three-day hearing on the merits of the fee

14   award against Mattel.  On May 26, Ms. Hurst commented, in passing, that it was

15   MGA's position "that the insurance companies will not be entitled to funds

16   awarded on a fee motion." (Motion at 8:11, citing Tr. May 26, 2011, Vol. 1, at

17   22:21-23.)  The motion admits that MGA never elaborated on this single statement

18   about the carriers' reimbursement rights. (Motion at 8:23.)  And, the carriers'

19   counsel — who were present at the hearing — did not seek to intervene at that time

20   or take any action at that time to protect their now supposedly uncertain position.

21   **2.     The carriers' subrogation and reimbursement claims are**

22   **subject to various equitable and legal defenses**

23   As their motion explains, MGA's carriers have mostly participated in

24   MGA's defense subject to a reservation of their contractual and legal rights.  Other

25   than Ms. Hurst's isolated comment on May 26, 2011, the carriers do not point to

26   any statements by MGA repudiating the carriers' contention that they hold certain

27   rights against MGA to recover some or all of the amounts that they have paid as

28   part of their defense obligations in the *Mattel* litigation.

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

1   Just as the carriers contend that they have certain reimbursement rights,

2   MGA contends that it has certain legal and equitable defenses to those rights.

3   These defenses include the made-whole rule, the common-fund rule, the doctrine

4   of unclean hands, and waiver.

5   Specifically, the made-whole rule prevents an insurance carrier from making

6   any recovery on its subrogation or reimbursement rights unless its insured has been

7   made whole for the loss that triggered the insurer's obligation to pay. *See, e.g.,*

8   *21st Century Ins. Co. v. Superior Court,* 47 Cal.4th 511, 518, 98 Cal.Rptr.3d 516,

9   521(2009) (explaining operation of the made-whole rule).  The common-fund rule

10   will require an insurer asserting a right to reimbursement of funds obtained by its

11   insured to bear a pro rata portion of the costs incurred in obtaining the funds. *Id.,*

12   47 Cal.4th at 520.  An insurer's right to assert any equitable rights to subrogation

13   or reimbursement is subject to the rule that the insurer must come to court with

14   clean hands. *Hocker v. New Hampshire Ins. Co.,* 922 F.2d 1476, 1486 (10th Cir.

15   1991).  And some of MGA's insurers have agreed, in prior settlements, to waive

16   certain reimbursement rights they might have otherwise possessed.[1]

17   None of this is new or unexpected for the insurers.  The availability to the

18   policyholder of certain potential defenses to an insurers' assertion of subrogation

19   or reimbursement rights is simply the flip-side of the carriers' assertion of those

20   rights.  The same rules and public-policy rationales that create the rights relied on

21   by the carriers also create the defenses available to policyholders.

22

23

24

25

26

27   [1] For example, C&F, as part of a partial settlement with MGA in 2008, has
expressly agreed to waive any reimbursement claim for funds it paid as part of that

28   settlement.

SHERNOFF BIDART
ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

**3.     The statements by MGA's counsel did not alter the legal position of either MGA or the carriers with respect to the carriers' reimbursement rights**

According to the carriers, if they are denied the right to intervene in the *Mattel* action, their subrogation or reimbursement rights would be "impaired." (Motion at 16:3.)  They argue that, "MGA's recent denial of [the carriers'] subrogation and reimbursement rights substantially affect their ability to collect the amounts they paid in connection with the representation of MGA."  (Motion at 16:10-12.)  This is not true.  MGA has not categorically denied the existence of the carriers' subrogation/reimbursement rights.  Counsel's statement did no more than acknowledge, in a shorthand way, that those rights are subject to an array of legal, equitable, and contractual limitations.

Simply put, Ms. Hurst's statement did not have any impact on the carriers' legal position or their ability to protect their reimbursement rights.  The carriers acknowledge that, in their view, their reimbursement rights were fully protected by MGA before Ms. Hurst made her statement because MGA was pursuing a fee award.  Nothing has changed; therefore there is no need for the carriers to intervene.[2]

MGA's application was ultimately successful, and MGA will now defend that award on appeal.  The insurers are in the same position that they have elected

---

[2] If the carriers truly believed that Ms. Hurst's comment on May 26, 2011, materially affected their interests, they should have invoked their intervention rights then, and not after judgment and after an appeal had been filed.  This delay also supports denial of the motion, because it shows that intervention was not "timely" — one of the prerequisites for granting intervention under Rule 24.  In *Associated Builders and Contractors, Inc. v. Herman*, 166 F.3d at 1257, the court affirmed the denial of a post-judgment intervention request, noting that a motion for "intervention after judgment will usually be denied where a clear opportunity for pre-judgment intervention was not taken."  The court noted that there is a "presumption" that post-judgment motions to intervene will be denied.  *Id.*

- 8 -

SHERNOFF BIDART
ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

1    to be in for the duration of this litigation — poised to assert their rights to

2    reimbursement for defense costs from any fees awarded to MGA.  Ms. Hurst's

3    comment did nothing to impair the carriers' ability to protect their interests and

4    therefore did not create a basis for intervention in this action.

5         **C.    The carriers have not shown a basis for permissive intervention**

6         Rule 24(b)(1)(B) permits a district court to allow a party to intervene upon a

7    showing that it has "a claim or defense that shares with the main action a common

8    question of law or fact."  The carriers assert that their reimbursement claim

9    somehow arises from a common nucleus of fact with the issues presented in the

10   main action between MGA and Mattel.

11        They explain that because they have been required to pay MGA's defense

12   costs in the *Mattel* litigation, "[t]hey are familiar with the underlying issues and

13   have been connected to and apprised of the developments in the Mattel matter as

14   they have occurred." (Motion at 19:24-25.)  From this observation, they conclude

15   that, "As such, the Mattel Litigation — and in particular, the attorney's fees award

16   under the Copyright Act — forms the factual basis for [the carriers'] right of

17   subrogation to payments made in the representation of MGA." (Motion at 19:28 –

18   20:3.)

19        The carriers' reasoning on this point is circular.  The fact that the carriers are

20   asserting a reimbursement claim from some portion of the fee award made to MGA

21   and against Mattel does not mean that the carriers' reimbursement claim shares any

22   common factual or legal issues with the litigation between MGA and Mattel.

23   Rather, the carriers' reimbursement rights represent a wholly separate issue from

24   the merits of the underlying action — a fact that the carriers expressly

25   acknowledge in their motion. (Motion at 13:22-23 ["the Intervenors' rights of

26   subrogation are separate from the merits substantiating the award of attorney's

27   fees"].)

28

MGA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
INSURANCE CARRIERS' MOTION TO INTERVENE

SHERNOFF BIDART
ECHEVERRIA<sup>LLP</sup>
LAWYERS FOR INSURANCE POLICYHOLDERS
SBE

**D.    MGA would be prejudiced if the carriers were allowed to intervene**

MGA and its insurance carriers are already involved in multiple lawsuits concerning coverage and related issues, which are all pending before this Court. If MGA and its carriers cannot resolve the reimbursement issues arising out of the award of attorney's fees, those lawsuits would be the logical context for resolving that dispute.

MGA would be substantially prejudiced if the carriers were permitted to intervene in this action because that would force it to resolve its insurance-related issues in a proceeding in which its litigation adversary — Mattel — was also a party. That would create the potential for Mattel and MGA's insurers to align against MGA, and it would create the danger that privileged communications between MGA and its counsel would be disclosed to Mattel.

### CONCLUSION

Under *Nicol*, this Court lacks jurisdiction to rule on the carriers' motion. It should be denied on that basis.

Even if the Court elects to reach the merits, the motion should be denied because it is nothing more than an overreaction to a stray comment by MGA's counsel during a lengthy hearing on a different topic. The carriers admit that they had no basis to intervene before the comment was made, and their attempts to embellish the comment do not provide a legitimate basis to conclude that intervention is necessary now.

MGA's fight with Mattel is separate from MGA's fight with its insurers — it should be kept that way.

Dated:  September 2, 2011.        Respectfully submitted,

SHERNOFF BIDART ECHEVERRIA LLP

By /s/ Michael J. Bidart
    MICHAEL J. BIDART
    Attorneys for MGA Entertainment, Inc.

- 10 -