**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION AT SANTA ANA**

HONORABLE DAVID O. CARTER, JUDGE PRESIDING

```
CARTER BRYANT,                      )
                                    )
          PLAINTIFF,                )
                                    )
     vs.                            ) CV NO. 04-9049-DOC
                                    )
MATTEL, INC.,                       )
                                    )
          DEFENDANT.                )
_____)
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SANTA ANA, CALIFORNIA

MONDAY, JANUARY 11, 2010

11:12 P.M.

**DEBORAH D. PARKER, CSR 10342**
**OFFICIAL COURT REPORTER**
**UNITED STATES DISTRICT COURT**
**411 WEST FOURTH STREET**
**SUITE 1-053**
**SANTA ANA, CALIFORNIA 92701**
**(714) 542-8409**
**D.PARKER@IX.NETCOM.COM**

```
 1   APPEARANCES OF COUNSEL:

 2       FOR THE INTERVENOR DEFENDANT, MGA ENTERTAINMENT,
         INC.:
 3
                              THOMAS S. MC CONVILLE
 4                            ORRICK HERRINGTON & SUTCLIFFE, LLP
                              4 PARK PLAZA
 5                            SUITE 1600
                              IRVINE, CALIFORNIA 92614
 6                            (949) 567-6700

 7
                              ANNETTE L. HURST
 8                            ORRICK HERRINGTON & SUTCLIFFE, LLP
                              THE ORRICK BUILDING
 9                            405 HOWARD STREET
                              SAN FRANCISCO, CALIFORNIA 94105
10                            (415) 773-4585

11
         FOR THE DEFENDANT, MATTEL, INC.:
12
                              MICHAEL T. ZELLER
13                            SCOTT WATSON
                              QUINN EMANUEL URQUHART OLIVER &
14                            HEDGES, LLP
                              865 S. FIGUEROA STREET
15                            10TH FLOOR
                              LOS ANGELES, CALIFORNIA 90017
16                            (213) 624-7707

17

18

19

20

21

22

23

24

25
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1   SANTA ANA, CALIFORNIA; MONDAY, JANUARY 11, 2010; 11:12 P.M.
 2              THE COURT:  Okay, we're going to resolve this real
 3   quick.
 4              On the Bratz versus MGA -- I'm sorry, the MGA
 5   versus Mattel matter.
 6              On Saturday, the court had an informal session
 7   with counsel who are now present.  I've come to know them so
 8   well by first name, as Tom, Annette and Michael.  John is
 9   not here.
10              I'm just kidding you, Counsel.
11              But they were also here Sunday, and I commend
12   counsel for their hard work and efforts, and repeatedly will
13   compliment them concerning their enthusiasm for the case.
14              On Saturday, Mattel presented three IGNT (sic)
15   issues.  The first, IGNT documents, redacted bank account
16   numbers on documents produced by IGNT.  Mattel had asked for
17   a general order prohibiting redaction of financial
18   documents, but the court understands that that may be
19   overbroad because personal and irrelevant financial records
20   are at issue.
21              Second, other IGNT documents were withheld on
22   privilege grounds.  I think briefing should identify what
23   those documents are so we can get on with this matter as
24   quickly as possible.
25              And third, the documents showing how the
```

```
 1  49 million was obtained by allegedly Mr. Larian and IGNT.
 2          Counsel, my proposal is that we ought to get some
 3  briefing on this and get this moving.  You're obviously not
 4  agreeing to it.  But tentatively, I'm going to say that I
 5  think IGNT is relevant.  I believe that at -- minimally that
 6  the bank account numbers are relevant.  I thought that we
 7  resolved that by using the last numbers, and I think MGA
 8  agrees that we have resolved that.
 9          MR. MC CONVILLE:  Yes.
10          THE COURT:  Okay.  So that's resolved.  That's
11  something you can write up very easily now, I think.
12          It's the broader request apparently that you're
13  concerned about what financial documents mean in that
14  overbreadth nature.
15          I need to get that.  What are you specifically
16  asking for?  I'm not going to create a record.  You're going
17  to put it down in handwritten form so I can see it by
18  tomorrow.
19          Concerning the other IGNT documents withheld on
20  privilege grounds, I need to have those documents identified
21  as soon as possible.  So give me a time frame for counsel on
22  that.
23          MS. HURST:  Your Honor, at least -- pardon me,
24  Your Honor.
25          At least an initial privilege log has been served,
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1   so I think it's a matter of supplementation at this point,
 2   your Honor.
 3              THE COURT:  By silly time periods.  I never get
 4   time periods.  So I don't want to impose those.  I'm asking
 5   before I impose them.
 6              MS. HURST:  A week, your Honor.
 7              THE COURT:  What date?
 8              MS. HURST:  Next Monday, the 21st.
 9              THE COURT:  That's a holiday.  Make it Tuesday.
10              MS. HURST:  Tuesday, Your Honor.
11              THE COURT:  Which will be the 20 --
12              MS. HURST:  22nd.
13              THE COURT:  22nd.  Okay.  Then I'll set that up.
14              MS. HURST:  Wait a minute.  That's not right.
15   Monday is the 18th.  Sorry.  I lost four days somewhere.
16              THE COURT:  The 19th.  Because I don't have a
17   calendar.
18              MS. HURST:  Tuesday is the 19th, your Honor.
19              THE COURT:  Okay.  By the 19th?
20              MS. HURST:  Thank you, your Honor.
21              THE COURT:  Okay.  By 12:00 noon?
22              MS. HURST:  Sure.
23              THE COURT:  Okay.  The third issue concerns IGNT,
24   and apparently, counsel, you represent IGNT also, don't you?
25              MS. HURST:  IGWT.
```

```
 1                THE COURT:  IGWT.  My apologies.
 2                Documents that show the alleged 49 million being
 3   obtained by Mr. Larian and IGNT (sic), we went over that
 4   informally, and I indicated to you I thought that that was
 5   relevant.  It's just documents.  I mean, it needs to be put
 6   in writing so I can see what that is.  Okay.  So instead of
 7   discussing it, we spent three or four hours just discussing
 8   those topics.  I just need to see it in writing now.
 9                So what's a time frame for that?
10                MR. ZELLER:  I can send that to you tonight.
11                THE COURT:  Okay.
12                MR. ZELLER:  We have a draft that -- the issue had
13   to do with this particular request and we walked through the
14   language --
15                THE COURT:  Okay.
16                MR. ZELLER:  -- and on Sunday.
17                But this language is ready to go, so I can e-mail
18   it anytime.
19                And just to be clear, I didn't object to the
20   document being sent to the Court -- excuse me, the Court
21   looking at the document that MGA had sent.  I was simply
22   objecting to the document because it doesn't reflect what I
23   think was the discussion as well as what I --
24                THE COURT:  Well, I'll wait.  I'll resolve this
25   pretty quickly, except the privilege will take some time.
```

1              So how are you doing on the other stipulations
2    that we entered into --
3              MR. ZELLER:  Well, the problem is --
4              THE COURT:  -- informally?
5              MR. ZELLER:  -- that on a number of these
6    requests, specific language we had walked through, and I can
7    repeat some of this language or all of the language to the
8    Court that we talked about specifically on Sunday.  Say, for
9    example, documents referring or relating to Bryant's
10   indemnification or fee.  Those things -- that we received a
11   response from MGA that potentially -- that just basically
12   takes out anything to make it sound like all they have to do
13   is produce the agreements.  Which, number one, was not what
14   was discussed on Sunday, and, number two, is actually less
15   than what MGA has already been ordered three times to
16   produce, and, number three, actually would exclude the very
17   documents that Mr. Larian talked about.  And then they added
18   some language that said, *Oh, but we also will produce the*
19   *demands that we've made upon Mr. Bryant.*
20             Well, the fact is, is we also want to know are
21   there other documents where they said, *Believe it or not,*
22   *don't worry, we're not actually going to enforce this*
23   *indemnification provision.*  There is actually all sorts of
24   revisions that were made to this very language that we
25   walked through on Sunday by MGA that takes out what I think

1  is really the core of what it is that we were asking for and
2  puts in all sorts of, you know, we'll say kind of weasel
3  words that would allow them to exclude the very documents
4  that they ought to be producing.
5          And we could walk -- I can certainly walk through
6  the Court with these --
7          THE COURT:  No, I think it's easier.  We've done
8  that now, you know, two or three days in a row.
9          MR. ZELLER:  All right.
10         THE COURT:  And so the end result is what's the
11 easiest way for the Court to get to that and how do I match
12 up each of your requests?  Because now it's simply a
13 matter -- you've really done a good job in terms of
14 educating me.  I just need to see what your requests are in
15 the language.  I need to see what your requests or
16 disagreements are in the language.  And if it's overly
17 broad, I'm just going to strike it.  If it's not, I'm going
18 to order it.
19         MR. ZELLER:  And these are --
20         THE COURT:  No, no.  So how do we get to that
21 relatively quickly while we're waiting for the privilege
22 issues?
23         MR. MC CONVILLE:  Well, your Honor, the document
24 that we e-mailed to your --
25         THE COURT:  I haven't opened it yet.

*DEBORAH D. PARKER, U.S. COURT REPORTER*

9

```
 1                 MR. MC CONVILLE:  I understand.
 2                 THE COURT:  I'm not going to open it.
 3                 MR. MC CONVILLE:  The way this process worked was
 4     Mattel drafted us a document and then we provided comments
 5     which are reflected in that document that we e-mailed to
 6     you.  So our -- so our comments to their suggestions are in
 7     that one document.
 8                 THE COURT:  Oh, they are.  But I don't know if
 9     counsel knows what was e-mailed to me.  I don't like that
10     record.
11                 MR. MC CONVILLE:  Okay.
12                 THE COURT:  So bring it to me, both of you,
13     tomorrow at 7:30 in the morning, okay?  Just bring me the
14     copy.  It gives you a little bit more chance to work on it
15     tonight if you want to.  You bring me that copy with your
16     comments on the side.  We'll start into it tomorrow, okay?
17                 MS. HURST:  Your Honor, I'll be taking a
18     deposition tomorrow morning starting at 8:00 --
19                 THE COURT:  Sure.
20                 MS. HURST:  -- so I'm -- with the Court's excuse,
21     I'll attend that --
22                 THE COURT:  Sure.
23                 MS. HURST:  -- rather than this.
24                 THE COURT:  What do you want -- what time do you
25     want to come over?
```

1         MS. HURST:  No.  I think Mr. McConville can be
2    here, your Honor.
3         THE COURT:  Okay.
4         MS. HURST:  I just wanted to make sure it was okay
5    with the court if both of us weren't here.
6         THE COURT:  Sure.  No, I'm starting at 7:30 on
7    another matter tomorrow, but I can -- I don't care if you
8    come at 9:15 or 10:00.  There's nothing magic about 7:30.
9    It's just I was going to be here and going to buy you
10   coffee.  I'm just kidding you.  But whatever time is
11   convenient for both of you.
12        MR. ZELLER:  7:30 is good by me.
13        THE COURT:  So great.  Bring it to me at 7:30.
14   That way we can start on it and get it out, okay?
15        MR. MC CONVILLE:  And just so I'm clear, your
16   Honor, you just want this document brought to you first
17   thing in the morning?
18        THE COURT:  Yeah, first thing in the morning.
19        MR. MC CONVILLE:  7:30.
20        THE COURT:  That way I have a record that it was
21   brought to me.  I'm not going to open up that e-mail.  I'm
22   uncomfortable with that.  I don't know if you've looked at
23   it.  I just don't like -- you know, when we finally get into
24   the formalistic rulings, I'm just a little uncomfortable
25   with that.

1          So just bring it to me, both of you, and we'll
2  make a quick record that you have given it to me tomorrow,
3  and then go about your business back to the depositions,
4  okay?
5          How are our depositions coming along?
6          MR. ZELLER: We still don't have 30(b)(6) dates
7  from MGA's --
8          THE COURT: Well, we'll get them from both sides
9  eventually. Yeah.
10          So don't leave tomorrow without checking in with
11 me, okay? And I'll be available to you after 5:00 sometime.
12 So deposition is your first business tomorrow. I'm at your
13 disposal.
14          All right. Well, and the briefing, how long do
15 you want your briefing? Well, we really don't need briefing
16 on it, do we? I just need to compare what each of your
17 language is, don't I?
18          MS. HURST: We each submit our proposed respective
19 orders?
20          THE COURT: Let me start with that. If I'm not
21 having to cause you work, why am I asking you for additional
22 work, okay? So let me see if I can just resolve it between
23 the two positions you've taken.
24          MR. MC CONVILLE: Your Honor, just in the event, I
25 envision us not being able to work collaboratively on one

```
 1  document, is it okay if we submit one document that shows
 2  our changes and they submit a different document that shows
 3  their changes, and the Court will have both documents from
 4  each side?
 5          THE COURT:  I don't understand what you just said.
 6  I thought there was one document with no objections.  I'd
 7  like to get --
 8          MR. MC CONVILLE:  Your Honor, there is that
 9  document.  And I understand that the best intentions of the
10  parties have been to create one document.  I can envision a
11  scenario where, after we leave this courtroom, that the
12  agreement as to what that one document is going to look like
13  will fall apart.
14          THE COURT:  Well, do you have the document now?
15  Maybe you can just give it to me now?
16          MR. MC CONVILLE:  I do.
17          THE COURT:  Well, just show it to --
18          MR. ZELLER:  In fact, that document is not going
19  to reflect where we are.  What I would -- what I would
20  suggest is that we provide proposed orders to the Court and
21  the Court can look at those.
22          THE COURT:  Now, what I am hearing, am I hearing a
23  general disagreement on many of the things that we
24  discussed, or is it just language?
25          MR. MC CONVILLE:  We -- we view it as a language
```

```
 1  issue, your Honor.
 2          THE COURT: Because you keep feeling that it's
 3  overbroad?
 4          MS. HURST: Yeah. We -- we -- most of our
 5  changes, your Honor, were designed to try to make everything
 6  more specific, both -- frankly, in our request as well.
 7          So, for example, we had requested those
 8  investigation files. We went back and put in the list of
 9  the specific case files that we were looking for. All of
10  these -- almost all of the changes that we made were pretty
11  minor, designed to make each request more specific.
12          THE COURT: Okay. And your disagreement?
13          MR. ZELLER: Let me give an example. What used to
14  be the paragraph about the financial documents from MGA, the
15  MGA -- this is what I read to the court on Sunday: *The MGA*
16  *parties shall, on or before January* blank, *2010, produce to*
17  *Mattel all audited and unaudited financial statements,*
18  *balance sheets, profit and loss statements, cash flow*
19  *reports, and monthly statements of operations for any time*
20  *period on or after January 1st, 2007.*
21          That is verbatim what I read to the Court on
22  Sunday. It is also verbatim what the Court said was
23  appropriate. They struck out two categories, cash flow
24  reports and monthly statements of operations.
25          THE COURT: Hold on. Why?
```

1            MS. HURST:  Your Honor, because those categories
2    of documents are not necessary for any damages analysis.
3            And the cash flow reports in particular are the
4    documents that the competitor can get their hands on, see
5    the ebb and flow of resources to MGA, and really can be used
6    significantly to MGA's detriment.  And they're not needed
7    for any damages.  They don't go to profit at all.  That's
8    what the P and L's are for.  That's what the income
9    statements are for, the balance sheets.  We agreed to all of
10   those.
11           Just the cash flows that we took out because those
12   are the ones that are really frankly can be used in the most
13   damaging way to MGA, your Honor.  And we understood the
14   Court might end up ordering that, but we agreed to all the
15   rest.
16           MR. ZELLER:  Well, it's not a coincidence, your
17   Honor, that those are the two categories of financial
18   documents that Mr. Woolard testified were routinely given to
19   Mr. Larian.  I don't view that as a coincidence.  And so now
20   those are the two things that they want to deprive us.
21           But this is a perfect example of how we are facing
22   the shift where this was exactly what was discussed --
23           THE COURT:  That's fine.  That's fine.  Okay.  So
24   let's do this:  As I wind my way through these discovery
25   issues, hopefully tomorrow and tomorrow night -- I've got

```
 1   other matters, unfortunately.
 2              You're going to be in a deposition.
 3              Are you going to be in a deposition?
 4              MR. MC CONVILLE:  No, sir.
 5              THE COURT:  Are you going to be in a deposition?
 6              MR. ZELLER:  No, your Honor.
 7              THE COURT:  Well, then I've got -- you know, I've
 8   got each of you in your offices if we need you to come over.
 9              MR. ZELLER:  Yes.
10              THE COURT:  Okay.  Thank you very much.
11              MS. HURST:  Thank you, your Honor.
12              THE COURT:  So I get these at 7:30 tomorrow,
13   right?
14              MR. MC CONVILLE:  Yes, sir.
15              THE COURT:  Why can't I have them tonight?
16              MR. ZELLER:  I offered it tonight.  I can
17   certainly -- I can get it.  I just have --
18              MS. HURST:  Your Honor, our submission -- we'll
19   stand by the submission we made by e-mail earlier.  We
20   understand that it's all about saying it's their submission.
21   It's our redline proposal to what they've put in.
22              THE COURT:  Well, just give yours to me tomorrow
23   then, right?
24              MR. ZELLER:  I'm sorry?
25              THE COURT:  You're going to bring yours to me
```

*DEBORAH D. PARKER, U.S. COURT REPORTER*

```
 1  tomorrow?
 2          MR. ZELLER:  I can bring it back by tonight.  I
 3  just need to go to our office and print it.
 4          THE COURT:  Well, that's fine, tomorrow.  Because,
 5  you know, once you leave the courthouse, there's no reason
 6  for me to keep the courthouse open.  It's too expensive for
 7  this.
 8          MS. HURST:  I should add one thing, your Honor.
 9  We did agree that paragraph 6 would apply to the IGWT
10  entities as well.
11          THE COURT:  Okay.
12          MS. HURST:  Paragraph 6.
13          THE COURT:  Okay.  Okay.  Well, then we'll see you
14  tomorrow at 6:30.  Thank you.
15          You can give me both sets tomorrow at 7:30 -- I
16  mean 7:30.  I said 6:30.
17          MR. ZELLER:  I'm sorry, your Honor.  There is one
18  other large area which has not been resolved, and that deals
19  with -- you'll recall that MGA was put to a --
20          THE COURT:  Press the button.  You'll see down
21  below it will light up green.
22          MR. ZELLER:  There we go.  I'm sorry.  It wasn't
23  on.
24          You'll recall that on Sunday, MGA was put to a
25  choice whether or not it was going to pursue discovery in
```

```
 1   territories outside of Mexico, the United States, and
 2   Canada.  I still don't have an answer to that.  And that
 3   affects two of the requests because that's -- you know,
 4   those were the ones dealing with Chile and Germany and --
 5            THE COURT:  Brazil.
 6            MR. ZELLER:  -- the like.
 7            I have no idea if those are in or out because I
 8   don't have an answer from MGA as to what their choice is.
 9            THE COURT:  Oh.
10            MR. MC CONVILLE:  Your Honor, we would have loved
11   to provide the information, but regrettably the conversation
12   didn't start.  Worldwide is what we would like, your Honor,
13   so it's not limited geographically.  That's the response.
14            THE COURT:  Okay.  So the response is you get what
15   you're looking for in return.  I thought that was the
16   agreement.
17            MR. ZELLER:  And so we can pursue the allegations
18   in Brazil and the other countries?
19            THE COURT:  Well, yeah.  I mean you can get
20   discovery on those.
21            MR. ZELLER:  Sure.
22            THE COURT:  Yeah.  Okay.  Okay.
23            MR. ZELLER:  Thank you.
24            MS. HURST:  Thank you, your Honor.
25       (At 11:28 p.m., proceedings were adjourned.)
```

```
 1
 2                              -oOo-
 3
 4                           CERTIFICATE
 5        I hereby certify that pursuant to Section 753,
 6   Title 28, United States Code, the foregoing is a true and
 7   correct transcript of the stenographically reported
 8   proceedings held in the above-entitled matter and that the
 9   transcript page format is in conformance with the
10   regulations of the Judicial Conference of the United States.
11
12   Date:   January 11, 2010
13
14
15                           _____
16                           Deborah D. Parker, Official Reporter
17
18
19
20
21
22
23
24
25
```