1              UNITED STATES DISTRICT COURT
            CENTRAL DISTRICT OF CALIFORNIA
2              EASTERN DIVISION-RIVERSIDE

3

        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING
4

5   MATTEL, INC.,                    )
                                     )
6                Plaintiff,          )
                                     )
7   V.                               ) DOCKET NO. CV 04-09049
                                     )      Volume II
8   MGA ENTERTAINMENT, INC., ET AL.,)
                                     )
9                Defendants.         )
    _____)
10

11        REPORTER'S TRANSCRIPT OF ORAL PROCEEDINGS
                  Riverside, California
12             Tuesday, April 22, 2008

13

              PHYLLIS A. PRESTON, CSR
14        Federal Official Court Reporter
          United States District Court
15             3470 Twelfth Street
          Riverside, California 92501
16             stenojag@aol.com

17

18

19

20

21

22

23

24

25

1                              <u>APPEARANCES</u>

2

    ON BEHALF OF MATTEL, INC.:
3                              QUINN EMANUEL
                               BY:  JOHN QUINN
4                                   MICHAEL ZELLER
                                    R. DYLAN PROCTOR
5                              865 S. FIGUEROA STREET, 10TH FLOOR
                               LOS ANGELES, CALIFORNIA 90017
6

7   ON BEHALF OF MGA ENTERTAINMENT:
                               SKADDEN, ARPS, SLATE, MEAGHER & FLOM
8                              BY:  THOMAS NOLAN
                                    JASON RUSSELL
9                              333 SOUTH GRAND AVENUE
                               LOS ANGELES, CALIFORNIA 90071-3144
10

11  ON BEHALF OF CARTER BRYANT:
                               KEKER & VAN NEST
12                             BY:  CHRISTA ANDERSON
                                    MATTHEW WERDERGER
13                                  AUDREY WALTON-HADLOCK
                               710 SANSOME STREET
14                             SAN FRANCISCO, CALIFORNIA 94111-1704

15

16

17

18

19

20

21

22

23

24

25

```
 1              TUESDAY, APRIL 22, 2008, RIVERSIDE, CALIFORNIA

 2                            ---o0o---

 3              THE COURT:  Very well, counsel.  You may proceed.

 4              Mr. Nolan, were you finished?

 5              MR. NOLAN:  No, Your Honor.

 6              Your Honor, I apologize.  You had asked me, you

 7    know, what I would take out of here, and all I would say to

 8    that, Your Honor, is, we've cited in our record to the

 9    testimony of all of the experts that we've submitted, that,

10    for instance, hair and clothes not copyrighted would have to

11    be removed before you would make your analysis.

12              The accessories, Your Honor, I would imagine that

13    our kids have knapsacks on them, that's not protectable.

14              Is it a particular fashion?  Well, they're

15    different.  They're different fashions.  If you look at that

16    in terms of the accessories, some of the other accessories,

17    the names, Bratz, Jade, Yasmine, copyright law doesn't

18    protect names.  The sassy bratty fashion dolls, copyright law

19    doesn't protect ideas or even concepts.  Fashion dolls are

20    prior art and their characteristics have been approved.

21              You talk about the ensemble, we don't have them up

22    here, but if you look at the shop for friends reflecting

23    different racial and ethnic backgrounds, copyright law

24    doesn't protect those ideas and concepts.  They're not an

25    original either.  The Spice Girls is a perfect example of
```

1    that.  Mr. Quinn is getting some fun out of some of the

2    things that we're talking about, disproportionately large

3    head, large eyes, large feet, oversized limbs.

4              Look at Seventeen magazine.  Look at the Seventeen

5    magazine that's in the record, okay?  The Paris Blues and

6    Steve Madden ad, are those original ideas that are subject to

7    copyright protection?  Absolutely not.

8              Standard dolls and shapes and features, they're not

9    original.  God made the human anatomy.  These poses, Your

10   Honor, those poses are actually manipulated by Mattel to show

11   this comparison.  The poses aren't subject to copyright

12   protection.  They're not original.  The joints -- if you look

13   at the other doll, you would say they're constrained by the

14   functionality of the dolls.  Standard body proportions, those

15   aren't protectable.  Dolls have arms and forearms and lengths

16   of the waist size and everything else, and Mr. Berkley goes

17   into great detail, and we've submitted that in response.

18             The standard facial features, the space under the

19   eyes, based on the Goldberger case, eyes, nose, mouth, et

20   cetera, are the standard of the anatomy, that has to be

21   removed under the extrinsic analysis when you start making

22   the comparison.

23             Lastly, I think I made this point as to fashion --

24             THE COURT:  I think I understand your argument,

25   counsel, on this.

```
 1            MR. NOLAN:  But they want you to skip that process.
 2   Your Honor, if you do so, expect to see reversible error in
 3   the Ninth Circuit.   Apple and other cases are legendary.  You
 4   have to do this filtration.
 5            THE COURT:  Mr. Quinn, I guess it's the point
 6   Mr. Nolan was making that -- I haven't -- I probably skipped
 7   over this.  This is one issue that I haven't really worked up
 8   as much as the other issues, that I have not really gone
 9   through these expert reports attended to this issue, but I
10   will do so.  But there does seem to be -- I see room for a
11   factual issue here, a factual dispute.  Looking at it, first
12   reaction is exactly as you suggest, but these expert reports
13   apparently go into some detail.
14            MR. QUINN:  Well --
15            THE COURT:  The factual issues.
16            MR. QUINN:  The first issue as to protectability,
17   Your Honor, that's a question for the Court.
18            THE COURT:  I understand that.
19            MR. QUINN:  And if the Court is struggling with
20   that issue, I would submit the Court needs to have a hearing
21   on that, and I don't think the Court needs to do that, but
22   that's not something that goes to the jury, that's something
23   for the Court as to what's original and whether it's
24   protectable.
25            But really I think they're trying to lead the Court
```

```
 1   down the wrong road here on the concept of originality.  We

 2   are not saying that we win because, you know, the Bratz doll

 3   has big feet and the drawing had big feet or that they both

 4   have big heads or they have oversized eyes, that would be

 5   claiming protection for ideas and that's what Monell does in

 6   his report.  You know, I rushed through that, but he said,

 7   you know, we press through the colander and out comes the

 8   idea of a group of multi racial girls with attitude that are

 9   kind of sassy.

10           They are trying to entice you, Your Honor.  They

11   are trying to entice you to filter out ideas rather than the

12   particular forms of expression, particular forms of

13   expression.  I go back to that Goldberger case where the

14   Court said, look, there's lot's of different ways of doing a

15   perk nose, a bow mouth and widely spaced eyes and they're all

16   protectable.

17           THE COURT:  All right.  Counsel, this is what I'm

18   going to do, because I don't feel -- I am going to take you

19   up on your suggestion.  I'm going to have a separate hearing

20   on this protectability and originality issue.  I just don't

21   feel I'm in a position to probably ask the questions that I

22   need to ask on this.

23           MR. QUINN:  You know, they challenged us that we

24   hadn't given you the evidence that you needed.  We did move

25   on this.
```

1          THE COURT:  You did move on this.

2          MR. QUINN:  And they challenged us that we hadn't

3    given you any evidence to reach a conclusion.  Your Honor, we

4    gave you their sworn statements.  We gave you the evidence

5    that they sued people saying this was original.  We gave you

6    the statement of Mr. Larian, his testimony when he saw this,

7    "I've never seen anything like this."  We gave you the law

8    that says there's a presumption of originality that comes

9    with copyright registration.  That's where we are.  So we've

10   met our burden that these are original.

11         THE COURT:  I'm not saying that you haven't,

12   counsel.  But, like I say, this is something I want to take a

13   closer look at.

14         Our next hearing in this, I presume we have another

15   hearing on something on Monday.

16         MR. QUINN:  I don't know.

17         MS. WALTON-HADLOCK:  I suspect not, Your Honor, if

18   that's the day of the mediation.

19         THE COURT:  I'm sorry?

20         MS. WALTON-HADLOCK:  I suspect not if that's the

21   day of the settlement conference.

22         THE COURT:  Oh, that's the date of the settlement

23   conference.

24         MR. NOLAN:  I actually think some things have been

25   set just by the ordinary course before the mediation was set,

```
 1   and one of the things I was going to raise is whether or not

 2   we can move whatever is set for Monday to the following

 3   Monday.

 4              THE COURT:  Do we have anything set for Monday?

 5              MR. NOLAN:  I think that there's an ex parte.

 6              THE COURT:  I know there is one ex parte that's

 7   sitting on my desk right now.

 8              MR. NOLAN:  I believe that's the only one that I

 9   have.

10              THE COURT:  That was an ex parte from -- I thought

11   it was from Mattel.  Did Mattel submit an ex parte to strike

12   some expert?

13              MR. PROCTOR:  Correct.

14              THE COURT:  So I know I have an ex parte from

15   Mattel.  That's sitting on my desk.

16              MR. PROCTOR:  I'm not aware of the notice motion.

17              MR. NOLAN:  Your Honor, I believe that there's an

18   appeal -- I apologize, I didn't mean to step on you.

19              MR. PROCTOR:  Oh, no.  I'm just saying I'm not

20   aware of a notice motion if there is one.

21              MR. NOLAN:  It's not a notice motion.  I think it's

22   the appeal from Judge Infante with respect to the NHB files

23   that I referred to in the statute of limitations.

24              THE COURT:  Well, what I'll do is, I'll take a look

25   at the docket, and I'm going to reserve for Ambassador
```

 1   Prosper next Monday.  You already have that on calendar and I

 2   won't let it interfere with that at all.  What we'll do is,

 3   we'll set something for May 5th.  What I'll do is, I'll

 4   collect together whatever remains outstanding, set it for May

 5   5th along with the hearing on this particular issue.

 6          I will be issuing an order most likely this week

 7   related to those issues on summary judgment that I feel

 8   comfortable ruling on at this point.  If there are any other

 9   issues that I want to hear further argument on or I want to

10   defer ruling on, I'll set those for May 5th as well.

11          MR. NOLAN:  Your Honor, with respect to this

12   hearing, we wholeheartedly agree that a hearing has to be

13   held on this.  I'd only point out from the scheduling point

14   of view that Mr. Vilppu has not been deposed yet.  We offered

15   him up for May 2nd.  He had the flu and so we had to

16   reschedule it.  We offered May 2nd for the deposition or May

17   15th, and my belief is that they accepted May 15th.  May 2nd

18   is still available if you want to have the hearing on May

19   5th.  I just think that the record should be complete.  There

20   has been no deposition of Mr. Vilppu, for instance, on that

21   point.  So I'd raise that.

22          And then the other argument or other suggestion I

23   have, Your Honor, is that in many ways, and I use this term

24   loosely, this hearing could be in the form of a Markman type

25   of analysis when you go into the meets and bounds of what's

```
 1    covered by the claims in a patent application.

 2              Your Honor, we would ask that if you have that

 3    hearing that we be allowed to actually put forth -- the

 4    record is closed.  I mean, there is not going to be any new

 5    experts or anything else coming in.  The record is what it

 6    is.  That we be allowed to have the experts appear,

 7    Mr. Vilppu, for instance, and be subject to

 8    cross-examination, because I do think one of the issues that

 9    you're going to have to deal with is the credibility of

10    Mr. Loetz versus Mr. Vilppu.

11              THE COURT:  What I'll do is, I'll set this for 1:30

12    on May 5th so that it doesn't jam up the rest of the civil

13    calendar.

14              Mr. Quinn.

15              MR. QUINN:  I'm sorry, Your Honor.  I can't be here

16    May 5th.  Is there any chance that we could do this -- I have

17    an arbitration starting May 5th that's going to go the next

18    two weeks.  Is there any chance that we could do this on the

19    19th?  I think we've also requested --

20              THE COURT:  On when?

21              MR. QUINN:  The 19th, May 19th.  I think we've also

22    -- there's a stipulation that's been submitted to the Court

23    requesting that the pretrial conference be continued to that

24    date as well.

25              THE COURT:  Is that correct, Mr. Nolan?
```

```
 1              MR. NOLAN:  That's correct, Your Honor.  Mr. Quinn
 2    told me about the problem he had on May 5th and we
 3    accommodated, as well as Carter Bryant, and the only thing
 4    that we asked, so that nobody was going to be prejudiced, is
 5    that the pretrial conference statement be filed as of May 5th
 6    but include the time limitations that you requested and also
 7    ordered us to identify all the documents that would be
 8    aligned up with the witnesses.  So we're going to get the
 9    benefit of all of that by May 5th, which is critical, but we
10    accommodated Mr. Quinn's  schedule.  It's not -- I mean, I
11    didn't move it off your calendar.  We submitted a stipulation
12    still subject to your order.
13              THE COURT:  I understand.  All right.  Well, let me
14    take a look at that stipulation.  This will actually give the
15    Court some additional time to prepare its order on the
16    summary judgment as well.
17              I'll issue a minute order, not today but tomorrow,
18    clarifying how we're proceeding.
19              MR. QUINN:  Thank you, Your Honor.
20              MR. NOLAN:  Your Honor, is it possible, I just
21    raise this as a possibility, is it possible that we have this
22    hearing closer to the start of trial?
23              THE COURT:  May 19th is pretty close.
24              MR. NOLAN:  Your Honor --
25              THE COURT:  What were you thinking, counsel?
```

1            MR. NOLAN:  -- on this side of the table it's light

2    years away from the start of trial.  Every day is -- I mean,

3    that's somewhat facetious.  I know it's close, but I'm just

4    saying that if that doesn't also work out, because it is an

5    important hearing and I think the Court will need to take

6    some testimony on it.  That's what we would respect.  Thank

7    you.

8            THE COURT:  Very well.  Anything from Carter

9    Bryant?

10            MS. ANDERSON:  No.  Thank you, Your Honor.

11            THE COURT:  I know it's late in the day.  We have

12    some rooms reserved for you and Ambassador Prosper.  I expect

13    that you will cooperate with them.

14            Thank you for your argument this morning and this

15    afternoon.

16                    (Proceedings concluded)

17                        ---o0o---

18

19

20

21

22

23

24

25

# C E R T I F I C A T E

## DOCKET NO. CV 04-09049

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and accurate transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

_____
PHYLLIS A. PRESTON, CSR          DATED:  July 24, 2008
Official U.S. Court Reporter
License No. 8701