UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

- - -

HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

- - -

CARTER BRYANT,                        )
                                      )
                    Plaintiff,        )
                                      )
          vs.                         )   No. ED CV 04-09049
                                      )   (LEAD LOW NUMBER)
MATTEL, inc.,                         )
                                      )
                    Defendant.        )
_____)
AND RELATED ACTIONS,                  )
_____)


REPORTER'S TRANSCRIPT OF PROCEEDINGS

RIVERSIDE, California

Monday, june 26, 2006

10:56 A.M.


THERESA A. LANZA, RPR, CSR
FEDERAL Official Court Reporter
3470 12th Street, Rm. 134
RIVERSIDE, California  92501
(951) 274-0844
Csr11457@sbcglobal.net

```
 1   APPEARANCES:

 2

 3   On behalf of Plaintiff/COUNTER DEFENDANT MATTEL, INC.:

 4
                         QUINN EMANUEL
 5                       BY:  JON D. COREY
                         BY:  JOHN B. QUINN
 6                       865 S. FIGUEROA STREET,
                         10TH FLOOR
 7                       LOS ANGELES, California  90017
                         (213) 624-7707
 8

 9
     on behalf of PLAINTIFF/COUNTER COMPLAINANT/DEFENDANT,
10   CARTER BRYANT:

11                       LITTLER MENDELSON
                         BY:  KEITH A. JACOBY
12                       BY:  DOUGLAS A. WICKHAM
                         2049 CENTURY PARK EAST,
13                       FIFTH FLOOR
                         LOS ANGELES, California  90067
14                       (310) 553-0308

15

16   ON BEHALF OF MGA ENTERTAINMENT:

17                       O'MELVENY & MYERS LLP
                         BY:  DIANA M. TORRES
18                       BY:  DALE CENDALI
                         400 SOUTH HOPE STREET
19                       LOS ANGELES, California  90071
                         (213) 430-6000
20

21

22

23

24

25
```

1          RIVERSIDE, CALIFORNIA; monday, june 26, 2006; 10:56 A.M.

2                              -oOo-

3          THE CLERK:  CALLING CALENDAR ITEM EIGHT, in the

4     MATTER OF CARTER BRYANT VERSUS MATTEL AND RELATED ACTIONS, CASE

5     NUMBER CV 04-9049 AS THE LEAD LOW-NUMBERED CASE.                    10:57

6          COUNSEL, COME FORWARD AND STATE YOUR APPEARANCES FOR

7     THE RECORD.

8          MR. QUINN:  JOHN QUINN AND JOHN COREY FOR PLAINTIFF,

9     COUNTER DEFENDANT, AND PROBABLY SOMETHING ELSE, MATTEL INC.

10         MR. JACOBY:  KEITH JACOBY FOR PLAINTIFF, COUNTER             10:57

11     CLAIMANT, AND DEFENDANT CARTER BRYANT.

12         MS. CENDALI:  DALE CENDALI, O'MELVENY & MEYERS, FOR

13     MGA ENTERTAINMENT.

14         MS. TORRES:  DIANE TORRES, ALSO FOR MGA.

15         MR. WICKHAM:  DOUGLAS WICKHAM FOR PLAINTIFF AND             10:57

16     COUNTER COMPLAINANT AND DEFENDANT CARTER BRYANT.

17         THE COURT:  GOOD MORNING TO YOU ALL.

18         THE FIRST ISSUE I WANT TO ADDRESS IS THIS MOTION TO

19     DISMISS THE COUNTER CLAIMS OF BRYANT AGAINST MATTEL.  THE

20     MOTION WAS BROUGHT BY MATTEL.                                     10:58

21         LET ME BEGIN WITH COUNSEL FOR BRYANT.

22         WHO IS GOING TO SPEAK ON BEHALF OF BRYANT WITH

23     RESPECT TO THIS MOTION?

24         MR. WICKHAM:  I WILL, YOUR HONOR.

25         THE COURT:  THE FIRST ISSUE I'D LIKE TO ADDRESS IS          10:58

1   THE SCOPE OF YOUR COUNTERCLAIM.  YOU BRING YOUR COUNTER CLAIM

2   NOT ONLY ON BEHALF OF YOUR CLIENT, BUT ALSO ON BEHALF OF THE

3   SIMILARLY SITUATED INDIVIDUALS.

4           I'M HAVING TROUBLE WITH THE BASIC AND CONCEPT OF

5   STANDING OF THOSE OTHER INDIVIDUALS AT THIS POINT.  WHAT          10:58

6   INJURY, IN FACT, HAS BEEN ALLEGED?  BASICALLY THAT'S IT.  I

7   DON'T HAVE ANYTHING ALLEGED THAT SEEMS TO SUGGEST THERE IS

8   STANDING FOR THOSE OTHER SIMILARLY SITUATED INDIVIDUALS.

9           MR. WICKHAM:  CERTAINLY, YOUR HONOR.

10          THE COURT:  OTHER THAN THAT BROAD BASED ALLEGATION          10:58

11  THAT THEY ARE SIMILARLY SITUATED, THERE'S NOTHING ELSE IN THE

12  COMPLAINT.

13          MR. WICKHAM:  THE CALIFORNIA LEGISLATURE ENACTED A

14  MINI UTC STATUTE, CALIFORNIA BUSINESS AND PROFESSIONS CODE

15  SECTION 17200, AND THERE'S SEVERAL RELATED PROVISIONS WITHIN      10:59

16  THAT SAME SECTION OF THE BUSINESS AND PROFESSIONS CODE.

17          THE PRINCIPLES UNDERLYING SECTION 17200 WERE TO ALLOW

18  FOR REPRESENTATIVE ACTIONS IN AN ACTION AGAINST, IN THIS CASE,

19  AN EMPLOYER, WHERE THE EMPLOYER HAS ENGAGED IN CONDUCT WHICH IS

20  UNLAWFUL, FRAUDULENT OR UNFAIR.  IT CAN BE ANY ONE OF THOSE       10:59

21  THINGS; IT CAN BE ALL THREE OF THOSE THINGS.

22          AND THE CONCEPT OF 17200 -- AND IT REALLY IS

23  SOMETHING THAT IS UNIQUE TO STATE LAW.  I MEAN, WHEN I WAS

24  LITIGATING WITH THE U.S. ATTORNEY'S OFFICE IN WASHINGTON, D.C.,

25  I NEVER SAW THESE SORTS OF CLAIMS.  IT SEEMED TO BE A LITTLE      11:00

1   BIT PECULIAR WHEN I MOVED BACK INTO PRIVATE PRACTICE.

2            BUT IN CALIFORNIA THERE'S A VERY STRONG BODY OF LAW

3   THAT ALLOWS FOR THESE REPRESENTATIVE ACTIONS WHERE YOU HAVE

4   SOMEONE WHO'S SUING, CHALLENGING SPECIFIC TYPES OF PRACTICES.

5            THE COURT:  THEY ARE STILL SUBJECT TO THE                    11:00

6   CONSTITUTIONAL REQUIREMENT OF STANDING.

7            MR. WICKHAM:  THAT IS CORRECT, YOUR HONOR.

8            THE COURT:  ADDRESS THAT ISSUE.

9            MR. WICKHAM:  WHAT WE ALLEGE HERE, AND WHAT IS, IN

10  FACT, TRUE, YOUR HONOR, IS THAT AT LEAST FOR THE LAST TEN         11:00

11  YEARS, FOR THE LAST DECADE, MATTEL HAS BEEN FORCING UPON ITS

12  EMPLOYEES A CONFIDENTIALITY AND INVENTIONS ASSIGNMENT WHICH IS

13  ILLEGAL AND UNFAIR AND FRAUDULENT IN SEVERAL MATERIAL RESPECTS.

14           WE DO ALLEGE THAT THE PROVISIONS OF THAT AGREEMENT

15  ESSENTIALLY HAVE BEEN CARRIED FORWARD LOCK, STOCK AND BARREL     11:00

16  FOR THE LAST TEN YEARS.

17           THE COURT:  LET'S ASSUME ALL THAT IS TRUE -- WHICH

18  THE COURT IS NOT FINDING -- BUT ASSUMING THAT IS TRUE, THE HARM

19  IS ONLY TRIGGERED WHEN ONE OF THESE EMPLOYEES LEAVES, ATTEMPTS

20  TO LEAVE, IS SOMEHOW HARMED IN THAT PROCESS, FINANCIALLY OR      11:01

21  OTHERWISE.  AND THAT'S WHAT YOU HAVE NOT ALLEGED.

22           MR. WICKHAM:  ACTUALLY, YOUR HONOR, THAT IS ENTIRELY

23  ACCURATE.  THE HARM IS ACTUALLY THE MINUTE THAT THEY HAVE THEM

24  SIGN THE AGREEMENT IN THE FIRST INSTANCE.

25           THE COURT:  HOW ARE THEY HARMED BY THAT?                 11:01

```
 1              HOW DO YOU ALLEGE THEY ARE HARMED BY THAT?

 2         MR. WICKHAM:  BECAUSE WHEN THE EMPLOYEES ARE FORCED

 3    TO SIGN THIS DOCUMENT, THEY ARE BEING FORCED TO SIGN A DOCUMENT

 4    THAT ON ITS FACE IS VOID AND UNLAWFUL.

 5         THE COURT:  YOU CLAIM YOU DON'T EVEN UNDERSTAND WHAT     11:01

 6    THE DOCUMENT IS; THAT IT'S AN ADHESION CONTRACT; THAT IT'S NOT

 7    EXPLAINED TO THEM; THAT THE TERMS ARE VAGUE.

 8         SO HOW CAN THEY BE HARMED BY SOMETHING WHICH THEY

 9    DON'T EVEN UNDERSTAND WHAT THEY ARE SIGNING, ASSUMING THAT TO

10    BE THE CASE?                                                 11:01

11         MR. WICKHAM:  HOW CAN THEY BE HARMED?

12         LET ME GIVE YOU A MORE CRYSTAL EXAMPLE, AND THEN I'LL

13    FOCUS BACK TO THE PARTICULAR CONTRACT HERE.

14         IN CALIFORNIA, UNDER BUSINESS AND PROFESSIONS CODE

15    SECTION 16600, EVERY CONTRACT BY WHICH SOMEONE IS LIMITED IN  11:02

16    THEIR BUSINESS, TRADE OR PROFESSION, IS, TO THAT EXTENT, VOID.

17    THIS IS BUSINESS AND PROFESSIONS CODE 16600; IT ESTABLISHES A

18    BROAD PUBLIC POLICY IN THE STATE OF CALIFORNIA PROHIBITING

19    COVENANTS NOT TO COMPETE.

20         THERE'S BEEN A BODY OF CASE LAW DEVELOPED IN THE        11:02

21    CALIFORNIA STATE COURT SYSTEM BEGINNING, I BELIEVE, IN 1998,

22    WITH THE CASE CALLED THE APPLICATION GROUP VERSUS THE HUNTER

23    GROUP, WHERE THE MERE HAVING EMPLOYEES SIGN SUCH AN AGREEMENT

24    CONSTITUTES AN UNFAIR BUSINESS PRACTICE, PER SE, UNFAIR

25    BUSINESS PRACTICE --                                         11:02
```

```
 1            THE COURT:  THIS RAISES A SEPARATE QUESTION I HAVE.

 2   NOT TO COMPLICATE THIS, BUT THE 16600 -- THAT'S AN ISSUE OF

 3   CHARACTERIZATION; WHETHER WE CHARACTERIZE THIS AS AN EFFORT TO

 4   RESTRICT COMPETITION, OR IS THIS AN EFFORT TO OBTAIN EMPLOYEE

 5   LOYALTY?                                                        11:03

 6            AND THE LATTER SEEMS TO BE RECOGNIZED AS A LEGITIMATE

 7   PURPOSE, WHEREAS THE FORMER, AS YOU INDICATED BY 16600, IS NOT.

 8   AND THE COURT IS ALSO STRUGGLING IN THAT CHARACTERIZATION, OR

 9   HOW TO CHARACTERIZE THIS PARTICULAR AGREEMENT.  BUT, LIKE I

10   SAY, I'M STARTING TO GET A FEEL NOW FROM THE INITIAL QUESTION I  11:03

11   HAD.  Perhaps THE TWO ARE RELATED.

12            MR. WICKHAM:  LET ME JUST CONTINUE WITH THIS ONE

13   THOUGHT AND TURN TO THE OTHER, BECAUSE YOU'RE EXACTLY CORRECT

14   WITH REGARD TO PERMISSIBLE TYPES OF THINGS, GARNERING EMPLOYEE

15   LOYALTY, VERSUS THOSE THINGS THAT ARE IMPERMISSIBLE, WHICH ARE  11:03

16   TAMPING OUT AND PREVENTING EMPLOYMENT MOBILITY, WHICH IS A

17   STRONG PUBLIC POLICY IN THE STATE.

18            THE PRINCIPLES THAT WERE FIRST ARTICULATED IN THE

19   APPLICATION GROUP VERSUS HUNTER GROUP HAVE BEEN ADOPTED IN

20   SUBSEQUENT COURT OF APPEAL DECISIONS IN THE STATE WHERE THE     11:03

21   MERE FORCING EMPLOYEES TO SIGN THE AGREEMENT CAN GIVE RISE TO

22   AN UNFAIR BUSINESS PRACTICE BECAUSE YOU'RE HAVING SOMEBODY SIGN

23   ILLEGAL CONTRACTS.

24            SO AS A CONSEQUENCE, THE DAMAGE TO THE INDIVIDUAL IS

25   THE MOMENT THAT SOMEBODY COMES IN -- IN THIS CASE, THEIR        11:04
```

```
1   EMPLOYER -- AND FORCES THEM TO SIGN AN ILLEGAL CONTRACT.

2           THE COURT:  WHAT'S THE HARM, THOUGH, COUNSEL?  I

3   UNDERSTAND THAT THE STATUTE MAY RENDER -- THERE MAY BE

4   DECISIONS TO SUPPORT THAT LEGAL POINT; BUT FOR ARTICLE THREE

5   CONSTITUTIONAL PURPOSES, WHAT IS THE HARM?                        11:04

6           MR. WICKHAM:  THE HARM IS THAT THE INDIVIDUALS ARE

7   SIGNING SOMETHING THAT IS ILLEGAL IN THE STATE OF CALIFORNIA,

8   WHICH WOULD GIVE RISE TO -- WHICH POTENTIALLY -- THERE'S

9   ACTUALLY A COUPLE --

10          THE COURT:  POTENTIALLY.  BECAUSE THE HARM DOES NOT     11:04

11  OCCUR --

12          MR. WICKHAM:  -- WHICH WOULD CHILL THE EMPLOYEE'S

13  ABILITY TO CONDUCT THEMSELVES, CONDUCT THEIR DAY-TO-DAY AFFAIRS

14  AND MAKE WHAT DECISIONS THAT THEY WOULD OTHERWISE BE MAKING IF

15  THEY WEREN'T THE SUBJECT OF THESE ILLEGAL CONTRACTS.            11:05

16          THIS TIES INTO THE PRINCIPLES OF EMPLOYEE MOBILITY.

17  EMPLOYEE MOBILITY, UNDER THE BANCROFT VERSUS GLEN CASE, AND A

18  HOST OF OTHER --

19          THE COURT:  SO YOU SUGGEST IT CHILLS THEIR ABILITY TO

20  MAKE A DECISION DOWN THE ROAD.                                  11:05

21          MR. WICKHAM:  ABSOLUTELY, YOUR HONOR.

22          IF THEY ARE SUBJECT TO THE IMPERMISSIBLE RESTRAINTS

23  THAT ARE ARTICULATED IN THIS AGREEMENT, THEN THEIR FREEDOM TO

24  BE ABLE TO MOVE ACROSS THE STREET TO WORK FOR A COMPETITOR,

25  WHICH IS GUARANTEED IN ENUMERABLE CALIFORNIA SUPREME COURT      11:05
```

1  DECISIONS, COURT OF APPEALS DECISIONS, AS WELL AS UNDERLYING

2  SECTION 16600, WOULD BE CHILLED.

3          IN ADDITION, HOWEVER, OUR CLAIM IN THIS CASE GOES

4  BEYOND JUST THE ESTABLISHMENT OF THE CONTRACT.  OUR CLAIMS IN

5  THIS CASE GO NOT ONLY WITH THE ESTABLISHMENT OF THE CONTRACT,          11:05

6  BUT ALSO WITH ITS SUBSEQUENT IMPLEMENTATION.

7          ONE OF THE THINGS THAT I'M VERY FAMILIAR WITH, AND

8  ALSO THAT I HAVE LEARNED FROM CO-DEFENSE COUNSEL MGA, EVERY

9  TIME A FORMER MATTEL EMPLOYEE GOES TO WORK AT MGA, THAT FORMER

10 EMPLOYEE GETS A NASTIGRAM LETTER -- I'M NOT SURE IF I          11:06

11 CHARACTERIZED IT RIGHT, WHETHER IT'S A DEMAND LETTER OR

12 SOMETHING SHORT OF THAT -- THAT SAYS 'YOU HAVE ALL OF THESE

13 OBLIGATIONS UNDER THIS AGREEMENT, AND YOU BETTER ADHERE TO

14 THOSE,' AND SO ON AND SO FORTH.

15         IT'S INTERESTING THAT IT'S IN SOME OF THOSE          11:06

16 COMMUNICATIONS WHERE MATTEL SPECIFICALLY ADMONISHES THE

17 EMPLOYEES -- FORMER EMPLOYEES, THAT IS -- NOT TO DISCLOSE ANY

18 INFORMATION ABOUT OTHER PERSONNEL AT MATTEL OR ANY COMPENSATION

19 OR INFORMATION AT MATTEL.

20         IN THEIR BRIEFS, MATTEL MADE A BIG POINT THAT THE          11:06

21 CONTRACT ITSELF CONTAINS NO SUCH RESTRICTIONS.  AND THEY ARE

22 ABSOLUTELY CORRECT.  AND HERE IS THE GENERAL COUNSEL OF MATTEL

23 SENDING OUT LETTERS TO ALL THESE FORMER EMPLOYEES:  'YOU CAN'T

24 DISCLOSE THIS INFORMATION' THAT ISN'T EVEN COVERED WITHIN THE

25 CONTRACTS, YOUR HONOR.          11:07

```
 1            THIS GOES TO THE NUB OF THE UNFAIR BUSINESS PRACTICE
 2   CLAIM, THE HARM TO THESE INDIVIDUALS.  IT CHILLS THEM WHILE
 3   THEY ARE WORKING AT MATTEL; IT RESTRAINS THEM FROM THEIR
 4   ABILITY TO PURSUE WHAT THEY ARE ALLOWED TO DO AS A MATTER OF
 5   CALIFORNIA PUBLIC POLICY, WHICH IS THE FREEDOM TO GO ACROSS THE      11:07
 6   STREET AND WORK FOR A COMPETITOR, PROVIDED THEY DON'T DISCLOSE
 7   TRADE SECRETS, OF COURSE.
 8            THE COURT:  THAT'S THE WHOLE POINT.
 9            HOW DO YOU BALANCE THIS WITH THIS NOTION OF LOYALTY?
10   AND HOW DO I DISTINGUISH THIS FROM A LEGITIMATE EFFORT BY           11:07
11   MATTEL TO INSIST UPON EMPLOYEE LOYALTY?
12            MR. WICKHAM:  THERE ARE A COUPLE OF DIFFERENT THINGS,
13   YOUR HONOR.
14            WE'RE ON A RULE 12 MOTION.  YOUR OWN STANDING ORDER
15   ADDRESSES THE RELATIVE DEGREE THAT SUCH MOTIONS ARE AFFORDED.       11:07
16   THERE'S NO QUESTION THAT WITH REGARD TO THESE CLAIMS HERE,
17   MATTEL HAS SUFFICIENT NOTICE OF A RULE 17200 CLAIM; OF A
18   RESCISSION CLAIM; OF A FRAUDULENT CONCEALMENT CLAIM; OF A
19   DECLARATORY RELIEF CLAIM.  THERE ISN'T ANY QUESTION ABOUT THAT.
20   THEY HAVE NICELY BRIEFED IT.                                        11:08
21            IN FACT, MANY OF THE CASES THEY CITE TO IN ATTEMPTING
22   TO CHALLENGE THE PLEADING ARE THE VERY CASES WE CAN BE CITING
23   BACK TO SHOW EXACTLY HOW AND WHY THE VARIOUS NATURE OF THE
24   CLAIMS HAVE BEEN PROPERLY ALLEGED.
25            THE COURT:  I UNDERSTAND WHAT KIND OF CLAIM YOU'VE          11:08
```

1  BROUGHT.  WHAT'S NOT CLEAR TO THE COURT AT THIS POINT IS

2  EXACTLY WHAT ALLEGATIONS ARE SUPPORTING THESE CLAIMS.

3          FOR EXAMPLE, YOU ARGUE THAT IT'S UNCONSCIONABLE.

4  WHAT ABOUT IT IS UNCONSCIONABLE?  YOU CAN CERTAINLY

5  CHARACTERIZE THIS VERY EASILY AS SOMETHING WHICH IS SIMPLY AN          11:09

6  EFFORT -- EVEN IF I ASSUME THAT PROCEDURALLY IT'S AN ADHESION

7  CONTRACT -- IS AN EFFORT BY MATTEL TO REQUIRE EMPLOYEE LOYALTY

8  BY ITSELF UNCONSCIONABLE?

9          MR. WICKHAM:  THE NINTH CIRCUIT IN THE LAST SEVERAL

10  YEARS -- I'D SAY ACTUALLY ABOUT THE LAST SEVEN OR EIGHT YEARS          11:09

11  -- HAS DEVELOPED A DOCTRINE AND A BODY OF LAW GOVERNING

12  UNCONSCIONABILITY.  ACTUALLY, IT'S SOME OFFSHOOT FROM

13  CALIFORNIA COURT DECISIONS -- TING VERSUS AT&T AND INGALL

14  VERSUS CIRCUIT CITY -- AND THOSE CASES HAVE ANALYZED THE

15  UNCONSCIONABILITY ISSUE IN THE CONTEXT OF PRE-DISPUTE          11:09

16  ARBITRATION AGREEMENTS IN THE EMPLOYMENT CONTEXT.  THOSE CASES

17  THEMSELVES APPLIED AND ANALYZED THE CALIFORNIA SUPREME COURT'S

18  DECISION IN ALMENDAREZ.

19          THERE'S TWO ELEMENTS TO ESTABLISH A CLAIM OF

20  UNCONSCIONABILITY:  ONE IS PROCEDURAL UNCONSCIONABILITY; THE          11:10

21  OTHER IS SUBSTANTIVE UNCONSCIONABILITY.  THE PROCEDURAL

22  UNCONSCIONABILITY GOES TO THE MANNER OF FORMATION.  IS THE

23  AGREEMENT ON A PRE-PRINTED FORM CONTRACT, A CONTRACT OF

24  ADHESION?  IS THERE ANY MEANINGFUL OPPORTUNITY FOR

25  NEGOTIATIONS?  IS IT PRESENTED TO THE EMPLOYEE ON A TAKE IT OR          11:10

1   LEAVE IT BASIS?

2           WE WOULD SUBMIT THAT, FIRST OF ALL, THOSE ARE PLED IN

3   THE COUNTERCLAIM AND THAT THOSE ESTABLISH THE EXISTENCE OF

4   PROCEDURAL UNCONSCIONABILITY.

5           THE COURT:  I'M ASSUMING THAT FROM MY QUESTION, IS          11:10

6   THE SUBSTANTIVE UNCONSCIONABILITY --

7           MR. WICKHAM:  WITH REGARD TO SUBSTANTIVE

8   UNCONSCIONABILITY, THIS GOES TO SOME OF THE CLAIMS THAT ARE

9   PART AND PARCEL OF THE 17200 CLAIM:  ARE THERE PROVISIONS IN

10  THE AGREEMENT THAT ARE UNFAIR OR UNLAWFUL?                        11:10

11          AND WE WOULD SUBMIT THAT, FIRST OF ALL, WITH REGARD

12  TO THE INVENTIONS ASSIGNMENT, AS DRAFTED HERE, IT VIOLATES

13  CALIFORNIA LABOR CODE SECTION 2870 AND 2871.

14          THE COURT:  WHICH IS SPECIFICALLY REFERENCED IN THE

15  AGREEMENT, IS IT NOT?                                            11:11

16          MR. WICKHAM:  YOUR HONOR, IT'S REFERENCED IN THE

17  AGREEMENT, BUT IT IS NOT REFERENCED IN THE MANNER THAT THE

18  STATUTE ACTUALLY CONTEMPLATES.  THE STATUTE SPECIFICALLY

19  CONTEMPLATES THAT THE NATURE OF ANY ASSIGNMENT, AS A

20  SUBSTANTIVE MATTER OF THE CONTRACT, WOULD NOT EXTEND TO THOSE    11:11

21  MATTERS.  2871 SAYS THAT ANY ASSIGNMENT THAT GOES BEYOND WHAT

22  2870 PERMITS IS, TO THAT EXTENT, VOID.

23          THE NATURE OF THE ASSIGNMENT HERE IS THAT IT IS A

24  BROAD BASED ASSIGNMENT OF ALL INVENTIONS DURING THEIR

25  EMPLOYMENT; ALL THINGS THAT WERE CONCEIVED AND PRACTICED.       11:11

```
 1        NOW, TWO PARAGRAPHS DOWN, IT SAYS, 'OF COURSE,
 2   NOTHING IN HERE WILL APPLY IF 2870 APPLIES.'
 3        WELL, THERE'S TWO RESPONSES WITH REGARD TO THAT.
 4        FIRST OF ALL, THAT IS A SEPARATE NOTICE THAT THEY ARE
 5   REQUIRED TO PROVIDE IN THE CONTRACT UNDER 2872.  AND SECONDLY,     11:12
 6   THAT IF YOU PUT YOURSELF IN THE POSITION OF AN EMPLOYEE WHO
 7   DOES NOT HAVE A COLLEGE DEGREE; WHO IS GETTING A $30,000 A YEAR
 8   JOB; WHO DOESN'T HAVE THE WHEREWITHAL TO RETAIN COUNSEL TO BE
 9   ABLE TO INFORM THEM WHAT 2870 MEANS...  MY EYES ARE GLAZING
10   OVER; I HAVE NO IDEA; I'M NOT A LAWYER ON THIS.                    11:12
11        YOUR HONOR, WHAT IS PARTICULARLY TELLING ABOUT THIS
12   IS THAT SUBSEQUENT TO THE MOTION, WE DEPOSED MR. BRYANT'S
13   SUPERVISOR, ANN DRISCAL.  THE AGREEMENT IS PREDICATED ON AN
14   ASSIGNMENT OF THINGS THAT WERE CONCEIVED OR THAT WERE REDUCED
15   TO PRACTICE.                                                       11:13
16        I WILL CONFESS, YOUR HONOR, THAT PRIOR TO THIS CASE,
17   I DID NOT KNOW WHAT 'REDUCED TO PRACTICE' WAS; AND, IN FACT, IT
18   IS A TERM OF ART WHICH IS IN THE PATENT FIELD; AND AS AN
19   EMPLOYMENT LAWYER, I'M NOT FAMILIAR WITH THAT.  AND HERE WE'RE
20   EXPECTING 30-YEAR OLD PEOPLE WITHOUT COLLEGE DEGREES TO KNOW       11:13
21   WHAT 'REDUCED TO PRACTICE' MEANS?
22        WELL, WE ASKED MR. BRYANT'S SUPERVISOR, THE ONE WHO
23   WAS CHARGED AT LEAST WITH SOME RESPONSIBILITY FOR THIS
24   AGREEMENT; WE ASKED HER WHETHER OR NOT SHE KNEW WHAT LABOR CODE
25   SECTION 2870 WAS.                                                  11:13
```

```
 1              THE COURT:  I'M AFRAID TO ASK WHAT HER RESPONSE WAS.

 2              MR. WICKHAM:  SHE SAID SHE HAD NO IDEA.

 3              "HAD YOU EVER HEARD THE TERM 'REDUCED TO PRACTICE'

 4   BEFORE?"

 5              "I DON'T THINK SO."                                    11:13

 6              "HAVE YOU EVER HEARD OF LABOR CODE 2870 BEFORE?"

 7              "NO."

 8              SO SOMEHOW, SOMEONE WITHIN MATTEL CAME UP WITH A

 9   NIFTY IDEA TO COME UP WITH AN AGREEMENT WITH TERMS IN THERE

10   THAT ONLY AN ADVANCED PATENT ATTORNEY WOULD BE ABLE TO KNOW AND   11:14

11   UNDERSTAND AND EXPECT THESE INDIVIDUALS TO ACCEPT THESE

12   AGREEMENTS.

13              THE COURT:  THIS LEADS ME TO THE QUESTION I HAD ON

14   YOUR FRAUD CLAIM.

15              YOU'RE CLAIMING THAT THERE WAS NO EXPLANATION GIVEN    11:14

16   AT ALL.

17              MR. WICKHAM:  THAT'S CORRECT, YOUR HONOR.

18              THE COURT:  THAT'S CONSISTENT WITH WHAT YOU'RE

19   DESCRIBING RIGHT NOW.

20              YOU'RE EVEN SUGGESTING THAT THEY COULDN'T EXPLAIN IT   11:14

21   BECAUSE THEY DIDN'T KNOW THEMSELVES, OR AT LEAST SOME OF THE

22   SUPERVISORS DIDN'T KNOW.

23              MR. WICKHAM:  THAT'S CORRECT.

24              THE COURT:  HOW CAN THERE BE FRAUD WHEN THERE'S NO

25   EXPLANATION GIVEN AT ALL?  HOW CAN A MISLEADING EXPLANATION BE    11:14
```

```
 1   GIVEN WHEN NO EXPLANATION IS GIVEN?
 2        MR. WICKHAM:  WELL, THANKS TO THE -- WITH REGARD TO
 3   THE FRAUD CLAIM, THE MARKETING WEST CASE THAT IS CITED IN
 4   MATTEL'S BRIEF, THE MARKETING WEST CASE, COMING OUT OF THE
 5   CALIFORNIA COURT OF APPEAL, HAD SPECIFICALLY ADDRESSED THE      11:14
 6   ISSUE OF 'HOW DO YOU STATE THE CLAIM FOR FRAUDULENT
 7   CONCEALMENT?'
 8        AND THE MARKETING WEST CASE ITSELF CITES TO WARNER
 9   CONSTRUCTION CORP. VERSUS CITY OF LOS ANGELES, 2 CAL. 3D, 285.
10   AND THERE, ACCORDING TO THE WARNER COURT DECISION, "IN         11:15
11   TRANSACTIONS WHICH DO NOT INVOLVE FIDUCIARY OR CONFIDENTIAL
12   RELATIONS, A CAUSE OF ACTION FOR NONDISCLOSURE OF MATERIAL
13   FACTS MAY ARISE IN AT LEAST THREE INSTANCES."
14        "THE DEFENDANT MAKES REPRESENTATIONS BUT DOES NOT
15   DISCLOSE FACTS WHICH MATERIALLY QUALIFY THE FACTS DISCLOSED, OR  11:15
16   WHICH RENDER HIS DISCLOSURE LIKELY TO MISLEAD.  THE FACTS ARE
17   KNOWN OR ARE ACCESSIBLE ONLY TO THE DEFENDANT, AND THE
18   DEFENDANT KNOWS THAT THEY ARE NOT KNOWN TO OR REASONABLY
19   DISCOVERABLE BY THE PLAINTIFF."
20        THE COURT:  SO ARE YOU SUGGESTING THAT THESE ARE          11:16
21   FACTS THAT ARE NOT REASONABLY DISCOVERABLE BY THE PLAINTIFF?
22        MR. WICKHAM:  THE DEFINITION OF 'REDUCED TO
23   PRACTICE,' YOUR HONOR?  ABSOLUTELY.
24        ALSO WITH REGARD TO THE OPERATIVE TERM --
25        THE COURT:  WAIT A SECOND.  THAT'S A TERM OF ART;         11:16
```

```
1   THAT'S A LEGAL PHRASE; RIGHT?

2              THAT WASN'T SOMETHING THAT WAS JUST MADE UP BY JUST

3   MATTEL.

4              MR. WICKHAM:  IT'S A LEGAL PHRASE WITHIN THE LAW OF

5   PATENTS.                                                        11:16

6              THE COURT:  RIGHT.  BUT IT'S NOT SOMETHING THAT

7   MATTEL JUST MADE UP; THEIR OWN SPECIAL CODE WORD FOR THIS.

8              THIS IS A LEGAL PHRASE THAT ANY PATENT ATTORNEY WOULD

9   BE ABLE TO DESCRIBE TO YOUR CLIENT.

10             MOST COMPETENT ATTORNEYS WOULD BE ABLE TO.            11:16

11             MR. WICKHAM:  I WOULD SAY THERE ARE CONFLICTING

12  DEFINITIONS OF WHAT WOULD GIVE RISE TO A REDUCED TO PRACTICE,

13  SUCH THAT -- I THINK THAT TREATISES HAVE BEEN WRITTEN ON THE

14  SUBJECT; LEGIONS OF DECISIONS HAVE BEEN WRITTEN ON THE SUBJECT.

15  I DON'T BELIEVE THAT IT'S WITHIN THE ORDINARY KIN OF GENERAL    11:17

16  PRACTITIONERS IF MR. BRYANT, IN FACT, HAD THE MONEY AND THE

17  WHEREWITHAL TO HIRE A GENERAL PRACTITIONER.

18             IT ABSOLUTELY IS NOT WITHIN THE ORDINARY KIN OF A

19  30-SOMETHING INDIVIDUAL WHO'S COMING IN WHO WANTS TO WORK AT

20  MATTEL WHO WANTS TO DESIGN DRESSES FOR BARBIE OR KEN, OR WHAT   11:17

21  HAVE YOU.

22             THE COURT:  CERTAINLY YOU'RE NOT SUGGESTING THAT A

23  CORPORATION CANNOT USE OR INCORPORATE LEGAL LANGUAGE INTO AN

24  EMPLOYMENT CONTRACT OF SOME SORT SIMPLY BECAUSE THOSE TERMS

25  HAVE SPECIFIC LEGAL DEFINITIONS.                               11:17
```

1       MR. WICKHAM:  WHAT THEY HAVE TO DO, YOUR HONOR, IS --

2  AND THIS IS -- I ACTUALLY THOUGHT IT WAS INTERESTING THAT THE

3  COURT HAD SPECIFICALLY ISSUED AN ORDER ASKING MATTEL TO PRESENT

4  A LEGIBLE COPY OF THE AGREEMENT.

5       I'LL TELL YOU RIGHT NOW, GRANTED, I'M 46-YEARS-OLD,          11:18

6  AND I BARELY COULD READ THE DARN THING.

7       IT TURNS OUT THAT THEY HAVE HAD PRIOR VERSIONS WHERE

8  THE TYPE WAS BIGGER, AND THEY TOOK THE SAME SUBSTANTIVE TERMS

9  AND JUST SHRANK IT DOWN TO A SINGLE PAGE BY MAKING THE FONT ALL

10  THAT SMALLER.                                                   11:18

11       SO YOU HAVE A DOCUMENT WHERE IT'S WRITTEN IN NEARLY

12  ILLEGIBLE TYPE, BEING PRESENTED TO SOMEONE ON THEIR FIRST DAY

13  OF EMPLOYMENT WITH MATTEL, AND THEY ARE TOLD TO SIGN IT.

14  'YOU'VE GOT TO SIGN THIS IN ORDER TO LEAVE THIS ORIENTATION.'

15  THEY SIGN IT.  THE OPPORTUNITY FOR NEGOTIATION -- OF COURSE,     11:18

16  THERE'S NO NEGOTIATION.  THE OPPORTUNITY TO OBJECT?  NO

17  OBJECTIONS OR QUESTIONS ARE INVITED.  NO EXPLANATION IS

18  OFFERED.  AND IT CONTAINS PHRASEOLOGY WHICH GOES BEYOND WHAT'S

19  PERMISSIBLE UNDER 2870 AND 2871.

20       AND EVEN IF IT WAS PERMISSION UNDER 2870 OR 2871, IT        11:19

21  DOES NOT EVEN ATTEMPT TO EXPLAIN WHAT CONCEPTION IS AND

22  REDUCTION TO PRACTICE.  IT ALSO USES THE TERM 'CONCEDE.'

23       WE GO BACK TO MS. DRISCAL:  'HAVE YOU HEARD THE TERM

24  'CONCEDE' BEFORE?'  SHE SAID YES, BUT IN A SPECIFIC CONTEXT.

25  AND THEN SHE WAS ASKED 'HAVE YOU HEARD IT IN THE CONTEXT OF      11:19

```
 1   YOUR WORK AT MATTEL?' -- AND SHE'S MR. BRYANT'S SUPERVISOR --

 2   SHE SAID, 'NO, WE DON'T USE THAT TERM.'

 3              SO I DON'T KNOW WHO THE DOCUMENT WAS WRITTEN BY, BUT

 4   IT WASN'T SOMEONE WHO HAD CONSULTED THE DESIGN TEAMS WITHIN

 5   MATTEL IN ORDER TO IDENTIFY AND TO PUT THINGS IN A LANGUAGE       11:19

 6   THAT IS UNDERSTANDABLE FOR THOSE INDIVIDUALS.

 7              NO ATTEMPT WAS MADE TO EXPLAIN IT, EITHER IN THE BODY

 8   OF THE DOCUMENT -- AND THE DOCUMENT NECESSARILY ATTEMPTS TO

 9   HAVE THE PERSON ASSIGN IMPORTANT RIGHTS.  THE RIGHTS THAT IT

10   PURPORTS TO HAVE THE PERSON ASSIGN ARE NO LESS IMPORTANT THAN     11:20

11   THE NATURE OF THE RIGHTS IN THE PRE-DISPUTE ARBITRATION

12   AGREEMENTS WHICH THE NINTH CIRCUIT HAS CONSISTENTLY REJECTED IN

13   THE TING CASE, IN THE INGALL CASE, ET CETERA, BECAUSE IN AND OF

14   ITSELF, IT IS NOT INTELLIGIBLE FOR SOMEONE IN HIS POSITION.

15              BUT PURELY, THAT'S NOT JUST OUR CLAIM HERE, YOUR        11:20

16   HONOR.  IT DOESN'T RELATE SOLELY TO THE INVENTIONS ASSIGNMENT.

17   THERE ARE SEVERAL OTHER ASPECTS OF THE AGREEMENT WHICH ARE

18   IMPERMISSIBLE.

19              YOU HAD POINTED OUT WITH REGARD TO THE CONFLICT OF

20   INTEREST ACTIVITIES -- THAT'S SECTION THREE OF THE AGREEMENT.     11:21

21   THAT'S THE SECTION OF THE AGREEMENT THAT SPEAKS TO THE EMPLOYEE

22   HAVING A DUTY OF LOYALTY.  AND EMPLOYEES DO OWE DUTIES OF

23   LOYALTY TO THEIR EMPLOYERS.  ALTHOUGH, THE PRECISE DEFINITION

24   OF THE DUTY OF LOYALTY, THERE'S SOME DISPUTE IN THE LAW AS TO

25   WHERE IT COMES FROM.  SOME HAVE IDENTIFIED IT AS BEING A          11:21
```

 1   STATUTORIAL DUTY AND NOT NECESSARILY A COMMON-LAW DUTY, BUT

 2   WE'LL CONCEDE THAT EMPLOYEES OWE DUTIES OF LOYALTY.

 3            THE AGREEMENT GOES BEYOND THAT.  WHAT THE AGREEMENT

 4   SAYS IS THAT "I SHALL NOT, WITHOUT THE COMPANY'S EXPRESSED

 5   WRITTEN CONSENT, ENGAGE IN ANY EMPLOYMENT OR BUSINESS OTHER          11:21

 6   THAN FOR THE COMPANY, OR INVEST IN OR ASSIST IN ANY MANNER ANY

 7   BUSINESS COMPETITIVE WITH THE BUSINESS OR FUTURE BUSINESS PLANS

 8   OF THE COMPANY."

 9            LET'S TALK ABOUT THE 'INVEST IN' OR 'ASSIST.'

10            EMPLOYEES ARE ABSOLUTELY GIVEN, AS A MATTER OF STATE         11:22

11   PUBLIC POLICY, THE RIGHT TO PREPARE TO COMPETE; THE FREEDOM TO

12   BE ABLE TO QUIT THEIR EMPLOYER AND WALK ACROSS THE STREET.

13            HOW DO THEY DO THAT?

14            WELL, THEY CAN APPLY FOR JOBS FOR COMPETITORS, OR

15   THEY CAN SET UP THEIR OWN BUSINESS.  IN MR. BRYANT'S CASE, HE        11:22

16   SET UP HIS OWN BUSINESS AND THEN HE NEGOTIATED TO SELL CERTAIN

17   RIGHTS TO MGA.

18            THIS AGREEMENT ON ITS FACE WOULD PURPORT TO PREVENT

19   HIM FROM DOING THAT.  IN FACT, THEY ARE CURRENTLY SUING HIM FOR

20   BREACH OF THIS AGREEMENT.                                           11:22

21            IT SAYS "INVEST IN OR ASSIST IN ANY MANNER ANY

22   BUSINESS COMPETITIVE OF THE BUSINESS."

23            BUT FOR PREPARING TO COMPETE, HOW WOULD THAT NOT BE

24   ASSISTING A COMPETITIVE BUSINESS IF YOU'RE PREPARING TO COMPETE

25   OR IF YOU'RE INTERVIEWING WITH A COMPETITOR?  HOW CAN YOU SET        11:23

1   UP YOUR OWN BUSINESS, PREPARE TO SET UP YOUR OWN BUSINESS, AND

2   NOT VIOLATE THIS?

3           THE ANSWER IS THAT YOU CAN'T; AND THE FACT OF THE

4   MATTER IS THAT THAT PROVISION OF THE AGREEMENT ALSO IS

5   UNLAWFUL; IT'S UNCONSCIONABLE BECAUSE IT'S SUBSTANTIVELY          11:23

6   UNCONSCIONABLE.  IT'S UNFAIR.

7           AND MIND YOU, WITH REGARD TO 17200 CLAIMS, IT CAN BE

8   UNLAWFUL; SO IF THIS VIOLATES 2870 OR 2871, THEN WE SATISFIED

9   THE UNLAWFULNESS PRONG.  OR IT CAN BE UNFAIR, EVEN IF IT'S NOT

10  UNLAWFUL.  AND THE UNFAIRNESS -- THIS COMES FROM THE CEL-TECH    11:23

11  DECISION -- IF IT HAS AN UNFAIRNESS THAT WORKS TO A COMPETITIVE

12  DISADVANTAGE OR TO A COMPETITIVE ADVANTAGE FOR MATTEL.  THE

13  COMPETITIVE ADVANTAGE TO MATTEL WITH TAKING THIS AGREEMENT,

14  EITHER IN MR. BRYANT'S CONTEXT OR THE CONTEXT OF THE THOUSANDS

15  OF OTHER MATTEL EMPLOYEES, IS THE CHILLING EFFECT THAT THEY      11:24

16  WOULD HAVE.  SOME MAY BE DISSUADED FROM EVEN GOING TO WORK IN

17  THE TOY INDUSTRY BECAUSE THEY ARE AFRAID THAT THE FOLKS WITHIN

18  MATTEL'S LEGAL DEPARTMENT ARE GOING TO GO AFTER THEM.

19          THE COURT:  LET ME STOP YOU THERE.

20          WHERE DO YOU DRAW THE LINE ON THIS, THOUGH?            11:24

21          ANY LOYALTY PROVISION IS GOING TO HAVE SOME CHILLING

22  EFFECT.  THAT'S THE WHOLE POINT OF A LOYALTY PROVISION.  RIGHT?

23          MR. WICKHAM:  I WOULD DISAGREE.

24          THE COURT:  THINK OF ANY OATH OF ALLEGIANCE THAT WE

25  REQUIRE OF GOVERNMENT OR ANY OATH OF ALLEGIANCE THAT WE REQUIRE  11:24

1    OF OUR CITIZENS.  TO A CERTAIN EXTENT, THE PURPOSE OF ANY KIND

2    OF OATH OF ALLEGIANCE OR OATH OF LOYALTY IS TO DISSUADE SOMEONE

3    FROM DOING SOMETHING WHICH IS ANTITHETICAL TO OUR INTERESTS;

4    WHETHER THEY BE NATIONAL INTERESTS OR BUSINESS INTERESTS,

5    COMMERCIAL INTERESTS; WHATEVER THEY MIGHT BE.  AND THE LANGUAGE      11:24

6    YOU'RE USING RIGHT NOW IS PRETTY BROAD.

7              WHERE WOULD YOU DRAW THIS LINE?

8              MR. WICKHAM:  I WOULD SUBMIT IT'S A LINE THAT HAS

9    BEEN DRAWN BY THE CALIFORNIA SUPREME COURT IN BANCROFT-WHITNEY

10   VERSUS GLEN AND IN THE ENUMERABLE OTHER CASES THAT HAVE PLACED,      11:25

11   AS A MATTER OF PARAMOUNT STATE PUBLIC POLICY, THE INTERESTS IN

12   EMPLOYEE MOBILITY AND THE INTERESTS IN PROHIBITING POST-

13   EMPLOYMENT COVENANTS NOT TO COMPETE.

14             TO THE EXTENT THAT THERE IS SOME TENSION BETWEEN THE

15   DUTIES OF LOYALTY ON THE OTHER HAND AND THE EMPLOYEE'S RIGHT IS      11:25

16   A MATTER OF STATE PUBLIC POLICY TO PREPARE TO COMPETE OR TO

17   TAKE ACTIONS WHICH WOULD BE COMPETITIVE, THEN THE DUTY OF

18   LOYALTY MUST GIVE WAY.

19             NOW, IT SO HAPPENS THAT IN THE UNFAIR COMPETITION

20   CONTEXT, THE EMPLOYEE CAN SATISFY BOTH OBLIGATIONS                   11:25

21   SIMULTANEOUSLY.  THE EMPLOYEE CAN BE DOING THEIR JOB.  THE

22   EMPLOYEE CAN BE -- IN MR. BRYANT'S CASE, HE HAD RESIGNED, I

23   BELIEVE, OCTOBER 4TH; HIS LAST DAY OF EMPLOYMENT WAS 18TH,

24   19TH, OR SOMETHING LIKE THAT.  WHAT HE DID WAS THAT HE TURNED

25   AROUND AND, FOR ALL OF THE PENDING PROJECTS THAT HE HAD TO HAVE      11:26

```
 1   DONE, HE GOT THEM DONE.  HE WORKED AND PUT IN ALL OF THE TIME

 2   THAT WAS NECESSARY TO GET ALL OF THE WORK DONE SO THAT IN

 3   LEAVING MATTEL THEY WOULDN'T BE LEFT IN THE LURCH.

 4          THE COURT:  THAT'S NOT THE ISSUE MATTEL IS CONCERNED

 5   ABOUT AT THIS POINT.                                          11:26

 6          MR. WICKHAM:  BUT THAT GOES TO THE DUTY OF LOYALTY.

 7          WITH REGARD TO THE DUTY OF LOYALTY, WHAT DO YOU

 8   EXPECT?  YOU EXPECT THEY ARE NOT GOING TO BE TAKING YOUR TRADE

 9   SECRETS.  THEY EXPECT YOU'RE NOT GOING TO BE BURNING THE PLACE

10   DOWN, OR SOMETHING LIKE THAT.                                 11:26

11          BUT THEY ALSO WOULD EXPECT THAT THE EMPLOYEE IS GOING

12   TO BE DOING THEIR JOB UP UNTIL THEIR LAST DAY.  WE SUBMIT

13   MR. BRYANT WAS.  BUT THOSE ARE THE ISSUES THAT ARE GOING TO BE

14   FLUSHED OUT IN DISCOVERY, YOUR HONOR, AND MR. QUINN WILL BE

15   STANDING UP HERE AND SAYING 'MR. BRYANT WAS A BAD GUY AND HE   11:27

16   WAS DOING ALL THIS FOR ONE MONTH OR FOR SOME PERIOD OF TIME.'

17          I ASSURE YOU THE EVIDENCE IS IN DISPUTE AS TO WHAT

18   MR. BRYANT WAS OR WAS NOT DOING, AND IT'S OUR SUBMISSION THAT

19   MR. BRYANT HAS DISCHARGED HIS MATERIAL OBLIGATIONS AS TO

20   MATTEL.                                                       11:27

21          BUT THAT ISN'T WHAT GOES TO WHETHER OR NOT MR. BRYANT

22   STATES A PROPER CLAIM FOR 17200 OR RESCISSION OR FRAUDULENT

23   CONCEALMENT.

24          IF THIS CASE WAS NEVER BROUGHT AGAINST MR. BRYANT, IF

25   MATTEL NEVER SUED HIM FOR BREACH OF THE CONTRACT, HE STILL     11:27
```

1   COULD BE SUING UNDER 17200 SEEKING TO HAVE, AT A MINIMUM,

2   INJUNCTIVE RELIEF TO PREVENT MATTEL FROM CONTINUING TO ENGAGE

3   IN UNFAIR BUSINESS PRACTICES BY HAVING SIMILARLY SITUATED

4   EMPLOYEES SIGN AGREEMENTS THAT CONTAIN SIMILARLY OVERBROAD

5   PROVISIONS.                                                      11:28

6         JUST FOR EXAMPLE, THE PROVISION WE WERE JUST READING

7   FROM WITH REGARD TO THE MIX BETWEEN THE DUTY OF LOYALTY VERSUS

8   THOSE OTHER THINGS THAT THEY SAY THAT HE CAN'T DO.  THEY SAY HE

9   CAN'T ASSIST IN ANY BUSINESS COMPETITIVE WITH THE COMPANY'S

10  BUSINESS OR FUTURE BUSINESS PLANS.                               11:28

11        SO AT SOME POINT IN TIME, THE EMPLOYEE HAS TO BE

12  PRESSING AS TO WHAT MATTEL'S FUTURE BUSINESS PLANS ARE,

13  BECAUSE, BY GOD, ACCORDING TO THIS AGREEMENT, THEY ARE GOING TO

14  BE BREACHING THAT AS WELL.

15        THIS IS NOT A SITUATION, YOUR HONOR, WHERE YOU HAVE A    11:28

16  COMPANY THAT HAS TAKEN MEASURED AND APPROPRIATE AND JUDICIAL

17  STEPS HERE.  I HAVE SOME INFORMATION -- AND THIS IS A COMPANY

18  THAT VIEWS LITIGATION AS SIMPLY AN EXTENSION OF THE

19  MARKETPLACE; THAT, BY GOD, IF THEY CAN'T COW-TOW THEIR

20  EMPLOYEES WITH REGARDS TO THESE AGREEMENTS; IF THEY CAN'T SET   11:29

21  UP EXAMPLES, SUCH AS IN MR. BRYANT'S CASE, WE SUBMIT THAT

22  PERHAPS SOME OF THE MOTIVATION FOR THEIR CONTINUING TO PURSUE

23  THEIR CLAIMS AGAINST HIM IS, IN FACT, THAT THEY ARE USING HIM

24  AS AN EXAMPLE TO THE OTHER 35,000 MATTEL EMPLOYEES:  'YOU DON'T

25  WANT TO HAVE HAPPEN TO YOU WHAT HAPPENED TO MR. BRYANT.'        11:29

1          BUT ALSO, THE MINUTE THAT SOMEBODY LEAVES AND THEY GO

2    TO WORK FOR A COMPETITOR, THEN SUDDENLY THEY ARE THE SUBJECT OF

3    A MICROSCOPE; THEY ARE THE SUBJECT OF INSTANT LETTERS COMING

4    OUT OF MATTEL'S GENERAL COUNSEL OFFICE WHICH THEMSELVES SET

5    FORTH THINGS THAT THE EMPLOYEE CAN'T DO WHICH DON'T EVEN APPEAR    11:29

6    ON THE FACE OF THEIR CONTRACT; AND, WE SUBMIT, ARE ALSO THE

7    SUBJECT OF POTENTIALLY FRIVOLOUS LITIGATION.

8          WE DO ADDRESS THE NOERR-PENNINGTON DOCTRINE.  WE DO

9    GO THROUGH ALL OF THE ELEMENTS OF WHY IT IS THAT OUR CASE IS

10   ONE THAT FALLS WITHIN THE EXCEPTION TO THE NOERR-PENNINGTON    11:30

11   DOCTRINE.  BUT ALL OF THIS IS AN ENTIRE CONUNDRUM OF ACTIVITY

12   THAT MATTEL ENGAGES IN FROM THE MINUTE THAT SOMEBODY WALKS

13   THROUGH THOSE DOORS.  THEY WALK THROUGH; THEY ARE FORCED TO

14   SIGN A DOCUMENT THAT THEY CAN'T READ; THAT'S IN TOO SMALL OF

15   TYPE; THAT USES TERMINOLOGY THAT IS NOT UNDERSTANDABLE FOR    11:30

16   SOMEONE OF THE ORDINARY -- IT'S NOT EVEN UNDERSTANDABLE FOR A

17   GENERAL PRACTITIONER ATTORNEY; IT CONTAINS PROVISIONS WHICH, ON

18   MULTIPLE OCCASIONS, VIOLATES VARIOUS STATUTORY PROVISIONS.

19          SO IF WE'RE RIGHTEOUS ON ONE OF THEM, THEN THE 17200

20   CLAIM MUST BE SUSTAINED.  WE WOULD SUBMIT -- BECAUSE IN    11:30

21   DISCOVERY SO FAR, THEY HAVE COMPLETELY SHUT DOWN ANY

22   SIGNIFICANT DISCOVERY.

23          THE COURT:  I UNDERSTAND LAST MONDAY BEFORE JUDGE

24   BLOCK YOU HAD A PRODUCTIVE DAY --

25          MR. WICKHAM:  WE DID, YOUR HONOR.  HE WAS VERY WISE    11:31

```
1    IN HIS SOLUTION, AND, GOD WILLING, THAT'S GOING TO LEAD TO SOME

2    POSITIVE MOMENTUM THERE.

3            BUT WITH REGARD TO THESE TYPES OF ISSUES, WE BELIEVE

4    THAT THROUGH DISCOVERY, WE'RE GOING TO BE GETTING INTO FURTHER

5    EVIDENCE TO BE ABLE TO BUTTRESS THESE THINGS.  WE BELIEVE THAT          11:31

6    INSTEAD OF THE DOZEN OR TWO-DOZEN LETTERS GOING OUT TO FORMER

7    EMPLOYEES, THAT IT COULD BE IN THE THOUSANDS.

8            AND ALL OF THE WHILE, IT'S BEING DONE TO SECURE A

9    COMPETITIVE ADVANTAGE.  FREEZE AND MAKE YOUR FORMER EMPLOYEES

10   FEARFUL; ENFORCE OR ATTEMPT TO ENFORCE PROVISIONS WHICH AREN'T         11:31

11   LAWFUL, BECAUSE, BY GOD, THOSE INDIVIDUALS WILL OVERCOMPENSATE.

12   THOSE INDIVIDUALS WILL STAY CLEAR OF THINGS THAT THEY ARE

13   ABSOLUTELY ENTITLED TO DO UNDER CALIFORNIA LAW, BUT THAT THEY

14   CHOOSE NOT TO DO BECAUSE THEY DON'T WANT TO GET SUED BY MATTEL;

15   THEY DON'T WANT TO BE MADE AN EXAMPLE OF, LIKE MR. BRYANT.             11:32

16           THE COURT:  THANK YOU, COUNSEL.

17           MR. WICKHAM:  YOUR HONOR, IF YOU WANT, I DO HAVE

18   SPECIFIC RESPONSES WITH REGARD TO THE FRAUDULENT CONCEALMENT

19   CLAIM AS WELL AS WITH REGARD TO THE RESCISSION CLAIM.

20           THE COURT:  I DIDN'T ADDRESS THE RESCISSION CLAIM              11:32

21   BECAUSE BASICALLY IT'S PREDICATED ON THE UNDERLYING 17200

22   CLAIM.

23           MR. WICKHAM:  IT IS PREDICATED ON MULTIPLE DIFFERENT

24   LEVELS, ONE OF WHICH GOES TO THE 17200 CLAIM, BUT SEPARATELY

25   UNDER CALIFORNIA CIVIL CODE SECTION 1689, A MISTAKE OF LAW IS         11:32
```

```
 1    ONE THAT WOULD GIVE RISE TO A RESCISSION.  AND WITH REGARD TO
 2    THE MISTAKE OF LAW ISSUE IN THE HEDGING CONCEPTS CASE THAT IS
 3    CITED IN MATTEL'S BRIEFS, WE WOULD SUBMIT THAT THERE'S A NICE
 4    DISCUSSION THERE WITH REGARD TO MISTAKE OF LAW THAT
 5    SPECIFICALLY ESTABLISHES GROUNDS FOR RESCISSION HERE.            11:33
 6           AND SPECIFICALLY IN THAT CASE AND THE CIVIL CODE
 7    SECTION THAT IS CITED IN THAT CASE, IT'S WHERE ONE PARTY IS
 8    AWARE OF THE TERMS OF PROVISION; ANOTHER PARTY IS MISTAKEN; AND
 9    THE NON-MISTAKEN PARTY IS AWARE THAT THE MISTAKEN PARTY IS
10    MISTAKEN.                                                        11:33
11           IN THIS CASE I ASSURE YOU, YOUR HONOR, THAT SOMEONE
12    WITHIN MATTEL'S LEGAL DEPARTMENT AND/OR OUTSIDE COUNSEL KNOWS
13    DARN WELL WHAT A REDUCTION OF PRACTICE IS; KNOWS WHAT CONCEDE
14    MEANS, EVEN THOUGH IT'S NOT A TERM USED AMONG MATTEL DESIGNERS
15    SUCH AS MR. BRYANT; KNOWS WITH REGARD TO THE LAWFUL LIMITS ON    11:33
16    2870, ETC; AND THEY KNOW THAT SOMEONE IN THE POSITION OF CARTER
17    BRYANT COULD NOT KNOW AND WOULD NOT HAVE ANY MEANS TO KNOW OF
18    ALL OF THESE VARIOUS THINGS.
19           SO UNDER THOSE CIRCUMSTANCES AND THE HEDGING CONCEPTS
20    CASE, WE SPECIFICALLY HAVE STATED THE BASIS FOR OUR RESCISSION   11:34
21    IRRESPECTIVE OF WHETHER OR NOT YOU ALLOW THE 17200 OR THE
22    FRAUDULENT CONCEALMENT CLAIM TO PROCEED.
23           THE COURT:  THANK YOU, COUNSEL.
24           MR. QUINN, BEFORE YOU ADDRESS THE COURT, I HAVE
25    RECEIVED A NOTE FROM A JURY IN A CRIMINAL CASE THAT IS           11:34
```

```
 1   OUTSTANDING WHICH I NEED TO TAKE A LOOK AT.  WE ALSO HAVE
 2   ANOTHER VERY SHORT MATTER.
 3            I WANT TO GIVE YOU THE FULL TIME TO RESPOND.
 4            I ALSO WANT TO GIVE BOTH OF YOU A CHANCE TO REPLY TO
 5   THE OTHER; SO I'M GOING TO TAKE A VERY BRIEF RECESS TO ADDRESS     11:34
 6   THE ISSUE OF THIS NOTE.  WHEN WE COME BACK IN, WE'LL TAKE THE
 7   ONE LAST MATTER, THE MINORS' COMPROMISE ISSUE, AND THEN WE'LL
 8   RETURN TO THIS HEARING.
 9            WE'RE GOING TO TAKE A TEN-MINUTE BREAK ON THIS
10   HEARING HERE.                                                     11:35
11            WE'RE IN BRIEF RECESS.
12            (BRIEF RECESS TAKEN.)
13            THE CLERK:  RECALLING FOR THE RECORD ITEM EIGHT, IN
14   THE MATTER OF CARTER BRYANT VERSUS MATTEL UNDER LEAD CASE
15   NUMBER CV 04-9049.                                                11:57
16            FOR THE BENEFIT OF THE CONTINUITY OF THE TRANSCRIPT,
17   MAY WE HAVE COUNSEL PLEASE STATE YOUR APPEARANCES.
18            MR. QUINN:  JOHN QUINN AND JOHN COREY FROM MATTEL.
19            MS. TORRES:  DALE CENDALI AND DIANA TORRES FOR MGA.
20            MR. JACOBY:  KEITH JACOBY FOR PLAINTIFF/COUNTER          11:58
21   CLAIMANT CARTER BRYANT.
22            MR. WICKHAM:  DOUGLAS WICKHAM FOR PLAINTIFF AND
23   COUNTER CLAIMANT/DEFENDANT CARTER BRYANT.
24            THE COURT:  GOOD MORNING, COUNSEL.  I APOLOGIZE FOR
25   THE INTERRUPTION, BUT I THOUGHT IT WOULD BE BETTER TO GET THOSE   11:58
```

1   MATTERS CLEARED OUT OF THE WAY SO WE COULD PROCEED WITH THE

2   HEARING HERE.

3           MR. QUINN?

4           MR. QUINN:  THANK YOU, YOUR HONOR.

5           I DO WANT TO ADDRESS THE STANDARDS AND LEGAL ISSUES          11:58

6   THAT WOULD APPLY UNDER OLD SECTION 17200.  BUT FIRST I THINK WE

7   DO HAVE TO ADDRESS THE QUESTION OF WHETHER PROP 64 APPLIES TO

8   THIS CASE, BECAUSE I THINK EVERYONE AGREES -- I THINK THERE IS

9   A DISAGREEMENT ABOUT WHETHER PROP 64 DOES APPLY TO THIS CASE.

10  BUT I THINK IF EVERYONE WOULD AGREE THAT IF PROP 64 WOULD          11:59

11  APPLY, THEN NOT ONLY DOES MR. BRYANT NOT HAVE STANDING TO BRING

12  A REPRESENTATIVE ACTION ON BEHALF OF ALL MATTEL EMPLOYEES WHO

13  HAVE EVER SIGNED AN AGREEMENT, HE DOESN'T HAVE STANDING TO

14  BRING AN ACTION IN HIS OWN BEHALF PERSONALLY, BECAUSE PROP 64,

15  OF COURSE, ABOLISHED THE REPRESENTATIVE ACTION AS IT EXISTED          11:59

16  UNDER SECTION 17200 BEFORE PROP 64.

17          NOW, AN ACTION MUST BE BROUGHT AS A CLASS ACTION AND

18  YOU MUST MAKE THOSE ALLEGATIONS AND YOU MUST BE ABLE TO MEET

19  THE STANDARDS OF A CLASS ACTION.  AND IT'S HARD TO SEE HOW

20  MR. BRYANT, GIVEN HIS ALLEGATIONS CONCERNING THE UNIQUE          11:59

21  PARTICULAR SITUATION OF HIS HIRING, COULD EVER BE A CLASS

22  REPRESENTATIVE OR COULD EVER BRING SUCH AN ACTION.

23          THE COURT:  LET ME STOP YOU THERE, THOUGH.

24          JUST ON THAT POINT ALONE, IF THE COURT WERE TO FIND

25  THAT HE COULD NOT BRING AN ACTION ON BEHALF OF THE OTHERS, WHY          12:00

```
1    WOULD THAT PRECLUDE HIM UNDER PROP 64 FOR THE COURT BASICALLY

2    JUST LEAVING THIS A SINGLE ACTION BY MR. BRYANT HIMSELF?

3              MR. QUINN:  BECAUSE PROP 64 ALSO REQUIRES THAT YOU BE

4    ABLE TO PLEAD AND SHOW LOSS OF MONEY OR PROPERTY.

5              THE COURT:  SO THAT WOULD GO TO THE STANDING ISSUE OF    12:00

6    MR. BRYANT.

7              MR. QUINN:  OF HIM INDIVIDUALLY.  AND THAT WAS A BIG

8    CHANGE IN THE LAW.  IF PROP 64 APPLIES, THEN MR. BRYANT DOES

9    NOT HAVE ANY 17200 ACTION BECAUSE HE HAS NOT ALLEGED, AND I

10   BELIEVE CANNOT ALLEGE, ANY LOSS OF MONEY OR PROPERTY THAT WAS    12:00

11   PART OF PROP 64.

12             AND THE PARTIES HAVE BRIEFED THE ISSUE ABOUT WHETHER

13   PROP 64 APPLIES TO THIS CASE; IT'S AN ISSUE THAT HAS BEEN

14   BRIEFED A LOT IN COURTS UP AND DOWN THE STATE OF CALIFORNIA.

15   IT'S PRESENTLY UNDER REVIEW BY THE CALIFORNIA SUPREME COURT.    12:00

16   THE CALIFORNIA SUPREME COURT HAS ELEVEN CASES WHICH IT HAS

17   TAKEN FOR REVIEW.  IN NINE OF THOSE CASES, THE COURTS OF APPEAL

18   HAVE FOUND IT DOES APPLY TO PENDING CASES.  IN TWO OF THOSE

19   CASES, THE COURTS OF APPEAL HAVE FOUND IT DOES NOT APPLY; BUT

20   THOSE CASES ARE NOT CITED BECAUSE THE CALIFORNIA SUPREME COURT    12:01

21   HAS TAKEN THEM ALL FOR REVIEW.

22             THERE ARE TWO CASES -- SINCE WE FINISHED OUR BRIEFING

23   ON THIS, YOUR HONOR, OVER A YEAR AGO, THERE ARE TWO CASES THAT

24   ARE CITABLE THAT ADDRESS THIS ISSUE.  ONE IS A STATE COURT CASE

25   AND ONE IS FEDERAL COURT CASE UP IN THE NORTHERN DISTRICT OF    12:01
```

1    CALIFORNIA.  IN BOTH OF THOSE CASES, THE COURTS FOUND PROP 64

2    DOES APPLY TO PENDING CASES, AND I'LL GIVE THE COURT THE SITES

3    TO THE CASES BECAUSE THEY AREN'T IN OUR BRIEFS FOR THE REASONS

4    I STATED.

5              THE STATE COURT CASE FROM THE FOURTH APPELLATE                     12:01

6    DISTRICT IS HUNTINGTON LIFE SCIENCES, FOUND AT 129 CAL. APP.

7    4TH, 1228; THAT'S 129 CAL. APP. 4TH, 1228.

8              THE FEDERAL COURT CASE IS PALMER VERSUS STACINOS, AND

9    THAT'S FOUND AT 419 F. SUPP. 2D, 1151; 419 F. SUPP. 2D 1151.

10             THE COURT'S HAVE HELD -- AND I DO THINK IT'S BETTER            12:02

11   REASONING -- HAVE HELD THAT PROP 64 DOES AFFECT PENDING 17200

12   CASES -- HAVE FOUND THAT IT APPLIES, BECAUSE WE HAVE GOT AN

13   AMENDMENT TO A STATUTE THAT IT NECESSARILY MUST AFFECT

14   STATUTORY CLAIMS ARISING UNDER THAT STATUTE; AND THE CASE THAT

15   IS CITED FOR THAT PROPOSITION IS PHYSICIANS' COMMITTEE FOR              12:02

16   RESPONSIBLE MEDICINE.  WE CITED THAT CASE IN OUR PAPERS.

17             THIS IS PARTICULARLY TRUE, YOUR HONOR -- AND WE CAN

18   DEBATE ABOUT WHETHER IT CONCERNS THE PAST TRANSACTION OR PAST

19   MONETARY LOSSES OR A PAST CHANGE IN THE RELATION OF THE PARTIES

20   IN AN ECONOMIC SENSE WHERE THAT'S THE RELIEF SOUGHT.  IT'S A            12:03

21   BETTER ARGUMENT, I THINK, THAT RETROACTIVELY YOU CAN'T CHANGE

22   THAT.

23             BUT WHERE THE RELIEF SOUGHT IS ONLY PERSPECTIVE --

24   AND THAT'S WHAT'S SOUGHT HERE; AN INJUNCTION, A DECLARATION

25   PROSPECTIVE RELIEF -- THAT, IT SEEMS TO ME, IS A CORE ISSUE,            12:03

1  CORE SITUATION, WHERE AN AMENDMENT TO A STATUTE HAS GOT TO

2  AFFECT A STATUTORY CLAIM ARISING UNDER THAT STATUTE.

3         THE COURT:  MR. QUINN, THE DECLARATORY RELIEF DOESN'T

4  JUST AFFECT THE FUTURE.  IT ALSO WOULD HAVE AN AFFECT ON -- THE

5  COURT WOULD BE DECLARING THAT IT WAS UNLAWFUL PREVIOUSLY, AND    12:03

6  THAT WOULD BE PREDICATED ON PAST ACTS.

7         MR. QUINN:  THAT'S TRUE, YOUR HONOR.  IT WOULD BE A

8  DECLARATION CONCERNING THE STATE OF AFFAIRS, THE PARTIES' LEGAL

9  RELATIONS AS OF THE TIME THE COURT ENTERED THAT DECLARATION.

10        DOES THAT ALSO LOOK BACKWARDS AS WELL AS FORWARDS?      12:04

11        YES; IN THAT SENSE, I THINK IT DOES.

12        BUT STILL THE COURTS THAT HAVE FOUND THAT PROP 64

13  DOES APPLY TO PENDING CASES HAVE FOCUSED ON THIS ISSUE, AND THE

14  CASE WE CITE, YOUR HONOR, FOR THAT PROPOSITION THAT WE WERE

15  TALKING BASICALLY ABOUT INJUNCTIVE AND DECLARATORY RELIEF, THE    12:04

16  SEARS ROEBUCK CASE AND THE LAND GRAPH CASES BOTH CITED IN OUR

17  PAPERS SUPPORT THAT PROPOSITION.

18        SO I THINK THAT'S REALLY THE FIRST ISSUE, BECAUSE

19  THAT MAKES ALL OF THIS VERY EASY.  IF PROP 64 APPLIES, THERE'S

20  NEITHER A REPRESENTATIVE CLAIM NOR DOES MR. BRYANT HAVE AN        12:04

21  INDIVIDUAL CLAIM.

22        BUT I WOULD NOW LIKE TO TURN TO THE OLD STANDARDS.

23  LET'S ASSUME PROP 64 DOES NOT APPLY.

24        THE COURT:  AND SPECIFICALLY THIS ARGUMENT THAT THE

25  CHILLING EFFECT OF THE LANGUAGE IN QUESTION, THE CONTRACT OR     12:04

1   AGREEMENT IN QUESTION, HAS ESTABLISHED AN INJURY, PRESENT

2   INJURY, ON THOSE EMPLOYEES; NOT ONLY MR. BRYANT BUT ON THE

3   OTHER EMPLOYEES WHO ENTERED INTO IT.

4        MR. QUINN:  IT'S ALL HYPOTHETICAL, I GUESS.  WE CAN

5   ALL IMAGINE A STATE OF AFFAIRS WHERE THERE COULD BE A CHILLING   12:05

6   EFFECT UNDER A CONTRACT.

7        I THINK THE QUESTION, THOUGH, IS THE CONTRACT WITHIN

8   THE LANGUAGE OF SECTION 17200?  IS IT UNLAWFUL, FRAUDULENT, OR

9   UNFAIR?  BECAUSE THAT IS THE STATUTORY STANDARD.  AND IF IT'S

10  NOT UNLAWFUL, IT'S NOT FRAUDULENT, AND IT'S NOT UNFAIR, AS THE   12:05

11  CALIFORNIA COURTS CONSTRUED THOSE TERMS, THEN I THINK IT'S

12  BESIDE THE POINT WHETHER IT HAS A CHILLING EFFECT.  THE LAW IS

13  IT'S OKAY IF IT HAS A CHILLING EFFECT IF IT'S NOT UNLAWFUL AND

14  IF IT'S NOT FRAUDULENT AND IT'S NOT UNFAIR.

15       THERE IS NOTHING IN THIS INVENTIONS AGREEMENT, I   12:05

16  SUBMIT, YOUR HONOR, THAT IS EITHER UNFAIR -- AND THAT'S A

17  TECHNICAL TERM THAT THE COURTS HAVE DEVELOPED UNDER

18  SECTION 17200 -- OR IS UNLAWFUL.  INVENTIONS AGREEMENTS ARE

19  COMMONPLACE.

20       I DARE SAY MGA, I'M QUITE CERTAIN, REQUIRES ALL ITS   12:06

21  EMPLOYEES, ON A TAKE IT OR LEAVE IT BASIS, NON NEGOTIABLE, TO

22  SIGN AN INVENTIONS AGREEMENT.  ANY AERO SPACE COMPANY, ANY

23  COMPANY IN THE ENTERTAINMENT INDUSTRY, ANY COMPANY THAT

24  INVOLVES WHERE YOU HAVE CREATIVITY OR INVENTIONS OR TECHNOLOGY

25  IN CALIFORNIA, THEY HAVE THESE INVENTIONS AGREEMENTS.   12:06

1    AND THE CASE LAW IS IT'S OKAY TO REQUIRE EMPLOYEES,

2  EVEN AS A CONTRACT OF ADHESION, NON NEGOTIABLE, TO REQUIRE

3  EMPLOYEES TO SIGN AN AGREEMENT REQUIRING EMPLOYEES TO ASSIGN TO

4  THE COMPANY ANY INVENTIONS THEY CREATE DURING THE COURSE OF

5  THEIR EMPLOYMENT SUBJECT TO THE LIMITATIONS OF LABOR CODE          12:06

6  SECTION 2870.

7    THE COURT:  THAT STATEMENT OF THE LAW ISN'T IN MUCH

8  DISPUTE IN THIS CASE.  IT'S SUBSTANTIVELY HOW THAT AGREEMENT IS

9  ACTUALLY ARTICULATED, EXPLAINED, PRESENTED, AND FORMULATED THAT

10  IS THE CORE OF THE COUNTERCLAIM.                                  12:07

11    MR. QUINN:  I UNDERSTAND THAT, YOUR HONOR.

12    BUT 2870 -- IF WE COULD FOCUS ON EXACTLY WHAT THAT

13  SAYS.  IT SAYS AN INVENTIONS AGREEMENT IS OKAY, PROVIDED THAT

14  YOU CAN'T REQUIRE AN EMPLOYEE TO ASSIGN INVENTIONS WHICH HE DID

15  ON HIS OWN TIME AND WHICH ALSO DID NOT INVOLVE THE USE OF        12:07

16  COMPANY RESOURCES OR FACILITIES AND THAT ALSO DO NOT RELATE TO

17  THE COMPANY'S PRODUCTS OR INDUSTRY.  IN OTHER WORDS, AREN'T

18  COMPETITIVE.

19    SO IF YOU DO IT IN YOUR GARAGE AND YOU DON'T USE ANY

20  OF THE COMPANY'S COMPUTERS OR ANY OF THE TALENT THERE AT WORK    12:07

21  AND YOU WORK FOR A TOY COMPANY AND WHAT YOU DO IS COME UP WITH

22  SOME INVENTIONS FOR BASKETS TO HANG PLANTS IN, SOMETHING

23  COMPLETELY UNRELATED, AS A MATTER OF LAW YOU CANNOT REQUIRE AN

24  EMPLOYEE TO ASSIGN SUCH AN INVENTION TO THE COMPANY.

25    THE COURT:  LET ME STOP YOU RIGHT THERE.                       12:08

```
 1            I DON'T THINK THAT THE DEFENSE OR COUNTER CLAIMANT

 2    WOULD HAVE ANY OBJECTION IF THAT'S HOW IT WAS EXPLAINED.  YOU

 3    EXPLAINED IT VERY CLEARLY, VERY SUCCINCTLY THERE.

 4            THE ARGUMENT IS THAT'S NOT THE LANGUAGE THAT IS USED

 5    IN THIS AGREEMENT.  THAT'S NOT WHAT'S CONVEYED.  BUT RATHER        12:08

 6    LEGALISTIC JARGON THAT NO ONE, NOT EVEN MR. BRYANT'S

 7    SUPERVISOR, USED TO CONVEY THIS ELEMENT THAT YOU JUST

 8    DESCRIBED.

 9            MR. QUINN:  THE CASE LAW, THE CUBIX CASE THAT WE

10    CITE, THE ROBINSON CASE, YOU LOOK AT THE LANGUAGE OF THOSE        12:08

11    INVENTIONS AGREEMENTS WHICH WERE APPROVED, AND AN ARGUMENT WAS

12    MADE, 'THIS IS TAKE IT OR LEAVE IT; CONTRACTIVE ADHESION.'  AND

13    THE COURT SAYS, 'NO, THAT'S FINE.  AS LONG AS IT DOESN'T RUN

14    AFOUL OF LABOR CODE SECTION 2870, EMPLOYEE, YOU'RE STUCK WITH

15    THAT.'                                                            12:08

16            AND THE LANGUAGE IN THOSE AGREEMENTS IS, I SUBMIT,

17    MORE PERJURY THAN THIS ONE.

18            NOT ONLY IS -- ON MY COPY -- AND I THINK THE COURT

19    ASKED FOR A COPY A COUPLE OF WEEKS AGO, BECAUSE THEY DID HAVE A

20    BAD COPY.                                                         12:08

21            THE COURT:  I COULDN'T READ IT AT ALL.

22            MR. QUINN:  IT IS SINGLE-SPACED.  THERE IS, IN SOLID

23    CAPS, A HEADING AT THE BOTTOM, "CAUTION, THIS AGREEMENT CREATES

24    IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEES'

25    RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER       12:09
```

1  CURRENT EMPLOYMENT."

2          I HEARD COUNSEL SAY THAT THERE WAS JUST A REFERENCE

3  TO SECTION 2870.  HE SAID THIS DOESN'T COVER ANYTHING COVERED

4  BY 2870.  IN FACT, IT SETS FORTH IN 2870 THOSE LIMITATIONS.

5  AND EXCEPT FOR THE CONCEPT OF WHAT IS REDUCED TO PRACTICE AND          12:09

6  WHAT IS CONCEPTION -- WHICH I RECOGNIZE ARE LEGAL TERMS AND

7  THAT LAY PEOPLE WOULDN'T NECESSARILY UNDERSTAND; ALTHOUGH A

8  LIGHT BULB MIGHT GO OFF AND THEY MIGHT HAVE A QUESTION -- THE

9  REST OF THAT I THINK IS REALLY EASY TO UNDERSTAND.

10          IT TALKS ABOUT NOT USING OUR EQUIPMENT; AS LONG AS          12:09

11  YOU DIDN'T USE OUR EQUIPMENT; AS LONG AS IT ISN'T

12  COMPETITIVE -- I DON'T THINK IT'S REALLY THAT HARD TO

13  UNDERSTAND.

14          AND ITS PLACEMENT IN THE FORM FOLLOWS IMMEDIATELY

15  AFTER THE ASSIGNMENT OF INVENTIONS.  IN-BETWEEN THERE'S ONLY --          12:10

16  AND WE'RE LOOKING AT SECTION TWO, OWNERSHIP OF INVENTIONS --

17  SECTION A IS THE ASSIGNMENT; SECTION C IS THE CARVE OUT UNDER

18  THE LABOR CODE SECTION; SECTION C IS A DEFINITION OF

19  INVENTIONS.  AND, IF ANYTHING, MAYBE THAT'S A HELPFUL THING FOR

20  AN EMPLOYEE WHO IS REALLY STUDYING THIS AND WANTING TO TRY TO          12:10

21  UNDERSTAND WHAT HE'S AGREEING TO HERE.

22          BUT I THINK IT'S STRAIGHTFORWARD.  THERE CAN BE NO

23  CLAIM THAT THIS IS UNLAWFUL.  THIS IS THE LAW.  THIS IS THE

24  LAW.  AND THERE WAS NO AUTHORITY CITED TO THE COURT INDICATING

25  THAT THIS TYPE OF AN AGREEMENT IS UNLAWFUL.          12:10

1        I SUBMIT EVEN UNDER THE OLD 17200 STANDARD, IF THE

2   COURT WERE TO FIND THAT PROP 64 DOES NOT APPLY IN THIS CASE,

3   THERE ISN'T A BASIS FOR FINDING THAT THE ASSIGNMENT OF

4   INVENTIONS CLAUSE IS UNENFORCEABLE BECAUSE IT'S UNLAWFUL.

5        COUNSEL ALSO SUGGESTED THAT THIS AGREEMENT IS                    12:11

6   UNLAWFUL BECAUSE IT RESTRICTS AN EMPLOYEE'S ABILITY TO COMPETE

7   AFTER LEAVING THE EMPLOYER'S EMPLOYMENT, AND IN THAT RESPECT

8   WOULD VIOLATE SECTION 16600 IN CALIFORNIA'S STRONG POLICY OF

9   NOT INHIBITING AN EMPLOYEE'S ABILITY FOR FURTHER OR DIFFERENT

10  EMPLOYMENT AFTER THEY LEAVE.                                          12:11

11       THERE IS NOTHING, THERE IS NOTHING, YOUR HONOR, IN

12  THIS AGREEMENT THAT RESTRICTS AN EMPLOYEE'S ABILITY TO GO WORK

13  FOR SOMEONE ELSE OR FOR A COMPETITOR.  THEY ARE ALL GOING TO

14  WORK FOR MGA, YOUR HONOR.  WE HEARD REFERENCE TO THAT.  BUT

15  THEY ARE NOT HAVING ANY PROBLEMS.  THERE'S NOTHING IN THIS           12:11

16  AGREEMENT THAT PURPORTS TO RESTRICT THAT.

17       AND SECTION 16600 HAS NEVER BEEN APPLIED OR

18  INTERPRETED BY ANY COURT TO SAY THAT YOU CAN'T HAVE A

19  RESTRICTION DURING EMPLOYMENT WHICH SAYS YOU CAN'T GO WORK FOR

20  US FOR A COMPETITOR OR AIDE OR ASSIST A COMPETITOR WHILE YOU'RE      12:12

21  WORKING FOR US.  THERE JUST IS NO SUCH CASE LAW.  IT ONLY

22  LIMITS EFFORTS TO RESTRICT SUBSEQUENT EMPLOYMENT, AND THAT'S

23  THE loral VERSUS MOYES CASE.

24       OF COURSE, THAT'S ENTIRELY CONSISTENT WITH THE OTHER

25  CALIFORNIA STATUTE, THE CIVIL CODE SECTION, THAT                     12:12

```
 1   (UNINTELLIGIBLE) CALLS IT THE EMPLOYEE'S DUTY OF LOYALTY THAT

 2   EVERY CALIFORNIA EMPLOYEE OWES TO EVERY EMPLOYER.  AND WE HAVE

 3   MORE THAN ONE STATUTE THAT COMES TO PLAY HERE.

 4        MR. WICKHAM SUGGESTED THAT THIS WOULD PREVENT PEOPLE

 5   FROM INTERVIEWING -- THIS PROVISION THAT SAYS YOU CAN'T ASSIST      12:12

 6   A COMPETITOR WILL PREVENT PEOPLE FROM INTERVIEWING OR PREVENT

 7   THEM FROM PREPARING TO ASSIST, BECAUSE THERE IS CASE LAW THAT

 8   SAYS YOU CAN'T RESTRICT THE EMPLOYEE'S ABILITY TO PREPARE TO GO

 9   INTO COMPETITION.  BUT YOU CAN INTERVIEW FOR A NEW JOB WITHOUT

10   ASSISTING YOUR PROSPECTIVE NEW EMPLOYER.                           12:13

11        INDEED, I THINK THE SEQUENCE USUALLY IS YOU INTERVIEW

12   -- OR IT FREQUENTLY IS -- YOU INTERVIEW; YOU GET OFFERED A JOB;

13   YOU RESIGN; YOU GO TO WORK FOR THE NEW EMPLOYER; AND THEN YOU

14   ASSIST THE EMPLOYER.

15        BUT YOU DON'T HAVE TO -- INDEED YOU CAN'T, YOU               12:13

16   SHOULDN'T, AND IT'S OKAY TO PRESCRIBE EMPLOYEES FROM --

17   ASSISTING FUTURE EMPLOYERS OR PROSPECTIVE FUTURE EMPLOYERS OR

18   COMPETITORS WHILE THEY WORK FOR YOU.  THERE'S NOTHING WRONG

19   ABOUT THAT.  OR TO PREPARE TO COMPETE.  YOU CAN PREPARE TO

20   COMPETE, WHICH THE LAW SAYS EMPLOYEES CAN DO, WITHOUT ASSISTING   12:13

21   A COMPETITOR.  THERE'S NOTHING INCONSISTENT ABOUT THAT.

22        THE COURT:  HOW DO YOU PREPARE TO COMPETE WITHOUT

23   ASSISTING A COMPETITOR?  HOW DO YOU DRAW THAT LINE?

24        THE DIFFICULTY I'M HAVING ON A NUMBER OF THESE

25   ARGUMENTS IS WHERE THIS LINE GETS DRAWN.                          12:14
```

```
 1              MR. QUINN:  I THINK THAT'S VERY FACT-BASED, AND I

 2    COULD GET INTO THE FACTS OF THIS CASE.

 3              THE COURT:  BUT ISN'T THAT A VERY REASON TO DEFER THE

 4    COURT RULING ON THIS UNTIL SUMMARY JUDGEMENT STAGE?

 5              MR. QUINN:  NO, YOUR HONOR.  BECAUSE, YOU KNOW WHAT,      12:14

 6    THEY WANT TO CONDUCT DISCOVERY ABOUT THOUSANDS OF EMPLOYEES;

 7    THEY WANT TO PUT THIS IN FRONT OF H.R. PEOPLE, LEGAL PEOPLE,

 8    SUPERVISORS; THEY WANT TO PUT --

 9              IT'S A TRUE DISCOVERY BURDEN.

10              THE COURT:  I UNDERSTAND THAT.  BUT COUNSEL MAKES        12:14

11    THIS ARGUMENT SEVERAL TIMES THAT THIS IS NOT THE PROPER TIME

12    FOR THE COURT TO BE DECIDING THIS ISSUE.

13              AND MAYBE IT'S NOT A THOUSAND EMPLOYEES; MAYBE IT'S

14    ONLY GOING TO BE ONE EMPLOYEE.

15              MR. QUINN:  WELL, AS A MATTER OF LAW, AS A MATTER OF     12:14

16    LAW, IT'S OKAY TO TELL EMPLOYEES 'WHILE YOU'RE WORKING FOR US

17    YOU CANNOT ASSIST AN EMPLOYER.'

18              THAT'S NOT A SHOCKING -- I WOULDN'T HAVE THOUGHT --

19              THE COURT:  WE'RE NOT DISPUTING OVER THE GENERAL

20    PRINCIPLES HERE.  I THINK WHAT IT IS, AS YOU JUST POINTED OUT,    12:15

21    IT'S A VERY FACT-INTENSIVE QUESTION WHERE WE DRAW THIS LINE,

22    WHICH THE COURT IS GOING TO HAVE TO DO TO RESOLVE THIS MOTION.

23    AND THE QUESTION I HAVE, I GUESS, IS WHEN IS THE APPROPRIATE

24    TIME TO DRAW IT?

25              WE'VE HAD THIS CASE STAYED ALREADY.  I KNOW THERE'S     12:15
```

1  BEEN TREMENDOUS DELAYS; THIS MOTION HAS BEEN STAYED WHILE THE

2  MATTER WENT BEFORE THE NINTH CIRCUIT, AND I CERTAINLY

3  UNDERSTAND BOTH PARTIES' INTERESTS IN HAVING THIS EXPEDITIOUSLY

4  RESOLVED.  BUT IS THIS THE TIME TO RESOLVE THIS PARTICULAR

5  ISSUE?                                                    12:15

6         MR. QUINN:  THIS IS TEED UP IN THIS CROSS-COMPLAINT

7  AS AN ABSTRACT PROPOSITION THAT THIS AGREEMENT IS UNLAWFUL AND

8  THAT IT VIOLATES 17200.  THERE IS NO CLAIM THAT -- THE

9  CONTENTION IS THAT ON THE FACE OF THIS, THIS VIOLATES 17200.

10 AND I THINK IT'S FAIR, AND I THINK THE COURT MUST LOOK AT THE   12:15

11 ACTUAL LANGUAGE OF THE AGREEMENT, AND IF THE COURT CAN MAKE

12 THAT DECISION BASED ON THE LANGUAGE OF THE AGREEMENT, I THINK

13 THE COURT SHOULD DO THAT.

14        THE COURT:  AREN'T THEY REALLY ARGUING NOT SO MUCH ON

15 THE BASIS OF THAT BUT WHY THAT HAS APPLIED IN THIS CASE, BASED  12:16

16 ON THE FACTS AND CIRCUMSTANCES HERE, THE CHILLING EFFECT.  THEY

17 ARE NOT ARGUING THIS IS SOMETHING THAT IS CUT AND DRY; A FACIAL

18 REVIEW OF A CONTRACT WHICH SUGGESTS, BUT RATHER SOMETHING THAT

19 GIVEN THE DYNAMICS OF THE RELATIONSHIP AT THE POINT THE

20 EMPLOYER AND MR. BRYANT -- TELLS MR. BRYANT THAT UNDER THESE    12:16

21 CIRCUMSTANCES, THAT THIS IS AN UNFAIR AGREEMENT?

22        MR. QUINN:  IT'S HARD FOR ME TO -- WHAT I HEAR

23 COUNSEL SAYING --

24        THE COURT:  YOU WOULD BE ABLE TO LITIGATE IN THE NOW-

25 CONSOLIDATED ACTION THAT YOU'RE GOING AFTER MR. BRYANT FOR     12:16

1    VIOLATING THIS CONTRACT.

2            MR. QUINN:  RIGHT.

3            THE COURT:  AND ESSENTIALLY WHAT THIS IS IS AN

4    ARGUMENT THAT IN THIS PARTICULAR CONTEXT THIS WAS AN UNFAIR

5    CONTRACT TO BEGIN WITH.                                    12:17

6            MR. QUINN:  WHAT WE WERE HEARING WAS UNLAWFUL.  WE'RE

7    ON THE UNLAWFULNESS POINT NOW.  WHAT WE HEARD, AS I HEARD IT,

8    WAS IT RESTRICTS SUBSEQUENT EMPLOYMENT.  I DON'T THINK IT DOES.

9    THE COURT CAN SEE THAT -- BY THE WAY, I WOULD ASK THE COURT TO

10   TAKE NOTICE OF THE AGREEMENT.  WE FILED A REQUEST FOR JUDICIAL  12:17

11   NOTICE.

12           THE COURT:  THAT WAS WHY THE COURT WANTED TO GET THIS

13   AND ACTUALLY READ THIS.

14           MR. QUINN:  WE READ THOSE FEELINGS.

15           WHAT WE'RE BEING TOLD IS THAT THIS AGREEMENT -- WHICH  12:17

16   WE CAN ALL READ NOW -- RESTRICTS SUBSEQUENT EMPLOYMENT.  IT

17   DOES NOT.  WE'RE BEING TOLD IT'S GOT AN UNLAWFUL ASSIGNMENT AND

18   INVENTIONS PROVISION.  I'M SAYING IT DOESN'T.  IT SAYS YOU

19   CANNOT ASSIST A COMPETITOR WHILE YOU WORK FOR US.  THERE'S NO

20   LAW THAT SAYS THAT THAT'S AN IMPROPER OR UNLAWFUL PROVISION.    12:17

21           THE COURT:  SO I FIND THAT IT'S LAWFUL, BUT IT CAN

22   STILL BE UNFAIR AND STILL BE FRAUDULENT IN THE WAY THE

23   AGREEMENT IS PRESENTED OR NOT PRESENTED TO MR. BRYANT.

24           MR. QUINN:  LET'S TALK ABOUT THOSE OTHER TWO

25   HEADINGS, PRONGS, UNDER 17200.                               12:18

```
 1            UNFAIRNESS HAS A SPECIAL MEANING AND THE CASE THERE,

 2   SECTION 17200, IS THE CEL-TECH CASE, AND WHAT THE CEL-TECH CASE

 3   SAYS IS THAT THIS IS NOT TO BE READ AS UNFAIRNESS IN THE

 4   ABSTRACT.  IT HAS TO BE -- AND I THINK THE COURT USES THE WORD

 5   'TETHERED' TO A PARTICULAR LEGISLATIVE POLICY OR ENACTMENT.        12:18

 6            I THINK IT COMES BACK TO THE UNLAWFULNESS.

 7            THE COURT:  IT DOES.  THAT'S THE POLICY THE COUNTER

 8   CLAIMANTS ARE CONCERNED WITH, OF COURSE, IS THE POLICY TO ALLOW

 9   PEOPLE TO GO TO ANOTHER COMPANY.

10            MR. QUINN:  RIGHT.  AND THERE'S NOTHING IN THIS          12:18

11   AGREEMENT THAT DOES THAT.  AND THAT'S THE CLAIM THAT WE'RE

12   FACED WITH HERE IS THAT THIS AGREEMENT VIOLATES 17200.

13            AND THERE'S NOTHING UNLAWFUL IN THE AGREEMENT.

14            UNCONSCIONABILITY.  IF IT WERE AN UNCONSCIONABLE

15   AGREEMENT, THAT WOULD BE UNFAIR.  WE HAVE GOT LEGISLATIVE         12:19

16   POLICY ON THAT.  BUT THIS IS NEITHER PROCEDURALLY NOR

17   SUBSTANTIVELY UNCONSCIONABLE.  ON THE SUBSTANTIVELY SIDE --

18   IT'S NO SURPRISE -- THE COURT TALKED IN TERMS OF WHAT'S

19   UNCONSCIONABLE.

20            IT'S NOT ENOUGH, BY THE WAY, TO BE A CONTRACT OF         12:19

21   ADHESION AS PRESENTED ON A TAKE IT OR LEAVE IT BASIS TO RENDER

22   IT UNCONSCIONABLE; THAT HAPPENS ALL OF THE TIME; THESE CASES

23   ALL ASSUME IN THE UNCONSCIONABILITY AREA THAT THERE WAS NO

24   OPPORTUNITY TO NEGOTIATE AND THAT THE AGREEMENT WAS PRESENTED

25   ON A TAKE IT OR LEAVE IT BASIS.                                   12:19
```

1          IT'S SUBSTANTIVELY UNCONSCIONABLE IF THERE'S

2     SOMETHING IN IT -- AND THE COURTS USE THE PHRASE 'SHOCKS THE

3     CONSCIENCE.'

4          THE COURT:  SURPRISINGLY; OVERLY HARSH; A NUMBER OF

5     PHRASES.                                                        12:20

6          MR. QUINN:  IT TURNS IN THE AGREEMENT; THAT'S

7     SUBSTANTIVE UNCONSCIONABILITY.

8          PROCEDURAL UNCONSCIONABILITY RELATES TO SIZE OF

9     PRINT; WERE THERE WARNINGS, CIRCUMSTANCES UNDER WHICH IT WAS

10    PRESENTED?  AND YOU HAVE TO HAVE BOTH PROCEDURAL AND           12:20

11    SUBSTANTIVE UNCONSCIONABILITY.

12         THIS IS A LAWFUL AGREEMENT THAT DOESN'T HAVE ANY

13    PROVISION IN IT, I SUBMIT, THAT SHOCKS THE CONSCIENCE.  THAT'S

14    A QUESTION OF LAW.  THAT'S NOT SOMETHING THAT -- THIS IS

15    CONSTRUCTION OF A WRITTEN CONTRACT HERE.  THERE'S NOTHING IN   12:20

16    HERE THAT SHOCKS THE CONSCIENCE.  IT'S A STANDARD BOILERPLATE

17    INVENTION, ASSIGNMENT OF INVENTIONS AGREEMENT, THAT'S LIKE THE

18    SAME AGREEMENTS THAT MOST CALIFORNIA EMPLOYERS WHO WORK IN

19    TECHNOLOGY OR ENTERTAINMENT INDUSTRIES EMPLOY.

20         SO IT'S NOT AN UNFAIR -- THE AGREEMENT IS NOT INVALID     12:20

21    FOR BEING UNFAIR.

22         FINALLY, WITH RESPECT TO FRAUD, YOUR HONOR, WHAT'S

23    THE FRAUD?  WHAT'S THE FRAUD?

24         WE'RE TALKING ABOUT FRAUD NOW, WHERE FRAUD HAS GOT TO

25    BE PLED WITH PARTICULARITY.  WHAT I'M HEARING IS THAT THE FRAUD 12:21

```
1    WAS THAT IT USED TERMS LIKE 'REDUCED TO PRACTICE.'

2              THE COURT:  COMPLEX TERMS THAT THE AVERAGE PERSON, OR

3    PARTICULARLY THIS EMPLOYEE, WOULD NOT KNOW OR DID NOT KNOW;

4    THAT HIS OWN SUPERVISOR DID NOT KNOW; AND NEVER OFFERED ANY

5    EXPLANATION FOR WHAT THOSE TERMS MEANT.                        12:21

6              MR. QUINN:  THAT'S NOT ALL PLED, BUT LET'S ASSUME IT

7    WAS.

8              WHERE IS THE MISREPRESENTATION OF THE MATERIAL FACTS,

9    EXISTING MATERIAL FACTS?  WHERE IS THE CONCEALMENT?  WHERE IS

10   THE DUTY?                                                      12:21

11             THE COURT:  CONCEALMENT IS CONCEALING THE ACTUAL

12   SIGNIFICANCE OF THOSE TERMS.

13             MR. QUINN:  THAT I UNDERSTOOD.  I QUESTION WHETHER

14   THAT'S A MATERIAL FACT IF YOU DON'T EXPLAIN TO SOMEBODY LEGAL

15   TERMS.  AND DO WE REALLY WANT TO GET EMPLOYERS IN THE BUSINESS  12:22

16   OF HAVING A LEGAL OBLIGATION TO SPEAK AND EXPLAIN LEGAL TERMS

17   TO EMPLOYEES?

18             I THINK THAT WOULD BE SOME NEW LAW HERE.

19             THE COURT:  IT MAY BE SOME NEW LAW; IT MAY NOT BE BAD

20   LAW, BUT IT MAY BE NEW LAW.                                    12:22

21             MR. QUINN:  BUT SOMETIMES NEW LAW IS GOOD LAW;

22   SOMETIMES IT'S BAD LAW.

23             THE COURT:  I GUESS IT DEPENDS ON WHO'S MAKING THE

24   LAW.

25             MR. QUINN:  THERE IS A CASE THAT READS ON THIS ISSUE,  12:22
```

```
 1   AND THAT'S THE COHEN VERSUS WEDBUSH CASE THAT WE CITED TO THE
 2   COURT, AND THERE THE CLAIM WAS FAILURE TO DISCLOSE THE
 3   EFFECTIVE ARBITRATION CLAUSE; THAT THE EMPLOYER FAILED TO
 4   DISCLOSE AND EXPLAIN WHAT THE RAMIFICATIONS WERE OF AN
 5   ARBITRATION CLAUSE.                                           12:22
 6         THE NINTH CIRCUIT SAID THERE'S NO SUCH DUTY.  YOU
 7   HAVE NO OBLIGATION TO EXPLAIN THAT.
 8         THERE ARE NO FACTS ALLEGED HERE IN THIS CASE THAT
 9   WOULD SUPPORT AN OBLIGATION TO DISCLOSE OR EXPLAIN.  THERE'S
10   REFERENCES, THERE'S ARGUMENTS IN THE BRIEF, AS OPPOSED TO THE  12:23
11   CROSS-CLAIM, ABOUT HOW, 'WELL, MATTEL CHOSE TO SPEAK; AND ONCE
12   YOU SPEAK, YOU HAVE AN OBLIGATION TO SPEAK FULLY AND
13   ACCURATELY.'  AN UNDENIABLE PROPOSITION.
14         THERE'S NOTHING IN THE CROSS-COMPLAINT THAT SAID
15   MATTEL SPOKE.  I THINK REALLY WHAT WE'RE HEARING HERE IS       12:23
16   NEITHER SIDE SAID ANYTHING.  PRESENTED WITH AN AGREEMENT; MAYBE
17   'SIGN THIS PLEASE, AND YOU CAN REPORT TO WORK.'
18         THAT IS NOT FRAUD.  THERE'S NO CASE LAW THAT SUGGESTS
19   IT'S FRAUD.
20         BUT, AGAIN, YOUR HONOR, WE DON'T HAVE TO GET TO ANY      12:23
21   OF THAT IF -- THEY DO HAVE A SEPARATE FREESTANDING FRAUD CLAIM;
22   SO PROP 64 WOULD NOT TAKE CARE OF THAT FREESTANDING FRAUD
23   CLAIM.  IT WOULD NOT TAKE CARE OF THE RESCISSION CLAIM.  IT
24   WOULD TAKE CARE OF THE 17200 CLAIM, AND I THINK THERE'S AN EASY
25   ANSWER TO THAT.                                               12:23
```

```
 1          THE RESCISSION CLAIM -- MISTAKE OF LAW -- AS COUNSEL

 2   ACCURATELY STATED THE LAW HERE -- WHEN ONE SIDE KNOWS THAT THE

 3   OTHER SIDE IS OPERATING UNDER A MISAPPREHENSION OR

 4   MISUNDERSTANDING ABOUT THE LAW IS AND KNOWS WHAT THE TRUE FACTS

 5   ARE, THAT MAY BE A GROUND FOR RESCISSION.                          12:24

 6          THERE'S NO ALLEGATION OF THAT HERE; THAT WE KNEW

 7   CARTER BRYANT WAS COMPLETELY IGNORANT ABOUT WHAT THIS CONTRACT

 8   MEANT, AND WE KNEW HE KNEW THAT AND WE KNEW WHAT IT REALLY DID

 9   MEAN, AND WE WITHHELD THAT.  TO THE CONTRARY, WHAT WE'RE

10   HEARING IS THAT HIS SUPERVISOR DIDN'T UNDERSTAND IT EITHER.  SO  12:24

11   THIS IS NO BASIS FOR RESCISSION HERE ON A MISTAKE THEORY OR ON

12   A FRAUD THEORY.

13          I'D BE HAPPY TO ADDRESS ANY QUESTIONS THE COURT MIGHT

14   HAVE.

15          THE COURT:  NOT AT THIS TIME, MR. QUINN.                   12:24

16          I'D LIKE TO HEAR FROM THE DEFENSE TO ADDRESS THIS

17   PROP 64 ISSUE.

18          MR. WICKHAM:  YOUR HONOR, THE CALIFORNIA SUPREME

19   COURT HAS TAKEN UP THE ISSUE OF WHETHER AND TO WHAT EXTENT

20   PROP 64 IS RETROACTIVE OR NOT IN THE CASE OF CALIFORNIANS FOR   12:25

21   DISABILITIES RIGHT VERSUS MERVYN'S.  THAT CASE HAS BEEN FULLY

22   BRIEFED; IT WAS ARGUED TO THE CALIFORNIA SUPREME COURT ON

23   MAY 31ST.  AT THIS POINT IN TIME WE'RE SIMPLY WAITING FOR THE

24   SUPREME COURT TO RULE; SO FROM THAT STANDPOINT WE WILL HAVE

25   DEFINITIVE GUIDANCE ON WHETHER AND TO WHAT EXTENT PROP 64 WOULD  12:25
```

1    BE APPLIED PROSPECTIVELY ONLY OR WHETHER IT HAS RETROACTIVE

2    EFFECT.

3            I WOULD SUBMIT THAT YOUR HONOR'S OBSERVATION WITH

4    REGARD TO THE DECLARATORY RELIEF CLAIM ASSERTED IN THE

5    COUNTERCLAIM HERE WHICH ESSENTIALLY SEEKS TO INVALIDATE PAST                  12:25

6    ASSIGNMENT AGREEMENTS, ALL OF WHICH IS ACTIVITY THAT PRE-DATED

7    PROP 64, DOES NOT OPERATE PROSPECTIVELY.  AND THAT WOULD BE

8    SIGNIFICANT REASON WHY PROP 64 IS IMMATERIAL TO AT LEAST SOME

9    OF THE CLAIMS THAT BRYANT IS ASSERTING IN THE COUNTERCLAIM.

10           HE DOES ASSERT A CLAIM FOR INJUNCTIVE RELIEF, SO                      12:26

11   WE'LL HAVE TO AWAIT WHAT THE SUPREME COURT'S DECISION IS GOING

12   TO BE ON THAT SUBJECT.  BUT I RESPECTFULLY WOULD LIKE TO

13   CLARIFY TWO THINGS.  ONE WITH REGARDS TO WHAT PROP 64 DOES AND

14   DOES NOT DO, AS WELL AS WHAT THE LAW WAS PRIOR TO PROP 64.

15           I MAY HAVE THE PRECISE NAME INCORRECTLY, AND I'LL               12:26

16   SUBMIT SUPPLEMENTAL BRIEFING TO CLARIFY IT, BUT I BELIEVE IT'S

17   THE CASE OF ALLIANCE VERSUS CHILDREN'S TELEVISION THAT WAS

18   DECIDED UNDER BUSINESS AND PROFESSIONS CODE SECTION 17200, THAT

19   IT ESTABLISHED AND IT PERSONIFIED THE CITIZEN'S STANDING NATURE

20   OF THAT STATUTE; THAT YOU CAN SUE IRRESPECTIVE OF ANY HARM;                   12:26

21   THAT IF YOU IDENTIFIED ANYTHING THAT FELL WITHIN THE AMBIT OF

22   THAT STATUTE, THEN YOU COULD SUE AS A CITIZEN.  THAT'S WHAT

23   ALLIANCE FOR CHILDREN'S TELEVISION SAYS.

24           THAT IS THE BODY OF LAW THAT EXISTED PRIOR TO THE

25   ENACTMENT OF PROP 64.  AND FRANKLY, IT'S ONE OF THE REASONS WHY             12:27

1    THE VOTERS AND WHY THE GOVERNOR WAS A PROPONENT IN CHANGING

2    THAT, BECAUSE THEY WANTED TO PREVENT PUBLIC INTEREST

3    ORGANIZATIONS OR PEOPLE WHO WERE COMPLETE STRANGERS TO SOME

4    SORT OF A RELATIONSHIP FROM SWOOPING IN AND FILING THESE PUBLIC

5    INTEREST LAWSUITS WHERE THEIR OX HADN'T BEEN GORED.  THAT WAS          12:27

6    THE SUPPOSED EVIL THAT WAS SOUGHT TO BEING CORRECTED WITH

7    PROP 64.  THAT'S NOT PRESENT HERE.

8            MR. BRYANT WAS FORCED TO SIGN THIS AGREEMENT AS A

9    CONDITION OF HIS EMPLOYMENT WITH MATTEL.  EVERY OTHER MATTEL

10   EMPLOYEE WAS FORCED TO SIGN THIS AGREEMENT AS A CONDITION OF          12:27

11   THEIR EMPLOYMENT WITH MATTEL.  THIS ISN'T SOME STRANGER TO THE

12   LAWSUIT COMING IN AND DECIDING TO SUBMIT MATTEL'S POLICIES AND

13   AGREEMENT UNDER A MICROSCOPE WHO HAS NO RELATIONSHIP WITH

14   MATTEL.  THIS IS THE PEOPLE WHO ACTUALLY WERE FORCED TO SIGN

15   THESE ILLEGAL AND UNFAIR CONTRACTS AND AGREEMENTS.                    12:28

16           THE COURT:  THAT'S STILL DISTINCTIVE FROM THE

17   ARGUMENT OF FREESTANDING --

18           MR. WICKMAN:  NO, YOUR HONOR.  CITIZENS' STANDING

19   UNDER BUSINESS AND PROFESSIONS CODE SECTION 17200, OTHER THAN

20   IDENTIFYING THE UNFAIR BUSINESS PRACTICE, YOU IDENTIFY IT AND         12:28

21   YOU CAN SUE FOR IT UNDER THE LAW PRIOR TO THE ENACTMENT OF

22   PROP 64.  THAT'S WHAT ALLIANCE FOR CHILDREN'S TELEVISION STANDS

23   FOR; THAT'S WHAT A NUMBER OF OTHER CASES STAND FOR.

24           THERE IS A DISTINCTION BROUGHT UP IN THE CEL-TECH

25   CASE THAT YOU CAN COME IN WITH CITIZENS' STANDING, AND IF YOU         12:28

```
1    HAVEN'T BEEN SPECIFICALLY HARMED, CEL-TECH SAYS THAT, OKAY, YOU
2    MIGHT BE ABLE TO GET INJUNCTIVE RELIEF, BUT YOU CAN'T
3    SPECIFICALLY SEEK TO RECOVER OTHER TYPES OF EQUITABLE REMEDIES.
4         WHAT'S IMPORTANT TO UNDERSTAND HERE IS THAT BUSINESS
5    AND PROFESSIONS CODE SECTION 17200 FUNDAMENTALLY IS AN            12:29
6    EQUITABLE STATUTE.  IT ONLY PROVIDES FOR EQUITABLE REMEDIES
7    SUCH AS INJUNCTIONS OR ORDERS OF RESTITUTION, THINGS OF THAT
8    NATURE.  IT'S NOT A BROAD SCALE DAMAGES RELIEF, ALTHOUGH IT
9    DOES PROVIDE FOR, UNDER CERTAIN CIRCUMSTANCES, DISCOURAGEMENT
10   OF PROFIT.                                                      12:29
11        BUT THE IDEA ORIGINALLY BEHIND 17200 WAS THAT WE AS A
12   STATE ARE NOT GOING TO ALLOW ANY SORT OF UNFAIR, UNLAWFUL,
13   FRAUDULENT BUSINESS PRACTICES.  AND PRIOR TO PROP 64, ANYBODY
14   COULD SAY UNDER THE STATUTE WITHOUT THEMSELVES SUFFERING A
15   SPECIFIC HARM THAT WOULD BE OTHERWISE COGNIZABLE WHAT WE WOULD   12:29
16   THINK OF IN TERMS OF ARTICLE FREESTANDING.
17        PROP 64 DOESN'T ELIMINATE SOMEONE LIKE MR. BRYANT
18   FROM SUING, EITHER FOR HIMSELF OR ON BEHALF OF OTHERS.
19   BUSINESS AND PROFESSIONS CODE SECTION 17200 WAS ONLY SLIGHTLY
20   MODIFIED IN PROP 64 TO SAY THAT THE PLAINTIFF IN A 17200 CLAIM,  12:30
21   WHICH ITSELF WAS REFERRED TO AS A REPRESENTATIVE ACTION, I
22   THINK THAT WITH A MODIFICATION NOW MAYBE WE'D REFER TO IT AS A
23   CLASS ACTION OR MAYBE TO BOTH BECAUSE THE STATUTE REALLY
24   DOESN'T GIVE IT A PARTICULAR NAME; SO I DON'T KNOW THAT I AGREE
25   WITH MR. QUINN'S CHARACTERIZATION.                              12:30
```

1          BUT WHAT PROPOSITION 64 DID IS THAT IT ALLOWS PEOPLE

2    WHO THEMSELVES HAD LOST MONEY OR PROPERTY AS A RESULT OF THE

3    PRACTICE THAT THEY ARE CHALLENGING.  IN MR. BRYANT'S CASE, WE

4    SPECIFICALLY ALLEGE IN PARAGRAPH 42 OF THE COUNTERCLAIM THAT HE

5    SUFFERED DAMAGES AS A RESULT OF THE UNFAIR BUSINESS PRACTICES          12:31

6    AT ISSUE HERE.

7          THE COURT:  ARE YOU REFERRING TO MONETARY DAMAGES?

8          MR. WICKHAM:  THAT IS CORRECT, YOUR HONOR.

9          IT SO HAPPENS THAT THERE ARE ADDITIONAL OTHER LOSSES

10   THAT WE WILL BE ABLE -- IF YOUR HONOR IS SO INCLINED, THAT IF          12:31

11   THAT ONE ALLEGATION ISN'T SUFFICIENT, YOU WANT TO HAVE MULTIPLE

12   ALLEGATIONS WHERE HE HAS REFRAINED FROM EXPLOITING CERTAIN

13   PROPERTY PRECISELY BECAUSE OF THESE THINGS, WHICH WOULD TRIGGER

14   THE SECOND OF THE TWO BASES FOR ESTABLISHING STANDING UNDER

15   17200 IN THE POST-PROPOSITION 64 FIELD.                                12:31

16         ONCE HE ALLEGES THOSE TWO THINGS, THAT'S THE FIRST

17   LEG THAT GIVES HIM STANDING TO SUE UNDER 17200 IN THE POST-

18   PROPOSITION 64 WORLD.

19         THE SECOND ELEMENT THAT HE WOULD HAVE TO SHOW -- IT'S

20   NOT EXACTLY AN ELEMENT.  WHAT IT SAYS IS THAT THE ACTION UNDER         12:32

21   17200 MUST MEET THE CRITERIA FOR TREATMENT UNDER CALIFORNIA

22   CODE OF CIVIL PROCEDURES SECTION 382.

23         CALIFORNIA CODE OF CIVIL PROCEEDINGS SECTION 382 IS

24   THE STATE EQUIVALENT OF RULE 23 OF THE FEDERAL RULES OF CIVIL

25   PROCEDURE, AND ESSENTIALLY IT JUST MEANS THAT THE PERSON WHO'S         12:32

```
 1    SUING IN A REPRESENTATIVE ACTION, OR CLASS ACTION, IF MR. QUINN

 2    INSISTS, UNDER 17200, MUST SHOW AND MUST MEET THE CRITERIA

 3    UNDER SECTION 382.

 4            UNDER 382?

 5            I ACTUALLY DO A GREAT DEAL OF CLASS ACTION            12:32

 6    LITIGATION.  382 WAS NOT NEARLY AS WELL DEFINED AS RULE 23,

 7    ALTHOUGH PARTS OF RULE 23 ELEMENTS ARE INCORPORATED INTO 382;

 8    ESSENTIALLY NUMEROSITY, TECHNICALITY, COMMONALITY, ETC.

 9    WELL, IN THIS INSTANCE IT'S ALLEGED, BOTH IN THE COUNTERCLAIM

10    AS WELL AS IN MATTEL'S PAPERS, THAT THERE ARE HUNDREDS IF NOT   12:33

11    THOUSANDS OF EMPLOYEES THAT WERE SUBJECT TO THIS EXACT SAME

12    AGREEMENT; SO THE NUMEROSITY ELEMENT IS PRESENT IN ALL OF THEM.

13            IN TERMS OF TYPICALITY, MR. BRYANT'S CLAIMS IN

14    CHALLENGING THE VARIOUS SUBSTANTIVE PROVISIONS OF THE AGREEMENT

15    IN COMMONALITY, THE LEGAL ARGUMENTS THAT WOULD BE UNDERPINNING  12:33

16    THEM, THOSE WOULD BE EASILY ESTABLISHED AS A PLEADING MATTER.

17    I DO BELIEVE, IN FACT, THERE'S ELEMENTS OF THOSE THINGS

18    ACTUALLY PLED IN THE COUNTERCLAIM.  OBVIOUSLY, THE COUNTERCLAIM

19    WAS FILED AT A POINT IN TIME WHEN PROP 64 HAD NOT BEEN ENACTED,

20    AND SO WE DIDN'T SPECIFICALLY PLEAD THEM, BUT THEY EXIST IN THE  12:33

21    ALLEGATIONS OF THE COUNTERCLAIM.  AND THEN ADEQUACY OF

22    REPRESENTATION.

23            ONCE AGAIN, TO THE EXTENT THAT IS AN ELEMENT THAT IS

24    INCORPORATED INTO THE REVISED SECTION 17200.  I'VE BEEN

25    PRACTICING LAW FOR 20 YEARS; I'VE BEEN PRACTICING CLASS ACTION  12:34
```

```
 1   LITIGATION FOR THE LAST 15 YEARS; AND I HAVE LITIGATED

 2   ENUMERABLE CLASS ACTIONS; SO IN TERMS OF ADEQUACY OF

 3   REPRESENTATION, MY CO-COUNSEL HAS BEEN PRACTICING FOR ALMOST AS

 4   LONG AND WITH EQUAL STINTS IN TERMS OF CLASS ACTION CASES; SO

 5   IN TERMS OF ADEQUACY OF REPRESENTATION, THAT ELEMENT WOULD BE      12:34

 6   SATISFIED HERE.

 7           SO UNLIKE WHAT MR. QUINN IS SAYING, EVEN IF PROP 64

 8   WERE TO APPLY TO THE CASE, THERE SIMPLY IS NO QUESTION THAT WE

 9   WOULD BE ABLE TO SATISFY THE VARIOUS ELEMENTS THAT WERE ADDED

10   BY PROP 64 AND WOULD MORE THAN BE ABLE TO ESTABLISH THE BASIS     12:34

11   TO CONTINUE TO PURSUE THAT CLAIM IN THE POST-PROP 64 WORLD.

12           WE, HOWEVER, BELIEVE THEY DO HAVE ADEQUATE NOTICE OF

13   WHAT HIS CLAIMS ARE AND THAT THOSE VARIOUS ELEMENTS EXIST IN

14   THE COUNTERCLAIM AS STATED; SO THERE WOULD BE NO NEED FOR AN

15   AMENDMENT.  BUT THAT'S FOR YOU TO DECIDE, YOUR HONOR.            12:35

16           THE COURT:  VERY WELL.

17           WAS THERE ANYTHING ELSE SPECIFICALLY, COUNSEL?

18           MR. WICKHAM:  YES, YOUR HONOR.

19           WHAT IS FUNDAMENTALLY TROUBLING ABOUT MATTEL'S

20   PRESENTATION OR THEIR VIEW OF OUR ARGUMENTS HERE IS SOMETHING    12:35

21   THAT YOU TOUCHED UPON; THAT, YES, WE ABSOLUTELY ARE CHALLENGING

22   SOME OF THE SPECIFIC PROVISIONS OF THIS AGREEMENT.

23           BUT THE ARGUMENTS AND THE FACTUAL NEXUS AND THE

24   BUNDLE OF ISSUES PRESENTED IN THE COUNTERCLAIM GO BEYOND JUST

25   THIS CONTRACT.  THEY GO TO FORMATION AND THE MANNER IN WHICH     12:35
```

```
1    THE EMPLOYEES ARE FORCED TO SIGN THIS AGREEMENT WITHOUT ANY

2    EXPLANATION UNDER CIRCUMSTANCES WHERE -- THEY ARE MUSHROOMS;

3    THEY ARE KEPT IN THE DARK AND FED YOU KNOW WHAT.  THEY HAVE NO

4    OPPORTUNITY TO COME TO KNOW THESE THINGS.  AND THEN, DURING THE

5    COURSE OF THEIR EMPLOYMENT AT MATTEL, THIS IS HELD OVER THEIR        12:36

6    HEADS.

7            YOUR HONOR, WHEN MY CLIENT WAS SUED, MATTEL ISSUED A

8    PRESS RELEASE AND WORD WAS OUT THROUGHOUT THE ENTIRE COMPANY.

9    PEOPLE WHO WERE MY CLIENT'S FRIENDS WERE CALLING HIM AND SAYING

10   'MY GOD, WHAT'S GOING ON?'                                           12:36

11           THEY WERE DOING THIS FOR A REASON.  THEY WERE USING

12   HIM FOR A REASON HERE; AND IT'S THAT TYPE OF ACTIVITY THAT'S

13   PART AND PARCEL OF WHAT WE'RE SEEKING TO GET AT.

14           THEN, WITH REGARD TO THE PREPARATIONS TO COMPETE AND

15   THE OBNOXIOUS SECTIONS OF THE AGREEMENT, MATTEL HISTORICALLY        12:36

16   LAYS OFF LOTS AND LOTS OF PEOPLE.  MATTEL RECENTLY HAS LAID OFF

17   THOUSANDS OF EMPLOYEES.  THE EMPLOYEES WHO WERE IN THE DESIGN

18   FIELD, SUCH AS MY CLIENT, MANY OF THEM BECOME INDEPENDENT

19   CONTRACTORS.  THEY GO OUT AND THEY DO FREELANCE WORK.  THEY MAY

20   DO FREELANCE WORK FOR MATTEL; THEY MAY DO IT FOR MGA, OR FOR        12:37

21   ANY NUMBER OF OTHER TOY COMPANIES OR SIMILAR DESIGN CONCEPTS.

22           AND SOMEBODY WHO'S GOING TO BE ENGAGED IN SELF

23   EMPLOYMENT, IN FREELANCE WORK, AND THEY ARE PREPARING TO DO

24   THAT AS THEY ARE STILL A MATTEL EMPLOYEE THERE, WHAT ARE THEY

25   DOING?  THEY ARE BUFFING UP THEIR PORTFOLIO; THEY ARE DOING         12:37
```

1    SOME FRESH DRAWINGS TO BE ABLE TO SHOW, TO BE ABLE TO CARRY OUT

2    THIS SELF-EMPLOYMENT.

3            AND THAT'S ONE OF THE THINGS WHICH MATTEL WOULD SAY,

4    'AHA, YOU KNOW THAT SELF-EMPLOYMENT DRAWING, THAT BUFFING UP OF

5    YOUR PORTFOLIO, WHILE IT WAS DONE WHILE YOU STILL WERE EMPLOYED      12:38

6    BY MATTEL BUT NOT ON MATTEL TIME, THAT BELONGS TO US.'

7            SO HOW DOES A DESIGNER, A PERSON SUCH AS MR. BRYANT,

8    WHO DRAWS BEAUTIFUL PICTURES, HOW DOES A PERSON WHO'S

9    PROFESSION IS TO PAINT FACES OR IMAGES FOR DOLLS -- WOMEN WHO

10   ROOT DOLL HAIR; WOMEN WHO CREATE PATTERNS OF CLOTHING FOR           12:38

11   DOLLS; THEY WANT TO PREPARE TO COMPETE.  HOW CAN THEY CREATE

12   SOMETHING THAT IS THEIR OWN, FOR THEIR OWN PORTFOLIO, AND STILL

13   ADHERE TO THIS CONTRACT?

14           THEY CAN'T.

15           WHAT'S PARTICULARLY TROUBLING HERE IS THAT MATTEL          12:38

16   THEMSELVES, WHEN THEY WERE HIRING MR. BRYANT FOR THE VERY FIRST

17   TIME, GAVE HIM A TRYOUT, THEY SAID 'HERE, WE'RE GOING TO GIVE

18   YOU A CONCEPT, AND WE WANT YOU TO GO AND EXECUTE ON THAT

19   CONCEPT.'  AND HE DID, AND HE MADE THIS REALLY INTERESTING

20   THING, SORT OF A CARTOONISH THING.  HE WAS DOING THAT.  HE WAS      12:39

21   DOING THIS TRYOUT BEFORE HE WAS WORKING WITH MATTEL.  IT SO

22   HAPPENED THAT AT THE TIME HE WASN'T WORKING FOR ANY COMPETITOR.

23           BUT NOW HE'S AT MATTEL AND NOW HE WANTS TO GO AND GO

24   TO WORK ON HIS OWN AND TO SELL PRODUCTS TO ONE OF MATTEL'S

25   COMPETITORS.  AND THEY SAID 'LET US SEE WHAT YOU DO.'              12:39

1      HOW DOES HE DO A TRYOUT FOR THAT NEW COMPANY WITHOUT

2  MATTEL SWOOPING IN WITH THIS AGREEMENT AND SAYING, 'OH, NO,

3  THAT'S OURS.  AND NOT ONLY THAT, YOU CAN'T SHOW IT TO THEM, AND

4  IT'S AUTOMATICALLY ASSIGNED TO US.'

5      IT CAN'T BE DONE, AND IT'S NOT FAIR.  AND IT DOES    12:39

6  INFRINGE ON THE FUNDAMENTAL PUBLIC POLICIES INVOLVING EMPLOYEE

7  MOBILITY WHICH IS PREDICATED ON BUSINESS AND PROFESSIONS CODE

8  SECTION 16600, AS YOU'LL SEE FROM THE BANCROFT-WHITNEY CASE, AS

9  WELL AS PREPARATIONS TO COMPETE.

10      SO WE WOULD SUBMIT THAT THE COUNTERCLAIM HERE ISN'T    12:40

11  ONE, AS MATTEL WOULD HAVE IT, THAT IS RELATED SOLELY TO THE

12  FOUR CORNERS OF THIS DOCUMENT.

13      WE ALSO, YOUR HONOR, DID SUBMIT OBJECTIONS TO THEIR

14  REQUEST FOR JUDICIAL NOTICE.  THIS IS, AFTER ALL, A RULE 12(B)

15  MOTION, AND AS A CONSEQUENCE, EVIDENCE IS NOT TO BE TAKEN IN    12:40

16  CONNECTION WITH THAT THAT IS NOT PART AND PARCEL OF THE FOUR

17  CORNERS OF THE COMPLAINT.

18      IN OUR OBJECTIONS TO THEIR REQUEST FOR JUDICIAL

19  NOTICE, WE CITE TO THE NINTH CIRCUIT'S DECISION IN LEE WHICH

20  SPECIFICALLY SAYS THIS IS NOT PERMISSIBLE, AND WE ADDRESS THE    12:40

21  BREENO CASE WHERE THEY SAID 'WELL, YOU CAN GO AHEAD AND DO

22  THIS.'

23      YOU, YOUR HONOR, CAN TAKE A LOOK AT THIS CONTRACT

24  WHEN DECIDing this MOTION.  IN FACT, THE BREENO CASE IS

25  ABSOLUTELY DISTINGUISHABLE IN THAT CASE THAT DEALT WITH ISSUES    12:41

```
 1   PERTAINING TO A HEALTH PLAN AND DEALT WITH OPERATING DOCUMENTS

 2   WITHIN THE HEALTH PLAN OVER WHICH THERE WAS NO DISPUTE OF THOSE

 3   DOCUMENTS; AND SO THE NINTH CIRCUIT UNDER THOSE LIMITED

 4   CIRCUMSTANCES --

 5           THE COURT:  THERE'S NO DISPUTE OVER THIS EMPLOYMENT       12:41

 6   AGREEMENT.  THAT IS THE EMPLOYMENT AGREEMENT IN QUESTION.

 7           I UNDERSTAND THERE'S A DISPUTE IN TERMS OF WHAT THE

 8   TERMS MEAN OR WHAT WAS EXPLAINED; BUT IN TERMS OF THE AGREEMENT

 9   ITSELF, THERE'S NO DISPUTE FROM AN AUTHENTICITY STANDPOINT THAT

10   THIS IS THE AGREEMENT THAT YOUR CLIENT SIGNED.                   12:41

11           MR. WICKHAM:  YOUR HONOR, I THINK THE ANSWER TO THE

12   QUESTION IS YES AND NO.

13           THERE IS A HOT DISPUTE AS TO WHAT MY CLIENT AGREED

14   TO.  MY CLIENT DID NOT AGREE TO THESE TERMS.  HE COULDN'T HAVE

15   AGREED TO THESE TERMS.  HE HAS NO CLUE TO THE PRESENT DAY WHAT   12:41

16   THESE TERMS MEAN.

17           THE COURT:  IS THIS THE AGREEMENT HE SIGNED?

18           MR. WICKHAM:  SO FAR AS I KNOW, THIS IS THE DOCUMENT

19   THAT HE DID SIGN.  BUT, YOUR HONOR, ALL OF THIS POINTS TO THE

20   FACT THAT WE SHOULDN'T BE TERMINATING THIS CASE AT THE PLEADING  12:42

21   STAGE.  HE SHOULD BE GIVEN THE OPPORTUNITY TO BE CONDUCTING

22   DISCOVERY.

23           IF THEY BELIEVE THAT THE DISCOVERY IS GETTING

24   BURDENSOME FOR A MULTI-BILLION DOLLAR COMPANY WHO HAS BROUGHT

25   AND HAS FORCED MR. BRYANT TO INCUR UNTOLD LEGAL FEES -- I MEAN,  12:42
```

```
 1   NOT THAT MY HEART IS TERRIBLY SYMPATHETIC, BUT MR. BRYANT

 2   SHOULD BE ALLOWED TO CONDUCT SOME DISCOVERY TO BE ABLE TO GET

 3   TO THE CORE OF THESE MATTERS.

 4           AND WHETHER PROP 64 APPLIES OR NOT, HE WILL AND DOES

 5   SATISFY THE CRITERIA FOR STANDING UNDER THAT STATUTE.  SEPARATE    12:42

 6   AND APART FROM THAT, HIS RESCISSION CLAIM WHICH GOES TO ISSUES

 7   THAT WERE PREVIOUSLY ARTICULATED, AS WELL AS THE FRAUDULENT

 8   CONCEALMENT CLAIM AND THE DECLARATORY RELIEF CLAIM THAT SHOULD

 9   SURVIVE THIS MOTION.

10           THE COURT:  THANK YOU, COUNSEL.                            12:43

11           MR. QUINN, VERY BRIEFLY.

12           MR. QUINN:  YES, YOUR HONOR.

13           I'LL REPRESENT TO THE COURT THAT I TOOK MR. BRYANT'S

14   DEPOSITION AND I SHOWED HIM THAT AGREEMENT AND HE SAID THAT WAS

15   HIS SIGNATURE ON THAT; MR. WICKHAM WAS THERE AT THE TIME.          12:43

16           THE REMEDY UNDER PROP 64 IS A LIMITED ONE; IT'S NOT

17   ENOUGH TO SAY -- AND BY THE WAY, I DON'T SEE ANY REFERENCE IN

18   THE PARAGRAPH THAT MR. WICKHAM REFERRED TO, PARAGRAPH 42, TO

19   ANY DAMAGES CLAIM OR ANY ALLEGATION THAT HE SUSTAINED ANY

20   DAMAGE IN PARAGRAPH 42.                                            12:43

21           THE COURT:  I AM GOING TO TAKE ANOTHER LOOK AT THAT.

22           MR. QUINN:  IN THE PRAYER FOR RELIEF, HE SAYS

23   COMPENSATORY DAMAGE IS ACCORDING TO PROOF.  HOWEVER, DAMAGES

24   ARE NOT ENOUGH UNDER PROP 64.  WHAT'S LEFT AFTER PROP 64 IS

25   ONLY RESTITUTION.                                                  12:43
```

1          PROP 64 SAYS THAT ANYONE WHO HAS SUFFERED INJURY, IN

2     FACT, AND LOST MONEY OR PROPERTY AS A RESULT OF A VIOLATION OF

3     THIS CHAPTER CAN BRING A CLAIM.

4          YOU HAVE TO HAVE LOST MONEY OR PROPERTY.

5          SO NOT ONLY, AT LEAST IN PARAGRAPH 42, IS THERE NO          12:44

6     ALLEGATION OF DAMAGES.  EVEN IF IT WERE THERE, THAT'S NOT

7     ENOUGH.  YOU ACTUALLY HAVE TO HAVE LOST MONEY OR PROPERTY.

8          IN TERMS OF MR. BRYANT'S SUITABILITY AND COUNSEL'S

9     SUITABILITY, I'M SURE COUNSEL WOULD BE A FINE REPRESENTATIVE IF

10    THIS WAS AN APPROPRIATE CLASS ACTION.  THE ELEMENTS OF THE          12:44

11    CLASS ACTION, OBVIOUSLY, HAVE NOT BEEN BRIEFED HERE.

12         BUT I THINK ON THE FACE OF IT THE COURT CAN SEE.  HE

13    PURPORTS TO REPRESENT EVERY EMPLOYEE WHO HAS EVER SIGNED ONE OF

14    THESE AGREEMENTS.  INHERENT IN THAT ARE ALL KINDS OF ISSUES OF

15    INDIVIDUAL ISSUES OF FACT CONCERNING THE CIRCUMSTANCES UNDER          12:44

16    WHICH THEY SIGNED THE AGREEMENTS; WHAT WAS SAID TO THEM; WHAT

17    ALTERNATIVES THEY HAD.

18         THE COURT:  THAT'S MY WHOLE PROBLEM WITH YOUR

19    POSITION, COUNSEL.  I THINK YOU'RE RIGHT; THAT INHERENT IN ALL

20    OF THESE ARE THESE ISSUES OF FACT.  THAT'S WHERE I'M          12:45

21    SOMEWHAT -- I QUESTION WHETHER I CAN RESOLVE THIS AT THIS

22    STAGE.

23         MR. QUINN:  WELL, THE CROSS-COMPLAINT IS ONE THAT

24    ASSERTS THAT A PARTICULAR CONTRACT VIOLATES 17200.  IF WE'RE

25    PAST THE PROP 64 QUESTION, THAT IS A QUESTION THIS COURT CAN          12:45

1    DECIDE.

2            THE COURT:  WHETHER OR NOT THAT EMPLOYMENT AGREEMENT

3    IS FAIR, WHETHER IT WAS FAIRLY CONCEIVED, FAIRLY NEGOTIATED,

4    FAIRLY EXPLAINED, WHETHER IT HAS FRAUDULENT ASPECTS TO IT OR IN

5    THE WAY IT WAS DESCRIBED, THESE ARE ALL OF THE ALLEGATIONS THAT      12:45

6    ARE THE FACT BASE.  AND IT'S FOR THE VERY REASON THAT I DO TEND

7    TO AGREE WITH YOU THAT I HAVE TROUBLE WITH THIS PARTICULAR

8    COMPLAINT GOING FORWARD ON A CLASS BASIS AT THIS POINT.  TO

9    THROW OUT MR. BRYANT'S CLAIM AT THIS POINT IS ALSO TROUBLING

10   precisely FOR THAT VERY SAME REASON.                                12:46

11           YOU CAN'T HAVE IT BOTH WAYS.

12           MR. QUINN:  IT DOESN'T STOP ME FROM TRYING.

13           THE COURT:  I ADMIRE THE EFFORT.

14           MR. QUINN:  ON THE FACE OF IT, WHAT WE HAVE HERE IS

15   THE CLAIM THAT THIS CONTRACT -- AND WE ALL HAVE IT IN FRONT OF      12:46

16   US -- IS INVALID BECAUSE IT IS UNLAWFUL, FRAUDULENT, OR UNFAIR.

17           WHERE IS IT?

18           NOW, IF HE'S GOT SOME OTHER CLAIM ABOUT HOW HE WAS

19   TREATED INAPPROPRIATELY, LET HIM PLEAD THAT.  WE HAVEN'T SEEN

20   IT.                                                                 12:46

21           THIS IS AN ATTACK ON THIS CONTRACT.  AND, SURE,

22   THERE'S RHETORIC ABOUT 'HOW CAN HE GO GET A NEW JOB?  HE'S GOT

23   TO BE ABLE TO PREPARE TO COMPETE'; AND ALL OF THE REST OF IT.

24           LOOK AT THE CONTRACT.  IT DOESN'T SAY ANYTHING ABOUT

25   HE CAN'T PREPARE TO COMPETE.  WHAT IT SAYS IS THAT 'WHILE           12:46

```
 1   YOU'RE WORKING FOR US YOU CAN'T ASSIST A COMPETITOR.'

 2            NOW, I DON'T THINK COUNSEL CHALLENGES THE PROPOSITION

 3   THAT THAT'S PERFECTLY LAWFUL.

 4            SO WHERE IS THE ILLEGALITY HERE?

 5            IF WE GET PAST THE RHETORIC -- IT WASN'T EXPLAINED TO       12:47

 6   HIM; LET'S ASSUME ALL THAT'S TRUE.  ASSUME EVERYTHING THEY SAY

 7   ABOUT THE CIRCUMSTANCES UNDER WHICH THIS WAS ENTERED INTO,

 8   ASSUME THAT'S ALL TRUE.  THEN I'D SUBMIT READ THE CUBIX

 9   DECISION, BECAUSE THE COURT GOES THROUGH THAT; TAKE IT OR LEAVE

10   IT BASIS; NONNEGOTIABLE.  THIS GUY INVENTED SOMETHING.  THE        12:47

11   COURT SAYS CUBIX OWNS IT.  THEY WENT OUT AND PATENTED IT.

12   SORRY, CUBIX OWNS IT; JUDGMENT AGAINST THE EMPLOYEE.

13            THE COURT:  THANK YOU, COUNSEL.

14            THE MATTER WILL BE TAKEN UNDER SUBMISSION.  I WILL

15   ISSUE A WRITTEN OPINION SHORTLY.                                   12:47

16            I THINK THAT CONCLUDES THE CALENDAR, MR. HOLMES.

17            MR. QUINN:  ACTUALLY, THERE'S ONE OTHER MOTION.

18            THE COURT:  YES, ON THE DECLARATORY RELIEF.

19            MR. QUINN:  YES.

20            I THINK IT'S PARTLY -- IT MAY BE MOOTED, AT LEAST IN       12:47

21   PART, BECAUSE OF THE COURT'S ORDERS REGARDING CONSOLIDATION.

22            IS THE COURT OPEN TO DISCUSSING THE CONSOLIDATION

23   ISSUE?  WE GOT THE COURT'S ORDER LAST WEEK.

24            THE COURT:  IF THERE'S SOMETHING IN PARTICULAR YOU'D

25   LIKE ME TO ADDRESS THEN, VERY BRIEFLY.                             12:48
```

1          MR. QUINN:  WELL, NOTHING THAT WASN'T IN OUR PAPERS,

2     YOUR HONOR.  OUR VIEW OF THIS WAS THERE WAS ONE CASE THAT

3     RELATES TO THIS WORK THAT THIS PARTICULAR EMPLOYEE DID WHILE HE

4     WORKED FOR US, WE ALLEGE.  AND THAT RELATES TO HIS CONTRACT AND

5     WHO OWNS THAT.                                                    12:48

6          THEN WE HAVE MGA, THE COMPETITOR, COME IN.  WHO, BY

7     THE WAY, I'M CERTAIN IS PAYING POOR MR. BRYANT'S LEGAL FEES.

8          I COULDN'T RESIST BECAUSE IT'S SOMETHING COUNSEL

9     SAID.

10         THE COURT:  I UNDERSTAND.                                   12:48

11         MR. QUINN:  BUT THEN WE HAVE MGA COMING IN, AND I

12    DON'T KNOW WHETHER THE COURT HAD A CHANCE TO LOOK AT IT, BUT IT

13    RAISES A WHOLE HOST OF ISSUES ABOUT A LOT OF DIFFERENT

14    PRODUCTS; TRADE ASSOCIATION THINGS; ALL KINDS OF MEAN AND NASTY

15    THINGS THAT MATTEL IS DOING THAT'S UNFAIR FROM A COMPETITIVE     12:48

16    BASIS.

17         THAT IS A MUCH BROADER COMPLAINT THAT IS GOING TO

18    REQUIRE MORE DISCOVERY; IT'S A COMPLETELY DIFFERENT TRIAL.  TO

19    CONSOLIDATE ALL OF THIS FOR TRIAL, I SUBMIT -- THIS ONE ISSUE

20    ABOUT THIS ONE EMPLOYEE AND WHAT HE DID IN HIS CONTRACT IS      12:49

21    GOING TO GET SUBMERGED.

22         THE COURT:  I DON'T DISAGREE THAT WE MAY BE

23    REVISITING THIS ISSUE IN TERMS OF HOW WE STRUCTURE THE TRIAL,

24    HOW WE STRUCTURE THE HEARINGS.  THIS IS MORE FOR A MATTER OF

25    JUDICIAL EFFICIENCY IN TERMS OF HAVING MULTIPLE CASES ON THE    12:49

1   DOCKET.  IT IS FOR ALL PURPOSES AT THIS POINT.  BUT WE WILL

2   REVISIT THIS ISSUE WHEN WE TALK ABOUT HOW THE TRIAL WILL BE

3   STRUCTURED.  I UNDERSTAND WHAT YOU'RE SAYING.  MY THOUGHT WAS

4   WE COULD REVISIT THOSE ISSUES DOWN THE ROAD.

5           MR. QUINN:  THE PART THAT IS MOOTED IN LIGHT OF THAT          12:49

6   IS THE DECLARATORY -- WE MADE THE MOTION TO DISMISS THAT PART

7   OF THE DECLARATORY RELIEF COMPLAINT THAT RELATED TO OWNERSHIP

8   OF BRATZ.  WE HAD CONTENDED THAT SHOULD BE A COMPULSORY

9   COUNTERCLAIM IN VIEW OF CONSOLIDATION.  THAT'S MOOT.

10          SO WHAT'S LEFT?  THE REMAINING ISSUE FOR THE COURT IS        12:50

11  THERE'S A DECLARATORY RELIEF CLAIM WHERE MR. BRYANT IS SEEKING

12  JUDICIAL DECLARATION THAT HIS BRATZ INVENTION DOES NOT INFRINGE

13  THE COPYRIGHT IN SOMETHING CALLED TOON TEENS, A DOLL THAT

14  MATTEL HAS COPYRIGHTED.  THERE'S TWO ISSUES ON THAT.  IT'S

15  BRIEFED FAIRLY WELL.  THERE'S EVEN BEEN SUPPLEMENTAL BRIEFS        12:50

16  FILED, SO I WON'T SPEND MUCH TIME ON IT, YOUR HONOR.

17          BUT MATTEL HAS NEVER, EVER MADE ANY CLAIM THAT BRATZ

18  INFRINGES THE COPYRIGHT OF TOON TEENS.  THERE'S NO CASE FOR

19  CONTROVERSY.  THERE'S A LOT OF CASE LAW IN THIS AREA,

20  ESPECIALLY IN THE PATENT AREA; YOU DO NOT WANT TO WRITE A          12:50

21  LETTER FOR FEAR THAT SOMEBODY MIGHT DJ YOU IN SOME DISTRICT

22  WHERE YOU DON'T WANT TO BE.

23          WE HAVE NEVER WRITTEN A LETTER; NEVER MADE A CLAIM;

24  NEVER ASSERTED IT.  AND WHAT THEY RELY ON TO SAY THERE'S A CASE

25  IS A WALL STREET JOURNAL ARTICLE WHICH REFERS TO SOME UNNAMED      12:51

```
 1   INDIVIDUAL AT MATTEL WHO SUPPOSEDLY SAID -- SOMETHING THAT

 2   SOMEBODY SAID IN HONG KONG -- NOTHING THAT MATTEL EVER DID OR

 3   SAID.  THERE IS NO CASE OR CONTROVERSY ON THAT, YOUR HONOR.

 4        AND LOOKING FORWARD TO THE STRUCTURE OF THIS CASE, TO

 5   WHAT THE TRIAL MIGHT LOOK LIKE, TO INTRODUCE THIS COPYRIGHT        12:51

 6   ISSUE ABOUT TOON TEENS IS GOING TO COMPLICATE IT; IT'S A RED

 7   HERRING; AND IT'S NOT SOMETHING WE'VE EVER CLAIMED.

 8        NOT TO MENTION THAT MR. BRYANT NO LONGER HAS ANY

 9   STANDING HERE TO ASSERT THE COPYRIGHT CLAIM SINCE HE ASSIGNS

10   ALL HIS RIGHTS TO BRATZ TO MGA.                                   12:51

11        NOW, THEY SAY, 'WELL, IT POTENTIALLY COULD STILL BE A

12   PROBLEM FOR HIM BECAUSE HE CONTINUES TO CONSULT AND TALK ABOUT

13   IMPROVEMENTS TO BRATZ AND THINGS LIKE THAT.'  THERE'S NOTHING

14   ABOUT THAT IN THEIR DEC RELIEF COMPLAINT ITSELF ABOUT WHAT HE'S

15   DOING OR WHAT HE MIGHT DO AND HOW HE MIGHT BE LIABLE.             12:52

16        IT'S ONE ISSUE, I THINK, THE COURT CAN AND SHOULD

17   TAKE OUT OF THE CASE AT THIS STAGE.

18        THE COURT:  THE COURT WILL LOOK AT THAT.

19        MR. JACOBY:  JUST VERY BRIEFLY.

20        THE COURT:  JUST ON THIS DEC RELIEF ISSUE.                   12:52

21        MR. JACOBY:  I WOULD SUGGEST TO THE COURT THAT

22   MR. BRYANT WOULD BE A FOOL IF HE DIDN'T HAVE A REASONABLE

23   APPREHENSION OF LITIGATION AS A RESULT OF TOON TEENS, AND

24   EXHIBIT NUMBER ONE IS THE COPYRIGHT REGISTRATION OF TOON TEENS

25   FILED BY THE QUINN EMANUEL FIRM; NOT IN 1998 AND 1999 WHEN THEY   12:52
```

1  WERE TRYING TO DEVELOP TOON TEENS AS A TOY, BUT IN THE VERY

2  SAME MONTH, NOVEMBER 2003, WHEN THEY ALLEGE IN THE MATTEL

3  VERSUS BRYANT COMPLAINT THAT THEY DISCOVERED BRYANT'S

4  ACTIVITIES.

5       NOW, WHY DO THEY DO THAT?  WHY DID THEY REGISTER A   12:52

6  COPYRIGHT REGISTRATION IF IT WASN'T GOING TO BE A PREDICATE TO

7  SUE MR. BRYANT, WHICH IT ABSOLUTELY IS UNDER COPYRIGHT LAW.

8       NOW HERE WE ARE IN JUNE OF 2006, AND YOU WON'T SEE

9  TOON TEENS IN ANY TOYS 'R US.  BUT WHAT YOU WILL SEE, IF YOU

10  READ THE DEPOSITION OF CARTER BRYANT, IS THOSE SAME QUINN   12:53

11  EMANUEL LAWYERS QUESTIONING MR. BRYANT AT LENGTH ABOUT THE

12  SUBSTANTIAL SIMILARITIES THEY ALLEGE BETWEEN TOON TEENS AND THE

13  BRATZ DRAWINGS.

14       THERE'S BEEN EXTENSIVE DISCOVERY ON THIS ISSUE, AND

15  WE HAVE OFFERED, WHEN WE PROPOUNDED THE P.M.K. NOTICE, SAID   12:53

16  'GIVE US THE PERSON MOST KNOWLEDGEABLE ABOUT TOON TEENS,' AND

17  THEY OBJECTED TO IT.  WE SAID 'WE WILL TAKE THIS OFF THE

18  TABLE.'

19       AND I EXTEND THE OFFER TODAY TO TAKE TOON TEENS ISSUE

20  OFF THE TABLE IF MATTEL WILL STIPULATE THEY ARE NOT AND WILL   12:53

21  NOT ALLEGE THAT BRYANT IS INFRINGING ON TOON TEENS.

22       THE COURT:  MR. QUINN?

23       MR. QUINN:  WE ARE NOT ALLEGING IT, AND WE HAVE NO

24  PRESENT INTENTION OF ALLEGING IT.

25       THE COURT:  THAT FALLS JUST SHORT OF WHAT COUNSEL   12:53

```
 1   ASKED FOR, AND YOU KNOW WHAT IT FALLS SHORT OF.

 2           MR. QUINN:  I DO UNDERSTAND, YOUR HONOR, BUT THE

 3   QUESTION IS THERE A CASE --

 4           THE COURT:  I'M INTERRUPTING COUNSEL'S ARGUMENT HERE.

 5   IT'S JUST ONE QUESTION.  WILL YOU?                          12:54

 6           MR. QUINN:  WE WILL NOT.

 7           THE COURT:  THERE YOU GO, COUNSEL.

 8           MR. JACOBY:  WILL NOT STIPULATE OR WILL NOT SUE?

 9           MR. QUINN:  WE WILL NOT MAINTAIN THAT BRATZ INFRINGES

10   THE COPYRIGHT IN TOON TEENS.                                12:54

11           THE COURT:  THERE YOU GO.

12           MR. JACOBY:  IF THAT IS THE CASE, WE CAN SPEAK WITH

13   COUNSEL ABOUT THAT AND PERHAPS LIMIT THE DECLARATORY RELIEF

14   CLAIM.  BUT I WOULD SUGGEST THAT THERE ARE OTHER ASPECTS OF

15   THIS.                                                       12:54

16           IN DISCOVERY, MATTEL HAS PRODUCED DRAWINGS OF

17   SOMETHING CALLED ROLLERBLADING BARBIE, AND IT HAS BEEN

18   SUGGESTED THAT PERHAPS SOME ASPECTS OF BRATZ INFRINGES ON THAT.

19           MATTEL HAS BEEN VERY, VERY CAGEY THROUGHOUT THIS

20   LITIGATION.  WHEN WE ASKED THEM INTERROGATORIES THAT SAID 'WHAT   12:54

21   THINGS DO YOU ALLEGE THAT MR. BRYANT COPIED?'  THE CONSISTENT

22   RESPONSE WE GET, IN WRITTEN RESPONSES AND IN SUBSEQUENT

23   MEET-AND-CONFERS, IS 'WE DON'T KNOW WHAT HE COPIED.  WE HAVE TO

24   ASk YOUR GUY.'

25           THE ONLY PERSON BEFORE YOU TODAY WHO'S WILLING TO GO      12:55
```

1    ON RECORD UNDER RULE 11 AND SAY 'I DIDN'T COPY ANYTHING' IS

2    CARTER BRYANT.  'I DIDN'T COPY ROLLERBLADE BARBIE; I DIDN'T

3    COPY TOON TEENS.  THERE'S NOT A SHRED OF MATTEL WORK PRODUCT

4    THAT I COPIED.'  AND THAT'S WHAT THIS DECLARATORY RELIEF ASKS

5    FOR; A DECLARATION THAT SAYS MR. BRYANT DIDN'T COPY ANYTHING.          12:55

6    AND HE DOESN'T WANT TO HAVE TO WAIT UNTIL WE STAND HERE ON THE

7    FIRST DAY OF TRIAL TO FIND OUT WHAT MATTEL IS ALLEGING.  HE

8    SHOULDN'T HAVE TO WAIT.  FOR FIVE AND A HALF YEARS, HE'S BEEN

9    DEVELOPING THE BRATZ PRODUCT, AND HE DOES HAVE STANDING; HE

10   DOES HAVE A CONTINUING --                                             12:55

11        MR. BRYANT IS AN INDEPENDENT CONTRACTOR, AN

12   INDEPENDENT BUSINESSMAN.  HE GETS THREE PERCENT ROYALTY ON ANY

13   DOLL HE WORKS ON.  IF A DOLL HE CREATED IN 2001 AND SOLD

14   TODAY -- HE GETS A THREE PERCENT ROYALTY.  HE CURRENTLY HAS A

15   CONTINUING STAKE.  THEY KNOW THAT, BECAUSE WE HAVE PRODUCED THE       12:56

16   ROYALTY STATEMENT.  HE HAS STANDING UNDER ARTICLE THREE BECAUSE

17   THEY ARE TRYING TO CUT IT OFF; TRYING TO CUT OFF MR. BRYANT'S

18   ABILITY TO CONTINUE TO WORK WITH MGA TO DEVELOP THESE BRATZ

19   PRODUCTS.  THEY ARE TRYING TO WIN THE WHOLE COMPANY.

20        THE COURT:  I'M GOING TO ORDER, MR. JACOBY, THAT YOU            12:56

21   MEET WITH MR. QUINN AND SUBMIT A JOINT STATEMENT TO THE COURT

22   WITHIN THREE DAYS OF TODAY TO SEE IF YOU CAN'T RESOLVE ALL OR

23   PART OF THIS DECLARATORY RELIEF ACTION BY STIPULATION HERE, AND

24   THEN THE COURT WILL RESOLVE WHAT REMAINS OF THAT.

25        MR. JACOBY:  THANK YOU, YOUR HONOR.                             12:56

1          THE CLERK:   COURT STANDS IN RECESS.

2

3

4

5

6

7

8

9

10

11

12

13

14

15                          CERTIFICATE

16

17   I hereby certify that pursuant to section 753, title 28, united
     states code, the foregoing is a true and correct transcript of
18   the stenographically recorded proceedings held in the above-
     entitled matter and that the transcript page format is in
19   conformance with the regulations of the judicial conference of
     the united states.

20

21   _____          _____
     THERESA A. LANZA, RPR, CSR                          Date
22   Official COURT Reporter

23

24

25


          JUNE 26, 2006          ED CV 04-9049-SGL