1              UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3                   EASTERN DIVISION

4                       - - -

5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                       - - -

7   CARTER BRYANT,                    )
                                      )
8                      Plaintiff,     )
                                      )
9           vs.                       )   No. ED CV 04-09049
                                      )   (LEAD LOW NUMBER)
10  MATTEL, INC.,                     )
                                      )
11                     Defendants.    )   STATUS/SCHEDULING
    _____  )        CONFERENCE
12  AND RELATED ACTIONS,             )
    _____  )

13

14

            REPORTER'S TRANSCRIPT OF PROCEEDINGS
15
                   RIVERSIDE, California
16
                 Monday, FEBRUARY 12, 2007
17
                       1:49 P.M.
18

19

20

21

22

23            THERESA A. LANZA, RPR, CSR
            FEDERAL Official Court Reporter
24            3470 12th Street, Rm. 134
            RIVERSIDE, California  92501
25                (951) 274-0844
              Csr11457@sbcglobal.net

```
 1   APPEARANCES:

 2

 3   On behalf of Plaintiff/COUNTER DEFENDANT MATTEL, INC.:

 4
                         QUINN EMANUEL
 5                       BY:  JOHN B. QUINN
                         865 S. FIGUEROA STREET,
 6                       10TH FLOOR
                         LOS ANGELES, California  90017
 7                       (213) 624-7707

 8

 9   on behalf of PLAINTIFF/COUNTER COMPLAINANT/DEFENDANT,
     CARTER BRYANT:
10
                         LITTLER MENDELSON
11                       BY:  KEITH A. JACOBY
                         2049 CENTURY PARK EAST,
12                       FIFTH FLOOR
                         LOS ANGELES, California  90067
13                       (310) 553-0308

14

15   ON BEHALF OF MGA ENTERTAINMENT:

16                       O'MELVENY & MYERS LLP
                         BY:  DIANA M. TORRES
17                       400 SOUTH HOPE STREET
                         LOS ANGELES, CA  90071-2899
18                       (213) 430-6556

19

20

21

22

23

24

25
```

1    RIVERSIDE, CALIFORNIA; monday, FEBRUARY 12, 2007; 1:49 P.M.

2                             -oOo-

3          THE CLERK:  CALLING CALENDAR ITEM 13, CARTER BRYANT

4    VERSUS MATTEL, INC., CV 04-09049.

5          MAY WE HAVE COUNSEL PLEASE COME FORWARD AND STATE      01:49

6    YOUR APPEARANCES FOR THE RECORD.

7              MR. QUINN:  JOHN QUINN, MIKE ZELLER FOR MATTEL.

8              MR. ZELLER:  GOOD AFTERNOON.

9              MS. TORRES:  DIANA TORRES FOR MGA.

10             MR. JACOBY:  KEITH JACOBY FOR CARTER BRYANT.       01:50

11         THE COURT:  GOOD AFTERNOON.  WE'RE ON CALENDAR FOR A

12   STATUS/SCHEDULING CONFERENCE TODAY.  I'VE RECEIVED THE REPORTS

13   SUBMITTED BY COUNSEL REGARDING THE CASES.

14         I'VE ALSO, JUST AS A SIDE NOTE, RECEIVED A

15   STIPULATION AND ORDER REGARDING THE REQUEST TO EXTEND THE     01:50

16   DEADLINE WITHIN WHICH TO FILE A MOTION FOR REVIEW OF THE

17   DISCOVERY SPECIAL MASTER'S ORDER, WHICH I WILL SIGN.

18         I'VE SEEN, FROM ALL OF THE VARIOUS UNDER-SEAL

19   MATTERS, THAT YOU HAVE CERTAINLY NOT BEEN SHY ABOUT USING THE

20   SPECIAL MASTER.                                              01:50

21         I'D LIKE TO HEAR YOUR FINAL THOUGHTS ON THIS BEFORE I

22   MAKE A FINAL DECISION, BUT I'M EVEN MORE CONVINCED TODAY THAN I

23   WAS WHEN I FIRST SUGGESTED IT THAT, IN MY VIEW, THE

24   9059-CASE -- THE CASE THAT, FROM MY ASSESSMENT OF IT, WILL

25   HOPEFULLY ANSWER THE QUESTION AS TO WHO OWNS BRATZ BETWEEN    01:51

```
 1   MATTEL AND CARTER BRYANT -- IS THE CASE THAT SHOULD GO FIRST.

 2   IN MY VIEW, IT'S THE DOG THAT KIND OF WAGS THE TAIL HERE, THE

 3   TAIL BEING THE 2727-CASE.  NOT TO SUGGEST THAT ONE CASE IS ANY

 4   MORE OR ANY LESS IMPORTANT THAN THE OTHER.  I JUST THINK IT

 5   MAKES MORE SENSE, IN TERMS OF THE SEQUENCE, THAT IF WE CAN          01:51

 6   RESOLVE WHO OWNS THE DOLL IN QUESTION, THAT MANY OF THE ISSUES

 7   IN THE OTHER CASE MAY BE RESOLVED, AND IT'S JUST A CLEANER WAY

 8   OF PROCEEDING.  THAT'S WHAT I'M INCLINED TO DO.

 9        AND I APPRECIATE COUNSEL PUTTING ALTERNATIVE DATES

10   OUT, BUT BEFORE I MAKE THAT FINAL, I THOUGHT YOU MIGHT HAVE         01:52

11   SOME ADDITIONAL THOUGHTS AS YOU PREPARED FOR THE STATUS

12   CONFERENCE.

13        MR. QUINN?

14        MR. QUINN:  THANK YOU, YOUR HONOR.

15        WHEN WE WERE LAST HERE BEFORE YOUR HONOR, THE COURT            01:52

16   RAISED THE ISSUE ABOUT 'WOULD IT MAKE SENSE TO TRY THE ISSUE OF

17   BRATZ' OWNERSHIP FIRST.'  AND WHAT THE COURT JUST SAID, I

18   HEARD, TO DESCRIBE SOMETHING A LITTLE BIT DIFFERENT; THE COURT

19   REFERRED TO THE FIRST-FILED COMPLAINT, WHICH IS SOMEWHAT

20   BROADER.                                                           01:52

21        THE COURT:  SOMEWHAT, YES.

22        MR. QUINN:  BECAUSE THAT DOES ANSWER SOME OF OUR

23   CONCERNS ABOUT THAT, BECAUSE THE BREACH OF FIDUCIARY DUTIES,

24   INTERFERENCE CLAIMS AND OTHERS, ALL KIND OF AROSE FROM THE SAME

25   FACTS.                                                             01:52
```

```
 1              THE COURT:  YES.

 2              MR. QUINN:  I GUESS THERE ARE STILL -- I THINK THERE

 3   ARE SOME ISSUES, YOUR HONOR, WITH TRYING TO BIFURCATE TRIAL

 4   THAT WAY, OR AT LEAST TO TRY TO MAKE THAT DECISION NOW.

 5              FOR EXAMPLE, IN THAT FIRST COMPLAINT, THERE ARE NO        01:53

 6   CLAIMS ASSERTED AGAINST MGA.  THESE CASES EVOLVED AS ADDITIONAL

 7   FACTS CAME TO LIGHT.  MGA INTERVENED IN THAT FIRST CASE BEFORE

 8   THERE WAS AN AMENDMENT TO OUR PLEADING; SO IF WE WERE JUST TO

 9   TRY THAT CASE, I GUESS WE HAVE MGA THERE AS AN

10   INTERVENOR-DEFENDANT, NEITHER ASSERTING ANY CLAIMS, NOR ON THE       01:53

11   RECEIVING END OF ANY CLAIMS.  IN EFFECT, WE HAVE TWO SETS OF

12   LAWYERS AT EVERY STAGE SPEAKING FOR THE DEFENDANTS.

13              THE COURT:  BUT DO WE EVER REALLY GET AWAY FROM THAT?

14              MR. QUINN:  WELL, I THINK WE DO GET AWAY FROM THAT IF

15   WE INCLUDE THE CLAIMS AGAINST MGA THAT NATURALLY GROW OUT OF         01:53

16   THAT FIRST COMPLAINT.

17              FOR EXAMPLE, THERE ARE CLAIMS FOR -- AND THESE ARE

18   NOW IN THE AMENDED PLEADING WHICH IS PRESENTLY FRAMED AS A

19   COUNTERCLAIM --

20              THE COURT:  RIGHT.                                        01:54

21              MR. QUINN -- CLAIMS FOR TORTIOUS INTERFERENCE; CLAIMS

22   FOR CONSPIRACY TO BREACH EMPLOYMENT OBLIGATIONS.  THOSE CLAIMS

23   MADE AGAINST MGA THAT ARISE OUT OF THOSE SAME SET OF FACTS,

24   YOUR HONOR, IT SEEMS TO ME QUITE LOGICALLY OUGHT TO BE TRIED

25   WITH THOSE OTHER CLAIMS AGAINST CARTER BRYANT.                       01:54
```

1        THERE'S NO DISPUTE, BECAUSE MR. BRYANT HAS TESTIFIED

2   TO IT, THAT HE WAS, IN FACT, WORKING FOR MGA; THAT HE WAS PAID

3   BY MGA; THAT HE DID ASSIGNMENTS FOR MGA; ALL WHILE HE WAS STILL

4   EMPLOYED BY MATTEL.  SO TO SORT OF PRETEND THOSE CLAIMS AREN'T

5   THERE AND ALLOW MGA TO PARTICIPATE WITH A SECOND SET OF LAWYERS    01:54

6   THERE ON THE DEFENSE SIDE WITHOUT INCLUDING THOSE CLAIMS SEEMS

7   BOTH IN EFFICIENT AND PARTICULARLY UNFAIR BECAUSE THOSE CLAIMS

8   ARE ALL THERE.

9        WHATEVER HAPPENS IN THAT FIRST TRIAL, YOU WOULD STILL

10  HAVE -- I MEAN, IF THE ISSUE IS BRATZ OWNERSHIP, THAT'S NOT       01:55

11  GOING TO RESOLVE THE QUESTION OF DID HE BREACH HIS FIDUCIARY

12  DUTIES.  AND EVEN IF HE DIDN'T CREATE SOMETHING THAT MATTEL NOW

13  OWNS, AND THE JURY FINDS MATTEL DOESN'T OWN IT, FOR WHATEVER

14  REASON, THAT DOESN'T DISPOSE OF THE REASON OF WAS IT RIGHT FOR

15  HIM TO RECEIVE MONEY FROM MGA AND DO WORK FOR MGA WHETHER OR      01:55

16  NOT HE CREATED SOMETHING THAT WE OWN?  THOSE CLAIMS ARE ALL NOT

17  GOING TO BE DISPOSED OF IN ANY EVENT.

18       SO IF WE'RE GOING TO FOCUS ON THOSE FIRST SET OF

19  ISSUES ABOUT BRYANT AND WHAT HE DID WHEN HE WAS EMPLOYED BY

20  MATTEL UNNECESSARILY, I THINK WE'RE GOING TO HAVE TO ADDRESS      01:55

21  MGA'S INVOLVEMENT, AND IT DOESN'T MAKE A WHOLE LOT OF SENSE, IT

22  SEEMS, TO SORT OF KEEP THOSE OUT FOR A SECOND TRIAL.

23       THE OTHER THING I WOULD SAY, YOUR HONOR, AND REALLY

24  WITH RESPECT TO THE RICO CLAIM, I WOULD SUBMIT, YOUR HONOR,

25  THAT IT'S FAIR AND APPROPRIATE THAT MATTEL SHOULD BE PERMITTED    01:56

```
 1    TO PRESENT TO THE JURY ALL THE RACKETEERING ACTS AT ONCE.

 2               FOR EXAMPLE, IF THIS WERE A CASE THAT INVOLVED SIX

 3    BROKEN WINDOWS OR SIX ACTS OF THEFT, IT WOULD BE APPROPRIATE

 4    THAT THE PLAINTIFF BE ABLE TO BE PERMITTED TO PRESENT TO THE

 5    JURY ALL SIX ACTS AT ONCE.  THE JURY IS ENTITLED TO -- I'M SURE

 6    WE'RE GOING TO HEAR A DEFENSE OF 'WE DIDN'T DO ANYTHING

 7    INTENTIONALLY; WE ACTED IN GOOD FAITH.'

 8               THE COURT:  COUNSEL, IF YOU'RE CORRECT, THOUGH, THAT

 9    MATTEL OWNS BRATZ, YOU'LL STILL BE ABLE TO PRESENT THAT AT THE

10    SECOND TRIAL.

11               MR. QUINN:  THEN WHAT WILL WE HAVE?  A JURY

12    INSTRUCTION ON THE ISSUE?  OR ARE WE GOING TO PRESENT THE SAME

13    EVIDENCE AGAIN?  OR EXACTLY HOW WILL THAT PROCEED?

14               THE COURT:  IT WILL HAVE BEEN DECIDED, I PRESUME, BY

15    THAT POINT.  OR NOT.

16               MR. QUINN:  I THINK THE JURY IS ENTITLED -- MATTEL

17    SHOULD BE PERMITTED TO PRESENT TO THE JURY THE FACTS AND

18    CIRCUMSTANCES CONCERNING THAT THEFT.  UNLESS THE JURY IS SIMPLY

19    GOING TO BE INSTRUCTED THAT IT HAS ALREADY BEEN DETERMINED THAT

20    THIS WAS STOLEN.

21               THE COURT:  OR, ALTERNATIVELY, IF IT'S ALREADY BEEN

22    DETERMINED THAT IT WAS NOT STOLEN.

23               MR. QUINN:  PRESUMABLY THEN IT WON'T BE AN ISSUE AT

24    ALL.

25               THE COURT:  THAT'S THE EFFICIENCY, BUT THAT'S JUST
```

01:56
01:56
01:57
01:57
01:57

```
 1   HARD TO SOLVE AT THIS POINT.

 2           MR. QUINN:  BECAUSE THE OTHER ACTS OF THEFT REALLY --

 3   THE RACKETEERING ACTS, THE PATTERN -- ALL RELATE TO THEFT OF

 4   TRADE SECRETS THAT DON'T FALL ONE WAY OR ANOTHER ON THE ISSUE

 5   OF WHO OWNS BRATZ.                                              01:58

 6           THAT WOULD BE MY PITCH, YOUR HONOR, TO THE EXTENT THE

 7   COURT IS INCLINED TO MAKE A DECISION NOW.

 8           AND AS WE INDICATED IN OUR PAPERS, WE REALLY THINK

 9   IT'S KIND OF PREMATURE AT THIS STAGE TO TRY TO STRUCTURE THE

10   TRIAL; THAT THERE ISN'T A REASON TO TRY TO DECIDE THAT RIGHT    01:58

11   NOW.  BOTH SIDES HAVE SUBMITTED PROPOSALS THAT DISCOVERY ON

12   BOTH CASES GO FORWARD FOR THE TIME BEING.

13           THE DEFENDANTS HAVE A DIFFERENT VIEW ON WHEN

14   DISCOVERY OUGHT TO CUT OFF AS TO THE FIRST STAGE, BUT BOTH

15   SIDES HAVE PRESENTED PROPOSALS THAT DISCOVERY SHOULD GO FORWARD 01:58

16   ON BOTH CASES AT THE SAME TIME.  AND WE WOULD SUGGEST, YOUR

17   HONOR, THAT THERE REALLY ISN'T A GOOD REASON RIGHT NOW TO TRY

18   TO BIFURCATE THE TRIAL.

19           THE COURT:  SPEAKING OF DISCOVERY -- AND THIS IS PART

20   OF WHAT GIVES THE COURT SO MUCH PAUSE IN TERMS OF CONTINUING TO 01:58

21   LET THIS CASE GO ON WITHOUT SOME KIND OF PARAMETERS -- THAT IS

22   THE MUTUAL REQUEST FOR NO LIMIT ON THE NUMBER OF EXPERT

23   DEPOSITIONS.  YOU'RE ASKING FOR 40 NONEXPERT DEPOSITIONS WITH

24   NO LIMIT ON THE NUMBER OF RULE 30(B) WITNESSES.

25           THAT IS DISCONCERTING.                                  01:59
```

1        MR. QUINN:  I UNDERSTAND WHY THAT WOULD BE

2   DISCONCERTING TO THE COURT, YOUR HONOR.

3        THE COURT:  WE'VE GOT A SPECIAL MASTER NOW.  I HAVE

4   THESE VISIONS OF THIS CASE, AND HAVING SEEN WHAT'S GONE THROUGH

5   TO THE SPECIAL MASTER, I --                                    01:59

6        MR. QUINN:  THINGS ARE MOVING NOW.

7        JUDGE INFANTE, ALTHOUGH HE'S VERY MUCH IN DEMAND AND

8   HE HAS A BUSY CALENDAR, WE CAN GET ON HIS CALENDAR AND HE MAKES

9   DECISIONS; SO WE'RE OPTIMISTIC NOW THAT WE ARE AT LAST GOING TO

10  BE ABLE TO MOVE FORWARD IN DISCOVERY.                          01:59

11       BUT THIS IS A CASE THAT, IF WE'RE LOOKING AT ALL OF

12  THE PLEADINGS AND ALL OF THE CLAIMS, COVER A VERY, VERY BROAD

13  SCOPE OF ACTIVITY.  I DON'T THINK EITHER SIDE IS GRATUITOUSLY

14  REQUESTING --

15       THE COURT:  AND I'M NOT SUGGESTING THAT, COUNSEL, BUT     02:00

16  I AM GOING TO PUT A LIMIT ON THEM, AND I DON'T LIKE TO JUST

17  COME UP WITH A NUMBER.  I'D RATHER ONE BE SUGGESTED.

18       AT THIS POINT, YOU CERTAINLY HAVE TO HAVE SOME SENSE

19  OF GENERAL AREAS WHERE YOU'RE GOING TO HAVE EXPERT WITNESSES.

20  AN OUTER LIMIT OF THAT WOULD BE WHAT?                          02:00

21       INFINITY JUST DOESN'T WORK.

22       MR. QUINN:  YOUR HONOR, I'M SURE WE COULD COME UP

23  WITH AN OUTER LIMIT.  WE HAVE EVERYTHING FROM VARIOUS TYPES OF

24  MARKETING EXPERTS, TRADE SECRET EXPERTS, TO VALUING OF TRADE

25  SECRET INFORMATION; SEVERAL DIFFERENT CATEGORIES OF            02:00

```
 1    INFORMATION.  AS THE COURT KNOWS, WE HAVE INK-QUESTIONED

 2    DOCUMENT-ANALYSIS-TYPE EXPERTS.  I THINK THERE ARE GOOD REASONS

 3    TO THINK THAT THERE MIGHT BE, ON BOTH SIDES, SOME

 4    SIGNIFICANT -- WHAT THE NUMBER IS, FIVE TO TEN?  SOMEWHERE IN

 5    THERE.                                                           02:01

 6              THE COURT:  MY LAW CLERK AND I DURING THE LUNCH HOUR

 7    WERE ABLE TO COME UP WITH A NUMBER IN THE HIGH TEENS, BUT IT'S

 8    STILL NOT AN INFINITE NUMBER.

 9              MR. QUINN:  I'M SURE WE COULD COME UP WITH A

10    NOT-TO-EXCEED NUMBER, IF THAT WOULD BE HELPFUL AT THIS POINT.    02:01

11    BUT THIS IS A CASE WHERE, IN A RECENT INTERROGATORY ANSWER

12    ABOUT PERSONS KNOWLEDGEABLE, THERE WERE SOME 70 PERSONS

13    IDENTIFIED IN AN ANSWER TO AN INTERROGATORY.

14              THIS IS REALLY NOT A CASE WHERE --

15              THE COURT:  I PRESUME THOSE WERE THE PERSONS          02:01

16    KNOWLEDGEABLE AND NOT NECESSARILY THE PERSONS MOST

17    KNOWLEDGEABLE.

18              MR. QUINN:  NOT NECESSARILY PERSONS MOST

19    KNOWLEDGEABLE, BUT FACT WITNESSES; PERSONS HAVING KNOWLEDGE OF

20    CERTAIN KINDS OF FACTS.                                          02:01

21              PART OF THE PROBLEM IN THIS CASE, YOUR HONOR -- AND I

22    KNOW THIS IS THE LAST THING THE COURT WANTS TO HEAR OR GET INTO

23    AT THIS POINT, AND IT'S NOT SOMETHING I TAKE ANY PLEASURE IN

24    BRINGING UP, BUT I'LL JUST SAY THAT IT HAS BEEN VERY, VERY

25    DIFFICULT TO GET DISCOVERY GOING IN THIS CASE.                   02:01
```

```
 1          THE DEFENDANTS SO FAR HAVE PRODUCED THREE WITNESSES

 2   FOR DEPOSITION.  TWO OF THEM, MR. BRYANT AND MR. LARIAN, IT

 3   REQUIRED TWO COURT ORDERS TO GET THEM TO APPEAR.  MR. BRYANT

 4   WAS INSTRUCTED NOT TO ANSWER QUESTIONS ALMOST ONE HUNDRED

 5   TIMES.  WE'VE MOVED ON 67 OF THOSE AND THAT'S GOING TO BE         02:02

 6   BEFORE JUDGE INFANTE.  THE ONE WITNESS THEY VOLUNTARILY

 7   PRODUCED BY THE NAME OF BRODEY THAT MGA PRODUCED, WE HAD TO

 8   TERMINATE THE DEPOSITION WITHIN ONE HOUR BECAUSE THE WITNESS

 9   WAS INSTRUCTED NOT TO ANSWER QUESTIONS REGARDING E-MAILS THAT

10   THIS WITNESS WROTE.  IT WASN'T A CLAIM OF PRIVILEGE.  THEY JUST   02:02

11   SAID IT'S IRRELEVANT.  SO WE TERMINATED THAT, AND THAT'S NOW

12   TEED UP BEFORE JUDGE INFANTE.

13          THE COURT KNOWS THERE'S AN ISSUE ABOUT EXAMINATION

14   AND TESTING OF ORIGINAL QUESTIONED DOCUMENTS.  YOUR HONOR, WE

15   STILL DON'T HAVE ALL THOSE DOCUMENTS, NOTWITHSTANDING THE FACT    02:02

16   THAT THERE WAS -- THE REPRESENTATION WAS MADE IN JUDGE BLOCK'S

17   COURTROOM THAT THOSE WOULD BE PRODUCED WITHIN 15 DAYS, MANY

18   MANY MONTHS AGO.  THAT DIDN'T HAPPEN.  THAT'S NOW GOING TO BE

19   DECIDED TOMORROW BEFORE JUDGE INFANTE.

20          THERE WERE VOLUMINOUS DOCUMENTS, MANY DIFFERENT           02:03

21   DOCUMENTS, THAT WE WERE SEEKING AND HAVE SOUGHT FOR A LONG

22   TIME.  JUDGE INFANTE, WE FINALLY GOT THAT BEFORE HIM.  HE

23   GRANTED OUR MOTION ALMOST IN ITS ENTIRETY.  I THINK THINGS ARE

24   GOING TO CHANGE NOW.  I'M OPTIMISTIC THAT THINGS WILL CHANGE

25   NOW.                                                             02:03
```

```
 1              BUT THE IMPORTANT POINT IS, THAT I WOULD HOPE THE
 2   COURT WOULD APPRECIATE, IS THAT NOTWITHSTANDING THE AMOUNT OF
 3   TIME THAT'S GONE BY SINCE THIS CASE WAS FILED, DISCOVERY IS
 4   NOWHERE NEAR AS FAR ALONG AS ONE MIGHT EXPECT.  IN PART, IT'S
 5   BECAUSE OF THE STAY.  BUT IT'S, IN PART, BECAUSE OF JUST THE       02:03
 6   INABILITY TO GET ANYWHERE.  AND I DO THINK THAT'S GOING TO
 7   CHANGE NOW.
 8              WE HAVE NO INTEREST IN TAKING DISCOVERY GRATUITOUSLY
 9   OR JUST TO TAKE DISCOVERY, BUT THERE ARE A LOT OF DIFFERENT
10   SUBJECTS THAT NEED TO BE COVERED AND WE'RE STILL AT A PRETTY       02:04
11   EARLY STAGE IN THAT REGARD.
12              THE COURT:  LET ME HEAR FROM MS. TORRES FROM MGA.
13              MS. TORRES:  THANK YOU, YOUR HONOR.
14              AT A CERTAIN POINT, THE LITIGATION DOES HAVE TO GO
15   FORWARD.  AND I WILL SUBMIT TO YOU THAT MATTEL NEVER REALLY       02:04
16   SOUGHT TO MAKE IT GO FORWARD UNTIL JANUARY WHEN THIS COURT SAID
17   'I WANT A SCHEDULE.'
18              MR. QUINN JUST WENT THROUGH A LAUNDRY LIST OF
19   HORRIBLES ABOUT WHAT TYPE OF DISCOVERY-OBSTRUCTIONIST TACTICS
20   WE'VE ENGAGED IN, AND THE FACT OF THE MATTER IS HIS INFORMATION   02:04
21   IS INCOMPLETE, SUFFICE IT TO SAY; THINGS LIKE THE MOTION TO
22   COMPEL CARTER BRYANT FOR DEPOSITION.
23              YES, THEY MOVED TO COMPEL CARTER BRYANT FOR
24   DEPOSITION, AND THEY WERE ABLE TO COMPEL HIM.  BUT NOT UNTIL
25   AFTER WE GOT A PROTECTIVE ORDER REQUIRING THEM TO PRODUCE         02:05
```

1  DOCUMENTS.

2       THERE HAS BEEN A DELAY FOR A START-UP TIME IN GETTING

3  DISCOVERY GOING, BUT FRANKLY IT HAS BEEN MORE BECAUSE WHAT THEY

4  WANT IN DISCOVERY IS SCORCHED-EARTH DISCOVERY TO BE ABLE TO

5  FIND THEIR THEORIES.                                                    02:05

6       THE COURT:  THE COURT HAS TAKEN A LOOK, A GANDER, A

7  PERUSAL, OF SOME OF THE DOCUMENTS THAT HAVE BEEN GOING UP TO

8  JUDGE INFANTE.  ADMITTEDLY, I HAVE BEEN CONCERNED AT SOME OF

9  THE THINGS THAT I HAVE OBSERVED THE FIGHT GOING ON OVER.  AND

10  JUST SINCE YOU'RE THE ONE THAT HAS THE LECTERN RIGHT NOW, A        02:05

11  RECENT EXAMPLE, THE COURT SAW THAT THERE WERE DRAWINGS THAT

12  MR. BRYANT DID OF BRATZ DOLLS THAT WERE NOT TURNED OVER, AND

13  SOME OF THIS STUFF JUST SEEMS LIKE IT WOULD BE PRETTY OBVIOUS

14  THAT THIS WOULD BE THE TYPE OF THING THAT WOULD BE RELEVANT

15  THAT WOULD HAVE TO BE TURNED OVER UP FRONT.                        02:06

16       MS. TORRES:  THE ISSUE OF THE BRATZ DRAWINGS IS

17  WHETHER OR NOT THEY WERE FIRST-GENERATION BRATZ OR SUBSEQUENT-

18  GENERATION BRATZ.  AND WHEN THE CASE WAS SIMPLY THE MATTEL V.

19  BRYANT CASE, WE -- AND EARLY IN THIS CASE IT WAS MR. BRYANT,

20  BUT ALSO MGA -- AGREED TO PRODUCE FIRST-GENERATION BRATZ          02:06

21  DOCUMENTS, AND WE DID.

22       WHAT THEY MOVED TO COMPEL ON WERE POST-FIRST-

23  GENERATION BRATZ DOCUMENTS, AND THE REASON JUDGE INFANTE

24  GRANTED THAT WAS BECAUSE NOW SUBSEQUENT-GENERATION BRATZ ARE AT

25  ISSUE.  BUT THEY WEREN'T AT ISSUE IN THE ORIGINAL CASE THAT WAS    02:06

```
 1    FILED, MATTEL VERSUS CARTER BRYANT.

 2              THE COURT:  THE INITIAL CASE.

 3              MS. TORRES:  YES.

 4              THEREFORE, NOW THAT THERE IS MORE IN THE CASE, THOSE

 5    DOCUMENTS ARE RELEVANT AND THEY ARE BEING PRODUCED.            02:07

 6              THAT IS A NEW DEVELOPMENT THAT THEY HAD AGREED IN

 7    FRONT OF JUDGE BLOCK, AND WE HAVE A TRANSCRIPT OF IT, THAT WE

 8    ONLY NEEDED TO PRODUCE FIRST GENERATION.  AND IN DECEMBER THEY

 9    RAISED THE ISSUE OF ALL BRATZ DRAWINGS.  SO WHEN THEY SAY THAT

10    CRITICAL BRATZ DRAWINGS HAVE NOT BEEN PRODUCED, IT'S MISLEADING  02:07

11    BECAUSE THEY MAY BE RELEVANT TO THE SECOND ROUND OF CLAIMS BUT

12    THEY WEREN'T RELEVANT TO THE MATTEL V. BRYANT CASE.  AND

13    DISCOVERY IN THE SECOND ROUND OF CASES OR CLAIMS DID NOT START

14    UNTIL DECEMBER.

15              THE COURT:  ALL RIGHT.  THAT WAS JUST ONE THAT KIND   02:07

16    OF STRUCK ME AS -- AND LIKE I SAY, I DIDN'T THOROUGHLY REVIEW

17    THESE PLEADINGS IN DETAIL.  I JUST KIND OF WANTED TO GET A

18    SENSE OF WHAT I WAS SIGNING THE UNDER-SEAL ORDER ON, AND I JUST

19    REVIEWED THEM TO GET A GENERAL SENSE OF THAT.

20              MS. TORRES:  YES.  AND WE HAVE NOT BEEN FILING -- MGA  02:08

21    AND CARTER BRYANT HAVEN'T BEEN FILING THEIR MOTIONS TO COMPEL

22    WITH THIS COURT BECAUSE WE THOUGHT THAT WAS IMPROPER.  AND

23    RECENTLY JUDGE INFANTE AGREED THAT THE MOTIONS TO COMPEL SHOULD

24    NOT BE FILED WITH THIS COURT.

25              THE COURT:  WELL, THE MOTIONS DON'T NEED TO BE FILED   02:08
```

```
 1   WITH THIS COURT, BUT THE UNDER-SEALING -- I ASSUME THAT YOU

 2   WANT TO HAVE --

 3           SO YOU'RE NOT FILING YOUR MOTIONS WITH THE COURT AT

 4   ALL, EVEN UNDER SEAL?

 5           MS. TORRES:  CORRECT.                              02:08

 6           THE COURT:  I'LL SPEAK TO JUDGE INFANTE ABOUT THAT.

 7   THAT'S SOMETHING THAT HE PROBABLY SHOULD HAVE CONSULTED THIS

 8   COURT ON.

 9           MS. TORRES:  IN ANY EVENT, THE ISSUE THAT WE HAVE

10   HERE IS THE SCHEDULE AND WHETHER OR NOT --                02:08

11           THE COURT:  YES.

12           I THINK YOU PROBABLY KNOW THE GENERAL SENSE OF WHERE

13   THE COURT IS GOING ON THIS.

14           WHAT ARE YOUR THOUGHTS?

15           MS. TORRES:  WE PROPOSED TWO SCHEDULES THAT WE      02:08

16   BELIEVED WERE IN KEEPING WITH THE COURT'S JANUARY 12TH ORDER.

17           THE COURT:  WHAT ABOUT THE WISDOM OF THE COURT'S

18   TENTATIVE THOUGHTS ON THAT?  DO YOU AGREE OR DISAGREE?

19           MS. TORRES:  I BELIEVE A LOT OF THE CASE WILL SHAKE

20   OUT WITH RESOLUTION OF THE ISSUES THAT WERE FIRST BROUGHT IN  02:09

21   STATE COURT AND REMOVED TO THIS COURT IN MATTEL V. BRYANT.

22   THAT IS THE HEART OF THE CASE.  I'M NOT SAYING THAT THERE WON'T

23   BE OTHER CLAIMS LEFT.  THERE WILL BE, MOST LIKELY.  BUT IT IS

24   THE MOST IMPORTANT ISSUE.  AND IT IS THE ONLY ISSUES THAT HAVE

25   BEEN IN THIS COURT FOR TWO AND A HALF YEARS, NOW ALMOST THREE  02:09
```

1    YEARS.  IT'S AN IMPORTANT ISSUE THAT SHOULD BE DECIDED IN

2    ISOLATION.  IT SHOULD NOT BE DECIDED IN CONNECTION WITH

3    ALLEGATIONS ABOUT, YOU KNOW, AN MGA EMPLOYEE IN CANADA WHO

4    DOESN'T KNOW CARTER BRYANT FROM ADAM, OR AN ALLEGATION ABOUT AN

5    MGA EMPLOYEE IN MEXICO WHO ALSO PRIOR TO WORKING AT MGA NEVER          02:09

6    KNEW CARTER BRYANT.

7           WHAT THEY WOULD LIKE TO DO IS MUDDY THE WATERS ON

8    THAT PARTICULAR ISSUE, WHICH IS THE KEY ISSUE.  AND I THINK THE

9    COURT IS RIGHT, IF YOU ISOLATE THAT ISSUE, IT WILL DETERMINE A

10   LOT OF THE REST OF THE CASE.                                          02:10

11          THE COURT:  THANK YOU, COUNSEL.

12          MR. JACOBY?

13          MR. JACOBY:  JUST TO ADDRESS THE ISSUE THAT YOU

14   RAISED WITH MS. TORRES ABOUT THE DISCOVERY MASTER FILINGS.  I

15   WAS ACTUALLY ON THE CALL WITH JUDGE INFANTE.                          02:10

16          THE COURT:  PLEASE.

17          MR. JACOBY:  IN THE FIRST ROUND OF MOTIONS THAT

18   MATTEL FILED, THEY DID FILE THEM WITH THE COURT AS WELL AS

19   JUDGE INFANTE, AND THAT'S WHY THERE WERE SEALING ORDERS.  WE

20   RAISED THAT WITH JUDGE INFANTE, AND HE INDICATED THAT IN THE          02:10

21   ABSENCE OF AN APPEAL IN WHICH CASE THERE WAS AN APPEAL TO THIS

22   COURT THAT ALL OF THE BRIEFS WOULD GO TO YOU AND YOU WOULD

23   DECIDE THE APPEAL; THAT THE WHOLE PURPOSE OF THE DISCOVERY

24   MASTER IS TO TAKE THIS OFF THE PLATE OF THE MAGISTRATE JUDGE

25   AND, TO THE EXTENT THE PARTIES LIVE WITH THE ORDER OF THE             02:11

1   DISCOVERY MASTER, YOU.

2            AND WE, IN PARTICULAR, FOUND IT TROUBLING THAT MATTEL

3   WAS FILING THEIR PAPERS WITH THE COURT FOR PRECISELY THE REASON

4   THAT YOU ARTICULATED TODAY; THAT YOU READ THEIR PAPERS AND NOT

5   OURS AND HAD A SENSE OF HOW THINGS WERE GOING BASED ON HEARING        02:11

6   HALF THE STORY.

7            THE COURT:  I APPRECIATE JUDGE INFANTE'S THOUGHTS ON

8   THAT, BUT I GUESS THE REASON WHY I WOULD LIKE TO HAVE THOSE

9   FILED IS NOT BECAUSE I'M READING THEM, LIKE I SAY, FOR ANY

10  SUBSTANTIVE RESOLUTION OF THE MATTER.  I APPRECIATE THE SPECIAL       02:11

11  MASTER'S INVOLVEMENT IN THAT.  I LIKE TO KEEP A SENSE OF WHAT'S

12  GOING ON.  IT GIVES ME AN IDEA OF HOW MUCH DISCOVERY IS TAKING

13  PLACE; WHAT THE ISSUES ARE.  IT'S JUST A WAY OF ME TO MONITOR

14  THE CASE THAT I HAVE ULTIMATE RESPONSIBILITY FOR.

15           SO I THINK IT DOES MAKE SENSE TO FILE THOSE WITH THE         02:11

16  COURT UNDER SEAL.  THEY ARE THERE THEN IF THERE IS AN APPEAL.

17  IF THERE'S ANY ISSUES DOWN THE ROAD, I'LL HAVE ACCESS TO THOSE.

18  AND IT ALSO GIVES ME A GENERAL SENSE OF WHERE THINGS ARE GOING.

19           JUST LIKE WITH THE MAGISTRATE JUDGE, RESOLVING THE

20  DISCOVERY DISPUTE, THERE ARE STILL COPIES OF THOSE CASES PLACED       02:12

21  IN THE DISTRICT COURT'S FILE; AGAIN, NOT TO MICROMANAGE WHAT

22  THE MAGISTRATE JUDGE IS DOING, BUT JUST TO BE ABLE TO HAVE A

23  SENSE OF WHAT'S HAPPENING IN THE CASE.

24           IT'S ALL THE MORE IMPORTANT WHEN IT'S A SPECIAL

25  MASTER OUTSIDE OF THE COURT WHO'S HANDLING THESE THINGS.  I'D         02:12

1    JUST LIKE TO KEEP TABS ON WHAT'S HAPPENING.

2         MR. JACOBY:  WE'RE HAPPY TO DO THAT.

3         I WOULD AGREE WITH MR. QUINN, THAT THE DISCOVERY

4    MASTER PROCESS SEEMS TO BE WORKING SO FAR.  AND SO YOU HAVE A

5    SENSE OF IT, MGA AND BRYANT HAVE BROUGHT TWO MOTIONS AND WON        02:12

6    THEM BOTH.  MATTEL HAS BROUGHT ONE MOTION, AND THAT MOTION WAS

7    GRANTED AS WELL.  THERE ARE TWO MORE SCHEDULED FOR TOMORROW.

8         THE COURT:  LIKE I SAY, I DIDN'T RAISE THAT FOR ANY

9    OTHER REASON THAN JUST TO RAISE THE ISSUE.  I'M SURE THAT YOU

10   BOTH ARE VERY CAPABLE OF EXERCISING YOUR RIGHTS WITH THE           02:12

11   SPECIAL MASTER.  AND THAT'S PART OF MY POINT HERE, I SUPPOSE,

12   IS THAT I KNOW I HAVE THREE INCREDIBLY SOPHISTICATED LAW FIRMS

13   LITIGATING THIS CASE, AND SOPHISTICATED LAWYERS, SO I HAVE

14   CONFIDENCE THAT WE CAN ACCOMPLISH THIS.

15        DO YOU HAVE ANY THOUGHTS ON THE PARTICULAR ISSUE OF           02:13

16   BIFURCATION?

17        MR. JACOBY:  YES.

18        MR. BRYANT FEELS THAT -- THERE'S NO QUESTION THAT NO

19   MATTER HOW THE BRYANT CASE IS DECIDED, THE FIRST CASE, IT WILL

20   LIMIT THE ISSUES IN THE SECOND CASE BY DEFINITION.  IF            02:13

21   MR. BRYANT PREVAILS ON HIS CASES, IT WILL LIMIT THE ISSUES IN

22   THE SUBSEQUENT CASE.  IF MR. BRYANT DOES NOT PREVAIL, IT WILL

23   NARROW THE ISSUES; SO I THINK IT MAKES AN ABUNDANCE OF SENSE TO

24   TRY THE BRYANT ISSUES FIRST.

25        AND FOR HIS PART, I THINK MR. BRYANT IS ENTITLED TO           02:13

 1   THIS ADJUDICATION.  HE'S THE ONE PERSON IN THIS MIX WHO'S NOT A

 2   CORPORATION, AND HE HAS THIS CLOUD OVER HIS WELL-BEING THAT'S

 3   BEEN THERE FOR A PRETTY LONG TIME NOW, AND HE WOULD LIKE TO SEE

 4   IT DISPOSED OF, IN ONE WAY OR THE OTHER, AS QUICKLY AS

 5   POSSIBLE.                                                        02:14

 6           AND I THINK THAT AT THE LAST HEARING, THE COURT

 7   ALREADY SORTED THESE ISSUES WHEN IT SAID THAT THE CLAIMS -- AND

 8   THERE WERE CLAIMS AGAINST LARIAN AND CLAIMS AGAINST BRYANT IN

 9   THE AMENDED COMPLAINT THAT MATTEL MOVED TO FILE, AND THOSE WERE

10   MOVED OVER TO THE OTHER CASE.  AND I THINK THAT TO BLEED THEM    02:14

11   BACK IN TO THE ORIGINAL CASE WOULD JUST CREATE A LOT OF

12   CONFUSION.

13           WITHOUT ARGUING THE CASE HERE NOW, MR. BRYANT

14   OBVIOUSLY DISPUTES THAT THE ACTIVITIES THAT HE DID, WHAT HE DID

15   AND DIDN'T DO, IN SEPTEMBER AND OCTOBER OF 2000 IS GOING TO      02:14

16   ENTITLE MATTEL TO THE RELIEF THEY ARE SEEKING.  BUT WE'LL

17   DECIDE THAT AT THE TRIAL.  AND WHEN THAT HAPPENS, I THINK THE

18   ISSUES WILL BE NARROWED.  SO WE AGREE WITH YOU, VERY

19   SOPHISTICATED LAWYERS ON ALL SIDES, THAT YOU CAN WRAP THE CASE

20   UP IN A YEAR.                                                    02:14

21           SURE, IT'S A BIG CASE, BUT THEY HAVE 13 LAWYERS

22   WORKING ON THEIR CASE; 13 LAWYERS GET COPIES OF WHAT THE

23   DISCOVERY MASTER IS SENDING OUT EVERY DAY.  IT'S AN AMAZINGLY

24   LONG LIST.  THEY HAVE THE RESOURCES TO BRING THIS CASE TO TRIAL

25   BY THE END OF THIS YEAR, AND THAT'S EXACTLY WHAT I THINK SHOULD  02:15

1    BE DONE.

2              THE COURT:  THANK YOU, ALL THREE OF YOU.

3              MR. QUINN, YOU SEEM TO BE ANXIOUS TO SAY SOMETHING; A

4    VERY, BRIEF RESPONSE.

5              MR. QUINN:  THE CLAIMS AGAINST MGA, WHICH I THINK GO          02:15

6    HAND IN HAND WITH THESE CLAIMS REGARDING MR. BRYANT -- THE

7    INDUCEMENT AND THE AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

8    ARE -- IN THE COUNTERCLAIM THEY ARE CLAIM SIX, INTENTIONAL

9    INTERFERENCE; CLAIM EIGHT, AIDING AND ABETTING; BREACH OF

10   FIDUCIARY DUTY; CLAIM TEN, BREACH OF DUTY OF LOYALTY.                  02:15

11             AND THEN, YOUR HONOR, TO THE EXTENT THAT WE WANT TO

12   FOCUS ON OWNERSHIP OF BRATZ, THERE IS NOT A CLAIM IN THE

13   ORIGINAL COMPLAINT THAT ADDRESSES OWNERSHIP OF BRATZ.  AT THAT

14   POINT WHEN THIS WAS FIRST STARTED AGAINST MR. BRYANT, MATTEL

15   WASN'T SURE WHAT IT WAS HE HAD BEEN WORKING ON OR WHAT HE HAD         02:15

16   CREATED.  THAT CLAIM IS A DEC RELIEF CLAIM THAT IS IN COUNT 13

17   NOW IN THE COUNTERCLAIM; SO IF WE WERE GOING TO FOCUS ON THOSE

18   BRATZ ISSUES AND MR. BRYANT, I'D SUBMIT THAT THOSE CLAIMS ALL

19   OUGHT TO GO IN THE FIRST TRIAL.

20             THANK YOU, YOUR HONOR.                                      02:16

21             THE COURT:  ALL RIGHT.  VERY WELL.

22             THIS IS WHAT WE'RE GOING TO DO.  I'M GOING TO SET TWO

23   SCHEDULING MATTERS; ONE FOR CASE 04-9059, AND A SEPARATE

24   SCHEDULING ORDER FOR 05-2727, AND MY SENSE IS TO BIFURCATE THEM

25   ALONG THOSE LINES.                                                    02:16

1    MR. QUINN, I WILL ENTERTAIN A MOTION FROM THE

2  PLAINTIFFS IN -9059 FROM MATTEL THAT SOME OF THOSE LIMITED

3  CLAIMS, AS YOU JUST IDENTIFIED, ARE MORE APPROPRIATELY

4  CONSIDERED IN THAT FIRST CASE.  AND THEN OF COURSE THE DEFENSE

5  MAY OPPOSE THAT.                                              02:17

6    I CAN SEE HOW ONE OR MORE OF THOSE CLAIMS MIGHT BE,

7  BUT THEY MIGHT NOT BE AS WELL.  I'M NOT GOING TO DECIDE THAT

8  TODAY.  I'LL GIVE YOU LEAVE TO BRING THAT MOTION ON THAT NARROW

9  ISSUE IF THERE SHOULD BE CERTAIN CLAIMS THAT WE SHOULD DO IN

10  THIS FIRST PHASE AS OPPOSED TO THE SECOND PHASE.  BUT ABSENT AN  02:17

11  ORDER FROM THE COURT, THE ONLY CLAIMS THAT WE ARE GOING TO SET

12  IN THE FIRST TRIAL ARE THOSE SET FORTH IN 04-9059, AND THE ONLY

13  CLAIMS IN THE SECOND ARE GOING TO BE THE CLAIMS AND

14  COUNTERCLAIMS IN 05-2727.  I WILL GIVE YOU THAT OPPORTUNITY.

15    I'M GOING TO SET A JURY TRIAL DATE FOR FEBRUARY 12,   02:17

16  2008, ONE YEAR FROM TODAY, AT 9:30 A.M. IN 04-9049.  A HEARING

17  ON ANY MOTIONS IN LIMINE WILL BE SCHEDULED FOR FEBRUARY 4,

18  2008, 10:00 A.M., AND A FINAL PRE-TRIAL CONFERENCE WILL BE

19  CONDUCTED JANUARY 14, 2008, AT 11:00 A.M.

20    LAST DATE TO CONDUCT A SETTLEMENT CONFERENCE IN THAT  02:18

21  CASE WILL BE DECEMBER 3, 2007; THE LAST DATE FOR HEARING ANY

22  DISPOSITIVE MOTIONS WILL BE NOVEMBER 19, 2007 AT 10:00 A.M.;

23  THE COMPLETE DISCOVERY CUTOFF ON THE FIRST CASE WILL BE

24  OCTOBER 22ND, 2007.

25    I'LL SPEAK IN A FEW MOMENTS ABOUT LIMITS IN TERMS OF  02:18

1    WITNESSES AND INTERROGATORIES AND THE LIKE.

2           AS FAR AS 05-2727, THE JURY TRIAL DATE WILL BE

3    JULY 1, 2008; THE HEARING ON ANY MOTIONS IN LIMINE WILL BE

4    JUNE 23, 2008, 10:00 A.M.; THE FINAL PRE-TRIAL CONFERENCE WILL

5    BE JUNE 2, 2008, 11:00 A.M.; THE LAST DATE TO CONDUCT A          02:18

6    SETTLEMENT CONFERENCE IN THAT CASE WILL BE APRIL 21, 2008; THE

7    LAST DATE FOR HEARING DISPOSITIVE MOTIONS IN THAT CASE WILL BE

8    APRIL 7, 2008, 10:00 A.M.; DISCOVERY CUTOFF WILL BE MARCH 3,

9    2008.

10          ANY FURTHER AMENDMENTS OR THE ADDITION OF PARTIES IN      02:19

11   EITHER OF THESE CASES IS GOING TO REQUIRE LEAVE OF COURT.

12          THESE ARE THE LIMITS I'M GOING TO PUT ON EXPERT

13   DEPOSITIONS AND INTERROGATORIES.  NOW, THESE LIMITS ARE -- I

14   DON'T WANT TO SAY THEY ARE SOFT LIMITS, BUT THEY ARE LIMITS

15   WHICH THE COURT WOULD CERTAINLY UNDERSTAND OR WOULD INVITE       02:20

16   COUNSEL TO SUBMIT A MOTION TO EXPAND, IF THERE'S REASON TO.

17   BUT I JUST WANT TO HAVE SOME PARAMETERS PLACED ON THIS AT THE

18   OUTSET.

19          AS FAR AS NONEXPERT DEPOSITIONS, I'M GOING TO LIMIT

20   EACH SIDE TO 24; SO THAT WILL BE A TOTAL OF 48 BETWEEN THE TWO   02:20

21   SIDES, WHICH WOULD HOPEFULLY CAPTURE MOST OF THE INDIVIDUALS

22   WHO HAVE SOME INFORMATION TO PROVIDE IN THIS CASE.  I'M GOING

23   TO LIMIT THE NUMBER OF EXPERT WITNESSES TO 20 ON EACH SIDE, AND

24   THEN THE TOTAL NUMBER OF INTERROGATORIES TO A TOTAL NUMBER OF

25   50 TO EACH SIDE.                                                 02:20

```
 1              AGAIN, IF YOU GET TO THE POINT WHERE YOU NEED 21
 2    EXPERT WITNESSES FOR SOME REASON, OR YOU NEED 25 FACT
 3    WITNESSES, YOU CAN MAKE APPLICATION TO THIS COURT AND THE COURT
 4    WILL CONSIDER THAT AFTER YOU, OF COURSE, HAVE MET AND CONFERRED
 5    AND TRIED TO WORK THAT OUT ON YOUR OWN.  BUT WE HAVE TO HAVE        02:20
 6    SOME PARAMETERS ON THIS.
 7              ARE THERE ANY QUESTIONS?
 8              THE COURT WILL BE ISSUING ITS SCHEMATIC WHICH WILL
 9    HAVE ALL THESE DATES AND THE COURT'S SCHEDULING ORDERS AND
10    CALCULATIONS, BUT ARE THERE ANY GENERAL QUESTIONS ABOUT WHAT       02:21
11    THE COURT IS TRYING TO ACCOMPLISH HERE?
12              MS. TORRES:  YOUR HONOR, YOU JUST SAID 50
13    INTERROGATORIES EACH SIDE.  THE FEDERAL RULES ORDINARILY
14    PROVIDE FOR INTERROGATORIES TO PARTIES, AND THERE ARE A NUMBER
15    OF PARTIES THAT THEY ARE TRYING TO SERVE, WHO THEY MAY HAVE        02:21
16    ALREADY SERVED, I DON'T KNOW.
17              ARE THOSE PARTIES INCLUDED IN THAT 50 LIMIT?
18              THE COURT:  THERE'S ONE PARTY, ESSENTIALLY, ON THE
19    OTHER SIDE, AND YOU HAVE TWO PARTIES.
20              MS. TORRES:  WELL, THEY HAVE ALSO NAMED -- ACTUALLY      02:21
21    WE HAVE THREE PARTIES NOW; THEY SUED OUR CEO ISAAC LARIAN AND
22    THEY HAVE NAMED ANOTHER EMPLOYEE AND TWO INDIRECT SUBSIDIARIES.
23              THE COURT:  WELL, MR. JACOBY, YOU'RE HERE ON BEHALF
24    OF MR. BRYANT.  WOULD YOU REALLY NEED ANOTHER 50
25    INTERROGATORIES BEYOND WHAT MGA WOULD BE SUBMITTING ON THESE       02:22
```

1    CLAIMS CONCERNING BRATZ OWNERSHIP?

2          MR. JACOBY:  PROBABLY NOT.  BUT, I MEAN, I THINK IT

3    IS A CONCERN THAT THERE ARE POTENTIALLY FOUR PARTIES WHO AREN'T

4    EVEN HERE TODAY.

5          THE COURT:  LET'S TRY TO WORK WITHIN THE CONFINES OF      02:22

6    THE 50 INTERROGATORIES, AND IF YOU NEED MORE, AGAIN, THE COURT

7    IS GOING TO BE FORTHCOMING, IF THERE'S A NEED FOR IT.  AND IT'S

8    THE TYPE OF ORDER THAT IF YOU CAN STIPULATE AMONGST YOURSELVES,

9    YOU'RE NOT GOING TO NEED AN ORDER FROM THE COURT.

10         BUT IF YOU'RE NOT AGREEING AMONGST YOURSELVES, THEN       02:22

11   YOU'RE GOING TO HAVE TO COME BACK TO THE COURT BEFORE YOU BUST

12   THOSE LIMITS.  UNLIKE EVERY OTHER ORDER THE COURT ISSUES, WHERE

13   ONCE THE COURT ISSUES AN ORDER AND YOU NEED AN ORDER FROM THE

14   COURT TO ALTER THAT, THIS IS ONE THAT I WILL GIVE YOU AUTHORITY

15   AMONGST YOURSELVES TO STIPULATE TO A GREATER NUMBER.  BUT LETS   02:22

16   BE REASONABLE.  I CAN'T IMAGINE YOU CAN'T WORK THIS OUT.  I

17   JUST DON'T WANT TO HAVE OPEN-ENDED NUMBERS OF INTERROGATORIES

18   AND EXPERTS.

19         MS. TORRES:  WE DON'T EITHER, AND I DON'T THINK WE'LL

20   NEED 50 PER PARTY.                                               02:23

21         MR. QUINN:  IN THE UNLIKELY EVENT THERE WERE A

22   DISAGREEMENT ON THAT, DOES THAT COME TO YOU?

23         THE COURT:  YES, THAT COMES TO ME.

24         MR. QUINN:  THANK YOU, YOUR HONOR.

25         THE COURT:  BUT GIVEN THE SIGNIFICANCE OF THIS CASE        02:23

1   AND THE RESOURCES THAT QUINN EMANUEL AND O'MELVENY & MYERS AND

2   LITTLER ARE ALL DEVOTING TO THIS, THESE DATES ARE PRETTY FIRM;

3   SO PLAN ACCORDINGLY.

4          MR. JACOBY:  THANK YOU, YOUR HONOR.

5          MR. QUINN:  THANK YOU, YOUR HONOR.                    02:23

6          THE COURT:  ALL RIGHT.  GOOD LUCK.

7

8

9

10

11

12

13

14

15

16

17                          CERTIFICATE

18

19  I hereby certify that pursuant to section 753, title 28, united
    states code, the foregoing is a true and correct transcript of
20  the stenographically recorded proceedings held in the above-
    entitled matter and that the transcript page format is in
21  conformance with the regulations of the judicial conference of
    the united states.

22

23  _____        _____
    THERESA A. LANZA, CSR, RPR                      Date
24  FEDERAL Official COURT Reporter

25