```
 1                UNITED STATES DISTRICT COURT

 2               CENTRAL DISTRICT OF CALIFORNIA

 3                      EASTERN DIVISION

 4                          - - -

 5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

 6                          - - -

 7   carter bryant, et. Al.,          )
                                      )
 8                     Plaintiffs,  )
                                      )
 9            vs.                     )   No. ED CV 04-09049
                                      )   (LEAD LOW NUMBER)
10   mattel, inc., et. Al.,           )
                                      )
11                     Defendants.  )
     _____)   TELEPHONIC
12   AND CONSOLIDATED ACTIONS,        )   HEARING
     _____)

13

14

15                REPORTER'S TRANSCRIPT OF

16                TELEPHONIC PROCEEDINGS

17                RIVERSIDE, California

18              WEDNESDAY, OCTOBER 10, 2007

19                     3:02 P.M.

20

21

22

23              THERESA A. LANZA, RPR, CSR
              FEDERAL Official Court Reporter
24               3470 12th Street, Rm. 134
              RIVERSIDE, California  92501
25                  (951) 274-0844
                 Csr11457@sbcglobal.net
```

```
 1   APPEARANCES:

 2   On behalf of CARTER BRYANT:

 3                      KEKER & VAN NEST
                        BY:  JOHN W. KEKER
 4                      BY:  MATTHEW M. WERDEGAR
                        BY:  JOHN TRINIDAD
 5                      710 SANSOME STREET
                        SAN FRANCISCO, California  94111-1704
 6                      (415) 391-5400

 7
     on behalf of MATTEL:
 8
                        QUINN EMANUEL
 9                      By:  B. DYLAN PROCTOR
                        865 S. FIGUEROA STREET,
10                      10TH FLOOR
                        LOS ANGELES, California  90017
11                      (213) 624-7707

12
     ON BEHALF OF MGA ENTERTAINMENT (OUTGOING):
13
                        O'MELVENY & MYERS LLP
14                      BY:  SCOTT DUNHAM
                        BY:  MARC F. FEINSTEIN
15                      400 SOUTH HOPE STREET
                        LOS ANGELES, CALIFORNIA 90071-2899
16                      (213) 430-6000

17                      CHRISTENSEN, GLASER, FINK,
                         JACOBS, WEIL & SHAPIRO, LLP
18                      BY:  JOEL KLEVENS
                        BY:  AMMAN KHAN
19                      BY:  ALISA MORGENTHALER
                        10250 CONSTELLATION BOULEVARD
20                      LOS ANGELES, CALIFORNIA  90067
                        (310) 553-3000
21

22   ON BEHALF OF MGA ENTERTAINMENT (INCOMING):

23                      SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                        BY:  THOMAS J. NOLAN
24                      BY:  CRAIG HOLDEN (IN-HOUSE)
                        300 SOUTH GRAND AVENUE
25                      LOS ANGELES, CALIFORNIA  90071-3144
                        213-687-5000
```

```
 1      RIVERSIDE, CALIFORNIA; FRIDAY, OCTOBER 10, 2007; 3:02 P.M.

 2                             -oOo-

 3           THE CLERK:  CALLING CALENDAR ITEM TWO, CV

 4   04-09049-SGL, CARTER BRYANT VERSUS MATTEL, INC.

 5           COUNSEL, APPEARANCES, PLEASE.                      03:11

 6           MR. FEINSTEIN:  O'MELVENY & MYERS, BY SCOTT DUNHAM

 7   AND MARC FEINSTEIN.

 8           MR. PROCTOR:  B. DYLAN PROCTOR, QUINN EMANUEL, FOR

 9   MATTEL.

10           MR. KLEVENS:  JOEL KLEVENS, AMMAN KHAN, AND ALISA   03:02

11   MORGENTHALER OF CHRISTENSEN & GLASER, FOR MGA.

12           MR. KEKER:  JOHN KEKER, MATT WERDEGAR, AND JOHN

13   TRINIDAD, FOR CARTER BRYANT.

14           MR. NOLAN:  ALSO TOM NOLAN, SKADDEN ARPS, FOR MGA.

15           MR. HOLDEN:  CRAIG HOLDEN, IN-HOUSE COUNSEL, FOR MGA. 03:02

16           THE COURT:  GOOD AFTERNOON, COUNSEL.  THIS IS

17   JUDGE LARSON.

18           WE'RE ON THE RECORD HERE, AND WE DO HAVE A COURT

19   REPORTER IN MY CHAMBERS THAT'S TAKING DOWN EVERYTHING.  I'M

20   GOING TO ASK COUNSEL BEFORE THEY SAY ANYTHING TO IDENTIFY    03:02

21   THEMSELVES, JUST TO KEEP THE RECORD AS CLEAN AS POSSIBLE.

22           I NORMALLY DON'T DO THESE TELEPHONIC CONFERENCES, BUT

23   I'VE RECEIVED AN EX-PARTE APPLICATION FROM O'MELVENY & MYERS

24   ASKING FOR A SHORTENING OF TIME FOR A HEARING ON A PROPOSED

25   MOTION TO WITHDRAW AND REQUIRING IN-CAMERA INSPECTION OF      03:03
```

```
 1   SUPPORTING DOCUMENTS.  I'VE ALSO RECEIVED OPPOSITIONS THERETO.
 2   SOME OF THE DOCUMENTS I'VE RECEIVED HAVE BEEN FILED UNDER SEAL;
 3   OTHERS HAVE BEEN FILED IN-CAMERA; STILL OTHERS HAVE BEEN FILED
 4   FOR PUBLIC INSPECTION.  I GUESS I WANTED TO GET A HANDLE ON
 5   EXACTLY WHERE WE ARE HERE.                                    03:03
 6         OBVIOUSLY, SOME COUNSEL WANT OUT; SOME COUNSEL WANT
 7   IN.  ORDINARILY THIS WOULD BE HANDLED BY SIMPLE
 8   SUBSTITUTION-OF-ATTORNEY FORMS, BUT APPARENTLY THIS IS NOT THE
 9   NORMAL CASE.
10         WHY DON'T YOU LET ME KNOW WHERE WE ARE, AS WE STAND    03:03
11   RIGHT NOW, FROM YOUR VARIOUS PERSPECTIVES.
12         MR. DUNHAM:  SCOTT DUNHAM FROM O'MELVENY.
13         IF I MAY ADDRESS FIRST THE APPLICATION ITSELF.
14         AS YOU STATED, THIS IS MOST OFTEN HANDLED BY A
15   STIPULATION OF COUNSEL.  WE WERE UNABLE TO OBTAIN THAT.  WE   03:04
16   THEN FILED THIS EX-PARTE APPLICATION BECAUSE WE BELIEVE THAT
17   OUR MOTION TO WITHDRAW SHOULD BE HEARD PROMPTLY, THERE'S NO
18   REASON FOR DELAY, AND ALL WE'RE ASKING FOR AT THIS PARTICULAR
19   STAGE IS TO HAVE AN APPLICATION SO WE CAN FILE THE MOTION
20   PROMPTLY AND HAVE IT HEARD, RATHER THAN DOING IT ON A NOTICE  03:04
21   MOTION, PARTICULARLY SINCE THE COURT'S FIRST AVAILABLE DATE IS
22   NOVEMBER 19TH.
23         WE THINK THE OPPOSITIONS THAT HAVE BEEN FILED TRY TO
24   ADDRESS THE MERITS OF THE MOTION RATHER THAN THE TIMING OF THE
25   MOTION.  WE'RE SIMPLY SEEKING THE RIGHT TO FILE A MOTION AND TO 03:04
```

```
 1   FILE THE SUPPORTING PAPERS, WHICH HAVE NOT YET EVEN BEEN FILED,

 2   SO THAT YOUR HONOR CAN DETERMINE THE ISSUE.

 3           MR. KLEVENS:  THIS IS JOEL KLEVENS, CHRISTENSEN

 4   GLASER.

 5           IT DOES SEEM TO ME THAT YOUR HONOR'S INITIAL REMARK      03:04

 6   MAKES THE MOST IMPORTANT POINT, WHICH IS THAT AT THIS STAGE,

 7   THIS MOTION THAT O'MELVENY WANTS TO FILE ON SHORTENED TIME

 8   SHOULD BE UNNECESSARY.

 9           WE HAVE NEW COUNSEL, SKADDEN ARPS, WHO HAS BEEN

10   RETAINED AND WHO IS PREPARED TO CIRCULATE A SUBSTITUTION.  AND   03:05

11   MGA DOES NOT OPPOSE O'MELVENY'S REQUEST TO WITHDRAW; THEY

12   SIMPLY OPPOSE HAVING IT TAKE PLACE IN A PRECIPITOUS FASHION

13   WHICH WOULD BE INCONSISTENT WITH AN ORDERLY TRANSITION TO NEW

14   COUNSEL; SO IT DOES NOT SEEM TO ME THAT THERE SHOULD BE A NEED

15   FOR A MOTION OR A NEED FOR FILING PAPERS THAT INVOLVE           03:05

16   PRIVILEGED MATTERS IN-CAMERA BECAUSE THERE SHOULD BE NO NEED TO

17   DO THAT.

18           WE'RE WILLING TO HAVE O'MELVENY WITHDRAW.  MGA IS

19   PREPARED TO HAVE SKADDEN SUBSTITUTE IN FOR BOTH O'MELVENY AND

20   CHRISTENSEN GLASER, AND WHAT WE REQUIRE IS AN ORDERLY           03:06

21   TRANSITION WHICH REQUIRES THAT O'MELVENY COOPERATE WITH NEW

22   COUNSEL IN IMPARTING ALL OF THE KNOWLEDGE THAT THEY HAVE

23   ACQUIRED ABOUT HUNDREDS OF THOUSANDS OF PAGES OF DOCUMENTS AND

24   ALL KINDS OF PENDING DISCOVERY DISPUTES AND MATTERS AND

25   RESEARCH AND ANALYSIS AND SO ON.                               03:06
```

```
 1              AND THE OTHER THING THAT WOULD SEEM TO BE ESSENTIAL
 2  TO ALLOW SKADDEN ARPS TO GET UP TO SPEED IS TO HAVE SOME BRIEF
 3  STAY OF A MYRIAD OF PENDING DISCOVERY MATTERS THAT ARE
 4  HAPPENING EVERY DAY THIS WEEK AND EVERY DAY NEXT WEEK WHERE WE
 5  HAVE MEET AND CONFERS THAT O'MELVENY IS SUPPOSED TO BE INVOLVED    03:06
 6  IN AND DEPOSITIONS THAT O'MELVENY IS SUPPOSED TO BE INVOLVED
 7  IN, HAPPENING EVERY DAY.
 8              SO WE WOULD REQUEST A BRIEF 30-DAY STAY, NOT A
 9  CONTINUANCE OF ANYTHING, JUST A 30-DAY STAY TO ALLOW SKADDEN TO
10  GET INTO THE CASE WHEN THEY ARE NOT HAVING TO TRY TO FIGURE OUT    03:07
11  HOW TO TAKE AND DEFEND DEPOSITIONS BUT, RATHER, CAN FIND OUT
12  WHAT THE CASE IS ABOUT, FOR A REASONABLE TIME, WITH O'MELVENY'S
13  ASSISTANCE SO THAT O'MELVENY DOESN'T HAVE TO HANDLE THESE
14  MATTERS WHEN THEY WANT TO WITHDRAW AND WHEN MGA WANTS THEM TO
15  BE ALLOWED TO WITHDRAW.                                           03:07
16              SO THAT'S WHAT WE WOULD REQUEST, AS OPPOSED TO A
17  MOTION TO WITHDRAW THAT'S UNNECESSARY.
18              MR. DUNHAM:  THE MOTIONS AREN'T UNNECESSARY, YOUR
19  HONOR.
20              THIS IS SCOTT DUNHAM AGAIN.                           03:07
21              THE BASIS IS THAT OUR REQUEST HAS BEEN TO WITHDRAW A
22  MONTH AGO; THAT REQUEST WAS DENIED BY THE CLIENTS.  OUR MOTION
23  WOULD BE TO HAVE OUR WITHDRAWAL TAKE EFFECT IMMEDIATELY, AND
24  THAT'S WHAT WE ASK THE COURT TO CONSIDER.
25              THE MGA PARTIES DON'T DISPUTE THAT THE RELATIONSHIP    03:07
```

1   IS BROKEN DOWN.  THEY DON'T DISPUTE THAT WE SHOULD BE OUT OF

2   THE RELATIONSHIP.  THE COURT CAN DECIDE THE PROPER TIMING, ONCE

3   IT'S HAD BRIEFING IN-CAMERA, SETTING FORTH THE FACTS AND

4   ISSUES, AND CERTAINLY THE MGA PARTIES AND NO ONE ELSE IS

5   PREJUDICED BY AN EXPEDITED BRIEFING AND HEARING ON OUR MOTION          03:08

6   TO WITHDRAW IMMEDIATELY.

7          **THE COURT:**  COUNSEL, IS THERE ANYTHING IN PARTICULAR

8   THAT YOU CAN SHARE AT THIS POINT THAT WOULD MAKE THIS SO

9   UNUSUAL OR SO EXTRAORDINARY AS TO TAKE THIS APPROACH?

10         AND I UNDERSTAND I MAY BE PUTTING YOU IN AN AWKWARD           03:08

11  POSITION, BECAUSE YOU'VE SUGGESTED BY INDICATING THE NEED TO

12  FILE DOCUMENTS IN-CAMERA THAT PERHAPS YOU DON'T FEEL

13  COMFORTABLE DISCUSSING THIS ON THE RECORD.  BUT IT'S KIND OF

14  PUTTING THE CART BEFORE THE HORSE HERE, WITHOUT THE COURT

15  HAVING THE BENEFIT OF KNOWING WHY IT IS THAT YOU THINK SUCH           03:08

16  URGENT ACTION IS NEEDED.

17         **MR. HOLDEN:**  THIS IS CRAIG HOLDEN, IN-HOUSE COUNSEL

18  FOR MGA.

19         IF YOU BELIEVE IT'S APPROPRIATE, I'D BE HAPPY TO

20  ANSWER THAT QUESTION, IF THAT'S DIRECTED TO MGA'S COUNSEL.           03:08

21         **THE COURT:**  ACTUALLY, IT'S DIRECTED TOWARDS O'MELVENY

22  & MYERS, BECAUSE THEY ARE THE MOVING PARTY HERE.

23         **MR. DUNHAM:**  SCOTT DUNHAM AGAIN.

24         THE REASON FOR IT AGAIN IS WE ADVISED THE CLIENTS

25  SOME TIME AGO, AND WE OFFICIALLY ADVISED THEM IN WRITING FOUR         03:09

```
 1   WEEKS AGO, THAT WE WERE WITHDRAWING AS COUNSEL, AND THAT

 2   REQUEST OR THAT STATEMENT THAT WE WERE WITHDRAWING AS COUNSEL

 3   HAS BEEN REJECTED BY THE CLIENTS.

 4         HERE WE ARE, FOUR WEEKS LATER, STILL IN THE CASE.

 5   THERE'S NO REASON TO CONTINUE IN THE CASE, PARTICULARLY SINCE      03:09

 6   THE CLIENT HAS NOW STATED THAT THEY HAVE REPLACED US OR WISH TO

 7   REPLACE US, BUT THEY WON'T RELEASE US.

 8         WE SHOULD BE RELEASED AS COUNSEL AND WE'LL DISCHARGE

 9   OUR OBLIGATIONS UNDER RULE 3-700 AND PROVIDE ALL FILES TO THE

10   CLIENT; BUT THAT IS OUR EXTENT OF OUR OBLIGATION UNDER THE         03:09

11   RULES OF PROFESSIONAL CONDUCT.

12         THE CLIENT IS ASKING FOR MORE HERE.

13         MR. KLEVENS:  JOEL KLEVENS.

14         WHEN O'MELVENY MADE THEIR REQUEST TO WITHDRAW, NO ONE

15   REJECTED THEIR REQUEST TO WITHDRAW.  WHAT BEGAN WAS AN EFFORT      03:10

16   TO FIND SUBSTITUTE COUNSEL, WHICH HAS JUST BEEN FOUND.  THAT

17   WASN'T SOMETHING THAT COULD BE DONE IN A DAY OR A WEEK.  AND

18   O'MELVENY INSISTED ON ALL KINDS OF CONDITIONS TO A STIPULATION,

19   WHICH WERE UNACCEPTABLE AND NOT JUSTIFIED.

20         AT THIS POINT, IT'S O'MELVENY THAT'S ASKING NOW FOR          03:10

21   EXTRAORDINARY RELIEF FROM THE COURT.  THEY ARE SAYING 'WE WANT

22   TO FILE A MOTION TO WITHDRAW, BUT WE DON'T WANT TO DO IT ON

23   NORMAL NOTICE; WE WANT TO BE RELEASED IMMEDIATELY,' SO THAT

24   THERE WOULDN'T EVEN BE A REASONABLE TRANSITION PERIOD.

25         THAT DOESN'T MAKE ANY SENSE.                                 03:10
```

```
 1              WE HAVE SKADDEN HERE WHO'S SUBSTITUTING IN TOMORROW.

 2          THE COURT:  LET ME HEAR FROM THE CLIENTS, THE

 3   IN-HOUSE COUNSEL.

 4              NOW THAT YOU HAVE COUNSEL, YOU HAVE LOCATED

 5   REPLACEMENT COUNSEL, WHAT IS YOUR CONCERN OR WHAT IS YOUR          03:11

 6   POSITION?

 7          MR. HOLDEN:  YOUR HONOR, CRAIG HOLDEN FOR MGA.

 8              AS SOON AS WE LEARNED ON SEPTEMBER 12TH OF

 9   O'MELVENY'S DESIRE TO WITHDRAW, WE MOVED SWIFTLY TO FIND NEW

10   COUNSEL.  AND JUST PRECEDING RECEIVING THAT NOTICE TO             03:11

11   WITHDRAW -- AND I CONSIDER THIS TO BE NONPRIVILEGED

12   INFORMATION -- THE DISPUTE WAS 'WHO WOULD BE THE TRIAL

13   COUNSEL?'

14              O'MELVENY WANTED TO HOUSE EVERYTHING INTERNALLY UNDER

15   ONE ROOF, AND WE SAID CHRISTENSEN GLASER.  WHEN THAT DISPUTE      03:11

16   WAS RESOLVED NOT IN O'MELVENY'S FAVOR, WE LEARNED THEY WANTED

17   TO GET OUT OF THE CASE.

18              WE MOVED SWIFTLY.  WE LEARNED THERE WAS NEVER AN

19   AGREEMENT THAT WAS PUT IN PLACE THREE AND A HALF YEARS AGO WITH

20   RESPECT TO THE RETENTION OF O'MELVENY IN THIS CASE, AND THAT      03:11

21   COMPLICATED THEIR WITHDRAWAL.

22              THEY INSISTED UPON TERMS, AFTER GIVING US NOTICE OF

23   THEIR DESIRE TO WITHDRAW, THAT JUST WERE NOT ACCEPTABLE, GIVEN

24   THE FACT THAT NO RETENTION OR ENGAGEMENT AGREEMENT WAS EVER

25   EXECUTED.                                                         03:12
```

```
 1          WE NOTIFIED THEM LAST WEEK THAT WE WOULD IDENTIFY THE

 2    NEW TRIAL COUNSEL THAT WOULD TAKE OVER FOR BOTH O'MELVENY AND

 3    FOR CHRISTENSEN GLASER ON TUESDAY OF THIS WEEK; IN OTHER WORDS,

 4    YESTERDAY.  THEY REJECTED THAT AND SAID THAT WAS NOT

 5    SUFFICIENT; THEY WANTED TO GET OUT IMMEDIATELY.              03:12

 6          TRUE TO WHAT WE PROMISED, WE DID RETAIN NEW COUNSEL

 7    YESTERDAY.  TOM NOLAN HAS NOT HAD THE OPPORTUNITY TO GET NOT

 8    ONLY HIS TEAM TOGETHER AND CONFER WITH O'MELVENY AS TO WHERE

 9    THE CASE IS, BUT HE HAS ALSO NOT HAD THE OPPORTUNITY TO GET

10    ACCESS TO THE MATERIALS THAT ARE UNDER THE PROTECTIVE ORDER.  03:12

11          WE DON'T BELIEVE THERE ARE ANY EXIGENT CIRCUMSTANCES

12    THAT REQUIRE ANYTHING OTHER THAN AN ORDERLY TRANSITION, AND WE

13    WOULD ASK YOUR HONOR TO KEEP THE FACTS AND CIRCUMSTANCES IN

14    MIND THAT THE DIFFERENCES AND THE BACKDROP IS A SITUATION ABOUT

15    A DISPUTE RELATING TO WHO WOULD BE THE LEAD TRIAL COUNSEL IN   03:13

16    THIS CASE, AND IT'S NOT A CIRCUMSTANCE THAT NECESSITATES AN

17    IMMEDIATE EX-PARTE WITHDRAW.

18          MR. DUNHAM:  SCOTT DUNHAM AGAIN.

19          WITHOUT REVEALING ATTORNEY-CLIENT PRIVILEGED

20    INFORMATION, I RESPECTFULLY DISAGREE WITH MR. HOLDEN'S         03:13

21    REPRESENTATIONS ON VIRTUALLY EVERY STANCE.  AGAIN, WHAT WE SEEK

22    IS AN OPPORTUNITY TO HAVE A HEARING WHERE WE CAN EXPLAIN TO YOU

23    MORE FULLY IN-CAMERA THE CIRCUMSTANCES.

24          I CAN TELL YOU THAT THE URGENCY HERE RELATES TO THE

25    TWO POINTS THAT WE HAVE SET FORTH IN THE MEMORANDUM OF POINTS  03:13
```

1    AND AUTHORITIES THAT ARE ON FILE PUBLICLY IN CONNECTION WITH

2    OUR EX-PARTE APPLICATION; THAT THE DISAGREEMENTS THAT HAVE

3    ARISEN BETWEEN O'MELVENY AND THE MGA PARTIES HAVE MADE IT

4    UNREASONABLY DIFFICULT FOR O'MELVENY TO CONTINUE SERVING AS

5    COUNSEL, AS UNDISPUTED BY THE OPPOSITIONS THEY FILED BY THE MGA    03:14

6    PARTIES, AND IT HAS MATERIALLY INTERFERED WITH OUR ABILITY TO

7    CONTINUE TO PROVIDE EFFECTIVE REPRESENTATION TO THIS CLIENT.

8         IN ADDITION, THE CLIENT HAS NOT COMPLIED WITH THE

9    AGREEMENT TO PAY FEES, AND THAT CREATES A SIGNIFICANT PROBLEM,

10   BOTH IN THE PAST AND TODAY AND GOING FORWARD; AND IT'S URGENT    03:14

11   THAT THOSE TWO ISSUES BE ADDRESSED BY THE COURT.

12         **THE COURT:**  WHAT IS SKADDEN'S VIEW OF THIS WHOLE

13   THING?

14         **MR. NOLAN:**  TOM NOLAN FROM SKADDEN.

15         OBVIOUSLY, I'M THE NEWEST ONE ON THE TEAM HERE.    03:14

16         SETTING ASIDE FOR A MOMENT, JUDGE, WHAT SHOULD BE

17   DONE IMMEDIATELY, I WILL TELL YOU THAT WE WERE RETAINED

18   YESTERDAY.  WE WERE RETAINED WITH THE EXPECTATION THAT THERE

19   COULD BE AN ORDERLY TRANSITION WITH COUNSEL FROM O'MELVENY.

20   I'VE ENJOYED A 30-SOME-YEAR RELATIONSHIP WITH COUNSEL -- NOT ON    03:15

21   THE PHONE HERE BUT WITH OTHER COUNSEL AT O'MELVENY -- AND THESE

22   ARE THE TYPES OF THINGS THAT PROFESSIONAL FIRMS HANDLE IN THE

23   ORDINARY COURSE OF EVENTS AND GENERALLY DO NOT HAVE TO GET THE

24   COURT INVOLVED.  I WAS TAKEN BY SURPRISE THAT THE FIRST

25   PLEADING THAT I SAW AFTER WE HAD SIGNED THE RETAINER AGREEMENT    03:15

1   WAS THE EX-PARTE APPLICATION.

2           I AM PREPARED, YOUR HONOR, TO COME IN AND SUBSTITUTE

3   IN FOR CHRISTENSEN & GLASER AND O'MELVENY AND TO ASSUME THE

4   RESPONSIBILITIES OF BEING THE LEAD TRIAL LAWYER.  I'M NOT

5   ASKING FOR A CONTINUANCE OF THE TRIAL DATE.  I UNDERSTAND THAT          03:15

6   IT'S SET FOR APRIL.

7           WHAT I WAS HOPING THAT I COULD DO, IF THIS HAD NOT

8   BEEN INTERRUPTED BY THE SUBSTANCE OF THE EX-PARTE APPLICATION,

9   WOULD SIMPLY HAVE BEEN ABLE TO CALL UP JOHN QUINN, OR ANYBODY

10  ELSE ON THE QUINN EMANUEL TEAM, AND SPEAK TO JOHN KEKER, AND          03:16

11  ADVISE THEM OF THE CHANGE IN COUNSEL; ASK FOR THE PROFESSIONAL

12  COURTESY OF A COOL-DOWN PERIOD, RECOGNIZING THAT IT MAY BE A

13  LITTLE BIT OF AN INCONVENIENCE FOR SCHEDULING; THAT WE WOULD

14  APPLY A TEAM; THAT WE WOULD GET OUR HANDS AROUND AS MUCH OF THE

15  MILLION PAGES OF DOCUMENTS THAT HAVE BEEN PRODUCED; GET A          03:16

16  HANDLE ON THE 18 DEPOSITIONS THAT HAVE BEEN TAKEN SO FAR;

17  UNDERSTAND BETTER WHAT THE DEPOSITION SCHEDULES LOOK LIKE OVER

18  THE NEXT 30 DAYS; AND ASK JOHN AND HIS TEAM WHETHER OR NOT, AS

19  A PROFESSIONAL COURTESY, THEY WOULD EXTEND THAT TO SKADDEN &

20  ARPS.

21          AND THEN, IF THAT DID NOT WORK OUT, TO COME TO YOUR

22  HONOR AND SEE WHETHER OR NOT WE COULD REACH SOME KIND OF AN

23  ADJUSTMENT IN THE SCHEDULE UNDER THE CIRCUMSTANCES.

24          WHAT NOW SEEMS TO COMPLICATE ALL OF THIS -- AND I'M

25  NOT MEANING TO SOUND CRITICAL, BUT O'MELVENY'S REPRESENTATIVES          03:17

```
 1   HAVE NOW DECLARED THAT THERE'S A CONFLICT; THAT HE HAS NOW ON
 2   THE RECORD IMPUGNED THE INTEGRITY OF IN-HOUSE COUNSEL CRAIG
 3   HOLDEN WITH RESPECT TO THE REPRESENTATIONS THAT CRAIG MADE AS
 4   TO THE UNDERSTANDING OF THE DISAGREEMENT WITH COUNSEL; THAT
 5   THEY ARE WILLING NOW TO DISCHARGE THE RESPONSIBILITIES BY WHAT    03:17
 6   APPEARS TO BE SIMPLY COMPLYING WITH THE PROFESSIONAL RULES OF
 7   3-700, WHICH IS TO TRANSFER DOCUMENTS TO ME.
 8            I WOULD LIKE TO IMPLORE THAT A SENSE OF
 9   PROFESSIONALISM WOULD BE APPLIED HERE; THAT WE WOULD GET
10   INVOLVED; WE WON'T DELAY THE COURT; WE WON'T BOTHER YOU WITH      03:17
11   UNNECESSARY MOTIONS; WE'LL TRY TO WORK THIS OUT PROFESSIONALLY.
12   YOU HAVE MY WORD, YOUR HONOR, THAT WE WOULD TRY TO WORK AS
13   QUICKLY AND AS EFFICIENTLY AS POSSIBLE TO GET IN PLACE SO THAT
14   THE INTERESTS OF MGA ARE NOT PREJUDICED.
15            I CAN ASSURE YOU THAT FROM MY REVIEW OF THE FACTS,       03:17
16   THERE IS NOTHING INCONSISTENT WITH THE RECITATION THAT WAS MADE
17   BY MR. HOLDEN AND THAT A DECISION WAS MADE WITH RESPECT TO WHO
18   WOULD ACTUALLY STAND IN FRONT OF THE JURY REPRESENTING MGA, AND
19   THAT WAS A DISAGREEMENT THAT WAS NOT ACCEPTED BY COUNSEL.  IT'S
20   THEIR CHOICE.                                                    03:18
21            I WOULD ASK THE COURT TO ALLOW ME TO CIRCULATE A
22   SUBSTITUTION OF ATTORNEY.  I HAVE HAD PLEDGED BY COUNSEL FROM
23   CHRISTENSEN GLASER THAT THEY WILL COOPERATE IN EVERY WAY
24   POSSIBLE.  BUT FROM THE COURT'S READING OF THE PAPERS, YOU'LL
25   KNOW THAT CHRISTENSEN GLASER HAVE NOT BEEN THE ACTIVE LAWYERS     03:18
```

```
 1   ON THE FILE; AND ALTHOUGH THEY HAVE PROVIDED SOME HIGH-LEVEL
 2   TRIAL ADVICE AND STRATEGY ADVICE, THEY ARE NOT PREPARED AT THIS
 3   MOMENT TO TAKE ON THE DEFENSE OF THESE DEPOSITIONS.
 4        SO AGAIN, IN SHORT FORM, YOUR HONOR, I WOULD ASK FOR
 5   JUST A MODEST AMOUNT OF TIME TO ALLOW ME AND MY TEAM TO GET IN,     03:18
 6   GET OUR HANDS AROUND THE FACTS OF THE CASE AND MOVE
 7   AGGRESSIVELY AND GET THE DISCOVERY COMPLETED AND HAVE THIS CASE
 8   READY TO TRY ON THE DATE THAT YOU SET.
 9        MR. DUNHAM:  SCOTT DUNHAM AGAIN, RESPONDING, IF I
10   MAY.                                                               03:19
11        FIRST OF ALL, WITH DUE RESPECT TO MR. NOLAN, NOBODY
12   IS IN A CONDITION TO STATE WHAT THE FACTS ARE OR NOT UNDER THE
13   CIRCUMSTANCES.  AND AGAIN, I'M STRAINED BY ATTORNEY-CLIENT
14   COMMUNICATIONS AND CONFIDENTIAL INFORMATION FROM RESPONDING IN
15   MORE DETAIL TO THE REPRESENTATIONS.                                03:19
16        WHAT MR. NOLAN HAS STATED IS ACCEPTABLE TO O'MELVENY
17   TO THE EXTENT THAT WHAT HE'S SAYING IS THE CLIENT EXECUTES
18   IMMEDIATE SUBSTITUTION OF COUNSEL.  IF WE ARE RELIEVED OF
19   COUNSEL OF RECORD, WE WILL THEN DISCHARGE OUR PROFESSIONAL
20   OBLIGATIONS UNDER RULE 3-700.  THAT HAS BEEN REJECTED TO DATE;     03:19
21   THAT'S WHY WE FILED OUR APPLICATION TO HAVE IT HEARD IN A
22   CIRCUMSTANCE WHERE -- THE RELATIONSHIP BETWEEN COUNSEL AND
23   CLIENT IS IRRETRIEVABLY BROKEN.
24        THE COURT:  ALL RIGHT.
25        DOES QUINN Emanuel HAVE ANYTHING TO SAY ABOUT THIS?          03:20
```

1          **Mr. Proctor:**  WE DO, YOUR HONOR.

2          B. DYLAN PROCTOR FOR MATTEL.

3          UNFORTUNATELY, THAT PROPOSAL WHICH I JUST HEARD WOULD

4    CAUSE MATTEL SIGNIFICANT PREJUDICE, IN OUR VIEW.  WE ARE ALL

5    FOUR PROFESSIONALS HERE, AND I UNDERSTAND THAT MR. NOLAN IS          03:20

6    VERY NEW TO THE CASE; TODAY IS THE FIRST DAY THAT I HAVE HEARD

7    HIS NAME.  BUT IF WHAT WE'RE TALKING ABOUT HERE IS HAVING

8    O'MELVENY AND CHRISTENSEN GLASER GET IMMEDIATELY OUT OF THE

9    CASE AND HAVING MR. NOLAN AND HIS TEAM STEP IN, AND WITH THE

10   REQUEST THAT I HEARD FOR AN EITHER FORMAL OR INFORMAL STAY OR         03:20

11   COOL-DOWN PERIOD, ALL OF THE DEPOSITIONS WHICH ARE NOW ON

12   SCHEDULE -- THERE ARE AT LEAST A DOZEN ON SCHEDULE IN THE NEXT

13   MONTH; I THINK MORE THAN THAT -- ARE GOING TO HAVE TO BE PUT

14   OFF.  ALL OF THE PENDING DISCOVERY MATTERS ARE NOT GOING TO

15   HAPPEN.  AND THERE ARE ONLY ABOUT THREE MONTHS, AS OF NOW, LEFT       03:21

16   IN THE FACT DISCOVERY PERIOD ON PHASE ONE.

17         A ONE-MONTH STAY OR COOL-DOWN PERIOD ON DISCOVERY IS

18   A MAJOR PROBLEM FOR MATTEL.  IT WOULD CAUSE MATTEL SIGNIFICANT

19   PREJUDICE TO DO THAT.

20         AND EVEN GETTING THE DEPOSITIONS WHICH HAVE BEEN               03:21

21   SCHEDULED OVER THE NEXT MONTH ON FILE AND GETTING THOSE DATES

22   LOCKED IN TAKES INORDINATE EFFORT IN THIS CASE, AS I THINK THE

23   COURT KNOWS, BASED ON THE WAY DISCOVERY WORKS IN THIS CASE.

24         AND SO THE IDEA OF O'MELVENY STEPPING OUT OF A CASE

25   IMMEDIATELY AND SKADDEN COMING IN AND TAKING A MONTH OFF TO          03:21

```
 1   LEARN THE CASE BEFORE DISCOVERY PROCEEDS IS SOMETHING WHICH
 2   MATTEL WOULD VIGOROUSLY OPPOSE.
 3          MR. DUNHAM:  SCOTT DUNHAM AGAIN.
 4          THE ISSUE BEFORE THE COURT AT THE MOMENT IS OUR
 5   APPLICATION TO HAVE A HEARING ON THE MERITS OF WITHDRAWAL.  AND   03:22
 6   WE SEEM TO BE MOVING INTO THE MERITS OF WITHDRAWAL -- WE'D LIKE
 7   TO HAVE A MOTION; WE'D LIKE TO HAVE IT HEARD, AND WE'D LIKE TO
 8   BE ABLE TO SUBMIT SUPPORTING DECLARATIONS AND INFORMATION TO
 9   YOU TO SHOW THAT A WITHDRAWAL SHOULD TAKE PLACE IMMEDIATELY.
10          THE COURT:  MR. DUNHAM, MY SENSE IS THERE'S NO             03:22
11   QUESTION THAT YOU AND O'MELVENY & MYERS ARE GOING TO BE OUT AND
12   SKADDEN ARPS IS GOING TO BE IN.  THE ISSUE, I THINK, IS NOT AS
13   COMPLICATED, OR SHOULDN'T BE AS COMPLICATED, AS IT'S TURNING
14   INTO.
15          WHAT I'M GOING TO DIRECT IS AS FOLLOWS:                    03:22
16          COUNSEL FOR SKADDEN, MR. NOLAN, I'M GOING TO ORDER
17   THAT YOU GET TOGETHER IN PERSON WITH MR. DUNHAM TOMORROW, AND
18   THE TWO OF YOU, FOR WHOM I HAVE A TREMENDOUS AMOUNT OF RESPECT,
19   ARE GOING TO SIT DOWN AND YOU'RE GOING TO FIGURE OUT A
20   TRANSITION PLAN, AND THEN YOU'RE GOING TO DRAW UP A JOINT         03:23
21   REPORT TO THIS COURT DESCRIBING THE TRANSITION PLAN AND
22   IDENTIFY ANY AREAS THAT YOU'RE NOT ABLE TO AGREE UPON.
23          AND I TRUST THAT EVERYBODY ELSE WILL GET TOGETHER AND
24   SIGN OFF ON THE SUBSTITUTION OF COUNSEL, AND WE'LL GET
25   CHRISTENSEN GLASER OUT AND O'MELVENY OUT AND SKADDEN IN, AND      03:23
```

```
 1   WE'LL BE DONE WITH THIS.

 2          AND THEN THE ISSUE OF THE STAY IS SOMETHING WHICH

 3   OBVIOUSLY THE PARTIES, COUNSEL WHO ARE IN THE CASE, ARE GOING

 4   TO HAVE TO WORK AND DISCUSS THEMSELVES.  I DON'T WANT TO SHORT-

 5   CIRCUIT THE PROCESS OF THEM MEETING AND CONFERRING; NAMELY,       03:23

 6   HAVING MR. NOLAN AND MR. QUINN, OR WHOEVER ELSE FROM THOSE

 7   RESPECTIVE FIRMS, SITTING DOWN AND TRYING TO FIGURE OUT WHAT IS

 8   AN APPROPRIATE APPROACH AT THIS POINT.  BUT I'M NOT GOING TO

 9   LINK THESE TWO ISSUES, AT LEAST NOT TODAY.

10          WHAT NEEDS TO HAPPEN IS PROFESSIONALS FROM O'MELVENY       03:23

11   AND SKADDEN NEED TO SIT DOWN, MINDFUL OF THEIR ETHICAL

12   RESPONSIBILITIES, AND WORK OUT A TRANSITION PLAN HERE.  I

13   EXPECT THAT TO TAKE PLACE TOMORROW AND THE COURT TO RECEIVE A

14   JOINT REPORT BY NOON ON FRIDAY.

15          I WILL THEN PERHAPS CALL ANOTHER TELEPHONIC                03:24

16   CONFERENCE ON FRIDAY AFTERNOON, IF THERE'S ANY NEED FOR COURT

17   INTERVENTION, IF THERE'S A NEED FOR MOTION PRACTICE, OR

18   ANYTHING ELSE.  BUT I REALLY BELIEVE, I HAVE A TREMENDOUS

19   AMOUNT OF CONFIDENCE, THAT IF COUNSEL SIT DOWN IN PERSON

20   TOMORROW, THAT THEY WILL BE ABLE TO WORK OUT AN APPROPRIATE       03:24

21   TRANSITION PLAN THAT MAKES THIS WORK.

22          MR. NOLAN, DO YOU UNDERSTAND WHAT THE COURT IS

23   ASKING?

24          MR. NOLAN:  CLEARLY, YOUR HONOR, AND I SHARE YOUR

25   CONFIDENCE.                                                       03:24
```

```
 1          THE COURT:  MR. DUNHAM, DO YOU UNDERSTAND WHAT THE

 2   COURT IS ASKING?

 3          MR. DUNHAM:  I DO, YOUR HONOR, BUT I DON'T SHARE YOUR

 4   CONFIDENCE.

 5          THE COURT:  ALL RIGHT.  WELL, WE'LL SEE WHAT COMES        03:24

 6   OUT ON FRIDAY.

 7          I CAN'T THINK OF ANY NEED FOR ANYBODY ELSE TO BE

 8   INVOLVED IN THIS AT THIS POINT.  THIS IS BASICALLY A HAND-OFF

 9   BETWEEN THE TWO FIRMS IN QUESTION.  AS I UNDERSTAND IT, THERE'S

10   NO PROBLEM WITH CHRISTENSEN GLASER IN TERMS OF HOW YOU'RE       03:25

11   TRANSITIONING.

12          IS THAT CORRECT?

13          MR. KLEVENS:  CORRECT, YOUR HONOR.

14          THE COURT:  AND AS FAR AS QUINN EMANUEL IS CONCERNED,

15   WE'RE JUST GOING TO HAVE TO WAIT AND SEE HOW THIS TRANSITION    03:25

16   GOES DOWN IN THE NEXT DAY OR TWO, AND THEN WE CAN TALK ABOUT

17   WHERE WE'RE GOING TO GO FROM THERE.

18          ALL RIGHT, MR. PROCTOR?

19          MR. PROCTOR:  YES, SIR.  THANK YOU, YOUR HONOR.

20          THE COURT:  I'LL LOOK FORWARD TO THAT REPORT BY          03:25

21   FRIDAY BY NOON.

22          MR. DUNHAM:  IF I MAY, JUST TO CLARIFY, IN TERMS OF

23   THE DISCUSSION ABOUT TRANSITION, I'M A BIT CONCERNED -- AND I'M

24   NOT AS CLOSE TO THE CASE AS EVERYBODY ELSE ON THIS LINE; I'M

25   HERE SIMPLY FOR THE WITHDRAWAL PURPOSES -- THAT CHRISTENSEN     03:25
```

```
 1   GLASER HAS QUITE A BIT OF RESPONSIBILITY ON THIS CASE THAT WILL

 2   REQUIRE SOME TRANSITIONING AS WELL.

 3        THE COURT:  I'M SURE THAT'S TRUE, BUT I'M NOT HEARING

 4   ANY PROBLEM ABOUT THAT TRANSITION.  THE TRANSITION PROBLEM

 5   APPEARS TO BE DIRECTED AT O'MELVENY RIGHT NOW, AND ALL I WANT       03:25

 6   TO DO IS -- YOU'RE OUT; I MEAN, YOU'RE GOING TO BE OUT AS SOON

 7   AS THAT SUBSTITUTION OF COUNSEL FORM IS FILLED OUT; SO YOU'RE

 8   GOING TO GET THE RELIEF THAT YOU SEEK, AND I THINK YOU'RE GOING

 9   TO GET IT IN QUICK ORDER.

10        THE QUESTION IS HOW IS THE TRANSITION GOING TO TAKE           03:26

11   PLACE AND HOW ARE YOU GOING TO GET THE FILES OVER TO SKADDEN

12   ARPS?

13        AND THAT'S ALL I'M ASKING FOR TOMORROW, IS FOR YOU TO

14   SIT DOWN -- AND I KNOW THAT O'MELVENY & MYERS HAS DONE THIS

15   MANY TIMES BEFORE, AS HAS SKADDEN ARPS; SO I KNOW YOU KNOW HOW     03:26

16   TO DO THIS.  JUST SIT DOWN AND DO IT.

17        MR. DUNHAM:  I AGREE, YOUR HONOR, THAT IF THE

18   WITHDRAWAL WAS PROVIDED TO US TOMORROW, WE'LL HAVE NO

19   DIFFICULTY TRANSITIONING THE FILES TO MR. NOLAN.

20        THE COURT:  AND FULFILLING ALL OF YOUR ETHICAL                03:26

21   RESPONSIBILITIES THAT ARISE IN A CIRCUMSTANCE LIKE THIS.

22        I DON'T NEED TO LECTURE ANYBODY ON THIS PHONE LINE

23   ABOUT WHAT NEEDS TO BE DONE AND WHAT DOESN'T NEED TO BE DONE.

24   YOU ALL KNOW BETTER.

25        LETS GET IT DONE.  LETS GET A REPORT TO THE COURT BY          03:26
```

```
 1   NOON ON FRIDAY.  YOU'LL RECEIVE FURTHER DIRECTION FROM MY COURT
 2   CLERK AT THAT POINT IN TIME.
 3            AS FAR AS THE STAY OR THE REQUEST FOR THE STAY,
 4   OBVIOUSLY SOMETHING NEEDS TO BE DONE HERE.  IT'S NOT CLEAR TO
 5   ME WHAT.  WHAT I'M GOING TO DO IS ORDER COUNSEL TO COME IN ON      03:26
 6   MONDAY AT OUR NORMAL HEARING TIME FOR A STATUS CONFERENCE,
 7   10:00 A.M., AND WE'LL DISCUSS THE FUTURE DIRECTION OF THIS
 8   CASE.
 9            MR. NOLAN:  IN THE MEANTIME, BEFORE MONDAY, I WILL
10   ENDEAVOR, AFTER I MEET WITH O'MELVENY COUNSEL, I'LL ALSO REACH     03:27
11   OUT AND, IF POSSIBLE, TRY TO MEET WITH QUINN EMANUEL'S TEAM AND
12   SEE WHETHER OR NOT WE CAN'T COME INTO COURT AT LEAST WITH SOME
13   IDEA IN MIND AS TO WHAT OUR RESPECTIVE POSITIONS ARE, AND I'LL
14   ALSO MEET WITH MR. KEKER'S FIRM TO COORDINATE THAT AS WELL.
15            THE COURT:  I WOULD EXPECT YOU TO DO THAT.               03:27
16            ANYTHING FURTHER?
17            MR. KEKER:  THIS IS JOHN KEKER.
18            ON MONDAY, I WILL BE IN SERBIA, I'M AFRAID, BUT WE'LL
19   HAVE SOMEBODY ELSE AT THE HEARING REPRESENTING MR. BRYANT.
20            THE COURT:  VERY WELL.  I APPRECIATE THAT.              03:27
21            HAVE A SAFE JOURNEY TO SERBIA.
22            MR. KEKER:  THANK YOU.
23            THE HEARING IS AT 10:00?
24            THE COURT:  YES.
25   / / /
```

```
 1                (WHEREUPON, THE TELEPHONIC CONFERENCE

 2                 WAS CONCLUDED.)

 3

 4    /  /  /

 5    /  /  /

 6    /  /  /

 7

 8

 9

10

11

12

13

14

15

16

17                             CERTIFICATE

18

19   I hereby certify that pursuant to section 753, title 28, united
     states code, the foregoing is a true and correct transcript of
20   the stenographically recorded proceedings held in the above-
     entitled matter and that the transcript page format is in
21   conformance with the regulations of the judicial conference of
     the united states.

22

23   _____          _____
     THERESA A. LANZA, CSR, RPR                      Date
24   FEDERAL Official COURT Reporter

25
```