1               UNITED STATES DISTRICT COURT

2               CENTRAL DISTRICT OF CALIFORNIA

3                     EASTERN DIVISION

4                          - - -

5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                          - - -

7    carter bryant, et. Al.,            )
                                        )
8                        Plaintiffs,    )
                                        )
9              vs.                      )   No. ED CV 04-09049
                                        )   (LEAD LOW NUMBER)
10   mattel, inc., et. Al.,             )
                                        )
11                       Defendants.    )   STATUS CONFERENCE
     _____)
12   AND CONSOLIDATED ACTIONS,          )
     _____)
13

14

15           REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                  RIVERSIDE, California

17               MONDAY, OCTOBER 15, 2007

18                       10:11 A.M.

19

20

21

22

23              THERESA A. LANZA, RPR, CSR
              FEDERAL Official Court Reporter
24              3470 12th Street, Rm. 134
              RIVERSIDE, California  92501
25                  (951) 274-0844
                Csr11457@sbcglobal.net

```
 1   APPEARANCES:

 2   On behalf of CARTER BRYANT:

 3                        KEKER & VAN NEST
                          BY:  MATTHEW M. WERDEGAR
 4                        710 SANSOME STREET
                          SAN FRANCISCO, California  94111-1704
 5                        (415) 391-5400

 6
     on behalf of MATTEL:
 7
                          QUINN EMANUEL
 8                        BY:  JON COREY
                          By:  B. DYLAN PROCTOR
 9                        BY:  MICHAEL ZELLER
                          865 S. FIGUEROA STREET,
10                        10TH FLOOR
                          LOS ANGELES, California  90017
11                        (213) 624-7707

12
     ON BEHALF OF MGA ENTERTAINMENT (OUTGOING):
13
                          O'MELVENY & MYERS LLP
14                        BY:  SCOTT H. DUNHAM
                          BY:  MARC F. FEINSTEIN
15                        400 SOUTH HOPE STREET
                          LOS ANGELES, CALIFORNIA 90071-2899
16                        (213) 430-6000

17                        CHRISTENSEN, GLASER, FINK,
                           JACOBS, WEIL & SHAPIRO, LLP
18                        BY:  AMMAN KHAN
                          10250 CONSTELLATION BOULEVARD
19                        LOS ANGELES, CALIFORNIA  90067
                          (310) 553-3000
20

21   ON BEHALF OF MGA ENTERTAINMENT (INCOMING):

22                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                          BY:  THOMAS J. NOLAN
23                        BY:  CARL ALAN ROTH
                          300 SOUTH GRAND AVENUE
24                        LOS ANGELES, CALIFORNIA  90071-3144
                          213-687-5000
25   /  /  /
```

```
 1   APPEARANCES (CONT'D):

 2

 3   ON BEHALF OF GUSTAVO MACHADO:

 4                         OVERLAND BORENSTEIN SCHEPER & KIM
                           BY:  ALEXANDER H. COTE
 5                         300 SOUTH GRAND AVENUE
                           SUITE 2750
 6                         LOS ANGELES, CALIFORNIA  90071
                           213-613-4660
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1      RIVERSIDE, CALIFORNIA; MONDAY, OCTOBER 15, 2007; 10:11 A.M.

 2                              -oOo-

 3          THE CLERK:  CALLING CALENDAR ITEM NUMBER THREE, CASE

 4   NUMBER CV 04-09049-SGL, CARTER BRYANT VERSUS MATTEL, INC., AND

 5   CONSOLIDATED CASES.                                            10:04

 6          MAY WE HAVE COUNSEL PLEASE COME FORWARD AND STATE

 7   YOUR APPEARANCES FOR THE RECORD.

 8          MR. COREY:  JON COREY ON BEHALF OF MATTEL;

 9          I'M HERE WITH DYLAN PROCTOR AND MICHAEL ZELLER.

10          THE COURT:  GOOD MORNING, COUNSEL.                      10:12

11          MR. NOLAN:  GOOD MORNING, YOUR HONOR.

12          THOMAS NOLAN FROM SKADDEN ARPS, ALONG WITH CARL ROTH,

13   ON BEHALF OF THE MGA DEFENDANTS.

14          THE COURT:  GOOD MORNING, COUNSEL.

15          MR. COTE:  GOOD MORNING, YOUR HONOR.                    10:12

16          ALEXANDER COTE FROM OVERLAND & BORENSTEIN ON BEHALF

17   OF GUSTAVO MACHADO.

18          MR. WERDEGAR:  GOOD MORNING, YOUR HONOR.

19          MATTHEW WERDEGAR OF KEKER & VAN NEST ON BEHALF OF

20   CARTER BRYANT.                                                 10:12

21          MR. KHAN:  AMMAN KHAN OF CHRISTENSEN GLASER, OUTGOING

22   ATTORNEYS FOR MGA ENTERTAINMENT, ET AL.

23          MR. DUNHAM:  GOOD MORNING, YOUR HONOR.

24          O'MELVENY & MYERS, BY SCOTT DUNHAM AND

25   MARK FEINSTEIN, ON BEHALF OF MGA PLAINTIFFS.                   10:12
```

1          **THE COURT:**  GOOD MORNING, COUNSEL.

2          THE COURT CALLED A STATUS CONFERENCE THIS MORNING

3    JUST TO FIND OUT WHERE WE WERE AT.  I DID SIGN THE

4    SUBSTITUTION-OF-COUNSEL PAPERS ON FRIDAY, AND I RECEIVED THE

5    JOINT STATEMENT FROM COUNSEL, AT LEAST BETWEEN MR. NOLAN AND          10:12

6    THE PREVIOUS COUNSEL.

7          I GUESS WHAT I WANT TO GET A SENSE ON RIGHT NOW IS

8    WHERE SPECIFICALLY THIS TRANSITION PLAN IS; SO, MR. NOLAN, IF

9    YOU WOULD BEGIN WITH THAT, AND THEN WE'LL TALK ABOUT YOUR

10   REQUEST FOR A STAY.                                                  10:13

11         **MR. NOLAN:**  THANK YOU VERY MUCH, YOUR HONOR.

12         YOUR HONOR, FOLLOWING THE HEARING WHICH WAS CONDUCTED

13   TELEPHONICALLY ON OCTOBER 10TH, PURSUANT TO THE COURT'S ORDER,

14   WE DID MEET WITH REPRESENTATIVES OF O'MELVENY, AS WELL AS THE

15   CHRISTENSEN GLASER FIRM.  WE MET FOR APPROXIMATELY FOUR HOURS.       10:13

16   DURING THE COURSE OF THAT MEETING, THE FOCUS WAS BASICALLY,

17   WHAT IS THERE TO TRANSITION, TRYING TO GET AN UNDERSTANDING AS

18   TO HOW LARGE THIS BREAD BOX OF DOCUMENTS MAY BE AND ANY

19   TECHNOLOGY ISSUES THAT WILL BE INVOLVED IN THE TRANSITION.

20   O'MELVENY HAD PREPARED AN EXTENSIVE LIST OF THE ITEMS THAT          10:13

21   WOULD BE TRANSFERRED.

22         I'M SURE THE COURT KNOWS, FROM ITS INVOLVEMENT IN THE

23   CASE, THAT THE CASE IS SIGNIFICANT.  THERE HAVE BEEN OVER

24   2,000,000 PAGES OF DOCUMENTS ALREADY PRODUCED.  THERE HAVE BEEN

25   ABOUT 20 DEPOSITIONS TAKEN; WE ANTICIPATE MAYBE EVEN AS MUCH AS     10:14

```
 1   A DOZEN MORE OR TWO DOZEN MORE; THAT'S STILL IN FLUX, BECAUSE I

 2   KNOW THAT THERE'S A DISCUSSION ABOUT EXTENDING THE LIMIT THAT

 3   HAD PREVIOUSLY BEEN IMPOSED IN THE CASE.

 4           IN THE LAST 90 DAYS, THERE WERE 3,000 REQUESTS FOR

 5   ADMISSION -- OR I THINK THERE'S 3,300 RFA'S THAT ARE          10:14

 6   OUTSTANDING, WHICH IS BREATHTAKING; BUT IT'S AN IMPORTANT CASE;

 7   I'LL ADD THEM TO MY FORM FILE SO MAYBE I'LL HAVE A CASE SOME

 8   DAY WHERE I CAN ISSUE SOME OF THEM.

 9           WE THEN HAD A PHONE CALL LAST EVENING WITH

10   QUINN EMANUEL LAWYERS, THE GENTLEMEN THAT ARE PRESENT TODAY.   10:14

11   IT WAS VERY PRODUCTIVE, I THOUGHT, AND THEY WERE VERY GRACIOUS

12   AND VERY PROFESSIONAL.  ALL OF THE LAWYERS HAVE BEEN

13   PROFESSIONAL IN THIS REGARD.

14           I THINK THE PROPOSAL THAT WE REACHED, YOUR HONOR,

15   IS -- FIRST OF ALL, THE TRANSITION IS UNDER WAY FROM O'MELVENY  10:14

16   TO SKADDEN.  IF I COULD BREAK DOWN THE TRANSITION INTO

17   TECHNOLOGY, without GETTING INTO TOO MUCH DETAIL BECAUSE I MUST

18   CONFESS THAT I'M NOT THE TECHNOLOGY EXPERT, BUT THERE ARE

19   DATABASES THAT NEED TO BE EXPORTED.  THOSE ARE BEING STARTED,

20   TODAY.  SOME OF IT WAS DONE ON FRIDAY; SOME OF IT WILL TAKE --  10:15

21   FOR INSTANCE, THE PRODUCTION BASIS -- WILL TAKE ABOUT THREE

22   DAYS JUST TO COPY ONTO A HARD DRIVE AND THEN AN ADDITIONAL

23   THREE DAYS TO DROP IT INTO OUR SYSTEM SO THAT WE CAN THEN HAVE

24   ACCESS TO IT.  WE WON'T HAVE ACCESS TO THAT BEFORE THEN.

25           IN ADDITION TO THE PRODUCTION -- AND THAT'S THE        10:15
```

1    2,000,000 PAGES THAT WE TALKED ABOUT -- THERE IS ANOTHER FORM

2    OF ELECTRONIC DISCOVERY DATABASE WHICH WE WILL HAVE TO WORK

3    WITH THE VENDOR TO EXPORT FROM THE VENDOR'S HOME SITE TO

4    SKADDEN'S HOME SITE.  THE ESTIMATE THERE IS THAT THAT COULD BE

5    DONE IN A COUPLE, THREE DAYS.  BUT UNTIL THAT TIME, WE HAVE                    10:16

6    LIMITED ACCESS TO THAT DATABASE, BECAUSE, CANDIDLY, WE'RE JUST

7    NOT EXPERIENCED WITH THE FORMATTING AND THE ORGANIZATION OF

8    THAT.

9         O'MELVENY HAS BEEN WORKING WITH US THIS WEEKEND, AND

10   I THINK THEY'RE GOING TO SEND OVER ONE OF THEIR OWN PEOPLE                     10:16

11   TODAY TO WORK IN OUR OFFICES TO TRY TO HELP US GET SOME

12   RUDIMENTARY ISSUES OUT OF THAT ROOM; BUT THAT'S GOING ON;

13   THAT'S MOVING ALONG SLOW.

14        FRANKLY, WE'VE THROWN A LOT OF BODIES ONTO THE

15   TECHNOLOGY SIDE OF IT, BUT MY BEST ESTIMATE IS THAT IT'S GOING                 10:16

16   TO TAKE US ABOUT TWO WEEKS ON JUST THE ELECTRONIC TRANSFER TO

17   GET OUR SEA LEGS IN THIS CASE, YOUR HONOR, WHICH IS DEFINED BY

18   OUR SYSTEM, AND THEN WE WILL KIND OF HAVE A LEARNER'S PERMIT ON

19   HOW TO CANVASS THAT INFORMATION.  BUT THIS IS NOT BY DELAY OR

20   ANYTHING ELSE.  WE PUT PEOPLE IN NEW YORK, PEOPLE IN LOS                       10:17

21   ANGELES.  WE'VE GOT OUR TOP TECHNOLOGY PEOPLE WORKING ON THIS,

22   AS DOES O'MELVENY.

23        CHRISTENSEN GLASER, WE DID MEET WITH THEM.  THEY

24   DON'T HAVE AS MUCH INFORMATION TO TRANSITION.  THEY HAVE BEEN

25   RESOURCEFUL, THOUGH, AND VERY MUCH OF ASSISTANCE IN TERMS OF                   10:17

```
 1   TRYING TO IDENTIFY PRIORITIES.

 2          OUR BEST GUESS IS THAT THERE MAY BE AS MANY AS 30

 3   DISCOVERY ISSUES THAT ARE IN DISPUTE RIGHT NOW; THAT'S A ROUGH

 4   GUESSTIMATE.  IT MAY BE MORE THAN THAT; IT MAY BE LESS THAN

 5   THAT.  IN THE PHONE CALL THAT WE HAD WITH QUINN EMANUEL LAST    10:17

 6   NIGHT, WHAT I TOLD THEM CANDIDLY WAS THIS:  DESPITE BEING IN

 7   THE CASE FOR MAYBE 72 HOURS AND THINKING THAT WE HAD MADE SOME

 8   PROGRESS, I CANNOT, AS AN OFFICER OF THE COURT, COME AND TELL

 9   YOU WITH GREAT PRECISION THAT I DO NEED 30 DAYS.  WHAT I AM

10   ABLE TO TELL YOU, YOUR HONOR, IS THIS:                         10:17

11          WE ARE GOING FORWARD WITH A PRODUCTION OF DOCUMENTS

12   TODAY.  WE WILL PRODUCE AN ADDITIONAL 750,000 PAGES OF

13   DOCUMENTS TODAY TO MATTEL.  THERE WILL BE AN ADDITIONAL

14   PRODUCTION OF 500,000 PAGES OF MATERIAL TO MATTEL; SO WITHIN

15   THE NEXT 72 HOURS OR SO, WE WILL PRODUCE ABOUT 1,250,000 PAGES  10:18

16   OF ADDITIONAL PRODUCTION TO MATTEL.

17          WE DO NOT KNOW, AND CANNOT REPRESENT UNTIL WE

18   OURSELVES TAKE A LOOK AT THIS, WHETHER OR NOT THAT COMPLETES

19   THE PRODUCTION OF THAT PARTICULAR PHASE THAT WAS OUTSTANDING.

20   I THINK IT'S A HEALTHY PERCENTAGE OF THE DOCUMENTS.  I JUST     10:18

21   WANT TO BE ABLE TO GO BACK AND UNDERSTAND WHERE THEY LOOKED FOR

22   THE DOCUMENTS, WHAT SOURCES THEY RECEIVED IT FROM, JUST TO MAKE

23   CERTAIN THAT IF WE TELL QUINN EMANUEL IT'S COMPLETE, THAT I'M

24   ASSURED THAT IT'S COMPLETE.  BUT I'M HAPPY TO REPORT THAT WE'RE

25   GOING TO MAKE THAT KIND OF PROGRESS.                           10:18
```

```
 1              IN THE PHONE CALL LAST NIGHT, I TOLD QUINN EMANUEL WE
 2    WOULD BE ABLE TO DO THAT.  I ALSO ASKED THEM, HOWEVER --
 3    THEY'VE GOT A PRODUCTION DUE TO US, TO MGA, ON I BELIEVE
 4    OCTOBER 29TH, AND WE WOULD VERY MUCH LIKE THAT PRODUCTION TO GO
 5    FORWARD.  AND I DON'T HAVE A COMPLETE UNDERSTANDING OF HOW THIS    10:19
 6    IS IN THIS CASE, BUT WITH THE PRODUCTION THAT WE WILL MAKE THIS
 7    WEEK, THE REPORT CARD ON WEDNESDAY WILL LOOK LIKE THIS:
 8              MGA HAS PRODUCED APPROXIMATELY 3,000,000 PAGES OF
 9    MATERIALS, AND IT LOOKS LIKE MATTEL HAS PRODUCED ABOUT 200,000
10    PAGES OF DOCUMENTS; SO WE'RE EXPECTING THE PRODUCTION ON          10:19
11    OCTOBER 29TH TO BRING THAT MORE IN LINE, BUT I'M NOT ABSOLUTELY
12    CERTAIN OF THAT.
13              WE HAVE TO GET A HANDLE ON THE ACTUAL PRODUCTION
14    BASES OURSELVES, YOUR HONOR.  I UNDERSTAND THAT THEY'VE BEEN
15    CODED, BUT WE HAVE NOT PERSONALLY SEEN THE CODING THERE.          10:19
16              WITH RESPECT TO THE OUTSTANDING DISCOVERY MATTERS,
17    MOST OF THOSE ARE PENDING IN FRONT OF JUDGE INFANTE.  WE HAVE
18    NOT YET INFORMED JUDGE INFANTE OF OUR ENTRANCE IN THE CASE.
19    WE, OF COURSE, HAVE EXPERIENCE WITH JUDGE INFANTE, AND WE WOULD
20    EXPECT TO COORDINATE THAT.                                        10:20
21              WHAT WE DISCUSSED LAST NIGHT GENERALLY WITH
22    QUINN EMANUEL WAS THAT A MORE SANE APPROACH TO THIS WOULD BE TO
23    GIVE YOU THE GROSS REPORT TODAY, OR, IN THE AGGREGATE, WHAT
24    WE'RE DOING; ASK THE COURT WHETHER OR NOT IT WOULD BE POSSIBLE
25    TO COME BACK BEFORE YOU IN TWO WEEKS.  DURING THAT TWO WEEKS,     10:20
```

1   WE WOULD CONTINUE TO WORK WITH QUINN EMANUEL TO TRY TO

2   PRIORITIZE THOSE ISSUES THAT NEED THE MOST IMMEDIATE TRIAGE OR

3   ATTENTION WITH RESPECT TO THE PRODUCTION.  WE WOULD DO THE

4   SAME.  THERE ARE OPEN ISSUES WITH RESPECT TO MATTEL'S DISCOVERY

5   OBLIGATIONS TO MGA THAT I NEED TO GET A HANDLE ON, AND I WANT          10:20

6   TO PUT THAT ON THE AGENDA.  I THINK THAT DURING THAT TWO-WEEK

7   PERIOD OF TIME, WE CAN CONTINUE TO, AS I SAID, TRANSPORT ALL OF

8   THE DATA, WORK WITH THE LAWYERS FROM CHRISTENSEN GLASER.

9        I HAVE SPOKEN WITH JOHN KEKER VERY BRIEFLY.  I DON'T

10  THINK THAT JOHN'S FIRM WILL NECESSARILY BE INVOLVED IN THE           10:21

11  TRANSITION THAT MUCH, BUT WE'LL COORDINATE AND INCLUDE THEM AS

12  WELL.

13       WE HAVE SOME ISSUES WITH RESPECT TO CONTINUING ACCESS

14  TO O'MELVENY PERSONNEL.  WE'RE NOT HANDLING THAT ISSUE; THAT

15  IS, SKADDEN IS NOT INVOLVED IN THAT.  WE'RE TRYING TO KEEP OUR       10:21

16  FOCUS ON THE MISSION AT HAND, WHICH IS TO TRY TO GET INTO THIS

17  CASE AS EFFICIENTLY AS POSSIBLE.

18       I WOULD BELIEVE, YOUR HONOR, THAT DURING THE NEXT TWO

19  WEEKS, WE WILL BE IN A POSITION TO BE FAR MORE INTELLIGENT WITH

20  YOU AS TO WHAT RELIEF WE DO NEED IN ADDITION TO THE TWO-WEEK         10:21

21  BREATHER THAT I'M ASKING FOR NOW.  I THINK THAT WE'VE BEEN

22  ACTING AS PROFESSIONALS.  I THINK THAT'S OUR STYLE ANYWAY; BUT

23  CERTAINLY, YOU GAVE US THAT EDICT IN THE TELEPHONIC CONFERENCE,

24  AND I THINK EVERYBODY HEARD YOU LOUD AND CLEAR IN THAT RESPECT.

25       ONE THING THAT WE'VE AGREED TO WITH RESPECT TO ANY            10:22

```
 1   DEADLINES THAT ARE DUE OVER THE NEXT TWO WEEKS, IS THAT THEY,

 2   TO USE A TERM, WOULD BE SUSPENDED OR RELIEVED FOR THE TIME

 3   BEING; THAT THERE WOULD BE NO 'GOTCHAS' DURING THIS PERIOD OF

 4   TIME.

 5        THEY'VE ASKED US TO SIGN A STIPULATION TODAY, WHICH I    10:22

 6   WILL, WHICH EXTENDS THE TIME FROM WHICH THEY CAN APPEAL ONE OF

 7   THE DISCOVERY RULINGS FROM JUDGE INFANTE.  I'M PERFECTLY

 8   WILLING TO DO THAT.

 9        ANOTHER CONCESSION THAT WE MADE -- IT'S NOT A BIG

10   CONCESSION; IT'S REALLY A PROFESSIONAL COURTESY -- AND THAT IS  10:22

11   THAT WITH RESPECT TO THE SCHEDULING OF DATES IN THIS CASE, FOR

12   INSTANCE, THE DISCOVERY CUTOFF DATE -- AND I CAN'T IMAGINE HOW

13   WE WOULD BE ABLE TO DO THIS -- RATHER THAN TAKE ADVANTAGE OF

14   THE LATE ENTRY AND THE BREATHING PERIOD OF TWO WEEKS, I AGREE

15   THAT, SUBJECT TO THE COURT'S APPROVAL, THAT WE WOULD GIVE     10:22

16   RELIEF ON THE BACK END OF THE DISCOVERY CUTOFF SO THAT NOBODY

17   GOT JAMMED AT THE LAST MINUTE.

18        THAT MAY ALSO APPLY, AND MORE LIKELY WILL APPLY, ALSO

19   TO THE EXPERT DISCOVERY CUTOFF, YOU KNOW, THE IDENTIFICATION OF

20   EXPERTS.  THIS IS AN EXPERT-HEAVY CASE, AS I'M GETTING TO      10:23

21   UNDERSTAND THIS MORE; SO WE MAY BE, ON THAT NEXT STATUS

22   CONFERENCE, GIVING YOU AN ACTUAL REPORT AS TO WHEN WE THINK WE

23   CAN HIT THESE MARKS.

24        YOUR HONOR, I'VE NOT HAD THE PLEASURE TO APPEAR

25   BEFORE YOU, BUT I KNOW THAT LAWYERS FROM SKADDEN ARPS HAVE.  I  10:23
```

1    CAN ASSURE YOU THAT WE WILL DO EVERYTHING POSSIBLE TO MOVE THIS

2    CASE AS EFFICIENTLY AS POSSIBLE.  WE ARE MINDFUL, HOWEVER, THAT

3    WE DO NOT WANT TO -- AND MGA CERTAINLY DID NOT ENTERTAIN THE

4    SUBSTITUTION OF COUNSEL FOR ANY PURPOSE OF DELAY OR TO CAUSE

5    PREJUDICE TO ANYBODY, ESPECIALLY THE COURT'S CALENDAR.  I KNOW          10:23

6    THAT YOU AND YOUR COURT STAFF HAVE WORKED A LOT OF HOURS ON

7    THIS CASE.  WE'LL BE MINDFUL OF THAT.  WE'LL WORK AS QUICKLY AS

8    WE CAN.  WE'LL WORK AS SMART AS WE CAN.

9         IT WILL TAKE THE COOPERATION AND PROFESSIONALISM OF

10   QUINN EMANUEL, BUT BASED ON OUR CONVERSATION LAST NIGHT, I WAS          10:24

11   QUITE PLEASED, AT LEAST WITH THE INITIAL CONFERENCE CALL THAT

12   WE HAD.  BUT THE PROOF WILL BE IN THE PUDDING.  WE'RE COMMITTED

13   TO THE CASE, AND WE'LL TRY TO GET THIS THING READY ON TIME,

14   YOUR HONOR.

15        **THE COURT:**  VERY GOOD, COUNSEL.                               10:24

16        I'LL CERTAINLY GIVE EVERYONE A CHANCE TO SPEAK TO

17   THIS ISSUE.  BUT FOR YOUR PART, YOU'RE SEEKING A TWO-WEEK

18   TEMPORARY STAY, BASICALLY, JUST TO GET THROUGH THIS

19   TECHNOLOGICAL TRANSITION PERIOD, TO KIND OF GET YOUR FEET WET,

20   AND THEN COME BACK HERE AND THEN BE ABLE TO SEEK A MORE               10:24

21   LONG-TERM REFORMATION, PERHAPS, IN THE SCHEDULING OF THE CASE?

22        **MR. NOLAN:**  I THINK THAT'S FAIR, WITH MAYBE ONE EDIT;

23   AND THAT IS THAT I THINK WHATEVER SELECTIVE RELIEF WE WILL BE

24   ASKING FOR WILL BE SELECTIVE AND THAT WE WILL CONTINUE TO

25   PRIORITIZE DURING THIS TWO-WEEK PERIOD OF TIME SO THAT WE'RE          10:25

1    NOT LOOKING AT LONG EXTENSIONS OR LONG CONTINUANCES.  THAT'S

2    THE GOAL, YOUR HONOR.

3              I'VE BEEN CHARGED WITH BEING NAIVE IN MY CAREER

4    SOMETIMES, BUT THAT'S MY BEST GUESS.

5              I WILL SAY, YOUR HONOR, THAT TWO WEEKS FROM TODAY IS      10:25

6    THE 29TH, AND I WOULD JUST TELL THE COURT THAT I'VE CLEARED MY

7    CALENDAR OF ALMOST ALL OTHER MATTERS TO MAKE ROOM FOR THIS

8    CASE.

9              THERE HAS BEEN A MATTER THAT'S BEEN SET BEFORE

10   JUDGE TASHIMA SITTING AS A SPECIAL MASTER, UNUSUAL PROCEEDINGS     10:25

11   FROM THE NINTH CIRCUIT, INVOLVING SANCTIONS AGAINST CERTAIN

12   LAWYERS IN LOS ANGELES.  I REPRESENT ONE OF THE LAWYERS.  THAT

13   PROCEEDING STARTS NEXT MONDAY.  IT'S ESTIMATED TO GO FIVE DAYS,

14   BUT JUDGE TASHIMA HAS INDICATED THAT HE WANTS TO KEEP US

15   COMMITTED FOR MONDAY THE 29TH AND THE 30TH.                       10:25

16             I'M ABSOLUTELY CLEAR ON THE 31ST, SO I COULD SAY I'M

17   REALLY POSITIVE I COULD BE HERE ON THE 31ST.  I'D MAKE WHATEVER

18   EFFORT I COULD TO MAKE IT ON THE 29TH, YOUR HONOR.  I KNOW THAT

19   YOU TYPICALLY DO NOT HAVE STATUS CONFERENCES DURING THE COURSE

20   OF THE WEEK.                                                      10:26

21             CANDIDLY, MR. ROTH FROM MY FIRM COULD BE HERE ON THE

22   29TH, BUT IT MIGHT BE HELPFUL TO HAVE ME THERE SO THAT I CAN

23   TAKE RESPONSIBILITY FOR WHATEVER WE COMMIT TO.  BUT MR. ROTH IS

24   CAPABLE OF DOING THAT, YOUR HONOR.  WHATEVER IS CONVENIENT FOR

25   THE COURT.                                                        10:26

1          **THE COURT:**  ALL RIGHT.  THANK YOU.

2          I CERTAINLY WILL WANT TO HEAR FROM PLAINTIFF, BUT LET

3    ME HEAR FROM O'MELVENY & MYERS AND CHRISTENSEN GLASER, JUST TO

4    GET YOUR SENSE OF WHERE THIS IS GOING.

5          **MR. DUNHAM:**  SCOTT DUNHAM, YOUR HONOR.                    10:26

6          FROM OUR VIEWPOINT, WE THINK THAT MR. NOLAN HAS

7    ACCURATELY REPRESENTED WHAT'S GOING ON.  WE BEGAN THE TRANSFER

8    PROCESS ACTUALLY THURSDAY EVENING AFTER OUR MEETING AND HAVE

9    CONTINUED THAT PROCESS.  THERE ARE SOME TECHNOLOGICAL ISSUES,

10   APPARENTLY, AS MR. NOLAN SAID.  ONE OF OUR INFORMATION          10:26

11   TECHNOLOGY PERSONNEL IS, WE BELIEVE, AT SKADDEN'S OFFICE RIGHT

12   NOW, TRYING TO WORK WITH THEM ABOUT HOW TO ACCESS AND USE THE

13   SYSTEM.

14         THERE IS SOME TIME REQUIRED TO MAKE THE ELECTRONIC

15   TRANSFERS WHICH HAVE ALREADY BEEN PUT IN PROCESS, BUT AS        10:27

16   MR. NOLAN SAYS -- TO TAKE SOME OF THIS DATA WHICH IS BEYOND OUR

17   CONTROL, FRANKLY; IT'S WITH THE VENDOR; IT REQUIRES SOME TIME

18   AND EFFORT TO BE ABLE TO MAKE THE DUPLICATION AND THE TRANSFER

19   IN WHATEVER FASHION THE TECHNICAL PEOPLE ARE DOING IT.

20         **THE COURT:**  I APPRECIATE THAT YOU ALL GOT TOGETHER ON   10:27

21   THURSDAY AND FRIDAY AND WERE ABLE TO WORK THIS OUT.  I DO WANT

22   TO MAKE SURE THAT BY MOVING FORWARD AS WE ARE THAT I'M NOT

23   LEAVING ON THE TABLE ANY MOTIONS OR ISSUES THAT YOU THINK NEED

24   TO BE BROUGHT TO THE COURT'S ATTENTION.

25         **MR. DUNHAM:**  I'M NOT AWARE OF ANY, YOUR HONOR.  WE      10:27

```
 1   THINK THAT EVERYTHING IS BEING HANDLED; THE TRANSITION IS

 2   TAKING PLACE; WE'RE DELIVERING DOCUMENTS AS QUICKLY AS WE CAN.

 3          THE COURT:  IN THAT CASE, I AM INTENDING TO DENY YOUR

 4   EX-PARTE APPLICATION FOR SHORTENING TIME TO FILE A MOTION FOR

 5   SUBSTITUTION AS BASICALLY MOOT AT THIS POINT.                    10:27

 6          MR. DUNHAM:  THAT'S CORRECT, YOUR HONOR.

 7          THE COURT:  VERY WELL.

 8          THEN THAT EX-PARTE APPLICATION WILL BE DENIED.

 9          AND I JUST WANT TO MAKE SURE THERE'S NO LOOSE ENDS

10   THAT THE COURT NEEDS TO ADDRESS, FROM YOUR PERSPECTIVE.         10:28

11          MR. DUNHAM:  THAT'S CORRECT.

12          YOU STATED AT THE BEGINNING, YOUR HONOR, THAT YOU'VE

13   SIGNED THE ORDER ON THE SUBSTITUTION.  THAT BEING THE CASE,

14   THEN I AGREE IT'S TOTALLY MOOT.

15          THE COURT:  VERY GOOD.  THANK YOU, MR. DUNHAM.          10:28

16          MR. DUNHAM:  THANK YOU, YOUR HONOR.

17          MR. KHAN:  GOOD MORNING, YOUR HONOR.  AMMAN KHAN.

18          LIKEWISE, OUR INVOLVEMENT HAS BEEN LIMITED, MINE

19   ESPECIALLY, TO THE LAST MONTH.  BUT WE WILL MAKE OUR PERSONNEL

20   AVAILABLE FOR DISCUSSIONS AND ANY ONGOING GUIDANCE.  WE DO HAVE 10:28

21   SOME DISCOVERY MATTERS UNDER OUR BELT WHICH WE ARE TRANSFERRING

22   TO THE SKADDEN FIRM, AND WE WILL POINT OUT WHATEVER NEEDS TO BE

23   ADDRESSED SOONER RATHER THAN LATER, AND WE'LL HELP THEM WITH

24   THE TRIAGE PROCESS.

25          THE COURT:  VERY WELL.                                  10:28
```

```
 1            AND I'LL ASK THE SAME QUESTION OF YOU.  A LOT OF

 2   PAPERWORK CAME IN THIS LAST WEEK, A LOT OF ALLEGATIONS, A LOT

 3   OF STATEMENTS, THAT MADE REFERENCE TO OTHER DOCUMENTS THAT I

 4   HADN'T SEEN.

 5            I JUST WANT TO MAKE SURE THERE'S NO LOOSE ENDS THAT       10:29

 6   THIS COURT NEEDS TO ADDRESS IN TERMS OF THE TRANSITION; THAT BY

 7   SIGNING THE SUBSTITUTION, YOU'RE OUT, O'MELVENY IS OUT, SKADDEN

 8   ARPS IS IN; THAT THERE'S NOTHING FURTHER THE COURT NEEDS TO

 9   ADDRESS.

10            IS THAT YOUR SENSE AS WELL?                              10:29

11       MR. KHAN:  THAT IS MY SENSE AS WELL, YOUR HONOR, AND

12   I'M NOT AWARE OF ANYTHING ELSE AT THIS MOMENT.

13            THANK YOU, YOUR HONOR.

14       THE COURT:  VERY GOOD.  THANK YOU, COUNSEL.

15            I'LL HEAR FROM QUINN EMANUEL.                            10:29

16       MR. COREY:  GOOD MORNING, YOUR HONOR.  JON COREY.

17            I THINK, FOR THE MOST PART, MR. NOLAN WAS CORRECT IN

18   SUMMARIZING OUR DISCUSSIONS.  AS THE COURT CAN UNDERSTAND,

19   WE'RE KIND OF SITTING ON THE SIDELINES WATCHING THIS PLAY OUT.

20       THE COURT:  AND I CAN APPRECIATE YOUR CONCERNS IN            10:29

21   TERMS OF DELAY FACTORS, AND IT SOUNDS LIKE, FROM MR. NOLAN,

22   THAT THEY'RE REALLY ACTING AS EXPEDITIOUSLY AS HUMANLY

23   POSSIBLE.

24       MR. COREY:  AND I'M NOT CALLING MR. NOLAN'S

25   REPRESENTATIONS INTO QUESTION.  I'M SURE THAT THAT'S ABSOLUTELY   10:30
```

1    CORRECT.  BUT YOU'RE RIGHT, WHAT'S KIND OF ON MY MIND IS, WE

2    DON'T WANT TO BE PREJUDICED BY ANY OF THIS.  WE ARE AMENABLE TO

3    A TWO-WEEK SOFT STAY.  WE HAD SOME DISCUSSIONS LAST NIGHT ABOUT

4    PRIORITIZING THINGS AND GETTING THINGS THAT WE NEED, FOR

5    EXAMPLE, FOR OUR EXPERTS.  WITH THOSE KINDS OF DISCUSSIONS          10:30

6    GOING ON, I THINK THAT WE CAN WORK THROUGH THIS, AND WE'RE

7    AMENABLE TO A TWO-WEEK SOFT STAY.

8             **THE COURT:**  JUST SO IT'S CLEAR TO ME HERE, WHAT DO

9    YOU MEAN BY A TWO-WEEK SOFT STAY?  WHAT IS NOT STAYED DURING

10   THESE NEXT TWO WEEKS?  OTHER THAN, OF COURSE, THE TRANSITION OF    10:30

11   ELECTRONIC FILES AND THE PRODUCTION OF DOCUMENTS THAT MR. NOLAN

12   REFERENCED.

13            **MR. COREY:**  WE ARE GOING TO BE PRODUCING DOCUMENTS.

14   WE'VE BEEN TOLD THAT THEY WOULD BE PRODUCING DOCUMENTS; SO THAT

15   WOULD NOT BE PART OF THE PROCESS.                                  10:30

16            **THE COURT:**  RIGHT.

17            THE DEPOSITIONS, THOUGH, WOULD BE STAYED?

18            **MR. COREY:**  YES.  THAT'S MY UNDERSTANDING.

19            THERE ARE SOME THIRD-PARTY DEPOSITIONS THAT MR. NOLAN

20   AND I HAVE AGREED -- WE'VE COOPERATED IN SCHEDULING.  JUST        10:30

21   BECAUSE THEY'RE THIRD PARTIES, WE DON'T WANT TO PUSH THEM TOO

22   FAR OUT.  I DON'T BELIEVE THAT ANY OF THOSE ARE SCHEDULED TO

23   TAKE PLACE DURING THE NEXT TWO WEEKS.

24            AND I THINK, FROM MR. NOLAN'S PERSPECTIVE, THE MOST

25   IMPORTANT THING IS THAT ANY ORDERS OR ANY COMPLIANCE WITH         10:31

```
 1   THINGS LIKE THAT WOULD NOT BE USED, BASED ON HIS LACK OF

 2   KNOWLEDGE AND HIS COMING INTO THE CASE, TO PREJUDICE HIM;

 3   THERE'S NOT GOING TO BE ANY 'GOTCHAS.'

 4          BUT WE HAVE DISCUSSED -- AND I THINK, FRANKLY, IT

 5   WOULD BE A BENEFIT TO MR. NOLAN -- WE WOULD LIKE TO HAVE THE

 6   ABILITY TO CONTINUE TO SERVE DISCOVERY, AND HE CAN HAVE A

 7   BETTER IDEA OF WHAT THE SHAPE OF THE TABLE IS.  AND I'VE TOLD

 8   HIM THAT WE CAN BE FLEXIBLE ON DEALING WITH THE DATES OF THAT.

 9   BUT THERE'S NO REASON THAT I THINK THAT SHOULD BE PUT OFF.

10          WE ARE RUNNING UP AGAINST THE FACT DISCOVERY CUTOFF,

11   AND THERE ARE SOME THINGS THAT ARE ON THE TABLE.  AND I DON'T

12   THINK THAT WE NEED TO GET INTO THE DETAILS OF THAT, BUT THERE'S

13   INFORMATION THAT WE NEED FROM MGA THAT WE NEED TO GIVE TO OUR

14   EXPERTS.  AND TO THE EXTENT THAT THERE'S GOING TO BE THESE TWO

15   WEEKS WHERE THINGS REALLY AREN'T GOING TO HAPPEN, WE THINK THAT

16   WE SHOULD GET A CORRESPONDING CONTINUANCE OF NOT ONLY THE FACT

17   DISCOVERY CUTOFF DATE, BUT ALSO THE EXPERT DISCOVERY CUTOFF

18   DATE AS WELL.

19          THE COURT:  WOULD YOU BE AVAILABLE ON OCTOBER 31ST AS

20   WELL?

21          MR. COREY:  YES, YOUR HONOR.

22          THE COURT:  ALL RIGHT.

23          AND I GUESS MY ORDER WOULD BE TO HAVE LEAD TRIAL

24   COUNSEL PRESENT.  IT'S NOT SO MUCH LEAD TRIAL COUNSEL, BUT I

25   WANT TO HAVE THE PEOPLE HERE WHO CAN REALLY COMMIT TO DATES; SO
```

10:31

10:31

10:31

10:32

10:32

1   I DON'T KNOW IF THAT WOULD BE YOU OR MR. QUINN OR WHO THAT

2   WOULD BE FROM YOUR SIDE, BUT I WANT TO MAKE SURE THAT SOMEBODY

3   IS HERE WHO CAN FULLY COMMIT TO DATES.

4        **MR. COREY:**  I WILL CHECK WITH MR. QUINN'S SCHEDULE;

5   THIS WAS NEWS TO ME THIS MORNING; BUT SOMEBODY SHOULD BE ABLE      10:32

6   TO BE HERE ON THE 31ST WHO CAN DO THAT.

7        **THE COURT:**  I'M SURE SOMEBODY COULD BE HERE FROM

8   QUINN.

9        **MR. COREY:**  I MEAN SOMEBODY WHO COULD MEET THE

10  REQUIREMENTS THAT THE COURT HAS SET UP.  I WANT TO BE VERY        10:32

11  CLEAR.

12       **THE COURT:**  ONE OTHER QUESTION I HAD -- AND I SUPPOSE

13  THERE'S A REAL PART OF ME THAT LOOKS FORWARD TO WHAT PROMISES

14  TO BE A REMARKABLE TRIAL, WITH SOME REMARKABLE COUNSEL -- BUT

15  IT WOULD BE REMISS OF ME NOT TO RAISE THE ISSUE OF A POTENTIAL    10:33

16  RESOLUTION OF THIS MATTER SHORT OF GOING TO TRIAL.

17       IF WE'RE GOING TO BE TALKING ABOUT STAYS, AND BOTH

18  SIDES -- AT LEAST, I KNOW QUINN EMANUEL IS VERY WELL VERSED IN

19  THIS CASE; MR. NOLAN IS GOING TO BE GETTING WELL VERSED IN THIS

20  CASE OVER THE COURSE OF THE NEXT FEW WEEKS OR MONTH OR SO -- I    10:33

21  GUESS I WAS WONDERING IF IT WOULD MAKE SENSE, IF WE'RE GOING TO

22  HAVE A SLOW DOWN IN THE PROCESS HERE AND EVERYONE IS KIND OF

23  COLLECTIVELY TAKING THEIR BREATH, IF IT MIGHT MAKE SENSE TO

24  HAVE SOMEBODY TAKE A LOOK AT THIS CASE WITH COUNSEL AND SEE IF

25  WE CAN'T MAKE SOME PROGRESS TOWARDS A RESOLUTION.                 10:33

1    I TAKE IT, FROM WHAT I'VE BEEN SEEING SO FAR, THAT

2  TYPE OF EFFORT HAS NOT BEEN UNDERTAKEN UP TO THIS POINT.

3    **MR. COREY:**  THAT'S ACCURATE, YOUR HONOR.

4    **THE COURT:**  OKAY.

5    FROM WHAT I KNOW OF THIS CASE, WE'RE DEALING WITH                10:33

6  SOME PRETTY COMPLEX PERSONALITIES AND SOME PRETTY COMPLEX

7  CORPORATIONS.  THERE ARE PROBABLY A LIMITED NUMBER OF PEOPLE

8  WHO WOULD BE IN A POSITION TO HANDLE THE SETTLEMENT OF A CASE

9  OF THIS NATURE.  ONE INDIVIDUAL THAT CAME TO THE COURT'S MIND,

10 AND WHO I ACTUALLY SPOKE TO ABOUT POTENTIALLY SERVING AS A      10:34

11 MEDIATOR AT THIS STAGE, IS FORMER AMBASSADOR PIERRE PROSPER.

12    AMBASSADOR PROSPER WAS APPOINTED IN BOTH THE CLINTON

13 ADMINISTRATION AND THE BUSH ADMINISTRATION.  HE'S NOW, I

14 BELIEVE, A PROFESSOR UP AT UTAH, AND HE IS ALSO WORKING ON A

15 CONSULTING BASIS, I GUESS, WITH AARON FOX BACK IN WASHINGTON,   10:34

16 D.C.  HE'S INDICATED A WILLINGNESS TO SERVE.

17    CERTAINLY, IF THERE WAS AN OBJECTION FROM EITHER

18 SIDE, I WOULD FIND SOMEBODY ELSE.  BUT I'D LIKE TO FIND

19 SOMEBODY WHO HAS THE TYPE OF EXPERIENCE DEALING WITH LARGE,

20 COMPLEX NEGOTIATIONS.  THE AMBASSADOR WORKED WITH ABOUT 60      10:34

21 DIFFERENT COUNTRIES IN THE COURSE OF HIS CAREER WITH THE STATE

22 AND JUSTICE.  THIS HAS GOT AN INTERNATIONAL DIMENSION TO IT,

23 THERE'S THE RICO ALLEGATION, SO IT WOULD TAKE SOMEONE WHO HAS

24 THAT TYPE OF BACKGROUND.

25    I'M NOT ASKING FOR A COMMITMENT AT THIS POINT IN           10:35

1   TIME.  IT'S SOMETHING THAT I WOULD PROBABLY RAISE IN THE NEXT

2   STATUS CONFERENCE, TO SEE IF THERE WOULD BE A WILLINGNESS.  AND

3   I THINK THE COURT'S WILLINGNESS TO GO ALONG WITH A BREATHER

4   WOULD BE GREATER IF THERE WAS A WILLINGNESS TO AT LEAST SIT

5   DOWN AND DISCUSS A FRAMEWORK FOR POTENTIALLY RESOLVING THIS                 10:35

6   SHORT OF TRIAL.

7           SOME CASES NEED TO GO TO TRIAL, AND THIS MAY VERY

8   WELL BE ONE OF THOSE CASES.  I UNDERSTAND THAT.  BUT I DO THINK

9   WE NEED TO AT LEAST CONSIDER THIS, AND THIS MIGHT BE ONE OF

10  THOSE OPPORTUNITIES, WHEN EVERYONE IS TAKING A COLLECTIVE                   10:35

11  BREATH.

12          **MR. COREY:**  WE WILL, OF COURSE, CONSIDER THAT.  I'LL

13  DISCUSS THAT WITH MY CLIENT AND FIND OUT WHAT WE CAN ABOUT

14  MR. PROSPER.

15          **THE COURT:**  VERY WELL.                                         10:35

16          **MR. NOLAN:**  ON BEHALF OF MGA, I WILL DEFINITELY TAKE

17  THAT BACK, TALK TO THE CLIENTS, AND OBVIOUSLY, WE'LL COOPERATE

18  WITH WHATEVER THE COURT WISHES IN THAT MATTER.

19          TWO THINGS THAT I OVERLOOKED, YOUR HONOR.

20          THERE IS A HEARING ON OCTOBER 23RD IN FRONT OF                      10:36

21  JUDGE INFANTE WITH RESPECT TO A MOTION BY MATTEL WITH RESPECT

22  TO A CONTENTION THAT MGA, THROUGH ITS COUNSEL, WAIVED

23  ATTORNEY-CLIENT PRIVILEGE IN THIS CASE.  IT'S A FAIRLY

24  SIGNIFICANT MOTION IN FRONT OF JUDGE INFANTE.  WE HAVE BEEN

25  PROVIDED THE PLEADINGS IN THE CASE.                                        10:36

```
 1          BECAUSE OF MY INVOLVEMENT IN THE SPECIAL PROCEEDINGS
 2   IN FRONT OF JUDGE TASHIMA, I'VE ASKED THAT ONE OF MY PARTNERS
 3   IN SAN FRANCISCO TAKE A LOOK AT THAT.  IT MAY BE THAT WE HAVE
 4   TO GO TO JUDGE INFANTE AND ASK FOR A RELIEF FROM HIM AS WELL
 5   AND TRY TO PUSH THAT OFF.  IF WE CAN DO IT, I'D LIKE TO GET IT    10:36
 6   OVER WITH, BUT IT'S A FAIRLY SIGNIFICANT ONE.  I DON'T WANT TO
 7   RUSH ON ANYTHING.
 8          THE OTHER THING, YOUR HONOR, I'VE BEEN TOLD THAT
 9   THERE IS A NOVEMBER 19TH HEARING SET BEFORE YOUR HONOR.  I
10   CANDIDLY DON'T KNOW ALL OF THE ISSUES THAT ARE INVOLVED IN       10:36
11   THAT, BUT OBVIOUSLY, WE COULD TALK ABOUT WHAT THE AGENDA WOULD
12   BE FOR THAT HEARING ON THE 31ST.
13          WITH RESPECT TO JUST THE CONTINUING PROFESSIONALISM
14   OF EVERYTHING, THERE ARE ISSUES THAT ARE RAW IN THIS CASE, AS
15   THE COURT MAY SUSPECT FROM THE TELEPHONE CONFERENCE THAT WAS     10:37
16   HAD.  EACH OF THE FIRMS HAVE BEEN HANDLING IT IN DIFFERENT
17   FASHIONS.  WE, OF COURSE, WILL DEPEND ON EACH OF THE FIRMS
18   CONDUCTING THEMSELVES CONSISTENT WITH THEIR OBLIGATIONS UNDER
19   THE CALIFORNIA RULES OF PROFESSIONAL CONDUCT.
20          I DIDN'T WANT TO JUST SIT BACK -- I DON'T FORESEE A       10:37
21   PROBLEM, BUT IF TODAY I NEVER GET A CHANCE TO SEE ANYBODY ELSE,
22   THAT COULD BE A PROBLEM IN NOT UNDERSTANDING WHERE THIS PIECE
23   OF EVIDENCE GOES AND HOW DO YOU CONNECT THE DOTS HERE; SO I
24   JUST WANTED TO MAKE CERTAIN THAT I, AT LEAST, PUT THAT ON THE
25   RECORD, YOUR HONOR.  I DON'T ANTICIPATE A PROBLEM, BUT WE'RE     10:37
```

```
 1   NOT HANDLING THAT ISSUE.

 2          THE COURT:  MR. NOLAN, DO YOU AGREE WITH COUNSEL'S

 3   VIEW OF THE SOFT STAY; THAT THIS SOFT STAY WOULD BASICALLY BE A

 4   STAY ON EVERYTHING EXCEPT THE CONTINUING PRODUCTION OF

 5   DOCUMENTS, WHICH YOU YOURSELF REFERENCED, AS WELL AS THE          10:38

 6   SERVICE OF DISCOVERY?

 7          MR. NOLAN:  YES.  WE'LL ACCEPT THE SERVICE OF

 8   DISCOVERY.  I'M HOPING THAT THERE ARE NOT ANY MORE RFA'S, BUT

 9   THE OTHER STUFF I'LL BE INTERESTED IN.

10          THE COURT:  IT SOUNDS LIKE THOSE HAVE BEEN PRETTY          10:38

11   WELL EXPLORED.

12          MR. NOLAN:  I HOPE SO.

13          THE COURT:  ANYTHING FURTHER FROM ANYBODY BEFORE THE

14   COURT ISSUES A RULING ON THIS?

15          MR. WERDEGAR:  MATT WERDEGAR ON BEHALF OF                  10:38

16   CARTER BRYANT.

17          I JUST WANT TO SAY ON THE RECORD THAT WE SUPPORT THE

18   TRANSITION PLAN THAT MR. NOLAN HAS OUTLINED.  FROM MR. BRYANT'S

19   PERSPECTIVE, I THINK IT'S VERY IMPORTANT TO HAVE A SMOOTH

20   TRANSITION AMONG MGA'S COUNSEL AND TO GIVE THEM TIME TO GET UP    10:38

21   TO SPEED.

22          AS THE COURT IS PROBABLY AWARE, THEY'VE BEEN HANDLING

23   A LOT OF THE ISSUES THAT HAVE COME UP IN THIS CASE, AND IT

24   WOULD BE, I THINK, A BIG IMPOSITION ON MR. BRYANT IF THAT

25   OPPORTUNITY WASN'T PROVIDED FOR MGA'S COUNSEL TO GET BACK UP TO   10:38
```

```
 1   SPEED.

 2          WE ALSO DON'T HAVE ANY OBJECTION TO THE STAY THAT'S

 3   BEEN OUTLINED BY COUNSEL SO FAR, AS WELL AS, IF NECESSARY,

 4   EXTENDING DEADLINES ON THE BACK END.

 5          THE COURT:  VERY GOOD.                                     10:39

 6          THIS IS WHAT I'M GOING TO DO:  I'M GOING TO SET A

 7   STATUS CONFERENCE FOR OCTOBER 31, 2007, AT 1:00 P.M.  THE COURT

 8   IS GOING TO BE IN TRIAL THAT WEEK -- OR AT LEAST WE ANTICIPATE

 9   BEING IN TRIAL THAT WEEK -- BUT WE'LL CARVE OUT AN HOUR FROM

10   1:00 TO 2:00.                                                    10:39

11          I AM GOING TO ORDER THAT LEAD TRIAL COUNSEL BE

12   PRESENT FOR THAT HEARING.  AND IF FOR SOME REASON -- I KNOW ALL

13   LEAD TRIAL COUNSEL AREN'T PRESENT RIGHT NOW -- IF THEY CAN'T,

14   PLEASE LET THE COURT KNOW, AND THE COURT WILL TRY TO

15   ACCOMMODATE OR MODIFY; MAYBE PICK ANOTHER HOUR DURING THE DAY    10:39

16   THAT THEY WOULD BE AVAILABLE.  BUT I THINK IT'S IMPORTANT THAT

17   WE GET EVERYONE ON BOARD.

18          I'D APPRECIATE IT IF YOU WOULD SPEAK TO YOUR CLIENTS,

19   OR YOUR RESPECTIVE CLIENTS, ABOUT THE COURT'S SETTLEMENT

20   SUGGESTION AT THIS POINT.  I BY NO MEANS AM SUGGESTING THAT      10:39

21   THIS WILL BE THE FINAL EFFORT AT SETTLEMENT, BUT I JUST THINK

22   THAT WE HAVE KIND OF A UNIQUE OPPORTUNITY HERE.  THE COURT HAS

23   SOMEBODY IN MIND THAT IT WOULD LIKE TO SUGGEST AND SEE IF THAT

24   WOULD WORK.  IF EITHER SUGGESTION DOES NOT PLAY OUT, THE IDEA

25   OF A SETTLEMENT OR THE PERSON THAT THE COURT HAS IN MIND, WE     10:40
```

1   CAN TAKE THAT UP AT THE STATUS CONFERENCE.

2        I WILL IMPOSE WHAT'S BEEN CHARACTERIZED AS A

3   'SOFT STAY' FOR THE NEXT TWO WEEKS, OR TWO AND A HALF WEEKS.  I

4   THINK THAT'S IMPORTANT.  I THINK IT'S PROBABLY IMPORTANT FOR

5   EVERYONE CONCERNED THAT WE HAVE THAT.  THE STAY WILL APPLY TO          10:40

6   ALL MATTERS IN THIS CASE, WITH THE EXCEPTION OF THE PRODUCTION

7   OF DOCUMENTS AND THE SERVICE OF DISCOVERY BY ANY OF THE PARTIES

8   INVOLVED.

9        YOU SHALL NOTIFY JUDGE INFANTE THAT THE COURT HAS

10  IMPOSED A STAY; SO THAT OCTOBER 23RD HEARING WILL NEED TO BE          10:40

11  RESCHEDULED OUTSIDE THE PARAMETERS OF THE STAY.  ANYTHING ELSE

12  THAT'S BEEN SCHEDULED IS GOING TO NEED TO BE RESCHEDULED.  I

13  TRUST YOU'LL CONTINUE TO WORK TOGETHER IN COMING UP WITH

14  MUTUALLY-AGREEABLE DATES FOR THAT RESCHEDULING, BUT LET'S JUST

15  FOCUS ON THIS TRANSITION.                                             10:41

16       I TRULY APPRECIATE THE EFFORTS BY O'MELVENY, BY

17  CHRISTENSEN GLASER, BY SKADDEN ARPS AND QUINN EMANUEL, COUNSEL

18  FOR CARTER BRYANT, BY EVERYBODY, IN MAKING THIS MONUMENTAL

19  TRANSITION AS SMOOTH AS IT HAS TO THIS POINT; AND I'LL EXPECT

20  THAT TO CONTINUE TO BE THE TOUCHSTONE THROUGHOUT.                     10:41

21       I'LL LOOK FORWARD TO SEEING YOU ON OCTOBER 31ST.

22       ANY QUESTIONS?

23       **MR. WERDEGAR:**  JUST BRIEFLY.

24       WITH REGARD TO AVAILABILITY OF LEAD TRIAL COUNSEL,

25  MR. KEKER WAS ON THE PHONE CALL THAT WE HAD LAST WEEK, AND AS         10:41

```
 1  HE MENTIONED, HE WAS LEAVING THE NEXT DAY FOR A TRIP TO EUROPE.

 2  I DON'T BELIEVE HE'S BACK BY OCTOBER 31ST.  I THINK HE COMES

 3  BACK AT THE BEGINNING OF NOVEMBER.

 4          WE'LL CERTAINLY MAKE SURE THAT SOMEONE IS HERE WHO'S

 5  FULLY CAPABLE TO COMMIT TO DATES AND IS AWARE OF MR. KEKER'S      10:41

 6  CALENDAR, BUT I CAN'T REPRESENT THAT HE WILL BE ABLE TO BE HERE

 7  HIMSELF PERSONALLY.

 8          THE COURT:  VERY WELL.  I APPRECIATE YOU GIVING ME A

 9  HEADS UP.  I'M NOT GOING TO CHANGE IT FOR THAT; FOR NO OTHER

10  REASON THAN IT SEEMS THAT YOU HAVE, AT LEAST UP TO THIS POINT,    10:41

11  BEEN SPEAKING WITH, MORE OR LESS, ONE VOICE ON THE DEFENSE

12  SIDE.

13          I TRUST THAT MR. NOLAN WILL BE ABLE TO SPEAK FOR YOU

14  AND WE'RE NOT GOING TO HAVE DISAGREEMENTS ON THAT TRIAL DATE.

15          MR. WERDEGAR:  WE'LL CERTAINLY WORK TOGETHER WITH         10:42

16  MR. NOLAN TO PRESENT AS UNITED A FRONT AS POSSIBLE, AND WHOEVER

17  IS HERE WILL CERTAINLY BE ABLE TO COMMIT TO A SCHEDULE AND

18  EVERYTHING ELSE.

19          THE COURT:  VERY GOOD.  THANK YOU.

20          MR. NOLAN:  THANK YOU, YOUR HONOR.                        10:42

21          MR. COREY:  THANK YOU, YOUR HONOR.

22

23

24  / / /

25  / / /
```

OCTOBER 15, 2007                          BRYANT V. MATTEL, ETC...

1                              CERTIFICATE

2

3     I hereby certify that pursuant to section 753, title 28, united
      states code, the foregoing is a true and correct transcript of
4     the stenographically recorded proceedings held in the above-
      entitled matter and that the transcript page format is in
5     conformance with the regulations of the judicial conference of
      the united states.

6

7     _____         _____
      THERESA A. LANZA, CSR, RPR                         Date
8     FEDERAL Official COURT Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

OCTOBER 15, 2007                          BRYANT V. MATTEL, ETC...