1                    UNITED STATES DISTRICT COURT

2                  CENTRAL DISTRICT OF CALIFORNIA

3                         EASTERN DIVISION

4                            - - -

5         HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                            - - -

7   carter bryant, et. Al.,          )
                                      )
8                     Plaintiffs,  )
                                      )
9              vs.                    )   No. ED CV 04-09049
                                      )   (LEAD LOW NUMBER)
10  mattel, inc., et. Al.,            )
                                      )
11                    Defendants.  )   STATUS CONFERENCE
    _____)
12  AND CONSOLIDATED ACTIONS,         )
    _____)
13

14

15            REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                 RIVERSIDE, California

17              Wednesday, OCTOBER 31, 2007

18                      1:10 P.M.

19

20

21

22

23              THERESA A. LANZA, RPR, CSR
              FEDERAL Official Court Reporter
24             3470 12th Street, Rm. 134
             RIVERSIDE, California  92501
25                  951-274-0844
                Csr11457@sbcglobal.net

```
 1   APPEARANCES:

 2   On behalf of CARTER BRYANT:

 3                        KEKER & VAN NEST
                          BY:  CHRISTA MARTINE ANDERSON
 4                        BY:  MATTHEW M. WERDEGAR
                          710 SANSOME STREET
 5                        SAN FRANCISCO, California  94111-1704
                          415-391-5400
 6

 7   on behalf of MATTEL:

 8                        QUINN EMANUEL
                          By:  JOHN QUINN
 9                        BY:  MIKE ZELLER
                          BY:  JON COREY
10                        865 S. FIGUEROA STREET,
                          10TH FLOOR
11                        LOS ANGELES, California  90017
                          213-624-7707
12


13
     ON BEHALF OF MGA ENTERTAINMENT (INCOMING):
14
                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
15                        BY:  THOMAS J. NOLAN
                          BY:  CARL ALAN ROTH
16                        300 SOUTH GRAND AVENUE
                          LOS ANGELES, CALIFORNIA  90071-3144
17                        213-687-5000

18

19   ON BEHALF OF GUSTAVO MACHADO:

20                        OVERLAND BORENSTEIN SCHEPER & KIM
                          BY:  ALEXANDER H. COTE
21                        300 SOUTH GRAND AVENUE
                          SUITE 2750
22                        LOS ANGELES, CALIFORNIA  90071
                          213-613-4660
23

24

25
```

OCTOBER 31, 2007                              STATUS CONFERENCE

1                           I N D E X

2                                                       Page

3    STATUS CONFERENCE................................   4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1      RIVERSIDE, CALIFORNIA; wednesday, OCTOBER 31, 2007; 1:10 P.M.

 2                              -oOo-

 3           THE CLERK:  CALLING CALENDAR ITEM NUMBER THREE,

 4   CARTER BRYANT VERSUS MATTEL, INC., CASE NUMBER CV 04-09059-SGL.

 5           MAY WE HAVE COUNSEL PLEASE STATE YOUR APPEARANCES FOR    01:00

 6   THE RECORD.

 7              MR. NOLAN:  TOM NOLAN ON BEHALF OF MGA.

 8              MR. QUINN:  JOHN QUINN FOR MATTEL.

 9           MS. ANDERSON:  CHRISTA ANDERSON ON BEHALF OF

10   CARTER BRYANT; I'M HERE WITH MY PARTNER, MATTHEW WERDEGAR.      01:10

11           MR. COTE:  ALEXANDER COTE ON BEHALF OF

12   GUSTAVO MUCHADO.

13           MR. ZELNER:  MIKE ZELLER AND JON COREY, ALSO ON

14   BEHALF OF MATTEL.

15           THE COURT:  COUNSEL, WE'RE ON CALENDAR THIS AFTERNOON   01:10

16   FOR A STATUS CONFERENCE IN THIS MATTER.  THE COURT HAD PLACED A

17   SOFT STAY TO GIVE MR. NOLAN AND HIS TEAM AN OPPORTUNITY TO GET

18   CAUGHT UP AFTER THEY SUBSTITUTED IN FOR O'MELVENY & MYERS.

19           WHY DON'T WE BEGIN WITH THE STATUS REPORT FROM

20   MR. NOLAN.                                                     01:10

21           MR. NOLAN:  THANK YOU, YOUR HONOR.

22           BY THE WAY, I WOULD BE REMISS IF I DIDN'T TELL YOU

23   THAT MR. QUINN WOULD LIKE TEN MINUTES TO HAVE A FURTHER

24   DISCUSSION WITH ME ABOUT A PROPOSAL THAT I WILL STOP SHORT

25   OF --                                                          01:10
```

1        **THE COURT:**  FAIR ENOUGH.

2        **MR. NOLAN:**  -- SO THAT WE CAN AVOID THAT ARGUMENT AND

3   GIVE MR. QUINN THE COURTESY OF HE AND I TRYING TO TALK ABOUT

4   SOME OTHER THINGS; AND WE MAY HAVE AN AGREEMENT AS A PROPOSAL.

5   BUT LET ME, IF I CAN, JUST GIVE YOU AN UPDATE AS TO WHERE WE          01:11

6   STAND.

7        **THE COURT:**  PLEASE.

8        **MR. NOLAN:**  SINCE THE TERM "SOFT STAY" WAS OF MY

9   DESIGN, I WILL SAY THAT I DON'T THINK I'LL EVER SUGGEST IT

10  AGAIN, BECAUSE AS I LEARNED A LONG TIME AGO, BE CAREFUL OF          01:11

11  GIFTS FROM STRANGERS.

12       WHEN I HEARD THAT THERE WAS GOING TO BE SOME

13  DISCOVERY DURING THIS PERIOD OF TIME, I DID NOT REALIZE THAT IT

14  WOULD BE ABOUT 170 REQUESTS FOR PRODUCTION OF DOCUMENTS, FIVE

15  INTERROGATORIES, EIGHT SUBPOENAS TO THIRD PARTIES, AND NUMEROUS     01:11

16  LETTERS.

17       I COMPLETELY UNDERSTAND THAT THEY'VE GOT A CLIENT

18  THAT THEY'VE GOT TO REPRESENT, AND WHAT HAVE YOU.

19       **THE COURT:**  AT LEAST THERE WEREN'T ANY MORE RFA'S.

20       **MR. NOLAN:**  NO, YOUR HONOR.  THE 3,300 STILL IS IN        01:11

21  THE RECORD BOOK, SO I DON'T THINK WE'RE GOING TO IMPROVE ON

22  THAT IN THE IMMEDIATE FUTURE; SO I'VE BEEN DEALING WITH THAT

23  AND HAVING SOME DISCUSSIONS, WHILE AT THE SAME TIME TRYING TO

24  GET THE INFORMATION FROM O'MELVENY.  IN THAT REGARD, LET ME

25  JUST GIVE YOU A QUICK REPORT.                                      01:12

1            WE RECEIVED A TOTAL OF ABOUT 161 BOXES OF THINGS THAT

2     WERE NOT INVENTORIED, EXCEPT FOR VERY GENERAL COVER LETTERS; A

3     LOT OF THAT IS PRODUCT, AND SO I DON'T MEAN TO SAY THAT THERE'S

4     170 BOXES OR SO THAT NEED TO BE COMPLETELY INVENTORIED,

5     ALTHOUGH ALL OF THE FILES NEED TO BE INVENTORIED.  WE HAVE          01:12

6     78 BOXES OF HARD STUFF, HARD DOCUMENTS, RED WELLS; THOSE TYPES

7     OF THINGS, JUDGE.  I'M HAPPY TO NOTE, A LOT OF IT CAME IN

8     FRIDAY NIGHT, AND WE HAVE INVENTORIED ALL OF IT EXCEPT FOR FOUR

9     BOXES.  WE'RE MAKING REALLY GOOD PROGRESS TO KNOW WHAT WE HAVE,

10    IN A SENSE.                                                        01:12

11            I MENTIONED ABOUT THE DIGITAL INFORMATION THAT WAS

12    COMING OVER TO US.  THAT'S ON TRACK, BUT WE'VE BEEN DELAYED IN

13    THIS SENSE:  THAT THERE'S ELECTRONIC DATA -- I DON'T WANT TO

14    GET INTO TOO MUCH DETAIL BECAUSE OF THE PRIVILEGED NATURE OF

15    IT.  BUT JUST SUFFICE IT TO SAY, YOUR HONOR, IT WAS HOSTED IN A    01:13

16    JOINT VENTURE, IF YOU WOULD, BETWEEN O'MELVENY AND AN OUTSIDE

17    VENDOR.

18            WHAT O'MELVENY THOUGHT THEY COULD DO WITH RESPECT TO

19    EXPORTING IT WITHIN A REASONABLE PERIOD OF TIME PROVED A LITTLE

20    BIT OPTIMISTIC, AND WE HAD TO GO AND DO A WORKAROUND, AND WE       01:13

21    HAVE, BUT IT DELAYED ALL OF MY ESTIMATES BY A WEEK.  OUR

22    EXPECTATION NOW, YOUR HONOR, IS THAT BY THE END OF THIS WEEK,

23    FRIDAY, WE WILL HAVE ALL OF THE E-ROOM MATERIALS ONTO OUR

24    SERVERS.

25            IN ADDITION TO THAT -- I GUESS THE GOOD NEWS IS THAT       01:13

1   WE CONTINUE TO MAKE THE PRODUCTION, AS I TOLD YOU THAT WE

2   WOULD.  WE PRODUCED, I THINK, APPROXIMATELY A MILLION PAGES OF

3   DOCUMENTS THE PREVIOUS WEEK AND A LITTLE BIT LAST WEEK.  WE GOT

4   THEIR PRODUCTION ON MONDAY.  I DON'T KNOW WHETHER OR NOT THIS

5   IS RIGHT OR WRONG, BUT SOMEWHERE -- WE HAVE 88,000 PAGES; SO WE      01:13

6   CONTINUE TO FINISH FIRST IN PRODUCING MORE PAPER THAN THEY DO,

7   AND I THINK PART OF IT IS BECAUSE THERE IS A LARGE ISSUE

8   OUTSTANDING THAT I DON'T FRANKLY UNDERSTAND GIVEN THE QUALITY

9   OF THE LAWYERING THAT WAS INVOLVED IN THIS CASE BEFOREHAND.

10          THERE APPARENTLY HAS NEVER BEEN A TRUE MEET AND                01:14

11   CONFER ON AN AGREEMENT AS TO THE SEARCH TERMS.  AND WHEN YOU'RE

12   DEALING IN TODAY'S WORLD WITH ELECTRONIC DATABASES, I MEAN,

13   THAT'S REALLY THE STARTING POINT.

14          MATTEL HAS MOST OF THEIR DOCUMENTS, YOUR HONOR, ON

15   THE ZUUS SYSTEM, AS I UNDERSTAND IT.                                 01:14

16          **THE COURT:**  I'VE HEARD ABOUT THE ZUUS SYSTEM.

17          **MR. NOLAN:**  YOU'VE HEARD ABOUT ZUUS.

18          I HAVEN'T SEEN ZUUS YET, EVEN THOUGH IT'S BEEN

19   ORDERED.  AND I THINK THE PROBLEM IS SIMPLY THAT NOBODY HAS

20   AGREED TO THE SEARCH TERMS THAT NEED TO BE WORKED OUT IN ORDER       01:14

21   TO DO THAT.  SO WE NEED TO DO THAT.

22          THE GOOD NEWS IS, YOUR HONOR, THE TRANSITION IS GOING

23   ALONG.  THE BAD NEWS IS, FRANKLY, GIVEN THE STATE OF ISSUES

24   WITH RESPECT TO O'MELVENY, IT'S NOT THAT I CAN REACH OUT AND

25   CALL HOME ALL OF THE TIME.  THEY'VE JUST DELIVERED THE STUFF.       01:15

```
 1   AND MY FEAR ABOUT HAVING A TRUCK DRIVE UP TO SKADDEN'S OFFICES,

 2   TO A LARGE DEGREE, HAS BORNE OUT.  WE'RE DEALING WITH IT.

 3   WE'RE WORKING WITH IT ON A DAILY BASIS.  THEY'RE OUT OF THE

 4   CASE, THEY DON'T WANT TO BE MIRRORED BACK INTO IT, AND I

 5   COMPLETELY UNDERSTAND THAT, YOUR HONOR.  I MAY BE FRUSTRATED BY    01:15

 6   IT, BUT I UNDERSTAND IT.

 7            SO HERE'S WHAT MY GENERAL PROPOSAL IS TO EVERYBODY.

 8            WELL, ONE PIECE OF GOOD NEWS:  I THINK WE HAVE

 9   EVERYBODY IN AGREEMENT, ALTHOUGH THEY CAN SPEAK FOR THEMSELVES,

10   THAT YOUR PROPOSAL FOR US TO MEET WITH THE AMBASSADOR FOR         01:15

11   MEDIATION PURPOSES IS ACCEPTABLE.

12            THE COURT:  BUT WE WANT TO DO SO AT A TIME THAT --

13   I'D LIKE TO SEE THAT GO FORWARD, BUT I DON'T WANT THAT TO BE A

14   WASTE OF ANYBODY'S TIME.  I WANT THAT TO BE AT A POINT WHEN

15   YOU'RE IN A POSITION, AND WHEN EVERYBODY IS IN A POSITION, TO     01:15

16   ACTUALLY COME TOGETHER AND HAVE A PRODUCTIVE MEETING.

17            MR. NOLAN:  CORRECT.  AND, CANDIDLY, IF I HAD TO

18   WRITE A MEDIATION BRIEF TODAY, I COULD PROBABLY DO IT, BUT IT

19   WOULD BE CUTTING AND PASTING FROM A LOT OF OTHER --

20            THE COURT:  AND THAT'S NOT WHAT I WANT.                  01:16

21            MR. NOLAN:  SO I DON'T WANT IT TO BE A DISTRACTION,

22   BUT IT'S CERTAINLY SOMETHING THAT WE WERE GOING TO WORK INTO

23   THE ORDERLY PROCESS.

24            WHAT I AM PROPOSING -- AND THIS IS NOT AN AGREEMENT

25   WITH ANYBODY, AND MR. QUINN WILL BE PREPARED TO ARGUE AGAINST     01:16
```

```
 1   IT -- BUT CONCEPTUALLY, THIS IS WHAT I'M THINKING ABOUT:

 2              YOUR HONOR, THIS CASE CANNOT BE TRIED IN APRIL.  I

 3   APOLOGIZE.  WITH ALL OF OUR BEST EFFORTS, THIS CASE CANNOT BE

 4   READY BY APRIL.

 5              I CANDIDLY BELIEVE, BASED ON MY MANY YEARS OF DOING        01:16

 6   THIS, THAT, FRANKLY, IF IT WASN'T ME ASKING YOU THIS OR TELLING

 7   YOU THIS, IT WOULD HAVE BEEN SOMEONE ELSE.  IT WOULD HAVE BEEN

 8   SOMEONE FROM O'MELVENY COMING IN AND REPORTING ON THE TRUE

 9   STATUS OF MATTERS.  THE TRUE STATUS OF THE DISCOVERY IN THIS

10   CASE IS JUST STAGGERING IN TERMS OF THE AMOUNT OF THINGS THAT        01:17

11   HAVE NOT BEEN ATTENDED TO, FOR ANY NUMBER OF REASONS, ON BOTH

12   SIDES; THEY OWE US THINGS; WE OWE THEM MEET AND CONFER

13   SESSIONS.  I HAVE AN INDEX, YOUR HONOR, OF 12 PAGES OF OPEN

14   ITEMS OF JUST STUFF IN THE PAST.

15              AND QUINN EMANUEL HAS BEEN VERY, VERY HELPFUL.  AND I      01:17

16   SAY THAT NOT IN A PEJORATIVE WAY, BUT SOMETIMES HELPFUL GIVES

17   YOU AT LEAST AN ALERT AS TO WHERE THEY'RE GOING.  THEY ALSO

18   WANT TO TAKE JUST SHORT OF A GAZILLION MORE DEPOSITIONS.

19   THERE'S A LOT OF WORK, IN OTHER WORDS, TO BE DONE.

20              THE DISCOVERY CUTOFF DATE OF JANUARY 24TH, GIVEN THE       01:17

21   BREADTH OF WHAT EVERYBODY WANTED TO STILL GET DONE IN THIS

22   CASE, TO ME, IS, AS SOMEONE COMING INTO THIS CASE -- IT'S A

23   LITTLE BIT BIZARRE HOW EVERYBODY THOUGHT THIS CASE WAS GOING TO

24   BE READY.  IF THEY HAVEN'T TOLD YOU THAT, I GUESS I HAVE TO BE

25   THE FIRST ONE TO TELL YOU THAT; SO IT'S NOT A DELAY JUST MERELY      01:18
```

```
 1   BECAUSE I'M COMING INTO THE CASE AND I'VE GOT ALL OF THESE
 2   DOCUMENTS TO LOOK AT, AND WHAT HAVE YOU.
 3        WHAT I'M PROPOSING, THOUGH, YOUR HONOR, IS, IN
 4   ESSENCE, A 90-DAY SLIDE, AND SOME ORDER AND RHYTHM TO THIS THAT
 5   ALLOWS US TO MAKE SENSE OF THE PROCESS.  LET'S USE THE SOFT          01:18
 6   STAY, FOR AN EXAMPLE.  I'M TRYING TO LOOK AT A MOUNTAIN OF
 7   THINGS THAT NEED TO BE DONE.  BUT AT THE SAME TIME, WHEN I GET
 8   AS MANY DOCUMENT REQUESTS THAT I HAVE TO DEAL WITH, THEN THAT'S
 9   A DISTRACTION; AND I HAVE TO CATEGORIZE THAT, I HAVE TO DEAL
10   WITH THAT, WE HAVE TO ASSIGN PEOPLE TO THAT.                         01:18
11        WHAT I'M PROPOSING NOW, YOUR HONOR, IS A HARD STAY; A
12   HARD STAY DEFINED BY NO MORE DISCOVERY; THAT WE'LL DEAL WITH
13   THE DISCOVERY THAT'S OUT THERE -- AND THERE'S GOING TO BE A LOT
14   OF IT -- FOR 30 DAYS.  WE'LL MEET AND CONFER.  WE HAVE A
15   HEARING IN FRONT OF JUDGE INFANTE ON NOVEMBER 13TH, YOUR HONOR,      01:19
16   WHERE THERE IS, I THINK, NINE OR TEN MATTERS SET.  I BELIEVE
17   THAT'S RIGHT.  ALL OF THOSE WILL BE ARGUED WITH THE EXCEPTION
18   OF ONE.  WE'RE GOING TO ASK JUDGE INFANTE TO TAKE THAT OFF
19   BECAUSE THE BRIEFING HASN'T BEEN COMPLETED YET, AND IT'S JUST
20   IMPOSSIBLE TO ADEQUATELY BRIEF THAT.  BUT THE HEARING BEFORE         01:19
21   JUDGE INFANTE WILL GO FORWARD.
22        DURING THE 30-DAY PERIOD OF TIME, WE'LL CONTINUE TO
23   MEET AND CONFER; WE'LL WORK ON THIS.  IF I CAN JUST ASK THE
24   COURT'S INDULGENCE TO JUST STOP THE DELIVERY OF NEW DISCOVERY;
25   THAT WE WORK THROUGH UNTIL DECEMBER 1ST; THAT KIND OF ISSUE.        01:19
```

```
 1  YOU KNOW, WHAT'S OUTSTANDING; WHAT'S THE STATE OF MEET AND
 2  CONFER; IS THE POSITION THAT WE WERE TAKING BEFORE STILL
 3  REASONABLE?  DO NEW EYES, FRESH EYES, BRING A DIFFERENT
 4  PERSPECTIVE TO THIS, MAYBE ON BOTH SIDES, TO SEE WHETHER OR NOT
 5  WE CAN CUT THROUGH SOME OF THIS SO WE'RE NOT FILING AS MANY      01:19
 6  MOTIONS.
 7          I UNDERSTAND THAT YOU GET ALL OF THE MOTIONS UNDER
 8  SEAL THAT ARE BEING FILED IN FRONT OF JUDGE INFANTE.  IT'S AN
 9  AVALANCHE OF FILINGS THAT ARE COMING THROUGH HERE, YOUR HONOR,
10  AND IT'S A LITTLE BIT FRUSTRATING.  AND, FRANKLY, I MUST SAY     01:20
11  THIS FOR THE COMPLEXITIES OF THE CASE:  I'M STILL HAVING A HARD
12  TIME WITH THE VOLUME OF DISCOVERY THAT'S GOING ON IN THIS CASE.
13  I JUST HAVE TO CANDIDLY SAY THAT.  MAYBE I'LL DISAGREE IN
14  90 DAYS AND SAY IT'S REASONABLE; IN FACT, WE WANT TO EVEN
15  TRIPLE IT.  BUT IT SEEMS TO ME TO BE WAY OUT OF CONTROL, WITH    01:20
16  ALL DUE RESPECT, YOUR HONOR.  I WANT TO TRY TO GET SOME
17  CONTROL.
18          SO DECEMBER 1ST WE COULD OPEN UP DISCOVERY, BUT I
19  THINK THAT DISCOVERY DURING -- WE SHOULD CONCENTRATE DECEMBER
20  AND JANUARY, MAYBE FROM DECEMBER 1ST TO JANUARY 15TH, REALIZING  01:20
21  THE HOLIDAY SCHEDULE AND THE IMPACT THAT HAS, WHERE WE GET THE
22  DOCUMENT PRODUCTION IN ORDER.  WE CAN'T EFFECTIVELY TAKE
23  DEPOSITIONS -- O'MELVENY COULD NOT HAVE TAKEN DEPOSITIONS, YOUR
24  HONOR -- UNTIL WE GET RELEVANT DOCUMENTS FROM MATTEL OUT OF
25  ZUUS.  WE JUST HAVE TO.  JUDGE INFANTE ORDERED IT.  WE HAVE TO   01:21
```

1    MEET AND CONFER.  THE PRODUCTION HAS TO BE MADE AND WE NEED TO

2    REVIEW THOSE DOCUMENTS.

3            SO I THINK THE ORDERLY WAY TO HANDLE THIS WOULD BE TO

4    CONCENTRATE ON THE DOCUMENT PRODUCTION, THEN START THE

5    DEPOSITIONS IN JANUARY, START THE DEPOSITIONS ON JANUARY 15TH,    01:21

6    AND RUN THE DEPOSITIONS THROUGH APRIL 1ST; SO THE FACT

7    DISCOVERY WOULD CONCLUDE SOMEWHERE AROUND APRIL 1ST.  THEN WHAT

8    WE WERE PROPOSING, WHAT WE'RE THINKING ABOUT -- AGAIN, BECAUSE

9    JOHN WANTS TO TALK TO ME ABOUT THIS -- BUT I WAS THINKING, ALL

10   RIGHT, THREE WEEKS AFTER CLOSE OF FACT DISCOVERY, WE COULD HAVE    01:21

11   THE INITIAL EXPERT REPORTS FILED.

12           I MUST CONFESS, YOUR HONOR, UNDER THE PRESENT

13   SCHEDULE THAT YOU HAVE, THE EXPERT REPORTS ARE DUE ONE WEEK

14   AFTER THE FACT DISCOVERY CLOSES, WHICH I DIDN'T KNOW WHETHER OR

15   NOT THE SCHEDULE WAS BEING BACKED INTO IT BECAUSE OF THE TRIAL    01:22

16   DATE OF APRIL 29TH.  I DON'T KNOW.

17           **THE COURT:**  IT WAS A STIPULATED SCHEDULE SUBMITTED BY

18   THE PARTIES, COUNSEL.

19           **MR. NOLAN:**  I'M SORRY.  I DIDN'T MEAN TO BLAME YOU.

20   I'M JUST SAYING THAT I THINK IT MAKES A LITTLE BIT MORE SENSE    01:22

21   TO HAVE TWO TO THREE WEEKS AFTER YOU CLOSE DOWN FACT DISCOVERY

22   TO ALLOW THE TRANSCRIPTS TO COME BACK FROM THE DEPOSITIONS AND

23   GIVE THAT INFORMATION TO THE EXPERTS.

24           AND I MIGHT ADD, YOUR HONOR, I SAW THE COURT'S -- AND

25   I READ THE COURT'S TRANSCRIPTS.  I THOUGHT I WOULD TRY TO READ    01:22

```
 1   AS MANY AS I COULD DURING THE TIME.  AND I NOTE THAT YOU DID

 2   SUGGEST THAT IF THEY WANTED TO ADJUST ANY OF THESE DATES, BUT

 3   NOT THE TRIAL DATE, THAT THEY SHOULD WORK AMONGST THEMSELVES.

 4   AND I KNOW THERE WAS SOME CORRESPONDENCE TRYING TO MOVE SOME OF

 5   THESE DATES, SO I DIDN'T MEAN IN ANY WAY TO SUGGEST THAT YOU        01:22

 6   CREATED THIS.

 7              THE COURT:  UNDERSTOOD.

 8              MR. NOLAN:  SO IF WE HAVE THE INITIAL EXPERT REPORTS

 9   DUE, LET'S SAY, ON APRIL 22ND, THEN I THINK THE REBUTTAL

10   REPORTS WOULD BE MAY 16TH.  AND THEN WE WOULD PROPOSE, YOUR        01:23

11   HONOR, AN EXPERT CUTOFF OF JUNE 14TH.

12              NOW, THAT'S AN AGGRESSIVE DATE, I MIGHT SAY, BECAUSE

13   THAT'S 30 DAYS TO TAKE WHAT, IN EFFECT, COULD BE 40 EXPERT

14   DEPOSITIONS; SO WE'RE GOING TO BE DOUBLE-TRACKING A LOT,

15   BECAUSE AS I UNDERSTAND it, BOTH SIDES, THERE'S AN ORDER THAT      01:23

16   SAYS THAT WE CAN HAVE UP TO 20 EXPERTS.  I'M HOPING THAT WE

17   DON'T NEED 20 EXPERTS, BUT NEVERTHELESS, TO DO IT DURING THAT

18   PERIOD OF TIME, YOUR HONOR.

19              THEN I WAS GOING TO JUST ASK THE COURT'S INDULGENCE,

20   BECAUSE I'M ALREADY -- BY JUNE 14TH, I'VE ALREADY BLOWN YOUR       01:23

21   TRIAL DATE BY A COUPLE OF MONTHS ALREADY -- IS THAT WE SHOOT TO

22   HAVE THIS TRIAL BE ON THE LAST MONDAY IN JULY, WHICH IS

23   JULY 28TH.

24              THE COURT:  I ASSUME THAT THERE'S GOING TO BE A ROUND

25   OF DISPOSITIVE MOTIONS.                                           01:24
```

1    **MR. NOLAN:**  THAT'S CORRECT.  AND I HAVE NOT ATTEMPTED

2    TO TRY TO WORK OUT THOSE DATES.  I THINK, WITH ALL FAIRNESS TO

3    MR. QUINN, HE MAY EVEN HAVE ISSUES WITH THIS CONCEPT; SO I'LL

4    LET HIM ADDRESS THAT.

5         THE OTHER OVER-ARCHING POINT -- AND WE CAN ALWAYS                    01:24

6    BACK THAT IN ON WHEN WE'RE GOING TO BE FILING THIS, YOUR

7    HONOR -- IT MAY BE THAT THE JULY 28TH DATE MAY NOT WORK, OR

8    WHATEVER.  BUT HERE'S THE OTHER POINT, YOUR HONOR:  YOU HAD AN

9    INTERESTING PHRASE IN THE -- I THINK IT WAS THE JANUARY '07

10   HEARING, WHEN YOU WERE DISCUSSING THE PHASING OF THIS TRIAL.            01:24

11   AND THE PHRASE THAT YOU USED IS THAT YOU WANT THE DOG WAGGING

12   THE TAIL IN THIS CASE.  AND TO STAY TRUE TO THAT, YOUR HONOR, I

13   THINK THAT THIS SECOND PHASE OF DISCOVERY HAS THE POTENTIAL OF

14   HAVING THE TAIL WAG THE DOG AND DISRUPT AT LEAST THIS IDEA OF

15   MINE AS TO HOW WE CAN ORDERLY GET THIS THING PRESENTED SO THAT,         01:25

16   FRANKLY, IT'S THE MOST EFFICIENT TRIAL WE COULD HAVE FOR

17   EVERYBODY.

18        **THE COURT:**  SO YOU WANT TO PUT OFF THE SECOND PHASE

19   DISCOVERY?

20        **MR. NOLAN:**  FOR SOME PERIOD OF TIME, YOUR HONOR.              01:25

21        DURING THIS PERIOD OF TIME, FOR ME TO HAVE TO BE

22   DEALING WITH, AND THE PARTIES HAVE TO BE DEALING WITH, PHASE

23   TWO DISPUTES, OR EVEN JUDGE INFANTE, I THINK, DEFEATS THE

24   PURPOSE OF THIS CONCENTRATED FOCUS ON GETTING THIS CASE READY

25   FOR 1(A) AND 1(B) AND GOING FOR IT, AND TRYING TO GET THIS            01:25

1    THING FINISHED.

2         **THE COURT:**  MINDFUL THAT THE COURT WOULD LIKE TO SEE

3    THIS SOONER AS OPPOSED TO LATER, WHEN DO YOU PROPOSE AN EARLY

4    SETTLEMENT EFFORT WITH AMBASSADOR PROSPER?

5         **MR. NOLAN:**  I THINK AFTER DECEMBER 1ST, IF I COULD          01:25

6    HAVE THIS MONTH.  AND I PROMISE, YOUR HONOR, OTHER THAN THIS

7    TRIAL THAT I JUST FINISHED LAST WEEK, MY FOCUS IS ENTIRELY ON

8    THIS CASE, AND I THINK WE'LL DEVOTE OUR EFFORTS IN NOVEMBER TO

9    TRYING TO GET THIS THING UNDER CONTROL AND DEAL WITH ALL OF THE

10   DISCOVERY THAT'S BEEN ISSUED TO-DATE.                               01:26

11        LET'S JUST EXPLAIN ONE THING, YOUR HONOR.  IF THERE'S

12   A DISPUTE RIGHT NOW AS TO WHETHER OR NOT SOME OF THE DISCOVERY

13   THAT'S BEEN ISSUED RELATES TO PHASE TWO OR PHASE ONE, WE'LL TRY

14   TO DEAL WITH THAT; BUT I'M REALLY THINKING --

15        **THE COURT:**  THAT'S A CONCERN THAT I HAVE, IS THAT          01:26

16   THERE'S GOING TO BE AN OVERLAP BETWEEN --

17        **MR. NOLAN:**  CLEARLY.

18        **THE COURT:**  -- AND IT'S GOING TO BE A MATTER OF

19   CHARACTERIZATION.  THAT'S ONE OF THE REASONS, I THINK, THAT WE

20   COLLAPSED THE DISCOVERY, IS BECAUSE SORTING OUT WHAT IS           01:26

21   EVIDENCE FOR PHASE ONE VERSUS WHAT IS EVIDENCE FOR PHASE TWO

22   MAY CREATE MORE DISPUTES THAN IT SOLVES.

23        **MR. NOLAN:**  AND I AGREE, YOUR HONOR, THAT THE DEVIL

24   IS IN THE DETAILS IN THIS PROPOSAL.  I WAS JUST TRYING TO

25   FIGURE OUT A WAY THAT I COULD HONESTLY COME TO YOU AND SAY,        01:26

1    LET'S FOCUS ON GETTING OUR FIRST TRIAL PREPARED, BECAUSE I

2    WOULD HATE TO BE WASTING -- WRONG TERM, WASTING TIME.  I THINK

3    THERE'S GOING TO BE SOME OBVIOUS DISCOVERY THAT APPLIES TO

4    PHASE TWO.

5          **THE COURT:**  LET ME ASK YOU THIS, MR. NOLAN:                    01:27

6          HOW MUCH OF WHAT YOU'RE REPRESENTING TO THE COURT

7    RIGHT NOW REFLECTS THE THINKING OF THE DEFENSE?  OR DO I HAVE

8    MULTIPLE DEFENSE PROPOSALS?

9          **MS. ANDERSON:**  NOT MULTIPLE, BUT A COUPLE OF COMMENTS

10   THAT I'D LIKE TO MAKE, YOUR HONOR.                                      01:27

11         **THE COURT:**  VERY GOOD, AND I'LL GIVE YOU A CHANCE TO

12   SAY THAT; I WANT TO HEAR MR. NOLAN NOW.

13         **MR. NOLAN:**  MY SENSE WAS TO TRY TO COME IN HERE, YOUR

14   HONOR, AND GIVE YOU A SENSE THAT WE'RE KIND OF ALL IN THE

15   BALLPARK, WITH MAYBE SOME FINE-TUNING.  HOW LARGE THE BALLPARK      01:27

16   IS, WHETHER OR NOT WE'RE PLAYING LITTLE LEAGUE OR MAJOR LEAGUE,

17   I DON'T KNOW.  THE PARK MAY BE BIGGER THAN I THINK IT IS.  BUT

18   THIS IS REALLY THE BEST EFFORT I CAN COME IN AND TELL YOU

19   HONESTLY WHERE WE STAND WITH ALL OF THE RESOURCES THAT WE'RE

20   COMMITTING TO THE CASE AND TRYING TO GET THIS THING PRESENTED.      01:27

21         BUT I HAVE TO SAY, AS AN OFFICER OF THE COURT AND

22   ALSO ONE WHO HAS DUTIES TO A CLIENT, GIVEN THE LACK OF THE

23   PREPARATION, THIS APRIL 29TH DATE IS SEVERELY A HARDSHIP AND WE

24   WOULD NOT BE ABLE TO EFFECTIVELY REPRESENT OUR CLIENT'S

25   INTEREST OR PROSECUTE THE ISSUES.                                   01:27

```
 1          THE COURT:  AND YOU SAID YOU HAD AN ISSUE THAT YOU'RE

 2    GOING TO TAKE UP WITH MR. QUINN.

 3          WITHOUT GETTING INTO THE DETAILS OF THAT, DOES THAT

 4    AFFECT THE SCHEDULING?

 5          MR. NOLAN:  YES.                                       01:28

 6          WE HAD TALKED YESTERDAY, WE HAD A JOINT PHONE CALL

 7    WITH EVERYBODY YESTERDAY, WHERE I GAVE THEM THE PARAMETERS OF

 8    WHAT I WAS THINKING ABOUT WITHOUT GIVING SPECIFIC DATES.  AND I

 9    HAD NOT MENTIONED YESTERDAY, IN ALL CANDOR, THIS DELAY WITH

10    RESPECT TO PHASE TWO, THIS ORDERLY -- WHAT I'M TRYING TO DO IS   01:28

11    GET THE FOCUS ON PHASE ONE.  AND I THINK THAT RAISES SOME

12    ISSUES.

13          THEY'VE RAISED IN RESPONSE THIS MORNING THE IDEA THAT

14    THEY WANT TO DO SOME THIRD-PARTY DEPOSITIONS OR SUBPOENAS

15    DURING THIS PERIOD OF TIME.  THEY WANT THE MOTIONS TO BE FILED   01:28

16    DURING THIS PERIOD OF TIME.  AND WITH RESPECT TO MOTIONS

17    AFFECTING THE PLEADINGS IN THIS CASE, AS LONG AS I DON'T HAVE

18    TO FILE OPPOSITIONS TO THOSE MOTIONS IN THE NEXT 30 DAYS, IT

19    WOULD AID US TO GET OUR HANDS AROUND ALL OF THE OPEN DISCOVERY

20    ISSUES.                                                        01:28

21          DO I HAVE AN OBJECTION TO THEM FILING MOTIONS ON THE

22    PLEADINGS?  NO, IN ORDER TO GET IT ON YOUR CALENDAR FOR A

23    REASONABLE HEARING DATE, AS LONG AS I DON'T HAVE TO BE FOCUSED

24    ON RESPONDING TO NEW PLEADING ISSUES.

25          THE COURT:  I SEE.                                      01:29
```

1      **MR. NOLAN:**  ALSO, BY THE WAY, YOUR HONOR, I DID

2  COMMIT TO, AND WE WILL FILE -- I THINK I MENTIONED THIS

3  BEFORE -- THE AMENDED ANSWER OF MR. LARIAN; THAT WILL BE DONE

4  ON NOVEMBER 8TH.  WE'RE STILL MOVING FORWARD ON THAT.

5      **THE COURT:**  ALL RIGHT.

6      **MR. NOLAN:**  SO THERE ARE THINGS THAT WE'RE ABLE TO

7  MOVE FORWARD ON.  I APOLOGIZE THAT I CAN'T COME IN AND TELL YOU

8  PROUDLY THAT WE'RE READY TO GO TO TRIAL ON APRIL 29TH, YOUR

9  HONOR.  THAT WAS MY GOAL, BUT I JUST CAN'T.

10      **THE COURT:**  I APPRECIATE THAT, MR. NOLAN.                      01:29

11      ALL RIGHT.  I CERTAINLY WANT TO HEAR FROM MR. QUINN,

12  BUT LET ME GET ANY PERMUTATIONS FROM THE OTHER DEFENSE, OR

13  COMMENTS, BEFORE I TURN IT OVER TO THE PLAINTIFFS.

14      **MS. ANDERSON:**  YOUR HONOR, CHRISTA ANDERSON AGAIN FOR

15  CARTER BRYANT.                                                        01:29

16      WE'RE HAPPY TO COOPERATE WITH A SENSIBLE SCHEDULE TO

17  ALLOW MR. NOLAN'S TEAM TO GET THINGS SQUARED AWAY.  I JUST

18  WANTED TO REMIND THE COURT THAT WE DO HAVE AN ISSUE WITH

19  RESPECT TO TRIAL SCHEDULING IN ANOTHER MATTER.

20      MR. KEKER, WHO'S LEAD COUNSEL IN OUR CASE, AS WE         01:30

21  INDICATED IN A PRIOR PLEADING AND, I BELIEVE, IN A PRIOR

22  CONFERENCE, MR. KEKER IS SCHEDULED FOR TRIAL STARTING JUNE 26TH

23  IN A MATTER IN THE CENTRAL DISTRICT OF CALIFORNIA.  WHAT WE HAD

24  FLOATED, I BELIEVE, EARLIER TO THE COURT IS THE IDEA THAT WE

25  COULD WORK TOWARDS A JULY TRIAL DATE BUT WITH THE UNDERSTANDING   01:30

```
1    THAT MR. KEKER IS STILL PRESET IN ANOTHER MATTER, AND HE WOULD

2    HAVE TO -- YOU KNOW, THE SCHEDULE WOULD HAVE TO BE ADJUSTED IF

3    HE DID --

4            THE COURT:  HOW LONG A TRIAL IS THAT GOING TO BE?

5            MS. ANDERSON:  WE BELIEVE IT WILL BE A SUBSTANTIAL          01:30

6    NUMBER OF WEEKS, YOUR HONOR.  I SUSPECT IT WILL OCCUPY THE

7    ENTIRETY OF JULY.  AND OBVIOUSLY, HE WILL NEED SOME TIME TO --

8            THE COURT:  SO THE MODIFICATION THAT YOU WOULD BE

9    SUGGESTING, THEN, WOULD BE AUGUST INSTEAD OF JULY FOR THE

10   TRIAL?                                                             01:30

11           MS. ANDERSON:  UNFORTUNATELY, THE SCHEDULE HAS SOME

12   MORE PROBLEMS THAN THAT.

13           WE HAVE TRIAL SET ON JUNE 26TH, AND MR. KEKER ALSO

14   HAS A TRIAL SET IN SEPTEMBER IN NEW YORK; SO WE CAN HAVE --

15           THE COURT:  THESE ARE REASONS TO KEEP IT IN APRIL,         01:31

16   YOU UNDERSTAND.

17           MS. ANDERSON:  I UNDERSTAND THE COURT'S PERSPECTIVE.

18   WE ARE READY TO TRY IT IN APRIL, IF WE NEED TO DO THAT, BUT WE

19   UNDERSTAND THE ISSUES.  AND IF WE CAN'T SORT OF BE ON, I GUESS,

20   A STAND-BY SITUATION FOR A JULY TRIAL DATE, MR. KEKER IS NOT      01:31

21   GOING TO BE FREE FOR A TRIAL DATE UNTIL NOVEMBER BECAUSE OF HIS

22   TWO PRESET TRIALS.

23           THE COURT:  THIS CASE IS NOT GOING TO BE DELAYED TO

24   NOVEMBER; THAT IS ENTIRELY CLEAR WITHOUT HEARING FROM

25   MR. QUINN.                                                        01:31
```

1    **MS. ANDERSON:**  I JUST WANTED TO ALERT THE COURT THAT

2    THESE ARE PRESET TRIALS, AND WE HAVE PRE-OBLIGATIONS TO THOSE

3    OTHER COURTS.

4        **THE COURT:**  YOU NEED TO GET WITH MR. NOLAN AND TALK

5    ABOUT THIS, BECAUSE --                                        01:31

6        **MS. ANDERSON:**  WELL, I UNDERSTAND, YOUR HONOR, AND I

7    WANTED TO MAKE SURE THE COURT UNDERSTOOD THAT --

8        **THE COURT:**  I UNDERSTAND WHAT YOU'RE SAYING, BUT IN

9    TERMS OF A PROPOSED DATE, I'M MUCH MORE INCLINED TO CHANGE

10   DATES IF THERE IS A GENERAL AGREEMENT ON CHANGING DATES.      01:32

11       **MS. ANDERSON:**  WE UNDERSTAND, YOUR HONOR.

12       **THE COURT:**  OKAY.

13       LET ME HEAR FROM MR. QUINN.

14       **MR. COTE:**  YOUR HONOR --

15       **THE COURT:**  OH, I'M SORRY.  THERE'S ONE MORE ASPECT   01:32

16   OF THE DEFENSE.

17       AND YOU'RE REPRESENTING?

18       **MR. COTE:**  MR. MACHADO.

19       **THE COURT:**  AND THAT ONLY AFFECTS PHASE TWO; CORRECT?

20       **MR. COTE:**  THAT'S ONLY PHASE TWO.  AND THAT WAS THE   01:32

21   FIRST THING I WAS GOING TO SAY, WHICH IS THAT MY CLIENT, AS FAR

22   AS I UNDERSTAND, IS STRICTLY A PHASE-TWO WITNESS.  WE ARE

23   DEFINITELY IN FAVOR OF THE MORE SHARP DIVISION BETWEEN PHASE

24   ONE AND PHASE TWO.  I THINK IT WOULD BE MORE HELPFUL FOR OUR

25   CLIENT FOR SCHEDULING.                                        01:32

```
 1            THE OTHER THING I WANTED TO MENTION IS, I JUST
 2   WANTED TO ECHO MR. NOLAN'S REFERENCES TO ACCEPTING DISCOVERY.
 3   ALTHOUGH MY CLIENT IS A PHASE-TWO DEFENDANT, AND I THINK A
 4   PHASE-TWO WITNESS EXCLUSIVELY, HE HAS RECEIVED FIVE SETS OF
 5   INTERROGATORIES IN THE PAST TWO-AND-A-HALF WEEKS; SO THERE HAS   01:32
 6   BEEN A LOT OF NEW DISCOVERY GOING ON, NONE OF WHICH HAS
 7   ANYTHING TO DO WITH PHASE TWO, BUT IT'S ALL DIRECTED TO HIM
 8   ANYWAY, AND IF WE COULD ASK FOR SOME SORT OF SHAPING OR LIMITS
 9   ON THAT, THAT WOULD BE VERY FRUITFUL.
10            THANK YOU.                                             01:33
11       THE COURT:  THANK YOU, COUNSEL.
12            AND JUST TO CONFIRM, TO HAVE THIS ON RECORD, YOU JOIN
13   MR. NOLAN'S REPRESENTATION THAT YOU HAVE NO OBJECTION TO THE
14   PROPOSED MEDIATION BY THE COURT?
15       MS. ANDERSON:  YES, YOUR HONOR, WE JOIN.  THAT'S           01:33
16   FINE.
17       MR. COTE:  YES.
18       THE COURT:  AND, MR. QUINN, WHILE WE'RE ON THAT
19   TOPIC, YOU JOIN WITH THAT AS WELL?
20       MR. QUINN:  YES, YOUR HONOR.                               01:33
21       THE COURT:  ALL RIGHT.  VERY GOOD.  THAT WILL BE
22   REFLECTED IN THE COURT'S ORDER.
23            ALL RIGHT.  LET ME HEAR YOUR THOUGHTS.
24       MR. QUINN:  YOUR HONOR, LAWYERS, LAW FIRMS,
25   SUBSTITUTE INTO CASES ALL THE TIME.  I'M SURE THE SKADDEN ARPS  01:33
```

```
1    FIRM HAS SUBSTITUTED INTO CASES BEFORE; OUR FIRM HAS
2    SUBSTITUTED INTO CASES; WE'RE IN TRIAL IN CENTRAL CIVIL WEST
3    NOW IN A CASE; WE SUBBED IN AFTER TRIAL HAD ALREADY STARTED;
4    THAT'S HAPPENED BEFORE.
5            NO ONE LIKES TO GET UP AFTER COUNSEL HAS SPOKEN AND      01:33
6    SAID, 'I'VE GOT A LOT OF WORK I'VE GOT TO DO AND I NEED TO BE
7    CUT SOME SLACK AND WE NEED SOME TIME.'  NO ONE LIKES TO SPEAK
8    AGAINST THAT BECAUSE IT'S A LITTLE AWKWARD.  NOBODY LIKES TO BE
9    HARSH AND SOUND UNSYMPATHETIC TO ANOTHER PROFESSIONAL WHO
10   STATES THAT THEY HAVE THESE NEEDS.                              01:34
11           BUT THE REALITY IS, HERE, YOUR HONOR, WE HAVE
12   BROUGHT, YES, LOTS OF MOTIONS TO COMPEL.  WE'VE WON EVERY
13   SINGLE MOTION TO COMPEL WE'VE BROUGHT, YOUR HONOR.  THE
14   SITUATION WE FIND OURSELVES IN NOW AND THE SITUATION THAT
15   COUNSEL FINDS HIMSELF IN NOW IS THE RESULT -- I DON'T THINK     01:34
16   IT'S ANY SECRET -- OF DIFFICULTIES THAT MGA HAS IN COMPLYING
17   WITH DISCOVERY.
18           AS THE COURT KNOWS, JUDGE INFANTE MADE A FINDING THAT
19   THEY HAD WILLFULLY, DELIBERATELY, AND FLAGRANTLY VIOLATED HIS
20   ORDER IN FAILING TO PRODUCE WITNESSES AND ORDERED THEM TO       01:35
21   PRODUCE THE WITNESSES BY THE END OF SEPTEMBER; THAT WAS AN
22   ORDER AFTER A MOTION TO COMPEL IN MAKING THAT FINDING.
23           THOSE WITNESSES STILL WERE NOT PRODUCED, STILL NOT
24   PRODUCED.
25           THERE ARE MULTIPLE ORDERS -- I CAN REPRESENT TO THE     01:35
```

```
 1   COURT AT LEAST THREE OUTSTANDING ORDERS FINDING NONCOMPLIANCE

 2   WITH COURT ORDERS.

 3          WHAT'S HAPPENING HERE, I FEAR, IS AN EFFORT TO GET A

 4   PASS FOR MGA AND MR. LARIAN FOR THEIR DELIBERATE, WILLFUL,

 5   NONCOMPLIANCE WITH DISCOVERY, GOING BACK MANY, MANY MONTHS, IF     01:35

 6   NOT YEARS.

 7          THE COURT:  WELL, LET'S BE CAREFUL IN THE WORDS THAT

 8   WE USE.

 9          IT MAY HAVE THE EFFECT OF THAT, FROM YOUR

10   PERSPECTIVE.  I DON'T THINK THERE'S ANY SUGGESTION THAT THAT'S     01:35

11   THE PRIMARY MOTIVATION BY MR. NOLAN.

12          MR. QUINN:  IT MAY HAVE THE EFFECT OF THAT.  I SHOULD

13   SAY THAT.  BUT THAT'S THE EFFECT IT HAS.

14          THE COURT:  I UNDERSTAND YOUR CONCERN, BUT LET'S BE

15   CAREFUL IN THE WORDS THAT WE USE.                                 01:36

16          MR. QUINN:  WE HAVE BEEN BLOCKED IN OUR EFFORTS TO

17   GET DISCOVERY.  WE HAVE BEEN WORKING TOWARDS THE EXISTING TRIAL

18   DATE.  IF FOLKS WANT TO TALK ABOUT ADJUSTING THAT DATE FOR A

19   COUPLE OF WEEKS, TO TAKE INTO ACCOUNT THE SOFT STAY THAT'S

20   ALREADY BEEN IN EFFECT, THAT'S CERTAINLY SOMETHING THAT I THINK    01:36

21   WOULD BE REASONABLE AND WE'D BE AMENABLE TO.

22          BUT I THINK WE SHOULD NOT CONFUSE TWO DIFFERENT

23   ISSUES HERE.  ONE:  SHOULD THERE BE SOME ADDITIONAL TIME GIVEN

24   FOR NEW COUNSEL TO GET UP TO SPEED?  AND I NOTE THAT THEY'VE

25   ALREADY HAD TWO WEEKS.                                            01:36
```

```
 1        WITH THE OTHER ISSUE OF, SHOULD A SITUATION BE
 2   CREATED WHERE WE'RE GOING TO NEGOTIATE, MEET AND CONFER, AND
 3   NOBODY CAN BRING ANY ORDERS FOR -- FRANKLY, WE'RE PREPARING ONE
 4   FOR TERMINATING SANCTIONS BECAUSE OF THE HISTORY HERE -- THAT
 5   THAT CAN'T BE BROUGHT AND THE EFFECT OF THAT MIGHT BE; THAT      01:36
 6   WHAT'S PAST IS PAST, AND THEY'LL PRODUCE THE WITNESSES AFTER
 7   JANUARY 15TH.
 8        FRANKLY, YOUR HONOR, I THINK THAT SCHEDULE THAT'S
 9   PROPOSED NOW FOR DEPOSITIONS, JANUARY 15TH TO APRIL 1ST, IS
10   JUST COMPLETELY UNREALISTIC.  WE CANNOT GET DONE WHAT NEEDS TO   01:37
11   BE DONE IN DEPOSITIONS IN THAT TIME FRAME.
12        WHAT'S HAPPENED HERE IS -- AND I WILL SAY 'THE
13   EFFECT,' YOUR HONOR -- IS THAT WE'VE GOTTEN JAMMED.  DOCUMENTS
14   NOT PRODUCED; WITNESSES NOT PRODUCED.  FINALLY, WE START TO GET
15   SOME DOCUMENTS IDENTIFYING ADDITIONAL PARTIES WHO WE KNOW HAVE   01:37
16   INFORMATION THAT'S IMPORTANT THAT GOES TO THE HEART OF THE
17   CASE; AND WE CAN'T SERVE FDT'S, IS THE PROPOSAL; WE CAN'T DO
18   ANYTHING UNTIL JANUARY 15TH.  ALL OF OUR EFFORTS TO GET
19   DISCOVERY, MEETING AND CONFERRING, ORDERS TO JUDGE INFANTE,
20   ORDERS FOR RECONSIDERATION, APPEALS TO THIS COURT; AND WE'VE     01:37
21   GOTTEN VERY LITTLE.
22        AND NOW, AS WE'RE FINALLY, APPARENTLY, GETTING SOME
23   THINGS, WE'RE GOING TO BE JAMMED AND FORCED TO DEAL WITH ALL OF
24   THIS AND SEEK THE DEPOSITION DISCOVERY IN THIS VERY CONDENSED
25   PERIOD OF TIME.                                                 01:38
```

```
 1            THE COURT:  WELL, WHAT WOULD YOU SUGGEST THE COURT

 2   DO?

 3            MR. QUINN:  YOUR HONOR, I THINK IT WOULD BE

 4   REASONABLE TO ADJUST THE TRIAL SCHEDULE FOR A COUPLE OF WEEKS.

 5   I DON'T THINK THERE SHOULD BE ANY RESTRICTIONS NOW.          01:38

 6            WE JUST SIMPLY DON'T HAVE ENOUGH TIME, GIVEN ALL THAT

 7   NEEDS TO BE DONE, TO PUT DEPOSITIONS ON ICE UNTIL JANUARY 15TH.

 8            THE COURT:  WHEN IS THE FIRST DEPOSITION SCHEDULED

 9   FROM TODAY?

10            MR. ZELLER:  YOUR HONOR, THERE ARE TWO THAT ARE      01:38

11   SCHEDULED IN THE NEXT 10, 15 DAYS THAT ARE THIRD PARTIES.  AND

12   IN ADDITION, ALREADY WE'VE LOST TWO THIRD-PARTY WITNESSES.  AND

13   THESE ARE PEOPLE WHO WORKED ON THE VERY ORIGIN OF BRATZ.  THEY

14   PULLED THEIR DEPOSITIONS.  THEY WERE SUPPOSED TO TAKE PLACE IN

15   THE LAST FEW DAYS; SO WE'VE ALREADY LOST DATES ON THOSE TWO    01:39

16   PEOPLE.  AND IF THERE'S A FURTHER STAY, WE'RE GOING TO LOSE THE

17   OTHER TWO.

18            AND JUST FOR THE RECORD, THEY ARE MAGARET

19   HATCH LEAHY; ELISE CLOONAN; VERONICA MARLOW, WHO IS AN

20   EXTREMELY SIGNIFICANT WITNESS, IN FACT, A CRUCIAL WITNESS IN  01:39

21   THIS CASE; AS WELL AS SARAH HALPERN.

22            MR. QUINN:  NOT TO MENTION THE OTHER THIRD PARTIES

23   AND PEOPLE WHO ARE NOW BEING IDENTIFIED IN DOCUMENTS, PEOPLE

24   WE'VE BEEN PROMISED, PEOPLE WHO'VE BEEN ORDERED TO APPEAR;

25   MR. LARIAN...  IT'S A VERY LONG LIST, YOUR HONOR.            01:39
```

```
 1          WITH ALL DUE RESPECT, AND RECOGNIZING THAT THIS IS

 2   GOING TO REQUIRE THAT PEOPLE WORK HARDER, I DO NOT THINK THAT

 3   THE CLIENT HERE, WHICH SOMEHOW HAS NOT BEEN ABLE TO COMPLY WITH

 4   DISCOVERY OBLIGATIONS, SHOULD GET THE BENEFIT OF SOME MORE TIME

 5   AND CRAMMING -- REQUIRING US TO DO, THROUGH DISCOVERY THAT          01:39

 6   REMAINS IN A MUCH ABBREVIATED PERIOD OF TIME, BY SUBSTITUTING

 7   COUNSEL.

 8          THE COURT:  YOU SUGGESTED THAT IT MAY BE REASONABLE

 9   FOR THE COURT TO GIVE A BRIEF CONTINUANCE IN THE TRIAL DATE, OR

10   SOME RELIEF AT THAT END.                                           01:40

11          WHAT IS YOUR TRIAL SCHEDULE LIKE, OR WHAT IS YOUR

12   AVAILABILITY DURING THE SUMMER OF 2008?

13          MR. QUINN:  I AM AVAILABLE IN THE SUMMER OF 2008 FOR

14   THE TRIAL OF THIS CASE.

15          YOUR HONOR, THERE ARE SOME RED HERRINGS THAT ARE            01:40

16   BEING MENTIONED HERE.  MR. NOLAN IS NEW TO THE CASE, BUT

17   ZUUS...

18          THE COURT WILL REMEMBER --

19          THE COURT:  I DO REMEMBER ZUUS.

20          MR. QUINN:  -- WE SAID 'ZUUS IS AVAILABLE; IF YOU           01:40

21   WANT ZUUS, COME GET ZUUS.'

22          AFTER THAT LAST HEARING, WE WROTE MS. GLASER A LETTER

23   AND SAID, 'IF YOU WANT ZUUS, COME GET ZUUS.'

24          NOBODY CAME TO GET ZUUS.  IT'S SIMPLY NOT TRUE THAT

25   WE HAVEN'T PRODUCED ZUUS.  WE STAND HERE READY TO PRODUCE ZUUS.    01:40
```

```
 1    YOU CAN HAVE ZUUS.

 2          AND IT'S NOT TRUE THAT ZUUS HAS GOT ALL OF OUR

 3    DOCUMENTS ON IT.  MR. NOLAN, OBVIOUSLY, IS STILL IN THE PROCESS

 4    OF GETTING UP TO SPEED, AND I'M SURE HE DIDN'T MEAN TO MISSTATE

 5    ANYTHING.                                                        01:41

 6          WE'RE PREPARED TO GO FORWARD, AND I THINK THE CASE

 7    SHOULD GO FORWARD, YOUR HONOR.

 8          THE COURT:  LET ME HEAR FROM MR. NOLAN IN RESPONSE TO

 9    THIS.

10          MR. NOLAN:  WELL, I APPRECIATE THE COURT'S COMMENTS       01:41

11    THAT THIS WAS NOT AN INTENTIONAL ACT OF DELAY.  I WOULDN'T HAVE

12    GOTTEN INTO THE CASE IF THAT WERE THE CASE.

13          BUT I HAVE TO, YOUR HONOR, SAY THAT A SCORE CARD OF

14    WHO'S WON IN FRONT OF JUDGE INFANTE, THE MOTIONS, WE'VE WON OUR

15    SHARE; THEY'VE BEEN SANCTIONED THEMSELVES.  ALL OF THAT MISSES  01:41

16    THE POINT, YOUR HONOR, AND I THINK IT'S INTENDED TO DISTRACT.

17    I'VE COME TO YOU; I'VE BEEN VERY CANDID IN TERMS OF WHAT'S

18    GOING ON.

19          I WILL TELL YOU THIS, YOUR HONOR; LET ME TELL YOU

20    THIS; I'LL BE CANDID ABOUT THIS:  WHEN WE WERE HERE LAST TIME,  01:41

21    I DON'T KNOW IF THE COURT ANTICIPATED THIS, BUT I DID NOT

22    ANTICIPATE GETTING HIT WITH 165 NEW REQUESTS FOR PRODUCTION OF

23    DOCUMENTS.  I DIDN'T EXPECT TO BE HIT WITH THIS AVALANCHE OF

24    STUFF DURING THE SO-CALLED SOFT STAY.  BASED ON CONVERSATIONS

25    THAT I HAD WITH COUNSEL BEFORE THIS HEARING, I WOULD NOT HAVE   01:42
```

1    EXPECTED THE RESPONSE THAT I GOT FROM MR. QUINN.  I'LL JUST BE

2    CANDID WITH YOU ABOUT THAT.

3         HERE'S THE POINT, YOUR HONOR:  IT'S NOT A QUESTION OF

4    WORKING HARDER.  IT'S NOT A QUESTION OF WORKING HARDER.  I

5    PROMISE YOU THAT.                                          01:42

6         THERE IS A LOT TO BE DONE FROM BOTH SIDES.  WHETHER

7    OR NOT ZUUS IS AVAILABLE -- I'LL TAKE ZUUS, YOUR HONOR, RIGHT

8    NOW.  I DON'T KNOW WHY MS. GLASER OR SOMEBODY ELSE -- BUT I CAN

9    ASSURE YOU, THEY'RE GOOD LAWYERS, THEY HAVE THEIR OWN POSITION

10   WITH RESPECT TO THE DELAYS THAT HAVE BEEN FORTHCOMING.  I DON'T  01:42

11   WANT THIS TO BE A HE-SAID SHE-SAID, OR WHATEVER.  YOU DON'T

12   NEED TO INVITE YOURSELF INTO THAT, YOUR HONOR.

13        I'M IMPLORING THE COURT, IN AN UNREASONABLE SITUATION

14   FOR US, TO GIVE US THE RELIEF.  I'VE TRIED TO NARROW IT DOWN.

15   I THINK THAT, FRANKLY, MOST FIRMS WOULD HAVE ASKED FOR MORE    01:42

16   TIME.

17        **THE COURT:**  THE CONCERN THAT I HAVE, THE COMPLICATION

18   THAT EXISTS IN YOUR PROPOSAL, IS WHAT I'M HEARING FROM COUNSEL

19   FOR CARTER BRYANT.  MY CONCERN ABOUT LIFTING UP A STIPULATED

20   TRIAL DATE IS THAT I CAST THE WHOLE THING ADRIFT, AND ALL OF A  01:43

21   SUDDEN, CARTER BRYANT'S ATTORNEY IS NOT AVAILABLE, SOMEBODY

22   ELSE IS NOT AVAILABLE, AND THEN WE END UP HAVING THIS THING

23   CONTINUED TO THE 12TH OF NEVER.  AND IN THE ABSENCE OF SOME

24   CLEAR AGREEMENTS IN TERMS OF WHEN PEOPLE ARE AVAILABLE, I'M

25   RELUCTANT TO MOVE THINGS.  I DON'T WANT TO BE -- I'VE BEEN    01:43

```
 1   BURNED BEFORE.

 2            MR. NOLAN:  I UNDERSTAND, YOUR HONOR.

 3            YOUR HONOR, THIS IS AS CANDID AS THE SITUATION CAN BE

 4   DESCRIBED.  I KNOW THAT MR. KEKER HAS A TRIAL DATE IN FRONT OF

 5   JUDGE PFAELZER.  I INQUIRED OF JOHN ABOUT THAT.  IT IS A TRIAL      01:43

 6   DATE THAT IS SET.  THERE'S BEEN NO EFFORTS TO AND NO SUGGESTION

 7   THAT THAT CASE COULD SETTLE OR THAT IT WOULD GET MOVED BY

 8   JUDGE PFAELZER.  WE ALL KNOW THAT THOSE THINGS DO HAPPEN.

 9            WHAT I THOUGHT I HAD HEARD --

10            THE COURT:  HE HAS ANOTHER ONE WHEN?                       01:44

11            MS. ANDERSON:  HE HAS ANOTHER ONE IN SEPTEMBER, YOUR

12   HONOR, IN NEW YORK.

13            MR. NOLAN:  BUT MY UNDERSTANDING WAS, YOUR HONOR --

14   AND COUNSEL CAN DISAGREE WITH ME -- THAT IF THE PATENT CASE

15   EITHER SETTLED OR GOT MOVED, WHICH ARE ALL POSSIBILITIES, THEN      01:44

16   MR. KEKER WOULD BE AVAILABLE TO TRY THE CASE IN JULY.

17            MS. ANDERSON:  THAT'S CORRECT, YOUR HONOR.

18            MR. NOLAN:  THAT'S CORRECT.

19            THE COURT:  BUT IF IT'S SETTLED?

20            MS. ANDERSON:  IF THE TRIAL DATE MOVED, FOR SOME           01:44

21   REASON, IF THE LATE JUNE-JULY TRIAL DATE MOVED FOR SOME REASON,

22   WE WOULD WORK AND PREPARE AS IF THE CASE FOR SURE WAS GOING TO

23   GO IN JULY.  AND IF FOR SOME REASON IT DIDN'T, POTENTIALLY WE

24   COULD AGREE ON WHAT WOULD BE THE BACKUP DATE, IF THAT BECAME A

25   PROBLEM.  THAT'S ONE POTENTIAL WAY TO HANDLE IT.                    01:44
```

```
1           THE COURT:  YOU'RE AVAILABLE IN MAY, MR. NOLAN?

2           MR. NOLAN:  YES.

3           THE COURT:  AND YOU'RE AVAILABLE IN JUNE?

4           MR. NOLAN:  I'M AVAILABLE WHENEVER YOU SET THIS CASE,

5  YOUR HONOR, TO BE CANDID.  I'VE MOVED EVERYTHING.  I AM       01:45

6  AVAILABLE MAY, JUNE, JULY, AUGUST, FOR THE REST OF THE YEAR.

7           THE COURT:  YOU, LIKE MR. QUINN, ARE AVAILABLE IN THE

8  SUMMER OF 2008 TO TRY THIS CASE?

9           MR. NOLAN:  CORRECT.  ANY DAY.

10          THE COURT:  AND THOSE ARE THE ONLY TWO TRIALS THAT HE  01:45

11  HAS SCHEDULED RIGHT NOW; IS THAT CORRECT?

12          MS. ANDERSON:  CORRECT, YOUR HONOR; JUST THE ONE THAT

13  STARTS ON JUNE 26TH, AND THE ONE THAT STARTS ON SEPTEMBER 28TH,

14  I BELIEVE, IN NEW YORK.

15          THE COURT:  IS THERE ANYTHING FURTHER, MR. NOLAN?      01:45

16          MR. NOLAN:  NO.

17          THE COURT:  I'M GOING TO TRY TO DIGEST THIS AND TAKE

18  A LOOK, AND I'LL -- I'D LIKE TO THINK ABOUT THIS.  I'M NOT

19  GOING TO MAKE A DECISION RIGHT HERE ON THE FLY.

20          MR. QUINN, YOU SAY YOU REALLY WOULDN'T OPPOSE A        01:45

21  COUPLE OF WEEKS OF MR. NOLAN HAVING A CHANCE TO BE FREE OF ALL

22  OF --

23          MR. QUINN:  I WOULD NOT OPPOSE THAT, YOUR HONOR.

24  WE'VE SLIPPED THE SCHEDULE A COUPLE OF WEEKS ALREADY, SO

25  SLIPPING ALL OF THE DATES TWO WEEKS, YOU KNOW, SEEMS          01:46
```

 1    APPROPRIATE.

 2             THE COURT:  ALL RIGHT.

 3             ALSO JUST SOMETHING THAT I WANTED TO MAKE SURE:  I

 4    TRUST COUNSEL IS AWARE OF THE ELECTRONIC FILING THAT GOES INTO

 5    EFFECT IN INTELLECTUAL PROPERTY CASES?                           01:46

 6             I'M SEEING HEADS NOD 'YES.'  OKAY.  THAT'S GOOD.

 7             PAPER COURTESY COPIES ARE STILL REQUIRED TO BE TURNED

 8    IN TO CHAMBERS.  THAT'S A DISTRICT-WIDE RULE, SO I'M NOT GOING

 9    TO BUCK THAT, ALTHOUGH THIS COURT HAS PRETTY MUCH ENGAGED AND

10    IS INVESTED IN THE ELECTRONIC FILING PROCESS.                   01:46

11             AS FAR AS THE DOCUMENTS THAT ARE GOING TO

12    JUDGE INFANTE, THOSE ARE BEING UNDER SEAL, AT LEAST MOST OF

13    THEM SEEM TO BE UNDER SEAL, SO THOSE WOULDN'T BE ELECTRONICALLY

14    FILED.

15             MR. QUINN:  WOULD THE COURT RATHER NOT GET THOSE?      01:47

16             THE COURT:  WELL, I LIKE LOOKING AT THE MOTIONS

17    THEMSELVES, JUST TO HAVE A SENSE OF WHAT'S GOING ON.  BUT

18    FRANKLY, THE ENORMOUS EXHIBITS THAT HAVE BEEN ATTACHED TO

19    THOSE, I'M NOT REVIEWING.

20             MR. QUINN:  WE COULD JUST FILE THE MEMORANDA AND       01:47

21    DECLARATIONS WITHOUT THE EXHIBITS.

22             THE COURT:  WHY DON'T YOU DO THAT.  I THINK THAT'S A

23    GOOD SUGGESTION, BECAUSE THE EXHIBITS ARE WHAT -- I'LL LEAVE

24    THAT TO JUDGE INFANTE TO SHOULDER THAT BURDEN.

25             I WOULD LIKE TO SEE THE MEMORANDA, BECAUSE IT GIVES    01:47

1   ME A SENSE OF WHERE THESE ARGUMENTS ARE GOING AND WHAT'S GOING

2   ON BETWEEN THE PARTIES.

3          THAT'S WHAT WE'LL DO, THEN.

4          ANYTHING ELSE THAT NEEDS TO BE TAKEN UP AT THIS TIME?

5          **MR. NOLAN:**  VERY QUICKLY, YOUR HONOR.  I SAID THAT WE        01:47

6   HAD AGREED AMONGST OURSELVES TO THIS FILING ON NOVEMBER 8TH OF

7   THE AMENDED ANSWER.

8          **THE COURT:**  YES.

9          **MR. NOLAN:**  THERE'S ALL SORTS OF CORRESPONDENCE BACK

10  AND FORTH THAT WOULD NEED A COURT ORDER.                             01:48

11         COULD WE JUST HAVE YOUR PERMISSION, YOUR HONOR, TO BE

12  ABLE TO PROVIDE THAT ON NOVEMBER 8TH?  THAT WILL AVOID HAVING

13  ABOUT 13 PARAGRAPHS OF WHEREASES, DISAGREEDS TO, AND WHAT HAVE

14  YOU.  IF I COULD JUST GET THAT CLEARANCE FROM YOU.

15         **THE COURT:**  THAT WILL BE INCLUDED IN TODAY'S ORDER.        01:48

16         THE 'LEAVE TO FILE AN ANSWER' ON NOVEMBER 8TH IS TO

17  WHAT?  IT'S AN ANSWER TO...

18         **MR. NOLAN:**  I THINK TO THE LAST AMENDED PLEADING.

19         **MR. ZELLER:**  IT'S TO THE AMENDED COUNTERCLAIM, SO

20  IT'S DUE ON NOVEMBER 8TH.                                            01:48

21         **MR. NOLAN:**  AND IT'S DUE ON NOVEMBER 8TH.

22         YOUR HONOR, WE'LL FILE IT ON NOVEMBER 8TH.

23         **THE COURT:**  OKAY.

24         **MR. NOLAN:**  YOUR HONOR, THE OTHER THING THAT I WOULD

25  ASK THE COURT'S INDULGENCE ON.  YOU HAVE A MATTER SET FOR            01:48

1  NOVEMBER 19TH; THE BRIEF IS DUE TO BE FILED ON NOVEMBER 5TH.

2  IF THERE'S A WAY THAT YOU COULD MOVE THAT, THAT WOULD BE

3  HELPFUL.  IF IT DOESN'T WORK ON YOUR CALENDAR --

4      **THE COURT:**  WE HAVE A MATTER SET RIGHT NOW FOR

5  NOVEMBER 19TH.                                              01:48

6      YOU WANT THAT MOVED TO WHEN?

7      **MR. NOLAN:**  IF I COULD GET THAT INTO DECEMBER, YOUR

8  HONOR, AND JUST GET A COUPLE OF WEEKS MORE TO MAKE CERTAIN THAT

9  I'VE GOT EVERYTHING FROM O'MELVENY.

10     SEE, OUR PROBLEM IS, WE DON'T HAVE THE DOCUMENTS.        01:49

11     **THE COURT:**  IS THERE A PROBLEM WITH THAT, COUNSEL,

12  THE NOVEMBER 19TH HEARING?

13     **MR. QUINN:**  NO.

14     **THE COURT:**  WHY DON'T WE DO THAT RIGHT NOW.  WHY

15  DON'T WE MOVE THAT NOVEMBER 19TH HEARING TO DECEMBER 3RD.    01:49

16     **MR. NOLAN:**  FINE.  THANK YOU.

17     AND THE LAST POINT THAT I JUST WANTED TO MAKE -- AND

18  I KNOW THAT IT'S AN OBSERVATION -- THIS NOTION OF DELAY, OKAY,

19  WHAT BELIES IT THE MOST IS THAT THE DATE THAT I HAVE ASKED FOR

20  IS THE DATE THAT ALL OF THESE LAWYERS WANTED IN THE FIRST     01:49

21  INSTANCE, THAT THEY WERE ALL WORKING ON.  THEY WERE THE ONES --

22  BEFORE WE EVEN GOT INTO THIS CASE, THEY COLLECTIVELY, AS

23  LAWYERS FAMILIAR WITH THIS LITIGATION, FOR YEARS CAME TO YOU

24  AND SAID THAT THAT WAS A REASONABLE TIME TO ALLOW THEM TO GET

25  PREPARED.                                                   01:49

```
 1            SO FOR ANYBODY NOW TO SUGGEST THAT, 'OH, MY GOSH,
 2    IT'S SO FAR OFF; IT'S A DELAY; IT'S PREJUDICE,' YOU KNOW, YOUR
 3    HONOR, IT'S JUST -- I DON'T KNOW -- IT'S JUST NOT RIGHT.  THIS
 4    WAS THE DATE THEY ALL WANTED.  THEY WERE ALL FAMILIAR WITH THE
 5    RECORD AT THAT TIME.  I'M NOT ASKING FOR ANYTHING BEYOND THAT.   01:50
 6    I KNOW IT DIDN'T WORK, AND I KNOW OF THE COURT'S SCHEDULING.  I
 7    KNOW THE REASONS FOR IT.
 8            I JUST NEEDED TO MAKE THAT POINT, BECAUSE I THINK
 9    THAT REALLY SPEAKS VOLUMES OF HOW REASONABLE WE'RE TRYING TO BE
10    TO GET THIS THING READY FOR TRIAL.                              01:50
11            THE COURT:  THANK YOU, MR. NOLAN.
12            MR. ZELLER:  JUST ONE HOUSEKEEPING MATTER, YOUR
13    HONOR.
14            AS A RESULT OF THE SO-CALLED SOFT STAY, CERTAIN
15    DEADLINES WERE OBVIOUSLY UNDATED UP UNTIL TODAY.  SOME THINGS    01:50
16    COULD BE DUE AS EARLY AS TOMORROW, IF THE STAY IS DEEMED TO BE
17    LIFTED AS OF TODAY.  AND SINCE THE COURT, OBVIOUSLY, HAS TAKEN
18    UNDER ADVISEMENT WHAT IT WANTS TO DO, WE WOULD APPRECIATE AT
19    LEAST HAVING SOME GUIDANCE AS TO WHAT WE SHOULD DO, BECAUSE
20    OBVIOUSLY --                                                    01:50
21            THE COURT:  YOU CAN PRETTY MUCH COUNT, COUNSEL, THAT
22    I'M GOING TO EXTEND THE STAY AND PROBABLY MAKE IT A LITTLE LESS
23    THAN SOFT IN THE NEXT TWO WEEKS, AT A MINIMUM; SO BE RELIEVED
24    OF THAT.  NOTHING IS GOING TO BE DUE TOMORROW.
25            I AM PERSUADED THAT MR. NOLAN NEEDS SOME ADDITIONAL      01:51
```

```
 1   TIME.

 2              WHETHER THAT'S GOING TO AFFECT THE REST OF THE

 3   SCHEDULE OR NOT, IT'S NOT SO CLEAR TO ME.

 4              MR. ZELLER:  IF I MAY, YOUR HONOR.

 5              NOT TO REARGUE, OF COURSE, ANYTHING THAT'S BEEN          01:51

 6   ARGUED, BUT THE PROBLEM WITH DOING THAT IS THAT IT MEANS WE'RE

 7   JUST SIMPLY PUT ON ICE IN PROPOUNDING DISCOVERY, AND THEN WE

 8   DON'T GET IT.  WE'RE JUST BEING DEPRIVED OF OUR PERIOD OF

 9   DISCOVERY, WHICH IS AFTER THE CLOSING.  THERE ARE THIRD PARTIES

10   OUT THERE WITH DOCUMENTS, AND IF WE CAN'T SERVE SUBPOENAS ON       01:51

11   THEM, THEY ARE NOT GOING TO BE PRESERVING DOCUMENTS --

12              THE COURT:  THIS DOESN'T AFFECT -- WOULD THIS AFFECT

13   THE THIRD PARTIES?

14              MR. NOLAN:  YOUR HONOR, TO THE EXTENT THAT THIRD

15   PARTIES WOULD HAVE TO PRODUCE SOMETHING --                        01:51

16              WE NEED TO UNDERSTAND WHAT THEY'VE BEEN REQUESTED TO

17   PRODUCE, AND WE HAVE TO INSERT OUR RIGHTS INTO THAT MATTER,

18   YOUR HONOR.

19              YOUR HONOR, THIS NOTION THAT THEY HAVEN'T GOTTEN

20   ANYTHING, THEY HAVE THREE MILLION PAGES OF PRODUCTION.  THEY'VE    01:51

21   TAKEN 19 DEPOSITIONS.  IT'S NOT AS THOUGH THEY'VE BEEN

22   STONEWALLED ON ALL OF THIS STUFF.  ALL I WANT TO DO IS HAVE A

23   REASONABLE PERIOD OF TIME WHEN I HAVE A THIRD-PARTY SUBPOENA

24   THAT COMES IN DURING THE SOFT STAY -- EIGHT SUBPOENAS CAME IN

25   THROUGH THESE THIRD PARTIES -- WE NEED TO MEET WITH THE THIRD      01:52
```

1    PARTIES.  WE NEED TO UNDERSTAND WHAT INFORMATION IS GOING TO BE

2    PROVIDED; ARE THERE OBJECTIONS THAT WE SHOULD BE ASSERTING.

3    THEY ASK US FOR OUR ADVICE; ARE WE OBJECTING ON PRIVACY

4    GROUNDS; THINGS LIKE THAT.

5           IT JUST TAKES TIME, YOUR HONOR, TO DEAL WITH THIS.          01:52

6           THAT'S WHY I THINK THAT WHATEVER STAY IS APPLIED

7    SHOULD APPLY TO THE THIRD PARTIES.  WE'LL DEAL WITH IT AS

8    QUICKLY AS WE CAN.  BUT TO HAVE THIS GOING ON, WE'RE GOING TO

9    HAVE THE SAME ISSUE WE HAD IN THE LAST TEN DAYS, WHERE WE'RE

10   NOT GETTING ANYTHING DONE BECAUSE WE'RE CHASING DOWN ADDITIONAL   01:52

11   FLY BALLS THAT THEY'RE HITTING OUT THERE.

12          AND THERE'S PLENTY OF TIME TO DEAL WITH ALL OF THIS,

13   YOUR HONOR; THAT'S MY POINT.

14          **MR. QUINN:**  WELL, THERE WON'T BE, YOUR HONOR, IF

15   WE'RE AT JANUARY 15TH WITH AN APRIL 1ST CUTOFF.  THESE           01:52

16   THIRD-PARTY SUBPOENAS THAT ARE BEING REFERRED TO ARE TWO PEOPLE

17   WHO WERE IDENTIFIED IN DOCUMENTS FINALLY PRODUCED TO US; SO

18   WE'RE NOW DOING WHAT WE SHOULD HAVE BEEN IN A POSITION TO DO

19   SOME TIME AGO.

20          AND I SUBMIT THAT MR. NOLAN CAN READ A SUBPOENA AND       01:53

21   DECIDE WHETHER SOME OBJECTIONS OUGHT TO BE ASSERTED AND DO THAT

22   WITHOUT REALLY DISRUPTING HIS SCHEDULE.  THERE ARE A LOT OF

23   LAWYERS ON THE OTHER SIDE HERE.  THIRD-PARTY DISCOVERY

24   SHOULDN'T BE PUT ON ICE IN THE MEANTIME.  THERE'S JUST TOO MUCH

25   OF IT OUT THERE THAT NEEDS TO BE DONE.                           01:53

1          THERE'S A COUPLE OF OTHER THINGS, IF THE COURT IS

2    CONSIDERING, AND I GATHER THE COURT IS INCLINED TO CONTINUE THE

3    STAY.

4          AT A MINIMUM, THERE'S A MOTION WE WOULD LIKE TO BRING

5    TO BE ABLE TO PROPOUND ADDITIONAL DISCOVERY.  IF WE SET THAT            01:53

6    FOR HEARING, IT WOULDN'T BE HEARD UNTIL THE END OF DECEMBER,

7    EVEN WITHOUT A STAY.  IF WE FILE IT TOMORROW, I ASSUME IT

8    PROBABLY WOULDN'T BE HEARD UNTIL THE END OF DECEMBER OR THE

9    SECOND HALF OF DECEMBER.

10          **THE COURT:**  THIS WOULD BE TO JUDGE INFANTE?                  01:54

11          **MR. QUINN:**  NO.  I THINK IT HAS TO GO TO YOUR HONOR.

12          **THE COURT:**  YOU'RE ASKING FOR...

13          **MR. QUINN:**  FOR LEAVE TO TAKE ADDITIONAL DEPOSITIONS

14    ABOVE THE --

15          **THE COURT:**  MR. NOLAN, IF I UNDERSTAND HIM CORRECTLY,        01:54

16    IS NOT OBJECTING TO YOU FILING ANY MOTIONS.  HE'S JUST DOESN'T

17    WANT TO HAVE TO FILE HIS OPPOSITION.

18          IF YOU NOTICE SOMETHING FOR THE END OF DECEMBER, HIS

19    OPPOSITION IS NOT GOING TO BE DUE UNTIL DECEMBER.  THAT'S NOT

20    GOING TO AFFECT THEM, AND THAT WOULD NOT BE AFFECTED BY A BRIEF        01:54

21    ONE- OR TWO-WEEK CONTINUANCE OF THE STAY.

22          **MR. QUINN:**  THAT WOULD BE FINE, AS LONG AS THE FILING

23    OF A MOTION WOULDN'T BE AFFECTED BY --

24          **THE COURT:**  THAT'S NOT WHAT HE'S TALKING ABOUT, IF I

25    UNDERSTAND RIGHT.                                                      01:54

1      **MR. QUINN:**  AND THEN WE HAVE SOME MOTIONS TO COMPEL

2  DIRECTED TO THIRD PARTIES WHO OWE US INFORMATION.

3      **THE COURT:**  AGAIN, ALL HE'S ASKING IS THAT YOU

4  DON'T -- IN THIS NEXT PERIOD OF TIME -- HE'S ASKING FOR A

5  MONTH; I'M THINKING MAYBE TWO WEEKS.  BUT WHATEVER IT IS, AS I      01:54

6  UNDERSTAND IT, IT WOULD ONLY BE -- YOU COULD FILE WHATEVER YOU

7  WANT, AS LONG AS THE OPPOSITION IS NOT DUE DURING THAT PERIOD

8  OF TIME.

9      **MR. NOLAN:**  YOUR HONOR, THEY'RE NOT WRITING ON A

10  CLEAN SLATE HERE.  LET'S JUST MAKE IT CLEAR.      01:54

11      COUNSEL WHO HAVE BEEN INVOLVED IN THIS CASE FOR SOME

12  TIME HAS TALKED ALREADY ABOUT EXCESSIVE DISCOVERY.  THIS IS THE

13  LITIGANT, MATTEL, REPRESENTED BY THE SAME LAW FIRM WHO

14  JUDGE LEW, AS AFFIRMED BY JUDGE PREGERSON, WAS SANCTIONED FOR

15  SCORCHED EARTH LITIGATION ON EXCESSIVE DISCOVERY.      01:55

16      **THE COURT:**  LET'S NOT GO THERE.

17      **MR. NOLAN:**  YOUR HONOR, ALL I'M SAYING IS THAT WHAT

18  I'M TRYING DO IS GET MY HANDS AROUND --

19      **THE COURT:**  I UNDERSTAND WHAT YOU'RE TRYING TO DO,

20  COUNSEL.  I'M SYMPATHETIC TO YOUR EFFORTS.      01:55

21      ALL RIGHT.  I WILL ISSUE AN ORDER THAT WILL BE

22  ELECTRONICALLY FILED TODAY THAT YOU WILL HAVE IN YOUR HAND THAT

23  WILL GRANT YOU GUIDANCE ON THIS.

24      I AM GOING TO GIVE YOU FURTHER DIRECTION ON THE

25  MEDIATION, AND WE'LL WAIT UNTIL AFTER DECEMBER 1ST TO DO THAT;      01:55

1    BUT I REALLY EXPECT COUNSEL TO APPROACH THAT SERIOUSLY.  I

2    UNDERSTAND, AS I SAID LAST TIME, THIS MAY VERY WELL BE A CASE

3    THAT HAS TO GO TO TRIAL, BUT I WANT YOUR CLIENTS TO UNDERSTAND

4    THE TREMENDOUS COSTS IN DOING THAT; AND I TRUST THAT YOU WILL

5    IMPRESS THAT UPON THEM AND TAKE ADVANTAGE OF THIS SITUATION.        01:56

6         IF THERE'S NOTHING FURTHER, THE COURT WILL ISSUE AN

7    ORDER LATER TODAY GIVING GUIDANCE ON FUTURE SCHEDULING.

8         **MR. ZELNER:**  THANK YOU, YOUR HONOR.

9         **MR. QUINN:**  THANK YOU, YOUR HONOR.

10        **MR. NOLAN:**  THANK YOU, YOUR HONOR.                         01:56

11        **THE CLERK:**  THE COURT STANDS IN RECESS.

12

13

14

15

16

17                         CERTIFICATE

18

19   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
20   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
21   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

22

23   _____        _____
     THERESA A. LANZA, CSR, RPR                       DATE
24   FEDERAL OFFICIAL COURT REPORTER

25

OCTOBER 31, 2007                              STATUS CONFERENCE