```
 1                UNITED STATES DISTRICT COURT

 2               CENTRAL DISTRICT OF CALIFORNIA

 3                     EASTERN DIVISION

 4                        - - -

 5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

 6                        - - -

 7   carter bryant, et. Al.,          )
                                      )
 8                     Plaintiffs,  )
                                      )
 9           vs.                      )  No. ED CV 04-09049
                                      )  (LEAD LOW NUMBER)
10   mattel, inc., et. Al.,           )
                                      )
11                     Defendants.  )  HEARING ON
     _____)  EX PARTE APPLICATION
12   AND CONSOLIDATED ACTIONS,        )
     _____)

13

14

15             REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                   RIVERSIDE, California

17              TUESDAY, NOVEMBER 20, 2007

18                     10:11 A.M.

19

20

21

22

23              THERESA A. LANZA, RPR, CSR
                FEDERAL Official Court Reporter
24               3470 12th Street, Rm. 134
                RIVERSIDE, California  92501
25                   951-274-0844
                 Csr11457@sbcglobal.net
```

```
 1   APPEARANCES:

 2   On behalf of CARTER BRYANT:

 3                        KEKER & VAN NEST
                          BY:  JOHN W. KEKER
 4                        BY:  CHRISTA ANDERSON
                          710 SANSOME STREET
 5                        SAN FRANCISCO, California  94111-1704
                          415-391-5400
 6

 7   on behalf of MATTEL:

 8                        QUINN EMANUEL
                          By:  JOHN S. QUINN
 9                        BY:  MICHAEL T. ZELLER
                          865 S. FIGUEROA STREET,
10                        10TH FLOOR
                          LOS ANGELES, California  90017
11                        213-624-7707

12

     ON BEHALF OF MGA ENTERTAINMENT:
13
                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
14                        BY:  THOMAS J. NOLAN
                          BY:  CARL ALLAN ROTH
15                        300 SOUTH GRAND AVENUE
                          LOS ANGELES, CALIFORNIA  90071-3144
16                        213-687-5000

17
     ON BEHALF OF GUSTAVO MACHADO:
18
                          OVERLAND BORENSTEIN SCHEPER & KIM
19                        BY:  DAVID C. SCHEPER
                          300 SOUTH GRAND AVENUE
20                        SUITE 2750
                          LOS ANGELES, CALIFORNIA  90071
21                        213-613-4660

22
     On behalf of defendants leahy, marlow, and cloonan:
23
                          Keats mCfarland & wilson llp
24                        By:  Larry W. McFarland
                          9720 wilshire boulevard
25                        Beverly hills, CA 90212
                          310-777-3750
```

1                          I N D E X

2                                                    Page

3    HEARING .......................................    5

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1      RIVERSIDE, CALIFORNIA; MONDAY, NOVEMBER 20, 2007; 10:11 A.M.

 2                              -oOo-

 3          THE CLERK:  CALLING CALENDAR ITEM ONE, ED CV 04-9049,

 4  CARTER BRYANT VERSUS MATTEL INC. AND CONSOLIDATED CASES.

 5          MAY WE HAVE COUNSEL PLEASE COME FORWARD AND STATE        10:03

 6  YOUR APPEARANCES FOR THE RECORD.

 7              MR. QUINN:  JOHN QUINN, MIKE ZELLER, FOR MATTEL.

 8              MR. NOLAN:  TOM NOLAN, CARL ROTH, FOR THE MGA

 9  DEFENDANTS AND ISAAC LARIAN.

10              MR. McFARLAND:  LARRY McFARLAND ON BEHALF OF          10:12

11  MS. LEAHY, MS. MARLOW, AND MS. CLOONAN.

12              MR. KEKER:  JOHN KEKER FOR MR. BRYANT.

13              MR. SCHEPER:  DAVID SCHEPER FOR MR. MACHADO.

14              THE COURT:  GOOD MORNING, COUNSEL.

15          WE'RE ON CALENDAR FOR A COUPLE OF MATTERS THIS           10:12

16  MORNING.  LET ME ADDRESS FIRST THE EX-PARTE APPLICATION, WHICH

17  BROUGHT US TOGETHER TO BEGIN WITH, FILED BY MATTEL.

18          MR. McFARLAND, I HAVE A COUPLE OF QUESTIONS FOR YOU,

19  IF YOU COULD APPROACH THE LECTERN.

20          I LOOKED IN VAIN, IN YOUR DECLARATION AS WELL AS         10:12

21  THROUGHOUT YOUR PAPERS, TO FIND OUT EXACTLY WHEN IT WAS OR WHEN

22  IT IS THAT MS. MARLOW IS LEAVING ON THIS TRIP.  YOU MAKE

23  REFERENCE REPEATEDLY TO LATE NOVEMBER, BUT WE ALL PROBABLY HAVE

24  DIFFERENT DEFINITIONS OF WHAT LATE NOVEMBER IS.  I COULDN'T

25  FIND ANYWHERE WHERE YOU DEFINE THAT LATE NOVEMBER DATE.         10:13
```

1          **MR. McFARLAND:**  I BELIEVE IT'S NOVEMBER 26TH, YOUR

2     HONOR.

3          **THE COURT:**  OKAY; SO IT'S A WEEK FROM YESTERDAY; SO

4     THIS COMING MONDAY.

5          **MR. McFARLAND:**  YES.                                    10:13

6          **THE COURT:**  THANK YOU; THAT HELPS.

7          MR. QUINN, I UNDERSTAND THAT YOU'RE FRUSTRATED WITH

8     THE CONTINUANCES AND THE CONCERNS THAT YOU HAVE.  AND

9     CERTAINLY, AT LEAST BASED ON WHAT YOU HAVE REPRESENTED TO THE

10    COURT, I UNDERSTAND THE IMPORTANCE OF THESE WITNESSES.  BUT AT   10:13

11    LEAST WITH RESPECT TO TWO OF THEM, IT APPEARS THAT THEY ARE

12    WILLING TO BE MADE AVAILABLE WITHIN A WEEK OF THE DATE THAT YOU

13    ARE REQUESTING; THAT DOESN'T STRIKE THE COURT AS THAT

14    UNREASONABLE, AND IT SEEMS, ASSUMING THAT THEY WOULD BE

15    AVAILABLE ON THOSE DATES, AND I HAVE NO REASON NOT TO ACCEPT     10:14

16    COUNSEL'S REPRESENTATION, THAT YOU WOULD HAVE SUFFICIENT TIME

17    THEN BEFORE THE DISCOVERY CUTOFF TO DO ANY FOLLOW-UP DISCOVERY,

18    AT LEAST WITH RESPECT TO THOSE TWO WITNESSES.

19         **MR. QUINN:**  I THINK THAT'S RIGHT, YOUR HONOR.

20         THE ISSUE ISN'T SO MUCH WITH THOSE DATES; IT'S A           10:14

21    LITTLE LATER THAN WE WOULD LIKE, OBVIOUSLY.

22         **THE COURT:**  I UNDERSTAND THAT.

23         **MR. QUINN:**  WITHOUT GOING INTO CHAPTER AND VERSE,

24    THERE'S A HISTORY HERE, AND WHAT REALLY CONCERNS US ABOUT THOSE

25    TWO IS THAT WE CAN'T GET A STIPULATION THAT THEY WILL APPEAR.    10:14

1          **THE COURT:**  I'VE BECOME APPRISED OF THE HISTORY.  I

2   DON'T THINK THERE'S TOO MANY CHAPTERS OR VERSES THAT WERE LEFT

3   OUT.

4          **MR. QUINN:**  I THINK AS TO THOSE TWO, IF WE HAD SOME

5   ASSURANCES THAT THE DEPOSITIONS WOULD, IN FACT, GO FORWARD ON          10:14

6   THOSE DAYS, I THINK THAT WOULD END THE DISCUSSION AS TO THOSE

7   TWO.

8          **THE COURT:**  NOW, WHERE ARE YOUR DISCUSSIONS WITH

9   MR. McFARLAND CONCERNING THE THIRD WITNESS, MS. MARLOW?

10          **MR. QUINN:**  WELL, THE DATE THAT HAS BEEN OFFERED IS          10:14

11   JANUARY 7TH.

12          **THE COURT:**  THAT'S STILL WELL IN ADVANCE OF THE

13   DISCOVERY CUTOFF.

14          **MR. QUINN:**  WELL, IT'S A COUPLE OF WEEKS IN ADVANCE

15   OF THE DISCOVERY CUTOFF.                                              10:15

16          **THE COURT:**  RIGHT.

17          **MR. QUINN:**  THIS IS A WITNESS WHO REALLY IS CENTRAL;

18   SHE'S THE ONE WHO INTRODUCED, BROUGHT BRYANT AND MGA TOGETHER;

19   SHE APPARENTLY HAS RECEIVED MILLIONS OF DOLLARS AS A FINDER'S

20   FEE FOR HER INVOLVEMENT IN THIS; SHE'S A KEY PERSON.  IF WE ARE       10:15

21   NOT ABLE TO GET HER TESTIMONY UNTIL THAT DAY, AS A PRACTICAL

22   MATTER, WITHOUT COMING IN, EMERGENCIES, ORDERS TO SHORTEN TIME,

23   OR GETTING EXTENSIONS OF THE DISCOVER CUTOFF TO FOLLOW UP, WE

24   SIMPLY DON'T HAVE ANY TIME TO FOLLOW UP ON ANY NEW INFORMATION

25   THAT SHE MAY PROVIDE US.                                             10:15

1    IN THE OPPOSITION THEY CHALLENGED US TO IDENTIFY WHAT

2  FOLLOW UP WE MIGHT NEED.  OBVIOUSLY WE DON'T KNOW WHAT THAT IS.

3  WE DO KNOW THAT SHE APPEARS TO HAVE PLAYED A CENTRAL ROLE IN

4  THE EVENTS THAT BROUGHT US ALL TOGETHER IN THIS LAWSUIT; SO

5  THAT DATE IS JUST TOO LATE.  IT'S TOO CLOSE TO THE DISCOVERY      10:16

6  CUTOFF.

7    AND IF SHE'S LEAVING, WE'D BE PREPARED TO TAKE HER

8  DEPOSITION THIS WEEK OR IMMEDIATELY AFTER SHE RETURNS FROM

9  BRAZIL, BUT WE SUBMIT THAT DATE IS TOO LATE, PARTICULARLY GIVEN

10  THE HISTORY.                                                    10:16

11    **THE COURT:**  ALL RIGHT.  LET ME GO BACK TO

12  MR. McFARLAND, THEN.

13    GIVEN THIS HISTORY THAT MR. QUINN REFERS TO, I

14  UNDERSTAND HIS CONCERN ABOUT WAITING UNTIL JANUARY 7TH, WITHOUT

15  HAVING SOME ASSURANCE THAT HE'S GOING TO BE ABLE TO GET ANY     10:16

16  FOLLOW-UP DISCOVERY THAT HE THINKS HE MAY NEED.  AND I'M ALSO

17  CONVINCED, FROM READING THE PAPERS -- I UNDERSTAND THE TYPE OF

18  FOLLOW-UP DISCOVERY THAT HE MAY NEED.  WE CAN'T PREDICT THESE

19  THINGS.

20    WHAT WOULD YOUR PREFERENCE BE IN TERMS OF HAVING YOUR    10:16

21  CLIENT BE DEPOSED THIS WEEK, WHICH IS CERTAINLY A POSSIBILITY

22  IF SHE DOES NOT LEAVE UNTIL MONDAY.  WE COULD HAVE HER DEPOSED

23  -- SHE RETURNS ON WHAT DATE?

24    **MR. McFARLAND:**  SHE RETURNS ON THE 17TH.

25    **THE COURT:**  THAT'S GETTING CLOSE TO THE HOLIDAYS, BUT  10:17

```
 1   WE COULD IT THE WEEK OF THE 17TH.  OR, WE COULD DO IT
 2   JANUARY 7TH, BUT THEN I'D BE INCLINED TO GIVE MR. QUINN AND
 3   MATTEL LEAVE TO EXPAND THE DISCOVERY CUTOFF WITH RESPECT TO
 4   THAT WITNESS.
 5        I'M RELUCTANT TO DO THAT BECAUSE I THINK THAT GOES      10:17
 6   DOWN A ROAD THAT MAY CAUSE -- I DON'T LIKE THAT OPTION, BUT
 7   THAT'S WHAT I THINK WOULD BE THE ONLY FAIR THING TO DO, GIVEN
 8   THAT -- ONE OF THE THINGS THAT MR. NOLAN REQUESTED, THIS SOFT
 9   STAY AND THEN THE HARD STAY; I WANTED TO GIVE MR. NOLAN THE
10   BENEFIT OF THAT, BUT I DIDN'T WANT THAT TO PREJUDICE MATTEL.   10:17
11   AND I THINK THIS MAY BE AN AREA WHERE IT COMES CLOSE TO DOING
12   SO.  NOT INTENTIONALLY.  AND I DON'T BUY INTO ANY CONSPIRACY
13   THEORIES HERE THAT HAVE BEEN SUGGESTED IN THE PAPERS, BUT JUST
14   IN TERMS OF HAVING THAT EFFECT.
15        MR. McFARLAND:  WELL, I THINK THAT --                  10:18
16        MR. KEKER:  COULD I INTERRUPT TO ADD A FACT THAT I
17   THINK YOU NEED TO KNOW IN THINKING ABOUT THIS, BECAUSE THIS
18   BUSINESS ABOUT --
19        THE COURT:  WELL, IF YOU CAN YIELD TO MR. KEKER, I
20   SUPPOSE WE CAN HEAR FROM MR. KEKER.
21        MR. McFARLAND:  OF COURSE.
22        MR. KEKER:  IT REALLY IS MORE INFORMATIONAL.
23        I DON'T KNOW THAT MUCH ABOUT IT, BUT -- IT MAY BE A
24   FREUDIAN SLIP -- THEY KEEP MENTIONING JANUARY 7TH; THE
25   DEPOSITION WAS SUPPOSED TO BE JANUARY 9TH.  BUT LAST NIGHT THEY   10:18
```

1    NOTICED A MOTION BEFORE YOU FOR JANUARY 7TH IN WHICH MATTEL

2    SAYS THAT THEY NEED, BY OUR COUNT, 49 ADDITIONAL DEPOSITIONS;

3    INCLUDED IN THAT NUMBER ARE OPEN-ENDED 30(B)(6) DEPOSITIONS OF

4    THIRD PARTIES AND SEVERAL ATTORNEYS; THEY NEED MORE 30(B)(6)

5    TIME WITH MGA AND MGA MEXICO, INCLUDING MORE THAN 100 SUB-            10:18

6    TOPICS; THEY ARE SEEKING 19 NEW INTERROGATORIES -- THEY HAVE

7    RUN OUT OF THEIR LIMIT -- WITH, AS I UNDERSTAND IT, MANY, MANY

8    SUB-PARTS.

9           THEY HAVE NINE MORE HOURS WITH CARTER BRYANT, BUT NOW

10   THEY WANT ANOTHER 12 BEFORE THEY HAVE TAKEN THE NINE; SO THEY         10:19

11   WANT 21 MORE HOURS WITH CARTER BRYANT.  AND THIS IS A MOTION

12   THEY FILED LAST NIGHT, AND NOW THEY ARE HERE TALKING ABOUT

13   EXTENDING THE DISCOVERY CUTOFF DATE.

14          WE BELIEVE THAT THEIR DESIRE IS UNSEEMLY.

15          EITHER YOU POSTPONE THE TRIAL AND EXTEND THE                   10:19

16   DISCOVERY CUTOFF DATE OR YOU KEEP THE DISCOVERY CUTOFF DATE AND

17   YOU GO TO TRIAL.

18          SO WITHOUT ARGUING, I JUST THOUGHT YOU NEEDED TO KNOW

19   THAT THEY FILED THAT MOTION.

20          **THE COURT:**  I APPRECIATE THAT INFORMATION.                  10:19

21          MR. NOLAN, WOULD YOU LIKE TO ADD TO THAT?

22          I APOLOGIZE, MR. McFARLAND.

23          **MR. NOLAN:**  FIRST OF ALL, I APPRECIATE THE COMMENT

24   ABOUT NO CONSPIRACY.  THERE IS ABSOLUTELY NONE.  WE DIDN'T EVEN

25   COORDINATE THE DATES, AND MR. McFARLAND DOESN'T REPRESENT MGA.        10:19

```
 1          I DO THINK IT'S A LITTLE BIT IRONIC THAT WE'RE BACK
 2   TWO WEEKS AFTER OUR LONG-FOUGHT DISCUSSION WITH RESPECT TO THE
 3   LENGTH OF THE HARD STAY NOW TO FIND OUT THAT WHAT THEY WANT IS
 4   A UNILATERAL EXTENSION OF 60 DAYS FOR THE DISCOVERY CUTOFF
 5   DATE, WHERE, IN A SITUATION WHERE I THOUGHT I HAD A STRONGER      10:20
 6   ARGUMENT, FRANKLY, MR. QUINN TOOK ME TO TASK AND SAID THAT WE
 7   SHOULD GET THE WORK DONE.
 8          HERE'S THE REAL PRECISE POINT I WANT TO MAKE AS TO
 9   THIS JANUARY 7TH TRIAL DATE.  YOUR HONOR, THERE IS AN EMPLOYEE
10   OF MATTEL THAT WE HAVE WISHED TO TAKE, AND, IN FACT, THE NAME     10:20
11   IS IVY ROSS, SENIOR VICE PRESIDENT OF PRODUCT AND VISUAL DESIGN
12   OF MATTEL, A VERY IMPORTANT WITNESS, ORIGINALLY SCHEDULED FOR
13   NOVEMBER 22ND.  OUT OF THE CLEAR BLUE, BECAUSE OF A SCHEDULING
14   ISSUE FOR MS. ROSS, WE WERE TOLD THAT THE DEPOSITION WOULD BE
15   TAKEN OFF CALENDAR AND WE WOULD BE ABLE TO TAKE THE DEPOSITION    10:20
16   ON JANUARY 17TH.
17          SO I GUESS WHAT MR. KEKER AND I ARE SAYING AND
18   MR. McFARLAND IS SAYING IS THAT WHEN YOU READ THROUGH ALL OF
19   THESE PAPERS, FRANKLY, IT DOES SEEM AS THOUGH QUINN EMANUEL
20   LIKES TO HAVE IT UNILATERALLY APPLY TO THEM THAT THEY CAN GET     10:21
21   MORE TIME BECAUSE THEY ARE GOING TO BE PREJUDICED.  BUT ALL OF
22   US ARE DEALING WITH SIMILAR ISSUES AND APPEAR TO HAVE EVEN
23   GREATER ISSUES COMING, WITH AN ADDITIONAL 49 DEPOSITIONS THAT
24   WE'LL PROBABLY OPPOSE.  THERE WERE SET LIMITS BY THE COURT BACK
25   IN THE FEBRUARY HEARING; I'VE READ THE TRANSCRIPT; THERE WAS A    10:21
```

1  CONCERN EXPRESSED BY THE COURT ABOUT EXTENSIONS AND GOING WAY

2  BEYOND THAT NUMBER.  BUT I REALLY HAVE TO CALL INTO QUESTION

3  THIS JANUARY 9TH PREJUDICIAL ISSUE FOR QUINN EMANUEL WHEN THEY

4  THEMSELVES CAN'T MAKE THE WITNESS AVAILABLE TO US UNTIL

5  JANUARY 17TH.                                              10:21

6        **THE COURT:**  I APPRECIATE YOUR COMMENTS, MR. NOLAN,

7  AND ORDINARILY I THINK I WOULD AGREE.

8        THE REASON WHY THE COURT IS, I SUPPOSE, TAKING A

9  GREATER INTEREST WITH THIS PARTICULAR ISSUE IS BECAUSE I THINK

10 IT WAS THE COURT'S STAY THAT AFFECTED THIS DEPOSITION.  I DON'T   10:21

11 HAVE THE HISTORY OF THE DEPONENT THAT YOU MAKE REFERENCE TO

12 BEFORE ME.  I DO HAVE THE HISTORY OF THESE THREE DEPONENTS, AND

13 I THINK I HAVE A FAIRLY CLEAR UNDERSTANDING OF THE ROLE IN

14 THIS, AND I REALLY WANTED TO AVOID -- ALL I'M TRYING TO AVOID

15 NOW IS TO LESSEN OR MITIGATE ANY CONSEQUENCES, ANY ADVERSE      10:22

16 CONSEQUENCES, FROM GIVING YOU THE BENEFIT OF THOSE TWO STAYS

17 THAT I INSTITUTED.  THAT'S ALL I'M TRYING TO ACCOMPLISH HERE.

18        I CERTAINLY DON'T WANT TO BECOME ENMESHED IN

19 MICROMANAGING DISCOVERY DATES.  I UNDERSTAND THAT'S A PART OF

20 THE CIVIL PRACTICE, TO CANCEL AND RESCHEDULE.  I JUST WANT TO    10:22

21 COME UP WITH SOME REASONABLE DATES HERE.  I CERTAINLY DON'T

22 WANT TO GO DOWN THE ROAD -- AND COMMENTS BY MR. KEKER CERTAINLY

23 UNDERSCORE MY RELUCTANCE TO ALTER OUR DISCOVERY CUTOFF DATE.  I

24 WANT TO CONTINUE TO OPERATE IN THE DELUSION THAT WE'RE ACTUALLY

25 WINDING DOWN DISCOVERY AND NOT HEATING UP DISCOVERY; THAT'S THE  10:22

1   COURT'S PERSPECTIVE, AND I'D LIKE TO KEEP IT AS LONG AS I CAN.

2           HAVING SAID THAT, IT SOUNDS LIKE THE BETTER COURSE,

3   MR. McFARLAND, AND BACK TO YOU -- AND I'LL CERTAINLY HEAR

4   WHATEVER YOU MINT WANT TO SAY IN LIGHT OF WHAT MR. NOLAN AND

5   MR. KEKER SAID -- BUT IT SOUNDS LIKE WE PROBABLY SHOULD HAVE      10:23

6   THIS DEPOSITION GO EITHER RIGHT BEFORE OR RIGHT AFTER SHE GETS

7   BACK FROM HER TRIP TO BRAZIL.  I DON'T WANT TO MESS UP HER

8   BRAZIL TRIP.  BUT AT THE SAME TIME, SHE PLAYS A PRETTY

9   IMPORTANT ROLE IN THIS, IT SOUNDS LIKE, AND SHE'S GOT SOME

10  IMPORTANT THINGS TO SAY AND SHE NEEDS TO SAY THEM, AND WE NEED    10:23

11  TO GET THIS WRAPPED UP IN CASE THERE'S SOME FOLLOWUP.

12          **MR. McFARLAND:**  MAY I BE HEARD?

13          **THE COURT:**  YOU MAY.

14          **MR. McFARLAND:**  I THINK IT'S IMPORTANT TO GO BACK TO

15  WHAT THE STANDARD IS.  AND UNDER THE MISSION POWER CASE THE       10:23

16  STANDARD IS THAT THE MOVING PARTY MUST SHOW THAT IT USED THE

17  ENTIRE DISCOVERY PERIOD EFFICIENTLY AND COULD NOT HAVE, WITHOUT

18  DUE DILIGENCE, SOUGHT TO OBTAIN THE DISCOVERY EARLIER IN THE

19  DISCOVERY PERIOD.

20          I DON'T THINK IT'S CONTESTED THAT THEY HAVE KNOWN          10:23

21  ABOUT MS. MARLOW FROM VERY, VERY EARLY ON IN THIS CASE.  THEY

22  COULD HAVE TAKEN HER DEPOSITION BEFORE THIS MATTER WENT UP TO

23  THE NINTH CIRCUIT.  THEY CHOSE NOT TO DO THAT.

24          THEY COULD HAVE NOT TAKEN SUCH AN UNREASONABLE

25  POSITION WITH RESPECT TO THE DOCUMENTS THAT SHE'S BEEN REQUIRED   10:24

1    TO PRODUCE; AND LET'S TALK ABOUT THAT FOR A MINUTE.

2            THEY SERVED A SUBPOENA ON MS. MARLOW THAT ON THE FACE

3    OF IT DOES NOT CALL FOR DOCUMENTS REGARDING TO BRATZ AFTER

4    1-1-01.  IN MEETING AND CONFERRING -- AND THAT WAS ALWAYS OUR

5    ORIGINAL POSITION BACK IN THE OLD DAYS OF THE CASE -- WHAT'S AT        10:24

6    ISSUE HERE IS THE CREATION OF BRATZ; WHAT WAS DONE; WHEN WAS IT

7    DONE; WHO DID IT; ALL THOSE THINGS, THAT'S AT ISSUE.  BRATZ HAS

8    CONTINUED TO GO ON OVER YEARS; HAS HAD DIFFERENT FASHIONS AND

9    DIFFERENT PACKAGING, DIFFERENT OUTFITS.

10           WITH RESPECT TO CARTER BRYANT, JUDGE INFANTE RULED        10:24

11   THAT CARTER BRYANT NEEDED TO PRODUCE DOCUMENTS WITH RESPECT TO

12   LATER VERSIONS OF BRATZ.  MS. WISE TELLS ME ABOUT THIS AT OUR

13   MEET AND CONFER PROCESS.  AND INSTEAD OF MAKING THEM GO THROUGH

14   A WHOLE MOTION PRACTICE -- AND EVEN THOUGH THIS IS A RULE 45

15   SUBPOENA, WHICH OBVIOUSLY THE BALANCING OF INTERESTS IS        10:24

16   DIFFERENT WITH RESPECT TO A RULE 45 SUBPOENA ON A THIRD PARTY

17   AND A DOCUMENT REQUEST ON A PARTY -- INSTEAD OF DOING THAT, I

18   SAID, FINE, WE'LL WORK WITH YOU AND HAVE MS. MARLOW GO BACK,

19   WHO HAD CONTINUING INVOLVEMENT WITH LATER VERSIONS, AND PRODUCE

20   ALL OF THESE DOCUMENTS; WHICH, AGAIN, TODAY, I THINK THEY ARE        10:25

21   COMPLETELY IRRELEVANT TO THE LITIGATION, BUT IT'S VERY TIME

22   CONSUMING; SO WE UNDERTOOK TO DO THAT.

23           WE ALSO HAD TO GO THROUGH, AS YOU KNOW, THIS WHOLE

24   LONG PROCESS WITH OTHER WITNESSES ON THOSE COMPUTER ISSUES,

25   SAYING WE HAD A RIGHT TO OBTAIN THEIR HARD DRIVES; NOT WITH        10:25

1   MS. MARLOW BUT WITH OTHERS; SO WE ATE UP A LOT OF TIME ON THAT.

2        SO WE WENT THROUGH THIS PROCESS; AND AT THE END OF

3   THE DAY, WE GAVE DATES AND, YES, THEY WERE CONTINUED BECAUSE OF

4   THE STAY.  SO I THINK WE HAVE A BIT OF A FALSE ALARM HERE ABOUT

5   MS. MARLOW, WHO THEY HAVE KNOWN ABOUT SINCE 2004 AND NOW WE          10:25

6   HAVE ALL THIS DRAMA SURROUNDING MS. MARLOW.

7        IF THEY REALLY THOUGHT THEY NEEDED HER RIGHT OFF THE

8   BAT, THEY SHOULD HAVE TAKEN HER BACK IN 2004 OR 2005; THAT WAS

9   THEIR CHOICE; THEY DIDN'T DO THAT.

10        THE OTHER THING, JUST FROM A PRACTICAL STANDPOINT,        10:26

11   ABOUT CALENDARING, I HAVE COMMITMENTS ON THE 18TH WITH OTHER

12   CLIENTS.  I MEAN, IT'S IMPORTANT THAT I BE INVOLVED IN THIS,

13   AND I DO HAVE OTHER CLIENT COMMITMENTS WITH YAHOO ON THAT

14   DAY -- I LEAVE THE 19TH FOR MY PARENTS' 50TH WEDDING

15   ANNIVERSARY; I'LL BE BACK AROUND THE 26TH.  MS. MARLOW THEN HAS    10:26

16   HER FAMILY; SHE HAS A LARGE FAMILY; SHE HAS FIVE CHILDREN, A

17   GRANDCHILD; SHE'S MADE HERSELF AVAILABLE BEFORE.  SHE HAS

18   FAMILY IN TOWN THAT WEEK AND THE WEEK AFTER CHRISTMAS, AND THEN

19   WE PUT HER UP ON THE 9TH, WHICH IS THE WEDNESDAY AFTER HER

20   FAMILY LEAVES.                                                 10:26

21        I UNDERSTAND THEY WANT IT; WE HAVEN'T DISAGREED THAT

22   THEY WANT HER DEPOSITION.  WE'VE WORKED WITH THEM TO MOVE THIS

23   PROCESS FORWARD.  BUT THEY ARE NOT WITHOUT BLAME AND THEY ARE

24   NOT WITHOUT HAVING MADE DECISIONS THAT HAVE PUT THEM IN THIS

25   POSITION.                                                      10:27

```
 1              THE COURT:  WITH RESPECT TO THE OTHER TWO,
 2   MS. CLOONAN AND MS. LEAHY --
 3              MR. McFARLAND:  YES.
 4              THE COURT:  -- THE DECEMBER 12TH AND DECEMBER 14TH
 5   DATES, CAN YOU REPRESENT TO THE COURT THAT THOSE DEPOSITIONS        10:27
 6   WILL GO FORWARD ON THOSE DATES, BARRING, OF COURSE, SOME
 7   CONTINGENCY THAT NONE OF US AS HUMANS CAN PREDICT?
 8              MR. McFARLAND:  YES, YOUR HONOR.
 9              THE COURT:  ALL RIGHT.
10              I'LL GIVE MR. QUINN OR MR. ZELLER AN OPPORTUNITY TO      10:27
11   RESPOND TO THE FALSE ALARM, AS IT'S BEING CALLED HERE.
12              MR. QUINN:  WELL, AS THE COURT KNOWS FROM THE PAPERS,
13   WE HAVE ATTEMPTED TO DEPOSE MS. MARLOW SINCE JUNE; THE COURT
14   HAS THE CORRESPONDENCE ON THAT.  THE POSITION OF MS. MARLOW'S
15   COUNSEL WAS THAT ALL DOCUMENT ISSUES HAD TO BE RESOLVED BEFORE      10:27
16   SHE WOULD APPEAR, ALTHOUGH VARIOUS DATES WERE OFFERED OR
17   PROMISED OR GIVEN AT DIFFERENT TIMES.
18              IF YOU THINK ABOUT IT, IF YOU TAKE THE POSITION THAT
19   MY WITNESS IS NOT GOING TO APPEAR UNTIL ALL DOCUMENT ISSUES ARE
20   RESOLVED, THAT CREATES, IF ONE IS INCLINED TO DO IT, A TERRIFIC     10:28
21   WEAPON IN TERMS OF THE POSITIONS ONE TAKES WITH RESPECT TO
22   DOCUMENTS IN ORDER TO PUT OFF THE DEPOSITION, IF ONE THING MUST
23   GO BEFORE THE OTHER.
24              JUST FOR EXAMPLE, WE FINALLY GOT MS. LEAHY'S PLANNER,
25   HER CALENDAR, WHICH WAS, AS COUNSEL REPRESENTS, REDACTED IN THE     10:28
```

1    ENTIRE MONTH OF JUNE 2000, A KEY MONTH; THAT WAS ENTIRELY

2    REDACTED.  WE OBJECTED TO THAT.  HE SAID 'WELL, COME OVER AND

3    TAKE A LOOK AT IT AND SEE IF THERE'S ANYTHING THERE UNDER THOSE

4    REDACTIONS THAT'S SIGNIFICANT.'  WE DID; WE FOUND SOME

5    SIGNIFICANT THINGS; WE SAID 'WE NEED TO SEE THE ORIGINAL                  10:28

6    DOCUMENT WITHOUT THE REDACTIONS.'  THEY SAID 'OKAY, WE'LL

7    PRODUCE IT TO YOU.'  THEN, THEY PRODUCE IT TO US WITH THE

8    REDACTIONS STILL IN PLACE.

9         I MEAN, THIS IS THE PROCESS THAT WE HAVE GONE

10   THROUGH.  I REALLY DON'T THINK ANYBODY CAN SERIOUSLY CONTEND          10:28

11   THAT WE HAVE NOT DILIGENTLY TRIED TO TAKE THIS WOMAN'S

12   DEPOSITION.  SHE'S A KEY PLAYER; WE WOULD HAVE NO REASON FOR

13   PUTTING IT OFF.  I MEAN, WE'RE HERE ON AN EX-PARTE APPLICATION

14   BECAUSE IT'S IMPORTANT; WE WANT TO GET IT DONE; WE EXPECT THERE

15   MAY BE SOME FOLLOW UP.                                                 10:29

16        I SUBMIT, IF SHE CANNOT APPEAR THE WEEK OF THE 17TH

17   OR THE WEEK OF THE 24TH, THEN SHE SHOULD APPEAR THIS WEEK.

18        I MEAN, THIS IS A DEPOSITION THAT, IF THE DATES

19   HADN'T BEEN PULLED, BUT FOR THIS STAY, IT WOULD HAVE BEEN

20   TAKEN.  WE HAVE NO GUARANTEE THE DATES WOULDN'T HAVE BEEN             10:29

21   PULLED, AS THEY HAVE BEEN PULLED IN THE PAST.  BUT THIS IS ONE

22   THAT, IF THE DATES HAD STAYED IN PLACE, WOULD HAVE BEEN TAKEN

23   BY NOW.

24        WE'RE GOING TO BE PREJUDICED IF WE HAVE TO WAIT TO A

25   DATE THAT'S WITHIN TWO WEEKS PLUS A COUPLE OF DAYS OF THE             10:29

```
 1   CUTOFF WHERE THERE'S NO OPPORTUNITY TO DO ANY FOLLOWUP, AND

 2   EVERYBODY I THINK, ASSURED US THERE WASN'T GOING TO BE ANY

 3   PREJUDICE.

 4            IF HER SCHEDULE, AFTER SHE GETS BACK FROM BRAZIL AND

 5   COUNSEL'S SCHEDULE, REALLY IS AS BOOKED WALL TO WALL AS HAS        10:30

 6   BEEN REPRESENTED, THEN THAT DEPOSITION, I SUBMIT, SHOULD GO

 7   FORWARD THIS WEEK.  IT'S UP TO THEM.  WE'LL DO IT THEN OR THIS

 8   WEEK.

 9            MR. McFARLAND:  I HAVE TO SAY SOMETHING.  I'M SORRY,

10   I JUST CAN'T LET THAT GO UNANSWERED.                              10:30

11            I'VE NEVER DEALT WITH MR. QUINN ON ANY OF THESE

12   MATTERS, SO I'M SURE HE'S JUST MISINFORMED.  BUT LET ME JUST

13   TELL YOU THE TRUTH AS TO WHAT OCCURRED WITH RESPECT TO THE

14   PLANNER.

15            THE PLANNER WAS PRODUCED BY PRIOR COUNSEL IN A           10:30

16   REDACTED FORM.  WHY?  BECAUSE MS. LEAHY WAS AN INDEPENDENT

17   CONTRACTOR; MS. LEAHY WORKED FOR MGA AND WORKED FOR OTHER

18   THIRD-PARTY TOY COMPANIES, COMPETITORS OF MATTEL AND MGA.  SHE

19   HAS CONFIDENTIALITY AGREEMENTS WITH THOSE OTHER TOY COMPANIES.

20   AND, IN FACT, MY UNDERSTANDING IS THAT SOME OF THE TOYS SHE       10:30

21   WORKED ON THAT ARE NOTED IN HER PLANNER NEVER EVEN CAME TO

22   MARKET; MAYBE THEY WILL SOME DAY, WE DON'T KNOW, BUT THEY ARE

23   CONSIDERED CONFIDENTIAL.  THAT PLANNER WAS REDACTED.

24            I RECEIVED A MEET AND CONFER LETTER FROM SUSAN WINES

25   WHO WAS A PARTNER AT QUINN WHO IS NO LONGER AT THE FIRM,          10:31
```

```
 1   COMPLAINING THAT SHE THOUGHT SOME ADDITIONAL THINGS SHOULD BE

 2   PRODUCED; SO AGAIN, IN AN EFFORT TO TRY TO MOVE THIS PROCESS

 3   FORWARD AND IN EVERY EFFORT TO TRY TO BE COOPERATIVE, I SAID

 4   'SEND AN ATTORNEY OVER AND LOOK AT THE UNREDACTED PLANNER.'

 5           NOW, I PERSONALLY SAT THERE WITH JENNIFER LEWIS, AN         10:31

 6   ATTORNEY FROM QUINN EMANUEL, WITH THE UNREDACTED, ORIGINAL

 7   PLANNER; NO COPIES, NOTHING; THE ORIGINAL PLANNER.  I

 8   PERSONALLY SAT IN THE ROOM WITH MS. LEWIS WHO LOOKED AT EVERY

 9   SINGLE PAGE WITH NO RESTRICTIONS.  SHE THEN TOLD US WHAT PAGES

10   SHE THOUGHT SHOULD BE ADDITIONALLY PRODUCED, AND WE PRODUCED      10:31

11   THEM.  THAT WHOLE MATTER WAS RESOLVED, IN MY VIEW, WITH

12   MS. WINES WHO WAS IN CHARGE OF IT AT THAT TIME.

13           SO I JUST CAN'T LET GO UNANSWERED THESE KINDS OF

14   STATEMENTS THAT ARE JUST NOT ACCURATE.

15           THE COURT:  I APPRECIATE THAT, COUNSEL.                    10:31

16           GETTING BACK TO WHAT WE HAVE HERE, THOUGH, -- DON'T

17   GO ANYWHERE, MR. McFARLAND -- YOU GET BACK FROM YOUR PARENTS'

18   ANNIVERSARY WHEN?

19           MR. McFARLAND:  I GET BACK FROM THAT ON SATURDAY, THE

20   22ND.  I'M GOING OUT OF TOWN; MY BIRTHDAY IS DECEMBER 23RD AND    10:32

21   WE'RE GOING TO BE OUT OF TOWN FROM THE 23RD THROUGH THE 26TH.

22           THE COURT:  OKAY.

23           MR. McFARLAND:  IT WAS A YEAR AFTER THEIR

24   ANNIVERSARY.

25           (LAUGHTER.)                                                10:32
```

1          **MR. McFARLAND:**  IT ALWAYS SOUNDS A LITTLE CLOSE, YOUR

2     HONOR.

3          **MR. QUINN:**  HE MIGHT NOT BE THE FIRST BORN.

4          **THE COURT:**  THERE'S A LOT OF THINGS I HEAR IN THIS

5     COURT; BELIEVE ME, THAT WOULD NOT BE THE MOST SCANDALOUS.          10:32

6          IN ANY EVENT, I APPRECIATE YOU VOUCHING FOR YOUR

7     PARENTS.

8          **MR. McFARLAND:**  I ALWAYS TRY TO; THEY ARE GOOD

9     PEOPLE.

10         **THE COURT:**  I'M SURE THEY WOULD DO THE SAME FOR YOU.     10:32

11         I WANT TO GIVE MR. QUINN AN OPPORTUNITY TO DO THIS

12    FOLLOWUP DISCOVERY.  I DON'T WANT TO BUST THE DISCOVERY CUTOFF

13    DATE.  IF WE DID THAT DEPOSITION WHEN YOU GOT BACK FROM YOUR

14    BIRTHDAY CELEBRATION AT THE END OF DECEMBER, THE 27TH, THE

15    28TH, THAT WOULD GIVE MATTEL THE FULL MONTH OF JANUARY THEN TO    10:33

16    FOLLOW UP.

17         ARE YOU AVAILABLE EITHER OF THOSE TWO DATES?

18         PLEASE UNDERSTAND THAT THE ALTERNATIVE MAY BE THIS

19    WEEK; SO THINK HARD BEFORE YOU ANSWER.

20         **MR. McFARLAND:**  I CAN MAKE MYSELF AVAILABLE AFTER        10:33

21    CHRISTMAS.  THE WITNESS IS GOING TO BE -- I DON'T KNOW WHAT I'M

22    GOING TO DO.  IT'S CHRISTMAS; SHE HAS HER ENTIRE FAMILY HERE.

23         **THE COURT:**  I DO UNDERSTAND THAT, AND I AM RELUCTANT

24    TO DO THIS, BUT THE ALTERNATIVE IS FOR HER TO DO IT THIS WEEK.

25         **MR. McFARLAND:**  'THIS WEEK' MEANING TOMORROW, OR         10:33

1  THANKSGIVING DAY?

2          **THE COURT:**  I SUSPECT MR. QUINN AND MR. ZELLER WOULD

3  MAKE THEMSELVES AVAILABLE TOMORROW.

4          **MR. McFARLAND:**  WELL, I'M NOT AVAILABLE TOMORROW.

5          **THE COURT:**  WELL, YOU JUST RAISED TOMORROW.                    10:33

6          THIS WEEK OR THE 27TH OR THE 28TH.

7          **MR. McFARLAND:**  I MEAN, IF YOU'RE ORDERING HER TO, I

8  ASSUME SHE'LL COMPLY WITH THE ORDER.

9          I THINK WE'RE GETTING, AGAIN, AHEAD OF OURSELVES WHEN

10  YOU THINK ABOUT A RULE 45 SUBPOENA ON A THIRD-PARTY WITNESS.  I  10:34

11  MEAN, WHO BEARS THE BURDEN AND WHO HAS THE UNCLEAN HANDS HERE

12  AND WHO'S CAUSED US TO BE IN THIS POSITION?  I DON'T THINK IT'S

13  MS. MARLOW.  I CERTAINLY DON'T THINK IT'S ME.  I THINK IT'S THE

14  DECISIONS AND THE PROCESSES THAT QUINN EMANUEL HAS GONE

15  THROUGH, AND NOW THEY ARE CREATING A SENSE OF DRAMA AND A SENSE  10:34

16  OF CRISIS.

17          **THE COURT:**  COUNSEL, I'D RATHER NOT HAVE TO MAKE

18  FINDINGS IN THIS.  IF YOU WANT ME TO MAKE FINDINGS, I'LL BE

19  HAPPY TO DO SO; I'M CERTAINLY ABLE TO DO SO; I'VE CERTAINLY

20  READ ENOUGH INFORMATION TO DO SO.                              10:34

21          I'D RATHER YOU SELECT ONE OF THE TWO OPTIONS I'VE

22  PRESENTED FOR YOU AND LET US CALL IT A DAY.

23          **MR. McFARLAND:**  I WOULD PICK FRIDAY THE 28TH.

24          NOW, CAN I SPEAK TO HER ABOUT IT, OR IS THAT NOT

25  SOMETHING YOU WOULD LET ME DO?                                 10:34

```
 1            I DO THINK SHE'S IN TOWN.  I'M TRYING TO BE HONEST

 2    HERE.  I'M PRETTY FAMILIAR WITH HER SCHEDULE.  I'M FAIRLY SURE

 3    THEY ARE CELEBRATING CHRISTMAS IN TOWN BECAUSE HER FAMILY IS

 4    COMING HERE.  THEY ARE VERY RELIGIOUS.  SO I THINK THAT'S FINE.

 5    BUT HONESTLY, I DIDN'T CLEAR THE TWO DAYS AFTER CHRISTMAS AT       10:34

 6    ALL.

 7            I COULD TRY TO CALL HER.

 8         THE COURT:  VERY GOOD.

 9         WE COULD DO IT THIS FRIDAY AS WELL.

10         MR. McFARLAND:  WOULD YOU LIKE ME TO STEP OUT AND SEE         10:35

11    IF I CAN REACH HER?

12         THE COURT:  WHY DON'T YOU PICK ONE OF THOSE TWO

13    DATES; THIS FRIDAY OR FRIDAY THE 20TH.  IT SOUNDS LIKE THOSE

14    ARE THE ONLY TWO DAYS THERE; NEITHER OF THEM ARE HOLIDAYS;

15    NEITHER OF THEM ARE RELIGIOUS OBSERVANCES; THEY PROVIDE           10:35

16    SUFFICIENT TIME TO GET THE DISCOVERY DONE WITHOUT CHANGING THE

17    DISCOVERY CUTOFF; AND IT RESOLVES THIS ISSUE.  AND I'LL ACCEPT

18    YOUR REPRESENTATION AND WILL NOT NEED TO ORDER YOU TO DO

19    ANYTHING.

20         MR. McFARLAND:  OKAY.                                        10:35

21         THE COURT:  THERE'S A FEW OTHER MATTERS THAT I WANT

22    TO TAKE UP NOT RELATED TO THIS MATTER.  WHAT WE'LL DO IS AT THE

23    END OF THIS HEARING, YOU CAN MAKE THAT PHONE CALL.  IF THERE'S

24    NO PROBLEM WITH IT, I DON'T NEED TO HEAR BACK FROM YOU.  IF

25    THERE IS, WE'LL RECONVENE.                                        10:35
```

1    **MR. McFARLAND:**  DECEMBER 28TH.

2    **THE COURT:**  DECEMBER 28TH, OR, LIKE I SAY,

3    NOVEMBER 23RD IS AVAILABLE AS WELL; LET'S DO IT ON ONE OF THOSE

4    TWO DATES, AND THAT WAY WE CAN MOVE FORWARD ON THIS ISSUE.

5            GIVEN THESE REPRESENTATIONS, THERE'S NO NEED FOR THE            10:36

6    COURT TO GRANT THE EX-PARTE APPLICATION; WE'LL SIMPLY RENDER IT

7    MOOT BY THE REPRESENTATIONS MADE BY COUNSEL.

8            THERE ARE A COUPLE OF ISSUES THAT I WANT TO TAKE UP.

9            ONE CONCERN THAT I HAVE IN THIS CASE -- ALL FEDERAL

10   CASES ARE IMPORTANT, SOME TEND TO BE A LITTLE BIT MORE            10:36

11   SIGNIFICANT THAN OTHERS.  THE COURT VIEWS THIS AS A SIGNIFICANT

12   CASE AND WANTS TO TREAT IT AS SUCH, AND IT'S IMPORTANT THAT

13   COUNSEL DOES THE SAME THING; SO I WANT TO HAVE A CLEAR

14   IDENTIFICATION OF WHO IS THE LEAD COUNSEL FOR THE RESPECTIVE

15   PARTIES.  AND I SAY THIS FOR PURPOSES OF MAKING APPEARANCES AT            10:36

16   HEARINGS; CERTAINLY AT THE TRIAL; APPEARANCES BEFORE THE

17   SETTLEMENT OFFICER.  I WANT TO MAKE SURE WE HAVE A CLEAR

18   UNDERSTANDING.

19           I TOOK A LOOK AT THE DOCKET SHEET AND IT LISTS

20   EVERYBODY AS LEAD COUNSEL, EVERY ATTORNEY OF RECORD IN THIS            10:36

21   CASE IS LISTED IN THE DOCKET SHEET AS LEAD COUNSEL, AND I'M

22   GOING TO CLEAN THAT UP; SO I WANTED TO HAVE LEAD COUNSEL HERE

23   TODAY SO I COULD GET A CLEAR UNDERSTAND OF WHO IT IS THAT'S

24   LEAD COUNSEL.  I'M GOING TO SIMPLY ASK FOR EACH PARTY TO MAKE A

25   REPRESENTATION AS TO WHO IS THE LEAD COUNSEL FOR THAT PARTY.            10:37

```
1            WHY DON'T WE BEGIN WITH THE PLAINTIFF, MATTEL.

2            MR. QUINN:  FOR MATTEL, IT'S ME, YOUR HONOR,

3    JOHN QUINN.

4            THE COURT:  AND FOR MGA?

5            MR. NOLAN:  FOR THE MGA DEFENDANTS AND ISAAC LARIAN,    10:37

6    IT'S TOM NOLAN FROM SKADDEN ARPS.

7            THE COURT:  FOR CARTER BRYANT?

8            MR. KEKER:  FOR MR. BRYANT -- I THINK THIS MAY BE

9    DIRECTED TO ME -- I AM LEAD COUNSEL; JOHN KEKER IS LEAD

10   COUNSEL; I AM TRIAL COUNSEL; I AM TRYING THE CASE.  WHEN THE    10:37

11   PRETRIAL CONFERENCE COMES AND THE TRIAL RESPONSIBILITIES, THOSE

12   ARE MY RESPONSIBILITIES.  CONDUCT OF THE CASE FOR MR. BRYANT IS

13   MY RESPONSIBILITY.

14           BUT THAT DOES NOT MEAN THAT I AM PLANNING TO OR CAN

15   BE AT EVERY EVENT OR COURT HEARING.  AND WHAT WE HAVE DONE --    10:37

16   AND IT'S BECAUSE OF COSTS, IT'S BECAUSE OF, FRANKLY, DIFFERENT

17   SKILLS -- YOU DON'T WANT ME AT A MEDIATION, I THINK.  I MEAN,

18   MY SKILLS ARE MORE TRIAL SKILLS AND NOT MEDIATION SKILLS.  MY

19   PARTNER CHRISTA ANDERSON -- AND I HAVE TALKED TO

20   AMBASSADOR PROSPER ABOUT THIS -- MY PARTNER CHRISTA ANDERSON IS    10:38

21   GOING TO HANDLE MEDIATION MATTERS.  MY PARTNER CHRISTA ANDERSON

22   WILL BE MAKING A NUMBER OF APPEARANCES WHEN WE COME DOWN HERE

23   LIKE THIS.

24           BUT I WOULD HOPE, YOUR HONOR, THAT YOU'D RECOGNIZE

25   THAT IN A CASE LIKE THIS WHERE THERE'S A LOT OF APPEARANCES,    10:38
```

1   THERE'S GOT TO BE SOME KIND OF EFFICIENT USE OF RESOURCES

2   WITHIN THE OFFICE, AND PLANNING, AND THAT A NUMBER OF US HAVE

3   OTHER CASES; AND I DON'T WANT TO BE THE ONE -- I'VE ALREADY,

4   BECAUSE OF MY TRIAL SCHEDULE, CAUSED SOME INTERFERENCE WITH

5   SCHEDULING, AND WE TRIED TO AVOID THAT TOO.                    10:38

6           AND THEN THERE'S THE MATTER OF COSTS.  FRANKLY, I'M

7   MORE EXPENSIVE THAN SOME OF MY PARTNERS.  MR. BRYANT IS PAYING

8   SOME OF THESE FEES; SO THAT'S SOMETHING THAT I BELIEVE, AS A

9   TRIAL LAWYER AND AS A PERSON WHO'S BEEN DOING THIS FOR A LONG

10  TIME, THAT REALLY NEEDS TO BE LEFT UP TO THE LAWYERS.         10:39

11          IF FOR ANY REASON AT ANY TIME, YOU FIND PEOPLE FROM

12  OUR OFFICE REPRESENTING CARTER BRYANT ARE NOT DOING A JOB THAT

13  YOU THINK MR. BRYANT DESERVES AND ANY LITIGANT IN THE FEDERAL

14  COURT DESERVES AND IS NOT TREATING THIS COURT TO THE RIGHT LAW

15  AND THE RIGHT ARGUMENTS AND ISN'T BEHAVING COMPETENTLY, BOY,   10:39

16  I'D LIKE TO HEAR ABOUT IT AND WE'LL TAKE CARE OF IT.  BUT I

17  DON'T THINK THAT'S GOING TO BE A PROBLEM AND I DON'T THINK IT

18  HAS BEEN A PROBLEM.

19          BUT IF YOU'RE EXPECTING ME TO DO EVERYTHING IN THIS

20  CASE OR ALL OF THE COURT APPEARANCES OR ALL OF THE MEDIATION,  10:39

21  I'M NOT PLANNING TO AND I CAN'T.

22          **THE COURT:**  NO, I'M NOT EXPECTING, COUNSEL, AND I

23  HAVEN'T RAISED THIS WITH AN ISSUE WITH RESPECT TO ANY OF THE

24  HEARINGS.  IN FACT, THERE HAVE BEEN SOME HEARINGS WHERE

25  CARTER BRYANT HAS NOT EVEN BEEN REPRESENTED THE ENTIRE HEARING;  10:39

```
1   COUNSEL HAD TO LEAVE IN THE MIDDLE OF THE HEARING, IF I RECALL
2   CORRECTLY, AND I DON'T HAVE A PROBLEM WITH THAT.  WHO YOU SEND
3   TO ARGUE FOR DIFFERENT MOTIONS, THAT'S CERTAINLY A TACTICAL
4   DECISION THAT I WOULD DEFER TO COUNSEL.  THE PRETRIAL
5   CONFERENCE, OF COURSE, I WILL INSIST ON LEAD COUNSEL BEING        10:40
6   PRESENT.  THE TRIAL, OF COURSE, IS A DIFFERENT ISSUE.
7           I DO HAVE CONCERNS ABOUT SETTLEMENT AND MEDIATION.
8           AGAIN, I UNDERSTAND AND I RECOGNIZE THAT DIFFERENT
9   ATTORNEYS HAVE DIFFERENT SKILLS, AND I CERTAINLY RESPECT YOUR
10  OPINION TO DEFER TO YOUR PARTNER ON THAT.                        10:40
11          WHAT I DON'T WANT TO HAVE HAPPEN IS A SITUATION WHERE
12  YOUR ABSENCE IS EVER USED AS AN EXCUSE FOR NOT MOVING FORWARD
13  ON SOMETHING --
14          MR. KEKER:  IT NEVER WILL BE, YOUR HONOR.
15          THE COURT:  -- EVEN IF THAT SOMETHING IS RESOLVING       10:40
16  THE CASE, AND THAT'S THE CONCERN I HAVE.
17          I'VE DONE ENOUGH SETTLEMENT CONFERENCES MYSELF AS A
18  MAGISTRATE JUDGE TO -- WELL, LET'S JUST SAY THAT AFTER FIVE
19  YEARS OF DOING THAT, I CAME TO THE CONCLUSION THAT I COULDN'T
20  THINK OF A CASE WHERE IT WAS NOT IMPORTANT TO HAVE LEAD COUNSEL  10:40
21  PRESENT FOR THE SETTLEMENT CONFERENCE; IF NOT FOR THE FINAL
22  AUTHORITY, JUST AS THE PERSON WHO COULD BEST ARTICULATE THE
23  CLIENT'S POSITION.
24          MR. KEKER:  I APPRECIATE THAT, AND I'M NOT SURPRISED
25  THAT YOU HAVE COME TO BELIEVE THAT.  THERE'S A COUPLE OF THINGS  10:41
```

```
 1   ABOUT THIS CASE, FIRST, IF I COULD SPEAK PRACTICALLY.

 2           THE COURT:  PLEASE.

 3           MR. KEKER:  IF THIS CASE GETS SETTLED, IT'S BECAUSE

 4   MGA -- THE TWO BIG KAHUNAS HERE -- MGA AND MATTEL FIND SOME WAY

 5   TO MAKE PEACE.  CARTER BRYANT IS A PIMPLE ON THIS PROBLEM; I      10:41

 6   WON'T SAY ON WHICH PART OF THIS PROBLEM; BUT HE IS NOT GOING TO

 7   BE THE DRIVER -- I'M NOT SAYING HE'S NOT GOING TO HAVE TO

 8   PARTICIPATE OR SOMETHING IN THE SETTLEMENT, BUT HE'S NOT THE

 9   DRIVER OF THE SETTLEMENT; IT WILL BE THE TWO BIG CORPORATIONS.

10           THAT'S ONE THING.                                        10:41

11           THE SECOND THING IS THAT, IN MY EXPERIENCE, MOST OF

12   THE IMPORTANT WORK IN EXPLAINING TO THE CLIENT ABOUT WHAT'S

13   GOING ON AND WHAT THEIR ROLE IN THE SETTLEMENT IS OFTEN HAPPENS

14   BEFORE YOU EVEN GET TO THE MEDIATION PROCESS.

15           BUT THE THIRD THING IS THAT THE PERSON AT THE            10:42

16   MEDIATION PROCESS THAT YOU WANT IS THE PERSON WHO'S BOTH MOST

17   FLEXIBLE, OPEN MINDED, AND WHO DOESN'T EASILY GET THEIR BACK

18   UP.

19           THE COURT:  AND THAT'S NOT YOU.

20           MR. KEKER:  AND I CAN GIVE YOU A LIST OF MEDIATORS       10:42

21   WHO WILL SAY 'THANK GOODNESS HE'S NOT HERE AT THIS MEDIATION.'

22   AND I CAN ASSURE YOU THAT MS. ANDERSON, AS A VERY SENIOR

23   EXPERIENCED LAWYER AND HAS DONE THIS A LOT FOR BIG COMPANIES

24   LIKE INTEL AND INDIVIDUALS AND SO ON, WILL NEVER BE IN A

25   POSITION TO SAY 'WAIT A MINUTE, I'VE GOT TO CALL KEKER,'         10:42
```

1    BECAUSE THAT'S NOT THE WAY WE OPERATE.  AND SHE'LL BE THE

2    PERSON THERE WITH MR. BRYANT, AND IF THEY HAVE TO MAKE

3    DECISIONS ABOUT PARTICIPATING IN THE SETTLEMENT, THEY WILL BE

4    FULLY EMPOWERED AND READY AND ABLE TO DO THAT.

5         **THE COURT:**  I WILL TAKE YOUR THOUGHTS UNDER              10:43

6    CONSIDERATION AND AS PART OF THE MINUTE ORDER FOR TODAY, I'LL

7    ISSUE A DIRECTIVE ON THAT.  BUT I'LL THINK ABOUT WHAT YOU SAID,

8    MR. KEKER.  I APPRECIATE THAT.

9         **MR. KEKER:**  AND I GUESS THE OTHER THING THAT I JUST

10   WANT TO SAY IS THAT SCHEDULING WITH MS. ANDERSON IS A LOT       10:43

11   EASIER THAN SCHEDULING WITH ME, AND THAT'S ANOTHER PROBLEM THAT

12   I HOPE THE COURT WILL TAKE INTO CONSIDERATION.

13        **THE COURT:**  WHAT'S THAT?  I'M SORRY?

14        **MR. KEKER:**  I'VE GOT MORE THINGS IN DIFFERENT PARTS

15   OF THE COUNTRY MORE OFTEN.  MS. ANDERSON WILL BE CONCENTRATING  10:43

16   ON THIS CASE AND A COUPLE OF OTHER CASES.  I'LL BE, BETWEEN NOW

17   AND THIS TRIAL, CONCENTRATING ON MORE THINGS, WORKING ON MORE

18   THINGS, THAN SHE WILL.

19        **THE COURT:**  THE COURT WOULD EXPECT THAT YOU HAVE

20   CALENDERED THE PRETRIAL CONFERENCE AND THE TRIAL --            10:43

21        **MR. KEKER:**  NEEDLESS TO SAY.

22        **THE COURT:**  -- AND THAT YOU WON'T BE IN ANY OTHER

23   PARTS OF THE COUNTRY DURING THOSE OCCASIONS.

24        **MR. KEKER:**  THAT'S WHAT I DO.

25        **THE COURT:**  AND THE HEARINGS, I'M NOT TALKING ABOUT    10:44

```
 1   THE HEARINGS.  I'M NOT NECESSARILY SOLD ON THE SETTLEMENT
 2   CONFERENCE, BUT I'LL THINK ABOUT THAT AND I WILL LET YOU KNOW
 3   THE COURT'S VIEW OF THAT.
 4          MR. KEKER:  SURE.
 5          MR. QUINN:  YOUR HONOR, WHATEVER THE RULES ARE ON       10:44
 6   THAT, I JUST THINK THEY OUGHT TO BE -- I'M NOT A GIFTED
 7   SETTLEMENT PERSON EITHER.  I COULD ALSO PROVIDE A LIST OF
 8   MEDIATORS WHO WOULD SAY IT'S NOT AMONG MY TALENTS, AND MOST OF
 9   MY CASES ARE OUTSIDE OF THE STATE OF CALIFORNIA TOO; SO
10   WHATEVER THE RULES ARE, I JUST THINK THEY OUGHT TO APPLY THE   10:44
11   SAME TO EVERYBODY.
12          THE COURT:  I APPRECIATE YOUR THOUGHTS ON THAT, AND
13   I'LL TAKE THOSE INTO CONSIDERATION AS WELL AND I'LL GIVE YOU
14   SOME GUIDANCE ON THAT, BUT I REALLY DO WANT -- READING REAMS OF
15   LETTERS AND CORRESPONDENCE BACK AND FORTH, I UNDERSTAND THAT   10:44
16   THIS IS A HOTLY CONTESTED CASE.  I JUST REALLY WANT A GOOD
17   FAITH EFFORT MADE TO TRY TO RESOLVE THIS, AT LEAST ONE SERIOUS
18   EFFORT MADE, AND I APPRECIATE THAT AMBASSADOR PROSPER HAS
19   AGREED TO HELP WITH THIS AND I AM JUST HOPING WE CAN PUT
20   SOMETHING TOGETHER.                                           10:45
21          IF WE CAN'T, WE CAN'T.  THIS MAY BE THE TYPE OF CASE
22   THAT JUST NEEDS A TRIAL, AND IF THAT'S IT, I'LL LOOK FORWARD TO
23   THE TRIAL.  I CONSIDER IT A PRIVILEGE TO HAVE THIS COLLECTION
24   OF ATTORNEYS IN THIS COURTROOM.
25          THE OTHER ISSUE THAT I NEED TO BRING UP, AND THAT IS    10:45
```

1    EX-PARTE COMMUNICATIONS WITH THE COURT.

2           **MR. McFARLAND:**  MAY I STEP OUT NOW TO MAKE THAT PHONE

3    CALL?

4           **THE COURT:**  NO.  ACTUALLY, I WANT YOU TO HEAR THIS AS

5    WELL, COUNSEL, AND THEN I'LL GIVE YOU A RECESS.                    10:45

6           **MR. McFARLAND:**  THANK YOU.

7           **THE COURT:**  ALL COUNSEL SHOULD FEEL COMFORTABLE

8    CALLING MR. HOLMES TO GET INFORMATION FROM THE DOCKET,

9    PRACTICES, WHATEVER IT MIGHT BE.  BUT NOBODY SHOULD BE CALLING

10   MR. HOLMES TO TRY TO MOVE HEARINGS, HAVE PEOPLE EXCUSED FROM       10:45

11   HEARINGS.

12          YOU ALL KNOW, PROBABLY BETTER THAN I, THE PROCEDURES

13   THAT ARE SUPPOSED TO BE USED TO CHANGE THINGS.  YOU'RE ALL

14   CAPABLE OF DRAFTING STIPULATIONS AND PROPOSED ORDERS, EX-PARTE

15   APPLICATIONS AND PROPOSED ORDERS.  DON'T BE USING MR. HOLMES      10:46

16   AND HIS RESPONSIVENESS TO RETURN PHONE CALLS AS A MEANS OF

17   TRYING TO SHORT-CIRCUIT THAT PROCESS AND GET THINGS DONE.

18   THAT'S ALL I'M GOING TO SAY, AND I TRUST YOU'LL ALL TAKE THAT

19   TO HEART.

20          IS THERE ANYTHING FURTHER FROM COUNSEL AT THIS POINT        10:46

21   IN TIME THAT NEEDS TO BE TAKEN UP?

22          **MR. QUINN:**  NOT THAT I'M AWARE OF, YOUR HONOR.

23          **THE COURT:**  MR. NOLAN?

24          **MR. NOLAN:**  I'M NOT THAT DIFFICULT AT MEDIATIONS, BUT

25   I HAVE NOTHING FURTHER TO ADD.                                    10:46

1          **THE COURT:**  VERY WELL.

2          MR. McFARLAND, WHY DON'T YOU GO AHEAD AND MAKE THAT

3     PHONE CALL NOW.

4          **THE COURT:**  MR. SCHEPER?

5          **MR. SCHEPER:**  I WAS JUST THINKING WHETHER I'M EQUALLY          10:46

6     UNGIFTED IN ALL MATTERS OF LITIGATION PROCEEDINGS, BUT BEYOND

7     THAT OBSERVATION, I HAVE NOTHING TO ADD.

8          **THE COURT:**  ANYBODY ELSE?

9          VERY WELL.

10          I'M GOING TO ASK COUNSEL JUST TO WAIT AROUND; LET'S          10:46

11     MAKE SURE WE CAN GET THIS DEPOSITION SCHEDULED, AND THEN WE'LL

12     BE DONE.

13          I WISH EVERYONE A HAPPY THANKSGIVING.

14          **THE CLERK:**  COURT STANDS IN RECESS.

15          (WHEREUPON A BRIEF RECESS WAS HELD.)          10:48

16          (WHEREUPON PROCEEDINGS WERE CONCLUDED.)

17

18                         CERTIFICATE

19

20     I hereby certify that pursuant to section 753, title 28, united
       states code, the foregoing is a true and correct transcript of
21     the stenographically recorded proceedings held in the above-
       entitled matter and that the transcript page format is in
22     conformance with the regulations of the judicial conference of
       the united states.

23

24     _____          _____
       THERESA A. LANZA, CSR, RPR                   Date
25     FEDERAL Official COURT Reporter