1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                  EASTERN DIVISION

4                     - - -

5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                     - - -

7   CARTER BRYANT, ET. AL.,          )
                                     )
8                    PLAINTIFFS,  )
                                     )
9            VS.                   )   NO. ED CV 04-09049
                                     )   (LEAD LOW NUMBER)
10  MATTEL, INC., ET. AL.,           )
                                     )
11                   DEFENDANTS.  )   MOTIONS
    _____)
12  AND CONSOLIDATED ACTIONS,        )
    _____)
13

14

15         REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              RIVERSIDE, CALIFORNIA

17            MONDAY, JANUARY 7, 2008

18                  10:11 A.M.

19

20

21

22

23            THERESA A. LANZA, RPR, CSR
           FEDERAL OFFICIAL COURT REPORTER
24           3470 12TH STREET, RM. 134
           RIVERSIDE, CALIFORNIA  92501
25                951-274-0844
              CSR11457@SBCGLOBAL.NET

```
 1   APPEARANCES:

 2   ON BEHALF OF CARTER BRYANT:

 3                       KEKER & VAN NEST
                         BY:  CHRISTA M. ANDERSON
 4                       710 SANSOME STREET
                         SAN FRANCISCO, CALIFORNIA  94111-1704
 5                       415-391-5400

 6
     ON BEHALF OF MATTEL:
 7
                         QUINN EMANUEL
 8                       BY:  JOHN QUINN
                         BY:  MICHAEL T. ZELLER
 9                       865 S. FIGUEROA STREET,
                         10TH FLOOR
10                       LOS ANGELES, CALIFORNIA  90017
                         213-624-7707
11

12   ON BEHALF OF MGA ENTERTAINMENT:

13                       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                         BY:  THOMAS J. NOLAN
14                       BY:  CARL ALAN ROTH
                         BY:  AMY S. PARK
15                       300 SOUTH GRAND AVENUE
                         LOS ANGELES, CALIFORNIA  90071-3144
16                       213-687-5000

17
     ON BEHALF OF GUSTAVO MACHADO:
18
                         OVERLAND BORENSTEIN COTE & KIM LLP
19                       BY:  MARK E. OVERLAND
                         300 SOUTH GRAND AVENUE
20                       SUITE 2750
                         LOS ANGELES, CALIFORNIA  90071
21                       213-613-4660

22

23

24   /  /  /

25   /  /  /
```

JANUARY 7, 2008                    BRYANT VS. MATTEL

```
 1   APPEARANCES (CONT'D):

 2

 3   ON BEHALF OF NON-PARTY KAYE SCHOLER:

 4                         KAYE SCHOLER LLP
                          BY:  BRYANT S. DELGADILLO
 5                         1999 AVENUE OF THE STARS
                          SUITE 1600
 6                         LOS ANGELES, CALIFORNIA  90067-6048
                          310-788-1341
 7

 8   ON BEHALF OF NON-PARTY STERN & GOLDBERG:

 9                         STERN & GOLDBERG
                          BY:  KIEN C. TIET
10                         6345 BALBOA BOULEVARD,
                          SUITE 200
11                         ENCINO, CALIFORNIA  91316
                          818-758-3940
12

13   ON BEHALF OF NON-PARTY FARHAD LARIAN:

14                         CHRISTENSEN, GLASER, FINK,
                            JACOBS, WEIL & SHAPIRO, LLP
15                         BY:  ALISA MORGENTHALER LEVER
                          10250 CONSTELLATION BOULEVARD
16                         LOS ANGELES, CALIFORNIA  90067
                          310-553-3000
17

18   ON BEHALF OF DEFENDANTS CLOONAN, MARLOW,
     HALPERN, LEAHY, AND ARONT:
19
                          KEATS MCFARLAND & WILSON, LLP
20                         BY:  LARRY W. MCFARLAND
                          9720 WILSHIRE BOULEVARD
21                         BEVERLY HILLS, CALIFORNIA  90212
                          310-777-3750
22

23

24

25
```

```
 1                        I N D E X

 2                                                    PAGE

 3    MOTIONS....................................        5

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

        JANUARY 7, 2008                    BRYANT VS. MATTEL

1      RIVERSIDE, CALIFORNIA; MONDAY, JANUARY 7, 2008; 10:11 A.M.

2                              -OOO-

3            **THE CLERK:**  CALLING CALENDAR ITEM NUMBER FOUR,

4      CARTER BRYANT, PLAINTIFF, VERSUS MATTEL, CASE NUMBER CV-04-9059

5      AND THE CONSOLIDATED DOCKET NUMBERS CV-04-9049 AND 05-2727.        10:11

6            MAY WE HAVE COUNSEL PLEASE STATE YOUR APPEARANCES FOR

7      THE RECORD.

8            **MR. NOLAN:**  TOM NOLAN, CARL ROTH, AND AMY PARK ON

9      BEHALF OF MGA.

10           **MS. ANDERSON:**  CHRISTA ANDERSON ON BEHALF OF          10:11

11     CARTER BRYANT.

12           **MR. OVERLAND:**  MARK OVERLAND ON BEHALF OF

13     MR. MACHADO.

14           **MR. MCFARLAND:**  LARRY MCFARLAND ON BEHALF OF

15     MS. CLOONAN, MS. LEAHY, MS. MARLOW, MS. ARONT, AND MS. HALPERN.   10:11

16           **MS. MORGENTHALER:**  ALISA MORGENTHALER, OF CHRISTENSEN

17     GLASER, ON BEHALF OF NONPARTY FARHAD LARIAN.

18           **MR. TIET:**  KIEN TIET ON BEHALF OF NONPARTY STERN

19     & GOLDBERG.

20           **MR. DELGADILLO:**  BRYANT DELGADILLO ON BEHALF OF        10:11

21     NONPARTY KAYE SCHOLER, LLP.

22           **MR. QUINN:**  JOHN QUINN AND MIKE ZELLER ON BEHALF OF

23     MATTEL.

24           **THE COURT:**  THE COURT HAS SEVERAL MATTERS BEFORE IT

25     ON THIS MATTER.  I HAVE THE MOST RECENTLY FILED MGA'S AND        10:12

1  CARTER BRYANT'S EX-PARTE APPLICATION TO COMPEL NOTICE

2  DEPOSITIONS; THAT WAS SET BY THE PARTIES, AT LEAST BY THE

3  MOVING PARTY, FOR HEARING FOR THIS MORNING.  I DID RECEIVE THE

4  OPPOSITION, AND I HAVE THAT.  I THEN HAVE THREE MOTIONS BROUGHT

5  BY MATTEL; THE MOTION REGARDING THE SEPTEMBER 28, 2000 [SIC]      10:12

6  DISCOVERY MASTER'S ORDER; THE SECOND MOTION IS A MOTION

7  REGARDING THE AUGUST 27, 2007 COURT ORDER; AND THEN FINALLY, WE

8  HAVE THE MOTION BROUGHT BY MATTEL, BASICALLY THE CLARIFICATION

9  ORDER, OR REQUEST FOR A CLARIFICATION ORDER, IN TERMS OF WHAT

10 THE DISCOVERY MASTER HEARS AND DOESN'T HEAR REGARDING THE THIRD  10:13

11 PARTIES.

12         I HAVE DOWN HERE IN MY NOTES THAT 'JUDGE INFANTE

13 HEARS ALL DISCOVERY MOTIONS.'

14         IN ANY EVENT, THAT'S WHAT'S BEFORE ME AT PRESENT.

15         FIRST OF ALL, IS THERE ANYTHING ELSE THAT IS BEFORE      10:13

16 THIS COURT THAT I'M NOT AWARE OF?

17         **MR. QUINN:**  NOT THAT WE KNOW OF, YOUR HONOR.

18         **MR. NOLAN:**  NOT THAT WE'RE AWARE OF.

19         **THE COURT:**  VERY WELL.

20         SO THOSE ARE THE FOUR MATTERS THAT I WANT TO TAKE UP.    10:13

21         LET ME TAKE UP THE MOTIONS FIRST, AND THEN I'LL TAKE

22 CARE OF THE EX-PARTE, JUST TO DEAL WITH THEM IN THE

23 CHRONOLOGICAL ORDER THAT I'VE RECEIVED OR REVIEWED THEM.

24         THE FIRST MOTION THAT I'LL TAKE UP -- IT'S DOCKET

25 ENTRY NUMBER 1134; IT'S THE MOTION REGARDING THE SEPTEMBER 28,   10:13

1  2007 DISCOVERY MASTER ORDER.  I BASICALLY DIVIDED THIS INTO TWO

2  PARTS.  WHAT I'M GOING TO DO IS GIVE YOU MY TENTATIVE THOUGHTS

3  ON IT, AND THEN I'LL CERTAINLY ENTERTAIN WHATEVER ORAL ARGUMENT

4  COUNSEL WISHES TO MAKE AFTER I'VE GIVEN MY THOUGHTS.

5          THE FIRST PART OF THIS ORDER THAT I'VE CONSIDERED IS     10:14

6  THE REQUEST TO EXTEND OR PROVIDE ADDITIONAL TIME FOR MATTEL TO

7  DEPOSE CARTER BRYANT.  THE COURT IS MINDFUL OF THE STANDARD OF

8  REVIEW OF THE DISCOVERY MASTER'S ORDERS, AND IN LIGHT OF THE

9  STANDARD OF REVIEW, THE COURT IS DISINCLINED TO EXTEND THIS

10 TIME ANY FURTHER.     10:14

11          THAT IS NOT TO SAY THAT IF I WAS OPERATING WITH A

12 CLEAN SLATE THAT I WOULD NOT BE PERSUADED BY MATTEL'S ARGUMENT

13 THAT THE AMOUNT OF TIME TO DEPOSE CARTER BRYANT SHOULD NOT HAVE

14 BEEN LONGER TO BEGIN WITH, BUT THE STANDARD HERE IS WHETHER OR

15 NOT THE LEGAL FINDINGS BY THE DISCOVERY MASTER, BY     10:14

16 JUDGE INFANTE, WERE CLEARLY ERRONEOUS OR WHETHER THERE WAS ANY

17 CLEAR FACTUAL ERRORS.

18          THERE'S NO DISPUTE, I DON'T THINK, IN TERMS OF ANY

19 FACTUAL FINDINGS THAT THE DISCOVERY MASTER MADE, AND THERE'S

20 NOTHING CLEARLY ERRONEOUS ABOUT HIS LEGAL CONCLUSION; SO IN THE     10:15

21 ABSENCE OF THAT, MY TENTATIVE IS NOT TO DISTURB THAT FINDING.

22          WITH RESPECT TO THE OTHER DISCOVERY REQUESTS, I GUESS

23 I'M MORE INCLINED TO GRANT SOME LEAVE TO MATTEL TO OBTAIN SOME

24 ADDITIONAL DISCOVERY.  I FEEL THAT A COMBINATION OF EITHER THE

25 STAYS THAT WE IMPLEMENTED IN THE LATTER PART OF LAST YEAR,     10:15

1  COUPLED WITH DELAYS -- AND I'M NOT TRYING TO SUGGEST THAT

2  ANYONE DID ANYTHING WRONG HERE; I'M SIMPLY SUGGESTING THAT

3  THERE APPEAR TO HAVE BEEN DELAYS IN THE PRODUCTION OF SOME

4  DISCOVERY AND THE TIMING OF THE DISCLOSURES, AND THE TIMING OF

5  THE PROVIDING OF THE DISCOVERY -- THAT MAY, IN FACT, WARRANT          10:15

6  THE LEAVE THAT MATTEL IS SEEKING WITH RESPECT TO THAT

7  ADDITIONAL DISCOVERY.

8              AFTER WADING THROUGH THE MATERIALS SUBMITTED TO THE

9  COURT, THAT'S MY INITIAL SENSE OF THIS FIRST MOTION.

10             SO LET ME HEAR FROM WHOMEVER WOULD LIKE TO SPEAK AT       10:16

11 THIS POINT.

12             MR. QUINN, IT'S YOUR MOTION.  YOU MAY PROCEED FIRST.

13             **MR. QUINN:**  THANK YOU, YOUR HONOR.

14             IF I COULD, PERHAPS, YOUR HONOR, BEGIN WITH THE

15 REQUEST FOR ADDITIONAL DISCOVERY OTHER THAN THE ADDITIONAL TIME      10:16

16 FOR THE BRYANT DEPOSITION WHERE THE COURT HAS INDICATED SOME

17 WILLINGNESS TO GIVE FAVORABLE CONSIDERATION TO THAT REQUEST.

18             WHEN YOU START ANY CIVIL LITIGATION, INCLUDING WHAT

19 WAS OBVIOUSLY FROM THE BEGINNING A BUSINESS LITIGATION CASE

20 WHICH WAS HOTLY CONTESTED, WHERE SUBSTANTIAL AMOUNTS WERE AT         10:16

21 ISSUE, IT'S UNDERSTANDABLE THAT STILL ONE WOULD TRY TO SET

22 LIMITS ON WHAT THE SCOPE OF DISCOVERY WOULD BE FROM THE OUTSET.

23 IT'S IN THE PARTIES' INTEREST, AND IT'S OBVIOUSLY IN THE

24 COURT'S INTEREST, AND I THINK UNDER THE FEDERAL RULES, THE

25 COURT OBVIOUSLY HAS A DUTY TO TRY TO DO THAT.  AND THE COURT         10:17

1   INITIALLY DID THAT AND SET A LIMIT OF 24 DEPOSITIONS PER SIDE.

2         AT THE TIME, WE RAISED AN ISSUE THAT WE DIDN'T THINK

3   THAT WAS GOING TO BE ENOUGH, BUT, WELL ENOUGH, THE COURT SAID,

4   LET'S SEE WHAT YOU CAN DO; I DON'T WANT TO SAY THOSE ARE SOFT

5   NUMBERS, BUT LET'S SEE WHAT CAN BE DONE.                          10:17

6         IF WE STAND BACK AND LOOK AT WHAT THIS CASE IS NOW

7   AND WHAT IT'S BECOME, THERE ARE THREE SORT OF MAJOR PARTS TO

8   IT.  THE FIRST PART, THE PHASE ONE, WHAT HAS NOW BEEN SET UP

9   FOR THE PHASE ONE TRIAL, RELATES TO THE ORIGIN OF BRATZ AND

10  CLAIMS FOR DAMAGES OR RESTITUTION OR DISGORGEMENT ARISING OUT    10:17

11  OF THAT, WHICH, IT'S ALLEGED, RUN IN THE BILLIONS OF DOLLARS.

12  THAT'S SORT OF THE FIRST THIRD.

13        THE SECOND THIRD, WE HAVE MGA'S COUNTERCLAIM, WHICH

14  REALLY ADDRESSES A WHOLE HOST OF DIFFERENT KINDS OF ISSUES IN

15  CONDUCT, ADVERTISING, COMMUNICATIONS WITH LICENSING BODIES,      10:18

16  WHICH PUTS IN ISSUE, BY MGA'S ACCOUNT, SOME 200 DIFFERENT

17  PRODUCTS AND CLAIMS WHICH MGA SAYS AMOUNT TO BILLIONS OF

18  DOLLARS WORTH OF CLAIMS; SO THAT'S SORT OF THE SECOND THIRD.

19        THE FINAL THIRD IS THE CLAIM THAT -- WHEN WE --

20  MATTEL AMENDED ITS COUNTERCLAIM BASED ON EVENTS THAT HAD        10:18

21  HAPPENED OR HAD COME TO LIGHT SINCE THE CASE WAS ORIGINALLY

22  FILED, THE TRADE THEFT CLAIMS, THE TRADE THEFT CLAIMS RELATING

23  TO EVENTS IN MEXICO, WHERE, IN FACT, THERE HAD BEEN ARRESTS AND

24  CRIMINAL PROCEEDINGS SIMILARLY IN CANADA, AND WE ALLEGED

25  SIMILAR CONDUCT IN THE UNITED STATES, WHICH RAISED A WHOLE HOST  10:18

1   OF OTHER ISSUES, MOST OF WHICH ARE, PERHAPS, UNRELATED TO BRATZ

2   ITSELF BUT ARE TRADE SECRET THEFT ISSUES.

3           EACH OF THOSE THREE PARTS OF THIS CASE, YOUR HONOR,

4   THEMSELVES, ARE VERY, VERY SUBSTANTIAL CASES WHERE VERY, VERY

5   SUBSTANTIAL AMOUNTS OF MONEY ARE ALLEGED TO BE AT ISSUE; SO WE      10:19

6   STARTED OUT WITH SORT OF A HORSEBACK ASSUMPTION:  LET'S SEE IF

7   WE CAN GET IT DONE IN 24 DEPOSITIONS A SIDE.

8           IN THIS CASE, WHAT THAT BOILS DOWN TO, THEN, IS, FOR

9   EACH OF THOSE THREE MAJOR PARTS OF THIS CASE, THAT'S EIGHT

10  DEPOSITIONS PER CASE.  AND I SUBMIT, YOUR HONOR, THAT             10:19

11  CONSCIENTIOUS LAWYERS, TRYING TO DO A GOOD JOB AND USING THE

12  TOOLS AVAILABLE UNDER MODERN FEDERAL DISCOVERY, SIMPLY COULD

13  NOT ADEQUATELY PREPARE ANY OF THOSE CASES WITH SIMPLY EIGHT

14  DEPOSITIONS.

15          IF THE COURT SAID, REALLY, I'M NOT INCLINED TO BUDGE     10:19

16  FROM THAT, WE'D HAVE A VERY, VERY DIFFERENT KIND OF TRIAL, I

17  SUGGEST, THAN WHAT WE USUALLY HAVE IN FEDERAL COURT TODAY.  IT

18  REALLY WOULD BE WITHOUT THE BENEFIT OF THE FULL EXPLORATION OF

19  THE ISSUES UNDER MODERN DISCOVERY RULES; SO I THINK IT'S PRETTY

20  CLEAR THAT THERE DOES NEED TO BE SOME RELIEF FROM THOSE LIMITS.   10:20

21          AND WHEN WE LOOK AT MGA'S EX-PARTE APPLICATION, I

22  THINK WE'RE GOING TO SEE -- ALTHOUGH IT DOES RAISE SOME

23  SLIGHTLY DIFFERENT ISSUES, I THINK MGA IS ALSO FEELING THE

24  PRESSURE HERE OF TRYING TO GET DONE EVERYTHING THAT THEY

25  BELIEVE NEEDS TO BE DONE IN ORDER TO PROPERLY PREPARE THIS       10:20

```
 1   CASE.
 2           THE COURT:  BUT DISCUSS FOR A MOMENT, IF YOU WOULD,
 3   THE IMPACT YOU SEE THIS HAVING ON THE COURT'S CALENDAR IN THIS
 4   MATTER IN TERMS OF SCHEDULING OF THE TRIAL.  BECAUSE WE WENT
 5   DOWN THIS ROAD A LITTLE BIT AT THE END OF LAST YEAR, AND IT WAS    10:20
 6   REALLY APPARENT THAT IF I BUDGE FROM THE TRIAL DATES, I OPEN UP
 7   A PANDORA'S BOX IN TERMS OF SCHEDULING ISSUES.  I MEAN, A
 8   NUMBER OF PEOPLE ARE INVOLVED IN THIS THING.  THE IDEA OF
 9   TRYING TO COME BACK TOGETHER ON A DATE THAT WORKS IS GOING TO
10   BE HARD.                                                          10:21
11           MR. QUINN:  RIGHT.  AND WE ARE NOT ASKING THE COURT
12   TO CHANGE ANY OF THE SCHEDULE IN ANY RESPECT.
13           THE COURT:  BUT I DON'T WANT TO BE UNREALISTIC
14   EITHER.  I MEAN, IF I DO WHAT YOU'RE ASKING IN TERMS OF
15   DISCOVERY AND IF I DO WHAT THE DEFENSE IS ASKING IN TERMS OF      10:21
16   THEIR EX-PARTE APPLICATION, I HAVE REAL CONCERNS ABOUT THE
17   CONSEQUENCES THAT WILL HAVE FOR THE DISCOVERY CUTOFF DATE WHICH
18   IS LATER THIS MONTH.
19           MR. QUINN:  LAWYERS WOULD BE WORKING VERY HARD.  MOST
20   OF THE DEPOSITIONS THAT WE'VE IDENTIFIED, THAT WE'RE ASKING       10:21
21   FOR, YOUR HONOR, RELATE TO PHASE TWO; SO THAT DISCOVERY CUTOFF
22   DATE RELATES ONLY TO PHASE ONE.  FEET TO THE FIRE, GUN TO THE
23   HEAD, IT'S CONCEIVABLE THERE WOULD BE DOUBLE -- TRIPLE-TRACK
24   DEPOSITIONS.
25           BUT IF WE NEED TO STICK WITH THE CURRENT DATES -- AND     10:21
```

 1   WE'RE MINDFUL OF WHAT THE COURT HAS SAID BEFORE ABOUT DATES,

 2   ALTHOUGH I WILL POINT OUT THAT WHEN WE HAD THE STAY, WE DID

 3   LOSE A WEEK.  THE COURT STAYED MATTERS FOR -- I THINK IT WAS A

 4   HARD STAY OF TWO WEEKS AND A SOFT STAY OF A WEEK, WHATEVER IT

 5   WAS; AND THEN THE COURT WENT BACK AND SLIPPED THE DISCOVERY          10:22

 6   DEADLINE TWO WEEKS, AND WE LOST ONE WEEK THERE.  SO MAYBE THE

 7   FACT THAT I'M EVEN BRINGING THAT UP SUGGESTS THAT THERE'S

 8   SOMETHING TO WHAT THE COURT SAYS.

 9          AND I DON'T MEAN TO SUGGEST THAT IT WOULDN'T BE A

10   DAUNTING SCHEDULE, BUT MY EXPERIENCE IS, LAWYERS, WHEN GIVEN        10:22

11   DEADLINES -- AND THERE'S A CERTAIN AMOUNT OF WORK THAT NEEDS TO

12   BE DONE, YOU WORK TOWARD THOSE DEADLINES, AND TO BE SURE, WE'D

13   HAVE TO WORK VERY HARD, BUT I THINK IT COULD BE DONE.

14          MOST OF THE DEPOSITIONS RELATE TO PHASE TWO MATTERS.

15   SEVERAL OF THEM, YOUR HONOR, ARE PURELY HOUSEKEEPING ISSUES.        10:22

16   FOR EXAMPLE, CARTER BRYANT SAYS HIS INSPIRATION FOR THE BRATZ

17   DOLLS WAS HE WALKED BY KICKAPOO HIGH SCHOOL IN A SMALL TOWN IN

18   MISSOURI ONE DAY, ON THE WAY HOME FROM WORK, OR DROVE BY IT,

19   AND HE SAW THE KIDS AND THEY HAD THIS SORT OF ETHNIC KIND OF

20   BRATTY ATTIRE AND BEHAVIOR THAT HE SAYS WAS THE INSPIRATION FOR     10:23

21   HIS DOLL.

22          WELL, WE'VE GOTTEN THE YEARBOOK FROM KICKAPOO HIGH

23   SCHOOL THAT YEAR, SO WE CAN SEE HOW THE KIDS DRESS, WE CAN SEE

24   WHAT THEY LOOK LIKE, AND WE CAN SEE HOW URBAN THEY WERE.  SO WE

25   ASKED MGA, WILL YOU STIPULATE THAT THIS IS AN AUTHENTIC COPY OF     10:23

1   THE YEARBOOK?  WE MADE THIS REQUEST A MONTH AGO.  WE HAVEN'T

2   HEARD AN ANSWER ON THAT.  MAYBE THEY ULTIMATELY WILL; MAYBE

3   THEY WON'T.  BUT ONE DEPOSITION ON OUR LIST IS THE DEPOSITION

4   OF A DOCUMENT CUSTODIAN OF KICKAPOO HIGH SCHOOL, THE SOLE

5   PURPOSE OF WHICH, YOUR HONOR, IS TO ESTABLISH THAT THIS IS AN          10:23

6   AUTHENTIC COPY OF THE YEARBOOK.

7              AND I DON'T WANT TO SUGGEST THAT THIS KIND OF THING

8   ONLY GOES ONE WAY, YOUR HONOR.  THIS IS A CASE WHERE EVERY

9   FACT, IT SEEMS, IS DISPUTED.  THEY CHIDE US IN THEIR PAPERS FOR

10  TAKING THE DEPOSITIONS OF REPORTERS WHO QUOTE MR. LARIAN, THE         10:23

11  FOUNDER AND CEO OF MGA, GIVING AN ACCOUNT OF THE ORIGIN OF THE

12  BRATZ DOLL WHERE HE SAYS, 'I HAD A CONTEST, AN IDEA CONTEST,

13  AMONG MY EMPLOYEES, AND THIS WAS THE WINNING SUBMISSION.'

14             WE TOOK MR. LARIAN'S DEPOSITION AND SAID, 'IS THAT

15  TRUE?'  COULDN'T GET A STRAIGHT ANSWER.  ASKED FOR A              10:24

16  STIPULATION.  COULDN'T GET A STRAIGHT ANSWER.  SO WE TOOK THE

17  DEPOSITION OF THE REPORTER.  THE SOLE PURPOSE OF THAT

18  DEPOSITION WAS, 'IS THIS WHAT MR. LARIAN TOLD YOU?'  WE HAD TO

19  DO THAT, OBVIOUSLY, IF WE'RE GOING TO HAVE THE EVIDENCE AT

20  TRIAL.  AND ACTUALLY, THEY THEN CROSS-EXAMINED THE REPORTER FOR      10:24

21  MUCH LONGER -- I MEAN, I THINK OUR EXAMINATION WAS A HALF HOUR.

22  THEY THEN CROSS-EXAMINED THE REPORTER FOR MUCH LONGER.

23             SIMILARLY, THERE WAS ANOTHER REPORTER -- THERE'S BEEN

24  VARIOUS ACCOUNTS IN THE PRESS WHERE MR. LARIAN HAS BEEN QUOTED

25  ABOUT THE ORIGIN OF BRATZ -- THERE WAS A SIMILAR DEPOSITION         10:24

1    WITH ANOTHER REPORTER.  THE COURT WILL SEE ON THIS LIST TWO

2    OTHER REPORTERS WHO WE'D LIKE TO DEPOSE.

3            THERE AREN'T REPORTER SHIELD PROBLEMS.  IT'S JUST,

4    'MADAM REPORTER, IS THIS WHAT MR. LARIAN TOLD YOU,' OR 'IS THIS

5    WHAT THE MGA REPRESENTATIVE TOLD YOU.'                        10:25

6            **THE COURT:**  WHY DON'T YOU ADDRESS THE ISSUE THAT I'M

7    DISINCLINED TO GRANT, AND THAT'S THE CARTER BRYANT DEPOSITION.

8            **MR. QUINN:**  OKAY.

9            A FOOTNOTE, YOUR HONOR, ON THE INTERROGATORIES --

10           **THE COURT:**  YES.

11           **MR. QUINN:**  -- WE'RE LIMITED TO 50.  THESE RELATE TO

12   CONTENTION INTERROGATORIES SERVED LAST MARCH; SO IT'S GARDEN

13   VARIETY, STATE ALL FACTS, IDENTIFY ALL WITNESSES.

14           **THE COURT:**  I'M AWARE OF THAT.

15           **MR. QUINN:**  NOW, MR. BRYANT, AGAIN, HE'S           10:25

16   IDENTIFIED -- IF WE GO BACK TO THE TRI-PART DIVISION OF THE

17   CASE --

18           **THE COURT:**  AGAIN, DON'T FOCUS ON THE NEED, BECAUSE

19   I'M PROBABLY WITH YOU ON THE NEED TO DO SO.

20           **MR. QUINN:**  YOUR HONOR, WITH RESPECT TO            10:25

21   JUDGE INFANTE, I THINK HIS RULING THAT NINE ADDITIONAL HOURS

22   ARE ADEQUATE TO PROPERLY EXPLORE MR. BRYANT'S KNOWLEDGE WITH

23   RESPECT TO THE OTHER TWO-THIRDS OF THE CASE IS SIMPLY -- I

24   BELIEVE THAT IS ERRONEOUS, YOUR HONOR.

25           **THE COURT:**  AS A MATTER OF LAW?                   10:26

 1          **MR. QUINN:**  I WOULD SAY SO.

 2          **THE COURT:**  HOW?

 3          **MR. QUINN:**  THERE ARE SOME -- I MEAN, WHAT ARE THE

 4   FACTS THAT WE KNOW?

 5          THERE ARE SOME 200 PRODUCTS, BRATZ PRODUCTS, AT                10:26

 6   ISSUE, MGA SAYS.  THEY SAY THAT HE'S ONE OF TWO PEOPLE WHO HAS

 7   UNIQUE KNOWLEDGE AS TO ALL OF THOSE PRODUCTS.  JUST ON THE FACE

 8   OF IT, YOUR HONOR, NO REASONABLE LAWYER, I SUBMIT, COULD

 9   REASONABLY CONCLUDE THAT THAT'S ADEQUATE TIME IN WHICH TO

10   EXAMINE HIM ON THAT SCOPE OF MATERIAL.                               10:26

11          **THE COURT:**  I UNDERSTAND YOU DISAGREE THAT THAT'S NOT

12   ENOUGH TIME.

13          **MR. QUINN:**  RIGHT.

14          **THE COURT:**  BUT AS A MATTER OF LAW, WHEN

15   JUDGE INFANTE LOOKED AT THIS, HE HEARD, PRESUMABLY, ALL OF          10:26

16   THESE ARGUMENTS, AND HE CONCLUDED THAT IT WAS.

17          I DON'T KNOW HOW I, AS A REVIEWING COURT, AT LEAST

18   WITH RESPECT TO THIS ISSUE, CAN SAY THAT AS A MATTER OF LAW,

19   THAT THAT WAS AN INCORRECT OR LEGALLY UNSOUND FINDING.

20          **MR. QUINN:**  IT WOULD BE MY UNDERSTANDING, YOUR HONOR,     10:27

21   THAT AT SOME POINT, IF A --

22          **THE COURT:**  CERTAINLY, AT SOME POINT.

23          **MR. QUINN:**  I WOULD REFER THE COURT BACK TO THE

24   HEARING WE HAD LAST SUMMER WHERE JUDGE INFANTE HAD ENTERED AN

25   ORDER, BEFORE THE SKADDEN ARPS FIRM WAS INVOLVED AND THE           10:27

1    O'MELVENY FIRM WAS INVOLVED, REQUIRING MGA TO PRODUCE DOCUMENTS

2    BY A CERTAIN DATE.  I THINK IT WAS THE END OF JUNE OR THE FIRST

3    OF JULY, AND THEY WERE IN HERE SEEKING RELIEF FROM THAT, SAYING

4    THAT 'WE CAN'T DO IT.'

5             AT THAT TIME, THIS COURT LOOKED AT THAT AND SAID,      10:27

6    'WELL, I THINK SOME ADDITIONAL TIME IS APPROPRIATE,' AND I

7    BELIEVE GAVE THEM AN ADDITIONAL TWO WEEKS OR 30 DAYS.  I

8    FRANKLY DON'T RECALL WHAT IT WAS.  WE DIDN'T TRIP OVER THE

9    ISSUE ABOUT WHETHER THE THEN-DEADLINE OF JUNE 30TH OR JULY 1ST

10   WAS A CLEARLY ERRONEOUS DEADLINE OR NOT.  IT SEEMED LIKE THE    10:27

11   APPROPRIATE THING TO DO TO THE COURT, AND THE COURT GRANTED

12   SOME ADDITIONAL TIME.

13            I MEAN, I THINK THIS IS AT LEAST A COMPELLING CASE,

14   GIVEN THE CENTRALITY OF THIS WITNESS TO ALL OF THOSE ISSUES ON

15   THE OTHER TWO-THIRDS OF THE CASE, YOUR HONOR.                   10:28

16            I GUESS THAT'S THE BEST I CAN RESPOND ON THAT.

17            **THE COURT:**  VERY WELL.  THANK YOU, MR. QUINN.

18            MR. NOLAN?

19            **MR. NOLAN:**  YOUR HONOR, WOULD YOU PREFER TO HEAR FROM

20   CARTER BRYANT COUNSEL WITH RESPECT TO THAT FIRST ISSUE?         10:28

21            **THE COURT:**  I WILL LEAVE THAT UP TO YOU.

22            **MR. NOLAN:**  WHY DON'T WE DO THAT, AND THEN I'LL

23   ADDRESS THE SECOND PART.

24            **THE COURT:**  VERY WELL.

25            **MS. ANDERSON:**  THANK YOU, YOUR HONOR.  JUST BRIEFLY.  10:28

1      WE FULLY AGREE WITH THE COURT.  AND THE REASON THAT

2  MATTEL'S OPENING MOTION, IN WHICH IT SOUGHT ADDITIONAL TIME

3  WITH MR. BRYANT, DIDN'T ADDRESS THE GOVERNING STANDARD THAT'S

4  BEFORE YOUR HONOR IN TERMS OF REVIEWING JUDGE INFANTE'S RULINGS

5  IS BECAUSE THEY COULDN'T.                                    10:28

6      **THE COURT:**  ADDRESS THIS LAST POINT THAT MR. QUINN

7  MAKES, THAT THIS KIND OF ALMOST INTERNAL CONSISTENCY IF THE

8  COURT DID GRANT A FEW EXTRA WEEKS BACK LAST SUMMER.  I

9  CERTAINLY DON'T HAVE THAT BEFORE ME RIGHT NOW.  BUT I'M

10  STRUGGLING TO COME UP WITH A LEGAL JUSTIFICATION FOR DOING SO  10:29

11  IN LIGHT OF THIS STANDARD.

12      **MS. ANDERSON:**  YOUR HONOR, FIRST OF ALL, I DON'T HAVE

13  ANY PAPERS BEFORE ME ABOUT WHATEVER THIS PRIOR RULING WAS, AND

14  I THINK, EVEN IF THE COURT DID GO SOMEHOW BEYOND ITS AMBIT IN A

15  PRIOR RULING, WHICH I DO NOT KNOW EVER HAPPENED, THAT DOESN'T  10:29

16  JUSTIFY THEN COMPOUNDING THE PROBLEM AND DOING IT HERE.

17      **THE COURT:**  TWO WRONGS DON'T MAKE A RIGHT.

18      **MS. ANDERSON:**  INDEED.

19      AND I SUBMIT, YOUR HONOR, I KNOW THAT MATTEL HAS

20  PLENTY OF ARGUMENTS WHY THEY BELIEVE MR. BRYANT SHOULD SIT FOR  10:29

21  THREE ADDITIONAL DAYS OF DEPOSITION AFTER HAVING ALREADY SAT

22  FOR THREE.  BUT I SUBMIT, THE FINDINGS THAT JUDGE INFANTE MADE,

23  INCLUDING THE FACTUAL FINDING ABOUT HIS ASSESSMENT OF WHAT THEY

24  WERE GOING TO DELVE INTO IN THIS DEPO, THIS IS ALL REHASHING OF

25  STUFF THEY'VE HAD AMPLE OPPORTUNITY TO COVER.  NINE HOURS IS A  10:30

1    LONG TIME THAT THEY WILL HAVE WITH MY CLIENT, YOUR HONOR.

2            **THE COURT:**  THANK YOU, COUNSEL.

3            **MS. ANDERSON:**  THANK YOU.

4            **THE COURT:**  MR. NOLAN?

5            **MR. NOLAN:**  THANK YOU.                              10:30

6            YOUR HONOR, I WOULD BE REMISS IF I DID NOT START OUT

7    BY SAYING THAT LAST EVENING, ONE OF THE LAST THINGS I READ IN

8    PREPARING FOR THE HEARING THIS MORNING WAS THE OCTOBER 31ST

9    TRANSCRIPT.  WHEN I WAS HERE, I WAS JUST KIND OF NEW TO THE

10   CASE AND SAYING WE NEEDED JUST A BRIEF STAY UNTIL JANUARY 15TH   10:30

11   FOR THE DEPOSITIONS.  AND MR. QUINN PROPERLY POINTED OUT THAT

12   WE'RE A BIG FIRM; ALL FIRMS KIND OF PARACHUTE IN; BASICALLY,

13   SUCK IT UP AND GET READY.

14           I HAVE TO TELL YOU, YOUR HONOR, THAT WE HAVE DONE

15   THAT, AND THE NOTION THAT THERE'S BEEN ANY DELAY, I THINK, IS    10:31

16   JUST BELIED BY THE ACTUAL FACTS.  IF I COULD JUST TELL YOU A

17   LITTLE BIT ABOUT WHAT WE'VE BEEN DOING TO GET THIS CASE READY,

18   AND THEN COME UP WITH A PROPOSAL FOR YOU WITH RESPECT TO THE

19   DISCOVERY REQUEST.

20           FROM THE BEGINNING OF TIME IN THIS CASE -- AND QUINN     10:31

21   HAS BEEN THERE FOREVER -- THERE'S BEEN 4,600 REQUESTS FOR

22   ADMISSIONS; 2,865 REQUESTS FOR PRODUCTION; 131 30(B)(6) TOPICS;

23   50-PLUS THIRD-PARTY SUBPOENAS; 63 INTERROGATORIES.  WE'VE

24   PRODUCED, MGA HAS PRODUCED, YOUR HONOR, ABOUT 3.8 MILLION.

25           INTERESTINGLY, QUINN EMANUEL, WHO'S BEEN IN THIS CASE    10:31

1   FOR FOUR YEARS, JUST RECENTLY, ON JANUARY 2ND AND JANUARY 4TH,

2   DOUBLED THEIR PRODUCTION, DROPPED ON US ABOUT A HALF MILLION

3   PAGES OF DOCUMENTS, WITHOUT ANY EXPLANATION AS TO WHY THESE

4   DOCUMENTS WERE NOT PRODUCED.  WE'RE STILL GOING THROUGH THEM.

5           SINCE WE'VE COME INTO THE CASE, SINCE SKADDEN CAME     10:31

6   INTO THE CASE AND MR. QUINN DID NOT WANT TO GIVE THE RELIEF

7   THAT WE REQUESTED, WE WENT TO THE MAT, AS DID MGA, AT ENORMOUS

8   EXPENSE.  WE BROUGHT IN ALMOST 50 LAWYERS TO DEAL WITH

9   OUTSTANDING ISSUES.  WE'VE ANSWERED 2,584 REQUESTS FOR

10  ADMISSIONS; WE'VE ANSWERED 101 INTERROGATORIES; WE'VE PRODUCED   10:32

11  1.6 MILLION PAGES IN DOCUMENTS.  WE HAD TO FILE 17 OPPOSITION

12  BRIEFS TO MATTEL.

13          IF THERE'S ANY NOTION HERE, YOUR HONOR, THAT WE

14  DISAGREE WITH POSITIONS IN DISCOVERY, WITH ALL DUE RESPECT,

15  MATTEL HAS WRITTEN THE BOOK ON THIS.                             10:32

16      **THE COURT:**  THAT'S WHY, MR. NOLAN, I WAS VERY CAREFUL

17  IN MY INITIAL REMARKS THAT I AM NOT SUGGESTING ANY FAULT

18  WHATSOEVER IN YOUR PRODUCTION PATTERN SINCE COMING INTO THE

19  CASE.  I'VE READ WHAT YOU'VE PRODUCED, AND I HAVE A SENSE THAT

20  YOU AND YOUR FIRM HAVE WORKED AS HARD AS HUMANLY POSSIBLE TO DO   10:32

21  WHAT YOU CAN.

22          I GUESS MY TENTATIVE STEMS MORE FROM WHAT I PERCEIVE

23  AS THE GOOD CAUSE SHOWN FOR SOME ADDITIONAL DISCOVERY IN LIGHT

24  OF WHAT IS BEING PRODUCED, AND THE DELAY IN THE SENSE THAT IT'S

25  BEING PRODUCED NOW AS OPPOSED TO EARLIER.  AND I'M NOT           10:33

```
 1   SUGGESTING THAT IT NECESSARILY SHOULD HAVE BEEN PRODUCED

 2   EARLIER OR THAT YOU COULD HAVE PRODUCED IT EARLIER.  IT'S JUST

 3   A SIMPLE FACT THAT THERE ARE MATERIAL THINGS COMING TO LIGHT

 4   NOW THAT SEEM TO THE COURT TO PERHAPS JUSTIFY SOME ADDITIONAL

 5   DISCOVERY; SOME ADDITIONAL DEPOSITIONS, SOME ADDITIONAL           10:33

 6   INTERROGATORIES, ET CETERA.

 7            SO YOU DON'T NEED TO CONVINCE THE COURT, BECAUSE YOU

 8   HAVE ALREADY CONVINCED THE COURT THAT YOU'VE BEEN WORKING

 9   EXTRAORDINARILY HARD AND YOU'VE BEEN DOING ALL THAT YOU CAN.

10   THE DISCOVERY IN THIS CASE IS ON A SCALE THAT I PERSONALLY HAVE   10:33

11   NEVER SEEN IN MY CAREER; SO THAT'S ESTABLISHED.

12            MR. NOLAN:  OKAY.  THANK YOU VERY MUCH, YOUR HONOR.

13            I JUST NEEDED TO SAY THAT FOR THE PEOPLE WHO HAVE

14   BEEN WORKING AROUND THE CLOCK.  I PROMISED THEM I WOULD PUT

15   THAT PITCH IN.

16            THE COURT:  OKAY.  FAIR ENOUGH.

17            MR. NOLAN:  HERE'S THE POINT, THOUGH, YOUR HONOR.  IF

18   YOU READ THEIR PAPERS CAREFULLY, I WOULD RESPECTFULLY DISAGREE.

19   I DON'T BELIEVE THAT THEY HAVE MADE A GOOD FAITH SHOWING THAT

20   ADDITIONAL DISCOVERY IS WARRANTED OR THAT THEY'RE SURPRISED BY    10:34

21   THIS OR THAT THEY WERE PREJUDICED IN ANY WAY BY ANY STAY OR

22   SOFT STAY OR CONTINUANCE FOR A BRIEF PERIOD OF TIME.

23            I THINK THE FACTS ARE QUITE CLEAR AND QUITE DRAMATIC,

24   AND THAT IS, AT A TIME -- TO TAKE YOU BACK TO A TIME WHEN WE

25   WERE NOT HERE; SO THE WORLD WAS AHEAD OF YOU ALL WHEN YOU SET     10:34
```

```
 1   THE SCHEDULES.  MATTEL CAME IN ON THEIR DISCLOSURES IN JANUARY
 2   OF 2007 AND IDENTIFIED SOME 155 FACTUAL WITNESSES, 70 OF WHICH
 3   THEY WANTED TO TAKE A PARTICULAR INTEREST IN.  THEY PROPOSED AT
 4   THAT TIME, WITH FULL KNOWLEDGE OF ALL OF THE ISSUES IN THIS
 5   CASE, AND HAVING BOTH DISCLOSURES IN FRONT OF THEM, A TOTAL OF      10:35
 6   50 DEPOSITIONS.
 7           NOW, I READ THE TRANSCRIPT, YOUR HONOR, AND WITH ALL
 8   DUE RESPECT, I DON'T THINK YOU AND YOUR CLERK -- BECAUSE THE
 9   TRANSCRIPT REFLECTS THAT YOU CONSULTED WITH YOUR CLERK WITH
10   RESPECT TO THIS, AND YOU CAME OUT WITH A NUMBER OF 24.  YOU         10:35
11   NEVER SAID THAT WAS JUST A HORSEBACK KIND OF ANALYSIS.  YOU
12   SAID THAT THEIR NUMBERS WERE DISCONCERTING TO YOU.  AND I
13   BELIEVE THE REASON WHY YOU SAID THAT IS BECAUSE, YOUR HONOR,
14   THAT ALTHOUGH THIS IS A LARGE CASE, THIS ISN'T THE LARGEST CASE
15   AROUND.                                                            10:35
16           I MEAN, MY GOSH, THIS CASE AND THE POSITIONS THAT ARE
17   NOW BEING TAKEN BY MATTEL, WHERE THEY NEED 50 MORE ON TOP OF
18   THE 22 DEPOSITIONS THAT THEY'VE TAKEN, WHICH, WHEN YOU THINK
19   ABOUT IT, JUDGE, IS 22 MORE THAN THEY ASKED YOU FOR AT THE TIME
20   OF THE DISCLOSURE, WITHOUT A LOT OF NEW INFORMATION AVAILABLE.      10:35
21   I THINK, OF THE 50 WITNESSES THAT THEY'RE ASKING PERMISSION TO
22   TAKE, ONLY SIX NAMES ARE NEW.  YOU DO THE MATH.  THE OTHERS
23   WERE ALL IN THE DISCLOSURES.
24           THE COURT:  WHAT ABOUT THOSE SIX NEW WITNESSES?
25           MR. NOLAN:  IF THOSE SIX NEW ADDITIONAL WITNESSES,         10:36
```

```
 1  YOUR HONOR, RELATE TO PHASE ONE, I'M WILLING TO WORK SOMETHING

 2  OUT WITH THEM IN THAT REGARD.  I'M NOT TRYING TO CUT THEM OFF

 3  AT THE KNEES AND SAY, 'LISTEN, TOUGH LUCK, YOU BLEW 24.'  HE'S

 4  TALKING ABOUT HE HAD TO TAKE THE DEPOSITION OF A REPORTER TO

 5  JUSTIFY SOMETHING.  I WASN'T INVOLVED IN THAT.  I GUESS THE      10:36

 6  SOFT ISSUE HE DIDN'T WANT TO GO TO IS, WHY DID THEY TAKE

 7  CARTER BRYANT'S NIECE TO TALK ABOUT THE COMPUTER THAT WAS GIVEN

 8  TO HER AS A GIFT?  BUT THAT'S ALL IN THE BACK.

 9         WHAT I'M INTERESTED IN, YOUR HONOR, IS TRYING THIS

10  CASE ON A SCHEDULE THAT YOU TOLD US TO GET READY FOR.            10:36

11         THE COURT:  I AM AS WELL.

12         MR. NOLAN:  MAY I JUST MAKE A -- BECAUSE I THINK,

13  FRANKLY, THINKING ABOUT ALL OF THIS LAST NIGHT, I HAVE A

14  PROPOSAL THAT, I THINK, ALLOWS THIS TO MAKES SENSE.

15         THE COURT:  LET ME HEAR IT.                               10:36

16         MR. NOLAN:  AND THIS IS NOT BEHIND CURTAIN ONE OR

17  CURTAIN TWO OR CURTAIN THREE.

18         HERE'S WHAT I THINK MAKES ABSOLUTE SENSE, HAVING DONE

19  THIS A LITTLE BIT MYSELF IN BIG CASES BEFORE:

20         MOST OF WHAT THEY'RE ASKING FOR IS PHASE TWO STUFF.       10:37

21  RIGHT NOW, IN FRONT OF US, WE'RE STARING AT A HARD CUTOFF OF

22  JANUARY 28TH.  AND WE'LL LIVE WITH IT, JUDGE.  WE CAN LIVE WITH

23  IT, IF WE GET COOPERATION FROM MATTEL.  AND I'LL DEAL WITH THE

24  EX-PARTE APPLICATIONS IN JUST A MINUTE, BUT HERE'S MY PROPOSAL,

25  YOUR HONOR:                                                     10:37
```

```
 1          THAT THE PARTIES FOCUS ON PHASE ONE DISCOVERY.  IF

 2   JOHN QUINN OR MIKE ZELLER COMES TO ME AND SAYS, 'WE NEED THREE

 3   MORE WITNESSES FOR DEPOSITION FOR PHASE ONE ISSUES,' I'M FINE.

 4   WE MADE THAT PROPOSAL.  BUT IT'S ALWAYS 50 OR NOTHING.

 5          LET'S FOCUS AND NARROW THE ISSUES TO BRING THIS CASE      10:37

 6   HOME FOR YOU, YOUR HONOR, ON THE SCHEDULE THAT YOU HAVE SET AND

 7   EVERYBODY HAS BEEN LIVING UP TO.

 8          LET'S TALK ABOUT TODAY SAYING TO THE PARTIES,

 9   'COMPLETE DEPOSITIONS BY JANUARY 28TH.  IF YOU HAVE, HOWEVER,

10   SCHEDULING ISSUES' -- BECAUSE ONE, FOR INSTANCE, MATT            10:38

11   (UNINTELLIGIBLE) IS OUT OF TOWN.  THEY WANT ISAAC LARIAN ONCE

12   MORE, BUT ISAAC HAS TO GO TO THE HONG KONG TOY FAIR IN NEW

13   YORK; SO THERE'S A SCHEDULING ISSUE WITH RESPECT TO HIM THAT WE

14   MIGHT NOT BE ABLE TO GET HIM IN BEFORE JANUARY 28TH.  LET'S

15   WORK TOGETHER TO IDENTIFY --                                     10:38

16          THE COURT:  SLOW DOWN.

17          MR. NOLAN:  THERE CAN BE A LITTLE BIT OF WIGGLE ROOM

18   ON THE 28TH, BUT WE TRY TO GET EVERYTHING IN BY THE 28TH.

19   WE'LL DOUBLE TRACK; WE'LL TRIPLE TRACK.  I MEAN, EVERYBODY HAS

20   TOO MANY LAWYERS ON THIS CASE.  WE CAN DO THAT.                  10:38

21          THE COURT:  SO ARE YOU SAYING THAT YOU WOULD BE

22   WILLING TO WAIVE ANY OBJECTIONS OR YOU'D STIPULATE TO AN

23   INCREASE IN THE NUMBER OF DEPOSITIONS?

24          MR. NOLAN:  FOR A VERY LIMITED NUMBER.

25          THE COURT:  FOR PHASE ONE.                                10:38
```

1      **MR. NOLAN:**  IF THEY'RE RELATED TO PHASE ONE.

2      WHY SHOULD WE, RIGHT NOW, JUDGE, WITH JUDGE INFANTE

3  BURIED, WITH YOUR HONOR -- I MEAN, THE ELECTRONIC FILING

4  SYSTEM -- I'M AFRAID WE'RE GOING TO BURN THE SYSTEM WITH THE

5  NUMBER OF DOCUMENTS THAT ARE BEING FILED IN THIS CASE.          10:39

6      **THE COURT:**  SOMEONE BROKE THE PLASTIC COURTESY BOX

7  THAT WE HAD IN THE BACK.

8      **MR. NOLAN:**  THAT WAS QUINN EMANUEL.

9      **THE COURT:**  YOU'RE SURE IT WAS?

10      **MR. NOLAN:**  I'M POSITIVE; THEY FILED MORE PAPERS THAN   10:39

11  ANYBODY ELSE.

12      **THE COURT:**  SOMEBODY BROKE IT.

13      **MR. NOLAN:**  BUT TO BE SERIOUS, YOUR HONOR -- LET'S

14  COME BACK TO MY OTHER PROPOSAL THAT WE FOCUS ON PHASE ONE.

15      THERE ARE HEARINGS THAT ARE CURRENTLY SCHEDULED FOR     10:39

16  JUDGE INFANTE ON FEBRUARY 8TH.  THEY'RE ALL, EXCEPT FOR ONE,

17  COMPLETELY BRIEFED.  THEY'RE ALL READY TO GO.  JUDGE INFANTE

18  HAS BEEN DOING THE LORD'S WORK.  IT IS UNBELIEVABLE THE AMOUNT

19  OF WORK THAT HE HAS BEEN DOING IN THIS CASE, ON TOP OF ALL OF

20  HIS OTHER CLIENTS THAT HE HAS COMMITTED.  AND EVEN KNOWING THAT  10:39

21  WE HAVE JANUARY 28TH COMING UP, HE CAN'T HEAR SOME VERY

22  SIGNIFICANT MOTIONS UNTIL FEBRUARY 8TH.

23      THE EXPERT REPORTS IN THIS CASE ARE DUE

24  FEBRUARY 11TH.  MANY OF THE ISSUES ON THE FEBRUARY 8TH CALENDAR

25  ARE ISSUES THAT DIRECTLY RELATE TO GETTING DOCUMENTS NECESSARY  10:40

1   FOR OUR EXPERT PREPARATION.

2           HERE'S THE WORST PART OF MY PROPOSAL:  I'M WONDERING

3   WHETHER OR NOT, WITH RESPECT TO THE MATTERS THAT HAVE BEEN

4   BRIEFED AND ARE READY TO GO -- AND THERE'S ONE THAT THEIR

5   OPPOSITION IS DUE A LITTLE BIT LATER THIS WEEK, AND I WAS GOING   10:40

6   TO TWEAK THAT A LITTLE BIT -- I WAS WONDERING WHETHER OR NOT

7   THOSE MATTERS -- AND THERE'S MAYBE FOUR MATTERS -- POSSIBLY

8   COULD BE HEARD BY MAGISTRATE BLOCK AS EARLY AS NEXT WEEK.

9   THEY'RE ALL BRIEFED.

10          ALL OF THE PARTIES COULD GIVE TO THE MAGISTRATE, OR   10:40

11  WHICHEVER MAGISTRATE THE COURT MIGHT ASK -- WE COULD GET ALL OF

12  THE BRIEFS TO THEM BY THE CLOSE OF BUSINESS TOMORROW.  WE COULD

13  DO IT BY THE END OF TODAY; THEY'VE ALL BEEN PREPARED.  I THINK

14  YOU HAVE ALL OF THEM THAT HAVE BEEN FILED IN FRONT OF

15  JUDGE INFANTE.  BUT WE COULD PACKAGE THEM ALL TOGETHER, HAVE   10:41

16  THOSE MATTERS HEARD NEXT WEEK BY A MAGISTRATE, GET THE RULINGS.

17  IF THE DISCOVERY IS ORDERED, PARTIES MOVE QUICKLY TO GET THE

18  DISCOVERY READY AND GET GOING.

19          **THE COURT:**  THE CONCERN THAT I WOULD HAVE IS -- YOU

20  KNOW, JUDGE INFANTE HAS DEVELOPED, I'M SURE, A CERTAIN DEGREE   10:41

21  OF INSTITUTIONAL MEMORY ASSOCIATED WITH THIS CASE, AND TO

22  SADDLE JUDGE BLOCK OR ANY OTHER JUDGE IN THIS COURT WITH THOSE

23  TYPES OF MOTIONS OUT OF NOWHERE, WITH NO BACKGROUND, I THINK

24  THAT WOULD PROBABLY BE A PRETTY ONEROUS IMPOSITION.

25          **MR. NOLAN:**  JUDGE BLOCK WAS INVOLVED IN THIS CASE   10:41

1   EARLY ON, YOUR HONOR.  HE DID RULE ON SEVERAL MATTERS.  I CAN'T

2   GIVE YOU THE FULL COUNT.

3           I CAN SAY THAT MANY OF THESE ARE STRAIGHT-UP MOTIONS

4   THAT PRESENT ISSUES OF FACT THAT ARE NOT NECESSARILY TIED TO

5   HAVING PARTICIPATED IN THE FIRST THREE QUARTERS OF THE GAME.    10:41

6   IT'S NOT THAT WE'RE BRINGING IN SOMEBODY FROM A NEW TEAM.

7           I THINK THAT IT'S POSSIBLE.

8           OTHERWISE, YOUR HONOR, WE'RE LOOKING AT A SCHEDULE IN

9   FRONT OF JUDGE INFANTE ON FEBRUARY 8TH FOR HEARINGS THAT,

10  DESPITE HIS BEST EFFORTS, HE COULDN'T HANDLE ON JANUARY 3RD.    10:42

11  HE'S GOT A TELEPHONIC CONFERENCE TOMORROW ON SOME THIRD-PARTY

12  ISSUES; JANUARY 10TH, HE HAS THAT HEARING.

13          BUT IN ORDER FOR THIS IDEA TO WORK, YOUR HONOR -- I

14  DON'T KNOW WHETHER OR NOT YOU REALLY NEED THE HISTORY.

15          THE GOOD NEWS ABOUT THE LAWYERS IN THIS CASE, THEY      10:42

16  REPEAT EVERYTHING IN THE PAPERS; SO FRANKLY, SOMEONE PICKING

17  UP -- I THINK IT'S POSSIBLE, YOUR HONOR.

18          THERE'S ONE OTHER ISSUE THAT WOULD HAVE TO BE

19  CHANGED, AND THAT IS THAT THERE'S AN OPPOSITION THAT MATTEL HAS

20  TO FILE ON THE 11TH.  THEY HAD ASKED FOR -- I THINK THEY GOT    10:42

21  SOMETHING, LIKE, A 20-DAY EXTENSION OF TIME TO FILE IT BECAUSE

22  OF THE HOLIDAYS.  IF THEY FILED IT ON THURSDAY RATHER THAN

23  FRIDAY, I COULD COMMIT TO FILING OUR PAPERS ON SUNDAY EVENING

24  SO THAT THOSE COULD ALL BE HEARD NEXT WEEK IN FRONT OF THE

25  MAGISTRATE.                                                     10:43

```
 1          THEN I WOULD SAY, YOUR HONOR, THAT WE COULD HAVE OUR

 2   HEARING ON JANUARY 17TH, WHICH WOULD BE THE HEARING ON THESE

 3   OUTSTANDING MOTIONS THAT RELATE TO PHASE ONE ISSUES.  WE COULD

 4   GET THE RULING.  IF IT'S GRANTED, WE TAKE THE DISCOVERY RIGHT

 5   AWAY, AND WE HAVE THAT DISCOVERY AVAILABLE FOR THE EXPERTS ON      10:43

 6   FEBRUARY 11TH.

 7          NOW, IF JOHN OR MIKE COME TO ME AND SAY WE NEED THREE

 8   MORE DEPOSITIONS, I'M WILLING TO WORK THAT OUT, YOUR HONOR.

 9   I'M NOT HOLDING IT TO 22 OR 24.  I WANT TO SET ASIDE THIS

10   NONSENSE ABOUT HOW YOU COUNT DEPOSITIONS.  WE THINK THAT WHEN      10:43

11   WE GET TO THE EX-PARTE ARGUMENT, I'LL TELL YOU THAT THAT IS A

12   LITTLE BIT LATE IN THE GAME.  WE THINK IT'S A LITTLE BIT

13   DISINGENUOUS AT THIS POINT IN TIME.  BUT IT CANNOT BE, YOUR

14   HONOR, IT CANNOT BE, THAT WHEN YOU THINK OF THE HARD SCHEDULE

15   THAT YOU PUT IN, WHAT YOU ASKED MGA AND US TO STEP UP TO          10:43

16   PROPERLY, NOTHING WRONG WITH THAT.  WE DID IT.  WE DID IT.  TO

17   NOW SOFTEN IT BECAUSE OF ALLEGED PRODUCTION ISSUES, WHERE,

18   FRANKLY, YOUR HONOR, MOST OF THE PRODUCTION HAD ALREADY TAKEN

19   PLACE BEFORE THAT DISCOVERY.

20          THE PROPOSAL THAT I HAVE COME UP WITH, YOUR HONOR,          10:44

21   ALLOWS US TO GET PHASE ONE DONE.  IT DOES REQUIRE PHASE TWO TO

22   BE PUT ON THE BACK BURNER.

23          WHEN I SUGGESTED THAT EARLIER, IT WAS A DIFFERENT

24   TIME AND A DIFFERENT PLACE.  YOUR CONCERN, RIGHTFULLY SO, WAS,

25   'GEE, WE'RE GOING TO HAVE MORE BATTLES, NOLAN, BECAUSE WHO CAN     10:44
```

```
 1   TELL WHETHER OR NOT IT'S PHASE ONE OR PHASE TWO?'

 2          THAT ISSUE IS REMOVED BECAUSE OF THE HARD DISCOVERY

 3   STAY ON JANUARY 28TH.  IF WE FOCUS ALL ON PHASE ONE --

 4          THE COURT:  LET ME HEAR MR. QUINN'S RESPONSE TO YOUR

 5   PROPOSAL.  AND I DON'T MEAN TO MOVE YOU ALONG HERE, BUT WE HAVE    10:44

 6   TO MOVE YOU ALONG.

 7          MR. QUINN, WHAT'S YOUR THOUGHT ON --

 8          MR. QUINN:  YOUR HONOR, BECAUSE I'M NOT INTIMATELY

 9   FAMILIAR WITH THE MATTERS THAT ARE TEED UP BEFORE JUDGE INFANTE

10   ON THAT PORTION AND THE IDEA THAT BE DEFERRED TO MAGISTRATE        10:45

11   BLOCK, I'D LIKE TO DEFER THAT TO MR. ZELLER.

12          BUT BEFORE I DO THAT, IF I COULD RESPOND TO THE

13   PROPOSAL.

14          THE COURT:  PLEASE.

15          MR. QUINN:  WHAT I'M HEARING IS THAT MR. NOLAN IS          10:45

16   PREPARED, IF WE REALLY NEED IT, TO GIVE US THREE MORE

17   DEPOSITIONS ON PHASE ONE TOPICS.

18          THE COURT:  I DON'T THINK HE'S LOCKED INTO THREE.  I

19   THINK HE WAS USING THREE AS AN EXAMPLE.  BUT I THINK WHAT HE'S

20   RELUCTANT TO DO IS GIVE YOU A BLANK CHECK.                        10:45

21          WHAT I'M HEARING IS THAT IF YOU CAN IDENTIFY THOSE

22   PARTICULAR DEPOSITIONS OR THAT PARTICULAR DISCOVERY THAT YOU

23   NEED TO COMPLETE THE PHASE ONE DISCOVERY -- AND I DO ACCEPT THE

24   NOTION THAT WE'RE AT A DIFFERENT POINT NOW THAN WE WERE SEVERAL

25   MONTHS AGO IN TERMS OF BEING ABLE TO IDENTIFY WHAT IS PHASE ONE   10:46
```

```
 1   AND PHASE TWO.  I MEAN, WE SHOULD BE NEARING THE END.  YOU

 2   SHOULD HAVE A PRETTY CLEAR SENSE OF WHAT YOU NEED TO TRY YOUR

 3   CASE AND WHAT THEY NEED TO TRY THEIR CASE.

 4        MR. QUINN:  RIGHT.

 5        THE COURT:  I THINK WE SHOULD BE AT A POINT WHERE       10:46

 6   PEOPLE OF THE CALIBER THAT ARE GATHERED HERE SHOULD BE ABLE TO

 7   SAY, 'THIS IS WHAT WE NEED TO PIN DOWN BEFORE WE CAN GO TO

 8   TRIAL.'  AND YOU NEED SOME MORE; THEY NEED SOME MORE; LET'S GET

 9   THAT DONE.

10        THAT SUGGESTION IS SOMETHING THAT RESONATES WITH THE    10:46

11   COURT QUITE WELL.  IT REQUIRES THE LEVEL OF MATURITY THAT IS

12   NOT ALWAYS PRESENT IN LITIGATION, BUT I TRUST IS PRESENT IN

13   THIS COURTROOM.

14        MR. QUINN:  YOUR HONOR, I THINK THERE IS SOME WISDOM

15   THERE.  THE DEVIL IS IN THE DETAILS.                         10:46

16        THE COURT:  AS ALWAYS.

17        MR. QUINN:  LET ME SAY THAT JUST, FOR EXAMPLE, THE

18   WEEK BEFORE LAST, WE TOOK -- AND THIS IS SOMETHING THAT

19   HAPPENED SINCE THIS MOTION WAS FILED -- WE TOOK THE DEPOSITION

20   OF A PERSON NAMED VERONICA MARLOW, WHO IS THEIR VENDOR FOR     10:46

21   FASHION DESIGN FOR BRATZ, AND LEARNED IN THE COURSE OF THAT

22   DEPOSITION THAT THREE MATTEL EMPLOYEES OTHER THAN CARTER BRYANT

23   HAVE BEEN WORKING ON BRATZ FOR YEARS.  THAT WAS THE TESTIMONY.

24        THIS WAS NEWS TO US.

25        MOREOVER, SHE TESTIFIED THAT SHE HAD A CONVERSATION      10:47
```

1   WITH AN MGA EXECUTIVE ABOUT THIS, WHERE SHE REFUSED TO ANSWER

2   POINTED QUESTIONS ABOUT WHETHER THERE WAS SOMEBODY ELSE AT

3   MATTEL WORKING ON THIS.

4         I SUBMIT, YOUR HONOR, THAT IS BLOCKBUSTER TESTIMONY,

5   IN OUR VIEW.  WE THOUGHT THIS WAS JUST CARTER BRYANT; SO              10:47

6   THERE'S THREE EMPLOYEES, TWO OF WHICH ARE FORMER EMPLOYEES NOW,

7   AND THIS EXECUTIVE, MEL WOODS -- HIS NAME ISN'T EVEN IN THIS

8   LIST THAT WE'VE SUBMITTED -- THAT I THINK WE NEED TO TAKE THEIR

9   DEPOSITIONS.

10         NOW, MR. NOLAN BANDIED ABOUT THE NUMBER OF 50.  THE          10:47

11   NUMBER ISN'T 50.  WE'VE LISTED THE DEPOSITIONS IN OUR PROPOSED

12   FORM OF ORDER THAT WE SUBMITTED TO THE COURT.  I DO THINK WE

13   COULD SIT DOWN AND SAY THIS GROUP -- AND MOST OF THEM ARE -- IS

14   TRULY JUST PHASE TWO.  THERE'S GOING TO BE A SIGNIFICANT

15   CATEGORY THAT ARE BOTH PHASE ONE AND PHASE TWO, AND THEN THERE      10:48

16   WILL BE SOME SMALLER NUMBER WHICH ARE PHASE ONE ALONE.

17         **THE COURT:**  THIS IS HELPFUL IN TERMS OF THE COURT

18   FASHIONING AN ORDER FOR THIS MOTION.

19         **MR. QUINN:**  IN TERMS OF MR. BRYANT, YOUR HONOR, AND

20   WHAT HAPPENED LAST FALL -- AND COUNSEL FOR MR. BRYANT SAID SHE      10:48

21   DIDN'T HAVE ANYTHING BEFORE HER ABOUT THE ORDER THAT THE COURT

22   ENTERED.  WE RAISED THIS IN OUR MOVING PAPERS.  WE CALLED THE

23   COURT'S ATTENTION -- REMEMBER WHEN THEY WERE HERE BEFORE,

24   ASKING TO CUT SOME SLACK FROM THE MAGISTRATE'S ORDER.  IN THE

25   MOVING ORDERS, PAGE 24, WE DISCUSSED THAT, AND AGAIN IN OUR         10:48

```
 1   REPLY PAPERS ON PAGE 11; SO I SUBMIT, WE DID TEE UP THAT ISSUE.

 2   THIS IS AT LEAST AS COMPELLING A SITUATION TO TAKE ANOTHER LOOK

 3   AT WHAT JUDGE INFANTE RULED.

 4           WITH RESPECT TO THE NIECE, THE NIECE HAD HIS

 5   COMPUTER.  WE WENT THROUGH A RUNAROUND TO GET HIS COMPUTER.  WE    10:48

 6   FOUND THIS 'EVIDENCE ELIMINATOR' -- THAT'S THE NAME OF A

 7   PROGRAM; IT'S NOT A GREAT NAME -- ON THE COMPUTER, AND JUST TO

 8   GET ASSURANCE THAT SOMEBODY WASN'T GOING TO SAY -- NOW, TELL ME

 9   I'M BEING TOO DEVIOUS AND OVER THINKING THIS HERE -- THAT

10   SOMEBODY MIGHT SAY THE NIECE PUT 'EVIDENCE ELIMINATOR' ON THE      10:49

11   COMPUTER.  WE TOOK HER DEPOSITION FOR ONE HOUR AND 15 MINUTES;

12   THAT WAS IT.

13           SO IF THE PROPOSITION IS THAT --

14           THE COURT:  A LONG TIME TO ASK A QUESTION.

15           MR. QUINN:  YEAH.                                          10:49

16           THE COURT:  ALL RIGHT.

17           MR. QUINN:  IF THE PROPOSITION IS THAT MR. NOLAN AND

18   I SHOULD SIT DOWN AND FIGURE OUT WHICH ARE TRULY PHASE ONE AND

19   WHICH ARE SORT OF A MIX AND WHICH ARE PHASE TWO AND WE CAN

20   FORGET ABOUT FOR NOW, I'M SURE WE CAN DO THAT.  BUT, AGAIN, I      10:49

21   UNDERSCORE THE IDEA, IT'S NOT GOING TO BE THREE, AND IT'S NOT

22   GOING TO BE TEN; IT'S GOING TO BE MORE THAN THAT THAT WE NEED

23   FOR PHASE ONE.

24           THE COURT:  I'LL TRY TO PROVIDE AS MUCH GUIDANCE AS I

25   CAN IN THE COURT'S ORDER.                                         10:49
```

1          **MR. ZELLER:**  I'D JUST LIKE TO ADD, YOUR HONOR -- AND

2    I'M NOT TRYING TO FAULT MR. NOLAN -- I WAS THE ONE WHO

3    DISCUSSED WITH HIS COLLEAGUES THE VERY PROPOSAL THAT HE'S

4    MAKING HERE NOW, IN WHICH I ASKED WHETHER OR NOT THERE WERE AT

5    LEAST SOME PEOPLE ON OUR LIST, WHICH WE GAVE TO THEM IN ADVANCE          10:50

6    OF ALL OF THIS, THAT THEY WOULD AGREE TO.  WE GOT AN ANSWER OF,

7    NO, THAT THEY WOULDN'T AGREE TO ANY OF THEM.

8          **THE COURT:**  WELL, HOPEFULLY, THE COURT'S ORDER WILL

9    PROPEL AND MR. NOLAN'S STATEMENTS TODAY WILL RESOLVE THAT.

10         I'M GOING TO MAKE YOUR JOB A LITTLE EASIER HERE,          10:50

11   BECAUSE THE COURT DOESN'T TAKE THE SUGGESTION WELL IN TERMS OF

12   SENDING THIS TO A MAGISTRATE JUDGE AT THIS POINT.  I JUST DON'T

13   THINK THAT WOULD WORK FOR A NUMBER OF REASONS, SOME THAT HAVE

14   NOTHING TO DO WITH -- THAT ARE INTERNAL TO THE COURT'S

15   OPERATIONS.          10:50

16         **MR. ZELLER:**  YOU'RE REFERRING TO THE REFERENCE OF

17   SOME OF THOSE MOTIONS TO JUDGE BLOCK?

18         **THE COURT:**  OR TO SOME OTHER MAGISTRATE JUDGE, YES.

19         **MR. ZELLER:**  AND NOT TO BELABOR THE POINT, I BELIEVE

20   THE COURT HAS REACHED A DETERMINATION ON THAT, BUT SOME OF          10:50

21   THOSE MOTIONS THAT ARE UP IN FRONT OF JUDGE INFANTE ACTUALLY

22   HEAVILY INVOLVE HIS PRIOR RULINGS AS WELL; SO THAT WOULD BE

23   PARTICULAR INEFFICIENCY, I THINK, ON TRYING TO MOVE THOSE OVER

24   TO JUDGE BLOCK.  THEY ARE NOT DISCRETE ISSUES, AS HAS BEEN

25   SUGGESTED.          10:51

```
 1              THE COURT:  VERY WELL.

 2         I'M GOING TO MOVE ON TO THE MOTION REGARDING THE

 3    AUGUST 27, 2007 ORDER.

 4         THIS RELATES TO WHETHER OR NOT ALL PARTIES ARE

 5    REQUIRED TO SUBMIT THE AFFIDAVIT SUGGESTING OR SETTING FORTH     10:51

 6    SPECIFICALLY THEIR EVIDENCE RETENTION AND OTHER PRACTICES

 7    RELATED TO DOCUMENT RETENTION IN THIS CASE.

 8         THE COURT REMEMBERS THE HEARING WELL, AND WHILE IT IS

 9    TRUE THAT IN THE COURSE OF DISCUSSING THE MOTION FOR

10    TERMINATING SANCTIONS WHICH WAS BROUGHT BY MGA THAT THE COURT    10:51

11    REFERRED DURING THE HEARING TO MATTEL AND TO MGA, I DON'T THINK

12    THE COURT COULD HAVE BEEN MORE EXPLICIT IN ITS ORDER THAT THE

13    ORDER APPLIED TO ALL PARTIES.

14         I DON'T KNOW WHAT LANGUAGE I COULD HAVE USED TO BE

15    CLEARER IN TERMS OF THE SCOPE OF THE ORDER; THAT'S MY TENTATIVE  10:52

16    THOUGHTS.  I'LL CERTAINLY GIVE ANYONE WHO WANTS TO ADDRESS IT

17    AN OPPORTUNITY TO DO SO, BUT MY SENSE IS THAT THIS APPLIES TO

18    EVERYBODY.  AND I GUESS I NEED TO HEAR SPECIFICALLY FROM

19    COUNSEL FOR MACHADO GOMEZ, BECAUSE I ALSO TEND TO AGREE THAT

20    THE DECLARATION SUBMITTED BY HIM -- WHICH IT'S NOT CLEAR TO THE  10:52

21    COURT WAS EVER FILED, ALTHOUGH I'VE NOW SEEN IT AS IT'S BEEN

22    SUBMITTED IN PAPERS -- IS ANYTHING BUT ADEQUATE TO COMPLY WITH

23    THE COURT'S ORDER REGARDING THE NEED FOR A FILED AFFIDAVIT.

24         COUNSEL?

25              MS. ANDERSON:  THANK YOU, YOUR HONOR.  THIS IS         10:53
```

1    CHRISTA ANDERSON FOR CARTER BRYANT.

2         YOUR HONOR, I CERTAINLY CONSIDER MYSELF AND MY FIRM

3    TO BE VERY RESPONSIBLE LAWYERS, AND WE DID NOT UNDERSTAND

4    YOUR HONOR'S ORDER TO REALLY MEAN ALL PARTIES BECAUSE WE READ

5    THE LANGUAGE OF THE ORDER AS INCORPORATING AS ORDERED BY THE            10:53

6    COURT DURING THE HEARING.

7         WE DID READ YOUR HONOR'S WORDS VERY CAREFULLY TO TRY

8    TO ASCERTAIN WHETHER WE DID OR DID NOT HAVE TO DO IT.  WE

9    APOLOGIZE IF WE MISREAD THIS ORDER, YOUR HONOR.

10        **THE COURT:**  THERE'S NO NEED TO APOLOGIZE, BUT PART OF        10:53

11   WHAT I REMEMBER OF THE HEARING IS THAT THE ATTORNEY THAT YOU

12   HAD REPRESENTING CARTER BRYANT HAD TO LEAVE FOR A SPEAKING

13   ENGAGEMENT IN THE MIDDLE OF THE HEARING.  I'VE HAD ATTORNEYS

14   NOT SHOW UP FOR HEARINGS, BUT IT LITERALLY WAS THE FIRST TIME

15   THAT I'VE BEEN ON THE BENCH THAT I'VE ACTUALLY HAD AN ATTORNEY        10:53

16   WALK OUT IN THE MIDDLE OF A HEARING.

17        SO FOR CARTER BRYANT NOW TO BE SUGGESTING THAT THEY

18   DID NOT UNDERSTAND THE COURT'S ORDER OR DIDN'T HAVE AN

19   OPPORTUNITY TO CHALLENGE THE COURT'S ORDER, IT WOULD BE A GOOD

20   THING NEXT TIME FOR HIM TO STAY FOR THE WHOLE HEARING.               10:53

21        **MS. ANDERSON:**  ABSOLUTELY, YOUR HONOR.

22        JUST TO DEFEND OUR POSITION A BIT, IF YOUR HONOR

23   WOULD TOLERATE IT FOR ONE MOMENT, BECAUSE WE WERE NOT THERE,

24   WHEN WE SAW THAT YOUR HONOR HAD INCORPORATED REFERENCE TO --

25        **THE COURT:**  AGAIN, YOU LEFT.  YOU WERE THERE AT THE          10:54

1   BEGINNING OF THE HEARING, AND YOU LEFT.

2          **MS. ANDERSON:**  INDEED.

3          WE GOT THE TRANSCRIPT, AND WE EXAMINED IT, AND WE HAD

4   CONCLUDED THAT BECAUSE THE AFFIDAVIT SEEMED TO BE INTENDED TO

5   ADDRESS WHO WAS INSTRUCTED TO PRESERVE DOCUMENTS AND WHICH            10:54

6   CATEGORIES OF DOCUMENTS THEY WERE INSTRUCTED TO PRESERVE, AND

7   BECAUSE THE COURT HAD SAID, AT LEAST DURING THE HEARING, IT

8   REQUIRED TWO SINGULAR AFFIDAVITS, ONE FROM MGA, ONE FROM

9   MATTEL; TO US, THAT SUGGESTED THAT THIS WHOLE AFFIDAVIT

10  PROCEDURE DIDN'T SEEM TO BE DIRECTED AT OUR CLIENT.                   10:54

11          AGAIN, WE DO APOLOGIZE.

12          **THE COURT:**  IT'S CLEAR NOW.

13          **MS. ANDERSON:**  YES.  WE WILL TAKE CARE OF THAT,

14  YOUR HONOR.

15          **THE COURT:**  VERY GOOD.                                    10:54

16          **MS. ANDERSON:**  ALSO, YOUR HONOR, THERE IS A REQUEST

17  IN HERE.  IT SEEMS TO BE TYPICAL FOR THESE MOTIONS FILED BY

18  MATTEL FOR SANCTIONS.  WE WOULD REQUEST THAT OUR CLIENT NOT BE

19  SANCTIONED, GIVEN THE AMBIGUITY OF THIS SITUATION.

20          **THE COURT:**  IF IT WAS AMBIGUOUS TO YOU, WHY DIDN'T        10:55

21  YOU SEEK CLARIFICATION IN THE INTERVENING MONTHS?

22          **MS. ANDERSON:**  I SUBMIT, YOUR HONOR, THAT MATTEL

23  EQUALLY SHOULD HAVE SOUGHT CLARIFICATION, BECAUSE WHEN WE READ

24  THE ORDER -- AND WE POINTED THIS OUT TO MATTEL'S COUNSEL -- IT

25  SEEMED TO INCORPORATE BY REFERENCE THE GUIDANCE THE COURT HAD        10:55

1    GIVEN DURING THE HEARING ABOUT WHO WAS SUPPOSED TO DO IT AND

2    WHAT WAS SUPPOSED TO BE IN IT.

3           WE WERE NOT TRYING TO BE DIFFICULT.

4           YOUR HONOR, FRANKLY, IN THIS LITIGATION, WHICH IS

5    SCORCHED EARTH LITIGATION IF I'VE EVER SEEN IT, WE'VE SPENT, MY       10:55

6    CLIENT AND MYSELF AND MY FIRM, A LOT OF TIME DEFENDING

7    OURSELVES AGAINST WHAT WE VIEW TO BE INCESSANT ACTIVITIES BY

8    MATTEL TO SORT OF MAKE WORK, FILE BRIEFS, DO THINGS FOR

9    SITUATIONS WHERE WE DO NOT BELIEVE IT IS APPROPRIATE, AND WE

10   THINK IT IS HARASSING.  AND THIS APPEARED TO US TO BE YET       10:55

11   ANOTHER SITUATION WHERE WE WERE BEING DRIVEN TO DO THE SAME

12   THING OVER AND OVER AGAIN.

13          THAT IS SORT OF THE CONTEXT OF THE SITUATION WE'VE

14   BEEN DEALING WITH, YOUR HONOR.

15          **THE COURT:**  THANK YOU, COUNSEL.       10:56

16          MR. OVERLAND, DO YOU WISH TO SPEAK ON BEHALF OF

17   MR. MACHADO GOMEZ?

18          **MR. OVERLAND:**  YES, YOUR HONOR.

19          DOES THE COURT WISH ME TO JUST ADDRESS THE CONTENTS

20   OF THE DECLARATION?       10:56

21          **THE COURT:**  YOU MAY ADDRESS THE COURT'S TENTATIVE ON

22   THIS, AND THAT'S TO MAKE IT CLEAR TO THE PARTIES THAT ALL

23   PARTIES NEED TO SUBMIT THE AFFIDAVIT.  BUT PARTICULARLY WITH

24   RESPECT TO THE DECLARATION THAT HAS BEEN SUBMITTED ON BEHALF OF

25   YOUR CLIENT, I DON'T THINK IT FULLY CAPTURES WHAT THE COURT HAS       10:56

1    SET FORTH IN THE ORDER.  AND PERHAPS THAT MIGHT BE BECAUSE YOU

2    DIDN'T HAVE THE SENSE, AS CARTER BRYANT DIDN'T HAVE THE SENSE,

3    THAT IT FULLY APPLIED.

4         I HOPE, AFTER TODAY'S ORDER, I'LL MAKE IT AS CRYSTAL

5    CLEAR AS POSSIBLE THAT IT DOES APPLY TO ALL PARTIES AND THAT AN        10:56

6    ACTUAL AFFIDAVIT NEEDS TO BE FILED WITH THE COURT, SETTING

7    FORTH EVERYTHING AS REQUESTED IN THE ORDER.

8         **MR. OVERLAND:**  AS I UNDERSTAND THE ORDER, IT WAS THAT

9    ALL PARTIES SET FORTH, IN AFFIDAVIT FORM, THEIR PRESERVATION

10   EFFORTS AND POLICIES.                                                   10:57

11        **THE COURT:**  ALL YOUR CLIENT STATED IN THE DECLARATION

12   IS THAT HE HAS NOT KNOWINGLY DESTROYED ANY EVIDENCE.

13        THAT'S NOT A DESCRIPTION IN DETAIL OF THE RETENTION

14   POLICIES.

15        **MR. OVERLAND:**  WELL, HE DOESN'T HAVE A POLICY.  HE'S        10:57

16   AN INDIVIDUAL.  IT'S LIKE YOU ASKING ME WHAT MY RETENTION

17   POLICY IS.

18        **THE COURT:**  I SUSPECT YOU, LIKE I, PROBABLY HAVE

19   PERSONAL FILES AND WE KEEP THINGS OR WE DON'T KEEP THINGS OR WE

20   THROW THINGS OUT AFTER SO MANY YEARS.  WE ALL HAVE OUR OWN        10:57

21   POLICIES.  I UNDERSTAND THEY'RE NOT POLICIES IN THE CORPORATE

22   SENSE, BUT WE ALL HAVE OUR CUSTOMS, PRACTICES, HOWEVER YOU WANT

23   TO PHRASE IT.

24        HE'S A SOPHISTICATED BUSINESSMAN, LIKE THE OTHER

25   PARTIES IN THIS CASE, AND I SUSPECT HE HAS SOME -- I WANT TO        10:57

```
 1   KNOW WHAT HE DOES WITH HIS DOCUMENTS.  AND TO SIMPLY SAY THAT

 2   HE HASN'T KNOWINGLY DESTROYED IS REALLY NOT SUFFICIENT.

 3           MR. OVERLAND:  I UNDERSTAND.  AND WE'D BE WILLING TO

 4   SUBMIT A DIFFERENT DECLARATION.

 5           IF THE COURT COULD BE CLEAR ON EXACTLY WHAT IT IS          10:57

 6   THAT MR. MACHADO SHOULD SAY.  IN OTHER WORDS, DOES HE HAVE TO

 7   SAY, 'FROM X DAY, HERE'S WHAT I DID WITH RESPECT TO DOCUMENTS,'

 8   OR 'THIS IS MY NORMAL HABIT OR CUSTOM'?

 9           THE COURT:  I'LL TRY TO BE CLEAR IN THE ORDER THAT I

10   ISSUE TODAY.                                                     10:58

11           MR. OVERLAND:  OKAY.  VERY WELL.

12           THE COURT:  THE LAST MOTION BEFORE THE COURT IS THE

13   MOTION CONCERNING DISCOVERY BEFORE JUDGE INFANTE.

14           AGAIN, THE ORDER SEEMS QUITE CLEAR.  IT RESTS ON

15   FEDERAL RULES OF CIVIL PROCEDURE 53.  OF COURSE, THERE'S         10:58

16   MULTIPLE PROVISIONS IN RULE 53 WHICH PERMIT THE APPOINTMENT OF

17   A DISCOVERY MASTER.  ONE PROVISION IS PURSUANT TO A STIPULATION

18   OF THE PARTIES, BUT THE THIRD PROVISION IS PURSUANT TO THE

19   COURT'S ORDER THAT THIS IS AN APPROPRIATE CASE FOR THE

20   APPOINTMENT OF A DISCOVERY MASTER.                               10:58

21           I'M CERTAINLY SYMPATHETIC TO THE ARGUMENT BEING MADE

22   THAT IT'S AN EXCEPTIONAL AND RARE PROCEDURE FOR THE COURT TO

23   INVOKE.  BUT I THINK JUST THIS RECORD ALONE, MR. NOLAN'S

24   RECITATION OF THE DISCOVERY PRODUCED IN THIS CASE, CLEARLY

25   SUGGESTS THAT THIS IS A PRETTY UNIQUE CASE.  AND THIS IS A CASE  10:59
```

```
 1   WHICH, AFTER CONSULTATION WITH JUDGE BLOCK, THE COURT MADE THE
 2   DECISION, FOR THE FIRST TIME IN MY CAREER AS A JUDICIAL OFFICER
 3   THAT, YEAH, THIS IS A CASE THAT A DISCOVERY MASTER NEEDS TO BE
 4   APPOINTED.
 5           ALL DISCOVERY WAS REFERRED TO THE DISCOVERY MASTER.      10:59
 6           I DON'T KNOW WHAT REALLY NEEDS TO BE CLARIFIED OR
 7   WHAT THE CONFUSION ON THAT IS.
 8           I DON'T SEE THE DUE PROCESS ARGUMENT THAT'S BEING
 9   MADE OR URGED BY THE DEFENSE IN THIS CASE.  CERTAINLY, ANY
10   DECISION BY THE DISCOVERY MASTER IS REVIEWABLE BY THIS COURT.    10:59
11   THE RULE ITSELF AND THE COMMENTARY MADE CLEAR, I THINK, THAT
12   THIRD PARTIES, EVEN NONCONSENTING THIRD PARTIES, ARE SUBJECT TO
13   THE PROVISIONS, EVEN TO THE CONTEMPT PROVISIONS.
14           SO I GUESS I DON'T REALLY SEE MUCH OF AN ISSUE ON
15   THIS MOTION, BUT I'LL HEAR FROM ANYBODY WHO WISHES TO SPEAK      11:00
16   FURTHER.
17           MR. OVERLAND:  WITH RESPECT TO MR. MACHADO, I THINK
18   THE BASIC PROBLEM WE HAVE IS THAT THE ORDER WAS MADE PURSUANT
19   TO RULE 53, AND RULE 53 REQUIRES PRIOR NOTICE.
20           WE NEVER RECEIVED PRIOR NOTICE.                         11:00
21           IF YOU LOOK AT 53(B)(1), THAT REQUIRES PRIOR NOTICE
22   TO THE PARTY, AN OPPORTUNITY TO BE HEARD, AN OPPORTUNITY TO
23   OBJECT.
24           THE COURT:  YOU HAVE AN OPPORTUNITY TO BE HEARD, NOT
25   ON THE APPOINTMENT OF THE DISCOVERY MASTER, BUT ON THE RULINGS   11:00
```

```
 1   OF THE COURT.  WITH THE DISCOVERY MASTER, YOU CAN CERTAINLY --

 2           MR. OVERLAND:  NO.  WE DO HAVE AN OPPORTUNITY TO BE

 3   HEARD ON THE APPOINTMENT.

 4           IF THE COURT -- UNLESS IT'S BY CONSENT --

 5           THE COURT:  CITE ME TO A CASE, ONE CASE, COUNSEL,      11:00

 6   THAT SAYS THAT.

 7           MR. OVERLAND:  LOOK AT THE LANGUAGE OF 53(B)(1).

 8           THE COURT:  THAT'S NOT HOW -- I DON'T BELIEVE I

 9   APPOINTED HIM PURSUANT TO.

10           LET ME TAKE A LOOK HERE.                                11:01

11           53(B)(1) TALKS ABOUT 'THE COURT MUST GIVE THE PARTIES

12   NOTICE AND AN OPPORTUNITY TO BE HEARD.'

13           MR. OVERLAND:  THAT'S RIGHT.

14           THE COURT:  YOU'RE NOT A PARTY.

15           MR. OVERLAND:  WELL, IF THE PARTIES ARE ENTITLED TO     11:01

16   NOTICE, THEN CERTAINLY --

17           I AM A PARTY.  MR. MACHADO IS A PARTY.

18           THE COURT:  VERY WELL.

19           AND YOU DID NOT RECEIVE NOTICE?

20           MR. OVERLAND:  NEVER RECEIVED NOTICE OF THAT.           11:01

21           THE COURT:  YOU CAME IN THE CASE AFTERWARDS.

22           MR. OVERLAND:  CORRECT.

23           AND MR. MACHADO, THEREFORE, STANDS IN A DIFFERENT

24   POSITION, BECAUSE AS A PARTY, HE'S ENTITLED TO NOTICE BEFORE

25   THE APPOINTMENT OF A SPECIAL MASTER.                           11:01
```

1          **THE COURT:**  ANY CASE AT ALL?

2          **MR. OVERLAND:**  I THINK WE CITED IN OUR PAPERS, YOUR

3    HONOR.

4          **THE COURT:**  YOU CITE 53 ON PAGE 3 OF YOUR OPPOSITION,

5    COUNSEL, AND YOU CITE TO 53(B)(1), BUT YOU DIDN'T CITE A CASE.        11:02

6          **MR. OVERLAND:**  MAYBE IT'S SELF-EVIDENT.  MAYBE THERE

7    IS NO CASE BECAUSE IT'S SELF-EVIDENT.

8          **THE COURT:**  CLEARLY, THE RULE ENVISIONS NONPARTIES

9    BEING SUBJECT TO CONTEMPT PROCEEDINGS FOR NOT FOLLOWING THE

10   ORDERS OF THE DISCOVERY MASTER, AND A NONPARTY WOULD NEVER HAVE       11:02

11   ANY NOTICE, SO IF A NONPARTY HAD NO NOTICE AND YET THEY'RE

12   SUBJECT TO THE RULE, WHY WOULD NOT A SUBSEQUENTLY-SERVED PARTY

13   BE SUBJECT TO THE RULE?  THAT DOESN'T MAKE ANY SENSE.

14         **MR. OVERLAND:**  WELL, IT DOESN'T MAKE SENSE BECAUSE

15   PARTIES ARE TREATED DIFFERENTLY.  PARTIES ARE ENTITLED TO            11:02

16   NOTICE, ACCORDING TO THE RULE.

17         **THE COURT:**  WHEN YOU COME INTO AN EXISTING CASE WITH

18   A DISCOVERY MASTER ALREADY PROPERLY APPOINTED, YOU COULD

19   CERTAINLY, I CAN SEE, HAVE GROUNDS TO OBJECT TO THE DISCOVERY

20   MASTER.  AND YOU'VE NEVER DONE THAT SINCE BEING BROUGHT INTO         11:03

21   THIS CASE.

22         **MR. OVERLAND:**  WE ARE DOING IT.

23         **THE COURT:**  YOU'RE DOING IT NOW.  I UNDERSTAND THAT.

24         **MR. OVERLAND:**  WE ARE DOING IT, THE FIRST OPPORTUNITY

25   WHEN A MOTION WAS BROUGHT WITH RESPECT TO DISCOVERY IN FRONT OF      11:03

```
 1    THE MASTER.

 2            THE COURT:  ALL RIGHT.  I'LL RECONSIDER MY POSITION

 3    IN LIGHT OF THAT ARGUMENT, COUNSEL.

 4            MR. OVERLAND:  THE OTHER THING, YOUR HONOR, IS WITH

 5    RESPECT TO MR. MACHADO -- AND I UNDERSTAND THE PROBLEM WITH     11:03

 6    RESPECT TO THE DISCOVERY ISSUES BETWEEN MATTEL AND MGA, BUT

 7    WITH RESPECT TO MR. MACHADO, THERE'S GOING TO BE A DISCRETE

 8    DISCOVERY DISPUTE, AND THAT INVOLVES THE FIFTH AMENDMENT CLAIM

 9    WITH RESPECT TO SPECIFIC QUESTIONS.

10            WHAT CONCERNS ME IS WHAT I HEARD BEFORE FROM THIS      11:03

11    COURT THAT THERE'S A STANDARD OF DEFERENCE TO THE RULING OF THE

12    MASTER.

13            THE COURT:  IT'S THE STANDARD THAT'S SET FORTH IN THE

14    ORDER GOVERNING THE DISCOVERY MASTER.

15            MR. OVERLAND:  I UNDERSTAND.  AND WHAT CONCERNS ME IS  11:04

16    THAT THESE RULINGS WITH RESPECT TO MR. MACHADO'S FIFTH

17    AMENDMENT PRIVILEGE ARE GOING TO BIND THE COURT.  THEY ARE VERY

18    IMPORTANT ISSUES WITH RESPECT TO MR. MACHADO.

19            THE COURT:  THEY ARE.  I UNDERSTAND THAT.

20            THANK YOU, COUNSEL.                                    11:04

21            ANYONE ELSE WISH TO BE HEARD ON THIS?

22            AND YOU ARE REPRESENTING THE NONPARTIES?

23            MR. MCFARLAND:  SOME OF THEM.

24            LARRY MCFARLAND ON BEHALF OF MS. CLOONAN, MS. LEAHY,

25    MS. MARLOW, MS. HALPERN, AND MS. ROCK.                         11:04
```

1        YOUR HONOR, ONE OF THE THINGS I WOULD LIKE TO ADDRESS

2   IS, MY UNDERSTANDING, THERE IS A DEARTH OF CASE LAW, I WILL

3   ACKNOWLEDGE.  WE'VE CITED CASE; THEY'VE CITED CASES.  I DON'T

4   THINK ANY OF THEM ARE ALL THAT ILLUMINATING, REALLY.  THEY JUST

5   KIND OF SAY IT.                                                      11:05

6        **THE COURT:**  RIGHT.

7        **MR. MCFARLAND:**  WE UNDERSTOOD WHEN WE READ THAT IT

8   WAS DONE UNDER SECTION A, WHICH WAS, OF COURSE, BY STIPULATION.

9   SECTION C, OF COURSE, HAS A FINDING THAT IT CANNOT BE

10  EFFECTIVELY AND TIMELY ADDRESSED BY AN AVAILABLE DISTRICT COURT     11:05

11  JUDGE OR MAGISTRATE JUDGE OF THE DISTRICT.  AND CERTAINLY, AS

12  TO MGA AND MATTEL, NO ONE WOULD DISPUTE THAT THERE'S A LOT

13  GOING ON AND A LOT OF ACTIVITY, AND NO ONE IS TALKING ABOUT

14  THAT, THAT ALL OF THOSE MASSIVE, HARD-FOUGHT BATTLES ARE BEING

15  HANDLED BY JUDGE INFANTE.                                           11:05

16       TO MY KNOWLEDGE, THUS FAR, JUDGE INFANTE HASN'T

17  ISSUED ANY BINDING RULINGS WITH RESPECT TO THIRD PARTIES.  IT'S

18  ALL KIND OF COMING UP LATE IN THE GAME.

19       I DON'T KNOW EVERYTHING THAT'S DONE, BUT THAT'S MY

20  UNDERSTANDING.                                                      11:05

21       NOW, CERTAINLY, HE'S NOT ISSUED ANY WITH RESPECT TO

22  MY CLIENTS, NOR ARE ANY MOTIONS PENDING IN FRONT OF JUDGE

23  INFANTE WITH RESPECT TO MY CLIENTS.  SO WHAT I'D LIKE TO

24  ADDRESS WITH SOME OF MY TIME IS THIS ISSUE OF UNIFORMITY, WHICH

25  SEEMS TO BE, I THINK, THE MOST POWERFUL ARGUMENT THEY HAVE,         11:05

1　THAT THERE NEEDS TO BE SOME HISTORY AND SOME HISTORICAL

2　KNOWLEDGE.

3　　　　　AND WHAT I WOULD ARGUE, YOUR HONOR, IS THAT CONGRESS

4　ADDRESSED THAT ISSUE WHEN THEY SET UP THE SYSTEM OF HOW YOU

5　ISSUE A RULE 45 SUBPOENA.  PRESUMABLY, IF CONGRESS HAD WANTED　　11:06

6　EVERY RULE 45 SUBPOENA TO ISSUE OUT OF THIS COURT, REGARDLESS

7　OF WHERE THE DEPONENT RESIDED, IF THE DEPONENT RESIDED IN TEXAS

8　OR MAINE OR MINNESOTA, CONSISTENT WITH DUE PROCESS, PRESUMABLY,

9　CONGRESS COULD HAVE DONE THAT.  BUT CONGRESS DIDN'T.  AND WE

10　HAVE A SYSTEM IN THIS COUNTRY WHERE IF YOU WANT TO ISSUE A RULE　　11:06

11　45 SUBPOENA FOR A PERSON RESIDING IN TEXAS, IT HAS TO BE ISSUED

12　BY THE DISTRICT COURT IN TEXAS.

13　　　　　SO IN THAT CASE, I DON'T THINK I UNDERSTAND, OR MAYBE

14　I'M WRONG, IF YOU BELIEVE THAT THIS ORDER WOULD REQUIRE THE

15　DISTRICT COURT MAGISTRATE OR JUDGE IN TEXAS TO BE DIVESTED OF　　11:06

16　JURISDICTION AND FOR THIS MATTER TO BE HEARD IN FRONT OF

17　JUDGE INFANTE IN SAN FRANCISCO.

18　　　　　IF THAT'S NOT THE CASE --

19　　　　**THE COURT:**  THAT ISSUE IS REALLY NOT BEFORE THE COURT

20　RIGHT NOW.　　11:07

21　　　　**MR. MCFARLAND:**  WELL, I THINK IT IS BEFORE THE COURT,

22　BECAUSE THE ONLY REASON THAT THERE'S THIS UNIFORMITY ISSUE IS

23　BECAUSE MY CLIENT HAPPENS TO RESIDE IN LOS ANGELES.  I DON'T

24　THINK THAT'S A DISTINCTION WITHOUT A DIFFERENCE.  IF UNIFORMITY

25　IS A GOVERNMENT PRINCIPLE, THEN I THINK IT WOULD HAVE TO APPLY　　11:07

```
 1   TO ALL RULE 45 SUBPOENAS.  AND IT CANNOT APPLY.

 2           THE COURT:  BUT THE COURT WOULD CERTAINLY RECONSIDER

 3   THE EFFECT OR THE BREADTH OR REACH OF ITS ORDER IF IT WAS

 4   OPERATING TO DIVEST A DISTRICT JUDGE ON A RULE 45 CHALLENGE IN

 5   TEXAS, FOR EXAMPLE.  THAT'S NOT BEFORE THE COURT RIGHT NOW.      11:07

 6           MR. MCFARLAND:  THE OTHER THING, TOO, IS, I THINK IT

 7   ALSO SHOWS HOW THIS IS NOT REALLY BEING ENFORCED BY EVEN MATTEL

 8   IS THAT WHEN YOU GET A RULE 45 SUBPOENA, THERE IS LANGUAGE ON

 9   IT THAT TELLS YOU WHAT TO DO AS THE RECIPIENT.  AGAIN, YOU GO

10   INTO COURT -- YOU KNOW, YOU HAVE THESE RIGHTS UNDER RULE 45;     11:07

11   IT'S ALL THERE ON PAGE 2 OF THE STANDARD FORM.

12           THIS ORDER, TO THE EXTENT IT DIVESTS THE THIRD-PARTY

13   DEPONENT OF THOSE RIGHTS -- NO NOTICE WAS EVER GIVEN TO ANY

14   THIRD-PARTY DEPONENT, TO MY KNOWLEDGE, THAT RATHER THAN FOLLOW

15   THE FEDERAL RULES, WHETHER THAT BE WHERE YOU FILE YOUR PAPERS,   11:08

16   THE TIMING, ALL OF THOSE OTHER ISSUES, YOU INSTEAD NEED TO

17   FOLLOW THIS ORDER.

18           THE COURT:  LIKE I SAY, THAT'S NOT AN ISSUE THAT --

19   IF THAT ISSUE WERE TO COME UP, COUNSEL, I CAN SEE THAT BEING

20   SOMETHING WHICH THE COURT WOULD NEED TO ADDRESS.                 11:08

21           MR. MCFARLAND:  AND THE LAST THING, THEN, YOUR HONOR,

22   IS THAT I DO THINK, ESPECIALLY WITH TWO OF MY CLIENTS,

23   MS. MARLOW AND MS. LEAHY, SUBPOENAS HAD ALREADY BEEN SERVED AND

24   OBJECTIONS HAD ALREADY BEEN SERVED, ACTUALLY BEFORE THE FIRST

25   STAY PERIOD BACK IN 2005; SO MATTEL WAS WELL AWARE IN THAT LATE  11:08
```

```
 1  2006 TIME FRAME, WHEN THIS STIPULATION AND ORDER WAS PRESENTED

 2  TO THE COURT, THAT THERE WERE DISPUTES, VIS-À-VIS AT LEAST

 3  THOSE TWO OF MY WITNESSES, AND YET NO NOTICE WAS GIVEN TO THEM,

 4  NO OPPORTUNITY TO BE HEARD AT THAT TIME.  AND IF THEY HAD BEEN

 5  HEARD AT THAT TIME, THIS UNIFORMITY KNOWLEDGE THAT NOW EXISTS A      11:08

 6  YEAR LATER WOULDN'T BE USED.  IN OTHER WORDS, THEY COULD HAVE

 7  SPOKEN UP AT THAT TIME AND SAID THAT THEY FELT THAT IT WAS

 8  IMPORTANT TO HAVE ACCESS TO A FEDERAL JUDGE.

 9       THE COURT:  SPEAKING OF DEPOSITIONS, I ASSUME THOSE

10  DEPOSITIONS THAT WE LAST DISCUSSED WENT FORWARD IN DECEMBER?         11:09

11       MR. MCFARLAND:  I'M PROUD TO SAY, YOUR HONOR, THAT

12  ALL THREE OF MY WITNESSES APPEARED ON THE DATES THAT I

13  REPRESENTED TO THIS COURT THAT THEY WOULD BE THERE.

14       THE COURT:  EXCELLENT.  I'M VERY PLEASED TO HEAR

15  THAT, COUNSEL.  THANK YOU VERY MUCH.                                11:09

16       YOU MAY, COUNSEL.

17       MR. DELGADILLO:  BRYANT DELGADILLO FOR NONPARTY

18  KAYE SCHOLER.

19       TWO QUICK POINTS.

20       THE FIRST, AS YOU MENTIONED, THE RULES OR TIMING HAD            11:09

21  NOT BEEN RAISED.  A POINT OF CLARIFICATION, IT HAS, AT LEAST

22  WITH RESPECT TO KAYE SCHOLER.  WE RESPONDED TO THE OPPOSITION

23  TO THEIR MOTION PURSUANT TO THE FEDERAL RULES ON THE ORDER THAT

24  THEY PROVIDED AS A FIVE-DAY NOTICE PERIOD, FIVE-DAY RESPONSE

25  PERIOD.  WE DIDN'T BELIEVE WE WERE BOUND BY THAT ORDER, AS WE        11:10
```

```
 1   ARGUED HERE.  WE RESPONDED IN ACCORDANCE WITH THE FEDERAL RULES
 2   OF CIVIL PROCEDURE.  AND MATTEL'S COUNSEL HAS NOW TAKEN THE
 3   POSITION BEFORE THIS COURT, AS WELL AS BEFORE JUDGE INFANTE,
 4   THAT OUR OPPOSITION IS TIME-BARRED AND SHOULD BE STRICKEN.  SO
 5   IT HAS BEEN RAISED.  WE'VE TAKEN THAT POSITION, THAT WE          11:10
 6   COMPLIED WITH THE FEDERAL RULES, WHICH UNDER THE SUBPOENA, THE
 7   RULE 45 SUBPOENA, AS COUNSEL POINTED OUT, THERE WAS NO NOTICE
 8   GIVEN UNDER THE SUBPOENA THAT WE RECEIVED THAT THE OBJECTION
 9   PERIOD, ANY RESPONSE TO A MOTION TO COMPEL, WAS OTHERWISE
10   CHANGED.                                                         11:10
11          THEY DID PROVIDE US WITH THE DISCOVERY ORDER IN THE
12   COURSE OF OUR MEET AND CONFERS, WHEN IT BECAME CLEAR THERE WAS
13   GOING TO BE SOME OBJECTIONS TO THE SUBPOENA AND THAT WE WOULD
14   HAVE TO WORK OUT.  AND MOTION PRACTICE ULTIMATELY RESULTED.
15   THEY DID PROVIDE US WITH THE DISCOVERY ORDER, BUT NOT IN         11:10
16   CONNECTION WITH THE ACTUAL SUBPOENA THAT OUR FIRM RECEIVED.
17          ANOTHER POINT IS, JUST TO CLARIFY AS WELL, THE
18   DISCOVERY ORDER SAYS THAT THE PARTIES ARE RESPONSIBLE FOR
19   PAYING FOR THE DISCOVERY REFEREE.  I JUST WANT TO MAKE CLEAR
20   THAT NONPARTIES ARE NOT GOING TO BE REQUIRED TO PAY.            11:11
21          THE COURT:  THAT IS CORRECT.
22          MR. DELGADILLO:  THANK YOU, YOUR HONOR.
23          THE COURT:  THAT IS CORRECT.
24          MR. TIET:  KIEN TIET FOR NONPARTY STERN & GOLDBERG.
25          WE'RE IN THE SAME BOAT WITH KAYE & SCHOLER, AND WE'LL    11:11
```

1    JUST JOIN IN THEIR ARGUMENT.

2            **THE COURT:**  VERY WELL.  THANK YOU.

3            ANYBODY ELSE?

4        **MS. MORGENTHALER:**  ALISA MORGENTHALER FOR NONPARTY

5    FARHAD LARIAN.                                                    11:11

6            AS MR. NOLAN MENTIONED, THERE HAVE BEEN OVER 50

7    THIRD-PARTY SUBPOENAS IN THIS CASE.  YET, THIS IS THE VERY

8    FIRST TIME THAT JUDGE INFANTE IS BEING ASKED TO CONSIDER A

9    THIRD-PARTY SUBPOENA OR DISCOVERY MATTER THAT WOULD BIND A

10   THIRD PARTY THAT DID NOT CONSENT TO THE DISCOVERY REFERENCE; SO   11:12

11   I DON'T THINK SOME OF THE EFFICIENCY ISSUES THAT HAVE BEEN

12   DISCUSSED AND THE COURTS CONCERN WITH INSTITUTIONAL MEMORY

13   APPLY HERE.

14           I THINK THAT THESE ARE ISSUES THAT CAN BE EFFECTIVELY

15   ADDRESSED BY A MAGISTRATE JUDGE, SUCH THAT THE BALANCE WEIGHS    11:12

16   IN FAVOR OF CONSIDERING THE DUE PROCESS CONCERNS TO THE

17   NONPARTIES VERSUS THE EFFICIENCY ARGUMENT TO THE PARTIES.

18           **THE COURT:**  LET ME ASK YOU THE SAME QUESTION.

19           ARE YOU AWARE OF ANY AUTHORITY WHICH PREVENTS THE

20   ASSIGNMENT OF THE THIRD PARTY TO THE DISCOVERY MASTER UNDER      11:12

21   53(C).

22           **MS. MORGENTHALER:**  I'M NOT AWARE OF ANY CASE THAT

23   SAYS THAT SPECIFICALLY.  I'M ALSO NOT AWARE OF ANY CASE MATTEL

24   CITED ON WHERE A NONPARTY HAS BEEN BOUND BY DISCOVERY REFERENCE

25   THAT WAS DONE PURSUANT TO THE STIPULATION OF THE PARTIES, WHICH  11:12

1    IS THE CASE HERE.

2              **THE COURT:**  VERY WELL.

3              **MS. MORGENTHALER:**  I THINK ONE OF THE OTHER COUNSEL

4    MENTIONED THAT THE CASES JUST HAVE NOT BEEN PARTICULARLY CLEAR

5    ON THIS POINT.                                                    11:13

6              ALSO, JUST ONE FINAL POINT, I THINK THE PREJUDICE TO

7    THE NONPARTIES THAT IS TAKING PLACE HERE IS ILLUSTRATED BY THE

8    FACT THAT SOME OF THE EVIDENCE THAT MATTEL IS RELYING ON IN

9    SUPPORT OF THIS MOTION, THE DECLARATION OF BRIDGET HAULER, THE

10   THIRD PARTIES HAVE NEVER SEEN, BECAUSE THAT DECLARATION IS       11:13

11   FILED UNDER SEAL; IT'S DESIGNATED AEO UNDER THEIR PROTECTIVE

12   ORDER.  SO SINCE WE'RE NOT ATTORNEYS IN THE CASE, WE CAN'T SEE

13   IT.  I'VE NEVER SEEN IT.  WE CAN'T GET IT OFF PACER.

14             AND OTHER PARTICULAR LOGISTICAL PROBLEMS, WE NEVER

15   RECEIVED HARD COPIES OF THE REPLIES WE HAD TO GET, BECAUSE       11:13

16   INITIALLY, THE THIRD PARTIES WERE NOT ON PACER AND --

17             **THE COURT:**  THAT'S A PROBLEM WITH THE PROTECTIVE

18   ORDER, THOUGH.  THAT'S NOT A PROBLEM WITH THE DISCOVERY MASTER

19   PROCEDURE.

20             **MS. MORGENTHALER:**  RIGHT.  BUT I'VE SEEN SOME OF THE   11:14

21   EVIDENCE THAT THEY'RE RELYING ON HERE.

22             **THE COURT:**  I AGREE, THAT SOUNDS LIKE A PROBLEM AND

23   THAT NEEDS TO BE ADDRESSED, BUT THAT'S NOT BEFORE THE COURT

24   RIGHT NOW.  AND PERHAPS IT SHOULD BE.  I INVITE THE THIRD

25   PARTIES TO TAKE THAT UP AS APPROPRIATE, AND I WOULD TRUST THAT   11:14

```
 1   MATTEL WOULD BE ABLE TO ADDRESS THAT ISSUE IN A MEET AND
 2   CONFER.  BUT THAT'S CERTAINLY SOMETHING THAT NEEDS TO BE
 3   ADDRESSED.  EVERYONE WHO HAS BEEN AFFECTED BY AN UNDER-SEAL
 4   DOCUMENT IN LITIGATION -- NOT TO ISSUE AN ADVISORY OPINION, BUT
 5   I'LL GIVE YOU THE ADVICE THAT THEY SHOULD SEE IT; THAT SEEMS        11:14
 6   PRETTY SELF-EVIDENT.
 7            I CERTAINLY AGREE WITH YOU, COUNSEL.
 8            MS. MORGENTHALER:  THANK YOU, YOUR HONOR.
 9            THE COURT:  THANK YOU.
10            MR. NOLAN, DO YOU HAVE ANYTHING ON THIS?                  11:14
11            MR. NOLAN:  THE ONLY THING IS, I WANTED TO MAKE SURE
12   I COME BACK TO THE EX-PARTE APPLICATION THAT WE HAVE.
13            THE COURT:  I HAVEN'T FORGOTTEN ABOUT IT.
14            MR. NOLAN:  OKAY.  THEN I'LL WAIT.
15            THE COURT:  LET'S GIVE MATTEL A CHANCE TO RESPOND TO      11:14
16   THIS THIRD AND FINAL MOTION THAT'S BEEN BROUGHT.
17            COUNSEL, REALLY, MY TENTATIVE IS IN YOUR FAVOR, BUT I
18   WOULD LIKE YOU TO ADDRESS THIS RULE 45 ISSUE THAT'S BEEN RAISED
19   BY MR. OVERLAND AND SOME OF THE OTHER COUNSEL.
20            MR. ZELLER:  I THINK, NUMBER ONE, THAT IT IS NOT          11:15
21   BEFORE THE COURT AT THIS JUNCTURE.  IF PEOPLE HAVE
22   PARTICULAR COMPLAINTS --
23            THE COURT:  IT IS AND IT ISN'T, THOUGH, BECAUSE IT'S
24   BEFORE -- AND I UNDERSTAND THAT IT'S NOW BEFORE JUDGE INFANTE,
25   AND THE ORDER IS BEING USED BY YOU AS A RESPONSE BEFORE           11:15
```

```
 1   JUDGE INFANTE, AND WE'RE GETTING PRETTY CLOSE TO THE END OF
 2   DISCOVERY HERE.  SO IF THIS IS A PROBLEM -- IT APPARENTLY
 3   APPEARS TO BE SOMETHING THAT WE DIDN'T FULLY ADDRESS OR THINK
 4   THROUGH, PERHAPS, WHEN WE WERE DOING THE DISCOVERY MASTER
 5   MOTIONS.                                                        11:15
 6            MR. ZELLER:  SURE.
 7            ON THAT NOTE, I'LL BE HAPPY TO ADDRESS IT AS TO THE
 8   SUBSTANCE.
 9            THE COURT:  PLEASE.
10            MR. ZELLER:  NUMBER ONE, THE MOTION THAT WE HAVE       11:15
11   BROUGHT ONLY ASKED FOR CONFIRMATION OF THE DISCOVERY MASTER'S
12   AUTHORITY AS TO THIRD PARTIES WHO ARE WITHIN THE PERSONAL
13   JURISDICTION OF THE COURT.  THAT IS CONSISTENT WITH RULE 45.
14   THAT IS ALL THAT WE'VE ASKED THE COURT TO DO.  NONE OF THE
15   PARTIES HERE TODAY DISPUTE IN ANY WAY THAT THEY ARE CALIFORNIA  11:15
16   RESIDENTS WHO ARE SUBJECT TO THAT AUTHORITY.
17            THE COURT:  FAIR ENOUGH.
18            AS FAR AS THAT'S CONCERNED, I THINK I'M WITH YOU,
19   ALTHOUGH I DO WANT TO LOOK AT THIS ONE ISSUE RAISED BY
20   MR. OVERLAND.  BUT ADDRESS THIS RULE 45 PROBLEM.               11:16
21            MR. ZELLER:  I THINK THAT IT MAY NOT BE -- THERE'S A
22   UNITARY ANSWER TO THE SECOND PART OF THE RULE 45 ISSUE THAT WAS
23   RAISED.  LET ME START OFF WITH THE PARTIES WHO ARE INVOLVED
24   HERE.
25            WHO ARE WE TALKING ABOUT?                             11:16
```

```
 1            NUMBER ONE, KAYE SCHOLER, WHO ARE ISAAC LARIAN'S

 2    ATTORNEYS.  THERE IS NO QUESTION THAT THEY HAVE HAD NOTICE.

 3    WHEN WE ENGAGED THEM, AS KAYE SCHOLER ADMITS, WE PROVIDED THEM

 4    WITH A COPY OF THE DISCOVERY MASTER ORDER, AND WE ADVISED THEM

 5    AS TO, CERTAINLY, WHAT OUR VIEWPOINT WAS, AS TO WHO WAS GOING        11:16

 6    TO BE DECIDING THESE DISPUTES.

 7            I DON'T SEE THAT AS BEING ANY DIFFERENT THAN,

 8    NECESSARILY, TELLING SOMEONE WHO IS NOT A PARTY IN THE CASE, UP

 9    UNTIL THAT POINT, 'WELL, HERE'S THE NAME OF THE JUDGE WHO IS

10    HANDLING IT.'                                                       11:16

11            THE COURT:  SO IS IT YOUR POSITION THAT WITH RESPECT

12    TO EACH OF THESE THIRD PARTIES, YOU HAVE PROVIDED NOTICE?

13            MR. ZELLER:  THAT'S CORRECT.

14            THE COURT:  THEN I'LL LET THE DISCOVERY MASTER TAKE

15    THAT UP, AND I'LL REVIEW THAT IF NECESSARY.                         11:17

16            MR. ZELLER:  WE DON'T NECESSARILY DISAGREE,

17    YOUR HONOR, THAT OBVIOUSLY, IN A PARTICULAR CASE, PERHAPS THERE

18    WOULD BE SOME ISSUE, PRESUMABLY, THE PARTIES WILL DO EVERYTHING

19    THEY CAN TO RESOLVE IT.  CERTAINLY, WE WOULD GIVE PEOPLE

20    NOTICE.                                                             11:17

21            BUT ALL THEY WERE COMPLAINING ABOUT, YOU WILL NOTICE,

22    WAS THAT THE FACE OF THE SUBPOENA DOESN'T MENTION

23    JUDGE INFANTE.  I'M NOT REALLY SURE THAT THAT'S A MEANINGFUL

24    CONSIDERATION AT THIS JUNCTURE.

25            IT CERTAINLY WOULD NOT HAVE ANY MEANING TO A PARTY          11:17
```

1    WHO IS OUTSIDE THE COURT'S PERSONAL JURISDICTION, BECAUSE I

2    DON'T THINK WE NECESSARILY DISAGREE THAT IF IT'S AN

3    OUT-OF-STATE PARTY, THEN THAT SUBPOENA IS GOING TO HAVE TO BE

4    DEALT WITH BY A DISTRICT COURT WHO HAS PERSONAL JURISDICTION IN

5    ACCORDANCE WITH THE NORMAL RULES.                              11:17

6           THE COURT:  RIGHT.

7           MR. ZELLER:  I MEAN, ALL WE'RE TALKING ABOUT HERE ARE

8    PARTIES, NONPARTIES, WHO ARE CLEARLY WITHIN THE JURISDICTION OF

9    THE COURT; SO WE'RE NOT PUSHING THE ENVELOPE ON THAT BY ANY

10   STRETCH OF THE IMAGINATION, YOUR HONOR.                        11:17

11          THE COURT:  VERY WELL.

12          WHILE YOU'RE AT THE LECTERN, LET'S SHIFT GEARS TO THE

13   EX-PARTE APPLICATION THAT'S BEEN BROUGHT BY MGA AND

14   CARTER BRYANT.

15          MR. QUINN:  I'D BE HAPPY TO ADDRESS IT, YOUR HONOR.     11:18

16          THE COURT:  ALL RIGHT.  SOMEBODY.

17          BECAUSE I TEND TO AGREE WITH MGA AND CARTER BRYANT ON

18   THIS ONE.  I DON'T THINK, BASED ON MY READING OF THE LAW -- AND

19   I KNOW THERE'S NOTHING CLEARLY ON POINT, AND YOU BOTH CITE TO A

20   VARIETY OF CASES IN THE COMMENTARY AND IN THE RULE ITSELF, BUT  11:18

21   MY SENSE IS THAT THE 30(B)(6) DEPOSITIONS DO NOT COUNT TOWARDS

22   THE NUMBER OF ALLOTTED DEPOSITIONS.  I THINK THAT'S PROBABLY

23   THE SAFEST WAY TO INTERPRET THE STATUTE, THE RULE, AND THE

24   CASES THAT HAVE ATTEMPTED TO GRAPPLE WITH THAT RULE.

25          I UNDERSTAND THAT THEY, FROM YOUR PERSPECTIVE, WENT      11:18

1    AFIELD OF THE 30(B)(6) TOPICS, BUT THAT'S PERMITTED.  AND IN

2    TERMS OF THE ACTUAL COUNTING, I DON'T THINK THAT IT DOES US ANY

3    GOOD HERE AT THIS POINT TO TRY TO FIGURE OUT HOW FAR AFIELD

4    THEY WENT AND WHETHER THAT COUNTS.

5           MY TENTATIVE WOULD BE TO ONLY COUNT THOSE AS 30(B)(6)    11:19

6    DEPOSITIONS -- THOSE WOULD ALL COUNT TOWARDS ONE OF THE MATTEL.

7           **MR. QUINN:**  I UNDERSTAND, YOUR HONOR.

8           MY FIRST RESPONSE IS, WE'RE DEALING WITH THIS ON AN

9    EX-PARTE BASIS.

10          **THE COURT:**  I UNDERSTAND THE CONCERN HERE.    11:19

11          **MR. QUINN:**  LET'S SET THAT ASIDE.

12          **THE COURT:**  IF WE WEREN'T THREE WEEKS AWAY FROM THIS,

13   I'D PROBABLY TELL YOU ALL TO GO TO THE DISCOVERY MASTER.

14          **MR. QUINN:**  INDEED.  AND THAT WAS GOING TO BE MY

15   SECOND POINT, YOUR HONOR.  I THINK THIS IS AN INFANTE ISSUE.    11:19

16          **THE COURT:**  IT PROBABLY IS, COUNSEL.

17          **MR. QUINN:**  SO THIRD, I AGREE WITH THE GENERAL

18   PRINCIPAL THAT THAT'S JUST A 30(B)(6) DEPOSITION.  BUT IF YOU

19   TAKE A 30(B)(6) DEPOSITION AND YOU ESSENTIALLY ABANDON -- I'LL

20   GIVE YOU A HYPOTHETICAL NOW -- YOU ABANDON THE TOPIC, YOU    11:20

21   ADDRESS THE TOPIC AND THEN YOU GO FAR OFF THE RESERVATIONS, AND

22   YOU'RE REALLY DEPOSING THAT WITNESS AS AN INDIVIDUAL FACT

23   WITNESS, THEN IT'S CONVERTED INTO AN INDIVIDUAL DEPOSITION.

24          **THE COURT:**  AND I GUESS I UNDERSTAND THAT.

25          **MR. QUINN:**  THERE'S CASE LAW THAT SAYS THAT.    11:20

1     **THE COURT:** I UNDERSTAND THAT ARGUMENT. BUT YOU

2  CHOOSE WHO YOU BRING AS YOUR 30(B)(6) WITNESSES, AND THEY

3  DON'T. I JUST THINK IT GOES DOWN A DIFFICULT ROAD.

4     I'M NOT SAYING THIS IS A PERFECT DECISION ON THIS. I

5  THINK WE NEED TO COME UP WITH A GROUND RULE, AND I THINK THE          11:20

6  GROUND RULE I'M LEANING TOWARDS IS, LET'S NOT COUNT THE

7  30(B)(6) WITNESSES TOWARDS THE DEPOSITION TOTAL.

8     **MR. QUINN:** I WOULD POINT OUT, YOUR HONOR, THAT IT

9  CREATES A POTENTIAL LOOPHOLE THAT TRUCKS CAN DRIVE THROUGH.

10    **THE COURT:** I UNDERSTAND IT DOES. AND THE ONLY THING          11:20

11 THAT STOPS THE LOOPHOLE IS THAT YOU GET TO CONTROL THAT; YOU

12 GET TO CONTROL YOUR 30(B)(6) DEPOSITIONS WITNESSES TO A CERTAIN

13 EXTENT AND THEY GET TO CONTROL THEIRS.

14    **MR. QUINN:** THE PROBLEM IS, WE DON'T GET TO CONTROL

15 WHAT THEY ASK.                                                       11:21

16    **THE COURT:** NO.

17    **MR. QUINN:** ONCE THE PERSON IS IN THE CHAIR, THEY CAN

18 BE ASKED THINGS OUTSIDE THE SCOPE.

19    **THE COURT:** SO PICK WHO YOU PUT IN THE CHAIR

20 CAREFULLY.                                                           11:21

21    **MR. QUINN:** THE RULE GIVES US, REALLY, SOME

22 REQUIREMENTS THERE. WE'RE SUPPOSED TO PUT SOMEBODY WHO'S MOST

23 KNOWLEDGEABLE AND NOT TRY TO BE DEFENSIVE AND GIVE THEM

24 SOMEBODY WHO WOULDN'T NECESSARILY HAVE THE BEST KNOWLEDGE ON

25 THE DESIGNATED SUBJECT BUT DOESN'T KNOW ANYTHING ELSE.              11:21

```
 1              THE COURT:  AND THAT LEADS TO THE OPENNESS AND THE

 2   TRANSPARENCY OF THE WHOLE PROCESS.

 3              MR. QUINN:  THERE YOU GO.

 4              THE COURT:  SO THE EX-PARTE APPLICATION IS GRANTED,

 5   UNLESS MR. NOLAN WANTS TO CONVINCE ME OTHERWISE.              11:21

 6              MR. NOLAN:  NO.  I LIKE WINNING.

 7              I THINK IT'S ALSO NICE BECAUSE IT DOESN'T MAKE ME

 8   HAVE TO SAY THAT, GEE, IT'S CURIOUS THAT WHEN WE WERE BACK HERE

 9   ON OCTOBER 15TH --

10              THE COURT:  I UNDERSTAND.  THAT CERTAINLY COLORS THE  11:21

11   COURT'S RULING ON THIS AS WELL.

12              MR. QUINN:  BUT, YOUR HONOR, JUST SO WE'RE ALL CLEAR

13   WHAT THE RESULTS OF THE EX-PARTE IS.

14              THE COURT:  I'LL TRY TO WRITE A REAL CLEAR ORDER THIS

15   TIME.                                                          11:22

16              MR. QUINN:  THERE'S TEN INDIVIDUALS -- IN ADDITION TO

17   THE 30(B)(6) SUBJECTS, THERE ARE TEN INDIVIDUALS NOW THAT

18   THEY'RE ASKING US TO PRODUCE BY THE 28TH OF JANUARY.

19              THE COURT:  AS YOU SAID EARLIER, MR. QUINN, YOU HAVE

20   A LOT OF WORK TO DO.                                          11:22

21              MR. QUINN:  THANK YOU, YOUR HONOR.

22              THE COURT:  THANK YOU, COUNSEL.

23              GOOD DAY.

24              MR. QUINN:  YOUR HONOR, I ASSUME THEY STILL HAVE TO

25   BE SERVED WITH SUBPOENAS IF THEY'RE NONPARTIES.              11:22
```

```
 1            THE COURT:  I THINK THAT'S PART OF THE RULES.

 2            MR. NOLAN:  OKAY.  YOUR HONOR, THESE LAST-MINUTE

 3   'HAIL MARY' PASSES CAUSE A LOT OF CONFUSION.  I'VE JUST GOT TO

 4   ADDRESS THIS.

 5            UP UNTIL NOW, MATTEL HAS ALWAYS INDICATED -- FIRST OF    11:22

 6   ALL, THEY NEVER OBJECTED TO THE FACT THAT WE DIDN'T ISSUE

 7   SUBPOENAS.  BUT WE'LL ISSUE SUBPOENAS.

 8            BUT MATTEL HAS TO BE AUTHORIZED TO ACCEPT SUBPOENAS,

 9   BECAUSE THEY HAVE OBJECTED IN THE PAST WHEN I'VE TRIED TO SERVE

10   SUBPOENAS OR SOMEBODY HAS SERVED SUBPOENAS ON THEM.               11:22

11            WILL THEY ACCEPT SUBPOENAS FOR THESE EMPLOYEES?

12            THE COURT:  MR. QUINN, WILL YOU ACCEPT SUBPOENAS FOR

13   YOUR MATTEL EMPLOYEES?

14            MR. QUINN:  NOT EX-EMPLOYEES.  MOST OF THESE ARE

15   EX-EMPLOYEES.                                                     11:22

16            AND I'VE GOT TO DEFER TO MR. ZELLER ABOUT THE

17   COMMITMENTS THAT WE'VE MADE BEFORE, WHICH WE STAND BY.

18            MR. ZELLER:  WE ABSOLUTELY STAND BY IT.  BUT THAT IS

19   NOT A CORRECT STATEMENT OF WHAT'S GOING ON HERE.

20            NUMBER ONE, TWO OF THE PEOPLE WHO ARE IDENTIFIED         11:23

21   HERE, MILT ZABLOW AND ROB SIMONEAU, ARE EX-EMPLOYEES.  THEY ARE

22   NOT EVEN CURRENT MATTEL EMPLOYEES.  THEY'VE NEVER BEEN SERVED

23   WITH A SUBPOENA.  WE'VE NEVER BEEN ASKED TO ACCEPT SERVICE OF

24   SUBPOENA FOR THEM.  SO THEY ARE EX-EMPLOYEES.  THE OTHER

25   PEOPLE, A NUMBER OF THEM, EXCEPT FOR THREE, ARE LOW-LEVEL         11:23
```

1   EMPLOYEES WHO ARE NOT SUBJECT TO RULE 30.

2          NOW, WHAT WE HAVE SAID IN TERMS OF OUR

3   REPRESENTATIONS TO ACCEPT SERVICE IS VERY SPECIFIC.  IT IS

4   MATTEL'S CURRENT DIRECTORS AND OFFICERS.  IT DOES NOT EXTEND TO

5   PEOPLE WHO ARE FORMER.  WE HAVE SAID, CERTAINLY, IF THERE ARE          11:23

6   FORMER PEOPLE THAT THEY WANT TO ASK US ABOUT --

7          **THE COURT:**  I'M GOING TO STOP YOU HERE FOR A SECOND.

8          THIS IS BEYOND THE SCOPE OF THE EX-PARTE APPLICATION.

9          ALL I'M DOING IS, I'M GRANTING THE EX-PARTE

10  APPLICATION IN TERMS OF THE COUNTING OF THE WITNESSES.  I'M NOT       11:23

11  GOING TO WADE INTO -- I NEED TO RETRACT MY STATEMENT IN TERMS

12  OF WHAT -- I'M NOT OFFERING ANY RULING RIGHT NOW WITH RESPECT

13  TO THE SERVICE OF SUBPOENAS.

14         **MR. NOLAN:**  FINE, YOUR HONOR.

15         COULD YOU JUST ORDER MATTEL TO ADVISE US BY CLOSE OF          11:24

16  BUSINESS TODAY OF THE TEN WHO THEY REPRESENT AND WHO THEY

17  DON'T.  I THINK THAT'S REASONABLE, ISN'T IT?

18         **MR. QUINN:**  THAT'S NO PROBLEM.

19         **THE COURT:**  VERY GOOD.  THAT'S NOT A PROBLEM.

20         THANK YOU, COUNSEL.                                           11:24

21

22

23

24  / / /

25  / / /

1                                CERTIFICATE

2

3    I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
4    THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
5    CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

6

7    _____          _____
     THERESA A. LANZA, CSR, RPR                              DATE
8    FEDERAL OFFICIAL COURT REPORTER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

     JANUARY 7, 2008                    BRYANT VS. MATTEL