1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                  EASTERN DIVISION

4                      - - -

5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                      - - -

7   MATTEL, INC.,                    )
                                     )
8                    PLAINTIFF,      )
                                     )
9            VS.                     )  NO. ED CV 04-09049
                                     )  (LEAD LOW NUMBER)
10  MGA ENTERTAINMENT, INC., ET. AL.,  )
                                     )
11                   DEFENDANTS.     )  MOTION HEARING
    _____)
12  AND CONSOLIDATED ACTIONS,        )
    _____)
13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16               RIVERSIDE, CALIFORNIA

17               MONDAY, JUNE 2, 2008

18                    1:33 P.M.

19

20

21

22

23            THERESA A. LANZA, RPR, CSR
            FEDERAL OFFICIAL COURT REPORTER
24           3470 12TH STREET, RM. 134
            RIVERSIDE, CALIFORNIA  92501
25                 951-274-0844
              WWW.THERESALANZA.COM

```
 1   APPEARANCES:

 2

 3

     ON BEHALF OF MATTEL:
 4
                         QUINN EMANUEL
 5                       BY:  HARRY A. OLIVAR
                         BY:  JON COREY
 6                       BY:  DYLAN PROCTOR
                         865 S. FIGUEROA STREET,
 7                       10TH FLOOR
                         LOS ANGELES, CALIFORNIA  90017
 8                       213-624-7707

 9

10   ON BEHALF OF MGA ENTERTAINMENT:

11                       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                         BY:  JASON RUSSELL
12                       BY:  JOSE ALLAN
                         300 SOUTH GRAND AVENUE
13                       LOS ANGELES, CALIFORNIA  90071-3144
                         213-687-5000
14

15

16

17

18

19

20

21

22

23

24

25
```

MONDAY, JUNE 2, 2008                      MOTIONS HEARING

1                        I N D E X

2                                                    PAGE

3   MOTIONS ....................................    4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MONDAY, JUNE 2, 2008                    MOTIONS HEARING

```
 1        RIVERSIDE, CALIFORNIA; MONDAY, JUNE 2 , 2008; 1:33 P.M.

 2                              -OOO-

 3        THE CLERK:  CALLING CALENDAR ITEM NINE, MATTEL INC.

 4   VERSUS MGA ENTERTAINMENT INC., AND RELATED ACTIONS, CV 04-9059.

 5        MAY WE HAVE COUNSEL PLEASE COME FORWARD AND STATE           01:33

 6   YOUR APPEARANCES FOR THE RECORD.

 7        MR. COREY:  JON COREY, HARRY OLIVAR, AND

 8   DYLAN PROCTOR FOR MATTEL.

 9        MR. RUSSELL:  JASON RUSSELL AND JOSE ALLAN FOR MGA.

10        THE COURT:  GOOD AFTERNOON TO YOU ALL.                      01:36

11        WE'RE ON CALENDAR FOR A SERIES OF MOTIONS THAT HAD

12   NOT BEEN ADDRESSED BY THE DISCOVERY MASTER BUT ARE RELATED TO

13   PHASE ONE OR SUBMITTED TO THE COURT AS BEING RELATED TO PHASE

14   ONE, WHICH I WANTED TO RULE ON BEFORE THE TRIAL WENT ANY

15   FURTHER.                                                         01:37

16        THE COURT HAS RECEIVED AND REVIEWED THE DOCUMENTS

17   SUBMITTED IN SUPPORT AND OPPOSITION TO THESE MOTIONS AND IS

18   PREPARED TO HEAR FURTHER ARGUMENT AT THIS TIME AND MAKE RULINGS

19   ON EACH OF THEM.

20        THE FIRST MOTION I HAVE BEFORE ME -- AND I'LL GO            01:37

21   THROUGH THEM IN THE ORDER THAT THEY WERE PRESENTED,

22   UNLESS THERE IS --

23        MR. RUSSELL:  I APOLOGIZE, BUT WE HAVE COUNSEL FOR

24   THIRD PARTY, MS. ANNE WONG'S COUNSEL IS HERE; THAT'S MOTION

25   SIX; I THOUGHT, JUST AS A COURTESY TO HER, WE COULD LET HER --   01:37
```

1        **THE COURT:**  LET'S TAKE THAT UP FIRST.  ABSOLUTELY.

2        THANK YOU, MR. RUSSEL.

3        NUMBER 6, MATTEL'S MOTION TO COMPEL PRODUCTION OF

4   DOCUMENTS BY ANNE WONG.

5        IS THERE ANYTHING FURTHER THAT'S NOT SET FORTH IN THE        01:37

6   PAPERS THAT COUNSEL WOULD LIKE TO ADDRESS AT THIS TIME?

7        **MR. PROCTOR:**  I'M HAPPY TO SUBMIT ON THE PAPERS.

8        **THE COURT:**  MA'AM?

9        **MS. BURROW:**  I'M HAPPY TO SUBMIT.

10       **THE COURT:**  OKAY.  VERY GOOD.                             01:38

11       THE COURT HAS REVIEWED THE PAPERS HERE.

12       MY DECISION IS TO GRANT THE MOTION WITH RESPECT TO

13  ALL NONPRIVILEGED INFORMATION ON THE RETENTION AGREEMENT WITH

14  CARTER BRYANT.  AS I UNDERSTAND IT, EVERYTHING HAS BEEN

15  RESOLVED BETWEEN THE PARTIES SINCE FILING THE MOTION, EXCEPT    01:38

16  FOR THAT RETENTION AGREEMENT WITH CARTER BRYANT.

17       THE EXAMPLES, TO NAME A FEW, OF THINGS THAT THE COURT

18  HAD IN MIND AS TO WHAT WOULD NOT BE PRIVILEGED WOULD BE, FOR

19  EXAMPLE, THE FAX HEADER; THE DATE OF THE AGREEMENT; ANY FACTUAL

20  IDENTIFICATIONS MADE WITHIN CONTEXT OF THE AGREEMENT.  BUT      01:38

21  CERTAINLY THE COURT COULD ALSO ENVISION -- AND I THINK EVEN

22  MATTEL CAN SEE THAT THERE MAY BE SOME PRIVILEGE INFORMATION

23  THEREIN -- BUT A REDACTED VERSION OF THE DOCUMENT THAT PROVIDES

24  ANY NONPRIVILEGED INFORMATION IS ORDERED PRODUCED.

25       AND I TRUST THAT CAN BE DONE, COUNSEL, WITHIN THREE        01:39

```
 1   DAYS OF TODAY'S DATE?

 2           MS. BURROW:  THAT SHOULD BE FINE, YOUR HONOR.

 3           THE COURT:  VERY WELL; SO IT'S ORDERED TO BE PRODUCED

 4   WITHIN THREE DAYS OF TODAY'S DATE.

 5           THANK YOU, COUNSEL.

 6           MS. BURROW:  THANK YOU, YOUR HONOR.

 7           THE FIRST MOTION IS MATTEL'S MOTION TO COMPEL

 8   DEPOSITIONS OF LITTLER MENDELSON.  THE COURT HAS RECEIVED AND

 9   REVIEWED THIS MOTION AS WELL.

10           THE COURT GAVE SOME THOUGHT TO HEARING FROM LITTLER    01:39

11   MENDELSON, BUT I TRUST THEY ARE AWARE OF THIS MOTION, OR AT

12   LEAST WERE AWARE INITIALLY OF THIS MOTION.

13           MR. PROCTOR:  LITTLER MENDELSON IS REPRESENTED BY THE

14   KEKER FIRM, YOUR HONOR, AND THEY WERE INVOLVED IN BRIEFING THE

15   MOTION.                                                       01:40

16           WE GAVE NOTICE, WE SENT AN E-MAIL TO THE KEKER FIRM

17   YESTERDAY, INDICATING THAT THE MOTION WAS GOING TO BE HEARD

18   TODAY.  I RECEIVED AN E-MAIL BACK FROM MR. WERDEGAR SUGGESTING

19   THAT BECAUSE THEY ARE IN SAN FRANCISCO IT WAS INSUFFICIENT

20   NOTICE, AND REQUESTING THAT THE MOTION NOT BE HEARD AT THIS    01:40

21   TIME.

22           WHAT I WOULD SUGGEST, IF I MAY MAKE A SUGGESTION, IS,

23   JUDGE INFANTE HAS REPEATEDLY ISSUED ORDERS ON DISCOVERY MOTIONS

24   WITHOUT ARGUMENT.  I'M HAPPY TO SUBMIT ON THE PAPERS.

25           THE COURT:  VERY WELL.                                01:40
```

1        **MR. RUSSELL:** YOUR HONOR, IF I MIGHT, SINCE I HAD THE

2   OPPORTUNITY TO SPEAK TO KEKER THIS MORNING.  I JUST WANTED TO

3   PUT ON RECORD THAT THE NOTICE MR. PROCTOR REFERRED TO WAS GIVEN

4   AT 9:39 P.M. LAST NIGHT, AND THEY ASKED IF THEY COULD BE HEARD

5   ON THIS MOTION; SO I'LL JUST PUT THAT ON THE RECORD.              01:40

6        **THE COURT:** VERY WELL.

7        I APPRECIATE THAT, MR. RUSSEL.

8        ORDINARILY, THE COURT WOULD FEEL COMFORTABLE, GIVEN

9   THE EXHAUSTIVE NATURE OF THE BRIEFS IN THIS CASE, TO RULE

10  WITHOUT ORAL ARGUMENT.  BUT IN LIGHT OF A RESPONSE FOR AN        01:41

11  OPPORTUNITY TO ADDRESS THE COURT, AND GIVEN THIS IS A FIRM THAT

12  IS NO LONGER IN THE CASE, I THINK PROBABLY THE BETTER PRACTICE

13  WOULD BE TO AFFORD AN OPPORTUNITY TO THE FIRM TO RESPOND.

14       SINCE THIS IS ON THE RECORD, I DON'T HAVE ANY

15  PROBLEM, MY TENTATIVE WOULD BE TO PERMIT A LIMITED DEPOSITION    01:41

16  ON CERTAIN LIMITED TOPICS.  BUT BEFORE I MAKE THAT FINAL, I

17  THINK IT'S ONLY FAIR TO LET LITTLER MENDELSON RESPOND.

18       YOU SPOKE TO MR. KEKER, THE FIRM.  DID YOU HAVE A

19  SENSE WHEN THEY MIGHT BE AVAILABLE?

20       **MR. RUSSELL:** NO, YOUR HONOR.  THEY SAID THEY NEEDED     01:42

21  MORE THAN 12 HOURS NOTICE.

22       **THE COURT:** FAIR ENOUGH.

23       **MR. RUSSELL:** IF I COULD ASK OF THE COURT, PERHAPS

24  IT'S NOT NECESSARY TO HAVE HEARING, DEPENDING ON WHAT HAPPENS

25  WITH YOUR TENTATIVE.  IF YOU'RE WILLING TO DO THAT, I THINK IT   01:42

1   MIGHT BE BETTER FOR ALL OF US TO HEAR WHERE YOUR TENTATIVE

2   LEANINGS ARE, AND THEN THEY CAN DECIDE IF FURTHER ARGUMENT IS

3   NECESSARY; PERHAPS THEY CAN INDICATE A DESIRE TO SUBMIT ON THE

4   PAPERS.

5               **THE COURT:**  VERY WELL.                                01:42

6               THE TENTATIVE THE COURT HAD WRITTEN UP WAS THAT

7   MATTEL'S MOTION TO COMPEL THE DEPOSITION OF LITTLER MENDELSON

8   WAS TO BE GRANTED.

9               THE LAW FIRM OF LITTLER MENDELSON IS ORDERED TO

10  DESIGNATE AND SUBMIT A PERSON MOST KNOWLEDGEABLE TO SIT FOR THE  01:42

11  DEPOSITION REGARDING NONPRIVILEGED PERCIPIENT INFORMATION

12  CONCERNING WHEN IT OBTAINED THE HARD DRIVES IN QUESTION; HOW

13  THEY WERE PRESERVED; WHEN THE DESK TOP WITNESSING, IF AT ALL;

14  AND ANY INFORMATION CONCERNING ALLEGATIONS OF THE DESTRUCTION

15  OF EVIDENCE.                                                     01:42

16              THE COURT FINDS THE INFORMATION SOUGHT IS RELEVANT;

17  CANNOT REASONABLY BE OBTAINED THROUGH OTHER MEANS; WOULD NOT,

18  AT THIS POINT, DISRUPT THE ADVERSARY LITIGATION PROCESS, GIVEN

19  THAT THE TRIAL IS UNDER WAY AND THAT THE DEFENDANTS HAVE

20  ALTERNATIVE COUNSEL; AND, GIVEN THE PARAMETERS SET FORTH ABOVE,  01:43

21  WOULD NOT INTRUDE UPON PRIVILEGED INFORMATION AS THAT

22  INFORMATION WOULD BE EXPRESSLY EXCLUDED FROM ANY SUCH

23  DEPOSITION.

24              BUT I WILL INDICATE THAT IS THE COURT'S TENTATIVE

25  RULING.  I WILL AFFORD LITTLER MENDELSON AN OPPORTUNITY TO       01:43

```
 1   RESPOND.  TODAY IS JUNE 2ND.  LET'S GIVE THEM UNTIL WEDNESDAY,
 2   AT 8:30 A.M. -- NOT WEDNESDAY.  LET'S SAY THURSDAY AT 8:30 A.M.
 3         WHILE I'M ON THE TOPIC OF WEDNESDAY, THE COURT HAS
 4   ANOTHER MATTER TO ATTEND TO, THAT IT WISHES TO ATTEND TO, ON
 5   WEDNESDAY AFTERNOON; SO I'M THINKING OF ONLY RUNNING THE TRIAL      01:44
 6   ON WEDNESDAY MORNING; BUT TO MAXIMIZE TRIAL TIME, START AT 8:30
 7   WITH THE JURY, ASSUMING THERE'S NO PROBLEM RUNNING FROM 8:30 TO
 8   11:30 OR CLOSE TO NOON AND WE'D GET AT LEAST A HALF DAY IN.
 9         THE COURT COULD ADJUST ITS AFTERNOON CALENDAR OR
10   SCHEDULE, IF EITHER PARTY HAD A WITNESS THAT COULD ONLY COME IN     01:44
11   THE AFTERNOON.  I KNOW THIS IS KIND OF SHORT NOTICE.  IF
12   THERE'S NOT, THE COURT WOULD PREFER TO BE DARK ON WEDNESDAY
13   AFTERNOON.
14         MR. COREY, CAN YOU SPEAK FROM MATTEL'S PERSPECTIVE ON
15   THIS?  IS THERE ANY PARTICULAR WITNESS THAT HAS TO APPEAR ON       01:44
16   WEDNESDAY AFTERNOON, THAT YOU ARE AWARE OF?
17         MR. COREY:  YOUR HONOR, I WILL NEED TO CHECK WITH
18   MS. O'CONNOR; SHE WAS THE WITNESS WHO WE HAD ASKED TO GO LATE
19   ON FRIDAY WITH.  I THINK SHE IS AVAILABLE ON WEDNESDAY
20   AFTERNOON, AND THAT'S WHEN SHE WAS AVAILABLE NEXT WEEK.            01:45
21         THE COURT:  RIGHT.
22         MR. COREY:  I NEED TO FIND OUT IF SHE IS AVAILABLE
23   SOME TIME LATER, BECAUSE I KNOW SHE HAS A BUSINESS TRIP TOWARD
24   THE END OF NEXT WEEK.  I'M NOT SURE WHAT HER SCHEDULE IS THE
25   FOLLOWING WEEK.                                                    01:45
```

1        **THE COURT:**  IF YOU COULD BE PREPARED TO SPEAK ON THAT

2   TOMORROW MORNING.

3        **MR. COREY:**  ABSOLUTELY.

4        **THE COURT:**  MR. RUSSEL?

5        **MR. RUSSELL:**  I'M SURE WE CAN BE ACCOMMODATING ON          01:45

6   THIS ISSUE.

7        **THE COURT:**  I'LL HEAR FROM YOU, MR. COREY, OR

8   SOMEONE, TOMORROW MORNING ON MS. O'CONNOR.

9        I DO RECALL WE DIDN'T GET TO HER ON FRIDAY AND SHE

10  HAD SOMEONE'S SURGERY TO ATTEND TO TODAY OR TOMORROW AND THAT     01:45

11  WEDNESDAY AFTERNOON WAS HER FIRST AVAILABILITY.  PERHAPS SHE

12  COULD COME THURSDAY MORNING.

13       **MR. COREY:**  ABSOLUTELY, YOUR HONOR.

14       **THE COURT:**  VERY GOOD.  THANK YOU.

15       THE NEXT MOTION IS MATTEL'S MOTION FOR                       01:45

16  RECONSIDERATION OF PORTIONS OF THE DISCOVERY MASTER'S

17  DECEMBER 31, 2007 ORDER.

18       THIS ORDER IS DENIED WITHOUT PREJUDICE TO REFILING

19  ONCE THE STAY ON PHASE TWO DISCOVERY IS LIFTED AND FOLLOWING A

20  RENEWED MEET AND CONFER CONCERNING THE SUBJECT MATTER OF THE      01:46

21  MOTION.

22       THE THIRD MOTION IS THE MOTION REGARDING -- I HAVE

23  SOME QUESTIONS REGARDING MGA'S MOTION TO QUASH THE DEPOSITION

24  SUBPOENA; THIS IS THE NUMBERING GAME, WHICH I THOUGHT I HAD

25  SUFFICIENTLY PUNTED TO THE DISCOVERY MASTER, BUT APPARENTLY IT    01:46

1   HAS BEEN THROWN RIGHT BACK TO THIS COURT, AS IT'S NEVER BEEN

2   WORKED OUT.  I WANT TO TRY AND KEEP THIS AS SIMPLE AS POSSIBLE.

3   AS MANY TIMES AS I'VE REVIEWED THE PAPERS, I COULDN'T GET A

4   CLEAR UNDERSTANDING OF EXACTLY THE NUMBER OF DEPOSITIONS THAT

5   HAVE BEEN NOTICED AND/OR COMPLETED BY MATTEL.  AND SUBTRACT          01:46

6   FROM THAT NUMBER THOSE DEPOSITIONS THAT THE COURT SPECIFICALLY

7   AUTHORIZED JANUARY 7TH.

8           I BELIEVE I HAVE CLARIFIED IN MY FEBRUARY MINUTE

9   ORDER THAT THE GOOD CAUSE THE COURT FOUND FOR ADDITIONAL

10  DEPOSITIONS -- AND I BELIEVE I ENUMERATED WHO THOSE DEPOSITIONS      01:47

11  APPLIED TO -- WERE OVER AND ABOVE THE 24; SO THIS SHOULD BE A

12  RATHER SIMPLE PROCESS OF DETERMINING THE TOTAL NUMBER OF

13  DEPOSITIONS NOTICED OR CONDUCTED BY MATTEL; TAKING OUT THOSE

14  THAT WERE REFERENCED IN THE JANUARY 7TH ORDER; AND THEN

15  DETERMINING WHETHER OR NOT, AFTER DOING THAT SUBTRACTION, WE         01:47

16  HAVE 24 OR LESS DEPOSITIONS.

17          MR. COREY?

18          **MR. COREY:**  AND I APPRECIATE THE EFFORT THAT THE

19  COURT HAS GONE THROUGH TO PROVIDE US WITH THAT GUIDANCE.  BUT

20  WITH RESPECT TO THIS MOTION, I'M NOT SURE THAT REMAINS A LIVE       01:47

21  ISSUE.

22          THIS WAS THE MOTION THAT WE DISCUSSED WHERE I THOUGHT

23  WE HAD NARROWED THE ISSUE FOR THIS PARTICULAR MOTION TO THE

24  WACHOVIA SUBPOENA AND POTENTIALLY THE MOSS ADAMS SUBPOENA,

25  BECAUSE MOST OF THE INDIVIDUALS IDENTIFIED IN THIS MOTION           01:47

```
 1    ACTUALLY HAVE BEEN DEPOSED, SO THOSE ARE OFF THE TABLE.

 2            THE COURT:  ALL RIGHT.

 3            BUT STILL, WHETHER OR NOT THERE'S ANY DEPOSITIONS

 4    LEFT TO BE TAKEN TURNS ON THE ANALYSIS I SET FORWARD.

 5            I'M NOT AT THIS POINT CONSIDERING GOOD CAUSE FOR AN    01:48

 6    ADDITIONAL DEPOSITION; IT'S SIMPLY A MATTER OF WHETHER OR NOT

 7    YOU HAVE ANOTHER DEPOSITION TO TAKE.

 8            MR. COREY:  AND TO BE CLEAR, WITH RESPECT TO WACHOVIA

 9    AND MOSS ADAMS, THOSE ARE THIRD PARTIES FOR WHOM THE COURT HAS

10    ALREADY FOUND GOOD CAUSE IN THE ORDER.                        01:48

11            THE COURT:  OKAY.  THEN WHAT'S THE ISSUE?

12            MR. COREY:  THE ISSUE IS ONE OF SCOPE, I BELIEVE.

13    AND PERHAPS I'M SPEAKING OUT OF TURN.  IT'S MGA'S MOTION, BUT I

14    DIDN'T WANT THE COURT TO GO TOO FAR DOWN A PATH WHERE IT DIDN'T

15    HAVE TO GO.                                                   01:48

16            THE COURT:  I APPRECIATE THAT.  IT MAY BE TOO LATE

17    FOR THAT, BUT I APPRECIATE IT NONETHELESS.

18            MR. COREY:  I APOLOGIZE FOR NOT BEING --

19            THE COURT:  I KNOW YOU DID MENTION THIS ON FRIDAY,

20    AND PERHAPS I WASN'T FOLLOWING AS WELL AS I SHOULD HAVE.      01:48

21            MR. COREY:  WITH RESPECT TO THIS MOTION AND WITH

22    RESPECT TO WACHOVIA AND MOSS ADAMS, YOUR HONOR, THERE WAS AN

23    ORDER THAT JUDGE INFANTE ISSUED THAT WAS REVISITED A LITTLE

24    BIT.

25            THE COURT:  CAN YOU REFER ME TO THE PAGES OF THE      01:49
```

1    MOTION AND THE OPPOSITION THAT ARE AT ISSUE, THEN?

2            **MR. COREY:**  I CAN, YOUR HONOR.

3            I'M LOOKING AT THE AMENDED NOTICE OF MOTION.

4            **THE COURT:**  THE FIRST OR THE SECOND?

5            **MR. COREY:**  THE SECOND AMENDED MOTION; THAT WOULD BE    01:49

6    SECTION 2-C WHICH STARTS ON PAGE 11; AND IN THE OPPOSITION,

7    YOUR HONOR, THE DISCUSSION STARTING ON PAGE 5.

8            **THE COURT:**  AGAIN, THE DOCUMENT SUBPOENAS I

9    REFERENCED HERE ARE THE SUBJECT OF THE MOTION TO QUASH, WHICH I

10   DENIED LAST WEEK; CORRECT?                                       01:50

11           **MR. COREY:**  JUDGE INFANTE ISSUED AN ORDER COMPELLING

12   WACHOVIA TO PRODUCE DOCUMENTS PURSUANT TO THE DOCUMENT

13   SUBPOENA.  WACHOVIA WAS BEING, WE THOUGHT, STINGY WITH RESPECT

14   TO THE DOCUMENTS IT'S PRODUCING.  WE BROUGHT THAT TO THE

15   ATTENTION OF THE COURT, AND WACHOVIA HAS SINCE PRODUCED 1,500    01:51

16   PAGES.

17           **THE COURT:**  AND IT'S PURSUANT TO THOSE DOCUMENTS THAT

18   YOU WANT TO CONDUCT THIS DEPOSITION?

19           **MR. COREY:**  CORRECT.  THERE WAS AN AGREEMENT OR A

20   REPRESENTATION MADE TO JUDGE INFANTE, BY MR. KENNEDY BASED ON    01:51

21   AN AGREEMENT THAT HE AND I HAD REACHED, THAT WE HAD PROPOSED

22   THAT THE SCOPE OF THE DEPOSITION OUT OF WACHOVIA BE PARALLEL

23   WITH THE RULINGS THAT JUDGE INFANTE MADE WITH RESPECT TO

24   WACHOVIA.  AND THAT'S THE RELIEF I THINK THAT --

25           **THE COURT:**  IF THIS IS THE ONLY ISSUE THAT'S LEFT,    01:51

```
 1   MR. RUSSEL, LET ME HEAR FROM YOU ON THIS.

 2            THERE'S NO QUESTION IN THE COURT'S MIND THAT IT WAS

 3   APPROPRIATE FOR ALL OF THE DOCUMENTS RELATED IN THE LOAN, 1999

 4   TO 2000, TO BE TURNED OVER; THE COURT MADE THAT RULING LAST

 5   WEEK.  APPARENTLY THESE WERE NOT THE SUBJECT OR WERE NOT          01:52

 6   INCLUDED IN THE DEPOSITION THAT WAS DONE EARLIER?  IS THAT

 7   YOUR --

 8            MR. RUSSELL:  I DON'T THINK THERE WAS A DEPOSITION.

 9            THE COURT:  THERE NEVER WAS A DEPOSITION?

10            MR. RUSSELL:  JUST TO BE CLEAR, THE WAY IT WORKED WAS    01:52

11   THERE WAS A DEPOSITION SUBPOENA FOR DOCUMENTS AND THEN A

12   DEPOSITION SUBPOENA FOR TESTIMONY.  IT WAS MGA'S POSITION THAT

13   THE TWO WERE INTERRELATED; THAT IS TO SAY, THE MOTION TO QUASH

14   AS TO THE DOCUMENTS WERE GRANTED, THERE WOULDN'T BE A NEED FOR

15   DEPOSITION WITH TESTIMONY; SO THE TWO WERE LINKED.               01:52

16            THE COURT:  WHY WERE THEY SEPARATED BY MATTEL TO

17   BEGIN WITH, MR. COREY?

18            MR. COREY:  YOUR HONOR, I DON'T KNOW THE ANSWER TO

19   THAT QUESTION.

20            THE COURT:  DO YOU AGREE IT MAKES SENSE THAT THE TWO     01:52

21   ARE CONNECTED?

22            MR. COREY:  THEY ARE ABSOLUTELY CONNECTED.

23            THIS IS SPECULATION, BUT, WE DID NOT KNOW EXACTLY

24   WHAT WACHOVIA'S ROLE WAS, AND WE WANTED TO SEE IF THERE WERE

25   DOCUMENTS RELATED TO ANYTHING BEFORE WE UNDERTOOK THE            01:52
```

```
1   DEPOSITION.

2        THE COURT:  I SEE.  I WILL AGREE WITH YOU,

3   MR. RUSSEL.  AT THIS POINT, ESSENTIALLY, THEY ARE ONE AND THE

4   SAME.

5        NOW THAT THE COURT HAS RULED THE DOCUMENTS ARE TO BE          01:53

6   PRODUCED, WHY SHOULDN'T THERE BE A DEPOSITION OF THAT PERSON?

7   ASSUMING THAT THERE'S NOT A COUNTING ISSUE.

8        MR. RUSSELL:  WELL, I'LL COME BACK TO THE COUNTING

9   ISSUE.  BUT WITH RESPECT TO THAT ISSUE ABOUT WHETHER THERE

10  SHOULD BE A DEPOSITION, YOUR HONOR HAD RULED THAT WACHOVIA TURN   01:53

11  OVER THE DOCUMENTS AND HAS MADE FURTHER RULINGS WITH RESPECT TO

12  WHAT THE PURPOSE OF THOSE DOCUMENTS ARE SUPPOSED TO BE.  THAT

13  IS TO SAY THAT, IF I UNDERSTOOD YOUR HONOR'S PRIOR RULINGS,

14  WE'RE NOT GOING TO HAVE ANY DISPUTE ABOUT WHAT IT IS THAT

15  MR. LARIAN'S WEALTH AND ASSETS ARE, AND THAT'S REALLY WHAT THE   01:53

16  WACHOVIA PRODUCTION WAS GOING TO.

17        I'M NOT SURE WE NEED THIS DEPOSITION WITHOUT REGARD

18  TO THE COUNTING ISSUES.  WE'RE IN THE MIDDLE OF TRIAL.  THEY

19  HAVE THE DOCUMENTS.  IF THIS IS A QUESTION OF AUTHENTICITY OR

20  SOMETHING LIKE THAT, THAT SEEMS POSSIBLE.  BUT JUST AT BASE,     01:53

21  I'M NOT SURE WE NEED THE DEPOSITION IN THE FIRST INSTANCE.

22        THE COURT:  YOU SAID ABOUT WEALTH, BECAUSE THESE ARE

23  LOANS MADE TO MGA PRESUMABLY TO UNDERWRITE -- I THINK FROM

24  MATTEL'S PERSPECTIVE TO UNDERWRITE THE BRATZ PROJECT; SO THIS

25  HAS NOTHING DO WITH MR. LARIAN'S WEALTH.                         01:54
```

1          **MR. RUSSELL:**  HIS POSITION -- IF I UNDERSTOOD THE

2   PRIOR DISCUSSION ON THIS WACHOVIA ISSUE, THOSE TWO ARE

3   INTERRELATED; THAT IS TO SAY, THE REASON THEY WANT THE WACHOVIA

4   DOCUMENTS IS TO SHOW WHAT THE FINANCIAL POSITION OF THE COMPANY

5   WAS AT THE TIME.                                              01:54

6          **THE COURT:**  VERY WELL.

7          MR. COREY?

8          **MR. COREY:**  THAT'S ACTUALLY NOT WHAT WE'RE SEEKING.

9          THE SCOPE OF THE DOCUMENTS THAT WERE PRODUCED WERE

10  LIMITED, AS THE COURT PROPERLY IDENTIFIED, TO A LINE OF CREDIT  01:54

11  THAT EXTENSIONS OR LOANS, OR HOWEVER YOU WANT TO CHARACTERIZE

12  IT --

13         **THE COURT:**  AND YOU JUST WANT TO DO A DEPOSITION WITH

14  RESPECT TO THOSE DOCUMENTS.

15         **MR. COREY:**  CORRECT.                               01:54

16         FOR EXAMPLE, ONE OF THE DOCUMENTS WACHOVIA PRODUCED

17  ON WEDNESDAY OR THURSDAY OF LAST WEEK WAS CARTER BRYANT'S

18  AGREEMENT; AND SO WE THINK THERE'S SOME INQUIRY THAT NEEDS TO

19  BE MADE THERE.

20         I DON'T THINK IT NEEDS TO BE A LONG DEPOSITION, AND     01:55

21  ONE OF MY ASSOCIATES HAS CONFERRED WITH COUNSEL FOR WACHOVIA TO

22  SEE IF WE CAN RESOLVE THIS BY AGREEMENT.  WHAT HE SAID IS THAT

23  HE WOULD AWAIT THE COURT'S ORDER.  I DON'T THINK WE NEED A

24  LONG, BUT I THINK SOME INQUIRY NEEDS TO BE MADE.

25         **THE COURT:**  IS TWO HOURS SUFFICIENT?               01:55

1          **MR. COREY:**  YES, YOUR HONOR.

2          **THE COURT:**  MR. RUSSEL?

3          **MR. RUSSELL:**  WELL, MAYBE WE HAVE THE CART BEFORE THE

4    HORSE.  IF IT'S POSSIBLE TO RESOLVE IT WITHOUT DEPOSITION, WHY

5    DON'T WE SEE IF WE CAN DO THAT.  THAT CERTAINLY MAKES SENSE TO          01:55

6    ME.

7          IF NOT, THAT'S FINE.  A TWO-HOUR DEPOSITION WOULD BE

8    FINE, IF IT'S LIMITED TO PRODUCTION AND AUTHENTIFICATION OF

9    DOCUMENTS.  BUT THAT TAKES US TO THE SECOND ISSUE, AND THAT IS

10   THE COUNTING ISSUE.                                                     01:55

11         MR. COREY IS CORRECT, IF I READ THE VARIOUS BACK AND

12   FORTH, MOST OF THE DEPOSITIONS THAT WERE REFERENCED IN THE

13   SECOND AMENDED SUPPLEMENTAL NOTICE HAVE BEEN TAKEN.  THERE ARE,

14   BY MY COUNT, FOUR THAT HAVE NOT:  CECELIA KWOK, MOSS ADAMS,

15   CAROL WITSCHELL, AND WACHOVIA.  SO IF IT'S THE POSITION OF          01:56

16   MATTEL THAT AS TO ALL BUT WACHOVIA, THAT THEY DON'T WANT THEM,

17   THEN THERE'S NOTHING MORE TO FIGHT ABOUT.  IF IT'S JUST

18   WACHOVIA, THEN WE'LL SUBMIT ON WHAT YOUR HONOR IS PREPARED TO

19   DO.

20         **THE COURT:**  WHAT'S YOUR THOUGHT ON THESE THREE OTHER          01:56

21   DEPOSITIONS IDENTIFIED BY MR. RUSSELL?  ARE YOU PLANNING TO

22   PROCEED WITH THOSE DURING THIS TRIAL?

23         **MR. COREY:**  WITH RESPECT TO MS. WITSCHELL, NO, AND

24   CECELIA KWOK, I BELIEVE THE ANSWER IS NO.

25         WE DO THINK IT WOULD BE APPROPRIATE TO HAVE A SHORT          01:56

```
 1   DEPOSITION OF MOSS ADAMS FOR THE REASON THE COURT IDENTIFIED

 2   WITH RESPECT TO THE MOTION ON MR. LARIAN'S -- THE QUESTION OF

 3   MR. LARIAN'S WEALTH AND THE COURT GRANTED THE ORDER --

 4           THE COURT:  WHO IS MOSS ADAMS, AGAIN?

 5           MR. COREY:  MR. LARIAN'S ACCOUNTANT.                    01:56

 6           MR. RUSSELL:  HIS PERSONAL ACCOUNTANT.

 7           MR. COREY:  AGAIN, I DON'T THINK WE WOULD NEED A LONG

 8   DEPOSITION.  BUT I DO THINK IT'S WORTH POINTING OUT THAT ONE OF

 9   THE ARGUMENTS MADE IN THE PAPERS WITH RESPECT TO MOSS ADAMS --

10   AND I'M QUOTING FROM PAGE 15 OF MGA'S REPLY -- "OF COURSE, THE   01:57

11   BEST SOURCE OF TESTIMONY ABOUT THESE DOCUMENTS AND TOPICS --

12   REFERRING TO THE TOPICS FOR THE MOSS ADAMS DEPOSITION -- IS

13   MR. LARIAN HIMSELF."

14           AND AS THE COURT RECOGNIZES, WE'VE BEEN DOWN THAT

15   PATH AND WE'VE RUN INTO A DEAD-END.                             01:57

16           THE COURT:  GIVEN THE COURT'S RULINGS, THOUGH, ON

17   WHAT MR. LARIAN NEEDS TO BE PREPARED TO DO -- AND I'VE ALREADY

18   GRANTED YOUR MOTION REQUIRING THEM TO BRING THE DOCUMENTS

19   SUPPORTING HIS POSITION IN THE COMPANY AND WHAT REVENUES WERE

20   GENERATED BY IT -- GIVEN THAT, IS IT STILL NECESSARY?          01:57

21           MR. COREY:  I THINK IF WE CAN GET THE DOCUMENTS AND

22   LOOK AT THEM IN THE MORNING, BEFORE MR. LARIAN TAKES THE STAND,

23   THEN PERHAPS THERE IS NO NEED TO DO THAT HERE, TO TAKE MOSS

24   ADAMS' DEPOSITION.

25           I UNDERSTAND THE COURT HAS INSTRUCTED MR. LARIAN TO    01:58
```

1  BE PREPARED TO TESTIFY, BUT I THINK THERE'S SOME PREJUDICE TO

2  MATTEL IN BEING DEPRIVED OF THE ABILITY TO CROSS-EXAMINE

3  WHATEVER MAY COME OUT OF HIS MOUTH WITHOUT HAVING SOME IDEA OF

4  WHAT HE'S GOING TO SAY.

5      **THE COURT:**  IF PLAINTIFF WERE BEING REPRESENTED BY A      01:58

6  SOLE PRACTITIONER, COMPLETELY ABSORBED IN DOING WHATEVER --

7  GIVEN THE RESOURCES AVAILABLE, I THINK THAT WHEN THOSE

8  DOCUMENTS COME IN, YOU'LL HAVE AN OPPORTUNITY TO REVIEW THEM,

9  OR SOMEONE ON YOUR TEAM WILL.

10      **MR. COREY:**  I'M SURE SOMEONE ON MY TEAM WILL.      01:58

11      **THE COURT:**  THIS IS WHAT I'M GOING TO DO.

12      MGA'S MOTION TO QUASH THE DEPOSITION IS GRANTED IN

13  PART AND DENIED IN PART.  IT IS DENIED WITH RESPECT TO

14  WACHOVIA.  I'M GOING TO AFFORD LEAVE FOR A 2-HOUR DEPOSITION

15  WITH THE CUSTODIAN OR PERSON MOST KNOWLEDGEABLE AT WACHOVIA.      01:58

16  IT SOUNDS LIKE YOU'RE ALREADY IN CONTACT WITH SOMEBODY,

17  MR. COREY, IN TERMS OF WHO WOULD SIT FOR THAT?

18      **MR. COREY:**  IN TOUCH WITH THEIR COUNSEL.  I'M NOT

19  SURE WHO WOULD SIT, BUT I CAN CONVEY THAT.

20      **THE COURT:**  I TRUST THEY WILL DESIGNATE THE PERSON      01:59

21  MOST KNOWLEDGEABLE ABOUT THESE DOCUMENTS.

22      **MR. COREY:**  I'M SURE THEY WILL.

23      **THE COURT:**  VERY WELL.

24      OTHERWISE, THE MOTION IS GRANTED, AND THERE WILL BE

25  NO FURTHER DEPOSITIONS DURING PHASE ONE.      01:59

1          **MR. COREY:**  THANK YOU, YOUR HONOR.

2          **THE COURT:**  VERY WELL.

3          BOY, I'D LOVE TO SKIP OVER THIS NEXT ONE, BUT I AM

4    NOT ABLE TO.  THERE ARE THREE MOTIONS TOGETHER.  MATTEL'S

5    MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS WITHHELD AS          01:59

6    PRIVILEGED.  THESE THREE MOTIONS, AND, TO A LESSER EXTENT, THE

7    NEXT ONE WHICH ALSO DEALS WITH PRIVILEGE, WERE THE ONES THAT

8    CONSUMED MOST OF THE COURT'S TIME THIS WEEKEND.

9          THERE ARE COMPETING COMPLICATIONS HERE.

10         ON THE ONE HAND, MGA IS CORRECT IN POINTING OUT THAT         01:59

11    THESE ARE KIND OF BROAD CATEGORICAL DEMANDS.  ON THE OTHER

12    HAND, I'M SOMEWHAT SYMPATHETIC TO MATTEL'S POSITION THAT GIVEN

13    THE BREADTH OF DOCUMENTS INVOLVED, AND GIVEN THE CATCH-22

14    POSITION, OF COURSE, OF ANYONE CHALLENGING A PRIVILEGE LOG,

15    IT'S DIFFICULT TO PROCEED BY ANY OTHER WAY THAN BY BROAD          02:00

16    CATEGORICAL DEMANDS.

17         MY TENTATIVE THOUGHT IS, I DON'T THINK THERE'S A

18    SUFFICIENT SHOWING TO ORDER MGA SIMPLY TO TURN OVER, WHOLESALE,

19    THESE BROAD CATEGORIES.

20         ON THE OTHER HAND, I DO THINK THAT PERHAPS, AIDED BY         02:00

21    THE COURT'S RULINGS ON SOME OF THE ISSUES OF CONTENTION BETWEEN

22    THE PARTIES, IT MIGHT BE APPROPRIATE FOR MGA TO REVISIT THE

23    DOCUMENTS ON THEIR PRIVILEGED LOG TO DETERMINE WHETHER OR NOT

24    THESE DOCUMENTS ARE TRULY PRIVILEGED, AND PARTICULARLY WHETHER

25    THEY ARE ENTIRELY PRIVILEGED AS OPPOSED TO BEING ONLY PARTIALLY   02:00

```
 1   PRIVILEGED IN WHICH REDACTIONS CAN PERHAPS BE SUBMITTED.
 2         I ALSO GET THE SENSE, IN GOING THROUGH THIS --
 3   THERE'S A SERIES OF MOTIONS HERE, AND THEN THERE'S A SERIES OF
 4   SUPPLEMENTAL MOTIONS AND OPPOSITIONS AND REPLIES -- THAT THE
 5   LANDSCAPE HAS CHANGED, PERHAPS, SINCE THESE MOTIONS WERE FIRST    02:01
 6   FILED AND PERHAPS EVEN SINCE THE SUPPLEMENTAL MOTIONS HAVE BEEN
 7   FILED; SO I SUPPOSE WHERE I WANT TO START THESE PARTICULAR
 8   MOTIONS IS BY HEARING FROM COUNSEL IN TERMS OF WHERE WE ARE AS
 9   OF THIS DATE, AND HAVE WE SUFFICIENTLY NARROWED THE ISSUES.
10         MR. OLIVAR:  I WISH I COULD SAY WE HAD, YOUR HONOR.         02:01
11         YOUR HONOR IS CORRECT IS THAT THE VOLUME INVOLVED IS
12   PROBLEMATIC.  BUT OUR VIEW IS IT'S A PROBLEM OF MGA'S OWN
13   CREATION.  AS SET FORTH IN THE PAPERS, MGA WAS ORDERED TO
14   PROVIDE PRIVILEGE LOGS BY JULY OF 2007, AND THE LOGS WE'RE
15   ARGUING TODAY WERE PRODUCED IN NOVEMBER; FOUR OF THEM IN         02:02
16   JANUARY AND TWO IN MARCH; SO THESE WERE PRODUCED OVER THE LAST
17   SIX MONTHS, MANY EITHER DAYS BEFORE OR AFTER THE DISCOVER
18   CUTOFF.  BY THE TIME THEY WERE ORDERED TO PRODUCED, THEY LODGED
19   100 DOCUMENTS.  NOW WE'RE WELL OVER 10,000; I THINK THE CORRECT
20   NUMBER IS 12,000.  AND THE ONES WE'VE CHALLENGED AS PROBLEMATIC  02:02
21   WHICH INCLUDE MULTIPLE COMMUNICATIONS AMONG NONLAWYERS, ALSO
22   COMMUNICATIONS INVOLVING LICENSEES, WHICH JUDGE INFANTE FOUND
23   THERE WAS NO SHOWING TO JUSTIFY COMMON INTEREST CLAIM.
24         THE COURT:  LET ME STOP YOU THERE.
25         WHEN I FIRST READ YOUR MOTION AND YOU SAY THAT             02:02
```

```
 1   THERE'S THOUSANDS OF DOCUMENTS, COMMUNICATIONS BETWEEN

 2   NONLAWYERS, AND I CAN UNDERSTAND AT FIRST BLUSH WHERE REVIEWING

 3   THAT, WAIT A SECOND HERE, THERE'S GOT TO BE SOMETHING IN THIS

 4   THAT'S NOT PRIVILEGED.

 5          MR. RUSSEL OR MGA RESPONDS BY SAYING THAT -- AND IT'S    02:02

 6   A POINT WELL TAKEN -- THAT NONLAWYERS, NONLAWYER EMPLOYEES IN

 7   THE COMPANY COULD BE DISCUSSING, IN AN E-MAIL, LEGAL ADVICE

 8   RECEIVED FROM COUNSEL.  AND PROVIDED THAT DOESN'T GET INTO A

 9   THIRD PARTY'S HANDS, THAT LEGAL ADVICE BEING DISCUSSED COULD BE

10   PRIVILEGED.                                                    02:03

11          I TRUST YOU'D AGREE WITH THAT.

12          MR. OLIVAR:  WE DO AGREE WITH THAT.

13          THE ISSUE IS THAT THE ENTIRE COMMUNICATIONS AMONG THE

14   NONLAWYERS HAVE BEEN WITHHELD; NO REDACTION OF JUST LEGAL

15   ADVICE.                                                        02:03

16          THE COURT:  IT'S ALSO CONCEIVABLE THAT AN ENTIRE

17   E-MAIL OR AN ENTIRE DOCUMENT IS DEVOTED TO A DISCUSSION OF THAT

18   OPINION.

19          SHORT OF ASKING THE COURT TO TAKE THESE DOCUMENTS

20   IN CAMERA AND REVIEW THESE THOUSANDS OF DOCUMENTS, I DON'T KNOW  02:03

21   WHAT MORE -- OTHER THAN, PERHAPS, DIRECT COUNSEL TO CERTIFY

22   THAT THEY HAVE REVIEWED ALL OF THESE DOCUMENTS -- WHICH IS

23   BASICALLY WHAT A PRIVILEGED LOG IS -- AND DETERMINE THAT EACH

24   ONE OF THESE, IN WHOLE OR IN PART, DEPENDING WHETHER THEY HAVE

25   REDACTED THEM OR NOT, CONTAINS PRIVILEGED INFORMATION.          02:04
```

1          I DON'T THINK THERE'S A BASIS TO SAY 'TURN OVER ALL

2    OF THE DOCUMENTS.'

3          I'M NOT INTERESTED IN LOOKING AT ALL OF THE

4    DOCUMENTS.  I THINK WE NEED TO RELY ON MGA THAT THEY HAVE FOUND

5    THAT THESE DOCUMENTS ARE PRIVILEGED.                              02:04

6          I'M NOT SAYING THAT I DON'T HAVE THE SAME PAUSE THAT

7    YOU HAVE WHEN I LOOK AT THE VOLUME OF IT, BUT --

8          **MR. OLIVAR:**  AS TO THAT FIRST CATEGORY, I TAKE YOUR

9    HONOR'S POINT.  I DON'T THINK IT WOULD BE APPROPRIATE TO SAY

10   'PRODUCE ALL OF THE DOCUMENTS.'                                   02:04

11         **THE COURT:**  OKAY.

12         **MR. OLIVAR:**  BUT I THINK IT IS INCONCEIVABLE, TALKING

13   ABOUT THESE DOCUMENTS INVOLVING NONLAWYERS, THAT EVERY WORD AND

14   EVERY SUBJECT MATTER OF ALL OF THEM WOULD BE PRIVILEGED.

15   CERTAINLY, SOME OF THESE E-MAILS INVOLVED SOME NONLEGAL ADVICE    02:04

16   AMONG THESE NONLAWYERS.

17         **THE COURT:**  I THINK I WOULD BE INCLINED TO DO IS

18   DIRECT COUNSEL TO TAKE A SECOND LOOK AT THEM.  BUT BEYOND THAT,

19   I DON'T REALLY SEE THE RELIEF, AT LEAST AS YOU REQUESTED IN THE

20   MOTION, AS BEING APPROPRIATE.                                     02:05

21         **MR. OLIVAR:**  FOR THE FIRST MOTION, THE COMMUNICATION

22   WITH NONLAWYERS, I THINK YOUR HONOR IS RIGHT; CERTIFICATION

23   WOULD BE APPROPRIATE.

24         **THE COURT:**  LET'S TALK ABOUT THOSE OTHER ONES,

25   BECAUSE I TEND TO AGREE, AND I'LL WANT TO HEAR FROM MR. RUSSELL   02:05

1  ON THIS, OR OTHER COUNSEL, THAT PURE TRADEMARK SEARCH RESULTS

2  AND REQUESTS, UNADORNED TRADEMARK SEARCH AND TRADEMARK

3  REQUESTS, TRADEMARK DATES OF FIRST USE.  THE ACTUAL FACTUAL

4  DATA THAT IS COMMUNICATED WITH RESPECT TO THAT, I THINK THE LAW

5  IS FAIRLY CLEAR THAT IS NOT PRIVILEGE.                          02:05

6         NOW, ATTORNEY OPINIONS CONCERNING THAT OR

7  INTERPRETING THAT OR ADVISING ON THE SUBMISSION OF TRADEMARK

8  DATES AND APPLICATIONS IS PRIVILEGED TO THE EXTENT THAT IT

9  OTHERWISE MEETS THE PRIVILEGE REQUIREMENTS.

10        THAT'S WHERE I SEE THE DISTINCTION.                      02:05

11        ADMITTEDLY, RELYING ON WHAT YOU'VE SUBMITTED TO THE

12  COURT IN TERMS OF WHATEVER HAS BEEN PRODUCED IN THE LOG, IT'S

13  NOT CLEAR AND IT NEEDS TO BE PERHAPS CLARIFIED THAT THAT IS THE

14  SAME UNDERSTANDING THAT HAS INFORMED MGA'S DESIGNATION OF

15  PRIVILEGED MATERIALS.                                          02:06

16        THAT'S MY TENTATIVE REACTION AFTER READING YOUR

17  BRIEFS AND CONSIDERING THEIR RESPONSES.

18        **MR. OLIVAR:**  WE DO HAVE MORE HUNDREDS OF DOCUMENTS IN

19  THAT SECOND CATEGORY, WHICH AT SOME LEVEL MUST IDENTIFY THE

20  TRADEMARK THAT WAS SEARCHED, THE RESULTS OF SOME SEARCH, AND A  02:06

21  DATE OF FIRST USE.  IT'S INCONCEIVABLE THERE COULD BE HUNDREDS

22  OF COMMUNICATIONS ABOUT TRADEMARK ISSUES WITHOUT HAVING SEARCH

23  RESULTS OR DATES OF FIRST USE INVOLVED IN SOME WAY, AND THAT

24  FACTUAL INFORMATION NEEDS TO BE PRODUCED.

25        IN FACT, IN THEIR BRIEF, I THINK THEY SAY 'THE            02:06

1    PROBLEM WITH THIS IS WE WOULD JUST BE PRODUCING ONE OR TWO

2    LINES FROM A DOCUMENT,' AND OUR RESPONSE IS 'THAT'S WHAT WE

3    WANT.'

4            **THE COURT:**  RIGHT.

5            THE THIRD CATEGORY, YOU TALK ABOUT THESE LICENSEES            02:06

6    AND THE OTHER DISTRIBUTORS.  THERE'S ONLY TWO IDENTIFIED.

7    BANDAI AND ACCLAIM GAMES; THOSE ARE THE TWO I'VE SEEN

8    IDENTIFIED.  YOU REFER TO BANDAI AND OTHERS; MGA COMES BACK AND

9    SAYS BANDAI AND ACCLAIM GAMES.

10           YOUR REFRAIN IS THAT THE LEGAL INTERESTS NEED TO BE            02:07

11   IDENTICAL.  THE LAW SEEMS TO INDICATE THAT THEY NEED TO BE

12   IDENTICAL OR NEARLY IDENTICAL.  THERE SEEMS TO BE SOME DEGREE

13   OF FLEXIBILITY.  IT'S NOT ABSOLUTELY IDENTICAL.  AND THEN, OF

14   COURSE, THAT SECOND ELEMENT OF WORKING TOGETHER IN A COMMON

15   EFFORT.                                                              02:07

16           BUT PROVIDED COUNSEL IS REPRESENTING THAT THAT'S

17   PRECISELY WHAT IS GOING ON HERE.  I MEAN, I CAN CERTAINLY SEE

18   WHERE A MANUFACTURER AND A DISTRIBUTOR OR A LICENSEE DOES HAVE

19   A COMMON INTEREST AND SIMILAR OR NEARLY IDENTICAL LEGAL

20   INTERESTS IN ENSURING THAT WHATEVER IT IS THAT IS BEING SOLD TO      02:07

21   THE CONSUMERS IS PROTECTED BY AN APPROPRIATE TRADEMARK AND/OR

22   COPYRIGHT SO THAT SOMEBODY ELSE, SOME OTHER MANUFACTURER AND/OR

23   DISTRIBUTOR AREN'T OUT THERE RIPPING THEM OFF.

24           **MR. OLIVAR:**  I THINK COUNSEL IS ARGUING THAT THE

25   LEGAL TEST IS MET BUT IS NOT PRESENTING ANY EVIDENCE THAT IT'S       02:08

1   MET.

2        **THE COURT:**  WHAT KIND OF EVIDENCE ARE YOU LOOKING

3   FOR?  THAT'S SOMETHING ELSE YOU SAY AS WELL, BUT I AM NOT SURE

4   WHAT YOU ARE LOOKING FOR.

5        **MR. OLIVAR:**  SOME TESTIMONY FROM A PERCIPIENT WITNESS          02:08

6   THAT BANDAI AND ACCLAIM GAMES HAVE AN IDENTICAL LEGAL ISSUE; IT

7   PUTS IT CLOSE TO IDENTICAL WITH MGA IN DEFENDING AGAINST THE

8   CLAIMS OF THIS LAWSUIT.

9        **THE COURT:**  SO YOU'RE LOOKING FOR A DECLARATION OR

10  SOMETHING TO THAT EFFECT.                                            02:08

11       **MR. OLIVAR:**  WE HAVE THAT, BUT IT REALLY SAYS NOTHING

12  AT ALL.  IT SAYS WE WORK WITH BANDAI CLOSELY, THEY HAVE VARIOUS

13  ROLES, THEY HAVE INTERESTS IN THE SALE OF BRATZ.  WE ACCEPT

14  THEY HAVE ECONOMIC INTERESTS AS A LICENSEE.  BUT THE CASE LAW

15  IS CLEAR THAT JUST BECAUSE SOMEONE IS INTERESTED IN THE SALES        02:08

16  OF BRATZ CONTINUING IN A COMMERCIAL SENSE, THAT DOES NOT COUNT

17  AS AN IDENTICAL OR MERELY AN IDENTICAL LEGAL INTEREST.

18       THERE'S NO EVIDENCE THAT BANDAI HAS BEEN WORKING WITH

19  MGA ON A COORDINATED LEGAL STRATEGY OR THAT ANY OF THESE

20  DOCUMENTS IN ANY WAY FIT INTO THAT STRATEGY.  THEY JUST HAVE         02:09

21  DOCUMENTS INVOLVING PRODUCT SALES OR INVOICES OR TRADEMARKS AND

22  THEY SAY PURSUANT TO COMMON INTEREST, AND THERE'S NO EVIDENCE

23  TO SATISFY ANY OF THE LEGAL TESTS AS TO THESE DOCUMENTS.

24       THE ONE DECLARATION THEY PUT IN, MR. KHARI, SAYS

25  NOTHING THAT WOULD SATISFY THE LEGAL TESTS.                          02:09

```
 1            SO THAT ONE I THINK IS SUSCEPTIBLE TO A CLEAR RULING.
 2    WE HIT A STONE WALL DURING MEET AND CONFER TRYING TO GET
 3    PRODUCTION OF THOSE DOCUMENTS.
 4            THE COURT:  VERY GOOD.
 5            MR. ALLAN, LET ME HEAR FROM YOU ON THIS.              02:09
 6            MR. ALLAN:  GOOD AFTERNOON, YOUR HONOR.
 7            JOSE ALLAN.  I'M FROM THE SKADDEN ARPS OFFICE IN SAN
 8    FRANCISCO.
 9            THE COURT:  WELCOME, COUNSEL.
10            MR. ALLAN:  I'VE SPENT QUITE A BIT OF TIME FOCUSED   02:10
11    JUST ON THESE PRIVILEGED LOG ISSUES, YOUR HONOR, AND THEY DO
12    BREAK DOWN INTO THREE GENERAL CATEGORIES; THOSE THAT THE CLAIM
13    IS MADE THAT THIS JUST REFLECTS COMMUNICATIONS AMONG IN-HOUSE
14    PERSONNEL AND NO LAWYER IS INVOLVED; THE SO-CALLED TRADEMARK
15    SEARCH RESULTS; AND THEN THE THIRD-PARTY COMMUNICATIONS.     02:10
16            LET'S DEAL WITH THE FIRST CATEGORY FIRST, BECAUSE I
17    HAVE HAD QUITE EXTENSIVE COMMUNICATIONS WITH THE QUINN FIRM
18    CONCERNING THE NATURE OF THE DOCUMENTS.
19            WHEN THIS ISSUE FIRST CAME UP, WE WENT BACK THROUGH
20    THE PRIVILEGED LOGS AND IDENTIFIED THE DOCUMENTS WHICH WE    02:10
21    BELIEVED COULD BE REDACTED AND PRODUCED IN PART WHERE THERE WAS
22    NONPRIVILEGED COMMUNICATIONS INVOLVED.  THE DOCUMENTS THAT
23    REMAINED ON THE LOG WERE DOCUMENTS IN WHICH INTERNAL MGA
24    PERSONNEL WERE DISCUSSING ADVICE RECEIVED FROM COUNSEL
25    CONCERNING A BROAD ARRAY OF MATTERS.  THOSE ARE THE DOCUMENTS 02:11
```

1    THAT WE'VE TOLD THEM WE HAVE DECIDED SHOULD NOT BE PRODUCED.

2    THEY WERE NOT SUSCEPTIBLE OF BEING PRODUCED IN REDACTED FORM.

3    BUT WE COMMITTED AND WE DID GO THROUGH AND REVIEW EVERY

4    DOCUMENT THAT THEY IDENTIFIED IN THEIR LETTER THAT THEY HAD

5    RAISED A QUESTION ABOUT, AND WE ASSURED OURSELVES THAT THE ONES    02:11

6    THAT WERE NOT BEING PRODUCED IN REDACTED FORM WERE

7    APPROPRIATELY WITHHELD ON THE GROUNDS OF PRIVILEGED LOGS.

8            **THE COURT:**  LET ME STOP YOU THERE.

9            CAN YOU REPRESENT THEN TO THE COURT YOU'VE DONE THAT

10   FOR NOT ONLY THE ONES THEY HAVE RAISED PERHAPS IN A LETTER OR    02:11

11   YOUR COMMUNICATIONS, BUT ALL OF THE ONES IDENTIFIED IN THIS

12   FIRST MOTION?

13           **MR. ALLAN:**  YES.

14           ONE OF THE PROBLEMS IS WE'VE HAD A MOVING TARGET

15   HERE.  I SAID, 'LOOK, I'M GOING TO GIVE YOU A REVISED LOG WHICH    02:11

16   IDENTIFIES DOCUMENTS WHICH HAVE BEEN PRODUCED IN REDACTED FORM

17   AND DOCUMENTS WHICH HAVE BEEN WITHHELD IN PART.'

18           **THE COURT:**  VERY WELL.

19           **MR. ALLAN:**  WE GAVE THEM THOSE LOGS.  AND I SAID,

20   'LOOK, ONCE YOU GET THOSE LOGS, I'D LIKE YOU TO GO THROUGH    02:12

21   THOSE NEW REVISED LOGS AND TELL ME WHICH DOCUMENTS YOU STILL

22   HAVE A PROBLEM WITH, THAT YOU'VE GOT SOME CONCERNS ABOUT.'

23           I GOT THAT LETTER.  I WENT BACK AND WENT THROUGH

24   THOSE DOCUMENTS AND WE IDENTIFIED THE ONES THAT WE BELIEVED ARE

25   APPROPRIATELY WITHHELD IN WHOLE; SO WE'VE BEEN THROUGH THAT    02:12

1   EXERCISE.

2         **THE COURT:**  WHAT ABOUT THE TRADEMARK SEARCH RESULTS

3   AND REQUESTS?

4         **MR. ALLAN:**  YOUR HONOR, YOU HIT THE NAIL RIGHT ON THE

5   HEAD WITH REGARD TO THE TRADEMARK SEARCH RESULTS.  WE HAVE NOT          02:12

6   WITHHELD FROM PRODUCTION DOCUMENTS WHERE SOMEBODY DID A

7   TRADEMARK SEARCH RESULT AND GOT A PRINTOUT BACK IDENTIFYING

8   WHAT OTHER MARKS WERE OUT THERE.

9         WHAT WE HAVE WITHHELD ARE DOCUMENTS IN WHICH COUNSEL

10   FOR MGA HAS SAID, 'LOOK, I'VE CONDUCTED A TRADEMARK SEARCH             02:13

11   RESULT AND THIS IS WHAT I DISCOVERED AND HERE'S MY ADVICE TO

12   YOU AS TO WHAT YOUR NEXT STEPS OUGHT TO BE.'

13         NOW, MR. OLIVAR HAS AGREED THAT THOSE TYPES OF

14   COMMUNICATIONS WOULD BE PRIVILEGED AND THAT THEY ARE NOT

15   SEEKING PRODUCTION OF THAT TYPE OF COMMUNICATIONS.                     02:13

16         **THE COURT:**  LET ME STOP YOU THERE.

17         I DON'T KNOW WHETHER HE DOES OR NOT.  I DON'T KNOW IF

18   I AGREE.

19         THE FIRST SENTENCE THAT YOU SAID THERE, IN YOUR

20   HYPOTHETICAL LETTER, 'I HAVE CONDUCTED A TRADEMARK SEARCH AND          02:13

21   THIS IS MY ADVICE TO YOU,' I AGREE THAT EVERYTHING AFTER 'THIS

22   IS MY ADVICE TO YOU...' IS REDACTED AND PROTECTED BY PRIVILEGE.

23   BUT THE FACT HE CONDUCTED OR SHE CONDUCTED A TRADEMARK SEARCH

24   RESULT, THAT FIRST PORTION, THAT IS NOT PROTECTED, UNDER MY

25   READING OF THE LAW.                                                    02:13

1              **MR. ALLAN:**  I UNDERSTAND THAT, YOUR HONOR.

2              BUT WE HAVE THE PRIVILEGED LOG THAT IDENTIFIES THE

3    SENDER OF THE LETTER, THE RECIPIENT OF THE LETTER, AND THAT IT

4    RELATES TO A TRADEMARK SEARCH OR COPYRIGHT MATTER.

5              **THE COURT:**  BUT COUNSEL POINTS IN HIS BRIEF THAT YOU         02:14

6    DON'T SPECIFY WHICH TRADEMARK SEARCH RESULTS YOU'RE REFERRING

7    TO.

8              IS THAT CORRECT?

9              **MR. ALLAN:**  THAT'S CORRECT.  WE DO NOT, IN ALL

10   INSTANCES, SPECIFY WHAT TRADEMARKS -- BECAUSE, YOUR HONOR, IT'S        02:14

11   A COMMUNICATION THAT'S PRIVILEGED.  WHAT WE WOULD END UP WITH

12   IS A LETTER THAT HAS AN ADDRESSEE ON IT, A DATE, AND A RE:

13   LINE, AND THEN THE ENTIRETY OF THE DOCUMENT IS REDACTED FROM

14   THERE ON OUT.

15             OUR SUBMISSION HAS BEEN, GIVEN THE DEMANDS OF THIS          02:14

16   CASE -- WE JUST DON'T SEE HOW THAT INFORMATION PROVIDES

17   ANYTHING OF BENEFIT TO MATTEL.  AND WE NOTE THAT MATTEL

18   CERTAINLY HAS NOT DONE THAT WITH RESPECT TO THE DOCUMENTS THEY

19   HAVE GIVEN US.  AND WE'RE NOT AWARE OF ANY CASE LAW THAT SAYS

20   THAT'S THE WAY YOU PARSE THROUGH THE REDACTIONS WHERE IT'S THE        02:15

21   DATE OF THE RECIPIENT, WHICH IS ALREADY ON THE PRIVILEGED LOGS,

22   THE RE:  LINE, AND THEN REMAINDER OF THE DOCUMENT IS THEN

23   REDACTED.

24             **THE COURT:**  THE CONCERN I THINK IS IN PART THAT

25   MATTEL DOES NOT HAVE A FULL ACCOUNTING FOR ALL OF THE TRADEMARK       02:15

1    SEARCH RESULTS THAT WERE DONE.

2            CAN YOU REPRESENT THAT IN ONE FORM -- I AM NOT

3    INTERESTED, AND I DON'T THINK MATTEL'S INTERESTED AT THIS

4    POINT, IN CUMULATIVE EVIDENCE.  BUT THE CONCERN IS, ARE THERE

5    ANY SEARCHES THAT MAY HAVE BEEN DONE OR SEARCH RESULTS RECEIVED    02:15

6    THAT ARE NOT OTHERWISE ACCOUNTED FOR IN EVIDENCE THAT YOU HAVE

7    PRODUCED?

8            AND IF YOU'RE NOT SURE, JUST TELL ME THAT.

9        **MR. ALLAN:**  I HAVE A PRETTY GOOD IDEA, BUT I DON'T

10   WANT TO MAKE A REPRESENTATION ON THE RECORD NOW UNTIL I'M    02:15

11   ABSOLUTELY SURE OF THAT.

12           BUT ONE OF THE THINGS THAT I DID RAISE HERE IS A WAY

13   OF TRYING TO NARROW THE NUMBER OF DOCUMENTS IN PLAY, BECAUSE

14   WE'VE GOT ABOUT 1,500 DOCUMENTS THAT ARE THE SUBJECT OF

15   QUESTION, WAS TO SEE IF WE COULD BRING OUR FOCUS DOWN TO THE    02:16

16   ONES THAT WERE RELEVANT TO PHASE 1-A AND LOOK AT THE DOCUMENTS

17   FROM THAT STANDPOINT AND SAY, OKAY, ARE THERE ANY PHASE 1-A

18   DOCUMENTS ON THE LIST THAT YOU HAVE RAISED THAT WE REALLY NEED

19   TO FIGHT OVER?

20           BUT I CANNOT SAY FOR CERTAIN, AS I STAND HERE TODAY,    02:16

21   YOUR HONOR, WHETHER THOSE RELATE ONLY TO THE MARKS THAT HAVE

22   BEEN AT ISSUE.

23           **THE COURT:**  VERY GOOD.

24       **MR. ALLAN:**  I KNOW SOME OF THEM DO NOT.  THEY HAVE

25   NOTHING TO DO WITH THE ISSUES IN THE CASE.  THEY RELATE TO    02:16

1   OTHER PRODUCTS.  ONE OF THE REASONS WE ENDED UP WITH 10,000

2   DOCUMENTS ON THE LOG IS WE GOT A VERY BROAD DISCOVERY REQUEST

3   THAT SAYS 'PRODUCE EVERYTHING REFERING AND RELATING, MENTIONING

4   BRATZ'; SO YOU NOW, BY DEFINITION, END UP WITH A VERY, VERY

5   BROAD SWEEP OF DOCUMENTS.  NOW YOU'VE GOT TO CULL THROUGH FOR          02:17

6   PRIVILEGE, AND YOU END UP WITH A LOT OF PRIVILEGED DOCUMENTS

7   THAT HAVE NOTHING TO DO WITH PHASE 1-B OR PHASE 2.  THEY HAVE

8   NOTHING TO DO WITH THE LAWSUIT.

9           **THE COURT:**  THANK YOU.  VERY WELL.

10          I'D LIKE TO HEAR FROM YOU ON THE COMMON INTEREST              02:17

11  PRIVILEGE.

12          THE CONCERN THE COURT HAS HERE IS THAT MY

13  UNDERSTANDING OF THE COMMON INTEREST PRIVILEGE IS THAT, FIRST

14  OF ALL, THE PARTIES MUST HAVE AN ORDINARILY IDENTICAL EQUAL

15  INTERESTS AND, SECOND, COMMUNICATION MUST BE PART OF A            02:17

16  COORDINATED LEGAL STRATEGY.

17          THE CONCERN COUNSEL RAISES -- AND I THINK THIS MAY BE

18  WELL FOUNDED TO A CERTAIN EXTENT -- IS THAT THE EVIDENCE THAT

19  YOU HAVE SUBMITTED, THE DECLARATIONS, DOESN'T REALLY CAPTURE

20  THOSE ELEMENTS OR FULLY CAPTURE THOSE ELEMENTS.  I WANT TO MAKE   02:18

21  SURE ANYTHING THAT'S BEING WITHHELD ON A COMMON INTEREST

22  EXCEPTION TO THE ATTORNEY-CLIENT PRIVILEGE IS SOMEHOW BEEN

23  EVALUATED WITH THAT STANDARD IN MIND.

24          **MR. ALLAN:**  IT HAS BEEN, YOUR HONOR.

25          THIS WAS ANOTHER INSTANCE IN WHICH -- WE REFER TO           02:18

1   THEM AS THE BANDAI DOCUMENTS BECAUSE BANDAI REPRESENTS THE

2   OVERWHELMING NUMBER OF DOCUMENTS THAT FALL INTO THIS CATEGORY.

3            THE BANDAI DOCUMENTS, WE WENT BACK THROUGH AFTER

4   THOSE WERE RAISED AS AN ISSUE, AND WE TOOK ANOTHER LOOK AT THEM

5   AND WE MADE SURE -- MGA HAS A NUMBER OF DIFFERENT RELATIONSHIPS       02:18

6   WITH BANDAI.  ONE RELATIONSHIP IS CLEARLY AS A DISTRIBUTOR.  SO

7   WITH RESPECT TO ORDERING INFORMATION, INVOICING, SHIPPING, THAT

8   KIND OF STUFF, WE ACKNOWLEDGE THAT'S NOT PRIVILEGED, AND THAT

9   WAS PRODUCED.  THAT'S NOT THE ISSUE.

10           BANDAI HAS ALSO ASSISTED MGA IN A NUMBER OF TRADEMARK         02:18

11  AND INTELLECTUAL PROPERTY MATTERS.  IT HAS HELPED MGA SECURE

12  COUNSEL IN FOREIGN COUNTRIES TO PROVIDE ADVICE WITH RESPECT TO

13  THE REGISTRATION OF A TRADEMARK; IT'S BEEN THE LIAISON IN MANY

14  INSTANCES BETWEEN THE LOCAL COUNSEL AND MGA WITH RESPECT TO

15  THOSE TRADEMARK MATTERS.                                             02:19

16           THE OTHER CATEGORY OF WORK THAT BANDAI HAS PERFORMED

17  IS IN ASSISTING MGA IN IDENTIFYING OTHER COMPANIES THAT HAVE

18  BEEN INFRINGING ON MGA'S MARKS, WHERE THERE'S BEEN LITIGATION

19  OR BANDAI HAS SAID, LOOK, YOU OUGHT TO KNOW THAT THERE'S

20  ANOTHER COMPANY THAT'S SELLING A VERY SIMILAR PRODUCT, AND MGA       02:19

21  IS SAYING BACK WELL, 'GEE, CAN YOU GET THAT FOR US AND HELP

22  WITH THAT EFFORT?'

23           THOSE ARE THE TWO --

24           **THE COURT:**  CAN YOU, MR. ALLAN, REPRESENT TO THE

25  COURT THAT ALL OF THE DOCUMENTS IDENTIFIED BY MATTEL FALL INTO       02:20

```
 1   ONE OF THOSE TWO CATEGORIES?  THAT ALL OF THE DOCUMENTS THAT

 2   HAVE NOT BEEN BASED ON THIS COMMON INTEREST PRIVILEGE FALL INTO

 3   ONE OF THOSE TWO CATEGORIES?

 4        MR. ALLAN:  YES, YOUR HONOR.  AND I'LL DO YOU ONE

 5   BETTER AND I'LL GO BACK AND DOUBLE CONFIRM THAT.  BUT THAT HAS      02:20

 6   BEEN THE STANDARD THAT WE USED.

 7        THE COURT:  VERY WELL.  THANK YOU, COUNSEL.

 8        I'D LIKE TO HEAR FROM MATTEL ON THE SECOND ISSUE, AND

 9   THAT'S ON MY CONCERN ABOUT CUMULATIVE EVIDENCE.  BECAUSE,

10   CERTAINLY, IF THERE WAS A TRADEMARK SEARCH OR IF MGA RECEIVED A     02:20

11   TRADEMARK SEARCH RESULT, WE DON'T NEED FIVE DOCUMENTS REFERRING

12   TO THAT PARTICULAR SEARCH OR THAT PARTICULAR SEARCH RESULT,

13   PROVIDED THAT YOU HAVE IT.

14        WOULD YOU AGREE?

15        MR. OLIVAR:  THIS WAS A MOTION ABOUT DOCUMENTS             02:20

16   CLAIMED TO BE PRIVILEGE.  THE ARGUMENT IS NOW THEY ARE NOT

17   PRIVILEGED, BUT WE DON'T NEED WHAT WE'RE SEEKING.

18        THE COURT:  I UNDERSTAND THAT, BELIEVE ME.

19        MR. OLIVAR:  TAKING COUNSEL'S REPRESENTATION THEY MAY

20   NOT BE PRIVILEGED -- YES, WE DO NEED THE INFORMATION WE'RE         02:21

21   SEEKING AS TO FIRST USES OF BRATZ AND OTHER TRADEMARKS.

22        THE COURT:  FAIR ENOUGH.

23        MR. OLIVAR:  THIS IS WHAT I DISCOVERED, COUNSEL IS

24   SAYING; THAT'S NOT PRIVILEGED ON A TRADEMARK SEARCH.

25        THE COURT:  I AGREE.                                         02:21
```

```
 1              IS THERE A CUMULATIVE DIMENSION?  DOES THERE COME A
 2    POINT WHEN IT BECOMES OBVIOUS THAT --
 3              MR. OLIVAR:  YOU HAVE TO SEE THE DOCUMENTS.
 4              WITH ALL DUE RESPECT, WE DON'T ACCEPT MGA'S
 5    REPRESENTATION THAT THERE IS NOTHING OF BENEFIT TO US IN THESE      02:21
 6    DOCUMENTS.  I DON'T THINK IN THIS CASE WE OUGHT TO HAVE TO
 7    ACCEPT THAT.
 8              ONE FINAL THING, MR. ALLAN MADE REPRESENTATIONS ON
 9    ONE AND THREE.  THERE ARE SOME DOCUMENTS THAT WE THINK ARE SO
10    CRITICAL THAT WE DON'T WANT TO TAKE COUNSEL'S REPRESENTATION IN     02:21
11    COURT THAT THEY ARE NOT PRIVILEGED.  WE WOULD SUBMIT A SMALL
12    NUMBER TO YOUR HONOR, LESS THAN 50, IN THE CRITICAL TIME
13    PERIOD, SUCH AS THE CONSULTING AGREEMENT IN AUGUST OF 2000 BY A
14    NONLAWYER THAT THEY SAY IS PRIVILEGED, FOR SOME REASON, FOR
15    YOUR HONOR'S REVIEW.  WE REQUESTED THE ABILITY TO DO THAT, LESS     02:22
16    THAN 50 DOCUMENTS, SO WE DON'T HAVE TO ACCEPT COUNSEL'S
17    REPRESENTATION THAT LOG ENTRIES THAT APPEAR TO BE IMPROPER ARE
18    REALLY PRIVILEGED.
19              WITH THAT, I'LL SUBMIT, YOUR HONOR.
20              THE COURT:  ALL RIGHT.                                    02:22
21              THE COURT IS GOING TO GRANT IN PART AND DENY IN PART
22    ALL THREE OF THESE MOTIONS.
23              I'M GOING TO DENY THE FIRST MOTION, BASED ON THE
24    REPRESENTATIONS MADE BY MR. ALLAN HERE BEFORE THE COURT TODAY
25    THAT ALL OF THE DOCUMENTS THAT HAVE BEEN REPRESENTED AS            02:22
```

```
 1   COMMUNICATIONS BETWEEN NONLAWYERS ARE, IN FACT, PRIVILEGED AND

 2   THAT MR. ALLAN HAS PERSONALLY ASSURED THE COURT THAT THOSE HAVE

 3   BEEN REVIEWED AND, IN FACT, TO THE EXTENT THAT THEY ARE

 4   PARTIALLY NONPRIVILEGED, THAT THEY HAVE BEEN PRODUCED IN

 5   REDACTED FORM.  TO THE EXTENT THAT THEY HAVE NOT BEEN PRODUCED,    02:23

 6   THAT IS BECAUSE THEY ARE FULLY PRIVILEGED.  HERE'S JUST SIMPLY

 7   NOT A BASES FOR ANY PARTICULAR DOCUMENT OR ANY GROUP OF

 8   DOCUMENTS FOR THE COURT TO ORDER A PRODUCTION AT THIS POINT.  I

 9   DO ACCEPT MR. ALLAN'S REPRESENTATION.  SO THE FIRST MOTION I

10   WILL DENY; THAT'S THE MOTION TO COMPEL PRODUCTION OF PREVIOUSLY   02:23

11   WITHHELD DOCUMENTS, ONLY PORTIONS OF WHICH ARE ALLEGEDLY

12   PRIVILEGED.

13           WITH RESPECT TO THE SECOND MOTION IN THIS GROUPING

14   RELATED TO THE TRADEMARK SEARCH RESULTS, I'M GOING TO GRANT

15   THIS IN PART BY ORDERING THAT ALL DOCUMENTS WHICH REVEAL         02:23

16   TRADEMARK SEARCH RESULTS AND REQUESTS AND/OR TRADEMARK DATES OF

17   FIRST USE BE PRODUCED SUBJECT TO REDACTION FOR ANY PRIVILEGED

18   COMMUNICATIONS.

19           SO IF THE DOCUMENT MAKES A REFERENCE, TO USE AN

20   EXAMPLE, LIKE MR. ALLAN USED -- I CONDUCTED A TRADEMARK SEARCH   02:24

21   ON SUCH AND SUCH A DATE, THIS IS MY ADVICE; THE FORMER PART

22   WOULD BE PRODUCED, THE LATTER PART WOULD BE REDACTED.

23           WITH RESPECT TO THE THIRD MOTION CONCERNING THE

24   SO-CALLED BANDAI DOCUMENTS, THIS IS THE COMMON INTEREST

25   PRIVILEGE, THE COURT IS SETTING FORTH ITS FINDINGS AND ITS       02:24
```

```
1    LEGAL CONCLUSIONS THAT THE COMMON INTEREST PRIVILEGE ATTACHES
2    ONLY WHERE THE PARTIES SHARE IDENTICAL OR NEARLY IDENTICAL
3    LEGAL INTERESTS; AND TWO, THE COMMUNICATIONS ARE MADE AS PART
4    OF A COORDINATED LEGAL STRATEGY.
5         I'M CONFIDENT IN MR. ALLAN'S EXPLANATION OF HIS            02:24
6    REVIEW, BUT I AM GOING TO REQUIRE THAT BASED ON SOME DEGREE OF
7    UNCERTAINTY OR A DESIRE TO DOUBLE CHECK, THAT HE MAKE A
8    COMPREHENSIVE REVIEW OF THE SO-CALLED BANDAI DOCUMENTS AND THAT
9    IS TO INCLUDE THE ACCLAIM GAME OR ANY OTHER THIRD-PARTY TO
10   WHICH THESE DOCUMENTS WERE DISCLOSED, AND SUBMIT APPROPRIATE     02:25
11   EVIDENCE TO THE COURT IN THE FORM OF A SWORN DECLARATION OF THE
12   REVIEW THAT WAS MADE, WHAT WAS DONE TO ENSURE THOSE HAVE BEEN
13   PROPERLY DESIGNATED ON THE PRIVILEGED LOGS.
14        MR. ALLAN:  ONE INQUIRY WITH REGARD TO THE SECOND
15   MOTION, AND THAT IS, WOULD THE COURT CONSIDER A DATE LIMITATION  02:25
16   WITH RESPECT TO THOSE TRADEMARK SEARCH RESULTS?  BECAUSE THERE
17   ARE A NUMBER OF DOCUMENTS THAT ARE 2002, 2003, WELL BEYOND THE
18   PERIOD THAT THEY WOULD REALLY HAVE ANY BEARING ON THE ISSUES
19   THAT ARE TEED UP FOR PHASE 1-A.
20        THE COURT:  COUNSEL?                                        02:26
21        MR. OLIVAR:  FIRST DATES OF FIRST USE ARE CRITICAL NO
22   MATTER WHEN THEY APPEAR.  IF IT'S A 2004 SEARCH FOR BRATZ, AND
23   IT'S REPRESENTED TO THE LAWYER BRATZ WAS FIRST USED IN AUGUST
24   OF 2000, THAT'S A DOCUMENT WE WANT; AT LEAST THE PART ABOUT THE
25   DATE OF FIRST USE.                                               02:26
```

1          **THE COURT:**  WHAT ABOUT THE TRADEMARK SEARCH RESULTS?

2          **MR. OLIVAR:**  I WOULD DEFER TO MY CO-COUNSEL ON THAT

3  ONE.

4          **MR. PROCTOR:**  I THINK 2002 AND LATER DOCUMENTS

5  REGARDING TRADEMARK SEARCHES AND RESULTS MORE LIKELY GO TO 1-B          02:26

6  AS OPPOSED TO THE DATE OF FIRST USE, YOUR HONOR.

7          **MR. OLIVAR:**  GIVEN THAT WE'RE ONLY TALKING ABOUT SOME

8  ONE HUNDRED DOCUMENTS THAT HAVE BEEN LISTED FOR MANY MONTHS,

9  THE BURDEN IS NOT SO SEVERE ON MGA TO PRODUCE THE NONPRIVILEGED

10  MATERIAL.          02:27

11          **THE COURT:**  MR. ALLAN, THE CONCERN I HAVE IS THAT I

12  CAN'T SEE THE RELEVANCE IN 1-B, AND WE'RE DECIDING THIS FOR

13  PURPOSES OF PHASE ONE IN ITS ENTIRETY.

14          **MR. ALLAN:**  YOUR HONOR, IF WE'RE ONLY TALKING ABOUT

15  ONE HUNDRED DOCUMENTS, I DON'T HAVE A CONCERN.  I DON'T HAVE          02:27

16  THE SAME CONCERN.

17          **THE COURT:**  YOU'RE NOT SURE HOW MANY DOCUMENTS WE'RE

18  TALKING ABOUT.

19          **MR. ALLAN:**  CORRECT, THAT MIGHT FIT INTO THAT

20  CATEGORY.          02:27

21          **THE COURT:**  YOU SHOULD HAVE A BETTER IDEA THAN THEY

22  DO.

23          **MR. ALLAN:**  WELL, NO, BECAUSE THEY HAVE GONE THROUGH

24  THE PRIVILEGED LOGS AND HAVE SENT US LISTS IDENTIFYING

25  DOCUMENTS ON THE LOG THAT THEY HAVE A CONCERN ABOUT; SO THAT'S          02:27

1    THE NUMBERS THAT WE'VE BEEN DEALING WITH HERE.

2            **THE COURT:**  THE COURT'S ORDER IS GOING TO BE AS IT

3    WAS TENTATIVELY INDICATED.

4            **MR. OLIVAR:**  WITH RESPECT TO THE SUBMISSION OF

5    EVIDENCE, IS THAT SERVED ON US, OR CAN WE GET A DATE FOR THAT?      02:27

6    BECAUSE IT'S WITH RESPECT TO CATEGORY 3.

7            **THE COURT:**  I SAID WITHIN THREE DAYS ON THAT OTHER

8    ONE.

9            HOW MUCH TIME DO YOU NEED, MR. ALLAN?

10           KEEP IN MIND THAT MATTEL NEEDS THIS FOR THEIR CASE IN      02:28

11   PHASE 1-A, AND WE'RE ALREADY INTO THE TRIAL HERE; SO...

12           **MR. ALLAN:**  YOUR HONOR, COULD I SUGGEST A WEEK?

13           **THE COURT:**  COUNSEL?

14           **MR. PROCTOR:**  WE WILL LIKELY BE RESTING OUR CASE IN

15   APPROXIMATELY TWO WEEKS; THAT'S STARTING TO PUSH IT.               02:28

16           **THE COURT:**  A WEEK WOULD GO TO NEXT MONDAY.

17           LET'S SAY BY THE CLOSE OF BUSINESS ON FRIDAY; I'LL

18   GIVE YOU FIVE DAYS.

19           **MR. ALLAN:**  VERY WELL, YOUR HONOR.

20           **MR. OLIVAR:**  WILL WE BE ABLE TO SEE A COPY OF THAT      02:28

21   SUBMISSION, YOUR HONOR?

22           **THE COURT:**  OH, YES.  THAT'S PART OF THE RECORD; THAT

23   WILL BE FILED --

24           **MR. OLIVAR:**  THANK YOU, YOUR HONOR.

25           **THE COURT** -- AND SERVED ON THE COURT AND OPPOSING      02:28

```
 1   COUNSEL.

 2           MOVING TO NUMBER FIVE, MATTEL'S MOTION TO COMPEL

 3   PRODUCTION OF DOCUMENTS IMPROPERLY WITHHELD AS PRIVILEGED BY

 4   MGA, LARIAN AND THIRD-PARTY DAVID ROSENBAUM.  THIS IS ANOTHER

 5   ONE WHERE I'M GOING TO ASK FOR THE STATUS, BECAUSE THERE'S SOME     02:29

 6   INDICATION IN THE PAPERS THIS HAS EVOLVED WITH TIME.

 7           MR. PROCTOR:  FOR THAT LAST MOTION, IS THE CLOSE OF

 8   BUSINESS FRIDAY ALSO THE DEADLINE FOR PRODUCTION OF THE ORDERED

 9   DOCUMENTS?

10           THE COURT:  YES.                                           02:29

11           MR. PROCTOR:  THANK YOU.

12           THIS MOTION HAS EVOLVED, YOUR HONOR.  WE HAVE LISTED

13   ON PAGE 3 OF OUR REPLY TO MGA'S AMENDED OPPOSITION, WHICH IS

14   OUR SECOND REPLY ON THIS MOTION.

15           THE COURT:  YES; I HAVE THAT FLAGGED HERE.                 02:29

16           MR. PROCTOR:  PAGE 3, THE BOTTOM, THOSE ARE THE

17   ENTRIES STILL AT ISSUE.  BASED ON MGA'S REPRESENTATIONS -- I,

18   OF COURSE, DON'T KNOW THIS TO BE TRUE, BUT BASED ON MGA'S

19   REPRESENTATION, I BELIEVE THESE ARE ALL EITHER THE SAME

20   DOCUMENT WITH DIFFERENT PAGES OR THEY ARE THE SAME SERIES OF       02:29

21   DOCUMENTS.

22           IT'S REALLY JUST ONE ISSUE PRESENTED BY THIS MOTION

23   RIGHT NOW.  IT'S AN INTERESTING ISSUE TO ME, IF I MAY SAY.

24           ANNE WONG, BRYANT'S COUNSEL, SENDS MR. ROSENBAUM A

25   RED LINE OF THE DRAFT CONTRACT BETWEEN MGA AND BRYANT.             02:30
```

```
 1   MR. ROSENBAUM READS IT, HAS SOME THOUGHTS, AND THEN JOTS THOSE

 2   THOUGHTS DOWN, WHATEVER HE DOES, WRITES IN THE MARGINS, 'THIS

 3   IS OKAY; THIS IS NOT OKAY,' WHATEVER HE WRITES.

 4        THE COURT:  AND YOUR ARGUMENT IS THAT HE'S ALREADY

 5   TESTIFIED TO THIS IN HIS DEPOSITION.                              02:30

 6        MR. PROCTOR:  OUR ARGUMENT IS THAT HIS THOUGHTS ABOUT

 7   WHAT OPPOSING PARTIES IN CONTRACT NEGOTIATIONS SUBMITS TO HIM,

 8   HIS THOUGHTS ABOUT THE NEGOTIATIONS AS REFLECTED IN HIS NOTES,

 9   ARE NOT PRIVILEGE.  AND THE EVIDENCE OF THAT, ASIDE FROM JUST

10   THE RULES OF PRIVILEGE, IS THE FACT THAT MGA DIDN'T INSTRUCT      02:30

11   HIM NOT TO ANSWER WHEN WE SAID, FOR EXAMPLE, "WHEN YOU GOT THE

12   SEPTEMBER 14TH FAX FROM MR. BRYANT, WHERE HE SAID 'I CAN'T LOOK

13   INTO THIS MORE WITHOUT RISKING SUSPICION,' WHAT DID YOU THINK

14   ABOUT THAT?"  HE ANSWERED THAT QUESTION.

15        HIS THOUGHTS IN THAT CONTEXT ARE NOT PRIVILEGE.             02:30

16        THE COURT:  WHY ARE HIS THOUGHTS RELEVANT?

17        I UNDERSTAND FOR DISCOVERY PURPOSES WHY YOU MIGHT

18   WANT THOSE.  BUT NOW WE'RE IN TRIAL.  I COULD IMAGINE THAT MGA

19   WILL MAKE THE OBJECTION THAT THOUGHTS OF COUNSEL THAT WERE NOT

20   COMMUNICATED, THAT WERE NOT ACTED UPON, ARE CALLING FOR          02:31

21   SPECULATION AND NOT ADMISSIBLE FOR THIS JURY TO CONSIDER.

22        MR. PROCTOR:  IN TERMS OF ADMISSIBILITY, I THINK THAT

23   WOULD BE AN ERRONEOUS ARGUMENT.

24        THE COURT:  WHY?

25        MR. PROCTOR:  MR. ROSENBAUM IS THE LINCHPIN OF MGA'S        02:31
```

```
 1   GOOD FAITH DEFENSE.  MGA'S DEFENSE IS 'CARTER BRYANT MADE

 2   REPRESENTATIONS TO ME, ISAAC LARIAN; I ASKED PEOPLE TO MAKE

 3   SURE WHAT HE WAS SAYING WAS TRUE; WE CHECKED WITH

 4   MR. ROSENBAUM, AND HE CHECKED WITH MS. WONG.'

 5           THE COURT:  YOU'VE ANSWERED MY QUESTION; THIS GOES TO   02:31

 6   THE GOOD FAITH; YOU MADE THAT ARGUMENT AS WELL.

 7           ALL RIGHT.  LET ME HEAR FROM YOU, MR. RUSSEL.

 8           MR. RUSSELL:  YOUR HONOR, IN THE INTEREST OF MAKING

 9   THINGS EASY -- AND THIS IS A PROPOSAL WE'VE MADE MANY TIMES --

10   WE'RE PREPARED RIGHT NOW TO WAIVE THE PRIVILEGE WITH RESPECT TO   02:32

11   ALL DOCUMENTS ROSENBAUM PREPARED FROM WHEN HE WAS RETAINED TO

12   DRAFT THE CONTRACT THROUGH THE COMPLETION OF THAT DRAFTING.

13   BECAUSE THERE ARE TWO DIFFERENT DISCRETE CATEGORIES OF

14   DOCUMENTS.

15           MR. ROSENBAUM TESTIFIED -- AND WE CAN GET TO THAT --   02:32

16   HE TESTIFIED HE WAS RETAINED ESSENTIALLY IN THE MIDDLE OF

17   SEPTEMBER TO DRAFT A CONTRACT BETWEEN MGA AND BRYANT THAT TOOK

18   HIM A FEW WEEKS; AND THAT IS CATEGORY 1.

19           CATEGORY 2 ARE UNRELATED REPRESENTATIONS BY ROSENBAUM

20   OF MGA DRAFTING OTHER CONTRACTS, LICENSING AGREEMENTS,   02:32

21   NON-BRATZ RELATED OR VERY TANGENTIALLY RELATED BRATZ MATERIALS.

22           THE COURT:  IS THAT WHAT THEY ARE ASKING FOR HERE?

23   THEY ARE ASKING FOR ENTRY NUMBER 20 ON THE MGA LOG.  THAT'S NOT

24   THESE OTHER --

25           MR. RUSSELL:  IF I UNDERSTAND IT, I THOUGHT THEY WERE   02:33
```

```
 1   ALSO ASKING FOR ENTRY 234 AND 235.

 2              THE COURT:  NO; THAT'S NO LONGER IN PLAY.

 3         MR. RUSSELL:  IN ANY EVENT, I'M STILL WILLING TO MAKE

 4   THE SAME POSITION.  THIS IS AN INTERESTING LEGAL ISSUE, BUT

 5   THIS IS NOT A CONCERN THAT WE HAVE.  WE'RE HAPPY TO TURN IT      02:33

 6   OVER, BUT WE DON'T WANT AN ARGUMENT THAT BY TURNING OVER

 7   EVERYTHING MR. ROSENBAUM HAD -- WE'RE PREPARED RIGHT NOW --

 8   EVERYTHING HE HAD FROM WHEN HE WAS RETAINED THROUGH WEEKS

 9   AFTER -- IF YOU WANT, WE CAN GO TO THE END OF 2000; MAKE IT

10   CLEAN -- WE'LL TURN EVERY SINGLE ONE OF THOSE DOCUMENTS OVER,    02:33

11   BECAUSE WE DON'T HAVE A CONCERN.

12              THE CONCERN HAS ALWAYS BEEN THERE WILL BE SOME

13   ARGUMENT THAT THAT'S BROADER THAN A WAIVER AS TO THAT

14   TRANSACTIONAL REPRESENTATION.

15         THE COURT:  YOU'RE CLEARLY ON THE RECORD OF THAT           02:33

16   LIMITATION.

17              COUNSEL, YOU'RE NOT SEEKING ANYTHING BEYOND THAT, ARE

18   YOU?

19         MR. PROCTOR:  MR. RUSSELL IS TAKING MGA'S FIFTH OR

20   SIXTH RUN AT A TRANSACTIONAL WAIVER.  OBVIOUSLY THERE'S SOME     02:34

21   COMMUNICATIONS OUT THERE, PRIVILEGED COMMUNICATIONS, WHICH THEY

22   WANT TO PRODUCE WITHOUT BEARING THE BURDEN OF PRODUCING SUBJECT

23   MATTER WAIVER COMMUNICATION.

24              WE'RE NOT ASKING FOR THEIR PRIVILEGED COMMUNICATIONS.

25   WE'RE ASKING FOR THE SPECIFIED DOCUMENTS HERE, WHICH DON'T       02:34
```

```
 1   APPEAR TO BE PRIVILEGED.

 2          THE COURT:  ENTRY 20 ON MGA LOG AND 18 ON THE

 3   ROSENBAUM LOG, I ASSUME, ARE THE SAME DOCUMENT.

 4          MR. RUSSELL:  THEY ARE.

 5          THE COURT:  IT'S THESE OTHER ENTRIES ON THE LARIAN'S    02:34

 6   PRIVILEGED LOG 864, 764, 887 THROUGH 891 INCLUSIVE, AND 1121

 7   THROUGH 1125, THEY RELATE TO THOSE SAME DOCUMENTS; CORRECT?

 8          MR. PROCTOR:  BASED ON THEIR PAPERS, I UNDERSTAND

 9   THESE ARE INDIVIDUAL PAGES FROM THE SAME DOCUMENTS.

10          THE COURT:  SAME DOCUMENT?                              02:34

11          MR. RUSSELL:  CORRECT.

12          THE COURT:  I'M GOING TO ORDER THAT BE TURNED OVER.

13          YOUR LIMITATION ON THE WAIVER, COUNSEL, IS NOTED FOR

14   THE RECORD.

15          MR. RUSSELL:  JUST TO MAKE ONE OTHER THING CLEAR,       02:34

16   WHICH IS, WE WERE MINDFUL OF YOUR HONOR'S PRIOR RULINGS AND

17   WHAT YOU SAID TO MR. ALLAN; THAT IS TO SAY, WE HAVE TAKEN A

18   SECOND LOOK AT THE DOCUMENTS AND WE WILL BE SUPPLEMENTING OUR

19   PRODUCTION WITH REDACTED VERSIONS OF SOME DOCUMENTS BASED ON

20   WHAT YOUR HONOR HAS RULED PREVIOUSLY.                          02:35

21          THE COURT:  LET'S MAKE SURE ALL THAT IS DONE AS WELL

22   AS THE PRODUCTION OF THESE DOCUMENTS WITHIN FIVE DAYS.

23          MR. RUSSELL:  NO PROBLEM, YOUR HONOR.

24          THE COURT:  VERY WELL.

25          NUMBER SIX WAS DEALT WITH.                              02:35
```

```
 1            NUMBER SEVEN.  THIS IS FOR AN ORDER ENFORCING THE
 2    COURT'S JANUARY 25, 2007 ORDER COMPELLING BRYANT TO PRODUCE
 3    HARD DRIVES AND FOR SANCTIONS.
 4            WHAT IS THE STATUS OF PRODUCTION OF THESE HARD DRIVES
 5    AT THIS POINT?  I KNOW THERE'S THE THREE EARLIER HARD DRIVES,      02:35
 6    AND THEN THERE'S SOME ADDITIONAL ONES.
 7            MR. COREY?
 8            MR. COREY:  I CAN TELL YOU WHAT I UNDERSTAND THAT WE
 9    HAVE IMAGES OF THE DESK TOP AND THE LAPTOP MR. BRYANT USED UP
10    TO THE TIME THAT HE LEFT MATTEL AND SHORTLY RIGHT AFTER HE LEFT   02:35
11    MATTEL.  I UNDERSTAND THERE'S AN ADDITIONAL CATEGORY OF BOTH
12    IMAGES AND COMPUTERS OUT THERE THAT MATTEL DOES NOT HAVE.
13            THAT'S AS SIMPLE AS I CAN MAKE IT.
14            THE COURT:  COULD SOMEONE DESCRIBE THAT CATEGORY WITH
15    ANY GREATER SPECIFICITY?                                         02:36
16            MR. RUSSELL:  WHAT I WAS GOING TO SAY IS THIS IS A
17    MOTION UNIQUELY WELL SITUATED FOR, I THINK, THE KEKER FIRM TO
18    BE HERE.  INDEED, I ASKED MR. WERDEGAR TO SEND ME THE
19    CORRESPONDENCE BACK AND FORTH BETWEEN MR. PROCTOR AND HIMSELF.
20    HE PROVIDED TO ME REDACTED VERSIONS OF THAT COMMUNICATION.  I     02:36
21    THINK IT'S IMPORTANT, YOUR HONOR, PERHAPS, IF I MIGHT BE
22    PERMITTED TO LODGE IT WITH YOU.  BECAUSE MR. WERDEGAR, RIGHT IN
23    HIS E-MAIL, HE SAYS "MOREOVER, IN THE SETTLEMENT AGREEMENT
24    BETWEEN MATTEL AND MR. BRYANT, MATTEL EXPRESSLY...  IT'S
25    REDACTED.  MATTEL, THEREFORE, IS NOW BARRED BY THE SETTLEMENT     02:36
```

1    AGREEMENT FROM PURSUING THE RULE 34 REQUESTS THAT ARE THE

2    SUBJECT OF THE MOTION."

3          **THE COURT:**  LET ME STOP YOU HERE.

4          DOES MGA HAVE POSSESSION OF ANY OF THESE COMPUTERS?

5          **MR. RUSSELL:**  NO.                                          02:37

6          **MR. COREY:**  THEY DO NOT.  AND IF WE WANT TO WAIT TO

7    RESOLVE THIS MOTION UNTIL MR. WERDEGAR CAN BE HERE, I'M MORE

8    THAN HAPPY TO DO THAT.

9          THERE WAS A SEPARATE ORDER IN WHICH MGA WAS

10   INSTRUCTED TO TURN OVER ANY HARD DRIVES THAT MR. BRYANT HAD          02:37

11   USED.  I UNDERSTAND THAT MGA DID NOT HAVE IN ITS POSSESSION

12   ANYTHING LIKE THAT.

13         **THE COURT:**  SO TO THE EXTENT THIS IS ISSUED TOWARDS

14   MGA, THE MOTION IS MOOT BASED ON THE REPRESENTATION OF

15   MR. RUSSEL THAT THEY DON'T HAVE ANYTHING.                           02:37

16         **MR. COREY:**  RIGHT.  THIS MOTION IS NOT DIRECTED TO

17   MGA AT ALL.

18         **THE COURT:**  SO WE NEED TO GET CARTER BRYANT'S COUNSEL

19   IN HERE.

20         **MR. COREY:**  I THINK THAT WOULD BE WISE, YOUR HONOR.        02:37

21         **THE COURT:**  BECAUSE AT THIS POINT, BASICALLY, THE

22   REQUEST WAS DIRECTED TOWARDS WHAT IS NOW A THIRD PARTY.

23         **MR. COREY:**  CORRECT.  WHICH BRINGS IN A SET OF

24   COMPLICATIONS WITH IT.

25         **THE COURT:**  YES.                                          02:37

1          LET'S PROVIDE NOTICE -- WHY DON'T WE HAVE A HEARING

2    AT 8:30 ON THURSDAY MORNING, RIGHT ALONG WITH THE OTHER MATTER,

3    IF NECESSARY.

4          **MR. RUSSELL:**  IF I MIGHT, IN LIGHT OF THE FACT

5    MR. BRYANT IS REFERENCING THE CONTENTS OF HIS SETTLEMENT                02:38

6    AGREEMENT AS THE BASIS FOR DENYING THE MOTION, HOW --

7          **THE COURT:**  DO YOU WANT TO RENEW YOUR REQUEST FOR A

8    COPY OF THE SETTLEMENT ORDER?

9          **MR. RUSSELL:**  YES.  BUT IF I'M NOT GOING TO GET IT,

10   I'M CURIOUS, HOW DO YOU WANT TO HANDLE THAT ARGUMENT WITH MGA           02:38

11   IN THE COURTROOM?

12         **THE COURT:**  I MAY HAVE TO DO A SEALED HEARING.  BUT

13   I'LL CROSS THAT BRIDGE WHEN I GET TO IT.

14         LET MR. NOLAN KNOW YOU MADE THE REQUEST AGAIN AND THE

15   COURT DENIED IT AGAIN.                                                  02:38

16         **MR. RUSSELL:**  THANK YOU, YOUR HONOR.

17         **THE COURT:**  MOVING RIGHT ALONG.

18         MATTEL'S MOTION FOR REQUEST FOR ADMISSION.

19         AFTER REVIEWING THE DOCUMENTS, THE COURT'S TENTATIVE

20   IS AS FOLLOWS:  THE MOTION IS GRANTED WITH RESPECT TO RFA'S 36          02:38

21   THROUGH 39, INCLUSIVE.  IT IS DEFERRED WITH RESPECT TO NUMBERS

22   63, 66, AND 69 WHICH RELATE TO PHASE B, AND IT'S DENIED AS MOOT

23   IN ALL OTHER RESPECTS, EITHER BECAUSE THEY ARE RELATED TO

24   CARTER BRYANT OR BECAUSE THE COURT FINDS THAT THE SUPPLEMENTAL

25   RESPONSES ARE ADEQUATE.                                                 02:39

1          THE COURT WILL HEAR FURTHER ARGUMENT, IF COUNSEL

2   WISHES.

3          **MR. PROCTOR:**  I HAVE VERY LITTLE TO SAY.

4          THE ONE QUESTION THAT I HAVE FOR THE COURT IS DENIED

5   AS MOOT BECAUSE IT RELATES TO CARTER BRYANT.                    02:39

6          CAN THE COURT GIVE SOME GUIDANCE AS TO THAT?

7          **THE COURT:**  SURE.  I'LL GIVE YOU THE NUMBERS.

8   ACTUALLY IT WAS MR. COREY, I BELIEVE, WHO IDENTIFIED THESE FOR

9   THE COURT THE OTHER DAY IN COURT.  THE CARTER BRYANT RESPONSES

10  WERE MOOT; THEY ARE IDENTIFIED IN THE PAPERS.  IF YOU TURN TO   02:40

11  YOUR MOTION PAGE 1, YOU BROKE IT DOWN INTO COMPELLING MGA

12  ENTERTAINMENT AND LARIAN TO PRODUCE RFA'S TO A NUMBER OF RFA'S,

13  5 THROUGH 8, 15 AND 16, 19 THROUGH 34, 36 THROUGH 39, 44

14  THROUGH 49, 52 THROUGH 59, 60, 63, 66, AND 69.

15         **MR. PROCTOR:**  I MAY HAVE MISUNDERSTOOD, YOUR HONOR.   02:40

16         IS YOUR ORDER SIMPLY THAT THE MOTION AS TO

17  CARTER BRYANT'S RESPONSE IS MOOT?

18         **THE COURT:**  RIGHT.  THAT'S MOOT, AS WELL AS I'M

19  GRANTING YOUR MOTION WITH RESPECT TO 36 THROUGH 39 AS DIRECTED

20  TO MGA.  I'M DEFERRING THE MOTION ON 63, 66, AND 69 AS RELATED  02:41

21  TO PHASE TWO.  AND THEN I'M DENYING IT WITH RESPECT TO THE

22  REMAINING ONES THAT YOU'VE ASKED VIS-À-VIS MGA FINDING THAT THE

23  SUPPLEMENTAL ANSWERS WERE GIVEN, ALTHOUGH PERHAPS UNTIMELY.

24         **MR. PROCTOR:**  THE ONLY ONES I'D ASK THE COURT TO

25  RECONSIDER ON ARE 29 TO 34, THE DAVID ROSENBAUM ONES.  FOR THE  02:41

```
 1   LIFE OF ME, I DON'T UNDERSTAND WHAT MGA MEANS BY THOSE
 2   RESPONSES.  MR. ROSENBAUM WAS MGA'S AGENT; HE IS AT THE
 3   LINCHPIN OF THEIR DEFENSE.  HE RECEIVES A FAX FROM
 4   CARTER BRYANT SAYING "I CAN'T LOOK INTO THIS ANYMORE, MY
 5   OBLIGATION IS TO MATTEL."                                      02:41
 6         THE COURT:  I AGREE THAT THEIR INITIAL RESPONSE WAS
 7   QUITE ENIGMATIC AND HARD TO UNDERSTAND.  THEY MAY NOT BE USING
 8   THE WORD THAT YOU WANT THEM TO USE, BUT I THINK THEY ARE
 9   EXPLAINING AND ADMITTING AND DENYING WHAT HIS ROLE IS.
10         MR. PROCTOR:  I'LL SUBMIT ON THAT.                       02:42
11         MR. RUSSELL:  WE'LL SUBMIT, YOUR HONOR.
12         THE COURT:  THAT WOULD BE THE ORDER OF THE COURT,
13   THEN.
14         WITH RESPECT TO NUMBER NINE, MATTEL'S MOTION TO
15   COMPEL THE RETURN OF PRIVILEGED DOCUMENT N 0074372, THIS IS    02:42
16   DÉJÀ VU ALL OVER AGAIN.
17         THE PARTIES ARE TAKING JUST THE OPPOSITE POSITION
18   THEY MADE JUST SHORTLY.
19         MY SENSE ON THIS IS THAT THE CLAWBACK WAS WAIVED WHEN
20   SO MUCH TIME PASSED AND NO MOTION WAS BROUGHT.  ALLEGEDLY, THIS 02:42
21   WAS USED IN TWO DIFFERENT DEPOSITIONS WITHOUT OBJECTION, AND
22   THAT'S EXACTLY THE BASIS THAT THE COURT RULED IN MATTEL'S FAVOR
23   LAST WEEK IN FINDING THAT DOCUMENTS THAT MGA WANTED TO HAVE
24   CLAWED BACK PURSUANT TO THE SAME PROTECTIVE ORDER, THE SAME
25   AGREEMENT, THAT THEY HAD WAIVED IT; SO OUT OF FAIRNESS, I CAN'T 02:42
```

```
 1  THINK OF ANY REASON WHY I SHOULD TREAT MATTEL ANY DIFFERENTLY
 2  AT THIS POINT WHEN THEY ARE ON THE LOSING END OF THE DOCUMENT.
 3          MR. OLIVAR:  THERE ARE A COUPLE OF DIFFERENCES, YOUR
 4  HONOR.  IT'S NOT CORRECT TO SAY THERE WAS NO OBJECTION AT THE
 5  DEPOSITIONS.                                                      02:43
 6          THE COURT:  I DIDN'T SAY THERE WAS NO OBJECTION.
 7  THERE WAS NO MOTION BROUGHT.
 8          MR. OLIVAR:  CORRECT.  NO MOTION WAS BROUGHT.
 9          THIS MOTION WAS BROUGHT, YOUR HONOR, BUT --
10          THE COURT:  BUT WAS THERE AN OBJECTION MADE DURING       02:43
11  THE DEPOSITION ITSELF?
12          MR. OLIVAR:  MR. GORDON SAID 'EXCUSE ME, I THOUGHT
13  THIS OUGHT TO BE REDACTED,' AND THERE WAS A REPRESENTATION FROM
14  THE LAWYER THAT IT WAS UNTRUE, AND THEN THE DEPOSITION
15  PROCEEDED AND THERE WERE OBJECTIONS MADE, YES; THAT'S AT THE     02:43
16  SECOND OF THE TWO DEPOSITIONS.
17          THE COURT:  MR. GORDON CERTAINLY KNOWS HOW TO
18  INSTRUCT THE WITNESS TO EXTRICATE A DOCUMENT THAT'S PRIVILEGED
19  FROM A DEPOSITION.
20          MR. OLIVAR:  CORRECT, YOUR HONOR.                        02:43
21          I THINK THE OBJECTIONS WERE --
22          THE COURT:  AS DOES MR. COREY.
23          MR. OLIVAR:  I BELIEVE MR. GORDON WAS MISLEAD BY THE
24  SKADDEN ATTORNEY WHO REPRESENTED ON THE RECORD THAT IT WAS AN
25  ACCEPTABLE DOCUMENT TO QUESTION THE WITNESS ON.  THERE WAS THAT  02:43
```

```
 1   COLLOQUY -- AND YOUR HONOR HAS THE RECORD -- WHERE MR. GORDON

 2   DID OBJECT.

 3           SECOND, WITH RESPECT TO MGA, THE REASON NO MOTION WAS

 4   BROUGHT WAS BECAUSE MGA TOLD MATTEL IT WOULD GO THROUGH ITS

 5   FILES AND GIVE EVERYTHING BACK.  IT SAID WE ARE SEARCHING OUR      02:44

 6   FILES TO RETRIEVE ALL COPIES; SO MGA AGREED IT WAS GOING TO

 7   COMPLY WITH THE ORDER.

 8           THE COURT:  WAS THAT IN JULY?

 9           MR. OLIVAR:  YES.  THAT WHAT WAS WHEN THE REQUEST WAS

10   MADE, IN JULY.                                                     02:44

11           THE COURT:  WELL, NOW WE'RE FAST FORWARDED TO THE

12   DEPOSITIONS IN DECEMBER AND JANUARY, AND THE DOCUMENT IS STILL

13   FLOATING AROUND OUT THERE.  OBVIOUSLY, THEY DIDN'T DO IT.

14           MR. OLIVAR:  YES.  THAT'S WHY THIS MOTION WAS

15   BROUGHT.                                                           02:44

16           THE COURT:  THE MOTION WASN'T BROUGHT UNTIL WELL

17   AFTER THAT.  WHEN WAS THE MOTION BROUGHT?

18           MR. OLIVAR:  FEBRUARY 28TH.

19           THE COURT:  MARCH; RIGHT?

20           MR. OLIVAR:  I THOUGHT IT WAS END OF FEBRUARY;             02:45

21   FEBRUARY 28, 2008.

22           THE COURT:  OKAY.

23           THAT'S PRETTY CLOSE TO MARCH.

24           I DON'T THINK THIS WAS TIMELY.  I THINK THIS SUFFERS

25   FROM THE SAME ISSUE THAT HAVE BEEN USED TO CLAW BACK -- THIS IS    02:45
```

1    SOMETHING THAT IF THEY DIDN'T PROVIDE IT IN JULY, AS THEY

2    SHOULD HAVE, AND THE FIRST TIME IT SHOWED UP IN A DEPOSITION --

3    AND PLEASE UNDERSTAND, I'M NOT FAULTING MR. GORDON OR MR. COREY

4    OR ANYONE ELSE; THE AMOUNT OF VOLUME OF DOCUMENTS IN THIS CASE

5    IS STAGGERING.  BUT I JUST HAVE TO, I THINK, APPLY THE SAME          02:45

6    PRINCIPALS ON BOTH SIDES.  I THINK THE SAME ARGUMENT COULD HAVE

7    BEEN MADE BY MGA THAT, 'YEAH, WE DIDN'T OBJECT OR IT WAS USED

8    IN DEPOSITION AND WE DIDN'T BRING A MOTION.  BUT, COME ON,

9    THERE'S A HUGE AMOUNT OF DOCUMENTS.'

10          I'M GOING TO DENY THE MOTION.                                02:45

11          THE LAST MOTION HAS BEEN NARROWED TO BASICALLY AN

12   APPLICATION FOR GUIDANCE AS TO EVIDENCE RECEIVED FROM

13   ANA CABRERA.

14          I'VE RECEIVED NO OPPOSITION TO THIS MOTION, OR

15   APPLICATION, OR AT LEAST THERE'S NONE IN THE BINDER.               02:46

16          MY GENERAL GUIDANCE ON THIS, MY TENTATIVE THOUGHTS,

17   AND I'LL HEAR FROM BOTH PARTIES IF THEY WANT, THESE RELATE TO

18   THESE DOCUMENTS SEALED UP BY MATTEL AND MATTEL CAN CERTAINLY

19   UNSEAL THEM; THEY CAN DO WHATEVER THEY WANT TO THEM.  BUT AS

20   FAR AS THEIR ADMISSION, IT'S GOING TO BE SUBJECT TO FOUNDATION     02:46

21   AND SUBJECT TO AUTHENTICATION AND SUBJECT TO A CHAIN OF

22   CUSTODY.  IF YOU CAN LAY THAT, THE DOCUMENTS WILL BE

23   ADMISSIBLE.  BUT IF THE FOUNDATION AND AUTHENTICATION AND CHAIN

24   OF CUSTODY IS NOT THERE, THEN THEY WON'T BE.  BUT SHORT OF

25   GIVING YOU THE PARAMETERS THAT THE COURT WILL USE TO DETERMINE     02:46

```
 1   THE ADMISSIBILITY, I THINK ANYTHING ELSE AT THIS POINT WOULD BE

 2   AN ADVISORY OPINION.

 3           MR. COREY:  THANK YOU, YOUR HONOR.

 4           MR. RUSSELL:  WE'LL SUBMIT ON THAT.

 5           THE COURT:  IT SOUNDS LIKE WE HAVE TO GIVE SOME          02:46

 6   PEOPLE AN OPPORTUNITY TO SHOW UP ON THURSDAY MORNING AT 8:30

 7   AND THEN WE'LL THEN WRAP THAT UP.

 8           MR. COREY, I'LL HEAR BACK FROM YOU CONCERNING

 9   WEDNESDAY AFTERNOON, WHICH THE COURT WOULD PREFER TO HAVE DARK.

10           MR. PROCTOR:  A FEW MORE MATTERS, YOUR HONOR.          02:47

11           THE FIRST TWO ARE CLARIFICATIONS.

12           IN THE ORDER REGARDING THE FIRST MOTION, THE COURT

13   SPOKE IN TERMS OF A RESPONSE.  JUST FOR SCHEDULING PREPARATION,

14   DOES THE COURT CONTEMPLATE ARGUMENT ON THAT MOTION AT 8:30, OR

15   IS THE COURT SOLICITING A BRIEF FROM KEKER?                    02:47

16           THE COURT:  IF SOMEONE WANTS TO SAY SOMETHING, I WILL

17   ALLOW THAT.

18           MR. PROCTOR:  THE SECOND ONE, I BELIEVE YOU GAVE MGA

19   FIVE DAYS TO PRODUCE THE ROSENBAUM DOCUMENTS.  THERE IS SOME

20   CHANCE, DEPENDING ON THE SPEED OF TESTIMONY, THAT WE WOULD BE  02:47

21   CALLING HIM TO THE STAND AT THE END OF THIS WEEK; I THINK IT'S

22   JUST ONE DOCUMENT OR TWO DOCUMENTS; SO IF WE COULD EXPEDITE

23   THAT.

24           THE COURT:  THAT SOUNDS REASONABLE.

25           MR. RUSSELL?                                           02:48
```

1          **MR. RUSSELL:**  WE COULD DO IT IN 48 HOURS.

2          **THE COURT:**  VERY WELL.  LET'S DO THAT WITH THE

3    ROSENBAUM; THAT'S MOTION NUMBER FIVE.

4          **MR. PROCTOR:**  CORRECT.

5          **THE COURT:**  LET'S DO THAT WITHIN 48 HOURS, THEN.          02:48

6          **MR. PROCTOR:**  THE THIRD, YOUR HONOR, IS SCHEDULING A

7    HEARING ON EVIDENCE ELIMINATOR, MOTION *IN LIMINE* STAGE.

8          **THE COURT:**  RIGHT.  THAT CAN BE TAKEN UP BEFORE THE

9    -- CARTER BRYANT, I ASSUME CARTER BRYANT IS THE NEXT ONE TO

10   COME IN.  -- TRY TO HAVE HIM COME IN THROUGH --          02:48

11         **MR. PROCTOR:**  CORRECT, THROUGH HIM AND THE EXPERTS.

12         **THE COURT:**  WHEN MIGHT MR. BRYANT TESTIFY?

13         **MR. PROCTOR:**  LIKELY EARLY NEXT WEEK, WHICH IS WHY,

14   SUBJECT TO THE COURT'S CALENDAR, I WAS GOING TO SUGGEST MONDAY

15   AFTERNOON, IF THAT WORKED.          02:48

16         **THE COURT:**  THAT SOUNDS GOOD, BECAUSE I WANT TO HEAR

17   FROM NOT ONLY CARTER BRYANT, BUT THE TESTIMONY FROM THE

18   EXPERTS.

19         **MR. PROCTOR:**  DOES THE COURT HAVE ANY PREFERENCES

20   REGARDING READING REQUESTS FOR ADMISSION INTO THE RECORD?  IF          02:49

21   WE WANT TO INTRODUCE MGA'S RESPONSE, SHOULD WE JUST READ IT IN

22   TO THE RECORD?

23         **THE COURT:**  JUST READ IT.  CLEAR IT WITH THE COURT

24   FIRST; MAKE SURE THAT MGA HAS A CHANCE TO REVIEW IT.  BUT

25   SUBJECT TO THAT, THEY ARE JUST READ.          02:49

1          **MR. PROCTOR:**  WE ARE PROBABLY TOMORROW GOING TO BE

2   PLAYING SOME VIDEOS.  THERE ARE SOME DOCUMENTS WHICH ARE

3   INTRODUCED THROUGH THE WITNESSES ON THE VIDEOS, WHICH ARE

4   OBJECTED TO.  NORMALLY WE INTEND TO DO THE SPLIT SCREEN, WHERE

5   YOU SHOW THE TESTIMONY AND THE DOCUMENT, RATHER THAN PAUSE IN          02:49

6   THE MIDDLE OF THE VIDEO, HOW DOES THE COURT WANT TO HANDLE

7   THAT, ON THE ADMISSIBILITY OF THE DOCUMENTS IN ADVANCE, SO WE

8   CAN FIGURE OUT WHAT TO PLAY AND WHAT NOT TO PLAY.

9          **THE COURT:**  YES.

10         NANA ASHONG IS GOING TO BE THE FIRST ONE.                        02:49

11         **MR. PROCTOR:**  I BELIEVE THAT IS CORRECT; AND STEVEN

12  LINKER ARE THE ONES WE INTEND TO PLAY TOMORROW.

13         **THE COURT:**  I'LL GIVE YOU THOSE RULINGS IN THE

14  MORNING.  THE COURT HAS FINISHED NANA ASHONG; I'VE NOT FINISHED

15  STEVEN LINKER.  DOES THAT GIVE YOU ENOUGH TIME?                        02:50

16         **MR. PROCTOR:**  YES.  OUR GUY CAN DO IT FROM THE BACK,

17  I THINK.

18         **THE COURT:**  I'D PREFER THOSE -- THERE'S GOING TO BE

19  SEVERAL PORTIONS TAKEN OUT, PARTICULARLY ON RELEVANCY GROUNDS

20  ON 1-A.  I THINK I GAVE SOMETHING OF A PRELUDE TO THAT THE           02:50

21  OTHER DAY.

22         **MR. PROCTOR:**  ON NANA ASHONG, IS THAT RELATED TO THE

23  ANGEL DOCUMENTS IN 2001?

24         **THE COURT:**  YES.

25         **MR. PROCTOR:**  MAY I BE HEARD ON THAT?                        02:50

1           **THE COURT:**  SURE.

2           **MR. PROCTOR:**  MS. ANNA RHEE, THE COURT IS FAMILIAR

3    WITH HER NAME, SHE WILL TESTIFY IN JUNE OF 2000 SHE WAS WORKING

4    ON BRATZ, AND BRYANT TOLD HER TO USE -- THESE ARE HER WORDS --

5    TOLD HER TO USE A CODE NAME, ANGEL; AND SHE DESCRIBES IT AS A        02:50

6    CODE NAME.  MGA VERY MUCH WANTS TO IMPEACH THAT TESTIMONY, AND

7    SAYS, NO, THIS REFERS TO PRAYER ANGELS.  AND YOU MAY HAVE HEARD

8    PAULA GARCIA DENY ON THE STAND -- I THINK IT WAS ONE OF THE

9    DAYS SHE WAS TESTIFYING, FRIDAY, I THINK IT WAS -- DENY ANGEL

10   WAS EVER USED AS A NAME FOR BRATZ; SHE MADE THAT DENIAL VERY        02:51

11   UNEQUIVOCALLY.

12          NANA ASHONG WORKED AT MGA IN 2001 AND CONFIRMS THAT

13   ANGEL WAS A NICKNAME FOR A DOLL --

14          **THE COURT:**  I'M MORE REFERRING TO THE DOCUMENTS AND

15   THE TESTIMONY RELATED TO THOSE DEVELOPMENTS IN 2001.                02:51

16          **MR. PROCTOR:**  AND NANA ASHONG, SHE WAS ONLY AT MGA IN

17   2001, SO HER TESTIMONY RELATES TO 2001.  BUT PAULA GARCIA JUST

18   DENIED -- AND PAULA GARCIA HAS BEEN A BRATZ PROJECT MANAGER FOR

19   SEVEN YEARS -- SHE DENIED THAT ANGEL WAS EVER USED FOR THE NAME

20   BRATS.  NANA ASHONG DIRECTLY IMPEACHED THAT TESTIMONY AND           02:51

21   CORROBORATES MS. RHEE'S TESTIMONY THAT WHAT SHE WAS PAINTING IN

22   JUNE OF 2000 WAS, IN FACT, BRATZ, USING A CODE NAME 'ANGEL.'

23   HER ACKNOWLEDGMENT THAT THE WORD 'ANGEL' WAS USED AT MGA AS A

24   BRATZ DOLL, WHETHER IT BE IN 2001 OR 2000, I WOULD SUBMIT, ARE

25   CLEARLY ADMISSIBLE.                                                 02:52

```
 1          THE COURT:  THE CONCERN I'M GOING TO HAVE, THOUGH,

 2   IS -- AND WHAT YOU'RE ARTICULATING THERE, I CAN UNDERSTAND THE

 3   BASIS FOR THAT.  HOW YOU DO THAT THROUGH THIS VIDEO DEPOSITION

 4   IS GET INTO DOCUMENTS THAT GO WELL BEYOND JUST THAT PARTICULAR

 5   POINT; THAT'S THE PROBLEM OF HAVING VIDEO DEPOSITION TESTIMONY.    02:52

 6          LET ME THINK ABOUT THAT.  WE'LL TAKE THIS UP TOMORROW

 7   MORNING.

 8          DO YOU WISH TO BE HEARD ON THAT OR WAIT UNTIL THE

 9   MORNING?

10          MR. RUSSELL:  I'D PREFER TO WAIT.                          02:52

11          MR. PROCTOR:  WE'RE DOING THIS THROUGH VIDEO.  THE

12   COURT IS RULING ON IT.  MUCH IS FOUNDATIONAL.  IF THE COURT

13   WANTS TO EX OUT THE FOUNDATIONAL STUFF --

14          THE COURT:  RIGHT.  I MAY BE ASKING FOR SOME

15   DIRECTION ON THAT.                                                02:52

16          MR. PROCTOR:  OKAY.

17          MR. COREY:  ONE MORE ISSUE.

18          I KNOW THE COURT NOTED THE OTHER DAY THAT IT GETS

19   BLIND SIDED ON A REGULAR BASIS.  I'D LIKE TO PREEMPT THAT A

20   LITTLE BIT.                                                       02:53

21          JUDGE INFANTE ORDERED SOME MEDIA OF ONE OF THE

22   WITNESSES TO PRODUCE A ZIP AND HARD DISK DRIVE.  WE'VE HAD OUR

23   PEOPLE LOOK AT THIS AND WE PROVIDED TO COUNSEL FOR MGA THIS

24   MORNING A VERY SHORT EXPERT REPORT RELATING TO THAT, AND I HOPE

25   WE CAN REACH AN AGREEMENT ON IT.  IF WE CAN'T, WE WILL BE         02:53
```

1    ASKING THE COURT TO ENTERTAIN A MOTION TO ALLOW THAT EXPERT TO

2    TESTIFY AND TO HAVE MGA CONSIDER THAT REPORT.

3            **MR. RUSSELL:**  YOUR HONOR, I RECEIVED NOTICE OF THIS

4    FROM MR. COREY APPROXIMATELY AN HOUR BEFORE I SHOWED UP IN

5    COURT.  IT'S DIFFICULT TO, WITH ANY CERTAINTY, RESPOND TO IT.          02:53

6            I GUESS WHAT I'D ASK IS I CAN TELL YOU NOW, MGA IS

7    GOING TO OBJECT, BECAUSE WE BELIEVE THEY HAVE HAD THE

8    OPPORTUNITY TO HAVE THIS REPORT LONG BEFORE THE EXPERT PROCESS

9    COMMENCED; SO IF IT'S THEIR INTENT TO USE THIS REPORT, I'D ASK

10   THEY BE GIVEN A DATE TO FILE THIS MOTION, LET'S SET UP A              02:54

11   BRIEFING SCHEDULE.  BECAUSE, IN OUR VIEW, THIS IS CLEARLY

12   UNTIMELY, INAPPROPRIATE, AND WE STRONGLY OBJECT.

13           **THE COURT:**  SINCE YOU'VE ONLY HAD AN HOUR TO THINK

14   ABOUT THIS, LET'S TALK ABOUT IT TOMORROW MORNING, AND WE'LL SEE

15   IF BRIEFING IS APPROPRIATE.                                          02:54

16           **MR. RUSSELL:**  THANK YOU, YOUR HONOR.

17           **MR. COREY:**  THANK YOU, JUDGE.

18                          CERTIFICATE

19

20   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
21   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
     ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
22   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

23

24

25   _____          _____
     THERESA A. LANZA, RPR, CSR                        DATE
     FEDERAL OFFICIAL COURT REPORTER