1         UNITED STATES DISTRICT COURT

2         CENTRAL DISTRICT OF CALIFORNIA

3              EASTERN DIVISION

4                  - - -

5    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                  - - -

7   MATTEL, INC.,                )
                                 )
8                   Plaintiff,   )
                                 )
9            vs.                 )  No. CV 04-09049
                                 )
10  MGA ENTERTAINMENT, INC., ET. AL.,  )
                                 )
11                  Defendants.  )
    _____)  Motion Hearing
12  AND CONSOLIDATED ACTIONS,    )
    _____)

13

14

15       REPORTER'S TRANSCRIPT OF PROCEEDINGS

16            Riverside, California

17            Monday, July 6, 2009

18               3:47 P.M.

19

20

21

22

23          THERESA A. LANZA, RPR, CSR
            Federal Official Court Reporter
24          3470 12th Street, Rm. 134
            Riverside, California  92501
25               951-274-0844
            WWW.THERESALANZA.COM

```
 1   APPEARANCES:

 2   ON BEHALF OF MATTEL, INC.:

 3                        QUINN EMANUEL
                          By:  JOHN QUINN
 4                             MICHAEL T. ZELLER
                          865 S. FIGUEROA STREET,
 5                        10TH FLOOR
                          LOS ANGELES, California  90017
 6                        213-624-7707

 7
     ON BEHALF OF MGA ENTERTAINMENT/ISAAC LARIAN:
 8
                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
 9                        BY:  JASON RUSSELL
                          300 SOUTH GRAND AVENUE
10                        LOS ANGELES, CALIFORNIA  90071-3144
                          213-687-5000
11

12   ON BEHALF OF MGA ENTERTAINMENT/ISAAC LARIAN:

13                        PACHULSKI STANG ZIEHL & JONES
                          BY:  JAMES I. STANG
14                        10100 Santa Monica Boulevard,
                          11th Floor
15                        Los Angeles, California  90067-4100
                          310-277-6910
16

17   ON BEHALF OF OMNI 808:

18
                          BINGHAM McCUTCHEN LLP
19                        BY:  TODD E. GORDINIER
                          BY:  PETER VILLAR
20                        600 Anton Boulevard
                          Costa Mesa, CA  92626-1924
21                        714-830-0622

22

23

24

25
```

```
 1                      I N D E X

 2                                              Page

 3    Motions......................................    4

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1        Riverside, California; Monday, July 6, 2009; 3:47 P.M.

 2                              -oOo-

 3        THE CLERK:  Calling Item Number 12 on calendar,

 4   Case Number CV 04-09049-SGL, Mattel, Inc., versus

 5   MGA Entertainment, Inc.                                       03:47

 6        Counsel, please come forward and state your

 7   appearances for the record.

 8        MR. RUSSELL:  Jason Russell for the MGA parties.

 9        MR. GORDINIER:  Todd Gordinier for Omni.

10        MR. VILLAR:  Peter Villar for Omni and Bingham      03:47

11   McCutchen.

12        MR. STANG:  James Stang, Pachulski Stang Ziehl &

13   Jones, for MGA.

14        MR. QUINN:  John Quinn for Mattel, and Mike Zeller.

15        THE COURT:  All right.  We have a number of motions   03:47

16   or ex-parte applications here that the Court has before it.

17   Let me start with the ex-parte application -- it's first on my

18   list -- regarding the release of the juror transcript.

19        This had come up in the context of the trial.  The

20   Court conducted, pursuant to the agreement of counsel at the   03:48

21   time, if I recall, in-camera interviews of the jurors once it

22   had been reported to the Court that there might be an issue

23   concerning bias by one of the jurors, or improper statements by

24   one of the jurors.  The Court examined the jurors in-camera.

25        At that time, since the Court made the decision that   03:48
```

```
 1    it would continue with that jury, absent the one juror who had
 2    made the comments, I, of course, continued to seal the
 3    transcripts, and I indicated that I would continue to seal the
 4    transcripts.
 5            Since then, the Court has had a motion for mistrial,          03:48
 6    a motion for a new trial, and a motion for stay pending appeal,
 7    in which all of the various issues, and then some, concerning
 8    the appeal of the Phase 1 trial have been litigated before this
 9    Court.  Not once prior to any of those motions has MGA sought
10    the release of these transcripts.  Now, literally days before      03:49
11    the filing of the opening brief before the Ninth Circuit, I
12    have an emergency ex-parte application before me seeking the
13    release of these transcripts.
14            Someone needs to explain.
15         MR. RUSSELL:  Your Honor, as we put forth in our               03:49
16    papers, I think the issue here is, it was MGA's impression from
17    remarks made by the Court in response to a request from MGA
18    that this issue had already been dealt with.
19            As we cite to you in our reply belief and in the
20    papers before the Ninth Circuit, Your Honor noted at the           03:50
21    hearing on the mistrial that 'I think counsel for MGA had asked
22    me to release them,' referring to the juror interviews.  So
23    there's a little bit of a disconnect between -- admittedly, all
24    parties agreed you would conduct the interviews outside the
25    presence of counsel, and a second question as to what would        03:50
```

```
 1   happen thereafter.

 2          It's my understanding from Mr. Nolan, and based on

 3   the transcript, that the request was made to you to release the

 4   results of those interviews for purposes of being used.

 5   Your Honor indicated at that hearing that the request had been      03:50

 6   made and that the request had been denied, but that the record

 7   would be there, of course, for the appellate courts to review

 8   no matter what the outcome of this.

 9          THE COURT:  Right.

10          Mr. Russell, though, let's assume that that's clear         03:50

11   enough for the motion for mistrial.  But then the trial is

12   over.  The jury is excused.  We now have a motion for a new

13   trial.

14          Was a similar request made at that time?

15          MR. RUSSELL:  No, Your Honor.  I'm not aware of any          03:51

16   authority that would require us to go back and revisit.  The

17   mistrial motion had been filed.  The issue had been preserved.

18   There was not any reason at that point -- there wasn't anything

19   to be gained, and there wasn't anything to be waived by failing

20   to move for a new trial based on the exact same legal issues       03:51

21   that had been fully briefed and addressed on the mistrial

22   motion.

23          It wasn't until the time came up for the appeal and

24   we sought relief directly in the Ninth Circuit, and the Ninth

25   Circuit put it back to us and said, 'You need to file a formal     03:51
```

1   motion for the record.'  That is why this issue has come up on

2   an emergency ex-parte basis, because we had understood the

3   issue to have been preserved --

4           **THE COURT:**  It wasn't just a formality.  They

5   actually expected this Court to make a decision, I presume.          03:51

6           **MR. RUSSELL:**  Absolutely, Your Honor.  I think it's

7   our position, and we'll argue it to the Ninth Circuit again,

8   that you, in fact, did rule on the request.  But they wanted it

9   to be presented as a formal motion, and so that is why we're

10  here.                                                                03:51

11          I think the point of the matter is, there's no

12  question that the issue has been preserved in terms of

13  presenting to you the juror bias issue, and there really is not

14  any harm to anyone in allowing us to have access to these

15  materials now that the jury has been discharged.  I know that      03:52

16  was something that motivated the Court at the time.  That's not

17  an issue now.

18          If we had understood that the Court was looking to us

19  to make a separate motion, we certainly would have done that.

20  But, again, it was our view, based on the comments made and the    03:52

21  requests made, that this issue had been raised and addressed by

22  the district court.  There didn't seem to be any reason to file

23  a separate motion until we received guidance from the Ninth

24  Circuit.

25          **THE COURT:**  Thank you.                                  03:52

1        Anything further on this?

2            **MR. RUSSELL:**  No, Your Honor.

3            **MR. ZELLER:**  I think we've laid it out in our papers

4    why we think there has been repeated waiver acquiescence and

5    forfeiture here.  And the only thing that was preserved was the          03:52

6    grounds that were made in the mistrial motion.  That's the only

7    motion that has been made in this Court.  And there was no

8    argument whatsoever at that time that the jury transcripts were

9    necessary, appropriate, or relied upon in connection with that

10   motion.                                                                 03:53

11       That's really the fundamental problem with their

12   argument here.  They never made a post-trial motion based upon

13   a needed access, a purportedly needed access, to the

14   transcripts, which was a further waiver, forfeiture, and

15   acquiescence.  It's happened multiple times.  There's no               03:53

16   question that they have never presented to this Court a timely,

17   properly-noticed motion that asks this Court to take into

18   account, number one, the content of the juror transcripts that

19   they would have access to so that they could bring such a

20   motion.  That schedule, that timetable, passed months ago.            03:53

21       What we clearly have here is an effort to obtain

22   transcripts that they agreed would be kept under seal, away

23   from counsel, in order to make new arguments on appeal.  And

24   this Court is certainly in a position to make findings that

25   they waived and forfeited in this Court any argument based on          03:54

```
 1   the juror transcripts.  And we think that's very clear in this
 2   particular circumstance.
 3           THE COURT:  I've thought about this this weekend.
 4   I'm trying to figure out what's the right thing on this.
 5           One thought I had was, recognizing the arguments that    03:54
 6   you just made, Mr. Zeller, but also recognizing the need for --
 7   given the nature of the particular issue at stake here, what
 8   about the Court submitting in-camera to the Ninth Circuit, so
 9   that panel, whoever hears the appeal, can have access, if it
10   wants, to the actual juror transcripts, so that for purposes of   03:54
11   appeal, the Ninth Circuit has what it needs, but the privacy of
12   the jurors and the integrity of the in-camera process is
13   maintained?
14           MR. ZELLER:  And, frankly, Your Honor, that's what we
15   understood was happening anyway.  But the only issue that we      03:55
16   understand, and the issue that we've been responding to, is an
17   issue of whether or not MGA should have these transcripts.
18           THE COURT:  Unless they are unsealed, as I understand
19   it, or somehow transmitted by this Court, they remain
20   in-camera.  The court reporter doesn't release or write them      03:55
21   up, and I would have to issue an order to that effect to get
22   them transcribed and sent to the Ninth Circuit so that the
23   Ninth Circuit would have the benefit of seeing what the Court
24   asked and what the answers were; and then, yet, it would
25   maintain, like I say, the privacy of the jury and the inquiry     03:55
```

```
 1    made by the Court in-camera.

 2         MR. ZELLER:  Yes.  And that was the understanding of

 3    what would be occurring in any event, harkening back to the

 4    Court's statements back in August in which the Court said on

 5    the record, essentially, that there will be transcripts that      03:56

 6    will be available to the court of appeals.  But the Court was

 7    also very clear at that time that they would not be released to

 8    anybody.  Those were the Court's words.  And MGA agreed and

 9    acquiesced at that point.  And to the point Mr. Russell and MGA

10    repeatedly argue now to Your Honor, as well as the Ninth          03:56

11    Circuit, that they made some requests to release the

12    transcripts even back in August, and the Court said 'I

13    recollect,' the fact is that there is no record whatsoever of

14    MGA, in any transcript, in any motion, at any point, actually

15    asking for the release of those transcripts.                      03:56

16         We've challenged MGA to cite to such an instance.

17    They have not provided one.  And we have not found one.  We

18    have searched high and low through the record.  If MGA can cite

19    to some motion that they made, or even an oral motion, we have

20    not found it; and MGA has not cited to it.                        03:56

21         And as we also pointed out in our papers, even if

22    they made a motion at that time or a request of some sort, that

23    still was not sufficient to address the issue at hand.  There's

24    no question that the only issue was, were those records

25    properly sealed as of August 24th.  That's the only time that    03:57
```

 1    they ever made a request.  I mean, again, that does not change

 2    the waiver calculus.

 3            And Mr. Russell also argues here, 'Well, there's no

 4    harm in releasing them.'  Well, in fact, there is a harm.  But

 5    even so, waiver and forfeiture do not require harm.  And those          03:57

 6    are the grounds in which we have, I think, amply demonstrated

 7    from the record as to why these transcripts should remain

 8    sealed in-camera.

 9            **THE COURT:**  Mr. Russell, any thoughts on the Court's

10    proposal?                                                              03:57

11            **MR. RUSSELL:**  Your Honor, I certainly share

12    Mr. Zeller's impression that that was always to be the case;

13    so, certainly, at a minimum, we would want that for the

14    Ninth Circuit.  It would be difficult for the Ninth Circuit,

15    without those transcripts, to really have a meaningful review.          03:57

16    I think all parties understood that the transcripts would be

17    available.

18            I do want to briefly address Mr. Zeller's point about

19    the waiver and forfeiture to the challenges met by the fact

20    that Your Honor noted the request on the record.  I don't know          03:58

21    if it happened in chambers.  I know Mr. Nolan -- I wish he was

22    still here; I think he left -- indicated that the request was

23    made.  The transcript reflects that.  And based upon the

24    request being made and Your Honor's articulation of the

25    reasoning, the issue is preserved.                                      03:58

1          In terms of Mr. Zeller's argument that we wish to

2    make new arguments, that's simply not true.  We want to make

3    the same arguments, pointing to the record that the Court

4    relied upon; the argument being that the juror was biased and

5    unable to be fair and impartial.  That's the same argument.          03:58

6    It's no different.  We're simply pointing to the foundation on

7    which the Court made its finding, so that we can argue to the

8    Ninth Circuit about the contents of documents we believe it

9    should be reviewing.

10          I think that issue is preserved.  We're not making          03:59

11   any new arguments.  Given that it was our understanding that

12   the issue had been tendered at the time, the fact that we

13   didn't file a formal noticed motion should be forgiven.  It's

14   clear that all of the parties had at least a misimpression as

15   to what was to happen.  Even Mr. Zeller is now indicating he          03:59

16   had a misimpression that the Court had indicated it understood

17   these records would remain sealed, not even to be seen by the

18   Ninth Circuit.

19          There's at least an ambiguity here.  And given the

20   importance of this issue, not just to the parties but to the          03:59

21   entire judicial system, I think it would be not only strange,

22   but I think it would be a mistake for us not to release these

23   transcripts to have an open ventilation.

24          I understand the concerns that motivated the Court

25   when the jury was still sitting, but that jury is not sitting.          03:59

1   If there are sensitive, personal matters that the Court deems

2   inappropriate to be released, it could redact those, if there's

3   something that's so personal that it should not be released.

4   But, certainly, the effect of Juror Number 8's comments on the

5   deliberative process and what was and was not said by that          04:00

6   juror and how it affected the deliberations, we believe that

7   not only fairly, but as a matter of constitutional propriety,

8   it should be released.

9           **THE COURT:**  Thank you, Counsel.

10          The next issue I have here on my paper is the               04:00

11  receiver accounting issue.  I have a pending ex-parte

12  application from Mattel regarding its duty to respond and a

13  briefing schedule.

14          I will issue a written order on that.  The Court

15  doesn't need any further argument on that at this point.           04:00

16      **MR. RUSSELL:**  Are you referring to the motion for

17  clarification?  What are we referring to here?

18          **THE COURT:**  No.  The receiver accounting submitted by

19  the temporary receiver.

20      **MR. RUSSELL:**  All right.                                    04:00

21      **THE COURT:**  The next motion is the motion regarding

22  discovery order number 27.

23      **MR. QUINN:**  Yes, Your Honor.

24          Your Honor, this is an appeal from the ruling of the

25  Discovery Master.  It relates to Lexington, which, as the Court    04:00

knows, is an entity organized under the laws of Nevis in the

Caribbean.  According to Vision, which is one of the investors,

and Omni 808, the $10 million that it contributed to obtain its

interest in Omni 808, it obtained from Lexington.  And this

appeal relates to a denial of a motion to compel to obtain

discovery, any discovery, concerning Lexington.

Under the Discovery Master's order, we've been

prevented from getting any information regarding Lexington, who

its shareholders are, any of the documents, the loan documents,

any of the transaction documents relating to this.  The

Discovery Master identified several grounds for a denial of our

motion to compel.

Your Honor, with all due respect to the hard-working

Discovery Master, we believe this is one that he got wrong, on

each of those grounds.

One ground is jurisdiction, that these are documents

in the hands of attorneys who are in this district, the Bingham

law firm; but it's an entity which is organizing the laws of

the Caribbean.  There's no showing that there's any

jurisdiction over the entity; so, therefore, there isn't

jurisdiction over the documents.

And, Your Honor, I respectfully submit that that's

inaccurate just as a proposition of law.  These documents are

here.  They are in the district.  There doesn't have to be

jurisdiction over the Nevis entity.

1          By the way, Your Honor, even if we got past that,

2    we've alleged that there is jurisdiction over the Nevis entity.

3    That entity has filed two UCC financing statements against

4    California organizations.  They've retained counsel in this

5    district.  They are engaged in this transaction in this                04:02

6    district.  We've alleged there's jurisdiction over it.  Until

7    that's controverted, Your Honor, it's assumed that there is

8    jurisdiction.  And even if we get beyond that, Your Honor, we'd

9    be entitled to jurisdictional discovery.

10          So the notion that because there's this entity that's       04:03

11   organized under Caribbean jurisdiction that we cannot get

12   access to documents which are present in this district, I just

13   think it's clearly wrong under the law.

14          There's a suggestion also, the Discovery Master's

15   opinion, that these documents are privileged and that they are   04:03

16   in the hands of the attorney.  There really isn't any support

17   for that, Your Honor.  Both sides cite the Court to the Ratliff

18   decision.  And if you read that decision, Your Honor, it -- and

19   I'll just briefly quote -- it says, and I quote, "Documents

20   held by an attorney in the United States, on behalf of a          04:03

21   foreign client, absent privilege, are as susceptible to

22   subpoena as those stored in a warehouse within the district

23   court's jurisdiction."

24          This is not a case like the Sarrio case, which both

25   parties also cite to.  There's some dicta in the language, the    04:03

1    district court's opinion in that case, that indicates that if

2    -- you know, in that case, it was an E&Y Belgian-affiliated

3    entity that had provided documents, I believe, to a law firm.

4    I may be mistaking that, actually, with the Davis Polk case.

5    But it was some foreign entity that had provided documents for          04:04

6    legal advice in New York.  There was dicta suggesting that it

7    would be inappropriate on privileged grounds to require the

8    production of those documents.

9            It is dicta, Your Honor.  But this is not a situation

10   where documents were provided by an entity for the purpose of          04:04

11   getting legal advice, even if that were an exception.  This is

12   the res gestae.  These are the lawyers who engaged in this

13   transaction.  They did not receive a file in order to advise a

14   client about a drug deal or something like that.  This is the

15   res gestae.  These are the transaction documents.  They are in          04:04

16   this district.

17           The Discovery Master also denied on the grounds that

18   the request was duplicative.  Your Honor, no one has produced

19   these documents.  Vision has not produced these documents.

20   MGA has not produced these documents.  No one has produced          04:05

21   these documents.  All counsel would have to say is, 'There are

22   no documents other than what other parties have already

23   produced.'  And they don't say that.

24           These transaction documents relating to this

25   $10 million, Your Honor, have been produced by no one.  So even          04:05

```
 1    if it were duplicative, we all know parties have different

 2    document retention policies.  It's not unusual.  We saw that in

 3    the Phase 1 trial, that documents will be produced out of the

 4    files of one party and somehow not out of the other party, even

 5    though there are e-mails between both parties.  That's not an          04:05

 6    unusual phenomenon.  So I'd submit, that's not proper grounds.

 7         The Discovery Master also sustained the objection on

 8    the grounds of burden.  But there was no showing required that

 9    there was any burden here.  There was no indication given of

10    what the volume was.  Vision had also objected on the grounds        04:06

11    of burden to producing documents relating to its investment in

12    Omni 808.  The motion to compel was granted.  It turned out

13    they had 150 documents at the end of the day.  So we have

14    nothing in the record to show burden.  Really, it's the

15    responsibility, as to my understanding of the party responding       04:06

16    to discovery, if they do have a burdensome objection, to

17    articulate some basis.

18         So this is an important issue, Your Honor.  We

19    contend that this money that Lexington -- we don't think Nevis

20    was chosen as the jurisdiction in which to incorporate this          04:06

21    entity because it was most convenient to somebody.  We have a

22    suspicion that it was done as part of a scheme to obscure where

23    the money came from, who the principals are.

24         And if we're not permitted to obtain this discovery

25    regarding Lexington in the hands of the Bingham firm, we may         04:07
```

1   well be at a dead end in that regard.

2        **THE COURT:**  Counsel, let me ask you this:  Reading

3   the Discovery Master's order, is assessment of the relevancy of

4   this predicated on the state of the case prior to the Court

5   granting your third amended answer and cross claims?          04:07

6        **MR. QUINN:**  Yes, Your Honor.

7        **THE COURT:**  I know you object to this -- or not

8   object to it, but you resist the suggestion that you anticipate

9   the Court making of remanding this to the Discovery Master, in

10  light of the third amended answer and cross claims.           04:07

11       Might it not make sense in light of that?

12       **MR. QUINN:**  Well, Your Honor, our concern was because

13  there was multiple grounds for denying our motion to compel.

14       **THE COURT:**  There were.  But relevancy seems to --

15  the weight of the relevancy seems to surface in different parts  04:07

16  of the order.

17       **MR. QUINN:**  I think some guidance from this Court on

18  these other points --

19       **THE COURT:**  I hate to issue advisories.

20       **MR. QUINN:**  I think the issue is joined on these      04:08

21  points, Your Honor.  We do have legal rulings by the

22  Discovery Master on some of these points.

23       If it were just a question of relevance after the

24  filing of the amended pleading, we would have gone back to the

25  Discovery Master, asked for reconsideration, as indeed we have  04:08

```
 1    in other instances.  So the only reason I'm standing before you
 2    today, Your Honor, raising this issue is because of our concern
 3    that we'd be kind of caught -- that there would be an issue
 4    there that we had not presented this and there were these other
 5    grounds for denying it.
 6            I take it now, with the amended pleading, there's no
 7    question that it's relevant.  So it seems kind of unnecessary.
 8    It does take a while to schedule these motions.  It seems kind
 9    of an unnecessary hoop to require everybody to go through, to
10    go back before the Discovery Master, now that it's clear that
11    there really isn't any question about relevancy.
12            THE COURT:  Thank you, Counsel.
13            Mr. Gordinier?
14            MR. GORDINIER:  Several points, Your Honor.
15            First of all, lost in the shuffle here is the fact
16    that the motion was directed to a subpoena served on my law
17    firm, Bingham.  Bingham did not represent Lexington in the
18    transaction.
19            The Discovery Master decided that the subpoena was
20    overbroad and spent 12 pages describing that, that it hinged on
21    clearly privileged material, and that it was duplicative.
22    Those decisions were correct in every respect.
23            Your Honor, the subpoena was designed to annoy and
24    harass Bingham.  What you heard today should have been raised
25    in a motion directed to the order that the Discovery Master
```

04:08

04:09

04:09

04:09

04:09

04:09

```
 1   made to motions directed to Lexington and to Vision.  Those

 2   orders have been decided and are not before you today.  And you

 3   heard Mr. Quinn at the beginning of his argument say they had

 4   gotten no documents.  At the end of his argument, he conceded

 5   they had gotten 150 documents.                                    04:10

 6        Your Honor, what's before you today is whether the

 7   Discovery Master's order respecting the Bingham subpoena was

 8   clearly erroneous.

 9        There is no showing that it is; it is clearly

10   appropriate.                                                      04:10

11        The recent filings, including the reference to the

12   third amended complaint, are all improper under Rule 72.  If

13   we're going to have a process here, we need to follow the

14   rules.

15        Your Honor, I'll leave you with one final thought,          04:10

16   and then I'm happy to answer any questions that you have.

17        THE COURT:  Go back to that last point.  I mean,

18   you're suggesting that --

19        MR. GORDINIER:  I'm suggesting that the declaration

20   filed by Mr. Zeller is improper under Rule 72 and cannot be      04:11

21   considered by the Court.

22        In other words, as the judge -- as you know -- pardon

23   me for just making my record here, but the Court is evaluating

24   the record that was before the Discovery Master to decide

25   whether that ruling was clearly erroneous.                       04:11
```

```
 1              You are not reviewing this as a de novo ruling.

 2              In other words, the materials that were not before

 3   the Discovery Master are not properly before you.  And there's

 4   Ninth Circuit authority, and I could cite it to you, where the

 5   courts say, 'We're not going to consider this because we don't          04:11

 6   have jurisdiction to review this de novo.'

 7              I don't want to get off on a sidetrack, Your Honor,

 8   because that's not even close to what's going on here.

 9              What's going on here is, they served subpoenas on the

10   financing entities; the Discovery Master resolved those;                04:11

11   documents were produced; then they served a subpoena on my

12   firm.  The Discovery Master resolved that.  There is no reason

13   and nothing wrong with Mr. O'Bryan's ruling here.

14              Let me just suggest one other point, Your Honor.

15              On Page 11 of their motion to you, they said, 'We do         04:12

16   not seek any privileged documents and we do not want any

17   privileged documents.'

18              The Court needs to be aware, as I said to you last

19   time, they're telling you one thing and Mr. O'Bryan another

20   thing.  They filed a motion this week asking Mr. O'Bryan to            04:12

21   waive the privilege.  They are seeking privileged documents.

22              THE COURT:  On these documents?

23              MR. GORDINIER:  Yes.

24              No, not simply these documents; all of the documents

25   that relate to Bingham.                                                04:12
```

1          Now, that motion is as frivolous and as ridiculous as

2     most of these motions have been, directed both to Bingham and

3     to my clients.

4          But the point is, the Court is being told one thing,

5     and Mr. O'Bryan is being told another thing.                    04:13

6          The Court has been told that my clients gifted

7     $50 million to Mr. Larian, or to MGA, on the one hand.

8     Mr. O'Bryan has been told, and now they have alleged, that

9     there's a massive conspiracy and that this is all controlled by

10    Isaac Larian.  If either of those is true, we will get to the   04:13

11    bottom of that.  But the point I want the Court to keep in mind

12    is, there is a problem, there is a problem with parties

13    accepting one position for one motion and another position for

14    another.

15         Let me give you another example.                           04:13

16         We don't get served with about 90 percent of what's

17    going on here, even though we're mentioned in it, because they

18    have taken the position, as they do in certain things, that we

19    should not be accorded any status as a party.  And yet, when we

20    raised this with the Discovery Master, and the Discovery Master  04:13

21    was, as the Court will understand, applying Rule 45, they

22    argued, and indeed headed a point, that we are not only not a

23    party, we are an integral party, and we should not be accorded

24    the deference to nonparties.

25         Your Honor, I know that there's a lot in front of          04:14

```
 1    you, but what I'm trying to urge the Court on today is that
 2    this motion was directed to Bingham.  The Discovery Master
 3    acted properly in denying it.  There is plenty of discovery out
 4    there directed to the financing entities, some of whom are my
 5    clients, some of whom may not be.  I don't know who all they    04:14
 6    are going to contend are the financing entities before we get
 7    done.  But this motion should be denied.
 8              Thank you, Your Honor.
 9         THE COURT:  Thank you, Counsel.
10         Mr. Quinn?                                                 04:15
11         MR. QUINN:  Yes, Your Honor.
12              The previous motion relating to Lexington was a
13    question about service, whether service was effective on
14    Lexington.  The problem with getting discovery from that
15    financing entity, again, is, it's a Nevis entity.  Nevis isn't  04:15
16    even a party to the Hague Convention.  We have a situation here
17    where they don't deny they are holding documents relating to
18    this transaction between Lexington and Vision.  They are here
19    in the district.  The fact that a lawyer is holding them, I
20    submit, is irrelevant.                                          04:15
21              On the privilege question, privilege has to be shown
22    on a document-by-document basis.  If they are claiming that
23    they are holding any privileged documents, we all know that a
24    privilege log should be provided.
25              What counsel is referring to is about another matter  04:15
```

```
 1   before the discovery referee where we're asserting that the
 2   privilege was waived, it's a subpoena to Omni, where Omni did
 3   not provide a privilege log.  There's Ninth Circuit authority
 4   for the proposition that if you fail to timely provide a
 5   privilege log, that affects a waiver.                              04:16
 6            Thank you, Your Honor.
 7            THE COURT:  Just one point.  It's not relevant to
 8   this motion, but it was raised by Mr. Gordinier.
 9            Are you serving the intervening party with --
10            MR. QUINN:  Perhaps I'd better defer to Mr. Zeller.       04:16
11            MR. ZELLER:  As is a number of things that
12   Mr. Gordinier has said here today, these have never been raised
13   with us, as to whether or not -- he claims he has not been
14   getting papers.  Certainly, we've served them with papers.
15            THE COURT:  Make sure he gets everything, Mr. Zeller.     04:16
16            MR. ZELLER:  And I assume we have MGA's agreement
17   that there's not an issue about us providing AEO materials, as
18   well, to Omni and so on.
19            MR. RUSSELL:  That's fine.
20            THE COURT:  Make sure Mr. Gordinier receives copies       04:16
21   of everything.
22            MR. ZELLER:  For the record, as far as I'm aware,
23   he's on every service list.  But he has never raised that with
24   us before.
25            THE COURT:  He's raised it now, so just corroborate       04:17
```

1    that.

2           Last issue.  Well, actually, there's two more issues:

3    The motion to strike the reports by the Court's forensic

4    auditor, Mr. Durkin, and the related issue regarding the

5    unsealing of Mr. Durkin's reports.                          04:17

6           Let me just express my thoughts on this for the time

7    being, and then I'll hear from everyone who wants to be heard.

8           The Catch-22 that the Court finds itself in is this:

9    On the one hand, at present, there is no reason not to keep the

10   reports by Mr. Durkin sealed, or in their current state, where  04:17

11   they've been disclosed to the parties, pending further order of

12   the Court.  Except one.  And that one reason was the

13   unfortunate incident that we had at the last hearing, where

14   references on the record were made to Mr. Durkin's report.

15          Amongst those references to the report and to        04:18

16   Mr. Durkin were some pretty serious allegations concerning

17   Mr. Durkin, both in terms of his competency and in terms of his

18   objectivity, both in the papers that were filed with the Court,

19   not under seal, and the statements that were made in court, not

20   under seal.                                                  04:18

21          The question is how to rectify that.

22          I've already, I think, spoken in court, as well as in

23   the court order, to the counsel who made the statements; so

24   that is in the past at this point.  However, I can't leave

25   these allegations hanging out there, without giving an       04:19

1    opportunity for them to be addressed; that doesn't seem fair.

2            So the question is what to do.

3            On the one hand, one proposal -- and the Court raised

4    this in its order -- is that we could simply release the entire

5    report, and that way people can draw their own conclusions          04:19

6    based on an educated understanding of what's in the report.

7            But that, of course, raises the problem of releasing

8    the report and releasing information that at this point, at

9    this juncture, should probably remain under seal.

10           So that's where I'm at.                                       04:20

11           So without further exacerbating the situation, I

12    invite counsel to address the Court.

13       **MR. GORDINIER:**  Your Honor, since some of them were

14    my comments at the last hearing that the Court is concerned

15    about, let me suggest what I think the appropriate thing is to     04:20

16    do.

17       **THE COURT:**  Please.

18       **MR. GORDINIER:**  I think the Court is right, and the

19    Court's instincts are correct, that we ought not to exacerbate

20    this and we ought not to make it worse than it already is.  My     04:20

21    suggestion is that -- and if what I said in responding to an

22    OSC directed to my client went beyond what the Court wanted,

23    I'm sorry for that, but I do think what we ought to do, if the

24    Court is concerned about that pleading being out there, is seal

25    that pleading.                                                      04:20

1          I think the real problem here, and the real concern

2    going forward, is that we're going to lose real control of this

3    if the Court doesn't -- and the real purpose of my motion here

4    is to have the Court readmonish everybody that nobody is

5    supposed to use anything in those reports to litigate this

6    case; that the Court was hiring Mr. Durkin for its own

7    purposes; and until and unless the Court instructs otherwise,

8    the parties ought not be citing to what Mr. Durkin says for

9    purposes of this litigation.

10          In my defense, if I can, the only time we referred to

11   it was in response to the Court's request for a statement of

12   position; that was the only time we have cited it in an

13   unsealed report.

14          We have not used Mr. Durkin's reports in any way, in

15   any point in this litigation, other than to respond to the

16   Court's request for a statement of position, the Court's

17   request for a response in terms of our motion here.  I think

18   the Court ought to make it clear to everybody that Mr. Durkin's

19   work is not to be used to further any party's or quasi party's

20   litigation position.

21          **THE COURT:**  That should already be clear.  And if

22   it's not, it is now.  But that does not address the issue that

23   the Court just raised.

24          **MR. GORDINIER:**  I don't know precisely what the Court

25   is referring to.

```
 1          THE COURT:  I'm referring to the allegations made by

 2   you and your client that attacked Mr. Durkin's competency and

 3   objectivity.

 4          MR. GORDINIER:  Your Honor, what we did was respond

 5   to the report.  What we said was that there were problems with      04:22

 6   that report.  Some of them have been conceded.

 7          Now, we never said anything about -- and I don't want

 8   to exacerbate this today.

 9          THE COURT:  You're starting to.

10          MR. GORDINIER:  I sense when the Court backs away           04:23

11   from me that I'm not making progress here.

12          I don't know what the Court -- my suggestion is,

13   anything more that is said or done publically is going to make

14   it worse than it is now.  I don't know what -- my suggestion is

15   that the Court simply issue an order saying that you've            04:23

16   reviewed all of this; that nobody is to consider it; the Court

17   thanks Mr. Durkin, he did a fine job, we'll do what we're going

18   to do with it, and then seal it and go on.

19          THE COURT:  One of the things I do want to make clear

20   is that not only is the report not to be used, but at the same     04:23

21   time, the information -- and another concern I have -- and

22   perhaps you can address this without addressing anything that's

23   under seal --

24          MR. GORDINIER:  I'll try.

25          THE COURT:  -- I'm concerned -- I don't know how best       04:23
```

```
 1   to articulate this -- Mr. Durkin had a report, and the report
 2   itself is however many pages it is.  But there are voluminous
 3   attachments thereto, documents that were obtained, and
 4   presumably will be obtained through the discovery process,
 5   entirely independent of the report.                              04:24
 6          I trust it is understood that simply because those
 7   documents were in the report by Mr. Durkin, that that somehow
 8   doesn't make those documents off limits to the litigation
 9   herein.
10          MR. GORDINIER:  I think that's understood.                04:24
11          THE COURT:  Mr. Russell may object.
12          MR. RUSSELL:  I think that's true with respect to
13   documents produced by the parties.  But there are, for example,
14   interview notes and things like that.  I just want to be clear
15   that those are exhibits -- that we have, obviously, a very        04:24
16   different view as to those.
17          MR. GORDINIER:  I'm sorry.  I assumed what you were
18   talking about were, let me say, original documents from either
19   Mattel or MGA.  I was not -- I would not think that any work
20   product by Mr. Durkin -- and that would include interview        04:25
21   notes, I think -- or soft materials -- I don't know whether to
22   say, like, correspondence or something provided to Mr. Durkin
23   and generated solely for the purpose of providing him
24   information should be off limits.
25          But I'm certainly not suggesting, and I don't think       04:25
```

```
 1    anybody believes, that accounting materials or financial

 2    statements or the like would have any extra protection by

 3    virtue of the fact that Mr. Durkin made use of them.

 4           Is that what you're getting at, Your Honor?

 5           THE COURT:  Something along those lines.          04:25

 6           Thank you, Counsel.  Let me hear from Mattel.

 7           MR. RUSSELL:  If I could, just for a second.

 8           In large measure, I agree with what Mr. Gordinier

 9    said.  We don't want to exacerbate it.  We do have a grave

10    concern about the harm to MGA if these materials were to be   04:25

11    released.  And at this point, I think the only way to address

12    the concern is to simply note, as Your Honor has, there's no

13    reason to get to the bottom of these issues that have been

14    raised, because the Court isn't relying upon it.

15           THE COURT:  That's not fair, Mr. Russell.  If things   04:26

16    were out there about you or about your colleagues, and

17    allegations were made, and then it was just dropped, and they

18    said, 'Well, we're just not going to get to the bottom of

19    it' --

20           MR. RUSSELL:  Well, the difficulty is, for you to     04:26

21    resolve these issues is going to require the Court to actually

22    weigh into the substance of claims that are pending before

23    Your Honor in I guess what I'll call Phase 3 now, because I

24    don't really think they are Phase 2 claims; but the new amended

25    counterclaim, you will have to address, because that's what    04:26
```

```
 1    Mr. Gordinier's briefs are dealing with.

 2         THE COURT:  I certainly am not going to go there, and

 3    I certainly wouldn't weigh in on the findings.  I'm talking

 4    about issues more directed towards -- personal issues with

 5    respect to Mr. Durkin.  For example, his competency and his      04:26

 6    objectivity; things which I, frankly, in reading and rereading

 7    the reports, in context, and in light of all of the attachments

 8    made thereto, I don't see.

 9         MR. RUSSELL:  That's fair, Your Honor.

10         I mean, if we're going to draw a bright line between        04:26

11    the substance of what he was discussing and his bias or --

12         THE COURT:  Or lack thereof.

13         MR. RUSSELL:  -- his competency, I don't think we'd

14    have a problem with Your Honor addressing those issues, if

15    we're staying away from the substance and saying, if the Court   04:27

16    concludes that it's appropriate, 'I have no problem with his

17    competency,' or 'I find that the bias allegations in this

18    instance have no merit,' that type of thing.  If we're staying

19    away from unsealing for the public consumption what the

20    underlying analysis was, I think MGA would be satisfied with     04:27

21    that.

22         THE COURT:  Very well.

23         Let me hear from Mattel.

24         MR. ZELLER:  It's the underlying analysis that

25    refutes the selective disclosures that MGA and Omni made in a    04:27
```

```
 1   public forum to smear -- and I don't use that word lightly --
 2   both Mr. Durkin and Mattel.  And the idea that somehow that
 3   bell can be unrung by now sealing Omni's filing that
 4   precipitated this and disclose the confidential information is
 5   not even remotely realistic.  It does not address the              04:27
 6   fundamental problem here, which is that they made a selective
 7   disclosure.
 8           What they really want to do is disclose those
 9   portions and make those accusations in a public forum that they
10   want aired.  Then they want to suppress the actual facts and      04:28
11   the actual report that refutes those very allegations.  And
12   that is not fair, and that is not the law.
13           The law is very clear here.  Selective disclosure,
14   just like, for example, with privilege, is not allowed for
15   confidentiality reasons either.                                   04:28
16           Moreover, I'm sure that the Court has reread Omni's
17   public filing.  And the allegations that are made make it
18   impossible for them to be properly refuted without actually
19   turning in or disclosing, releasing, the report itself and the
20   exhibits.  They challenge Mr. Durkin's competency, based upon     04:28
21   how he interprets that evidence.  They actually even challenge
22   what they say is the tone.  They say that the tone of the
23   report is compelling proof that he is basically biased.
24           These are allegations that they have woven into,
25   asserting and relying upon, the entire report itself.  So both   04:29
```

```
 1   as a legal matter and as a factual matter, the only thing that
 2   can be done at this point is to release the report and its
 3   exhibits.  And this is unfortunate.  No one takes any joy in
 4   this.  But that is the situation that MGA and Omni created.
 5        And I would also say, Your Honor, there's no evidence      04:29
 6   that MGA had every opportunity to put into evidence; as the
 7   Court said, it was required to provide support, specific and
 8   supported objections to the release of the information in the
 9   report and the exhibits.  They provided no evidentiary support.
10        Also, the fact is that -- I'm not really sure what         04:29
11   the distinction is that MGA is trying to make about the
12   interview notes.  Mr. Durkin is certainly a witness.  He had
13   parties make representations to him about facts.  And the idea
14   that those representations, particularly by Mr. Larian and
15   Mr. Kadisha, can somehow just again be erased by suppressing     04:30
16   the true facts is just simply a very puzzling kind of
17   assertion.  But even more to the point, Your Honor, the fact
18   is, they disclosed the content of those interviews and the
19   existence of those interviews in the Omni filing.  This is a
20   matter where they have already disclosed the information, and    04:30
21   they disclosed enough of it that fairness in the law requires
22   that the rest of it be disclosed, particularly given the kinds
23   of allegations that are being made.
24        Your Honor, this is not just simply some minor
25   misstep on the part of Omni and MGA.  It was a coordinated       04:30
```

1    effort by both of them to smear Mattel and Mr. Durkin as being

2    biased.  You'll recall, Patty Glaser asserted, here at this

3    podium, when we were arguing about the motion for leave to

4    amend, a point about as irrelevant as could possibly be.  She

5    accused us of throwing around foreign-sounding names and having          04:31

6    no basis for doing it other than that these were

7    foreign-sounding names.  Mr. Durkin's report and the evidence

8    attached to it that we were relying upon proves otherwise.

9         These are serious allegations that are being made

10   against officers of the court, as well as parties; and it needs          04:31

11   to be corrected.

12        **THE COURT:**  With respect to the -- Mr. Gordinier,

13   please give me a chance here with Mr. Zeller -- so much of this

14   now, though, is going to be resolved, so much of the factual

15   allegations are going to be resolved, one way or the other,              04:31

16   through the litigation of this case, because many of the

17   allegations or the issues raised or addressed in Mr. Durkin's

18   report are also found, in one form or another, in your third

19   amended answer.  The Court would ultimately prefer that process

20   to be the manner by which the truth or the falsity of any such          04:32

21   allegation gets ferreted out.

22        I'm simply trying to dispel or rectify a situation in

23   which an allegation has been made.  And there's no opportunity

24   -- your allegations about Omni 808 and Omni 808's allegations

25   about Mattel are all going to have the light shed on them as we          04:32

go through this litigation.  Mr. Durkin has completed with this, and he does not have that opportunity.  He does not get to stand up here.  And that's the concern I have.

MR. ZELLER:  Right.  In fact, Mr. Durkin -- absolutely, that's right.  And the idea that somehow down the road we would be permitted, or Mr. Durkin would be permitted, to refute these kinds of one-sided disclosures about the facts, about what were ostensibly originally confidential facts, that's just no real answer at all, as far as we're concerned.

And contrary to what MGA is arguing here today, the Court is not resolving any of these issues about the underlying facts.  The Court is resolving what the report says, so people can judge themselves.  They have made public accusations against Mr. Durkin, his competency, his integrity; and people should be able to see the report and what supports it in order to judge for themselves.  That's the issue.  That's why when Mr. Russell says you have to resolve somehow the underlying truth of any of this, that's just wrong.  That's not on the table today at all.

THE COURT:  No.  But there are also reasons, and good reasons, why this all should have been kept under seal at this time to begin with; and that's weighing on the Court as well.

I understand your position.

Mr. Gordinier, is there anything further?

MR. GORDINIER:  Yes, Your Honor, there is.  And the

1    hair should have stood up on the back of your neck when

2    Mr. Zeller said Mr. Durkin is a witness.

3            I don't think that's true.  Mr. Durkin is not a

4    witness, and he should not be a witness.  And you heard him say

5    that they are going to try to take discovery of what          04:34

6    Mr. Kadisha and --

7            THE COURT:  We're not there yet.

8            MR. GORDINIER:  But we will be, Your Honor, if you

9    don't seal everything, and if you don't make it clear to the

10   parties they are not allowed to rely on that.                 04:34

11           THE COURT:  I understand your position, Counsel.

12   Thank you.

13           MR. RUSSELL:  Your Honor, just one more point.

14           Mr. Zeller keeps saying that MGA caused something to

15   happen here.  MGA did not cause anything to happen.  We don't  04:34

16   control Omni.  We have no power to control what they did.

17   Everything we filed was under seal.  I just want that to be

18   clear for the record.

19           THE COURT:  All right, Mr. Russell.

20           I think, Mr. Zeller, the Court has probably heard      04:34

21   enough on this, unless there's something --

22           MR. ZELLER:  No.  It was just in response to what

23   Mr. Russell said, as to why MGA, even apart from not having

24   alleged control over Omni, still is a responsible party here.

25           THE COURT:  The Court can make this assessment.        04:35

```
 1              The last issue is, I received a request for approval

 2    of substitution of attorney:  Carlos Gustavo Machado Gomez to

 3    be substituted by Carlos Gustavo Machado Gomez.

 4              I assume Mr. Gomez is not an attorney.  I know

 5    counsel is probably not present today, but the proper way to       04:35

 6    address that substitution is through a motion and not by

 7    substitution papers.

 8              MR. RUSSELL:  Your Honor, on a related note, if you

 9    were finished with that issue, we have another substitution of

10    counsel form that's going to be filed, I think, this afternoon.    04:35

11    Two of the Phase 2 counsel for MGA will be substituting out of

12    the case.  A new firm, Ms. Annette Hurst from Orrick,

13    Herrington & Sutcliffe, will be substituting in.  Skadden Arps

14    will remain.

15              THE COURT:  Who's out?                                   04:35

16              MR. RUSSELL:  Glaser Weil & Mitchell Silberberg are

17    out, and she's in.

18              THE COURT:  And you're in.

19              Welcome.

20              MS. HURST:  Thank you, Your Honor.                       04:36

21              I believe you know my partner, Mr. Molinski, who is

22    also in.

23              THE COURT:  After this afternoon, you may not want to

24    be in.  But welcome, while you're still here.

25              MR. MOLINKSI:  I think the substitution has been         04:36
```

```
 1    filed.
 2              THE COURT:  It's too late, then.  Very well.
 3              MR. ZELLER:  I had a note about the substitution, as
 4    to the latter part.
 5              I did want to just raise a concern, and it may not be    04:36
 6    insurmountable.  But the substitution, having Mr. Machado
 7    representing himself, I did write a letter to the other side
 8    to --
 9              THE COURT:  There's going to have to be a motion, and
10    you'll have a chance to oppose that.                              04:36
11              MR. ZELLER:  Thank you.
12              THE COURT:  Very well.
13              I think that wraps up everything for a while.
14              I am off to the Ninth Circuit conference in two
15    weeks, and this time I'm not giving you my hotel itinerary, so   04:36
16    I will not be receiving documents at every stop.  But I wish
17    you well, and I'm sure I'll see something from you soon.
18              Good day.
19              MR. QUINN:  Thank you, Your Honor.
20              MR. RUSSELL:  Thank you, Your Honor.                    04:37
21              (Proceedings concluded.)
22
23
24    /  /  /
25    /  /  /
```

```
 1                              CERTIFICATE

 2

 3     I hereby certify that pursuant to section 753, title 28, United
       States Code, the foregoing is a true and correct transcript of
 4     the stenographically recorded proceedings held in the above-
       entitled matter and that the transcript page format is in
 5     conformance with the regulations of the Judicial Conference of
       the United States.
 6

 7     _____          _____
       THERESA A. LANZA, CSR, RPR                         Date
 8     Federal Official Court Reporter

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```