Page 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

THE HON. DAVID O. CARTER, JUDGE PRESIDING

```
MATTEL INC.,                          )
                                      )
              Plaintiff,              )
                                      )
       vs.                            ) No. CV 04-9049-DOC
                                      )
MGA ENTERTAINMENT, INC.,              )
                                      )
              Defendant.              )
_____)
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SANTA ANA, CALIFORNIA

WEDNESDAY, SEPTEMBER 1 , 2010

5:11

Maria Beesley-Dellaneve, RPR, CSR 9132
Official Federal Reporter
Ronald Reagan Federal Building, room 1-053
411 West 4th Street
Santa Ana, California 92701
(714) 564-9259

92d40a40-e4f5-4431-a80b-bf31da667c27

```
 1   APPEARANCES OF COUNSEL:

 2   FOR THE PLAINTIFF:    QUINN EMANUEL URQUHART OLVER & HEDGES
                           BY:  MICHAEL ZELLER, ESQ.
 3                         and  JOHN QUINN, ESQ.
                                SCOTT WATSON, ESQ.
 4                         865 S. FIGUEROA
                           10TH FLOOR
 5                         LOS ANGELES, CALIFORNIA 90017
                           (213)443-3000
 6

 7   FOR THE DEFENDANTS:   ORRICK, HERRINGTON & SUTCLIFFE
                           BY:  ANNETTE HURST, ESQ.
 8                         405 HOWARD STREET
                           SAN FRANCISCO, CALIFORNIA 94105
 9                         (415)773-5700

10

11   FOR THE DEFENDANTS:   ORRICK HERRINGTON & SUTCLIFFE
                           BY:  THOMAS MCCONVILLE, ESQ.
12                         4 PARK PLAZA
                           SUITE 1600
13                         IRVINE, CALIFORNIA 92614
                            (949)567-6700
14

15

16   FOR THE MOVANT IGWT GROUP: ORRICK HERRINGTON & SUTCLIFFE
                            BY:  WILLIAM MOLINSKI, ESQ.
17                          777 SOUTH FIGUEROA STREET
                            SUITE 3200
18                          LOS ANGELES, CALIFORNIA 90017
                            (213)629-2020
19

20

21

22

23

24

25
```

1     SANTA ANA, CALIFORNIA; WEDNESDAY, SEPTEMBER 1, 2010

2                              5:11

3          **THE COURT:** We're on the record in Mattel versus MGA.

4          And counsel, would you be kind enough, beginning with

5     MGA, to make your appearances this evening.

6          **MS. HURST:** Your Honor, Annette Hurst for MGA.

7          **MR. MCCONVILLE:** Tom McConville, Your Honor.

8          **MR. MOLINSKI:** Bill Molinski for MGA.

9          **MR. QUINN:** John Quinn for Mattel.

10         **MR. ZELLER:** Mike Zeller for Mattel.

11         **MR. WATSON:** Scott Watson for Mattel, Your Honor.

12         **THE COURT:** We're going to get to the argument on this

13    in just a moment.  Have a seat, counsel.  You are going to be

14    taking some notes.  This will be the last thing we do this

15    evening.

16         First, I'm going to -- did you get a copy of Judge

17    Smith's -- the Court recommendation of the electronic discovery

18    special matter on August 19, 2010?  You sent it to me in PDF form.

19         **MS. HURST:** The August 19?  Yes.  And that's the one to

20    which no objections have been filed.

21         **THE COURT:** I'll get there, counsel.  Thank you.

22         Now, did you also receive a report and recommendation of

23    electronic discovery special master concerning compensation for

24    the court-appointed discovery consultant, August 15, 2010?

25         **MS. HURST:** Yes.

Page 4

1     **THE COURT:** I have the August 19 in this form. One of
2  you have a clean copy? It's coming off of PDF.
3     **MR. MCCONVILLE:** I think I do, Your Honor.
4     **THE COURT:** First, the Court is going to sign and file
5  the two orders from Judge Smith.
6        The second item of business is Mattel's motion to
7  confirm concerning the Bratz trade secret claims. I have read the
8  papers and I'm prepared to rule as early as tomorrow. I'm not
9  going to force you to meet and confer on substantive and deeply
10 contested issues, but I'm not sure whether this issue is more like
11 a discovery dispute or a dispositive motion. So I'm going to
12 suggest something but not require its adoption.
13       Right now we have this motion and a lot of forthcoming
14 motions on MGA's counterclaims and reply. Do you think it's
15 fruitful for any meet-and-confer process and that you would be
16 able to try and reach a stipulation as to both set of claims?
17       Let me interrupt my conversation with counsel. Judge
18 Smith's orders of August 19 and August 15 are signed by the Court.
19 I'm going to give those to the clerk. You might prepare copies of
20 these at your convenience tonight, but those are filed with the
21 Court, the signed orders now from Judge Smith.
22       I wonder if it would be fruitful to meet and confer and
23 if there is any ability to try to reach a stipulation as to both
24 sets of claims. If you don't think you can achieve anything, I'm
25 not going to send you out and waste your time. But I'm not sure

Page 5

1  that the sorts of rulings I'll make result in outcomes that can
2  approach any nuanced solution that an agreement between the
3  parties can achieve.
4         So, what are your thoughts?
5         **MS. HURST:** Shall we confer with them before we answer
6  the question?
7         **THE COURT:** Sure, why don't you.  You might there a lot
8  tonight, so get in a comfortable corner in the courtroom and I'll
9  let you meet and confer.
10                (Counsel confer)
11        **THE COURT:** What are your thoughts?
12        **MR. ZELLER:** Your Honor, we conferred very collegially
13 and it's hard to see any prospect of a deal on this.
14        **THE COURT:** Concerning some of the pending discovery
15 motions, I think first I'd like to discuss with you the August 10,
16 2010 motions to compel.
17        Mattel has an ex parte application to strike those
18 motions as untimely in light of the Court's August 10, 2010 order
19 that ended the filing of motions to compel.  Yesterday my chambers
20 received MGA's reply brief, which claims that the motions to
21 compel should be granted because Mattel has failed to file a
22 substantive opposition to any of the motions to compel.
23        I'm going to strike MGA's reply brief.  I'm also going
24 to deny Mattel's ex parte request since the order was not filed as
25 of the date in the actual text in the order, which was filed one

Page 6

1 day later. I don't believe that this ambiguity should prejudice
2 or will prejudice MGA who did not learn about the restriction on
3 motions to compel until one day later.
4      But I'd like to hear how long does Mattel require to
5 file its opposition to MGA's motion and how long does MGA require
6 to file its reply?
7      **MR. ZELLER:** Your Honor, I think we can have today's --
8 we can have it on file Friday.
9      **THE COURT:** Friday?
10      **MR. ZELLER:** Yes.
11      **THE COURT:** Let's get a specific date. September 3rd.
12 Is that acceptable from Mattel's perspective?
13      **MR. ZELLER:** Yes.
14      **THE COURT:** And MGA?
15      **MS. HURST:** Your Honor, since Monday is Labor Day, we
16 would ask for Wednesday for the reply.
17      **THE COURT:** Wednesday.
18      **MS. HURST:** I think that's the 8th.
19      **THE COURT:** September 8. I'm going to hold in abeyance
20 Mattel's ex parte application for expedited discovery on MGA's
21 counterclaim and reply. I'll take up that application after
22 resolving whether MGA's counterclaim survive the pleading stage.
23      Next I want to inquire whether counsel are prepared to
24 argue the pending discovery motions. I'm going to hear argument
25 on MGA's objections to paragraph 5 -- let me be courteous.

1              Mattel, are you prepared to argue those?

2              **MR. ZELLER:**  Yes.

3              **THE COURT:**  Okay.  Then I'm going to hear argument on

4  MGA's objections to paragraph 5 of the electronic discovery

5  master's January, 2000 report concerning the Larian hard drives.

6  I have reviewed the active files on Larian's hard drives and I

7  want to make sure whether MGA has complied with its production

8  obligations under the order.

9              So, I'm going to inquire if the parties are satisfied,

10 and if not, what is the dispute.

11             **MR. MCCONVILLE:**  Did you say that was MGA's motion or

12 Mattel's motion?

13             **THE COURT:**  MGA's objections to paragraph 5 of the

14 electronic discovery master's January 10 report.

15             **MS. HURST:**  Your Honor, we're not sure we understand

16 which one the Court is referring to, but I think if it's

17 concerning the Larian hard drive forensic analysis, then our

18 objection on that was that we wanted to provide the forensic

19 analysis spreadsheets generated by Mattel's expert in redacted

20 form redacting out the attorney-client communications.  And we had

21 submitted that in camera to the Court with the proposed redactions

22 where it was on a hard drive, I believe, we submitted to the

23 Court, and it was all highlighted.

24             And, Your Honor, I think we were just waiting for the

25 Court to say whether that was -- those redactions were acceptable

Page 8

1  or not, and then we would turn over the redacted spreadsheets as
2  soon as we had the Court's ruling on that.
3          **THE COURT:** Then at this time I'm going to sustain MGA's
4  objections to the files that the chambers has in its possession.
5  I'll make the record there is nothing there.
6          Next I'm going to hear argument on MGA's objection to
7  the July 19, 2010, R & R from Judge Smith. This relates to the
8  search of MGA's Archive One database that backs up e-mails.
9  Obviously, this is a point of sore contention between the parties.
10 And I know you have attempted several meet and confers with Judge
11 Smith to resolve the issue. My concern is that this is a costly
12 and time-consuming process.
13         I had previously protected Mattel from this sort of
14 discovery when I sustained, in part, the objections to discovery
15 matter order number 89/91. Maybe Mattel can present some solution
16 to me concerning this issue that won't require more than a week of
17 review of the Archive One database, but the reports I have from
18 Judge Smith are that Archive One has proven impenetrable and
19 impossible to manage. Moreover, the discovery being obtained from
20 Archive One is minimal, if that.
21         So, I'm tentatively prepared to sustain MGA's objections
22 and then the Archive One process.
23         But I'd like to hear from you, Mr. Zeller.
24         **MR. ZELLER:** Thank you, Your Honor. What the Court has
25 recited with respect to Judge Smith's understanding or conclusions

Page 9

1  are somewhat at odds with what I had understood, including recent
2  sessions we had with Judge Smith.  There certainly have been
3  challenges in terms of trying to search the Archive One database,
4  but we had been working with ILS, both Judge Smith -- and this is
5  both parties -- in order to try and manage those searches.  I am
6  concerned to the extent that this gets turned into an
7  all-or-nothing proposition.
8           Starting at the beginning, or somewhat at the beginning
9  on this subject is that this is a database that -- it's e-mails.
10 It is intended to be searched.  That is its purpose.  MGA actually
11 automatically kicks everything -- anyone who has these accounts,
12 it gets kicked automatically after 90 days into that archive.  So
13 it's literally -- if this is deemed inaccessible, this would mean
14 essentially that MGA has made inaccessible e-mails older than 90
15 days continuously throughout this lawsuit, which simply cannot be
16 an acceptable result in these circumstances.
17          The second proposition I would point out is that it's
18 not really beyond dispute, is that Archive One has not been
19 searched properly by MGA.  These are e-mails and there is no
20 question that they contain e-mails that should have been produced
21 to Mattel years ago in some instances.
22          We still to this day -- I'll give an example of this, a
23 very important example -- only have fragments of certain e-mails.
24 And the Court has seen these undoubtedly where you get the first
25 few lines of text, then it basically has a link to go into Archive

1  One to retrieve the entire e-mail.  MGA has been making, of
2  course, a great show, both publicly and in this courtroom, about
3  Salvia Señor and his activities.
4       MGA has produced, however, e-mail showing that MGA
5  attempted to hire Mr. Salvia Señor even after they knew full well
6  what activities he was engaged in.  However, we have not been --
7  we have been hindered being from able to ask Mr. Larian and other
8  witnesses about this because all we have are fragments of those
9  e-mails.  We have asked for them to be produced.  They have not
10 been produced.  This is one of a legion of examples --
11      **THE COURT:**  Thank you.
12      **MR. ZELLER:**  -- that I could provide.
13      **THE COURT:**  Now, let me ask MGA.  Do you have the
14 ability to unlock this archive?  And that's a broad phrase, but
15 these are being kicked over into Archive One.  I don't understand
16 why you wouldn't have the ability to retrieve these.
17      **MS. HURST:**  First of all, let me correct something that
18 Mr. Zeller said.
19      **THE COURT:**  Answer my question now.
20      **MS. HURST:**  Okay, Your Honor, the database does not
21 perform in accordance with the specifications.
22      **THE COURT:**  Just a moment.  Mind if I call Judge Smith?
23      **MS. HURST:**  No, Your Honor.
24      **MR. ZELLER:**  No, Your Honor.
25           (Brief pause in proceedings.)

Page 11

1      **THE COURT:** Back on the record.

2      The Court has called Judge Smith who is the special

3 master.  He is awake and alert as usual.  And he has a statement

4 to make to you about Archive One so you heard the same information

5 I'm hearing.

6      You are on.

7      **JUDGE SMITH:** Okay.  I'm sorry.  I didn't catch the cue.

8 My apologies.

9      The Archive One search is, I believe, about 30 to

10 50 percent -- is Mr. Warrington there by any chance?

11     **THE COURT:** No.  I have got lead counsel.  They're the

12 only ones allowed to make an appearance.

13     **JUDGE SMITH:** The reason I ask if Mr. Warrington is

14 there because Ms. Barry from ILS was going to contact

15 Mr. Warrington with regard to logistical issues, not in regard to

16 anything on the merits.  I was going to contact him in that

17 regard.

18     Here is my response to the Court's question.  I believe

19 that the search is approximately 30 to 50 percent.  It's not

20 50 percent but it's over 25 percent done.  And I can get you a

21 definitive answer on that probably in another 30, 40 minutes.

22 I'll have to call ILS and get a more accurate answer.

23     The issue now that we're working on -- not the issue,

24 but it's a logistical issue is the processing of the documents

25 that have been recovered for privilege review by MGA.  And the

1 question is -- and this is what Ms. Barry was going to be talking
2 about Mr. Warrington about to see what his thoughts were and then
3 she would be talking to somebody from Mattel also to get their
4 input before we did anything, but the question now is how we're
5 going to process the privilege review on the documents that have
6 been produced.
7       The thought is that we should start on the privilege
8 review of the portion that's already been retrieved before and not
9 wait until we have completed the full retrieval from Archive One.
10 That doesn't make sense. We've got a substantial amount of a
11 number of documents that -- a substantial amount of data that's
12 been recovered, and we should start the privilege review on that.
13       So it's just the logistical issue as to how we're going
14 to do that.
15       The other part of the question was the anticipated
16 completion date on Archive One. I indicated to the Court before
17 you put me on the speakerphone, Your Honor, that I thought it
18 would probably be about 10 days. I can get you an accurate -- a
19 more accurate estimate of that also inside the hour.
20       **THE COURT:** Yes. Let me do this. You don't have to do
21 it within the hour. They'll be here whenever you call.
22       **JUDGE SMITH:** Well, it's easier to do it within the hour
23 than take a chance on forgetting it if I try and do it later.
24 That's the function of my mental processes.
25       So let me get on that and get back to you ASAP. It

Page 13

1  should be within the hour.
2      **THE COURT:** So what I'm hearing, in summary, is that if
3  we're correct, that it's approximately 10 days or 15 days; that
4  the real --
5      **JUDGE SMITH:** That's the retrieval and then we have the
6  privilege review process.
7      **THE COURT:** Exactly. From my standpoint, 10 to 15 days
8  is an acceptable period of time. But then it falls upon the
9  parties to help the Court in that retrieval process. This is
10 where the consumption of time could really take place.
11     So why don't you get back to me, Jim, with just the best
12 guesstimate in some range. I'm not looking for 10, 11 days. But
13 I had a conversation with you, what, two nights ago?
14     **JUDGE SMITH:** Yes.
15     **THE COURT:** And I couldn't remember the percentage,
16 quite frankly. I don't know if there is a de minimis amount of
17 information coming out of this and a huge expenditure, or if there
18 is true value yet.
19     So the other thing is I want to support you, but time is
20 going to be of the essence. I think that discovery is rapidly
21 closing down, but the parties shouldn't profit by disobeyance or
22 reluctance. So we can't resolve those concerns on my part right
23 now. Why don't I talk to you in an hour or two hours.
24     **JUDGE SMITH:** I'll call back as soon as I get the
25 information. If it's not convenient, let me know. I'm going to

1   be home all evening.  I'm working on another motion in another
2   case at home this evening.  So I'll look forward to the
3   opportunity to break away from that to respond to anything you
4   folks need there.
5            **THE COURT:**  Now hold on.  Ms. Hurst has something she
6   wanted to say.  It should be relevant and short.
7            **MS. HURST:**  Your Honor, there is a difference between
8   extracting the data and running the search terms on it.  And
9   Mattel had proposed in excess of 700 search terms.  And it's not
10  clear to me from what Judge Smith is saying, whether he is simply
11  talking about extraction of the data irrespective of the 700-some
12  search terms, or whether those have already been applied.  And it
13  would be, of course, highly relevant to know what is left after
14  application of more than 700 search terms.
15           **THE COURT:**  Jim, did you --
16           **JUDGE SMITH:**  I heard -- pardon me for interrupting -- I
17  think I heard enough of the comment that I will be able to address
18  that issue also.
19           **THE COURT:**  Okay.  Jim, thanks a lot.  Sure appreciate
20  it.
21           **JUDGE SMITH:**  My pleasure.  Have a good evening, folks.
22           **THE COURT:**  You'll be up to 1:00 o'clock as usual?
23           **JUDGE SMITH:**  Yeah.  I work slower than other people.
24  It takes me longer.
25           **THE COURT:**  But it's brilliant work and always accurate.

1   Bye-bye.
2          Next, Mattel's objection to discovery matter order
3   number 87 are overruled.  That's a final ruling by the Court.
4          Next, I'm going to hear argument on Mattel's motion to
5   compel documents withheld on common interest grounds relating to
6   Omni.
7          Tentatively it appears that in the furtherance of prong
8   of the common interest privilege analysis isn't satisfied here.
9   Should I or the discovery master O'Brien perform an in-camera
10  review and how many documents are we talking about?
11         **MR. MCCONVILLE:** Your Honor, if it wasn't clear in our
12  papers, we haven't withheld any documents on the basis of a common
13  interest privilege as described in our papers.
14         **THE COURT:** Thank you.
15         Counsel?
16         **MR. ZELLER:** Obviously we don't know what the quantity
17  is.  The representation is, is that nothing is being withheld.
18  I'm not really sure that that's consistent with what we had
19  understood prior to today for reasons that I won't belabor.  But
20  if the current representation is unequivocally nothing is being
21  withheld, that was a communication with Omni based on this common
22  interest privilege, then there may not be anything to rule on at
23  this moment.  Obviously the volume of documents to review would be
24  zero.
25         **THE COURT:** If you have that representation, that closes

Page 16

1  the door.  That's the end of the discussion.

2          So let's get that representation one more time.  That's
3  the representation.

4          **MR. ZELLER:**  We had understood that from some other
5  sources, specifically with respect to Omni itself had said that,
6  but I had not understood previously that was MGA's representation.

7          **THE COURT:**  Let's find out and just short-circuit and
8  save a lot of time.

9          Counsel, your representation; state it once again so I'm
10 absolutely certain.

11         **MR. MCCONVILLE:**  Yes, sir.  MGA is not withholding any
12 document between the --

13         **THE COURT:**  Slower.  In fact, why don't you either go to
14 the lectern or sit down.  And that's more than permissible and
15 just use the microphone.

16         **MR. MCCONVILLE:**  MGA is not withholding any documents
17 between the principles of MGA and Omni 808 on the basis of common
18 interest and never told Mattel it was.

19         **THE COURT:**  Just a moment.  Does that include attorney
20 communications between MGA and Omni?

21         **MR. MCCONVILLE:**  That wouldn't be --

22         **THE COURT:**  Does that include -- you heard my question.
23 Is it just a yes or no?

24         **MR. MCCONVILLE:**  I'm sorry.  Could you repeat the
25 question?

1     **THE COURT:** Does that include attorney communications
2  between MGA and Omni, yes or no? There is nothing unclear about
3  my question now. Sit down and talk to your co-counsel here and
4  make sure you have your answer here. I'm all done with 20-
5  sentence answers to simple questions.
6     **MR. MCCONVILLE:** No.
7     **THE COURT:** The answer is no. I'm going to give Mattel
8  an opportunity to make their argument now, then.
9     **MR. ZELLER:** I apologize, Your Honor. Could you repeat
10 that?
11    **THE COURT:** This is your opportunity to make your
12 argument.
13    **MR. ZELLER:** I just couldn't hear you.
14    **THE COURT:** My apologies. I thought you were not paying
15 attention.
16    **MR. ZELLER:** Being in that end of the table makes it a
17 little difficult sometimes.
18    **THE COURT:** Why don't you come closer. You sit down
19 here from now on. Thank you.
20    **MR. ZELLER:** I think there is at least potentially still
21 an issue here on the table, which is the representations so far
22 are nothing is being withheld between the principles of Omni and
23 MGA, and nothing is being withheld between the attorneys, but that
24 then still leaves --
25    **MS. HURST:** That's not what -- this was the --

Page 18

1     **THE COURT:** Did you notice you were interrupting?

2     **MS. HURST:** I apologize, Your Honor.

3     **THE COURT:** Don't do that again.

4          I'm sorry.  Please continue.

5     **MR. ZELLER:** The only concern I have at this juncture
6  would be if there is other persons, agents, employees, executives,
7  whoever, acting on behalf of those entities where those
8  communications are being withheld.  I do think that would
9  potentially simply moot this issue for now.  We obviously don't
10 agree that a common interest as a blanket matter would be
11 appropriate in these circumstances and do think the appropriate
12 measure would be an in-camera review, if we ever get to that
13 point.

14         But again, if there is nothing at all between Omni on
15 the one hand and any of its agents and attorneys being withheld
16 that's communication with any of MGA's agents and so on, then I
17 think we can simply --

18    **THE COURT:** Thank you.  Now uninterrupted by Mattel once
19 again, is a response to his request about agents.

20    **MR. MCCONVILLE:** Yes, Your Honor.  The difficulty with
21 the way that was characterized is we, the Orrick firm, is an agent
22 of Omni, and Mr. Gordinier's firm is an agent of -- I'm sorry.  We
23 are an agent of MGA and they are agents of Omni 808.

24         So I can't make the representation that those documents
25 have not been withheld because there are communications between

Page 19

1   the Omni 808's counsel, outside counsel, and MGA's outside
2   counsel.
3           **THE COURT:** Between Omni 808 and?
4           **MR. MCCONVILLE:** Omni 808's outside counsel, litigation
5   counsel, and MGA's outside litigation counsel, which I don't know
6   would be called for any request anyhow.
7           **THE COURT:** The motion to compel concerning the Marlows,
8   MGA represented that it has supplemented its production.  Why did
9   MGA's production need to be supplemented in the first place?  Why
10  wasn't it already complete?
11  (Whereupon there was a change in reporters and Jane Sutton-Rule
12  reported the following proceedings.)
13
14
15
16
17
18
19
20
21
22
23
24
25

```
                                                           Page 20
 1
 2                             -oOo-
 3
 4                           CERTIFICATE
 5
 6        I hereby certify that pursuant to Section 753, Title 28,
 7   United States Code, the foregoing is a true and correct transcript
 8   of the stenographically reported proceedings held in the
 9   above-entitled matter.
10
11   Date:  September 2, 2010
12
13   _____
14   MARIA DELLANEVE, U.S. COURT REPORTER
     CSR NO. 9132
15
```