1  JENNIFER L.  KELLER (SBN84412)
   keller@krlawllp.com
2  KAY RACKAUCKAS (SBN143480)
   krack@krlawllp.com
3  ALLISON SHALINSKY(SBN186975)
   shalinsky@ krlawllp.com
4  KELLER RACKAUCKAS LLP
   18500 Von Karman Avenue, Suite 560
5  Irvine, CA 92612
6  Telephone:   (949) 476-8700
   Facsimile:    (949) 476-0900
7

8  Attorneys for MGA Parties

9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12                    SOUTHERN DIVISION

13

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>         v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                    Defendant.<br><br>AND CONSOLIDATED ACTIONS. | Case No. CV 04-9049 DOC (RNBx)<br><br>Consolidated with Case No. CV 04-9059 and Case No. CV 05-2727<br><br>**MGA PARTIES' MOTION FOR LEAVE TO AMEND COMPLAINT** *NUNC PRO TUNC*<br><br>Hearing Date: April 1, 2013<br>Time:   8:30 a.m.<br>Judge:  Hon. David O. Carter |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................... 1

BACKGROUND ......................................................................................... 3

ARGUMENT .............................................................................................. 7

I.  THE NINTH CIRCUIT'S DISMISSAL WITHOUT PREJUDICE PERMITS RE-LITIGATION OF THIS CLAIM .......... 7

II.  THIS COURT SHOULD GRANT MGA LEAVE TO  FILE AN AMENDED COMPLAINT *NUNC PRO TUNC* ................................. 8

   A.  Accepting MGA's Amendment *Nunc Pro Tunc* Is Warranted Here.............................................................................. 8

   B.  This Court Should Grant MGA Leave to File An Amended Complaint.......................................................... 10

   C.  A Limited Retrial to Determine Timeliness Only Would Satisfy Interests of Efficiency and Judicial Economy ............. 13

CONCLUSION ......................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(S):**

*American Tower Corp. v. City of San Diego,*
    No. 07cv0399 LAB (NLS), 2007 WL 2815183 (S.D. Cal. Sept. 25, 2007) ........9

*Anthony v. Cambra,*
    236 F.3d 568 (9th Cir. 2000) ...............................................................................9

*Carvalho v. Raybestos-Manhattan, Inc.,*
    794 F.2d 454 (9th Cir. 1986) .............................................................................13

*Cenco Inc. v. Seidman&Seidman,*
    686 F.2d 449 (7th Cir. 1982) ...............................................................................8

*Davis & Cox v. Summa Corp.,*
    751 F.2d 1507 (9th Cir. 1985) .............................................................................7

*DCD Programs Ltd. v. Leighton,*
    833 F.2d 183 (9th Cir. 1987) .............................................................................10

*F.D.I.C. v. Jackson-Shaw Partners No. 46, Ltd.,*
    850 F. Supp. 839 (N.D. Cal. 1994)....................................................................10

*Galdamez v. Potter,*
    415 F.3d 1015 (9th Cir. 2005) ...........................................................................13

*Gasoline Products Co. v. Champlin Refining Co.,*
    283 U.S. 494 (1931)...........................................................................................13

*Hasbrouck v. Texaco, Inc.,*
    663 F.2d 930 (9th Cir. 1981) .............................................................................13

*Hung Viet Vu v. Kirkland,*
    363 F. App'x 439 (9th Cir. 2010), *aff'd,* 460 Fed. App'x 713 (9 th Cir. 2011), *cert. denied,* 132 S.Ct. 1897 (2012) ...........................................................9

*Johnson v. Mammoth Recreations, Inc.,*
    975 F.2d 604 (9th Cir. 1992) .............................................................................11

*Lies v. Farrell Lines, Inc.,*
    641 F.2d 765 (9th Cir. 1981) .............................................................................13

*Mattel, Inc. v. MGA Entertainment, Inc.,*
    No. 11-56357, 2013 WL 264645 (9th Cir. Jan. 24, 2013) ..............................6, 7

*McSherry v. City of Long Beach,*
    423 F.3d 1015 (9th Cir. 2005) ...........................................................................14

*Oscar v. Alaska Department of Education & Early Development,*
    541 F.3d 978 (9th Cir. 2008) ...............................................................................8

*Salazar v. City of Chicago,*
    940 F.2d 223 (7th Cir. 1991) ...............................................................................8

*Satey v. JPMorgan Chase & Co.*,
    521 F.3d 1087 (9th Cir. 2008) ................................................................8

*United States v. Allen*,
    153 F.3d 1037 (9th Cir.1998) ................................................................9

*In re Vantive Corp. Securities Litigation*,
    110 F. Supp. 2d 1209 (N.D. Cal. 2000) ................................................9

**STATUTES**

28 U.S.C. § 1367(a) ..................................................................................8

Cal. Civ. Code § 3426 .........................................................................3, 12

**MISCELLANEOUS**

11 Charles Alan Wright, et al., FEDERAL PRACTICE & PROCEDURE § 2814 (3d.
    ed. 2012) ................................................................................................13

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on April 1, 2013, at 8:30 a.m., or on a date deemed appropriate by the above-entitled Court, located at the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, California, 92701, in the courtroom of the Honorable David O. Carter, MGA Entertainment, Inc., MGA Entertainment (HK), Ltd., MGA de Mexico, S.R.L. de C.V., and Isaac Larian (collectively, "MGA," or the "MGA parties"), will and hereby do move the Court for an order granting MGA's original motion for leave to amend *nunc pro tunc* and deeming MGA's trade secret claim filed as of August 16, 2010, the date it originally sought leave to amend.

This motion is brought on the following grounds:

1.    MGA originally asserted its trade secret claim as a compulsory counterclaim-in-reply and, alternatively, sought leave to amend its Complaint to add the claim permissively.  This Court initially determined that MGA's trade secret claim was a compulsory counterclaim-in-reply, and, while agreeing that it would grant leave to amend if required, found the issue of leave to amend to be moot and so struck MGA's motion as moot without granting it.

2.    The Ninth Circuit has now ruled that the trade secrets claim is not a compulsory counterclaim-in-reply, and directed the dismissal without prejudice of the counterclaim-in-reply.

3.    Allowing a *nunc pro tunc* amendment will appropriately place MGA's claim in the position it would have occupied had the leave to amend been granted in the first instance.  Moreover, as this Court previously determined, all of the factors in favor of granting leave to amend are satisfied and the granting of MGA's motion *nunc pro tunc* is essentially a ministerial act insofar as the Court effectively ruled on the motion at the time it was originally filed; the only reason it did not formally grant

1 the motion was due to its finding that the claim was a compulsory counterclaim-in-

2 reply.

3       This motion is based on this Notice of Motion and Motion, the Memorandum

4 of Points and Authorities filed herewith, the declaration of Jennifer L. Keller

5 ("Keller Declaration"), the records and files of this Court, and upon such other

6 matters as may be presented to the Court at the time of the hearing.

7       This motion is made pursuant to this Court's minute order of February 27,

8 2013, relieving MGA from compliance with Local Rule 7-3's "meet and confer"

9 requirement and permitting MGA to file its motion immediately.   MGA has

10 complied with the 28-day notice rule in setting a hearing date, but asks the Court for

11 an expedited hearing owing to the urgency presented by the instant issues (and, in

12 particular, the statute of limitations issue).

13

14 Dated: February 27, 2013        KELLER RACKAUCKAS LLP

15                         By:  /s/ Jennifer L. Keller

16                               Jennifer L. Keller
                            Attorney for MGA Parties

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

Before trial, MGA asserted trade secret misappropriation claims against Mattel in the form of compulsory counterclaims-in-reply and, in the alternative, sought leave to amend its Complaint to add the claims permissively. (*See* Dkt. 8747 at 14-19.) This Court determined that the proposed trade secret claims were compulsory counterclaims-in-reply. The Court also agreed with MGA that, although leave to amend was not required, if leave were required, it would be granted.  The Court reasoned that MGA had acted diligently and in good faith in pursuing the claims and that Mattel would suffer no prejudice if leave were granted. (*See* Dkt. No. 8892 at 8-10.)  Nevertheless, the Court found the issue of leave to amend to be moot in light of its holding that the claims were compulsory counterclaims-in-reply.  (*Id.* at 21.) Accordingly, although the Court found leave would be appropriately granted if required, a final decision was not entered on the issue, despite the fact that the Court made all the requisite findings to support such a decision.

Now, the Court of Appeals has ruled that the trade secret claims are not compulsory counterclaims-in-reply, and directed that they be dismissed without prejudice (to the extent they are styled as counterclaims-in-reply).  *Mattel, Inc. v. MGAEntm't, Inc.*, 11-56357, 2013 WL 264645, at *2 (9th Cir. Jan. 24, 2013). Accordingly, the Ninth Circuit's decision has again put at issue the propriety of granting MGA leave to amend its Complaint permissively.  As this Court has already determined, leave to amend should have been granted in 2010 if leave to amend was required:  Mattel would suffer no prejudice from such an amendment, and MGA has diligently pursued the information supporting its claim – despite Mattel's best efforts to conceal that information.  For the same reason, the statute of limitations did not begin to run until Mattel's fraudulent concealment finally ended, which occurred shortly before MGA filed its original request for leave to add the claim.  Indeed, in reliance on the Court's prior orders, the parties endured a multi-month trial, resulting in a verdict for MGA on its trade secret claim.

1    Under these circumstances, this Court should grant MGA's original motion for
2  leave to amend *nunc pro tunc* and deem MGA's trade secret claim filed as of the
3  date it originally sought leave to amend, *i.e.*, August 16, 2010.  This *nunc pro tunc*
4  amendment is necessary and appropriate to place MGA's claim on the same footing
5  it would have occupied had leave to amend been granted originally – as it would
6  have been, absent the Court's (now-void) ruling that the trade secret claims were
7  compulsory counterclaims-in-reply.

8    The only issue this Court did not expressly resolve on that motion – whether
9  the trade secret claims were untimely as a matter of law – was resolved against
10 Mattel by the Ninth Circuit when it declined Mattel's request to find the trade secret
11 claims were time-barred from the face of the pleadings.  (Case No. 11-56357, Dkt.
12 No. 24 (Mattel App. Br.) at 25, 29, 59 and Ex. A (Oral Argument Transcript) at 3:18-
13 4:3, 20:5-9, 28:24-29:3.)[1]  Indeed, the Ninth Circuit repeatedly expressed the view
14 during argument that the timeliness of the trade secret claim was one for a jury and,
15 accordingly, dismissed the trade secret claims styled as a compulsory counterclaims-
16 in-reply without prejudice to allow them to be refiled.  (*Id.* at 18:23-19:1, 19:20-25.)
17 Accordingly, *all* of the factors for granting leave to amend *nunc pro tunc* have been
18 satisfied and no prejudice or unfairness results in doing so.

19    Granting *nunc pro tunc* amendment fully complies with the Ninth Circuit's
20 mandate and would facilitate a limited retrial focused only on the statute-of-
21 limitations issue, again, fully consistent with the expressed views of the Panel during
22 oral argument.  Granting *nunc pro tunc* amendment would obviate the need for
23 another trial on the issues already determined against Mattel by a competent jury,
24 sparing the parties and the overburdened courts time and resources.  If the timeliness
25 issue is resolved in MGA's favor by a jury, MGA will move to reinstate the first

26

27 [1] All internal citations and quotations are omitted and emphasis is added unless
   otherwise noted.   All "Ex." references are to exhibits to the concurrently filed
28 Declaration of Jennifer L. Keller.

1  jury's verdict against Mattel on the issues of trade secrets liability and damages, so

2  that the resources and effort of this Court and the first jury for the better part of 2011

3  will not be in vain.

4                                   **BACKGROUND**

5            After Sal Villasenor finally came clean in his July 22, 2010 deposition about

6  the wrongdoings of the Mattel Market Intelligence Department, and Mattel and its

7  counsel finally stopped concealing and started producing the documents it had been

8  ordered to produce years before, MGA amended its own pleading on August 16,

9  2010, to include a counterclaim-in-reply under the California Uniform Trade Secrets

10 Act, Cal. Civ. Code § 3426 *et seq.*, based on Mattel's misappropriation of MGA's

11 trade secrets.  (Dkt. No. 8583.)  Mattel moved to strike or dismiss this claim based

12 on the statute of limitations, arguing that the events at issue had occurred more than

13 three years earlier.  (Dkt. No. 8703.)

14           To support the timeliness of its trade secrets claim, MGA argued that its claim

15 was properly considered a compulsory counterclaim-in-reply to Mattel's own

16 counterclaim.  Accordingly, MGA's counterclaim-in-reply related back to the filing

17 of Mattel's counterclaim.  (Dkt. No. 8747 at 11-14.)  In the alternative, MGA sought

18 leave to amend its original Complaint to add the trade secrets claim, arguing that the

19 claim was timely based on Mattel's fraudulent concealment.  (*Id.* at 14-19, 25-28.)

20           That Mattel fraudulently concealed its wrongdoing to prevent MGA from

21 timely filing a trade secret claim has already been determined by this Court and

22 could not credibly be disputed by Mattel.  The record is rife with examples, such as:

23    • Literally thousands of pages of documents reflecting Mattel's concerted
24      campaign of espionage directed at MGA and its competitors were
         requested by MGA no later than the end of 2006, were compelled by the
25      Court in 2007, and yet were not produced by Mattel and its attorneys until
         the summer of 2010.  (Dkt. Nos. 989, 7396, 7523, 3/9/2010 Tr. at 7.)
26
27    • In 2006, Mattel offered a generous severance agreement to Market
28      Intelligence department whistleblower Sal Villasenor, which specifically
         outlawed disclosure of information to "counsel for any party threatening or

                                            3

asserting claims against" Mattel, in return for hundreds of thousands of dollars. (TX 9266; 3/29/11 (Vol. 2) Tr. 60:18-62:19; 3/23/11 (Vol. 1) Tr. 33:14-34:1, 37:24-38:8.)  Mattel counsel Robert Normile testified that the MGA lawsuit was "almost certainly the largest" litigation pending against Mattel at that time. (3/29/11 (Vol. 2) Tr. 62:13-19.)

- Mattel executives denied any knowledge of Villasenor or his department's activities in discovery, but at trial the evidence revealed that this activity was both known and actively encouraged by those at the highest level of Mattel. (3/22/2011 Tr. (Vol. 1) 58:5-14; 3/22/2011 Tr. (Vol. 2) 57:6-10, 61:19-66:11, 73:4-74:9, 105:6-21, 122:19-123:8; 3/30/2011 Tr. (Vol. 2) 89:18-91:20.)

- Mattel neither identified Villasenor on any Rule 26 statement nor produced documents showing that he or other Mattel employees had systematically spied on Mattel's competitors, including MGA, until just days before Villasenor's deposition in July 2010.

- Thirty-five boxes of documents were carted out of Villasenor's office/the Market Intelligence Library and taken to counsel unconnected to this case; they did not re-surface until nearly the end of trial. (4/4/11 Tr. (Vol. 2) 26:19-28:14.)  Thus, Mattel's CEO was able to testify at trial that he had examined the Market Intelligence library and describe it to the jury as "a storage closet" bereft of any competitors' trade secrets. (4/1/2011 Tr. (Vol. 1) 132:19-133:10.)

Indeed, this Court recognized as much in denying Mattel's laches defense, finding that "MGAE's 'delay' in bringing suit was not unreasonable" because "[n]umerous Mattel witnesses, including those with direct knowledge of the conduct giving rise to MGAE's claim, disclaimed knowledge at depositions conducted in 2008 and 2009" and "[t]hough MGAE may have suspected that Mattel gathered competitive information—an entirely innocuous fact—it lacked any real knowledge about the extent of Mattel's market intelligence activities, the methods used by the market intelligence group, and Mattel's unjust enrichment." (Dkt No. 10700 at 8.)

On October 5, 2010, this Court found MGA's trade secret counterclaims-in-reply to be compulsory. (Dkt. No. 8892 at 4-7.)  But the Court also concluded that "[e]ven if leave to amend were required, it would be granted." (*Id.* at 10.)  The Court found that MGA easily satisfied the four-factor test used to determine whether to grant leave to amend, emphasizing that Mattel would "suffer little prejudice through

1 the addition of these counterclaims in reply, which involve allegations that are

2 relevant to MGA's existing unclean hands defense, ***about which MGA has sought***

3 ***discovery for months***." (*Id.*)[2] The Court also noted that "[a]ny remaining prejudice

4 [could] be minimized by a one month extension to the discovery cut off for the

5 limited purpose of conducting discovery into these claims," and that "MGA ha[d]

6 shown neither bad faith nor undue delay in filing [its] counterclaims in reply." (*Id.*)

7 In light of its ruling that MGA's claims were compulsory, however, the Court struck

8 as moot MGA's motion for leave to amend. (*Id.* at 21.)

9       In the spring of 2011, a jury heard MGA's trade secret claims as part of an

10 extensive, three-month long trial.  The jury heard from 65 witnesses and saw 1418

11 exhibits.  After all that time and effort by the parties, the Court, and the jury itself,

12 the jury found that Mattel had willfully and maliciously misappropriated MGA's

13 trade secrets. (Dkt. 10518 at 27.)  Because the Court had ruled that the claims related

14 back to the filing of Mattel's trade secrets claim in November 2006, the Court asked

15 the jury whether MGA "discover[ed], or should . . . have discovered through the

16 exercise of reasonable diligence" Mattel's misappropriation before November 2003.

17 The jury answered "No." (*Id.*)  In light of the Court's compulsory counterclaims-in-

18 reply ruling, the jury did *not* decide whether Mattel had fraudulently concealed the

19 trade secrets theft until the summer of 2010 (or until a period within three years

20 before MGA's filing on August 16, 2010).  Thus, the timeliness of MGA's claim is

21 as yet undecided – but only as to what MGA knew between November 2003 and

22 August 2010.

23       On January 24, 2013, the Ninth Circuit issued an opinion finding that MGA's

24 counterclaim-in-reply was not compulsory because "MGA's claim did not rest on the

25 same 'aggregate core of facts' as Mattel's claim" and thus "… we vacate the verdict

26

27 ───────────────
[2] Significantly, at trial Mattel's counsel expressly acknowledged that Mattel never
voluntarily produces anything—all discovery of Mattel must be conducted by court
28 order. (*See* 4/1/2011 Tr. (Vol. 2) 43-49.)

1   along with the related damages, fees and costs" and "[o]n remand, the district court

2   shall dismiss MGA's trade-secret claim without prejudice."*Mattel, Inc.*, 2013 WL

3   264645, at *2. On February 19, 2013, it issued its mandate to this Court to dismiss

4   the trade secret claim ***without prejudice***.  (Case No. 11-56357, Dkt. No. 62.)

5         In its appeal, Mattel argued that MGA's trade secret claim was not a

6   compulsory counterclaim-in-reply to Mattel's trade secrets counterclaim, and

7   demanded it be dismissed as time-barred. Specifically, Mattel argued that MGA's

8   claim filed on August 16, 2010 was untimely because "MGA had reason to suspect

9   injury from Mattel's toy-fair conduct more than three years earlier—indeed, no later

10  than 2004" and "[a]ccordingly, judgment should be entered for Mattel on MGA's

11  trade-secret counterclaim."  (Case No. 11-56357, Dkt. No. 24 (Mattel App. Br.) at

12  25, 29, 59.)

13        The Ninth Circuit implicitly rejected Mattel's request to find MGA's trade

14  secret claims time-barred as a matter of law. Its opinion makes no mention of the

15  timeliness of the claim.  This silence is unsurprising, since at oral argument Judge

16  Kozinski repeatedly emphasized that the determination of whether MGA'strade

17  secret claim is time-barred should have beenthe province of the jury.  (Ex. A (Oral

18  Argument Transcript) at 18:23-19:1,19:20-25; 75:20-22.) Moreover, the mandate of

19  the Ninth Circuit was to dismiss the trade secret claims *without prejudice* precisely

20  so that the MGA Parties could refile it.  (*See id.* at 72:23-73:8.)  Had the Ninth

21  Circuit concluded that the trade secret claims were untimely, it could (and would)

22  have simply made that finding as Mattel requested it to do.  (Ex. A (Oral Argument

23  Transcript) at 20:5-9, 28:24-29:3 ("You should reverse, it's *de novo*, and the case

24  should be over and you should order it dismissed [with prejudice].").)

25        During the argument, Mattel itself conceded that this Court was prepared to

26  allow the trade secret claim to proceed in an alternative fashion, namely by allowing

27  MGA to permissively amend its initial complaint.  (*Id.* at 28:18-22, 29:4-12 ("[Judge

28  Carter's] alternative was, "Well, you can go back and amend – you and MGA can go

1  back and amend your pleading, your complaint against Mattel," which was filed in –

2  in August – sorry; on April 13, 2005.").) Mattel incorrectly represented to the Ninth

3  Circuit that, "Now, you notice, they didn't do that. Why didn't they do that? They're

4  time-barred." (*Id.* at 29:10-12.) In fact, the MGA Parties did precisely that; they

5  filed an alternative motion for leave to amend their initial complaint before this

6  Court at the same time as the compulsory counterclaim issue was raised and argued,

7  just as the Ninth Circuit urged them to do, that the trade secret claim would have

8  been timely under the discovery rule due to Mattel's discovery deceptions and

9  abuses. (Dkt. No. 8747 at 14-17.)

10      In view of the Ninth Circuit's ruling, MGA now seeks to amend its complaint

11  *nunc pro tunc* so this Court may conduct a brief trial limited solely to the issue of the

12  timeliness of MGA's trade secret claims.

13  <u>**ARGUMENT**</u>

14  **THE NINTH CIRCUIT'S DISMISSAL WITHOUT**
15  <u>**PREJUDICE PERMITS RE-LITIGATION OF THIS CLAIM**</u>

16      The Ninth Circuit concluded that MGA's counterclaim-in-reply was not

17  compulsory. *Mattel*, 2013 WL 264645, at *2. As the case the Ninth Circuit cited for

18  that conclusion makes clear, the remedy for finding a counterclaim-in-reply is not

19  compulsory is dismissal without prejudice. *Id.*, citing *Davis & Cox v. Summa Corp*,

20  751 F.2d 1507, 1525 (9th Cir. 1985) (acknowledging that the parties whose

21  counterclaims-in-reply had been dismissed by the district court as permissive rather

22  than compulsory "could have moved for leave to amend their complaint."). Here,

23  unlike in *Davis*, MGA *did* move to amend its complaint. Thus, while the trade secret

24  claims have been determined not to be compulsory counterclaims-in-reply, there is

25  nothing in the Ninth Circuit's decision or mandate that precludes re-filing the claims

26  permissively as an amendment to MGA's original complaint.

27      As a preliminary matter, the Ninth Circuit's mandate requiring this Court to

28  dismiss MGA's trade secret claim without prejudice does not foreclose this Court

1   from granting MGA's motion for leave to amend and deciding the issue of

2   timeliness.  A dismissal without prejudice by definition allows a party to re-file an

3   action in this Court. *Oscar v. Alaska Dep't of Educ. & Early Dev.*, 541 F.3d 978,

4   981-82 (9th Cir. 2008) (involuntary dismissal without prejudice "does not alter the

5   legal relationship of the parties because the defendant remains subject to the risk of

6   re-filing").  If the Ninth Circuit wished to preclude MGA from pursuing further relief

7   in this Court, it could have dismissed the case with prejudice.  But it did not do so,

8   despite Mattel's express request for such relief.  (*Supra*.)  Instead, the Ninth Circuit

9   returned the matter to this Court ***without*** prejudice to MGA's re-filing its trade secret

10  claims and seeking this Court's determination on the issue of timeliness of those

11  claims.[3]

12  **THIS COURT SHOULD GRANT MGA LEAVE TO**
13  **FILE AN AMENDED COMPLAINT *NUNC PRO TUNC***

14  **Accepting MGA's Amendment *Nunc Pro Tunc* Is Warranted Here**

15  "*Nunc pro tunc* signifies now for then, or in other words, a thing is done now,

16  which shall have the same legal force and effect as if done at [the] time when it

_____

17  [3]      Mattel will no doubt argue that this Court lacks jurisdiction to hear this claim
18  in light of Mattel's failure to appeal the jury's rejection of its federal copyright
    infringement claims.  But this Court can exercise supplemental jurisdiction over
19  MGA's trade secrets claim even after the federal claims have been tried to verdict
    and are no longer in the case, for reasons of efficiency and economization of
20  resources.  *See* 28 U.S.C. § 1367(a);  *Satey v. JPMorgan Chase & Co.*, 521 F.3d
    1087, 1091 (9th Cir. 2008) (district court did not abuse discretion in "retaining
21  supplemental jurisdiction over the remaining state law claim in light of Satey's stated
    intention to dismiss the remaining federal claims" where "[j]udicial economy and
22  convenience to the parties were better accommodated by retaining the state law
    claim at that juncture"); *Salazar v. City of Chicago*, 940 F.2d 233, 243 (7th Cir.
23  1991) ("Where, as here, the federal and state law claims have already been tried, and
    a state claim remains for retrial, the district court in its discretion may decide to
24  retain jurisdiction over the state law claim. In this case, judicial economy supported
    retaining jurisdiction over the plaintiff's state law claims.  The claims had already
25  been tried once, discovery had been done, and the district court judge was familiar
    with the case and the disputes that would likely arise at trial.  It would have made
26  little sense to make the parties start the case over in a new court before a new judge
    who would have to learn the case from scratch."); *Cenco Inc. v. Seidman& Seidman*,
27  686 F.2d 449, 458 (7th Cir. 1982) ("Where, as in this case, both claims have been
    tried once, the considerations of judicial economy that underlie the doctrines of
28  pendent and ancillary jurisdiction support retention of the state claim for retrial.").

_____

1  ought to have been done." *United States v. Allen*, 153 F.3d 1037, 1044 (9th Cir.1998)

2  (quoting Black's Law Dictionary 964 (5th ed.1979)). The doctrine is considered part

3  of the "inherent power of [the] court to make its records speak the truth."*Id.*

4       As the Court of Appeals has explained, a district court "properly exercise[s] its

5  equitable powers to accept [an amended pleading] *nunc pro tunc* to . . . the date of

6  the original filing" where – as here – the original request to amend was meritorious.

7  *Anthony v. Cambra*, 236 F.3d 568, 574 (9th Cir. 2000) (accepting *nunc pro tunc*

8  petition filed after erroneous dismissal by district court, even though "that petition

9  had been dismissed, and there was no pending petition that could be amended").

10  This approach mitigates any unfair prejudice that might result from the court's

11  failure to grant the original request.  *See id.* at 573-74; *accord Hung Viet Vu v.*

12  *Kirkland*, 363 F. App'x 439, 442 (9th Cir. 2010) (noting that "where an error by a

13  district court contributes to a petition's untimely filing, the district court has the

14  equitable power to right its own wrong by accepting the untimely petition *nunc pro*

15  *tunc* to a timely date").

16       Thus, courts routinely grant leave to file amended complaints *nunc pro tunc*

17  where, as here, concerns of prejudice and economy dictate such a result.  *See, e.g.,*

18  *Am. Tower Corp. v. City of San Diego*, No. 07cv0399 LAB (NILS), 2007 WL

19  2815183, at *3 (S.D. Cal. Sept. 25, 2007) (granting leave to file amended complaint

20  *nunc pro tunc* "to avoid any potential prejudice to Plaintiff that may result by filing

21  the amended complaint subsequent to that date" where amended complaint was

22  stricken from the record due to "procedural infraction"); *In re Vantive Corp. Sec.*

23  *Litig.*, 110 F. Supp. 2d 1209, 1213 n. 7 (N.D. Cal. 2000) (granting motion to amend

24  complaint *nunc pro tunc* "in the interests of economy" where "[i]t is apparent from

25  the Court's comments at the hearing on the motion to consolidate the cases and from

26  the Order filed October 19, 1999, that the Court gave permission to file a

27  consolidated complaint, but did not grant leave to amend the complaint" but "[t]he

28  reality, however, is that plaintiffs did amend the complaint in the process of

1  consolidating it, and defendants' new motion to dismiss the FCAC is fully briefed
2  and before the Court"); *F.D.I.C. v. Jackson-Shaw Partners No. 46, Ltd.*, 850 F.Supp.
3  839, 842 (N.D. Cal. 1994) (granting leave to file amended cross-claim *nunc pro tunc*
4  where "failure to timely file the amended cross-claim was inadvertent" and
5  opposition "suffered no prejudice because they received a draft of the amended
6  cross-claim while their motion for summary judgment was pending").

7       Here, MGA originally sought leave to amend its pleading prior to trial, and
8  the Court determined that leave "would be granted" if necessary, but the Court struck
9  the request as moot after finding the claim to be compulsory.  (Dkt. No. 8892 at 10,
10  21.)  Accordingly, in light of the compulsoriness ruling by the Court of Appeals,
11  *nunc pro tunc* amendment is necessary to place MGA's claim on the same footing
12  that it would have occupied had leave to amend been granted originally.

13            **This Court Should Grant MGA Leave to File An Amended Complaint**

14       As noted above, in this Court's October 5, 2010 order, the Court concluded
15  that it did not need to grant leave to amend given the compulsory nature of the
16  counterclaims-in-reply, but that "[e]ven if leave to amend were required, it would be
17  granted."  (Dkt. No. 8892 at 10.)  The amended complaint MGA proposes to file is a
18  word-for-word transcription of the trade secret counterclaims-in-reply that MGA
19  filed in August 2010, which this Court already deemed worthy.  (*See* Exs. B and C
20  (proposed amended complaint and redlined comparison to original complaint).)[4]
21  Leave to amend should be granted *nunc pro tunc* for the same reasons.

22       Leave to amend "shall be freely given when justice so requires" and the
23  "policy of favoring amendment to pleadings should be applied with extreme
24  liberality."*DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 185-86 (9th Cir. 1987).
25
26
27  ───────────────
    [4] Should the Court prefer, MGA can also file an amended complaint incorporating
28  the record and evidence introduced at trial to more fully flesh out MGA's claims.

1  (*See also* Dkt. No. 7675 (Mattel's Motion for Leave to Amend) at 6.)[5]  To determine

2  whether to grant leave to amend, a court considers (1) prejudice; (2) bad faith;

3  (3) undue delay; and (4) futility.  *See Johnson v. Mammoth Recreations, Inc.*, 975

4  F.2d 604, 607 (9th Cir. 1992).  Under the present circumstances, and as this Court

5  has already found, each of these factors points strongly towards permitting MGA to

6  amend its Complaint *nunc pro tunc* to include its trade secrets claim.

7       *First*, as this Court has already observed, the addition of the trade secrets

8  claim will cause Mattel no prejudice.  Mattel was on notice of the allegations

9  underlying the claim well before the claim was filed in August 2010, because the

10  claim "involve[s] allegations that are relevant to MGA's . . . unclean hands defense."

11  (Dkt. No. 8892 at 10.)  Moreover, to minimize "[a]ny remaining prejudice," this

12  Court gave Mattel a one-month discovery extension before trial.  (*Id.*)  And, of

13  course, much of the trial was itself focused on MGA's trade secret allegations.  If

14  anything, Mattel is now in a *better* position to contest the claim.

15       *Second*, "MGA has shown neither bad faith nor undue delay in filing" the

16  claim.  (*Id.*)  MGA diligently sought the information that forms the basis of its trade

17  secrets claim, and it asserted the claim almost immediately after Mattel – after years

18  of delay and denial – finally "produced evidence about [its] market intelligence

19  group."  (*Id.*; *see also* Dkt No. 10700 at 8 (rejecting Mattel laches' defense and

20  finding no delay on MGA's part).)  Now, on remand from the Court of Appeals and

21  issuance of the mandate, MGA seeks leave to amend at its first opportunity.

22       *Finally*, amendment would not be futile.  As this Court has explained, "the

23  statute of limitations for MGA's [trade secrets claim] was triggered the first time

24  MGA discovered or should have discovered Mattel's alleged misappropriation of

25  trade secret materials from MGA's showrooms."  (Dkt. No. 8892 at 17.)  *See also*

---

27  [5] Significantly, Mattel was permitted to amend its answer and counterclaims no less

28  than ***four*** times in this litigation.  (*See* Dkt Nos. 142, 577, 5565, and 7712.)

1   Cal. Civ. Code § 3426.6 ("An action for misappropriation must be brought within

2   three years after the misappropriation is discovered or by the exercise of reasonable

3   diligence should have been discovered."). As described above, MGA diligently

4   sought the information that forms the basis of its trade secrets claim; Mattel, in

5   response, assiduously hid it.  As this Court ruled in rejecting Mattel's laches defense,

6   MGA filed its claim as soon as it reasonably could have:

7           [MGA] filed its claim for trade secret misappropriation in August of
            2010.  The first Mattel employee to publicly admit to the misconduct
8           did so in a July 2010 deposition. . . .

9           . . .

10          [MGA's] "delay" in bringing suit was not unreasonable.  Numerous
            Mattel witnesses, including those with direct knowledge of the
11          conduct giving rise to [MGA's] claim, disclaimed knowledge at
            depositions conducted in 2008 and 2009.  Though [MGA] may have
12          suspected that Mattel gathered competitive information – an entirely
            innocuous fact – it lacked any real knowledge about the extent of
13          Mattel's market intelligence activities, the methods used by the
            market intelligence group, and Mattel's unjust enrichment.
14
    (Dkt. 10700, at 7-8.)
15
16          This Court's conclusion that MGA's claims were not time-barred on the face

17   of the pleadings was implicitly adopted by the Ninth Circuit on Mattel's appeal.  As

18   noted above, Mattel expressly urged the Ninth Circuit to conclude, from the face of

19   MGA's pleading, that MGA's trade secret claims were time barred.  (Ex. A (Oral

20   Argument Transcript) at 20:5-9, 28:24-29:3 ("You should reverse, it's *de

21   novo*[review of MGA's pleading], and the case should be over and you should order

22   it dismissed [with prejudice]."); *accord* (Case No. 11-56357, Dkt. No. 24 (Mattel

23   App. Br.) at 25, 29, 59 and Ex. A (Oral Argument Transcript) at 3:18-4:3, 20:5-9,

24   28:24-29:3.)  Despite Mattel's arguments, the Ninth Circuit did *not* find the trade

25   secret claims were time-barred from the face of the pleadings and instead dismissed

26   the claims *without prejudice* precisely so they could re-file the claims.

27          In sum, MGA filed its trade secrets claim at the first opportunity, and within

28   the statute of limitations.

**A Limited Retrial to Determine Timeliness Only Would
Satisfy Interests of Efficiency and Judicial Economy**

Allowing MGA to amend its complaint to add the claims it has already tried to verdict would allow for a limited retrial focused only on the statute-of-limitations issue. A long line of precedent establishes that it may be appropriate to limit a retrial to a discrete issue or issues. *See, e.g.*, *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 499 (1931) ("where the requirement of a jury trial has been satisfied by a verdict according to law upon one issue of fact, that requirement does not compel a new trial of that issue even though another and separable issue must be tried again"); *Galdamez v. Potter*, 415 F.3d 1015, 1025 n.8 (9th Cir. 2005) (courts may "confine a new trial to particular issues"); *see generally* 11 Charles Alan Wright et al., FED. PRACTICE & PROCEDURE § 2814 (3d. ed. 2012).

When appropriate, a partial retrial "prevent[s] further contest on phases of litigation or issues already well settled,""sav[es] litigants the costs incident to relitigation of such matters," and saves "the courts the time unnecessarily consumed therein." *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 774-75 (9th Cir. 1981) (quotation marks omitted); *see also, e.g.*, *Carvalho v. Raybestos-Manhattan, Inc.*, 794 F.2d 454, 456-57 (9th Cir. 1986) (limited retrial on statute-of-limitations issue); *Hasbrouck v. Texaco, Inc.*, 663 F.2d 930, 933 (9th Cir. 1981) (same). A limited retrial could easily focus on the statute-of-limitations issue, which is "separable" from the merits of the trade secrets claim, *Gasoline Prods.*, 283 U.S. at 499, thereby conserving judicial resources and obviating the need for another long, costly trial.

In this case, a partial retrial limited to the statute of limitations issue would be permissible and appropriate for several reasons. *First*, the issue whether Mattel fraudulently concealed its theft of trade secrets until a time within three years prior to MGA's filing is "distinct and separable" from the extensive proof of the corporate espionage already tried to verdict before the first jury; accordingly, under *Gasoline Products* and decisions of this Circuit, a partial retrial may proceed.

1  *Second*, a partial retrial, which would reduce dramatically the scope of issues

2  to be resolved, is particularly appropriate in light of the extensive judicial resources

3  that this litigation already has consumed, racking up more than 10,000 separate

4  docket entries, two trials, and two fully-briefed-and-argued appeals in the nearly nine

5  years since its inception.  Further, this Court is intimately familiar not only with this

6  long-running and complex case, but with the discrete issue at hand, since it presided

7  over the discovery process which at long last revealed Mattel's espionage, oversaw

8  the testimony and evidence of MGA's trade secret claim at trial (a trial about which

9  Mattel did not raise a single objection before the Ninth Circuit regarding the

10  introduction of evidence or instruction to the jury), and supervised the jury

11  deliberations resulting in the first verdict.  *See generally McSherry v. City of Long*

12  *Beach*, 423 F.3d 1015, 1023 (9th Cir. 2005) (refusing to assign remanded case to

13  different judge because, *inter alia*, "[c]onsiderations of judicial efficiency also

14  counsel that the judge who has ruled on motions *in limine* and is familiar with the

15  parties' trial plans would be best situated to serve as the judge on remand, whether

16  for trial or for other proceedings as appropriate").

17  *Third*, forcing MGA to re-try the entire trade secrets claim in state court would

18  exacerbate a judicial emergency in the California state courts by necessitating

19  relitigation of this massive matter in an already overburdened and under-funded

20  forum.   This is particularly wasteful in light of this Court's above-described

21  experience and familiarity with the issues, and the lack of any appellate issues raised

22  by Mattel about the conduct of the trial by this Court.

23  *Fourth*, and most importantly, a retrial limited to the statute of limitations

24  issue will not unfairly burden or prejudice Mattel because the issue is readily

25  segregable from the question of liability and damages for the underlying

26  misappropriation of trade secrets.  (Indeed, this Court already concluded that there

27  would be "little prejudice" to Mattel by permitting these claims to go forward.)  The

28  retrial could be limited solely to the narrow issue of what MGA knew about Mattel's

1   espionage, and when.  This Court expressly determined that Mattel had had ample

2   time to engage in discovery relating to MGA's trade secret claims and afforded

3   Mattel "a one month extension to the discovery cut off for the limited purpose of

4   conducting discovery into these claims."  (Dkt. No. 8892 at 10.)   Furthermore,

5   Mattel, like MGA, had a full and fair opportunity to litigate its liability for

6   misappropriation in the extensive three-month trial in 2011 (and indisputably did so).

7           In light of these considerations, it would be a sound exercise of judicial

8   discretion for this Court to order a limited retrial focused exclusively on the statute

9   of limitations issue.  Once MGA's claim has been adjudged to be timely, this Court

10  can simply reinstate the 2011 jury's verdict.  There will be no need for further

11  discovery or a lengthy trial of issues that the jury and this Court have already tried to

12  verdict.  Allowing a hyper-technical procedural misstep to undo all the work this

13  Court, the jury and the parties did in 2011 makes little sense, and would be a great

14  injustice to all involved, particularly when MGA timely sought permissive lead to

15  amend and its request was denied through no fault of its own.

16                              **CONCLUSION**

17          For the foregoing reasons, MGA respectfully requests that its motion for leave

18  to amend *nunc pro tunc* be granted.

19

20  Dated: February 27, 2013           KELLER RACKAUCKAS LLP

21

22                               By:  /s/ Jennifer L. Keller
                                      Jennifer L. Keller
23                                    Attorney for MGA Parties

24

25

26

27

28

PROOF OF SERVICE
§ 1013A(3) C.C.P.

**STATE OF CALIFORNIA COUNTY OF ORANGE**

I am employed in the County of Orange, State of California.  I am over the age of 18 years and am not a party to the within action; my business address is 18500 Von Karman Avenue, Suite 560, Irvine, California  92612.

On February 27, 2013, I served the foregoing documents described as follows: **MGA PARTIES' MOTION FOR LEAVE TO AMEND COMPLAINT** *NUNC PRO TUNC* **and  DECLARATION OF JENNIFER L. KELLER IN SUPPORT OF MGA PARTIES' MOTION FOR LEAVE TO AMEND** *NUNC PRO TUNC* on all parties in this matter listed below as follows:

**Cheryl Plambeck**
**Davis & Gilbert LLP**
**1740 Broadway**
**New York, NY 10019**

**J. Christopher Jennings**
**Gibson Dunn & Crutcher**
**333 S. Grand Ave., 45th Floor**
**Los Angeles, CA  90071**

**Kevin E. Dennihan**
**Klee Tuchin Bogdanoff & Stern**
**1999 Avenue of the Stars**
**Los Angeles, CA  90067**

**Peter H. Bonis**
**Peter H. Bonis Law Offices**
**1990 North California Blvd., 8th Floor**
**Walnut Creek, CA  94596**

[X]   **BY MAIL:**   I am readily familiar with the firm's practice of collection and processing correspondence for mailing.   Under that practice it would be deposited with the U.S. Postal Service the same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 27, 2013, at Irvine, California.

/s/ Danielle Frederick
Danielle Frederick

1
PROOF OF SERVICE