QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc. and
Mattel de Mexico, S.A. de C.V.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de C.V., a Mexico business entity, | CASE NO. CV 04-9049 DOC (RNBx) Consolidated with Case Nos. CV 04-09059 & CV 05-02727 |
| | Hon. David O. Carter |
| Plaintiffs, | **MATTEL'S OPPOSITION TO MGA PARTIES' MOTION FOR LEAVE TO AMEND COMPLAINT *NUNC PRO TUNC*** |
| vs. | |
| MGA ENTERTAINMENT, INC., a California corporation, et al., | Date:    April 1, 2013 Time:    8:30 a.m. Place:   Courtroom 9D |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................1

ARGUMENT ..........................................................................................................5

I.  THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE PROPOSED TRADE SECRETS CLAIM, AND EVEN IF IT HAD JURISDICTION, THE COURT SHOULD DECLINE IT. ...................5

II.  THE NINTH CIRCUIT'S MANDATE, LAW OF THE CASE AND PRINCIPLES OF WAIVER PRECLUDE REASSERTION OF MGA'S TRADE SECRETS CLAIM AS AN AMENDMENT ......................10

III.  NEITHER *NUNC PRO TUNC* AMENDMENT NOR REINSTATEMENT OF THE VERDICTS IS PROPER ..............................14

   A.  The Court Lacks Power To Grant *Nunc Pro Tunc* Amendment ..........14

   B.  MGA Cannot "Simply Reinstate" the Vacated Verdicts ......................18

IV.  MGA'S PROPOSED AMENDMENT IS BARRED BY RULE 15 .............20

   A.  MGA's Proposed Amendment Is Futile ...............................................20

      1.  MGA's Claim Accrued More Than Three Years Before It Ever Attempted To Assert It..........................................................21

      2.  Rule 15 Does Not Allow Relation Back....................................25

   B.  Allowing MGA To Amend Following Trial, Judgment And Appeal Would Needlessly Prolong This Suit .........................................26

CONCLUSION......................................................................................................26

1

# TABLE OF AUTHORITIES

2

**Page**

3

## Cases

4

*Acri v. Varian Assocs., Inc.,*
114 F.3d 999 (9th Cir. 1997) ...................................................................... 7, 8

5

*Adee Motor Cars, LLC v. Amato,*
388 F. Supp. 2d 250 (S.D.N.Y. 2005) .......................................................... 8

6

7

*Allard Enters., Inc. v. Advanced Programming Resources, Inc.,*
249 F.3d 564 (6th Cir. 2001) ...................................................................... 11

8

*Allstate Ins. Co. v. Hughes,*
358 F.3d 1089 (9th Cir 2004) ...................................................................... 6

9

10

*Am. Tower Corp. v. City of San Diego,*
2007 WL 2815183 (S.D. Cal. Sept. 25, 2007) ........................................... 17

11

*Anthony v. Cambra,*
236 F.3d 568 (9th Cir. 2000) ...................................................................... 17

12

13

*Carvalho v. Raybestos-Manhattan, Inc*
794 F.2d 454 (9th Cir. 1986) ...................................................................... 19

14

*Cenco Inc. v. Seidman & Seidman,*
686 F.2d 449 (7th Cir. 1982) ........................................................................ 9

15

16

*City of Thousand Oaks v. Verizon Media Ventures, Inc.,*
69 Fed. App'x 826 (9th Cir. 2003) ............................................................. 13

17

*Clausen Law Firm, PLLC v. Nat'l Acad. of Continuing Legal Educ.,*
827 F. Supp. 2d 1262 (W.D. Wash. 2010) .................................................... 5

18

19

*Columbia Pictures Corp. v. DeToth,*
87 Cal. App. 2d 620 (1948) ........................................................................ 21

20

*Colville Confederated Tribes v. Walton,*
752 F.2d 397 (9th Cir. 1985) ...................................................................... 12

21

22

*Cypress Barn, Inc. v. W. Elec. Co.,*
812 F.2d 1363 (11th Cir. 1987) .................................................................. 15

23

*De Contreras v. City of Rialto,*
__ F. Supp. 2d __, 2012 WL 4478787 (C.D. Cal. 2012) ............................. 8

24

25

*Donovan v. Burlington Northern, Inc.,*
781 F.2d 680 (9th Cir. 1986) ...................................................................... 12

26

*Dorsey v. Continental Cas. Co.,*
730 F.2d 675 (11th Cir. 1984) .................................................................... 18

27

28

*Doyle's Carolina 7, LLC v. Thurber,*
  2011 WL 1637416 (D. Or. March 07, 2011)........................................................ 6

*Elmore v. Henderson,*
  227 F.3d 1009 (7th Cir. 2000) ............................................................... 14, 15

*FDIC v. Jackson-Shaw Partners No. 46, Ltd.,*
  850 F. Supp. 839 (N.D. Cal. 1994)............................................................ 17

*Fierro v. Reno,*
  217 F.3d 1 (1st Cir. 2000) ..................................................................... 16

*Firth v. United States,*
  554 F.2d 990 (9th Cir. 1977) .................................................................. 11

*Fogel v. Chestnutt,*
  668 F.2d 100 (2d Cir. 1981) ................................................................... 13

*Gasoline Prods. Co. v. Champlin Ref. Co.,*
  283 U.S. 494 (1931) ....................................................................... 18, 19

*Hasbrouck v. Texaco, Inc.,*
  663 F.2d 930 (9th Cir. 1981) .................................................................. 19

*Hodge v. Mountain States Tel. & Tel. Co.,*
  555 F.2d 254 (9th Cir. 1977).................................................................... 8

*Hung Viet Vu v. Kirkland,*
  363 Fed. App'x 439 (9th Cir. 2010)............................................................ 17

*In re Beverly Hills Bancorp v. Hine,*
  752 F.2d 1334 (9th Cir. 1984)......................................................... 10, 11, 26

*In re Cellular 101, Inc.,*
  539 F.3d 1150 (9th Cir. 2008) ................................................................. 13

*In re Ford Motor Co./Citibank (S. Dakota), NA,*
  264 F.3d 952 (9th Cir. 2001) ................................................................... 5

*In re Mid American Energy Co.,*
  286 F.3d 483 (8th Cir. 2002) .................................................................. 13

*In re Sanford Fork & Tool Co.,*
  160 U.S. 247 (1895) .......................................................................... 10

*In re Vantive Corp. Sec. Litig.,*
  110 F. Supp. 2d 1209 (N.D. Cal. 2000)......................................................... 17

*In re Warren,*
  568 F.3d 1113 (9th Cir. 2009) ................................................................. 16

*Kennedy v. Full Tilt Poker,*
  2010 WL 3984749 (C.D. Cal. Oct. 12, 2010) ..................................................... 5

*Kohler v. Bed Bath & Beyond of California, LLC,*
   2012 WL 2449928 (C.D. Cal. 2012) ................................................................ 8

*Kohler v. Flava Enterprises, Inc.,*
   826 F. Supp. 2d 1221 (S.D. Cal. 2011) ........................................................... 8

*Kusay v. United States,*
   62 F.3d 192 (7th Cir. 1995) ............................................................................ 15

*Liberi v. Defend Our Freedoms Foundations, Inc.,*
   2013 WL 572471 (9th Cir. Feb. 15, 2013) ...................................................... 6

*Log Cabin Republicans v. U.S.,*
   658 F.3d 1162 (9th Cir. 2011) ........................................................................ 18

*Lopez v. Cate,*
   2011 WL 2936185 (E.D. Cal. July 18, 2011) ................................................ 16

*Magnesystems, Inc. v. Nikken, Inc.,*
   933 F. Supp. 944 (C.D. Cal. 1996) ................................................................ 13

*Martin v. Henley,*
   452 F.2d 295 (9th Cir. 1971) .......................................................................... 15

*Mattel, Inc v. MGA Entm't, Inc.,*
   705 F.3d 1108, 2013 WL 264645 (9th Cir. 2013) .............. 1, 2, 4, 10, 11, 12, 18

*Mendez-Gutierrez v. Gonzales,*
   444 F.3d 1168 (9th Cir. 2006) ........................................................................ 10

*Miller v. Butte County Sheriff's Dep't,*
   453 Fed. App'x 698 (9th Cir. 2011) ................................................................. 8

*Nickerson v. Wells Fargo Bank,*
   2010 WL 3990743 (N.D. Cal. Oct. 12, 2010) ................................................. 6

*O'Riordan v. Federal Kemper Life Assurance,*
   36 Cal. 4th 281 (2005) ................................................................................... 21

*Oscar v. Alaska Dept. of Educ. And Early Development,*
   541 F.3d 978 (9th Cir. 2008) .......................................................................... 14

*People v. Forest E. Olson, Inc.,*
   137 Cal. App. 3d 137 (1982) .......................................................................... 21

*Pintando v. Miami-Dade Housing Agency,*
   501 F.3d 1241 (11th Cir. 2007) ....................................................................... 6

*Pioche Mines Consolidated, Inc. v. Foley,*
   237 F.2d 164 (9th Cir. 1956) .......................................................................... 11

*Reynolds v. County of San Diego,*
   84 F.3d 1162 (9th Cir. 1996) ....................................................................... 7, 8

*Rockwell Int'l Corp. v. United States,*
  549 U.S. 457 (2007) ......................................................................... 6

*Salazar v. City of Chicago,*
  940 F.2d 233 (7th Cir. 1991) .......................................................... 9

*Satey v. JPMorgan Chase & Co.,*
  521 F.3d 1087 (9th Cir. 2008) ........................................................ 9

*Singh v. Mukasey,*
  533 F.3d 1103 (9th Cir. 2008) ................................................ 16, 17

*Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson,*
  96 Cal. App. 4th 884 (2002) ........................................................... 24

*Taylor v. Kociski,*
  2012 WL 6878887 (C.D. Cal. Nov. 29, 2012) ...................... 14, 24

*Taylor v. San Bernardino Cty. Deputy,*
  2013 WL 209666 (C.D. Cal. Jan. 14, 2013) ................................ 15

*Transamerica Ins. Co. v. South,*
  975 F.2d 321 (7th Cir. 1992) ......................................................... 15

*Twentieth Century Fox Film Corp. v. Entertainment Distributing,*
  429 F.3d 869 (9th Cir. 2005) ......................................................... 11

*U.S. Philips Corp. v. KBC Bank NV,*
  590 F.3d 1091 (9th Cir. 2010) ................................................ 15, 17

*United States ex rel. Lee v. SmithKline Beecham, Inc.,*
  245 F.3d 1048 (9th Cir. 2001) ....................................................... 20

*United States v. Bell,*
  988 F.2d 247 (1st Cir. 1993) .......................................................... 13

*United States v. Ben Zvi,*
  242 F.3d 89 (2d Cir. 2001) ............................................................. 13

*United States v. Munsingwear, Inc.,*
  340 U.S. 36 (1950) .......................................................................... 18

*United States v. Sumner,*
  226 F.3d 1005 (9th Cir. 2000) ............................................ 15, 16, 17

*United States v. Thrasher,*
  483 F.3d 977 (9th Cir. 2007) ......................................................... 11

*Vizcaino v. U.S. Dist. Court for Western Dist. of Wash.,*
  173 F.3d 713 (9th Cir. 1999) ......................................................... 10

*Wellness Comty. Nat'l v. Wellness House,*
  70 F.3d 46 (7th Cir. 1995) ............................................................... 6

1 | *Williams v. Boeing Co.,*
2 |     517 F.3d 1120 (9th Cir. 2008) ............................................................. 25

3 | ### <u>Statutes</u>

4 | 28 U.S.C. § 1367 ............................................................................... 5, 8
5 | 28 U.S.C. § 1367(c) ................................................................................ 7
6 | *Cal. Civ. Code* § 3426.6 ....................................................................... 20
7 | Fed. R. Civ. P. 30(b)(6) ......................................................................... 23

8 |

9 | ### <u>Other Authorities</u>

10 | Wright & Miller, Federal Practice & Procedure, § 3567 ............................... 7

**Introduction**

"MGA's trade-secret claim should not have reached this jury," and "[o]n remand, the district court shall dismiss MGA's trade-secret claim without prejudice."  That was the instruction of Chief Judge Kozinski writing for a unanimous panel of the Ninth Circuit on January 24, 2013.  *Mattel, Inc v. MGA Entm't, Inc.*, 705 F.3d 1108, 2013 WL 264645, *2 (9th Cir. 2013).  In defiance of this Ninth Circuit mandate, MGA seeks to add this very claim back into this case retroactively through a *nunc pro tunc* amendment of its April 13, 2005 complaint.  MGA's gambit must be rejected.  As a threshold matter, there is no subject matter jurisdiction over MGA's claim.  And even if there were, this Court should not exercise supplemental jurisdiction over a standalone state-law trade-secrets claim between non-diverse parties in a suit where no federal claims remain.  In addition, the Ninth Circuit's mandate forecloses MGA's motion.  As for MGA's special requests to make the amendment *nunc pro tunc* and secure from the Court a ruling as to the scope of the trial, neither would be proper even if the Court had jurisdiction and the mandate did not read as it does.  And in all events, an amendment would be futile, given the record evidence establishing that the claim is plainly time-barred.  MGA's motion should be denied.

**Background**

**MGA's Assertion Of A Trade-Secrets Claim.**  On August 16, 2010, MGA sought to expand this suit by filing three new counterclaims-in-reply, alleging trade secret misappropriation, RICO violations and wrongful injunction.  Dkt. 8583.  MGA did not seek leave of the Court prior to or at the time of this filing.  Mattel moved to strike and/or dismiss these claims, arguing they were not properly filed because they were not compulsory and therefore could not be filed as of right as counterclaims-in-reply.  Dkt. 8737 at 9-11.  Mattel also argued that leave to amend should be denied and that the trade-secret claim was untimely.  *Id.*; Dkt. 8763 at 6-10.

1    MGA responded on September 16, 2010, urging that leave to amend was not

2    required because the counterclaims-in-reply were compulsory.  Dkt. 8747 at 14, 27.

3    To demonstrate purported factual overlap between MGA's trade secrets claim and

4    Mattel's claims, as required for a compulsory finding, MGA wrongly represented

5    that the facts underlying Mattel's trade secret claim overlapped with those

6    underlying MGA's claim.  *See* Dkt. 8747 at 2 ("Mattel alleges that MGA stole trade

7    secrets that Mattel, in turn, stole."); *id.* at 14 ("Mattel is in some instances alleging

8    as trade secrets against MGA the very same things it stole from MGA and others.");

9    Dkt. 9298 (9/27/2010 Hearing Tr. at 83:15-19) (MS. HURST: "[T]he very

10   information upon which Mattel relies in asserting its trade secret claims in this case

11   may well have been stolen by them from others.  We've just learned about this.

12   We're in the course of trying to figure that out.").  MGA included with its

13   opposition a "cross-motion for leave to amend complaint" to the extent it was

14   required.  Dkt. 8747 at 14-19.

15       On October 5, 2010, this Court ruled that MGA's trade secrets counterclaim-

16   in-reply was compulsory, adopting MGA's representations of factual overlap.  Dkt.

17   8892 at 7.  Because the claim was compulsory, the Court ruled, MGA was not

18   required to move for leave to amend; and the claim related back to Mattel's January

19   12, 2007 Answer and Counterclaims.  *Id.* at 10, 21.  Following a trial and post-trial

20   motions, the Court entered a judgment that, among other things, awarded MGA $85

21   million in compensatory damages, $85 million in exemplary damages, and

22   $2,522,000 in attorneys' fees and costs on MGA's claim for trade secret

23   misappropriation.  Dkt. 10704 at 1.

24       **Mattel's Appeal**.  Mattel appealed those aspects of the judgment that

25   awarded monetary relief to MGA.  As to the trade-secrets claim, Mattel argued the

26   Court erred when it ruled that MGA's claim was compulsory as it did not arise out

27   of the transaction or occurrence that was the subject of Mattel's trade secret

28   misappropriation claim.  Dkt. 24 at 24-29 (Ninth Cir. No. 11-56357).  Because the

1   claim was not compulsory, it did not relate back and was not timely filed. *Id.* at 26

2   n.4 (citing *Employers Ins. of Wausau v. United States*, 764 F.2d 1572, 1576 (Fed.

3   Cir. 1985)).

4          MGA responded that its trade-secrets claim in fact was compulsory and that it

5   could prevail on timeliness even if it was not. Dkt. 39 at 23-28 (Ninth Cir. No. 11-

6   56357); Declaration of Michael T. Zeller, dated March 11, 2013 ("Zeller Dec."), Ex.

7   A (9th Cir. Oral Argument Tr. 22). By insisting that it could prevail on timeliness

8   even if its claim was not compulsory, MGA necessarily *assumed* a purported right to

9   file its trade-secrets claim with the Court's permission by amendment, for the law is

10  clear and undisputed that claims that are not compulsory cannot be filed as

11  counterclaims-in-reply at all. *See also* Dkt. 8747 at 19 (MGA acknowledging that

12  "the Ninth Circuit has limited [counterclaims-in-reply] to compulsory

13  counterclaims-in-reply"); Dkt. 9298 (9/27/2010 Hearing Tr. at 86:18-97:2) (MS.

14  HURST: "Rule 7 and Rule 13 allow a counterclaim in reply. . . . The Ninth Circuit

15  has interpreted it only to permit compulsory counterclaims."). At no time did MGA

16  argue on appeal that it was entitled to amend its complaint to add the trade-secrets

17  claim, either by asserting as error the Court's order striking MGA's motion for leave

18  to amend or otherwise.

19         At oral argument, the Ninth Circuit panel inquired into the consequences of a

20  ruling that MGA's claim was not compulsory. Judge Wardlaw stated that any

21  attempt to bring the trade-secrets claim in a form *other* than as a compulsory

22  counterclaim-in-reply would require the filing of *a new lawsuit*. *See* Zeller Dec. Ex.

23  A (9th Cir. Oral Argument Tr. 24) ("Suppose we don't buy that it's a compulsory

24  counterclaim, does it go back to Judge Carter, or do you still have, you know, would

25  you be filing a new lawsuit where [the limitations defense] might come up"); *see id*.

26  ("But if it's not a compulsory counterclaim, *then it doesn't belong in this litigation* .

27  . . it seems to me, *he would have to file a new lawsuit*.") (emphasis added). Judge

28  Wardlaw also stated that the statute of limitations for any such new lawsuit was

1  continuing to run each day.  *See id.* ("We still have time, right?  It's three years,

2  right? . . .  So I don't know, if I were you, I might be filing that claim tomorrow.").

3  Even in the face of these questions, MGA did not contend that its trade-secrets

4  claim, if not compulsory, could still be asserted in this case by way of amendment,

5  let alone *nunc pro tunc*.  Rather, counsel simply adhered to MGA's position that the

6  counterclaim was compulsory.  *See id.* (9th Cir. Oral Argument Tr. 25) (MGA

7  responding to Judge Wardlaw's question by stating that "you don't need to reach

8  that because it's a compulsory counterclaim").

9      On January 24, 2013, the Ninth Circuit held that the Court erred in finding

10  MGA's trade secrets claim to be compulsory.  2013 WL 264645, at *2.  Therefore,

11  in light of established law that non-compulsory counterclaims-in-reply are not

12  permitted, the Ninth Circuit ruled that "MGA's trade-secret claim should not have

13  reached this jury."  *Id.*  The Court of Appeals "vacate[d] the verdict along with the

14  related damages, fees and costs" and directed that, "[o]n remand, the district court

15  shall dismiss MGA's trade-secret claim without prejudice."  *Id.*  The formal

16  mandate issued on February 19, 2013.  Dkt. 10852 at 1.

17      **MGA's Proposed Amended Complaint**.  MGA seeks leave to file a

18  proposed amended complaint that has just one claim—a state law trade-secrets

19  claim between non-diverse parties.  Dkt. 10863-1 at 7-22.  MGA states that the

20  claim it seeks to file is a "word-for-word transcription of the trade secret

21  counterclaims-in-reply that MGA filed in August 2010" (Mot. at 10), *i.e.*, the claim

22  that the Ninth Circuit said should not have reached the jury and ordered dismissed

23  without prejudice.

24      //

25      //

26      //

27      //

28      //

1

<u>Argument</u>

2  **I.    THE  COURT  LACKS  SUBJECT  MATTER  JURISDICTION  OVER**

3  **THE PROPOSED TRADE SECRETS CLAIM, AND EVEN IF IT HAD**

4  **JURISDICTION, THE COURT SHOULD DECLINE IT.**

5       MGA bears the burden of proving that this Court has subject matter

6  jurisdiction over its trade secrets claim.  *See In re Ford Motor Co./Citibank (S.*

7  *Dakota), NA*, 264 F.3d 952, 957 (9th Cir. 2001) ("The party asserting federal

8  jurisdiction bears the burden of proving the case is properly in federal court.");

9  *Clausen Law Firm, PLLC v. Nat'l Acad. of Continuing Legal Educ.*, 827 F. Supp. 2d

10  1262, 1266 (W.D. Wash. 2010) (same).  Nevertheless, in violation of this Court's

11  express requirements, MGA does not even allege any basis for subject matter

12  jurisdiction over the state-law claim it now seeks to pursue.  *See* C.D. Cal. L.R. 8-1

13  ("The statutory or other basis for the exercise of jurisdiction by this Court shall be

14  plainly stated in the first paragraph of any document invoking this Court's

15  jurisdiction"); Dkt. 10863-1 at 7-21 (Captioned MGA's Amended Complaint For

16  Trade Secret Misappropriation).  This violation alone warrants denying MGA's

17  motion.  *Kennedy v. Full Tilt Poker*, 2010 WL 3984749, at *1 (C.D. Cal. Oct. 12,

18  2010) ("court struck plaintiffs' third amended complaint . . . because the complaint

19  failed to identify the basis for federal jurisdiction as required by Local Rule 8-1.").

20       In fact, there is no such jurisdiction.  As this Court recognized at the February

21  26, 2013 hearing, MGA's trade secrets claim is entirely "a state law claim," which

22  leaves MGA in a "box" since it has "to hook it up to some federal claim" in order

23  "to get it back to federal court."  Zeller Dec. Ex. B (2/26/2013 Hearing Tr. at 26:7-

24  18).  MGA has not identified any way out of that box.  Nor can it.  Under 28 U.S.C.

25  § 1367, "the district courts shall have supplemental jurisdiction over all other claims

26  that are *so related to claims in the action within such original jurisdiction that they*

27  *form part of the same case or controversy under Article III of the United States*

28  *Constitution*."  28 U.S.C. § 1367 (emphasis added).  There are no longer any

"claims in the action" over which this Court has original jurisdiction, let alone claims that "form part of the same case or controversy" as MGA's toy-fair claim. Thus, there is no claim in the case to which MGA can "hook" its trade-secrets claim, and there is therefore no jurisdiction over it.

MGA argues in a footnote (Mot. at 8 n.3) that the Court can exercise supplemental jurisdiction over its trade-secrets claim in light of the federal claims that previously were litigated to judgment in this case.  But even if supplemental jurisdiction existed at an earlier stage in the case, this Court has "a continuing obligation to assess its own subject-matter jurisdiction." *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1093 (9th Cir 2004); *see also Doyle's Carolina 7, LLC v. Thurber*, 2011 WL 1637416, at *4 (D. Or. March 07, 2011) ("It is the court's obligation, at all times, to confirm *sua sponte* that it is has subject matter jurisdiction over the suit.") (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)).  MGA has not identified any basis for this Court to exercise supplemental jurisdiction now that all the claims over which this Court had original jurisdiction—and certainly all such claims that formed part of the same case or controversy as MGA's trade-secrets claim—have been litigated to final judgment.[1]  As the Court lacks jurisdiction over MGA's proposed claim, the Court should deny MGA's motion for leave to assert that claim.

---

[1]  MGA's attempt to rely on its own prior pleadings as a source of jurisdiction fails for additional reasons.  As a matter of law, the amended complaint MGA seeks to file would supersede MGA's prior complaint, *Liberi v. Defend Our Freedoms Foundations, Inc.*, 2013 WL 572471, at *1 (9th Cir. Feb. 15, 2013), and it is this amended pleading, not the prior one, that is considered for purposes of determining subject matter jurisdiction.  *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007) (withdrawal of allegations in an amended complaint which had formed the basis of federal jurisdiction defeats jurisdiction); *see also Wellness Comty. Nat'l v. Wellness House*, 70 F.3d 46, 50 (7th Cir. 1995) (same); *Pintando v. Miami-Dade Housing Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (same); *Nickerson v. Wells Fargo Bank*, 2010 WL 3990743, *2 (N.D. Cal. Oct. 12, 2010) (same).  Because MGA's proposed amended complaint asserts no federal claims and
(footnote continued)

1    Even assuming there were a basis for this Court to exercise supplemental

2  jurisdiction over MGA's claim (and there is none), it should decline to do so as a

3  matter of discretion.  28 U.S.C. § 1367(c) provides that the court "may decline to

4  exercise supplemental jurisdiction over a claim under subsection (a) if . . . (2) the

5  claim substantially predominates over the claim or claims over which the district

6  court has original jurisdiction".  That is certainly the case here, given the present

7  posture of the litigation.  Indeed, all that would remain is MGA's proposed state law

8  claim if MGA's motion were granted.

9    In addition, and independently, under 28 U.S.C. § 1367(c), the court "may

10  decline to exercise supplemental jurisdiction over a claim under subsection (c) if . . .

11  (3) the district court has dismissed all claims over which it has original jurisdiction."

12  "The Supreme Court has stated, and [the Ninth Circuit has] often repeated, that 'in

13  the usual case in which all federal-law claims are eliminated before trial, the balance

14  of factors . . . will point toward declining to exercise jurisdiction over the remaining

15  state-law claims.'"  *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997)

16  (en banc) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

17    *Reynolds v. County of San Diego*, 84 F.3d 1162 (9th Cir. 1996), *overruled on

18  other grounds in Acri*, *supra*, is instructive.  There, the district court had granted

19  summary judgment for the defense on plaintiff's federal civil rights and state law

20  _____

21  there is no diversity jurisdiction, and in light of the rule that "the amended complaint

22  supersedes the original complaint, . . . the case should be treated as though the

plaintiff has pleaded no basis of federal jurisdiction.  In such a case, retaining

23  jurisdiction of the non-federal claims is improper."  13D Wright & Miller, Federal

24  Practice & Procedure, § 3567; *see Wellness*, 70 F.3d at 50 (because amended

complaint lacked any federal claim, "there [is] no federal claim to which [the] state

25  claim[] could be 'supplemental'"); *Pintando*, 501 F.3d at 1243-44 (no supplemental

26  jurisdiction because "[w]hen Pintando amended his complaint and failed to include

a Title VII claim or any other federal claim, the basis for the district court's subject-

27  matter jurisdiction ceased to exist").

28

tort claims.  The Ninth Circuit reversed the judgment as to the tort claims, holding that, "after granting summary judgment on the civil rights claim, the court should have dismissed the state law claims without prejudice." 84 F.3d at 1171.  The *Reynolds* panel relied on *Hodge v. Mountain States Tel. & Tel. Co.*, 555 F.2d 254 (9th Cir. 1977), a case predating the enactment of Section 1367, where the court similarly instructed the district court to dismiss state law claims following the entry of summary judgment on the plaintiff's federal claims.  555 F.2d at 261 (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).  More recently, the Ninth Circuit affirmed the district court's decision not to exercise supplemental jurisdiction over state law malpractice claims following the entry of summary judgment on federal civil rights claims.  *Miller v. Butte County Sheriff's Dep't*, 453 Fed. App'x 698, 699 (9th Cir. 2011); *see also De Contreras v. City of Rialto*, __ F. Supp. 2d __, 2012 WL 4478787, at *14 (C.D. Cal. 2012) (declining supplemental jurisdiction of state law claims following entry of summary judgment); *Kohler v. Bed Bath & Beyond of California, LLC*, 2012 WL 2449928, at *13 (C.D. Cal. 2012) (same); *Kohler v. Flava Enterprises, Inc.*, 826 F. Supp. 2d 1221, 1232 (S.D. Cal. 2011) (same).

This result is especially appropriate here considering "the *Gibbs* values 'of economy, convenience, fairness, and comity.'" *Acri*, 114 F.3d at 1001.  All of the parties' federal claims have not only resolved by this Court, but have been litigated through final judgment and appeal (indeed, all of MGA's federal claims were dismissed at the summary judgment stage).  The Ninth Circuit instructed this Court to dismiss the trade-secrets claim without prejudice.  Absent any remaining federal claims, principles of comity weigh heavily in favor of requiring MGA to file its state law trade-secrets claim in state court. *See Adee Motor Cars, LLC v. Amato*, 388 F. Supp. 2d 250, 255 (S.D.N.Y. 2005) (declining to exercise supplemental jurisdiction following dismissal of federal claim on summary judgment in light of factors of "judicial economy, convenience, fairness, and comity," even though the case had

1   been litigated for more than four years, discovery was complete, and the court's

2   findings on the federal claim may have given rise to a collateral estoppel defense on

3   plaintiffs' remaining state law claims).

4          MGA cites no authority where a court found that it could, or did, exercise

5   supplemental jurisdiction over a standalone state-law claim in an amended pleading

6   when all federal claims had already been reduced to judgment.  In *Satey v.*

7   *JPMorgan Chase & Co.*, 521 F.3d 1087 (9th Cir. 2008), the district court entered

8   summary judgment for defendants on a state law identity theft claim after the

9   plaintiff voluntarily dismissed his federal claims, and the Ninth Circuit ruled that the

10  court had discretion to retain supplemental jurisdiction over the state law claim

11  notwithstanding the dismissal of the federal claims in order to serve "judicial

12  economy and convenience to the parties."  *Id*. at 1091.  *Satey* was thus a

13  straightforward application of the typical case where, in an ongoing proceeding and

14  before judgment, a court decides whether to exercise supplemental jurisdiction

15  despite the pretrial dismissal of all pending federal claims.  That is a far cry from the

16  procedural posture here, where MGA seeks to bring a stand-alone state law claim

17  *after* the federal claims that were in an earlier pleading have been litigated to

18  judgment and the Ninth Circuit has ordered the very same state law claim dismissed

19  without prejudice on remand.  MGA offers no authority for exercising supplemental

20  jurisdiction in the circumstances of this case.[2]

_____

22       [2]  The other two cases that MGA cites, both from the Seventh Circuit, are also

23  plainly distinguishable.  *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449 (7th Cir.

24  1982), observed that "it may well be that the second trial [of a state law claim on

    remand] should be in a state court" where the claim "involves novel and difficult

25  issues of state law" and had to be retried "from scratch."  *Id*. at 458.  Thus, the case

    does not support MGA's radical position here.  In the second case, *Salazar v. City of*

26  *Chicago*, 940 F.2d 233 (7th Cir. 1991), a state law claim was tried alongside federal

27  claims, but the jury was unable to reach a verdict on the state law claim.  Rather

    than retry the state law claim, the plaintiff moved to dismiss without prejudice for

28       (footnote continued)

## II. THE NINTH CIRCUIT'S MANDATE, LAW OF THE CASE AND PRINCIPLES OF WAIVER PRECLUDE REASSERTION OF MGA'S TRADE SECRETS CLAIM AS AN AMENDMENT

Ruling that MGA's trade secret claim "should not have reached this jury," the Ninth Circuit unequivocally instructed this Court to "dismiss MGA's trade-secret claim without prejudice." 2013 WL 264645, at *2. It would violate the letter and spirit of the Ninth Circuit's mandate, and violate the rule of mandate and law of the case doctrine, to grant MGA's request to retroactively add back into this case by amendment the very claim that the Ninth Circuit ruled never should have been tried and directed be dismissed.

"When acting under an appellate court's mandate, an inferior court 'is bound by the decree as the law of the case; and must carry it into execution, according to the mandate. The court cannot vary it, or examine it for any other purpose than execution.'" *Vizcaino v. U.S. Dist. Court for Western Dist. of Wash.*, 173 F.3d 713, 718 (9th Cir. 1999) (*quoting In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895)). "On remand, a trial court may not deviate from the mandate of an appellate court." *In re Beverly Hills Bancorp v. Hine*, 752 F.2d 1334, 1337 (9th Cir. 1984). Where an appellate mandate requires "specific action," a district court "has no power to expand our remand beyond the boundary ordered by our court." *Mendez-Gutierrez v. Gonzales,* 444 F.3d 1168, 1173 (9th Cir. 2006); *see id.* at 1172 ("a district court is limited by this court's remand in situations where the scope of the

---

lack of subject matter jurisdiction. The district court concluded that it had jurisdiction and instead dismissed for failure to prosecute. The Seventh Circuit affirmed, noting that "[t]he plaintiff has offered no reasons for relinquishing jurisdiction here." *Salazar* accordingly does not support the existence or exercise of jurisdiction here, where the trial judgment was appealed, the state law claim was ordered dismissed without prejudice, and MGA has now requested leave to file an amended complaint that only alleges a state law claim.

1    remand is clear"); *Twentieth Century Fox Film Corp. v. Entertainment Distributing*,

2    429 F.3d 869, 883 (9th Cir. 2005) (in absence of an "open remand," district court

3    properly limited itself to implementing the Court of Appeals' specific instructions

4    on remand).  "[I]f a district court errs by violating the rule of mandate, the error is a

5    jurisdictional one."  *United States v. Thrasher,* 483 F.3d 977, 982 (9th Cir. 2007).

6          The Ninth Circuit's mandate here requires specific action.  It directed that this

7    Court "shall dismiss MGA's trade-secret claim without prejudice."  2013 WL

8    264645, at *2.  MGA pretends this is an instruction to dismiss the trade secrets

9    claims only "to the extent they are styled as counterclaims-in-reply," Mot. at 1, but

10   nothing in the mandate or the opinion reflects such a limitation.  Indeed, the Court

11   of Appeals mandated "dismissal" of the trade secrets "claim" (not merely as a

12   counterclaim-in-reply) without exception or equivocation.  2013 WL 264645, at *2.

13   That the Ninth Circuit ruled that the claim "should not have reached this jury" at all

14   and "vacate[d] the verdict along with the related damages, fees and costs" further

15   confirms the Ninth Circuit's instruction that the claim must be dismissed from this

16   case altogether.  To add the claim back into the case now through a retroactive grant

17   of leave to amend would be inconsistent with the Ninth Circuit's clear instructions.

18   *See Beverly Hills Bancorp*, 752 F.2d at 1337 (reversing order permitting amendment

19   of pleading on remand where only one issue remained to be decided after prior

20   appeal); *Allard Enters., Inc. v. Advanced Programming Resources, Inc.*, 249 F.3d

21   564, 571 (6th Cir. 2001) (reversing grant of leave to amend on remand where

22   appellate court provided "explicit, limited instructions to the district court regarding

23   the remand" on prior appeal); *Pioche Mines Consolidated, Inc. v. Foley*, 237 F.2d

24   164, 165 (9th Cir. 1956) (issuing mandamus and reversing grant of leave to amend

25   on remand where such grant was inconsistent with appellate court's intent).

26          The context of the Ninth Circuit's opinion further demonstrates that MGA's

27   request is inconsistent with the Court of Appeals' mandate.  *See Firth v. United*

28   *States*, 554 F.2d 990, 994 n. 3 (9th Cir. 1977) (district court lacks "power to do

1  anything which is contrary to *either the letter or spirit* of the mandate construed in

2  the light of the opinion of this court deciding the case") (emphasis added); *Colville*

3  *Confederated Tribes v. Walton,* 752 F.2d 397, 400 (9th Cir. 1985) (same).  Here, at

4  oral argument, Judge Wardlaw expressly advised MGA to refile its state law claim

5  "tomorrow"—and to do so "*in a new lawsuit*"—since "*if it's not a compulsory*

6  *counterclaim, then it doesn't belong in this litigation*."  Zeller Dec. Ex. A (9th Cir.

7  Oral Argument Tr. 24).  This statement was reaffirmed in the Ninth Circuit's formal

8  ruling that MGA's trade secrets claim "should not have reached this jury," 2013 WL

9  264645, at *2.

10      In addition, MGA's request for leave to amend ignores the related rules that

11  the mandate extends to issues impliedly decided by the Court of Appeals and that

12  issues that could have been but were not presented to the Court of Appeals are

13  waived and barred from relitigation.  The law is clear that the mandate rule can

14  extend to issues that are addressed on appeal only impliedly.  *See Donovan v.*

15  *Burlington Northern, Inc.*, 781 F.2d 680, 684 (9th Cir. 1986) ("A district court is

16  free, on remand, to determine only those issues not expressly *or impliedly*

17  determined by the appellate court.") (emphasis added).  The propriety of asserting

18  MGA's trade-secrets claim in this Court by amendment was at least impliedly

19  resolved by the Court of Appeals when it ruled that the claim must be dismissed, for

20  MGA's argument that it could prevail on timeliness even if its trade-secrets claim

21  was not compulsory necessarily put at issue the propriety of asserting the claim by

22  amendment in light of the rule that only compulsory claims may be filed as

23  counterclaims-in-reply.  And, as noted, the Ninth Circuit directed that MGA's

24  "claim"—not merely its counterclaim-in-reply—be dismissed on remand.

25      In any event, to the extent that the right to amend question was not at least

26  impliedly decided by the Ninth Circuit's order of dismissal, then MGA necessarily

27  waived any right to revisit the amendment question by not raising it on appeal as an

28  alternative ground to support its right to take the claim to trial.  Waiver applies when

MATTEL'S OPPOSITION TO MGA'S MOTION FOR LEAVE TO AMEND COMPLAINT *NUNC PRO TUNC*

parties fail to raise an argument "as an alternative ground for affirmance in their opening brief on appeal." *City of Thousand Oaks v. Verizon Media Ventures, Inc.*, 69 Fed. App'x 826, 828 (9th Cir. 2003) (Kozinski, J.). "It would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." *In re Cellular 101, Inc.*, 539 F.3d 1150, 1155 (9th Cir. 2008) (quoting *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981) (Friendly, J.)).[3]  MGA had ample opportunity to expressly argue a right to pursue its claim by amendment when this case was on appeal, but made a tactical choice not to do so.  Even when Judge Wardlaw stated that if MGA's claim is "not a compulsory counterclaim, then it doesn't belong in this litigation" and suggested that MGA refile its claim "in a *new lawsuit*."  Zeller Dec. Ex. A (9th Cir. Oral Argument Tr. 24, emphasis added), with all the attendant hurdles of timeliness and preclusion that might raise, MGA's only response was that "you don't need to reach that because it's a compulsory counterclaim."  *Id*. at 25.  MGA thus failed to argue a right to amend even when directly confronted with that issue.  Such a waiver precludes MGA's request that this Court circumvent the mandate by granting leave

---

[3]   *See also United States v. Ben Zvi*, 242 F.3d 89, 98 (2d Cir. 2001) ("a decision made at a previous stage of litigation, which could have been challenged in the ensuing appeal but was not, becomes the law of the case; the parties are deemed to have waived the right to challenge that decision, for it would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost."); *United States v. Bell,* 988 F.2d 247, 250 (1st Cir. 1993) ("The black letter rule governing this point is that a legal decision made at one stage of a civil or criminal case, unchallenged in a subsequent appeal despite the existence of ample opportunity to do so, becomes the law of the case for future stages of the same litigation, and the aggrieved party is deemed to have forfeited any right to challenge that particular decision at a subsequent date."); *Magnesystems, Inc. v. Nikken, Inc.*, 933 F. Supp. 944, 949-950 (C.D. Cal. 1996) ("An issue or argument waived at the trial level before a particular order is appealed, or subsequently waived on appeal, cannot be revived on remand.  In essence, the party's waiver becomes the law of the case.").

1    to amend on remand.  *See, e.g., In re Mid American Energy Co.*, 286 F.3d 483, 486

2    (8th Cir. 2002) (granting mandamus and reversing grant of leave to amend on

3    remand:  "NPPD may not retrofit its complaint to circumvent a binding, unfavorable

4    opinion.  These arguments could, and should, have been raised earlier.  It is

5    inappropriate to consider them on remand.").[4]

6    **III.   NEITHER *NUNC PRO TUNC* AMENDMENT NOR**

7    **REINSTATEMENT OF THE VERDICTS IS PROPER**

8         MGA not only improperly seeks to add the trade-secrets claim back into this

9    case in the face of the Ninth Circuit's dismissal mandate, but it insists for good

10   measure that the claim should be added *nunc pro tunc* to August 16, 2010 and that,

11   once the claim is added, the jury's verdicts can then be reinstated upon decision of

12   the timeliness issue.  These bold requests likewise defy the Court of Appeals'

13   mandate, as well as black letter law that governs them.

14        **A.   The Court Lacks Power To Grant *Nunc Pro Tunc* Amendment**

15        "A suit dismissed without prejudice is treated for statute of limitations

16   purposes as if it had never been filed."  *Elmore v. Henderson*, 227 F.3d 1009, 1011

17   (7th Cir. 2000) (Posner, J.)  "[I]f the suit is dismissed without prejudice, meaning

18   that it can be refiled, then the tolling effect of the filing of the suit is wiped out and

19   the statute of limitations is deemed to have continued running from whenever the

20   cause of action accrued, without interruption by that filing."  *Id.* at 1012; *see also*

21   ─────────────────

22   [4]  Tellingly, MGA cites no authority that permits a court to grant leave to amend
23   in these circumstances.  The only case it cites, *Oscar v. Alaska Dept. of Educ. And
     Early Development*, 541 F.3d 978, 982 (9th Cir. 2008), did not consider whether
24   parties should be granted leave to amend in the face of an appellate mandate to the
     contrary, but rather merely held that an involuntary dismissal without prejudice
25   "does not alter the legal relationship of the parties" for the purposes of *prevailing
26   party* status on a *fee award* because the "defendant remains subject to the risk of
     refiling."  *Id.*  at 981.  Nothing in *Oscar* allows MGA to ignore the mandate of the
27   Ninth Circuit in this case, as it seeks to do by way of the present motion.

28

1   *Taylor v. Kociski*, 2012 WL 6878887, * 6 (C.D. Cal. Nov. 29, 2012) (following

2   *Elmore* and noting rule followed in other Circuits), *recommendation adopted sub*

3   *nom. Taylor v. San Bernardino Cty. Deputy*, 2013 WL 209666 (C.D. Cal. Jan. 14,

4   2013).  This well-established principle fully supports Judge Wardlaw's statements

5   that the limitations period is running following a dismissal without prejudice.  A

6   *nunc pro tunc* amendment premised on the August 16, 2010 filing of MGA's

7   counterclaims-in-reply is therefore barred by the mandated dismissal without

8   prejudice and the *Elmore* rule.

9        Even if the Ninth Circuit had not ordered a dismissal without prejudice (with

10   its attendant consequences for statute of limitations purposes), the circumstances

11   here do not permit *nunc pro tunc* relief.  The Ninth Circuit has made clear that a

12   court has no power to amend *nunc pro tunc* in order "to alter the substance of that

13   which actually transpired or to backdate events to serve some other purpose."

14   *United States v. Sumner*, 226 F. 3d 1005, 1009-10 (9th Cir. 2000) (citing *Kusay v.*

15   *United States,* 62 F.3d 192, 193 (7th Cir. 1995)).  "The failure of a court to act, or its

16   incorrect action, can *never* authorize a *nunc pro tunc* entry.  If a court does not

17   render judgment or renders one which is imperfect or improper, it has no power to

18   remedy any of these errors or omissions by treating them as clerical misprisions."

19   *U.S. Philips Corp. v. KBC Bank NV,* 590 F.3d 1091, 1094 (9th Cir. 2010) (quoting

20   *Cypress Barn, Inc. v. W. Elec. Co.*, 812 F.2d 1363, 1364 (11th Cir. 1987)).  *Nunc*

21   *pro tunc* amendment is used to correct clerical or ministerial errors; it does not allow

22   the Court "to change history.  Incantation of Latin phrases does not bestow such an

23   Orwellian power."  *Kusay*, 62 F.3d at 193; *see also Martin v. Henley*, 452 F.2d 295,

24   299 (9th Cir. 1971) ("[T]here was no error to correct.  *Nunc pro tunc* amendments

25   are permitted primarily so that errors in the record may be corrected.");

26   *Transamerica Ins. Co. v. South,* 975 F.2d 321, 325 (7th Cir. 1992) (noting that "a

27   *nunc pro tunc* order is typically used to correct clerical or ministerial errors," but as

28

Case No. CV 04-9049 DOC (RNBx)

MATTEL'S OPPOSITION TO MGA'S MOTION FOR LEAVE TO AMEND COMPLAINT *NUNC PRO TUNC*

1   a general rule does not enable the court to make "substantive changes affecting

2   parties' rights").

3          Consistent with the "limited" nature of *nunc pro tunc* power, *Sumner*, 226

4   F.3d at 1009-10, the Ninth Circuit has held that *nunc pro tunc* orders cannot be used

5   to backdate a pleading for limitations purposes where the original order, while

6   erroneous, was what the district court intended.  In *Singh v. Mukasey,* 533 F.3d 1103

7   (9th Cir. 2008), an initial petition for review of an immigration decision was

8   dismissed, and the petitioner argued a subsequent petition should be ordered filed as

9   of the earlier date *nunc pro tunc*.  *Id.* at 1110.  The Ninth Circuit rejected that

10  argument because there was no question that the initial dismissal was based on the

11  law at that time and was not some inadvertent error.  *Id.*; *see also In re Warren*, 568

12  F.3d 1113, 1116 (9th Cir. 2009) (holding it was "improper" for the district court to

13  use "*nunc pro tunc* in an attempt to backdate the order to fall within the § 521(i)(1)

14  forty-five day filing deadline and to thereby 'alter the substance of that which

15  actually transpired'") (quoting *Sumner*, 226 F.3d at 1010); *Lopez v. Cate*, 2011 WL

16  2936185, *10 (E.D. Cal. July 18, 2011) ("Plaintiff has not provided any legal

17  authority for his theory that this court has the authority to backdate the filing of the

18  instant complaint to a date that would preclude application of the statute of

19  limitations bar set forth above.").

20         These authorities foreclose a *nunc pro tunc* amendment here.  There is no

21  dispute that this Court's October 5, 2010 Order reflects precisely what the Court

22  intended.  It concluded that MGA's counterclaim in reply was compulsory, and

23  therefore that MGA did not need to seek leave to amend.  *See* Dkt. 8747 at 14

24  ("Because the Counterclaims-in-Reply are compulsory, no leave to amend was

25  required . . . .").  It accordingly struck MGA's motion for leave to amend as moot.

26  Because this Court's order "expressed exactly the intention of the court at the time it

27  was made," at the urging of MGA, it "cannot be remedied by a *nunc pro tunc*

28

1    entry." *Fierro v. Reno*, 217 F.3d 1, 4-5 (1st Cir. 2000) (cited in *Sumner*, 226 F.3d at

2    1010).

3         The fact that this Court's compulsory ruling was later reversed does not

4    permit *nunc pro tunc* relief.  *Phillips*, 590 F.3d at 1094.  Like the petition in *Singh*,

5    MGA's trade secret claim "was not dismissed through any clerical mistake or error

6    of law, but rather was properly dismissed under the law" as applied by the Ninth

7    Circuit.  MGA "points to no authority to support [its] theory that [the court has]

8    authority to backdate [an Amended Complaint] to the date of his earlier, properly

9    dismissed [pleading]." 533 F.3d at 1110.[5]  MGA's effort to backdate its filing to

10   August 16, 2010 cannot be achieved by a *nunc pro tunc* amendment that would

11   "alter the substance of that which actually transpired" so as "backdate events to

12

13

14   _____

15       [5]   None of MGA's authority addresses or applies *Sumner* or its progeny, which

16   govern *nunc pro tunc* amendments in civil cases in this Circuit.  Instead, MGA cites
     two criminal habeas cases where the Ninth Circuit noted the equitable power of the

17   court to "right its own wrong" through a *nunc pro tunc* amendment "where an error
     by a district court contributes to a petition's untimely filing[.]"  *Hung Viet Vu v.*

18   *Kirkland*, 363 Fed. App'x 439, 442 (9th Cir. 2010) (citing *Anthony v. Cambra*, 236

19   F.3d 568, 574 (9th Cir. 2000)).  MGA does not cite any cases extending this
     principle beyond the habeas context.  The three district court cases MGA cites also

20   do not apply *Sumner* or its progeny (indeed, two predate *Sumner*) or address a post-
     appeal remand with a mandate to dismiss without prejudice.  Instead, they involve

21   amendments extending back the filing date of a complaint by *days*, not *years* due to
     inadvertent errors.  *See Am. Tower Corp. v. City of San Diego*, 2007 WL 2815183,

22   at *2-3 (S.D. Cal. Sept. 25, 2007) (granting unopposed *ex parte* application to push

23   back date by one month); *In re Vantive Corp. Sec. Litig.*, 110 F. Supp. 2d 1209,
     1220 (N.D. Cal. 2000) (court granted motion to dismiss after permitting amendment

24   *nunc pro tunc* that extended back by only a few days the filing of a consolidated
     complaint); *FDIC v. Jackson-Shaw Partners No. 46, Ltd.*, 850 F. Supp. 839, 842

25   (N.D. Cal. 1994) (allowing amendment *nunc pro tunc* back only a few days due to
     plaintiff's inadvertent error).

26

27

28

1  serve some other purpose" such as, here, furthering MGA's statute of limitations

2  arguments.[6]

3  **B.      MGA Cannot "Simply Reinstate" the Vacated Verdicts**

4          MGA argues that if leave to amend is granted, any retrial should be limited to

5  the statute of limitations because MGA is entitled not only to add back its dismissed

6  claim retroactively, but to "simply reinstate the 2011 jury's verdicts" on damages

7  and liability, leaving only the statute of limitations issues to be resolved.  Mot. at 15.

8  But the Ninth Circuit *expressly vacated* these verdicts when ruling that MGA's trade

9  secrets claim never should have reached the jury.  *Mattel*, 2013 WL 264645, *2

10  ("Because MGA's trade-secret claim should not have reached this jury, *we vacate*

11  *the verdict* along with the related damages, fees and costs.") (emphasis added).  Far

12  from permitting MGA to "simply reinstate" those verdicts, the Ninth Circuit's

13  vacatur has an established and well-understood effect:  it "clears the path for *future*

14  *re-litigation* of the issues between the parties."  *United States v. Munsingwear, Inc.*,

15  340 U.S. 36, 39-40, 71 S. Ct. 104, 106-07, 95 L. Ed. 36 (1950) (emphasis added);

16  *see also Log Cabin Republicans v. U.S.*, 658 F.3d 1162 (9th Cir. 2011) (cautioning

17  parties against ignoring the significance of vacatur and expressly disapproving of

18  attempt to resurrect "now-void [] factual findings [that] have no precedential,

19  preclusive, or binding effect"); *Dorsey v. Continental Cas. Co.*, 730 F.2d 675, 678

20  (11th Cir. 1984) ("The law of the case does *not* apply to a finding that is later

21  vacated. . . .  Where a judgment is vacated for a new determination, findings

22  previously made that are integral to that judgment are likewise vacated and are thus

23  not subject to the law of the case doctrine." (citations omitted) (emphasis in

24

25  _____

26          [6]  Even if *nunc pro tunc* amendment were possible here, which it is not, MGA

27  first sought leave to amend its complaint to add a trade-secrets claim on September
    16, 2010, not August 16, 2010.

28

1   original)).  MGA's prayer for "reinstatement" is thus flatly inconsistent with the

2   Ninth Circuit's ruling of vacatur.

3       Nor does MGA cite any authority supporting its request.  MGA relies on

4   *Gasoline Products* and its progeny to argue that it may be appropriate, in some

5   circumstances, to limit the scope of a retrial to issues that are separable from issues

6   that "must be tried again."  *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494,

7   499 (1931).  But none of these cases purports to revive verdicts that have already

8   been ordered vacated by a Court of Appeals.  *Gasoline Products* explains that a

9   district court may separate an issue from a trial where "the requirement of a jury

10  trial has been satisfied by a verdict according to law," *id.* at 499, but there is no

11  "verdict according to law" as to the MGA trade secrets claims that Mattel appealed

12  here because the Ninth Circuit vacated those verdicts in their entirety.

13      MGA's authorities purporting to hold that it is appropriate to limit a retrial to

14  statute of limitations considerations are likewise distinguishable and indeed only

15  confirm that it would *not* be appropriate to do so here.  In *Carvalho v. Raybestos-*

16  *Manhattan, Inc*., the Ninth Circuit expressly limited its vacatur to the district court's

17  "decision" that the plaintiff's claims were time barred and stated explicitly that

18  "[s]hould the retrial result in a determination that [the plaintiff's] claim is not time

19  barred, the previous jury award should be reinstated."  794 F.2d 454, 457 (9th Cir.

20  1986); *see also Hasbrouck v. Texaco, Inc*., 663 F.2d 930, 933-34 (9th Cir. 1981)

21  (retrial could exclude consideration of two issues as to which the Ninth Circuit

22  "affirm[ed]" the trial court's disposition").  In stark contrast, the Ninth Circuit here

23  did not instruct that reinstatement could be appropriate and did not affirm any aspect

24  of the trade-secret awards that Mattel appealed; to the contrary, the Ninth Circuit

25  expressly vacated the "trade-secret claim . . . verdict" in its entirety, "along with the

26  related damages, fees and costs."

27      MGA's argument that it would be more *efficient* to simply forgo discovery

28  and a trial on the merits misses the point.  MGA argues that a trial limited to the

1  statute of limitations would "reduce dramatically the scope of issues to be resolved"

2  (Mot. at 14).  To be sure.  But MGA is not entitled to "reduce the scope of the issues

3  to be resolved" when the verdicts from the last trial have been vacated.  The size of

4  the trial record and the Court's familiarity with the issues involved (*see id*.) have no

5  bearing on whether MGA is entitled to preclude Mattel from litigating issues other

6  than the statute of limitations.

7        Finally, MGA fails to show that the prospect of a full trial in state court

8  somehow counsels in favor of granting its motion for leave to amend.  *See* Mot. at

9  14 (arguing that "forcing MGA to re-try the entire trade secrets claim in state court

10  would exacerbate a judicial emergency in the California state courts by necessitating

11  relitigation of this massive matter in an already overburdened and under-funded

12  forum.").  Indeed, MGA offers no reason to support its assumption that it would of

13  necessity face a broader trial in state court; as noted, timeliness is only one of the

14  barriers which Mattel would urge to resolve MGA's claim without the need for a

15  retrial in state court.  And in all events, a vacated verdict cannot be reinstated solely

16  because doing so would save time—at the expense of fairness, not to mention black

17  letter law.

18  **IV.   MGA'S PROPOSED AMENDMENT IS BARRED BY RULE 15**

19        Independently, MGA's proposed complaint should be denied on futility

20  grounds.  *See* Dkt. 8892 at 10 ("The court must consider the following factors in

21  determining whether to grant leave to amend [under Rule 15]:  (1) prejudice; (2) bad

22  faith; (3) undue delay; and (4) futility.").  "Futility of amendment can, by itself,

23  justify the denial of a motion for leave to amend."  *United States ex rel. Lee v.*

24  *SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001).

25        **A.   MGA's Proposed Amendment Is Futile**

26        MGA's trade secret claim is time-barred based on either an actual filing date

27  of February 27, 2013 or a deemed filing date of August 16, 2010 (or September 16,

28  2010, when MGA's cross-motion for leave to amend was actually filed).  "In

California, a claim for trade secret misappropriation 'must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered.'"  Dkt. 8892 at 16 (quoting *Cal. Civ. Code* § 3426.6).  "The statute of limitations on a claim for trade secret misappropriation does not run with each act of misappropriation, but begins to run 'at the time the defendant makes its first adverse use of the trade secret in violation of the alleged confidential relationship.'"  *Id*. at 17 (citation omitted).  This Court previously concluded that "[t]he statute of limitations for MGA's counterclaim in reply was triggered the first time MGA discovered or should have discovered Mattel's alleged misappropriation of trade secret materials from MGA's showrooms."  *Id*.  That was, the record unquestionably establishes, more than three years before any and all of the filing dates urged here.[7]

### 1.  MGA's Claim Accrued More Than Three Years Before It Ever Attempted To Assert It

The pleadings show and undisputed evidence confirms that MGA's claim is time barred.[8]  While MGA has argued that the knowledge of Machado and Brawer cannot be imputed to MGA,[9] MGA cannot hide from *its own* litigation filings,

---

[7]  MGA's argument that the Ninth Circuit rejected Mattel's timeliness argument is wrong.  The Court of Appeals simply did not reach the question, for it had no cause to address timeliness when the trade-secrets claim was not properly before this Court in the first place, as the Ninth Circuit ruled was the case.

[8]  The undisputed evidence confirms the knowledge already pleaded by MGA, demonstrates that MGA cannot in good faith plead around the limitations bar, and is in any event judicially noticeable.  MGA did not contest the authenticity or accuracy of its discovery requests when they were presented on appeal.  The Ninth Circuit considered them reliable, and MGA cannot reasonably dispute them now.

[9]  MGA's proposed amended complaint itself *pleads* that MGA knew of the facts supporting its trade-secrets claim since at least April 2004, when Machado joined MGA after receiving Villasenor's reports containing MGA's alleged trade secrets, Dkt. 10863-1 at 5, and that Ron Brawer, who joined MGA in October 2004,

(footnote continued)

1   which themselves reveal that MGA's claim accrued before August 16, 2007.  On

2   November 22, 2006, MGA demanded that Mattel produce "[a]ll DOCUMENTS

3   REFERRING OR RELATING TO whether MATTEL had access to any exhibits,

4   displays or show rooms containing any of MGA's 'BRATZ' lines prior to its release

5   to the public."[10]  MGA then followed up on August 3, 2007 with a more specific

6   request for "DOCUMENTS REFERRING OR RELATING TO YOUR access, or

7   attempts to gain access, to MGA showrooms, Plan-o-Grams, merchandising

8   displays, Toy Fair displays on false pretenses (including, but not limited to, by using

9   fake business cards)."[11]

10  _____

11  specifically knew of Villasenor's conduct.  Dkt. 10863-1 at 7.  At deposition and

12  trial, Brawer and Machado corroborated this actual knowledge, further testifying

13  that they tried to benefit MGA by recruiting Villasenor around March 2007 to work

    at MGA, more than three years before MGA first purported to file its trade-secrets

14  claim as a compulsory counterclaim-in-reply.  Dkt. 9867 at 53-54 (2/10/11 Trial Tr.

15  Vol. 2); Dkt. 10347 at 6-9, 89-90 (3/31/11 Trial Tr. Vol. 2); Dkt. 10370 at 15, 54,

    77-79 (3/31/11 Trial Tr. Vol. 1); Dkt. 9509, Ex. 38 (11/1/2010 Machado Depo. Tr.

16  Vol. 7 at 1215-16, 1218-23, 1231-33, 1237-39, 1249-54, 1272-75, 1306, 1309-13);

17  Dkt. 9340, Ex. 6 (1/26/10 Brawer Depo. Tr. Vol. 2 at 639-45, 646-51).  MGA's

    argument that Machado's and Brawer's knowledge cannot be imputed to MGA is

18  contrary to law.  *See People v. Forest E. Olson, Inc.*, 137 Cal. App. 3d 137, 140

19  (1982) (recognizing "the well-established rule imputing knowledge of corporate

    officials to the corporation itself"); *O'Riordan v. Federal Kemper Life Assurance*,

20  36 Cal. 4th 281, 288 (2005) ("Nor does it matter that Hoyme acquired the

21  information regarding Amy's cigarette use before he became Kemper's agent.  'The

    principal is charged with knowledge which his agent acquires before the

22  commencement of the relationship when that knowledge can reasonably be said to

23  be present in the mind of the agent while acting for the principal.'" (quoting

    *Columbia Pictures Corp. v. DeToth*, 87 Cal. App. 2d 620, 631 (1948)).  Their actual

24  knowledge of Villasenor's conduct was "present in [their] mind" when they were

    actively recruiting Villasenor to join MGA in order to collect market intelligence.

25  [10]  Dkt. 9346, Ex. 50 (Request No. 31 of MGA's First Set of Requests for

26  Documents and Things to Mattel, Inc., dated November 22, 2006).

27  [11]  Dkt. 9346, Ex. 51 (Request No. 476 of MGA's Fifth Set of Requests for the

    Production of Documents and Things, dated August 3, 2007).

28

Then, on August 13, 2007, again more than 3 years prior to August 16, 2010, MGA *pleaded* an unclean hands defense that expressly relies on the trade show allegations, describing "Mattel's efforts to undermine MGA's business" by "monitoring, 'spying on' or gaining knowledge of MGA's trade secrets, non-public information, non-public activities, unreleased products, and product development; [and] gaining access, or attempts to gain access, to MGA showrooms, Plan-o-Grams, merchandising displays, Toy Fair displays on false pretenses." Dkt. 807 at 20-21.  All of this, which is more than sufficient to show accrual as a matter of law, occurred more than three years before even the earliest filing date that even MGA urges.

Later filings continue to reveal MGA's knowledge.  On September 5, 2007, MGA served Mattel with a Rule 30(b)(6) deposition notice that included a topic (No. 56) in which MGA sought testimony concerning "instances of obtaining access to MGA showrooms, including obtaining access on false pretenses," "access to MGA's products or showroom at any Toy Fair," and "access to retailer's Plan-o-Grams or merchandising display plans or display areas."[12] On January 13, 2008, MGA's counsel specifically identified Villasenor as an intended deponent in an e-mail message to Mattel's counsel.[13]  Two weeks earlier, on January 2, 2008, Mattel produced to MGA a 209-page "New York Toy Fair 2003 Competitive Review" prepared by Villasenor containing many of the purported trade secrets that MGA claims Mattel misappropriated.[14]  MGA specifically identifies this document in

---

[12] Zeller Dec. Ex. C (MGA Entertainment, Inc.'s Notice of Deposition of Mattel, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6), dated September 5, 2007, at A-26).

[13] Zeller Dec. Ex. D (January 13, 2008 e-mail message from MGA's attorney Paul Eckles to Mattel's attorney Michael Zeller and others).

[14] Zeller Dec. Ex. E (January 2, 2008 email reflecting Mattel's production of "2003 New York Toy Fair Competitive Review" to MGA); Zeller Dec. Ex. F (footnote continued)

1  Paragraph 33 of its Proposed Amended Complaint as containing "MGA's trade

2  secrets stolen by Mattel." Dkt. 10863-1 at 12.

3      On May 17, 2008, MGA deposed Matthew Bousquette, formerly of Mattel,

4  and asked him: "Do you know whether or not Mr. Villasenor had any fake business

5  cards?"[15]  After a stay on "Phase 2" discovery that MGA sought and obtained was

6  lifted, MGA asked Mattel's CEO, Bob Eckert, at his deposition on December 18,

7  2009, "Who is Sal Villasenor? . . . . Has anyone from Mattel ever stolen unreleased

8  Bratz product from retail planogram rooms?"[16]  All this culminated in Ron Brawer's

9  deposition in January 2010, attended by MGA's counsel, where Brawer recited the

10  facts supporting MGA's toy fair claim in granular detail.[17]  Brawer's deposition

11  testimony regarding this knowledge was read into the record during the second trial.

12      MGA seeks to rely on the Court's laches order to establish a later accrual

13  date, but as Judge Kozinski observed at oral argument, that is a "different standard"

14  that "doesn't help" MGA.  Zeller Dec. Ex. A (9th Cir. Oral Argument Tr. 24).

15  Fraudulent concealment also does not come into play because MGA indisputably

16  had actual knowledge of its claim.[18]  *Snapp & Assocs. Ins. Servs., Inc. v. Malcolm*

17  _____

18  (Notice by MGA Entertainment, Inc. of Trade Secret Designation Pursuant to Cal. Code Civ. Proc. § 2019.210, dated Aug. 24, 2010).

19  [15]  Dkt. 9340, Ex. 14 (Matthew Bousquette Dep. Tr. at 287:24-288:6 (May 17, 2008)).

20

21  [16]  Dkt. 9340, Ex. 15 (Robert Eckert Dep. Tr. at 781:3-7 (Vol. 4) (Dec. 18, 2009)).

22  [17]  Dkt. 10347 at 6-9, 89-90 (3/31/11 Trial Tr. Vol. 2); Dkt. 10370 at 77-79

23  (3/31/11 Trial Tr. Vol. 1); Dkt. 9340, Ex. 6 (1/26/10 Brawer Depo. Tr. Vol. 2 at 639-45, 646-51).

24  [18]  In addition to being irrelevant, MGA's fraudulent concealment allegations are

25  unfounded.  MGA's Proposed Amended Complaint argues that Mattel was ordered to produce toy fair documents in 2007 because they were "relevant to *MGA's* statute

26  of limitations defense," Dkt. 10863-1 at 10 (emphasis added), but nothing about this

27  evidence was at all relevant to when Mattel learned that Carter Bryant created Bratz while employed by Mattel.

28

MATTEL'S OPPOSITION TO MGA'S MOTION FOR LEAVE TO AMEND COMPLAINT *NUNC PRO TUNC*

*Bruce Burlingame Robertson*, 96 Cal. App. 4th 884, 890-891 (2002).  Nor can MGA rely on equitable tolling because its trade-secrets claim was first asserted after the limitations period expired, and "dismissal of that action without prejudice vitiates any such tolling."  *Taylor*, 2012 WL 6878887, at *6.

### 2.    Rule 15 Does Not Allow Relation Back

MGA may attempt to argue that its claim relates back to the filing of MGA's initial complaint on April 13, 2005.  But the requirements for relation back plainly are not satisfied here.  Under Rule 15(c), a claim relates back only if it arises "out of the conduct, transaction, or occurrence set out" in the previous complaint.  "Claims arise out of the same conduct, transaction, or occurrence if they 'share a common core of operative facts' such that the plaintiff will rely on the same evidence to prove each claim.'"  *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008) (citation omitted).  "The requirement that the allegations in the amended complaint arise from the same conduct, transaction, or occurrence is meant to ensure that the original pleading provided adequate notice of the claims raised in the amended pleading."  *Id*. at 1133 n.9.  Here, MGA's original complaint asserted claims for unfair competition, trade dress infringement, dilution, and unjust enrichment, all arising from Mattel's alleged infringement of MGA's distinctive packaging and resulting interference with MGA's business relationships.  *See* Summary Judgment Order, 782 F. Supp. 2d at 941 (describing MGA's original claims), 1003-1012 (addressing trade dress infringement and dilution claims) & 1012 (describing basis for unfair competition claims).  None of MGA's allegations in the initial complaint asserted trade secret misappropriation or any other claim arising from Mattel's alleged improper infiltration of trade shows and acquisition and misuse of MGA's confidential information disclosed in those shows.  As this Court subsequently confirmed, "there has never been a suggestion that the *common law unfair competition* claim [asserted in the original complaint] encompasses [the trade show] conduct, which is the subject of MGA's counterclaims-in-reply."  Summary

1   Judgment Order, 782 F. Supp. 2d at 1013 (emphasis in original).   Because the trade

2   secret claim cannot relate back to the filing of the 2005 complaint, it is barred.[19]

3       **B.      Allowing MGA To Amend Following Trial, Judgment And Appeal**

4               **Would Needlessly Prolong This Suit**

5           This suit is essentially over and done with, and it thus is a poor vehicle for

6   any reassertion of MGA's state-law trade-secrets claims.   As the Ninth Circuit put it

7   in *Beverly Hills Bancorp*, "[t]he general rule that leave to amend under rule 15

8   should be freely granted . . . will not be extended without limit when a rule 15

9   motion is brought after a claim has been fully litigated on the merits through appeal.

10  At some point, there must be finality.   Permitting amendment in this case would not

11  enhance finality, but instead would encourage seriatim judgments in the same basic

12  dispute, as a plaintiff continues to put forth new theories of recovery."   752 F.2d. at

13  1338.   "Moreover, a general policy of permitting amendment after losing an appeal

14  would not enhance rule 1's mandate that the Federal Rules be 'construed to secure

15  the just, speedy, and inexpensive determination of every action.'"   *Id*. (quoting Fed.

16  R. Civ. P. 1).   These sentiments apply equally here.   Mattel respectfully submits that

17  amendment is barred as a matter law for the reasons set forth above.   But

18  considerations of delay and prejudice also favor putting an end to this action, and

19  adhering to the Ninth Circuit's mandate by dismissing the claim without prejudice to

20  MGA's filing the claim in a separate action and in a court that has jurisdiction.

21                          **Conclusion**

22          For the foregoing reasons, Mattel respectfully requests that the Court deny

23  MGA's motion for leave to amend.

24  _____

25      [19]   In addition, any relation back arguments would be foreclosed at this point, for
    relation back plainly was before the Ninth Circuit on appeal and MGA made no
26  effort to support any form of relation back other than compulsory counterclaim-in-
    reply relation back.   *See, supra,* at 12 (arguments not raised as alternative grounds to
27  support a judgment are waived).

28

1

2    DATED: March 11, 2013                QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP
3

4

5                                         By  /s/ Michael T. Zeller
6                                             Michael T. Zeller
                                              Attorneys for Mattel, Inc. and
7                                             Mattel de Mexico, S.A. de C.V.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. CV 04-9049 DOC (RNBx)
MATTEL'S OPPOSITION TO MGA'S MOTION FOR LEAVE TO AMEND COMPLAINT *NUNC PRO TUNC*