# EXHIBIT A

### *Mattel v. MGA*

### **Main Appeal Oral Argument Rough Transcription**

| Speaker | Discussion |
|---|---|
| Kathleen Sullivan | Chief Judge Kozinski and may it please the Court.  Kathleen Sullivan for Mattel. I'd like to talk about three issues today, just the statute of limitations, the toy fair trade secret damages calculation, and the attorney's fees calculation. |
| | To begin with the statute of limitations, this entire toy fair trade secret trial, which resulted in $88.5 million doubled, $85 million after remittitur.  That whole trial should never have happened, because MGA's toy fair trade secret counterclaim in reply was untimely. |
| | Now, this counterclaim and reply was not filed until August 16th of 2010.  And it's plainly untimely under the relevant state statute of limitations CUTSA, which is a three-year statute of limitations with a discovery rule based on reason to suspect.  It's plainly untimely unless it's a compulsory counterclaim in reply that relates back to Mattel's trade secret counterclaim filed January 12th, 2007. |
| | Now why it's so important that it must be a compulsory counterclaim in reply is that MGA was plainly time-barred as of August 2010. |
| Judge Trott | Do they admit that? |
| Kathleen Sullivan | They make a, Judge Trott, what I think is a completely untenable argument. They don't quite admit it.  They say oh, well, we couldn't have found out, really, about these toy fair trade secrets until July of 2010 when we got discovery. |
| Judge Wardlaw | When do you think they should have reasonably been on notice? |
| Kathleen Sullivan | At a minimum, Judge Wardlaw, in April or October 2004. |
| Judge Wardlaw | And that was, what happened on that day? |
| Kathleen Sullivan | That's when Brawer and Machado defects to MGA, and don't take it from me, take it from MGA's pleading at ER1132 and 1134, where they say -- |
| Judge Wardlaw | (interrupts) I want to ask you something about that though.  Didn't Brawer and Machado have non-disclosure agreements when they left Mattel? |
| Kathleen Sullivan | Not to protect MGA's trade secrets, and -- |
| Judge Wardlaw | But to not disclose the activities of Mattel's marketing intelligence operations. |
| Kathleen Sullivan | Well, Your Honor, what MGA has pleaded is that they did know, and that knowledge is imputed to MGA.  There's no doubt under *Cypress Semiconductor* |

| Speaker | Discussion |
|---------|-----------|
| | that their knowledge is imputed to MGA.  And what MGA has pleaded is that they knew about the toy fair on 1130, ER1132 and 1134.  It's MGA's own pleading.  MGA has hoist on its own petard so to speak. |
| Judge Trott | Maybe only the two people. |
| Kathleen Sullivan | The two Mattel defectors. |
| Judge Trott | Right. |
| Kathleen Sullivan | Machado and Brawer, who go over to MGA, are pleaded to have known about toy fair. |
| | Now, Judge Wardlaw, if there's any doubt I'd refer you also to ER1086 - 90 - |
| Judge Wardlaw | I'm just having a conceptual problem with, granted, they defected.  There seems to be a lot of defections going on here.  But they defected, but they're under an agreement with Mattel not to disclose certain things that they've learned while they were at Mattel to their new employer, right? |
| Kathleen Sullivan | But Your Honor, MGA pleads that they knew that they were at their new employer.  That knowledge is all that's needed to impute to MGA - |
| Judge Wardlaw | (interrupts) your going on imputation -- |
| Kathleen Sullivan | Your honor -- |
| Judge Wardlaw | -- imputation, that's your -- |
| Kathleen Sullivan | -- imputation, but Your Honor, it's more than that; the compulsory counterclaim role here.  And let's remember, this is an extreme exception, a counterclaim in reply is an exception.  It's a very strange and exotic pleading.  It's an exception to the usual rule that you have to amend your complaint.  So, MGA's coming in, in August of 2010, it's hired these people away in 2004.  It's writing detailed toy fair discovery requests as early as November 2006.  So, the idea, it's fanciful to think that MGA's own pleadings don't give a basis for you to say they had reason to suspect.  And remember *Cypress Semiconductor*, California law, is reason to suspect.  They don't have to have gotten the discovery in.  They just have to have asked -- |
| Judge Trott | Is imputation anything like a presumption?  In other words, can you rebut imputation in any way? |
| Kathleen Sullivan | Your Honor, it's a matter of state law, but it's a rebuttable presumption, but there's nothing in the record to suggest that this knowledge should not be imputed to MGA, and through Isaac Larian the joint CEO it's imputed to all the |

| Speaker | Discussion |
|---|---|
| | MGA entities. |

But what I want to focus, Your Honor, is on Rule 13, and we haven't gotten to this yet. It's the language of transaction and occurrence. Transaction or occurrence. Rule 13 which is the relevant rule says that a counterclaim is compulsory only if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. So, Judge Wardlaw, Rule 13 is really asking us not to look at knowledge. It's asking us to look at the pleadings. And the question is, are the pleadings about the same, this is your word, this Court's word, the same operative set of facts? And the pleadings are not. Mattel is suing MGA because these defecting employees allegedly stole trade secrets from Mattel's own computers and brought them to their new employer MGA.

MGA is pleading a very different set of operative facts. It's pleading that nefarious Mattel employees in plain disguises and fake business cards infiltrated MGA's toy fairs and stole toy fair trade secrets. Those are two different sets of operative facts.

| Judge Trott | Did Judge Carter ever grapple with the definition in *In re Pegasus* that requires the same aggregate set of operative facts, or did he simply say these are logically related? |
| Kathleen Sullivan | He said they're logically related, Your Honor, and he said, at discovery -- I'm sorry -- at the motion to dismiss stage -- and I want to quote this to you. This is very important. I think this is a dispositive statement by Judge Carter at the motion to dismiss stage. So, Judge Trott, even if he used the right standard, here's what he said. This is ER236 - 237. He said MGA does <u>not</u> expressly allege that Machado and/or Brawer brought market intelligence group information, that's the toy fair stuff, to MGA from Mattel. |

Now once Judge Carter reached that, Your Honor, he should, it should have been the end of it. We think he erred on the side of logical relationship, the test is operative facts, *Pegasus Gold* couldn't be clearer. But he also made, once he made that finding as to the pleadings, that should have been dispositive. What he did, Your Honor, is he said, well maybe discovery will show some kind of connection. Maybe Mattel's defecting employees stole MGA's own trade secrets and brought them to MGA, which is a sort of absurd proposition since MGA already had its own trade secrets -

| Judge Wardlaw | But I absorbed from his Order was that he was applying the more liberal, flexible, logical connection test, and he thought it would be in the interest of judicial efficiency, and not wasting resources to just tie this up altogether. |
| Kathleen Sullivan | Your Honor, we think he made two errors at the pleading stage. Number one, he didn't treat the dispute – two *legal* errors at the pleading stage. You are both |

| Speaker | Discussion |
|---|---|
| | correct, Judge Trott and Judge Wardlaw, that he applied too liberal, a logical relationship standard.  This Court is clear, logical relationships -- |
| Judge Wardlaw | I didn't say it was too liberal.  I'm asking you about it, because you know the *Lazar* case, in the bankruptcy context, applied that kind of a role. |
| Kathleen Sullivan | Right.  But *Lazar*, logical relationship is defined in *Lazar*, quoting *Pinkstaff* as, here's the definition of logical relationship, restated in *Pegasus Gold*, is a claim arises from the same aggregate set of operative facts as the initial claim.  That is the definition of logical relationship.  A logical relationship exists only with the same set of operative facts.  If you don't have the same set of operative facts, you don't have a logical relationship.  He also -- |
| Judge Trott | Well, the same operative facts serve as the basis of both claims, or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant. |
| Kathleen Sullivan | And, Your Honor -- |
| Judge Trott | And they keep talking about facts, facts, facts.  It seems to me that Judge Carter may have been driven by the idea that he didn't want to have two trials. |
| Kathleen Sullivan | But that, Your Honor -- |
| Judge Trott | But one trial is out if the statute is run.  Am I right? |
| Kathleen Sullivan | If the statute had run, then the second trial would have, the second trial never should have happened.  The toy fair claims never should have been tried.  And I want to address this point about case management and judicial economy.  Let's go back and remember, case management and judicial economy, that might pertain if we were talking about the role of permissive counterclaims.  We have permissive counterclaims for judicial economy.  Compulsory counterclaims are not about judicial economy.  And the only way, remember, this is an exotic pleading, they are time-barred from amending their original complaint.  So, the only way they get relation back is a compulsory counterclaim in reply.  It has to be compulsory.  It can't be permissive.  And case management is never a reason to find a claim, a counterclaim compulsory. |
| | Let me give you a simple illustration, Your Honor.  Suppose we had tried our case separately.  Suppose Mattel came in and just tried its own trade secret theft claims separately.  And there was a judgment, could have been for us, could have been against us.  And we could have won, yes, Machado and Brawer stole your trade secrets from your computers; or if could have been against us.  No, they didn't. |
| | Now suppose MGA came along and had a timely, a timely, claim that Mattel |

| Speaker | Discussion |
| --- | --- |
| | stole trade secrets from its toy fair.  MGA's argument is, they would have been precluded, that those are so much the same transaction or occurrence, that they would have had to forfeit their counterclaim if they hadn't brought it as a counter, sorry, forfeit their new claim, if they hadn't brought it as a counterclaim-(interrupted by Judge Wardlaw) |
| Judge Wardlaw | Perhaps the -- I mean, if you read Wright and Miller, there are four different standards that seem to be in play.  And that's kind of the *res judicata* standard. |
| Kathleen Sullivan | That is, Your Honor, it's your, it's this Court's standard and your opinion in *Mitchell v. CB Richard Ellis*, 611 F.3d 1192 where you restated that.  You said, where a claim was compulsory, where a counterclaim was compulsory at the time the earlier claim was brought, it's forfeited at a future time.  It can't be brought. It's precluded, and here what, the logic of Judge Carter's argument and MGA's argument is, if we had a separate judgment on our trade secret claims, if it's the same transaction or occurrence through this loose, logical relationship test, they would have brought it, and I think you would have thrown us out.  I think if Mattel came forward and said they are precluded because they didn't bring toy fair claims having nothing to do with Mattel computers as a counterclaim to our claim about thefts from a computer by different actors, at a different time, and a different relationship, there's no way you would have found that claim precluded, and therefore there's no way that you can find this counterclaim in reply -- |
| Judge Trott | Lurking under all of this is -- |
| Kathleen Sullivan | -- is compulsory here. |
| Judge Trott | Lurking under all of this is a dispute about the standard of review that we're dealing with. |
| Kathleen Sullivan | Absolutely de novo, Your Honor. |
| Judge Trott | You say de novo -- |
| Kathleen Sullivan | Not even close. |
| Judge Trott | -- and the other side says absolutely abusive discretion, and you -- |
| Kathleen Sullivan | Your Honor -- |
| Judge Trott | In your reply brief, you've been very -- do you want say anything else in addition to your reply brief? |
| Kathleen Sullivan | Well, Your Honor, I just go back to *Pegasus*, I mean *Pegasus Gold* questions of subject matter jurisdiction are reviewed de novo, it's a subject matter jurisdiction question, it's about the pleadings under Rule 13.  You're in the exact same |

| Speaker | Discussion |
|---|---|
| | position as Judge Carter is, to look at the pleadings, and again I ask you, think about it in my preclusion hypo.  What if it were the other way around, they're coming in and saying toy fairs, we want to make a toy fair claim, would it be precluded.  Your Honor, I'm running out of time for the other issues. |
| Chief Judge Kozinski | I have a couple of questions.  One of them is, you mentioned ER1086 - 1090 a couple of times, but you didn't get a chance to point to what it is there that you found relevant. |
| Kathleen Sullivan | I'm sorry, Chief Judge Kozinski, which page? |
| Chief Judge Kozinski | It was, I think it was ER1087 through 1089. |
| Kathleen Sullivan | Okay.  I offered you … |
| Chief Judge Kozinski | …it's a…it looks like a Request for Admissions, perhaps. |
| Kathleen Sullivan | Right, Your Honor.  It's a discovery request.  And what I asked – what I called to your attention there – the 1086 to 1090 is MGA's discovery requests to Mattel.  But the reason we cite it to you is that it's a pre-August 2007 indication that they had reason to suspect the Toy Fair conduct.  And the reason I call that your attention is that it's extremely detailed.  It talks about plan-o-grams and the layout of toy fairs.  And the reason we cite it, is that if MGA had enough knowledge of toy fair to make that discovery request, if it's counsel speaking for the corporation, that's addition reason.  But, I'd say to you… |
| Chief Judge Kozinski | That's why, you reach my second question.  Why isn't that a jury question?  Whether they satisfy the discovery.  Why isn't that a jury question. |
| Kathleen Sullivan | Your Honor, if Judge Carter had thought there were issues of fact as to their knowledge, he could have put that to the jury.  Obviously, you can do statute of limitations factual questions before a jury.  But he erred legally by taking the whole question under the wrong standard.  He said logical relationship was not operative. |
| Chief Judge Kozinski | Well, let's say we accept that argument.  Why don't they -- I mean, the statute of limitations is the statute of limitations.  You go back, what?  Three years in California?  Whatever the statute is.  But then there is the discovery rule. |
| Kathleen Sullivan | That's right. |
| Chief Judge Kozinski | And you can say, well, but we didn't have a reasonable chance to discover until some point, you know, within the statute of limitations or within the time.  And, isn't that the kind of thing that gets decided by a jury? |

| Speaker | Discussion |
|---|---|
| Kathleen Sullivan | Well, we think not, Your Honor.  Because the pleadings here -- it would if the pleadings were ambiguous.  But the pleadings are not. |
| Judge Trott | You're saying that there's simply no genuine issue of material fact. |
| Kathleen Sullivan | That's exactly right, Your Honor. |
| Judge Trott | Did you ask that it go to a jury? |
| Kathleen Sullivan | We didn't ask that it go to a jury.  No.  And, Your Honor, it's not 1086 that's the most important cite.  It's ER1132 and ER1134.  That's MGA's own Compulsory Counterclaim and Reply filed on August 2010.  It's a hoist on their own petard problem.  They cannot plead that Brawer and Machado knew about the toy fair.  They can't plead that and then say -- 'Oh, we had no reason to suspect Toy Fair.'  That's -- that is in -- that's unacceptable.  And, Your Honor, Rule 13 refers to at the time of service.  It's a rule about what you knew at the time of service.  They -- you can't amend the Compulsory Counterclaim in Reply.  You've got to get it right and have it relate back as a compulsory counterclaim to the pleading it's responding to.  Excuse me, Judge. |
| Judge Wardlaw | So, you're going -- you're relying on the pleadings.  I'm just wondering if there's any evidence in the record that Machado and Brawer informed anybody at MGA. |
| Kathleen Sullivan | And that's the amazing thing, Your Honor.  There's no evidence to suggest that there is factual overlap.  Remember, the key is -- remember it's not who knew what.  What we have to prove.  What MGA would have to have proved in evidence to make this a compulsory counterclaim would have been that the operative facts of the toy fair -- alleged toy fair trade secret thefts -- were the same operative facts as the alleged Mattel defecting employee trade secret thefts.  And Judge Carter surmised -- Judge Trott, you asked -- 'what did he do at the motion to dismiss stage'?  He said 'well, maybe discovery will prove some connection.'  And the answer is, it definitely did not.  When he got to the summary judgment, he said, 'Oh well, there's no proof of that, but you should have raised that at the pleading stage.'  Which is a real Catch-22 because, of course, Mattel did raise that at the pleading stage, and we said the pleadings should make this a self-contained -- the pleadings were their own refutation of the compulsory nature of this counterclaim.  It must be compulsory.  And Judge Wardlaw, I just want to emphasize -- both Judge Wardlaw and Judge Trott -- you asked about case management.  Compulsory counterclaims in reply are not subject to judicial economy or case management rationale.  They are about reviving a stale claim that was dead.  So dead you couldn't amend your pleadings.  And they are about a party's substantive rights.  Here our right is not to be subjected to a new Toy Fair trade secret trial pleaded in 2010 where the very people you hired away who were the alleged malefactors were hired away in 2004.  It's ludicrous.  And the entire trial should have been rejected as time- |

| Speaker | Discussion |
|---------|------------|
| | barred.  You would have to depart from the compulsory counterclaim test to find any other way. |
| Judge Trott | Let's say, as a matter of discussion, we don't buy the imputed argument.  What's your fall-back from there to show that they were on notice or should have been on notice outside of the few years? |
| Kathleen Sullivan | Well, Your Honor, we think that California law -- which is the governing law here in the world of *Erie* -- requires you to impute.  Because *Cypress Semiconductor* -- |
| Judge Trott | I'm asking what happens if we don't buy that. |
| Kathleen Sullivan | Absolutely.  If you want to reject that, Your Honor, that's why I cited you to the passage Chief Judge Kozinski asked about at 1086.  That's MGA's counsel writing you a Toy Fair monologue in their discovery request. |
| Judge Trott | And what's the date of that? |
| Kathleen Sullivan | Sorry? |
| Judge Trott | What's the date of that? |
| Kathleen Sullivan | That's November 2006.  There's an additional one on August 3, 2007. |
| Judge Trott | August 3.  Okay. |
| Kathleen Sullivan | 3.  Which precedes August -- |
| Judge Trott | Which precedes August 16.  Alright. |
| Kathleen Sullivan | So that -- the reason I gave you that -- |
| Judge Trott | That was the one date I wasn't aware of.  I saw the August 16, but then it's referred to as August, and I was wondering what day it was. |
| Kathleen Sullivan | That's right, Your Honor.  I'm happy to get you that cite if you like. |
| Judge Trott | No, I'm fine. |
| Kathleen Sullivan | But November 2006, the request in November 2006 and August 3, 2007 are alike.  And the key reason I cited them to you is that they are so detailed.  And MGA -- if you don't want to impute Machado and Brawer's knowledge to the company -- if you think maybe they were bound by their Mattel obligations, you certainly must impute MGA's own counsel's inquiry.  Now, I know that MGA will say, 'Well, we couldn't get discovery until July '10, July 2010' and Judge Trott, they don't concede it.  The answer is they don't concede it.  They have, what I think, |

| Speaker | Discussion |
| --- | --- |
| | is a very feeble argument. 'Oh, we didn't know for sure until July 2010 when Mattel responded to some discovery requests.' But that's not the California standard. |
| Judge Trott | So, your side lied and deceived and covered-up. |
| Kathleen Sullivan | Well, I'm sure we'll hear a lot about that, Your Honor, from MGA. But-- |
| Judge Trott | I've read a lot about it already. |
| Kathleen Sullivan | But, for your purposes, this is a very important pleading case that is subject to your de novo review. It's about Rule 13. It's about counterclaims in reply. They are not a world for permissive counterclaims. They are not a world about case management or judicial economy. They are about our substantive rights. We should not have been the subject, as a matter of subject matter jurisdiction, to this entire toy fair trade secret claim. |
| Chief Judge Kozinski | Okay. Let me make sure I understand. Let's say we buy your argument about the compulsory counterclaim. I'm not saying we will. But just -- |
| Kathleen Sullivan | We would be very gratified, Your Honor. |
| Chief Judge Kozinski | Maybe not. It depends on what follows next. |
| Kathleen Sullivan | Alright. |
| Chief Judge Kozinski | But I just want to get us on that page so that I can think my way through it. Does that get you home free? Or are you still subject to a claim on their part. And I'll ask opposing counsel the same question, as you can imagine. That they say well you were subject to the discovery rule. Never mind the compulsory counterclaim. And it should have been discovered long before -- within the -- when do you think -- does the compulsory -- does the discovery rule come into play? |
| Kathleen Sullivan | Your Honor, we believe not. We believe that there is no -- as Judge Trott said earlier -- there is no material difference of relevant fact. Their own pleadings should be dispositive of the counterclaim. |
| Chief Judge Kozinski | It's really a slightly different question. Was that presented to the District Court? Just a plain discovery rule claim. Was that presented to the District Court? Is it before us? Is it in the case? Or is the compulsory counterclaim the beginning? As I understand, it was raised before the District Court. There were alternative claims. The District Court bought the compulsory counterclaim. |
| Kathleen Sullivan | Yes. |

| Speaker | Discussion |
|---------|------------|
| Chief Judge Kozinski | Did not rule on the discovery rule. |
| Kathleen Sullivan | Your Honor, what the District Court did is he, the District Court allowed the counterclaim in reply to go forward in either of two alternative ways.  He said, 'I'm not dismissing it.'  He rejected as a matter of law our motion to dismiss.  That should have been granted.  You should reverse its de novo.  And the case should be over.  And you should order it dismissed.  His alternative was, 'Well, you can go back and amend -- you MGA can go back and amend your pleading, your complaint against Mattel, which was filed in Aug -- I'm sorry -- on April 13, 2005.'  Now, you notice they didn't do that.  Why didn't they do that?  Because they can't.  They are time-barred.  They are time-barred because April 13, 2005 is after they've hired Machado and Brawer away.  So they can't go back and amend the complaint. |
| Judge Wardlaw | I'm concerned about your imputation argument because I think there's a footnote in MGA's brief that talks about how that knowledge is only imputed if they're, if they gained the knowledge at the time when they are an employee and they cite that as an alternative basis for an argument. |
| Kathleen Sullivan | And, Your Honor, in our Reply Brief, we cited you the California law that says that's incorrect.  That, actually, California law, which governs the imputation question, holds imputed to the corporation knowledge held by the employee whenever it was acquired -- whensoever it was acquired.  So, the fact that the knowledge was acquired when they were at Mattel is irrelevant.  Their knowledge, once they hold it, now that they are at MGA, is imputed to MGA.  So, with respect, we don't think there is anything, Chief Justice Kozinski, to send back.  The error was legal.  It's reviewable on the pleadings.  It's an extraordinary situation where MGA pleaded itself into a pleading cul-de-sac that it can't get out of.  It's pleaded the very knowledge of its own employees which is imputed to MGA.  If you don't believe that, take their counsel in November 2006, when they filed the discovery request and, at that point, the compulsory counterclaim and reply is dead.  Now, Your Honor, if you send it back -- you notice they didn't amend their original April 2005 complaint.  They can't.  That's time-barred.  So, if you were to let this trade secret trial surmount Rule 13, it would be the first time ever that a stale claim -- dead in the water -- can't even amend your original complaint to plead facts to bring it back to life -- is revived as a compulsory counterclaim in reply, where it involved two totally separate sets of fact.  And I just ask you to think about my hypo.  If we won on our trade secret claims, would you really preclude them from coming in and saying 'Hello, we've got this totally different story to tell you about Toy Fair fest.  It's a great story.'  And you would say -- you wouldn't say to them, 'Well, you forfeited that by not pleading a counterclaim.'  You would say, 'It sounds like a good story.  It sounds totally new.'  And that's the case. |
| Judge Wardlaw | But the opposite -- I mean, just as a matter of real world reality -- if they knew |

| Speaker | Discussion |
|---|---|
| | about it in -- and set aside the should've known -- if they actually knew about it when this case first went to trial, what would be their incentive not file the counterclaim. |
| Kathleen Sullivan | They should have amended their pleadings, Your Honor. |
| Judge Wardlaw | Or amended their pleadings.  Well, if they actually knew about it, not should've known, but if they actually knew.  Why wouldn't they? |
| Kathleen Sullivan | Judge Wardlaw, I've asked myself the same question.  When counsel or a party sits on its rights and doesn't do what it could have done in a timely fashion, you should not bend over backwards to find some novel first-time theory to save them from that strategic choice.  I have no idea why they didn't plead it.  And, again, it's not 'should have known.'  It's 'reason to suspect'.  It's a very low bar in California.  'Reason to Suspect'.  And, if you don't think their own pleadings and their own discovery requests against reason to suspect -- you know, that's why there's no facts, Your Honor.  This is not a case where we have to look for the red flags, and we have to find out what employees knew what and do the kind of thing you do before a jury.  You can do this within the four corners of the pleadings in this case.  Your Honor.  Your Honor, do you want to hear anything about trade secret damages? |
| Judge Wardlaw | We should probably -- How about rebuttal?  If -- |
| Kathleen Sullivan | Well, if I could speak to damages in rebuttal, I'd be very grateful. |
| Chief Judge Kozinski | Well, probably if you are going to speak to it, you probably should speak now because otherwise the other side doesn't get a chance to respond. |
| Kathleen Sullivan | Alright, Your Honor.  Thank you for giving me the extra time.  I'm very grateful.  I just wanted to be sure we handled statute of limitations. |
| Judge Wardlaw | We assumed this case would go over. |
| Kathleen Sullivan | Thank you, Your Honor.  I want to focus on damages.  We've made arguments.  It's laid out in detail at pages 16 to 18 of our brief, why we think trade secret liability has insufficient evidence.  But I wanted to focus here on damages.  And the key is that if you go to the verdict form.  You look at -- the jury found not one lump-sum form of damages.  It didn't find lump sum $88.5 million in damages or lump sum 85.  Beginning at ER268, you see a verdict form that was particularized product-by-product at MGA's request.  MGA trade secret by MGA trade secret -- |
| Judge Wardlaw | I thought it was a pretty good verdict form.  The way it had every single question answered.  Every single aspect of what a trade -- a misappropriation of trade |

| Speaker | Discussion |
|---|---|
| | secret would be. |
| Kathleen Sullivan | It's very particular, Judge Wardlaw.  And that's why this Court's decision in *First Alliance*, *In re First Alliance*, which is the most important case for purposes of looking at this verdict form, gives you such a great basis to enter judgment for Mattel in whole or in part.  Because this is the jury form in which the jury has calculated an average trade secret-by-trade secret damages amount of $3.4 million to the dollar, to quote *In re First Alliance*.  And there is no other plausible explanation for where they got that number, other than that they took $3.4 million from MGA's own damages expert Malackowski's testimony.  He said, 'Well, some trade secrets on his list of 26 average out to 3.4.'  Now here, as in *First Alliance*, that average is based on improper legal reasoning.  It's an improper theory of damages.  And why is that?  Because Malackowski never testified to $3.4 million for each trade secret the jury found.  The jury found 26 trade secrets. It turned out two of them were the same; so it's reduced to 25.  The jury found 25 trade secrets.  11 of them were not on Malackowski's list.  Now, remember what Malackowski is doing is calculating unjust enrichment as so-called 'head start damages'.  Right?  The only theory he presents is infringer's profits.  There is no lost profits theory.  And he says, 'Mattel's profits of $3.4 million per trade secret' -- he never said that, by the way.  He said Malackowski gave testimony about only two trade secrets, Winter Wonderland and Bratz Diamonds.  There is not a single other product on this list that he has testified about.  He waved his hand at a chart, a very detailed chart, and did that chart have $3.4 million per trade secret?  It wasn't admitted into evidence.  It was a demonstrative.  No, it didn't. It had very different trade secret numbers running between $20,000 and $16.4 million.  And he said, and I quote, this is MGA's own expert, "My bottom-up analysis is very fact specific and can only be done on a product-by-product basis."  That's ER641 and 643.  Now, when the jury found 11 products that weren't on his list, they were doing exactly what this Court has cautioned against. They were penalizing Mattel for legitimate competition.  If Malackowski has not calculated $3.4 million for 11 of these products -- in fact, he hasn't calculated any head-start damages for 11 of those products -- the jury has penalized Mattel to the tune of $3.4 million per trade secret for perfectly lawful competition.  There is no other basis in evidence.  Now, so in other words, he only testified to two, the evidence that most supports two, and he didn't testify as to 11 of these trade secrets the jury concluded.  There's no dispute that 11 of the jury secrets, it may have tried to re-create the chart, but it missed.  It threw the darts and it hit the wrong dots. |
| Judge Wardlaw | What was the improper theory of law that the jury followed? |
| Kathleen Sullivan | It was -- |
| Judge Wardlaw | As in *First Alliance*. |

| Speaker | Discussion |
|---------|-----------|
| Kathleen Sullivan | Your Honor, we think the jury didn't, it was a pure infringer's profits theory, but it was infringer's profits without legal support of unjust enrichment from a head start advantage.  And so, now it can't be salvaged with another theory.  And this is a case in which Judge Carter, who was reversed in *First Alliance*, does here exactly what was reversed in *First Alliance*, and that is, to quote this Court, bends over backwards to try to find a potentially valid basis in the record for the jury verdict.  So, you'll recall, I won't belabor all of them, but he says well, maybe it was lost profits.  Can't be lost profits.  Malackowski never testified to any lost profits, and there is no lay testimony about lost profits.  In a desperate effort to try to find some, MGA points to SER198, and it says well, the CEO of MGA, Isaac Larian, said we lost sales, profits and shelf space.  Well, that is not a quantifiable theory of lost profits. |
| | And the other thing that the district court said, I'll just cite two of them, he says well maybe top down damages could salvage the verdict.  Remember Malackowski has another theory.  He calls it top down.  He says that's an aggregate amount that Mattel profited in some inchoate way from having some kind of unstated advantage other than head start product by product.  Well, that can't work.  First of all, Malackowski himself said that top down -- he said maybe there's $149 to $202 million dollars of top down damages.  Malackowski, MGA's expert himself said ER630 that "my top down analysis does not work unless all 114 claimed trade secrets are found to have been both protectable trade secrets and misappropriated.  It's gone.  Top down is gone, and MGA admits it in further excerpts of record page 50 -- further excerpts of record page 50 -- MGA admits that the jury didn't follow top down.  But think about how ludicrous it would have been if they did.  114 trade secrets at $3.4 million dollars a pop gets you to $387.6 million which is double Malackowski's highest top down number of $202 almost. |
| Judge Trott | I'd like to take you back a couple minutes and ask you a question.  You obviously know the record better than I do, and I hope I know the record as well as you do by the time I have to decide the case, but you keep talking about the November 2006 discovery request.  That's what put them on notice outside the three-year window.  What are you referring to?  The business where they say access or attempts to gain access to MGA's showroom, planograms, merchandising displays, toy fair displays, false pretenses including but not limited to using fake business cards?  Because that's in August 2007. |
| Kathleen Sullivan | But, Your Honor, you're reading from August 2007 or from 1086? |
| Judge Trott | I'm reading from your brief.  Where is the November 2006 discovery request?  Is that the same thing that you're referring to because I couldn't find that the November 2006 in your briefs, maybe I missed it. |
| Kathleen Sullivan | Okay, so, Your Honor , let me refer you to ER1093.  This is the August 2007 |

| Speaker | Discussion |
|---|---|
| | one.  The one I referred you to before begins at -- |
| Judge Trott | Yeah.  Okay.  That's the August 2007 one.  That's why I'm having trouble finding the November 2006 one because you don't talk about that in your briefs at least I can't find it. |
| Kathleen Sullivan | So, Your Honor , if I could refer you to ER1088. |
| Judge Trott | ER1088.  Is that referenced in your briefs?  I couldn't find it. |
| Kathleen Sullivan | Yes, it is, Your Honor. |
| Judge Trott | Where? |
| Judge Kozinski | So that's MGA's First Set of Requests for Production of Documents? |
| Kathleen Sullivan | That's right.  For example, Your Honor, on ER1088, Request No. 31 "all documents referring or relating to whether Mattel had access to any exhibits, displays or showrooms containing any of MGA's Bratz lines prior to release to the public."  That's a Toy Fair discovery request, and that's from the November -- I believe if I am correct -- that's from the November 2006 request.  Your honor, we rest first on the pleadings.  The key about those two requests, Your Honor, is -- those discovery requests -- is that they advance the same reason to suspect.  They're just reinforcement of the pleading.  You could decide the case without reaching them just based on the pleadings. |
| Judge Trott | Just by reading the pleadings.  Thank you. |
| Kathleen Sullivan | Your Honor, to summarize --  you've given me a lot of time -- just to summarize.  We think *First Alliance* requires you to rebut the damages. |
| Judge Kozinski | Why don't you, why don't you reserve your summary for rebuttal.  We'll give you a little time. |
| Kathleen Sullivan | Thank you, Your Honor. |
| Judge Kozinski | You'll have  more than double the time.  All right, we'll hear from the MGA. |
| Clifford Sloan | May it please the court.  I'm Clifford Sloan for the MGA Appellees.  I'd like to address first the arguments about the compulsory counterclaim, and Ms. Sullivan has talked a lot about the timeliness issue, and I'm going to briefly address that.  But then I want to get right to this question about whether it was a compulsory counterclaim because we believe that it clearly is a compulsive counterclaim; that Judge Carter was correct under either the de novo standard or an abuse of discretion standard, and the timeliness issue is a bit of a distraction because you don't even get to that unless you find that it was not a compulsory counterclaim. |

| Speaker | Discussion |
|---|---|
| | And I think in part Mattel is trying to sort of color the compulsory counterclaim analysis, but it is doing so in a way that omits very important facts in the record, and one thing there is very heavily on this whole question of timeliness and discovery which is completely overlooked by Mattel's presentation is that there was a decisive event here which is that in the summer of 2010 finally the whole structure of lies collapsed.  They talk about discovery requests.  Mattel executives have been lying, lying, lying in depositions and finally, in July 2010, they broke through and that was the first time that MGA had knowledge about this whole market intelligence group and the "how to steal" manual.  They were lying about their lies.  They had a whole department devoted to lies, and they were lying about it. |
| Judge Kozinski | What does that have to do with compulsory counterclaims? |
| Clifford Sloan | Your honor, she's talking about -- |
| Judge Trott | What does that have to do with compulsory counterclaims was the question. |
| Clifford Sloan | It relates to the timeliness issue.  I'm happy to go right to compulsory counterclaim, but -- |
| Judge Trott | That's where you said you wanted to go. |
| Judge Kozinski | That's where you said you were going.  We can talk about timeliness or we can talk about compulsory counterclaim.  You said you were going to talk about compulsory counterclaim.  If you want to talk about that, talk about that. |
| Clifford Sloan | Okay.  I was just trying to briefly address the question on timeliness. |
| Judge Kozinski | You make up your mind.  Which one do you want to talk about? |
| Clifford Sloan | Okay. |
| Judge Kozinski | Telling us you're going to talk about one thing and then talk about something else is only going to confuse us and that doesn't advance your argument.  So, just tell us what you're going to talk about.  You want to talk about timeliness, let's talk about timeliness.  You want to talk about compulsory counterclaim, let's talk about that.  You pick, which one? |
| Clifford Sloan | Can I say one more sentence about timeliness and then I'll -- |
| Judge Trott | You want to shoot yourself right in the foot? |
| Judge Kozinski | Tell me which one you want to talk about. |

| Speaker | Discussion |
|---|---|
| Clifford Sloan | Let me talk about compulsory counterclaim, Your Honor. |
| Judge Kozinski | Okay.  Talk about that. |
| Clifford Sloan | Okay.  Yes. |
| Judge Trott | Listen to the questions.  It will help us understand your answers. |
| Clifford Sloan | Thank you, Your Honor.  With regard to the question of compulsory counterclaim, two fundamental facts are important here.  First, Mattel's pleading in its counterclaim, in its broadly worded sprawling counterclaim, it includes allegations that two Mattel executives, Machado and Brawer, when they left Mattel, they took every internal document they could get their hands on.  Internal strategy documents, internal sales documents, internal marketing documents, and they took that with them to MGA.  Second, MGA's counterclaim in reply alleges that Mattel's internal documents, its internal strategy documents, its internal sales documents, internal marketing documents, includes trade secrets stolen from MGA and other competitors and that Machado and Brawer specifically had access to those -- had received them.  We're talking about the same category of documents here. |
| Judge Kozinski | That's not the issue.  The question is claim, not documents.  You know, documents can support vastly different claims.  The same document could support a tort claim and a contract claim.  You know, just in plain English, in regular English, what does their -- this counterclaim -- have to do with the original claim.  I don't see how it's compulsory or how they are in any way related. |
| Clifford Sloan | Well, it has a logical relationship. |
| Judge Trotter | Well, you see, that's the problem.  You parrot that and so did Judge Carter, but there's a definition of logical relationship and that's what *Pegasus* says and you [inaudible] that in your brief, and you know you know what it is.  You've read it.  It says a logical relationship exists and then it talks about this constellation or aggregate set of operative facts, and I'm having trouble finding that in this case because it's like chalk and cheese.  It's the same kind of problem, but one is chalk and one is cheese.  What's the -- what's the nucleus -- what's the constellation of operative facts that lies at the middle of these two things that make this a compulsory counterclaim. |
| Clifford Sloan | Well, because Your Honor, in the same aggregate set of operative facts, there is this logical relationship.  Let me give you an example, by way of comparison.  In the Supreme Court case in *Moore v. New York Patent Exchange*, which is the fountainhead of this whole area of law, the claim was by patent brokers that there was an anti-trust violation by the patent exchange in not giving them certain bids |

| Speaker | Discussion |
|---|---|
| | and quotes from patent exchange.  The counterclaim was that they were purloining the bids in any case; and, so, there you don't have the same claim, and the Supreme Court there said -- |
| Judge Kozinski | It's the same fact.  It's the same facts.  What are the -- Judge Trott asked you this question -- and instead of answering the question, you said let me give you an analogy.  The question is which facts.  I don't want to hear anything else from you now.  I want to hear facts.  Which facts are the common facts here that makes it compulsory?  I don't want an analogy, just which facts? |
| Clifford Sloan | The common facts are that the same documents are at issue. |
| Judge Kozinski | Those are not facts.  Those are -- that's evidence.  Documents are evidence.  What are the facts in the real world?  What are the facts that are in common? |
| Clifford Sloan | The facts are that there's the allegation that if -- let's say -- let's assume the pleadings are correct and Brawer and Machado took with them from Mattel certain documents that had in them MGA's trade secrets.  Okay?  Mattel is claiming those are our trade secrets.  That's what they're alleging, and I can point you to particular paragraphs if you like, and MGA in reply, in the counterclaim in reply, is saying no.  Those documents, those internal documents with our trade secrets, not only are they not your trade secrets; but they're actually evidence of the trade secret misappropriation because they're our trade secrets.  They're conflicting claims over the same category of documents which Brawer and Machado took. |
| Judge Kozinski | So, the claim was that these documents were somehow stolen. |
| Clifford Sloan | Yes. |
| Judge Kozinski | Mattel stole these documents from MGA? |
| Clifford Sloan | No.  That Mattel stole secrets and put them in these documents. |
| Judge Kozinski | Why are you talking about documents? |
| Clifford Sloan | Because -- why am I talking about documents?  Because that is -- the allegations are that the trade secrets were embodied in documents and they went from Mattel to MGA and with Brawer and Machado. |
| Judge Kozinski | Give me one such secret.  Just give me one example.  Give me the thing that started out with MGA and then wound up with Mattel.  That is -- just give me one fact.  One secret. |
| Clifford Sloan | Okay.  So, let's say there was price -- |

| Speaker | Discussion |
|---|---|
| Judge Kozinski | Not let's say. |
| Judge Wardlaw | How about use the Diamond -- the bling, the bling X diamond  X. |
| Clifford Stone | Okay.  Yes. |
| Judge Wardlaw | That's what he wants to know.  He wants to know the story of what happened and why so he can judge whether it's the same, you know, common nucleus -- same transaction or occurrence or operative set of facts. |
| Judge Kozinski | That's why Judge Wardlaw knows me so well. |
| Judge Wardlaw | Well, we like to get it -- |
| Judge Kozinski | So, that's exactly right. |
| Clifford Sloan | All right.  So, MGA was coming out with a new doll with a real diamond in it, okay.  And Mattel gained access, under false pretenses, with this market intelligence group, and got that information and then Mattel quickly adjusted an existing product to put a real jewel there.  So, it stole the trade secret and put it there.  Okay.  So, the kind of allegation that is at issue here is that -- |
| Judge Kozinski | I'm sorry, I'm sorry.  You didn't complete the thought.  Okay, so that sets up your claim. |
| Judge Trott | That's your claim. |
| Clifford Sloan | Yes. |
| Judge Kozinski | Okay, and how does that figure in their claim to make it compulsory? |
| Clifford Sloan | Okay.  So if -- |
| Judge Kozinski | No ifs, no ifs. |
| Judge Wardlaw | I think what he's saying -- can I just -- tell me if this is what you're saying.  I'm not going to say I'm going to agree with you or not, but I want to know if this is what you're saying.  You're saying that MGM, their counterclaim said that MGA when Brawer and Machado defected, MGA received trade secrets that belonged to Mattel, and your claim is that -- no, some of what MGA received was MGA's own trade secrets and that's what forms the basis of your claim against Mattel. |
| Clifford Sloan | That's exactly right, Your Honor. |
| Judge Wardlaw | That's what you're trying to say? |
| Clifford Sloan | Yes, Your Honor, because it was woven into Mattel's analysis of strategy and |

| Speaker | Discussion |
|---|---|
| | competition and so on.  So, that's exactly - |
| Judge Wardlaw | So when did when did Mattel file this counterclaim regarding Machado? |
| Clifford Sloan | Well, Mattel first filed the counterclaim in January 2007.  This was the fourth amended answer and counterclaim, which was filed a few months before this was filed in August 2010.  And, so, again there's a clear overlap of the documents that are at issue. |
| Judge Kozinski | You know, I still don't think you answered my question.  You gave me an example.  You started out by giving me an example of the diamond doll -- the doll with a diamond.  Okay?  And you said that they took it and they changed their -- one of their dolls -- and put a real gem in it. |
| Clifford Sloan | Yes.  And then -- |
| Judge Kozinski | That's as far as I got. |
| Clifford Sloan | And then rushed it out to market. |
| Judge Kozinski | Okay.  How did that figure in their claim against MGA?  How does that -- |
| Clifford Sloan | Because, using this as an example, I'm not saying the proof supports this, but using this as an example at the pleading stage, if Mattel in its documents -- |
| Judge Kozinski | Not if.  I'm asking how did it actually operate?  You were going to give me an example from the  -- a real example -- and we've got you down to an example.  So, you now said this is something they stole from you.  Now, in order to make it compulsory, to show, you're going to have to show me -- and this is their claim against us also figured this.  I don't want to put words in your mouth because I don't know what you're going to say.  How does the second half of this operate? |
| Clifford Sloan | Well, with regard, with regard to these pleadings, Your Honor, this was not an example based on the documents with Brawer and Machado, it's an example of the trade secret misappropriation.  Perhaps it would help if I quoted from the pleadings itself. |
| Judge Kozinski | I don't know.  Since I don't know what you're going to say, I can't help you.  I can't help you. |
| Clifford Sloan | Okay.  Your Honor, Mattel, so in paragraph 45, page 1200, of the excerpts of record, Mattel says -- |
| Judge Kozinski | What document is that? |
| Clifford Sloan | That is Mattel's Fourth Amended Answer and Counterclaim.  So, this is Mattel's |

| Speaker | Discussion |
|---------|-----------|
| | pleading. |
| Judge Kozinski | Okay.  Paragraph what? |
| Clifford Sloan | Paragraph 45, Page 1200.  So, among other things, Mattel says that MGA worked with Machado and others to steal as much Mattel confidential and proprietary information as they could access and bring with them to MGA.  Okay.  So, that's a general, very broadly worded statement.  By the way, one thing Judge Carter pointed out is that because they worded it so broadly, they opened the door because it is a very sweeping allegation here -- as much confidential and proprietary information as they could access.  Okay.  Another example is in paragraph 36 of the same pleading, pages -- |
| Judge Trott | Is there any case that talks about opening the door, cutting right through the compulsory counterclaim law?  You opened the door, so we don't care about the rest of it? |
| Clifford Sloan | No, no.  But, Your Honor, when you're looking at the same aggregate set of operative facts, as Your Honor has pointed out, it means that that playing field of the aggregate set of operative facts is much broader and larger because it's such a broad allegation. |
| Judge Kozinski | I don't see where this helps you out here.  This says they stole from us. |
| Clifford Sloan | Okay. |
| Judge Kozinski | What does that have to do with you stealing from them?  You could -- I mean you could steal from me, and I could steal from you -- and the two have no necessary relationship. |
| Judge Trott | Two different burglaries. |
| Judge Kozinski | Yeah.  Or, you,  I committed burglary against your house and you do an embezzlement against my bank account.  They're two thefts, but they're nothing in common.  Right? |
| Clifford Sloan | Yes, but that's not this case, Your Honor. |
| Judge Kozinski | Well, show me how this case is different. |
| Clifford Sloan | Okay.  So, there are two parts to it.  The first part is what is in Mattel's pleadings.  Now, let's look at what's in MGA's pleadings.  So, we've established that Mattel in their pleading said that Machado took as much confidential and proprietary information as he could take.  Okay? |

| Speaker | Discussion |
|---|---|
| Judge Kozinski | Right. |
| Clifford Sloan | So, now let's look at MGA's pleading.  Let's look at paragraph 14, page 1132.  There are a few paragraphs that bear on this, but let's look at paragraph 14 on page 1132. |
| Judge Kozinski | Hold on.  Let me get to 1132.  I'm almost there.  1132.  I'm right there. |
| Clifford Sloan | Okay.  And there are a few things in this paragraph. |
| Judge Kozinski | Paragraph 14 or 15? |
| Clifford Sloan | 14. |
| Judge Kozinski | Okay. |
| Clifford Sloan | And it talks about that there were presentations of hundreds of pages to be copied and distributed within the company on a worldwide basis.  It says at least one of the recipients was Machado.  And then it says, "Mattel's Market Intelligence Group tailored the information, assembling design information for the Design Group, and marketing information for the Marketing Group."  So, what they're saying is that they were taking these trade secrets that they had stolen -- this is what MGA is alleging -- that Mattel was taking the trade secrets that they stole from MGA, and they were weaving them into documents that were going throughout the company, including to Machado.  So, the trade secrets were woven into those documents.  And then in paragraph 10, page 1130, MGA says that Mattel adjusted its own product pricing and advertising plans to reflect these trade secrets.  So, again, a fair reading of this pleading is that the product pricing and advertising plans that Mattel had, and that Machado and Brawer had access to, incorporated MGA's trade secrets.  So, you're looking at -- so, based on this pleading, let's talk about a particular advertising plan that has MGA's trade secrets in it. |
| Judge Kozinski | How's it compulsory?  I'm still not getting it. |
| Clifford Sloan | Because MGA is saying, "that document is our trade secret."  Okay, let's just look at this one document.  And MGA is saying, "no, not only is that not *your* trade secret, it's actually *our* trade secret because of the information that's in it.  They're disputing over the same document, and this plays out. |
| Judge Wardlaw | They're disputing over the *evidence* -- the *facts* in the same documents -- the secret that's *contained* in the document.  Not the document. |
| Clifford Sloan | Well, the question is -- whose trade secret is it? |

| Speaker | Discussion |
|---|---|
| Judge Wardlaw | Right.  That's what you're saying? |
| Clifford Sloan | Yes, exactly, Your Honor.  That's right.  And -- |
| Judge Kozinski | Okay.  I think I understand your theory now.  So, this is going to be found in these two documents.  Let's say we don't buy that.  Where are you? |
| Clifford Sloan | Okay.  Then we're at the timeliness issue, Your Honor.  Okay.  With regard to the timeliness issue, there's a very important fact, which is that in the summer of 2010, Mattel, for the first time, broke through -- the tissue of lies came down, and they admitted to the conduct for the first time.  So, that would be fraudulent concealment.  It would toll the statute, and indeed there's a very clear record here, because Judge Carter -- |
| Judge Wardlaw | I don't understand what you mean by a tissue of lies fell down. |
| Clifford Sloan | Okay.  Well, let me quote from Judge Carter's *laches* opinion.  Okay, because Mattel -- what I mean is that Mattel executives -- |
| Judge Wardlaw | What actually happened? |
| Clifford Sloan | Mattel executives lied in the depositions, denying -- |
| Judge Wardlaw | You said Mattel liked -- |
| Clifford Sloan | -- knowledge of the Market Intelligence Group. |
| Judge Trott | When were the depositions?  What's the date of the depositions? |
| Clifford Sloan | I don't have the date of the depositions. |
| Judge Trott | What was it -- |
| Clifford Sloan | But I do have Judge Carter's -- |
| Judge Trott | 1850 and 19 -- I mean, when were the depositions?  Were they before or after November 6 or August 7? |
| Clifford Sloan | Well, let me, let me read to you exactly what Judge Carter says. |
| Judge Trott | You can't tell me when the depositions were taken? |
| Clifford Sloan | Yeah, he -- |
| Judge Trott | He's talking about depositions, and I'd like to know when the depositions -- what the dates were of the depositions.  Wait.  You've got a Sherpa coming up to you |

| Speaker | Discussion |
|---------|-----------|
| | here. |
| Clifford Sloan | Yeah, they were in 2009 and 2010. |
| Judge Trott | So, that's after the November discovery request and the August -- okay -- so, it's after. |
| Clifford Sloan | And Judge Carter specifically found that the first Mattel -- and this at ER745 -- "the first Mattel employee to publicly admit to the misconduct did so in a July 2010 deposition."  And then he says, "numerous Mattel executives, including executives that had actual knowledge of the misconduct, denied the misconduct when questioned at depositions earlier in the case." |
| Judge Trott | Yeah, but doesn't that beg the question -- you know, what did you know in November 2006?  It seems like you had reason to know *exactly* what was going on.  You were talking about phony IDs and all this stuff. |
| Clifford Sloan | No, Your Honor.  I mean, it's one thing to maybe have an inkling and trying to get information because it's in the record testimony from Mr. Larry -- |
| Judge Trott | It looks like you had more than an *inkling*. |
| Judge Kozinski | Let me -- let me get this straight.  Isn't it, *either* you're within the statute of limitations, *or*, you can present facts, and some trier of fact -- which is not us -- can decide -- put you within the statute of limitation or the discovery rule, because you couldn't have discovered it sooner.  It's one of those two facts.  But you haven't got either.  You didn't present this to a trier of fact, right?  You didn't say, "let's present it to a jury.  We are entitled to a date much later than the actual statute of limitations because we couldn't have discovered it." |
| Clifford Sloan | No.  Because the judge had granted it as a compulsory counterclaim.  We *did* ask at the same time -- |
| Judge Kozinski | But, I'm assuming, in terms of my question, that we don't buy this.  So, I'm asking you where *are* you?  And you could have said, "Judge, you know, we love your ruling.  We're very happy with it, but we think we should submit to the jury the question of when we should have known, just to avoid any" -- you could've done that.  But, isn't that how these things get decided?  If you're not within the statute of limitations, don't questions like that under California law go out to a jury?  So, you have to go to a jury and say, "look, we should not have known any sooner because they were scoundrels and they concealed it"  Isn't that how it's done?  You're a California lawyer, aren't you? |
| Clifford Sloan | No, I'm not Your Honor, but -- |
| Judge Kozinski | I wasn't sure where everybody's from, but, you know, that's the law in |

| Speaker | Discussion |
|---|---|
| | California.  So, I think it's a law pretty much every place else. |
| Judge Trott | Yes. |
| Judge Kozinski | That didn't happen here, right? |
| Clifford Sloan | That's, that's quite true. |
| Judge Kozinski | So, aren't you out of luck, unless we buy the compulsory counterclaim? |
| Clifford Sloan | Well, Your Honor, if no reasonable fact-finder could find to the contrary, that would be an alternative basis, and I -- |
| Judge Kozinski | We can't grant -- we can't grant summary judgment -- when we're on appeal.  At the very least, you have to ask for summary judgment from district court.  You didn't do that. |
| Clifford Sloan | Well, but you do have the findings of the district court in the *laches* opinion. |
| Judge Kozinski | Different standard.  Different standard.  Doesn't help you. |
| Clifford Sloan | Well -- |
| Judge Wardlaw | So, are you -- so, I want to sort of play this through.  Suppose we don't buy that it's a compulsory counterclaim, does it go back to Judge Carter, or do you still have, you know, would you be filing a new lawsuit where that question of fact might come up, you know, when did you know, because that would be a defense that was asserted? |
| Clifford Sloan | Well, I mean, I guess, in that situation, I guess in the first instance, it was -- |
| Judge Wardlaw | We still have time, right?  It's three years, right? |
| Clifford Sloan | Yes.  I, guess, in the first instance, it would go back to Judge Carter in that circumstance to consider -- to consider what was appropriate -- to consider if perhaps there is a -- |
| Judge Wardlaw | But if it's not a compulsory counterclaim, then it doesn't belong in this litigation.  So, we would reverse him, but it doesn't mean that that claim would survive or he -- it seems to me, he would have to file a new lawsuit.  And it seems to me that because Mattel has been arguing that it's not compulsory, here, they couldn't argue that it was *res judicata* -- that this lawsuit was *res judicata* against that claim.  So, I don't know; if I were you, I might be filing that claim tomorrow. |
| Clifford Sloan | Well -- |

| Speaker | Discussion |
|---------|-----------|
| Judge Kozinski | And then fighting on the issue when you had reason to know. |
| Judge Trott | More litigation! |
| Judge Wardlaw | Yeah, how fun. |
| Clifford Sloan | Well, you know, I would -- |
| Judge Kozinski | Good for the lawyers. |
| Clifford Sloan | -- I would submit that we think you don't need to reach that because it's a compulsory counterclaim.  And, as I said, -- |
| Judge Wardlaw | That's the problem -- that's the problem -- you're obviously -- I mean it's obviously -- the closest question is the question about the view to focus on.  It's the biggest -- you know, it involves the most money.  So, it is a close question. |
| Clifford Sloan | Yeah, well, even if it's a close question, I think a fair reading of the pleadings suggests that there *is* a logical relationship in the same aggregate set of operative facts.  And, also, judicial efficiency and fairness is part of the settled standard for interpreting Rule 13.  That's in this Court's opinions.  It's in *Porchiro*.  It's in others.  And if I could say a word about both judicial economy and fairness. |
| | On judicial economy, Judge Carter -- which *is* part of the standard -- and Judge Carter emphasized that it would add to the already tremendous burden on judicial resources if this litigation was presenting.  And we were already more than six years into the litigation, with more than 8,000 docket entries.  It was scorched-earth litigation, and he correctly viewed it that it would be extremely wasteful and duplicative to have separate litigation that would -- |
| Judge Kozinski | He said that, but I don't get it.  I mean, if you don't have -- if you're out of luck -- if the statute of limitations bars the claim, the most judicially efficient thing is not to have a trial. |
| [crosstalk] | |
| Clifford Sloan | Well, Judge Carter said that, in the wake of having the evidence, that the Mattel executives had been lying in their deposition.  In their depositions.  And, so, I would not assume it's untimely, and I don't think that would have been Judge Carter's assumption at the time.  And you would've had -- |
| Judge Kozinski | But it's not his decision to make.  If you're going under the discovery rule, that's a jury question.  The most he can do is grant one side summary judgment on it, but -- |
| Clifford Sloan | But we're talking about the judicial efficiency, which is part of the standard.  And |

| Speaker | Discussion |
|---|---|

in terms of fairness, and Ms. Sullivan talked about *res judicata*, and she was saying, "oh, it would be ridiculous to think that there would've been some *res judicata* thing." At the time Judge Carter decided this, in August 2010, *if* one assumes that Mattel would prevail, that these particular documents were its trade secrets, and then MGA were to try to file a suit and claim, "no, those were actually *our* trade secrets," I guarantee you, Mattel would've been there, vigorously arguing that it was barred by *res judicata*. And, let me come back to the standard of review. I think it's clear under a de novo standard that it's compulsory, but if the Court has doubts about that, I do think it's important that the Court has precedent that abuse of discretion is the appropriate standard. And this was certainly within Judge Carter's discretion.

And let me mention, in addition to the case that we cited, *Monotype,* where this Court has applied abuse of discretion when claims were to be tried in the same trial, there's another case which is cited in the Brief, *Davis and Cox vs. Suma,* and, at 751 F.2d at 1525, the Court said the District Court properly exercised its discretion in dismissing these counterclaims, and the question was whether they were compulsory. So, that's also a precedent in the same trial context for abuse of discretion, and I think that makes sense in light of the fact that the standard is judicial efficiency and fairness; that that's incorporated in the standard.

**Judge Kozinski**   Do you want to speak on the damages, trademark damages issue?

**Clifford Sloan**   Yes. Thank you, Your Honor.

So on the trade secrets damages .--

**Judge Kozinski**   Trade secrets.

**Clifford Sloan**   Yeah. On the trade secrets damages issue, there are at least three possible bases for the jury verdict in the record. And, of course, Mattel has a particular --

**Judge Wardlaw**   Now, you have to articulate a plausible basis in the record under *First Alliance*, so what is it?

**Clifford Sloan**   Okay. So, the three would be the expert's bottom up theory, the expert's top down theory, --

**Judge Wardlaw**   I don't see how top down works because he predicated that on all 114 claims.

**Clifford Sloan**   Actually, Your Honor, he didn't. There was testimony at the trial where he explicitly was asked about could there be recovery if there was less than all the trade secrets.

**Judge Wardlaw**   Right, and then he divides the bottom up theory.

| Speaker | Discussion |
| --- | --- |
| Clifford Sloan | Pardon? |
| Judge Wardlaw | Yes, and that's when he said his bottom up theory. |
| Clifford Sloan | No, but he also referred to the 149 or the 202, at the same time, and those are the top down references.  So, in terms of the top down theory -- and as Judge Carter explained -- that supplies a possible basis.  One thing I do want to address -- Ms. Sullivan was saying that somehow we had disavowed *Alliance* on the top down theory, and I just want to briefly make three points about that, which is, first of all, they quote a snippet of a pleading below out of context, and elsewhere in the pleading we rely on the top down.  We have a whole section that it's inappropriate to speculate on the basis for the jury's damages. |
| | Secondly, after that pleading, Judge Carter specifically relied on the top down theory as a possible basis.  It's at page 62 of the excerpts of record.  And, so, he clearly didn't think we had disavowed it. |
| | And third, they raised it for the first time in their Reply Brief.  They talked about top down in their Opening Brief.  They didn't say anything about waiver on our part.  You can waive a waiver argument.  That's what they did.  And the top down theory would have supplied either $149 million or $202 million.  So, the $88.5 remitted to $85 was well within that basis. |
| | With regard to the bottom up theory of the expert, the expert testified about 26 secrets.  As to 22 of them, the average was $3.4 million.  He gave specific damages amounts for the others and then he extrapolated for the other four.  And Mattel says, well because the jury's list was different from the expert's list, that's an inadequate basis.  But 15 of the 25 trade secrets were the same, and there's no principle that the jury has to rely on the exact meets and bounds of the expert's testimony.  So, the bottom up theory also supplies a basis. |
| | And third, non-expert testimony.  There was financial information in the record.  We cite to that in the Brief.  Detailed financial records as to each of the -- as to the different products and the trade secrets -- and the jury could have evaluated that.  They'd heard a lot of testimony about the value of the trade secrets. |
| | In conclusion, Your Honor, we ask this Court to affirm the judgment of the District Court.  Thank you. |
| Judge Kozinski | Thank you.  We're way out of time, but we'll give you a couple minutes for rebuttal. |
| Kathleen Sullivan | Thank you, Your Honor.  Just very quickly on some points that have been raised.  You asked MGA's counsel, my good friend, Mr. Sloan, to tell you where in the pleadings are there a pleading that Mattel stole from MGA, and a pleading that MGA stole the same secrets from Mattel, and he gave you none.  If he gave you |

| Speaker | Discussion |
|---|---|
| | page 1130, that was about Mattel's secrets going to MGA.  It wasn't about MGA's secrets going to Mattel.  And I invite you to compare, he said, well, we ran, we pleaded so much.  You can look at our Complaint at 1353 to 1365 of the Excerpts of Record, and you will find not one word about toy fairs.  You'll find a lot of words about stealing Mattel's trade secrets and taking them off to Mexico.  You will not find one word about toy fairs.<br><br>Now, if you don't believe me that MGA cannot find any overlap between the two sets of pleading, I invite you to look at their Brief, the red brief, at footnote 9.  It's an amazing footnote.  Footnote 9 refers - |
| Judge Trott | I've never seen an amazing footnote, hold on.  [Laughter] |
| Kathleen Sullivan | Now, Mr. Sloan and his able colleagues had many months to tell you where in the pleadings is there a factual overlap, and they came up with page 26, footnote 9.  That's all they came up with.  And this is about whether, you know, there was any proof of any overlap.  Footnote 9 says, even if it's proper to look beyond the pleadings -- you asked before was there any proof -- MGA's and Mattel's misappropriation claims involved common issues of fact.  Compare Mattel's claim that MGA stole the name for Moxie Doll with MGA's using evidence about Moxie to argue that generically it protects its toy fair showrooms.<br><br>Now what they don't tell you is Moxie is not among the 114 toy fair claims.  She couldn't be.  She came out in 2008, after the toy fairs.  So, there is no overlap.  If footnote 9 is the best they can do, *res ipsa loquitur*, on the proof.  But don't take it from me and footnote 9, Judge Carter got there too.  He said, not only did they not plead it -- he didn't say they didn't plead it -- he said they pleaded it -- that was wrong -- but after discovery, if I could just refer you, you've been very patient about all these cites, if you look at ER 226, this is Judge Carter's ruling on Summary Judgment.  And now we come back and we say, well Judge Carter, you thought maybe they could proved some factual, same set of aggregate facts, maybe you would find that somehow Machado and Brawer stole secrets that Mattel had stolen from MGA.  And where does he get to on that page?  He says, I read from ER 226, Mattel now claims that discovery has revealed that none of the documents and information misappropriated by Brawer and Machado overlap with the memoranda prepared by the Market Intelligence Group.  We said discovery revealed nothing.  So, what did Judge Carter say?  He said, that was something to deal with at the pleading stage.  He doesn't say, oh I've looked at the discovery and there's -- a there -- there.  He said the determination of whether a counterclaim is compulsory is made at the time of pleading.  We agree.  And the pleadings had no same fact.<br><br>Chief Judge Kozinski, you're absolutely right.  *Moore* is about claims.  It's not about whether there might be some document somewhere in a Mattel computer that might somewhere have had some toy fair secrets.  It's about claims.  The |

| Speaker | Discussion |
|---|---|
| | facts have, you have to assert the same set of facts supporting your claim.  There is none between toy fair. |
| Judge Kozinski | Thank you. |
| Kathleen Sullivan | That's on the question of pleading approved.  It was neither pleaded nor proved. |
| Judge Kozinski | I think we have it. |
| Kathleen Sullivan | Your Honor, thank you. |
| Judge Kozinski | Okay. |
| Kathleen Sullivan | As to -- may I say one word about damages -- and I'll be just one minute? |
| Judge Kozinski | Okay. |
| Kathleen Sullivan | *First Alliance*, first we think the whole case goes away once you decide with us on statute of limitations.  Should you not agree with us, you can under *First Alliance* also decide the case now because you have a quantitative way to reduce the damages.  We would respectfully submit there were only two trade secrets where there was any evidence of damages, Bratz Diamondz and Winter Wonderland.  You could order the damages remitted to 6.8. |
| | We also respectfully suggest that as Mr. Sloan just admitted, there's only 14 -- he said 15 -- two are the same, it's really 14 -- there are only 14 trade secrets that were in the expert's chart.  You could order under *First Alliance*, you've got a quantitative basis to do it, to the dollar, you could order remitted the claims down to 14 times $3.4, which is $47.6; or, in our view, the maximum supported by the evidence, which is go to $3.4 where anything where the expert was higher, and go to his numbers which were as low as $20,000 for anything that's lower.  That gets you to $37.6.  You could end this eight years of litigation by ruling for us on statute of limitations, or ordering a lowering of damages to $06.8, $37.6, or $47.6 under *First Alliance*.  We respectfully request that you also remand for determination of attorneys' fees. |
| Judge Kozinski | You could -- |
| Kathleen Sullivan | You can't redact all of them and have a hundred thirty -- |
| Judge Kozinski | You could also go and settle the case. |
| Kathleen Sullivan | I'm sorry, Your Honor? |
| Judge Kozinski | You could also go outside in the corridor and settle the case, and that -- |

| **Speaker** | **Discussion** |
| --- | --- |
| Kathleen Sullivan | Thank you very much, Your Honor. |
| Judge Kozinski | -- that would certainly -- |
| Judge Trott | That would be more astonishing than footnote 9.  [Laughter] |
| Judge Kozinski | Difficult standard.  Right.  Okay, the case will stand submitted. |

# EXHIBIT B

1

1   **UNITED STATES DISTRICT COURT**

2   **CENTRAL DISTRICT OF CALIFORNIA**

3   **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                    - - - - - - -

5   MATTEL, INC.,                     )
                                      )
6           Plaintiff,                )
                                      )
7        vs.                          ) No. LACV 04-9049 DOC
                                      )    Item No. 43
8   MGA ENTERTAINMENT INC., et al.,   )
                                      )
9           Defendants.               )
    _____)

10

11

12

13            REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                    Hearing on Motions

15                  Santa Ana, California

16              Tuesday, February 26, 2013

17

18

19

20

21   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
22   United States District Court
     411 West 4th Street, Room 1-053
23   Santa Ana, California 92701
     (714) 558-8141
24

25   04cv9049 Mattel 2013-02-26  Hrg

Case 2:04-cv-09049-DOC-RNB   Document 10866-2   Filed 03/11/13   Page 34 of 59   Page ID #:329418
LACV 04-9049 DOC - 2/26/2013 - Item No. 43

2

1   **APPEARANCES OF COUNSEL:**

2

    FOR MATTEL, INC.:

3
                QUINN EMANUEL URQUHART & SULLIVAN LLP
4               BY:  Michael T. Zeller
                     Susan Estrich
5                    Brett Dylan Proctor
                     Ian Shelton
6                    Ryan Baker
                     Attorneys at Law
7               865 South Figueroa Street
                10th Floor
8               Los Angeles, California 90017-2543
                213-443-3000
9

10

11

    FOR DEFENDANT MGA ENTERTAINMENT, INC.:
12
                KELLER RACKAUCKAS LLP
13              BY:  Jennifer L. Keller
                     Attorney at law
14              18500 Von Karman Avenue
                Suite 560
15              Irvine, California 92612
                949-476-8700
16
                -AND-
17
                SHERNOFF BIDART ECHEVERRIA LLP
18              BY: Michael J. Bidart
                    Attorney at Law
19              600 South Indian Hill Boulevard
                Clarement, California 91711
20              (909) 621-4935

21

22

23

24

25

**APPEARANCES OF COUNSEL (Continued):**

FOR INTERVENOR DEFENDANT CRUM & FORSTER INSURANCE SPECIALTY INSURANCE COMPANY:

        MUSICK PEELER AND GARRETT
        BY:  Susan J. Field
           Attorney at Law
        One Wilshire Boulevard
        Suite 2000
        Los Angeles, California 90017-3383
        213-629-7886

FOR INTERVENOR DEFENDANTS CHARTIS SPECIALITY INSURANCE COMPANY, ET AL.:

        DRINKER BIDDLE & REATH LLP
        BY:  Mark D. Sheridan
           Attorney at Law
        500 Campus Drive
        Florham Park, NJ 07932-1047
        973-549-7336

FOR INTERESTED PARTY EVANSTON INSURANCE COMPANY:

        TROUTMAN SANDERS LLP
        BY: Sean M. Hanifin
           Attorney at Law
        401 Ninth Street NW
        Suite 1000
        Washington, DC 20004-2134
        202-662-2026

        -AND-

        TROUTMAN SANDERS LLP
        BY: Paul L. Gale
           Attorney at Law
        5 Park Plaza
        Suite 1400
        Irvine, California 92614-2545
        949-622-2700

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

4

1    **APPEARANCES OF COUNSEL (Continued):**

2

3    FOR INTERESTED PARTY ORRICK, HERRINGTON & SUCLIFFE LLP:

4              ORRICK, HERRINGTON & SUTCLIFFE, LLP
               BY:  I. Neel Chatterjee
5                  Attorney at Law
               1000 Marsh Road
6              Menlo Park, CA 94025
               650-614-7356
7
               -AND-
8
               ORRICK, HERRINGTON & SUTCLIFFE, LLP
9              BY:  THOMAS S. McCONVILLE
                   Attorney at Law
10             4 Park Plaza
               Suite 1600
11             Irvine, California 92614

12             (949) 567-6700

13             -AND-

14             SHARTSIS FRIESE
               BY:  Lisa Jacobs
15                 Attorney at Law
               1 Maritime Plaza
16             18th Floor
               San Francisco, California 94111
17             415-421-6500

18

19

20

21

22

23

24

25

DEBBIE GALE, U.S. COURT REPORTER

10:33   1          We seem to be rewriting bankruptcy law, but it

2   taught me a lesson.  If I followed that advice -- and this

3   is very premature, but this is interesting -- if I followed

4   that advice, would I then let it go up on an interloc'.

5   Because I certainly wouldn't want to waste the Circuits

6   time.  And on a stipulated interloc', does it mean anything

7   anyway, if it comes to a screening panel?

10:33   8          I mean, I would want it to go back in front of

9   Judge Wardlaw, Judge Trott and Judge Kozinski, and they say

10   "Judge Carter, you're absolutely wrong.  You read this wrong

11   and just don't proceed," or "You know something.  We're

12   gonna hold this in abeyance."

10:33   13          You see this interloc' causes me a problem because

14   it's not really an interloc' that gives discretion when it

15   comes to a panel.  And I learned a hard lesson that way.

10:33   16          MS. KELLER:  I understand what you're saying,

17   Your Honor.

10:33   18          THE COURT:  Eventually, I was right, by the way,

19   with the Supreme Court.  But it was a little painful, in

20   front of my own Circuit, on New Year's Eve watching on the

21   bottom of a screen, "Judge reversed in California," right

22   below the Rose Bowl in Colorado, by the way.  And I'm just

23   joking with you, but I'm not.

10:34   24          So you see the point.  And I'm not gonna get there

25   yet.  It's interesting -- and I'm being forewarned now.

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 10866-2   Filed 03/11/13   Page 38 of 59   Page ID #:329422
LACV 04-9049 DOC - 2/26/2013 - Item No. 43

26

| | |
|---|---|
| 1 | Okay?  But it's interesting how I handle that, if I ever get |
| 2 | there, because I don't know what an interloc' means or what |
| 3 | it even gives me. |
| 10:34  4 | MS. KELLER:  Well, all we know right now is that |
| 5 | the Circuit has dismissed without prejudice, which means we |
| 6 | can refile our claims.  And if we refile and -- |
| 10:34  7 | THE COURT:  Here's the box you're really in -- I |
| 8 | mean, if we're really discussing this -- the box you're |
| 9 | really in is you've got a state law claim.  And to get it |
| 10 | back to federal court gets to be an interesting proposition |
| 11 | on a misappropriation claim coming back to federal court on |
| 12 | a state law claim. |
| 10:34  13 | You've got to hook it up to some federal claim, |
| 14 | and that's gonna be a really interesting proposition.  So |
| 15 | from my standpoint, it's very logical what you're attempting |
| 16 | to do.  You may not have any other choice 'cause it's gonna |
| 17 | go over to some state court judge who's gonna be in shock |
| 18 | and awe, I think. |
| 10:35  19 | MS. KELLER:  Well, that all remains to be briefed. |
| 10:35  20 | My only point was, should the Court grant our |
| 21 | motion, then I think that full bond is back in play, because |
| 22 | we have a liquidated amount that a jury's already decided |
| 23 | and that the Court has already decided:  An exemplary |
| 24 | damages claim.  And so -- |
| 10:35  25 | THE COURT:  Now let's play that out.  Let's |

1   assume, for a moment, that I take that representation, which

2   I do.  How soon would this be filed?  What's the detriment

3   to Mattel?  How long do we play this out where Mattel's

4   paying on this bond, et cetera?  It might be a very wise

5   thing to do.  I don't know yet.

10:35    6                MS. KELLER:  The request --

10:35    7                THE COURT:  By the same token, I don't want Mattel

8   harmed as this drags along with an excessive bond, you know,

9   or a hoped-for victory.

10:35   10                MS. KELLER:  We will file today.

10:35   11                THE COURT:  Oh, that's pretty quick.

10:35   12                MS. KELLER:  May I have a moment, Your Honor?

10:35   13                THE COURT:  Maybe tomorrow?

10:35   14                MS. KELLER:  Your Honor, the only thing that we

15   need -- as learned counsel has pointed out -- is we do need

16   relief from the meet-and-confer rule in order to file today.

17   So we would ask that the Court give us leave to go ahead and

18   file that, and then set a briefing schedule.

10:36   19                THE COURT:  Well, I'd want to talk to Mattel about

20   that.  Mattel's gonna take the position that, "Judge, we

21   shouldn't even get to that point.  You should decide this

22   now on the excessive bond."

10:36   23                And, if you're inclined to do that, they would

24   probably stipulate to waiving the meet-and-confer 'cause

25   it's costing them money.  Okay?

# EXHIBIT C

RECEIVED

SEP 0 5 2007

1  DALE M. CENDALI (admitted *pro hac vice*)
   DAVID I. HURWITZ (S.B. #174632)
2  O'MELVENY & MYERS LLP
   400 South Hope Street
3  Los Angeles, CA 90071-2899
   Telephone: (213) 430-6000
4  Facsimile: (213) 430-6407
   Email:    dhurwitz@omm.com
5
   PATRICIA GLASER (S.B. #55668)
6  CHRISTENSEN, GLASER, FINK,
   JACOBS, WEIL & SHAPIRO, LLP
7  10250 Constellation Boulevard, 19th Floor
   Los Angeles, CA 90067
8  Telephone: (310) 553-3000
   Facsimile: (310) 557-9815
9
   Attorneys for MGA Entertainment, Inc.
10

11          **UNITED STATES DISTRICT COURT**
           **CENTRAL DISTRICT OF CALIFORNIA**
12                **EASTERN DIVISION**

13

14

15  CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)

16          Plaintiff,                   **MGA ENTERTAINMENT, INC.'S**
                                         **NOTICE OF DEPOSITION OF**
17      v.                               **MATTEL, INC. PURSUANT TO**
                                         **FED. R. CIV. P. 30(b)(6)**
18  MATTEL, INC., a Delaware
    Corporation,

19          Defendant.

20  CONSOLIDATED WITH                    Judge: Hon. Stephen G. Larson

21  MATTEL, INC. v. BRYANT and           Date:             September 19, 2007
                                         Discovery Cut-Off: March 3, 2008
22  MGA ENTERTAINMENT, INC. v.           Pretrial Conference: June 2, 2008
    MATTEL, INC.                         Trial Date:       July 1, 2008
23

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to the provisions of Federal Rule of Civil Procedure 30(b)(6), MGA Entertainment, Inc. ("MGA") will take the deposition upon oral examination of Mattel, Inc. ("Mattel") regarding the matters described below beginning on September 19, 2007, at 9:30 a.m., and continuing from day to day thereafter, excluding weekends and holidays, or as otherwise agreed by counsel, until completed.

The deposition will be held at the offices of O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, California 90071, telephone: (213) 430-6000. The deposition will be taken before a notary public or other officer authorized to administer oaths and will be recorded by stenographic, sound and visual means. The stenographic recordation method may provide for the instant visual display of the testimony at deposition. MATTEL shall designate one or more officers, directors, managing agents or other PERSONS who consent to testify on MATTEL's behalf, who shall testify as to matters known or reasonably available to MATTEL relating to the topics listed in Attachment A.

Dated: September 5, 2007

O'MELVENY & MYERS LLP

By
David Hurwitz
Attorneys for Plaintiff MGA
Entertainment, Inc.

ATTACHMENT A

1   OR RELATING TO such PERSON'S business with MGA, including, but not

2   limited to, any efforts by MATTEL to persuade that PERSON (a) to cease doing

3   business with MGA; (b) to limit or reduce its business with MGA; or (c) increase

4   such PERSON'S business with MATTEL at the expense of that PERSON'S

5   business with MGA.

6       56.   YOUR knowledge of MGA's non-public information (regardless of

7   the source) and YOUR efforts worldwide to monitor, "spy on" or gain knowledge

8   of MGA's activities, unreleased products, and product creation, design and

9   development, including, but not limited to (a) contacts with MGA's current or

10  former employees about MGA or its business; (b) use or attempt to use confidential

11  informants, spies, or moles within MGA; (c) knowledge of any MGA product

12  before its release to the public; (d) the origin, source, meaning and authenticity of

13  the document produced at M0065557-58; (e) instances of obtaining access to MGA

14  showrooms, including obtaining access on false pretenses; (f) access to MGA's

15  products or showroom at any Toy Fair; (g) access to retailer's Plan-o-Grams or

16  merchandising display plans or display areas; and (h) access to MGA's confidential

17  product and pricing information through "competitive management agreements" or

18  "category management agreements" with retailers.

19      57.   MATTEL's efforts, or knowledge of any efforts by any PERSON,

20  worldwide to unfairly compete with MGA by eroding or damaging its goodwill,

21  including, but not limited to (a) efforts to generate negative publicity or consumer

22  comments about MGA, LARIAN, "BRATZ" or other MGA products;

23  (b) COMMUNICATIONS with any PERSON concerning whether "BRATZ" are

24  too sexy or otherwise inappropriate for girls; (c) any publicly-released studies or

25  market research about "BRATZ" or MGA products commissioned by or funded by

26  MATTEL; and (d) efforts to provide negative information about MGA to financial

27  or investment analysts (including, but not limited, to J.P. Morgan) regarding MGA

28  or MGA products.

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

# EXHIBIT D

## Ian Shelton

| | |
|---|---|
| **From:** | Eckles, Paul M [Paul.Eckles@skadden.com] |
| **Sent:** | Sunday, January 13, 2008 3:39 PM |
| **To:** | Michael T Zeller; Jon Corey; John Quinn |
| **Cc:** | Nolan, Thomas J (LAC); Allen, Jose R (SFC); Plevan, Kenneth A (NYC); MPage@KVN.com; Miller, Timothy A (SFC); Roth, Carl A (LAC); Herrington, Robert J (LAC); Kennedy, Raoul D (SFC); Park, Amy S (PAL); Christa Anderson; Mumford, Marcus R (LAC); Adler, Douglas B (LAC) |
| **Subject:** | RE: Mattel Depositions |

Mike:  We've reviewed your proposed lists.  We can discuss on our call this evening, but I think we have a basic difference of opinion as to what Judge Larson envisioned in his order, and the timing necessitated by expert report deadlines.  In any event, here is our proposal:

January Bucket

20 deposition days (i.e., up to 7 hours = 1 depo) on each side (including either party or third-party depositions).  Our 20 would include Fontenella, Ross, Eckert, Patel, Bousquette, Martinez, Simoneau, Farr, Kilpin, Kyaw, Newcomb, Tafoya, Rhee, Gomez, Hoi Hoffman, Viohl, and 30b6 topics recently ordered by Judge Infante.  These depositions obviously would have to be multi-tracked.

Post January 28 Bucket

Any further testimony ordered by Judge Infante at the February hearings and perhaps a few of the 20 designated by either side who are not available in January, but no more than 4 depositions on each side.

Bucket 3

Any remaining Phase II depositions.  On our side, that would include Milt Zablow, Jerry Cleary, Erika Ashberg, Thomas Debrowski, Margo Eldridge, Andres Olvarrieta, Chuck Scothon, Neil Friedman, Mark Spencer, Timothy Lider, Rebecca Arrobio, Bruce Stein, Ron Montalto, Sal Villasenor, Maria Carmen Mendez, Donald Moon, John Handy, MGA's 30b6 topics on Phase II issues.

----- Original Message -----
From: Michael T Zeller <michaelzeller@quinnemanuel.com>
To: Nolan, Thomas J (LAC); Roth, Carl A (LAC); Michael Page <MPage@KVN.com>; Christa Anderson <CAnderson@KVN.com>
Cc: John Quinn <johnquinn@quinnemanuel.com>; Jon Corey <joncorey@quinnemanuel.com>
Sent: Sun Jan 13 03:30:20 2008
Subject: Depositions

Below you will find a first pass at our attempt to prioritize the depositions within the general framework we discussed today.  I am sending this now for a discussion piece, so we reserve the right to modify our suggested approach or the details associated with it.  Also, we are continuing to go through the 30(b)(6) notices to see what might be agreeable on that front and will follow up with suggestions on dealing with specific suggested topics before our 5 pm call.  I don't believe I've seen MGA's prioritization, but I look forward to receiving it soon.

Bucket 1 January

Adrienne Fontenella -- scheduled for 1/16

Ivy Ross -- scheduled for 1/17

Robert Eckert -- scheduled for 1/28

Carter Bryant -- scheduled for 1/23-24

Jean Gomez - dates pending 1/28 subpoena (can she change date) -- any day except 28th

Farhad Larian -- his counsel had proposed 1/29, which we can do

Sam Khare (30(b)(6) designee) -- need mutually agreeable date

Rachel Harris (or alternative 30(b)(6) designee) -- need date

Maria Salazar

Mel Woods

Kickapoo High School

Peter Marlow

Gustavo Machado

Tina Patel

Bucket 2 February

Bousquette

Sheila Kyaw

Hoi Hoffman

Tim Kilpin

Evelyn Viohl -- she is on maternity leave and due this month; expectation is that she might be available by late February but we cannot be sure until after she has her baby

Lily Martinez

Sarah Halpern

Jesse Ramirez

Stephen Lee

Cecilia Kwok

Sandra Bilotto

Anne Wang

David Rosenbaum

Christensen Glaser LLP

Lucy Arant

Mitchell Kamarck

Carol Witschell

Nana Ashong

Larry McFarland

Eric Yip

Gentle Giant Studios

Christopher Palmeri

Jeff Weiss

LA Focus

Joyce Ng

Rachel Harris

Andreas Koch

Kami Gillmour

Mercedeh Ward

Moss Adams

Wachovia Bank

Amy Myers

Ron Brawer

Janine Brisbois

Mariana Trueba

Pablo Vargas

Ricardo Abundis

Jorge Castilla

Nic Contreras

Dan Cooney

Susan Kuemmerle

Shirin Salemnia

MGAE de Mexico (except Topics to be identified)

MGA Entertainment, Inc. (except Topics to be identified)

Bucket 3 Post-February

Kevin Farr

MGAE de Mexico (Topics TBD)

MGA Entertainment, Inc. (Topics TBD)

Mattel (Topics TBD)

Unknown until we can get more information about their schedules

Theresa Newcomb

Maureen Tofoya


```
---------------------------------------------------------------------------
*****************************************************
```

To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.
```
*****************************************************
*****************************************************
```

This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof.


Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
****************************************************
============================================================================

# EXHIBIT E

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

January 2, 2008

**VIA MESSENGER AND FEDEX**

Thomas J. Nolan, Esq.
Skadden, Arps, Slate, Mcagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Alexander H. Cote, Esq.
Overland Borenstein Scheper & Kim, LLP
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071

Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

Re:  MGA Entertainment, Inc. v. Mattel, Inc.

Dear Counsel:

I enclose with this letter the following, in a format consistent with the letter agreement of Mattel and MGA dated March 29, 2007:  One hard drive containing documents with Bates numbers M 0265001 through M 0452901.

Mattel continues to conduct a reasonable, good faith search for documents, and intends to produce relevant, non-privileged documents as they are located.  If you have any questions regarding the foregoing, please do not hesitate to call.

Sincerely,

Timothy L. Alger

Enclosures
07209/2338992.1

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 45-025 Manitou Drive, Suite 10. Indian Wells. California 92210 | TEL 760-345-4757 FAX 760-345-2414
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

# EXHIBIT F

1  ANNETTE L. HURST (Bar No. 148738)
   ahurst@orrick.com
2  WARRINGTON S. PARKER III (Bar No. 148003)
   wparker@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
4  405 Howard Street
   San Francisco, CA 94105
5  Telephone:  +1-415-773-5700
   Facsimile:   +1-415-773-5759
6
   WILLIAM A. MOLINSKI (Bar No. 145186)
7  wmolinski@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
8  777 South Figueroa Street, Suite 3200
   Los Angeles, CA  90017
9  Telephone:  +1-213-629-2020
   Facsimile:   +1-213-612-2499
10
   THOMAS S. MCCONVILLE (State Bar No. 155905)
11 tmcconville@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
12 4 Park Plaza, Suite 1600
   Irvine, CA 92614-2258
13 Tel: (949) 567-6700/Fax: (949) 567-6710

14 Attorneys for the MGA Parties and
   IGWT 826 Investments LLC
15

16              UNITED STATES DISTRICT COURT

17            CENTRAL DISTRICT OF CALIFORNIA

18                  SOUTHERN DIVISION

19 | MATTEL, INC., a Delaware corporation, | CASE NO.  CV 04-9049 DOC (RNBx) |
20 |  | Consolidated with: |
   | Plaintiff, | Case No.  CV 04-09059 |
21 |  | Case No.  CV 05-02727 |
22 | v. | Honorable David O. Carter |
23 | MGA ENTERTAINMENT, INC., a California corporation, et al., | NOTICE BY MGA ENTERTAINMENT, INC. OF TRADE SECRET DESIGNATION PURSUANT TO CAL. CODE CIV. PROC. § 2019.210 |
24 | Defendant. |  |
25 |  |  |
   | AND CONSOLIDATED ACTIONS | Trial Date: January 11, 2011 |
26
27
28

8·24

Pursuant to California Code of Civil Procedure Section 2019.210, MGA Entertainment, Inc. ("MGA") herewith identifies with reasonably particularity the trade secrets it claims were misappropriated by Mattel Inc. MGA reserves the right to change or add to this list as MGA's investigation and discovery in this matter progresses. To date, Mattel has refused to produce key information and documents that may yield additional trade secrets misappropriated from MGA. MGA will amend this list to include any additional trade secrets identified in discovery.

### DESIGNATED TRADE SECRETS

The trade secrets at issue in this case relate to MGA's unreleased products. The trade secrets are as follows:

The appearance, operation, intended play pattern and plans to advertise on television for the following unreleased MGA products taken by Mattel from MGA private showrooms at the New York, Hong Kong and other Toy Fairs from 2000–2006:

1. Hopscotch Heather,
2. Dream Baby,
3. Bratz,
4. Jumpin Jenny,
5. Scooter Samantha,
6. Hello Kitty Be Beautiful Matchmake Journal and Virtual Crush,
7. iCandy,
8. Liar Liar,
9. Monkey See Monkey Do,
10. A New Breed and Palm Puppies,
11. Hello Kitty Scooter,
12. Insecto Bots,
13. Monster Surgery,
14. Bratz Mobile,
15. My Beautiful Mermaid,
16. Hulk Two-Way Radios,
17. Bratz Styl' It Collection,
18. Bratz Boys,
19. Bratz Winterwonderland Collection,
20. Bratz Formal Funk Collection,
21. Bratz Runway Formal Funk Collection,
22. Bratz FM Limo,
23. Bratz Motorcycle,
24. Bratz Pet Assortment,
25. Bratz City Playsets,
26. Musikids,
27. Lil' Bratz Boyz,

- 1 -

28. Lil' Bratz Slumber Party,
29. Lil' Bratz Spring Break,
30. Lil' Bratz Loungin' Loft,
31. Lil' Bratz Vehicle Assortment,
32. Lil' Bratz Deluxe Mall Playset,
33. My Beautiful Ballerina,
34. Pia Back to School,
35. Jumpin' on the Bed Bouncin' Baby,
36. Rachel Lul A Bye Baby,
37. RC Street Flyer Samantha,
38. Walk 'n Go Jo Jo,
39. Bead Palace,
40. Bratz Stylin' Dance Party,
41. Alien Racers,
42. Micro Blast Jet Skis,
43. Bratz Petz,
44. Lil' Bratz Dance Party,
45. Dazzlin' Disco Café,
46. Sun Kissed Summer,
47. Girls Nite Out,
48. Wild Life Safari Collection,
49. Bratz Lucious Lamp/Alarm Clocks,
50. Flower Fairies,
51. Bratz Internet Café Playset,
52. Bratz Retro Café,
53. Lil' Bratz Transforming Bedroom, and
54. Bratz Girls Nite Out.

The trade secrets at issue are described, embodied and/or duplicated within the following Mattel trade fair reports:

| Doc. No. | Bates Number Range | Title |
|---|---|---|
| 1. | M 1679958 – M 1680047 | New York Toy Fair 2000 Competitive Review |
| 2. | M 1680048 – M 1680093 | Toy Fair 2000 Competitive Update |
| 3. | M 0938405 – M 0938498 | Toy Fair 2001 Girl's Worldwide Consumer Research |
| 4. | M 1679865 – M 1679884 | 2001 New York Toy Fair Report |
| 5. | M 1680714 – M 1680811 | Toy Fair 2001 Competitive Toy Review |
| 6. | M 1680525 – M 1680713 | 2002 Competitive Toy Review |
| 7. | M 1663329 – M 1663389 | New York Toy Fair 2003 |
| 8. | M 0297397 – M 0297605 | New York Toy Fair 2003 Competitive Review |

Notice by MGA of Trade Secret Designation Pursuant to
Cal. Code Civ. Proc. § 2019.210
CV 04-9049 DOC (RNBx)

| 9. | M 1679885 – M 1679922 | 2004 New York Toy Fair |
|----|----------------------|------------------------|
| 10. | M 110725 | Video |

Dated:    August 24, 2010          ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____
William A. Molinski
Attorneys for MGA Parties and IGWT
Investments LLC

OHS West:260976754.1