# EXHIBIT 2

```
                    04cv9049 Mattel 2013-02-26 Hrg.txt
                                                               1

 1                     UNITED STATES DISTRICT COURT

 2                    CENTRAL DISTRICT OF CALIFORNIA

 3             HONORABLE DAVID O. CARTER, JUDGE PRESIDING

 4                         - - - - - - -

 5   MATTEL, INC.,                    )
                                      )
 6             Plaintiff,             )
                                      )
 7        vs.                         ) NO. LACV 04-9049 DOC
                                      )    Item No. 43
 8   MGA ENTERTAINMENT INC., et al.,  )
                                      )
 9             Defendants.            )
     _____)
10

11

12

13              REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                        Hearing on Motions

15                       Santa Ana, California

16                     Tuesday, February 26, 2013

17

18

19

20

21   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
22   United States District Court
     411 West 4th Street, Room 1-053
23   Santa Ana, California 92701
     (714) 558-8141
24

25   04cv9049 Mattel 2013-02-26  Hrg
                                                               2

 1   APPEARANCES OF COUNSEL:

 2
     FOR MATTEL, INC.:
 3
              QUINN EMANUEL URQUHART & SULLIVAN LLP
 4        BY: Michael T. Zeller
              Susan Estrich
 5            Brett Dylan Proctor
              Ian Shelton
                         Page 1
```

```
                  04cv9049 Mattel 2013-02-26 Hrg.txt
 6                   Ryan Baker
                   Attorneys at Law
 7              865 South Figueroa Street
                10th Floor
 8              Los Angeles, California 90017-2543
                213-443-3000
 9

10


11
     FOR DEFENDANT MGA ENTERTAINMENT, INC.:
12
                KELLER RACKAUCKAS LLP
13              BY:  Jennifer L. Keller
                   Attorney at law
14              18500 Von Karman Avenue
                Suite 560
15              Irvine, California 92612
                949-476-8700
16
                -AND-
17
                SHERNOFF BIDART ECHEVERRIA LLP
18              BY: Michael J. Bidart
                   Attorney at Law
19              600 South Indian Hill Boulevard
                Clarement, California 91711
20              (909) 621-4935

21

22

23

24

25
                                                                   3


 1   APPEARANCES OF COUNSEL (Continued):

 2   FOR INTERVENOR DEFENDANT CRUM & FORSTER INSURANCE SPECIALTY
     INSURANCE COMPANY:
 3

 4              MUSICK PEELER AND GARRETT
                BY:  Susan J. Field
 5                 Attorney at Law
                One Wilshire Boulevard
 6              Suite 2000
                Los Angeles, California 90017-3383
 7              213-629-7886


 8

 9   FOR INTERVENOR DEFENDANTS CHARTIS SPECIALITY INSURANCE
     COMPANY, ET AL.:
10
                DRINKER BIDDLE & REATH LLP
11              BY:  Mark D. Sheridan
                   Attorney at Law
12              500 Campus Drive
                              Page 2
```

```
                  04cv9049 Mattel 2013-02-26 Hrg.txt
                  Florham Park, NJ 07932-1047
    13            973-549-7336

    14

    15
         FOR INTERESTED PARTY EVANSTON INSURANCE COMPANY:
    16

    17            TROUTMAN SANDERS LLP
                  BY:  Sean M. Hanifin
    18                 Attorney at Law
                  401 Ninth Street NW
    19            Suite 1000
                  Washington, DC 20004-2134
    20            202-662-2026

    21            -AND-

    22            TROUTMAN SANDERS LLP
                  BY: Paul L. Gale
    23                Attorney at Law
                  5 Park Plaza
    24            Suite 1400
                  Irvine, California 92614-2545
    25            949-622-2700
                                                                        4


     1   APPEARANCES OF COUNSEL (Continued):

     2

     3   FOR INTERESTED PARTY ORRICK, HERRINGTON & SUCLIFFE LLP:

     4            ORRICK, HERRINGTON & SUTCLIFFE, LLP
                  BY:  I. Neel Chatterjee
     5                 Attorney at Law
                  1000 Marsh Road
     6            Menlo Park, CA 94025
                  650-614-7356
     7
                  -AND-
     8
                  ORRICK, HERRINGTON & SUTCLIFFE, LLP
     9            BY:   THOMAS S. MCCONVILLE
                         Attorney at Law
    10            4 Park Plaza
                  Suite 1600
    11            Irvine, California 92614

    12            (949) 567-6700

    13            -AND-

    14            SHARTSIS FRIESE
                  BY:   Lisa Jacobs
    15                   Attorney at Law
                  1 Maritime Plaza
    16            18th Floor
                  San Francisco, California 94111
    17            415-421-6500

    18
                                Page 3
```

04cv9049 Mattel 2013-02-26 Hrg.txt

12          THE COURT:  Okay.  Well, why don't you have a seat
13  in an arguing chair, then.
14          MR. CHATTERJEE:  Your Honor, Neel Chatterjee.  I'm
15  at Orrick and I'm gonna be assisting Ms. Jacobs.
16          THE COURT:  Okay.
17          MR. McCONVILLE:  Tom McConville, Your Honor, for
18  Orrick.
19          THE COURT:  Are you going to be arguing the
20  matter?
21          MR. McCONVILLE:  Not unless the Court has
22  questions.
23          THE COURT:  Okay.  Just someplace, then.
24          MR. HANIFIN:  Good morning, Your Honor.  Sean
25  Hanifin and Paul Gale for Evanston Insurance.

                                                          9

1           THE COURT:  Great.  Thank you.
2           Well, first of all, I missed all of you.  It's
3   nice to have all of you back.
4           I don't care how we proceed, but I will ask this
5   question right to begin with:  It appears to me that the
6   interpleader is a discretionary call by the Court, and it
7   appears to me that I was given specific directions by the
8   Circuit; and that was rather explicit, and that was,
9   basically, Mattel was to pay $137 million.
10          And I'm a little concerned with that, what I think
11  is explicitness, of then taking a discretionary call on an
12  interpleader.  So I want you to tell me what you think the
13  Circuit meant by that -- not now -- you know, in your
14  argument.  That's my first question.
15          The second one, though, is for the plaintiffs, and
16  that is -- I forget the amount right now what bond is.  Is
17  it 310- or 315 million something?
18          MR. ZELLER:  315 million, Your Honor.

04cv9049 Mattel 2013-02-26 Hrg.txt

19      THE COURT:  And with the explicit amount of 157-,
20 why would the Court hold to a 315 million bond rather than
21 the explicit amount that the Circuit has directed to be
22 paid?
23      Those are my two fundamental concerns going into
24 the argument.  Beyond that, I don't care who argues first.
25 So who would like to start?  You'll have two rounds.
                                                        10

 1      MR. ZELLER:  Your Honor, for Mattel.
 2      We agree as to the $315 million bond issue.
 3 That's one of the reasons why we've come to the Court for
 4 relief.
 5      The second issue, with respect to the Ninth
 6 Circuit, there's nothing in the mandate that, from our view,
 7 would preclude the Court from pursuing an interpleader.
 8      THE COURT:  No.  There may not be, but it still
 9 seems rather directive.  And if I'm using my discretion, I
10 might err on the side of caution and follow what I think the
11 direction of the Circuit is.
12      MR. ZELLER:  And obviously, from Mattel's
13 perspective, we'll do whatever the Court orders.
14      THE COURT:  Yeah, but --
15      MR. ZELLER:  The Court, I'm sure, recognizes and
16 appreciates we have competing claimants and so --
17      THE COURT:  Just a moment.
18      Why should I be concerned?  Mattel launched this,
19 in a sense.  And now Mattel steps back and says, "Oh, we had
20 a party, but now we want out."
21      Well, you might want to finish this party.  And
22 why should I be concerned that you have competing claimants?
23      MR. ZELLER:  Well, Your Honor, because of the fact
24 that Orrick presumably is attempting to set up a tortious

Page 8

```
                        04cv9049 Mattel 2013-02-26 Hrg.txt
25    interference claim.  I mean, that's why they give notice.
                                                                            11

 1    And attorney liens are obviously serious business.  We don't
 2    believe that they have a valid claim, and certainly not when
 3    we're complying with a court order.
 4              But, Your Honor, the fundamental point is, we've
 5    come to this Court for directive and guidance.  We don't
 6    think the Ninth Circuit has foreclosed the Court's directive
 7    as to where the money should go and whether or not the Court
 8    essentially holds the money pending disposition of these
 9    competing claims.
10              THE COURT:  Why would the Court do that?
11              MR. ZELLER:  I'm sorry?
12              THE COURT:  Why would the Court do that?
13              MR. ZELLER:  Well, I think the Court would want to
14    do that because it is going to proliferate the litigation
15    otherwise.
16              THE COURT:  This litigation's going on for a while
17    anyway, Counsel.  I'm not too concerned.
18              MR. ZELLER:  The purpose of interpleader
19    fundamentally is to avoid exactly that scenario where you
20    have competing claimants to a fund.  And we're entitled, we
21    believe, under the interpleader statute, to avail ourselves
22    of that to avoid the complexity of these competing claims.
23              And part of the interpleader statute itself -- and
24    this is reflected in the Mack case, Your Honor -- is avoid
25    saddling the stakeholder with additional costs and having to
                                                                            12

 1    defend where it doesn't really have a stake in the outcome.
 2              To us, to Mattel, we're indifferent as to who gets
 3    the money.  We will follow the Court's directive.  The
 4    logical process by which to do that here is an interpleader
 5    action and that's what's reflected in the Mack decision.
                                    Page 9
```

04cv9049 Mattel 2013-02-26 Hrg.txt

6  But even the fact of -- and I hear the Court's point about
7  why should the Court care.  But that is the fundamental
8  reason why Congress implemented the interpleader statute,
9  is -- is to avoid further proliferation of litigation, as
10 well as imposing unnecessary costs, from our perspective,
11 both on the Court and on us, as the stakeholder, where it
12 does not matter fundamentally who we pay.  Obviously, we are
13 paying that money.
14         THE COURT:  Well, both parties have -- and I don't
15 mean this -- well, yes, I do -- both parties haven't seemed
16 to be too concerned about costs up to this point, neither
17 Mattel nor the defense.  You've been well-funded on both
18 sides.  The fees have been astronomical.
19         MR. ZELLER:  Well, we -- certainly, Your Honor, we
20 have tried to avoid unnecessary litigation over issues that
21 don't concern us.  The issue of who gets the money does not
22 concern us.  We have received letters from insurers and from
23 Orrick, all of whom claim that is their money.  And that is
24 the purpose of interpleader.
25         I -- I don't think, Your Honor, that the Court
                                                          13

1  just has broad discretion to say -- decline jurisdiction
2  over an interpleader action where it is met.  All that MGA
3  cites for that proposition are cases where a court has
4  decided not to award attorneys fees, which is a separate
5  issue, and that's just a particular form of relief.  Or they
6  cite, for example, a laches case, which this couldn't
7  possibly apply here.
8          But, fundamentally, Your Honor, we think that this
9  is governed by the Mack case where the statutory
10 requirements for interpleader are met, and this is the
11 logical course to follow.

```
                       04cv9049 Mattel 2013-02-26 Hrg.txt
12           And it does go straight to the purpose of
13   interpleader in trying to bring the kind of -- the claims
14   under the umbrella of one action so it can be orderly
15   adjudicated.
16           THE COURT:  We'll come back for another round.
17   Just a moment.
18           Ms. Estrich, do you have anything you would like
19   to add?
20           MS. ESTRICH:  No.
21           THE COURT:  Let me go down the line, then.
22           Would you state your name again.
23           MS. JACOBS:  Lisa Jacobs.
24           THE COURT:  Please.
25           MS. JACOBS:  Your Honor, we will agree with Mattel
                                                              14
 1   that the Ninth Circuit didn't --
 2           THE COURT:  Who do you represent again?
 3           MS. JACOBS:  Sorry.  Orrick, Herrington and
 4   Sutcliffe.
 5           -- that the Ninth Circuit directive doesn't
 6   preclude an interpleader action in this case.  And we think
 7   it's appropriate here because the judgment -- the award of
 8   attorneys fees was for the defense against Mattel's
 9   copyright claims.  That includes the fees incurred by
10   Orrick, Herrington and Sutcliffe, a substantial portion
11   which have not been paid.
12           Orrick has a claim in excess of $30 million
13   against MGA that's currently pending in arbitration and has
14   obtained a $23 million lien from the arbitration panel to
15   secure a portion of that claim, and that lien is on this
16   judgment.
17           The insurance carriers are also claiming an
18   entitlement to these funds, and the appropriate -- we think
                                Page 11
```

04cv9049 Mattel 2013-02-26 Hrg.txt

19  the most fair result here would be for the Court to grant
20  Mattel's application to allow them to interplead the funds
21  and to adjudicate the opposing adverse claims against these
22  funds.
23       THE COURT: Okay. Thank you very much. We'll
24  come back for a second round.
25       Counsel?

15

1        MR. CHATTERJEE: Your Honor, I was assisting
2   Ms. Jacobs. I'm with Orrick. I'll be...
3        THE COURT: Okay. Any parties in the back that
4   are going to speak?
5        All right. Ms. Keller, once again. I know who
6   you represent, but for the record.
7        MS. KELLER: Yes, Your Honor. Jennifer Keller on
8   behalf of the MGA parties.
9        Your Honor, we've heard a lot here about how this
10  case would serve the classic purpose of interpleader, but
11  that's just not the case. Interpleader -- an interpleader
12  action requires the stakeholder to show the existence of
13  competing claims against the stakeholder to the stake being
14  deposited with the Court.
15       What you have here really is MGA is the sole
16  creditor of Mattel. And in bringing the interpleader, what
17  Mattel is saying is, "Well, MGA's got all these creditors
18  out here that are gonna go after MGA, so we're gonna
19  interplead the funds." But that's not how it's supposed to
20  work.
21       The purpose of interpleader is to protect a party
22  that wants to make legitimate payment to the claimants, but
23  has competing claims. And that's why, when the Court looks
24  at these cases that have been cited, they're insurance

Page 12

```
                     04cv9049 Mattel 2013-02-26 Hrg.txt
25    cases.
                                                                     16

 1              For example, you have life insurance:  Somebody
 2    dies, and there are competing claims to who's the
 3    beneficiary of the policy.  The insurance carrier,
 4    confronted with those competing claims against it,
 5    interpleads the funds.  The Mack case that Mr. Zeller relied
 6    on is another insurance case.  And it's another case where
 7    there were competing claims against an insurance policy.
 8              I mean, that has some particular twists and turns
 9    because it involved the owner of a 401K plan, who was in the
10    process of divorcing his wife, had stipulated to a court
11    order naming her as an alternate plan payee; but before the
12    court -- the order could be entered, the plan owner murdered
13    his wife and shot the state court judge presiding over the
14    matter.  And the state court ultimately entered an order
15    nunc pro tunc transferring the plan payment to the wife.
16    Now, while it was being appealed, the trustee came in and
17    filed an interpleader on behalf of the estate.
18              So again, you have an insurance policy, you have
19    multiple claimants coming after that policy.  The
20    stakeholder is the person subject to those claims.
21              That isn't true here.  It just isn't true.  There
22    is one creditor.  Right now there is one claimant to these
23    funds that the Ninth Circuit has designated should go to
24    MGA, as the Court noted.  And MGA may have to fight it out
25    later with those creditors, whether it's Orrick, whether
                                                                     17

 1    it's the insurance carriers; but those are not claimants
 2    against Mattel.  The purpose of interpleader would be to
 3    protect Mattel from having these -- having people come after
 4    it.
 5              So what are the causes of action that anybody
                                Page 13
```

```
                      04cv9049 Mattel 2013-02-26 Hrg.txt
25   grant interpleader?
                                                                         41

1               MR. ZELLER:  Well, I think --
2               THE COURT:  Because it's hard for me -- let me
3    just finish that thought', cause it's naive.
4               I don't understand yet the fear on Mattel's part.
5    I understand the desire for interpleader.  I understand your
6    legal argument.  I don't understand how you'd be dragged
7    into future litigation if the interpleader wasn't granted.
8               MR. ZELLER:  Well, I would say this, Your Honor --
9    just a couple of responses to that, is, is that what we
10   really are looking for is the Court's direction:  Clear
11   guidance what we ought to do.
12              There has been, of course, a number of competing
13   claims that have been presented to us, people saying, "Don't
14   pay MGA.  We have rights to those moneys."
15              THE COURT:  Just a moment.  Just a moment.
16              MR. ZELLER:  Now --
17              THE COURT:  So let me follow up.
18              If the Court doesn't grant interpleader and you
19   are paying MGA 137- or $138 million, those parties, it would
20   seem, would have a difficult time bringing Mattel back into
21   any future lawsuit.
22              MR. ZELLER:  If the Court orders us, that's
23   correct.  And let me even be --
24              THE COURT:  We've got lots of time now.  I'm going
25   to repeat that.
                                                                         42

1               I don't understand, whether interpleader is
2    granted or not, the future exposure of Mattel to any further
3    litigation.  And if there is, this is your time to tell me
4    how that would occur.
5               MR. ZELLER:  It would occur this way,
                                  Page 33
```

04cv9049 Mattel 2013-02-26 Hrg.txt

```
 6   Your Honor -- so let me read from Levin, which is a
 7   69 Cal.App. 4th case, specifically at page 1287 through
 8   1288.  It's a 1999 case.
 9            "Accordingly, we hold that an insurer
10            and the attorneys retained to defend the
11            insureds are liable for intentional
12            interference with the prospective
13            economic advantage of a discharged
14            attorney when, after receiving a notice
15            of lien for attorney fees and costs
16            filed in the case by the discharged
17            attorney, they pay his former client and
18            the latter's new attorney in settlement
19            or in satisfaction of a judgment with
20            knowledge of the lien."
21            That's why Orrick filed the lien in this case.  If
22   we pay MGA voluntarily, we are going to be sued.  We don't
23   think it's a valid claim, but we are going to be sued by
24   Orrick.
25            THE COURT:  Let's stop there.
                                                                43

 1            If you pay, it'll be because I order to you pay.
 2   You're never going to get into a voluntary situation.
 3   You've been in a voluntary situation until you came to the
 4   Court.
 5            Only two things are going to happen here:  Either
 6   interpleader or you're going to be ordered to pay MGA.
 7            MR. ZELLER:  Correct.  Right.
 8            THE COURT:  Now I'm going to say it again.  You
 9   didn't answer my question.  You took me around the path
10   again.  Answer my question:
11            How will you be drawn into future litigation if I
```

Page 34

04cv9049 Mattel 2013-02-26 Hrg.txt

12  he either didn't look at the docket or it's just being made
13  up as we go along.
14          Ms. Field -- in fact, it's attached to
15  Mr. Zeller's declaration:  Letters from 2011 asserting
16  claims for subrogation.  They're in the record right before
17  Your Honor today.  So the suggestion that this is all new,
18  Your Honor, is baseless.  The carriers have asserted these
19  claims.
20          The reason Your Honor should grant interpleader,
21  as opposed to simply awarding the money to MGA, is to
22  protect Mattel.  If Your Honor awards the money to MGA, my
23  clients will sue Mattel in subrogation.  We will assert that
24  claim.
25          Whether it's in a separate action or we add it to

                                                              69

 1  the reimbursement action, my clients -- very clear -- will
 2  sue Mattel in subrogation, Your Honor.
 3          At that point in time, Mattel will face the risk
 4  that it's here today to deal with.  If Your Honor grants
 5  interpleader, the money can be paid into court, and it can
 6  enjoin us from suing Mattel.  At that point in time, my
 7  clients will have no option but to litigate with MGA about
 8  the pot of money that has been placed into court.
 9          In the absence of that injunction, which is only
10  appropriate as part of interpleader, my clients will sue
11  Mattel in subrogation, Your Honor.
12          THE COURT:  Okay.
13          MR. SHERIDAN:  Thank you.
14          THE COURT:  All right.  This is the last round.
15  I'm sorry.  On behalf of Orrick.  My apologies.
16          MR. CHATTERJEE:  Your Honor, Ms. Jacobs was kind
17  enough to let me make a few remarks, if I may.
18          So -- Your Honor, I'm Neel Chatterjee.  I lead the

Page 55

04cv9049 Mattel 2013-02-26 Hrg.txt

19   Practice Group -- the Intellectual Property Practice Group
20   at Orrick, and I'm the person overseeing this litigation for
21   our firm.  We also are working closely with the Chartis
22   firm.
23          Your Honor, you asked two questions at the outset
24   of this.  The first question really fundamentally was, is,
25   what is the right answer:  Interpleader or order Mattel to

                                                           70

 1   pay today.  And the second question was about the
 2   310 million supersedeas bond versus reducing it to roughly
 3   137 million.
 4          I'll answer the second one first 'cause it's the
 5   easier one for us.  We don't -- we don't have a firm
 6   position, but our general view is reducing the amount of
 7   bond is -- is the right answer.
 8          Um, on the first question, I take issue with
 9   Ms. Keller's remark that Orrick is ganging up on MGA.  You
10   saw what the commitment of people and my group made to win
11   this case.  You know that effort.  And you know now that
12   Mr. Larian and MGA have refused to pay us for that effort.
13          THE COURT:  Just a moment.
14          But you are in front of an arbitration panel.  And
15   presuming you prevail in whatever amount, that's going to be
16   a judgment against Orrick.
17          MR. CHATTERJEE:  That's correct, Your Honor.
18          THE COURT:  Why don't you simply pursue that?
19          Your fear is that they're going to hide the money
20   or something's going to dissipate -- that's your real fear.
21          MR. CHATTERJEE:  Precisely, Your Honor.  And for
22   that reason, the arbitration panel has given us a partial
23   final award of $23 million.  And that is in the form of a
24   lien.  If you do not interplead that money, you effectively

                         Page 56

```
                     04cv9049 Mattel 2013-02-26 Hrg.txt
25   make that lien a nullity.
                                                                  71

 1             The goal that --
 2             THE COURT:  Just a moment.  The opposite is that
 3   the arbitration panel is interfering with this Court.  So
 4   tread lightly on that.  Tread very lightly on that about who
 5   has jurisdiction here.
 6             MR. CHATTERJEE:  I understand that point,
 7   Your Honor.
 8             THE COURT:  Thank you very much.  Now let's move
 9   along.
10             MR. CHATTERJEE:  And I do think that there is a
11   tricky issue there on -- on who has the jurisdiction,
12   particularly if there is an interpleader, your Honor.
13             Fundamentally, I thought it would be helpful to
14   discuss a situation I had that was virtually identical to
15   this in front of Judge Ware in the Winklevoss v. Facebook
16   case.  Because, in that case, there was a judgment, and
17   there was a certain amount of money in consideration that
18   was transferring hands.  In that case, there were three law
19   firms that came in and gave notices of liens.
20             And the way that Judge Ware looked at it was he
21   felt that, while there were two warring parties -- in this
22   case, it would be MGA versus Mattel -- there was also an
23   independent obligation of the court, once it became aware of
24   potential stakeholders in that consideration.
25             For example, Quinn Emanuel said that they had an
                                                                  72

 1   entitlement to some of those funds because of an agreement
 2   they had with the Winklevoss family.  And what Judge Ware,
 3   did -- he didn't exactly interplead the money.  But instead,
 4   he appointed a special master to oversee the distribution of
 5   the funds.
                                Page 57
```

04cv9049 Mattel 2013-02-26 Hrg.txt

6  meritless as we think it is. But nevertheless, it will at
7  least bring an end to that portion of it and give the Court
8  more control.
9           And that is part of what Mack says is an important
10 aspect -- an important purpose of interpleader, where it
11 says -- it's talking about the purpose of interpleader:
12           "But also includes limiting litigation
13           expenses which is not dependent on the
14           merits of adverse claims only their
15           existence."
16           THE COURT: Okay. Thank you very much.
17           MR. ZELLER: Thank you.
18           THE COURT: Counsel, you have 5 minutes.
19           MR. CHATTERJEE: Your Honor, I just -- I want to
20 wind up with one thing. I don't think it'll even take me,
21 uh, 5 minutes.
22           So, um, as Your Honor recognized earlier, MGA is
23 choosing to proceed with its current case, and it is
24 choosing to use the Mattel money to fund that. That is a
25 credible threat of dissipation of the assets.
                                                              83

1            THE COURT: But also to defend.
2            In other words, you've got a very strong argument
3  on the first part, but you're neglecting the second part.
4            MR. CHATTERJEE: And that's an important part,
5  Your Honor. Because I heard you say that before. But as I
6  understand the case today, with the remand from the Ninth
7  Circuit, the only claims that remain are MGA's claims
8  against Mattel.
9            The -- there -- there aren't claims going the
10 other way. So they are using the money that at least an
11 arbitration panel has found partially we're entitled to, to

```
                      04cv9049 Mattel 2013-02-26 Hrg.txt
12   fund a litigation against Mattel.  That's the money that we
13   believe we're entitled to; and, at least as to 23 million of
14   it, or so, the arbitration panel has agreed with us.
15               That is a threat of dissipation of the assets.
16   Because they don't want to pay us, they want to use that
17   money to litigate against Mattel, that is -- that is not
18   just a potential threat, that is an actual objective that
19   they have articulated.
20               And if they're saying they don't have the money
21   otherwise, why shouldn't we be concerned that the assets are
22   going to be dissipated and won't be available to us after
23   all the hard work of my partners and colleagues in the
24   earlier case that was before Your Honor.
25               Your Honor, it is for that reason that we believe
                                                                84

 1   interpleader is proper and that we believe that Your Honor
 2   should interplead the money to ensure that our firm gets
 3   paid the amounts that we -- that are due.
 4               THE COURT:  Thank you.
 5               You have 5 minutes, Ms. Keller.
 6               MS. KELLER:  Kids these days don't know what a
 7   broken record is, but I do, and I don't want to sound like
 8   one, so I don't want to -- I won't trod the same ground that
 9   Mr. Zeller was starting down with the Mack case.  Mack case
10   discusses interpleader, what it is and what it isn't.
11               Counsel hasn't cited a single case, not one, that
12   interpleader is appropriate to prevent dissipation of
13   assets, not a single one.  This Court would be making
14   probably the first such foray into interpleader law if the
15   Court were to do that.
16               These parties have had plenty of time to come up
17   with cases and examples.  They haven't been able to.  What
18   they've come up with is the standard insurance cases where
                                 Page 67
```