EXHIBIT 3

1   SHARTSIS FRIESE LLP
     ARTHUR J. SHARTSIS (Bar #51549)
2   FRANK A. CIALONE (Bar #172816)
     LISA A. JACOBS (Bar #230364)
3   One Maritime Plaza, Eighteenth Floor
     San Francisco, CA  94111
4   Telephone:  (415) 421-6500
     Facsimile:  (415) 421-2922
5   Email:  ashartsis@sflaw.com; fcialone@sflaw.com;
     ljacobs@sflaw.com
6

7   Attorneys for Respondent and Defendant
     ORRICK, HERRINGTON & SUTCLIFFE LLP

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   COUNTY OF ORANGE

10                 CENTRAL JUSTICE CENTER

11

12   MGA ENTERTAINMENT, INC., MGA     Case No.  30-2013-00628354-CU-PA-CJC
     ENTERTAINMENT HK, LTD., MGAE
13   DE MEXICO S.R.L. DE C.V.; ISAAC    **MEMORANDUM OF POINTS AND**
     LARIAN,                       **AUTHORITIES IN SUPPORT OF**
14                            **ORRICK, HERRINGTON & SUTCLIFFE**
              Petitioners and       **LLP'S PETITION TO CONFIRM**
15              Plaintiffs,          **PARTIAL FINAL ARBITRATION**
                            **AWARD**
16        v.
                            **[PUBLIC REDACTED VERSION**
17   ORRICK, HERRINGTON & SUTCLIFFE  **PURSUANT TO CRC 2.551(b)(3)(ii)]**
     LLP,
18                            Date:        April 17, 2013
                 Respondent and   Time:        1:30 p.m.
19              Defendant.        Dept.:       C19
                            Judge:     Honorable Charles Margines
20

21

22

23

24

25

26

27

28

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................. 1

II.  STATEMENT OF FACTS .................................................................................... 2

    A.  The Mattel Litigation ................................................................................ 2

    B.  The Arbitration Between Orrick And MGA .............................................. 4

        1.  MGA Initiates AAA Arbitration Proceedings Against Orrick .................. 4

        2.  Orrick And MGA Amend The Arbitration Agreement And Agree To Arbitration With JAMS Governed By JAMS Rules ........................... 4

        3.  Orrick Brings A Motion For Provisional Relief ...................................... 5

    C.  The Partial Final Award ............................................................................ 6

**REDACTED**

**REDACTED**

**REDACTED**

    D.  MGA's Purported Rescission Of The Arbitration Agreement ................................ 9

III.  ARGUMENT ...................................................................................................... 10

    A.  The Partial Final Award Should Be Confirmed ..................................... 10

        1.  The Partial Final Award, Which Grants Interim Equitable Relief, Is Considered A Final Award Subject To Court Confirmation ................... 10

        2.  Judicial Review Of An Arbitration Award Is Limited And The Award Is Presumed To Be Valid ............................................................ 11

        3.  The Same Deferential Standard Of Review Applies To Judicial Review Of An Arbitrator's Chosen Remedy ............................................ 12

        4.  The Partial Final Award Is Presumed Valid And Must Be Confirmed .............................................................................................. 13

    B.  MGA Cannot Establish Grounds To Vacate The Partial Final Award ................. 14

        1.  The Panel Did Not Exceed Its Authority In Awarding Interim Relief In The Form Of A Lien .............................................................. 14

            a.  The Panel's Determination That It Had The Power To Award Interim Relief May Not Be Second-Guessed ................... 15

            b.  The Panel's Chosen Remedy Was Within The Scope Of Its Broad Equitable Powers To Fashion Appropriate Relief ............. 16

        2.  In Any Event, The Court Has The Power To Correct The Award And Issue A Writ Of Attachment ........................................................... 18

        3.  The Partial Final Award Is Not Fatally Ambiguous ............................. 19

IV.  CONCLUSION ................................................................................................... 20

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*Banco de Seguros del Estado v. Mutual Marine Office, Inc.,*
    344 F.3d 255 (2nd Cir. 2003)................................................................ 18

*Certain Underwriters at Lloyd's, London v. Argonaut Insurance Co.,*
    264 F. Supp. 2d 926 (N.D. Cal. 2003) ................................................... 18

*Cragwood Mangers, L.L.C. v. Reliance Insurance Co.,*
    132 F. Supp. 2d 285 (S.D.N.Y. 2001)................................................... 18

*Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.,*
    935 F.2d 1019 (9th Cir. 1991)............................................... 10, 11, 14, 18

## STATE CASES

*Advanced Micro Devices, Inc. v. Intel Corp.,*
    9 Cal. 4th 362 (1994) ................................................................... passim

*Creative Plastering Inc. v. Hedley Builders, Inc.,*
    19 Cal. App. 4th 1662 (1993)......................................................... 11, 12

*Hightower v. Superior Court,*
    86 Cal. App. 4th 1415 (2001).................................................. 11, 12, 14, 15

*Moncharsh v. Heily & Blase,*
    3 Cal. 4th 1 (1992) .......................................................... 11, 12, 14, 15

*Schlesinger v. Rosenfeld, Meyer & Susman,*
    40 Cal. App. 4th 1096 (1995)............................................................ 7

*United Brotherhood of Carpenters & Joiners of America, Local 642 v. DeMello,*
    22 Cal. App. 3d 838 (1973).............................................................. 11

*Walter v. National Indem. Co.,*
    3 Cal. App. 3d 630 (1970)........................................................... 11, 14

## STATE STATUTES

Business & Professions Code § 6147 ........................................................ 5

Business & Professions Code § 6147(b) ................................................... 5

California Code of Civil Procedure § 1280................................................ 15

California Code of Civil Procedure § 1281.8........................................ 14, 15

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

California Code of Civil Procedure § 1281.8(b) ............................................................... 18

California Code of Civil Procedure § 1281.8(d) ............................................................... 15

California Code of Civil Procedure § 1285 ....................................................................... 11

California Code of Civil Procedure § 1286 ....................................................................... 11

California Code of Civil Procedure § 1286.2 .............................................................. 12, 16

California Code of Civil Procedure § 1286.2(a) ............................................................... 12

California Code of Civil Procedure § 1286.6(b) ............................................................... 18

California Code of Civil Procedure § 1286.6(c) ............................................................... 20

California Code of Civil Procedure § 1287.4 ................................................................... 14

## RULES

JAMS Rule 1(a) ................................................................................................................. 7

JAMS Rule 24(c) ............................................................................................................. 15

JAMS Rule 24(e) ....................................................................................................... passim

AAA Rule 34 ................................................................................................................... 11

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.
30-2013-00628354-
CU-PA-CJC

- iii -
MPA ISO ORRICK'S PETITION TO CONFIRM
PARTIAL FINAL ARBITRATION AWARD

Shartsis Friese LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    Orrick, Herrington & Sutcliffe LLP ("Orrick") submits this memorandum in support of its

2    petition to confirm a Partial Final Award entered by a JAMS arbitration panel against MGA

3    Entertainment, Inc., Isaac Larian, et al. (collectively, "MGA") on January 25, 2013.

4    **I.    INTRODUCTION**

5    Orrick seeks to confirm a Partial Final Award that was issued by a unanimous panel of

6    three very experienced JAMS arbitrators.  MGA, which owes Orrick more than $23 million for

7    fees and costs incurred in Orrick's completely successful representation of MGA in a "bet-the-

8    company" case against Mattel, initiated the arbitration proceedings by bringing a claim before the

9    American Arbitration Association on August 5, 2011 -- one day after the United States District

10   Court issued a judgment giving MGA a complete defense to Mattel's claims and an award of

11   $310 million in damages and fees against Mattel.  Orrick and MGA then agreed to arbitrate their

12   disputes before JAMS, and further agreed that the arbitration would be governed by the JAMS

13   Comprehensive Rules.   MGA selected Judge Gary Taylor for the arbitration panel, Orrick

14   selected Judge Haley Fromholz, and Judges Taylor and Fromholz together selected Justice

15   Richard Neal as Chairman of the panel.

16   On January 25, 2013, pursuant to a Motion for Provisional Relief brought by Orrick, the

17   arbitration Panel issued a Partial Final Award granting Orrick a $23 million lien against the

18   proceeds of the Mattel judgment.



REDACTED

27   The day before the Panel issued the Partial Final Award, the

28   Ninth Circuit affirmed the portion of the judgment against Mattel awarding MGA more than $137

1    million of fees and costs incurred in defending Mattel's copyright claim.

2         The Partial Final Award should be confirmed.

3    **REDACTED**

4                                                                This conclusion is entirely appropriate and

5    supportable by law. The Partial Final Award is a carefully reasoned decision that was reached by

6    the Panel unanimously after full briefing by the parties, including extensive evidentiary

7    submissions, and a lengthy hearing. The Partial Final Award is narrowly tailored, giving Orrick

8    the right to seek a lien only against the proceeds of the Mattel judgment. This right was conferred

9    through the Partial Final Award which must be confirmed by the Court to create the lien.

10        Judicial review of arbitration awards, including partial final awards, is extremely limited

11   and the Partial Final Award must be confirmed unless MGA shows that a statutory basis exists to

12   vacate the award. No such basis exists here. The Partial Final Award helps ensure that MGA's

13   fee award against Mattel will actually be used to pay the attorneys fees that MGA incurred, rather

14   than to fund MGA's operations, to pay MGA's other creditors, or to be distributed to MGA

15   owner Isaac Larian and other MGA shareholders. In other words, as determined by the Panel, the

16   Partial Final Award is necessary to make the arbitration meaningful. Court enforcement of such

17   an award is essential to preserve the integrity of the arbitration process. In the alternative, if the

18   Court finds that the Panel did not have authority to grant such relief, then the Court should correct

19   the Partial Final Award to grant Orrick a writ of attachment and right to attach $23 million of

20   MGA's assets pending the final resolution of the JAMS arbitration proceedings. The Court

21   should give effect to the Panel's determination that without interim equitable relief, the arbitration

22   proceedings may be rendered ineffectual and result in a hollow victory for Orrick.

23   ## II.    STATEMENT OF FACTS

24        ### A.    The Mattel Litigation

25        In June 2009, MGA and Larian retained Orrick to take over the representation of MGA in

26   litigation with Mattel over the "Bratz" line of dolls which had been pending in the Central District

27   of California since 2004 (the "Mattel Litigation"). Declaration of Frank A. Cialone In Support of

28   Petition to Confirm Partial Final Award ("Cialone Decl."), Ex. F at ¶¶ 2, 6. By that time, the first

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

phase of the Mattel Litigation had already gone to trial and MGA had lost badly:  The jury had awarded Mattel $100 million in damages, and the District Court imposed a worldwide permanent injunction that threatened to destroy MGA.  *Id.*, ¶ 3.  After MGA hired Orrick, Orrick obtained an order from the Ninth Circuit staying the devastating injunction, and then a decision reversing that injunction entirely (and effectively reversing the $100 million jury verdict against MGA as well).  *Id.*, ¶ 9.  The case was remanded to the District Court, which consolidated all claims for retrial.  *Id.*  Orrick also developed evidence that Mattel had illegally and deceptively gained access to MGA's trade secrets, evidence that gave MGA the opportunity not only to assert affirmative claims against Mattel but to undermine Mattel's own claims by painting Mattel as the "bad actor" before the jury.  *Id.*, Ex. F at ¶ 10 and Ex. G at ¶ 24.  In 2011, the case went to a four-month trial in which Orrick and attorney Jennifer Keller (who was hired just before trial to serve as lead trial counsel) obtained an extraordinary result:  A complete defense against all of Mattel's claims, an award of some $137 million in costs and attorneys fees incurred in defending against the copyright claim, and a further award of $172 million in damages, punitive damages, and attorneys fees on MGA's trade secret claims.[1]  *Id.*, Ex. F at ¶ 11  and Ex. E.

The Mattel Litigation was hard-fought and grueling.  There were hundreds of depositions, dozens of expert witnesses, and more than ten thousand docket entries.  *Id.*, Ex. H at ¶ 2; Ex. F at ¶ 10.  Court was in session seven days a week during trial, with sessions often running late into the night.  *Id.*, Ex. H at ¶ 2.

**REDACTED**

Notwithstanding this unbelievable commitment of Orrick to a bet-the-company case and the astounding result, MGA chose not to pay its attorneys' fees.

---

[1]     After being sued by MGA, Orrick withdrew from representing MGA after the 2011 trial. MGA then appeared before the Ninth Circuit with different counsel.  The Ninth Circuit issued its opinion in the Mattel litigation on January 24, 2013.  The Ninth Circuit reversed the trade secret judgment, finding that the District Court erred in ruling that it was a compulsory counterclaim. MGA is free to bring that claim again in a separate lawsuit.  However, the Ninth Circuit affirmed the entire $137 million attorneys fee award on the defense of Mattel's copyright claims, which includes the majority of the attorneys' fees and costs sought by Orrick in the arbitration.  Mattel did not appeal the successful defense of all of its claims.  Cialone Decl., Ex. J.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

**B.    The Arbitration Between Orrick And MGA**

        **1.    MGA Initiates AAA Arbitration Proceedings Against Orrick.**

On August 5, 2011, the day after the District Court issued the $310 million judgment in MGA's favor, MGA sued Orrick, filing an arbitration demand before the American Arbitration Association ("AAA") in accordance with the Engagement Agreement entered into between MGA and Orrick, seeking in excess of $10 million in damages. Cialone Decl., ¶ 8.

The arbitration agreement contained in the Engagement Agreement provided that any dispute arising between Orrick and MGA, including for unpaid fees and charges, negligence, quality of services, breach of contract or fiduciary duty, fraud or any other claims relating to any aspect of the agreement and Orrick's representation of MGA would be resolved through binding arbitration before a panel of three AAA arbitrators. *Id.*, Ex. B at 20. The agreement further provided that the arbitration would be conducted in accordance with AAA Arbitration Rules and Procedures and that the arbitrators would apply the laws of the State of California. *Id.*

        **2.    Orrick And MGA Amend The Arbitration Agreement And Agree To Arbitration With JAMS Governed By JAMS Rules.**

After MGA initiated the AAA arbitration, the parties agreed to submit their dispute to arbitration before JAMS, instead of AAA. The parties agreed to proceed under the JAMS Comprehensive Arbitration Rules. The parties agreement to arbitrate before JAMS is reflected in their September 16, 2011 "Amendment To Binding Arbitration Agreement" (the "Amendment"). Cialone Decl., Ex. C. Specifically, the parties agreed that "[a]ny Arbitration <u>shall</u> be governed by the JAMS Comprehensive Arbitration Rules." *Id.* at ¶ 5 (emphasis added). The parties further agreed that "[t]o the extent the Binding Arbitration Agreement is inconsistent with the terms set forth [in the Amendment], the terms of this Amendment shall control." *Id.*, Ex. C.

MGA then dismissed its AAA arbitration demand and Orrick initiated the JAMS Arbitration in September 2011, seeking to collect unpaid attorneys' fees and costs incurred by MGA for Orrick's representation of it in the Mattel litigation.[2] Cialone Decl., ¶ 8. A Panel of

---

[2]    MGA had stopped paying Orrick during the four-month jury trial. Cialone Decl., Ex. I at ¶ 3. In addition, the Engagement Agreement had allowed MGA to defer a significant portion of the fees and costs it incurred until 60 days after judgment was entered. *Id.*, Ex. F at ¶¶ 20-21.

1    three very experienced retired judges was empanelled: Justice Richard C. Neal, Judge Haley

2    Fromholz, and Judge Gary Taylor.  The arbitration has been proceeding since September 2011.

3


4

5

6        The Plenary Hearing is set for two non-consecutive weeks to take place in late May and

7    early July 2013.  *Id.* at ¶ 8.

8            **3.    Orrick Brings A Motion For Provisional Relief.**

9        In the fall of 2012, the Ninth Circuit set oral argument on Mattel's appeal for December

10   10, 2012.  Cialone Decl., ¶ 14.  This created a significant risk that the JAMS Arbitration would be

11   rendered meaningless and Orrick would be deprived of a remedy, because once the appeal was

12   resolved, MGA would collect from Mattel and dissipate those funds to its multitude of creditors

13   (including owner Larian and other closely related creditors).[4]  *See id.*, Ex. F at ¶¶ 24-25.  To

14   protect itself, Orrick filed a motion for interim relief under JAMS Rule 24(e), which provides:

15       (e) Interim Measures.  The Arbitrator may grant whatever interim measures are
         deemed necessary, including injunctive relief and measures for the protection or
16       conservation of property and disposition of disposable goods.  Such interim
         measures may take the form of an interim Award, and the Arbitrator may require
17       security for the costs of such measures.

18   *Id.*, Ex. D.  Orrick argued that under Rule 24(e) and applicable case law, the Panel had broad

19   equitable powers to fashion appropriate interim relief that would protect Orrick's ability to collect

20   on the award it would likely obtain.


21

22   ─────────────────────────────────────────────────────
     When the outstanding amounts came due, on October 3, 2011, MGA owed Orrick more than $22
23   million in unpaid invoices.  *Id.*, Ex. I, ¶ 5.

24
     **REDACTED**
25

26

27   [4]      The Ninth Circuit issued its opinion in the Mattel litigation on January 24, 2013, affirming
     the judgment in favor of MGA for more than $137 million in attorneys' fees and costs.  The Ninth
28   Circuit reversed the judgment on MGA's trade secret claim.  Cialone Decl., Ex. J.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111



On December 20, 2012, the Panel held a hearing on Orrick's Motion, during which counsel for Orrick and MGA argued their respective positions at length and answered numerous questions posed by the Panel. Cialone Decl., Ex. N.

**C.    The Partial Final Award**

On January 25, 2013, the Panel issued the Partial Final Award, pursuant to JAMS Rule 24(e), granting Orrick a $23 million lien on the proceeds of the Mattel judgment, subject to a $100,000 bond to be posted by Orrick. Cialone Decl., Ex. A. Orrick posted the bond on January 29, 2013. *Id.*, Ex. O.



SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

As explained above, Orrick argued in its Motion for Provisional Relief that JAMS Rule 24(e) provided the Panel with great flexibility:

**REDACTED**

The Panel ultimately chose the narrowest form of relief possible, by issuing an award allowing the court to impose a lien in the amount of $23 million that "will encumber the proceeds of the appeal bond given by Mattel, should that bond be called, and also any funds Mattel pays directly or indirectly to respondents in satisfaction of a judgment." *Id.*, Ex. A at 9-10. The practical effect of the Ninth Circuit's reversal of the judgment on MGA's trade secret claims is that the lien is now further limited and will apply only to the attorneys fees portion of the judgment, which includes the attorneys fees Orrick seeks in the arbitration.

**REDACTED**

The Panel, in deciding to grant Orrick provisional relief, rejected MGA's argument that it did not have the authority to grant the requested relief.

**REDACTED**

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

REDACTED

REDACTED

REDACTED

Shartsis Friese LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111





**D.** **MGA's Purported Rescission Of The Arbitration Agreement**

After the Panel issued the Partial Final Award, MGA purported to rescind the arbitration agreement. Instead of submitting the rescission issue to the arbitration Panel, MGA instead

---

[6] While the Ninth Circuit has since reversed the judgment on MGA's trade secret claim, it affirmed the $137 million in attorneys' fees and costs awarded to MGA for the successful defense against Mattel's copyright claims, which award includes the majority of Orrick's attorneys' fees and costs that are at issue in the arbitration. *See* Cialone Decl., Ex. J.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1   simply gave notice to the Panel and Orrick that it had rescinded the arbitration agreement and

2   filed a Petition to Vacate Partial Final Award and Complaint for Declaratory relief in this Court,

3   seeking a declaration that the arbitration agreement has been rescinded (the

4   "Petition/Complaint"). Cialone Decl., ¶ 22. Thereafter, MGA moved, *ex parte*, in this Court to

5   stay the arbitration. *Id.*, ¶ 23. The Court denied MGA's *ex parte* application, finding that the

6   question of whether there was any basis to rescind the arbitration agreement is properly before the

7   arbitration Panel in the first instance. *Id.*

8   **REDACTED**

9

10

## III.   ARGUMENT

### A.   The Partial Final Award Should Be Confirmed.

#### 1.   The Partial Final Award, Which Grants Interim Equitable Relief, Is Considered A Final Award Subject To Court Confirmation.

15       The Partial Final Award is subject to Court confirmation just as an ultimate final award

16   following the conclusion of the arbitration would be. Interim relief, particularly to preserve

17   assets, is within the power of an arbitration panel. *Pacific Reinsurance Management Corp. v.*

18   *Ohio Reinsurance Corp.*, 935 F.2d 1019, 1023 (9th Cir. 1991). Indeed, the "relief is to have any

19   meaning, the relief must be enforceable at the time it is granted, not after an arbitrator's final

20   decision on the merits." *Id.* at 1022-1023 (emphasis added). Such interim orders must be

21   confirmable by a court because "[a]rbitrators have no power to enforce their decisions. Only

22   courts have that power." *Id.* at 1023. "Given the potential importance of temporary equitable

23   awards in making the arbitration proceedings meaningful, court enforcement of them, when

24   appropriate . . . is essential to preserve the integrity of that process." *Id.* For this reason,

---

[7]



**REDACTED**

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    "temporary equitable orders calculated to preserve assets or performance needed to make a

2    potential final award meaningful . . . are final orders that can be reviewed for confirmation and

3    enforcement by district courts under the FAA." *Id.* (affirming confirmation of an Interim Final

4    Award requiring one party to an arbitration to escrow $20 million pending the arbitrators'

5    decision on the merits).[8] *See also Hightower v. Superior Court*, 86 Cal. App. 4th 1415, 1419

6    (2001) (holding under the California Arbitration Act that an arbitrator may issue a Partial Final

7    Award and that such an award is confirmable by a Court).

8            **2.     Judicial Review Of An Arbitration Award Is Limited And The Award
                       Is Presumed To Be Valid.**
9

10           A party to an arbitration in which an award has been made, whether interim or final, may

11   petition the court to confirm the award.  Code Civ. Proc. § 1285; *see Hightower*, 86 Cal. App. 4th

12   at 1419.  If a petition under Code of Civil Procedure sections 1285 through 1287 is duly served

13   and filed after an award has been rendered, "the court shall confirm the award as made, unless, in

14   accordance with those statutes, it corrects the award and confirms it as corrected, vacates the

15   award, or dismisses the proceeding." Code Civ. Proc. § 1286.  Every presumption is in favor of

16   the validity of an arbitration award.  The party claiming invalidity has the burden of proving

17   proper grounds for that claim, along with "substantial prejudice." *United Brotherhood of*

18   *Carpenters & Joiners of America, Local 642 v. DeMello,* 22 Cal. App. 3d 838, 840 (1973);

19   *Walter v. National Indem. Co.,* 3 Cal. App. 3d 630, 633 (1970).

20           California recognizes a "strong public policy in favor of arbitration...." *Creative*

21   *Plastering Inc. v. Hedley Builders, Inc.*, 19 Cal. App. 4th 1662, 1665 (1993); *Moncharsh v. Heily*

22   *& Blase*, 3 Cal. 4th 1, 9 (1992) (same).  "Consequently, courts will 'indulge every intendment to

23   give effect to such proceedings.'" *Moncharsh,* 3 Cal. 4th at 9 (citation omitted).   The

24   "arbitrator's decision should be the end, not the beginning, of the dispute." *Id.* at 10.

25   _____

26   [8]      In *Pacific Reinsurance*, the interim relief was awarded by the arbitrators under AAA Rule
     34, which provides that "[t]he arbitrator may issue such orders for interim relief as may be
     deemed necessary to safeguard the property that is the subject matter of the arbitration without
27   prejudice to the rights of the parties or to the final determination of the dispute." 935 F.2d at
     1023, n. 1.  This rule is similar to JAMS Rule 24(e), on which the Panel relied in awarding Orrick
28   provisional relief. Cialone Decl., Ex. D at 26.

The public policy favoring arbitration limits judicial review of the arbitral award or interim ruling. Generally, the "merits of [an arbitrated] controversy are not subject to judicial review," and courts will not examine the "validity of the arbitrator's reasoning" nor "review the sufficiency of the evidence" supporting the award. *Id.* at 11. The "only grounds for vacating an award are those which are listed in Code of Civil Procedure section 1286.2." *Creative Plastering,* 19 Cal. App. 4th at 1665; *Moncharsh,* 3 Cal. 4th at 12-13. Those grounds are that:

> (1) The award was procured by corruption, fraud or other undue means.

> (2) There was corruption in any of the arbitrators.

> (3) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator.

> (4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted.

> (5) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title.

> (6) An arbitrator making the award either: (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision. However, this subdivision does not apply to arbitration proceedings conducted under a collective bargaining agreement between employers and employees or between their respective representatives.

Code of Civ. Proc. § 1286.2(a). "Absent proof of one of the grounds listed in that section, a court may not vacate an award, even if the arbitrator commits legal or factual errors which appear on the face of the award and which cause substantial injustice." *Creative Plastering,* 19 Cal. App. 4th at 1665 (emphasis added); *Moncharsh,* 3 Cal. 4th at 11. None of the grounds set forth in Section 1286.2 are present here.

### 3. The Same Deferential Standard Of Review Applies To Judicial Review Of An Arbitrator's Chosen Remedy.

The same deferential standard for judicial review applies when reviewing an arbitrator's choice of remedies. *Advanced Micro Devices, Inc. v. Intel Corp.,* 9 Cal. 4th 362, 381 (1994); *see also Hightower,* 86 Cal. App. 4th at 1434. As explained by the California Supreme Court in

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

*Advanced Micro*:

> [T]he arbitrator is required "to bring his informed judgment to bear to reach a fair solution of a problem.... There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency."

> The choice of remedy, then, may at times call on any decisionmaker's flexibility, creativity and sense of fairness. In private arbitrations, the parties have bargained for the relatively free exercise of those faculties. <u>Arbitrators, unless specifically restricted by the agreement to following legal rules, "'may base their decision upon broad principles of justice and equity ....'</u> [Citations.] As early as 1852, this court recognized that, 'The arbitrators are not bound to award on principles of dry law, but may decide on principles of equity and good conscience, and make their award *ex aequo et bono* [according to what is just and good].' [Citation.]" <u>Were courts to reevaluate independently the merits of a particular remedy, the parties' contractual expectation of a decision according to the arbitrators' best judgment would be defeated.</u>

9 Cal. 4th at 374-375 (citations omitted) (emphasis added).  The Court further explained that:

> an appropriately deferential review starts not from the beginning, but from the arbitrator's own rational assessment of his or her contractual powers and is dependent on (that is, rests on acceptance of) this and any other factual or legal determination made by the arbitrator.  The principle of arbitral finality, the practical demands of deciding on an appropriate remedy for breach, and the prior holdings of this court all dictate that <u>arbitrators, unless expressly restricted by the agreement or the submission to arbitration, have substantial discretion to determine the scope of their contractual authority to fashion remedies, and that judicial review of their awards must be correspondingly narrow and deferential.</u>

*Id.* at 376 (emphasis added).

The Court cautioned that because arbitrators enjoy the authority to fashion relief they consider just and fair under the circumstances existing at the time of arbitration, unless expressly restricted by the agreement of the parties, "parties entering into commercial contracts with arbitration clauses, if they wish the arbitrator's remedial authority to be specially restricted, would be well advised to set out such limitations explicitly and unambiguously in the arbitration clause." *Id.* at 383.  "The award will be upheld so long as it was even arguably based on the contract; it may be vacated only if the reviewing court is *compelled* to infer the award was based on an extrinsic source.  In close cases the arbitrator's decision must stand." *Id.* at 381 (citation omitted).

### 4.   The Partial Final Award Is Presumed Valid And Must Be Confirmed.

The Partial Final Award issued by the arbitration Panel is a temporary equitable order

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1   calculated to preserve assets or performance needed to make a potential final award meaningful.

2   It is designed to insure that Orrick can ultimately collect on its claim, should it be successful in

3   the arbitration.   The Partial Final Award is therefore subject to confirmation by this Court.

4   *Pacific Reinsurance*, 935 F.2d at 1022-1023; *Hightower*, 86 Cal. App. 4th at 1419.   The Partial

5   Final Award is presumed valid and must be confirmed absent proof, the burden of which is on

6   MGA, that there exists a statutory ground for vacating the award.   *Moncharsh*, 3 Cal. 4th at 9;

7   *Walter*, 3 Cal. App. 3d at 633.   For the reasons set forth below, MGA cannot establish grounds to

8   vacate the Partial Final Award.   Given the deferential standard of review that must be applied to

9   the findings of the arbitration Panel and its chosen remedy, the Court should confirm the Partial

10   Final Award and enter judgment thereon under Civil Procedure Code Section 1287.4.

11   **B.**      **MGA Cannot Establish Grounds To Vacate The Partial Final Award.**

12   In its Petition/Complaint, MGA sets forth grounds on which it claims the Partial Final

13   Award should be vacated.   Currently herewith, Orrick has filed a response to that

14   Petition/Complaint asking the Court to dismiss MGA's Petition as procedurally improper and stay

15   its Complaint.   However, Orrick will address herein the grounds raised by MGA for vacating the

16   Partial Final Award in anticipation that MGA will assert the same grounds in its response to

17   Orrick's Petition to Confirm.

18   **1.**      **The Panel Did Not Exceed Its Authority In Awarding Interim Relief In The Form Of A Lien.**

19

20   MGA primarily argues that the Panel exceeded its authority in awarding provisional relief

21   in the form of a $23 million lien against any proceeds from the Mattel judgment.   MGA appears

22   to be claiming that the Panel did not have the authority to grant any interim relief at all.   MGA

23   bases this argument on two flawed theories. First, MGA incorrectly asserts that because the

24   original arbitration agreement calls for the application of California law, Orrick was required to

25   avail itself of Code of Civil Procedure Section 1281.8 and to seek interim relief, if at all, from the

26   Court.                                    **REDACTED**

27

28                                                         These arguments should be rejected.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

**a.      The Panel's Determination That It Had The Power To Award Interim Relief May Not Be Second-Guessed.**

California Code of Civil Procedure Section 1281.8 does not require that a party to an arbitration seek provisional relief from a court.  To the contrary, it provides a mechanism by which a party to an arbitration <u>may</u> seek provisional relief from a court without waiving its right to arbitrate its claim.  Code of Civ. Proc. § 1281.8(d) (an application to the court for provisional relief "shall not operate to waive any right of arbitration...").  Where, as here, the parties expressly agreed to arbitration under JAMS Rules, which Rules vest the arbitrators with the power to grant interim relief, a party may seek from the arbitrator, and the arbitrator may grant, appropriate interim relief.  Cialone Decl., Ex. D at 26.  That Orrick could have obtained interim relief from the Court does not preclude Orrick from seeking such relief from the Panel.  If MGA's argument is accepted, JAMS Rule 24(e) would be rendered meaningless in any arbitration in which California law applied, even where the parties had expressly agreed, as they did here, that the JAMS Rules would govern.  This cannot be the rule because it is inconsistent with California Supreme Court precedent requiring courts to give effect to parties' agreements to arbitrate. *Moncharsh,* 3 Cal. 4th at 9; *Advanced Micro*, 9 Cal. 4th at 381.

**REDACTED**

A similar argument was rejected in *Hightower*, in which the Court of Appeal held that the "incremental award process is within the 'broad scope' of an arbitrator's authority to fashion an appropriate remedy.  It is not precluded by nor offensive to the California Arbitration Act (*Code Civ. Proc., § 1280 et seq.*), nor is it prohibited by the rules which the parties agreed would govern the arbitration of their dispute." 86 Cal App. 4th at 1419. The arbitration in *Hightower* was governed by AAA Commercial Arbitration Rules, which provided in part: "The arbitrator may grant *any remedy or relief that the arbitrator deems just and equitable* and within the scope of the agreement of the parties. . . ." *Id.* n.2. This rule is similar to JAMS Rule 24(c), which governs the arbitration in this case and provides that "[t]he Arbitrator

Shartsis Friese LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1   may grant any remedy or relief that is just and equitable and within the scope of the parties'

2   agreement, including, but not limited to, specific performance of a contract or any other equitable

3   or legal remedy." *See* Cialone Decl., Ex. D at 26.

4       As noted above, the starting point for reviewing an arbitration award, including the relief

5   granted, is the arbitrators' interpretation of its powers under the arbitration agreement. "Although

6   section 1286.2 permits the court to vacate an award that exceeds the arbitrator's powers, <u>the</u>

7   <u>deference due an arbitrator's decision on the merits of the controversy requires a court to refrain</u>

8   <u>from substituting its judgment for the arbitrator's in determining the contractual scope of those</u>

9   <u>powers</u>." *Advanced Micro*, 9 Cal. 4th at 372 (emphasis added). "Giving substantial deference to

10  the arbitrators' own assessments of their contractual authority is consistent with the general rule

11  of arbitral finality …." *Id.* at 373. "A rule of judicial review under which courts would

12  independently redetermine the scope of an arbitration agreement already interpreted by the

13  arbitrator would invite frequent and protracted judicial proceedings, contravening the parties'

14  expectations of finality." *Id.*



15

16

17  **REDACTED**

18

19

20

21

22      "[A]n award may not be vacated merely because the court is unable to find

23  the relief granted was authorized by a specific term of the contract." *Advanced Micro*, 9 Cal. 4th

24  at 381. The Court must defer to the Panel's determination of the contractual scope of its powers.

25  *Id.*

26          **b.**      **The Panel's Chosen Remedy Was Within The Scope Of Its**

27                 **Broad Equitable Powers To Fashion Appropriate Relief.**

28  **REDACTED**

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

REDACTED

California law recognizes that arbitrators are afforded great flexibility to fashion appropriate relief, including relief that would not be available from a court.

"In general arbitrators enjoy greater flexibility than juries and courts in fashioning remedies . . . ." *Advanced Micro*, 9 Cal. 4th at 384. The California Supreme Court in *Advanced Micro* expressly declined to hold that the potential remedies available to an arbitrator are limited to those that a court could award on the same claim, finding that to do so would be "inconsistent with the principles of contractual arbitration and with the agreement of the parties in this case." *Id.* at 388. Adopting language from New York's highest court, the Court expressly held that "*a court may not vacate an award because the arbitrator has exceeded the power the court would have*, or would have had if the parties had chosen to litigate, rather than arbitrate the dispute. Those who have chosen arbitration as their forum should recognize that arbitration procedures and awards often differ from what may be expected in courts of law." *Id.* at 388-89 (1994) (emphasis in original), citing *Rochester City School Dist. v. Rochester Teachers Assn.*, 41 N.Y.2d 578 (1977). Accordingly, an "<u>arbitration panel may grant equitable relief that a Court could not</u>." *Id.* (emphasis added), citing *Sperry International Trade, Inc. v. Government of Israel*, 532 F. Supp. 901, 905 (S.D.N.Y. 1982), affd. 689 F.2d 301 (2d Cir. 1992) (affirming interim order requiring one party to place funds in escrow pending the outcome of the arbitration).

Here, the Panel determined that it had broad discretion to fashion an appropriate award under the arbitration agreement, as amended, the JAMS Rules which govern the proceeding, and California law.

REDACTED

the Panel balanced the hardships and chose to award the Partial Final Award which would allow the Court to enter a lien against only the Mattel judgment, which is now comprised only of the award of attorneys fees and costs. This is the least burdensome of the proposed remedies on MGA. It does not encumber MGA's current assets. It does not require MGA to place funds it might need for operational purposes in escrow. Instead, it simply prevents MGA from accessing a small portion of the $137 million Mattel judgment, when those funds

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1   become available to MGA.

2          California courts and courts of other jurisdictions have confirmed far more onerous and

3   burdensome interim awards, than the lien awarded to Orrick by the Panel. *Pacific Reinsurance*,

4   935 F.2d 1019 (affirming confirmation of an Interim Final Award requiring one party to an

5   arbitration to escrow $20 million pending the arbitrators' decision on the merits); *Certain*

6   *Underwriters at Lloyd's, London v. Argonaut Insurance Co.*, 264 F. Supp. 926, 937 (N.D. Cal.

7   2003) (confirming interim award requiring an escrow of funds, noting "<u>[t]here is no question that</u>

8   <u>an arbitration panel has the authority to require escrow to serve as security for an ultimate</u>

9   <u>award</u>") (emphasis added); *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d

10   255 (2nd Cir. 2003) (affirming confirmation of an interim award requiring one party to post a

11   letter of credit); *Cragwood Mangers, L.L.C. v. Reliance Insurance Co.*, 132 F. Supp. 2d 285

12   (S.D.N.Y. 2001) (confirming interim award requiring one party to an arbitration to post a $4

13   million bond, even though the posting of the bond could drive that party into bankruptcy).

**2.   In Any Event, The Court Has The Power To Correct The Award And Issue A Writ Of Attachment.**

16          Should the Court determine that the Panel exceeded its authority in granting the lien, the

17   Court could correct the award, under Code of Civil Procedure Section 1286.6(b), to grant interim

18   relief in the form of a right to attach order and could issue a writ of attachment pending the

19   resolution of the arbitration. Under Section 1286.6(b), where the arbitrators have exceeded their

20   powers, a court may confirm the award as corrected if it does not affect the merits of the decision.

21   Code of Civil Procedure Section 1281.8(b) allows a court to issue a writ of attachment to a party

22   to an arbitration.



Correcting the Partial Final Award

28   in this manner would not affect the merits of the Panel's findings, which are that Orrick is entitled

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1   to security in an amount of $23 million pending the resolution of the arbitration.

2   California appellate court precedent supports correcting an arbitration award in this

3   manner.   In *Marsch v. Williams,* an arbitration panel issued an award that included the

4   appointment of a receiver.  23 Cal. App. 4th 238, 242 (1994).  The Superior Court confirmed the

5   award, but the Court of Appeal reversed, finding that receivers are uniquely a purely statutory

6   invention and that the arbitrators do not have the power to order their appointment.  *Id.* at 247-48.

7   Nonetheless, the Court of Appeal determined that the circumstances of the case would support the

8   appointment of a receiver.   *Id.* at 248.   Accordingly, the Court of Appeal reversed the

9   confirmation, but directed the Superior Court to consider whether a receiver should be appointed

10  by the court.  *Id.*  The Court of Appeal explained that the "appointment of a receiver under such

11  circumstances would . . . effect <u>only a correction</u> of the Panel's award" within the meaning of

12  sections 1286.2(d) and 1286.6(c).  *Id.* at 249 (emphasis added), citing *Moncharsh*, 3 Cal. 4th at

13  13.  As in *Marsch*, this Court could determine based on the facts found by the arbitration Panel

14  that interim relief in the form of an attachment is warranted and could correct the award and issue

15  a writ of attachment against $23 million of the Mattel judgment, or against all of MGA's assets.

16  **3.   The Partial Final Award Is Not Fatally Ambiguous.**



17

18

19

20

21

22  it is clear from the

23  Partial Final Award, <u>and undisputed by Orrick</u>, that the lien does not permit Orrick to receive the

24  $23 million, just to prevent MGA from obtaining and dissipating those funds until the arbitration

25  has been resolved.

26

27  Should the Court

28  decide this is not clear from the Partial Final Award, the Court could correct the Partial Final

1   Award to make that clarification.  Such a correction would not affect the merits of the Panel's

2   decision and is therefore permissible under Code of Civil Procedure Section 1286.6(c).

3   **IV.    CONCLUSION**

4        Because MGA cannot meet its burden to prove that the Partial Final Award should be

5   vacated, the Partial Final Award must be confirmed or, alternatively, corrected and confirmed.

6   For the reasons set forth herein, Orrick respectfully requests that the Court confirm the Partial

7   Final Award and enter judgment thereon.

8

9   DATED:        February 19, 2013              SHARTSIS FRIESE LLP

10

11                                              By: _/s/ Arthur J. Shartsis_____

12                                                   ARTHUR J. SHARTSIS

13                                              Attorneys for Respondent and Defendant
                                                ORRICK, HERRINGTON & SUTCLIFFE LLP

    8355\001\1879294.1

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111