1

1           **UNITED STATES DISTRICT COURT**

2           **CENTRAL DISTRICT OF CALIFORNIA**

3        **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                   - - - - - - -

5    MATTEL, INC.,                     )
                                       )
6            Plaintiff,                )
                                       )
7        vs.                           ) No. SACV 04-9049 DOC
                                       )     Item No. 7
8    MGA ENTERTAINMENT, INC., et al.,  )
                                       )
9            Defendants.               )
     _____)

10

11

12

13           REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                   Hearing on Motion

15                 Santa Ana, California

16                 Monday, April 1, 2013

17

18

19

20

21   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
22   United States District Court
     411 West 4th Street, Room 1-053
23   Santa Ana, California 92701
     (714) 558-8141

24

25   04-cv9049 Mattel 2013-04-01 Item 7

DEBBIE GALE, U.S. COURT REPORTER

1    **APPEARANCES OF COUNSEL:**

2

     FOR MATTEL, INC.:

3

4            QUINN EMANUEL URQUHART AND SULLIVAN LLP
             By:  Michael T. Zeller
5                 Susan Estrich
                  Brett Dylan Proctor
6                 Attorneys at Law
             865 South Figueroa Street
7            10th Floor
             Los Angeles, California 90017-2543
8            213-443-3000

9

10
     FOR MGA ENTERTAINMENT, INC.:
11

             KELLER RACKAUCKAS LLP
12           BY:  Jennifer L. Keller
                  Attorney at Law
13           18500 Von Karman Avenue
             Suite 560
14           Irvine, California 92612
             949-476-8700
15
             -AND-
16
             SKADDEN ARPS SLATE MEAGHER AND FLOM LLP
17           BY:  Jason D. Russell
                  Attorney at Law
18           300 South Grand Avenue
             Suite 3400
19           Los Angeles, California 90071-3144
             213-687-5000
20

21
      ALSO PRESENT:
22
             Ian Shelton, Attorney at Law
23           Quinn, Emanuel, Urquhart & Sullivan, LLP

24

25

1                                    **I N D E X**

2       **PROCEEDINGS**                                      **PAGE**

3       Hearing on Motion                                     4

4       Argument by Mr. Zeller                                5

5       Argument by Ms. Keller                                5

6       Further Argument by Mr. Zeller                       21

7       Further Argument by Ms. Keller                       34

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DEBBIE GALE, U.S. COURT REPORTER

SACV 04-9049 DOC - 4/1/2013 - Item No. 7

4

|  |  |
|---|---|
| | 1 | **SANTA ANA, CALIFORNIA, MONDAY, APRIL 1, 2013** |
| | 2 | **Item No. 7** |
| | 3 | (9:18 a.m.) |
| 09:18 | 4 | THE COURT:  Let me take Mattel v. MGA |
| | 5 | Entertainment.  I thought it was well briefed also, Counsel, |
| | 6 | but I purposely have delayed the other issue until this |
| | 7 | issue was before the Court also. |
| 09:18 | 8 | Would you start with your appearance on behalf of |
| | 9 | Mr. Larian. |
| 09:18 | 10 | MS. KELLER:  Yes, Your Honor.  Jennifer Keller on |
| | 11 | behalf of the MGA parties and Isaac Larian. |
| 09:18 | 12 | MR. RUSSELL:  Jason Russell for MGA. |
| 09:19 | 13 | THE COURT:  Okay. |
| 09:19 | 14 | MR. PROCTOR:  Good morning, Your Honor.  B. Dylan |
| | 15 | Proctor, Susan Estrich, and Michael Zeller for Mattel. |
| 09:19 | 16 | THE COURT:  Pleasure.  Are you going to be arguing |
| | 17 | today, Ms. Estrich?  Mr. Zeller? |
| 09:19 | 18 | MS. ESTRICH:  I'll assist. |
| 09:19 | 19 | THE COURT:  Okay.  Thank you. |
| 09:19 | 20 | Counsel, it's nice to see all of you again. |
| 09:19 | 21 | Mr. Zeller. |
| 09:19 | 22 | MR. ZELLER:  Mike Zeller for Mattel.  I don't |
| | 23 | really have anything to add to the papers, Your Honor.  I |
| | 24 | think we briefed it pretty thoroughly.  If the Court has any |
| | 25 | questions. |

09:19    1              THE COURT:  No.  I think it's outstanding briefing

         2    by both sides.  I pay both of you the compliment on the

         3    record.  It's extraordinarily well written.

09:19    4              MR. ZELLER:  Thank you very much, Your Honor.  The

         5    only thing I would just clarify in terms of a couple of

         6    points in MGA's reply is, is that MGA argues that we concede

         7    that MGA's trade secret claim can be supplemental to

         8    Mattel's federal claims, and that's obviously not our

         9    position.  In fact, it's the opening line, really, in our

        10    opposition is to go back to the Court's initial and, we

        11    think, correct reaction when MGA posited this potential

        12    motion for leave, which is it has to hook into a federal

        13    claim.  Not only are there no federal claims which the Court

        14    currently has jurisdiction over, there's no federal claim

        15    that's related to MGA's trade secret claim.  This is a

        16    standalone state law claim that we don't believe is --

        17    belongs in this court.

09:20   18              THE COURT:  Ms. Estrich.  You okay?

09:20   19              MS. ESTRICH:  *(Nods head.)*

09:20   20              THE COURT:  Ms. Keller.

09:20   21              MS. KELLER:  Thank you, Your Honor.

09:20   22              Well, Your Honor, as to the point Mr. Zeller just

        23    made, this Court already decided it had supplemental

        24    jurisdiction a long, long time ago and still has it if the

        25    Court wishes to exercise that jurisdiction, and I think we

1    briefed that.  So I'm not going to belabor that point.

2          Here's how I think it breaks down, though.  We

3    have a trial that lasted months.  We had a group of jurors

4    who came in here and gave months of their lives to us, and I

5    think everyone agrees on both sides, some of the most

6    careful, diligent, and conscientious jurors any of us have

7    ever seen.  They sifted through over 1400 exhibits, and they

8    considered some very, very complex legal issues.

9          This Court's resources that went into this case

10   were nothing short of gargantuan.  I understand we're the

11   only case to have the distinction of ever having crashed the

12   Central District server with over 10,000 filings.

13         THE COURT:  That's a fine distinction.

14         MS. KELLER:  And we're still adding to those

15   filings, Your Honor.  We're not giving up.

16         And this litigation took years and years and

17   years.  In addition, very few trials have the distinction

18   with -- of this magnitude and involving these sums of money

19   and these issues -- have the distinction of essentially

20   being error-free.  When you look at what was appealed, none

21   of the Court's evidentiary rulings were appealed.  The jury

22   instructions, nothing was -- nothing was appealed.

23         The Court was meticulous and careful about

24   everything it did.

25         So here's the question:  Is that all to be thrown

 1    away because of a highly technical point?  Because when the

 2    Court made its October order, the Court -- rather than

 3    denying our motion for permissive amendment, the Court said,

 4    well, every one of the criteria has been satisfied, but

 5    since I'm finding a compulsory counterclaim, I'm going to

 6    find that to be moot.

09:22
 7            So all we're asking -- we're not asking for

 8    anything that would prejudice Mattel.  We're not asking for

 9    anything that would be a surprise to Mattel.  We're not

10    asking to introduce any new information.  We're only asking

11    to be put back in the position we would have been in had the

12    Court said, I'm gonna grant the motion for permissive

13    amendment and find this to be a compulsory counterclaim on

14    alternative theories.  That's why we're asking for *nunc pro*

15    *tunc.*

09:23
16            Now, what is the conservative approach here?  The

17    conservative approach that could save this enormous

18    investiture of time and energy by the Court, by the jury,

19    and by the parties, and the conservative approach I think is

20    to go ahead and grant our motion and then certify it up.

09:23
21            And then under --

09:23
22            THE COURT:  Now, now just a moment.

09:23
23            Do you have time for a story?

09:23
24            MS. KELLER:  I always have time for your stories,

25    Your Honor.

Case 2:04-cv-09049-DOC-RNB   Document 10877   Filed 05/02/13   Page 8 of 37   Page ID #:329698
SACV 04-9049 DOC - 4/1/2013 - Item No. 7

8

09:23  1          THE COURT:  Yeah.  You have no choice.

09:23  2          On Anna Nicole Smith, there had been no

3    jurisprudence since 1947 concerning the interrelationship by

4    the probate court, the federal court; extraordinarily

5    complicated issue; in fact, there wasn't even a standard of

6    whether it was *de novo* review coming to the federal court

7    from the bankruptcy court.  The law concerning withdrawing

8    the reference was minimal.

09:24  9          And on that case, since Judge Bufford had handed

10   down a ruling of $480 some-million, if it was an abuse of

11   discretion standard, the Court was simply going to award

12   $487 million.  That seemed a little risque, if you will.  On

13   a very close issue that's probably 50.1 percent to

14   49.9 percent, we made a ruling about not only the

15   jurisdiction of this Court, but this being a *de novo* review

16   instead of an abuse of discretion standard for appellate

17   purposes, and certified a number of questions to the

18   Circuit.

09:24 19          That's the only certification I've ever sent to

20   the Circuit, because the gravamen of those issues were so

21   extraordinarily complex.  And the resources being expended,

22   believe it or not, were greater than the Mattel/MGA

23   resources.  That was really a huge, huge undertaking, and it

24   passed through two other judges before it was brought to

25   this Court.

09:25   1           We got back a, basically, green light; go ahead.

        2   And trial counsel and I all assumed that what the Circuit

        3   was saying was that your rulings are correct.

09:25   4           That's not so.  You have a Ninth Circuit screening

        5   panel, a monthly panel, if you will, that looks at the

        6   issue, and that's not the same panel that eventually decides

        7   the issue.

09:25   8           Now I wish it was, because they could have told us

        9   that we were right or wrong right to begin with, and later

       10   on, of course, we got reversed on jurisdictional grounds by

       11   the Ninth Circuit.  The Supreme Court reversed them on

       12   jurisdictional grounds 9-0.  I say that...

09:26  13           I don't know that the certification process means

       14   anything.  In other words, I don't know that the joint

       15   stipulation between counsel takes it back for

       16   Judge Kozinski, Judge Wardlaw, and Judge Trott in a

       17   meaningful manner, and I need help with that.  The rules are

       18   complex up in the Circuit, from my standpoint.

09:26  19           If I had it back in front of the same panel, I

       20   have tremendous confidence in those three judges giving this

       21   Court the appropriate guidance.  I'm not certain I have the

       22   same confidence in a panel that is not uniquely familiar and

       23   tied to this case.

09:26  24           Now, if there was a stipulation it went to that

       25   panel, your argument would be stronger.

09:26    1              But Mattel is never going to stipulate -- sit

         2    down.

09:26    3              MR. ZELLER:  *(Complies.)*

09:26    4              THE COURT:  -- that it's going to go to that same

         5    panel.

09:26    6              MS. KELLER:  Your Honor, I think it would be

         7    unlikely that it would go anywhere else given the history,

         8    given the fact that this panel has decided two appeals.  And

         9    this case seems to be the perfect case for 1292(b).

09:27   10              THE COURT:  Do you have a rule?

09:27   11              MS. KELLER:  Rule 1292(b).

09:27   12              THE COURT:  That gets it to the same panel?

09:27   13              MS. KELLER:  I don't have a rule that gets it to

        14    the same panel.

09:27   15              I do think, Your Honor, given the fact that

        16    they've handled two appeals, it would be highly unlikely it

        17    would go anywhere else.  I just can't imagine it would go

        18    to --

09:27   19              THE COURT:  The Court could humbly request it

        20    also.

09:27   21              MS. KELLER:  That's right.  And under 1292(b),

        22    we're on all fours.  It's to be used in exceptional

        23    situations, in which allowing interlocutory appeal would

        24    avoid protracted and cost expensive litigation.

09:27   25              It is one where the question would be controlling,

1   and that resolution of the issue on appeal could materially

2   affect the outcome of litigation in the district court, but

3   it can't be something that goes to the merits of the

4   underlying dispute, which it wouldn't.  It would be a

5   question of can we -- can the Court *nunc pro tunc* its order

6   to reflect its finding at the time that all the grounds for

7   permissive amendment have been met.

09:28  8           It is -- the courts have held, including the Ninth

9   Circuit has held, that where an appeal involves an issue

10  over which reasonable judges might differ and such

11  uncertainty provides a credible basis for a difference of

12  opinion on the issue; where it prevents novel and difficult

13  questions of first impression; or courts that have

14  considered the issue were divided, that that's appropriate.

09:28  15          And this certainly is a novel issue.  And it

16  certainly -- if ultimate termination of the litigation would

17  be materially advanced by immediate review, all of the

18  criteria affecting 1292(b) certification apply to this case.

09:28  19          All I'm saying is this, Your Honor.  If the Court

20  goes the way Mattel wants it to go, then this case is

21  dismissed, and we have no means of going to the Ninth

22  Circuit.

09:29  23          THE COURT:  Let me ask you why.  Let's explore

24  that for just a moment.

09:29  25          You're going to have difficulty, I understand,

DEBBIE GALE, U.S. COURT REPORTER

```
 1    getting federal jurisdiction, that federal hook.  And what I

 2    think you truly fear is this:  You fear the ability of the

 3    Superior Court to have the resources, frankly, or the

 4    history that Judge Larson and Judge Carter have with this

 5    case.  And the thing that I think you really have to be

 6    concerned with is this:  When Mattel brought the lawsuit,

 7    they basically say, MGA, you have violated our trade

 8    secrets.  There's trade secret misappropriation.  You've

 9    broken into our warehouses.  You've gone to the Frankfurt

10    Fair -- Frankfurt?  Munich? -- Frankfurt or Munich anyway,

11    and you've broken into these warehouses and you've taken

12    things from us.

13            Well, when Sal Villasenor undertook the deposition

14    for the first time, that seemed to even out the playing

15    field.  Because his credibility was certainly an issue.

16    That's why it went to the jury.  But those alleged

17    activities that the jury found on behalf of MGA made it very

18    difficult for Mattel to argue for a billion dollars, because

19    same conduct that Mattel was accusing MGA of Mattel had

20    allegedly entered into.

21            Now, what you have to be concerned about is that

22    you weren't there; and, Ms. Estrich, you weren't there, and

23    Counsel, I don't think either one of you were there.  But

24    allegedly, the boxes found on the sixth floor library -- I'm

25    doing that by memory -- that Mr. Eckert testified that he'd
```

09:30 (line 13)
09:30 (line 21)

1    personally gone down and no such library existed, later

2    turned up through a series of attorneys, apparently, with an

3    employment law attorney.  Very nice lady by the way.  And

4    when those boxes were discovered, I remember that we drove

5    to Los Angeles, I think at 8:00 o'clock or 9:00 o'clock at

6    night and had a hearing until 2:00 o'clock in the morning.

09:31   7    And I think Mr. Quinn was there.  Who else?

09:31   8    MS. KELLER:  Ms. Hurst.

09:31   9    THE COURT:  Ms. Hurst was there.  There were quite

10    a few attorneys there.  I don't think you were there, were

11    you?

09:31   12    MR. ZELLER:  I was not.

09:31   13    THE COURT:  Ms. Estrich, you weren't there.

09:31   14    MS. ESTRICH:  No.

09:31   15    THE COURT:  It was quite a hearing.  As we started

16    to go through those boxes, it became apparent to MGA that

17    that showed trade secret misappropriation from your

18    standpoint, Mr. Larian, concerning Mattel.  In other words,

19    the very things you were being accused of, it had even

20    greater ramifications with mustaches and fake IDs.

09:32   21    For both of you, those boxes have been retained.

22    But how another court sorts through that history has to

23    strike fear in you on the plaintiff's side.

09:32   24    By the same token, we only went through 10 boxes

25    and ceased at that time, or maybe eight boxes.  But

SACV 04-9049 DOC - 4/1/2013 - Item No. 7

14

09:32

09:32

09:33

09:33

09:33

| | |
|---|---|
| 1 | allegedly, that showed from your standpoint additional |
| 2 | activity concerning Jax and some of the other competitors. |
| 3 | Now, remember this:  Both sides reached the |
| 4 | devil's compromise with the Court. |
| 5 | You may remember during the trial that the Court |
| 6 | offered to open up Pandora's box.  Each of you had been |
| 7 | fighting tactically for a very narrow sliver of that |
| 8 | evidence; and finally, the Court had said, and it's on the |
| 9 | record, that if you would like, I'll open up the whole trade |
| 10 | secret misappropriation area.  Both of you reached a |
| 11 | stipulation, if you recall, "Judge, don't do that." |
| 12 | The concern was that Mr. Larian may have made a |
| 13 | statement that didn't put him in the best light previously, |
| 14 | on MGA's part.  And the concern with Mattel is, obviously, |
| 15 | you didn't want this to expand into a number of other |
| 16 | competitors, because you might have had three or four more |
| 17 | lawsuits. |
| 18 | Your real fear is a Court doesn't have that kind |
| 19 | of history and understanding of this monster case. |
| 20 | Judge Larson does.  Judge Carter does.  Maybe the |
| 21 | combination of both them are taken. |
| 22 | The second thing each of you have to recognize is |
| 23 | that this compulsory counterclaim, et cetera, was a very |
| 24 | close issue for this Court.  I think I made the right |
| 25 | decision, but not now.  As soon as the Circuit tells me I |

DEBBIE GALE, U.S. COURT REPORTER

1    made the wrong decision, I made the wrong decision.  I'm

2    very respectful of the Circuit, and it doesn't matter which

3    panel.  That's the law.

09:33  4         But the Court was placed in the very position that

5    you're arguing now.  Each of you expended Judge Larson, I

6    think, to his retirement.  And when you came into the Court,

7    the resource allocation for this Court compared to even a

8    *pro se* and how what this Court hears is incredibly large.

9    How does the Court spend the taxpayer's money, et cetera,

10   with clients on both sides who can spend, allegedly,

11   $400 million and over $200 million in just attorneys' fees?

09:34  12        So therefore, given the two choices and not being

13   dispositive, one of those was the Court's resource

14   allocation.  Because if the Circuit upheld me on both --

15   remember, Judge Larson divided it into Phase 1, Phase 2,

16   Phase 3, Phase 3-A, Phase 3-B -- I mean, we would still be

17   starting on Phase 2 or 3 a year from now.  By collapsing

18   that, what happened was, it was a relatively safe call by

19   the Court, and it was some recognition of resource.

09:34  20        I thought I was right on the law.  I turned out to

21   being wrong.

09:34  22        But to go on for two or three more years, given

23   what I thought were two equal calls, it seemed wise to

24   combine the two.  If the Circuit said, "Judge Carter, you're

25   wrong," then we're in this position right now.  If the

1    Circuit said, "Judge Carter, you're right," fine.  If we

2    didn't make that call, we'd still be trying cases with maybe

3    contradictory verdicts *ad nauseam*.

4           So I'm very aware of this resource allocation.

5    It's a very strong argument about why it shouldn't be

6    certified up.  Okay?  For this to go to the state court, I

7    trust my state court colleagues.  I need to pay deference to

8    that.  By the same token, you've got a tough issue with this

9    federal hook jurisdictionally unless it's *nunc pro tunc*.

10          And my question is *nunc pro tunc* usually isn't

11   designed for this kind of situation.  It's to correct the

12   record.  It's not to make a new ruling.  And if the mistake

13   is made, it's not having made that ruling on both prongs, if

14   you believe I might have made the ruling on the second

15   prong.

16          MS. KELLER:  Well, it's an unusual situation,

17   though, because how often do you see the Court saying, "Here

18   are two close calls.  I'm going to find that both of them --

19   both of them essentially have met all the criteria required,

20   but as to one, I'm gonna find it to be moot."  So the

21   Court -- it's a different situation than if you had denied

22   it.  It's a different situation than if you had granted it.

23          THE COURT:  Well --

24          MS. KELLER:  It's --

25          THE COURT:  -- and if I'm wrong in certifying it

DEBBIE GALE, U.S. COURT REPORTER

| | |
|---|---|
| 1 | up, we have a dispositive answer, don't we? |
| 2 | MS. KELLER:  That's it.  That's it.  That's |
| 3 | exactly that I'm saying.  It's the conservative approach. |
| 4 | THE COURT:  Just a moment.  There's your danger |
| 5 | right there.  It's a very practical danger.  So when you |
| 6 | come back and argue, be prepared to argue that:  Why it |
| 7 | shouldn't be certified up. |
| 8 | Okay.  Counsel. |
| 9 | MS. KELLER:  At any rate, it has a lot to |
| 10 | recommend it, Your Honor.  If the Court certifies it up and |
| 11 | the Ninth Circuit says, nope, you can't *nunc pro tunc* it, |
| 12 | then we're done, at least at that phase. |
| 13 | THE COURT:  Then you go back to the state. |
| 14 | MS. KELLER:  Yeah.  At least at that phase. |
| 15 | THE COURT:  By the way, I've retained all of those |
| 16 | boxes for both of you. |
| 17 | MS. KELLER:  If the Ninth Circuit says, no, this |
| 18 | is a legitimate exercise of the nunc pro tunc, then we have |
| 19 | a very limited retrial on the issue of the statute of |
| 20 | limitations only that shouldn't take forever. |
| 21 | THE COURT:  Well, that was Judge Wardlaw's initial |
| 22 | suggestion to Judge Trott.  Judge Trott didn't accept that. |
| 23 | And later on, the panel came out 3 to 0. |
| 24 | But Judge Wardlaw was pushing for that.  She was |
| 25 | very complimentary about all of your performances.  She was |

09:36 (lines 2, 4, 8, 9, 13, 14, 15, 17)
09:37 (lines 21, 24)

Case 2:04-cv-09049-DOC-RNB   Document 10877   Filed 05/02/13   Page 18 of 37   Page ID #:329708
SACV 04-9049 DOC - 4/1/2013 - Item No. 7

18

1    amazed at the verdict forms, frankly.  That was her

2    compromise.  But it wasn't accepted by Judge Kozinski, who

3    didn't seem to be as concerned about the expenditure

4    resource argument, and Judge Trott, who was fairly

5    perturbed, I think, with the compulsory counterclaim.

09:37   6         MS. KELLER:  But they never talked about the issue

7    that we're here on, because they were, frankly, misled.

8    They were told we never asked to amend our pleadings, and

9    that wasn't true.  We did.  And unfortunately, they were

10   never informed about that.  I think the conversation could

11   have taken a different turn at that point.

09:37   12        THE COURT:  Time for another story.

09:37   13        John Quinn was somewhat amazed one time at the

14   first appeal by Judge Larson that his firm hadn't been

15   retained to bring this for appellate purposes.  Because he

16   truly believed, having understood the first phase in front

17   of Judge Larson, he knew the case well enough to prevail

18   over in the Circuit.  Another attorney argued for

19   Mr. Larian.  You know this case backwards and forwards.

09:38   20        So it's amazing to me as a practical matter when I

21   sit here in the Court's position, having appellate counsel,

22   who may know the appellate rules, pick this up.  And, quite

23   frankly, they may or may not be as effective as trial

24   counsel up in front of the Circuit.  I'm amazed.  That's not

25   a comment on either counsel for Mattel in the first phase or

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 10877   Filed 05/02/13   Page 19 of 37   Page ID #:329709
SACV 04-9049 DOC - 4/1/2013 - Item No. 7

19

1    counsel for Mr. Larian in the second.  But boy, if I was

2    litigating this, I would have had Mr. Zeller right by my

3    side or Mr. Quinn, and I would have had you, Ms. Keller,

4    right by my side in maybe making the arguments.

09:38    5    MS. KELLER:  Well, you know, we trial lawyers

6    always think that we can do everything better, but I

7    understand exactly Your Honor's point.  The people who knew

8    the record would have been a nice asset.

09:39    9    THE COURT:  Absolutely.

09:39    10    MS. KELLER:  But at any rate, here we are today.

11    Now we're in a position where if the Court takes -- it's

12    kind of ironic because what looks like it's not a

13    conservative approach would actually be the most

14    conservative approach.

09:39    15    THE COURT:  It would be the most resource-saving.

16    It certainly, as a practical matter, may make sense.  I just

17    don't know.

09:39    18    MS. KELLER:  As a practical matter and also just

19    looking at the efforts of these citizens who came in here

20    and gave their lives to us for all those months.

09:39    21    Not just resources in a pure sense, but also

22    recognizing their efforts and honoring their efforts, and

23    it's -- it seems to me that there's no prejudice to Mattel.

24    You know, we're gonna get a yes or no from the Circuit on

25    this.  All that will be required is another round of

DEBBIE GALE, U.S. COURT REPORTER

|    |    |                                                                          |
|----|----|--------------------------------------------------------------------------|
|       | 1  | briefing.  That's it.                                                     |
| 09:39 | 2  | THE COURT:  If you can get it to the same panel.                          |
| 09:39 | 3  | MS. KELLER:  I can't imagine it wouldn't go to the                        |
|       | 4  | same panel for the same reason that the appeal went back to               |
|       | 5  | the same panel.  This is an interlocutory appeal, but the                 |
|       | 6  | appeals should -- all appeals should go to that panel.  And               |
|       | 7  | I think they will.                                                        |
| 09:40 | 8  | THE COURT:  I'm not certain, quite frankly, after                         |
|       | 9  | Anna Nicole, but okay.                                                    |
| 09:40 | 10 | MS. KELLER:  I'm not certain about anything like                          |
|       | 11 | that, but it doesn't seem to me it would make sense to go                 |
|       | 12 | anywhere else.  I think that panel would be intensely                     |
|       | 13 | interested in the issue and would want to take it, frankly.               |
|       | 14 | And it would make sense.                                                  |
| 09:40 | 15 | It would be -- I don't know whether the Ninth                             |
|       | 16 | Circuit has what essentially amounts to low numbering, but                |
|       | 17 | if they do, it's gonna go right there.                                    |
| 09:40 | 18 | THE COURT:  Okay.  Well, thank you very much.                             |
| 09:40 | 19 | MS. KELLER:  Oh, Your Honor, I have -- I have one                         |
|       | 20 | more comment that my colleague has offered, which is that                 |
|       | 21 | Judge Kozinski ruled that the same panel would have                       |
|       | 22 | jurisdiction.                                                             |
| 09:40 | 23 | THE COURT:  Oh.  Including on an interloc?  Now                           |
|       | 24 | there's a whole difference between the two.  You just heard               |
|       | 25 | my past experience.                                                       |

09:41    1         MS. KELLER:  I did.

09:41    2         THE COURT:  Okay.  Mr. Zeller, your thoughts.

09:41    3         MR. ZELLER:  I was chomping to interrupt.  I

         4    apologize.  It was exactly that point.  The panel actually

         5    issued an order during the course of the prior appeals in

         6    which it said that all motions, all future proceedings

         7    involving this case would go to that same panel.  We can

         8    provide the Court with a citation to that, but there is an

         9    actual written order that the Ninth Circuit issued.  Because

        10    we do -- they have agreement that this should go up, really,

        11    either way.

09:41   12         If the Court denies the motion for leave and

        13    dismisses the trade secret claim, as we think is required

        14    here, then there should be an amended judgment that reflects

        15    that; the case is done.  MGA will have an appeal, presumably

        16    as a right, to take up from that final judgment.  There's no

        17    1292 --

09:41   18         THE COURT:  In other words, whether it's an

        19    interloc or not, it's going to go up.

09:42   20         MR. ZELLER:  Correct.  And then if the Court --

        21    which we don't think it ought to do -- agrees with MGA, then

        22    we do agree that 1292(b) would be an appropriate vehicle.

        23    We would ask -- we would agree that the Court and also ask

        24    that the Court certify that question, and we do think it

        25    would go to the same panel based on the order that I

|  | 1 | mentioned. |
| 09:42 | 2 | THE COURT:  Same question I asked Ms. Keller, and |
|  | 3 | that is, assume hypothetically that the Court had found the |
|  | 4 | compulsory counterclaim, but had reached the findings on the |
|  | 5 | other issue, but hadn't handed down a ruling thinking it |
|  | 6 | wasn't necessary.  In other words, why put up an |
|  | 7 | anticipatory ruling or two grounds.  What I'm a little amiss |
|  | 8 | at is taking a rule and violating that rule to get a result. |
| 09:42 | 9 | So I'm not really certain how the *nunc pro tunc* |
|  | 10 | rule gives a vehicle for MGA to take this to the Circuit. |
| 09:42 | 11 | MR. ZELLER:  It -- |
| 09:42 | 12 | THE COURT:  Now, as a practical matter, |
|  | 13 | hypothetically, MGA may be right.  All the necessary |
|  | 14 | findings were made, but that doesn't mean you reach a result |
|  | 15 | and violate a rule. |
| 09:43 | 16 | MR. ZELLER:  That's right, Your Honor.  The Court |
|  | 17 | has to assess whether or not it has jurisdiction now.  It |
|  | 18 | can't time travel back to 2010 or whatever time period MGA |
|  | 19 | is actually asking to time travel back to.  *Nunc pro tunc*, |
|  | 20 | as the Court has said -- |
| 09:43 | 21 | THE COURT:  Just a moment.  Ms. Keller, that's the |
|  | 22 | last thing you've got to address, and that is, you've got |
|  | 23 | appellate rights.  Why does the Court send this up in terms |
|  | 24 | of a ruling on a *nunc pro tunc* basis when, in fact, you're |
|  | 25 | going to have those appellate rights.  It just takes a |

1    little longer.  Gosh, you folks have been around for a long

2    time anyway.

09:43    3         So, Mr. Zeller.

09:43    4         MR. ZELLER:  I would like to address that too,

5    Your Honor.  Obviously, MGA's entire pitch to the Court is a

6    matter of efficiency, and this jury that heard the claims.

7    We had a long trial and that sort of thing.

09:43    8         But, Your Honor, that is exactly what the Ninth

9    Circuit said should have never happened.  In the written

10   opinion, the panel said this is a claim that should have not

11   gone to this jury.  MGA can't possibly now claim the benefit

12   of having done that.  And, in fact, the Ninth Circuit

13   vacated the jury verdict.

09:44    14        THE COURT:  I'm awfully glad it did, because we'd

15   still be trying the case two years from now.  In other

16   words, in taking that close risk and believing that the

17   Court had made the right decision, basically, we're in a

18   very enviable position.  This litigation hasn't stretched

19   out another three or four years.

09:44    20        MR. ZELLER:  And MGA is really ignoring and, in

21   fact, directly contradicting what Ninth Circuit has said in

22   that regard.  Its whole thrust of its motion is that the

23   Court should yet again reinstate this jury verdict and

24   pretend as though the Ninth Circuit ruling never occurred.

25   Judge Wardlaw said at oral argument that if this was not a

SACV 04-9049 DOC - 4/1/2013 - Item No. 7

24

| | |
|---|---|
| | 1  compulsory counterclaim, it should not be in this |
| | 2  litigation, period, full stop. |
| 09:44 | 3  THE COURT:  But she also said something quite |
| | 4  different, and that is, she talked about the statute of |
| | 5  limitations issue and how it could quickly be sent back on |
| | 6  that sole issue.  That's where she started her discussion. |
| 09:45 | 7  MR. ZELLER:  She ultimately said that MGA needed |
| | 8  to file a new lawsuit if it didn't think its claim was |
| | 9  time-barred.  Then what she said, "Well, what is going to |
| | 10  happen if it's not compulsory?"  All MGA argued at that |
| | 11  juncture was it's compulsory.  It didn't argue it had some |
| | 12  other right.  It didn't challenge this Court's denial of the |
| | 13  motion for leave to amend. |
| 09:45 | 14  Fundamentally, it always goes back to this *nunc* |
| | 15  *pro tunc* problem for MGA. |
| 09:45 | 16  THE COURT:  Why shouldn't the Court send this |
| | 17  back, though, in this streamlined fashion and simply take |
| | 18  the chance of this Court being corrected by the Circuit?  It |
| | 19  lays this aside for all time.  It's a very practical |
| | 20  solution.  Doesn't mean it's the right legal solution. |
| | 21  That's what I'm struggling with.  But it's a very practical |
| | 22  solution. |
| 09:45 | 23  MR. ZELLER:  I actually don't think it's |
| | 24  practical, Your Honor.  First of all, again, as I was |
| | 25  saying, it's inconsistent with what the Ninth Circuit has |

SACV 04-9049 DOC - 4/1/2013 - Item No. 7

25

1    specifically said repeatedly in that order in its decision.

09:46    2    But, number two, in fact, substantial issues

3    dealing with statute of limitations, waiver, and the like,

4    the timeliness of MGA's claim was not litigated, because the

5    Court --

09:46    6    THE COURT: But it would be. That's the point.

7    It doesn't make a dispositive ruling. It opens up the door

8    for the trier of fact to decide it. In other words, it's a

9    vehicle into the court; it not a resolution.

09:46    10    MR. ZELLER: I don't follow. I'm not sure I

11    understand when you say a "vehicle" not a "resolution."

09:46    12    THE COURT: In other words, it gets it in front of

13    a jury. The statute of limitations issue is going to be

14    decided by the jury.

09:46    15    MR. ZELLER: Well, but I -- but the Court doesn't

16    have jurisdiction to --

09:46    17    THE COURT: I know that. Now we're back to

18    Catch-22, I understand that, from your perspective.

09:46    19    MR. ZELLER: And also, I don't think that the

20    Court, consistent with the mandate, can reinstate the

21    verdict. That's also what I'm saying. The law of the case

22    doctrine, which is -- the species of which is the mandate

23    doctrine --

09:47    24    THE COURT: I wouldn't be. The jury would be

25    deciding that issue.

Case 2:04-cv-09049-DOC-RNB   Document 10877   Filed 05/02/13   Page 26 of 37   Page ID #:329716
SACV 04-9049 DOC - 4/1/2013 - Item No. 7

26

09:47  1      MR. ZELLER:  Well, I'm saying, even as to the

2      merits of the claim, that the mandate rule -- 'cause the

3      Ninth Circuit vacated that verdict.  It said this should

4      have never reached this jury.  That claim should have never

5      reached this jury.  It vacated, and then it directed this

6      Court to dismiss the claim without prejudice.  All that must

7      occur before the Court can even start to consider --

09:47  8      THE COURT:  Okay.

09:47  9      MR. ZELLER:  -- MGA's motion.

09:47  10      So what I'm saying, Your Honor, is that they have

11      multiple hurdles, and it even goes to the substance.  Even

12      if it passed all those hurdles, MGA can't then say -- even

13      if they were to win on *nunc pro tunc* and everything else,

14      they still have no right to simply reinstate the verdict

15      because the Ninth Circuit mandate is explicitly contrary to

16      that.  It vacated that verdict is what I'm saying.

09:47  17      So MGA can't simply make some end run around that

18      by saying, well, it would be convenient and efficient to do

19      that.  It flies right in the face of the Ninth Circuit

20      mandate.

09:48  21      THE COURT:  Okay.

09:48  22      MR. ZELLER:  One other thing.

09:48  23      THE COURT:  Ms. Estrich is going to give you a

24      couple comments.  That's why I want you to check with each

25      other for just a moment.

09:48    1          (Counsel confer.)

09:48    2          MR. ZELLER:  I think what Ms. Estrich would like

         3   me to add is this:  It's that it's not -- the efficiency

         4   doesn't really exist here.  First of all, the claims have to

         5   be retried.  That really is a threshold matter.

09:48    6          THE COURT:  If it goes up on appellate purposes,

         7   it's just delayed, in case.

09:48    8          MR. ZELLER:  Exactly.  There were other manner of

         9   other issues.  So it wouldn't make any sense to simply say

        10   that somehow we can reinstate the verdict.

09:48   11          THE COURT:  But how does MGA -- the last question

        12   I've got for you.  How does MGA raise this for appellate

        13   purposes?  In other words, they're dealing with the record

        14   in front of the Circuit.  They're not able then to say Judge

        15   Carter made this ruling, and by the way, tell him he's right

        16   or tell him he's wrong.  Because, for appellant purposes,

        17   you're very limited.  You're looking at this record.  You're

        18   looking at a compulsory counterclaim issue, and how the

        19   Circuit gets into this issue is beyond me, for appellate

        20   purposes.  I think that they were precluded.

09:49   21          MR. ZELLER:  It's -- you're talking about

        22   currently, how -- if the Court denies its motion, how it

        23   gets it up to the Ninth Circuit?

09:49   24          THE COURT:  I'm saying if it goes up in its

        25   present posture and if I don't accept MGA's argument, the

|  |  |  |
|---|---|---|
|  | 1 | Circuit will have a very difficult time examining anything |
|  | 2 | outside the compulsory counterclaim issue.  It's not in |
|  | 3 | front of the Circuit.  So basically, they're reaching out. |
|  | 4 | The Circuit's designed to correct the trial court when we |
|  | 5 | err. |
| 09:49 | 6 | And it can only correct the trial court when they |
|  | 7 | have the issue in front of it for appellate purposes.  And |
|  | 8 | here they wouldn't have that issue, because I never made |
|  | 9 | that ruling. |
| 09:49 | 10 | MR. ZELLER:  I disagree.  I think they did make |
|  | 11 | that ruling.  But also what I'm saying, Your Honor, is that |
|  | 12 | if the Court -- I mean, all that's in front of the Court |
|  | 13 | right now is MGA's motion for leave, which is, by the way, a |
|  | 14 | rehash of what it asked for -- |
| 09:50 | 15 | THE COURT:  No, no, you just drifted on me.  I'm |
|  | 16 | back there.  I'm up there on appellate purposes.  I'm taking |
|  | 17 | your position. |
| 09:50 | 18 | MR. ZELLER:  Right. |
| 09:50 | 19 | THE COURT:  I allegedly have denied their motion, |
|  | 20 | and it goes to appeal purposes.  I'm saying that the Circuit |
|  | 21 | is restricted from taking Ms. Keller's argument and |
|  | 22 | considering it. |
| 09:50 | 23 | MR. ZELLER:  I don't believe that's correct, |
|  | 24 | Your Honor. |
| 09:50 | 25 | THE COURT:  I do.  I do. |

09:50  1          Now, Ms. Estrich wants to talk to you for just a

2     moment, Mr. Zeller.

09:50  3          *(Conference between counsel.)*

09:50  4          MR. ZELLER:  What Ms. Estrich and I both think is

5     the case here, Your Honor, is that the Court would deny --

6     just to walk through the process -- and bear with me,

7     Your Honor.

09:50  8          If the Court denies all that's in front of the

9     Court right now, which is MGA's motion, and enters an

10    amended judgment reflecting the mandate, which is a

11    dismissal without prejudice of that claim, it will enter an

12    amended judgment.  That will allow MGA to take an appeal as

13    of right from that amended judgment, because the amended

14    judgment includes all orders that are encompassed within it.

09:51  15          So -- and that would, of course, include the

16    motion for -- the denial of the motion for leave.

09:51  17          So it is --

09:51  18          THE COURT:  What does that amended judgment look

19    like?  That's not a dispositive finding by the Court.  In

20    fact, the statute of limitations still has to go to the

21    jury.  All I've done is open up a vehicle to get there.  The

22    nice thing about that, from MGA's perspective, is it either

23    lays it to rest or not.

09:51  24          In other words, I'm not going any further and

25    wasting anybody's time by putting the statute of limitations

1    in front of the jury if I can get it up on an interloc.

2    They're going to say, "Judge Carter, go ahead, we think your

3    right," or "We think you're absolutely wrong."  That ends

4    it.

09:51    5    MR. ZELLER:  If the Court denies their motion and

6    enters an amended judgment, MGA can appeal from the amended

7    judgment, and that would allow them to challenge any orders

8    that underlie that amended judgment, including the

9    Court's --

09:52    10    THE COURT:  That's where I disagree.  I think that

11    the Circuit's limited to the record in front of it, and I

12    don't think that they're going to be able to reach out and

13    deal with this issue.  That doesn't mean I'm going to rule

14    that way.  It's just, as a practical matter, that's where my

15    disagreement is with you.

09:52    16    MR. ZELLER:  If I could, as an alternative, Your

17    Honor, suggest this:

09:52    18    If the Court is concerned as to whether or not MGA

19    could appeal from that as a final amended judgment, the

20    Court could also then take the step certifying under 1292(b)

21    and certify the order denying MGA the opportunity for leave

22    to amend.

09:52    23    THE COURT:  Let me think about that for a while.

24    Yeah.

09:52    25    MR. ZELLER:  And we would not have an issue.

09:52   1          THE COURT:  Without the Court ever reaching the

2       next step, and we'd have a procedural -- you know, whether

3       we have an avenue or not.

09:52   4          MR. ZELLER:  Correct.  And this is why,

5       Your Honor -- and I apologize if I haven't been clear about

6       this.

09:53   7          THE COURT:  No, no, you were.  It's just a

8       fallback position.  You were so involved with the first,

9       that Ms. Estrich suggested the second.

09:53   10         MR. ZELLER:  Thank you, Your Honor.

09:53   11         But I think we agree -- I think the parties agree,

12      and I think the Court is inclined this way, as well, is that

13      we all think that if --

09:53   14         THE COURT:  Maybe so.  Let me think that through.

15      I never want to be in a position where it looks like the

16      Court is flying in the face of the Circuit.  I want no

17      disrespect ever demonstrated or perceived to be demonstrated

18      by a trial court to the Circuit.  Therefore, that might be a

19      very respectful way.

09:53   20         Let me think that through.  I need to go research

21      the rules, quite frankly, and become more conversant with

22      the Circuit's rules.

09:53   23         MR. ZELLER:  Because I think we all do want to

24      avoid the situation of finding out, after going through all

25      the additional work, that -- and I think everyone agrees

DEBBIE GALE, U.S. COURT REPORTER

```
 1    there will be considerable work still left to do regardless

 2    of what court we're in.

 3            THE COURT:  It's a joy to have you here.

 4         (Laughter in the courtroom.)

 5            THE COURT:  I hope you enjoy your Saturdays and

 6    Sundays with me.  I enjoy my Saturdays and Sundays with you.

 7            MR. ZELLER:  As well, Your Honor.

 8            THE COURT:  Thank you.

 9            MR. ZELLER:  But we're still fighting

10    jurisdiction.  And fundamentally, Your Honor, we all agree

11    that it would be, obviously, the best for all involved if

12    the Ninth Circuit --

13            THE COURT:  Okay.  Thank you very much.

14            MR. ZELLER:  If I could just respond.

15            THE COURT:  Very briefly now.

16            MR. ZELLER:  Yes.  One thing is, and this really

17    goes to the nunc pro tunc issue.  I would direct the Court's

18    attention to the Kusay decision, K-U-S-A-Y, which was

19    written by Judge Easterbrook.

20            THE COURT:  Yeah, I've read it, and of course I'm

21    concerned.  That's why I raised nunc pro tunc as whether

22    it's a proper vehicle.  Judge Easterbrook's very well

23    respected.  Although he's in the Seventh Circuit, the Ninth

24    Circuit I think takes his writings into account.

25            MR. ZELLER:  In fact, the Ninth Circuit cited the
```

| | |
|---|---|
| 1 | decision favorably in the *United States v. Sumner*. |
| 2 | THE COURT: Thank you. I can read. |
| 3 | MR. ZELLER: Sure. |
| 4 | THE COURT: Believe it or not, I can read. |
| 5 | *(Laughter.)* |
| 6 | MR. ZELLER: The last point I would like to make, |
| 7 | Your Honor, is on a couple of points about the boxes. |
| 8 | The fact is, Your Honor -- because this came up -- |
| 9 | the Court will recall that, in fact, Mattel had already |
| 10 | produced documents out of those boxes. MGA claims -- |
| 11 | THE COURT: Counsel, you don't really want to go |
| 12 | there in this discussion. I would leave the record right |
| 13 | where it is, but if you want to persist in this. |
| 14 | MR. ZELLER: There's a transcript, Your Honor. We |
| 15 | produced those documents. The Court went downtown, also |
| 16 | with the discovery master, and went through those boxes |
| 17 | because MGA was challenging privilege on them. The Court |
| 18 | did not order any further documents produced out of those |
| 19 | boxes. I mean, this is something that MGA has spun over and |
| 20 | over and over, and it is not correct on the record, |
| 21 | Your Honor, and there is an objective record that shows |
| 22 | that. |
| 23 | THE COURT: Let's just say, so we're kind to both |
| 24 | sides, that two reasonable minds could disagree with those |
| 25 | boxes and how they got into counsel's possession. |

SACV 04-9049 DOC - 4/1/2013 - Item No. 7

34

09:55    1            MR. ZELLER:  Your Honor --

09:55    2            THE COURT:  Let's leave it at that.  Okay.

09:55    3            All right.  Ms. Keller.

09:55    4            MR. ZELLER:  Thank you.

09:56    5            MS. KELLER:  Your Honor, turning again to

         6    practical problems and, beyond that, to major legal

         7    problems, if the Court did as Mr. Zeller suggests and

         8    creates an amended judgment denying MGA's request and has

         9    to, of course, follow the mandate, dismiss without

        10    prejudice, the statute immediately starts running for us,

        11    immediately.  There's no more tolling.  And when that

        12    happens, we would have no choice but to immediately file in

        13    state court.

09:56   14            Meanwhile, there's an appeal running.  The appeal

        15    could be dismissed as moot because we've now filed in state

        16    court.

09:56   17            There are a myriad of problems and issues that we

        18    would run into that we would not run into if the Court

        19    simply granted our request to amend *nunc pro tunc* and

        20    certified that order.

09:56   21            And it's -- I don't think that the *nunc pro*

        22    *tunc* -- the history of *nunc pro tunc* is quite as limited as

        23    it's been portrayed by Mattel, because courts have routinely

        24    granted leave to amend -- to amend complaints *nunc pro tunc*

        25    because --

09:57  1          THE COURT:  After the fact?

09:57  2          MS. KELLER:  Well, that's what *nunc pro tunc* is.

3  That's been done where concerns of prejudice and economy

4  are --

09:57  5          THE COURT:  *Nunc pro tunc* normally, which I raised

6  it, is to correct the record.  It's not to raise a new

7  ruling.  And therefore, I think Mattel has a very strong

8  argument about that, which is why I raised it with you.  I'm

9  raising those things that are of concern to me.

09:57  10          MS. KELLER:  I understand.

09:57  11          THE COURT:  This is of concern to me.

09:57  12          MS. KELLER:  The *Am-Tower Corp. v. City of*

13  *San Diego (verbatim)*, for example, allowed a complaint to be

14  amended *nunc pro tunc*, where the complaint had been stricken

15  due to a procedural infraction, for example.

09:57  16          And I would argue that here we are in a situation

17  where the Court essentially did everything but enter the

18  ruling in our favor.  We're not asking the Court to go back

19  and change the ruling, because the Court had already found

20  all the criteria were met.  The Court simply thought it was

21  moot and didn't proceed to the very step.  That's all.

09:58  22          So it's not -- this would be very different than a

23  Court having to go back and say, "Well, I'm going to reverse

24  myself."

09:58  25          THE COURT:  I understand.

Case 2:04-cv-09049-DOC-RNB   Document 10877   Filed 05/02/13   Page 36 of 37   Page ID #:329726
SACV 04-9049 DOC - 4/1/2013 - Item No. 7

36

09:58    1              All right.  I want to thank all of you.

09:58    2              It's been a pleasure.  It's always good to see

         3     you, by the way.  You go about your business, and I want to

         4     thank you for your courtesy and your arguments.

09:58    5              By the way, for the record, on behalf of MGA and

         6     Mattel, this has been extraordinarily well briefed by both

         7     parties and extraordinarily well argued, and you both have

         8     my compliments.

09:58    9              Good day.

09:58   10         *(Proceedings concluded at 9:58 a.m.)*

09:58   11                              -oOo-

09:58   12

        13

        14

        15

        16

        17

        18

        19

        20

        21

        22

        23

        24

        25

SACV 04-9049 DOC - 4/1/2013 - Item No. 7

37

-oOo-

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  April 12, 2013

/s/ Debbie Gale
_____
DEBBIE GALE, U.S. COURT REPORTER
CSR NO. 9472, RPR, CCRR