1  SHARTSIS FRIESE LLP
   ARTHUR J. SHARTSIS (Bar #51549)
2  FRANK A. CIALONE (Bar #172816)
   LISA A. JACOBS (Bar #230364)
3  One Maritime Plaza, Eighteenth Floor
   San Francisco, CA  94111
4  Telephone:  (415) 421-6500
   Facsimile:  (415) 421-2922
5  Email:  ashartsis@sflaw.com;
   fcialone@sflaw.com; ljacobs@sflaw.com
6
7  Attorneys for
   ORRICK, HERRINGTON & SUTCLIFFE LLP
8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                SOUTHERN DIVISION

12

13  MATTEL, INC., a Delaware            Case No.  2:04-cv-09049 DOC-RNB
    corporation, and Mattel de Mexico,
14  S.A. de C.V., a Mexico business     **ORRICK, HERRINGTON &
    entity,                             SUTCLIFFE LLP'S
15                                      SUPPLEMENTAL BRIEF
                  Plaintiffs,           REGARDING COURT'S
16                                      EQUITABLE POWER TO ORDER
          v.                            THAT AWARD FUNDS BE HELD IN
17                                      TRUST**
    MGA ENTERTAINMENT, INC., a
18  California Corporation, et al.,     **[Redacted Version]**

19                  Defendants.         Judge:      Hon. David O. Carter
20

21

22

23

24

25

26

27

28

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111

1  Orrick, Herrington & Sutcliffe, LLP ("Orrick") submits the following brief in
2  response to this Court's May 28, 2013 Minute Order.

3  **I.    INTRODUCTION**

4          This Court can—and should—issue an order to assure that its earlier
5  attorneys' fee award in this case goes to the lawyers who earned those fees, but who
6  have not yet been paid. As this Court has observed, Orrick's lawyers and staff
7  worked tirelessly for MGA in a massive litigation battle with Mattel.   The
8  magnitude and success of that effort is reflected in no small part in this Court's
9  $138 million award of attorneys' fees to MGA.   Though MGA has sought and
10 obtained reimbursement of its fees from both its insurers and Mattel, it still refuses
11 to pay Orrick what it owes.   Instead, Orrick was forced to pursue its fees through a
12 JAMS arbitration.

13         In that arbitration, the panel of distinguished retired judges issued a Partial
14 Final Award on January 25, 2013 in which it concluded Orrick had shown that it
15 would probably succeed in obtaining a fee award of *at least* $23 million.   In the
16 arbitration, Orrick has demanded a total of approximately ██████, plus pre-
17 judgment interest at the legal rate.   The arbitration's evidentiary hearing started in
18 the last week of May, and will resume (and conclude) the first week of July.   Orrick
19 hopes and expects to recover most, if not all, of what it has requested.

20         Given the vigor with which MGA has attempted to avoid paying Orrick for
21 its very successful work for MGA, Orrick has every reason to believe that MGA
22 will continue to pull out all the stops to avoid that obligation even after the
23 arbitrators issue their final award.   Indeed, when Orrick attempted to secure its lien
24 rights under the Partial Final Award by giving notice, MGA tried to rescind the
25 parties' arbitration agreement by alleging that Orrick's notice constituted a breach
26 of Orrick's confidentiality obligations.   That effort was unsuccessful; the Orange
27 County Superior Court dismissed MGA's suit and granted Orrick's Petition to
28 Compel Arbitration.

Shartsis Friese LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

That recent history provides a useful backdrop for the answers to this Court's questions. This Court has asked: (1) whether the Court has the authority to create a constructive trust to preserve all or part of the approximately $138 million judgment payable to MGA until such time as third party claims to those funds can be resolved; and, if so, (2) how much should be set aside for each of the parties who claim a share of that judgment. With respect to the first question, the Court has broad equitable powers to manage the administration of a *res* (in this case, the proceeds of its fee award) whose ownership is in dispute. The Court may use its registry, a trust account, or a constructive trust protected by a bond, subject to the Court's disposition based on the arbitration panel's finding and subsequent judicial confirmation. If the Court chooses the mechanism of a constructive trust, Orrick asks the Court to do so by means of appointment of a trustee *other than MGA* to take custody of the funds pending resolution of the fee arbitration. Should the Court impose a constructive trust by which MGA obtains custody of the funds, Orrick asks the Court to require MGA to post a bond guaranteeing the sum that Orrick seeks in the fee arbitration.

The equities heavily favor the creation of such a trust. Orrick has expended substantial effort to collect fees for a case it helped *win*. Moreover, the vigor with which MGA has opposed Orrick's fee demands suggest there is a substantial risk that MGA will dissipate Orrick's portion of the Mattel judgment proceeds or otherwise seek to frustrate Orrick's recovery of fees to which it was entitled years ago. MGA, on the other hand, would suffer minimal prejudice if these funds were placed in trust while claims against it are pending. As the Court noted during the February 26 hearing, MGA is choosing to further litigate against Mattel, and therefore cannot claim to be involuntarily incurring legal fees. Moreover, the arbitration proceedings are nearly complete, with the final week of evidentiary hearings set for early July, so the term of the proposed constructive trust would not be long.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1   With respect to the second question, Orrick cannot speak for the other parties

2   seeking a share of the funds, but in its fee arbitration it has demanded Redacted

3   plus interest at the legal rate.  Because MGA has invalidated the fee agreement,

4   Orrick is proceeding against MGA under quantum meruit principles.    The

5   reasonable value of its services in the litigation, less amounts paid, totals Redacted

6   .[1]  Interest thereon at the legal rate in California of ten percent adds another

7   Redacted to that total.

8   ## II.   THE COURT HAS BROAD EQUITABLE POWER TO ORDER THAT THE MATTEL JUDGMENT BE HELD IN TRUST FOR ORRICK

9

10   Federal district courts and California state courts have exercised their

11   equitable powers to require that funds paid in connection with legal disputes

12   between two parties be held in trust for the benefit of lawful third party claimants.

13   In the context of judgment proceeds, courts have held funds in the registry of the

14   court to resolve and apportion funds among competing claimants to resolve issues

15   such as those before this Court.  *See, e.g.*, *Rosquist v. Soo Line R.R.*, 692 F.2d 1107,

16   (7th Cir. 1982) (finding that district court had equitable jurisdiction to supervise the

17   [1] Redacted



Because MGA is given to accusing Orrick of breaching its confidentiality obligations, we point out that it was MGA's public filings in those civil proceedings that disclosed not only that it had voided the fee agreement but also that Orrick was pursuing its fees on the basis of principles of quantum meruit.  Declaration of Joseph V. Mauch In Support of Supplemental Brief ("Mauch Decl."), Ex G. (Mar. 20, 2013 Petition to Vacate).  MGA has also produced the fee agreement to its insurance carriers (but not Mattel) in its litigation with them.  However, because the fee agreement has not been produced to Mattel and because MGA may contend that the details of Orrick's claim against MGA, including the amount of that claim, are confidential under the arbitration agreement, Orrick has currently herewith requested permission to file portions of this brief under seal and to serve only the redacted version of this brief on Mattel and MGA's insurance carriers.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

disposition of award funds held in registry of court); *The Facebook, Inc. v. ConnectU, Inc.*, Case No. 07-01389-JW (N.D. Cal.), Dkt. No. 665 at 2 (ordering settlement proceeds to be held by payee's law firm pending the perfection of an attorney fee lien by another law firm); *Iron Workers Locals 40, 361 & 417 Health Fund v. Dinnigan*, --- F. Supp. 2d ----, 2012 WL 5877426 (S.D.N.Y. Nov. 21, 2012) (payee ordered to post bond to protect settlement proceeds from future potential third party ERISA claims).

A.    <u>Courts Frequently Use Their Equitable Power To Require That Funds Be Held In Trust Accounts For Lawful Claimants.</u>

Because the constructive trust remedy is a creature of state common law, federal courts also look to state decisions for guidance. *See Junker v. Eddings*, 396 F.3d 1359, 1367 (Fed Cir. 2005) ("Because a constructive trust is a creature of state law, we look to that law to determine the requirements for and limits of that concept."). California's courts have used their equitable powers to require that settlement funds be placed in blocked accounts to allow competing claimants to resolve their dispute. *See Biggins v. Newlee*, 2011 WL 5842849 at *5 (Cal. App. Nov. 22, 2011) (unpublished); *Med. Legal Consulting Servs., Inc. v. Covarrubias*, 234 Cal. App. 3d 80, 85 (1991).   In *Biggins*, a dispute among two attorneys and their client over the appropriate division of settlement proceeds, the plaintiff attorney sought a constructive trust over the proceeds. *Id.* at *2.  The trial court ordered the attorney in possession of the settlement check to deposit it and place the disputed portion in a blocked account while the parties litigated their entitlement to a share. *Id.* at *5 ("Eventually, the court ordered [attorney] Biggins to endorse the settlement check and that a disputed portion of the settlement proceeds be placed in a blocked account.").  After the case went to trial and a jury returned verdicts on the parties' claims, including a quantum meruit cause of action, the trial court entered judgment. *Id.* at *3.  The Court of Appeal approved of the trial court's handling of the case and affirmed the judgment in relevant part. *Id.* at *9.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    Federal courts have also frequently required that funds be held in trust for

2    lawful claimants.  The litigation over the founding of Facebook, *The Facebook, Inc.*

3    *v. ConnectU, Inc.*, Case No. 07-01389-JW (N.D. Cal.), provides another

4    noteworthy example.  In that case, the Court entered a judgment enforcing the

5    parties' settlement agreement and the Quinn Emanuel law firm asserted an interest

6    in the proceeds.  *See* Mauch Decl., Exs. A (Dkt. No. 476) & B (Dkt. No. 653).

7    Quinn Emanuel asked the Court to order that any disbursement of funds be made

8    jointly in the name of the defendants and Quinn Emanuel.  *See id.*  Judge Ware

9    declined that request because Quinn Emanuel had not yet perfected a lien on any

10   proceeds; instead, the Court ordered that the funds be transferred to defendants'

11   new counsel, Boies, Schiller & Flexner LLP, and held "<u>in trust for its clients and</u>

12   <u>any lawful claimant.</u>"  *Id.*, Ex. C (Dkt. No. 665 at 2) (emphasis added); *see also id.*,

13   Ex. B (Dkt. No. 653 at 6).  In a subsequent order, the Court further explained "<u>the</u>

14   <u>requirement that the distribution be held 'in trust' for 'any lawful claimant' was</u>

15   <u>intended to enforce the Settlement Agreement, but in doing so, to permit the Quinn</u>

16   <u>Emanuel law firm to perfect any lien and to assert any perfected lien against the</u>

17   <u>proceeds in the hands of the Boies, Schiller & Flexner LLP law firm.</u>"  *Id.*, Ex. D

18   (Dkt. No. 664 at 3) (emphasis added).  After Quinn Emanuel perfected its lien, the

19   Court ordered funds held by Boies Schiller in escrow to be disbursed.  *See id.*,

20   Exs. E (Dkt. No. 800) & F (Dkt. No. 803).  The facts of the *Facebook* are relevant

21   here, and Judge Ware's rulings illustrate the breadth of equitable remedies this

22   Court may employ to ensure that the Mattel Judgment is distributed for its intended

23   purpose.

24   Likewise, *Iron Workers Locals 40, 361 & 417 Health Fund v. Dinnigan*, ---

25   F. Supp. 2d ----, 2012 WL 5877426 (S.D.N.Y. Nov. 21, 2012) involved the

26   disbursement of settlement funds set aside in trust because of potential third party

27   claims.  The case came before the district court after a state court had ordered that

28   certain funds obtained in a personal injury settlement be set aside, first in escrow

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111

and then released subject to a bond condition, to permit a health fund to resolve its claim for reimbursement. *Id.* at *2, *11 ("Mr. Dinnigan was ordered to post a $5 million bond with the Clerk prior to his receipt of any of the settlement funds, and maintain the bond by those settlement payments until further court order."). The health fund then sought to reduce its reimbursement claim to judgment in the district court pursuant to the Employee Retirement Income Security Act (ERISA). *Id.* The district court ultimately found that the health fund was entitled to a portion of the funds set aside for potential reimbursement and entered judgment for the health fund. *Id.* at *15. In each of these cases, the trial court fashioned a constructive trust remedy to ensure that funds end up in their rightful hands.

## B. Courts Also Order Judgment Funds Into The Registry Of Court To Apportion Them Among Competing Claimants.

In addition to imposing constructive trusts, district courts also have authority founded in equity to order judgment proceeds deposited into the registry of the court in order to permit their apportionment among competing claimants. For example, in *Rosquist v. Soo Line R.R.*, 692 F.2d 1107 (7th Cir. 1982), the district court retained control of award funds after it entered judgment on the verdict in an accident case, and ordered the payment of contingency fees to plaintiffs' counsel from that fund, which was held in the registry of the court. *Id.* at 1110. The Seventh Circuit agreed that the district court had equitable jurisdiction to supervise the disposition of the fund, noting that judgment creditors had intervened and counsel had asserted a right to a portion of the fund. *Id.* The Court wrote, "[o]nce invoked, the equitable jurisdiction of the court was not exhausted until all claims against the funds in the registry of the court were adjudicated." *Id.* (internal quotations and citations omitted). The Court also found no abuse of discretion by the lower court in reducing the contingency fee to an amount it determined reasonable. *Id.* at 1115.

Similarly, in *Garrett v. McRee*, 201 F.2d 250 (10th Cir. 1953), the Tenth

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1   Circuit held the district court properly invoked its equitable jurisdiction to
2   apportion judgment proceeds held in the registry of the court among estate
3   administrators and attorneys competing for portions of the judgment.   Two
4   attorneys had actively participated in the underlying jury trial involving a wrongful
5   death claim and personal claims of two members of the decedent's family.  *Id.* at
6   252.  The jury awarded $20,000 to the administrator of the estate for economic loss
7   suffered by next of kin—$5,000 for the husband and $15,000 for his minor
8   daughter.   *Id.* (total award of $24,292).   The attorney for the estate filed an
9   attorney's lien for one-third of the total judgment; the daughter's guardian
10  intervened and argued that he was entitled to the $15,000 award free of the claim
11  for attorney's fees.  *Id.*  Balancing these competing claims, the trial court found that
12  a reasonable attorneys' fee for the services of both attorneys would be one-third of
13  the total judgment, and apportioned that amount between the lawyers based on their
14  respective work.  *Id.*   On appeal, the Tenth Circuit affirmed the trial court's
15  equitable jurisdiction to resolve the competing claims:

> We agree with the trial court that its equitable jurisdiction
> was thus invoked; that it was undoubtedly empowered to
> determine the aggregate amount of attorneys' fees earned
> in the creation of the fund in the registry of the court.
> And we also agree that as a proper incident to the exercise
> of that jurisdiction, it was certainly empowered to
> apportion that amount between contending claimants
> whose joint efforts created the fund.

*Id.* at 253-54.

Numerous other cases follow similar logic.  *See, e.g.*, *U.S. v. Overseas
Shipholding Grp., Inc.*, 625 F.3d 1, 8 (1st Cir. 2010) (district court had inherent
supervisory authority to review and limit contingency fee paid to attorney from
whistleblower award—court had ordered government to make direct payment to
attorney for fees from award); *Green v. Nevers*, 111 F.3d 1295, 1302 (6th Cir.
1997) (affirming district court order regarding disbursal of attorney fees from
settlement funds held in escrow); *Moore Bros. Constr. Co. v. City of St. Louis*, 159,

S<span>HARTSIS</span> F<span>RIESE</span> LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111

F.2d 586, 588 (7th Cir. 1947) (affirming district court jurisdiction to resolve competing attorney claims to funds held by registry of court); *Barros v. Bauer & Schultz*, 2004 WL 693244 (Cal. App. Apr. 2, 2004) (unpublished) (affirming decision in dispute over attorneys' fees owed from settlement funds, in which trial court ordered the settlement check deposited into registry of court to be released pursuant to court order).   In sum, district courts have the equitable authority to control the disposition of funds at issue in cases before them whether through the registry of the court, a constructive trust, or escrow arrangement.

C.   <u>Alternatively, This Court Has The Authority To Impose A</u> <u>Constructive Trust On Payments Made To MGA And Order</u> <u>MGA to Post a Bond.</u>

The Court also has the authority to order that payment be made to MGA or an independent trustee subject to a constructive trust.  A constructive trust is a flexible remedy grounded in common law principles of equity, and courts use it to prevent unjust enrichment and ensure that funds end up in their rightful hands. *See* Restatement (First) of Restitution § 160 cmt. a ("A constructive trust . . . is imposed as a remedy to prevent unjust enrichment."); *id.*, § 160 cmt. c ("A constructive trust is imposed upon a person to prevent his unjust enrichment.  To prevent such unjust enrichment an equitable duty to convey the property to another is imposed upon him."); 13 Witkin, Summary of Calif. Law, Trusts § 319 (10th ed. 2005) ("A constructive trust is a *remedy* used by a court of equity to compel a person who has property to which he is not justly entitled to transfer it to the person entitled thereto. The trust is passive, the only duty being to convey the property." (emphasis original)).

The Ninth Circuit recognizes the power of a district court to impose constructive trusts and has held that "constructive trust is a form of remedy that is '<u>flexibly fashioned in equity to provide relief where a balancing of interests in the</u> <u>context of a particular case seems to call for it.</u>'" *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1141 (9th Cir. 2010) (emphasis added) (citations omitted).  In

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

*Network Services*, the Ninth Circuit affirmed the district court's imposition of a constructive trust over attorneys' fees paid from funds the defendants wrongfully obtained. *Id.* at 1142. The Court further affirmed the lower court's decision to permit counsel to recover a portion of those fees. *Id.* at 1145.[2]

Courts have similarly broad equitable authority under California law. *See, e.g.*, *Weiss v. Marcus*, 51 Cal. App. 3d 590, 600 (1975) ("[A] constructive trust may be imposed in practically any case where there is a wrongful acquisition or detention of property to which another is entitled," and holding that discharged attorney seeking fees could seek a constructive trust over settlement funds dispersed to client and another law firm); *Martin v. Kehl*, 145 Cal. App. 3d 228, 237 (1983) (noting broad equitable power of trial court to impose constructive trust).

In light of MGA's demonstrated commitment to evading its obligation to pay Orrick's attorneys' fees, Orrick asks the Court either to appoint an independent trustee to take custody of the Mattel judgment proceeds or, if MGA is given custody, to require it to post a bond to guarantee its performance of its obligations as constructive trustee and to honor conditions placed upon disbursement of those judgment proceeds. *Dinnigan*, 2012 WL 5877426, at *11 (imposing a bond requirement for recipient of settlement proceeds).[3]

## III.   ORRICK IS CLAIMING A TOTAL OF ███ MILLION IN FEES AND PREJUDGMENT INTEREST

Because MGA chose to void its fee agreement with Orrick, Orrick is seeking the reasonable value of its services in its arbitration with MGA pursuant to principles of quantum meruit. Orrick asserts the reasonable value of its services to

---

[2] *Network Services* arose under the Federal Trade Commission Act, but the Ninth Circuit looked to common law principles of equity in evaluating the district court's application of the constructive trust remedy. *See* 617 F.3d at 1142.

[3] These equitable remedies appear to be more expedient to interpleader at this juncture given that the arbitration is almost complete at this point, and interpleader presents the risk of undermining that process and wasting the resources already invested. Accordingly, Orrick respectfully requests that this Court allow the parties to conclude their arbitration process and then manage the payments ordered by the arbitration panel using one of the equitable remedies identified in this brief.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1  MGA, less sums MGA has paid to date, is ███████.  In addition, Orrick claims

2  the right to prejudgment interest at the legal rate of ten percent per annum (running

3  from the date on which MGA voided the fee agreement), which adds approximately

4  ███████ to the total claim.  The fee arbitration between Orrick and MGA will

5  soon be completed: the first of two weeks of evidentiary hearing concluded on May

6  31, the second will conclude on July 5, and the arbitrators will render their decision

7  thereafter.

8        Though Orrick has not yet reduced its claim to judgment, it has reason to

9  believe that its claim will be awarded in whole or substantial part.  Before the live

10  evidentiary presentations began, the arbitration panel issued a Partial Final Award

11  finding that Orrick had established a likelihood of success on the merits for a

12  recovery of at least $23 million.  Mauch Decl., Ex. H.

13        Thus, Orrick respectfully requests that the Court set aside a total of ███████

14  ███████ in connection with its claim for unpaid fees to cover the amount of Orrick's

15  fee demand.

16

17

18  DATED:  June 12, 2013          SHARTSIS FRIESE LLP

19

20                               By:        /s/ Arthur J. Shartsis
21                                    ARTHUR J. SHARTSIS
                                         Attorneys for
22                                 ORRICK, HERRINGTON &
                                      SUTCLIFFE LLP
23

24

25

26

27

28

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111