SHARTSIS FRIESE LLP
ARTHUR J. SHARTSIS (Bar #51549)
FRANK A. CIALONE (Bar #172816)
LISA A. JACOBS (Bar #230364)
One Maritime Plaza, Eighteenth Floor
San Francisco, CA  94111
Telephone:  (415) 421-6500
Facsimile:  (415) 421-2922
Email:  ashartsis@sflaw.com;
fcialone@sflaw.com; ljacobs@sflaw.com

Attorneys for
ORRICK, HERRINGTON & SUTCLIFFE
LLP

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de C.V., a Mexico business entity,<br><br>Plaintiffs,<br><br>v.<br><br>MGA ENTERTAINMENT, INC., a California Corporation, et al.,<br><br>Defendants. | Case No.  CV 04-9049 DOC (RNBx)<br><br>**DECLARATION OF JOSEPH V. MAUCH IN SUPPORT OF ORRICK HERRINGTON & SUTCLIFFE LLP'S SUPPLEMENTAL BRIEF REGARDING COURT'S EQUITABLE POWER TO ORDER THAT AWARD FUNDS BE HELD IN TRUST**<br><br>**[Redacted Version]**<br><br>Judge:      Hon. David O. Carter |

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.
CV 04-9049 DOC
(RNBx)                    REDACTED DECLARATION OF JOSEPH MAUCH ISO ORRICK'S
SUPPLEMENTAL BRIEF RE COURT'S EQUITABLE
POWER TO ORDER THAT AWARD FUNDS BE HELD IN TRUST

001

I, Joseph Mauch, hereby declare:

1.     I am an attorney at law duly licensed to practice before the United States District Court, Central District of California, and I am an attorney with the law firm of Shartsis Friese LLP, attorneys of record of Orrick, Herrington & Sutcliffe LLP ("Orrick").  I have personal knowledge of the matters set forth in this Declaration , and if called as a witness, I could and would competently testify to these matters.

2.     Attached hereto as Exhibit A is a true and correct copy of Dkt. No. 476, *The Facebook, Inc. v. ConnectU, Inc., et al.*, Case No. 07-cv-01389-JW (N.D. Cal).

3.     Attached hereto as Exhibit B is a true and correct copy of Dkt. No. 653, *The Facebook, Inc. v. ConnectU, Inc., et al.*, Case No. 07-cv-01389-JW (N.D. Cal).

4.     Attached hereto as Exhibit C is a true and correct copy of Dkt. No. 665, *The Facebook, Inc. v. ConnectU, Inc., et al.*, Case No. 07-cv-01389-JW (N.D. Cal).

5.     Attached hereto as Exhibit D is a true and correct copy of Dkt. No. 664, *The Facebook, Inc. v. ConnectU, Inc., et al.*, Case No. 07-cv-01389-JW (N.D. Cal).

6.     Attached hereto as Exhibit E is a true and correct copy of Dkt. No. 800, *The Facebook, Inc. v. ConnectU, Inc., et al.*, Case No. 07-cv-01389-JW (N.D. Cal).

7.     Attached hereto as Exhibit F is a true and correct copy of Dkt. No. 803, *The Facebook, Inc. v. ConnectU, Inc., et al.*, Case No. 07-cv-01389-JW (N.D. Cal).

8.     Attached hereto as Exhibit G is a true and correct copy of MGA's Renewed Notice of Hearing on and Memorandum of Points and Authorities in

Case No.
CV 04-9049 DOC
(RNBx)                                     - 1 -
REDACTED DECLARATION OF JOSEPH MAUCH ISO ORRICK'S
SUPPLEMENTAL BRIEF RE COURT'S EQUITABLE
POWER TO ORDER THAT AWARD FUNDS BE HELD IN TRUST

002

1  Support of Petition to Vacate Partial Final Arbitration Award, filed on March 20,

2  2013 in Orange County Superior Court.

3       9.     Attached here to as Exhibit H is a true and correct copy of the Partial

4  Final Award issued in the JAMS arbitration proceeding between Orrick and MGA

5  on January 25, 2013.

6

7       I declare under penalty of perjury that the foregoing is true and correct.

8  Executed on June 12, 2013, in San Francisco, California.

9

10

11                              */s/ Joseph V. Mauch*

12                              JOSEPH V. MAUCH

13

   8355\001\1902929.1

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.                                    - 2 -
CV 04-9049 DOC         REDACTED DECLARATION OF JOSEPH MAUCH ISO ORRICK'S
(RNBx)                      SUPPLEMENTAL BRIEF RE COURT'S EQUITABLE
                       POWER TO ORDER THAT AWARD FUNDS BE HELD IN TRUST

# Exhibit A

Case 2:04-cv-09049-DOC-RNB   Document 10283   Filed 06/12/13   Page 5 of 56   Page ID
#:329748
Case 5:07-cv-01389-JW   Document 478   Filed 07/02/2008   Page 5 of 5

United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| The Facebook, Inc., et al., | NO. C 07-01389 JW |
| Plaintiffs, | **JUDGMENT ENFORCING SETTLEMENT AGREEMENT** |
| v. | |
| ConnectU, Inc., et al., | |
| Defendants. | |

Pursuant to the Court's June 25, 2008 Order Granting Plaintiffs' Confidential Motion to Enforce the Settlement Agreement (docket item no. 461), the parties appeared before the Court on July 2, 2008 to show cause why a judgment should not be entered. Based on the papers submitted and oral arguments of counsel,

JUDGMENT IS ENTERED ENFORCING "THE TERM SHEET & SETTLEMENT AGREEMENT" AS FOLLOWS:

(1)     The Facebook, Inc. and Mark Zuckerberg:

(a)     Pursuant to Paragraphs 4 and 7 of the Agreement, unless otherwise ordered by the Court, on or before **August 4, 2008**, The Facebook, Inc. shall deposit with the Master, the amount of cash and the certificates representing the amount of The Facebook, Inc. common shares stated in Paragraph 7 of the Agreement, endorsed for transfer. The following legend shall appear on certificates of The Facebook, Inc. common stock issued pursuant to this Judgment:

United States District Court

For the Northern District of California

1    THE SHARES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED

2    UNDER THE SECURITIES ACT OF 1933, AS AMENDED.  THEY MAY NOT BE SOLD, OFFERED FOR

3    SALE, PLEDGED OR HYPOTHECATED IN THE ABSENCE OF A REGISTRATION STATEMENT IN

4    EFFECT WITH RESPECT TO THE SECURITIES UNDER SUCH ACT OR AN OPINION OF COUNSEL

5    REASONABLY SATISFACTORY TO THE ISSUER THAT SUCH REGISTRATION IS NOT REQUIRED,

6    OR UNLESS SOLD PURSUANT TO RULE 144 OF SUCH ACT.

7    THE SHARES REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO AN AGREEMENT

8    WITH REGARD TO THE VOTING OF SUCH SHARES, AS PROVIDED IN THE CERTAIN TERM SHEET

9    & SETTLEMENT AGREEMENT PURSUANT TO WHICH SUCH SHARES WERE ORIGINALLY

10   ISSUED.  THE HOLDERS OF SUCH SHARES ARE ENTITLED TO THE SAME ANTI-DILUTION

11   RIGHTS AFFORDED THE ISSUER'S SERIES D PREFERRED STOCK, AS PROVIDED IN SUCH TERM

12   SHEET & SETTLEMENT AGREEMENT.   A COPY OF SUCH TERM SHEET & SETTLEMENT

13   AGREEMENT IS ON FILE IN THE OFFICE OF THE SECRETARY OF THE ISSUER.

14   (b)   Pursuant to Paragraphs 2 and 4 of the Agreement, on or before **12 noon on**

15   **July 9, 2008**, The Facebook, Inc. and Mark Zuckerberg shall submit to the

16   Court for approval a proposed form of release.  Upon approval by the Court,

17   the release shall be signed by The Facebook, Inc. and Mark Zuckerberg, and

18   shall have attached to it corporate authority given to the corporate signatory

19   and shall be notarized as to each signatory and shall be immediately deposited

20   with the Master;

21   (c)   Pursuant to Paragraphs 2 and 4 of the Agreement, unless otherwise ordered by

22   the Court, on or before **August 4, 2008**, a legally sufficient dismissal with

23   prejudice of all cases by and between the parties pending as of the date of the

24   Agreement.[1]  The dismissal shall recite that each party to the respective

25   litigation shall bear their own attorney fees and costs.

---

27   [1]   The other two cases are <u>ConnectU, LLC v. Facebook, Inc., et al.</u>, Case No. 1:04-cv-11923-DPW, currently on appeal to the First Circuit Court of Appeals; and <u>ConnectU, Inc., et al. v. Facebook, Inc., et al.</u>, Case No. 1:07-cv-10593-DPW, currently pending in the District of Massachusetts.

2

Case 2:04-cv-09049-DOC-RNB   Document 10883   Filed 06/12/13   Page 7 of 56   Page ID
#:329750
Case 5:07-cv-01389-JW   Document 476   Filed 07/02/2008   Page 3 of 5

(2)     ConnectU Inc., Cameron Winklevoss, Tyler Vinklevoss, and Divya Narendra:

      (a)     Pursuant to Paragraphs 4 and 7 of the Agreement, unless otherwise ordered by the Court, on or before **August 4, 2008**, ConnectU Inc. shall deposit with the Master all shares of ConnectU Inc., endorsed for transfer.  To the extent the parties to the Agreement do not own any shares of ConnectU Inc., to fulfill the obligation of the transfer of "all ConnectU stock," the parties to the Agreement shall take such actions in their respective corporate and individual capacities as are necessary to effect the deposit with the Master of all shares of ConnectU stock;

      (b)     Pursuant to Paragraphs 2 and 4 of the Agreement, on or before **12 noon on July 9, 2008**, ConnectU, Inc., Cameron Winklevoss, Tyler Vinklevoss and Divya Narendra shall submit to the Court for approval a proposed form of release.  Upon approval by the Court, the release shall be signed by these parties and shall have attached to it corporate authority given to the corporate signatory and shall be notarized as to each signatory and shall be immediately deposited with the Master;

      (c)     Pursuant to Paragraphs 2 and 4 of the Agreement, unless otherwise ordered by the Court, on or before **August 4, 2008**, a legally sufficient dismissal with prejudice of all cases by and between the parties pending as of the date of the Agreement.  The dismissal shall recite that each party to the respective litigation shall bear their own attorney fees and costs.

(3)     Upon further order of the Court, the parties shall deposit with the Master such other and further things which will facilitate the orderly exchange of the consideration and shall do the things ordered by the Court to ensure the operational integrity of the business entities that are parties to the Agreement.

3

007

1  (4)  The deposits being made with the Master by the parties pursuant to this Judgement

2     shall be transferred out of the deposit by the Master only upon further Order of the

3     Court in enforcement of the Agreement.

4  The Court retains jurisdiction to enforce this Judgment.

5

6 Dated: July 2, 2008

7             JAMES WARE
             United States District Judge

**United States District Court**
For the Northern District of California

4

Case 2:04-cv-09049-DOC-RNB   Document 10283   Filed 06/12/13   Page 9 of 56   Page ID
#:329752
Case 5:07-cv-01389-JW   Document 776   Filed 07/02/2008   Page 5 of 5

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Chester Wren-Ming Day cday@orrick.com
D. Michael Underhill MUnderhill@BSFLLP.com
David A. Barrett dbarrett@bsfllp.com
Evan A. Parke eparke@bsfllp.com
George Hopkins Guy hopguy@orrick.com
I. Neel Chatterjee nchatterjee@orrick.com
Jonathan M. Shaw jshaw@bsfllp.com
Kalama M. Lui-Kwan klui-kwan@fenwick.com
Monte M.F. Cooper mcooper@orrick.com
Scott Richard Mosko scott.mosko@finnegan.com
Sean Alan Lincoln slincoln@Orrick.com
Steven Christopher Holtzman sholtzman@bsfllp.com
Theresa Ann Sutton tsutton@orrick.com
Tyler Alexander Baker Tbaker@fenwick.com
Valerie Margo Wagner valerie.wagner@dechert.com
Yvonne Penas Greer ygreer@orrick.com

**Dated: July 2, 2008**                    **Richard W. Wieking, Clerk**

**By:   /s/ JW Chambers**
          **Elizabeth Garcia**
          **Courtroom Deputy**

**United States District Court**
For the Northern District of California

009

# Exhibit B

Case 2:04-cv-09049-DOC-RNB    Document 10883    Filed 06/12/13    Page 11 of 56    Page ID
#:329754
Case 5:07-cv-01389-JW    Document 683    Filed 11/03/2008    Page 1 of 7

United States District Court

For the Northern District of California

1

2

3

4

5

6

7               IN THE UNITED STATES DISTRICT COURT

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                       SAN JOSE DIVISION

10   The Facebook, Inc., et al.,                    NO. C 07-01389 JW

11              Plaintiffs,                   **ORDER DIRECTING THE SPECIAL**
                                             **MASTER TO DELIVER THE PROPERTY**
        v.                                   **BEING HELD IN TRUST TO THE**
12                                           **PARTIES IN ACCORDANCE WITH THE**
     ConnectU, Inc., et al.,                 **TERMS OF THEIR SETTLEMENT**
13                                           **AGREEMENT**
              Defendants.
14   _____/

15                        **I.  INTRODUCTION**

16          On February 22, 2008, the parties to civil cases pending in this Court and the District of

17   Massachusetts signed a "Term Sheet & Settlement Agreement."  The Agreement provided:  "The

18   parties stipulate that the San Jose Federal court shall have jurisdiction to enforce this agreement."[1]

19   On April 23, 2008, The Facebook, Inc., filed a motion with this Court to enforce the Agreement.

20   The motion was docketed in an action pending in this Court.  However, it was in legal effect an

21   ancillary proceeding to the pending action.[2]

22          On June 25, 2008, over objections by ConnectU and the Founders (collectively,

23   "ConnectU"), the Court granted the motion to enforce the Agreement.  (Enforcement Order at 4.)

24   The Court appointed a Special Master to gather and hold the property and cash which the parties had

25   _____

26          [1]  (Order Granting Plaintiffs' Confidential Motion to Enforce the Settlement Agreement at 3,
     hereafter, "Enforcement Order," Docket Item 461.)

27          [2]  The ancillary nature of the motion was addressed in the Court's August 8, 2008 Order.
28   (See Order Denying the ConnectU Founders' Motion to Intervene; Denying ConnectU's Motion to
     Stay Execution of Judgment at 5, hereafter, "Deny Stay Order," Docket Item No. 610.)

agreed to exchange in the Agreement.  (Docket Item No. 475.)  On July 2, 2008, the Court issued a Judgment Enforcing Settlement Agreement  (hereafter, "July 2 Judgment," Docket Item No. 476), in which the Court ordered the parties to deposit with the Special Master stock, cash and various other documents.

On September 5, 2008, the Special Master issued a report stating that he received the stock, cash and documents.  (hereafter, "Special Master's Report," Docket Item No. 630.)  Pursuant to the Court's appointment Order, the Special Master also provided the Court with his recommendations of action which the Court should take in the enforcement of the Agreement.  (Special Master's Report at 6.)  On September 19, 2008, the Court issued an order for the parties to appear on October 28, 2008 and show cause, if any, why the Court should not order the Master to deliver the property being held by him to the parties in accordance with the terms of the Agreement.  (Docket Item No. 634.)

At the October 28th hearing, counsel appearing for ConnectU and the Founders advised the Court that on July 30, 2008, ConnectU had noticed an appeal from the July 2 Judgment, and that on August 11, 2008, the Founders had also noticed an appeal from the July 2 Judgment.  (See Docket Item Nos. 582, 611, respectively.)  Defendants contended that because of their appeals, the Court lacked jurisdiction to order the Master to deliver the things held by him in enforcement of the Agreement.[3]

Also appearing were counsel for Quinn Emanuel Urquhart Oliver & Hedges, LLP, requesting the Court to honor a lien the firm has asserted on the settlement proceeds.  (Docket Item Nos. 337, 644.)

Since Defendants' challenge to the Court's jurisdiction is a threshold issue, the Court proceeds to address this issue first.  The Court will also consider Quinn Emanuel's lien on the proceeds.

---

[3]  (Defendants' Response to Order to Show Cause on Disbursement of Settlement Consideration, and Renewed Motion to Stay at 1, hereafter, "Defendants' Response," Docket Item No. 637.)

2

Case 2:04-cv-00049-DOC-RNB   Document 10883   Filed 06/18/13   Page 13 of 56   Page ID
Case 5:07-cv-01389-JW   Document 583   Filed 11/03/2008   Page 13 of 7   Page ID
#:329756

# II.  DISCUSSION

**A.**   **Jurisdiction**

Defendants contend that the Court lacks jurisdiction to take further action because any such action would be taken after an appeal has been filed from the July 2 Judgment, which was final and appealable.  (Defendants' Response at 1.)

As a general matter, "[o]nce a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed."  Natural Resources Defense Council, Inc. v. Southwest Marine, Inc., 242 F.3d 1163, 1166 (9th Cir. 2001) (citing Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982)).  However, there are, several exceptions to the principle of exclusive appellate jurisdiction.  Id.  An appeal to the Ninth Circuit must be from a final judgment of the district court.  28 U.S.C. §1291.  The district court is not divested of jurisdiction to take action if a party files a premature appeal.  FirsTier Mortgage Co. v. Investors Mortgage Ins. Co., 498 U.S. 269, 272-73 (1991).

Presuming ConnectU and the Founders have a right to appeal,[4] the issue becomes whether the appeals they have filed divest the Court of the power granted in their stipulation to issue an enforcement decision.

This ancillary civil action to enforce the Agreement is tantamount to an action in equity for specific performance.  Adams v. Johns-Manville Corp., 876 F.2d 702, 709 (9th Cir. 1989) (A

---

[4]  In its June 25, 2008 Order, the Court discussed its general equitable power to enforce an agreement to settle a case pending before it.  (Enforcement Order at 4.)  However, as a threshold matter, the Court emphasizes that none of the following discussion of jurisdiction should be construed as a finding by this Court that an appeal may be taken from its enforcement decision.  The enforcement power of the Court is derived from a stipulation of all the parties to a private mediation.  As a component of their private mediation, the parties stipulated that a United States District Court Judge is empowered to enforce their mediated settlement.  Thus, this case is distinguishable from one in which the parties to a federal lawsuit reach an out-of-court settlement, request the federal court to adopt the settlement as a judgment in the case, and the federal judge, who has retained jurisdiction to enforce the judgment, makes a post-judgment order.

Although the Agreement in this case affects a pending action, because in the Agreement the parties agreed to dismiss it, these current proceedings are independent of the underlying action.  Under the Agreement, no judgment will be entered in the underlying action (or actions) because they will be dismissed.  Thus, the appealability of the enforcement order must be judged based its nature as an independent, albeit ancillary proceeding.

013

Case 2:04-cv-09049-DOC-RNB   Document 10833   Filed 06/12/13   Page 14 of 56   Page ID
#:329757
Case 5:07-cv-01389-JW   Document 888   Filed 11/06/2008   Page 14 of 7

United States District Court

For the Northern District of California

1   "motion to enforce [a] settlement agreement essentially is an action to specifically enforce a

2   contract.").  In a specific performance action, the appealable judgment is the judgment which orders

3   performance of the acts agreed upon, leaving nothing further for the court to do.  An order of

4   specific performance is injunctive in nature.  It is appealable as a final judgment when it requires

5   conduct that is "specific in terms [and] describe[d] in reasonable detail, and not by reference to [any]

6   other document, the act or acts" to be performed.  Petrello v. White, 533 F.3d 110, 115-16 (2d Cir.

7   2008) (quoting Fed. R. Civ. P. 65(d)).

8         Judgments and orders where "money is directed to be paid into court, or property delivered

9   to a receiver," however, "are interlocutory only and [are] intended to preserve the subject matter in

10   dispute from waste or dilapidation, and to keep it within the control of the court until the rights of

11   the parties concerned can be adjudicated by a final decree."  Forgay v. Conrad, 47 U.S. 201, 204-05

12   (1848).  A district court's judgment can only be final when "it requires the immediate turnover of

13   property and subjects the party to irreparable harm if the party is forced to wait until the final

14   outcome of the litigation."  In re Hawaii Corp., 796 F.2d 1139, 1143 (9th Cir. 1986).

15         The Court finds that although the July 2 Judgment is prefatory to entry of a final

16   adjudication, it is interlocutory in nature.  The July 2 Judgment orders the parties to deposit the cash,

17   stock and other documents with a Special Master, subject to further order of the Court; it does not

18   identify specific acts the parties are to perform with respect to one another.  See Petrello, 533 F.3d at

19   115-116.  All of the Court's directives are made in reference to the underlying Agreement, which

20   prevents the July 2 Judgment from being considered a final adjudication.  See id.  Instead, the July 2

21   Judgment directs the parties to take a number of preparatory actions, which place the Special Master

22   as a temporary intermediary, pending further action of the Court.  None of the terms of the July 2

23   Judgment "require immediate turnover of property" to the parties, nor "subject [either] party to

24   irreparable harm."  In re Hawaii Corp., 796 F.2d at 1143.  Furthermore, the purpose of the October

25   28th hearing was to provide the parties with an opportunity to show cause why a final adjudicatory

26   action ordering specific performance should not be entered.

27

28                                                        4

Case 2:04-cv-00049-DOC-RNB   Document 10833   Filed 06/12/13   Page 15 of 56   Page ID
Case 5:07-cv-01389-JW   Document 588   Filed 11/03/2008   Page 15 of 7   Page ID
#:329758

1    Accordingly, the Court finds that the previously filed appeal to the Ninth Circuit from the

2    July 2 Judgment does not deprive it of jurisdiction to enter a final adjudication ordering

3    performance.[5]

4    **B.    Stay of Execution**

5    In the alternative, Defendants renew their motion for a stay of execution pending their

6    appeal.  (Defendants' Response at 14.)

7    As the Court stated on the record, a stay of execution pending appeal from a final judgment

8    ordering specific performance raises issues which are not present in a stay of execution on a money

9    judgment.  In cases involving a money judgment, an appellant may obtain a stay by posting a

10   supersedeas bond.  Fed. R. Civ. P. 62(d).  Of course, denial of a stay or failure to post a bond

11   empowers the judgment creditor to execute on the judgment, notwithstanding the appeal.  Id.

12   In a specific performance action, the prosecuting party seeks immediate performance of

13   some act due from the responding party.  If the responding party appeals the judgment and moves

14   the Court to stay performance pending appeal, before granting the stay, the Court must consider

15   whether the party in whose favor the judgment has been entered can be provided with security,

16   comparable to that provided by a supersedeas bond.  Federal Rule of Civil Procedure 62(c) provides

17   that while an appeal is pending from an injunction, the Court may "suspend, modify, restore, or

18   grant an injunction on terms for bond or other terms that secure the opposing party's rights."

19   Here, the consideration which ConnectU and the Founders seek to withhold pending the

20   appeal are corporate stock, freedom from expensive on-going litigation and peace of mind from a

21   broad mutual release.  Security for this consideration must be evaluated in light the rapidly changing

22   United States economy and a highly competitive market for Internet products and services.  The

23   Court finds that ConnectU and the Founders have not proposed any security which would protect

24   Facebook from devaluation of that consideration pending appeal.

25   _____

26   [5] Although a matter for the Ninth Circuit to decide, implicit in the Court's findings is that
     the current appeals by Defendants are imperfect.  However, the Court proceeds under the assumption
27   that upon issuance of a final adjudicatory decision, the pending appeals will be perfected and
     become effective.

28                                              5

United States District Court

For the Northern District of California

1       Accordingly, the Court DENIES Defendants' renewed motion for a stay of execution.

2 However, to afford Defendants a limited right to seek a stay from the Ninth Circuit, the judgment

3 will order transfer on **November 24, 2008**.

4 **C.**      **Lien on the Settlement Proceeds**

5       At the October 28, 2008 hearing Quinn Emanuel, appeared and requested that any disbursal

6 of the settlement proceeds by made jointly in the name of the Defendants and the law firm.  Since

7 Quinn Emanuel is not a party to this case and has otherwise not foreclosed on any lien, the Court

8 declines to grant its request.  Instead, the Court will order that the proceeds be delivered in trust to

9 Defendants' counsel.  However, nothing in this Order is intended to affect Quinn Emanuel's right to

10 assert its lien on the proceeds in the hands of Defendants or Defendants' counsel.

**III.  CONCLUSION**

12      For the reasons stated above and pursuant to the stipulation of the parties that this Court

13 enforce the Agreement, the Court will issue a final adjudicatory order.  The Court declines to take

14 any action with respect to the lien by Quinn Emanuel.

16 Dated:  November 3, 2008

JAMES WARE
United States District Judge

28     6

United States District Court

For the Northern District of California

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Bruce Eric Van Dalsem brucevandalsem@quinnemanuel.com
Chester Wren-Ming Day cday@orrick.com
D. Michael Underhill Munderhill@BSFLLP.com
David A. Barrett dbarrett@bsfllp.com
Evan A. Parke eparke@bsfllp.com
George C. Fisher georgecfisher@gmail.com
George C. Fisher georgecfisher@gmail.com
George Hopkins Guy hopguy@orrick.com
I. Neel Chatterjee nchatterjee@orrick.com
Jonathan M. Shaw jshaw@bsfllp.com
Kalama M. Lui-Kwan klui-kwan@fenwick.com
Mark A. Weissman mweissman@osheapartners.com
Mark Andrew Byrne markbyrne@byrnenixon.com
Monte M.F. Cooper mcooper@orrick.com
Rachel E. Matteo-Boehm rachel.matteo-boehm@hro.com
Randy Garteiser randygarteiser@quinnemanuel.com
Roger Rex Myers roger.myers@hro.com
Scott Richard Mosko scott.mosko@finnegan.com
Sean Alan Lincoln slincoln@Orrick.com
Sean F. O&#039;Shea soshea@osheapartners.com
Steven Christopher Holtzman sholtzman@bsfllp.com
Theresa Ann Sutton tsutton@orrick.com
Tyler Alexander Baker Tbaker@fenwick.com
Valerie Margo Wagner valerie.wagner@dechert.com
Warrington S. Parker wparker@orrick.com
Yvonne Penas Greer ygreer@orrick.com

**Dated:  November 3, 2008**                    **Richard W. Wieking, Clerk**

                                                **By:    /s/ JW Chambers**
                                                        **Elizabeth Garcia**
                                                        **Courtroom Deputy**

017

# Exhibit C

Case 2:04-cv-09049-DOC-RNB   Document 10883   Filed 06/12/13   Page 19 of 56   Page ID
#:329762
Case 5:07-cv-01389-JW   Document 665   Filed 11/12/2008   Page 1 of 3

1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                            SAN JOSE DIVISION

10   The Facebook, Inc., et al.,                NO. C 07-01389 JW

11                 Plaintiffs,              **AMENDED JUDGMENT ORDERING
                                            SPECIFIC PERFORMANCE OF**
        v.                                  **SETTLEMENT AGREEMENT AND**
12                                          **DECLARATORY JUDGMENT OF**
     ConnectU, Inc., et al.,                **RELEASE**
13
                 Defendants.
14   _____/

15         In this ancillary proceeding, having found the "Term Sheet & Settlement Agreement"

16   enforceable, pursuant to the stipulation of the parties to the "Term Sheet & Settlement Agreement"

17   that "the San Jose Federal Court shall have jurisdiction to enforce this agreement," and having found

18   good cause to vacate the judgment entered on November 3, 2008 and to enter this Amended

19   Judgment:

20         IT IS HEREBY ORDERED, ADJUDGED AND DECREED that

21         The Judgment entered on November 3, 2008 is vacated and this Judgment entered in its

22   place:

23         Judgment is entered in favor of the Facebook, Inc. and Mark Zuckerberg and against

24   ConnectU, Inc., Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra specifically enforcing

25   the "Term Sheet and Settlement Agreement."  The parties to the "Term Sheet & Settlement

26   Agreement," having previously made deposits with the Special Master, in specific enforcement of

27   the "Term Sheet & Settlement Agreement," on **December 15, 2008**, the Master shall:

28

*United States District Court*
For the Northern District of California

**019**

(1)     transfer to the Facebook, Inc. the shares of ConnectU, Inc. being held by the Master; and

(2)     transfer to Boies, Schiller & Flexner LLP, as counsel for ConnectU, Inc., Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra, in trust for its clients and any lawful claimant, (a) the cash or its equivalent in the form of a bank check or cashiers check and (b) the Facebook, Inc., common shares being held by the Master; and

(3)     file in the appropriate courts, the motions to dismiss being held by the Master.

The "Term Sheet & Settlement Agreement" provides: "All parties get mutual releases as broad as possible." The parties having stipulated that this Court shall have jurisdiction to enforce the "Term Sheet & Settlement Agreement," the Court declares that as of February 22, 2008, the date of the Settlement Agreement, the Facebook, Inc., Mark Zuckerberg, ConnectU, Inc., Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra, and each of them, jointly, severally and mutually released each other as broadly as possible from all claims.

Dated: November 21, 2008

_____
JAMES WARE
United States District Judge

020

United States District Court
For the Northern District of California

Case 2:04-cv-09049-DOC-RNB   Document 10883   Filed 06/12/13   Page 21 of 56   Page ID
#:329764
Case 5:07-cv-01389-JW   Document 685   Filed 11/21/2008   Page 3 of 3

**United States District Court**
For the Northern District of California

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Bruce Eric Van Dalsem brucevandalsem@quinnemanuel.com
Chester Wren-Ming Day cday@orrick.com
D. Michael Underhill Munderhill@BSFLLP.com
David A. Barrett dbarrett@bsfllp.com
Evan A. Parke eparke@bsfllp.com
George C. Fisher georgecfisher@gmail.com
George C. Fisher georgecfisher@gmail.com
George Hopkins Guy hopguy@orrick.com
I. Neel Chatterjee nchatterjee@orrick.com
Jonathan M. Shaw jshaw@bsfllp.com
Kalama M. Lui-Kwan klui-kwan@fenwick.com
Mark A. Weissman mweissman@osheapartners.com
Mark Andrew Byrne markbyrne@byrnenixon.com
Monte M.F. Cooper mcooper@orrick.com
Rachel E. Matteo-Boehm rachel.matteo-boehm@hro.com
Randy Garteiser randygarteiser@quinnemanuel.com
Roger Rex Myers roger.myers@hro.com
Scott Richard Mosko scott.mosko@finnegan.com
Sean Alan Lincoln slincoln@Orrick.com
Sean F. O&#039;Shea soshea@osheapartners.com
Steven Christopher Holtzman sholtzman@bsfllp.com
Theresa Ann Sutton tsutton@orrick.com
Tyler Alexander Baker Tbaker@fenwick.com
Valerie Margo Wagner valerie.wagner@dechert.com
Warrington S. Parker wparker@orrick.com
Yvonne Penas Greer ygreer@orrick.com

**Dated: November 21, 2008**                    **Richard W. Wieking, Clerk**

                                    **By:     /s/ JW Chambers                    **
                                        **Elizabeth Garcia**
                                        **Courtroom Deputy**

# Exhibit D

United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| The Facebook, Inc., et al., | NO. C 07-01389 JW |
|---|---|
| Plaintiffs, | **ORDER DENYING PLAINTIFFS' MOTION TO CORRECT; GRANTING PLAINTIFFS' MOTION FOR CLARIFICATION; AND VACATING THE NOVEMBER 3, 2008 JUDGMENT** |
| v. | |
| ConnectU, Inc., et al., | |
| Defendants. | |

_____/

Presently before the Court are Plaintiffs' (1) Motion for Administrative Relief to Correct the November 3, 2008 Order Directing Special Master to Deliver Property (hereafter, "Motion to Correct," Docket Item No. 657) and (2) Motion for Clarification of the November 3, 2008 Orders[1] (hereafter, "Motion for Clarification," Docket Item No. 659). Defendants have filed a timely response. (hereafter, "Response," Docket Item No. 661.) The Court considers each motion in turn.

**A.    <u>Motion to Correct</u>**

Plaintiffs move to correct what they contend is a factual error in the Court's November 3 Order. (Motion at 1.) In its November 3 Order, the Court stated: "On June 25, 2008, over objections by ConnectU and the Founders (collectively, "ConnectU"), the Court granted the motion

_____

[1] (Order Directing the Special Master to Deliver the Property Being Held in Trust to the Parties in Accordance with the Terms of their Settlement Agreement, hereafter, "November 3 Order," Docket Item No. 653; Judgment Ordering Specific Performance of Settlement Agreement and Declaratory Judgment of Release, hereafter, "Final Judgment," Docket Item No. 654.)

**United States District Court**
For the Northern District of California

1    to enforce the Agreement." (November 3 Order at 1.) Plaintiffs contend that the Founders[2] did not

2    originally object to the enforcement of the Settlement Agreement; it was not until July 29, 2008 that

3    the Founders filed a motion to intervene in the action. (Motion at 1.)

4            Although Plaintiffs are correct that the record does not reflect the Founders' "formal"

5    appearance until July 29, 2008, in its June 25, 2008 Order,[3] the Court noted the presence of the

6    Founders' counsel. (June 25 Order at n.9.) The Court also found that, based on the Settlement

7    Agreement, it has personal jurisdiction over the Founders. (June 25 Order at 5.) Further, in its

8    August 8, 2008 Order denying the Founders' motion to intervene, the Court found that like

9    ConnectU, Inc., the Founders are parties for the purposes of these ancillary proceedings to enforce

10   the Settlement Agreement.[4]

11           Thus, the Court finds that the language in its November 3 Order, i.e., "over the objections by

12   ConnectU and the Founders . . .," is consistent with its prior Orders recognizing the Founders'

13   presence and the Court's exercise of jurisdiction over them. Accordingly, the Court DENIES

14   Plaintiffs' motion to correct the November 3 Order.[5]

15   **B.    Motion for Clarification**

16           Plaintiffs move to clarify the provision of the Judgment that the shares of ConnectU ordered

17   to be transferred by the Master to the law firm of Orrick, Herrington & Sutcliffe, LLP, be made "in

18   trust for its clients and any lawful claimant." (Motion for Clarification at 2.)

19           Defendants contend that the Judgment is unambiguous and needs no clarification. (Response

20   at 2.) In fact, subsequent to entry of the Judgment, Defendants notified Plaintiffs that it interpreted

21   _____

22       [2] The Founders of ConnectU, Inc. are Cameron Winklevoss, Tyler Winklevoss, and Divya

23   Narendra.

24       [3] (Order Granting Plaintiffs' Confidential Motion to Enforce the Settlement Agreement,
     hereafter, "June 25 Order," Docket Item No. 461.)

25       [4] (Order Denying the ConnectU Founders' Motion to Intervene; Denying ConnectU's

26   Motion to Stay Execution of Judgment at 4, Docket Item No. 610.)

27       [5] The Court declines to comment on the effect of this language on the parties' pending
     appeals in the Ninth Circuit.

28                                                    2

**United States District Court**

For the Northern District of California

1  the "any lawful claimant" language as imposing an obligation on the Orrick law firm to hold the

2  ConnectU shares in trust for the benefit of the ConnectU parties pending resolution of their appeal

3  from the Judgment. (Motion for Clarification at 2; Response at 2.)

4      This Order clarifies the intent of the Court with respect to the language used in the Judgment.

5  The Judgment was entered pursuant to a finding by the Court of good cause to enforce the "Term

6  Sheet & Settlement Agreement." In the course of adjudicating Plaintiffs' motion to enforce the

7  Settlement Agreement, the Court became aware of a Notice of Attorneys' Lien filed by the law firm

8  Quinn Emanuel Urquhart Oliver & Hedges, LLP. (See Docket Item No. 337.) The Notice states

9  that the Quinn Emanuel law firm "has and claims a lien over the claims and causes of action of, and

10  any judgment, settlement or other recovery paid to, the ConnectU Parties or any of them, or their

11  successors or assigns . . . ." (Id. at 2.)

12      At the October 28, 2008 hearing, the Quinn Emanuel law firm appeared and requested the

13  Court to honor the lien the firm has asserted on the settlement proceeds by making any disbursal

14  jointly in the name of the Defendants and the law firm. (See Docket Item No. 644.) The Court

15  found that such a disbursal was not covered by the terms of the Settlement Agreement. Moreover,

16  the Quinn Emanuel law firm was not a party to the case, nor had it foreclosed on any lien. Thus, in

17  its November 3 Order, the Court declined to grant the request made by the Quinn Emanuel law firm.

18  (November 3 Order at 6.)

19      Although the Court denied Quinn Emanuel's motion to disburse the settlement proceeds

20  jointly in their names and that of the Defendants, the requirement that the distribution be held "in

21  trust" for "any lawful claimant" was intended to enforce the Settlement Agreement, but in doing so,

22  to permit the Quinn Emanuel law firm to perfect any lien and to assert any perfected lien against the

23  proceeds in the hands of the Boies, Schiller & Flexner LLP law firm.

24      To the extent the Court used parallel "in trust" for "any lawful claimant" language with

25  respect to the transfer of ConnectU stock to Facebook and Mark Zukerberg via their counsel's law

26  firm, it was a clerical error. No notice had been given to the Court of any party who claimed a joint

27  interest in the settlement proceeds. Moreover, Facebook and Mark Zuckerberg through their

28

3

Case 2:04-cv-00049-DOC-RNB   Document 10893   Filed 06/12/13   Page 26 of 56   Page ID
#:329769
Case 5:07-cv-01389-JW   Document 664   Filed 11/21/2008   Page 4 of 5

1 counsel, had requested both this Court and the Special Master to transfer ConnectU stock directly to

2 Facebook.

3       In sum, the Court clarifies that it did not intend to impose an obligation on the Orrick law

4 firm to hold the proceeds in trust for the benefit of Defendants.  The imposition of a trust would be

5 tantamount to a stay of execution, which the Court has previously denied.  By its Judgment, the

6 Court intended to order immediate enforcement of the Settlement Agreement.

7       Accordingly, the Court GRANTS Plaintiffs' motion for clarification.  The November 3, 2008

8 Judgment is VACATED.  Pursuant to Federal Rule of Civil Procedure 60(a), an amended Judgment

9 will be issued.  To provide the parties with an opportunity to seek relief from the Judgment, a new

10 date for execution will be stated in the Amended Judgment.

11

12 Dated: November 21, 2008

13                       JAMES WARE
United States District Judge

**United States District Court**
For the Northern District of California

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Bruce Eric Van Dalsem brucevandalsem@quinnemanuel.com
Chester Wren-Ming Day cday@orrick.com
D. Michael Underhill Munderhill@BSFLLP.com
David A. Barrett dbarrett@bsfllp.com
Evan A. Parke eparke@bsfllp.com
George C. Fisher georgecfisher@gmail.com
George C. Fisher georgecfisher@gmail.com
George Hopkins Guy hopguy@orrick.com
I. Neel Chatterjee nchatterjee@orrick.com
Jonathan M. Shaw jshaw@bsfllp.com
Kalama M. Lui-Kwan klui-kwan@fenwick.com
Mark A. Weissman mweissman@osheapartners.com
Mark Andrew Byrne markbyrne@byrnenixon.com
Monte M.F. Cooper mcooper@orrick.com
Rachel E. Matteo-Boehm rachel.matteo-boehm@hro.com
Randy Garteiser randygarteiser@quinnemanuel.com
Roger Rex Myers roger.myers@hro.com
Scott Richard Mosko scott.mosko@finnegan.com
Sean Alan Lincoln slincoln@Orrick.com
Sean F. O&#039;Shea soshea@osheapartners.com
Steven Christopher Holtzman sholtzman@bsfllp.com
Theresa Ann Sutton tsutton@orrick.com
Tyler Alexander Baker Tbaker@fenwick.com
Valerie Margo Wagner valerie.wagner@dechert.com
Warrington S. Parker wparker@orrick.com
Yvonne Penas Greer ygreer@orrick.com

**Dated: November 21, 2008**                    **Richard W. Wieking, Clerk**


                                               **By:    /s/ JW Chambers**
                                                       **Elizabeth Garcia**
                                                       **Courtroom Deputy**

# Exhibit E

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| The Facebook, Inc., et al., | NO. C 07-01389 JW |
| Plaintiffs, | **ORDER GRANTING TRUSTEE'S PROPOSED ORDER RE. SETTLEMENT DISTRIBUTIONS; DENYING AS MOOT MOTIONS TO DISBURSE SETTLEMENT PROCEEDS** |
| v. | |
| ConnectU, Inc., et al., | |
| Defendants. | |

Presently before the Court are: (1) Cameron Winklevoss, Tyler Winklevoss and Divya Narendra's Motion to Pay Lienholders and Complete Exchange of Consideration;[1] (2) Quinn Emanuel's Motion to Disburse Settlement Proceeds;[2] and (3) Finnegan Henderson's Motion to Disburse Settlement Proceeds.[3] The Court conducted a hearing on November 28, 2011. Counsel for all parties were present. At the hearing, the parties agreed that they would meet and confer with the Trustee of the settlement proceeds at issue in this case, and that the Trustee would prepare a Proposed Order authorizing the payment of those settlement proceeds to the moving parties. In

---

[1] (Notice of Motion and Motion of Cameron Winklevoss, Tyler Winklevoss and Divya Narendra to Pay Lienholders and Complete the Exchange of Consideration, hereafter, "Founders' Motion," Docket Item No. 778 (filed under seal).)

[2] (Quinn Emanuel's Motion for an Order Disbursing Settlement Proceeds from Escrow in Accordance with Judgment and Attorney's Lien, hereafter, "Quinn Emanuel Motion," Docket Item No. 774 (filed under seal).)

[3] (Motion for Disbursement of Settlement Proceeds to Finnegan Henderson for Attorneys Fees and Costs, hereafter, "Finnegan Henderson Motion," Docket Item No. 776 (filed under seal).)

United States District Court
For the Northern District of California

**United States District Court**

For the Northern District of California

1   accordance with the discussion at the November 28 hearing, on December 2, 2011 the Trustee filed a

2   Proposed Order.[4]

3   Upon review, the Court finds good cause to adopt the Trustee's Proposed Order Authorizing

4   the Trustee to Pay Lienholders and Completing the Exchange of Settlement Consideration which

5   will be filed as a separate Order.  In light of the parties' agreement and the Court's grant of the

6   Trustee's Proposed Order, the Court DENIES as moot the Founders', Quinn Emanuel's and

7   Finnegan Henderson's Motions.

8

9   Dated:  December 5, 2011

James Ware

10                                                JAMES WARE
                                                  United States District Chief Judge

---

27   [4] ([Proposed] Order Authorizing Trustee to Pay Lienholders and Completing the Exchange of Settlement Consideration, Docket Item No. 798 (filed under seal).)

28                                                2

**United States District Court**
For the Northern District of California

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

1

2  Alison Paige Buchanan apb@hogefenton.com
   Bruce Eric Van Dalsem brucevandalsem@quinnemanuel.com
3  Chester Wren-Ming Day cday@orrick.com
   D. Michael Underhill Munderhill@BSFLLP.com
4  David A. Barrett dbarrett@bsfllp.com
   Evan A. Parke eparke@bsfllp.com
5  George C. Fisher georgecfisher@gmail.com
   George C. Fisher georgecfisher@gmail.com
6  George Hopkins Guy hopguy@orrick.com
   Indra Neel Chatterjee nchatterjee@orrick.com
7  James Earl Towery jet@hogefenton.com
   Jerome B. Falk jfalk@howardrice.com
8  John Phillip Duchemin jduchemin@howardrice.com
   Jonathan M. Shaw jshaw@bsfllp.com
9  Kalama M. Lui-Kwan kml@severson.com
   Mark A. Weissman mweissman@osheapartners.com
10 Mark A. Weissman mweissman@osheapartners.com
   Mark Andrew Byrne markbyrne@byrnenixon.com
11 Mark Andrew Byrne markbyrne@byrnenixon.com
   Merri Anne Baldwin mbaldwin@chapop.com
12 Monte M.F. Cooper mcooper@orrick.com
   Rachel E. Matteo-Boehm rachel.matteo-boehm@hro.com
13 Randall Garteiser randy@sftrialattorneys.com
   Roger Rex Myers roger.myers@hro.com
14 Scott Richard Mosko scott.mosko@finnegan.com
   Sean Alan Lincoln slincoln@Orrick.com
15 Sean F. O'Shea soshea@osheapartners.com
   Sean M. SeLegue sselegue@howardrice.com
16 Steven Christopher Holtzman sholtzman@bsfllp.com
   Theresa Ann Sutton tsutton@orrick.com
17 Thomas B Mason tmason@zuckerman.com
   Tyler Alexander Baker Tbaker@fenwick.com
18 Tyler Roberts Meade tyler@meadeschrag.com
   Valerie Margo Wagner vwagner@gcalaw.com
19 Warrington S. Parker wparker@orrick.com
   Yvonne Penas Greer ygreer@orrick.com

20

21 Dated:  December 5, 2011                    Richard W. Wieking, Clerk

22

23                                             By:    /s/ JW Chambers
                                                     Susan Imbriani
24                                                   Courtroom Deputy

25

26

27

28

# Exhibit F

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Bruce E. Van Dalsem (Bar No. 124128)
  brucevandalsem@quinnemanuel.com
  Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

Attorneys for Third Party
Quinn Emanuel Urquhart & Sullivan LLP

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA -- SAN FRANCISCO DIVISION

| | |
|---|---|
| THE FACEBOOK, INC., et al., | Case No.: 5:07:-cv-01389 JW |
| Plaintiffs, | NOTICE OF SATISFACTION OF ATTORNEYS' LIEN |
| vs. | |
| CONNECTU, INC., et al., | |
| Defendants. | |

        Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), through counsel, hereby

provides notice that the attorney's lien that it held and possessed in this action and in related

proceedings in the United States District Court for the District of Massachusetts, namely, *ConnectU,*

*LLC, v. Facebook. Inc., et al.* 1:04-cv-11923-DPW (D. Mass.) and *ConnectU Inc., et al. v. Facebook*

*Inc., et al.*, 07-CV-10593 (DPW) (D.Mass.) (the "Massachusetts Cases"), with respect to the

settlement proceeds held in trust by Boies Schiller & Flexner, LLP pursuant to this Court's November

21, 2008 Amended Judgment, has been satisfied in full with the receipt of the payment set forth in this

Court's Order issued December 5, 2011.

//

//

//

Case 2:04-cv-09049-DOC-RNB  Document 10883  Filed 06/12/13  Page 34 of 56  Page ID
#:329777
Case 5:07-cv-01389-JV  Document 883  Filed 12/14/11  Page 2 of 2

Date: December 14, 2011

Respectfully submitted,

QUINN EMANUEL URQUHART &
   SULLIVAN, LLP


By   <u>/s/ Bruce E. Van Dalsem</u>
     Bruce E. Van Dalsem
     Adam B. Wolfson
     865 South Figueroa Street, 10th Floor
     Los Angeles, California  90017-2543

     Attorneys for Third Party Quinn Emanuel
     Urquhart & Sullivan, LLP

# Exhibit G

1    EDMOND M. CONNOR, State Bar No. 65515
     econnor@businesslit.com
2    MATTHEW J. FLETCHER, State Bar No. 204071
     DOUGLAS A. HEDENKAMP, State Bar No. 216487
3    CONNOR, FLETCHER & WILLIAMS LLP
     2211 Michelson Drive, Suite 1100
4    Irvine, California 92612
     Telephone: (949) 622-2600
5    Facsimile:  (949) 622-2626

6    Attorneys for Petitioners and Plaintiffs
     MGA Entertainment, Inc., et al.

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                    **COUNTY OF ORANGE**

10                **CENTRAL JUSTICE CENTER**

| | |
|---|---|
| 11   MGA ENTERTAINMENT, INC., ET AL., | CASE NO.: 30-2013-00628354-CU-PA-CJC |
| 12            Petitioners and Plaintiffs, | ASSIGNED FOR ALL PURPOSES TO: HON. WILLIAM M. MONROE |
| 13          v. | Dept. C16 |
| 14   ORRICK, HERRINGTON & SUTCLIFFE LLP, | **RENEWED NOTICE OF HEARING ON AND MEMORANDUM OF POINTS AND** |
| 15         Respondent and Defendant. | **AUTHORITIES IN SUPPORT OF PETITION TO VACATE PARTIAL** |
| 16 | **FINAL ARBITRATION AWARD** |
| 17   AND RELATED CROSS-ACTION | **[DECLARATIONS OF DOUGLAS A. HEDENKAMP AND MICHAEL SAPIRA** |
| 18 | **FILED HEREWITH]** |
| 19 | Date:        April 16, 2013 |
| 20 | Time:       2:00 p.m. Dept:       C16 |
| 21 | **Action Filed:** February 4, 2013 |
| 22 | **Trial Date:**   No Trial Date Set |

23

24

25

26

27

28

**TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, as previously scheduled, on April 16, 2013, at 2:00 p.m., or as soon thereafter as this matter may be heard in Department C16 of the Orange County Superior Court, Central Justice Center, located at 700 Civic Center Drive West, Santa Ana, California, Petitioners and Plaintiffs MGA Entertainment, Inc., MGA Entertainment HK, Ltd., MGAE de Mexico S.R.L. de C.V., and Isaac Larian (collectively, "MGA") will and hereby do petition this Court to vacate the Partial Final Award (the "Partial Award") issued by the panel of arbitrators (the "Panel") on January 25, 2013, in that certain arbitration between MGA and Orrick that is currently pending before JAMS, Case Number 1200045343 (the "Arbitration").  The petition will be based upon this Notice, the "Petition to Vacate Partial Final Arbitration Award" (the "Petition") filed by MGA in the above-captioned action (the "Action") against respondent Orrick, Herrington & Sutcliffe LLP ("Orrick"), the pleadings and records on file in the Action, the Memorandum of Points and Authorities attached hereto, the Declarations of Douglas A. Hedenkamp and Michael Sapira filed concurrently herewith, and upon such additional briefing, argument, and evidence, both written and oral, as may be presented at or before the time of the hearing.

DATED:  March 20, 2013

CONNOR, FLETCHER & WILLIAMS LLP

By: _____

Edmond M. Connor
Attorneys for Petitioners

## MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................1

II.   SUMMARY OF FACTS.........................................................................6

III.  ARGUMENT .......................................................................................8

    A.   Standard Of Decision.......................................................................8

    B.   Arbitrators Do Not Have Authority To Grant An Attachment, And The Lien Is Functionally Equivalent To An Attachment. ......................................9

       1.   The Partial Award Grants The Equivalent Of An Attachment Lien.........................................9

       2.   Arbitrators Have No Power To Grant An Attachment. ...........................................10

       3.   Under C.C.P. § 1281.8, Parties To An Arbitration Must File A Special Action In Court To Obtain An Attachment....................................11

       4.   This Case Demonstrates Why Arbitrators May Not Order An Attachment. ...........................11

          a.   The District Court Noted That Orrick's Lien Interferes With The Court's Jurisdiction..........................................11

          b.   Third Parties Have Asserted Conflicting Interests In The Proceeds Of The Mattel Action..........................................12

          c.   The Partial Award Has Compelled Mattel To Act As An Involuntary Trustee.................12

    C.   The Partial Award Violates Public Policy And MGA's Statutory Rights And Protections..........................................13

       1.   The Partial Award Violates The Public Policy Embodied In The Attachment Law. ..........................................13

       2.   Public Policy Embodied In Business & Professions Code § 6147 And Rule 3-300 Of The Rules Of Professional Conduct. ..........................................14

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362.........................................8

*Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21 ................................................. passim

Business & Professions Code § 6147 ......................................................... passim

*CIT Group/Equipment Financing, Inc. v. Super DVD, Inc.* (2004) 115 Cal.App.4th 537 ......................13

*Comm. & Farmers Nat. Bk. v. Hetrick* (1976) 64 Cal.App.3d 158 ....................................9, 11

*Fergus v. Songer* (2007) 150 Cal.App.4th 552 ......................................... 6, 13, 15

*Fletcher v. Davis* (2004) 33 Cal.4th 61............................................... 6, 14, 15

*Grupo Mexicano De Desarrollo v. Alliance Bond Fund* (1999) 527 U.S. 308 .........................5, 14

*Jordan v. Department of Motor Vehicles* (1999) 75 Cal.App.4th 449 ......................................2

*Jordan-Lyon Productions, LTD. v. Cineplex Odeon Corp.* (1994) 29 Cal.App.4th 1459......................10

*Kokka & Backus, PC v. Bloch* (N.D. Cal. 2010) 2010 U.S. Dist. LEXIS 48642 .........................6, 14, 15

*Law Offices of Stanley J. Bell v. Shine, Browne & Diamond* (1995) 36 Cal.App.4th 1011 ..............14, 15

*Luster v. Collins* (1993) 15 Cal.App.4th 1338...........................................................1

*Marsch v. Williams* (1994) 23 Cal.App.4th 238 ........................................... passim

*Outdoor Services, Inc. v. Pabagold* (1986) 185 Cal.App.3d 676 .................................. passim

*Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665 ................................9

*Unimart v. Superior Court of Los Angeles County* (1969) 1 Cal.App.3d 1039............................4, 10, 12

**<u>Statutes</u>**

Business & Professions Code § 7013 ..........................................................9

Code of Civil Procedure § 1281.8................................................. 1, 3, 11, 12

Code of Civil Procedure § 1286.2................................................. 2, 3, 8, 13

Code of Civil Procedure § 481.140.................................................... 4, 11

Code of Civil Procedure § 483.010................................................. 5, 10, 13, 14

Code of Civil Procedure § 484.100......................................................9

Code of Civil Procedure § 488.010.................................................... 4, 11

Code of Civil Procedure § 488.140.................................................... 4, 11

Code of Civil Procedure § 491.410................................................. 4, 9, 10, 12

Code of Civil Procedure § 720.210................................................. 4, 10, 12

Code of Civil Procedure § 720.290................................................. 4, 10, 12

1

**<u>Rules</u>**

2

California Rules of Professional Conduct, Rule 3-300......................................................... 6, 14, 15

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Memorandum of Points and Authorities in Support of Petition to Vacate Partial Final Arbitration Award

# I.   PRELIMINARY STATEMENT

To paraphrase William Shakespeare, a rose by any other name is still a rose.  The Irish have a more direct way of saying the same thing:  put silk on a goat and it is still a goat.

The compelling truths underlying these proverbs apply with equal force in this case because, no matter how it is dressed up, and no matter what it is called, the $23 million prejudgment lien that Orrick obtained in the arbitration proceedings below (the "Arbitration") is, in every respect, the type of prejudgment attachment lien that arbitrators have no power to grant.

Under California law, prejudgment attachment liens cannot be issued by arbitrators.  (*See* Code of Civ. Proc. (hereinafter, "C.C.P.") § 1281.8; *Outdoor Services, Inc. v. Pabagold* (1986) 185 Cal.App.3d 676, 685.)  Nevertheless, Orrick succeeded in persuading the three arbitrators below (collectively, the "Panel") that they possessed "broad equitable powers" that were essentially limitless.

Accordingly, before MGA had taken a single deposition, and before an evidentiary hearing had been held on the merits, the Panel granted a "Partial Final Award" (the "Partial Award") in the form of an equitable lien designed to "tie up" $23 million of the proceeds from the federal court judgment that MGA had obtained in its long-running litigation battle with Mattel, Inc. (the "Mattel Action").

At Orrick's urging, the Panel hurriedly issued the Partial Award despite the fact that there is absolutely no precedent in the annals of California jurisprudence for granting a prejudgment equitable lien based on an unliquidated, quantum meruit claim for money damages.  This fact, along with the fact that California law does not allow arbitrators to grant prejudgment attachment liens *at all* would, by itself, constitute grounds for vacating an arbitration award, because such a lien in a quantum meruit case would constitute a remedy not authorized by law.  (*See, e.g., Marsch v. Williams* (1994) 23 Cal.App.4th 238, 248 (arbitrator had no authority to appoint receiver); *Luster v. Collins* (1993) 15 Cal.App.4th 1338, 1350 (no authority to impose economic sanctions to enforce award).)

However, aside from finding no basis in California law, the prejudgment lien granted in favor of Orrick suffered from two additional legal defects, both of which would justify—indeed, mandate—the granting of MGA's petition to vacate the Partial Award:  (1) the issuance of the lien, without compliance with the California attachment statutes (C.C.P. §§ 481.010 *et seq*: hereinafter the "Attachment Law"), violated the statutory rights and protections that the Attachment Law affords to debtors (such as MGA)

and third parties who will potentially be affected by the lien (such as Mattel and MGA's insurers); and (2) the granting of the prejudgment lien to Orrick without MGA's consent violated critically-important public policies underlying the rules and statutes specifying the duties that attorneys owe to their clients, particularly when attorneys seek to acquire interests (such as contingency fees and attorney liens) that are adverse to their clients' interests.

As succinctly stated by the Court of Appeal in the recent case of *Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 37, ". . .'courts may, indeed ***must***, vacate an arbitrator's award when it violates a party's statutory rights or otherwise violates a well-defined public policy.'" (Emphasis added.)  In this regard, section 1286.2 of Code of Civil Procedure provides that a court ***shall*** vacate an arbitration award if it determines that "[t]he arbitrators exceeded their powers."   As explained in *Ahdout*, "an arbitrator exceeds its powers within the meaning of Code of Civil Procedure section 1286.2 by issuing an award that violates a party's statutory rights or 'an explicit legislative expression of public policy.'" (*Ibid.*)

The California courts have also long recognized that arbitrators do *not* have the power to issue all of the remedies that are available to trial judges.  (*Marsch, supra,* 23 Cal.App.4th at 245.)  Indeed, the appellate courts have drawn bright lines in underscoring the fact that arbitrators may *not* issue certain provisional remedies, such as receiverships or prejudgment attachments.  (*Id.* at 248 (arbitrators may not order receiverships); *Outdoor Services, Inc.*, *supra,* 185 Cal.App.3d at 685 ("Attachment is relief unavailable through arbitration").)  Obviously, arbitrators may not circumvent these restrictions by simply using different names to refer to the same thing, such as appointing a person to act as a receiver, but referring to him or her as a "keeper" or by issuing a prejudgment attachment lien, but describing it merely as "interim relief," the term used to describe the equitable lien granted in the Partial Award. (*Cf. Jordan v. Department of Motor Vehicles* (1999) 75 Cal.App.4th 449, 465 (legislature cannot circumvent constitutional funding restrictions simply by "renaming a tax").)

Ironically, in issuing the Partial Award, the Panel expressly conceded that "arbitrators lack the power to grant attachments," citing *Outdoor Services*. (Declaration of Douglas A. Hedenkamp (the "Hedenkamp Dec."), Exh. 14 at p. 11).   Such an unqualified admission is instant grounds for vacating the Partial Award.  Indeed, after making this concession, the Panel claimed that, although it lacked power to grant attachments, it nevertheless had such "broad equitable powers" that it was allowed to

grant Orrick a lien that is the functional equivalent of a prejudgment attachment lien under section 491.410 of the Attachment Law, which allows plaintiffs to attach judgment proceeds in another action. In advancing this argument, the Panel claimed that "arbitrators do not follow the Code of Civil Procedure, but rather arbitral procedures" and that the "power to issue the [lien] granted herein emanates from the arbitration agreement, the [JAMS] Rules, and the authority described in *Advanced Micro*, not the attachment statute."[1]  (*Id.*, Exh. 14 at p. 11.)

Such an expansive theory, if taken to its logical end, would completely eviscerate the notion that an arbitration award could ever be vacated under C.C.P. section 1286.2 on the grounds that the arbitrators had exceeded their authority.  Indeed, arbitrators could simply define their "equitable powers" to be so extensive as to encompass the authority to grant any form of relief—without regard to whether that remedy violated California law.  This would run counter to the numerous cases cited herein, holding that an arbitration award may be vacated if it violates statutory rights or public policies.

Moreover, as the Court of Appeal made clear in the case of *Marsch, supra*, 23 Cal.App.4th at 248, parties to an arbitration may not agree to provide an arbitrator with unlimited power to issue any remedy whatsoever.  Instead, for important public policy reasons, the legislature and the courts are in agreement that certain provisional remedies, such as receiverships and attachment, lie exclusively within the province of the trial court.  (*Ibid.*; *Outdoor Services, supra,* 185 Cal.App.3d at 685; C.C.P. § 1281.8.) To this end, the legislature has provided a procedure under section 1281.8 to allow parties to seek such remedies in court while an arbitration is pending.  The events that have taken place in this very case demonstrate why attachment is a remedy uniquely suited to courts, and why arbitrators are not allowed to unilaterally **exempt** themselves or the arbitrating parties from procedures and requirements of the Attachment Law, which have been in place for many decades, and were designed to protect the due process rights of debtors and interested third parties.

Indeed, Orrick has already sought to use the lien granted by the Partial Award to interfere with the jurisdiction of the United States District Court for the Central District of California (the "District

---

[1] The statement that the Panel was not required to follow the Code of Civil Procedure in conducting this Arbitration is at odds with the parties' "Amendment to Binding Arbitration Agreement." (Hedenkamp Dec., Exh. 3 at p. 1.)  That Amendment specifically refers to sections of the California Arbitration Act that the parties agreed to modify for purposes of the Arbitration.  This is irrefutable evidence that the parties intended that the California Arbitration Act would otherwise apply.

Court"), and has made an implicit threat to sue Mattel for tortious interference with the lien. (Hedenkamp Dec., Exh. 15 at 10:23-25, 42:5-24, 70:21-71:5.)  The Panel, however, has no jurisdiction to require the District Court to hold or distribute funds in a particular manner.  The Panel also lacks jurisdiction to create a cause of action against Mattel in Orrick's favor, because Mattel never agreed to arbitration.  (*Unimart v. Superior Court of Los Angeles County* (1969) 1 Cal.App.3d 1039, 1045 ("an arbitrator has no power to determine the rights and obligations of one who is not a party to the arbitration agreement or arbitration proceedings").)  Such jurisdictional issues would not arise in connection with a court-ordered attachment because the Attachment Law provides explicit safeguards to allow third parties to seek redress in connection with attachment liens that are to be filed in other pending actions.  (C.C.P. §§ 491.410-491.470, 720.210-720.290).

In addition to the impacts on Mattel, MGA's insurers have claimed that they have subrogation rights and security interests that will be adversely affected by the prejudgment lien granted to Orrick. (Hedenkamp Dec. at Exh. 15 at 12:22-23, 14:12-22, 35:7-13, 35:24-36:8, 40:3-7.)  The Attachment Law contains provisions allowing third parties, such as the insurers, to intervene to assert their alleged rights where an attachment lien has been granted in court—an arbitration affords no such protection because, of course, third parties have no right to intervene in a private arbitration.

Similarly, Orrick concedes that the Partial Award only prevents Mattel from distributing the proceeds of the judgment in the Mattel Action to MGA, and does *not* allow Mattel to distribute any of the proceeds to Orrick.  (Memorandum In Support of Petition to Confirm Partial Final Arbitration Award (the "Memo Re Petition to Confirm"), filed by Orrick on 2/19/2013, at 19:23-25.)  As such, the Partial Award essentially forces Mattel to serve as an involuntary trustee or levying officer, holding funds for Orrick's benefit.  Mattel clearly is unwilling to accept this burden, as evidenced by its attempt to interplead the funds in the District Court.  Once again, the Panel has no jurisdiction to require Mattel to hold judgment proceeds on Orrick's behalf.  Under *Marsch*, the Panel also lacks jurisdiction to appoint a receiver to hold the assets.  This is precisely why attachment may only be issued by a court with jurisdiction to appoint a receiver or levying officer.  (*See* C.C.P. §§ 481.140, 488.010-488.140.)

Of course, not only does the Partial Award vitiate important third party rights provided under the Attachment Law, the equitable lien granted in favor of Orrick also violates MGA's rights under the

Attachment Law to be free from any prejudgment attachment of its assets based on claims that are <u>not</u> for a "fixed or readily-ascertainable amount." (C.C.P. § 483.010(a).) By definition, Orrick's quantum meruit claim for "reasonable" fees and costs is unliquidated. As such, under the Attachment Law, before issuing the Partial Award, the Panel would have been required to find that the amount to be secured by the lien was "readily ascertainable." No such finding was made and that seriously prejudiced MGA by depriving it of the protection afforded under the Attachment Law. By granting a prejudgment attachment for an unliquidated claim in violation of C.C.P. section 483.010, the Partial Award violated important public policies underlying the Attachment Law, which is another ground for vacating an arbitration award. (*Ahdout*, *supra*, 213 Cal.App.4th at 36-39.)

In fact, the United States Supreme Court has thoroughly rejected the notion that trial courts have any authority to use their equitable powers to fashion prejudgment remedies to prevent a debtor from disposing of its assets pending adjudication of the creditor's contract claims for money damages:

> "'A rule of procedure which allowed any prowling creditor, before his claim was definitely established by judgment, and without reference to the character of his demand, to file a bill to discover assets, or to impeach transfers, or interfere with the business affairs of the alleged debtor, would manifestly be susceptible of the grossest abuse. A more powerful weapon of oppression could not be placed at the disposal of unscrupulous litigants.'" (*Grupo Mexicano De Desarrollo v. Alliance Bond Fund* (1999) 527 U.S. 308, 330 (*quoting with approval* Wait, Fraudulent Conveyances, § 73, at 110-111).)

In *Grupo Mexicano*, the United States Supreme Court also noted that, if courts were allowed to freely exercise their "equitable powers" by granting provisional remedies to restrain the debtor's assets before the creditor obtained a judgment, the due process requirements and safeguards of state prejudgment attachment statutes would be rendered a nullity. (*Id.* at 330-331). In strongly condemning the practice of granting such "equitable" remedies to deprive a debtor of his resources before trial, the Supreme Court noted that such remedies were subject to the "grossest" abuse, and stated that "we have no authority to craft a 'nuclear weapon' of the law like the one advocated here." (*Id.* at 330-333.)

Section 483.010 of the Attachment Law addresses the Supreme Court's public policy concerns expressed in *Grupo Mexicano* by disallowing prejudgment liens for claims whose amounts are not "readily ascertainable." If a creditor's claim for money is not "readily ascertainable," then the debtor gets his day in court to defend against the claim and no prejudgment relief is issued to tie up the debtor's assets. In the proceeding below, Orrick's Motion for Provisional Relief itself illustrated that the amount

of Orrick's claim was anything but "readily ascertainable."  Orrick said it was seeking "in excess of "$35 million" from MGA, but admitted that this sum contained a "conservative estimate" of an additional $7.5 million in fees and costs that Orrick had <u>never</u> previously billed to MGA.  (Hedenkamp Dec., Exh. 6 at pp. 2-3.)  Moreover, Orrick requested an attachment in three different amounts: $35.7 million, or $23 million, or $19 million, depending on which number the Panel decided to select.  (*Id.*, Exh. 6 at p. 11, and fn 7.)  Such an amorphous, uncertain, and subjective claim would never qualify for a prejudgment lien under the Attachment Law, and MGA did <u>not</u> agree to surrender its statutory protections under the Attachment Law simply by agreeing to arbitrate its fee dispute with Orrick.

The Partial Award also violates the public policies behind Bus. & Prof. Code section 6147, and California Rules of Professional Conduct, Rule 3-300, by granting a lien where the requirements of those provisions were not satisfied.  Specifically, the Partial Award effectively restored contractual lien rights that Orrick lost when its engagement agreement was declared void under section 6147.  Under *Fergus v. Songer* (2007) 150 Cal.App.4th 552, 573 the deterrent and protective purposes of section 6147 may not be circumvented by using an alternate theory to grant the same relief that would have been provided under a void contract.   Moreover, the Partial Award granted a lien for attorney's fees without MGA's consent, despite the fact that rule 3-300 requires the <u>express consent</u> of the client.  (*Fletcher v. Davis* (2004) 33 Cal.4th 61, 71-72 (Rule 3-300 requires attorneys to "secure the client's written consent" to a lien on the proceeds of a judgment in the client's favor); *see also Kokka & Backus, PC v. Bloch* (N.D. Cal. 2010) 2010 U.S. Dist. LEXIS 48642, *4, fn 1 (attorney "should not be permitted to evade the requirements necessary to create an attorney's lien simply by claiming 'unjust enrichment'").)

By granting a lien where section 6147 and Rule 3-300 are not satisfied, the Partial Award violates fundamental public policies intended for the protection of the public against potentially abusive attorney conduct.  Because the Partial Award both grants a remedy forbidden to arbitrators and violates fundamental public policy, the award exceeds the Panel's powers, and must be vacated.

## II.   SUMMARY OF FACTS

Jennifer Keller, Esq., who served as lead trial counsel, and a team of lawyers from Orrick represented MGA in its litigation with Mattel, Inc.: *Carter Bryant v. Mattel, Inc.,* Case No. CV 04-9049, and related consolidated cases (collectively, the "Mattel Action").  On August 4, 2011, the District Court

in the Mattel Action entered a judgment in favor of MGA (the "Mattel Judgment"), awarding MGA

$170 million in damages and approximately $137 million in attorney's fees and costs.  For the past

nineteen and a half months, that Judgment has been on appeal.  The Ninth Circuit recently reversed the

damages awarded to MGA, and affirmed the $137 million fee award.

Orrick's representation of MGA in the Mattel Action was governed by a fee agreement entered

into on July 2, 2009 (the "Engagement Agreement").  (*Id.* at ¶ 5, and Exh. 2.)  The Engagement

Agreement contained both a contingency fee component, and an hourly fee component.  (*Id.*)  Orrick

failed to satisfy the statutory requirements that apply to such an agreement under Business &

Professions Code section 6147.  (*Id.*, and Exh. 5 at p. 6.)  As a result, on September 17, 2012, the Panel

issued summary disposition confirming that the entire Engagement Agreement is void under section

6147.   (*Id.* at ¶ 7, and Exh. 5.)  Under section 6147, subd. (b), Orrick is now limited to recovering a

"reasonable fee" in quantum meruit.  (*Id.* at ¶ 8.)  Orrick admits that it has already been paid roughly

$36 million for the services it rendered in the Mattel Action, but is now seeking "in excess of $35

million" in additional fees and costs for those same services.  (*Id.*, and Exh. 6 at Motion, pp. 1-3.)

The parties' arbitration agreement (the "Arbitration Agreement") is set forth in Appendix F of

the Engagement Agreement.  (*Id.*, Exh. 2 at pp. 20-21.)  The Arbitration Agreement states that it will

survive termination of the Engagement Agreement.  (*Id.*, and Exh. 14 at p. 3.)  Accordingly, the Panel

determined that the Arbitration Agreement survived when the rest of the Engagement Agreement was

declared to be void.  (*Id.*, Exh. 14 at pp. 3-4.)

The Arbitration Agreement was amended on September 16, 2011 in order to specify that the

Arbitration would take place at JAMS, rather than the American Arbitration Association ("AAA"), and

to specify the manner of selecting the Panel.  (*Id.* at ¶ 4, and Exh. 3.)  A stipulation was also entered on

December 13, 2011, for the sole purpose of agreeing that MGA's participation in the Arbitration would

not be deemed a waiver of its claim that the Engagement Agreement is void under Business &

Professions Code section 6147.  (Hedenkamp Dec. at ¶ 6, and Exh. 4 at p. 2.)

Orrick's Engagement Agreement contained a provision granting a lien in any judgment obtained

by MGA against Mattel to secure the contingent portion of its fee.  (*Id.* at ¶ 9.)  That provision was

nullified when the Panel declared that the Engagement Agreement is void.  (*Id.*, and Exh. 5.)

When Orrick realized that its secured contractual claim against the Mattel Judgment had been suddenly transformed into an unsecured quantum meruit claim, it filed a motion for provisional relief in the Arbitration, requesting a writ of attachment, a judgment lien, or an escrow account to secure its claim.  (*Id.* at ¶ 10, and Exh. 6.)  The Panel granted the motion in the Partial Award that is the subject of this Petition.  (*Id.* at  ¶ 9, and Exh. 14.)

### III.   ARGUMENT

**A.    Standard Of Decision.**

The parties appear to agree that the Arbitration is governed by the California Arbitration Act (the "CAA").  The original Arbitration Agreement called for the application of California law, and the Amendment to that agreement also cited specific provisions of the CAA that apply to the Arbitration.  (*See* Hedenkamp Dec., Exh. 2 at p. 20, Exh. 3 at pp. 1-2.)  Moreover, in the Memorandum in support of Orrick's Petition to Confirm, Orrick states that C.C.P. section 1286.2 sets forth the standards applicable to MGA's request to vacate the Partial Award.  (Memo Re Petition to Confirm at 12:1-23.)

Subdivision (a)(4) of section 1286.2 allows an award to be vacated where "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."[2]  Orrick has argued that a strict and deferential standard of review applies under subdivision (a)(4), citing *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 381.  That case, however, applies <u>only</u> where a party contends that a remedy exceeds the powers conferred upon the arbitrators by the parties' ***contract***: "[the arbitrators] have substantial discretion to determine the scope of their *contractual* authority to fashion remedies, and [] judicial review of their awards must be correspondingly narrow and deferential."  (*Id.* at 374-375.)  The reason for this rule is that the courts generally defer to the arbitrators' interpretation of the arbitration agreement itself.

However, subdivision (a)(4) also applies when the arbitrators have granted a remedy that

---

[2] Contrary to Orrick's claim, the Partial Award cannot be corrected by issuing a new attachment under C.C.P. § 1281.8.  As explained in section III(C)(1), Orrick's claim is not for a "readily ascertainable" sum, and thus Orrick does not qualify for a writ of attachment.  While Orrick claims that an attachment could be issued based on the findings of the Panel, section 1281.8 requires the Court to make its own independent determination.  Moreover, the Panel made no finding that Orrick satisfied the requirements for an attachment, or that Orrick's claim is for a "readily ascertainable" sum, but merely noted that the issue was in dispute.  (Hedenkamp Dec., Exh. 14 at p. 4.)  Accordingly, there is no basis to issue a new court-ordered attachment lien under section 1281.8.

8

California law reserves exclusively for courts.  (*See, e.g., Marsch*, 23 Cal.App.4th at 248.)  Under *Marsch*, arbitrators do not have the power to grant certain remedies, *even if the parties have agreed to that remedy in the arbitration agreement*.  (*Ibid.*)  When a party claims that the arbitrators have exercised a power prohibited by California law, the courts have not paid any particular deference to the arbitrators' findings, but have reversed for simple error of law.  (*See id.* at 245-248.)

Subdivision (a)(4) also applies where arbitrators issue an award that violates a party's statutory rights or a well-established public policy.  (*See, e.g., Ahdout*, 213 Cal. App. 4th at 37.)  Again, courts evaluating whether an award violates public policy have not employed a deferential standard of review, but have vacated awards for simple legal error.  (*Id.* at 40 (trial court should have employed *de novo* review to determine if award violated Bus. & Prof. Code § 7013); *see also Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 679 (vacating award where "clear legal error" resulted in a violation of public policy).)  Here, MGA challenges the Partial Award on the grounds that (a) it grants a remedy that California law does not allow arbitrators to grant, and (b) it violates statutory rights and California public policy.  Under *Marsch* and *Ahdout*, this Court should evaluate these issues *de novo*.

**B.      Arbitrators Do Not Have Authority To Grant An Attachment, And The Lien Is Functionally Equivalent To An Attachment.**

**1.      The Partial Award Grants The Equivalent Of An Attachment Lien.**

The Partial Award grants Orrick a lien over the proceeds of MGA's recovery in the Mattel Action in the amount of $23 million.  Orrick has now conceded that (a) the lien only gives Orrick the right to "hold up" such funds, by preventing them from being distributed to MGA, and (b) the lien does not give Orrick the right to immediate possession of the funds.  (Memo Re Petition to Confirm at 19:23-25.)  This is precisely the effect of a prejudgment attachment lien under C.C.P. section 491.410, which gives a party a lien on the proceeds of a judgment in a second action—withholding those funds from the defendant, but *not* transferring them to the plaintiff.  (*See* C.C.P. § 491.410; *Comm. & Farmers Nat. Bk. v. Hetrick* (1976) 64 Cal.App.3d 158 (attachment does not transfer property to the plaintiff).)

Moreover, the Partial Award in this case specifically states that it is limited solely to provisional relief, and shall not affect the hearing on the merits.  The same is also true with regard to a court's findings in connection with a motion for an attachment under section 484.100.  Accordingly, the Partial

9

Award has exactly the same effect as a prejudgment attachment lien.

### 2.      Arbitrators Have No Power To Grant An Attachment.

In the Partial Final Award, the Panel recognized that it does not have jurisdiction to grant an attachment: "California appellate authority holds that arbitrators lack the power to grant attachments. *Outdoor Services, Inc. v. Pabagold, Inc.* (1986) 185 Cal.App.3d 676, 684-685." (Hedenkamp Dec., Exh. 14 at p. 11.)  In *Outdoor Servs.*, the court held that a party does not waive the right to arbitrate by seeking an attachment in court, because attachment is a remedy that is unavailable in arbitration.  (*Ibid.*)

Similarly, in *Jordan-Lyon Productions, LTD. v. Cineplex Odeon Corp.* (1994) 29 Cal.App.4th 1459, 1466-71, the court held that a party in litigation could not obtain an attachment lien over the proceeds of an arbitration.  The court reasoned that attachment is "purely the creation of the Legislature," and nothing in the statutory scheme implicitly or explicitly provided for attachments in connection with arbitrations.  (*Id.* at 1466-1467.)  The court further noted that enforcement and third party intervention provisions expressly contemplate "actions," which the court construed to refer to court proceedings, and *not* arbitration.  (*Id.* at 1466.)  Accordingly, the court held that section 491.410, which allows an attachment lien to be granted over the proceeds of a "pending action or special proceeding," does not allow such a lien to be granted over the proceeds of an arbitration.  (*Id.* at 1471.)

The same considerations make it clear that a lien attaching the proceeds of an action pending in court may not be granted by an arbitrator.  Like C.C.P. section 491.410, section 483.010 restricts attachments to the context of an *action*: "an attachment may be issued **only** in an action on a claim or claims for money."  Because *Jordan-Lyon Productions* held that an arbitration is <u>not</u> an "action" for the purposes of the Attachment Law, an attachment may not be granted in an arbitration under *Jordan-Lyon Productions* or *Outdoor Services*.

Moreover, the Attachment Law has extensive provisions that allow an interested third party to intervene in order to challenge a lien in the court in which the lien was granted.  (C.C.P. §§ 720.210-720.290.)  These provisions simply cannot apply to arbitration, because third parties cannot be forced into arbitration when they are not subject to an arbitration agreement.  (*Unimart v. Superior Court of Los Angeles County* (1969) 1 Cal.App.3d 1039, 1045.)  Similarly, the Attachment Law has specific provisions that allow attached assets to be held by a "levying officer," typically a sheriff, marshal, or

10

special appointed receiver.  (*See* C.C.P. §§ 481.140, 488.010-488.140.)  Arbitrators have no power to order a sheriff or marshal to enforce an attachment, and also lack authority to appoint a receiver—even when authorized to do so by the parties' agreement.  (*Marsch v. Williams* (1994) 23 Cal.App.4th 238, 245.)  Because these enforcement and intervention provisions are unavailable in arbitration, the terms of the Attachment Law itself confirm the express holding in *Outdoor Services, Inc.*—arbitrators have no jurisdiction to grant an attachment.

### 3.   Under C.C.P. § 1281.8, Parties To An Arbitration Must File A Special Action In Court To Obtain An Attachment.

The California legislature has not withheld the attachment remedy from parties to arbitration altogether.  Instead, under C.C.P. section 1281.8, a party to arbitration may apply for an attachment in court, without waiving the right to have the merits of the dispute heard in arbitration.  While Orrick claims section 1281.8 is permissive, and does not require a party to apply to court for a writ of attachment, this argument misses the point.  The applicable case law states that arbitrators do not have authority to grant attachment.  Accordingly, 1281.8 is the <u>only</u> way a party to arbitration may obtain an attachment.  The fact that section 1281.8 does *not* give parties permission to obtain an attachment from an arbitrator only confirms what the case law already holds.

Indeed, in *Marsch*, the court held that, like attachment, receiverships are a remedy that may not be granted in arbitration—even when the parties consent.  The court noted that parties to arbitration could still seek appointment of a receiver in court under section 1281.8.  (*Marsch*, 23 Cal.App.4th at 246.)  As such, the court held that there was no need to recognize a non-statutory receiver appointed by an arbitrator.  (*Ibid.*)  The same is true here.  Subdivision (a)(1) of section 1281.8 expressly allows a party to arbitration to apply for an attachment in court.  Because Orrick could have sought an attachment lien in court, there is no reason to recognize a non-statutory attachment—especially since attachment is purely a creature of statute.  (*Commercial & Farmers Nat. Bk.*, 64 Cal.App.3d at 165.)

### 4.   This Case Demonstrates Why Arbitrators May Not Order An Attachment.

#### a.   The District Court Noted That Orrick's Lien Interferes With The Court's Jurisdiction.

The events that have transpired in this case provide ample justification for the rule that attachment (or an equivalent "equitable" lien) may not be granted in arbitration.  Indeed, when Mattel

11

and Orrick sought to have the proceeds of the Mattel Judgment interpled in the District Court, the Honorable David O. Carter warned Orrick that the Partial Award may constitute an interference with the jurisdiction of the District Court:

> "THE COURT: Just a moment.  The opposite is that *the arbitration panel is interfering with this Court*.  So tread lightly on that.  ***Tread very lightly on that about who has jurisdiction here.***"  (Hedenkamp Dec., Exh. 15 at 70:21-71:5, emphasis added.)

As this Court knows, Orrick then filed an application before this Court with the intent to further interfere with the District Court's jurisdiction, by frustrating the effect of Judge Carter's anticipated ruling.

Had Orrick proceeded under section 1281.8, this situation would never have arisen, even if Orrick had obtained an attachment.  Where an attachment lien is granted in court, C.C.P. section 491.410 provides a procedure whereby Orrick could file the lien in the Mattel Action.  This procedure would not have created any interference with Judge Carter's jurisdiction, as C.C.P. section 491.440(b) expressly provides that an attachment lien is subject to the orders of the court in which the lien is filed.

### b. Third Parties Have Asserted Conflicting Interests In The Proceeds Of The Mattel Action.

As noted above, the Attachment Law also provides mechanisms for third parties to intervene and challenge the validity of the attachment.  (*See* C.C.P. §§ 720.210-720.290.)  No such procedures are possible or appropriate in arbitration, since the third parties typically would not be subject to the arbitrators' jurisdiction.  (*Unimart v. Superior Court of Los Angeles County* (1969) 1 Cal.App.3d 1039, 1045.)  Here, the lack of a mechanism for objections to the Partial Award by interested third parties prejudices MGA's insurers, who have claimed that they have interests in the proceeds of the Mattel Action superior to Orrick's.  If the Partial Award is confirmed, it will become a judgment, and the insurers will have lost the right to challenge the merits of Orrick's lien.  The arbitration panel has no authority to impair the insurer's rights in this way, which is why arbitrators may not grant an attachment.

### c. The Partial Award Has Compelled Mattel To Act As An Involuntary Trustee.

The last reason that attachment may not be granted in arbitration is that arbitrators lack authority to appoint a receiver or levying officer to hold assets in trust during the pendency of the litigation.  Because arbitrators have no authority to appoint a receiver or levying officer, they cannot order an attachment lien without forcing a third party (here, Mattel) to hold funds for the claimant's benefit

12

pending the resolution of the Arbitration.  Because the Panel had no jurisdiction over Mattel, it had no authority to impose this burden, and the Partial Award exceeded the Panel's jurisdiction.

**C.     The Partial Award Violates Public Policy And MGA's Statutory Rights And Protections.**

Even if arbitrators were empowered to grant attachment liens, the lien in this particular case still exceeds the Panel's jurisdiction.    In *Ahdout v. Hekmatjah*, the court held that an award exceeds the arbitrators' jurisdiction within the meaning of C.C.P. § 1286.2 "by issuing an award that violates a party's statutory rights or "an explicit legislative expression of public policy."  ((2013) 213 Cal.App. 4th 21, 37.)  Accordingly, the court in *Ahdout* reversed an order denying a petition to vacate an award in favor of an allegedly unlicensed contractor, since that award violated the express statutory bar to compensation for unlicensed contractors.  (*Id.* at 39-40.)   Because the Partial Award in this case also violates express provisions enacted for the protection of the public, it should be vacated.

**1.     The Partial Award Violates The Public Policy Embodied In The Attachment Law.**

The lien granted in the Partial Award violates the requirement under California law that a provisional security interest may not be granted to secure a claim that is not for a "fixed or readily ascertainable amount."  (C.C.P. § 483.010.)  While courts have held that the mere fact that a claim is "unliquidated" does not necessarily mean that it is not "readily ascertainable," those same courts have held that to qualify for an attachment, the contract that forms the basis for the damages must <u>furnish a standard</u> by which the amount due can be easily calculated: "**the contract sued on must furnish a standard by which the amount due may be clearly ascertained**." (*CIT Group/Equipment Financing, Inc. v. Super DVD, Inc.* (2004) 115 Cal.App.4th 537, 540, emphasis added.)

Here, Orrick is limited to recovering a "reasonable fee," under Bus. & Prof. Code section 6147, because its Engagement Agreement is void under that section.  Accordingly, there is no contract that could furnish a standard by which the amount of damages could be easily calculated.  Indeed, courts have specifically held that it is error to consider the terms of the void agreement when fixing the amount of reasonable compensation under section 6147.  (*Fergus v. Songer* (2007) 150 Cal.App.4th 552, 573.) Because the contract in this case may *not* be used to furnish a standard by which the amount due can be "clearly ascertained," the Orrick's claim is not readily ascertainable, and is not eligible for attachment. Indeed, the fact that Orrick could not decide whether to ask for an attachment of $35, 23, or 19 million

demonstrates conclusively that its claim is not for a "readily ascertainable amount."  (Hedenkamp Dec., Exh. 6 at p. 11, fn 7.)

As such, the Partial Award both violates MGA's statutory immunity from attachment provided where the amount of a claim is not readily ascertainable, and also violates the vitally important public policy underlying that statutory right.  As explained in the preliminary statement, above, the U.S. Supreme Court emphasized the importance of this public policy in *Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308 (1999).

Moreover, in *Kokka & Backus, PC v. Bloch* (N.D. Cal. Feb. 4, 2010) 2010 U.S. Dist. LEXIS 48642, *2, the Northern District of California applied the Supreme Court's ruling in *Grupo Mexicano* to a case strikingly similar to this one.  (*Id.* at *1.)  Specifically, in *Kokka & Backus*, the court held that under California law, an attorney's lien may only be created by contract, and that under *Grupo Mexicano*, this requirement could not be circumvented by an application for a general "equitable" lien. (*Id.* at *2-4, and fn. 1.)  While *Kokka* and *Grupo Mexicano* did not involve arbitration, they emphasize the importance of the public policy embodied in section 483.010, and establish that this public policy may not be circumvented by general appeals to equity—much like the licensing requirement for contractors that was at issue in *Ahdout*.  Because the Partial Award violates this public policy, it exceeds the Panel's jurisdiction, and must be vacated.

### 2.    Public Policy Embodied In Business & Professions Code § 6147 And Rule 3-300 Of The Rules Of Professional Conduct.

The Partial Award also violates the public policies expressed in Business & Professions Code, section 6147, and California Rules of Professional Conduct, rule 3-300, because it (a) replaces the lien rights that Orrick lost as a result of its failure to comply with section 6147, and (b) grants a lien that requires the express informed consent of the client under rule 3-300.

Under California law, an attorney's lien can <u>only</u> be created by contract.  (*Law Offices of Stanley J. Bell v. Shine, Browne & Diamond* (1995) 36 Cal.App.4th 1011, 1019; *see also Fletcher v. Davis* (2004) 33 Cal.4th 61, 71-72 (Rule 3-300 requires attorneys to "secure the client's written consent" to a lien on the proceeds of a judgment in the client's favor).)  This is true because a lien is an adverse business interest that must be expressly consented to by the client, after full disclosure of the

consequences of the transaction.  (*Ibid.*; Cal. Rules of Prof. Conduct, rule 3-300.)  In the case of a contingency fee agreement, the contract containing the lien must also satisfy the requirements of section 6147, or the entire contract is voidable at the client's option.

When an engagement agreement is voided under Section 6147, courts have held that the attorney may not circumvent the statute's "deterrent and protective purposes" by seeking the same result that the contract would have provided.  (*See, e.g., Fergus v. Songer* (2007) 150 Cal.App.4th 552, 573.)  That is exactly what Orrick did by seeking a provisional lien that would replace the contractual lien rights that were lost when the Engagement Agreement was declared to be void.  Regardless of whether the relief is denominated a lien or an attachment, the intent and result are the same: securing Orrick's attorney's fees with assets belonging to its client.  Under *Law Offices of Stanley J. Bell*, such an interest can only be created with the express consent of the client.  (*See also Kokka & Backus PC*, 2010 U.S. Dist. LEXIS 48642, *4, fn 1.)  Because MGA has not consented to the creation of a new lien, the Partial Award violates MGA's rights under both section 6147 and rule 3-300, as well as the important public policies underlying those provisions.

The California Supreme Court has recognized the importance of the public policies underlying Rule 3-300, which exists "to protect the public and to promote respect and confidence in the legal profession."  (*Fletcher v. Davis* (2004) 33 Cal.4th 61, 71-72.)  The court in *Fergus* likewise recognized the salutary "deterrent and protective purposes" of section 6147.  (150 Cal.App.4th at 573.)  Accordingly, the Partial Award once again violates important statutory rights and public policies, and therefore exceeds the Panel's jurisdiction.

For all of the foregoing reasons, the Partial Award should be vacated.

DATED:  March 20, 2013

CONNOR, FLETCHER & WILLIAMS LLP


By: _____
     Edmond M. Connor
     Petitioners and Plaintiffs
     MGA Entertainment, Inc., et al.

# Exhibit H (Redacted)