1  MUSICK, PEELER & GARRETT LLP
   Susan J. Field (State Bar No. 086200)
2  One Wilshire Boulevard, Suite 2000
   Los Angeles, California 90017-3383
3  Telephone: (213) 629-7600
   Facsimile: (213) 624-1376
4  s.field@mpglaw.com

5  MUSICK, PEELER & GARRETT LLP
   Jennifer M. Kokes (State Bar No. 210261)
6  650 Town Center Drive, Suite 1200
   Costa Mesa, California 92626-1925
7  Telephone: (714) 668-2400
   Facsimile: (714) 668-2490
8  j.kokes@mpglaw.com

9  Attorneys for Crum & Forster Specialty Insurance Company

10              **UNITED STATES DISTRICT COURT**

11      **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

12

| | |
|---|---|
| 13  MATTEL, INC., et al. | Case No. CV -04-9049-DOC (RNBx) |
| 14          Plaintiffs, | Consolidated w/ Case Nos. CV 04-9059 and CV 05-2727 |
| 15      vs. | Hon. David O. Carter |
| 16  MGA ENTERTAINMENT, INC., et al. | **CRUM & FORSTER SPECIALTY INSURANCE COMPANY'S BRIEF PER COURT'S MAY 28, 2013 ORDER (DKT. 10878); DECLARATION OF ERIC TIBAK** |
| 17          Defendants. | |
| 18 | |
| 19 | |

20

21          Crum & Forster Specialty Insurance Company ("Crum & Forster")

22  respectfully submits the following brief in response to the Court's May 28, 2013

23  Order (Dkt. 10878).

24  I.     **INTRODUCTION**

25          On January 24, 2013, the Ninth Circuit affirmed the portion of this Court's

26  August 4, 2011 judgment against Mattel, Inc. ("Mattel") in the amount of

27  $137,807,318 (the "Fee Award") which represents a portion of the attorneys' fees

28  and defense costs incurred by MGA Entertainment, Inc. and Isaac Larian

1  (collectively "MGA") in the Mattel Action.  Crum & Forster, along with MGA's
2  other participating insurers (collectively the "Insurers"), have paid more towards
3  MGA's defense for fees and costs than the amount of the Fee Award.

4         The defense fees and costs paid by Crum & Forster were paid subject to a
5  reservation of rights, including the express right to seek reimbursement, and
6  pursuant to contractual and equitable rights of subrogation.  As a result, Crum &
7  Forster has asserted a claim to the proceeds of the Fee Award.  The other Insurers,
8  as well as MGA's former defense counsel (Orrick), have also asserted claims to
9  some portion or all of the Fee Award.[1]  MGA denies the validity of these claims.  In
10  light of this dispute, Mattel requested, among other relief, leave to file an
11  interpleader action pursuant to 28 U.S.C. § 1335.

12         For the reasons detailed in the prior briefing and during the oral argument
13  which took place on February 26, 2013, Mattel's request for leave to file its
14  proposed Interpleader Complaint should be granted.  Given Mattel's willingness to
15  interplead the Fee Award, coupled with this Court's ability to "resolve the entire
16  controversy as to the entitlement to the [Fee Award] without the need for [Mattel] to
17  be a party to the suit," interpleader is the logical solution to ensure a global and
18  equitable resolution of the dispute between MGA, the Insurers and Orrick to the Fee
19  Award. *See Pacific Loan Management Corp. v. Superior Court*, 196 Cal.App.3d
20  1485, 1489-1490 (1987).  Indeed, it is the only procedure whereby a stakeholder
21  (Mattel) holding money (the Fee Award) to which conflicting claims are being made
22  by others (MGA, the Insurers and Orrick), can join the adverse claimants and force
23  them to litigate their claims among themselves. *See e.g., Hancock Oil Co. of Calif.*
24  *v. Hopkins*, 24 Cal.2d 497, 508 (1944); *City of Morgan Hill v. Brown*, 71
25  Cal.App.4th 1114, 1122 (1999).

26
27  [1] As previously noted, the Insurers made payments of certain Orrick invoices to MGA which MGA has not paid to Orrick.
28

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

850043.1                                        2                        CV -04-9049-DOC (RNBx)
CRUM & FORSTER SPECIALTY INSURANCE COMPANY'S BRIEF PER COURT'S MAY 28, 2013 ORDER
(DKT. 10878): DECLARATION OF ERIC TIBAK

1    Without the presence of Crum & Forster and the other claimants in this

2  litigation based on interpleader, this Court lacks the authority to enter an injunction

3  prohibiting the Insurers from filing a separate lawsuit against Mattel for subrogation

4  or from Orrick claiming a violation of the lien.  *See e.g., SEC v. Wenke*, 622 F.2d

5  1363, 1368 (9th Cir. 1980) (noting that district court only may issue injunction

6  under Rule 65(d) that binds the parties to the action, their officers, agents, servants,

7  employees, and attorneys, and those persons in active concert or participation with

8  them); *Herman Miller, Inc. Retirement Income Plan v. Magallon*, 2008 WL

9  2620748, at *3 (E.D. Cal. 2008) (noting that 28 U.S.C. § 2361 only applies to

10  actions where requirements for statutory interpleader are met).   Absent interpleader,

11  there is also the likelihood of multiplicity of actions and the risk of inconsistent

12  results because Orrick has filed its lien in this case (Dkt. 10836) while the Insurers

13  are not parties to the Mattel Action and have filed separate actions in Case Nos. CV

14  12-00943 DOC and CV 12-05654 DOC. *See Cantu v. Resolution Trust Corp*, 4

15  Cal.App.4th 857, 874 (1992).  Finally, and significantly, interpleader allows Mattel

16  to deposit the Fee Award into the Court registry thereby ensuring that the Fee

17  Award is not dissipated by MGA before adjudication of the various claims to the

18  fund. *See e.g., City of Morgan Hill*, 71 Cal.App.4th at 1126-1127.

19    If, however, this Court is not inclined to grant interpleader, the imposition of

20  a constructive trust or similar equitable mechanism *may* be a viable alternative if

21  certain safeguards are employed as discussed below.

22  **II.    ANALYSIS**

23    **Question #1: Does the Court have the authority to create such a trust, setting aside all or part of $137,807,318 in order to preserve it until those parties seeking a portion of it have reduced their claims to a judgment?**

24

25    **Answer: The Court does have the authority to set aside the $137,807,318 and order that it be placed in a trust in order to preserve it until those parties seeking a portion of it have reduced their claims to a judgment but a "constructive trust" *may* not be the appropriate mechanism.**

26

27    "A constructive trust is an equitable remedy that compels the transfer of

28

MUSICK, PEELER & GARRETT LLP

ATTORNEYS AT LAW

850043.1                                             3                         CV -04-9049-DOC (RNBx)
CRUM & FORSTER SPECIALTY INSURANCE COMPANY'S BRIEF PER COURT'S MAY 28, 2013 ORDER
(DKT. 10878); DECLARATION OF ERIC TIBAK

1  wrongfully held property to its rightful owner." *Mattel, Inc. v. MGA Entm't, Inc.*,

2  616 F.3d 904, 909 (9th Cir. 2010) (citing *Communist Party of U.S. v. 522 Valencia,*

3  *Inc.*, 35 Cal.App.4th 980, 990 (1995)).  The Court may impose a constructive trust if

4  the following requirements are satisfied: "(1) the existence of a res (property or

5  some interest in property); (2) the right to that res; and (3) the wrongful acquisition

6  or detention of the res by another party who is not entitled to it." *Id.*

7  　　　The first requirement is clearly met by the existence of the Fee Award (the

8  "res").  The second requirement is also satisfied because Crum & Forster has a right

9  to a portion of the Fee Award.  The Fee Award represents attorneys' fees and costs

10 awarded to MGA as a successful copyright litigant. (Dkt. 10704)  MGA's defense

11 was largely funded by MGA's insurers, including Crum & Forster.  (See Declaration

12 of Eric Tibak attached hereto ["Tibak Decl."], ¶ 3)  As a result, Crum & Forster is

13 equitably entitled to recovery of those defense fees and costs it paid which are the

14 subject of the Fee Award; otherwise, MGA will receive a windfall and will be

15 unjustly enriched. Crum & Forster also has a contractual right to the Fee Award.

16 Section V of the Crum & Forster Policies entitled "Conditions" states in relevant

17 part:

18 　　　8.　　Transfer Of Rights Of Recovery Against Others To Us

19 　　　If the insured has rights to recover all or part of any payment we have
   　　　made under this Coverage Part, those rights are transferred to us. The
20 　　　insured must do nothing after loss to impair them.  At our request, the
   　　　insured will bring "suit" or transfer those rights to us and help us
21 　　　enforce them.

22 Thus, the first two requirements for imposing a constructive trust are clearly met.

23 　　　There is, however, no California state or federal case finding that the third

24 requirement is satisfied under circumstances similar to those presented here.  As the

25 Ninth Circuit has observed, California *Civil Code* §§ 2223 and 2224 "set forth the

26 principal constructive trust situations." *United States v. Pegg*, 782 F.2d 1498, 1500

27 (9th Cir. 1986).  Section 2223 provides: "One who wrongfully detains a thing is an

28 involuntary trustee thereof, for the benefit of the owner."  Section 2224 states:

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

850043.1                                    4                        CV -04-9049-DOC (RNBx)

CRUM & FORSTER SPECIALTY INSURANCE COMPANY'S BRIEF PER COURT'S MAY 28, 2013 ORDER
(DKT. 10878): DECLARATION OF ERIC TIBAK

> One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust or wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained for the benefit of the person who would otherwise have had it.

Although California courts interpreting these statutes have made clear that "[t]he wrongful act giving rise to a constructive trust need not amount to fraud or intentional misrepresentation," these cases suggest that the property must already be in the hands of the person being unjustly enriched. *Calistoga Civic Club v. City of Calistoga*, 143 Cal.App.3d 111, 116 (1983)("All that must be shown is that the acquisition [or detention] of the property was wrongful and that the keeping of the property by the defendant would constitute unjust enrichment."); *see also Kraus v. Willow Park Public Golf Course*, 73 Cal.App.3d 354, 373 (1977)("A constructive trust is a remedial device primarily created to prevent unjust enrichment; equity compels the restoration of property to which the holder thereof is not justly entitled"). In contrast, here, the party that will be unjustly enriched (MGA) does not have actual possession of the Fee Award and, thus, has not yet wrongfully acquired or detained anything.

Accordingly, imposing a constructive trust under the present circumstances would be an extension of the doctrine under California law. However, the Ninth Circuit has repeatedly stated that constructive trusts are "a form of remedy that is flexibly fashioned in equity to provide relief where a balancing of interests in the context of a particular case seems to call for it." *F.T.C. v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1141 (9th Cir. 2010) (citations omitted). This Court may find that this is such a case.

MGA has unequivocally expressed its intention to wrongfully detain the Fee Award. For example, during the hearing on MGA's attorneys' fees motion, MGA stated that: "It is absolutely MGA's position that the insurance companies will not be entitled to funds awarded on a fee motion." (Dkt. 10610 at 22:21-22:23) Most recently, during the hearing on Mattel's interpleader motion, counsel for MGA

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

850043.1
5
CV -04-9049-DOC (RNBx)
CRUM & FORSTER SPECIALTY INSURANCE COMPANY'S BRIEF PER COURT'S MAY 28, 2013 ORDER (DKT. 10878): DECLARATION OF ERIC TIBAK

1  admitted to this Court that MGA intends to use the proceeds from the Fee Award to
2  fund further litigation against Mattel. (Dkt. 10864 at 19:16-20:19)  As a result, if
3  MGA receives the undistributed Fee Award, it will dissipate the asset and may put it
4  out of reach before Crum & Forster reduces its claim to a judgment.  Such a risk is
5  manifestly unjust particularly where, as here, Mattel is willing to interplead the Fee
6  Award or otherwise deposit it with the Court.

7       Notably, at least one Circuit has upheld the imposition of a constructive trust
8  even though (like here) the party that would be unjustly enriched never had
9  possession of the proceeds that were the subject of the constructive trust. In
10  *Counihan v. Allstate Insurance Company*, 194 F.3d 357 (2nd Cir. 1999), the Second
11  Circuit upheld the imposition of a constructive trust on insurance proceeds in favor
12  of the United States where the United States had commenced forfeiture proceedings
13  against the plaintiff-appellant, but prior to final entry of the judgment in forfeiture,
14  the property in question was partially destroyed by arson. The Second Circuit
15  affirmed the district court despite the fact that case did not strictly comply with the
16  test for determining whether imposition of a constructive trust was warranted.  In so
17  ruling, the Second Circuit recognized that a constructive trust is "necessarily flexible
18  to accomplish its purpose … [which] is to prevent unjust enrichment" and concluded
19  that "a constructive trust is properly imposed in this situation in order to make the
20  government whole for its loss of the value of the Property; unjust enrichment would
21  otherwise result."[2] *Id.* at 361.

22       But even if this Court determines a "constructive trust" cannot be imposed in
23  light of the particular facts presented here, this Court has the inherent equitable

24  _____

25  [2] To the extent this Court is inclined to order Mattel to pay some portion or all of the
Fee Award directly to MGA subject to a constructive trust or similar order pending
26  resolution of the Claimants' claims (which Crum & Forster opposes), at a minimum,
this Court should require MGA to post a bond in the amount of the proceeds
27  received.

28

MUSICK, PEELER
& GARRETT LLP
ATTORNEYS AT LAW

850043.1                                    6                    CV -04-9049-DOC (RNBx)
CRUM & FORSTER SPECIALTY INSURANCE COMPANY'S BRIEF PER COURT'S MAY 28, 2013 ORDER
(DKT. 10878): DECLARATION OF ERIC TIBAK

1    power to order Mattel to deposit the funds into the Court, an escrow account or

2    similar account pending resolution of the Claimants' claims. The Supreme Court

3    recognized the Court's inherent power long ago, stating: "[T]he rule is universal,

4    that if the power is conferred to render the judgment or enter the decree, it also

5    includes the power to issue proper process to enforce such judgment or decree …."

6    *Riggs v. Johnson County*, 73 U.S. 166, 187 (1867).  The Ninth Circuit has also

7    acknowledged that this Court's equitable powers are broad and has upheld the

8    district court's chosen equitable remedy even where the imposition of a constructive

9    trust is technically improper.  *See e.g., Landwehr v. DuPree*, 72 F.3d 726, 738-739

10   (9th Cir. 1995)(upholding district court's equitable remedy regarding terms of

11   repayment to ERISA plan even though constructive trust could not properly be

12   imposed and, thus, district court's characterization of its remedy as a "constructive

13   trust" was "inaccurate").

14            The Seventh Circuit's decision in *McKee-Berger-Mansueto, Inc. v. Board of*

15   *Education of Chicago*, 691 F.2d 828 (7th Cir. 1982) is particularly instructive.

16   There, the district court entered judgment against the defendant in a breach of

17   contract case and it was affirmed on appeal.  Thereafter, a number of claimants filed

18   claims in the district court asserting rights to the judgment award.  In response, the

19   plaintiff instituted proceedings to enforce its judgment, including by filing a motion

20   styled "Supplemental Plea of Interpleader," and stated (among other things) that the

21   defendant was willing to satisfy the judgment by depositing the funds with the

22   district court clerk.  The district court granted the relief requested and order that the

23   judgment be deposited with the court.  The district court thereafter scheduled

24   hearings and determined the rights and priorities of the claimants and ordered the

25   disbursement of the judgment amount accordingly.  On appeal, the Seventh Circuit

26   acknowledged that the motion and request for interpleader were technically

27   defective because the plaintiff was not the proper party to initiate an interpleader.  *Id.*

28   at 831.  Nevertheless, the Seventh Circuit affirmed the district court's orders holding

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

850043.1                                7                          CV -04-9049-DOC (RNBx)
CRUM & FORSTER SPECIALTY INSURANCE COMPANY'S BRIEF PER COURT'S MAY 28, 2013 ORDER
(DKT. 10878): DECLARATION OF ERIC TIBAK

1   that the district court had the "inherent authority" to order that the funds necessary
2   to satisfy the judgment be deposited with the court and to disburse those funds. *Id.*
3   The court further stated that the district court "possessed jurisdiction to compel
4   satisfaction of the judgment and to adjudicate conflicting claims on the fund so
5   created." *Id.* at 832.

6        Similarly, here, this Court may exercise its inherent authority and order
7   Mattel to satisfy the Fee Award by depositing the funds with the Court or in an
8   escrow account and thereafter adjudicate the Claimants' respective claims and
9   determine the appropriate disbursement of the fund.

10  **Question #2: If this Court does have the authority to create such a trust, how much of the $137,807,318 should be set aside?  Be specific as to what portion of the total sum should be set aside in connection to each competing party's claim**
11
12
13  **Answer: The entire $137,807,318 should be set aside.**

14       The entire Fee Award should be set aside because the respective claims of the
15  Insurers and Orrick collectively exceed $137 million.  Specifically, Crum & Forster
16  paid more than $38 million toward MGA's attorneys' fees and costs incurred
17  through the conclusion of the second Mattel trial.[3] *See* Tibak Decl., ¶¶2-3.  In
18  addition, the Chartis Member Companies allege they are entitled to reimbursement
19  of attorneys' fees and costs totaling more than $43 million.  Evanston Insurance
20  Company similarly contends that it is seeking to recover approximately $57 million
21  from the Fee Award.  Further, according to the "Preliminary Notice Of Partial Final
22  Award To Be Issued in Orrick v. MGA Arbitration" (Dkt. No. 10836) filed by
23
24

_____

25  [3] This amount does **not** include the settlement payment Crum & Forster made to
26  MGA to resolve the coverage litigation. (Tibak Decl., ¶3)  It also does **not** include
27  the significant attorneys' fees and costs Crum & Forster subsequently paid on behalf of MGA in connection with the Mattel appeal. (Tibak Decl., ¶3)
28

MUSICK, PEELER
& GARRETT LLP
ATTORNEYS AT LAW

850043.1
8
CV -04-9049-DOC (RNBx)
CRUM & FORSTER SPECIALTY INSURANCE COMPANY'S BRIEF PER COURT'S MAY 28, 2013 ORDER
(DKT. 10878): DECLARATION OF ERIC TIBAK

1   Orrick, Orrick contends it has a $23 million lien on the Fee Award.[4]

2   Given that the Claimants' respective claims collectively total more than $161

3   million, which exceeds the amount of the Fee Award, the entire Fee Award should

4   be set aside until those claims are resolved and the Court determines the appropriate

5   disbursement of the Fee Award.

6   **III.   CONCLUSION**

7   Crum & Forster continues to believe that interpleader is the most appropriate

8   procedure to facilitate a global and equitable resolution of the dispute between

9   MGA, its Insurers and Orrick concerning their respective rights to the Fee Award.

10  Mattel's *Ex Parte* Application should, therefore, be granted.

11  If, however, the Court is not inclined to grant interpleader, this Court should

12  exercise its inherent authority and order that the entire Fee Award be deposited with

13  the Court or in an escrow or similar type account, schedule proceedings to determine

14  the Claimants' respective rights to the Fee Award and thereafter disburse the Fee

15  Award accordingly.

16  DATED: June 12, 2013                    MUSICK, PEELER & GARRETT LLP

17

18                                     By:  */s/Susan J. Field*

19                                          Susan J. Field
                                            Attorneys for CRUM & FORSTER
20                                          SPECIALTY INSURANCE COMPANY

21

22

23

24

25

26  _____

27  [4] Crum & Forster disputes that this is a valid "lien." (See Dkt. No. 10840)

28

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

850043.1                                    9                        CV-04-9049-DOC (RNBx)
CRUM & FORSTER SPECIALTY INSURANCE COMPANY'S BRIEF PER COURT'S MAY 28, 2013 ORDER
(DKT. 10878): DECLARATION OF ERIC TIBAK

## DECLARATION OF ERIC TIBAK

I, Eric Tibak, declare as follows:

1.     I am over the age of eighteen years.  I am a Vice-President for United States Fire Insurance Company, the Claim Administrator for Crum & Forster Specialty Insurance Company ("Crum & Forster").  Since August 2010, I have been the person primarily responsible for this matter.  I have personal knowledge of the facts set forth herein and if called as a witness, I could and would competently testify thereto.

2.     In connection with my duties relating to this matter, I am responsible for Crum & Forster's payments to MGA Entertainment, Inc. and Isaac Larian (collectively "MGA") for defense fees and costs incurred in the *Mattel* Action.  I am therefore familiar with payments made before I assumed responsibility for this matter, as well as all payments made since.

3.     For invoices covering the period through the end of the second trial in the *Mattel* Action, Crum & Forster has paid defense fees and costs to MGA totaling $38,387,281.04.  This amount does not include any portion of the settlement payment made by Crum & Forster to MGA. Nor does it include any portion of the attorneys' fees and costs paid by Crum & Forster to MGA in connection with the subsequent appeal of the *Mattel* Action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 12, 2013 at Morristown, New Jersey.

Eric Tibak
Print Name of Signator

Signature

1

## CERTIFICATE OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF ORANGE

3

4          At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of Orange, State of California.  My business address is 650 Town Center Drive, Suite 1200, Costa Mesa, California  92626-1925.

5

6          On June 12, 2013, I served true copies of the following document(s) described as **CRUM & FORSTER SPECIALTY INSURANCE COMPANY'S BRIEF PER COURT'S MAY 28, 2013 ORDER (DKT. 10878); DECLARATION OF ERIC TIBAK** on the interested parties in this action as follows:

7

8

9

10   ☒      **BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I caused said document(s) to be served by means of this Court's electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF Users set forth in the service list obtained from this Court.

11

12

13

14          I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

15

16

17          Executed on June 12, 2013, at Costa Mesa, California.

18

19                                    /s/ Holli Kiyomi
                                      Holli Kiyomi

20

21

22

23

24

25

26

27

28

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW