1  JENNIFER L. KELLER
   jkeller@kruzlaw.com
2  ALLISON SHALINSKY
   ashalinsky@kruzlaw.com
3  KELLER RACKAUCKAS UMBERG ZIPSER LLP
   18300 Von Karman Avenue, Suite 930
4  Irvine, CA 92612
   Telephone:  (949) 476-8700
5  Facsimile:  (949) 476-0900

6  Attorneys for MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>        Plaintiff,<br><br>   v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>        Defendant.<br><br>AND CONSOLIDATED ACTIONS. | CASE NO.: CV 04-09049 DOC (RNBX)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-02727<br><br>**MGA'S BRIEF IN RESPONSE TO THE COURT'S MAY 28, 2013 MINUTE ORDER REGARDING THE APPROPRIATENESS OF AN EQUITABLE CONSTRUCTIVE TRUST AS AN ALTERNATIVE TO INTERPLEADER**<br><br>Hearing Date:  TBD<br>Time:              TBD<br>Courtroom:    9-D<br><br>Judge: Hon. David O. Carter |

**TABLE OF CONTENTS**

**PAGE:**

INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................2

I. Constructive Trust Is A Creature Of Statute, Not Inherent Authority, And There Are Strict Requirements To Impose One, Which Are Absent Here ....................2

II. A Constructive Trust Is An Inappropriate Alternative To Interpleader Where, As Here, There Is No Right To The *Res*, Much Less Wrongful Acquisition............3

    A. There Can Be No Constructive Trust Because No One Other Than MGA Has A Right To The Judgment........................................................................4

    B. Even If MGA Possessed The *Res,* Which it Does Not, It Is Rightfully Entitled to Possess this Court's Award .......................................................5

    C. A Request for Constructive Trust In This Action By Non-Parties Orrick And The Insurance Carriers Is Procedurally Improper ...............................7

    D. As A Practical Matter, A Constructive Trust Is Neither Warranted Nor Capable Of Being Realized For Speculative Future Claims........................8

III. Orrick's Proposed Alternatives To Interpleader Are Also Without Merit ...........8

CONCLUSION............................................................................................................10

# TABLE OF AUTHORITIES

**CASES**                                 **PAGE(S):**

*In re Advent Management Corp. v. Taylor Associates*,
   104 F.3d 293 (9th Cir. 1997) ...................................................................... 4

*In re Advent Management Corp. v. Taylor Associates*,
   178 B.R. 480 (B.A.P. 9th Cir. 1995) ....................................................... 3, 7

*The Bank of Nova Scotia v. United States.*,
   487 U.S. 250 (1998) ................................................................................... 2

*Carlisle v. United States*,
   517 U.S. 416 (1996) ................................................................................... 2

*Communist Party of the United States v. 522 Valencia, Inc.*,
   35 Cal. App. 4th 980 (1995) ................................................................ 3, 5, 6

*Degen v. United States*,
   517 U.S. 820 (1996) ................................................................................... 2

*The Facebook, Inc. v. ConnectU, Inc.*,
   No. C 07-01389 JW, 2008 WL 4793665 (N.D. Cal. Nov. 3, 2008), aff'd,
   630 F.3d 1034 (9th Cir. 2011) ...................................................... 1, 2, 9, 10

*The Facebook, Inc. v. ConnectU, Inc.*,
   No. C 07-01389 JW, 2008 WL 4679424 (N.D. Cal. Oct. 10, 2008) ........ 9, 10

*The Facebook v. ConnectU, Inc.*,
   No. C 07-01389 JW, 2008 WL 9412728 (N.D. Cal. July 2, 2008) ........... 9, 10

*Federal Trade Commission v. Crittenden*,
   823 F. Supp. 699 (C.D. Cal. 1993), aff'd, 19 F.3d 26 (9th Cir. 1994) ....... 2, 3

*G.E. Capital Mortgage v. Maldonado*,
   No. C99-5405 JL, 2003 WL 23025437 (N.D. Cal. Dec. 19, 2003) .............. 4

*In re JMC Telecom LLC*,
   416 B.R. 738 (C.D. Cal. 2009) ................................................................... 5

*Kenneally v. Bank of Nova Scotia*,
   711 F. Supp. 2d 1174 (S.D. Cal. 2010) ....................................................... 7

*Loanstar Mortgagee Services, LLC v. Barker*,
   282 F. Appx. 572 (9th Cir. 2008) ................................................................ 7

*Mattel, Inc. v. MGA Entertainment, Inc.*,
   616 F.3d 904 (9th Cir. 2010) ................................................................... 3, 5

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*,
   150 Cal. App. 4th 384 (2007) ..................................................................... 6

*In re Sexton v. Broach*,
   166 B.R. 421 (Bankr. N.D. Cal. 1994) ........................................................ 4

*In re USM Technology Corp. v. USM Workers' Committee*,
   158 B.R. 821 (Bankr. N.D. Cal. 1993) ................................................................... 3

**STATUTES**

Cal. Civ. Code § 2223 ............................................................................................. 5, 6

Cal. Civ. Code § 2224 ............................................................................................. 5, 6

# INTRODUCTION

In this case rife with hotly contested disputes, one immutable fact is clear: MGA is entitled to, but has yet to receive, the $137,807,318 Mattel owes MGA pursuant to this Court's August 4, 2011 judgment (Dkt 10704) (the "Judgment"), which the Ninth Circuit affirmed almost six months ago. In response to Mattel's baseless request for an interpleader action, MGA demonstrated that nothing should prevent it from receiving the funds it was awarded *nearly two years ago*, because there are no claims of any kind pending against Mattel. (Dkt 10845 at 10-13.) Mattel, as the putative stakeholder, has no legitimate fear of any claims against it in paying MGA pursuant to this Court's Judgment, and this Court could immunize Mattel even if there were. There is simply no basis for an interpleader. (*Id.*) The claims by the insurance carriers and Orrick against MGA are contingent, speculative, unliquidated, and provide no basis for an interpleader. (*Id.*)

At the February 26, 2013 hearing, counsel for Orrick, in oral argument, raised several alleged alternatives to interpleader for the first time. (Dkt 10864 at 73:3-77:3.) Because Orrick cited no authority for its eleventh-hour request, the Court asked for briefing whether it has inherent authority to create an equitable constructive trust as an alternative to interpleader. (Dkt 10878.) Simply stated: It does not possess that inherent authority. The remedy is inapplicable here. Even if were applicable, neither Orrick nor the insurers can satisfy the strict requirements needed to impose a constructive trust in this case. (*See* Section I, *infra*.)

Furthermore, none of the other alternatives floated by Orrick at the hearing is viable. At the hearing, Orrick requested a Special Master be appointed to hold the funds, citing Orrick's experience in *Facebook v. ConnectU,* but omitted that the *Facebook* court *rejected* a like proposal. Presumably the reason Orrick skipped that pertinent fact was that the *Facebook* judge declined to hear the request for reimbursement for fees because, *inter alia*, the firm seeking payment was not a party to the *Facebook* action. Just as in *Facebook*, this Court should decline to "hold" fees for Orrick because Orrick is not a party to this litigation and any rights it has to fees from MGA are being litigated in a separate

action *not* before this Court. (*Compare* Dkt 10864 at 71:13-74:11 with *The Facebook v. ConnectU*, 2008 WL 4793665, at * 3 (N.D. Cal. Nov. 3, 2008), *aff'd*, 630 F.3d 1034 (9th Cir. 2011).) Orrick also suggested placing the Judgment in escrow, but conceded this was "essentially" the same as interpleader. (Dkt 10864 at 74:12-75:20.)

## ARGUMENT

### I. Constructive Trust Is A Creature Of Statute, Not Inherent Authority, And The Strict Requirements To Impose One Are Absent Here

The Court has asked whether it has inherent authority to impose an equitable constructive trust over the Judgment. *It does not*. A district court's inherent authority is limited and does *not* include the power to issue a constructive trust, particularly one that would seize assets on behalf of a creditor *before* a final determination is made on the merits of the creditors' disputed claims. As the Supreme Court has made clear:

> Courts invested with the judicial power of the United States have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities. The extent of these powers must be delimited with care, for there is a danger of overreaching when one branch of the Government, without benefit of cooperation or correction from the others, undertakes to define its own authority.

*Degen v. United States*, 517 U.S. 820, 823-24, 116 S. Ct. 1777, 1780-81 (1996).[1]

Although "federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress," the Supreme Court has cautioned that, "[w]hatever the scope of this 'inherent power,' however, it does not include the power to develop rules that circumvent or conflict with the Federal Rules." *Carlisle v. U.S.*, 517 U.S. 416, 425-26, 116 S. Ct. 1460, 1466 (1996). *Accord Bank of Nova Scotia v. U.S.*, 487 U.S. 250, 254, 108 S. Ct. 2369, 2373 (1988) ("[e]ven a sensible and efficient use of the supervisory power . . . is invalid if it conflicts with constitutional or statutory provisions. To allow otherwise would confer on the judiciary discretionary power to disregard the considered limitations of the law it is charged with enforcing.").

---

[1] All internal citations, alterations and punctuation are omitted and all emphasis is added herein unless otherwise noted.

That admonition is starkly applicable here because "[s]ince a constructive trust is a creature of state law, the Court must look to California law to determine whether a constructive trust [may be imposed]." *F.T.C. v. Crittenden*, 823 F. Supp. 699, 703 (C.D. Cal. 1993), *aff'd*, 19 F.3d 26 (9th Cir. 1994). Under California law, strict requirements must be met before a constructive trust can be imposed. *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 909 (9th Cir. 2010); *Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 990 (1995). The burden is on the party seeking to impose a constructive trust to prove each of the requirements by clear and convincing evidence. *In re USM Tech Corp.*, 158 B.R. 821, 827 n.9 (Bankr. N.D. Cal. 1993) (rejecting request where trust seeker had "not met its burden of convincing the court that it is entitled to a constructive trust"). And a constructive trust is premature until the claims of the party seeking the trust have been adjudicated to judgment. *Mattel*, 616 F.3d at 909; *Communist*, 35 Cal. App. 4th at 990; *In re Advent Mgmt. Corp.*, 178 B.R. 480, 488 (B.A.P. 9th Cir. 1995) ("The litigation must be successful *before* the property right in the constructive trust is absolute.").

MGA has located no case in which a court found it had "inherent authority" to issue a constructive trust, much less where a court agreed to do so pre-judgment on disputed claims in lieu of compliance with the statutory requirements for an interpleader. This Court should decline the invitation to commit such an error in this case. *Cf. In re USM*, 158 B.R. at 827 n.9 (declining to issue a constructive trust because court did not have inherent authority to alter statutory bankruptcy protections).

## II.  A Constructive Trust Is An Inappropriate Alternative To Interpleader Where, As Here, There Is No Right To The *Res*, Much Less Wrongful Acquisition

Under California law, a party "seeking the imposition of a constructive trust must show: (1) the existence of a *res* (property or some interest in property); (2) the right to that *res*; and (3) the wrongful acquisition or detention of the *res* by another party who is not entitled to it." *Mattel, Inc.*, 616 F.3d at 909; *accord Communist Party*, 35 Cal. App. 4th at 990. Assuming *arguendo* the Judgment amount is a proper *res*, the second two elements of a constructive trust cannot be satisfied by Mattel, Orrick or the insurance carriers.

### A. There Can Be No Constructive Trust Because No One Other Than MGA Has A Right To The Judgment

Where a party seeking the imposition of a constructive trust does not have a valid claim to the money, a claim for imposition of constructive trust will fail as a matter of law. *G.E. Capital Mortg. v. Maldonado*, No. C99-5405, 2003 WL 23025437, at *5-6 (N.D. Cal. Dec. 19, 2003) (imposition of constructive trust claim "rel[ied] on the premise that the Maldonados received money rightfully belonging to GE Capital" and "fail[ed] as a matter of law" because "GE Capital does not have a valid claim to the money").

"Only the equitable owner of the trust res may obtain a constructive trust, not a creditor of the equitable owner." *In re Sexton*, 166 B.R. 421, 425 (Bankr. N.D. Cal. 1994) ("[a] beneficiary of a constructive trust has a direct interest in the trust res" but a creditor can only undo a fraudulent transfer of property so that it is reconveyed to the transferor to be sold to satisfy the debt, as "*[t]he creditor may not be awarded the property by judicial decree*" (*id.* at 426)); *In re Advent Mgmt. Corp.*, 104 F.3d 293, 295 (9th Cir. 1997).

Here, Mattel indisputably has *no* right, much less claim, to the funds at issue. It was found liable to MGA under the Judgment, the Ninth Circuit affirmed the fee award under the Judgment, and Mattel did not seek review of that decision. Thus, Mattel undeniably *owes*, but has not paid, MGA the funds at issue. (*See* Dkt 10704.)

Similarly, as MGA has already shown, neither the insurance carriers nor Orrick has any legal right to the monies owing under the Judgment, because at this juncture all they have are speculative, contingent, and highly contested claims against MGA. (Dkt 10845 at 11-13.) Viewed in the most favorable light to them, the insurance carriers and Orrick are unsecured creditors with no legal right to the *res* at issue. The insurance carriers have been twice denied the right to intervene in this Action (by this Court and the Ninth Circuit), and have yet to litigate any claims for reimbursement against MGA. (*Id.* at 11.)

Orrick is currently arbitrating claims by and against MGA, but as yet has no judgment to enforce against MGA (nor, for that matter, does MGA have a judgment to enforce against Orrick). (*Id.* at 12-13.) At the last hearing, Orrick trumpeted the existence of a partial, unconfirmed and non-final lien and argued that it gave the Court the power to

hold fees in favor of Orrick from the Judgment pending resolution of the Arbitration. (*See, e.g.*, Dkt 10864 at 14:12-16, 70:21-25, 83:10-14.) Since then, precisely as MGA warned the Court might happen, the Orange County Superior Court *refused to confirm* the partial final award that served as the *sole* basis for Orrick's purported "lien" over funds that legally and equitably belong to MGA. (*See* Dkt No 10875.)  Orrick's only response to MGA's notifying the Court of the *rejection* of its "lien" was a deafening silence. Thus, only the future resolution of separate actions against MGA will determine *if* the insurance carriers and/or Orrick have *any* right to *any* money from MGA. (*Id.*) These unassailable facts preclude imposing a constructive trust here.

Moreover, the as-yet-unresolved claims by Orrick and the carriers are claims *against MGA – not Mattel – for monies owed*.  Thus, even if Orrick or the carriers were successful in their claims against MGA, their only relationship to the Judgment would be as creditors of MGA.  As such, as a matter of law they cannot establish an interest in and obtain a constructive trust over the *res.*

### B. Even If MGA Possessed The *Res*, Which it Does Not, It Is Rightfully Entitled to Possess this Court's Award

"A constructive trust is an equitable remedy that compels the transfer of *wrongfully* held property to its rightful owner." *Mattel*, 616 F.3d at 908-09; *see also In re JMC Telecom LLC*, 416 B.R. 738, 745 (C.D. Cal. 2009) (constructive trust "compel[s] a person not justly entitled to property to transfer it to another who is entitled to it"). The purpose of constructive trusts "is to prevent unjust enrichment and to prevent a person from taking advantage of his or her wrongdoing." *Communist Party*, 35 Cal. App. 4th at 990. The usual circumstances "where constructive trust are imposed are set forth in Civil Code sections 2223 and 2224" (*id.*), which provide that "one who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner" and that "one who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary

trustee of the thing gained, for the benefit of the person who would otherwise have had it." Cal. Civ. Code §§ 2223-24.

"A constructive trust *cannot exist* unless there is evidence that property has been wrongfully acquired or detained by a person not entitled to its possession." *Communist Party*, 35 Cal. App. 4th at 991 (emphasis in original). The person seeking to impose a constructive trust (i) "must prove that the defendant's acquisition of the property was *wrongful*" *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 398 (2007) (emphasis in original) (unsupported, circular breach of fiduciary claim failed to support the imposition of a constructive trust), and (ii) must show "some basis for determining that [the person seeking the trust] actually owned or was rightfully entitled to possession of it." *Communist Party*, 35 Cal. App. 4th at 991 (reversing imposition of trust where, *inter alia*, "there is absolutely no evidence in the record that respondent was the owner with legal title to the property and assets of the appellant corporations, or was ever intended to be").

Here, it is unclear from the discussion at oral argument whether Orrick seeks to impose a constructive trust over Mattel or MGA, but the distinction is immaterial, because neither Mattel, as present holder of the *res*, nor MGA (when Mattel pays MGA the Judgment it owes), acquired or will have acquired that money through wrongful means. There is no evidence that Mattel wrongfully acquired the money it used to fund the Appeal Bond from Orrick.[2] And when Mattel finally pays MGA, no one can be heard to argue that MGA is not rightfully entitled to that Judgment to be made whole for Mattel's wrongdoing, as determined by a jury and this Court, and affirmed by the Ninth Circuit. Orrick and the insurance carriers can hardly argue that MGA took the money in the Judgment *from them*, or anyone else, for that matter. The insurers and Orrick have never had, and certainly do not currently have, any legal right to the *res* over which they are asking this Court to impose a constructive trust; all that the insurers or Orrick have is a

---

[2] If anything, Mattel's refusal to pay MGA what it is owed, by filing frivolous interpleader motions instead in an effort to stave off the inevitable, is arguably a wrongful retention of those funds.

pending or threatened *claim* against MGA. Because there was no wrongful acquisition by either Mattel or MGA from either the insurers or Orrick, and the insurers and Orrick have no legal right to the *res*, there cannot be a constructive trust over the Judgment.[3]

### C. A Request for Constructive Trust In This Action By Non-Parties Orrick And The Insurance Carriers Is Procedurally Improper

A constructive trust is a remedy which "can only be established by litigation." *In re Advent Mgmt. Corp.*, 178 B.R. at 488 ("a constructive trust is dependent on the beneficiary litigating the right to a constructive trust"). "The litigation must be successful *before* the property right in the constructive trust is absolute." *Id.*; *see also Loanstar Mortgagee Svcs., LLC v. Barker*, 282 F. App'x 572, 574 (9th Cir. 2008) (wife's constructive trust inchoate, where it had not been established by court order). As the *Advent Mgmt.* court recognized, "proving [the alleged involuntary trustee] obtained the property under circumstances that would support the imposition of a constructive trust does not litigate the issue of whether a constructive trust would be imposed, because that litigation must be done by the beneficiary." *Advent Mgmt.*, 178 BR at 489.

Here, to establish themselves as beneficiaries to a constructive trust, Orrick and the carriers must litigate that issue and achieve a judgment in their favor. However, Orrick and the carriers are not parties to the present action, but are proceeding separately against MGA. (*See* Dkt 10845 at 11-13.) Presently, neither the insurers nor Orrick have so much

---

[3] Ironically, were the Court to impose a constructive trust over the Judgment, with Mattel as trustee, Mattel would be responsible for holding any money set aside, and for determining when to distribute the money to Orrick, the carriers, or MGA, and calculating how much each party may be entitled to, based on the resolution of several separate actions. *Kenneally v. Bank of Nova Scotia*, 711 F. Supp. 2d 1174, 1190-91 (S.D. Cal. 2010) (remedy of constructive trust "make[s] the defendant a constructive trustee with a duty to transfer to the plaintiff"). Presumably, Mattel would need, and every party would oppose, access to privileged and confidential information from its adversary to make these determinations. This would expose Mattel to potentially competing claims after the pending actions reach resolution, if any, *i.e.*, precisely the situation Mattel purportedly tried to avoid by trying to interplead the funds (albeit prematurely and inappropriately). Moreover, a constructive trust would place money currently owed *by Mattel to MGA* directly in the control of Mattel, MGA's adversary, who has every incentive to tie up the money as long as possible. Such a situation is neither equitable nor fair, to either MGA or Mattel. If Orrick seeks to have this Court act as trustee, the Court's power to do so is plainly bounded by the interpleader statute, which was designed precisely to avoid placing the Court in the position of presiding over claims as to which it has no jurisdiction.

as a single order, never mind a judgment, establishing that their claims have merit. This Action is not the appropriate means to litigate issues in those separate actions, particularly where the insurers and Orrick are seeking to obtain pre-trial, pre-merits-determination relief in the form of a hold over funds as to which they may never have any rights at all.

### D. As A Practical Matter, A Constructive Trust Is Neither Warranted Nor Capable Of Being Realized For Speculative Future Claims

Even if the potential future claims that are being litigated and arbitrated by the carriers and/or Orrick are successful, those entities would merely be owed money by MGA. Unlike a constructive trust imposed over wrongfully acquired property, there is nothing unique about the money in the Judgment which dictates that the carriers and Orrick are entitled to *the precise money paid by Mattel to MGA*. Moreover, for all the handwringing by the carriers and Orrick, there is no evidence that MGA will be unable to pay them if their claims are found to be meritorious. (*See, e.g.* Dkt 10864 at 70:18-21, 72:25-73:2, 83:9-24.) MGA is not in bankruptcy, and there is no authority for withholding payment based on unfounded fears of "dispersal of assets" where the potential claimants have no present right to payment, and where their potential claims may never materialize.

Even if the Court determines that an equitable constructive trust is merited at some theoretical level (and it should not), it will be impossible to determine what portion of the Judgment would be subject to the "trust." Since neither Orrick nor the carriers have a present right to any amount of the Judgment, determining how much money could equitably be "set aside" at this juncture is impossible. The only equitable "trust" would be equal in value to what those claims are now worth – exactly nothing at all.

### III. Orrick's Proposed Alternatives To Interpleader Are Also Without Merit

At the February 26, 2013 hearing, Orrick suggested that "there are other vehicles that the Court could order to protect the assets" as alternatives to interpleader. (Dkt 10864 at 73:3-5.) None of these "other vehicles" has any merit.

At the hearing, Orrick relied heavily on *Facebook v. ConnectU, Inc.*, a case Orrick counsel Neel Chatterjee characterized as "helpful" to the Court because the situation Mr.

Chatterjee oversaw as counsel for Plaintiffs there "was virtually identical to this" – that is, "Quinn Emanuel said that they had an entitlement to . . . funds because of an agreement they had with the Winklevoss family" by virtue of their representation. While acknowledging that the *Facebook* court "didn't exactly interplead the money," Mr. Chatterjee claimed that the *Facebook* court "appointed a special master to oversee the distribution of the funds" and invited this Court to do the same. (*Id.* at 71:13-16, 71:25-72:5, 73:7-74:10.) This Court flatly rejected Mr. Chatterjee's invitation and rightly so, given the vast differences between *Facebook* and the instant case. (*Id.* at 74:11.)[4]

The Court's refusal to follow the path supposedly undertaken in *Facebook* is especially prescient because Mr. Chatterjee curiously omitted a crucial ruling in that case. It is true that Quinn Emanuel, like Orrick here, was in the process of arbitrating a fee dispute with former clients and defendants in the *Facebook* case in a separate proceeding. During the pendency of that arbitration, Quinn Emanuel, like Orrick here, asked the *Facebook* court "that any disbursal of the settlement proceeds b[e] made jointly in the name of [its former clients] and the law firm" in order to enforce an alleged lien for allegedly unpaid attorney's fees. *Facebook*, 2008 WL 4793665, at * 1, *3; *The Facebook, Inc. v. ConnectU, Inc.*, 2008 WL 4679424 (N.D. Cal. Oct. 10, 2008) (Quinn Emanuel briefing). What Mr. Chatterjee neglected to mention was that Judge Ware ruled that "*[s]ince Quinn Emanuel is not a party to this case and has not otherwise foreclosed on any lien, the Court declines to grant its request.*"[5] *Facebook*, 2008 WL 4793665, at *3.

---

[4] Quite unlike the present case, in *Facebook,* a settlement agreement between the parties gave the district court the authority to enforce the agreement, and the court appointed the special master as the finalization of the settlement fell apart because it had "determined that certain activities which are necessary in the enforcement of the Agreement cannot be effectively or timely addressed by the Court or an available Magistrate Judge.". *Facebook*, 2008 WL 4793665, at *1; *The Facebook, Inc. v. ConnectU, Inc.*, 2008 WL 9412728, at *1 (N.D. Cal. July 2, 2008)). This was a logistical arrangement far more complicated than the enforcement of the Judgment, which can be resolved by Mattel simply paying MGA the amount it owes. Moreover, it gave that court, unlike this Court, direct subject matter jurisdiction and power to resolve certain claims among the parties.

[5] Moreover, the *Facebook* court's decision to appoint a special master to distribute the settlement proceeds was **not** based on Quinn Emanuel's claim that it had a lien on the proceeds; Quinn Emanuel's first submission seeking distribution of the settlement proceeds was in October 2008, months after the special master had been appointed in July.

*(cont'd)*

Instead, the court ordered that the "proceeds be delivered in trust to Defendants' counsel" and left Quinn Emanuel to seek to "assert its lien on the proceeds in the hands of Defendants or Defendants' counsel." *Id.* In other words, that court did precisely what this Court should do; it *declined* the request to impose a lien or trust on funds claims by former counsel and, instead, directed that such fees be paid to the client, which had the legal right and entitlement to such monies.

Here, Orrick is likewise not a party, and as described above, cannot reasonably argue that it has a lien. Thus, this Court should likewise refuse to grant Orrick's request for disbursement of fees from MGA's Judgment, and leave Orrick to pursue MGA for any valid claims it might have. If and only if Orrick were to prevail on its claims and obtain a final judgment, could Orrick then be in a position of asking to place a lien or a constructive trust over funds that belong to MGA.

Orrick also suggested placing the Judgment in escrow. (Dkt 10864 at 74:17-24.) Orrick did not explain how creating such an escrow account differs from interpleader, presumably because there is no meaningful difference. Indeed, Orrick was forced to admit that such a resolution "essentially accomplishes the same thing as an interpleader." (*Id.* at 74:21-24.) Since creating an escrow account and distributing the proceeds as judgments become final constitutes merely an end-run around the interpleader proceedings, Orrick's proposed escrow plan should be rejected.

## CONCLUSION

For the foregoing reasons, a constructive trust should not and cannot be created.

Dated: June 12, 2013         KELLER RACKAUCKAS UMBERG ZIPSER LLP

By:       /s/ Jennifer L. Keller
JENNIFER L. KELLER
Attorneys for MGA Parties

---

*(cont'd from previous page)*
*Compare Facebook,* 2008 WL 4679424, at *1 (Quinn Emanuel October 10, 2008 filing) *with Facebook*, 2008 WL 9412728, at *1 (July 2, 2008 appointment of Special Master).