PAUL L. GALE (SBN 65873)
paul.gale@troutmansanders.com
TROUTMAN SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA  92614-2545
Telephone:  949.622.2700
Facsimile:   949.622.2739

SEAN M. HANIFIN, *Admitted Pro Hac Vice*
sean.hanifin@troutmansanders.com
PRASHANT K. KHETAN, *Admitted Pro Hac Vice*
prashant.khetan@troutmansanders.com
TROUTMAN SANDERS LLP
401 9th Street, N. W., Suite 1000
Washington, D.C.  20004-2134
Telephone:  202.274.2950
Facsimile:   202.274.2994

*Attorneys for*
*EVANSTON INSURANCE COMPANY*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MATTEL, INC.,<br><br>            Plaintiff,<br><br>v.<br><br>MGA ENTERTAINMENT, INC., et al.,<br><br>            Defendants. | Case No. CV 04-9049-DOC (RNBx) consolidated with CV 04-09059 DOC (RNBx) and CV 05-02727 DOC (RNBx)<br><br>Related to Case No. SACV 12-0943-DOC (RNBx) and CV 12-05654 DOC (RNBx)<br><br>Honorable David O. Carter<br><br>**EVANSTON INSURANCE COMPANY'S BRIEF PURSUANT TO THE COURT'S ORDER REQUESTING ADDITIONAL BRIEFING [DKT. NO. 10878]** |

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

20513004v1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   ARGUMENT ................................................................................................ 2

    A.    "Equitable Constructive Trust" is not a Perfect fit, but it is Flexible Enough to be Employed Here .................................................. 2

    B.    Interpleader and Constructive Trust Aside, the Court has the Authority to Order Mattel to Deposit a sum Necessary to Satisfy the Court's Judgment, and to Adjudicate Competing Claims to the MGA Judgment Funds .................................................................... 5

    C.    Safekeeping the Entire Judgment Amount Pending Adjudication of the Parties' Respective Claims is the Most Fair and Equitable Course ........................................................................................... 8

III.  CONCLUSION ............................................................................................ 9

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

EVANSTON'S BRIEF PURSUANT TO THE COURT'S ORDER REQUESTING ADDITIONAL BRIEFING

# TABLE OF AUTHORITIES

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**Page(s)**

CASES

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991)...................................................................................5

*Communist Party of U.S. v. 522 Valencia*, Inc.,
    35 Cal. App. 4th 980 (1995) ...................................................................3

*GHK Associates v. Mayer Group, Inc.*,
    224 Cal. App. 3d 856 (1990) ..................................................................3

*Martin v. Kehl*,
    145 Cal. App. 3d 228 (1983) ..................................................................3

*Mattel, Inc. v. MGA Entertainment, Inc.*,
    616 F.3d 904 (9th Cir. 2010) ...............................................................2, 3

*McKee-Berger-Mansueto, Inc. v. Board of Education of Chicago*,
    691 F.2d 828 (7th Cir. 1982) ......................................................5, 6, 7, 8

*Weiss v. Marcus*,
    51 Cal. App. 3d 590 (1975) ....................................................................3

**I.     INTRODUCTION**

Following the hearing on Mattel's *Ex Parte* Application for an Order Enjoining Defendants From Instituting or Prosecuting any Proceeding Affecting the Judgment in This Action and Exonerating Bond on Condition of Institution of Interpleader Action (Dkt. No. 10838) (the "Application"), this Court requested additional briefing regarding:  (1) whether, as an alternative to interpleader, the Court has the authority to place some or all of the MGA judgment proceeds into an equitable constructive trust, in light of the ongoing but separate disputes between MGA and Orrick Herrington & Sutcliffe LLP ("Orrick") in arbitration, and among MGA and its various insurers, in this Court; and (2) if so, how much of the $137,807,318 judgment amount (the "MGA judgment funds") should be deposited with the Court.  (*See* Order Requesting Additional Briefing, Dkt. No. 10878.) Pursuant to the Court's request, Evanston Insurance Company ("Evanston") respectfully submits this brief.

With respect to the first issue, Evanston submits that this Court *does* have the authority – separate from the Application's interpleader approach – to order Mattel to deposit the MGA judgment funds into the Court while the Court adjudicates the parties' respective interests thereto, and to thereafter disburse them accordingly.[1] As things currently stand, however, employing the "equitable constructive trust" nomenclature is problematic since MGA, the would-be recipient of the MGA judgment funds, has not yet "wrongfully detained" them.

The constructive trust doctrine's "wrongful detention" element will be met if Mattel later pays the MGA judgment funds to MGA, which has steadfastly maintained that no other claimants are entitled to any part of them.  But because

---

[1] Evanston has argued, and still maintains, respectfully, that the Application's interpleader approach is fully authorized and warranted.  (*See* Dkt. No. 10856.)

EVANSTON'S BRIEF PURSUANT TO THE COURT'S ORDER REQUESTING ADDITIONAL BRIEFING

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1   MGA may dissipate the funds, or put them out of reach before the other claimants
2   are able to obtain relief, and because it cannot be seriously argued that the most fair
3   and least prejudicial course of action is for the Court to hold the funds pending
4   consideration and resolution of the parties' respective claims, the constructive trust
5   doctrine is, and should be, flexible enough to be imposed here.

7       But, as discussed in Section II.B, imposing a "constructive trust" as an
8   alternative to interpleader is unnecessary.  Constructive trust and interpleader law
9   aside, this Court has the inherent authority to enforce its own judgment, and it may
10  adjudicate claims to the MGA judgment funds and thereafter disburse the proceeds
11  in supplemental post-judgment proceedings.  Doing so here is equitable and fair, as
12  the MGA judgment funds represent fees that were, in fact, actually paid by
13  Evanston and MGA's other insurers, as well as fees that were adjudicated by this
14  Court in 2011 to have been earned by Orrick.

16      As for the second issue, the entire amount necessary to satisfy the
17  $137,807,318 judgment should be deposited with the Court.  Collectively, Evanston
18  and MGA's other insurers paid more than this amount to defend MGA against
19  Mattel's claims – all of which MGA's insurers seek to recover from the MGA
20  judgment funds.  On top of that, the arbitrator's "Preliminary Notice of Partial Final
21  Award" in the *Orrick v. Mattel* arbitration suggests that Orrick may be entitled to
22  $23 million.

24  **II.    ARGUMENT**
25      **A.    "Equitable Constructive Trust" is not a Perfect fit, but it is**
26          **Flexible Enough to be Employed Here**
27      "A constructive trust is an equitable remedy that compels the transfer of
28  wrongfully held property to its rightful owner."  *Mattel, Inc. v. MGA*

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

*Entertainment, Inc.*, 616 F.3d 904, 908-909 (9th Cir. 2010) (citing *Communist Party of U.S. v. 522 Valencia*, Inc., 35 Cal. App. 4th 980 (1995)).  "A plaintiff seeking imposition of a constructive trust must show:  (1) the existence of a *res* (property or some interest in property); (2) the right to that *res*; and (3) the wrongful acquisition or detention of the *res* by another party who is not entitled to it."  *Id*. at 909.

The constructive trust doctrine is flexible so that courts may apply it equitably in individual cases.  *Martin v. Kehl*, 145 Cal. App. 3d 228, 237-38 (1983).  Thus, the courts repeatedly have "pointed out that 'a constructive trust may be imposed in practically any case where there is a wrongful acquisition or detention of property to which another is entitled.'"  *Id.* at 238 (citing *Weiss v. Marcus*, 51 Cal. App. 3d 590 (1975)); *GHK Associates v. Mayer Group, Inc.*, 224 Cal. App. 3d 856, 878 (1990).

"Fraud or intentional misrepresentation is not required for a constructive trust to be imposed."  *GHK Associates*, 224 Cal. App. 3d at 878.  "A breach of contract or intentional interference with contract can make the offending party a constructive trustee."  *Id*.  There is no requirement that the holder of the property or amount in question have acquired it directly from the person rightfully entitled to it.  *Id*. at 879.  And although an equitable remedy, the existence of an adequate remedy at law is not required for imposition of a constructive trust.  *Id*.

Arguably, the elements for a constructive trust are present here.  There are distinct funds in question − the amounts needed to satisfy the judgment − which are currently being held by Mattel pending this Court's directive.  Obviously, Mattel is not entitled to the MGA judgment funds; indeed, Mattel is prepared to interplead or

pay the entire amount as directed by the Court.  And Evanston, MGA's other insurers, and Orrick, all claim interests to parts of the MGA judgment funds.

The one problematic element, however, is whether Mattel, the current custodian of the funds, can be said to be "wrongfully detaining" it.  As things now stand, it is a stretch to say that Mattel is "wrongfully detaining" the judgment amount.

Notably, if Mattel were to pay the MGA judgment funds to MGA, then this "wrongful detention" issue would no longer pose an obstacle, because MGA's strident position is that Evanston and the other claimants are not entitled to a single penny of the MGA judgment funds.  But if the funds were paid to MGA, MGA could dissipate, secrete, or otherwise place them out of the claimants' reach before the claimants could obtain constructive trust relief.  It would be manifestly unjust for the claimants to be forced to face that risk, when Mattel currently holds the MGA judgment funds and is more than willing to deposit them with the Court.  The equitable constructive trust doctrine should be flexible enough to accommodate these circumstances.

This Court can and should hold that MGA is an anticipatory wrongful detainee, and therefore order Mattel to place the MGA judgment funds under the Court's supervision, pending resolution of all parties' conflicting claims thereto.

**B.** **Interpleader and Constructive Trust Aside, the Court has the Authority to Order Mattel to Deposit a sum Necessary to Satisfy the Court's Judgment, and to Adjudicate Competing Claims to the MGA Judgment Funds**

Although doable, utilizing the specific "constructive trust" remedy as an alternative to interpleader here is not exactly a perfect fit.  But, employing the "constructive trust" terminology is unnecessary.  Interpleader and constructive trust aside, the Court has the inherent power to order Mattel to deposit the MGA judgment funds with the Court, and the authority to adjudicate the claimants' competing interests thereto.

"It has long been understood that 'certain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).  "These powers are 'governed not by rule or statute, but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.*

In *McKee-Berger-Mansueto, Inc. v. Board of Education of Chicago*, 691 F.2d 828 (7th Cir. 1982), the Seventh Circuit held that a district court had the inherent authority to order the defendant to deposit the amounts necessary to satisfy the district court's judgment, which was entered in the plaintiff's favor, and then to adjudicate competing claims to the fund and disburse the funds accordingly.  The case began as a breach of contract action filed in the district court by McKee-Berger-Mansueto, Inc. ("MBM") against the Chicago Board of Education (the "Board").  After trial, the district court entered a substantial money judgment in

Troutman Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

- 5 -

MBM's favor.  The Board appealed, but, except for the prejudgment interest portion, the Seventh Circuit affirmed the judgment and issued its mandate.

One week after the Seventh Circuit's mandate, MBM's counsel served a notice of attorneys' lien, asserting a claim to one-third of the proceeds of the judgment.  Several other MBM creditors also had asserted claims to MBM's property – the United States sought unpaid tax assessments and, by the time of the Seventh Circuit's mandate, three other creditors had obtained judgments against MBM.

Shortly after MBM's counsel served its attorneys' lien, MBM filed a motion, styled as a "Supplemental Plea of Interpleader."  The motion recited that the Board was prepared to satisfy the judgment against it by depositing the necessary funds with the district court, but was reluctant to do so, because injunctions issued in MBM's creditors' state court actions prohibited the Board from paying any money directly to MBM.  MBM's motion requested the district court to: (1) order the Board to deposit with the court's clerk funds necessary to satisfy the judgment; (2) satisfy MBM's attorney fee lien out of the funds; and (3) disburse the remainder of the fund among the various claimants.  The motion was served on all parties and on MBM's creditors.

The district court granted the first part of MBM's request, ordering the Board to deposit the amount necessary to satisfy the judgment, and scheduled additional hearings to determine the competing claimants' relative claims and priorities to the funds.  At the next scheduled hearing, the district court granted MBM's request to treat its "Supplemental Plea of Interpleader" as a "motion for the disposition of funds deposited with the court."  691 F.2d at 830.  Following additional hearings, at which the claimants were allowed to prove their claims, the district court disbursed

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

what represented the full amount of MBN's attorneys' claim, and disbursed the rest of the fund to the United States in partial satisfaction of its tax lien.  One of MBM's creditors, World Express, appealed, challenging the district court's jurisdiction to take control of the fund created by the judgment and to adjudicate the conflicting claims to the fund.

On appeal, the Seventh Circuit affirmed the district court's orders.  The Court "conclude[d] that the district court had inherent authority to order the Board to deposit into court the funds necessary to satisfy the judgment." *McKee-Berger-Mansueto, Inc.,* 691 F.2d at 831.  The Court "also conclude[d] that the district court had authority to disburse those funds, in accordance with applicable state and federal laws, in 'proceedings supplementary to and in aid of a judgment.'" *Id.* Finding that the pending state court suits did not deprive the district court of jurisdiction, the Court further held "*that the district court possessed jurisdiction to compel satisfaction of its judgment and to adjudicate conflicting claims* on the fund so created." *Id.* at 832 (emphasis added).

Finally, the Court noted that while MBM's styling of its motion as a "Supplemental Plea of Interpleader" was technically improper (because, unlike the Board, MBM was not a stakeholder potentially subject to multiple liability if it paid the wrong party), the district court was nevertheless authorized to grant the requested relief.  691 F.2d at 832.  The Court observed:

> However their motion was styled, we conclude that the motion
> properly requested the district court to disburse the funds on
> deposit among the conflicting claimants.  We can discern no
> prejudice to the rights of World Express in the technical form of
> MBM's pleadings.  The Supplemental Plea afforded all

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1  interested parties advance notice and an opportunity to appear

2  and assert their own claims to the fund.  This provided more

3  than adequate protection of World Express' rights.  *Id.*

5  So just like the Court in *McKee-Berger-Mansueto*, this Court may order

6  Mattel to pay the MGA judgment funds into the Court, adjudicate the parties'

7  respective claims to the funds, and thereafter disburse them accordingly.

9  **C.   Safekeeping the Entire Judgment Amount Pending Adjudication**

10  **of the Parties' Respective Claims is the Most Fair and Equitable**

11  **Course**

12  The $137,807,318 judgment was for MGA's attorneys' fees incurred in

13  defending against Mattel's Copyright Act claims.  Those fees were paid by MGA's

14  insurers, including Evanston.  Collectively, MGA's insurers have paid MGA more

15  than the judgment amount.  Evanston has paid no less than $56,728,304 toward

16  MGA's defense.  (*See* accompanying declaration of Shari Marko, ¶ 4.)  Evanston

17  seeks to recover this entire amount from the judgment proceeds pursuant to its

18  subrogation rights.  Evanston understands that MGA's other insurers also seek to

19  recover the amounts they paid in defense costs from the judgment proceeds. [2]

21  In addition, the judgment amount also represents fees earned by, but not paid

22  to, Orrick.  The arbitrator's "Preliminary Notice of Partial Final Award" in the

23  *Orrick v. Mattel* arbitration provides for a $23 million lien on the judgment

24  proceeds.  While not conceding the validity of Orrick's assertion that it possesses a

---

[2] In addition to the almost $57 million in defense costs, Evanston also paid $26 million to settle MGA's extra-contractual claims as part of its settlement agreement with MGA.  That $26 million payment was paid directly to MGA, and Evanston does not seek to recover, via subrogation or otherwise, any part of that substantial payment.  Thus, one way or another, MGA has received in excess of $180 million from the insurers.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92814-2545

current "lien," Evanston notes the $23 million figure referenced in the arbitrators' notice.  The total of the sum reimbursed to MGA by the insurers and Orrick's claim exceeds the Mattel judgment by more than $20 million.

As the total amount of the various claimants' collective interests in the MGA judgment funds greatly exceeds the amount of the funds themselves, the only fair and equitable approach is for this Court to safeguard the entire amount necessary to satisfy the judgment.

## III.   CONCLUSION

In addition to and separate from interpleader, this Court has the authority to order the MGA judgment funds be paid into the Court, to adjudicate the parties' respective interests to the funds, and to thereafter disburse the funds accordingly. The entire MGA judgment funds should be ordered to be deposited with the Court.

Dated:  June 12, 2013                    Respectfully submitted,

PAUL L. GALE
SEAN M. HANIFIN
PRASHANT K. KHETAN
TROUTMAN SANDERS LLP


By:  /s/ Paul L. Gale
          Paul L. Gale

*Attorneys for*
*EVANSTON INSURANCE COMPANY*

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

EVANSTON'S BRIEF PURSUANT TO THE COURT'S ORDER REQUESTING ADDITIONAL BRIEFING