# EXHIBIT A

1              **UNITED STATES DISTRICT COURT**

2              **CENTRAL DISTRICT OF CALIFORNIA**

3          **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                      - - - - - - -

5     MATTEL, INC.,                    )
                                       )
6              Plaintiff,              )
                                       )
7         vs.                          ) No. LACV 04-9049 DOC
                                       )     Item No. 43
8     MGA ENTERTAINMENT INC., et al.,  )
                                       )
9              Defendants.             )
      _____ )

10

11

12

13            REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                    Hearing on Motions

15                   Santa Ana, California

16                Tuesday, February 26, 2013

17

18

19

20

21    Debbie Gale, CSR 9472, RPR, CCRR
      Federal Official Court Reporter
22    United States District Court
      411 West 4th Street, Room 1-053
23    Santa Ana, California 92701
      (714) 558-8141
24

25    04cv9049 Mattel 2013-02-26  Hrg

1   **APPEARANCES OF COUNSEL:**

2

FOR MATTEL, INC.:

3

4               QUINN EMANUEL URQUHART & SULLIVAN LLP
                BY:  Michael T. Zeller
5                    Susan Estrich
                     Brett Dylan Proctor
                     Ian Shelton
6                    Ryan Baker
                     Attorneys at Law
7               865 South Figueroa Street
                10th Floor
8               Los Angeles, California 90017-2543
                213-443-3000

9

10

11

FOR DEFENDANT MGA ENTERTAINMENT, INC.:

12

                KELLER RACKAUCKAS LLP
13              BY:  Jennifer L. Keller
                     Attorney at law
14              18500 Von Karman Avenue
                Suite 560
15              Irvine, California 92612
                949-476-8700

16

                -AND-
17

                SHERNOFF BIDART ECHEVERRIA LLP
18              BY: Michael J. Bidart
                    Attorney at Law
19              600 South Indian Hill Boulevard
                Claremont, California 91711
20              (909) 621-4935

21

22

23

24

25

```
1    APPEARANCES OF COUNSEL (Continued):

2    FOR INTERVENOR DEFENDANT CRUM & FORSTER INSURANCE SPECIALTY
     INSURANCE COMPANY:
3
4            MUSICK PEELER AND GARRETT
             BY:  Susan J. Field
5                 Attorney at Law
             One Wilshire Boulevard
6            Suite 2000
             Los Angeles, California 90017-3383
7            213-629-7886

8

9    FOR INTERVENOR DEFENDANTS CHARTIS SPECIALITY INSURANCE
     COMPANY, ET AL.:
10
11           DRINKER BIDDLE & REATH LLP
             BY:  Mark D. Sheridan
12                Attorney at Law
             500 Campus Drive
13           Florham Park, NJ 07932-1047
             973-549-7336
14

15
     FOR INTERESTED PARTY EVANSTON INSURANCE COMPANY:
16
17           TROUTMAN SANDERS LLP
             BY: Sean M. Hanifin
18               Attorney at Law
             401 Ninth Street NW
19           Suite 1000
             Washington, DC 20004-2134
20           202-662-2026

21           -AND-

22           TROUTMAN SANDERS LLP
             BY: Paul L. Gale
23               Attorney at Law
             5 Park Plaza
24           Suite 1400
             Irvine, California 92614-2545
25           949-622-2700
```

1    **APPEARANCES OF COUNSEL (Continued):**

2

3    FOR INTERESTED PARTY ORRICK, HERRINGTON & SUCLIFFE LLP:

4              ORRICK, HERRINGTON & SUTCLIFFE, LLP
               BY:  I. Neel Chatterjee
5                  Attorney at Law
               1000 Marsh Road
6              Menlo Park, CA 94025
               650-614-7356
7
               -AND-
8
               ORRICK, HERRINGTON & SUTCLIFFE, LLP
9              BY:  THOMAS S. McCONVILLE
                   Attorney at Law
10             4 Park Plaza
               Suite 1600
11             Irvine, California 92614

12             (949) 567-6700

13             -AND-

14             SHARTSIS FRIESE
               BY:  Lisa Jacobs
15                 Attorney at Law
               1 Maritime Plaza
16             18th Floor
               San Francisco, California 94111
17             415-421-6500

18

19

20

21

22

23

24

25

LACV 04-9049 DOC – 2/26/2013 – Item No. 43

5

1                    **I N D E X**

2     **PROCEEDINGS**                                      **PAGE**

3     Argument by Mr. Zeller                          10

4     Argument by Ms. Jacobs                          13

5     Argument by Ms. Keller                          15

6     Argument by Ms. Field                           33

7     Argument by Mr. Sheridan                        39

8     Further argument by Mr. Zeller                  41

9     Further argument by Mr. Bidart                  61

10    Argument by Mr. Chatterjee                      69

11    Further argument by Ms. Keller                  78

12    Concluding argument by Mr. Zeller               80

13    Concluding argument by Mr. Chattergy            82

14    Concluding argument by Ms. Kelller              84

15    Concluding argument by Ms. Field                85

16    Concluding argument by Mr. Sheridan             87

17

18

19

20

21

22

23

24

25

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| | 1 | **SANTA ANA, CALIFORNIA, TUESDAY, FEBRUARY 26, 2013** |
| | 2 | **Item No. 43** |
| | 3 | (10:10 a.m.) |
| 08:37 | 4 | THE COURT:  Folks on the Mattel matter. |
| 10:10 | 5 | MR. ZELLER:  Good morning, Your Honor.  Mike |
| | 6 | Zeller for Mattel. |
| 10:10 | 7 | MR. BAKER:  Good morning, Your Honor.  Ryan Baker |
| | 8 | for Mattel. |
| 10:10 | 9 | THE COURT:  Are you going to be arguing, |
| | 10 | Mr. Baker? |
| 10:10 | 11 | MR. BAKER:  I don't expect to. |
| 10:10 | 12 | THE COURT:  Why are you here? |
| 10:10 | 13 | MR. BAKER:  Well, I'm here -- I represent some of |
| | 14 | the insurance parties. |
| 10:10 | 15 | THE COURT:  Okay.  Why don't you have a seat in |
| | 16 | the back row so I get my arguers in the front. |
| 10:10 | 17 | MR. BAKER:  Sure. |
| 10:10 | 18 | THE COURT:  Ms. Estrich? |
| 10:10 | 19 | MS. ESTRICH:  Susan Estrich for Mattel. |
| 10:10 | 20 | THE COURT:  Are you going to be arguing? |
| 10:10 | 21 | MS. ESTRICH:  I think Mr. Zeller. |
| 10:10 | 22 | THE COURT:  Why don't you stay with him anyway. |
| | 23 | He may need some help. |
| 10:10 | 24 | MR. PROCTOR:  Dillon Proctor for Mattel, |
| | 25 | Your Honor. |

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

7

| | | |
|---|---|---|
| 10:10 | 1 | THE COURT:  Are you going to be arguing? |
| 10:10 | 2 | MR. PROCTOR:  Mr. Zeller will be speaking for us. |
| 10:10 | 3 | THE COURT:  Okay.  Back row, then. |
| 10:10 | 4 | MR. SHELTON:  Your Honor, Ian Shelton for Mattel. |
| 10:10 | 5 | THE COURT:  Arguing? |
| 10:10 | 6 | MR. SHELTON:  No, sir. |
| 10:10 | 7 | THE COURT:  Back row. |
| 10:10 | 8 | MS. FIELD:  Good morning, Your Honor.  Susan Field |
| | 9 | for Crum & Forster Insurance Company. |
| 10:10 | 10 | THE COURT:  Pleasure.  Are you going to be |
| | 11 | arguing? |
| 10:10 | 12 | MS. FIELD:  If appropriate, yes, Your Honor. |
| 10:10 | 13 | MS. KELLER:  Jennifer Keller on behalf of the MGA |
| | 14 | parties. |
| 10:11 | 15 | THE COURT:  I know you'll be arguing.  Why don't |
| | 16 | you have a seat in the first chair. |
| 10:11 | 17 | MS. KELLER:  I will, Your Honor. |
| 10:11 | 18 | THE COURT:  Who's going to join you in your |
| | 19 | argument, or at least support? |
| 10:11 | 20 | MS. KELLER:  I think Mike Bidart. |
| 10:11 | 21 | MR. BIDART:  Only to the extent required. |
| 10:11 | 22 | THE COURT:  Why don't you two have a seat right |
| | 23 | there in the first two seats.  Okay? |
| 10:11 | 24 | MS. KELLER:  And I have another reinforcement, |
| | 25 | Your Honor. |

DEBBIE GALE, U.S. COURT REPORTER

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

8

| | | |
|---|---|---|
| 10:11 | 1 | THE COURT:  I'll put them along the side -- if |
| | 2 | you're not an arguer, I just want you to be seated in the |
| | 3 | first row. |
| 10:11 | 4 | Who's next? |
| 10:11 | 5 | MR. SHERIDAN:  Mark Sheridan on behalf of the |
| | 6 | Chartis companies. |
| 10:11 | 7 | MS. JACOBS:  Good morning, Your Honor.  Lisa |
| | 8 | Jacobs on behalf of Orrick, Herrington & Sutcliffe. |
| 10:11 | 9 | THE COURT:  Okay.  Are you going to be arguing |
| | 10 | this matter today? |
| 10:11 | 11 | MS. JACOBS:  I'm arguing. |
| 10:11 | 12 | THE COURT:  Okay.  Well, why don't you have a seat |
| | 13 | in an arguing chair, then. |
| 10:11 | 14 | MR. CHATTERJEE:  Your Honor, Neel Chatterjee.  I'm |
| | 15 | at Orrick and I'm gonna be assisting Ms. Jacobs. |
| 10:11 | 16 | THE COURT:  Okay. |
| 10:11 | 17 | MR. McCONVILLE:  Tom McConville, Your Honor, for |
| | 18 | Orrick. |
| 10:11 | 19 | THE COURT:  Are you going to be arguing the |
| | 20 | matter? |
| 10:11 | 21 | MR. McCONVILLE:  Not unless the Court has |
| | 22 | questions. |
| 10:12 | 23 | THE COURT:  Okay.  Just someplace, then. |
| 10:12 | 24 | MR. HANIFIN:  Good morning, Your Honor.  Sean |
| | 25 | Hanifin and Paul Gale for Evanston Insurance. |

DEBBIE GALE, U.S. COURT REPORTER

LACV 04-9049 DOC – 2/26/2013 – Item No. 43

9

| | | |
|---|---|---|
| 10:12 | 1 | THE COURT:  Great.  Thank you. |
| 10:12 | 2 | Well, first of all, I missed all of you.  It's |
| | 3 | nice to have all of you back. |
| 10:12 | 4 | I don't care how we proceed, but I will ask this |
| | 5 | question right to begin with:  It appears to me that the |
| | 6 | interpleader is a discretionary call by the Court, and it |
| | 7 | appears to me that I was given specific directions by the |
| | 8 | Circuit; and that was rather explicit, and that was, |
| | 9 | basically, Mattel was to pay $137 million. |
| 10:12 | 10 | And I'm a little concerned with that, what I think |
| | 11 | is explicitness, of then taking a discretionary call on an |
| | 12 | interpleader.  So I want you to tell me what you think the |
| | 13 | Circuit meant by that -- not now -- you know, in your |
| | 14 | argument.  That's my first question. |
| 10:12 | 15 | The second one, though, is for the plaintiffs, and |
| | 16 | that is -- I forget the amount right now what bond is.  Is |
| | 17 | it 310- or 315 million something? |
| 10:13 | 18 | MR. ZELLER:  315 million, Your Honor. |
| 10:13 | 19 | THE COURT:  And with the explicit amount of 157-, |
| | 20 | why would the Court hold to a 315 million bond rather than |
| | 21 | the explicit amount that the Circuit has directed to be |
| | 22 | paid? |
| 10:13 | 23 | Those are my two fundamental concerns going into |
| | 24 | the argument.  Beyond that, I don't care who argues first. |
| | 25 | So who would like to start?  You'll have two rounds. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:13 | 1 | MR. ZELLER:  Your Honor, for Mattel. |
| 10:13 | 2 | We agree as to the $315 million bond issue. |
| | 3 | That's one of the reasons why we've come to the Court for |
| | 4 | relief. |
| 10:13 | 5 | The second issue, with respect to the Ninth |
| | 6 | Circuit, there's nothing in the mandate that, from our view, |
| | 7 | would preclude the Court from pursuing an interpleader. |
| 10:13 | 8 | THE COURT:  No.  There may not be, but it still |
| | 9 | seems rather directive.  And if I'm using my discretion, I |
| | 10 | might err on the side of caution and follow what I think the |
| | 11 | direction of the Circuit is. |
| 10:14 | 12 | MR. ZELLER:  And obviously, from Mattel's |
| | 13 | perspective, we'll do whatever the Court orders. |
| 10:14 | 14 | THE COURT:  Yeah, but -- |
| 10:14 | 15 | MR. ZELLER:  The Court, I'm sure, recognizes and |
| | 16 | appreciates we have competing claimants and so -- |
| 10:14 | 17 | THE COURT:  Just a moment. |
| 10:14 | 18 | Why should I be concerned?  Mattel launched this, |
| | 19 | in a sense.  And now Mattel steps back and says, "Oh, we had |
| | 20 | a party, but now we want out." |
| 10:14 | 21 | Well, you might want to finish this party.  And |
| | 22 | why should I be concerned that you have competing claimants? |
| 10:14 | 23 | MR. ZELLER:  Well, Your Honor, because of the fact |
| | 24 | that Orrick presumably is attempting to set up a tortious |
| | 25 | interference claim.  I mean, that's why they give notice. |

DEBBIE GALE, U.S. COURT REPORTER

11

|   |   |
|---|---|
|   | 1 |   And attorney liens are obviously serious business.  We don't |
|   | 2 |   believe that they have a valid claim, and certainly not when |
|   | 3 |   we're complying with a court order. |
| 10:14 | 4 |        But, Your Honor, the fundamental point is, we've |
|   | 5 |   come to this Court for directive and guidance.  We don't |
|   | 6 |   think the Ninth Circuit has foreclosed the Court's directive |
|   | 7 |   as to where the money should go and whether or not the Court |
|   | 8 |   essentially holds the money pending disposition of these |
|   | 9 |   competing claims. |
| 10:15 | 10 |        THE COURT:  Why would the Court do that? |
| 10:15 | 11 |        MR. ZELLER:  I'm sorry? |
| 10:15 | 12 |        THE COURT:  Why would the Court do that? |
| 10:15 | 13 |        MR. ZELLER:  Well, I think the Court would want to |
|   | 14 |   do that because it is going to proliferate the litigation |
|   | 15 |   otherwise. |
| 10:15 | 16 |        THE COURT:  This litigation's going on for a while |
|   | 17 |   anyway, Counsel.  I'm not too concerned. |
| 10:15 | 18 |        MR. ZELLER:  The purpose of interpleader |
|   | 19 |   fundamentally is to avoid exactly that scenario where you |
|   | 20 |   have competing claimants to a fund.  And we're entitled, we |
|   | 21 |   believe, under the interpleader statute, to avail ourselves |
|   | 22 |   of that to avoid the complexity of these competing claims. |
| 10:15 | 23 |        And part of the interpleader statute itself -- and |
|   | 24 |   this is reflected in the *Mack* case, Your Honor -- is avoid |
|   | 25 |   saddling the stakeholder with additional costs and having to |

10:15

1    defend where it doesn't really have a stake in the outcome.

2           To us, to Mattel, we're indifferent as to who gets

3    the money.  We will follow the Court's directive.  The

4    logical process by which to do that here is an interpleader

5    action and that's what's reflected in the *Mack* decision.

6    But even the fact of -- and I hear the Court's point about

7    why should the Court care.  But that is the fundamental

8    reason why Congress implemented the interpleader statute,

9    is -- is to avoid further proliferation of litigation, as

10   well as imposing unnecessary costs, from our perspective,

11   both on the Court and on us, as the stakeholder, where it

12   does not matter fundamentally who we pay.  Obviously, we are

13   paying that money.

10:16

14          THE COURT:  Well, both parties have -- and I don't

15   mean this -- well, yes, I do -- both parties haven't seemed

16   to be too concerned about costs up to this point, neither

17   Mattel nor the defense.  You've been well-funded on both

18   sides.  The fees have been astronomical.

10:16

19          MR. ZELLER:  Well, we -- certainly, Your Honor, we

20   have tried to avoid unnecessary litigation over issues that

21   don't concern us.  The issue of who gets the money does not

22   concern us.  We have received letters from insurers and from

23   Orrick, all of whom claim that is their money.  And that is

24   the purpose of interpleader.

10:17

25          I -- I don't think, Your Honor, that the Court

LACV 04-9049 DOC – 2/26/2013 – Item No. 43

13

```
 1    just has broad discretion to say -- decline jurisdiction

 2    over an interpleader action where it is met.  All that MGA

 3    cites for that proposition are cases where a court has

 4    decided not to award attorneys fees, which is a separate

 5    issue, and that's just a particular form of relief.  Or they

 6    cite, for example, a laches case, which this couldn't

 7    possibly apply here.

 8              But, fundamentally, Your Honor, we think that this

 9    is governed by the Mack case where the statutory

10    requirements for interpleader are met, and this is the

11    logical course to follow.

12              And it does go straight to the purpose of

13    interpleader in trying to bring the kind of -- the claims

14    under the umbrella of one action so it can be orderly

15    adjudicated.

16              THE COURT:  We'll come back for another round.

17    Just a moment.

18              Ms. Estrich, do you have anything you would like

19    to add?

20              MS. ESTRICH:  No.

21              THE COURT:  Let me go down the line, then.

22              Would you state your name again.

23              MS. JACOBS:  Lisa Jacobs.

24              THE COURT:  Please.

25              MS. JACOBS:  Your Honor, we will agree with Mattel
```

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 10900-2   Filed 08/12/13   Page 15 of 103   Page ID #:329984
LACV 04-9049 DOC - 2/26/2013 - Item No. 43

14

1    that the Ninth Circuit didn't --

10:18    2             THE COURT:  Who do you represent again?

10:18    3             MS. JACOBS:  Sorry.  Orrick, Herrington and

4    Sutcliffe.

10:18    5             -- that the Ninth Circuit directive doesn't

6    preclude an interpleader action in this case.  And we think

7    it's appropriate here because the judgment -- the award of

8    attorneys fees was for the defense against Mattel's

9    copyright claims.  That includes the fees incurred by

10   Orrick, Herrington and Sutcliffe, a substantial portion

11   which have not been paid.

10:18    12            Orrick has a claim in excess of $30 million

13   against MGA that's currently pending in arbitration and has

14   obtained a $23 million lien from the arbitration panel to

15   secure a portion of that claim, and that lien is on this

16   judgment.

10:18    17            The insurance carriers are also claiming an

18   entitlement to these funds, and the appropriate -- we think

19   the most fair result here would be for the Court to grant

20   Mattel's application to allow them to interplead the funds

21   and to adjudicate the opposing adverse claims against these

22   funds.

10:19    23            THE COURT:  Okay.  Thank you very much.  We'll

24   come back for a second round.

10:19    25            Counsel?

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

15

| | | |
|---|---|---|
| 10:19 | 1 | MR. CHATTERJEE:  Your Honor, I was assisting |
| | 2 | Ms. Jacobs.  I'm with Orrick.  I'll be... |
| 10:19 | 3 | THE COURT:  Okay.  Any parties in the back that |
| | 4 | are going to speak? |
| 10:19 | 5 | All right.  Ms. Keller, once again.  I know who |
| | 6 | you represent, but for the record. |
| 10:19 | 7 | MS. KELLER:  Yes, Your Honor.  Jennifer Keller on |
| | 8 | behalf of the MGA parties. |
| 10:19 | 9 | Your Honor, we've heard a lot here about how this |
| | 10 | case would serve the classic purpose of interpleader, but |
| | 11 | that's just not the case.  Interpleader -- an interpleader |
| | 12 | action requires the stakeholder to show the existence of |
| | 13 | competing claims against the stakeholder to the stake being |
| | 14 | deposited with the Court. |
| 10:20 | 15 | What you have here really is MGA is the sole |
| | 16 | creditor of Mattel.  And in bringing the interpleader, what |
| | 17 | Mattel is saying is, "Well, MGA's got all these creditors |
| | 18 | out here that are gonna go after MGA, so we're gonna |
| | 19 | interplead the funds."  But that's not how it's supposed to |
| | 20 | work. |
| 10:20 | 21 | The purpose of interpleader is to protect a party |
| | 22 | that wants to make legitimate payment to the claimants, but |
| | 23 | has competing claims.  And that's why, when the Court looks |
| | 24 | at these cases that have been cited, they're insurance |
| | 25 | cases. |

DEBBIE GALE, U.S. COURT REPORTER

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

16

10:20   1        For example, you have life insurance:  Somebody

2   dies, and there are competing claims to who's the

3   beneficiary of the policy.  The insurance carrier,

4   confronted with those competing claims against it,

5   interpleads the funds.  The *Mack* case that Mr. Zeller relied

6   on is another insurance case.  And it's another case where

7   there were competing claims against an insurance policy.

10:21   8        I mean, that has some particular twists and turns

9   because it involved the owner of a 401K plan, who was in the

10   process of divorcing his wife, had stipulated to a court

11   order naming her as an alternate plan payee; but before the

12   court -- the order could be entered, the plan owner murdered

13   his wife and shot the state court judge presiding over the

14   matter.  And the state court ultimately entered an order

15   nunc pro tunc transferring the plan payment to the wife.

16   Now, while it was being appealed, the trustee came in and

17   filed an interpleader on behalf of the estate.

10:21   18       So again, you have an insurance policy, you have

19   multiple claimants coming after that policy.  The

20   stakeholder is the person subject to those claims.

10:21   21       That isn't true here.  It just isn't true.  There

22   is one creditor.  Right now there is one claimant to these

23   funds that the Ninth Circuit has designated should go to

24   MGA, as the Court noted.  And MGA may have to fight it out

25   later with those creditors, whether it's Orrick, whether

DEBBIE GALE, U.S. COURT REPORTER

|        |    |                                                                  |
|--------|----|------------------------------------------------------------------|
|        | 1  | it's the insurance carriers; but those are not claimants         |
|        | 2  | against Mattel.  The purpose of interpleader would be to         |
|        | 3  | protect Mattel from having these -- having people come after     |
|        | 4  | it.                                                              |
| 10:22  | 5  | So what are the causes of action that anybody                    |
|        | 6  | would have here, that these people would have against            |
|        | 7  | Mattel?  Nobody can really tell us that because there aren't     |
|        | 8  | any.                                                             |
| 10:22  | 9  | Orrick hasn't even made -- hasn't even laid out in               |
|        | 10 | its moving papers what cause of action it would have against     |
|        | 11 | Mattel.  Mr. Zeller, in what seems to me to be a "Hail Mary"     |
|        | 12 | pass just raised the concept Orrick is trying to set up a        |
|        | 13 | tortious interference claim.  That is stretching things to       |
|        | 14 | the breaking point.                                              |
| 10:22  | 15 | If following a Court order can subject somebody to               |
|        | 16 | a tortious interference claim, we're gonna have a whole new      |
|        | 17 | body of case law in California, because that's -- that is        |
|        | 18 | not -- in no way could this set up a tortious interference       |
|        | 19 | claim.                                                           |
| 10:23  | 20 | So the relief that's being -- you know, there are               |
|        | 21 | a couple of phantom allegations that there would be claims       |
|        | 22 | made.  You know, we'll -- the carriers -- the Court will         |
|        | 23 | remember there are three carriers here.  Only one of them,       |
|        | 24 | very belatedly, ever even tried to assert any kind of claim      |
|        | 25 | against Mattel, and the Court dismissed that claim.  The         |

1    other two didn't even do that.  So the carriers have no

2    claims against Mattel.

10:23    3         Orrick has no claim against Mattel.  Orrick refers

4    to a lien, but that's a -- a partial lien by arbitrators

5    before any evidence has been heard.  That has not even been

6    confirmed by the Superior Court.  But that's really a side

7    issue.  Be that as it may, whether that lien ever matures,

8    we don't know what would the cause of action be against

9    Mattel because the lien would be against MGA.

10:24   10         So I think the Court has it exactly right.  The

11    Ninth Circuit didn't preclude the Court from doing anything

12    in its order, but neither did it say, "Oh, and as a

13    directive to the trial court, by the way, there may be

14    multiple claims to these funds and the Court may want to

15    entertain an interpleader."  Of course, it didn't, because

16    none of the case law would support it.

10:24   17         What -- I mean, why is Mattel concerned at all

18    with any of this?  And the Court is right that interpleader

19    is an equitable remedy.  And one of the requirements of

20    interpleader -- the first requirement, of course, is that

21    the party asking for it has to show that it's subject to

22    these competing claims, which Mattel can't show because

23    Mattel is merely a judgment debtor of MGA and nothing more.

24    It's not in the position of an insurance carrier that has

25    multiple competing claims flying at it, and should it pay

DEBBIE GALE, U.S. COURT REPORTER

1    one and not the others, is gonna be on a hook later for a

2    lawsuit.  It's not in that position.

3             But the second thing is, because this is an

4    equitable remedy, the Courts have required that there be a

5    finding of good faith on behalf of those asserting the

6    claim.  And those who have acted in bad faith to create a

7    controversy over the stake may not claim the protection of

8    interpleader.  And that's exactly what's happened here.

9             The Court made reference to the history of this

10   case.  And the Court knows that MGA has been subjected to

11   what could only be described as scorched-earth litigation.

12   And while it's true that MGA has been required to spend a

13   lot of money to defend itself, it's got to be a third or

14   less of what Mattel has spent trying to put MGA out of

15   business.

16            Now, the Court knows that Ninth Circuit, in

17   issuing its mandate, stated that the claim -- our claims

18   have to be dismissed without prejudice.  The Ninth Circuit

19   is clearly signaling that it expects us to file our claims

20   again.  And, in fact said so at oral argument in the Ninth

21   Circuit.  We were even told by one of the judges that, if it

22   were she, she'd be running and filing the claim right there.

23            THE COURT:  Judge Wardlaw?

24            MS. KELLER:  Yes, Your Honor.

25            So the "Ninth" knows we're gonna come back to

DEBBIE GALE, U.S. COURT REPORTER

1    fight another round, because this dismissal is being ordered

2    on purely technical grounds, a compulsory counterclaim

3    ground, and knows that we can live to fight another day.

10:26    4             And Mattel knows that, too.  So what are they

5    doing?  They are trying to tie our hands again.  They're

6    trying to tie up this money so MGA will not have it to use

7    to defend themselves.  And every single alleged claimant

8    here is doing the same.

10:27    9             The carriers know there's ongoing litigation.

10    Everybody knows that MGA has been drained and needs the

11    funds to continue fighting.  We're fighting on three fronts:

12    We're fighting the carriers.  We're fighting Mattel.  And,

13    unfortunately, there's a controversy now involving Orrick,

14    as well.

10:27    15             So we're being ganged-up on, essentially.  We're

16    being ganged-up on.  This is not acting in good faith.  To

17    say something like Orrick is trying to set up a tortious

18    interference claim, I think, right there shows you this

19    isn't in good faith.

10:27    20             THE COURT:  Well, you -- "ganged-up on," you're

21    talking about equity.  I can't look behind the curtain.  But

22    the number of law firms, just as a record, coming before

23    this Court, is rather extraordinary on MGA's part.

10:28    24             MS. KELLER:  Well, MGA has had to -- has had to

25    retain counsel to force -- try to force the insurance

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

21

1  carriers to live up to their obligation.  We didn't have a

2  choice there because, originally, our carriers said, "No,

3  we're not gonna defend you."  So that's not our fault.  And

4  MGA wasn't the entity that initiated all this litigation to

5  begin with.  It was Mattel.  So that's not our fault.  Most

6  of our expenses have been incurred in a purely defensive,

7  posture, as the Court knows, from the copyright claims' fee

8  award.  So we've been defending ourselves as best we can.

9       All I'm saying, Your Honor, is this is purely

10  discretionary equitable relief, if certain prerequisites are

11  met; and one is, Mattel has to show how all these claimants

12  can come after it and recover against it.

13       THE COURT:  What about the argument that the

14  bond's excessive at the present time, that this bond should

15  be reduced?

16       MS. KELLER:  Well, I think the Court looks to the

17  award that the Ninth Circuit has upheld so far.

18       THE COURT:  $157 million -- or $137 million.

19       MS. KELLER:  Yes, Your Honor.

20       THE COURT:  137-, isn't it?

21       MR. ZELLER:  137.8, including interest.

22       MS. KELLER:  And that's really not our focus

23  today.

24       THE COURT:  Sure it is.

25       There's two motions before the Court.  There's one

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| | 1 | that concerns interpleader and there's one concerning the |
| | 2 | excessiveness of the bond.  And it is before the Court. |
| | 3 | It's going to get decided. |
| 10:29 | 4 | So let me toss that back to you:  What should the |
| | 5 | Court's ruling be? |
| 10:29 | 6 | MS. KELLER:  We submit on that, Your Honor -- on |
| | 7 | that ruling -- on whether the bond is excessive. |
| 10:29 | 8 | THE COURT:  You know how I'm reading that: |
| | 9 | 137.8 million? |
| 10:29 | 10 | MS. KELLER:  I do. |
| 10:29 | 11 | THE COURT:  Now, I'm giving you a chance to make |
| | 12 | the argument, so why don't you take your time; just walk |
| | 13 | around for a moment.  Make sure, 'cause this is your time. |
| | 14 | There's no rush. |
| 10:29 | 15 | But a submission on that sends a clear signal to |
| | 16 | me that there's really no opposing argument to an argument |
| | 17 | about this being an excessive bond at "137," and what's left |
| | 18 | in play is the interpleader. |
| 10:30 | 19 | MS. KELLER:  Well, I can tell you, Your Honor, |
| | 20 | what we intend to do.  We intend to file with this Court a |
| | 21 | motion to be permitted to amend our complaint, and for the |
| | 22 | Court to rule nunc pro tunc, as it was prepared to rule at |
| | 23 | the time the Court made its ruling on the compulsory |
| | 24 | counterclaim. |
| 10:30 | 25 | The Court may recall that MGA asked for two forms |

DEBBIE GALE, U.S. COURT REPORTER

1    of relief:  We asked for a finding of permissive -- a

2    permissive finding and a compulsory counterclaim finding.

3    And what the Court said is I think the requirements for

4    permissive counterclaim have been met and here are the

5    reasons I think that, but I don't need to reach that issue

6    because I'm finding that the grounds for a compulsory

7    counterclaim have also been met.  And so the Court made

8    every finding necessary at that time to allow a permissive

9    counterclaim.

10   (10:30)       What we intend to ask the Court to do is to make

11   that nunc pro tunc finding of a permissive counterclaim, and

12   then to allow us to proceed with the jury's -- understanding

13   that a jury has already decided the key issues -- to allow

14   us to proceed on the statute of limitations alone, and try

15   that issue.

16   (10:31)       THE COURT:  That was Judge Wardlaw's initial

17   position --

18   (10:31)       MS. KELLER:  That's right.

19   (10:31)       THE COURT:  -- after your argument.

20   (10:31)       MS. KELLER:  That's right.  And I don't think that

21   the -- unfortunately, the issue was never fleshed out of the

22   permissive versus compulsory counterclaims, right then, when

23   she said that.  But clearly she was on that wavelength, as

24   well.

25   (10:31)       THE COURT:  I don't think Judge Trott agreed with

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

24

|       |    |                                                           |
|-------|----|-----------------------------------------------------------|
|       | 1  | her.                                                      |
| 10:31 | 2  | MS. KELLER:  Well, I think that we'll have to            |
|       | 3  | brief that obviously.  But should the Court agree to let us |
|       | 4  | proceed and simply try the issue of the statute of       |
|       | 5  | limitations --                                            |
| 10:32 | 6  | THE COURT:  What happens if I did that?  Let's          |
|       | 7  | just play that out for a moment.  Do you have time for a  |
|       | 8  | story?                                                     |
| 10:32 | 9  | On *Anna Nicole Smith*, the only time I've ever         |
|       | 10 | stipulated to an interloc' was a case involving a case of |
|       | 11 | first impression.  We had no bankruptcy law in the        |
|       | 12 | particular area of withdrawal or the standard since 1947 -- |
|       | 13 | the wild west.  And both counsel came to me after a very  |
|       | 14 | difficult decision.  It was 50.1 percent to 49.9 percent. |
|       | 15 | It could have gone either way.                            |
| 10:32 | 16 | And I withdraw the reference from the bankruptcy         |
|       | 17 | court, decided this should be a *de novo* proceeding and that |
|       | 18 | there should be a standard set.  Now, I sent that up to the |
|       | 19 | Circuit.  And what I didn't realize in my naiveness, back in |
|       | 20 | 1999, was the following:  That you have a screening panel. |
| 10:32 | 21 | And so back the case came, and the message to           |
|       | 22 | young Judge Carter was:  "You're right.  Proceed."        |
| 10:32 | 23 | So then five months later, after a trial, guess         |
|       | 24 | what?  I got reversed by Circuit on that issue; got upheld |
|       | 25 | on the Supreme Court 8-0 or 9-0, actually.                |

DEBBIE GALE, U.S. COURT REPORTER

10:33   1        We seem to be rewriting bankruptcy law, but it

2    taught me a lesson.  If I followed that advice -- and this

3    is very premature, but this is interesting -- if I followed

4    that advice, would I then let it go up on an interloc'.

5    Because I certainly wouldn't want to waste the Circuits

6    time.  And on a stipulated interloc', does it mean anything

7    anyway, if it comes to a screening panel?

10:33   8        I mean, I would want it to go back in front of

9    Judge Wardlaw, Judge Trott and Judge Kozinski, and they say

10    "Judge Carter, you're absolutely wrong.  You read this wrong

11    and just don't proceed," or "You know something.  We're

12    gonna hold this in abeyance."

10:33  13        You see this interloc' causes me a problem because

14    it's not really an interloc' that gives discretion when it

15    comes to a panel.  And I learned a hard lesson that way.

10:33  16        MS. KELLER:  I understand what you're saying,

17    Your Honor.

10:33  18        THE COURT:  Eventually, I was right, by the way,

19    with the Supreme Court.  But it was a little painful, in

20    front of my own Circuit, on New Year's Eve watching on the

21    bottom of a screen, "Judge reversed in California," right

22    below the Rose Bowl in Colorado, by the way.  And I'm just

23    joking with you, but I'm not.

10:34  24        So you see the point.  And I'm not gonna get there

25    yet.  It's interesting -- and I'm being forewarned now.

1    Okay?  But it's interesting how I handle that, if I ever get

2    there, because I don't know what an interloc' means or what

3    it even gives me.

10:34    4         MS. KELLER:  Well, all we know right now is that

5    the Circuit has dismissed without prejudice, which means we

6    can refile our claims.  And if we refile and --

10:34    7         THE COURT:  Here's the box you're really in -- I

8    mean, if we're really discussing this -- the box you're

9    really in is you've got a state law claim.  And to get it

10    back to federal court gets to be an interesting proposition

11    on a misappropriation claim coming back to federal court on

12    a state law claim.

10:34    13        You've got to hook it up to some federal claim,

14    and that's gonna be a really interesting proposition.  So

15    from my standpoint, it's very logical what you're attempting

16    to do.  You may not have any other choice 'cause it's gonna

17    go over to some state court judge who's gonna be in shock

18    and awe, I think.

10:35    19        MS. KELLER:  Well, that all remains to be briefed.

10:35    20        My only point was, should the Court grant our

21    motion, then I think that full bond is back in play, because

22    we have a liquidated amount that a jury's already decided

23    and that the Court has already decided:  An exemplary

24    damages claim.  And so --

10:35    25        THE COURT:  Now let's play that out.  Let's

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

27

```
       1    assume, for a moment, that I take that representation, which

       2    I do.  How soon would this be filed?  What's the detriment

       3    to Mattel?  How long do we play this out where Mattel's

       4    paying on this bond, et cetera?  It might be a very wise

       5    thing to do.  I don't know yet.

10:35  6              MS. KELLER:  The request --

10:35  7              THE COURT:  By the same token, I don't want Mattel

       8    harmed as this drags along with an excessive bond, you know,

       9    or a hoped-for victory.

10:35  10             MS. KELLER:  We will file today.

10:35  11             THE COURT:  Oh, that's pretty quick.

10:35  12             MS. KELLER:  May I have a moment, Your Honor?

10:35  13             THE COURT:  Maybe tomorrow?

10:35  14             MS. KELLER:  Your Honor, the only thing that we

       15   need -- as learned counsel has pointed out -- is we do need

       16   relief from the meet-and-confer rule in order to file today.

       17   So we would ask that the Court give us leave to go ahead and

       18   file that, and then set a briefing schedule.

10:36  19             THE COURT:  Well, I'd want to talk to Mattel about

       20   that.  Mattel's gonna take the position that, "Judge, we

       21   shouldn't even get to that point.  You should decide this

       22   now on the excessive bond."

10:36  23             And, if you're inclined to do that, they would

       24   probably stipulate to waiving the meet-and-confer 'cause

       25   it's costing them money.  Okay?
```

DEBBIE GALE, U.S. COURT REPORTER

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

28

| | | |
|---|---|---|
| 10:36 | 1 | MS. KELLER:  And, Your Honor, in any event, no |
| | 2 | matter what the Court decides on the bond, I would ask for |
| | 3 | that -- for leave to file today only because we do have |
| | 4 | statute of limitations issues that are very sensitive.  And |
| | 5 | I don't think it would make sense for us to wait. |
| 10:36 | 6 | THE COURT:  I don't see that before the Court in |
| | 7 | any briefing.  This is just coming to me. |
| 10:36 | 8 | MS. KELLER:  We've been working on it, Your Honor. |
| | 9 | We will file it today. |
| 10:36 | 10 | THE COURT:  Okay.  But this is my first hearing of |
| | 11 | this. |
| 10:36 | 12 | MS. KELLER:  I understand. |
| 10:36 | 13 | THE COURT:  I'm kind of doing that by the fly -- |
| | 14 | just, "Judge, grant us this today." |
| 10:36 | 15 | MS. KELLER:  No.  We're not asking for you to |
| | 16 | grant it today.  What I'm saying is I'd like you to give us |
| | 17 | leave to file it today and waive the 10-day rule. |
| 10:36 | 18 | THE COURT:  So you can file it today. |
| 10:37 | 19 | MS. KELLER:  Yes.  But Court was asking about the |
| | 20 | full bond.  And what I'm suggesting is that -- |
| 10:37 | 21 | THE COURT:  'Cause if you prevail, then that |
| | 22 | bond's an appropriate bond. |
| 10:37 | 23 | MS. KELLER:  That's right. |
| 10:37 | 24 | THE COURT:  Because if this was, in fact, |
| | 25 | permissive, and I'd made those findings and went that way, |

DEBBIE GALE, U.S. COURT REPORTER

```
 1    then -- okay.
 2              MS. KELLER:  Yes.
 3              THE COURT:  Okay.
 4              MS. KELLER:  But back to our central point,
 5    Your Honor --
 6              THE COURT:  Did Judge Kozinski urge all of you to
 7    settle this?  I seem to recall he did.
 8              MS. KELLER:  Your Honor --
 9              THE COURT:  Let the record reflect there's
10    hilarious laughter in the courtroom right now.
11              MS. KELLER:  It's rueful laughter, Your Honor.  I
12    don't think probably the Court wants me to go into why it's
13    so rueful right now.  But we have tried.
14              THE COURT:  Okay.  Well, I'm sure Mattel would
15    take the position they've tried also so --
16              MR. ZELLER:  We did.
17              THE COURT:  -- everybody's on good footing.
18              MS. KELLER:  An offer of zero is, generally, not
19    considered to be a settlement offer, Your Honor --
20              MR. ZELLER:  For the record, Your Honor.
21              MS. KELLER:  -- in most minds.
22              THE COURT:  I'll strike that.
23              MR. ZELLER:  This is -- they started a position of
24    $50 million more than the judgment.
25              THE COURT:  Let's strike this whole conversation
```

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

30

| | | |
|---|---|---|
| | 1 | concerning fifty, zero, whatever.  It's inconsequential. |
| 10:38 | 2 | MS. KELLER:  I think really the central issue is |
| | 3 | that this isn't appropriate for interpleader.  If this is |
| | 4 | appropriate for interpleader, when you think about it, then |
| | 5 | any time anybody's got a judgment -- |
| 10:38 | 6 | THE COURT:  I'm not on interpleader now.  I'm back |
| | 7 | to excessive bond, and I'm going to press you on that. |
| 10:38 | 8 | MS. KELLER:  May I have one moment? |
| 10:38 | 9 | THE COURT:  Yeah.  I want you to take your time |
| | 10 | with that.  There's two issues before the Court.  One's |
| | 11 | interpleader, and one's the excessiveness of the bond and |
| | 12 | that argument.  And that wasn't really covered by Mattel. |
| 10:38 | 13 | MS. KELLER:  May I have one moment to talk with my |
| | 14 | client? |
| 10:38 | 15 | THE COURT:  I want you to spend a little bit of |
| | 16 | time. |
| 10:38 | 17 | *(Ms. Keller and Mr. Larian confer.)* |
| 10:39 | 18 | MS. KELLER:  We'll submit, Your Honor. |
| 10:39 | 19 | THE COURT:  Okay.  All right.  Then anything |
| | 20 | further? |
| 10:39 | 21 | MS. KELLER:  No, Your Honor, I don't think so, |
| | 22 | unless the Court has any questions. |
| 10:39 | 23 | THE COURT:  No.  Well, I may, but not now.  I |
| | 24 | think I've asked them as I've gone. |
| 10:39 | 25 | Counsel, are you here? |

DEBBIE GALE, U.S. COURT REPORTER

10:39  1      MR. BIDART:  Your Honor, only if you wish to take

2  argument on the insurance-related issues, otherwise I just

3  join.

10:39  4      THE COURT:  I want to take the insurance-related

5  issues --

10:39  6      MR. BIDART:  Now?

10:39  7      THE COURT:  -- at some point.

10:39  8      Yeah, I think so.  I want to go right through and

9  then come back so Mattel has a chance to respond.

10:39  10      MR. BIDART:  Good morning, Your Honor.  Mike

11  Bidart.  As you'll recall, we represent the interest of MGA

12  in connection with the insurance matters.

10:39  13      The only specific point I wanted to make with

14  respect to the claims of the insurance companies is that

15  each of them sought intervention in this action, and you

16  denied them intervention.  The Ninth Circuit took argument

17  from them, both in their briefing and oral argument, where

18  they argued to the Ninth Circuit that, if the Ninth Circuit

19  were not to grant the relief they requested on the

20  intervention, that the result would be that MGA would be

21  paid the money; they would have full access to the money;

22  and that the carriers would be deprived an opportunity to

23  assert their claims against that fund of money.

10:40  24      And against that backdrop, the Ninth Circuit

25  affirmed Your Honor.  So we're here today, where they're

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

32

| | |
|---|---|
| | 1   seeking rights against this same pot of money where |
| | 2   intervention was denied.  The Ninth Circuit affirmed this |
| | 3   Court.  And they're now seeking to avoid and circumvent the |
| | 4   orders that have already been made. |
| 10:40 | 5   What they have is a claim for reimbursement, which |
| | 6   is not yet even off the ground.  It was stayed.  We just |
| | 7   filed a status, as the Court required, within 14 days of the |
| | 8   mandate to advise the court what the Ninth Circuit did.  And |
| | 9   there'll be a time for that litigation to recommence. |
| | 10  There's been no discovery.  There's been no law and motion. |
| | 11  It's an unperfected and unliquidated claim of three |
| | 12  carriers. |
| 10:41 | 13  Furthermore, there's the action on the duty to |
| | 14  defend adjudication by this Court on the Fourth Amended |
| | 15  Answer and Counterclaim, which is just now being briefed |
| | 16  before the Ninth Circuit -- hasn't been argued, hasn't been |
| | 17  set for oral argument.  And the rights and obligations of |
| | 18  MGA vis-a-vis their insurance companies has not even been |
| | 19  fully adjudicated by the Ninth Circuit. |
| 10:41 | 20  THE COURT:  Is the argument concerning the |
| | 21  excessiveness of this bond premature? |
| 10:41 | 22  MR. BIDART:  That I don't know.  I'll be honest |
| | 23  with the Court:  I didn't deal with the legal issues around |
| | 24  the bond, and I would defer to counsel in the underlying |
| | 25  matter. |

DEBBIE GALE, U.S. COURT REPORTER

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

33

10:41  1          But certainly, as to the claims of the insurance

2    companies, it's premature because the rights haven't been

3    adjudicated.

10:41  4          THE COURT:  How do you pursue any claims against

5    Mattel?

10:41  6          MR. BIDART:  How would "they"?

10:41  7          THE COURT:  How do "you"?  How do the insurance

8    carriers pursue claims against Mattel?

10:41  9          They're all against MGA, aren't they?

10:41 10          MR. BIDART:  That's correct.  That's the whole

11    point.  And they -- if they prevail -- and we -- again, we

12    have our defenses, trust me, to that claim.

10:42 13          THE COURT:  Once again, I'll come back to my

14    question:  Why should this need more than $137.8 million?

10:42 15          MR. BIDART:  Perhaps not.

10:42 16          But, again, I'll rely on Counsel for MGA in the

17    underlying proceedings.

10:42 18          THE COURT:  She submitted it.

10:42 19          I'm asking you.

10:42 20          MR. BIDART:  Yes.  I'll submit on that, as well.

10:42 21          THE COURT:  Okay.  You're submitting.  Okay.

10:42 22          Okay.  Counsel.

10:42 23          MS. FIELD:  Thank you, Your Honor.  Susan Field

24    for Crum & Forster.  I'd like to address a couple of

25    different issues, if I could.

DEBBIE GALE, U.S. COURT REPORTER

10:42 1    On the last comment, on the duty to defend issues,

2 I don't think that has anything to do with the issues that

3 are presented here.  But I would note that, if the Ninth

4 Circuit reverses, the insurance will be only in a better

5 position against MGA, but it doesn't necessarily affect

6 their position versus Mattel.

10:42 7    With respect to the intervention, I feel a little

8 like that commercial -- the "not exactly" commercial.

10:42 9    THE COURT:  The interpleader?

10:42 10    MS. FIELD:  The interpleader -- no, the

11 intervention.  Mr. Bidart just mentioned that there had been

12 an attempt to intervene.  It had gone to the Ninth Circuit.

13 The Ninth Circuit had taken certain actions and commented

14 about certain arguments that have been made.

10:43 15    I think it's critical to note that there were a

16 number of arguments that were made at the Ninth Circuit, and

17 one of them had to do with the Court's substantive rulings

18 on that motion to intervene.  And, very clearly, the Ninth

19 Circuit ruled that this Court didn't have jurisdiction to

20 make those rulings in the first place.

10:43 21    Now, the Ninth Circuit could have affirmed those

22 rulings, just as it did affirm the ultimate ruling.  But the

23 Ninth Circuit chose not to.  So when Ms. Keller says we have

24 to look at what the Ninth Circuit is signaling, the Ninth

25 Circuit understood our position that the carriers have an

```
10:44
```

1    absolute right of subrogation against Mattel.  And this

2    Court held that they didn't have a right of subrogation.

3    But that order is no longer a valid order, given that the

4    Ninth Circuit held that there was no jurisdiction to make

5    that order in the first place.

6    So when we talk about -- going back to some of the

7    earlier comments, when we talk about what are the competing

8    claims against the stakeholder and that nobody has expressed

9    what those claims are, I will be clear:  Crum & Forster has

10   a subrogation claim against Mattel based upon the tens of

11   millions of dollars it has paid for the defense of MGA that

12   form the absolute basis for this Court's award of

13   $137 million.

14   Now, there is certainly a claim being presented by

15   Orrick that their services were part of those bills and they

16   haven't been paid.  And I'm not arguing that they should be

17   paid or should not be paid.  I'm not even arguing that they

18   don't have some claim that they might assert.

19   But what I am saying is that MGA claims it's

20   entitled to all of that money.  I don't believe that they

21   could stand here and tell you, Your Honor, that they're

22   out-of-pocket all that money because I know they can't --

23   not with a straight face.

24   The carriers are entitled to reimbursement or to

25   subrogation, and we believe we're entitled to subrogation,

1    which is why we find ourselves here.  But they are entitled

2    to get back money they paid for the defense of MGA on bills

3    that MGA submitted to this Court and upon which this Court

4    granted $137 million award.  So to the extent there's any

5    confusion at all, I think I can speak for all of the three

6    carriers, that they believe they have a right of

7    subrogation.  And this Court's order -- previous order does

8    not defeat that.

10:45    9         Now, you may find at some later time that the

10    carriers don't have a right of subrogation, but that, as has

11    been said in these papers, is part of the second phase and

12    that is where you could make this order.

10:46    13        Now, we also have informed the Court that, because

14    the Ninth Circuit reversed based upon jurisdiction and this

15    issue is still live, when this Court resurrects the other

16    litigation, it is our intention to come in and ask for the

17    right to amend the complaint to add Mattel as a party.

10:46    18        And Mattel will then be subject to that

19    subrogation claim.  And the law is that a party who's

20    subject to a subrogation claim, who pays it out, has the

21    potential for being exposed again.  So I think it's fair to

22    say that the carriers clearly believe they have a

23    subrogation right, and the Mattel's analysis of the

24    potential of that is a fair one.

10:46    25              THE COURT:  Does that -- I want to be naive.  Then

1    does that somehow cause this bond to be in excess of

2    $137.8 million, from your standpoint?

10:47   3            MS. FIELD:  Not as far as I can see, Your Honor.

10:47   4            THE COURT:  Okay.  I don't either.

10:47   5            MS. FIELD:  The last comment is one, I think, of

6    discretion.  And counsel for MGA indicated that there're

7    equitable reasons and went into the issue -- some of the

8    issue there.  I think there are clearly equitable, logical

9    efficiency reasons for this Court to go ahead and allow for

10   this interpleader.

10:47   11           Why should this Court exercise its jurisdiction?

12   Because -- I'll start with Orrick, on their behalf:  The

13   lawyers have done work for which they haven't been paid.

14   And those very bills were the subject of this award.  Now I

15   have to note that, if there is a dispute about whether the

16   lawyers should be paid that amount, then this Court probably

17   should know that, since this Court made an award based upon

18   those bills.  And if those bills are not properly payable to

19   the lawyers, should it be payable to MGA? -- which gets me

20   to the insurance position.  The insurers paid funds for

21   those bills.

10:48   22           Now, maybe they're not entitled to all of the

23   money.  Maybe Orrick's not entitled to all of the money that

24   they ask for.  Maybe MGA isn't entitled to all of the money

25   they ask for.  But the fact is, the insurance companies paid

DEBBIE GALE, U.S. COURT REPORTER

10:48 10:48 10:49 10:49 10:49 10:49 10:49

for work that was submitted to Your Honor and upon which you ruled, on the understanding that those were proper bills and they were paid by someone.

And the last is that MGA claims it has a judgment. And Your Honor pointed out that the mandate suggested that the money should be paid to MGA. I would comment that that argument is the same for any situation in which there is a judgment because every judgment says the parties *(sic)* should be paid to the party who ultimately succeeded and got the judgment.

And the Ninth Circuit simply affirmed this Court's -- the judgment that was entered. So the parties are in no different position than had no appeal been taken on this one issue, which is, it's affirmed.

So the difference between having it gone up and come back, or the situation where MGA has a judgment, is not different than any other circumstance in which the party claiming that they should have all the money has a judgment. And if that were the rule, you could never have an interpleader where there is a judgment.

So I think that I've addressed all of the issues.

THE COURT: All right. Just a moment.

All right. Thank you.

MS. FIELD: Yes. I guess I could put one more thing in terms of efficiency, Your Honor.

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

39

| 10:49 | 1 | There is that separate reimbursement action that |
| | 2 | is predicated on this same claim.  I think that those |
| | 3 | actions would be either related or combined in some fashion, |
| | 4 | so we wouldn't be litigating that as well.  But we could |
| | 5 | talk about that at a later time.  But from another issue, |
| | 6 | and avoiding multiplicity of litigation, I think that the |
| | 7 | issues would be combined. |
| 10:50 | 8 | THE COURT:  Counsel. |
| 10:50 | 9 | MR. BIDART:  Thank you. |
| 10:50 | 10 | THE COURT:  No.  Mr. Bidart, there's other |
| | 11 | counsel. |
| 10:50 | 12 | MR. BIDART:  Oh.  Okay. |
| 10:50 | 13 | MR. SHERIDAN:  Your Honor, Mark Sheridan on behalf |
| | 14 | of the Chartis entities. |
| 10:50 | 15 | MGA began by saying that the insurance carriers |
| | 16 | have not asserted a claim against Mattel.  That's not |
| | 17 | correct, Your Honor.  In the record, in Mr. Zeller's |
| | 18 | declaration, Exhibit E, is my client's claim against Mattel. |
| | 19 | It is a subrogation claim. |
| 10:50 | 20 | And Your Honor asked, "How do the carriers pursue |
| | 21 | Mattel?  Why isn't it a claim against MGA?"  And the answer |
| | 22 | is found in the policies issued by my clients and by the |
| | 23 | other carriers.  And it provides, |
| 10:50 | 24 | "If any insured has rights to recover |
| | 25 | all or part of any payment we have made |

DEBBIE GALE, U.S. COURT REPORTER

1          under this policy, those rights are

2          transferred to us."

10:51  3          Your Honor, the defense fees that they seek are

4    payments made by my client.  The Chartis companies paid tens

5    and tens of millions of dollars to defend MGA in this

6    litigation.  And the award that this Court issued was for

7    those funds.

10:51  8          The policy specifically transfers the rights to

9    those funds to my client.  And thus, if there is a claim

10   against the bond or against Mattel, my client is the holder

11   of that claim at this point in time, not MGA.  That is how

12   we file a subrogation claim against Mattel, and not MGA.

10:51  13         That's all I have, Your Honor.

10:51  14         THE COURT:  Okay.

10:51  15         Counsel.

10:51  16         MR. HANIFIN:  Your Honor, Sean Hanifin.  Unless

17   the Court has questions, I'll join with the comments of

18   Ms. Field.

10:51  19         THE COURT:  Let me turn back to Mattel.  This will

20   be the second round.

10:51  21         I want you to set forth for me how Mattel would be

22   dragged into future litigation if the Court didn't grant

23   interpleader.  How would Mattel be dragged into future

24   litigation?  What's your great fear if the Court didn't

25   grant interpleader?

DEBBIE GALE, U.S. COURT REPORTER

10:52   1          MR. ZELLER:  Well, I think --

10:52   2          THE COURT:  Because it's hard for me -- let me

        3   just finish that thought', cause it's naive.

10:52   4          I don't understand yet the fear on Mattel's part.

        5   I understand the desire for interpleader.  I understand your

        6   legal argument.  I don't understand how you'd be dragged

        7   into future litigation if the interpleader wasn't granted.

10:52   8          MR. ZELLER:  Well, I would say this, Your Honor --

        9   just a couple of responses to that, is, is that what we

       10   really are looking for is the Court's direction:  Clear

       11   guidance what we ought to do.

10:52  12          There has been, of course, a number of competing

       13   claims that have been presented to us, people saying, "Don't

       14   pay MGA.  We have rights to those moneys."

10:53  15          THE COURT:  Just a moment.  Just a moment.

10:53  16          MR. ZELLER:  Now --

10:53  17          THE COURT:  So let me follow up.

10:53  18          If the Court doesn't grant interpleader and you

       19   are paying MGA 137- or $138 million, those parties, it would

       20   seem, would have a difficult time bringing Mattel back into

       21   any future lawsuit.

10:53  22          MR. ZELLER:  If the Court orders us, that's

       23   correct.  And let me even be --

10:54  24          THE COURT:  We've got lots of time now.  I'm going

       25   to repeat that.

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

42

10:54    1           I don't understand, whether interpleader is

     2    granted or not, the future exposure of Mattel to any further

     3    litigation.  And if there is, this is your time to tell me

     4    how that would occur.

10:54    5           MR. ZELLER:  It would occur this way,

     6    Your Honor -- so let me read from *Levin*, which is a

     7    69 Cal.App. 4th case, specifically at page 1287 through

     8    1288.  It's a 1999 case.

10:54    9                "Accordingly, we hold that an insurer

    10                 and the attorneys retained to defend the

    11                 insureds are liable for intentional

    12                 interference with the prospective

    13                 economic advantage of a discharged

    14                 attorney when, after receiving a notice

    15                 of lien for attorney fees and costs

    16                 filed in the case by the discharged

    17                 attorney, they pay his former client and

    18                 the latter's new attorney in settlement

    19                 or in satisfaction of a judgment with

    20                 knowledge of the lien."

10:55   21           That's why Orrick filed the lien in this case.  If

    22    we pay MGA voluntarily, we are going to be sued.  We don't

    23    think it's a valid claim, but we are going to be sued by

    24    Orrick.

10:55   25                THE COURT:  Let's stop there.

DEBBIE GALE, U.S. COURT REPORTER

10:55    1            If you pay, it'll be because I order to you pay.

         2    You're never going to get into a voluntary situation.

         3    You've been in a voluntary situation until you came to the

         4    Court.

10:55    5            Only two things are going to happen here:  Either

         6    interpleader or you're going to be ordered to pay MGA.

10:55    7            MR. ZELLER:  Correct.  Right.

10:55    8            THE COURT:  Now I'm going to say it again.  You

         9    didn't answer my question.  You took me around the path

        10    again.  Answer my question:

10:55   11            How will you be drawn into future litigation if I

        12    order you to pay MGA?

10:55   13            MR. ZELLER:  We would not, Your Honor.

10:55   14            THE COURT:  Okay.  Simple.

10:55   15            MR. ZELLER:  We agree with that.  We need one of

        16    two --

10:55   17            THE COURT:  Counsel -- counsel, we're done.

10:55   18            MR. ZELLER:  Okay.

10:55   19            THE COURT:  We took 15 minutes.  The answer is

        20    self-evident.  You just needed to say it.

10:55   21            Now go on with your argument.

10:55   22            MR. ZELLER:  So just to finish up the point,

        23    Your Honor, we simply need a clear direction.

10:55   24            THE COURT:  You'll have a clear direction.

10:55   25            What difference does it make:  Interpleader or you

DEBBIE GALE, U.S. COURT REPORTER

```
 1    are ordered to pay MGA?  I don't understand the harm to

 2    Mattel.  I'm going to ask you one final time.  You've been

 3    very unclear with me.

 4                MR. ZELLER:  None, Your Honor.

 5                THE COURT:  "None."  Is that your answer?

 6                MR. ZELLER:  Correct.

 7                THE COURT:  Okay.

 8                MR. ZELLER:  If we are "ordered" -- as long as we

 9    have a clear order so we aren't facing claims by other

10    third-parties claiming --

11                THE COURT:  I understand.

12                MR. ZELLER:  -- claiming we've interfered with

13    their rights.

14                THE COURT:  I understand that.

15                MR. ZELLER:  That's why we're here, Your Honor.

16                THE COURT:  Why wouldn't I make either order:

17    Either interpleader or order you to do so?  Why would I

18    leave Mattel subject to future litigation?

19                MR. ZELLER:  And that's why, when I said,

20    Your Honor, at the very outset of all this --

21                THE COURT:  Now, just a moment.

22                MR. ZELLER:  I'm sorry.

23                THE COURT:  Stay right there.

24                You tell me how you would pursue future litigation

25    with Mattel.  Ms. Keller, join your colleague here.  Tell me
```

1   how you would bring Mattel in this lawsuit or if you intend

2   to.

10:56   3       MS. KELLER:  I'm not sure I understand the Court's

4   question.

10:56   5       THE COURT:  I'm concerned that I don't understand

6   fully, so I'm truly asking how Mattel would be brought in if

7   I order what I think might be at the directive from the

8   Ninth Circuit, "Mattel, you pay MGA."

10:57   9       Counsel, sit down.

10:57   10       MR. PROCTOR:  Apologize, Your Honor.

10:57   11       THE COURT:  That's the third time you've been --

12   I'll give you all the time -- in fact, I'll take a recess.

13   But it's distracting.

10:57   14       MR. PROCTOR:  I apologize.

10:57   15       THE COURT:  All right.  Sit down.

10:57   16       MS. KELLER:  In an absolutely historical

17   statement, Your Honor:  I agree with Mr. Zeller.

10:57   18       I think if the Court orders Mattel to pay, it can

19   be subject to no action by other claims.

10:57   20       THE COURT:  And why again shouldn't I read the

21   opinion from the Ninth Circuit in that way?

10:57   22       MS. KELLER:  We think you should.

10:57   23       THE COURT:  Mr. Zeller, why shouldn't I read the

24   opinion of the Ninth Circuit that way?  In other words, it's

25   a tempest in a teapot whether it's interpleader or I order

1    you to pay.  I just don't understand the concern.

10:57    2            MR. ZELLER:  Your Honor, that is not -- from our

3    perspective, it does not matter, Your Honor.

10:57    4            THE COURT:  Okay.  So let's get this clear,

5    without a lot of mincing of words.  If I order you to pay,

6    if I believe that's the Ninth Circuit's directive, it

7    resolves it from Mattel's perspective?

10:58    8            MR. ZELLER:  From our perspective, absolutely.

10:58    9            THE COURT:  The bind you've been caught in so far

10    is you haven't gotten direction from the Court.

10:58    11            MR. ZELLER:  Right.

10:58    12            THE COURT:  So you've got these competing claims

13    and you've got some liability and you don't know that to do.

10:58    14            MR. ZELLER:  Right.

10:58    15            THE COURT:  Simple as that.

10:58    16            MR. ZELLER:  It is, Your Honor.

10:58    17            THE COURT:  Okay.  I don't think I'm going to

18    leave you hanging on this.  It will be either interpleader

19    or direct order.  That's my guess.

10:58    20            Now, I'm subject to hearing from the insurance

21    carriers again.  But I want to hear from them how they're

22    going to whip this up into -- and if that's the case, then

23    I'm concerned why I would have a 300-some million dollar

24    bond instead of 137-, except for whether I would stall that

25    a little bit to see what the filing is concerning

DEBBIE GALE, U.S. COURT REPORTER

1    permissive.

10:58    2         MR. ZELLER:  Let me address that, if I may,

3    Your Honor.

10:58    4         THE COURT:  And I don't know that I have to decide

5    that today.  I might wait.  I'm not sure yet.

10:58    6         MR. ZELLER:  If I --

10:58    7         THE COURT:  I don't see the substantial detriment

8    to waiting.

10:58    9         MR. ZELLER:  The bond shows on its face that

10   carrying cost of it is something like a million dollars a

11   year.

10:58   12         THE COURT:  Chump change compared to what's been

13   spent.

10:58   14         MR. ZELLER:  Perhaps in comparison, Your Honor.

15   But it's, again, a needless expense.

10:59   16         THE COURT:  Why?  If counsel prevails on the

17   argument, and if the Court in fact had made the findings,

18   which I believe I did, I don't want to prejudge that, but

19   we'd be right back in a position where you could in fact be

20   liable.

10:59   21         MR. ZELLER:  Well, that -- Your Honor, I can

22   certainly argue that at length, but I don't think that's the

23   issue here because, first of all, the Court doesn't even

24   have that motion in front of it.

10:59   25         THE COURT:  Why do I have to decide this other

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

48

| | |
|---|---|
| 1 | than the argument that there's detriment to Mattel of the |
| 2 | carrying cost of this bond, which seems *de minimis* compared |
| 3 | to the lawsuits that have been brought before this Court? |
| 10:59    4 | MR. ZELLER:  Your Honor, we're entitled to the |
| 5 | relief regardless of the cost.  It is a supersedeas bond. |
| 6 | It has nothing to do with some inchoate claim, reported, |
| 7 | threatened claims by MGA in the future.  There is a |
| 8 | different standard for that. |
| 10:59    9 | If MGA thinks it's entitled to some sort of |
| 10 | restraint on Mattel's assets for a future claim, there are |
| 11 | very stringent -- |
| 10:59   12 | THE COURT:  And then they can pursue it.  In other |
| 13 | words, the bond should be wrestled with by the Court now. |
| 14 | If MGA has a legitimate claim, we can take that up in the |
| 15 | future in terms of litigation. |
| 11:00   16 | MR. ZELLER:  Right.  And the supersedeas bond is |
| 17 | crystal clear on its face that it's for the appeal.  The |
| 18 | appeal is done.  It has nothing to do with future claims. |
| 11:00   19 | And again, if somehow MGA could concoct some |
| 20 | absurd theory about "Mattel doesn't have the money," which |
| 21 | it obviously does, for some future claim, it can come in and |
| 22 | try and make that showing to the Court and have some sort of |
| 23 | sequestration or whatever the -- you know, whatever the |
| 24 | procedure is that they choose. |
| 11:00   25 | They will lose.  It will be absurd.  But they can |

DEBBIE GALE, U.S. COURT REPORTER

1    certainly try it.  But certainly, they can't circumvent that

2    by shoehorning a supersedes bond into some, you know,

3    punitive future claim.

4    11:00          THE COURT:  Okay.

5    11:00          MR. ZELLER:  The only thing I would end with,

6    Your Honor, on -- in terms of the -- in terms of the

7    interpleader itself -- and certainly we do think, obviously,

8    that is the insurance companies' and Orrick's water to

9    carry.

10   11:00          To the extent that interpleader is the most

11   appropriate -- because, from our perspective, again, we're

12   here to say we're going to pay this.  We're going to do

13   whatever the Court tells us to do with the funds.  And that

14   is our primary interest here today.  But it is also correct,

15   under *Mack*, that the merits of the claim, as was pointed out

16   previously -- of these competing claims is the second phase

17   of interpleader.  So it really doesn't have anything to do

18   today --

19   11:01          THE COURT:  Okay.

20   11:01          MR. ZELLER:  -- with whether interpleader should

21   be filed.

22   11:01          THE COURT:  Thank you very much.

23   11:01          Okay.  Counsel, we'll take 20 minutes.

24   11:01          *(Recess held at 11:01 a.m.)*

25   11:02          *(Proceedings resumed at 11:24 a.m.)*

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:24 | 1 | THE COURT: All right. Counsel, we're back on |
| | 2 | record. Let me start with Ms. Keller for a moment. |
| 11:24 | 3 | What difference does it make if I -- concerning |
| | 4 | your request to expedite the filing by waiving the 10-day |
| | 5 | rule, if I order the $137 million paid to MGA? |
| 11:24 | 6 | MS. KELLER: Because -- |
| 11:24 | 7 | THE COURT: And if this bond is excessive, why are |
| | 8 | we in such a hurry? You're going to litigate. |
| 11:24 | 9 | MS. KELLER: Because they're separate issues. |
| 11:24 | 10 | The underlying matter, the statute of limitations |
| | 11 | could be a sensitive one. And we want to make sure -- |
| 11:25 | 12 | THE COURT: Oh, so it's a statute of limitations |
| | 13 | issue? |
| 11:25 | 14 | MS. KELLER: That's right. |
| 11:25 | 15 | THE COURT: Okay. I may protect you concerning |
| | 16 | the statute of limitations, so matters get litigated. We |
| | 17 | don't want to bar you on technicalities. |
| 11:25 | 18 | MS. KELLER: And I'm not saying that it is. I'm |
| | 19 | saying it's potentially an issue. So I think the sooner we |
| | 20 | file, the better. |
| 11:25 | 21 | THE COURT: All right. |
| 11:25 | 22 | MS. KELLER: And, therefore, I would ask the Court |
| | 23 | to waive that notice. |
| 11:25 | 24 | THE COURT: But that's your reasoning? |
| 11:25 | 25 | MS. KELLER: That is my reasoning. |

DEBBIE GALE, U.S. COURT REPORTER

11:25    1          THE COURT:  Okay.

11:25    2          MS. KELLER:  Separate issue from the bond.

11:25    3          THE COURT:  The second thing is, the fear I'm

         4  hearing, in a practical sense, is that, Judge Carter orders

         5  the 137.8 million paid to MGA, and the fear of the carriers

         6  is we're gonna have to fight like mad to get that back from

         7  Mr. Larian.  And there's a history in the case, I think,

         8  that they're fearful of.  And so, they're speaking to you

         9  about interpleader.

11:26   10          And the difficulty is, in a perfect, equitable

        11  world -- I'm going to be very naive -- in a world, if I

        12  could concoct it, I might want to give enough assets for you

        13  to go forward, you know -- pick a number, 50 million,

        14  80 million -- which protects your ability to pursue the

        15  lawsuit; but there's a certain amount that might be in

        16  contention with Orrick and carriers, where legitimately they

        17  have some amount of money that should be returned.

11:26   18          I've never heard of a division, though, of

        19  interpleader where the Court, taking a portion -- so I could

        20  toss out equity.  That's not gonna work.

11:26   21          No.  Mr.-- sit down.  You'll have plenty of time.

11:26   22          MR. BIDART:  Yes, Your Honor.

11:26   23          THE COURT:  All right.

11:26   24          MS. KELLER:  Well, there's something else none of

        25  us have never heard of, and that's a case on interpleader

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

52

| | |
|---|---|
| | 1   involving a judgment with just one creditor. |
| 11:26 | 2        THE COURT:  Now the fight's potentially between |
| | 3   you and the carriers.  Do you understand that? |
| 11:26 | 4        MS. KELLER:  And it would be anyway. |
| 11:26 | 5        THE COURT:  Hold on.  Let's make sure 'cause we |
| | 6   have plenty of time.  All right? |
| 11:26 | 7        The reason we took so long with Mr. Zeller was |
| | 8   because, by the time we got all done with it, as long as the |
| | 9   Court gives direction -- whether they're to pay MGA or to |
| | 10  interplead -- Mattel just needs direction. |
| 11:27 | 11       So it seems, to me, that there's really a |
| | 12  concession and no good argument concerning the excessiveness |
| | 13  of this bond.  And it really seems that, although you've |
| | 14  constructed an argument about going forward and how they |
| | 15  might be liable, that's your choice to go forward. |
| 11:27 | 16       In other words, you litigate in the future. |
| | 17  Tentatively, I have a strong feeling that Mattel's right in |
| | 18  that regard, that this is a bond that I should deal with |
| | 19  now.  It makes little difference from Mattel's point for |
| | 20  interpleader or a direct order; and that there should be a |
| | 21  limitation. |
| 11:27 | 22       Your point is that there might be increased |
| | 23  liability, but that's for you to litigate in the future.  So |
| | 24  the fight really seems to be between MGA and the carriers in |
| | 25  this matter -- and Orrick, to a certain extent.  I'm sorry. |

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

53

```
 1    I forgot Orrick.
 2           And the problem with that is that, in a perfect
 3    world, I could interplead and then cause each of you to come
 4    forth with a claim, but I don't trust your claimed amounts.
 5    In other words, I don't trust what I would be getting in
 6    terms of each party coming forward and saying these were the
 7    amount of bills, et cetera.  That's for litigation purposes.
 8           So I think I'm going to be back in the position of
 9    either interpleading or MGA gets the 137 million and they
10    can litigate against you.
11           It's going to be a very simple -- when we get
12    through all the verbiage -- issue I have to decide.
13           MS. KELLER:  Well, all this stuff that's been
14    raised about, "Oh, MGA might dissipate assets or might not
15    pay," none of those things are appropriate arguments on an
16    interpleader.
17           THE COURT:  They're all anticipatory.
18           MS. KELLER:  Well, it's not just that.  There is
19    no case on interpleader that we can find on a judgment with
20    one creditor.
21           THE COURT:  And also, the interpleader works to
22    Mattel's --
23           MS. KELLER:  Yeah.  So, if we fight with the
24    carriers, or if we fight with Orrick, that's a different
25    issue.
```

DEBBIE GALE, U.S. COURT REPORTER

54

| | | |
|---|---|---|
| 11:29 | 1 | THE COURT:  I'll come back to you.  I want to |
| | 2 | speak to the carriers. |
| 11:29 | 3 | Tell me, from the carrier's standpoint, not |
| | 4 | equity, but from -- |
| 11:29 | 5 | And I'll be back to you.  I don't mean to be rude. |
| | 6 | But I want to talk to my carriers here. |
| 11:29 | 7 | You tell me how, on an interpleader that's |
| | 8 | supposed to pertain to Mattel, that you have, in a sense, |
| | 9 | standing equity for interpleader between you and MGA?  By |
| | 10 | the way, you've already filed your lawsuit.  You're already |
| | 11 | proceeding.  So why should I interplead? |
| 11:29 | 12 | MS. FIELD:  Because the carriers have a direct |
| | 13 | right of action against Mattel for subrogation. |
| 11:29 | 14 | The problem here is we keep talking about the |
| | 15 | claim that we have against -- |
| 11:29 | 16 | THE COURT:  Subrogation. |
| 11:29 | 17 | MS. FIELD:  Sorry -- |
| 11:29 | 18 | THE COURT:  Subrogation. |
| 11:29 | 19 | MS. FIELD:  -- subrogation. |
| 11:29 | 20 | And until this Court, perhaps again, but rules |
| | 21 | that there is no right of subrogation under the facts |
| | 22 | presented -- |
| 11:30 | 23 | THE COURT:  If I ruled that way the first time, |
| | 24 | the Circuit can correct me.  Why would I rule against |
| | 25 | myself?  Why would I reverse that position now? |

DEBBIE GALE, U.S. COURT REPORTER

11:30    1         MS. FIELD:  Your Honor --

11:30    2         THE COURT:  That was a 37- or 38-page opinion that

3   I paid attention to.

11:30    4         MS. FIELD:  Your Honor, the fact is that the Ninth

5   Circuit didn't get a chance -- did not review that issue.

6   Your Honor might agree again --

11:30    7         THE COURT:  Well, they will.  They're not shy.

11:30    8         MS. FIELD:  Right.  And Your Honor might say again

9   that the carriers should have come in beforehand.  But I do

10   think that there are -- in fact, there is a subrogation

11   claim, there are competing interests.  And while Your Honor

12   has said, and I understand, "Don't talk about the equities,"

13   the equities are so overwhelming, and MGA has no equitable

14   claim to make here before you.

11:30    15         THE COURT:  It's the same problem I'm having with

16   Ms. Keller's argument about, "Judge, hold this bond to

17   300-some million dollars because we can anticipate that

18   Mattel might be liable."

11:31    19         Your agreement is somewhat analogous to it; and

20   that is, "Judge, we might prevail so, therefore, don't allow

21   this money to go to MGA because of subrogation," which I've

22   already ruled against you on.

11:31    23         MS. FIELD:  But isn't that always the argument in

24   an interpleader, which is, there's always people who have

25   unperfected claims, who say, "I'm entitled to some or all of

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

56

that money; "and, therefore, the stakeholder interpleads it
so the Court can make the decision.

11:31  THE COURT:  Here's the problem:  Equitably, you
might be entitled to some of that $137 million.  But
hypothetically, if you were to equitably draw this out,
Mr. Larian might be entitled to 80 million or he might be
entitled to 20 million; the carriers might be entitled to
37 million -- how much is that, Counsel?

11:31  MS. FIELD:  Right.

11:31  THE COURT:  137 million.

11:31  All right.  If that's the case, why do I hold up
the vast majority of payment because -- before I started
this colloquy with you about this naive, you know, division
in interpleader -- that doesn't work.  So why do I hold up
the party who may have the vast amount of resources
expended, which is Mr. Larian, or what might be lesser
claims by Orrick -- because you're giving me an
all-or-nothing scenario?

11:32  MS. FIELD:  First of all, Your Honor, I don't
believe that the law is that it is an all-or-nothing
scenario in an interpleader.  Frequently, you have multiple
claimants and the Court makes a decision how much each
claimant gets.  So it's not simply the carriers get it all
or Orrick gets it all or MGA gets it all.

11:32  The Court makes a finding based upon facts and

1    evidence that's presented as to how much each claimant gets

2    out of the fund.

11:32    3        THE COURT:  And shape that for me.  If I

4    interpleaded this, what would that lawsuit look like?

11:32    5        MS. FIELD:  It would look like parties coming to

6    you to show you why they're entitled to a portion of the

7    money that forms that award.

11:33    8        And the problem that I'm having with Your Honor's

9    presumption is that you presume that MGA is entitled to the

10    vast majority of that money.  And I don't agree with that.

11:33    11        I mean, you know how much the carriers paid to

12    defend this case.  I know the bills that they paid, which

13    were the bills submitted to you -- although, to be honest,

14    because of confidentiality, some things we don't know -- we

15    know that we paid the bills that MGA submitted to us from

16    Orrick.  And we know they didn't pay Orrick.

11:33    17        THE COURT:  Counsel, you didn't pay for a

18    substantial period of time.  For a substantial period of

19    time, you not only didn't pay, but you literally caused --

20    let me be clear about this -- you caused this "well," if you

21    will, that put the parties in an very inequitable position

22    when they came into this Court.

11:33    23        MS. FIELD:  That's not accurate either, Your

24    Honor.  My client did not start paying until later.  There

25    was a settlement agreement that allowed for a later payment.

DEBBIE GALE, U.S. COURT REPORTER

1    The Chartis companies started paying much earlier, and then

2    we had to pay them back.

3          So the argument that somehow there was this

4    terrible situation in which, for example my client left them

5    hanging, the Chartis companies made payments during that

6    period of time and I paid them back.

7          THE COURT:  Judge Larson had to make an order,

8    Counsel.  Did you forget that?

9          MS. FIELD:  No.  But that was part of a settlement

10   agreement, Your Honor, that specifically provided for a

11   payment to MGA for the past and an agreement that

12   Judge Carter *(sic)* could make that.

13         So the suggestion again that that's a problem, we

14   settled our claims with MGA for bad faith and paid money

15   before Judge Carter -- uh, before Judge Larson made that

16   ruling.  So all of these presumptions are things that may

17   form the basis for Your Honor's view of the equities, but

18   the facts may show something different.  And that's what

19   we're here to talk about.

20         We paid well over $100 million in the ordinary

21   course -- forgetting any other payment that was made -- for

22   the defense of MGA in this litigation.  Much more was paid

23   than that.

24         THE COURT:  But billings may show that Mr. Larian

25   is out-of-pocket close to that same amount.

DEBBIE GALE, U.S. COURT REPORTER

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

59

11:35   1          MS. FIELD:  I don't believe that they will,

2    Your Honor, since I have seen the billings.  And I also have

3    seen the billings that we've paid -- that were represented

4    to us were Orrick bills.  And I've also been involved in

5    discovery in which I've confirmed that money that the

6    carriers paid for Orrick's bills have not been paid to

7    Orrick.

11:35   8          So there's evidence out there that suggests -- let

9    me put it differently -- that raises questions about -- the

10   first being that $137 million award; and the second, who

11   actually paid the money that Your Honor is going to have an

12   order to pay -- or did they pay?

11:36   13         I mean, if I posit a different scenario -- let's

14   assume that MGA took the carriers money and never paid any

15   of the bills.  Should MGA get that money back?  Or if MGA

16   goes to Orrick and says, "You're not entitled to the money,"

17   and the arbitrators say, "You're right.  You're not entitled

18   to that $30 million."  But that $30 million worth of bills

19   was part of the basis for Your Honor's order.  Shouldn't

20   that be something that gets played into this whole analysis?

11:36   21         I mean, the part of the problem here is there is

22   an equitable resolution to this.  There is a way to resolve

23   this.  And the fact is that Mattel is willing to pay that

24   fund in a situation in which Your Honor has control over the

25   distribution of that fund.  You can decide whether MGA has

1    out-of-pocket costs that it ought to be reimbursed, or

2    whether those funds were paid by the carriers and they

3    should come back, or ultimately whether the money should go

4    to Orrick.

5           And we're all standing here -- except MGA --

6    saying, "Your Honor, you make the decision.  That seems fair

7    to us."

8           And MGA's saying, not -- "We're out-of-pocket

9    $137 million.  We ought to get this money."  They're just

10   saying, "Just pay it to us.  Trust us, Your Honor.  The

11   money will be there some day, if they get to -- to some

12   order that we have to pay it."

13          And you're right:  There are concerns about that.

14   And I think Your Honor should be concerned about that.  And

15   that's why this all makes sense, is, put it back in front of

16   Your Honor, have the funds paid into an interpleader.

17          It will allow you to protect Mattel because, if

18   you grant the interpleader and we litigate that issue, you

19   can issue an injunction against further claims by us against

20   Mattel.

21          But an order by Your Honor to simply pay the

22   money?  I don't think there's a ground -- I haven't looked

23   it up yet, and I have to admit that to you -- but I don't

24   think that order alone is going to protect it.  And I don't

25   think that, without some hearing and motion work, that

1    Your Honor could issue an injunction.

11:38    2         So the fair way to do this is to say to Mattel,

3    "Give me the money.  I'll protect you from the claims from

4    Orrick, and I'll protect you from the claims from the

5    carrier, and I will figure out who's entitled to get that

6    money back."

11:38    7         And you may decide that MGA is entitled to

8    137 million.  I don't think so.  But you may.  You may

9    decide that they're entitled to 37 million, and that

10    Orrick's entitled not to their 30, but to 20 million, and

11    the carriers aren't entitled to all of their money, only

12    some of it.  But at least all of facts will be laid out

13    before you in a way that seems fair to everybody.

11:38    14         THE COURT:  In other words, your argument is it

15    comes as piecemeal litigation.  Although the Court resolves

16    the $137 million on a direct order to pay to MGA, in

17    trickles in litigation concerning Orrick from an arbitration

18    panel, in trickles litigation -- future litigation from you;

19    and then, if you get a judgment, you have to pursue.

11:39    20         MS. FIELD:  Right.

11:39    21         And then there's issues of what goes to the Ninth

22    Circuit and what doesn't go to the Ninth Circuit.

11:39    23         THE COURT:  Okay.

11:39    24         Counsel.

11:39    25         MR. BIDART:  Thank you, Your Honor.

DEBBIE GALE, U.S. COURT REPORTER

Case 2:04-cv-09049-DOC-RNB   Document 10900-2   Filed 08/12/13   Page 63 of 103   Page ID #:330032
LACV 04-9049 DOC - 2/26/2013 - Item No. 43

62

11:39   1          First of all, starting with their final argument

2    and why that doesn't make sense.

11:39   3          In effect, Your Honor, there's two concepts here

4    that they're raising with the Court:  One is a claim for

5    reimbursements, which is currently stayed, hasn't been

6    adjudicated, hasn't been determined.

11:39   7          THE COURT:  You need to represent on the record

8    who you represent.

11:39   9          MR. BIDART:  I apologize, Your Honor.  Mike Bidart

10   on behalf of MGA on the insurance cases.

11:39   11         The other thing that was raised for the first time

12   in this proceeding was a supposed direct claim against

13   Mattel for subrogation.  And we looked at the record.  The

14   first time that arose was a January 28, 2013 letter from

15   Mark Sheridan on behalf of Lexington, which is part of

16   Exhibit E to Mr. Zeller's declaration.

11:40   17         Originally, the only carrier who pursued any

18   direct action -- and this is very important because

19   Ms. Keller made the argument, and it's in keeping with the

20   law -- that is, that, in order for interpleader to apply,

21   there must be claims made against the applicant.

11:40   22         There were no claims, at the time this matter was

23   filed, made against the applicant because the only carrier

24   that made a direct claim against Mattel was Evanston.  And

25   that was dismissed Your Honor by your -- this Court on Case

1    No. 12-05654, Docket No. 35.  That action was dismissed with

2    prejudice.  And it was only by Evanston.  Crum & Forster and

3    Lexington never made any claims directly against Mattel.

4    11:41        And we respectfully submit that when you view the

5    record as a whole, and the timing of events, that it looks

6    to us, circumstantially, that it's a contrivance in order to

7    create a controversy that would form the basis of the

8    interpleader claim.

9    11:41        What they're really doing here, Your Honor, what

10   they're really seeking from the Court is something that they

11   never did properly; and that is, under California law, this

12   is nothing more than a breach of contract claim by the

13   carriers against their insured.  And everything that

14   Ms. Field purports to know -- she said on several occasions,

15   "Your Honor, I know what the bills were.  I know what they

16   paid" -- first of all, is completely outside of this record.

17   11:41        But let me tell you some things about what is in

18   this record:  The motions before Judge Larson that formed

19   the basis of the referenced Duty to Defend Hearing in June

20   of 2008 -- pardon me -- June of 2009.  June 24, 2009.  What

21   is in this record is that MGA had tendered to Crum & Forster

22   and to Lexington Insurance the defense of this claim, the

23   Second Amended Answer and Counterclaim, October 22, 2007.

24   11:42        Crum & Forster immediately denied any duty to

25   defend.  They didn't pay nickel one.  And instead, what they

1    did is they required MGA to have to sue them, which was

2    filed in March of 2008.  They immediately denied a duty to

3    defend.  Only Lexington confessed a duty to defend and began

4    paying some bills under the normal panel rates.

11:42  5         And it wasn't until December, December of 2008,

6    more than a year -- a year and two months after the initial

7    tender that Crum & Forster then finally paid some money to

8    buy up their exposure for the past.  So again, Your Honor,

9    there will be a day when the breach of contract claims will

10   be litigated, that you'll have evidence, that you'll

11   consider the equities and make a determination.  But that's

12   not for today.

11:43  13        If they thought that they could have prevailed on

14   proving to Your Honor that they had a likelihood of recovery

15   and that their ability to recover any eventual judgment was

16   in jeopardy, they could have sought a writ of attachment.

17   And they didn't do that.

11:43  18        It's apparent to me that what's happened here is

19   that, number one, they sat on their rights -- if any they

20   had.  The Court found that they were too late.  The Ninth

21   Circuit listened to their arguments and decided that,

22   notwithstanding that, there's an explicit order to pay.

11:43  23        If they -- now what they want to do is they want

24   to say, "Poor us.  We're gonna have to go to court, prove

25   our claim.  We don't know what ultimately the Court's going

1   to do; but just in case this Court were to conclude that

2   there's some money owing back to them, they want to hold up

3   the entirety of the money that was awarded by the Ninth

4   Circuit."  We believe that's inappropriate.

11:44  5   Secondly, today --

11:44  6   THE COURT:  And there's no way to equitably divide

7   that out, is there?

11:44  8   MR. BIDART:  Right.  There's no way to equitably

9   divide it out now without hurting MGA and they're

10  entitlement to the money now because there's too much yet to

11  be determined.  There's -- all the discovery has to be done.

12  All the accounting has to be done.  The make-whole rule has

13  to be considered.  The common-fund rule has to be

14  considered, because MGA -- and again, I've been careful not

15  to argue outside the record, but since they did, the

16  Court -- I can represent to the Court that there are many

17  things which will affect any rights of recovery on the part

18  of these carriers, which aren't before the Court at this

19  juncture because they've been stayed.  So it's unknown

20  what's going to be.

11:45  21  This is simply nothing more than an unperfected,

22  unliquidated claim of the carriers to get money back from

23  their insured.  And there are many things that MGA's gonna

24  have to defend against that claim.

11:45  25  And it's only very recently -- the first time that

1    we ever heard anything about subrogation being asserted by

2    Lexington and Crum & Forster directly against Mattel, so as

3    to potentially function as a predicate for the interpleader

4    action, was during this proceeding, and a letter of

5    January 28.

11:45    6          Now, to me, it appears highly suspect that the

7    people claiming that interest -- because, just like the

8    Court accurately points out -- I agree with the Court when

9    it says I think the concern of the carriers is getting the

10    money down the line.  They're gonna have to fight it later

11    with MGA.  That's a sensible observation.  I think that's

12    what's going on.

11:45    13          But the same holds true for Mattel.  It's to

14    Mattel's benefit to interfere with MGA, their adversary,

15    having access to the money.  It will be a litigation

16    advantage to -- to -- there's no secret.  There's no love

17    lost between Mattel and MGA.

11:46    18          And so, if MGA -- pardon me -- if Mattel can

19    discuss and strategize with the carriers an approach that,

20    "Well, look it.  We owe this money.  The Ninth Circuit says

21    it's clear we owe the money.  It's better for us, Mattel, to

22    have MGA not have access to the money.  And by the way,

23    carriers, it's better for you too because, if we can get the

24    money tied up with the court, you'll have a ready fund later

25    on in the event that you recover anything against MGA."

DEBBIE GALE, U.S. COURT REPORTER

11:46    1          And that's not fair to MGA because there's been no

2    reason -- there's been no due process indicating that

3    anybody should be able to interfere with their rights to the

4    money.

11:46    5          Thank you, Your Honor.

11:46    6          THE COURT:  Just a moment.

11:47    7          In insurance cases, often in the Ninth Circuit --

8    in a very general statement, the Ninth Circuit has been

9    inclined to protect the insured.  And without the exact

10    merits of this case, you wonder, as a policy, if the Ninth

11    Circuit wouldn't be equally concerned about the resources of

12    the insured and your ability to continue on in what is

13    litigation that you're choosing to bring -- by the way,

14    you're choosing to bring at this point -- but also have to

15    defend against the carrier.

11:48    16          So you've got at least two battles going on:  One

17    that you'd like to pursue litigation still against Mattel;

18    and that you've got to defend against your carrier and

19    against Orrick.

11:48    20          So your argument is that, generally speaking, the

21    insurance companies are, once again, from your perspective,

22    acting as an impediment to the rights of the insured.

11:48    23          All right.  Have a seat.

11:48    24          I want to hear from the carrier.

11:48    25          MR. SHERIDAN:  Your Honor, Mark Sheridan on behalf

DEBBIE GALE, U.S. COURT REPORTER

1    of the Chartis companies, including Lexington.

11:48   2         We need to be clear on this record.  My clients,

3    Ms. Field's clients, the Chartis companies, Crum & Forster

4    filed a motion to intervene and attached a complaint in

5    intervention.  That complaint in intervention asserted

6    claims for subrogation -- not today, more than a year ago,

7    Your Honor.

11:49   8         This is not the first time we're hearing about our

9    subrogation claims.  It is more than a year old.  So for

10   Mr. Bidart to stand up and suggest this is the first time

11   he's ever heard of a subrogation claim, Your Honor, either

12   he either didn't look at the docket or it's just being made

13   up as we go along.

11:49   14        Ms. Field -- in fact, it's attached to

15   Mr. Zeller's declaration:  Letters from 2011 asserting

16   claims for subrogation.  They're in the record right before

17   Your Honor today.  So the suggestion that this is all new,

18   Your Honor, is baseless.  The carriers have asserted these

19   claims.

11:50   20        The reason Your Honor should grant interpleader,

21   as opposed to simply awarding the money to MGA, is to

22   protect Mattel.  If Your Honor awards the money to MGA, my

23   clients will sue Mattel in subrogation.  We will assert that

24   claim.

11:50   25        Whether it's in a separate action or we add it to

1    the reimbursement action, my clients -- very clear -- will

2    sue Mattel in subrogation, Your Honor.

11:50    3        At that point in time, Mattel will face the risk

4    that it's here today to deal with.  If Your Honor grants

5    interpleader, the money can be paid into court, and it can

6    enjoin us from suing Mattel.  At that point in time, my

7    clients will have no option but to litigate with MGA about

8    the pot of money that has been placed into court.

11:50    9        In the absence of that injunction, which is only

10   appropriate as part of interpleader, my clients will sue

11   Mattel in subrogation, Your Honor.

11:51   12        THE COURT:  Okay.

11:51   13        MR. SHERIDAN:  Thank you.

11:51   14        THE COURT:  All right.  This is the last round.

15   I'm sorry.  On behalf of Orrick.  My apologies.

11:51   16        MR. CHATTERJEE:  Your Honor, Ms. Jacobs was kind

17   enough to let me make a few remarks, if I may.

11:51   18        So -- Your Honor, I'm Neel Chatterjee.  I lead the

19   Practice Group -- the Intellectual Property Practice Group

20   at Orrick, and I'm the person overseeing this litigation for

21   our firm.  We also are working closely with the Chartis

22   firm.

11:51   23        Your Honor, you asked two questions at the outset

24   of this.  The first question really fundamentally was, is,

25   what is the right answer:  Interpleader or order Mattel to

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

70

1   pay today.  And the second question was about the

2   310 million supersedeas bond versus reducing it to roughly

3   137 million.

11:51   4          I'll answer the second one first 'cause it's the

5   easier one for us.  We don't -- we don't have a firm

6   position, but our general view is reducing the amount of

7   bond is -- is the right answer.

11:52   8          Um, on the first question, I take issue with

9   Ms. Keller's remark that Orrick is ganging up on MGA.  You

10  saw what the commitment of people and my group made to win

11  this case.  You know that effort.  And you know now that

12  Mr. Larian and MGA have refused to pay us for that effort.

11:52   13         THE COURT:  Just a moment.

11:52   14         But you are in front of an arbitration panel.  And

15  presuming you prevail in whatever amount, that's going to be

16  a judgment against Orrick.

11:52   17         MR. CHATTERJEE:  That's correct, Your Honor.

11:52   18         THE COURT:  Why don't you simply pursue that?

11:52   19         Your fear is that they're going to hide the money

20  or something's going to dissipate -- that's your real fear.

11:52   21         MR. CHATTERJEE:  Precisely, Your Honor.  And for

22  that reason, the arbitration panel has given us a partial

23  final award of $23 million.  And that is in the form of a

24  lien.  If you do not interplead that money, you effectively

25  make that lien a nullity.

DEBBIE GALE, U.S. COURT REPORTER

11:53  1            The goal that --

11:53  2            THE COURT:  Just a moment.  The opposite is that

       3    the arbitration panel is interfering with this Court.  So

       4    tread lightly on that.  Tread very lightly on that about who

       5    has jurisdiction here.

11:53  6            MR. CHATTERJEE:  I understand that point,

       7    Your Honor.

11:53  8            THE COURT:  Thank you very much.  Now let's move

       9    along.

11:53 10            MR. CHATTERJEE:  And I do think that there is a

      11    tricky issue there on -- on who has the jurisdiction,

      12    particularly if there is an interpleader, your Honor.

11:53 13            Fundamentally, I thought it would be helpful to

      14    discuss a situation I had that was virtually identical to

      15    this in front of Judge Ware in the *Winklevoss v. Facebook*

      16    case.  Because, in that case, there was a judgment, and

      17    there was a certain amount of money in consideration that

      18    was transferring hands.  In that case, there were three law

      19    firms that came in and gave notices of liens.

11:53 20            And the way that Judge Ware looked at it was he

      21    felt that, while there were two warring parties -- in this

      22    case, it would be MGA versus Mattel -- there was also an

      23    independent obligation of the court, once it became aware of

      24    potential stakeholders in that consideration.

11:54 25            For example, Quinn Emanuel said that they had an

1    entitlement to some of those funds because of an agreement

2    they had with the Winklevoss family.  And what Judge Ware,

3    did -- he didn't exactly interplead the money.  But instead,

4    he appointed a special master to oversee the distribution of

5    the funds.

6    11:54        His basic premise was, "Look, the courts are in

7    the business of administering justice.  We -- we don't want

8    to spend a lot of time deciding what to do with a very large

9    amount of money."  And in the interpleader effort by Mattel,

10   and our -- the reason we're endorsing it is we think this is

11   an approach that makes sense as far as distribution of the

12   money.

13   11:54        MGA has come in and said, "Look, you know, um,

14   we're being deprived of the benefit of the money that Mattel

15   owes us."  That's not exactly true, because MGA is -- you

16   know, has to pay its bills.

17   11:54        Now, what that amount is -- that's the second

18   question that you encounter in an interpleader action, but

19   they're not being deprived of the money because the only way

20   the money goes to the insurance company, or the way it goes

21   to Orrick, is if they're ordered to pay their bills.

22   11:55        So it's still for their benefit.  It's just having

23   a judicially administered way to make sure that the other

24   stakeholders, um, have their rights protected.

25   11:55        At the end of the day, Your Honor, we do have a

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| | 1 | serious fear of dissipation of these asset, and that's why |
| | 2 | we think interpleader makes sense here. |
| 11:55 | 3 | If Your Honor doesn't want to go the interpleader |
| | 4 | route, we do think there are other vehicles that the Court |
| | 5 | could order to protect the assets. |
| 11:55 | 6 | THE COURT:  What? |
| 11:55 | 7 | MR. CHATTERJEE:  For example, Your Honor, you |
| | 8 | could appoint a special master to handle the distribution of |
| | 9 | funds and resolve the various claimants' -- |
| 11:55 | 10 | THE COURT:  Why would I do that?  If I was going |
| | 11 | to do that, why wouldn't I just take interpleader, move |
| | 12 | quickly on it? |
| 11:56 | 13 | MR. CHATTERJEE:  The reason, Your Honor, is it |
| | 14 | really gets at the question you were asking about the |
| | 15 | all-or-nothing approach.  What this does is this allows for |
| | 16 | money to be distributed at the time that it's due. |
| 11:56 | 17 | If, for example, there's an amount less than |
| | 18 | $137 million that makes sense -- |
| 11:56 | 19 | THE COURT:  How do I fairly do that through the |
| | 20 | special master without turning control over to the special |
| | 21 | master?  In other words, I hear the carriers' viewpoint and |
| | 22 | that is, "Judge, be careful because the vast majority, maybe |
| | 23 | a hundred million dollars are due to the carrier." |
| 11:56 | 24 | So I'm arbitrarily going to appoint some special |
| | 25 | master to make that decision? |

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

74

| | |
|---|---|
| 11:56 | 1 |
| 11:56 | 2 |
| | 3 |
| 11:56 | 4 |
| | 5 |
| 11:56 | 6 |
| 11:56 | 7 |
| | 8 |
| | 9 |
| | 10 |
| 11:56 | 11 |
| 11:56 | 12 |
| 11:56 | 13 |
| | 14 |
| 11:56 | 15 |
| 11:56 | 16 |
| 11:56 | 17 |
| | 18 |
| | 19 |
| 11:57 | 20 |
| 11:57 | 21 |
| | 22 |
| | 23 |
| | 24 |
| 11:57 | 25 |

MR. CHATTERJEE:  So, Your Honor, the way --

THE COURT:  See, what happened was a special master started the computation with the Mattel.

I did all the independent computation with Mattel, not the special master.

MR. CHATTERJEE:  I understand that, Your Honor.

And I'm just speaking from what Judge Ware did, because it seemed apt here.  He received orders or recommended orders from the special master.  The parties could chime in and see if they disputed it.

THE COURT:  I'm going to reject that.

What's your next approach?

MR. CHATTERJEE:  Your Honor, interpleader is certainly another one.

THE COURT:  I've heard that.

What's your next one?

MR. CHATTERJEE:  Placing the money in an escrow as you're executing the judgment to resolve the issues of liens is a third one.

THE COURT:  Why?

MR. CHATTERJEE:  Basically, because, when you're executing upon a judgment, it essentially accomplishes the same thing as an interpleader, but it distributes money as the -- as the judgments come in.

If Your Honor wants to take all of the actions

DEBBIE GALE, U.S. COURT REPORTER

1    in --

11:57    2                THE COURT:  But how would I know?

11:57    3                Orrick comes up with, let's say, $30 million.  The

4    insurance company comes up, you know, with billings of a

5    hundred million dollars.  And Mr. Larian comes up with

6    billings of a hundred million dollars.

11:57    7                In other words, I'm never going to get pleadings

8    that match $137 million between these parties.  I'm going to

9    get some excessive amount.

11:57   10                MR. CHATTERJEE:  That's right, Your Honor.  So

11    you -- you could get some excessive amount.  That is the

12    second question.

11:57   13                The first question is, is does it make sense to

14    either interplead the money or put it in an escrow, and then

15    setting a time frame or all lawful claimants to make an

16    assertion as to what they think they're entitled to.  And

17    then, when the issues are resolved on the merits, either

18    before Your Honor or through other proceedings, such as the

19    arbitration, to distribute the money out.

11:58   20                THE COURT:  Okay.

11:58   21                MR. CHATTERJEE:  But, Your Honor, I just -- the

22    key issue here is, is what I heard Ms. Keller say, is they

23    want the money from this judgment in order to fund

24    additional litigation against Mattel.

11:58   25                THE COURT:  Or to defend against litigation.

11:58    1          MR. CHATTERJEE:  Or to defend against litigation

         2   brought by Mattel.

11:58    3          THE COURT:  And I have to look at the position of

         4   the insured versus insurance carriers in the Ninth Circuit.

         5   That's a pretty interesting position.

11:58    6          MR. CHATTERJEE:  That's an interesting issue.

11:58    7          We're -- we're in a different position than them.

         8   And I wanna make sure that's clear.  Uh, you made a

         9   question -- you asked a question, Your Honor, of the

        10   insurance companies of, "Didn't you guys fight paying at the

        11   first instance?"

11:58   12          That is not the situation Orrick is in.  We did

        13   the work.

11:58   14          THE COURT:  Right.

11:58   15          MR. CHATTERJEE:  And -- and that's a -- a big

        16   difference in my mind, uh, Your Honor.  Uh -- but, you know,

        17   at the end of the day, um, you know, this is not -- when

        18   you're talking about the Orrick assertion -- and that's what

        19   I'm here talking about on behalf of my firm -- you know that

        20   is a different question than subrogation.

11:59   21          I'm not smart enough to understand the insurance

        22   stuff.  That's -- I'm an I.P. guy, and -- but -- but at the

        23   end of the day, the Orrick assertion is -- you know, we did

        24   the work.  We billed the time.  You approved our bills in

        25   issuing an attorneys fees award.  That -- all of that is

DEBBIE GALE, U.S. COURT REPORTER

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

77

|       |     |                                                                      |
|-------|-----|----------------------------------------------------------------------|
|       | 1   | undisputed.                                                          |
| 11:59 | 2   | The only issue that is disputed really is that MGA                  |
|       | 3   | and Mr. Larian don't wanna pay for it.                               |
| 11:59 | 4   | THE COURT:  Okay.  Thank you.                                        |
| 11:59 | 5   | All right.  Now here's my question:  I want to                      |
|       | 6   | assume that the arbitration panel hands down a judgment             |
|       | 7   | between 20- and $30 million.  I want to assume that the             |
|       | 8   | litigation continues on, for a moment, with the carriers and        |
|       | 9   | that somehow -- what? -- we get a judgment, Counsel, of             |
|       | 10  | 80 million, hypothetically?  Hundred.  It doesn't matter.           |
| 11:59 | 11  | MS. FIELD:  80 million, I'll go with that.                          |
| 11:59 | 12  | THE COURT:  Okay.                                                    |
| 11:59 | 13  | MS. KELLER:  It could be nothing.                                   |
| 11:59 | 14  | THE COURT:  Could be nothing.  But let's just take                  |
|       | 15  | 80 million for my hypothetical, okay?  Let's assume that            |
|       | 16  | Mr. Larian, though, has billings that show that he's got            |
|       | 17  | another 80 million out-of-pocket.                                   |
| 12:00 | 18  | In other words, what happens if I have competing                    |
|       | 19  | claims -- if I don't interplead this matter, and I have             |
|       | 20  | competing claims, Ms. Keller, that come in -- how is the            |
|       | 21  | Court going to sort that out?                                       |
| 12:00 | 22  | MS. KELLER:  Well, the Court sorts it out in the                    |
|       | 23  | usual way:  There's litigation.  There are judgments.               |
| 12:00 | 24  | THE COURT:  In other words --                                       |
| 12:00 | 25  | MS. KELLER:  There's proof --                                       |

DEBBIE GALE, U.S. COURT REPORTER

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

78

12:00    1            THE COURT:  Just a moment.

12:00    2            The billing between the carriers and Mr. Larian

3    gets decided in the same proceeding?  And I really only have

4    to worry about Orrick?  So whatever Orrick comes in at

5    through the arbitration panel, if I decide to uphold it, and

6    the litigation gets resolved, I have the litigation between

7    Larian and the carriers, and the trier of fact's going to

8    come up with some number.

12:00    9            MS. KELLER:  Here's the problem:  Interpleader

10   wasn't designed to do any of this.

12:00   11            THE COURT:  Right.

12:00   12            MS. KELLER:  We've heard the term "stakeholder"

13   thrown around.  There's only one stakeholder here, and

14   that's Mattel.

12:00   15            Orrick, in its moving papers, said that it wasn't

16   attacking Mattel.  It was attacking the rest.  Well, that

17   means it's not appropriate for interpleader.  It just isn't.

12:01   18            And the reason that we're -- we continue to be

19   suspicious about the bad faith of what we see as a collusive

20   action is, for example, we're hearing all these impassioned

21   arguments from Ms. Field -- it's been twice now -- on behalf

22   of Orrick.  But she represents Crum & Forster Insurance.

23   And she earlier, in response to Orrick filing a claim, filed

24   an objection to the claim, saying that it was

25   non-meritorious and the Court shouldn't entertain it.  Now,

DEBBIE GALE, U.S. COURT REPORTER

1    today, she's presenting impassionate defenses of Orrick, not

2    her client.

12:01    3         What the Court is being asked to do is go outside

4    interpleader, and go outside, speculate on judgments, and --

5    and look at a potential claim that may be perfected by

6    Orrick, and maybe not.  Let's not forget not one shred of

7    evidence has been taken yet in the arbitration.  And -- and

8    the partial final award that was referenced hasn't been

9    confirmed by the Superior Court, so it doesn't exist as a

10   legal certainty at that point.

12:02    11        So the Court is being asked to go out and -- and

12   protect people's interest from dissipation of assets.

13   That's not one of the purposes of interpleader.

12:02    14        Court's being asked to make sure that this law

15   firm which worked so hard gets paid.  That's not one of the

16   purposes of interpleader.

12:02    17        And there's one and only one stakeholder.  And

18   that stakeholder has conceded to the Court earlier that it

19   believes that, if the Court orders it to pay, it will not be

20   subjected to any legitimate future legal action.

12:02    21        And the Supreme Court, in State Farm --

12:02    22        THE COURT:  Other than the threat of the carrier.

12:02    23        MS. KELLER:  Well, the threat.  But they know that

24   it -- it's an empty threat.  It's a stalking horse to get

25   into this interpleader.

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

80

| | |
|---|---|
| 12:02 | 1 |
| | 2 |
| | 3 |
| | 4 |
| | 5 |
| | 6 |
| 12:03 | 7 |

12:02   1         But the Supreme Court in the *State Farm* case,

2    *State Farm v. Tashire* said that the purpose of interpleader

3    is to protect the stakeholder -- that would be Mattel --

4    from vexatious and multiple litigation; not to protect

5    against piecemeal litigation; not to protect against

6    dissipation.

12:03   7         So we think it's pretty clear.  We think the Court

8    should deny the request for interpleader, given that the

9    stakeholder itself -- the only one properly before this

10   Court, as a party -- everybody else has just got a hand out.

11   But they're not properly before the Court as a party, only

12   the stakeholder Mattel is -- which brought this action --

13   has conceded it doesn't believe it will legitimately be

14   subjected to any vexatious or multiple claims by anybody

15   should this Court order it to pay.

12:03   16        THE COURT:  Okay.

12:03   17        I'm going to give you 5 minutes.  I've asked the

18   questions I wanted to today.  I'm satisfied with the

19   answers.  But you have 5 minutes, and that means 5 minutes.

12:03   20        Mr. Zeller.

12:03   21        MR. ZELLER:  Thank you, Your Honor.

12:03   22        My concession certainly did not go so far as to

23   say we would not be subject to multiple claims.  The Court's

24   heard Mattel being threatened in this courtroom; it has seen

25   the correspondence.  People are making claims.

DEBBIE GALE, U.S. COURT REPORTER

12:04     1              THE COURT:  It's anticipatory, just like

          2    Ms. Keller's argument.

12:04     3              MR. ZELLER:  That's right.  But -- but let me read

          4    from *Mack*, Your Honor.

12:04     5              THE COURT:  I can read *Mack*, Counsel.  Don't waste

          6    your four and a half minutes that you've got left.

12:04     7              MR. ZELLER:  Well, it's very clear that -- and

          8    this is true generally of the law -- that potential, as well

          9    as actual, claims are covered by interpleader, as well as

         10    litigation expense.

12:04    11              The one thing I will say about an advanced

         12    interpleader -- 'cause we're in the Court's hands.  Let me

         13    be perfectly clear about that about Mattel's perspective.

         14    We'll do whatever the Court tells us, and that's why we came

         15    here to ask.

12:04    16              But one advantage of interpleader, I think, from

         17    the Court's perspective, is it does have broad powers at

         18    that point.  Section 2361, for example, gives this Court

         19    broad equitable injunctive powers against other proceedings.

         20    That is a power that I don't think is available through

         21    other kinds of mechanisms.

12:04    22              And certainly, if the Court just simply orders

         23    Mattel to pay the money, the Court is not going to have that

         24    power available to it.  So I do think that there at least is

         25    perhaps an advantage from that perspective.

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

82

| | |
|---|---|
| 12:05 | 1 |

       The Court can put an end to it.  The Court can,

2    through the interpleader -- as we've requested, if it goes

3    this route -- issue an injunction so the insurance companies

4    are not making these claims against Mattel.  It will at

5    least stop against that litigation or re-litigation as

6    meritless as we think it is.  But nevertheless, it will at

7    least bring an end to that portion of it and give the Court

8    more control.

9          And that is part of what *Mack* says is an important

10   aspect -- an important purpose of interpleader, where it

11   says -- it's talking about the purpose of interpleader:

12              "But also includes limiting litigation

13              expenses which is not dependent on the

14              merits of adverse claims only their

15              existence."

16   THE COURT:  Okay.  Thank you very much.

17   MR. ZELLER:  Thank you.

18   THE COURT:  Counsel, you have 5 minutes.

19   MR. CHATTERJEE:  Your Honor, I just -- I want to

20   wind up with one thing.  I don't think it'll even take me,

21   uh, 5 minutes.

22          So, um, as Your Honor recognized earlier, MGA is

23   choosing to proceed with its current case, and it is

24   choosing to use the Mattel money to fund that.  That is a

25   credible threat of dissipation of the assets.

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

83

12:06   1            THE COURT:  But also to defend.

12:06   2            In other words, you've got a very strong argument

3    on the first part, but you're neglecting the second part.

12:06   4            MR. CHATTERJEE:  And that's an important part,

5    Your Honor.  Because I heard you say that before.  But as I

6    understand the case today, with the remand from the Ninth

7    Circuit, the only claims that remain are MGA's claims

8    against Mattel.

12:06   9            The -- there -- there aren't claims going the

10   other way.  So they are using the money that at least an

11   arbitration panel has found partially we're entitled to, to

12   fund a litigation against Mattel.  That's the money that we

13   believe we're entitled to; and, at least as to 23 million of

14   it, or so, the arbitration panel has agreed with us.

12:07   15           That is a threat of dissipation of the assets.

16   Because they don't want to pay us, they want to use that

17   money to litigate against Mattel, that is -- that is not

18   just a potential threat, that is an actual objective that

19   they have articulated.

12:07   20           And if they're saying they don't have the money

21   otherwise, why shouldn't we be concerned that the assets are

22   going to be dissipated and won't be available to us after

23   all the hard work of my partners and colleagues in the

24   earlier case that was before Your Honor.

12:07   25           Your Honor, it is for that reason that we believe

 1    interpleader is proper and that we believe that Your Honor

 2    should interplead the money to ensure that our firm gets

 3    paid the amounts that we -- that are due.

 4          THE COURT:  Thank you.

 5          You have 5 minutes, Ms. Keller.

 6          MS. KELLER:  Kids these days don't know what a

 7    broken record is, but I do, and I don't want to sound like

 8    one, so I don't want to -- I won't trod the same ground that

 9    Mr. Zeller was starting down with the *Mack* case.  *Mack* case

10    discusses interpleader, what it is and what it isn't.

11          Counsel hasn't cited a single case, not one, that

12    interpleader is appropriate to prevent dissipation of

13    assets, not a single one.  This Court would be making

14    probably the first such foray into interpleader law if the

15    Court were to do that.

16          These parties have had plenty of time to come up

17    with cases and examples.  They haven't been able to.  What

18    they've come up with is the standard insurance cases where

19    there's a stakeholder and a bunch of claimants are coming in

20    to the stakeholder -- in this case Mattel.  And they can't

21    do it.  They can't come up with a single case on point.

22          You're hearing emotional arguments about Orrick,

23    the hard work that Orrick engaged in before this Court.

24    We've heard those emotional arguments even from attorneys

25    who don't represent Orrick.  And perhaps it's their intent

```
          1    to tug at the Court's heartstrings.  I don't know?  I don't
          2    know what the purpose of that is.  But I do know that there
          3    is no case I've seen holding an interpleader is appropriate
          4    where the stakeholder doesn't have a legitimate fear of
          5    litigation by an -- by a law firm.
12:09     6          Now, here, Orrick itself, in its moving papers,
          7    has not -- has neglected, has omitted, has refused to say it
          8    has a claim against Mattel.  Doesn't say that.  In fact, it
          9    states it doesn't.  It has a claim against "the rest."
         10    That's all the Court needs to know.
12:09    11          THE COURT:  Thank you, Ms. Keller.
12:09    12          Counsel, you've got 5 minutes.
12:09    13          MS. FIELD:  Your Honor, I think every case of
         14    interpleader involves a situation in which someone is
         15    concerned about the dissipation of assets; that is, the
         16    assets that are the subject of the interpleader are going to
         17    go to some party as opposed to another party.  So the
         18    suggestion that there is no case that involves a situation
         19    like this doesn't make sense to me.  Every interpleader case
         20    involves a situation where people are fighting over who
         21    should get a part of that money and it shouldn't go
         22    elsewhere.
12:10    23          But let me be clear.  I heard this issue about why
         24    I make the plea for the Orrick bills.  It's because my
         25    client paid those bills.  And if Orrick's not gonna get the
```

1   money that we paid to MGA for those bills, then, I guess, we

2   should get the money back; because the whole concept here is

3   we paid for the defense, and in some cases, we paid a part

4   of the very bills that are at issue here.  That's why I

5   care.  Because, if Orrick doesn't get that money -- and I

6   think that perhaps they should get some of that money --

7   then, MGA shouldn't get that money because they didn't pay

8   it.  So that's the answer.

12:11   9        The answer is that every single interpleader case

10   is about equity.  It is about fairness.  It is about

11   different people claiming different amounts.  And it may be,

12   at the end of the day, Your Honor, that Orrick only proves

13   $20 million.  And it may be that we come in and show the

14   80 million you posited.  And it may be that MGA comes in and

15   says, "I'm entitled to 80 million."

12:11   16        And Your Honor will look at what the bills were,

17   and what the people paid, and what the arguments that

18   Mr. Bidart says they want to make, and you'll decide if

19   we're entitled to the money or not, if MGA is entitled to

20   the money or not.  And that's the whole idea.

12:11   21        And Mattel?  Mattel will have paid the money to

22   the Court.  It will have extricated itself from future

23   litigation that Ms. Keller keeps saying is in the future.

24   But the cases don't require there be litigation pending in

25   order to have an interpleader.

DEBBIE GALE, U.S. COURT REPORTER

12:11   1       And I've stood here and Mr. Sheridan has stood

2   here and told you that our clients believe they have a

3   "subro" right.  And I've also acknowledged that you may

4   disagree.  But at least we should be able to do so.

12:12   5       THE COURT:  Okay.  Counsel, 5 minutes.

12:12   6       MR. SHERIDAN:  Mark Sheridan again on behalf of

7   the Chartis companies.

12:12   8       Your Honor has raised the issue about how you'll

9   deal with this if the money is interpleaded.  Your Honor

10   issued a ruling awarding MGA $137 million in fees.  It knows

11   specifically which fees it ordered.  The parties can

12   demonstrate whether they paid those fees.  My client, the

13   other insurers, can specifically tell you entry-by-entry,

14   which fees we paid and how much.  So there's not going to be

15   a dispute about whether parties paid more than 137 million

16   in the aggregate.  We did.

12:12   17       But with respect to the fees that Your Honor

18   ordered as part of this award, I can tell you line-by-line,

19   entry-by-entry how much we paid.  Yes, it will require a

20   little bit of discovery so the parties can know that

21   information.  But we can determine for the Court exactly

22   what was paid by each individual carrier.

12:13   23       And my guess is that MGA can then tell you whether

24   they did or did not pay that money to Orrick.

12:13   25       THE COURT:  Okay.  Well, Counsel, thank you very

DEBBIE GALE, U.S. COURT REPORTER

LACV 04-9049 DOC - 2/26/2013 - Item No. 43

88

```
 1    much.  I'll take it under submission.  You'll hear from me
 2    shortly.  Have a good day.
 3              MS. KELLER:  Your Honor, before we go, would the
 4    Court grant us leave to go ahead and file the papers we
 5    talked about?
 6              THE COURT:  I may.  I want to think about that.
 7    I'll hand that down in written form.  I don't know want to
 8    do that verbally from the bench.
 9              MS. KELLER:  Thank you.
10              THE COURT:  Thank you very much.
11              MS. FIELD:  May I ask one more thing, Your Honor?
12              There's a submittal before Your Honor -- just to
13    bring it up -- from the insurance carrier and MGA case
14    asking for a status conference in the future.  And perhaps
15    when Your Honor's considering this issue, it could consider
16    that request for a status conference in that case -- the
17    case that's stayed.
18              THE COURT:  Okay.
19              Okay.  Thank you very much, Counsel.  Have a good
20    day.
21              (Proceedings adjourned at 12:14 p.m.)
22                            -oOo-
23
24
25
```

DEBBIE GALE, U.S. COURT REPORTER

12:14   1                          -oOo-

12:14   2

12:14   3                       CERTIFICATE

12:14   4

12:14   5        I hereby certify that pursuant to Section 753,

      6   Title 28, United States Code, the foregoing is a true and

      7   correct transcript of the stenographically reported

      8   proceedings held in the above-entitled matter and that the

      9   transcript page format is in conformance with the

     10   regulations of the Judicial Conference of the United States.

12:14  11

12:14  12   Date:  February 27, 2013

12:14  13

12:14  14
12:14                          /s/ Debbie Gale
12:14  15           _____
12:14              DEBBIE GALE, U.S. COURT REPORTER
12:14  16           CSR NO. 9472, RPR, CCRR

12:14  17

     18

     19

     20

     21

     22

     23

     24

     25

**$**

$100 [1]  58/20
$100 million [1]  58/20
$137 [12]  9/9 21/18 35/13 36/4
 50/5 56/4 59/10 60/9 61/16
 73/18 75/8 87/10
$137 million [12]  9/9 21/18
 35/13 36/4 50/5 56/4 59/10
 60/9 61/16 73/18 75/8 87/10
$137.8 [2]  33/14 37/2
$137.8 million [2]  33/14 37/2
$138 [1]  41/19
$138 million [1]  41/19
$157 [1]  21/18
$20 [1]  86/13
$20 million [1]  86/13
$23 [2]  14/14 70/23
$23 million [2]  14/14 70/23
$30 [5]  14/12 59/18 59/18 75/3
 77/7
$30 million [5]  14/12 59/18
 59/18 75/3 77/7
$315 [1]  10/2
$315 million [1]  10/2
$50 [1]  29/24
$50 million [1]  29/24

**'**

'cause [7]  22/13 26/16 27/24
 28/21 52/5 70/4 81/12

**—**

-AND [4]  2/16 3/21 4/7 4/13
-oOo [2]  88/22 89/1

**/**

/s [1]  89/14

**0**

04-9049 [1]  1/7
04cv9049 [1]  1/25
053 [1]  1/22
05654 [1]  63/1
07932-1047 [1]  3/12

**1**

1-053 [1]  1/22
10-day [2]  28/17 50/4
1000 [2]  3/19 4/5
1047 [1]  3/12
10:10 [1]  6/3
10th [1]  2/7
11:01 a.m [1]  49/24
11:24 [1]  49/25
1287 [1]  42/7
1288 [1]  42/8
12:14 [1]  88/21
137 [5]  21/20 22/17 41/19
 46/24 70/3
137 million [4]  53/9 56/10
 61/8 87/15
137.8 [2]  21/21 51/5
137.8 million [1]  22/9
14 [1]  32/7
1400 [1]  3/19
15 [1]  43/19
157 [1]  9/19
1600 [1]  4/10
18500 [1]  2/14
18th [1]  4/16
1947 [1]  24/12
1999 [2]  24/20 42/8

**2**

20 [1]  77/3
20 million [2]  56/7 61/10
20 minutes [1]  49/23
2000 [1]  3/6
20004-2134 [1]  3/19
2007 [1]  63/23
2008 [3]  63/20 64/2 64/5
2009 [2]  63/20 63/20
2011 asserting [1]  68/15
2013 [4]  1/16 6/1 62/14 89/12
2013-02-26 [1]  1/25
202-662-2026 [1]  3/20
2026 [1]  3/24
213-443-3000 [1]  2/8
213-629-7886 [1]  3/7
2134 [1]  3/19
22 [1]  63/23
23 million [1]  83/13
2361 [1]  81/18
24 [1]  63/20
2543 [1]  2/8
2545 [1]  3/24
26 [3]  1/16 1/25 6/1
27 [1]  89/12
2700 [1]  3/25
28 [3]  62/14 66/5 89/6

**3**

30 [1]  61/10
300-some [2]  46/23 55/17
3000 [1]  2/8
310 [1]  9/17
310 million [1]  70/2
315 [1]  9/17
315 million [2]  9/18 9/20
3383 [1]  3/6
35 [1]  63/1
37 [1]  55/2
37 million [2]  56/8 61/9
38-page [1]  55/2

**4**

401 [1]  3/18
401K [1]  16/9
411 [1]  1/22
415-421-6500 [1]  4/17
43 [2]  1/7 6/2
49.9 [1]  24/14
4935 [1]  2/20
4th [2]  1/22 42/7

**5**

5 minutes [1]  82/21
50 [1]  51/13
50.1 [1]  24/14
500 [1]  3/12
558-8141 [1]  1/23
560 [1]  2/14
567-6700 [1]  4/12

**6**

600 [1]  2/19
621-4935 [1]  2/20
650-614-7356 [1]  4/6
6500 [1]  4/17
6700 [1]  4/12
69 Cal.App [1]  42/7

**7**

714 [1]  1/23
7336 [1]  3/13
7356 [1]  4/6

753 [1]  89/5
7886 [1]  3/7

**8**

8-0 [1]  24/25
80 million [8]  51/14 56/6
 77/10 77/11 77/15 77/17 86/14
 86/15
8141 [1]  1/23
865 [1]  2/7
8700 [1]  2/15

**9**

9-0 [1]  24/25
90017-2543 [1]  2/8
90017-3383 [1]  3/6
9049 [1]  1/7
909 [1]  2/20
91711 [1]  2/19
92612 [1]  2/15
92614 [1]  4/11
92614-2545 [1]  3/24
92701 [1]  1/23
94025 [1]  4/6
94111 [1]  4/16
9472 [2]  1/21 89/16
949 [1]  4/12
949-476-8700 [1]  2/15
949-622-2700 [1]  3/25
973-549-7336 [1]  3/13

**A**

a.m [3]  6/3 49/24 49/25
abeyance [1]  25/12
ability [3]  51/14 64/15 67/12
able [3]  67/3 84/17 87/4
about [53]
above [1]  89/8
above-entitled [1]  89/8
absence [1]  69/9
absolute [2]  35/1 35/12
absolutely [3]  25/10 45/16
 46/8
absurd [2]  48/20 48/25
access [3]  31/21 66/15 66/22
accomplishes [1]  74/22
Accordingly [1]  42/9
accounting [1]  65/12
accurate [1]  57/23
accurately [1]  66/8
acknowledged [1]  87/3
acted [1]  19/6
acting [2]  20/16 67/22
action [22]  12/5 13/2 13/14
 14/6 15/12 17/5 17/10 18/8
 31/15 32/13 39/1 45/19 54/13
 62/18 63/1 66/4 68/25 69/1
 72/18 78/20 79/20 80/12
actions [3]  34/13 39/3 74/25
actual [2]  81/9 83/18
actually [2]  24/25 59/11
add [3]  13/19 36/17 68/25
additional [2]  11/25 75/24
address [2]  33/24 47/2
addressed [1]  38/21
adjourned [1]  88/21
adjudicate [1]  14/21
adjudicated [4]  13/15 32/19
 33/3 62/6
adjudication [1]  32/14
administered [1]  72/23
administering [1]  72/7
admit [1]  60/23
advanced [1]  81/11

**A**

advantage [4]  42/13 66/16
 81/16 81/25
adversary [1]  66/14
adverse [2]  14/21 82/14
advice [2]  25/2 25/4
advise [1]  32/8
affect [2]  34/5 65/17
affirm [1]  34/22
affirmed [5]  31/25 32/2 34/21
 38/11 38/14
after [10]  15/18 16/19 17/3
 21/12 23/19 24/13 24/23 42/14
 64/6 83/22
again [25]
against [65]
aggregate [1]  87/16
ago [1]  68/6
agree [8]  10/2 13/25 24/3
 43/15 45/17 55/6 57/10 66/8
agreed [2]  23/25 83/14
agreement [5]  55/19 57/25
 58/10 58/11 72/1
ahead [3]  27/17 37/9 88/4
al [2]  1/8 3/9
all [70]
all-or-nothing [3]  56/18 56/20
 73/15
allegations [1]  17/21
alleged [1]  20/7
allow [7]  14/20 23/8 23/12
 23/13 37/9 55/20 60/17
allowed [1]  57/25
allows [1]  73/15
alone [2]  23/14 60/24
along [4]  8/1 27/8 68/13 71/9
already [7]  23/13 26/22 26/23
 32/4 54/10 54/10 55/22
also [14]  14/17 23/7 29/15
 36/13 49/14 53/21 59/2 59/4
 67/14 69/21 71/22 82/12 83/1
 87/3
alternate [1]  16/11
although [3]  52/13 57/13 61/15
always [2]  55/23 55/24
am [1]  35/19
amend [2]  22/21 36/17
Amended [2]  32/14 63/23
amount [18]  9/16 9/19 9/21
 26/22 37/16 51/15 51/17 53/7
 56/15 58/25 70/6 70/15 71/7
 72/9 72/17 73/17 75/9 75/11
amounts [3]  53/4 84/3 86/11
Ana [3]  1/15 1/23 6/1
analogous [1]  55/19
analysis [2]  36/23 59/20
Angeles [2]  2/8 3/6
Anna [1]  24/9
another [10]  7/24 13/16 16/6
 16/6 20/1 20/3 39/5 74/14
 77/17 85/17
answer [12]  32/15 39/21 43/9
 43/10 43/19 44/5 63/23 69/25
 70/4 70/7 86/8 86/9
answers [1]  80/19
anticipate [1]  55/17
anticipatory [2]  53/17 81/1
any [29]
anybody [3]  17/5 67/3 80/14
anybody's [1]  30/5
anything [8]  13/18 18/11 25/6
 30/19 34/2 49/17 66/1 66/25
anyway [6]  4/22 11/17 25/7

52/4
apologize [3]  11/10 62/1
 62/1
apparent [1]  64/18
appeal [3]  38/13 48/17 48/18
appealed [1]  16/16
APPEARANCES [3]  2/1 3/1 4/1
appears [1]  9/5 9/7 66/6
applicant [2]  62/21 62/23
application [1]  14/20
apply [2]  13/7 62/20
appoint [2]  73/8 73/24
appointed [1]  72/4
appreciates [1]  10/16
approach [4]  66/19 72/11 73/15
 74/12
appropriate [12]  7/12 14/7
 14/18 28/22 30/3 30/4 49/11
 53/15 69/10 78/17 84/12 85/3
approved [1]  76/24
apt [1]  74/8
arbitrarily [1]  73/24
arbitration [12]  14/13 14/14
 61/17 70/14 70/22 71/3 75/19
 77/6 78/5 79/7 83/11 83/14
arbitrators [2]  18/4 59/17
are [74]
area [1]  24/12
aren't [6]  17/7 33/9 44/9
 61/11 65/18 83/9
argue [2]  47/22 65/15
argued [2]  31/18 32/16
arguers [1]  6/16
argues [1]  9/24
arguing [12]  6/9 6/20 7/1 7/5
 7/11 7/15 8/9 8/11 8/13 8/19
 35/16 35/17
argument [45]
arguments [8]  34/14 34/16
 53/15 64/21 78/21 84/22 84/24
 86/17
argurer [1]  8/2
arose [1]  62/14
around [4]  22/13 32/23 43/9
 78/13
articulated [1]  83/19
as [71]
ask [11]  9/4 23/10 27/17 28/2
 36/16 37/24 37/25 44/2 50/22
 81/15 88/11
asked [10]  22/25 23/1 30/24
 39/20 69/23 76/9 79/3 79/11
 79/14 80/17
asking [7]  18/21 28/15 28/19
 33/19 45/6 73/14 88/14
aspect [1]  82/10
assert [4]  17/24 31/23 35/18
 68/23
asserted [4]  39/16 66/1 68/5
 68/18
asserting [2]  19/5 68/15
assertion [3]  75/16 76/18
 76/23
asset [1]  73/1
assets [11]  48/10 51/12 53/14
 73/5 79/12 82/25 83/15 83/21
 84/13 85/15 85/16
assisting [2]  8/15 15/1
assume [5]  27/1 59/14 77/6
 77/7 77/15
astronomical [1]  12/18
attached [2]  68/4 68/14
attachment [1]  64/16
attacking [2]  78/16 78/16

attempt [1]  34/12
attempting [1]  34/24
attention [1]  55/3
attorney [14]  2/13 2/18 3/5
 3/11 3/18 3/23 4/5 4/9 4/15
 11/1 42/14 42/15 42/17 42/18
attorneys [6]  2/6 13/4 14/8
 42/10 76/25 84/24
avail [1]  11/21
available [3]  81/20 81/24
 83/22
Avenue [1]  2/14
avoid [6]  11/19 11/22 11/24
 12/9 12/20 32/3
avoiding [1]  39/6
award [15]  13/4 14/7 21/8
 21/17 35/12 36/4 37/14 37/17
 40/6 57/7 59/10 70/23 76/25
 79/8 87/18
awarded [1]  65/3
awarding [2]  68/21 87/10
awards [1]  68/22
aware [1]  71/23
awe [1]  26/18

**B**

back [40]
backdrop [1]  31/24
bad [3]  19/6 58/14 78/19
Baker [3]  2/6 6/7 6/10
bankruptcy [3]  24/11 24/16
 25/1
bar [1]  50/17
based [4]  35/10 36/14 37/17
 56/25
baseless [1]  68/18
basic [1]  72/6
basically [2]  9/9 74/21
basis [5]  35/12 58/17 59/19
 63/7 63/19
battles [1]  67/16
be [149]
became [1]  71/23
because [59]
been [50]
before [25]
beforehand [1]  55/9
began [2]  39/15 64/3
begin [2]  9/5 21/5
behalf [15]  7/13 8/5 8/8 15/8
 16/17 19/5 37/12 39/13 62/10
 62/15 67/25 69/15 76/19 78/21
 87/6
behind [1]  20/21
being [20]  15/13 16/16 17/20
 20/1 20/15 20/16 22/17 25/25
 32/15 35/14 36/21 59/10 66/1
 68/12 72/14 72/19 79/3 79/11
 79/14 80/24
being -- you [1]  17/20
belatedly [1]  17/24
believe [16]  11/2 11/21 35/20
 35/25 36/6 36/22 46/6 47/18
 56/20 59/1 65/4 80/13 83/13
 83/25 84/1 87/2
believes [1]  79/19
below [1]  25/22
bench [1]  88/8
beneficiary [1]  16/3
benefit [3]  66/14 72/14 72/22
best [1]  21/8
better [4]  34/4 50/20 66/21
 66/23
between [9]  38/15 52/2 52/24

**B**

between... [6]  54/9 66/17 75/8 77/7 78/2 78/6
Beyond [1]  9/24
BIDART [10]  2/17 2/18 5/9 7/20 31/11 34/11 39/10 62/9 68/10 86/18
BIDDLE [1]  3/10
big [1]  76/15
billed [1]  76/24
billing [1]  78/2
billings [6]  58/24 59/2 59/3 75/4 75/6 77/16
bills [25]
bind [1]  46/9
bit [3]  30/15 46/25 87/20
body [1]  17/17
bond [34]
bond's [2]  21/14 28/22
both [6]  12/11 12/14 12/15 12/17 24/13 31/17
bottom [1]  25/21
Boulevard [2]  2/19 3/5
Bowl [1]  25/22
box [2]  26/7 26/8
breach [2]  63/12 64/9
breaking [1]  17/14
Brett [1]  2/5
brief [1]  24/3
briefed [2]  26/19 32/15
briefing [3]  27/18 28/7 31/17
bring [6]  13/13 45/1 67/13 67/14 82/7 88/13
bringing [2]  15/16 41/20
broad [3]  13/1 81/17 81/19
broken [1]  84/7
brought [4]  45/6 48/3 76/2 80/12
bunch [1]  84/19
business [3]  11/1 19/15 72/7
but -- but [2]  76/22 81/3
buy [1]  64/8

**C**

CA [1]  4/6
Cal.App [1]  42/7
CALIFORNIA [14]  1/2 1/15 1/23 2/8 2/15 2/19 3/6 3/24 4/11 4/16 6/1 17/17 25/21 63/11
call [2]  9/6 9/11
came [7]  16/16 24/13 24/21 43/3 57/22 71/19 81/14
Campus [1]  3/12
can [38]
can't [6]  18/22 20/21 35/22 49/1 84/20 84/21
care [4]  9/4 9/24 12/7 86/5
careful [2]  65/14 73/22
carrier [12]  16/3 18/24 61/5 62/17 62/23 67/15 67/18 67/24 73/23 79/22 87/22 88/13
carrier's [1]  54/3
carriers [48]
carriers' [1]  73/21
carry [1]  49/9
carrying [2]  47/10 48/2
CARTER [6]  1/3 24/22 25/10 51/4 58/12 58/15
case [50]
cases [9]  13/3 15/24 15/25 62/10 67/7 84/17 84/18 86/3 86/24
caught [1]  46/9

cause [5]  17/10 18/8 37/1 41/3 63/11 64/10 57/20
caused [2]  57/19 57/20
causes [2]  17/5 25/13
caution [1]  10/10
CCRR [2]  1/21 89/16
central [1]  1/2 29/4 30/2
certain [6]  21/10 34/13 34/14 51/15 52/25 71/17
certainly [12]  11/2 12/19 25/5 33/1 35/14 47/22 49/1 49/1 49/7 74/14 80/22 81/22
certainty [1]  79/10
CERTIFICATE [1]  89/3
certify [1]  89/5
cetera [2]  27/4 53/7
chair [2]  7/16 8/13
chance [3]  22/11 31/9 55/5
change [1]  47/12
CHARTIS [10]  3/9 8/6 39/14 40/4 58/1 58/5 68/1 68/3 69/21 87/7
Chattergy [1]  5/13
Chatterjee [4]  4/4 5/10 8/14 69/18
chime [1]  74/10
choice [3]  21/2 26/16 52/15
choose [1]  48/24
choosing [4]  67/13 67/14 82/23 82/24
chose [1]  34/23
Chump [1]  47/12
Circuit [53]
Circuit's [1]  46/6
Circuits [1]  25/5
circumstance [1]  38/17
circumstantially [1]  63/6
circumvent [2]  32/3 49/1
cite [1]  13/6
cited [2]  15/24 84/11
cites [1]  13/3
claim [64]
claimant [4]  16/22 20/7 56/23 57/1
claimants [10]  10/16 10/22 11/20 15/22 16/19 17/1 21/11 56/22 75/15 84/19
claimants' [1]  73/9
claimed [1]  53/4
claiming [6]  14/17 38/18 44/10 44/12 66/7 86/11
claims [60]
claims' [1]  21/7
Clarement [1]  2/19
classic [1]  15/10
clear [17]  22/15 35/9 41/10 42/23 43/24 44/9 46/4 48/17 57/20 66/21 68/2 69/1 76/8 80/7 81/7 81/13 85/23
clearly [5]  19/19 23/23 34/18 36/22 37/8
client [10]  30/14 40/4 40/9 40/10 42/17 57/24 58/4 79/2 85/25 87/12
client's [1]  39/18
clients [8]  39/22 68/2 68/3 68/23 69/1 69/7 69/10 87/2
close [1]  58/25
closely [1]  69/21
Code [1]  89/6
colleague [1]  44/25
colleagues [1]  83/23
colloquy [1]  56/13
collusive [1]  78/19

Colorado [1]  25/22
combined [2]  23/7 30/25
come [24]
comes [4]  25/7 25/15 61/15 75/3 75/4 75/5 78/4 86/14
coming [6]  16/19 20/22 26/11 28/7 53/6 57/5 84/19
comment [3]  34/1 37/5 38/6
commented [1]  34/13
comments [2]  35/7 40/17
commercial [2]  34/8 34/8
commitment [1]  70/10
common [1]  65/13
common-fund [1]  65/13
companies [14]  8/6 31/14 32/18 33/2 37/25 40/4 58/1 58/5 67/21 68/1 68/3 76/10 82/3 87/7
companies' [1]  49/8
company [6]  3/2 3/9 3/15 7/9 72/20 75/4
compared [2]  47/12 48/2
comparison [1]  47/14
competing [19]  10/16 10/22 11/9 11/20 11/22 15/13 15/23 16/2 16/4 16/7 18/22 18/25 35/7 41/12 46/12 49/16 55/11 77/18 77/20
complaint [4]  22/21 36/17 68/4 68/5
completely [1]  63/16
complexity [1]  11/22
complying [1]  11/3
compulsory [5]  20/2 22/23 23/2 23/6 23/22
computation [2]  74/3 74/4
conceded [2]  79/18 80/13
concept [2]  17/12 86/2
concepts [1]  62/3
concern [4]  12/21 12/22 46/1 66/9
concerned [12]  9/10 10/18 10/22 11/17 12/16 18/17 45/5 46/23 60/14 67/11 83/21 85/15
concerning [8]  22/1 30/1 32/20 46/25 50/3 50/15 52/12 61/17
concerns [3]  9/23 22/1 60/13
concession [2]  52/12 80/22
conclude [1]  65/1
Concluding [5]  5/12 5/13 5/14 5/15 5/16
concoct [2]  48/19 51/12
confer [3]  27/16 27/24 30/17
conference [3]  88/14 88/16 89/10
confessed [1]  64/3
confidentiality [1]  57/14
confirmed [3]  18/6 59/5 79/9
conformance [1]  89/9
confronted [1]  16/4
confusion [1]  36/5
Congress [1]  12/8
connection [1]  31/12
consider [2]  64/11 88/15
consideration [2]  71/17 71/24
considered [3]  29/19 65/13 65/14
considering [1]  88/15
constructed [1]  52/14
contention [1]  51/16
continue [3]  20/11 67/12 78/18
Continued [2]  3/1 4/1
continues [1]  77/8
contract [2]  63/12 64/9

## C

contrivance [1]  63/6
control [3]  59/24 73/20 82/8
controversy [3]  19/7 20/13
  63/7
conversation [1]  29/25
copyright [2]  14/9 21/7
correct [9]  33/10 39/17 41/23
  43/7 44/6 49/14 54/24 70/17
  89/7
correspondence [1]  80/25
cost [3]  47/10 48/2 48/5
costing [1]  27/25
costs [5]  11/25 12/10 12/16
  42/15 60/1
could [28]
couldn't [1]  13/6
counsel [34]
counterclaim [9]  20/2 22/24
  23/2 23/4 23/7 23/9 23/11
  32/15 63/23
counterclaims [1]  23/22
couple [3]  17/21 33/24 41/9
course [5]  13/11 18/15 18/20
  41/12 58/21
court [153]
Court's [16]  11/6 12/3 12/6
  22/5 34/17 35/12 36/7 38/12
  41/10 45/3 64/25 79/14 80/23
  81/12 81/17 85/1
courtroom [2]  29/10 80/24
courts [2]  19/4 72/6
covered [2]  30/12 81/9
create [2]  19/6 63/7
credible [1]  82/25
creditor [4]  15/16 16/22 52/1
  53/20
creditors [2]  15/17 16/25
critical [1]  34/15
CRUM [11]  3/2 7/9 33/24 35/9
  63/2 63/21 63/24 64/7 66/2
  68/3 78/22
crystal [1]  48/17
CSR [2]  1/21 89/16
current [1]  82/23
currently [1]  14/13 62/5
curtain [1]  20/21

## D

damages [1]  26/24
Date [1]  89/12
DAVID [1]  1/3
day [11]  20/3 28/17 50/4 60/11
  64/9 72/25 76/17 76/23 86/12
  88/2 88/20
days [2]  32/7 84/6
DC [1]  3/19
de [2]  24/17 48/2
de minimis [1]  48/2
de novo [1]  24/17
deal [4]  32/23 52/18 69/4 87/9
Debbie [3]  1/21 89/14 89/15
debtor [1]  18/23
December [2]  64/5 64/5
decide [9]  27/21 47/4 47/25
  53/12 59/25 61/7 61/9 78/5
  86/18
decided [8]  13/4 22/3 23/13
  24/17 26/22 26/23 64/21 78/3
decides [1]  28/2
deciding [1]  72/8
decision [6]  12/5 24/14 56/2
  56/22 60/6 73/25

declaration [3]  39/18 62/16
  68/1
decline [1]  33/1
defeat [1]  36/8
defend [19]  12/1 19/13 20/7
  21/3 32/14 34/1 40/5 42/10
  57/12 63/19 63/25 64/3 64/3
  65/24 67/15 67/18 75/25 76/1
  83/1
DEFENDANT [2]  2/11 3/2
Defendants [2]  1/9 3/9
defending [1]  21/8
defense [8]  12/17 14/8 35/11
  36/2 40/3 58/22 63/22 86/3
defenses [2]  33/12 79/1
defensive [1]  21/6
defer [1]  32/24
demonstrate [1]  87/12
denied [4]  31/16 32/2 63/24
  64/2
deny [1]  80/8
dependent [1]  82/13
deposited [1]  15/14
deprived [3]  31/22 72/14 72/19
described [1]  19/11
designated [1]  16/23
designed [1]  78/10
desire [1]  41/5
determination [1]  64/11
determine [1]  87/21
determined [2]  62/6 65/11
detriment [3]  27/2 47/7 48/1
did [24]
didn't [22]  14/1 18/1 18/11
  18/15 21/1 24/19 32/23 34/19
  35/2 40/22 40/24 43/9 55/5
  57/16 57/17 57/19 63/25 64/17
  68/12 72/3 76/10 86/7
dies [1]  16/2
difference [5]  38/15 43/25
  50/3 52/19 76/16
different [11]  33/25 38/13
  38/17 48/8 53/24 58/18 59/13
  76/7 76/20 86/11 86/11
differently [1]  59/9
difficult [2]  24/14 41/20
difficulty [1]  51/10
Dillon [1]  6/24
direct [7]  46/19 52/20 54/12
  61/16 62/12 62/18 62/24
directed [1]  9/21
direction [7]  10/11 41/10
  43/23 43/24 46/10 52/9 52/10
directions [1]  9/7
directive [8]  10/9 11/5 11/6
  12/3 14/5 18/13 45/7 46/6
directly [2]  63/3 66/2
disagree [1]  87/4
discharged [2]  42/13 42/16
discovery [4]  32/10 59/5 65/11
  87/20
discretion [4]  10/9 13/1 25/14
  37/6
discretionary [3]  9/6 9/11
  21/10
discuss [2]  66/19 71/14
discusses [1]  84/10
discussing [1]  26/8
dismissal [1]  20/1
dismissed [5]  17/25 19/18 26/5
  62/25 63/1
disposition [1]  11/8
dispute [2]  37/15 87/15
disputed [2]  74/10 77/2

dissipate [2]  53/14 70/20
dissipation [7]  73/1 79/12
  80/6 82/25 83/15 84/12 85/15
distracting [1]  45/13
distribute [1]  75/19
distributed [1]  73/16
distributes [1]  74/22
distribution [4]  59/25 72/4
  72/11 73/8
DISTRICT [3]  1/1 1/2 1/22
divide [2]  65/6 65/9
division [2]  51/18 56/13
divorcing [1]  16/10
do [63]
DOC [1]  1/7
docket [2]  63/1 68/12
does [14]  12/12 12/21 13/12
  25/6 36/7 36/25 37/1 43/25
  46/3 48/21 50/3 73/15 75/13
  81/17
doesn't [19]  12/1 14/5 34/5
  41/18 47/23 48/20 49/17 56/14
  61/22 62/2 73/3 77/10 79/9
  80/13 85/4 85/8 85/9 85/19
  86/5
doing [5]  18/11 20/5 20/8
  28/13 63/9
dollar [1]  46/23
dollars [7]  35/11 40/5 47/10
  55/17 73/23 75/5 75/6
don't [80]
done [6]  37/13 43/17 48/18
  52/8 65/11 65/12
down [8]  13/21 45/9 45/15
  51/21 66/10 77/6 84/9 88/7
dragged [3]  40/22 40/23 41/6
drags [1]  27/8
drained [1]  20/10
draw [1]  56/5
drawn [1]  43/11
DRINKER [1]  3/10
Drive [1]  3/12
due [4]  67/2 73/16 73/23 84/3
during [2]  58/5 66/4
duty [6]  32/13 34/1 63/19
  63/24 64/2 64/3
Dylan [1]  2/5

## E

each [6]  31/15 53/3 53/6 56/22
  57/1 87/22
earlier [6]  35/7 58/1 78/23
  79/18 82/22 83/24
earth [1]  19/11
easier [1]  70/5
ECHEVERRIA [1]  2/17
economic [1]  42/13
effect [2]  62/3
effectively [1]  70/24
efficiency [2]  37/9 38/25
effort [3]  70/11 70/12 72/9
either [13]  24/15 37/4 39/3
  43/5 44/16 44/17 46/18 53/9
  57/23 68/11 68/12 75/14 75/17
else [2]  51/24 80/10
elsewhere [1]  85/22
EMANUEL [2]  2/3 71/25
emotional [1]  84/22 84/24
empty [1]  79/24
encounter [1]  72/18
end [7]  49/5 72/25 76/17 76/23
  82/1 82/7 86/12
endorsing [1]  72/10

# E

engaged [1]  84/23
enjoin [1]  69/6
enough [3]  51/12 69/17 76/21
ensure [1]  84/2
entered [3]  16/12 16/14 38/12
entertain [2]  18/15 78/25
ENTERTAINMENT [2]  1/8 2/11
entirety [1]  65/3
entities [1]  39/14
entitled [31]
entitlement [3]  14/18 65/10
 72/1
entity [1]  21/4
entry [4]  87/13 87/13 87/19
 87/19
entry-by-entry [2]  87/13 87/19
equally [1]  67/11
equitable [9]  18/19 19/4 21/10
 37/7 37/8 51/10 55/13 59/22
 81/19
equitably [4]  56/3 56/5 65/6
 65/8
equities [4]  55/12 55/13 58/17
 64/11
equity [5]  20/21 51/20 54/4
 54/9 86/10
err [1]  10/10
escrow [2]  74/17 75/14
essentially [3]  11/8 20/15
 74/22
estate [1]  16/17
Estrich [4]  2/4 6/18 6/19
 13/18
et [4]  1/8 3/9 27/4 53/7
EVANSTON [4]  3/15 8/25 62/24
 63/2
Eve [1]  25/20
even [16]  12/6 17/9 17/9 17/24
 18/1 18/5 19/21 26/3 27/21
 32/6 32/18 35/17 41/23 47/23
 82/20 84/24
event [2]  28/1 66/25
events [1]  63/5
eventual [1]  64/15
Eventually [1]  25/18
ever [6]  17/24 18/7 24/9 26/1
 66/1 68/11
every [6]  20/7 23/8 38/8 85/13
 85/19 86/9
everybody [3]  20/10 61/13
 80/10
everybody's [1]  29/17
everything [1]  63/13
evidence [5]  18/5 57/1 59/8
 64/10 79/7
evident [1]  43/20
exact [1]  67/9
exactly [7]  11/19 18/10 19/8
 34/8 72/3 72/15 87/21
example [8]  13/6 16/1 58/4
 71/25 73/7 73/17 78/20 81/18
examples [1]  84/17
except [2]  46/24 60/5
excess [2]  14/12 37/1
excessive [9]  21/14 22/7 22/17
 27/8 27/22 30/7 50/7 75/9
 75/11
excessiveness [4]  22/2 30/11
 32/21 52/12
executing [2]  74/18 74/22
exemplary [1]  26/23
exercise [1]  37/11

Exhibit [2]  39/18 62/16
Exhibits [1]  62/16
exist [1]  79/9
existence [2]  15/12 82/15
expect [1]  6/11
expects [1]  19/19
expedite [1]  50/4
expended [1]  56/16
expense [2]  47/15 81/10
expenses [2]  21/6 82/13
explicit [4]  9/8 9/19 9/21
 64/22
explicitness [1]  9/11
exposed [1]  36/21
exposure [2]  42/2 64/8
expressed [1]  35/8
extent [4]  7/21 36/4 49/10
 52/25
extraordinary [1]  20/23
extricated [1]  86/22

# F

face [4]  35/23 47/9 48/17 69/3
Facebook [1]  71/15
facing [1]  44/9
fact [13]  10/23 12/6 19/20
 28/24 37/25 45/12 47/17 47/19
 55/4 55/10 59/23 68/14 85/8
fact's [1]  78/7
facts [4]  54/21 56/25 58/18
 61/12
fair [7]  14/19 36/21 36/24
 60/6 61/2 61/13 67/1
fairly [1]  73/19
fairness [1]  86/10
faith [6]  19/5 19/6 20/16
 20/19 58/14 78/19
family [1]  72/2
far [5]  21/17 37/3 46/9 72/11
 80/22
Farm [1]  79/21 80/1 80/2
fashion [1]  39/3
fault [2]  21/3 21/5
fear [6]  40/24 41/4 51/3 51/5
 70/19 70/20 73/1 85/4
fearful [1]  51/8
February [3]  1/16 6/1 89/12
February 26 [2]  1/16 6/1
February 27 [1]  89/12
federal [4]  1/21 26/10 26/11
 26/13
fee [1]  21/7
feel [1]  34/7
feeling [1]  52/17
fees [2]  12/18 13/4 14/8 14/9
 40/3 42/15 76/25 87/10 87/11
 87/12 87/14 87/17
felt [1]  71/21
few [1]  69/17
Field [9]  3/4 5/6 5/15 7/8
 33/23 40/18 63/14 68/14 78/21
Field's [1]  68/3
fifty [1]  30/1
fight [9]  16/24 20/1 20/3 51/6
 52/24 53/23 53/24 66/10 76/10
fight's [1]  52/2
fighting [5]  20/11 20/11 20/12
 20/12 85/20
Figueroa [1]  2/7
figure [1]  61/5
file [12]  19/19 22/20 27/10
 27/16 27/18 28/3 28/9 28/17
 28/18 40/12 50/20 88/4
filed [11]  16/17 27/2 32/7

42/16 42/21 49/21 54/10 62/23
 64/25 88/7 88/21
filing [4]  19/22 46/25 50/4
 78/23
final [4]  44/2 62/1 70/23 79/8
finally [1]  64/7
find [3]  36/1 36/9 53/19
finding [9]  19/5 23/1 23/2
 23/2 23/6 23/8 23/11 56/25
findings [2]  28/25 47/17
finish [3]  10/21 41/3 43/22
firm [7]  69/21 69/22 70/5
 76/19 79/15 84/2 85/5
firms [2]  20/22 71/19
first [29]
five [1]  24/23
fleshed [1]  23/21
Floor [2]  2/7 4/16
Florham [1]  3/12
fly [1]  28/13
flying [1]  18/25
focus [1]  21/22
Folks [1]  6/4
follow [4]  10/10 12/3 13/11
 41/17
followed [2]  25/2 25/3
following [2]  17/15 24/20
footing [1]  29/17
foray [1]  84/14
force [2]  20/25 20/25
foreclosed [1]  11/6
foregoing [1]  89/6
forewarned [1]  25/25
forget [3]  9/16 58/8 79/6
forgetting [1]  58/21
forgot [1]  53/1
form [6]  13/5 35/12 58/17 63/7
 70/23 88/7
format [1]  89/9
formed [1]  63/18
former [1]  42/17
forms [2]  22/25 57/7
FORSTER [11]  3/2 7/9 33/24
 35/9 63/2 63/21 63/24 64/7
 66/2 68/3 78/22
forth [2]  40/21 53/4
forward [4]  51/13 52/14 52/15
 53/6
found [3]  39/22 64/20 83/11
four [1]  81/6
Fourth [1]  32/14
frame [1]  75/15
Francisco [1]  4/16
Frequently [1]  56/21
FRIESE [1]  4/14
front [7]  6/16 25/8 25/20
 47/24 60/15 70/14 71/15
fronts [1]  20/11
full [3]  26/21 28/20 31/21
fully [2]  32/19 45/6
function [1]  66/3
fund [10]  11/20 31/23 57/2
 59/24 59/25 65/13 66/24 75/23
 82/24 83/12
fundamental [3]  9/23 11/4 12/7
fundamentally [5]  11/19 12/12
 13/8 69/24 71/13
funded [1]  12/17
funds [17]  14/18 14/20 14/22
 15/19 16/5 16/23 18/14 20/11
 37/20 40/7 40/9 49/13 60/2
 60/16 72/1 72/5 73/9
further [7]  5/8 5/9 5/11 12/9
 30/20 42/2 60/19

**F**

Furthermore [1]  32/13
future [21]  40/22 40/23 41/7
 41/21 42/2 43/11 44/18 44/24
 48/7 48/10 48/15 48/18 48/21
 49/3 52/16 52/23 61/18 79/20
 86/22 86/23 88/14

**G**

Gale [5]  1/21 3/22 8/25 89/14
 89/15
ganged [3]  20/15 20/16 20/20
ganged-up [3]  20/15 20/16
 20/20
ganging [1]  70/9
GARRETT [1]  3/4
gave [1]  71/19
general [2]  67/8 70/6
generally [3]  29/18 67/20 81/8
get [32]
gets [15]  12/2 12/21 26/10
 37/19 53/9 56/23 56/24 56/24
 57/1 59/20 73/14 78/3 78/6
 79/15 84/2
getting [2]  53/5 66/9
give [8]  10/25 27/17 28/16
 45/12 51/12 61/3 80/17 82/7
given [4]  9/7 35/3 70/22 80/8
gives [4]  25/14 26/3 52/9
 81/18
giving [2]  22/11 56/17
go [30]
goal [1]  71/1
goes [5]  59/16 61/21 72/20
 72/20 82/2
going [53]
gone [4]  24/15 30/24 34/12
 38/15
gonna [19]  8/15 15/18 15/18
 17/16 19/1 19/25 21/3 25/12
 25/24 26/14 26/16 26/17 27/20
 51/6 51/20 64/24 65/23 66/10
 85/25
good [13]  6/5 6/7 7/8 8/7 8/24
 19/5 20/16 20/19 29/17 31/10
 52/12 88/2 88/19
got [19]  15/17 19/13 24/24
 24/24 26/9 26/13 30/5 38/9
 41/24 46/12 46/13 52/8 67/16
 67/18 77/16 80/10 81/6 83/2
 85/12
gotten [1]  46/10
governed [1]  13/9
grant [11]  14/19 26/20 28/14
 28/16 31/19 40/22 40/25 41/18
 60/18 68/20 88/4
granted [3]  36/4 41/7 42/2
grants [1]  69/4
great [2]  9/1 40/24
ground [4]  20/3 32/6 60/22
 84/8
grounds [2]  20/2 23/6
group [3]  69/19 69/19 70/10
guess [5]  24/23 38/24 46/19
 86/1 87/23
guidance [2]  11/5 41/11
guy [1]  76/22
guys [1]  76/10

**H**

had [20]  10/19 16/10 20/24
 20/24 24/11 34/11 34/12 34/13
 34/17 38/13 47/17 58/2 58/7
 63/21 64/14 64/20 71/14 71/25
 72/14 74/16 80/3
Hail [1]  33/1
Hail Mary [1]  17/11
half [1]  81/6
hand [2]  80/10 88/7
handle [2]  26/1 73/8
hands [4]  20/5 71/18 77/6
 81/12
hanging [2]  46/18 58/5
Hanifin [3]  3/17 8/25 40/16
happen [1]  43/5
happened [3]  19/8 64/18 74/2
happens [2]  24/6 77/18
hard [5]  25/15 41/2 79/15
 83/23 84/23
harm [1]  44/1
harmed [1]  27/8
has [77]
hasn't [8]  17/9 17/9 32/16
 32/16 62/5 62/6 79/8 84/11
have [143]
haven't [7]  12/15 33/2 35/16
 37/13 46/10 60/22 84/17
having [8]  11/25 17/3 17/3
 38/15 55/15 57/8 66/15 72/22
he [8]  6/23 29/7 56/6 68/12
 72/10 72/3 72/4 74/8
he's [2]  68/11 77/16
hear [7]  12/6 46/21 67/24
 73/21 88/1
heard [13]  15/9 18/5 51/18
 51/25 66/1 68/11 74/15 75/22
 78/12 80/24 83/5 84/24 85/23
hearing [9]  1/14 28/10 46/20
 51/4 60/25 63/19 68/8 78/20
 84/22
heartstrings [1]  85/1
held [4]  35/2 35/4 49/24 89/8
help [1]  6/23
helpful [1]  71/13
her [3]  16/11 24/1 79/2
here [48]
here's [4]  26/7 56/3 77/5 78/9
hereby [1]  89/5
HERRINGTON [6]  4/3 4/4 4/8 8/8
 14/3 14/10
hide [1]  70/19
highly [1]  66/6
hilarious [1]  29/10
Hill [1]  2/19
him [1]  6/22
his [4]  16/10 16/13 42/17 72/6
historical [1]  45/16
history [2]  19/9 51/7
hold [8]  9/20 25/12 42/9 52/5
 55/16 56/11 56/14 65/2
holder [1]  40/10
holding [1]  85/3
holds [2]  11/8 66/13
honest [2]  32/22 57/13
Honor [147]
Honor's [4]  57/8 58/17 59/19
 88/15
HONORABLE [1]  1/3
hook [2]  19/1 26/13
hoped [1]  27/9
hoped-for [1]  27/9
horse [1]  79/24
how [35]
Hrg [1]  1/25
hundred [4]  73/23 75/5 75/6
 77/10
hurry [1]  50/8
hurting [1]  65/9
hypothetical [2]  77/9 77/12
hypothetically [2]  56/5 77/10

**I**

I'd [4]  27/19 28/16 28/25
 33/24
I'll [19]  8/1 15/2 29/22 32/22
 33/13 33/16 33/20 37/12 40/17
 45/12 45/12 54/1 54/5 61/3
 61/4 70/4 77/11 88/1 88/7
I'm [62]
I've [14]  24/9 30/24 30/24
 38/21 51/18 55/21 59/4 59/5
 65/14 74/15 80/17 85/3 87/1
 87/3
I.P [1]  76/22
Ian [2]  2/5 7/4
idea [1]  86/20
identical [1]  71/14
immediately [2]  63/24 64/2
impassionate [1]  79/1
impassioned [1]  78/20
impediment [1]  67/22
implemented [1]  12/8
important [4]  62/18 82/9 82/10
 83/4
imposing [1]  12/10
impression [1]  24/11
inappropriate [1]  65/4
INC [4]  1/5 1/8 2/2 2/11
inchoate [1]  48/6
inclined [2]  27/23 67/9
includes [2]  14/9 82/12
including [2]  21/21 68/1
inconsequential [1]  30/1
increased [1]  52/22
incurred [2]  14/9 21/6
independent [2]  71/23 74/4
Indian [1]  2/19
indicated [1]  37/6
indicating [1]  67/2
indifferent [1]  12/2
individual [1]  87/22
inequitable [1]  57/21
information [1]  87/21
informed [1]  36/13
initial [2]  23/16 64/6
initiated [1]  21/4
injunction [4]  60/19 61/1 69/9
 82/3
injunctive [1]  81/19
instance [1]  76/11
instead [3]  46/24 63/25 72/3
insurance [43]
insurance-related [2]  31/2
 31/4
insured [7]  39/24 63/13 65/23
 67/9 67/12 67/22 76/4
insureds [1]  42/11
insurer [1]  42/9
insurers [3]  12/22 37/20 87/13
Intellectual [1]  69/19
intend [4]  22/20 22/20 23/10
 45/1
intent [1]  84/25
intention [1]  36/16
intentional [1]  42/11
interest [5]  21/21 31/11 49/14
 66/7 79/12
INTERESTED [2]  3/15 4/3
interesting [7]  25/3 25/25
 26/1 26/10 26/14 76/5 76/6
interests [1]  55/11

## I

interfere [2]  66/14 67/3
interfered [1]  44/12
interference [6]  10/25 17/13 17/16 17/18 20/18 42/12
interfering [1]  71/3
interloc' [6]  24/10 25/4 25/6 25/13 25/14 26/2
interplead [10]  14/20 15/19 52/10 53/3 54/11 70/24 72/3 75/14 77/19 84/2
interpleaded [2]  57/4 87/9
interpleader [102]
interpleading [1]  53/9
interpleads [2]  16/5 56/1
intervene [3]  34/12 34/18 68/4
INTERVENOR [2]  3/2 3/9
intervention [8]  31/15 31/16 31/20 32/2 34/7 34/11 68/5 68/5
involved [2]  16/9 59/4
involves [3]  85/14 85/18 85/20
involving [3]  20/13 24/10 52/1
Irvine [3]  2/15 3/24 4/11
is [278]
is -- you [1]  72/15
isn't [10]  16/21 16/21 20/19 21/20 30/3 37/24 39/21 55/23 78/17 84/10
issue [36]
issued [3]  39/22 40/6 87/10
issues [16]  12/20 23/13 28/4 30/10 31/2 31/5 32/23 33/25 34/1 34/2 38/21 39/7 50/9 61/21 74/18 75/17
issuing [2]  19/17 76/25
it [196]
it'll [2]  43/1 82/20
it's [70]
Item [2]  1/7 6/2
its [11]  17/10 18/12 19/17 22/23 37/11 47/9 48/17 72/16 78/15 82/23 85/6
itself [6]  11/23 19/13 49/7 80/9 85/6 86/22

## J

Jacobs [7]  4/14 5/4 8/8 8/15 13/23 15/2 69/16
January [2]  62/14 66/5
January 28 [2]  62/14 66/5
Jennifer [3]  2/13 7/13 15/7
jeopardy [1]  64/16
join [4]  7/18 31/3 40/17 44/25
joking [1]  25/23
judge [28]
Judge Carter [2]  58/12 58/15
Judge Kozinski [1]  29/6
Judge Larson [2]  58/15 63/18
Judge Trott [1]  23/25
Judge Ware [3]  71/20 72/2 74/7
judges [1]  19/21
judgment [25]
judgments [3]  74/24 77/23 79/4
Judicial [1]  89/10
judicially [1]  72/23
juncture [1]  65/19
June [3]  63/19 63/20 63/20
June 24 [1]  63/20
jurisdiction [7]  13/1 34/19 35/4 36/14 37/11 71/5 71/11
jury [1]  23/13
jury's [2]  23/12 26/22

## just [54]

just [54]
Justice [10/73/2]

## K

Karman [1]  2/14
keep [1]  54/14
keeping [1]  62/19
keeps [1]  86/23
KELLER [17]  2/12 2/13 5/5 5/11 7/13 15/5 15/7 30/17 34/23 44/25 50/2 62/19 75/22 77/20 84/5 85/11 86/23
Keller's [3]  55/16 70/9 81/2
Kelller [1]  5/14
key [2]  23/13 75/22
Kids [1]  84/6
kind [4]  13/13 17/24 28/13 69/16
kinds [1]  81/21
know [49]
knowledge [1]  42/20
knows [8]  19/10 19/16 19/25 20/3 20/4 20/10 21/7 87/10
Kozinski [2]  25/9 29/6

## L

laches [1]  13/6
LACV [1]  1/7
laid [2]  17/9 61/12
large [1]  72/8
Larian [11]  30/17 51/7 56/6 56/16 58/24 70/12 75/5 77/3 77/16 78/2 78/7
Larson [3]  58/7 58/15 63/18
last [4]  34/1 37/5 38/4 69/14
late [1]  64/20
later [9]  16/25 19/1 24/23 36/9 39/5 57/24 57/25 66/10 66/24
latter's [1]  42/18
laughter [2]  29/10 29/11
launched [1]  10/18
law [27]
lawful [1]  75/15
lawsuit [6]  19/2 41/21 45/1 51/15 54/10 57/4
lawsuits [1]  48/3
lawyers [3]  37/13 37/16 37/19
lead [1]  69/18
learned [2]  25/15 27/15
least [9]  7/19 61/12 67/16 81/24 82/5 82/7 83/10 83/13 87/4
leave [6]  27/17 28/3 28/17 44/18 46/18 88/4
left [3]  22/17 58/4 81/6
legal [4]  32/23 41/6 79/10 79/20
legitimate [4]  15/22 48/14 79/20 85/4
legitimately [2]  51/16 80/13
length [1]  47/22
less [2]  19/14 73/17
lesser [1]  56/16
lesson [2]  25/2 25/15
let [19]  13/21 22/4 24/3 25/4 29/9 40/19 41/2 41/17 41/23 42/6 47/2 50/2 57/20 59/8 63/17 69/17 81/3 81/12 85/23
let's [13]  24/6 26/25 26/25 29/25 42/25 46/4 52/3 59/13 71/8 75/3 77/14 77/15 79/6
letter [2]  62/14 66/4
letters [1]  12/22 68/15

## Levin [1]  42/6

Levin [1]  42/6
Lexington [1]  64/3 66/2 68/1
liability [2]  46/13 52/23
liable [4]  42/11 47/20 52/15 55/18
lien [11]  14/14 14/15 18/4 18/4 18/7 18/9 42/15 42/20 42/21 70/24 70/25
liens [3]  11/1 71/19 74/18
life [1]  16/1
lightly [2]  71/4 71/4
like [15]  9/25 13/18 20/17 28/16 33/24 34/8 47/10 51/6 57/4 57/5 66/7 67/17 81/1 84/7 85/19
likelihood [1]  64/14
limitation [1]  52/21
limitations [6]  23/14 24/5 28/4 50/10 50/12 50/16
limiting [1]  82/12
line [4]  13/21 66/10 87/18 87/18
line-by-line [1]  87/18
liquidated [1]  26/22
Lisa [3]  4/14 8/7 13/23
listened [1]  64/21
literally [1]  57/19
litigate [7]  50/8 52/16 52/23 53/10 60/18 69/7 83/17
litigated [2]  50/16 64/10
litigating [1]  39/4
litigation [45]
litigation's [1]  11/16
little [7]  9/10 25/19 30/15 34/7 46/25 52/19 87/20
live [3]  20/3 21/1 36/15
LLP [9]  2/3 2/12 2/17 3/10 3/17 3/22 4/3 4/4 4/8
logical [4]  12/4 13/11 26/15 37/8
long [4]  27/3 44/8 52/7 52/8
longer [1]  35/3
look [11]  20/21 34/24 57/4 57/5 66/20 68/12 72/6 72/13 76/3 79/5 86/16
looked [3]  60/22 62/13 71/20
looking [1]  41/10
looks [3]  15/23 21/16 63/5
Los [2]  2/8 3/6
lose [1]  48/25
lost [1]  66/17
lot [4]  15/9 19/13 46/5 72/8
lots [1]  41/24
love [1]  66/16

## M

Mack [10]  11/24 12/5 13/9 16/5 49/15 81/4 81/5 82/9 84/9 84/9
mad [1]  51/6
made [24]
majority [3]  56/12 57/10 73/22
make [34]
make-whole [1]  65/12
makes [7]  52/19 56/22 56/25 60/15 72/11 73/2 73/18
making [3]  80/25 82/4 84/13
mandate [4]  10/6 19/17 32/8 38/5
many [2]  65/16 65/23
March [1]  64/2
Maritime [1]  4/15
Mark [6]  3/11 8/5 39/13 62/15 67/25 87/6

**M**

Marsh [1]   4/5
Mary [1]   17/11
master [8]   72/4 73/8 73/20
 73/21 73/25 74/3 74/5 74/9
match [1]   75/8
MATTEL [112]
Mattel's [14]   10/12 14/8 14/20
 27/3 27/20 36/23 41/4 46/7
 48/10 52/17 52/19 53/22 66/14
 81/13
matter [14]   6/4 8/10 8/20
 12/12 16/14 28/2 32/25 46/3
 50/10 52/25 62/22 77/10 77/19
 89/8
matters [2]   31/12 50/16
matures [1]   18/7
may [31]
maybe [6]   27/13 37/22 37/23
 37/24 73/22 79/6
McCONVILLE [2]   4/9 8/17
me [50]
mean [11]   10/25 12/15 16/8
 18/17 25/6 25/8 26/8 54/5
 57/11 59/13 59/21
means [4]   26/2 26/5 78/17
 80/19
meant [1]   9/13
mechanisms [1]   81/21
meet [2]   27/16 27/24
meet-and-confer [2]   27/16
 27/24
Menlo [1]   4/6
mentioned [1]   34/11
merely [1]   18/23
meritless [1]   82/6
meritorious [1]   78/25
merits [4]   49/15 67/10 75/17
 82/14
message [1]   24/21
met [5]   13/2 13/10 21/11 23/4
 23/7
MGA [103]
MGA's [5]   15/17 20/23 60/8
 65/23 83/7
Michael [2]   2/4 2/18
might [21]   10/10 10/21 27/4
 35/18 45/7 47/5 51/12 51/15
 52/15 52/22 53/14 53/14 55/6
 55/8 55/18 55/20 56/4 56/6
 56/6 56/7 56/16
Mike [4]   6/5 7/20 31/10 62/9
million [58]
millions [2]   35/11 40/5
mincing [1]   46/5
mind [1]   76/16
minds [1]   29/21
minimis [1]   48/2
minutes [11]   43/19 49/23 80/17
 80/19 80/19 81/6 82/18 82/21
 84/5 85/12 87/5
misappropriation [1]   26/11
missed [1]   9/2
moment [18]   10/17 13/17 22/13
 24/7 27/1 27/12 30/8 30/13
 38/22 41/15 41/15 44/21 50/2
 67/6 70/13 71/2 77/8 78/1
money [89]
moneys [1]   41/14
months [2]   24/23 64/6
more [13]   18/23 29/24 33/14
 38/24 58/22 63/12 64/6 65/21
 68/6 68/9 82/8 87/15 88/11

morning [6]   6/5 6/7 7/8 8/7
 8/14 11/8 21/17
most [4]   24/19 31/5 29/21
 49/10
motion [7]   22/21 26/21 32/10
 34/18 47/24 60/25 68/4
motions [3]   1/14 21/25 63/18
move [2]   71/8 73/11
moving [3]   17/10 78/15 85/6
Mr [12]   5/3 5/7 5/8 5/9 5/10
 5/12 5/13 5/16 6/21 30/17
 39/10 51/21
Mr. [25]
Mr. Baker [1]   6/10
Mr. Bidart [3]   34/11 68/10
 86/18
Mr. Larian [4]   51/7 56/6 56/16
 58/24 70/12 75/5 77/3 77/16
 78/2
Mr. Sheridan [1]   87/1
Mr. Zeller [8]   7/2 16/5 17/11
 45/17 45/23 52/7 80/20 84/9
Mr. Zeller's [3]   39/17 62/16
 68/15
Ms [11]   5/4 5/5 5/6 5/11 5/14
 5/15 6/18 8/15 30/17 68/14
 77/20
Ms. [39]   13/18 15/2 15/5 34/23
 40/18 44/25 50/2 55/16 62/19
 63/14 68/3 69/16 70/9 75/22
 78/21 81/2 84/5 85/11 86/23
Ms. Estrich [1]   13/18
Ms. Field [3]   40/18 63/14
 78/21
Ms. Field's [1]   68/3
Ms. Jacobs [2]   15/2 69/16
Ms. Keller [9]   15/5 34/23
 44/25 50/2 62/19 75/22 84/5
 85/11 86/23
Ms. Keller's [3]   55/16 70/9
 81/2
much [16]   14/23 49/22 56/8
 56/22 57/1 57/11 58/1 58/22
 65/10 71/8 82/16 87/14 87/19
 88/1 88/10 88/19
multiple [7]   16/19 18/14 18/25
 56/21 80/4 80/14 80/23
multiplicity [1]   39/6
murdered [1]   16/12
MUSICK [1]   3/4
must [1]   62/21
my [39]
myself [1]   54/25

**N**

naive [4]   36/25 41/3 51/11
 56/13
naiveness [1]   24/19
name [1]   13/22
naming [1]   16/11
necessarily [1]   34/5
necessary [1]   23/8
need [9]   6/23 23/5 27/15 27/15
 33/14 43/15 43/23 62/7 68/2
needed [1]   43/20
needless [1]   47/15
needs [3]   20/10 52/10 85/10
Neel [1]   4/4 8/14 69/18
neglected [1]   85/7
neglecting [1]   83/3
neither [2]   16/18 16/12
never [9]   23/21 38/19 43/2
 51/18 51/25 59/14 63/3 63/11
 75/7

nevertheless [1]   82/6
new [4]   18/8 58/9 63/9 82/8
 68/17
next [3]   8/4 74/12 74/16
nice [1]   9/3
nickel [1]   63/25
Nicole [1]   24/9
Ninth [47]
NJ [1]   3/12
no [43]
No. [2]   63/1 63/1
No. 1-05654 [1]   63/1
No. 35 [1]   63/1
nobody [2]   17/7 35/8
non [1]   78/25
non-meritorious [1]   78/25
none [5]   18/16 44/4 44/5 51/24
 53/15
normal [1]   64/4
not [114]
note [3]   34/3 34/15 37/15
noted [1]   16/24
nothing [11]   10/6 18/23 48/6
 48/18 56/18 56/20 63/12 65/21
 73/15 77/13 77/14
notice [3]   10/25 42/14 50/23
notices [1]   71/19
notwithstanding [1]   64/22
novo [1]   24/17
now [48]
nullity [1]   70/25
number [6]   20/22 34/16 41/12
 51/13 64/19 78/8
nunc [3]   16/15 22/22 23/11
NW [1]   3/18

**O**

objection [1]   78/24
objective [1]   83/18
obligation [2]   21/1 71/23
obligations [1]   32/17
observation [1]   66/11
obtained [1]   14/14
obviously [6]   10/12 11/1 12/12
 24/3 48/21 49/7
occasions [1]   63/14
occur [2]   42/4 42/5
October [1]   63/23
October 22 [1]   63/23
off [1]   32/6
offer [2]   29/18 29/19
Official [1]   1/21
often [1]   67/7
Oh [6]   10/19 18/12 27/11 39/12
 50/12 53/14
okay [44]
old [1]   68/9
omitted [1]   85/7
once [4]   15/5 33/13 67/21
 71/23
one [48]
one's [2]   30/10 30/11
ongoing [1]   20/9
only [30]
oOo [2]   88/22 89/1
opinion [3]   45/21 45/24 55/2
opportunity [1]   31/22
opposed [2]   68/21 85/17
opposing [2]   14/21 22/16
opposite [1]   71/2
option [1]   69/7
oral [3]   19/20 31/17 32/17
order [39]
ordered [7]   20/1 43/6 44/1

**O**

ordered... [4]   44/8 72/21
  87/11 87/18
orderly [1]   13/14
orders [9]   10/13 32/4 41/22
  45/18 51/4 74/8 74/9 79/19
  81/22
ordinary [1]   58/20
originally [2]   21/2 62/17
ORRICK [62]
  Orrick's [5]   37/23 49/8 59/6
  61/10 85/25
other [29]
others [1]   19/1
otherwise [3]   11/15 31/2 83/21
ought [3]   41/11 60/1 60/9
our [30]
ourselves [3]   11/21 21/8 36/1
out [32]
out-of-pocket [5]   35/22 58/25
  60/1 60/8 77/17
outcome [1]   12/1
outset [2]   44/20 69/23
outside [4]   63/16 65/15 79/3
  79/4
over [9]   12/20 13/2 16/13 19/7
  26/17 58/20 59/24 73/20 85/20
oversee [1]   72/4
overseeing [1]   69/20
overwhelming [1]   55/13
owe [2]   66/20 66/21
owes [1]   72/15
owing [1]   65/2
own [1]   25/20
owner [2]   16/9 16/12

**P**

p.m [1]   88/21
page [4]   5/2 42/7 55/2 89/9
paid [49]
painful [1]   25/19
panel [13]   14/14 24/20 25/7
  25/15 61/18 64/4 70/14 70/22
  71/3 77/6 78/5 83/11 83/14
papers [5]   17/10 36/11 78/15
  85/6 88/4
pardon [2]   63/20 66/18
Park [4]   3/12 3/23 4/6 4/10
part [19]   11/23 20/23 35/15
  36/11 39/25 41/4 58/9 59/19
  59/21 62/15 65/17 69/10 82/9
  83/3 83/3 83/4 85/21 86/3
  87/18
partial [3]   18/4 70/22 79/8
partially [1]   83/11
particular [3]   13/5 16/8 24/12
particularly [1]   71/12
parties [19]   6/14 7/14 12/14
  12/15 15/3 15/8 38/8 38/12
  41/19 44/10 57/5 57/21 71/21
  74/9 75/8 84/16 87/11 87/15
  87/20
partners [1]   83/23
party [16]   3/15 4/3 10/20
  10/21 15/21 18/21 36/17 36/19
  38/9 38/17 53/6 56/15 80/10
  80/11 85/17 85/17
pass [1]   17/12
past [2]   58/11 64/8
path [1]   43/9
Paul [2]   3/22 8/25
pay [42]
payable [2]   37/18 37/19

payee [1]   16/11
payment [10]   16/23 27/12
  57/24 58/3 66/10 76/10
payment [7]   15/22 16/15 39/25
  56/12 57/25 58/11 58/21
payments [2]   40/4 58/5
pays [1]   36/20
PEELER [1]   3/4
pending [3]   11/8 14/13 86/24
people [10]   17/3 17/6 41/13
  55/24 66/7 70/10 80/25 85/20
  86/11 86/17
people's [1]   79/12
percent [2]   24/14 24/14
perfect [2]   51/10 53/2
perfected [1]   79/5
perfectly [1]   81/13
perhaps [7]   33/15 47/14 54/20
  81/25 84/25 86/6 88/14
period [3]   57/18 57/18 58/6
permissive [8]   23/1 23/2 23/4
  23/8 23/11 23/22 28/25 47/1
permitted [1]   22/21
person [2]   16/20 69/20
perspective [10]   10/13 12/10
  46/3 46/7 46/8 49/11 67/21
  81/13 81/17 81/25
pertain [1]   54/8
phantom [1]   17/21
phase [2]   36/11 49/16
pick [1]   51/13
piecemeal [2]   61/15 80/5
place [2]   34/20 35/5
placed [1]   69/8
Placing [1]   74/17
Plaintiff [1]   1/6
plaintiffs [1]   9/15
plan [4]   16/9 16/11 16/12
  16/15
play [5]   22/18 24/7 26/21
  26/25 27/3
played [1]   59/20
Plaza [3]   3/23 4/10 4/15
plea [1]   85/24
pleadings [1]   75/7
Please [1]   13/24
Pleasure [1]   7/10
plenty [3]   51/21 52/6 84/16
pocket [5]   35/22 58/25 60/1
  60/8 77/17
point [22]   11/4 12/6 12/16
  17/14 25/24 26/20 27/21 29/4
  31/7 31/13 33/11 40/11 43/22
  52/19 52/22 67/14 69/3 69/6
  71/6 79/10 81/18 84/21
pointed [3]   27/15 38/5 49/15
points [1]   66/8
policies [1]   39/22
policy [5]   16/3 16/7 16/18
  16/19 40/1 40/8 67/10
Poor [1]   64/24
portion [5]   14/10 14/15 51/19
  57/6 82/7
posit [1]   59/13
posited [1]   86/14
position [19]   18/24 19/2 23/17
  27/20 29/15 29/23 34/5 34/6
  34/25 37/20 38/13 47/19 53/8
  54/25 57/21 70/6 76/3 76/5
  76/7
possibly [1]   13/7
posture [1]   21/7
pot [2]   32/1 69/8
potential [6]   36/21 36/24

71/24 79/5 81/8 83/18
  85/24 86/25 87/5
66/3
power [2]   81/20 81/24
powers [2]   81/17 81/19
practical [1]   51/4
Practice [2]   69/19 69/19
Precisely [1]   70/21
preclude [3]   10/7 14/6 18/11
predicate [1]   66/3
predicated [1]   39/2
prejudge [1]   47/18
prejudice [3]   19/18 26/5 63/2
premature [3]   25/3 32/21 33/2
premise [1]   72/6
prepared [1]   22/22
prerequisites [1]   21/10
present [1]   21/14
presented [5]   34/3 35/14 41/13
  54/22 57/1
presenting [1]   79/1
presiding [2]   1/3 16/13
press [1]   30/7
presumably [1]   10/24
presume [1]   57/9
presuming [1]   70/15
presumption [1]   57/9
presumptions [2]   58/16
pretty [3]   27/11 76/5 80/7
prevail [4]   28/21 33/11 55/20
  70/15
prevailed [1]   64/13
prevails [1]   47/16
prevent [1]   84/12
previous [1]   36/7
previously [1]   49/16
primary [1]   49/14
pro [3]   16/15 22/22 23/11
probably [4]   27/24 29/12 37/16
  84/14
problem [9]   25/13 53/2 54/14
  55/15 56/3 57/8 58/13 59/21
  78/9
procedure [1]   48/24
proceed [7]   9/4 23/12 23/14
  24/4 24/22 25/11 82/23
proceeding [5]   24/17 54/11
  62/12 66/4 78/3
proceedings [8]   1/13 5/2 33/17
  49/25 75/18 81/19 88/21 89/8
process [3]   12/4 16/10 67/2
Proctor [2]   2/5 6/24
proliferate [1]   11/14
proliferation [1]   12/9
proof [1]   77/25
proper [2]   38/2 84/1
properly [4]   37/18 63/11 80/9
  80/11
Property [1]   69/19
proposition [3]   13/3 26/10
  26/14
prospective [1]   42/12
protect [14]   15/21 17/3 50/15
  60/17 60/24 61/3 61/4 67/9
  68/22 73/5 79/12 80/3 80/4
  80/5
protected [1]   72/24
protection [1]   19/7
protects [1]   51/14
prove [1]   64/24
proves [1]   86/12
provided [1]   58/10
provides [1]   39/23
proving [1]   64/14

**P**

punitive [1]  49/3
purely [3]  20/2 21/6 21/9
purports [1]  63/14
purpose [10]  11/18 12/24 13/12
 15/10 15/21 17/2 80/2 82/10
 82/11 85/2
purposes [3]  53/7 79/13 79/16
pursuant [1]  89/5
pursue [9]  33/4 33/8 39/20
 44/24 48/12 51/14 61/19 67/17
 70/18
pursued [1]  62/17
pursuing [1]  10/7
put [8]  8/1 19/14 38/24 57/21
 59/9 60/15 75/14 82/1

**Q**

question [17]  9/5 9/14 33/14
 43/9 43/10 45/4 69/24 70/1
 70/8 72/18 73/14 75/12 75/13
 76/9 76/9 76/20 77/5
questions [6]  8/22 30/22 40/17
 59/9 69/23 80/18
quick [1]  27/11
quickly [1]  73/12
QUINN [2]  2/3 71/25

**R**

RACKAUCKAS [1]  2/12
raised [4]  17/12 53/14 62/11
 87/8
raises [1]  59/9
raising [1]  62/4
rates [1]  64/4
rather [4]  9/8 9/20 10/9 20/23
re [1]  82/5
re-litigation [1]  82/5
reach [1]  23/5
read [6]  25/10 42/6 45/20
 45/23 81/3 81/5
reading [1]  22/8
ready [1]  66/24
real [1]  70/20
realize [1]  24/19
really [24]
reason [9]  12/8 52/7 67/2
 68/20 70/22 72/10 73/13 78/18
 83/25
reasoning [2]  50/24 50/25
reasons [4]  10/3 23/5 37/7
 37/9
REATH [1]  3/10
recall [3]  22/25 29/7 31/11
received [2]  12/22 74/8
receiving [1]  42/14
recently [1]  65/25
recess [2]  45/12 49/24
recognized [1]  82/22
recognizes [1]  10/15
recommence [1]  32/9
recommended [1]  74/9
record [16]  15/6 20/22 29/9
 29/20 39/17 50/2 62/7 62/13
 63/5 63/16 63/18 63/21 65/15
 68/2 68/16 84/7
recover [4]  21/12 39/24 64/15
 66/25
recovery [2]  64/14 65/17
reduced [1]  21/15
reducing [2]  70/2 70/6
reference [2]  19/9 24/16
referenced [1]  63/19 79/8

refers [1]  18/3
refined [1]  18/6
reflect [1]  39/8
reflected [2]  11/24 12/5
refused [2]  70/12 85/7
regard [1]  52/18
regardless [1]  48/5
regulations [1]  89/10
reimbursed [1]  60/1
reimbursement [4]  32/5 35/24
 39/1 69/1
reimbursements [1]  62/5
reinforcement [1]  7/24
reject [1]  74/11
related [3]  31/2 31/4 39/3
relied [1]  16/5
relief [8]  10/4 13/5 17/20
 21/10 23/1 27/16 31/19 48/5
rely [1]  33/16
remain [1]  83/7
remains [1]  26/19
remand [1]  83/6
remark [1]  70/9
remarks [1]  69/17
remedy [2]  18/19 19/4
remember [1]  17/23
repeat [1]  41/25
reported [2]  48/6 89/7
Reporter [2]  1/21 89/15
REPORTER'S [1]  1/13
represent [8]  6/13 14/2 15/6
 31/11 62/7 62/8 65/16 84/25
representation [1]  27/1
represented [1]  59/3
represents [1]  78/22
request [4]  27/6 50/4 80/8
 88/16
requested [2]  31/19 82/2
require [2]  86/24 87/19
required [5]  7/21 19/4 19/12
 32/7 64/1
requirement [1]  18/20
requirements [3]  13/10 18/19
 23/3
requires [1]  15/12
resolution [1]  59/22
resolve [3]  59/22 73/9 74/18
resolved [2]  75/17 78/6
resolves [1]  46/7 61/15
resources [2]  56/15 67/11
respect [4]  10/5 31/14 34/7
 87/17
respectfully [1]  63/4
respond [1]  31/9
response [1]  78/23
responses [1]  41/9
rest [2]  78/16 85/9
restraint [1]  48/10
result [2]  14/19 31/20
resumed [1]  49/25
resurrects [1]  36/15
retain [1]  20/25
retained [1]  42/10
returned [1]  51/17
reverse [1]  54/25
reversed [3]  24/24 25/21 36/14
reverses [1]  34/4
review [1]  55/5
rewriting [1]  25/1
right [62]
rights [13]  32/1 32/17 33/2
 39/24 40/1 40/8 41/14 44/13
 64/19 65/17 67/3 67/22 72/24
risk [1]  69/3

Road [1]  4/5
Rose [1]  25/22
roughly [1]  70/2
round [5]  13/16 14/24 20/1
 40/20 69/14
rounds [1]  9/25
route [2]  73/4 82/3
row [4]  6/16 7/3 7/7 8/3
RPR [2]  1/21 89/16
rude [1]  54/5
rueful [2]  29/11 29/13
rule [9]  22/22 22/22 27/16
 28/17 38/19 50/5 54/24 65/12
 65/13
ruled [4]  34/19 38/2 54/23
 55/22
rules [1]  54/20
ruling [6]  22/5 22/7 22/23
 34/22 58/16 87/10
rulings [3]  34/17 34/20 34/22
running [1]  19/22
rush [1]  22/14
Ryan [2]  2/6 6/7

**S**

saddling [1]  11/25
said [12]  19/20 21/2 23/3
 23/23 36/11 44/19 55/12 63/14
 71/25 72/13 78/15 80/2
same [11]  20/8 27/7 32/1 38/7
 39/2 55/15 58/25 66/13 74/23
 78/3 84/8
San [1]  4/16
SANDERS [2]  3/17 3/22
Santa [3]  1/15 1/23 6/1
sat [1]  64/19
satisfaction [1]  42/19
satisfied [1]  80/18
saw [1]  70/10
say [21]  13/1 18/12 20/17 25/9
 36/22 41/8 43/8 43/20 49/12
 55/8 55/25 59/17 61/2 64/24
 75/3 75/22 80/23 81/11 83/5
 85/7 85/8
saying [16]  15/17 21/9 25/16
 28/16 35/19 39/15 41/13 50/18
 50/19 53/6 60/6 60/8 60/10
 78/24 83/20 86/23
says [10]  10/19 34/23 38/8
 59/16 66/9 66/20 82/9 82/11
 86/15 86/18
scenario [4]  11/19 56/18 56/21
 59/13
schedule [1]  27/18
scorched [1]  19/11
scorched-earth [1]  19/11
screen [1]  25/21
screening [2]  24/20 25/7
Sean [3]  3/17 8/24 40/16
seat [5]  6/15 7/16 7/22 8/12
 67/23
seated [1]  8/2
seats [1]  7/23
second [15]  9/15 10/5 14/24
 19/3 36/11 40/20 44/16 51/3
 59/10 63/23 70/1 70/4 72/17
 75/12 83/3
Secondly [1]  65/5
secret [1]  66/16
Section [2]  81/18 89/5
Section 2361 [1]  81/18
secure [1]  14/15
see [9]  25/13 25/24 28/6 37/3

| **S** | |
|---|---|
| see... [5]   46/25 47/7 74/2 74/10 78/19 | |

see... [5]   46/25 47/7 74/2
 74/10 78/19
seek [1]   40/3
seeking [3]   32/1 32/3 63/10
seem [3]   25/1 29/7 41/20
seemed [2]   12/15 74/8
seems [8]   10/9 17/11 48/2
 52/11 52/13 52/24 60/6 61/13
seen [4]   59/2 59/3 80/24 85/3
self [1]   43/20
self-evident [1]   43/20
sends [1]   22/15
sense [11]   10/19 28/5 51/4
 54/8 60/15 62/2 72/11 73/2
 73/18 75/13 85/19
sensible [1]   66/11
sensitive [2]   28/4 50/11
sent [1]   24/18
separate [5]   13/4 39/1 50/9
 51/2 68/25
sequestration [1]   48/23
serious [2]   11/1 73/1
serve [1]   15/10
services [1]   35/15
set [8]   10/24 17/12 17/18
 20/17 24/18 27/18 32/17 40/21
setting [1]   75/15
settle [1]   29/7
settled [1]   58/14
settlement [4]   29/19 42/18
 57/25 58/9
several [1]   63/14
shape [1]   57/3
SHARTSIS [1]   4/14
she [7]   19/22 23/23 23/23
 33/18 63/14 78/22 78/23
she'd [1]   19/22
she's [1]   79/1
Shelton [2]   2/5 7/4
Sheridan [9]   3/11 5/7 5/16 8/5
 39/13 62/15 67/25 87/1 87/6
SHERNOFF [1]   2/17
shock [1]   26/17
shoehorning [1]   49/2
shortly [1]   88/2
shot [1]   16/13
should [44]
shouldn't [8]   27/21 45/20
 45/23 59/19 78/25 83/21 85/21
 86/7
show [9]   15/12 18/21 18/22
 21/11 57/6 58/18 58/24 77/16
 86/13
showing [1]   48/22
shows [2]   20/18 47/9
shred [1]   79/6
shy [1]   55/7
sic [2]   38/8 58/12
side [3]   8/1 10/10 18/6
sides [1]   12/18
signal [1]   22/15
signaling [2]   19/19 34/24
simple [3]   43/14 46/15 53/11
simply [9]   24/4 38/11 43/23
 56/23 60/21 65/21 68/21 70/18
 81/22
since [4]   24/12 37/17 59/2
 65/15
single [5]   20/7 84/11 84/13
 84/21 86/9
sir [1]   7/6
sit [3]   45/9 45/15 51/21

situation [11]   38/7 38/16 43/2
 85/14 85/18 85/20
smart [1]   76/21
Smith [1]   24/9
so [107]
sole [1]   15/15
some [40]
somebody [2]   16/1 17/15
somehow [4]   37/1 48/19 58/3
 77/9
someone [2]   38/3 85/14
someplace [1]   8/23
something [8]   9/17 20/17 25/11
 47/10 51/24 58/18 59/20 63/10
something's [1]   70/20
somewhat [1]   55/19
soon [1]   27/2
sooner [1]   50/19
sorry [6]   11/11 14/3 44/22
 52/25 54/17 69/15
sort [3]   48/9 48/22 77/21
sorts [1]   77/22
sought [2]   31/15 64/16
sound [1]   84/7
South [2]   2/7 2/19
speak [3]   15/4 36/5 54/2
speaking [4]   7/2 51/8 67/20
 74/7
special [8]   72/4 73/8 73/20
 73/20 73/24 74/2 74/5 74/9
SPECIALITY [1]   3/9
SPECIALTY [1]   3/2
specific [2]   9/7 31/13
specifically [2]   40/8 42/7
 58/10 87/11 87/13
speculate [1]   79/4
spend [3]   19/12 30/15 72/8
spent [2]   19/14 47/13
stake [3]   12/1 15/13 19/7
stakeholder [17]   11/25 12/11
 15/12 15/13 16/20 35/8 56/1
 78/12 78/13 79/17 79/18 80/3
 80/9 80/12 84/19 84/20 85/4
stakeholders [2]   71/24 72/24
stalking [1]   79/24
stall [1]   46/24
stand [2]   35/21 68/10
standard [4]   24/12 24/18 48/8
 84/18
standing [2]   54/9 60/5
standpoint [3]   26/15 37/2 54/3
start [4]   9/25 37/12 50/2
 57/24
started [4]   29/23 56/12 58/1
 74/3
starting [2]   62/1 84/9
state [9]   13/22 16/13 16/14
 26/9 26/12 26/17 79/21 80/1
 80/2
stated [1]   19/17
statement [2]   45/17 67/8
states [5]   1/1 1/22 85/9 89/6
 89/10
status [3]   32/7 88/14 88/16
statute [9]   11/21 11/23 12/8
 23/14 24/4 28/4 50/10 50/12
 50/16
statutory [1]   13/9
stay [2]   6/22 44/23
stayed [4]   32/6 62/5 65/19
 88/17
stenographically [1]   89/7
steps [1]   10/19

still [4]   10/8 36/15 67/17
stipulate [1]   27/24
stipulated [3]   16/10 24/10
 25/6
stood [2]   87/1 87/1
stop [2]   42/25 82/5
story [1]   24/8
straight [2]   13/12 35/23
strategize [1]   66/19
Street [3]   1/22 2/7 3/18
stretching [1]   11/13
strike [2]   29/22 29/25
stringent [1]   48/11
strong [2]   52/17 83/2
stuff [2]   53/13 76/22
subject [11]   16/20 17/15 18/21
 36/18 36/20 37/14 44/18 45/19
 46/20 80/23 85/16
subjected [3]   19/10 79/20
 80/14
submission [2]   22/15 88/1
submit [4]   22/6 30/18 33/20
 63/4
submittal [1]   88/12
submitted [5]   33/18 36/3 38/1
 57/13 57/15
submitting [1]   33/21
subro [1]   87/3
subrogation [29]
substantial [4]   14/10 47/7
 57/18 57/18
substantive [1]   34/17
succeeded [1]   38/9
such [3]   50/8 75/18 84/14
SUCLIFFE [1]   4/3
sue [4]   64/1 68/23 69/2 69/10
sued [2]   42/22 42/23
suggest [1]   68/10
suggested [1]   38/5
suggesting [1]   28/20
suggestion [3]   58/13 68/17
 85/18
suggests [1]   59/8
suing [1]   69/6
Suite [5]   2/14 3/6 3/19 3/24
 4/10
SULLIVAN [1]   2/3
Superior [2]   18/6 79/9
supersedeas [3]   48/5 48/16
 70/2
supersedes [1]   49/2
support [2]   7/19 18/16
supposed [3]   15/19 54/8 62/12
Supreme [4]   24/25 25/19 79/21
 80/1
sure [12]   6/17 10/15 21/24
 22/13 29/14 45/3 47/5 50/11
 52/5 72/23 76/8 79/14
Susan [5]   2/4 3/4 6/19 7/8
 33/23
suspect [1]   66/6
suspicious [1]   78/19
SUTCLIFFE [5]   4/4 4/8 8/8 14/4
 14/10

| **T** | |
|---|---|

take [16]   22/12 27/1 27/20
 29/15 30/9 31/1 31/4 45/12
 48/14 49/23 70/8 73/11 74/25
 77/14 82/20 88/1
taken [3]   34/13 38/13 79/7
taking [2]   9/11 51/19
talk [8]   27/19 30/13 35/6 35/7

**T**

talk... [4]   39/5 54/6 55/12
 58/19
talked [1]   88/5
talking [5]   20/21 54/14 76/18
 76/19 82/11
Tashire [1]   80/2
taught [1]   25/2
teapot [1]   45/25
technical [1]   20/2
technicalities [1]   50/17
tell [13]   9/12 17/7 22/19
 35/21 42/3 44/24 44/25 54/3
 54/7 63/17 87/13 87/18 87/23
tells [2]   49/13 81/14
tempest [1]   45/25
tender [1]   64/7
tendered [1]   63/21
tens [3]   35/10 40/4 40/5
Tentatively [1]   52/17
term [1]   78/12
terms [5]   38/25 48/15 49/6
 49/6 53/6
terrible [1]   58/4
than [17]   9/20 29/24 33/14
 38/13 38/17 48/1 58/23 63/12
 64/6 65/21 68/6 68/9 73/17
 76/7 76/20 79/22 87/15
thank [20]   9/1 14/23 33/23
 38/23 39/9 49/22 61/25 67/5
 69/13 71/8 77/4 80/21 82/16
 82/17 84/4 85/11 87/25 88/9
 88/10 88/19
that [549]
that's [81]
their [25]
them [16]   8/1 14/20 17/23
 27/25 30/24 31/15 31/16 31/17
 34/17 46/21 58/2 58/4 58/6
 64/1 65/2 76/7
themselves [1]   20/7
then [31]
theory [1]   48/20
there [71]
there'll [1]   32/9
there're [1]   37/6
there's [43]
therefore [3]   50/22 55/20 56/1
these [25]
they [90]
they're [29]
they've [5]   29/15 65/19 84/18
thing [11]   19/3 27/5 27/14
 38/25 49/5 51/3 62/11 74/23
 81/11 82/20 88/11
things [8]   17/13 43/5 53/15
 57/14 58/16 63/17 65/17 65/23
think [71]
thinks [1]   48/9
third [4]   19/13 44/10 45/11
 74/19
third-parties [1]   44/10
this [170]
THOMAS [1]   4/9
those [30]
though [3]   9/15 51/18 77/16
thought [2]   64/13 71/13
thought' [1]   41/3
threat [6]   79/22 79/23 79/24
 82/25 83/15 83/18
threatened [2]   84/7 80/24
three [5]   17/23 20/11 32/11
 36/5 71/18

through [8]   31/8 42/7 53/12
 53/19 67/16 79/2 81/7 88/3
thrown [1]   20/24
thus [1]   40/9
tie [2]   20/5 20/6
tied [1]   66/24
time [41]
timing [1]   63/5
Title [1]   89/6
today [23]
token [1]   27/7
told [2]   19/21 87/2
Tom [1]   8/17
tomorrow [1]   27/13
too [6]   11/17 12/16 20/4 64/20
 65/10 66/23
took [5]   31/16 43/9 43/19 52/7
 59/14
tortious [5]   10/24 17/13 17/16
 17/18 20/17
toss [2]   22/4 51/20
transcript [3]   1/13 89/7 89/9
transferred [1]   40/2
transferring [2]   16/15 71/18
transfers [1]   40/8
tread [2]   71/4 71/4
trial [2]   18/13 24/23
trickles [2]   61/17 61/18
tricky [1]   71/11
tried [4]   12/20 17/24 29/13
 29/15
trier [1]   78/7
trod [1]   84/8
Trott [2]   23/25 25/9
TROUTMAN [2]   3/17 3/22
true [7]   16/21 16/21 19/12
 66/13 72/15 81/8 89/6
truly [1]   45/6
trust [4]   33/12 53/4 53/5
 60/10
trustee [1]   16/16
try [5]   20/25 23/14 24/4 48/22
 49/1
trying [6]   13/13 17/12 19/14
 20/5 20/6 20/17
Tuesday [2]   1/16 6/1
tug [1]   85/1
tunc [3]   16/15 22/22 23/11
turn [1]   40/19
turning [1]   73/20
turns [1]   16/8
twice [1]   78/21
twists [1]   16/8
two [15]   7/22 7/23 9/23 9/25
 18/1 21/25 22/25 30/10 43/5
 43/16 62/3 64/6 67/16 69/23
 71/21

**U**

U.S [1]   89/15
uh [5]   58/15 76/8 76/16 76/16
 82/21
ultimate [1]   34/22
ultimately [4]   16/14 38/9 60/3
 64/25
um [5]   70/8 72/13 72/24 76/17
 82/22
umbrella [1]   13/14
unclear [1]   44/3
under [8]   11/21 13/14 40/1
 49/15 54/21 63/11 64/4 88/1
underlying [3]   32/24 33/17
 50/10
understand [19]   25/16 28/12

41/4 41/5 41/5 41/6 42/1 44/1
42/14 43/7 46/5 47/23 51/6
52/3 55/12 71/6 74/6 76/21
83/6
understanding [2]   23/12 38/2
understood [1]   34/25
undisputed [1]   77/1
unfortunately [2]   20/13 23/21
UNITED [4]   1/1 1/22 89/6 89/10
unknown [1]   65/19
unless [3]   8/21 30/22 40/16
unliquidated [2]   32/11 65/22
unnecessary [2]   12/10 12/20
unperfected [3]   32/11 55/25
 65/21
until [4]   43/3 54/20 57/24
 64/5
up [36]
upheld [1]   21/17 24/24
uphold [1]   78/5
upon [7]   35/10 36/3 36/14
 37/17 38/1 56/25 74/22
urge [1]   29/6
URQUHART [2]   2/3
us [38]
use [3]   20/6 82/24 83/16
using [1]   10/9 83/10
usual [1]   77/23

**V**

valid [3]   11/2 35/3 42/23
various [1]   73/9
vast [4]   56/12 56/15 57/10
 73/22
vehicles [1]   73/4
verbally [1]   88/8
verbiage [1]   53/12
versus [5]   23/22 34/6 70/2
 71/22 76/4
very [30]
vexatious [2]   80/4 80/14
victory [1]   27/9
view [4]   10/6 58/17 63/4 70/6
viewpoint [1]   73/21
virtually [1]   71/14
vis [2]   32/18 32/18
vis-a-vis [1]   32/18
voluntarily [1]   42/22
voluntary [2]   43/2 43/3
Von [1]   2/14

**W**

wait [2]   28/5 47/5
waiting [1]   47/8
waive [2]   28/17 50/23
waiving [2]   27/24 50/4
walk [1]   22/12
wanna [2]   76/8 77/3
want [40]
wanted [2]   31/13 80/18
wants [3]   15/22 29/12 74/25
Wardlaw [2]   19/23 25/9
Wardlaw's [1]   23/16
Ware [4]   71/15 71/20 72/2 74/7
warring [1]   71/21
was [67]
Washington [1]   3/19
wasn't [6]   21/4 30/12 41/7
 64/5 78/10 78/15
waste [2]   25/5 81/5
watching [1]   25/20
water [1]   49/8
wavelength [1]   23/23
way [26]

**W**

we [151]
we'd [1]   47/19
we'll [8]   10/13 13/16 14/23
 17/22 24/2 30/18 49/23 81/14
we're [40]
we've [11]   10/3 11/4 15/9 21/8
 28/8 41/24 44/12 59/3 78/12
 82/2 84/24
well [43]
well-funded [1]   12/17
went [2]   28/25 37/7
were [26]
west [2]   1/22 24/13
what [83]
what's [11]   12/5 19/8 22/17
 27/2 40/24 47/12 64/18 65/20
 66/12 74/12 74/16
whatever [8]   10/13 30/1 48/23
 48/23 49/13 70/15 78/4 81/14
when [20]   11/2 15/23 23/22
 25/14 30/4 34/23 35/6 35/7
 36/15 42/14 44/19 53/11 57/22
 63/4 64/9 66/8 74/21 75/17
 76/17 88/15
where [22]   11/7 11/19 12/1
 12/11 13/2 13/3 13/9 16/6 27/3
 31/17 31/25 32/1 36/12 38/16
 38/20 47/19 51/16 51/19 82/10
 84/18 85/4 85/20
whether [18]   11/7 16/25 16/25
 18/7 22/7 37/15 42/1 45/25
 46/24 49/20 52/9 59/25 60/2
 60/3 68/25 87/12 87/15 87/23
which [41]
while [5]   11/16 16/16 19/12
 55/11 71/21
whip [1]   46/22
who [21]   9/24 9/25 12/2 12/12
 12/21 14/2 15/5 16/9 19/6
 36/20 38/9 55/24 55/25 56/15
 59/10 62/8 62/17 71/4 71/11
 84/25 85/20
who's [6]   7/18 8/4 16/2 26/17
 36/19 61/5
whole [8]   17/16 29/25 33/10
 59/20 63/5 65/12 86/2 86/20
whom [1]   12/23
why [51]
wife [3]   16/10 16/13 16/15
wild [1]   24/13
will [43]
willing [1]   59/23
Wilshire [1]   3/5
win [1]   70/10
wind [1]   82/20
Winklevoss [2]   71/15 72/2
wise [1]   27/4
wish [1]   31/1
withdraw [1]   24/16
withdrawal [1]   24/12
within [1]   32/7
without [7]   19/18 26/5 46/5
 60/25 65/9 67/9 73/20
won't [2]   83/22 84/8
wonder [1]   67/10
words [11]   45/24 46/5 48/13
 52/16 53/5 61/14 73/21 75/7
 77/18 77/24 83/2
work [10]   15/20 37/13 38/1
 51/20 56/14 60/25 76/13 76/24
 83/23 84/23
worked [1]   79/15

working [2]   28/8 69/21
world [3]   51/11 51/11 53/3
worry [1]   78/4
worth [1]   59/18
would [67]
wouldn't [5]   25/5 39/4 44/16
 67/11 73/11
wrestled [1]   48/13
writ [1]   64/16
written [1]   88/7
wrong [2]   25/10 25/10

**Y**

Yeah [4]   10/14 30/9 31/8 53/23
year [5]   47/11 64/6 64/6 68/6
 68/9
Year's [1]   25/20
yes [11]   7/12 12/15 15/7 19/24
 21/19 28/19 29/2 33/20 38/24
 51/22 87/19
yet [8]   25/25 27/5 32/6 41/4
 47/5 60/23 65/10 79/7
you [211]
you'd [2]   41/6 67/17
you'll [11]   7/15 9/25 31/11
 43/24 51/21 64/10 64/10 66/24
 86/18 87/8 88/1
you're [26]
you've [16]   12/17 26/9 26/13
 43/3 44/2 45/11 46/9 46/12
 46/13 52/13 54/10 67/16 67/18
 81/6 83/2 85/12
young [1]   24/22
your [184]
Your Honor [120]
Your Honor's [4]   57/8 58/17
 59/19 88/15

**Z**

Zeller [14]   2/4 5/3 5/8 5/12
 6/6 6/21 7/2 16/5 17/11 45/17
 45/23 52/7 80/20 84/9
Zeller's [3]   39/17 62/16 68/15
zero [2]   29/18 30/1