# EXHIBIT B

*MGA Entm't, Inc. v. The Hartford Ins. Group et al., Ninth Cir. 12-56069*

**Transcript of Oral Argument: "Duty to Defend" Appeal**

| Speaker | Discussion |
|---|---|
| Mark Sheridan | May it please the Court, Mark Sheridan from Patton Boggs on behalf of Lexington Insurance Company. |
| Judge Kozinski | Very well. |
| Mark Sheridan | If I may, Your Honor, I'd like to reserve 3 minutes for rebuttal. |
| Judge Kozinski | Okay, we'll see what you have on the clock. |
| Mark Sheridan | Certainly.  Your Honor, our arguments are in our brief, and we think that they state what is necessary to have the judgment of the district court reversed.  However, if I can I'd like to focus the Court on two issues.  The first being, whether the allegations of Mattel's Complaint satisfy the insuring agreement of this Lexington policy, and also the Crum & Forster policy.  And then second, whether the advertising exclusion is contained only within the Lexington Policy excludes coverage for this claim.  The district court found that the unspecified use of Mattel's marketing plans and advertising strategies satisfy the "in its advertisement" requirement of the Lexington policy.  The policy requires that the insured, in order for coverage to exist, must demonstrate that it used another's advertising idea in its advertisement, or that it infringed another's copyright in its advertisement.  There is no allegation anywhere in the underlying action that MGA used Mattel's advertising ideas or copyrights in its advertisements. |
| Judge Trott | That's the key to your case.  Those three words: "in your advertisement."  Not in order to make up an advertising campaign, or to compete against anybody, but has to show up in the advertisement.  That's the substance of this claim, isn't it? |
| Mark Sheridan | That is the requirement, Your Honor.  This policy language is different from that which came before it, which said you could use it in the course of advertising or in the course of creating an advertisement.  This requires that it actually be used in the advertisement.  And there's not a single allegation in the underlying action that MGA used any of Mattel's advertising ideas in its advertisements. |
| Judge Wardlaw | They say over and over that MGA used the material.  Can't you fairly infer that it was used in the advertising, and wasn't it your burden to show that it wasn't? |
| Mark Sheridan | Your Honor, I don't believe that you can fairly infer.  The cases that talked about inferences talk about you can infer claims, when there are facts alleged. |

| Speaker | Discussion |
|---|---|
| | If there are sufficient facts alleged, you can infer that a claim was made or could have been made.  Nothing in those decisions allows you to infer facts.  And that's what the district court did.  It inferred the fact that it was used in an advertisement because it was used.  There is no allegation to that effect.  There is not a single fact supporting the allegation or the contention by the district court and MGA that it was used in an advertisement.  And in fact, Your Honor, if I may, the first offense, Offense F, states that there is coverage if MGA were to use Mattel's advertising idea in its advertisement.  If you infer that use in any circumstance, when it involves an advertising idea, occurs in an advertisement, the advertisement requirement is superfluous.  It's surplusage.  There's no need for it.  And this Court has long held that you're not to read words out of an insurance policy or out of a contract. |
| Judge Kozinski | You know, your time is short, and I'm just wondering why you're making this argument.  This is the same argument that the other insurers are making.  Insurers are making, and if you win on this, I guess everybody wins.  But you've got an argument that applies only to Lexington, which seems to me a much better place to allocate your time, because nobody else will argue that, if you sit down and don't talk about it. |
| Mark Sheridan | Yes, Your Honor, in fact I was hoping to get through that argument quickly to get to the advertising exclusion. |
| Male Judge | It's going to be very difficult to get through that argument very quickly, the first one you picked, because that's a very big mountain to move.  You have a much smaller molehill with your other argument, which is that endorsements take precedence over the main policy.  Seems like a pretty straightforward argument, and if you win on that, that's it, you don't need to win on the other one. |
| Mark Sheridan | That is correct, Your Honor.  We simply followed . . . . |
| Judge Kozinski | So, you just sort of want to take on the difficult argument.  Just to show off, right? |
| Mark Sheridan | Actually, no, Your Honor, I'm happy to move on to the advertising exclusion. |
| Judge Wardlaw | Can I ask just a very sort of specific, practical question first, and that's the endorsement that was in my excerpts, endorsement number 011, says that it was effective for the 2008 policy.  And you didn't submit any excerpts the other two policies?  Did they also contain the endorsements? |
| Mark Sheridan | Yes, Your Honor, I believe we did.  I think it appears first in the Excerpts of Record, page 723, which I believe is the first . . . . |

| Speaker | Discussion |
|---|---|
| Judge Wardlaw | Is that what you're . . . . |
| Mark Sheridan | That is the first policy period, and that is the first endorsement. It's endorsement number 8 in that policy, Your Honor. |
| Judge Wardlaw | So it's in all three policies? |
| Mark Sheridan | It's in all three policies, Your Honor. |
| Judge Wardlaw | Okay. And when you, when Lexington provided MGA with those policies that contained the endorsement, did MGA object to the inclusion of the endorsement? |
| Mark Sheridan | They did not, Your Honor. In fact, Your Honor, it's not been rebutted, but MGA went out and bought separate insurance coverage for advertising losses. It has a separate policy that it purchased. |
| Judge Trott | And you're saying from that we should infer that they understood that this exclusion controlled. |
| Mark Sheridan | Absolutely, Your Honor. |
| Judge Kozinski | I'm sorry, that is in the record? |
| Mark Sheridan | Your Honor, we asked the district court to supplement the record, he said it was unnecessary. We raised it, it's been raised in numerous briefs. MGA has not once rebutted the issue. So the policy is not in the record, but there have been statements, and there's been no rebuttal from MGA that it purchased those policies. For all three years, by the way. |
| Judge Wardlaw | What was the nature of that coverage? Was it excess insurance, or just a separate area of coverage? |
| Mark Sheridan | It's a separate area of coverage, Your Honor. |
| Judge Wardlaw | Okay. |
| Judge Kozinski | I don't quite understand why you had to supplement the record. You forgot to put it in the first time? |
| Mark Sheridan | Certainly, Your Honor. It was an oversight that it wasn't included on our part. |
| Judge Kozinski | Okay, so then you try to supplement the record, and the fact is that it's not on the record, and they haven't rebutted it. I understand. But you don't need that, right? You just look at the . . . . |

| **Speaker** | **Discussion** |
|---|---|
| Mark Sheridan | The plain terms of the policy are clear. If the personal injury or advertising injury occurred in an advertisement, or in advertising, it is excluded under the policy. |
| Judge Kozinski | It reminds me of a piece of legislation I had many years ago, where if you crossed out all the no's and not's, it said nothing. So this is basically the sort of thing when you take the main policy and the endorsement, it sort of wipes out . . . . |
| Mark Sheridan | But it doesn't, Your Honor. It leaves a lot of coverage for personal injury and advertising injury. What it leaves is, all the offenses that do not require advertising to be satisfied. Perfect example is, the oral or written publication of material that slanders or disparages an organization's goods, products or services. That is not removed by this endorsement. It doesn't require an advertising; it doesn't require an advertisement. In fact, the best evidence that it was not removed, is the fact that Lexington relied upon that provision, that enumerated offense, enumerated offense D of the personal injury and advertising injury coverage, to defend MGA. |
| Judge Kozinski | You have about two minutes. |
| Mark Sheridan | Your Honor, unless the Court has more questions, I'd like to reserve . . . . |
| Judge Trott | Well, I have one other question. The – an exclusion and endorsement under California law seems to control, so long as, and I'm quoting from *Gaylord* here, "it's conspicuous, plain, and clear." Do you think this endorsement with this exclusion is conspicuous, plain, and clear? And why? |
| Mark Sheridan | Absolutely I think it's conspicuous, plain, and clear Your Honor. It makes it very clear – first of all, it was attached to the policy, it's listed in the Declarations, it's listed in the Statement of Forms, and by its terms it clearly excludes personal and advertising injury that occurs in an advertisement. In this regard, it's no different than any other advertisement. It removes something from the coverage grant that . . . . |
| Judge Kozinski | No other advertisement? You mean no other endorsement? |
| Mark Sheridan | I'm sorry, Your Honor? |
| Judge Kozinski | I thought you said advertisement. It's no different from what? |
| Mark Sheridan | It's no different from any other exclusion, Your Honor. It removes, from coverage, something that the coverage grant says will be covered. It's an exclusion like any other, Your Honor. |
| Judge Trott | Is there anything in the main policy that says , quote, "all terms and |

4

| Speaker | Discussion |
|---|---|
| | conditions of this policy apply unless modified by this endorsement?" |
| Mark Sheridan | Your, Honor, I'm not aware of that. |
| Judge Trott | Okay. |
| Judge Kozinski | But the endorsement itself, by its term, supersedes the policy? |
| Mark Sheridan | That's correct, Your Honor. |
| Judge Kozinski | Okay. Thirty seconds. |
| Mark Sheridan | That's all. Thank you. |
| Judge Kozinski | Okay. I believe we'll next hear from Susan Field? It's just from what my sheet tells me. You must be Susan Field, right? |
| Susan Field | Susan Field, Your Honor. Thank you very much. Susan Field for Crum & Forster. |
| Judge Kozinski | And you are representing? |
| Susan Field | Crum & Forster Insurance Company. Crum & Forster Insurance Company. |
| Judge Kozinski | Okay. |
| Susan Field | This is a case about coverage, as you pointed out, for advertising injury. But the Mattel/MGA case, as this Court is perhaps most aware, was not about advertising injury. As Your Honor indicated in the opening lines of the opinion in the first MGA/Mattel case, the question there was, "Who owns Bratz?" And that's what that case was about. It was about ownership rights. It was about unfair trade practices. It was about ownership infringement. |
| Judge Kozinski | Well that's what the case looked like on appeal after it had been winnowed down by discovery, trial, and so on. And oft times, complaints, strike that, almost always complaints are much broader than the case as it winds up. That's just the nature of complaints, and we have to look at that point, not at the case as it winds up on appeal. |
| Susan Field | I absolutely agree. But the allegations of the Fourth Amended Answer and Counterclaim, and we should note, remember, that we're here to talk about the Fourth Amended Answer and Counterclaim which was in April of 2010, not the Original Complaint, because that has some other issues. But we are here to talk about whether as of the deletion of the trade libel claims, in April 2010, did these carriers have a duty to defend? So we are past that point at that point. And the question here is, "What was the case about? What was alleged?" The district court found there were allegations as indicated of, |

| **Speaker** | **Discussion** |
|---|---|
| | somehow that there were allegations in MGA's advertisement. There is not one allegation in the Fourth Amended Answer and Counterclaim about MGA's advertisement. |
| Judge Trott | Is there any authoritative case or otherwise that construes "in your advertisement"? |
| Susan Field | There is, and what I was going to suggest is, is to go look at those cases. Because, one of the things I want to point out first, counsel did indicate, is that this language is different from many of the policies that have been construed. A lot of those say the early policies, in fact some of the early policies that were in this case but aren't our policies, talk about in connection with advertising, or in the course of advertising, or in connection with, or arising from. They don't deal – some of them deal with misappropriation of advertising ideas. |
| Judge Trott | Which deal with "in your advertisement?" |
| Susan Field | The *IDG* case, the Tenth Circuit case, dealt directly with coverage that involved "in your advertisement." And that Court specifically held, in finding there was no duty to defend – and it was a copyright infringement case, too – that the infringement alleged was arising out of the copying and sale of the product. It was something called Supervision. And not out of the promotional activity involved. But I think other cases support that. |
| Judge Kozinski | We are applying California law, right? |
| Susan Field | Yes, I think that California law would apply the same language. What I would note is that the *Oglio* case points out the difference between the advertising language there and language such as misappropriation of advertising ideas. In the footnote, that's footnote 7, I believe, the Court notes. . . |
| Judge Trott | Footnote 7 in *Oglio*? You're still in *Oglio*? |
| Susan Field | In *Oglio*, right. The Court notes that had the language there been the broader language of misappropriation of advertising, that perhaps the insured would have had a better argument. But they didn't have it there, and MGA didn't have it here. That form of coverage was in the 2000 and the 2001 policy, they are not in this Crum & Foster policy that didn't incept until 2003. |
| Judge Kozinski | What about the language in the Complaint about having used sales pricing, advertising, marketing, other financial information to insure that they could obtain every advantage over Mattel? |

6

| **Speaker** | **Discussion** |
|---|---|
| Susan Field | There's no question . . . . |
| Judge Kozinski | It does in fact use the word "advertising," right? |
| Susan Field | It does actually the word about, and we can find it, I believe that's paragraph 53. It talks about gaining advantage in advertising. It doesn't make any allegation at all about in your advertisement. And at no time in this case, at no time in this Complaint . . . . |
| Judge Kozinski | No, it talks about "advantage over Mattel," it doesn't talk about advantage in advertising. It says "used advertising, and other financial information," to insure that they – MGA – could obtain every advantage over Mattel. |
| Susan Field | That's correct. |
| Judge Trott | And that's your point. |
| Susan Field | That's my point, Your Honor, that nothing here talks about using it in MGA's advertisement. If that "in your advertisement" language was not in our policy, MGA would have a pretty decent argument. The requirement that it be in the advertisement is narrower. We have to consider the fact that the other language is broader. And this Court should interpret it . . . . |
| Judge Wardlaw | The problem I have with your argument is that we have to assume that MGA didn't advertise Bratz. |
| Susan Field | I don't think so. I think we all know that they advertised Bratz. |
| Judge Wardlaw | Of course they did . . . . |
| Susan Field | I'll get to that issue . . . . |
| Judge Wardlaw | That's the point. I mean, if you look at this Complaint, and you would reasonably assume that having stolen all these things, including Bratz, that it would have advertised. And it just seems to me that what Judge Carter found makes eminent sense. |
| Susan Field | Well, what Judge Carter found, and I can get to the issue I think Your Honor is raising, is actually Judge Carter found that the idea of advertising the dolls did not give rise to a duty to defend. Judge Carter directly found that allegations about the dolls and the advertising, and any argument about advertising of the dolls, he rejected entirely. What Judge Carter found was that the trade secret information somehow could be construed as either being the use of another's advertising idea, or copyright infringement in the advertisement. So let me turn to that, because I think that's a critical mistake that the Court made. The fact is that what Judge Carter relied upon were all of Mattel's argument about theft of trade secret. And what Judge Carter said |

7

| **Speaker** | **Discussion** |
|---|---|
| | was, "Well, perhaps they weren't trade secrets." But Mattel's allegation itself, at paragraph 34, expressly calls them trade secrets and defines them as trade secrets. Excuse me, 134. 134 defines trade secret material – which was alleged to be stolen and the language that Judge Carter relied upon – shall mean, and it lists it – documents, materials, designs, names, and other information stolen. And includes all of the confidential trade secret information. These policies have an absolute trade secret exclusion. But what Judge Carter said was, "Well, maybe that trade secret exclusion doesn't apply, because maybe they weren't trade secrets." But that conflates and misunderstands the idea of coverage, because the idea is, that they were specifically alleged to be trade secrets. And if they weren't trade secrets, it doesn't make any sense. The other thing is . . . . |
| Judge Kozinski | I thought the standard was not precisely what they allege, but what whether or not given what they allege, whether this is an area could reasonably expect to have litigation proceed. So it's – you know, they can allege something, they can call it a trade secret and yet if from context it looks like litigation would lead into other things and then that's covered, right? You have to defend. You have a duty to defend. |
| Susan Field | But Judge Carter's analysis was that the trade secret material might have satisfied the advertising material because perhaps it wasn't a trade secret. Now, Mattel alleged that it was. And if we're going to go with the allegations, we don't get to go behind them and say well, maybe it wasn't. |
| Judge Wardlaw | Didn't Mattel actually allege trade secret and other kinds of information? It didn't – the complaint doesn't just allege theft of trade secret information. |
| Susan Field | It does because paragraph 134 defines all of those materials as trade secrets. When they talk about it, they sometimes use the words "other confidential information," but paragraph 134 specifically defines all of that information to be a trade secret. And then what Judge Carter did was say, "well, maybe it's not a trade secret" or maybe it's a slogan, a trade dress, or a copyrighted and it was used in the advertisement. There's no allegation of that. There's no allegation of anything that could be slogan. And the idea that it could have been copyrighted is antithetical to the idea of a copyright if this stuff was trade secret. |
| Judge Kozinski | If we were to look at just one California case . . . . |
| Susan Field | Your Honor, I would like to reserve a few minutes because if, because I know that they will address an issue that we have not yet been able to touch. |
| Judge Kozinski | You're down to 35 seconds, so. So, it would be hard. But Okay. If I were to just look at a single California case that's most helpful to you, since we are |

8

| **Speaker** | **Discussion** |
|---|---|
| | bound by California law, which case would you point me to? |
| Susan Field | Well, I would point to *Hyundai* that is an example of a specific advertising idea that was used in an advertisement. I would look at *Microtech*, both of which are Ninth Circuit Circuit opinions, which discusses the fact that they – it requires allegations in the complaint . . . . |
| Judge Kozinski | Applying California law? |
| Susan Field | Applying California law, both of those. I would look at *Oglio*, that talks about the distinction between language such as the misappropriation of advertising ideas and other language. And I would go back to *Bank of the West*. Because, in this case, there is no separate harm alleged from the advertisement, even if this Court were to find such an advertisement. I – in case that I don't get to it – I do want to point out that MGA is going to argue about advertisement of the dolls. Judge Wardlaw that's an issue that you raised. And I think that if this Court were to consider that argument, then the facts of the allegations, the findings of this Court that the dolls began in 2001 invoked the Prior Publication Rule. And in connection with this very policy, courts have already found that the Prior Publication rules apply. |
| Judge Kozinski | Okay. Thank you. |
| Jeffrey Ehrlich | Good afternoon, Jeffrey Ehrlich for the appellees MGA and Isaac Larian. I will just go first to the coverage side, whether the allegations fall within the scope of the policy's coverage under . . . . |
| Judge Trott | We gave MGA a whole pile of attorneys' fees. What happens to those? I'm kind of curious. It seems to me like I'm not quite sure I understand what's going on. |
| Jeffrey Ehrlich | Well, I mean . . . . |
| Judge Trott | I mean, don't those eventually go to the insurance companies or am I missing something? |
| Jeffrey Ehrlich | That's a whole separate litigation, Your Honor. And there's litigation pending about that. |
| Judge Trott | It's pending. That's been – a recovery action has been filed? |
| Jeffrey Ehrlich | Yes. It's in front of Judge Carter. |
| Judge Wardlaw | And what's the issue there? Why doesn't MGA owe that money to its insurers? |

9

| Speaker | Discussion |
|---|---|
| Jeffrey Ehrlich | I'm really – I don't represent MGA in that action. I'm really only here to speak to the insurance issue. I . . . . |
| Judge Trott | But isn't that kind of curious? I mean you've got – MGA's gotten a whole bunch of attorneys' fees supposedly for the insurance companies and here we're fighting about whether the insurance companies get the attorneys' fees that we've approved for you client. |
| Jeffrey Ehrlich | That is true. But that is just a separate issue . . . . |
| Judge Wardlaw | Not to our minds, since we've heard all of this. |
| Jeffrey Ehrlich | Pardon me? |
| Judge Wardlaw | Not in our minds. We've been through all of it. |
| Judge Trott | Should we wait until that's resolved? |
| Jeffrey Ehrlich | No. I think it would probably be very useful to resolve coverage issues; to sort of sift things out and see what rights the various parties have against each other. Sometimes the insurance companies have multiple arguments about whether they're entitled to subrogation. How much is entitled? There's a lot of factual issues that have to get sorted out. I don't know that – and it's all pending now in front of Judge Carter. I mean, the money hasn't even been distributed, it's just been sort of put in a – |
| Judge Trott | And he declined to wait. I see. Okay. Go ahead. |
| Jeffrey Ehrlich | Thank you. The coverage here we're dealing with is Offense F, the use of another's advertising idea in your advertisement. And Offense G, infringing on another's copyright in your advertising. |
| Judge Kozinski | You don't have any hope of G at all. I mean, that's out of the picture all together. |
| Jeffrey Ehrlich | I really don't agree with that. I think that G is a very strong position for MGA. |
| Judge Wardlaw | Do you need G if you have F? |
| Jeffrey Ehrlich | I don't need G if I have F, but it makes my life easier and so I'm going to argue that there is coverage under G. Because you have – it makes for kind of a boring oral argument, but there are just certain allegations that the insurers keep ignoring, saying they're not in the Complaint and I would like to just point to a few of the allegations in the Complaint and why I think they satisfy these. So, paragraph 49, that's on – I'm just using Crum & Forster's excerpts. |

10

| Speaker | Discussion |
|---|---|
| | 352. |
| Judge Kozinski | Wait.  Wait.  Who's excerpts? |
| Jeffrey Ehrlich | Crum & Forster's. |
| Judge Kozinski | Okay |
| Jeffrey Ehrlich | So, starting in volume 2, page 352, paragraph 49 says that these are all about MGA hiring Mattel employees that had confidential information.  It says that these employees took every document a competitor would need to enter the Mexican market, to compete unlawfully, not just in Mexico but also in the U.S. and elsewhere, and it says they took information that included marketing projections, advertising budgets, promotional expenses, media plans, marketing plans and strategies, marketing strategies and similar materials.  So, it's advertising-related material.  Paragraph 53 says that MGA used this material – the sales pricing advertising, marketing information – to obtain every advantage over Mattel including advertising, in advertising.  So, I mean that's an express allegation that the material was taken.  It dealt with advertising misuse to gain an advantage over advertising and that Mattel lost market share as a response and had to advertise further.  In paragraph 50 it says that that stolen information gave MGA an unfair advantage in the United States and around the world and that the stolen documents included information about advertising expenditures and marketing strategies for Barbie products.  Then paragraph 57 says that MGA took trade secrets including Mattel's advertising strategy not only for Canada but for the U.S. and the rest of the world.  Paragraph 59-62 talk about this employee that MGA hired away who became – Ms. Brisbois – who became the MGA VP of Sales who had access to all . . . . |
| Judge Kozinski | I don't see how that addresses your argument that this is not in advertising.  This is about advertising.  This concerns advertising.  But they have an argument that says it's not in advertising.  So, you know, you're reading these things off, but you're not answering their argument. |
| Jeffrey Ehrlich | Well, okay . . . . |
| Judge Trott | Is there a single thing in there that said "used in your advertisement"? |
| Jeffrey Ehrlich | I think that there . . . . |
| Judge Trott | Where is there anything that says it was used in your advertisement? |
| Jeffrey Ehrlich | They don't have the preposition "in".  No.  Yeah. |
| Judge Trott | And there's nothing even close to that, though. |

11

| Speaker | Discussion |
|---|---|
| Jeffrey Ehrlich | Well, I think there's a lot that's close to it. They say that you took advertising, you used – In your advertising, you competed using against us you advertised and you gained advantage over us in our advertising. The complaint is all about MGA's advertising Bratz products. So, I think that the inference here . . . . |
| Judge Wardlaw | I think that the inference is that – You're – It's an inference. Since you don't actually use the words and the Complaint doesn't actually say the magic words that the insurance lawyers want it to have said. |
| Jeffrey Ehrlich | No. The word "in" is not . . . . |
| Judge Wardlaw | You'd be better off to concede that and go to the inference argument that Judge Carter obviously accepted. |
| Jeffrey Ehrlich | Well, I agree. That's the inference. That, if you're going to do all these things and gain these advantages . . . . |
| Judge Wardlaw | So the legal question is, "Are those magic words required in order for coverage to exist here?" |
| Jeffrey Ehrlich | I don't think under California's duty to defend rules under *Scottsdale*, where it's the facts that are alleged and the facts that can be fairly inferred. And so one of the facts to be inferred – you have these allegations of advertising. And then you also say that Mattel argues "we own Bratz. They're – we own the copyrights." So now you've got allegations – this is why I'm going to Offense G – we own Bratz, we own the copyrights, you advertised it and you violated our copyrights. Now, it doesn't say that your advertising violated our copyrights. It just says, we own it, you advertised it, and that violated – and all of your use violated copyrights. They didn't carve anything out of their copyright claim. So I think the allegations do satisfy coverage G. Mattel's claiming it owns everything about Bratz. And the complaint is replete with allegations about MGA advertising. |
| Judge Kozinski | I mean, for G to apply, you have to have something that is arguably an infringement of the copyright in the advertising itself. |
| Jeffrey Ehrlich | Yes. |
| Judge Kozinski | Okay, and I'm just having trouble seeing where that is even remotely alleged. |
| Jeffrey Ehrlich | In my understanding . . . . |
| Judge Kozinski | I mean you can advertise Bratz dolls or you can advertise dolls without infringing the copyright. You might infringe a trademark, you might infringe trade secrets or all sorts of stuff, but just using the word Bratz, saying Bratz, |

12

| **Speaker** | **Discussion** |
|---|---|
|  | is not an – not a copyright infringement. |
| Jeffrey Ehrlich | But there are exhibits attached to the Complaint that have pictures of the Bratz. I mean, so using photos of Bratz which are copyrighted would be a violation. |
| Judge Kozinski | But there's no allegation that that's what they did… |
| Jeffrey Ehrlich | But they attached . . . . |
| Judge Kozinski | …there's not the use of "in advertising". You know, you can advertise the dolls without using the images. |
| Jeffrey Ehrlich | That is true, but . . . . |
| Judge Kozinski | It's not, it's…yeah? |
| Jeffrey Ehrlich | Mattel's Fourth Amended Answer had exhibits attached to it including Bratz advertising and images of Bratz. So, the discussion that even Mattel's making shows us examples of some of the infringing materials as advertising that has photos that, arguably, according to Mattel, would infringe their copyright. So, anytime MGA is advertising Bratz, if they have an image of Bratz, Mattel's position would be that's an infringement of copyright. So I think there's potential coverage there under California standard, which is admittedly a broad standard. It's a very policyholder-friendly standard, but it – the allegations here that are being made are certainly broad enough without any particular stretching or twisting to cover, by at least by inference, the fact that all of this advertising dealt with Bratz advertising and included copyrighted materials. So . . . . |
| Judge Trott | What then about the claim that the endorsement with the exclusion in it trumps all of this? |
| Jeffrey Ehrlich | Well, it is clearly a rule of construction that endorsements generally will supersede . . . . |
| Judge Trott | That's a California rule? |
| Jeffrey Ehrlich | That is a California rule. |
| Judge Trott | You know , I mean, I've read all these cases . . . . |
| Judge Kozinski | And this endorsement by it terms says it supersedes policy. |
| Jeffrey Ehrlich | Yes. It says that this is added to the policy. It actually by its terms says that the rest of policy other than what it says is unchanged. It doesn't target any particular – it doesn't say referencing the coverage dealing with advertising |

13

| Speaker | Discussion |
|---|---|
|  | injury that's deleted and this is replaced. It doesn't do any of that. It just says by the way here's another provision and then when you read it you take a Venn diagram approach of what's covered and what's not then you should figure out that everything in the advertising injury coverage that is woven into the policy and the definition of what the offenses are, what the exceptions to the exclusion are, what the . . . . |
| Judge Trott | Judge Carter seems just to have ignored California law on this point. |
| Jeffrey Ehrlich | Me? |
| Judge Trott | No, Judge Carter. |
| Jeffrey Ehrlich | I don't think so. |
| Judge Trott | Well, he just ignored *Vannoco* and all these other things and said, "well it's an ambiguity". But that's not what California law seems to say. It says that an exclusion and an endorsement trumps the body of the policy as long as it's clear, plain and conspicuous. |
| Jeffrey Ehrlich | Well, that's why I think Judge Carter found what he was – the way he did. He didn't ignore the law. He said that there can be circumstances. That the requirement for clarity, Judge Trott . . . . |
| Judge Trott | Why isn't this clear? I've looked at it. |
| Jeffrey Ehrlich | Because one aspect of clarity is that it has to be clear from the terms of the policy how one provision of the policy interacts with other provisions. |
| Judge Trott | No, it just seems the California Rule says, "hey, if there's an exclusion in this endorsement we don't really care what's in the policy, that rules." |
| Jeffrey Ehrlich | I cannot agree with that. I think that the rule of – that endorsements must be – that terms that take away coverage must be framed in a way that is conspicuous, plain and clear applies to endorsements. The rule that endorsements trump policy language is a subsidiary rule. That the primary rule is that however you take away policy coverage, you have to do it in a way that's plain, conspicuous and clear. |
| Judge Wardlaw | Explain how the endorsement itself is ambiguous. The way I read Judge Carter's opinion was that he said when you read the endorsement with the rest of the policy, it creates an ambiguity cause – that if you apply the rule that the endorsement trumps, let's just look at the endorsement and explain how that's not clear or conspicuous or plain. |
| Jeffrey Ehrlich | The point that we made to Judge Carter is that you don't, in evaluating the clarity aspect, just focus on one aspect of the policy. That that's why we rely |

14

| **Speaker** | **Discussion** |
|---|---|
| | on the *Minkler* decision. In *Minkler* . . . . |
| Judge Trott | Yeah, but that wipes out the California rule. |
| Jeffrey Ehrlich | No. It supplements the California rule. You still have to be – the cases that we rely on – *Haines* is an endorsement case. And it's the one that says that endorsements that take away coverage have to be plain, conspicuous and clear. |
| Judge Trott | Yeah, that the endorsement . . . . |
| Judge Wardlaw | The endorsement, that's the point. |
| Judge Trott | It doesn't say the endorsement as compared to something in the body. Just the endorsement. |
| Jeffrey Ehrlich | Well, we cite a case called *Oliver Machine Company* in 187 Cal. App. 3d at 1510 that had an endorsement . . . . |
| Judge Trott | Which case is that again? |
| Jeffrey Ehrlich | It's called *Oliver Machine Company v. U.S. Fidelity Guaranty* at 187 Cal. App. 3d at 1510. |
| Judge Trott | 1510. Got it. |
| Jeffrey Ehrlich | And the pages that we discussed were at 1558. So, in that case, there was an endorsement that took away coverage for any claim that involved a product that was rebranded. And there was an additional insured on the policy and all that additional insured did was sell the policyholder's products that were rebranded. And the court said because this endorsement basically just wipes out coverage that it wasn't enforceable. It wasn't clear. And in *Minkler*, you had an exclusion – not an endorsement, but an exclusion in the policy – that said that if there is, are any intentional acts committed by any policyholder there's no coverage and that was clear. The California Supreme Court didn't find that was ambiguous. But there's another provision of the policy that says essentially the severability clause that makes it seem as if every policyholder has their own policy. And the court said that collectively that there's an ambiguity when there's – it's not clear how two contradictory portions of the policy relate to each other. |
| Judge Wardlaw | They were within the policy, they weren't part of the endorsement in that case. |
| Jeffrey Ehrlich | That's true. |

15

| **Speaker** | **Discussion** |
|---|---|
| Judge Wardlaw | And that's – so that would make sense. But here it's an endorsement. It's not within the confines of the policy as itself. |
| Judge Trott | And that's what the grey brief points out, that the *Oliver Machine Company* case didn't address a conflict between an endorsement and the body. It was the body against the body. |
| Jeffrey Ehrlich | No. I think *Oliver* was an endorsement that took – that wiped out the exclusion was in the endorsement that wiped out the rebranding. |
| Judge Trott | Well, we have a disagreement. What a shock. Anyway, read the case. |
| Judge Wardlaw | Can I ask you is there a specific coverage for advertising policy that MGA took out and isn't a part of this record? |
| Jeffrey Ehrlich | There's nothing in the record about other policies and I don't know. I don't.. Mr. Sheridan says MGA's never disputed it, we never disputed it because that was never put in the record, other than Mr. Sheridan saying it was there. It just was never in the record about what policies were there. It wasn't part of the motion. It wasn't – when they made their summary judgment motion that wasn't something that they put in there to explain. |
| Judge Trott | If we were to disagree with you with respect to this exclusion, what has to happen to all of this? |
| Jeffrey Ehrlich | If you disagree with me with respect to that exclusion, then Lexington has a very good day. And Crum & Forster has a less good day. |
| Judge Wardlaw | Do we remand the whole thing? |
| Judge Trott | Then what do we do with the case then? Remand the whole thing? Sort it out again? |
| Jeffrey Ehrlich | When in doubt I think that's always what I – Yes, let Judge Carter sort it out. If Lexington is out because of – you buy the endorsement wipes out coverage, I don't know what more role they would have unless, with respect to some of the other claims against them that may be pending. |
| Judge Kozinski | Why couldn't we just say that, you know, they're out. And recalculate ourselves? |
| Jeffrey Ehrlich | I don't – I can't think of – other than the fact that there are intra-insurer disputes . . . . |
| Judge Kozinski | So that Lexington is out… |

16

| **Speaker** | **Discussion** |
|---|---|
| Jeffrey Ehrlich | I don't know why you couldn't do that other than the fact that there are other ongoing disputes between the various carriers that allocation what they've already done and it may be better to have them all before the Court so that those can be adjusted internally. |
| Judge Kozinski | But that's not in this case.  This is just a claim of your client against Lexington. |
| Jeffrey Ehrlich | Yes. |
| Judge Kozinski | If we say that part of the judgment is wrong, that part of the judgment is wrong. |
| Jeffrey Ehrlich | Yes. |
| Judge Kozinski | And that's the end of it.  Right? |
| Jeffrey Ehrlich | Yes.  Thank you. |
| Judge Kozinski | Okay.  Thank you.  Well, let's see.  You want a minute.  I don't know if you have any time left? |
| Susan Field | Thirty seconds. |
| Judge Kozinski | You have thirty seconds.  We'll make it an even minute, how is that? |
| Mark Sheridan | Thank you, Your Honor.  Two quick points.  Judge Wardlaw at page 723 of our record does have the endorsement number 8 in the '06 policy and it is effective 1/1/06.  Second, if there is no coverage under G, then F, anything the Court finds covered under F is excluded by the trade secret exclusion.  So, and finally, if this Court determines that the Lexington endorsement excludes this claim from coverage, what the simply means is that Lexington is out of the case, it's entitled to reimbursement of the defense fees its paid, and MGA has additional claims against the other carriers with respect to this defense.  That's the end of the discussion. |
| Judge Kozinski | What do you make of *Oliver Machine Company*? |
| Mark Sheridan | Your Honor, I don't believe that (a) that it involved an endorsement addressing an exclusion versus the body.  I think it dealt with who was an insured under the policy and it was directly contradictory – the exclusion – to premiums paid by the insured.  So, if there was a factual issue, it was not a issue about the debate between the two forms, it was there was a factual issue about what occurred in that case.  I don't believe it's the same as this circumstance. |

17

| **Speaker** | **Discussion** |
|---|---|
| Judge Kozinski | Okay. Thank you. |
| Mark Sheridan | Thank you. |
| Judge Kozinski | Okay, I think you were out of time. We'll give you a minute as well. |
| Susan Field | Thank you. I think I have four points. Counsel describe the various paragraphs in which there were references to the theft of advertising ideas as he said. I'd like to note that each one of them falls under a title that says, "steals confidential trade secrets." It falls within the trade secret exclusion. Second of all, in response to the comment that perhaps it wasn't a trade secret it was simply confidential, the trade secret exclusion is actually an intellectual property and trade secret exclusion and it talks about trade secrets or other intellectual property rights. I think if this was information that was trade secreted or it was that kind of confidential information, it falls within that exclusion. Even if the misappropriated idea could have been covered under earlier language, the misappropriation of advertising ideas, it's not covered under this language. There is no allegation of "an advertisement" anywhere in here that could possibly apply. And last but not least, if the argument about the dolls was at all persuasive to Your Honor, I would go back to look not only at the Fourth Amended Answer and Counterclaim but also this Court's opinion in the first opinion in which it is undisputed that the dolls began being manufactured and sold in 2001. All of the allegations then would fall in the same advertising. There's nothing different about anything else that would have happened. It would have all predated the Crum & Forster policy and the prior publication exclusion, which is Exclusion C, which at least two courts have recognized in looking at this policy, should apply. |
| Judge Wardlaw | I think you should have made all of that in your brief really clear. I would just like to hear what the Crum & Forster thinks happens if we accept, if we were to reverse Judge Carter on the endorsement in the Lexington policy. |
| Susan Field | I assume that what would happen if Your Honor found there to be a duty under our policies, which I would hope you would not find, is that MGA would come back and ask us to pay some more money or Lexington would ask us to pay some more money or ask Evanston to pay some more money. And to answer your question about where's the money? The money is currently in limbo, because there is a dispute between the carriers and MGA over whether or not they get any of that money, and Judge Carter has it in front of him stayed and pending a request to either intervene or to interplead that money and it's just going nowhere at the moment. But the carriers have filed – or tried to file – an action to seek reimbursement of that money. Judge Carter has not allowed it to go forward yet and it's there. But, you know, I understand that some of these issues might be less relevant if we were able to get reimbursement of the money that we paid from the money that this Court ordered. That's the answer to that. It's in the record. I'm not stating |

18

| Speaker | Discussion |
|---|---|
| | anything outside that Your Honors couldn't take a look at on Pacer.  With that, I think that this is narrow coverage.  I think that this was a complicated underlying case.  But this case was a fight between MGA and Mattel over who owned Bratz.  And all of the copyright infringement claims related to ownership and all of the claims about advertising strategies and marketing didn't have anything to do with an allegation of "in any advertising."  There's no doubt it was used.  It was used to compete.  But this policy doesn't have unfair competition coverage.  And this Court should not find that coverage by allowing the case to find a duty to defend. |
| Judge Kozinski | Since MGA and Larian are before us, is there any reason we ought not to issue an order asking for its position as to the attorneys' fees we awarded? |
| Susan Field | I wouldn't have any problem with that, Your Honor.  I mean, as you might know, we attempted to intervene in the case before Your Honors before we had timely . . . . |
| Judge Kozinski | Is that a "no"?  Is that a "no"? |
| Susan Field | I think it would be a great idea. |
| Judge Kozinski | Okay.  Thank you. |
| Susan Field | Thank you. |
| Judge Kozinski | Well, case is argued and will stand submitted.  We may have further questions later on.  If so, we'll issue an order. |
| | ***END OF RECORDING*** |

19