O

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, and Mattel de Mexico, S.A. de C.V., a Mexico business entity<br><br>Plaintiffs,<br><br>v.<br><br>MGA ENTERTAINMENT, INC., a California Corporation, et al.,<br><br>Defendants.<br>_____ | CASE NO. SACV 04-9049-DOC(RNBx)<br><br>Consolidated with:<br>   CV 04-9059-DOC(RNBx)<br>   CV 05-2727-SGL(RNBx)<br><br>**ORDER DENYING MATTEL'S MOTION FOR INTERPLEADER AND DENYING MGA'S MOTION FOR LEAVE TO AMEND COMPLAINT** *NUNC PRO TUNC* |

    Before the Court are two items: (1) Mattel's Ex Parte Application for Order Enjoining Defendants From Instituting or Prosecuting Any Proceeding Affecting the Judgment in this Action and Exonerating Bond on Condition of Institution of Interpleader Action ("Mattel Ex Parte") (Dkt. 10838); and (2) MGA's Motion for Leave to Amend Complaint *Nunc Pro Tunc* ("MGA Mot.") (Dkt. 10863). After consideration of all briefing on the matter, and all oral arguments, the Court DENIES Mattel's Ex Parte and DENIES MGA's Motion for Leave to Amend *Nunc Pro Tunc*.

    **I.**    **Background**

The parties are familiar with the underlying facts of this case, a decade-long litigation odyssey involving the fashion dolls Barbie and Bratz (and, less innocently, their respective creators, owners, and lawyers). Relevant to the issues before the Court today is the Ninth Circuit decision affirming this Court's award of attorneys' fees to MGA under the Copyright Act, 17 U.S.C. § 505, and reversing this Court's decision that MGA's 2010 trade-secret counterclaim was compulsory. *See Mattel, Inc v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013).

**a. Attorneys' Fees**

Section 505 of the Copyright Act provides that "[i]n any action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof." 17 U.S.C. § 505. "[T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs." *Id.* Here, after the jury found for MGA on Mattel's copyright claim, this Court awarded MGA fees and costs totaling $137,801,215, finding the award appropriate under 17 U.S.C. § 505 because MGA's defense furthered the purposes of the Copyright Act by "ensur[ing] that well-resourced plaintiffs cannot bend the law to suit their pecuniary interests." *Mattel, Inc. v. MGA Entm't, Inc.*, 2011 WL 3420603, at *10 (C.D. Cal. Aug. 4, 2011); *see also* August 4, 2011, Judgment (Dkt. 10704) ¶ 3 ("MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and Isaac Larian are awarded $105,688,073.00 in attorneys' fees and $31,677,104.00 in costs."). On appeal, the Ninth Circuit affirmed, holding that this Court "did not abuse its discretion in awarding MGA fees for fighting against Mattel's claim 'that was stunning in scope and unreasonable in the relief it requested.'" 705 F.3d at 1111.

2

Mattel now applies, ex parte, for an order (1) permanently enjoining MGA and any third parties "who may have claims to some or all the proceeds of the judgment" from bringing any action in any court or forum to collect on the judgment; (2) requiring Mattel to file a complaint in interpleader pursuant to 28 U.S.C. § 1335, along with an interpleader bond of $137 million; (3) discharging Mattel from further liability for the $137 million pursuant to 28 U.S.C. § 2361. *See* Mattel Ex Parte ¶¶ 1-3. A brief supporting Mattel's Ex Parte was submitted jointly by the National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Chartis Specialty Insurance Company, and Crum & Forster Specialty Insurance Company (collectively, "the Insurers"). Insurer's Reply (Dkt. 10851). A separate brief in support of Mattel's Ex Parte was filed by Evanston Insurance Company ("Evanston"). *See* Evanston Reply (Dkt. 10856). Evanston and the other Insurers currently have a consolidated case before this Court regarding their respective rights to MGA's attorney's fees award: *National Fire Insurance Company et al. v. MGA Entertainment Inc., et al.*, SACV 12-0943-DOC(RNBx). *See* Order Consolidating Cases (Dkt. 25). That case is currently stayed. *Id.*

The law firm Orrick, Herrington & Sutcliffe LLP ("Orrick"), which had an ongoing dispute with MGA regarding the payment of attorney's fees related to this case, also filed briefing in support of interpleader (Dkts. 10850, 10859, 10860). However, Orrick has since filed a Notice of Settlement (Dkt. 10896), indicating that it has settled its claims against MGA and it "withdraws its joinder and support of Mattel's Motion for Interpleader and Orrick's [alternative request for the Court to establish a constructive trust]." Orrick Not. of Settlement at 1.

**b. MGA's Counterclaims-in-Reply for Trade Secret Misappropriation**

    **1) Mattel's Motion to Dismiss**

3

Prior to the 2011 trial, Mattel filed a Fourth Amended Answer and Counterclaims ("FAAC") (Dkt. 7714) asserting, among other things, that MGA misappropriated Mattel's trade secrets by encouraging and exploiting the defection of Mattel employees to MGA, a claim that Mattel had been making since 2006. In response, and for the first time, MGA asserted allegedly "compulsory" counterclaims-in-reply (Dkt. 8583) for, among other things, trade secret misappropriation arising out of the activities of Mattel's "market intelligence" department—MGA alleged that the Mattel group posed as retailers to gain access to restricted showrooms, documents, and future product lines and advertising plans. MGA Counterclaims-in-Reply ¶¶ 1-20.

Mattel moved to dismiss MGA's trade secret counterclaims-in-reply, arguing that they were time-barred, that they were not compulsory, and that, even if they were compulsory, MGA failed to seek the required leave to amend its pleadings to include the new claims. Mattel's Mot. to Dismiss (Dkt. 8737). MGA opposed, arguing that its counterclaims-in-reply were indeed compulsory, that leave to amend was not required, and that, if leave to amend *was* required, the Court should grant MGA leave to amend—in part because the counterclaims-in-reply were compulsory. *See* MGA Opp'n (Dkt. 8747) at 19, 27-28 (arguing that the trade-secret misappropriation claim was not time-barred because it was compulsory).

The Court denied Mattel's motion to dismiss the trade secret counterclaim-in-reply, finding the following: (1) that the counter-claim-in-reply was compulsory, because "Mattel's trade secret misappropriation counterclaim and MGA's trade secret misappropriation counterclaim-in-reply are logically related"; (2) that MGA was not required to seek leave to amend before filing compulsory counterclaims-in-reply; and (3) that Mattel's statute of

4

limitations argument was unavailing because the triggering event—"the first time MGA discovered or should have discovered Mattel's alleged misappropriation of trade secret materials from MGA's showrooms"—occurred less than three years before the January 12, 2007 filing of Mattel's Answer and Counterclaims, "which is the pleading to which the FAAC and MGA's counterclaims in reply relate back." October 5, 2010, Minute Order (Dkt. 8892) at 6-18. The Court clarified that "[a] compulsory counterclaim relates back to the date of the complaint, though a permissive counterclaim does not." *Id.* at 15-16 and n.10 (citing *Employers Ins. of Wausau v. United States*, 764 F.2d 1572, 1576 (Fed. Cir. 1985); *Religious Tech. Ctr. v. Scott*, 82 F.3d 423 (9th Cir. 1996) (incorporating the Federal Circuit standard); *Kirkpatrick v. Lenoir County Bd. of Educ.*, 216 F.3d 380, 388 (4th Cir. 2000) ("[A] compulsory counterclaim relates back to the time of the filing of the plaintiff's complaint.")).

MGA's cross-motion for leave to amend was stricken as moot. *Id.* at 21. During its discussion of the finding that MGA was not required to seek leave to amend before filing compulsory counterclaims-in-reply, the Court stated in dicta that "[e]ven if leave to amend were required, it would be granted." *Id.* at 10. This statement was premised, contextually and explicitly, on the Court's prior finding that MGA's counterclaim-in-reply was compulsory. First, the statement "even if leave to amend were required" ostensibly imagines a scenario in which Mattel's argument prevailed and even a *compulsory* counterclaim-in-reply required the granting of leave to amend. Second, the Court's brief analysis of the factors that determine whether leave to amend should be granted included reference to the fact that MGA's claim was not "futile" because it was not time-barred, since a *compulsory* counterclaim relates back to the date of a complaint, "though a permissive counterclaim does not." *See id.* at 10, 15-18.

5

After the 2011 trial, the jury found for MGA on its trade secret claim and awarded $85 million in compensatory damages. The Court further awarded MGA $85 million in exemplary damages, $2,172,000 in attorney's fees, and $350,000 in costs.

### 2) Reversal on Appeal and Motion to Amend *Nunc Pro Tunc*

On appeal, the Ninth Circuit reversed this Court on the trade secret claim, finding that "[c]ounterclaims-in-reply are permitted only if they are compulsory," that "MGA's [trade secrets] claim did not rest on the same aggregate core of facts as Mattel's claim," and that, accordingly, there was not "a sufficient nexus to support a compulsory counterclaim." *Mattel*, 705 F. 3d at 1110. The court directed this Court as follows:

> Because MGA's trade-secret claim should not have reached this jury, we vacate the verdict along with the related damages, fees and costs. *See* Cal. Civ.Code §§ 3426.3(c), 3426.4. On remand, the district court shall dismiss MGA's trade-secret claim without prejudice.

*Id.* at 1110-11.

MGA now moves for leave to amend its pleadings *nunc pro tunc*, to "deem MGA's trade secret claim filed as of the date [MGA] originally sought leave to amend, *i.e.*, August 16, 2010," to preserve the jury verdict against Mattel on trade secret liability, and to hold a limited retrial on the statute of limitations issue. MGA Mot. at 2-3.

**II.    Analysis: Interpleader**

6

Upon motion by MGA, after the conclusion of trial, this Court awarded MGA fees and costs totaling $137,801,215. The Ninth Circuit affirmed that award to MGA. Mattel now asks the Court to enter an injunction preventing MGA from executing on the judgment (or the appeal bond) until Mattel can file a Complaint in Interpleader. *See* Mattel Ex Parte ¶¶ 1-3. In addition to the MGA parties, Mattel's Proposed Interpleader Complaint names the following parties as "Interpleader Defendants": National Union Fire Insurance Company, Lexington Insurance Company, Chartis Specialty Insurance Company, Crum & Forster Specialty Insurance Company, Evanston Insurance Company, and Orrick, Herrington & Sutcliffe LLP. *Id.* Ex. G (Proposed Interpleader Compl.) (Dkt. 10838-1). Mattel argues that interpleader is appropriate because "a number of entities have notified Mattel of their claims to some or all of the proceeds of the amount of the Judgment that was affirmed." Mattel Ex Parte at 1.

Since then, the Court has received notices of settlement between MGA and Interpleader Defendants. *See* Orrick Notice of Settlement (Dkt. 10896); *MGA Entm't Inc., et al. v. The Hartford Ins. Co., et al.,* No. 08-00457, Notice of Settlement (Dkt. 781). In light of the settlement of claims between MGA and the insurance carriers, and the earlier settlement between MGA and Orrick, there are no remaining claimants on the funds at issue. Accordingly, the Court DENIES Mattel's Ex Parte.

**III. Analysis: Amendment *Nunc Pro Tunc***

MGA now moves for leave to amend its pleadings *nunc pro tunc* to "deem MGA's trade secret claim filed as of the date [MGA] originally sought leave to amend, *i.e.*, August 16, 2010," to preserve the jury verdict against Mattel on trade secret liability, and to hold a limited retrial on the statute of limitations issue. MGA Mot. at 2-3.

7

Mattel argues that MGA's motion must be denied because: (1) the Ninth Circuit's mandate precludes reassertion of the trade secrets claim as an amendment; and (2) *Nunc Pro Tunc* amendment is not proper, nor is reinstatement of the jury verdict. Mattel Opp'n (Dkt. 10867).

Because the Court agrees that the Ninth Circuit's mandate precludes the possibility of MGA's requested relief, and for the independent reason that *nunc pro tunc* amendment is not appropriate in this case, the Court DENIES MGA's motion.

### a. The Ninth Circuit's Mandate

MGA argues that the Ninth Circuit's instruction to dismiss its trade secrets claim "without prejudice" allows for the amendment *nunc pro tunc* of MGA's pleadings. MGA Mot. at 7-8. MGA reasons that, "[i]f the Ninth Circuit wished to preclude MGA from pursuing further relief in this Court, it could have dismissed the case with prejudice. But it did not do so, despite Mattel's express request for such relief." *Id.* at 8. Mattel responds that the Ninth Circuit "unequivocally instructed this Court" to dismiss MGA's claim and it would "violate the letter and spirit of the Ninth Circuit's mandate . . . to grant MGA's request to retroactively add back into this case by amendment the very claim that the Ninth Circuit ruled never should have been tried and directed to be dismissed." Mattel Opp'n at 9.

The Court agrees with Mattel. "On remand, a trial court may not deviate from the mandate of an appellate court." *Matter of Beverly Hills Bancorp v. Hine*, 752 F. 2d 1334, 1337 (9th Cir. 1984). A district court "has no power to expand [a] remand beyond the boundary ordered by" the appellate court. *Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168, 1173 (9th Cir. 2006); *Twentieth Century Fox Film Corp. v. Entertainment Distributing*, 429 F.3d 869, 883 (9th

Cir. 2005). While "amendment of pleadings following remand may be permitted, such amendment cannot be inconsistent with the appellate court's mandate." *Bancorp*, 752 F. 2d at 1337. In addition, the "general rule that leave to amend under rule 15 should be freely granted . . . will not be extended without limit when a rule 15 motion is brought after a claim has been fully litigated on the merits through appeal. At some point, there must be finality." *Id.* at 1338.

In *Bancorp*, as part of an "ongoing flood of litigation," a bankruptcy court charged with interpreting a settlement agreement between two parties had gone beyond interpretation and had reformed the terms of the settlement as well, interpreting the reformed terms in favor of Bancorp's Trustee ("Bancorp"). *Id.* at 1336. The Ninth Circuit reversed, finding (1) that reformation efforts were inappropriate because Bancorp did not seek them in its pleadings; and (2) that the bankruptcy court's interpretation in favor of Bancorp was erroneous as a matter of law. *Id.* The circuit remanded, and Bancorp unsuccessfully sought rehearing or clarification from the circuit regarding the question of whether or not, on remand, Bancorp could amend its pleadings to seek reformation. *Id.* On remand, the bankruptcy court allowed Bancorp to amend its pleadings and add the reformation claim, eventually going through a new five-week trial that again resulted in reformation in Bancorp's favor. *Id.* The Ninth Circuit reversed on appeal, finding that the amendment went against its mandate because "[t]he only issue remaining on remand was our direction to interpret [the settlement agreement]," and "[b]y necessary implication, this foreclosed a trial on an entirely new theory of recovery," *i.e.* the unpled reformation claim. *Id.* at 1337-38. While the court highlighted the fact that Bancorp had failed to make any effort to include the reformation claim in its initial proceedings, it also emphasized how, in any case, post-appeal amendment "would not enhance finality, but instead would

Case 2:04-cv-09049-DOC-RNB Document 10908 Filed 12/17/13 Page 10 of 16 Page ID #:330189

encourage seriatim judgments in the same basic dispute" and would be an "inefficient use of scarce judicial resources," since "a general policy of permitting amendment after losing an appeal would not enhance Rule 1's mandate that the Federal Rules be 'construed to secure the just, speedy, and inexpensive determination of every action.'" *Id.* at 1338. The court rejected Bancorp's argument that the mandate did not foreclose amendment because it "did not address the issue," noting that Bancorp's only citation in support of its argument involved a remand order that specifically "granted leave to amend the pleadings," and, in the absence of such a remand order, the court's intent was "clear, the Trustee was not entitled to amend his pleadings." *Id.* (citing *Evans v. Carroll & Co.,* 259 F.2d 577 (9th Cir.1958)).

Here, as in *Bancorp*, the "only issue remaining on remand" was a "direction" from the Ninth Circuit, *see id.* at 1337; in this case, that direction was straightforward: "On remand, the district court shall dismiss MGA's trade-secret claim without prejudice." *Mattel*, 705 F. 3d at 1110-11. The circuit did *not* give MGA leave to amend its pleadings. Instead, it stated that "MGA's trade-secret claim should not have reached this jury," and "vacate[d] the verdict along with the related damages, fees and costs." *Id.* at 1111. MGA asks this court to completely abandon the one clear directive of the Ninth Circuit (a *dismissed claim*) and instead retroactively amend a 2010 pleading to fully preserve the jury's factual findings on a "claim [that] should not have reached this jury" and to preserve the verdict and damages that were "vacate[d]" on appeal. This request goes beyond even the amendment sought and obtained—and *reversed*—in *Bancorp*.

MGA argues that "[a] dismissal without prejudice by definition allows a party to re-file an action in this Court," MGA Mot. at 8, citing language from *Oscar v. Alaska Dep't of Educ. & Early Dev.*, 541 F.3d 978, 981 (9th Cir. 2008) (noting that, when a claim is dismissed without

prejudice, "the defendant remains subject to the risk of re-filing"). *Oscar*, however, is completely inapposite. That case held that a defendant school district that had obtained a dismissal without prejudice of IDEA claims against it had not obtained "prevailing party status" for the purposes of an attorneys' fees request. *Id.* at 982. There was no appeal of the underlying dismissal, no attempt to amend pleadings post-dismissal, and certainly no request to amend pleadings retroactively after a full trial on the issues and an appellate reversal dismissing the claims at issue. *See id.*

MGA further argues that "[i]f the Ninth Circuit wished to preclude MGA from pursuing further relief in this Court, it could have dismissed the case with prejudice." MGA Mot. at 8. Of course, dismissal with prejudice would also have precluded MGA from refiling its state law trade secrets claims in a new lawsuit in state court. It is plausible to this Court that the Ninth Circuit's mandate contemplated such a scenario. It is not plausible that a mandate directing the Court to dismiss MGA's claims without prejudice, finding that "MGA's trade-secret claim should not have reached this jury," and "vacat[ing] the verdict along with the related damages, fees and costs," *Mattel*, 705 F. 3d at 1110-11, contemplated a retroactive amendment of claims that would reinstate the bulk of a just-vacated verdict.

  **b.**  **Amendment *Nunc Pro Tunc* is inappropriate here**

"Nunc pro tunc signifies now for then, or in other words, a thing is done now, which shall have same legal force and effect as if done at time when it ought to have been done." *United States v. Allen*, 153 F.3d 1037, 1044 (9th Cir. 1998) (citing Black's Law Dictionary 964 (5th ed.1979)). The doctrine is considered part of the "inherent power of the court to make its records speak the truth." *Id.*

11

MGA argues that *nunc pro tunc* amendment is proper here, since "MGA originally sought leave to amend its pleading prior to trial, and the Court determined that leave 'would be granted' if necessary, but the Court struck the request as moot after finding the claim to be compulsory." MGA Mot. at 10. Mattel responds that *nunc pro tunc* amendment is not available in a case such as this, where it is not intended to correct a mistake but rather is intended to modify the substance of a court's three-year-old ruling in order to backdate a claim and revive a vacated verdict. Mattel Opp'n at 14-15.

The Court agrees with Mattel. The power to amend *nunc pro tunc* is "a limited one, and may be used only where necessary to correct a clear mistake and prevent injustice. It does not imply the ability to alter the substance of that which actually transpired or to backdate events to serve some other purpose." *United States v. Sumner,* 226 F. 3d 1005, 1009–10 (9th Cir. 2000) (internal quotation marks and citations omitted); *see also Singh v. Mukasey*, 533 F.3d 1103, 1110 (9th Cir. 2008) (quoting *Transamerica Ins. Co. v. South,* 975 F.2d 321, 325 (7th Cir.1992) (holding that "a nunc pro tunc order is typically used to correct clerical or ministerial errors," but as a general rule does not enable the court to make "substantive changes affecting parties' rights")); *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010) (quoting *Cypress Barn, Inc. v. W. Elec. Co., Inc.*, 812 F.2d 1363, 1364 (11th Cir. 1987) ("The failure of a court to act, or its incorrect action, can never authorize a nunc pro tunc entry. If a court does not render judgment or renders one which is imperfect or improper, it has no power to remedy any of these errors or omissions by treating them as clerical misprisions."); *Crosby v. Mills,* 413 F. 2d 1273, 1277 (10th Cir. 1969) ("An order may be entered nunc pro tunc to make the record speak the truth but it cannot supply an order which in fact was not previously made.")).

MGA fails to cite to any court that has granted *nunc pro tunc* amendment in circumstances similar to the ones faced by this Court, and, indeed, has provided generally inapposite authority. MGA's main sources of authority are criminal cases involving exceedingly distinguishable facts. *See United States v. Allen*, 153 F.3d 1037, 1044 (9th Cir. 1998) (a district court properly imposed a criminal sentence *nunc pro tunc* when the appellate court remanded a case for resentencing); *United States v. Sumner*, 226 F.3d 1005, 1009 (9th Cir. 2000) (discussing a district court's limited ability to expunge a youthful offender's record *nunc pro tunc* pursuant to the Federal Youth Corrections Act, 18 U.S.C. § 5021); *Hung Viet Vu v. Kirkland*, 363 F. App'x 439, 442 (9th Cir. 2010) (noting that a district court had discretion to accept an amended habeas petition *nunc pro tunc* when the magistrate judge had dismissed improperly it in clear violation of an established filing rule).

The only civil cases cited by MGA are likewise inapposite. In *American Tower Corp. v. City of San Diego, California*, 2007 WL 2815183 (S.D. Cal. Sept. 25, 2007), a district court allowed a plaintiff to file an amended complaint *nunc pro tunc*, backdated ten days, "based on Defendants' statement of non-opposition to the request." *Id.* at *3. In *In re Vantive Corporation Securities Litigation*, 110 F. Supp. 2d 1209 (N.D. Cal. 2000), a plaintiff who had improperly filed an amended complaint without first obtaining leave to amend was granted leave to amend *nunc pro tunc* because the defendant had already filed a motion to dismiss the amended complaint and the court was *granting* the defendant's motion. *Id.* at 1213 n.7 (granting plaintiff's request to amend *nunc pro tunc* "in the interests of economy," since the plaintiff's "best case" was being dismissed with prejudice). In *F.D.I.C. v. Jackson-Shaw Partners No. 46, Ltd.*, 850 F. Supp. 839

13

(N.D. Cal. 1994), plaintiff inadvertently missed a filing deadline by approximately 23 days, and the district court granted leave to file an amended cross-claim *nunc pro tunc*. *Id.* at 842.

What MGA requests is not a simple correction of the record; rather, it is an unprecedented re-writing of history that would not only "supply an order which in fact was not previously made," *U.S. Philips Corp.*, 590 F.3d at 1094, but would also significantly "alter the substance of that which actually transpired . . . to backdate events to serve some other purpose," *Sumner,* 226 F. 3d at 1009–10. For this reason, the Court is inclined to find that it lacks the jurisdiction to consider MGA's request, but for the same reason, the Court would decline to use its discretion to make such a sweeping change to the record.

In addition, the Court finds MGA's motion deficient because it is premised on the mistaken impression that this Court made an independent and uncontroverted assessment of the appropriateness of permissive amendment when it stated that "[e]ven if leave to amend were required, it would be granted." October 5, 2010, Minute Order at 10. Because that assessment was based on the assumption that MGA's trade secret counterclaims were *compulsory*, and because the Ninth Circuit has now unequivocally found that they were not compulsory, MGA is mistaken when it assumes that this Court would clearly have granted leave to amend

When the Court denied Mattel's motion to dismiss MGA's trade secret counterclaim-in-reply, it found the following: (1) that the counter-claim-in-reply was compulsory, because "Mattel's trade secret misappropriation counterclaim and MGA's trade secret misappropriation counterclaim-in-reply are logically related"; (2) that MGA was not required to seek leave to amend before filing compulsory counterclaims-in-reply; and (3) that Mattel's statute of limitations argument was unavailing because the triggering event—"the first time MGA

discovered or should have discovered Mattel's alleged misappropriation of trade secret materials from MGA's showrooms"—occurred less than three years before the January 12, 2007, filing of Mattel's Answer and Counterclaims, "which is the pleading to which the FAAC and MGA's counterclaims in reply relate back." October 5, 2010, Minute Order at 6-18. The Court pointed out that "[a] compulsory counterclaim relates back to the date of the complaint, though a permissive counterclaim does not." *Id.* at 15-16 and n.10.

Thus, when the Court stated in dicta that "[e]ven if leave to amend were required, it would be granted," *id.* at 10, this statement was premised, contextually and explicitly, on the Court's prior finding that MGA's counterclaim-in-reply was compulsory. That is because the statement "even if leave to amend were required" imagines a scenario in which Mattel's key argument prevailed and even a *compulsory* counterclaim-in-reply required the granting of leave to amend. In addition, the Court's brief analysis of the factors that determine whether leave to amend should be granted included reference to the fact that MGA's claim was not "futile" because it was not time-barred, since a *compulsory* counterclaim relates back to the date of a complaint, "though a permissive counterclaim does not." *See id.* at 10, 15-18. The Ninth Circuit's subsequent decision made it clear that MGA's claim was not compulsory, and that this Court's related analysis of whether MGA should be granted leave to amend its pleading to include a compulsory counterclaim was therefore irrelevant.

MGA asks the Court not only to re-write what it *did* when it struck MGA's motion to amend as moot, it also asks the Court to re-write what it *meant* when it discussed the issue of permissive amendment. The Court declines to do so.

**c. Disposition**

15

For the reasons stated above, the Court DENIES MGA's Motion for Leave to Amend Complaint *Nunc Pro Tunc*.[12] Pursuant the Ninth Circuit mandate, MGA's trade secret claims are hereby DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED: December 17, 2013

_____
DAVID O. CARTER
United States District Judge

---

1 Mattel makes the separate argument that, even if leave to amend could have been granted pursuant to the Ninth Circuit's mandate and pursuant to *nunc pro tunc* doctrine, the Court lacks subject matter jurisdiction over the remaining trade secrets claim because it is wholly a matter of state law and there are no pendant federal claims that would support jurisdiction.

Having decided that amendment is not appropriate here, though, the question of jurisdiction regarding amended claims is not before the Court. However, the Court notes that, should MGA seek to re-file its state law trade secrets claims in a *new* action, this court would lack jurisdiction to hear those claims.

2 Mattel also re-states its 2010 argument that MGA's claims cannot be added because they are time-barred, and thus "futile." Mattel Opp'n at 19-24. The issue of the timeliness of MGA's claims involves multiple issues of disputed fact that were not resolved during the initial trial, and are not appropriate for disposition here.